Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   SEARS HOLDINGS CORPORATION,

8

9           Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   300 Quarropas Street, Room 248

14                   White Plains, NY 10601

15

16                   December 14, 2018

17                   10:07 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  NAROTAM RAI

Page 2

1  HEARING re Notice of Hearing on Motion of Debtors for Entry

2  of an Order (I) Approving Debtors Incentive and Retention

3  Programs for Certain Key Employees and (II) Granting Related

4  Relief (related document(s)766)

5

6  HEARING re Motion of Debtors for Entry of an Order (I)

7  Approving Debtors' Incentive and Retention Programs for

8  Certain Key Employees and (II) Granting Related Relief

9  (document #766)

10

11  HEARING re Notice of Agenda of Matter Scheduled for Hearing

12  on December 14, 2018 at 10:00 a.m.

13

14  HEARING re Objection to Motion for Order Approving Debtors'

15  Incentive and Retention Programs for Certain Key Employees

16  and Granting Related Relief (related document(s)766) filed

17  by Paul Kenan Schwartzberg on behalf of United States

18  Trustee (document #1082).

19

20

21

22

23

24

25  Transcribed by:  Sonya Ledanski Hyde

Page 3

1   A P P E A R A N C E S :

2

3   SEYFARTH SHAW LLP

4        Attorneys for Wilmington Trust, National Association

5        and Collateral Agent as Indenture Trustee

6        620 Eighth Avenue

7        New York, NY 10018

8

9   BY:  EDWARD M. FOX

10

11  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

12       Attorneys for Bank of American DIP ABL Agent

13       4 Times Square

14       New York, NY 10036

15

16  BY:  GEORGE R. HOWARD

17

18  KURTZMAN MATERA, P.C.

19       Attorneys for

20       664 Chestnut Ridge Road

21       Spring Valley, NY  10977

22

23  BY:  ROSEMARIE E. MATERA

24

25

Page 4

```
 1   BACKENROTH FRANKEL & KRINSKY, LLP

 2        800 Third Avenue, 11th Floor

 3        New York, NY 10022

 4

 5   BY:  MARK A. FRANKEL

 6

 7   UNITED STATES DEPARTMENT OF JUSTICE

 8        Attorneys for the U.S. Trustee

 9        201 Varick Street, Suite 1006

10        New York, NY 10014

11

12   BY:  PAUL K. SCHWARTZBERG

13        RICHARD C. MORRISSEY

14

15   AKIN GUMP STRAUSS HAUER & FELD LLP

16        Attorneys for Unsecured Creditors Committee

17        One Bryant Park

18        New York, NY 10036

19

20   BY:  SARA L. BRAUNER

21        IRA S. DIZENGOFF

22

23

24

25
```

Page 5

1   WEIL, GOTSHAL & MANGES LLP

2        Attorneys for the Debtor

3        767 Fifth Avenue

4        New York, NY 10153

5

6   BY:  RYAN PRESTON DAHL

7        NATASHA S. HWANGPO

8        MATTHEW SKRZYNSKI

9        RAY C. SCHROCK

10

11   ALSO PRESENT TELEPHONICALLY:

12

13   RAPHAEL ANDREWS

14   JONATHAN D. CANFIELD

15   BRYAN M. CIMALA

16   TED A. DILLMAN

17   KATHERINE DOHERTY

18   ROBERT E. FITZGERALD

19   SCOTT FLEISCHER

20   KRISTOPHER M. HANSEN

21   PATRICK J. HOLOHAN

22   ZACHARY D. LANIER

23   ZACHARY D. LEVINE

24   TERESA LII

25   MICHAEL G. LINN

1   JONATHAN D. MARSHALL

2   SHLOMO MAZA

3   MICHAEL MITTELMAN

4   LESLIE PLASKON

5   STEVEN J. REISMAN

6   JASON B. SANJANA

7   CHRIS STAUBLE

8   BRAD SWEENEY

9   FOTEINI TELONI

10  ANDREW TENZER

11  DAVID R. ZYLBERBERG

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2          CLERK:  All rise.

3          THE COURT:  Please be seated.  Okay, good morning.

4    Sears Holdings Corporation.

5          MR. DAHL:  Good morning, Your Honor.  Ryan Preston

6    Dahl of Weil, Gotshal, and Manges for the Debtors. With me

7    is Mr. Schrock (indiscernible) present motion before the

8    Court today.

9          THE COURT:  Okay.

10         MR. DAHL:  Your Honor, (indiscernible) the only

11   item on the agenda today is Docket Number 766 which is the

12   Debtors' motion (indiscernible) key employee incentive

13   (indiscernible).  That motion is subject to a pending

14   objection by the United States Trustee filed at Docket

15   Number 1082 on December 7th.  The Debtors filed a reply

16   together with additional venture support on December 12th at

17   Docket Number 1160.

18         Your Honor, I did want to thank the Court and your

19   staff for accommodating us at this time.  We recognize this

20   is not the original hearing date set on this motion, but as

21   indicated in our reply and our papers, this is truly a

22   critical program for the company.  Particularly, we are

23   already suffering attrition of key employees, having lost

24   one of our original key participants and five of our

25   original (indiscernible) motion (indiscernible).

Page 8

1              And in this regard (indiscernible) provide a brief

2     overview in terms of where we are with the U.S. Trustee and

3     other stakeholders, if that would please the Court.

4              THE COURT:  Okay.

5              MR. DAHL:  Your Honor, we did receive informal

6     comments from the Official Committee of Unsecured Creditors

7     respectively thrust upon this motion.  We've addressed those

8     comments to modifications to the proposed (indiscernible) in

9     our reply revising order.  We did file a revised order last

10    night and we'd please mark the Court of the changes

11    reflected in the order at the appropriate time.

12             THE COURT:  Is that revised from what was attached

13    to the reply?

14             MR. DAHL:  Yes, Your Honor.

15             THE COURT:  Okay.

16             MR. DAHL:  Adding additional clarification and

17    statements for the record in conjunction with the resolution

18    (indiscernible) Official Committee of Unsecured Creditors --

19             THE COURT:  Okay.

20             MR. DAHL:  That the Dahl statements in support of

21    (indiscernible).  We have additional modifications

22    (indiscernible) reflected in the order filed last night

23    responding to (indiscernible) the lenders, resulting in

24    terms for its (indiscernible).  With those modifications,

25    and other than the objection raised filed by the United

Page 9

1    States Trustee, we're not aware of any other formal or

2    informal objections or issues raised by any other party.

3          With respect to the objection filed by the United

4    States Trustee, we have tried very hard to resolve that

5    objection, including unilateral modifications for our

6    program, additional evidentiary submissions, (indiscernible)

7    production to the U.S. Trustee, and unfortunately, we have

8    not been successful in our efforts to narrow any of the

9    issues raised by the U.S. Trustee's objections. Thus being

10   the understanding that the U.S. Trustee will proceed with

11   the entirety of its objections.

12          As I said, we understand, too, that the U.S.

13   Trustee does not intend to prosecute and enter objection but

14   would not be objecting to the admission of the declarations

15   that were stated in evidence.  And with that, Your Honor,

16   and subject to any questions of the Court, in terms of the

17   evidence here.

18          THE COURT:  Okay.  well, I -- first, I'd like you

19   to go through the changes that are made since the reply

20   brief.

21          MR. DAHL:  Sure.  (Indiscernible) the revised

22   formal order.

23          THE COURT:  (Indiscernible) copy of that.

24          MR. SCHWARTZBERG:  Your Honor, I apologize, Paul

25   Schwartzberg for the U.S. Trustee's Office.  I can get a

1    copy of that reply (indiscernible).

2              THE COURT:  Sure.

3              MR. DAHL:  May I approach, Your Honor?

4              THE COURT:  Yes.  Thanks.  Is this marked to show

5    the changes from the last order?

6              MR. DAHL:  Yes, Your Honor.

7              THE COURT:  Is the -- at the back?

8              MR. DAHL:  Correct, Your Honor.

9              THE COURT:  Okay.  Okay, (indiscernible) through.

10   I think I understand the basis for the changes.  You can

11   (indiscernible) questions about the defined term,

12   discretionary award. (Indiscernible).

13             MR. DAHL:  (Indiscernible) program took place, the

14   allegation of unused portions of the (indiscernible) pool be

15   allocated by the chief restricting officer in this provision

16   of our (indiscernible) committee on discretionary basis.

17             THE COURT:  Okay.  And that's the (indiscernible)

18   term?

19             MR. DAHL:  Correct, Your Honor.

20             THE COURT:  All right.  Okay.

21             MR. DAHL:  With respect to the changes generated,

22   Your Honor, the changes reflected at Page 3 (indiscernible)

23   clarifying in nature (indiscernible) changes (indiscernible)

24   substantive.

25             THE COURT:  All right.  Well, I mean, as I view

1    this, the point of this is that the Committee and the U.S.

2    Trustee have a right to look at the amended budget insofar

3    as it is a starting point for the (indiscernible) measure

4    the award and the reference to effectiveness or establishing

5    really goes to whether that budget is an appropriate

6    starting point for the award, so that the award is still

7    based on difficult-to-achieve performance.

8              MR. DAHL:  That's correct, Your Honor.

9              THE COURT:  Okay.  That's the Committee's and the

10   U.S. Trustee's understanding, too?

11             MS. BRAUNER:  Correct, Your Honor.

12             THE COURT:  All right.  So it's a totally separate

13   analysis from determining the budget which is really a

14   separate process but it ties into the reality of the budget.

15             MR. DAHL:  That's correct, Your Honor.

16             THE COURT:  Okay.  All right.

17             MR. DAHL:  And --

18             THE COURT:  The realistic nature of the budget.

19             MR. DAHL:  Correct, Your Honor.

20             THE COURT:  Okay.

21             MR. DAHL:  And I don't want to balance the changes

22   (indiscernible) notice (indiscernible) to the Committee to

23   the United States Trustee both with respect to that

24   potential reset of the budget targets and also

25   (indiscernible) for example the addition or modification of

1   the -- composition of the key participants (indiscernible).

2        THE COURT:  And the financial parameters around

3   that as well as (indiscernible).

4        MR. DAHL:  That's correct, Your Honor.

5        THE COURT:  Okay.

6        MR. DAHL:  So if any additional questions for the

7   Court (indiscernible).

8        THE COURT:  Okay.  I think I just have it -- does

9   this reflect the Committee's and the DIP Lender's

10   understanding with the Debtor?

11        MS. BRAUNER:  For the record, Your Honor, Sarah

12   Brauner, Akin Gump on behalf of the Creditors' Committee,

13   and yes, as Mr. Dahl articulated, we had never

14   (indiscernible) formal concerns which had been discussed

15   over the past several days and weeks, and those are

16   reflected in the order, in the plan documents, and in the

17   reply and with those changes, the Committee feels

18   comfortable supporting (indiscernible) requests.

19        THE COURT:  Okay.

20        MR. DAHL:  (Indiscernible) counsel

21   (indiscernible).  You can ask two additional additions

22   (indiscernible) DIP agent (indiscernible).

23        THE COURT:  So where there's (indiscernible) the

24   Trustee is also the DIP agent?

25        MR. HOWARD:  That's exactly right, Your Honor.

Page 13

1    George Howard from Skadden, Arps, the DIP agent and with

2    those changes (indiscernible).

3            THE COURT:  Okay, very well.  I have sort of

4    overriding question.  I want to make sure there's no

5    confusion over.  So before you get to the evidentiary

6    portion of the hearing, I just have these made clear.  The -

7    - as I read it, the KEIP, K-E-I-P, has two three-month

8    periods.  (Indiscernible) the budget and performance of the

9    budget starting at 10 percent over or not over.  The motion

10   then describes a second component of the KEIP tied to the

11   acceleration events which are essentially transformative

12   transactions (indiscernible) business.

13           It's not clear to me how that ties into any award.

14   So can you lay that out just for the record?

15           MR. DAHL:  Certainly, Your Honor.  As Your Honor

16   noted, there are two components to the KEIP. Your first is

17   Q1 and Q2 there's a performance-based measure, as Your Honor

18   noted, by comparison to the operating cash in the budget.

19   In addition, in the event of a transformative redaction,

20   that would cause an acceleration. That is the operative term

21   that's been used. Which could accelerate the full balance of

22   the KEIP opportunity, just approximately $8 million.  So --

23           THE COURT:  It truly is an acceleration event.

24           MR. DAHL:  Correct, Your Honor.

25           THE COURT:  So, for example, the thing that I

Page 14

1    didn't quite understand, is it a 12-month period?

2              MR. DAHL:  In terms of the entire pool, yes, it's

3    a 12-month period.  Currently with two quarterly tests for -

4    -

5              THE COURT:  For the KEIP, let me just make it

6    clear.  One of the -- say one of the parties for the KEIP is

7    entitled to his or her award because they, as a group, met

8    the 10 percent target or more and they (indiscernible) leave

9    voluntarily so they were there for the six months.  And then

10   they stay another three months and there's a Chapter 11 plan

11   confirmed in a month time.  And let's just say they decide

12   to (indiscernible) or not do any work for those three

13   months.  They don't get anything extra for those three

14   months, right?

