Peter M. Gilhuly, Esq.
Christopher Harris, Esq.
Ted A. Dillman, Esq.
Rakim E. Johnson, Esq.
885 Third Avenue
New York, NY 10022-4834

*Attorneys for Simon Property Group, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | **Chapter 11** |
| **In re** | : | |
| | : | |
| **SEARS HOLDINGS CORPORATION., *et al.*,** | : | **Case No. 18-23538 (RDD)** |
| | : | |
| | : | |
| **Debtors.[1]** | : | **(Jointly Administered)** |

**OBJECTION OF SIMON PROPERTY GROUP, L.P. TO (I) NOTICE OF ASSUMPTION
AND ASSIGNMENT OF ADDITIONAL CONTRACTS AND DESIGNATABLE LEASES
AND (II) DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND LEASES**

Simon Property Group, L.P., as landlord and/or managing agent ("**Simon**" or "**Landlord**"),

through its undersigned counsel, submits this objection and reservation of rights (this "**Objection**")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

regarding the (a) *Notice of Assumption and Assignment of Additional Contracts and Designatable Leases* [Docket No. 3214] filed by the Debtors on April 15, 2019 (the "**April 15 Designation Notice**") and (b) application to its leases of the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* [Docket No. 3043] (the "**Assignment Order**").[2]  In support hereof, Simon respectfully states as follows:

## PRELIMINARY STATEMENT

1.      On April 15, 2019, Transform Holdco, LLC (the "**Buyer**" or "**Transform**"), filed the April 15 Designation Notice under which it seeks to assign entirely unspecified "known and unknown" leases related to certain real property assets that were owned by the Debtors and sold to Transform.  This notice represents a complete failure of due process as (a) even for properties the landlord has indicated constitute "Owned Real Property With Known Leases," neither the leases nor the counterparties are identified, and (b) counterparties cannot possibly know what the Buyer is or is not aware of.[3]

2.      One property included in the April 15 Designation Notice is Store #1317 in El Paso, Texas, which is identified for assignment to Transform SR LLC.[4]  While Simon cannot be certain based on the ambiguous April 15 Designation Notice – which, for instance, nowhere references Simon as a counterparty – Simon believes that this designation concerns its Cielo Vista Mall

---

[2] On January 28, 2019, Simon filed its (x) *Limited Objection to the Proposed Sale and Assumption and Assignment of Leases and Adequate Assurance of Future Performance* [Docket No. 2082] (the "**Limited Sale and Adequate Assurance Objection**") and (y) *Objection to Debtors' Notice to Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 2080] (the "**Original Cure Objection**").  Subsequently, Simon filed its *Objection to Debtors' Supplemental Notice to Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 2214] (its "**First Supplemental Cure Objection**") on January 31, 2019.  Concurrently herewith, Simon has filed its *Second Supplemental Cure Objection to Debtors' Notices of Assumption and Assignment and Notice of Designation* (the "**Second Supplemental Cure Objection**" and collectively, the "**Cure Objections**").  The foregoing objections are each incorporated herein by reference.

[3] *See* April 15 Designation Notice, ¶ 13 (indicating that the buyer seeks to assume "any unknown unexpired leases, to which a Debtor is a party, associated with the owned real properties listed on Exhibit 2 [of the Notice]); *Id.*, Ex. 2.

[4] *Id.* at Ex. 2.

shopping center in the City of El Paso.  According to Simon's records, the only "real property"

owned by the Debtors (and transferred to Transform under the Sale Order[5]) at this shopping center

consists of the improvements located on the parcels ground leased **to** the Debtors from the City

of El Paso and a Simon affiliate (Simon Property Group (Texas), L.P.) under the following leases:

- Lease Agreement dated July 1, 1980, between the City of El Paso as Lessor and Sears, Roebuck and Co. as Lessee (the "**El Paso Ground Lease**"); and

- Cielo Vista Mall Shopping Center El Paso, Texas Sub-Sublease dated July 6, 1981, between Celina Development Company (predecessor-in-interest to Simon Property Group (Texas), L.P.) as Lessor and Sears, Roebuck and Co. as Lessee (the "**Simon Cielo Vista Sub-Sublease**").

Additionally, Simon leases back a portion of the leased property from the Debtors pursuant to a

Sublease dated July 6, 1981, between Sears, Roebuck and Co. as Lessor and Celina Development

Company (predecessor-in-interest to Simon Property Group (Texas), L.P.) as Lessee (the "**Cielo**

**Vista Parking Lease**" and together with the Simon Cielo Vista Sub-Sublease (Ground Lease),

the "**Simon Cielo Vista Leases**" and together with the El Paso Ground Lease, the "**Cielo Vista**

**Leases**"),[6] which relates to parking constructed for Simon's Cielo Vista Mall shopping center.

3.      As this court is well aware, in connection with the Notices of Assumption and

Assignment (as defined below) and the sale hearing, Simon, along with many other shopping

center landlords, raised numerous issues with respect to the assumption and assignment of their

shopping center leases, as well as to the transfer of Debtor-owned real property that was subject

to reciprocal easement agreements.  These objections included objections to cure amounts,

adequate assurance of future performance, and the proposed terms of the sale and Sale Order

---

[5] The "**Sale Order**" means the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief* entered on February 8, 2019 [Docket No. 2507].

[6] Simon reserves all rights related to the assumption and assignment of the Cielo Vista Parking Lease, including its rights under section 365(h) of the Bankruptcy Code in connection with this lease.

concerning various lease and landlord issues. These issues were continued at the sale hearing for future resolution and are fully preserved under the Sale Order.[7] Thereafter, the Debtors filed the Assignment Order, which established terms and conditions for the assumption and assignment of certain contracts and leases designated for assignment; however, following Simon and the other landlords' informal objection, this order also expressly continued and reserved all of the landlords' objections and rights for future resolution.[8] Despite invitations from Simon (individually and together with other landlords), the Buyer has not engaged in the landlords' offers to consensually resolve or narrow the reserved issues.

