EXHIBIT 2

CIELO VISTA SUB-SUBLEASE

7/6/8/

CIELO VISTA MALL SHOPPING CENTER
EL PASO, TEXAS

SUB-SUBLEASE

by and between

CELINA DEVELOPMENT COMPANY, Lessor

and

SEARS, ROEBUCK AND CO., Lessee

Table of Contents

|                                                             | Page |
|-------------------------------------------------------------|------|
| Parties                                                     | 1    |
| Recitations                                                 | 1    |
| **ARTICLE I** <br> DEMISED PREMISES; DEFINITIONS            |      |
| Section 1.1    Demised Premises                             | 2    |
| Section 1.2    Definitions                                  | 2    |
| Section 1.3    Service Equipment                            | 2    |
| **ARTICLE II** <br> LEASE TERM                              |      |
| Section 2.1    Lease Term                                   | 3    |
| Section 2.2    Lease Year Defined                           | 3    |
| Section 2.3    Extensions                                   | 3    |
| **ARTICLE III** <br> USE OF THE DEMISED PREMISES            | 4    |
| **ARTICLE IV** <br> RENT                                    |      |
| Section 4.1    Rent                                         | 4    |
| Section 4.2    Payments for Lessee                          | 4    |
| **ARTICLE V** <br> TAXES AND ASSESSMENTS                    |      |
| Section 5.1    Tax Definitions                              | 4    |
| Section 5.2    Tax Payment by Lessor                        | 5    |
| Section 5.3    Demised Premises Separately Assessed         | 5    |
| Section 5.4    Lessee's Improvements Separately Assessed    | 5    |
| Section 5.5    Demised Premises, Land and Improvements Thereon Assessed Together | 6 |
| Section 5.6    Demised Premises Not Separately Assessed     | 6    |
| Section 5.7    Improvements on Demised Premises Not Separately Assessed | 6 |
| Section 5.8    Commencement and Termination of Lessee's Tax Duty | 6 |
| Section 5.9    Contesting Taxes                             | 7    |
| Section 5.10   Definition of the Term "when due"            | 8    |
| **ARTICLE VI** <br> CONSTRUCTION AND OWNERSHIP OF IMPROVEMENTS |    |
| Section 6.1    Construction                                 | 8    |
| Section 6.2    Ownership of Improvements                    | 8    |

| | | Page |
|---|---|---|
| ARTICLE VII<br>QUIET ENJOYMENT | | 9 |
| ARTICLE VIII<br>CONDEMNATION | | |
| Section 8.1 | General Provisions | 9 |
| Section 8.2 | No Termination of Lease | 9 |
| Section 8.3 | Prosecution of Claims for and Apportionment of Condemnation Awards | 10 |
| ARTICLE IX<br>ASSIGNMENT, SUBLETTING AND LEASEHOLD MORTGAGING | | |
| Section 9.1 | Assignment and Subletting | 10 |
| Section 9.2 | Leasehold Mortgaging | 10 |
| ARTICLE X<br>REPAIRS, ALTERATIONS AND RESTORATIONS | | 13 |
| ARTICLE XI<br>INSURANCE | | 13 |
| ARTICLE XII<br>SURRENDER OF AND HOLDING OVER OF DEMISED PREMISES | | |
| Section 12.1 | Surrender of Demised Premises and Lessee's Improvements | 13 |
| Section 12.2 | Holding Over | 13 |
| Section 12.3 | Removal of "Personal Property" | 13 |
| ARTICLE XIII<br>DEFAULT BY LESSEE | | |
| Section 13.1 | Events of Default; Lessor's Right to Re-Enter | 14 |
| Section 13.2 | Right to Relet | 16 |
| Section 13.3 | Waiver of Rights of Redemption | 17 |
| ARTICLE XIV<br>LESSOR'S OPTION TO ACQUIRE LESSEE'S LEASEHOLD ESTATE | | |
| Section 14.1 | Option to Acquire Leasehold Estate | 17 |
| Section 14.2 | Payment to Lessee | 17 |
| Section 14.3 | Other Rights and Remedies of Lessor | 17 |
| ARTICLE XV<br>NOTICES | | |
| Section 15.1 | Form and Delivery of Notice | 17 |
| Section 15.2 | Notice Effective When Mailed | 18 |
| ARTICLE XVI<br>MISCELLANEOUS | | |
| Section 16.1 | Memorandum of Lease | 18 |
| Section 16.2 | Exhibits | 18 |
| Section 16.3 | References to Articles and Sections | 18 |
| Section 16.4 | Table of Contents and Captions | 18 |
| Section 16.5 | Locative Adverbs | 18 |
| Section 16.6 | Lease for Exclusive Benefit of Parties | 19 |

|  |  | Page |
|---|---|---|
| Section 16.7 | No Partnership, Joint Venture or Principal-Agent Relationship | 19 |
| Section 16.8 | Successors and Assigns | 19 |
| Section 16.9 | Severability | 19 |
| Section 16.10 | Texas Law Governs | 19 |
| Section 16.11 | Covenants to Run with the Land | 19 |
| Section 16.12 | Other Remedies | 19 |
| Section 16.13 | Time is of the Essence | 19 |
| Section 16.14 | Entire Agreement; Amendments and Modifications in Writing | 20 |
| Section 16.15 | Counterparts | 20 |
| Section 16.16 | Broker's Fees | 20 |
| Section 16.17 | Force Majeure | 20 |
| Execution Clause |  | 20 |
| Acknowledgements |  | 21 |

SUB-SUBLEASE

THIS SUB-SUBLEASE (hereinafter referred to as the "Lease") is made and entered into as of the _6ᵀᴴ_ day of _July_, 198_1_, by and between CELINA DEVELOPMENT COMPANY, a Texas limited partnership, having an office at 1712 North Meridian Street, Indianapolis, Indiana 46202 (hereinafter referred to as "Lessor"), and SEARS, ROEBUCK AND CO., a New York corporation authorized to do business in the State of Texas, having its principal office at Sears Tower, Chicago, Illinois 60684, and its Southwest territorial office at 1000 Belleview, Dallas, Texas 75295 (hereinafter referred to as "Lessee").

WITNESSETH:

WHEREAS, Dillpaso Properties Corp., a Texas corporation (hereinafter referred to as "Dillpaso"), is the fee simple title owner of certain land situated in the City of El Paso, State of Texas, more particularly described by metes and bounds in Exhibit "A" attached hereto (hereinafter referred to as the "Dillard Tract"); and

WHEREAS, Dillard Department Stores, Inc., a Delaware corporation (hereinafter referred to as "Dillard") has leased the Dillard Tract from Dillpaso under a certain lease (hereinafter referred to as the "Underlying Lease") dated July 25, 1974, a Memorandum of which was recorded in the Office of the Clerk of El Paso County, Texas, on November 18, 1974, in Book 560, Page 199; and

WHEREAS, Dillard has subleased a portion of the Dillard Tract to Lessor under a certain Sublease (hereinafter referred to as the "Underlying Sublease") dated _July 6_, 198_1_, a Memorandum of which was recorded in the Office of the Clerk of El Paso County, Texas on _August 17_, 198_1_ in Book _1198_, Page _463_, which portion of the Dillard Tract leased to Lessor is more particularly described by metes and bounds in Exhibit "B" attached hereto (hereinafter referred to as the "Sublease Tract"); and

WHEREAS, Dillpaso has mortgaged the Dillard Tract to Provident National Bank and Joseph Feduniue, Trustees, pursuant to a certain Indenture of Mortgage and Deed of Trust (hereinafter referred to as the "Mortgage") dated July 25, 1974 and recorded in the Office of the Clerk of El Paso County, Texas on November 18, 1974 in Book 560, Page 205, which Mortgage is subject and subordinate to the Underlying Lease, the Underlying Sublease and all amendments, modifications, extensions and renewals thereof; and

WHEREAS, the Dillard Tract constitutes a part of the Cielo Vista Mall Shopping Center (hereinafter referred to as the "Shopping Center") in El Paso, Texas; and

WHEREAS, Lessee desires to sub-sublease from Lessor and Lessor desires to sublease to Lessee a portion of the Sublease Tract, which portion is more particularly described by metes and bounds in Exhibit "C" attached hereto, together with all easements, rights, licenses, rights-of-way and privileges appurtenant thereto, including, without limitation, those easements and rights which are more particularly described and referred to on Exhibit "D", which portion of the Sublease Tract described in Exhibit "C" attached hereto, together with the easements and rights appurtenant thereto described in Exhibit "D" attached hereto, are hereinafter referred to collectively as the "Demised Premises"; and

WHEREAS, Lessor and Lessee have entered into a certain Reciprocal Easement and Operating Agreement of even date herewith which will be recorded immediately following the recording of a memorandum of this Sub-Sublease, in the Office of the County Clerk, El Paso County, Texas (said Reciprocal Easement and Operating Agreement being herein- after referred to as the "Sears REA"), whereby Lessor and Lessee have granted to each other certain reciprocal and non-exclusive easements over, upon, across and through their respective parcels of land described therein; and

WHEREAS, Lessor and others have heretofore entered into a certain Agreement dated as of July 18, 1973, recorded in Book 465, Page 573, in the Office of the County Clerk, El Paso County, Texas, amended by Amendment dated September 3, 1974, recorded in Book 558, Page 342, in said Office, and further amended by Amendment to Agreement dated as of August 30, 1978, recorded in Book 940, Page 2064, in said Office, and further amended by Supplement and Third Amendment to Agreement and Amendment to Reciprocal Easement and Operating Agreements among Lessor, Lessee and others, dated as of _____, 198___, recorded in Book _____, Page _____, in said Office (said Agreement as amended hereinafter referred to as the "REA Tie-In Agreement"), whereby Lessor and Lessee, and, the other parties thereto, confirmed their understanding that all of the easements and rights-of-way granted by them and to them under said Sears REA and other agreements referred to therein are for the mutual and reciprocal benefit of each and all of them and their respective parcels of land described therein.

