Gerald P. Kennedy (Bar No. 105887)
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
*Attorney for Landlord/Creditor*
*MCS Hemet Valley Center LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | Chapter 11 |
| **SEARS HOLDING CORPORATION,** *et al.*,[1] | Case No. 18-23538 (RDD) |
| **Debtors** | (Joint Administration Requested) |

**MCS HEMET VALLEY CENTER LLC'S OBJECTION TO NOTICE OF ASSUMPTION AND ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES AND SUPPLEMENTAL OBJECTIONS TO CURE AMOUNT AND LACK OF ADEQUATE ASSURANCE INFORMATION**

MCS Hemet Valley Center LLC ("Landlord"), by its undersigned counsel, hereby submits its objections to the *Notice of Assumption and Assignment of Additional Designatable Leases* [ECF No. 3298] filed by Transform Holdco LLC ("Buyer") on April 19, 2019 (the "Designation"), and Landlord's supplemental objection (the "Supplemental Assumption Objection" and collectively, the "Objections") to the cure amount and lack of adequate assurance information provided by Buyer and Buyer's *"affiliated entity"* Transform Operating Stores LLC as the proposed assignee ("Proposed Assignee"). In support of the Objections, Landlord respectfully states:

---

[1] The last four digits of Sears Holdings Corporation federal tax identification number are 0798. Debtors' mailing address is 3333 Beverly Road, Hoffman Estates, Illinois 60179. Due to the large number of Debtors in this jointly administered matter, a complete list of Debtors and the last four digits of their federal tax identified numbers are not provided herein.

CASE NO. 18-23538 (RDD)

## THE HEMET LEASE AND ORIGINAL AND SUPPLEMENTAL CURE NOTICES

1. On October 15, 2018, the above-captioned debtors and debtors-in-possession ("Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

2. Landlord is a party to an unexpired lease of nonresidential real property with the Debtors located at 2200 W. Florida Avenue, Hemet CA 92545 identified as store #2028 (the "Hemet Lease").[2]

3. The Hemet Lease is a lease "of real property in a shopping center" for purposes of 11 U.S.C. §365(b)(3).

4. Among other terms, covenants and restrictions in the Hemet Lease (collectively, the "Restrictive Covenants"), Section 2 expressly limits the use of the *"Store Building"* as defined thereunder *"solely for the sale of all items or services normally sold in Sears Department Stores"*:

> The Lessee's Store Building, as defined herein, shall be used by Lessee solely for the sale of all items or services normally sold in Sears Department Stores, and the incidental servicing and storing of such merchandise, with an attached Auto Center, as defined herein, to be used for the sale of tires, batteries and other automotive items and services incidental thereto, specifically excluding the sale of gasoline, and for no other purpose. Lessee agrees to comply with all Federal, State and governmental laws, rules, regulations and ordinances applicable to the Demised Premises.

5. Pursuant to the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* filed by the Debtors on January 18, 2019 [ECF No. 1731] (the "Original Cure Notice"), the Debtors sought to assume and assign certain of their executory contracts and unexpired leases to Buyer, including potentially the Hemet Lease, pursuant to the *Order Approving Global Procedures and*

---

[2] A true and correct of the Hemet Lease and amendments are attached to Landlord's timely filed proof of claim submitted herewith as Exhibit "A," along with the letter of transmittal to Debtors' claim administrator sent by overnight mail on April 8, 2019, and received on April 9, 2019 (collectively, the "POC").

DOCS 102197-000078/3631744.3                                                                CASE NO. 18-23538 (RDD) 2

*Granting Related Relief* filed November 19, 2018 [ECF No. 816] (the "Global Bidding Procedures").

6. In conjunction with the Global Bidding Procedures, the Debtors filed the Original Cure Notice, which listed the Debtors' proposed cure amount for the Hemet Lease of *"$[0]"* (the "Original Proposed Cure Amount").

7. Paragraph 9 of the Original Cure Notice further provided that specific adequate assurance information for the Buyer was to be *"distributed to the applicable Counterparties:"*

> Adequate Assurance Information for the Buyer will be distributed to the applicable Counterparties. The Buyer's Adequate Assurance Information is intended to provide the Counterparties to the Contracts and Leases with adequate assurance of future performance and to support the Buyer's ability to comply with the requirements of adequate assurance of future performance, including the Buyer's financial wherewithal and willingness to perform under the Contracts and Leases.

