**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
Jeffrey Rhodes (*admitted pro hac vice*)
Evan J. Zucker

*Attorneys for Kin Properties, Inc.; Aleff LLC; Arcolo*
*Limited Partnership; Cansan Company, LLC; Fairsan*
*Company LLC; Floreff LLC; Fundamentals Co LLC;*
*Hareff LLC; Hillsborough Associates; Pasan Trust;*
*Mantkin LLC; Musue LLC; Nathan Alison LLC;*
*Sugencole LLC; Sugengran LLC; and Sugensteve LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

In re:                                                          :        **Chapter 11**
                                                                :
**SEARS HOLDINGS CORPORATION, *et al.*,**     :        **Case No. 18-23538 (RDD)**
                                                                :
           **Debtors.**[1]                                      :        **(Jointly Administered)**
                                                                :
---------------------------------------------------------------- x

## SUPPLEMENTAL OBJECTION OF
## THE KIN LANDLORDS WITH RESPECT TO NOTICE OF
## <u>ASSUMPTION AND ASSIGNMENT OF FAIRLESS HILLS LEASE</u>

Kin Properties, Inc. ("<u>Kin Properties</u>") and Fairsan Company LLC ("<u>Fairsan</u>" and together

with Kin Properties, the "<u>Kin Landlords</u>") hereby file this supplemental objection (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

"Objection") in response to the *Notice of Assumption and Assignment of Additional Designatable Leases* [ECF No. 3298] (the "Assumption/Assignment Notice"), and to supplement the Kin Landlords' previously filed objections [ECF Nos. 1930, 2261, 2809] (the "Supplemental Objections"), regarding the assumption and assignment, *inter alia*, of the Fairless Hills Lease (as defined herein). In support of this Objection, the Kin Landlords respectfully state as follows:

## BACKGROUND

### I.   FAIRLESS HILLS LEASE

1.   Fairsan is the owner of certain improved real property located at One Kresge Road, Fairless Hills, PA (as defined herein, the "Fairless Hills Property"). Debtor Kmart Corporation, as successor-in-interest to K Mart Enterprises of Pennsylvania, Inc. ("Kmart") leases the Fairless Hills Property from Fairsan, as successor-in-interest to Pennsylvania Mart Properties Corp., pursuant to that certain Lease, dated as of March 20, 1975 (the "Original Lease"[2] and, as supplemented and amended from time to time, the "Fairless Hills Lease").

2.   Pursuant to the terms of the Fairless Hills Lease, Fairsan and Kmart each granted to the other mutual rights of first refusal to purchase the other's interest in the Fairless Hills Property, on the terms and conditions set forth in that certain First Amendment to Fairless Hills Lease dated as of March 31, 2017. True and correct copies of the First Amendment to Fairless Hills Lease, and the corresponding Memorandum of Amendment to Lease recorded in the Recorders Office of Bucks County, PA, are attached hereto as Exhibit B. Pursuant to the Landlord's right of first refusal granted to Fairsan under the Fairless Hills Lease, Kmart granted Fairsan a right of first refusal to purchase Kmart's leasehold interest on the same terms and conditions contained in an arm's-length, bona fide written offer from a third party.

---

[2] A true and correct copy of the Original Lease is attached hereto as Exhibit A.

3.      Paragraph 4(a) of the First Amendment to the Fairless Hills Lease provides in part as follows:

> If any acceptable Tenant Third-Party Offer shall include property other than Tenant's leasehold interest in the Leased Property, Landlord's First Refusal Right shall be applicable to Tenant's leasehold interest in the Leased Property alone, and the purchase price for Tenant's leasehold interest in the Leased Property shall be calculated based on proportioning the value thereof relative to the entire price offered by the third party for all of the property included in such offer, which shall be done by Tenant in a good faith and commercially reasonable manner (and Tenant will provide reasonable back-up documentation supporting such value proportioning at Landlord's request).

4.      The parties expressly agreed that the mutual rights of first refusal are continuing rights that run with the land. *See* First Amendment to Fairless Hills Lease at ⁋⁋ 3(c) and 4(c). The parties further agreed that the rights of first refusal remain applicable to transfers during the Term of the Fairless Hills Lease, even if the applicable interest was previously transferred following a party's election not to exercise, or its failure to timely exercise, the first refusal right. *See*, *e.g.*, First Amendment to Fairless Hills Lease at ⁋ 4(c) ("Landlord's First Refusal Right is *a continuing right and runs with the land* and the Tenant's leasehold interest created by the Lease (as modified hereby) and, except as expressly set forth herein, shall be applicable to transfers during the Term even if the Tenant's leasehold interest in the Leased Property created by the Lease (as modified hereby) was previously transferred following Landlord's election not to exercise Landlord's First Refusal Right or its failure to timely exercise Landlord's First Refusal Right.") (emphasis added).

