# Exhibit C

<u>Kin Property #3439 – Fairless Hills, PA</u>

<u>Kmart #8275</u>

## SECOND AMENDMENT TO LEASE

THIS SECOND AMENDMENT TO LEASE (the "Second Amendment") is made and entered into as of the 21st day of June, 2017 (the "Effective Date"), by and between FAIRSAN COMPANY, LLC, a Delaware limited liability company (the "Landlord"), and KMART CORPORATION, a Michigan corporation (the "Tenant").

### W I T N E S S E T H:

WHEREAS, Landlord (as successor-in-interest to Pennsylvania Mart Properties Corp.) and Tenant (as successor-in-interest to K Mart Enterprises of Pennsylvania, Inc.) are parties to that certain Lease dated as of March 20, 1975 (the "Original Lease"), together with Lease Supplement dated as of January 5, 1977 (the "Lease Supplement"), and that certain First Amendment to Lease dated March 31, 2017 (the "First Amendment") (the Original Lease, Lease Supplement and First Amendment are hereinafter collectively referred to as the "Lease"), whereby Landlord leases to Tenant, and Tenant leases from Landlord, the Leased Property, as defined in the Lease, situate in Falls Township, Bucks County, Pennsylvania, with an address of One Kresge Road, Falls Township, PA; and,

WHEREAS, Certain Landlord affiliate entities, Muffrey LLC, a Delaware limited liability company, and Fundamentals Company LLC, a Delaware limited liability company (collectively the "Landlord Affiliates"), and Tenant are parties to a lease agreement dated December 13th, 1976 (the "Sparks Lease") for certain real property located at 1400 S McCarran Boulevard, Sparks, Nevada (the "Sparks Property"), which includes an approximate 1,550,700 square foot building (the "Sparks Building").

WHEREAS, Landlord Affiliates and Tenant are parties to that certain litigation pertaining to the Sparks Lease in the United States District Court for the District of Nevada, Las Vegas Division, Case #2-16-CV-01661 (the "Sparks Litigation").

WHEREAS, in an effort to resolve certain disputes and controversies related to the Sparks Litigation, the parties to the Sparks Litigation, Landlord and certain affiliates of both Landlord and Tenant have all entered into that certain Confidential Settlement and Release Agreement of even date herewith, to which this Second Amendment is attached as an exhibit and incorporated therein (the "Settlement Agreement").

WHEREAS, the Settlement Agreement provides, among other terms and conditions, for the termination of the Sparks Lease and the turnover for possession of the Sparks Property to Landlord Affiliates on or about June 30, 2017.

WHEREAS, Landlord and Tenant desire to amend certain terms and conditions of the Lease as set forth herein and as required by the Settlement Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby agree as follows:

1.      <u>Incorporation of Recitals</u>.  The above recitals are true and correct and are incorporated herein as if set forth in full.

2.      <u>General Provisions</u>.  All defined terms in this Second Amendment shall have the same meaning as in the Lease, except as otherwise noted.  Except as amended and modified by this Second Amendment, all of the terms, covenants, conditions, and agreements of the Lease shall remain in full force and effect.  In the event of any conflict between the provisions of the Lease and the provisions of this Second Amendment, this Second Amendment shall control.

3.      <u>Settlement Rent</u>.  Notwithstanding anything to the contrary, commencing on the date that is the earlier of (i) Fifteen (15) Days from the Effective Date hereof, or (ii) July 1, 2017, in addition to the Basic Rent (as defined in the Lease) and all other rents due and payable as provided within the Lease, Tenant shall pay to Landlord during the term of the Lease the sum

of Three Million Five Hundred Thousand ($3,500,000.00) Dollars, payable in equal monthly installments, on or before the first day of each respective month, over a Forty-Two (42) month period (the "Settlement Rent"). The Forty-Two (42) month period during which Settlement Rent shall be paid by Tenant shall be referred to as the "Settlement Rent Period." Should the Settlement Rent Period commence on a day other than the first day of a month, then the first payment shall include a prorated portion for such partial month in addition to the first monthly installment payment. The Settlement Rent shall be deemed Additional Rent (as such term is defined within the Lease). In the event the Lease is terminated by mutual agreement of the parties prior to the expiration of the Settlement Rent Period, then (i) Tenant's obligation to pay Settlement Rent, and (ii) Landlord's obligation to provide Tenant with any Rental Credit (as subsequently defined herein), shall both terminate as of the termination date of the Lease.

