**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
Jeffrey Rhodes (*admitted pro hac vice*)
Evan J. Zucker

*Attorneys for Kin Properties, Inc.; Aleff LLC; Arcolo
Limited Partnership; Cansan Company, LLC; Fairsan
Company LLC; Floreff LLC; Fundamentals Co LLC;
Hareff LLC; Hillsborough Associates; Pasan Trust;
Mantkin LLC; Musue LLC; Nathan Alison LLC;
Sugencole LLC; Sugengran LLC; and Sugensteve LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION, *et al.*,** | : | **Case No. 18-23538 (RDD)** |
| | : | |
| **Debtors.[1]** | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------- x

## SUPPLEMENTAL OBJECTION OF
## THE KIN LANDLORDS WITH RESPECT TO NOTICE OF
## ASSUMPTION AND ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Kin Properties, Inc. ("Kin Properties") and Aleff LLC; Arcolo Limited Partnership; Fairsan Company LLC; Floreff LLC; Fundamentals Co LLC; Hareff LLC; Hillsborough Associates; Pasan Trust; Musue LLC; Sugencole LLC; Sugengran LLC; and Sugensteve LLC (collectively, and together with Kin Properties, the "Kin Landlords") hereby file this supplemental objection (the "Objection") in response to the *Notice of Assumption and Assignment of Additional Designatable Leases* [ECF No. 3298] (the "Assumption/Assignment Notice"), and to supplement the Kin Landlords' previously filed objections [ECF Nos. 1930, 2261, 2809] (the "Supplemental Objections"), regarding the assumption and assignment of the Kin Leases (as defined herein). In support of this Objection, the Kin Landlords respectfully state as follows:

## BACKGROUND

1.      Beginning on October 15, 2018 (the "Petition Date") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Kin Landlords are the owners or managing agents for the owners of numerous single-tenant (and some multi-tenant) retail and industrial properties located throughout the United States and in Canada. Pursuant to certain leases (each a "Kin Lease" and together the "Kin Leases"), one or more of the Debtors lease or occupy real property in which one or more of the Kin Landlords hold interests for the locations identified on Exhibit A hereto. The Kin Leases were as of the Petition Date, and continue to be, unexpired leases of non-residential real property.

3.      On January 18, 2019, the Debtors filed the *Notice of Successful Bidder and Sale Hearing* (the "Sale Transaction Notice") [ECF No. 1730], attaching the executed asset purchase

agreement between the Debtors and Transform Holdco, LLC, an affiliate of ESL Investments, Inc. ("Buyer"), dated January 17, 2019 (the "Asset Purchase Agreement"). Pursuant to the terms of the Asset Purchase Agreement, the Debtors seek to sell "Acquired Assets," including "Acquired Lease Rights," free and clear of any and all "Encumbrances." *See* Asset Purchase Agreement at ¶¶ 1.1 (Definitions) and 2.1 (Purchase and Sale of the Acquired Assets).

4.      On January 18, 2019, the Debtors also filed the *Notice of Cure Costs and Potential Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1731] (the "Initial Notice").  In response to the Initial Notice, the Kin Landlords filed their *Objection and Reservation of Rights of the Kin Landlords With Respect to Proposed Global Asset Sale Transaction and Notice of Cure Amounts and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases* [ECF No. 1930] (the "Initial Objection").  Pursuant to the Initial Objection, the Kin Landlords, *inter alia*, reserved their rights to supplement the Initial Objection, including without limitation to amend or supplement any statements of cure amounts.  The Kin Landlords hereby incorporate the objections and reservations of rights set forth in the Initial Objection as if fully set forth herein.

5.      On January 23, 2019, the Debtors filed their *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [ECF No. 1774] (the "Supplemental Notice") identifying additional contracts and leases that might be assumed and assigned in connection with the Global Asset Sale Transaction.

6.      The Supplemental Notice identified a number of Kin Leases as being potentially subject to assumption and assignment to the Buyer.

7.      Accordingly, in response to the Supplemental Notice, the Kin Landlords filed their *Objection and Reservation of Rights of the Kin Landlords with Respect to Initial and Supplemental Notices of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "January 31 Supplemental Objection") [ECF No. 2261].    The Kin Landlords hereby incorporate the objections and reservations of rights set forth in the January 31 Supplemental Objection as if fully set forth herein.

