# EXHIBIT B

## **FIFTH AMENDMENT TO LEASE**

This **FIFTH AMENDMENT TO LEASE** (this "*Amendment*") is entered into as of the 12 day of October, 2018 ("*Effective Date*") between **BAKER-PROPERTIES LIMITED PARTNERSHIP**, a Connecticut limited partnership as successor in interest to Spring 2 Associates ("*Landlord*"), and **SEARS, ROEBUCK AND CO.**, a New York corporation as successor in interest to Sears Logistics Services, Inc. ("*Tenant*").

## W I T N E S S E T H:

WHEREAS, Landlord and Tenant are parties to that certain Lease dated July 31, 1993, as amended by that certain letter agreement dated November 12, 1993, as further amended by that certain Notice of Extension of Lease dated March 19, 1998, as further amended by that certain Notice of Extension of Lease dated September 30, 2002, as further amended by that certain Amendment to Lease dated December 15, 2002, as further amended by that certain Second Amendment to Lease Agreement dated October 11, 2008, as further amended by that certain Third Amendment to Lease Agreement dated November 20, 2015, and as further amended by that certain Fourth Amendment to Lease Agreement dated May 30, 2018 (collectively, the "*Lease*") for 105,250 square feet of space (the "*Original Premises*") in the building located at 477 North Lewis Road, Limerick Township, Montgomery County, Pennsylvania (the "*Building*");

WHEREAS, Landlord and Tenant each wish to, among other things, (i) expand the Original Premises to include 31,500 additional rentable square feet in the Building, as shown on *Schedule A* attached hereto and made part hereof (the "*Expansion Premises*") and (ii) extend the Term of the Lease, each on the terms and conditions contained herein;

WHEREAS, Landlord and Tenant each wish to amend the Lease as of the date hereof in accordance with, and subject to, the provisions of this Amendment.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and further good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Capitalized Terms**. All capitalized terms used herein and not defined herein shall have the respective meanings ascribed to such terms as specified in the Lease.

2. **Incorporation of Recitals**. Each of the foregoing recitals forms a material part of this Amendment and is incorporated herein by this reference.

3. **Expansion Premises**. From and after May 1, 2019 (the "*Expansion Premises Commencement Date*"), the rentable square feet of the Premises shall be increased from 105,250 to 136,750 representing the addition of the Expansion Premises. From and after the Expansion Premises Commencement Date, the terms "*Premises*" and "*Demised Premises*" in the Lease, as amended hereby, shall mean the Original Premises plus the Expansion Premises. Notwithstanding the foregoing, if the current occupant of the Expansion Premises vacates the Expansion Premises prior to the Expansion Premises Commencement Date, Landlord shall use

ACTIVE\64019152

commercially reasonable efforts to make the Expansion Premises available to Tenant as soon as reasonably practicable. In the event Tenant occupies the Expansion Premises prior to May 1, 2019, the parties shall enter into an amendment to the Lease establishing the date of such occupancy as the Expansion Premises Commencement Date.

4. **Acceptance of Expansion Premises**. Tenant has inspected the Expansion Premises and the Building and is thoroughly acquainted with their respective conditions and hereby accepts the Expansion Premises in "as is" condition, subject to Landlord completing the work described on *Schedule B* attached hereto and made part hereof (the "*Expansion Premises Work*"). Landlord hereby agrees that it shall apply for all permits for the Expansion Premises Work promptly following the date the current occupant vacates the Expansion Premises.

5. **Term Extension**. The Term of the Lease is hereby extended for an additional period of four (4) months (the "*Extension Term*"), commencing on January 1, 2022 (the "*Extension Term Commencement Date*") and terminating on April 30, 2022 (the "*Expiration Date*"). All references in the Lease to the Expiration Date shall hereinafter mean April 30, 2022, or such earlier date as the Lease may be terminated in accordance with its terms.

