FERRAIUOLI, LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001
Email: scolon@ferraiuoli.com
Email: gchico@ferraiuoli.com

Attorneys for *Santa Rosa Mall, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**SANTA ROSA MALL'S SUPPLEMENTAL CURE OBJECTION AND RESERVATION OF
RIGHTS TO DEBTORS' NOTICE OF ASSUMPTION AND ASSIGNMENT OF
ADDITIONAL DESIGNATABLE LEASES**

TO THE HONORABLE COURT:

COMES NOW Santa Rosa Mall, LLC ("Santa Rosa Mall"), by and through its undersigned counsel, and hereby objects to the *Notice of Assumption and Assignment of Additional Designatable Leases* (Docket No. 3369) as follows:

Factual and Procedural Background

1.     Sears Holding Corporation and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 15, 2018 (the "Petition Date"). The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.     Pursuant to a *Lease Agreement* executed by Santa Rosa Mall and Sears, Roebuck of Puerto Rico, Inc. ("Sears") on September 22, 1965, Sears leases from Santa Rosa Mall its anchor store ("Store No. 1915" or the "Demised Premises"). We attach the *Lease Agreement* as **Exhibit I**.

3.     In addition to the fixed rent, the *Lease Agreement* includes other monetary and non-

monetary obligations typical of commercial leasing agreements, including the payment of common area maintenance fees. See *Lease Agreement*, **Exhibit I**, at § 2.01, p. 12; § 2.03, p. 14.

4.     As part of its non-monetary obligations, the *Lease Agreement* requires Sears to "keep the Demised Premises [] in good order and repair and in such condition as may be required by law and by the terms of any insurance policies covering the Demised Premises", including repairs that are "extraordinary as well as ordinary and whether or not such repairs shall be of a structural nature []". Id. § 4.01, p. 23.

5.     Section 4.01 of the *Lease Agreement* further extends Sears' obligation for maintenance and repair, and requires that:

> [Sears] pay and discharge, and indemnify and save harmless [Santa Rosa Mall] against and from all liabilities, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable attorneys' fees, which may be imposed upon to incurred by or asserted against [Santa Rosa Mall] by reason of [] [a]ny work or thing done in, on or about the Demised Premises or any part thereof; [a]ny [] maintenance, repair or management of the Demised Premises []; [and/or] [a]ny failure on the part of [Sears] to perform or comply with any of the covenants, agreements, terms or conditions contained in [the] lease on its part to be performed or complied with.

Id. § 4.03, pp. 23-24.

6.     Section 6.01 of the *Lease Agreement further* requires that Sears "maintain at [its] sole cost and expense, for the benefit of [Santa Rosa Mall] and [Sears], insurance with respect to the Demised Premises" for risks including "windstorm". Id. § 6.01(a), p. 26. Such insurance policy "shall be secured promptly and certificates thereof shall be furnished to [Santa Rosa Mall]" and "shall contain loss payable clause to [Santa Rosa Mall] and [Sears]". Id., § 6.02(a), pp. 26-27. Renewals of the insurance policies are also subject to the foregoing. Id., 6.02(b), p. 27.

7.     In the event of damage by windstorm or any other casualty to the Demised Premises in an amount over $100,000, such as that caused by Hurricanes Irma and Maria, Section 6.03(b)(2) of the *Lease Agreement* requires Sears "**proceed with all reasonable expedition to restore or rebuild [] the building so destroyed or rendered untenantable**, free from liens of any kind, in substantial accordance with the plans and specifications of the building so destroyed or rendered untenantable []". Id., § 6.03(b)(2), p. 28 (emphasis added). Section 6.03(b)(2) activates the requirements specified in Section 5.02 of the *Lease*

*Agreement*, which requires that Sears "furnish to [Santa Rosa Mall] a duplicate set of the working plans,

sketches and specifications for the proposed work", "at its own cost and expense obtain or cause to be

obtained all the insurance coverage specified in Section 3.04", and that "[a]ny alteration or addition [] be

carried out in such a way as to interfere as little as is reasonably possible with the operations of the Shopping

Center []". Id., § 5.02(a), (c) and (d), p. 25.

