Donna H. Lieberman, Esq.
HALPERIN BATTAGLIA BENZIJA, LLP
40 Wall Street, 37th floor
New York, New York 10005
Telephone: (212) 765-9100
ahalperin@halperinlaw.net
dlieberman@halperinlaw.net

and

Andrew Conway, Esq.
Vice President, Senior Counsel
TAUBMAN
200 East Long Lake Road, Suite 300
Bloomfield Hills, Michigan 48304-2324
Telephone: (248) 258-7427
aconway@taubman.com

*Co-counsel to the Taubman Landlords*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, ) | |
| ) | Case No. 18-23538 (RDD) |
| Debtors. ) | |
| ) | (Jointly Administered) |

**THE TAUBMAN LANDLORDS' SUPPLEMENTAL CURE NOTICE**
**AND ADEQUATE ASSURANCE OBJECTION**
**TO DEBTORS' MOTION TO ASSUME AND ASSIGN**

The Taubman Landlords[1] (together with its affiliates, "Taubman"), by and through their undersigned counsel, submit this objection and reservation of rights (this "Supplemental Cure Objection") regarding the proposed cure amounts and other issues identified in the Debtors' *Notice*

---

[1] The Taubman Landlords are the owners of certain regional retail shopping centers which includes: Fairfax Company of Virginia L.L.C., commonly known as Fair Oaks Mall located in Fairfax, Virginia; TVO Mall Owner LLC, commonly known as Twelve Oaks Mall located in Novi, Michigan; and Sunvalley Shopping Center LLC, commonly known as Sunvalley Shopping Center located in Concord, California.

{00291619.3 / 0706-006 }                    1

*of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 1731] (the "Original Notice of Assumption and Assignment"). On January 25, 2019, Taubman filed the *Taubman Landlords' Original Cure Objection* [Docket No. 1879] (the "Original Cure Objection") which is incorporated herein by reference.

Taubman hereby submits this Supplemental Cure Objection to update the proposed cure amount with respect to Sunvalley Shopping Center LLC, commonly known as Sunvalley Shopping Center and located in Concord, California ("Sunvalley") and to again raise certain other cure and assignment issues. Sunvalley is identified as store 1368 by the Debtors, and the Sunvalley lease has now been designated for assumption and assignment by Transform Holdco LLC ("Transform" or the "Buyer") pursuant to the April 19, 2019 Designation Notice (as defined below).[2] In support of this Supplemental Cure Objection, Taubman respectfully states as follows:

## I.     SUPPLEMENTAL CURE NOTICE

1.     Taubman owns or operates numerous shopping centers at which the Debtors lease space pursuant to written leases and/or operate in space located in Taubman's properties under various reciprocal easement agreements (collectively, "Premises"). Each of the Premises is within a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See Androse Assocs. of Allaire, LLC v. A&P (In re A&P)*, 472 B.R. 666, 677 (Bankr. S.D.N.Y. 2012); *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086 (3d. Cir. 1990).

2.     On January 18, 2019, the Debtors filed the *Notice of Successful Bidder and Sale Hearing* [Docket No. 1730], which provided that the Debtors had determined that a bid submitted

---

[2] On April 19, 2019, the Debtors, filed the *Notice of Assumption and Assignment of Additional Designatable Leases* [Docket No. 3298] (the "April 19 Designation Notice") under which Taubman understands the Debtors intend to assign the Sunvalley lease to Buyer.

by ESL Investments, Inc. and its affiliates, through the Buyer (collectively, "ESL"), was the prevailing bid at the auction. The Debtors concurrently filed the Original Notice of Assumption and Assignment, which provided, among other things, a list of contracts and leases proposed to be assumed in connection with the proposed ESL transactions, including the Debtors' proposed cure amounts for such contracts and leases.

3. On April 19, 2019, the Debtors filed the Designation Notice under which they seek to assign leases related to certain real property assets that were owned by the Debtors and sold to Transform. [D.N. 3298] One property included in the April 19 Designation Notice is the ground lease for Store #1368 in Concord, California, which is identified for assignment to Transform Operating Stores LLC. Taubman is the lessor under that ground lease.

4. On January 25, 2019, Taubman filed its Original Cure Objection, which challenged, among other things, the Debtors' proposed cure amounts to assume certain Taubman leases identified in the Original Notice of Assumption and Assignment, including Sunvalley. In the Original Cure Objection, Taubman disputed the Debtors' proposed cure amount of $0 to assume the Sunvalley lease, asserted a cure claim of $96,644 (the "Original Taubman Cure Amount") and reserved its rights to supplement the Original Taubman Cure Amount to reflect additional amounts that were not yet known or due under the terms of the lease (including, without limitation, amounts owing on account of common area maintenance, taxes, utilities, year-end adjustments, indemnities, or other obligations accruing under the terms of the leases). Moreover, in accordance with Paragraph 34 of the Sale Order, Taubman is entitled to supplement its Original Cure Objection to reflect additional cure costs that have accrued since the Original Cure Objection was filed.

