**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                                       : Chapter 11
                                                             :
SEARS HOLDING CORPORATION, *et al.*,                         : Case No. 18-23538 (RDD)
                                                             :
                                                             : (Jointly Administered)
                                                             :
              Debtors[1].                                    : RELATED DOC. NOS. 1774, 2284, 2507, 3008, 3298
------------------------------------------------------------ x

**BILTMORE COMMERCIAL PROPERTIES I, LLC'S OMNIBUS
(I) DESIGNATABLE CONTRACT ASSUMPTION AND ASSIGNMENT
OBJECTION, (II) OBJECTION TO THE ASSUMPTION AND ASSIGNMENT
OF THE UNEXPIRED LEASE FOR STORE 3886 FREE AND CLEAR OF
RESTRICTIVE COVENANTS, AND (III) SUPPLEMENTAL CURE OBJECTION**

Biltmore Commercial Properties I, LLC ("Landlord"), by and through its undersigned counsel, hereby files this omnibus objection (the "Omnibus Objection") to (i) the assumption and assignment of that certain Lease Agreement dated March 27, 1991 (as amended, the "Lease") with Kmart Corporation ("Kmart") for the premises located at 980 Brevard Road, Asheville, North Carolina, and known as Kmart Store No. 3886 ("Store 3886") to Transform Leaseco LLC (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

38739317v5

"Assignee") pursuant to the *Notice of Assumption and Assignment of Additional Designatable Leases* [Doc. No. 3298] (the "Designated Lease Notice")[2] without adequate assurance of Assignee's future performance; (ii) the assignment of the Lease to the Assignee free and clear of any Restrictive Covenants; and (iii) to the revised cure amount for the Lease asserted in the Designated Lease Notice. In support of this Omnibus Objection, the Landlord states as follows:

## PRELIMINARY STATEMENT

The Debtors cannot assume and assign the Lease on the terms currently proposed for several reasons.

First, the Debtors have failed to provide adequate assurance of the Assignee's future performance under the Lease. Although the Debtors may have contemplated sending "adequate assurance packages" to lessors, Landlord has not received one, nor have the Debtors or Buyer filed anything on the docket providing any information concerning the formation, purpose, operations or financial wherewithal of the Assignee. By withholding such information, the Debtors have deprived the Landlord of a fundamental right under section 365 of the Bankruptcy Code. Landlord doubts that the Assignee can perform the Lease obligations and based on its own diligence remains concerned that Assignee is merely a shell or holding company that has no intention to operate a retail business on the premises and instead intends to use the assignment as an opportunity to continue to shop the Lease and extend the limited timeline for assumption and assignment under the Bankruptcy Code and the Sale Order. It is therefore likely that the premises will remain "dark" in contravention of the Lease, and upon assignment the Assignee will immediately breach various other use and occupancy restrictions incorporated therein.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Designated Lease Notice.

Second and, relatedly, the Debtors are seeking to assign free and clear of any Restrictive Covenants, which is an end run around the Bankruptcy Code's requirement that they provide adequate assurance that assignment of the Lease "is subject to all the provisions thereof, including (but not limited to) provisions such as . . . use[] or exclusivity provision. . . ." 11 U.S.C. §365(b)(3)(C). More generally, the Debtors' proposal conflicts with black letter law that debtors in possession may only assume and assign unexpired leases *cum onere*; they cannot cherry pick certain lease provisions while excising others. Although the Debtors and Buyer frame their request as an assignment free and clear of Restrictive Covenants, they are really seeking authorization to modify the Lease without obtaining Landlord's consent. (And, for the avoidance of doubt, Landlord will not consent.) So, if the Debtors want to assume and assign the Lease, they must do so subject to all of the Lease's Restrictive Covenants.

