**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re:                                                           :    Chapter 11
                                                                 :
SEARS HOLDING CORPORATION, *et al.*,                             :    Case No. 18-23538 (RDD)
                                                                 :
                                                                 :    (Jointly Administered)
                                                                 :
                        Debtors[1].                              :    RELATED DOC. NOS. 1774, 2281, 2507, 3008, 3298
---------------------------------------------------------------- x

## THE BRUCE TRUSTS' (I) DESIGNATABLE CONTRACT ASSUMPTION AND ASSIGNMENT OBJECTION, AND (II) RESERVATION OF RIGHTS

Steven Bruce as Trustee of the STEVEN BRUCE REVOCABLE TRUST, a trust formed under the laws of the State of California dated July 16, 1996; Cara Bruce and Lou Cuida as Trustees of the CARA BRUCE IRREVOCABLE TRUST, a trust formed under the laws of the State of Virginia dated December 6, 1993; and Allison Bruce and Lou Cuida as Trustees of the ALLISON BRUCE IRREVOCABLE TRUST, a trust formed under the laws of the State of Virginia dated December 6, 1993 (collectively the "Fee Owners"), by and through counsel, file this Designatable

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Contract Assumption and Assignment Objection (the "Objection")² to the assumption and assignment of the Kmart Lease to Transform Leaseco LLC (the "Assignee") pursuant to the *Notice of Assumption and Assignment of Additional Designatable Leases* [Doc. No. 3298] (the "Designated Lease Notice").³ In support of the Objection, the Fee Owners state as follows:

## PRELIMINARY STATEMENT

In bankruptcy, the law is clear that a debtor cannot assume and assign a lease if that lease has expired and no longer exists. Under those circumstances, there is simply nothing left for the debtor to assume and assign.

Here, the Debtors have failed to establish that the Kmart Lease (as defined below) is an unexpired lease. At the latest, the Kmart Lease expired on January 31, 2019 — over two months before the Kmart Lease was designated for assumption and assignment. To the extent that the Debtors maintain that certain lease amendments and an extension notice extended the Kmart Lease, they are wrong: The purported amendments were ineffective and, importantly, the Kmart Lease is a sub-sublease, the existence of which depended on the underlying leases. When the ground lease expired by its own terms, so did the Kmart Lease notwithstanding any notice to extend. Therefore, the Debtors' request to assume and assign the Kmart Lease must be denied.

## BACKGROUND

*The Kmart Lease*

1. The Fee Owners own nonresidential real estate located at 1001 Patton Avenue, Asheville, North Carolina (the "Shopping Center").

---

² As set forth herein, the Fee Owners also expressly reserve all of their rights with respect to, among other things, any objection to adequate assurance of future performance, Supplemental Cure Objection or Restrictive Covenant Objection.

³ Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Designated Lease Notice.

2.  Debtor Kmart Corporation ("Kmart") operated a retail store (no. 4112) ("Kmart Store 4112") in the Shopping Center.[4]

3.  The Kmart Lease dates back to 1964 and was originally between Patton Avenue Development Corporation ("PADC"), as landlord, and S. S. Kresge Company ("Kresge"), as tenant, for the space now known as Kmart Store 4112 (the "Kmart Lease"). At that time, PADC owned the commercial development (the "Commercial Development") where Kmart Store 4112 is located. A true and correct copy of the original Kmart Lease is attached as Exhibit A.

4.  The Kmart Lease was for an initial term of approximately 20 years and gave the tenant the option to extend the lease for three consecutive terms of five years each.

5.  Record notice of the Kmart Lease was filed with the Office of the Register of Deeds of Buncombe County, North Carolina (the "Registry"), in Book 918 at Page 279 (filed March 22, 1965). A true and accurate copy of the Record Notice of the Kmart Lease is attached as Exhibit B. According to the Record Notice, the Kmart Lease expired no later than 35 years from the first day of occupancy by the Tenant.

