# EXHIBIT E

## AMENDMENT TO LEASE

THIS AMENDMENT TO LEASE, made and entered into this 27th day of August, 1965, between PATTON AVENUE DEVELOPMENT CORPORATION, a North Carolina corporation having its principal office at Post Office Box 1747, Greensboro, North Carolina, 27402, herein referred to as "Landlord", and S. S. KRESGE COMPANY, a Michigan corporation having its principal office at 2727 Second Avenue, Detroit, Michigan, 48232, herein referred to as "Tenant";

WITNESSETH:

WHEREAS, Landlord and Tenant entered into a certain lease agreement dated December 18, 1964 relative to a certain tract or parcel of land in the City of Asheville, County of Buncombe, State of North Carolina, in a Commercial Development known as K-mart Plaza, a memorandum of which was duly recorded in the Office of the Register of Deeds of Buncombe County, North Carolina, on March 22, 1965, in Book 918, at Page 279; and

WHEREAS, it is the desire of the parties hereto that said lease be amended.

NOW, THEREFORE, in consideration of the sum of One Dollar ($1.00) by each of the parties paid to the other, the receipt of which is hereby acknowledged, the parties hereto do hereby covenant and agree, each with the other, as follows:

1. Article 18 of said lease dated December 18, 1964 is hereby amended to provide that anything in said Article 18 to the contrary notwithstanding, Tenant shall not cancel said lease, abate rentals, or otherwise credit or offset damages against rentals for default of Landlord in the performance of any covenant of said lease, either affirmatively or negatively, which act or omission relates to property beyond the limitation of the real estate described in Exhibit "A" attached to said lease; provided, however, nothing herein contained shall be construed as a waiver of rights _in personam_ against the Landlord nor remedies by way of injunctive relief against the Landlord. Wherever the word "Landlord" is used herein, it is intended that this shall also include the Landlord's principal owners, stockholders, directors, officers and their assignees or vendees.

2. Article 20 of said lease dated December 18, 1964 as aforesaid is



1.

hereby amended by adding the following sentence at the end of the fifth paragraph of said Article 20:

"The determination of that portion of any condemnation award to which the Tenant is entitled under this Article 20 shall be subject to approval by the holder of a properly recorded first mortgage against the demised premises, which approval shall not be unreasonably withheld, and no distribution of any condemnation award shall be made to the Tenant under this Article until such approval shall be obtained."

3. Articles 13, 19 and 36 of said lease dated December 18, 1964 are amended by adding a new sentence at the end of each Article as follows:

"Provided the holder of a properly recorded first mortgage shall have notified Tenant in writing that it is the holder of such lien on the demised premises and shall so request, Tenant shall, in the event it requires any action under this Article, give a similar notice to such holder and such holder shall be granted 60 days after receipt thereof to commence the action required by such notice."

Except as said lease agreement dated December 18, 1964 is expressly amended hereby, each and every of the terms and conditions thereof are hereby ratified, approved and confirmed.

IN WITNESS WHEREOF, the parties hereto have executed these presents in triplicate and affixed their seals hereto as of the day and year first above written.

WITNESSES:

PATTON AVENUE DEVELOPMENT CORPORATION

By _____ President

Attest: _____ Secretary

S. S. KRESGE COMPANY

By _____
John B. Hollister, Vice President

Attest: _____
John C. Cook, Assistant Secretary

_____
J. K. Tewel

_____
Agnes Krausman

2.

STATE OF NORTH CAROLINA) ss:
COUNTY OF GUILFORD      )

        I do hereby certify that on this   7th  day of  October  , 1965, before me,      Sue Hobbs            , a Notary Public in and for the County and State aforesaid, residing therein and duly commissioned, personally appeared    Lawrence T. Hoyle          and    T. C. Hoyle, Jr.       , known to me to be the President and Secretary of PATTON AVENUE DEVELOPMENT CORPORATION, who, being by me duly sworn, did depose and say that they reside in         Greensboro, Guilford County, North Carolina                 , respectively; that they are the President and Secretary respectively of PATTON AVENUE DEVELOPMENT CORPORATION, the corporation described in and which executed the foregoing instrument; that they know the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that, on behalf of said corporation and by order of its Board of Directors, they signed, sealed and delivered said instrument for the uses and purposes therein set forth, as its and their free and voluntary act; and that they signed their names thereto by like order.

