DAVID MEEGAN                                          Hearing Date:
**MEEGAN, HANSCHU & KASSENBROCK**
11341 Gold Express Drive, Suite 110
Gold River, CA  95670
Telephone:  (916) 925-1800
Facsimile:  (916) 925-1265

Attorneys for Creditors Loki Investments, LLC,
Michael Rue, J. Terry Eager and Susan B. Eager,
as Co-Trustees of the J. Terry Eager Family
Trust-1995, and CEMER Properties

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **SEARS HOLDINGS CORPORATION, et al.,** | Case No. 18-23538 (RDD) |
| | **(Jointly Administered)** |
| Debtor. | |

## DECLARATION OF DEBORAH J. GILBERT IN SUPPORT OF SUPPLEMENTAL OBJECTION OF STORE NO. 8768 LESSORS TO DEBTORS' STATED CURE AMOUNTS

I, Debbie Gilbert, declare:

1.    I am the bookkeeper for creditors Loki Investments, LLC, Michael Rue, J.

Terry Eager and Susan B. Eager, as Co-Trustees of the J. Terry Eager Family

Trust-1995, and CEMER Properties, who are collectively the landlords of Sears Store

No. 8768 located at 1200 Blumenfeld Drive, Sacramento, California ("Leasehold

Premises"). I have held this position since approximately April 2018.

2.    One of my duties as the bookkeeper for the landlord is to keep track of

1

the amounts due under the lease of the Leasehold Premises (the "Blumenfeld Lease")
and interface with my contacts at Sears to make sure the amounts due under the
Blumenfeld Lease are paid.

3.      The Blumenfeld Lease is what is often referred to as a "triple net" lease.
Under the terms of the lease, the tenant, Sears, Roebuck & Company ("Tenant" or
"Debtor") is to reimburse the Landlord for the various expenses advanced or directly
pay certain bills associated with the operation of the Leasehold Premises.

4.      The original Blumenfeld Lease was dated December 19, 1997 by and
between Betty Khun and Sears Logistic Services, Inc.; a copy of that original Lease is
attached as Exhibit "A".  On or about April 6, 2001, a second Blumenfeld Lease in a
substantially similar form was executed by and between Betty Khun, as landlord, and
Sears, Roebuck & Co., as tenant; a copy of this document is attached as Exhibit "B".
The term of the Blumenfeld Lease was extended by Notice of Extension of Lease dated
June 1, 2002 and a second Notice of Extension of Lease dated June 6, 2007. On
December 28, 2012, the current landlords of the property entered into an Assignment,
Assumption and First Amendment to Lease with Sears Logistic Services, Inc. and
Sears, Roebuck & Co.; a copy of that document is attached as Exhibit "C".  Pursuant
to that document, Sears Logistic Services, Inc. assigned its lease rights to Sears,
Roebuck & Co.  In addition, the Leasehold Premises were increased from 81,600
square feet to approximately 144,000 square feet and the term of the Lease was
extended for an additional 36 months, providing a new termination date of December

2

31, 2015. Also, pursuant to that document, Sears was given two consecutive three year options to extend the term of the Lease beyond December 31, 2015. Sears has timely exercised both of its options and the current termination date of the Blumenfeld Lease is December 31, 2021.

5.      Section 18 of the Blumenfeld Lease provides for recovery of attorneys' fees and expenses. Also pursuant to the terms of the Blumenfeld Lease the Tenant is to reimburse the Landlord for all utility services related to the Blumenfeld Lease (paragraph 5), taxes (paragraph 6), repairs and maintenance (paragraph 7), and certain insurance expenses (paragraph 10).

6.      As of April 24, 2019, the cure amount owed by the Tenant on account of the Blumenfeld Lease totals $92,192.95; a breakdown of those amounts is set forth in Exhibit "D" to this Declaration. Of this amount, $33,002.14 is on account of pre-petition claims, some of which were unknown at the time we prepared and filed the Landlord's original Proof of Claim and on the dates that Proof of Claim was amended. Most of these charges relate to post-petition charges, some of which will likely be paid by the time a hearing is held on this objection.

7.      As is the case with all "triple net" leases such as the Blumenfeld Lease, the amounts owed to the Landlord by the Tenant for expenses and other reimbursements are always in a state of flux. The amount constantly varies as the Landlord advances payments to be reimbursed by the Tenant, or other expenses are incurred but not yet billed, and yet other bills are received by the Landlord but not yet

3

transmitted to the Tenant for direct payment.

8.    Since the filing of this bankruptcy case, Sears is not being a particularly good tenant. It is falling behind on its reimbursement of expenses due under the Lease, essentially paying practically none of them, with the exception of the base lease payment and some property tax reimbursements. Attached as Exhibit "E" is a one page breakdown of payments received from Sears post-petition. As can be seen, the payments consist primarily of base lease payments, with fee reimbursements for expenses/charges due under the Blumenfeld Lease. In addition, Sears has allowed an inordinate number of false fire alarms to originate from the Leasehold Premises, resulting in fines being assessed in the month of March, 2019, totaling $4,080.00. Under the Lease, Sears is responsible for the payment of these fines.

I declare under penalty of perjury that the foregoing is true and correct as to my own personal knowledge except as to matters herein declared on information or belief. As to those matters, I believe them to be true. If called upon to testify in a court of law, I could and would so competently testify. This declaration was executed on April 26, 2019, at Woodland, California.

/s/ Deborah J. Gilbert
**DEBORAH J. GILBERT**

4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served by ECF electronic noticing on this 30th day of April, 2019, upon all counsel of record.

/s/ *David M. Meegan*

**EXHIBIT A**

<u>LEASE AGREEMENT</u>



THIS LEASE AGREEMENT (hereinafter the "Lease") is made as of the _14th_ day of _DECEMBER_, 199_7_, by and between BETTY KUHN individually ("Landlord"), and SEARS LOGISTICS SERVICES, INC., a Delaware corporation ("Tenant").    The parties agree:

1.    <u>Premises</u>

(a)    Landlord leases to Tenant and Tenant leases from Landlord all that certain 81,600 square feet of space, more or less, in a building containing 144,000 square feet more or less situated in the City of Sacramento, County of Sacramento, and State of California, more commonly known as 1200 Blumenfeld Drive, Sacramento, CA, all as shown on the site plan attached hereto as Exhibit "A" and by this reference made a part hereof (the "Demised Premises").

(b)    Landlord also leases and grants to Tenant for the Term (including extensions thereof) stated in Section 3 below all easements, alleys, parking and loading rights, railroad privileges, rights of ingress and egress, fixtures and appurtenances, appertaining to the Demised Premises or which are necessary for Tenant's storage and loading and unloading of merchandise and Tenant's business operations generally.

2.    <u>Use</u>

The Demised Premises may be used by Tenant for the receipt, shipping, storage, loading and unloading of general merchandise, on a 24 hours per day, seven days per week basis, and all other lawful uses. In the event Tenant is prohibited from conducting its operations (as provided in the next preceding sentence) in the Demised Premises throughout the Term by the effect of any zoning or noise ordinances or other governmental use restrictions, or applicable rules or regulations thereunder, Tenant shall have the right to terminate this Lease by written notice to Landlord, effective upon the date on which continuing such operations would subject Tenant to prosecution or civil penalty. Tenant agrees to comply, at the Lease Commencement Date and during the Term, with all federal, state and local governmental laws, rules, regulations, and ordinances applicable to Tenant's use of the Demised Premises.

3.    <u>Term</u>

(a)    The term of this Lease shall be five (5) years, commencing on January 1,1998 (the "Commencement Date") and ending on December 31, 2002 (the "Term").

(b)   Provided Tenant is not in continuing, material default hereunder, Tenant shall have two (2) consecutive options to extend this Lease for periods of five (5) years each option. Each option can be exercised by Tenant giving Landlord written notice of the exercise thereof at least one hundred eighty (180) days prior to the expiration of the then-existing Term; provided, however, that if Tenant shall fail to give any such notice within such 180-day time limit, Tenant's right to exercise its option shall nevertheless continue until thirty (30) days after Landlord shall have given Tenant notice of Landlord's election to terminate such option ("Landlord's Termination Notice"), and Tenant may exercise such option at any time until the expiration of said thirty (30) day period.   It is the intention of the parties to avoid forfeiture of Tenant's rights to extend the Term of this Lease under any of the options set forth in this Section 3 through inadvertent failure to give notice thereof within the time limits prescribed. During any extension option, all Sections of this Lease will be effective and references to Term will incorporate the extensions.

4.   Rent

The rent for the Demised Premises for the first two (2) years of the Term shall be Fourteen Thousand Six Hundred Eighty-Eight and 00/100ths Dollars ($14,688.00) per month, payable on the first of each month (partial month to be prorated). The rent for the Demised Premises for the third through the fifth years of the Term shall be Sixteen Thousand Three Hundred Twenty and 00/100 Dollars ($16,320.00) per month, payable on the first of each month. The rent for the Demised Premises for each of the two option periods shall increase based on the percentage increase, if any, in the WPPI (as defined below) from the beginning of the fourth year of the initial Term or the beginning of the fourth year of the first option period, as applicable.   "WPPI" shall mean the United States Department of Labor's Bureau of Labor Statistics' Wholesale (Producer) Price Index of All Commodities, United States (1982 equals 100) or the successor of such index.   If such index is discontinued or revised, the index designated as the successor or substitute index by the government of the United States shall be substituted.   If such index is changed so that a period other than 1982 shall equal 100, then such index shall be converted in accordance with the conversion factor published by the United States Bureau of Labor Statistics.   All rent shall be made payable to Landlord and mailed to Landlord's address as set forth in the "Notice" section of this Lease, until payee or address is changed by written notice from Landlord to Tenant. Rent shall not be in default, however, until the tenth (10th)) day after the date for payment.

