**HEARING DATE:  May 21, 2019 at 10:00 a.m.**
**OBJECTION DEADLINE:  May 14, 2019 at 4:00 p.m.**

Christopher B. Wick, Esq.
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio  44114
216.621.0150
cwick@hahnlaw.com

and

Leslie A. Berkoff, Esq.
MORITT HOCK & HAMROFF LLP
1407 Broadway
New York, NY 110018
212-239-2000
lberkoff@moritthock.com

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDING CORPORATION, et al., | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

## NOTICE OF MOTION OF BRE 312 OWNER LLC
## FOR RELIEF FROM AUTOMATIC STAY

PLEASE TAKE NOTICE OF THE FOLLOWING:

A hearing to consider the Motion (the "**Motion**") of BRE 312 Owner LLC ("**BRE 312**")

for Relief from the Automatic Stay will be held before the Honorable Robert D. Drain, United

States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York,

300 Quarropas Street, White Plains, New York 10601, on May 21, 2019 at 10:00 a.m.

Objections, if any, to the Motion must be made no later than May 14, 2019 at 4:00 p.m.

(the "**Objection Deadline**") and be in writing, with a hard copy delivered to the Chambers of the

Honorable Judge Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 248, White Plains, New York 10601 and The Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Paul Schwartzberg, Esq.); conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; be filed with the Bankruptcy Court; and be served in accordance with the provisions of the Amended Order Implementing Certain Notice and Case Management Procedures and General Order M-405 of this Court on the following parties:

1. The Debtors, c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates IL 60179 (Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq.)

2. Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq. Garret A. Fail, Esq., and Sunny Singh, Esq.), attorneys for the Debtors;

3. Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Paul D. Leake, Esq., Shana A. Elberg, Esq. and George R. Howard, Esq.), attorneys for Bank of America, N.A., administrative agent under the First Lien Credit Facility and the DIP ABL Agent;

4. Davis Polk & Wardell LLP, 450 Lexington Avenue, New York, New York, 10017 (Attn: Marshall S. Huebner, Esq. and Eli J. Vonnegut, Esq.), attorneys for Citibank, N.A., as administrative agent under the Stand-Along L/C Facility;

5. Cleary, Gottlieb, One Liberty Plaza, New York, New York 10006 (Attn: Sean A. O'Neal, Esq.), attorneys for JPP, LLC, as agent under the Second Lien Credit Facility, IP/Ground Lease Term Loan Facility, and the Consolidated Secured Loan Facility;

6. Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178 (Attn: Eric R. Wilson, Esq., Benjamin D. Feder, Esq., and T. Charlie Liu, Esq.), attorneys for Computershare Trust Company, N.A., as trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes;

7. Seyfarth Shaw LLP, 620 Eighth Avenue, New York, New York 10018 (Attn: Edward M. Fox, Esq.), attorneys for Wilmington Trust, National Association, as indenture trustee for the Second Lien Notes;

8. Carter Ledyard & Milburn LLP, 2 Wall Street, New York, New York 10015 (Attn: James Gadsden, Esq.), attorneys for the Bank of New York Mellon Trust

Company, as successor trustee for the SRAC Unsecured PIK Notes, SRAC Unsecured Notes, and the SRAC Medium Term Notes;

9.      Locke Lord LLP, 111 South Wacker Drive, Chicago, IL 60606 (Attn: Brian A. Raynor, Esq.), attorneys for the Pension Benefit Guaranty Corporation;

10.     Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Philip C. Dublin, Esq., Ira Dizengoff, Esq. and Sara Lynne Brauner, Esq.), attorneys for the Official Committee of Unsecured Creditors;

11.     Gould & Ratner LLP, 222 North LaSalle Street, Suite 800, Chicago, IL 60601, (Attn: Matthew A. Olins, Ellen M. Chapelle, Vanessa R. Tiradentes, attorneys for 233 S. Wacker, LLC); and

12.     Hahn Loeser & Parks LLP, 200 Public Square, Suite 2800, Cleveland, Ohio 44114 (Attn: Christopher B. Wick, Esq.), attorneys for BRE 312 Owner LLC.

All Parties having filed a Notice of Appearance were also served via email as well as through the Court's ECF notification system.

