David L. Pollack, Esquire
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864-8325
E-mail: Pollack@ballardspahr.com

Dustin P. Branch, Esquire
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354
E-mail: branchd@ballardspahr.com

**Obj. Deadline: May 3, 2019 at 4:00 p.m. ET**
**Hearing Date:  May 8, 2019 at 10:00 a.m. ET**

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4465
E-mail: heilmanl@ballardspahr.com

*Attorneys for Acadia Realty Limited Partnership, Brixmor Operating Partnership, L.P., C.E. John Company, Inc., Cedar – Valley Plaza, LLC, Federal Realty Investment Trust, Hart I-55 Industrial LLC, Passco Companies, LLC, The Macerich Company, Vintage Real Estate, LLC, and White Plains Galleria Limited Partnership*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------------x

**CURE OBJECTION OF ACADIA REALTY LIMITED PARTNERSHIP, BRIXMOR OPERATING PARTNERSHIP, L.P., C.E. JOHN COMPANY, INC., CEDAR – VALLEY PLAZA, LLC, FEDERAL REALTY INVESTMENT TRUST, HART I-55 INDUSTRIAL LLC, PASSCO COMPANIES, LLC, THE MACERICH COMPANY, VINTAGE REAL ESTATE, LLC,  AND WHITE PLAINS GALLERIA LIMITED PARTNERSHIP RELATING TO THE (I) DEBTORS' NOTICE OF ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASE DATED APRIL 19, 2019, AND (II) SEVENTH SUPPLEMENTAL NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH GLOBAL SALES TRANSACTION**

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY COURT JUDGE:**

Acadia Realty Limited Partnership, Brixmor Operating Partnership, L.P., C.E. John Company, Inc., Cedar – Valley Plaza, LLC, Federal Realty Investment Trust, Hart I-55 Industrial LLC, Passco Companies, LLC, The Macerich Company, Vintage Real Estate, LLC, Center, and

White Plains Galleria Limited Partnership (collectively the "Landlords"), by their undersigned attorneys, hereby make this Objection (the "Objection") to the Debtors' Notice of Assignment of Additional Designatable Lease dated April 19, 2019 [Docket No. 3298] (the "Designation Cure Notice"), and (II) Seventh Supplemental Notice of Cure Costs and Potential Assumption and Assignment Of Executory Contracts and Unexpired Leases in Connection With Global Sales Transaction [Docket No. 3330] (the "7th Supplemental Cure Notice,"[1] and together with the Designation Cure Notice, collectively, the "Additional Cure Notices"), and in support thereof aver:

## I.    BACKGROUND FACTS

1.    Sears Holding Corporation, and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on October 15, 2018.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2.    The Debtors lease retail space (the "Premises") from Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the shopping centers (the "Centers") set forth on the attached Schedule A.

3.    Other than the non-retail locations identified in Schedule A, the Premises referred to in Schedule A are premises located in shopping centers (the "Premises"), as that term is used in 11 U.S.C. § 365(b)(3). *See* In Re: Joshua Slocum, Ltd., 922 F.2d 1081 (3d Cir. 1990).

4.    In connection with the sale of the Debtors' assets to Transform Holdco LLC, the Debtors filed and served their initial Cure Notice on January 18, 2019, which notice was supplemented on the evening of January 23, 2019.  Landlords objected to the Cure Notice and Supplement Cure Notice on January 29, 2019 [Docket No. 2147] (the "Initial Cure

---

[1] The 7th Supplemental Cure Notice relates to the Notice of Assumption and Assignment of Additional Designatable Leases [Docket No. 3329], filed on April 23, 2019, which was supersede by the Amended Notice of Assumption and Assignment of Desigatable Leases [Docket No. 3331], filed on April 24, 2019.

[2] All statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Unless otherwise specified in this Motion.

Objection").[3]  The Initial Cure Objection is restated and incorporated by reference herein as if set forth in full.

