# EXHIBIT A

CALDOR

INDENTURE OF LEASE dated as of April 13,

1973 between Yorktown Green Shopping Center Inc., Agent and
nominee, having

an office at 35 Essex Street in Hackensack, New Jersey  07601

(hereinafter referred to as "Landlord") and CALDOR, INC., N.Y.,
formerly named Caldor of Peekskill, Inc.,
a New York corporation with an office at 20 Glover Avenue,

Norwalk, Connecticut (hereinafter referred to as "Tenant")

## ARTICLE I.    PREMISES - INITIAL TERM

Section 1.01.  Landlord warrants and represents that it has
a valid, enforceable contract to purchase the land and covenants
that it shall purchase the land required for the shopping center
provided, however, that the various contingencies as set forth in
its purchase contract are satisfied, which property (herein referred
to as the 'Shopping Center') located in the Town of Yorktown,
County of Westchester, and State of New York, situated on the
easterly side of Route 118 more particularly bounded and described
and set forth in Exhibit A to this Lease.

Section 1.02

(a)  Landlord hereby leases, demises and lets unto
Tenant, and Tenant hereby hires from Landlord, a one-story
building and the lands thereunder.    The building is to be
erected by Landlord on such portions of the Shopping Center
designated as "Demised Premises" on Exhibit B to this lease.
(Said building and land upon which it is situated are
hereinafter referred to as the "Demised Premises.")

(b)  Landlord hereby grants an easement to Tenant for the
term of this lease

(i)  to use and permit its personnel, business
invitees and customers to use the area designated as "Park-
ing Area" on Exhibit B in common with Landlord and all
others lawfully entitled to and claiming, by, through or
under Landlord, for the free parking, passage and maneuvering
of motor vehicles;

(ii)  to use a reasonable portion of the Shopping
Center lying behind the loading docks of the Demised Premises
for loading and unloading trucks;

(iii)  for full right of ingress and egress to said
Parking Area over all exis    d entrances to and from the
public streets abutting             ing center, as indicated on
Exhibit "B" or as the sa           may be located in accord-

(c)   The initial term of this lease shall be for a period of twenty seven (27) years, commencing with the Commencement Date as defined in Article II, Section 2.06.

ARTICLE II.    CONSTRUCTION OF BUILDING ON DEMISED
PREMISES - TERM COMMENCEMENT DATE

Section 2.01.

(a) Landlord warrants and represents that the property
described in Exhibit "A" is presently zoned so as to permit
the use thereof as a retail and/or promotional department
store.

(b) Upon approval by both parties of final plans and
specifications, Landlord shall make prompt application to
all governmental agencies having jurisdiction thereof for
all permits, consents and other approvals required for the
construction of the building and improvements described in
this Section.  Promptly upon obtaining the same, Landlord
will with reasonable diligence, continuity and dispatch,
at its sole cost and expense, construct on the Demised Prem-
ises a one-story store building with a total gross area of
approximately ninety thousand (90,000) square feet, outside
dimensions and complete the improvement of the Parking Area,
including all entrances, exits and rights of way appurtenant
thereto, so as to make the same suitable for the use and
parking of motor vehicles, all in accordance with final
plans and specifications to be mutually approved by Landlord
and Tenant.   The building shall be located in the area
designated as "Demised Premises" on Exhibit B.   The final
plans and specifications shall be based upon the outline
specifications contained in Exhibit C, hereto annexed and
made a part hereof.   Said construction shall be completed
in good and workmanlike manner and in compliance with all
applicable laws and the requirements of all authorities
having jurisdiction thereof.

(c) Landlord warrants that on the Commencement Date,
as herein defined, the building shall be lawfully suited for
use as a retail and/or promotional department store.

Section 2.02. Landlord shall, with reasonable prompt-
ness, cause to be prepared and furnished to Tenant, for
approval by the Tenant, which approval, Tenant agrees, shall
not be unreasonably withheld, complete final working plans
and specifications for the improvements required hereunder
to be constructed by the Landlord, which shall be substan-
tially in accordance with and directly inferable from the
specifications (Exhibit "C") approved by the parties.  Tenant
agrees to give Landlord notice in writing, within thirty (30)
days after Tenant's receipt of such final plans and specifi-
cations, of its approval thereof, or its disapproval thereof
(stating with reasonable precision and particularly the exact
reason for any such disapproval) based upon any reasonable
objections thereto arising from non-compliance with the fore-
going requirements.  Failure by Tenant to give notice of

approval or disapproval within said thirty (30) day period
shall be deemed to constitute approval. In the event of
such disapproval, Landlord shall revise said final plans and
specifications to the extent necessary to satisfy valid objections,
and shall within a reasonable length of time, submit the same,
as revised, to Tenant; and, provided that such revised final plans
and specifications comply with Tenant's valid objections to the
original plans and specifications no further approval by Tenant
shall be required. During construction, Tenant shall have the
right, by written notice to Landlord, to make changes in the
plans and specifications provided the same do not delay the comple-
tion of construction nor increase the total cost thereof to
Landlord. If Landlord notifies Tenant that any such required change
will delay the completion or increase said total cost, Landlord
shall not be obligated therefor unless Tenant, by appropriate
written notice, within five (5) days, waives such delay and
covenants to promptly pay Landlord the amount of such increase
in cost attributable to such change.

Section 2.03. During the course of Landlord's con-
struction, Tenant and its designated representatives shall
have the right to inspect the same and Landlord will, upon
request, make available copies of all plans and specifica-
tions relating thereto. No material change in the final
plans and specifications referred to herein shall be binding
unless approved in writing by Landlord and Tenant. When the
construction shall have reached such stage of completion as
to lawfully permit the installation therein of Tenant's trade
fixtures, Landlord shall make the Demised Premises available
to Tenant for such purpose. Tenant may enter the Demised
Premises for said purpose and store merchandise therein in
preparation for its opening. Such conduct by Tenant shall
be at Tenant's risk and shall not be deemed delivery of pos-
session to Tenant hereunder. Tenant's installations will be
performed by labor which will not conflict with any union
labor then engaged in the construction. If Landlord certifies
that any such activity by Tenant will interfere with or delay
Landlord's construction, Tenant shall discontinue the same
until the work required to be done by Landlord has been com-
pleted. Tenant shall remove all rubbish and debris caused by
its installation hereunder.

Section 2.04.

(a) Delivery of possession shall be deemed to have
occurred when each of the following events shall have happen-
ed.

(i) Landlord's construction of the Demised Prem-
ises shall have been substantially completed.

(ii)   All equipment and facilities required to be furnished by Landlord and serving the same shall have been in good working order.

(iii)   All utilities and sewer facilities shall have been connected to the Demised Premises and are operable.

(iv)   The Parking Area and all appurtenances thereto shall have been completed in accordance with the provisions hereof to the extent necessary to permit trucks to bring fixtures, equipment and merchandise to the Demised Premises and to permit parking for Tenant's employees.

(v)   Five days shall have expired following Tenant's receipt of written notice of such completion from Landlord.

(vi)   Five days shall have expired after Tenant's receipt of a certificate of Landlord's architect that Landlord's construction hereunder has been completed substantially in accordance with the final plans and specifications therefor and in compliance with the requirements of all authorities having jurisdiction.

(vii)   Landlord shall have tendered actual possession of the Demised Premises to Tenant.

(b)   Landlord's construction shall not be deemed incomplete if minor details of construction customarily left incomplete until after Tenant's occupancy, or minor mechanical adjustments, remain to be performed, provided the same, for reasons other than Tenant's incomplete work, do not prevent, delay or interfere with Tenant's opening for business at the Demised Premises, and provided the same are thereafter diligently completed by Landlord.

Section 2.05.   Within thirty (30) days after the Commencement Date, Tenant shall submit to Landlord a written list of items which Landlord is obligated to complete or correct pursuant to the final plans and specifications. Landlord shall have an additional period of thirty (30) days from said notice to commence and diligently prosecute the completion of such work. Such thirty (30) day period shall be extended if Landlord is unable to complete such work because of some act or work of Tenant. If Landlord fails to complete such work within such thirty (30) day period, as it may be extended as aforesaid, Tenant shall have the right to complete such work at Landlord's cost and expense, and Landlord shall reimburse Tenant on demand for the reasonable cost thereof. If Landlord fails to reimburse Tenant, as aforesaid, Tenant may withhold from rents thereafter due Landlord an amount equal to the reasonable cost thereof.

Section 2.06   Anything herein to the contrary notwithstanding:

(a)   The Commencement Date shall be the earlier to occur of (i) the date Tenant begins to do business with the public from the Demised Premises, or (ii) the first day occurring between April 16 and November 14 of any year after the occurrence of each prerequisite event of subsection (b).

(b)   The following are the prerequisite events referred to in subsection (a):

(i)   Sixty (60) days shall have expired after the occurrence of Delivery of Possession.  However, if the portion of Landlord's work not completed before Delivery of Possession is of such nature as to prevent Tenant from opening for the conduct of business at the Demised Premises within sixty (60) days after Delivery of Possession, such sixty-day period shall be extended by the appropriate period of time necessary to permit Tenant to complete the installation of its fixtures and equipment.

(ii)   Any requisite Certificate of Occupancy, or its equivalent, permitting Tenant's use of the Demised Premises and the Common Area for the purposes described in this lease shall have been issued by the appropriate governmental authorities.

(iii)  Three (3) months shall have expired after Landlord shall have given Tenant notice of date that possession is expected to be tendered to Tenant.

(iv)   The Demised Premises shall be free of all violations, orders or notices of violation relating to the construction of Landlord's work or use of the Demised Premises as a result thereof.

(v)   Tenant, provided it has obtained all requisite licenses, if any, shall be permitted, by all authorities having jurisdiction thereof, to occupy and use the Demised Premises for a retail and/or promotional department store.

(vi)   A supermarket of not less than 25,000 square feet is open for or ready to open for business.

6

Section 2.07

(a)    Neither Tenant's acceptance of possession of
the Demised Premises nor its payment of rent hereunder shall
be deemed to constitute a waiver by Tenant of any claims
against Landlord for defects in workmanship or materials with
respect to the construction of the Demised Premises or Land-
lord's failure to complete the same in accordance with the
final plans and specifications herein described.

(b)    If construction has not been commenced by
Landlord within one hundred twenty (120) days from the date
of approval of plans and specifications, or if same has not
been substantially completed by  October 1, 1974.
(which said  Oct. 1, 1974  date is hereinafter called
the "Cut-Off Date"), Tenant shall have the right as its sole
and exclusive remedy, exercisable only within twenty (20)
days thereafter, to cancel this lease by giving notice in
writing to Landlord.    Said 120-day period shall be deemed
automatically extended and said Cut-Off Date shall be deemed
automatically postponed by the number of days of delay in
construction, if any, occasioned by war, strikes acts of God,
or other contingencies not within the power of Landlord to
remedy.    However, the Cut-Off Date may not be postponed to a
date which occurs  after  May 1, 1975.

7

12/22/72
1/2/73
4/9/73

## ARTICLE III.    RENTALS - PARTIAL RENT ALLOWANCE

**Section 3.01**    Landlord and Tenant shall upon ascertainment execute a short form or other memorandum of lease, in recordable form, setting forth a description of the Demised Premises, the Commencement Date and Expiration Dates hereof, rights of extension, and containing such other terms and information, excepting the rent reserved hereunder, as either party may reasonably request.

**Section 3.02**

(a)  From and after the Commencement Date Tenant shall pay Basic Rent to Landlord at the rate provided for in part (i), (ii), (iii) or (iv):

(i)  If Tenant opens between November 15 and April 15, the Basic rental, until the following April 15th, shall be at the rate of $1.12 per square foot per annum, at a monthly rate of $8400.00; provided, however, the term of this Lease shall be extended by the period of reduced rent under this section;

(ii) If Tenant opens for business prior to the opening of the Supermarket, and the rental provisions of the preceding subsection does not apply, the Basic rental shall be at the rate of $1.80 per square foot per annum, at a monthly rate of $13,500.00 until such time as the supermarket shall open for business;

(iii)During the first five (5) years of the "Initial Term" provided that the rental provisions of the preceding subsections do not apply, the Basic rental shall be at the rate of $2.25 per square foot per annum, at a monthly rate of $16,875.00.

