Robert M. Carson, Esq.

Robert A. Weisberg, Esq.

**CARSON FISCHER, P.L.C.**

4111 Andover Rd., West – 2nd Floor

Bloomfield Hills, Michigan 48302

Telephone: (248) 644-4840

Facsimile: (248) 644-1832

Email: RCarson@CarsonFischer.com
        RWeisberg@CarsonFischer.com

**Hearing Date: May 8, 2019 at 10:00 a.m.**

**Objection Deadline: May 3, 2019 at 11:30 a.m.**

*Counsel for Forbes/Cohen Florida Properties, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | ) | Case No. 18-23538-RDD |
| | ) | |
| Debtors.[1] | ) | *Jointly Administered* |

---------------------------------------------------------------------- x

**SUPPLEMENTAL OBJECTION OF FORBES/COHEN FLORIDA PROPERTIES, L.P.**
**TO NOTICE OF ASSUMPTION AND ASSIGNMENT OF ADDITIONAL**
**DESIGNATABLE LEASES [DN 3298]**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Forbes/Cohen Florida Properties, L.P. ("Forbes"), by its undersigned counsel, hereby files this objection and reservation of rights (the "Supplemental Objection") with regard to the *Notice Of Assumption And Assignment Of Additional Designatable Leases* (Docket Number 3298). In support of this Supplemental Objection, Forbes respectfully states as follows:

## I.     BACKGROUND

1.      The Gardens Mall is a highly regarded first-class enclosed mall, located on the PGA Corridor in the City of Palm Beach Gardens, Florida ("The Gardens Mall"). There are over 150 stores in The Gardens Mall, five of which, including Debtor Sears, Roebuck and Co. ("Sears"), are anchor or "Major" tenants.

2.      Forbes developed and manages The Gardens Mall pursuant to planned unit development ("PUD") regulations and related ordinances.

3.      Forbes is itself a tenant at The Gardens Mall under a master land lease executed by it, as tenant, and the MacArthur Liquidating Trust in 1984, as lessor ("Land Lease").

4.      Sears is a tenant under what is actually, therefore, a sublease between Sears and Forbes executed in 1987 (the "Sears Lease"). *See* Sears Lease, which is attached as Exhibit A to Forbes Pending Objection (as defined below) (Docket Number 1932).

5.      Sears occupies an anchor store area and parking lot (subject to restrictions and easements) at The Gardens Mall ("Demised Premises") described as "…a portion of the Shopping Center Parcel consisting of approximately 10.6 acres as more particularly described on Exhibit "B" [to the Sears Lease]." *See* Sears Lease, p. 1, which is attached as Exhibit A to Forbes Pending Objection (Docket Number 1932). The Sears building is comprised of approximately 148,638 square feet on two levels in The Gardens Mall (the "Sears Building").

6.      In addition to the Sears Lease, as is typical in large mall settings, Sears' use of the Demised Premises and the Sears Building is subject to certain restrictions and obligations as contained in, minimally, the following related documents:

A.      *Construction, Operation and Reciprocal Easement Agreement* dated May 29, 1987, as amended ("REA");

B.      *Supplemental Agreement* dated May 29, 1987, as amended ("Supplemental Agreement");

C.      the Land Lease; and

D.      rules, laws, ordinances, resolutions and provisions, including, but not limited to, the duly enacted Palm Beach Gardens PUD passed through resolution on November 15, 1984 and later amended which governs the development of The Gardens Mall.

All of the foregoing, including the Sears Lease shall be collectively referred to as the "Governing Documents"). The Governing Documents govern and control Sears' use and occupancy of the Demised Premises including, but not limited to, signage, architectural designs, mall standards, operations, maintenance, repair, alterations and additions to The Gardens Mall, lease and sublease terms, and rights and obligations of tenants, *etc.*

7.      On January 18, 2019, in connection with the potential sale of a substantial portion of Debtors' assets (the "Sale") to Transform Holdco LLC ("Buyer"), Debtors filed the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Docket No. 1731) (the "First Notice of Potential Assumption and Assignment"), and on January 23, 2019, Debtors filed the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and*

*Unexpired Leases in Connection with Global Sale Transaction* (Docket No. 1774) (the "Second Notice of Potential Assumption and Assignment" and, together with the First Notice of Potential Assumption and Assignment, the "Original Assumption and Assignment Notices").

8.      The Original Assumption and Assignment Notices identified certain executory contracts and unexpired leases that Debtors ***might*** assume and assign as part of the Sale, including the Sears Lease (the "Potentially Assigned Leases").

