Eiseman Levine Lehrhaupt & Kakoyiannis
Laurence May, Esq.
805 Third Avenue
New York, New York 10022
Telephone: (212)752-1000
Email: Lmay@eisemanlevine.com

*Attorneys for K-Bay Plaza, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**SUPPLEMENTAL OBJECTION OF K-BAY PLAZA, LLC TO DEBTORS' NOTICE OF CURE COSTS (ECF 1731) AND NOTICE OF ASSUMPTION AND ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES (ECF 3298)**

**TO: THE HONORABLE ROBERT D. DRAIN, U.S.B.J.:**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); Service Live Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859);Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC(8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

K-Bay Plaza, LLC ("Landlord") by its attorneys Eiseman Levine Lehrhaupt & Kakoyiannis PC, as and for its supplemental objection to the *Notice of Cure Costs And Potential Assumption And Assignment of Executory Contracts And Unexpired Leases In Connection With Global Sale Transaction* (ECF 1731, the "Original Notice") of Sears Holdings Corporation *et al.* ("Debtors") and in response to the *Notice of Assumption and Assignment of Additional Designatable Leases* (ECF 3298, the "Assumption and Assignment Notice") respectfully represents and states as follows:

1. Landlord is the owner and lessor of real property located at 300 Baychester Avenue, Bronx, New York (the "Leased Premises") which is the subject of a lease dated November 18, 1993 with Kmart Corporation (the "Lease"). The Lease was included on Exhibit B to the Original Notice as one which the Debtors might at some future unspecified time assume and simultaneously assign to a newly formed entity identified in the "Notice of Successful Bidder and Sale Hearing" (ECF 1730) as Transform Holdco LLC ("Buyer"). Exhibit B described the Lease on line number 7654 as for store 315. According to the Exhibit, the counterparty to the Lease was Sam Shalem who is not the lessor but an officer of K-Bay Plaza, LLC. The Exhibit stated that the Lease terminates on November 30, 2019.[2]

2. Landlord filed an objection to the Original Notice (ECF 1824, the "Original Objection") which is incorporated herein. In its Original Objection, Landlord took exception to the Debtors' proposed cure amount of $302,203. The amount required to cure monetary defaults under the Lease was in excess of $1,300,000 and included, but was not limited to, the Debtors

---

[2]  The Landlord does not dispute that by its terms the Lease terminates on November 30, 2019. In December of 2018, Kmart Corporation ("Kmart") sent a notice of its intent to exercise a five year option to renew the Lease. Landlord immediately notified Kmart by letter that the notice was untimely, and the option right had expired before it was purportedly exercised. Kmart never responded to Landlord's. We understand the description of the Lease on Exhibit B of the Original Notice to be a conclusive acknowledgement that the Lease term has not been extended.

2

failure to replace the roof on the Leased Premises.[3] Landlord reiterated in its Original Objection that on November 30, 2018, it had sent the Debtors a written notice that the tenant was in default of its maintenance obligations under Article 11A of the Lease and was obligated to replace the roof, which was over twenty-five years old and past its useful life. The Lease provided Kmart with thirty days to commence the roof replacement. To date neither Kmart nor the Buyer have taken any steps to replace the roof.

3. The Original Objection also identified defaults under Articles 16A and 25 of the Lease, which would have to be cured as a condition of assumption and assignment. These provisions required the tenant to obtain full replacement value insurance for the Leased Premises and not less than $5,000,000 in liability insurance (with the Landlord as a named insured) with a solvent and responsible A rated insurance company, if either Kmart's net worth did not exceed $200,000,000 or if it no longer was a publicly traded company.

4. Furthermore, based on the Landlord's review of the "Motion of Debtors For Authorization to (I) Continue, Maintain, and Renew Their Insurance Policies, etc." (ECF 17) and a certificate of insurance provided to Landlord, it appears that the total amount of property insurance for all of the Debtors' leased and owned real property is $50,000,000. A fire at one location might very well exhaust this wholly inadequate insurance coverage. In its default notice, the Landlord requested that Kmart provide it with copies of insurance policies so that it could determine if the insurance coverage meets the Lease requirements. The Debtors never responded to the request from which the Landlord concludes, unless proven otherwise, that the current insurance is inadequate and that its understanding as to the limits of coverage is correct. As a condition of the assumption of the Lease, the Buyer must cure these defaults by obtaining

---

[3]   In addition to the amount needed to replace the roof, as of the filing of this Supplemental Objection, the current tenant owes Landlord $207,190.22. This amount is broken down on Exhibit A attached hereto.

3

the insurance coverage required by the Lease. These defaults will not be cured by the proposed assignee continuing the same insurance programs as are currently in place. As it seems unlikely that the proposed assignee will have a net worth in excess of $200,000,000 and it will not be a public company, it cannot avail itself of the option to self-insure.[4]

5.   Since the filing of the Original Objection, two personal injury claims arising out of the Debtor's use of the Leased premises have been asserted against the Landlord, for which the tenant under the Lease is required to both defend and indemnify. Because the Tenant has a net worth of less than $200,000,000, it cannot self-insure and unless the proposed assignee meets this net worth threshold, it too cannot self-insure. In such circumstance, Article 25 of the Lease requires that the tenant provide Landlord with a $5 million insurance policy.

