David W. Dykhouse (dwdykhouse@pbwt.com)
PATTERSON BELKNAP WEBB & TYLER, LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Tel:  (212) 336-2000
Fax:  9212) 336-2222

Thomas J. Flynn (tflynn@larkinhoffman.com)
LARKIN HOFFMAN DALY & LINDGREN, LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437-1060
Tel:  (952) 835-3800
Fax:  (952) 896-3333

*Attorneys for MOAC Mall Holding LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) Chapter 11 |
| In re: | ) Case No. 18-23538 (RDD) |
| | ) |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) (Jointly Administered) |
| | ) |
| Debtors.[1] | ) |

**MOAC MALL HOLDINGS LLC'S SECOND SUPPLEMENTAL AND AMENDED:**

**(I) OBJECTIONS TO DEBTOR'S NOTICE OF ASSUMPTION AND ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES, AND**

**(II) OBJECTION TO DEBTOR'S STATED CURE AMOUNT**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows:  Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

MOAC Mall Holdings LLC ("MOAC"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the Notice of Assumption and Assignment of Additional Designatable Leases (Doc. No. 3298), and in support hereof states as follows:

## Preliminary Statement

1.      On October 15, 2018, Sears Holding Corporation and its affiliated Debtor entities (collectively, the "Debtor") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the U.S. Bankruptcy Court for the Southern District of New York.

2.      MOAC is the owner of property, a mall in Bloomington, MN, more popularly known as Mall of America. Sears is an anchor tenant in that building, under lease identified in the Debtor's motion as Store No. 1722.

3.      Debtor has ceased operations at Mall of America, and the store has gone dark.

## Procedural History

1.      An initial legal notice and proceeding concerning the Mall of America property was filed by the Debtor on January 23, 2019. Specifically, the Debtor served on MOAC a Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction (Doc. No. 1774). In that notice, Sears estimated the cure costs due at assumption to be $0.00. In addition, the Debtors gave virtually no information concerning the issues of adequate assurance of future performance (or really anything else relevant or related to the assumption and assignment).

2.      MOAC timely filed its objection to this initial notice, objecting to any such potential assumption and assignment on the basis that, *inter alia*, (i) the stated cure amount was incorrect; and (ii) the notice wholly lacked any information concerning adequate assurance of future performance as required by the Bankruptcy Code. That objection was filed as Docket

No. 2199. Moreover, MOAC expressly reserved its right to supplement and amend its objections and to amend its cure amount based upon additional information related to any actual assignment or assumption of its lease and any additional accrual of cure costs, including attorney's fees. Finally, MOAC (i) incorporated by reference all other landlord objections, to the extent consistent with MOAC's position, and (ii) otherwise reserved all rights and defenses relating to the assumption and assignment of the MOAC lease.

Debtor has now filed its new Notice of Assumption.  MOAC incorporates by reference its prior objections and states its amended, supplemental and additional objections below.

<u>OBJECTIONS</u>

A.    <u>The Debtors and Proposed Assignee Have Failed to Meet Their Burden Demonstrating Adequate Assurance of Future Performance</u>.

1.    MOAC objects to any proposed assumption and assignment of its Mall of America lease, unless and until the Debtors provide adequate assurance of future performance as to the Buyer and/or any other proposed assignee (at this time, Transform Leaseco, LLC, has been designated as the assignee). The Debtor must demonstrate such assignee's ability to comply with all requirements of Section 365, including, but not limited to, Sections 365(b)(3) and (d)-(f) of the Bankruptcy Code. Absent such a showing, the Bankruptcy Code requires denial of the proposed assumption and assignment.

2.    Under Section 365(f)(2) of the Bankruptcy Code, a lease may only be assigned if (i) the lease is assumed in accordance of the requirements Section 365(b)(1) of the Code and (ii) the moving party provides adequate assurance of future performance by the proposed assignee of the lease and its terms. (*See* 11 U.S.C. § 365(f)(2).) Section 365(b)(1) provides that if there has been a default in the unexpired lease, the trustee may not assume the lease unless, at the

time of assumption, the trustee cures the default and provides adequate assurance of future

performance under the lease. Moreover, Section 365(f)(2) provides that in order to assign a lease

under Section 365, adequate assurance of future performance by the assignee must be provided

whether or not there has been a default under the lease.

