Niclas A. Ferland
Ilan Markus
LeClairRyan, PLLC
545 Long Wharf Drive, Ninth Floor
New Haven, Connecticut  06511
Telephone:  (203) 672-3212
Facsimile:  (203) 672-3231
ilan.markus@leclairryan.com

Counsel to Westfield, LLC and its
affiliates identified on Exhibit 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) | Case No. 18-23538 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SUPPLEMENTAL CURE OBJECTION AND RESTRICTIVE
COVENANT OBJECTION BY WESTFIELD, LLC AND CERTAIN
OF ITS AFFILIATES, PURSUANT TO NOTICE OF ASSUMPTION
AND ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES**

Westfield, LLC and its affiliates set forth on Exhibit 1 (collectively, the "Landlords"),

hereby submit this *Supplemental Cure Objection and Restrictive Covenant Objection, Pursuant*

*to Notice of Assumption and Assignment of Additional Designatable Leases* (the "Objection"),

and in support thereof, state as follows:

**I.      BACKGOUND**

1.      On October 15, 2016 (the "Petition Date"), the above-captioned debtors

(collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the

Southern District of New York (the "Court").

2.      The Landlords are the landlords and one or more of the Debtors are the tenants pursuant to unexpired leases (as amended and/or modified, the "Leases") of nonresidential real property (the "Premises") at shopping centers around the country.  Many of the Landlords are also parties to applicable reciprocal easement agreements or similar agreements.

3.      In response to motions filed earlier in the case by the Debtors that were seeking to, among other things, potentially assume and assign the Leases to the Proposed Assignee (as defined below), the Landlords were required – in order to preserve certain of their contractual and legal rights under the Leases and applicable law – to draft and file an objections to proposed cure amounts, adequate assurance of future performance, and other typical and atypical issues arising under the circumstances.  The most recent such objection was filed by the Landlords on January 26, 2019 (Docket No. 1991, the "Prior Objection").  The Landlords adopt and incorporate the Prior Objection as if fully set forth here, with the sole exception of cure amounts, which cure amounts are superseded by the amounts set forth in this Objection.

4.      Pursuant to, among other things, the *Notice of Assumption and Assignment of Additional Designatable Leases*, dated April 19, 2019 (the "Designation Notice"), the Debtors seek to assume and assign certain of their unexpired leases of real property, including the Leases, to Transform Holdco, LLC (the "Proposed Assignee").

## II.     SUPPLEMENTAL CURE OBJECTION

5.      Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an . . . unexpired lease of the debtor, the trustee may not assume such . . . lease unless, at the time of assumption of such . . . lease, the trustee" (A) cures, or provides adequate assurance that it will promptly cure such default, (B) compensates, or provides adequate assurance that it will

promptly compensate the landlord for actual pecuniary loss resulting from the default, and (C) provide adequate assurance of future performance under such lease.  11 U.S.C. § 365(b)(1).

6.      As set forth in more detail below, the Debtors have defaulted on their rent and other obligations under the Leases.  Accordingly, in order to assume those Leases, the Debtors are required to cure all defaults under the Leases and compensate the relevant Landlords for actual pecuniary loss as a result of such defaults.  11 U.S.C. § 365(b)(1)(A) and (B).

7.      As of the date of the filing of this Objection, but exclusive of (a) any amounts that may become outstanding thereafter, (b) interest, and (c) attorneys' fees, the proper 11 U.S.C. § 365(b) "cure" amounts for the Leases are as set forth in detail on the attached Exhibit 1 under the column heading "Revised Cure Amount" (the "Revised Cure Amounts").  The Revised Cure Amounts include unpaid monthly rent and related charges (that remained due as of the date of a few days prior to the filing of this Objection).

8.      In addition to the Revised Cure Amounts, and as set forth on Exhibit 1,  pursuant to the terms of the Leases and 11 U.S.C. § 365(b), the Court should award the Landlords interest and a reasonable amount for attorneys' fees actually incurred as a result of the Debtors' bankruptcy cases, including proceedings that specifically related to or may have impacted the Leases or the Landlords' rights thereunder (e.g., this Objection, the Prior Objection, the Debtors' motion to approve global procedures for assets sales and assumption and rejection of leases and the implementation of such procedures as they relate (or have the potential to relate to) the Leases.  In the context of the Leases and these cases, the attorneys' fees and costs incurred by the Landlords far exceeds the requested reimbursement amount.  See, e.g., Travelers Cas. & Su. Co. of Am. v. Pacific Gas and El. Co., 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating

attorneys' fees"); <u>In re East 44th Realty, LLC</u>, No. 07 Civ. 8799, 2008 U.S. Dist. LEXIS 7337

(S.D.N.Y. 2008) (affirming bankruptcy court's finding that a $1.7 million settlement of

attorneys' fees to a landlord was reasonable); <u>In re Beltway Medical, Inc.</u>, 358 B.R. 448, 453

(Bankr. S.D. Fla. 2006) ("Where the trustee or debtor-in-possession fails to perform the primary

obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain

payment, it follows that the attorney's fees, if authorized under the lease and linked to

enforcement of the payment obligation, are entitled to the same administrative priority as the rent

obligation"); <u>In re Entertainment, Inc.</u>, 223 B.R. 141, 152-154 (Bankr. E.D. Ill. 1998) (interest

and attorneys' fees must be paid as provided for in the assumed lease); <u>In re MS Freight

Distribution, Inc.</u>, 172 B.R. 976, 978 (Bankr. W.D. Wash. 1994) ("the legislative history of

[section 365(d)(3)] and the language of the section itself mandate that a lessor be paid interest,

late fees, and legal fees incurred in the first 60 days of the bankruptcy case").

