## GROUND LEASE

THIS INDENTURE OF LEASE ENTERED into this _30th_ day of _September_, 197_4_, by and between ALLEN B. KIPPER, a single man, and RAYMOND E. GROVE and AUDREY F. GROVE, his wife, 414 Mid-Continent Bank Building, Kansas City, Missouri 64112, hereinafter referred to as "Landlord," and MALAN CONSTRUCTION COMPANY, a Michigan corporation, of 17356 Northland Park Court, Southfield, Michigan 48075, hereinafter referred to as "Developer."

W I T N E S S E T H:

1.  Landlord does hereby lease and demise unto Developer, and Developer does hereby lease from Landlord, under the terms and conditions hereinafter set forth, the real estate described on "Exhibit A" attached hereto and made a part hereof as if set out herein in full.  Said property, together with all licenses, rights, privileges and easements appurtenant thereto, shall hereinafter collectively be referred to as "Demised Premises." Developer contemplates the development of a building project on the demised premises, which said project, including the improvements to be constructed thereon, is herein referred to as the "Project," and Developer further contemplates erecting a building on a portion of said premises, sometimes hereinafter referred to as "K-MART PREMISES," and leasing said building or buildings on said K-Mart premises to the S. S. KRESGE COMPANY, a Michigan corporation, which shall hereinafter be referred to as "Subtenant," and leasing other buildings or portions thereof for other businesses.  A copy of the proposed Sublease to the Subtenant, S. S. Kresge Company, is attached hereto, made a part hereof as "Exhibit B," portions of which are referred to and incorporated into this Ground Lease by reference thereto.

2.  The term of this Ground Lease shall commence on the first day of the month immediately following the date of commencement of construction of the K-MART Store for Subtenant, and the primary term of this Lease shall terminate ten (10) years from the

EXHIBIT C

date on which the primary lease term of Subtenant terminated in accordance with the terms thereof; Subtenant's primary term to be for a minimum of twenty-five (25) years; in addition to the said primary term of this Lease and notwithstanding the termination of its Sublease by Subtenant, Developer, if all of the terms and conditions of this Ground Lease to be performed by Developer shall have been performed, shall have eight (8) successive options to extend the term of this Lease for an additional five (5) years on each option, each such extended term to begin, respectively, upon the expiration of the term of this Lease or the expiration of the immediately preceding option period, as the case may be, and except as provided in paragraph 7 hereof, the said terms and conditions as herein set forth shall apply to each extended term. Developer must give five (5) months advance written notice to Landlord of exercise of each respective option.

3. Developer shall pay to Landlord, at such place as the Landlord shall designate in writing, as annual minimum rental the sum of Thirty-five Thousand Dollars ($35,000.00) payable in equal monthly installments on the first day of each calendar month for the entire term of this Lease and any extensions thereof.

4. In addition to the aforesaid annual minimum rental, Developer does hereby agree to pay to Landlord as additional rental twenty-five per cent (25%) of all additional rentals payable by Subtenant to Developer under the terms and covenants of "Exhibit B" attached hereto. It is understood that percentage rentals will be paid on gross sales in excess of Nine Million Two Hundred Thousand Dollars ($9,200,000.00) per lease year as the terms "gross sales" and "lease years" are defined in "Exhibit B." The additional rentals due to the Landlord, as stated herein, by the Developer shall be paid on or before

the 60th day following the expiration of each lease year. Land-
lord, or their agent, may inspect Subtenant's records of gross
sales annually, provided that such inspection shall be made at
Subtenant's principal office within five (5) months after the
receipt of said additional rentals, as provided in this Lease,
but such inspection shall be limited to the lease year immedi-
ately last past. Landlord shall hold in their confidence the
sales figures or other information obtained from Subtenant's
records.

5. It is contemplated by Developer to have the buildings
and site improvements completed and delivered to Subtenant with
due diligence and in compliance with any time requirement set
forth in "Exhibit B." In the event Subtenant terminates its
lease with Developer under the provisions of "Exhibit B," the
Developer shall thereupon have the option to terminate this
Lease by notice to the Landlord, provided that the Developer
leaves the demised premises free of any improvements whatsoever,
and the expense to so leave said premises as required herein
shall be borne by the Developer. Developer agrees that, prior
to constructing any improvements on said leased (demised)
premises, it will give evidence of financial ability to fully
pay for such improvements before contracts for such construction
shall be let.

