**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-23538-rdd |
| SEARS HOLDING CORPORATION, *et al.* | Jointly Administered |
| Debtors. | |

-------------------------------------------------------------

**DECLARATION OF LORNE KUMER IN SUPPORT OF OBJECTION OF
DGI LS, LLC TO TRANSFORM HOLDCO LLC'S NOTICE OF
ASSUMPTION AND ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES**

I, Lorne Kumer, declare:

1. I am Vice President of DGI LS, LLC ("DGI" or the "Creditor"), a creditor of the above-captioned Debtors (the "Debtors" and each a "Debtor") with respect to the following premises (the "Premises"):

| **Creditor** | **Distribution Center** | **Location** | **Store #** |
|---|---|---|---|
| DGI LS, LLC | LogistiCenter | 2100 Center Square Road, Logan Township, NJ | 8835 |

2. I have been Vice President of DGI since 2016. In this capacity, I am responsible for asset management and am familiar with DGI's asset portfolio, documents, and business records.

3. This declaration is being submitted in support of the concurrently filed (i) *Objection of DGI LS, LLC to Transform Holdco LLC's Notice of Assumption and Assignment of Additional Designatable Leases* and (ii) *Supplemental Cure Objection of DGI LS, LLC to Transform Holdco LLC's Notice of Assumption and Assignment of Additional Designatable Leases* with respect to the proposed assumption and assignment of a lease (the "Lease") for the Premises between the Creditor, as landlord, on one hand, and a Debtor, Sears Roebuck and Co. ("Sears"), as tenant, on the other hand, to Transform Operating Stores LLC (the "Assignee"), which, upon information

and belief, is an affiliate of Transform Holdco LLC (the "Buyer"), and affiliate of ESL Investments, Inc.

4. As a result of my position, I (and those working under my direction) have access to, and am one of the custodians of, records of DGI as those books, records, and files relate to the use and occupancy of the Premises. If called upon to testify in this proceeding as to the matters set forth in this declaration, I could and would competently testify thereto since the facts set forth herein are personally known to me to be true, except as to matters stated to be upon information and belief, which matters I believe to be true.

5. Section 1.06 of the Lease (the Lease is attached hereto as Exhibit 1), entitled "Tenant's Permitted Use," provides the following as the sole permitted use of the Premises:

> Warehousing and distribution associated with delivery and pick-up of merchandise (the foregoing, the 'Intended Use'), ancillary office activities and all other lawful uses on a 24-hour, seven day work week.

Lease, p. 1.

6. Section 7.01 of the Lease, entitled "Use," provides as follows:

> The Premises may be used and occupied only for Tenant's Permitted Use (as defined in Section 1.06) and for no other purpose, without obtaining Landlord's prior written consent, which Landlord may deny for any reasonable business purpose. Tenant will comply with (i) all current and future statutes, laws, ordinances, orders, policies, rules and regulations of any federal, state, county or municipal governmental (or quasi-governmental) body, bureau, department, court or agency affecting the Premises (collectively, "Legal Requirements"), other than those Legal Requirements for which is Landlord is responsible to comply under this Lease and Legal Requirements related to the condition of the Premises which were violated as of the Commencement Date, and (ii) the Declarations except where expressly contrary to the terms of this Lease. Tenant will not perform any act or carry on any practices that are likely to injure the Parcel or the Premises or be a nuisance or menace, or disturb the quiet enjoyment of other tenants in the Parcel, including but not limited to equipment which causes vibration, use or storage of chemicals, or heat or noise which is not properly

2

> insulated. Tenant will not cause, maintain or permit any outside storage on or about the Premises.

Lease, p. 9.

7. Upon information and belief, if the Assignee were to use the Premises as a retail store instead of a distribution center, it would be in violation of one or more Legal Requirements (as defined in section 7.01 of the Lease), including zoning restrictions.[1]

8. Section 14 of the Lease, entitled "Auctions, Signs, and Landscaping," provides as follows:

> Tenant will not conduct or permit to be conducted any sale by auction on the premises. Landlord will have the right to control landscaping and approve the placement, size, and quality of signs pursuant to Exhibit E, "Sign Criteria." Tenant will not make alterations or additions to the landscaping and will not place any signs nor allow the placement of any signs, which are visible from the outside, on or about the Building or the Parcel, nor in any landscape area, without the prior written consent of Landlord, which consent shall not be unreasonably withheld. Any signs not in conformity with this lease or in accordance with the provisions of Exhibit E may be removed by Landlord at Tenant's expense.

Lease, p. 22.

9. Exhibit E to the Lease provides specific sign criteria that Sears must follow.

Lease, Exhibit E.

10. Section 12.02(B) of the Lease provides as follows:

> Tenant agrees to indemnity [sic], protect, defend and hold Landlord, its members, directors, officers, employees and agents, harmless from and against all claims, actions, losses, damages, costs,

---

[1] Upon information and belief, the Premises is located in what is referred to as a "Light Industrial" zone ("LI Zone") that would not permit retail use of the Premises. The Permitted Principal Uses within a LI Zone are as follows: "a. Freight terminals – Land; b. Body and collision repair, painting and refurnishing of motor vehicles; c. Limited light machinery manufacturing; d. Fabrication and assembly of metal products excluding 'the processing of metals from raw materials; e. Fabrication. of paper products, bakeries, bottling. canning, ice cream manufacturing, etc.; f. Fabrication of wood products; g. Research, testing or experimental laboratories; h. Executive or administrative offices; i. Warehousing; j. Outdoor storage of building supplies, contractors equipment, or crated or baled material in connection with a wholesale establishment. Excluded are: junk, scrap metals/materials, automobiles or other machinery or vehicles intended for dismantlement or demolition; k. Public Utility substations; l. Government uses." *See* the attached letter from the Logan Township Board of Adjustment, attached hereto as Exhibit 2.

3

> expenses (including, but not limited to, attorneys' fees and court costs) and liabilities (except to the extent caused by the willful or negligent acts or omissions of Landlord), arising out of actual or alleged injury to or death of any person or loss of or damage to property in or upon the Premises.

Lease, p. 20.

11. Section 13.01(B) of the Lease provides as follows:

> Tenant shall keep all sidewalks, loading docks and areas, and exterior stairways (if any) adjoining the Premises free of accumulation of dirt, rubbish, snow and ice.

Lease, p. 20.

12. DGI is currently aware of one claim relating to the Premises under which Sears is required to indemnify DGI. On March 31, 2017, plaintiff Jose Auli, through counsel, forwarded a letter to DGI's registered agents regarding an alleged incident at the Premises. The letter stated that, on March 17, 2017, as he was walking to his delivery truck parked at the Premises, Mr. Auli slipped and fell on ice while getting into his truck, hit his head on the pavement, and was taken to the hospital for treatment. There may also be additional potential claims that are unknown but the events at issue have already taken place.

13. As of the filing of this declaration, $56,216.13 is owed by Sears to the Creditor under the terms of the Lease. Attached as <u>Exhibit 2</u> is a summary reflecting this outstanding amount. The amount due under the Lease constantly varies, including when expenses accrue but are not yet billed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 2, 2019
       Toronto, Ontario

_____
LORNE KUMER