**Objection Date and Time: May 3, 2019 at 11:30 a.m. (Eastern Time)**
**Hearing Date and Time: May 8, 2019 at 10:00 a.m. (Eastern Time)**

BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 425-2700
Facsimile: (315) 425-2701
Kevin M. Newman
Scott L. Fleischer

*Attorneys for JPMG Manassas Mall Owner LLC*
*and Poughkeepsie Galleria LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-23538-rdd |
| SEARS HOLDING CORPORATION, *et al.* | Jointly Administered |
| Debtors. | |

-------------------------------------------------------------

### OBJECTION OF JPMG MANASSAS MALL OWNER LLC AND POUGHKEEPSIE GALLERIA LLC TO TRANSFORM HOLDCO LLC'S NOTICE OF ASSUMPTION AND ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES

JPMG Manassas Mall Owner LLC and Poughkeepsie Galleria LLC (each a "Creditor"; collectively, the "Creditors"), through their attorneys, submit this objection (the "Objection") to the *Notice of Assumption and Assignment of Additional Designatable Leases* (Dkt. 3298) (the "Notice") filed by Transform Holdco LLC (the "Buyer"). In support of this Objection, the Creditors respectfully submit as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## PRELIMINARY STATEMENT[1]

2.      Through the Notice, the Buyer is seeking the assumption and assignment by the Debtors of various agreements, including those under which the Creditors are counterparties, to its affiliate. However, the assumption and assignments are being proposed under many of the terms of the Sale Order and Assumption and Assignment Order which the Creditors spent significant time carving out of any assumption and assignment of their Agreements, and which had previously only applied to other agreements.

3.      There are numerous issues with the proposed assumption and assignment of the Agreements, including: (i) the Debtors and Buyer have not met their burden as it relates to adequate assurance of future performance under the Bankruptcy Code; (ii) any assumption and assignment of the Agreements must be *cum onere*, including that the Agreements must be taken as is and the conveyance of the Agreements cannot be free and clear of Restrictive Covenants; (iii) any assumption and assignment of the Agreements must provide for the proposed assignee being liable for accrued but unbilled and not yet due charges, adjustments, and/or reconciliations, regardless of when they accrues; (iv) disputes over the proposed cure amounts in the Notice should be adjourned for a short time as the parties work through any cure issues; and (v) any proposed waiver of Bankruptcy Rules 6004(h) and 6006(d) is unnecessary.

---

[1] Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to them in the Objection.

4.      The Creditors and Buyer, through counsel, have been discussing a potential resolution of the Objection but have yet to reach an agreement.

## BACKGROUND

5.      On October 15, 2018, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Court.

6.      The Creditors and certain of the Debtors (the "Debtors") are parties to various agreements, including an unexpired lease of nonresidential real property, an allocable share agreement, a maintenance agreement, and reciprocal easement agreements (the "Agreements") with regard to the following premises (the "Premises"):

| Creditor | Shopping Center | Location | Store # |
|---|---|---|---|
| JPMG Manassas Mall Owner LLC | Manassas Mall | Manassas, VA | 2395 |
| Poughkeepsie Galleria LLC | Poughkeepsie Galleria | Poughkeepsie, NY | 1333 |

7.      The Premises are located within "shopping centers" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990). For further detail in support of this statement, see the *Declaration of Geoffrey J. Langan in Support of Objection of JPMG Manassas Mall Owner LLC and Poughkeepsie Galleria LLC to Transform Holdco LLC's Notice of Assumption and Assignment of Additional Designatable Leases* ("Langan Declaration"), filed separately.

8.      On November 1, 2018, the Debtors filed a *Motion for Approval of Global Bidding Procedures* (Dkt. 429). On November 19, 2018, the Court entered the *Order Approving Global Bidding Procedures and Granting Related Relief* (Dkt. 816).

9.      An auction commenced on January 14, 2019. On January 18, 2019, the Debtors filed the *Notice of Successful Bidder and Sale Hearing* (Dkt. 1730) (the "Sale Notice"), which

3

identified the Buyer as the successful bidder at the auction.  The Sale Notice included a copy of the executed Asset Purchase Agreement (the "Proposed APA") and the Proposed Sale Order (Dkt. 1730, Ex. C).

10.     Pursuant to the Proposed APA and as set forth in the Cure Notice (defined herein), the Buyer was required to identify the executory contracts and unexpired leases that it intended to be assumed and assigned on the closing date by February 1, 2019.  All other leases were subject to the Buyer's designation rights.

11.     On January 18, 2019, the Debtor filed the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "Cure Notice") (Dkt. 1731).

12.     On January 31, 2019, the Creditors filed the *Limited Objection and Reservation of Rights of JPMG Manassas Mall Owner LLC and Poughkeepsie Galleria LLC to the Cure Costs Set Forth in the Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Dkt. 2241) (the "Cure Objection") in response to the Cure/Assignment Notice.

