# EXHIBIT 2

20DMD1                                           9/24/86

CONSTRUCTION, OPERATION AND
RECIPROCAL EASEMENT AGREEMENT

POUGHKEEPSIE GALLERIA
POUGHKEEPSIE, NEW YORK

This Construction, Operation and Reciprocal Easement Agreement
(hereinafter referred to as the "REA") is made as of the **6th** day of
October, 1986, by and among POUGHKEEPSIE GALLERIA COMPANY, a New York
general partnership, ALSTORES REALTY CORPORATION, a Delaware corporation,
THE MAY DEPARTMENT STORES COMPANY, a New York Corporation, and LECHMERE,
INC. a Massachusetts corporation.

## INTRODUCTION

I.    Developer covenants, warrants and represents as follows:

(a)  Developer owns in fee simple certain land situated in the
Town of Poughkeepsie, County of Dutchess, and State of New York,
more particularly described in Exhibit A, Part 4 (hereinafter called
"Shopping Center Site") which is located as shown on the site plan
dated July 31, 1986, as last revised on **Sep.18** , 1986 (which is
attached hereto as Exhibit B, the "Site Plan") and which shall be
developed and otherwise improved as an enclosed mall regional
shopping center, in accordance with the REA.

(b)  The portion of the Shopping Center Site described in
Exhibit A, Part 1 is referred to herein as the "Developer Parcel,"
and is located as shown on Exhibit B.  The portion of the Developer
Parcel legally described on Exhibit A, Part 14 is herein referred to
as the "Caldor Tract," is located as shown on Exhibit B, is leased
by Developer as lessor to Lechmere as lessee (the "Lechmere-Caldor
Tract Lease"), and is in turn subleased by Lechmere as sublessor to
Developer, as Sublessee (the "Lechmere-Caldor Tract Sublease"), by
leases of even date.

(c)  The portion of the Shopping Center Site described on
Exhibit A, Part 2 is leased by Developer to Allied by that certain
Lease of even date between Developer as Lessor and Allied as Lessee
(the "Allied Lease"), is referred to herein as the "Allied Parcel"
and is located as shown on Exhibit B.

-1-

all improvements thereon and therein, including all ground level parking,
the Parking Deck, sidewalks, utilities, landscaping, etc.

Section 1.5. Common Area Maintenance Cost

"Common Area Maintenance Cost" means all monies paid out for:

Reasonable costs and expenses actually incurred and directly
relating to the operation, maintenance, management and repair of the
Common Area in fulfilling Developer's obligations under Article 10
hereof, excluding however costs and expenses included within Enclosed
Mall Operation and Maintenance Cost.

Common Area Maintenance Cost shall be determined in accordance with
either (i) generally accepted accounting principles or (ii) cash basis
accounting so as to reflect all cash receipts and disbursements.  No
capital expenditures shall be included in Common Area Maintenance Cost
aggregating in excess of $10,000 (in 1987 dollars) in any calendar year
without the approval of Allied, Lechmere and May.

Common Area Maintenance Cost does not include any real estate taxes
or assessments upon any portion of the Common Area.

Section 1.6. Common Area Work

"Common Area Work" means all of the work necessary to complete all
improvements to be constructed under the terms of the Joint Improvement
Agreement.

Section 1.7. Common Utility Facilities

The term "Common Utility Facilities" means those certain utility
systems and facilities referred to and described in Section 3.1(1)(d)
hereof.

Section 1.8  Developer Complex

"Developer Complex" means the Enclosed Mall, the Mall Stores and the
Stores of the Majors (other than the Stores of May, Lechmere, and
Allied); all of which are to be constructed by Developer pursuant to the
terms hereof within the Permissible Building Areas therefor, except that
the Caldor Store is to be constructed by Lechmere and Developer, as

herewith subjects Developer's reversionary fee interests in the Major Parties' Parcels to such easements.

(h)  The grant of an easement to a Grantee shall benefit and bind its Parcel which shall, for the purpose of this REA, be deemed to be the dominant tenement (where only a portion of the Parcel is so benefited, only that portion shall be deemed to be the dominant tenement).

(i)  Unless provided otherwise, all easements granted herein are non-exclusive and irrevocable.

(j)  All easements herein shall be easements appurtenant and not easements in gross.

(k)  No grant of easement pursuant to this Article 3 shall impose any greater obligation on any Party to construct or maintain its Store except as expressly provided in this REA.

