# EXHIBIT 2

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

BOOK 557 PAGE 405

8626

THIS AGREEMENT made as of the 30th day of ~~March~~ April 1970 by and among MONWAR PROPERTY CORPORATION, a Delaware corporation authorized to do business in the State of Virginia, with general offices at 619 West Chicago Avenue, Chicago, Illinois (hereinafter called "Ward"), and MANASSAS INTERSTATE PROPERTIES, INC., a New Jersey corporation authorized to do business in the State of Virginia with general offices c/o David Mandelbaum, Esq. 17 Academy Street, Newark, New Jersey 07102 (hereinafter called "Developer");

Returned To:
Montgomery
Ward
Regional
Law Department
100? S.
Monroe Street
Baltimore,
Maryland.
o/11/70

W I T N E S S E T H:

WHEREAS, Developer is the holder of two (2) certain leasehold estates in two (2) tracts of land located in Gainesville District, County of Prince William and State of Virginia created by virtue of certain ground leases dated as of June 3, 1969 between Emily R. Lewis (hereinafter called "Ground Lessor"), and Developer; and

WHEREAS, Developer shall, following the execution and delivery of this Agreement, assign to Ward one of the aforesaid ground leases (herein called the "Ground Lease") covering a tract of land more particularly described on Exhibit A attached hereto and by this reference specifically made part hereof (hereinafter called "Parcel A"); and

WHEREAS, Developer is retaining the other aforesaid ground lease covering a tract of land more particularly described on Exhibit B attached hereto and by this reference specifically made part hereof (hereinafter called "Parcel B"); and

[handwritten margin notes: -Adjacent Lawn -formers to A Montgomery Ward designs a Sign, Drive by Shop a Plat]
[handwritten: -Portion Parcel A-1-A]

557-405

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

book 557 page 406

WHEREAS, the parties hereto desire that Parcels A and B (hereinafter collectively called the "Shopping Center Site") be developed as a unified and coordinated retail sales area to be known as MANASSAS MALL (hereinafter called "Shopping Center") for the mutual benefit of all real property included in the Shopping Center Site; and

WHEREAS, the parties hereto recognize that for the optimum development of the Shopping Center as a unified and coordinated retail sales area, it is necessary that they agree on certain matters, including, but not limited to, matters relating to construction and maintenance of facilities on, and the use and restrictions on the use of the Shopping Center, and that absent such agreements Developer would not have assigned to Ward its leasehold estate in Parcel A and Ward would not have accepted and assumed the performance of the covenants contained in the ground lease creating the leasehold estate in Parcel A, and neither of the parties hereto would be willing to undertake the development of any part of the Shopping Center;

NOW THEREFORE, in consideration of the sum of Ten ($10.00) Dollars in hand paid by each party hereto to the other, and of the mutual covenants and agreements hereinafter set forth, the parties intending to be legally bound hereby agree as follows:

SECTION 1. (a) The Developer has with the consent of Ward entered into an agreement with Ross and Franco for the preparation of a site plan (hereinafter called the "Site Plan") covering the following items: (i) the grading

-2-

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

book 557 page 407

of the entire Shopping Center Site to the extent necessary to establish a uniform grade thereon at a mutually satisfactory elevation; (ii) the location of all buildings within the Shopping Center Site and the building perimeter lines; (iii) the location of the parking stalls on the Shopping Center Site; (iv) the location and/or relocation of all necessary utilities; (v) the installation of all storm drainage and sewerage facilities; and (vi) any other matter which may be required to obtain municipal approval of the Site Plan, but specifically excluding any and all on-site paving, outdoor lighting fixtures and landscaping. The Site Plan shall be prepared by the aforesaid engineer or approved substitute and shall be submitted to the Developer and Ward within forty-five (45) days of the execution and delivery of this Agreement. Within fifteen (15) days after receipt of the Site Plan, each party shall give notice to the other and to the aforesaid engineer that it approves the Site Plan or in what respect it disapproves the same. Neither party shall unreasonably withhold its approval of the Site Plan, but if either party has any reasonable objection to the Site Plan, the parties hereto shall meet with the aforesaid engineer to agree to a revision of the Site Plan to overcome such objection. In the event of any failure by either party to disapprove the Site Plan within the aforesaid fifteen (15) day period, the same shall be deemed approved for all purposes of this Agreement. Ward shall pay 31.48% of the total amount of the said engineer's fees and expenses in connection with the Site Plan and Developer shall pay 68.52% of the engineer's fees and expenses in connection with the Site Plan.

