**CLARK HILL, PLC**
151 S. Old Woodward Ave., Ste. 200
Birmingham, Michigan 48009
Telephone:      (248) 988-1817
Facsimile:      (248) 988-2336
David M. Blau (MI P52542) (Admitted pro hac vice)

*Attorneys for Lakewood Shopping Center, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| _____ x | . | **Chapter 11** |
| | . | |
| In re: | . | **Case No. 18-23538-rdd** |
| | . | |
| SEARS HOLDINGS CORPORATION., | . | |
| *et al.,* | . | **(Jointly Administered)** |
| | . | |
| Debtors. | . | Objection Deadline: May 3, 2019 at 11:30 a.m. |
| _____ x | | |

**OBJECTION AND SUPPLEMENTAL OBJECTION OF LAKEWOOD SHOPPING
CENTER, LLC TO THE DEBTORS' NOTICE OF ASSUMPTION AND ASSIGNMENT
OF ADDITIONAL DESIGNATABLE LEASES**

Lakewood Shopping Center, LLC ("Landlord"), through counsel, hereby submits this objection

(the "Objection") to the Debtors' *Notice of Assumption and Assignment of Additional Designatable*

*Leases* (the "Assumption Notice")[1], and respectfully represents as follows:

**Introduction**

1.      Landlord is the owner of the retail premises located at 2095 Rawsonville Rd., Belleville,

MI (Store #210) which the Debtor leases from Landlord.

2.      On October 15, 2018, the above captioned debtors (the "Debtors") filed a petition for

---

[1] Docket No. 3298

1

relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

3.       On January 18, 2019, the Debtors filed their Cure Notice [Docket No. 1731] ("Cure Notice").   Per the Cure Notice, the Debtors indicated the contracts and leases to be potentially assumed and assigned and the corresponding cure costs associated with each.   The amount set forth in the Cure Notice did not reflect all outstanding balances owing to the Landlord under the Lease, and the proposed amount did not include accrued but unbilled charges which may be due in the future under the Lease.

4.       As a result, on January 25, 2019, Landlord timely and properly filed *Lakewood Shopping Center, LLC's Objection and Reservation of Rights to Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction ("Cure Objection")*[2]   Landlord repeats and reincorporates by reference its objections contained in the Cure Objection.

5.       To temporarily address certain sale objections, the Debtors and Buyer agreed that all of the real property lease assumption and assignment issues raised in the various sale objections, with the exception of cure issues, were reserved until the Purchaser designated specific leases for assumption and assignment to Purchaser.

6.       On February 8, 2019, the Court entered an order approving the sale of substantially all of the Debtors' assets to Buyer[3].

7.       On April 19, 2019, the Debtors filed the Assumption Notice, which lists the Lease as an

---

[2] Docket #1845.

[3] Docket #2507.

221574463.1 39729/340938

"Additional Designatable Lease" as defined in the Assumption Notice.

8.      As set forth below, the correct amount under the Lease ("Cure Amount") is as more fully

set forth below:

| Debtor's Store # | Landlord | Shopping Center | Landlord's Cure Claim | Debtor's Anticipated Cure Claim | Exhibit |
|---|---|---|---|---|---|
| 3155 | Lakewood Shopping Center, LLC | Lakewood (Belleville, MI) | $71,184.46<br><br>$1,500 Attorney's Fees<br><br>**$72,684.76** | $0.00 | A |

### A.   The Debtors Must Provide Adequate Assurance of Future Performance for Shopping Center Leases

9.      In connection with the assumption of leases, shopping center landlords are afforded

special statutory protections under the Bankruptcy Code in the form of adequate assurance of future

performance.  *In re Joshua Slocum*, 922 F.2d 1086; *In re Trak Auto Corp.,* 277 B.R. 655 (Bankr. E.D.

Va. 2002). Additionally, Section 365(b)(1) and 365(f)(2) of the Code have not been met.

10.     The Debtors bear the burden of proving adequate assurance of future

performance in connection with the potential assumption or assumption and assignment of the Leases. *In*

*re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109

B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312

(Bankr. E.D.N.Y. 1981).

11.     The heightened adequate assurance requirements include the following:

• The source of rent and assurance that the financial condition and opening performance of the
proposed assignee and its guarantors, if any, must be similar to the financial condition and

3

operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee.  See 11 U.S.C. §365(b)(3)(A);

• That any percentage rent due under the lease will not decline substantially.  See 11 U.S.C. §365(b)(3)(B);

• That assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. §365(b)(3)(C); and

• That assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. §365(b)(3)(D).

12.     At a minimum, Landlord and its attorney need the following information from the exact

proposed assignee(s) of each of the Lease to determine whether the requirements of adequate assurance

of future performance will be satisfied:

(i)      The exact name of the entity which is going to be designated as the Proposed Assignee;

(ii)     The proposed assignee's and any guarantor's tax returns and audited financial statements (or un-audited, if audited financials are not available) and any supplemental schedules for the calendar or fiscal years ending 2016, 2017, and 2018;

(iii)    The number of stores the Proposed Assignee operates and all trade names that the Proposed Assignee uses;

(iv)     A statement setting forth the Proposed Assignee's intended use of the premises;

(v)      The Proposed Assignee's retail experience and experience operating in-line stores in a shopping center;

(vi)     The Proposed Assignee's 2018 and 2019 business plans, including sales and cash flow projections; and

(vii)    Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Leases.

13.     Until Landlord receives all of this information, the Debtors have not satisfied their burden

4

pursuant to 11 U.S.C. §365(b)(3).

