**REED SMITH LLP**
Christopher A. Lynch, Esq.
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

*Attorneys for A.R.E. Investment Co.*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                 :
In re:                                                           :  Case No. 7:18-bk-23538-rdd
                                                                 :
SEARS HOLDINGS CORPORATION, *et al.*,                            :  Chapter 11
                                                                 :  (Jointly Administered)
                                              Debtor.            :
                                                                 :
-----------------------------------------------------------------x

**OBJECTION OF A.R.E. INVESTMENT CO. TO NOTICE OF
ASSUMPTION AND ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES**

A.R.E. Investment Co., as landlord ("Landlord"), through its undersigned counsel, submits this objection (this "Objection") to the Notice of Assumption and Assignment of Additional Designatable Leases [Docket No. 3298] (the "Cure Notice"), and states as follows:

### I. INTRODUCTION AND BACKGROUND

1. On October 15, 2018 (the "Petition Date"), Sears Holding Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court").

2. Landlord is a party to a certain Indenture of Lease dated as of July 10, 1957, as amended by a First Agreement Supplementing Lease dated December 5, 1957 (as amended and extended from time to time, the "Lease") with certain of the Debtors for nonresidential real property located at 400 W. Warner Avenue, Santa Ana, CA (formerly known as Sears PS Branch #8369) (the "Property").

3. On November 19, 2018, the Bankruptcy Court entered an *Order Approving Global Bidding Procedures and Granting Related Relief* [Docket. No 816] (the "Global Bidding Procedures Order") approving the global bidding and sale procedures in connection with the sale or disposition of substantially all of the Debtors' assets, among other relief. On January 18, 2019, the Debtors filed a *Notice of Successful Bidder and Sale Hearing* [Docket No. 2082] (the "Sale Notice"), which described the "Global Asset Sale Transaction", as defined therein.

4. On January 18, 2019, the Debtors filed the Notice of Successful Bidder and Sale Hearing [Docket No. 1730], which provided that the Debtors had determined that a bid submitted by ESL Investments, Inc. and its affiliates, through Transform Holdco LLC (the "Buyer") was the prevailing bid at the auction.

5. On January 23, 2019, the Debtors filed a Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction [Docket No. 1774] (the "First Cure Notice"), pursuant to which the Debtors stated that the proposed pre-petition cure amount for the Lease (identified as No. 331 in the First Cure Notice) was $666.67 (the "Cure Amount").

6. On January 30, 2019, the Landlord objected to the First Cure Notice (the "First Objection"), which is incorporated by reference herein, on the basis that it was woefully

inadequate. [Docket No. 2205.]  As set forth in the First Objection, the Debtors had abandoned the Property and allowed it to fall into disrepair, causing it to become a potential safety and fire hazard.  Now, more than three months after the First Objection and notwithstanding repeated demands by the Landlord, the Debtors and Buyer continue to fail to provide any proof of insurance on the Property, proof that property taxes had been paid on the Property, or to provide for payment of Landlord's attorneys' fees.

7. On February 1, 2019, ESL filed an Omnibus Response in Support of the Going Concern Sale Transaction [Docket No. 2353], and the Declaration of Kunal S. Kamlani in Support of the Omnibus Response [Docket No. 2356] (together, the "Omnibus Response"). Tellingly, the Omnibus Response states that the prospective buyer "will assume over one hundred dark properties that it plans to sell after closing, which should generate over $100 million." [Docket No. 2352 at ¶ 73.]  Otherwise, the buyer makes vague assurances about its ability to cure leases and its financial wherewithal, but fails to address any of the issues raised in Landlord's First Objection.

8. On February 8, 2019, the Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief (the "Sale Order") [Docket No. 2507] was entered by the Court, approving the sale to the Buyer.

