| | |
|---|---|
| David L. Pollack, Esquire<br>**Ballard Spahr LLP**<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>Direct: (215) 864-8325<br>E-mail: Pollack@ballardspahr.com<br><br>Dustin P. Branch, Esquire<br>**Ballard Spahr LLP**<br>2029 Century Park East, Suite 800<br>Los Angeles, CA 90067-2909<br>Direct: (424) 204-4354<br>E-mail: branchd@ballardspahr.com | **Obj. Deadline: May 3, 2019 at 11:30 a.m. ET**<br>**Hearing Date:  May 8, 2019 at 10:00 a.m. ET**<br><br>Leslie C. Heilman, Esquire<br>**Ballard Spahr LLP**<br>919 N. Market Street, 11th Floor<br>Wilmington, DE 19801<br>Direct: (302) 252-4465<br>E-mail: heilmanl@ballardspahr.com<br><br>Eric Burkhardt<br>**Beall & Burkhardt, APC**<br>1114 State Street, Suite 200<br>Santa Barbara, CA 93101<br>805-966-6774<br>E-mail: Eric@Beallandburkhardt.com |

*Attorneys for Sphear Investments, LLC*
*(incorrectly listed in Debtor's schedules as*
*Stephen Redding)*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                         :    Chapter 11
                                                              :
SEARS HOLDINGS CORPORATION, *et al.*,                         :    Case No. 18-23538 (RDD)
                                                              :
                                    Debtors.                  :    (Jointly Administered)
                                                              :
------------------------------------------------------------x

**CURE OBJECTION OF SPHEAR INVESTMENTS, LLC (INCORRECTLY LISTED IN DEBTOR'S SCHEDULES AS STEPHEN REDDING) RELATING TO THE DEBTORS' NOTICE OF ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES DATED APRIL 19, 2019**

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY COURT JUDGE:**

Sphear Investments, LLC (incorrectly listed in Debtor's schedules as Stephen Redding; "Landlord"), by its undersigned attorneys, hereby makes this Objection (the "Objection") to the Debtors' Notice of Assignment of Additional Designatable Leases dated April 19, 2019 [Docket No. 3298] (the "Designation Cure Notice") and in support thereof aver:

**I.    BACKGROUND FACTS**

1.    Sears Holding Corporation, and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United

States Code on October 15, 2018. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[1]

2. The Debtors lease retail space (the "Premises") identified as store #7165 from Landlord pursuant to an unexpired lease of nonresidential real property (the "Lease,") at the shopping center (the "Center") located at 940 Arneil Road, Camarillo, California.

3. The Center is a shopping center as that term is used in 11 U.S.C. § 365(b)(3). See In Re: Joshua Slocum, Ltd., 922 F.2d 1081 (3d Cir. 1990).

4. In connection with the sale of the Debtors' assets to Transform Holdco LLC, the Debtors filed and served their initial Cure Notice on January 18, 2019, which notice was supplemented on the evening of January 23, 2019. Landlord did not object to such cure notice as the Debtor's real estate representatives had indicated to Landlord that they would pay the installment of Property taxes that came due on November 1, 2018 (i.e. after the filing date). The amount of such installment was $89,688.08. Subsequent to the cure objection deadline, for the first time, Debtor's real estate representatives informed landlord that they would only pay for the portion of such Property taxes that was for the post-petition period, or $38,019.95. The Debtor's real estate representatives advised Landlord in writing on January 29, 2019, to include the unpaid portion of $51,668.13 in Landlord's claim. The Landlord timely filed its proof of claim in the amount of $65,203.23, which is attached as Exhibit A. Such amount includes the 3rd quarter 2018 CAM reconciliation of $13,537.10 plus the unpaid portion of the Property taxes.

5. The Debtors filed the Designation Cure Notice on April 19, 2019, which includes the Premises. The amount set forth in the Designation Cure Notice of $13,470.74 does not reflect any of the unpaid property taxes and understates the outstanding balance for the 3rd quarter 2018 CAM by $66.36. Thus, the stated cure amount in the Designation Cure Notice understates the amount due and owing to Landlord by $51,734.49. The correct cure amount for the Premises, Store 7165, is $65,205.23. The cure amount set forth by the Debtors must be

---

[1] All statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Unless otherwise specified in this Motion.

modified to reflect the actual charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

## II. CURE OBJECTION

### A. The Debtors' proposed cure amount does not provide for payment of all obligations due under the Lease.

5. Landlord objects to the revised cure amount of $13,470.74 proposed by the Debtors. The Landlords' revised cure, as compared to the Debtors' amended cure, is summarized below, and those charges comprising the Landlord's cure are more fully detailed in Exhibit A, which is attached hereto and incorporated into this Objection by this reference:

| Landlord | Center | Store No. | Debtor's Initial Cure | Amended Debtors' Cure | Landlords' Cure | Ex. |
|---|---|---|---|---|---|---|
| Camarillo | Camarillo Central Shopping Plaza (Kmart) | 7165 | $34,246.00 | *$13,470.74* | **$65,205.23** | A |

6. In addition to the current outstanding rent and other monthly charges due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration any amounts, paid by the Debtors or assignee, either as cure or when properly billed under the Leases.

