## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br>(Jointly Administered)<br><br>Re:  Docket Nos. 3298, 3299<br><br>Objection Deadline:  May 3, 2019, at 11:30 a.m. (ET) |

**OBJECTION OF ALAN ROBBINS, BENDERSON DEVELOPMENT COMPANY
LLC, BROOKFIELD PROPERTY REIT INC., GRAY ENTERPRISES, LP,
GRAZIADIO INVESTMENT COMPANY, GREGORY GREENFIELD &
ASSOCIATES, LTD., LF2 ROCK CREEK LP, LBA REALTY, LLC, NASSIMI
REALTY LLC, REALTY INCOME CORP., REGENCY CENTERS CORP.,
SITE CENTERS CORP., SPIGEL PROPERTIES, THE WOODMONT COMPANY,
AND WEINGARTEN REALTY INVESTORS TO NOTICES OF ASSUMPTION
AND ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES**

Alan Robbins, Benderson Development Company LLC, Brookfield Property REIT Inc.,

Gray Enterprises, LP, Graziadio Investment Company, Gregory Greenfield & Associates, Ltd.,

LF2 Rock Creek, LP, LBA Realty, LLC, Nassimi Realty LLC, Realty Income Corp., Regency

Centers Corp., Site Centers Corp., Spigel Properties, The Woodmont Company, and Weingarten

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SHC Licensed Business LLC (3718); and SHC Promotions LLC (9626). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Realty Investors (the "Landlords"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the Debtors' *Notices of Assumption and Assignment of Additional Designatable Leases* filed at Docket Nos. 3298 and 3299 (the "Assignment Notices")[2] and application of the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (the "Assignment Order")[3] to the Leases (as defined below).  In support of this Objection, the Landlords respectfully state as follows:

### PRELIMINARY STATEMENT[4]

1.    Transform and the Debtors have failed to satisfy their burden of providing adequate assurance of future performance under the Leases.  Neither party has provided the Landlords with any adequate assurance for the proposed Assignees of the Leases.  The Landlords suspect that the Assignees are recently formed no asset entities that will not have the funds or resources to satisfy the ongoing obligations under the Leases.  With the sole exception of the LBA affiliated landlords, whose leases are for distribution centers, the Landlords, as lessors of shopping center leases, are entitled to heightened adequate protection, including evidence that the financial condition and operating performance of the Assignees is comparable to that of the Debtors when the Leases were entered into.  The Landlords have not received this information. The Landlords and Transform are in discussions regarding alternative forms of adequate assurance to ensure that the Landlords will have recourse in the event of the Assignees' default.

2.    Lease assignment is an all or nothing principle – Transform and the Assignees cannot simply strip out material provisions while exposing the Landlords to the risk of non-payment or upsetting the integrated and complex commercial relationship present in shopping

---

[2]    Docket Nos. 3298, 3299.

[3]    Docket No. 3008.

[4]    Capitalized terms used but not defined in this Preliminary Statement shall have the meaning ascribed to such terms elsewhere in the Objection.

centers.  As a result, the Assignees must (a) assume responsibility for all Adjustment Amounts, including those attributable to the pre-assignment period that have not been billed or come due under the Leases, (b) comply with all valid lease provisions, including any "go-dark" restrictions or limitations on alternations and signage, and (c) comply with all Restrictive Covenants contained in and related to the Leases.  Upon information and belief, Transform intends to narrowly tailor its request to assign the Leases free and clear of Restrictive Covenants but the Assignment Order still contains offensive language and Transform has not provided the Landlords with workable language to date.  The Landlords will continue to work with Transform to resolve or narrow these issues before the hearing on the Assignment Notices.

## BACKGROUND

3.      The Landlords are the owners, affiliates, or owners' managing agents of properties located throughout the United States where the Debtors lease non-residential real estate pursuant to written leases (each, a "Lease," and, collectively, the "Leases") for the locations listed on the attached Exhibit A (the "Leased Premises").  With the exception of certain distribution center premises,[5] the Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990) ("[T]he mall *is* the archetypal 'shopping center' ").

4.      On October 15, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

---

[5]      LBA Realty, LLC is the landlord to 5 distribution center leases that are designated for assignment.

