# Exhibit A

4737954-1

PREPARED BY:

CHESTER ROBINSON
919 THIRD AVENUE
NEW YORK, NY 10022.

## DECLARATION OF EASEMENTS AND RESTRICTIONS

DECLARATION OF EASEMENTS AND RESTRICTIONS made effective as of the 1st day of August 1985, by JONATHAN CRAIG CORP., a New Jersey corporation, having an office for the transaction of business at 91 Roosevelt Avenue, Deal, NJ 07723 (hereinafter called "Owner").

### RECITALS

Owner owns the premises situated in the Township of Wall, Monmouth County, State of New Jersey, as more particularly described by metes and bounds in Exhibit I attached hereto and made a part hereof (the "Premises").

Portions of the Premises currently are being and hereafter will be improved with commercial or retail buildings and other improvements.

Owner desires either to develop the Premises in phases, or sell, lease, mortgage or otherwise convey interests in one or more separate parcels of the Premises and still insure, *inter alia*, that the separate parcels will have adequate means of ingress and egress, as well as other appurtenances and facilities so as to permit separate development. To facilitate separate development or conveyance as above noted and to enhance the value of each separate parcel of the Premises, Owner is hereby creating and establishing the easements, rights, obligations and prerogatives set forth in this Declaration of Easements and Restrictions.

Owner does hereby declare as follows:

1. **Definitions.** For the purposes of this Declaration of Easements and Restrictions, the following terms shall have the meanings ascribed to them:

   1.01 "Owner" shall mean JONATHAN CRAIG CORP., a New Jersey corporation.

   1.02 "Successors and assigns" shall, without limitation, include within their meaning, the successors, assigns and/or subsequent grantees in fee title and mortgagees, as well as all others who by reason of having acquired rights and interests in the parcels herein affected have been designated to receive the benefits of, or become obligated to assume the burdens hereof, it being specifically intended that such benefits and burdens shall, by appropriate written instrument from the applicable party in interest, inure and be unilaterally operative by such party without the necessity for any further approvals, consents, releases or other documentation from any other party.

   1.03 "Common Areas" shall mean those portions of the lands herein referred to as "Parcels" intended for common use, including but not limited to the sidewalks, service drives, parking aisles, parking areas, driveways, streets, entrances and exits.

   1.04 "Parcel A" shall mean that certain plot, piece or parcel of land described by metes and bounds in Exhibit II and shown on Exhibit IV attached hereto and made a part hereof.

-1-    BOOK 4587 PAGE 893

TRIDENT ABSTRACT CO.
P.O. BOX 110
FREEHOLD, N.J. 07728

1.05 "Parcel B" shall mean that certain plot, piece or parcel of land described by metes and bounds in Exhibit III and shown on Exhibit IV attached hereto and made a part hereof.

1.06 "Parcels" shall mean Parcel A and Parcel B.

1.07 "Premises" shall mean that certain plot, piece or parcel of land described by metes and bounds in Exhibit I and shown on Exhibit IV attached hereto and made a part hereof.

2. Creation of Reciprocal Easements, Obligations and Restrictions. Wherever hereinafter reference is made to the "owner of Parcel A" or the "owner of Parcel B," as the case may be, it shall be deemed to mean the present owner of each such Parcel and the respective successors and assigns of each such owner.

2.01 Owner hereby grants and conveys, in common, to the owners and mortgagees of Parcel A and Parcel B, their respective successors and assigns, for their benefit and the benefit of their respective tenants, agents, employees, customers, licensees, concessionaires, guests and invitees, in perpetuity, the non-exclusive right to cross, recross, in, upon and over each of Parcel A and Parcel B, for the sole purpose of providing a right of way thereon and thereover for all manner of motor vehicle and foot traffic, for access, ingress and egress in and to the Common areas of each of Parcel A and Parcel B, from the public highways adjacent to the Premises, including the use of any "to be constructed" curb cut facilities and for parking in the areas designated therefor.

