Benesch, Friedlander, Coplan & Aronoff LLP
39 Broadway, 25th Floor
New York, New York 10006
(302) 442-7010
Michael J. Barrie (No. 5057450)
Kevin M. Capuzzi (admitted *pro hac vice*)

*Attorneys for MCG Rock Hill, LLC and VCP Rock Hill Storage, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re:                                                          :    Chapter 11
                                                                :
**SEARS HOLDINGS CORPORATION, *et al.*,**                       :    Case No. 18-23538 (RDD)
                                                                :
Debtors.[1]                                                     :    (Jointly Administered)
                                                                :
---------------------------------------------------------------- x

**OBJECTION AND RESERVATION OF RIGHTS OF THE
MCG LANDLORDS WITH RESPECT TO NOTICE OF
ASSUMPTION AND ASSIGNMENT OF LEASE NUMBER 7043**

Now come MCG Rock Hill, LLC and VCP Rock Hill Storage, LLC (collectively, the "MCG Landlords"), and hereby file this supplemental objection in response to the *Notice of Assumption and Assignment of Additional Designatable Leases* (the "Designation Notice"), [ECF No. 3298], and to supplement the MCG Landlords' previously filed objection (the "Supplemental

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Objections"), [ECF Nos. 2375], regarding the proposed assumption and assignment of the Lease (as defined below). In support of this objection, the MCG Landlords respectfully state as follows:

## I. FACTUAL BACKGROUND

1. The MCG Landlords are the owners of certain real property and improvements located at 2302 Cherry Road, Rock Hill, South Carolina (the "Rock Hill Property").

2. Prior to the petition date, debtor Kmart Operations LLC operated Store 7043 from the Rock Hill Property, pursuant to the terms of that certain Lease dated _____, 2018, by and among Seritage SRC Finance LLC ("Seritage"), as landlord, and Kmart Operations LLC, as tenant, (the "Lease"). A copy of the Lease is attached hereto as Exhibit 1.

3. The Lease was assigned by Seritage to the MCG Landlords, pursuant to an Assumption and Assignment of Lease dated as of September 24, 2018. A copy of the Lease assignment is attached as Exhibit 2.

4. Store 7043 is not being operated, is vacant, and is not among the approximately 400 stores that the Debtors identified as "Go Forward Stores" in the *Debtors' Motion for Approval of Global Bidding Procedures* (the "Sale Motion"). [ECF No.429].[2]

5. As of the date of this Objection, the tenant is in default of various provisions of the Lease, including but not limited to defaults for failure to: (1) continuously operate in violation of sections 7.3 and 13.1 of the Lease; (2) maintain all applicable insurance in violation of sections 11.1 and 13.1 of the Lease; (3) pay all applicable taxes in violation of sections 4.5 and 13.1 of the Lease; and (4) pay all of MCG Landlords' costs, including attorney's fees, associated with the assignment of the Lease in violation of sections 9.5 and 13.1 of the Lease. Attached

---

[2] The Sale Motion defined "Go Forward Stores" as the Debtors' stores that "are capable of continuing as a going concern." *See*, *Sale Motion*, at 7 of 97. The Sale Motion also referred to the approximately 400 "Go Forward Stores" as the Debtors' stores that "are four-wall EBITDA positive . . . and other viable stores . . . [that can be operated] as a going concern." *Id*. at 6 of 97.

hereto as *Exhibit 3* is the Declaration of Joe F. Teague, Jr. The monetary cure amount as of April 30, 2019 is $116,515.29. Ex. 3, ¶ 11.

## II.    PROCEDURAL POSTURE/SALE BACKGROUND

6.    Beginning on October 15, 2018, each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code with this Court. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.    On January 18, 2019, the Debtors filed the (a) *Notice of Successful Bidder and Sale Hearing* (the "Sale Transaction Notice"), [ECF No. 1730], attaching the executed asset purchase agreement between the Debtors and Transform Holdco, LLC, an affiliate of ESL Investments, Inc. ("Buyer"), dated January 17, 2019 (the "Asset Purchase Agreement"), and (b) the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "Initial Potential Cure Notice"). [ECF No. 1731].

