Rita L. Hullett, Esq.
(*Pro Hac Vice* Motion Pending) [Doc. No. 3401]
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1400 Wells Fargo Tower
420 20th Street N
Birmingham, AL 35203
Telephone: (205) 276-9807
Email: rhullett@bakerdonelson.com

*Counsel for Geodis Logistics LLC.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE:** | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.* | **Case No. 18-23538 (RDD)** |
| **Debtors.** | **(Jointly Administered)** |

**OBJECTION AND RESERVATION OF RIGHTS OF GEODIS LOGISTICS LLC TO
THE PROPOSED CURE AMOUNTS IN CONNECTION WITH THE DEBTORS'
PROPOSED ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASE
[Related to Doc. No. 3298]**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Geodis Logistics LLC (f/k/a OHL Acquisition Corporation d/b/a Ozburn - Hessey

Logistics LLC) ("Geodis"), by its undersigned counsel, hereby submits this objection and

reservation of rights (this "Objection") to the above-captioned debtors' (the "Debtors")[1] *Notice*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861);

*of Assumption and Assignment of Additional Designatable Leases* [Doc. No. 3298] (the

"Notice").[2] In support of this Objection, Geodis respectfully states:

## BACKGROUND

1.      On October 15, 2018, the Debtors filed voluntary petitions for relief under chapter

11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy

Court for the Southern District of New York (this "Court").

2.      Upon information and belief, the Debtors are operating their businesses and

managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

3.      On or about August 28, 1992, Lanter Company (the "Original Landlord") and

Terminal Freight Handling Company (later known as Sears Logistics Services, Inc. and Innovel

Solutions, Inc. ("Innovel")) entered into that certain Lease Agreement for the lease of

approximately 43,044 square feet within the industrial building located at 117 North Industrial

Drive, Granite City, Illinois, and 6.244 acres of land surrounding the leased facility (the

"Lease").

4.      The Lease was amended by that certain Supplemental Agreement dated April 14,

1993, that certain First Amendment to Lease dated January 20, 2003, that certain Second

---

Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized but undefined terms used in this Objection shall have the meanings ascribed to them in the Notice, the Sale Motion, the Sale Order, and the Assumption and Assignment Order as applicable.

2

Amendment to Lease dated as of January 31, 2008, that certain Extension Notice dated July 12, 2012, and that certain Third Amendment to Lease dated as of January 31, 2008 (collectively, the "Amendments").[3]

5.      The Original Landlord was sold to Geodis and the Geodis became the landlord under the Lease.

6.      The Lease provides in pertinent part:

> Landlord shall pay when due all real estate taxes levied or assessed upon the Entire Tract and the Demised Premises. "Real Estate Taxes" include all forms of general or special real estate assessment, levy, or tax (other than inheritance, estate, franchise or income taxes or any other taxes imposed upon or measured by Landlord's income or profits), imposed by any authority having the direct or indirect power to tax, including any city, county, state or federal government, or their agencies or improvement districts, against any legal or equitable interest of the Landlord in the Demised Premises or in the CDC or any tax, charge or fee imposed in substitution, partially or totally, of any real property tax, or any additional tax the nature of which was previously included within the definition of a real property tax. Tenant agrees during the term to reimburse Landlord for the Real Estate Taxes within thirty (30) days after presentation of receipts marked paid in full. Landlord shall use reasonable efforts to obtain a separate tax assessment for the Entire Tract including the Demised Premises.

Lease, Section 9 Taxes, p. 19.

7.      Pursuant to the terms of the Lease, Innovel currently owes Geodis the sum of $38,408.23 for real estate taxes for the year 2017 (the "Prepetition Taxes").[4]

8.      On November 1, 2018, the Debtors filed their *Motion for Approval of Global Bidding Procedures* [Doc. No. 429] (the "Sale Motion") seeking, among other things, approval of procedures to market, auction, and sell the Debtors' real estate and other assets as a going

---

[3] True and correct copies of the Lease and the Amendments are attached to Geodis' timely filed Proof of Claim No. 10445 attached hereto as **Exhibit A**.

[4] True and correct copies of the tax assessment and invoice are attached to Geodis' timely filed Proof of Claim No. 10445 attached hereto as **Exhibit A**.

3

concern, separated into: (i) procedures that apply to certain "go-forward" stores and related assets that the Debtors have deemed profitable; and (ii) global procedures that apply to the Debtors' remaining assets that are not sold as part of the "go-forward" stores.

9.      On February 8, 2019, the Court entered its *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief* (the "Sale Order") [Doc. No. 2507].

10.     On April 2, 2019, the Court entered its *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (the "Assumption and Assignment Order") [Doc. No. 3008]. Paragraphs 26 and 27 of the Assumption and Assignment Order establish a noticing procedure for assumption and assignment of additional assigned agreements (the "Additional Assigned Agreements").

11.     Pursuant to the terms of the Sale Order, Buyer may designate Additional Assigned Agreements for assumption and assignment for up to sixty (60) days after the Closing Date (the "Designation Rights Period"), which occurred on February 11, 2019. The Debtors and Buyer agreed to an extension of the Designation Rights Period and, on April 12, 2019, the Debtors filed the *Notice of Amendment to Asset Purchase Agreement Extending Certain Deadlines* which extended the Designation Rights Period to May 3, 2019, for certain Designatable Leases and to May 13, 2019, for Additional Contracts [Doc. No. 3171].

12.     On April 19, 2019, the Debtors filed the Notice designating Additional Assigned Agreements listed on **Exhibit 1** for assumption and assignment [Doc. No. 3298].

4

13.    On **Exhibit 1** to the Notice, the Lease was designated as an Additional Assigned Agreement which the Debtors seek to assume and assign [Doc. No. 3298, page 11, line 498].[5] This was the first time the Lease appeared on any Assumption and Assignment Notice. The Lease was <u>not</u> listed on any other Assumption and Assignment Notice previously filed with the Court.

14.    The Debtors listed cure amount for the Lease (the "Cure Amount") as **$0.00** on **Exhibit 1** [Doc. No. 3298, page 11, line 498]. The Cure Amount is incorrect.  As set forth in Claim No. 10445, Innovel currently owes Geodis $38,408.23 for the Prepetition Taxes (the "Correct Cure Amount"). A copy of Claim No. 10445 is attached hereto as **Exhibit A** and incorporated by reference.

<div align="center">

**OBJECTION**

</div>

15.    Section 365(b) of the Bankruptcy Code provides in pertinent part as follows:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

  (A) cures, or provides adequate assurance that the trustee will promptly cure, such default…;

  (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

  (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

---

[5] The counterparty to the Lease was incorrectly named as OHH Acquisition Corporation instead of Geodis.

<div align="center">5</div>

16.    Section 365 of the Bankruptcy Code obligates the Debtors to promptly cure all existing defaults before assuming any unexpired lease of non-residential real property. *See* 11 U.S.C. § 365(b)(1)(A) and (B); *Agri Star Meat & Poultry, LLC v. Nevel Props. Corp. (In re Nevel Props. Corp.)*, 765 F.3d 846, 849 (8th Cir. 2014) (stating that a lease cannot be assumed unless a cure has been effected); *In re Alipat, Inc.*, 36 B.R. 274, 276 (Bankr. E.D. Mo. 1984) ("[I]f there has been a default in an executory contract or unexpired lease, the trustee may not assume such contract or lease unless he or she cures the default, compensates the other party, and provides adequate assurance of future performance…").

17.    The Debtors are, therefore, required to promptly cure all existing defaults by paying Geodis the Correct Cure Amount prior to any assumption and assignment of the Lease.

19.    As of the date of this Objection, the Correct Cure Amount is $38,408.23.

20.    Accordingly, Geodis objects to the Notice to the extent that the Correct Cure Amount is not paid in full.

## **RESERVATION OF RIGHTS**

21.    Nothing in this Objection is intended to be, or should be construed as, a waiver by Geodis of any of its rights under the Lease, the Bankruptcy Code, or applicable law. Geodis expressly reserves all such rights including, without limitation, the right to: (a) supplement and/or amend this Objection and to assert any additional objections with respect to the Cure Amount and/or any proposed assumption and assignment of the Lease; (b) amend the Cure Amount; (c) assert any nonmonetary defaults under the Lease; (d) assert any rights for indemnification or contribution against the Debtors arising under the Lease; and (e) assert any further objections with respect to the relief requested that may subsequently be sought by the

6

Debtors and/or any other party, as such requested relief relates to the Lease, and/or the interests of Geodis.

## **CONCLUSION**

**WHEREFORE**, Geodis respectfully requests that this Court enter an order: (a) sustaining this Objection; (b) ordering the Debtors to pay the Correct Cure Amount prior to the assumption and assignment of the Lease; and (c) granting Geodis such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: May 3, 2019

<div style="text-align: right;">

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC


 /s/ *Rita L. Hullett*
Rita L. Hullett
1400 Wells Fargo Tower
420 20th Street N
Birmingham, AL 35203
Telephone: (205) 276-9807
Email: rhullett@bakerdonelson.com

*Counsel for Geodis Logistics LLC.*

</div>

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 3rd day of May, 2019, the annexed Objection was served on (i) the parties requesting ECF notifications via the Court's CM/ECF case notification system; (ii) the parties so indicated below *via* first class U.S. mail; (iii) the parties so indicated below *via* electronic mail; and (iv) on all other parties requesting notice pursuant to Rule 2002 and in accordance with this Court's Amended Order Implementing Certain Notice and Case Management Procedures entered on November 1, 2018.

Dated: May 3, 2019

*/s/ Rita L. Hullett*

**U.S. Mail**

**Chambers Copy**
Chambers of the Honorable Judge Robert D. Drain
United States Bankruptcy Court for the S. D. of New York
300 Quarropas Street, Room 248
White Plains, NY 10601

**Debtors**
Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attn: Stephen Sitley Esq.
Luke J. Valentino, Esq.

**Office of the United States Trustee**
Office of the United States Trustee for Region 2
201 Varick Street, Suite 1006
New York, NY 10014
Attn: Paul Schwartzberg, Esq.

**Electronic Service**

**Debtors**
Rob Riecker - rob.riecker@searshc.com
Luke Valentino - luke.valentino@searshc.com
Mohsin Meghji - mmeghji@miiipartners.com

**Counsel for the Debtors**
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Ray C. Schrock, P.C.
Jacqueline Marcus, Esq.
Garret A. Fail, Esq.

4813-9680-8085v1
2902696-000255 05/03/2019

Sunny Singh, Esq.
ray.schrock@weil.com
garrett.fail@weil.com
jacqueline.marcus@weil.com
sunny.singh@weil.com

**Attorneys for Bank of America, N.A., administrative agent under the
First Lien Credit Facility and the DIP ABL Agent**
Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, NY 10036
Attn: Paul D. Leake, Esq.
Shana A. Elberg, Esq.
George R. Howard, Esq.
paul.leake@skadden.com
shana.elberg@skadden.com
george.howard@skadden.com

**Attorneys for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility**
Davis Polk & Wardell LLP
450 Lexington Avenue
New York, NY 10017
Attn: Marshall S. Huebner, Esq.
Eli J. Vonnegut, Esq.
marshall.huebner@davispolk.com
eli.vonnegut@davispolk.com

**Attorneys for JPP, LLC, as agent under the Second Lien Credit Facility, IP/Ground Lease**
Term Loan Facility, and the Consolidated Secured Loan Facility
Cleary, Gottlieb
One Liberty Plaza
New York, NY 10006
Attn: Sean A. O'Neal, Esq.
soneal@cgsh.com

**Attorneys for Computershare Trust Company, N.A., as trustee for the Second Lien PIK
Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes**
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
Attn: Eric R. Wilson, Esq.
Benjamin D. Feder, Esq.
T. Charlie Liu, Esq.
ewilson@kelleydrye.com
bfeder@kelleydrye.com
cliu@kelleydrye.com

4813-9680-8085v1
2902696-000255 05/03/2019

**Attorneys for Wilmington Trust, NA, as indenture trustee for the Second Lien Notes**
Seyfarth Shaw, LLP
620 Eighth Avenue
New York, NY 10018
Attn: Edward M. Fox, Esq.
emfox@seyfarth.com

**Attorneys for The Bank of New York Mellon Trust Company, as successor trustee for the SRAC Unsecured PIK Notes, SRAC Unsecured Notes, and the SRAC Medium Term Notes**
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10015
Attn: James Gadsden, Esq.
gadsden@clm.com

**Attorneys for the Pension Benefit Guaranty Corporation**
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606
Attn: Brian A. Raynor, Esq.
braynor@lockelord.com

**Attorneys for the Official Committee of Unsecured Creditors**
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Attn: Philip C. Dublin, Esq.
Ira Dizengoff, Esq.
Sara Lynne Brauner, Esq.
pdublin@akingump.com
idizengoff@akingump.com
sbrauner@akingump.com

**Attorneys to Wells Fargo Bank, National Association**
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
ksimard@choate.com
jmarshall@choate.com
**Investment Banker for the Debtors**
Lazard Frères & Co., LLC
30 Rockefeller Plaza,
New York, NY 10112
Attn: Brandon Aebersold
Levi Quaintance
project.blue.rx@lazard.com

4813-9680-8085v1
2902696-000255 05/03/2019

**Buyer**
Transform Holdco LLC
c/o ESL Partners, Inc.
1170 Kane Concourse, Suite 200
Bay Harbor Islands, FL 33154
Attention: Kunal S. Kamlani and Harold Talisman
kunal@eslinvest.com
harold@eslinvest.com

Luke A. Barefoot
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
lbarefoot@cgsh.com

11

# EXHIBIT A

## Geodis Logistics LLC

## Proof of Claim No. 10445

4813-9680-8085v1
2902696-000255 05/03/2019

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**Fill in this information to identify the case (Select only one Debtor per claim form):**

| | | | | |
|---|---|---|---|---|
| ☐ Sears Holdings Corporation (18-23538) | ☐ Kmart Corporation (18-23549) | ☐ Sears, Roebuck de Puerto Rico, Inc. (18-23561) | ☐ MyGofer LLC (18-23573) | ☐ Kmart.com LLC (18-23585) |
| ☐ Sears, Roebuck and Co. (18-23537) | ☐ MaxServ, Inc. (18-23550) | ☐ SYW Relay LLC (18-23562) | ☐ Sears Brands Business Unit Corporation (18-23574) | ☐ Sears Brands Management Corporation (18-23586) |
| ☐ Kmart Holding Corporation (18-23539) | ☐ Private Brands, Ltd. (18-23551) | ☐ Wally Labs LLC (18-23563) | ☐ Sears Holdings Publishing Company, LLC (18-23575) | ☐ SHC Licensed Business LLC (18-23616) |
| ☐ Kmart Operations LLC (18-23540) | ☐ Sears Development Co. (18-23552) | ☐ Big Beaver of Florida Development, LLC (18-23564) | ☐ Kmart of Michigan, Inc. (18-23576) | ☐ SHC Promotions LLC (18-23630) |
| ☐ Sears Operations LLC (18-23541) | ☐ Sears Holdings Management Corporation (18-23553) | ☐ California Builder Appliances, Inc. (18-23565) | ☐ SHC Desert Springs, LLC (18-23577) | ☐ SRe Holding Corporation (19-22301) |
| ☐ ServiceLive, Inc. (18-23542) | ☐ Sears Home & Business Franchises, Inc. (18-23554) | ☐ Florida Builder Appliances, Inc. (18-23566) | ☐ SOE, Inc. (18-23578) | |
| ☐ A&E Factory Service, LLC (18-23543) | ☐ Sears Home Improvement Products, Inc. (18-23555) | ☐ KBL Holding Inc. (18-23567) | ☐ StarWest, LLC (18-23579) | |
| ☐ A&E Home Delivery, LLC (18-23544) | ☐ Sears Insurance Services, L.L.C. (18-23556) | ☐ KLC, Inc. (18-23568) | ☐ STI Merchandising, Inc. (18-23580) | |
| ☐ A&E Lawn & Garden, LLC (18-23545) | ☐ Sears Procurement Services, Inc. (18-23557) | ☐ Sears Protection Company (Florida), L.L.C. (18-23581) | ☐ Troy Coolidge No. 13, LLC (18-23584) | |
| ☐ A&E Signature Service, LLC (18-23546) | ☐ Sears Protection Company (18-23558) | ☐ Kmart of Washington LLC (18-23570) | ☐ BlueLight.com, Inc. (18-23582) | |
| ☐ FBA Holdings Inc. (18-23547) | ☐ Sears Protection Company (PR) Inc. (18-23559) | ☐ Kmart Stores of Illinois LLC (18-23571) | ☐ Sears Brands, L.L.C. (18-23583) | |
| ☒ Innovel Solutions, Inc. (18-23548) | ☐ Sears Roebuck Acceptance Corp. (18-23560) | ☐ Kmart Stores of Texas LLC (18-23572) | ☐ Sears Buying Services, Inc. (18-23584) | |

