David L. Pollack, Esquire
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864-8325
Pollack@ballardspahr.com

Dustin P. Branch, Esquire
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354
Fax: (424) 204-4350
Email: branchd@ballardspahr.com

Obj. Deadline: May 3, 2019 at 4:00 p.m. ET
Hearing Date:  TBD

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4465
Email: heilmanl@ballardspahr.com

*Attorneys for 7200 Arlington Associates LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                            :    Chapter 11
                                                 :
SEARS HOLDINGS CORPORATION, *et al.*,            :    Case No. 18-23538 (RDD)
                                                 :
                                                 :    (Jointly Administered)
       Debtors.                                  :
------------------------------------------------------------x

**OBJECTION OF 7200 ARLINGTON ASSOCIATES LLC TO THE DEBTORS'**
**MOTION FOR AUTHORITY TO ASSUME UNEXPIRED LEASES OF**
**<u>NONRESIDENTIAL REAL PROPERTY</u>**

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY COURT JUDGE:**

7200 Arlington Associates LLC (the "Landlord"), by its undersigned attorneys, hereby make this Objection (the "Objection") to the Debtors' Motion for Authority to Assume Unexpired Leases of Nonresidential Real Property [Docket No. 3376] (the "Assumption Motion"),[1] and in support thereof aver:

---

[1] Terms not otherwise defined here shall have the meanings ascribed to them in the Assumption Motion, and

**I.    BACKGROUND FACTS**

1.    Sears Holding Corporation, and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on October 15, 2018.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2.    The Debtors lease retail space (the "Premises") from Landlord pursuant to an unexpired lease of nonresidential real property (the "Lease") located in Riverside, California.  The Premises is a premises located in shopping centers, as that term is used in 11 U.S.C. § 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081 (3d Cir. 1990).  The Debtors represent that the Debtors are sublandlords under two subleases at the Premises, and that these subleases will partially pay for the going forward rent (as well as a portion of the cure amounts).

3.    On February 8, 2019, the Bankruptcy Court entered the Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief [Docket No. 2507] (the "Sale Order"), which approved the sale of substantially all of the Debtors' assets to Transform Holdco LLC (the "Transform Sale").

4.    On April 16, 2019, the Debtors filed the Assumption Motion (along with a proposed order to approve the Assumption Motion (the "Proposed Order")), which seeks the assumption of the Lease by the Debtors.  In connection with the Assumption Motion, the Debtors

---

accompanying documents.

[2] All statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") unless otherwise specified herein.

2

represent that the Lease (or designation rights to the Lease) is not part of the assets sold to Transform Holdco, LLC as part of the Transform Sale.

5.  The Debtors assert that there is a total of $41,500.00 owing under the Lease that must be cured in connection with the assumption of the Lease. The Landlord objects to the proposed cure amount as set forth below, as well as to any attempt of the Debtors to limit their liability under the Lease post-assumption. If this Court grants the Debtors' request to assume the Lease, the Debtors must assume all obligations under the Lease, including all charges that come due in the ordinary course after the assumption of the Lease.

6.  Finally, the Debtors represent that they have been in negotiations with the Landlord for the assumption and assignment of the Lease, but those negotiations are at an impasse. While the Landlord agrees that negotiations have been ongoing, it does not agree that negotiations are at an impasse.

## II. THE DEBTORS' PROPOSED CURE AMOUNTS DO NOT PROVIDE FOR PAYMENT OF ALL OBLIGATIONS DUE UNDER THE LEASES

7.  The Landlord's cure, as compared to the Debtors' proposed cure amount, is summarized in the chart below, and those charges comprising the Landlord's calculation of the cure amount are more fully detailed in the attached Exhibit A.

| Landlord | Center | Debtors' Cure | Landlord Cure[3] |
|---|---|---|---|
| 7200 Arlington Associates LLC | Riverside, CA | $41,500.00 | **$60,030.51** |

---

[3] Landlord's calculation of the cure amount does not include charges arising after filing this Objection, or charges not directly billed to Landlord as of the filing of this Objection. Landlord's calculation of the cure amount also does not include charges that are billed directly to Debtors, including in some cases, real estate taxes. To the extent Landlord is later billed for any amount due to Debtors failure to pay, or to the extent that there are other charges that come due under the Lease after the date of this Objection, Landlord retains and reserves the right to payment of these amounts when billed in the ordinary course under the Lease (and to amend this Objection to the extent necessary for any amounts that come due under the Lease through the date of any cure payment).

