| | |
|---|---|
| DAVIDOFF HUTCHER & CITRON LLP<br>605 Third Avenue<br>New York, New York 10158<br>(212) 557-7200<br>David H. Wander, Esq. (dhw@dhclegal.com)<br>Garrett Kingman, Esq. (gk@dhclegal.com)<br>*Attorneys for Pearl Global Industries Ltd.* | **Hearing Date and Time:**<br>May 21, 2019 at 10:00 am (EST)<br><br>**Response Deadline:**<br>May 14, 2019 at 4:00 pm (EST) |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                                                          Chapter 11

SEARS HOLDING CORPORATION, *et al.*,          Case No. 18-23538 (RDD)

                                              Debtors.              (Jointly Administered)
---------------------------------------------------------X

# NOTICE OF MOTION OF PEARL GLOBAL INDUSTRIES LTD. TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. § 503(b)(1)

**PLEASE TAKE NOTICE** that a hearing on the annexed motion dated May 3, 2019 of Pearl Global Industries Ltd. ("Pearl Global") to allow and compel payment of an administrative expense claim (the "Motion") will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601 (the "Bankruptcy Court"), on May 21, 2019 at 10:00 am (ET) (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that any objections to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Bankruptcy Court, shall be filed with the Bankruptcy Court, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures* [Doc. No. 405] (the "Amended Case Management Order"), so as to be filed and received no later than May 14, 2019 at 4:00 pm (ET) (the "Objection Deadline").

652833v.1

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not filed and served by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing pursuant to the Amended Case Management Order.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: New York, New York
      May 3, 2019

                            DAVIDOFF HUTCHER & CITRON LLP

                            By:   /s/ David H. Wander
                                  David H. Wander
                            605 Third Avenue
                            New York, New York 10158
                            (212) 557-7200
                            dhw@dhclegal.com
                            *Attorneys for Pearl Global Industries Ltd.*

DAVIDOFF HUTCHER & CITRON LLP  
605 Third Avenue  
New York, New York 10158  
(212) 557-7200  
David H. Wander, Esq. (dhw@dhclegal.com)  
Garrett Kingman, Esq. (gk@dhclegal.com)  
*Attorneys for Pearl Global Industries Ltd.*

**Hearing Date and Time:**  
May 21, 2019 at 10:00 am (EST)

**Response Deadline:**  
May 14, 2019 at 4:00 pm (EST)

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------X  
In re:                                                                         Chapter 11

SEARS HOLDING CORPORATION, *et al.*,           Case No. 18-23538 (RDD)

                                Debtors.                   (Jointly Administered)  
---------------------------------------------------------X

# MOTION BY PEARL GLOBAL INDUSTRIES LTD. TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. § 503(b)(1)

TO THE HONORABLE ROBERT D. DRAIN,  
UNITED STATES BANKRUPTCY JUDGE:

      Pearl Global Industries, Ltd. ("Pearl Global"), by its attorneys, Davidoff Hutcher & Citron LLP, as and for its motion, pursuant to 11 U.S.C. § 503(b), for an order allowing and compelling payment of an administrative expense claim, along with related relief, represents and says:

**JURISDICTION**

      1.     The United States District Court for the Southern District of New York has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), and (O). Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

652773v.1

**BACKGROUND**

2.On October 15, 2018 (the "Petition Date"), Sears, Roebuck & Co. (the "Debtor" and, with the other debtors in the above-captioned chapter 11 cases, the "Debtors") filed a chapter 11 petition (the "Petition") [Doc. No. 1] with this Court and an order for relief was simultaneously entered. This Court has approved joint administration of the Debtors' chapter 11 cases, and the Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

3.On October 15, 2018, the Debtors also filed the *Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants, and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Order Delivered to the Debtors Postpetition and Satisfy Such Obligations in the Ordinary Course of Business* (the "Postpetition Administration Motion") [Doc. No. 14].

4.In their Postpetition Administration Motion, the Debtors requested an order:

> . . . granting administrative priority status to all undisputed obligations of the Debtors owing to third party vendors and suppliers arising from the postpetition delivery of goods ordered prior to the [Petition Date] and authorizing the Debtors to pay such obligations in the ordinary course of business.

Postpetition Administration Motion, ¶ 5.

5.On November 20, 2018, the Court entered the *Final Order Authorizing Debtors to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants, and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, And Satisfy Such*

*Obligations in the Ordinary Course of Business* (the "Postpetition Administration Order") [Doc. No. 843]. The Postpetition Administration Order provides:

> All undisputed obligations of the Debtors arising from the postpetition delivery or shipment [] of goods under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code, and the Debtors are authorized, but not directed, to pay such obligations in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

Postpetition Administration Order, ¶ 8.

