DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200
David H. Wander, Esq. (dhw@dhclegal.com)
Garrett Kingman, Esq. (gk@dhclegal.com)
*Attorneys for Pearl Global Industries Ltd.*

**Hearing Date and Time:**
May 21, 2019 at 10:00 am (EST)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
In re:                                                                          Chapter 11

SEARS HOLDING CORPORATION, *et al.*,            Case No. 18-23538 (RDD)

        Debtor.                                              (Jointly Administered)


------------------------------------------------------------ X

### DECLARATION BY MAHESH SETH IN SUPPORT OF MOTION BY PEARL GLOBAL INDUSTRIES LTD. TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. § 503(b)(1)

    MAHESH SETH, declares under 28 U.S.C. §1746:

    1.    I am the President of the United States branch office of Pearl Global ("Pearl Global") and I submit this declaration in support of Peal Global's motion for allowance and payment of an administrative claim pursuant to § 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code").

    2.    Pearl Global is one of the Debtors largest foreign apparel vendors. Peal Global is an India company, with manufacturing facilities in Bangladesh and offices in New York and Los Angeles.

    3.    Pearl Global has been doing business with both Sears, Roebuck & Co. ("Sears") and Kmart Corporation ("Kmart" and together with Sears and the other debtors in the above-captioned chapter 11 cases, the "Debtors") for about five (5) years.

645693v.1

4.  As of October 15, 2018 (the "Petition Date"), when the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Petition"), Pearl Global had goods on the water destined for Sears and Kmart pursuant to various invoices totaling $974,133.62 ($421,560.67 in orders from Sears; $552,572.95 in orders from Kmart). The relevant purchase orders are attached as **Exhibit A**. After the Petition, the Debtors remitted payment for $12,507.70 for such goods.[1] Accordingly, Pearl Global has not received payment for the balance of $961,625.92 worth of goods (the "Goods").

5.  The Goods were shipped FOB shipper. However, until the goods were delivered to their port of destination and offloaded onto the docks, Pearl Global had control over the goods; it could order that the ship not dock and unload the goods without payment.

6.  Before the Goods were delivered, Pearl Global was concerned that the Debtors' bankruptcy filing could jeopardize prompt payment for the Goods. However, on October 16, 2018, Pearl Global received an email from Sunaina Kapoor, the Debtors' employee, which included a letter from Sears' Chief Financial Officer, Robert Riecker, addressed to the Debtors' vendors, stating:

> The company intends to pay our vendors in the ordinary course for all goods and services provided on or after the filing date. Invoices for these goods and services should be submitted through the ordinary channels, and payments will be processed in accordance with the terms of our purchase order or contract. Claims for amounts owed, for goods delivered, and services rendered prior to the filing date will be determined by the Court.

The October 16, 2018 email and letter are attached as **Exhibit B**.

7.  On October 15, 2018, the Debtors also filed the *Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-*

---

[1] The payment was designated for Sears' Invoice No. 201822687338.

2

*Merchandise Lien Claimants, and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Order Delivered to the Debtors Postpetition and Satisfy Such Obligations in the Ordinary Course of Business* (the "<u>Postpetition Administration Motion</u>") [Doc. No. 14].

8. In their Postpetition Administration Motion, the Debtors requested an order:

> . . . granting administrative priority status to all undisputed obligations of the Debtors owing to third party vendors and suppliers arising from the postpetition delivery of goods ordered prior to the [Petition Date] and authorizing the Debtors to pay such obligations in the ordinary course of business.

Postpetition Administration Motion, ¶ 5

9. In reliance the Debtors' affirmative and unsolicited statements that it would pay for the postpetition Goods, we decided not to stop delivery of the Goods, although we could have done so.

10. After they filed the Petition, the Debtors asked Pearl Global to manufacture and deliver additional apparel.

11. On November 22, 2018, the Debtors ordered additional merchandise in the aggregate amount of $3,011,990.19 (the "<u>Postpetition Goods</u>").

12. We were concerned that stopping delivery of the Goods would undercut these negotiations.

13. Indeed, we informed the Debtors on multiple occasions that we were not stopping delivery of the Goods, as other vendors did, in "support of our longer term relationship." In one email, Pearl Global's Chairman of the Board stated that "I do feel in view of [our agreement on new payment terms for postpetition purchases] and the fact that we did not block deliveries of goods on water . . . like other vendors did . . . demonstrate our trust in our relationship and

645693v.1

Partnership." Attached as **Exhibit C** are a series of email chains wherein we advised the Debtors that we were not stopping delivery of the Goods as a sign of good faith that the Goods would ultimately be paid.

14. But for the Debtors' affirmative conduct and statements in inducing Pearl Global's continued performance under the subject purchase orders, Pearl Global would not have permitted delivery of the Goods.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of May, 2019.

/s/ Mahesh K. Seth
_____
Mahesh Seth

4

645693v.1