**Hearing Date: TBD**
**Objection Deadline: May 6, 2019 (4:00 p.m. EST)**

**BROWN & CONNERY, LLP**
Donald K. Ludman, Esq. (admitted *pro hac vice*)
Julie F. Montgomery, Esq. (admitted *pro hac vice*)
6 North Broad Street, Suite 100
Woodbury, NJ  08096
(856) 812-8900
(856) 853-9933 FAX
dludman@brownconnery.com
jmontgomery@brownconnery.com
*Attorneys for SAP Industries, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **In re:** | ) Chapter 11 |
|  | ) |
| **SEARS HOLDINGS CORPORATION, *et al.*,**[1] | ) Case No. 18-23538 (RDD) |
|  | ) |
| **Debtors.** | ) (Jointly Administered) |
|  | ) |
|  | ) (Related Doc. No. 3311) |

**OBJECTION OF SAP INDUSTRIES, INC. TO THE DEBTORS' NOTICE OF REJECTION OF A MASTER SOFTWARE LICENSE AND SERVICES AGREEEMENT**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

SAP Industries, Inc. ("SAP"), by and through its undersigned counsel, hereby files this objection (the "Objection") to a certain *Notice of Rejection of Executory Contracts* [Doc. No. 3311] (the "Rejection Notice") filed by the Debtors that seek to reject certain contracts with SAP, and states as follows:

## INTRODUCTION

1. SAP and Sears Holding Management Corporation ("SHMC") are parties to a software license agreement pursuant to which SAP licensed certain copyrighted software to SHMC.

2. SHMC filed a notice seeking to reject the software license agreement and included certain, but not all, appendices to the software license agreement among those contracts to be rejected.

3. SAP requested that SHMC confirm that (1) it intends to reject the entire software license agreement, and (2) that SHMC will discontinue its use and destroy all copies of the software based upon the rejection as SHMC is no longer allowed to reap the benefits of the license agreement. SHMC has not substantively responded to SAP's request to date.

4. SAP files this Objection to confirm that the entire software license agreement is rejected and that, therefore, the Debtors will cease all use of and destroy the software licensed thereunder.

## BACKGROUND

*The Software License Agreement*

5. On October 28, 2011, SAP and SHMC entered into a "Master Software License and Services Agreement." That agreement and any and all related agreements, schedules, appendices, and amendments thereto are referred to herein as the "Industries License

2

Agreement."

6. Pursuant to the terms and conditions of the Industries License Agreement, SAP granted SHMC a non-exclusive, site-specific, perpetual license to use certain Software and other Proprietary Information[2] (collectively, the "Software") owned or licensed by SAP Industries.

7. The Software licensed to SHMC under the terms of the Industries License Agreement is copyrighted pursuant to the copyright laws of the United States, 17 U.S.C. §§ 101 et seq.

8. SAP and SHMC entered into five (5) appendices to the Industries License Agreement, each of which contains the following language: "This Appendix is hereby annexed to and made a part of the Agreement specified above." The parties also entered into various schedules and amendments to the Industries License Agreement.

9. Section 5.3 of the Industries License Agreement provides that:

> (a) upon any termination hereunder, SHMC and its Affiliates shall immediately cease Use of all SAP Proprietary Information; and (b) SAP shall immediately cease use of any SHMC Proprietary Information. Within thirty (30) days after any termination, each party shall deliver to the other party or destroy all copies of the other party's applicable Proprietary Information in every form. Upon request, each party agrees to certify in writing to the other party that it and each of its respective Affiliates with whom has shared applicable Proprietary Information has performed the foregoing.

Industries License Agreement § 5.3.

***The Rejection Notice***

10. On April 22, 2019, SHMC and its debtor-affiliates (collectively, the "Debtors") filed the Rejection Notice, pursuant to which the Debtors seek to reject certain executory contracts effective April 22, 2019.

11. The SAP contracts under the Rejection Notice include the following:

---

[2] All capitalized terms not herein defined are used as defined in the Industries License Agreement.

| 171 | 1886 | SEARS HOLDINGS MANAGEMENT CORPORATION | SAP | MASTER SOFTWARE LICENSE AND SERVICES AGREEMENT |
| --- | --- | --- | --- | --- |
| 172 | 1886 | SEARS HOLDINGS MANAGEMENT COMPANY | SAP | APPENDIX 3, 2012 TO SAP INDUSTRIES, INC. SOFTWARE LICENSE AGREEMENT |
| 173 | 1886 | SEARS HOLDINGS MANAGEMENT COMPANY | SAP | APPENDIX 4, 2012 TO SAP INDUSTRIES, INC. SOFTWARE LICENSE AGREEMENT |

12. Presumably, the Debtors intend to reject the entire Industries License Agreement, but reference to two of the five appendices executed by the parties is causing uncertainty, and SAP has been unable to obtain clarification from the Debtors.

## LEGAL ARGUMENT

### I. THE DEBTORS MAY ONLY ASSUME OR REJECT THE ENTIRE LICENSE AGREEMENT AND CANNOT ASSUME OR REJECT THOSE PORTIONS OF THE AGREEMENT THAT BENEFIT THE DEBTORS.

13. A license of intellectual property is an executory contract: "Bankruptcy courts have generally treated nonexclusive copyright and patent licenses as executory contracts." In re Patient Educ. Media, 210 B.R. 240, 241 (Bankr. S.D.N.Y. 1997).

