| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: May 16, 2019<br>Hearing Time: 10:00 a.m. |

In re : Chapter 11

SEARS HOLDINGS CORPORATION, *et al.*, : Case No. 18-23578 (RDD)

Debtors. : Jointly Administered

**OBJECTION OF THE UNITED STATES TRUSTEE
TO DISCLOSURE STATEMENT FOR JOINT
CHAPTER 11 PLAN OF SEARS HOLDING
CORPORATION AND ITS AFFILIATED DEBTORS**

TO: THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this objection (the "Objection") to the Disclosure Statement for Joint Chapter 11 Plan of Sears Holding Corporation and its Affiliated Debtors (the "Disclosure Statement"). ECF Doc No. 3276. In support thereof, the United States Trustee respectfully states:

### I. PRELIMINARY STATEMENT

A disclosure statement serves to provide creditors with sufficient information to evaluate the risks and financial consequences of the proposed plan of reorganization and to make an informed choice as to whether to approve or reject the proposed plan. Here, the Disclosure Statement does not provide accurate and sufficient information that would enable creditors to make a realistic evaluation of the proposed plan. Specifically, this is a liquidating plan – that is, substantially all of the assets of the Debtors have been sold to ESL for approximately $5.2 billion – and in simple terms, all that remains for the Debtors is to marshal any remaining assets and to

distribute the proceeds in accordance with the Bankruptcy Code's priority scheme. With respect to the unsecured creditors, under the Plan, after distributions to the administrative and secured creditors are made, it is unlikely that the unsecured creditors will receive a significant distribution, if any. Instead, the unsecured creditors will need to wait and see if possible future litigation that may or may not be undertaken by a liquidating trustee to be appointed upon effectuation of the confirmed plan (the "Liquidating Trustee") proves fruitful.

Although the Disclosure Statement appears to contain adequate information concerning how distributions to creditors will be made, the Disclosure Statement fails to accurately inform creditors that certain of the releases contained in the Plan are not in accordance with the Bankruptcy Code and case law, and that until those releases are removed from the Plan, it cannot be confirmed.

Specifically, the Plan provides for (i) the Debtors – who are not eligible to receive a discharge – to be released by parties that have not affirmatively consented to such releases and who may be receiving little or no distributions from the Debtors, (ii) the assets of certain of the Debtors' officers and directors to be shielded from claims that may be asserted by the Liquidating Trustee, and (iii) releases to be granted to the Liquidating Trustee and the Board of the Liquidating Trust created under the Plan – despite the fact that no such entities will be in existence until the Plan becomes effective. As explained in more detail below, the Plan cannot be confirmed with these release provisions. Either the Disclosure Statement should be amended in order to accurately advise creditors of the effect of including various release provisions in the Plan, or instead, the better, more financially prudent course, would be for the Court to direct that

the Plan be modified prior to the solicitation to creditors in order to eliminate the improper release provisions.

## II. BACKGROUND

### A. General Background

1. Sears Holdings Corporation and its debtor affiliates ("Sears" or "Debtors") commenced voluntary cases under chapter 11 of the Bankruptcy Code on October 15, 2018 (the "Petition Date").

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. ECF Doc. No. 118.

4. On October 24, 2018, the United States Trustee appointed the Official Committee of Unsecured Creditors. ECF No. 276.

5. On the Petition Date Sears operated 687 retail stores in forty-nine states, Guam, Puerto Rico, and the U.S. Virgin Islands. See Declaration of Robert A. Riecker, ECF Doc. No. 3, ¶ 25.

6. On February 8, 2019, the Bankruptcy Court entered the Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyers, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection

Therewith and (IV) Granting Related Relief (the "Sale Order"). ECF No. 2507. The Sale Order approved a transaction by which the Debtors sold substantially all of their assets. Disclosure Statement at 36 (explaining process whereby the Debtors accepted ESL's $5.2 billion "bid for substantially all of the assets of the Debtors").

**B.    The Plan and Disclosure Statement**

7. On April 17, 2018, the Debtors filed their Joint Chapter 11 Plan of Sears Holding Corporation and its Affiliated Debtors (the "Plan"), ECF No. 3275, and Disclosure Statement.

8. On the effective date of the Plan, all of the Debtors' assets will be transferred to a liquidating trust. Disclosure Statement at 2. A liquidating trustee and liquidating trust board of directors will be appointed to carry out the terms of the Plan. Id.

