UNITED STATES BANKRUPTCY COURT   **Hearing Date:June 20, 2019**
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS) **Hearing Time: 10:00 AM**

---------------------------------------------------------------X

In Re:

SEARS HOLDINGS CORPORATION, *et al.*,

          Debtors.[1]

---------------------------------------------------------------X

Case No. 18-23538 (RDD)

Chapter 11

(Jointly Administered)

<u>**NOTICE OF MOTION**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. A hearing to consider the motion (the "<u>Motion</u>") of Bayview Loan Servicing, LLC., as servicer for The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificate holders of CWALT, Inc., Alternative Loan Trust 2004-14T2, Mortgage Pass-Through Certificates, Series 2004-14T2 (the "<u>Movant</u>"), for relief from the automatic stay, pursuant to Section 362(d)(1) of the United States Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001 and Local Rule 4001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, and (2) for such other and further relief which the court may deem just and proper, will be held before the Honorable Robert D. Drain, United

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York,

300 Quarropas Street, White Plains, New York 10601, on June 20, 2019 @10:00 a.m.

2. Objections, if any, to the Motion must be made in writing, with a hard copy

delivered to the Chambers of the Honorable Robert D. Drain, United States Bankruptcy Court for

the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601;

conform to the Federal Rules of Bankruptcy Pg 2 of 23 Procedure and the Local Bankruptcy

Rules; be filed with the Bankruptcy Court; and be served in accordance with the provisions of

General Order M-399 of this Court on the following parties:

(i)(a) Archer & Greiner, P.C., 630 Third Avenue, New York New York 10017 (Attn: Allen G. Kadish, Esq. and Lance A Schildkraut, Esq.); (b) Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., 631 E. Boughton Road, Suite 200, Bolingbrook, Illinois 60440 (Attn: Kenneth M. Florey, Esq. and M. Neal Smith, Esq.); (c) Frenkel Lambert Weiss Weisman & Gordon LLP, (Attn: Karen Sheehan, Esq.); attorneys for Movant;

(ii) the Debtors, c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates, Illinois 60179 (Attn: Stephen Sitley, Esq., and Luke J. Valentino, Esq.);

(iii) Weil, Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq. Garret A. Fail, Esq. and Sunny Singh, Esq.), proposed attorneys for the Debtors;

(iv) the Office of the United States Trustee for Region 2 (the "U.S. Trustee"), 201 Varick Street, Suite 1006, New York New York 10014 (Attn: Paul Schwartzberg, Esq.)

(v) Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York New York 10036 (Attn: Paul D. Leake, Esq., Shana A. Elberg. Esq., and George R. Howard, Esq.) attorneys for Bank of America, N.A., administrative agent under the First Lien Credit Facility and the DIP ABL Agent;

(vi) Davis Polk & Wardell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Marshall S. Huebner, Esq. and Eli J. Vomiegut, Esq.) attorneys for Citibank, N.A., as administrative agent under the Stand-Alone L/C Facility;

(vii) Cleary, Gottlieb, One Liberty Plaza, New York New York 10006 (Attn: Sean A. O'Neal, Esq.) attorneys for JPP, LLC, as agent under the Second Lien Credit Facility, IP/Ground Lease Term Loan Facility, and the Consolidated Secured Loan Facility;

(viii) Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 010178 (Attn: Eric R. Wilson, Esq., Benjamin D. Feder, Esq., and T. Charlie Liu, Esq.), attorneys for Computershare Trust Company, N.A., as trustee for the Second Lien PIK Notes, the Holdings Unsecured PIK Notes, and the Holdings Unsecured Notes;

(ix) Seyfarth Shaw LLP, 620 Eighth Avenue, New York 10018 (Attn: Edward M. Fox, Esq.), attorneys for Wilmington Trust, National Association, as indentured trustee for the Second Lien Notes;

(x) Carter Ledyard & Milbum LLP, 2 Wall Street, New York, New York 10015 (Attn: James Gadsden, Esq.), attorneys for The Bank of New York Mellon Trust Company, a successor trustee for the SRAC Unsecured PIK Notes, SRAC Unsecured Notes, and the SRAC Medium Term Notes; (xi) Locke Lord LLP, 111 Pg 3 of 23 South Wacker Drive, Chicago, Illinois, 60606 (Attn: Brian A. Raynor, Esq.), attorneys for the Pension Benefit Guaranty Corporation;

(xii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York New York 10036 (Attn: Philip C. Dublin, Esq., Ira Dizengoff, Esq., and Sara Lynne Brauner, Esq.), attorneys for the Official Committee of Unsecured Creditors (the **"Creditors' Committee"**;

(xiii) any person or entity with a particularized interest in the subject matter of the relevant Document (a "**Particularized Notice Party**"); and

(xiv) all persons and entitled that have formally appeared and requested service in these cases pursuant to Bankruptcy Rule 2002 and the Case Management Procedures,

So as to be actually received by them not later than June 13, 2019 ( the **"Objection Deadline"**)

3. If no objection are timely filed and served, then Movant may, on or after the Objection

Deadline, submit the proposed Order to the Court substantially in the form attached hereto,

which order may be entered without further notice or opportunity to be heard offered to any

party.