15             MR. DAHL:  It's -- when you say anything extra for

16   those --

17             THE COURT:  They just get their regular salary or

18   (indiscernible) but they don't get any extra bonus because

19   it's just a six-month bonus period.

20             MR. DAHL:  If they're there for a transformative

21   transaction, Your Honor, they would be entitled to the

22   (indiscernible) acceleration.

23             THE COURT:  But that happens after the six months.

24             MR. DAHL:  Correct.

25             THE COURT:  So they've already earned their bonus

Page 15

1    for the six months.  Do they get any bonus for the next

2    three months?

3              MR. DAHL:  I understand, Your Honor.  So

4    (indiscernible) third quarter in the Chapter 11 cases --

5              THE COURT:  Right.

6              MR. DAHL:  We would expect that we will

7    (indiscernible) in terms of (indiscernible) seeking approval

8    for an additional operating measure --

9              THE COURT:  All right.

10             MR. DAHL:  (Indiscernible).

11             THE COURT:  That's an approved any such measure

12   and there's no way to get any bonus for that hypothetical

13   extra three months or extra six months?

14             MR. DAHL:  Not with respect to operating funds,

15   Your Honor.  In the hypothetical, if there is a

16   transformative transaction in nine months, is the case,

17   (indiscernible) acceleration (indiscernible).

18             THE COURT:  But there's nothing to accelerate,

19   because I haven't approved it yet.  I've only approved the

20   first six months.

21             MR. DAHL:  As defined in the KEIP, for the Court,

22   you're defining an acceleration event that is this

23   transaction occurring within 12 months.

24             THE COURT:  I understand, but I think it's a true

25   acceleration of something you've already earned.  Since I

Page 16

1    haven't approved anything beyond six months, you're going to

2    come back to me after six months.

3              MR. DAHL:  We will come back after six months --

4              THE COURT:  All right.

5              MR. DAHL:  -- with respect (indiscernible).

6              THE COURT:  So you can set up this mechanism for

7    acceleration, but right now, I'm only approving --

8              MR. DAHL:  I understand.

9              THE COURT:  -- the acceleration if the

10   transformative acceleration that occurs within the first six

11   months.

12             MR. DAHL:  Understood, Your Honor.

13             THE COURT:  Okay.

14             MR. DAHL:  -- make sure that that's

15   (indiscernible).

16             THE COURT:  Just wanted to make sure, because, you

17   know, otherwise it would truly be just a save on this for

18   after six months.

19             MR. DAHL:  We'll make sure that the acceleration

20   event will apply only in the six-month period.

21             THE COURT:  You set up that structure so that you

22   are able to, with your consultants, with the independent

23   directors, with the Committee, the DIP Agent, agree on a

24   metric that's suitable for these cases if it's going to take

25   another six months.  You've already set up that

1    acceleration.

2            MR. DAHL:  That's correct.

3            THE COURT:  Okay.  All right.  Just wanted to make

4    sure that was clear on that.  Okay.

5            MR. SCHWARTZBERG:  Your Honor, I apologize for --

6            THE COURT:  Let me just -- state your name again.

7            MR. SCHWARTZBERG:  Yeah, Paul Schwartzberg for the

8    U.S. Trustee's office.  This is actually a transformative

9    conversation (indiscernible) intended on the work.  My

10   understanding and the U.S. Trustee's understanding is that

11   we were in month seven, eight, or nine and there was an

12   acceleration event --

13           THE COURT:  Right.

14           MR. SCHWARTZBERG:  -- say a sale of all the assets

15   and we're a net cash flow of 104.  We haven't reached 110.

16           THE COURT:  Right.

17           MR. SCHWARTZBERG:  They would get a bonus as if

18   they were up to 120 -- the 120 percent of cashflow.  And my

19   understanding of what just went on -- and I could be wrong -

20   - is that that's not correct.

21           THE COURT:  That's why I wanted to clarify.  I

22   though there was some --

23           MR. SCHWARTZBERG:  That was our -- that was a

24   primary objective with our --

25           MAN 1:  Objection.

1           MR. SCHWARTZBERG: -- objection of us -- of the

2    U.S. Trustee is that in months seven through 12, even if

3    they were below the 110 percent --

4           THE COURT:  Right.

5           MR. SCHWARTZBERG:  -- and there was, say, a sale

6    that didn't save one job, did not provide one penny to

7    unsecured creditors, there would still be a bonus.  We

8    thought that was retentive in nature --

9           THE COURT:  I wanted you to clear that up.

10          MR. SCHWARTZBERG:  So it's my understanding --

11   once again, I apologize for being dense, Your Honor -- is

12   that that is now (indiscernible).

13          THE COURT:  Okay.

14          MR. DAHL:  And to be clear, we will make clear in

15   the order that acceleration event would trigger acceleration

16   provided that transformative transaction occurs in the first

17   six-month period in the case.

18          THE COURT:  Okay, very well.

19          MR. DAHL:  (Indiscernible).

20          THE COURT:  Yes.

21          MR. DAHL:  We submitted full declarations in

22   support of the (indiscernible), Your Honor.  The first is a

23   declaration of (indiscernible) which is attached to our

24   motion as Exhibit B.  Second is a declaration of Mr. Meghji,

25   the Debtors' CRO (indiscernible) Exhibit C.  The

1    supplemental declaration of Mr. Meghji attached to our reply

2    brief is Exhibit D and the declaration of Mr. Robert

3    (indiscernible), the Debtors' chief human resources officer

4    (indiscernible) Court today and be able to testify.  We'd

5    ask that those declarations be admitted into evidence.

6            THE COURT:  Okay.  I've reviewed each of those

7    declarations.  Does anyone want to cross examine any of the

8    declarants?  Okay, I'll admit the declarations.  I have a

9    couple questions that you may be able to answer.  If not,

10   you can turn to one of the declarants who's best able to

11   answer that, but I've reviewed what she wrote.

12           MR. SCHWARTZBERG:  Your Honor, for the record

13   (indiscernible) stipulates it be put on the record.  We

14   weren't cross examining them, but the Debtor indicates

15   certain state certain facts.

16           THE COURT:  Fine.

17           MR. DAHL:  (Indiscernible) everyone stipulated

18   (indiscernible) with the U.S. Trustee.

19           THE COURT:  Okay.

20           MR. DAHL:  Namely, the core participants included

21   the following individuals.  The Debtors' VP and head of

22   supply chain and has approximately 1,895 direct and indirect

23   reports.  And additionally, the core participants include

24   the Debtors' VP, CFO, and COO of home improvement who has 14

25   direct reports and approximately 2,186 direct and indirect

 1     reports.

 2              THE COURT:  When you say "direct reports," you

 3     mean to them or to --

 4              MR. DAHL:  Reporting directly to them.  Yes, Your

 5     Honor.  The core participants also include (indiscernible)

 6     Sears Logistics who has eight direct reports and

 7     approximately 1,908 direct and indirect reports.  The

 8     Debtors' VP and general manager of the retail stores

 9     (indiscernible) retail services who has eight direct reports

10     and approximately 10,576 direct and indirect reports.

11              THE COURT:  Okay.

12              MR. DAHL:  With that, Your Honor, that is the

13     evidence in support of (indiscernible) here today.  Your

14     Honor, I won't belabor the argument (indiscernible) KEIP can

15     occur.  As I noted, we have no objections other than the

16     objection raised by the Office of the United States Trustee

17     or another economic (indiscernible) Chapter 11 cases

18     (indiscernible).

19              The United States Trustee has (indiscernible)

20     those objections.  With respect to the KEIP, we understand

21     the U.S. Trustee's objection (indiscernible) the

22     acceleration event (indiscernible) nature (indiscernible)

23     and the Debtors failure to establish the importance of the

24     key participants (indiscernible).

25              Additionally, Your Honor, the United States

Page 21

1    Trustee is objecting (indiscernible) budgets and therefore

2    adjust targets (indiscernible) no longer be incentivized to

3    require a performance.  And the U.S. Trustee's object to the

4    basis that a KEIP is a (indiscernible) feature where a party

5    receives a bonus and then departs within a specified period

6    of time (indiscernible) paid those monies, those monies

7    should be subject to (indiscernible).

8            Your Honor, we think we could rest (indiscernible)

9    of the United States Trustee's issue (indiscernible) with

10   respect to our KEIP and the acceleration even is

11   (indiscernible) universe of the accelerating event

12   (indiscernible) in a six-month period at issue.  With

13   respect to the important of key participants (indiscernible)

14   the United States Trustee has not objected to admission into

15   evidence the declarations (indiscernible) this November,

16   which we think established on an undisputed basis the

17   significance of these individuals (indiscernible) success

18   and incentives targeted by this program.

19           (Indiscernible) the Debtors' modified budgets, we

20   do not have the ability to modify budgets unilaterally with

21   respect to the program.  In the event there is a

22   modification, (indiscernible) built in with respect to the

23   U.S. Trustee (indiscernible).  And with respect to clawback,

24   there is an intended component to clawback under the KEIP

25   for (indiscernible) clearer (indiscernible).  But we think

1    the clawback program is very important to the company,

2    frankly, to make sure the individuals who receive bonuses

3    don't turn around and walk away without (indiscernible).

4         Your Honor, (indiscernible).  We understand the

5    U.S. Trustee objects to the (indiscernible) primarily on the

6    basis of the Debtors' failure to (indiscernible) a burden to

7    establish (indiscernible) participants (indiscernible)

8    caselaw.  Your Honor, again, we (indiscernible) the record

9    is clear that the (indiscernible) are not (indiscernible)

10   and may not be reasonable (indiscernible).  None of our core

11   participants are Section 16 officers.  None of our core

12   participants report directly or none of our core

13   participants participate in strategic planning or strategic

14   discussions or control the disposition of material assets

15   (indiscernible) Chapter 11 states.

16        They're senior vice presidents to keep

17   (indiscernible) which is the senior-most executive level in

18   the Debtors' organization.  We do have three individuals

19   (indiscernible), but again, (indiscernible) the caselaw

20   (indiscernible) necessary to (indiscernible) insider in the

21   caselaw per extention.

22        As Your Honor may have been able to tell,

23   (indiscernible) facts.  We knew with respect to Mr.

24   Schwartzberg and highlighted the fact that certain key

25   participants (indiscernible) a number of indirect reports,

Page 23

1    but Your Honor, there's no support in the caselaw.  There's

2    a number of individuals (indiscernible) their status isn't

3    separate.  As Your Honor knows, insider status is key to the

4    extent to which an individual's control over relation to

5    material (indiscernible) transactions should trigger an

6    increased level of scrutiny to those individuals.

7            And Your Honor, here, the notion that

8    (indiscernible) direct reports is not correlated to the

9    control that they may have such that (indiscernible)

10   warranted (indiscernible).  Again, those individuals with a

11   number of direct reports do not, in our (indiscernible)

12   strategy, (indiscernible) reporting (indiscernible). So we

13   don't think it would be appropriate to use the extent to

14   which they have direct or indirect reports as a proxy for

15   their insider status.

16           We do think, Your Honor, (indiscernible)

17   instructed in terms of bifurcating the appropriate universe

18   of insiders (indiscernible) noninsiders.  (Indiscernible)

19   dissension or (indiscernible) subsequent to the resignation

20   (indiscernible) key participants, that caused an increase in

21   responsibility for two individuals (indiscernible).  As a

22   function of that increased responsibility, we determined it

23   would be appropriate for them to treat them as insiders

24   reflecting (indiscernible).  So we think we made appropriate

25   modifications, recognizing the right standard in the law

Page 24

1    which is the sole control our individuals have such that

2    hold scrutiny of their insider status (indiscernible).  Your

3    Honor, with that --

4            THE COURT:  I'd like to explore the

5    (indiscernible) issue for --

6            MR. DAHL:  Certainly, Your Honor.

7            THE COURT:  There are multiple Debtors here and

8    you referenced (indiscernible) referenced board appointments

9    and (indiscernible) control over decision making for the

10   corporation.  I'm assuming, but maybe I'm wrong, there are

11   multiple boards here -- are there, for these various

12   corporations?

13           MR. DAHL:  They are different subsidiaries.

14           THE COURT:  So, and just looking at the pleadings,

15   some of the people who fall into the curve are at a high

16   level in connection with either what seems to be a separate

17   corporation or a separate business segment, that it

18   (indiscernible) a lot of money on either one of those

19   (indiscernible) potential revenue.  So my question is, when

20   you talk about decision making, are you just focusing on,

21   you know, the entire corporate enterprise or is it an

22   effective control by the holding companies who are over all

23   the other boards and decision making at subsidiaries levels?