4.      Putting aside the fundamental lack of fairness created by the April 15 Designation Notice and the gymnastics the Buyer is putting counterparties through to protect their rights, Transform now appears to have designated the Simon Cielo Vista Leases for assignment, without resolving – or attempting to resolve – any of the pending objections filed by Simon and the numerous other shopping center landlords.    Accordingly, Simon objects to the proposed assignment of the Simon Cielo Vista Leases for, among other reasons, those set forth in its prior Limited Sale and Adequate Assurance Objection.  These objections include:

- The Debtors, the Buyer and proposed assignee of the Cielo Vista Leases, Transform SR LLC, have failed to meet their burden of demonstrating adequate assurance of future performance as required by section 365 of the Bankruptcy Code;

- Assumption and assignment of Simon's shopping center leases requires the Buyer to be liable for the Surviving Obligations, which must be adequately provided for prior to assignment;[9]

---

[7] *See* Sale Order at ¶ 3.  The Initial Assigned Agreements do not include any Simon lease or other agreement.

[8] *See* Assignment Order, ¶¶ 28-29.

[9] The "**Surviving Obligations**" represent amounts that are unknown, unbilled and/or not yet due under the terms of the applicable lease, but for which the tenant is liable under the terms thereof, including, among other things, (a) payment of all accruing but unbilled charges under the leases, including but not limited to all unpaid year-end and other adjustments and reconciliations, (b) payment of all regular or periodic adjustment of charges under the Leases, which were not due or had not been determined as of the date of this Objection, (c) all insurance, indemnification, contribution and other contractual obligations under the Leases, and (d) any and all obligations arising on account of the Restrictive Covenants (as hereinafter defined).

- Any transfer of real estate assets, including the Simon Cielo Vista Sub-Sublease, must be subject to, and cannot be free and clear of, applicable Restrictive Covenants;[10] and

- The Debtors must comply with the requirements of section 365 (including section 365(b)(3)) and the Buyer or any other assignee must be subject to and comply with all of the terms and conditions of applicable leases; the sale process does not expand the Debtors' rights with respect to the applicable property or modify the terms and conditions of leases in connection with any future use of, or transactions involving, the property.

5.    No adequate assurance information was provided for the proposed assignee, Transform SR LLC in connection with the April 15 Designation Notice or otherwise.  Following the April 15 Designation Notice, on April 19, 2019, Simon requested (via counsel) adequate assurance information related to Transform SR LLC, including (i) where the assignee sits in the buyer's organizational structure, (ii) the assignee's and buyer's current financial position, including financial wherewithal and current availability under credit facilities, and any other financial resources, and (iii) the buyer and assignee's operating experience, resources and capabilities.  As of the date hereof, no such information has been provided.

6.    Accordingly, Simon files this Objection to the April 15 Designation Notice, the application of the Assignment Order to the Simon Cielo Vista Leases, renews its objections raised in connection with the assumption and assignment of its leases, and respectfully requests that this court deny approval of the assumption and assignment of the Simon Cielo Vista Leases (or any other Simon lease) unless and until these issues are appropriately addressed.[11]

---

[10] As defined in paragraph 26 of the Sale Order, "**Restrictive Covenants**" means any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits.  The reciprocal easement agreements and other Restrictive Covenants are designed to ensure that the shopping center as a whole functions and is operated in a manner for the mutual benefit of all parties.

[11] In addition to this Objection, Simon has concurrently filed its Second Supplemental Cure Objection pursuant to which Simon seeks, *inter alia*, to establish updated cure amounts with respect to the Simon Cielo Vista Sub-Sublease.

7.     Further, a number of the other properties identified in the April 15 Designation Notice appear to be Sears stores that were owned by the Debtors (and not subject to leases), but are located in Simon shopping centers and were transferred to the Buyer, all of which are subject to various reciprocal easement agreements and other Restrictive Covenants. Pursuant to paragraph 59 of the Sale Order, all of the Debtor-owned real property assets were transferred to the Buyer at closing subject to all reciprocal easement agreements and other Restrictive Covenants.[12]  While Simon does not believe that these reciprocal easement agreements or other Restrictive Covenants are implicated by the April 15 Designation Notice, out of an abundance of caution and because the April 15 Designation Notice purports to cover the unknown as well as the known, Simon reserves all rights in connection therewith and intends to invoice the Buyer for any and all amounts that become due and owing thereunder in the ordinary course.[13]

## BACKGROUND

8.     Simon (through its wholly owned or partially owned subsidiaries) owns or operates numerous shopping centers located throughout the United States at which the Debtors lease space pursuant to written leases and/or operate in space located in Simon's properties under various reciprocal easement agreements (a/k/a "REAs") (collectively, "**Premises**").[14]  Simon is an

---

[12] *See* Sale Order, ¶ 59(a) ("***Nothing herein or in the Asset Purchase Agreement or any related document shall authorize . . . the sale of any real estate property owned by any of the Debtors, free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property*** such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "**Restrictive Covenants**") that are not executory or that run with the land.") (emphasis added).

[13] A list of properties that are owned by Sears but subject to reciprocal easement agreements, operating agreements and/or similar agreements with Simon (including actual and estimated amounts due and owing to Simon thereunder in the ordinary course) is attached hereto as Exhibit 1.