WHEREAS, it is understood and agreed that the Demised Premises shall be and become a part of the "Sears Tract" as that term is defined in the Sears REA and the REA Tie-In Agreement.

NOW, THEREFORE, in consideration of the rent and the mutual promises, covenants and agreements contained herein, it is agreed by and between Lessor and Lessee as follows:

## ARTICLE I

### DEMISED PREMISES; DEFINITIONS

#### Section 1.1.  Demised Premises.

Lessor hereby leases to Lessee, and Lessee hereby takes and hires from Lessor, the Demised Premises, upon the terms and conditions set forth herein, and subject to the terms and conditions of the Underlying Lease and the Underlying Sublease, free and clear of all liens and encumbrances, with the exception of the Permitted Exceptions set forth in Exhibit "E" attached hereto.

#### Section 1.2.  Definitions.

Unless otherwise expressly defined herein, capitalized terms used in this Lease shall have the same meaning and definition as in the Sears REA, which definitions are incorporated herein by this reference.

#### Section 1.3.  Service Equipment.

"Service Equipment" means machinery, apparatus, equip- ment, fittings and fixtures of every kind and nature whatso- ever in or placed in or on the Demised Premises and constituting real or personal property and used or procured for use in

-2-

connection with the operation and maintenance of any Building
on the Demised Premises, including, without limiting the
generality of the foregoing, all engines, furnaces, boilers,
stokers, pumps, heaters, tanks, dynamos, motors, generators,
switchboards, electrical equipment, heating, plumbing,
lifting and ventilating apparatus, air cooling and air con-
ditioning apparatus, gas and electric fixtures, elevators,
escalators, radiators, meters, public address systems, lights,
heating and sprinkler systems, but excluding all other personal
property, including movable trade fixtures, partitions, fur-
niture, furnishings and other equipment used or procured for
use in connection with the operation of the business conducted
on the Demised Premises, whether or not affixed to real estate.

## ARTICLE II

### LEASE TERM

#### Section 2.1.  Lease Term.

TO HAVE AND TO HOLD for an initial term commencing on
the date hereof (hereinafter referred to as the "Commencement
Date"), and expiring on December 31, 2004, and the extended
terms hereinafter provided for in this Lease.  "Term" shall
mean the initial term of this Lease and any and all renewals
or extensions thereof.

#### Section 2.2.  Lease Year Defined.

"Lease Year" as used herein, shall mean each full
calendar year during the Term of this Lease, with the first
Lease Year beginning on the first day of January immediately
following the Commencement Date.  The period of time from
the Commencement Date until the beginning of the first Lease
Year shall constitute a partial Lease Year hereunder.

#### Section 2.3.  Extensions.

Lessee shall have the right and option to extend the
Term of this Lease for not more than seven (7) successive
terms of five (5) years each, upon all of the same terms and
conditions, by giving written notice to Lessor of each such
extension at least one (1) year prior to the termination of
the then current Term.  If Lessee notifies Lessor of its
election to extend the Term of this Lease for a period which
would either commence after or extend beyond the then current
term of the Underlying Sublease, Lessor will, in each instance,
exercise its option to extend the term of the Underlying
Sublease for a period of time sufficient to accommodate
Lessee's extension of the Term of this Lease; PROVIDED,
HOWEVER, that Lessor's failure or neglect to expressly
extend the term of the Underlying Sublease shall not deprive
Lessee of its right to extend the Term of this Lease, and
Lessor hereby appoints Lessee as Lessor's attorney-in-fact
(which appointment is coupled with an interest and is
irrevocable during the Term of this Lease) to take any and
all necessary action for and on behalf of Lessor, in the name
of Lessor or Lessee, to extend the term of the Underlying
Sublease for and on behalf of Lessor in order to accommodate
the extension of the Term of this Lease, and the service upon
Dillard of a copy of Lessee's notice to Lessor extending the
Term of this Lease in any case shall be and constitute the
necessary notice to extend the corresponding term of the
Underlying Sublease accordingly.

-3-

## ARTICLE III

### USE OF THE DEMISED PREMISES

Subject to the terms and provisions of this Lease, the Underlying Lease and the Underlying Sublease, and subject to the terms, provisions, covenants, conditions and restrictions contained in the Sears REA and incorporated herein by this reference, regarding the improvement, use and operation of the Sears Tract in the Shopping Center, Lessee shall use the Demised Premises only for those uses and purposes permitted under the Sears REA, and for no other use or purpose.

### ARTICLE IV

### RENT

#### Section 4.1.  Rent.

Lessor acknowledges receipt of the sum of Two Hundred Fifty Dollars ($250.00) from Lessee in full payment of the rent for the initial Term of this Lease.  The rent for each five (5) year extended Term shall be One Hundred Dollars ($100.00), which shall be payable in advance at the time Lessee exercises its option to extend this Lease.

#### Section 4.2.  Payments for Lessee.

If Lessor pays or advances any monies or incurs any expense to correct a breach of this Lease by Lessee or to do or pay anything in this Lease required to be done or paid by Lessee, all amounts so paid, advanced or incurred shall, on notice to Lessee, be considered additional rent by Lessee, due and payable hereunder, with interest thereon at the lesser of twelve percent (12%) per annum or the highest lawful interest rate permitted in the State of Texas, and may be collected as by law provided in the case of rent.

### ARTICLE V

### TAXES AND ASSESSMENTS

#### Section 5.1.  Tax Definitions.

(a)  The term "Land Tax" shall be deemed to include all levies, taxes, assessments, water and sewer rents and charges, use and occupancy taxes, and all other like charges, imposts or burdens of whatsoever kind and nature, whether or not particularized by name, and whether general or special, ordinary or extraordinary, forseen or unforseen, which may be created, levied, assessed, imposed or charged upon or with respect to the Dillard Tract or on any part thereof or any appurtenances thereto by any federal, state, municipal or other authority, or under any law, ordinance or regulation of any such authority, including, among others, all special tax bills and general, special or other assessments and liens or charges made on local or general improvements or under any governmental or public power or authority whatsoever (excluding the amount of the same assessed with respect to the Improvements located upon the Dillard Tract).

The term "Land Tax" shall not include Lessor's or Lessee's Personal Tax.

(b)  The term "Improvement Tax" shall be deemed to include all levies, taxes, assessments, water and sewer rents and charges, use and occupancy taxes, and all other like charges,

-4-

imposts or burdens of whatsoever kind and nature, whether or not particularized by name, and whether general or special, ordinary or extraordinary, forseen or unforseen, which may be created, levied, assessed, imposed or charged upon or with respect to the Improvements located in or upon the Dillard Tract or on any part thereof or any appurtenances thereto, by any federal, state, municipal or other authority, or under any law, ordinance or regulation of any such authority, including, among others, all special tax bills and general, special or other assessments and liens or charges made on local or general improvements or under any governmental or public power or authority whatsoever.

The term "Land Tax per square foot" shall mean Land Tax divided by the number of square feet of land contained in the Dillard Tract or the portion thereof to which the Land Tax applies.

(d)  The term "Building Improvement Tax per square foot" shall mean that portion of the Improvement Tax based upon the aggregate total assessed valuation of all buildings located upon the Dillard Tract, divided by the number of square feet of Floor Area of all buildings located upon the Dillard Tract.  The term "Common Area Improvement Tax per square foot" shall mean that portion of the Improvement Tax based upon the aggregate total assessed valuation of all Common Area Improvements within the Dillard Tract, divided by the number of square feet of land contained in the Dillard Tract.

(e)  The term "Personal Tax" shall mean any income, franchise, corporation, capital levy, excise, inheritance, devolution, gift or estate tax which may be charged or assessed against Lessee and/or Lessor or any tax upon the sale, transfer or assignment of the title or estate of Lessee and/or Lessor in the Dillard Tract or any portion thereof.

Section 5.2.    Tax Payment by Lessor.

Lessor shall pay, or cause to be paid, when due, all Land Tax and all Improvement Tax not required to be paid by Lessee pursuant to Sections 5.3, 5.4 and 5.5.

Section 5.3.    Demised Premises Separately Assessed.

In the event that the land comprising the Demised Premises shall be assessed as a separate tax parcel from the land comprising the remainder of the Dillard Tract, Lessee shall pay when due the Land Tax applicable to the Demised Premises.