8. On January 23, 2019, the Debtors filed their *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [ECF No. 1774] (the "Supplemental Cure Notice"). Although neither referenced in nor attached to the Supplemental Cure Notice filed with the Court, attached as Exhibit C to the Supplemental Cure Notice served by the Debtors on the Landlord was a letter from the Buyer purporting to contain adequate assurance information (the "Original Adequate Assurance Letter").

9. The Original Adequate Assurance Letter only contained very limited and general financial information concerning the Buyer, that it simply *had "sufficient capital to purchase the assets and to perform under the applicable assumed contracts and leases on a go-forward basis"* based upon anticipated financing.

10. The Original Adequate Assurance Letter also failed to state the intended use of any leased premises to be assumed, while further noting the ability of the Buyer to assign -- without specifically identifying -- *"certain of the contracts or leases"* to third parties whose identities *"are not yet known"* (the "Potential Assignee"):

> Certain of the contracts or leases being assumed by the Sellers are being assigned to the Buyer. Buyer also negotiated for the ability to assign certain

contracts or leases to any third parties. The identities of any such third parties are not yet known. In the event that a contract or lease is to be assumed and assigned to a party other than Buyer or its affiliates, the identity of the third party assignee and supplemental information satisfying the assignee's requirements for adequate assurance of future performance will be provided to the applicable counterparty to such contract or lease.

## PRIOR OBJECTIONS TO ASSUMPTION OF HEMET LEASE

11.   On January 25, 2019, Landlord timely filed its *Objections to Cure Amount and Adequate Assurance Information of Landlord MCS Hemet Valley Center LLC In Response to Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases In Connection with Global Sale Transaction* [ECF No. 1870] (the "Prior Objections").

12.   By its Prior Objections, Landlord objected to the Original Proposed Cure Amount as set forth in the Original Cure Notice because the correct cure amount due and owing under the Hemet Lease was and still is $47,129.07 as set forth in the lease statement submitted herewith as Exhibit "B" (the "Correct Cure Amount").[3]

13.   By its Prior Objections, Landlord further objected to the Debtors' Original Proposed Cure Amount in that it did not take into consideration the passage of time between the filing of the Original Cure Notice and the effective date of any assumption and assignment of the Hemet Lease by the Debtors (the "Intervening Lease Obligations").

14.   Accordingly, any order establishing cure amounts with respect to the Hemet Lease must require that the Debtors, Buyer and (then) Potential Assignee (i) comply with all Intervening Lease Obligations under the Hemet Lease pursuant to 11 U.S.C. § 365(d)(3) pending the actual assumption and assignment of the Hemet Lease, and (ii) cure any additional defaults that may occur under the Hemet Lease prior to the effective date of any assumption by the Debtors and assignment to the Buyer and/or Potential Assignee. See 11 U.S.C. § 365(b)(1).

---

[3] Landlord further reserves the right to amend its POC and the Correct Cure Amount to include additional charges that accrue under the Hemet Lease that are not identified on Exhibit "B" up through the date of any order approving any assumption or assumption and assignment of the Hemet Lease.

15. By its Prior Objections, Landlord further objected to the Debtors' Original Proposed Cure Amount since it did not include amounts that may become due under the Hemet Lease after the lease is assumed, but which may relate to the pre-assumption period (i.e., real estate tax and common area maintenance reconciliations) (collectively, the "Surviving Obligations").

16. Any order establishing the cure amount in connection with the assumption and assignment of the Hemet Lease must therefore provide for the payment of all Surviving Obligations, including any charges due and/or accrued in the ordinary course under the terms of the Hemet Lease, notwithstanding the Debtors' Original Proposed Cure Amount.

17. By its Prior Objections, Landlord further objected in that the Hemet Lease provides that the Debtors, Buyer and/or then Potential Assignee must indemnify and hold Landlord harmless with respect to any existing claims that may not become known until after the assumption of the lease (including, without limitation, accrued obligations for personal injury or negligence claims against the Debtors that could be asserted against the Landlord, and/or damage to the leased premises or shopping center caused by the Debtors or their agents) (the "Indemnification Obligations").

18. Any order approving the assumption and assignment of the Hemet Lease must therefore also provide that the assumption is pursuant to the terms of the Hemet Lease, and that the Debtors, Buyer and/or Potential Assignee will continue to be responsible for all Indemnification Obligations, regardless of when they arose.