5.      The First Amendment to the Fairless Hills Lease requires, as a condition to the exercise of the applicable party's right of first refusal, the payment of a right of first refusal fee by the exercising party, which amount is in addition to the purchase price set forth in an applicable offer. *See* First Amendment to Fairless Hills Lease at ⁋ 5.

6.      Fairsan and Kmart subsequently entered into a Second Amendment to the Fairless Hills Lease on June 21, 2017, and a Third Amendment to the Fairless Hills Lease on February 4, 2008.[3]  Pursuant to the Third Amendment to the Fairless Hills Lease, the fee payable to Kmart by Fairsan upon the exercise of the Landlord's right of first refusal is $250,000.00.

## II.    DEBTORS' SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS

7.      Beginning on October 15, 2018 (the "Petition Date") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      On January 18, 2019, the Debtors filed the *Notice of Successful Bidder and Sale Hearing* (the "Sale Transaction Notice") [ECF No. 1730], attaching the executed asset purchase agreement between the Debtors and Transform Holdco, LLC, an affiliate of ESL Investments, Inc. ("Buyer"), dated January 17, 2019 (the "Asset Purchase Agreement").

9.      Pursuant to the terms of the Asset Purchase Agreement, the Debtors seek to sell "Acquired Assets," including "Acquired Lease Rights," free and clear of any and all "Encumbrances," which term is defined to include, *inter alia*, rights of first refusal. *See* Asset Purchase Agreement at ¶¶ 1.1 (Definitions) and 2.1 (Purchase and Sale of the Acquired Assets).

10.     On January 18, 2019, the Debtors also filed the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1731] (the "Initial Notice"). In response to the Initial Notice, the Kin Landlords filed their *Objection and Reservation of Rights of the Kin*

---

[3] True and correct copies of the Second Amendment to Lease, and the corresponding Memorandum of Second Amendment to Lease recorded in the Recorders Office of Bucks County, PA, are attached hereto collectively as Exhibit C, and true and correct copies of the Third Amendment to Lease, and the corresponding Memorandum of Third Amendment to Lease recorded in the Recorders Office of Bucks County, PA, are attached hereto collectively as Exhibit D.

*Landlords With Respect to Proposed Global Asset Sale Transaction and Notice of Cure Amounts and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases* [ECF No. 1930] (the "Initial Objection").  Pursuant to the Initial Objection, the Kin Landlords, *inter alia*, reserved their rights to supplement the Initial Objection, including without limitation to amend or supplement any statements of cure amounts.  The Kin Landlords further reserved all rights in connection with the right of first refusal, including the right to exercise the right of first refusal in the event it received written notice of Kmart's designation of the Fairless Hills Lease as an asset to be assumed and assigned to Buyer or another third party, subject to the terms and conditions set forth in the Fairless Hills Lease, including payment of the $250,000 right of first refusal fee.  The Kin Landlords hereby incorporate the objections and reservations of rights set forth in the Initial Objection as if fully set forth herein.

11.     On January 23, 2019, the Debtors filed their *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [ECF No. 1774] (the "Supplemental Notice") identifying additional contracts and leases that might be assumed and assigned in connection with the Global Asset Sale Transaction.

12.     The Supplemental Notice identified a number of Kin Leases as being potentially subject to assumption and assignment to the Buyer.

13.     Accordingly, in response to the Supplemental Notice, the Kin Landlords filed *Objection and Reservation of Rights of the Kin Landlords with Respect to Initial and Supplemental Notices of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "January 31 Supplemental Objection") [ECF No. 2261].   The Kin Landlords hereby incorporate the

objections and reservations of rights set forth in the January 31 Supplemental Objection as if fully set forth herein.

14.     On January 28, 2019, the Kin Landlords received from the Buyer's counsel a letter, designated as confidential and proprietary, that purports to demonstrate Buyer's adequate assurance of future performance. On February 3, 2019, the Kin Landlords received additional correspondence from the Buyer's counsel, forwarding the declaration of Kunal Kamlani, President of ESL Investments [ECF No. 2356], as information purportedly further supporting Buyer's ability to satisfy the requirements for adequate assurance of future performance under sections 365(f)(2)(B) and, if applicable, 365(b)(3) of the Bankruptcy Code.

15.     On February 8, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Transform Assignee, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (IV) Granting Related Relief* [ECF No. 2507] (the "Sale Order"). Pursuant to the terms of the Sale Order, and based on objections made by various landlords (including the Kin Landlords) in connection with the sale hearing and the forms of proposed order submitted by the Debtors and Buyer, issues relating to cure amounts, adequate assurance of future performance, and other matters related to the proposed assumption and assignment of real estate leases that were not Initial Assigned Agreements (as defined in the Sale Order) were fully preserved for future resolution. *See* Sale Order at ¶ 3. None of the Kin Landlords' leases were included among the Initial Assigned Agreements.