4.      Credit against Settlement Rent Payments in Event of Reletting of Sparks Property. In the event that all or a portion of the Sparks Building shall be leased to a new tenant or tenants by Landlord Affiliates during the Settlement Rent Period, then the Tenant shall receive a credit against monthly payments of Settlement Rent thereafter coming due (the "Rental Credit"), to be calculated as follows: (i) during the period commencing on the execution of such new lease and expiring on the date that is one hundred twenty (120) days thereafter (each, a "New Sparks Lease Commencement Date"), Tenant shall receive a Rental Credit in the amount of the applicable gross rent per square foot collected by Landlord Affiliates pursuant to such lease during such period, not to exceed One ($1.00) Dollar per square foot of the Sparks Building so leased; and (ii) following the New Sparks Lease Commencement Date and continuing through the end of such new lease, Tenant shall receive a Rental Credit in the amount of the greater of (A) $0.64 Cents per square foot so leased or (B) the amount of the applicable gross rent per square foot collected by Landlord Affiliates pursuant to such lease during such period, not to exceed One ($1.00) Dollar per square foot of the Sparks Building so leased, all on an annual basis and divided over equal monthly installments, during the balance of the Settlement Rent Period. Notwithstanding anything to the contrary herein, the Rental Credit shall not exceed One ($1.00) Dollar per square foot (annually) leased within the Sparks Building by Landlord Affiliates. In the event the Rental Credit (not to exceed $1.00 per square foot annually) exceeds the monthly installment of Settlement Rent, Tenant shall be entitled to a reimbursement of a portion of the monthly installments of Settlement Rent previously paid by Tenant during the Settlement Rent Period. For purposes of this paragraph, gross rent shall include base rent, common area maintenance expenses and real estate taxes. For the sake of clarity, the following examples are herein provided:

     a.      Example 1: Assuming the Settlement Rent Period commences on July 1, 2017, then on such date Tenant shall be obligated to commence monthly payments of Settlement Rent in the amount of Eighty Three Thousand Three Hundred and Thirty-Three and 34/100 ($83,333.34) Dollars ($3.5 Million/42 Months). Then assume Landlord Affiliates enter into a new lease for One Hundred Thousand (100,000) square feet of space within the Sparks Building at a gross rent of Two ($2.00) Dollars per square foot on January 1, 2018. In the event such respective rent commencement date falls within one hundred twenty (120) days after January 1, 2018, Tenant shall receive a Rental Credit equal to One Hundred Thousand ($100,000.00) Dollars annually commencing on such rent commencement date, which would result in a credit of Eight Thousand Three Hundred Thirty-Three and 34/100 ($8,333.34) Dollars per month ($1.00 per 100,000 sf, annually, amortized over 12 monthly payments), reducing Tenant's monthly payment of Settlement Rent to Seventy-Five Thousand ($75,000.00) Dollars ($83,333.34 less credit of $8,333.34) from the rent commencement date until the earlier to occur of (i) the expiration of such new lease, or (ii) the expiration of the Settlement Rent Period. In the event the actual rent commencement date under the lease falls beyond the one hundred twenty (120) days following the execution of the new lease, then, Tenant shall receive a Rental Credit equal to Five Thousand Three Hundred Thirty-Three and 34/100 ($5,333.34) Dollars (which is the monthly installment of Rental Credit equal to $0.64 x 100,000 sf annually) on a monthly basis for the period commencing on the one hundred twenty first (121st) day after execution of the new lease through the date Landlord begins collecting rent from the new tenant, and the Rental Credit shall increase to Eight Thousand Three Hundred Thirty-Three and 34/100 ($8,333.34) Dollars per month on such actual rent commencement date. Such Rental Credit installments would expire upon the earlier to occur of (i) the expiration of such new lease, or (ii) expiration of the Settlement Rent Period.

     b.      Example 2: In the event that Landlord Affiliates relet One Hundred Thousand (100,000) square feet within the Sparks Building for a gross rent of Sixty ($0.60) Cents per square foot annually, then assuming such rent shall commence Thirty (30) days from the date such lease is executed Tenant shall be entitled to a Rental Credit of Sixty Thousand ($60,000.00) Dollars annually, which is Five Thousand ($5,000.00) Dollars monthly, commencing on the rent commencement date and expiring 120 days following the execution date of the lease (100,000 sf X $0.60/12 months). Then commencing on the date that is 121 days following the execution of the lease, the Rental Credit shall be Sixty-Four Thousand ($64,000.00) Dollars annually, which is Five Thousand Three Hundred Thirty-Three and 34/100 ($5,333.34) Dollars monthly (100,000 sf X $.64/12 months). The Rental Credits would be deducted from the monthly payments of Settlement Rent due, resulting in monthly payments by Tenant of Seventy-Eight Thousand Three Hundred Thirty-Three and 34/100 ($78,333.34) Dollars ($83,333.34 -