8.      On January 28, 2019, the Kin Landlords received from the Buyer's counsel a letter, designated as confidential and proprietary, that purports to demonstrate Buyer's adequate assurance of future performance.   On February 3, 2019, the Kin Landlords received additional correspondence from the Buyer's counsel, forwarding the declaration of Kunal Kamlani, President of ESL Investments [ECF No. 2356], as information purportedly further supporting Buyer's ability to satisfy the requirements for adequate assurance of future performance under sections 365(f)(2)(B) and, if applicable, 365(b)(3) of the Bankruptcy Code.

9.      On February 8, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (IV) Granting Related Relief* [ECF No. 2507] (the "Sale Order"). Pursuant to the terms of the Sale Order, and based on objections made by various landlords, including the Kin Landlords, in connection with the sale hearing and the forms of proposed order submitted by the Debtors and Buyer, issues relating to cure amounts, adequate assurance of future performance, and other matters related to the proposed assumption and assignment of real estate leases that

-4-

were not Initial Assigned Agreements (as defined in the Sale Order) were fully preserved for future resolution. *See* Sale Order at ¶ 3. None of the Kin Landlords' leases were included among the Initial Assigned Agreements.

10. Among other things, the Sale Order states that:

> Nothing herein or in the Asset Purchase Agreement or any related document shall authorize, absent further order of the Court or agreement among the Debtors or the Buyer, on the one hand, and the applicable non-Debtor counterparty, on the other hand, the sale of any real estate property owned by any of the Debtors, free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") that are not executory or that run with the land. To the extent that the Debtors or any other party seek to assume and assign any real estate leases to which a Debtor is a party free and clear of any Restrictive Covenant, ***the Debtors or such party shall file a notice that describes the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant*** will have fourteen (14) calendar days from the filing and service of notice of such requested relief to file and serve an objection thereto; any such issues shall be determined by the Court or otherwise resolved consensually prior to the effectiveness of the assignment of any Lease, and all rights, remedies, and positions of all parties with respect to any such relief are preserved.

Sale Order at ¶ 59 (emphasis added).

11. On March 5, 2019, the Debtors filed the Third Supplemental Notice [ECF No. 2753]. The Third Supplemental Notice, like its predecessors, states that at the time of its filing, the Buyer has not designated any contracts or leases for assumption and assignment to the Buyer, and advises counterparties that "[y]ou will receive an additional notice informing you if your Contract or Lease is designed for assumption or assignment to the Buyer." *Id*. at ¶ 16.

12. On March 13, 2019, in response to the Third Supplemental Notice, the Kin Landlords filed *Objection and Reservation of Rights of the Kin Landlords with Respect to Third*

*Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "March 13 Supplemental Objection") [ECF No. 2809].   The Kin Landlords hereby incorporate the objections and reservations of rights set forth in the March 13 Supplemental Objection as if fully set forth herein.

13.    On April 2, 2019, the Court entered its *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (the "Assumption and Assignment Order") [ECF No. 3008].   Like the Sale Order, the Assumption and Assignment Order fully preserves the Kin Landlords' objections for future resolution.   See Assumption and Assignment Order at ¶¶ 28-29.   Among other provisions, the Assumption and Assignment Order requires that:

> To the extent that the Debtors or any other party seek to assume and assign any real estate leases to which a Debtor is a party free and clear of any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants"), the applicable Designated Lease Notice shall describe the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish. . . .

Assumption and Assignment Order at ¶ 26.

14.    On April 19, 2019, the Buyer filed its Assumption/Assignment Notice designating certain leases, including certain of the Kin Leases, for assumption and assignment.   The Kin Leases subject to assumption and assignment by the Buyer (collectively, the "Kin Designated Leases") are as follows:

> a.    7701/7705 Broadview Road, Seven Hills, Ohio and designated by the Debtors as Store Number 3013 (the "Seven Hills Property");
>
> b.    436 Main Street, Hackensack, New Jersey and designated by the Debtors as Store Number 1094 (the "Hackensack Property");

c.      1820 East Race Street, Allentown, Pennsylvania and designated by the Debtors as Store Number 8744 (the "Allentown Property");

d.      803 Male Road, Wind Gap, Pennsylvania and designated by the Debtors as Store Number 3949 (the "Wind Gap Property");

e.      One Kresge Road, Falls Township, Morrisville/Fairless Hills, Pennsylvania and designated by the Debtors as Store Number 8275 (the "Fairless Hills Property");

f.      236 N. Central Ave. (201 West California Ave.), Glendale, California and designated by the Debtors as Store Number 1088 (the "Glendale Property"); and

g.      660 West Winton Avenue, Hayward, California and designated by the Debtors as Store Number 1248 (the "Hayward Property" and collectively, the "Kin Designated Properties").