6. **Amendment to Lease**.

   a. From and after the Expansion Premises Commencement Date, Section 1(a) of the Lease shall be deleted in its entirety and replaced with the following:

   "(a) Landlord demises and lets to Tenant and Tenant leases and takes from Landlord the ground level space, consisting of 136,750 rentable square feet (collectively referred to as the "**Premises**" or the "**Demised Premises**"), of the building on the land described on the attached Exhibit B, located at 477 North Lewis Road, Limerick Township, Montgomery County, Pennsylvania (the land and all structures and improvements, now or hereinafter located on the land are collectively referred to herein as the "**Complex**")."

   b. From and after the Expansion Premises Commencement Date, Section 1(c) of the Lease shall be deleted in its entirety and replaced with the following:

   "(c) Tenant's right to use and occupy the Demised Premises during the Term shall include the exclusive right to use the thirty-nine (39) truck loading docks within the Complex accessing the Demised Premises. Additionally, Tenant shall have the non-exclusive right to the use of up to eighty (80) automobile parking spaces located within the Complex, open and unassigned, on a first-come, first-serve basis, and shall be permitted to park trucks used in connection with its business in the truck parking area shown on Exhibit B."

   c. From and after the Expansion Premises Commencement Date, Basic Rent payable under the Lease shall be calculated as set forth in the table below, and shall be due in advance on or before the first (1st) day of every calendar month, without any setoff or deduction:

2

| Extension Term Lease Period | Rentable Square Feet | Rent/square foot | Annual Basic Rent | Monthly Basic Rent |
|---|---|---|---|---|
| Expansion Premises Commencement Date – 4/30/20 | 136,750 | $6.30 | $861,525.00 | $71,793.75 |
| 5/1/20 – 4/30/21 | 136,750 | $6.49 | $887,507.50 | $73,958.96 |
| 5/1/21 – 4/30/22 | 136,750 | $6.68 | $913,490.04 | $76,124.17 |

The above amounts are in addition to Tenant's Share of Complex Operating Costs, Tenant's Share of Real Property Taxes, Tenant's Share of the gas, water and sewer bills for the Building and Complex and any other amounts owed by Tenant to Landlord pursuant to the Lease. Notwithstanding the foregoing, Basic Rent shall be abated for the Expansion Premises during the period commencing on the Expansion Premises Commencement Date and continuing until the date that Landlord has completed the Wall Penetrations (as defined in Schedule B) (the "*Rent Abatement*"), provided that Tenant has inspected and accepted the Wall Penetrations, such acceptance not to be unreasonably withheld, conditioned or delayed. Therefore, the per diem Rent Abatement shall be equal to $16,537.50[1] divided by the number of days in the applicable month. For example, for the month of May, 2019, the Rent Abatement shall be $533.47 per day for so long as the Wall Penetrations have not been completed. At either party's request, the parties shall confirm the amount of the Rent Abatement and the commencement of the payment of the full amount of Basic Rent by Tenant, by a letter agreement executed by both Landlord and Tenant. Tenant agrees that it shall provide Landlord reasonable access to the Original Premises in order to complete the Wall Penetrations and shall keep all portions of the Original Premises adjacent to the future location of the Wall Penetrations and any other areas reasonably requested by Landlord unobstructed. Notwithstanding anything to the contrary contained in this Paragraph 6, Tenant shall not be entitled to any Rent Abatement for any period of time the completion of the Wall Penetrations is delayed on account of a "Tenant Delay". For purposes of this Amendment, a "Tenant Delay" shall be deemed to have occurred if (i) Tenant impedes Landlord's access to the Original Premises to complete the Wall Penetrations; (ii) Tenant fails to keep all portions of the Original Premises adjacent to the future location of the Wall Penetrations and any other areas reasonably requested by Landlord unobstructed; and/or (iii) Tenant unreasonably disputes the completion of the Wall Penetrations.

d. From and after the Expansion Premises Commencement Date, Section 4(b)(ii) of the Lease shall be deleted in its entirety and replaced with the following:

"(ii) Landlord and Tenant agree that Tenant's Share will for all purposes of this Lease be 92.87%, which is determined by dividing the approximate rentable area of the Demised Premises by the aggregate rentable area of the Building as follows: (136,750 / 147,250) * 100 = 92.87%."