8.      Section 6.03(b)(3) of the *Lease Agreement* further mandates as follows:

> **The net sums recovered by [Santa Rosa Mall] and [Sears] on account of loss or damage whether under the policies taken out as aforesaid, or under other insurance policies taken out by [Sears] and indemnifying for physical loss** (as distinguished from the loss of use and occupancy. or profits), **shall be deposited in a special account in the name of [Santa Rosa Mall] separate and distinct from all other funds of [Santa Rosa Mall] in a bank or trust company of the City of San Juan, Puerto Rico, approved by [Santa Rosa Mall] and [Sears] to be applied on account of the cost of such restoration or rebuilding**, as the case may be, as the work of restoration or rebuilding progresses, and [Sears] shall pay any and all additional moneys required in such restoration or rebuilding in excess of said net sums recovered, and shall be entitled to receive any surplus, if any, remaining of said deposit after such restoration .. or rebuilding has been completed as aforesaid, provided, however, that should the aforesaid damage by fire or other casualty occur within the last three years of the initial term or any extended term this lease, [Sears] shall have the option to surrender the proceeds of any insurance to [Santa Rosa Mall] and vacate the premises.

Id., § 6.03(b)(3), pp. 28-29 (emphasis and underline added).

9.      The deposit of the insurance proceeds in a separate account is essential and Section 6.03(d)

explains its importance:

> If [Sears] does not commence promptly to repair or restore the injury or destruction, or if, having commenced the repair or restoration, [Sears] does not proceed diligently to complete the same, [Santa Rosa Mall] shall be entitled (but shall be under no obligation) at any time thereafter to enter the Demised Premises and repair or restore the injury or destruction and to apply any insurance proceeds in the said special account to the payment of the cost thereof; but if the insurance proceeds are insufficient for the cost of the repair, restoration or reconstruction, [Sears] shall pay to [Santa Rosa Mall], upon demand and as additional rent as the work progresses; such amounts as shall be necessary to complete the repair, restoration or reconstruction.

Id., § 6.03(d), p. 29.

10.      Section 9.02 of the *Lease Agreement*, which governs the assignment of said lease, states as

follows:

> [] [Sears] shall not assign this lease in whole or in part [] without the prior written consent of [Santa Rosa Mall]. [] **[I]t is understood that [Santa Rosa Mall] shall not consent to any**

-3-

**assignment [] unless [Santa Rosa Mall] is reasonably satisfied that the prospective assignee [] has the standing and experience to conduct a department store business substantially equivalent to that specified in Section 8.1 hereof**, or such other business as is commensurate with the objective of the Shopping Center and does not conflict with contractual obligations of the Landlord to other tenants in the Center.

Id., § 9.02, p. 35 (emphasis added). In the event of assignment, the assignee:

**[S]hall execute and deliver to [Santa Rosa Mall] an agreement in writing assuming all the terms, covenants and conditions of the part of [Sears] to be kept and performed under this lease.** No assignment [], nor the acceptance of rents or other payments from, nor any other dealing by [Santa Rosa Mall] with any assignee [] shall release [Sears] from its obligation to pay [Santa Rosa Mall] a monthly rental equivalent to the average monthly rental paid by [Sears] to [Santa Rosa Mall] during the twelve months' period last preceding such assignment [], but in no event shall such liability be less than the fixed rentals hereinabove provided to be paid from time to time during the existing term of the lease and any renewal thereof.

Id., § 9.03, pp. 35-36 (emphasis added).

11.     Further still, subject to the provisions outlined in Section IX above, the *Lease Agreement* "shall insure to the benefit of and be binding upon the parties hereto and their respective successors and assigns." Id., § 23.03, p. 49.

12.     Sears has operated Store No. 1915 at Santa Rosa Mall since 1965 until the passing of Hurricane Maria on September 20, 2017, when it closed its doors.  The Court may take judicial notice of the passing of Hurricane Maria, as well as its trajectory and aftermath under Fed. R. Evid. 201.  We incorporate by reference Santa Rosa's *Motion to Compel Insurance Proceeds* [ECF No. 1240] and its *Standing Objection to Global Asset Sale Transaction* [ECF No. 2013], as if fully transcribed herein.