5. Accordingly, Taubman files this Supplemental Cure Objection to reflect such revised cure costs with respect to Sunvalley. The updated information reflects the amounts that

have accrued through April 25, 2019, and the amounts d are set forth in the table below. For the avoidance of doubt, Taubman reserves the right to further supplement the cure amount for the period between April 25, 2019 and the date of actual assignment.

| Center/Store No. | Debtors' Proposed Cure Amount | Taubman's Cure Amount[3] | Taubman's Attorneys' Fees | Taubman's Total Cure Amount |
|---|---|---|---|---|
| Sunvalley/1368 | $4,114.00 | $76,255.67 | $3,000.00 | $79,255.67 |

6.      The supplemented cure amount of $79,255.67 (the "Supplemented Cure Amount") represents known amounts that are due and owing to Taubman under the Sunvalley lease as of April 25, 2019, including a reasonable amount for attorneys' fees owed to Taubman. As noted above, the Supplemented Cure Amount may also increase prior to any actual date of assignment of any leases if the Debtors do not timely and properly pay all amounts that accrue after April 25th, and Taubman reserves all rights in connection therewith. Certain documentation supporting the calculation of the Supplemented Cure Amount is annexed hereto as Exhibit 1; additional information will be provided on request, and Taubman will make its personnel available to work with the Debtors to reconcile the cure amounts in good faith.

## II.    ADEQUATE ASSURANCE AND RELATED ISSUES

**(a)    Restrictive Easements**

7.      Pursuant to section 365(b)(1) of the Bankruptcy Code, the proposed assumption and assignment of Taubman's leases may not be consummated unless all defaults under the leases, including the Sunvalley lease, have been cured as of the effective date of the assignment. The Debtors must also assume and assign the leases in their entirety, and the assignee is subject to the

---

[3] Sunvalley cure amount includes a Mechanics' Lien in the amount of $75,046.00 asserted by Maloney & Bell General Construction, Inc.

{00291619.3 / 0706-006 }                    4

terms and conditions thereof *cum onere*. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*."); *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and rejected in part . . . The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits."). Moreover, section 365(b)(3) of the Bankruptcy Code further requires that the assumption and assignment of any lease in a "shopping center" be subject to all of the provisions of the applicable lease, including Restrictive Covenants. *See* 11 U.S.C. § 365(b)(3)(C) (requiring that "assumption or assignment of such lease is subject to all the provisions thereof"); *Bildisco*, 465 U.S. at 531; *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).

8. Further, a number of the other properties identified in Debtors filings[4] appear to be Sears stores that were owned by the Debtors (and not subject to leases) but are located in Taubman shopping centers and were transferred to the Buyer, all of which are subject to various reciprocal easement agreements and other Restrictive Covenants. Pursuant to paragraph 59 of the Sale Order, all of the Debtor-owned real property assets were transferred to the Buyer at closing subject to all reciprocal easement agreements and other Restrictive Covenants.[5] While Taubman does not

---

[4] Docket Nos. 3214 and 3298.

[5] *See* Sale Order, ¶ 59(a) ("*Nothing herein or in the Asset Purchase Agreement or any related document shall authorize . . . the sale of any real estate property owned by any of the Debtors, free and clear of (and shall not extinguish or otherwise diminish) any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property* such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") that are not executory or that run with the land.") (*emphasis added*). Pursuant to paragraph 59 of the Sale Order, the Buyer took all *Debtor-owned* real property at closing subject to all Restrictive Covenants Further, note that certain reciprocal easement agreements may be identified in various instances in the Debtors' filings as "Master Leases" or with other incorrect descriptions. Taubman reserves all rights in connection with the characterization of documents therein, and to the extent any reciprocal easement agreement or executory contract is proposed to be assigned, references herein to leases shall also apply to such agreements.

believe that these reciprocal easement agreements or other Restrictive Covenants are implicated by the Debtors' various designation notices, out of an abundance of caution, Taubman reserves all rights in connection therewith and intends to invoice the Buyer for any and all amounts that become due and owing thereunder in the ordinary course.