And third, the Debtors have ignored their statutory obligation to cure. Landlord previously filed an objection to the original cure amount, which objection remains pending. Landlord asserted that, as of January 31, 2019, the Debtors owed Landlord at least $42,788.51. Since then, the Debtors decreased the proposed cure to $0.00, *i.e.*, no cure at all. But nearly all of the $42,788.51 plus additional charges that have become due since the end of January remain outstanding. Further, Landlord has not had the opportunity to cash the April 2019 rent check—which it received almost a month late—and does not know whether that check will clear.

For these reasons, the Court should deny the Debtors' request to assume and assign the Lease.

## BACKGROUND

1.     On October 15, 2018 (the "Petition Date"), each of the above-captioned affiliated debtors and debtors in possession (each a "Debtor", and collectively, the "Debtors") filed voluntary

3

38739317v5

petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), and each thereby commenced chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.   The Debtors remain in possession of their property and continue to manage their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.   The Landlord is the owner of a shopping center in which Kmart operated a retail store (no. 3886) pursuant to the Lease for the Store 3886.[3]  Kmart ceased retail sales at the store on March 10, 2019, and Kmart vacated the premises March 15, 2019. A true and correct copy of the Lease between Landlord and Kmart (and the Addendum thereto) is attached hereto as Exhibit A.

4.   On October 26, 2018, the Court entered an order [Doc. No. 337] (the "Store Closing Order") approving certain procedures that may be used by the Debtors to close any of their stores, distribution centers, and other non-retail locations (the "Closing Stores") and sell the inventory, furniture, fixtures, and equipment at the Closing Stores. Pursuant to the Store Closing Order, the Debtors filed a *Notice of Intent to Conduct Store Closing Sales* [Doc. No. 1444] which included Store 3886 as a Closing Store.

5.   On November 21, 2018, the Debtors filed a motion [Doc. No. 429] (the "Sale Motion") seeking, among other things, entry of an order authorizing and approving the sale of certain Acquired Assets and the assumption and assignment of certain executory contracts and unexpired leases (including the instant Lease) of the Debtors in connection therewith.

6.   On January 23, 2019, the Debtors filed and served on the Landlord the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory*

---

[3] Store 3886 is located within a "shopping center" for purposes of §365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

*Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Doc. No. 1774] (the "Supplemental Notice") which included the Lease for Store 3886 and a proposed cure amount of $18,481.08.

7. On January 31, 2019, the Landlord filed an objection to the Supplemental Notice [Doc. No. 2284] (the "Initial Landlord Objection") stating, among other things, that the cure amount listed in the Supplemental Notice is incorrect, Debtor Kmart owes at least $31,288.51 in 3rd and 4th quarter CAM charges and $11,500 in store closing related damages, and reserving all rights to assert further objections.

8. On February 8, 2019, the Court entered an order [Doc. No. 2507] (the "Sale Order") approving the Asset Purchase Agreement, dated as of January 17, 2019, by and among Transform Holdco LLC (the "Buyer") and the sellers party thereto (including the Debtors and certain other subsidiaries of Sears Holding Corporation), authorizing the assumption and assignment of certain executory contracts and leases in connection therewith, and granting related relief sought in the Sale Motion.

9. In accordance with the terms of the Sale Order, the Buyer was granted the right to designate certain Designatable Leases such as the Lease for assumption and assignment for up to sixty (60) days after the Closing Date, which date occurred on February 11, 2019 and was later extended through May 3, 2019 (the "Designation Rights Period").

10. On April 2, 2019, the Court entered its *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* [Doc. No. 3008] (the "Assumption and Assignment Order").

11. On April 16, 2019, undersigned counsel to the Landlord emailed counsel to both the Debtors and Buyer inquiring as to the status of the unpaid April 2019 monthly base rent in the amount of $41,258.08.

12. On April 19, 2019, the Buyer filed the Designated Lease Notice designating the Lease for assumption and assignment to the Assignee and, despite the Initial Landlord Objection and counsel's April 16, 2019 email correspondence, included a revised cure amount for the Lease of $0.00 (the "Revised Cure Amount").