6.  On February 1, 1966, PADC sold the Commercial Development to Martin Bruce and his wife, Sylvia Bruce (together, the "Bruces").[5]

7.  That same day, the Bruces leased their interest in the Commercial Development to Patton Plaza Associates ("PPA"). This ground lease (as amended, the "Ground Lease," a true and

---

[4] Store 4112 is located within a "shopping center" for purposes of section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

[5] The Shopping Center was subsequently conveyed to the Martin Bruce Revocable Trust and Sylvia Bruce Revocable Trust by deeds dated April 5, 1988 and recorded in the Registry on April 12, 1988 in Book, 1515, Page 258, and Book 1515, Page 269, respectively. Ownership was further conveyed and is presently split among the Fee Owners as follows: (i) 25% in THE ALLISION BRUCE IRREVOCABLE TRUST, (ii) 25% in THE CARA BRUCE IRREVOCABLE TRUST, and 50% in THE STEVEN BRUCE REVOCABLE TRUST.

38769147v8

correct copy of which is attached as <u>Exhibit C</u>) was entered into and made subject to the Kmart Lease.

8. Record notice of the Ground Lease was filed with the Registry in Book 934 at Page 649 (filed February 1, 1966) and Book 2601 at Page 846 (filed October 5, 2001).

9. By Assignment dated November 6, 1969, PPA assigned its interest in the Ground Lease to Nineteenth Asheville Corp. ("<u>NAC</u>").

10. By Assignment dated December 17, 1975, NAC assigned its interest in the Ground Lease to Asheville K-M Associates ("<u>Asheville K-M</u>"),[6] and Asheville K-M then effectively sublet the Shopping Center to NAC pursuant to a lease between the parties dated December 23, 1975 (the "<u>Sandwich Lease</u>").

11. The Assignments of the Ground Lease were recorded in the Registry at Book 1009, Page 487 (filed November 7, 1969); Book 1133, Page 376 (filed December 23, 1975); and Book 2220, Page 433 (filed January 10, 2000). The Sandwich Lease was recorded in the Registry at Book 1124, Page 438 (filed January 13, 1976) and Book 1135, Page 162. A true and correct copy of the Record Notice of the Sandwich Lease is attached as <u>Exhibit D</u>.

12. Upon information and belief, there have been three alleged amendments to the Kmart Lease since its original execution: an Amendment to Lease between the original parties dated August 27, 1965 (the "<u>First Amendment</u>"); a Second Amendment to Lease between Nineteenth Asheville Partners ("<u>NAP</u>")[7] and Kmart dated March 3, 1992 (the "<u>Second Amendment</u>"); and a Third Amendment to Lease between NAP and Kmart dated May 23, 2017

---

[6] On or about December 31, 1999, Asheville K-M Associates assigned its interest in the Ground Lease to Asheville K-M Associates, LLC, in connection with a partnership conversion. For purposes of this Objection, both entities will be referred to as Asheville K-M.

[7] Fee Owners have no information regarding the relationship, if any, between NAC and NAP. Upon information and belief, no information regarding a relationship appears on the public record, and there is no recorded assignment of the Sandwich Lease or any other interest in the subject real property to NAP.

4

38769147v8

(the "Third Amendment" and, with the First Amendment and Second Amendment, the "Amendments"). True and correct copies of the Amendments are attached collectively as Exhibit E.

13. Neither the Fee Owners nor their predecessors in interest are parties or signatories to the Amendments.

14. None of the Amendments have been filed in the Registry nor has any notice of the Amendments been filed in the Registry.

15. The Second Amendment states that the term of the Kmart Lease extends through November 30, 2012 and may be further extended at the option of the tenant for four additional terms of five years each.

16. Asheville K-M declined to extend the Ground Lease beyond January 31, 2019. Accordingly, the Ground Lease expired on January 31, 2019 and is no longer of any force or effect.

17. Because the Ground Lease expired on January 31, 2019, the Sandwich Lease also expired on January 31, 2019. Further, the Kmart Lease (if not already expired) expired on January 31, 2019.

18. By notice dated July 20, 2018 (the "Notice") Kmart attempted to claim that the Kmart Lease would be extended through November 30, 2022. A true and accurate copy of the Notice is attached as Exhibit F.

19. By letter dated August 6, 2018 (the "Fee Owners' Letter"), the Fee Owners rejected the Notice. As stated in the letter, the Ground Lease was set to expire on January 31, 2019 and, therefore, the Kmart Lease would necessarily expire at that time — if it had not already. A copy of the Fee Owners' Letter is attached as Exhibit G.