        In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

                                                                       _____
                                                                              Notary Public

My commission expires:  August 10, 1967

3.

STATE OF MICHIGAN) ss:
COUNTY OF WAYNE  )

        I do hereby certify that on this    1st    day of October    , 1965, before me,    Lovisa Jenckes    , a Notary Public in and for the County and State aforesaid, residing therein and duly commissioned, personally appeared    John B. Hollister    and    John C. Cook    , known to me to be the Vice President and Assistant Secretary of S. S. KRESGE COMPANY, who, being by me duly sworn, did depose and say that they reside in    Detroit, Michigan    and    Grosse Pointe, Michigan    respectively; that they are the Vice President and Assistant Secretary respectively of S. S. KRESGE COMPANY, the corporation described in and which executed the foregoing instrument; that they know the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that, on behalf of said corporation and by order of its Board of Directors, they signed, sealed and delivered said instrument for the uses and purposes therein set forth, as its and their free and voluntary act; and that they signed their names thereto by like order.

        In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

                                                     _____
                                                     Lovisa Jenckes,    Notary Public

My commission expires    December 4, 1967

4.

Kmart #4112
Asheville, NC

## SECOND AMENDMENT TO LEASE

THIS AMENDMENT TO LEASE is made and entered into this 7'4 day of March, 1992, between NINETEENTH ASHEVILLE PROPERTIES, a New York partnership, having its principal office at 810 Seventh Avenue, 28th floor, New York, NY 10019 ("Landlord") and KMART CORPORATION, a Michigan Corporation, having its principal office at 3100 West Big Beaver Road, Troy, Michigan 48084 ("Tenant").

### WITNESSETH

WHEREAS, by Lease agreement dated, December 18, 1964, PATTON AVENUE DEVELOPMENT CORPORATION, a North Carolina corporation, leased to Tenant a building together with site improvements and land at a shopping center located at and situated in the City of Asheville, County of Buncombe, State of North Carolina; and more fully described in Exhibit "A" to the Lease; and

WHEREAS, the Lease agreement was modified by Amendment to Lease, dated August 27, 1965. The lease agreement, as modified, is herein referred to as the "Lease"; and

WHEREAS, Landlord, succeeded to the lessor's interest in the Lease; and

WHEREAS, Landlord and Tenant desire to further amend and modify the Lease as herein provided.

NOW, THEREFORE, it is mutually agreed, and the sufficiency of such is acknowledged, as follows:

1. Tenant, at tenant's expense, shall expand its storeroom in the demised premises by removing the wall between the main storeroom and the Food Super Market described in Article 1 of the Lease and combining them into one storeroom of 97,000 square feet.

2. The term of the Lease is extended to and including November 30, 2012. In addition Tenant shall have four successive options to extend the lease for additional periods of five years each; which options shall be exercised by notice to Landlord not less than six months prior to expiration of the then term of the Lease, as extended. If Tenant exercises all four options, the last option period will expire November 30, 2032.

3. Commencing December 1, 1992, the minimum rent under Article 3 of the Lease shall be increased to TWO HUNDRED EIGHT THOUSAND NINE HUNDRED and 00/100 DOLLARS ($208,900.00).

4. Commencing December 1, 1992, the additional rental under Article 4 of the Lease shall be an amount equal to one percent (1%) of gross sales in excess of TWELVE MILLION SIX HUNDRED FIFTY-FIVE THOUSAND DOLLARS ($12,655,000), as gross sales are defined in Article 4. Subparagraph (e) of Article 4 of the Lease is hereby deleted.