5.   Utilities

Landlord shall furnish and Tenant shall pay for all utility services, including, without limitation, water, electric, gas,

S:\PGOOUCH\AGREEHTSSACHDOL1.SAM 12/12/97        2

HVAC, and sanitary sewer for the Demised Premises. Tenant shall reimburse Landlord on a monthly basis for Tenant's prorata share of all utility services used by Tenant at the Demised Premises, within thirty (30) days of receipt by Tenant of an invoice reflecting a calculation of Tenant's liability thereunder, together with a receipt marked "paid in full". Tenant shall pay for Tenant's telephone service.    Tenant's prorata share for purposes of this Lease shall be 56.7%; provided, however, that at any time that Tenant is the sole occupant of the building in which the Demised Premises are located and the sole consumer of utility services therein, Tenant's prorata share of water, electric, gas, HVAC, and sanitary sewer shall be 100%; and Landlord shall promptly notify Tenant if and when Landlord relets any portion of the building, and Tenant's prorata share shall be readjusted accordingly.    Landlord reserves the right to require that utilities be separately metered to the fullest extent possible; in the event that Landlord elects to require that utilities be separately metered, then Tenant shall fully cooperate in separating the utilities and Tenant shall reimburse Landlord for Landlord's actual, reasonable costs of separating the utilities.

6.    Taxes

Landlord    shall    pay all taxes and assessments of every nature, kind and description levied and assessed against the Demised Premises, as the same become due from time to time during the Term.    Tenant shall reimburse Landlord for Tenant's prorata share of all such taxes within thirty (30) days of receipt by Tenant of a tax bill marked "paid in full".

7.    Repairs and Maintenance

Except for the obligations of Landlord stated immediately below, Tenant shall, at Tenant's sole cost and expense and at all times keep the Demised Premises and every part thereof in good order, condition and repair (whether or not the need for such repairs occurs as a result of Tenant's use, any prior use, the elements or the age of such portion of the Demised Premises), including without limiting the generality of the foregoing all equipment or facilities serving the Demised Premises, such as plumbing, heating, air conditioning, ventilating, electrical, lighting facilities, fire sprinkler and/or standpipe and hose or other automatic fire extinguishing system, fire alarm and/or smoke detection systems and equipment, fire hydrants, fixtures, interior walls, foundations, ceiling, floors, windows, doors, plate glass, skylights, fences, retaining walls, and signs located in, on, about, or adjacent to the Demised Premises. Tenant will observe all standards set forth in local statutes, ordinances or regulations for sanitation, handling of hazardous materials, trash and debris, safety and security against fire and

theft, vandalism, personal injury and other hazards, including a prohibition against unsightly or unsanitary accumulation of trash and other similar misuse of walkways, landscaping and loading areas.        In addition, at the end of the Term, Tenant shall, except for wear and tear and casualty, redeliver the Demised Premises to Landlord in a "broom clean" state.        Landlord shall repair and maintain the roof and structural portions of the building in which the Demised Premises are located (but excluding the floors and foundations, which Tenant shall maintain and keep in good order, condition and repair), and Landlord shall also repair and maintain the parking lot and any common areas.        Tenant shall reimburse Landlord for Tenant's prorata share of the cost of parking lot and common area repairs and maintenance.        If Tenant is the sole user of the portion of the parking lot or of the portion of the common area needing maintenance or repair, Tenant's prorata share of such maintenance or repair shall be 100%.        Landlord shall have no obligation to make repairs or perform maintenance until Landlord has received written notice from Tenant notifying Landlord that specific repairs or maintenance is needed, and Landlord shall have not less than thirty (30) days after receiving such written notice to commence the required maintenance or repair work.        Tenant expressly waives the benefit of any statute now or hereafter in effect to the extent it is inconsistent with the terms of this Lease with respect to, or which affords Tenant the right to terminate this Lease by reason of any needed repairs.

8.    <u>Tenant's Right to Alter or Improve</u>

Tenant will have the right to make interior nonstructural alterations and improvements and to install fixtures and equipment in or about the Demised Premises, and to post or attach signs on the interior without the prior written consent of Landlord.        Any Tenant alterations and improvements which affect the structure of the Demised Premises and will cost $25,000 or more may be made after Landlord's prior written approval of Tenant's plans and specifications, such approval not to be unreasonably withheld or delayed.        Tenant agrees to indemnify and hold Landlord, its directors, officers, employees and agents, harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities, arising out of the actual or alleged injury to or death of any person or loss of or damage to property in or upon the Demised Premises, including the person and property of Landlord, its directors, officers, employees, agents, licensees or others, arising from the gross negligence or willful misconduct of Tenant in performing such alterations.

9.    Indemnity

(a)    Landlord agrees to indemnify, protect, defend and hold Tenant, its directors, officers, employees and agents, harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities brought, claimed, or suffered by third parties (except those caused solely by the willful or negligent acts or omissions of Tenant), arising out of the actual or alleged injury to or death of any person or loss of or damage to property in or upon the Demised Premises including the person and property of Tenant, its directors, officers, employees, agents, invitees, licensees or others caused by the negligent or willful acts or omissions of Landlord or Landlord's employees, agents or contractors.

(b)    Tenant agrees to indemnify, protect, defend and hold Landlord, its directors, officers, employees and agents, harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities (except those caused by the willful or negligent acts or omissions of Landlord), arising out of the actual or alleged injury to or death of any person or loss of or damage to property in or upon the Demised Premises, including the person and property of Landlord, its directors, officers, employees, agents, licensees, or others caused by the negligent or willful acts or omissions of Tenant's or Tenant's employees, agents or contractors.

10.    Insurance

(a)    Landlord shall maintain, at Landlord's expense, during the Term, the following policies of insurance:

(i)    Commercial General Liability Insurance. Including, but not limited to coverage for premises/operations, products/completed operations, personal/advertising injury and contractual liabilities with combined single limits of not less than $3,000,000 per occurrence for bodily injury and/or property damage, naming Tenant as an additional insured.

(ii)    "All Risk" Property Insurance. Upon all buildings, building improvements, alterations and supplies on the Demised Premises and land on which the Demised Premises are located, with coverage for the perils of fire, extended coverage, vandalism, malicious mischiefs, sprinkler leakage, water damage, accidental collapse, with limits of not less than ninety (90%) of full replacement cost, with an increased cost of construction endorsement.

(iii)    Workers' Compensation Insurance (if Landlord shall have any employees on the Demised Premises).

Covering all costs, benefits and liabilities under State Workers' Compensation and similar laws in the State of California for Landlord's employees, if any, and Employer's Liability Insurance, with limits of not less than $500,000 per accident or disease. Landlord warrants that its contractors shall maintain Workers' Compensation and Employers' Liability Insurance for the contractors' employees consistent with this provision and Landlord further shall indemnify Tenant for any loss, cost, liability, expense and damage suffered by Tenant as a result of Landlord's breach of this warranty.

All policies described in subsection (a) above shall be issued by companies qualified to do business in the State of California, and rated A-/VII or better in the most current edition of Best's Insurance Reports. Each policy will expressly provide that such policy will not be subject to cancellation or material change without at least thirty (30) days' prior written notice to Tenant. Landlord shall furnish Tenant, concurrently with the execution of this lease, with certificate evidence of such insurance coverage. Landlord may meet its insurance obligations herein by means of a blanket insurance policy or through any combination of primary or umbrella/excess coverage.

(b)    Tenant shall reimburse Landlord for Tenant's prorata share of Landlord's insurance premiums for the polices required to be carried by Landlord in Section 11(a) above, within thirty (30) days of receipt by Tenant of an invoice reflecting a calculation of Tenant's liability thereunder, together with a receipt marked "paid in full".

(c)    Tenant shall maintain, at Tenant's expense, during the Term, the following insurance policies:

(i)  Workers' Compensation Insurance.    Covering all costs, benefits, and liabilities under State Workers' Compensation and similar laws in the State of California for Tenant's employees, and Employer's Liability Insurance, with limits of not less than $500,000 per accident or disease.

(ii) Commercial    General    Liability    Insurance. Including, but not limited to, coverage for premises/operations, products/completed operations, personal/advertising injury and contractual liabilities with combined single limits of not less than $3,000,000 per occurrence for bodily injury and/or property damage.

Tenant may meet its insurance obligations under this Lease through a blanket insurance policy, through any combination of primary or unbrella/excess coverage or through a program of self-insurance.

S:\PGOODCH\AGREEMTSSACHDOL1.SAH 12/12/97              6

11. **Waiver of Subrogation**

Notwithstanding any other provisions herein, Landlord and Tenant each releases the other and, on behalf of its insurers, or to the extent that Tenant is self-insured, pursuant to Section 10(c) above, on Tenant's behalf, waives its entire right to recovery against the other for loss or damage to the waiving party and its property to the extent that the loss or damage is required to be insured hereunder or is customarily insurable by a fire all-risk and extended coverage insurance policy. This waiver shall not be effective to relieve Landlord or Tenant of liability if Landlord fails to maintain such all-risk property insurance or if Tenant self-insures.

12. **Hazardous Substances**

(a)   The term "Hazardous Substances" means any material amounts (i.e., amounts that could cause a violation of any environmental protection or control laws, rules or regulations) of toxic or hazardous wastes, pollutants, or substances, including, without limitation, (A) PCB's (B) petroleum products or byproducts, (C) substances defined or listed as "hazardous substances" or "toxic substances" or similarly identified in or pursuant to (1) Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Sec. 9601 et seq., (2) the Hazardous Materials Transportation Act, 47 U.S.C. Sec. 1802, et seq., or (3) the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., (D) any chemical substance or mixture regulated under the Toxic Substance Control Act of 1976, as amended, 15 U.S.C. Sec. 2601 et seq., (E) any "toxic pollutant" under the Clean Water Act, 33 U.S.C. Sec. 466 et seq., as amended, (F) any hazardous air pollutant under the Clean Air Act, 42 U.S.C. Sec. 7401 et seq., and (G) any hazardous or toxic substance or pollutant regulated under any other applicable federal, state or local environmental, health or safety laws, regulations, and rules of common law.