If no objection is timely filed and served in accordance with the Case Management Procedures, then BRE 312 may, on or after the Objection Deadline, submit the proposed order to the Court substantially in the form attached to the Motion, which may be entered without further notice or opportunity to be heard.

Dated: April 30, 2019          Respectfully submitted,
     New York, NY

                            By: *Leslie A. Berkoff*
                            Attorneys for Attorneys for BRE 312 Owner LLC
                            Leslie A. Berkoff, Esq.
                            MORITT HOCK & HAMROFF LLP
                            1407 Broadway
                            New York, NY 110018
                            212-239-2000
                            lberkoff@morritthock.com

                            and

                            Christopher B. Wick (OH 0073126)

10752989.2

HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio  44114
216.621.0150
cwick@hahnlaw.com

10752989.2

HEARING DATE:  **May 21, 2019 at 10:00 a.m.**
OBJECTION DEADLINE:  **May 14, 2019 at 4:00 p.m.**

Christopher B. Wick
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio  44114
216.621.0150
cwick@hahnlaw.com

and

Leslie A. Berkoff, Esq.
MORITT HOCK & HAMROFF LLP
1407 Broadway
New York, NY 110018
212-239-2000
lberkoff@moritthock.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARS HOLDING CORPORATION, et al., | ) | Case No. 18-23538 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## MOTION OF BRE 312 OWNER LLC
## FOR RELIEF FROM AUTOMATIC STAY

BRE 312 Owner LLC ("**BRE 312**"), by and through its attorneys, Hahn Loeser &

Parks, LLC and Moritt Hock & Hamroff LLP, moves (the "**Motion**") this Court for relief from

the automatic stay, pursuant to section 362(d)(1) of title 11 of the United States Code (the

"**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), so that BRE 312 may dispose of the Alexander Calder's "Universe"

sculpture (the "**Calder**") in a commercially reasonable manner.  BRE 312 does not assert any

ownership interest in the Calder; yet, the sculpture currently is being stored and insured at BRE 312's cost. In support of this Motion, BRE 312 respectfully states as follows:

## INTRODUCTION

1.      The Motion relates to BRE 312's desire to dispose of the Calder in a commercially reasonable manner to stop incurring any additional costs associated with its storage and insurance without running afoul of any potential allegation that such action is a violation of the automatic stay. The Calder used to be located in the lobby of the building located at 233 South Wacker Drive, Chicago, Illinois, known as the Willis Tower and formerly known as the Sears Tower (the "**Building**"). BRE 312 came into possession of the Calder when BRE 312 purchased the Willis Tower in 2015 because, at that time, the Calder still was being displayed in the Building's lobby.

2.      By 2015, the right to purchase the Calder already was in dispute between several of the Building's former owners, including the Debtors. Specifically, Sears, Roebuck and Co. and Sears Holding Corporation (collectively, "**Sears**" or the "**Debtors**") and 233 S. Wacker ("**233**" and with Sears, the "**Litigants**") have been embroiled in Illinois state court litigation since 2010. Most recently, in August 2016, Sears filed a complaint (the "**Illinois State Court Litigation**")[1] in the Circuit Court of Cook County, Chancery Division (the "**Illinois State Court**") seeking to compel 233 to sell Sears the Calder. 233 responded with a counterclaim for breach of Sears's duty of good faith and fair dealing in connection with Sears's obligations to market the Calder and share the proceeds of a sale with 233.

3.      BRE 312 is not a party to the Illinois State Court Litigation and it does not assert any ownership interest in the Calder. Prior to filing the Motion, BRE 312's counsel attempted to

---

[1] The Illinois State Court Litigation is styled *Sears, Roebuck and Co. and Sears Holdings Corporation v. 233 S. Wacker, LLC*; Case No. 2016-C-10308 and is pending in the Circuit Court of Cook County, Illinois County Department, Chancery Division.

communicate with Debtors' counsel and 233's counsel to determine whether there was a mutually agreeable option for BRE 312 to surrender possession of the Calder to either of the Litigants and extract itself from involvement in the Illinois State Court Litigation and these bankruptcy cases. BRE 312 has incurred significant deinstallation, moving, storage and insurance expenses with regard to the Calder and it is concerned that it will continue to incur storage and insurance costs for an untold period of time while the Litigants argue over the right to purchase the Calder. In addition, depending on the outcome of the Illinois State Court Litigation, BRE 312 may have pre- and post-petition claims against the Debtors to recover the costs it has incurred with regard to the Calder.