5.      The Debtors filed the Designation Cure Notice on April 19, 2019, and the 7th Supplemental Cure Notice on April 23, 2019.  Collectively, the Additional Cure Notices include the Landlords listed herein.  The amounts set forth in the Additional Cure Notices do not reflect all outstanding balances due and owing to Landlords under the Leases, and the proposed cure amounts do not account for accrued but unbilled charges which may come due in the future. The cure amounts set forth by the Debtors must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.[4]

## II.    **CURE OBJECTION**

## A.    **The Debtors' proposed cure amounts do not provide for payment of all obligations due under the Leases.**

5.      In some cases, the Debtors have revised their initial proposed cure amounts on the Additional Cure Notices, and in addition, the Debtors incorrectly state in the Designation Cure Notice that Landlords' either did not file an objection, or in some instances, list the Landlords' objection as "Objection Filed – Cure Amount Not Specified."  Where the Debtors previously identified a location for potential assumption and assignment, and where any balance owed, Landlords filed a cure objection.  In some instances, a Landlord agreed that the balance owing was equal to or less than the amount proposed by the Debtors, and in such cases, specified that Landlord would reconcile as needed if the lease was subsequently assumed and assigned.  By this Objection, Landlords re-assert any balance that was filed as part of the Initial Cure Objection, and amend their Initial Cure Objection to include any amounts that have come

---

[3] The Debtors and Landlord extended the deadline to object to the Cure Notice and Supplemental Cure Notice to January 29, 2019 by agreement.

[4] The Landlords have filed any objections to the assumption or assumption and assignment of the Leases contemporaneously with this Objection.

due since January 29, 2019.  Landlords also object in instances where Landlords may no longer agree with the revised cure amounts proposed by the Debtors.  The Landlords' revised cure, as compared to the Debtors' amended cure, is summarized below, and those charges comprising the Landlords' cure are more fully detailed in Exhibits A through M, which are attached hereto and incorporated into this Objection by this reference:

| Landlord | Center | Store No. | Debtor's Initial Cure | Amended Debtors' Cure | Landlords' Cure[5] | Ex. |
|----------|--------|-----------|----------------------|----------------------|--------------------|-----|
| Acadia | Mark Plaza (Kmart) | 3266 | 27,088.00 | *unchanged* | **$48,490.22** | A |
| Brixmor | Coastal Way | 2485 | $7,176.00 | *unchanged* | **$18,515.07** | B |
| Brixmor | Hamilton Plaza (Kmart) | 4478 | $688.00 | *unchanged* | @ ü[6,7] | N/A |
| C.E. John | Lancaster Mall (Auto)[8] | 2715 | $11,357.50 | *$0.00* | **$32,965.93** | C |
| Cedar | Valley Plaza SC (Kmart) | 3172 | $4,205.00 | *unchanged* | @ | N/A |
| Federal | Assembly Row (Kmart) | 3486 | $14,767.00 | *$0.00* | **$245,151.36** | D |
| Federal | Hasting Ranch Plaza | 1048 | $19,129.00 | *$0.00* | **$21,108.13** | E |
| Hart I-55 | Romeoville I (warehouse) | 8871 | $27,542.40 | *$0.00* | **$20,083.39** | F |
| Hart I-55 | Romeoville II (warehouse) | 8934 | $238,920.34 | *$0.00* | **$33,281.80** | G |
| Macerich | Green Acres Mall | 1924 | $10,000.00 | *$0.00* | **$557,996.45** | H |
| Macerich | Paradise Valley Mall | 1768 | $46,750.69 | *$0.00* | **$237,453.90** | J |
| Macerich | Stonewood Center | 1309 | $14,583.00 | *$0.00* | @ | N/A |
| Macerich | Stonewood Center (Auto) | 2728 | $8,318.75 | *unchanged* | @ | N/A |
| Macerich | The Mall of Victor Valley | 2829 | $37,596.00 | *$0.00* | **$86,489.33** | K |
| Passco | Hanford Mall | 2656 | N/A | *$0.00* | **$39,656.18** | L |

---

[5] The Landlords' Cure does not include May 2019 rent and charges, or any other charges that are billed or come due after the filing of this Objection or charges that are billed directly to the Debtors, including in some cases, real estate taxes.  To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend the Objection to include such amounts.  The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserve the right to payment (and amend this Objection if necessary) for any amounts that come due under the Leases through the date of any cure payment.

[6] Symbol "@" indicates Landlord consents to the cure amount proposed by the Debtors.

[7] Symbol "ü" indicates amount is unchanged from the Initial Cure Objection.