(iv) After the fifth anniversary of the Commencement Date of this Lease, the Basic rental shall be at the rate of $2.35 per square foot per annum, at a monthly rate of $17,625.00.

8

(b) Basic Rent shall be paid by Tenant in equal monthly installments on the first day of each and every month in advance during the term hereof. Rent shall be paid at the office of Landlord hereinabove described, or at such other place as Landlord may designate from time to time. Rent shall be paid without previous demand therefor. If the Commencement Date does not coincide with the first day of a calendar month, Basic Rent allocable to the period beginning with said date and ending the last day of said month shall be prorated and paid with the monthly installment next due on the first day of the following month. Basic Rent shall not be deemed in default if paid by Tenant on or before the tenth day of any month during the term hereof. If the annual rate for the payment of Basic Rent changes during a month, then Basic Rent for such month shall be adjusted so as to reflect the applicable annual rates in effect before and after such change.

## Section 3.03

(a)(i) (w) From and after the Commencement Date, Tenant shall be obligated, and hereby covenants, to pay Additional Rent. "Additional Rent" means Impositions (as hereinafter defined) relating to the Demised Premises, and water and sewer taxes or charges fairly allocable to the Demised Premises.

(x) As used in this lease "Impositions" means all real estate taxes, assessments and governmental charges, general and special and all other like impositions, ordinary and extraordinary, levied or assessed on the Demised Premises or the Shopping Center, as the case may be, or the use, occupancy or other possession thereof, as well as any rent tax or other levy made against the Landlord as an alternative in whole or part for ad valorem real estate taxes. The term "Impositions" excludes any interest or penalties for late payment unless Tenant fails to pay the applicable Additional Rent payment when due. If an assessment is payable in installments, regardless whether Landlord elects to pay the same in installments, Impositions shall be computed as if Landlord had elected to pay the same in installments; and Tenant shall not have any liability with respect to installments which fall due after the Expiration Date. The term "Impositions" shall include any interest payable with respect to an installment assessment, whether or not Landlord elects to pay the same in installments.

(y) The Impositions relating to the Demised Premises shall be the sum of (1) Impositions allocable to the Demised Premises except for the land thereunder, (2) Tenant's Pro Rata Share of Impositions allocable to the land described on Exhibit A, and (3) Tenant's Pro Rata Share of Impositions allocable to the improvements to or which are part of the Common Area.

(z) If an assessment is imposed against the Demised Premises or Shopping Center to finance the installation of off-site improvements or utility lines in connection with the initial construction of the Shopping Center or Demised Premises, such assessment shall not be included in "Impositions" and shall be borne entirely by Landlord even if the assessment is imposed after the Commencement Date.

9

(ii)    At Tenant's request, Landlord shall use its best efforts to obtain from the taxing authorities a separate assessment or a letter, separately allocating the amount of the aggregate then current assessment attributable to the Demised Premises, except for the land thereunder, to the land described on Exhibit A, and to the improvements on or which constitute a part of the Common Area.   In such event Impositions allocable to the Demised Premises, except for the land thereunder, to the land described on Exhibit A, and to the improvements on or which are a part of the Common Area, shall be determined by multiplying the rate of the applicable Impositions by the valuation set forth pursuant to such separate assessment or such letter, as the case may be. 

(iii)   If Landlord is unable to obtain separate bills or such letter, then Impositions relating to the Demised Premises shall be Tenant's Pro Rata Share of all Impositions assessed, levied or imposed on the Shopping Center.

(iv)   Tenant's Pro Rata Share means the proportion that the ground floor area of the Demised Premises bears to the total ground floor area of all buildings then constructed in said Shopping Center and either open for business, or completed for at least six months.  Floor area shall be computed on the basis of exterior dimensions except where premises are separated by party walls.   In the case of a party wall the measurement shall be from the center line of the wall.

(b) (i)   Landlord shall promptly forward to Tenant any notification received by Landlord relating to any such Imposition or any increase in the assessed valuation of the Demised Premises affecting the same.

(ii) (x)   Subject to the requirements of any mortgage affecting the Demised Premises, Tenant shall have the right to contest or to demand that Landlord contest, by appropriate proceedings, at Tenant's sole cost and expense, the amount or validity, in whole or in part, of any Imposition or increase thereof assessed against the Demised Premises and to be paid by Tenant as Additional Rent hereunder and Landlord will cooperate with Tenant to that end.

(y)   Prior to commencing any such contest, Tenant shall give notice thereof to the Supermarket Lessee. If the Supermarket Lessee shall advise Tenant within ten (10) days after the giving of such notice that such Supermarket Lessee desires to participate in such contest, then thereafter Tenant shall cooperate with such Supermarket Lessee in the conduct of such contest, provided that such Supermarket Lessee shall thereafter cooperate with Tenant.   Such Supermarket Lessee shall not commence any such contest unless such Supermarket Lessee shall first give notice to Tenant thereof.   If Tenant shall advise such Supermarket Lessee within ten (10) days after the giving of such notice that Tenant desires to participate in such contest, then thereafter Tenant and such Supermarket Lessee shall be required to cooperate in the conduct of such contest.   Such cooperation shall include the use of their best efforts in good faith to agree upon counsel mutually satisfactory to both Tenant and such Supermarket Lessee for the conduct of such contest, the mutual exchange of information which will be useful with respect thereto, and the sharing of all expenses with respect thereto in proportion to their relative shares of real estate taxes and assessments.   Either Tenant or such Supermarket Lessee may withdraw from any such contest by giving the other notice of such withdrawal not less than ten (10) days prior thereto, and the aforesaid obligation to share costs thereafter incurred shall cease. Notwithstanding such withdrawal, the costs incurred thereafter shall be a first charge against any abatement, refund or rebate.

(iii)   Subject to the provisions of any mortgage affecting the Demised Premises, the institution or pendency of such proceedings shall not be deemed to postpone or defer Tenant's obligation to pay an Imposition due hereunder unless the collection of such Imposition shall be stayed by reason of such proceedings and, if required to avoid default thereunder, the consent of the holder of said mortgage is obtained.   If, as a result of such proceedings or otherwise, Landlord receives any monetary refund, rebate or credit based upon any Imposition previously paid, in respect to which Tenant has paid Landlord any Additional Rent under this Article, whether such refund, rebate or credit results from any proceeding instituted by Landlord and/or Tenant, the proceeds or benefit thereof, after deducting all expenses incurred in obtaining the same, shall, to the extent relating to the Demised Premises, be paid or credited, as the case may be, to Tenant in reimbursement of such Additional Rent previously paid by Tenant under this Article.

(c)  Tenant may take the benefit of the provisions of
any statute or ordinance permitting any such Impositions to be
paid in installments over a period of time.  If Tenant pays an
Imposition, including installments thereof which, as hereinabove
provided, might have been paid over a period of time extending
beyond the expiration of the term of this lease, then in any
such event Tenant shall be entitled to be reimbursed by Landlord
upon the expiration of the term of this lease for an amount equal
to all such installments so paid which could have been paid without
penalty on any date or dates subsequent to the expiration of the
term of this lease.    Any Additional Rent payable under this
Article in respect of the tax years in which this lease shall
commence and terminate shall be equitably apportioned to the
end that Tenant shall only be obligated hereunder to pay such
portion of the Impositions which correspond with the portion
of the tax years which fall within the term hereby demised.

(d)  Nothing herein contained shall require or be
construed to obligate Tenant to pay any franchise, corporation,
capital stock, capital levies, transfer, estate or inheritance,
income or excess profits tax imposed upon Landlord or upon its
successors or assigns or any of them;  provided, however, that
if at any time during the term hereof the methods of taxation
prevailing at the Commencement Date shall be altered so as to
cause the whole or any part of the taxes, assessments, levies,
impositions or charges now levied, assessed or imposed on real
estate and the improvements thereon, in lieu thereof, to be
levied, assessed or imposed, wholly or partially as a capital
levy, or otherwise, on the rents received therefrom, or if any
such tax, assessment, levy (including but not limited to any
municipal, county, state or federal levy), imposition or charge,
or any part thereof, shall be measured by or be based in whole
or in part upon the Demised Premises and/or upon any other taxable
interest the Impositions attributable to which Tenant is required
to pay hereunder and shall be imposed upon Landlord in lieu of
the methods of taxation prevailing at the Commencement Date, then
all such taxes, assessments, levies, impositions or charges, or
the part thereof to the extent that they are so measured or based,
shall be deemed to be included within the term "Impositions"
for the purposes hereof, to the extent that such Impositions
would be payable if the Shopping Center were the only property
of Landlord subject to such Impositions, and if the income from
the Shopping Center were the only taxable income of Landlord
during the year in question, and Tenant shall pay and discharge
the same as herein provided in respect of the payment of
Impositions.

(e)  Additional Rent shall be paid to Landlord, at
Landlord's address set forth on page 1, or to such other address
as Landlord designates by giving notice thereof to Tenant.
Additional Rent shall be paid to Landlord at least fifteen (15)
days before Landlord is required to pay the applicable Impositions,
water or sewer taxes or charges or other expenses designated in
clause (w) of part (i) of this subsection 3.03(a) to the persons
entitled thereto.    Promptly after request by Tenant, Landlord
shall forward to Tenant photocopies of receipted bills with
respect to the payment thereof previously due.

Section 3.04    Except as herein otherwise expressly provided, Landlord and Tenant acknowledge that this is a net lease and, accordingly, that Basic Rent is to be payable absolutely net to Landlord.   Except as herein otherwise expressly provided, Tenant shall not be entitled to any abatement of rent, reduction thereof, or reduction or offset therefrom, nor shall this lease and Tenant's obligations hereunder terminate by reason of damage to or destruction of the Demised Premises from any cause.   All fixed and additional rents payable by Tenant hereunder shall continue to be so payable in all events unless the obligation to pay the same has been terminated or modified as hereinafter expressly provided.

ARTICLE IV        EXPIRATION DATE, OPTIONS TO RENEW

Section 4.01

(a)  The twenty-seventh(27)anniversary of the day
before the Commencement Date is referred to in this lease as
the "Expiration Date."   However, if the term is extended,
cancelled or terminated, then the date to which the term is
extended, or the effective date of such cancellation or termination,
as the case may be, shall be deemed to be the Expiration Date.

(b)    Tenant shall have, and is hereby granted, six
(6) successive options to extend the term of this lease for
additional periods of five (5) years each.   Each such extension
period shall begin respectively upon the originally fixed
Expiration Date or, as the case may be, the date to which
the Expiration Date shall have been extended previously.
All of the options, terms, provisions, covenants and conditions
of this lease shall continue to apply during each such extended
term, except that Tenant shall not have any further option to
again extend the term following the exercise of its sixth (6th)
option to extend.

Section 4.02    Tenant's right to extend the term
shall, for the first extension, be upon written
notice to Landlord at least nine (9) months prior to the
originally fixed Expiration Date, and for all successive
extensions, upon at least six (6) months notice prior to the
then applicable Expiration Date.

Section 4.03    If Tenant shall exercise any of the foregoing
extension options, Landlord will, at the request of Tenant, and
Tenant will, at the request of Landlord, execute an agreement in
form for recording, evidencing such extension and renewal of this
lease.