9.      As provided in the *Notice of Successful Bidder and Sale Hearing* (Docket Number 1730) and the Original Assumption and Assignment Notices, objections to, among other things, the potential assumption and assignment of leases and contracts were due by January 26, 2019 at 4:00 p.m. (Eastern).

10.      On January 25, 2019, Forbes timely and properly filed the *Objection Of Forbes/Cohen Florida Properties, L.P. To (I) The Proposed Assumption And Assignment Of Lease In Connection With The Global Asset Sale Transaction; (II) Global Asset Sale Transaction; And (III) reservation Of Rights* (Docket No. 1932) and on February 5, 2019 Forbes filed the *Amendment To Objection Of Forbes/Cohen Florida Properties, L.P. And Joinder In Landlord Objections* (Docket No. 2411) (collectively, the "Forbes Pending Objection"), which are each incorporated herein by this reference.

11.      On February 8, 2019, this Court entered its *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith (and) (IV) Granting Related Relief* (Docket No. 2507) (the "Sale Order") which, among other things,

approved the Sale to Buyer.  Based on information and belief, the Sale closed on February 11, 2019.

12.    Pursuant to the Sale Order, Debtors opted to not address the Forbes Pending Objection at the time of the Sale approval opting instead to adjourn such objections pending subsequent designation of the Sears Lease by Buyer.

13.    On April 2, 2019, at the request of Debtors, this Court entered its *Order (I) Authorizing Assumption And Assignment Of Certain Executory Contracts and Leases and (II) Granting Related Relief* (Docket Number 3009)(the "Assumption and Assignment Order") which provided, among other things, additional noticing and other procedures for the proposed assumption and assignment of Additional Assigned Agreements (as defined in the Assumption and Assignment Order).

14.    On April 19, 2019, Buyer (and not Debtors) filed the Designation Notice which purports to designate the Sears Lease, and 667 other additional leases (the "Additional Designatable Leases"), for potential assumption and assignment to Buyer.  In the Designation Notice, the Buyer identifies for the first time Transform Operating Stores LLC (the "Buyer Assignee") as the "Assignee" with respect to the Sears Lease.  No further information regarding the proposed Buyer Assignee, including, but not limited to, its financial condition, operating history and expertise, intentions/plans with regard to the Demised Premises, or any details regarding its relationship to the Buyer, is provided.

15.    The Designation Notice further provides that -

> Buyer intends to designate the Additional Designatable Leases [including the Sears Lease] for assumption and assignment *free and clear of any interests, covenants, or rights applicable to such real estate leases to the extent the same limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants,*

*licenses, or permits (collectively, "Restrictive Covenants") that are
executory and do not run with the land*.

*See* Designation Notice at Paragraph 18 (emphasis added).

16.     As provided in the Designation Notice, objections to the Designation Notice are
due on or before May 3, 2019 at 11:30 a.m. (prevailing Eastern Time).

## II.     ARGUMENT

### SUMMARY

17.     Clear procedures were ordered by this Court for the assumption and assignment of
leases in the Assumption and Assignment Order which, among other things, provided for the
formal designation of leases for assumption from those previously identified for potential
assumption.  In connection with such above procedures, cure amounts were previously provided,
and objections to such cure amounts were previously filed by the non-debtor parties. Buyer,
through its Designation Notice, attempts to sidestep the procedures or Court order, requests relief
not provided for in the procedures, blurs any factual or legal authority for such relief, and arguably
requests relief which is contrary to the express provisions of the Bankruptcy Code

### THE DESIGNATION NOTICE IS AMBIGUOUS AND UNCLEAR

18.     First, the Designation Notice, rather than merely designating the Sears Lease for
assumption and assignment, includes ambiguous and unclear language purporting to impose on
Debtors and Forbes alleged limitations to the proposed assumption and assignment.

19.     The Designation Notice fails to set forth the specific relief sought by Buyer (and/or
Debtors) as it relates to Restrictive Covenants (as defined in the Designation Notice) or the legal
basis for such relief.

20.     On the one hand, Buyer seeks to define the Sears Lease and the other Additional
Designatable Leases as broadly as possible by indicating that such Additional Designatable Leases

6

(which include the Sears Lease) "shall be deemed to include any and all applicable supplements, amendments, and/or addenda." *See* Designation Notice at Paragraph 15. However, no such "applicable supplements, amendments, and/or addenda" are described or identified for the Sears Lease or any of the other 667 Additional Designatable Leases. Thus, Forbes has no way of determining whether such agreements exist and impact its rights under such agreements or the Sears Lease.