6.   Landlord is aware of at least three personal injury claims alleged to have occurred in the Leased Premises, which includes the two claims referred to in the immediately preceding paragraph. Two have ripened into lawsuits for which the current tenant is obligated to defend and indemnify the Landlord under the Lease. In fact, Landlord was notified recently, on April 8, 2019, that Kmart's insurer, ACE American Insurance Company ("ACE"), would not accept the tender of the defense in one of these suit, *Morales v. Kmart Corporation and K-Bay Plaza, LLC* pending in the New York Supreme Court, County of the Bronx, because the policy it issued to the Debtors had a $5,000,000 per occurrence deductible. ACE referred the Landlord to Sedgwick Claims Management Services, identified as the Debtors' third-party insurance administrator. Sedgwick also refused the tender claiming that because the Debtors were in chapter 11, the actions were stayed as to the Debtors (but not as to the Landlord) and in light of

---

[4]   The Buyer of the Debtors' assets was Transform Holdco, LLC. *See, e.g.* ECF 3008, among other documents on file which defines Transform Holdco LLC as such. The proposed assignee of the Lease, however, is Transform Operating Stores LLC and there has been no information provided to the Landlord as to, among other things, its assets, projected operating income and net worth.

the Debtors' $5 million self-insurance retention, once a stay is no longer in effect, the tender might be rejected in any event.

7.      As things now stand, the Debtors effectively have no liability insurance. They are self-insuring in breach of their obligation under the Lease. This default must be cured as a condition of the assumption and assignment and the proposed assignee not only has to provide proof of insurance as required by the Lease, it also has to accept the tender of the defense in both actions. It cannot, insofar as the Lease is concerned, continue the current tenant's insurance program.

8.      The Assumption and Assignment Notice identified the Lease with an asterisk, and so the Lease is one of the "subset of Additional Designatable Leases" as to which a "Supplemental Cure Objection" was required in order to preserve all objections "notwithstanding anything in the Assumption and Assignment Order [ECF 3008], Sale Order or otherwise." To the extent that the proposed assignee, the Buyer or the Debtors contend that the defaults identified herein are not Cure Objections, and that is why the schedule attached to the Assumption and Assignment Notice states that with respect to the Lease, the "Proposed Cure" is "0" and represents that the "Counterparty's Asserted Cure" and the "Disputed Amount" are "N/A," the Landlord disagrees. These are defaults under the Lease and whether they are considered monetary or non-monetary, section 365(b)(1)(a) of the Bankruptcy Code prohibits the assumption (and thereafter its assignment) of an executory lease unless all defaults have been cured or adequate assurance is given that the defaults will promptly be cured.

9.      Further, the Assumption and Assignment Notice is somewhat confusing as to the nature of the objections to be raised in response to the notice. While it appears to address cure objections (*see, e.g.,* paragraphs 15 and 17 which define any new objection as either a "Revised

5

Cure Objection" or a "Supplemental Cure Objection"), paragraph 17 states that to "the extent that a counterparty is entitled to assert an additional objection to cure costs or to **assumption and assignment** that could not have been raised in its prior objection…such party shall file and serve such objection…no later than the "Objection Deadline." Paragraph 20 states that if no cure objections or "Restrictive Covenant Objection" is filed with respect to a lease by the Objection Deadline, then that date will be the effective date for the assumption of that lease, apparently without the assignee having to make a showing as to how it will cure or provide adequate assurance of a prompt cure of defaults or providing adequate assurance of future performance. For that reason, among others, Landlord reserves all grounds to object to the assumption and assignment of the Lease and submits that its objections herein, even if not deemed to be "cure objections" are properly raised.[5]

---

[5] In light of the conflicting provisions of the Assumption and Assignment Notice landlords have raised adequate protection objections, noting for example, that no showing of adequate information as to future performance has been provided, and that the prospective assignees are shell companies with no assets and their ability to operate under the leases is questionable. *See, e.g.,* Biltmore Commercial Properties I, LLC's Omnibus Objection (ECF 3413) in which Landlord joins.

10. Multiple counterparties have previously filed objections to the Assumption and Assignment Notice, and in their respective objections they have set forth the well established legal principles applicable to the assumption and assignment of executory agreements. *See, e.g.*, MCS Hemet Valley Center LLC's Objection to Notice of Assumption and Assignment of Additional Designatable Leases, etc. (ECF 3366); Supplemental Objection of the Kin Landlords With Respect to Notice of Assumption and Assignment of Additional Designatable Leases (ECF 3384). Landlord joins in those objections, to the extent applicable to this Objection.

Dated: May 2, 2019
       New York, New York

                                        Eiseman Levine Lehrhaupt &
                                        Kakoyiannis, P.C.

                                        By: /s/ Laurence May
                                            Laurence May, Esq.
                                            *Attorneys for K-Bay Plaza, LLC*
                                            805 Third Avenue
                                            New York, New York 10022
                                            Telephone: (212) 752-1000
                                            Facsimile: (212) 355-4608