3.    The Debtor, and/or the proposed assignee, bears the burden on adequate assurance

issues. *See, e.g.*, *In re Bygraph, Inc,.* 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986). *See also In re*

*Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

4.    In addition, because Mall of America constitutes a shopping center[2], the Debtor

must meet specific requirements of adequate assurance under Section 365(b)(3) of the

Bankruptcy Code, which are intended to "protect the rights of lessors and the centers other

tenants." (*See, e.g.*, *In re Joshua Slocum,* 922 F.2d 1086 (3rd Cir. 1990).) Pursuant to

Section 365(b)(3), the specific requirements include:

- The source of the rent and other consideration due under such lease and, in case of

    an assignment, that the financial condition and operating performance of the

    proposed assignee and its guarantors, if any, shall be similar to the financial

    condition and operating performance of the debtor and its guarantors, if any, "as

    of the time the debtor became lessee under the lease." (*See* 11 U.S.C.

    § 365(b)(3)(A));

- The assumption or assignment of such lease is subject to all provisions thereof,

    including, but not limited to, provisions such as radius, location, use, or

    exclusivity provisions, and will not breach any such provision contained in any

---

[2] It is assumed that the Debtor takes no issue with the fact that MOAC and its lease premises
constitute a lease within a "shopping center," as it applies to this Section of the Bankruptcy
Code.

other lease, financing agreements or master agreement relating to such shopping

center. (*See, e.g.*, 11 U.S.C. § 365(b)(3)(C)); and

- The assumption or assignment of such lease will not disrupt any tenant mix or

   balance in the shopping center. (*See* 11 U.S.C. § 365(b)(3)(D).)

5.    It is the Debtor's and the proposed assignee's burden of proof to provide adequate

assurance of future performance. However, at no time has the Debtor in this case ever given

information whatsoever concerning the assignee's financial status or any other information

required to prove (or even to meaningfully allow MOAC to evaluate) adequate assurance of

future performance as required by the Bankruptcy Code. No declarations or financial information

has ever been given to MOAC, either informally or formally or in any motions, proceedings or

hearings concerning MOAC and its Sears lease.

6.    As indicated above, and in addition to the normal requirements of adequate

assurance, Section 365(b)(3)(A) also expressly requires that the party seeking assignment show

that the financial condition and operating performance of the proposed assignee is as good or

better than the Debtor "<u>as of the time the debtor became lessee under the lease.</u>" It is clear,

therefore, that it is the Debtor's and the proposed assignee's burden, and not the landlord's, to

demonstrate that the proposed assignee is in a comparable or better financial operational position

than Sears was <u>at the time it originally entered into its lease</u> in Mall of America on May 30,

1991. The Debtors have wholly failed to do this. In fact, as indicated, no evidence whatsoever

has been put forth or given to MOAC relating to the financial condition of the proposed assignee.

7.    There exists serious questions as to whether the assignee will have "sufficient

liquidity" to meet its post-closing obligations as well as its ability to pay cure costs and operate

in the manner required under the MOAC lease on a going-forward basis. (In fact, the assignee in

this case appears to be a shell corporation set up for assignment for the purpose of Debtor's

motion. If true, it appears that the proposed assignee may have no meaningful assets whatsoever.)

8.     Before this issue can be meaningfully evaluated, as an initial matter, the Debtor and the assignee must provide (at minimum) (i) actual or *pro forma* financial statements for the proposed assignee; (ii) projections showing the viability of the proposed tenant, along with supporting documentation and financial support; (iii) the proposed tenant's most recent business plan and cash flow projections; (iv) current financial statements, liquidity analysis, and forecast for the proposed tenant; (v) the specific intended use for the space; (vi) evidence of the tenant's insurance coverage for the premises; (vii) assurance of compliance with applicable requirements and obligations under the applicable lease (whether arising before or after assignment); and (viii) an analysis of the proposed tenant's credit quality and operating capabilities compared to those of Sears at the time the original lease was entered into. After this information is provided, MOAC can evaluate whether further information is needed, including other possible discovery.

9.     In addition, the Debtor has given no indication whatsoever of how the space in Mall of America will be used.  Currently, the entire space (three floors) has gone dark.  Any new assignee, however, must use the space according to the terms of the lease and may not let even a portion of the leased premises remain dark for any extended time under Section 365(b)(3)(D). (*See, e.g.*, *In re Rickel Home Centers, Inc.*, 240 B.R. 826 (1998).)[3]

10.     Accordingly, MOAC objects to the Notice of Assumption and Assignment of Additional Designatable Leases as wholly inadequate and contrary to and without meeting even the most minimal requirements of Section 365 of the Bankruptcy Code.