### III. THE DEBTORS' REQUEST TO STRIKE CONTRACTUAL USE PROVISIONS AND SIMILAR RESTRICTIVE COVENANTS IN THE LEASES, AND ANY APPLICABLE EASEMENTS, RECIPROCAL EASEMENT AGREEMENTS, PERMITS, AND THE LIKE, IS CONTRARY TO BANKRUPTCY LAW AND MUST BE DENIED

9.      Under 11 U.S.C. § 365(b)(1), the Landlords are each entitled to "adequate

assurance" of future performance by the Debtors.  <u>In re Ionosphere Clubs, Inc.</u>, 85 F.3d 992, 999

(2d Cir. 1996) (section 365(b) is designed to ensure that parties receive the benefit bargained for

if a lease or contact is assumed).

10.      Paragraph 26 of the Assumption and Assignment Order provides, in relevant part:

> To the extent that the Debtors or any other party seek to assume and assign any
> real estate leases to which a Debtor is a party free and clear of any interests,
> covenants, or rights applicable to such real estate assets that limit or condition the
> permitted use of the property such as easements, reciprocal easement agreements,
> operating or redevelopment agreements, covenants, licenses, or permits
> (collectively, "Restrictive Covenants"), the applicable Designated Lease Notice

shall describe the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of the Designated Lease Notice to file and serve an objection thereto (the "Restrictive Covenant Objection Deadline").

11.     Paragraph 18 of the Designation Notice provides, in relevant part:

In accordance with paragraph 59 of the Sale Order and paragraph 26 of the Assumption and Assignment Order, Buyer intends to designate the Additional Designatable Leases for assumption and assignment free and clear of any interests, covenants, or rights applicable to such real estate leases to the extent the same limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") that are executory and do not run with the land.

12.     The Designation Notice purports to designate approximately 425 leases for assumption and assignment but, apart from the foregoing blanket statement, there is no detailed description of precisely which provisions are purportedly to be voided, no argument is offered as to whether such Restrictive Covenants (as defined in the Designation Notice) are part of executory contracts nor whether such provisions run with the land.  Based solely on this lack of detail, the request to void the Restrictive Covenants should be denied.

13.     The Landlords object to any effort to assume and assign any of the Leases free and clear of any Restrictive Covenants.  "The law is clear that a debtor who assumes a lease or other executory contract assumes the contract *cum onere*, without any diminution in its obligations or impairment of the rights of the lessor in the present or the future."  In re Texaco, Inc., 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000).

The [debtor] ... may not blow hot and cold.  If he accepts the contract he accepts it *cum onere*.  If he receives the benefits he must adopt the burdens.  He cannot accept one and reject the other.

In re Italian Cook Oil Corp., 190 F.2d 994, 997 (3d Cir. 1951).  The *cum onere* rule "prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement."

United Air Lines, Inc v. U.S. Bank Trust Nat'l Ass'n (In re UAL Corp.), 346 B.R. 456, 468 n. 11 (Bankr. N.D. Ill. 2006).

14.    To the extent that a Lease has corresponding easements, reciprocal easement agreements, operating or redevelopment agreements, or other covenants (collectively "REAs"), the REAs were entered into contemporaneously with the Leases, and/or are cross referenced and/or incorporated into each Lease, such that the REAs, together with the Leases, constitute and must be treated as integrated transactions which must be assumed, or rejected, in whole, as one agreement.

15.    Generally, to determine whether multiple agreement should be treated as one integrated agreement, court will determine the parties' intent by reviewing the four corners of the documents and deciding whether (i) the nature and purpose of the agreements are different; (ii) the consideration for each agreement is separate and distinct; and (iii) the parties' obligations under the agreements are interrelated.  In *In re Contract Research Sols., Inc.,* Case No. 12-11004, 2013 WL 1910286, at *4 (Bankr. D. Del. May 1, 2013), the court applied Florida law and the above factors in determining the "that the obligations in the [relevant documents] involve the same two parties and the same subject matter.  The language chosen by the parties shows that the Debtors' obligations and [the non-debtor contract counterparty] obligations are mutually dependent and interrelated."  Accordingly, the court concluded that the documents in question "are a single, indivisible agreement, unable to be severed for §365 purposes.  Accordingly, the [relevant documents] must be assumed or rejected in their entirety."  *Id.*, at 7.