6. At all times under this Ground Lease, Developer shall
keep Landlord insured against all statutory and common law
liabilities for damages on account of injuries to person or
property, including death, sustained by any person or persons
while within the said demised premises, in a policy or policies
in the amount of One Million Dollars ($1,000,000.00) with respect
to injury to any one person and in the amount of Three Million
Dollars ($3,000,000.00) with respect to any one accident or
disaster, and in the amount of Five Hundred Thousand Dollars
($500,000.00) with respect to damage to property, and Developer

does hereby indemnify and hold harmless the Landlord from any claim, demand, cause of action, expense of defense and court costs made or brought against the Landlord due to or arising out of, directly or indirectly, any act, event or occurrence allegedly occurring on the demised premises, or as the result of the activities of the Developer or Subtenant or any other person lawfully in possession or occupying the demised premises. All policies required by this paragraph shall bear endorsements to the effect that the Landlord shall be notified not less than twenty-five (25) days in advance of any modification or cancellation thereof.  Copies of such policies, as endorsed, or certificates evidencing the existence thereof, shall at all times be on deposit with the Landlord.  During construction of any improvements on the demised premises, the Developer shall carry builders' risk and liability insurance, naming the Landlord as insured thereon, in the amounts above set forth, with certifi- cates of such coverage to be placed on deposit with the Landlord before construction commences.  All premiums for any policy set forth in this paragraph 6 shall be paid in advance by the Developer, so that the same shall be in force and effect at  all times herein required.

7.  Developer does hereby guarantee to Landlord the addi- tional rental to be payable to Landlord by Developer under paragraph 4 of this Ground Lease shall be no less than the rate of Thirty Thousand Dollars ($30,000.00) per annum from the period commencing twenty-six (26) years from the commencement of the term of the said Sublease to Subtenant, as such commencement of said term to said Subtenant is provided for in "Exhibit B" at- tached hereto.  If the Subtenant shall exercise any of its options to extend the term of the Sublease, then Developer shall give notice to Landlord of the extension of said Sublease, which notice to Landlord shall not be less than five (5) months prior to the

expiration of the primary term of the Sublease or the expiration
of any then existing extension of said sublease term.  Regard-
less of the extension of the expiration date of the Sublease,
the Developer shall have, unless the last date of the Ground
Lease term shall be January 31 of any year, the option to extend
(or further extend as the case may be) the term of this Lease
for such period of time as shall cause the last day of the term
of said Lease to be the January 31 next succeeding the date
upon which the term of this Lease would expire but for the exer-
cise of this option.  This option shall be exercised by notice
to Landlord by the Developer not less than five (5) months prior
to the expiration of the term of this Ground Lease or extension
thereof.  All terms and conditions of this Ground Lease shall
remain in force and effect during such extension to the next
succeeding January 31, except for any options of extensions for
five-year terms otherwise that would have been available to the
Developer.

8.  Developer shall pay all real estate taxes and ad valorem
taxes and special assessments hereafter levied against said de-
mised premises and said project, and all construction, mainte-
nance and upkeep expenses during the term of this Lease, com-
mencing with the start of any construction of any improvements
on said demised premises.  All taxes or forms of governmental
revenue or excise taxes assessed against Developer, which may
be a lien against the title of the demised premises or any
right of occupancy thereof, shall be paid before the same shall
become delinquent, and the Developer shall evidence such payment
on demand by Landlord.

9.  The Developer shall observe and comply with all rules,
orders and regulations of the Federal, State and Municipal
governments or other duly constituted public authority affecting
said buildings and demised premises.  Developer shall cause the

lease premises to be maintained in a neat and clean condition at all times; in the event default under this provision pertaining to proper maintenance of the premises continues for fifteen (15) days after written notice thereof, the Landlord shall have the right to cure such default at the expense of the Developer.

10.  The Developer shall at all times insure buildings upon said premises (demised) against damage or destruction by fire or other casualties insurable under a standard extended coverage endorsement.  Said insurance shall be in an amount equal to the full replacement value of the permanent above-ground improvements.  All such policies shall bear endorsements to the effect that Landlord shall be notified not less than twenty-five (25) days in advance of modification or cancellation thereof.  Copies of such insurance policies or certificates evidencing the existence thereof, so endorsed, shall be promptly delivered to Landlord.  Irrespective of the cause thereof, Landlord shall not be liable for any loss or damage to said building resulting from any reason or cause whatsoever.  Landlord shall not be obligated nor required at any time to secure or pay for any insurance of any kind pertaining to the improvements of demised premises.  Landlord shall be named as an insured on all fire and extended coverage policies, and such policies shall provide that the proceeds payable thereunder shall be used for the restoration of the demised premises in satisfaction of Developer's obligation to rebuild, restore or repair the demised premises or the improvements thereon as herein contained or as required in "Exhibit B" attached hereto.  Annual estimates of cost of replacement shall be made by Developer and a copy filed with Landlord.