13.     On January 31, 2019, the Creditors filed the *Amended Limited Objection and Reservation of Rights of JPMG Manassas Mall Owner LLC and Poughkeepsie Galleria LLC to the Cure Costs Set Forth in the Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Dkt. 2253) (the "Amended Cure Objection") amending the Cure Objection.

14.     On January 31, 2019, the Creditors, among others, filed the *Limited Objection of JPMG Manassas Mall Owner LLC, Poughkeepsie Galliera LLC, Salmon Run Shopping Center, L.L.C. and S&R Company of West Seneca NewCo, LLC to the Debtors (1) Notice of Successful*

4

*Bidder and Sale Hearing; (2) Global Asset Sale Transaction; (3) Proposed Asset Purchase Agreement (4) Proposed Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (IV) Granting Related Relief* (Dkt. 2293) (the "Sale Objection") in response to the Sale Notice.

15.     The Cure Objection, Amended Cure Objection, and Sale Objection shall collectively be referred to as the "Prior Objections."

16.     On February 8, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (Dkt. 2507) (the "Sale Order")[2] approving the Buyer as the successful bidder at the auction.

17.     The Sale Order contains the following language adjourning all objections filed by, and reserving all rights of, certain creditors, including the Creditors, with respect to the relief granted in the Sale Order:

> provided that the objections filed to the proposed Cure Costs for the Contracts and Leases on the Initial Assigned Agreements list attached hereto as Exhibit A are preserved and will be treated in accordance with paragraph 29 of this Sale Order; provided further that: (i) all timely filed objections to the assumption and assignment of a Contract or Lease that is not an Initial Assigned Agreement, including, without limitation, as to adequate assurance of future performance and to the payment of all amounts due and owing and performance of all other obligations under a Contract or Lease, but not as to any other objections to approval of the Sale Transaction itself pursuant to section 363 of the Bankruptcy Code,

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Order.

are adjourned and all parties' rights as to such issues are fully preserved and will be determined if and to the extent the applicable Contract or Lease is designated for assumption and assignment pursuant to the procedures described in this Sale Order; (ii) no finding of fact or conclusion of law set forth herein with respect to the assumption and assignment of the Initial Assigned Agreements shall apply, be binding upon, be law of the case, or operate to collaterally estop any issue, with respect to the assumption and assignment of any other Contract or Lease, other than with respect to the Initial Assigned Agreements; (iii) no Contract or Lease with a Debtor other than the Initial Assigned Agreements as set forth in Exhibit A shall be part of the Acquired Assets unless and until assumption and assignment of such Contract or Lease is approved in accordance with the procedures in this Sale Order; (iv) notwithstanding anything to the contrary herein, including, without limitation, paragraphs M, R, FF.27, and 28, nothing in this Sale Order shall be a determination of the terms and conditions of the assumption and assignment of any Contract or Lease not on Exhibit A, including, without limitation, the Assignee's obligations in connection with the same; and (v) notwithstanding anything herein or in the Asset Purchase Agreement or any related document to the contrary, all parties' rights are fully reserved with respect to (x) all issues relating to the Buyer's, any other Assignee's and/or the Debtors' obligations to comply with all terms, conditions, covenants and obligations, whether related to the pre- or post-assignment period and (y) the issues set forth in clauses (a) and (b) of paragraph 59 of this Order (the "Reserved Lease Issues").

Sale Order, ¶ 3.

18.    Certain provisions of the Sale Order (e.g. paragraphs 36,[3] 37,[4] and 38[5]) govern parties' rights with respect to the potential future assumption and assignment of the Designatable Leases.

---

[3] Referencing future assumption and assignments.

[4] Referencing certain requirements for future assumption and assignment notices, including "information intended to provide the counterparty to the Designatable Lease with **adequate assurance of future performance** under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, if and only if such Designatable Lease is proposed to be assigned to a third party…" (emphasis added).

[5] Referencing certain requirements for future assumption and assignment notices, including that "the Buyer may designate any Designatable Lease or additional Contract for assumption and assignment in accordance with the terms of the Asset Purchase Agreement and this Order.  In such event, the Debtors shall file with the Court and serve

19.     Paragraph 35 of the Sale Order provides that, to the extent an objection to a proposed assumption and assignment cannot be resolved, "the Filed Objection will be determined by the Court (following request for a hearing by the Debtors and/or the Buyer and/or the applicable counterparty filed with the Court and on no less than ten (10) days' notice to the other party."  Paragraph 40 of the Sale Order has a similar provision with respect to a hearing on a contested assumption and assignment that cannot be resolved, but states that the "hearing date shall be no sooner than ten (10) business days following the date of filing of the Designated Lease Notice…unless…agree[d] otherwise."