(2)  All easements granted hereunder shall exist by virtue of this REA, without the necessity of confirmation by any other document. Likewise, upon the termination of any easement (in whole or in part) or its release hereunder in respect of all or any part of any Parcel, the same shall be deemed to have been terminated or released without the necessity of confirmation by any other document.  However, upon the request of any other Party, each Party will sign and acknowledge a document memorializing the existence (including the location and any conditions), or the termination (in whole or in part), or the release (in whole or in part), as the case may be, of any easement, if the form and substance of the document is approved by each Party.

Section 3.2.  Easements for Use of Common Area

Each Party hereby grants to each of the other Parties easements in the Common Area on its (Grantor's) Parcel for:

(1)  ingress to and egress from the Grantee's Parcel; and

(2)  the passage and parking of vehicles; and

(3)  the passage and accommodation of pedestrians; and

    (4)  the doing of such other things as are authorized or required to be done by Grantee on the Common Area of Grantor under this REA;

provided, however, that such easements are limited to such portions of the Common Area of the Grantor's Parcel as are now or hereafter from time to time set aside, maintained and authorized for such use pursuant to this REA, including those portions of the Common Area shown on Exhibit B.

Enjoyment of the easements granted by this Section shall commence on the date the Common Area in question is substantially completed.

Each Party hereby reserves the right to eject from the Common Area on its Parcel any Persons not authorized to use the same. In addition, each Party reserves the right to close off the Common Area of its Parcel for such reasonable periods of time as may be legally necessary (but only if absolutely necessary) in the reasonable opinion of its attorney to prevent the acquisition of prescriptive rights by anyone; provided, however, before closing off any part of the Common Areas as provided above, such Party must give notice to each of the other Parties of its intention to do so and must coordinate its closing with the activities of each of the other Parties so that no unreasonable interference with the operation of the Center occurs.

The easements provided for in this Section are subject to the rights to use the Common Area for other purposes provided for in this REA; however, except as otherwise herein specifically authorized, no changes shall be made in the Common Area or in location or design of Common Area Improvements prior to the Expiration Date.

The easements granted under this Section shall terminate on the Expiration Date of this REA, except as otherwise specifically provided herein.

Section 3.3.  Easements for Access Roads and Ring Road

Each Party hereby grants to each of the other Parties perpetual easements in its Parcel for:

(1) pedestrian and vehicular traffic in those strips of land on its (Grantor's) Parcel which are shown on Exhibit B as hatched roadways (hereinafter referred to as "Access Roads"), the widths of which

completing construction and opening early, but Lechmere's early
completion of construction and opening shall not waive Developer's
obligations hereunder.

ARTICLE 8

FURTHER REQUIREMENTS RELATING

TO CONSTRUCTION

Section 8.1.  Minimum Floor Area and Initial Planned Floor Area

The Initial Planned Floor Area and the Minimum Floor Area of the
Stores on the Tract(s) is as follows:

| Developer Complex | Initial Planned Floor Area | Minimum Floor Area | Tract |
|---|---|---|---|
| Mall Stores | 401,641 | 200,000 | Enclosed Mall Mall Stores Tract |
| Penney Store | 185,301 | 100,000 | Penney Tract |
| Lechmere Store | 77,337 | 60,000 | Lechmere Tract |
| Caldor Store | 86,443 | 60,000 | Caldor Tract |
| Allied Store | 125,288 | 100,000 | Allied Tract |
| May Store | 119,873 | 100,000 | May Tract |

Each Party shall initially construct as herein provided on the
specified Tract at least 95% of the Initial Planned Floor Area of the
Stores which it is required to construct.

May shall have the right (but not the obligation) at any time to
construct or expand the May Store within the May Permissible Building
Area.  If May does construct any additional Floor Area, the Initial
Planned Floor Area of the May Store set forth above in this Section 8.1
shall be changed to the total amount of constructed Floor Area of the May
Store.

Any Party shall have the right to reconfigure its Permissible
Buildings Area within the area designated on the Site Plan within which
the Permissible Buildings Area may be reconfigured provided that the
Permissible Building Area on a particular Tract as reconfigured shall not
cover more area than the area covered by the Permissible Building Area
designated for such Tract on the Site Plan.

-70-

Section 8.2.  Construction of Developer Complex and May Store
by Developer

Developer covenants and agrees at its expense to design and
construct the Enclosed Mall and the Mall Stores on the Enclosed Mall-Mall
Stores Tract within the Permissible Building Areas shown on Exhibit B for
such Improvements, with the exterior walls of the Mall Stores and the
Enclosed Mall conforming to the building lines shown therefor on Exhibit
B.  The Mall Stores and the Enclosed Mall shall be on two levels, with a
substantially equal number of square feet of Floor Area on each level of
the two levels.  The Mall Stores shall contain at least 95% of the
Initial Planned Floor Area for the Mall Stores.