-3-

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

BOOK 557 PAGE 417

ment store on Parcel A is opened for business, it will cause to be erected protective barricades and furnish other safeguards during such construction as will enable each store to operate its facilities on Parcel A as an independent unit during such construction by Developer. Developer agrees that it will handle for and in behalf of Ward and its tenants and occupants and Ground Lessor and defend, indemnify and hold Ward and its tenants and occupants and Ground Lessor, harmless in and from all actions, claims, demands, costs, damages or expense of any kind which may be brought or made against Ward, its tenants and occupants and Ground Lessor, or which they may pay or incur by reason of Developer's construction work on Parcel B.

(d) The term Common Areas as used in this Agreement shall mean all parking areas, driveways, pedestrian walkways, mall areas as same may from time to time exist within the Shopping Center Site.

SECTION 5. (a) Developer and Ward hereby give, grant and convey each to the other and to such of their respective successors and assigns who hereafter own those portions of Parcels A and B, a mutual reciprocal and non-exclusive easement, right and privilege of use, both pedestrian and automotive, for the purpose of ingress, egress, passage and parking in, to, upon and over any and all portions of the Common Areas in the Shopping Center as shown on the Site Plan, which Common Areas are hereby reserved for such use for the entire term of this Agreement; provided, however, that this sentence shall not be construed to prohibit any owner from constructing a building on any portion of the building area shown on the Site Plan on Parcels A and B even though such area may theretofore not have been built upon or from relocating within the Common Areas

-13-

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

BOOK 557 PAGE 411

in recordable form, such documents as may be necessary for the completion of the Site Work including documents granting easements and licenses.

(g) Developer and Ward each hereby give, grant and convey each to the other and to such of their respective successors and assigns who hereafter own those portions of Parcels A and B, perpetual easements in, to, over, under and across the portions of the Shopping Center owned by such grantor not included in the building areas shown on the Site Plan for the installation, operation, maintenance, repair, relocation and removal of sewers, water and gas mains, electric power lines, telephone lines and other utility lines as shown on the Site Plan serving the portions of the Shopping Center not owned by such grantor. All easements for such sewers, mains and lines shall be located where shown on the Site Plan. The owner of the portion of the Shopping Center on which any such sewer, main or line is located may, at its sole expense, relocate on the portion of the Shopping Center owned by such grantor such sewer, main or line after thirty (30) days' written notice to the owner of the portion of the Shopping Center served by such sewer, main or line provided such relocation shall not permanently interrupt the utility services to the portion of the Shopping Center served by such sewer, main or line and shall not reduce or impair the usefulness or function of such utility.

(h) Each owner of any portion of the Shopping Center shall after complete installation of the common water, gas, drainage, sewer and other utility lines shown on the Site Plan, maintain or cause to be maintained in good operating

-7-

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

Joe Kendal
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

BOOK 557 PAGE 418

shown on the Site Plan designated parking areas (provided the minimum parking ratio is maintained) or driveways or pedestrian walkways, etc., which may from time to time be necessary or desirable in the operation of the Shopping Center. Any owner or part thereof of Parcels A or B/may grant the benefit of such easement, right and privilege to the tenants, vendees or vendees' tenants of such owner now or hereafter occupying a building, a portion of a building, or buildings in the Shopping Center for the duration of such tenancy and to the customers, employees and business invitees of said owners and tenants, but the same is not intended nor shall it be construed as creating any rights in or for the benefit of the general public.

(b) Developer and Ward hereby give, grant and convey to each other and to its respective successors and assigns, an easement for the term of this Agreement in, to, over and across Parcel A and Parcel B to install, operate, maintain, repair and remove any Shopping Center signs on Parcel A or Parcel B as may be agreed upon by Developer and Ward pursuant to Section 11.