**B.**   **Lease Must Be Assumed and Assigned Cum Onere**

14.     Section 365(b)(3)(c) of the Code requires that an unexpired lease be assumed as "an all-or-nothing proposition," either the whole contract must be assumed or entirely rejected. See, e.g., *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

15.     The Debtors are not entitled to the benefits and protections of section 365(k) if they do not assume and assign a lease *cum onere* – with all of the benefits and burdens. See, e.g., *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

16.     The *cum onere* principle and Section 365 of the Code also mandate that restrictive covenants be respected in connection with a lease assignment.

17.     The Buyer or the assignee must provide adequate assurance that they will pay all year-end adjustments, including without limitation, adjustments for 2017, 2018, and 2019 which have not yet been billed or have not yet become due under the Lease terms.  The Buyer or assignee must be responsible to satisfy the adjustment amounts, if any, when due in accordance with the Lease terms, regardless of whether the adjustment amounts were incurred before or after assumption and assignment of the Lease.

18.     The Buyer or assignee must also be required to comply with all contractual obligations to indemnify and hold the Landlord harmless with regard to events which occurred prior to assumption and assignment but which agree not known to the Landlord as of the date of assumption and assignment. This includes, but is not limited to, (i) claims for personal injury, (ii) damage and destruction by the Debtors or their agents, and (iii) environmental damage or clean-up.  To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with response to the

5

indemnification obligations under the Lease wither (a) the Buyer or assignee must be required to assume all responsibility for any and all such claims, notwithstanding anything to the contrary contained in any court order, or (b) the Debtors must be required to demonstrate or obtain adequate assurance (by purchaser of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment, such claims for indemnity could include claims for personal injury occurring at the premises were Landlord is joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

19.     The Lease cannot be assumed and assigned until the issues raised in the various sales objections are addressed and resolved.

### C.  Any Assignment of Leased Real Property Must be Subject to all Applicable Restrictive Covenants

20.     Landlord objects to the application of the Assignment Order to it Lease, because the order does not provide that any such assignment is subject and requires compliance with all applicable reciprocal easement agreements and other restrictive covenants. Such recorded agreements are designed to facilitate orderly operation of the shopping center and to maximize the value of the shopping center for all parties.  A Debtor cannot sell free and clear of restrictive covenants under applicable law as such rights have been found to be non-executory (and therefore not subject to rejection) and/or to run with the land.  Additionally, any question regarding whether a restrictive covenant runs with the land may not be decided in the context of a sale hearing, but instead must be addressed pursuant to a separate adversary proceeding.  *See In re Sabine Oil & Gas Corp*, 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016) *aff'd,* 567 B.R. 869 (S.D.N.Y. 2017), *aff'd* 734 F. App'x 64 (2d Cir. 2018).  Therefore, restrictive covenants cannot be stripped as part of the assignment and assumption process at all; instead, any such attempt would require

6

declaratory relief that may only be obtained pursuant to an adversary proceeding. *See Id.*

**Reservation of Rights and Joinder**

21.     The Landlord reserves any and all rights to supplement or amend this Objection, including without limitation, to add or supplement objections to the proposed cure amount, include any future or supplement cure notice, and to raise any additional objections to the potential assumption or assumption and assignment of the Lease.

22.     The Landlord joins in any objections filed by the Debtors' other landlords with respect to the Cure Notice to the extent that such objections are not inconsistent with this Objection.

WHEREFORE, Landlord respectfully requests that the Court enter an order: (i) conditioning the assumption and assignment of the Lease on the Debtors, the Buyer, and/or any proposed assignee promptly paying the Cure Amount; (ii) requiring the Debtors, the Buyer, or any proposed assignee to continue to comply with all obligations under the Lease, including payment of the adjustment amounts and satisfaction of any indemnification obligations in the regular course of business, and (iii) granting such other and further relief as the Courts deems just and proper.

Respectfully submitted,

CLARK HILL, PLC

Dated:  May 2, 2019

/s/ David M. Blau
David M. Blau (MI P52542) (Admitted pro hac vice)
151 S. Old Woodward Ave., Ste. 200
Birmingham, MI  48009
Tel. (248) 988-1817
Fax. (248) 988-2336
dblau@clarkhill.com
*Counsel to Lakewood Shopping Center, LLC*

7

# EXHIBIT "A"

221574463.1 39729/340938

Database: SBCI_PROD

Schostak Aged Delinquencies with Monthly Recurring Charges
Production
Date: 4/23/2019

Page: 1
Date: 4/23/2019
Time: 08:08 AM

415LAK-KMAR05  Kmart #3155  Master Occupant Id: KMAR05-1
Cheryl Schwartz/ CH11/10-16-18
847-286-1696

Day Due: 1  Delq Day: 4/4/2019
Last Payment: 21,006.83

RNT  MINIMUM RENT   21,006.83

| Invoice Date | Category | | | Source | Amount | Current | 30 | 60 | 90 | 120 | Current Recurring Charges |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/23/2018 | TAX | TAX REIMBI | 2018 Summer Taxes | CH | 44,413.56 | 0.00 | 0.00 | 0.00 | 0.00 | 44,413.56 | |
| 1/24/2019 | TAX | TAX REIMBI | 2018 WINTER TAX | CH | 26,770.90 | 0.00 | 26,770.90 | 0.00 | 0.00 | 0.00 | |
| Kmart #3155 Total: | | | | | 71,184.46 | 0.00 | 26,770.90 | 0.00 | 0.00 | 44,413.56 | |
| LEAS 415LAKKMAR05 Total: | | | | | 71,184.46 | 0.00 | 26,770.90 | 0.00 | 0.00 | 44,413.56 | |
| Grand Total: | | | | | 71,184.46 | 0.00 | 26,770.90 | 0.00 | 0.00 | 44,413.56 | |

Total Recurring:   21,006.83