9. Most recently, on April 19, 2019, the Buyer filed its Notice of Assumption and Assignment of Additional Designatable Leases (the "Second Cure Notice") [Docket No. 3298],

in which the Landlord was identified at Line No. 479 of Exhibit A, and pursuant to which the Buyer **once again** asserted that the cure amount was $666.67. The Second Cure Notice completely disregards Landlord's First Objection.

10. Moreover, the Buyer has ignored the Landlord for more than three months and has made no effort whatsoever to provide any assurances that it will promptly cure the defaults under the Lease. In an effort to reach resolution on these matters, Landlord's counsel has contacted counsel for both the Debtors and the Buyer to inquire about the lease defaults and how they will be cured, including by emails dated March 13, March 19, April 8, and with multiple letters from the Landlord and from Landlord's counsel. Attached as **Exhibit A** are copies of some of the correspondence by and between Landlord, the Debtors, and the Buyer. Throughout these months of requests from the Landlord, neither the Debtors nor the Buyer have provided one iota of information about how and when they intend to cure any of the defaults in the Lease. At a bare minimum, Landlord should have been provided with proof of insurance and payment of taxes, but not even this bare minimum of information has been provided. In particular, the lack of proof of insurance is problematic in light of the potential health, safety and security risks posed by the Property's abandonment and condition.

11. The lack of communication from the Buyer is so dire that even though Landlord has been requesting an updated notice address for almost a month, the Buyer has yet to provide even this most basic information.

12. It is not only this Landlord that Buyer is ignoring  Countless landlords have objected to the treatment proposed by the Buyer, but it appears the Buyer is ignoring all of these objections and has, instead, revealed its true motives to sell-off these leases, post-assumption, but

without having made any effort to actually cure the defaults or meet its statutory obligations under Bankruptcy Code section 365(b)(1) to provide cure and adequate assurance. In all likelihood, the Buyer is hoping to make it the problem of purchasers of such leases to cure the defaults, and is hoping that this Court will approve its scheme. However, there is nothing in the Bankruptcy Code that permits a purchaser to assume lease obligations without actually curing the lease obligations, with the express purpose of re-selling those obligations to another party in an uncured state.

## II.  OBJECTION

### A.  The Legal Standard For Assumption of a Lease

13. In order to assume a Lease, Section 365(b)(1) of the Bankruptcy Code, requires a debtor to cure, or provide adequate assurance of a prompt cure, all outstanding defaults under any lease. 11 U.S.C. § 365(b)(1). Moreover, a lease must be assumed in its entirety. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and rejected in part . . . The trustee must either assume the entire contract, cum onere, or reject the entire contract, shedding obligations as well as benefits.").

14. Pursuant to Section 365(f)(2) of the Bankruptcy Code, a lease is only assignable if it has been assumed in accordance with Section 365(b)(1) and the moving party has provided "adequate assurance of future performance" with respect to leases. In assessing adequate assurance of future performance, "the test is not one of guaranty, but simply whether it appears that the rent will be paid and other obligations met." *In re Embers 86th Street, Inc.,* 184 B.R. 892, 902 (Bankr. S.D.N.Y. 1995). In performing this analysis, courts "look for evidence of profitability . . . a plan that

would earmark money exclusively for the landlord…or the willingness of debtor or debtor's assignee to fund the cure payments." *Id*.

15. The Debtors and/or proposed assignee bear the burden on adequate assurance issues. 11 U.S.C. § 365(b)(1)(C), (f)(2); *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) ("[T]he lessor must be given adequate assurance of future performance so that it will be protected from having to take on the burden of a tenant who may be likely to default on his lease obligations . . . "); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

B. **The Debtors have Failed to Provide for an Adequate Cure or for Adequate Assurance of Performance of the Terms of the Lease**

16. Here, despite repeated requests from the Landlord to both the Debtors and the Buyer for cure and/or adequate assurance of cure, neither the Debtors nor the Buyer have provided any cure or adequate assurance.