*i.    Year-end adjustments and reconciliations*

7. In addition to rent and related monthly charges, attorneys' fees, costs, and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the Center pursuant to a triple-net lease, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts

3

estimated and paid against actual charges incurred at the respective Center.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. - year-end reconciliations and adjustments that accrued through 2018 may not yet have been billed at most locations, and such charges that are accruing for 2019 will not be billed until 2020).  In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.  Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time.

8. Nevertheless, the lessees under the Lease remain responsible for all accrued or accruing charges under the Lease, and must pay such charges <u>when</u> <u>they</u> <u>come</u> <u>due</u> under the Lease.  The Debtors (or successor) assume the Lease subject to their terms, and must assume all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease.  Any final sale order should clearly state that the Debtors (or successor) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment.  In addition, any provision in a sale order that purports to release the Debtors (or successor) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease.

9. In addition, the Lease requires the Debtors to indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Center by the Debtors or their agents, as well as environmental obligations that may have accrued or are accruing under the

Lease. Any assumption and assignment of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period prior to assumption and assignment of the Lease. Nothing in any sale order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the Landlord requests that any order specifically preserve its right to pursue such rights irrespective of any resolution of cure amounts herein.

ii.     *Attorneys' fees, costs, and interest*

10.     The Lease contains provisions for recovery of attorneys' fees, costs, and interest in the event the Landlord is required to take legal action to protect its interests. The Debtors are obligated to cure all defaults under the Lease, and compensate the Landlord for their actual pecuniary losses as a result of defaults under the Lease. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured all pre-petition defaults).

11.     The Debtors (or successor) take the Lease *cum onere* – subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of their Lease. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993). If forced to continue in the performance of the Lease, the Landlord is entitled to the full benefit of the bargain under their Lease with the Debtors. *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re

5

Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Lease. *See* In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D.N.Y. 1990). Interest calculations are, therefore, not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlord for the Debtors' default under the Lease, and thus to properly assume the Lease. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Lease. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

12. Landlord has incurred, or will incur as part of this cure objection, significant attorneys' fees in connection with protecting its interests in these cases, which fees are not less than $5,000.00. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases. Entertainment, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., *see also*, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has also

6

upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

**B.    The Cure Amounts Serve Only As Estimates.**

13.    Landlord can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Lease.

**C.    The Debtors or Assignee Must Pay Undisputed Cure Amounts Immediately.**

14.    Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption. To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid immediately. Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

**III.    JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS**

15.    To the extent consistent with the objections expressed herein, Landlord also joins in the objections of other shopping center lessors to the Debtors' proposed relief.

**IV.    CONCLUSION**

The Landlord requests that the Court (i) allow the cure amounts (subject to adjustment by the Landlords) in the amount set forth herein, (ii) order payment of all undisputed cure amounts, with an escrow established that is sufficient to pay any remaining disputed cure amounts, when resolved by the parties or this Court, and (iii) grant such further relief as the Court deems proper.

| | |
|---|---|
| Dated: May 3, 2019<br>New York, New York | Respectfully submitted,<br><br>*/s/ Dustin P. Branch*<br>Dustin P. Branch, Esquire<br>(Admitted *pro hac vice*)<br>**Ballard Spahr LLP**<br>2029 Century Park East, Suite 800<br>Los Angeles, CA 90067-2909<br>Direct: (424) 204-4354<br>Fax: (424) 204-4350<br>E-mail: branchd@ballardspahr.com<br><br>- and -<br><br>David L. Pollack, Esquire<br>(Admitted *pro hac vice*)<br>**Ballard Spahr LLP**<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>Direct: (215) 864-8325<br>E-mail: Pollack@ballardspahr.com<br><br>- and -<br><br>Leslie C. Heilman, Esquire<br>**Ballard Spahr LLP**<br>919 N. Market Street, 11th Floor<br>Wilmington, DE 19801<br>Direct: (302) 252-4465<br>E-mail: heilmanl@ballardspahr.com<br><br>Eric Burkhardt<br>**Beall & Burkhardt, APC**<br>1114 State Street, Suite 200<br>Santa Barbara, CA 93101<br>805-966-6774<br>E-mail: Eric@Beallandburkhardt.com<br><br>*Attorneys for Sphear Investment, LLC (incorrectly listed in Debtor's schedules as Stephen Redding)* |