5.     On January 18, 2019, following a two-day auction, the Debtors filed the *Notice of Successful Bidder and Sale Hearing* (the "Sale Notice").  The Sale Notice declared Transform Holdco, LLC ("Transform"), an entity established by ESL Investments Inc., as the successful bidder for substantially all of the Debtors' assets.

6.     Between January 18, 2019 and the date of this Objection, the Debtors have filed eight cure notices and the Debtors and Transform have filed seventeen notices of assumption and assignment of additional designatable leases (the "Assumption Notices") that (i) advised lease counterparties that their leases may be designated for assignment and (ii) set forth the Debtors' proposed cure amounts for those leases.

7.     The Landlords filed objections to the Sale Notice regarding the terms of the sale of the Debtors' assets to Transform (the "Sale Objection")[6] and to Assumption Notices, as applicable, regarding the proposed cure amounts and the assignment of the Leases.[7]

8.     The Sale Objection challenged numerous issues with respect to the assumption and assignment of the Leases, including responsibility for year-end adjustments, adequate assurance of future performance, invalidation of lease provisions, and the terms of the proposed sale order.  Numerous other shopping center landlords filed similar objections.

9.     To temporarily address the Sale Objection, the Debtors and Transform agreed that the issues raised in the Sale Objection were reserved until Transform designated specific leases for assumption and assignment.  Paragraph 3 of the order approving the sale (the "Sale Order")[8] to Transform defined these issues as the "Reserved Lease Issues" and expressly carved the issues out from the Sale Order and preserved them for future resolution.

---

[6]        Docket No. 2069.

[7]        Docket Nos. 2063, 2244, 2264, 2346.

[8]        Docket No. 2507.

10.    On April 2, 2019, the Court entered the Assignment Order.  The Assignment Order governs the terms and conditions with respect to the assumption and assignment of unexpired leases.  Like the Sale Order, paragraphs 28 and 29 of the Assignment Order expressly preserved the "Reserved Lease Issues" for future resolution.

11.    On April 19, 2019, Transform filed the Assignment Notices.  The Assignment Notices designated the Leases for assignment and listed Transform Operating Stores LLC and Transform Leaseco as the proposed assignees for the shopping center leases and Transform Distribution Center Holdco LLC for the distribution center leases (together, the "Assignees").

12.    The Assignment Notices also provided that Transform intends to assign the Leases free and clear of any interests, covenants, or rights to the extent the same limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, the "Restrictive Covenants").

13.    Paragraph 59 of the Sale Order required that the Debtors or Transform describe the Restrictive Covenant that the party is seeking to extinguish or diminish.  However, the Assignment Notices do not describe the Restrictive Covenants that Transform is seeking to extinguish and the Landlords have not been provided with a list of such Restrictive Covenants.

14.    The Landlords object to the Assignment Notices, the application of the Assignment Order to their Leases, and incorporate the arguments set forth in the Sale Objection to the extent applicable.

## **OBJECTION**

A.    **The Debtors, Transform, and the Assignees Have Not Met Their
Burden of Demonstrating Adequate Assurance of Future Performance**

15.    The Landlords have not received any evidence of adequate assurance for the Assignees.  If the Debtors seek to assume or assume and assign the Leases, sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are explicit that in addition to curing all defaults, the Debtors must also provide evidence of adequate assurance of future performance.[9]  Initially, Transform provided the Landlords with a letter (the "Letter") that provided little to no visibility into the financial affairs of Transform and makes no mention of the Assignees.  The night before the 11:30 a.m. (ET) objection deadline set by Transform, the Landlords received additional financial data from Transform, and are still in the process of evaluating that information.

16.    Under section 365(f)(2) of the Bankruptcy Code, a lease may only be assigned if (1) the lease is assumed in accordance with the requirements of section 365(b)(1) of the Bankruptcy Code and (2) the moving party provides adequate assurance of future performance by the proposed assignee, regardless of whether there has been a default.[10]  Section 365(b)(1) provides that if there has been a default in an unexpired lease, the trustee may not assume the lease unless, at the time of assumption of such lease, the trustee cures the defaults and provides adequate assurance of future performance under the lease.[11]  The Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption or assumption and assignment of the Leases.[12]

---

[9]    *See* 11 U.S.C. § 365(b)(1).