2.02 No fences, barriers or other obstructions shall be located, installed or erected between each of the Parcels and free and unobstructed passage shall be maintained among said Parcels.

2.03 No owner of each of the Parcels shall charge or impose any fee for parking on its respective Parcel.

3. Miscellaneous.

3.01 The easements, rights, obligations and prerogatives established, created and granted hereby shall be for the benefit of, and restricted solely to the owner or owners, as the case may be, of the fee simple title from time to time of Parcel A and Parcel B, but each owner thereof may grant the benefit of such easements, rights, obligations and prerogatives to the tenant or tenants of such owner or owners now or hereafter occupying Parcel A and Parcel B, or any part thereof, as the case may be, for the duration of such tenancy, but the same is not intended, nor shall it be construed, as creating any rights in or for the benefit of the general public.

3.02 All costs and expenses with respect to the utilization of the aforementioned easements are to be borne by the owner or owners, as the case may be, of the fee simple title from time to time of Parcel A and Parcel B, in accordance with the provisions set forth herein, but such owner or owners may cause the tenant or tenants now or hereafter occupying Parcel A or Parcel B, or any part thereof, as the case may be, to bear such costs during such tenancy in accordance with the provisions of any such tenant's lease or as may be consented to by any such tenant.

3.03 Any division of ownership, including any granting of leasehold interests, of Parcel A and Parcel B, shall not impair or diminish or be construed as impairing or diminishing the respective benefits created hereby in favor of Parcel A and Parcel B; nor shall the same be construed as an unlawful increase of burden or use.

-2-    BOOK 4587 PAGE 894

3.04  No owner shall have any liability for temporary interruptions or suspensions of the easement rights and benefits afforded hereunder, if such interruptions or suspensions arise from necessary or desirable maintenance, repair, replacement or construction work or causes beyond the control of the obligated party; provided, however, that due care and diligence shall be taken to minimize and obviate such interruptions or suspensions and the adverse effect thereof. Except in the case of any waste, willful breach, willful default, or negligence, notice and a reasonable opportunity to remedy and cure shall be conditions precedent to the imposition of any liability for any breach or default under this Declaration of Easements and Restrictions. Any such liability is further subject to the limitations set forth in subsection 3.05 of this Article 3.

3.05  Recourse for the satisfaction of a claim seeking, or a judgment requiring, the payment of money against any owner or any other party (including any tenant) having an interest in Parcel A or Parcel B, on account of a breach or default under this Declaration of Easements and Restrictions, shall be limited to the then estate and interest of the breaching or defaulting owner or other party in Parcel A or Parcel B, as the case may be; no other property or assets of each owner or other party liable, obligated or bound hereunder shall be subject to levy, execution or other enforcement procedure for the satisfaction of a claim seeking, or a judgment requiring, the payment of money. The obligations and liabilities of each owner of Parcel A or Parcel B, or any other party, as the case may be, shall not be binding upon any such owner or party with respect to any period subsequent to the transfer of its estate and interest in Parcel A or Parcel B, and in the event of such transfer said obligations and liabilities shall thereafter be binding upon each transferee of the respective estate and interest, but only with respect to the period ending with a subsequent transfer, after which the same shall be binding solely upon the new transferee until there is a further subsequent transfer. In the event of a transfer of the fee or other interest of only a portion of Parcel A or Parcel B, the provisions of the preceding sentence shall be applicable to those obligations and liabilities under this Declaration of Easements and Restrictions which relate to or arise from the portion so transferred. This Declaration of Easements and Restrictions at all times shall be enforceable, inter alia, by injunctive relief; provided, however, that injunctive relief shall not be available for the collection of money, except to the extent of the then estate and interest of the breaching or defaulting person or entity in Parcel A or Parcel B, as the case may be.