8.    In the Initial Potential Cure Notice, the Debtors did not identify the Lease as a contract that may be designated for assumption and assignment in connection with the sale.

9.    On January 24, 2019, the Debtors served the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the "Supplemental Potential Cure Notice"). [ECF No. 1774]. The Supplemental Potential Cure Notice identified the Lease as being potentially subject to assumption and assignment to the Buyer.

10.   The Supplemental Potential Cure Notice also stated that at the time of its filing, the Buyer has not designated any contracts or leases for assumption and assignment to the Buyer, and advises counterparties that "[y]ou will receive an additional notice informing you if your

Contract or Lease is designed for assumption or assignment to the Buyer." *Id*. at ¶ 15. The Supplemental Potential Cure Notice further provides that the Debtors will file a supplemental notice for any additional contracts or leases that the Buyer may designate. *Id*. at ¶ 7.

11. On February 8, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Transform Assignee, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (IV) Granting Related Relief* (the "Sale Order"). [ECF No. 2507].

12. Pursuant to the terms of the Sale Order, the MCG Landlords' rights were fully preserved regarding issues relating to cure amounts, adequate assurance of future performance, and other matters related to the proposed assumption and assignment of real estate leases that were not Initial Assigned Agreements (as defined in the Sale Order). *See* Sale Order at ¶ 3. The Lease was not included among the Initial Assigned Agreements.

13. In pertinent part, the Sale Order reserved ruling on "the sale of any real estate property owned by any of the Debtors, free and clear of . . . any interests, covenants, or rights applicable to such real estate assets that limit or condition the permitted use of the property such as easements, reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, or permits (collectively, "Restrictive Covenants")." *See* Sale Order at ¶ 59.

14. Although the Sale Order only appeared to address real estate <u>owned</u> by the Debtors, the Sale Order further provides that the Debtors may seek "to assume and assign ***any real estate leases*** to which a Debtor is a party free and clear of any Restrictive Covenant . . . ." *Id*. If the Debtors attempted to do so, they had to provide: (a) notice to the counterparty to the lease of the specific Restrictive Covenant they sought to extinguish, and (b) fourteen (14) calendar days to object. *Id*. (emphasis added).

15. On April 2, 2019, the Court entered its *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (the "Assumption and Assignment Order"). [ECF No. 3008]. Like the Sale Order, the Assumption and Assignment Order fully preserves the MCG Landlords' objections for future resolution. *See* Assumption and Assignment Order at ¶¶ 28-29. Paragraph 26 of the Assumption and Assignment Order also provided that if the Debtors sought to assign a lease free and clear of any Restrictive Covenant, that they had to provide (a) notice to the counterparty to the lease of a specific Restrictive Covenant the Debtors seek to extinguish, and (b) fourteen (14) calendar days to object. *See* Assumption and Assignment Order at ¶ 26.

16. On April 19, 2019, the Buyer filed its Designation Notice designating the Lease for proposed assignment to Transform Leaseco LLC ("Leaseco"). *See* Designation Notice at 10, item 394. The Designation Notice lists a cure amount of $0.

17. No information regarding Leaseco was provided in the Designation Notice. Nor has any information been provided to the MCG Landlords regarding Leaseco's relationship to the Buyer or its financial wherewithal or capabilities to perform under the Lease.

18. Paragraph 18 of the Designation Notice says that the Buyer intends to designate the identified leases free and clear of "Restrictive Covenants," but the Designation Notice fails to identify any provision of the Lease is seeks to shed (if any).

### III.    OBJECTIONS

*A. The Debtors cannot modify the Lease through the assumption process.*

19. Under Supreme Court precedent, it is well settled that an executory contract or unexpired lease cannot be reformed or modified through the assumption process. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984). Rather, it is fundamental that "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens." *In re*

*Leslie Fay Companies, Inc.*, 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994); *accord In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits"). Indeed, "under Section 365 of the [Bankruptcy] Code, a debtor may not 'cherry pick' pieces of contracts it wishes to assume." *Pieco, Inc. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.)*, 173 B.R. 844, 849 (S.D.N.Y. 1994).