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| 1. Who is the current creditor? | Geodis Logistics, LLC |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor    Ozburn-Hessey Logistics, LLC |

| 2. Has this claim been acquired from someone else? | ☒ No |
|---|---|
| | ☐ Yes. From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | Geodis Logistics, LLC ATTN: Ben Bodzy 7101 Executive Center Drive, Suite 333 Brentwood, TN 37027 | |
| | Contact phone _____ | Contact phone _____ |
| | Contact email _____ | Contact email _____ |

| 4. Does this claim amend one already filed? | ☒ No | | |
|---|---|---|---|
| | ☐ Yes.  Claim number on court claims registry (if known)_____ | Filed on _____ | |
| | | | MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No |
|---|---|
| | ☐ Yes. Who made the earlier filing? _____ |

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __1__  __0__  __0__  __5__ |
|---|---|

| 7. **How much is the claim?** | $ 38,408.23 |
|---|---|

. **Does this amount include interest or other charges?**
☒ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>**Lease Agreement (08/28/92) as amended - 2017 Real Estate Taxes** |
|---|---|

| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property. |
|---|---|

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%
☐ Fixed
☐ Variable

| 10. **Is this claim based on a lease?** | ☐ No<br>☑ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____ 38,408.23 |
|---|---|

| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |
|---|---|

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No ☐ Yes. *Check one:* | **Amount entitled to priority** |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No ☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $_____ |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Ben Bodzy*
Ben Bodzy (Mar 25, 2019)

**Email:**   ben.bodzy@geodis.com

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name of the person who is completing and signing this claim:

| Name | Ben Bodzy | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | VP and Associate General Counsel | | |
| Company | Geodis Logistics | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 7101 Executive Center Drive | | |
| | Number          Street | | |
| | Brentood | TN | 37027 |
| | City | State | ZIP Code |
| Contact phone | 6155243671 | Email | ben.bodzy@geodis.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **have supporting documentation.**
  **(attach below)**

☐ **do not have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Modified Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                    12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at http://restructuring.primeclerk.com/sears.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Sears Holdings Corporation Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

<div style="border:1px solid">

# Do not file these instructions with your form

</div>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | |
| | : | **Chapter 11** |
| **SEARS HOLDING CORPORATION, et al** | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

| | |
|---|---|
| **Debtor:** | **Innovel Solutions, Inc. (18-23548)** |
| **Creditor:** | **Geodis Logistics LLC** |
| **Claim Amount:** | **$38,408.23 - 2017 Real Estate Taxes** |

### SUPPORTING DOCUMENTS - PROOF OF CLAIM

1) Misc. Invoice in the amount of $38,408.23 for 2017 Real Estate Taxes (BS 01-02)

2) Madison County, IL Treasurer Tax Assessment for 2017 Real Estate Taxes (BS 03-04)

3) Lease Agreement dated 08/28/1992 by and between Lanter Company, as landlord, and Terminal Freight Handling Company d/b/a Sears Logistics Services, as tenant (BS 05-60)

4) Supplemental Agreement dated 05/14/93 by and between Lanter Company, as landlord, and Terminal Freight Handling Company d/b/a Sears Logistics Services, as tenant (BS 61-62)

5) First Amendment to Lease dated 01/20/03 by and between Lanter Company, as landlord, and Sears Logistics Services, Inc., as tenant (BS 63-65)

6) Second Amendment to Lease by and between Lanter Company, as landlord, and Sears Logistics Services, Inc., as tenant (BS 66-68)

7) Third Amendment to Lease dated 10/31/13 by and between OHL Acquisition Corporation, as landlord, and Sears Logistics Services, Inc., as tenant (BS 69-71)

8) Fourth Amendment to Lease dated 01/31/18 by and between Geodis Logistics LLC, as landlord, and Innovel Solutions, Inc, as tenant (BS 72-79)

 **GEODIS**

**Misc. Invoice**

GEODIS Facility:    SRS

SEARS
117 INDUSTRIAL DRIVE
PAUL SWANSON
GRANITE CITY, IL 62040 USA

| Invoice Number: | 168-50150443 |
|---|---|
| Invoice Date: | 12/19/2018 |

For the Account of:    0001005

SEARS LOGISTICS SERVICE
PAUL SWANSON
117 INDUSTRIAL DRIVE
GRANITE CITY, IL 62040 USA

| | | **Invoice Total** | | **$38,408.23** |
|---|---|---|---|---|

| Item Lot | Entered Quantity | Description Weight Activity | Charge By | Quantity | Units | Rate | Amount |
|---|---|---|---|---|---|---|---|
| | 1.00 | SUBL TAXES REAL ESTATE TAXES FOR YEAR 2017 | FlatChrg | 1.00 | | 38,408.2300 | 38,408.23 |
| Grand Total: | 1.00 | | | 0.00 | | | 38,408.23 |

| | **Invoice Total U.S. Dollars** | **$38,408.23** |
|---|---|---|

Please refer to invoice number with remittance
Make checks payable and remit to:
Geodis Logistics, LLC
15604 Collections Center Drive
Chicago, IL 60693

**Preferred Payment Methods are ACH/Wire:**

**If sending money via Wire Transfer, the instructions are as follows:**
Bank of America
135 S. LaSalle Street
Chicago, IL 60603
ABA# 026009593
SWIFT-BOFAUS3N
GEODIS Main Account
Account# 8666721104

**If sending money via ACH, the instructions are as follows:**
Bank of America
135 S. LaSalle Street
Chicago, IL 60603
ABA# 071000039
GEODIS Main Account
Account# 8666721104

If not sent electronically through the bank vis CTX, please send all remittance
advices to accountsreceivablebrentwood.cl.us@geodis.com

Geodis 000001

| SEARS REAL ESTATE TAXES FOR YEAR 2017 | | |
|---|---|---|
| Parcel I.D. Number | 22-1-20-06-00-000-010.002 | $ 79,434.92 |
| Lanter Base Tax | | $ 12,000.00 |
| | | $ 67,434.92 |
| Sears Prorata | | 56.956% |
| TOTAL DUE | | $ 38,408.23 |

Geodis 000002

4JM9

## CHRIS SLUSSER
### MADISON COUNTY TREASURER



| PARCEL I.D. NUMBER | 22-1-20-06-00-000-010.002 | | RATES 2016 | AMOUNT OF TAXES | TAXING DISTRICT | RATES 2017 | AMOUNT OF TAXES |
|---|---|---|---|---|---|---|---|
| 22-GRANITE CITY | | | 5.0045 | $38,568.68 | GRANITE CITY CU #9 | 4.4767 | $33,269.04 |
| | TOWNSHIP | | 2.5600 | $19,729.41 | CITY OF GRANITE CITY | 3.2960 | $24,494.55 |
| 276 | TAX CODE | **2017** | 0.6514 | $5,020.20 | MADISON COUNTY | 0.6157 | $4,575.67 |
| | TAX PAYING AGENT NUMBER | **REAL** | 0.5875 | $4,527.75 | GRANITE CITY PARK | 0.5948 | $4,420.32 |
| | | | 0.4743 | $3,655.34 | SW IL COLLEGE #522 | 0.4648 | $3,454.21 |
| 0080 | CLASS CODE | **ESTATE** | 0.4359 | $3,359.39 | SIX-MILE REG. LIBRARY | 0.4440 | $3,299.63 |
| | | | 0.4216 | $3,249.19 | METRO EAST SANITARY | 0.4118 | $3,060.33 |
| | TIF CERTIFIED ASSESSMENT | **TAXES** | 0.3742 | $2,883.88 | GRANITE CITY TOWNSHIP | 0.3850 | $2,861.17 |
| 2,229,700 | FAIR MARKET VALUE | | 0.0000 | $0.00 | SPC. SERV. AREA#1 SEWER | 0.0000 | $0.00 |
| 770,680 | NON-FARM ASSESSMENT | | | | | | |
| X   0.9843 | TOWNSHIP MULTIPLIER | LEGAL DESCRIPTION | | | | | |
| +   0 | FARM LAND | $0.00 | PT N1/2 NE | | | | |
| +   0 | FARM BUILDING | $0.00 | | | | **2017 TOTAL TAX** | $79,434.92 |
| =   743,160 | TOWNSHIP EQUALIZED VALUE | | | | | **2017 TAXES PAID** | $0.00 |
| -   0 | HOMESTEAD IMPROVEMENT EXEMP. | Property Address | | ACREAGE TOTAL = 6.0700 | | **2017 TOTAL TAX DUE** | $79,434.92 |
| -   0 | GENERAL DISABLED VETERAN | EXETER 117 119 INDUSTRIAL LLC | | | | | |
| X   1.0000 | STATE MULTIPLIER | 117 NORTHGATE INDUSTRIAL DR GRANITE CITY, IL 62040 | | | 22-1-20-06-00-000-010.002 | | |
| =   743,160 | STATE EQUALIZED VALUE | THIS IS NOT A NEW OR ADDITIONAL TAX | | | EXETER 117 119 INDUSTRIAL LLC 101 WEST ELM ST | | |
| -   0 | ER ASSESSMENT FREEZE DEDUCTION | INFORMATIONAL DISTRICTS | | AMOUNT | STE 600 CONSHOHOCKEN PA 19428 | | |
| -   0 | GENERAL HOMESTEAD OWNER OCCU/WKOY | MUNICIPALITY PENSION | | $4,102.25 | | | |
| -   0 | HOMESTEAD DEDUCTION OVER 65 | UNIT SCHOOLS PENSION | | $2,672.44 | | | |
| -   0 | FRATERNAL/VETERAN ORG. FREEZE | COUNTY PENSION | | $934.18 | | | |
| -   0 | DISABLED PERSON | PARK DISTRICT PENSION LIBRARY DISTRICT PENSION | | $461.50 $387.93 | | | |
| -   0 | VETERAN EXEMPTION | TOWNSHIP PENSION | | $330.71 | | | |
| =   743,160 | TAXABLE VALUE | SANITARY DISTRICTS PENSION | | $129.31 | | | |
| X   10.6888 | COMBINATION TAX RATE | | | | | | |
| +   0.00 | DRAINAGE | | | | | | |
| $79,434.92 | TOTAL TAX | | | | | | |



*** Reminder *** **IF YOU ESCROW TAXES**

Check with your mortgage company before paying.

## Total Collected in 2017 - $413,546,263

| | | | |
|---|---|---|---|
| SCHOOL DISTRICT | 55% | | $226,515,077 |
| CITIES/VILLAGES | 12% | $51,920,440 | |
| MADISON COUNTY | 8% | $31,832,294 | |
| COMMUNITY COLLEGE | 7% | $29,729,097 | |
| OTHER DISTRICTS | 7% | $26,668,198 | |
| TIF DISTRICTS | 6% | $26,485,010 | |
| TOWNSHIPS | 5% | $20,396,147 | |

In Illinois, property taxes are paid in arrears. Your 2017 taxes are billed and collected in 2018.



## WARNING: Don't Overpay!
Ways to reduce YOUR equalized assessed valuation (EAV)

Contact the **Chief County Assessor's Office** @ 618.692.6270

- Homestead —$6,000
- Senior Citizen —$5,000
- Disabled Veteran — Contact Assessor
- Returning Veteran —$5,000
- Disabled Person — $2,000
- Senior Citizen Freeze — Contact Assessor
- Homestead Improvement — Contact Assessor

Geodis 000003



## 1st

**COUPON**

Payment Due

**July 5, 2018**

Please mail payment to:

**CHRIS SLUSSER**

**COUNTY TREASURER**

**P.O. Box 849**

**Edwardsville, IL  62025**

REMOVE THIS STUB BEFORE MAILING

Tear here →

1st Installment    PARCEL I.D. NO.    22-1-20-06-00-000-010.002

MAIL THIS COUPON WITH PAYMENT

| IF PAID ON - THROUGH | AMOUNT DUE |
|---|---|
| 07/06/2018 - 08/05/2018 | $20,156.61 |
| 08/06/2018 - 09/05/2018 | $20,454.49 |
| 09/06/2018 - 10/05/2018 | $20,752.37 |
| 10/06/2018 - 11/05/2018 | $21,050.25 |
| 11/06/2018 - 12/05/2018 | $21,348.13 |
| 12/06/2018 - 01/05/2019 | $21,646.02 |
| 01/06/2019 - 02/05/2019 | $21,943.90 |
| 02/06/2019 - 02/15/2019 | $22,241.78 |

Feb. 16, 2019 is the last day to pay before taxes sold

DO NOT MARK BELOW THIS LINE

EXETER 117 119 INDUSTRIAL LLC

Collector Use Only

| 1ST PAYMENT REAL ESTATE TAX | $19,858.73 |
|---|---|
| DRAINAGE | 0.00 |
| AMOUNT DUE | $19,858.73 |
| IF PAID BY | 07-05-18 |

221200600000010002 0001985873 0000000000 01 1 1

## 2nd

**COUPON**

Payment Due

**September 5, 2018**

Please mail payment to:

**CHRIS SLUSSER**

**COUNTY TREASURER**

**P.O. Box 849**

**Edwardsville, IL  62025**

REMOVE THIS STUB BEFORE MAILING

Tear here →

2nd Installment    PARCEL I.D. NO.    22-1-20-06-00-000-010.002

MAIL THIS COUPON WITH PAYMENT

| IF PAID ON - THROUGH | AMOUNT DUE |
|---|---|
| 09/08/2018 - 10/05/2018 | $20,156.61 |
| 10/06/2018 - 11/05/2018 | $20,454.49 |
| 11/06/2018 - 12/05/2018 | $20,752.37 |
| 12/06/2018 - 01/05/2019 | $21,050.25 |
| 01/06/2019 - 02/05/2019 | $21,348.13 |
| 02/06/2019 - 02/15/2019 | $21,646.02 |

Feb. 15, 2019 is the last day to pay before taxes sold

DO NOT MARK BELOW THIS LINE

EXETER 117 119 INDUSTRIAL LLC

Collector Use Only

| 2ND PAYMENT REAL ESTATE TAX | $19,858.73 |
|---|---|
| AMOUNT DUE | $19,858.73 |
| IF PAID BY | 09-05-18 |

221200600000010002 0001985873 0000000000 02 1 9

## 3rd

**COUPON**

Payment Due

**October 5, 2018**

Please mail payment to:

**CHRIS SLUSSER**

**COUNTY TREASURER**

**P.O. Box 849**

**Edwardsville, IL  62025**

REMOVE THIS STUB BEFORE MAILING

Tear here →

3rd Installment    PARCEL I.D. NO.    22-1-20-06-00-000-010.002

MAIL THIS COUPON WITH PAYMENT

| IF PAID ON - THROUGH | AMOUNT DUE |
|---|---|
| 10/06/2018 - 11/05/2018 | $20,156.61 |
| 11/06/2018 - 12/05/2018 | $20,454.49 |
| 12/06/2018 - 01/05/2019 | $20,752.37 |
| 01/06/2019 - 02/05/2019 | $21,050.25 |
| 02/06/2019 - 02/15/2019 | $21,348.13 |

Feb. 15, 2019 is the last day to pay before taxes sold

DO NOT MARK BELOW THIS LINE

EXETER 117 119 INDUSTRIAL LLC

Collector Use Only

| 3RD PAYMENT REAL ESTATE TAX | $19,858.73 |
|---|---|
| AMOUNT DUE | $19,858.73 |
| IF PAID BY | 10-05-18 |

221200600000010002 0001985873 0000000000 03 1 7

## 4th

**COUPON**

Payment Due

**December 5, 2018**

Please mail payment to:

**CHRIS SLUSSER**

**COUNTY TREASURER**

**P.O. Box 849**

**Edwardsville, IL  62025**

REMOVE THIS STUB BEFORE MAILING

Tear here →

4th Installment    PARCEL I.D. NO.    22-1-20-06-00-000-010.002

MAIL THIS COUPON WITH PAYMENT

| IF PAID ON - THROUGH | AMOUNT DUE |
|---|---|
| 12/06/2018 - 01/05/2019 | $20,156.61 |
| 01/06/2019 - 02/05/2019 | $20,454.49 |
| 02/06/2019 - 02/15/2019 | $20,752.37 |

Feb. 15, 2019 is the last day to pay before taxes sold

DO NOT MARK BELOW THIS LINE                    $79,434.92

EXETER 117 119 INDUSTRIAL LLC

Collector Use Only

| 4TH PAYMENT REAL ESTATE TAX | $19,858.73 |
|---|---|
| AMOUNT DUE | $19,858.73 |
| IF PAID BY | 12-05-18 |

221200600000010002 0001985873 0000000000 04 1 5

Geodis 000004

LEASE

THIS LEASE ("Lease") is made as of this 28th day of August, 1992 between LANTER COMPANY, a Delaware corporation ("Landlord"), and TERMINAL FREIGHT HANDLING COMPANY, a Delaware corporation d/b/a SEARS LOGISTICS SERVICES ("Tenant"). The parties agree:

1.    Premises.

(a)    Landlord leases to Tenant and Tenant takes from Landlord the following premises situated in the City of Granite City, County of Madison, State of Illinois, more particularly described as:

The real property consisting of approximately 6.244 acres (the "Entire Tract"), legally described on the attached Exhibit "A" and outlined in red on the attached Exhibit "A-1", and that certain building consisting of approximately 100,000 square feet outlined in blue on Exhibit "A-1" (the "Cross Dock Center" or "CDC"), and all other site improvements, including loading docks and parking lots to be constructed thereon by Landlord under this Lease (said CDC and other improvements being collectively referred to hereinafter as the "Leasehold Improvements"), including ingress and egress to the public roadways as shown on Exhibit "A-1". The Leasehold Improvements and the Entire Tract are collectively referred to hereinafter as the "Demised Premises" and are located in the Northgate Industrial Park, Granite City, Illinois.