8. In addition to the current outstanding rent and other monthly charges due under the Lease, in determining what must be paid as a cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors or assignee, either as a cure or when properly billed under the Leases.

### A. Year-end adjustments and reconciliations

9. In addition to rent and related monthly charges, attorneys' fees, costs, and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the shopping centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective shopping center. To the extent the estimated payments exceed actual charges; the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases; the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. - year-end reconciliations and adjustments that accrued through 2018 may not have been billed for some locations, and such charges for 2019 will not be billed until 2020). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the

4

Leases, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time.

10. Nevertheless, Debtors remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Lease. The Debtors assume the Lease (and Subleases) subject to their terms, and must assume all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease. Any final assumption order should clearly state that the Debtors will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the assumption. In addition, any provision in an assumption order that purports to release the Debtors of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease.

11. Finally, the Lease requires the Debtors to indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors or their agents. Any assumption of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arose.[4] In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period prior to assumption of the Lease. Nothing in any assumption or confirmation order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the

---

[4] Any ability to assume the Leases is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption be in accordance with all provisions of the Leases.

5

Landlord requests that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

### B. Attorneys' fees, costs, and interest

12. The Lease contains provisions for recovery of attorneys' fees, costs, and interest in the event the Landlord is required to take legal action to protect its interests. The Debtors are obligated to cure all defaults under the Lease, and compensate the Landlord for its actual pecuniary losses as a result of defaults under the Lease. *See* 11 U.S.C. § 365(b)(1)(A) and (B). This principle is well-recognized. *In re LCO Enterprises*, 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

13. The Debtors take the Lease *cum onere* – subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of the Lease. *In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 172 (Banks. E.D. Va. 1993). If forced to continue in the performance of the Leases, the Landlord is entitled to the full benefit of the bargain under their Leases with the Debtors. *See In re Superior Toy and Mfg. Co., Inc.*, 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." *In re Entertainment, Inc.*, 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases. *See In re Skylark*

6

*Travel, Inc.*, 120 B.R. 352055 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate the Landlord for the Debtors' default under the Lease, and thus to properly assume the Lease. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Lease. *Cukierman v. Uecker (In re Cukierman)*, 265 F.3d 846, 853 (9th Cir. 2001).

14. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption of the Lease. *Entertainment, Inc.*, 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. *Id.* at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *Id.*; *see also*, *In re Crown Books Corporation*, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al.*, 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)*, 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were

7

enforceable with respect to issues peculiar to bankruptcy law. *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric*, 127 S. Ct. 1199, 1206 (2007).

### C. The cure amounts serve only as estimates

15. The Landlord can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend those amounts as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Lease.

## III. IMMEDIATE PAYMENT OF UNDISPUTED CURE AMOUNTS

16. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption. To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid immediately. Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

## IV. OBJECTION TO THE ASSUMPTION OF THE LEASE

### A. The Debtors must provide Landlord with adequate assurance of their ability to perform under the Lease as required by the Bankruptcy Code.

17. The Debtors must provide the Landlord with adequate assurance of future performance of their ability to perform under the Lease on a going forward basis in connection with the assumption of the Lease. The Debtors have sold substantially all of their assets as part of the Transform Sale. In addition, the hearings before this Court demonstrate that there are

8

serious questions concerning the administrative solvency of these Debtors. If the Debtors are not administratively solvent and have no remaining assets, Landlord asserts that they cannot demonstrate adequate assurance of future performance of their ability to perform under the lease for an unspecified time into the future. While the Debtors assert that the assumption is only for a short time (until a plan is confirmed) or the Lease is assigned to the Landlord or a third party, it is not clear when any of these contingencies will occur.