6. Pearl Global is the Debtors' largest vendor in India and its third largest supplier of women's apparel in the world.

7. On the Petition Date, $961,625.92 worth of Pearl Global's goods were in transit under various prepetition orders from the Debtors (the "Goods"). The relevant purchase orders authorizing shipment of the Goods are attached to the *Declaration of Mahesh Seth dated April 5, 2019* (the "Seth Declaration") as Exhibit A.

8. The Goods were delivered to the Debtors postpetition and provided a benefit to the Debtors' estates.

9. Before the Goods were delivered, Pearl Global was concerned about the Debtors' bankruptcy filing and whether it would jeopardize prompt payment for the Goods. *Seth Declaration* at ¶ 6. However, On October 16, 2018, Pearl Global received an email from the Debtors (the "October 16 Email") that was intended, upon information and belief, to reassure Pearl Global that it would receive payment for the Goods in the ordinary course of business, and to prevent Pearl Global, a foreign vendor, from stopping the Goods in transit before delivery to Sears:

> The company intends to pay our vendors in the ordinary course for all goods and services provided on or after the filing date. Invoices

652773v.1    3

> for these goods and services should be submitted through the ordinary channels, and payments will be processed in accordance with the terms of our purchase order or contract. Claims for amounts owed, for goods delivered, and services rendered prior to the filing date will be determined by the Court.

*Seth Declaration,* Ex B. In reliance upon the Postpetition Administration Motion and the October 16 Email, Pearl Global chose not to stop delivery of the Goods, although it could have done so. *Seth Declaration*, ¶ 9.

10. After the Petition Date, the Debtors asked Pearl Global to manufacture and deliver additional apparel. On November 22, 2018, the Debtors ordered additional merchandise in the aggregate amount of $3,011,990.19. *Seth Declaration*, ¶ 11.

11. But for the Debtors' affirmative conduct and statements in inducing Pearl Global's continued performance under the purchase orders, Pearl Global would not have permitted delivery of the Goods.

## RELIEF REQUESTED

12. Pursuant to §§ 105(a) and 503(b) of the Bankruptcy Code, as well as the Postpetition Administration Order, Pearl Global seeks entry of an order, in a form substantially similar to the proposed order attached hereto as **Exhibit A**, (i) granting Pearl Global an administrative expense claim for the Goods, under section 503(b)(1)(A) of the Bankruptcy Code, and (ii) directing the Debtor to pay such allowed administrative expense claim within fourteen (14) days of entry of the order.

## BASIS FOR RELIEF

### A. Goods Were Delivered Postpetition

13. Section 503 of the Bankruptcy Code provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses . . . including --

> (1)(A) the actual, necessary costs and expenses of preserving the estate . . .; [and]
>
> \*   \*   \*
>
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503.

14. Prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which introduced § 503(b)(9), courts required claimants to establish two conditions in order to assert an administrative expense claim.[1] However, the BAPCPA's introduction of § 503(b)(9) has fundamentally changed the structure of § 503(b), as goods received within twenty days of a bankruptcy petition are now allowed as administrative expense claims without any regard for the two conditions courts have previously imposed.

15. It is a well-settled principle of statutory interpretation that statutory provisions should not be considered in isolation but in conjunction with the statute as a whole. *Yerdon v. Henry*, 91 F.3d 370 (2d Cir. 1996) ("Because the meaning of statutory language, plain or not, depends on context, the interpretation of a statute requires consideration of the language of the relevant provision in conjunction with the entire statute. Where an examination of the statute as a whole demonstrates that a party's interpretation would lead to absurd or futile results . . . plainly at variance with the policy of the legislation as a whole, that interpretation should be rejected.")

---

[1] First, an expense could only be granted administrative expense status "to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)). Second, the expense must have "arise[] out of a transaction between the creditor and the bankrupt's trustee or debtor in possession." *Id.* (citing *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984)).

652773v.1                                5

(internal citations and quotations omitted). Accordingly, courts must read § 503(b)(1) in conjunction with the rest of subsection § 503(b) and the passage of § 503(b)(9).

16. Because Congress has provided that the delivery of goods to a debtor within twenty days of the debtor's bankruptcy filing will entitle a vendor to an administrative expense claim, <u>all</u> goods delivered postpetition must necessarily be entitled to administrative priority status. Otherwise, the statute will lead to absurd results whereby the pre-petition delivery of goods by a vendor could receive administrative claim status, while the same goods delivered days later and received post-petition would result in a general unsecured claim.

17. "Administrative expense payment is a priority afforded to those who either assist in the preservation and administration of the estate, or who aid the debtor's rehabilitation to the benefit of all creditors." *In re SMB Holdings, Inc.*, 77 B.R. 29, 32 (Bankr. W.D.Pa. 1987). In other words, administrative expense claims are intended to compensate those creditors whom Congress has determined play such an important role in a debtor's bankruptcy that they should be treated differently from other creditors.