14. The overwhelming majority of bankruptcy courts have held that where an executory contract is integrated, debtors may not cherry-pick those portions of the contract it finds beneficial, but must assume or reject *in toto*. See, e.g., In re Atlantic Computer Systems, Inc., 173 B.R. 844, 849 (S.D.N.Y. 1994) ("[I]f the various instruments at issue are deemed a single contract, then . . . [the debtor] may not assume only the benefits (i.e., payment) while rejecting the obligations of the bargain. . . . [U]nder Section 365 of the Code, *a debtor may not 'cherry pick' pieces of contracts it wishes to assume.*") (emphasis added); In re Texstone Venture, Ltd., 54 B.R. 54, 56 (Bankr. S.D. Tex. 1985) ("It is elementary that if a contract is to be rejected, it must be rejected in whole and not in part. Thus, *the Debtor cannot retain those aspects of the contract to his benefit while rejecting the burdensome aspects of the contract.*") (emphasis added); In re Holland Enterprises, Inc., 25 B.R. 301, 303 (D.C.N.C. 1982) ("It is axiomatic that an assumed contract under section 365 is accompanied by all its provisions and

4

conditions. Similarly, an executory contract or unexpired lease must be rejected *in toto*. To hold otherwise, would construe the bankruptcy law as providing a debtor in bankruptcy with greater rights and powers under a contract than the debtor had outside of bankruptcy."); Stuart M. Riback, Trademark Issues in Bankruptcy, 93 Trademark Rep. 867 (2003) (noting that "a debtor cannot construe the various parts of a transaction as separate agreements in order to assume the favorable portions and reject the unfavorable ones"); 2 Norton J. Bankr. L. & Prac. 3d § 46:11 (2009) ("When a court integrates various agreements, the trustee or debtor-in-possession may not assume one agreement without also assuming all other integrated agreements.").

15. Each of the appendices and schedules are integrated with the Industries License Agreement and, therefore, the Debtors cannot select potions of the Industries License Agreement but must reject the entire agreement, including all schedules, amendments, and appendices thereto, as whole.

16. The Rejection Notice includes the Master Software License and Services Agreement and well as two of the five appendices entered into by the parties that are part of the Industries License Agreement. While SAP presumes that the Debtors intend to reject the entire agreement, SAP has not been able to obtain confirmation the Debtors' intentions to date.

II. **THE DEBTORS MUST CEASE ALL USE OF THE SOFTWARE AND DESTROY ALL COPIES IN COMPLIANCE WITH THE CONTRACTUAL END-OF-TERM DUTIES.**

17. The Software licensed by SAP to SHMC under the Industries License Agreement is protected pursuant to the copyright laws of the United States, 17 U.S.C. § 101 et seq. Federal copyright law is designed to protect the limited monopoly of copyright owners, and it grants the owner of the copyright the exclusive right to exploit the copyrighted work and to restrict the unauthorized use of the copyrighted works. See In re Patient Educ. Media, 210 B.R. at 242.

18. Use of the Software beyond the scope of the Industries License Agreement is a violation of the copyright protections afforded by federal law for which SAP could seek damages. Cf. MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769 (3d Cir. 1991)("Since a nonexclusive license does not transfer ownership of the copyright from the licensor to the licensee, the licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license.").

19. The Debtors cannot both reject the Industries License Agreement and seek to reap the benefits of such agreement through continued use of the Software: "[T]he debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement." Richard Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985). "In other words, 'rejecting a contract allows a debtor to escape a contract's burdens; but, at the same time, the debtor must also give up any future benefit he might receive from the contract.'" In re Enron Corp., 349 B.R. 96, 106 (Bankr. S.D.N.Y. 2006) (quoting In re Crippin, 877 F.2d 594, 597 (7th Cir.1989)).

20. Similarly, rejection cannot be used to avoid another party's interest in property, which remains unaffected by the filing of the bankruptcy proceeding. See, e.g., In re Alongi, 272 B.R. 148, 154 (Bankr. D. Md. 2001). Cf. In re NTA, LLC, 380 F.3d 523, 528 (1st Cir. 2004) ("A bankruptcy estate cannot succeed to a greater interest in property than the debtor held prior to bankruptcy."). Because the License Agreement provides no ownership rights to the Debtors, upon rejection, they must forgo the benefit of Use of the Software granted under the executory contract. Moreover, if the Debtors are not required to delete the software upon rejection but are given permission to continue using the Software post-confirmation, this would interfere with

SAP's ability to restrict the use of its protected intellectual property.  See In re Patient Educ. Media, 210 B.R. at 242.

21.   Although rejection of a contract typically relieves a debtor-in-possession from obligations arising under the contract, bankruptcy courts notwithstanding rejection have enforced covenants in contracts that specifically govern the relationship of the parties post-termination. See, e.g., Sir Speedy, Inc. v. Morse, 256 B.R. 657, 660 (D. Mass. 2000)(upholding a covenant not to compete post-rejection).

22.   Because the Debtors have rejected the Industries License Agreement, they should not be able to reap the benefit of the continued use of the Software licensed thereunder.

23.   Rather, in accordance with the Industries License Agreement, the Debtors should be required to comply with the end-of-term duties therein that require destruction of all Software licensed thereunder and certification thereto by SHMC.

**WHEREFORE,** SAP Industries, Inc. respectfully requests that this Court enter an order requiring that the Debtors comply with the termination provisions set forth in Section 5.3 of the Industries License Agreement upon rejection of the entire Industries License Agreement, including all schedules, amendments, and appendices thereto, and granting such other relief as it may deem appropriate.

**BROWN & CONNERY, LLP**

Dated:  May 6, 2019

/s/ Julie F. Montgomery
Donald K. Ludman, Esq. (admitted *pro hac vice)*
Julie F. Montgomery, Esq. (admitted *pro hac vice*)
6 North Broad Street, Suite 100
Woodbury, NJ 08096
(856) 812-8900
(856) 853-9933 (fax)
dludman@brownconnery.com
jmontgomery@brownconnery.com

*Attorneys for SAP Industries, Inc.*