9. In addition, the Plan provides non-consensual third-party releases for the benefit of certain Released Parties.

10. Specifically, under the Plan each Released Party shall be deemed released and discharged by Releasing Parties

> from any and all Causes of Action that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' Estates, the Plan, the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the Sale Transaction, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party (other than assumed contracts or leases), the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments or other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that, nothing in Section 11.9(b) of the Plan shall be construed to release the

4

        Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that, nothing in Section 11.9(b) of the Plan shall be construed to release any Claim or Cause of Action relating to or arising from the Sale Transaction following entry of the Sale Order by the Bankruptcy Court. The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under Section 11.9(b) of the Plan against each of the Released Parties.

Plan at 46.

11.     Released Parties are defined under the Plan to include

        (a) the Debtors; (b) the Creditors' Committee and each of its members; (c) the Liquidating Trustee; (d) the Liquidating Trust Board; and (e) with respect to each of the foregoing entities in clauses (a) through (b), all Related Parties; provided, that the following entities shall not be "Released Parties" under the Plan:(i) the ESL Parties; (ii) any person or Entity against which any action has been commenced on behalf of the Debtors or their Estates, in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing; (iii) any Entity identified as a defendant or a potential defendant of an Estate Cause of Action in the Plan Supplement; and (iv) any subsequent transferee of any of the foregoing with respect to any Assets of the Debtors; provided, further, that recovery on account of any Causes of Action against the Specified Directors and Officers, solely with respect to D&O Claims, shall be subject to the limitations set forth in Section 11.11.

Plan at 11.

12.     Related Parties are defined under the Plan to include

        such Party's successors and assigns, managed accounts or funds, and all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and persons' respective heirs, executors, estates, servants, and nominees, including the Restructuring Committee, Restructuring Subcommittee, and each of its respective members; provided, that, any ESL Party shall not be a Related Party.

Plan at 11.

13. Releasing Parties include holders of claims or interest who (1) are presumed to accept the Plan, and (2) vote to reject the Plan or abstain from voting on the Plan but do not opt-out of the releases on their ballots.  Plan at 45.

14. The Disclosure Statement provides that the non-debtor releases are "in exchange for good and valuable consideration and the valuable compromises made by the Released Parties."  Disclosure Statement at 111.

15. In addition, pursuant to the Plan officers and directors are provided an additional release to protect their assets.  Specifically, the Plan provides that any recovery against the Debtors' officers and directors is limited to available D&O Policies.  Plan at 47.  No party will be permitted to execute upon an assets of such officers and directors except to the extent necessary to trigger insurance coverage.  Id.  The Disclosure Statement does not provide a basis for this non-consensual third-party release (or provide parties the opportunity to opt-out of this provision).

16. Finally, in addition to the releases, Section 11.8 of the Plan enjoins holders of claims and interests from pursuing claims against the Debtors.  Plan at 44.

### III.    OBJECTION

**A.    General Standards**

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125.  The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's

> books and records . . . that would enable a such a hypothetical reasonable investor . . . to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994); In re Adelphia Commc'ns Corp., 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); Kunica v. St. Jean Fin., Inc., 233 B.R. 46, 54 (S.D.N.Y. 1999).

To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. See In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives . . . ." In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less. See In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. Adelphia, 352 B.R. at 596 (citing Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94, 100 (3d Cir. 1988)). Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement too, at least so long as the

7

additional information is accurate and its inclusion is not misleading. Adelphia, 352 B.R. at 596. The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. In re Duratech Indus., 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), aff'd, 241 B.R. 283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor as to what it is going to get and when, and what contingencies there are that might intervene. In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

### B. The Plan Improperly Deems Consent to Third-Party Releases[1]

Not addressed in the Disclosure Statement is the risk that this Plan may not be confirmed because of the nature of certain of its release provisions. In particular, the Plan improperly deems that the Released Parties are released by, among others, each holder of a claims or interest who (1) are presumed to accept the Plan, and (2) vote to reject the Plan or abstain from voting on the Plan but do not opt-out of the releases on their ballots. Plan at 45.

The Court in In re SunEdison, Inc., 576 B.R. 45, 13-14 (Bankr. S.D.N.Y. 2017) ruled that creditors who did not affirmatively vote could not be deemed to consent to the releases in the plan. The Court in SunEdison cited to the following language in In re Chassix Holdings, 533 B.R. 54, 81 (Bankr. S.D.N.Y. 2015) ("Chassix"):

> Charging all inactive creditors with full knowledge of the scope and implications of the Proposed third party *releases*, and implying a "consent" to the third party *releases* based on the creditors' inaction, is simply not realistic or fair, and would stretch the meaning of "consent" beyond the breaking point.

---

[1] The United States Trustee acknowledges that in several other cases the Court has overruled the United States Trustee's objection regarding the need for an opt-in requirement for third-party releases. Nonetheless, particularly under the facts of these cases, including the potential for a small distribution to unsecured creditors in these liquidating cases, the United States Trustee reiterates his prior position herein.