Dated: May 13, 2019

Respectfully submitted,

/s/ Jenelle C. Arnold
Jenelle C. Arnold, Bar No.: 5263777
Attorney for Movant
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
Email: JArnold@aldridgepite.com

TO:

Sears, Roebuck and Co.
3333 Beverly Road
Hoffman Estates, Il 60179

Jacqueline Marcus
Weil Gotshal & Manges, LLP
767 5th Avenue
New York, NY 10153
jacqueline.marcus@weil.com

Ray C Schrock
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
ray.schrock@weil.com

Department of Justice
Southern District of New York (White Plains)
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006

New York, NY 10014
USTPRegion02.NYECF@USDOJ.GOV

Active Media Services Inc.
Attn.: President or General Counsel
1 Blue Hill Plaza
Pearl River, New York 10965

Apex Tool International LLC
Attn: President or Genral Counsel
910 Ridgebrook Road, Suite 200
Sparks, Maryland 21152

Automotive Rental Inc.
Attn: President or Genral Counsel
4001 Leadenhall Road
Mount Laurel, New Jersey 08054-4611

Black & Decker US Inc.
c/o Stanley Black & Decker
Attn: Presdient or Genral Counsel
100 Stanley Drive
New Britain, Connecticut 06053

Cardinal Health
Attn: President or Genral Counsel
700 Cardinal Place
Dublin, OH 43017

Eastern Prime Tectile Limited
Attn: President or General Counsel
Unit F10/F, King Win FTY Building
No. 65-67 King Yip Street, Kwun Tong,
Kowloon, Hong Kong

Frigidaire Company
c/o Electrolux
Attn: President or General Counsel
PO Box 2638
Carol Stream, IL 60132-2638

HK Greatstar Int'l Co. Ltd.
Attn: President or General Counsel
Rm 35, 4/F., Po Yip Building
23 Hing Yip Street, Kwun Tong
Kowloon, Hong Kong

Holdings Unsecured Notes (8.00%)
c/o Computershare Trust Company, N.A.
Attn.: President or General Counsel
250 Royal Street
Canton, Massachusetts 02021

Icon Health and Fitnsee Inc.
Attn.: President or General Counsel
1500 South 1000 West
Logan, UT 84321

Samsung Electronics Ameria HA
Attn.: President or General Counsel
85 Challenger Road, 7th Floor
Ridgefiled Park, NJ 07660

SRAC Medium Term Notes
c/o BNY Midwest Trust Company
Attn.: President or General Counsel
101 Barclay St., Floor 8W
New York, NY 10286

SRAC Unsecured Notes
c/o The Chase Manhatten Bank, N.A.
Attn.: Corporate Trust Department
4 Chase MetroTech Center, 3rd Floor
Brooklyn, NY 11245

Tata Consultancy Services Ltd.
Attn.: Presdient or General Counsel
379 Thornal Street, 4th Floor
Edison, NY 08837

The Pension Benefit Guaranty Corporation
Attn.: Office of the Chief Counsel
1200 K Street, N.W. Suite 300
Washington Distict of Columbia 20005

Whirlpool Corporation
Attn: President or General Counsel
2000 North M-63
Benton Harbor, Michigan 49022

Winia Daewoo Electronics America
Attn.: President or General Counsel

65 Challenger Road, Suite 360
Ridgefield Park, NJ 07660

Winners Industry Company Limited
Attn.: President or General Counsel
Unit A,. Wah Lung Building
49-53 Wnag Lung Street, Tsuen wan,
New Territories, Hong King

Dorothy Montgomery
77 Westminster Road
Garden City, NY 11530

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

------------------------------------------------------------X

In Re:

SEARS HOLDINGS CORPORATION, *et al.*,


Debtors.[2]
------------------------------------------------------------X

Case No. 18-23538 (RDD)

Chapter 11

(Jointly Administered)

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)

Jenelle C. Arnold, an attorney admitted to practice law, in the courts of the State of New York and in this Court, hereby affirms the following to be true under penalty of perjury:

1.    I am an associate with Aldridge Pite, LLP, attorneys for Bayview Loan Servicing, LLC., As Servicer For The Bank Of New York Mellon fka The Bank Of New York As Trustee For The Certificate Holders Of Cwalt, Inc., Alternative Loan Trust 2004-14T2, Mortgage Pass-Through Certificates, Series 2004-14T2, (hereinafter "Movant"). I am fully familiar with the facts of this case and submit this affirmation in support of Movant's motion for relief from the automatic stay.