24           MR. DAHL:  With respect to decision making, Your

25   Honor, the relevant board is the Sears Holding

Page 25

1    (indiscernible) referring to in the papers, referring to the

2    board appointed (indiscernible) Sears Holding Corp. board

3    and even for subsidiary officers, ultimately, they're

4    reporting their responsibilities governed by (indiscernible)

5    and supervising the Sears Holding Corp. board.

6            THE COURT:  So, you know, if you can't answer

7    this, maybe one of the declarants can.  There's -- in is it

8    Weeber or Weber?

9            MR. DAHL:  Weber.

10           THE COURT:  Mr. Weber's declaration, supplemental

11   declaration.  He describes in Paragraph 7, the job duties of

12   key participants, the key participants.  And then in

13   Paragraph 13, he refers to three co-participants who were

14   appointed by the board and then he lays out the

15   (indiscernible) of those (indiscernible).  And I don't think

16   those three really do have specific segment -- business

17   segment authority.

18           They're basically across the board that they're

19   sort of second tier professionals, assistant -- deputy

20   general counsel (indiscernible) tax which is a subsidiary of

21   the corporate counsel's office, (indiscernible) business

22   finance which is, you know, a junior position to the CFO.

23   So I was actually less concerned about them because they're

24   -- you know, hold the company level and accept the

25   declaration statement that they're under the control of

1    their boss and can't do -- although they're important

2    people, they can't do the types of things that hit within

3    (indiscernible) status.

4              But I was more concerned whether they're --

5    whether some of the other KERP participants actually have

6    operation -- more than operational control over a stand-

7    alone corporation within the Debtors' corporate structure or

8    the abilities, if they could make wide-ranging decisions

9    over a major business segment or subsidiary.  There's

10   probably a subsidiary (indiscernible) segment.

11             MR. DAHL:  In answer to that, Your Honor,

12   (indiscernible) subsidiary entities, rather than the Sears

13   Corporate structure, the ultimate determinations to

14   unqualified (indiscernible) dictate the use of corporate

15   assets (indiscernible) the Sears Holding Corp. board.

16             THE COURT:  All right.  So the practices and

17   procedures in place so that if you want to, I don't know,

18   change your product line at a particular store or change the

19   insurance program, Sears insurance, you have to go to the

20   board to do that?

21             MR. DAHL:  In terms of specific questions, Your

22   Honor --

23             THE COURT:  I'm just going to use examples of the

24   out of the ordinary course at the subsidiary level, it might

25   not be at the corporate level.  I just want to make sure

1   that those people aren't -- at the subsidiary level some of

2   which they qualify submitting a Chapter 11 on their own, but

3   they're not -- they don't have that level of control over

4   that subsidiary.

5          MR. DAHL:  Let me just clarify one point, if I

6   may.

7          THE COURT:  Sure.

8          MR. DAHL:  Thank you, Your Honor, (indiscernible),

9   just wanted to confirm, (indiscernible) restructuring

10  officer that was confirmed (indiscernible) management is

11  team is (indiscernible) is the key team for any decisions

12  (indiscernible) Your Honor suggested we go through, key

13  team, (indiscernible).

14         THE COURT:  (indiscernible) if someone, let's say

15  a divisional vice president said from now on, we're going to

16  change our insurance program to be, you know, a material

17  change, whatever that would be.

18         MR. DAHL:  Correct, Your Honor, that would go

19  through the (indiscernible).

20         THE COURT:  Okay.  Is that part of their job?  I

21  mean, how is that described to them?  How do they know that

22  they can't do those sorts of things?

23         MR. DAHL:  The company has in place internal

24  protocols, and delegations of authority.  And then there is

25  the operating practice, consistent with (indiscernible).

1          THE COURT:  All right.  And then I wanted to turn

2    to the metric for the fee, for a second.  I suppose I could

3    have done this (indiscernible) in my head, but under the

4    budget, let's assume for the moment that the company

5    outperforms the budget by 10 percent, so that the record

6    could be (indiscernible).  Do we know what that aggregate

7    number would be?  Just want to compare it to what the

8    aggregate payout would be.

9          MR. DAHL:  Let me just double-check my math over

10   here.  Okay, threshold performance, which would be the

11   aggregate payout.

12         THE COURT:  Right.

13         MR. DAHL:  That would be $1.062 million across the

14   participants of the quarterly (indiscernible).

15         THE COURT:  Right, but I'm saying, I want to

16   compare that to what the company gets from that 10 percent.

17   If you're 10 percent over budget, what's the increased cash

18   that comes in?

19         MR. DAHL:  Well, the (indiscernible) measure, the

20   key performance is measured at (indiscernible).

21         THE COURT:  Right.

22         MR. DAHL:  I see, I would need to check the math

23   (indiscernible) on that and compare it to the 10 percent or

24   (indiscernible).

25         THE COURT:  Right, I just want to -- to put it

Page 29

1    differently, if it's a relatively small percentage, then

2    it's a good deal.  If it's 80 percent of the 10 percent that

3    the company's getting, then it's not that great of a deal.

4              MR. DAHL:  Okay.  Thank you for your patience,

5    Your Honor.  Having a sidebar with more adept

6    mathematicians.  At threshold performance, (indiscernible)

7    would need to outperform a $6 million in order to trigger

8    that 1 million (indiscernible).

9              THE COURT:  Okay, okay.  And that ratio pretty

10   much continues up to the 20 percent?

11             MR. DAHL:  It scales upwards, Your Honor.

12             THE COURT:  Okay.  And then in relation to the

13   KERP, is that -- the KERP, you fixed the metric, so the KERP

14   is included in the calculation, originally.  But is it

15   budgeted for?

16             MR. DAHL:  Yeah, the KERP

17   's in the budget.

18             THE COURT:  Okay, roughly, a little under 17

19   million.

20             MR. DAHL:  Yes, sir.

21             THE COURT:  Okay, thank you.  I'd like to hear

22   from the U.S. Trustee, (indiscernible).

23             MR. SCHWARTZBERG:  Good morning, Your Honor.

24             THE COURT:  Good morning.

25             MR. SCHWARTZBERG:  Got two additional notes.  One,

1    in both -- Paul Schwartzberg for the U.S. Trustee, Your

2    Honor.  In both the Debtor's reply, and in (indiscernible),

3    I just wanted to note that Debtor refers to the fact that

4    the U.S. Trustee is the only party that is objecting, or

5    filed an actual objection, and we have no (indiscernible) a

6    financial stake in the Debtor.

7             And I just want to point out, I'm sure Your Honor

8    is aware, that's not the basis for the motion, regardless of

9    who objects, the Debtor still needs to comply with the

10   Bankruptcy Code.  Second, Your Honor, the primary focus of

11   our objection, or our presentation today was going to be on

12   the acceleration event, on 6 through 12.  So now that that

13   is off the table --

14             THE COURT:  We've given that up.

15             MR. SCHWARTZBERG:  I appreciate Your Honor's

16   comments on that.  The one concern we still have with the

17   acceleration event is that if you're within anything six

18   months, and they are below the 110 percent, as I read the

19   document, although it might have changed now.

20             But as I read it, if they are say, 99 percent over

21   budget, and there is an acceleration event within that first

22   six months, the acceleration event still will allow the

23   participants to receive the bonus as if they were at 120

24   percent.  So --

25             THE COURT:  Is that right?  I didn't think that

1   was right.

2           MR. DAHL:  Yes, that's correct, Your Honor.

3           MR. SCHWARTZBERG:  So we still had --

4           THE COURT:  I thought they had to be, at least for

5   that period, within the metric.

6           MR. DAHL:  In an acceleration event, the full

7   balance will accelerate.

8           THE COURT:  But only if they're earning it.

9           MR. DAHL:  We will rise to make clear that the

10  acceleration event will be subject to falling within the

11  parameters of the (indiscernible).

12          THE COURT:  So just to be clear, that let's say

13  the plans is confirmed within four months, or there's a sale

14  of substantially all the assets within four months, any time

15  before six months.  If in those four months, the metric has

16  been met, which is four months, that is the first quarter

17  over the ten percent, first month of the second quarter is

18  over ten percent, then it's a summary.  But if for the first

19  month of the second quarter, it's not over 10 percent, it's

20  say, four percent, I didn't think it would be accelerating,

21  since they haven't in essence made their target.

22          MR. DAHL:  Two clarifications, Your Honor.  If the

23  accelerating event occurs in the second quarter --

24          THE COURT:  Yeah.

25          MR. DAHL:  The accelerated balance will not

```
 1    include the first quarter.  Acceleration of a mechanism only

 2    applies to remaining quarters.

 3            THE COURT:  I understand, but if you're in that

 4    second quarter, and the metric is actually lower, it seems

 5    to me that that's a problem.

 6            MR. DAHL:  We will make it clear that the

 7    acceleration event will be tied to --

 8            THE COURT:  Be in compliance in that time.

 9            MR. DAHL:  At least threshold performance.

10            THE COURT:  Every time, which is the 10 percent.

11            MR. DAHL:  Yes, Your Honor.

12            THE COURT:  All right.  Because otherwise, I think

13    it would have fallen afoul of the statute, and the case law

14    by (indiscernible) --

15            MR. SCHWARTZBERG:  So just as I've indicated, Your

16    Honor, stated on the record again, they need it make the 110

17    percent for (indiscernible) --

18            THE COURT:  Well, with one caveat, which is that

19    again, if the acceleration event occurs in the middle of

20    that second quarter, they only have to make the 10 percent

21    up to the point --

22            MR. SCHWARTZBERG:  Yes, exactly.  And then they

23    get an acceleration of that quarter, but if we're at 94

24    percent, 103 percent, acceleration event doesn't trigger the

25    bonus.
```

1            THE COURT:  Correct.  And the rationale for that

2    is I apricate that they are working hard, and getting the

3    case over with, but at that point, it really does look like

4    they're just getting paid to be there, because part of the

5    job is to work hard.  On the other hand, I have no problem

6    with the acceleration, because there's real benefit to the

7    company in having the transformative event early.  And that

8    transformative event probably will be more favorable to the

9    company if it is exceeding expectations.  So I don't have

10   any problem with tying to the two together that way, as was

11   the case, I think, in Borders, for example.

12           MR. SCHWARTZBERG:  Your Honor, with those changes,

13   I would just turn to (indiscernible).

14           THE COURT:  Okay.

15           MR. SCHWARTZBERG:  I know Your Honor's already

16   exploring this issue, but for the record, Your Honor, I

17   think there's a fundamental difference between, I guess what

18   the Debtors believe, and the U.S. Trustee believes an

19   insider is defined as.  In Weber declaration,

20   (indiscernible) indicate there needs -- the company must

21   have -- an insider must have a company (indiscernible),

22   whereas the U.S. Trustee is relying on the (indiscernible)

23   case, that indicates that a person with (indiscernible)

24   responsibility overseeing an aspect of the debt can be an

25   insider.  So it's a segment that can be a $400 million

1    segment, but not the entire case.  It's (indiscernible) in

2    charge of that, then the U.S. Trustee (indiscernible) --

3            THE COURT:  Well, it depends on whether they

4    charge (indiscernible), and that's why I went to through the

5    discussions with Debtor's counsel.  You can have significant

6    operational responsibility for a big enterprise, and still

7    be a junior executive, in essence.  And you may be very

8    well-compensated for what you do, for a big enterprise.

9            But if you can't make the transformative decisions

10   for that -- (indiscernible) words here, you can't make the

11   big decisions for that enterprise, and I don't think that

12   you would fit within the definition, at least it's I think

13   very well-articulated by Judge Glenn in the Borders case, up

14   to an officer, as defined by Black's and the corporate case

15   law.  You're important to the enterprise, but you don't have

16   the ability to (indiscernible), or to cause your friends at

17   the corporation (indiscernible).  And I think that's what

18   503(c) (indiscernible).

19           MR. SCHWARTZBERG:  Just for the record, Your

20   Honor, the U.S. Trustees believe the case, the current

21   participants that were appointed, the ones that have titles

22   of CFO or COO, and the ones that have thousand or more

23   reports, including the ones we previously discussed, on I

24   think it was Paragraph 13 in the Weber declaration.  In

25   fact, one of them that he attacks and identifies why that

Page 35

1   (indiscernible), why tax policy and strategy, Mr.

2   (indiscernible), those are (indiscernible) case.  I wanted

3   to put that on the record, Your Honor.

4           That argument, with the changes of regarding the

5   acceleration (indiscernible) are to-- the change in the

6   acceleration (indiscernible) satisfies us with

7   (indiscernible), but I just want it on the record that the

8   UST believe that those participants are clearly insiders.

9           THE COURT:  Well, I mean, I do see your point on

10  the tax person.  As described, but I'll contrast it to the

11  manager of business finance, and the deputy general counsel,

12  which are also described in Paragraph 13 of Mr. Weber's

13  declaration.  The manager of business finance basically

14  interacts with everyone else under the control of the CFO,

15  and other people.  He's a facilitator, in essence, or she.