[14] Note that certain reciprocal easement agreements may be identified in various instances in the Notices of Assumption and Assignment (as defined herein) as "Master Leases" or with other incorrect descriptions. Simon reserves all rights in connection with the characterization of documents therein, and to the extent any reciprocal easement agreement or executory contract is proposed to be assigned, references herein to leases shall also apply to such agreements.

international retail real estate investment trust and one of the largest shopping mall operators in the United States.[15]  Each of the Premises is within a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code.  *See Androse Assocs. of Allaire, LLC v. A&P (In re A&P)*, 472 B.R. 666, 677 (Bankr. S.D.N.Y. 2012); *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086 (3d Cir. 1990) ("[T]he mall *is* the archetypal 'shopping center.'") (emphasis in original).[16]

9.    On January 18, 2019, the Debtors filed the *Notice of Successful Bidder and Sale Hearing* [Docket No. 1730], which provided that the Debtors had determined that a bid submitted by ESL Investments, Inc. and its affiliates, through the Buyer (collectively, "**ESL**"), was the prevailing bid at the auction.  The Debtors concurrently filed the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1731] and have subsequently filed various other similar notices [e.g., Docket Nos. 1731, 1774, 2314, 2753, 2995, 3097, and 3152] (collectively, the "**Notices of Assumption and Assignment**"),[17] which have provided a list of additional contracts and leases (including certain of Simon's leases) that may be designated for assumption and assignment.

10.    In connection with the Notices of Assumption and Assignment and the sale hearing, the landlords, including Simon, raised numerous issues with respect to the assumption and assignment of their shopping center leases, as well as the transfer of Debtor-owned real property

---

[15]    *See* Simon Form 10-K dated Feb. 22, 2019 at 5, *available at* http://investors.simon.com/phoenix.zhtml?c=113968&p=irol-sec.

[16] Additional information regarding Simon and its relationship with the Debtors is included in the *Limited Objection and Reservation of Rights of Simon Property Group, L.P. to the Debtors' Motions for Approval of Bidding Procedures and Lease Rejection Procedures* [Docket No. 627] previously filed by Simon in these chapter 11 cases.

[17] Simon reserves all rights with respect to any lease not identified on the Notices of Assumption and Assignment, including its right to object to any proposed cure amounts or adequate assurance of future performance and its rights under section 365(h) of the Bankruptcy Code in connection with any such lease.

that was subject to reciprocal easement agreements.  These objections included objections to cure amounts, adequate assurance of future performance, and the proposed terms of the sale and Sale Order concerning various lease and landlord issues.  These issues were continued for future resolution at the sale hearing and the Sale Order fully preserved these issues for future resolution. [18, 19] Thereafter, the court entered the Assignment Order establishing certain terms and conditions with respect to the assumption and assignment of executory contracts and unexpired leases. Again, however, the Assignment Order expressly preserves all of the landlords' objections for future resolution.[20]

---

[18] Specifically, the Sale Order provides, *inter alia*, that "(i) all timely filed objections to the assumption and assignment of a Contract or Lease that is not an Initial Assigned Agreement, including, without limitation, as to adequate assurance of future performance and to the payment of all amounts due and owing and performance of all other obligations under a Contract or Lease . . . are adjourned and all parties' rights as to such issues are fully preserved and will be determined if and to the extent the applicable Contract or Lease is designated for assumption and assignment pursuant to the procedures described in this Sale Order; (ii) no finding of fact or conclusion of law set forth herein with respect to the assumption and assignment of the Initial Assigned Agreements shall apply, be binding upon, be law of the case, or operate to collaterally estop any issue, with respect to the assumption and assignment of any other Contract or Lease, other than with respect to the Initial Assigned Agreements; (iii) no Contract or Lease with a Debtor other than the Initial Assigned Agreements as set forth in Exhibit A shall be part of the Acquired Assets unless and until assumption and assignment of such Contract or Lease is approved in accordance with the procedures in this Sale Order; (iv) notwithstanding anything to the contrary herein, including, without limitation, paragraphs M, R, FF, 27, and 28, nothing in this Sale Order shall be a determination of the terms and conditions of the assumption and assignment of any Contract or Lease not on Exhibit A, including, without limitation, the Assignee's obligations in connection with the same; and (v) notwithstanding anything herein or in the Asset Purchase Agreement or any related document to the contrary, all parties' rights are fully reserved with respect to (x) all issues relating to the Buyer's, any other Assignee's and/or the Debtors' obligations to comply with all terms, conditions, covenants and obligations, whether related to the pre- or post-assignment period and (y) the issues set forth in clauses (a) and (b) of paragraph 59 of this Order (the "Reserved Lease Issues").  Sale Order at ¶ 3.  The Initial Assigned Agreements do not include any Simon lease or other agreement.

[19] Specifically, the Sale Order provides, *inter alia*, that "no finding of fact or conclusion of law set forth herein with respect to the assumption and assignment of the Initial Assigned Agreements shall apply, be binding upon, be law of the case, or operate to collaterally estop any issue, with respect to the Initial Assigned Agreements."  Sale Order at ¶ 3.  The Sale Order goes on to provide a Reservation of Rights concerning all "Reserve Lease Issues" defined as: "(x) all issues relating to the Buyer's, any other Assignee's and/or the Debtors' obligations to comply with all terms, conditions, covenants and obligations, whether related to the pre- or post-assignment period and (y) the issues set forth in clauses (a) and (b) of paragraph 59 of this Order." *Id.*

[20] *See* Assignment Order, ¶¶ 28-29.

11.     As noted above, on April 15, 2019, the Debtors filed the April 15 Designation Notice, pursuant to which Simon understands that the Debtors seek, *inter alia*, to assume and assign to the Buyer the Simon Cielo Vista Leases.

12.     Accordingly, Simon files this Objection to the Designation Notice, and the Assignment Order to ensure that its rights are fully preserved in respect of the proposed assignment of the Simon Cielo Vista Leases and any future assignment of its leases.  Simon has concurrently filed its Second Supplemental Cure Objection related to the Simon Cielo Vista Sub-Sublease, and incorporates such objection and its other Cure Objections herein by reference.

## OBJECTION

### A.     The Debtors and Proposed Assignee Have Failed to Meet Their Burden of Demonstrating Adequate Assurance of Future Performance by the Proposed Assignee.