Section 5.4.    Lessee's Improvements Separately Assessed.

In the event that the Improvements, if any, upon the Demised Premises, either ('i) shall be assessed as a separate tax parcel or (ii) shall be given separate assessed valuation(s) by the tax assessor, exclusive, in each event, of the Improvements upon the remainder of the Dillard Tract, Lessee shall pay when due the Improvement Tax applicable to the Improvements on the Demised Premises.  In the event that the provisions of this Section 5.4 are applicable, the Improvement Tax applicable to the Improvements on the Demised Premises shall be determined by multiplying the aggregate of the separate assessed valuations of the Improvements on the Demised Premises times the applicable tax rate.

Section 5.5.    Demised Premises, Land and Improvements
Thereon Assessed Together.

In the event land comprising the Demised Premises shall be
assessed as a separate tax parcel only with the Improvements
located upon the Demised Premises, Lessee shall pay when due
the Land Tax applicable to the Demised Premises and the
Improvement Tax applicable to the Improvements on the Demised
Premises, and Lessee shall, upon request of the Lessor, furnish
to Lessor proof of payment for the Land Tax and Improvement Tax
required to be paid by Lessee pursuant to this Section 5.5.

Section 5.6.    Demised Premises Not Separately Assessed.

In the event that the land comprising the Demised Premises
is assessed and included in a tax parcel which also includes
all or any portion of the land comprising the Dillard Tract,
Lessor shall pay when due the Land Tax applicable to all of
said land, and Lessee shall reimburse Lessor for Lessee's
proportionate share of said Land Tax, which said proportionate
share shall be a sum obtained by multiplying the Land Tax per
square foot by the number of square feet of land contained in
the Demised Premises, and Lessee shall so reimburse Lessor
within twenty (20) days after Lessee receives from Lessor:

(a)  a statement showing in reasonable detail the
computation of Lessee's portion of the Land Tax; and

(b)  a copy of the Land Tax bill that Lessor used in
making its computation; and

(c)  a copy of the paid Land Tax bill or other proof of
payment.

Section 5.7.    Improvements on Demised Premises Not
Separately Assessed.

In the event the Improvements, if any, on the Demised
Premises are assessed together with all or any portion of the
Improvements on the Dillard Tract and separate assessed
valuations are not given to the Improvements on the Demised
Premises, Lessor shall pay when due the Improvement Tax
applicable to all of said Improvements, and Lessee shall
reimburse Lessor for Lessee's proportionate share of said
Improvement Tax, which said proportionate share shall be the
sum of (i) the product obtained by multiplying the Building
Improvement Tax per square foot by the number of square feet
of Floor Area in all buildings located on the Demised
Premises, plus (ii) the product obtained by multiplying the
Common Area Improvement Tax per square foot by the number of
square feet of land contained in the Demised Premises, and
Lessee shall so reimburse Lessor within twenty (20) days after
Lessee receives from Lessor:

(a)  a statement showing in reasonable detail the
computation of Lessee's portion of the Improvement Tax; and

(b)  a copy of the paid Improvement Tax bill or other
proof of payment.

Section 5.8.    Commencement and Termination of Lessee's
Tax Duty.

Lessee's obligation to pay Land Tax and Improvement Tax
pursuant to the preceding provisions of this Article V shall
commence on the date hereof, and shall terminate upon the
termination of this Lease, and the same shall constitute
additional rent payable by Lessee hereunder.

Section 5.9.  Contesting Taxes.

Lessee may, subject to Lessor's approval, which approval shall not be unreasonably withheld, delayed or denied, at its expense, in Lessee's own name and/or in the name of Lessor, and/or the fee owner of the Demised Premises, if the inclusion of such other names be required by law, contest the amount, applicability or validity, in whole or in part, of any tax on the Demised Premises, or a tax block in which all or a part thereof are located, or the amount, applicability or validity of any assessment or valuation of the Demised Premises, or a tax block in which all or part thereof are located, in appropriate proceedings properly initiated and diligently conducted in good faith.

Lessor may, at its expense, in Lessor's own name, contest the amount, applicability or validity of any assessment or valuation of the Dillard Tract, or a tax block in which all or part thereof are located, in appropriate proceedings properly initiated and diligently conducted in good faith.

All taxes contested pursuant to this Section 5.9 shall nonetheless be paid when due unless such payment would operate as a bar to the contest thereof or interfere materially with the prosecution thereof, in which case the contesting party may defer payment of such tax during such proceeding if:

(a)  such deferral does not cause a forfeiture, judicial sale or loss of the Demised Premises, the Dillard Tract, Lessor's or Lessee's interest therein, or any part thereof; and the non-contesting party and the fee owner would not be subject to any criminal liability for failure to pay such tax; and

(b)  the contesting party shall have deposited with a mutually acceptable escrow agent (agreement upon the identity of which shall not be unreasonably withheld, it being agreed that first mortgagee of the Tract of the contesting party is hereby approved as escrow agent) having surplus or net worth of at least $25,000,000.00, such reasonable security (which at the option of the contesting party may be readily marketable obligations of the United States Government or certificates of deposit issued by commercial banks located in the United States and having combined capital and/or surplus of not less than $25,000,000.00) as is equal in value to the amount of deferred taxes, plus estimated interest and penalties.  If Lessor or Lessee is the contesting party, the other shall accept, in lieu of the said security deposit, an indemnification agreement from the contesting party in which the contesting party shall agree to defend, hold harmless and indemnify the other for any and all losses which the other may sustain by reason of the deferral of the payment of the said taxes and the contest thereof.

Upon the termination of any such proceedings by final unappealable decision, settlement or otherwise, the contesting party shall pay the amount then unpaid of the said tax finally determined or agreed to be due together with any costs, fees, interest, penalties or other liabilities existent in connection therewith or the contest thereof; provided, however, if the contesting party fails to pay any of the said amounts within one (1) month of the termination of such proceedings or at any time that such payment may be necessary in the escrow agent's opinion to prevent any of the occurrences listed in subsection 5.9 (a) above, the escrow agent shall pay from the escrow funds the amount

-7-

necessary to liquidate all such obligations. After such tax liability is satisfied, the escrow agent shall return the balance of security deposited with it, if any, to the party that deposited it initially, together with any interest or increment earned thereon less the charges, if any, of the escrow agent.

If both parties shall be simultaneously contesting taxes pursuant to this Section 5.9, or shall join in a contest, each shall bear its own expenses and they shall cooperate in one action, if possible. Each party shall be entitled to any refund allocable to a tax or part of a tax paid by it. The part of any such refund paid to either party which is allocable to a tax payment made by the other party shall be held in trust by the party receiving such refund. In the event such refund has been obtained in a proceeding instituted and conducted solely by the other party, the refund shall be reduced by a share of the expenses incurred in such contest calculated by multiplying the amount of the total expenses by a fraction, the numerator of which shall be the refund allocable to the non-contesting party and the denominator of which shall be the total refund.

If the non-contesting party be in default in any of its obligations under this Lease, any sum due such party may be first used to cure such default.

Each party agrees to cooperate with a contesting party and upon request to execute or join in the execution of any necessary papers in connection with such contest, but a non-contesting party need not incur any expenses in connection with such cooperation.

Any party who intends to contest taxes shall give prompt notice to the other party of said intention prior to the commencement of any proceeding permitted by this Section, and upon request of the other party, the contesting party shall inform the other party of the progress and conclusion of same.

Section 5.10.  Definition of the Term "when due".

The term "when due" as used with respect to payments required by this Article V shall mean any time prior to the time when interest or penalties would begin to accrue on the payment.

ARTICLE VI

CONSTRUCTION AND OWNERSHIP OF IMPROVEMENTS

Section 6.1.  Construction.

The parties hereto have agreed between themselves and with others upon their respective obligations in connection with construction of certain Improvements on the Demised Premises, the Sears Tract and within the Shopping Center, pursuant to the terms of the Sears REA and the REA Tie-In Agreement, which terms are incorporated herein by this reference thereto and made a part hereof to the extent applicable.

Section 6.2.  Ownership of Improvements.

Title to any Improvements and Service Equipment which may be erected and placed in, on, about or affixed to the

-8-

Demised Premises by, for or through Lessee shall be and remain
in Lessee during the Term of this Lease.  Upon the expiration
or prior termination of the Term of this Lease all such
Improvements and Service Equipment located upon the Demised
Premises and not removed therefrom by Lessee shall be and
become the property of Lessor and Lessee shall have no further
right, title or interest therein, without the necessity of any
further instrument or document.

## ARTICLE VII

### QUIET ENJOYMENT

Lessor covenants, represents and warrants:

(1)  that Lessor has full right and lawful authority
to enter into and perform the Lessor's obligations under
this Lease for the full term aforesaid and for all exten-
sions herein provided,

(2)  that Lessor has good marketable leasehold title
to the Demised Premises, free and clear of all contracts,
leases, tenancies, agreements, restrictions, violations,
mortgages or other rights, encumbrances or defects in title
of any nature whatsoever affecting the Demised Premises,
except for the Permitted Exceptions set forth in Exhibit "E"
attached hereto.