19. Under the Hemet Lease, Landlord is also entitled to attorneys' fees and costs. These amounts are currently unliquidated because as of the date hereof Landlord cannot be certain whether its Hemet Lease will be assumed and when such assumption will occur (the "Fee Obligations"). The Correct Cure Amount should therefore also include all of Landlord's attorneys' fees and costs to which it is entitled under the Hemet Lease in satisfaction of the Fee Obligations.

20. By its Prior Objections, Landlord further objected that the Debtors, Buyer and any Potential Assignee had not provided sufficient information as to adequate assurance of future

performance of the terms of the Hemet Lease within a shopping center under 11 U.S.C. § 365(b)(1) and (b)(3), and under 11 U.S.C. § 365(f)(2)(B) (the "Adequate Assurance Obligations").

21.     Any assumption and assignment of the Hemet Lease must therefore be conditioned upon the Debtors, Buyer and any Potential Assignee providing adequate assurance of future performance of the terms of the Hemet Lease as required under the Bankruptcy Code.

22.     In particular, Landlord objected that the Original Cure Notice did not confirm that the *"Store Building"* would continue to be used *"solely for the sale of all items or services normally sold in Sears Department Stores"* consistent with the express use and other Restrictive Covenants under the Hemet Lease (the "Restrictive Covenant Obligations").

23.     Finally, while expressly reserving its rights to assert any further objections, by its Prior Objections Landlord objected to any attempt by the Debtors, Buyer or any Potential Assignee to modify the Hemet Lease or any of Landlord's rights thereunder, since the lease must be assumed and assigned without modification, with all of its benefits and burdens, as expressly provided in 11 U.S.C. §365(b)(3)(C) (the "*Cum Onere* Obligations").

## THE SALE AND ASSUMPTION AND ASSIGNMENT ORDERS

24.     On February 8, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief* (ECF No. 2507) (the "Sale Order").

25.     On April 2, 2019, the Court entered the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* [ECF No. 3008] (the "Assignment Order").

26.     Under Paragraph 3 of the Sale Order and Paragraphs 28-29 of the Assignment Order, all of Landlord's Prior Objections were expressly preserved and reserved.

27. Pursuant to Paragraph 59 of the Sale Order and Paragraph 26 of the Assignment Order, the Designation *"shall describe the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish.*"[4]

## THE DESIGNATION OF THE HEMET LEASE

28. In the schedule attached to the Designation filed by Buyer on April 19, 2019 (the "Designation Schedule"), the Hemet Lease is listed among the *"Additional Designatable Leases"* pursuant to the Sale Order and Assignment Order, with the Proposed Assignee simply identified as the Buyer's *"affiliated entity."*

29. Despite acknowledging the *"Counterparty's Asserted Cure"* in the Correct Cure Amount of $47,129.07, the Buyer again incorrectly lists the proposed cure amount for the Hemet Lease in the Designation Schedule of *"$[0]"* (the "Incorrect Cure Amount").

30. Paragraph 18 of the Designation provides that Buyer *"intends to designate the [Hemet Lease] for assumption and assignment free and clear"* of the Restrictive Covenants, but fails to describe the Restrictive Covenants that the Buyer is seeking to extinguish or otherwise diminish as required by Paragraphs 59 and 26 of the Sale Order and Assignment Order, respectively.

31. The Designation further fails to provide any adequate assurance information for the Proposed Assignee, including (i) where the Proposed Assignee is in the Buyer's organizational structure, (ii) the Proposed Assignee's and Buyer's current financial position, including financial wherewithal and current availability under any credit facilities, and/or any other financial resources, and (iii) the Buyer and Proposed Assignee's operating experience, resources and capabilities.

---

[4] "Restrictive Covenants" under the Sale Order and Assignment Order broadly include any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits.

## SUMMARY OF SUPPLEMENTAL ASSUMPTION OBJECTIONS

32.  Based upon the authorities set forth in its Prior Objections and below, Landlord objects to the Designation and further submits its Supplemental Assumption Objections:

- The assumption and assignment of the Hemet Lease in a shopping center requires the Debtors, Buyer and/or Proposed Assignee to be liable for the Correct Cure Amount, including the Intervening Lease Obligations, Surviving Obligations, Indemnification Obligations, and Fee Obligations, which must be paid as part of the assumption/assignment, and adequately provided for prior to any assignment;

- The Debtors, Buyer and Proposed Assignee must comply with the requirements of Section 365 (including Section 365(b)(3)), and the Buyer or Proposed Assignee must be subject to and comply with the *Cum Onere* Obligations by complying with all of the terms and conditions of the Hemet Lease, without modification in connection with any future use;

- Neither the Buyer nor Proposed Assignee have met their burden of demonstrating adequate assurance of future performance to satisfy their Adequate Assurance Obligations as required by section 365 of the Bankruptcy Code; and

- Any transfer of the Hemet Lease must be subject to, and cannot be free and clear of, applicable Restrictive Covenants, in particular that the "Store Building" will continue to be used "*solely for the sale of all items or services normally sold in Sears Department Stores*".