16.     Among other things, the Sale Order states that:

> Nothing herein or in the Asset Purchase Agreement or any related document shall authorize, absent further order of the Court or agreement among the Debtors or the Transform Assignee, on the one hand, and the applicable non-Debtor counterparty, on the other

hand, the sale of any real estate property owned by any of the Debtors, free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") that are not executory or that run with the land. To the extent that the Debtors or any other party seek to assume and assign any real estate leases to which a Debtor is a party free and clear of any Restrictive Covenant, *the Debtors or such party shall file a notice that describes the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant* will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto; any such issues shall be determined by the Court or otherwise resolved consensually prior to the effectiveness of the assignment of any Lease, and all rights, remedies, and positions of all parties with respect to any such relief are preserved.

Sale Order at ⁋ 59 (emphasis added).

17.     On March 5, 2019, the Debtors filed the Third Supplemental Notice [ECF No. 2753]. The Third Supplemental Notice, like its predecessors, states that at the time of its filing, the Transform Assignee has not designated any contracts or leases for assumption and assignment to the Transform Assignee, and advises counterparties that "[y]ou will receive an additional notice informing you if your Contract or Lease is designed for assumption or assignment to the Transform Assignee." *Id*. at ⁋ 16.

18.     On March 13, 2019, in response to the Third Supplemental Notice, the Kin Landlords filed *Objection and Reservation of Rights of the Kin Landlords with Respect to Third Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "March 13 Supplemental Objection") [ECF No. 2809]. The Kin Landlords hereby incorporate the objections and reservations of rights set forth in the March 13 Supplemental Objection as if fully set forth herein.

19.     On April 2, 2019, the Court entered its *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (the "Assumption and Assignment Order") [ECF No. 3008 and 3043].   Like the Sale Order, the Assumption and Assignment Order fully preserves the Kin Landlords' objections for future resolution.  *See* Assumption and Assignment Order at ¶¶ 28-29.   Among other provisions, the Assumption and Assignment Order requires that:

> To the extent that the Debtors or any other party seek to assume and assign any real estate leases to which a Debtor is a party free and clear of any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants"), the applicable Designated Lease Notice shall describe the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish. . . .

Assumption and Assignment Order at ¶ 26.

20.     On April 19, 2019, the Buyer filed its Assumption/Assignment Notice designating certain leases, including certain of the Kin Leases, for assumption and assignment.   The Kin Leases subject to assumption and assignment by the Buyer (collectively, the "Kin Designated Leases") are as follows:

a.     7701/7705 Broadview Road, Seven Hills, Ohio and designated by the Debtors as Store Number 3013 (the "Seven Hills Property");

b.     436 Main Street, Hackensack, New Jersey and designated by the Debtors as Store Number 1094 (the "Hackensack Property");

c.     1820 East Race Street, Allentown, Pennsylvania and designated by the Debtors as Store Number 8744 (the "Allentown Property");

d.     803 Male Road, Wind Gap, Pennsylvania and designated by the Debtors as Store Number 3949 (the "Wind Gap Property");

e.     One Kresge Road, Falls Township, Morrisville/Fairless Hills, Pennsylvania and designated by the Debtors as Store Number 8275 (the "Fairless Hills Property");

     f.      236 N. Central Ave. (201 West California Ave.), Glendale, California and designated by the Debtors as Store Number 1088 (the "Glendale Property"); and

     g.      660 West Winton Avenue, Hayward, California and designated by the Debtors as Store Number 1248 (the "Hayward Property").

21.     In the Assumption/Assignment Notice, the Buyer identifies for the first time Transform Distribution Center Holdco LLC, Transform Operating Stores LLC, and Transform Leaseco LLC (collectively the "Transform Assignees") as the ultimate assignees with respect to the Kin Designated Leases.   No further information regarding the proposed Transform Assignees, including any details regarding their relationship to the Buyer, is provided.

22.     On April 22, 2019, Fairsan sent a letter to counsel to the Debtors, with a copy to the Buyer's counsel, acknowledging the designation of the Fairless Hills Lease for assumption and assignment to Buyer as set forth in the Assumption/Assignment Notice, and requesting that the Debtors provide Fairsan with a Tenant Third-Party Offer, as required under the terms of the Fairless Hills Lease, that included the allocated purchase price information necessary for Fairsan to evaluate and exercise its right of first refusal. *See* First Amendment to Fairless Hills Lease at ¶ 4(a).  As of the date hereof, Kmart has not provided a Tenant Third-Party Offer as required under the Fairless Hills Lease, and as a result the Landlord Acceptance Period (as defined in the First Amendment to the Fairless Hills Lease) has not yet begun to run.[4]

---

[4] Although Kmart has not responded to Fairsan's request for information necessary to evaluate the potential exercise of its right of first refusal, counsel for the Buyer responded and disputed Fairsan's right to exercise its right of refusal. The Buyer further indicated that it would not provide an allocation of the purchase price to the Fairless Hills Lease However, it is Kmart's obligation under the Fairless Hills Lease, not the Buyer's, to provide the requested information in the form of a Tenant Third-Party Offer. *See* First Amendment to Lease at ¶ 4(a).