-2-

$5,000) during the first 120 days after the execution date of the lease, and monthly payments of Seventy-Eight Thousand ($78,000.00) Dollars ($83,333.34 - $5,333.34) thereafter until the earlier to occur of (i) the expiration of such new lease, or (i) the expiration of the Settlement Rent Period. Provided, however, that the Rental Credit and Tenant's monthly installments of Settlement Rent shall be adjusted (never to exceed $1.00 per square foot annually) if and when the gross rent increases under such new lease during the Settlement Rent Period.

    c.    Example 3: Assuming (i) the Settlement Rent Period commences on July 1, 2017 and (ii) on July 1, 2018 Landlord Affiliates enter into a new lease for one million two hundred thousand (1,200,000) square feet of space within the Sparks Building at a gross rent of Two ($2.00) Dollars per square foot, and (iii) the rent commencement date occurs one hundred twenty (120) days after the execution of the new lease, then (1) Tenant shall receive a Rental Credit equal to One Million Two Hundred Thousand ($1,200,000.00) Dollars annually commencing on such rent commencement date, which would result in a credit of One Hundred Thousand ($100,000.00) Dollars per month ($1.00 per 1,200,000 square feet, annually, amortized over 12 monthly payments), reducing Tenant's monthly payment of Settlement Rent to Zero ($0.00) for the balance of the Settlement Rent Period and (2) Tenant shall be entitled to a reimbursement in the amount of Four Hundred Thirty Three Thousand Three Hundred Thirty Three and 16/100 ($433,333.16) Dollars against Settlement Rent previously paid by Tenant for such excess Rental Credit owed by Landlord ($433,333.16 being the total sum of 26 payments of the difference between $100,000.00 collected by Landlord and $83,333.34 owed by Tenant).

5.    <u>Credit of Settlement Rent Payments in Event of Sale of Sparks Property</u>. Tenant shall receive a credit against monthly payments of Settlement Rent in the event that Landlord Affiliates sell the Sparks Property and such purchase and sale agreement is executed prior to December 31, 2020 (the "Sale Credit"). The Sale Credit shall be calculated as follows: Following closing on the sale of the Sparks Property, then Tenant shall receive a credit against Settlement Rent equal to Fifty-Five (55%) Percent of the net sale price (net of typical closing costs, repair and renovation expenses not to exceed $0.50 per square foot, and applicable brokerage fees) in excess of Thirty-One Million Fourteen Thousand ($31,014,000.00) Dollars (based on Twenty ($20.00) Dollars per square foot of the Sparks Building). The Sale Credit shall be applied against the monthly installments of Settlement Rent as and when such payments become due from and after the closing date of the sale, provided Tenant shall be entitled to reimbursement in the amount of the remaining balance of the Sale Credit should the full amount of the Sale Credit not be realized prior to the expiration of the Settlement Rent Period. Notwithstanding anything to the contrary herein, the Sale Credit shall under no circumstances exceed the sum of Three Million Five Hundred Thousand ($3,500,000.00) Dollars. For the sake of clarity, the following examples are herein provided:

    a.    Example 4: Assuming that the Settlement Rent Period commences on July 1, 2017, then in the event that Landlord Affiliates have executed a purchase and sale agreement on September 1, 2017 (which meets the requirement of being executed prior to December 31, 2020) and the closing on the sale of the Sparks Property occurs on January 1, 2018 for a net sale price of Thirty-Eight Million Seven Hundred Sixty-Seven Thousand Five Hundred ($38,767,500.00) Dollars, then a Sale Credit of Four Million Two Hundred Sixty-Four Thousand Four Hundred Twenty-Five ($4,264,425.00) Dollars [55% of ($38,767,500.00 - $31,014,000.00)] shall be amortized over the Forty Two (42) Month Settlement Rent Period, which would reduce Tenant's monthly payment of Settlement Rent to Zero ($0.00) (because the available Sale Credit would be sufficient to offset the entire monthly amount of Settlement Rent owed), and Landlord shall reimburse Tenant at closing in the amount of Five Hundred Thousand ($500,000.00) Dollars for the amount of the Sale Credit not realized by Tenant during the first six months of the Settlement Rent Period ($83,333.34 x 6). Assuming the closing on the sale of the Sparks Property in this example does not occur until sometime after the expiration of the Settlement Rent Period, Landlord shall reimburse Tenant at the time of closing in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000.00) for the amount of the Settlement Rent previously paid by Tenant during the Settlement Rent Period.