15.    In the Assumption/Assignment Notice, the Buyer identifies for the first time Transform Distribution Center Holdco LLC, Transform Operating Stores LLC, and Transform Leaseco LLC (collectively the "Transform Assignees") as the ultimate assignees with respect to the Kin Designated Leases.    No further information regarding the proposed Transform Assignees, including any details regarding their relationship to the Buyer, is provided.

## OBJECTION

I.    **THE KIN DESIGNATED LEASES MUST BE ASSUMED AND ASSIGNED, IF AT ALL, *CUM ONERE* AND THE APPLICABLE ASSIGNEE MUST CURE ALL DEFAULTS AND ASSUME ALL UNLIQUIDATED OBLIGATIONS**

16.    It is well settled that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens." *In re Leslie Fay Companies, Inc.*, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994); *see also In re Kopel*, 232 B.R. 57, 63 (Bankr. E.D.N.Y. 1999) ("It is axiomatic that an executory contract generally must be assumed *cum onere*."); *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either

assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits").

17.     Thus, in order to assume and assign the Kin Designated Leases, the Debtors are required, at the time of assumption, to cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the respective leases.  11 U.S.C. § 365(b)(1)(A). This includes, without limitation, any and all defaults with respect to insurance requirements under the Kin Designated Leases, real estate taxes and other charges (accrued or otherwise), amounts payable under reciprocal easement agreements, utilities (including electricity, gas, oil, water, telephone, sanitary sewer services and all other and utilities), attorneys' fees and costs, repair, maintenance, and replacement obligations, and environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges owing under the Kin Designated Leases that remain undetermined as of the date hereof (the "Unliquidated Obligations").[2]  Thus, for example, the Debtors are not entitled to assume the Kin Designated Leases by merely curing arrearages in rent.  Instead, the Debtors must cure, or provide adequate assurance of promptly curing, all liquidated cure amounts and other Unliquidated Obligations under the Kin Designated Leases, including, without limitation, their current and future obligations to maintain the Kin Designated Properties and make repairs and replacements, as a condition to the assumption and assignment of the Kin Designated Leases. *See* 11 U.S.C. § 365(b)(1).

18.     The Kin Landlords object to the extent the Buyer seeks to assume the Kin Designated Leases free and clear of any liquidated cure amounts or Unliquidated Obligations

---

[2] For example, with respect to the Hackensack Property, the Debtors, as a tenant, have certain ongoing unliquidated remediation obligations under the New Jersey Spill Compensation and Control Act.  A true and correct copy of the Sears Roebuck & Co SRP Case Oversight Report for the Hackensack Property is attached hereto as Exhibit C.  These ongoing remediation obligations are included among the category of Unliquidated Obligations that must survive any assumption and assignment of the lease with respect to the Hackensack Property.

under the Kin Designated Leases, including without limitation any obligations to satisfy unbilled or accrued taxes or other charges, reconciliations, or adjustments.  Any order approving the assumption and assignment of the Kin Designated Leases should make clear that all liquidated cure amounts must be paid at or prior to assumption and assignment and all Unliquidated Obligations under each respective lease shall survive, and that the Buyer shall take the Kin Designated Leases subject to all of their respective terms and undertake to satisfy all monetary and all non-monetary obligations under the Kin Designated Leases, regardless of whether such Unliquidated Obligations could be argued to have existed, occurred, or accrued prior to the assumption and assignment of the Kin Designated Leases.

19.    A statement of liquidated cure amounts known by the Kin Landlords with respect to the Kin Designated Leases is attached hereto as Exhibit B.  Based on currently available information, the amounts set forth on Exhibit B must be paid to the Kin Landlords in connection with any proposed assumption of the Kin Designated Leases.  Such liquidated cure amounts, however, do not include any Unliquidated Obligations or all cure amounts that may become due and owing after the date hereof and prior to the time the Kin Designated Leases are actually assumed and assigned, or any amounts that are currently unknown or undetermined by the Kin Landlords.  Additionally, the results of any inspections that the Kin Landlords have conducted or may conduct at the Kin Designated Leases may reveal additional cure amounts due.  The Kin Landlords accordingly reserve the right to amend or supplement any statement of cure amount as necessary or appropriate under the circumstances, including without limitation to account for the result of any inspections, year-end adjustments which have not yet been billed or have not yet become due under the terms of the Kin Designated Leases, amounts that become due and owing

after the date hereof and prior to the time the Kin Designated Leases are actually assumed and

assigned, or amounts that the Kin Landlords become aware of after the date hereof.