---

[1] Calculated as 31,500 square feet, times $6.30 per foot, divided by 12 months

3

ACTIVE\64019152

7. **Brokers**. Landlord and Tenant each represents and warrants to the other that such party has not dealt with any broker in bringing about this Amendment other than Chicagoland Commercial Real Estate (the "*Broker*"). Tenant and Landlord each agrees to hold the other harmless and indemnify and defend the other from and against any and all loss, cost, liability, damage and expense arising out of the inaccuracy of the representation contained in the preceding sentence and each party represents to the other that, other than the Broker, it has not engaged and is not responsible for the payment of a fee, commission or other compensation to any other person in connection with the Lease or this Amendment. Landlord agrees that it will pay the Broker a commission in connection with the leasing of (i) the Original Premises for the Extension Term and (ii) the Expansion Premises for the period commencing on the Expansion Premises Commencement Date and expiring on the Expiration Date, pursuant to the terms of a separate agreement. Tenant has no obligation to pay any commission or other fee to Broker.

8. **OFAC Representation**. Tenant represents, warrants and covenants that neither Tenant nor any of its partners, officers, directors, members or shareholders (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Asset Control, Department of the Treasury ("*OFAC*") pursuant to Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) ("*Order*") and all applicable provisions of Title III of the USA Patriot Act (Public Law No. 107-56 (October 26, 2001)); (ii) is listed on the Denied Persons List and Entity List maintained by the United States Department of Commerce; (iii) is listed on the List of Terrorists and List of Disbarred Parties maintained by the United States Department of State, (iv) is listed on any list or qualification of "Designated Nationals" as defined in the Cuban Assets Control Regulations 31 C.F.R. Part 515; (v) is listed on any other publicly available list of terrorists, terrorist organizations or narcotics traffickers maintained by the United States Department of State, the United States Department of Commerce or any other governmental authority or pursuant to the Order, the rules and regulations of OFAC (including, without limitation, the Trading with the Enemy Act, 50 U.S.C. App. 1-44; the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06; the unrepealed provision of the Iraqi Sanctions Act, Publ. L. No. 101-513; the United Nations Participation Act, 22 U.S.C. § 2349 aa-9; The Cuban Democracy Act, 22 U.S.C. §§ 60-01-10; The Cuban Liberty and Democratic Solidarity Act, 18 U.S.C. §§ 2332d and 233; and The Foreign Narcotic Kingpin Designation Act, Publ. L. No. 106-201, all as may be amended from time to time); or any other applicable requirements contained in any enabling legislation or other Executive Orders in respect of the Order (the Order and such other rules, regulations, legislation or orders are collectively called the "Orders"); (vi) is engaged in activities prohibited in the Orders; or (vii) has been convicted, pleaded nolo contendere, indicted, arraigned or custodially detained on charges involving money laundering or predicate crimes to money laundering, drug trafficking, terrorist-related activities or other money laundering predicate crimes or in connection with the Bank Secrecy Act (31 U.S.C. §§ 5311 et. seq.). Tenant shall not permit the Premises or any portion thereof to be used, occupied or operated by or for the benefit of any person or entity that is on the OFAC List. Tenant shall provide documentary and other evidence of Tenant's identity and ownership as may be reasonably requested by Landlord at any time to enable Landlord to verify Tenant's identity or to comply with any legal request. Tenant shall indemnify and hold Landlord harmless and against from all losses, damages, liabilities, cost and expenses (including, without limitation, reasonable attorneys' fees and expenses) that are incurred by Landlord and/or its affiliates that derive from a claim made by a third party against Landlord and/or its affiliates arising or alleged

4

to arise from a misrepresentation made by Tenant hereunder or a breach of any covenant to be performed by Tenant hereunder.

9. **Authority**. Tenant represents and warrants to Landlord: (i) the execution and delivery of, the consummation of the transactions contemplated by and the performance of all its obligations under this Amendment by Tenant have been duly and validly authorized by its board of directors, if necessary, and by its stockholders, if necessary, at meetings duly called and held on proper notice for that purpose at which there were respective quorums present and voting throughout; (ii) no other approval, partnership, corporate, governmental or otherwise, is required to authorize any of the foregoing or to give effect to Tenant's execution and delivery of this Amendment; and (iii) the individual (or individuals) who executes and delivers this Amendment on behalf of Tenant is authorized to do so. Landlord represents and warrants to Tenant: (1) the execution and delivery of, the consummation of the transactions contemplated by and the performance of all its obligations under, this Amendment by Landlord have been duly and validly authorized by its partners to the extent required by its partnership agreement and applicable law; (2) no other approval, partnership, corporate, governmental or otherwise, is required to authorize any of the foregoing or to give effect to Landlord's execution and delivery of this Amendment; and (3) the individual (or individuals) who executes and delivers this Amendment on behalf of Tenant is authorized to do so.