13.     Store No. 1915 has been, and continues to be, the "anchor" of this property. As such, it is the main driver of traffic for other tenants who have suffered from Store No. 1915's closure and may exercise their right to terminate their respective leases if Sears, an assigned, or a replacement tenant does not operate the Demised Premises soon.

14.     The thirteen-month period between the passing of Hurricane Maria and the Petition Date, Sears had ample time to rebuild the Demised Premises and reopen the store, however, the scope of the work completed was limited to demolition, clean up and roof replacement.

15.     After the Petition Date, the Sears suspended all reconstruction efforts in the Demised

Premises.[1]

16.     On November 1, 2018, the Debtors filed a *Motion for Approval of Global Bidding Procedures* (the "*Global Bidding Procedures Motion*", Docket No. 429) in connection with a sale or disposition of certain assets of Sears and its debtor affiliates (the "*Global Bidding Procedures*").

17.     On November 19, 2018, the Court entered an *Order Approving Global Bidding Procedures and Granting Related Relief* (the "*Global Bidding Procedures Order*", Docket No. 816) regarding the sale/disposition of certain assets, scheduling auctions and hearings for approval of proposed sale transactions and approving the procedures for the assumption and assignment of executory contracts and unexpired non-residential leases.

18.     On November 21, 2018, the Debtors filed a *Notice of Filing of Global Bidding Procedures Process Letter* (the "*Process Letter*", Docket No. 862) soliciting bids for all or some of Sears' stores and related assets identified as "Go Forward Stores", either on a going concern basis or on a liquidation basis. Pursuant to the asset schedule attached thereto, Sears identified Santa Rosa Mall as a "Go Forward Store". Id., p. 43, line no. 381.

19.     On December 20, 2018, Santa Rosa Mall filed a *Motion for Entry of Order for the Debtor to: (i) Disclose Status of Insurance Claim; (ii) Deposit Any Insurance Proceed into Separate Account to be Used Exclusively to Repair the Insured Demised Premises; and (iii) Alternatively, Find the Automatic Stay Inapplicable to the Insurance Proceeds* (the "*Motion to Compel Insurance Proceeds*", Docket No. 1240) for the Court to determine that the insurance proceeds are not part of the bankruptcy estate and must be exclusively applied to the restoration or rebuilding of the Demised Premises in accordance to the *Lease Agreement*.  A hearing to consider the *Motion to Compel Insurance Proceeds* is scheduled for February 14, 2018 (Docket No. 1363).

---

[1] We bring to the attention of the Court that the Demised Property was covered by an insurance policy issued by AIG Europe Limited, under Policy No. PTNAM1701557 (the "*Insurance Policy*").  See *Certificate of Property Insurance* attached hereto as **Exhibit II**.  The limit of such *Insurance Policy* is of $50,000,000. Id. Under the "Additional Remarks Schedule" of such *Certificate*, "**Santa Rosa Mall LLC … [is] included as Loss Payee** in accordance with the policy provisions of the Property policy with respect to the property located at the above referenced location", referring to "Sears Store No. 1915 – Santa Rosa Mall, Bayamon, PR". Id. (emphasis and underline added).

20.    On January 14, 2019, the Debtors commenced an Auction for the assets identified as "Go Forward Stores" in connection with the *Global Bidding Procedure* Order.  <u>See</u> Docket No. 816, p. 32; Docket No. 1730, p. 2, ¶ 4.

21.    On January 18, 2019, the Debtors filed a *Notice of Successful Bidder and Sale Hearing* (Docket No. 1730).  Attached thereto as Exhibit "A" (Docket No. 1730) is a copy of the *Asset Purchase Agreement* ("*Asset Purchase Agreement*") executed by and between Sears and Transform Holdco LLC (the "Buyer"), for the purchase of the *Acquired Assets*, as defined therein, on January 17, 2019.  <u>Id</u>. at p. 2, ¶ 4.