9.  As an initial matter, a debtor cannot sell free and clear of Restrictive Covenants under applicable law as such rights have been found to be non-executory (and therefore not subject to rejection) and/or to run with the land. Moreover, any question regarding whether the Restrictive Covenants run with the land may not be decided in the context of the sale hearing, but instead must be addressed pursuant to a separate adversary proceeding. *See In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018) ("[T]he Court concludes that it cannot decide substantive legal issues, including whether the covenants at issue run with the land, in the context of a motion to reject, unless such motion is scheduled simultaneously with an adversary proceeding or contested matter to determine the merits of the substantive legal disputes related to the motion."). Accordingly, Restrictive Covenants cannot be summarily stripped as part of the assignment and assumption process at all; instead, any such attempt would require declaratory relief that may only be obtained pursuant to an adversary proceeding. *See id.*

10. Taubman objects to the assumption and assignment of the Sunvalley lease by the Debtors to the extent that the Debtors' proposed cure amount falls short of the Supplemented Cure Amount. In addition, Taubman reserves all rights with respect to the assumption or assignment of any lease, including those not identified in the Notices of Assumption and Assignment (or in any subsequently filed notices of assumption and assignment). Further, Taubman reserves all rights with respect to assumption and assignment of any Taubman lease not addressed in the April 19

Designation Notice, including its right to object to any proposed cure amounts or adequate assurance of future performance, and reserves the right to supplement the cure amounts included herein.

**(b)** **Adequate Assurance of Future Performance**

11. In connection with the assumption of leases, shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of adequate assurance of future performance. *In re Joshua Slocum*, 922 F.2d 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002). In connection with a shopping center lease, adequate assurance of future performance includes adequate assurance:

> (A) of the source of rent… due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee… shall be similar to the financial condition and operating performance of the debtor…;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity, … and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

12. The Debtor bears the burden of proving adequate assurance of future performance in connection with the assumption of the Lease. *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

13. To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, Taubman and its attorneys must receive the following

information from the exact proposed assignee of the Lease:

(i) The exact name of the entity which is going to be designated as the proposed assignee;

(ii) The proposed assignee's and any guarantor's tax returns and audited financial statements (or un-audited, if audited financials are not available) and any supplemental schedules for the calendar or fiscal years ending 2016, 2017, and 2018;

(iii) The number of stores the proposed assignee operates and all trade names that the proposed assignee uses;

(iv) A statement setting forth the proposed assignee's intended use of the premises;

(v) The proposed assignee's retail experience and experience operating in-line stores in a shopping center;

(vi) The proposed assignee's 2018 and 2019 business plans, including sales and cash flow projections; and

(vii) Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Lease.

(c)     **The Assignee's Indemnification Obligations**

14.     Any Buyer or the assignee must be required to comply with all contractual obligations to indemnify and hold Taubman harmless with regard to events which occurred before assumption and assignment, but which were not known to Taubman as of the date of the assumption and assignment. This includes, but is not limited to, (i) claims for personal injury, (ii) damage and destruction by the Debtors or their agents, and (iii) environmental damage or clean-up. To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Lease, either (a) the Buyer or assignee must be required to assume all responsibility for any and all such claims, notwithstanding anything to the contrary contained in any court order, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise)

in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the premises where Taubman is joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

15.     Until Taubman receives all of this information and assurance that the assignee can and will comply with all of the obligations identified above, the Debtors and the proposed assignee have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

## JOINDER AND RESERVATION OF RIGHTS

16.     Taubman reserves the right to make such other and further objections as may be appropriate as additional documentation and information is provided. Taubman specifically reserves all rights, remedies (including setoff and recoupment), and positions with respect to any proposed assignee via designation rights, including the right to object to any proposed use or change of use of any Premises once such proposed assignee has been identified or to amend or update any cure amounts in connection therewith. Taubman hereby joins in any objections filed by the Debtors' other lessors and the official committee of unsecured creditors to the extent not inconsistent herewith.

## CONCLUSION

WHEREFORE, Taubman respectfully requests that the Court (i) deny the assumption and assignment of the Taubman leases, including the Sunvalley lease, unless and until the issues identified herein are adequately addressed, (ii) award Taubman its costs and attorneys' fees incurred in connection with this objection and (iii) grant such relief as the court deems just and proper.

Dated: April 29, 2019                           HALPERIN BATTAGLIA BENZIJA, LLP

*/s/ Donna H. Lieberman*
Donna H. Lieberman, Esq.
40 Wall Street, 37th Floor
New York, New York 10005
Telephone: (212) 765-9100
dlieberman@halperinlaw.net

and

TAUBMAN

*/s/ Andrew S. Conway*
Andrew S. Conway, Esq.
Vice President, Senior Counsel
200 East Long Lake Road, Suite 300
Bloomfield Hills, Michigan 48304-2324
Telephone: (248) 258-7427
aconway@taubman.com

*Co-counsel to the Taubman Landlords*