13. On April 29, 2019, Landlord received a check from the Debtors dated April 24, 2019 for the full amount of the April base rent. Because Landlord only just received this check, the check has not been cashed. And, therefore, Landlord does not know whether the check will clear.

14. Paragraphs 26 and 27 of the Assumption and Assignment Order establish procedures relating to, among other things, objections to Designated Lease Notices. Paragraph 34 of the Sale Order and the Designated Lease Notice itself includes procedures relating to supplemental objections to revised cure amounts. This Omnibus Objection is being timely filed in accordance with the foregoing procedures.

## **OBJECTION**

15. This Court should deny the Debtors' request to assume and assign the Lease to the Assignee or, alternatively, condition that relief on the Debtors providing adequate assurance of future performance. In addition, the Court should deny the Buyer's designation of the Lease for assignment free and clear of any Restrictive Covenants. Finally, an accurate cure amount should be fixed and paid to the Landlord as a prerequisite to any assumption and subsequent assignment of the Lease.

**I.    The Debtors Have Failed to Provide Landlord with Adequate Assurance of Transform's Future Performance to Which Landlord is Entitled Under § 365(b)(3), (f)(2) of the Bankruptcy Code.**

16.    A debtor cannot assign an unexpired lease unless it provides "adequate assurance" that its proposed assignee will perform under the lease. 11 U.S.C. § 365(b)(3), (f)(2).[4] Section 365(f)(2) of the Bankruptcy Code provides in pertinent part:

> The Trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

17.    This adequate assurance obligation is especially onerous for a debtor seeking to assign a lease of real property in a shopping center. In that instance, the debtor must provide adequate assurance—

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

---

[4] This is true regardless of whether the lease is in default. *See* 11 U.S.C. § 365(f)(2)(B).

>  (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

*Id.* § 365(b)(3).

18. Congress enacted section 365(b)(3) of the Bankruptcy Code to protect shopping center landlords, which often face unique challenges when their tenants file for bankruptcy and move to assign their retail leases. As Congress recognized, assignment of a shopping center lease by a debtor in bankruptcy will deprive the landlord of the benefit of its original bargain absent adequate assurance of the assignee's future performance. *In re Ames Dep't Stores, Inc.,* No. 01-42217 (REG), 2005 WL 1000263, at *5–6 (Bankr. S.D.N.Y. Apr. 29, 2005) (quoting *In re Ames Dep't Stores, Inc.*, 127 B.R. 744, 752–53 (Bankr. S.D.N.Y. 1991)).

19. The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under section 365 of the Bankruptcy Code. *See In re Rachels Indus.,* 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also In re Embers 86th Street, Inc.*, 184 B.R. 892, 902 (Bankr. S.D.N.Y. 1995).

20. Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See*, *e.g.*, *In re Haute Cuisine, Inc.*, 58 B.R. 390, 392–94 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented); *see also In re Bygaph, Inc.*, 56 B.R. 596, 605–606 (Bankr. S.D.N.Y. 1986).

21. In determining whether a moving party provides adequate assurance of future performance under section 365(b) of the Bankruptcy Code, courts look to sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits, or other similar forms of security or guarantee. *See In re Lafayette Radio Elecs. Corp.*, 9 B.R. 993, 1000 (Bankr. E.D.N.Y.

1981); *In re Belize Airways*, 5 B.R. 152, 156 (Bankr. S.D. Fla. 1980). Courts also look to the operating experience of the proposed assignee. *In re Bygaph*, 56 B.R. at 605.

22. Landlord submits that to satisfy the adequate assurance of future performance burden, the Debtor and/or Buyer must, at a minimum, provide the following information about the Assignee:

    (i) the Assignee's capitalization and structure;

    (ii) the Assignee's intended use for the space;

    (iii) proposed credit support for the Assignee's obligations under the Lease (e.g. letter of credit, security deposit and/or guaranty);

    (iv) cash flow projections for the Assignee, the Assignee's most recent business plan, and any financial projections, calculations and/or pro-formas prepared in contemplation of the sale and assignment and the basis for those calculations and projections;

    (v) all documents and other evidence of the potential Assignee's retail experience and experience operating in-line stores in a shopping center; and

    (vi) a contact person for the Assignee that Landlord may directly contact in connection with the adequate assurance of future performance.