38769147v8

*The Debtors' Bankruptcies and Efforts to Assume and Assign the Kmart Lease*

20.     On October 15, 2018 (the "Petition Date"), each of the above-captioned affiliated debtors and debtors in possession (each a "Debtor", and collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), and each thereby commenced Chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (the "Court").

21.     The Debtors remain in possession of their property and continue to manage their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

22.     On October 26, 2018, the Court entered an order [Doc. No. 337] (the "Store Closing Order") approving certain procedures that may be used by the Debtors to close any of their stores, distribution centers, and other non-retail locations (the "Closing Stores") and sell the inventory, furniture, fixtures, and equipment at the Closing Stores. Pursuant to the Store Closing Order, Kmart Store 4112 was designated as one of the Initial Closing Stores (as defined in the Store Closing Order).

23.     On November 21, 2018, the Debtors filed a motion [Doc. No. 429] (the "Sale Motion") seeking, among other things, entry of an order authorizing and approving the sale of certain Acquired Assets and the assumption and assignment of certain executory contracts and unexpired leases (including the Kmart Lease) of the Debtors in connection therewith.

24.     On January 23, 2019, the Debtors filed the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Doc. No. 1774] (the "Supplemental Notice"), which included the Kmart Lease for Kmart Store 4112 and a proposed cure amount of $10,170.60.[8]

---

[8] The Supplemental Notice also refers to, in error, a ground lease with the Estate of Walter R. Samuels (deceased) as the counterparty with an alleged expiration date of 2/29/2020 and cure cost of $0.00.

25. On January 31, 2019, the Fee Owners filed an objection to the Supplemental Notice [Doc. No. 2281] (the "Initial Fee Owners' Objection") stating, among other things, that the Kmart Lease expired and could not be assumed and assigned, and reserving all rights to assert further objections.

26. On February 8, 2019, the Court entered an order [Doc. No. 2507] (the "Sale Order") approving the Asset Purchase Agreement, dated as of January 17, 2019, by and among Transform Holdco LLC (the "Purchaser") and the sellers party thereto (including the Debtors and certain other subsidiaries of Sears Holding Corporation), authorizing the assumption and assignment of certain executory contracts and leases in connection therewith, and granting related relief sought in the Sale Motion.

27. In accordance with the terms of the Sale Order, the Buyer was granted the right to designate certain Designatable Leases such as the Lease for assumption and assignment for up to sixty (60) days after the Closing Date, which date occurred on February 11, 2019 and was later extended through May 3, 2019 (the "Designation Rights Period").

28. On April 2, 2019, the Court entered its *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* [Doc. No. 3008] (the "Assumption and Assignment Order").

29. On April 19, 2019, the Buyer filed the Designated Lease Notice designating the Kmart Lease for assumption and assignment to the Assignee, despite the Initial Fee Owners' Objection.[9] The Designated Lease Notice included a revised cure amount for the Kmart Lease of $0.00 (the "Revised Cure Amount").

---

[9] It bears noting that on February 19, 2019, undersigned counsel to the Fee Owners spoke with Debtors' counsel regarding the Initial Fee Owners' Objection, the Fee Owners' position that Kmart Lease has expired, and the Debtors attempts notwithstanding to assume and assign the Kmart Lease. Debtors' counsel indicated they

38769147v8

30. Paragraphs 26 and 27 of the Assumption and Assignment Order establish procedures relating to, among other things, objections to Designated Lease Notices. Paragraph 34 of the Sale Order and the Designated Lease Notice itself includes procedures relating to supplemental objections to revised cure amounts. This Objection is being timely filed in accordance with the foregoing procedures.

## OBJECTION

31. A threshold requirement for assuming and assigning a lease in bankruptcy is that the lease is an "unexpired lease of the debtor." 11 U.S.C. § 365(a). Therefore, if a debtor's lease expires on its own terms pre- or postpetition, the debtor has nothing left to assume and assign. *See 130/40 Essex St. Dev. Corp. v. City of New York (In re 130/40 Essex St. Dev. Corp.),* No. 03-40944, 2008 WL 4845639, at *5 (Bankr. S.D.N.Y. Oct. 22, 2008); *In re Benrus Watch Co., Inc.*, 13 B.R. 331, 334 (Bankr. S.D.N.Y. 1981); *accord In re Stiletto Mfg., Inc.,* 588 B.R. 762, 766 (Bankr. E.D.N.C. 2018); *In re P.I.N.E., Inc.,* 52 B.R. 463, 465 (Bankr. W.D. Mich. 1985). State law governs whether a lease exists for purposes of section 365 of the Bankruptcy Code. *In re Kong*, 162 B.R. 86, 91 (Bankr. E.D.N.Y. 1993).[10]