5. Commencing December 1, 1992, Tenant shall reimburse Landlord for (1) the ad valorem real estate taxes levied on tenant's buildings, and (2) tenant's pro rata share of the ad valorem real estate taxes levied against the land described in Exhibit "A".

Landlord and Tenant shall use their reasonable efforts to obtain a separate tax assessment with respect to Tenant's buildings. In the event that a separate tax assessment with respect to tenant's buildings cannot be obtained, then for purposes of this lease, the parties shall

- 1 -

refer to the office records of the assessing authority including but not limited to worksheets and field reports, in order to obtain the relevant building valuations required to calculate Tenant's separate liability for the real estate taxes hereunder.

In the event that neither a separate tax assessment for tenant's building can be obtained nor an accurate tax liability established from the assessing office records can be determined, the taxes allocable to tenant's buildings shall be equal to: Tenant's pro rata share of taxes attributable to all of the buildings on the land described in Exhibit "A".

Tenant's pro rata share of taxes attributable to all of the building on the land described in Exhibit "A" shall be computed by multiplying the total tax liability against the buildings located with the land described in Exhibit "A" by a fraction the numerator of which shall be the number of square feet of ground floor area of Tenant's building at the end of such real estate fiscal tax year (excluding the garden shop) multiplied by 70% and the denominator of which shall be the total number of square feet of ground floor area of all of the buildings located within the land described in Exhibit "A" (excluding Tenant's building) at the end of such real estate fiscal tax year plus the total number of square feet of ground floor area of Tenant's building at the end of such real estate fiscal year (excluding the garden shop) multiplied by 70%.

Tenant's pro rata share of the taxes assessed against the total land described in Exhibit "A" shall be computed by multiplying the total tax liability against the land described in Exhibit "A" by a fraction, the numerator of which shall be the number of square feet of Tenant's buildings, and the denominator of which shall be the total square footage of all of the buildings on the land described in Exhibit "A".

To the extent permitted by law, Landlord shall pay any such assessment in annual installments. Tenant shall reimburse Landlord only for those installments which shall become due and payable during the lease term. Any such installments due and payable in the year commencing after December 1, 1992 and in the year in which this lease terminates shall be prorated proportionately. Tenant shall make reimbursement to Landlord within 45 days after Landlord provides Tenant with proof of payment of the taxes paid by Landlord.

In the event there is currently in effect any law providing for the taxation of leases or if any law is enacted or adopted after the date of this lease amendment which changes the laws now in force for the taxation of leases, including but not limited to a Goods and Services Tax (GST), or the manner of the operation of any such taxes, or which otherwise imposes a tax either directly or indirectly on the lease or the rents received therefrom, tenant will pay such tax with interest and penalties thereon.

Tenant shall not be chargeable with, nor be obligated to pay any income, profit, inheritance, estate, succession, gift, franchise, or transfer taxes which are or may be imposed upon Landlord, its successors or assigns, by whatsoever authority imposed or howsoever designated.

Written evidence of the payment of taxes and assessments hereunder shall be furnished by Tenant to Landlord upon Landlord's written request therefor.

In the event Tenant constructs, as provided in Article 16 hereof, additional buildings or structures on any portion of the land described in Parcel A of Exhibit "A", said additional buildings or structures shall be separately assessed and all ad valorem taxes and assessments levied thereon shall be paid and discharged by Tenant and shall not be deductible from additional rentals as provided herein.

- 2 -

The Tenant shall have the right to participate in all negotiations of tax assessments. Tenant shall have the right to contest the validity or the amount of any tax or assessment levied against the taxable premises or the Shopping Center by such appellate or other proceedings as may be appropriate in the jurisdiction, and may defer payment of such obligations, pay same under protest, or take such other steps as Tenant may deem appropriate; provided, however, Tenant shall take no action which will cause or allow the institution of any foreclosure proceedings or similar action against the demised premises. Landlord shall, at Tenant's expense, cooperate in the institution and prosecution of any such proceedings initiated by the Tenant and will execute any documents required therefor.