(b)   Tenant shall not release any Hazardous Substances on the Demised Premises and Tenant shall indemnify, defend and hold Landlord harmless from and against all liabilities, losses, costs, fines, demands, claims, judgments, damages, expenses, actions or rights of action arising from such a release by it or its employees, agents, or contractors.

(c)   Landlord shall not release any Hazardous Substances on the Demised Premises. Landlord shall be responsible for all costs incurred in complying with any order, ruling, or other requirement of any court or governmental body or agency having jurisdiction over the Demised Premises requiring Landlord to comply with any laws which relate to Hazardous Substances

created, handled, placed, stored, used, transported or disposed by Landlord, including without limitation the cost of any required or necessary repair, clean-up or detoxification and the preparation of any closure or other required plans, and Landlord shall diligently pursue to completion all such work in connection with same. In the event of any breach of any covenant contained herein by Landlord, or of the presence of Hazardous Substances (excluding Hazardous Substances established to have been brought on to the Demised Premises by Tenant or Tenant's employees, agents or contractors, unless released on to the Demised Premises by reason of the fault or negligence of Landlord), which breach or presence materially adversely affects Tenant's use of the Demised Premises, Tenant has the right either (i) to terminate the Lease by written notice to Landlord, to be effective as of the date of Tenant's notice, or (ii) to have its rent and any other charges payable by Tenant abated to the extent of interference with Tenant's business until such time as the Demised Premises comply with all laws and Landlord has cured its breach in a manner satisfactory to Tenant. Landlord shall indemnify, protect, defend and hold Tenant harmless from and against all liabilities, losses, costs, fines, demands, claims, judgments, damages, expenses, actions or rights of action arising from such a release by it or its employees, agents, contractors or invitees.

13. Landlord's Warranties

Landlord warrants and represents that presently, and during the Term:

(a) Tenant, on paying the rent and performing Tenant's obligations hereunder, shall and may peaceably and quietly have, hold and enjoy the Demised Premises for the Term.

(b) Landlord shall promptly and diligently cure any title defect to the Demised Premises or to any improvements, any title restrictions, covenants, easements, tenancies or occupancies (excluding those caused or suffered by Tenant) that would impair Tenant's use or other rights of and to the Demised Premises granted in this Lease;

(c) the execution and delivery of this Lease shall not be precluded by or cause a breach of any other agreement, mortgage, contract or other instrument or document to which Landlord is a party.

14. Default

(a) Landlord may either terminate the Lease or reenter the Demised Premises, recover possession and dispossess Tenant in

the manner prescribed by statute if, after receiving prior written notice from Landlord, Tenant fails: (i) to make within fifteen (15) days thereafter any rental payment past due hereunder; or (ii) to start performance within thirty (30) days thereafter or within such additional time as may be necessary, of any other covenant or agreement to be performed by Tenant herein. If Tenant, after receiving notice, proceeds to cure the default, then no default shall be deemed continuing.

(b) If Landlord fails promptly to perform its obligations under this Lease after being given prior written notice by Tenant, then Tenant, upon thirty (30) days' written notice, shall have the right to terminate this Lease or to cure Landlord's non-performance and to recover Tenant's costs and expenses, with interest, in connection therewith. If such costs and expenses are not paid by Landlord to Tenant within fifteen (15) days of demand therefor, Tenant shall have the right to deduct same from any installments of rent or other charges payable by Tenant.

15.  Notices

All notices herein provided for shall be given by registered mail or certified mail, postage prepaid, return receipt requested, or sent by overnight express carrier (e.g., Federal Express or Express Mail) with a request that the addressee sign a receipt evidencing delivery to the following addresses:

If to Landlord:   Betty Kuhn
                  c/o Fort Sutter Properties
                  2705 K Street, Suite 1
                  Sacramento, CA 95816

If to Tenant:     Sears Logistics Services, Inc.
                  3333 Beverly Road, A-3
                  Hoffman Estates, IL 60179
                  Attn.: Director Logistics Real Estate

                  cc:  General Counsel

Notice shall be deemed given when so mailed and addressed. Either party may change such address by written notice to the other party as provided for herein.

16.  Damage or Destruction

(a) If during the Term the Demised Premises are damaged or destroyed by fire or any other casualty but Tenant remains open for business, Landlord shall, at Landlord's expense,

promptly, with due diligence, but in no instance greater than one hundred twenty (120) days from the date of the casualty, rebuild, repair and restore the Demised Premises (which, by definition, does not include moveable trade fixtures, personal property, merchandise, or inventory of Tenant) to substantially the same condition existing just prior to the damage or destruction; provided that in the event of force majeure during restoration the 120-day period may be extended up to sixty (60) days to permit Landlord to complete its work. If Landlord fails to do so, Tenant may terminate this Lease within 150 days after the casualty (or, in the event of force majeure, 210 days after the casualty) by giving written notice to Landlord. If the damage or destruction is not the result of Tenant's negligent or willful acts or omissions, then from the date of the damage or destruction, rent and all other charges payable by Tenant shall abate in the proportion that the square footage of the part of the Demised Premises destroyed or rendered unfit for Tenant's use bears to the total square footage in the Demised Premises. Force majeure shall be limited to fire, flood, earthquake, hurricane, tornado, and a labor strike that stops Landlord's work on the Demised Premises.

(b)    If during the Term the Demised Premises are totally destroyed by fire or other casualty, or the Demised Premises are rendered unfit for Tenant's use, in Tenant's reasonable business judgment, by fire or other casualty:

(i)    Rent and all other charges payable by Tenant shall abate, from the date of the fire or casualty, until the Demised Premises have been restored as herein provided;

(ii)  Landlord shall promptly pay to Tenant any unearned rent or other charges paid by Tenant, or Tenant shall promptly pay to Landlord any rent earned and unpaid;

(iii) Either Landlord or Tenant shall have the right, within thirty (30) days thereafter, upon written notice to the other, to terminate this Lease as of the date of the fire or other casualty;

(iv) If neither Landlord nor Tenant terminates this Lease, Landlord shall, at Landlord's sole cost, promptly and with due diligence, rebuild and restore the Demised Premises to substantially the same condition existing just prior to the destruction or damage.

## 17.    Assignment or Subletting

Tenant shall not assign this Lease or sublet the Demised Premises without the prior written consent of Landlord, which shall not be unreasonably withheld or delayed; provided, however, that Tenant may assign or sublet to any affiliate of Tenant without the written consent of Landlord, but with notice to Landlord. In the event of a permitted assignment or sublease, Tenant shall remain responsible for the payment of rent and

performance of its other obligations hereunder, but not (except as to an assignment or sublease to any affiliate of Tenant) beyond the Term to which Tenant has agreed in writing and specifically excluding any option period not exercised by Tenant prior to such assignment or sublease. Any assignment requiring Landlord's prior consent hereunder made without such consent shall be voidable at Landlord's election, shall not release Tenant from its obligations under this Lease, and at Landlord's election shall terminate any extension option of Tenant hereunder (including any extension option that may have been previously exercised so long as the extension term has not commenced as of the date of the assignment).

## 18. Attorneys' Fees

Should either party hereto institute any action or proceeding in court to enforce any provision hereof or for damages, or declaratory or other relief hereunder, the prevailing party shall be entitled to receive from the losing party, in addition to court costs, such amount as the court may adjudge to be reasonable as attorneys' fees for services rendered to said prevailing party and said amount may be made a part of the judgment against the losing party.

## 19. Choice of Law

This Lease shall be construed in accordance with and governed by the laws of the state in which the Demised Premises are located.

## 20. Independent Status

Nothing contained in this Lease shall be construed to make Landlord and Tenant partners or joint venturers or to render either party liable for the debts or obligations of the other.

## 21. Prior Lease Agreement

By prior lease agreement (the "Prior Lease") dated October 29, 1956 by and between Landlord (as successor-in-interest to Erickson Investment Co. ) and Tenant (as successor-by-assignment to Sears, Roebuck and Co.), Tenant leased from Landlord the 144,000 square foot building of which the Demised Premises hereunder is a part. Tenant and Landlord hereby agree that:

(a)  As of December 31, 1997, the Prior Lease shall expire.

(b)  Subject to the terms and conditions of the Prior Lease, Tenant shall redeliver and Landlord shall accept the 62,400 square foot area of the building shown as the "Returned Area" on Exhibit A hereto.

(c) This Lease shall govern the demise of the Demised Premises hereunder and Tenant and Landlord's rights and obligations thereto from and after the Commencement Date

## 22. Entire Agreement and Binding Effect

This Lease covers in full every obligation between the parties hereto concerning the Demised Premises, and the provisions of this Lease shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns, as the case may be, subject at all times to all provisions and restrictions regarding the assignment, transfer and encumbrance of any interest hereunder.

## 23. Counterparts

This Lease may be executed in counterparts, which when taken together shall be interpreted as a single document.

## 24. Headings

The Section headings are for convenience and are not a part of this Lease.

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be executed as of the date and year first above written.

LANDLORD:

BETTY KUHN, individually

Witness:

By: _____

Name: _____

Title: _____

_____

TENANT:

Attest:

SEARS LOGISTICS SERVICES, INC.

_____
Assistant Secretary

By: _____

Name: _____

Title: _____

S:\PGOODCH\AGREEMTSSACHOOL1.SAM 12/12/97        12

**EXHIBIT A**

Site Plan



EXHIBIT _____ A _____

**EXHIBIT B**

# LEASE AGREEMENT

THIS LEASE AGREEMENT (hereinafter the "Lease") is made as of the ___ day of
APRIL _6_, 200 1, by and between BETTY KUHN individually ("Landlord"), and
SEARS, ROEBUCK AND CO., a New York corporation ("Tenant"). The parties agree:

1.    **Premises**

    (a)    Landlord leases to Tenant and Tenant leases from Landlord all that certain 62,400 square feet of space, more or less, in a building containing 144,000 square feet, more or less, situated in the City of Sacramento, County of Sacramento, and State of California, more commonly known as 1210 Blumenfeld Drive, Sacramento, CA, all as shown on the site plan attached hereto as Exhibit "A" and by this reference made a part hereof (the "Demised Premises").