4.      To date, BRE 312 has been unsuccessful in attempts to reach a mutually agreeable resolution with Sears and 233 for the Calder's disposition. Accordingly, to the extent Debtors have any contingent future ownership interest in the Calder, BRE 312 seeks relief from the automatic stay to have the Calder sold in a commercially reasonable manner to allow BRE 312 to cease incurring additional and unnecessary costs associated with the sculpture's storage and insurance. BRE 312 proposes selling the Calder through one of the premier art auction houses[2] and interpleading the net proceeds of such sale with the Illinois State Court.

## FACTUAL BACKGROUND

5.      Commissioned by Sears Roebuck & Co. in 1974 for what was then known as the Sears Tower, the Calder is a motorized sculptural installation. The work consists of five (5) individual components ranging from colorful evocations of the sun and flowers to a massive black helix winding along at ground level. Stretching 33 feet high by 55 feet long and weighing roughly 16,000 pounds, it was designed to deliver an immediate, if whimsical, impact.

---

[2]  As recently as 2014, Calder's 7 1/2-foot-long hanging mobile, *Poisson Volant (Flying Fish)* (1957), sold for $25.9 million, setting an auction record for the sculptor at Christie's New York.

6.      Since 2010, the right to own or sell the Calder has been in dispute between the Litigants, Sears and 233.   The Litigants reached a settlement agreement in June 2013 under which Sears would market and sell the Calder to a third party during a "third party sale period." In the event the Calder was not sold to a third party during the "third party sale period," Sears would purchase it for $3,860,625.   Upon a sale of the Calder, the Litigants would share in the proceeds through a series of waterfalls.

7.      The Litigants, however, disagreed as to their respective rights and obligations under the settlement agreement.   On or about August 4, 2016, Sears filed the Illinois State Court Litigation seeking to compel 233 to sell the Calder to it for $3,860,625.   233 filed a counterclaim asserting that Sears had breached its obligations under the settlement agreement by failing to market the Calder and refusing to accept other offers for its purchase.

8.      On October 15, 2018, Sears and certain of its affiliates commenced voluntary bankruptcy cases under chapter 11 of the Bankruptcy Code in this Court.   The filing of these cases invoked the automatic stay provisions of Bankruptcy Code Section 362.   Because Sears asserts a contingent future right to an ownership interest in the Calder, it may constitute property of the bankruptcy estate pursuant to Bankruptcy Code Section 541(a)(1).[3]

9.      On or about June 5, 2015, BRE 312 came into possession of the Calder when it acquired the Building from 233, where the Calder was being displayed.   The purchase agreement for the Building established that BRE 312 did not purchase the Calder.   It also required BRE 312

---

[3] As evidence that the contingent right to purchase the Calder may constitute property of Debtors' bankruptcy estate, 233 recently sought relief from the automatic stay to allow it to assert its counterclaims against the Debtors regarding ownership of the Calder.   [Docket No. 2326].   233's motion for relief from the automatic stay was originally scheduled to be heard on March 21, 2019 at 4:00 p.m. and was subsequently resolved a Court approved Stipulation, Agreement, and Order Granting Limited Relief from the Automatic Stay (233 S. Wacker, LLC) entered on April 2, 2019 [Docket No. 3019].

to be responsible for protecting, insuring, and maintaining the Calder through the settlement agreement's "third party sale period," which ended on June 28, 2016.

10.    On or about September 26, 2016, BRE 312 notified the Litigants that it needed to remove the Calder from the Building because BRE 312 had commenced a $500 million redevelopment of the Building. BRE 312 made numerous attempts to negotiate an agreement among it and the Litigants to have the Calder removed from the Building to allow BRE 312 to proceed with its redevelopment. Ultimately, the Litigants failed to reach an agreement.

11.    In March 2017, after giving the Litigants advance notice of its intentions, BRE 312 had the Calder deinstalled by an art professional and moved to storage at an off-site location that specializes in fine art storage. In giving notice, BRE 312 informed the Litigants that it would assert common law and statutory liens over the Calder for BRE 312's costs.