[8] The Designation Cure Notice includes the Auto Center Lease for Lancaster Mall (Store No. 2715), but it does not include the Lease for the retail premises (Store No. 2119).  The Landlord for Lancaster Mall included cure amounts for the retail premises in the Initial Cure Objection, and the Landlord hereby reserves the right to include all cure amounts for Store No. 2119 to the extent the Debtors seek to assume and assign that Lease in the future.

| Vintage | The Mall at Whitney Field | 1133 | $16,383.00 | *$0.00* | **$97,100.79** | **M** |
| White Plains | Galleria at White Plains | 1674 | $8,333.00 | ***unchanged*** | **@ ü** | **N/A** |

6.      In addition to the current outstanding rent and other monthly charges due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors or assignee, either as cure or when properly billed under the Leases.

i.      *Year-end adjustments and reconciliations*

7.      In addition to rent and related monthly charges, attorneys' fees, costs, and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month.  The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective Center.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. - year-end reconciliations and adjustments that accrued through 2018 may not yet have been billed at most locations, and such charges that are accruing for 2019 will not be billed until 2020).  In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.  Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time.

8.      Nevertheless, the lessees under the Leases remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases.  The Debtors (or successor) assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under each Lease.  Any final sale order should clearly state that the Debtors (or successor) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment.  In addition, any provision in a sale order that purports to release the Debtors (or successor) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

9.      In addition, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents, as well as environmental obligations that may have accrued or are accruing under the Leases.  Any assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.   In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption and assignment of the Leases.  Nothing in any sale order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

ii.      *Attorneys' fees, costs, and interest*

10.      The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests.  The

Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases.  *See* 11 U.S.C. § 365(b)(1)(A) and (B).  The principle is well-recognized.  In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured all pre-petition defaults).

11.     The Debtors (or successor) take the Leases *cum onere* – subject to existing burdens.  The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of their Leases.  In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993).  If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under their Leases with the Debtors.  *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996).  The "full benefit of the bargain" principle has been held to require payment of interest.  "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy.  One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract."  In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%).  Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases.  *See* In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D.N.Y. 1990).  Interest calculations are, therefore, not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume the Leases.  Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases.  Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

12.    Landlords have incurred significant attorneys' fees in connection with protecting their interests in these cases, which fees are not less than $10,000.00 per Lease. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases. Entertainment, Inc., 223 B.R. at 152 (citation omitted).   There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. 154.   The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., see also, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999).   The Supreme Court has also upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.   Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

**B.    The Cure Amounts Serve Only As Estimates.**

13.    Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations.   There

is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

**C.    The Debtors or Assignee Must Pay Undisputed Cure Amounts Immediately.**

14.    Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption.  To the extent there is a dispute over the total cure obligation for any Lease, all undisputed cure amounts should be paid immediately.  Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Leases to deal with any disputes that remain unresolved after such period.

**III.    JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS**

15.    To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

**IV.    CONCLUSION**

The Landlords request that the Court (i) allow the cure amounts (subject to adjustment by the Landlords) in the amounts set forth herein, (ii) order payment of all undisputed cure amounts, with an escrow established that is sufficient to pay any remaining disputed cure amounts, when resolved by the parties or this Court, and (iii) grant such further relief as the Court deems proper.

Dated:  April 30, 2019
New York, New York

Respectfully submitted,

*/s/ Dustin P. Branch*
Dustin P. Branch, Esquire
(Admitted *pro hac vice*)
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354
Fax: (424) 204-4350
E-mail: branchd@ballardspahr.com

- and -

David L. Pollack, Esquire
(Admitted *pro hac vice*)
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864-8325
E-mail: Pollack@ballardspahr.com

- and -

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4465
E-mail: heilmanl@ballardspahr.com

*Attorneys for Attorneys for Acadia Realty
Limited Partnership, Brixmor Operating
Partnership, L.P., C.E. John Company, Inc.,
Cedar – Valley Plaza, LLC, Federal Realty
Investment Trust, Hart I-55 Industrial LLC,
Passco Companies, LLC, The Macerich
Company, Vintage Real Estate, LLC, and
White Plains Galleria Limited Partnership*