ARTICLE V.    USE OF DEMISED PREMISES AND EXCLUSIVITY

Section 5.01   For a period of not less than two (2) years following the Commencement Date, Tenant shall use and occupy the Demised Premises for the sole purpose of carrying on business as a retail and/or promotional department store, for the sale of such merchandise and services as may then be sold and offered by similar retail and/or promotional department stores, from time to time during such period.   Thereafter, the Demised Premises may be used for any lawful purpose not inconsistent with the terms of this lease.   However, and subject to Tenant's right to use the Demised Premises for a retail and/or promotional department store, so long as any property in the Shopping Center is used for retail purposes, other than a department store, the Demised Premises shall be used for retail purposes not inconsistent with, or violative of, the terms of any lease to which Landlord is a party with respect to such other retail use.   If Landlord advises Tenant that Landlord has granted any such lessee exclusive rights, Tenant's use of the Demised Premises will comply therewith so long as Tenant's rights, including its exclusivity herein granted, are likewise respected.

Section 5.02   If Landlord constructs the supermarket referred to in Article VI, Tenant agrees that no part of the Demised Premises will be used as a supermarket, retail delicatessen or retail bakery; no part of the Demised Premises shall be used for the sale of fresh meats, fish, fruits, vegetables or produce; and no more than ten (10%) percent of the sales area of the Demised Premises will be used for the sale of foods or edibles for off-premises consumption.   Nothing in this lease shall be deemed to prohibit the operation of a restaurant, snack bar or luncheonette or other in-store eating facility in the Demised Premises or to prohibit incidental sales of food for off-premises consumption by such eating facility.

Section 5.03

(a)  During the first two-year period Tenant uses and occupies the Demised Premises, Tenant covenants that, except for closings for legal and religious holidays and temporary cessation of operations by reason of repairs, altera-tions, strikes, fire or other casualty, or other like conditions beyond Tenant's reasonable control, the Demised Premises shall be open for the conduct of business in accordance with the business hours and policies established for all similar stores operated under the "Caldor" name or if no such stores are in operation, then for such other department stores in the same area of substantially the same size and character.

/2/73
/1/73

(b)  If Tenant has not opened the Demised Premises for business as a Caldor Department Store on the Commencement Date, it shall do so within thirty (30) days thereafter.  If such opening is delayed because of strikes, fire, casualty, or other like conditions beyond Tenant's control, then such thirty-day period shall be extended by the period of such delay.

Section 5.04

(a)  Until the third anniversary of the Commencement Date, Tenant shall not use all or part of the Demised Premises or permit all or part of the Demised Premises to be used for any of the following uses:

(i)  the sale of liquor or beer;

(ii)  the installation or use of washing machines, drying machines, or dry cleaning machines;

(iii)  taking orders for laundering or cleaning services.

(b)  After such third anniversary, Tenant shall not use all or part of the Demised Premises or permit all or part of the Demised Premises to be used for any purpose specified in subsection (a) when all or part of another store in the Shopping Center is being used for such purpose.

Section 5.05

The following provisions contained in this Lease at the express request of the Tenant upon Tenant's representation that inclusion of the following provision was a condition precedent to entering into this Lease and Tenant agrees to indemnify and save Landlord harmless from any and all liability, costs and/or expenses (including counsel fees) incurred by Landlord as a result of enforcing this provision; provided, however, Landlord agrees to give Tenant notice prior to enforcing said provisions, upon receipt of said notice, Tenant may waive this provision and direct Landlord to abandon its enforcement proceedings.

16

### Section 5.05

(a)  Unless Tenant consents, Landlord shall not use or permit any portion of the Shopping Center except for the Demised Premises and the Supermarket Premises to be used for any of the following purposes:

    (i)   as a sporting goods store,

    (ii)  as a toy store,

    (iii) as a department store,

    (iv)  as a junior department store,

    (v)   as a hardware store if the floor area of such store exceeds five thousand (5,000) square feet,

    (vi)  as a housewares store if the floor area of such store exceeds five thousand (5,000) square feet,

    (vii) as an appliance store if the floor area of such store exceeds five thousand (5,000) square feet,

    (viii) as a catalogue store or a catalogue department comprising more than two thousand (2,000) square feet of floor area in any store, or

    (ix)  a health and beauty aid store.

(b)  As used in this lease the term "catalogue store" means a store at which merchandise is sold principally by reference to a catalogue and at which the merchandise so ordered is stocked and delivered to the customer principally at the time the order is placed.   The term "catalogue store" embraces a catalogue department within a store.

(c) (i)    Unless or until the Supermarket Lessee gives Landlord notice that it intends to discontinue use of the Supermarket Premises as a supermarket, Landlord shall not permit such Supermarket Lessee to partition the Supermarket Premises so as to create separate stores therein with separate entrances and segregated from the balance of the Supermarket Premises with partitions to be used as a catalogue store or to be used principally for any of the following uses:  sporting goods store, toy store, hardware store, houseware store, appliance store, health and beauty aid store, or tire--battery--auto accessory store.

(ii)   If such Supermarket Lessee shall notify Landlord that such Supermarket Lessee intends to discontinue use of the Supermarket Premises as a supermarket, Landlord shall notify Tenant thereof.   In such event Tenant shall have the option to require Landlord to lease the Supermarket Premises to Tenant under the same terms and conditions as set forth in the lease between Landlord and such Supermarket Lessee.   Such option may be exercised only within the fifteen (15) days next following the day Tenant is notified of such Supermarket Lessee's intention. Such option may be exercised only by giving notice thereof to Landlord accompanied by an undertaking by Caldor, Inc., a Delaware Corporation, to guarantee such new lease under the same terms and conditions as the guarantee of this lease.   If tenant exercises such option, such new lease and its guaranty shall be executed as expeditiously as possible.   The "Expiration Date" under such new lease shall be the originally fixed Expiration Date of the aforesaid lease with such Supermarket Lessee.   The Commencement Date of such new lease shall be the forty-first (41st) day next following the date such Supermarket Lessee shall have notified Landlord that it desired to discontinue the operation of such Supermarket Premises as a supermarket.

(iii)   If Tenant does not exercise such option to lease the Supermarket Premises, then from and after the forty-first (41st) day after such Supermarket Lessee shall have so notified Landlord of its desire to discontinue use as a supermarket, such Supermarket Premises may be used for any lawful purpose which is not a use then being made of another store then situated in the Shopping Center or a catalogue store.

(d)   Notwithstanding anything herein to the contrary, sales of the following items by catalogue shall not be prohibited: food and other edibles; pet food; paper products (including aluminum foil, garbage bags, and plastic wrap); detergents and other household cleansers and cleaning supplies; and household chemicals.

ARTICLE VI    ADDITIONAL DEVELOPMENT OF
SHOPPING CENTER

Section 6.01    Additional development and construction
at the Shopping Center may be performed only in portions thereof
designated as "Building Area" or "Expansion Area" on Exhibit B.
Unless Tenant consents to another use, any buildings constructed
on a portion of the Shopping Center designated as bank or restaurant
may be only used as a bank or restaurant.
As used in this lease the term "bank" embraces the terms
"savings and loan association," "trust company" and other similar
institutions.    As used in this lease the term "restaurant"
embraces any premises used primarily for the sale or purveyance
of food primarily intended to be consumed at the Shopping Center
or in vehicles.    Landlord covenants that from and after the
Commencement Date hereof, all such construction shall be performed
with a minimum of inconvenience to Tenant's continued use of the
Demised Premises and the Parking Area.    The construction of such
additional buildings will be such as to present the Shopping
Center as an integrated architectural unit as nearly as may be
practicable.    No building shall obstruct the Demised Premises
or its accessibility and visibility from the public streets
abutting or highways adjacent to the Shopping Center or adversely
affect the parking facilities within the Parking Area.
Notwithstanding the foregoing, Tenant consents to the construction
of other improvements of such size and location and extent as
shown on Exhibit B hereto.

Section 6.02    Landlord covenants and represents that after
consultation with Tenant, it will use its best efforts with due
diligence to obtain a supermarket lessee in the Shopping Center.
Upon obtaining such lessee, it will with due diligence and dispatch
construct as part of the Shopping Center and at the location shown
therefor on Exhibit B hereto, a one-story retail store building,
of not less than twenty-five thousand square feet and not more
than forty-five thousand square feet of floor space to be used
and occupied initially as a supermarket and that the same will
be leased to the Supermarket Lessee for an initial term of not
less than twenty (20) years.

Section 6.03   (a)   Any supermarket lease with respect to any portion of the Shopping Center shall contain the following provisions:

"Until, at least, the third anniversary of the Commencement Date, at least eighty (80%) percent of the sales area of the Demised Premises shall be used for the sale and display of the following basic supermarket commodities: food and other edibles; pet food; paper products including aluminum foil, garbage bags and plastic wrap; and detergents, other cleansers, cleaning supplies and household chemicals."

(b)   Any such supermarket lease will also contain provisions pursuant to which the tenant named in such lease will agree not to use its premises for any uses prohibited pursuant to part (i) of subsection 5.05 (c) unless or until the Supermarket Lessee gives notice that it intends to discontinue use of the Supermarket Premises as a supermarket.

## ARTICLE VII

### COMMON AREA - PARKING FACILITIES AND
### MAINTENANCE THEREOF

Section 7.01    As used in this lease, the term "Common
Area" refers to the entire Shopping Center except for those
portions designated "Building Area" or "Expansion Area" on
Exhibit B.    Landlord or, at Tenant's option on ten (10) days'
notice to Landlord, Tenant, in Landlord's behalf, shall cause
said Common Area, including the Parking Area, to be maintained
in good repair and properly graded.    The Parking Area shall
be illuminated and striped, for use in accordance with the
provisions hereof by Tenant, in common with all other tenants
of the Shopping Center and their respective customers, business
invitees and personnel, for the free parking of motor vehicles.
The party so maintaining the Common Area shall have the right
to establish, modify and enforce reasonable rules and regulations,
not inconsistent herewith in connection with the use of such Common
Area.    Such party reserves the right to restrict admission to
the same in order to cause necessary maintenance and repairs to
be made therein or thereto.    To the extent possible, such
maintenance and repairs will be so scheduled and effected as to
cause a minimum of interference with such continued use of the
Common Area, but any condition that may temporarily restrict
or interfere with such continued use shall not be deemed a
default hereunder, nor justify failure to make all payments
required under this lease.    It is agreed that a taking for
condemnation of less than twenty (20%) percent of said Common
Area shall not be considered to be a default in Landlord's
obligation to provide a Common Area.

Section 7.02    From and after the Commencement Date
Tenant agrees hereby to pay its Pro Rata Share of the costs of
maintaining the Common Area.    The maintenance costs of
the Common Area shall be deemed to include without limitation
all amounts actually expended for snow and rubbish removal,
repairs, striping, lighting (which will be separately metered
for the Common Area), insurance (as in Section 7.03 hereof
described), security and supervision and other maintenance
expenses.    Unless Tenant undertakes to maintain the Common Area
in accordance with Section 7.01, Landlord shall pay for the
aforesaid services and furnish Tenant with periodic statements
thereof.    If Tenant shall undertake such obligation to maintain
the Common Area, Tenant shall furnish such statements.    In
either case, such statement shall set forth Tenant's Pro Rata
Share thereof.    Within fifteen (15) days from the receipt of
such statement, Tenant shall pay to Landlord the amount
due and owing from Tenant as above computed, or if Tenant
advanced the costs, Landlord shall reimburse Tenant in a

2/1/73

sum equal to said cost, less Tenant's Pro Rata Share.   Any
payment due from Tenant hereunder shall be deemed additional
rent and Tenant's failure to pay same when due shall be deemed
a default in the payment of rent hereunder.   Any payment due
Tenant may be deducted from rent if not paid when due.   For
the purpose of this Article, it is agreed that for the first
two years of the initial term hereof, no charge shall be
assessible hereunder against Tenant with respect to any repairs
(other than routine maintenance) to the Common Area, or
thereafter, if the costs of such repairs is chargeable and
collectible from any contractor or subcontractor under any
guarantee held by Landlord with respect to the construction
thereof.