21.    On the other hand, Buyer, at Paragraph 18 of the Designation Notice, claims that the "Buyer intends to designate the Additional Designatable Leases for assumption and assignment **free and clear of any interests, covenants, or rights applicable to such real estate leases** to the extent the same limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") **that are executory and do not run with the land**." *See* Designation Notice at Paragraph 18 (emphasis added). Indeed, the Sears Lease is replete with covenants and provides for rights and obligations which must be assumed if assigned.

22.    In direct contravention of the Assumption and Assignment Order (*see* Paragraphs 31 - 35 below), no specific (i) "interests, covenants, or rights . . . that are executory and do not run with the land" or (ii) contracts or agreements containing any such "interests, covenants, or rights . . . that are executory and do not run with the land", are described or identified with regard to the Sears Lease or any of the other 667 Additional Designatable Leases.

23.    Buyer further fails to state whether Forbes is party to or has an interest in these other agreements. Forbes has no way to respond to the purported relief sought.

24.    Thus, the identity of any such "interests, covenants, or rights . . . that are executory and do not run with the land" sought to be invalidated or in substance rejected by Buyer is unknown

to Forbes (and, presumably, to the non-debtor parties to the other 667 Additional Designatable Leases). By failing to disclose or otherwise obfuscating the identity of these other purported but unspecified "agreements", Buyer has not only violated this Court's Order, and the Purchase Agreement, but seeks to deny Forbes due process rights under the assumption and assignment process approved by this Court, and mandated by law.

25.     Moreover, in addition to not knowing **what** "interests, covenants, or rights . . . that are executory and do not run with the land" Buyer seeks to reject, the legal basis for such requested relief is also not set forth. Buyer fails to identify any statutory or other legal basis or legal authority for the requested "free and clear" relief. The relief may be denied based solely upon this omission.[2]

26.     If Buyer (through Debtors) is seeking to reject executory contracts, it must identify these contracts and the parties' thereto. It has failed to do so. Buyer is not following the procedures for rejection of executory contracts (assuming that is what it is attempting to do) established by this Court's Rejection Procedures Order (Docket Number 3044).

27.     Because Buyer also purports to seek "free and clear" type relief related to "executory" "interests, covenants, or rights," one should not have to speculate whether Buyer relies upon Section 363 (applicable to "free and clear" type relief) or Section 365 (applicable to "assumption of executory contracts"). Certainly, no contracts or leases have been identified for rejection by Buyer in the Designation Notice.

---

[2] *See generally, City of Syracuse v. Onondaga Cnty.*, 464 F.3d 297, 308 (2d Cir. 2006) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal. Pursuant to this rule, we have held that an argument made only in a footnote was inadequately raised for appellate review." (citations and internal quotation marks omitted)).

28.     Given Buyer's failure to provide either (i) the specific "interests, covenants, or rights" it seeks to avoid or (ii) the legal basis for doing so, it is impossible for Forbes (or, presumably, any other non-debtor party covered by the Designation Notice) to adequately respond.

29.     By not disclosing necessary information regarding the agreements or rights sought to be impaired by the Designation Notice or the legal basis for the requested relief, Buyer has failed to disclose required information and, therefore, is seeking relief that is prohibited by the Bankruptcy Code.  To the extent that any such prohibited relief is being requested, Forbes specifically objects.

30.     Accordingly, the relief requested by Buyer in the Designation Notice with regard to the Sears Lease must be denied.  Forbes specifically reserves the right to further respond to the requested relief to the extent Debtors or Buyer provide the necessary information and describe the legal support for the relief requested.

### THE DESIGNATION NOTICE IS DEFICIENT

31.     Second, the Designation Notice is also deficient to the extent it seeks to extinguish or otherwise diminish any "interests, covenants, or rights . . . that are executory and do not run with the land" applicable to the Sears Lease.

32.     The Assumption and Assignment Order, which is expressly referenced and relied upon in the Designation Notice (and was entered at the request of Debtors (or Buyer?)), specifically requires that any Designated Lease Notice (as defined in the Assumption and Assignment Order) "shall **describe** the Restrictive Covenant [as defined therein] that the party is seeking to extinguish or otherwise diminish".  *See* Assumption and Assignment Order at Paragraph 26 (emphasis added).