---

[3] There are also restrictions in the lease requiring any tenant to give a year's notice before shutting down operations on the third floor of the Sears lease at the Mall of America.  No such notice has been given, and any new assignee would be required to comply with these requirements, among others.

B.      The MOAC Lease Must Be Assigned *Cum Onere*.

1.      The assumption and assignment of the MOAC lease may not be consummated

unless all defaults on the lease have been cured and the leases are assumed and assigned in their

entirety. (*See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531 (1984).) "Should the debtor in

possession elect to assume the executory contract, however, it assumes the contract *cum onere.*")

2.      An executory contract may not be assumed in part and rejected in part. It is

axiomatic in that the trustee must either assume the entire contract or reject the entire contract.

Moreover, Section 365(b)(3) of the Bankruptcy Code further requires that assumption

assignment of any lease in a "shopping center" be subject to all of the provisions of the

applicable lease. (*See* 11 U.S.C. § 365(b)(3)(C).)

3.      As is customary for shopping center leases, MOAC's lease with Debtor include

various obligations beyond payment of rent, including the prorated portion of taxes due,

electricity charges and other utilities, common area maintenance charges, and the like. These

obligations include (a) payment of all accruing but unbilled charges on the lease, including, but

not limited to, all unpaid year end and other adjustments and reconciliations; (b) all insurance

requirements, and other contractual obligations under the lease; (c) any and all obligations

arising on account of "restrictive covenants"; and (d) rights of first refusal. Each of the surviving

obligations must be honored as a condition to the assumption and assignment of any lease,

including the MOAC lease with Sears.

4.      Any attempt by the Debtor to restrict, limit or eliminate these obligations are

prohibited under case law and by the Bankruptcy Code itself. *See, e.g.*, *Gouveia v. Tazbir,* 37

F.3d 295 (2d Cir. 1994). *See also Stream Sport Club, Ltd., v. Richmond,* 99 Ill.2d 182 (1983)

(Holding generally, easements "run with the land.").

5.      Moreover, the Debtor has the full burden of proving whether or not it can obtain

and assign the lease, free and clear of any obligations, under Section 365(f), as well as

Section 365, of the Bankruptcy Code. Accordingly, MOAC objects to the Designation Notice

(and any other orders, notices, brought before or issued by the court) to the extent that they

purport to permit the Debtor or its assignee to avoid any surviving obligations related to the

ongoing monetary and non-monetary obligations arising out of the MOAC lease with Sears.

C.      Any Assignment of Leased Real Property Must Be Subject to All Applicable Restrictive
        Covenants and Reciprocal Easement Agreements.

1.      Any assignment must also be subject to all restrictive covenants and easements.

Virtually all leases in shopping centers are subject to reciprocal easement agreements ("REAs").

These REAs are designed to facilitate the orderly operation of the mall and to maximize the

value of a shopping center for all parties. The MOAC lease specifically is subject to, and

incorporates by reference, the provisions of an REA, and other restrictive covenants.

2.      As an initial matter, the Debtor cannot sell free and clear of restrictive covenants

under applicable law, as such rights have been customarily found to be non-executory and to run

with the land. Moreover, any question regarding whether restrictive covenants run with the land

may not be decided in the context of a sale hearing, but instead must be addressed pursuant to a

separate adversary proceeding. *See, e.g.*, *In re Sabine Oil & Gas Corp.,* 547 B.R. 66 (Bankr.

S.D.N.Y. 2016), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F.App'x 64 (2d Cir. 2018). It is

clear, therefore, that restrictive covenants, REAs and other obligations running with the land

cannot be summarily stripped as a part of an assignment and assumption process. Any such

attempt by the Debtors in this case require relief that may only be obtained by an adversary

process and proceeding. This would include (i) notice by Debtor of what covenants the Debtors

are attempting to strip or delete and (ii) notice and opportunity to be heard, and allowing any

necessary discovery, and other commonly recognized procedures consistent with due process.

3.     MOAC, therefore, objects to the Designation Notice, and other related

assignments orders and applicable documents or proceedings, to the extent Debtor seeks such

assignment and assumption, to the extent that such transfer is not subject to all easements, REAs

and other restrictive covenants.