16.    Furthermore, there are other parties to the REAs that likely have not been put on notice of the effort to void restrictive covenants in the REAs.  At a minimum, such additional counterparties must also be put on notice of this purported invalidation of Restrictive Covenants.

In order to sell property free and clear of an interest, applicable non-bankruptcy law must permit the sale of such property free and clear of such interest. *See* 11 U.S.C. § 363(f)(1).

> "[A] sale 'free and clear of liens and other interests' has no impact on restrictions of record that run with the land. . . . Clearly, 11 U.S.C.A. § 363(f) and Bankruptcy Rule 6004, which refer to the sale of land 'free and clear' from these 'interests,' are not intended to sever easements and other non-monetary property interests that are created by substantive state law. Indeed, absent the consent of the owner of the easement or the easement being in bona fide dispute, the Bankruptcy Code does not even allow the Bankruptcy Court to authorize a sale of the property 'free and clear' of an easement."

*In re Oyster Bay Cove, Ltd.*, 196 B.R. 251, 255-56 (E.D.N.Y. 1996).

17.    The Court must look to state law to determine the property rights held by the Debtors with respect to third parties. *See Tyler v. Ownit Mortg. Loan Tr., Series 2006-3*, 460 B.R. 458, 462 (E.D. Va. 2011).

18.    Generally, real property cannot be sold free and clear of a recorded restrictive covenant. Even if the Debtors were to reject the REAs, such rejection would not impact the issue of whether the REAs remain binding on the Property post-sale. *See Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994).

19.    In view of the foregoing, the request to void Restrictive Covenants must be denied by the Court.

## IV.    JOINDER

20.    The Landlords hereby join in the objection of any other similarly situated party in interest to the extent that such objection is not inconsistent herewith.

## V.    RESERVATION OF RIGHTS

21.    The Landlords reserve the right to supplement this Objection and reserve the right to raise any other objections to the proposed sale.

## VI.    REQUEST FOR EVIDENTIARY HEARING AND ESTABLISHMENT OF A DISCOVERY SCHEDULE

22.    Pursuant to Rule 6006(a) of the Federal Rules of Bankruptcy Procedure, assumption of leases initiates a contested matter under Rule 9014.  <u>See</u> Fed. R. Bankr. P. 6006(a) ("[a] proceeding to assume, reject, or assign an … unexpired lease, other than as part of a plan, is governed by Rule 9014").

23.    Rule 9014(c) contemplates the applicability of most of the discovery-related rules that govern adversary proceedings.  <u>See</u> Fed. R. Bankr. P. 9014(c).

24.    To the extent the Landlords, the Debtors, and the Proposed Assignee are not successful in resolving the issues raised herein by the time of the hearing on the assumption and assignment related relief requested by the Debtors with respect to the Leases (the "Relief Requested"), the Landlords respectfully ask this Court to use that hearing as a status conference to establish a discovery schedule and an appropriate date for a final evidentiary hearing on any proposed assumption and assignment of the Leases to the Proposed Assignee.

WHEREFORE, if this Objection has not been resolved in advance of the hearing on the relief, Landlords respectfully request that the Court enter an order:

a.  Sustaining this Objection; or

b.  Approving the assumption and assignment of the Leases only if consistent with this Objection; and

c.  Determining that the proper 11 U.S.C. § 365(b) "cure" amounts for the Leases (as of the date of the filing of the Objection) are as set forth under the "Total Revised Cure Amount" column on Exhibit 1;

d.  Preventing the assumption and assignment of any Leases and/or sale of any real estate free and clear of any Restrictive Covenants; or

e.  Establishing a fair and appropriate discovery and briefing schedule in advance of an evidentiary hearing on the contested assumption and assignment of the Leases to the Proposed Assignee and the related relief sought by the Debtors or Proposed Assignee; and

f.  Granting the Landlords such other and further relief as the Court deems appropriate.

Dated:  May 2, 2019
        New Haven, Connecticut                    **LECLAIRRYAN, A Professional Corporation**


                                        By: ___/s/ Ilan Markus_____
                                            Ilan Markus
                                            Niclas A. Ferland
                                            **LeClairRyan, PLLC**
                                            545 Long Wharf Drive – 9th Floor
                                            New Haven, Connecticut  06511
                                            Telephone:  (203) 672-3212
                                            Facsimile:  (203) 672-3231
                                            ilan.markus@leclairryan.com
                                            niclas.ferland @leclairryan.com

                                            Counsel to Westfield, LLC and its
                                            affiliates identified on Exhibit 1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2019, a copy of this Objection was sent to all Standard

Parties via (i) the Court's electronic filing system, and (ii) electronic mail.


Dated:  May 2, 2019
　　　　New Haven, Connecticut　　　　　　**LECLAIRRYAN, PLLC**


　　　　　　　　　　　　　　　　　　　　By: ___/s/ Ilan Markus_____
　　　　　　　　　　　　　　　　　　　　　　　　Ilan Markus