In the event that, at any time during the lease term, the permanent improvements then constituting Developer's buildings and site improvements shall be damaged or destroyed (partially

or totally) by fire, the elements or any other casualty, the Developer, at its own expense, promptly and with due diligence, shall repair, rebuild and restore the same as nearly as practicable to the condition existing just prior to such damage or destruction; provided, however, as a result of said damage or destruction during the last two years of the term of the Sub-lease, if Subtenant's fixtures, equipment or other property shall be damaged or destroyed in an amount exceeding $25,000.00, then Developer may terminate this Ground Lease by giving written notice to the Landlord within seventy (70) days thereafter, and Developer shall have an additional sixty (60) days within which to remove its property from the demised premises, and rental shall be paid for the period of time that the Developer continues to occupy the demised premises.  In the event of such termination, any insurance proceeds payable by reason of said loss or damage to the demised premises or improvements thereon. shall be made available for satisfaction of the outstanding balance on the mortgage, and Developer shall be required at the expense of Developer to clear and level remaining improvements completely to ground level, leaving said lease premises free of debris and any liens whatsoever, except current real estate taxes.

Notwithstanding any such termination of this Lease by Developer, as provided in this paragraph, Developer shall have the right to exercise any option to extend the term hereof to the next succeeding January 31, as provided hereinbefore in this Lease.

Each party hereto does hereby remise, release and discharge the other party hereto, and any officer, agent, employee or representative of such party, of and from any liability whatsoever hereafter arising from loss, damage or injury caused by fire or other casualty for which insurance (permitting waiver

of liability and containing the waiver of subrogation) is carried

by the party at the time of such loss, damage or injury to the

extent of any recovery by the injured party under such insurance.

11.  In the event all of the demised premises or project is

taken by condemnation or eminent domain by any public or quasi

public authority, or the points of ingress and egress to the

public roads substantially as depicted on "Exhibit D" be mate-

rially impaired by a public or quasi public authority, this Lease

shall terminate as of the date Developer shall be deprived thereof.

In the event that less than the whole but more than ten per

cent (10%) of Developer's buildings shall be taken by condemna-

tion or eminent domain by a public or quasi public authority,

Developer shall have the option to terminate this Lease as of

the date Developer shall be dispossessed from the part so expro-

priated by giving notice to Landlord of such election to termi-

nate within one hundred (100) days from the date of such dis-

possession.

In the event of a taking, by condemnation or eminent domain

by public or quasi public authority, of any portion of the

Developer's buildings, and this Lease shall not be terminated

as hereinabove provided, it shall continue as to that portion of

said building which shall not have been taken or expropriated,

in which event Landlord shall, from the proceeds of condemnation

or eminent domain, promptly and with due diligence restore said

building or buildings as nearly as practicable to complete units

of like quality and character as existed just prior to such tak-

ing or expropriation.  The annual minimum rental and other

charges shall abate during the period of demolition and restora-

tion, and thereafter the annual minimum rental and the dollar

amounts as set forth in paragraph 4 of this Lease shall be

reduced in proportion to the ground floor area of the part of

Developer's buildings so expropriated shall bear to the total

ground floor of said buildings prior to such expropriation or

taking.

-8-

Without limiting the foregoing, in the event that any of the land described in "Exhibit A" shall be expropriated by public or quasi public authority, Landlord shall make every effort to substitute equivalent and similarly improved lands contiguous to and properly integrated with the remainder of the site depicted on "Exhibit A." If Landlord shall be unable to substitute such lands and if one or more expropriations shall in total deprive Developer of the use of more than ten per cent (10%) of the land described in "Exhibit A," then, in such event, the Developer shall have the option to terminate this Lease at any time within thirteen (13) months after such deprivation becomes effective by giving notice to Landlord.

In the event this Lease shall be terminated pursuant to this article, any annual minimum rental and other charges paid in advance shall be refunded to Developer, and Developer shall have an additional sixty (60) days, rent free, within which to remove its property from the demised premises. In the event that at the time of any expropriation of Developer's buildings, Developer shall not have fully amortized expenditures which it may have made on account of any improvements, alterations or changes to its buildings, Landlord shall assign to Developer so much of any award payable as a result of such expropriation as shall equal the unamortized portion of Developer's said expenditures. Said unamortized portion of Developer's said expenditures shall be determined by multiplying such expenditures by a fraction, the numerator of which shall be the number of remaining years of the lease term at the time of such expropriation and the denominator of which shall be the number of remaining years of the lease term at the time such expenditures shall have been made plus the number of years for which the lease term may have been subsequently extended.