20.     On March 15, 2019, the Debtors filed the *Notice of Assumption and Assignment of Additional Contracts and Designatable Leases* (Dkt. 2854) (the "Initial Assumption and Assignment Notice"), with a proposed order authorizing assumption and assignment of executory contracts and leases and establishing procedures for future assumption and assignments.

21.     On April 4, 2019, the Court entered the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (Dkt. 3043) (the "Assumption and Assignment Order").

22.     Paragraphs 26[6] and 27[7] of the Assumption and Assignment Order provide a procedure for the assumption and assignment of Additional Assigned Agreements, including the Agreements.

_____

on the applicable Designatable Contract Counterparty a Designated Lease Notice or Designated Additional Contract Notice, together with any applicable Assignment and Assumption of Lease or other applicable assignment agreement with respect to an Additional Contract.  **If the proposed Assignee is not the Buyer, the Debtors shall also deliver to the applicable Designatable Contract Counterparty…and…counsel…evidence of adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code with respect to the applicable Designatable Lease or Additional Contract that is proposed to be assumed and assigned to such assignee**" (emphasis added).

[6] "… Any party seeking to object to the…assumption and assignment of any Designatable Lease or Additional

23.    Paragraphs 28[8] and 29[9] of the Assumption and Assignment Order reserved the rights of contract counterparties whose agreements were not listed on the Initial Notice of Assumption and Assignment and that filed objections to previous notices.

24.    On April 12, 2019, the Debtors filed a notice extending the Designation Rights Period to May 3, 2019 for certain Designatable Leases.

---

Contract to a proposed Assignee that is not the Buyer on any basis other than the Cure Costs (including, but not limited to, objections to adequate assurance of future performance if such Designatable Leases are designated to a third party)…must…file a written objection in compliance with the Bankruptcy Rules and the Local Rules (a "Designatable Contract Assumption and Assignment Objection") with the Court, so that such objection is filed no later than eight (8) days after the later of the date on which (i) the applicable Designated Lease Notice or Designated Additional Contract Notice is filed with the Court and (ii) evidence of adequate assurance of future performance required pursuant to the preceding sentence is served on the applicable Designatable Contract Counterparty (the "Designatable Contract Assumption and Assignment Objection Deadline")…. To the extent that the Debtors or any other party seek to assume and assign any real estate leases to which a Debtor is a party free and clear of any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants"), **the applicable Designated Lease Notice shall describe the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish** and any non-Debtor counterparty to a Restrictive Covenant will have fourteen (14) calendar days from the filing and service of the Designated Lease Notice to file and serve an objection thereto (the "Restrictive Covenant Objection Deadline")" (emphasis added).

[7] "…If a timely objection is received and not resolved consensually the Court shall resolve such objection (following request for a hearing by the Debtors and/or the Buyer and/or the applicable counterparty filed with the Court and on **not less than ten (10) days' notice to the other party**) and the Assumption Effective Date for such agreement shall be five (5) Business Days following the resolution of any such objection…" (emphasis added).

[8] "Notwithstanding anything herein to the contrary: (i) all timely filed objections to the assumption and assignment of a Contract or Lease that is not listed on the list of Additional Assigned Agreements attached hereto as Exhibit 1,…are adjourned and all parties' rights as to such issues are fully preserved and will be determined if and to the extent the applicable Contract or Lease is designated for assumption and assignment pursuant to the procedures described in the Sale Order and paragraphs 26 and 27 of this Assumption and Assignment Order and (ii) no Contract or Lease other than as set forth in Exhibit 1 shall be part of the Acquired Assets unless and until (a) the Bankruptcy Court enters an order approving the assumption and assignment of such Contract or Lease, and such Contract or Lease is so assumed and assigned or (b) the assumption and assignment of such Contract or Lease becomes effective pursuant to the terms of paragraphs 26 and 27 hereof."

[9] "Unless and until the assumption and assignment of a Contract or Lease becomes effective pursuant to the terms of paragraphs 26 and 27 hereof (i) nothing in this Order or the Sale Order shall be a determination of the terms and conditions of the assumption and assignment of any Contract or Lease not included in Exhibit 1, including, without limitation, the Assignee's obligations in connection with the same; (ii) no finding of fact or conclusion of law set forth herein or in the Sale Order with respect to the assumption and assignment of the Additional Assigned Agreements shall apply, be binding upon, be law of the case, or operate to collaterally estop any issue with respect to the assumption and assignment of any other Contract or Lease; and (iii) all parties' rights with respect to the Reserved Lease Issues are fully preserved."

25.    On April 19, 2019, the Buyer filed the Notice identifying certain agreements, including those between the Debtors and Creditors, that are proposed to be assumed and assigned to affiliates of the Buyer.