Developer further covenants and agrees at its expense to design and
construct or cause to be designed and constructed the Penney Store and
the remainder of the Caldor Store and, subject to the conditions and
limitations set forth in this REA, and to construct the May Store in
accordance with the following:

(a)  The Penney Store shall be a two-level Store, shall be
constructed on the Penney Tract within the Penney Store Permissible
Building Area shown on Exhibit B, and shall contain at least 95% of
the Initial Planned Floor Area of the Penney Store.  The height of
the Penney Store shall not exceed the height specified on Exhibit D
for the Penney Store.

(b)  The May Store shall be a two-level Store, shall be
constructed on the May Tract within the May Store Permissible
Building Area shown on Exhibit B, and shall contain at least 95% of
the Initial Planned Floor Area of the May Store.  The height of the
May Store shall not exceed the height specified on Exhibit D for the
May Store.

(c)  The Caldor Store shall meet the criteria specified for the
Caldor Store in Section 8.3(1) hereof.

Developer agrees to construct the Common Area Improvements and
Common Area Work as provided in the Joint Improvement Agreement.  Without
limitation of the foregoing, the height of the Parking Deck shall not
exceed the height specified on Exhibit D for the Parking Deck.

All construction by Developer shall be in accordance with approved
Developer Complex Final Plans, or the Final Common Improvement Work Plans

-71-

elects to rebuild, replace or repair pursuant to Article 9 shall be
conducted and completed with all due diligence and in all events be ready
for occupancy within eighteen (18) months after such damage or
destruction occurs.  The Parties also agree that each Party shall comply
with the requirements herein set forth with respect to initial
construction with respect to its reconstruction.

Section 9.5.  Clearing Debris from Razed Improvements

If a Party is not obligated hereunder to rebuild, replace or repair
an improvement that has been damaged or destroyed, and if such Party
elects not to do so, then it shall raze such improvement (or such part
thereof that has been damaged or destroyed and is not being rebuilt) and
clear the area of all debris.  After the area has been cleared, it shall
automatically become a part of the Common Area and landscaped or
converted into Parking Area and shall be so improved by the Party
performing the razing so as to be compatible with adjacent landscaping
and/or Parking Area until such time as rebuilding may occur thereon.  All
activities that are performed by the Party razing the improvements and
constructing the landscaping or Parking Area thereon shall be at such
Party's sole cost and expense.

Section 9.6.  Miscellaneous Repairs and Alterations

Subject to the preceding Sections of this Article and the other
provisions of this REA, each Party may make such repairs, alterations,
reconstructions or additions to its Improvements as it deems necessary or
advisable under the circumstances.

ARTICLE 10
OPERATION, MAINTENANCE, REPAIR
AND RESTORATION -- COMMON AREA

Section 10.1.  Maintenance of Common Area

Commencing with the opening by any Party of its Store for business
and until the expiration of the period that Developer is required to
operate by Section 12.1 hereof, Developer shall at its cost except as
provided in the following sentence, operate, light, maintain and repair
the Common Area and Common Area Improvements on each Party's Parcel
(except to the extent a Party's Parcel is being maintained pursuant to
Sections 10.8 or 10.12 hereof), excluding each Party's Perimeter
Sidewalks which are each Party's individual responsibility to maintain as

-83-

provided in Section 9.1, in good order, condition and repair in
accordance with the standards for first class regional shopping centers.
Each Major Party shall pay to Developer therefor its Allocable Share of
the Common Area Maintenance Costs, as provided in each Party's Allocable
Share Agreement.

Section 10.2.    Operation and Maintenance of Enclosed Mall

Commencing with the opening by Developer of the Enclosed Mall and
until the expiration of the period that Developer is required to operate
by Section 12.1 hereof (except to the extent that the Enclosed Mall is
being maintained pursuant to Section 10.12 hereof), Developer shall
light, operate, maintain and repair the Enclosed Mall, at its sole cost
and expense, in good order, condition and repair in accordance with the
standards for first class regional shopping centers.  Developer shall
have the right to receive such contributions for such cost and expense
from the Major Parties as are provided for in the Allocable Share
Agreements of such Major Parties.