(c) Developer and Ward each hereby give, grant and convey each to the other and to such of their respective successors and assigns portions of Parcels A or B, an easement for the term of this Agreement to come upon the portion of the Shopping Center owned by such grantor to perform any work which the owner of any other portion of the Shopping Center may be required or authorized to perform on the portion of the Shopping Center owned by such grantor pursuant to the provisions of this Agreement; provided, however, each party shall give the other party ten (10) days' prior written notice before commencement of such work. Developer and Ward, their successors and assigns, shall use any easement granted under this Agreement at a rea-

-14-

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

18-23538-shl    Doc 3523-2    Filed 05/02/19    Entered 05/02/19 18:07:49    Exhibit 2
Pg 8 of 13

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

BOOK 557 PAGE 420

assigns except any parking lot charge paid by a tenant or owner of a building in the Shopping Center directly to the owner of the building area occupied by such tenant or owner as provided in lease or sale agreements, it being the intention of the parties hereto that the right to park in the Common Areas shall be free of any charge whatsoever, except as above indicated.

(c) In the operation of the Common Areas, the owners of Parcels A and B herein, acting collectively, may adopt rules and regulations pertaining to the use of all Common Areas of the Shopping Center provided that all such rules and regulations and other matters affecting the users of the Common Areas shall apply equally and without discrimination to all persons entitled to use the Common Areas in the Shopping Center, including designation of what part of the parking areas shall be used for automobile parking by employees of the owners, tenants, occupants and licensees of the owners. No employee of any such owner, tenant, occupant or licensee shall have the right to use any part of the Common Areas for parking except such area or areas as may be so designated.

SECTION 7. (a) The owner of each parcel, or portion thereof, in the Shopping Center, at its own expense, shall, at all times during the term of this Agreement, maintain or cause to be maintained, all buildings located on the portion of the Shopping Center owned by such owner and all parking lots, roadways, driveways, walkways, landscaping and other facilities located on the portion of the Shopping Center owned by such owner and intended for the common use of all of the owners of land within the Shopping Center, their tenants, invitees and licensees, in good repair and in a safe condition, reasonably clean and free of rubbish, debris, ice, snow or

-16-

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

BOOK 557 PAGE 427

SECTION 8. Subject to the provisions of Section 10, the term of this Agreement shall commence as of the date this Agreement is executed, and shall continue for a term of fifty (50) years measured from June 15, 1969, and thereafter, if, during the period the Ground Lease is still in full force and effect, provided, however, that the utility and ingress, egress and right of way easements granted in this Agreement shall survive the termination of this Agreement. Upon commencement of the term, Developer and Ward shall execute a document in recordable form for the State of Virginia setting forth the date of commencement and expiration of the term hereof.

SECTION 9. (a) Ward and Developer hereby agree that during the term of this Agreement no part of the Shopping Center shall be used for any purpose other than the retail sale of goods and services and operations incidental thereto, (including the operation of auto service facilities on Parcels A and B), the conduct of other businesses and professions as from time to time are customarily carried on in regional shopping centers and for parking and other services in connection therewith.

(b) Ward and Developer further hereby agree that during the term of this Agreement no part of the Shopping Center premises shall be used for the operation of a "second hand store" or an Army, Navy or Government "surplus" store.

(c) Ward and Developer agree that no portion of the Shopping Center owned by Ward or Developer or from time to time by any other owner shall be used for any purpose in violation of any law ordinance or any regulation of any governmental authority or in any manner that will constitute a nuisance or unreasonable annoyance to owners or occupants of

-23-

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:56 GMT-04 AST, EDT

BOOK 557 PAGE 428

adjoining neighboring property or for any extra hazardous purpose which would suspend, void or make inoperative any policy or policies of insurance at any time carried on any improvements in the Shopping Center.