17. As has already been established by the First Objection, among other things, the Proposed Cure Amounts asserted by the Debtors are inaccurate and fail to include, without limitation: (i) maintenance costs; (ii) proof that real estate taxes have been paid current; (iii) proof that the Property is adequately insured; and (iv) attorneys' fees.  Attorneys' fees have increased since the time of the First Objection and are currently in the approximate amount of $25,000, and they continue to increase as a direct result of the Buyer's failure to substantively respond to any cure issues or to provide appropriate adequate assurance.

18. Section 9(b) of the Lease provides that "Lessee, at its own cost and expense, shall keep the leased premises, all improvements which at any time during the term of this lease may

be situated thereon and any and all appurtenances thereunto belonging, in good condition and repair during the entire term of this lease . . ."

19.  As was set forth in the First Objection, and has been communicated repeatedly to the Buyer, the Property is in disrepair.  The structures on the Property are boarded up and appear to be in dangerous condition.   The Property is a magnet for the homeless, and the Landlord is concerned that the structures on the Property may constitute a safety hazard, as well as potentially a fire hazard.  The Lease permits the lessee to use the property for any "lawful purpose", but it appears that the Debtors – and now the Buyer – have permitted the Property to fall into such disrepair that there is a very real risk that The City of Santa Ana will pursue code enforcement remedies for the abandoned Property, which could include obtaining a contractor to remediate the property and to bill the **owner** of the Property (the Landlord), for costs and fees. *See* [https://www.santa-ana.org/pb/code-enforcement-division/dangerous-and-abandoned-buildings-dabs](https://www.santa-ana.org/pb/code-enforcement-division/dangerous-and-abandoned-buildings-dabs) (governing dangerous and abandoned buildings).

20.  Photographs recently taken of the Property demonstrate that the location has been closed and has fallen into serious disrepair as a consequence of the Debtors' neglect:







21.  Section 7 of the Lease provides that Lessee must promptly pay all taxes, assessments, and other public charges.  Section 13(a) of the Lease provides that Lessee must maintain public liability insurance, elevator insurance, and must insure any improvements on the Property from loss or damage in an amount equal to 90% of the full insurable value of the improvements.

22.  Since December 2018, the Landlord has contacted the Debtors, the Buyer, and their respective counsel more than half a dozen times requesting a current Certificate of Insurance with respect to the Property and proof that the property taxes have been paid current. To date, no proof of insurance or payment of property taxes has been provided to the Landlord, notwithstanding months of efforts by Landlord and its counsel to obtain such proof.  It appears

clear that the Landlord has no intention of curing these defaults and, in all likelihood, expects its subsequent "purchaser" to deal with them. This is not permissible under Section 365 of the Bankruptcy Code, which requires cure and adequate assurance **prior** to the Buyer's assumption.

23. Lastly, Section 21 of the Lease provides that Lessee is liable for the Landlord's reasonable attorneys' fees in the event of the default of any obligations owed by Lessee under the Lease. To date, Landlord has incurred approximately $25,000 in attorneys' fees, the amount of which continues to accrue.

### C. Reservation of Rights and Conclusion

24. In addition to the foregoing specific objections, Landlord hereby joins in the objections filed by other landlords with respect to the foregoing filings by the Buyer, and expressly reserves its rights to supplement this Objection or to make additional objections as Landlord determines is appropriate, including on the basis that additional defaults are discovered under the Lease.

25. Landlord objects to any proposed assumption that does not fully cure outstanding defaults under the Lease and otherwise provide adequate assurance of future performance of all terms under the Lease, including maintenance obligations, tax and insurance obligations, and payment of attorneys' fees.

| | |
|---|---|
| Dated: New York, New York<br>May 2, 2019 | **REED SMITH LLP**<br><br>By: /s/ Christopher A. Lynch<br>Christopher A. Lynch, Esq.<br>599 Lexington Avenue<br>New York, NY 10022<br>Telephone: (212) 521-5400<br>Facsimile: (212) 521-5450<br>Email: clynch@reedsmith.com<br><br>*Attorneys for A.R.E. Investment Co.* |