[10]    11 U.S.C. § 365(f)(2).

[11]    11 U.S.C. § 365(b)(1).

[12]    *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986) ("[T]he lessor must be given adequate assurance of future performance so that it will be protected from having to take on the burden of a tenant

17.    In addition, with the exception of the distribution centers, all of the Leased Premises are located in shopping centers.[13]  As a result, the Debtors or the Assignees must meet the specific, heightened requirements of adequate assurance under section 365(b)(3) of the Bankruptcy Code, which are intended "to protect the rights of lessors and the center's other tenants."[14] Under section 365(b)(3), adequate assurance of future performance under shopping center leases includes adequate assurance

> (A)    of the source of rent . . . due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee . . . shall be similar to the financial condition and operating performance of the debtor . . . as of the time the debtor came the lessee under the lease;

> (B)    that any percentage rent due under such lease will not decline substantially;

> (C)    that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease . . . relating to such shopping center, and

> (D)    that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.[15]

18.    The Bankruptcy Code does not define "shopping center" but "courts have interpreted the term on a case-by-case basis and generally consider, among other criteria, combination of leases, whether all leases are held by single landlord, presence of common

---

who may be likely to default on his lease obligations . . . "); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

[13]    Individual supporting affidavits from Landlords describing the Leased Premises and applicable shopping centers are being filed separately.

[14]    *In re Joshua Slocum*, 922 F.2d at 1086.

[15]    *See* 11 U.S.C. § 365(b)(3)

parking area, existence of master lease, and contiguity of stores."[16]   Here, the Leases are unquestionably "shopping center leases" under the Bankruptcy Code and the Leased Premises are within a "shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. The Leased Premises are located in one contiguous property, a combination of leases are held by a single landlord and leased to commercial retailers of goods, and the tenants share in common area maintenance and use of a common parking area.

19.    The Debtors and the Assignees have not met their burden of proof to provide adequate assurance of future performance.  The Landlords have not received any financial information whatsoever regarding the Assignees and the Landlords have no ability to evaluate whether the Assignees can perform under the Leases.  Moreover, section 365(b)(3)(A) requires the party expressly seeking assignment to show that the financial condition and operating performance of the proposed assignee is similar to the Debtors as of the time that the Debtors became the lessee under the Leases.  The Debtors have made no attempt to demonstrate that the Assignees are in a comparable financial and operational position that Sears or Kmart was in at the time it entered into the Leases.  The Landlords suspect that the Assignees are recently formed shell companies with no meaningful assets and, as a result, the Assignees cannot demonstrate adequate assurance of future performance.

20.    The Letter provided to the Landlords similarly provides no visibility into Transform's financial and operational affairs and, in any event, as set forth in the Assignment Notices, Transform is not the proposed assignee.  However, it is worth mentioning that the pre-closing data submitted in advance of the sale hearing is now stale and recent docket filings[17]

---

[16]    *In re Great Atl. & Pac. Tea Co., Inc.*, 472 B.R. 666, 677 (S.D.N.Y. 2012); *Joshua Slocum*, 922 F.2d at 1087-88.

[17]    Docket Nos. 2864, 3011.

have questioned Transform's ability to perform under its business plan and as a go-forward business. The Debtors' financial affairs provide no comfort as they are reputed to be administratively insolvent.

21.    In order to assign the Leases to the Assignees, the Landlords and their attorneys must receive the following information from the Assignees to determine whether the requirements of adequate assurance of future performance will be satisfied:

(i)    The Assignees' and any guarantor's tax returns and audited financial statements (or un-audited, if audited financials are not available) and any supplemental schedules for the calendar or fiscal years ending 2016, 2017, and 2018;

(ii)    The number of stores the Assignees operate and all trade names that the Assignees use;

(iii)    A statement setting forth the Assignees' intended use of the premises;

(iv)    The Assignees' retail experience and experience operating in-line stores in a shopping center;

(v)    The Assignees' 2018 and 2019 business plans, including sales and cash flow projections;

(vi)    Any financial projections, calculations, and/or financial pro-formas prepared in contemplation of purchasing the Leases; and

(vii)    an analysis of the Assignees' financial condition and operating performance as compared to that of the Debtors when the Leases were entered into.