3.06  Each owner of Parcel A and Parcel B agrees, at any time and from time to time, as requested by the other owner, upon not less than twenty (20) days prior written notice, to execute and deliver to the other a statement certifying whether or not, to the best knowledge of the signer, the other owner is in default in, or breach of, performance of any of its obligations under this Declaration of Easements and Restrictions, and if so, specifying each such default and breach of which the signer may have knowledge, it being intended that any such statement delivered pursuant hereto may be relied upon by others with whom the party requesting such certificate may be dealing.

3.07  Each of the owners shall comply with the provisions hereof, unless otherwise unavoidably necessitated by appropriate governmental authority having jurisdiction of Parcel A or Parcel B, or each of said Parcels.

3.08  All easements, rights, prerogatives and obligations created and/or granted by this Declaration of Easements and Restrictions, whether or not expressly set forth herein, shall be perpetual and shall constitute servitudes on the Common Areas burdened thereby on Parcel A and Parcel B, and shall hereafter

-3-

BOOK 4587 PAGE 895

be construed as covenants running with the land on each of the Parcels so benefited and/or burdened and shall inure to the benefit of, and be binding upon, the owners of the respective Parcels, and their successors and assigns, and any individual, partnership, firm, association, corporation, trust and other form of legal entity holding under each of such owners.

3.09 This Declaration of Easements and Restrictions may not be amended or terminated, except by a recorded written instrument signed by the owners of each of the Parcels and consented to by all parties having any interest in this Declaration of Easements and Restrictions, including but not limited to mortgagees and tenants.

3.10 If any provision of this Declaration of Easements and Restrictions shall be deemed invalid or unenforceable by any court of competent jurisdiction, the remaining provisions shall continue in full force and effect.

3.11 This Declaration of Easements and Restrictions shall be governed and construed in accordance with the laws of the State of New Jersey, and also Monmouth County ordinances or Township ordinances, if any, as the case may be.

3.12 All notices or other communications desired or required to be given hereunder shall be given to the respective owners of the Parcels at such addresses as shall be subsequently designated by the Owner or the owners of the separate Parcels, as the case may be. All notices or other communications shall be in writing and shall be given or made or communicated by Express Mail, when such service is available, or if not available, by a private express mail service, when such service is available, and if neither of the foregoing two services is available, then by mailing the same by registered or certified mail, postage prepaid, return receipt requested. All such notices and other communications shall be deemed given when and if given in the manner hereinabove set forth.

3.13 Nothing contained herein shall be deemed to be a gift or dedication of any portion of the Premises to the general public or for the general public or for any public purpose whatsoever, it being the intention that this Declaration of Easements and Restrictions is to be strictly limited to and for the purposes expressed herein.

3.14 Anything herein to the contrary notwithstanding, each and all of the warranties, indemnities, representations, covenants, undertakings and agreements herein made on the part of Owner, while in form purporting to be the warranties, indemnities, representations, covenants, undertakings and agreements of Owner, are nevertheless each and every one of them made and intended not as personal warranties, indemnities, representations, covenants, undertakings and agreements by Owner or for the purpose or with the intent of binding Owner personally, but are made and intended for the purpose of binding only the Premises specifically described herein, and no personal liability or personal responsibility is assumed by, nor shall at any time be asserted or enforceable against, Owner or any of its partners, general or limited, its successors or assigns, or any individual, partnership, firm, association, corporation, trust and other form of legal entity holding under the Owner of Parcel A or Parcel B, as the case may be, on account of this instrument or on account of any warranty, indemnity, representation, covenant, undertaking or agreement of Owner in this instrument contained, either expressed or implied, all such personal liability, if any, being expressly waived and released.

JONATHAN CRAIG CORP.

By: _____
Maurice Holtzman, President

Attest:

_____
Secretary

-4-

BOOK 4587 PAGE 896

STATE OF NEW JERSEY
COUNTY OF Monmouth } ss.