20. As discussed above, it is unclear whether the Debtors seek to modify the Lease by selling it free and clear of unspecified "Restrictive Covenants" to Leaseco. In the event the Debtors, the Buyer or Leaseco are attempting to strip the Lease of any contractual provisions through the assumption process, the Court should reject these attempts for various reasons.

21. First, allowing the Debtors or Leaseco to cherry pick provisions of the Lease violates the *cum onere* principles discussed above and allows the Debtors to both assume and reject the Lease. Second, any such attempt to shed unspecified Restrictive Covenants violates both the Sale Order and the Assumption and Assignment Order because it fails to specifically identify what (if any) provisions in the Lease are potentially affected or to provide fourteen days to object.

22. Third, any such request to modify or reform the Lease is procedurally improper because it should be addressed in the context of a separate adversary proceeding or contested matter. *Cf. In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016) ("[T]he Court concludes that it cannot decide substantive legal issues, including whether the covenants at issue run with the land, in the context of a motion to reject, unless such motion is scheduled simultaneously with an adversary proceeding or contested matter to determine the merits of the substantive legal disputes related to the motion."), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018).

23. For all of these reasons, the Court should deny the Debtors' attempt to modify the Lease through the assumption and assignment process. Accordingly, if the Lease is ultimately assumed and assigned, such assignment must be subject to all obligations under the Lease and all rights of the MCG Landlords.

### B. The Designation Notice fails to satisfy Section 365(b)(1) of the Bankruptcy Code.

24. In order to assume and assign the Lease, the Debtors "at the time of assumption" shall: (a) cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the Lease, (b) compensate or provide adequate assurance of the prompt compensation for all pecuniary loss suffered by the MCG Landlords, and (c) provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(A)-(C). Any cure payment must include the payment of the MCG Landlords' legal fees incurred in enforcing the Lease. *In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 756-57 (Bankr. S.D.N.Y. 1986).

**1. The Designation Notice does not cure all arrearages under the Lease, provide adequate assurance of prompt cure, or compensate the MCG Landlords for all pecuniary loss.**

25. In the Designation Notice, the Buyer or Leaseco identify the cure payment to be made to the MCG Landlords as $0. While the MCG Landlords agree that there is currently no base rent due and owing under the Lease, the Debtors are not entitled to assume the Lease by merely curing arrearages in rent. Rather, in order to assume and assign the Lease, the Debtors are required, at the time of assumption, to cure or provide adequate assurance of the prompt cure of all monetary and non-monetary defaults under the respective leases. 11 U.S.C. § 365(b)(1)(A).

26. This includes, without limitation, any and all defaults with respect to insurance requirements under the Lease, real estate taxes and other charges (accrued or otherwise), amounts payable under reciprocal easement agreements, utilities (including electricity, gas, oil,

water, telephone, sanitary sewer services and all other and utilities), attorneys' fees and costs, repair, maintenance, and replacement obligations, and environmental cleanup obligations, hazardous materials restrictions, the satisfaction of liens, compliance with laws, indemnification obligations, or similar charges owing under the Lease that remain undetermined as of the date hereof (the "<u>Unliquidated Obligations</u>"). Thus, the Debtors are not entitled to assume the Lease unless they cure, or provide adequate assurance of promptly curing, all liquidated cure amounts and other Unliquidated Obligations under the Lease, including, without limitation, their current and future obligations to maintain the Rock Hill Property and make repairs and replacements, as a condition to the assumption and assignment of the Lease. *See* 11 U.S.C. § 365(b)(1).

27. Therefore, the MCG Landlords object to the extent the Debtors seeks to assume and assign the Lease free and clear of any liquidated cure amounts or Unliquidated Obligations under the Lease, including without limitation any obligations to satisfy unbilled or accrued taxes or other charges, reconciliations, or adjustments. <u>As of April 30, 2019, the liquidated amounts due under the Lease total $116,515.29</u>. Ex. 3, ¶ 11. Any order approving the assumption and assignment of the Lease should make clear that all such liquidated cure amounts must be paid at or prior to assumption and assignment and all Unliquidated Obligations under the Lease shall survive, and that the Buyer/Leaseco shall take the Lease subject to all of its terms and undertake to satisfy all monetary and all non-monetary obligations under the Lease, regardless of whether such Unliquidated Obligations could be argued to have existed, occurred, or accrued prior to the assumption and assignment of the Lease.