(b)    Landlord also leases to Tenant all privileges, appurtenances, rights, easements, and any other improvements now or hereafter situated on and or appertaining to the Demised Premises and belonging to Landlord.

(GRANLANT)                              1

Geodis 000005

2.    Use.

The Demised Premises may be used by Tenant as a warehouse,
storage and distribution facility, for the loading and parking
of tractors and trailers, and all other lawful uses ancillary
and reasonably associated therewith; provided, however, that the
Demised Premises shall not be used for manufacturing, or as an
auto center. Tenant agrees to comply with federal, state and
local governmental laws, rules, regulations, covenants,
conditions and restrictions and ordinances applicable to
Tenant's use of the Demised Premises. Tenant will set its hours
and days of operation. Tenant will not use, store, transfer,
possess or allow to be present on, at or over the Demised
Premises at any time, any hazardous materials as defined in
Section 19 of this Lease, without the prior written consent of
the Landlord, except for amounts of commercial material
routinely used in accordance with law in the normal course of
Tenant's business (including but not limited to minimal amounts
of oils and solvents used in the maintenance of lift-trucks,
lubricants, degreasers, office floor strippers, and carpet spot
removers), and except for those which constitute Tenant's stock-
in-trade that may be cross-docked through the CDC but only if
such stock-in-trade consists of consumer items in packaging for
sale to consumers.

3.    Term.

The term of this Lease shall commence on the Commencement
Date and terminate on the last day of the calendar month five
(5) years thereafter ("Term"). The Commencement Date shall be
the date of Substantial Completion (as defined in Section 5(c));
provided, however, that if the date of Substantial Completion
occurs after January 1, 1993, then the Commencement Date shall
be the day after the expiration of Tenant's obligations under
Tenant's pre-existing lease. The parties shall specify the
Commencement Date by supplemental agreement.

(GRANLANT)                    2

Geodis 000006

(a)    Landlord grants to Tenant two (2) consecutive five (5)-year options to extend the Term (each being referred to as an "Extension Term"), which options shall be exercisable, so long as Tenant is not in continuing default at the time of exercise, on written notice by Tenant to Landlord no later than six (6) months prior to the expiration of the Term or the then existing Extension Term; provided, however, that if Tenant shall fail to give any such notice prior to such six (6) - month time limit, Tenant's right to exercise its option shall nevertheless continue until thirty (30) days after Landlord shall have given Tenant notice of Landlord's election to terminate such option, and Tenant may exercise such option at any time until the expiration of said thirty (30)-day period.  It is the intention of the parties to avoid forfeiture of Tenant's rights to extend the Term of this Lease under any of the options set forth in this Section 3 through inadvertent failure to give notice thereof within the time limits prescribed.  Tenant may only exercise each option if it has previously exercised the next preceding option.  During any extension of the Term, all Sections of this Lease, except this Section in the second Extension Term, will be effective, and references to Term will incorporate the extensions.

(b)    Upon the expiration of this Lease, or its termination, Tenant will surrender to Landlord possession of the Demised Premises in good condition (excluding ordinary wear and tear and changes in condition due to casualty loss covered by applicable insurance).

(c)    If Tenant remains in possession of the Demised Premises after expiration of this Lease, or termination of this Lease, as provided herein, Tenant's holding over shall constitute a month-to-month tenancy at Rent equal to one hundred ten percent (110%) of that in effect prior to the end of the Term.

(GRANLANT)                        3

Geodis 000007

(d)    Notwithstanding anything contained in this Lease to the contrary, Tenant does not expressly or impliedly, directly or indirectly agree to operate a business in the Demised Premises.

(e)    During the period beginning with the date of this Lease and ending with the Commencement Date (such period being hereinafter referred to as the "Interim Term"), Tenant and Landlord shall have all rights and all obligations as provided in this Lease, including insurance obligations, except that during the Interim Term no Rent or any monetary obligations due hereunder shall be charged except as specifically provided for herein.

4.    Rent.

(a)    The initial rental payment ("Initial Rental Payment") shall be due Landlord on the Commencement Date, subject, however, to Tenant's right to set off as set forth hereinafter.

(b)    Tenant agrees to pay annual rent ("Rent") in the amount of Three Hundred Forty-Five Thousand and 00/100 Dollars ($345,000.00), to be paid in equal monthly installments of Twenty-Eight Thousand Seven Hundred Fifty and 00/100 Dollars ($28,750.00) for the five (5)-year Term.  Rent shall be payable in advance, on the first day of each month, or a proportionate sum during partial months.  The Rent shall be made payable to Landlord and mailed to Landlord's address set forth in the "Notice" Section of this Lease until the payee or address is changed by written notice from Landlord.

(c)    If Tenant has exercised the options for Extension Terms in accordance with Section 3(a), or if the Term of this Lease is otherwise extended by written agreement of Landlord and Tenant, Tenant agrees to pay as Rent under the same conditions

(GRANLANT)                          4

Geodis 000008

as set forth in Subsection 4(b) above the following amounts for
the following periods:

Years   6-10     $325,000.00  per year or  $27,083.33  per month

Years 11-15     $310,000.00  per year or  $25,833.33  per month

All years enumerated above are determined by reference to the
Commencement Date.

(d)    Except as otherwise expressly provided herein, the
obligations of Tenant in this Section 4 shall be separate and
independent covenants and agreements.    Nothing herein shall
preclude Tenant from pursuing or realizing upon its other
remedies at law or in equity (as the same may be herein limited)
by reason of any default hereunder by Landlord.

5.    Construction of Leasehold Improvements.

(a)    Landlord warrants that Landlord shall at its sole cost
and expense construct certain improvements on the Demised
Premises, including but not limited to the CDC containing
approximately 100,000 square feet of floor area, and parking
facilities, loading docks, dock levellers, fencing and utilities
(the "Leasehold Improvements"), with construction documents to
be developed by Landlord's architect and Landlord's general
contractor    ("Landlord's    Construction    Documents").    The
Landlord's Construction Documents are listed on Exhibit "B"
attached hereto, and incorporated by such reference in this
Lease.   Landlord shall develop Landlord's Construction Documents
as a natural progression from the specifications submitted to
Landlord by Tenant, and Landlord shall submit drafts of
Landlord's Construction Documents to Tenant for Tenant's
reasonable review and approval.   Tenant shall have ten (10)
business days from its receipt for written comment after any
submission.   If Tenant does not approve Landlord's Construction

(GRANLANT)                              5

Documents within the 10-day period, for each day of delay beyond the 10-day period, an equal number of days shall be added to Landlord's performance obligations contained in this Section 5. Landlord, within twenty (20) days after receipt of Tenant's reasonable disapproval, consistent with specifications submitted by Tenant, shall cause Landlord's architect to appropriately revise Landlord's Construction Documents so as to meet the changes, modifications and corrections required by Tenant and to resubmit such Landlord's Construction Documents to Tenant. Tenant shall not disapprove the revised Landlord's Construction Documents if they are in conformity with and a logical and consistent development of Tenant's specifications and Tenant's comments on the initial draft of Landlord's Construction Documents. Any approval by Tenant in connection with any technical issues, which either require professional skill or judgment or are beyond the expertise of Tenant, is made in reliance on Landlord's architect's professional skill, judgment and recommendations, without any independent investigation, review or evaluation by Tenant. In no event shall any acceptance or approval by Tenant relieve Landlord's architect or Landlord of any responsibility or liability under this Lease or be construed as a determination by Tenant of the adequacy, accuracy or completeness of Landlord's Construction Documents and of any plans and specifications developed under this Lease. The terms "accept" and "approve" and their derivatives as used in this Section 5 in reference to Tenant shall be interpreted to mean authorization by Tenant to proceed with a particular action, as the case may be.

(b) There shall be no deviation from material specifications provided to Landlord by Tenant without the prior written approval of Tenant, except that Landlord may substitute materials of equal or better quality upon written notice to Tenant of Landlord's intention to do so, specifying therein the nature of such substitution and that said substitute materials are of equal or better quality than those specified in the

(GRANLANT)                              6

Geodis 000010

Tenant's specifications. Tenant shall have the right to approve the manufacturer and schedule of delivery of major equipment components, which approval shall not be unreasonably withheld or delayed. Landlord shall procure and pay for all necessary permits and approvals for construction of the Leasehold Improvements, (except, however, for permits and approvals for construction of Tenant Improvements (as hereinafter defined)) including, without limitation, building permits required by municipal, state or utility subdivisions of public or private bodies having jurisdiction over the Entire Tract.

(c) Landlord shall use its best efforts to substantially complete, or cause to be substantially completed, the construction of the CDC and Leasehold Premises within five (5) months of the date of execution of this Lease (provided such execution date is no later than September 1, 1992), or such later date as may be necessary due to Unavoidable Delay (as defined in Section 30); provided, however, that in the event Landlord fails to complete and deliver the Demised Premises to Tenant within eight (8) months of the date of execution of this Lease, Tenant shall have the right, upon prior written notice to Landlord at any time after such date until the Demised Premises have been completed and delivered to Tenant, to terminate this Lease. If Tenant does not terminate this Lease, Tenant shall complete construction of the CDC and Leasehold Improvements, pay all outstanding bills for labor and materials and cure any failure of compliance with or completion in accordance with Landlord's Construction Documents; and Tenant may deduct these costs, together with interest at the prime rate then being charged by Continental Illinois National Bank and Trust Company of Chicago from Rent payable, and together with Tenant's costs and expenses associated with obtaining or utilizing alternative facilities as aforesaid, until Tenant has been fully reimbursed, with interest. In no event shall the date for Substantial Completion be extended for more than a total of eight (8) months from the date of execution of this Lease by reason of

(GRANLANT)                          7

Geodis 000011

Unavoidable Delay occurring after the commencement of construction. For purposes of this Lease, "Substantial Completion" shall mean that Landlord has completed construction of the CDC and the Leasehold Improvements in substantial accordance with Landlord's Construction Documents (exclusive of any equipment or fixtures to be installed by Tenant and Exclusive of Punchlist items as hereinafter defined), and that Landlord has certified that the Demised Premises are ready for occupancy by Tenant, free and clear of all unpermitted liens and encumbrances, and are in a condition as required by the governmental agencies having jurisdiction over the Entire Tract for issuance of a Temporary Certificate of Occupancy. Within sixty (60) days after the date of Substantial Completion, Landlord shall use its best efforts to obtain and deliver to Tenant a Final Certificate of Occupancy, if such has not been issued, from the applicable governmental authority.

(d)  Landlord and Tenant recognize that during the course of construction of the Improvements, Tenant may desire to amend or revise Landlord's Construction Documents. Tenant may, therefore, amend or revise Landlord's Construction Documents after they have been approved by Landlord and Tenant. Landlord shall have the right to approve any proposed revision or modification to insure that, as modified, it is architecturally sound and harmonious with the remainder of the CDC. If Tenant requests for such amendments or revisions cause an increase in the project cost, then such increase not exceeding $25,000.00 shall be paid by no later than the Commencement Date, and the amount of increase above $25,000.00, if any, shall be paid as additional Rent ratably over the Term of the Lease. All amendments and revisions proposed by Tenant shall be submitted to Landlord's construction manager, who shall obtain from Landlord's general contractor a cost for the work which shall be promptly submitted in writing to Tenant and Landlord. Work on the amendment or revision will not start until a construction change order is approved by Tenant's construction manager, or

(GRANLANT)                          8

Geodis 000012

his authorized representative. Immediately upon approval, Tenant shall forward a copy to Landlord. If any changes requested by Tenant delay Landlord's construction schedule, the date of Substantial Completion shall be extended by a number of days equal to the delay.

(e) Landlord agrees to obtain and maintain, or cause Landlord's general contractor to obtain and maintain, during the erection and construction of the Leasehold Improvements and until completion thereof, reasonable and customary insurance coverage, including workers' compensation, commercial general liability insurance, motor vehicle liability insurance, and builder's risk insurance.

(f) (i) Promptly after the date of Substantial Completion, Tenant shall inspect the Demised Premises and shall furnish to Landlord a written statement setting forth any uncompleted or deficient portions of the Demised Premises (the "Punchlist"). Landlord shall diligently proceed to cause completion of the Punchlist items. If Landlord fails to complete the Punchlist items within sixty (60) days after the delivery notice of any or all of such Punchlist items to Landlord (which period shall be extended for any delays caused by Tenant and in accordance with the provisions of Section 30 hereof regarding Unavoidable Delay), Tenant may, but is not obligated to, complete such Punchlist items. Tenant may demand the payment from Landlord of such costs, plus interest thereon at the prime rate then being charged by Continental Illinois National Bank and Trust Company of Chicago. If said Punchlist items are of a nature that they cannot be completed within said sixty (60) days, said sixty (60)-day period shall be extended for so long as Landlord is diligently proceeding to complete such Punchlist items.

(GRANLANT)                                    9

Geodis 000013

(ii) Sixty (60) days prior to the first year anniversary of the Commencement Date, an inspection of the Demised Premises will be conducted by representatives of Tenant, Landlord, Landlord's general contractor, and Landlord's architect. From such inspection a written statement shall be prepared setting forth any defects as to design, workmanship or materials attributable to Landlord, Landlord's general contractor, Landlord's architect, or any material fabricator (the "Warranty Punchlist"). Landlord shall remedy or cause to be remedied all Warranty Punchlist items pursuant to the warranties assigned to Tenant in Section 5(j)(iii) and prior to the expiration of said warranties. Amounts paid by Landlord, Landlord's general contractor, and Landlord's architect in remediating Warranty Punchlist items shall not constitute a portion of Rent.

(g) In the event of labor disputes in connection with construction, alterations, repairs or replacements, curing of defects or restoration of the Demised Premises pursuant to provisions of this Lease, Landlord will use reasonable efforts to adjust and settle them to avoid unfavorable publicity and unnecessary delay, in a manner reasonably satisfactory to Tenant.

(h) During Landlord's construction period, prior to Tenant's occupancy, Tenant shall have the right to place signs on the Demised Premises announcing Tenant's forthcoming occupancy and intentions.

(i) Within sixty (60) days after the Commencement Date and the completion of construction of the CDC and other Leasehold Improvements, Landlord agrees to obtain from its architect, and to deliver to Tenant, a complete set of "as-built" plans for the CDC and specifications for the construction, incorporating all

(GRANLANT)                                    10

changes made during the course of construction. If the Landlord fails to deliver such "as-built" plans to Tenant within the sixty (60)-day period, Tenant shall itself obtain such plans and make demand of Landlord for the cost thereof.

(j)   Landlord shall, at its sole cost and expense:

(i)   for a period of one (1) year from the Commencement Date, guarantee all work performed by Landlord, its employees, agents, and contractors pursuant to this Section 5 against defective design, workmanship and materials.

(ii)  throughout the Term, provide Tenant with a habitable facility and indemnify, protect, defend and hold Tenant, its directors, officers, employees, agents, contractors, and subcontractors (collectively, "Tenant's Employees"), harmless from and against any and all claims, actions, losses, damages, costs, expenses (including reasonable attorneys' fees and expenses) and liabilities relating to any and all losses or damages (including, without limitation, injury to or death of person or persons and damage to property) suffered by any person or persons and arising out of or incidental to the work, services and activities of Landlord and Landlord's Employees (defined hereinafter) supplied pursuant to this Section by or at the direction of Landlord (except arising from the negligence or willful acts of Tenant or Tenant's Employees); and

(iii) assign or pass through to Tenant the benefit of all building and equipment warranties obtained by Landlord from Landlord's general contractor, subcontractor, suppliers, and others with respect to design, workmanship and materials employed in the

(GRANLANT)                              11

Geodis 000015

construction of the DDC and other Leasehold Improvements and the preparation of the Demised Premises for Tenant's intended use hereunder. Said warranties shall be effective for a minimum of one year from the Commencement Date or for such longer period as they by their terms provide.

(k) Tenant agrees and covenants to indemnify, protect, defend, and hold Landlord, its directors, officers, employees, agents, contractors and subcontractors (collectively, "Landlord's Employees") harmless from and against any and all claims, actions, losses, damages, costs, expenses (including reasonable attorneys' fees and expenses) and liabilities relating to any and all losses or damages (including, without limitation, injury to or death of person or persons and damage to property) suffered by any person or persons and arising out of or incidental to the work, services and activities of Tenant and Tenant's Employees in connection with construction of the Tenant Improvements or any of its other pre-opening activities except for any of the foregoing arising out of the negligence or willful misconduct of Landlord or Landlord's Employees.