18. Moreover, in the event that the Debtors cannot reach a deal with the Landlord or another assignee, the Debtors will then have to reject the Lease. Rejecting a lease after it is been assumed creates a far larger liability to the Debtors than a rejection prior to assumption. In addition to the Section 502(b)(6) rejection claim that the Landlord will maintain, the Landlord receives an administrative claim under Section 503(b)(7), which provides:

> with respect to a nonresidential real property lease previously assumed under section 365, and subsequently rejected, a sum equal to all monetary obligations due, excluding those arising from or relating to a failure to operate or a penalty provision, for the period of 2 years following the later of the rejection date or the date of actual turnover of the premises, without reduction or setoff for any reason whatsoever except for sums actually received or to be received from an entity other than the debtor, and the claim for remaining sums due for the balance of the term of the lease shall be a claim under section 502(b)(6).

*See* 11 U.S.C. § 503(b)(7).

19. The Landlord currently estimates that total rent and charges payable to Landlord under the Lease (and subleases) is $322,467.60 per annum. As a result, if the Debtors were to ultimately reject the Lease post-assumption, the Landlord's administrative claim would total approximately $644,935.20. Based on the questionable status of the Debtors' administrative insolvency, it is not clear that the Debtors will have sufficient fund to pay this claim. The Court should not approve the assumption of the Lease prior to the confirmation of a

plan if the Debtors cannot demonstrate that it can perform under the Lease or pay the Landlord's Section 503(b)(7) claim if the Lease is later rejected.

20. The Debtors may not assume the Lease unless there is adequate assurance of future performance under the Leases. 11 U.S.C. § 365(b)(1)(C) & § 365(b)(3). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. *See* In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also* Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985).

21. Courts require a specific factual showing through competent evidence to determine whether a debtor demonstrates adequate assurance of future performance. *See e.g.*, Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented). To determine whether a party provides adequate assurance of future performance under Section 365(b), courts have looked to sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits or other similar forms of security or guarantee. In re Belize Airways, 5 B.R. 152 (Bankr. S.D. Fla. 1980); In re Lafayette Radio Electronics Corp., 9 B.R. 993 (Bankr. E.D.N.Y. 1981). Courts also look to the operating experience of the proposed assignee. In re Bygaph, Inc., 56 B.R. 596 (Bankr. S.D.N.Y. 1986).

22. Shopping center leases require a heightened demonstration of adequate assurance of future performance than is required by the general provision of Section 365(b)(1)(C). In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999). In order to assume shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A)-(D). *See* Joshua Slocum, 922 F.2d at 1086; *see also* L.R.S.C.

Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements that Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. *See* 11 U.S.C. § 365(b)(3)(A);
- that any percentage rent due under the Lease will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);
- that assumption of the Lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and
- that assumption of the Lease will not disrupt the tenant mix or balance in the shopping center. *See* 11 U.S.C. § 365(b)(3)(D)

23. Landlord asks that the Court require the Debtors to comply with the requirements of Section 365(b) and provide adequate assurance of future performance under the Lease.

### B. Any assumption and assignment must comply with the terms of the Lease.

24. The assumption of a lease in bankruptcy requires the Debtors to take such lease in its entirety and subject to all its terms. *N.L.R.B. v Bildisco & Bildisco*, 465 U.S. 513, 531 (1984). Therefore, any assignment must remain subject to all provisions of the Lease, as well as any reciprocal easements or other agreements affecting the tenants of the Centers, including but not limited to those provisions concerning use, radius, exclusivity, and tenant mix and balance.