18. Since Congress has determined that vendors providing goods within twenty days before a bankruptcy filing should be compensated with administrative priority, it necessarily follows that goods delivered postpetition (i.e. goods delivered to the debtor *after* goods that will be afforded administrative expense status) should be similarly afforded administrative priority. To hold otherwise would render an absurd result that is completely at odds with the fundamental concept of administrative expense claims. Indeed, if goods delivered within twenty days of the bankruptcy petition play an important role in rehabilitating the debtor and, therefore, are afforded administrative priority, it logically follows that goods delivered after the bankruptcy filing

similarly provide critical value to the debtor that should be compensated through an administrative expense claim.

19. Notably, the Debtors acknowledged in the Postpetition Administration Motion that goods received postpetition would be afforded administrative priority, as they requested an order:

> . . . granting administrative priority status to all undisputed obligations of the Debtors owing to third party vendors and suppliers arising from the postpetition delivery of goods ordered prior to the [Petition Date] and authorizing the Debtors to pay such obligations in the ordinary course of business.

Postpetition Administration Motion, ¶ 5.

20. Accordingly, as all of the Goods were delivered postpetition, this Court should afford Pearl Global an administrative expense claim under § 503(b)(1)(A).

### B. The Debtors Induced Pearl Global to Provide Goods Postpetition

21. If this Court does not agree that Congress' enactment of § 503(b)(9) affects the application of § 503(b)(1), Pearl Global can establish its entitlement to an administrative expense claim under pre-BAPCPA case law applying § 503(b)(1).

22. Pre-BAPCPA courts held that two requirements had to be met for a claim to be allowed as an administrative expense under § 503(b)(1). First, an expense could only be granted administrative expense status "to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)). Second, the expense must have "arise[n] out of a transaction between the creditor and the bankrupt's trustee or debtor in

possession." *Id.* (citing *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984)). Pearl Global's claim satisfies both of these requirements.

23.  First, the Goods were delivered to the Debtors postpetition and provided a benefit to the Debtors' estates.

24.  Although delivery of the Goods postpetition does not, standing alone, entitle Pearl Global to an administrative expense claim, courts have been clear that the "transaction with the debtor-in-possession" requirement is satisfied when creditors are "induced to supply goods or services to the debtor-in-possession." *Jartran*, 732 F.2d at 586 (quoting *Mammoth Mart*, 536 F.2d at 954).

25.  In the instant case, it is beyond dispute that Pearl Global retained the right to stop delivery of the Goods until they were received by the Debtors, regardless of who held title to the Goods. Postpetition Administration Order, ¶ 19 ("certain vendors may refuse to provide goods to the Debtors (*or may recall shipments thereof*). . . .") (emphasis added); s*ee* U.C.C. § 2-70 (providing, in relevant part, that "[t]he seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent" and that "[a]s against such buyer the seller may stop delivery until [] receipt of the goods by the buyer. . . ."); *In re National Sugar Refining Co.*, 27 B.R. 565, 569 (Bankr. S.D.N.Y. 1983) ("The fact that [seller] had passed to [buyer] title to the sugar did not affect the former's right to stop in transit.").

26.  Recognizing Pearl Global's ability to stop shipment of goods, the Debtors took several affirmative steps to induce Pearl Global to deliver the Goods and to dissuade Pearl Global from exercising its right to stop delivery.

27.  First, the Debtors induced Pearl Global's postpetition performance by asking the Court to grant administrative expense priority status to all undisputed obligations of the Debtors

arising from the postpetition delivery of goods shipped under prepetition orders. Indeed, the Postpetition Administration Motion included the following language:

> Prior to the Commencement Date, and in the ordinary course of business, the Debtors ordered approximately $162 million in Merchandise from suppliers and vendors that will not be delivered until on or after the Commencement Date (the "Prepetition Orders"). These suppliers and vendors may be concerned that, because the Debtors' obligations under the Prepetition Orders arose prior to the Commencement Date, such obligations will be treated as general unsecured claims in these Chapter 11 Cases. <u>Accordingly, certain vendors may refuse to provide goods to the Debtors (or may recall shipments thereof) purchased pursuant to the Prepetition Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court providing that all undisputed obligations of the Debtors arising from the postpetition delivery of goods subject to Prepetition Orders are afforded administrative expense priority status under section 503(b) of the Bankruptcy Code</u>.

Postpetition Administration Motion, ¶ 19 (emphasis added). Furthermore, the Debtors informed Pearl Global in the October 16 Email that:

> The company intends to pay our vendors in the ordinary course for all goods and services provided on or after the filing date. Invoices for these goods and services should be submitted through the ordinary channels, and payments will be processed in accordance with the terms of our purchase order or contract. Claims for amounts owed, for goods delivered, and services rendered prior to the filing date will be determined by the Court.