Emphasis in original.

Further, the SunEdison Court held that the debtors have failed to sustain their burden of proving that the Court had subject matter jurisdiction to approve the third party releases. In re SunEdison, Inc., 576 B.R. 453 (Bankr. S.D.N.Y. 2017). In that case, the non-voting releasors did not consent to the release, the creditors were not being paid in full, and the third party claims would have been extinguished rather than channeled to a fund for payment. Id. Further, the debtors did not identify which third party claims would directly impact their reorganization and given the scope of the release, the Court determined that it is likely that many of the claims would not impact the reorganization. Id. Thus, the Court granted the debtors leave to propose a modified form of release under the condition that they must specify the release by name or readily identifiable group and the claims to be released, demonstrate how the outcome of the claims to be released might have a conceivable effect on the debtors' estates and show that this is one of the rare cases involving unique circumstances in which the release of the claims is appropriate under Metromedia. Id.

The Chassix Court also made clear its opposition to requiring creditors to opt out of the releases. The Court required the debtors to revise the definition of "Consenting Creditors" in the plan and did not permit an opt-out procedure for creditors who abstained from voting, voted to reject the plan, or were deemed to accept or reject the plan. Chassix, 533 B.R. at 80-82. Accordingly, creditors or parties in interest that are unimpaired, do not vote to accept or reject the plan, are deemed to reject the Plan, or votes to reject the Plan and do not opt out of the release should not be deemed to have consented to the third-party releases in the Plan.

Additionally, the Plan, if confirmed, will provide releases to a wide range of third parties. Specifically, third-party releases include the Released Parties' successors and assigns, managed accounts or funds, and all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and persons' respective heirs, executors, estates, servants, and nominees, including the Restructuring Committee, Restructuring Subcommittee, and each of its respective members.  Plan at 11.  The Debtors have not met their burden to prove that the Court has subject matter jurisdiction to release this multitude of persons who qualify as Released Parties from claims of the creditors who do not opt out of the third-party releases.  See In re SunEdison, Inc., 576 B.R. at 463.

The Disclosure Statement does not address the significant risks that confront confirmation of this liquidating plan of reorganization which seeks to impose what amounts to in effective injunctions being imposed against creditors who have not affirmatively consented to have such injunctions imposed against them.  Rather than allowing such improper provisions to remain however, it would be prudent for the Court to direct that such provisions be either removed from the Plan or imposed only against creditors that have affirmatively consented to them.

C.   **The Disclosure Statement Fails to Provide Adequate Information Regarding the Third-Party Releases**

*The Disclosure Statement Should State What the
Released Parties are Providing In Exchange for Their Releases*

The Disclosure Statement asserts that the releases are "in exchange for good and valuable consideration and the valuable compromises made by the Released Parties." Disclosure Statement at 111. The Disclosure Statement, however, does not set forth what the Released Parties are providing in exchange for their releases. Specifically, the Disclosure Statement does not list the consideration and compromises, if any, that the Released Parties are providing the Releasing Parties to justify the releases. In fact, it could be argued that actions taken by the Released Parties – at least those Released Parties who can be identified as having any direct connection with these cases – have had little positive impact upon many classes of creditors, including, but not limited to the unsecured creditors. Again, this point illustrates another reason why creditors should be required to affirmatively vote to release the Debtors and known and unknown third parties.

*The Disclosure Statement Should State What
Efforts Were Made to Limit the Non-Debtor Releases*

Similarly, the third-party releases are improper under the circumstances of these cases because they are extremely broad. They release "any and all Causes of Action that such Entity would have . . . based on . . . the Debtors." Plan at 46. The Disclosure Statement fails to articulate why the releases are so broad and what, if any, attempts were made to narrow their scope. Unless the Plan is amended to confine releases only to parties that affirmatively consent to grant such releases, the Disclosure Statement must include information as to why the non-debtor releases are so broad and why the scope of the releases could not be narrowed. The

11

Debtors should also identify the particular claims the Released Parties need released, and explain why releasing such claims is necessary for the Debtors' reorganization.  See In re Aegean Marine Petroleum Network, Inc., 2019 WL 1527968 at *8 (Bankr. S.D.N.Y. April 8, 2019)(non-debtor releases "are supposed to be ordered only when they are actually important and necessary to the accomplishment of the transaction before the Court").