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

2.      This is a contested matter brought pursuant to Federal Rules of Bankruptcy Procedure Rule 4001, 9013 and 9014 and Section 362(d) of Title 11 of the United States Code (the "Bankruptcy Code") for an Order (1) granting Movant relief from the automatic stay to enforce the Note and Mortgage relative to real property located at 77 WestMinster Road, Garden City, New York 11530 ("Premises"); and (2) granting Movant such other and further relief as the Court deems just and proper.

3.      Movant is the holder of a Note and Mortgage given to Dorothy Montgomery ("Borrower") on May 18, 2004 to secure payment in the original principal sum of $1,400,000.00 (hereinafter "Note" and "Mortgage" respectively), pledging the Premises as security. A copy of the Note and Mortgage are annexed hereto as Exhibit 2.

4.      The Note and Mortgage were transferred to Movant by properly endorsed Note. A note and mortgage may be transferred by either a written assignment or the physical delivery of the note. The mortgage passes with the debt as an inseparable incident. *See Flyer v. Sullivan*.284 A.D. 687, 134 N.Y.S.2d 521 (1st Dept. 1954); *Mortgage Electronic Registration Svs. Inc., v. Coaklev*. 41 A.D. 3d 674, 838 N.Y.S.2d 622 Pg 5 of 23 (2nd Dept. 2007); *See also In Re: Feinberg*. 442 B.R. .D.N.Y 2010).

5.      The annexed assignment of mortgage ("Assignment") also evidences the transfer to Movant. Copies of the Assignments are annexed hereto as Exhibit 3.

6.      Subsequently, **LVNV Funding LLC A/P/O Sears** obtained a Judgment against the Borrower's spouse, Robert Montgomery, in the amount of $5,343.62. On November 20, 2008, LVNV Funding LLC A/P/O Sears recorded the Judgment against the Premises (the "Judgment"). A copy of the recorded Judgment is annexed hereto as Exhibit 4.

7.    As a result of Borrower's default under the terms of the Note and Mortgage, Movant commenced a foreclosure action in the Supreme Court of the State of New York, Kings County, bearing Index No. 15714/2012 ("Foreclosure Action"). **LVNV Funding LLC A/P/O Sears**, was named as a party defendant in the Foreclosure Action as a result of a Judgment obtained and recorded against the Premises

8.    On October 15, 2018, the Debtors herein filed a petition under Chapter 11 of the Bankruptcy Code and pursuant thereto an automatic stay was imposed.

9.    Movant seeks relief from the automatic stay to proceed with the Foreclosure Action, in which the Debtors are named defendant by virtue of the Judgment. Movant is not adequately protected by the continuation of such stay, as it will be unable to enforce its state court remedies in the Foreclosure Action. The Debtors are not obligors under the Subject Loan. Nor do the Debtors own the subject Premises. Rather, Movant is informed and believes the Debtors have a junior interest in the Premises by virtue of the recorded Judgment. As a Judgment creditor, should there be surplus monies after the foreclosure sale of the Property, the Debtors will be entitled to make an application for same in the Foreclosure Action in accordance with its state court rights.

WHEREFORE, Movant respectfully requests an order vacating the automatic stay as it pertains to the premises located at 77 WestMinster Road, Garden City, New York 11530, and for such other and further relief as is just and proper.

Dated: May 13, 2019

Respectfully submitted,
/s/ Jenelle C. Arnold
Jenelle C. Arnold, Bar No.: 5263777
Attorney for Creditor
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200

P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
Email: JArnold@aldridgepite.comm

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

---------------------------------------------------------X    Case No. 18-23538 (RDD)

In Re:

                                                              Chapter 11

SEARS HOLDINGS CORPORATION, *et al.*,                         Exhibit 1

                                    Debtors.[1]               (Jointly Administered)

---------------------------------------------------------X

---

## RELIEF FROM STAY - REAL ESTATE AND COOPERATIVE APARTMENTS

I, **Lucy Rexach** OF Bayview Loan Servicing, LLC., as servicer for The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificate holders of CWALT, Inc., Alternative Loan Trust 2004-14T2, Mortgage Pass-Through Certificates, Series 2004-14T2 (HEREINAFTER, "MOVANT"), HEREBY DECLARE (OR CERTIIFY, VERIFY, OR STATE):

### BACKGROUND INFORMATION

1.    REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE SUBJECT OF THIS MOTION: 77 WestMinster Road, Garden City, New York 11530

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

2.    LENDER NAME: Bayview Loan Servicing, LLC., as servicer for The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificate holders of CWALT, Inc., Alternative Loan Trust 2004-14T2, Mortgage Pass-Through Certificates, Series 2004-14T2