16          And the deputy general counsel does important

17  things, including he or she is involved in negotiations, and

18  implementing providing legal support, et cetera.  But again,

19  it doesn't seem to me that person has material decision-

20  making authority.  The EVP tax, or the (indiscernible) tax

21  is described as "has overall responsibility for all aspects

22  of tax and of leadership for tax organization, leads the

23  design and implementation of enterprise-wide tax policy and

24  strategies."  So basically, you look at that, it suggests

25  that that person can decide whether we're going to switch to

Page 36

1    a particular entity, to being a different corporate form,

2    for example, which is really important.  So maybe I should

3    hear a little more about that person.

4            And I'll note that one of the key decisions in a

5    Chapter 11 case like this is tax-related, the Debtor's tax

6    attributes are, at least as set forth in one of the first-

7    day motions, potentially extremely valuable.  So if that

8    person really is in charge of (indiscernible) Delaware,

9    subject to board approval, which everyone else is subject to

10   board approval, and (indiscernible) then that person

11   (indiscernible).

12           Well, generally, if I'm reporting to the board, or

13   being employed by the board, Judge Glenn discusses this in

14   Borders.  Page 468, he says the term officer is likewise not

15   defined by the Code, however Courts have looked to Black's

16   Law Dictionary as a source of authority.  According to

17   Black's, an officer is defined as "a person elected or

18   appointed by the Board of Directors to manage the daily

19   operations of a corporation, such as a (indiscernible)

20   secretary or treasurer."

21           The Court have also noticed a (indiscernible)

22   corporate law, including Delaware Code for judicial

23   guidance.  For example, (indiscernible) case could examine

24   the different laws, both state and federal, and concluded

25   that "board appointment or election is frequently identified

Page 37

1    as distinguishing officer positions from other type of

2    positions within a corporation," and then "if the

3    (indiscernible) is present, the title of the position

4    ordinarily is an officer position as a matter of law?"  And

5    (indiscernible) require the additional elements on decision

6    (indiscernible).

7            So this person is appointed by the board, it seems

8    they put the notice more on the company to explain why he or

9    she is an insider.  And (indiscernible) just two levels down

10   from the board, so maybe they should be (indiscernible) to

11   occur.  The other two are also appointed by the board, but

12   to me, they were (indiscernible) report, not the

13   (indiscernible) quibble of assistant secretary, and

14   (indiscernible).  So I think you may be right about the task

15   person, unless that declaration really is not -- should be

16   qualified somehow.

17           MR. DAHL:  With respect to our vice president of

18   tax, maybe it's (indiscernible), which is that in terms of

19   the responsibilities delegated to the VP of Tax, the VP does

20   not have an independent decision-making for (indiscernible),

21   in the hypothetical Your Honor did, changing the order form,

22   the documentation --

23           THE COURT:  Well, it kind of looks like that's who

24   they are.  If they decided tax policy, effectively they're

25   changing the form.

1              MR. DAHL:  Tax policy recommendations for this

2     individual will be made to the chief financial officer, and

3     ultimately office of the chief executive, and then the

4     board.  Certainly there's a statutory --

5              THE COURT:  So nobody had the authority to set tax

6     policy?

7              MR. DAHL:  Unilaterally, without reporting to the

8     CFO, or the office of the chief executive?

9              THE COURT:  Right.

10             MR. DAHL:  No, Your Honor.

11             THE COURT:  Okay, okay.

12             MR. DAHL:  So they are responsible for execution

13    and making recommendations, but those recommendations are

14    made to the CFO or the Office of the Chief Executive,

15    (indiscernible).

16             THE COURT:  Okay.  Do you want to cross-examine on

17    that point, or are you willing to accept that clarification

18    of the declaration, Mr. Schwartzberg?

19             MR. SCHWARTZBERG:  Your Honor, I have no reason to

20    believe that what they're saying is inaccurate.

21             THE COURT:  All right.  Okay, well based on that

22    clarification, I would say that they're not (indiscernible).

23             MR. SCHWARTZBERG:  Thank you, Your Honor.

24             THE COURT:  Okay.  It's somewhat ironic that the

25    larger a corporation is, the more responsibility you have

1    without qualifying as an officer, but actually, that kind of

2    makes sense.  Unless it's a decentralized corporation, which

3    maybe business schools will look back on this and say it

4    should have been.

5            Okay, I did not get, in looking at the U.S.

6    Trustee's objection, or the oral argument, I did not get the

7    impression that the U.S. Trustee felt that as a business

8    judgment matter, if he was, in light of the changes that

9    we've discussed, or the clarifications that we've discussed

10   on the record.  Similarly, I did not view the U.S. Trustee's

11   objections, say that the KERP was, as a business judgment

12   matter, inappropriate.  Rather, that objection went to who

13   should be given that KERP.

14           And I think this is probably where the relevance

15   of no party with a financial stake in the case objecting is

16   relevant.  The business judgment standard by which an

17   appropriate key, in appropriate and a KERP should be

18   evaluated, as is clear in the case law, is essentially the

19   business judgment standard employed by Bankruptcy Courts in

20   the (indiscernible) transactions that (indiscernible)

21   Subsection 363(b) under the (indiscernible) facts and

22   circumstances.

23           And I need to be clear, when I say what I mean by

24   that.  I don't believe that is the corporate business law,

25   business judgment standard.  I think ultimately, that

1    (indiscernible) interest case.  Ultimately, the bankruptcy

2    judge has to apply his or her own sense of whether the

3    decision is in good exercise of business judgment, informed

4    by all the facts and circumstances as laid out on the

5    record.  However, as is the case here, there are multiple

6    parties who are themselves sophisticated, and they're

7    represented by sophisticated counsel, who have substantial

8    financial stake in the case, as well as Debtors who are

9    advised by experts such as (indiscernible).

10            The Court will be taking very little comfort in

11   the lack of their objection, or in the case of Mr. Weber

12   (indiscernible), the support of the plan decision.  So I

13   conclude that the KERP does satisfy the business judgment

14   standard.  I also believe that taking into account the clear

15   admonition in the case law is more or less the purpose of

16   Section 503(c)(1), which as we clearly see in the case law

17   (indiscernible) Congress enacted the statute as part of the

18   2005 BAPCPA amendments to "eradicate the notion that

19   executives were entitled to bonuses simply for staying with

20   the company through the bankruptcy process."  And that in

21   light of that concern, "courts must be wary of attempts to

22   characterize what is essentially an insider retention plan

23   as an incentive plan to bypass the requirements Section of

24   503(c)(1).  We should consider the circumstances under which

25   particular proposals are made, along with the structure of

1    the compensation packages, when determining whether the

2    compensations programs are subject to Section 503(c)(1)."

3            And then further quoting, "The court must examine

4    the proposed KERP mindful of the practice that Congress

5    sought to eradicate and, at the risk of oversimplification,

6    determine whether the proposed targets are designed to

7    motivate insiders to rise to the challenge, or incentive

8    merely to report to work."

9            Those are all from In re Hawker Beechcraft, Inc.,

10   479 B.R. 308, 313 (Bankr. S.D.N.Y. 2012) and the authorities

11   cited in (indiscernible).  And I've reviewed the KEIP in

12   that light and I started to find on the record today, and

13   it's also clarified and resolved before then, even with

14   informal objections by the Creditors' Committee.  I believe

15   that the KEIP is primarily incentivizing (indiscernible)

16   clearly intended.  And that the finding here, in light of

17   the Debtors' business, is a reasonable one.  It is not a

18   layout for (indiscernible) will be important to reach.

19           I also believe that with a business of this size,

20   as was set forth in the declarations, it's unreasonable to

21   expect that you would have specific individual targets for

22   these people (indiscernible) sports analogy.

23           As recognized by, actually, Judge Bernstein in the

24   Hawker Beechcraft case where he refers to (indiscernible) or

25   as part of the team (indiscernible) as far as the measure of

1    the general counsel's performance by (indiscernible)

2    specific measure (indiscernible) overall that

3    (indiscernible).  But obviously, general counsel

4    (indiscernible) Chapter 11 (indiscernible) particularly

5    (indiscernible) to that success when it occurs.

6            So, I believe that, again, turning to the second

7    element, or the second (indiscernible) analysis for the

8    KEIP, it does satisfy the standard of 503(c)(3) as

9    determined by the courts in the circuit to make business

10   (indiscernible).

11           The only remaining objection, then, is whether

12   there are certain members of the group that would be covered

13   by the proposed KERP plan that really should not be limited

14   because they modified (indiscernible) put aside, which

15   includes officers.  And at one level, since these people --

16   at least many of them have titles like vice president,

17   manager, director -- not board director -- but director of a

18   firm, something.

19           They are (indiscernible) to be defined as an

20   officer.  But as the case law makes clear, particularly for

21   a different case that I previously quoted, which appears at

22   453 B.R. 459, you can be a (indiscernible) or a first

23   lieutenant and not be an officer for purposes of Section

24   503(c)(1).

25           So, the question is applying the Congressional

Page 43

1    purpose and the general designation of officer in the legal

2    context for a corporation, are any of these people

3    "officers" for purposes of 503(c)(1) therefore not qualified

4    to be in the KERP.

5           For most of the over 300 individuals proposed to

6    be covered by the KERP, that's really not an issue.  There

7    are a handful of people who under the facts and

8    circumstances analysis may -- question (indiscernible).

9    Particularly the three who are quoted by the board.  But

10   based on the record before me, including the representations

11   made at the hearing as to their job responsibilities

12   (indiscernible) indications of the decision-making

13   authority.  And consequently, in their -- the likelihood

14   that they would not be able to (indiscernible) or

15   collectively with the other decision-makers (indiscernible)

16   favor themselves at the expense of other employees or

17   creditors, I conclude that they are not insiders for

18   purposes of Section 503(c)(1).

19           I took a look again at U.S. Bank National

20   Association (indiscernible) LLC, 138 Supreme Court

21   (indiscernible) 2018 to make sure that (indiscernible) court

22   hadn't changed anything in the law on this issue of where

23   there's an insider.  But based on my review of that case,

24   which only stands for the proposition as a legal matter,

25   that a determination by the Bankruptcy Court of insider

Page 44

 1   status is primarily factual and therefore subject to

 2   (indiscernible) review standard as opposed to a lesser

 3   standard.

 4           I don't think this (indiscernible) standard before

 5   us to the case law (indiscernible) judges have referred to

 6   over the years.  And that is well summarized in the Borders

 7   case on this.

 8           So, the only thing I would say is that at least

 9   based on the concurring opinions of four other justices in

10   that case, the standard for deciding an insider is a still

11   somewhat open, at least a non-statutory insider would be

12   very context-specific.  So that they will be, for example,

13   an insider for (indiscernible) 29(a)(10) purposes is

14   different that 503(c)(1) purposes.

15           But again, based on the record before me, I don't

16   believe that the Congressional purpose would be served by

17   pre-designating any of the people who are currently

18   (indiscernible) eligible for the KERP and its insiders.

19           So, I'll grant the motion, as modified, including

20   the (indiscernible).

21           MAN 1:  Thank you, Your Honor.

22           MAN 2:  Thank you, Your Honor.  I apologize.  Just

23   because of the changes specifically regarding the

24   acceleration, then, I would just ask counsel to circulate a

25   --

Page 45

1           THE COURT:  Yes.  So, the order should be

2   circulated to the counsel's, the Committee, the DIP lenders,

3   and the U.S. Trustee.

4           MAN 2:  Absolutely, Your Honor.

5           THE COURT:  But in the meantime, I think people

6   can rely on the (indiscernible) today (indiscernible).

7           Okay.  Thank you.

8           MAN 2:  Thank you.

9           THE COURT:  I had actually had (indiscernible), so

10  I'm not going to (indiscernible).  And those of you who are

11  on the call, unless you're here for In re (indiscernible)

12  7th Avenue (indiscernible) case, you can ring off.