13.     Simon objects to any proposed assumption and assignment of the Simon Cielo Vista Leases (or other Simon leases) unless the Debtors provide adequate assurance of future performance as to the Buyer and/or any other proposed assignee (in this case, Transform SR LLC) demonstrating such assignee's ability to comply with all of the requirements of sections 365(b)(3), (d) and (f) of the Bankruptcy Code.  Absent such a showing, the Bankruptcy Code requires denial of the proposed assumption and assignment.

14.     Under section 365(f)(2) of the Bankruptcy Code, a lease may only be assigned if (1) the lease is assumed in accordance with the requirements of section 365(b)(1) of the Bankruptcy Code and (2) the moving party provides adequate assurance of future performance by the proposed assignee of the lease terms.  11 U.S.C. § 365(f)(2).  Section 365(b)(1) provides that if there has been a default in an unexpired lease, the trustee may not assume the lease unless, at the time of assumption of such lease, the trustee cures the defaults and provides adequate assurance of future performance under the lease.  Similarly, section 365(f)(2) provides that, in order to assign

a lease under section 365, adequate assurance of future performance by the assignee must be provided whether or not there has been a default under the lease. The Debtors and/or proposed assignee bear the burden on adequate assurance issues. 11 U.S.C. § 365(b)(1)(C), (f)(2); *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) ("[T]he lessor must be given adequate assurance of future performance so that it will be protected from having to take on the burden of a tenant who may be likely to default on his lease obligations . . ."); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

15.     In addition, since all of the Simon Premises are located in shopping centers, the Debtors must meet the specific requirements of adequate assurance under section 365(b)(3) of the Bankruptcy Code, which are intended "to protect the rights of lessors and the center's other tenants." *In re Joshua Slocum*, 922 F.2d at 1086. Pursuant to section 365(b)(3), the specific requirements include:

- the source of rent and other consideration due under such lease, and *in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became lessee under the lease*. *See* 11 U.S.C. § 365(b)(3)(A);

- that any percentage rent due under such lease will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);

- *that assumption or assignment of such lease is subject to all the provisions thereof*, *including (but not limited to) provisions such as radius, location, use, or exclusivity provisions*, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and

- that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center. *See* 11 U.S.C. § 365(b)(3)(D).

10

Simon's leases, including the Simon Cielo Vista Leases, clearly qualify as "shopping center leases" under the Bankruptcy Code.  *See Androse Assocs.*, 472 B.R. at 677 ("[C]ourts have interpreted the term [shopping center] on a case-by-case basis and generally consider, among other criteria, combination of leases, whether all leases are held by single landlord, presence of common parking area, existence of master lease, and contiguity of stores."); *L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 299 (3d Cir. 2000); *In re Joshua Slocum,* 922 F.2d at 1086 ("[T]he mall *is* the archetypal 'shopping center.'") (emphasis in original).  Each of the Premises is within a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code based on their location in a mall in which a combination of leases are held by a single landlord (here, Simon), leased to commercial retail distributors of goods, with joint participation of tenants in maintenance, common parking area, etc.  *See Androse Assocs.*, 472 B.R. at 677.

16.    By way of example, even the most cursory review of the Cielo Vista mall shows that there can be no credible dispute that this property is a shopping center.  A simple review of the website for this property[21] indicates that this property is a mall (the Cielo Vista Mall, *i.e.*, the archetypal shopping center), the "Center Directory" includes a variety of stores (including Sears as one of the "anchor" tenants), and the property map[22] clearly shows these stores are contiguous with shared parking, etc.  Moreover, the Simon Cielo Vista Sub-Sublease clearly indicates that the premises is part of a shopping center (the lease is in fact titled "Cielo Vista Mall Shopping Center El Paso, Texas Sub-Sublease" and the recitals provide that the premises "constitutes part of the Cielo Vista Mall shopping center") subject to an applicable reciprocal easement agreement and

---

[21] The property website may be found at https://www.simon.com/mall/cielo-vista-mall/stores.

[22] The property map is available on the property website and may be found at https://www.simon.com/mall/cielo-vista-mall/map/#/.

other Restrictive Covenants incorporated by reference into the lease governing usage, operation, construction, repairs, alteration, etc.[23]

17.     It is the Debtors' and proposed assignee's burden of proof to provide adequate assurance of future performance.  Neither with the April 15 Designation Notice nor hereafter have the Debtors or the proposed assignee (whether the Buyer, Transform SR LLC, or otherwise) provided the court or Simon with any current information whatsoever, much less information adequate to prove (or even to meaningfully evaluate) adequate assurance of future performance as required by sections 365(b) and (f).  There are no declarations or financial information submitted with the April 15 Designation Notice or any indication that such evidence is forthcoming.  Nor is there any financial (or other) information whatsoever regarding Transform SR LLC (the proposed assignee of the Simon Cielo Vista Leases).  Moreover, the information provided by the Buyer mere days before[24] the sale hearing is now several months stale, and neither the Buyer nor Transform SR LLC has updated this information or provided current information on its financial resources or operating capabilities.

18.     In addition to the normal requirement of adequate assurance, section 365(b)(3)(A) also expressly requires the party seeking assignment to show that that the financial condition and operating performance of the proposed assignee is as good or better than the Debtor "*as of the time the debtor became lessee under the lease proposed assignee*."  11 U.S.C. § 365(b)(3)(A)

---

[23] *See*, *e.g.*, Simon Cielo Vista Sub-Sublease, Art. III ("Subject to the terms and provisions of this Lease, the Underlying Lease and the Underlying Sublease, and subject to the terms, provisions, covenants, conditions and restrictions contained in the Sears REA and incorporated herein by this reference, regarding the improvement, use and operation of the Sears Tract in the Shopping Center, Lessee shall use the Demised Premises only for those uses and purposes permitted under the Sears REA, and for no other use or purpose.").  *See also*, *e.g.*, *id.*, at Art. X (repairs, alteration, restoration pursuant to applicable reciprocal operating agreement).  Moreover, the reciprocal easement agreement provides for common area maintenance, access, use and operating requirements, and other provisions governing the operation of the Cielo Vista Mall as an integrated shopping center.