(3)  that this Lease is not and shall not be subject or
subordinate to any mortgage except for such subordination as
may be accomplished in accordance with the provisions of this
Lease, and

(4)  that if Lessee shall discharge the obligations
herein set forth to be performed by Lessee, Lessee shall
have and enjoy, during the term hereof, and all extensions
herein provided, the quiet and undisturbed possession thereof,
together with the right to use the Demised Premises as in this
Lease contemplated, subject only to the terms and conditions
of the Underlying Lease and the Underlying Sublease.

## ARTICLE VIII

### CONDEMNATION

Section 8.1.  General Provisions.

The parties hereto have agreed upon their respective
rights and obligations in the event of any condemnation or
taking by or in lieu of eminent domain of the land owned by
the parties within the Shopping Center, and the same are set
forth in the Sears REA and REA Tie-In Agreement; provided,
however, to the extent that the provisions of this Lease are
inconsistent with the Sears REA or the REA Tie-In Agreement,
the provisions of this Lease shall be controlling as between
the parties hereto.

Section 8.2.  No Termination of Lease.

Neither the condemnation of all or any part of the
Demised Premises nor the taking of all or any part of the
Demised Premises by or in lieu of eminent domain shall cause
or result in the termination of this Lease, and this Lease
shall remain unaffected and in full force and effect without
any amendment or modification thereto (except for the deletion
of that portion of the Demised Premises so taken).

Section 8.3. <u>Prosecution of Claims for and Apportionment of Condemnation Awards.</u>

In any condemnation proceedings whereby all or part of the Demised Premises is taken, the entire award shall be and become the sole property of Lessee, and Lessor shall not have any right to make any claim whatsoever against the condemning authority for any amount of damages or award as to the Demised Premises. Lessor hereby expressly waives and relinquishes any right to claim or share in any award for the taking of all or any part of the Demised Premises, and hereby assigns all of their right, title and interest in any such award to Lessee.

## ARTICLE IX

## ASSIGNMENT, SUBLETTING AND LEASEHOLD MORTGAGING

Section 9.1. <u>Assignment and Subletting</u>.

Lessee shall not assign this Lease or sublet the Demised Premises, in whole or in part, except to the extent that such assignment or subletting or other transfer or conveyance of the Sears Tract is expressly permitted under the terms of the Sears REA, and the terms, provisions, conditions and restrictions contained in Article 28 of the Sears REA, regarding assignment, are incorporated herein by this reference and hereby made expressly applicable to this Lease and Lessee's leasehold estate in the Demised Premises.

Section 9.2. <u>Leasehold Mortgaging</u>.

Subject to the terms, provisions, covenants, conditions and restrictions contained in the REA, Lessee shall have the right to mortgage its interest in this Lease under a leasehold mortgage or mortgages, and to assign its interest in this Lease as collateral security for such mortgage or mortgages to an "Institutional Lender" (herein defined as an insurance company, bank, trust company, savings and loan association, Real Estate Investment Trust as defined in Section 856 of the Internal Revenue Code of 1954 as amended, educational or charitable institution, union, pension, profit sharing or retirement fund and any other public or private lending institution empowered to make loans on real estate subject to regulation, however, by state or federal law) or to the Lessee if made in connection with a purchase money leasehold mortgage arising out of a sale or assignment of the Lessee's interest under this Lease, upon condition that all rights acquired under such mortgage shall be subject to each and all of the covenants, conditions, and restrictions set forth in this Lease and to all rights and interests of Lessor under this Lease, none of which covenants, conditions, restrictions, rights or interests is or shall be waived by the Lessor by reason of the right given Lessee to mortgage its interest in this Lease. If Lessee or Lessee's successors or assigns shall mortgage this leasehold in accordance with the foregoing provisions and if the holder thereof shall, within ten (10) days of its execution send to Lessor a true copy thereof together with written notice specifying the name and address of the mortgagee and the pertinent recording data with respect to such mortgage, Lessor agrees that so long as any such leasehold mortgage shall remain unsatisfied of record or until written notice of satisfaction is given by the holder to Lessor, the following provisions shall apply:

-10-

(i)  There shall be no cancellation, surrender,
     or modification of this Lease by joint
     action of Lessor and Lessee without the
     prior consent in writing of the leasehold
     mortgagee;

(ii) Lessor shall, upon serving the Lessee with
     any notice of default at or about the same time
     serve a copy of such notice upon the holder of
     such leasehold mortgage specifying the nature
     and/or amount of the default.  The leasehold
     mortgagee shall thereupon have the same period,
     after service of such notice upon it, to remedy or
     cause to be remedied the defaults complained of,
     and Lessor shall accept such performance by or at
     the instigation of such leasehold mortgagee as if
     the same had been done by Lessee;

(iii)   Anything herein contained notwithstanding,
     while such leasehold mortgage remains unsatisfied
     of record, or until written notice of satisfaction
     is given by the holder to the Lessor, if an event
     or events of default shall occur which under any
     provision of this Lease shall entitle Lessor to
     terminate this Lease, and if before the expiration
     of thirty (30) days from the date of service of
     notice of termination such leasehold mortgagee
     shall have notified the Lessor of its desire to
     nullify such notice and shall have paid to Lessor
     all rent and other payments herein provided for
     and then in default, and discharge all other obli-
     gations of Lessor hereunder theretofore accrued,
     and except as set forth in subparagraph (vii)
     hereof shall have complied or shall engage in the
     work of complying with all of the other require-
     ments of this Lease, if any are then in default
     and shall prosecute the same to completion with
     all due diligence, then in such event Lessor shall
     not be entitled to terminate this Lease and any
     notice of termination theretofore given shall be
     null and void and of no effect;

(iv) If the Lessor shall elect to terminate this
     Lease by reason of any default of the Lessee, the
     leasehold mortgagee shall not only have the right
     to nullify any notice of termination by curing
     such default, as aforesaid, but shall also have
     the right to postpone and extend the specified
     date for the termination of this Lease as fixed by
     the Lessor in its notice of termination, for a
     period of not more than ninety (90) days, _provided_
     that such Leasehold Mortgagee shall cure or cause
     to be cured any then existing money defaults and
     meanwhile pay the rent and comply with and perform
     or be engaged in complying with or performing all
     of the other terms, condition and provisions of
     this Lease on the Lessee's part to be complied
     with and performed, and provided _further_ that the
     leasehold mortgagee shall forthwith take steps to
     acquire or sell the Lessee's interest in this
     Lease by foreclosure of the mortgage or otherwise
     and shall prosecute the same to completion with
     all due diligence.  If at the end of said ninety
     (90) day period the leasehold mortgagee shall be
     actively engaged in steps to acquire or sell the
     Lessee's interest herein, the time of said mort-
     gagee to comply with the provisions of this Article

-11-

shall be extended for such period as shall be
reasonably necessary to complete such steps with
due diligence and continuity provided that during
any such extensions no further default by the
Lessee or leasehold mortgagee shall be permitted
to continue hereunder;

(v)  Lessor agrees that the name of the leasehold
mortgagee may be added to the "Loss Payable
Endorsement" of any and all insurance policies
carried by the Lessee;

(vi) Lessor agrees that in the event of termina-
tion of this Lease by reason of any default by
Lessee or upon any termination of this Lease
pursuant to any rights granted to Lessee under the
provisions of this Lease, Lessor will enter into a
new lease of the Demised Premises with the holder
of the first mortgage on this Lease or its nomi-
nee, for the remainder of the term effective as of
the date of such termination, at the rent and
additional rent and upon the terms, provisions,
covenants and agreements as herein contained and
subject only to the same conditions of title as
this Lease is subject on the date of the execution
hereof, and to the rights, if any, of any parties
then in possession of any part of the Demised
Premises, provided:

   (A)  Said mortgagee shall make written
   request upon the Lessors for such new
   lease within thirty (30) days after the
   date of such termination and such written
   request is accompanied by payment to the
   Lessor of sums then due to the Lessor
   under this Lease;

   (B)  Said mortgagee shall pay to the
   Lessor at the time of the execution and
   delivery of said new lease any and all
   sums which would at the time of the
   execution and delivery thereof be due under
   this Lease but for such termination, and
   in addition thereto any expenses including
   legal and attorneys' fees to which the Lessor
   shall have been subjected by reason of such
   default;

   (C)  The Lessee under the new lease shall
   perform and observe all covenants herein
   contained on the Lessee's part to be
   performed and shall further remedy any
   other conditions which the prior Lessee was
   obligated to perform under the terms of
   this Lease; and upon execution and delivery
   of such new lease, any subleases which may
   have theretofore been assigned and transferred
   by the Lessee to the Lessor as security under
   this Lease, shall thereupon be deemed to be
   held by the Lessor as security for the
   performance of all of the obligations of the
   Lessee under the new lease; and

(vii) Nothing herein contained shall require the
leasehold mortgagee or its nominee to cure any
default of the Lessee arising out of its bank-
ruptcy, insolvency, reorganization or other Pro-

-12-

ceeding under the Bankruptcy or Insolvency Laws
of the United States or of the several states
or arising out of its abandonment of the
Demised Premises.