## CURE OBJECTION AND BASIS THEREFOR

33.  Section 365(b) of the Bankruptcy Code provides in pertinent part as follows:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default…;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

34. Section 365 of the Bankruptcy Code obligates the Debtors, Buyer and/or the Proposed Assignee to promptly cure all existing defaults before assuming any unexpired lease of non-residential real property. See 11 U.S.C. § 365(b)(1)(A) and (B); *Agri Star Meat & Poultry, LLC v. Nevel Props. Corp. (In re Nevel Props. Corp.)*, 765 F.3d 846, 849 (8th Cir. 2014) (stating that a lease cannot be assumed unless a cure has been effected); *In re Alipat, Inc.*, 36 B.R. 274, 276 (Bankr. E.D. Mo. 1984) ("[I]f there has been a default in an executory contract or unexpired lease, the trustee may not assume such contract or lease unless he or she cures the default, compensates the other party, and provides adequate assurance of future performance…").

35. The Debtors, Buyer and/or the Proposed Assignee are therefore required to promptly cure all existing defaults by paying Landlord the Correct Cure Amount, as provided on Exhibit "B", including the Intervening Lease Obligations, Surviving Obligations, Indemnification Obligations, and Fee Obligations, as part of the assumption/assignment, and be adequately provided for prior to any assignment immediately upon the assumption and assignment of the Hemet Lease.

## THE HEMET LEASE MUST BE ASSUMED AND ASSIGNED *CUM ONERE*

36. Section 365(b)(3)(C) of the Bankruptcy Code further provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . . .".11 U.S.C. §365(b)(3)(C). Bankruptcy Courts have described the assumption of an unexpired lease (a prerequisite to assignment under § 365(f)(2)(A)) as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

37. As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. See Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed.1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of

the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

38. *See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach"); *Thompson v. Texas Mexican Railway Co.*, 328 U.S. 134 (1946); *In re Jamesway Corp.*, 201 B.R.73, 76 (Bankr. S.D.N.Y. 1996); *Rockland Center Assoc. v. TSW Stores of Nanuet, Inc.* (*In re TSW Stores of Nanuet, Inc.)*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1985).

39. Landlord objects to any attempt by the Debtors, Buyer or Proposed Assignee to modify the Hemet Lease or any of Landlord's rights thereunder. The Hemet Lease must be assumed and assigned without modification, with all of their benefits and burdens, as expressly provided in 11 U.S.C. §365(b)(3)(C).

40. Since Section 3655(b)(3) requires that the Hemet Lease be assumed and assigned "subject to all the provisions thereof," Landlord further objects to any attempt by the Debtors, Buyer and/or Proposed Assignee to assume the Hemet Lease free and clear of the Debtors' Intervening Lease Obligations, Surviving Obligations, Indemnification Obligations, and Fee Obligations thereunder. 11 U.S.C. §365(b)(3)(C). All of Landlord's claims under the Hemet Lease should therefore be preserved and survive any order authorizing assumption and assignment of the Hemet Lease.

41. Accordingly, any requests by the Debtors, Buyer and/or Proposed Assignee to modify any provisions or Restrictive Covenants in the Hemet Lease to suit the desires of the Buyer and/or any Proposed Assignee are without merit and inconsistent with the protections afforded by 11 U.S.C. §365(b)(3) to lessors of real property contained within a shopping center.