**OBJECTION**

I.    **THE FAIRLESS HILLS LEASE MUST BE ASSUMED AND ASSIGNED, IF AT ALL, *CUM ONERE* AND THE APPLICABLE ASSIGNEE MUST CURE ALL DEFAULTS AND ASSUME ALL UNLIQUIDATED OBLIGATIONS**

23.    It is well settled that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens." *In re Leslie Fay Companies, Inc.*, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994); *see also In re Kopel*, 232 B.R. 57, 63 (Bankr. E.D.N.Y. 1999) ("It is axiomatic that an executory contract generally must be assumed *cum onere*."); *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits").

24.    Thus, in order to assume and assign the Fairless Hills Lease, the Debtors are required, at the time of assumption, to cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the respective leases.  11 U.S.C. § 365(b)(1)(A). This includes, without limitation, any and all defaults with respect to insurance requirements under the Fairless Hills Lease, real estate taxes and other charges (accrued or otherwise), amounts payable under reciprocal easement agreements, utilities (including electricity, gas, oil, water, telephone, sanitary sewer services and all other and utilities), attorneys' fees and costs, repair, maintenance, and replacement obligations, and environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges owing under the Fairless Hills Lease that remain undetermined as of the date hereof (the "Unliquidated Obligations").  Thus, for example, the Debtors are not entitled to assume the Fairless Hills Lease by merely curing arrearages in rent.  Instead, the Debtors must cure, or provide adequate assurance of promptly curing, all liquidated cure amounts and other Unliquidated Obligations under the Fairless Hills Lease, including, without

limitation, their current and future obligations to maintain the Fairless Hills Property and make repairs and replacements, as a condition to the assumption and assignment of the Fairless Hills Lease. *See* 11 U.S.C. § 365(b)(1).[5]

25.    The Kin Landlords object to the extent the Buyer seeks to assume the Fairless Hills Lease free and clear of any liquidated cure amounts or Unliquidated Obligations under the Fairless Hills Lease, including without limitation any obligations to satisfy unbilled or accrued taxes or other charges, reconciliations, or adjustments. Any order approving the assumption and assignment of the Fairless Hills Lease should make clear that all liquidated cure amounts must be paid at or prior to assumption and assignment and all Unliquidated Obligations under each respective lease shall survive, and that the Buyer shall take the Fairless Hills Lease subject to all of their respective terms and undertake to satisfy all monetary and all non-monetary obligations under the Fairless Hills Lease, regardless of whether such Unliquidated Obligations could be argued to have existed, occurred, or accrued prior to the assumption and assignment of the Fairless Hills Lease.

26.    A statement of liquidated cure amounts known by the Kin Landlords with respect to the Fairless Hills Lease is attached hereto as <u>Exhibit E</u>. Based on currently available information, the amounts set forth on Exhibit E must be paid to the Kin Landlords in connection with any proposed assumption of the Fairless Hills Lease. Such liquidated cure amounts, however, do not include any Unliquidated Obligations or all cure amounts that may become due and owing after the date hereof and prior to the time the Fairless Hills Lease is actually assumed and assigned, or any amounts that are currently unknown or undetermined by the Kin Landlords. Additionally, the results of any inspections that the Kin Landlords have conducted or may

---

[5] As just one example of significant ongoing repair and replacement obligations, the Fairless Hills Lease requires, *inter alia*, that the lessee keep the leased property in good order and repair, and that "[a]ll repairs shall, to the extent possible, be at least equivalent in quality to the original work." *See* Fairless Hills Lease at ¶ 12.1. This provision applies, among other things, to the roof at the Fairless Hills Property, a facility that exceeds two million square feet.

conduct at the Fairless Hills Lease may reveal additional cure amounts due. The Kin Landlords accordingly reserve the right to amend or supplement any statement of cure amount as necessary or appropriate under the circumstances, including without limitation to account for the result of any inspections, year-end adjustments which have not yet been billed or have not yet become due under the terms of the Fairless Hills Lease, amounts that become due and owing after the date hereof and prior to the time the Fairless Hills Lease are actually assumed and assigned, or amounts that the Kin Landlords become aware of after the date hereof.