    b.    Example 5: Assuming that the Settlement Rent Period commences on July 1, 2017, then in the event that Landlord Affiliates have executed a purchase and sale agreement on September 1, 2017 (which meets the requirement of being executed prior to December 31, 2020) and the closing on the sale of the Sparks Property occurs on January 1, 2018, for a net sale price of Thirty-Two Million Five Hundred Sixty-Four Thousand Seven Hundred ($32,564,700.00) Dollars, then a Sale Credit of approximately Eight Hundred Fifty-Two Thousand Eight Hundred Eighty-Five ($852,885.00) Dollars [55% of ($32,564,700.00 - $31,014,000.00)] shall be amortized over the remaining Thirty Six (36) Months of the Settlement Rent Period, which would reduce Tenant's remaining monthly payments of Settlement Rent to Fifty-Nine Thousand Six Hundred Forty-Two and 09/100 ($59,642.09) Dollars ($83,333.34 less $23,691.25).

    c.    Example 6: Assuming the Settlement Rent Period commences on July 1, 2017, then in the event that Landlord Affiliates have executed a purchase and sale agreement on January 31, 2020 (which meets the requirement of being executed prior to December 31, 2020) and the closing on the sale of the Sparks Property occurs on June 30, 2020, for a net

-3-

sale price of Thirty-Eight Million Seven Hundred Sixty-Seven Thousand Five Hundred ($38,767,500.00) Dollars, which would result in a Sale Credit in excess of Three Million Five Hundred Thousand ($3,500,000.00) Dollars (approximately $4,264,425.00), then at such closing Landlord shall reimburse Tenant the sum of Three Million ($3,000,000.00) Dollars (comprised of approximate sum of Settlement Rent paid by Tenant up to such closing date/36 payments of $83,333.34), and no further monthly installments of Settlement Rent would be payable by Tenant following such closing date.

Notwithstanding anything to the contrary herein, in the event that the Sparks Property is relet before it is sold, Tenant would be entitled to the greater of the Rental Credit or the Sale Credit, but not both, and under no circumstances shall total credits exceed the Settlement Rent.

6.     Right of First Refusal Fee. The "Right of First Refusal Fee" as defined in Section 5 of the First Amendment shall be reduced to the sum of Two Hundred Fifty Thousand ($250,000.00) Dollars.

7.     Landlord to Advise Tenant of Bona Fide Offers for the Lease or Sale of the Sparks Property. Landlord shall provide copies via email to Tenant of any and all bona fide written offers, and shall endeavor to provide notice of any bona fide oral offers for the purchase or lease of the Sparks Property, within a reasonable period of time of Landlord Affiliates' receipt of such offers, and Landlord shall further promptly provide Tenant with notice of any actual lease or sale of the Sparks Property, which notice shall include a computation of the applicable Rental Credit or Sale Credit. The parties acknowledge that Landlord and the Landlord Affiliates share common beneficial ownership and each of Landlord and Landlord Affiliates derive substantial benefit from Landlord and the Landlord Affiliates entering into the Settlement Documents (as hereinafter defined), including, without limitation, this Second Amendment. Such emailed notice and offers shall be forwarded to Michael Dunne at the following email address:   Michael.Dunne@searshc.com (Phone #847-286-4927).  Tenant may designate a new email address from time to time by providing formal written notice of such change to Landlord via fed ex or similar overnight delivery service to: Kin Properties, Inc., Attn: General Counsel, 185 NW Spanish River Blvd., Suite 100, Boca Raton, FL 33431.

8.     Commerically Reasonable Efforts. The parties acknowledge that, while the owners of the Sparks Property are required to use commercially reasonable efforts to relet or sell the Sparks Property and to give good faith consideration to any offers received to relet or sell the Sparks Property, they are not required to execute any lease for any portion of the Sparks Building, or to enter into any contract for sale that is not acceptable to such owners in their sole and absolute discretion, and Tenant shall have no approval rights related thereto.

9.     Memorandum of Amendment to Lease. Simultaneously with the execution and delivery of this Second Amendment, Landlord and Tenant will execute and deliver a Memorandum of Second Amendment to Lease in the form of Exhibit "A" attached hereto and made a part hereof (the "Memorandum of Second Amendment to Lease"). Each of Landlord and Tenant shall be permitted, at such party's option and expense, to record the Memorandum of Second Amendment to Lease at any time after the date of this Second Amendment (prior to the expiration or earlier termination of the Lease (as modified hereby).

10.    Brokerage. Landlord and Tenant each represent and warrant one to the other that neither of them has employed any broker in connection with the negotiations of the terms of this Second Amendment or the execution hereof. Landlord and Tenant hereby agree to indemnify and to hold each other harmless against any loss, expense, or liability with respect to any claims for commissions or brokerage fees arising from or out of any breach of the foregoing representation and warranty.