20.    Inclusion of the following language in any order approving the assumption and

assignment of the Kin Designated Leases will resolve the "cure objection" portion of the Kin

Landlords' Objection:

> Notwithstanding anything to the contrary in this Order, the Sale
> Order, the Assumption and Assignment Order, the Asset Purchase
> Agreement, or any other applicable order or agreement, as of the
> date on which the Kin Designated Leases become assumed and
> assigned leases, the Buyer or its assignee shall have both the
> benefits and the burdens under the Kin Designated Leases, including
> those burdens for rent and other charges which have accrued as of
> the assignment date but are not yet due under the terms of such Kin
> Designated Leases (and thus are not payable as part of the
> prepetition cure amounts), including, but not limited to (i) any
> adjustments or reconciliations (including any yearend adjustments
> or reconciliations) in respect of common area maintenance,
> insurance, taxes, and other charges and expenses that become due
> under the Kin Designated Leases; (ii) any percentage rent (if
> applicable) that becomes due under the Kin Designated Leases; (iii)
> any and all property taxes that become or are due and payable under
> the Kin Designated Leases, (iv) obligations relating to the
> maintenance, replacement, or repair of the premises, including but
> not limited to those related to environmental conditions, the roof, the
> parking lot, and the HVAC systems of the premises, and such
> deferred maintenance, replacement, and repair obligations that may
> have arisen or accrued or continued to accrue over a period of time,
> both before and after the assignment of the Kin Designated Leases,
> and (v) any indemnification obligations that become due under the
> Kin Designated Leases; provided that, nothing in this Order, the
> Sale Order, the Asset Purchase Agreement, or any other applicable
> order or agreement shall be deemed or construed to amend, modify
> or supplement the Kin Designated Leases.  For the avoidance of
> doubt, and notwithstanding anything to the contrary contained in
> this Order, the Sale Order, the Asset Purchase Agreement or any
> other applicable order or agreement, this Order shall not extinguish
> or affect any repair and maintenance obligations under the Kin
> Designated Leases, all of which shall survive the assumption and
> assignment of the Kin Designated Leases.  All rights of the Buyer
> and their contract counter parties to each of the Kin Designated
> Leases with respect to such matters shall be reserved.

II.    **THE DEBTORS AND THE BUYER HAVE FAILED TO DEMONSTRATE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE BY THE TRANSFORM ASSIGNEES**

21.    In connection with any lease to be assumed and assigned, the Asset Purchase Agreement requires the Buyer and its assignee to deliver adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code and the Debtors are not obligated to assume and assign any lease in which the Buyer and its assignee fail to satisfy the Bankruptcy Court as to adequate assurance of future performance.  Asset Purchase Agreement at ¶ 2.7.

22.    Sections 365(f)(2)(B) and 365(b)(1) of the Bankruptcy Code require that adequate assurance of future performance by a proposed assignee be provided, whether or not there has been a default under a contract or lease.  The Debtors and the Buyer have the burden of proving adequate assurance of future performance with respect to the potential assumption and assignment of the Kin Designated Leases.  *In re Res. Tech. Corp.*, 624 F.3d 376, 384 (7th Cir. 2010) ("As the party seeking to become the assignee, the Trust had the burden of proving it met the requirements of § 365(f)."); *In re C.W. Mining Co.*, Adv. No. 09-2248, 2010 WL 458914, at *9 (Bankr. D. Utah Feb. 10, 2010) (stating the "[t]rustee has the burden to prove that the statutory requirements for assumption and assignment have been met" under §§ 365(b)(1) and (f)(2)).

23.    The Assumption/Assignment Notice identifies the Transform Assignees as the ultimate assignees with respect to the Kin Designated Leases.  The Debtors and the Buyer, however, have failed to provide the Kin Landlords with any – much less adequate – information concerning the Transform Assignees or their ability to perform under the respective Kin Designated Leases.