10. **Counterparts**. This Amendment may be executed in multiple original, facsimile, or electronic counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same document.

11. **Prior Agreements**. This Amendment supersedes any prior agreement, whether in writing or oral, delivered to Tenant or any person or entity acting on behalf of Tenant with respect to the matters set forth herein and any such prior agreement is hereby merged into this Amendment.

12. **Construction**. The parties hereto agree that the terms and language of this Amendment were the result of negotiations between the parties and, as a result, there shall be no presumption that ambiguities, if any, in this Amendment shall be resolved against any party. Any controversy over the construction of this Amendment shall be decided neutrally, in light of its conciliatory purposes, and without regard to authorship or negotiation.

13. **Miscellaneous**. Except as amended and modified herein, the Lease is and remains in full force and effect and shall be binding upon Landlord and Tenant and their respective successors and assigns. Tenant hereby ratifies and affirms the Lease and its obligations thereunder, and confirms that Tenant has no offsets, defenses, or counterclaims against Landlord under or in connection with the Lease. The provisions of this Amendment shall serve to supplement and amend the Lease as set forth herein. In the event of a conflict between the provisions of this Amendment and the provisions of the Lease, the provisions of this Amendment shall control. This Amendment shall be governed by the laws of the Commonwealth of Pennsylvania.

14. **Entire Agreement**. This Amendment sets forth the entire agreement between the parties with respect to the matters set forth herein. There have been no additional oral or written

5

ACTIVE\64019152

representations or agreements with respect to the matters set forth herein. In case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

15. **Time is of the Essence**. Time is of the essence for this Amendment and the Lease and each provision hereof.

16. **No Presumption Against Drafter**. This Amendment shall be construed without regard to any presumption or any other rule requiring construction against the party drafting a document. The parties acknowledge that this Amendment is the result of negotiations between the parties, and in construing any ambiguity hereunder no presumption shall be made in favor of either party.

17. **Severability**. If any provision of this Amendment or the application thereof to any person or circumstances is or shall be deemed illegal, invalid, or unenforceable, the remaining provisions hereof shall remain in full force and effect and this Amendment shall be interpreted as if such illegal, invalid, or unenforceable provision did not exist herein.

[Separate signature pages follow]

IN WITNESS WHEREOF, Landlord and Tenant have executed this Amendment as of the Effective Date.

LANDLORD:

**BAKER-PROPERTIES LIMITED PARTNERSHIP,**
a Connecticut limited partnership

By: Baker Companies, Inc.,
a New York corporation,
its General Partner

By: _____
Name: _____
Title: _____

TENANT:

**SEARS, ROEBUCK AND CO.,**
a New York corporation

By: *JoAnn Catanese* (signature)
Name: JoAnn Catanese
Title: Divisional Vice President, Real Estate

IN WITNESS WHEREOF, Landlord and Tenant have executed this Amendment as of the Effective Date.

LANDLORD:

**BAKER-PROPERTIES LIMITED PARTNERSHIP,**
a Connecticut limited partnership

By:   Baker Companies, Inc.,
      a New York corporation,
      its General Partner

By: *Philip King* (signature)
Name: PHILIP KING
Title: PRESIDENT

TENANT:

**SEARS, ROEBUCK AND CO.,**
a New York corporation

By: *JoAnn Catanese* (signature)
Name: JoAnn Catanese
Title: Divisional Vice President, Real Estate

ACTIVE\64019152

ACTIVE\64019152

8



## SCHEDULE A
### EXPANSION PREMISES

## SCHEDULE B

## LANDLORD'S WORK

1. All dock door covers and bumpers shall be in good working order
2. Exterior exit door of the Expansion Premises shall be in good working order
3. All dock doors shall be in good working order
4. Three (3) wall penetrations of approximately 12 feet by 12 feet each shall be cut into the existing wall between the Original Premises and the Expansion Premises. The approximate location of the three (3) wall penetrations is identified on Schedule B-1 (collectively, the "*Wall Penetrations*")
5. Pot holes in the parking area of the Complex shall be repaired.

ACTIVE\64019152

ACTIVE\64019152

10



**SCHEDULE B-1**

**APPROXIMATE LOCATION OF WALL PENETRATIONS**