22.    On January 26, 2019, Santa Rosa Mall filed a *Standing Objection to Global Asset Sale Transaction* (the "*Standing Objection*", Docket No. 2013).  Pursuant to the terms of the *Asset Purchase Agreement* , specifically Section 2.1(q), Transform Holdco LLC (the "Buyer") acquired all proceeds relating to loss or damage occurring prior to the closing date of the Global Sale Transaction minus a cap of $13,000,000.00.[2]  In its *Standing Objection*, Santa Rosa Mall sustained that the insurance proceeds from the global settlement relative to Santa Rosa Mall's claim for damages should be used for the reconstruction of Store No. 1915 or be deposited in escrow with the Landlord, in accordance with the terms of the *Lease Agreement*.

23.    On January 18, 2019, the Debtors' filed a *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transactions* (the "*Notice of Cure Costs*", Docket No. 1731).  Each of the unexpired nonresidential leases included in the Successful Bid that may be assumed and assigned by the Buyer, or its designated assignee, are set forth in Exhibit "B" thereto.  The *Notice of Cure Costs* proposed a cure amount of $30,500.00, for Santa Rosa Mall.

| No. | Store Number | Obligor(s) | Counter Party Name | Contract Title | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|---|---|
| 116 | 1915 | SEARS, ROEBUCK DE PUERTO RICO, INC. | SANTA ROSA MALL LLC | GROUND LEASE | 09/30/2023 | S1915-1-A | $ 30,500 |

<u>Id</u>. at p. 336, line 116.

---

[2] The $13,000,000.00 insurance cap language remained unchanged pursuant to the February 8, 2019 *Sale Order* (Docket No. 2507).

24.    On January 23, 2019, the Debtors filed a *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "*Supplemental Notice of Cure Costs*", Docket No. 1774).  In Exhibit "B-2" thereto, Sears included revised cure amounts for leases included in the *Notice of Cure Costs*.  The *Supplemental Notice of Cure Costs* amended the proposed cure amount to a blank amount for Santa Rosa Mall.  Id. at p. 61, line 116.  The *Supplemental Notice of Cure Costs* now read:

| No. | Store Number | Debtor Counterparty(s) | Counter Party Name | Contract Title | Contract Expiration Date | Contract Number | Cure Amount |
|-----|--------------|------------------------|--------------------|----------------|--------------------------|-----------------|-------------|
| 116 | 1915 | SEARS, ROEBUCK DE PUERTO RICO, INC. | SANTA ROSA MALL LLC | GROUND LEASE | 09/30/2023 | S1915-1-A | $        - |

25.    Pursuant to both the *Notice of Cure Costs* and the *Supplemental Notice of Cure Costs*:

> The cure costs set forth on Exhibit A and Exhibit B hereto shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable contract or lease under Bankruptcy Code Section 365(b), notwithstanding anything to the contrary in the contract or lease, or any other document, and the applicable counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such contract or lease against [Sears], any successful bidder, or the property of any of them.

Id. at p. 5, § A; Docket No. 1731, p. 5, § A.

26.    On January 31, 2019, Santa Rosa Mall timely and properly filed a *Limited Objection and Reservation of Rights to Debtors' Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "*Limited Objection*", Docket No. 2283), objecting to the Debtors' proposed blank cure amount and asserted an estimated cure amount of at least $16,500,000.00, which included only the restoration work needed going forward and was proposed as an initial estimate . The *Limited Objection and Reservation of Rights* is attached hereto and incorporated herein as **Exhibit III**.

27.    In its *Limited Objection and Reservation of Rights*, Santa Rosa Mall expressly reserved its right to amend the proposed cure amount to reflect Store No. 1915's actual monetary and non-monetary damages.

28.    On February 8, 2019, the Court entered and *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and*

*Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief* (the "*Sale Order*", Docket No. 2507).