23. Neither the Debtor, the Buyer nor the Assignee has provided any information to satisfy the adequate assurance of future performance information required by section 365(b)(1) of the Bankruptcy Code, much less the heightened standards that Congress established for the assumption of shopping center leases contained in section 365(b)(3)(A)–(D). Landlord is concerned it is getting a holding company as a tenant that has no intention of operating a retail business on the premises and is making an end-run around the timelines afforded by the Bankruptcy Code and Designation Rights Period in order to continue to shop the Lease to another third party.

At this time, the absence of information regarding the Assignee and its capabilities fails to satisfy the necessary requirements of sections 365(b)(3) and (f)(2) of the Bankruptcy Code.

II.     **The Debtors' Proposal to Assign the Lease Free and Clear of Restrictive Covenants is an Impermissible Lease Modification that Violates Section 365(b)(3) and (f) of the Bankruptcy Code.**

24.     As set forth above, section 365(b)(3) of the Bankruptcy Code, in pertinent part provides:

> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3)(C), (D).

25.     Sections 365(b)(3) and (f)(2) of the Bankruptcy Code "evidence Congress' belief that use and tenant mix in a shopping center lease are material." *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370-71 (Bankr. D. Del. 1999) (use provisions "are at the heart of the interdependence of shopping center leases, as recognized by Congress in requiring an assignee to demonstrate an ability to adhere to them. They are crucial to the tenant mix, which is designed to attract the right number and mix of customers to the mall."). The bankruptcy court in *Sun TV* ultimately concluded that "section 365(b)(3) does not permit [use provisions] to be stricken, even where they prevent the Debtor from selling the [l]ease." *Id*. at 371.

26.     Through the BAPCPA[5] amendments, Congress ratified this position, namely that "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin

---

[5] On October 17, 2005, the Bankruptcy Abuse Prevention And Consumer Protection Act of 2005 ("BAPCPA") went into effect, clarifying, *inter alia*, the protections that Landlord is entitled to under 11 U.S.C. § 365.

Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

*Id.* at 2461.

27.     The BAPCPA amendments clarified Section 365 to reflect the Congressional intent that section 365(f)(1) of the Bankruptcy Code not be used by debtors to avoid lease provisions. The language of section 365(f), and any such ability to assume and assign the Leases, is subject to the protections provided by section 365(b)(1) and (3). Section 365(f) does not modify section 365(b). Therefore, any assumption of the Leases must remain subject to all provisions of the Lease, including those provisions concerning use, radius, exclusivity, tenant mix and balance, etc.

28.     Here, paragraph 26 of the Assumption and Assignment Order provides that to the extent the Debtors seek to assume and assign and leases free and clear of any Restrictive Covenants, "the applicable Designated Lease **shall describe the Restrictive Covenant** that they party is seeking to extinguish or otherwise diminish … ." Assumption and Assignment Order, at ¶ 26 (emphasis added).  The Designated Lease Notice, however, states only that with respect to the Lease the Buyer intends to designate "*any*" Restrictive Covenants "*that are executory and do not run with the land*" without describing in any specific manner the provisions in the Lease. Designated Lease Notice, at ¶ 18 (emphasis added).

29.     The Designated Lease Notice violates the Assumption and Assignment Order and basic notions of due process by failing to provide any information concerning which provisions of the Lease the Debtors and Buyer seek to extinguish over Landlord's objection.

11

30. By this Omnibus Objection, Landlord objects to the assumption and/or assignment to the Assignee or any other party of the Lease free and clear of *any* of the Lease's Restrictive Covenants, including, without limitation, those specifically identified in paragraph C of the Addendum to the Lease (and made a part of Article 22 of said Lease). Pursuant to the protections afforded under section 365(b)(3) and (f)(2) of the Bankruptcy Code, upon any assumption and assignment the Lease should remain subject to *all* such provisions.