32. As explained in more detail below, the Kmart Lease expired on January 31, 2001. The Amendments purporting to extend the Kmart Lease past that date were ineffective and failed to bind the Fee Owners. Alternatively, even if those Amendments were effective, the Kmart Lease

---

would look into this on their end. During the period from February 20, 2019 through March 4, 2019, several follow-up attempts were made to the Debtors for a response and on March 4, 2019 Debtors' counsel referred the issue to Buyer's counsel. That same day, undersigned counsel sent an email to Buyer's counsel highlighting the Initial Fee Owners' Objection and requesting an opportunity to speak and attempt to reconcile the issue. Buyer's counsel replied that they were reviewing the objection and would revert back, however, no response was ever provided. After the filing of the Designated Lease Notice, on April 23, 2019, undersigned counsel again emailed both the Debtors' and Buyer's counsel requesting a response as to their position that the Kmart Lease remains unexpired and subject to assumption and assignment. To date, neither the Debtors nor the Buyer have responded in any manner as to the basis for their position.

[10] For this reason, the Fee Owners reserve the right to move this Court for relief from the automatic stay to, among other things, obtain a finding from a North Carolina state court that the Kmart Lease has expired.

certainly expired on January 31, 2019, when the Ground Lease expired and was of no further force and effect. Therefore, the Debtors cannot assume and assign the expired Kmart Lease.

> *Any extension of Kmart's occupancy beyond January 31, 2001 <u>never bound Fee Owners.</u>*

33. The original Kmart Lease was for a term of 20 years and gave the tenant the right to extend for three more consecutive terms, each having five years. *See* Ex. A, Kmart Lease ¶¶ 2, 12. Thus, if the tenant exercised all renewals under the original Kmart Lease, the lease would have only continued until January 31, 2001.

34. Notwithstanding the supposed Amendments, the Kmart Lease was never extended past January 31, 2001 because the landlord under the Kmart Lease did not sign the Second and Third Amendments and any amendment of the Kmart Lease to extend it past January 31, 2001, required the written consent of the Fee Owners or their predecessors, as applicable.

35. Kmart's interest was at best only derivative of the leasehold and sub-leasehold estates under the Ground Lease and Sandwich Lease, respectively—both of which were recorded in the Registry before Kmart entered into the Amendments.

36. To the extent that the Ground Lease could be interpreted as authorizing the tenant thereunder to — subject to certain requirements — sublease the premises without the approval of the Fee Owners or their predecessors, those requirements were never met. First, the tenant under the Ground Lease at the time of the Second Amendment was Asheville K-M, but Asheville K-M was not a party to the Kmart Lease, as amended.

37. Second, the Ground Lease provided that the tenant was not authorized to sublease the premises if, among other things, the sublease's term would exceed ten years. *See* Ex. C, Ground Lease § 13.03. Under the Second Amendment, NAP and Kmart purported to agree to a ten-year sub-sublease term that could be extended for four additional terms of five years each. *See* Ex. E,

9

Second Amendment ¶ 2. Essentially, NAP and Kmart tried to enter into a 30-year lease when they had no authority to do so.

38. Moreover, the Sandwich Lease states that it cannot be extended without notice to Asheville K-M, and there is no evidence that such notice was ever provided. *See* Ex. D, Sandwich Lease at 2. Therefore, the Ground Lease and Sandwich Lease support the Fee Owners' position that the Amendments were ineffective to extend the Kmart Lease.

*The Kmart Lease, if unexpired before the Petition Date, expired when the Ground Lease terminated Postpetition.*

39. Under North Carolina law, the existence of a sublease (or a sub-sublease) is dependent on the underlying lease (or leases). Therefore, the "well-established rule is that 'the rights of a sublessee are measured by the rights of his sublessor, [ ] and termination of the original lease terminates any dependent sublease.'" *See E. Town Mkt., L.P. v. 550 Foods, LLC,* No. COA15-46, 2015 WL 4448455, at * 7 (N.C. App. July 21, 2015) (quoting *Neal v. Craig Brown, Inc.*, 86 N.C. App. 157, 163 (1987)). This rule applies notwithstanding the sublease's renewal or extension options. *Neal*, 86 N.C. App. at 163.