Should the Landlord institute proceedings to contest the validity or the amount of any tax or assessment levied against the Shopping Center, the Tenant will cooperate in such proceedings; provided, however, that Landlord shall take no action which will cause or allow the institution of any foreclosure proceedings or similar action against the demised premises which might result in the termination of this Lease.

Should any of the proceedings referred to in the preceding two paragraphs of this Article 5 result in reducing the total annual real estate tax and assessment liability against the taxable premises, the Tenant shall be entitled to receive all refunds paid by the taxing authorities. After payment of all of Landlord's and Tenant's expenses incurred in any such proceeding in which a refund is paid, the Tenant shall pay to the Landlord either the balance of such refund or, alternatively, Tenant shall pay to the Landlord that part of the excess tax payment which may have been deducted from additional rent in the tax year for which the refund was granted, whichever amount shall be the lesser. Any balance of said refund remaining after such payment to Landlord shall belong to the Tenant. If no refund shall be secured in any given proceeding, the party instituting the proceeding shall bear the entire cost.

6. Commencing December 1, 1992, Tenant shall pay the Landlord its pro-rata share of the costs of maintaining the common areas as herein provided. Tenant's said share shall be based upon the ratio that the ground floor area of Tenant's building bears to the total gross ground floor area contained in all buildings actually erected on any portion of the land described in Exhibit "A", and depicted on Exhibit "B".

For purposes of this Article, the costs of MAINTAINING [marinating] the common areas and common facilities shall mean the following: (1) all amounts paid for cleaning and sweeping (which shall be performed as often as necessary but not less than once weekly) and restriping (which shall be done not less than once every two years) of the parking areas, sidewalks and driveways, including snow and ice removal, which shall be performed as often as necessary; (2) maintenance and repair of planted or landscaped areas; (3) maintenance, repair and replacement of bulbs and light standards with respect to the parking lot lighting and electrical cost of lighting if Tenant's parking lot lighting is not metered directly into Tenant's meter; (4) and wages and salaries of persons directly and actually performing services described herein. The cost of maintaining the common areas and common facilities shall not include capital expenses, depreciation, permit fees, electric lighting charges beyond Tenant's normal business hours unless Tenant is operating during extended hours, rubbish removal for other tenants, or other administrative expenses, including overhead.

Landlord shall maintain accurate records with respect to the aforesaid costs and shall submit to Tenant a bill not more often than every 30 days during the term of the lease for the amount required to be paid by Tenant hereunder. Such bill will set forth the items and amounts charged to Tenant in reasonable detail and will reflect the calculations of Tenant's obligation. With such bill, Landlord shall also submit to Tenant copies of paid receipts to support each said item and amount. Tenant shall pay such amounts within thirty (30) days after receipt of Landlord's billing therefor.

Tenant may, upon seven (7) days notice, have Landlord's records of common area expenditures for the previous twelve (12) month period audited by Tenant's accountant; should such audit disclose any overpayment by Tenant, Landlord shall remit said overpayment upon demand.

Notwithstanding anything contained herein to the contrary, Tenant reserves the right, for any reason whatsoever, at any time upon thirty (30) days prior written notice to Landlord to assume the duties of Landlord to maintain the common areas located within Parcel A of Exhibit "A". If Tenant shall elect to maintain the common areas located within Parcel A of Exhibit "A", then, and in such event, Tenant shall not during such period be required to make any contributions to the common area costs as hereinabove defined, however, Landlord shall maintain the remaining portions of the common area described in Exhibit "A".

The Lease as amended is ratified and confirmed by Landlord and Tenant.

IN WITNESS THEREOF, the parties have executed this Amendment to Lease which is to be effective as provided herein.