    (b)    Landlord also leases and grants to Tenant for the Term (including extensions thereof) stated in Section 3 below all easements, alleys, parking and loading rights, railroad privileges, rights of ingress and egress, fixtures and appurtenances, appertaining to the Demised Premises or which are necessary for Tenant's storage and loading and unloading of merchandise and Tenant's business operations generally.

2.    **Use**

The Demised Premises may be used by Tenant for the sale, servicing and storing of merchandise and all other items or services normally sold or provided in Tenant's service centers, and all other lawful uses. In the event Tenant is prohibited from conducting its operations (as provided in the next preceding sentence) in the Demised Premises throughout the Term by the effect of any zoning or noise ordinances or other governmental use restrictions, or applicable rules or regulations thereunder, Tenant shall have the right to terminate this Lease by written notice to Landlord, effective upon the date on which continuing such operations would subject Tenant to prosecution or civil penalty. Tenant agrees to comply, at the Lease Commencement Date and during the Term, with all federal, state and local governmental laws, rules, regulations, and ordinances applicable to Tenant's use of the Demised Premises.

3.    **Term**

    (a)    The term of this Lease shall be twenty (20) months, commencing on May 1, 2001 (the "Commencement Date") and ending on December 31, 2002 (the "Term").

    (b)    Provided Tenant is not in continuing, material default hereunder, Tenant shall have two (2) consecutive options to extend this Lease for periods of five (5) years each option. Each option can be exercised by Tenant giving Landlord written notice of the exercise thereof at least one hundred eighty (180) days prior to the expiration of the then-existing Term; provided, however, that if Tenant shall fail to give any such notice within such 180-day time limit, Tenant's right to exercise

its option shall nevertheless continue until thirty (30) days after Landlord shall have given Tenant notice of Landlord's election to terminate such option ("Landlord's Termination Notice"), and Tenant may exercise such option at any time until the expiration of said thirty (30) day period. It is the intention of the parties to avoid forfeiture of Tenant's rights to extend the Term of this Lease under any of the options set forth in this Section 3 through inadvertent failure to give notice thereof within the time limits prescribed. During any extension option, all Sections of this Lease will be effective and references to Term will incorporate the extensions.

4.    Rent

The rent for the Demised Premises for the initial twenty (20) month Term shall be Twelve Thousand Four Hundred Eighty and 00/100 Dollars ($12,480.00) per month, payable on the first of each month (partial month to be prorated). The rent for the Demised Premises for each of the two option periods shall increase based on the percentage increase, if any, in the WPPI (as defined below) from the beginning of the ninth month of the initial Term or the beginning of the fourth year of the first option period, as applicable; provided, however, that in no event shall rent during any option period be less than rent payable during the preceding Term . "WPPI" shall mean the United States Department of Labor's Bureau of Labor Statistics' Wholesale (Producer) Price Index of All Commodities, United States (1982 equals 100) or the successor of such index. If such index is discontinued or revised, the index designated as the successor or substitute index by the government of the United States shall be substituted. If such index is changed so that a period other than 1982 shall equal 100, then such index shall be converted in accordance with the conversion factor published by the United States Bureau of Labor Statistics. All rent shall be made payable to Landlord and mailed to Landlord's address as set forth in the "Notice" section of this Lease, until payee or address is changed by written notice from Landlord to Tenant. Rent shall not be in default, however, until the tenth (10th) day after the date for payment.

5.    Utilities

Landlord shall furnish and Tenant shall pay for all utility services, including, without limitation, water, electric, gas, HVAC, and sanitary sewer for the Demised Premises. Tenant shall reimburse Landlord on a monthly basis for Tenant's prorata share of all utility services used by Tenant at the Demised Premises, within thirty (30) days of receipt by Tenant of an invoice reflecting a calculation of Tenant's liability thereunder, together with a receipt marked "paid in full". Tenant shall pay for Tenant's telephone service. Tenant's prorata share for purposes of this Lease shall be 43.3%; provided, however, that at any time that Tenant is the sole occupant of the building in which the Demised Premises are located and the sole consumer of utility services therein, Tenant's prorata share of water, electric, gas, HVAC, and sanitary sewer shall be 100%; and Landlord shall promptly notify Tenant if and when Landlord relets any portion of the building, and Tenant's prorata share shall be readjusted accordingly. Landlord reserves the right to require that utilities be separately metered to the fullest extent possible; in the event that Landlord elects to require that utilities be separately metered, then Tenant shall fully

cooperate in separating the utilities and Tenant shall reimburse Landlord for Landlord's actual, reasonable costs of separating the utilities.

6.    Taxes

Landlord shall pay all taxes and assessments of every nature, kind and description levied and assessed against the Demised Premises, as the same become due from time to time during the Term. Tenant shall reimburse Landlord for Tenant's prorata share of all such taxes within thirty (30) days of receipt by Tenant of a tax bill marked "paid in full".

7.    Repairs and Maintenance

(a)    Prior to the Commencement Date, representatives of Landlord and Tenant shall inspect the Demised Premises and agree on those items, if any, requiring repair or replacement due to the use and occupancy of Landlord's prior tenant since 1997. Landlord agrees to make all such repairs and replacements at Landlord's sole cost and expense prior to the Commencement Date.

(b)    Except for the obligations of Landlord stated in Section 7(a) above, if any, and provided below, Tenant shall, at Tenant's sole cost and expense and at all times keep the Demised Premises and every part thereof in good order, condition and repair including without limiting the generality of the foregoing all equipment or facilities serving the Demised Premises, such as plumbing, heating, air conditioning, ventilating, electrical, lighting facilities, fire sprinkler and/or standpipe and hose or other automatic fire extinguishing system, fire alarm and/or smoke detection systems and equipment, fire hydrants, fixtures, interior walls, foundations, ceiling, floors, windows, doors, plate glass, skylights, fences, retaining walls, and signs located in, on, about, or adjacent to the Demised Premises. Tenant will observe all standards set forth in local statutes, ordinances or regulations for sanitation, handling of hazardous materials, trash and debris, safety and security against fire and theft, vandalism, personal injury and other hazards, including a prohibition against unsightly or unsanitary accumulation of trash and other similar misuse of walkways, landscaping and loading areas. In addition, at the end of the Term, Tenant shall, except for wear and tear and casualty, redeliver the Demised Premises to Landlord in a "broom clean" state. Landlord shall repair and maintain the roof and structural portions of the building in which the Demised Premises are located (but excluding the floors and foundations, which Tenant shall maintain and keep in good order, condition and repair), and Landlord shall also repair and maintain the parking lot and any common areas. Tenant shall reimburse Landlord for Tenant's prorata share of the cost of parking lot and common area repairs and maintenance. If Tenant is the sole user of the portion of the parking lot or of the portion of the common area needing maintenance or repair, Tenant's prorata share of such maintenance or repair shall be 100%. Landlord shall have no obligation to make repairs or perform maintenance until Landlord has received written notice from Tenant notifying Landlord that specific repairs or maintenance is needed, and Landlord shall have not less than thirty (30) days after receiving such written notice to commence the required maintenance or repair work. Tenant expressly waives the

benefit of any statute now or hereafter in effect to the extent it is inconsistent with the terms of this Lease with respect to, or which affords Tenant the right to terminate this Lease by reason of any needed repairs.

8.    **Tenant's Right to Alter or Improve**

Tenant will have the right to make interior nonstructural alterations and improvements and to install fixtures and equipment in or about the Demised Premises, and to post or attach signs on the interior without the prior written consent of Landlord. Any Tenant alterations and improvements which affect the structure of the Demised Premises and will cost $25,000 or more may be made after Landlord's prior written approval of Tenant's plans and specifications, such approval not to be unreasonably withheld or delayed. Tenant agrees to indemnify and hold Landlord, its directors, officers, employees and agents, harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities, arising out of the actual or alleged injury to or death of any person or loss of or damage to property in or upon the Demised Premises, including the person and property of Landlord, its directors, officers, employees, agents, licensees or others, arising from the gross negligence or willful misconduct of Tenant in performing such alterations.

9.    Indemnity

(a)    Landlord agrees to indemnify, protect, defend and hold Tenant, its directors, officers, employees and agents, harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities brought, claimed, or suffered by third parties (except those caused solely by the willful or negligent acts or omissions of Tenant), arising out of the actual or alleged injury to or death of any person or loss of or damage to property in or upon the Demised Premises including the person and property of Tenant, its directors, officers, employees, agents, invitees, licensees or others caused by the negligent or willful acts or omissions of Landlord or Landlord's employees, agents or contractors.

(b)    Tenant agrees to indemnify, protect, defend and hold Landlord, its directors, officers, employees and agents, harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities (except those caused by the willful or negligent acts or omissions of Landlord), arising out of the actual or alleged injury to or death of any person or loss of or damage to property in or upon the Demised Premises, including the person and property of Landlord, its directors, officers, employees, agents, licensees, or others caused by the negligent or willful acts or omissions of Tenant's or Tenant's employees, agents or contractors.

10.    Insurance

(a)    Landlord shall maintain, at Landlord's expense, during the Term, the following policies of insurance:

(i)    Commercial General Liability Insurance. Including, but not limited to coverage for premises/operations, products/completed operations, personal/advertising injury and contractual liabilities with combined single

limits of not less than $3,000,000 per occurrence for bodily injury and/or property damage, naming Tenant as an additional insured.

(ii) <u>"All Risk" Property Insurance</u>. Upon all buildings, building improvements, alterations and supplies on the Demised Premises and land on which the Demised Premises are located, with coverage for the perils of fire, extended coverage, vandalism, malicious mischiefs, sprinkler leakage, water damage, accidental collapse, with limits of not less than ninety (90%) of full replacement cost, with an increased cost of construction endorsement.