12.    In removing the Calder, BRE 312 directly incurred substantial costs, including but not limited to fine arts removal rigging and installation specialists; crane lifts; wrapping materials; fine art movers; stone specialist to repair damage to the Building's wall and floor caused by the Calder de-installation; insurance; and legal fees.[4]

13.    BRE 312 does not wish to continue to incur expenses related to the Calder's storage and insurance. However, the Litigants' respective rights to the Calder have not been established due to the continuing nature of the Illinois State Court Litigation and this Bankruptcy Case. Accordingly, BRE 312 requests relief from the automatic stay as a prophylactic measure to enforce its possessory lien rights and dispose of the Calder at a commercially reasonable sale.

---

[4] BRE 312 deducted funds from a holdback on its purchase of the Building from 233. BRE 312 now, however, has incurred costs in excess of the funds it deducted.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction of the subject matter hereof pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

15.     The statutory basis for this Motion are Section 362(d)(1) of the Bankruptcy Code and Bankruptcy Rule 4001.

## RELIEF REQUESTED AND LEGAL BASES THEREFOR

16.     BRE 312 requests that this Court grant BRE 312 relief from the automatic stay for cause pursuant to Bankruptcy Code Section 362(d)(1) so that BRE may dispose of the Calder in a commercially reasonable fashion and interplead the net proceeds of such sale with the Illinois State Court.

17.     Section 362(d)(1) of the Bankruptcy Code provides "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay... such as by terminating, annulling, modifying or conditioning such stay – (1) for cause."  11 U.S.C. § 362(d)(1).  The Bankruptcy Court does not define the term "cause"; courts, however, recognize "cause" as an intentionally broad and flexible concept that must be determined on a case-by-case basis.  *In re Project Orange Assocs.*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (citing *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa 2004).  The decision of whether to grant relief from an automatic stay is ultimately a matter of the court's discretion.  *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).

## I.     BRE 312's Statutory Liens Authorize It to Dispose of the Calder.

18.     BRE 312 holds statutory liens, each of which affords it the right to sell the Calder, subject to relief from the automatic stay.  For example, the Uniform Commercial Code provides

a warehouse lien to BRE 312. Specifically, UCC Section 7-209 provides a lien that automatically attaches without express notation on the warehouse receipt or storage agreement with regard to goods stored under the receipt or the storage agreement.

19.    Pursuant to UCC Section 7-210, a warehouse's lien may be enforced by public or private sale of the goods at any time or place and on any terms that are commercially reasonable, after notifying all persons known to claim an interest in the goods. UCC Section 7-210(b) contains the specific requirements as to notification, publication, and public sale, each of which likely would be addressed in any contract with the auction house chosen for this project.

20.    Another statutory lien that provides BRE 312 the ability to sell the Calder is the Illinois Labor Storage Lien Act. *See* 770 ILCS 45/1. "Every person, firm or corporation who has expended labor, skill or materials upon any chattel, or has furnished storage for said chattel, at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof, shall have a lien upon such chattel beginning on the date of the commencement of such expenditure of labor, skill and materials or of such storage for the contract price for all such expenditure of labor, skill or materials, or for all such storage, or in the absence of such contract price, for the reasonable worth of such expenditure of labor, skill and materials, or of such storage, for a period of one year from and after the completion of such expenditure of labor, skill or materials, or of such storage, notwithstanding the fact that the possession of such chattel has been surrendered to the owner, or lawful possessor thereof." 770 ILCS 45/1.

21.    Under the Labor Storage Lien Act, BRE 312's lien arose automatically when it provided services to the Litigants. In addition to the storage, BRE 312 asserts a statutory lien claim for the labor and materials expended to preserve and maintain the Calder. *See Minuti v.*

*Johnson*, 2003 U.S. Dist. LEXIS 26666, *5 (N.D. Ill. Feb. 6, 2003) (suggesting that preserving

art amounts to work performed on the art).

22.     Under the Labor Storage Lien Act, the storage, or labor/skill/materials, must be

furnished upon request of the owner or reputed owner, or lawful possession.

## II.     BRE 312's Disposition of the Calder Will Not Interfere with the Illinois State Court Litigation or the Debtors' Bankruptcy Cases.