**SCHEDULE A**

| | | |
|---|---|---|
| *Federal Realty Investment Trust* | | |
| Store No. 3486 | Assembly Row | Sommerville, MA |
| Store No. 1048 | Hastings Ranch Plaza | Pasadena, CA |
| *Acadia Realty Limited Partnership* | | |
| Store No. 3266 | Mark Plaza | Kingston, PA |
| *C.E. John Company, Inc.* | | |
| Store No. 2119 | Lancaster Mall | Salem (Lancaster), OR |
| Store No. 2715 | Lancaster Mall | Salem (Lancaster), OR |
| *Cedar – Valley Plaza, LLC* | | |
| Store No. 3172 | Valley Plaza Shopping Center | Hagerstown, MD |
| *Brixmor Operating Partnership, L.P.* | | |
| Store No. 4478 | Hamilton Plaza | Hamilton, NJ |
| Store No. 2485 | Coastal Way | Brooksville, FL |
| *Passco Companies, LLC* | | |
| Store No. ---- | Hanford Mall | Hanford, CA |
| *The Macerich Company* | | |
| Store No. 1924 | Green Acres Mall | Valley Stream, NY |
| Store No. 1768 | Paradise Valley Mall | Phoenix, AZ |
| Store No. 1309 | Stonewood Center | Downey, CA |
| Store No. 2728 | Stonewood Center | Downey, CA |
| Store No. 2829 | The Mall of Victor Valley | Victorville, CA |
| *Vintage Real Estate, LLC* | | |
| Store No. 1133 | The Mall at Whitney Field | Leominster, MA |
| *White Plains Galleria Limited Partnership* | | |
| Store No. 1674 | The Galleria at White Plains | White Plains, NY |
| *Hart I-55 Industrial, LLC* | | |
| Store No. 8934 | Romeoville I (non-retail) | Romeoville, IL |
| Store No. 8871 | Romeoville II (non-retail) | Romeoville, IL |

David L. Pollack, Esquire
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864-8325
E-mail: Pollack@ballardspahr.com

Dustin P. Branch, Esquire
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354
E-mail: branchd@ballardspahr.com

**Obj. Deadline: May 3, 2019 at 4:00 p.m. ET**
**Hearing Date:  May 8, 2019 at 10:00 a.m. ET**

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4465
E-mail: heilmanl@ballardspahr.com

*Attorneys for Acadia Realty Limited
Partnership, Brixmor Operating Partnership,
L.P., C.E. John Company, Inc., Cedar – Valley
Plaza, LLC, Federal Realty Investment Trust,
Hart I-55 Industrial LLC, Passco Companies,
LLC, The Macerich Company, Vintage Real
Estate, LLC, and White Plains Galleria
Limited Partnership*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------------x

**CURE OBJECTION OF ACADIA REALTY LIMITED PARTNERSHIP, BRIXMOR
OPERATING PARTNERSHIP, L.P., C.E. JOHN COMPANY, INC., CEDAR – VALLEY
PLAZA, LLC, FEDERAL REALTY INVESTMENT TRUST, HART I-55 INDUSTRIAL
LLC, PASSCO COMPANIES, LLC, THE MACERICH COMPANY, VINTAGE REAL
ESTATE, LLC,  AND WHITE PLAINS GALLERIA LIMITED PARTNERSHIP
RELATING TO THE (I) DEBTORS' NOTICE OF ASSIGNMENT OF ADDITIONAL
DESIGNATABLE LEASE DATED APRIL 19, 2019, AND (II) SEVENTH
SUPPLEMENTAL NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN
CONNECTION WITH GLOBAL SALES TRANSACTION**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY COURT JUDGE:**

Acadia Realty Limited Partnership, Brixmor Operating Partnership, L.P., C.E. John

Company, Inc., Cedar – Valley Plaza, LLC, Federal Realty Investment Trust, Hart I-55 Industrial

LLC, Passco Companies, LLC, The Macerich Company, Vintage Real Estate, LLC, Center, and

White Plains Galleria Limited Partnership (collectively the "Landlords"), by their undersigned attorneys, hereby make this Objection (the "Objection") to the Debtors' Notice of Assignment of Additional Designatable Lease dated April 19, 2019 [Docket No. 3298] (the "Designation Cure Notice"), and (II) Seventh Supplemental Notice of Cure Costs and Potential Assumption and Assignment Of Executory Contracts and Unexpired Leases in Connection With Global Sales Transaction [Docket No. 3330] (the "7th Supplemental Cure Notice,"[1] and together with the Designation Cure Notice, collectively, the "Additional Cure Notices"), and in support thereof aver:

## I.    BACKGROUND FACTS

1.    Sears Holding Corporation, and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on October 15, 2018.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2.    The Debtors lease retail space (the "Premises") from Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the shopping centers (the "Centers") set forth on the attached Schedule A.