Section 7.03      For the mutual benefit of Landlord and
Tenant, Landlord shall procure and maintain, throughout the
term of this lease, general public liability insurance against
claims arising out of or in connection with the use of the
Common Area.   Such insurance shall afford protection to the limits
of not less than One Million Dollars in respect of bodily
injury or death to any one person, Three Million Dollars in
respect of any one accident, and One Hundred Thousand Dollars
for property damage.   Said insurance shall be written by an
insurer authorized to do business in the State of New York
shall name Landlord and Tenant as insureds, and certificates
of memoranda thereof shall be delivered to Tenant.

Section 7.04      The use of the Common Area by all lessees
of the Shopping Center including Tenant shall comply with all
applicable laws and the rules and regulations of all governmental
authorities having jursidetion thereof.   No portion of the
Common Area shall be used for the sale or display of merchandise
or other promotional activities.   Tenant agrees to restrict
the utilization of the Common Area for the parking of motor
vehicles of its employees to the spaces so designated for that
purpose by Landlord.   Employee parking spaces so designated
may not be situated less than three hundred feet from the front
of the Demised Premises or the Supermarket Premises and may not
be situated directly behind the Demised Premises or the Supermarket
Premises.   Landlord shall make arrangements for the parking of
tenant-employee vehicles for all tenants of the Shopping Center
on a basis proportionate to the total square foot area leased to
each tenant.   Portions of the Common Area may be reserved for
use as a cart corral for the Supermarket Lessee and Tenant.

Section 7.05      Landlord shall have the right to close
the Common Area on days when the Demised Premises are not open
for business.

Section 7.06      Landlord represents that as of the Commence-
ment Date hereof the use and maintenance of the Common Are  for
the purpose herein described will be in accordance with the
regulations of all governmental authorities having jursidiction
thereof.

## ARTICLE II

### REPAIRS AND MAINTENANCE OF DEMISED PREMISES
#### - TRADE FIXTURES

Section 8.01     Except as otherwise expressly provided in Section 8.02 herein, throughout the term hereof Tenant will, at its cost and expense, maintain and repair the Demised Premises and all plumbing, heating, air-conditioning, mechanical, electrical and other equipment and facilities appurtenant thereto, whether installed by Landlord or Tenant, in good order and condition and Tenant will make all non-structural and structural, ordinary and extraordinary, foreseeable and unforeseeable, repairs required in order to keep the same in good order and safe condition.

Section 8.02

(a)  Anything herein to the contrary notwithstanding, until the fifth anniversary of the Commencement Date Landlord shall repair and maintain in good order and condition the structure of the Demised Premises, including but not limited to the exterior walls, interior foundations and the roof of the Demised Premises and at its expense pay for all structural repairs during said period, exterior and interior, to the Demised Premises, unless attributable to the negligence of Tenant, its servants or agents, provided written notice of the necessity therefor is given to Landlord.

(b)  Until the second anniversary of the Commencement Date Landlord shall repair all portions of the Demised Premises including the portions designated in subsection (a) which need be repaired as a result of defects in materials used in the construction of the Demised Premises or construction workmanship, or as a result of settlement of the building.

(c)  Landlord represents that all mechanical equipment appurtenant to the Demised Premises installed by or for Landlord, including plumbing, heating, air-conditioning, electrical, sprinkler, sewage disposal systems, and other facilities servicing the Demised Premises at the Commencement Date hereof, will be in good working condition.  Landlord will, at its expense, keep same in good repair and condition throughout the first two years of the term.

(d)  After the second anniversary of the Commencement Date, Landlord shall assign to Tenant all guaranties and warranties obtained in connection with construction of the portions of the Demised Premises Tenant is required to repair.

(e)  The term "repairs" as used in this lease shall include replacements and renewals when necessary and all such repairs shall be at least equal in quality and class to the original work.

(f)  Nothing herein shall require Landlord to pay for repairs to floor coverings (tile or linoleum) unless necessitated by defects occurring during a period and from a cause for which Landlord has agreed to repair as hereinabove set forth.

(g)  Tenant shall give Landlord prompt notice of any defects, and Landlord shall, except for negligence or wilful act on its part, have no responsibility to Tenant for damage to the latter's property prior to such notice.

Section 8.03       All repairs, improvements and alterations
to the Demised Premises (other than Tenant's trade fixtures,
equipment, signs and the like) shall become and remain the
property of Landlord.  Tenant shall remove its signs, trade
fixtures and other such equipment on the termination of this
lease, or if the term shall end prior to the date herein fixed
for such termination, then within sixty (60) days time thereafter.
Tenant shall repair any and all material damage to the Demised
Premises resulting from or caused by such removal.  If Tenant
fails to effect such removal within ninety (90) days from
Landlord's written demand therefor, the said signs, fixtures
and equipment shall be conclusively deemed to have been abandoned
by Tenant, and Landlord may, at Tenant's expense, remove the
same and repair any material damage to the Demised Premises
resulting therefrom.

Section 8.04       Tenant shall retain ownership and title
to all personal property furnished by it, including, without
limitation, counters, railing, partitions and other furnishings,
equipment, trade fixtures and other property from time to time
installed or stored by Tenant in or about the Demised Premises,
all or any of which Tenant reserves the right, at its election
to remove at any time during the term hereof.   Landlord shall
have no risk, liability or obligation with respect to Tenant's
trade fixtures or personal property installed or stored at the
Demised Premises after the Commencement Date unless attributable
to Landlord's wilful misconduct or failure to comply with its
repair obligations hereunder after due notice from Tenant of the
necessity therefor and the expiration of a period reasonably
required for such repairs.   In connection with Tenant's trade
fixtures and/or equipment, Landlord covenants and agrees to
execute, acknowledge and deliver such waivers or other instruments
reasonably required by Tenant to obtain financing therefor,
whether such financing is in the form of conditional sale
contract, chattel mortgage, lease or other like security
interest, and Landlord will use best efforts to require the
holder of any mortgage affecting the fee title to the property
of which the Demised Premises forms a part to agree to do
likewise or in lieu thereof deliver non-disturbance agreement
containing appropriate provision therefor.   No such instrument
may impose liability on Landlord or result in a lien against
any part or all of the Shopping Center.   Anything herein to
the contrary notwithstanding, the existence or continuance of
any such security interest in connection with such trade fixtures
and/or equipment shall not be deemed a default by Tenant hereunder.
Tenant will exercise its best efforts to require any such financing
institution or other lender to give notice to Landlord of any
default by Tenant under such financing and to extend to Landlord
the same grace periods and opportunity to cure such default as
are available to Tenant.

## ARTICLE IX

### CHANGES AND ALTERATIONS BY TENANT

Section 9.01   Tenant shall have the right, at any time and from time to time and at no expense to Landlord, to make such non-structural changes and alterations to the interior of the Demised Premises as Tenant shall deem necessary or desirable for its purposes, and to install or relocate fixtures therein. Tenant shall not make any structural changes to the Demised Premises which add floors; increase floor area; or adversely affect the safety, value, structural integrity or architectural unity of the Demised Premises.   Tenant may make other structural changes to the Demised Premises provided Tenant first obtains Landlord's prior written consent thereto and the consent of any mortgagee if required by the applicable mortgage.   Landlord agrees not to withhold such consent unreasonably.   Alterations or improvements in and to the store front or entrances to the Demised Premises shall be deemed non-structural for the purposes hereof.

Section 9.02   All work performed by Tenant hereunder shall comply with all rules, regulations and orders of authorities having jurisdiction thereof, and Landlord covenants and agrees, upon demand, to execute and deliver all consents, applications and other instruments required in connection therewith.   Tenant hereby indemnifies Landlord against any loss or liability in connection therewith.

Section 9.03   Tenant shall not suffer or permit any mechanics', laborers', or materialmen's statutory or similar lien to be filed against the Demised Premises or Shopping Center by reason of work, labor, services or materials supplied or claimed to have been supplied to Tenant or anyone holding the Demised Premises or any part thereof through or under Tenant. If any such lien shall at any time be filed, Tenant shall, within thirty (30) days after notice of the filing thereof, cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction, or otherwise. If Tenant shall fail to cause such a lien to be so discharged within the period aforesaid, then, in addition to any other right or remedy of Landlord, Landlord may, but shall not be obligated to, discharge the same at Tenant's cost and expense, either by paying the amount claimed to be due or by procuring the discharge of such lien by such deposit or by bonding proceedings.   In any such event Landlord shall be entitled, if Landlord so elects, to compel the prosecution of an action for the foreclosure of such lien by the lienor and to pay the amount of the judgment for and in favor of the lienor with interest, costs and allowances, or at Landlord's option to demand reimbursement therefor as additional rental hereunder.

26

## ARTICLE X

### TENANT'S COMPLIANCE WITH ORDERS, ORDINANCES, ETC.

Section 10.01    Tenant agrees that in its maintenance, operation, use and occupancy of the Demised Premises during the term of this lease, it will, without cost to Landlord, promptly comply, or will cause all persons claiming by, through or under Tenant, promptly to comply with all laws, ordinances and certificates of occupancy issued pursuant to any law or by any public officer and the rules, orders, regulations and requirements of all governmental authorities and appropriate departments, commissions, boards and officers thereof, and of a Board of Fire Underwriters or any other body hereafter constituted exercising similar functions, foreseen or unforeseen, ordinary as well as extraordinary.    The duty of compliance hereby imposed on Tenant shall be deemed to relate to any condition created by Tenant's use or occupancy of the Demised Premises or by subsequent change in law, ordinance or regulation after the Commencement Date hereof or by the breach of any of Tenant's obligations or covenants hereunder, but such duty shall not require Tenant to perform any obligation or to make any structural or other repairs to the Demised Premises expressly assumed by or imposed on Landlord (other than those required by reason of subsequent change in law, ordinance or regulation), by the terms of this lease, excepting if used other than as a department store in customary manner.    Tenant shall likewise observe and comply with the requirements of all standard policies of insurance at any time in force on the Demised Premises and the equipment thereof and shall do nothing to invalidate said policies, increase the hazards or the rates therefor,  Tenant's normal conduct of business at the Demised Premises excepted.

Section 10.02    Tenant shall have the right to contest, by appropriate legal proceedings, in the name of Tenant or Landlord, or both, but without cost or expense to Landlord, the validity of any law, ordinance, certificate, order, rule, regulation or requirement of the nature herein described.    If by the terms of any such law, ordinance, certificate, order, rule, regulation or requirement, compliance may be held in abeyance without the incurrence of any lien, charge or liability, civil or criminal of whatsoever nature for failure to so comply therewith, or in the creation of a default under any mortgage to which this lease is subordinated affecting the Demised Premises, Tenant may postpone compliance thereunder until the final determination of any such proceedings, provided that all such proceedings are presented in good faith and with due diligence and dispatch.

ARTICLE XI    INSURANCE

Section 11.01    From and after the Commencement Date, Tenant shall procure and maintain, at its sole cost and expense, insurance with respect to the Demised Premises, in the following types and in the following amounts:

(a)  Fire insurance with extended coverage endorsement #4, and vandalism and malicious mischief endorsements, in an amount not less than eighty (80%) percent of the insurable value or "full replacement cost" of the building on the Demised Premises (i.e., the cost of replacing the building, including all equipment appurtenant thereto and installed by and at Landlord's cost, exclusive of the cost of excavation, foundation and footings), as such value or cost may from time to time (but not more frequently than once in any 36 calendar months) be determined by appropriate appraisal; and sprinkler damage insurance. Such coverage shall be reasonably satisfactory to Landlord and the holder of any mortgage of the Demised Premises and/or the Shopping Center.

(b)  Public liability insurance against claims for bodily injury or death occurring upon, in or about the Demised Premises, to the extent of not less than $1,000,000.00 in respect of bodily injury to or death of any one person, to the extent of not less than $3,000,000.00 for bodily injury or death of any number of persons arising out of one accident, or disaster, and property damage with limits of not less than $50,000.00.