33.     In contravention of the clear requirement in the Assumption and Assignment Order, the Designation Notice **does not "describe" any Restrictive Covenant**.

34.     Even if this Court were to excuse the violation of its Assumption and Assignment Order, it is impossible for Forbes, or any other non-debtor party to any leases sought to be assumed by Buyer (or Debtors) pursuant to the Designation Notice, to address any purported relief sought by Buyer (or Debtors) with regard to any such not described Restrictive Covenant.

35.     Thus, the relief requested in the Designation Notice must be denied.

## THE RESTRICTIVE COVENANTS MUST BE SATISFIED BY BUYER IF THE SEARS LEASE IS TO BE ASSUMED

36.     Third, without regard to the ambiguous and deficient nature of the Designation Notice, there is no basis to grant any relief to Buyer (or Debtors) regarding any Restrictive Covenant based upon the Designation Notice.

37.     Debtors must assume and assign the Sears Lease in its entirety and Buyer/assignee is subject to the terms and conditions thereof *cum onere*. *See*, *e.g.*, *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S. Ct. 1188, 1199, 79 L. Ed. 2d 482 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*."); *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and rejected in part . . . The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits.").

38.     This requires Debtors to assume and assign (and Buyer/assignee to be responsible for) all of the provisions and obligations which Sears is responsible pursuant to the Sears Lease. Moreover, Debtors must demonstrate Buyer's (and Buyer Assignee's) ability to satisfy those provisions and obligations going forward.

39.     Section 365(b)(3) specifically requires Debtors to show "that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provisions, and will not breach any such

provision contained in any other lease, financing agreement, or master agreement relating to such

shopping center," and "that assumption or assignment of such lease will not disrupt any tenant mix

or balance in such shopping center." *See* 11 U.S.C. § 365(b)(3)(C)-(D).

40.    Each of the Governing Documents are expressly incorporated into and made a part

of the Sears Lease –

A.    **REA.**  The Sears Lease contains an express contractual provision that it is

subject to, and Sears is bound by, all of the terms and conditions of the REA

–

> 2.  Demised Premises – Shopping Center – R.E.A.
>
> (a)  Landlord for and in consideration of the rents to be paid and the covenants and agreements to be kept and performed by Tenant does hereby lease to Tenant the premises situated in the City of Palm Beach Gardens, Palm Beach County, and State of Florida, as is more particularly described on Exhibit "B" hereto.  Such premises are leased together with any and all present and future appurtenances, rights, franchises, licenses, privileges and easements benefitting, belonging or pertaining thereto (all of the foregoing are hereinafter sometimes referred to as the "Demised Premises"), subject only to the title exceptions set forth in Exhibit "E" hereto.
>
> (b)  The R.E.A. sets forth the basis upon which the Demised Premises, the Macy Parcel, the Burdines Parcel and the Landlord's Parcel are to be developed and operated as an enclosed mall regional shopping center.  The R.E.A. also provides for certain mutual and reciprocal easement rights as between the Demised Premises, the Macy Parcel, the Burdines Parcel and the Landlord's Parcel.  Anything in this Lease contained to the contrary notwithstanding, no term or provision of this Lease shall be deemed to modify or in any way compromise or mitigate any of the rights or obligations of Landlord or Tenant under and pursuant to the R.E.A. or to effect or remit any of the easement rights therein granted and/or reserved, and Tenant, in entering into this Lease, agrees that it is accepting this Lease subject to and is bound by all terms and conditions of the R.E.A.  In the event of any conflict between the terms of this Lease and the terms of the R.E.A., the terms of the R.E.A. shall control, unless otherwise herein specifically provided.  All defined terms in the R.E.A. shall have the same meanings herein.

*See* Sears Lease at Paragraph 2, pages 2-3, which is attached as Exhibit A

to Forbes Pending Objection (Docket Number 1932).

B.    **Land Lease.**  The Sears Lease similarly contains an express contractual

provision that it is subject to, and Sears is bound by, all of the terms and

conditions of the Land Lease –

1. Land Lease.

(a) This Lease shall be subject and subordinate to all of the terms, covenants, conditions and provisions of the Land Lease, but not to any amendments thereto unless consented to by Tenant hereunder, and to any new lease of the Shopping Center Parcel as described in Article XV of the Land Lease consistent with the terms of the Land Lease and any such amendment consented to by Tenant, and to all the title and other matters to which the Land Lease is subject or subordinate as set forth on Exhibit "E".