D.     <u>Debtors May Not Modify or Extend Their Rights Through an Assumption and
       Assignment of a Lease</u>.

1.     As discussed above, any assignee must take an assigned lease in its entirety. More

importantly, Section 365(b)(3) specifically requires that the Debtor show, as to any assignee,

"that assumption or assignment of such lease is subject to all the provisions thereof." *See* 11

U.S.C. §§ 365(b)(3), (c)-(d).

2.     The MOAC lease includes provisions applicable to construction and operation of

the premises, the uses to which the premises can be put, numerous and applicable REAs, and

other restrictive covenants. These, in turn, establish requirements relating to, *inter alia*, signage,

modification, restoration, and repair of the premises.

3.     Assumption and assignment of the MOAC lease requires compliance with terms

of the underlying lease, the applicable REAs, and applicable restrictive covenants. In short,

assignment pursuant to Section 365 for the Bankruptcy Code, does not permit the Debtors, or the

assignee, to rewrite the lease.

E.    <u>Second Supplemental and Amended Objection to Debtor's Stated Cure Amount</u>.

1.    MOAC objects to the Debtor's asserted cure amount in its exhibit to its Notice of Assumption and Assignment of Additional Designatable Leases.  That exhibit lists the current cure amount as $0.00.

2.    As indicated above, MOAC was served with a motion by the Debtor dated January 23, 2019, designated Supplemental Notice of Cure Cost and Potential Assignment and Assumption of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction (Doc. No. 1774). MOAC filed its objections to that motion (Doc. No. 2199). In addition to the objections, MOAC reserved its rights to expand upon, explain, amend, and seek additional cure amounts, including, but not limited to, attorney's fees, which all may accrue at the time of any actual assignment and assumption. MOAC reserved all its rights in that regard.

3.    Attached to this objection is **Exhibit A**, calculated by MOAC, concerning the cure amounts now due from the Debtor. That amount, through May 31, 2019, is $609,869.59. For the avoidance of doubt, the MOAC reserves the right to further supplement the cure amount for additional costs, expenses, and charges due, including attorney's fees, through the date of any actual assignment.[4]

<u>Joinder and Reservation of Rights</u>

MOAC reserves the right to make such other and further objections as may be appropriate as additional documentation and information is provided by the Debtor. MOAC specifically reserves all rights, remedies, and positions with respects to any proposed assignee

---

[4] Thus far, neither the Debtor nor the proposed assignee have contacted MOAC, or any of its appropriate business level personnel, to reconcile cure amounts. In addition, MOAC will be seeking to determine and establish cure amounts due to the Debtor's breach of its Mall of America lease, including, but not limited to, allowing its third floor of its premises to go dark in violation to its lease obligations.

including the right (i) to object to any proposed use or change use of any and all of the premises

once such assignee has been identified and (ii) to amend or update any cure amounts in

connection therewith. MOAC hereby joins in the objections filed by Debtor's other landlords and

the official committee of unsecured creditors, to the extent such objections are consistent

herewith.

Conclusion

Wherefore, MOAC respectfully request that the Court (i) deny the assumption and

assignment of the MOAC lease, unless and until the issues identified herein are addressed, and

fully satisfied, and (ii) grant such further relief as the court deems just and proper.


Dated:  May 2, 2019                    Respectfully submitted,

                                       Thomas J. Flynn (30570)
                                       Larkin Hoffman Daly & Lindgren, Ltd.
                                       8300 Norman Center Drive
                                       Suite 1000
                                       Minneapolis, Minnesota  55437-1060
                                       (952) 835-3300
                                       tflynn@larkinhoffman.com

                                       Admitted *pro hac vice* on December 26, 2018

Dated:  May 2, 2019                    */e/ David W. Dykhouse*
                                       David W. Dykhouse
                                       Patterson Belknap Webb & Tyler, LLP
                                       1133 Avenue of the Americas
                                       New York, New York  10036-6710
                                       (212) 336-2000
                                       mdwdykhouse@pbwt.com

                                       *Attorneys for MOAC Mall Holdings LLC*


11.