12.   The demised premises may be used by the Developer for any lawful purpose.   Developer may assign this Lease or sublet

the whole or any part of the demised premises, but said assign-
ment shall not in any way relieve the Developer of any of the
obligations, covenants or agreements herein agreed to by it.

13. If the rent reserved in this Lease, or any part
thereof, shall remain unpaid for a period of forty (40) days,
or if Developer shall be in default under any other provision
of this Ground Lease, and shall remain so for a period of forty
(40) days after notice to Developer, then Landlord, by giving
notice to Developer at any time thereafter during the continu-
ance of such default, may either (a) terminate this Lease or
(b) re-enter the demised premises, by summary proceedings or
otherwise, and expel Developer and remove all property therefrom
and relet said premises, if Landlord so desires in its sole
discretion, and receive the rent therefrom; provided the
Developer shall remain liable for all the rents required to
be paid under the terms of this Ground Lease, less the avails
of reletting, if any, after deducting therefrom the reasonable
costs of obtaining possession of said demised premises, and of
any repairs or alterations necessary to prepare it for relet-
ting. If any default of Developer (except the non-payment of
rent) cannot reasonably be remedied within forty (40) days
after notice of default, then Developer shall have additional
time as shall be reasonably necessary, to remedy such default
before this Ground Lease can be terminated or any other remedy
enforced by Landlord.

14. Landlord covenants, represents and warrants that it
has full right and power to execute and perform this Ground
Lease and to grant the estate demised herein, and that Developer,
on payment of rent and performance of the covenants and agree-
ments hereof, shall peacefully and quietly have, hold and enjoy
the demised premises and all the rights, easements, appurte-
nances and privileges belonging or in anywise appertaining thereto
during the lease term without molestation or hindrance of any

person whomsoever claiming by, through or under Landlord or the owner of the fee interest in the premises, and, at any time during the term hereby demised, if the title of Landlord shall fail or it be discovered that its title shall not enable Landlord to grant the term hereby demised, the Developer shall have the option, at Landlord's expense, to correct such defect or to annul and void this Lease with full reservation of its rights to damages, if any.

Landlord further covenants, represents and warrants that it is seized of an indefeasible estate in fee simple to the land described in "Exhibit A", which is attached hereto and made a part hereof, free and clear of any liens, encumbrances, restrictions and violations (or claim or notice thereof), except for current real estate taxes.

Landlord agrees with the Developer that Landlord shall not suffer, grant nor permit any liens or encumbrances to arise against the premises, except as specifically described, contemplated or permitted under this Ground Lease, except for current real estate taxes, and Developer's possession and right of use under this Ground Lease in and to the demised premises shall not be disturbed by the Landlord or any subsequent fee owner, unless and until Developer shall breach any of the provisions hereof, and Developer's right to possession hereunder shall have been terminated in accordance with the terms of this Ground Lease.

15. To enable Developer to obtain financing for the construction of the Subtenant's buildings and for subsequent enlargements, alterations or other construction on the demised premises, subject to the terms and conditions hereinafter set forth, Landlord shall execute any mortgages or security agreements or subordination agreements, secured by the premises or part thereof, and any improvements thereon, as may be required

-11-

by any lending institution (said term to include welfare and pension funds, both employer and employee) as a condition of making a loan to the Developer, and the Landlord agrees to execute, from time to time, such documents and forms of agreement as may be required by any lending institution as a condition of making a loan to the Developer, provided, however, that the Landlord shall not be required to execute any document that shall directly or indirectly impose personal liability upon the Landlord for the repayment of any loan made to the Developer.

The initial mortgage shall be for the property subleased to S. S. KRESGE COMPANY and shall not exceed the sum of Two Million Five Hundred Forty Thousand Dollars ($2,540,000.00). Developer covenants and agrees that the balance due on any such mortgage or mortgages on the property subleased to S. S. KRESGE COMPANY at the expiration of the said Subtenant's primary lease term shall not exceed ten per cent (10%) of the original principal amount of said mortgage and the entire principal of such mortgage (s) shall be payable not more than twenty-six (26) years from the date of occupancy by the Subtenant, as the "date of occupancy" is defined in "Exhibit B," unless the term of such sublease shall then have been extended to provide minimum rentals so that such mortgage (s) shall be paid in full on or before the expiration of such extended term of said sublease.

Subsequent real estate mortgages shall be for such portions of the demised premises as Developer deems advisable, for the purposes set forth above, and each such mortgage shall be to a lending institution (said term to include welfare and pension funds, both employer and employee) and shall not exceed a sum equal to either (a) the cost of such project as certified by Developer, in which case the mortgage shall contain a provision substantially stating that this mortgage is given to secure a construction loan to be made in installments in the future as

work progresses and that the mortgagee shall make installment advances only if satisfied that it is for work and/or materials utilized on the mortgaged premises (the mortgagee being specifically not liable for any installment payment not in fact utilized for said project) or (b) in the event of a non-construction mortgage, the cost of such project as certified by a certified public accountant.