## OBJECTION

26.    Each of the Prior Objections and the Langan Declaration are fully incorporated herein by reference.

A.    *Adequate Assurance of Future Performance Has Not Been Provided for the Specific Assignee Entity*

27.    Pursuant to Section 365 of the Bankruptcy Code, assumption and assignment requires adequate assurance that an assignee has the ability to perform under the terms of the Agreements and satisfies the requirements of sections 365(b)(3) and 365(l) of the Bankruptcy Code.  11 U.S.C. §§ 365(b)(1)(C), (b)(3), (f)(2) and (l).

28.    In assessing whether a lease is a lease of real property in a shopping center in the context of a proposed assumption and assignment, courts generally consider the following criteria:

> (a) A combination of leases; (b) All leases held by a single landlord; (c) All tenants engaged in the commercial retail distribution of goods; (d) The presence of a common parking area; (e) The purposeful development of the premises as a shopping center; (f) The existence of a master lease; (g) The existence of fixed hours during which all stores are open; (h) The existence of joint advertising; (j) Contractual interdependence of the tenants, as evidenced by restrictive use provisions in their leases; (k) The existence of percentage rent provisions in the leases; (l) The right of the tenants to terminate their leases if the anchor tenant terminates its lease; (m) Joint participation by tenants in trash removal and other maintenance; (n) The existence of a tenant mix; and (o) The contiguity of the stores.

*In re Joshua Slocum, Ltd.*, 922 F.2d at 1087-88.

29.     Unlike a typical lease assignment, "an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." *In re Joshua Slocum Ltd.*, 922 F.2d at 1086.  Therefore, shopping center landlords are afforded "special protection" from debtors' attempts to assign a shopping center lease without first providing adequate assurance of future performance.  *See In re Trak Auto Corp.*, 367 F.3d 237, 243 (4th Cir. 2004); see also 11 U.S.C. §§ 365(b)(1), (3) and (f).

30.     "The Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of real property in shopping centers.  *In re Ames Dep't Stores, Inc.*, 348 B.R. 91, 94 (Bankr. S.D.N.Y. 2006); *see also In re Joshua Slocum Ltd.*, 922 F.2d at 1086 (citing 11 U.S.C. § 365(b)(3)); *In re Heilig-Meyers Co.*, 294 B.R. 660, 662 (Bankr. E.D. Va. 2001). The purpose of these heightened restrictions is based upon the "recogni[tion] that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." *In re Ames Dep't Stores, Inc.*, 348 B.R. at 94).

31.     Whether in the context of an assumption (see 11 U.S.C. § 365(b)(1)) or an assignment (see 11 U.S.C. § 365(f)(1)), "the 'adequate assurance of future performance' must include specific assurances that are spelled out in the Code" (*In re Trak Auto Corp.*, 367 F.3d at 243), including adequate assurance

> a.    "(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and

its guarantors, if any, as of the time the debtor became the lessee under the lease;

b.  (B) that any percentage rent due under such lease will not decline substantially;

c.  (C) that assumption and assignment is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center;

d.  (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center."

11 U.S.C. § 365(b)(3).

32.     The party seeking to assume and assign bears the initial burden of proving adequate assurance of future performance.  *See In re Vitanza*, 1998 Bankr. LEXIS 1497, at *50 (Bankr. E.D. Pa. Nov. 13, 1998); *see also Sea Harvest Corp. v. Riviera Land Co*., 868 F.2d 1077, 1080 (9th Cir. 1989); *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 269 B.R. 139, 166 (D. Md. 2001); *In re Great NW Recreation Center, Inc*., 74 B.R. 846, 853 (Bankr. Mont. 1993) (*citing Richmond Leasing Co. v. Capital Bank, N.A*., 762 F.2d 1303, 1309-10 (5th Cir. 1985)); *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. Jan. 24, 1990).

33.     Section 365(l) of the Bankruptcy Code provides:

If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

34.     Both of the Premises are located in "shopping centers" as that term is used in § 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.2d at 1086-87; *see also* Langan Declaration, pp. 2-4.

35.     The Manassas Mall, purposefully developed as a shopping center, is a climate controlled indoor mall shopping center with approximately 932,000 square feet of retail space. Its tenants primarily engage in the commercial retail distribution of goods and has shared parking areas, common area maintenance, common hours, and contiguous stores with a strategic tenant mix.  Additional factual support can be found in the Langan Declaration.

36.     The Poughkeepsie Galleria, purposefully developed as a shopping center, is a climate controlled indoor mall shopping center with approximately 1.2 million square feet of retail space.  Its tenants primarily engage in the commercial retail distribution of goods and has shared parking areas, common area maintenance, common hours, and contiguous stores with a strategic tenant mix.  Additional factual support can be found in the Langan Declaration.