Section 10.3.    General Operation and Maintenance Standards

Without limiting the foregoing obligation of Developer to operate,
light, maintain and repair the Common Area and Common Area Improvements,
in good order, condition and repair in accordance with the standards for
first class regional shopping centers, Developer shall perform and
observe, without limitation, the following services and standards:

(1)  Inspect, maintain, repair and replace all surfaces of the
Common Area, keeping them level, smooth and evenly covered with the type
of surface material originally installed thereon or such substitute
therefor as shall be in all respects equal in quality, appearance and
durability;

(2)  Maintain the Common Area free of any obstruction, promptly
remove all papers, debris, filth, refuse, surface waters, snow and ice
from the Center (snow and ice which accumulated during the previous night
is to be removed from the Parking Area by 9:00 a.m. on any business day
that the Center is open for business, and snow and ice accumulating
during the day when the Center is open for business shall be removed as
promptly as possible), and wash and thoroughly sweep paved areas and
other surfaces as required, using motor driven washing and vacuum
cleaning vehicles where feasible;

-84-

(3)  Maintain, replace and repair all Common Area entrance, exit and directional signs, markers and lights as shall be required so as to maintain same in an attractive condition and in accordance with the practices prevailing in the operation of first-class regional shopping centers;

(4)  Clean lighting fixtures of the Center and relamp and reballast and replace as needed, except that each Party shall be individually responsible for maintaining, repairing and replacing its lighting fixtures installed pursuant to Sections 3.8 and 3.9 hereof.

(5)  Repair and replace and repaint striping, markers, directional signs, etc., as necessary to maintain the same in good order, condition and repair in accordance with the standards for first class regional shopping centers;

(6)  Light the Common Area as required by Section 10.6;

(7)  Maintain, repair and replace landscaping (not including landscaping within the Perimeter Sidewalks around the Major Party's Stores and Developer Complex which shall be each individual Parties' responsibility and not part of Common Area Maintenance) as necessary to keep the same in good order, thriving condition and repair in accordance with the standards for first class regional shopping centers;

(8)  Clean, maintain and repair signs of the Center (as contrasted with those of Occupants), including relamping and repairs being made as required, and cause all Occupants of the Developer Parcel to so clean and repair their signs;

(9)  Maintain and keep in a sanitary condition public rest rooms, rest areas and other common use facilities and furnish necessary mosquito and other pest abatement controls;

(10)  Clean, repair, maintain and replace as necessary and maintain in good order, condition and repair, all Common Utility Facilities, to the extent that the same are not cleaned, re paired, maintained or replaced by public utilities;

(11)  Provide courteous personnel for Common Area traffic control and security and security patrol in such numbers and during such hours as reasonably prudent in order to (a) supervise traffic direction at entrances and exits to the Center during such hours and periods as

-85-

traffic conditions would reasonably require such supervision, and (b)
patrol the Common Area, in each case as reasonably prudent to achieve
safe and orderly flow of traffic and use of the Common Area by
Permittees, but not less than that which is consistent with the practice
prevailing in the operation of similar first class shopping centers;

(12)  In accordance with the standards for first-class regional
shopping center enclosed mall maintenance and operation, adequately
light, heat, ventilate and air condition the Enclosed Mall during all
hours that Developer is required to operate the Enclosed Mall and in any
event at a minimum in accordance with the standards set forth in this
REA, including Exhibits C and E and Section 4.5 hereof, and provide a
fire protection system for the Enclosed Mall in accordance with this REA.
Maintain the fire protection, heating, ventilating and cooling systems of
the Enclosed Mall in good order, condition and repair, so that the same
may be operated in accordance with the standards of this REA.  Maintain
in good order, condition and repair all other mechanical and electrical
facilities in the Enclosed Mall, including, without limitation, the
lighting facilities, vertical transportation facilities, heating,
ventilating and cooling systems, sprinkler systems, and actuated or
manually operated doors; all in accordance with the standards set forth
in this Section 10.3 and in Exhibits C & E, including by performing all
necessary maintenance and repairs thereon, including, but not limited to,
policing and performing the same type of services, where applicable, as
are set forth in all the above and following subsections of this Section
10.3 with respect to the balance of the Common Area;

(13)  Clean, maintain, repaint or otherwise refinish as
necessary the structure, roof, skylights, doors, wall surfaces and all
other surfaces and other appurtenances of the Enclosed Mall, giving
particular attention to the ceiling areas surrounding the diffusers;

(14)  Regularly clean and seal, wax or otherwise finish the
Enclosed Mall floor as appropriate for the type of floor materials
utilized;