(d) Ward hereby agrees that during the term of this Agreement no part of Parcel A shall be used for the operation of: (i) a supermarket food store, but nothing contained in this clause (i) shall be deemed to prohibit the operation of a restaurant or snack bar on Parcel A or the operation of a candy counter or gourmet shop in the retail department store on Parcel A or the catalog sale of food stuffs through the catalog desk in the retail department store on Parcel A; (ii) a theatre or auditorium for public shows, but nothing contained in this clause (ii) shall be deemed to prohibit the operation in the retail department store on Parcel A of fashion shows and other non-profit entertainment provided no admission is charged therefor, except for fashion shows; and (iii) the sale of prescription drugs which must be made pursuant to municipal, state or federal law by a licensed pharmacist.

(e) Ward hereby agrees that during the term of this Agreement Ward will not lease, sublease, license or otherwise permit any occupant of a portion of Parcel A except Montgomery Ward & Co., Incorporated or an affiliate thereof, to use the premises demised or occupied by such entity as a junior department store, 5 and 10 cent store, 5 cent to $1.00 store, 25 cent to $1.00 store or variety store (whether limited priced or not).

SECTION 10. (a) Ward hereby agrees that for a period of ten (10) years commencing on the date upon which Ward opens its retail department store on Parcel A to the general public for business, Ward or a controlling or subsidiary corporation

-24-

Confidential
Kristine Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

BOOK 557 PAGE 449

foregoing option shall be exercised prior to the date that Developer has completed the Site Work, then the payments to be made pursuant to paragraphs (a) and (d) of Section 1 hereof shall be adjusted so that the percentages referred to in each said paragraph shall be recomputed and Ward shall pay its pro rata share, on the basis of the ratio that Parcel A bears to Parcel B and such additional after-acquired land.

(i) Employees or agents of Ward have no authority to make or agree to make this Agreement. This Agreement shall not be binding upon Ward until it has been executed on behalf of Ward by one of its corporate officers. No act of omission of any employee or agent of Ward shall alter, change or modify any of the provisions of this Agreement. Any alterations, changes and modifications of this Agreement shall be effective only when made in writing and executed in behalf of Ward by one of its corporate officers.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed under seal in several counterparts, each of which shall be deemed an original as of the day and year first hereinabove written.

ATTEST:                          MONWAR PROPERTY CORPORATION

_____        By _____
          Secretary                      Treasurer

ATTEST:                          MANASSAS INTERSTATE PROPERTIES, INC.

_____        By _____
          Secretary                      President

-46-

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

BOOK 557 PAGE 450

STATE OF _Illinois_  )
                     ) SS.:
COUNTY OF _Cook_     )

I, _Daria M. Juresk_, a Notary Public for the County aforesaid, in the State of _Illinois_, do certify that _Roger M. Vasey_ and _James G. McWaters_ as ~~President~~ _Treasurer_ and _Asst._ Secretary of MONWAR PROPERTY CORPORATION, whose names are signed to the writing above annexed hereto bearing date on the _9th_ day of March, 1970, have acknowledged same before me in my county aforesaid.

Given under my hand and official seal this _9th_ day of March, 1970.

_Daria M. Juresk_
Notary Public

My Term of Office Expires  My Commission Expires November 17, 1973

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:58 GMT-04 AST, EDT

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:56 GMT-04 AST, EDT

BOOK 557 PAGE 451

STATE OF New York    )
                     : SS.:
COUNTY OF New York   )

I, Richard E. Carter, a Notary Public for the County aforesaid, in the State of New York, do certify that Steven Roth and Russell B Wight, Jr. as President and Secretary of MANASSAS INTERSTATE PROPERTIES, INC., whose names are signed to the writing above annexed hereto bearing date on the 30th day of April, 1970, have acknowledged same before me in my county aforesaid.

Given under my hand and official seal this 30th day of April, 1970.

*[signature]*
Notary Public

RICHARD E. CARTER
Notary Public, State of New York
No. 31-5635185
Qualified in New York County
Commission Expires March 30, 1970

My Term of Office Expires _____

confidential
Kristina Prator
Jones Lang LaSalle
Jan 11, 2013 15:56 GMT-04 AST, EDT