22.    The Landlords object to the assumption and assignment of the Leases because in the absence of adequate assurance information, the Debtors have failed to satisfy their burden with respect to adequate assurance of future performance under 11 U.S.C. § 365(b)(3).

**B.**     **Assignment, if any, Must be Subject to all Restrictive Covenants**

23.     The Landlords object to any order that impairs, restricts, extinguishes, or diminishes the use of the Leased Premises.  All, or nearly all, shopping center leases are subject to reciprocal easement agreements, operating agreements, easements, and other covenants, which ensure and allow for the orderly use of a multi-tenant operation.  All parties to such agreements rely on, and benefit from, the use of Restrictive Covenants in the complex commercial arrangement in a shopping center.  As drafted, the Assignment Order does not provide that the assignments are subject to and require compliance with all applicable Restrictive Covenants.

24.     The Assignment Order explicitly provide that the "[Assignment] Notice shall describe the Restrictive Covenant that the party is seeking to extinguish or otherwise diminish and any non-Debtor counterparty to a Restrictive Covenants will have fourteen (14) calendar days" to object.[18]  The Assignment Order does not describe the Restrictive Covenants that the Assignees are seeking to extinguish.  Many of the Restrictive Covenants have been found to run with the land and/or to be non-executory under applicable state law, and thus not capable of assumption or assignment.

25.     Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption or assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . . ."11 U.S.C. § 365(b)(3)(C).  As a result, the Leases must be assigned subject to all of the Restrictive Covenants.

26.     The Landlords have engaged with the Assignees on this point and have made substantial progress.  However, at the time of filing this Objection, the Landlords and the

---

[18]     *See* Assignment Order ¶ 26.

Assignees have not agreed on language that confirms that the leases are being assigned subject to all Restrictive Covenants, except as specifically agreed to.

### C.  The Leases Must be Assumed and Assigned *Cum Onere*

27.    It is well established that an assignee must take an assigned lease in its entirety.[19] Section 365(b)(3)(C) of the Bankruptcy Code further confirms that the assumption or assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . . ."[20]

28.    The obligations under the Leases extend far beyond the payment of rent.  These obligations typically include the tenant's liability for, among other things, (a) payment of all accrued but unbilled charges, including year-end reconciliations and other adjustments, (b) insurance, indemnification, and other contractual obligations, (c) obligations arising under the Restrictive Covenants, and (d) attorneys' fees, interest, and other charges that may accrue (the "Adjustment Amounts").    The Adjustments Amounts, which include charges and other adjustments for 2017, 2018, and 2019, have not been billed or have not yet come due under the terms of the Lease.

29.    The Adjustment Amounts must be honored and satisfied by the Assignees as a condition to assumption and assignment of the Leases.  Instead, the Assignment Order, much like the Sale Order and the APA, disclaims the Assignees' liability for any Adjustment Amounts attributable to the time prior to the lease assignment.[21]  The Assignment Order further provides that the Debtors shall fully indemnify and hold harmless Transform and the Assignees with

---

[19]    *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("An executory contract may not be assumed in part and rejected in part . . . The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits."); *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003) (describing the assumption of an unexpired lease as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected.").

[20]    11 U.S.C. § 365(b)(3)(C).

[21]    Assignment Order ¶ 17.

respect to such Adjustment Amounts. In the same paragraph, the Assignment Order further relieves the Debtors of any liability for breach of such lease after the February 11, 2019 closing pursuant to 365(k) of the Bankruptcy Code.

30.    Taking these provisions together, the Landlords are left with nowhere to turn for payment. By disclaiming all liability for the Adjustment amounts, the Assignees and the Debtors are essentially compelling the Landlords to waive their rights under the Leases.