BE IT REMEMBERED, that on this 20th day of August 1985, before me, the subscriber, a notary public of the State and County aforesaid, personally appeared MAURICE HOLTZMAN, President of JONATHAN CRAIG CORP., who I am satisfied is the person who signed the within instrument; and I having first made known to him the contents thereof, he thereupon acknowledged that he signed, sealed with the corporate seal, and delivered the said instrument as such officer aforesaid, and that the within instrument is the voluntary act and deed of said corporation, made by virtue of authority from its board of directors.

JUDITH SPISAK
Notary Public
My Commission Exp.

BOOK 4587 PAGE 897

EXHIBIT I

DESCRIPTION OF LOTS 4, 5, 6, 9, AND 10, BLOCK 88, WALL TOWNSHIP TAX MAP, MONMOUTH COUNTY, NEW JERSEY.

BEGINNING at a point in the southerly line, 25.00 feet from centerline, of Eighteenth Avenue (Monmouth County Highway Route No. 30) distant 9.75 feet on a course of South 84 degrees 55 minutes 40 seconds East from the point of intersection of the easterly line, 25.00 feet from centerline, of Old Mill Road, extended Northwardly with the aforesaid southerly line of Eighteenth Avenue, extended westwardly and running from said BEGINNING POINT (1) South 84 degrees 55 minutes 40 seconds East along the aforesaid southerly line of Eighteenth Avenue, 419.48 feet to an angle point in said line, thence (2) South 82 degrees 47 minutes 20 seconds East continuing along the southerly line of Eighteenth Avenue 176.16 feet to its intersection with the westerly line of Lot 7, Block 88, Wall Township Tax Map, extended northwardly, thence (3) South 03 degrees 01 minutes 20 seconds West along the aforesaid westerly line of Lot 7, 496.47 feet to a point in the northerly line of Lot 8, thence (4) South 89 degrees 22 minutes 47 seconds West along said northerly line, 9.01 feet to the most westerly corner of Lot 8, thence (5) South 58 degrees 51 minutes 23 seconds East along the southwesterly line of Lot 8, 221.09 feet to the northwesterly Right of Way line of New Jersey State Highway Route No. 35, thence (6) South 38 degrees 29 minutes 27 seconds West along the northwesterly Right of Way line of New Jersey State Highway Route No. 35, 316.49 feet to a point of curvature thence (7) Southwestwardly continuing along said northwesterly Right of Way line along the arc of a curve having a radius of 11,499.00 feet and bearing to the left an arc distance of 194.32 feet to its intersection with the northerly line of Lot 11, thence (8) North 83 degrees 40 minutes 40 seconds West along the northerly line of Lot 11, 261.32 feet to the northwesterly corner thereof, thence (9) South 05 degrees 30 minutes 00 seconds West along the westerly line of Lot 11, 205.20 feet to its intersection with the northerly line of Lot 3, thence (10) North 80 degrees 04 minutes 00 seconds West along the northerly line of Lot 3, 195.70 feet to an angle point in said line; thence (11) South 09 degrees 56 minutes 00 seconds West continuing along

EXHIBIT I                BOOK 4587 PAGE 898

the northerly line of Lot 3, 225.00 feet to another angle point in said line, thence (12) North 80 degrees 04 minutes 00 seconds West still along the northerly line of Lot 3, 158.50 feet to the easterly line, 16.50 feet, from centerline of Old Hill Road, thence (13) North 09 degrees 56 minutes 00 seconds East along the aforesaid easterly line of Old Hill Road, 434.54 feet to an angle point in said line, thence (14) North 10 degrees 00 minutes 40 seconds East, continuing along the easterly line of Old Hill Road, 522.55 feet to another angle point in said line, thence (15) North 06 degrees 30 minutes 40 seconds East, still along the easterly line of Old Hill Road, 228.88 feet to another angle point in said line, thence (16) South 83 degrees 33 minutes 40 seconds East still along the easterly line of Old Hill Road, 8.50 feet, thence (17) North 06 degrees 30 minutes 40 seconds East along the easterly line, 25.00 feet from centerline, of Old Hill Road 229.84 feet to a point of curvature, thence (18) Northeastwardly, eastwardly and southeastwardly, along the arc of a curve having a radius of 10.00 feet and bearing to the right an arc distance of 15.46 feet to the point or place of BEGINNING.