 **2. Neither the Debtors, the Buyer, nor Leaseco provide adequate assurance of future performance under the Lease to the MCG Landlords.**

28. Section 365(f)(2)(B) of the Bankruptcy Code requires that adequate assurance of future performance by a proposed assignee be provided, whether or not there has been a default under a contract or lease. 11 U.S.C. § 365(f)(2)(B). The Debtors and the Buyer have the burden

of proving adequate assurance of future performance with respect to the potential assumption and assignment of the Leases. *In re Res. Tech. Corp.*, 624 F.3d 376, 384 (7th Cir. 2010) ("As the party seeking to become the assignee, the Trust had the burden of proving it met the requirements of § 365(f)").

29. In addition, section 365(l) of the Bankruptcy Code provides for additional adequate assurance of future performance and provides that "the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease . . . ." where a debtor seeks to assign its rights under an unexpired lease. 11 U.S.C. § 365(l).

30. The Designation Notice identifies Leaseco as the ultimate assignee with respect to the Lease. The Debtors and the Buyer, however, have failed to provide the MCG Landlords with any – much less adequate – information concerning Leaseco or its ability to perform under the Lease.

31. The MCG Landlords hereby reserve all rights with respect to Debtors' and Leaseco's obligation to demonstrate adequate assurance of future performance, and leave the Debtors and Leaseco to their burden of proving, *inter alia*, that the requirements of section 365(f)(2)(B) have been satisfied.

32. Moreover, the MCG Landlords reserve all rights under section 365(l) to require Leaseco or the Buyer to make an adequate deposit with the MCG Landlords to secure Leaseco or the Buyer's performance of the Lease obligations. As set forth in Exhibit 3, in the event the Court approves the assumption and assignment of the Lease, any such assignment should be conditioned on Leaseco or its affiliates providing: (a) a two month security deposit of $66,308.36 (monthly base rent is $33,154,18 under the Lease), and (b) an unlimited guaranty of Leaseco's obligations under the Lease from a solvent parent company. Ex. 3, ¶¶ 13-14.

## IV.   GENERAL RESERVATION OF RIGHTS

33. The MCG Landlords expressly reserve all of their respective rights under the Lease with respect to any and all obligations of the Debtors and/or any proposed assignee as tenant, including the MCG Landlords' rights to claim any amounts of rent, charges to compensate for monetary defaults, such as accrued real estate taxes, utility charges that have been assessed, unsatisfied liens on the Rock Hill Property created by the Debtors and/or the proposed assignee and/or insurance premiums, and charges to compensate for non-monetary defaults, including without limitation all maintenance, indemnification and environmental obligations of the Debtors and/or any proposed assignee.

34. The MCG Landlords further reserve all rights to raise further objections, as necessary or appropriate under the circumstances, relating to the proposed assumption and assignment of the Lease, including without limitation any objections relating to the obligations of the Debtors and/or any proposed assignee to cure any defaults under the Leases, and the ability of any proposed assignee to provide adequate assurance of future performance.

## V.   JOINDER

35. The MCG Landlords further join in objections raised by other landlords to the extent such objections are not inconsistent herewith.

*[Remainder of Page Intentionally Blank]*

## VI.    CONCLUSION

WHEREFORE, the MCG Landlords hereby request that the Court: (a) sustain the objections set forth herein, (b) deny the proposed assumption and assignment of the Lease, and (c) grant such other or further relief as is just and appropriate under the circumstances.

Dated:  May 3, 2019

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

By:    */s/ Michael J. Barrie*
Michael J. Barrie (No. 5057450)
Kevin M. Capuzzi (admitted *pro hac vice*)
39 Broadway, 25th Floor
New York, NY 10006
(302) 442-7010
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

MOON WRIGHT AND HOUSTON, PLLC

   */s/ Andrew T. Houston*
Andrew T. Houston (NC Bar No. 36208)
*(Admitted Pro Hac Vice)*
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
Facsimile:  (704) 944-0380

*Counsel to the MCG Landlords*