6.    Landlord's Warranties.

Landlord warrants and represents that presently, and during the Term:

(a) Landlord has the full power and authority to execute and deliver this Lease and to perform its obligations under this Lease;

(b) prior to the Commencement Date Landlord will hold good and marketable fee title to the Demised Premises and to all improvements appertaining thereto, free and clear of all restrictions, covenants, easement, mortgages, tenancies and occupancies in the Demised Premises, and any other encumbrances

(GRANLANT)                         12

other than those encumbrances listed in Exhibit "C" ("Permitted Encumbrances"), except as agreed to by Tenant in writing.

(c)  the execution and delivery of this Lease shall not be precluded by or cause a breach of any other agreement, mortgage, contract or other instrument or document to which Landlord is a party;

(d)  the Demised Premises is and will be in good condition and repair, and in full compliance with all applicable laws, regulations, environmental standards, building and health codes, including without limitation the requirements of the federal statute known as the Americans with Disabilities Act, and with all requirements of insurance carriers of Landlord and Tenant, provided written notice of such insurance requirements is given to Landlord by Tenant.  Landlord shall obtain all necessary governmental consents, permits, approvals and zoning, including evidence of satisfactory zoning as of the Commencement Date for the use described in Section 2 above; provided, however, Landlord shall not be responsible for changes to the Demised Premises required by law as a result of Tenant's use or business, or for permits or licenses which Tenant may need in order to construct any Tenant Alterations, (as defined in Section 7), install its trade fixtures, machinery, equipment and other Personal property on the Demised Premises, and to conduct its operations.  In the event Tenant is prohibited from conducting its operations (as permitted and described in Section 2 hereof) in the Demised Premises throughout the Term by the effect of any zoning or other laws or ordinances, Tenant shall have the right to terminate this Lease effective upon the date on which such activity is first prohibited;

(e)  Tenant, upon paying the Rent and performing its obligations as herein provided, shall and may peaceably and quietly have, hold and enjoy the Demised Premises;

(GRANLANT)                          13

Geodis 000017

(f)    all  utilities,  including  gas,  electric,  water,
sanitary sewer and other utilities as required by Tenant  shall
have been constructed and/or provided for by Landlord as of the
Commencement Date;

(g)    the  exterior  portions  of  the  Demised  Premises,
including the paved area, and any parking and sidewalks, shall
be in first class condition and repair, and usable for the
purposes intended.

7.    Tenant's Alterations.

Tenant  shall  have  the  right,  at  any  time,  to  make
non-structural  alterations,  additions,  improvements  or
replacements to the Demised Premises, including, but not limited
to, lighting, electrical wiring, and the usual and customary
signage which Tenant employs in a majority of Tenant's other
facilities performing the same function as that described in
Section 2 hereof ("Tenant's Alterations"); provided that, prior
to making any of Tenant's Alterations whose cost exceeds
$100,000.00 or which affect structural elements, Tenant shall
request Landlord's written approval and in soliciting such
approval shall deliver plans for such Tenant Alterations and the
identity of the general contractor or list of bidders.
Landlord's approval will not be unreasonably withheld or
delayed.  Tenant shall be responsible for Landlord's reasonable
architectural and engineering expenses incurred by Landlord in
reviewing any proposed Tenant's Alteration.  All of Tenant's
Alterations which are so permanently attached or affixed to the
Demised Premises that their removal would cause substantial
damage to the Demised Premises, shall become the property of
Landlord upon the expiration of this Lease, unless Tenant elects
to remove them and repair the damage caused by their removal.
All trade fixtures, machinery, equipment and personal property
shall be the property of Tenant upon the expiration of this
Lease, and Tenant shall be entitled to remove them no later than

(GRANLANT)                     14

Geodis 000018

thirty (30) days following expiration.    Landlord grants a
license for the thirty (30)-day period to Tenant to remove the
personal property.    Landlord acknowledges, in consideration of
Tenant executing this Lease, this right shall be deemed coupled
with an interest.    If Tenant does not remove such items within
said thirty (30)-day period, Landlord may thereafter remove,
store, and dispose of such items at Tenant's expense.    Landlord,
at Tenant's cost, shall assist Tenant in securing building and
other   permits   or   authorizations   required   for   Tenant's
Alterations.    Following completion, Tenant shall deliver to
Landlord a copy of its "as built" plans or whatever other plans
Tenant may have for all alterations, additions or improvements,
or relocation of electrical facilities Tenant undertakes.

8.    Repairs and Maintenance

(a)    Except for damage caused by Landlord, its agents,
employees, invitees, licensee, subtenants or assigns, Tenant's
maintenance, repair and replacement obligations shall be limited
to the following:

(i)   keep the interior of the CDC in a clean
condition, and for this purpose enter into a
contract for janitorial service;

(ii)  keep the parking lots in a clean condition, free
of debris;

(iii) provide for snow and ice removal from the parking
lots;

(iv)  provide for maintenance of landscaped areas of
the Demised Premises;

(v)   maintain and repair dock doors, levelers, lights,
and personnel doors;

(GRANLANT)                        15

Geodis 000019

(vi)   provide for replacement of bulbs and ballasts for all lighting; and

(vii)   provide for routine maintenance of the heating, ventilation and air conditioning ("HVAC") system, and for this purpose enter into a preventive maintenance contract for services limited to minor adjustments, cleaning, oiling, greasing, filter replacement, fan belt tightening or replacement, and seasonal "start ups" and "shut downs." Tenant shall also be responsible for repairs or replacements of the HVAC system up to an annual aggregate cost of $14,000.00.

b.   Except for damage caused by Tenant, its agents, employees, invitees, licensees, subtenants, or assigns, Landlord shall:

(i)   as of the Commencement Date, have put the Demised Premises and its operating systems in good working order and condition and in full compliance with all applicable laws;

(ii)   during the the Term, at Landlord's sole cost and expense, be responsible for all maintenance, repair and replacement of the Demised Premised (including the CDC, the other Leasehold Improvements, and the Entire Tract) not expressly set forth as Tenant's obligation in Section 8(a) hereof.

(iii)   notwithstanding the waiver of subrogation contained in Section 11, after required notice from Tenant, make all repairs or replacements necessary due to or arising out of the negligence of Landlord, its agents, contractors, or

(GRANLANT)         16

Geodis 000020

employees, or by reason of the breach of this
Lease by landlord;

(iv)   indemnify, protect, defend and hold Tenant
harmless from all losses, damages, liabilities,
costs and expenses (including attorneys' fees and
court costs) which may occur, result from, or
arise out of the failure of Landlord to properly
make required repairs or perform maintenance.
Under this subsection, Landlord shall be
responsible for all damages where Tenant has
informed Landlord in writing of the need for
such repairs or maintenance, such notice to
specify the nature and extent of possible damage
in the event Landlord fails to perform the
repairs or maintenance, and where Landlord has
failed to perform such work beyond any applicable
cure period; and

(v)   cooperate with Tenant to enforce all warranties
and guarantees received in connection with the
Demised Premises. Notwithstanding such efforts,
Landlord shall not be relieved from any
obligations herein.

(c)   Tenant shall have the right at all times, at its sole
option, without prior notice to Landlord, to make emergency
repairs or replacements as Tenant deems necessary. Tenant shall
notify Landlord of such emergency as soon as reasonably possible
by telephone or otherwise. Upon demand and documentation of
costs by Tenant, Landlord shall pay Tenant the cost of repairs
and Landlord shall also pay an amount equal to the prime rate
then being charged by the Continental Illinois National Bank and
Trust Company of Chicago if such costs are not paid by Landlord
within forty-five (45) days after such demand. If Landlord
fails to pay to Tenant the repair cost and interest within said

(GRANLANT)                                17

Geodis 000021

forty-five (45)-day period, then Tenant may deduct it from Rent and other charges payable by Tenant.

(d)    Landlord shall have access to the Demised Premises at any time in the event of an emergency (but not if solely for Landlord's convenience in performing Landlord's obligations hereunder), and Landlord shall notify Tenant of such emergency as soon as reasonably possible by telephone or otherwise. In all other instances, Landlord shall, upon prior arrangement with Tenant and at times reasonably approved by Tenant's local management, have access to the Demised Premises for examining or repairing it.  In any event, Landlord shall not unreasonably interfere with the conduct of Tenant's business in performing Landlord's obligations under this Section.

(e)    If Landlord fails to promptly perform the obligations in Section 8(b) after being given written notice by Tenant, then Tenant, upon thirty (30) days' prior written notice to Landlord and any Landlord's lender of which Tenant has been notified in writing, shall have the right to make or cure them and to recover Tenant's cost with interest from Landlord at the annual rate equal to the prime rate then being charged by the Continental Illinois National Bank and Trust Company of Chicago. If the cost and interest are not paid within thirty (30) days of demand, Tenant shall have the right to deduct them from any installments of Rent and other charges payable by Tenant.

(f)    Landlord and Tenant will indemnify, protect, defend and hold the other harmless from all losses, damages, liabilities, cost and expenses (including attorneys' fees and court costs) excluding consequential damages, if any mechanics' or materialmen's liens or any other statutory or equitable lien is filed or any litigation is commenced for breach of contract or otherwise during the Term against a party for work, repairs, alterations, improvements, labor, services and/or materials

(GRANLANT)                    18

Geodis 000022

supplied to the Demised Premises by or at the direction of a party.

9.    Taxes.

(a)  Landlord shall pay when due all real estate taxes levied or assessed upon the Entire Tract and the Demised Premises. "Real Estate Taxes" include all forms of general or special real estate assessment, levy, or tax (other than inheritance, estate, franchise or income taxes or any other taxes imposed upon or measured by Landlord's income or profits), imposed by any authority having the direct or indirect power to tax, including any city, county, state or federal government, or their agencies or improvement districts, against any legal or equitable interest of the Landlord in the Demised Premises or in the CDC or any tax, charge or fee imposed in substitution, partially or totally, of any real property tax, or any additional tax the nature of which was previously included within the definition of a real property tax.  Tenant agrees during the term to reimburse Landlord for the Real Estate Taxes within thirty (30) days after presentation of receipts marked paid in full.  Landlord shall use reasonable efforts to obtain a separate tax assessment for the Entire Tract including the Demised Premises.

(b)  If Tenant deems the Real Estate Taxes excessive or illegal, Tenant may request Landlord to, and Landlord upon such request shall, contest the validity or the amount thereof in good faith.  Tenant shall have the right to request such a contest of the Real Estate Taxes provided, that if at any time payment of the whole or any part of said Real Estate Taxes should become necessary to prevent the foreclosure of a tax lien on the Demised Premises or any part thereof, or to prevent interference with Landlord's interest in the Demised Premises, then Landlord shall pay or cause to be paid and Tenant shall reimburse Landlord for the same, together with all penalties, in

(GRANLANT)                           19

Geodis 000023

sufficient time to prevent the foreclosure of a tax lien or to prevent interference with Landlord's interest in the Demised Premises.   If Landlord successfully contests the Real Estate Taxes, Tenant shall be entitled to any refund of overpayment of Real Estate Taxes and penalties or interest which may have been paid by Tenant.   In any case, Tenant shall pay all costs, expenses, attorneys' fees, any bond costs, penalties, interest and court costs.   In the event Landlord is successful in such contest, Tenant shall be reimbursed first from the remission or refund for its reasonable costs, expenses and attorneys' fees incurred before payment is made to any other party.

(c)   Tenant shall pay prior to delinquency all taxes assessed against and levied upon its trade fixtures, furnishings, equipment, and all other personal property at the Demised Premises or elsewhere.   When possible, the Tenant shall cause its fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the real property.   If any of Tenant's personal property is assessed within the Demised Premises as real property, Tenant shall pay the Landlord the taxes attributable to Tenant's personal property within twenty (20) days after receipt of a written statement setting forth those included taxes.

10.   **Insurance.**

(a)   Tenant shall pay for and maintain, during the Term, the following policies of insurance covering the Demised Premises, including the CDC, the Leasehold Improvements, and all other improvements, and all buildings and improvements thereon, which insurance shall be obtained from companies currently rated "A/VII" or better by Best's Insurance Reports and duly licensed and authorized to do business in Illinois:

(i)   **Workers' Compensation Insurance,** covering all costs, benefits and liabilities under State

(GRANLANT)                          20

Geodis 000024

Workers' Compensation and similar laws for Tenant's employees, and Employer's Liability Insurance, with limits of not less than $500,000 per occurrence.

(ii) Commercial General Liability Insurance, including, but not limited to, coverage for personal injuries with limits of not less than $5,000,000 combined single limit for death, bodily injury and property damage, per occurrence, and including contractual liability, naming Landlord and any Landlord's lender of which Tenant has been notified in writing as an additional insured.

(iii) Personal Property Insurance, including replacement cost fire and extended coverage insurance, with vandalism and malicious mischief, sprinkler leakage and earthquake sprinkler leakage endorsements, in an amount sufficient to cover not less than 100% of the full replacement cost, as the same may exist from time to time, covering all of Tenant's personal property, fixtures, equipment and Tenant Alterations.

(b) Landlord shall pay for and maintain, during the Term, the following policies of insurance:

(i) Commercial General Liability Insurance on the Entire Tract, including the Demised Premises, including but not limited to coverage for personal injuries with limits of not less than $5,000,000.00 combined single limit for death, bodily injury and property damage, per occurrence, and

(GRANLANT)                          21

including contractual liability, naming Tenant as an additional insured.

(ii)    "All-Risk" Property Insurance upon all building improvements and alterations on the Demised Premise, in the amount of 100% of full replacement cost, including flood and earthquake endorsements, naming Tenant and Landlord's mortgagee as additional insureds.

(c)    Tenant agrees during the Term to reimburse Landlord for insurance premiums for insurance required in Section 10(b)(ii) of this Lease within thirty (30) days after presentation of receipts marked paid in full. Tenant shall have the right to review bills for the premiums from Landlord's insurance carrier, and the right to review all documentation supporting the bills, including the methodology used to allocate the premium to the CDC and the Leasehold Improvements. Tenant's right of review shall not relieve Tenant from its obligation to reimburse Landlord for the actual cost of insurance obtained by Landlord pursuant to Section 10(b)(ii).

(d)    Each policy described in Sections 10(a) and 10(b) will expressly provide that it will not be subject to cancellation or material change without at least thirty (30) days' prior written notice to Tenant and Landlord. Each party will furnish the other, upon request, with satisfactory evidence of such insurance coverage. Tenant may meet its insurance obligations herein by means of a blanket insurance policy or any program of self-insurance Tenant may maintain. Landlord's insurance shall be obtained from companies qualified to do business in the State of Illinois and rated "A/VII" or better in the most current edition of Best's Insurance Reports.

(GRANLANT)                        22

Geodis 000026

## 11. Waiver of Subrogation

(a)  Landlord and Tenant hereby waive any and every claim which arises or may arise in its favor and against the other party during the Term hereof for any and all loss of or damage to any of its property located within or upon the Demised Premises, covered by the insurance policies maintained by Landlord or Tenant covering the Demised Premises, or any portion thereof, or any personal property located thereon.

(b)  This waiver will be in addition to, and not in limitation or derogation of, any other waiver or release contained in this Lease with respect to any loss of or damage to property of Landlord or Tenant.

(c)  Landlord and Tenant agree to furnish to each insurance company which has or will issue policies of insurance, written notice of the terms of such mutual waivers and to have the insurance policies properly endorsed, if necessary, to acknowledge such waivers.

*or self-insurance as permitted above re    WEL PSP*

## 12. Indemnity

(a)  Landlord agrees to indemnify, protect, defend and hold Tenant, its directors, officers, employees and agents harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities (except those caused by the willful or negligent acts or omissions of Tenant), arising out of willful or negligent acts or omissions of Landlord or Landlord's employees, agents, contractors or invitees resulting in actual or alleged injury to or death of any person or loss of or damage to property in or upon the Entire Tract, including the person and property of Tenant, its director, officers, employees, agents, invitees, licensees or others.

(GRANLANT)                          23

(b) Tenant agrees to indemnify, protect, defend and hold Landlord, its directors, officers, employees and agents harmless from and against all claims, actions, losses, damages costs, expenses and liabilities (except those caused solely by the willful or negligent acts or omissions of Landlord), arising out of willful or negligent acts or omissions of Tenant or Tenant's employees, agents, contractors or invitees resulting in actual or alleged injury to or death of any person or loss of or damage to property in or upon the Demised Premises, including the person and property of Landlord, its directors, officers, employees, agents, licensees or others.