25. Paragraphs 5 and 6 of the Proposed Order seeks a prospective ruling rendering provisions of Lease unenforceable in violation of Section 365. This language is unnecessary in the context of an assumption because the Lease is not being assigned. Landlord's objection is based on the ability of the Debtors to perform on a going forward basis and not any provision of the Lease regarding assignment. The Bankruptcy Code, and Section 365(b),

11

specifically require that the Debtors assume the Lease subject to its terms, and there is no basis (or need) to render any provision of the Lease unenforceable. Even if applicable, provisions governing use, radius, the permitted conduct upon the Premises, and the like, are not anti-assignment provisions and the Bankruptcy Code does not render them unenforceable. This Court should deny any request to assume the Lease unless the Debtors agree to comply with all existing Lease term, and the Court should strike any language in a final form of order that prospectively renders any Lease provisions unenforceable.

  **C.** **The assumption of the Lease must not be free and clear of obligations to pay all charges due under the Lease, including unbilled year-end adjustments and reconciliations.**

  26. As set forth above, the Debtors must assume the Lease subject to all its provisions and obligations. The Debtors must assume responsibility for any obligations under the Lease lease that pre-dates the assumption, but which have not yet been billed in the ordinary course, including those for year-end adjustments for charges such as taxes, CAM, insurance, utilities, etc. The Landlord objects to any sale free and clear of the obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assumption of the Lease, but which have not yet been billed. The Debtors continue to be responsible for all such unbilled charges as they come due under the Lease, and the Debtors must continue to satisfy all charges due under the Lease, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods. The assumption of the Lease cannot cut off the Landlord's right to recover unbilled charges that have accrued, or are accruing, under the Lease. The Debtors must be responsible for these charges, as such charges are not required to be paid as cure since they are not yet in default, and providing for the payment of these amounts is a part of providing adequate assurance of future performance.

27. In addition, the Lease provides that the Debtors must indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption of the Lease, examples of which may include such claims as environmental remediation, or personal injuries at the Premises and damage to the Premises by the Debtors or their agents. Any order approving the assumption of the Lease must provide that the assumption is pursuant to the terms of the Lease, including that the Debtors continue to be responsible for all such indemnification obligations, regardless of when they arose.

### D. An undercapitalized assignee should provide the Landlord additional security.

28. Based on the Debtors' lack of assets and concerns with respect to administrative insolvency, Landlord believes that – to the extent the Court grants the assumption – it is appropriate that the Debtor provide some type of credit enhancement as part of its adequate assurance of future performance demonstration, such as: (i) a guaranty of future performance from a financially capable parent entity; (ii) a letter or credit; or (iii) a cash security deposit. Pursuant to Section 365(l), the Landlord may require a security deposit or letter of credit as security for the performance in the event of a failure to perform on a going-forward basis. This is a reasonable condition of demonstrating adequate assurance of future performance where the Debtors without any going forward assets is seeking to assume the Lease, especially because concerns of administrative solvency call into question the Landlord's ability to recover any administrative claim under Section 503(b)(7).

## V.   CONCLUSION

The Court should not approve the assumption of the Lease to the Debtors. It is unclear that the Debtors can demonstrate the ability to make the payments due under the Lease as they come due, as well as the ability to satisfy the Landlord's administrative claim pursuant to Section

503(b)(7) in the event the Lease is subsequently rejected by the Debtors. The Landlord also requests that the Court incorporate the modifications raised by this Objection, and grant such further relief as the Court deems proper.

Dated:  May 3, 2019
New York, New York

Respectfully submitted,

*/s/ Dustin P. Branch*
Dustin P. Branch, Esquire
**Ballard Spahr LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Direct: (424) 204-4354
Fax: (424) 204-4350
Email: branchd@ballardspahr.com

- and -

David L. Pollack, Esquire
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864-8325
Pollack@ballardspahr.com

- and -

Leslie C. Heilman, Esquire
**Ballard Spahr LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Direct: (302) 252-4465
Email: heilmanl@ballardspahr.com

*Attorneys for 7200 Arlington Associates LLC*