*Seth Declaration*, Ex. B. But for these two affirmative statements from the debtors-in-possession, Pearl Global would not have permitted delivery of the Goods to the Debtors. *See Seth Declaration*, ¶ 9.

28.    Notably, the Debtors admitted in the *Objection to Winners Industry Co., Ltd's Motion for Allowance and Payment of Administrative Claim* (the "<u>Winners Objection</u>") [Doc. No. 2839] that the Postpetition Administration Motion was intended to induce continued performance by the Debtors' suppliers:

> The purpose of the comfort language in paragraph eight of the Final Shipping Order was to give assurance to vendors operating under prepetition contracts who had not completed performance as of the Petition Date that they would be provided with an Administrative Claim for completing performance and delivering goods to the Debtors after the Petition Date. The Debtors wanted this comfort language placed into the Final Shipping Order to assure parties who had not yet begun or not yet completed performance of their obligations, that they would be compensated on a postpetition basis in the ordinary course of business.

Winners Objection, ¶ 17.

29. Accordingly, the Debtors are hard-pressed to deny that Pearl Global was induced by these two statements to permit delivery of the Goods.[2]

30. Moreover, the Debtors took additional steps that induced Pearl Global to permit delivery of the Goods. Since Pearl Global represented one of the Debtor's largest suppliers in the world, the Debtors contacted Pearl Global postpetition to negotiate a new contract so that they would continue to do business together. Pearl Global believed that stopping delivery of the Goods would undercut these negotiations.[3] *Seth Declaration*, ¶ 12.

31. The Debtors ultimately agreed to purchase more than $3,000,000 worth of goods from Pearl Global postpetition. *Seth Declaration*, ¶ 11.

---

[2] The Debtors are estopped from denying that the Postpetition Administration Order was not intended to induce Pearl Global's delivery of the Goods under the principle of judicial estoppel. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

[3] As an example of Pearl Global's belief that their relationship with the Debtors was tied to delivery of the Goods, Pearl Global stated in its November 26, 2018 email finalizing new terms with the Debtors that "I do feel in view of [our agreement on new payment terms for postpetition purchases] and the fact that we did not block deliveries of goods on water worth close to [$500,000] .. like other vendors did .. demonstrate [sic] our trust in our relationship and Partnership." *Seth Declaration*, Ex. C.

32. Accordingly, since the Debtors have induced Pearl Global to deliver the Goods postpetition, Pearl Global is entitled to an administrative expense claim for the Goods under § 503(b)(1)(A).

## C. Pearl Global is Entitled to Payment of Its Administrative Claims Under the Postpetition Administration Order

33. In addition to the Debtors' inducement of the delivery of the Goods, Pearl Global is entitled to allowance of an administrative expense claim for the Goods pursuant to the Postpetition Administration Order.

34. The Postpetition Administration Order provides that "[a]ll undisputed obligations of the Debtors arising from the postpetition delivery or shipment [] of goods under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code. . . ." Postpetition Administration Order, ¶ 8.

35. It cannot be disputed that the Goods were delivered postpetition under a prepetition purchase order. Accordingly, Pearl Global is entitled to payment for the Goods pursuant to the Postpetition Administration Order.

## D. The Debtors Should be Directed to Pay Pearl Global's Administrative Expense Claim Without Delay

36. The Debtors should be required to immediately pay Pearl Global for the Goods. Under the Postpetition Administration Order, the Debtors are authorized "to pay such obligations in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date." Postpetition Administration Order, ¶ 8. It is clearly inequitable, and without legal basis, to allow Debtors to discriminate between administrative expense claimants, including Pearl Global. *See Hall v. Perry* (*In re Cochise College Park, Inc.*), 703 F.2d 1339, 1356 n. 22 (9th Cir. 1983) ("All administrative expense creditors must be treated with

'absolute equality,' unless, of course, some creditors, with full knowledge of the fact, have agreed to subordinate their claims.") (citing *Thomas Corp. v. Nicholas,* 221 F.2d 286, 289 (5th Cir.1955)). Accordingly, the Debtors should be required to remit payment for the Goods to Pearl Global within fourteen (14) days of entry of the order.

37. No prior application for this relief has been made.

**WHEREFORE,** Pearl Global requests that this motion be granted, for which no previous request has been made, and for such other and further relief this Court deems just and proper.

Dated: New York, New York
       May 3, 2019

DAVIDOFF HUTCHER & CITRON LLP

By:   /s/ David H. Wander
      David H. Wander
605 Third Avenue
New York, New York 10158
(212) 557-7200
dhw@dhclegal.com
*Attorneys for Pearl Global Industries Ltd.*