*The Disclosure Statement Should State the Authority to Release Claims*
*That Have Not Yet Arisen Against Parties that Do Not Currently Exist*

Both the Liquidating Trustee and Liquidating Trust Board are receiving releases.  The Liquidating Trustee and the Liquidating Trust Board will not serve until the effective date of the Plan.  Plan at 27-28.  Accordingly, current claims against the Liquidating Trustee or the Liquidating Trust Board do not exist.  In fact, neither party currently exists.  The Disclosure Statement fails to set forth the authority for this Court to release claims that have not arisen at the time of confirmation against parties that do not currently exist.  Because it is patently clear that a release cannot be imposed upon a creditor against a party that does not yet exist, the Court should direct that these releases be removed from the Plan before it is sent to creditors for solicitation purposes.

*The Debtor Release and Injunction are Akin to a Discharge and*
*Should Not be Permitted Under Section 1141(d)(3)*

The Debtors are defined as a Released Party under the Plan.  Plan at 11.  Section 11.8 of the Plan enjoins holders of claims and interests from pursuing claims against the Debtors. Section 1141(d)(3) of the Bankruptcy Code provides that the confirmation of a plan does not discharge a debtor if (i) the plan provides for the liquidation of all or substantially all of the property of the estate, (ii) the debtor does not engage in business after consummation of the plan,

and (iii) the debtor would be denied a discharge under section 727(a) of the Bankruptcy Code if the case were a Chapter 7 liquidation case.  11 U.S.C. §1141(d)(3); see also In re Wood Family Interests, Ltd., 135 B.R. 407, 410 (Bankr. D. Colo. 1989)(holding that a discharge is not available to corporate or partnership debtors who propose a liquidating plan of reorganization).  Because (i) the Plan provides for the liquidation of the Debtors' assets, (ii) the Debtor will not retain any significant assets to operate after the consummation of the Plan, and (iii) the Debtor, as a corporation, would not be entitled to a discharge in a Chapter 7 case, the Court should direct the Debtors to remove those portions of the Plan that provide for releases and injunctions to be provided the Debtors.   In the alternative, the Disclosure Statement should be amended to explain how the release and injunction granted to the Debtors under the Plan do not violate § 1141(d)(3). See In re Bigler, LP, 442 B.R. 537, 544-56 (Bankr. S.D. Tex. 2010 (where liquidating debtor is not permitted a discharge due to section 1141(d)(3), a plan injunction preventing post-confirmation prosecution of claims that would operate as a discharge is also impermissible).

> *The Disclosure Statement Should Explain Why the Assets of the Debtors' Officers and Directors are Shielded From Causes of Action*

Under the Plan the Debtors' officers and directors are provided a shield to protect their assets from claims asserted against them.  Specifically, the Plan provides that recoveries by the Liquidating Trust against the Debtors' officers and directors is limited to available D&O Policies.  Plan at 47.  Execution upon an assets of such officers and directors is limited to the extent necessary to trigger insurance coverage.  Id.  The Disclosure Statement fails to provide an explanation for this limitation, what the Debtors' officers and directors are providing in return for this release, or why this release is necessary to effectuate confirmation of the Plan. Aegean Marine Petroleum Network, 2019 WL 1527968 at *9 ("directors did what they were

13

paid to do, and that does not mean they are entitled to releases of third-party claims, particularly when those releases really are not necessary or important to the accomplishment of the restructuring transaction."). Again, because it appears unlikely that this release is necessary to effectuate confirmation of the Plan and based on the Court's decision in <u>Aegean Marine Petroleum Network</u> (<u>see</u> above), rather than litigating this again at the time of confirmation, the Court should direct that these releases be removed from the Plan.

*The Releases for Attorneys are Inappropriately Broad*

The term "Related Parties" in the Plan includes attorneys. Plan at 11. Rule 1.8(h)(1) of the New York Rules of Professional Conduct (the "New York Rule") provides that a "lawyer shall not . . . make an agreement prospectively limiting the lawyer's liability to a client for malpractice." *See* N.Y. Comp. Codes R. & Regs. tit. 22 § 1200 Rule 1.8(h)(1) (2010). The Plan does not contain any provision to ensure compliance with the New York Rule and ensure that the release for attorneys is appropriately limited. The Plan and Disclosure Statement, therefore, should not be approved until they are revised to include the following provision: "Nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct."

## IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court sustain the Objection of the United States Trustee and grant such other relief as is just.

Dated: New York, New York
May 7, 2019

                                              Respectfully Submitted,

                                              WILLIAM K. HARRINGTON
                                              UNITED STATES TRUSTEE

                            By:    /s/ *Paul Schwartzberg*
                                     Paul Schwartzberg
                                     Trial Attorney
                                     201 Varick Street, Room 1006
                                     New York, New York 10004
                                     (212) 510-0500