3.    DATE OF MORTGAGE: May 18, 2004

4.    POST-PETITION PAYMENT ADDRESS: 4425 PONCE DE LEON BOULEVARD, 5TH FLOOR. CORAL GABLES, FL 33134

### DEBT/VALUE REPRESENTATIONS

5.    TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF FILING THE MOTION: $2,836.649.23* (amount good as of May 7, 2019)
(NOTE: this amount may not be relied on as a "payoff" quotation.)
*Amount reflects total less any partial payments (or suspense balance)

6.    MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT: $ N/A

7.    SOURCE OF ESTIMATED VALUATION: N/A

### STATUS OF DEBT AS OF
### THE PETITION DATE

8.    TOTAL PRE-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF PETITION FILING DATE: $2,753,869.37

|  |  |
|---|---|
| A.    AMOUNT OF PRINCIPAL: | $1,341,278.09 |
| B.    AMOUNT OF INTEREST: | $857,958.50 |
| C.    AMOUNT OF ESCROW (TAXES AND INSURANCE): | $537,588.60 |
| D.    AMOUNT OF FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $0.00 |
| E.    AMOUNT OF ATTORNEYS' FEES BILLED TO DEBTOR(S)PRE-PETITION: | $0.00 |
| F.    AMOUNT OF PRE-PETITION LATE FEES, IF ANY BILLED TO DEBTOR(S): | $2,901.24 |

9.      CONTRACTUAL INTEREST RATE: 5.625 % (If interest is (or was) adjustable, please list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: N/A.)

10.      PLEASE EXPLAIN ANY ADDITIONAL PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR'S ACCOUNT AND NOT LISTED ABOVE:

Recoverable balance $14,142.94

 (If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: N/A.)

### AMOUNT OF ALLEGED POST-PETITION DEFAULT
### (AS OF May 7, 2019)

11.      DATE LAST PAYMENT WAS RECEIVED: N/A

12.      ALLEGED TOTAL NUMBER OF PAYMENTS DUE POST-PETITION FROM FILING OF PETITION THROUGH PAYMENT DUE ON MAY 7, 2019: 7 PAYMENTS.

13.      PLEASE LIST ALL POST-PETITION PAYMENTS ALLEGED TO BE IN DEFAULT:

| ALLEGED PAYMENT DUE DATE | ALLEGED AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED (IF ANY) |
|---|---|---|---|---|---|---|
| 11/1/2018 | $12,865.31 | | | | | |
| 12/1/2018 | $12,865.31 | | | | | |
| 1/1/2019 | $12,865.31 | | | | | |
| 2/1/2019 | $12,865.31 | | | | | |
| 3/1/2019 | $12,865.31 | | | | | |
| 4/1/2019 | $12,865.31 | | | | | |
| 5/1/2019 | $12,865.31 | | | | | |
| TOTAL: | $90,057.17 | | | | | |

14.      AMOUNT OF MOVANT'S ATTORNEYS' FEES BILLED TO DEBTOR FOR THE

PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $0.00

15.    AMOUNT OF MOVANT'S FILING FEE FOR THIS MOTION: $0.00

16.    OTHER ATTORNEY'S' FEES BILLED TO DEBTOR POST-PETITION: $0.00

17.    AMOUNT OF MOVANT'S POST-PETITION INSPECTION FEES: $77.00

18.    AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE OPINION: $0.00

19.    AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY THE MOVANT POST-PETITION: $0.00[2]

20.    SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS CONTRACT, IF APPLICABLE: $0.00

21.    AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE TAXES, INSURANCE INCURRED BY DEBTOR ETC.: $6,702.97[3]

**REQUIRED ATTACHMENTS TO MOTION**

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1)    Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit 2, 3, 4.)

---

[2] The postpetition payments alleged in default for this impounded loan listed in paragraph 13 include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, postpetition advances (if any) made for insurance, real estate taxes, or similar charges are not listed again separately in 19 or 21 to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, the Bank will determine whether the escrow payments assessed to the debtor (including the missed escrow payments detailed in paragraph 13) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total postpetition arrearage/delinquency is qualified accordingly.

[3] The postpetition payments alleged in default for this impounded loan listed in paragraph 13 include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, postpetition advances (if any) made for insurance, real estate taxes, or similar charges are not listed again separately in 19 or 21 to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, the Bank will determine whether the escrow payments assessed to the debtor (including the missed escrow payments detailed in paragraph 13) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total postpetition arrearage/delinquency is qualified accordingly.

(2)      Copies of documents establishing proof of standing to bring this Motion. (Exhibit 2, 3, 4.)

(3)      Copies of document establishing that Movant's interest in the real property or cooperative apartment was perfected, For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property or cooperative apartment is located in. (Exhibit 2, 3, 4.)

## CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATMION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANS ACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND WERE MADE BY THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER CERTIFY THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL DOCUMENTS. I FURTHER CERTIFY THAT THE ORIGINAL DOCUMENTS ARE IN MOVANT'S POSSESSION, EXCEPT AS FOLLOWS:

### DECLARATION

I, **Lucy Rexach** OF BAYVIEW LOAN SERVICING, LLC., AS SERVICER FOR THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-14T2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-14T2, HEREBY DECLARE (OR CERTIFY, VERIFY, OR STATE) PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT ~Fort lauderdale~ <CITY/TOWN>, ~FL~ <STATE> ON THIS ~8th~ DAY OF ~may~ <MONTH), 2019 .

NAME: Lucy Rexach
TITLE: Document Coordinator
MOVANT: **Bayview Loan Servicing, LLC.**
STREET ADDRESS: ~1415 W cypress creek RD #200~
CITY, STATE AND ZIP CODE: ~Fort lauderdale, FL 33309~

Prepared by: CHRISTINE M. MOORE

LOAN

# NOTE

MAY 18, 2004                    BAY SHORE                    NEW YORK
[Date]                          [City]                       [State]

77 WESTMINSTER ROAD, GARDEN CITY, NY 11530
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,400,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    FIRST    day of each month beginning on
JULY 01, 2004    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    JUNE 01, 2034    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 8,059.19

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP MORTGAGE FORMS - (800)521-7291

Initials:

-SN(NY) (0005).01 CHL (08/02)(d)          Page 1 of 2          Form 3233 1/01



EXHIBIT 2

LOAN #:

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)   _____ (Seal)
DOROTHY MONTGOMERY        -Borrower        -Borrower

_____ (Seal)   _____ (Seal)
-Borrower                                 -Borrower

*[Sign Original Only]*

SN(NY) (0005).01  CHL (09/02)          Page 2 of 2          Form 3233 1/01

EXHIBIT 2

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY
David A. Spector
Managing Director

EXHIBIT 2



## NASSAU COUNTY CLERK'S OFFICE
### ENDORSEMENT COVER PAGE

Recorded Date: 06-16-2004
Recorded Time: 12:55:23 p

Liber Book: M  26982
Pages From:       821
         To:       835

Control
Number: 3955
Ref #: CV  036179
Doc Type: M01  MORTGAGE

Record and Return To:
COUNTRYWIDE HOME LOANS INC
MS SV-79 DOCUMENT PROCESSING
PO BOX 10423
VAN NUYS, CA  91410-0423

| Location: | Section | Block | Lot | Unit |
|---|---|---|---|---|
| HEMPSTEAD (2820) | 0033 | 00098-00 | 00004 | |
| HEMPSTEAD (2820) | 0033 | 00098-00 | 00005 | |
| HEMPSTEAD (2820) | 0033 | 00098-00 | 00203 | |

Consideration Amount:     1,400,000.00



Taxes Total            13,975.00
Recording Totals           80.00
Total Payment          14,055.00

LM001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
KAREN V. MURPHY
COUNTY CLERK



200406160395S

EXHIBIT 2



After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
CHRISTINE M. MOORE

Section - 33          Title # - 12350
Block - 098          County - Nassau
Lot - 4 - 5 & 203     Town / City - Hempstead

——————————— [Space Above This Line For Recording Data] ———————————

THE JUDICIAL TITLE INSURANCE AGENCY LLC
550 MAMARONECK AVENUE
HARRISON, NY 10528
914-381-6700

[Doc ID #]

# MORTGAGE

MIN

Said premises is or will be
improved by a 1 or 2 family
dwelling only.

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated  MAY 19, 2004          , together with all .
Riders to this document, will be called the "Security Instrument."
(B) "Borrower."

DOROTHY MONTGOMERY

whose address is
77 WESTMINSTER ROAD, GARDEN CITY, NY 11530
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of 300 P.O. i n St., Flint, MI 48501-2026, tel.
(888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.
(D) "Lender."
COUNTRYWIDE HOME LOANS, INC.
will be called "Lender." Lender is a
CORPORATION                                                            which exists
under the laws of NEW YORK                    , Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(E) "Note." The note signed by Borrower and dated  MAY 19, 2004          , will be called the "Note."
The Note shows that I owe Lender
ONE MILLION FOUR HUNDRED THOUSAND and 00/100

Dollars (U.S. $ 1,400,000.00 -        ) plus interest and other amounts that may be payable. I have
promised to pay this debt in Periodic Payments and to pay the debt in full by  JUNE 01, 2034     .