13           (Whereupon these proceedings were concluded at

14  11:12 AM)

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                             RULINGS

4                                              Page        Line

5

6    Related Relief Granted                     44          19

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6       Sonya
        Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o,
ou, email=digital1@veritext.com,
c=US

7       Date: 2018.12.27 14:39:22 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 20, 2018

[& - analysis]                                                                                    Page 1

**&**

**&** 3:11 4:1,15 5:1

**1**

**1** 17:25 29:8 40:16
  40:24 41:2 42:24
  43:3,18 44:14,21
**1,895** 19:22
**1,908** 20:7
**1.062** 28:13
**10** 13:9 14:8 28:5
  28:16,17,23 29:2
  31:19 32:10,20
  44:13
**10,576** 20:10
**10014** 4:10
**10018** 3:7
**10022** 4:3
**10036** 3:14 4:18
**1006** 4:9
**10153** 5:4
**103** 32:24
**104** 17:15
**10601** 1:14
**1082** 2:18 7:15
**10977** 3:21
**10:00** 2:12
**10:07** 1:17
**11** 14:10 15:4
  20:17 22:15 27:2
  36:5 42:4
**110** 17:15 18:3
  30:18 32:16
**11501** 47:23
**1160** 7:17
**11:12** 45:14
**11th** 4:2
**12** 14:1,3 15:23
  18:2 30:12
**120** 17:18,18
  30:23
**12th** 7:16
**13** 25:13 34:24
  35:12

**138** 43:20
**14** 1:16 2:12 19:24
**16** 22:11
**17** 29:18
**18-23538** 1:3
**19** 46:6

**2**

**2** 44:22 45:4,8
**2,186** 19:25
**20** 29:10 47:25
**2005** 40:18
**201** 4:9
**2012** 41:10
**2018** 1:16 2:12
  43:21 47:25
**248** 1:13
**29** 44:13

**3**

**3** 10:22 42:8
**300** 1:13 43:5
  47:22
**308** 41:10
**313** 41:10
**330** 47:21
**363** 39:21

**4**

**4** 3:13
**400** 33:25
**44** 46:6
**453** 42:22
**459** 42:22
**468** 36:14
**479** 41:10

**5**

**503** 34:18 40:16
  40:24 41:2 42:8
  42:24 43:3,18
  44:14

**6**

**6** 29:7 30:12

**620** 3:6
**664** 3:20

**7**

**7** 25:11
**766** 2:4,9,16 7:11
**767** 5:3
**7th** 7:15 45:12

**8**

**8** 13:22
**80** 29:2
**800** 4:2

**9**

**94** 32:23
**99** 30:20

**a**

**a.m.** 2:12
**abilities** 26:8
**ability** 21:20
  34:16
**abl** 3:12
**able** 16:22 19:4,9
  19:10 22:22 43:14
**absolutely** 45:4
**accelerate** 13:21
  15:18 31:7
**accelerated** 31:25
**accelerating**
  21:11 31:20,23
**acceleration**
  13:11,20,23 14:22
  15:17,22,25 16:7
  16:9,10,19 17:1
  17:12 18:15,15
  20:22 21:10 30:12
  30:17,21,22 31:6
  31:10 32:1,7,19
  32:23,24 33:6
  35:5,6 44:24
**accept** 25:24
  38:17
**accommodating**
  7:19

**account** 40:14
**accurate** 47:4
**achieve** 11:7
**actual** 30:5
**adding** 8:16
**addition** 11:25
  13:19
**additional** 7:16
  8:16,21 9:6 12:6
  12:21 15:8 29:25
  37:5
**additionally**
  19:23 20:25
**additions** 12:21
**addressed** 8:7
**adept** 29:5
**adjust** 21:2
**admission** 9:14
  21:14
**admit** 19:8
**admitted** 19:5
**admonition** 40:15
**advised** 40:9
**afoul** 32:13
**agenda** 2:11 7:11
**agent** 3:5,12
  12:22,24 13:1
  16:23
**aggregate** 28:6,8
  28:11
**agree** 16:23
**akin** 4:15 12:12
**allegation** 10:14
**allocated** 10:15
**allow** 30:22
**amended** 11:2
**amendments**
  40:18
**american** 3:12
**analogy** 41:22
**analysis** 11:13
  42:7 43:8

**andrew** 6:10
**andrews** 5:13
**answer** 19:9,11
  25:6 26:11
**apologize** 9:24
  17:5 18:11 44:22
**appears** 42:21
**applies** 32:2
**apply** 16:20 40:2
**applying** 42:25
**appointed** 25:2,14
  34:21 36:18 37:7
  37:11
**appointment**
  36:25
**appointments**
  24:8
**appreciate** 30:15
**approach** 10:3
**appropriate** 8:11
  11:5 23:13,17,23
  23:24 39:17,17
**approval** 15:7
  36:9,10
**approved** 15:11
  15:19,19 16:1
**approving** 2:2,7
  2:14 16:7
**approximately**
  13:22 19:22,25
  20:7,10
**apricate** 33:2
**aren't** 27:1
**argument** 20:14
  35:4 39:6
**arps** 3:11 13:1
**articulated** 12:13
  34:13
**aside** 42:14
**aspect** 33:24
**aspects** 35:21
**assets** 17:14 22:14
  26:15 31:14

**assistant** 25:19
  37:13
**association** 3:4
  43:20
**assume** 28:4
**assuming** 24:10
**attached** 8:12
  18:23 19:1
**attacks** 34:25
**attempts** 40:21
**attorneys** 3:4,12
  3:19 4:8,16 5:2
**attributes** 36:6
**attrition** 7:23
**authorities** 41:10
**authority** 25:17
  27:24 35:20 36:16
  38:5 43:13
**avenue** 3:6 4:2 5:3
  45:12
**award** 10:12 11:4
  11:6,6 13:13 14:7
**aware** 9:1 30:8

**b**

**b** 1:21 6:6 18:24
  39:21
**b.r.** 41:10 42:22
**back** 10:7 16:2,3
  39:3
**backenroth** 4:1
**balance** 11:21
  13:21 31:7,25
**bank** 3:12 43:19
**bankr** 41:10
**bankruptcy** 1:1
  1:12,23 30:10
  39:19 40:1,20
  43:25
**bapcpa** 40:18
**based** 11:7 13:17
  38:21 43:10,23
  44:9,15

**basically** 25:18
  35:13,24
**basis** 10:10,16
  21:4,16 22:6 30:8
**beechcraft** 41:9
  41:24
**behalf** 2:17 12:12
**belabor** 20:14
**believe** 33:18
  34:20 35:8 38:20
  39:24 40:14 41:14
  41:19 42:6 44:16
**believes** 33:18
**benefit** 33:6
**bernstein** 41:23
**best** 19:10
**beyond** 16:1
**bifurcating** 23:17
**big** 34:6,8,11
**black's** 34:14
  36:15,17
**board** 24:8,25
  25:2,2,5,14,18
  26:15,20 36:9,10
  36:12,13,18,25
  37:7,10,11 38:4
  42:17 43:9
**boards** 24:11,23
**bonus** 14:18,19,25
  15:1,12 17:17
  18:7 21:5 30:23
  32:25
**bonuses** 22:2
  40:19
**borders** 33:11
  34:13 36:14 44:6
**boss** 26:1
**brad** 6:8
**brauner** 4:20
  11:11 12:11,12
**brief** 8:1 9:20
  19:2

**bryan** 5:15
**bryant** 4:17
**budget** 11:2,5,13
  11:14,18,24 13:8
  13:9,18 28:4,5,17
  29:17 30:21
**budgeted** 29:15
**budgets** 21:1,19
  21:20
**built** 21:22
**burden** 22:6
**business** 13:12
  24:17 25:16,21
  26:9 35:11,13
  39:3,7,11,16,19
  39:24,25 40:3,13
  41:17,19 42:9
**bypass** 40:23

**c**

**c** 3:1 4:13 5:9 7:1
  18:25 34:18 40:16
  40:24 41:2 42:8
  42:24 43:3,18
  44:14 47:1,1
**calculation** 29:14
**call** 45:11
**canfield** 5:14
**can't** 25:6 26:1,2
**case** 1:3 15:16
  18:17 32:13 33:3
  33:11,23 34:1,13
  34:14,20 35:2
  36:5,23 39:15,18
  40:1,5,8,11,15,16
  41:24 42:20,21
  43:23 44:5,7,10
  45:12
**caselaw** 22:8,19
  22:21 23:1
**cases** 15:4 16:24
  20:17
**cash** 13:18 17:15
  28:17

[cashflow - court]                                                      Page 3

cashflow  17:18
cause  13:20 34:16
caused  23:20
caveat  32:18
certain  2:3,8,15
  19:15,15 22:24
  42:12
certainly  13:15
  24:6 38:4
certified  47:3
cetera  35:18
cfo  19:24 25:22
  34:22 35:14 38:8
  38:14
chain  19:22
challenge  41:7
change  26:18,18
  27:16,17 35:5
changed  30:19
  43:22
changes  8:10 9:19
  10:5,10,21,22,23
  11:21 12:17 13:2
  33:12 35:4 39:8
  44:23
changing  37:21
  37:25
chapter  14:10
  15:4 20:17 22:15
  27:2 36:5 42:4
characterize
  40:22
charge  34:2,4
  36:8
check  28:9,22
chestnut  3:20
chief  10:15 19:3
  38:2,3,8,14
chris  6:7
cimala  5:15
circuit  42:9
circulate  44:24

circulated  45:2
circumstances
  39:22 40:4,24
  43:8
cited  41:11
clarification  8:16
  38:17,22
clarifications
  31:22 39:9
clarified  41:13
clarify  17:21 27:5
clarifying  10:23
clawback  21:23
  21:24 22:1
clear  13:6,13 14:6
  17:4 18:9,14,14
  22:9 31:9,12 32:6
  39:18,23 40:14
  42:20
clearer  21:25
clearly  35:8 40:16
  41:16
clerk  7:2
code  30:10 36:15
  36:22
collateral  3:5
collectively  43:15
come  16:2,3
comes  28:18
comfort  40:10
comfortable
  12:18
comments  8:6,8
  30:16
committee  4:16
  8:6,18 10:16 11:1
  11:22 12:12,17
  16:23 41:14 45:2
committee's  11:9
  12:9
companies  24:22
company  7:22
  22:1 25:24 27:23

28:4,16 33:7,9,20
  33:21 37:8 40:20
company's  29:3
compare  28:7,16
  28:23
comparison  13:18
compensated  34:8
compensation
  41:1
compensations
  41:2
compliance  32:8
comply  30:9
component  13:10
  21:24
components  13:16
composition  12:1
concern  30:16
  40:21
concerned  25:23
  26:4
concerns  12:14
conclude  40:13
  43:17
concluded  36:24
  45:13
concurring  44:9
confirm  27:9
confirmed  14:11
  27:10 31:13
confusion  13:5
congress  40:17
  41:4
congressional
  42:25 44:16
conjunction  8:17
connection  24:16
consequently
  43:13
consider  40:24
consistent  27:25
consultants  16:22

context  43:2
  44:12
continues  29:10
contrast  35:10
control  22:14 23:4
  23:9 24:1,9,22
  25:25 26:6 27:3
  35:14
conversation  17:9
coo  19:24 34:22
copy  9:23 10:1
core  19:20,23
  20:5 22:10,11,12
corp  25:2,5 26:15
corporate  24:21
  25:21 26:7,13,14
  26:25 34:14 36:1
  36:22 39:24
corporation  1:7
  7:4 24:10,17 26:7
  34:17 36:19 37:2
  38:25 39:2 43:2
corporations
  24:12
correct  10:8,19
  11:8,11,15,19
  12:4 13:24 14:24
  17:2,20 27:18
  31:2 33:1
correlated  23:8
counsel  12:20
  25:20 34:5 35:11
  35:16 40:7 42:3
  44:24
counsel's  42:1
  45:2
counsel's  25:21
country  47:21
couple  19:9
course  26:24
court  1:1,12 7:3,8
  7:9,18 8:3,4,10,12
  8:15,19 9:16,18

[court - discusses]                                                        Page 4

9:23 10:2,4,7,9,17
10:20,25 11:9,12
11:16,18,20 12:2
12:5,7,8,19,23
13:3,23,25 14:5
14:17,23,25 15:5
15:9,11,18,21,24
16:4,6,9,13,16,21
17:3,6,13,16,21
18:4,9,13,18,20
19:4,6,16,19 20:2
20:11 24:4,7,14
25:6,10 26:16,23
27:7,14,20 28:1
28:12,15,21,25
29:9,12,18,21,24
30:14,25 31:4,8
31:12,24 32:3,8
32:10,12,18 33:1
33:14 34:3 35:9
36:21 37:23 38:5
38:9,11,16,21,24
40:10 41:3 43:20
43:21,25 45:1,5,9
**courts**  36:15
39:19 40:21 42:9
**covered**  42:12
43:6
**creditors**  4:16 8:6
8:18 18:7 41:14
43:17
**creditors'**  12:12
**critical**  7:22
**cro**  18:25
**cross**  19:7,14
38:16
**current**  34:20
**currently**  14:3
44:17
**curve**  24:15

**d**

**d**  1:22 5:14,22,23
6:1 7:1 19:2 46:1
**dahl**  5:6 7:5,6,10
8:5,14,16,20,20
9:21 10:3,6,8,13
10:19,21 11:8,15
11:17,19,21 12:4
12:6,13,20 13:15
13:24 14:2,15,20
14:24 15:3,6,10
15:14,21 16:3,5,8
16:12,14,19 17:2
18:14,19,21 19:17
19:20 20:4,12
24:6,13,24 25:9
26:11,21 27:5,8
27:18,23 28:9,13
28:19,22 29:4,11
29:16,20 31:2,6,9
31:22,25 32:6,9
32:11 37:17 38:1
38:7,10,12
**daily**  36:18
**date**  7:20 47:25
**david**  6:11
**day**  36:7
**days**  12:15
**deal**  29:2,3
**debt**  33:24
**debtor**  1:9 5:2
12:10 19:14 30:3
30:6,9
**debtor's**  30:2 34:5
36:5
**debtors**  2:1,2,6,7
2:14 7:6,15 20:23
24:7 33:18 40:8
41:17
**debtors'**  7:12
18:25 19:3,21,24
20:8 21:19 22:6
22:18 26:7