[24] *See Declaration of Kunal S. Kamlani, dated February 1, 2019, in Support of ESL's Omnibus Response in Support of the Going Concern Sale Transaction* [Docket No. 2356]

(emphasis added).  It is thus the Debtors' and/or proposed assignee's burden (***not*** the landlords' burden) to demonstrate that the proposed assignee is in a comparable or better financial and operational position than Sears was at the time it entered into the Simon Cielo Vista Sub-Sublease in July 1981.  Simon respectfully submits that no evidence has been put forward that provides clear insight into the proposed assignee's current financial condition, let alone that it has met the requirements of section 365(b)(3).

19.    In fact, as set forth in post-closing disclosures, there are serious questions as to whether the Buyer will have "sufficient liquidity" to meet its post-closing obligations, as well as its ability to "operate [the Business] on a going-forward basis." *See Transform Holdco LLC's Response to Debtors' (I) Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay against Transform Holdco LLC and (B) Compel Turnover of Estate Property and Reply In Further Support of Its Motion To Assign Matter to Mediation* [Docket No. 2864] at ¶ 34; *Initial Supplemental Brief in Response to Debtors' Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property* [Docket No. 3011] at ¶ 11.  Recent news reports have also called ESL's financial wherewithal into question.  *See Creditntell, New Sears – Appearance vs. Reality*, Web. (Apr. 2, 2019) ("Not surprisingly we expect [Transform] to struggle, with little margin for error, due to the same problems that plagued Sears Holdings.").  And there is no information whatsoever regarding the actual assignee – Transform SR LLC – and why the assignment was not to the Buyer, but rather to this entity, which may have no meaningful assets whatsoever.

20.    Before this issue can even be evaluated, as an initial matter the Debtors, Buyer and proposed tenant must provide: (i) pro forma financial statements for the proposed tenant and projections showing the viability of the proposed tenant, along with supporting documentation and

any financial support for its obligations (e.g., the current amount of its excess cash availability and/or a letter of credit supporting its rent obligations to Simon); (ii) the proposed tenant's most recent business plan and cash flow projections for each Simon lease/location; (iii) current financial statements, liquidity analyses, and forecasts for the proposed tenant; (iv) the specific name of the proposed tenant and an organizational chart; (v) the specific intended use for the space; (vi) evidence of the tenant's insurance coverage for each premises, (vii) assurances of compliance with the applicable requirements and obligations under the applicable leases (whether arising before or after assignment), and (viii) an analysis of the proposed tenant's credit quality and operating capabilities as compared to those of Sears at the time the original lease was entered into (in the case of Cielo Vista, in July 1981).  After this information is provided, the parties can evaluate whether further information is needed, including other discovery.

21.    Accordingly, Simon objects to the Designation Notice, application of the Assignment Order to its leases (including the Simon Cielo Vista Leases) as contrary to the requirements of section 365 of the Bankruptcy Code (including section 365(b)(3), and to the proposed assignee's ability to provide adequate assurance of future performance.

**B.**    **The Leases Must be Assigned *Cum Onere* and the Debtors Cannot Assign the Leases Without the Buyer Assuming the Surviving Obligations.**

22.    As also noted in Simon's prior Limited Adequate Protection and Sale Objection, pursuant to section 365(b)(1) of the Bankruptcy Code, the proposed assumption and assignment of Simon's leases may not be consummated unless all defaults under the leases have been cured, the leases are assumed and assigned in their entirety, and the assignee is subject to the terms and conditions thereof *cum onere*.  *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*."); *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012)

("An executory contract may not be assumed in part and rejected in part . . . The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits."). Moreover, section 365(b)(3) of the Bankruptcy Code further requires that the assumption and assignment of any lease in a "shopping center" be subject to *all* of the provisions of the applicable lease. 11 U.S.C. § 365(b)(3)(C).

23. As is customary for shopping center leases, Simon's leases with the Debtors (including the Simon Cielo Vista Sub-Sublease) include various obligations beyond the payment of rent that are unknown or not yet billed. These Surviving Obligations include, among other things, (a) payment of all accruing but unbilled charges under the leases, including but not limited to all unpaid year-end and other adjustments and reconciliations, (b) payment of all regular or periodic adjustment of charges under the leases, which were not due or had not been determined as of the date of this Objection, (c) all insurance, indemnification, contribution and other contractual obligations under the leases, and (d) any and all obligations arising on account of the Restrictive Covenants.[25] Each of the Surviving Obligations must be honored as a condition to assumption and assignment of any lease, including the Simon Cielo Vista Sub-Sublease.

24. Despite these clear obligations, the Assignment Order ostensibly seeks to absolve the Buyer of any liability with respect to the Surviving Obligations (as did the APA and Sale Order,

---

[25] As noted above, a number of stores that are owned by the Debtors or their affiliates (including stores located on the Designated Properties) are operated in or adjacent to Simon's properties. Such stores, as well as various leased stores, are subject to Restrictive Covenants, which must remain in full force and effect notwithstanding any sale of such stores under applicable law. *See, e.g., Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994) (finding that covenants running with the land are property interests and cannot be extinguished through bankruptcy); *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 188 (Ill. 1983) ("Generally, easements "run with the land" where the original parties intended the interest to run with the land, the interest touches and concerns the property, and there is privity of estate between the party claiming the benefit of the covenant and the party burdened by the covenant."). The Debtors bear the burden of proving that they are permitted to sell free and clear of any interest. *See In re Flour City Bagels, LLC*, 557 B.R. 53, 88 (Bankr. W.D.N.Y. 2016) (denying debtor's motion to sell property free and clear "[b]ecause [debtor] has not carried its burden of proof" to demonstrate compliance with section 363(f) of the Bankruptcy Code).