Any mortgage on Lessee's leasehold estate hereunder shall be a
lien only upon such leasehold estate and shall not be a lien
upon Dillpaso's fee simple title to the Demised Premises or
upon Dillard's leasehold estate under the Underlying Lease or
upon Lessor's leasehold estate under the Underlying Sublease.

## ARTICLE X

### REPAIRS, ALTERATIONS AND RESTORATIONS

The parties hereto have agreed upon their respective obliga-
tions in connection with repairs, alterations and restorations of
Improvements on the Sears Tract and Developer Tract, as provided
and set forth in the Sears REA and REA Tie-In Agreement, and such
terms are incorporated herein by this reference thereto and made
a part hereof to the extent applicable.

## ARTICLE XI

### INSURANCE

The parties hereto have agreed upon all insurance require-
ments and obligations respecting the Sears Tract and the Developer
Tract (including, without limitation, waiver of subrogation), and
the same are set forth in the Sears REA and REA Tie-In Agreement
and incorporated herein by this reference thereto and made a part
hereof to the extent applicable to the Demised Premises.

## ARTICLE XII

### SURRENDER OF AND HOLDING OVER OF DEMISED PREMISES

#### Section 12.1.   Surrender of Demised Premises and Lessee's Improvements.

This Lease and the tenancy hereby created shall terminate
at the end of the Term hereof, as extended, if extended (unless
sooner terminated as herein provided), without the necessity of
notice by either party to the other, and Lessee shall vacate and
surrender the Demised Premises to Lessor on the last day of such
Term.

#### Section 12.2.   Holding Over.

In the event that Lessee shall hold the Demised Premises
after termination of this Lease, as described in Section 12.1,
with the consent of Lessor, express or implied, such holding
over shall, in the absence of written agreement on the subject,
be deemed to have created a tenancy from month to month termi-
nable on thirty (30) days' written notice by either Lessee or
Lessor to the other, upon the same rental as was last in effect
pursuant to Article IV of this Lease (calculated and payable on
a monthly basis) and otherwise subject to all of the terms and
provisions of this Lease.

#### Section 12.3.   Removal of "Personal Property".

At any time during the Term of this Lease, and upon the
termination of this Lease, Lessee shall have the right to
remove from the Demised Premises all inventory, furniture,
furnishings, signs, trade fixtures, shelving, counters, wall
cases, store fixtures and equipment and any personal property
and Service Equipment then installed or in place in, on or
about the Demised Premises, whether or not affixed thereto,

-13-

which may be owned or have been installed by Lessee or anyone claiming by, through or under Lessee. If this Lease shall terminate at any time other than the time herein fixed as the expiration of the Term upon lapse of time, Lessee shall have thirty (30) days thereafter to effect the removal of the foregoing items. In addition to the foregoing provisions, any sublessee, licensee, concessionaire or other person claiming by, through or under Lessee shall have the right to remove from the Demised Premises any and all of their personal property and trade fixtures. Any of the aforementioned removable items which are not removed from the Demised Premises in accordance with the foregoing provisions within thirty (30) days of said termination shall be deemed to have been abandoned and to have become the property of Lessor. In no event shall the leaving of any property on the Demised Premises after the termination or expiration of the Term of this Lease, or of a tenancy from month to month, make Lessee liable for storage charges or rent or constitute a hold-over tenancy.

## ARTICLE XIII

### DEFAULT BY LESSEE

Section 13.1.   Events of Default; Lessor's Right to Re-Enter.

The following shall be considered for all purposes to be events of default by Lessee under this Lease:

(a)   any failure of Lessee to pay any rent or other amount when due hereunder or under the Sears REA, which failure continues for a period of fifteen (15) days after written notice is given by Lessor to Lessee;

(b)   if Lessee shall do anything upon or in connection with the Demised Premises or the construction of any part thereof which directly or indirectly interferes in any way with, or results in a work stoppage in connection with, construction of any part of the Shopping Center or any other Occupant's space, which condition is not corrected by Lessee so that work is resumed as soon as reasonably possible (not to exceed five (5) working days, subject to Force Majeure);

(c)   if Lessee shall become bankrupt or insolvent or file or have filed against it a petition in bankruptcy or for reorganization or arrangement or for the appointment of a receiver or trustee of all or a portion of Lessee's property and any such petition against Lessee shall not be dismissed within thirty (30) days after the filing thereof, or Lessee makes an assignment for the benefit of creditors;

(d)   if Lessee fails to open its Building for business with the public as and when required under Paragraph 2.09 of the Sears REA and such failure continues for a period of sixty (60) days after written notice thereof is given by Lessor to Lessee;

(e)   if Lessee abandons or vacates the Demised Premises or if, at any time prior to the expiration of the Sears Operating Period

-14-

(as defined in the Sears REA), Lessee
defaults in the performance and observance
of its operating covenants as set forth in
Paragraph 23.1 of the Sears REA and such
default remains uncured for a period of
sixty (60) days after written notice thereof
is given by Lessor to Lessee;

(f)  if this Lease or Lessee's interest herein or
in the Demised Premises or any Improvements
thereon are levied upon or attached by any
person, entity or officer, and such levy or
attachment is not vacated within thirty (30)
days from the date it takes effect; or if
this Lease or Lessee's interest herein or in
the Demised Premises is foreclosed upon by
the holder of any mortgage or deed of trust
on Lessee's subleasehold estate hereunder;

(g)  if the Demised Premises come into the possession
of any person, entity or custodian other than
expressly permitted under this Lease and the
Sears REA;

(h)  if Lessee fails to commence (pour Building
footings and foundations) and diligently carry
forward to completion, without interruption,
the construction required to be done by Lessee
pursuant to the Sears REA, on or before the
commencement date and completion date,
respectively, as provided under Paragraph 2.01
of the Sears REA, and such failure continues for
a period of sixty (60) days after written notice
thereof is given by Lessor to Lessee; or

(i)  if Lessee fails to perform and observe any other
terms, provisions, conditions and covenants of
this Lease or of the Sears REA and such failure
continues for more than thirty (30) days after
written notice thereof is given by Lessor to
Lessee, or, if such default is of a nature that
it cannot reasonably be cured within thirty (30)
days, if Lessee fails to commence to cure such
default within thirty (30) days after written
notice thereof is given by Lessor to Lessee or
Lessee thereafter fails to proceed diligently
to complete the curing of such default as
promptly as possible; or if there shall be an
"event of default" existing under any mortgage
or deed of trust encumbering Lessee's subleasehold
estate hereunder, as that term is defined in such
mortgage or deed of trust, even though such
default may be cured by Lessor pursuant to a
right to do so granted to Lessor under any such
mortgage or deed of trust.

In any such event, and without further grace period, demand or
notice (the same being hereby waived by Lessee), Lessor, in
addition to all other rights or remedies it may have, shall
have the right thereupon or at any time thereafter to terminate
this Lease by giving written notice to Lessee stating the date
upon which such termination shall be effective, and shall have
the right, either before or after any such termination, to
re-enter and take possession of the Demised Premises, remove all
persons and property from the Demised Premises and store such
property at Lessee's expense, all without notice or resort to
legal process and without being deemed guilty of trespass or
becoming liable for any loss or damage occasioned thereby.
Notwithstanding anything to the contrary herein contained, if
Lessee commits any default hereunder for or precedent to which
or with respect to which notice is herein required, and commits

-15-

the same or any other defaults within twelve (12) months thereafter, no notice shall thereafter be required to be given by Lessor as to or precedent to any such subsequent default during such twelve (12) month period (the same being hereby waived by Lessee) before exercising any or all remedies available to Lessor.

In the event of any conflict between different grace or notice periods contained in this Lease, or between grace or notice periods contained in this Lease and those contained in the Sears REA or if a reasonable construction would indicate that two (2) or more different grace or notice periods may apply to a particular event of default by Lessee under this Lease or under the Sears REA, the grace or notice period of longest duration shall apply.

Section 13.2.    Right to Relet.

If Lessor re-enters as above provided, or if it takes possession pursuant to legal proceedings or otherwise, it may either terminate this Lease or it may, from time to time, without terminating this Lease, make such alterations and repairs as it deems reasonably necessary to relet the Demised Premises, and relet the Demised Premises or any part thereof for such term or terms (which may extend beyond the Term hereof) and at such rentals and upon such other terms and conditions as Lessor in its reasonable judgment deems advisable; upon each such re-letting all rentals received by Lessor therefrom shall be applied first, to any indebtedness other than rent due hereunder from Lessee to Lessor; second, to pay any costs and expenses of reletting, including brokers and attorneys' fees and costs of alterations and repairs; third, to rent due hereunder, and the residue, if any, shall be held by Lessor and applied in payment of future rent as it becomes due hereunder.

If rent received from such reletting during any period is less than that to be paid during that period by Lessee hereunder, Lessee shall immediately pay any such deficiency to Lessor.  No re-entry or taking possession of the Demised Premises by Lessor shall be construed as an election to terminate this Lease unless a written notice of such termination is given by Lessor.