*42.* To the extent this Court authorizes assumption and assignment of the Hemet Lease, the Buyer and/or any Proposed Assignee must therefore be required to accept all terms

and Restrictive Covenants in the Hemet Lease, including that the *"Store Building"* will continue to be used *"solely for the sale of all items or services normally sold in Sears Department Stores."*

## ADEQUATE ASSURANCE OBJECTIONS AND BASIS THEREFORE

43. Before assuming a lease of a shopping center that is in default, a debtor must also, *inter alia*, provide adequate assurance of future performance to the landlord. 11 U.S.C. § 365(b)(1). Bankruptcy Code section 365(b)(3) states:

> (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
>
> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

44. Under 11 U.S.C. § 365(b)(1) and (b)(3) and under 11 U.S.C. § 365(f)(2)(B), Landlord is entitled to "adequate assurance" of future performance by the Buyer and any Proposed Assignee. *In re Ionosphere Clubs, Inc.,* 85 F.3d 992, 999 (2d Cir. 1996) (Section 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed); *c.f., In re Embers 86th Street, Inc.,* 184 B.R. 892, 900-01 (Bankr. S.D.N.Y. 1995)

(adequate assurance of payment of cure did not exist where plan was to "meet its projections by reducing staff (and thereby affording customers fewer services) while simultaneously offering smaller food portions at increased prices"); *Matter of World Skating Center, Inc.,* 100 B.R. 147, 148-49 (Bankr. D. Conn.1989) ("[a]dequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord that it will receive the amount of the default"); *In re Future Growth Enterprises, Inc.*, 61 B.R. 469 (Bankr. E.D. Pa. 1986) (lease could not be assumed where operating profit was too narrow to provide adequate assurance that arrearages could be cured).

45.     Additionally, "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers." *In re Joshua Slocum Ltd.,* 922 F.2d at 1086. "Congress recognized that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." *Id.* "Where the leased premises are in a shopping center, the assignee must meet the heightened definition of adequate assurance of future performance in Section 365(b)(3) to ensure that [t]he essential terms of a debtor's lease in a shopping center [are] not . . . changed in order to facilitate assignment." *In re Rickel Home Centers, Inc.,* 209 F.3d 291, 299 (3rd Cir. 2000), *cert. denied*, 121 S.Ct. 175 (2000) (citation omitted).

46.     The Debtors, Buyer and/or Proposed Assignee bear the burden of proving adequate assurance of future performance in connection with the assumption of the Hemet Lease. *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) ("[T]he lessor must be given adequate assurance of future performance so that it will be protected from having to take on the burden of a tenant who may be likely to default on his lease obligations . . . "); *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

47.     The Original Adequate Assurance Letter was provided only by the Buyer, <u>not</u> the Proposed Assignee. Other than being the Buyer's *"affiliated entity,"* no information whatsoever

has been provided regarding the Proposed Assignee, or even why the proposed assignment is not to the Buyer, but rather to this entity, which may have no meaningful assets whatsoever.

48.     No financial information has therefore been provided to demonstrate that the financial condition of the Proposed Assignee is as good or better than the Debtors as *"of the time the debtor became the lessee under the lease"* as required under Section 365(b)(3)(A).

49.     There are also serious questions as to whether the Buyer will even have "sufficient liquidity" to meet its post-closing obligations, as well as its ability to "operate [the Business] on a going-forward basis." *See Transform Holdco LLC' s Response to Debtors' (I) Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay against Transform Holdco LLC and (B) Compel Turnover of Estate Property and Reply In Further Support of Its Motion To Assign Matter to Mediation* [ECF No. 2864] at ¶ 34; *Initial Supplemental Brief in Response to Debtors' Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property* [ECF No. 3011] at ¶ 11.

50.     Recent news reports also raise serious questions about the Buyer's financial wherewithal. *See Creditntell, New Sears – Appearance vs. Reality*, Web. (Apr. 2, 2019) ("Not surprisingly we expect [Transform] to struggle, with little margin for error, due to the same problems that plagued Sears Holdings.").

51.     To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, Landlord and its attorneys must receive the following information from the Buyer and Proposed Assignee of the Leases:

> (i)    The exact name of the Proposed Assignee;
>
> (ii)   The Proposed Assignee's and any guarantor's tax returns and audited financial statements (or un-audited, if audited financials are not available) and any supplemental schedules for the calendar or fiscal years ending 2016, 2017, and 2018;
>
> (iii)  The number of stores the Proposed Assignee operates (or intends to operate) and all trade names that the Proposed Assignee uses or intends to use;
>
> (iv)   A statement setting forth the Proposed Assignee's intended use of the premises consistent with the Restrictive Covenants under the Hemet Lease, and in particular that the *"Store Building"* will continue to be used

> "*solely for the sale of all items or services normally sold in Sears Department Stores*";
>
> (v)     The Proposed Assignee's retail experience and experience operating in-line stores in a shopping center;
>
> (vi)    The Proposed Assignee's 2018 and 2019 business plans, including sales and cash flow projections; and
>
> (vii)   Any financial projections, calculations, and/or financial proformas prepared in contemplation of purchasing the Hemet Lease.