27.    Inclusion of the following language in any order approving the assumption and assignment of the Fairless Hills Lease will resolve the "cure objection" portion of the Kin Landlords' Objection:

> Notwithstanding anything to the contrary in this Order, the Sale Order, the Assumption and Assignment Order, the Asset Purchase Agreement, or any other applicable order or agreement, as of the date on which the Kin Designated Leases become assumed and assigned leases, the Buyer shall have both the benefits and the burdens under the Kin Designated Leases, including those burdens for rent and other charges which have accrued as of the assignment date but are not yet due under the terms of such Kin Designated Leases (and thus are not payable as part of the prepetition cure amounts), including, but not limited to (i) any adjustments or reconciliations (including any year end adjustments or reconciliations) in respect of common area maintenance, insurance, taxes, and other charges and expenses that become due under the Kin Designated Leases; (ii) any percentage rent (if applicable) that becomes due under the Kin Designated Leases; (iii) any and all property taxes that become or are due and payable under the Kin Designated Leases, (iv) obligations relating to the maintenance, replacement, or repair of the premises, including but not limited to those related to environmental conditions, the roof, the parking lot, and the HVAC systems of the premises, and such deferred maintenance, replacement, and repair obligations that may have arisen or accrued or continued to accrue over a period of time, both before and after the assignment of the Kin Designated Leases, and (v) any indemnification obligations that become due under the Kin Designated Leases; provided that, nothing in this Order, the Sale Order, the Asset Purchase Agreement, or any other applicable order or agreement shall be deemed or construed to amend, modify or supplement the Kin Designated Leases. For the avoidance of doubt,

and notwithstanding anything to the contrary contained in this Order, the Sale Order, the Asset Purchase Agreement or any other applicable order or agreement, this Order shall not extinguish or affect any repair and maintenance obligations under the Kin Designated Leases, all of which shall survive the assumption and assignment of the Kin Designated Leases. All rights of the Buyer and their contract counter parties to each of the Kin Designated Leases with respect to such matters shall be reserved.

## II.    THE FAIRLESS HILLS LEASE CANNOT BE ASSUMED AND ASSIGNED "FREE AND CLEAR" OF THE RIGHT OF FIRST REFUSAL

28.    Fairsan objects to the assumption and assignment of the Fairless Hills Lease to the extent the Buyer or any applicable Transform Assignee seeks to assume such asset "free and clear" of Fairsan's right of first refusal under the Fairless Hills Lease. *See supra* ¶ 8.

29.    The *cum onere* principles applicable under section 365(b) of the Bankruptcy Code and discussed above apply with equal force here, and preclude any attempt by the Debtors or Buyer to strip away Fairsan's right of first refusal under the Fairsan Lease. The law is clear that assumption must occur "without any diminution in [debtor's] obligations or impairment of the rights of the lessor in the present or the future." *In re Texaco Inc.*, 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000). Reformation or modification of contracts through the assumption process is strictly prohibited. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *AGV Prods., Inc. v. Metro-Goldwyn-Mayer, Inc.*, 115 F. Supp. 2d 378, 391 (S.D.N.Y. 2000), *aff'd*, 37 F. App'x 555 (2d Cir. 2002) ("[The debtor] could not have assumed some of the provisions of an agreement and rejected others, because under the law of bankruptcy a contract cannot be assumed in part or rejected in part"); *Pieco, Inc. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.)*, 173 B.R. 844, 849 (S.D.N.Y. 1994) ("[U]nder Section 365 of the [Bankruptcy] Code, a debtor may not 'cherry pick' pieces of contracts it wishes to assume."); *see also Matter of E. Hampton Sand & Gravel Co., Inc.*, 25 B.R. 193, 198 (Bankr. E.D.N.Y. 1982) ("[E]quity will not countenance debtor's exercise of § 365 to relieve itself of conditions which are clearly

vested by the contracting parties as an essential part of their bargain and which do not contravene overriding federal policy).

30.     Accordingly, provisions in the Fairsan Lease concerning the right of first refusal must necessarily survive any assumption and assignment. *See In re IT Grp., Inc., Co.*, 302 B.R. 483, 488 (D. Del. 2003) (failure to recognize right of first refusal in bankruptcy sale context would unjustly "usurp a cognizable property right"); *see also In re E-Z Serve Convenience Stores, Inc.*, 289 B.R. 45, 49 (Bankr. M.D.N.C. 2003) (holding that where lease is assumed, right of first refusal is also assumed and stating that "[w]hen an executory contract or lease is assumed, it must be assumed *cum onere*, with all of its benefits and burdens.").

31.     Moreover, the Debtors and Buyer may not seek to avoid the application of section 365(b) of the Bankruptcy Code and established law that leases must be assumed *cum onere* by purporting to sell the Fairless Hills lease "free and clear" of the right of first refusal under section 363(f) of the Bankruptcy Code.  Even if applicable under the circumstances here (which Fairsan denies), section 363(f) would not permit the assignment of the Fairless Hills Lease free and clear of the right of first refusal because, *inter alia*, none of the conditions set forth in section 363(f)(1) - (5) can be satisfied:  (1) applicable nonbankruptcy law does not permit the sale of the Fairless Hills Lease free and clear of Fairsan's right of first refusal;[6] (2) Fairsan does not consent; (3) Fairsan's right of first refusal is not a lien; (4) Fairsan's right of first refusal is not in bona fide dispute; and (5) Fairsan cannot be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its right of first refusal.[7]  The Court should therefore not countenance any

---

[6] *Cf. Warden v. Taylor*, 333 A.2d 992, 923 (Pa. 1975) ("It is settled that contractual rights of first refusal to purchase realty may be enforced by a decree of specific performance.").