11.    Entire Agreement. The Lease, as modified by this Second Amendment and together with the Settlement Agreement and the documents executed in conjunction with this Second Amendment and/or the Settlement Agreement (collectively, the "Settlement Documents"), sets forth the entire agreement between the Landlord and Tenant concerning the Leased Property and Tenant's use and occupancy thereof and there are no other agreements or understandings between them. Landlord and Tenant acknowledge that this Second Amendment has been entered into as part of an integrated transaction contemplated by the Settlement Agreement, and a portion of the valuable consideration to each of Landlord and Tenant for entering into and performing this Second Amendment was the other party's (and its affiliates') execution of the Settlement Documents, and by the execution of this Second Amendment, Landlord and Tenant confirm that such execution has been fully completed and such Settlement Documents are fully effective.

12.    Counterparts; Facsimile. This Second Amendment may be executed in counterparts, each of which shall constitute an original and all of which together shall constitute one and the same agreement. This Second Amendment may be executed

-4-

by facsimile or e-mail signature which shall, for all purposes, serve as an original executed counterpart of this Second Amendment.

[signatures on next page]

IN WITNESS WHEREOF, Landlord and Tenant have executed this Second Amendment as of the day and year first above written.

**LANDLORD:**

**FAIRSAN COMPANY, LLC,** a Delaware limited liability company

By: Kinsan Management Corp., a Delaware corporation, its Manager

By: _____
Name: JEFFREY GANDELMAN
Its: PRESIDENT


**TENANT:**
**KMART CORPORATION**, a Michigan corporation

By: _____
Name: JoAnn Catanese
Its: DVP, Real Estate

[Stamp: REAL ESTATE LEGAL]

-6-

EXHIBIT "A"

FORM MEMORANDUM OF AMENDMENT TO LEASE

MEMORANDUM OF SECOND AMENDMENT TO LEASE

This Document Prepared By and
Upon Recordation Return to:
Fairsan Company, LLC
c/o Kin Properties Inc.
185 N.W. Spanish River Boulevard, Suite 100
Boca Raton, FL 33431
Attention:    General Counsel

### MEMORANDUM OF SECOND AMENDMENT TO LEASE

THIS MEMORANDUM OF SECOND AMENDMENT TO LEASE ("Memorandum") is made as of the __ day of __, 2017, by and between FAIRSAN COMPANY, LLC, a Delaware limited liability company (collectively, "Landlord"), and KMART CORPORATION, a Michigan corporation ("Tenant").

WITNESSETH:

Landlord (as successor-in-interest to Pennsylvania Mart Properties Corp.) and Tenant (as successor-in-interest to K Mart Enterprises of Pennsylvania, Inc.) are parties to that certain Lease dated as of March 20, 1975 (the "Original Lease"), together with Lease Supplement dated as of January 5, 1977 (the "Lease Supplement"), and that certain First Amendment to Lease dated March 31, 2017 (the "First Amendment") (the Original Lease, Lease Supplement and First Amendment hereinafter collectively referred to as the "Lease"), whereby Landlord leases to Tenant, and Tenant leases from Landlord, the Leased Property, as defined in the Lease, situate in Falls Township, Bucks County, Pennsylvania, with an address of One Kresge Road, Falls Township, PA and more particularly described on Exhibit "A" attached hereto and made a part hereof. A Memorandum of Lease was recorded in Deed Book 2156, Page 602 in the Bucks County, PA Recorders Office on April 4, 1975, and Memorandum of Amendment to Lease recorded as instrument no. 2017023244 in the Bucks County, PA Recorders Office on April 24, 2017.

Landlord and Tenant have entered into a Second Amendment to Lease dated herewith (the "Second Amendment") whereby, among other things, the parties agreed to increase Tenant's rental obligations by incorporating the payment of additional sums on a monthly basis referred to therein as Settlement Rent, and for certain credits against such Settlement Rent as provided therein. The parties confirm that the Term of the Lease has not been extended by the Second Amendment.

This Memorandum is for informational purposes only and nothing contained herein shall be deemed to in any way modify or otherwise affect any of the terms and conditions of the Lease (as modified by the Second Amendment), the terms of which are incorporated herein by reference. This instrument is merely a memorandum of the Second Amendment and is subject to all of the terms, provisions and conditions of the Lease (as modified by the Second Amendment). In the event of any inconsistency between the terms of the Lease (as modified by the Second Amendment) and this instrument, the terms of the Lease (as modified by the Second Amendment) shall prevail.

The rights and obligations set forth herein shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

This instrument may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature or acknowledgement of, or on behalf of, each party, or that the signature of all persons required to bind any party, or the acknowledgement of such party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this instrument to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, and the respective acknowledgements of, each of the parties hereto. Any signature or acknowledgement page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures or acknowledgements thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature or acknowledgement pages.