24. The Kin Landlords hereby reserve all rights with respect to Buyer's obligation to demonstrate adequate assurance of future performance, and leave the Debtors and Transform Assignees to their burden of proving, *inter alia*, that the requirements of section 365(f)(2)(B) have been satisfied with respect to Transform Assignees.

### III. THE KIN DESIGNATED LEASES MUST BE ASSUMED AND ASSIGNED, IF AT ALL, SUBJECT TO ANY APPLICABLE RESTRICTIVE COVENANTS

25. The Kin Landlords object to the assumption and assignment of the Kin Designated Leases to the extent such assumption and assignment purports to be "free and clear" of any applicable Restrictive Covenants. Although the Sale Order and the Assumption and Assignment Order reserved the rights of the Debtors and Buyer to assume any real estate leases to which a Debtor is a party "free and clear of any Restrictive Covenant," *see* Sale Order at ¶ 59 and Assumption and Assignment Order at ¶ 26, such orders require, *inter alia*, that the applicable lease designation notice describe the Restrictive Covenant that the Debtors or Buyer are seeking to extinguish or otherwise diminish.

26. In paragraph 18 of the Assumption/Assignment Notice, the Buyer asserts that it is seeking to assume and assign *all* of the Additional Designatable Leases identified in Exhibit 1 to the notice - which necessarily includes the Kin Designated Leases - "free and clear" of Restrictive Covenants, but fails to identify or describe anywhere in the Assumption/Assignment Notice <u>any</u> specific Restrictive Covenant that Buyer seeks to extinguish. At the same time, the Buyer improperly attempts to shift the burden to the lease counterparties to object to its blanket assertion that any and all unidentified "Restrictive Covenants" may be extinguished:

> In accordance with paragraph 59 of the Sale Order and paragraph 26 of the Assumption and Assignment Order, Buyer intends to designate the Additional Designatable Leases for assumption and assignment free and clear of any interests, covenants or rights applicable to such real estate leases to the extent the same limit or condition the permitted use of the property such as easements,

-12-

reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses or permits (collectively, "Restrictive Covenants") that are executory and do not run with the land. Counterparties to the Additional Designatable Leases shall file and serve any objections with respect to the immediately preceding sentence (a "Restrictive Covenant Objection") in accordance with the Amended Case Management Procedures so as to be filed and received no later than the Objection Deadline.

*See* Assumption/Assignment Notice at ¶ 18.

27.    The Court should not countenance the Buyer's attempt to circumvent the provisions of the Sale Order and Assumption and Assignment Order by failing to identify the specific Restrictive Covenants it seeks to extinguish.  The Kin Landlords should not be required to guess whether there are any interests, covenants or rights applicable to any of the Kin Designated Leases that fall within the defined category of "Restrictive Covenants," whether any such interests, covenants or rights might be subject to extinguishment, or whether Buyer in fact seeks to extinguish each and every such "Restrictive Covenant."[3]  The Kin Landlords are entitled to specific notice of any purported Restrictive Covenants that the Buyer alleges may be subject to extinguishment.  In the absence of any such notice that identifies each Restrictive Covenant that the Buyer seeks to strip away, any order authorizing the assumption and assignment of the Kin Designated Leases must make clear that, consistent with the *cum onere* principles under section 365(b) of the Bankruptcy Code, any applicable Restrictive Covenants remain in full force and effect and are in no way impaired or affected by the assignment.

28.    The Kin Landlords expressly reserve the right to supplement this objection as necessary, and deny that the Buyer is permitted to extinguish Restrictive Covenants, if any, that

---

[3] For example, with respect to the Glendale Property, there exists, among other easements, (a) an easement for public street and highway and incidental purposes, recorded on August 16, 1956, and (b) easement 5 feet wide over Lot 7 of Parcel E for pole lines and conduits, as reserved by L.C. Brand, et al.  Presumably, the Buyer agrees that these easements run with the land and/or are not executory, and are not to be extinguished.  However, based on the Buyer's vague and blanket declaration in the Assumption/Assignment Notice, the Kin Landlords are left to guess the Buyer's understanding and intentions.

may be applicable to the Kin Leases.  The Kin Landlords further deny that any such Restrictive

Covenants may be stripped away in a summary proceeding by notice of intent to assume and

assign, as Buyer purports to do here.  Instead, fundamental principles of due process require that

the substantive legal issues implicated by the requested relief be addressed in the context of a

separate adversary proceeding or contested matter.  *Cf. In re Sabine Oil & Gas Corp.*, 547 B.R.