29.     Section 2.1(q) of the *Asset Purchase Agreement* specifically provides the following:

[O]n the Closing Date, Sellers shall sell, transfer, assign, convey and deliver… to Buyer… any and all insurance proceeds… in respect of loss or damage to… any Acquired Asset… relating to a casualty occurring prior to… [the] Closing Date… less any proceeds… in an aggregate amount not to exceed $13,000,000.

Docket No. 2507-1, pp. 56-58, § 2.1(q).

30.     Upon information and belief, the Debtors and the applicable insurance Underwriters reached a global settlement relating to the damages caused by Hurricanes Irma and Maria. Docket No. 2507-1, Schedule 2.1(q), p. 1003.  As part of the *Asset Purchase Agreement*, the Debtors transferred all title to the proceeds from the global settlement to the Buyer, minus a cap of $13,000,000.00.[3]

31.     Under ¶ 3 of the *Sale Order:*

**all timely filed objections to the assumption and assignment of a**… **Lease** that is not an Initial Assigned Agreement, including, without limitation, as to adequate assurance of future performance and to the payment of all amounts due and owing and performance of all other obligations under a… Lease, but not as to any other objections to approval of the Sale Transaction itself pursuant to section 363 of the Bankruptcy Code, **are adjourned and all parties' rights as to such issues are fully preserved** and will be determined if and to the extent the applicable… Lease is designated for assumption and assignment pursuant to the procedures described in this Sale Order…

Docket No. 2507, p. 25, ¶ 3 (emphasis added).

32.     Pursuant to ¶ 59 of the *Sale Order*, any party seeking to assume and assign any leases of nonresidential real property shall describe the "Restrictive Covenant", as defined therein, that such party seeks to extinguish or otherwise diminish. Specifically,

To the extent that the Debtors or any other party seek to assume and assign any real estate leases to which a Debtor is a party free and clear of any Restrictive Covenant, **the Debtors or such party shall file a notice that describes the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish** [].

---

[3] *Declaration of Sunny Sigh* (Docket No. 2344 pp. 236-237, ¶¶ 9-9) ("In addition, the debtors… retain 13 million dollars in hurricane insurance proceeds").

Docket No. 2507, p. 73, ¶ 59 (emphasis added).

33.     On April 2, 2019, the Court entered the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (the "*Assumption and Assignment Order*", Docket No. 3008). Pursuant to ¶¶ 28 and 29 of the *Assumption and Assignment Order,* all objections previously filed regarding the assumption and assignment of a lease were adjourned and all rights were fully preserved in accordance with Paragraph 59 of the *Sale Order*. Id. at pp. 25-26, ¶¶ 28-29.

34.     On April 25, 2019, the Debtors filed a *Notice of Assumption and Assignment of Additional Designatable Leases* (the "*Designation Notice*", Docket No. 3369) designating for assumption and assignment certain additional agreements in accordance with the *Sale Order* and the *Assumption and Assignment Order*, to which the Buyer, or an affiliated entity, shall be the relevant assignee.  Pursuant to the *Designation Notice*, "[e]ach of the Additional Assigned Agreements listed… was listed on an Assumption and Assignment Notice that was previously filed". Id. at p. 3, ¶15.

35.     Although Santa Rosa Mall cannot be certain based on the ambiguous *Designation Notice*, it seems that the Buyer designated Store No. 1915's *Lease Agreement* for assumption and assignment to Transform Operating Stores LLC.  Santa Rosa Mall's uncertainty stems from both the RE ID and the store address used to identify Store No. 1915, "191503" and "12,485 SF inline space", respectfully.  Pursuant to Schedule 6.6(a) of the *Asset Purchase Agreement*, Store No. 1915's RE ID is "191500" (Docket No. 2507-1, p. 1120).  Neither the *Notice of Cure Costs* (Docket No. 1731) nor the *Supplemental Notice of Cure Costs* (Docket No. 1774) attached an RE ID number to Store No. 1915.  Further, no *Notice(s) of Cure Costs and Potential Assumption and Assignment* [] were filed with respect to RE ID "191503".  Store No. 1915 constitutes 220,640 square feet of Santa Rosa Mall.