### III. The Debtors' Revised Cure Amount of $0.00 is Incorrect and Evidences Bad Faith.

31. The Buyer incorrectly listed the Revised Cure Amount under the Lease as $0.00 despite the fact that the Buyer is on notice that substantial cure costs are owed under the Lease in the event that the Lease is assumed and assigned. There is no good faith basis for Buyer's assertion that cure costs are $0.00 given Landlord's prior filings in this case, detailed invoices sent to the Debtors, its email communications notifying the Debtors and Buyer of unpaid April 2019 rent, and the fact that the April rent payment was three weeks late and has not cleared yet. Moreover, Kmart has not paid First Quarter CAM charges, which were billed on April 17, 2019. The Buyer has also failed to acknowledge the obligation to pay 2019 property taxes, Ridgefield POA charges and Second Quarter CAM charges that continue to accrue.

32. Because of the additional attorneys' fees that the Debtors and the Buyer have forced Landlord to accrue by their failure to pay—or even acknowledge—their pre-petition and post-petition obligations under the Lease, Landlord also seeks payment of attorney fees allowed under the Lease and incurred in order to enforce and protect its rights under the Lease. *See Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric*, 127 S. Ct. 1199, 1206 (2007); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, No. 01-Civ-8946, 2002 U.S. Dist. LEXIS 6186, *25–28 (S.D.N.Y. Apr. 8, 2002); *In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 756 (Bankr. S.D.N.Y. 1986). Landlord has incurred attorneys' fees of $6,587.00 through March 31, 2019 in

connection with Kmart's bankruptcy and failure to pay post-petition charges due under the Lease and will continue to accrue attorney fees recoverable under the Lease through the resolution of its objections.

33. The Debtors and the Buyer were aware or should have been aware of the following cure costs at the time that the Notice was filed:

    a. On October 18, 2018, Landlord sent Kmart a detailed invoice for Third Quarter Common Area Charges together with supporting invoices. Kmart owed Landlord $8,347.03 in Third Quarter CAM charges, which remains outstanding. A true and accurate copy of the October 18, 2018 CAM package is attached as <u>Exhibit B</u>.

    b. On January 22, 2019, Landlord sent Kmart a detailed invoice for Fourth Quarter Common Area Charges together with supporting invoices. Kmart owed Landlord $22,941.48 in Fourth Quarter CAM charges. Kmart paid part of these charges but still owes $6,640.19. A true and accurate copy of the January 22, 2019 CAM package is attached as <u>Exhibit C</u>.

    c. On January 31, 2019, Landlord filed the Initial Landlord Objection, which included then owing itemized cure costs of $42,788.51. Included in the Initial Landlord Objection were the amounts estimated to be owed as a result of the Debtors' damage to Landlord's building and pylon sign when it drilled into these structures to hang GOB sale signs (i.e., $11,500.00). When Kmart vacated Store 3886, it failed to repair the damage caused to Landlord's property.

    d. As set forth above, on April 16, 2019, Landlord's counsel corresponded with counsel to the Debtors and Buyers informing them that the April 2019 monthly rent under the Lease had not yet been paid.

13

38739317v5

e. On April 17, 2019, Landlord sent Kmart a detailed invoice for First Quarter Common Area Charges together with supporting invoices. Kmart owed Landlord $14,764.32 in First Quarter CAM charges, which remains outstanding. A true and accurate copy of the April 17, 2019 CAM package is attached as <u>Exhibit D</u>.