40. Asheville K-M allowed the Ground Lease to expire by its own terms on January 31, 2019. This caused NAP to lose the right to continue its occupancy under the Sandwich Lease. And Kmart, in turn, lost its right to continue its occupancy under the Kmart Lease. As a matter of law, the Notice could not prevent Kmart from losing its occupancy rights. Therefore, the Kmart Lease expired well before the Debtors filed the Designated Lease Notice, and the Debtors have no lease of Kmart Store 4112 to assume and assign.

### ALTERNATIVE OBJECTIONS AND RESERVATION OF RIGHTS

41. The Fee Owners reserve all their rights to further litigate the expiration of the Kmart Lease in this or any other court and will move for stay relief if necessary. To the extent that a court

of competent jurisdiction determines that the Kmart Lease is unexpired, the Fee Owners make the following alternative objections, and reserve all their rights regarding the same, including the right to supplement any of these objections:

- <u>Lack of Adequate Assurance of Future Performance.</u>  The Debtors have failed to provide adequate assurance of Assignee's future performance as expressly required by section 365(b)(3), (f) of the Bankruptcy Code. The Fee Owners have not received any information about Assignee, including its financial condition, current operations, and intentions with respect to the Kmart Lease. Therefore, the Fee Owners cannot evaluate Assignee's creditworthiness and determine whether Assignee can perform the Kmart Lease obligations. Until adequate assurance of future performance is given, the Fee Owners reserve all of their rights to determine the type and extent of security necessary under section 365(l) of the Bankruptcy Code.

- <u>Supplemental Cure Objection.</u> The Revised Cure Amount of $0.00 is incorrect. Including the February and March 2019 rent checks that the Fee Owners have received — **but have not cashed** — an aggregate balance of $69,633.32 remains outstanding on account of rent, additional rent and other related fees (including attorneys' fees), costs and charges under the Kmart Lease, as of the date of this Objection.

- <u>Restrictive Covenant Objection.</u> The Fee Owners object to the assignment of the Kmart Lease free and clear of its Restrictive Covenants. If the Debtors were to extinguish Restrictive Covenants unilaterally, they would be modifying the Kmart Lease in violation of, *inter alia*, sections 365(b)(3) and (f) of the Bankruptcy Code.

42. The Fee Owners expressly reserve all of their rights to supplement, modify or amend this Objection until a final order is entered with respect to the expiration, and/or alternatively the assumption/assignment or rejection, of the Kmart Lease. Nothing set forth herein shall constitute a waiver, discharge or disallowance of any and all rights, claims, causes of action, and defenses that the Fee Owners have asserted, or may assert, with respect any proofs of claim against the Debtors. In addition, nothing set forth herein shall constitute a waiver or discharge of any and all of the Fee Owners' rights under the Kmart Lease, any related lease, or Kmart Store 4112. The Fee Owners also reserve all their rights to assert claims for damages, including consequential damages, against the Debtors, the Buyer and/or the Assignee that Fee Owners may

have incurred as a result of being delayed by these parties from exercising the Fee Owners' rights with respect to the Shopping Center, Kmart Store 4112, and related leases. Moreover, nothing set forth in this Objection shall be construed as a waiver, release, discharge or disallowance of any and all administrative claims of the Fee Owners against any and all of the Debtors arising from, or in connection with, *inter alia*, any post-petition amounts due and owing to the Fee Owners from the Debtors.

## CONCLUSION

**WHEREFORE**, Fee Owners respectfully requests that this Court enter an order (i) denying the Debtors' request to assume and assign the expired Kmart Lease to the Assignee, (ii) reserving the Fee Owners' rights to supplement, modify or amend this Objection as may be required, and (iii) granting such other and further relief as this Court deems just and proper.

Dated: April 29, 2019
New York, New York

TROUTMAN SANDERS LLP

By: */s/ Brett D. Goodman*
Brett D. Goodman
Alissa K. Piccione
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
Facsimile: (212) 704-6288
Brett.Goodman@troutman.com
Alissa.Piccione@troutman.com

*Attorneys for Fee Owners*

12

38769147v8