Signed in our Presence:

NINETEENTH ASHEVILLE PROPERTIES, a New York partnership

By: _____
Its: _____

By: _____
Its: _____

KMART CORPORATION

By: _____
    M. L. Skiles, Vice President

By: _____
    Asst. Secretary

- 4 -

# ACKNOWLEDGMENTS

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

On the 19th day of March 1992, before me personally came WALTER R. SAMUELS to me known, who being by me duly sworn, did depose and say that he is the General Partner of Nineteenth Asheville Properties described in and which executed the foregoing instrument on behalf of said Partnership.

CORINNE BECKER
Notary Public, State of New York
No. 31-4792263
Qualified in New York County
Commission Expires January 31, 19__

_____
Notary Public

STATE OF MICHIGAN) ss:
COUNTY OF OAKLAND)

    I do hereby certify that on this 2ND day of MARCH, 1992, before me, JANINE K. SCHUMACHER, a Notary Public in and for the County and State aforesaid, and duly commissioned, personally appeared
    M. L. Skiles   and   C. E. LOTZAR, JR.,   known to me to be the Vice President and Assistant Secretary of Kmart Corporation, who, being by me duly sworn, did depose and say that they reside in Rochester and Birmingham respectively; that they are the Vice President and Assistant Secretary respectively of Kmart Corporation, the corporation described in and which executed the foregoing instrument; that they know the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that, on behalf of said corporation and by order of its board of directors, they signed, sealed and delivered said instrument for the uses and purposes therein set forth, as its and their free and voluntary act; and that they signed their names thereto by like order.

    In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

My commission expires: 9-30-92

_____
Notary Public
JANINE K. SCHUMACHER
Notary Public, Oakland County, Mich
My Commission Expires September 30, 1992

- 5 -

### THIRD AMENDMENT TO LEASE
*Asheville, NC K-4112*

THIS THIRD AMENDMENT TO LEASE (the "**Amendment**") is made and entered into as of the 23rd day of May, 2017 ("**Effective Date**"), by and between NINETEENTH ASHEVILLE PROPERTIES, c/o J & W Management Corporation ("**Landlord**") and KMART CORPORATION, a Michigan corporation ("**Tenant**").

### RECITALS

WHEREAS, Landlord's predecessor-in-interest and Tenant's predecessor-in-interest are parties to that certain Lease dated December 18, 1964, as amended by that certain Amendment to Lease dated August 27, 1965, and that certain Second Amendment to Lease dated March 3, 1992 (collectively, the "**Lease**") for the space currently containing approximately 93,827 rentable square feet commonly known as the Kmart Unit #4112 located at 1001 Patton Avenue in the City of Asheville, State of North Carolina (the "**Demised Premises**");

WHEREAS, Tenant desires to exercise one of its remaining options to extend the term of the Lease; and

WHEREAS, Landlord and Tenant wish to amend the Lease as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Landlord and Tenant agree as follows:

1. **Incorporation of Recitals.** The foregoing recitals form a material part of this Amendment and are incorporated herein as if fully rewritten and restated at length herein.

2. **Capitalized terms.** Capitalized terms used herein but not defined herein shall have the respective meanings ascribed to such term as specified in the Lease.

3. **Second Option to Extend.** Tenant's second option to extend the Term of the Lease for a 5 year period commencing December 1, 2017, through and including November 30, 2022, as set forth in Paragraph (2) of the Second Amendment to Lease, is hereby split into two sub-option periods as follows:

"Option 2.1:"    December 1, 2017 – January 31, 2019
"Option 2.2:"    February 1, 2019 – November 30, 2022

4. **Exercise of Option 2.1.** By execution of this Amendment, Tenant hereby exercises Option 2.1 to extend the Term of the Lease for the period commencing December 1, 2017, to and including January 31, 2019 (the "**Extended Term**"). By execution hereof, Landlord hereby expressly acknowledges and agrees to the validity of such exercise and extension and waives any

and all claims as to the effectiveness, enforceability or timeliness thereof. Landlord and Tenant agree that in addition to Options 2.1 and 2.2, Tenant has two (2) additional five (5) year options which shall remain in full force and effect and shall remain unchanged by this Amendment.