(iii) <u>Workers' Compensation Insurance  (if Landlord shall have any employees on the Demised Premises)</u>. Covering all costs, benefits and liabilities under State Workers' Compensation and similar laws in the State of California for Landlord's employees, if any, and Employer's Liability Insurance, with limits of not less than $500,000 per accident or disease. Landlord warrants that its contractors shall maintain Workers' Compensation and Employers' Liability Insurance for the contractors' employees consistent with this provision and Landlord further shall indemnify Tenant for any loss, cost, liability, expense and damage suffered by Tenant as a result of Landlord's breach of this warranty.

All policies described in subsection (a) above shall be issued by companies qualified to do business in the State of California, and rated A-/VII or better in the most current edition of Best's Insurance Reports. Each policy will expressly provide that such policy will not be subject to cancellation or material change without at lease thirty (30) days' prior written notice to Tenant. Landlord shall furnish Tenant, concurrently with the execution of this lease, with certificate evidence of such insurance coverage. Landlord may meet its insurance obligations herein by means of a blanket insurance policy or through any combination of primary or umbrella/excess coverage.

(b) Tenant shall reimburse Landlord for Tenant's prorata share of Landlord's insurance premiums for the polices required to be carried by Landlord in Section 11(a) above, within thirty (30) days of receipt by Tenant of an invoice reflecting a calculation of Tenant's liability thereunder, together with a receipt marked "paid in full".

(c) Tenant shall maintain, at Tenant's expense, during the Term, the following insurance policies:

(i) <u>Workers' Compensation Insurance</u>. Covering all costs, benefits, and liabilities under State Workers' Compensation and similar laws in the State of California for Tenant's employees, and Employer's Liability Insurance, with limits of not less than $500,000 per accident or disease.

(ii)  Commercial General  Liability Insurance. Including, but not limited to, coverage for premises/operations, products/completed operations, personal/advertising injury and contractual liabilities with combined single limits of not less than $3,000,000 per occurrence for bodily injury and/or property damage.

Tenant may meet its insurance obligations under this Lease through a blanket insurance policy, through any combination of primary or umbrella/excess coverage or through a program of self—insurance.

11.  Waiver of Subrogation

Notwithstanding any other provisions herein, Landlord and Tenant each releases the other and, on behalf of its insurers, or to the extent that Tenant is self—insured, pursuant to Section 10(c) above, on Tenant's behalf, waives its entire right to recovery against the other for loss or damage to the waiving party and its property to the extent that the loss or damage is required to be insured hereunder or is customarily insurable by a fire all-risk and extended coverage insurance policy. This waiver shall not be effective to relieve Landlord or Tenant of liability if Landlord fails to maintain such all-risk property insurance or if Tenant self-insures.

12.  Hazardous Substances

(a)  The term "Hazardous Substances" means any material amounts (i.e., amounts that could cause a violation of any environmental protection or control laws, rules or regulations) of toxic or hazardous wastes, pollutants, or substances, including, without limitation, (A) PCB's (B) petroleum products or byproducts, (C) substances defined or listed as "hazardous substances" or "toxic substances" or similarly identified in or pursuant to (1) Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Sec. 9601 et seq., (2) the Hazardous Materials Transportation Act, 47 U.S.C. Sec. 1802, et seq., or (3) the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., (D) any chemical substance or mixture regulated under the Toxic Substance Control Act of 1976, as amended, 15 U.S.C. Sec. 2601 et seq., (E) any "toxic pollutant" under the Clean Water Act, 33 U.S.C. Sec. 466 et seq., as amended, (F) any hazardous air pollutant under the Clean Air Act, 42 U.S.C. Sec. 7401 et seq., and (G) any hazardous or toxic substance or pollutant regulated under any other applicable federal, state or local environmental, health or safety laws, regulations, and rules of common law.

(b)  Tenant shall not release any Hazardous Substances on the Demised Premises and Tenant shall indemnify, defend and hold Landlord harmless from and against all liabilities, losses, costs, fines, demands, claims, judgments, damages, expenses, actions or rights of action arising from such a release by it or its employees, agents, or contractors.

(c)  Landlord shall not release any Hazardous Substances on the Demised Premises. Landlord shall be responsible for all costs incurred in complying with any order,

ruling, or other requirement of any court or governmental body or agency having jurisdiction over the Demised Premises requiring Landlord to comply with any laws which relate to Hazardous Substances created, handled, placed, stored, used, transported or disposed by Landlord, including without limitation the cost of any required or necessary repair, clean-up or detoxification and the preparation of any closure or other required plans, and Landlord shall diligently pursue to completion all such work in connection with same. In the event of any breach of any covenant contained herein by Landlord, or of the presence of Hazardous Substances (excluding Hazardous Substances established to have been brought on to the Demised Premises by Tenant or Tenant's employees, agents or contractors, unless released on to the Demised Premises by reason of the fault or negligence of Landlord), which breach or presence materially adversely affects Tenant's use of the Demised Premises, Tenant has the right either (i) to terminate the Lease by written notice to Landlord, to be effective as of the date of Tenant's notice, or (ii) to have its rent and any other charges payable by Tenant abated to the extent of interference with Tenant's business until such time as the Demised Premises comply with all laws and Landlord has cured its breach in a manner satisfactory to Tenant. Landlord shall indemnify, protect, defend and hold Tenant harmless from and against all liabilities, losses, costs, fines, demands, claims, judgments, damages, expenses, actions or rights of action arising from such a release by it or its employees, agents, contractors or invitees.

13.    **Landlord's Warranties**

Landlord warrants and represents that presently, and during the Term:

(a)    Tenant, on paying the rent and performing Tenant's obligations hereunder, shall and may peaceably and quietly have, hold and enjoy the Demised Premises for the Term.

(b)    Landlord shall promptly and diligently cure any title defect to the Demised Premises or to any improvements, and any title restrictions, covenants, easements, tenancies or occupancies (excluding those caused or suffered by Tenant) that would impair Tenant's use or other rights of and to the Demised Premises granted in this Lease;

(c)    the execution and delivery of this Lease shall not be precluded by or cause a breach of any other agreement, mortgage, contract or other instrument or document to which Landlord is a party;

(d)    the Demised Premises will be available for possession and occupancy by Tenant on the Commencement Date, "broom clean" and cleared of any property, equipment, fixtures, inventory or supplies of any previous tenant or party in possession. Landlord shall warrant and defend Tenant against any claim of any previous tenant or party in possession relating to the Demised Premises.

14.    Default

   (a)    Landlord may either terminate the Lease or reenter the Demised Premises, recover possession and dispossess Tenant in the manner prescribed by statute if, after receiving prior written notice from Landlord, Tenant fails: (i) to make within fifteen (15) days thereafter any rental payment past due hereunder; or (ii) to start performance within thirty (30) days thereafter or within such additional time as may be necessary, of any other covenant or agreement to be performed by Tenant herein. If Tenant, after receiving notice, proceeds to cure the default, then no default shall be deemed continuing.

   (b)    If Landlord fails promptly to perform its obligations under this Lease after being given prior written notice by Tenant, then Tenant, upon thirty (30) days' written notice, shall have the right to terminate this Lease or to cure Landlord's non-performance and to recover Tenant's costs and expenses, with interest, in connection therewith. If such costs and expenses are not paid by Landlord to Tenant within fifteen (15) days of demand therefor, Tenant shall have the right to deduct same from any installments of rent or other charges payable by Tenant.

15.    Notices

All notices herein provided for shall be given by registered mail or certified mail, postage prepaid, return receipt requested, or sent by overnight express carrier (e.g., Federal Express or Express Mail) with a request that the addressee sign a receipt evidencing delivery to the following addresses:

If to Landlord:

   Betty Kuhn
   c/o Fort Sutter Properties
   2705 K Street, Suite 1
   Sacramento, CA 95816

If to Tenant:

   Sears, Roebuck and Co.
   3333 Beverly Road,
   Hoffman Estates, IL 60179
   Attn.:  Vice President, Real Estate

with a copy to:

   Sears, Roebuck and Co.
   3333 Beverly Road,
   Hoffman Estates, IL 60179
   Attn: Associate General Counsel, Real Estate

Notice shall be deemed given when so mailed and addressed. Either party may change such address by written notice to the other party as provided for herein.

16.    **Damage or Destruction**

(a)    If during the Term the Demised Premises are damaged or destroyed by fire or any other casualty but Tenant remains open for business, Landlord shall, at Landlord's expense, promptly, with due diligence, but in no instance greater than one hundred twenty (120) days from the date of the casualty, rebuild, repair and restore the Demised Premises (which, by definition, does not include moveable trade fixtures, personal property, merchandise, or inventory of Tenant) to substantially the same condition existing just prior to the damage or destruction; provided that in the event of force majeure during restoration the 120-day period may be extended up to sixty (60) days to permit Landlord to complete its work. If Landlord fails to do so, Tenant may terminate this Lease within 150 days after the casualty (or, in the event of force majeure, 210 days after the casualty) by giving written notice to Landlord. If the damage or destruction is not the result of Tenant's negligent or willful acts or omissions, then from the date of the damage or destruction, rent and all other charges payable by Tenant shall abate in the proportion that the square footage of the part of the Demised Premises destroyed or rendered unfit for Tenant's use bears to the total square footage in the Demised Premises. Force majeure shall be limited to fire, flood, earthquake, hurricane, tornado, and a labor strike that stops Landlord's work on the Demised Premises.