23.     BRE 312's disposition of the Calder is entirely unrelated to matters at issue in

these Bankruptcy Cases.  Sears no longer owns the Building, it does not own the Calder (merely

having a contingent right to purchase the sculpture), and it has not made any affirmative

statements regarding a desire to publically display the Calder at a different site or bid on the

Calder.  The Illinois State Court Litigation is still in the discovery phase of the case and it is

unlikely that the litigation will be concluded prior to the Calder's disposition.  In the event that

233 wishes to itself bid on the Calder, BRE 312 can negotiate an exception to its contract with

the art auction house to provide 233 such an opportunity to bid.

24.     Similarly, the Calder's disposition would not prejudice the interests any class of

creditors in these Bankruptcy Cases.  233 already sought and obtained limited relief from the

automatic stay provisions to pursue its counterclaim and it has been provided notice of this

Motion.  If 233 prevails in the Illinois State Court Litigation, Sears's creditors will be entirely

unaffected by the Calder's disposition.  Conversely, if Sears prevails in the Illinois State Court

Litigation, it would be awarded its share of the net proceeds from the Calder's sale (in

accordance with the waterfalls previously negotiated by the Litigants) and the Debtors may

distribute those proceeds in accordance with the Bankruptcy Code.  In either event, Sears's

creditors are not prejudiced.

8

**III.    The Fourteen-Day Stay Provision of Federal Rule of Bankruptcy
Procedure 4001(a)(3) Should be Waived.**

25.    BRE 312 further requests that the fourteen-day stay provision of Federal Rule of
Bankruptcy Procedure 4001(a)(3) be waived.    A stay of an order granting it relief from the
automatic stay is unnecessary under these circumstances because the Calder cannot be sold in a
commercially reasonable manner in less than fourteen days.

## NOTICE

26.    Notice of this Motion will be provided in accordance with the procedures set forth
in the Amended Order Implementing Certain Notice and Case Management Procedures [Docket
No. 405].  BRE 312 respectfully submits that no further notice is required.

## NO PRIOR REQUEST

27.    No previous request from the relief sought herein has been made by BRE 312 to
this or any other Court.

WHEREFORE, BRE 312 respectfully requests that this Court grant this Motion and enter
an order in the proposed form attached hereto as *Exhibit A* (i) granting BRE 312 relief from the
automatic stay to dispose of the Calder in a commercially reasonable manner and to take any
other action necessary, including but not limited to interpleading the net proceeds of the Calder's
sale into the Illinois State Court; (ii) waiving the fourteen-day stay provision of Federal Rule of
Bankruptcy Procedure 4001(a)(3); and (iii) granting BRE 312 such other and further relief as this
Court deems just and proper.

Dated: April 30, 2019                      Respectfully submitted,
     New York, NY

                                       By: *Leslie A. Berkoff*
                                       Attorneys for Attorneys for BRE 312 Owner
                                       LLC
                                       Leslie A. Berkoff, Esq.
                                       MORITT HOCK & HAMROFF LLP
                                       1407 Broadway

New York, NY 110018
212-239-2000
lberkoff@moritthock.com


and

Christopher B. Wick (OH 0073126)
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio  44114
216.621.0150
cwick@hahnlaw.com

Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SEARS HOLDING CORPORATION, et al., | ) Case No. 18-23538 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## ORDER GRANTING MOTION OF BRE 312
## FOR RELIEF FROM AUTOMATIC STAY

Upon the motion of BRE 312 Owner LLC for Relief from Automatic Stay (the "**Motion**"), the Court having jurisdiction to consider the Motion and the relief requested therein; consideration of the Motion and the relief requested therein being a core proceeding; venue being proper before this Court; due and proper notice of the Motion having been provided, and no other or further notice need be provided; the Court having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; upon all of the proceedings had before the Court and after due deliberation and sufficient case appearing therefor,

**IT IS ORDERED THAT:**

1.    The Motion is granted.

2.    Pursuant to 11 U.S.C. §362(d)(1), the automatic stay of 11 U.S.C. §362 is terminated with respect to BRE 312 Owner LLC's request to sell the Calder Universe in a commercially reasonable manner and to interplead any net sale proceeds with the Illinois State Court[1] in the Illinois State Court Litigation.

3.    The fourteen-day stay provision of Federal Rule of Bankruptcy Procedure 4001(a)(3) with respect to this Order is hereby waived.

---

[1]Capitalized terms not defined herein shall have their meanings ascribed to them in the Motion.

10752989.2

Dated:_____

_____, New York

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

1912307v.2