3.    Other than the non-retail locations identified in Schedule A, the Premises referred to in Schedule A are premises located in shopping centers (the "Premises"), as that term is used in 11 U.S.C. § 365(b)(3). See In Re: Joshua Slocum, Ltd., 922 F.2d 1081 (3d Cir. 1990).

4.    In connection with the sale of the Debtors' assets to Transform Holdco LLC, the Debtors filed and served their initial Cure Notice on January 18, 2019, which notice was supplemented on the evening of January 23, 2019.  Landlords objected to the Cure Notice and Supplement Cure Notice on January 29, 2019 [Docket No. 2147] (the "Initial Cure

---

[1] The 7th Supplemental Cure Notice relates to the Notice of Assumption and Assignment of Additional Designatable Leases [Docket No. 3329], filed on April 23, 2019, which was supersede by the Amended Notice of Assumption and Assignment of Desigatable Leases [Docket No. 3331], filed on April 24, 2019.

[2] All statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Unless otherwise specified in this Motion.

Objection")[3]  The Initial Cure Objection is restated and incorporated by reference herein as if set forth in full.

5.      The Debtors filed the Designation Cure Notice on April 19, 2019, and the 7th Supplemental Cure Notice on April 23, 2019.  Collectively, the Additional Cure Notices include the Landlords listed herein.  The amounts set forth in the Additional Cure Notices do not reflect all outstanding balances due and owing to Landlords under the Leases, and the proposed cure amounts do not account for accrued but unbilled charges which may come due in the future. The cure amounts set forth by the Debtors must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.[4]

## II.    **CURE OBJECTION**

## A.    **The Debtors' proposed cure amounts do not provide for payment of all obligations due under the Leases.**

5.      In some cases, the Debtors have revised their initial proposed cure amounts on the Additional Cure Notices, and in addition, the Debtors incorrectly state in the Designation Cure Notice that Landlords' either did not file an objection, or in some instances, list the Landlords' objection as "Objection Filed – Cure Amount Not Specified."  Where the Debtors previously identified a location for potential assumption and assignment, and where any balance owed, Landlords filed a cure objection.  In some instances, a Landlord agreed that the balance owing was equal to or less than the amount proposed by the Debtors, and in such cases, specified that Landlord would reconcile as needed if the lease was subsequently assumed and assigned.  By this Objection, Landlords re-assert any balance that was filed as part of the Initial Cure Objection, and amend their Initial Cure Objection to include any amounts that have come

---

[3] The Debtors and Landlord extended the deadline to object to the Cure Notice and Supplemental Cure Notice to January 29, 2019 by agreement.

[4] The Landlords have filed any objections to the assumption or assumption and assignment of the Leases contemporaneously with this Objection.

3

due since January 29, 2019. Landlords also object in instances where Landlords may no longer agree with the revised cure amounts proposed by the Debtors. The Landlords' revised cure, as compared to the Debtors' amended cure, is summarized below, and those charges comprising the Landlords' cure are more fully detailed in Exhibits A through M, which are attached hereto and incorporated into this Objection by this reference:

| Landlord | Center | Store No. | Debtor's Initial Cure | Amended Debtors' Cure | Landlords' Cure[5] | Ex. |
|---|---|---|---|---|---|---|
| Acadia | Mark Plaza (Kmart) | 3266 | 27,088.00 | *unchanged* | **$48,490.22** | A |
| Brixmor | Coastal Way | 2485 | $7,176.00 | *unchanged* | **$18,515.07** | B |
| Brixmor | Hamilton Plaza (Kmart) | 4478 | $688.00 | *unchanged* | **@ ü[6,7]** | N/A |
| C.E. John | Lancaster Mall (Auto)[8] | 2715 | $11,357.50 | *$0.00* | **$32,965.93** | C |
| Cedar | Valley Plaza SC (Kmart) | 3172 | $4,205.00 | *unchanged* | **@** | N/A |
| Federal | Assembly Row (Kmart) | 3486 | $14,767.00 | *$0.00* | **$245,151.36** | D |
| Federal | Hasting Ranch Plaza | 1048 | $19,129.00 | *$0.00* | **$21,108.13** | E |
| Hart I-55 | Romeoville I (warehouse) | 8871 | $27,542.40 | *$0.00* | **$20,083.39** | F |
| Hart I-55 | Romeoville II (warehouse) | 8934 | $238,920.34 | *$0.00* | **$33,281.80** | G |
| Macerich | Green Acres Mall | 1924 | $10,000.00 | *$0.00* | **$557,996.45** | H |
| Macerich | Paradise Valley Mall | 1768 | $46,750.69 | *$0.00* | **$237,453.90** | J |
| Macerich | Stonewood Center | 1309 | $14,583.00 | *$0.00* | **@** | N/A |
| Macerich | Stonewood Center (Auto) | 2728 | $8,318.75 | *unchanged* | **@** | N/A |
| Macerich | The Mall of Victor Valley | 2829 | $37,596.00 | *$0.00* | **$86,489.33** | K |
| Passco | Hanford Mall | 2656 | N/A | *$0.00* | **$39,656.18** | L |

---

[5] The Landlords' Cure does not include May 2019 rent and charges, or any other charges that are billed or come due after the filing of this Objection or charges that are billed directly to the Debtors, including in some cases, real estate taxes. To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend the Objection to include such amounts. The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserve the right to payment (and amend this Objection if necessary) for any amounts that come due under the Leases through the date of any cure payment.

[6] Symbol "@" indicates Landlord consents to the cure amount proposed by the Debtors.

[7] Symbol "ü" indicates amount is unchanged from the Initial Cure Objection.

[8] The Designation Cure Notice includes the Auto Center Lease for Lancaster Mall (Store No. 2715), but it does not include the Lease for the retail premises (Store No. 2119). The Landlord for Lancaster Mall included cure amounts for the retail premises in the Initial Cure Objection, and the Landlord hereby reserves the right to include all cure amounts for Store No. 2119 to the extent the Debtors seek to assume and assign that Lease in the future.

| Vintage | The Mall at Whitney Field | 1133 | $16,383.00 | *$0.00* | **$97,100.79** | **M** |
| White Plains | Galleria at White Plains | 1674 | $8,333.00 | ***unchanged*** | **@ ü** | **N/A** |

6.      In addition to the current outstanding rent and other monthly charges due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors or assignee, either as cure or when properly billed under the Leases.

*i.      Year-end adjustments and reconciliations*

7.      In addition to rent and related monthly charges, attorneys' fees, costs, and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month.  The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective Center.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. - year-end reconciliations and adjustments that accrued through 2018 may not yet have been billed at most locations, and such charges that are accruing for 2019 will not be billed until 2020).  In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.  Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time.

8.      Nevertheless, the lessees under the Leases remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases.  The Debtors (or successor) assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under each Lease.  Any final sale order should clearly state that the Debtors (or successor) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment.  In addition, any provision in a sale order that purports to release the Debtors (or successor) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

9.      In addition, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents, as well as environmental obligations that may have accrued or are accruing under the Leases.  Any assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.   In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption and assignment of the Leases.  Nothing in any sale order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

ii.      *Attorneys' fees, costs, and interest*

10.      The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests.  The

Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. <u>In re LCO Enterprises</u>, 12 F.3d 938, 941 (9th Cir. 1993); <u>Elkton Associates v. Shelco Inc. (Matter of Shelco)</u>, 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured all pre-petition defaults).

11.    The Debtors (or successor) take the Leases *cum onere* – subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of their Leases. <u>In re Washington Capital Aviation & Leasing</u>, 156 B.R. 167,172 (Banks. E.D. Va. 1993). If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under their Leases with the Debtors. *See* <u>Matter of Superior Toy and Mfg. Co., Inc.</u>, 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." <u>In re Entertainment, Inc.</u>, 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases. *See* <u>In re Skylark Travel, Inc.</u>, 120 B.R. 352055 (Bankr. S.D.N.Y. 1990). Interest calculations are, therefore, not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume the Leases. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. <u>Cukierman v. Uecker (In re Cukierman)</u>, 265 F.3d 846, 853 (9th Cir. 2001).