Section 11.02    During the course of construction of the Demised Premises, if Tenant shall enter the same to install its trade fixtures therein, or at any time in connection with changes or alterations being made by Tenant, Tenant shall maintain, at its sole cost and expense, workman's compensation insurance covering all persons employed in such connection and general liability insurance, for the mutual benefit of Tenant and Landlord especially covering the additional hazards due to the installation of such fixtures during the course of construction with limits not less than those specified in Section 11.01 above.

Section 11.03    In the event Tenant fails to maintain the insurance coverage described above, Landlord may procure the same and pay the premiums therefor and add the amount of such premiums so paid to the next month's rent accruing hereunder, and Landlord shall have the right to collect the same from Tenant as additional rent and Landlord shall have the same remedy for the nonpayment thereof as for the nonpayment of rent as herein provided.

Section 11.04    Each insurance policy to be maintained
by Tenant as above provided shall be issued by Lloyd's or any
insurance company licensed and qualified under the laws
of the State of New York and whose Policy Holder's Rating is
AAAAA and whose Financial Rating is A+ as rated by Alfred M.
Best Co., Morristown, New Jersey, at the time the policy is
issued.    Each policy shall name the Landlord and Tenant, and
if the holder of any mortgage so requests, the holder thereof,
with loss payable in standard form under applicable law, as
such respective interests may appear.    Certificates or
memoranda of all such insurance policies shall be furnished to
Landlord and the holder of any such mortgage.    To the extent
obtainable, each policy shall contain an agreement by the
insurer that such policy shall not be cancelled without ten (10)
days prior notice to Landlord and any such mortgagee.    At least
ten (10) days before the expiration of any policies required to
be maintained by Tenant hereunder, Tenant shall procure renewals
thereof and at Landlord's request Tenant shall furnish Landlord
with reasonably satisfactory evidence of the payment of the
premium therefor.    Tenant may, at its option, maintain the
insurance required by this Article in the form of blanket or
omnibus policies, the premiums for which may be payable in
installments, provided, however, that Tenant shall, upon request
furnish Landlord, not less than ten (10) days prior to the time
any such installment of premium shall become due, evidence
reasonably satisfactory to Landlord that such payment has been
made.

Section 11.05    Each of the parties hereby releases the
other from any and all liability or responsibility (to such
party or any one claiming through or under such party by way
of subrogation or otherwise) for any loss or damage caused by
any of the casualties covered by the insurance policies main-
tained by, or for the benefit of such party, even if such
casualty shall have been caused by the fault or negligence of
the other party or its agents.

Section 11.06    Landlord shall provide a sprinkler system
so as to receive sprinkler credit in the fire policy as
promulgated by Factory Mutual Association Rating Bureau
which will not require excess insurance rates.

Section 11.07    Policies of insurance similar to those
described in Section 11.01(a) of this Article shall be carried
by Landlord, or required by Landlord to be carried by others,
with respect to all storerooms consisting of more than 10,000
square feet demised to or occupied by others in the Shopping
Center, during the term of this Lease, and appropriate evidence
thereof shall be furnished to Tenant.

## ARTICLE XII

### DAMAGE OR DESTRUCTION: APPLICATION OF INSURANCE PROCEEDS.

**Section 12.01**    In the event of fire or other casualty resulting in damage or destruction to the Demised Premises, Tenant shall, at its cost and expense, and whether or not the insurance proceeds payable in respect thereof shall be sufficient for the purpose, promptly restore, repair, replace and rebuild the same to substantially the condition existing immediately prior to such damage or destruction, with property of similar nature and equal value.    Such restoration and repairs shall be commenced promptly and prosecuted with reasonable diligence and continuity, unavoidable delays beyond Tenant's control excepted, and completed in a good and workmanlike manner and in compliance with all applicable permits and laws.    The plans and specifications for such restoration and repairs shall be subject to Landlord's prior approval, not to be unreasonably withheld.    As used in this Section 12.01, the term "casualty" means a peril against which Tenant is required to carry insurance under Section 11.01.

**Section 12.02**    All insurance proceeds payable under policies maintained by Tenant pursuant to Article XI shall be used for the purpose of paying the costs of restoration and repairs, as aforesaid, and for no other purpose, and shall be deemed held in trust therefor.    Any excess of such proceeds, after completion of said restoration and repairs and payment thereof, shall belong to Tenant.    Landlord hereby designates Tenant as its agent for the purpose of adjusting and settling all claims under such insurance policies.    In the event the holder of any mortgage affecting the Demised Premises requires that such insurance proceeds be made payable to it as one of the loss payees named in such policy, then and in such event said proceeds shall be so paid to such mortgagee, upon condition, however (and such mortgage shall so expressly provide) that said mortgagee shall hold said proceeds in trust, as aforesaid, for the purpose of such restoration or repairs and disburse the same to or on Tenant's behalf as the work of restoration and repairs progresses.

**Section 12.03**    No destruction of or damage to the Demised Premises, whether by fire or other casualty, shall entitle Tenant to terminate any of its obligations under this lease, Tenant hereby waiving any such rights now or hereafter conferred upon it by statute or otherwise.    Pending the completion of restoration and repairs pursuant to this Article, Tenant's rental obligations hereunder shall continue without abatement, offset or deduction, and Tenant shall have no claim against Landlord by reason of having been deprived of full use of the Demised Premises by reason thereof.

30

Section 12.04     If any damage or destruction as hereinabove
described occurs at a time when the then current term hereof does
not have four (4) years or more to run, and the extent of such
damage or destruction shall be such as to render fifty (50%) per-
cent or more of the floor space of the Demised Premises unusable
by Tenant for its normal purposes, or the damage, measurable by
the estimated costs of restoration and repairs, amounts to
thirty-five (35%) percent or more of the full replacement cost
of the Demised Premises (as defined in Section 11.01 of Article
XI), this lease, except as hereinafter provided, may be
terminated and ended at the election of either Landlord or Tenant,
provided that notice in writing of such election shall be sent
by the party so electing to the other, within thirty (30) days
after such destruction or damage, as aforesaid.   Upon such
termination, this lease and the term thereof shall cease and
come to an end and all rentals shall be apportioned as of the
date of such destruction or damage.   If Landlord, having such
right, shall elect to terminate this lease under the provisions
of this Section, and Tenant shall then have the right to extend
the term of this lease, in accordance with Article IV, Tenant may
elect to exercise such renewal right within twenty (20) days after
receiving such notice of termination from Landlord, in which
event Landlord's notice of termination shall be void and of no
effect, and Tenant shall repair and restore the Demised Premises,
as aforesaid.   If such destruction or damage to the Demised
Premises is such that neither party shall have the right to
terminate this lease under the provisions of this Section, or in
the event that neither Landlord nor Tenant having such right shall
elect to terminate this lease as aforesaid, within the time
provided, Tenant shall repair and restore the Demised Premises
in accordance with the provisions of this Article.   If this
lease shall have been duly terminated in accordance with the
provisions of this Section, Tenant shall be obligated to assign
to Landlord its rights under any insurance policies with respect
to such destruction or casualty.


Section 12.05     The provisions of the foregoing Section
of this Article shall apply only to the proceeds of insurance
derived from policies maintained by Tenant pursuant to the
provisions of Article XI hereof.   If Tenant has provided all
policies required thereunder and has additional insurance for
its own protection, with respect to trade fixtures, inventory
and the like, the proceeds of such insurance shall be payable
solely to Tenant and Tenant shall at all times be in full
control of such proceeds and their disposition.

Section 12.    Anything herein to the contrary notwithstanding, in the event of damage or destruction to the Demised Premises by reason of an event against which Tenant is not required to carry insurance pursuant to Section 11.01, the following shall apply:

(a)    If the reasonable estimated cost of restoration and repair is One Hundred Thousand ($100,000) Dollars or less, such restoration and repair shall be done by and at the sole cost and expense of Tenant.

(b)    If the reasonable estimated cost of the restoration and repair shall exceed One Hundred Thousand ($100,000) Dollars and Tenant notifies Landlord within thirty (30) days after such damage or destruction shall occur that Tenant is willing to bear the entire cost of such restoration and repair, Tenant shall repair and restore such damage and destruction.    In such event Tenant shall bear the entire cost of such repair and restoration and Basic Rent shall abate proportionately to the extent that the injury or damage until the Demised Premises shall have been repaired and/or restored.

(c)    If the reasonable estimated cost of such restoration and repair shall exceed One Hundred Thousand ($100,000) Dollars, and Tenant shall not notify Landlord within thirty (30) days after such damage or destruction shall occur that Tenant is willing to bear the entire cost of such restoration and repair, Landlord shall have the option to cancel this lease effective as of the date of such damage or destruction by giving written notice thereof to Tenant within ninety (90) days after such damage or destruction shall occur.

(d)    If the reasonable estimated cost of such restoration and repair shall exceed One Hundred Thousand ($100,000) Dollars, and if Tenant shall not advise Landlord that Tenant is willing to bear the entire cost of such restoration and repair within thirty (30) days after such damage or destruction, and if Landlord does not cancel this lease within ninety (90) days after such damage or destruction shall occur, Tenant shall repair and restore such damage or destruction.    In such event Tenant shall bear the portion of the cost thereof which does not exceed One Hundred Thousand ($100,000) Dollars;  Landlord shall bear the portion thereof which exceeds One Hundred Thousand ($100,000) Dollars; and Basic Rent shall abate proportionately to the extent of the injury or damage until the Demised Premises shall have been repaired and/or restored.

Section 12.07    If any structures or improvements (other than the Demised Premises) located in the Shopping Center are substantially damaged or destroyed by fire or other casualty, and if such structures or improvements are not repaired or restored within a reasonable time after the occurrence of such fire or other casualty, then Landlord shall promptly thereafter remove any and all debris and cause the area once occupied by such structures or improvements to be paved so that such area may be used for parking.  Landlord shall not be prohibited from subsequently causing such area again to be improved with structures and other improvements so long as such structures and other improvements, and the uses to which they are devoted, are in compliance with the terms and provisions of this Lease.

## ARTICLE XIII          CONDEMNATION

Section 13.01    In the event the whole of the Demised Premises or Common Area shall be taken or condemned for public or quasi-public use under any power of condemnation, eminent domain, or deed in lieu thereof, or otherwise, the term of this lease shall cease and terminate from the date of such taking or vesting of title and all then current annual and additional rental, paid or accrued, shall be abated.    If such taking involves twenty (20%) percent or more of the building on the Demised Premises or fifteen (15%) percent or more of the Common Area, and/or deprives Tenant of access to and from Smith Street shown on Exhibit B hereto, other than temporary rerouting, Tenant may elect to regard such as a taking of the whole of the Demised Premises for the purpose hereof and terminate this lease by appropriate notice to the Landlord pursuant to the provisions hereof.

Section 13.02    If this lease is terminated by any taking, the award together with all consequential damages resulting from such taking shall be apportioned between Landlord and Tenant as follows:    After paying all expenses incurred in the collection thereof and the unpaid balance of any mortgage affecting the Demised Premises, the remainder shall first be applied to reimburse Landlord for its unrecovered costs of original acquisition and construction of the Demised Premises, and any remainder shall be divided between Landlord and Tenant, 75% and 25% respectively.    It is agreed that Tenant's portion of said award shall be decreased by one (1%) percent for each year of the term hereof expiring prior to such taking and , Landlord's portion increased accordingly.    If this lease is not so terminated, the entire award shall belong to Landlord and if any be not used for restoration as provided in Section 13.03 hereof, then Tenant shall be entitled to that portion of Landlord's award remaining, measured by the loss or damage resulting to the trade fixtures, improvements and installations made by Tenant, whether or not title thereto shall have passed to Landlord under the terms of this lease.    Except as set forth in the preceding part of this Section, Tenant waives any claim it may have for the value of its leasehold interest in the case of any taking of the Demised Premises or Shopping Center.