*See* Sears Lease at Paragraph 1, page 2, which is attached as Exhibit A to

Forbes Pending Objection (Docket Number 1932).

C.     **Title Exceptions.**   Exhibit E to the Sears Lease, which is referred to in

Paragraphs 1 and 2 of the Sears Lease, further confirms that the Sears Lease

is subject to (i) the Land Lease, (ii) the REA, and (iii) zoning and building

ordinances, laws, rules and regulations –

EXHIBIT "E"

a.   The Land Lease.

b.   The REA.

c.   Taxes and assessments for the year 1987 and subsequent years which are not yet due and payable.

d.   Acts suffered by or done by or through or caused by Tenant or persons claiming by, through or under Tenant.

e.   Zoning and building ordinances, laws, rules and regulations.

*See* Exhibit E to Sears Lease, which is attached as Exhibit A to Forbes

Pending Objection (Docket Number 1932).  *See also* Sub-paragraphs A. and

B. above.  This provision includes by reference the PUD, as amended.

D.     The Sears Sublease further confirms that any use of the premises must

comply with "all laws and ordinances and the orders, rules, regulations and

requirements of all Federal, State, County and municipal governments and

appropriate departments, commission, boards and officers thereof (whether

or not the same require structural repairs or alterations), which may be

12

applicable from time to time to the Demised Premises." *See* Sears Lease at

Paragraph 10, page 14, which is attached as Exhibit A to Forbes Pending

Objection (Docket Number 1932).  This provision includes by reference the

PUD, as amended.

41.    The parties confirmed their agreement that the covenants, easements, promises, and

duties of the parties contained in the REA shall "run with land" –

Section 24.11  Covenants Run With the Land

Except as provided in Section 12.2, it is intended that the covenants, easements, agreements, promises and duties of each Party as set forth in this REA, shall be construed as covenants and that, to the fullest extent legally possible, all such covenants shall run with and be enforceable against both the covenantor and the Land or constitute equitable servitudes as between the Parcel of the respective covenantor, as the servient tenement, and the Parcel of the respective covenantee, as the dominant tenement.  Such covenants shall terminate upon termination or expiration of this REA.

*See* REA at Paragraph 24.11, page 72, which is attached as Exhibit H to Forbes Pending Objection

(Docket Number 1932).

42.    The REA was properly recorded against The Gardens Mall.

43.    Since Buyer (and/or Debtors) seek to assume and assign the Sears Lease, and such

assumption must be *cum onere*, all of the provisions in the Governing Documents are, by

definition, included within the assumption and assignment and may not be severed or otherwise

extinguished or diminished.  *Bildisco, supra,* and *MF Glob. Holdings Ltd., supra.*

44.    Even assuming that any of the "restrictions" which Buyer is attempting to shed are

not imposed upon Buyer by the Sears Lease, Debtors and/or Buyer must demonstrate that such

restrictions are executory and do not run with the land.  Otherwise, these restrictions are properly

enforceable against Buyer.  *See, e.g., Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994) (finding

that covenants running with the land are property interests and cannot be extinguished through

bankruptcy); *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 188 (Ill. 1983) ("Generally,

easements "run with the land" where the original parties intended the interest to run with the land,

the interest touches and concerns the property, and there is privity of estate between the party claiming the benefit of the covenant and the party burdened by the covenant.").[3]

45.    Debtors, or Buyer (or Buyer Assignee) standing in Debtors' stead, bear the burden of proving that they are permitted to sell free and clear of any interest. *See In re Flour City Bagels, LLC*, 557 B.R. 53, 88 (Bankr. W.D.N.Y. 2016) (denying debtor's motion to sell property free and clear "[b]ecause [debtor] has not carried its burden of proof" to demonstrate compliance with section 363(f) of the Bankruptcy Code).

46.     Debtors cannot sell free and clear of Restrictive Covenants under applicable law as such rights have been found to be non-executory (and therefore not subject to rejection) and/or to run with the land.