# EXHIBIT A
## Cure Amount Currently Due

**Sears Balance Due**

| Description | Amount | Comments |
|---|---|---|
| **Description** | **Amount** | **Comments** |
| 2018 Year-End Tax Adjustment | $475,507.38 | |
| 2018 Year-End Electric Adjustment | $53,229.01 | Tenant has already paid Post-Petition part of this |
| 2nd Quarter Electric Charge | $50,000.00 | |
| April Fixed CAM Charge | $0.00 | Tenant paid this on 4/29/19 |
| **Balance Due through 4/30/19** | **$578,736.39** | |
| May Fixed CAM Charge | $31,133.20 | |
| **Balance Due through 5/31/19** | **$609,869.59[1]** | |

4843-4309-3654, v. 5

---

[1] Does not include attorney's fees, which continue to accrue, and is subject to additional expenses, default cures, costs and accruals.

## CERTIFICATE OF SERVICE

I, Gina M. Rice, hereby certify that all ECF participants registered in this case were served electronically on the date of filing through the Court's ECF system at the email address registered with the Court. In addition, I hereby certify that on May 2, 2019, a copy of the foregoing was served via First Class Mail, postage prepaid, upon all those identified in accordance with this Court's Amended Order Implementing Certain Notice and Case Management Procedures entered November 1, 2018 as Docket No. 405, as follows:

Chambers of the Honorable Judge
Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street, Room 248
White Plains, New York 10601

Debtors
C/o Sears Holdings Corporation
Attn: Stephen Sitley, Esq. and
Luke J. Valentino, Esq.
3333 Beverly Road
Hoffman Estates, Illinois 60179

Weil, Gotshal & Manges, LLP
Attn: Ray C. Schrock, P.C.; Jacqueline
Marcus, Esq.; Garret A. Fail, Esq.; and
Sunny Singh, Esq.
767 Fifth Avenue
New York, New York 10153
*Attorneys for Debtors*

Locke Lord, LLP
Attn: Brian Raynor, Esq.
111 South Wacker Drive
Chicago, Illinois 60606
*Attorneys for the Pension Benefit
Guaranty Corporation*

Office of the United States Trustee for
Region Two
Attn: Paul Schwartzberg, Esq.
201 Varick Street, Suite 1006
New York, New York 10014

Kelley, Drye & Warren, LLP
Attn: Eric R. Wilson, Esq.; Benjamin D.
Feder, Esq.; and T. Charlie Liu, Esq.
101 Park Avenue
New York, New York 10178
*Attorneys for Computershare Trust
Company, N.A., as Trustee for the
Second Lien PIK Notes, the Holdings
Unsecured PIK Notes, and the Holdings
Unsecured Notes*

Skadden, Arps, Slate, Meagher & Flom, LLP
Attn: Paul D. Leake, Esq.; Shana A.
Elberg, Esq.; and George R. Howard,
Esq.
Four Times Square
New York, New York 10036
*Attorneys for Bank of America, N.A.,
administrative agent under the First Lien
Credit Facility and the DIP ABL Agent*

Seyfarth Shaw, LLP
Attn: Edward M. Fox, Esq.
620 Eighth Avenue
New York, New York 10018
*Attorneys for the Wilmington Trust,
National Association, as Indenture
Trustee for the Second Lien Notes*

Davis, Polk & Wardell, LLP
Attn: Marshall S. Huebner, Esq., and
Eli J. Vonnegut, Esq.
450 Lexington Avenue
New York, New York 10017
*Attorneys for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility*

Carter, Ledyard & Milburn, LLP
Attn: James Gadsden, Esq.
Two Wall Street
New York, New York 10015
*Attorneys for the Bank of New York Mellon Trust Company, as successor trustee for the SRAC Unsecured PIK Notes, SRAC Unsecured Notes, and the SRAC Medium Term Notes*

Cleary Gottlieb
Attn: Sean A. O'Neal, Esq.
One Liberty Plaza
New York, New York 10006
*Attorneys for JPP, LLC, as agent under the Second Lien Credit Facility, IP/Ground Lease Term Loan Facility, and the Consolidated Secured Loan Facility*

Akin, Gump, Strauss, Hauer & Feld, LLP
Attn: Philip C. Dublin, Esq.; Ira Dizengoff, Esq.; and Sara Lynne Brauner, Esq.
One Bryant Park
New York, New York 10036

Dated:  May 2, 2019

*/e/ Gina M. Rice*
Gina M. Rice
Larkin, Hoffman, Daly & Lindgren, Ltd.
8300 Norman Center Drive
Suite 1000
Minneapolis, Minnesota  55437-1060
(952) 835-3800

4835-1988-0085, v. 2