Form and content of any such mortgage in which Landlord shall be requested to join shall be subject to the approval of Landlord, which approval shall not be withheld so long as the terms and provisions of such mortgage are consistent with the provisions hereof, and such mortgage, without limitation by reason of specifications containing provisions to the following effect;

(i) shall state that the Landlord and fee owner join therein solely and exclusively for the purpose of subordinating and subjecting their interest in the demised premises to the lien of such mortgage, and for no other purpose, and notwithstanding their inclusion as mortgagors therein without assuming any liability for the payment of the note or other indebtedness secured by such mortgage, or for the performance of any of the covenants or agreements contained in the note or other indebtedness of this mortgage;

(ii) shall provide that, in the event of the default in the performance or observance of any of the terms and conditions of the mortgage, or the note or other indebtedness secured thereby, the mortgagee shall give notice to the Landlord and fee owner, the same notices as required thereunder to be given to the mortgagor;

(iii) shall or may provide for the assignment to the mortgagee of the Sublease, and of any rents due and payable to the Developer under any sublease of the premises.

Should any party file a mechanic's lien or claim for mechanic's lien against said premises for any lienable item under the laws of the State of Missouri, said lien encumbrance shall not be considered a default under the terms of this Ground Lease if the Developer, within thirty (30) days after notice of such lien is given to Developer by Landlord, shall (a) deposit with Landlord or with PIONEER NATIONAL TITLE INSURANCE COMPANY one and one-half times the amount of the claim for mechanic's lien, or (b) furnish Landlord with an owner's commitment for title insurance guaranteeing over said lien or encumbrance, or (c) furnish Landlord with a certificate from the mortgage lending institution that there are adequate mortgage funds with which to satisfy said claim and it will withhold sufficient mortgage funds for the payment thereof.

16.   In the event Developer shall fail to pay any obligation or any mortgage or encumbrance affecting title to the demised premises and to which this Ground Lease may be subordinated, or if Developer shall fail to perform any obligation specified in this Ground Lease, then the Landlord may, but is under no legal obligation to do so, after the continuance of any such default for thirty (30) days after notice thereof by Landlord to Developer, pay said principal, interest or other charges, or otherwise cure such default on behalf of and at the expense of the Developer, and do all necessary work and make all necessary payments in connection therewith, and on demand, pay Landlord forthwith the amount of moneys so paid by Landlord, together with interest thereon at the rate of ten per cent (10%) per annum. Developer agrees to furnish Landlord within ten (10) days after receipt thereof a copy of any notice or order affecting the premises.

17.   The covenants contained in this Ground Lease are to be performed by the Developer and shall bind the Developer and the leasehold estate which the Developer owns in the demised

premises, but, in addition thereto, the Developer shall be
liable for the timely and full performance of the covenants of
this Lease in the following way, and not otherwise:

(a)  The Developer shall be primarily liable for the
payment of all rentals due under this Ground Lease until
such time as the Subtenant shall have accepted without
condition the improvements upon the demised premises and
the acknowledgment of the mortgagee of the Subtenant's
commitment to pay ground rental directly is subject to
default provisions under assignment of rentals to mortgagee.

(b)  The Developer shall be primarily liable for the
completion of the improvements on said demised premises,
free of any mechanic's liens or other liens or encum-
brances, except a first mortgage as otherwise provided in
this Ground Lease.

(c)  The Developer shall be primarily liable for the
furnishing of all insurance coverage required by the Ground
Lease until said improvements are accepted without condi-
tion by the Subtenant.

(d)  The Developer does hereby agree to indemnify and
hold harmless the Landlord from any and all claims, demands,
causes of action and judgments, including the expenses of
defense and court costs, brought against the Landlord, due
to or arising out of, directly or indirectly, any act,
event or occurrence occurring prior to the time that Sub-
tenant shall accept the improvements, without condition, to
be built on the demised premises according to "Exhibit B,"
except when caused by the misfeasance or non-misfeasance
of the Landlord.

(e)  Anything to the contrary notwithstanding, from and
after such time as (a) Developer, Landlord and Subtenants
enter into a written agreement to cause the Ground Lease
rentals hereunder to be paid directly to Landlord by

Subtenants, or indirectly through a rental collection agent,
which agreement Landlord hereby agrees to execute, and (b)
Subtenants indicate their acceptance of the premises by
delivery of a letter wherein Subtenants acknowledge that
their buildings have been constructed in accordance with
their Sublease, that the said Sublease is in full force and
effect and that no default exists thereunder, Developer shall
not be personally liable for any of the covenants and condi-
tions of this Ground Lease.