37.     The only purported adequate assurance information that was provided relates to the Buyer and its affiliates generally, but the Buyer's affiliates, which are newly formed entities, are the actual proposed assignee entities.[10]  The Creditors therefore have no information as to the financial wherewithal, business plan, management structure, or any other indicia of whether the proposed assignee entities will be able to perform the Debtors' obligations under the Agreements.  As a result, the Debtors and Buyer have not met their burden of providing adequate assurance of future performance under the Bankruptcy Code and the Creditors hereby request a

---

[10] The Creditors request confirmation that the Debtors are proposing to assign the Agreements to Transform Operating Stores LLC as it appears from the Notice.

guaranty from a solvent entity or a suitable letter of credit under section 365(l) of the Bankruptcy Code.

> B. *Assumption and Assignment and Sale Must be Cum Onere*

38.      It is well settled that a debtor seeking to assume a lease must do so *cum onere*, accepting both its benefits and burdens, "without any diminution in its obligations or impairment of the rights of the lessor in the present or the future."  *See In re Texaco Inc*., 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000); *In re David Orgell, Inc*., 117 B.R. 574, 575-76 (Bankr. C.D. Cal. 1990); *In re Pizza Time Theatre, Inc*., 1990 U.S. Dist. LEXIS 17939, at *14 (Bankr. N.D. Cal. July 13, 1990) (*quoting NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984), superseded on other grounds); *In re Fleming Cos*., 499 F.3d 300, 308 (3d Cir. 2007) (*quoting In re Italian Cook Oil Corp*., 190 F.2d 994, 997 (3d Cir. 1951).  The requirement that lease assumption be *cum onere* applies equally to assignment, as assumption of an unexpired lease "is a necessary prerequisite to its assignment under § 365."  *In re Sunterra Corp*., 361 F.3d 257, 266 (4th Cir. 2004) (citing 11 U.S.C. § 365(f)(2)); *see also In re Best Payphones, Inc*., 2007 Bankr. LEXIS 1677, at *36 (Bankr. S.D.N.Y. May 8, 2007) ("The trustee can only assign what he assumes, and the assignee cannot impose terms, implicitly or explicitly, that render performance less onerous to the assignee or more onerous to the non-debtor party to the contract.").

39.      Through The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amendments, Congress sought to ensure that all requirements of Section 365(b) are complied with and that Section 365(f) does not override Section 365(b).  Floor Statement of Senator Orrin Hatch, *See* 151 Cong. Rec. S. 2459, 2461-62 (daily ed. Mar. 10, 2005); *see also* H.P. Rep. No. 109-31, pt. 1, at 87, reprinted 2005 U.S. Code Cong. & Admin. News 153. In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

*Id.* at 2461.

40.     The BAPCPA amendments were specifically designed to preserve the shopping center landlords' rights to enforce lease restrictions, including use restrictions, and to grant shopping center landlords "broad leeway to determine the mix of retail tenants." *Id.* Thus, as clear from the Congressional intent, Section 365(f) is subject to the protections of Section 365(b); it does not modify Section 365(b). *In re Trak Auto Corp.*, 367 F.3d 237, 243-44 (4th Cir. 2004). Therefore, any assumption of the Agreements must remain subject to all provisions of the Agreements, including those provisions concerning use, alterations, and signage.

> a.   *Assumption and Assignment and Sale of the Agreements Must Be As Is, Subject to and In Full Compliance with the Contract Limitations*

41.     As set forth above, assumption and assignment must be *cum onere*, accepting both its benefits and burdens. Further, Section 365(b)(3)(C) of the Bankruptcy Code provides that assumption and assignment is subject to all of the provisions of the lease being assumed, including exclusivity, radius, location and use provisions. *See* 11 U.S.C. § 365(b)(3)(C). Further, adequate assurance of future performance must include adequate assurance "(C) that assumption and assignment . . . will not breach any such provision contained in any lease, financing agreement, or master agreement relating to such shopping center; and (D) that assumption and assignment will not disrupt any tenant mix or balance in such shopping center." 11 U.S.C. § 365(b)(3)(C), (D).

14

42.    Under the Notice, the Buyer is seeking to modify the terms of leases, including seeking assumption and assignment free and clear of Restrictive Covenants.[11]  Upon information and belief, the Buyer's designees are seeking assumption and assignment of the Additional Assigned Agreements subject to paragraph 19 of the Assumption and Assignment Order, which would authorize assumption and assignment, *inter alia*, "notwithstanding any provision in the Designatable Lease that purports to prohibit, restrict or condition" a number of lease terms, including with respect to permitted uses and signage, and that the premises could remain dark for up to 150 days after the Assumption Effective Date.[12]

43.    The Agreements between Creditors and the Debtors prohibit one or more of the authorizations proposed to be granted.  By way of example (but not limitation), the Agreement with JPMG Manassas Mall Owner LLC provides that the premises shall only be used for the

---

[11] Notice, ¶ 18.