(15)  Absent an emergency situation Developer shall give May,
Lechmere and Allied at least (5) days written notice of Developer's
intent to conduct any construction on such Parties' Parcels or on the
Access Roads and/or on the Ring Road, and in an emergency situation
Developer shall give such notice as is feasible under the circumstances.
All such construction shall be conducted as expeditiously as possible and

-86-

in such manner so as to minimize to the extent reasonably feasible interference with pedestrian and vehicular traffic;

(16)  Empty all trash and rubbish containers located in the Common Area for the use of Permittees, wash the same at intervals sufficient to maintain the same in a clean and sanitary condition, and otherwise keep and maintain the same in an attractive and working condition;

(17)  Rebuild, replace and repair Common Area Improvements which are damaged or destroyed by casualty in accordance with and to the extent required by Section 10.10;

(18)  Faithfully observe, perform and enforce the provisions of Exhibits E and F with respect to the Developer Parcel.

Section 10.4.  Indemnification of Parties

Each Party (Acting Party) shall indemnify and hold each of the other Parties and their Parcels harmless from all mechanic's, materialmen's and laborers' liens, and all costs, expenses, damages, claims and liabilities in connection therewith (including attorneys' fees) arising out of any activities performed by or on behalf of the Acting Party under this Article (whether performed before or after the signing of this REA).

If any Parcel becomes subject to any above-described lien, the Acting Party shall pay off the lien and cause the same to be released and discharged, within thirty (30) days after the filing thereof, subject also to the provisions of the following sentence.  The Acting Party shall have the right to contest the validity, amount or applicability of any such lien by appropriate legal proceedings, and so long as it shall furnish bond or indemnity against such liens as shall be in excess of $10,000, and defend as hereinafter provided, and be prosecuting such contest in good faith, the requirement that it pay and discharge such liens within said thirty (30) day period shall not be applicable; PROVIDED, HOWEVER, that in all events such Party shall within thirty (30) days after the filing thereof bond or indemnify against such liens in amount and form satisfactory to induce the title insurance company which insured title to the respective Parcel of each of the Parties hereto to insure over such liens or to reissue or update its existing policy, binder or commitment without showing any title exception by reason of such liens and provided further that within ten (10) days after the request of any Party, Developer shall, if Developer has not done so, in

-87-

addition bond any such liens in excess of $10,000 so that such liens are
deemed to be removed from record and so that the title insurance company
will insure that same has occurred and that in all events the Acting
Party shall defend, indemnify and save harmless the other Parties from
all loss, damage, liability, expense or claim whatsoever (including
attorney fees) resulting from the assertion of any such lien.  In the
event such legal proceedings shall be finally concluded (so that no
further appeal may be had as of right) adversely to the Acting Party,
such Acting Party shall within five (5) days thereafter cause the lien(s)
(including any resulting judgment lien) to be discharged of record.

    Section 10.5.  No Provision

    Section 10.6.  Illumination of Common Area

    During any period of darkness when any Major's Main Store is open
for business and for at least one half (1/2) hour after such business
hours and for such longer period thereafter as is necessary to permit
safe ingress and egress from the Center by Permittees, Developer will
keep all Common Areas on the Shopping Center Site open to the public and
illuminated at full intensity, which lighting shall meet at a minimum the
standards for illumination for open and deck parking set forth on Part V.
G.6. and H.6. of Exhibit C hereto.  Developer agrees that during the
hours of darkness after the period that Developer is required to keep the
Common Area illuminated for business as provided in the previous
sentence, Developer will keep lighted all Common Area for security
purposes seven (7) days each week such lights as will provide at least
twenty-five percent (25%) of full intensity lighting uniformly
distributed throughout the Common Area.  Each Major Party shall reimburse
Developer for such lighting as provided in its Allocable Share Agreement.
If a Party requires lighting in addition to the lighting above required
to be provided, Developer shall provide such additional lighting and
shall be entitled to be reimbursed for the costs thereof by the Party
requesting same.  Such additional lighting costs shall not be part of
Common Area Maintenance Costs.