31.    As further proof, the Assignment Order has no mechanism by which the Debtors will indemnify the Assignees for the Adjustment Amounts. It is widely believed that the Debtors are administratively insolvent and will not have the resources to satisfy these amounts when they come due. The Debtors are not entitled to the benefits and protections of section 365(k) unless the Leases are assumed and assigned *cum onere* – with all benefits and burdens.[22]

32.    In the same vein, the Assignees are not entitled to all of the benefits of the Leases without also assuming responsibility for the Adjustment Amounts, which are an integral component of all of the Leases. The Assignees cannot simply strip out these material provisions and foist all of the risk on the Landlords, who will not be able to collect from an administratively insolvent estate. Section 365(b)(3) was designed to protect shopping center leases and the Debtors and Transform cannot shirk their obligations under the Leases.

33.    The Debtors, Transform, and the Assignees cannot eliminate the Bankruptcy Code's protections and leave the Landlords without recourse to any party for the Adjustment Amounts. Accordingly, the Landlords object to any assignment that does not explicitly provide for the payment of the Adjustment Amounts arising out of the Leases.

---

[22]    *See, e.g., American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

### D.    The Assignment Order Cannot Invalidate Lease Provisions

34.    As the Landlords previously asserted in the Sale Objection, paragraph 19 of the Assignment Order inappropriately and prematurely invalidates provisions of leases in violation of section 365 of the Bankruptcy Code.  It is well established that any proposed assignee must take the assigned Leases in their entirety.[23]  In particular, section 365(b)(3)(C) of the Bankruptcy Code requires that the Debtors provide, as to any shopping center lease, "that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provisions, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center."

35.    Contrary to this provision, the Assignment Order authorizes Transform or the Assignees to (i) use the premises as a retail store or distribution center, which may violate the use and occupancy terms of the Leases, (ii) operate under any trade names that Transform owns, which list is currently unknown to the Landlords, (iii) make unspecified alterations in Transform's or Assignees' sole discretion, and (iv) "go dark" for an excessive period of 150 days.  The Landlords' Sale Objection objected to this broad invalidation of unspecified lease provisions and the adjudication of the issue with respect to the Leases was carved out of the Sale Order and the Assignment Order.  Now that Transform has actually designated the Leases for assignment, the issues must be addressed.

36.    The Landlords have not been presented with any plan or proposal for altering signage or remodeling the Leased Premises such as would necessitate a 5-month "go dark" period.  The hypothetical alterations or operations under some unknown trade name may impair

---

[23]    *See, e.g.*, 11 U.S.C. § 365(b)(3)(C).

rights under the Restrictive Covenants, which are in place to govern the use of the Leased Premises as well as the rights of other tenants in the shopping center.

37.    Given that the perceived intent of the sale transaction was to allow Transform to revive the Debtors' business pursuant to a purportedly sustainable business plan, the Assignees have no real need for these excessive protections.  To the extent that the Leases allow the tenant to "go dark," the go dark period should be limited to 90 days and the Assignees must inform the Landlords what brand name the Leased Premises will be operating under and any prospective alterations or modifications.

38.    Without these protections in place, the Debtors, Transform, and the Assignees are in violation of 365(b)(3) of the Bankruptcy Code, which requires strict compliance with the terms of the Leases.

**E.    Transform Cannot Sever Master Leases**

39.    The Assignment Notice filed at Docket No. 3298 inappropriately seeks to sever and designate for assignment to Assignees two of the Leases[24] (the "GS Portfolio Assigned Leases") from a master lease of non-residential real property (as amended, the "Master Lease") between GS Portfolio Holdings LLC and Sears, Roebuck and Co. dated as of June 18, 2015.  On April 30, 2019, the Debtors filed a notice seeking to reject three of the other unexpired leases under the Master Lease (the "GS Portfolio Rejected Leases" and together with the GS Portfolio Assigned Leases, the "GS Portfolio Leases"), with a proposed effective date of rejection of April 30, 2019.  Notably, this Assignment Notice does not provide any notice that Transform intends to sever the GS Portfolio Leases and assume the GS Portfolio Assigned Leases and reject the GS Portfolio Rejected Leases.

---

[24]    The Leases are for the Leased Premises at (i) Pembroke Lakes, Pembroke Pines, FL (Store No. 1775) and (ii) Staten Island Mall, Staten Island, NY (Store No. 1624).