Containing: 18.218 Acres
SEE — EXHIBIT I p.3.

DESCRIPTION OF LOT 7, BLOCK 88, WALL TOWNSHIP TAX MAP, MONMOUTH COUNTY, NEW JERSEY.

BEGINNING at a point in the northwesterly Right of Way line of New Jersey State Highway Route No. 35, where the same is intersected by the southerly line of Eighteenth Avenue (Monmouth County Highway Route No. 30) and running from said BEGINNING POINT (1) South 02 degrees 33 minutes 00 seconds East along the aforesaid northwesterly Right of Way line of New Jersey State Highway Route No. 35, 20.08 feet to an angle point in said line, thence (2) South 38 degrees 43 minutes 40 seconds West continuing along said northwesterly Right of Way line, 597.88 feet to its intersection with the northerly line of Lot 6, Block 88, Wall Township Tax Map, thence (3) South 89 degrees 45 minutes 00 seconds West along said northerly line, 273.47 feet to the easterly line of Lot 5, thence (4) North 03 degrees 15 minutes 00 seconds East along the easterly line of Lot 5 and along the easterly line of Lot 6, 495.00 feet to the aforesaid

EXHIBIT I - p. 2              BK 4587 PAGE 899

southerly line of Eighteenth Avenue, thence (5) South 86 degrees 45 minutes 00 seconds East along the southerly line of Eighteenth Avenue, 330.30 feet to an angle point in said line, thence (6) North 87 degrees 27 minutes 00 seconds East continuing along the southerly line of Eighteenth Avenue 289.08 feet to the point or place of BEGINNING.

Containing: 5.01 Acres

EXCEPTING THEREOUT AND THEREFROM premises heretofore conveyed by Jonathan Craig Corp., A Corporation of the State of New Jersey to County of Monmouth dated August 9, 1985 and recorded in the Monmouth County Clerk's office in Deed Book 4586 page 66, August 14, 1985.

4587 PAGE 900

EXHIBIT I - p. 3

EXHIBIT II

Property. The property consists of the land and all the buildings and structures on the land in the Township of Wall, County of Monmouth and State of New Jersey. The legal description is:

All that certain lot, tract or parcel of land and premises, situate, lying and being in the Township of Wall, County of Monmouth and State of New Jersey.

BEING known and designated as Lots 4,5,6,9 and 10 in Block 88 as shown on the official Tax Map of the Township of Wall.