### 13. Damage or Destruction

(a) If during the Term the Demised Premises are partially damaged or destroyed by fire or other casualty, and repair or restoration can be completed within twelve (12) months after the date of the occurrence of such damage or destruction as reasonably determined by Landlord:

> (i) Rent and other charges payable by Tenant shall abate in the same proportion as the area in the Demised Premises so damaged or destroyed and unusable by Tenant bears to the total number of square feet of floor area contained within the Demised Premises, such abatement to be effective from the date of the partial damage or destruction until the date the Demised Premises have been repaired and restored, as herein provided;

> (ii) this Lease shall not terminate and Landlord shall, at Landlord's sole cost, promptly and with due diligence repair and restore the Demised Premises (but not Tenant's Alterations) to

(GRANLANT)                         24

Geodis 000028

substantially the same condition as existed immediately prior to the occurrence of such damage or destruction; provided, however, that if the damage or destruction is covered by fire and extended coverage insurance, Landlord's obligation to restore and repair shall be to the extent of and conditioned upon the proceeds of such insurance being made available to Landlord for such purposes by any lender having a mortgage lien on the Demised Premises. Provided further that if such damage or destruction shall occur during the last year of the Term or any Extension Term of this Lease, Landlord or Tenant may elect to terminate the Lease upon sixty (60) days' prior written notice to the other;

(iii)   if Landlord within sixty (60) days of the date of damage or destruction reasonably determines that it will be unable to substantially complete the necessary repairs and restoration within twelve (12) months after the occurrence of such damage or destruction, Landlord will so advise Tenant in writing within thirty (30) days of such determination. Tenant then may elect to terminate this Lease by giving written notice of termination to Landlord, and upon such termination neither Landlord nor Tenant shall have any further rights, duties, obligations or liabilities hereunder, except that each party shall remain liable to the other for the performance of its duties and obligations arising prior to such termination, including indemnification and rights to insurance proceeds;

(iv)   if Landlord undertakes, but fails to substantially complete, the necessary repairs and

(GRANLANT)                          25

Geodis 000029

restoration within twelve (12) months after the occurrence of such damage or destruction, Tenant may thereafter elect to terminate this Lease by giving prior written notice of termination to Landlord, and upon such termination neither Landlord nor Tenant shall have any further rights, duties, obligations or liabilities hereunder, except that each party shall remain liable to the other for the performance of its duties and obligations arising prior to such termination, including indemnification.

(b)   If during the Term the Demised Premises are totally destroyed by fire or other casualty, or the Demised Premises are rendered unfit for Tenant's use by fire or casualty, or if the Demised Premises should be damaged by fire or other casualty to such an extent that repair and restoration thereof cannot be completed within twelve (12) months after the date of the occurrence of such damage or destruction, as reasonably determined by Landlord:

(i)   Rent and other charges payable by Tenant shall abate, from the date of the fire or casualty, until the Demised Premises have been restored as herein provided;

(ii)   Landlord shall promptly pay to Tenant any unearned Rent paid or Tenant shall promptly pay to Landlord any Rent then earned;

(iii) either Landlord or Tenant shall have the right, within thirty (30) days thereafter, upon prior written notice to the other, to terminate this Lease as of the date of the fire or casualty. Upon such termination, neither Landlord nor Tenant shall have any further rights, duties,

(GRANLANT)                          26

Geodis 000030

obligations or liabilities hereunder, except that each party shall remain liable to the other for the performance of its duties and obligations arising prior to such termination, including indemnification and rights to insurance proceeds;

(iv) if neither Landlord nor Tenant terminates this Lease, Landlord shall, at Landlord's sole cost, promptly and with due diligence, rebuild and restore the Demised Premises (but not Tenant's Alterations) to substantially the same condition existing just prior to the destruction or damage. If such damage or destruction shall occur during the last year of the Term or any Extension Term of this Lease, Landlord or Tenant may elect to terminate the Lease upon thirty (30) days' prior written notice to the other.

## 14. Eminent Domain.

(a)  If all or a substantial part of the Demised Premises are taken for any public or quasi-public use under any governmental law, ordinance or regulation, or by right of eminent domain or by purchase in lieu thereof, and such taking would prevent or materially interfere with the use of the Demised Premises permitted by Section 2 of this Lease, then either party may terminate this Lease effective as of the date on which the condemning authority takes physical possession of the portion of the Demised Premises taken, by giving to the other party to this Lease at sixty (60) days' prior written notice of such termination. Upon such termination, the Rent and any other charges payable by Tenant shall be abated during the unexpired portion of the Term or then existing Extension Term, and upon such termination neither Landlord nor Tenant shall have any further rights, duties, obligations or liabilities

(GRANLANT)                        27

Geodis 000031

hereunder, except that each party shall remain liable to the other for the performance of its duties and obligations arising prior to such termination, including indemnification.

(b)  If less than a substantial portion of the Demised Premises shall be taken for any public or quasi-public use under any governmental law, ordinance or regulation, or by right of eminent domain or by purchase in lieu thereof, Landlord shall, at Landlord's sole cost, promptly and with due diligence, repair and restore the Demised Premises to, as nearly as may be reasonably possible, the condition existing immediately prior to such taking; provided, however that Landlord's obligation to repair and restore shall be conditioned upon and limited to the extent that the proceeds of such condemnation or other taking are made available to Landlord for such purposes by any lender having a mortgage lien on the Demised Premises.  Rent and other charges payable by Tenant shall abate during the unexpired portion of the Term in the same proportion as the number of square feet in the Demised Premises so taken bears to the total number of square feet in the Demised Premises, such abatement to be effective as of the date on which the condemning authority takes physical possession of that portion of the Demised Premises taken.

(c)  If such taking described in Section 14(b) shall have occurred during the last year of the Term or any Extension Term of this Lease, Landlord or Tenant may elect to terminate the Lease upon thirty (30) days' prior written notice to the other.

(d)  If all or any part of the Demised Premises are taken for any public or quasi-public use under any governmental law, ordinance or regulation, or by right of eminent domain or by purchase in lieu thereof, the rights of Landlord and Tenant, respectively, in and to the proceeds thereof shall be as follows:

(GRANLANT)                          28

(i) Landlord shall be entitled to receive the entire condemnation award or proceeds in lieu thereof, except for any separate award to which Tenant may be entitled as provided in Section 14(d)(ii) of this Lease; and

(ii) Tenant may file such claims for a separate award as may be permitted by applicable law for the loss of its Leasehold interest, dislocation damages, moving expenses and other damages to Tenant caused by such taking.

(e) For purposes of this Section, a taking shall be deemed substantial of it has a material adverse effect on the conduct of Tenant's business.

15. Defaults.

(a) Tenant shall be in default of this Lease if Tenant should be adjudicated bankrupt or insolvent, or if, after receiving written notice from Landlord, Tenant fails (i) to make within twenty (20) days thereafter any Rent payment past due hereunder; or (ii) to start performance within thirty (30) days thereafter, or within such additional time as may be reasonably necessary, of any other covenant or agreement to be performed by Tenant herein, after receiving notice, but if Tenant timely commences to cure the default within the applicable cure period, and then diligently continues thereafter to complete such cure, then no default shall be deemed continuing. If Sears Logistics Services is the Tenant under this Lease, upon the occurrence of any event of default set forth above, Landlord shall have the option to pursue any one or both of the remedies set forth herein without any further notice or demand: (i) Landlord may reenter and take possession of the Demised Premises in accordance with all applicable statutes, and relet the Demised Premises on behalf of Tenant to a tenant with reasonable credit

(GRANLANT)                                    29

rating and reputation for a use permitted hereunder and on such
other terms (other than rent) not more onerous to Landlord than
contained in this Lease, and receive rent directly by reason of
the reletting, provided Tenant continues to be obligated to pay
Rent hereunder.  The rents received on such reletting shall be
applied first to the expense of such reletting and collection,
including necessary renovation and alterations of the Demised
Premises, and any real estate commission paid, and thereafter
toward payment of all sums due or to become due hereunder, and
if a sufficient sum is not thus realized to pay Tenant's
obligations herewith and such other charges, then Tenant shall
pay Landlord any deficiency upon written demand therefor; or
(ii) Landlord may enter upon the Demised Premises in the manner
prescribed by statute and do whatever Tenant is obligated to do
under the terms of this Lease; Tenant agrees to reimburse
Landlord on demand for any expenses which Landlord may incur
effecting compliance with Tenant's obligations under this Lease.
Landlord in pursuing the remedies herein provided shall have the
right to recover its reasonable attorneys' fees.

(b)    In the event that Landlord and Tenant have a good
faith dispute as to whether the terms of this Lease impose a
particular obligation upon Landlord or Tenant, when such dispute
is ultimately resolved, Landlord and Tenant's cure periods shall
commence on the date said dispute is so resolved.

(c)    If Landlord is in default in performing any of the
terms or provisions of this Lease and Landlord and any
Landlord's lender of which Tenant has been notified in writing
receives a notice of the default from Tenant and Landlord or
such lender fails to cure the default within ten (10) days after
receipt of the notice, or if the default is of a character as to
require more than ten (10) days to cure and Landlord or such
lender fails to use its best efforts in curing the default after
receipt of notice, then after said ten (10)-day notice Tenant
shall have the right but not the obligation to cure the default

(GRANLANT)                        30

Geodis 000034

on behalf of Landlord and at the expense of Landlord, and may deduct from Rent and other charges payable by Tenant all sums expended, plus interest, until Tenant is reimbursed in full. Such deduction shall not be deemed a breach of Tenant's covenant to pay Rent.

(d)    If any of the covenants, conditions of other provisions of this Lease are breached, Landlord or Tenant shall have the right to obtain an injunction or other appropriate judicial relief against the other.  No failure by Landlord or Tenant to insist upon the performance or the strict performance of any covenant, condition or other provisions of this Lease or to exercise any right or remedy consequent upon a breach or other default hereof shall constitute a waiver or assumption thereof by the other party, and no acceptance, use or occupancy of the Demised Premises shall constitute a waiver or assumption by Tenant of any duty of obligation of Landlord with respect thereto.  The grant or reservation herein or the exercise of any right or remedy, or of any supplementary or alternative rights or remedies, shall not affect or prejudice any other rights or remedies which Landlord or Tenant may have under this Lease or under law.

16.  <u>Subordination, Non-Disturbance and Attornment.</u>

If at the Commencement Date, or during the Term or any Extension Term, the Demised Premises shall be, or becomes subject to one or more mortgages:

(a)    Landlord, or its mortgagee, and Tenant, upon written request, shall execute and deliver to Landlord, Lender and Tenant, respectively, a Subordination, Non-Disturbance and Attornment Agreement in the form attached hereto as Exhibit "D";

(GRANLANT)                          31

Geodis 000035

(b)   Tenant shall, at all reasonable times, upon thirty (30) days' prior written request from Landlord, provide an Estoppel Certificate in the form attached hereto as Exhibit "E" for the exclusive use of any mortgagee or a prospective purchaser of the Demised Premises; and

(c)   No trade fixtures, machinery, equipment and personal property of Tenant shall be subject to a mortgage lien.

## 17.   Assignment and Sublease.

Tenant shall have the right to assign this Lease or sublet the Demised Premises to an unaffiliated entity for warehousing or distribution uses upon prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed. Tenant may, without Landlord's consent, assign its interest herein or sublet all or a portion of the Demised Premises to any affiliated entity or subsidiary of Tenant.  The foregoing shall not be construed to in any way prohibit or limit Tenant's right to engage a third party to conduct operations of Tenant in the Demised Premises.

## 18.   Notices.

Notices shall be in writing and shall be deemed properly served when deposited with the United Sates Postal Service, as registered or certified mail, return receipt requested, bearing adequate postage, or when sent by overnight express carrier (e.g., Federal Express, Purolator Courier, Express Mail) with a request that the addressee sign a receipt evidencing delivery, and addressed as follows:

              Tenant-          Sears Logistics Services
                               225 Windsor Drive
                               Itasca, IL   60143-1223
                               Attn:  Vice President

(GRANLANT)                          32

Geodis 000036

Network Management

Copy to:  General Counsel


Landlord-      Lanter Company
               1600 Collinsville Avenue
               Madison, IL 62060
               Attn:  Wayne Lanter
                      Chief Executive Officer

or to any other address furnished in writing by any of the
foregoing. However, any change of address furnished shall
comply with the notice requirements of this Section and shall
include a complete outline of all current notice of addresses to
be used for all parties.

19.  **Hazardous Materials.**

        (a)  Landlord hereby represents and warrants to Tenant, to
the best of Landlord's knowledge, that it is not aware that any
Hazardous Material has been used, disposed of or is located on
or in either the Demised Premises or the soil and ground water
on or under the Demised Premises.


        (b)  Landlord hereby covenants to Tenant as follows:

            (i)  Landlord shall be responsible for all costs
                 incurred in complying with any order, ruling or
                 other requirement of any court or governmental
                 body or agency having jurisdiction over the
                 Demised Premises requiring Landlord to comply
                 with any laws which related to Hazardous Material,
                 or which relate to Hazardous Material created,
                 handled, placed, stored, used, transported or

(GRANLANT)                    33

disposed of by Landlord, including, without limitation, the cost of any required or necessary repair, cleanup or detoxification and the preparation of any closure or other required plans, and Landlord shall diligently pursue to completion of all such work required in connection with the same (excluding however any such costs relating to Hazardous Material on the Demised Premises established to have been brought onto the Demised Premises by Tenant or its employees, agents, or contractors ("Tenant's Hazardous Material"), unless Tenant's Hazardous Material is released onto the Demised Premises by reason of the negligence or fault of Landlord, its employees, agents, or contractors); and

(ii) Landlord shall indemnify, defend and hold Tenant, its directors, officer, employees and agents and any successor Tenant's interest in the Demised Premises harmless from and against any and all claims, judgments, damages, penalties, fines costs, liabilities or losses (including, without limitation, sums paid in settlement of claims, attorneys' fees, consultant fees, and expert fees) and all foreseeable and unforeseeable consequential damages whether known or unknown, which are caused by or arise out of (a) Hazardous Material which was created, handled, placed, stored, used, transported or disposed of by Landlord or its employees, agents or contractors, or (b) Hazardous Material with respect to which any court, governmental body or agency having jurisdiction over the Demised Premises holds Landlord responsible or otherwise requires Landlord to undertake any repair, cleanup, detoxification or other remedial action

(GRANLANT)                                          34

Geodis 000038

(excluding Tenant's Hazardous Material, unless Tenant's Hazardous Material was released onto the Demised Premises by reason of the negligence or fault of Landlord, its employees agents or contractors), or (c) the breach of any representation, warranty, or covenant herein regarding Hazardous Material. In the event of any such breach of any representation, warranty or covenant contained herein or in the event of the presence of Hazardous Material (excluding Tenant's Hazardous Material unless Tenant's Hazardous Material was released onto the Demised Premises by reason of the negligence or fault of Landlord employees, agents or contractors), Tenant has the right (without waiving any of its other remedies) to either (a) terminate this Lease at its sole election by written notice to Landlord, such termination to be effective as of the date of Tenant's notice, but only after Landlord shall have had thirty (30) days written notice of such breach and shall have failed to cure such breach within said 30 days or shall have failed to commence to cure within said period, or (b) have its monthly rent and any other charges payable by Tenant hereunder abated in proportion to the extent of interference with Tenant's business until such time as the Demised Premises comply with all laws and Landlord has cured its breach of any representation, warranty or covenant contained herein in a manner satisfactory to Tenant. Tenant shall also have the right after written notice to Landlord to perform any necessary repair, cleanup, detoxification or other remedial action to the extent required by governmental authority with respect to Hazardous Material to which either

(GRANLANT)                    35

Geodis 000039

Landlord has no obligation, or has failed to perform its obligation, to repair, cleanup, detoxify or take remedial action, and to offset from Tenant's monetary obligations hereunder the amount so expended by Tenant, except for amounts expended toward Tenant's Hazardous Material.

(iii)    Landlord shall diligently pursue any responsible parties in connection with the performance of any cleanup, repair, detoxification or other remedial action with respect to Hazardous Material to which Landlord is not obligated to take any action.

(c)    Tenant hereby covenants to Landlord as follows:

(i)    Tenant shall be responsible for all costs incurred in complying with any order, ruling or other requirement of any court or governmental body having jurisdiction over the Demised Premises requiring Tenant to comply with any laws which relate to Tenant's Hazardous Material including, without limitation, the cost of any required or necessary repair, cleanup or detoxification and the preparation of any closure or other required plans, and Tenant shall diligently pursue to completion of all such work required by any court or governmental body in connection with the same, excluding however any such costs relating to Hazardous Material on the Demised Premises established to have been caused directly either by use of the Demised Premises by the Landlord or Landlord's acts or omissions relating to the Demised Premises, or use of the Demised Premises by any other third party not permitted or suffered by Tenant; and

(GRANLANT)                    36

Geodis 000040

(ii) Tenant shall indemnify, defend and hold Landlord, its directors, officers, employees and agents and any successor to Landlord's interest in the Demised Premises harmless from and against any and all claims, judgments, damages, penalties, fines, costs, liabilities or losses (including, without limitation, sums paid in settlement claims, attorneys' fees, consultant fees and expert fees) and all foreseeable and unforeseeable consequential damages, whether known or unknown, which are caused by or arise out of (a) Tenant's Hazardous Material, or (b) Hazardous Material with respect to which any court, governmental body or agency having jurisdiction over the Demised Premises holds Tenant responsible or otherwise requires Tenant to undertake any repair, cleanup, detoxification or other remedial action, excluding however Hazardous Material on the Demised Premises established to have been caused directly either by use of the Demised Premises by Landlord, or Landlord's or its employees, agents, or contractors acts or omissions relating to the Demised Premises, or use of the Demised Premises by any co-tenant or third party not permitted or suffered by Tenant, or (c) the breach of any representation, warranty or covenant contained herein.