NEW YORK- Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
- Page 1 of 13 -                                              Initials: _D.m._
[MERS] -8A(NY) (0305).04 CHL (10/02).01(d)   VMP MORTGAGE FORMS - (800)521-7291         Form 3033 1/01
CONV/VA



SAID PREMISES IS OR WILL
BE IMPROVED BY A 1 OR 2
FAMILY DWELLING ONLY  EXHIBIT 2

DOC ID #: [redacted]

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."
THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: _____

-6A(NY) (0005).04    CHL (10/02).01    Page 2 of 13    Form 3033 1/01

EXHIBIT 2

DOC ID #:

## DESCRIPTION OF THE PROPERTY
I give Lender rights in the Property described in (A) through (G) below:
(A) The Property which is located at
77 WESTMINSTER ROAD                                                          [Street]
GARDEN CITY                                         [City, Town or Village], New York
11530     [Zip Code]. This Property is in    NASSAU                          County.
It has the following legal description:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.
I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS
I promise and I agree with Lender as follows:
**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.
Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

Initials: DM

-6A(NY) (0005).04    CHL (10/02).01                    Page 3 of 13                    Form 3033 1/01

EXHIBIT 2

DOC ID #: [redacted]

apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Initials: ______

EXHIBIT 2

DOC ID #:

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

Initials: _____

EXHIBIT 2

Prepared by: CHRISTINE M. MOORE

**COUNTRYWIDE HOME LOANS, INC.**

Branch #: 0000277
260 BROADWAY, #203
SARATOGA SPRINGS, NY 12866
Phone: (518)583-9875
Br Fax No.: (518)581-9836

DATE:          05/18/2004
CASE #:
DOC ID #:
BORROWER: DOROTHY MONTGOMERY
PROPERTY ADDRESS: 77 WESTMINSTER ROAD
GARDEN CITY, NY 11530

**LEGAL DESCRIPTION EXHIBIT A**

RECEIVED IN
THIS CONDITION

ALL that certain plot, piece or parcel of land, situate, lying and being in the Incorporated Village of Garden City, County of Nassau and State of New York, known and designated as and by the Lots No. 4 and 5 and the Southerly 60 feet of Lot No. 3 in Block No. 98 as shown on a certain map entitled, "Garden City Estates, Garden City, Nassau County, Long Island, N.Y., Lot Plan, Chase W. Leavitt, Jr. Landscape Engineer, 220 Broadway, N.Y.C." and filed in the Office of the Clerk of the County of Nassau on January 20, 1910 as Map No. 19, bounded and described as follows:

BEGINNING at a point on the Easterly side of Westminster Road distant 390 feet Southerly from the intersection of the Easterly side of Westminster Road with the Southerly side of Stewart Avenue;

RUNNING THENCE South 80 degrees 48 minutes East, 181.22 feet to land now or formerly of St. Pauls School;

THENCE South 9 degrees 6 minutes West along said land 199.60 feet to property of the Long Island Railroad;

THENCE North 80 degrees 48 minutes West along said land of Long Island Railroad, 180.82 feet to the Easterly side of Westminster Road;

THENCE North 8 degrees 59 minutes 30 seconds East along the Easterly side of Westminster Road, 199.60 feet to the point or place of BEGINNING.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)



EXHIBIT 2

DOC ID #: ▮▮▮▮▮▮▮▮▮

amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

Initials: D. M.

▨▨▨ -6A(NY) (0005).04    CHL (10/02).01                    Page 6 of 13                    Form 3033 1/01

EXHIBIT 2.

DOC ID #:

(h) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. Borrower's Loan Application. If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. Lender's Right to Protect Its Rights In The Property. If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Initials:

EXHIBIT 2

DOC ID #: ▮▮▮▮▮▮▮▮▮

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

*Initials:* ▮▮▮.

EXHIBIT 2

DOC ID #:

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _D.M._

EXHIBIT 2

DOC ID #: [barcode]

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Initials: [signature]

EXHIBIT 2

DOC ID #: ▓▓▓▓▓▓▓▓

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**
I also promise and agree with Lender as follows:

22. **Lender's Rights if Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

Initials: _DM_

EXHIBIT 2

DOC ID' #

(3) A date by which I must correct the default. That date will be at least 50 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument, and in any Rider signed by me and recorded with it.