**december**  1:16
2:12 7:15,16
47:25
**decentralized**
39:2
**decide**  14:11
35:25
**decided**  37:24
**deciding**  44:10
**decision**  24:9,20
24:23,24 35:19
37:5,20 40:3,12
43:12,15
**decisions**  26:8
27:11 34:9,11
36:4
**declarants**  19:8
19:10 25:7
**declaration**  18:23
18:24 19:1,2
25:10,11,25 33:19
34:24 35:13 37:15
38:18
**declarations**  9:14
18:21 19:5,7,8
21:15 41:20
**defined**  10:11
15:21 33:19 34:14
36:15,17 42:19
**defining**  15:22
**definition**  34:12
**delaware**  36:8,22
**delegated**  37:19
**delegations**  27:24
**dense**  18:11
**department**  4:7
**departs**  21:5
**depends**  34:3
**deputy**  25:19
35:11,16
**described**  27:21
35:10,12,21

**describes**  13:10
25:11
**design**  35:23
**designating**  44:17
**designation**  43:1
**designed**  41:6
**determination**
43:25
**determinations**
26:13
**determine**  41:6
**determined**  23:22
42:9
**determining**
11:13 41:1
**dictate**  26:14
**dictionary**  36:16
**didn't**  14:1 18:6
**difference**  33:17
**different**  24:13
36:1,24 42:21
44:14
**differently**  29:1
**difficult**  11:7
**dillman**  5:16
**dip**  3:12 12:9,22
12:24 13:1 16:23
45:2
**direct**  19:22,25,25
20:2,6,7,9,10 23:8
23:11,14
**directly**  20:4
22:12
**director**  42:17,17
42:17
**directors**  16:23
36:18
**discretionary**
10:12,16
**discussed**  12:14
34:23 39:9,9
**discusses**  36:13

[discussions - form]                                                                    Page 5

discussions 22:14
  34:5
disposition 22:14
dissension 23:19
distinguishing
  37:1
district 1:2
divisional 27:15
dizengoff 4:21
docket 7:11,14,17
document 2:4,9
  2:16,18 30:19
documentation
  37:22
documents 12:16
doherty 5:17
don't 11:21 14:13
  14:18 22:3 23:13
  25:15 27:3 44:15
double 28:9
drain 1:22
duties 25:11

**e**

e 1:21,21 3:1,1,23
  5:18 7:1,1 13:7
  46:1 47:1
early 33:7
earned 14:25
  15:25
earning 31:8
economic 20:17
ecro 1:25
edward 3:9
effective 24:22
effectively 37:24
effectiveness 11:4
efforts 9:8
eight 17:11 20:6,9
eighth 3:6
either 24:16,18
elected 36:17
election 36:25

element 42:7
elements 37:5
eligible 44:18
employed 36:13
  39:19
employee 7:12
employees 2:3,8
  2:15 7:23 43:16
enacted 40:17
enter 9:13
enterprise 24:21
  34:6,8,11,15
  35:23
entire 14:2 24:21
  34:1
entirety 9:11
entities 26:12
entitled 14:7,21
  40:19
entity 36:1
entry 2:1,6
eradicate 40:18
  41:5
essence 31:21
  34:7 35:15
essentially 13:11
  39:18 40:22
establish 20:23
  22:7
established 21:16
establishing 11:4
et 35:18
evaluated 39:18
event 13:19,23
  15:22 16:20 17:12
  18:15 20:22 21:11
  21:21 30:12,17,21
  30:22 31:6,10,23
  32:7,19,24 33:7,8
events 13:11
evidence 9:15,17
  19:5 20:13 21:15

evidentiary 9:6
  13:5
evp 35:20
exactly 12:25
  32:22
examine 19:7
  36:23 38:16 41:3
examining 19:14
example 11:25
  13:25 33:11 36:2
  36:23 44:12
examples 26:23
exceeding 33:9
execution 38:12
executive 22:17
  34:7 38:3,8,14
executives 40:19
exercise 40:3
exhibit 18:24,25
  19:2
expect 15:6 41:21
expectations 33:9
expense 43:16
experts 40:9
explain 37:8
explore 24:4
exploring 33:16
extent 23:4,13
extention 22:21
extra 14:13,15,18
  15:13,13
extremely 36:7

**f**

f 1:21 47:1
facilitator 35:15
fact 22:24 30:3
  34:25
facts 19:15 22:23
  39:21 40:4 43:7
factual 44:1
failure 20:23 22:6
fall 24:15

fallen 32:13
falling 31:10
far 41:25
favor 43:16
favorable 33:8
feature 21:4
federal 36:24
fee 28:2
feels 12:17
feld 4:15
felt 39:7
fifth 5:3
file 8:9
filed 2:16 7:14,15
  8:22,25 9:3 30:5
finance 25:22
  35:11,13
financial 12:2
  30:6 38:2 39:15
  40:8
find 41:12
finding 41:16
fine 19:16
firm 42:18
first 9:18 13:16
  15:20 16:10 18:16
  18:22 30:21 31:16
  31:17,18 32:1
  36:6 42:22
fit 34:12
fitzgerald 5:18
five 7:24
fixed 29:13
fleischer 5:19
flom 3:11
floor 4:2
flow 17:15
focus 30:10
focusing 24:20
following 19:21
foregoing 47:3
form 36:1 37:21
  37:25

[formal - indiscernible]                                                                    Page 6

**formal**  9:1,22
  12:14
**forth**  36:6 41:20
**foteini**  6:9
**four**  31:13,14,15
  31:16,20 44:9
**fox**  3:9
**frankel**  4:1,5
**frankly**  22:2
**frequently**  36:25
**friends**  34:16
**full**  13:21 18:21
  31:6
**function**  23:22
**fundamental**
  33:17
**funds**  15:14
**further**  41:3

**g**

**g**  5:25 7:1
**general**  20:8
  25:20 35:11,16
  42:1,3 43:1
**generally**  36:12
**generated**  10:21
**george**  3:16 13:1
**getting**  29:3 33:2
  33:4
**given**  30:14 39:13
**glenn**  34:13 36:13
**go**  9:19 26:19
  27:12,18
**goes**  11:5
**going**  16:1,24
  26:23 27:15 30:11
  35:25 45:10
**good**  7:3,5 29:2,23
  29:24 40:3
**gotshal**  5:1 7:6
**governed**  25:4
**grant**  44:19
**granted**  46:6

**granting**  2:3,8,16
**great**  29:3
**group**  14:7 42:12
**guess**  33:17
**guidance**  36:23
**gump**  4:15 12:12

**h**

**hand**  33:5
**handful**  43:7
**hansen**  5:20
**happens**  14:23
**hard**  9:4 33:2,5
**hauer**  4:15
**haven't**  15:19
  16:1 17:15
**hawker**  41:9,24
**head**  19:21 28:3
**hear**  29:21 36:3
**hearing**  2:1,1,6,11
  2:11,14 7:20 13:6
  43:11
**high**  24:15
**highlighted**  22:24
**hit**  26:2
**hold**  24:2 25:24
**holding**  24:22,25
  25:2,5 26:15
**holdings**  1:7 7:4
**holohan**  5:21
**home**  19:24
**hon**  1:22
**honor**  7:5,10,18
  8:5,14 9:15,24
  10:3,6,8,19,22
  11:8,11,15,19
  12:4,11,25 13:15
  13:15,17,24 14:21
  15:3,15 16:12
  17:5 18:11,22
  19:12 20:5,12,14
  20:25 21:8 22:4,8
  22:22 23:1,3,7,16
  24:3,6,25 26:11

  26:22 27:8,12,18
  29:5,11,23 30:2,7
  30:10 31:2,22
  32:11,16 33:12,16
  34:20 35:3 37:21
  38:10,19,23 44:21
  44:22 45:4
**honor's**  30:15
  33:15
**howard**  3:16
  12:25 13:1
**human**  19:3
**hwangpo**  5:7
**hyde**  2:25 47:3,8
**hypothetical**
  15:12,15 37:21

**i**

**identified**  36:25
**identifies**  34:25
**ii**  2:3,8
**implementation**
  35:23
**implementing**
  35:18
**importance**  20:23
**important**  21:13
  22:1 26:1 34:15
  35:16 36:2 41:18
**impression**  39:7
**improvement**
  19:24
**inaccurate**  38:20
**inappropriate**
  39:12
**incentive**  2:2,7,15
  7:12 40:23 41:7
**incentives**  21:18
**incentivized**  21:2
**incentivizing**
  41:15
**include**  19:23
  20:5 32:1

**included**  19:20
  29:14
**includes**  42:15
**including**  9:5
  34:23 35:17 36:22
  43:10 44:19
**increase**  23:20
**increased**  23:6,22
  28:17
**indenture**  3:5
**independent**
  16:22 37:20
**indicate**  33:20
**indicated**  7:21
  32:15
**indicates**  19:14
  33:23
**indications**  43:12
**indirect**  19:22,25
  20:7,10 22:25
  23:14
**indiscernible**  7:7
  7:10,12,13,25,25
  8:1,8,18,21,22,23
  8:24 9:6,21,23
  10:1,9,11,12,13
  10:14,16,17,22,23
  10:23 11:3,22,22
  11:25 12:1,3,7,14
  12:18,20,21,22,22
  12:23 13:2,8,12
  14:8,12,18,22
  15:4,7,7,10,17,17
  16:5,15 17:9
  18:12,19,22,23,25
  19:3,4,13,17,18
  20:5,9,13,14,17
  20:18,19,21,22,22
  20:24 21:1,2,4,6,7
  21:8,9,11,12,13
  21:15,17,19,22,23
  21:25,25 22:3,4,5
  22:6,7,7,8,9,9,10

[indiscernible - logistics]                                    Page 7

22:15,17,19,20
22:20,23,25 23:2
23:5,8,9,10,11,12
23:12,16,18,18,19
23:20,21,24 24:2
24:5,8,9,18,19
25:1,2,4,15,15,20
25:21 26:3,10,12
26:14,15 27:8,9
27:10,11,12,13,14
27:19,25 28:3,6
28:14,19,20,23,24
29:6,8,22 30:2,5
31:11 32:14,17
33:13,20,21,22,23
34:1,2,4,10,16,17
34:18 35:1,2,2,5,6
35:7,20 36:8,10
36:11,19,21,23
37:3,5,6,9,10,12
37:13,14,18,20
38:15,22 39:20,20
39:21 40:1,9,12
40:17 41:11,15,18
41:22,24,25 42:1
42:2,3,4,4,5,7,10
42:14,19,22 43:8
43:12,14,15,20,21
43:21 44:2,4,5,13
44:18,20 45:6,6,9
45:10,11,12
**individual** 38:2
41:21
**individuals** 19:21
21:17 22:2,18
23:2,6,10,21 24:1
43:5
**individual's** 23:4
**informal** 8:5 9:2
41:14
**informed** 40:3
**insider** 22:20 23:3
23:15 24:2 33:19

33:21,25 37:9
40:22 43:23,25
44:10,11,13
**insiders** 23:18,23
35:8 41:7 43:17
44:18
**insofar** 11:2
**instructed** 23:17
**insurance** 26:19
26:19 27:16
**intend** 9:13
**intended** 17:9
21:24 41:16
**interacts** 35:14
**interest** 40:1
**internal** 27:23
**involved** 35:17
**ira** 4:21
**ironic** 38:24
**isn't** 23:2
**issue** 21:9,12 24:5
33:16 43:6,22
**issues** 9:2,9
**item** 7:11
**it's** 11:12 13:13
14:2,15,19 15:24
16:24 18:10
**i'd** 9:18 24:4
**i'll** 19:8
**i'm** 16:7 24:10,10
26:23
**i've** 15:19 19:6,11

**j**

**j** 5:21 6:5
**jason** 6:6
**job** 18:6 25:11
27:20 33:5 43:11
**jonathan** 5:14 6:1
**judge** 1:23 34:13
36:13 40:2 41:23
**judges** 44:5
**judgment** 39:8,11
39:16,19,25 40:3

40:13
**judicial** 36:22
**junior** 25:22 34:7
**justice** 4:7
**justices** 44:9

**k**

**k** 4:12 13:7
**katherine** 5:17
**keep** 22:16
**keip** 13:7,10,16,22
14:5,6 15:21
20:14,20 21:4,10
21:24 41:11,15
42:8
**kenan** 2:17
**kerp** 26:5 29:13
29:13,13,16 39:11
39:13,17 40:13
41:4 42:13 43:4,6
44:18
**key** 2:3,8,15 7:12
7:23,24 12:1
20:24 21:13 22:24
23:3,20 25:12,12
27:11,12 28:20
36:4 39:17
**kind** 37:23 39:1
**knew** 22:23
**know** 16:17 24:21
25:6,22,24 26:17
27:16,21 28:6
33:15
**knows** 23:3
**krinsky** 4:1
**kristopher** 5:20
**kurtzman** 3:18