which Simon and the other landlords challenged and which issues were expressly reserved). According to the terms of the Assignment Order, "neither the Buyer . . . nor the applicable Assignee shall have any obligations under any Designated Agreement that is an Additional Assigned Agreement in respect of any costs or expenses (including, without limitation, for royalties, rents, utilities, taxes, insurance, fees, any common area or other maintenance charges, promotion funds and percentage rent) arising under any of the Additional Assigned Agreements attributable to (x) the portion of such calendar year occurring prior to such Lease Assignment or (y) for any previous calendar year, and the Sellers shall fully indemnify and hold harmless the Buyer and the applicable Assignee with respect thereto." Assignment Order at ¶ 17. Moreover, the Assignment Order is completely silent as to whether the Debtors will in fact be obligated to pay (or provide for an escrow or other arrangements to ensure payment of) such amounts.

25.     As a result, the Assignment Order impermissibly ignores the Surviving Obligations in violation of section 365's mandate that the landlord receive the full benefit of its bargain under the lease. The Debtors and the Buyer are, of course, free to allocate responsibility for the Surviving Obligations as between themselves as a matter of their contract, but should not be permitted to place the risk of either party defaulting on Simon – particularly where, as here, there is a substantial risk of administrative insolvency. At a minimum these liabilities must continue to follow the underlying assets so that Simon will retain its state law rights and remedies should the Buyer or other proposed assignee default on these obligations. Indeed, the necessity of additional adequate assurance is further demonstrated by the fact the Debtors are likely unable to provide a backstop

in the event that Transform is unable to satisfy the Surviving Obligations (or any other obligations ESL or Transform seek to shift to the Debtors).[26]

26.    Accordingly, Simon objects to the Designation Notice, the Assignment Order and the assumption and assignment of its leases, including the Simon Cielo Vista Sub-Sublease, to the extent that they purport to permit the Buyer or any other proposed assignee (including Transform SR LLC) to avoid the Surviving Obligations related to ongoing monetary and non-monetary obligations arising out of Simon's leases, including the Simon Cielo Vista Leases, that may relate to the pre-assignment period, but are unbilled or unknown.

**C.**    **Any Assignment of Owned or Leased Real Property Must be Subject to all Applicable Restrictive Covenants.**

27.    Simon objects to application of the Assignment Order to its leases, including the Simon Cielo Vista Sub-Sublease, because the order does not provide that any such assignment is subject to and requires compliance with all applicable reciprocal easement agreements and other Restrictive Covenants.  Virtually all leases in shopping centers are subject to reciprocal easement agreements and other restrictive covenants, which are designed to facilitate the orderly operation and maximize value of the shopping center for all parties.  For instance, the Simon Cielo Vista Sub-Sublease is specifically subject to, and incorporates by reference, various provisions of a reciprocal easement agreement and other Restrictive Covenants:   "Subject to the terms and provisions of this Lease, the Underlying Lease and the Underlying Sublease, and subject to the terms, provisions, covenants, conditions and restrictions contained in the Sears REA and

---

[26] *See Debtors' (I) Motion To (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property, and (II) Response to Transform Holdco LLC's Motion to Assign Matter to Mediation* [Docket No. 2796] (the "**Motion to Enforce**") at ¶ 22 (The Debtors have "minimal revenue expectations and depleted reserves to meet their post-Closing obligations and wind-down of the Estates."); *see also Notice of Transform Holdco LLC's Motion to Assign Matter to Mediation* [Docket No. 2766] at ¶ 37 (The Debtors "are substantially without assets or revenue generating operations, but are burdened by the substantial expenses of these cases.").

incorporated herein by this reference, regarding the improvement, use and operation of the Sears

Tract in the Shopping Center, Lessee shall use the Demised Premises only for those uses and

purposes permitted under the Sears REA, and for no other use or purpose."[27]  As an initial matter,

a debtor cannot sell free and clear of Restrictive Covenants under applicable law as such rights

have been found to be non-executory (and therefore not subject to rejection) and/or to run with the

land.[28]  Moreover, any question regarding whether the Restrictive Covenants run with the land

may not be decided in the context of the sale hearing, but instead must be addressed pursuant to a

separate adversary proceeding.  *See In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 73 (Bankr.

S.D.N.Y. 2016), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018)

("[T]he Court concludes that it cannot decide substantive legal issues, including whether the

covenants at issue run with the land, in the context of a motion to reject, unless such motion is

scheduled simultaneously with an adversary proceeding or contested matter to determine the

merits of the substantive legal disputes related to the motion.").   Accordingly, Restrictive

Covenants cannot be summarily stripped as part of the assignment and assumption process at all;

instead, any such attempt would require declaratory relief that may only be obtained pursuant to

an adversary proceeding.  *See id.*

28.    Pursuant to paragraph 59 of the Sale Order, the Buyer took all ***Debtor-owned*** real

property at closing subject to all Restrictive Covenants.  *See* Sale Order at ¶ 59(a) (no document

shall authorize "the sale of any real estate property owned by any of the Debtors, free and clear of

---

[27] *See*, *e.g.*, Simon Cielo Vista Sub-Sublease, at Art. III.

[28] *See*, *e.g.*, Simon Cielo Vista Sub-Sublease, § 16.11 ("Covenants to Run with the Land.  Unless the context indicates otherwise, each covenant, warranty, agreement, promise or duty of either Lessor, or Lessee as set forth herein shall be construed as a covenant and not as a condition. These covenants, warranties, agreements, promises and duties shall, to the fullest- extent legally possible, either run with the land or constitute equitable servitudes and they shall be appurtenant to the land to which they pertain and shall be deemed to run to and for the joint and severable benefit of the other party.")