Notwithstanding any such reletting without termination, Lessor may at any time thereafter terminate this Lease for any prior breach or default.  If Lessor terminates this Lease for any breach or default, in addition to any other remedies it may have, Lessor may recover from Lessee all damages incurred by reason of such breach or default, including, without limitation, all costs of retaking the Demised Premises and including the excess, if any, of the total rent and charges reserved in this Lease for the remainder of the Term over the then reasonable rental value of the Demised Premises for the remainder of the Term, and all loss and damage resulting from Lessee's failure to perform and observe its operating covenant hereunder and under the Sears REA, all of which shall be immediately due and payable by Lessee to Lessor.  Notwith-standing anything to the contrary contained herein or in the Sears REA, it is understood and agreed that no such reletting or termination of this Lease shall release or relieve Lessee from its covenants and obligations under the Sears REA, and Lessee shall be and remain liable for any breach or default under the Sears REA; but Lessor, its successors and assigns, shall not have any liability or responsibility whatsoever for the performance or observance of any of Lessee's covenants and obligations respecting the Demised Premises under the Sears REA after any such reletting or termination of this Lease.

-16-

Section 13.3.    Waiver of Rights of Redemption.

To the extent permitted by law, Lessee waives any and all rights of redemption granted by or under any present or future laws if Lessee is evicted or dispossessed for any cause, or if Lessor obtains possession of the Demised Premises due to Lessee's default hereunder or otherwise.

## ARTICLE XIV

### LESSOR'S OPTION TO ACQUIRE LESSEE'S LEASEHOLD ESTATE

Section 14.1.    Option to Acquire Leasehold Estate.

Notwithstanding anything to the contrary contained herein, if, at any time during the Term of this Lease or any extension or renewal thereof, Lessor, as Developer under the REA, elects to purchase the Lessee's leasehold estates in the Sears Tract and all Improvements thereon under the terms of Paragraph 23.4 of the REA, such purchase shall include Lessee's leasehold estate in the Demised Premises under this Lease, and Lessor, upon the exercise of the option contained in Paragraph 23.4 of the REA, shall have the right and obligation to acquire Lessee's leasehold estate in the Demised Premises by way of such purchase in conjunction with Lessor's purchase of Lessee's leasehold estate under the City Lease as provided in Paragraph 23.4 of the REA, and the terms and provisions of Paragraph 23.4 of the REA are incorporated herein by this reference.  Lessor's right to cancel and terminate this Lease upon a default by Lessee as provided in Article XIII hereof shall be superseded by Lessor's obligation to purchase Lessee's leasehold estate in the Demised Premises and Improvements thereon if Lessor, as Developer under the REA, exercises its right and option to purchase Lessee's leasehold estates in the Sears Tract under Paragraph 23.4 of the REA.

Section 14.2.    Payment to Lessee.

If Lessor, as Developer under the REA, elects to exercise its right and option to acquire Lessee's leasehold estate in the Demised Premises as herein provided under Section 14.1 hereof, the purchase price thereof shall be determined in accordance with the terms and provisions of Paragraph 23.4 of the REA, which terms and provisions are incorporated herein by this reference.

Section 14.3.    Other Rights and Remedies of Lessor.

Notwithstanding anything to the contrary contained herein, Lessor shall have all other rights and remedies available at law and in equity to enforce the terms, covenants and provisions of this Lease and the Sears REA against Lessee, all of which rights and remedies are hereby expressly reserved by Lessor, and the right and option of Lessor to acquire Lessee's leasehold estate in the Demised Premises and the Improvements thereon shall be in addition to, and not in lieu of, all other rights and remedies of Lessor against Lessee hereunder and under the REA and Supplemental Agreement.

## ARTICLE XV

### NOTICES

Section 15.1.    Form and Delivery of Notice.

Any notice, demand, request, consent, approval or other communication, which either party hereto is required, or desires, to give or make or communicate to the other, shall be in writing and shall be given, or made or communicated by

prepaid United States registered or certified mail (unless otherwise acknowledged in writing by the addressee), addressed, in the case of Lessor, to:

> Celina Development Company
> 1712 North Meridian Street
> Indianapolis, Indiana 46202

and addressed, in the case of Lessee, to:

> Sears, Roebuck and Co.
> 900 South Fremont Avenue
> Alahambra, California 91802

subject to the right of each party to designate a different address by notice similarly given.

### Section 15.2.    Notice Effective When Mailed.

Any such notice, demand, request, consent, approval or other communication so made and given by mail shall be deemed to have been given, made or communicated on the date mailed by the party giving such notice.

### ARTICLE XVI

### MISCELLANEOUS

### Section 16.1.    Memorandum of Lease.

Neither Lessor nor Lessee shall record this Lease unless it first secures the consent of the other.  However, Lessor and Lessee shall contemporaneously with the execution of this Lease execute and acknowledge a Memorandum of this Lease for recordation.

### Section 16.2.    Exhibits.

Each reference herein to an Exhibit refers to the applicable Exhibit that is attached to this Lease.  All such Exhibits constitute a part of this Lease and by this Section are expressly made a part hereof.

### Section 16.3.    References to Articles and Sections.

All references herein to a given Article or a given Section refer to the applicable Article or Section of this Lease unless otherwise indicated.

### Section 16.4.    Table of Contents and Captions.

The table of contents and captions of this Lease are inserted only as a matter of convenience and for reference. They do not define, limit or describe the scope or intent of this Lease and they shall not affect the interpretation hereof.

### Section 16.5.    Locative Adverbs.

The locative adverbs "herein", "hereunder", "hereto", "hereby", "hereinafter", etc., whereever the same appear herein, mean and refer to this Lease in its entirety and not to any specific Article, Section or subsection hereof, unless the context otherwise requires.

Section 16.6.   Lease for Exclusive Benefit of Parties.

The provisions of this Lease are for the exclusive benefit of the Parties, their successors, successors in interest and assigns, and not for the benefit of any third person.  This Lease shall not be deemed to have conferred any rights upon any third person and there shall be no third party beneficiaries hereof.

Section 16.7.   No Partnership, Joint Venture or Principal-Agent Relationship.

Neither anything in this Lease nor any acts of the parties shall be deemed by the parties, or by any third person, to create the relationship of principal and agent, or of partnership, or of joint venture, or of any association between the parties other than the relationship of landlord and tenant, and no provisions of this Lease are intended to create or constitute any person a third party beneficiary hereof.

Section 16.8.   Successors and Assigns.

This Lease shall be binding upon and inure to the benefit of the respective heirs, administrators, executors, transferees, successors, successors in interest and assigns of Lessor and Lessee.

Section 16.9.   Severability.

Any provision or provisions of this Lease which shall be to any extent in violation of any law or ordinance, or which shall prove to be to any extent, invalid, unenforceable, void or illegal, shall in no way affect, impair or invalidate any other provision hereof, and the remaining provisions hereof shall nevertheless remain in full force and effect and shall be valid and enforceable to the fullest extent permitted by law.

Section 16.10.   Texas Law Governs.

This Lease and the rights and duties of the parties hereunder shall be governed by the laws of the State of Texas.

Section 16.11.   Covenants to Run with the Land.

Unless the context indicates otherwise, each covenant, warranty, agreement, promise or duty of either Lessor, or Lessee as set forth herein shall be construed as a covenant and not as a condition.  These covenants, warranties, agreements, promises and duties shall, to the fullest extent legally possible, either run with the land or constitute equitable servitudes and they shall be appurtenant to the land to which they pertain and shall be deemed to run to and for the joint and severable benefit of the other party.

Section 16.12.   Other Remedies.

The rights and remedies given to a party by this Lease shall be deemed to be cumulative and none of such rights and remedies shall be exclusive of any of the others, or of any other right or remedy at law or in equity which a party might otherwise have, and the exercise of one such right or remedy by a party shall not impair such party's standing to exercise any other right or remedy.

Section 16.13.   Time is of the Essence.

Time is of the essence with respect to the performance of each of the covenants and agreements under this Lease.

Section 16.14.    Entire Agreement; Amendments and
                  Modifications in Writing.

This Lease contains the entire agreement between the
parties with regard to the Demised Premises, and there are
no other terms, obligations, covenants, representations,
statements or conditions, oral or otherwise, of any kind
whatsoever.  This Lease may be amended or otherwise modified
only by a writing signed by the parties hereto and any
agreement hereafter made shall be ineffective to change,
modify, discharge or effect an abandonment of this Lease, in
whole or in part, unless such agreement is in writing and
signed by the party against whom such discharge or abandonment
is sought.

Section 16.15.    Counterparts.

This Lease may be signed in several counterparts, each
of which shall be deemed an original, and all such counter-
parts shall constitute one and the same instrument.

Section 16.16.    Broker's Fees.

Each party hereto represents to the other that it has
conducted no negotiations with any broker in connection with
the signing and delivery of this Lease.  Each party cove-
nants to indemnify and hold the other harmless from all
claims, damages, costs, expenses and liabilities (resulting
from the act or omission of the covenanting party) for any
brokers' or similar fee in connection with the negotiation,
signing and delivery of this Lease.

Section 16.17.    Force Majeure.