52.     Until Landlord is provided all information as required under the Bankruptcy Code, the Debtors, Buyer and Potential Assignee have not satisfied their Adequate Assurance Obligations by failing to provide adequate assurance of future performance of the terms of the Hemet Lease.  In particular, that the *"Store Building"* will continue to be used *"solely for the sale of all items or services normally sold in Sears Department Stores"* consistent with the Restrictive Covenants

### ANY PROPOSED ASSIGNMENT OF THE HEMET LEASE TO THE PROPOSED ASSIGNEE IS SUBJECT TO THE RESTRICTIVE COVENANTS

53.     The *Cum Onere* Obligations and the principle and requirements of Section 365 (including Section 365(b)(3)) of the Bankruptcy Code noted above, further mandate that the Restrictive Covenants in the Hemet Lease be respected in connection with any lease assignment. *See* 11 U.S.C. § 365(b)(3)(C) (requiring that "assumption or assignment of such lease is subject to all the provisions thereof"); *Bildisco*, 465 U.S. at 531; *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).

54.     As is typical, shopping center leases are part of an integrated and complex commercial relationship between the shopping center owner and tenants that arise under the leases as well as reciprocal easement agreements and other Restrictive Covenants applicable to the property.

55.     Moreover, the Debtors cannot sell free and clear of the Restrictive Covenants under applicable law as such rights are found to be non-executory (and therefore not subject to rejection) and/or to run with the  land.

56.   In any event, any question regarding whether the Restrictive Covenants run with the land may not be decided in the context of the assumption/assignment of the Hemet Lease, and must instead be addressed pursuant to a separate adversary proceeding. *See In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018) ("[T]he Court concludes that it cannot decide substantive legal issues, including whether the covenants at issue run with the land, in the context of a motion to reject, unless such motion is scheduled simultaneously with an adversary proceeding or contested matter to determine the merits of the substantive legal disputes related to the motion.").

57.   As noted above, among the Restrictive Covenants and restrictions in the Hemet Lease, Section 2 expressly limits the use of the *"Store Building"* as defined thereunder *"solely for the sale of all items or services normally sold in Sears Department Stores"*:

> The Lessee's Store Building, as defined herein, shall be used by Lessee solely for the sale of all items or services normally sold in Sears Department Stores, and the incidental servicing and storing of such merchandise, with an attached Auto Center, as defined herein, to be used for the sale of tires, batteries and other automotive items and services incidental thereto, specifically excluding the sale of gasoline, and for no other purpose. Lessee agrees to comply with all Federal, State and governmental laws, rules, regulations and ordinances applicable to the Demised Premises.

58.   Accordingly, Landlord objects to the Designation and the assumption and/or assignment of the Hemet Lease to the extent such assignment and transfer is not subject to all applicable Restrictive Covenants thereunder, including that the *"Store Building"* be used *"solely for the sale of all items or services normally sold in Sears Department Stores"* .

## RESERVATION OF RIGHTS AND JOINDER

59.   Landlord further reserves its right to assert any and all other objections to the assumption and assignment of the Hemet Lease, and any claims against the Debtors arising out of or related to the Hemet Lease, including without limitation, claims for (a) the costs of any repair that may be necessary after inspection of the interior of the leased premises; (b) post-petition rent and other charges accruing under the Hemet Lease from and after the filing of the

Designation, that Landlord has yet to discover and not yet identified on Exhibit "B"; (c) pecuniary losses suffered by Landlord as a result of any defaults by Debtors under the Hemet Lease, including, but not limited to, attorneys' fees and costs incurred as a direct result of any further defaults; and (d) non-monetary defaults of which Landlord does not have knowledge at this time.

60.    Landlord further reserves all of its rights to further object to any additional adequate assurance information provided by the Buyer and/or the Proposed Assignee of the Hemet Lease on any basis, as well as any other rights it now has or may have under applicable law with respect to this matter, including but not limited to any rights under Section 365 of the Bankruptcy Code.  To the extent not inconsistent herewith, Landlord hereby joins in the objections raised by other landlords.