[7] *See Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994) (ruling that existence of possible equitable relief meant that the holder of the interest could not be compelled to accept a money satisfaction under section 365(f)(5) of the Bankruptcy Code); *Baylake Bank v. TCGC, LLC*, No. 08-C-608, 2008 WL 4525009, at *10 (E.D. Wis. Oct. 1, 2008) (holding that holder of a restrictive covenant against debtors' property could not be compelled to accept monetary compensation under section 363(f)(5) when "the restriction gives the [covenantee] a right to act that may be enforced through injunctive relief wholly apart from any monetary damages it may sustain."); *In re 523 E. Fifth St. Hous. Pres.*

attempt by the Debtors or the Buyer to use section 363 to circumvent the settled principles of law under section 365 of the Bankruptcy Code that contracts and leases be assumed, if at all, *cum onere*. *See generally, Cinicola v. Scharffenberger*, 248 F.3d 110, 124 (3d Cir. 2001) ("the sale of an executory contract triggers the protections afforded sales of the bankruptcy estate property but also requires satisfaction of the requirements for assuming and/or assigning the same executory contract").

32.     As set forth above, after receiving the Assumption/Assignment Notice designating the Fairless Hills Lease for assumption and assignment, Fairsan requested that the Debtors provide Fairsan, as required under the terms of the Fairless Hills Lease, with a Tenant Third-Party Offer that included the allocated purchase price for Kmart's leasehold interest paid by the Buyer under the APA, so that Fairsan could evaluate the offer and make a determination with respect to the exercise of its right of first refusal.  Because the Debtors have not yet responded to Fairsan's request or provided the requested information, Fairsan has made no determination regarding the exercise of its right of first refusal in connection with the proposed assumption and assignment, and the time for Fairsan to make such a determination under paragraph 4(a) of the First Amendment to Lease has not yet begun to run.  Fairsan thus continues to reserve all of its rights in connection with its right of first refusal, and objects to any order authorizing the assumption and assignment of the Fairless Hills Lease "free and clear" of Fairsan's right of first refusal, or that otherwise fails to provide that the Fairless Hills Lease is assumed *cum onere*, without any diminution in the lessee's obligations or impairment of any of Fairsan's rights under

---

*Dev. Fund Corp.*, 79 B.R. 568, 576 (Bankr. S.D.N.Y. 1987) (holder of restrictive covenant could not be compelled to accept money satisfaction for its interest).

the Fairless Hills Lease, whether applicable in the present or in connection with any future

proposed assignment. *In re Texaco Inc.*, 254 B.R. at 550.[8]

### III.    THE DEBTORS AND THE BUYER HAVE FAILED TO DEMONSTRATE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE BY TRANSFORM DISTRIBUTION CENTER HOLDCO LLC

33.    In connection with any lease to be assumed and assigned, the Asset Purchase

Agreement requires the Buyer to deliver adequate assurance of future performance within the

meaning of section 365 of the Bankruptcy Code and the Debtors are not obligated to assume and

assign any lease in which the Buyer fails to satisfy the Bankruptcy Court as to adequate

assurance of future performance.  Asset Purchase Agreement at ¶ 2.7.

34.    Sections 365(f)(2)(B) and 365(b)(1) of the Bankruptcy Code require that adequate

assurance of future performance by a proposed assignee be provided, whether or not there has

been a default under a contract or lease.  The Debtors and the Buyer have the burden of proving

adequate assurance of future performance with respect to the potential assumption and

assignment of the Fairless Hills Lease.  *In re Res. Tech. Corp.*, 624 F.3d 376, 384 (7th Cir. 2010)

("As the party seeking to become the assignee, the Trust had the burden of proving it met the

requirements of § 365(f)."); *In re C.W. Mining Co.*, No. ADV.09-2248, 2010 WL 458914, at *9

(Bankr. D. Utah Feb. 10, 2010) (stating the "[t]rustee has the burden to prove that the statutory

requirements for assumption and assignment have been met" under §§ 365(b)(1) and (f)(2)).

---

[8] As set forth above, although the Debtors have not responded to Fairsan's letter requesting information necessary to evaluate Fairsan's right of first refusal, the Buyer did respond and assert that Kmart is permitted to assume and assign the Fairless Hills Lease to the Buyer without providing a Tenant Third-Party Offer and an allocation of the purchase price to the Fairless Hills Lease pursuant to the APA, the Sale Order, and the Assumption and Assignment Order, as well as case law in which courts have determined that rights of first refusal are unenforceable when the exercise of such rights materially impairs the ability of the estate to realize value for its creditors.  For present purposes, it is sufficient to note that all issues relating to Fairsan's right of first refusal are expressly reserved under the Sale Order and the Assumption and Assignment Order.  Moreover, under the circumstances presented in this case, including the terms of the APA and the right of first refusal fee, any exercise of Fairsan's right of first refusal would not impair the estate's ability to realize value for its creditors, but rather would enhance it.