**IN WITNESS WHEREOF,** the parties have executed this Memorandum of Lease as of the day and year first above written.

        **LANDLORD:**

        FAIRSAN COMPANY, LLC, a Delaware limited liability company

        By:    Kinsan Management Corp., a Delaware corporation, its Manager

                By:_____
                Name: _____
                Title: _____

STATE OF FLORIDA      )
                              ) ss:
COUNTY OF PALM BEACH  )

        The foregoing instrument was acknowledged before me this \_\_ day of \_\_ in the year 2017 by _____, as _____ of Kinsan Management Corp., a Delaware corporation, on behalf of the corporation, as Manager of Fairsan Company, LLC, a Delaware limited liability company, on behalf of the limited liability company. He is personally known to me or has produced a driver's license as identification.

        Notary: _____
        State of Florida
        My commission expires:_____

**TENANT:**

KMART CORPORATION, a Michigan corporation

By: _____
Name: _____
Title: _____

STATE OF _____ )
                                   ) ss:
COUNTY OF _____ )

        The foregoing instrument was acknowledged before me this __ day of __ in the year 2017 by _____, as _____ of KMART CORPORATION, a Michigan corporation, on behalf of the corporation. She/He is personally known to me or has produced a driver's license as identification.

        Notary: _____
        State of _____
        My commission expires: _____

EXHIBIT "A" TO MEMORANDUM OF AMENDMENT TO LEASE

LEGAL DESCRIPTION OF LEASED PROPERTY

### One Kresge Drive, Fairless Hills (Morrisville), Pennsylvania

ALL THAT CERTAIN piece or parcel of ground situate in Falls Township, Bucks County, Pennsylvania and described according to a Plan of Property of "96.218 Acres Subdivision in Penn Warner Park" made by Yerkes Associates, Inc. dated 9/23/1974, as follows, to wit:

BEGINNING at a point on the North side of Tyburn Road (120.00 feet wide) L.R. 09136, marking the Southeast corner of the subject tract; said point being the seven following courses and distances measured along the said North side line of Tyburn Road from the end of a radius round corner, having a radius of 75.00 feet on the West side of Newbold Road (100.00 feet wide): (1) South 66 degrees 08 minutes 53 seconds West 770.10 feet to a point of curve; (2) on a line curving to the right with a radius of 153.43 feet, the arc distance of 52.09 feet to a point of tangent; (3) South 85 degrees 34 minutes West 98.48 feet to a point; (4) South 04 degrees 26 minutes East 10.00 feet to a point; (5) South 85 degrees 34 minutes West 200.00 feet to a point; (6) South 04 degrees 26 minutes East 10.00 feet to a point; (7) South 85 degrees 34 minutes West 224.75 feet to said beginning point; thence from said beginning point along the North side line of said Tyburn Road, the two following courses and distances: (1) South 85 degrees 34 minutes West 2139.49 feet to a point of curve; (2) on a line curving to the right with a radius of 3009.55 feet, the arc distance of 352.31 feet to a point; thence partly by lands now or late of Chester Glenn and Thomas R. Owens, partly by land now or late of Marie Pellegrinni the three following courses and distances: (1) North 00 degrees 06 minutes West 107.32 feet to a point; (2) South 87 degrees 14 minutes West 160.00 feet to a point; (3) North 18 degrees 25 minutes West 905.94 feet to a point; thence by land now or late of Casper Beffert, North 44 degrees 53 minutes 57 seconds West 642.28 feet to a point; thence by other land now or late of Warner Company, of which this is a part, the following five courses and distances: (1) North 85 degrees 34 minutes East, partly along the South side line of a proposed road (60.00 feet wide) 3173.56 feet to a point of radius round corner at the intersection of another proposed road (60.00 feet wide); (2) on a line curving to the right with a radius of 45.00 feet, the arc distance of 70.69 feet to a point of tangent; (3) South 04 degrees 26 minutes East, along the West side line of a proposed road (60.00 feet wide) 871.21 feet to a point; (4) thence crossing said proposed road, North 85 degrees 34 minutes East 60.00 feet to a point; (5) South 04 degrees 26 minutes East 583.79 feet to the place of beginning.

CONTAINING 96.218 acres be the same more or less.

BEING COUNTY PARCEL NUMBERS 13-28-62-1 and 13-28-58-1

BEING the same premises which Pennsylvania Mart Limited Partnership by Deed dated 1/23/1998 and recorded in Bucks County in Land Record Book 1540 page 1959 conveyed unto Chester KM Penn LLC, a Delaware limited liabilty company in fee.