66, 73 (Bankr. S.D.N.Y. 2016) ("[T]he Court concludes that it cannot decide substantive legal

issues, including whether the covenants at issue run with the land, in the context of a motion to

reject, unless such motion is scheduled simultaneously with an adversary proceeding or

contested matter to determine the merits of the substantive legal disputes related to the motion."),

*aff'd*, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018).

IV.    **THE COURT SHOULD NOT WAIVE BANKRUPTCY RULES 6004(h) AND
       6006(d) IN CONNECTION WITH ANY ORDER AUTHORIZING THE
       ASSUMPTION AND ASSIGNMENT OF THE FAIRLESS HILLS LEASE**

       29.    Any request for a waiver of Bankruptcy Rules 6004(h) and 6006(d) in connection

with the entry of an order authorizing the assumption and assignment of the Kin Leases should

be denied.   The Debtors and Buyer have failed to demonstrate, particularly under the

circumstances presented, that there is any "business need" that requires a waiver of the 14-day

automatic stay.   *See In re Borders Grp., Inc.*, 453 B.R. 477, 486 (Bankr. S.D.N.Y. 2011)

(quoting Collier on Bankruptcy).  The Debtors and Buyer have long since closed on the global

sale transaction, and fully understood and agreed that issues and objections regarding the

assumption and assignment of leases and other landlord-related matters would be deferred until a

later date.  Similarly, to the extent the Debtors and Buyer are seeking a good faith determination

under section 363(m) of the Bankruptcy Code in connection with any order authorizing the

assumption and assignment of the Kin Leases, such relief should also be denied under the

circumstances here, on the grounds that such a finding is not applicable to the issue now before

-14-

the Court – whether the proposed assumption and assignment of the Kin Leases complies with section 365 of the Bankruptcy Code.

## GENERAL RESERVATION OF RIGHTS

30.    The Kin Landlords expressly reserve all of their respective rights under the Kin Designated Leases (and each of the other Kin Leases, as applicable) with respect to any and all obligations of the Debtors and/or any proposed assignee as tenant, including without limitation the Kin Landlords' rights to claim any amounts of rent, charges to compensate for monetary defaults, such as accrued real estate taxes, utility charges that have been assessed against the Kin Designated Properties, unsatisfied liens on the Kin Designated Properties created by the Debtors and/or the proposed assignee and/or insurance premiums, and charges to compensate for non-monetary defaults, including without limitation all maintenance, indemnification and environmental obligations of the Debtors and/or any proposed assignee.

31.    The Kin Landlords further reserve all rights to raise further objections, as necessary or appropriate under the circumstances, relating to any assumption and assignment of any Kin Leases, including without limitation any objections relating to the obligations of the Debtors and/or any proposed assignee to cure any defaults under the Kin Leases, and the ability of any proposed assignee to provide adequate assurance of future performance.

## JOINDER

32.    In addition to the foregoing, the Kin Landlords further join in the objections filed by Debtors' other landlords to the extent that such objections are not inconsistent with the relief requested in this Objection.

## CONCLUSION

WHEREFORE, the Kin Landlords hereby request that any order approving the assumption and assignment of the Kin Designated Leases incorporate the objections and other

relief requested herein and in the Supplemental Objections, and that they be granted such other

or further relief as is just and appropriate under the circumstances.

Dated: New York, New York
     April 26, 2019

**BLANK ROME LLP**

By:    _/s/ Evan J. Zucker_
       Evan J. Zucker
       1271 Avenue of the Americas
       New York, NY 10020
       Telephone:  (212) 885-5000
       Facsimile:  (212) 885-5001
       Email:     EZucker@BlankRome.com

       -and-

       Jeffrey Rhodes (*admitted pro hac vice*)
       1825 Eye Street NW
       Washington, D.C. 20006
       Telephone:  (202) 420-3150
       Facsimile:  (202) 420-2201
       E-mail:     JRhodes@BlankRome.com

       *Attorneys for Kin Properties, Inc.; Aleff LLC; Arcolo Limited Partnership; Cansan Company, LLC; Fairsan Company LLC; Floreff LLC; Fundamentals Co LLC; Hareff LLC; Hillsborough Associates; Pasan Trust; Mantkin LLC; Musue LLC; Nathan Alison LLC; Sugencole LLC; Sugengran LLC; and Sugensteve LLC*