36.     If the Buyer seeks to designate Store No. 1915's *Lease Agreement* for assumption and assignment, the *Designation Notice* <u>once again incorrectly lists the proposed cure amount for Store No. 1915</u>.  The proposed cure amount now reads: $0.00.

| Store # | RE ID | Property Group | City | State/Province | Store Address | Counterparty | Contract Name | Proposed Cure Amount | Counterparty's Asserted Cure Amount | Disputed Amount | Assignee |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1915 | 191503 | Open Store | Bayamon | PR | Avenida Aguas Buenas (12,485 SF inline space | Santa Rosa Mall LLC | Lease | $0.00 | N/A | N/A | Transform Operating Stores LLC |

Id. at p. 6.

37.    The *Designation Notice* does not to provide any adequate assurance information regarding the Buyer' proposed assignee, Transform Operating Stores LLC, including where the proposed assignee is in the Buyer's organizational structure, what its operating experience, resources, capabilities, and financial position are, and whether the proposed assignee has the standing and experience to conduct a department store business substantially equivalent to that specified in Section 8.1 of the *Lease Agreement*. The *Designation Notice* does not describe the Restrictive Covenants that the Buyer and/or the proposed assignee are seeking to extinguish or otherwise diminish, wherefore it does not comply with either the *Sale Order* or the *Assignment Order*.  Moreover, the *Designation Notice* does not acknowledge Santa Rosa Mall's *Limited Objection and Reservation of Rights* and/or any of the objections raised therein.

38.    Accordingly, Santa Rosa Mall files this *Supplemental Cure Objection* to the *Notice of Designation* and respectfully requests the Court deny approval of the assumption and assignment of Store No. 1915's *Lease Agreement* unless and until these issues are appropriately addressed.

Applicable Law and Discussion

A.    *The Designation Notice Does Not Comply with Section 365(b)(1)(A) of the Bankruptcy Code*

39.    Santa Rosa Mall fully incorporates the *Limited Objection and Reservation of Rights* (Docket No. 2283) as if fully transcribed herein.

40.    Under Section 365 of the Bankruptcy Code, the *Lease Agreement* may only be assumed and assigned if the lease is assumed in accordance with the requirements of Section 365(b)(1).  See 11 U.S.C. § 365(b)(1).

41.    Pursuant to Section 365(b)(1)(A), the Buyer and/or the proposed assignee, Transform Operating Stores LLC, are obligated to promptly cure any existing defaults or provide adequate assurance that the default will be promptly cured prior to the assumption of the *Lease Agreement*.  See 11 U.S.C. § 365(b)(1)(A)

42.    Pursuant to the terms of the *Lease Agreement*, the Debtors agreed to discharge, indemnify and save harmless Santa Rosa Mall against and from all liabilities, obligations, damages, penalties, claims,

-10-

costs, charges and expenses incurred by or asserted against Santa Rosa Mall by reason of any work or thing done in, on or about, any maintenance, repair, and/or any failure on the part of the Debtor to perform or comply with the *Lease Agreement*. To such end, the Debtors agreed to keep the Demised Premises in good order and repair, procure property insurance for the Demised Premises with a loss payable clause to the benefit of Santa Rosa Mall and the Debtor.

43.    Section 6.03(b)(2) of the *Lease Agreement* requires that the Debtors proceed with all reasonable expedition to restore or rebuild the Demised Premises in the event of damage by windstorm. Section 6.03(b)(3) further requires that the net sums recovered on account of loss or damage be deposited in a special account in the name of Santa Rosa Mall, to be applied on account of the cost of such restoration or rebuilding.

44.    Store No. 1915 has remained closed since the passing of Hurricane Maria on September 20, 2017 and the scope of the repair work completed prior to the Petition Date was limited to demolition, clean up and roof replacement. While the Debtors seek to assume the *Lease Agreement*, they fail to recognize they have defaulted under the terms of the *Lease Agreement* and caused harm to Store No. 1915.