f. The correct cure amount owed to Landlord is at least as follows:

| Due Date | Description | Amount |
|---|---|---|
| 9-30-2018 | CAM Charge — 3rd Qtr. 2018 | 8,347.03 |
| 12-31-2018 | CAM Charge — 4th Qtr. 2018 unpaid balance | 6,640.19 |
| 03-15-2019 | Signage Removal (Pylon & Building) | 1,002.00 |
| 03-15-2019 | Repairs from GOB signage damage | 11,500.00 |
| 03-31-2019 | CAM Charge — 1st Qtr. 2019 | 14,764.32 |
| 04-01-2019 | Rent Charge[6] | 41,258.08 |
| 04-01-2019 | Property Taxes (January-April 2019) | 17,030.50 |
| 04-01-2019 | Ridgefield POA (January-April 2019) | 879.49 |
| 04-01-2019 | Attorney Fees through March 31, 2019 | 6,587.00 |
|  |  | **108,008.61** |

34. The Landlord has not been able to access the inside of the store and therefore reserves the right to seek additional damages caused by the condition in which Kmart left Store 3886. Landlord is also entitled to and expressly reserves the right to collect all year-end adjustments or other amounts that are due and payable under the Lease, regardless of their accrual or billing date, and amounts not yet known as of the date of this Omnibus Objection. Said amounts include, but are not limited to, charges/reconciliations for common area maintenance charges (including Second Quarter 2019 CAM charges), insurance, real estate taxes, attorney fees that continue to accrue, and all other charges accruing under the Lease from and after May 1, 2019.

---

[6] A few hours before filing this Omnibus Objection, Landlord received a check for the Rent Charge. Because payment was so untimely, however, the check has not been cashed yet. It is possible that the check may not clear.

Because some of these charges are payable in arrears, the amounts due cannot be calculated at this time. Nevertheless, the Debtors, the Buyer and/or any assignee will continue to be liable for all such charges as and when they come due under the Lease. Accordingly, the Debtors must be required to escrow and/or segregate sufficient funds to compensate Landlord for said charges when billed under the Lease or, in the alternative, any assignee of a Lease must be expressly held liable to pay such charges (in full and when due under the Lease) to the Landlord, regardless of whether said charges relate to periods that pre-date any assumption and assignment of the Lease. Landlord reserves all of its rights, including the right to make further objections or assert additional bases for its objections and to submit additional facts, documents or other evidence to the Court regarding the cure amount and the damage to the premises of Store 3886 caused by the Debtors and their agents.

## **RESERVATION OF RIGHTS**

35.     Landlord expressly reserves its rights to supplement, modify or amend this Omnibus Objection until such time as a final order is entered approving the assumption and assignment of, and cure amounts with respect to, the Lease. Nothing set forth herein shall constitute a waiver, discharge or disallowance of any and all rights, claims, causes of action, and defenses that Landlord has asserted, or may assert, with respect any proofs of claim against the Debtors. Landlord also expressly reserves all of its rights to seek to compel the assumption or rejection of the Lease. In addition, nothing set forth herein shall constitute a waiver or discharge of any and all of Landlord's rights under the Lease. Moreover, nothing set forth in this Omnibus Objection shall be construed as a waiver, release, discharge or disallowance of any and all

administrative claims of Landlord against any and all of the Debtors arising from, or in connection with, *inter alia*, any post-petition amounts due and owing to Landlord from the Debtors.

## CONCLUSION

**WHEREFORE**, Landlord respectfully requests that this Court enter an order (i) denying the Debtors' request to assume and assign the Lease to the Assignee or, alternatively, reserving Landlord's right to receive adequate assurances of future performance, (ii) denying the assumption and assignment of the Lease to Assignee or any other party free and clear of any Restrictive Covenants, (iii) in the event that Landlord's objections to the assumption and assignment are overruled, requiring payment of the correct cure amount as a pre-condition to assumption and assignment and otherwise reserving the Landlord's rights to an appropriate cure amount, and (iv) granting such other and further relief as this Court deems just and proper.

Dated: April 29, 2019
New York, New York

TROUTMAN SANDERS LLP

By: */s/ Brett D. Goodman*
Brett D. Goodman
Alissa K. Piccione
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Brett.Goodman@troutman.com
Alissa.Piccione@troutman.com

*Attorneys for Landlord*

38739317v5