5.  **Notices**. The notice address for Landlord and Tenant shall be as follows:

| | |
|---|---|
| Landlord's notice address: | Nineteenth Asheville Properties<br>c/o J & W Management Corporation<br>505 Park Avenue, Suite 302<br>New York, NY 10022<br>Attn: Erica M. Cohen, Leasing Manager<br>Phone: (212) 400-2424 ext. 103<br>Fax: (212) 400-2425<br>Email: ecohen@jw-management.com |
| With a copy to: | Nineteenth Asheville Properties<br>c/o J & W Management Corporation<br>505 Park Avenue, Suite 302<br>New York, NY 10022<br>Attn: Glenn Howarth, Esq.<br>Phone: (212) 400-2424 ext. 104<br>Fax: (212) 400-2425<br>Email: ghowarth@jw-management.com |
| Tenant's notice address: | Kmart Corporation<br>c/o Sears Holdings Corporation<br>3333 Beverly Road, 824RE<br>Hoffman Estates, IL 60179<br>Attn: President - Real Estate |
| with a copy to: | Sears Holdings Corporation<br>3333 Beverly Road, 824RE<br>Hoffman Estates, IL 60179<br>Attn: Associate General Counsel – Real Estate |

6.  **Miscellaneous**.

    (a)  **Continuance of Lease**. The legally enforceable provisions in the Lease, as amended hereby, shall be deemed to be continuing and in full force and effect and this Amendment is not intended to be a new contract between the parties.

    (b)  **Successors and Assigns**. This Amendment shall be binding upon, and shall inure to the benefit of, the successors and assigns of the parties hereto.

    (c)  **Entire Agreement**. This Amendment sets forth the entire agreement between the

parties with respect to the matters set forth herein. There have been no additional oral or written representations or agreements with respect to the matters set forth herein. In case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

(d) <u>Time is of the Essence</u>. Time is of the essence for this Amendment and the Lease and each provision hereof.

(e) <u>No Presumption Against Drafter</u>. This Amendment shall be construed without regard to any presumption or any other rule requiring construction against the party drafting a document. The parties acknowledge that this Amendment is the result of negotiations between the parties, and in construing any ambiguity hereunder no presumption shall be made in favor of either party.

(f) <u>Authority</u>. Each individual executing this Amendment on behalf of any party represents and warrants that he or she is fully authorized to execute and deliver this Amendment on behalf of such party in accordance with its terms, and that this Amendment is not in violation of, inconsistent with, or contrary to the provisions of any agreement to which it is a party.

(g) <u>Severability</u>. If any provision of this Amendment or the application thereof to any person or circumstances is or shall be deemed illegal, invalid, or unenforceable, the remaining provisions hereof shall remain in full force and effect and this Amendment shall be interpreted as if such illegal, invalid, or unenforceable provision did not exist herein.

(h) <u>Counterpart Signatures</u>. This Amendment may be executed in any number of counterpart originals, each of which, when taken together, shall be deemed to be one and the same instrument. Executed copies of this Amendment may be delivered between the parties via facsimile or electronic mail and such shall be deemed effective and binding upon the parties the same as if such document was an original. This Amendment will not be binding upon any party until this document has been executed by all parties thereto.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this Third Amendment as of the Effective Date.

**LANDLORD:**
NINETEENTH ASHEVILLE PROPERTIES
C/O J & W MANAGEMENT CORPORATION

By: _[signature]_
Name: _Marilyn J. Samuel_
Its: _Vice-President_

**TENANT:**
KMART CORPORATION, a Michigan corporation

By: _[signature]_
Name: _JoAnn Catanese_
Its: _DVP, Real Estate_

REAL ESTATE LEGAL [stamp]

- 4 -