(b)    If during the Term the Demised Premises are totally destroyed by fire or other casualty, or the Demised Premises are rendered unfit for Tenant's use, in Tenant's reasonable business judgment, by fire or other casualty:

(i)    Rent and all other charges payable by Tenant shall abate, from the date of the fire or casualty, until the Demised Premises have been restored as herein provided;

(ii)    Landlord shall promptly pay to Tenant any unearned rent or other charges paid by Tenant, or Tenant shall promptly pay to Landlord any rent earned and unpaid;

(iii)    Either Landlord or Tenant shall have the right, within thirty (30) days thereafter, upon written notice to the other, to terminate this Lease as of the date of the fire or other casualty;

(iv)    If neither Landlord nor Tenant terminates this Lease, Landlord shall, at Landlord's sole cost, promptly and with due diligence, rebuild and restore the Demised Premises to substantially the same condition existing just prior to the destruction or damage.

17.    **Assignment or Subletting**

Tenant shall not assign this Lease or sublet the Demised Premises without the prior written consent of Landlord, which shall not be unreasonably withheld or delayed; provided, however, that Tenant may assign or sublet to any affiliate of Tenant without the written consent of Landlord, but with notice to Landlord. In the event of a permitted assignment or sublease, Tenant shall remain responsible for the payment of rent and performance of its other obligations hereunder, but not (except as to an assignment or

sublease to any affiliate of Tenant) beyond the Term to which Tenant has agreed in writing and specifically excluding any option period not exercised by Tenant prior to such assignment or sublease. Any assignment requiring Landlord's prior consent hereunder made without such consent shall be voidable at Landlord's election, shall not release Tenant from its obligations under this Lease, and at Landlord's election shall terminate any extension option of Tenant hereunder (including any extension option that may have been previously exercised so long as the extension term has not commenced as of the date of the assignment).

18.    **Attorneys' Fees**

Should either party hereto institute any action or proceeding in court to enforce any provision hereof or for damages, or declaratory or other relief hereunder, the prevailing party shall be entitled to receive from the losing party, in addition to court costs, such amount as the court may adjudge to be reasonable as attorneys' fees for services rendered to said prevailing party and said amount may be made a part of the judgment against the losing party.

19.    **Choice of Law**

This Lease shall be construed in accordance with and governed by the laws of the state in which the Demised Premises are located.

20.    **Independent Status**

Nothing contained in this Lease shall be construed to make Landlord and Tenant partners or joint venturers or to render either party liable for the debts or obligations of the other.

21.    **Entire Agreement and Binding Effect**

This Lease covers in full every obligation between the parties hereto concerning the Demised Premises, and the provisions of this Lease shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns, as the case may be, subject at all times to all provisions and restrictions regarding the assignment, transfer and encumbrance of any interest hereunder.

22.    **Counterparts**

This Lease may be executed in counterparts, which when taken together shall be interpreted as a single document.

23.    **Headings**

The Section headings are for convenience and are not a part of this Lease.

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be executed as of the date and year first above written.

LANDLORD:

Witness:

BETTY KUHN, individually

By: _____
Name: _____
Title: _____

TENANT:

Attest:

SEARS, ROEBUCK AND CO.

By: _____
Name: Ronald P. Douglass
Title: Vice President
       Real Estate

Assistant Secretary

**EXHIBIT C**

## ASSIGNMENT, ASSUMPTION AND FIRST AMENDMENT TO LEASE
*Sacramento, CA - MDO#8768*

THIS ASSIGNMENT, ASSUMPTION AND FIRST AMENDMENT TO LEASE (the "Amendment") is made and entered into as of the 20th day of December, 2012, by and between J. TERRY EAGER AND SUSAN B. EAGER, AS CO-TRUSTEES OF THE J. TERRY EAGER FAMILY TRUST – 1995, CEMER PROPERTIES, A JOINT VENTURE, MICHAEL E. RUE AND KENT N. CAFFEE AND SUSAN CAFFEE AS CO-TRUSTEES OF THE KENT N. CAFFEE AND SUSAN CAFFEE REVOCABLE TRUST (collectively, "Landlord"), SEARS LOGISTICS SERVICES, INC., a Delaware corporation ("SLS") and SEARS, ROEBUCK AND CO., a New York corporation ("Assignee").

## RECITALS

A.    Landlord, as successor-in-interest, and SLS, as tenant, are parties to that certain Lease between Betty Kuhn, as Original Landlord, and SLS dated as of December 19, 1997, as extended by a Notice of Extension of Lease dated June 1, 2002 and a Notice of Extension of Lease dated June 6, 2007 (collectively, the "Lease") for space comprising approximately 81,600 square feet (the "Existing Premises") located in Landlord's building commonly known as 1200-1210 Blumenthal Ave., Sacramento, California (the "Building").

B.    SLS desires to assign the Lease to Assignee, and Assignee desires to accept such assignment of the Lease from SLS.

C.    Landlord and Assignee desire to expand the Leased Premises to include all 144,000 square feet of the Building (the "Demised Premises"), set forth the rent for the Demised Premises, and extend the term of the Lease for an additional 36 months.

D.    Landlord and Assignee wish to otherwise amend the Lease as set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord, SLS and Assignee agree as follows:

1.    **Incorporation of Recitals**.  Each of the foregoing recitals forms a material part of this Amendment and is incorporated herein by this reference.

2.    **Capitalized Terms**.  Capitalized terms used herein but not defined herein shall have the respective meanings ascribed to such term as specified in the Lease.

3.    **Assignment of Lease**. SLS hereby assigns, sells, sets over, and transfers to Assignee all of Tenant's right, title and interest in, to and under the Lease, and the Premises, together with all rights, buildings, improvements, and easements located thereon, or appurtenant thereto, and any security deposit held by Landlord on behalf of SLS pursuant to the Lease.

4.    **Assumption of Lease**.  Assignee, for itself, and its successors and/or assigns, hereby accepts the transfer and assignment by SLS of its interest as tenant under the Lease, and hereby

assumes all of the obligations of SLS as tenant arising from and after January 1, 2013 to be paid, kept, performed, directly or indirectly, under or pursuant to the terms, conditions and provisions of the Lease.

5.    **Landlord's Consent to Assignment.**  Landlord hereby consents to the assignment of the Lease and all obligations of SLS thereunder to Assignee and hereby releases SLS from its obligations under the Lease as of December 31, 2012.

6.    **Prior Lease and Sublease**  That certain Lease Agreement between Original Landlord and Assignee dated as of April 6, 2001, as amended (the **"PRS Lease"**), for the lease by Assignee of 62,400 square feet of the Building shall terminate by its terms as of December 31, 2012 and shall not be renewed, extended or reinstated. Landlord hereby acknowledges that the Sublease Agreement between Tenant and Sears Outlet Stores, LLC, a Delaware limited liability company (**"Outlets"**), dated October 1, 2012 (the **"Sublease"**) for approximately 40,062 square feet of the Building, which Sublease was subject to such PRS Lease, shall also expire December 31, 2012.

7.    **Description of Demised Premises.**  Section 1(a) of the Lease describing the Demised Premises shall be amended to delete the phrase "all that certain 81,600 square feet of space, more or less, in", thereby including the entire Building, comprised of 144,000 square feet, as the Demised Premises under the Lease. The Site Plan attached as Exhibit A to the Lease is hereby deleted in its entirety.

8.    .**Extension of Term**.  The Term of the Lease shall be extended for thirty-six (36) months from January 1, 2013 through and including December 31, 2015 (the **"Extension Term"**).

9.    **Rent During Extension Term**.  The Rent for the Demised Premises during the Extension Term shall be Twenty-Six Thousand Dollars ($26,000.00) per month, payable in accordance with the terms and provisions of the Lease.

10.   **Additional Options to Extend Term**.  Provided that Assignee is not in continuing, material default under the Lease, Assignee shall have two (2) consecutive three (3) year options (the **"Option Terms"**) to extend the Term of the Lease beyond December 31, 2015. The options may be exercised by Assignee upon prior written notice delivered to Landlord not less than six (6) months prior to the expiration of the then current Term provided, however, that if Assignee fails to provide such notice of exercise of option to Landlord within such six (6) month time period, Assignee's right to exercise such option shall continue until thirty (30) days after Landlord shall have given Assignee written notice of Landlord's election to terminate such option. Assignee may exercise such option at any time prior to the expiration of such thirty (30) day period. It is the intention of the Landlord and Assignee to avoid forfeiture of Assignee's option to extend the Term of the Lease through inadvertent failure to give notice thereof within the time limits prescribed herein.

11.   **Rent under Option Terms**.  The Rent under the Option Terms shall be as follows:

First Option Term (1/1/2016 – 12/31/2018)        $29,500.00 per month
Second Option Term (1/1/2018 – 12/31/2021)       $32,000.00 per month

Rent under the Option Terms shall be payable in accordance with the terms and provisions of the Lease.

12.    <u>Repairs and Maintenance</u>.  The first sentence of Section 7 of the Lease shall be amended to include maintenance of the slab in the Demised Premises as a Tenant responsibility.

In addition, the following sentence shall be added at the end of Section 7 of the Lease:

"Notwithstanding anything to the contrary in the foregoing, from and after January 1, 2013 Landlord shall be responsible for the foundation of the Building, the roof (and roof membrane) and structural portions of the Building (excluding the floors and slab) at Landlord's sole cost and expense, with no pass-through of such costs and expenses or billing to the Tenant."

13.    <u>Hazardous Substances</u>.    The last sentence of Section 12 is hereby deleted in its entirety and replaced with the following sentence:

"Landlord shall indemnify, protect, defend and hold Tenant harmless from and against and liabilities, losses, costs, fines, demands, claims, judgments, damages, expenses, actions or rights of action arising from and after the Term (and vacancy of Tenant) from a release proven to be as a result of the acts of Landlord, its employees, agents, contactors or invitees."

14.    <u>Assignment or Subletting</u>.  The first sentence of Section 17 of the Lease shall be amended to include the word "conditioned" after the word "unreasonably".

The following two paragraphs are hereby added to the end of said Section 17:

"Tenant shall control the Demised Premises during the Term.  Tenant shall have the right to sublease a portion of the Building to a third party or parties from time to time during the Term of the Lease.  Tenant shall obtain Landlord's consent to such subletting as required by this Section, which consent shall not be unreasonably conditioned, withheld or delayed.