12.     Landlords have incurred significant attorneys' fees in connection with protecting their interests in these cases, which fees are not less than $10,000.00 per Lease. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases. Entertainment, Inc., 223 B.R. at 152 (citation omitted).   There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. 154.  The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., see also, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has also upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

**B.     The Cure Amounts Serve Only As Estimates.**

13.     Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations.  There

8

is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

**C.    The Debtors or Assignee Must Pay Undisputed Cure Amounts Immediately.**

14.    Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption.  To the extent there is a dispute over the total cure obligation for any Lease, all undisputed cure amounts should be paid immediately.  Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Leases to deal with any disputes that remain unresolved after such period.

**III.    JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS**

15.    To the extent consistent with the objections expressed herein, Landlords also join in the objections of other shopping center lessors to the Debtors' proposed relief.

**IV.    CONCLUSION**

The Landlords request that the Court (i) allow the cure amounts (subject to adjustment by the Landlords) in the amounts set forth herein, (ii) order payment of all undisputed cure amounts, with an escrow established that is sufficient to pay any remaining disputed cure amounts, when resolved by the parties or this Court, and (iii) grant such further relief as the Court deems proper.

Dated:  April 30, 2019                        Respectfully submitted,
New York, New York

                                      */s/ Dustin P. Branch*
                                      Dustin P. Branch, Esquire
                                      (Admitted *pro hac vice*)
                                      **Ballard Spahr LLP**
                                      2029 Century Park East, Suite 800
                                      Los Angeles, CA 90067-2909
                                      Direct: (424) 204-4354
                                      Fax: (424) 204-4350
                                      E-mail: branchd@ballardspahr.com

                                      - and -

David L. Pollack, Esquire
(Admitted *pro hac vice*)
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864-8325
E-mail: Pollack@ballardspahr.com

- and -

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4465
E-mail: heilmanl@ballardspahr.com

*Attorneys for Attorneys for Acadia Realty
Limited Partnership, Brixmor Operating
Partnership, L.P., C.E. John Company, Inc.,
Cedar – Valley Plaza, LLC, Federal Realty
Investment Trust, Hart I-55 Industrial LLC,
Passco Companies, LLC, The Macerich
Company, Vintage Real Estate, LLC, and
White Plains Galleria Limited Partnership*

**SCHEDULE A**

| | | |
|---|---|---|
| *Federal Realty Investment Trust* | | |
| Store No. 3486 | Assembly Row | Sommerville, MA |
| Store No. 1048 | Hastings Ranch Plaza | Pasadena, CA |
| *Acadia Realty Limited Partnership* | | |
| Store No. 3266 | Mark Plaza | Kingston, PA |
| *C.E. John Company, Inc.* | | |
| Store No. 2119 | Lancaster Mall | Salem (Lancaster), OR |
| Store No. 2715 | Lancaster Mall | Salem (Lancaster), OR |
| *Cedar – Valley Plaza, LLC* | | |
| Store No. 3172 | Valley Plaza Shopping Center | Hagerstown, MD |
| *Brixmor Operating Partnership, L.P.* | | |
| Store No. 4478 | Hamilton Plaza | Hamilton, NJ |
| Store No. 2485 | Coastal Way | Brooksville, FL |
| *Passco Companies, LLC* | | |
| Store No. ---- | Hanford Mall | Hanford, CA |
| *The Macerich Company* | | |
| Store No. 1924 | Green Acres Mall | Valley Stream, NY |
| Store No. 1768 | Paradise Valley Mall | Phoenix, AZ |
| Store No. 1309 | Stonewood Center | Downey, CA |
| Store No. 2728 | Stonewood Center | Downey, CA |
| Store No. 2829 | The Mall of Victor Valley | Victorville, CA |
| *Vintage Real Estate, LLC* | | |
| Store No. 1133 | The Mall at Whitney Field | Leominster, MA |
| *White Plains Galleria Limited Partnership* | | |
| Store No. 1674 | The Galleria at White Plains | White Plains, NY |
| *Hart I-55 Industrial, LLC* | | |
| Store No. 8934 | Romeoville I (non-retail) | Romeoville, IL |
| Store No. 8871 | Romeoville II (non-retail) | Romeoville, IL |