Section 13.03    If Tenant does not elect to terminate this lease as in Section 13.01 of this Article provided, or in the event of any lesser taking of the Demised Premises or Common Area, Landlord shall, at its own cost and expense, promptly and with reasonable diligence cause all damage resulting from the taking to be repaired and the Demised Premises to be restored to an architectural unit as nearly as may be practicable, similar to the one existing prior to the taking, with proportionate parking facilities in the Common Area.    Anything herein to the contrary notwithstanding, if any taking occurs within the last four (4) years of the initial term or any renewal term hereof, and if the estimated cost of such restoration and repairs exceeds fifty (50%) percent of the total cost of rebuilding the Demised Premises in its entirety, Landlord shall have the right by notice to Tenant, within thirty (30) days after notice of such taking, to terminate this lease as of the date therein specified and, subject to the

further provisions hereof, this lease and all rights of
renewal shall thereupon cease with such force and effect as
if such date were the date herein fixed for the expiration of
the then current term demised, all rental obligations to be
equitably apportioned as of such termination date.  If, however,
Landlord shall so elect to terminate this lease, Tenant may
nullify such termination by giving Landlord written notice of
Tenant's exercise of a renewal privilege it may have at that
time within thirty (30) days after receipt of such notice from
Landlord, and upon Tenant's exercise of such renewal privilege,
Landlord's notice of termination shall be rendered null and void
and this lease shall continue with full force and effect, with
Landlord being obligated to repair and restore the Demised
Premises in accordance with the provisions of this Article.

Section 13.04    If this lease has not been terminated
by reason of any taking under this Article, Tenant's rental
obligations hereunder shall not abate pending such repairs
and restoration, but shall be equitably reduced to the extent
Tenant has been deprived thereby of the totality of the Demised
Premises or Common Area.    If the parties fail to reach agreement
with respect to the amount of such reduction, the issue shall
be submitted to and resolved by arbitration pursuant to the
provisions hereof.

Section 13.05    In the event that an award or awards shall
be made during the term hereof for damages arising by reason of
a change of grade of any of the streets or of the roads upon
which the Demised Premises abut, Landlord shall be entitled to
all such awards, and for that purpose, Tenant hereby assigns
the same unto Landlord, but Landlord shall, at its own cost and
expense make any repairs, rebuilding or restoration necessitated
by reason of such change of grade.

Section 13.06    Landlord agrees to give Tenant prompt
notice of the institution of any proceedings to which the
provisions of this Article may be applicable.

Section 13.07    Any dispute between the parties with respect
to the effect or intent of any of the provisions of this Article
shall be submitted to arbitration pursuant to the provisions
hereof.

ARTICLE XIV

MORTGAGES AFFECTING DEMISED PREMISES - SUBORDINATION

Section 14.01    Tenant hereby agrees that this lease
and all Tenant's rights hereunder will, at Landlord's request,
be expressly subject and subordinate to the lien of any mortgage
affecting the fee title to the Demised Premises (including
temporary or construction building loan mortgages and advances
made thereunder) and to any renewals, extensions, consolidations,
or modifications thereof, provided such mortgage is granted by
a bank, insurance company or other institutional lender, and
provided further that such mortgagee agrees in writing, for
itself, its successors and assigns that so long as Tenant is
not in default beyond the applicable cure period no action or
proceeding by the mortgagee shall result in the cancellation
or termination of this lease or modification of Tenant's
rights hereunder or in the disturbance of Tenant's right of
possession hereunder and in the event of the sale of the Demised
Premises, as the result of any such foreclosure or action or
proceeding by the mortgagee under any right or power contained
in said mortgage or in the bond or notes secured thereby, this
lease, if in full force and effect immediately prior to such
sale, shall continue in full force and effect as a direct
lease between the purchaser at such sale and Tenant, any such
sale being subject to Tenant's rights hereunder.

Section 14.02    Tenant shall execute, acknowledge and
deliver such instruments as Landlord may reasonably request for
the express purpose of subordinating this lease to the lien of
any mortgage on the Demised Premises hereinabove described, and
Landlord shall furnish such instruments, confirmatory with the
provisions hereof, as Tenant may reasonably request.

Section 14.03    Landlord shall be entitled to require
Tenant to deliver to the holder of any mortgage to which this
lease is subordinated, the originals of or certificates of
memoranda with respect to the insurance coverage required to be
maintained by Tenant as herein provided, and such holder shall
be entitled to have affixed to such policies appropriate
mortgagee endorsement in form satisfactory to such holder.

Section 14.04    Landlord shall pay promptly when due all
payments required under the terms and conditions of any mortgage
to which this lease is subordinated.   If Landlord is in default
thereunder, or with respect to any lien or other obligation
which Landlord is required to pay, and such default shall, in
Tenant's judgment (which judgment shall be final and conclusive)
be deemed to jeopardize Tenant's peaceful possession, use or
occupancy of the Demised Premises, Tenant may, at its election,
but without any obligation so to do, after ten (10) days notice
to Landlord of Tenant's intention to cure the default, if such
default shall not have been cured by Landlord within said ten-
day period, cure such default and thereafter deduct the amount
of any payment required for such purpose together with interest
thereon at the rate of six (6%) percent from the date of such
payment, from the next maturing monthly installments of annual
rent hereunder.   Landlord agrees to provide Tenant with a
conformed copy of said mortgage, and Landlord shall exercise
its best efforts to require the holder of such mortgage to give
written notice to Tenant of any default by Landlord thereunder,
concurrently with the giving of such notice to Landlord under
the terms thereof.

## ARTICLE XV

### INDEMNIFICATION OF LANDLORD

#### Section 15.01

(a)    From and after the Commencement Date, Tenant agrees to indemnify and save Landlord harmless against and from any and all claims or costs, expenses and liabilities (including reasonable legal fees incurred in the defense thereof) arising from or connected with

(i) the conduct or management of Tenant's business and any work or thing whatsoever done (other than by Landlord) in, on or about the Demised Premises during the term of this lease;

(ii) the condition of the Demised Premises (other than such conditions which Landlord is required to remedy under the provisions hereof);

(iii) any breach or default on the part of Tenant in the performance of any covenant or agreement on the part of Tenant to be performed pursuant to the terms hereof; and

(iv) any act or negligence of Tenant (its agents, contractors, servants, employees, licensees, customers or subtenants) or any accident, injury or damage howsoever caused to any person, firm or corporation occurring during the term of this lease in, on or about the Demised Premises.

(b)    Landlord shall give Tenant prompt notice of any claim, action or proceeding, in connection with which Landlord may claim indemnification hereunder; and Tenant, upon receipt of such notice from Landlord, shall have the right to resist or defend such claim, action or proceeding and to employ counsel therefor reasonably satisfactory to Landlord.

#### Section 15.02    Tenant agrees to pay and to indemnify Landlord against all legal costs and charges, including reasonable counsel fees, lawfully and reasonably incurred in obtaining possession of the Demised Premises after default of Tenant, or after Tenant's default in surrendering possession upon the expiration or earlier termination of the term of this lease or in enforcing any covenant or agreement of Tenant herein contained.

## ARTICLE XVI    -    UTILITIES

Section 16.01    From and after the Commencement Date, Tenant shall pay for all utilities used in connection with the Demised Premises, including gas, if any, electricity, water and fuel.    If any rent or charge is assessed or imposed during the term hereof for water used or consumed in or on the Demised Premises or in connection with sanitary sewer, whether determined by meter or otherwise, or designated as a tax, Tenant shall reimburse Landlord for any such payment made by Landlord.    The expense for the setting of any meters required for this purpose shall be borne by Landlord.    If water or sewer taxes or charges are imposed against the Shopping Center and not allocable among the various premises therein, Tenant shall pay its Pro Rata Share thereof.    An assessment which is required to be borne by Landlord under clause (z) of part (i) of subsection 3.03(a) shall not be deemed a tax under this Section and shall not be governed by this Section.

## ARTICLE XVII    SIGNS

Section 17.01    Tenant shall have the right, subject to all applicable legal requirements, to erect and maintain on or about the Demised Premises, and at its cost and expense, such lawfully permitted signs on the front and side walls of the Demised Premises, the roof, and marquee, if any, illuminated or otherwise, and such pylon in the Shopping Center as Tenant deems necessary or proper for the conduct of its business.    Tenant may remove or replace such signs at any time during the term of this lease or at the expiration thereof. Such signs and all others, designating Tenant's pick-up stations and any illuminated pylon signs at or near the entrances, to the Demised Premises or Shopping Center shall comply in all respects with all applicable laws and regulations.    Landlord covenants and agrees, upon request, to execute and deliver all instruments or applications required for the purpose of obtaining any licenses or permits with respect thereto.

Section 17.02    (a)  Landlord will not itself erect nor permit to be constructed within the Shopping Center any sign or advertisement without Tenant's prior consent thereto except with respect to the Supermarket Premises, and except for compatible front store signs with respect to other premises.

(b)  On any directory or pylon for the common use of Tenant and other tenants of the Shopping Center, Tenant's trade name shall be entitled to such prominence as its operation bears in proportion to the operations of such other tenants and the respective building space leased to them.  If Tenant shall construct a sign structure at the point, or points designated on Exhibit B as "Pylon Sign" prior to the Commencement Date (as defined in the lease between Landlord and the Supermarket Lessee), such sign structure shall be at least sufficient to bear the weight of the Supermarket Lessee's sign and another sign whose weight shall not exceed three-fourths of Tenant's sign.  In such event the Supermarket Lessee shall have the right to install a sign on such sign structure designating the name of the business to be conducted on the Supermarket Premises, not to exceed three-fourths the weight of Tenant's sign.    If Tenant does not install a sign at such point on or before such "Commencement Date" (as defined in the lease between Landlord and the Supermarket Lessee), such Supermarket Lessee may install a sign structure at such point. In such event such sign structure shall be at least sufficient to bear the weight of such Supermarket Lessee's sign and a sign not to exceed 133% of the weight of such Supermarket Lessee's sign; and Tenant shall be entitled to place a sign designating the name of the business conducted at the Demised Premises on such sign structure not to exceed 133% of the weight of the Supermarket Lessee's sign.  The Supermarket Lessee's sign shall be smaller than the sign of Tenant, and the Supermarket Lessee's sign shall be placed at a lower point on a sign structure than the sign of Tenant.    Tenant and such Supermarket Lessee shall share the cost of any sign structure on which both place signs in proportion to the respective weight of the signs they place thereon.

## ARTICLE XVIII    ASSIGNMENT

Section 18.01    Tenant shall have the right to assign this lease, or sublet the Demised Premises or any part thereof.    In that event, Tenant shall provide Landlord, upon request, with an executed counterpart of the instrument of assignment wherein said assignee or sublessee assumes the performance and observance of all Tenant's agreements, covenants and conditions hereunder.    Tenant and Guarantor hereof shall continue to be fully liable hereunder for the remainder of the lease notwithstanding any assignment, sublease or assumption.

ARTICLE XIX

INSPECTION OF PREMISES BY LANDLORD, ETC.


Section 19.01     Tenant agrees to permit Landlord and
its authorized representatives to enter the Demised Premises
on reasonable advance notice (except in the case of emergency
repairs) and at all reasonable times during usual business
hours for the purpose of inspecting the same, or making any
repairs to the Demised Premises and performing any work therein
that may be necessary by reason of Tenant's default under the
terms of this lease.    Nothing herein shall imply any duty
upon the part of Landlord to do any such work which, under any
provision of this lease, Tenant is required to perform and the
performance thereof by Landlord shall not constitute a waiver
of Tenant's default in failing to perform the same.    Landlord
may, during the progress of any such work in the Demised
Premises, keep and store upon the Demised Premises all necessary
materials, tools and equipment.    Landlord covenants and agrees
that, in connection with the scheduling and making of such
inspections and repairs or the performance of such work, it
will cause as little inconvenience, annoyance, disturbance,
loss of business or other damage to Tenant as may reasonably
be possible under the circumstances, and further covenants to
give Tenant advance notice (except in the case of emergency
repairs) of when it proposes to do the work adverted to therein.


Section 19.02     Landlord is hereby given the right, on
reasonable notice and at all reasonable times during usual
business hours, to enter the Demised Premises and to exhibit
the same in connection with any proposed financing or sale.