47.    Moreover, any question regarding whether the Restrictive Covenants run with the land may not be decided in the context of the sale hearing, but instead must be addressed pursuant to a separate adversary proceeding. *See In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016), aff'd, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018) ("[T]he Court concludes that it cannot decide substantive legal issues, including whether the covenants at issue run with the land, in the context of a motion to reject, unless such motion is scheduled simultaneously with an adversary proceeding or contested matter to determine the merits of the substantive legal disputes related to the motion."). Accordingly, no Restrictive Covenants can be

---

[3] *See also*, *e.g.*, *Mancuso v. Meadowbrook Mall Co. Ltd. P'ship*, 2007 U.S. Dist. LEXIS 23308, at *29-30 (Bankr. N.D. W.Va. March 28, 2007) (holding that certain "use covenants" on space used to operate restaurant were restrictions that ran with land that debtor could not sell free and clear pursuant to § 363(f)(1)); *In re 523 E. Fifth St. House Preservation Dev. Fund Corp.*, 79 B.R. 568, 574-75 (Bankr. S.D.N.Y. 1987) (holding that deed restriction requiring that property be used for low-income housing was a covenant that ran with land that could not be sold free and clear of such restriction through § 363(f)(1)); *In re Inwood Heights Hous. Dev. Fund Corp.*, Case No. 11-13322 (MG), 2011 Bankr. LEXIS 3251(Bankr. S.D.N.Y. Aug. 25, 2011) (holding that debtor could not use § 363(f)(1) "to obviate compliance with any sale restrictions contained in the Deed").

stripped as part of the sale process without the filing of an adversary proceeding.  Neither Debtors nor Buyer have commenced an adversary proceeding.

48.    Neither Debtors nor Buyer have established any "interests, covenants, or rights . . . that are executory and do not run with the land" that also are not otherwise already included in the Sears Lease.  Thus, all such "interests, covenants, or rights" must be strictly adhered to by the assuming Buyer.

### ALL UNLIQUIDATED OBLIGATIONS MUST BE ASSUMED BY THE APPLICABLE ASSIGNEE

49.    Forbes further objects to the assumption and assignment of the Sears Lease to the extent the Buyer (or Buyer Assignee) seeks to assume the Sears Lease free and clear of any Unliquidated Obligations (as defined below) under the Sears Lease.

50.    The *cum onere* principles applicable under section 365(b) of the Bankruptcy Code and discussed above apply with equal force here, and preclude any attempt by the Debtors or Buyer (or Buyer Assignee) to strip away any of the Unliquidated Obligations arising under the Sears Lease.

51.    In addition to monetary rent obligations, the Sears Lease (and other Governing Documents incorporated into the Sears Lease) contains numerous other tenant obligations including, but not limited to, insurance requirements, real estate taxes and other charges (accrued or otherwise), amounts payable under reciprocal easement agreements, utilities (including electricity, gas, oil, water, telephone, sanitary sewer services and all other and utilities), repair, maintenance, and replacement obligations, and environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges that remain undetermined as of the date hereof (the "Unliquidated Obligations").

52.    Consistent with applicable authority, the Debtors are not entitled to assume the Sears Lease by merely curing arrearages in rent or other presently quantifiable monetary obligations. Instead, the Debtors must cure, or provide adequate assurance of promptly curing, all liquidated cure amounts **and** other Unliquidated Obligations under the Sears Lease, including, without limitation, their current and future obligations to maintain the Demised Premises and the Sears Building and make repairs and replacements, as a condition to the assumption and assignment of the Sears Lease. *See* 11 U.S.C. § 365(b)(1).

53.    Any order approving the assumption and assignment of the Forbes Lease should make clear that all liquidated cure amounts must be paid at or prior to assumption and assignment **and** all Unliquidated Obligations shall survive, and that the Buyer (or Buyer Assignee) shall take the Sears Lease subject to all of its respective terms and undertake to satisfy all monetary and all non-monetary obligations under the Sears Lease, regardless of whether such Unliquidated Obligations could be argued to have existed, occurred, or accrued prior to the assumption and assignment of the Sears Lease to Buyer (or Buyer Assignee).

### No Adequate Protection Of Future Performance Has Been Provided

54.    Under section 365(f)(2) of the Bankruptcy Code, a lease may only be assigned if (1) the lease is assumed in accordance with the requirements of section 365(b)(1) of the Bankruptcy Code and (2) the moving party provides adequate assurance of future performance by the proposed assignee of the lease terms. 11 U.S.C. § 365(f)(2). Section 365(b)(1) provides that if there has been a default in an unexpired lease, the trustee may not assume the lease unless, at the time of assumption of such lease, the trustee cures the defaults and provides adequate assurance of future performance under the lease.

55.    In addition, since the Demised Premises are located in a shopping center, Debtors/Buyer must meet heightened requirements of adequate assurance under section 365(b)(3)

16

of the Bankruptcy Code, which are intended "to protect the rights of lessors and the center's other tenants." *In re Joshua Slocum*, 922 F.2d at 1086. Pursuant to section 365(b)(3), the heightened requirements include:

- the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became lessee under the lease. *See* 11 U.S.C. § 365(b)(3)(A);

- that any percentage rent due under such lease will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);

- that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provisions, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and

- that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center. *See* 11 U.S.C. § 365(b)(3)(D).