18.  At the expiration of the lease term by maturity or
earlier termination, as provided herein, Developer shall sur-
render the demised premises, together with alterations, additions
and improvements then a part thereof, in good order and condi-
tion, except for the ordinary wear and tear and loss or damage
by fire, the elements or other casualties.  All furniture and
trade fixtures installed in said building at the expense of
Developer or other occupant shall remain the property of Developer
or other occupant; provided, however, that any Sublessee, at the
expiration of the lease term by maturity or other termination of
the lease term under the terms of this Agreement, or at any time
or from time to time during the lease term, shall have the option
to relinquish the property rights with respect to such trade
fixtures (including but not limited to air conditioning, machinery
and lighting fixtures), which option shall be exercised by notice
of relinquishment to the Landlord, and from and after the exer-
cise of said option, the property specified in said notice shall
be the property of the Landlord.

19.  In the absence of any written agreement to the contrary,
if Developer should remain in occupancy of the demised premises
after the expiration of the lease term, it shall so remain as a
tenant from month to month, and all provisions of this Lease
applicable to such tenancy shall remain in full force and effect.

20.  If and in the event the Developer shall be in default

in the terms and conditions of this Lease, and if said default

is not corrected, as provided in paragraph 13 of this Lease,

and if Landlord shall elect to re-enter the demised premises,

as provided in (b) of paragraph 13 of this Lease, then, in such

event, the Landlord shall give written notice to the Developer,

MALAN CONSTRUCTION COMPANY, at 17356 Northland Park Court,

Southfield, Michigan 48075, of its intention to so re-enter the

demised premises, and then, upon such event, the Landlord shall

be entitled to possession of all of the leasehold property of

the Developer used in conjunction with the project, subject only

to outstanding rights of Subtenant and mortgagee, and no charge

or rent shall be made upon the Landlord for such occupancy, but

Landlord may receive a management fee in an amount customary to

receive in the area of the demised project, and said occupancy

by the Landlord shall continue until the default is fully cor-

rected.  In addition, the Landlord, if default is not cured as

provided in paragraph 13, may elect to terminate this Lease by

giving Developer thirty-five (35) days' written notice of failure

to comply with paragraph 13, that default has not been corrected

and announcing Landlord's intention to terminate all of De-

veloper's interest in and to the demised premises after the

expiration of thirty-five (35) days from mailing of such notices

by certified mail, postage prepaid, plainly addressed to

Developer at the address provided herein, and if said default

still remains uncured, then Landlord, at its option, may file

an affidavit with Developer stating that said default remains

uncured or uncorrected, and then Developer shall convey to Land-

lord or Landlord's assignee all of Developer's rights, interest

and title to the demised premises.

21.  Notices required under this Lease shall be in writing

and be deemed to be properly served if sent by certified or

registered mail to Landlord at the last address where rent was

paid, or to Developer at its principal office, or to any subsequent

address which Developer or Landlord may designate for such
purpose.

22. The necessary grammatical changes which will be re-
quired to make the provisions of this Lease apply (a) in the
plural sense, if there should be more than one Landlord, and
(b) to any Landlord which shall be either a corporation, an
association, a partnership, a trust, or an individual, male or
female, shall in all instances be assumed as though in each case
fully expressed. Unless otherwise provided upon termination of
this Lease under any of the articles thereof, the parties hereto
shall be relieved of any further liability hereunder except as
to acts, omissions or defaults occurring prior to such termina-
tion.

23. Landlord, upon request of Developer, shall execute
and deliver an Attornment Agreement as requested by S. S. KRESGE
COMPANY, as Subtenant, which Attornment Agreement will be in
the form substantially similar to "Exhibit C" attached hereto
and made a part hereof. Landlord, upon request of Developer,
shall execute and deliver Attornment Agreements from time to
time for the various subtenants of Developer, which shall be
substantially similar in form to said "Exhibit C."

24. Landlord shall pay all taxes and assessments heretofore
levied against the demised premises, but, as hereinbefore pro-
vided, beginning on the date Developer's obligation to pay rent
commences, the Developer shall pay all real estate taxes and
assessments levied against said demised premises, whether payable
during the term of this Lease or after the expiration of this
Lease. Any general real estate taxes for the last year of the
term of this Lease shall be appropriately prorated between the
parties.

25. The conditions, covenants and agreements contained in
this Lease shall be binding upon and inure to the benefit of the

parties hereto and their respective heirs, executors, adminis-
trators, successors and assigns.  All covenants and agreements
of this Lease shall run with the land.