[12] Assumption and Assignment Order, ¶ 19 ("Solely in connection with the Additional Assigned Agreements, upon the applicable Assumption Effective Date, except as otherwise expressly agreed by the Buyer and the applicable Designatable Contract Counterparty, notwithstanding any provision in any Designatable Lease that purports to prohibit, restrict or condition such action, (x) the Buyer or the applicable Assignee shall be authorized to: (i) **use the applicable Lease Premises**, subject to section 365(b)(3) of the Bankruptcy Code, as a **retail store or distribution center** (and related goods and services); (ii) **operate such Lease Premises under the Buyer's trade name or any other trade name which the Buyer owns or is authorized to use** (including any of the Debtors' trade names); (iii) **make such alterations and modifications to the applicable Lease Premises (including signage**, together with appropriate changes to existing tenant signage in the respective shopping center or mall, including panels on all pylons, monuments, directional and other ground and off-premises signs where Sellers are currently represented) **deemed necessary by the Buyer or such Assignee** (subject to all applicable laws including all applicable municipal codes) as are necessary or desirable for the Buyer or such Assignee to conform such Lease Premises to the prototypical retail store or distribution center (or such Assignee's typical retail store or distribution center); (iv) **remain 'dark' (including partially or fully un-occupied) with respect to such Lease Premises after such assumption and assignment until the date that is necessary to permit the Buyer or such Assignee to take occupancy, remodel, restock, re-fixture, change signage and/or until completion of the work described in clause (iii) above (so long as such date is not more than one hundred fifty (150) days after the applicable Assumption Effective Date**) or such later date as may be reasonably required for the restoration of the such Lease Premises following any applicable Casualty / Condemnation Event; and (v) exercise, utilize or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under such Additional Assigned Agreement (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Additional Assigned Agreement or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name) and (y) neither the Buyer nor the applicable Assignee shall have any responsibility or liability for any Excluded Asset-Sale Taxes and Excluded Asset-Reorganization Taxes."); Sale Order, ¶ 43 (same) (emphasis added).

retail sale of goods and services and operations incidental thereto, but specifically prohibits uses as a second hand store, surplus store, supermarket, theatre or auditorium, sale of prescription drugs, junior department store, 5 or 10 cent store, dollar store, variety store, etc.[13]  Manassas REA, p. 24.  The Agreements also contain provisions restricting, as an example, signage that the tenant may construct or modify.[14]  Manassas REA, pp. 27-28; Poughkeepsie COREA, pp. 111-112, Exhibit F.

44.    These and all other provisions of the Agreements, to the extent they are assumed and assigned or sold to the proposed assignee, must be assumed and assigned *cum onere*.

45.    Both of the Premises are operated as Sears retail stores.  If they will remain Sears retail stores, there is no need for signage changes or any other modifications that would necessitate a 150 day go-dark period.  If the Premises will not remain Sears retail stores, the Buyer or its designees must (i) clarify that the Agreements are being assigned *cum onere* and (ii) provide that use and trade name information so the Creditors can assess whether the proposed uses violate any terms of the Agreements or other shopping center agreements.

46.    Lastly, any *ipso facto* ("anti-assignment") clauses may only be considered inapplicable as to this transaction only; the Debtors cannot assume and assign the Agreements free and clear of these clauses or deem them generally unenforceable.

---

[13] Relevant provisions of the Agreement (the "Manassas REA") between the predecessors to JPMG Manassas Mall Owner LLC and Sears Holding Corporation are attached hereto as Exhibit 1.

[14] Relevant provisions of the Construction, Operation and Reciprocal Easement Agreement  (the "Poughkeepsie COREA") between the predecessors to Poughkeepsie Galleria LLC and Sears Holding Corporation are attached hereto as Exhibit 2.

   b. *Conveyance of Assigned Agreements Cannot be Free and Clear of Restrictive Covenants*

   47. The Buyer, through the Sale Order[15] and Assumption and Assignment Order[16] sought the assumption and assignment of leases free and clear of Restrictive Covenants, and the Buyer is seeking such relief in the Notice.[17]

   48. The Sale Order[18] and Assumption and Assignment Order[19] require that the Notice describe the Restrictive Covenants that they are seeking to extinguish and/or diminish.  No such description has been provided.