    Section 10.7.  Failure of Performance

    If a Party fails to perform any of its duties or obligations
provided for in this Article 10, any other Party may at any time give a
written notice to the Party thus failing, setting forth the specific
failures to comply with Article 10; if such failures are not corrected
within thirty (30) days after receipt of such notice, or if such failures

are such that they cannot be corrected within such time, then if the
Party receiving such notice fails to promptly commence the correction of
such failures within such period and to diligently prosecute the same to
completion within a reasonably required period thereafter, then, in
either such event, the Party giving such notice shall have the right to
correct such failures, including the right to enter upon any Parcel to
correct such failures, and the Party receiving such notice shall pay the
costs thereof.  Any amounts so expended may be withheld from amounts
otherwise payable to the defaulting Party or collection may be sought
otherwise and in any event the defaulting Party shall pay such amount
with interest in accordance with Section 25.7; provided, however, these
provisions shall be without prejudice to the Party receiving such notice
to contest the right of the other Party to make sure repairs or ex pend
such monies and to withhold such amounts.  Notwithstanding anything in
this Section 10.7 contained to the contrary, (1) in the event of an
emergency situation, a Party may cure any such default after giving such
notice as may be practicable under the circumstances, and, thereafter,
shall be entitled to the benefits of this Section 10.7 and (2) no Party
shall have the right, whether under this Section or otherwise, to enter
upon the Floor Area in any Store to make any repairs or perform any
maintenance.

Section 10.8.   Right of Major Parties to Maintain Their Parcels

    In the event that a Major Party has the right pursuant to Section
10.7 hereof to cure a failure by Developer in the maintenance of the
Common Area (except if the right to cure is due to an emergency and the
full cure period provided for a non-emergency default has not elapsed
with the default not being cured) or in the event that a Major Party has
given to Developer in any one year period at least three (3) notices that
Developer is in default of its obligations under Article 10 for which a
basis exists, such Major Party, by notice given to Developer not less
than sixty (60) days before the date such Major Party intends to withdraw
its Parcel from maintenance by Developer, may withdraw its Parcel from
the maintenance and operation provisions herein prescribed for Developer,
such withdrawal to be effective on a date selected by such Major Party in
said notice after the end of said sixty (60) day period.  After such
withdrawal is effective, such Major Party shall not be required to pay
any Common Area Maintenance Costs or estimates thereof.  Any such
withdrawal shall not affect the agreements of the other Parties with
Developer or affect the withdrawing Party's agreement concerning the
Enclosed Mall.

If a Party withdraws its Parcel under this Section, such Party shall, at its sole cost and expense, except as otherwise provided in its Allocable Share Agreement, perform all of the duties of Developer with respect to the maintenance of the Common Area and Common Area Improvements on its Parcel, including those duties set out in Section 10.3 and in the manner specified in Section 10.1.

### Section 10.9.   Request to Have Parcel Maintained by Developer

If a Party has withdrawn the Common Area and Common Area Improvements on its Parcel from the maintenance and operation of Developer, or if a Maintenance Association has been formed pursuant to Section 10.12 hereof, the withdrawing Party or the Maintenance Association may, upon sixty (60) days' notice to Developer, request to have the maintenance which was withdrawn from Developer be conducted again by Developer.  If such request was made during the period that Developer is required to maintain the Common Area and/or the Enclosed Mall, whichever is applicable, pursuant to Sections 10.1 or 10.2, such request shall be honored by Developer and Developer shall resume the maintenance and operation of said Common Area and Common Area Improvements and the Enclosed Mall, as applicable, within sixty (60) days after said request provided such withdrawn party's Common Area and Common Area Improvements shall then be in a condition equivalent to the condition of the Common Area being maintained by Developer and at least to the standard required by the REA and such Party shall resume its payments for such maintenance by Developer in accordance with its Allocable Share Agreement.

### Section 10.10.   Damage to or Destruction of Common Area Improvements

If any Common Area Improvements on a Parcel (other than the Enclosed Mall, the reconstruction of which is provided for in Article 9 hereof) are damaged or destroyed by fire or any other casualty whatsoever which costs are in excess of Twenty-Five Thousand Dollars ($25,000) to repair, whether insured or uninsured, the Party or Parties on whose Parcel(s) such damaged Common Area Improvements are located shall promptly rebuild and replace and repair such damaged or destroyed Common Area Improvements on its Parcel to the same (or better) condition and to the same (or better) general appearance as existed immediately prior to such damage or destruction.  If Developer is then obligated to maintain the Common Area as provided in Section 10.1 and if the costs of repair are Twenty-Five Thousand Dollars ($25,000) or less, Developer shall repair and restore same as provided in the previous sentence as part of Common Area

-90-

Maintenance.  The Party responsible for the restoration of the Common
Area Improvements shall promptly commence and diligently pursue the
restoration of the Common Area Improvements which shall in all events be
completed within six (6) months after such damage or destruction occurs,
and, prior to commencing such rebuilding, replacement or repair, the
reconstructing Party shall comply with all applicable requirements herein
including, without limitation, those applicable to initial construction,
as well as to all construction and those set forth in the Joint
Improvement Agreement.