40.    At present, the GS Portfolio Leases consists of the GS Portfolio Assigned Leases, the GS Portfolio Rejected Leases, and one lease that terminated by its terms.  As stated elsewhere in this Objection, a debtor seeking to assume an unexpired lease must assume the agreement in its entirety—it may not cherry pick the provisions it wants to assume while rejecting others.[25]  Generally, the test for severability of a contract depends on the intent of the parties and is fact intensive.[26]

41.    The Master Lease is explicit that (a) it constitutes one single, unitary, indivisible lease for the GS Portfolio Leases and (b) the parties were induced to and entered into the Master Lease in reliance on the Master Lease being one singe, unitary, indivisible agreement. Moreover, the Master Lease contains the same termination date for all GS Portfolio Leases, the Master Lease involves one landlord entity and one tenant entity, the Debtors, as tenant, are not authorized to assign individual leases, and there is no separate documentation for the individual properties.  Accordingly, the Debtors and Transform must assume or reject the GS Portfolio Leases in full, without cherry-picking the more valuable leases.

**F.    Transform or the Assignees Must Provide Additional Security**

42.    Paragraph 25 of the Assignment Order exempts the Debtors from section 365(l) of the Bankruptcy Code, which authorizes the Landlords to require Transform to provide a deposit or other security.  Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have

---

[25]    *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

[26]    *In re Buffets Holdings, Inc.*, 387 B.R. 115, 120 (Bankr. D.Del. 2008); *Altra Corp. v. Chemtoy Corp. (In re Chemtoy Corp.)*, 19 B.R. 475, 481 (Bankr. N.D. Ill. 1982) ("[W]hether a contract is severable depends on the intent of the parties. This intent is ascertained by the terms and the subject matter of the contract.").

been required by the landlord upon the initial leasing to a similar
tenant.

11 U.S.C. § 365(l).

43.     The Debtors provide no basis for the circumventing the clear parameters of the
Bankruptcy Code.  In the ordinary course of its business, the Landlords require security deposits,
letters of credit, or corporate/parent guaranties when leasing (or assessing an assignment of a
lease) to certain companies based on their financial information and history.  Based on the lack
of meaningful adequate assurance information and operating history, in connection with the
proposed assumption and assignment of the Lease to the Assignees, pursuant to Section 365(l) of
the Bankruptcy Code, the Landlords demand either (i) a cash security deposit or letter of credit
for one year of all Lease obligations, or (ii) unconditional parent guaranties from all top-level
equity holders (or such other entities as agreed by the Landlords) with assets sufficient to satisfy
all obligations due under the remaining term of the Lease (and any extensions) – including the
significant fee owned real estate assets acquired from Sears.

## JOINDER

44.     The Landlords join in any objections filed by the Debtors' other landlords to the
extent not inconsistent with the terms of this Objection and object to the *Notice of Hearing on
Assumption and Assignment and Cure Notices of Transform Holdco LLC* as it fails to properly
notice the May 8, 2019 hearing as an evidentiary hearing in accordance with this Court's prior
rulings.[27]

---

[27]     Docket No. 405.

16

**WHEREFORE**, the Landlords request that the Court deny the assignment of the Leases unless and until the issues identified herein are addressed and grant such other and further relief as is just and proper.

Dated: New York, New York
      May 3, 2019

**KELLEY DRYE & WARREN LLP**

By: /s/ *Robert L. LeHane*
    Robert L. LeHane
    Maeghan J. McLoughlin
    101 Park Avenue
    New York, New York 10178
    Telephone: (212) 808-7800
    Facsimile:  (212) 808-7897
    Email: rlehane@kelleydrye.com
           mmcloughlin@kelleydrye.com

*Attorneys for Alan Robbins, Benderson Development Company LLC, Brookfield Property REIT, Inc., Gray Enterprises, LP, Graziadio Investment Company, Gregory Greenfield & Associates, Ltd., LBA Realty LLC, LF2 Rock Creek, LP, Nassimi Realty LLC, Realty Income Corp., Regency Centers Corp., Site Centers Corp., Spigel Properties, The Woodmont Company, and Weingarten Realty Investors*