BEGINNING at a point in the southerly line, 25.00 feet from centerline, of Eighteenth Avenue (Monmouth County Highway Route No: 30) distant 9.75 feet on a course of South 84 degrees 55 minutes 40 seconds East from the point of intersection of the easterly line, 25.00 feet centerline, of Old Mill Road, extended Northwardly with the aforesaid southerly line of Eighteenth Avenue, extended westwardly and running from said BEGINNING POINT (1) South 84 degrees 55 minutes 40 seconds East along the aforesaid southerly line of Eighteenth Avenue 419.49 feet to an angle point in said line, thence (2) South 82 degrees 47 minutes 20 seconds East continuing along the southerly line of Eighteenth Avenue 176.16 feet to its intersection with the westerly line of Lot 7, Block 88 Wall Township Tax Map, extended northwardly, thence (3) South 03 degrees 01 minutes 20 seconds West along the aforesaid Westerly line of Lot 7, 496.47 feet to a point in the northerly line of Lot 8, thence (4) South 89 degrees 22 minutes 47 seconds West along said northerly line 9.01 feet to the most westerly corner of Lot 8, thence (5) South 58 degrees 51 minutes 23 seconds East along the southwesterly line of Lot 8, 221.09 feet to the northwesterly Right of Way line of New Jersey State Highway Route 35, thence (6) South 38 degrees 29 minutes 27 seconds West along the northwesterly Right of Way line of New Jersey State Highway Route 35 316.49 feet to a point of curvature thence (7) Southwestwardly continuing along said northwesterly Right of Way line along the arc of a curve having a radius of 11,499.00 feet and bearing to the left an arc distance of 194.32 feet to its intersection with the northerly line of Lot 11, thence (8) North 83 degrees 40 minutes 40 seconds West along the northerly line of Lot 11, 261.32 feet to the northwesterly corner thereof, thence (9) South 09 degrees 30 minutes 00 seconds West along the westerly line of Lot 11, 205.29 feet to its intersection with the northerly line of Lot 3, thence (10) North 80 degrees 04 minutes 00 seconds West along the northerly line of Lot 3, 195.72 feet to an angle point in said line, thence (11) South 09 degrees 56 minutes 00 seconds West continuing along the northerly line of Lot 3, 225.00 feet to another angle point in said line, thence

(12) North 80 degrees 04 minutes 00 seconds West still along the northerly line of Lot 3, 218.50 feet to the easterly line 26.50 feet, from centerline of Old Mill Road, thence (13) North 09 degrees 56 minutes 00 seconds East along the aforesaid easterly line of Old Mill Road, 424.54 feet to an angle point in said line, thence (14) North 10 degrees 00 minutes 40 seconds East, continuing along the easterly line of Old Mill Road, 522.55 feet to another angle point in said line, thence (15) North 06 degrees 30 minutes 40 seconds East still along the easterly line of Old Mill Road, 228.88 feet to another angle point in said line, thence (16) South 83 degrees 33 minutes 40 seconds East still along the easterly line of Old Mill Road, 8.50 feet, thence (17) North 06 degrees 30 minutes 40 seconds East along the easterly line 25.00 feet from centerline of Old Mill Road 322.84 feet to a point of curvature thence (18) Northeastwardly, eastwardly and southeastwardly along the arc of a curve having a radius of 10.00 feet and bearing to the right an arc distance of 15.46 feet to the point or place of BEGINNING.

Containing 18.218 Acres.

The above description is drawn in accordance with a survey prepared by Birdsall Engineering, Inc., dated February 15, 1985.

SUBJECT to covenants and restrictions, municipal building and zoning ordinances, municipal, county, state and federal health rules and regulations, ~~encroachments~~ ~~easements and rights-of-way of record~~ rights, public and private in streets and roads abutting the hereinabove described premises ~~and to all bounds taxes~~ ~~and other municipal assessments.~~

## ORIGINAL DOCUMENT POOR COPY

BOOK 4587 PAGE 901

EXHIBIT II

SUBJECT to and together with an easement for storm and sanitary sewer as set forth in Deed Book 3893 page 47.

SUBJECT to slope and drainage rights, of the State of New Jersey as set forth in Deed Book 1592 page 401 and Deed Book 1593 page 398.

SUBJECT to rights of Jersey Central Power and Light Company and New Jersey Bell Telephone Company under Grant recorded in Deed Book 3462 page 571; Deed Book 2514 page 275 and Deed Book 2904 page 298.

SUBJECT to Restrictive covenants as contained in the following deed: Deed Book 3896 page 91.

SUBJECT to Easement Agreement as set forth in Deed Book 3346 page 71 and Deed Book 3346 page 67.