(d) As used herein, the term "Hazardous Material" means petroleum products, asbestos, and any other hazardous or toxic substance, material or waste which is or becomes regulated by any local government's authority, the State of Illinois, or the United States government, whether originating from the Demised Premises or, as to Landlord, migrating, flowing, percolating,

(GRANLANT)                    37

Geodis 000041

diffusing or in any way moving onto or under the Demised Premises or the Entire Tract.

## 20.   Time of Essence.

Time is of the essence as to all the provisions of this Lease.

## 21.   Entire Agreement.

This Lease and the attached exhibits constitute the entire agreement between Landlord and Tenant with respect to the Demised Premises. Neither this Lease nor any of its provisions may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the parties.

## 22.   Choice of Law.

This Lease shall be construed in accordance with and governed by the laws of the state in which the Demised Premises are located.

## 23.   Binding Effect.

Subject to the restrictions on transfer, assignment and subletting herein, this Lease shall benefit and be binding upon Landlord and Tenant and their respective heirs, executors, legal representatives, and successors and assigns.

## 24.   No Partnership.

Nothing contained in this Lease shall be construed to make Landlord and Tenant partners or joint venturers or to render either party liable for the debts or the obligations of the other.

(GRANLANT)                           38

Geodis 000042

25.  Third Party Beneficiaries.

Except as herein specifically provided, no other person,
subtenants, customer, employee or invitee of Tenant or any other
third party shall be deemed to be a third-party beneficiary of
any of the provisions herein.

26.  Partial Invalidity.

If any section, paragraph, subparagraph, sentence, clause
or phrase of this Lease shall be declared or judged invalid or
unconstitutional, such adjudication shall not affect the other
sections, paragraphs, subparagraphs, sentences, clauses or
phrases.

27.  Recordings.

At the cost of the requesting party, either party may
require the other to execute all documents necessary to record a
short form of this lease, which short form of Lease shall be in
the form attached hereto as Exhibit "F".

28.  Assignments, Transfers, and Financing.

(a)  Subject to the provisions of Section 17, as to Tenant,
this Lease may be assigned by either party. Except as
specifically provided in subsections (b) and (c) below, the
assignment or transfer by any party of all or any part of its
interest in its premises, or assignment of provisions of this
Lease during the Term or Extension Term, will not release the
party from any of its obligations under this Lease.

(b)  If Landlord makes a bona fide sale, transfer or
assignment to an individual, corporation, partnership, limited
partnership or other legal entity (whether or not Landlord has
an interest in the grantee or transferee) of all of Landlord's

(GRANLANT)                        39

right, title and interest in the Demised Premises after it has completed all of Landlord's construction obligations, including Punchlist items, pursuant to Section 5, and if at the time of the sale, transfer or assignment, Landlord has complied with its obligations under this Lease, Landlord will be released and discharged from all further liability under this Lease arising on and after the date of the sale, transfer or assignment provided the purchaser or assignee will assume in writing all of Landlord's obligations under this Lease, and a copy of the instrument of assignment and assumption, in proper form for recordation, is delivered to Tenant.

(c)   Landlord may assign its interest in this Lease as collateral security to any mortgagee, trustee, or landlord (in a sale-leaseback) in connection with any present or future financing in connection with the Demised Premises. So long as Landlord retains a possessory or legal interest in all or any part of the Demised Premises pursuant to the security instrument, the Landlord will not be deemed to have assigned or transferred any of its powers or obligations under this Lease. If the legal or possessory interest of the Landlord terminates pursuant to the security instrument, this power and obligation will vest with the holder of the security instrument or anybody who acquires the interest of the holder by virtue of foreclosure of the instrument.

## 29.  Mechanics' Liens.

Should any mechanics' or materialmen's or other lien be filed against the Demised Premises or any part thereof by reason of construction, alterations, additions, improvements or installations performed by Tenant or because of Tenant's acts or omissions or because of a claim against Tenant, Tenant shall, within thirty (30) days following receipt of notice of the existence of such lien, cause the same to be cancelled and

(GRANLANT)                          40

discharged of record. If Tenant has not paid or desires to contest any claim of lien, Tenant agrees to indemnify, hold Landlord harmless from, and defend Landlord against any liability, loss, damage, costs, and all related expenses (including attorneys' fees and court costs) arising out of Tenant's non-payment or contest of such lien. Tenant shall also execute such indemnity agreements as would be necessary to induce Landlord's title company to insure over any such lien. Tenant shall not be obligated to update Landlord's tile insurance policy at the time of the contest. If a final judgment establishing the validity or existence of any contested lien is entered, Tenant shall pay and satisfy the same at once.

30. __Unavoidable Delays.__

A time within which Landlord or Tenant shall be required to perform any act under this Lease (except the obligation to pay any sum of money) shall be extended by a period of time equal to the number of days during which the performance of such act is prevented or delayed by unavoidable delays, strikes, lockouts, sit-downs, material or labor restrictions by any governmental authority, act or omission of the other party, unusual transportation delay, __force__ __majeure__, acts of God, fire, earthquake, floods, explosions, riots, acts of public enemy, wars, insurrections, actions of the elements, storms, inclement weather, or orders of government or similar causes not within the reasonable control of such party (excluding any financial inability) and which by exercise of due diligence such party is unable wholly or in part to prevent or overcome. Notwithstanding the foregoing, unless the party entitled to such extension shall give notice to the other interested party of its claim to such extension within fifteen (15) days after the event giving rise to such claim shall have occurred, there shall be excluded in computing the number of days by which the time for performance of the act in question shall be extended, the number

(GRANLANT)                    41

Geodis 000045

of days which shall have elapsed between the occurrence of such event and the actual giving of notice.

31.  Limitation of Warranty.

Landlord and Tenant expressly agree that there are and shall be no warranties which extend beyond those expressly set forth in this Lease including, without limitation, those created by statue, law, ordinance, or regulation which may or may not provide for treble damage type recovery. Notwithstanding the foregoing, this limitation shall in no way serve to limit or modify any obligation of Landlord or Tenant as expressly set forth under the terms of this Lease.

32.  Broker.

Landlord represents to Tenant and Tenant represents to Landlord that Landlord and Tenant, respectively, have not dealt with any real estate broker, sales person or finder in connection with this Lease except Cushman & Wakefield of St. Louis ("Broker"). Landlord agrees to pay when due the commission of Broker. Each party agrees to indemnify and hold the other and its directors, officers, employees and partners harmless from and against any and all claims, demands, liabilities, actions, damages, costs and expenses (including reasonable attorneys' fees) arising out of any breach of the parties' respective agreements with Broker, or arising out of any other broker relationship not here disclosed.

33.  Headings.

The section headings are for convenience and are not a part of this Lease.

(GRANLANT)                    42

Geodis 000046

IN WITNESS WHEREOF, the parties have caused this Lease to be executed as of the date first written above.

ATTEST OR WITNESS:                    LANDLORD:


BY:_____            LANTER COMPANY
NAME:_____
TITLE:_____            BY: _Wayne E Lauter_
                                      NAME: _____
                                      TITLE: _Chairman & C&O_


ATTEST:                               TENANT:


_____               TERMINAL FREIGHT HANDLING
Joe B. Maund                          COMPANY d/b/a SEARS LOGISTICS
Secretary                             SERVICES


                                      _____
                                      Robert P. Hosch
                                      Vice President
                                      Network Management


                                      ┌──────────────────┐
                                      │ R. E. DIRECTOR   │
                                      │                  │
                                      │   LEGAL          │
                                      │                  │
                                      └──────────────────┘


(GRANLANT)                    43

<u>List of Exhibits</u>:

EXHIBIT A  – LEGAL DESCRIPTION

EXHIBIT A1 – SITE PLAN (1)

EXHIBIT B  – LANDLORD'S CONSTRUCTION DOCUMENTS(5)

EXHIBIT C  – PERMITTED ENCUMBRANCES (6)

EXHIBIT D  – SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT
             AGREEMENT (16)

EXHIBIT E  – ESTOPPEL CERTIFICATE (16)

EXHIBIT F  – SHORT FORM OF LEASE (27)

(GRANLANT)                              44

Geodis 000048

## EXHIBIT "A"

### LEGAL DESCRIPTION

A tract of land located in U.S. Survey 580, Claims 544, 545 and 546, Township 3 North, Range 9 West of the Third Principal Meridian, within the Corporate Limits of the City of Granite City, Madison County, Illinois, more fully described as follows:

Beginning at an intersection of the west right-of-way line of Industrial Drive with the south line of Lot 5 in "Northgate Industrial Park" (Plat Cabinet 52, page 179); thence South 26 degrees 58 minutes West from said beginning point along the west right-of-way line of Industrial Drive a distance of 581.00 feet; thence North 63 degrees 02 minutes West a distance of 468.24 feet; thence North 26 degrees 58 minutes East a distance of 573.06 feet; thence North 78 degrees 30 minutes 22 seconds East a distance of 12.77 feet to the southwest corner of Lot 5 in said subdivision; thence South 63 degrees 02 minutes East along the south line of said Lot 5 a distance of 458.24 feet to the west right-of-way line of Industrial Drive and the Point of Beginning.

(GRANLANT)                                    45

Geodis 000049

## EXHIBIT A-1

## SITE PLAN

(GRANLANT)                                46

Geodis 000050

## EXHIBIT "B"

### Landlord's Construction Documents

Landlord's Contract Specifications, dated _____
Addendum to Landlord Contract Specifications, dated May 13, 1992
and revised July 30, 1992.

Building Drawings by Architectural & Interior Services, Inc.
issued for construction.

| | |
|---|---|
| -A- 0 | Cover Sheet dated August 5, 1992 |
| -A1-1 | Site Plan dated August 5, 1992 |
| -A1-2 | Site Grading Plan dated August 5, 1992 |
| -A2-1 | Floor Plan dated August 5, 1992 |
| -A2-2 | Office Floor Plan dated August 5, 1992 |
| -A2-3 | Roof Plan dated August 5, 1992 |
| -A3-1 | Building Elevations dated August 5, 1992 |
| -A5-1 | Room Finish and Door Schedules dated August 5, 1992 |
| -A8-1 | Wall Sections dated August 5, 1992 |

(GRANLANT)                              47

Geodis 000051

## EXHIBIT "C"

### Permitted Encumbrances

(1)  General real estate taxes

(2)  ANNEXATION AGREEMENT BY AND BETWEEN THE CITIZENS NATIONAL
     BANK OF DECATUR, AS TRUSTEE UNDER TRUST AGREEMENT DATED
     APRIL 27, 1971 AND KNOWN AS TRUST NO. 1950 AND THE CITY OF
     GRANITE CITY, RECORDED IN BOOK 3157 PAGES 187-205.
     (FOR FURTHER PARTICULARS, SEE RECORD)

(3)  TERMS AND PROVISIONS OF THE FOLLOWING:
     ANNEXATION ORDINANCE NO. 4098 OF THE CITY OF GRANITE CITY,
     ILLINOIS RECORDED JULY 2, 1986 IN BOOK 3374 PAGE 1155;
     PETITION FOR ANNEXATION RECORDED JULY 2, 1986 IN BOOK 3374
     PAGE 1172; ANNEXATION ORDINANCE NO. 4099 OF THE CITY OF
     GRANITE CITY, ILLINOIS RECORDED JULY 2, 1986 IN BOOK 3374
     PAGE 1184; AND AFFIDAVIT RECORDED JULY 2, 1986 IN BOOK 3374
     PAGE 1177.  ORDINANCE NO. 4100 OF THE CITY OF GRANITE CITY
     RECORDED JULY 23, 1986 IN BOOK 3377 ON PAGE 1293;
     ANNEXATION AGREEMENT RECORDED JULY 23, 1986 IN BOOK 3377 ON
     PAGE 1279; AND ANNEXATION ORDINANCE NO. 244 OF THE CITY OF
     GRANITE CITY PARK DISTRICT RECORDED AUGUST 15, 1986 IN BOOK
     3381 ON PAGE 543.

(GRANLANT)                         48

Geodis 000052

## EXHIBIT "D"

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

THIS AGREEMENT made and entered into as of the \_\_\_\_ day of _____, 19\_\_\_\_, by and between _____ ("Lender") and TERMINAL FREIGHT HANDLING COMPANY d/b/a SEARS LOGISTICS SERVICES, 225 Windsor Drive, Itasca, IL 60143-1223 60684 ("Tenant").

### WITNESSETH:

WHEREAS, by the Lease dated _____, 19\_\_\_\_, the Tenant has leased from _____ certain Premises containing approximately _____ square feet located at _____ (the "Leased Premises"), together with various easements and rights over the Entire Tract on which the Leased Premises is located.

WHEREAS, Lender is the holder of a mortgage (the "Mortgage") on the Leased Premises, the Mortgage having been given to the Lender by _____ as of _____, the Mortgage being recorded on _____, 19\_\_\_\_, in the Office of the Recorder of Deeds of _____ County, _____ in Book _____ at Page _____.

NOW, THEREFORE, in consideration of the mutual covenants hereinafter mentioned and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

(GRANLANT)                    49

Geodis 000053

1.    Lender hereby consents to the Lease.

2.    The Lease is and shall be subject and subordinate at all times to the lien of the Mortgage and to all renewals, replacement and extensions of the Mortgage to the full extent of the principal sum secured thereby and interest thereon.

3.    In the event that Lender shall commence an action to foreclose the Mortgage or to obtain a receiver of the Leased Premises, or shall foreclose the Mortgage by advertisement, entry and sale according to any procedure available under the laws of the state where the Entire Tract is located, Tenant shall not be joined as a party defendant in any such action or proceeding and Tenant shall not be disturbed in its possession of the Leased Premises, provided Tenant is not in default under the Lease.

4.    In the event that Lender shall acquire the Leased Premises upon foreclosure, or by deed in lieu of foreclosure, or by any other means:

(a)    Tenant shall be deemed to have made a full and complete attornment to Lender so as to establish direct privity between the Lender and Tenant;

(b)    All rights and obligations of Tenant under the Lease shall continue in full force and effect and be enforceable by and against Tenant respectively with the same force and effect as if the Lease had originally been made and entered into directly by and between Lender as the landlord thereunder, and Tenant;

(c)    Lender shall recognize and accept the rights of the Tenant in respect of obligations arising under the Lease thereafter falling under.

(GRANLANT)                          50

Geodis 000054

5.    Nothing herein contained shall impose any obligations upon Lender to perform any of the obligations of Landlord under the Lease, unless and until Lender shall become owner or mortgagee in possession of the Leased Premises.

6.    This Agreement shall be binding upon and inure to he benefit of any person or entity acquiring rights to the Leased Premises by virtue of the Mortgage and the successors, administrators and assigns of the parties hereto.

IN    WITNESS    WHEREOF,    this    Subordination, Non-Disturbance and Attornment Agreement has been signed and sealed on the day and year first above set forth.

ATTEST:                           "LENDER"


_____        By:_____


ATTEST:                           TERMINAL FREIGHT HANDLING
                                  COMPANY d/b/a SEARS LOGISTICS
                                  SERVICES

                                  By:_____
_____
      Secretary                        Vice President
                                  Network Management


(GRANLANT)                         51

Geodis 000055

EXHIBIT "E"

ESTOPPEL CERTIFICATE

DATE_____

_____

_____

_____

Re: _____

_____

_____

_____

Gentlemen:

The undersigned, Terminal Freight Handing Company d/b/a Sears Logistics Services, as the tenant under that certain lease dated _____ (the "Lease"), by and between _____, as Landlord, and Terminal Freight Handling Company d/b/a Sears Logistics Services, as Tenant, covering the Premises commonly known as _____ in _____ (the "Premises"), hereby certifies that as of the date hereof:

1.    The Lease is in full force and effect.

2.    The term of the Lease commenced on _____ and will continue until _____, subject to _____ rights as provided in the Lease.

3.    No rent has been paid more than one month in advance.

(GRANLANT)                          52

Geodis 000056

4.   Tenant has not received nor has Tenant given any notice of default pursuant to the terms of the Lease.

The foregoing statement shall act as a waiver by the undersigned of any claim by the undersigned to the extent such claim is based on facts contrary to those asserted in the foregoing statement and to the extent such claim is asserted against you as a bona fide encumbrancer for value without knowledge of facts to the contrary of those contained in such statement, and who has acted in reasonable reliance upon such statement.  However, such statement shall in no event subject the undersigned to any liability whatsoever notwithstanding the negligent or otherwise inadvertent failure of the undersigned to disclose correct and/or relevant information.