Witnesses:

_____          Dan_____ (Seal) recorded simultaneously
                                                                        -Borrower   herewith.
_____          DOROTHY MONTGOMERY by James L Rohrg Atty in fact
Alan Weaver                        recorded simultaneously herewith.
witness
                                   _____ (Seal)
                                                                        -Borrower

                                   _____ (Seal)
                                                                        -Borrower

                                   _____ (Seal)
                                                                        -Borrower

EXHIBIT 2

STATE OF NEW YORK,

DOC ID #:

Westchester County ss:

On the    18th    day of    May, 2004    before me, the undersigned, a notary
public in and for said state, personally appeared

*James Rohrig*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

MELINDA E. GORDON
Notary Public, State of New York
No. 01GO6018097
Qualified in Bronx County
Commission Expires Sept. 8, 2006

Tax Map Information:

-6A(NY) (0005).04    CHL (10/02).01    Page 13 of 13    Form 3033 1/01

EXHIBIT 2



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 11-08-2012
Recorded Time: 2:25:40 p

Record and Return To:
WEB TITLE AGENCY
500 A CANAL VIEW BLVD
ROCHESTER, NY 14623

Liber Book: M 37918
Pages From: 572
To: 574

Control
Number: 1075
Ref #:
Doc Type: M23  ASSIGN MORTGAGE

Refers to: Book: M 26982 Page: 821

Location:
| | Section | Block | Lot | Unit |
|---|---|---|---|---|
| HEMPSTEAD (2820) | 0033 | 00098-00 | 00004 | |
| HEMPSTEAD (2820) | 0033 | 00098-00 | 00005 | |
| HEMPSTEAD (2820) | 0033 | 00098-00 | 00203 | |

| | | |
|---|---|---|
| Taxes Total | | .00 |
| Recording Totals | | 130.00 |
| Total Payment | | 130.00 |

IJC001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
MAUREEN O'CONNELL
COUNTY CLERK



EXHIBIT 3

Record & Return
Web Title Agency
500-A Canal View Boulevard
Rochester, NY 14623

SECTION:33
BLOCK:98
LOT:4-5 & 203
COUNTY:

P

## CORRECTION ASSIGNMENT OF MORTGAGE

Know that Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Countrywide Home Loans, Inc. ("Assignor"), having a place of business at 1901 East Voorhees Street, Ste. C, Danville, IL 61834, in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration paid by The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificate holders of CWALT, Inc., Alternative Loan Trust 2004-14T2, Mortgage Pass-Through Certificates, Series 2004-14T2, ("Assignee"), having a place of business at One Wall Street, New York, NY 10286, does hereby assign and transfer unto the Assignee the following described Mortgage or Deed of Trust duly recorded in the office of real property records in the County of Nassau, for the premises known as 77 Westminster Road, Garden City, NY 11530, as follows:

MORTGAGOR:      Dorothy Montgomery
MORTGAGEE:      Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Countrywide Home Loans, Inc.
AMOUNT:         1,400,000.00
DATE:           May 18, 2004
RECORDED:       June 16, 2004
LIBER:          26682
PAGE:           821

※ 1901 EAST VOORHEES STREET
SUITE C
DANVILLE, IL 61834

Thereafter, the mortgage was assigned to The Bank of New York as Trustee for the Certificate holders of CWALT, Inc., Alternative Loan Trust 2004-14T2 by an assignment recorded on February 13, 2007 in Liber 31541 at page 63.

*This Correction Assignment of Mortgage corrects the assignment recorded February 13, 2007 in Liber 31541 at page 63 by including the complete assignee information.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

In Witness whereof, the Assignor has hereunto set her/his hand this 27 day of SEPTEMBER, 2012.

IN PRESENCE OF:

Aida Duenas

Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Countrywide Home Loans, Inc.:

BY:
Cecilia Rodriguez
Assistant Secretary

STATE OF CALIFORNIA
COUNTY OF VENTURA

On Sep 27, 2012 before me, S. Groenweld Notary Public, personally appeared Cecilia Rodriguez who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon the behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the Laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature S. Groenweld

S. GROENWALD
COMM 1903744
NOTARY PUBLIC CALIFORNIA
LOS ANGELES COUNTY
My Comm Expires Jun 16, 2014

Our file No.: 01.017844-F01: [Dorothy Montgomery, 77 Westminster Road, Garden City, NY 11530]

EXHIBIT 3



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 11-20-2008          Record and Return To:
Recorded Time: 10:43:34 a

        Liber Book:
        Pages From:
                To:

        Control
        Number:   686
        Ref #: JT08051611
        Doc Type: J02  TRANSCRIPT OF JUDGMENT


Plnt: LVNV FUNDING LLC
Plnt: SEARS
Dfnd: MONTGOMERY, ROBERT


Judgment Amount:              5,343.62







                              Taxes Total            .00
                           Recording Totals        10.00
EAW001                       Total Payment         10.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                       MAUREEN O'CONNELL
                       COUNTY CLERK