**l**

**l** 4:20
**lack** 40:11
**laid** 40:4
**lanier** 5:22
**larger** 38:25

**law** 23:25 32:13
34:15 36:16,22
37:4 39:18,24
40:15,16 42:20
43:22 44:5
**laws** 36:24
**lay** 13:14
**layout** 41:18
**lays** 25:14
**leadership** 35:22
**leads** 35:22
**leave** 14:8
**ledanski** 2:25 47:3
47:8
**legal** 35:18 43:1
43:24 47:20
**lenders** 8:23 45:2
**lender's** 12:9
**leslie** 6:4
**lesser** 44:2
**let's** 14:11
**level** 22:17 23:6
24:16 25:24 26:24
26:25 27:1,3
42:15
**levels** 24:23 37:6
**levine** 5:23
**lieutenant** 42:23
**light** 39:8 40:21
41:12,16
**lii** 5:24
**likelihood** 43:13
**likewise** 36:14
**limited** 42:13
**line** 26:18 46:4
**linn** 5:25
**little** 29:18 36:3
40:10
**llc** 43:20
**llp** 3:3,11 4:1,15
5:1
**logistics** 20:6

[longer - official]                                                                    Page 8

**longer** 21:2
**look** 11:2 33:3
  35:24 39:3 43:19
**looked** 36:15
**looking** 24:14
  39:5
**looks** 37:23
**lost** 7:23
**lot** 24:18
**lower** 32:4

**m**

**m** 3:9 5:15,20
**major** 26:9
**makers** 43:15
**making** 24:9,20
  24:23,24 35:20
  37:20 38:13 43:12
**man** 17:25 44:21
  44:22 45:4,8
**manage** 36:18
**management**
  27:10
**manager** 20:8
  35:11,13 42:17
**manges** 5:1 7:6
**mark** 4:5 8:10
**marked** 10:4
**marshall** 6:1
**matera** 3:18,23
**material** 22:14
  23:5 27:16 35:19
**math** 28:9,22
**mathematicians**
  29:6
**matter** 1:5 2:11
  37:4 39:8,12
  43:24
**matthew** 5:8
**maza** 6:2
**meagher** 3:11
**mean** 10:25 20:3
  27:21 35:9 39:23

**measure** 11:3
  13:17 15:8,11
  28:19 41:25 42:2
**measured** 28:20
**mechanism** 16:6
  32:1
**meghji** 18:24 19:1
**members** 42:12
**merely** 41:8
**met** 14:7 31:16
**metric** 16:24 28:2
  29:13 31:5,15
  32:4
**michael** 5:25 6:3
**middle** 32:19
**million** 13:22
  28:13 29:7,8,19
  33:25
**mindful** 41:4
**mineola** 47:23
**mittelman** 6:3
**modification**
  11:25 21:22
**modifications** 8:8
  8:21,24 9:5 23:25
**modified** 21:19
  42:14 44:19
**modify** 21:20
**moment** 28:4
**money** 24:18
**monies** 21:6,6
**month** 13:7 14:1,3
  14:11,19 16:20
  17:11 18:17 21:12
  31:17,19
**months** 14:9,10
  14:13,14,23 15:1
  15:2,13,13,16,20
  15:23 16:1,2,3,11
  16:18,25 18:2
  30:18,22 31:13,14
  31:15,15,16

**morning** 7:3,5
  29:23,24
**morrissey** 4:13
**motion** 2:1,6,14
  7:7,12,13,20,25
  8:7 13:9 18:24
  30:8 44:19
**motions** 36:7
**motivate** 41:7
**multiple** 24:7,11
  40:5

**n**

**n** 3:1 7:1 46:1
  47:1
**name** 17:6
**narotam** 1:25
**narrow** 9:8
**natasha** 5:7
**national** 3:4 43:19
**nature** 10:23
  11:18 18:8 20:22
**necessary** 22:20
**need** 28:22 29:7
  32:16 39:23
**needs** 30:9 33:20
**negotiations**
  35:17
**net** 17:15
**never** 12:13
**new** 1:2 3:7,14 4:3
  4:10,18 5:4
**night** 8:10,22
**nine** 15:16 17:11
**non** 44:11
**noninsiders** 23:18
**note** 30:3 36:4
**noted** 13:16,18
  20:15
**notes** 29:25
**notice** 2:1,11
  11:22 37:8
**noticed** 36:21

**notion** 23:7 40:18
**november** 21:15
**number** 7:11,15
  7:17 22:25 23:2
  23:11 28:7
**ny** 1:14 3:7,14,21
  4:3,10,18 5:4
  47:23

**o**

**o** 1:21 7:1 47:1
**object** 21:3
**objected** 21:14
**objecting** 9:14
  21:1 30:4 39:15
**objection** 2:14
  7:14 8:25 9:3,5,13
  17:25 18:1 20:16
  20:21 30:5,11
  39:6,12 40:11
  42:11
**objections** 9:2,9
  9:11 20:15,20
  39:11 41:14
**objective** 17:24
**objects** 22:5 30:9
**obviously** 42:3
**occur** 20:15 37:11
**occurring** 15:23
**occurs** 16:10
  18:16 31:23 32:19
  42:5
**office** 9:25 17:8
  20:16 25:21 38:3
  38:8,14
**officer** 10:15 19:3
  27:10 34:14 36:14
  36:17 37:1,4 38:2
  39:1 42:20,23
  43:1
**officers** 22:11
  25:3 42:15 43:3
**official** 8:6,18

**okay**   7:3,9 8:4,15
  8:19 9:18 10:9,9
  10:17,20 11:9,16
  11:20 12:5,8,19
  13:3 16:13 17:3,4
  18:13,18 19:6,8
  19:19 20:11 27:20
  28:10 29:4,9,9,12
  29:18,21 33:14
  38:11,11,16,21,24
  39:5 45:7
**old**   47:21
**once**   18:11
**ones**   34:21,22,23
**open**   44:11
**operating**   13:18
  15:8,14 27:25
**operation**   26:6
**operational**   26:6
  34:6
**operations**   36:19
**operative**   13:20
**opinions**   44:9
**opportunity**
  13:22
**opposed**   44:2
**oral**   39:6
**order**   2:2,6,14 8:9
  8:9,11,22 9:22
  10:5 12:16 18:15
  29:7 37:21 45:1
**ordinarily**   37:4
**ordinary**   26:24
**organization**
  22:18 35:22
**original**   7:20,24
  7:25
**originally**   29:14
**outperform**   29:7
**outperforms**   28:5
**overall**   35:21 42:2
**overriding**   13:4

**overseeing**   33:24
**oversimplificati...**
  41:5
**overview**   8:2

**p**

**p**   3:1,1 7:1 13:7
**p.c.**   3:18
**packages**   41:1
**page**   10:22 36:14
  46:4
**paid**   21:6 33:4
**papers**   7:21 25:1
**paragraph**   25:11
  25:13 34:24 35:12
**parameters**   12:2
  31:11
**park**   4:17
**part**   27:20 33:4
  40:17 41:25
**participants**   7:24
  12:1 19:20,23
  20:5,24 21:13
  22:7,11,12,13,25
  23:20 25:12,12,13
  26:5 28:14 30:23
  34:21 35:8
**participate**   22:13
**particular**   26:18
  36:1 40:25
**particularly**   7:22
  42:4,20 43:9
**parties**   14:6 40:6
**party**   9:2 21:4
  30:4 39:15
**patience**   29:4
**patrick**   5:21
**paul**   2:17 4:12
  9:24 17:7 30:1
**payout**   28:8,11
**pending**   7:13
**penny**   18:6
**people**   24:15 26:2
  27:1 35:15 41:22

  42:15 43:2,7
  44:17 45:5
**percent**   13:9 14:8
  17:18 18:3 28:5
  28:16,17,23 29:2
  29:2,10 30:18,20
  30:24 31:17,18,19
  31:20 32:10,17,20
  32:24,24
**percentage**   29:1
**performance**   11:7
  13:8,17 21:3
  28:10,20 29:6
  32:9 42:1
**period**   14:1,3,19
  16:20 18:17 21:5
  21:12 31:5
**periods**   13:8
**person**   33:23
  35:10,19,25 36:3
  36:8,10,17 37:7
  37:15
**place**   10:13 26:17
  27:23
**plains**   1:14
**plan**   12:16 14:10
  40:12,22,23 42:13
**planning**   22:13
**plans**   31:13
**plaskon**   6:4
**pleadings**   24:14
**please**   7:3 8:3,10
**point**   11:1,3,6
  27:5 30:7 32:21
  33:3 35:9 38:17
**policy**   35:1,23
  37:24 38:1,6
**pool**   10:14 14:2
**portion**   13:6
**portions**   10:14
**position**   25:22
  37:3,4

**positions**   37:1,2
**potential**   11:24
  24:19
**potentially**   36:7
**practice**   27:25
  41:4
**practices**   26:16
**pre**   44:17
**present**   5:11 7:7
  37:3
**presentation**
  30:11
**president**   27:15
  37:17 42:16
**presidents**   22:16
**preston**   5:6 7:5
**pretty**   29:9
**previously**   34:23
  42:21
**primarily**   22:5
  41:15 44:1
**primary**   17:24
  30:10
**probably**   26:10
  33:8 39:14
**problem**   32:5
  33:5,10
**procedures**   26:17
**proceed**   9:10
**proceedings**
  45:13 47:4
**process**   11:14
  40:20
**product**   26:18
**production**   9:7
**professionals**
  25:19
**program**   7:22 9:6
  10:13 21:18,21
  22:1 26:19 27:16
**programs**   2:3,7
  2:15 41:2

**proposals**  40:25
**proposed**  8:8 41:4
  41:6 42:13 43:5
**proposition**  43:24
**prosecute**  9:13
**protocols**  27:24
**provide**  8:1 18:6
**provided**  18:16
**providing**  35:18
**provision**  10:15
**proxy**  23:14
**purpose**  40:15
  43:1 44:16
**purposes**  42:23
  43:3,18 44:13,14
**put**  19:13 28:25
  35:3 37:8 42:14

**q**

**q1**  13:17
**q2**  13:17
**qualified**  37:16
  43:3
**qualify**  27:2
**qualifying**  39:1
**quarropas**  1:13
**quarter**  15:4
  31:16,17,19,23
  32:1,4,20,23
**quarterly**  14:3
  28:14
**quarters**  32:2
**question**  13:4
  24:19 42:25 43:8
**questions**  9:16
  10:11 12:6 19:9
  26:21
**quibble**  37:13
**quite**  14:1
**quoted**  42:21 43:9
**quoting**  41:3

**r**

**r**  1:21 3:1,16 6:11
  7:1 47:1
**rai**  1:25
**raised**  8:25 9:2,9
  20:16
**ranging**  26:8
**raphael**  5:13
**ratio**  29:9
**rationale**  33:1
**ray**  5:9
**rdd**  1:3
**reach**  41:18
**reached**  17:15
**read**  13:7 30:18
  30:20
**real**  33:6
**realistic**  11:18
**reality**  11:14
**really**  11:5,13
  25:16 33:3 36:2,8
  37:15 42:13 43:6
**reason**  38:19
**reasonable**  22:10
  41:17
**receive**  8:5 22:2
  30:23
**receives**  21:5
**recognize**  7:19
**recognized**  41:23
**recognizing**  23:25
**recommendations**
  38:1,13,13
**record**  8:17 12:11
  13:14 19:12,13
  22:8 28:5 32:16
  33:16 34:19 35:3
  35:7 39:10 40:5
  41:12 43:10 44:15
  47:4
**redaction**  13:19
**reference**  11:4

**referenced**  24:8,8
**referred**  44:5
**referring**  25:1,1
**refers**  25:13 30:3
  41:24
**reflect**  12:9
**reflected**  8:11,22
  10:22 12:16
**reflecting**  23:24
**regard**  8:1
**regarding**  35:4
  44:23
**regardless**  30:8
**regular**  14:17
**reisman**  6:5
**related**  2:3,4,8,16
  2:16 36:5 46:6
**relation**  23:4
  29:12
**relatively**  29:1
**relevance**  39:14
**relevant**  24:25
  39:16
**relief**  2:4,8,16
  46:6
**rely**  45:6
**relying**  33:22
**remaining**  32:2
  42:11
**reply**  7:15,21 8:9
  8:13 9:19 10:1
  12:17 19:1 30:2
**report**  22:12
  37:12 41:8
**reporting**  20:4
  23:12 25:4 36:12
  38:7
**reports**  19:23,25
  20:1,2,6,7,9,10
  22:25 23:8,11,14
  34:23
**representations**
  43:10