(and shall not extinguish or otherwise diminish) any [Restrictive Covenants]").  While the Sale

Order and the Assignment Order reserved the Buyer's right to seek to acquire real estate leases

"free and clear" of any Restrictive Covenants, such orders require (i) specific notice describing the

Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and (ii) fourteen

calendar days from the filing and service of such notice for any non-Debtor counterparty to

object.[29]  The April 15 Designation Notice does not seek this relief with respect to the Simon Cielo

Vista Leases.  However, in spite of this, the Assignment Order fails to confirm that all applicable

Restrictive Covenants will apply absent such relief, and the "free and clear" provision suggests

that such Restrictive Covenants would be stripped even absent compliance with the Assignment

Order's notice requirements.  *See, e.g.*, Assignment Order at ¶¶ 6, 26.  Accordingly, any order

applicable to assignment of the Simon Cielo Vista Leases must recognize that the assignee is

subject to all applicable Restrictive Covenants.

29.     The *cum onere* principle and requirements of section 365 (including section

365(b)(3)) of the Bankruptcy Code also mandate that Restrictive Covenants be respected in

connection with any lease assignment.  *See* 11 U.S.C. § 365(b)(3)(C) (requiring that "assumption

or assignment of such lease is subject to all the provisions thereof"); *Bildisco*, 465 U.S. at 531; *In

re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).  As is typical, shopping

center leases are part of an integrated and complex commercial relationship between the shopping

center owner and tenants that arise under both leases as well as reciprocal easement agreements

---

[29] *See* Sale Order at ¶ 59. ("To the extent that the Debtors or any other party seek to assume and assign any ***real estate leases*** to which a Debtor is a party free and clear of any Restrictive Covenant, the Debtors or such party shall file a notice ***that describes the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish*** and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto; any such issues shall be determined by the Court or otherwise resolved consensually prior to the effectiveness of the assignment of any lease, and all rights, remedies, and positions of all parties with respect to any such relief are preserved.") (emphasis added).

and other Restrictive Covenants applicable to the properties.  By way of example, the Simon Cielo

Vista Sub-Sublease expressly incorporates the applicable reciprocal operating agreement and other

restrictive covenants into its terms.  Accordingly, assumption of the lease in accordance with

section 365 of the Bankruptcy Code and applicable law therefore requires compliance with, and is

subject to, the reciprocal easement agreements and other Restrictive Covenants related to the

property.[30]

30.     Accordingly, Simon objects to the Designation Notice, the Assignment Order and

the assumption and/or assignment of its leases or any Premises to the extent such transfer is not

subject to all applicable reciprocal easement agreements and other Restrictive Covenants.

**D.      The Debtors Must Comply With the Requirements of Section 365 and Applicable
Law and May Not Modify or Expand Their Rights Through the Sale.**

31.     As discussed above, any assignee must take an assigned leases in its entirety.  *See*,

*e.g.*, 11 U.S.C. § 365(b)(3)(C); *Adelphia Bus. Sols.*, 322 B.R. at 54; *Bildisco & Bildisco*, 465 U.S.

at 531; *MF Glob. Holdings*, 466 B.R. at 241.  Moreover, section 365(b)(3) specifically requires

that the Debtors show as to any assignee "that assumption or assignment of such lease is subject

to all the provisions thereof."  *See* 11 U.S.C. § 365(b)(3)(C)-(D).

32.     Notwithstanding these clear requirements and the fact that all of Simon's leases are

"shopping center" leases (including the Simon Cielo Vista Sub-Sublease), certain provisions of

the Assignment Order purport to override the terms and conditions of such leases – an objection

that Simon raised regarding the Sale Order and the court preserved for later determination (such

---

[30] *See*, *e.g.*, Simon Cielo Vista Sub-Sublease, Art. III ("Subject to the terms and provisions of this Lease, the
Underlying Lease and the Underlying Sublease, ***and subject to the terms, provisions, covenants, conditions and
restrictions contained in the Sears REA and incorporated herein by this reference***, regarding the improvement, use
and operation of the Sears Tract in the Shopping Center, Lessee shall use the Demised Premises only for those uses
and purposes permitted under the Sears REA, and for no other use or purpose.").  *See also*, *e.g.*, *id.*, at Art. X (repairs,
alteration, restoration pursuant to applicable reciprocal operating agreement).

as now).  For instance, paragraph 19 of the Assignment Order seeks to mandate that the Buyer or the applicable Assignee may, among other things, alter the premises as "deemed necessary or desirable for such Assignee," including modifying "signage, together with appropriate changes to existing tenant signage in the respective shopping center or mall, including panels on all pylons, monuments, directional and other ground and off-premises signs where Sellers are currently represented" or go dark for a period of up to 150 days.  Such unrestricted rights to modify the premises without complying with the applicable lease terms and Restrictive Covenants could harm the shopping center, the landlord, and other tenants (no specific project or proposal has been presented to the landlord, making it impossible for Simon to properly evaluate potential consequences).  As noted above, the Simon Cielo Vista Sub-Sublease specifically includes provisions applicable to the construction and operation of the Premises, which also incorporate the applicable reciprocal easement agreement and other Restrictive Covenants; these, in turn, establish requirements for signage, modification, restoration and repair of the premises, etc.[31] Assignment of the lease pursuant to the Bankruptcy Code (particularly section 365(b)(3)), requires compliance with the terms of the underlying lease, the applicable reciprocal easement agreements, and applicable Restrictive Covenants – assignment pursuant to section 365 does not permit the Debtors or the assignee to re-write the lease.[32]

---

[31] *See*, *e.g.*, *Reciprocal Easement and Operating Agreement* dated as of July 6, 1981 (the "**Cielo Vista REA**") at § 20.1 (Sears is responsible for maintaining the interior and exterior of its building, including perimeter landscaping and must keep the entire premises reasonably clean and free of debris, ice, snow, and trash), § 20.6 (Sears is responsible for all major repairs, including the paving, curbs, or lighting of the parking area on its tract), §21.5 (if Sears chooses to repair, reconstruct, or replace its building or improvements, it must: (i) get Developer approval; (ii) have at least the same value per square foot and at least as usable for its intended purposes; (iii) have substantially the same public entrances; and (iv) be completed in conformity with the REA), § 21.7 (Sears and developer are jointly responsible for repairing the parking deck after fire, windstorm, or other casualty, as long as Sears is open and operating a retail store in the Sears building), § 24.4 (REA parties grant each other easements to use each portion of the common areas on its respective tract to perform certain joint repairs and maintenance).