Each party shall be excused from performing any obligation
provided under this Lease (except the obligation to pay any
sum of money) in the event, or as long as, the performance
of any such obligation is prevented or delayed, retarded or
hindered by Acts of God, fire, earthquake, floods, explosion,
actions of the elements, war, declared or undeclared (including
"police action"), invasion, insurrection, riot, mob violence,
sabotage, inability to procure labor, equipment, facilities,
materials or strikes, lockouts, actions of labor unions,
condemnation, requisition laws, orders of government or civil
or military authorities, or any other cause, whether similar
or dissimilar to the foregoing, not within the reasonable
control of such party (excluding a party's inability to obtain
required financing).  In no event, however, shall any party
be excused from performance hereunder for a period of more than
one (1) year; provided, however, that the party seeking to
be excused hereunder shall give the other party notice within
thirty (30) days of the event upon which the excuse from performance
is based.

IN WITNESS WHEREOF, Lessor and Lessee have each caused
their duly authorized officers to sign and seal this Lease as
of the day and year first above written.

CELINA DEVELOPMENT COMPANY,
a Texas limited partnership

By_____

"Lessor"

SEARS, ROEBUCK AND CO.,
a New York corporation

By_____

Attest:

_____

"Lessee"

STATE OF INDIANA     )
                     ) SS:
COUNTY OF MARION     )

    On this the _21ˢᵗ_ day of _January_ , 198_1_ , before
me, a Notary Public duly authorized in and for the said
County in the State aforesaid to take acknowledgements,
personally appeared _Herbert Simon_ , to me known
and known to me to be a General Partner in CELINA DEVELOPMENT
COMPANY, a Texas limited partnership, and acknowledged to me
that he executed said instrument for the purposes and con-
sideration therein expressed, and as the act of said limited
partnership.

    IN WITNESS WHEREOF, I hereunto set my hand and official
seal.

                             JO ANN OWEN Public

My Commission expires:             Notary Public
                                State of Indiana
                      My Commission Expires: 9-5-8?
                      County of Residence: Marion

My County of residence:

STATE OF California     )
                        ) SS:
COUNTY OF Los Angeles   )

    On this the _30_ day of _March_ , 198_1_ , before
me, a Notary Public duly authorized in and for the said
County in the State aforesaid to take acknowledgements,
personally appeared _J.E. Duggan_ , to me known
and known to me to be the _Facilities Planning Manager_ of SEARS,
ROEBUCK AND CO., a New York corporation, and acknowledged
that as such officer, being authorized so to do, he
executed the foregoing instrument on behalf of said corporation
by subscribing the name of said corporation by himself as such
officer and caused the corporate seal of said corporation to be
affixed thereto, as his free and voluntary act, and as the free
and voluntary act of said corporation, for the uses and purposes
therein set forth.

    IN WITNESS WHEREOF, I hereunto set my hand and official
seal.

                             Notary Public

My Commission expires:             OFFICIAL SEAL
                             R. J. KAUTZI
                        NOTARY PUBLIC — CALIFORNIA
     _10-8-83_           PRINCIPAL OFFICE IN
                        LOS ANGELES COUNTY
                     My Commission Expires Oct. 8, 1983

-21-

PROPERTY DESCRIPTION
DILLARD PARCEL

Description of a parcel of land being a portion of Block 3, Colina Plaza,
El Paso County, Texas and being more particularly described by metes and
bounds as follows to wit:

Beginning at a point, said point being the northeasterly corner of Block
8, City of El Paso Retention Basin Site, and lying on the southerly boun-
dary line of block 1, Colina Plaza;

Thence South 61° 38' 34" East along said southerly boundary line
a distance of 330.98 feet;

Thence South 65° 29' 22" East continuing along said boundary line
a distance of 263.77 feet;

Thence South 46° 53' 12" East continuing along said boundary line
a distance of 505.48 feet;

Thence South 57° 58' 38" East continuing along said boundary line
a distance of 350.00 feet to a point, said point being the southeasterly
corner of Block 1, Colina Plaza, said point also lying in the westerly
right-of-way line of Hawkins Boulevard;

Thence 28.71 feet along said westerly right-of-way line at Hawkins
Boulevard, said line being common with the easterly boundary line of Colina
Plaza and along the arc of a curve to the left whose interior angle is
0° 31' 17", whose radius is 3,195.30 feet and whose chord bears South 31°
45' 44" West, a distance of 28.71 feet to a point, said point lying in the
northerly boundary line Block 6, Colina Plaza, (City of El Paso Public Service
Board Wall Site);

Thence North 61° 40' 41" West along the northerly boundary line of
Block 6 a distance of 264.86 feet to a point, said point being the north-
westerly corner of said block;

Thence South 26° 19' 19" West along the Westerly boundary line of
said Block 6 a distance of 130.00 feet;

Thence North 61° 38' 34" West a distance of 471.42 feet;

Thence South 28° 21' 26" West a distance of 245.12 feet;

Thence North 61° 38' 34" West a distance of 101.00 feet;

Thence South 26° 21' 26" West a distance of 51.50 feet;

Thence North 61° 38' 34" West a distance of 321.58 feet;

Thence North 28° 21' 26" East a distance of 60.00 feet;

Thence North 61° 38' 34" West a distance of 190.00 feet;

Thence South 26° 21' 26" West a distance of 100.00 feet;

Thence North 61° 38' 34" West a distance of 209.42 feet;

Thence North 28° 21' 26" East a distance of 20.00 feet;

Thence North 61° 38' 34" West a distance of 120.51 feet;

Thence North 28° 21' 26" East a distance of 150.00 feet to a point,
said point lying in the southerly boundary line of Block 8, Colina Plaza,
(City of El Paso Retention Basin Site);

EXHIBIT "A"
Page 1 of 2

Thence South 61° 38' 34" East, a distance of 273.00 feet along said southerly boundary line to a point, said point being the southeasterly corner of said Block 8;

Thence North 28° 21' 26" East along said easterly boundary line of Block 8 (City of El Paso Retention Basin Site), a distance of 553.00 feet to the POINT OF BEGINNING and containing in all 584,244.17 square feet or 13.4125 acres of land more or less.

April 24, 1973

Crosley Roe, P.E. /
CREMANS, INC.

PREPARED FOR:  Melvin Simon and Associates
Portion of Block 3, Celina Plaza
El Paso County, Texas

## PROPERTY DESCRIPTION

Description of a parcel of land being a portion of Block 3, Celina Plaza,
El Paso County, Texas and being more particularly described by metes and
bounds as follows:

From a point, said point being the southwest corner of Celina Plaza and said
point lying on the northerly right-of-way line of U.S. Interstate Highway No.
10; thence South 61° 38' 34" East a distance of 1,250.00 feet; thence North
28° 21' 26" East a distance of 959.98 feet to the northwest corner of Block 3;
thence South 61° 38' 34" East a distance of 740.00 feet along the northerly
boundary line of Block 3 to the POINT OF BEGINNING;

Thence South 61° 38' 34" East along said northerly
boundary line a distance of 278.00 feet to the southeast
corner of Block 8, Celina Plaza;

Thence North 28° 21' 26" East along the easterly boundary
line of Block 8 a distance of 500.35 feet;

Thence South 61° 38' 34" East a distance of 367.98 feet;

Thence South 28° 21' 26" West a distance of 409.00 feet;

Thence North 61° 38' 34" West a distance of 126.05 feet;

Thence South 28° 21' 26" West a distance of 161.35 feet;

Thence North 61° 38' 34" West a distance of 190.00 feet;

Thence South 28° 21' 26" West a distance of 100.00 feet;

Thence North 61° 38' 34" West a distance of 209.42 feet;

Thence North 28° 21' 26" East a distance of 20.00 feet;

Thence North 61° 38' 34" West a distance of 120.51 feet;

Thence North 28° 21' 26" East a distance of 150.00 feet to the
POINT OF BEGINNING and containing in all 5.500 acres of land more or less.


Ramon E. Lara, P.E.
CREHAUS, INC.


December 1, 1980

EXHIBIT "B"
Page 1 of 1

PREPARED FOR:  Melvin Simon and Associates
               Cielo Vista Mall Shopping Center
               El Paso, Texas


Dillard's Tract To Sears - NEW PARCEL B-1

PROPERTY DESCRIPTION

Description of a parcel of land being a Portion of Block 3, Celina Plaza,
El Paso County, Texas and being more particularly described by metes
and bounds as follows:

From a point, said point being the southwest corner of Celina Plaza and
said point lying in the northerly right-of-way line of U.S. Interstate Highway
No. 10; thence South 61° 38' 34" East along the northerly right-of-way line
of U.S. Interstate No. 10 a distance of 1250.00 feet; thence North 28° 21' 26"
East a distance of 959.98 feet; thence South 61° 38' 34" East a distance of
1018.00 feet; thence North 28° 21' 26" East a distance of 91.35 feet to THE
POINT OF BEGINNING;

    Thence North 28° 21' 26" East a distance of 409.00 feet;

    Thence South 61° 38' 34" East a distance of 199.30 feet;

    Thence South 28° 21' 26" West a distance of 409.00 feet;

    Thence North 61° 38' 34" West a distance of 199.30 feet to THE POINT
OF BEGINNING and containing 81,513.70 square feet or 1.871 acres of land
more or less.