## CONCLUSION

61.    Landlord respectively submits that: (a) the Correct Cure Amount should be allowed (subject to adjustment by Landlord) in the amounts set forth in its timely filed POC and current lease statement submitted herewith as Exhibits "A" and "B," respectively; (b) any order approving the assumption and assignment of the Hemet Lease be subject to and conditioned upon the Buyer or the Proposed Assignee providing adequate assurance of future performance, including that it will continue to operate a Sears Department Store; (c)  any order approving the

assumption and assignment of the Hemet Lease expressly provide that it is subject to, and not free from all of the Restrictive Covenants in the Hemet Lease, and (d) the Court should grant such other relief that the Court finds just and proper.

DATED: April 25, 2019        **PROCOPIO, CORY, HARGREAVES & SAVITCH LLP**

By:   */s/ Gerald P. Kennedy*
Gerald P. Kennedy (Bar No. 105887)
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
Email: gerald.kennedy@procopio.com

Attorney for Landlord/Creditor
MCS Hemet Valley Center LLC

## **CERTIFICATE OF SERVICE**

I hereby certify, pursuant to 28 U.S.C. §1746, that on April 25, 2019, I caused a true and correct copy of the foregoing Cure Objection to be sent to each of the persons named on the attached Service List, by email (unless otherwise stated).

DATED: April 25, 2019              **PROCOPIO, CORY, HARGREAVES & SAVITCH LLP**

By:  */s/ Gerald P. Kennedy*
     Gerald P. Kennedy (CA Bar No. 105887)
     PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

## SERVICE LIST

I.  Bid Notice Parties
    a.  Debtors
        Rob Riecker: rob.riecker@searshc.com
        Luke Valentino: luke.valentino@searshc.com
        Mohsin Meghji: mmeghji@miiipartners.com
        General Counsel: counsel@searshc.com

    b.  Debtors' counsel
        Ray Schrock, Esq.: ray.schrock@weil.com
        Jacqueline Marcus, Esq.: jacqueline.marcus@weil.com
        Garrett A. Fail, Esq. garrett.fail@weil.com
        Sunny Singh, Esq. sunny.singh@weil.com

    c.  Debtors' investment banker: project.blue.rx@lazard.com

II. Buyer Parties
    a.  Buyer
        Kunal S. Kamlani: kunal@eslinvest.com
        Harold Talisman: harold@eslinvest.com

    b.  Counsel
        Christopher E. Austin, Esq.: caustin@cgsh.com
        Benet J. O'Reilly, Esq.: boreilly@cgsh.com
        Sean A. O'Neal, Esq.: soneal@cgsh.com

III. Consultation Parties
    a.  Bank of America
        Paul Leake, Esq.: Paul.Leake@skadden.com
        Shana Elberg, Esq.: Shana.Elberg@skadden.com
        George Howard, Esq.: George.Howard@skadden.com

    b.  Wells Fargo Bank
        Kevin J. Simard, Esq.: ksimard@choate.com
        Jonathan D. Marshall, Esq.: jmarshall@choate.com

    c.  Committee
        Ira S. Dizengoff, Esq. : idizengoff@akingump.com
        Philip C. Dublin, Esq.: pdublin@akingump.com
        Abid Qureshi, Esq.: aqureshi@akingump.com
        Sara L. Brauner, Esq.: sbrauner@akingump.com

**[CONTINUED ON NEXT PAGE]**

**[CONTINUED FROM PREVIOUS PAGE]**

| | |
|---|---|
| Transform Holdco, LLC<br>c/o ESL Partners, Inc.<br>Attention: Kunal S. Kamlani and Harold Talisman<br>1170 Kane Concourse, Suite 200<br>Bay Harbor Islands, FL 33154 | Via First Class Mail |
| Sears Holdings Corporation<br>Attn: General Counsel<br>3333 Beverly Road<br>Hoffman Estates, IL 60179 | Via First Class Mail |
| Weil, Gotshal & Manges LLP<br>Attention: Ray C. Schrock, P.C.,<br> Ellen J. Odoner, Gavin Westerman and Sunny Singh<br>767 Fifth Avenue<br>New York, New York 10153 | Via First Class Mail |
| Cleary Gottlieb Steen & Hamilton LLP<br>Attention: Christopher E. Austin,<br> Benet J. O'Reilly and Sean A. O'Neal<br>One Liberty Plaza<br>New York, NY 10006 | Via First Class Mail |