35.     The Assumption/Assignment Notice identifies Transform Distribution Center Holdco LLC as the ultimate assignee with respect to the Fairless Hills Lease.  The Debtors and the Buyer, however, have failed to provide the Kin Landlords with any – much less adequate – information concerning Transform Distribution Center Holdco LLC or its ability to perform under the Fairless Hills Lease.

36.     The Kin Landlords hereby reserve all rights with respect to Buyer's obligation to demonstrate adequate assurance of future performance, and leave the Debtors and Transform Distribution Center Holdco LLC to their burden of proving, *inter alia*, that the requirements of section 365(f)(2)(B) have been satisfied with respect to Transform Distribution Center Holdco LLC.

## IV.    THE FAIRLESS HILLS LEASE MUST BE ASSUMED AND ASSIGNED, IF AT ALL, SUBJECT TO ANY APPLICABLE RESTRICTIVE COVENANTS

37.     The Kin Landlords object to the assumption and assignment of the Fairless Hills Lease to the extent such assumption and assignment purports to be "free and clear" of any applicable Restrictive Covenants.  Although the Sale Order and the Assumption and Assignment Order reserved the opportunity of the Debtor and Buyer to seek the assumption and assignment of any real estate leases to which a Debtor is a party "free and clear of any Restrictive Covenant," *see* Sale Order at ¶ 59 and Assumption and Assignment Order at ¶ 26, such orders require, *inter alia*, that the applicable lease designation notice describe the Restrictive Covenant that the Debtor or Buyer is seeking to extinguish or otherwise diminish.

38.     In paragraph 18 of the Assumption/Assignment Notice, the Buyer asserts that it is seeking to assume and assign *all* of the Additional Designatable Leases identified in Exhibit 1 to the notice - which necessarily includes the Fairless Hills Lease - "free and clear" of Restrictive Covenants, but fails to identify or describe anywhere in the Assumption/Assignment Notice any specific Restrictive Covenant that Buyer seeks to extinguish.  At the same time, the Buyer

improperly attempts to shift the burden to the lease counterparties to object to its blanket assertion that any and all unidentified "Restrictive Covenants" may be extinguished:

> In accordance with paragraph 59 of the Sale Order and paragraph 26 of the Assumption and Assignment Order, Buyer intends to designate the Additional Designatable Leases for assumption and assignment free and clear of any interests, covenants or rights applicable to such real estate leases to the extent the same limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses or permits (collectively, "<u>Restrictive Covenants</u>") that are executory and do not run with the land. Counterparties to the Additional Designatable Leases shall file and serve any objections with respect to the immediately preceding sentence (a "<u>Restrictive Covenant Objection</u>") in accordance with the Amended Case Management Procedures so as to be filed and received no later than the Objection Deadline.

*See* Assumption/Assignment Notice at ⁋ 18.

39.    The Court should not countenance the Buyer's attempt to circumvent the provisions of the Sale Order and Assumption and Assignment Order by failing to identify the Restrictive Covenants it seeks to extinguish.  The Kin Landlords should not be required to guess whether there are any interests, covenants or rights applicable to any of the Fairless Hills Lease that fall within the defined category of "Restrictive Covenants," whether any such interests, covenants or rights might be subject to extinguishment, or whether Buyer in fact seeks to extinguish each and every such "Restrictive Covenant."   The Kin Landlords are entitled to specific notice of any purported Restrictive Covenants that the Buyer alleges may be subject to extinguishment.  In the absence of any such notice that identifies each Restrictive Covenant that the Buyer seeks to strip away, any order authorizing the assumption and assignment of the Fairless Hills Lease must make clear that, consistent with the *cum onere* principles under section

365(b) of the Bankruptcy Code, any applicable Restrictive Covenants remain in full force and effect and are in no way impaired or affected by the assignment.[9]

40.    The Kin Landlords expressly reserve the right to supplement this objection as necessary, and deny that the Buyer is permitted to extinguish Restrictive Covenants, if any, that may be applicable to the Kin Leases.  The Kin Landlords further deny that any such Restrictive Covenants may be stripped away in a summary proceeding by notice of intent to assume and assign, as Buyer purports to do here.  Instead, fundamental principles of due process require that the substantive legal issues implicated by the requested relief be addressed in the context of a separate adversary proceeding or contested matter.  *Cf. In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016) ("[T]he Court concludes that it cannot decide substantive legal issues, including whether the covenants at issue run with the land, in the context of a motion to reject, unless such motion is scheduled simultaneously with an adversary proceeding or contested matter to determine the merits of the substantive legal disputes related to the motion."), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018).