*#3439 Fairless Hills, PA*
*Lease - KMart*

## BUCKS COUNTY RECORDER OF DEEDS
### 55 East Court Street
### Doylestown, Pennsylvania  18901
### (215) 348-6209

Instrument Number - 2017038970
Recorded On 7/3/2017 At 11:20:42 AM                    * Total Pages - 5
* Instrument Type - DEED AGREEMENT - NO PROPERTY TRANSFER
  Invoice Number - 880900         User - JLC
* Grantor - FAIRSAN CO L L C
* Grantee - KMART CORP
* Customer - KIN PROP INC
* FEES
  RECORDING FEES         $78.00
  TOTAL PAID             $78.00

Bucks County UPI Certification
On July 3, 2017 By LA

**This is a certification page**

# DO NOT DETACH

**This page is now part
of this legal document.**

**RETURN DOCUMENT TO:**
KIN PROP INC

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.



Joseph J. Szafran, Jr.
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

132433

FORM MEMORANDUM OF AMENDMENT TO LEASE

MEMORANDUM OF SECOND AMENDMENT TO LEASE

This Document Prepared By and
Upon Recordation Return to:
Fairsan Company, LLC
c/o Kin Properties Inc.
185 N.W. Spanish River Boulevard, Suite 100
Boca Raton, FL 33431
Attention:     General Counsel

## MEMORANDUM OF SECOND AMENDMENT TO LEASE

    June THIS MEMORANDUM OF SECOND AMENDMENT TO LEASE ("Memorandum") is made as of the 21st day of __, 2017, by and between FAIRSAN COMPANY, LLC, a Delaware limited liability company (collectively, "Landlord"), and KMART CORPORATION, a Michigan corporation ("Tenant").

WITNESSETH:

    Landlord (as successor-in-interest to Pennsylvania Mart Properties Corp.) and Tenant (as successor-in-interest to K Mart Enterprises of Pennsylvania, Inc.) are parties to that certain Lease dated as of March 20, 1975 (the "Original Lease"), together with Lease Supplement dated as of January 5, 1977 (the "Lease Supplement"), and that certain First Amendment to Lease dated March 31, 2017 (the "First Amendment") (the Original Lease, Lease Supplement and First Amendment hereinafter collectively referred to as the "Lease"), whereby Landlord leases to Tenant, and Tenant leases from Landlord, the Leased Property, as defined in the Lease, situate in Falls Township, Bucks County, Pennsylvania, with an address of One Kresge Road, Falls Township, PA and more particularly described on Exhibit "A" attached hereto and made a part hereof. A Memorandum of Lease was recorded in Deed Book 2156, Page 602 in the Bucks County, PA Recorders Office on April 4, 1975, and Memorandum of Amendment to Lease recorded as instrument no. 2017023244 in the Bucks County, PA Recorders Office on April 24, 2017.

    Landlord and Tenant have entered into a Second Amendment to Lease dated herewith (the "Second Amendment") whereby, among other things, the parties agreed to increase Tenant's rental obligations by incorporating the payment of additional sums on a monthly basis referred to therein as Settlement Rent, and for certain credits against such Settlement Rent as provided therein. The parties confirm that the Term of the Lease has not been extended by the Second Amendment.

    This Memorandum is for informational purposes only and nothing contained herein shall be deemed to in any way modify or otherwise affect any of the terms and conditions of the Lease (as modified by the Second Amendment), the terms of which are incorporated herein by reference. This instrument is merely a memorandum of the Second Amendment and is subject to all of the terms, provisions and conditions of the Lease (as modified by the Second Amendment). In the event of any inconsistency between the terms of the Lease (as modified by the Second Amendment) and this instrument, the terms of the Lease (as modified by the Second Amendment) shall prevail.

    The rights and obligations set forth herein shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

    This instrument may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature or acknowledgement of, or on behalf of, each party, or that the signature of all persons required to bind any party, or the acknowledgement of such party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this instrument to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, and the respective acknowledgements of, each of the parties hereto. Any signature or acknowledgement page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures or acknowledgements thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature or acknowledgement pages.

Second Amendment to Lease - Fairless Hills v5 (6-20).docx

**IN WITNESS WHEREOF,** the parties have executed this Memorandum of Lease as of the day and year first above written.

**LANDLORD:**

FAIRSAN COMPANY, LLC, a Delaware limited liability company

By: Kinsan Management Corp., a Delaware corporation, its Manager

By: _____
Name: JEFFREY SANDELMAN
Title: PRESIDENT

STATE OF FLORIDA           )
                           ) ss:
COUNTY OF PALM BEACH       )

The foregoing instrument was acknowledged before me this 21st day of June in the year 2017 by Jeffrey Sandelman, as President of Kinsan Management Corp., a Delaware corporation, on behalf of the corporation, as Manager of Fairsan Company, LLC, a Delaware limited liability company, on behalf of the limited liability company. He is personally known to me or has produced a driver's license as identification.