45.    Upon information and belief, the Debtors executed a global settlement agreement in relation to the insurance claim filed on account of loss or damage as a result of Hurricanes Irma and Maria. Accordingly, the Debtors have access to the casualty damage reports performed and to the insurance claim filed with AIG Europe Limited under the *Insurance Policy* and relating to Store No. 1915 at Santa Rosa Mall, Bayamon, PR. Despite the foregoing, the *Designation Notice* proposes a cure amount of $0.00 for Santa Rosa Mall to cure the Debtors' monetary and nonmonetary defaults under the *Lease Agreement*.

46.    On account of the Buyer and/or the proposed assignee's attempt to avoid the ongoing monetary and non-monetary obligations arising out of the *Lease Agreement* and failure to comply with the requirements of Section 365(b)(1) of the Bankruptcy Code, Santa Rosa Mall objects to the *Designation Notice* and hereby supplements the *Limited Objection and Reservation of Rights*.

B.      *The Designation Notice Does Not Provide Adequate Assurance of Future Performance*

47.      Section 365(b)(1)(A) requires the debtor to cure or provide adequate assurance that it will promptly cure any defaults.  See 11 U.S.C. § 365(b)(1)(C); In re M. Fine Lumber Co., Inc., 383 B.R. 565, 570 (Bankr. E.D.N.Y. 2008).  Section 365(f)(2) similarly provides that, in order to assign a lease under Section 365, adequate assurance of future performance by the assignee must be provided.  See 11 U.S.C. § 365(f)(2).

48.      "Satisfaction of the requirements of both §§ 365(b)(1)(C) and 365(f)(2)(B) … depends on whether the prospective assignee can provide adequate assurance of future performance."  In re Bygaph, Inc., 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986).  Thus, the Buyer and/or proposed assignee bear the burden of providing adequate assurance to Santa Rosa Mall.  See id. at 605 ("[T]he lessor must be given adequate assurance of future performance so that it will be protected from having to take on the burden of a tenant who may be likely to default on his lease obligations …"); In re Lafayette Radio Electronics Corp., 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

49.      As noted in In re Washington Capital Aviation & Leasing, 156 B.R. 167, 175 (Bkrtcy. E. D. Va. 1993):

> **Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment."** A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

Id. at 175 (emphasis added).

50.      Adequate assurance of future performance "is necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach."  In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3rd Cir. 2000).

51.      Where the leased premises are located in a shopping center, Section 365(b)(3) of the

Bankruptcy Code provides that adequate assurance of future performance includes:

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

> (B) that any percentage rent due under such lease will not decline substantially; [] [and]

> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

52.    The proposed assignee must meet a heightened definition of adequate assurance of future performance under Section 365(b)(3) to ensure that "[t]he essential terms of a debtor's lease in a shopping center [are] not ... changed in order to facilitate assignment." In re Rickel Home Centers, Inc., 209 F.3d at 299, citing Norton Bankruptcy Law & Practice 2d § § 39:46, at 39–133 (William L. Norton, Jr. ed., 1997).

53.    The *Designation Notice* does not provide Santa Rosa Mall any information whatsoever, much less any information adequate to prove or meaningfully evaluate adequate assurance of the proposed assignee's future performance. Accordingly, the *Lease Agreement* may not be assumed and assigned until the Buyer and/or the proposed assignee, Transform Operating Stores LLC, comply with Section 365(b)(1)(C), (b)(3) and (f)(2)(B) of the Bankruptcy Code and provide adequate assurance of future performance as to all obligations.

C.    *The Lease Agreement Must be Assumed and Assigned Cum Onere*

54.    Section 365(b)(3)(C) provides that the assumption and assignment of a shopping center "subject to existing burdens." In re Chicago R.I. & Pac., 860 F.2d 267, 272 (7th Cir. 1988); 11 U.S.C. § 365(b)(3)(C). Specifically, the assumption and assignment of a lease in a shopping center is "subject to **all** of the provisions thereof including… provisions such as a radius, location, use, or exclusivity provision…" to protect the rights of lessors and the shopping center's other tenants. 11 U.S.C. § 365(b)(3)(C).