Landlord shall have no option at any time to recapture any portion of the Demised Premises which may not be in use by the Assignee during the Term of the Lease for the purpose of re-letting such unused space to a third party."

15.    <u>Sublease to Outlets</u>.  Assignee shall enter into a new Sublease Agreement with Outlets for approximately 62,400 square feet of the Demised Premises subsequent to the execution of this Amendment.    Landlord hereby consents to such Sublease Agreement with Outlets, and confirms that Assignee shall remain liable for the performance of all of its obligations under the Lease, including the payment of Rent, during the term of the Sublease.

16.    <u>Fixtures</u>.  A new Section 24 is hereby added to the Lease:

"24.        Fixtures.        Tenant shall have the right to remove and retain all furniture, fixtures and equipment and other fixed appurtenances including, without limitation, racking, shelving, trade fixtures, wall-mounted cabinets, computer and/or electronic equipment upon

vacating the Premises. Tenant shall promptly repair any damage to the Demised Premises resulting from the removal of such fixtures upon vacating the Demised Premises."

17. **Leasing Commission**. Partners National Real Estate Group, Inc., in cooperation with Congress Realty, Inc. (California License #01514260), its partner for the State of California, are the exclusive real estate representatives for Tenant for this Amendment. Landlord shall pay a commission to Congress Realty, Inc. in an amount of Thirty-Seven Thousand Four Hundred Forty Dollars ($37,440.00) payable within thirty (30) days after the execution of this Amendment by both parties. Congress Realty, Inc. shall pay Partners National Real Estate Group, Inc. its portion of the commission through a separate co-brokerage agreement.

18. **Miscellaneous**.

a) **Continuance of Lease**. The legally enforceable provisions in the Lease, as amended hereby, shall be deemed to be continuing and in full force and effect and this Amendment is not intended to be a new contract between the parties.

b) **Successors and Assigns**. This Amendment shall be binding upon, and shall inure to the benefit of, the successors and assigns of the parties hereto.

c) **Entire Agreement**. This Amendment sets forth the entire agreement between the parties with respect to the matters set forth herein. There have been no additional oral or written representations or agreements with respect to the matters set forth herein. In case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

d) **Time is of the Essence**. Time is of the essence for this Amendment and the Lease and each provision hereof.

e) **No Presumption Against Drafter**. This Amendment shall be construed without regard to any presumption or any other rule requiring construction against the party drafting a document. The parties acknowledge that this Amendment is the result of negotiations between the parties, and in construing any ambiguity hereunder no presumption shall be made in favor of either party.

f) **Landlord's Authority**. Landlord represents and warrants that Landlord has the full right, power and authority to enter into this Amendment and does not need the consent of any party, including the holder of any mortgage on the demised premises.

g) **Severability**. If any provision of this Amendment or the application thereof to any person or circumstances is or shall be deemed illegal, invalid, or unenforceable, the remaining provisions hereof shall remain in full force and effect and this Amendment shall be interpreted as if such illegal, invalid, or unenforceable provision did not exist herein.

h) **Counterpart Signatures**. This Amendment may be executed in any number of counterpart originals, each of which, when taken together, shall be deemed to be one and the same instrument. Executed copies of this Amendment may be delivered between the parties via facsimile or electronic mail and such shall be deemed effective and binding upon the parties the same as if such document was an original. This Amendment will not be

binding upon any party until this document has been executed by all parties thereto.

*[Signature page follows.]*

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this Assignment, Assumption and First Amendment to Lease as of the day and year first above written.

LANDLORD:

J. TERRY EAGER AND SUSAN B. EAGER, AS CO-TRUSTEES OF THE J. TERRY EAGER FAMILY TRUST – 1995,

CEMER PROPERTIES, A JOINT VENTURE, and

MICHAEL E. RUE AND KENT N. CAFFEE AND SUSAN CAFFEE AS CO-TRUSTEES OF THE KENT N. CAFFEE AND SUSAN CAFFEE REVOCABLE TRUST

By: _____
Name: _____
Its: _____

SLS:

SEARS LOGISTICS SERVICES, INC, a Delaware corporation

By: _____
Name _____
Its: ~~James B. Terrell~~
~~Vice President Real Estate~~

ASSIGNEE:

SEARS, ROEBUCK AND CO., a New York corporation

By: _____
Name _____
Its: ~~James B. Terrell~~
~~Vice President Real Estate~~

**EXHIBIT D**

BLUMENFELD ASSOCIATES/LOKI INVESTMENTS, LLC/SAN FELIPE PROPERTIES, INC.
**COSTS DUE FROM SEARS PRE/POST PETITION**
AS OF 04/24/2019