40

ARTICLE XX        DEFAULT

Section 20.01

(a)  Each of the following events shall be deemed a
Default:  (i)  If Tenant fails to pay an installment of the
annual Basic Rent reserved herein or Additional Rent, or
any part of either, and such failure continues for more than
fifteen (15) days after Landlord has given Tenant written
notice thereof.  (ii)  If Tenant fails to perform or observe any
other term, covenant or condition of this lease which by its
nature can be cured within thirty (30) days and such failure
continues for more than thirty (30) days after Landlord has given
Tenant written notice of such failure.  (iii) If Tenant fails
to perform or observe any such other term, covenant or condition
which by its nature cannot be cured within thirty (30) days and
Tenant shall not have commenced promptly after such notice and
shall not thereafter proceed with reasonable diligence to cure
the same.  (iv)  If Tenant makes a general assignment for the
benefit of creditors, files a voluntary petition in bankruptcy,
or is adjudicated a bankrupt or takes the benefit of any
insolvency law or is dissolved, voluntarily or involuntarily,
or such an assignment or petition is filed against Tenant or
a receiver or trustee of its property is appointed in any
proceedings and such appointment, assignment or petition is
not vacated within ninety (90) days after it has been made.

(b)  This lease is subject to the limitation that if at
any time a Default shall occur then upon the happening of any
one or more of the aforementioned Defaults, Landlord may give to
Tenant a notice of intention to end the term of this lease at the
expiration of five (5) days from the date of service of such
notice of termination.  At the expiration of such five (5) days,
this lease and the term, as well as all of the right, title and
interest of the Tenant hereunder, shall wholly cease and expire,
and Tenant shall then quit and surrender the Demised Premises
to the Landlord.  But notwithstanding such termination, surrender,
and the expiration of Tenant's right, title and interest, Tenant's
liability under all of the provisions of this lease shall continue.

(c)  If this lease shall be terminated as herein provided,
Landlord, or its agents or employees, may immediately or at any
time thereafter reenter the Demised Premises and remove therefrom
Tenant, Tenant's agents  any subtenants, and any licensees,
concessionaires or invitees, together with any of its or their
property, either by summary dispossess proceedings or by any
suitable action or proceeding at law or by force or otherwise.

In the event of such termination, Landlord may repossess and enjoy the Demised Premises.   Landlord shall be entitled to the benefits of all provisions of law respecting the speedy recovery of lands and tenements held over by Tenant, or proceedings in forceable entry and detainer.   Tenant waives any right to the service of any notice of Landlord's intention to re-enter provided for by any present or future law. Landlord shall not be liable in any way in connection with any action it takes pursuant to the foregoing.   Notwithstanding any such re-entry, repossession, dispossession or removal, Tenant's liability under all of the provisions of this lease shall continue.

(d)   If Tenant assigns this lease, the term "Tenant" as used in part (iv) of subsection 20.01(a) shall refer to the assignee; and if the lease is further assigned, then as used in part (iv) the term "Tenant" shall refer solely to the further assignee.

Section 20.02    In case of any such Default, re-entry, expiration and/or dispossession by summary proceedings, or otherwise, Tenant shall, nevertheless, remain and continue liable to Landlord in a sum equal to all rent and additional rent herein reserved for the balance of the then current and unexpired term herein demised; and Landlord may repair or alter the Demised Premises in such manner as to Landlord may seem necessary or advisable, and/or let or relet the Demised Premises and any and all parts thereof for the whole or any part of the remainder of the unexpired term hereof or for a longer period. Out of any rent so collected or received, Landlord shall apply the same, first in reimbursement of its actual costs and expenses incurred in retaking, repossessing, repairing and/or altering the Demised Premises, in removing all persons and property therefrom, and in securing any new tenant or tenants therefor and then applying the balance to pay any amounts remaining on account of the liability of Tenant to Landlord for the sum equal to the rent reserved herein and unpaid by Tenant for the remainder of the then current and unexpired term herein demised.    Any entry or re-entry by Landlord, whether had or taken under summary proceedings or otherwise, shall not absolve or discharge Tenant from liability hereunder.

Section 20.03    Should any rents so collected by Landlord, after application as aforesaid, be insufficient fully to pay to Landlord a sum equal to all rent and additional rent herein reserved and then due, the balance or deficiency shall be paid by Tenant on the rent days above specified, that is, upon each of such rent days Tenant shall pay to Landlord the amount of the deficiency then existing.    Tenant shall be and remain liable for any such deficiency.    The right of Landlord to recover from Tenant the amount thereof, or a sum equal to the amount of all rent and additional rent then due as herein reserved, if there shall be no reletting, and Tenant's obligation to pay the same shall survive the issuance of any dispossessory warrant or other termination hereof.

Section 20.04    Suit or suits for the recovery of such deficiency or damage, or for a sum equal to any installment or installments of rent or additional rent then due hereunder, may be brought by Landlord from time to time at Landlord's election, and nothing herein contained shall be deemed to require Landlord to await the date wherein this lease or the term hereof would have expired by limitation had there been no such Default by Tenant or no such termination or cancellation.

Section 20.05    Tenant hereby expressly waives (to the extent legally permissible), for itself and all persons claiming by, through, or under it, any right of redemption or for the restoration of the operation of this lease under any present or future law in case Tenant shall be dispossessed for any cause, or in case Landlord shall obtain possession of the Demised Premises as herein provided.

Section 20.06    The parties waive all right to trial by jury in any claim, action, proceeding or counterclaim by either Landlord or Tenant against each other on any matters arising out of or in any way connected with this lease, the relationship of Landlord and Tenant, and/or Tenant's use or occupancy of the Demised Premises.

Section 20.07    Tenant shall not have the right to declare this lease at an end by reason of any Default of Landlord. Tenant shall not proceed with any suit or avail itself of any remedy whatsoever provided for in this lease or under law, unless Tenant shall have first given to Landlord, and concurrently to the holder of any mortgage to which this lease is subordinated, if such mortgagee so requests, written notice of the Default, and Landlord or such mortgagee for a period of thirty (30) days shall have failed to cure the same; or, should the Default be of such a nature that it cannot be completely remedied or cured within such thirty-day period, or if such curative action shall not have commenced within such thirty-day period and thereafter prosecuted with reasonable diligence and dispatch.    The thirty-day notice provision herein set forth shall not be required with respect to any emergency repairs and if Landlord is obligated therefor, under the provisions hereof, but Tenant caused such emergency repairs to be made, Tenant shall be entitled to reimbursement for the costs thereof as herein provided, and Tenant shall not terminate this lease for Landlord's failure to make such repairs. In the event of Tenant's assignment of this lease to a permitted assignee as herein provided, before any Default is taken against such assignee, a duplicate original of all notices required hereunder shall also be given by Landlord to Tenant named herein, and Tenant named herein shall thereupon have the right to remedy any such Default by said assignee within the period of time prescribed hereunder.

Section 20.08     Anything herein to the contrary notwith-
standing, except for the Default designated under subsection
20.01(a)(iv), Landlord shall have no right to resort to any
remedy for claimed Default or breach by Tenant unless Landlord
shall have first given Tenant written notice of said claimed
Default or breach, as in this lease provided, and the time to
cure or remedy the same shall have expired without Tenant having
cured or remedied the same.    In the event of nonpayment of rent
and the commencement by Landlord of any suit, action or proceeding
for the ejectment, eviction or dispossession of Tenant soley by
reason of such nonpayment (and not by reason of the termination
of the term hereof, whether or not such termination occurs
because of Tenant's failure to pay rent after notice as herein
provided), Tenant shall have the right, but only with respect
to the first such suit, action or proceeding, within ten (10)
days after the commencement thereof to pay Landlord the amount
of rent then unpaid, with interest to the date of payment, in
which event the possession of Tenant hereunder shall not be
disturbed and this lease shall not be affected  by such suit,
action or proceeding, which shall thereupon be discontinued of
record and with prejudice.


Section 20.09     Anything herein contained to the contrary
notwithstanding, Landlord and Tenant shall each have the duty
and obligation to mitigate, in every reasonable manner, any and
all damages that may or shall be caused or suffered by virtue
of Default by the other party under, or violation of, any of the
terms and provisions of this lease.

44

ARTICLE XXI

NOTICES - INVALIDITY OF PARTICULAR PROVISIONS

Section 21.01    Notices.    All notices, demands and requests which may or are required to be given by either party to the other shall be in writing.    All notices, demands and requests by Landlord to Tenant shall be deemed to have been properly given if sent by United States registered or certified mail, postage prepaid, addressed to Tenant at the address set forth in this lease, or at such other place as Tenant may, from time to time designate by written notice to Landlord, with duplicate copy to Manes, Sturim, Roth & Fisher, 250 Park Avenue, New York City, New York, or such other law firm as Tenant may from time to time designate.    All notices, demands and requests by Tenant to Landlord shall be deemed to have been properly given if sent by United States registered or certified mail, postage prepaid, addressed to Landlord, at the address set forth in this lease, or at such other place as Landlord may, from time to time, designate in a written notice to Tenant.

Section 21.02    Invalidity of Particular Provisions.    If any term or provision of this lease or the application thereof to any person or circumstances shall to any extent be invalid or unenforceable, the remainder of this lease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this lease shall be valid and be enforced to the fullest extent permitted by law.

ARTICLE XXII

SURRENDER OF PREMISES

Section 22.01     Tenant shall, upon termination of this
lease, surrender to Landlord the Demised Premises and all
appurtenant equipment, in good order, condition and repair,
excepting only reasonable wear and tear and damage which Tenant
is not required under the terms of this lease to restore or
repair.

ARTICLE XXIII

CERTIFICATES BY TENANT AND LANDLORD

Section 23.01    Tenant agrees, from time to time, upon not less than ten (10) days prior notice from Landlord, to execute, acknowledge and deliver to Landlord or to the holder of any mortgage affecting the Demised Premises, or any other party specified by Landlord or the holder of any such mortgage, a statement certifying that this lease is unmodified and in full force and effect (or if there have been modifications, that this lease is in full force and effect as modified and stating the modifications), and the dates to which the rent and other charges have been paid, and stating whether or not to the best knowledge of the signer of such certificate, Landlord is in Default in performance of any covenant, agreement or condition contained in this lease and, if so, specifying each such Default of which the signer may have knowledge.    Any such statement delivered pursuant to this Section may be relied upon by any prospective purchaser of the Shopping Center or by any mortgagee thereof or any assignee of any such mortgage.


Section 23.02    Landlord agrees, from time to time, upon not less than ten (10) days prior notice from Tenant, to execute, acknowledge and deliver to Tenant, or any other party specified by Tenant, a statement certifying that this lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and the dates to which the rent and other charges have been paid, and stating whether or not, to the best knowledge of the signer of such certification, Tenant is in Default in the performance of any covenant, agreement or condition contained in this lease and, if so, specifying each such Default of which the signer may have knowledge.    Any such statement delivered pursuant to this Section may be relied upon by any prospective assignee of Tenant's interest in this lease.

ARTICLE XXIV

CUMULATIVE REMEDIES - NO WAIVER

Section 24.01    The specific remedies to which Landlord
or Tenant may resort under the terms of this lease are
cumulative and are not intended to be exclusive of any other
remedies or means of redress to which they may be lawfully
entitled in case of any breach or threatened breach by either
of them of any provision in this lease.    The failure of Landlord
or Tenant to insist in any one or more instances upon the strict
performance of any of the covenants of this lease, or to exercise
any option herein contained shall not be construed as a waiver
of relinquishment for the future of such covenant or option.
A receipt by Landlord of rent or payment by Tenant of rent with
knowledge of the breach of any covenant or agreement hereof
shall not be deemed a waiver of such breach.    No waiver,
change, modification or discharge by either party hereto of
this lease or of any provision in this lease, or surrender of
the leasehold estate hereby created, shall be deemed to have
been made or shall be effective unless expressed in writing
and signed by both Landlord and Tenant.