56.    The Sears Lease clearly qualifies as "shopping center leases" under the Bankruptcy Code. *See Androse Assocs.*, 472 B.R. at 677 ("[C]ourts have interpreted the term [shopping center] on a case-by-case basis and generally consider, among other criteria, combination of leases, whether all leases are held by single landlord, presence of common parking area, existence of master lease, and contiguity of stores."); *L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 299 (3d Cir. 2000).

57.    Debtors bear the burden on adequate assurance issues. *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) ("[T]he lessor must be given adequate assurance of future performance so that it will be protected from having to take on the burden of a tenant who may be likely to default on his lease obligations . . ."); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

17

58.     To determine whether the requirements of adequate assurance of future performance will be satisfied, Debtors must provide, at a minimum, the following information with regard to Buyer Assignee or any other proposed assignee of the Sears Lease:

- The exact name of the entity which is going to be designated as the proposed assignee to the extent it is not Buyer or Buyer Assignee;

- Buyer Assignee's or any other proposed assignee's and any guarantor's tax returns and audited financial statements (or un-audited, if audited financials are not available) and any supplemental schedules for the calendar or fiscal years ending 2016, 2017, and 2018;

- The number of stores Buyer Assignee or any other proposed assignee operates and all trade names that Buyer Assignee or any other proposed assignee uses;

- A statement setting forth Buyer Assignee's or any other proposed assignee's intended use of the Demised Premises including any proposed subleases;

- Buyer Assignee's or any other proposed assignee's retail experience and experience operating stores in a shopping center or retail mall;

- Buyer Assignee's or any other proposed assignee's 2019 and 2020 business plans, including sales and cash flow projections;

- Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of assuming the Sears Lease and operating the Demised Premises; and

- A description of any proposed operations of Buyer Assignee or any other assignee and any proposed subtenant.

59.     As already noted in the Forbes Pending Objection, neither Debtors nor Buyer have provided Forbes with any information to prove (or even evaluate) adequate assurance of future performance under the Sears Lease.  In fact, adequate assurance has not even been addressed. Accordingly, Debtors have failed to satisfy their burden pursuant to section 365(b)(3) and the Sears Lease may not be assumed.

60.     Adequate assurance is even more crucial with regard to the Sears Lease because, as noted in the Pending Forbes Objection, Sears (and presumably Buyer or Buyer Assignee) has in

the recent past actively planned to sublease a large portion of the Sears Building to Dick's Sporting

Goods ("Dick's"), a national sporting goods retailer, and to not operate the Demised Premises.

Forbes has contested the validity of any sublease to Dick's based upon, among other things,

noncompliance with the Governing Documents. Any sublease to Dick's would also violate, among

other Bankruptcy Code provisions, section 365(b)(3)(D). Debtors have provided documents which

may evidence that they (or Buyer or Buyer Assignee) continue to intend to sublease to Dick's, but

no current disclosure has been made. Since Forbes has contended that such sublease violates the

Governing Documents, Debtors must demonstrate that either the Dick's Sublease (as defined in

the Pending Forbes Objection) is in compliance with the Sears Lease (and other Governing

Documents) or, if not, that Buyer (or Buyer Assignee) can fully perform all of its obligations under

the Sears Lease (and other Governing Documents) without the Dick's Sublease. It has not done

so.

## III.    RESERVATION AND PRESERVATION OF RIGHTS

61.    Particularly in light of the ambiguous and deficient nature of the Designation

Notice, Forbes expressly reserves its right to further amend, modify, and/or otherwise supplement

the Forbes Pending Objection, as amended by this Supplemental Objection, in whole or in part and

at any time, either by further submission to this Court, at oral argument, or by testimony to be

presented at any hearing in such regard. Forbes repeats and incorporates by reference all of its

objections contained in Forbes Pending Objection, all of which are expressly preserved.

## IV.    JOINDER

62.    In addition to the foregoing objections (and the objections contained in Forbes

Pending Objection), Forbes further joins in the objections filed by Debtors' other landlords

covering the same issues or subject matter as those addressed in this Supplemental Objection to

the extent that such objections are not inconsistent with the relief requested or positions taken in Forbes Pending Objection or this Supplemental Objection.