26.  No payment by Developer or receipt by Landlord of a
lesser amount than the monthly rent herein stipulated shall be
deemed to be other than on account of the earliest stipulated
rent, nor shall any endorsement or statement on any check, or
letter accompanying any check, or payment as rent be deemed as
accord in satisfaction, and Landlord may accept such check or
payment without prejudice to Landlord's right to recover the
balance of such rent or pursue any other remedy provided in
this Ground Lease.

27.  This Lease sets forth all of the covenants, promises,
agreements, conditions and undertakings between the Landlord
and Developer concerning the demised premises, and there are
no covenants, promises, agreements, conditions or understand-
ings, neither oral nor written, between them other than as
herein set forth.  No subsequent alteration, amendment, change
nor addition to this Ground Lease shall be binding upon the
Landlord or Developer, unless reduced to writing and signed by
them.  "Exhibit B" which is attached hereto, is not made a full
part of this Lease, but only such parts of "Exhibit B" as are
referred to expressly in the terms of this Lease or incorporated
hereby, and any such additional provisions as are necessary to
properly interpret the incorporated provisions.

28.  Developer will not record this Lease without the
written consent of the Landlord; however, upon the request of
either party hereto, the other party shall join in the execution
of a Memorandum or "short form" of this Lease for the purposes
of recording.  Said Memorandum or "short form" shall describe
the parties, the leased premises and the term of the Lease and
shall incorporate the remaining terms and conditions of this

Lease by reference only, a copy of said Memorandum or "short form" of lease being attached hereto and marked "Exhibit E."

29.  Anything herein to the contrary notwithstanding, Developer shall not be obligated to commence construction of the K-MART store nor shall Developer incur any liability for the payment of rent hereunder unless and until each of the following conditions have been satisfied:

(a)  Landlord provides a certification from PIONEER NATIONAL TITLE INSURANCE COMPANY that Landlord holds title to all of the demised premises set out on "Exhibit A-1" hereof, in fee simple, free and clear of all liens and encumbrances with the exception of utility easements and rights-of-way, and that a valid Driveway Access Easement exists over, upon and across the portion of the demised premises set out on "Exhibit A-2" hereof, free and clear of all liens and encumbrances.

(b)  Landlord provides satisfactory evidence of proper zoning for use of the demised premises as a retail mercantile establishment.

(c)  Issuance to Developer of a building permit from the proper authority for the construction of the buildings set forth on "Exhibit D."

(d)  Developer and Subtenant executing the Sublease referred to herein as "Exhibit B" within ninety (90) days after the execution of this Lease.

(e)  Landlord has secured rights of access, ingress and egress, between the demised premises and the Interstate 29 service drive at the point depicted on the plot plan attached hereto as "Exhibit D."

30.  In addition to the aforesaid annual minimum rental as set forth in paragraph 3 and the additional rental pursuant to the S. S. KRESGE COMPANY Sublease as set forth in paragraph 4,

Developer does hereby agree to pay over to Landlord, as additional rental, twenty-five per cent (25%) of all percentage rents paid by any other subtenants to Developer under the terms and covenants of such subleases as Developer may from time to time enter into with other subtenants.  It is understood that percentage rentals will be paid on gross sales or such other method as may be agreed upon by Developer and such other subtenant and/or subtenants.  Nothing herein shall be construed to require Developer to pay additional rental on base rents received under such subleases or to require percentage lease clauses in such other subleases.  The additional rentals due to the Landlord, as stated herein, by the Developer shall be paid on or before the 30th day following the receipt of such percentage rentals, if any, by developer from subtenant.  Landlord, or its agent, may inspect such subtenant's records of gross sales annually, provided that such inspection shall be made at subtenant's principal office within four (4) months after the receipt of said additional rentals, as provided in this Agreement, but such inspection shall be limited to the lease year immediately last past.  Landlord shall hold in its confidence sales figures or other information obtained from subtenants' records.  Developer shall, on request, furnish Landlord a copy of all subleases.

31.  Developer warrants that the proposed Sublease of S. S. KRESGE COMPANY ("Exhibit B") contains the same terms and conditions that will be contained in the final Sublease between S. S. KRESGE COMPANY and the Developer except for "Exhibits A, A-1, B, C and D", which exhibits do not alter or modify the terms of said Sublease.  Developer will furnish Landlord with a copy of said exhibits when the final Sublease is executed between the Developer and S. S. KRESGE COMPANY.