   49. Any and all Restrictive Covenants must remain in full force and effect notwithstanding any transfer or assignment.  *See, e.g., Gouveia v. Tazbir*, 37 F.3d 295, 298 (7th Cir. 1994) (stating that covenants and restrictions run with the land and create a "property right in each grantee and any subsequent grantees" that cannot be extinguished in bankruptcy); *see also Mancuso v. Meadowbrook Mall Co. Ltd. P'Ship*, 2007 U.S. Dist. LEXIS 23308, at *29-30 (Bankr. N.D. W.Va. Mar. 28, 2007) (use covenants run with the land); *In re 523 E. Fifth St. House Preservation Dev. Fund Corp.*, 79 B.R. 568, 574-75 (Bankr. S.D.N.Y. 1987); *In re*

---

[15] Sale Order, ¶ 59 (reserving rights on the assumption and assignment free and clear of Restrictive Covenants other than the Initial Assigned Agreements).

[16] Assumption and Assignment Order, ¶ 19 (describing what the Buyer is permitted to do, "notwithstanding any provision in any Designatable Lease that purports to prohibit, restrict, or condition such action" with respect to the Additional Assigned Agreements); ¶¶ 26-27 (establishing procedures for future proposed assumption and assignments free and clear of Restrictive Covenants, including the requirement that "the applicable Designated Lease Notice shall describe the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish…").

[17] Notice, ¶ 18 ("In accordance with paragraph 59 of the Sale Order and paragraph 26 of the Assumption and Assignment Order, Buyer intends to designate the Additional Designatable Leases for assumption and assignment free and clear of any interests, covenants, or rights applicable to such real estate leases to the extent the same limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants") that are executory and do not run with the land.").

[18] Sale Order, ¶ 59.

[19] Assumption and Assignment Order, ¶ 26.

*Inwood Heights Hous. Dev. Fund Corp.*, 2011 Bankr. LEXIS 3251, at \*22 (Bankr. S.D.N.Y. Aug. 25, 2011).

50.     Thus, the Debtors should not be permitted to assume and assign and sell the Assigned Agreements free and clear of the Restrictive Covenants.  These Restrictive Covenants are essential for the preservation and maintenance of the shopping center in which the parties share space, are non-executory and run with the land, and cannot be invalidated pursuant to a proposed sale of the Assigned Agreements to the Buyer or any other third party.  *See In re Oyster Bay Cove, Ltd.*, 196 B.R. 251, 255-56 (Bankr. E.D.N.Y. 1996) ("a sale free and clear of liens and other interests' has no impact on restrictions of record that run with the land").

51.     To the extent the Buyer is seeking assignments free and clear of Restrictive Covenants that run with the land, they must bring an adversary proceeding.  *See in re Sabine Oil & Gas Corp.*, 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016), aff'd, 567 B.R. 869 (S.D.N.Y. 2017), aff'd, 734 F. App'x 64 (2d Cir. 2018) ("[T]he Court concludes that it cannot decide substantive legal issues, including whether the covenants at issue run with the land, in the context of a motion to reject, unless such motion is scheduled simultaneously with an adversary proceeding or contested matter to determine the merits of the substantive legal disputes related to the motion.").

> c. *Any Assignment Order Must Reflect Cum Onere Treatment of Assigned Agreements*

52.     In accordance with the foregoing, any order approving assumption and assignments contemplated by the Notice should expressly provide that the assumption and assignment and sale of the Assigned Agreements is not free and clear of any Restrictive Covenants, but is subject to, and shall not extinguish or otherwise diminish any, interests, covenants, or rights applicable to such Assigned Agreements or rights that limit or condition the

permitted uses of the Premises such as easements, rights of way, rights of first refusal, reciprocal

easement agreements, operating or redevelopment agreements, covenants, licenses or permits.

### C. Any Assignment Order Must Adequately Address Payment of Accrued but Unbilled/Not Yet Due Adjustments and Reconciliations

53.    The Asset Purchase Agreement purports to limit the "Assumed Liabilities" to

liabilities (whether payment or performance) accruing after the Closing and all Cure Costs,[20] and

expressly excludes liabilities that accrued "prior to the Closing Date other than Cure Costs, Other

Payables, the Assumed 503(b)(9) Claims, Severance Reimbursement Obligations, and Ordered

Inventory",[21] and "all Liabilities relating to the payment or performance of obligations arising

solely out of facts or circumstances in existence prior to the Closing Date or Designation

Agreement Date, as applicable, with respect to the Assigned Agreements",[22] and "all

Liabilities…arising out of the Assumed Liabilities, the Acquired Assets or the operation of the

Business prior to the closing Date or relating to facts, actions, omissions, circumstances or

conditions existing, occurring or accruing prior to the Closing Date."[23]

54.    Section 2.5 of the Asset Purchase Agreement expressly provides that the Buyer

(or any assignee thereof) will not be liable for

> any year-end (or other) adjustment (including for royalties, rents, utilities, Taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent) arising under any of the Acquired Leases or any other Assigned Agreements for the calendar year in which the applicable Lease Assignment occurs that is attributable to (x) the portion of such calendar year occurring prior to such Lease Assignment or (y) any

---

[20] Asset Purchase Agreement, ¶ 2.3.