Section 10.11.  Maintenance After Developer Obligation to Maintain

        After Developer's obligation to maintain the Common Area expires,
each Party shall maintain the Common Area on its Parcel and perform all
functions which were heretofore the responsibility of Developer with
respect to the Common Area and the Common Area Improvements on its
Parcel, including those set out in Section 10.3 as provided in Sections
10.1 and 10.2.

Section 10.12.  Maintenance Association

        If at any time during the period specified in Sections 10.1 and 10.2
that Developer is required to maintain the Common Areas, Developer shall
twice (2) in any twelve (12) month period default in the performance of
its obligations under Article 10 and thereafter fail to cure such default
within the cure period set forth in Section 10.7 then a Major Party shall
have the right to cause a maintenance association (the "Maintenance
Association") to be formed to conduct the maintenance of the Common
Areas, including of the Enclosed Mall, and while such Maintenance
Association is in existence such Maintenance Association shall be
responsible for performing all of the obligations of Developer under
Article 10 with respect to the Common Areas, including, without
limitations, those obligations set forth in Sections 10.1, 10.2, 10.3,
10.4, 10.6 and 10.10 hereof (referred to as the "Maintenance
Obligations").  During the period of time that the Maintenance
Association is performing the Maintenance Obligations, Developer shall
reimburse the Maintenance Association for all Common Area Maintenance
Costs and Enclosed Mall Operating and Maintenance Costs, provided that
Developer shall be entitled to be reimbursed by the Major Parties for
such costs in accordance with each Major Party's Allocable Share
Agreement.  Notwithstanding the foregoing, a Major Party shall not have
the right to cause a Maintenance Association to be formed in the event
that either:  (i) any three of:  May, Allied, Lechmere, Caldor and Penney

shall not have each consented in writing to the formation of a
Maintenance Association within ninety (90) days after the expiration of
the applicable cure period for the second default; provided that if May,
Lechmere, Penney, Caldor or Allied are no longer an occupant of the
Center, another Major or Majors may consent in lieu of one of the
foregoing Major or Majors, provided that at least three Majors consent;
or (ii) in the event Developer shall, within 45 days after receipt of the
second default notice, submit to arbitration pursuant to Article 20 the
question of whether Developer is in default of its Maintenance
Obligations as specified in such second notice, and pursuant thereto
either (a) the arbitrators shall decide that Developer is not in default
of its Maintenance Obligation or (b) the arbitrators shall decide that
Developer is in default of its Maintenance Obligation and Developer
thereafter cures the maintenance default within 30 days after notice of
the arbitrator's decision or within such period as is reasonably required
to cure such default thereafter, in the event that such default cannot be
cured within the 30 day period and Developer has promptly commenced and
diligently prosecuted the cure of the default within the 30 day period
and continued thereafter to diligently prosecute the cure to completion;
provided that (b) shall not be effective and Developer shall not be
authorized to cure the default as provided in (b) to avoid a take over of
maintenance by the Maintenance Association if the Arbitrators make a
determination that Developer acted in bad faith with respect to such
default.

## ARTICLE 11
### PARKING REQUIREMENTS

### Section 11.1.  Required Parking Ratio

Subject to Section 8.4 and to Condemnation, each Party shall
maintain on each of its Tracts at least 5.5 ground level automobile
parking spaces for every 1,000 square feet of Initial Planned Floor Area
on each such Tract, except for the Floor Area of the theater, Developer
shall maintain on the Enclosed Mall-Mall Stores Tract at least one (1)
ground level automobile parking space for each four (4) seats in the
theater.  For purposes of the parking requirements the parking provided
in the second level of the Parking Deck shown on Exhibit B shall be
considered ground level parking. In addition to the foregoing parking
requirements, in the event that the applicable governmental authority as
of the date of this REA requires that a greater number of automobile
parking spaces be provided, each Party shall maintain on each of its

concessionaires.  Each Party shall require such Persons to use only the
designated parking sections.  No such employee parking area shall be
provided within 300 feet of any public entrance of any Main Store or
within 300 feet of the Enclosed Mall, without the consent of the Party on
whose Parcel such Main Store or Enclosed Mall is located.

Section 11.3.  Use of Parking Areas

Except as otherwise expressly provided herein, no Party shall use or
permit the use of the Parking Area on its Parcel for any purpose other
than pedestrian movement and the parking and passage of motor vehicles by
Occupants and Permittees.