## EXHIBIT A

### Alan Robbins

| Store No. | Mall Name | Location | Assignee |
|-----------|-----------|----------|----------|
| 7329 | Kmart | Loveland, CO | Transform Operating Stores |
| 4819 | Kmart | Lakeport, CA | Transform Operating Stores |

### Benderson Development Company LLC

| Store No. | Mall Name | Location | Assignee |
|-----------|-----------|----------|----------|
| 3415 | Delaware Hertel Plaza | 1001 Hertel Avenue Buffalo, NY | Transform Operating Stores |
| 3842 | K-Mart Plaza | 175 S. Maag Avenue Oakdale, CA | Transform Operating Stores |
| 3021 | Auburn, ME | | Transform Operating Stores |
| 7068 | Midland, MI | | Transform Operating Stores |

### Brookfield Property REIT, Inc.

| Store No. | Mall Name | Location | Status |
|-----------|-----------|----------|--------|
| 2597 | Animas Valley Mall (Sears) | Farmington, NM | Transform Operating Stores |
| 2628 | Bayshore Mall (Sears) | Eureka, CA | Transform Operating Stores |
| 1274 | Chesterfield Towne Center (Sears) | Richmond, VA (Chesterfield) | Transform Operating Stores |
| 1585 | Governors Square | Tallahassee, Florida | Transform Leaseco |
| 1508 | Northridge Fashion Center GSPH | Northridge, CA | Transform Operating. Stores LLC |
| 1775 | Pembroke Lakes | Pembroke Pines, FL | Transform Operating Stores |
| 2388 | Prince Kuhio Plaza | Hilo, HI | Transform Operating Stores |
| 1678 | Shoppes at Carlsbad (Sears) | Carlsbad, CA | Transform Operating Stores |
| 1248 | Southland Mall (Sears) | Hayward, CA | Transform Operating Stores |
| 1624 | Staten Island Mall | Staten Island, NY | Transform Operating Stores |
| 1728 | Tucson Mall | Tucson, AZ | Transform Operating Stores |

| 2059 | West Valley Mall (Sears) | Tracy (San Francisco), CA | Transform Operating Stores |
| 1434 | Willowbrook NJ GSPH 2017 | Wayne, NJ | Transform Operating Stores LLC |
| 1684 | Woodbridge Center | Woodbridge , NJ | Transform Operating Stores |
| 2092[28] | Fox River Mall | Appleton, WI | |
| 1681 | | Honolulu, HI | Transform Operating Stores |

## Gray Enterprises, LP

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 4047 | | Costa Mesa, CA | Transform Operating Stores |

## Graziadio Investment Company

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 3127 | | Temple City, CA | Transform Operating Stores |

## Gregory Greenfield & Associates

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 1097 | Southpark Mall | San Antonio, TX | Transform Operating Stores |

## LBA Realty LLC

| Store No. | Mall/Store Name | Location | Assignee |
|---|---|---|---|
| 8720 | Non-Retail | Melrose Park, IL | Transform Distribution Center Holdco LLC |
| 8748 | Non-Retail | San Diego, CA | Transform Distribution Center Holdco LLC |
| 8808 | Non-Retail | Santa Ana, CA | Transform Distribution Center Holdco LLC |
| 8825 | Non-Retail | Winter Park, FL | Transform Distribution Center Holdco LLC |
| 8870 | Non-Retail | Dallas, TX | Transform Distribution Center Holdco LLC |

---

[28] This location was included on the Notice of Assumption and Assignment of Additional Designatable Leases (the "Fox River Notice") filed on April 15, 2019 at Docket No. 3211. The Fox River Notice did not listed a proposed assignee.