SUBJECT NEVERTHELESS to the following covenants and restrictions that the within described premises shall not be used as a supermarket, nor for the sale of wine, beer or other alcoholic beverages for off-premises consumption as long as a supermarket or liquor store is located on contiguous premises upon which is now located a Shop Rite Shopping Center and Jonathan Craig Liquor. Each of said restrictions shall be deemed waived if the prohibited use shall have been discontinued for a continuous period of twenty-four (24) months. Conveyance shall be made subject to the further restrictions that the premises set forth in Deed Book 3896 page 91 may not be used as a pizzeria or for the sale or manufacture of pizza products which restriction expires December 27, 1987, nor shall a pharmacist or druggist be employed nor be engaged in any business, nor shall any prescription drugs be sold, on any portion of premises herein conveyed. This restriction shall be deemed waived if the prohibited use shall have been discontinued for a period of twenty-four (24) months. Notwithstanding anything to the contrary contained herein, it is understood that each of said uses shall be deemed separate and distinct so that, by way of example, but not by way of limitation, in the event that a liquor store should not be operated on the contiguous premises for a continuous period of twenty-four (24) months, then the restriction applying to off-premises consumption of liquor shall be deemed terminated and at an end, notwithstanding the fact that a supermarket or pharmacy (employing a pharmacist or druggist and/or engaged in the sale of prescription drugs) may continue to be maintained on the contiguous premises. The same inter se provision shall apply to the supermarket or pharmacy restriction contained herein.

BEING the same premises conveyed to JONATHAN CRAIG CORP. by Deed from M. Holtzman Realty Company dated December 31, 1973 and recorded July 29, 1974 in the Monmouth County Clerk's Office in Book 3893 page 47 and Deed from Joseph Meli and Helen Meli, his wife dated August 15, 1974 and recorded August 16, 1974 in the Monmouth County Clerk's office in Book 3896 page 99.

EXCEPTING THEREOUT AND THEREFROM premises conveyed by JONATHAN CRAIG CORP., to COUNTY OF MONMOUTH by deed dated August 9, 1985 and intended to be recorded in the Monmouth County Clerk's office prior to the recording of the within deed.

* SUBJECT to and together with the benefit of that certain Declaration of Easements and Restrictions dated August 1, 1985 by Jonathan Craig Corp., a New Jersey corporation which is intended to be recorded immediately prior to the recordation of this Deed of conveyance.

BOOK 4587 PAGE 902

EXHIBIT II p.2

EXHIBIT III

DESCRIPTION OF LOT 7, BLOCK 88, WALL TOWNSHIP TAX MAP, MONMOUTH COUNTY, NEW JERSEY.

BEGINNING at a point in the northwesterly Right of Way line of New Jersey State Highway Route No. 35, where the same is intersected by the southerly line of Eighteenth Avenue (Monmouth County Highway Route No. 30) and running from said BEGINNING POINT (1) South 02 degrees 33 minutes 00 seconds East along the aforesaid northwesterly Right of Way line of New Jersey State Highway Route No. 35, 20.08 feet to an angle point in said line, thence (2) South 28 degrees 43 minutes 40 seconds West continuing along said northwesterly Right of Way line, 597.86 feet to its intersection with the northerly line of Lot 8, Block 88, Wall Township Tax Map, thence (3) South 89 degrees 45 minutes 00 seconds West along said northerly line, 273.47 feet to the easterly line of Lot 5, thence (4) North 03 degrees 15 minutes 00 seconds East along the easterly line of Lot 5 and along the easterly line of Lot 6, 495.00 feet to the aforesaid southerly line of Eighteenth Avenue, thence (5) South 86 degrees 45 minutes 00 seconds East along the southerly line of Eighteenth Avenue, 330.30 feet to an angle point in said line, thence (6) North 87 degrees 27 minutes 00 seconds East continuing along the southerly line of Eighteenth Avenue 289.08 feet to the point or place of BEGINNING.

Containing: 5.01 Acres

BK 4587 PAGE 903

EXHIBIT III



EXHIBIT IV.

BOOK 4587 PAGE 904

END OF DOCUMENT