Very truly yours,

TERMINAL FREIGHT HANDLING
COMPANY d/b/a SEARS LOGISTICS
SERVICES

By:_____

(GRANLANT)                    53

Geodis 000057

## EXHIBIT "F"

### SHORT FROM OF LEASE

PREPARED BY AND WHEN                    FOR RECORDER'S USE ONLY
RECORDED MAIL TO:

_____

THIS SHORT FORM OF LEASE HAS BEEN PREPARED IN CONNECTION WITH A
LEASE WHICH HAS A DEFINITE TERM OF YEARS.

### SHORT FORM OF LEASE

THIS SHORT FORM OF LEASE is entered into as of the _____
day of _____, 19___, by and between

_____
_____

(hereinafter referred to as the "Landlord") and TERMINAL FREIGHT
HANDLING COMPANY, a Delaware corporation d/b/a SEARS LOGISTICS
SERVICES (hereinafter referred to as the "Tenant").

THE PARTIES ENTERED INTO this Short Form of Lease on the
basis of the following facts and understanding:

A.    Landlord is the owner of a certain parcel of real
estate, and the improvements located thereon, located at
_____ in the City of _____,
County of _____, State of _____
and legally described in Exhibit "1" attached hereto and
incorporated herein by reference (hereinafter referred to as the
"Land").

(GRANLANT)                    54

Geodis 000058

B.    Landlord and Tenant have entered into that certain Lease Agreement dated _____ (hereinafter referred to as the "Lease"), pertaining to the Land.

NOW THEREFORE, in consideration of the mutual covenants and promises of the parties and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.    This Short Form of Lease is executed for the purpose of being filed with the Recorder's Office and giving notice of the existence of the Lease and certain of the terms and conditions thereof.

2.    Landlord leases to Tenant the Land and all improvements to be located thereon for the initial term of _____ (___) years. Landlord grants to Tenant two separate options to extend the term of the Lease each for an additional period of _____ (___) years following the initial term of the Lease under the terms and conditions set forth in the Lease.

3.    This Short Form of Lease is not a complete summary of the Lease provisions. The provisions of this Short Form of Lease shall not be used in interpreting provisions of the Lease. The Lease and this Short Form of Lease shall constitute one and the same instrument.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Short Form of Lease in one or more counterparts as of the day and year first above written.

ATTEST OR WITNESS:                    LANDLORD:

_____            _____

(GRANLANT)                            55

Geodis 000059

By:_____

Name:_____

Title:_____

By:_____

Name:_____

Title:_____

ATTEST:

TENANT:

TERMINAL FREIGHT HANDLING

COMPANY d/b/a Sears Logistics

Services

By:_____

_____

Secretary

Vice President

Network Management

(Add Acknowledgments)

(GRANLANT)                              56

Geodis 000060

SUPPLEMENTAL AGREEMENT

THIS Supplemental Agreement ("Supplement") is made on _APRIL  14_ ,
1993 between LANTER COMPANY, a _DELAWARE CORPORATION_ _____
("Landlord") and  TERMINAL  FREIGHT  HANDLING  COMPANY  d/b/a  SEARS
LOGISTICS SERVICES, a Delaware corporation ("Tenant").

WHEREAS, Landlord  and  Tenant  entered  into  a  Lease  agreement
("Lease") on August 28, 1992 for property in the City of Granite City,
County  of  Madison  State  of  Illinois,  more  specifically  described  in
the Lease; and

WHEREAS, Section 3(a) of the Lease provides that the Landlord and
Tenant  shall  specify  the  Commencement  Date  of  the  Lease  by
Supplemental Agreement; and

WHEREAS, Section 4(a) of the Lease provides that Rent shall begin
to accrue and the Initial Rental Payment shall be due Landlord on the
Commencement Date;

THEREFORE, Landlord and Tenant agree to supplement the Lease as
follows:

1.    The Commencement Date of the Lease is January 10, 1993.

2.    The Initial Rental Payment Date shall be January 10, 1993.

3.    The Lease, except as herein supplemented, is in all other
respects fully ratified and confirmed.

4.    Except as otherwise defined herein, all capitalized terms
used in this Supplement shall have the meaning ascribed to such terms
in the Lease.

5.    Landlord represents and warrants that Landlord has full
right, power and authority to enter into this Supplement.

Geodis 000061

IN WITNESS WHEREOF, Landlord and Tenant have caused this Supplement to be executed:

WITNESS:

LANDLORD:
LANTER COMPANY

By: _Wayne E. Lanter_

Name: _WAYNE E. LANTER_

Title: _CEO_

WITNESS:

TENANT:

TERMINAL FREIGHT HANDLING COMPANY
d/b/a SEARS LOGISTICS SERVICES

By: _Jean A. Nawls_

By: _____

R. P. Hosch
Vice President
Network Management

peg\1april93\y:1ntragrm.doc

Geodis 000062

## FIRST AMENDMENT TO LEASE

THIS FIRST AMENDMENT TO LEASE (this **"Amendment"**) is made as of this _____ day of January, 2003, between **LANTER COMPANY**, a Delaware corporation (the "Landlord"), and **SEARS LOGISTICS SERVICES, INC.**, a Delaware corporation (the "Tenant").

### RECITALS:

A. Landlord and Tenant entered into a Lease dated as of August 28, 1992, as supplemented by Supplemental Agreement dated April 14, 1993 and as extended by Notice of Extension dated July 9, 1997 (collectively, the **"Lease"**) for the lease by Tenant of certain property located in the City of Granite, County of Madison, State of Illinois, which property is more specifically described in the Lease (the **"Demised Premises"**).

B. Landlord and Tenant have agreed to reduce the size of the Demised Premises.

C. The Term of the Lease will expire on January 31, 2003.

D. Landlord and Tenant desire to amend and extend the Lease as provided herein.

**NOW THEREFORE**, in consideration of the foregoing and the mutual covenants and agreements contained herein, the parties agree as follows:

1. Paragraph 1 of the Lease "Premises" is amended by adding the following:

   The Demised Premises will be reduced by 59,956 square feet as of February 1, 2003 (the **"Effective Date"**). After the Effective Date, the Demised Premises shall contain 43,044 square feet (100,000 – 56,956).

2. Paragraph 2 of the Lease "Use" is supplemented with the following:

   Other than in the Demised Premises there is no existing breakroom or restroom facility for Landlord to use. During the Extension Term, Landlord shall have access to and the right to use the breakroom or restroom facility as shown on attached **Exhibit "G"**. Entry by Landlord to breakroom or restroom facility shall only be during normal workdays at break and lunch periods. Break and lunch periods shall be scheduled by both Tenant and Landlord. Tenant or a representative of Tenant shall have the right to be present during Landlord's use of the breakroom. The breakroom shall be locked from Landlord's use at all times other than as specifically provided herein. During normal business hours other than break and lunch periods, Landlord shall have access to the restroom facility through the Main Entrance as shown on **Exhibit "G"**.

   Tenant shall allow Landlord limited use of office area as shown on **Exhibit "G"** for administrative duties.

S:\DPRICE05\Midwest Region\Amendment of Lease\77300 Granite City IL.doc

Geodis 000063

3.    Paragraph 3 of the Lease "Term" is amended by adding the following:

The Lease and the term thereof are hereby extended for a period of five (5) years from February 1, 2003 up to and including January 31, 2008 (the **"Extension Term"**) upon the same terms and conditions contained in the Lease, except as otherwise provided in this Amendment.

**IN WITNESS WHEREOF**, the parties have executed this Amendment to Lease as of the day and year first above written.

**ATTEST:**

By: x _Sharen C O'Leary_

**ATTEST:**

By: _[signature]_
~~Assistant~~ Secretary

**LANDLORD:**

**LANTER COMPANY**

By: _[signature]_
Title: _VP Finance_

**TENANT:**

**SEARS LOGISTICS SERVICES, INC.**

By: _[signature]_

**Clint A. Brown**
Treasurer

PROPERTY
MANAGER
LEGAL



Geodis 000065



## SECOND AMENDMENT TO LEASE

**THIS SECOND AMENDMENT TO LEASE** (this "Amendment") is made as of this _____ day of January, 2008, by and between **LANTER COMPANY,** a Delaware corporation ("Landlord"), and **SEARS LOGISTICS SERVICES, INC.** a Delaware corporation ("Tenant").

### RECITALS:

A.  Landlord and Tenant entered into a certain Lease dated August 28, 1992, supplemented by that certain Supplemental Agreement dated April 14, 1993, and amended by that certain First Amendment to Lease dated January 20, 2003, (collectively, the **"Lease"**) for the lease by Tenant of certain property located in the City of Granite, County of Madison, State of Illinois, which property is more specifically described in the Lease (the **"Demised Premises"**).

B.  The current term of the Lease will expire January 31, 2008.

C.  Landlord and Tenant desire to extend and amend the Lease as provided herein.

**NOW THEREFORE,** in consideration of the foregoing and the mutual covenants and agreements contained herein and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby mutually agreed as follows:

1.  **Term**

    The Lease and the term thereof are hereby extended for a period of five (5) years from February 1, 2008 up to and including January 31, 2013 (the **"Extended Term"**), under the same terms, covenants and conditions contained in the Lease except as modified hereby.

2.  **Rent**

    The Rent to be paid by Tenant to Landlord during the Extended Term for the Demised Premises shall be Twelve Thousand Six Hundred Ninety Seven and 98/100 Dollars ($12,697.98) per month and shall be payable in accordance with the terms of the Lease.

3.    **Option to Extend.**

Tenant is granted one (1) five (5) years option to extend the Term, exercisable upon one hundred twenty (120) days' written notice from Tenant to Landlord prior to the expiration of the Extended Term. If Tenant shall fail to give any such notice within such 120-day time limit, Tenant's right to exercise any option shall nevertheless continue until 30 days after Landlord shall have given Tenant written reminder of such expiration date and notice of termination if such option is not timely exercised.    Tenant may exercise such options at any time until the expiration of said 30-day period. It is the intention of the parties to avoid forfeiture of Tenant's rights to extend the Term of the Lease.

4.    **Miscellaneous**

(a) The Lease, except as herein amended, is in all other respects fully ratified and confirmed.

(b) Except as defined herein, all capitalized items used in this Agreement shall have the meanings ascribed to such terms in the Lease.

(c) Landlord represents and warrants that it has the full power and authority to enter into this Agreement and to amend the Lease and that Landlord does not need the consent of any lender holding a mortgage or a deed of trust on the Premises or any other party.

**IN WITNESS WHEREOF**, the parties have executed this Amendment to Lease as of the day and year first above written.

**LANDLORD:**

**LANTER COMPANY,**
a Delaware corporation

By: _____

Its: _____S V P_____

**TENANT:**

**SEARS LOGISTICS SERVICES, INC.**
a Delaware corporation

By: _____

Its: _____James B. Terrell_____
        Vice President Real Estate

REAL ESTATE
LEGAL



### THIRD AMENDMENT TO LEASE
(MDO#8730-Granite City, IL)

This Third Amendment to Lease ("**Amendment**") is made and entered into as of this 31st day of October, 2013, between OHL ACQUISITION CORPORATION d/b/a Ozburn-Hessey Logistics LLC, having its principal office at 7101 Executive Center Drive, Suite 333, Brentwood, TN 37027 ("**Landlord**"), and SEARS LOGISTICS SERVICES, INC., having its principal office at 3333 Beverly Road, Hoffman Estates, Illinois 60179 ("**Tenant**").

### RECITALS:

A.      WHEREAS, on or about August 28, 1992, Lanter Company and Tenant entered into a Lease which Lease was amended by a First Amendment to Lease dated January 20, 2003 and Second Amendment to Lease dated as of January 31, 2008 (the aforesaid lease as so amended is hereinafter referred to collectively as the "**Lease**") pursuant to which Tenant leases certain industrial property located at 117 North Industrial Drive, Granite City, IL ("**Premises**");

B.      WHEREAS, Landlord succeeded to the interests of Lanter Company; and

C.      WHEREAS, the parties desire to modify the provisions of the Lease regarding the provisions of certain services to the Premises.

### AGREEMENT:

NOW, THEREFORE, based upon the above recitals, which are hereby incorporated by reference, and for other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  **Provision of Services by Landlord**. Effective as of February 1, 2013 Landlord will provide, or cause to be provided, the following services to the Entire Tract and the CDC of which the Premises is a part: (i) snow and ice removal, (ii) landscaping services, (iii) common area repairs and (iv) management of the foregoing services. Each spring, Landlord will provide Tenant with copies of the landscaping and snow-removal contracts for the coming year and Tenant shall pay to Landlord, in addition to Rent, monthly installments equal to 1/12th of the amount of such landscaping and snow removal costs (the "**New CAM Charges**") attributable to the Premises on a pro-rata basis (i.e. 9.557% based on 43,044sf/ 450,410sf). In no event shall landlord pass through to Tenant the costs of security, repairs or management. For the service year commencing in February, 2013 Tenant's monthly portion of the New CAM Charges is $430.44. Notwithstanding anything herein to the contrary, Tenant may elect at any time to resume providing its own snow removal and landscaping services by delivering written notice of such election to Landlord not less than 30 days prior to such resumption of self-service and in the event of such election by Tenant then, from

1

Geodis 000069

and after such 30-day notice, Tenant shall have no further obligation to reimburse Landlord for the New CAM Charges.

2. **Miscellaneous.**

    a. Continuance of Lease. The provisions in the Lease, as amended hereby, shall be deemed to be continuing and in full force and effect and this Amendment is not intended to be a new contract between the parties.

    b. Successors and Assigns. This Amendment shall be binding upon, and shall inure to the benefit of, the successors and assigns of the parties hereto.

    c. Entire Agreement. This Amendment sets forth the entire agreement between the parties with respect to the matters set forth herein. There have been no additional oral or written representations or agreements with respect to the matters set forth herein. In case of any express inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

    d. Time is of the Essence. Time is of the essence for this Amendment and the Lease and each provision hereof.

    e. No Presumption Against Drafter. This Amendment shall be construed without regard to any presumption or any other rule requiring construction against the party drafting a document. The parties acknowledge that this Amendment is the result of negotiations between the parties, and in construing any ambiguity hereunder no presumption shall be made in favor of either party.

    f. Landlord's Authority. Landlord represents and warrants that Landlord has the full right, power and authority to enter into this Amendment and does not need the consent of any party, including the holder of any mortgage on the Premises.

    g. Severability. If any provision of this Amendment or the application thereof to any person or circumstances is or shall be deemed illegal, invalid, or unenforceable, the remaining provisions hereof shall remain in full force and effect and this Amendment shall be interpreted as if such illegal, invalid, or unenforceable provision did not exist herein.

    h.    Counterpart Signatures. This Amendment may be executed in any number of counterpart originals, each of which, when taken together, shall be deemed to be one and the same instrument. Executed copies of this Amendment may be delivered between the parties via facsimile or electronic mail and such shall be deemed effective and binding upon the parties the same as if such document was an original. This Amendment will not be binding upon any party until this document has been executed by all parties thereto.

2

Geodis 000070

IN WITNESS WHEREOF, the parties executed this Third Amendment to Lease as of the date first above written.

LANDLORD:

OHL ACQUISITION CORPORATION
d/b/a/ Ozburn-Hessey Logistics LLC

By: _____

Name: Frank Eichler

Title: Chief Administrative officer and General Counsel

TENANT:

SEARS LOGISTICS SERVICES, INC.,
a Delaware corporation

By: _____

Name: James B. Terrell

Title: Vice President Real Estate

REAL ESTATE
LEGAL

Geodis 000071

## FOURTH AMENDMENT TO LEASE
(MDO#8730-Granite City, IL)

This Fourth Amendment to Lease (this "**Amendment**") is made and entered into effective as of the 31st day of January, 2018 (the "**Effective Date**"), by and between Geodis Logistics LLC, a Tennessee limited liability company, f/k/a Ozburn-Hessey Logistics, LLC ("**Landlord**"), having its principal office at 7101 Executive Center Drive, Suite 333, Brentwood, TN  37027, and Innovel Solutions, Inc., a Delaware corporation ("**Tenant**"), f/k/a Sears Logistics Services, Inc., having its principal office at 3333 Beverly Road, Hoffman Estates, Illinois  60179.

### RECITALS:

WHEREAS, on or about August 28, 1992, Lanter Company ("**Original Landlord**" and Tenant (f/k/a Terminal Freight Handling Company) entered into a Lease, which Lease was amended by a Supplemental Agreement dated April 14, 1993, a First Amendment to Lease dated January 20, 2003, a Second Amendment to Lease dated as of January 31, 2008, an Extension Notice dated July 12, 2012 and a Third Amendment to Lease dated October 31, 2013 (the aforesaid lease as so amended is hereinafter referred to collectively as the "**Lease**"), pursuant to which Tenant leases certain space, consisting of approximately 43,044 square feet (the "**Premises**"), within the industrial building located at 117 North Industrial Drive, Granite City, IL (the "**Property**");

WHEREAS, Original Landlord was sold to Landlord and Landlord became the landlord under the Lease. Thereafter Landlord sold the Property to Prime Landlord or its predecessor and Landlord entered into the Prime Lease with Prime Landlord;

WHEREAS, parties now desire to extend the term of the Lease and otherwise modify the Lease as more particularly set forth herein.