200811200068b

EXHIBIT 4

TRANSCRIPT OF JUDGMENT                         Index No./Yr. CIV 24825/08

| Judgment Debtor & Address | Judgment Rendered |
|---|---|
| MONTGOMERY, ROBERT | Date: 09-12-2008 |
|  | First District Court Nassau |
| 77 WESTMINISTER RD | Amount |
| GARDEN CITY NY 11530 |  |
| TRADE OR PROFESSION | Damages $    5,226.42 |
|  | Costs    $      117.20 |
|  | Total    $    5,343.62 |
| Judgment Creditor & Address | Attorney for Judgment Creditor Name & Address |
| LVNV FUNDING LLC | FORSTER & GARBUS, ESQS. |
| A/P/O SEARS |  |
| 15 S MAIN ST, STE 600 | 500 BI COUNTY BLVD |
| GREENVILLE SC 29601 | FARMINGDALE NY 11735 |

| Judgment Docketed | Execution Returned Unsatisfied | When | Satisfied How & To What Extent |
|---|---|---|---|
| Date Rr. & Min. Index # |  |  |  |

REMARKS: Date and manner of change of Status of Judgment

STATE OF NEW YORK }
                  } ss:
COUNTY OF NASSAU }

DISTRICT COURT

FIRST DISTRICT

I, Robert A. Shimonski, Clerk of the District Court of Nassau County, First District, Civil Term, do hereby certify that the above is a correct transcript from the docket of the above Judgment. I further certify that the words "NOT SUMMONED" is written opposite the names of the following defendants

In testimony where of, I have hereunto set my name and affixed my official seal this _____ day of __OCT 2 8 2008____ , 20___.

*Robert a. Shimonski* , Clerk
                        Robert A. Shimonski

EXHIBIT 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

-----------------------------------------------------------------X

In Re:

SEARS HOLDINGS CORPORATION, *et al.*,

Debtors.[1]

-----------------------------------------------------------------X

Case No. 18-23538 (RDD)

Chapter 11

(Jointly Administered)

**<u>ORDER LIFTING THE
AUTOMATIC STAY</u>**

Upon reading the filing the Notice of Motion dated May 13, 2019, the Affirmation of Jenelle

C. Arnold, Esq., dated May 13, 2019 and the exhibits annexed thereto on behalf of Bayview Loan

Servicing, LLC., as servicer for The Bank of New York Mellon fka The Bank of New York as Trustee

for the Certificate holders of CWALT, Inc., Alternative Loan Trust 2004-14T2, Mortgage Pass-

Through Certificates, Series 2004-14T2 ("Creditor"), by it's attorneys Aldridge Pite, LLP, for an

Order pursuant of 11 U.S.C. 362(d)(1) granting relief from the automatic stay to foreclose the

mortgage it holds on the property owned by the Debtor, or their attorneys, and sufficient cause

appearing therefore; it is

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations
LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed
Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn &
Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc.
(7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co.
(6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears
Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services,
Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck
Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC
(None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder
Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839);
Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart
Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings
Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC
(None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC
(None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com
LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate
headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**ORDERED**, that automatic stay is hereby modified pursuant to 11 U.S.C. 362 (d) (1) ,to allow Creditor to foreclose the mortgage it holds on the Property, and it is further,

**ORDERED**, that the 14 day stay imposed by FRBP 4001(a)(3) is hereby waived, and it is further

**ORDERED**, that the Trustee shall retain any and all interest the Debtor's/Debtors' estate may have in any surplus monies from a foreclosure sale of the Real Property; and it is further

**ORDERED**, that upon the commencement of a foreclosure proceeding against the Debtor, the Trustee and his/her counsel shall be served with a copy of the summons and complaint notice of pendency of action; and, it is further

**ORDERED**, that the Trustee be served with a copy of the referee's report of sale within thirty (30) days of the referee's preparation of the report of sale; and, it is further

**ORDERED**, that closure of the case shall not constitute an abandonment of the trustee's interest, if any, in any surplus proceeds.

###

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

-------------------------------------------------------------X

In Re:

SEARS HOLDINGS CORPORATION, *et al.*,

                    Debtors.[1]

-------------------------------------------------------------X

Case No. 18-23538 (RDD)

Chapter 11

(Jointly Administered)

**CERTIFICATE OF SERVICE**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the Notice of Motion, Affidavit In Support of Motion for Relief from Stay, 362 Affidavit, Affidavit of Service, FRCP55 Affidavit, and a Proposed Order Lifting Stay was mailed by U.S. Mail on May 13, 2019 to the parties listed below:

Sears, Roebuck and Co.
3333 Beverly Road
Hoffman Estates, Il 60179

Jacqueline Marcus
Weil Gotshal & Manges, LLP
767 5th Avenue
New York, NY 10153
jacqueline.marcus@weil.com

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Department of Justice
Southern District of New York (White Plains)
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014
USTPRegion02.NYECF@USDOJ.GOV

Respectfully submitted,

/s/ Michael Leewright
By: Michael Leewright
4375 Jutland Drive, Suite 200
San Diego, CA 92177-0933
(858) 750-7600