**represented**  40:7
**requests**  12:18
**require**  21:3 37:5
**requirements**
  40:23
**reset**  11:24
**resignation**  23:19
**resolution**  8:17
**resolve**  9:4
**resolved**  41:13
**resources**  19:3
**respect**  9:3 10:21
  11:23 15:14 16:5
  20:20 21:10,13,21
  21:22,23 22:23
  24:24 37:17
**respectively**  8:7
**responding**  8:23
**responsibilities**
  25:4 37:19 43:11
**responsibility**
  23:21,22 33:24
  34:6 35:21 38:25
**responsible**  38:12
**rest**  21:8
**restricting**  10:15
**restructuring**
  27:9
**resulting**  8:23
**retail**  20:8,9
**retention**  2:2,7,15
  40:22
**retentive**  18:8
**revenue**  24:19
**review**  43:23 44:2
**reviewed**  19:6,11
  41:11
**revised**  8:9,12
  9:21
**revising**  8:9
**richard**  4:13
**ridge**  3:20

**right** 10:20,25
  11:2,12,16 12:25
  14:14 15:5,9 16:4
  16:7 17:3,13,16
  18:4 23:25 26:16
  28:1,12,15,21,25
  30:25 31:1 32:12
  37:14 38:9,21
**ring** 45:12
**rise** 7:2 31:9 41:7
**risk** 41:5
**road** 3:20 47:21
**robert** 1:22 5:18
  19:2
**room** 1:13
**rosemarie** 3:23
**roughly** 29:18
**rulings** 46:3
**ryan** 5:6 7:5

**s**

**s** 2:4,16 3:1 4:21
  5:7 7:1 29:17
**s.d.n.y.** 41:10
**salary** 14:17
**sale** 17:14 18:5
  31:13
**sanjana** 6:6
**sara** 4:20
**sarah** 12:11
**satisfies** 35:6
**satisfy** 40:13 42:8
**save** 16:17 18:6
**saying** 28:15
  38:20
**says** 36:14
**scales** 29:11
**scheduled** 2:11
**schools** 39:3
**schrock** 5:9 7:7
**schwartzberg**
  2:17 4:12 9:24,25
  17:5,7,7,14,17,23
  18:1,5,10 19:12

22:24 29:23,25
  30:1,15 31:3
  32:15,22 33:12,15
  34:19 38:18,19,23
**scott** 5:19
**scrutiny** 23:6 24:2
**sears** 1:7 7:4 20:6
  24:25 25:2,5
  26:12,15,19
**seated** 7:3
**second** 13:10
  18:24 25:19 28:2
  30:10 31:17,19,23
  32:4,20 42:6,7
**secretary** 36:20
  37:13
**section** 22:11
  40:16,23 41:2
  42:23 43:18
**see** 28:22 35:9
  40:16
**seeking** 15:7
**segment** 24:17
  25:16,17 26:9,10
  33:25 34:1
**senior** 22:16,17
**sense** 39:2 40:2
**separate** 11:12,14
  23:3 24:16,17
**served** 44:16
**services** 20:9
**set** 7:20 16:6,21
  16:25 36:6 38:5
  41:20
**seven** 17:11 18:2
**seyfarth** 3:3
**shaw** 3:3
**shlomo** 6:2
**show** 10:4
**sidebar** 29:5
**significance** 21:17
**significant** 34:5

**similarly** 39:10
**simply** 40:19
**sir** 29:20
**six** 14:9,19,23
  15:1,13,20 16:1,2
  16:3,10,18,20,25
  18:17 21:12 30:17
  30:22 31:15
**size** 41:19
**skadden** 3:11 13:1
**skrzynski** 5:8
**slate** 3:11
**small** 29:1
**sole** 24:1
**solutions** 47:20
**somewhat** 38:24
  44:11
**sonya** 2:25 47:3,8
**sophisticated** 40:6
  40:7
**sort** 13:3 25:19
**sorts** 27:22
**sought** 41:5
**source** 36:16
**southern** 1:2
**specific** 25:16
  26:21 41:21 42:2
  44:12
**specifically** 44:23
**specified** 21:5
**sports** 41:22
**spring** 3:21
**square** 3:13
**staff** 7:19
**stake** 30:6 39:15
  40:8
**stakeholders** 8:3
**stand** 26:6
**standard** 23:25
  39:16,19,25 40:14
  42:8 44:2,3,4,10
**stands** 43:24

**started** 41:12
**starting** 11:3,6
  13:9
**state** 17:6 19:15
  36:24
**stated** 9:15 32:16
**statement** 25:25
**statements** 8:17
  8:20
**states** 1:1,12 2:17
  4:7 7:14 9:1,4
  11:23 20:16,19,25
  21:9,14 22:15
**status** 23:2,3,15
  24:2 26:3 44:1
**statute** 32:13
  40:17
**statutory** 38:4
  44:11
**stauble** 6:7
**stay** 14:10
**staying** 40:19
**steven** 6:5
**stipulated** 19:17
**stipulates** 19:13
**store** 26:18
**stores** 20:8
**strategic** 22:13,13
**strategies** 35:24
**strategy** 23:12
  35:1
**strauss** 4:15
**street** 1:13 4:9
**structure** 16:21
  26:7,13 40:25
**subject** 7:13 9:16
  21:7 31:10 36:9,9
  41:2 44:1
**submissions** 9:6
**submitted** 18:21
**submitting** 27:2
**subsection** 39:21

**subsequent** 23:19
**subsidiaries** 24:13
  24:23
**subsidiary** 25:3
  25:20 26:9,10,12
  26:24 27:1,4
**substantial** 40:7
**substantially**
  31:14
**substantive** 10:24
**success** 21:17 42:5
**successful** 9:8
**suffering** 7:23
**suggested** 27:12
**suggests** 35:24
**suitable** 16:24
**suite** 4:9 47:22
**summarized** 44:6
**summary** 31:18
**supervising** 25:5
**supplemental**
  19:1 25:10
**supply** 19:22
**support** 7:16 8:20
  18:22 20:13 23:1
  35:18 40:12
**supporting** 12:18
**suppose** 28:2
**supreme** 43:20
**sure** 9:21 10:2
  13:4 16:14,16,19
  17:4 22:2 26:25
  27:7 30:7 43:21
**sweeney** 6:8
**switch** 35:25

**t**

**t** 47:1,1
**table** 30:13
**take** 16:24
**talk** 24:20
**target** 14:8 31:21
**targeted** 21:18

**targets** 11:24 21:2
  41:6,21
**task** 37:14
**tax** 25:20 35:1,10
  35:20,20,22,22,23
  36:5,5 37:18,19
  37:24 38:1,5
**team** 27:11,11,13
  41:25
**ted** 5:16
**telephonically**
  5:11
**tell** 22:22
**teloni** 6:9
**ten** 31:17,18
**tenzer** 6:10
**teresa** 5:24
**term** 10:11,18
  13:20 36:14
**terms** 8:2,24 9:16
  14:2 15:7 23:17
  26:21 37:18
**testify** 19:4
**tests** 14:3
**thank** 7:18 27:8
  29:4,21 38:23
  44:21,22 45:7,8
**thanks** 10:4
**that's** 10:17 11:8
  11:9,15 12:4,25
  13:21 15:11 16:14
  16:24 17:2,20,21
**there's** 12:23 13:4
  13:17 14:10 15:12
  15:18 23:1,1 25:7
  26:9
**they're** 14:20
  22:16 25:3,18,18
  25:23,25 26:1,4
  27:3 31:8
**they've** 14:25
**thing** 13:25 44:8

**things** 26:2 27:22
  35:17
**think** 10:10 12:8
  15:24 21:8,16,25
  23:13,16,24 25:15
  30:25 31:20 32:12
  33:11,17 34:11,12
  34:17,24 37:14
  39:14,25 44:4
  45:5
**third** 4:2 15:4
**thought** 18:8 31:4
**thousand** 34:22
**three** 13:7 14:10
  14:12,13 15:2,13
  22:18 25:13,16
  43:9
**threshold** 28:10
  29:6 32:9
**thrust** 8:7
**tied** 13:10 32:7
**tier** 25:19
**ties** 11:14 13:13
**time** 7:19 8:11
  14:11 21:6 31:14
  32:8,10
**times** 3:13
**title** 37:3
**titles** 34:21 42:16
**today** 7:8,11 19:4
  20:13 30:11 41:12
  45:6
**totally** 11:12
**transaction** 14:21
  15:16,23 18:16
**transactions**
  13:12 23:5 39:20
**transcribed** 2:25
**transcript** 47:4
**transformative**
  13:11,19 14:20
  15:16 16:10 17:8
  18:16 33:7,8 34:9

**treasurer** 36:20
**treat** 23:23
**tried** 9:4
**trigger** 18:15 23:5
  29:7 32:24
**true** 15:24 47:4
**truly** 7:21 13:23
  16:17
**trust** 3:4
**trustee** 2:18 3:5
  4:8 7:14 8:2 9:1,4
  9:7,10,13 11:2,23
  12:24 18:2 19:18
  20:16,19 21:1,14
  21:23 22:5 29:22
  30:1,4 33:18,22
  34:2 39:7 45:3
**trustee's** 39:6,10
**trustees** 34:20
**trustee's** 9:9,25
  11:10 17:8,10
  20:21 21:3,9
**turn** 19:10 22:3
  28:1 33:13
**turning** 42:6
**two** 12:21 13:7,16
  14:3 23:21 29:25
  31:22 33:10 37:9
  37:11
**tying** 33:10
**type** 37:1
**types** 26:2

**u**

**u.s.** 1:23 4:8 8:2
  9:7,9,10,12,25
  11:1,10 17:8,10
  18:2 19:18 20:21
  21:3,23 22:5
  29:22 30:1,4
  33:18,22 34:2,20
  39:5,7,10 43:19
  45:3

[ultimate - zylberberg]                                                    Page 13

| | | |
|---|---|---|
| **ultimate**  26:13 | **voluntarily**  14:9 | **wrote**  19:11 |
| **ultimately**  25:3 | **vp**  19:21,24 20:8 | **x** |
|   38:3 39:25 40:1 |   37:19,19 | **x**  1:4,10 46:1 |
| **understand**  9:12 | **w** | **y** |
|   10:10 14:1 15:3 | **walk**  22:3 | **yeah**  17:7 29:16 |
|   15:24 16:8 20:20 | **want**  7:18 11:21 |   31:24 |
|   22:4 32:3 |   13:4 19:7 26:17 | **years**  44:6 |
| **understanding** |   26:25 28:7,15,25 | **york**  1:2 3:7,14 |
|   9:10 11:10 12:10 |   30:7 35:7 38:16 |   4:3,10,18 5:4 |
|   17:10,10,19 18:10 | **wanted**  16:16 | **you're**  15:22 16:1 |
| **understood**  16:12 |   17:3,21 18:9 27:9 | **you've**  15:25 |
| **undisputed**  21:16 |   28:1 30:3 35:2 |   16:25 |
| **unfortunately**  9:7 | **warranted**  23:10 | **z** |
| **unilateral**  9:5 | **wary**  40:21 | **zachary**  5:22,23 |
| **unilaterally**  21:20 | **way**  15:12 33:10 | **zylberberg**  6:11 |
|   38:7 | **we've**  30:14 39:9 | |
| **united**  1:1,12 2:17 |   39:9 | |
|   4:7 7:14 8:25 9:3 | **weber**  25:8,9 | |
|   11:23 20:16,19,25 |   33:19 34:24 40:11 | |
|   21:9,14 | **weber's**  35:12 | |
| **universe**  21:11 | **weber's**  25:10 | |
|   23:17 | **weeber**  25:8 | |
| **unqualified**  26:14 | **weeks**  12:15 | |
| **unreasonable** | **weil**  5:1 7:6 | |
|   41:20 | **went**  17:19 34:4 | |
| **unsecured**  4:16 |   39:12 | |
|   8:6,18 18:7 | **weren't**  19:14 | |
| **unused**  10:14 | **we'd**  8:10 19:4 | |
| **upwards**  29:11 | **we'll**  16:19 | |
| **use**  23:13 26:14 | **we're**  9:1 17:15 | |
|   26:23 | **we've**  8:7 | |
| **ust**  35:8 | **white**  1:14 | |
| **v** | **who's**  19:10 | |
| **valley**  3:21 | **wide**  26:8 35:23 | |
| **valuable**  36:7 | **willing**  38:17 | |
| **varick**  4:9 | **wilmington**  3:4 | |
| **various**  24:11 | **won't**  20:14 | |
| **venture**  7:16 | **words**  34:10 | |
| **veritext**  47:20 | **work**  14:12 17:9 | |
| **vice**  22:16 27:15 |   33:5 41:8 | |
|   37:17 42:16 | **working**  33:2 | |
| **view**  10:25 39:10 | **wrong**  17:19 | |
| |   24:10 | |