[32] While instances may exist where some authorization to modify signage is necessary to permit assignment to a third party, such considerations are irrelevant here where any assignment is effectively from old Sears to new Sears.

E.      **Bankruptcy Rules 6004(h) and 6006(d) Should Not Be Waived.**

33.      The Debtors have not demonstrated that they are entitled to a waiver of Bankruptcy

Rules 6004(h) and 6006(d), which provide that an order assuming, assigning or selling property

under sections 365 and/or 363 of the Bankruptcy Code shall not be effective for fourteen days

after entry.  The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to "provide sufficient time

for an objecting party to request a stay pending appeal before the order can be implemented.  A

short period of time is often needed and essential to an objecting party intending to appeal

because, if the sale [or assignment] is closed in the absence of a stay, any appeal by an objecting

party may well be moot." 10 Collier On Bankruptcy ¶6004.11, ¶6006.04 (16th ed. 2014).  Where

an objection to an assignment has been filed and is overruled, "the court should eliminate or

reduce the 14-day stay period only 'upon a showing that there is a sufficient business need to

close the transaction within the 14-day period and the interests of the objecting party, taking into

account the likelihood of success on appeal, are sufficiently protected.'"  *In re Borders Grp., Inc.*,

453 B.R. 477, 486 (Bankr. S.D.N.Y. 2011) (quoting Collier On Bankruptcy).  Here, the Debtors

have made no showing that there is *any* business need to support waiver of the 14-day automatic

stay.  Indeed, the transactions contemplated by the Sale Order have already occurred and the

Buyer closed taking the risk of determination as to the requirements for assumption and

assignment of leases and related landlord issues.  Thus, any request for waiver of Bankruptcy

Rules 6004(h) and 6006(d) should be denied in this instance.[33]

## JOINDER AND RESERVATION OF RIGHTS

34.      Simon reserves the right to make such other and further objections as may be

appropriate as additional documentation and information is provided.  Simon specifically reserves

---

[33] It is unclear whether the Assignment Order also seeks to invoke the "good faith" protections of section 363(m).  *See*
Assignment Order at ¶ 22. To the extent such a finding is sought and evidence is presented to support such a finding,

all rights, remedies (including rights of setoff and recoupment), and positions with respect to any Proposed Assignee via Designation Rights (each as defined in the Notices of Assumption and Assignment (whether the Buyer or another party)), including the right to object to any proposed use or change of use of the Premises or to amend or update any cure amounts in connection therewith.[34]  Simon hereby joins in any objections filed by the Debtors' other landlords and the official committee of unsecured creditors to the extent not inconsistent herewith.

[*remainder of page intentionally left blank*]

---

such protection is nevertheless unwarranted as any finding of good faith pursuant to section 363(m) has no bearing on whether the requirements for assumption and assignment of the Leases pursuant to section 365 have been met. *See Matter of Spanish Peaks Holdings II, LLC*, 872 F.3d 892, 896 n.4 (9th Cir. 2017) ("By its terms, section 363(m) preserves the *validity* of a sale challenged on appeal.  Although [plaintiffs] seek a determination that their leaseholds survived the sale to [buyer], they have not asked us to undo the sale.  Therefore, the outcome of the appeal will not affect the sale's validity.") (emphasis in original).  Here, the issues raised in the Objection relate solely to the Debtors' failure to meet the requirements of section 365 in connection with the assumption and assignment of the Leases, and do not challenge Sale Order in any way.  Thus, any good faith finding under section 363(m) is inapplicable and unwarranted.

[34] In its Cure Objections, Simon challenged the cure amounts applicable to its leases set forth in the Debtors' *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1731] and *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1774].  Simon expressly reserves its rights to update, supplement and/or modify the aforementioned objections, or to make such additional objections as may become necessary.  Simon further notes that as to any of its leases that are not included in the Notices of Assumption and Assignment, Simon reserves all rights in connection therewith.

## CONCLUSION

WHEREFORE, Simon respectfully requests that the court (i) deny the assumption and

assignment of the Simon leases (including the Simon Cielo Vista Sub-Sublease) unless and until

the issues identified herein are addressed and (ii) grant such relief as the court deems just and

proper.

Dated:  April 23, 2019
　　　　New York, New York

　　　　　　　　　　　　　　　　　*/s/ Ted A. Dillman*
　　　　　　　　　　　　　　　　　Peter M. Gilhuly (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　Christopher Harris, Esq.
　　　　　　　　　　　　　　　　　Ted A. Dillman (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　Rakim E. Johnson, Esq.
　　　　　　　　　　　　　　　　　LATHAM & WATKINS LLP
　　　　　　　　　　　　　　　　　885 Third Avenue
　　　　　　　　　　　　　　　　　New York, NY 10022-4834
　　　　　　　　　　　　　　　　　Tel: (212) 906-1200
　　　　　　　　　　　　　　　　　Fax: (212) 751-4864
　　　　　　　　　　　　　　　　　Email:  peter.gilhuly@lw.com
　　　　　　　　　　　　　　　　　　　　　christopher.harris@lw.com
　　　　　　　　　　　　　　　　　　　　　ted.dillman@lw.com
　　　　　　　　　　　　　　　　　　　　　rakim.johnson@lw.com

　　　　　　　　　　　　　　　　　*Attorneys for Simon Property Group, L.P.*