_Donald T. Cremans_

Donald T. Cremans, P.E.
CREMANS, INC.


December 21, 1979

The reciprocal and non-exclusive easements created, defined and limited by that certain Reciprocal Easement and Operating Agreement, dated as of February 1, 1973, recorded in Book 433, Page 894, in the office of the County Clerk, El Paso County, Texas, as amended by Amendment to Reciprocal Easement and Operating Agreement, dated May 15, 1973, recorded in Book 465, Page 391, in said office, further amended by Amendment to Reciprocal Easement and Operating Agreement, dated as of May 23, 1974, recorded in Book 559, Page 1269, in said office, and further amended by Third Amendment to Reciprocal Easement and Operating Agreement, dated as of October 29, 1974, recorded in Volume 559, Page 1276 in said office, by and among Celina Development Company, Construction Developers, Incorporated, and Dillard Department Stores, Inc., in, over, upon, and under that property described as the "Shopping Center" in said Reciprocal Easement and Operating Agreement, as amended; together with the reciprocal and non-exclusive easements created, defined, and limited by that certain Reciprocal Easement Agreement, dated as of July 18, 1973, recorded in Book 465, Page 497, in the Office of the County Clerk, El Paso County, Texas, amended by Amendment, dated September 3, 1974, recorded in Book 557, Page 829, in said office, and further amended by Amendment to REA Agreement, dated as of August 30, 1978, recorded in Book 940, Page 2052, in said office, by and among Celina Development Company, Amfac Merchandising Corporation, Allied Stores of Texas, Inc. (and with Barnfac El Paso Properties consenting in the execution of said Agreements, as fee owner of the tract of land described in said Agreement as the "Rhodes Site") in, over, upon, and under that property described as the "Shopping Center" in said Reciprocal Easement and Operating Agreement, as amended, together with the reciprocal and non-exclusive easements created, defined, and limited by that certain Reciprocal Easement and Operating Agreement, dated as of July 18, 1973, recorded in Book 465, Page 416, in the office of the County Clerk, El Paso County, Texas, as amended by Amendment, dated January 7, 1974, recorded in Book 557, Page 821, in said Office, and further amended by Second Amendment, dated September 25, 1974, recorded in Book 557, Page 825 in said Office, by and among Celina Development Company and Montgomery Ward & Co., Incorporated, in, over, upon, and under that property described as the "Shopping Center" in said Reciprocal Easement and Operating Agreement, as amended; provided, however, that all of said reciprocal and non-exclusive easements created, defined and limited by the aforementioned Reciprocal Easement and Operating Agreements, as amended, are supplemented and amended by that certain Agreement, dated as of July 18, 1973, recorded in Book 465, Page 573, in the office of the County Clerk, El Paso County, Texas, amended by Amendment, dated September 3, 1974, recorded in Book 558, Page 342, in said Office, and further amended by Amendment to Agreement, dated as of August 30, 1978, recorded in Book 940, Page 2064, in said Office, by and among all of the aforesaid parties; together with the reciprocal and non-exclusive easements created, defined and limited by that certain Construction, Operation and Reciprocal Easement Agreement, dated as of _____, 1980, recorded in Book _____, Page _____, in the Office of the County Clerk, El Paso County, Texas, by and among Celina Development Company and Sears, Roebuck & Co., in, over, upon, and under that property described as the "Shopping Center Tract" in said Construction, Operation and Reciprocal Easement Agreement; provided, however, that all of said reciprocal and non-exclusive easements created, defined, and limited by the aforementioned Agreements are supplemented and amended by that certain Supplement and Third Amendment to Agreement and Amendment to Reciprocal Easement and Operating Agreements, dated as of _____, 1980, recorded in Book _____, Page _____, in said Office, by and among all of the aforesaid parties and Dillpaso Properties Corp.

EXHIBIT "D"
Page 1 of 1

PERMITTED EXCEPTIONS

1. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments, or any overlapping of improvements.

2. Taxes for the year 1980 and subsequent years, and subsequent assessments for prior years due to change in land usage or ownership.

3. Restrictive covenants affecting the Demised Premises including those in Book 386, Page 539; Book 419, Page 303; and amended in Book 604, Page 1321, County Clerk's Records, El Paso County, Texas.

4. Memorandum of Lease dated 10/30/74, recorded in Book 560, Page 199, County Clerk's Records, El Paso County, Texas, DILLPASO PROPERTIES CORP. to DILLARD DEPARTMENT STORES, INC. with option to purchase.

5. Provisions, conditions and reservations reserved by the CITY OF EL PASO, in Deed dated 4/14/72, recorded in Book 386, Page 539, County Clerk's Records, El Paso County, Texas.

6. Terms and provisions of that certain Reciprocal Easement and Operating Agreement between CELINA DEVELOPMENT COMPANY and MONTGOMERY WARD & CO., INCORPORATED, dated July 18, 1973, recorded in Book 465, Page 416; amended in Book 557, Page 821; amended in Book 557, Page 825; and amended by consent to scrivener's error in Book 557, Page 812, County Clerk's Records, El Paso County, Texas.

7. Terms and provisions of that certain Reciprocal Easement and Operating Agreement by and between DILLARD DEPARTMENT STORES, INC., CONSTRUCTION DEVELOPERS, INCORPORATED, and CELINA DEVELOPMENT COMPANY dated February 1, 1973, recorded in Book 433, Page 894; amended in Book 465, Page 391; amended in Book 559, Page 1269; amended in Book 559, Page 1276; and amended by consent to scrivener's error in Book 557, Page 812, County Clerk's Records, El Paso County, Texas.

8. Terms and provisions of that certain Reciprocal Easement and Operating Agreement between CELINA DEVELOPMENT COMPANY and AMFAC MERCHANDISING CORPORATION dated July 18, 1973, recorded in Book 465, Page 497, County Clerk's Records, El Paso County, Texas, amended in Book 557, Page 829; amended by consent to scrivener's error in Book 557, Page 812; and amended in Book 940, Page 2052 (whereby ALLIED STORES OF TEXAS, INC., was recognized as the sublessee of AMFAC MERCHANDISING CORPORATION and was made a part of said agreement), County Clerk's Records, El Paso County, Texas.

9. All Reciprocal Easement and Operating Agreements are amended by that certain Agreement dated July 18, 1973, recorded in Book 465, Page 573, County Clerk's Records, El Paso County, Texas, between CELINA DEVELOPMENT COMPANY, MONTGOMERY WARD & CO., INCORPORATED, AMFAC MERCHANDISING CORPORATION, DILLARD DEPARTMENT STORES, INC. and CONSTRUCTION DEVELOPERS, INCORPORATED; amended in Book 558, Page 342; and amended by consent to scrivener's error in Book 557, Page 812; amended in Book 940, Page 2064 (whereby ALLIED STORES OF TEXAS, INC. was made a party); and amended and supplemented by that certain Supplement and Third Amendment to Agreement and Reciprocal Easement and Operating Agreement dated _____, 1980, recorded as Instrument No. _____, County Clerk's Records, El Paso County, Texas.

10. Easement dated March 1, 1974, recorded in Book 526, Page 361, County Clerk's Records, El Paso County, Texas, from CELINA DEVELOPMENT COMPANY, MONTGOMERY WARD & CO., INCORPORATED, DILLARD DEPARTMENT STORES, INC., CONSTRUCTION DEVELOPERS, INCORPORATED and AMFAC MERCHANDISING CORPORATION to THE CITY OF EL PASO for water and sewer lines.

11. Subject to the unrecorded easement shown on a survey prepared by CREMANS, INC., dated 9/29/80 to EL PASO ELECTRIC and SOUTHERN UNION GAS COMPANY.

12. Terms and provisions of that certain Construction Operation and Reciprocal Easement Agreement between CELINA DEVELOPMENT COMPANY and SEARS, ROEBUCK AND CO., dated _____, 1980, recorded as Instrument No. _____, County Clerk's Records, El Paso County, Texas.

EXHIBIT "E"
Page 1 of 2 pages

13. Indenture of Mortgage and Deed of Trust dated 7/25/74, recorded in
Book 560, Page 205, County Clerk's Records, El Paso County, Texas,
between DILLPASO PROPERTIES CORPORATION and PROVIDENT NATIONAL BANK,
as Trustee and JOSEPH FEDUNIUE, Individual Trustee, and which is a
series of notes limited to the aggregate principal amount of $4,400,000.00,
and which note is secured by a Financing Statement filed 11/18/74, under
file No. 09074, Financing Statement Records, El Paso County, Texas,
and which note is secured by an Assignment of Lease and Agreement
dated 7/25/74, recorded in Book 560, Page 286, County Clerk's Records,
El Paso County, Texas, to all of which and its record reference is
here made for full particulars.

14. Unrecorded mechanics liens, if any.

15. Any matter which a careful and accurate survey and inspection of the
premises would disclose, including without limitation the rights of
parties in possession.

16. Any matter which was created or suffered by acts, deeds, or omissions
of Lessee.

EXHIBIT "E"
Page 2 of 2 pages