## V.    THE COURT SHOULD NOT WAIVE BANKRUPTCY RULES 6004(h) AND 6006(d) IN CONNECTION WITH ANY ORDER AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF THE FAIRLESS HILLS LEASE

41.    Any request for a waiver of Bankruptcy Rules 6004(h) and 6006(d) in connection with the entry of an order authorizing the assumption and assignment of the Fairless Hills Lease should be denied.  The Debtors and Buyer have failed to demonstrate, particularly under the circumstances presented, that there is any "business need" that requires a waiver of the 14-day

---

[9] Fairsan understands, based on the Buyer's response to Fairsan's letter to the Debtors requesting an allocation of the purchase price to the Fairless Hills Lease, that Buyer intends to assert that the right of first refusal is a Restrictive Covenant that may be extinguished or diminished.  Putting aside the Buyer's failure to describe the right of first refusal as a Restrictive Covenant in the Assumption/Assignment Notice (or any other interests, covenants or rights that Buyer seeks to extinguish or diminish in summary fashion without proper notice), the Buyer fails to provide any explanation or basis for its asserted belief that the right of first refusal, which by its terms runs with the land, *see* First Amendment to Lease at ¶ 4(c), is a Restrictive Covenant that may be extinguished or diminished.    Fairsan expressly reserves all rights to contest any assertion that the right of first refusal may be extinguished or diminished on any grounds.

automatic stay.  *See In re Borders Grp., Inc.*, 453 B.R. 477, 486 (Bankr. S.D.N.Y. 2011)
(quoting Collier on Bankruptcy).  The Debtors and Buyer have long since closed on the global
sale transaction, and fully understood and agreed that issues and objections regarding the
assumption and assignment of leases and other landlord-related matters would be deferred until a
later date.  Similarly, to the extent the Debtors and Buyer are seeking a good faith determination
under section 363(m) of the Bankruptcy Code in connection with any order authorizing the
assumption and assignment of the Fairless Hills Lease, such relief should also be denied under
the circumstances here, on the grounds that such a finding is not applicable to the issue now
before the Court – whether the proposed assumption and assignment of the Fairless Hills Lease
complies with section 365 of the Bankruptcy Code.

## <u>GENERAL RESERVATION OF RIGHTS</u>

42.    The Kin Landlords expressly reserve all of their respective rights under the
Fairless Hills Lease with respect to any and all obligations of the Debtors and/or any proposed
assignee as tenant, including without limitation the Kin Landlords' rights to claim any amounts
of rent, charges to compensate for monetary defaults, such as accrued real estate taxes, utility
charges that have been assessed against the Fairless Hills Property, unsatisfied liens on the
Fairless Hills Property created by the Debtors and/or the proposed assignee and/or insurance
premiums, and charges to compensate for non-monetary defaults, including without limitation all
maintenance, indemnification and environmental obligations of the Debtors and/or any proposed
assignee.

43.    The Kin Landlords further reserve all rights to raise further objections, as
necessary or appropriate under the circumstances, relating to any proposed assumption and
assignment of any Kin Leases, including without limitation any objections relating to the
obligations of the Debtors and/or any proposed assignee to cure any defaults under the Fairless

Hills Lease, and the ability of any proposed assignee to provide adequate assurance of future performance.

## JOINDER

44.    In addition to the foregoing, the Kin Landlords further join in the objections filed by Debtors' other landlords to the extent that such objections are not inconsistent with the relief requested in this Objection.

## CONCLUSION

WHEREFORE, the Kin Landlords hereby request that any order approving the assumption and assignment of the Fairless Hills Lease incorporate the objections and other relief requested herein and in the Supplemental Objections, and that they be granted such other or further relief as is just and appropriate under the circumstances.

Dated: New York, New York
        April 26, 2019                              **BLANK ROME LLP**

                                     By:    /s/ Evan J. Zucker
                                            Evan J. Zucker
                                            1271 Avenue of the Americas
                                            New York, NY 10020
                                            Telephone:    (212) 885-5000
                                            Facsimile:    (212) 885-5001
                                            Email:        EZucker@BlankRome.com

                                            -and-

                                            Jeffrey Rhodes (*admitted pro hac vice*)
                                            1825 Eye Street NW
                                            Washington, D.C. 20006
                                            Telephone:    (202) 420-3150
                                            Facsimile:    (202) 420-2201
                                            E-mail:       JRhodes@BlankRome.com

                                            *Attorneys for Kin Properties, Inc.; Aleff LLC; Arcolo*
                                            *Limited Partnership; Cansan Company, LLC;*
                                            *Fairsan Company LLC; Floreff LLC; Fundamentals*
                                            *Co LLC; Hareff LLC; Hillsborough Associates;*
                                            *Pasan Trust; Mantkin LLC; Musue LLC; Nathan*
                                            *Alison LLC; Sugencole LLC; Sugengran LLC; and*
                                            *Sugensteve LLC*