Notary: Anne Tinari
State of Florida
My commission expires: 03-30-2018

[Notary seal: ANNE TINARI, MY COMMISSION EXPIRES March 30, 2018, #FF 073814, Bonded thru Troy Fain - Insurance, NOTARY PUBLIC, STATE OF FLORIDA]

Second Amendment to Lease - Fairless Hills v5 (6-20).docx

-2-

**TENANT:**

KMART CORPORATION, a Michigan corporation

By: _JoAnn Catanese_
Name: _JoAnn Catanese_
Title: _DVP, Real Estate_

[REAL ESTATE LEGAL stamp]

STATE OF _Illinois_        )
                           ) ss:
COUNTY OF _Cook_           )

The foregoing instrument was acknowledged before me this _21st_ day of _June_ in the year 2017 by _JoAnn Catanese_ as _DVP_ of KMART CORPORATION, a Michigan corporation, on behalf of the corporation. She/He is personally known to me or has produced a driver's license as identification.

Notary: _Paula M Sabino_
State of _Illinois_
My commission expires: _5/18/21_

OFFICIAL SEAL
PAULA M SABINO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/18/21

-3-

Second Amendment to Lease - Fairless Hills v5 (6-20).docx

EXHIBIT "A" TO MEMORANDUM OF AMENDMENT TO LEASE

LEGAL DESCRIPTION OF LEASED PROPERTY

## One Kresge Drive, Fairless Hills (Morrisville), Pennsylvania

ALL THAT CERTAIN piece or parcel of ground situate in Falls Township, Bucks County, Pennsylvania and described according to a Plan of Property of "96.218 Acres Subdivision in Penn Warner Park" made by Yerkes Associates, Inc. dated 9/23/1974, as follows, to wit:

BEGINNING at a point on the North side of Tyburn Road (120.00 feet wide) L.R. 09136, marking the Southeast corner of the subject tract; said point being the seven following courses and distances measured along the said North side line of Tyburn Road from the end of a radius round corner, having a radius of 75.00 feet on the West side of Newbold Road (100.00 feet wide): (1) South 66 degrees 08 minutes 53 seconds West 770.10 feet to a point of curve; (2) on a line curving to the right with a radius of 153.43 feet, the arc distance of 52.09 feet to a point of tangent; (3) South 85 degrees 34 minutes West 98.48 feet to a point; (4) South 04 degrees 26 minutes East 10.00 feet to a point; (5) South 85 degrees 34 minutes West 200.00 feet to a point; (6) South 04 degrees 26 minutes East 10.00 feet to a point; (7) South 85 degrees 34 minutes West 224.75 feet to said beginning point; thence from said beginning point along the North side line of said Tyburn Road, the two following courses and distances: (1) South 85 degrees 34 minutes West 2139.49 feet to a point of curve; (2) on a line curving to the right with a radius of 3009.55 feet, the arc distance of 352.31 feet to a point; thence partly by lands now or late of Chester Glenn and Thomas R. Owens, partly by land now or late of Marie Pellegrinni the three following courses and distances: (1) North 00 degrees 06 minutes West 107.32 feet to a point; (2) South 87 degrees 14 minutes West 160.00 feet to a point; (3) North 18 degrees 25 minutes West 905.94 feet to a point; thence by land now or late of Casper Beffert, North 44 degrees 53 minutes 57 seconds West 642.28 feet to a point; thence by other land now or late of Warner Company, of which this is a part, the following five courses and distances: (1) North 85 degrees 34 minutes East, partly along the South side line of a proposed road (60.00 feet wide) 3173.56 feet to a point of radius round corner at the intersection of another proposed road (60.00 feet wide); (2) on a line curving to the right with a radius of 45.00 feet, the arc distance of 70.69 feet to a point of tangent; (3) South 04 degrees 26 minutes East, along the West side line of a proposed road (60.00 feet wide) 871.21 feet to a point; (4) thence crossing said proposed road, North 85 degrees 34 minutes East 60.00 feet to a point; (5) South 04 degrees 26 minutes East 583.79 feet to the place of beginning.

CONTAINING 96.218 acres be the same more or less.

BEING COUNTY PARCEL NUMBERS 13-28-62-1 and 13-28-58-1

BEING the same premises which Pennsylvania Mart Limited Partnership by Deed dated 1/23/1998 and recorded in Bucks County in Land Record Book 1540 page 1959 conveyed unto Chester KM Penn LLC, a Delaware limited liabilty company in fee.