55.    This section has been interpreted to mean that the Debtor is not free to select only those lease terms which it deems to be favorable, but rather must assume and assign the lease as a whole and is

not free to accept the favorable terms while discarding the unfavorable. See United States v. Carolina Parachute Corp., 907 F.2d 1469, 1472 (4th Cir.1990); Lee v. Schweiker, 739 F.2d 870, 876 (3d Cir.1984).

56.     "Should the debtor-in-possession elect to assume the executory contract… it assumes the contract *cum onere*". N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) (emphasis added). Also see In re MF Glob. Holdings Ltd., 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and rejected in part… The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits.").

57.     As is customary for shopping center leases, the *Lease Agreement* includes various obligations beyond the payment of rent. These obligations include, *inter alia*, that Store No. 1915 be used "for the purpose of conducting the business of a Sears Roebuck 'Class A' department store in a manner substantially similar to the operation now on in the existing… in Puerto Rico and the United States". *Lease Agreement*, § 8.01, p. 37.

58.     Pursuant to the *Designation Notice* the Debtors propose assuming 12,485 square feet of Store 1915. Pursuant to the Declaration of Yvette Melendez, the Demised Premises constitute 220,640 square feet of Santa Rosa Mall. See Docket no. 2828-1, p. 2, ¶ 5.

59.     Thus, assumption and assignment of Store No. 1915 requires compliance with the underlying terms of the *Lease Agreement* and does not permit the Debtors, the Buyer and/or the proposed assignee to re-write the lease. The *Lease Agreement* must be assumed and assigned without modification, with all its benefits and burdens, as expressly provided under Section 365(b)(3)(C) of the Bankruptcy Code and Section 9.02 of the *Lease Agreement*.

60.     Santa Rosa Mall objects to any attempt by the Debtors, Buyer and/or the proposed assignee to modify the *Lease Agreement* or any of Santa Rosa Mall's rights thereunder. Any request by the Debtors, the Buyer and/or the proposed assignee to modify the *Lease Agreement* are without merit and inconsistent with the protections afforded by Section 365(b)(3).

61.     The *Lease Agreement* may not be assumed and assigned unless *all defaults* under the *Lease Agreement* have been cured, the Buyer and/or the proposed assignee provide adequate assurance of future

performance of all obligations and to the payment of all amounts due and owing, and the assignee is subject to the terms and conditions thereof *cum onere*.

## Reservation of Rights

62.    This *Supplemental Cure Objection* is without prejudice to the fact that other and additional cure claim amounts (a) may exist and/or may become known at a future date and (b) will accrue on an ongoing basis between the filing of this motion and any subsequent assumption of the *Lease Agreement*.

63.    Santa Rosa Mall expressly reserves its right to amend this or update any cure amounts in connection with its actual loss as additional documentation and information is provided, through and including the effective date of any proposed assumption and assignment of the *Lease Agreement*. Santa Rosa Mall further reserves the right to make such other objections as may be appropriate, including any proposed use or change of use of the Demised Premises.

64.    The filing of this *Supplemental Cure Objection* is not intended as, and shall not be construed as, a waiver of any and all rights, remedies and positions under the *Lease Agreement* and/or the *Insurance Policy*.

## Prayer for Relief

WHEREFORE, Santa Rosa Mall respectfully requests the Court deny the assumption and assignment of Store No. 1915's *Lease Agreement* unless and until the issues identified herein are addressed and grant any relief it deems just and proper.

[Signatures in the next page]

Respectfully submitted.
Dated: April 29, 2019.

**Ferraiuoli** LLC

221 Ponce de León Avenue
5th Floor, San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001

*/s/ Sonia E. Colon Colon*
Sonia E. Colón Colón
Admitted *Pro Hac Vice*
USDC-PR No. 213809
scolon@ferraiuoli.com

*/s/ Gustavo A. Chico-Barris*
Gustavo A. Chico-Barris
NY State Bar No. 929147
USDC-PR No. 224205
gchico@ferraiuoli.com

Attorneys for
*Santa Rosa Mall, LLC*