| DATE PAID | VENDOR | AMT PAID | FROM | TO | RECEIVED | CLEARED BANK |
|---|---|---|---|---|---|---|
| 1/13/2017 | CITY OF SACRAMENTO UTILITIES | $ 39.59 | 11/23/2016 | 12/22/2016 | | 1/17/2017 |
| 1/13/2017 | SACRAMENTO COUNTY UTILITIES | $ 2,285.14 | 11/22/2016 | 1/21/2017 | 1/17/2017 | 1/18/2017 |
| 2/21/2017 | CITY OF SACRAMENTO UTILITIES | $ 14.05 | 12/23/2016 | 1/24/2017 | | 2/22/2018 |
| 2/21/2017 | SACRAMENTO COUNTY UTILITIES | $ 1,088.23 | 1/22/2017 | 3/21/2017 | 2/21/2017 | 2/22/2018 |
| 7/5/2017 | CITY OF SACRAMENTO UTILITIES | $ 63.85 | 1/25/2017 | 6/21/2017 | | 7/21/2017 |
| 7/5/2017 | SACRAMENTO COUNTY UTILITIES | $ 1,088.23 | 3/22/2017 | 5/21/2017 | 7/20/2017 | 7/21/2017 |
| 9/12/2017 | CITY OF SACRAMENTO UTILITIES | $ 29.10 | 6/22/2017 | 8/24/2017 | | 9/14/2017 |
| 9/12/2017 | SACRAMENTO COUNTY UTILITIES | $ 1,095.05 | 5/22/2017 | 7/21/2017 | 9/15/2017 | 9/18/2017 |
| 9/25/2017 | SACRAMENTO COUNTY UTILITIES | $ 1,108.07 | 7/22/2017 | 9/21/2017 | 9/27/2017 | 9/28/2017 |
| 12/4/2017 | SACRAMENTO COUNTY UTILITIES | $ 1,108.07 | 9/22/2017 | 11/21/2017 | 12/5/2017 | 12/6/2017 |
| 12/18/2017 | CITY OF SACRAMENTO UTILITIES | $ 40.87 | 8/25/2017 | 12/21/2017 | | 12/18/2017 |
| | SACRAMENTO COUNTY | $ 7,772.79 | | | | |
| | CITY OF SACRAMENTO | $ 186.46 | | | | |
| 10/12/2018 | INVOICE #201815 | $ 7,959.25 | | | | |
| | | | | | | |
| 1/23/2018 | CITY OF SACRAMENTO | $ 29.82 | 12/22/2017 | 1/23/2018 | | 6/18/2018 |
| 6/21/2018 | CITY OF SACRAMENTO | $ 12.77 | 5/23/2018 | 6/21/2018 | | 7/20/2018 |
| 5/22/2018 | CITY OF SACRAMENTO | $ 26.82 | 1/24/2018 | 5/22/2018 | | 7/20/2018 |
| 7/18/2018 | SACRAMENTO COUNTY UTILITIES | $ 1,225.56 | 5/22/2018 | 7/21/2018 | | 7/20/2018 |
| 7/18/2018 | SACRAMENTO COUNTY UTILITIES | $ 1,108.07 | 3/22/2018 | 5/21/2018 | | 7/20/2018 |
| 9/4/2018 | CITY OF SACRAMENTO | $ 26.82 | 6/22/2018 | 8/22/2018 | | 9/6/2018 |
| 4/4/2018 | SACRAMENTO COUNTY UTILITIES | $ 1,108.07 | 11/22/2017 | 1/21/2018 | | 4/6/2018 |
| 9/4/2018 | SACRAMENTO COUNTY UTILITIES | $ 1,127.91 | 7/22/2018 | 9/21/2018 | | 9/6/2018 |
| | SACRAMENTO COUNTY | $ 4,569.61 | | | | |
| | CITY OF SACRAMENTO | $ 93.23 | | | | |
| 10/12/2018 | INVOICE #201814 | $ 4,662.84 | | | | |
| | | | | | | |
| 11/5/2018 | CITY OF SACRAMENTO UTILITIES | $ 12.77 | 9/25/2018 | 10/24/2018 | 11/5/2018 | 11/7/2018 |
| 11/5/2018 | SACRAMENTO COUNTY UTILITIES | $ 1,127.91 | 9/22/2018 | 11/21/2018 | 11/5/2018 | 11/7/2018 |
| 11/5/2018 | INVOICE #201817 | $ 1,140.68 | | | | |
| | PARTIAL PAYMENT RECEIVED | $ (450.27) | | | 12/27/2018 CK 181946 | |
| 12/27/2018 | BALANCE DUE ON INVOICE #201817 | $ 690.41 | | | | |
| | | | | | | |
| 11/7/2018 | SACRAMENTO COUNTY TAX (1ST INSTALL) | $ 32,130.78 | 7/1/2018 | 12/31/2018 | 11/7/2018 | 11/9/2018 |
| | PARTIAL PAYMENT RECEIVED | $ (13,732.61) | | | 1/26/2019 CK 140076850 | |
| 1/26/2019 | BALANCE DUE ON INVOICE #201818 (PRE PETITION) | $ 18,396.17 | | | | |
| | | | | | | |
| 12/7/2018 | NATIONWIDE INSURANCE | $ 15,247.00 | 12/23/2018 | 12/23/2019 | 12/10/2018 | 12/23/2018 |
| | PARTIAL PAYMENT RECEIVED | $ (1,670.25) | | | 2/21/2019 CK 183711 | |
| | PARTIAL PAYMENT RECEIVED | $ (1,169.17) | | | 2/21/2019 CK 183775 | |
| 2/31/2019 | BALANCE DUE ON INVOICE #201821 | $ 12,407.58 | | | | |
| | | | | | | |
| 2/22/2019 | CITY OF SACRAMENTO UTILITIES (TENANT RESPONSIBILITY POST PETIT | $ 3,400.28 | 10/18/2018 | 2/13/2019 | 2/13/2019 | 2/15/2019 |
| 2/22/2019 | BALANCE DUE ON INVOICE #201826 | $ 3,400.28 | | | | |
| | | | | | | |
| 2/22/2019 | CITY OF SACRAMENTO UTILITIES (TENANT RESPONSIBILITY - PRE PETIT | $ 1,042.85 | 9/20/2018 | 10/18/2018 | 2/13/2019 | 2/15/2019 |
| 2/22/2019 | BALANCE DUE ON INVOICE #201827 | $ 1,042.85 | | | | |
| | | | | | | |
| 2/12/2019 | CITY OF SACRAMENTO UTILITIES | $ 12.77 | 12/25/2018 | 1/23/2019 | 1/28/2019 | 1/19/2019 |
| 2/22/2019 | BALANCE DUE ON INVOICE #201828 | $ 12.77 | | | | |
| | | | | | | |
| 3/12/2019 | SACRAMENTO COUNTY UTILITIES | $ 1,127.91 | 1/22/2019 | 3/21/2019 | 2/22/2019 | 2/26/2019 |
| 3/12/2019 | BALANCE DUE ON INVOICE #201830 | $ 1,127.91 | | | | |
| | | | | | | |
| 3/18/2019 | SACRAMENTO TAX COLLECTOR - ASSESSMENT CORRECTION | $ 248.62 | 7/1/2018 | 12/31/2018 | 4/4/2019 | 4/23/2019 |
| 3/18/2019 | BALANCE DUE ON INVOICE #201831 (PRE-PETITION) | $ 248.62 | | | | |
| | | | | | | |
| 3/18/2019 | SACRAMENTO TAX COLLECTOR - ASSESSMENT CORRECTION | $ 599.48 | 1/1/2019 | 6/30/2019 | 4/4/2019 | 4/22/2019 |
| 3/18/2019 | BALANCE DUE ON INVOICE #201832 (POST-PETITION) | $ 599.48 | | | | |
| | | | | | | |
| 4/4/2019 | SACRAMENTO COUNTY TAX COLLECTOR (2ND INSTALL 18-19) | $ 32,130.78 | 1/1/2019 | 6/30/2019 | 4/4/2019 | 4/8/2019 |
| 4/4/2019 | BALANCE DUE ON INVOICE #201833 | $ 32,130.78 | | | | |
| | | | | | | |
| 4/10/2019 | CITY OF SACRAMENTO UTILITIES | $ 12.77 | 2/23/2019 | 3/25/2019 | 4/4/2019 | 4/8/2019 |
| 4/10/2019 | BALANCE DUE ON INVOICE #201834 | $ 12.77 | | | | |
| | | | | | | |
| 4/24/2019 | CITY OF SACRAMENTO UTILITIES | $ 12.77 | 3/26/2019 | 4/23/2019 | 4/24/2019 PENDING BANK CONFIRMATION | |
| 4/24/2019 | BALANCE DUE ON INVOICE #201836 | $ 12.77 | | | | |
| | | | | | | |
| 4/25/2019 | SACRAMENTO COUNTY UTILITIES | $ 1,127.91 | 3/22/2019 | 5/21/2019 | 4/25/2019 PENDING BANK CONFIRMATION | |
| 4/25/2019 | BALANCE DUE ON INVOICE 201837 | $ 1,127.91 | | | | |
| | | | | | | |
| 1/26/2019 | UNAPPLIED CASH ON ACCOUNT | $ (25.54) | | | 1/26/2019 CK 182932 | |
| 1/26/2019 | TOTAL UNAPPLIED CASH ON ACCOUNT | $ (25.54) | | | | |
| | | | | | | |
| | | | | | | |
| A+B | **TOTAL BILLED AND DUE** | $ 83,808.85 | | | | |
| | | | | | | |
| | LEGAL SERVICES RELATED TO BANKRUPCY - UNBILLED | | | | | |
| | 1/7/2019 DAVID MEEGAN - MEEGAN, HANSCHU & KASSENBROCK (INV 51177) | $ 1,040.00 | 11/28/2018 | 12/31/2018 | 1/29/2019 | 2/7/2019 |
| | 2/6/2019 DAVID MEEGAN - MEEGAN, HANSCHU & KASSENBROCK (INV 51296) | $ 1,184.10 | 1/1/2019 | 1/31/2019 | 4/4/2019 | 4/17/2019 |
| | 3/4/2019 DAVID MEEGAN - MEEGAN, HANSCHU & KASSENBROCK (INV 51422) | $ 1,520.00 | 2/1/2019 | 2/28/2019 | 4/4/2019 | 4/17/2019 |
| | 4/5/2019 DAVID MEEGAN - MEEGAN, HANSCHU & KASSENBROCK (INV 51517) | $ 560.00 | 3/1/2019 | 3/31/2019 | 4/24/2019 PENDING BANK CONFIRMATION | |
| C. | TOTAL LEGAL FEES UNBILLED | $ 4,304.10 | | | | |
| | | | | | | |
| | TENANT CHARGES UNBILLED AND UNPAID AS OF 04/24/2019 (POST PETITION) | | | | | |
| | CITY OF SACRAMENTO FIRE PREVENTION DIVISION (FALSE ALARMS) | $ 1,360.00 | 3/22/2019 | | | |
| | CITY OF SACRAMENTO FIRE PREVENTION DIVISION (FALSE ALARMS) | $ 1,360.00 | 3/24/2019 | | | |
| | CITY OF SACRAMENTO FIRE PREVENTION DIVISION (FALSE ALARMS) | $ 1,360.00 | 3/27/2019 | | | |
| D. | TOTAL TENANT FALSE ALARMS/ADMINISTRATIVE PENALTIES | $ 4,080.00 | | | | |
| | | | | | | |
| A. | **TOTAL PRE-PETITION** | $ 33,002.14 | | | | |
| | | | | | | |
| B. | TOTAL POST - PETITION | $ 50,806.71 | | | | |
| C. | TOTAL POST - PETITION UNBILLED FIRE PREVENTION | $ 4,304.10 | | | | |
| D. | TOTAL POST - PETITION UNBILLED LEGAL SERVICES | $ 4,080.00 | | | | |
| E.(B+C+D) | TOTAL POST - PETITION | $ 59,190.81 | | | | |
| | | | | | | |
| A+E | TOTAL DUE | $ 92,192.95 | | | | |

**<u>EXHIBIT E</u>**

Date: 4/26/19
Time: 1:08PM

**BLUMENFELD ASSOCIATES**
**Accounts Receivable History/Open Item Detail Report**
From 10/18/18 through 4/26/19

Page: 1

Types: / Cash Receipt

| File Customer | Invoice | Date | Type | Reference | Rep | Total Amount | Freight | Sales Tax | Tax Code | A/R Control Acct | Batch | PM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| H SEARS | 201816 | 11/07/18 | Payment | CK 180556 | | -29,500.00 | 0.00 | 0.00 | | 1100-000 | CR110718 | 11 |
| H SEARS | 201819 | 12/07/18 | Payment | CK 181540 | | -29,500.00 | 0.00 | 0.00 | | 1100-000 | CR120718 | 12 |
| H SEARS | 201820 | 12/27/18 | Payment | ck 181946 | | -12.77 | 0.00 | 0.00 | | 1100-000 | CR122718 | 12 |
| O SEARS | 201817 | 12/27/18 | Payment | ck 181946 | | -450.27 | 0.00 | 0.00 | | 1100-000 | CR122718 | 12 |
| H SEARS | 201823 | 1/08/19 | Payment | 182545 | | -29,500.00 | 0.00 | 0.00 | | 1100-000 | CR010819 | 13 |
| H SEARS | 201824 | 1/08/19 | Payment | 182545 | | -2,500.00 | 0.00 | 0.00 | | 1100-000 | CR010819 | 13 |
| H SEARS | 201822 | 1/26/19 | Payment | CK 182932 | | -1,140.68 | 0.00 | 0.00 | | 1100-000 | CR012619 | 13 |
| O SEARS | 201818 | 1/26/19 | Payment | CK 140076850 | | -13,732.61 | 0.00 | 0.00 | | 1100-000 | CR012619 | 13 |
| O SEARS | OPEN | 1/26/19 | Payment | CK 182932 | | -25.54 | 0.00 | 0.00 | | 1100-000 | CR012619 | 13 |
| H SEARS | 201825 | 2/06/19 | Payment | CK 183442 | | -32,000.00 | 0.00 | 0.00 | | 1100-000 | CR020619 | 14 |
| O SEARS | 201821 | 2/21/19 | Payment | CK 183775 | | -1,169.17 | 0.00 | 0.00 | | 1100-000 | CR022119 | 14 |
| O SEARS | 201821 | 2/21/19 | Payment | CK 183711 | | -1,670.25 | 0.00 | 0.00 | | 1100-000 | CR022119 | 14 |
| H SEARS | 201829 | 3/12/19 | Payment | CK 184457 | | -32,000.00 | 0.00 | 0.00 | | 1100-000 | CR031219 | 15 |
| O SEARS | 201834 | 4/09/19 | Payment | CK 185037 | | -32,000.00 | 0.00 | 0.00 | | 1100-000 | CR040919 | 4 |

Report Totals:    -205,201.29    0.00    0.00