Section 24.02    In addition to all other remedies in
this lease expressly provided, Landlord and Tenant shall be
entitled to such equitable relief as may be available either
to restrain by injunction any violation, or attempted or threat-
ened violation of any of the covenants, conditions or provisions
of this lease or to compel by decree the specific performance
thereof.

ARTICLE  XXV

ARBITRATION

Section 25.01    Wherever it is express provided
herein that any matter or issue shall be submitted to a
resolved by arbitration, it may be submitted by either party
to arbitration as follows:   The party requesting such sub-
mission to arbitration shall notify the other party of such
request and each party shall promptly appoint one arbitrator.
Said two arbitrators shall, within thirty (30) days, select a
third arbitrator, and said three arbitrators shall, by majority
decision, decide any issue or matter so submitted to them.
Their decision thereon shall be binding and conclusive upon
the parties hereto.   In the event said arbitrators designated
by the parties shall fail to select a third arbitrator within
said period, then said third arbitrator shall be designated by
judicial authority under applicable law.   The arbitrators
shall decide and determine what shall be done, paid, postponed,
delayed, refrained from and/or accepted by the parties in
settlement or removal of such issue, difference, situation,
condition or valuation dispute, and shall also decide upon
the allocation of the costs of such arbitration.   Pending the
decision in such arbitration, no Default may be claimed by
either party with respect to the matters then being so resolved,
but all the other obligations, covenants and conditions in this
lease shall be and remain in full force and effect.

## ARTICLE XXVI

## QUIET ENJOYMENT - CONVEYANCE BY LANDLORD - LIABILITY

**Section 26.01**    From and after the Commencement Date, Landlord covenants that Tenant, upon observing and performing all the terms, covenants and conditions on Tenant's part to be observed and performed, and upon paying Basic Rent and Additional Rent when due hereunder, may peaceably and quietly have, hold and occupy and enjoy the Demised Premises and all appurtenant facilities without hindrance or molestation throughout the term of this lease and any extensions upon the terms of this lease.

**Section 26.02**    If Landlord or any successor in interest is an individual (which, as used herein, includes a trust, and aggregates of individuals, such as joint ventures, general or limited partnerships or associations) such individual shall be under no personal liability with respect to any of the provisions of this lease.    If such individual shall be in breach or Default with respect to his obligations or otherwise under this lease, Tenant shall look solely to the equity of such individual in the Demised Premises for the satisfaction of Tenant's remedies. The foregoing shall not, however, be deemed a waiver or modification of Tenant's rights or Landlord's obligation under this lease nor shall it prevent Tenant from obtaining judgment against the then Landlord in case of such breach or Default but only to the extent that same be a lien against Landlord's equity or interest in said Demised Premises nor from levying same upon Landlord's equity or interest in said Demised Premises nor from asserting any setoff or deduction against the rents payable under this lease to which Tenant may be entitled under this lease.    The parties agree that there are no undisclosed principals and that Landlord's stockholders have no personal liability hereunder.    This Section shall prevail in case of conflict with Article XXIV.

ARTICLE  XXVII

LANDLORD'S ADDITIONAL COVENANTS AND WARRANTIES

Section 27.01

(a)  Landlord warrants and represents that (i) it has full right and lawful authority to execute this lease for the term and upon the conditions and provisions herein contained; (ii)  Landlord is the assignee of a contract to purchase the Shopping Center;  (iii) that it knows of no legal impediment to the construction of the building on the Demised Premises as herein described, subject to final plans and specifications and to the obtaining of building permits therefor;  and (iv) at the Commencement Date the Demised Premises shall be zoned to permit the operation of a department store, as herein provided, including the right to use the related parking facilities.

(b)  In the  execution of this lease Tenant has relied upon the foregoing warranties and representations, and Landlord agrees that Tenant shall as its sole remedy have the right to terminate this lease for any breach of the provisions of this Section and the parties shall thereupon have no further obligation hereunder in that event.

Section 27.02    Landlord represents that in the event it enters into negotiations to build on, sell, or lease any portion of the "Shopping Center" as designated on Exhibit A as a 'gas station'  it shall give to Tenant a 'right of first refusal'. Failure by Tenant to accept an offer to purchase or lease the 'gas station site' on the same terms and conditions as offered by Landlord to others, within 30 days of receipt of said offer shall be deemed a 'refusal' and Landlord may proceed to submit the offer to others.

Section 27.03    Landlord represents and warrants that it shall diligently prosecute its application for a building permit for the construction of the Shopping Center, in the event, however, Landlord is unable to obtain said building permit, its obligations hereunder shall terminate, provided, however, Tenant shall have a right of first refusal for a department store in any Shopping Center subsequently developed by Landlord on the premises described on Exhibit A.

Section 27.04    If Tenant so requests, Landlord will use its best efforts to cause a traffic light to be erected at a Shopping Center entrance to be designated by Tenant.

ARTICLE VIII

## EXPANSION AREAS

**Section 28.01**   Anytime up to the fifth (5th) anniversary of the Commencement Date as herein defined, Tenant shall have the right at its sole option to enlarge the Demised Premises by approximately 10,000 square feet, in the area designated as "Expansion Area" on the attached plan; provided, however, that prevailing zoning or zoning variances permit such additional construction over and above the space initially reserved for Shopping Center buildings of 165,000 square feet.

**Section 28.02**   Landlord agrees, at Tenant's sole expense, if requested to do so by Tenant, to file and prosecute any and all applications and/or petitions for zoning variances which may be reasonably required by Tenant to effectuate the foregoing provision.

**Section 28.03**   Upon notification by Tenant of its intentions to enlarge the premises as provided for in the preceding section, Landlord may within 30 days after receipt of plans and specifications for said expansion elect to:

(a)   Construct the "Expansion Area" itself in conformity with Article II hereof to the extent that the same is applicable and upon completion thereof, the fixed rental provided for in Article III shall be increased by an amount equal to the product of the following formula:

$2.35 x square feet of expansion x Dodge
Construction Index for Westchester County
as of date of Commencement of Construction
of Expansion Area/Said Index as of date
of this Lease; or

(b)   Advise Tenant it does not intend to construct said Expansion Area and thereafter, Tenant may have the same built at its sole cost and expense in conformity with the provisions of Article IX hereof.

ARTICLE  XXIX          MISCELLANEOUS

Section 29.01      Intentionally omitted.

Section 29.02      Intentionally omitted.

Section 29.03      Intentionally omitted.

Section 29.04    All prior negotiations and all representa-
tions have been merged into this lease, which constitutes
the entire agreement between the parties hereto, and this lease
shall not be modified, cancelled or discharged, in whole or in
part, except by an instrument in writing subscribed by the
party to be charged with such modification, cancellation or
discharge.

Section 29.05      Except as in this lease provided, all
covenants, agreements, terms, conditions, provisions and under-
takings shall extend to and be binding upon the parties hereto
and their respective successors and assigns, and the same shall
be construed as covenants running with the land.

Section 29.06      Intentionally omitted.

Section 29.07    To the extent that any provision hereof
expresses an obligation consequent upon or subsequent to the
cancellation or termination of this Lease, such provision
shall be deemed to survive such cancellation or termination.

IN WITNESS WHEREOF, the parties hereto have executed
this agreement on the *13 th* day of April, 1973.

Witness

_____

_____
By _____
Landlord

ATTEST:                                                CALDOR INC., N.Y.

_____                       By _____
Assistant Secretary                                        President

53

STATE OF CONNECTICUT )
                   ) ss:
COUNTY OF FAIRFIELD )

       On this 13th day of April, 1973, before me, Sarah Gladstein,

the undersigned officer, personally appeared Carl Bennett who

acknowledged himself to be the President of Caldor, Inc. N.Y.,

a corporation and that he, as such President, being authorized

so to do, executed the foregoing instrument for the purposes

therein contained by signing the name of the corporation by

himself as President.

       In witness whereof I hereunto set my hand.

                           *Sarah R. Gladstein*
                            Notary Public
                          SARAH R. ____IN
                          NOT ____
                       MY COMM. ____ ____ 1973

STATE OF CONNECTICUT )
                   ) ss:
COUNTY OF FAIRFIELD )

       On this ___ day of ___, 1973, before ___

the undersigned officer, personally appeared ___

___ who acknowledged himself to be the ___

___ , a corporation, and

that he, as such ___ , being authorized so to do,

executed the foregoing instrument for the purposes therein

contained, by signing the name of the corporation by himself as

___

       In witness whereof I hereunto set my hand.

                           *Sarah R. Gladstein*
                          SARAH R. GLADSTEIN
                          NOTARY PUBLIC
                     MY COMMISSION EXPIRES MAR. 31, 1979

at 13 (3/72)

## SCHEDULE A (Description)

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,

lying and being  in the Town of Yorktown, County of Westchester and State of New York, bounded and described as follows:

BEGINNING at a point on the proposed new westerly side of the State Road leading from Yorktown Heights to Peekskill, now known as Commerce Street, where the same is intersected by the northerly line of land leased by Considine Investing Co. to Douglas C. Dunning by instrument dated September 14, 1948, recorded May 4, 1949 in Liber 4737 of conveyances in the Westchester County Clerk's Office, Division of Land Records, at page 352;

thence running the northerly and westerly lines of land so leased to Dunning north 82° 56' 10" west 123.90 feet and south 6° 50' 33" west 23.07 feet to the northerly line of land now or formerly belonging to or leased to W. G. Kear;

thence running along said land now or formerly of Kear, land now or formerly of Richly Builders, Inc. and land now or formerly of Mongero and along the mean center line of the remains of a stone wall the following courses and distances:

north 82° 36' 15" west 220.68 feet;
north 80° 23' 30" west 9.05 feet; and
north 82° 44' 30" west 175.77 feet to the northeasterly line of Kear Street;

thence along said line of Kear Street, north 22° 59' 20" west 29.16 feet to a point of curve;

thence still along the northeasterly line of Kear Street in a north-westerly direction on a curve to the left having a radius of 253.35 feet, a distance of 267.59 feet to a point in the northerly line of Kear Street;

thence still along the northerly line of Kear Street, north 83° 30' 20" west 10.48 feet to the easterly end of a curve connecting the easterly line of Route 118 By Pass, with the northerly line of Kear Street; and

thence in a northwesterly direction along the arc of a curve to the right having a radius of 30 feet, a distance of 45.25 feet to a point on the easterly line of Route 118 By Pass and the northerly end of said curve;

-continued-

-2-

thence running along the easterly line of Route 118 By Pass, the following courses and distances:

north 2° 54' 30" east 834.79 feet; and

northerly on a curve to the right having a radius of 1085.92 feet, a distance of 299.64 feet to the point where the easterly line of Route 118 By Pass intersects the southerly line of Downing Road;

running thence southeasterly along the southerly and southwesterly lines of Downing Road, the following courses and distances:

south 51° 43' 20" east 400.90 feet to a point;

north 38° 16' 40" east 5 feet to a point;

south 51° 43' 20" east 54.12 feet to a point; and

southeasterly along a curve to the right, having a radius of 681.30 feet, a distance of 194.01 feet to a point;

thence leaving said line of Downing Road and along the line of Yorktown Heights Urban Renewal Disposition Parcel No. 3, the following courses and distances:

south 2° 48' 43" west 543.68 feet; and
south 69° 41' 50" east 232.55 feet to a point on the proposed relocated westerly line of Commerce Street;

running thence southerly along said proposed relocated line of Commerce Street, south 1° 04' 50" east 242.87 feet to a point;

thence on a curve to the right having a radius of 500 feet, a distance of 71.07 feet to a point; and

south 7° 03' 50" west a distance of 28.38 feet to the point or place of beginning.

TOGETHER with an easement for ingress and egress over the land lying between the westerly line of Commerce Street as presently located and the proposed relocated westerly line of Commerce Street and a like easement over any land between the northerly line of premises described in Schedule A and the southerly line of Downing Road.