WHEREFORE, for all of the reasons contained in the Forbes Pending Objection and in this Supplemental Objection, Forbes requests that the Court deny any relief to Buyer or Debtors pursuant to the Designation Notice or otherwise and grant to Forbes such other and further relief as is just and appropriate.

CARSON FISCHER, P.L.C.

*/s/ Robert A. Weisberg*

Robert M. Carson (P11682)
Robert A. Weisberg (P26698)
4111 Andover Road, West - Second Floor
Bloomfield Hills, Michigan 48302
Telephone: (248) 644-4840
Facsimile:  (248) 644-1832
E-mail:     RCarson@CarsonFischer.com
            RWeisberg@CarsonFischer.com

May 2, 2019                                   *Counsel for Forbes/Cohen Florida Properties, L.P*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 2, 2019, I caused a copy of the foregoing pleading(s) to be served on all parties noticed by the Court's ECF electronic filing system and by U.S. Mail or email on the Standard Parties (as that term is defined in the Case Management Order) as further described and identified on the service list attached hereto.

*/s/ Robert A. Weisberg*

## <u>SERVICE LIST</u>

**I. Standard Parties**

| | |
|---|---|
| The Chambers of the Honorable Judge Robert D. Drain<br>U.S. Bankruptcy Court for the Southern District of New York<br>300 Quarropas Street, Room 248<br>White Plains, New York 10601 | Via First Class Mail |
| The Debtors, c/o Sears Holdings Corporation<br>Attn: Stephen Sitley Esq., and Luke J. Valentino, Esq.<br>3333 Beverly Road Hoffman<br>Estates IL 60179<br>luke.valentino@searshc.com | Via First Class Mail |
| Weil, Gotshal & Manges LLP<br>Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garret A.<br>Fail, Esq., and Sunny Singh, Esq.<br>767 Fifth Avenue<br>New York, New York 10153<br>ray.schrock@weil.com<br>jacqueline.marcus@weil.com<br>garrett.fail@weil.com<br>sunny.singh@weil.com | Via ECF System |
| The Office States Trustee for Region 2<br>Attn: Paul Schwartzberg, Esq.<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>paul.schwartzberg@usdoj.gov | Via First Class Mail |
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Attn: Paul D. Leake, Esq., Shana A. Elberg, Esq., and George R.<br>Howard, Esq.<br>4 Times Square New York, NY 10036<br>Paul.Leake@skadden.com<br>Shana.Elberg@skadden.com<br>George.Howard@skadden.com | Via ECF System |
| Davis Polk & Wardell LLP<br>Attn: Marshall S. Huebner, Esq. and Eli J. Vonnegut, Esq.<br>450 Lexington Avenue<br>New York, NY, 10017<br>marshall.huebner@davispolk.com<br>eli.vonnegut@davispolk.com | Via ECF System |

Cleary, Gottlieb, Steen & Hamilton LLP          Via ECF System
Attn: Sean A. O'Neal, Esq., Luke A. Barefoot, Esq.
One Liberty Plaza
New York, NY, 10006
soneal@cgsh.com

Kelley Drye & Warren LLP                        Via ECF System
Attn: Eric R. Wilson, Esq., Benjamin D. Feder, Esq., and T.
Charlie Liu, Esq.
101 Park Avenue
New York, NY 10178
wilson@kelleydrye.com
bfeder@kelleydrye.com

Seyfarth Shaw LLP                               Via ECF System
Attn: Edward M. Fox, Esq.
620 Eighth Avenue
New York, NY 10018
emfox@seyfarth.com

Carter Ledyard & Milburn LLP                    Via ECF System
Attn: James Gadsden, Esq.
2 Wall Street
New York, NY 10015
gadsden@clm.com

Locke Lord LLP                                  Via ECF System
Attn: Brian A. Raynor, Esq.
111 South Wacker Drive
Chicago, IL 60606
braynor@lockelord.com

Akin Gump Strauss Hauer & Feld LLP              Via ECF System
Attn: Philip C. Dublin, Esq., Ira Dizengoff, Esq., and Sara Lynne
Brauner, Esq.
One Bryant Park
New York, NY 10036
pdublin@akingump.com
idizengoff@akingump.com
sbrauner@akingump.com

## I. Other Service Parties

Transform Holdco, LLC                           Via First Class Mail
c/o ESL Partners, Inc.
Kunal S. Kamlani & Harold Talisman
1170 Kane Concourse, Suite 2
Bay Harbor Islands, FL 33154