32.  This Lease is made to correct certain terms and conditions contained in a Lease dated September 19, 1973, by and

between Allen B. Kipper, Raymond E. Grove and Audrey F. Grove,
as Landlord, and E. N. Maisel and Associates, as Developer, and
a letter of even date therewith addressed to Allen B. Kipper,
Raymond E. Grove and Audrey F. Grove and executed by E. N.
Maisel and Associates providing certain modifications in the
lease provisions.  The Lease and paragraphs 2 and 3 of the
letter of September 19, 1973, are declared null and void as of
the date hereof, and the parties to said Lease and letter con-
sent to cancellation thereof, all as set out on "Exhibit F"
attached hereto and made a part hereof.

IN WITNESS WHEREOF, the parties hereto have caused this
instrument to be executed on the day and year first above
written pursuant to the proper and lawful authority vested in
them as required by law.

LANDLORD:

_____
Allen B. Kipper

_____
Raymond E. Grove

_____
Audrey F. Grove

DEVELOPER:

MALAN CONSTRUCTION COMPANY

By_____
President

ATTEST:

_____
Secretary

STATE OF MISSOURI   )
                    ) SS.
COUNTY OF JACKSON    )

On this 30th day of September, 197 4, before me, the
undersigned, a Notary Public, personally appeared Allen B.
Kipper to me known to be the person described in and who executed
the foregoing instrument, and acknowledged that he executed the

-22-

same as his free act and deed.  And the said Allen B. Kipper

further declared himself to be single and unmarried.

IN WITNESS WHEREOF, I have hereunto set my hand and

affixed my official seal at my office in Kansas City, Missouri,

the day and year last above written.

*Elaine Lynn*

Notary Public

My commission expires *Aug 31, 1977* .

STATE OF MISSOURI   )
                    ) SS.
COUNTY OF JACKSON   )

On this *30th* day of *September* , 197*4* , before me, the

undersigned, a Notary Public, personally appeared Raymond  E.

Grove and Audrey F. Grove, his wife, to me known to be the per-

sons described in and who executed the foregoing instrument, and

acknowledged that they executed the same as their free act and

deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed

my official seal at my office in Kansas City, Missouri, the day

and year last above written.

*Elaine Lynn*

Notary Public

My commission expires *Aug 31, 1977* .

STATE OF MICHIGAN   )
                    ) SS.
COUNTY OF OAKLAND   )

On this *25th* day of *September* , 197*4* , before me

appeared *Robert A Lander* to me personally known, who being

by me duly sworn, did say that he is the President of Malan

Construction Company, a corporation, and that the seal affixed

to the foregoing instrument is the corporate seal of said corpora-

tion, and that said instrument was signed and sealed in behalf

of said corporation by authority of its Board of Directors, and

said _Robert A. Lanxer_ acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal at my office in _Southfield_ Michigan, the day and year last above written.

_Mabel Diane Buckholz_
Notary Public _Wayne County_
(Acting in Oakland County)

My commission expires _April 12, 1978_ .

EXHIBIT "A"

1. A tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33 Kansas City, Platte County, Missouri described as follows:  Commencing at the Northwest corner of said Northwest Quarter thence N 89° 31' 30" E along the North line of said Northwest Quarter a distance of 1,686.38 feet thence S 0° 25' 30" E a distance of 215.69 feet to the point of beginning.  Thence N 89° 34' 30" E a distance of 245.00 feet; thence N 54° 20' 00" E a distance of 85.58 feet; thence S 35° 40' 00" E a distance of 660.49 feet; thence S 0° 25' 30" E a distance of 148.26 feet; thence S 46° 26' 21" W a distance of 230.00 feet; thence S 43° 33' 39" E a distance of 200.00 feet; thence S 76° 16' 34" E a distance of 25.80 feet; thence S 20° 50' 00" W a distance of 82.00 feet; thence N 43° 33' 39" W a distance of 227.15 feet; thence S 74° 00' 29" W a distance of 249.04 feet; thence S 89° 34' 30" W a distance of 265.00 feet; thence N 0° 25' 30" W a distance of 925.33 feet to the point of beginning.  Containing 530,382 square feet or 12.176 acres.


and


2. A DRIVEWAY ACCESS EASEMENT – a tract of land located in the Northwest Quarter of Section 19, Township 51, Range 33, Kansas City, Platte County, Missouri described as follows: Commencing at the Northwest corner of said Northwest Quarter thence N 89° 31' 30" E along the North line of said Northwest Quarter a distance of 1,686.38 feet thence S 0° 25' 30" E a distance of 30.00 feet to the point of beginning.  Thence S 0° 25' 30" E a distance of 291.00 feet; thence S 89° 31' 30" W a distance of 42.03 feet; thence N 0° 31' 55" W a distance of 291.00 feet; thence N 89° 31' 30" E a distance of 42.57 feet to the point of beginning.  Containing 12,310 square feet or 0.283 acres.