[21] Asset Purchase Agreement, ¶ 2.4(a).

[22] Asset Purchase Agreement, ¶ 2.4(b).

[23] Asset Purchase Agreement, ¶ 2.4(c).

previous calendar year, and Sellers shall fully indemnify and hold harmless Buyer and the applicable Assignee with respect thereto.[24]

55.   As set forth above, the Buyer (and any other assignee designated thereby) must assume the Assigned Agreements *cum onere*.  Certain of the Agreements between the Creditors and the Debtor include continuing obligations to pay adjustments and reconciliations for the Debtor's share of expenses such as common area maintenance expenses and taxes, which have accrued or will accrue under the Agreements, but are not yet billed or due.  Adjustments and reconciliations for 2018 may not have been (and are not required to be) billed to date, and adjustments and reconciliations for 2019 will not be (and are not required to be) billed until the year 2020.  Therefore, any default in the payment of those adjustments and reconciliations will not occur until after the Closing Date, but relate to a period prior to the Closing Date, and thus are excluded from "Assumed Liabilities."

56.   Additionally, the Agreements obligate the Debtor to indemnify and hold the Creditors harmless from and against various claims, liabilities and expenses, which may have arisen, but may not now be known to the Debtor and/or Creditors.  Such indemnity obligations may become known post-closing, notwithstanding that they relate to a period prior to the Closing Date, and thus are excluded as "Assumed Liabilities."

57.   While the Asset Purchase Agreement,[25] Sale Order,[26] and Assumption and Assignment Order[27] provide for indemnification of the Buyer (and any other assignee designated thereby) for such adjustments and reconciliations and indemnity obligations, the Sale Order relieved the Debtors, as of the Closing Date, from "any further liability" under the Initial

---

[24] Asset Purchase Agreement, ¶ 2.5.
[25] Asset Purchase Agreement, ¶ 2.5.

[26] Asset Purchase Agreement, ¶ 41.

[27] Assumption and Assignment Order, ¶ 18.

Assigned Agreements,[28] and to "be relieved of any liability for breach of such Designated Agreements occurring after the applicable Designation Assignment Date or Additional Contract Assignment Date pursuant to section 365(k) of the Bankruptcy Code."[29]

58.     The obligation to pay all accrued but unbilled or net yet due obligations and to satisfy indemnity obligations is essential to the Creditors' entitlement, pursuant to Section 365(b)(1) of the Bankruptcy Code, to adequate assurance of future performance, and must be assumed by any assignee, *cum onere.* Any assumption and assignment order must provide that any assignee assumes liability for all accrued but unbilled or net yet due obligations and indemnity obligations.

### D.  Cure Disputes Must be Adjourned

59.     Objections to the proposed cure amounts in the Notice should not be heard at the hearing on the Notice.  It is impractical and frankly impossible to address all cure objections at a hearing at which other critical issues must also be addressed.  It is very common to adjourn cure disputes to a different date than the assignment hearing as long as all undisputed amounts are paid in full on the Assumption Effective Date and disputed portions are reserved in full and paid promptly after resolution or adjudication.[30]  As a result, the Creditors are agreeable to an adjournment of the cure aspect of the hearing on the Notice for approximately two to three weeks while the Debtors and Creditors attempt to resolve any cure issues.

### E.  Any Proposed Waiver of 6004(h) and 6006(d) is Unnecessary

---

[28] Sale Order, ¶ 28.

[29] Sale Order, ¶ 41; *see also* Assumption and Assignment Order, ¶ 17.

[30] Assumption and Assignment Order, ¶ 12; Sale Order, ¶ 29.

60.    It is unclear whether the Debtors are seeking a waiver of Bankruptcy Rules 6004(h) and 6006(d), but if they are, the Creditors object.  The Debtors and Buyer have not made a showing that these Rules should be waived here.

**JOINDER AND RESERVATION OF RIGHTS**

61.    The Creditors join in the objections of other creditors of the Debtors to the extent they are not inconsistent with this Objection.

62.    The Creditors reserve their rights to supplement this Objection and to make such other and further objections as they deem necessary or appropriate, including, but not limited to, any proposed order and to the assumption and assignment and sale of the Agreements to any assignee.

## CONCLUSION

**WHEREFORE,** the Creditors respectfully request that the Court enter an Order consistent with this Objection, and grant the Creditors any additional and further relief the Court deems just and proper.

Dated: May 2, 2019
Syracuse, New York

**BARCLAY DAMON LLP**

By:  /s/ Kevin Newman
Kevin M. Newman, Esq.
Scott L. Fleischer, Esq.
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202-2020
Telephone:  (315) 425-2700
Facsimile:  (315) 425-2701

*Attorneys for JPMG Manassas Mall Owner
LLC and Poughkeepsie Galleria LLC*