Section 11.4.  Development of Additional Center Parking Parcel

The Additional Center Parking Parcel may be maintained by Developer
in its natural condition provided that it is not unsightly, subject to
Section 8.5, or it may be graded and landscaped and parking improvements
may be provided thereon; all improvements thereon shall comply with the
requirements of the Joint Improvement Agreement and the REA, including
Section 11.1 and Exhibit C hereof, and all other requirements of the REA
pertaining to construction and improvements on the Shopping Center Site.
Subject to Section 8.5, no parking provided on the Additional Center
Parking Parcel shall be utilized to satisfy the parking required to be
provided on any Tract in the Shopping Center Site.

ARTICLE 12
OPERATING COVENANTS OF DEVELOPER

Section 12.1.  General Operating Covenants

In addition to and not in limitation of any other covenants of
Developer contained in this REA, Developer covenants and agrees that it
will operate or cause to be operated the Developer Improvements and the
balance of the Common Area in the following manner:

(1)  To open and operate the Mall Stores and the Enclosed Mall and
to cause to be opened and operated the Majors' Stores in accordance with
the requirements of this REA, including without limitation, Sections 6.3,
6.4, 6.5, 8.2, 8.3, 12.1(4) and 12.1(9) hereof.

(2)  To continuously manage and operate the Developer Complex (or
cause the Complex to be continuously managed and operated) as a complex

-96-

periods shall not be extended by Unavoidable Delays, then Lechmere shall
have the right in addition to any other right or remedy which it has to
terminate its operating covenant by giving notice thereof to the other
Parties.

Notwithstanding anything to the contrary, the covenants in this
Section 13.3 shall not impose any greater obligation to rebuild,
reconstruct or restore than as set forth in Article 9 of this REA.

## ARTICLE 14
### GENERAL COVENANTS - CENTER APPEARANCE

Section 14.1.    Location of Buildings and Other Improvements on the
Shopping Center Site

Each of the Parties covenants and agrees with each other that no
building or buildings or improvements, other than Common Area
Improvements, shall be erected, constructed, expanded or maintained on
the Allied Parcel, May Parcel, Lechmere Parcel or Developer Parcel,
except within the Permissible Building Areas designated therefor on
Exhibit B as it may be reconfigured as provided in Section 8.1 and that
no improvement shall be constructed on the Shopping Center Site that is
not in conformance with Exhibit B.

Section 14.2.    Size of Buildings

No building of any Major or Developer shall be constructed or
expanded other than within the respective Permissible Building Area
designated therefor on Exhibit B as it may be reconfigured as provided in
Section 8.1 and other than as otherwise required or limited by this REA.

Section 14.3.    Height Limitations

No building shall be constructed or expanded which exceeds the
height limitations set forth for such building in Exhibit D.  Roof top
mechanical equipment shall be screened so as to be hidden from public
view except for visibility from adjacent public streets and highways,
which are level with, or higher than, the roof of the buildings on which
such mechanical equipment is located.

-109-

(4)  Any trailer court, mobile home park, lot for sale of new or used motor vehicles, labor camp, junk yard, stock yard or animal raising (other than pet shops and veterinarians provided that they do not otherwise violate the provisions hereof; e.g., noise or odor);

(5)  Any dumping, disposal, incineration or reduction of garbage or refuse other than handling or reducing such waste if produced on the premises from authorized uses and if handled in a smokeless, odorless, clean and sanitary manner and without ambient noise levels;

(6)  Any commercial laundry or dry cleaning plant, laundromat, veterinary hospital, car washing establishment, bowling alley, mortuary or similar service establishment; and

(7)  Any automobile body and fender repair work.

Section 14.6.  Non-Interference with Common Area

So as not to interfere with efficient automobile and pedestrian traffic flow in the Center, there shall be no storage, display, sale or solicitation of merchandise or services conducted in the Shopping Center except within Floor Area; provided, however, that with the written approval of all Parties, given or withheld in their respective sole and absolute discretion, there may be conducted by each Party upon its Parcel special Shopping Center-wide promotional events.

No use shall be made of, and no activity shall be conducted in the Common Area except for (i) the accommodation of pedestrians and motor vehicles and the use and maintenance of easements granted pursuant to Article 3, and (ii) such specifically approved (as provided in the previous paragraph) special Shopping Center-wide promotional events.

Section 14.7.  Fences, Obstructions

No fence, structure or other obstruction of any kind (except as may be specifically permitted or required herein or as may be indicated on Exhibit B or except for decorative features and customer conveniences) shall be placed, kept, permitted or maintained upon the Common Areas.

Section 14.8.  Signs

The criteria for all signs to be installed within the Shopping Center Site is set forth in Exhibit F, which sign criteria the Parties

-111-