## LF2 Rock Creek, LP

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 9608 | Market Street Square | Auburn, CA | Transform Leaseco LLC |

## Nassimi Realty LLC

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 3963 | Market Street Square | Elizabethtown, PA | Transform Operating Stores |

## Realty Income Corp.

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 62538 | | Tustin, CA | N/A[29] |

## Regency Centers L.P.

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 3873 | Pike Creek K-Mart | Wilmington, DE | Transform Operating Stores |

## Site Centers Corp.

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 7570 | Plaza Rio Hondo (Kmart) | Bayamon, PR (Rio Hondo) | Transform Operating Stores |
| 7566 | Plaza Del Atlantico (Kmart) | Arecibo, PR (Atlantico) | Transform Operating Stores |
| 2355 | Plaza Del Norte | Hatillo, PR (Plaza Del Norte) | Transform Operating Stores |

## Spigel Properties

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 9354 | Griffith Park Plaza | Griffith, IN | Transform Leaseco |

---

[29] This Lease was listed the Notice of Assumption and Assignment of Additional Designatable Leases filed by the Debtors on April 5, 2019 at Docket No. 3057. This filing did not list a proposed assignee.

## The Woodmont Company

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 1984 | McKinley Mall | Buffalo/Hamburg, NY | Transform Operating Stores |

## Weingarten Realty Investors

| Store No. | Mall Name | Location | Assignee |
|---|---|---|---|
| 3667 | Six Forks Station | Raleigh, NC | Transform Operating Stores |
| 7471 | Prospector's Plaza | Placerville, CA | Transform Leaseco |

## CERTIFICATE OF SERVICE

The undersigned hereby certified that a true and correct copy of the foregoing instrument has been served via electronic mail on this 3rd day of May, 2019 upon the parties listed below and electronically via ECF notification upon all parties requesting service via ECF notification:

Sears Holdings Management Corporation
Attn: Rob Riecker (rob.riechker@searshc.com)
Attn: Luke Valentino (luke.valentino@searshc.com)
Attn: Mohsin Meghji (mmeghji@miiipartners.com)
Attn: General Counsel (counsel@searshc.com)
3333 Beverly Road
Hoffman Estates, IL 60179

Weil, Gotshal & Manges LLP
Attn: Ray C. Schrock (ray.schrock@weil.com)
Attn: Jacqueline Marcus (jacqueline.marcus@weil.com)
Attn: Garret A. Fail (garrett.fail@weil.com)
Attn: Sunny Singh (sunny.singh@weil.com)
767 Fifth Avenue
New York, NY 10153

Lazard Fréres & Co., LLC
Attn: Brandon Aebersold and Levi Quaintance (project.blue.rx@lazard.com)
30 Rockefeller Plaza
New York, NY 10112

Bank of America, N.A.
c/o Skadden, Arps, Slate, Meagher & Flom LLP
Attn: Paul D. Leake (Paul.Leake@skadden.com)
Attn: Shana A. Elberg (Shana.Elberg@skadden.com)
Attn: George R. Howard (George.Howard@skadden.com)
4 Times Square
New York, NY 10036

Bank of America, N.A.
c/o Berkeley Research Group, LLC
2200 Powell Street, Suite 1200
Emeryville, CA 94608

Wells Fargo Bank, National Association
c/o Choate, Hall & Stewart LLP
Attn: Kevin J. Simard (ksimard@choate.com)
Attn: Jonathan D. Marshall (jmarshall@choate.com)
Two International Place
Boston, MA 02110

Akin Gump Strauss Hauer & Feld LLP

Attn: Philip C. Dublin (pdublin@akingump.com)
Attn: Ira S. Dizengoff (idizengoff@akingump.com)
Attn: Abid Qureshi (aqureshi@akingump.com)
Attn: Sara L. Brauner (sbrauner@akingump.com)
One Bryant Park
New York, NY 10036

Transform Holdco LLC
c/o ESL Partners, Inc.
Attn: Kunal S. Kamlani (kunal@eslinvest.com)
Attn: Harold Talisman (harold@eslinvest.com)
1170 Kane Concourse, Suite 200
Bay Harbor Islands, FL 33154

Cleary Gottlieb Steen & Hamilton LLP
Attn: Christopher E. Austin (caustin@cgsh.com)
Attn: Benet J. O'Reilly (boreilly@cgsh.com)
Attn: Sean A. O'Neal (soneal@cgsh.com)
One Liberty Plaza
New York, NY 10006

Office of the United States Trustee
Attn: Paul Schwartzberg (paul.schwartzberg@usdoj.gov)
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014

*/s/ Robert L. LeHane*
Robert L. LeHane