### AGREEMENTS:

NOW, THEREFORE, for valuable consideration, whose receipt and sufficiency are acknowledged, Landlord and Tenant agree as follows:

1.      **Recitals; Defined Terms.** The foregoing Recitals are incorporated by reference as if fully set forth herein.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Lease.

2.      **Prime Lease.**  Tenant acknowledges that Landlord leases the Property from Mid-South 117-119 Industrial (IL), LLC, a Delaware limited liability company ("**Prime Landlord**"), successor-in-interest to Exeter 117-119 Industrial, LLC, a Delaware limited liability company, pursuant to that certain Lease Agreement dated March 27, 2013, as amended by that certain First Amendment to Lease Agreement dated effective as of January 31, 2018 (as amended, the "**Prime Lease**"), and all terms of the Lease are subject and subordinate to the terms of the Prime Lease and the matters to which the Prime Lease is subject and subordinate.  Landlord represents and warrants to Tenant that (i) Landlord has the right, title and authority to enter into this Amendment; (ii) Landlord has acquired any and all consents required by the Prime Landlord to this Amendment and the Lease, subject only to (A) Landlord's delivery of a copy of the Lease (and amendments) to Prime Landlord and (B) Tenant's delivery of a certificate of insurance to Prime Landlord evidencing Tenant's compliance with the insurance requirements of Landlord under the Prime Lease; (iii) to the Landlord's knowledge, the Property is owned by the Prime Landlord; (iv) to the Landlord's knowledge, there is no default or event which with notice or the passage

{00053271.4}

Geodis 000072

of time or both would be a default under the Prime Lease by Landlord; and (v) the Prime Lease expires on or after the last day of the Extended Term.

3.    **Extension of Term**.  The Lease and the term thereof are hereby extended for a period of three (3) years from February 1, 2018 through January 31, 2021 (the "**Extended Term**"), under the same terms, covenants and conditions contained in the Lease except as modified hereby.

4.    **Rent**.  The Rent payable during the Extended Term shall be as follows:

| Time Period | Rate/SF/Yr | Monthly Rent | Annual Rent |
|---|---|---|---|
| 2/1/18 – 1/31/20 | $7.80 | $27,978.60 | $335,743.20 |
| 2/1/20 – 1/31/21 | $7.88 | $28,279.91 | $339,358.89 |

5.    **No CAM Charge, Tax/Insurance Reimbursement**.  Effective as of February 1, 2018, the Lease is hereby amended to provide that Landlord will provide, or cause to be provided, the following services to the Property, including without limitation the Premises, at Landlord's sole cost:  (i) snow and ice removal, (ii) landscaping services, (iii) common area repairs and (iv) management of the foregoing services.  Effective as of February 1, 2018, Tenant have no further obligation to reimburse Landlord for (a) New CAM Charges, as defined in the Third Amendment to Lease, (b) Real Estate Taxes, as provided in Section 9(a) of the Lease, or (c) insurance premiums, as provided in Section 10(c) of the Lease.

6.    **Utilities; Provision of Services**.

(a)    Tenant shall pay directly to the applicable utility provider the cost of any utilities that are separately metered to the Premises, or to the extent any utilities are not separately metered to the Premises, Tenant shall reimburse Landlord for Tenant's pro rata share of utilities (as reasonably determined by Landlord) within thirty (30) days following receipt of written invoice.

(b)    Tenant agrees that each the obligations or responsibility of Landlord to provide or perform services under the Lease may be provided or performed by Prime Landlord and not by Landlord; provided, however, that if Prime Landlord is not supplying services to the Premises as required under the Prime Lease, Landlord will promptly request Prime Landlord to perform such services.  If Prime Landlord shall default in any of its obligations to Landlord with respect to the Premises, Landlord shall use commercially reasonable efforts to enforce Landlord's rights against Prime Landlord with respect to the Premises.

7.    **TI Work**.  Tenant currently occupies the Premises, and Tenant accepts the Premises in their existing, AS-IS condition and acknowledges that the Premises are in suitable condition for Tenant's use.  Notwithstanding the foregoing, Landlord agrees that Tenant shall be entitled to perform certain tenant improvement work in the Premises, as set forth on Exhibit A attached hereto (the "**TI Work**").  Prior to commencing construction of the TI Work, Tenant shall obtain Landlord's approval of Tenant's contractor (which shall not be unreasonably withheld).  Tenant or its contractor shall complete the TI Work in a good, first-class and workmanlike manner and in accordance with the specifications attached as Exhibit A (the "**Specs**"), all applicable governmental regulations and the terms and conditions of the Prime Lease.  Tenant shall pay for the TI Work, but Landlord will reimburse Tenant for the cost of the TI Work up to Fifty Thousand Dollars ($50,000.00) (the "**Allowance**"), within thirty (30) days after receipt

{00053271 4}                                   2

Geodis 000073

of Tenant's written request, together with (a) a certificate from Tenant's architect or contractor confirming that the TI work has been substantially completed in accordance with the Specs, (b) invoices, receipts and other evidence reasonably required by Landlord to evidence the cost of the TI Work, and (c) final, unconditional lien waivers from Tenant's contractor, all subcontractors and all laborers or materials suppliers having performed work in connection with the TI Work.   Tenant shall pay Landlord a construction management fee of one percent (1%) of the cost of the TI Work, which fee shall be deducted from the Allowance.  Notwithstanding anything else herein to the contrary, Tenant shall have the right to remove or delete any of the items set forth on Exhibit A attached hereto, but no modifications or additions to the scope of work may be made without Landlord's prior written approval.

8.     **Holdover.**  Section 3(c) of the Lease is hereby deleted in its entirety and the following is inserted in place thereof:

> "Tenant shall have no right to remain in possession of the Premises after the expiration or earlier termination of the Lease, and any such continued occupancy shall be deemed to constitute holding over without Landlord's consent.  If Tenant remains in possession of the Premises or any part thereof after the expiration or any earlier termination of the Lease, such occupancy shall constitute a default under the Lease and shall be deemed a tenancy at sufferance at a rental equal to the greater of (a) 150% of the Rent in effect for the prior month, or (b) the full amount that Landlord is required to pay Prime Landlord for such period of holdover possession, and Tenant shall defend and indemnify Landlord from all loss, liabilities, damages and costs incurred by Landlord as a result of Tenant's failure to surrender possession of the Premises to Landlord when and as required under this Lease.  This paragraph shall survive the expiration or termination of the Lease."

9.     **No Renewal Options.**  Landlord and Tenant acknowledge and agree there are no further renewal options or extension rights available to Tenant under the Lease.  All references in the Lease to renewal options are hereby null and void.

10.     **Notices to Landlord.**  The Lease is hereby amended to provide that notices to Landlord shall be addressed as follows:

> If to Landlord:     Geodis Logistics LLC
> 7101 Executive Center Drive, Suite 333
> Brentwood, TN 37027
> Attn: CFO
>
> with a copy to:     ProVenture, LLC
> 7101 Executive Center Drive, Suite 200
> Brentwood, TN 37027
> Attn: James F. Atkinson

11.     **Ratification.**  Tenant hereby ratifies and confirms its obligations under the Lease, and represents and warrants to Landlord that it has no defenses thereto.  Additionally, Tenant further confirms and ratifies that, as of the date hereof, the Lease is in full force and effect, and to Tenant's actual knowledge without investigation or inquiry, Tenant has no claims, counterclaims, set-offs or defenses against Landlord arising out of the Lease or in any way relating thereto or arising out of any other transaction between Landlord and Tenant.

{00053271 4}     3

Geodis 000074

12.    **Brokerage**. Tenant warrants to Landlord that it has not dealt with any broker or agent in connection with the negotiation or execution of this Amendment. Tenant shall indemnify Landlord against all costs, expenses, attorneys' fees, and other liability for commissions or other compensation claimed by any other broker or agent claiming the same by, through or under Tenant.

13.    **Binding Effect**. Except as modified hereby, the Lease shall remain in full effect and this Amendment shall be binding upon Landlord and Tenant and their respective successors and assigns. If any inconsistency exists or arises between the terms of this Amendment and the terms of the Lease, the terms of this Amendment shall prevail.

14.    **Counterparts**. This Amendment may be executed in multiple counterparts, each of which shall be deemed to be an original, and all of such counterparts shall constitute one document. A fully executed facsimile or .pdf copy of this Amendment shall be effective as an original.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

Geodis 000075

IN WITNESS WHEREOF, the parties have executed this Amendment to be effective as of the Effective Date.

LANDLORD:

GEODIS LOGISTICS LLC

By: _____
Name: _Mark Vane_____
Title: _General Counsel_____

TENANT:

INNOVEL SOLUTIONS, INC.

By: _____
Name: _Robert D. Taylor_____
Title: _VICE PRESIDENT_____

{00053271 4}

EXHIBIT A

TI WORK

1)    In main office (32 by 64 ft): replace tile flooring with carpet as set forth on Exhibit A-1 attached hereto.

2)    In five parameter offices (16 by 11 ft): replace flooring with carpet as set forth on Exhibit A-1 attached hereto.

3)    In locker room: tile the locker room floor with tile as set forth on Exhibit A-1 attached hereto.

4)    Female office bathroom (1 handicap toilet, 2 additional toilets, 2 sinks). Per the specifications attached hereto as Exhibit A-2, remodel bathroom replacing every sink, urinal, toilet, partition or stall wall assembly and all hardware related to each of the listed. Replace or install wall tile and flooring tile and repair or replace as needed all walls and ceiling to include painting and required coverings.

5)    Male office bathroom (1 toilet, 1 sink). Per the specifications attached hereto as Exhibit A-1, remodel bathroom replacing every sink, urinal, toilet, partition or stall wall assembly and all hardware related to each of the listed. Replace or install wall tile and flooring tile and repair or replace as needed all walls and ceiling to include painting and required coverings.

6)    Repaint all walls in the office area to include the exterior of the office walls that are exposed to the warehouse area.

7)    Male warehouse bathroom (2 toilets, 2 urinals, 2 sinks). Per the specifications attached hereto as Exhibit A-1, remodel bathroom replacing every sink, urinal, toilet, partition or stall wall assembly and all hardware related to each of the listed. Replace or install wall tile and flooring tile and repair or replace as needed all walls and ceiling to include painting and required coverings.

8)    Dock seals, Repair and replace dock door seals as needed to the level of no damaged or torn / worn through the outer covering exposing the internal materials of the dock seals.

7)    Dock doors, Repair or replace any or all parts of each door to have a working weather tight door.

8)    Dock levelers, p.m. and repairs Preventative maintenance to adjust, repair / replace and lubricate each dock leveler to the manufacturers specification for normal operation and safety of the dock leveler.

[00053221 4]

Geodis 000077

EXHIBIT A-1

TI Work Specs

A.  **DOORS:**

    A.1  OFFICE DOORS ARE TO BE 3'-0" X 7'-0" X 1-3/4", SOLID CORE, BIRCH, B-3 STAIN PREFINISHED WITH HOLLOW METAL STEEL FRAMES WITH 2" HEADER. ALL DOORS SHALL BE EQUIPPED WITH STANDARD LOCKING HARDWARE.

    A.2  VISION LITES ARE REQUIRED AT EVERY DOOR AND GLAZING SHALL BE OF CLEAR TEMPERED GLASS

    A.3  DOOR OPENINGS BETWEEN AIR-CONDITIONED SPACES AND NON AIR CONDITIONED SPACES SHALL INCLUDE AUTOMATIC DOOR CLOSERS.

    A.4  ALL INTERIOR RESTROOM AND NON OFFICE DOORS SHALL HAVE FULL WIDTH X 12" H KICK PLATES INSTALLED ON THE PUSH SIDE OF THE DOOR.

    A.5  REST ROOM DOORS SHALL HAVE LATCH SETS.

    A.6  ALL DOOR HARDWARE SHALL BE HEAVY-DUTY COMMERCIAL GRADE.

B.  **FLOORING:**

    B.1  OFFICE AREAS, AND SUPPLY ROOM SHALL HAVE CARPET TILES BY MANNINGTON COMMERCIAL, FROM THEIR "XPRESS" SHIP PROGRAM, ALL STAR COLLECTION, HALFTIME PATTERN, COBB COLOR. INFORMATION CAN BE FOUND AT: https://www.manningtoncommercial.com/products/carpet/modular/halftime/?color=89423096-f625-4ed1-87b3-e9a907c25e9d

    B.2  BREAKROOM, COMPUTER ROOM, AND CLOSET SHALL HAVE VINYL COMPOSITE TILE – ARMSTRONG PREMIUM EXCELON, CROWN TEXTURE, EC908 PEWTER, 12" x 12".

C.  **WALLS:**

    C.1  ONE (1) COAT OF LATEX SEMI-GLOSS ENAMEL IN A STANDARD LIGHT COLOR, FOR ALL OFFICES, BREAK ROOM, COMPUTER ROOM, SUPPLY ROOM, JANITOR'S CLOSET, AND STORAGE ROOM.

    C.2  USE CEMENT BOARD ON WET WALL OF THE JANITOR'S CLOSET, AND COVER WITH WAISCOT.

    C.3  INSTALL A 4'X4' SHEET OF PLYWOOD AT THE BACK WALL OF THE COMPUTER ROOM, 36" AFF.

D.  **CEILING:**

    D.1  ACOUSTIC CEILING SHALL CONSIST OF PRE-PAINTED WHITE METAL T-BAR GRID WITH 2'x2' CEILING TILES BY ARMSTRONG.

{00055271.4}

Geodis 000078

**E.  RESTROOMS:**

E.1  ALL RESTROOM REMODELS REQUIRING MOVING WALLS, ADDING OR SUBTRACTING FIXTURES, MUST HAVE BUILDING PERMITS. IF PERMIT IS REQUIRED THEN RESTROOM WILL BE CONVERTED TO MEET ADA STANDARDS FOLLOWING THE 2006 INTERNATIONAL BUILDING CODE (ADAAG), ANSI A117 2003.

E.2  RESTROOMS MUST HAVE HARD DRY WALL CEILINGS (NO SUSPENDED TILES), WITH RECESSED LIGHT FIXTURES

E.3  INSTALL WALL-HUNG FIXTURES WITH AUTOMATIC FLUSH VALVES (DIRECT WIRED OR BATTERY OPERATED).

E.4  SINKS SHALL HAVE AUTOMATIC FAUCETS (DIRECT WIRED OR BATTERY OPERATED).

E.5  INSTALL MATTE FINISH, 2" X 2", 3" X 3" OR 12" X 12" CERAMIC TILES ON FLOORS. INSTALL POLISHED 4" X 4" TILES ON ALL WALLS TO 5' AFF. ACCENT BAND IS PERMISSIBLE; COLOR TO MATCH EXISTING COLOR SCHEME. USE DARK GROUT ON BOTH WALL AND FLOORS. FLOOR MUST BE SEALED AFTER INSTALLATION. USE SEARS HOLDINGS' NATIONAL VENDOR: MID-AMERICA TILE. CONTACT CAROL KOTEL (224) 659-4107.

E.6  USE CEMENT BOARD ON ALL INTERIOR WALLS.

E.7  PROVIDE DRAINS PER APPLICABLE CODES IN EACH RESTROOM.

E.8  PROVIDE ADEQUATE VENTILATION IN ACCORDANCE WITH LOCAL CODES

E.9  INSTALL STAINLESS STEEL TOILET PARTITIONS. SPECIFY #304 STAINLESS STEEL, DIAMOND FINISH OR SIMILAR.



[00053271.4]

Geodis 000079

# Electronic Proof of Claim

Final Audit Report                                                      2019-03-25

| | |
|---|---|
| Created: | 2019-03-25 |
| By: | Sears Claims (searsclaims@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAUSlBBxQyJmEQs6iEqEMSy7UTu1gRMyFF |

## "Electronic Proof of Claim" History

Widget created by Sears Claims (searsclaims@primeclerk.com)
2019-03-25 - 7:07:44 PM GMT

Ben Bodzy (ben.bodzy@geodis.com) uploaded the following supporting documents:
Attachment
2019-03-25 - 7:17:59 PM GMT

Widget filled in by Ben Bodzy (ben.bodzy@geodis.com)
2019-03-25 - 7:17:59 PM GMT- IP address: 12.189.238.29

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 6.1; Win64; x64)
AppleWebKit/537.36 (KHTML, like Gecko) Chrome/73.0.3683.86 Safari/537.36)
2019-03-25 - 7:18:02 PM GMT- IP address: 12.189.238.29

Signed document emailed to Ben Bodzy (ben.bodzy@geodis.com) and Sears Claims
(searsclaims@primeclerk.com)
2019-03-25 - 7:18:02 PM GMT