WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |
| | : | |

------------------------------------------------------------x

**OBJECTION OF DEBTORS TO MOTION FOR RELIEF**
**FROM THE AUTOMATIC STAY FOR THE PURPOSE OF JOINING**
**SEARS HOLDINGS CORPORATION AS A DEFENDANT IN EXISTING**
**LITIGATION PENDING BEFORE THE ONTARIO SUPERIOR COURT**
**OF JUSTICE (COMMERCIAL LIST) AND TO LIQUIDATE CLAIMS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

RELEVANT BACKGROUND ................................................................................................2

THE CCAA PROCEEDINGS ................................................................................................4

THE MOTION SHOULD BE DENIED...................................................................................6

A.    The Canadian Plaintiffs Have Not Demonstrated that the *Sonnax* Factors Support
      Relief From the Stay ..................................................................................................6

      1.    Whether Relief Would Result in Partial or Complete Issue Resolution
            (Factor One) .....................................................................................................9

      2.    Lack of Connection With or Interference with Bankruptcy Case (Factor
            Two)................................................................................................................13

      3.    Whether Other Proceeding Involves Debtor as Fiduciary (Factor Three).............16

      4.    Whether Specialized Tribunal with Necessary Expertise Has Been
            Established to Hear Cause of Action (Factor Four)..............................................16

      5.    Whether Debtor's Insurer Has Assumed Full Defense Responsibility
            (Factor Five)....................................................................................................19

      6.    Whether The Action Primarily Involves Third Parties (Factor Six).....................19

      7.    Whether Litigation in Another Forum Would Prejudice Interests of Other
            Creditors (Factor Seven) .................................................................................20

      8.    Whether Judgment Claim Arising From Other Action is Subject to
            Equitable Subordination (Factor Eight) ............................................................23

      9.    Whether Movant's Success in Other Proceeding Would Result in a Judicial
            Lien Avoidable by Debtor (Factor Nine)...........................................................23

      10.   Interests of Judicial Economy and Expeditious and Economical Resolution
            of Litigation (Factor Ten) ...............................................................................23

      11.   Whether Parties are Ready for Trial in Other Proceeding (Factor Eleven) ...........25

      12.   Impact of Stay on Parties and Balance of Harms (Factor Twelve).......................26

B.    The International Considerations Cited by the Canadian Plaintiffs Are Not
      Applicable Precedent and Do Not Weigh in Favor of Modifying the Stay .....................28

CONCLUSION....................................................................................................................29

# TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*Abrantes Const. Corp. v. U.S. (In re Abrantes Const. Corp.)*,
    132 B.R. 234 (N.D.N.Y. 1991) ...................................................................8

*In re Anton*,
    145 B.R. 767 (Bankr. E.D.N.Y. 1992) ....................................................13

*In re Artisanal 2015, LLC*,
    No. 17-12319, 2017 Bankr. LEXIS 3813 (Bankr. S.D.N.Y. Nov. 3, 2017) ............................8

*In re Bally Total Fitness of Greater New York, Inc.*,
    402 B.R. 616 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ......15, 17, 26, 27

*In re Beck Industries, Inc.*,
    725 F.2d 880 (2d Cir. 1984) ...................................................................10

*In the Matter of the Bohack Corp.*,
    599 F.2d 1160 (2d Cir. 1979) ...................................................................6

*In re Breitburn Energy LP*,
    571 B.R. 59 (Bankr. S.D.N.Y. 2017) ......................................................8, 12, 15, 18

*Burger Boys, Inc. v. South St. Seaport Ltd. P'ship*,
    183 B.R. 682 (Bankr. S.D.N.Y. 1994) .................................................25

*In re Celotex Corp.*,
    140 B.R. 912 (Bankr. M.D. Fla. 1992) .................................................15

*Chimera Capital, L.P. v. Nisselson (In re MarketXT Holdings, Corp.)*,
    428 B.R. 579 (S.D.N.Y. 2010) ...................................................................7

*In re Chittur & Assocs., P.C.*,
    No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968 (S.D.N.Y. Dec. 18,
    2018) ...................................................................8, 11

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l)*,
    28 B.R. 324 (Bankr. S.D.N.Y. 1983) ......................................................19, 20

*In re Congregation Birchos Yosef*,
    535 B.R. 629 (Bankr. S.D.N.Y. 2015) ......................................................6

*In re Consol. Distribs.*,
    2013 Bankr. LEXIS 3101 (Bankr. E.D.N.Y. July 23, 2013) .................................25

WEIL:\97015611\12\73217.0004

*In re Containership Co. (TCC) A/S,*
    466 B.R. 219 (Bankr. S.D.N.Y. 2012) ...........................................................................24, 25

*In re Curtis,*
    40 B.R. 795 (Bankr. D. Utah 1984) .........................................................................14, 16, 18

*In re Cuyahoga Equip. Corp.,*
    980 F.2d 110 (2d Cir. 1992) ..............................................................................................22

*DePippo v. Kmart Corp.,*
    335 B.R. 290 (S.D.N.Y. Nov. 14, 2005) ...........................................................................19

*In re Drexel Burnham Lambert Group Inc.,*
    1990 Bankr. LEXIS 2889 (Bankr. S.D.N.Y. 1990) .......................................................17, 18

*In re Hakim,*
    212 B.R. 632 (Bankr. N.D. Cal. 1997) ..............................................................................28

*In re Hellas Telecomm. (Luxembourg) II SCA,*
    535 B.R. 543 (Bankr. S.D.N.Y. 2015) .................................................................................9

*In re Johns-Manville Corp.,*
    68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987),
    *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) .........................11

*In re Keene Corp.,*
    162 B.R. 935 (Bankr. S.D.N.Y. 1994) ...............................................................................11

*In re Larkham,*
    31 B.R. 273 (Bankr. D. Vt. 1983) .......................................................................................7

*Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.),*
    No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 8, 2010) .................................8, 21

*In re Lehman Bros. Holdings Inc.,*
    Case No. 08-13555 (SCC) (Bankr. S.D.N.Y. Apr. 13, 2017) ................................................11

*In re Leibowitz,*
    147 B.R. 341 (Bankr. S.D.N.Y. 1992) .............................................................................8, 21

*In re MarketXT Holdings Corp.,*
    No. 04-12078 (ALG), 2009 Bankr. LEXIS 1897 (Bankr. S.D.N.Y. July 20,
    2009) ................................................................................................................................16

*In re Mazzeo,*
    167 F.3d 139 (2d Cir. 1999) ................................................................................................8

iii

*In re Metcalfe & Mansfield Alt. Invs.*,
   421 B.R. 685 (Bankr. S.D.N.Y. 2010) .................................................................28

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
   474 U.S. 494 (1986) ................................................................................................6

*In re Mildred Deli Grocery, Inc.*,
   No. 18-10077 (MG), 2018 Bankr. LEXIS 546 (Bankr. S.D.N.Y. Feb. 28,
   2018) .............................................................................................................22, 25

*In re Motors Liquidation Co.*,
   10 Civ. 36 (RJH), 2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010) ...........................15

*In re Motors Liquidation Co.*,
   No. 09-50026, 2012 WL 10864205 (Bankr. S.D.N.Y. Aug. 6, 2012), *aff'd sub
   nom. Shah v. Motors Liquidation Co. GUC Tr.*, No. 12 CIV. 8783 (JPO), 2013
   WL 12085091 (S.D.N.Y. June 3, 2013), *aff'd sub nom. In re Motors
   Liquidation Co.*, 566 F. App'x 87 (2d Cir. 2014) ...............................................10

*Musso v. Hirsch (In re Hirsch)*,
   2011 U.S. Dist. LEXIS 111561 (E.D.N.Y. Sept. 29, 2011)..................................19

*In re N.Y. Med. Grp., P.C.*,
   265 B.R. 408 (Bankr. S.D.N.Y. 2001) .....................................................................9

*In re Octaviar Admin. Pty Ltd*,
   511 B.R. 361 (Bankr. S.D.N.Y. 2014) ..................................................................28

*In re Project Orange Assocs., LLC*,
   432 B.R. 89 (Bankr. S.D.N.Y. 2010) .....................................................................23

*In re RCM Global Long Term Capital Appreciation Fund, Ltd.*,
   200 B.R. 514 (Bankr. S.D.N.Y. 1996) .....................................................................8

*In re Residential Capital, LLC*,
   501 B.R. 624 (Bankr. S.D.N.Y. 2013) ...............................................................8, 21

*In re Residential Capital, LLC*,
   No. 12-12020 (MG), 2012 Bankr. LEXIS 3777 (Bankr. S.D.N.Y. Aug. 16,
   2012) .............................................................................................................15, 16

*In re Residential Capital, LLC*,
   No. 12-12020 (MG), 2012 Bankr. LEXIS 3726 (Bankr. S.D.N.Y. Aug. 14,
   2012) .............................................................................................................12, 21

*In re Residential Capital, LLC*,
   No. 12-12020 (MG), 2012 Bankr. LEXIS 3624 (Bankr. S.D.N.Y. Aug. 7,
   2012) .......................................................................................................17, 19, 24

iv

*Seward v. Devine*,
    888 F.2d 957 (2d Cir. 1989)............................................................................28

*In re Sino-Forest Corp.*,
    501 B.R. 655 (Bankr. S.D.N.Y. 2013) ...........................................................28

*Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
    907 F.2d 1280 (2d Cir. 1990)...................................................................... *passim*

*In re SquareTwo Fin. Servs. Corp..,*
    No. 17-10659 (JLG), 2017 Bankr. LEXIS 2570 (Bankr. S.D.N.Y. Sep. 11,
    2017) ....................................................................................................16, 19, 21

*In re SunEdison, Inc.*,
    557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016).......................................12, 14, 15, 27

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
    803 F.2d 61 (2d Cir. 1986)...............................................................................6

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
    216 F.Supp.2d 198 (S.D.N.Y. 2002).................................................................28

*In re Worldcom, Inc.*,
    No. 02-13533, 2007 WL 841948 (Bankr. S.D.N.Y. Mar. 12, 2007) ......................26

*In re WorldCom, Inc.*,
    No. 05 Civ. 5704, 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug. 4, 2006) ...........17

## STATUTES

11 U.S.C. § 105............................................................................................15

11 U.S.C. § 362............................................................................................15

11 U.S.C. § 362(d) .........................................................................................7

11 U.S.C. § 362(d)(1) ..................................................................................6, 8

11 U.S.C. § 362(g)(1) ......................................................................................8

11 U.S.C. § 1107(a) .........................................................................................2

11 U.S.C. § 1108 .............................................................................................2

Companies' Creditors Arrangement Act .........................................................1, 3, 4, 6

**OTHER AUTHORITIES**

Federal Rules of Bankruptcy Procedure Rule 1015(b) ....................................................................2

*Superior Court of Justice: About the Court*,
http://www.ontariocourts.ca/scj/about/ (last visited May 1, 2019).........................................17

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation ("**Sears Holdings**") and certain of its affiliates, as debtors and

debtors in possession in the above-captioned chapter 11 cases (the "**Debtors**") submit this joint

objection (the "**Objection**") in response to the *Motion for Relief from the Automatic Stay for the*

*Purpose of Joining Sears Holdings Corporation as a Defendant in Existing Litigation Pending*

*Before the Ontario Superior Court of Justice (Commercial List) and to Liquidate Certain Claims*

*Against Sears Holdings Corporation in Such Existing Litigation* (ECF No. 3237) (the "**Motion**"),

filed by FTI Consulting Canada Inc., in its capacity as the court-appointed monitor (the

"**Monitor**") for Sears Canada Inc. and certain of its affiliates (collectively, the "**Canadian**

**Debtors**"), the Honourable J. Douglas Cunningham, Q.C., in his capacity as the court-appointed

litigation trustee for the Canadian Debtors (the "**Litigation Trustee**"), Morneau Shepell Ltd., in

its capacity as administrator (the "**Plan Administrator**") of the Sears Canada Inc. Registered

Pension Plan, and 1291079 Ontario Limited as the class representative for the potential class of

Sears Hometown Dealer stores (the "**Class Action Representative**," and, collectively with the

Monitor, the Litigation Trustee, and the Plan Administrator, the "**Canadian Plaintiffs**"). In

support of the Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Canadian Plaintiffs have been embroiled in litigation in Canada relating to the

insolvency proceedings commenced on June 22, 2017 by the Canadian Debtors under the

Companies' Creditors Arrangement Act (the "**CCAA**"), in the Ontario Superior Court of Justice

(the "**Canadian Court**," and the proceedings, the "**CCAA Proceedings**"), including the Canadian

Class Action (as defined below), commenced on October 21, 2015, and three other actions

commenced on December 19, 2018.   Sears Holdings has not been named in any of these

proceedings other than the Canadian Class Action, which has been stayed by agreement as to Sears Holdings. The Canadian Court has set the various cases for trial next year and established a discovery and hearing schedule. And now, the Canadian Plaintiffs seek to join Sears Holdings as a defendant in the Canadian proceedings.

2.       The Debtors oppose the requested relief. The Canadian Plaintiffs have failed to demonstrate that the relief they seek is necessary or appropriate under the governing law in this jurisdiction. On the one hand, they contend that the focus of their claims in the Canadian litigation is on third parties' conduct and, therefore, relief is appropriate. At the same time, in an attempt to satisfy the statutory standards for relief, the Canadian Plaintiffs opportunistically claim that relief from the stay is necessary to avoid substantial prejudice to them. Those two arguments are inconsistent with one another and, therefore, do not support the requested relief. The Court should deny the Motion and require that the claims of the Canadian Plaintiffs be liquidated in this Court.

## RELEVANT BACKGROUND

3.       Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.       On October 24, 2018, the United States Trustee for Region 2 appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

5.       The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

WEIL:\97015611\12\73217.0004

6.      Prior to 2012, Sears Holdings indirectly owned 95.5% of Sears Canada Inc. ("**Sears Canada**") through certain of its subsidiaries, with the remaining 4.5% of Sears Canada stock traded on the Toronto Stock Exchange.  In November of 2012, Sears Holdings spun off 44.5% of Sears Canada shares to Sears Holdings' shareholders (the "**2012 Sears Canada Spin-Off**"), leaving Sears Holdings with a 51% stake in Sears Canada.  In November of 2014, Sears Holdings spun off most of its remaining stake in Sears Canada to shareholders of Sears Holdings in a rights offering, leaving Sears Holdings with an approximately 12% stake in Sears Canada.

7.      The Debtors and Transform Holdco LLC ("**Transform**") entered into an asset purchase agreement, dated as of January 17, 2019 (as amended, the "**Asset Purchase Agreement**") for the sale of substantially all of the Debtors' assets (the "**Sale Transaction**").

8.      On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507).  The Sale Transaction closed on February 11, 2019.

9.      The Canadian Debtors, at the direction of the Monitor, proposed a Joint Plan of Compromise and Arrangement in the CCAA Proceedings on February 15, 2019.  Sears Holdings is a creditor of the Canadian Debtors in the CCAA Proceedings.

10.      On April 17, 2019, the Debtors filed the *Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 3275) (the "**Plan**"), and the *Disclosure Statement for Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 3276).

3

11.    On April 18, 2019, the Debtors, acting at the direction of the Restructuring Sub-Committee of the Restructuring Committee of the Board of Directors of Sears Holdings, filed an adversary complaint against certain defendants, including former directors of the Debtors (ECF No. 3278) (the "**Adversary Proceeding**"), asserting claims for constructive and actual fraudulent conveyances as well as for breaches of fiduciary duty.

12.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

## THE CCAA PROCEEDINGS

13.    The CCAA Proceedings include litigation against certain parties relating to dividends declared and paid by Sears Canada in 2013 (the "**2013 Dividend**"), when it was a subsidiary of Sears Holdings, and efforts by the creditors of Sears Canada to recover these dividends (the "**Dividend Litigation**").    The four (4) separate proceedings comprising the Dividend Litigation have been brought by: (i) the Monitor, (ii) the Litigation Trustee, (iii) the Plan Administrator, and (iv) the Class Action Representative.

14.    Currently, Sears Holdings is a named defendant only in the action brought by the Class Action Representative (the "**Canadian Class Action**"), and a consensual stay is in place for Sears Holdings with regard to that action.    The Canadian Class Action was commenced on October 21, 2015, well before the commencement of the Debtors' chapter 11 cases.    The actions commenced by the Monitor, the Litigation Trustee, and the Plan Administrator were all actions brought in the CCAA Proceedings after the Commencement Date, on December 19, 2018.

15.    The actions comprising the Dividend Litigation assert claims based on the 2013 Dividend against defendants (other than Sears Holdings) including Edward S. Lampert, ESL

4

Investments Inc., ESL Partners, LP, SPE I Partners, LP, SPE Master I, LP, ESL Institutional Partners, LP (collectively, "**ESL**"), and certain former directors of Sears Canada (together with ESL, the "**Dividend Litigation Defendants**").   The essence of such claims is that the 2013 Dividend constituted a transaction at undervalue under Canadian law (the Canadian equivalent of a fraudulent conveyance) or a breach of fiduciary duty by the directors of Sears Canada.

16.     The four proceedings are pending before the same Justice and are expected to be litigated together.  Discovery for the Dividend Litigation has been ongoing.  The parties to the Dividend Litigation have been directed to complete their production of documents by June 30, 2019, oral examinations tentatively are scheduled for September 2019, and a joint trial currently is scheduled to begin on February 3, 2020.  Because Sears Holdings is not named in three of the actions, and because the Class Action is stayed with respect to it, Sears Holdings has not participated in any discovery or motion practice in the Dividend Litigation to date.

17.     Recently, the Canadian Plaintiffs requested the Debtors' consent to lift the automatic stay, so that Sears Holdings could be named in the other three actions and so that the consensual stay with respect to the Canadian Class Action could end.  The Debtors and the Creditors' Committee declined to agree to lift the stay.

18.     Each of the Canadian Plaintiffs has submitted proofs of claim against Sears Holdings (collectively, the "**Proofs of Claim**") on account of its alleged liability arising from the claims asserted in the Dividend Litigation.  A schedule setting forth the claim numbers and amount of the Proofs of Claim is annexed hereto as **Exhibit A**.

19.     In the Motion, the Canadian Plaintiffs seek modification of the automatic stay to (1) join Sears Holdings as a defendant in each action comprising the Dividend Litigation in which Sears Holdings is not currently a named defendant, (2) allow the Dividend Litigation to be

prosecuted in the CCAA Proceedings with Sears Holdings as a defendant, and (3) allow the Canadian Court to determine the amounts of the Canadian Plaintiffs' claims against Sears Holdings or, effectively, to liquidate the Proofs of Claim.  Motion ¶ 32.

20.    The Debtors respectfully request that the Motion be denied.

## THE MOTION SHOULD BE DENIED

### A.    The Canadian Plaintiffs Have Not Demonstrated that the *Sonnax* Factors Support Relief From the Stay

21.    Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause . . . ."  11 U.S.C. § 362(d)(1). Courts have noted that the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws."  *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 502 (1986).  The stay is "designed to give the debtor time to organize its affairs—which includes protection from having to defend claims brought against the estate." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *see also In re Congregation Birchos Yosef*, 535 B.R. 629, 633 (Bankr. S.D.N.Y. 2015) (The automatic stay "serves not only the debtor, but also the debtor's creditors in the collective context of the case by ensuring the orderly determination of the debtor's liabilities, realization on the estate's assets, and allocation of that value to creditors and interest holders according to the Bankruptcy Code's priority scheme and policy of equality of distribution.  In a context where every dollar counts, the automatic stay prevents unilateral races to dismember the debtor and actions outside the bankruptcy court's supervision with their attendant diversion of resources and impairment of the debtor's value.") (citation omitted). One of the primary forms of protection that the stay provides is preventing a debtor from being forced to litigate multiple claims in multiple forums. *See In the*

6

*Matter of the Bohack Corp.*, 599 F.2d 1160, 1167 (2d Cir. 1979); *In re Larkham*, 31 B.R. 273, 276

(Bankr. D. Vt. 1983). Because "cause" is not defined by section 362(d), the decision whether to

modify the stay is left to the discretion of the bankruptcy court. *Chimera Capital, L.P. v. Nisselson*

*(In re MarketXT Holdings, Corp.)*, 428 B.R. 579, 584 (S.D.N.Y. 2010).

22.    In the Second Circuit, courts weigh twelve factors, known as the "*Sonnax* factors,"

in determining whether the automatic stay should be lifted. *See Sonnax Indus., Inc. v. Tri-*

*Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990). The *Sonnax*

factors are:

1.  whether relief would result in partial or complete issue resolution;

2.  lack of connection with or interference with bankruptcy case;

3.  whether the other proceeding involves debtor as fiduciary;

4.  whether a specialized tribunal with necessary expertise has been established to hear cause of action;

5.  whether debtor's insurer has assumed full defense responsibility;

6.  whether the action primarily involves third parties;

7.  whether litigation in another forum would prejudice interests of other creditors;

8.  whether judgment claim arising from other action is subject to equitable subordination;

9.  whether movant's success in other proceeding would result in a judicial lien avoidable by debtor;

10. interests of judicial economy and expeditious and economical resolution of litigation;

11. whether parties are ready for trial in other proceeding; and

12. the impact of stay on parties and balance of harms.

*Id.*

7

23.     Not all of the factors will be relevant in a given case, and the Court may disregard irrelevant factors.  *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999).  Additionally, courts need not assign equal weight to each factor, and have discretion to weigh the factors against one another.  *See In re Artisanal 2015, LLC*, No. 17-12319, 2017 Bankr. LEXIS 3813, at *46 (Bankr. S.D.N.Y. Nov. 3, 2017); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

24.     In applying the *Sonnax* factors, "[t]he burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in property,' 11 U.S.C. § 362(g)(1).  If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285; *see also In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *5-6 (S.D.N.Y. Dec. 18, 2018); *Abrantes Const. Corp. v. U.S. (In re Abrantes Const. Corp.)*, 132 B.R. 234, 247 (N.D.N.Y. 1991).

25.     Furthermore, "[t]he burden on the movant seeking relief from the automatic stay to prosecute an unsecured claim is especially heavy. "[T]he general rule is that <u>claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established</u> to justify such relief," lest the unsecured creditor receive a distributive advantage contrary to the principle of equality of distribution." *In re Breitburn Energy LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017) (emphasis added) (citing *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); *accord Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 8, 2010); *In re Residential Capital, LLC*, 501 B.R. 624, 643-44 (Bankr. S.D.N.Y. 2013)).

8

26.     Here, the Canadian Plaintiffs have failed to satisfy their burden to make an initial showing of "cause." In addition, the balance of factors weighs against granting relief from the automatic stay. For these and other reasons set forth below, the Motion should be denied, and the automatic stay should remain in place with respect to the Dividend Litigation.

1.     **Whether Relief Would Result in Partial or Complete Issue Resolution (Factor One)**

27.     The Canadian Plaintiffs assert that the first *Sonnax* factor favors lifting the stay because, they argue, the Dividend Litigation asserts claims under Canadian law and the Canadian Court is the only forum where the liability of all of the parties can be completely determined. Motion ¶¶ 36-37.

28.     The cases cited by the Canadian Plaintiffs do not support their assertion that the first *Sonnax* factor supports their request. *In re N.Y. Med. Grp., P.C.*, 265 B.R. 408 (Bankr. S.D.N.Y. 2001) dealt with a non-core personal injury claim, and the court determined that it lacked jurisdiction to liquidate the claim. *In re Hellas Telecomm. (Luxembourg) II SCA*, 535 B.R. 543 (Bankr. S.D.N.Y. 2015) is inapposite, because it involves *forum non conveniens* and does not address the automatic stay at all.

29.     In any event, allowing the Canadian Plaintiffs to prosecute their claims against Sears Holdings in the Dividend Litigation will not obviate all consideration of issues relating to the 2013 Dividend. The Adversary Proceeding pending in this Court includes as defendants some of the Dividend Litigation Defendants. While the claims in the Adversary Proceeding and the Dividend Litigation arise from different events, the factual allegations in the Dividend Litigation involve the same time period and many of the same parties, and the complaint in the Adversary Proceeding alleges that Mr. Lampert and the other defendants in that proceeding engaged in activity to denude Sears Holdings and its affiliates of assets, including in connection with the 2012

9

Sears Canada Spin-Off. The Dividend Litigation will not resolve the claims in the Adversary Proceeding, which will need to be resolved in this jurisdiction.

30.     In addition, among the claims asserted in the Dividend Litigation is a claim for litigation costs and punitive and exemplary damages. *See, e.g.,* the Litigation Trustee's *Amended Statement of Claim.*[1]  Whether or to what extent the Canadian Plaintiffs should be allowed any punitive damages is ultimately a question for *this* Court to consider. *See, e.g., In re Beck Industries, Inc.*, 725 F.2d 880, 892 (2d Cir. 1984) (finding that "[a] bankruptcy judge should be alert to maintain his power to protect the estate against extravagant punitive damages claims against a trustee" and holding that it was an abuse of discretion for bankruptcy court to enter an order that would require the Chapter X trustee to take a step that would facilitate award of punitive damages by a California court).

31.     Bankruptcy Courts in the United States generally disallow or subordinate punitive damage claims on the basis that the policy underlying such awards, particularly the deterrent effect, does not apply in bankruptcy cases because innocent third party creditors of the debtor's estate, rather than the debtor, would be hurt if claims for punitive damages are allowed. *In re Motors Liquidation Co.*, No. 09-50026, 2012 WL 10864205, at *11 (Bankr. S.D.N.Y. Aug. 6, 2012) (finding that "Disallowance… is particularly appropriate in a liquidating case, including a liquidating chapter 11 case, where there is no future conduct to deter; the people guilty of the misconduct would not be punished for it; and the victims of the punitive damages would in reality be only other, wholly innocent, creditors."), *aff'd sub nom. Shah v. Motors Liquidation Co. GUC Tr.*, No. 12 CIV. 8783 (JPO), 2013 WL 12085091 (S.D.N.Y. June 3, 2013), *aff'd sub nom. In re*

---

[1] The Canadian Plaintiffs' statements of claim are attached to the *Declaration of Steven Bissell in Support of Motion for Relief from the Automatic Stay*, filed on April 16, 2019 (ECF No. 3242).

10

*Motors Liquidation Co.*, 566 F. App'x 87 (2d Cir. 2014); *In re Johns-Manville Corp.*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986) (finding that "recovery of punitive damages . . . would . . . risk the depletion of [an asbestos trust's] assets" to the benefit of some claimants but at the expense of other claimants, and holding that such a result "is inequitable on its face."), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); *In re Keene Corp.,* 162 B.R. 935, 947 (Bankr. S.D.N.Y. 1994) (finding that "a Bankruptcy Court can subordinate, disallow or limit punitive damage claims.") (internal citation omitted); Transcript of Record at 15, *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (SCC) (Bankr. S.D.N.Y. Apr. 13, 2017) (ECF No. 55175)[2] (finding that "[t]he disallowance of punitive damages in a liquidating chapter 11 case is in accord with bankruptcy case law in this District and is appropriate in this case.").

32.    Thus, even if the Court were to grant the Motion, it would still have to familiarize itself with the facts and the legal theories asserted in the Dividend Litigation to determine whether any punitive damages granted by the Canadian Court should be allowed.

33.    Because this Court will ultimately have to decide whether punitive damages are allowable, full resolution of the Dividend Litigation cannot be obtained from the Canadian Court if its judgment includes an award of such damages.

34.    Finally, even if the Dividend Litigation *could* have resolved all issues related to the 2013 Dividend, courts have ruled that satisfaction of the first *Sonnax* factor is an insufficient basis upon which to grant relief from the stay when complete resolution of a matter would come at a substantial cost, or may take a long time.  *See Chittur & Assocs.*, 2018 U.S. Dist. LEXIS 213968, at *7 (affirming a bankruptcy court decision denying relief from the stay, and finding that while

---

[2] A copy of the Transcript of Record is attached hereto as **Exhibit B**.

modification of the automatic stay may well resolve the matter, it would do so at a substantial cost, and would be subject to a bankruptcy plan of distribution, and found that "[g]iven the state of assets of the Debtor, the litigation in the district court could well be academic."); *In re SunEdison, Inc.*, 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) ("The one factor weighing in favor of granting the Motion is that it will completely resolve the issues between the Debtors and Vivint (Factor # 1). But even then, final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan. In any event, the balance of the *Sonnax* factors militates against granting stay relief."); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3726, at *18 (Bankr. S.D.N.Y. Aug. 14, 2012) ("[w]hile relief may eventually result in partial or complete resolution of the issue at hand, the resolution may not be immediate…. Motion practice…, discovery, trial preparation and, absent a settlement, trial all remain to be done. Therefore, the first *Sonnax* Factor weighs against lifting the stay.").

35.     As in the foregoing cases, permitting the Dividend Litigation to proceed against Sears Holdings would be at significant cost to the Debtors' estates, and would serve to deplete the amounts available to all creditors. At this stage of the Debtors' chapter 11 cases, the Debtors cannot make a reasonable business judgment regarding the expenses that should be incurred in defending the Dividend Litigation, because they are not in a position to estimate the recovery available to holders of general unsecured claims. In contrast, if the stay remains in place, the Proofs of Claim would be dealt with as part of the normal claims reconciliation process, and the Debtors, after consultation with the Creditors' Committee, would be in a better position to make a reasoned decision regarding the allocation of resources to dispute such claims. *See Breitburn Energy*, 571 B.R. at 68 (finding that "[f]orcing the Debtors to bear the costs and disruptions involved in liquidating these unsecured claims before knowing what distribution will be made to

WEIL:\97015611\12\73217.0004

unsecured creditors unnecessarily interferes with the bankruptcy cases and prejudices the unsecured creditors.").

36.     Accordingly, application of the first *Sonnax* factor weighs against granting the relief sought in the Motion.

### 2.    Lack of Connection With or Interference with Bankruptcy Case (Factor Two)

37.     The Canadian Plaintiffs argue that the second *Sonnax* factor supports modification of the stay here because the Debtors have sold substantially all of their assets, and there is no reasonable likelihood that distributions would be delayed to stakeholders.  Motion ¶¶ 38-39.  In addition, the Canadian Plaintiffs argue that incurrence of costs by the Debtors' estates does not constitute interference in the context of the *Sonnax* analysis.  Motion ¶ 40.  In the case cited by the Canadian Plaintiffs, *In re Anton*, 145 B.R. 767 (Bankr. E.D.N.Y. 1992), the Court noted that it was not clear whether the litigation against the debtor would be necessarily chargeable to the debtor's estate.  Furthermore, the creditors' committee in that case did not oppose lifting the stay.  *Id*. at 770-771.

38.     The sale of the Debtors' assets to Transform is not relevant to the Motion nor to the factors that the Court should consider.  While it is true that the Debtors have no continuing business to operate, the Debtors' chapter 11 cases are ongoing.  Moreover, in seeking to have the Canadian Court liquidate the amounts of their claims, the Canadian Plaintiffs are seeking to usurp one of the quintessential roles of this Court – the liquidation and allowance of claims.  To divest the Court of its core jurisdiction in the manner suggested by the Motion and permit the Canadian Plaintiffs to circumvent the claims reconciliation process in this Court requires a substantial showing of cause – one that the Canadian Plaintiffs have failed to make.

13

39.    Lifting the automatic stay to allow the Dividend Litigation to proceed in Canada while the Debtors are working towards confirming the Plan and litigating the Adversary Proceeding, will interfere with the chapter 11 cases by requiring the Debtors to devote substantial time, energy, and resources to litigating the Dividend Litigation.    Indeed, "[e]ven slight interference with the administration [of a chapter 11 case] may be enough to preclude relief in the absence of a commensurate benefit."   *In re Curtis, 40 B.R. 795*, 806 (Bankr. D. Utah 1984); *see also SunEdison,* 557 B.R. at 308 ("Prosecution of the Merger Litigation at this time will interfere substantially with the progress of the bankruptcy case, (Factor # 2), and prejudice the interests of the other creditors, (Factor # 7), by diverting the Debtors' resources and personnel at a critical time in the case.").

40.    The Canadian Plaintiffs offer no support for their assertion that joining Sears Holdings as a defendant to the Dividend Litigation would be more cost effective for the Debtors. Motion ¶ 40.  In reality, granting relief from the stay to the Canadian Plaintiffs would force Sears Holdings, which to-date has yet to be materially involved in the Dividend Litigation, to appear in the Canadian Court and incur the additional (and unnecessary) costs and expenses attendant to its litigation defense.  To defend itself in the Canadian Court, Sears Holdings would need to, among other things, meaningfully engage in discovery efforts, shepherd witnesses to and from Canada, and divide its attention between advancing the restructuring process in the United States and defending the Dividend Litigation.  On the other hand, the Debtors understand that under Canadian law, if the Debtors are *not* named in the Dividend Litigation, or if the Dividend Litigation is stayed as against them, their obligations to participate in discovery, and the Canadian Plaintiffs' right to seek to compel Sears Holdings to produce information or witnesses, will be much more limited.

WEIL:\97015611\12\73217.0004

41.     Moreover, lifting the automatic stay to allow the Dividend Litigation to proceed in pursuit of a prepetition claim may open the floodgates for numerous other prepetition creditors to seek similar relief against the Debtors.  *See, e.g.*, *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying a motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case"), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *see also SunEdison*, 557 B.R. at 308-09 (finding that granting relief from the stay "may encourage other claimants to file their own stay relief motions,"  and that "[t]he Debtors would then have to expend resources to object to those motions in this Court and, if unsuccessful, devote further resources to litigating those claims."); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3777, at *7 (Bankr. S.D.N.Y. Aug. 16, 2012); *In re Motors Liquidation Co.*, 10 Civ. 36 (RJH), 2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010) (noting that potential for opening floodgates to "other litigants with garden variety claims" is "the very state of affairs the automatic stay was enacted to prevent"); *In re Celotex Corp.*, 140 B.R. 912, 916 (Bankr. M.D. Fla. 1992) (maintaining stay imposed pursuant to sections 362 and 105 of the Bankruptcy Code where relief would result in an "avalanche of litigation").

42.     Furthermore, the additional burden on the Debtors' estates from litigating the Dividend Litigation will diminish the recoveries available to all of the Debtors' creditors and force the Debtors to spend those funds litigating, before the Plan is confirmed, and before it is known what distribution will be made to unsecured creditors.  *See Breitburn Energy*, 571 B.R. at 68 ("Forcing the Debtors to bear the costs and disruptions involved in liquidating these unsecured claims before knowing what distribution will be made to unsecured creditors unnecessarily

15

interferes with the bankruptcy cases and prejudices the unsecured creditors. (*Sonnax* Factors ## 2, 5, 7.).").

43.    For the reasons stated above, the second *Sonnax* factor weighs against granting the relief sought in the Motion.

### 3.    Whether Other Proceeding Involves Debtor as Fiduciary (Factor Three)

44.    The third *Sonnax* factor addresses whether the other proceeding involves Sears Holdings as a fiduciary. "[G]enerally, proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *In re Curtis*, 40 B.R. at 799 (internal citation omitted); *In re SquareTwo Fin. Servs. Corp*., No. 17-10659 (JLG), 2017 Bankr. LEXIS 2570, at *23 n.11 (Bankr. S.D.N.Y. Sep. 11, 2017); *Residential Capital,* 2012 Bankr. LEXIS 3777, at *8 (finding that without an evidentiary showing that the respondent was acting as a fiduciary, "the third *Sonnax* Factor weighs against lifting the stay.").  The Dividend Litigation does not involve claims against Sears Holdings in a fiduciary capacity.  Consequently, the third *Sonnax* factor weighs in favor of continuing the automatic stay.

### 4.    Whether Specialized Tribunal with Necessary Expertise Has Been Established to Hear Cause of Action (Factor Four)

45.    As authority for their contention that the fourth *Sonnax* factor supports relief from the stay, the Canadian Plaintiffs point to the fact that Canadian law will govern the claims asserted against Sears Holdings.  Motion ¶ 44.

46.    But that is not the test under the fourth factor.  Courts generally find that a specialized tribunal is one with specialized knowledge of the specialized issues presented by the litigation.  *See, e.g*., *In re MarketXT Holdings Corp.,* No. 04-12078 (ALG), 2009 Bankr. LEXIS 1897, at *12 (Bankr. S.D.N.Y. July 20, 2009) (finding that the National Association of Securities

WEIL:\97015611\12\73217.0004

Dealers is a specialized tribunal with expertise to adjudicate the relevant securities dispute); *In re Drexel Burnham Lambert Group Inc.*, 1990 Bankr. LEXIS 2889, at * 35 (Bankr. S.D.N.Y. 1990) (referring to the New York Stock Exchange's Hearing Panel as a specialized tribunal with respect to disciplinary proceedings for violation of New York Stock Exchange rules). No such specialized tribunal exists with respect to the claims asserted in the Dividend Litigation. Rather, the Canadian Court exercises general jurisdiction over cases involving, among other things, criminal, civil, and family law cases.[3] The Canadian Court is not the type of "specialized tribunal" envisioned by *Sonnax*.

47.    Perhaps it is not surprising that the Canadian Plaintiffs again rely on case law regarding the legal doctrine of *forum non conveniens*, *see* Motion ¶¶ 41-44, instead of jurisprudence regarding stay relief, because the stay relief cases make it clear that applicability of the law of another jurisdiction does not satisfy the fourth *Sonnax* factor. Indeed, in *In re WorldCom, Inc.*, No. 05 Civ. 5704, 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug. 4, 2006), the Southern District of New York affirmed the bankruptcy court's holding that a California state court was not a "specialized tribunal" for purposes of application of the fourth *Sonnax* factor. *Worldcom*, 2006 U.S. Dist. LEXIS 55284 at 31-32 (also noting that "[b]ankruptcy courts are often called upon to apply state laws in resolving claims against the estate."); *see also, In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3624, at *15 (Bankr. S.D.N.Y. Aug. 7, 2012) (finding that "[t]his Court can and does interpret and apply state law to resolve claims through the bankruptcy process"); *Bally Total Fitness*, 402 B.R. at 624 ("[t]his Court has significant experience in applying state law …."). Likewise, a Canadian Court should not be considered a specialized

---

[3] *Superior Court of Justice: About the Court*, http://www.ontariocourts.ca/scj/about/ (last visited May 1, 2019).

17

tribunal.   Nevertheless, the Canadian Plaintiffs readily admit that "this Court is, of course, capable of applying foreign law." Motion ¶ 4.[4]

48.      Furthermore, even when courts find there is a specialized tribunal, they may afford the other *Sonnax* factors greater weight.  *Cf. Drexel Burnham*, 1990 Bankr. LEXIS 2889, at * 35, n. 34 (denying relief from the automatic stay and finding that if "it were not for the other counter-balancing *Curtis* factors, the presence of a specialized tribunal would have been determinative of this proceeding."[5]).

49.      The Proofs of Claim relating to the Dividend Litigation are no exception – this Court has both the authority and the expertise to adjudicate and render judgment on such claims. Where the legal issues in question are of the type ordinarily heard before a bankruptcy court, there is no need to refer the issues to a foreign jurisdiction.  *See Curtis*, 40 B.R. at 805 ("Movants' complaint alleges causes of action for fraud, negligent misrepresentation and breach of contract. These matters do not involve unsettled questions of state law, nor do they require adjudication before a specialized tribunal.  Rather, they are matters routinely heard in the bankruptcy court.").

50.      Given the jurisdiction of this Court and the fact that no specialized tribunal has been established to hear the Claims, the fourth *Sonnax* factor also weighs in favor of denying relief from the automatic stay.

---

[4] In *Breitburn*, the court found that where a decision would require interpretation of *unsettled* state law questions, the fourth *Sonnax* factor may weigh in favor of deferring to the state court. *Breitburn Energy*, 571 B.R. at 68.  However, the Canadian Plaintiffs have not asserted that the Dividend Litigation involves any such unsettled questions of Canadian law.

[5] "*Curtis*" here refers to the case *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984), which listed the twelve factors adopted by the Second Circuit in *Sonnax*, 907 F.2d at 1286, that became known as the *Sonnax* factors.

### 5.    Whether Debtor's Insurer Has Assumed Full Defense Responsibility (Factor Five)

51.    No insurance coverage is available to cover the Debtors' defense costs or the amount of any judgment in the Dividend Litigation.  As a result, the Debtors will have to bear the expense of defending the Dividend Litigation and the Debtors' estates will bear the costs associated with any judgment.  In similar circumstances, courts have consistently found that the fifth *Sonnax* factor supports denial of relief from the stay.  *See SquareTwo Fin. Servs.*, 2017 Bankr. LEXIS 2570, at *18 ("Because no insurer has assumed responsibility for defending [the action], application of the fifth *Sonnax* Factor cuts against granting [relief from the automatic stay]."); *Residential Capital, LLC*, 2012 Bankr. LEXIS 3624, at *16 ("The fifth *Sonnax* Factor weighs in favor of denying relief from the automatic stay because any damages awarded . . . would be paid directly by the Debtor Defendants."); *see also DePippo v. Kmart Corp.*, 335 B.R. 290, 298 (S.D.N.Y. Nov. 14, 2005) (noting the general rule that a reorganized debtor paying for litigation costs "is contrary to the fresh start policy of the Bankruptcy Code").

52.    The fifth *Sonnax* factor, which the Canadian Plaintiffs don't even address in the Motion, weighs against granting the Motion.

### 6.    Whether The Action Primarily Involves Third Parties (Factor Six)

53.    The bankruptcy court in *SquareTwo Fin. Servs.* addressed the import of this factor and held that "Factor #6 will weigh in favor of granting stay relief where "the debtor functions only as a bailee or conduit for the goods or proceeds in question," and when the action is probably "unconnected" to the bankruptcy and "unlikely to frustrate fair and expeditious distribution of the bankruptcy estate."" *SquareTwo Fin. Servs.*, 2017 Bankr. LEXIS 2570, at *23 n.11 (*citing Musso v. Hirsch (In re Hirsch)*, 2011 U.S. Dist. LEXIS 111561, at *37 (E.D.N.Y. Sept. 29, 2011) (citing *City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983))).

19

54.      In the instant case, Sears Holdings is not functioning merely as a bailee or conduit. And, while the Canadian Plaintiffs may be correct that Sears Holdings is not the primary target of their litigation, *see* Motion ¶ 45, they once again fail to grasp the meaning of this *Sonnax* factor and its relevance to the current dispute.

55.      The Canadian Plaintiffs' actions in this Court reflect that, if added to the Dividend Litigation, Sears Holdings would have a significant economic stake in that litigation. The Proofs of Claim filed by the Canadian Plaintiffs in these cases, in amounts ranging between approximately $62 million and approximately $390 million, indicate that Sears Holdings is a substantial target in the Dividend Litigation.  As such, it would be required to participate actively in the Dividend Litigation in order to avoid facing a potentially large adverse judgment.

56.      Lifting the automatic stay to allow the Dividend Litigation to proceed against Sears Holdings will, as discussed above, directly impact the Debtors' chapter 11 cases because the Debtors would be required to divert their attention from the current proceedings and incur the expenses of litigation, and any claims determined by the Canadian Court would participate in distributions to be made under the Plan.  *See Mego Int'l*, 28 B.R. at 326 (denying motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate, suggesting that continuance of the [automatic] stay was proper.").

57.      Accordingly, the sixth *Sonnax* factor weighs in favor of the Debtors and the relief requested in the Motion should be denied.

**7.      Whether Litigation in Another Forum Would Prejudice Interests of Other Creditors (Factor Seven)**

58.      The Canadian Plaintiffs assert that, rather than being harmed by the relief requested in the Motion, the Debtors' creditors will "modestly benefit" by the resolution of the Dividend

20

Litigation in the Canadian Court because, according to the Canadian Plaintiffs, litigating the issues in Canada would be more cost effective.  Motion ¶¶ 48-49.

59.    Significantly, the Debtors have concluded to the contrary – that relief from the stay would prejudice other creditors.  The mere allegation to the contrary by the Canadian Plaintiffs, which are obviously self-interested, is not enough to overcome the judgment of the Debtors, who are charged with representing the interests of all stakeholders.  *SquareTwo Fin. Servs.*, 2017 Bankr. LEXIS 2570, at *18 ("[I]n applying Factor #7, the Court will consider the interests of both other creditors and the [] Debtors.").  Unlike in these chapter 11 cases, where the creditors of Sears Holdings will have the opportunity to participate in the Debtors' claims reconciliation process, including resolution of the Proofs of Claims, if the stay is lifted the Debtors' creditors will not be able to participate in the Dividend Litigation, through the Creditors' Committee or otherwise, and would therefore be prejudiced.

60.    The Canadian Plaintiffs argue that the cost of litigation, in itself, does not constitute great prejudice to creditors that would justify denial of relief from stay.  Motion ¶ 49.  However, claims pool dilution is in fact a relevant concern associated with the seventh *Sonnax* factor.  As noted by several courts in the Second Circuit, "[i]f the movant is an unsecured creditor, the policies of the automatic stay weigh against [lifting the automatic stay]."  *Residential Capital*, 501 B.R. at 643; *Residential Capital,* 2012 Bankr. LEXIS 3726, at *22 ("[a]llowing [movant] to bring his damages claims now, in a different forum, would be unfair to other creditors…. Any litigation costs would diminish the bankruptcy estate…. The seventh *Sonnax* Factor thus weighs against relief from stay."); *see also, Leibowitz*, 147 B.R. at 345; *Motors Liquidation*, 2010 WL 4966018, at *4.  If the Movants were to prevail in the Canadian Litigation, they would, at best, receive a monetary judgment based on transactions that took place more than five years prior to the

21

Commencement Date, which would give rise to substantial unsecured claims against the Debtors' estates.

61.    Moreover, requiring the Debtors to defend the Dividend Litigation in Canada would upset the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992). The disruption, delay and expense attendant to litigating the Dividend Litigation would effectively be borne by all of the Debtors' other creditors.

62.    While it is true that in *In re Mildred Deli Grocery, Inc*., No. 18-10077 (MG), 2018 Bankr. LEXIS 546, at *11-12 (Bankr. S.D.N.Y. Feb. 28, 2018) the court did note that the prejudice to the debtor is not as significant when the movant only seeks to determine the amount of its claim, the *primary* reasons the court granted relief from the stay were that the Court had found that the litigation at issue was the principal reason for the bankruptcy filing, the parties were ready for trial, and all discovery and the majority of pre-trial motions completed. *Id*. at *10-11. None of these conditions is present with respect to the Dividend Litigation.

63.    As stated above, if relief from the automatic stay were granted at this time, the Debtors would have to decide whether to allocate resources to defend the Dividend Litigation before they have determined whether such defense is worthwhile. *Supra* ¶ 40. Even if the Court is inclined to grant the Canadian Plaintiffs relief from the automatic stay at some point, any such relief should be deferred until the Debtors, with input from the Creditors' Committee, are better able to assess the benefits to the Debtors and their other creditors of vigorously defending and participating in the Dividend Litigation.

64.    The seventh *Sonnax* factor, therefore, leads to the conclusion that relief from the stay should be denied.

8. **Whether Judgment Claim Arising From Other Action is Subject to Equitable Subordination (Factor Eight)**

65.     The Canadian Plaintiffs state the eight *Sonnax* factor weighs in favor of lifting the stay because liquidation of the Dividend Litigation as against Sears Holdings will not result in a subordinated claim.

66.     The Debtors believe this factor is inapplicable.  However, even if it were, this factor should not be given any significant weight.  *In re Project Orange Assocs., LLC*, 432 B.R. 89, 109 (Bankr. S.D.N.Y. 2010) (finding that because neither the eighth nor ninth *Sonnax* factor weighs strongly in favor of lifting the automatic stay "the Court need not consider them equally with the other factors and does not find them dispositive in its determination that the stay should be lifted").

9. **Whether Movant's Success in Other Proceeding Would Result in a Judicial Lien Avoidable by Debtor (Factor Nine)**

67.     The Canadian Plaintiffs state that to the extent this factor is relevant, it weighs in favor of lifting the stay, because liquidating the Dividend Litigation as against Sears Holdings would not result in a judicial lien.

68.     The Debtors believe this factor is inapplicable.  However, even if it were, this factor should not be given any significant weight.  *Supra* ¶ 67.

10. **Interests of Judicial Economy and Expeditious and Economical Resolution of Litigation (Factor Ten)**

69.     The Canadian Plaintiffs assert that the relief requested in the Motion is the only way to avoid duplicative litigation.  Motion ¶ 52.  They also assert that there are no circumstances where both the Dividend Litigation and the Proofs of Claim would be resolved in this Court.  *Id.,* ¶53.

70.     In this case, given the existence of the Adversary Proceeding, lifting the stay may well eliminate the need for duplicative litigation for the Canadian Plaintiffs, but it will not avoid

23

duplicative litigation for the *Debtors*. Although the transactions at issue in the Dividend Litigation and the Adversary Proceeding differ, the plaintiffs in both proceedings allege that certain defendants sought to hinder, delay, or defraud creditors, and made efforts during the same time period to siphon assets from Sears Holdings and its subsidiaries for the benefit of ESL and other shareholders. And those allegations will, undoubtedly, be litigated in this jurisdiction, as the Adversary Proceeding unfolds. The time and cost of duplicative litigation, therefore, will be minimized if the relief requested in the Motion is denied, and the Canadian Plaintiffs' Proofs of Claim are liquidated by this Court in accordance with the Debtors' claims procedures.

71.     In contrast, if the Motion is granted, the same issue of duplicative proceedings will continue to exist, except that the Debtors will be at a disadvantage, since they will have to litigate in Canada, and the Adversary Proceeding will continue to proceed in this jurisdiction. Unlike the Canadian Court, however, this Court has the ability to decide all issues related to the Debtors in one forum. *See In re Containership Co. (TCC) A/S*, 466 B.R. 219, 232 (Bankr. S.D.N.Y. 2012) (finding that Factor 10 favored the debtor in a chapter 15 case where a specialized tribunal had no jurisdiction to hear certain claims, and multiple proceedings would be necessary whether or not the stay was lifted, and only the Bankruptcy Court had the authority to consolidate the actions).

72.     Evaluating the particular facts and circumstances of these chapter 11 cases, it is clear that the interests of judicial economy and the expeditious and economical resolution of the Proofs of Claim are best served by maintaining the stay. In large, complex chapter 11 cases, such as the one currently before the Court, the interests of judicial economy and economical resolution of litigation are best served by resolving all claims against a debtor through the uniform bankruptcy process. *Residential Capital, LLC*, 2012 Bankr. LEXIS 3624, at *18-19. The Court should reject the Canadian Plaintiffs' attempts to circumvent this process.

24

### 11.    Whether Parties are Ready for Trial in Other Proceeding (Factor Eleven)

73.    The eleventh *Sonnax* factor asks whether the parties are ready for trial. *See Containership*, 466 B.R. at 233.  The Canadian Plaintiffs ignore that, and instead focus on the fact that a timetable for the Dividend Litigation has been scheduled by the Canadian Court.  Notably, that schedule was established by the Canadian Court without any participation by Sears Holdings. The Canadian litigation has just progressed beyond the pleadings stage.  While there have been some preliminary motions, documentary production issues remain outstanding, and oral examinations for discovery are currently scheduled for this fall.  A trial is not schedule to begin until early next year at the earliest.

74.    The actions commenced by the Monitor, the Litigation Trustee and the Plan Administrator were all commenced fewer than six months ago.  The Dividend Litigation is in its infancy and Sears Holdings has not participated at all in the litigation.  In the typical case in which relief from the stay is granted based on the eleventh *Sonnax* factor, the debtor has been a party to prepetition litigation, and the court is faced with deciding whether stay relief should be granted so that the pre-petition litigation, which already is well underway, can conclude.  *See, e.g.*, *Mildred Deli,* 2018 Bankr. LEXIS 546, at *10 (finding that the eleventh factor weighed in favor of the movant because "all discovery and the majority of pre-trial motions have been completed"); *In re Consol. Distribs.*, 2013 Bankr. LEXIS 3101, at *36 (Bankr. E.D.N.Y. July 23, 2013) (finding that the eleventh *Sonnax* factor weighed in favor of granting relief from the automatic stay because "[t]he District Court Action has been pending for two years and was trial-ready prior to the Debtor's bankruptcy filing"); *Burger Boys, Inc. v. South St. Seaport Ltd. P'ship*, 183 B.R. 682, 688 (Bankr. S.D.N.Y. 1994) (finding that the eleventh *Sonnax* factor weighed in favor of granting relief from the automatic stay because the debtor "filed its Chapter 11 petition on the eve of trial").

75.     In the instant case, however, not only is Sears Holdings not a named defendant in three of the four matters, but those litigations themselves have not proceeded to an advanced stage. The parties are certainly not ready for trial, as discovery has not even been completed. *See Bally Total Fitness*, 402 B.R. at 624 (denying stay relief where the parties had not started conducting extensive discovery and were not ready for trial); *In re Worldcom, Inc.*, No. 02-13533, 2007 WL 841948, at *8 (Bankr. S.D.N.Y. Mar. 12, 2007) ("[U]pon a showing that the parties are not ready for trial . . . the Court finds that [the] *Sonnax* [Factor] weighs in favor of the Debtors.").

76.     Although the Movants contend that substantial progress has been made in the Dividend Litigation, Motion ¶ 55, that is not true with respect to Sears Holdings. Accordingly, the eleventh *Sonnax* factor weighs against granting the relief requested in the Motion.

**12.    Impact of Stay on Parties and Balance of Harms (Factor Twelve)**

77.     The Canadian Plaintiffs argue that the harms that they will suffer as a result of enforcing the stay outweigh those to the Debtors and their creditors if the stay were modified as requested in the Motion. Motion ¶¶ 56-57. At the same time, however, the Canadian Plaintiffs acknowledge that the claims against Sears Holdings are not primarily the focus of the Dividend Litigation. Motion ¶ 45. While, therefore, there would appear to be no material harm in proceeding with the Dividend Litigation without Sears Holdings as a party, the Canadian Plaintiffs conveniently ignore the prejudices that would be imposed on the Debtors and their other creditors if the Motion is granted.

78.     The Debtors have filed the Plan, and expect to have a confirmation hearing on that Plan in July of this year. The Debtors expect that the liquidating trust to be established under the Plan will be handling the claims reconciliation process. The Canadian Plaintiffs have not demonstrated how they would be prejudiced by waiting for liquidation of their claims in the chapter 11 cases or that they would be more prejudiced than any other potential creditor by waiting

26

for the normal claims reconciliation process. *See, e.g., Bally Total Fitness*, 402 B.R. at 624

("Whether awarded such claims sooner rather than later, they are no more prejudiced than any

other potential creditor by what the Debtors anticipate will only be a short-term delay until a plan

of reorganization is confirmed."); *SunEdison*, 557 B.R. at 309 ("[P]ostponing the liquidation of

[movant's] claims will not adversely affect [movant].  The claim will be paid, if at all, under a

confirmed plan.  Furthermore, although the claim is large, the plan will pay it in "bankruptcy

dollars," and the terms of a plan will indicate the true worth of the claim to the parties who must

spend real dollars to litigate it.").

79.     At this juncture of these chapter 11 cases, permitting Sears Holdings to be joined

in the Canadian Litigation would distract the Debtors from their efforts to confirm a chapter 11

plan and deprive the Debtors of the "breathing space" afforded to them under the Bankruptcy

Code.  The Debtors would suffer clear harm if the automatic stay were lifted, primarily because

the Debtors would be required to use limited estate resources to defend the Dividend Litigation, at

the same time as they are pursuing the Adversary Proceeding in this Court and working to confirm

the Plan.  In addition, allowing the relief sought in the Motion could set a dangerous precedent and

impose substantial hardship on the Debtors by encouraging countless other claimants to file their

own stay relief motions, forcing the Debtors to expend the limited resources of the estate to address

such claims across multiple venues.  *See SunEdison*, 557 B.R. at 308.  All of this will negatively

affect the Debtors, their estates and all other creditors in these chapter 11 cases.

80.     The harm to the Debtors and their creditors outweighs the harms cited by the

Canadian Plaintiffs.  Therefore, the twelfth *Sonnax* factor weighs against granting relief from the

automatic stay.

81.     Based on the balancing of the *Sonnax* factors, the Canadian Plaintiffs have failed to establish a showing of "cause" sufficient to lift the automatic stay.

**B.      The International Considerations Cited by the Canadian Plaintiffs Are Not Applicable Precedent and Do Not Weigh in Favor of Modifying the Stay**

82.     The Canadian Plaintiffs assert that certain courts rely on other factors to determine whether the automatic stay should be lifted.   Motion ¶ 58.   They rely on one case from the Bankruptcy Court for the Northern District of California, *In re Hakim*, 212 B.R. 632 (Bankr. N.D. Cal. 1997), which references the factors that court has considered when determining whether the automatic stay should be modified in the international context.   No such factors have been considered by courts in the Second Circuit, which instead rely on the *Sonnax* factors described above.

83.     The other cases cited by the Canadian Plaintiffs with respect to so-called international cases range from decisions involving legal doctrines such as *forum non conveniens* and recognition of foreign proceedings under chapter 15 of the Bankruptcy Code, among others.[6] This approach and the cases cited are neither apposite nor precedential in this Court with respect to a request for modification of the automatic stay and, therefore, are not relevant in determining whether the Canadian Plaintiffs are entitled to relief from the automatic stay.

---

[6] *See Seward v. Devine*, 888 F.2d 957 (2d Cir. 1989) (dealing with dismissal of contract claims on the basis of forum selection clauses and standing to pursue the claims brought by the plaintiffs); *In re Octaviar Admin. Pty Ltd*, 511 B.R. 361 (Bankr. S.D.N.Y. 2014) (granting recognition to an Australian voluntary administration proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code); *In re Sino-Forest Corp.*, 501 B.R. 655 (Bankr. S.D.N.Y. 2013) (granting comity to a Canadian court order approving a third-party non-debtor release in a chapter 15 case); *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010) (recognizing the debtors' case as a foreign main proceeding and granting comity to Canadian court orders); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198 (S.D.N.Y. 2002) (addressing a motion to dismiss for lack of personal jurisdiction, *forum non conveniens*, failure to state a claim, and piercing the corporate veil).

28

## **CONCLUSION**

84.     For the foregoing reasons, the Canadian Plaintiffs have not established that cause

exists for relief from the automatic stay and the Motion should be denied.

Dated: May 14, 2019
       New York, New York

/s/ Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**EXHIBIT A**

**Canadian Plaintiffs' Proofs of Claim Against Sears Holdings Corporation**

| Claimant Name | Claim Number | Date of Filing | Claim Amount |
|---|---|---|---|
| Monitor | 16269 | April 9, 2019 | $392,565,170.00* |
| Litigation Trustee | 16809 | April 9, 2019 | $392,565,170.00* |
| Plan Administrator | 16293 | April 9, 2019 | $200,524,449 |
| Class Action Representative | 17179 | April 10, 2019 | $61,699,830.40* |

*The claim was filed in an amount "not less than" the listed claim amount.

WEIL:\97015611\12\73217.0004

**EXHIBIT B**

**<u>Lehman Transcript</u>**

WEIL:\97015611\12\73217.0004

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-13555-scc

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   LEHMAN BROTHERS HOLDINGS INC.,

8            Debtor.

9   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11               U.S. Bankruptcy Court

12               One Bowling Green

13               New York, NY  10004

14

15               April 13, 2017

16               3:02 PM

17

18

19

20

21   B E F O R E :

22   HON SHELLEY C. CHAPMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  JONATHAN

1    Hearing re:   Bench Decision re: The Plan Administrator's

2    Supplemental Objection to the Four Hundred Thirty-First

3    Omnibus Objection to Claims (Reduce and Allow Claims) [ECF

4    No. 50054]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

Page 3

```
 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES LLP

 4        Attorneys for Lehman Brothers, Debtors

 5        767 5th Avenue

 6        New York, NY 10153

 7

 8   BY:  LORI F. FIFE (TELEPHONICALLY)

 9        JACKIE MARCUS

10

11   SCHILLER, KNAPP, LEFKOWITZ & HERTZEL, LLP

12        California Employment Counsel for the Plan

13        Administrator

14        950 New Loudon Road, Suite 109

15        Latham,  NY  12110

16

17   RANDY STROSS - Attorney for the Claimant

18

19

20

21

22

23

24

25
```

1                P R O C E E D I N G S

2              THE COURT:  Hello, good afternoon.  Are folks on

3        the line?

4              MR. STROSS:  Good afternoon, Your Honor, Randy

5        Stross for the Claimant.

6              THE COURT:  All right, thank you.  Is anyone from

7        Weil on the line?

8              MR. STROSS:  Your Honor, the Court Solution

9        Dashboard indicated there is a Mr. Fail on the listen-only.

10             THE COURT:  Okay.  Should we unblock--yeah, we're

11       going to unmute the line.  Okay.  Is anyone there from Weil?

12       Our dashboard indicates that there's a live line at Weil.

13       Can someone from Weil respond?  All right, if you would just

14       give us a minute, we're going to reach out to Weil and see

15       what the problem is.

16             MR. STROSS:  Okay.

17             (Recess)

18             THE COURT:  Try it again, is anyone from Weil on

19       the line?  Who just joined the call, please?

20             MS. MARCUS:  Hi, Your Honor, it's Jackie Marcus

21       from Weil.  I'm terribly sorry.  We were on, and I couldn't

22       understand why you couldn't hear me, and then we realized we

23       were on listen-only.  We apologize for the inconvenience.

24             THE COURT:  Okay, we were just looking at our

25       screen, and it was showing that you were on a live line.  So

1   in any event, we're all here, and just let me go ahead and

2   read this relatively short bench decision.  For anyone

3   unfamiliar with this type of procedure, what I'll do is I'll

4   read a decision into the record, and afterwards as the

5   parties to defat and file a short order reflecting the

6   decision, which incorporates by record, the transcript.

7   Someone will have to order a transcript.  A copy of it

8   should be made available to us, so we can make any

9   corrections that we think ought to be made.  And that will

10  form the basis of the decision.  So this is a bench decision

11  with respect the Plan Administrator's 431st Omnibus

12  Objection to Claims.  Before the Court is the Plan

13  Administrator's 431st Omnibus Objection to Claims (Reduce

14  and Allow Claims) (the "Objection") -- who just joined,

15  please?

16          WOMAN 1:  This is Lisa (indiscernible) and Nathan

17  (indiscernible).

18          THE COURT:  I'm sorry, who do you represent?

19          MAN:  We're California employment counsel for the

20  Plan Administrator.

21          THE COURT:  Okay, thank you.  Continuing, then.

22  By the Objection, the Plan Administrator seeks to disallow

23  certain damages asserted in the proofs of claim filed

24  against BNC Mortgage Inc. ("BNC") by claimants Sylvia Vega-

25  Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James,

Page 6

1    Isabel Guajardo, and Coleen Denise Colombo (collectively,

2    the "Claimants").  Specifically, the Plan Administrator

3    requests an order disallowing (i) damages for defamation;

4    (ii) compensatory damages for the period subsequent to

5    October 22, 2007; and (iii) punitive damages.  On September

6    17, 2013, the Claimants filed a response to the Objection at

7    ECF No. 40127.  Thereafter, BNC and the Claimants

8    participated in three mediations in San Francisco,

9    California.  All three mediations concluded at an impasse.

10             On June 22, 2015, the Plan Administrator filed a

11   supplemental objection (ECF No. 50054).  The Claimants filed

12   an opposition to the Supplemental Objection (ECF No. 50457)

13   and the Plan Administrator subsequently filed a reply (ECF

14   No. 50497).  A hearing was held on August 4, 2015 (a

15   transcript of which is available at ECF No. 51194).  The

16   parties have, since then, exchanged a series of letters, in

17   which the parties advised the Court, in substance, that

18   further attempts at settlement have been unsuccessful and

19   requested that the Court issue a ruling on the Objection and

20   the Supplemental Objection.

21             The Claimants' proofs of claim (collectively, the

22   "Claims") are based on a November 7, 2005 complaint

23   (hereinafter the "Complaint") filed by the Claimants against

24   BNC in the Superior Court of the State of California.

25   Although the Complaint sets forth nine causes of action and

Page 7

1    requests both compensatory and punitive damages, the Plan

2    Administrator, at this juncture, seeks to reduce or disallow

3    only a portion of the Claims.

4            Pursuant to the Order Pursuant to Section 105 of

5    the Bankruptcy Code, Bankruptcy Rule 9014, and General Order

6    M-390 Authorizing the Debtors to Implement Claims Hearing

7    Procedures and Alternative Dispute Resolution Procedures for

8    Claims Against Debtors (ECF No. 8474) entered in these

9    Chapter 11 cases, the standard of review to be applied at a

10   non-evidentiary hearing addressing the legal sufficiency of

11   a particular contested claim and whether the contested claim

12   states a claim, under Bankruptcy Rule 7012, is equivalent to

13   the standard applied by the Court upon a motion to dismiss

14   for failure to state a claim.  A motion to dismiss pursuant

15   to Rule 12(b)(6) of the Federal Rules of Civil Procedure

16   requires a Court to treat all allegations in the complaint

17   as true and draw all reasonable inferences in favor of the

18   nonmoving party.  Moreover, the plaintiff is required to set

19   forth "enough facts to state a claim to relief that is

20   plausible on its face."  Bell Atlantic Corporation v.

21   Twombly, 550 U.S. 544, 570 (2007).  In addition to assuming

22   the facts in a well-pleaded complaint to be true, it is well

23   settled that the Court may also rely upon any information of

24   which the Court can take judicial notice.

25           I, Claimants Have Failed to State a Claim for

Page 8

1    Defamation.

2            Among other things, the Claims seek damages based

3    on a claim for defamation against BNC.  In order to state a

4    claim for defamation under California law, a plaintiff must

5    allege "the intentional publication of a statement of fact

6    that is false, unprivileged, and has a natural tendency to

7    injure or which causes special damage."  Smith v. Maldonado,

8    72 Cal. App. 4th 637, 645 (1999), as modified (June 23,

9    1999).  "[A]lthough a plaintiff need not plead the allegedly

10   defamatory statement verbatim, the allegedly defamatory

11   statement must be specifically identified, and the plaintiff

12   must plead the substance of the statement."  Jacobson v.

13   Schwarzenegger, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004).

14   "Even under liberal federal pleading standards, general

15   allegations of the defamatory statements which do not

16   identify the substance of what was said are insufficient."

17   Id.

18            Neither party disputes that California law

19   requires that the substance of the allegedly defamatory

20   statement be pled in order to sufficiently state a claim for

21   defamation.  As alleged in Paragraph 147 of the Complaint,

22   for example, the Claimants assert that "BNC employees

23   including but not limited to Sacramento branch supervising

24   account manager, Linda Harris and branch managers defendant

25   Nick Murphy and defendant Joe Pennington recklessly and

Page 9

1   intentionally published false information to others

2   disparaging plaintiffs Coleen Colombo, Isabel Guajardo,

3   Linda Howard-James, Cheryl McNeil, Sylvia Vega-Sutfin and on

4   information and belief Michelle Seymour's work performance

5   and abilities."

6          The Plan Administrator argues that the allegation

7   in Paragraph 147 of the Complaint does not adequately state

8   the substance of the allegedly defamatory statements because

9   it does not allege when such statements were made, the

10  circumstances in which they were made, or what was allegedly

11  said.  See Supplemental Objection, at Paragraphs 17-18.  The

12  Claimants, on the other hand, contend that the allegation in

13  paragraph 147 is sufficient to properly plead a cause of

14  action for defamation under California law.  The Claimants

15  assert that the allegedly false statements that were made

16  by, among others, Linda Harris, Nick Murphy, and Joe

17  Pennington about the Claimants' "work performance and

18  abilities" constitute the substance of the allegedly

19  defamatory statements.

20         The Court agrees with the Plan Administrator.  The

21  allegation in the Complaint, including in Paragraph 147 of

22  the Complaint are vague and general; they do not

23  sufficiently identify the substance of the allegedly

24  defamatory statements.  Although the Claimants assert that

25  false statements were made concerning the Claimants' work

Page 10

1    performance and abilities, virtually no information has been

2    provided concerning what was said about the Claimants' work

3    performance and abilities.  The Claimants need not plead the

4    defamatory statements verbatim; however, a sentence merely

5    stating that false statements were made concerning "work

6    performance and abilities" does not meet the standard for

7    stating a defamation claim under California law.

8    Accordingly, if the Claimants wish to pursue their

9    defamation claim, they must amend the Claims to plead the

10   substance of any allegedly defamatory statements made.

11           II, Claimants are Precluded from Recovering Lost

12   Wages from BNC For the Period After October 22, 2007.

13           In the Complaint, the Claimants assert that they

14   resigned from BNC in 2005 due to the defendants' alleged

15   retaliation and harassment.  See, e.g., Complaint, at

16   Paragraphs 35, 47, 59, 68, 77, and 92.  As a result, the

17   Claimants seek certain economic damages, including back pay,

18   front pay, and benefits.  See, e.g., Complaint, at Page 24.

19   The Plan Administrator, in an attempt to limit such damages,

20   contends that the Claimants should be precluded from

21   recovering lost wages for the time period beyond BNC's

22   closure in October 2007.  In support of this argument, the

23   Plan Administrator points to certain documents that evidence

24   BNC's closure.

25           Moreover, the Plan Administrator requests that the

Page 11

1    Court take judicial notice of BNC's announcement of its

2    closure in August 2007 and its ultimate closing on October

3    22, 2007.  According to the Plan Administrator, BNC issued a

4    WARN notice on August 22, 2007, which stated that BNC

5    intended to cease operations at all of its U.S.  locations

6    and terminate all employees on October 22, 2007.

7    Supplemental Objection at Exhibit A.  The Plan Administrator

8    also directs the Court to LBHI's Securities and Exchange

9    Commission Form 10-K for the fiscal year ended November 30,

10   2007, which refers to the closing of BNC.  Id. at Exhibit B.

11   Pursuant to Rule 201 of the Federal Rules of Evidence, a

12   court may take judicial notice of an adjudicative fact that

13   is "not subject to reasonable dispute" because it is either

14   (i) generally known within the trial court's territorial

15   jurisdiction; or (ii) can be accurately and readily

16   determined from sources whose accuracy cannot reasonably be

17   questioned.  See Federal Rule of Evidence 201(a) and 201(b).

18   Court will take judicial notice that BNC's ultimate closure

19   occurred on October 22, 2007, based on the WARN notice and

20   LBHI's Form 10-K attached to the Supplemental Objection,

21   both of which are sources whose accuracy, in this context,

22   cannot reasonably be questioned.

23        The Plan Administrator argues that the Claimants'

24   employment would have been terminated on October 2007 with

25   the rest of BNC's workforce.  Thus, even if the Claimants

Page 12

1   were able to establish BNC's liability, the Plan

2   Administrator contends that any compensatory damages would

3   be limited to the period between the date of the Claimants'

4   resignation and the closing of BNC on October 22, 2007.  See

5   Supplemental Objection, at Paragraph 20.  The Claimants

6   argue that the issue of economic damages is an issue for a

7   jury to determine under California law after assessing all

8   of the evidence.  See Opposition, at 8.  In addition, the

9   Claimants contend that they have an independent theory of

10  recovery for lost earning capacity and that such theory is

11  not impacted by BNC's closure because impairment of the

12  capacity to work can be viewed as an injury or loss separate

13  from an actual loss of earnings.  Id.

14          The Court agrees with the Plan Administrator that,

15  as a matter of law, lost wages are precluded once an

16  employer goes out of business.  See Slack v. Havens, 522

17  F.2d 1091, 1095 (9th Cir.  1975) (remanding to the district

18  court for the purpose of recalculating the back pay due

19  plaintiffs to reflect only the period before the employer

20  dissolved and transferred its assets); Herring v. Fry's Food

21  & Drug Store, 1992 U.S. Dist. LEXIS 2994, at *13-14 (N.D.

22  Cal. Feb 18, 1992) (granting summary adjudication in a Title

23  VII case with respect to a claim for back pay after the

24  employer sold off its operating assets); Priest v. Rotary,

25  634 F. Supp.  571, 580 (N.D. Cal. 1986) (concluding as a

Page 13

1    matter of law in a Title VII case that an employee's

2    entitlement to back pay terminated when the employer was

3    sold).  Based on such case law, it is clear that the

4    Claimants are precluded from seeking lost wages after BNC's

5    closure on October 22, 2007.  Although the Claimants attempt

6    to distinguish the cited cases by noting that they arose

7    under Title VII and not California's Fair Employment and

8    Housing Act ("FEHA"), California courts look to Title VII

9    decisional law in certain circumstances in order to

10   interpret FEHA.  See e.g., Lyle v. Warner Bros. Television

11   Productions, 38 Cal. 4th 264, 279-280 (2006) (noting that

12   California courts frequently seek guidance from Title VII

13   decisions when interpreting FEHA and its prohibitions

14   against sexual harassment).

15        Although the Claimants are precluded from

16   obtaining lost wages from BNC after October 22, 2007, the

17   Claimants are not precluded from seeking damages suffered on

18   account of alleged loss of earning capacity.  As stated in

19   Rodriguez v. McDonnell Douglas Corporation, "loss of earning

20   power is an element of general damages which can be inferred

21   from the nature of the injury, without proof of actual

22   earnings or income either before or after the injury, and

23   damages in this respect are awarded for the loss of ability

24   thereafter to earn money."  87 Cal. App. 3d 626, 656 (Ct.

25   App. 1978), disapproved of on other grounds by Coito v.

Page 14

1    Superior Court, 54 Cal. 4th 480 (2012).

2         Claimants cite to two paragraphs of the Complaint

3    to support the assertion that they are entitled to damages

4    for lost earning capacity:  (i) Paragraph 107 of the

5    Complaint states that the Claimants suffered severe

6    emotional distress as a result of harassment by the

7    defendants; and (ii) Paragraph 152 of the Complaint states

8    that the Claimants have suffered "injury to their personal,

9    business and professional reputations" as well as "severe

10   emotional distress" as a result of the defendants'

11   defamatory statements.  While such paragraphs address

12   separate torts for which the Claimants may seek damages

13   (intentional infliction of emotional distress and

14   defamation), neither paragraph pleads a claim for loss of

15   earning capacity.  Accordingly, if the Claimants wish to

16   pursue such a claim, they must amend the Claims in order to

17   plead the basis of any claim for lost earning capacity.

18        III. Claimants' Claims for Punitive Damages are

19   Disallowed Pursuant to § 105 of the Bankruptcy Code

20        The Claimants seek punitive damages for the

21   majority of the causes of action they assert against BNC.

22   See e.g., Complaint, at Paragraphs 108, 120, 126, 133, 145,

23   153, and 160.  The Plan Administrator requests that the

24   Court disallow the Claimants' claims for punitive damages

25   pursuant to section 105 of the Bankruptcy Code, arguing that

Page 15

1    the purpose of punitive damages would not be served because

2    the instant case is a liquidating Chapter 11 case and thus,

3    the goals of punitive damages are inapplicable.  The

4    Claimants, on the other hand, contend, among other things,

5    that although Section 105 of the Bankruptcy Code vests

6    bankruptcy courts with equitable powers, exercise of such

7    powers should be applied with extreme circumspection.

8    Opposition, at 13.

9          It is generally accepted that the goals of

10   punitive damages are deterrence and punishment.  The United

11   States Supreme Court has recognized that punitive damages

12   may be no greater than "reasonably necessary" to achieve the

13   goals that justify the imposition of the sanction.  BMW of

14   North America, Inc. v. Gore, 517 U.S. 559, 568 (1996).

15         In accordance with the clear guidance of the

16   Supreme Court, Claimants' claims for punitive damages shall

17   be disallowed.  The disallowance of punitive damages in a

18   liquidating chapter 11 case is in accord with bankruptcy

19   case law in this District and is appropriate in this case.

20   As Judge Gerber stated in In re Motors Liquidation Company,

21   2012 Bankr. LEXIS 6258, *35 (Bankr. S.D.N.Y. Aug. 6, 2012),

22   in the context of employment discrimination claims,

23   "[d]isallowance of punitive damage claims is particularly

24   appropriate in a liquidating case, including a liquidating

25   Chapter 11 case, where there is no future conduct to

1   deter[.]" Judge Gerber went on to note that "in a bankruptcy

2   setting where the recovery of punitive damages by some

3   creditors depletes recovery of other creditors, Courts have

4   regularly exercised their equitable power to disallow or

5   subordinate punitive damage claims."  Id.  In the seminal

6   case of In re Johns-Manville Corporation, 68 B.R. 618, 627-

7   28 (Bankr. S.D.N.Y. 1986), Judge Lifland denied a request

8   for the award of punitive damages, holding that the recovery

9   of punitive damages would deplete the asbestos health trust

10  at the expense of future asbestos victims rather than

11  achieve the policy goals that punitive damages were intended

12  to achieve.  As a result, Judge Lifland disallowed a claim

13  for punitive damages on the ground that allowing such a

14  claim "would ill serve the policy of such awards."

15  Similarly, the policy goals of punitive damages would not be

16  achieved in the instant case.  There is no longer a

17  wrongdoer to deter here.  The unsecured creditors who would

18  effectively bear the cost of a punitive damages award are

19  not the alleged wrongdoers.  Accordingly, the Court denies,

20  with prejudice, the Claimants' claims for punitive damages.

21          Conclusion.  For the reasons discussed, the Court

22  sustains the Objection to the extent set forth in this

23  Decision and grants the Claimants leave to amend the Claims

24  in accordance with the Court's rulings herein.  Pursuant to

25  the claim reduction procedures set forth in the Supplemental

Page 17

1    Objection, each Claimant shall have 30 days from the entry

2    of an order reflecting the relief granted herein to provide

3    written notice to the Plan Administrator setting forth the

4    remaining components of her Claim, upon receipt of which the

5    Claim shall be deemed amended to reflect the reduced amount

6    sought.  In the event such notice is not timely submitted,

7    absent an agreed upon extension between the Claimant and the

8    Plan Administrator or an order of this Court, the

9    corresponding Claim shall be expunged and disallowed in its

10   entirety with prejudice.

11            Okay, that concludes the ruling, and I will -- we

12   will just wait to hear from folks with an order reflecting

13   the rulings that I provided Thank you all very much, have an

14   excellent afternoon.  And thank you for making yourselves

15   available on such short notice.

16

17     (Whereupon these proceedings were concluded at 3:30 PM)

18

19

20

21

22

23

24

25

Page 18

1            C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 14, 2017

[& - administrator's]                                                                                 Page 1

| & | | | |
|---|---|---|---|

**&**

**&**   3:3,11 12:21

**0**

**08-13555**   1:3

**1**

**1**   5:16
**10**   11:9,20
**10004**   1:13
**10153**   3:6
**105**   7:4 14:19,25
  15:5
**107**   14:4
**108**   14:22
**109**   3:14
**1091**   12:17
**1095**   12:17
**11**   7:9 15:2,18,25
**11501**   18:23
**1198**   8:13
**12**   7:15
**120**   14:22
**12110**   3:15
**1216**   8:13
**126**   14:22
**13**   1:15 15:8
**13-14**   12:21
**133**   14:22
**14**   18:25
**145**   14:22
**147**   8:21 9:7,13,21
**152**   14:7
**153**   14:23
**160**   14:23
**17**   6:6
**17-18**   9:11
**18**   12:22
**1975**   12:17
**1978**   13:25
**1986**   12:25 16:7
**1992**   12:21,22
**1996**   15:14

**1999**   8:8,9

**2**

**20**   12:5
**2004**   8:13
**2005**   6:22 10:14
**2006**   13:11
**2007**   6:5 7:21
  10:12,22 11:2,3,4
  11:6,10,19,24
  12:4 13:5,16
**201**   11:11,17,17
**2012**   14:1 15:21
  15:21
**2013**   6:6
**2015**   6:10,14
**2017**   1:15 18:25
**22**   6:5,10 10:12
  11:3,4,6,19 12:4
  13:5,16
**23**   8:8
**24**   10:18
**264**   13:11
**279-280**   13:11
**28**   16:7
**2994**   12:21
**2d**   8:13

**3**

**30**   11:9 17:1
**300**   18:22
**330**   18:21
**35**   10:16 15:21
**357**   8:13
**38**   13:11
**390**   7:6
**3:02**   1:16
**3:30**   17:17
**3d**   13:24

**4**

**4**   6:14
**40127**   6:7
**431st**   5:11,13

**47**   10:16
**480**   14:1
**4th**   8:8 13:11 14:1

**5**

**50054**   2:4 6:11
**50457**   6:12
**50497**   6:14
**51194**   6:15
**517**   15:14
**522**   12:16
**54**   14:1
**544**   7:21
**550**   7:21
**559**   15:14
**568**   15:14
**570**   7:21
**571**   12:25
**580**   12:25
**59**   10:16
**5th**   3:5

**6**

**6**   7:15 15:21
**618**   16:6
**6258**   15:21
**626**   13:24
**627**   16:6
**634**   12:25
**637**   8:8
**645**   8:8
**656**   13:24
**68**   10:16 16:6

**7**

**7**   6:22
**7012**   7:12
**72**   8:8
**767**   3:5
**77**   10:16

**8**

**8**   12:8
**8474**   7:8
**87**   13:24

**9**

**9014**   7:5
**92**   10:16
**950**   3:14
**9th**   12:17

**a**

**abilities**   9:5,18
  10:1,3,6
**ability**   13:23
**able**   12:1
**absent**   17:7
**accepted**   15:9
**accord**   15:18
**account**   8:24
  13:18
**accuracy**   11:16,21
**accurate**   18:4
**accurately**   11:15
**achieve**   15:12
  16:11,12
**achieved**   16:16
**act**   13:8
**action**   6:25 9:14
  14:21
**actual**   12:13
  13:21
**addition**   7:21 12:8
**address**   14:11
**addressing**   7:10
**adequately**   9:7
**adjudication**
  12:22
**adjudicative**
  11:12
**administrator**
  3:13 5:20,22 6:2
  6:10,13 7:2 9:6,20
  10:19,23,25 11:3
  11:7,23 12:2,14
  14:23 17:3,8
**administrator's**
  2:1 5:11,13

[advised - code]                                                                        Page 2

advised  6:17
afternoon  4:2,4
  17:14
agreed  17:7
agrees  9:20 12:14
ahead  5:1
allegation  9:6,12
  9:21
allegations  7:16
  8:15
allege  8:5 9:9
alleged  8:21 10:14
  13:18 16:19
allegedly  8:9,10
  8:19 9:8,10,15,18
  9:23 10:10
allow  2:3 5:14
allowing  16:13
alternative  7:7
amend  10:9 14:16
  16:23
amended  17:5
america  15:14
amount  17:5
announcement
  11:1
apologize  4:23
app  8:8 13:24,25
applied  7:9,13
  15:7
appropriate
  15:19,24
april  1:15 18:25
argue  12:6
argues  9:6 11:23
arguing  14:25
argument  10:22
arose  13:6
asbestos  16:9,10
assert  8:22 9:15
  9:24 10:13 14:21
asserted  5:23

assertion  14:3
assessing  12:7
assets  12:20,24
assuming  7:21
atlantic  7:20
attached  11:20
attempt  10:19
  13:5
attempts  6:18
attorney  3:17
attorneys  3:4
aug  15:21
august  6:14 11:2
  11:4
authorizing  7:6
available  5:8 6:15
  17:15
avenue  3:5
award  16:8,18
awarded  13:23
awards  16:14

b

b  1:21 7:15 11:10
  11:17
b.r.  16:6
back  10:17 12:18
  12:23 13:2
bankr  15:21,21
  16:7
bankruptcy  1:1
  1:11,23 7:5,5,12
  14:19,25 15:5,6
  15:18 16:1
based  6:22 8:2
  11:19 13:3
basis  5:10 14:17
bear  16:18
belief  9:4
bell  7:20
bench  2:1 5:2,10
benefits  10:18
beyond  10:21

bmw  15:13
bnc  5:24,24 6:7,24
  8:3,22 10:12,14
  11:3,4,10 12:4
  13:16 14:21
bnc's  10:21,24
  11:1,18,25 12:1
  12:11 13:4
bowling  1:12
branch  8:23,24
bros  13:10
brothers  1:7 3:4
business  12:16
  14:9

c

c  1:22 3:1 4:1 18:1
  18:1
c.d.  8:13
cal  8:8,13 12:22
  12:25 13:11,24
  14:1
california  3:12
  5:19 6:9,24 8:4,18
  9:14 10:7 12:7
  13:8,12
california's  13:7
call  4:19
capacity  12:10,12
  13:18 14:4,15,17
case  1:3 12:23
  13:1,3 15:2,2,18
  15:19,19,24,25
  16:6,16
cases  7:9 13:6
cause  9:13
causes  6:25 8:7
  14:21
cease  11:5
certain  5:23 10:17
  10:23 13:9
certified  18:3
chapman  1:22

chapter  7:9 15:2
  15:18,25
cheryl  5:25 9:3
cir  12:17
circumspection
  15:7
circumstances
  9:10 13:9
cite  14:2
cited  13:6
civil  7:15
claim  5:23 6:21
  7:11,11,12,14,19
  7:25 8:3,4,20 10:7
  10:9 12:23 14:14
  14:16,17 16:12,14
  16:25 17:4,5,9
claimant  3:17 4:5
  17:1,7
claimants  5:24
  6:2,6,7,11,21,23
  7:25 8:22 9:12,14
  9:17,24,25 10:2,3
  10:8,11,13,17,20
  11:23,25 12:3,5,9
  13:4,5,15,17 14:2
  14:5,8,12,15,18
  14:20,24 15:4,16
  16:20,23
claims  2:3,3 5:12
  5:13,14 6:22 7:3,6
  7:8 8:2 10:9 14:16
  14:18,24 15:16,22
  15:23 16:5,20,23
clear  13:3 15:15
closing  11:2,10
  12:4
closure  10:22,24
  11:2,18 12:11
  13:5
code  7:5 14:19,25
  15:5

**coito**  13:25
**coleen**  6:1 9:2
**collectively**  6:1,21
**colombo**  6:1 9:2
**commission**  11:9
**company**  15:20
**compensatory**  6:4
  7:1 12:2
**complaint**  6:22,23
  6:25 7:16,22 8:21
  9:7,21,22 10:13
  10:15,18 14:2,5,7
  14:22
**components**  17:4
**concerning**  9:25
  10:2,5
**concluded**  6:9
  17:17
**concludes**  17:11
**concluding**  12:25
**conclusion**  16:21
**conduct**  15:25
**constitute**  9:18
**contend**  9:12 12:9
  15:4
**contends**  10:20
  12:2
**contested**  7:11,11
**context**  11:21
  15:22
**continuing**  5:21
**copy**  5:7
**corporation**  7:20
  13:19 16:6
**corrections**  5:9
**corresponding**
  17:9
**cost**  16:18
**counsel**  3:12 5:19
**country**  18:21
**court**  1:1,11 4:2,6
  4:8,10,18,24 5:12
  5:18,21 6:17,19

6:24 7:13,16,23
  7:24 9:20 11:1,8
  11:12,18 12:14,18
  14:1,24 15:11,16
  16:19,21 17:8
**court's**  11:14
  16:24
**courts**  13:8,12
  15:6 16:3
**creditors**  16:3,3
  16:17
**ct**  13:24

**d**

**d**  4:1 15:23
**damage**  8:7 15:23
  16:5
**damages**  5:23 6:3
  6:4,5 7:1 8:2
  10:17,19 12:2,6
  13:17,20,23 14:3
  14:12,18,20,24
  15:1,3,10,11,16
  15:17 16:2,8,9,11
  16:13,15,18,20
**dashboard**  4:9,12
**date**  12:3 18:25
**days**  17:1
**debtor**  1:8
**debtors**  3:4 7:6,8
**decision**  2:1 5:2,4
  5:6,10,10 16:23
**decisional**  13:9
**decisions**  13:13
**deemed**  17:5
**defamation**  6:3
  8:1,3,4,21 9:14
  10:7,9 14:14
**defamatory**  8:10
  8:10,15,19 9:8,19
  9:24 10:4,10
  14:11
**defat**  5:5

**defendant**  8:24,25
**defendants**  10:14
  14:7,10
**denied**  16:7
**denies**  16:19
**denise**  6:1
**deplete**  16:9
**depletes**  16:3
**deter**  16:1,17
**determine**  12:7
**determined**  11:16
**deterrence**  15:10
**directs**  11:8
**disallow**  5:22 7:2
  14:24 16:4
**disallowance**
  15:17
**disallowed**  14:19
  15:17 16:12 17:9
**disallowing**  6:3
**disapproved**
  13:25
**discrimination**
  15:22
**discussed**  16:21
**dismiss**  7:13,14
**disparaging**  9:2
**dispute**  7:7 11:13
**disputes**  8:18
**dissolved**  12:20
**dist**  12:21
**distinguish**  13:6
**distress**  14:6,10
  14:13
**district**  1:2 12:17
  15:19
**documents**  10:23
**douglas**  13:19
**draw**  7:17
**drug**  12:21
**due**  10:14 12:18

**e**

**e**  1:21,21 3:1,1 4:1
  4:1 18:1
**e.g.**  10:15,18
  13:10 14:22
**earn**  13:24
**earning**  12:10
  13:18,19 14:4,15
  14:17
**earnings**  12:13
  13:22
**ecf**  2:3 6:7,11,12
  6:13,15 7:8
**economic**  10:17
  12:6
**ecro**  1:25
**effectively**  16:18
**either**  11:13 13:22
**element**  13:20
**emotional**  14:6,10
  14:13
**employee's**  13:1
**employees**  8:22
  11:6
**employer**  12:16
  12:19,24 13:2
**employment**  3:12
  5:19 11:24 13:7
  15:22
**ended**  11:9
**entered**  7:8
**entirety**  17:10
**entitled**  14:3
**entitlement**  13:2
**entry**  17:1
**equitable**  15:6
  16:4
**equivalent**  7:12
**establish**  12:1
**event**  5:1 17:6
**evidence**  10:23
  11:11,17 12:8

evidentiary  7:10
example  8:22
excellent  17:14
exchange  11:8
exchanged  6:16
exercise  15:6
exercised  16:4
exhibit  11:7,10
expense  16:10
expunged  17:9
extension  17:7
extent  16:22
extreme  15:7

**f**

f  1:21 3:8 8:13
  12:25 18:1
f.2d  12:17
face  7:20
fact  8:5 11:12
facts  7:19,22
fail  4:9
failed  7:25
failure  7:14
fair  13:7
false  8:6 9:1,15,25
  10:5
favor  7:17
feb  12:22
federal  7:15 8:14
  11:11,17
feha  13:8,10,13
fife  3:8
file  5:5
filed  5:23 6:6,10
  6:11,13,23
first  2:2
fiscal  11:9
folks  4:2 17:12
food  12:20
foregoing  18:3
form  5:10 11:9,20
forth  6:25 7:19
  16:22,25 17:3

four  2:2
francisco  6:8
frequently  13:12
front  10:18
fry's  12:20
further  6:18
future  15:25
  16:10

**g**

g  4:1
general  7:5 8:14
  9:22 13:20
generally  11:14
  15:9
gerber  15:20 16:1
give  4:14
go  5:1
goals  15:3,9,13
  16:11,15
goes  12:16
going  4:11,14
good  4:2,4
gore  15:14
gotshal  3:3
granted  17:2
granting  12:22
grants  16:23
greater  15:12
green  1:12
ground  16:13
grounds  13:25
guajardo  6:1 9:2
guidance  13:12
  15:15

**h**

hand  9:12 15:4
harassment  10:15
  13:14 14:6
harris  8:24 9:16
havens  12:16
health  16:9
hear  4:22 17:12

hearing  2:1 6:14
  7:6,10
held  6:14
hello  4:2
hereinafter  6:23
herring  12:20
hertzel  3:11
hi  4:20
holding  16:8
holdings  1:7
hon  1:22
honor  4:4,8,20
housing  13:8
howard  5:25 9:3
hundred  2:2
hyde  2:25 18:3,8

**i**

identified  8:11
identify  8:16 9:23
ii  6:4 10:11 11:15
  14:7
iii  6:5 14:18
impacted  12:11
impairment  12:11
impasse  6:9
implement  7:6
imposition  15:13
inapplicable  15:3
including  8:23
  9:21 10:17 15:24
income  13:22
inconvenience
  4:23
incorporates  5:6
independent  12:9
indicated  4:9
indicates  4:12
indiscernible  5:16
  5:17
inferences  7:17
inferred  13:20
infliction  14:13

information  7:23
  9:1,4 10:1
injure  8:7
injury  12:12
  13:21,22 14:8
instant  15:2 16:16
insufficient  8:16
intended  11:5
  16:11
intentional  8:5
  14:13
intentionally  9:1
interpret  13:10
interpreting
  13:13
isabel  6:1 9:2
isallowance  15:23
issue  6:19 12:6,6
issued  11:3

**j**

jackie  3:9 4:20
jacobson  8:12
james  5:25 9:3
joe  8:25 9:16
johns  16:6
joined  4:19 5:14
jonathan  1:25
judge  1:23 15:20
  16:1,7,12
judicial  7:24 11:1
  11:12,18
juncture  7:2
june  6:10 8:8
jurisdiction  11:15
jury  12:7
justify  15:13

**k**

k  11:9,20
knapp  3:11
known  11:14

**l**

latham   3:15
law   8:4,18 9:14
  10:7 12:7,15 13:1
  13:3,9 15:19
lbhi's   11:8,20
leave   16:23
ledanski   2:25 18:3
  18:8
lefkowitz   3:11
legal   7:10 18:20
lehman   1:7 3:4
letters   6:16
lexis   12:21 15:21
liability   12:1
liberal   8:14
lifland   16:7,12
limit   10:19
limited   8:23 12:3
linda   5:25 8:24
  9:3,16
line   4:3,7,11,12,19
  4:25
liquidating   15:2
  15:18,24,24
liquidation   15:20
lisa   5:16
listen   4:9,23
live   4:12,25
llp   3:3,11
locations   11:5
longer   16:16
look   13:8
looking   4:24
lori   3:8
loss   12:12,13
  13:18,19,23 14:14
lost   10:11,21
  12:10,15 13:4,16
  14:4,17
loudon   3:14
lthough   8:9

**m**

lyle   13:10

m   7:6
majority   14:21
making   17:14
maldonado   8:7
man   5:19
manager   8:24
managers   8:24
manges   3:3
manville   16:6
marcus   3:9 4:20
  4:20
matter   1:5 12:15
  13:1
mcdonnell   13:19
mcneil   5:25 9:3
mediations   6:8,9
meet   10:6
merely   10:4
michelle   5:25 9:4
mineola   18:23
minute   4:14
modified   8:8
money   13:24
mortgage   5:24
motion   7:13,14
motors   15:20
murphy   8:25 9:16

**n**

n   3:1 4:1 18:1
n.d.   12:21,25
nathan   5:16
natural   8:6
nature   13:21
necessary   15:12
need   8:9 10:3
neither   8:18 14:14
new   1:2,13 3:6,14
nick   8:25 9:16
nine   6:25
non   7:10

nonmoving   7:18
north   15:14
note   16:1
notice   7:24 11:1,4
  11:12,18,19 17:3
  17:6,15
noting   13:6,11
november   6:22
  11:9
ny   1:13 3:6,15
  18:23

**o**

o   1:21 4:1 18:1
objection   2:2,3
  5:12,13,14,22 6:6
  6:11,12,19,20
  9:11 11:7,20 12:5
  16:22 17:1
obtaining   13:16
occurred   11:19
october   6:5 10:12
  10:22 11:2,6,19
  11:24 12:4 13:5
  13:16
okay   4:10,11,16
  4:24 5:21 17:11
old   18:21
omnibus   2:3 5:11
  5:13
once   12:15
operating   12:24
operations   11:5
opposition   6:12
  12:8 15:8
order   5:5,7 6:3
  7:4,5 8:3,20 13:9
  14:16 17:2,8,12
ought   5:9

**p**

p   3:1,1 4:1
page   10:18
paragraph   8:21
  9:7,13,21 12:5

14:4,7,14
paragraphs   9:11
  10:16 14:2,11,22
participated   6:8
particular   7:11
particularly
  15:23
parties   5:5 6:16
  6:17
party   7:18 8:18
pay   10:17,18
  12:18,23 13:2
pennington   8:25
  9:17
performance   9:4
  9:17 10:1,3,6
period   6:4 10:12
  10:21 12:3,19
personal   14:8
plaintiff   7:18 8:4
  8:9,11
plaintiffs   9:2
  12:19
plan   2:1 3:12 5:11
  5:12,20,22 6:2,10
  6:13 7:1 9:6,20
  10:19,23,25 11:3
  11:7,23 12:1,14
  14:23 17:3,8
plausible   7:20
plead   8:9,12 9:13
  10:3,9 14:17
pleaded   7:22
pleading   8:14
pleads   14:14
please   4:19 5:15
pled   8:20
pm   1:16 17:17
points   10:23
policy   16:11,14,15
portion   7:3
power   13:20 16:4

**powers** 15:6,7
**precluded** 10:11
  10:20 12:15 13:4
  13:15,17
**prejudice** 16:20
  17:10
**priest** 12:24
**problem** 4:15
**procedure** 5:3
  7:15
**procedures** 7:7,7
  16:25
**proceedings**
  17:17 18:4
**productions**
  13:11
**professional** 14:9
**prohibitions**
  13:13
**proof** 13:21
**proofs** 5:23 6:21
**properly** 9:13
**provide** 17:2
**provided** 10:2
  17:13
**publication** 8:5
**published** 9:1
**punishment** 15:10
**punitive** 6:5 7:1
  14:18,20,24 15:1
  15:3,10,11,16,17
  15:23 16:2,5,8,9
  16:11,13,15,18,20
**purpose** 12:18
  15:1
**pursuant** 7:4,4,14
  11:11 14:19,25
  16:24
**pursue** 10:8 14:16

**q**

**questioned** 11:17
  11:22

**r**

**r** 1:21 3:1 4:1 18:1
**randy** 3:17 4:4
**reach** 4:14
**read** 5:2,4
**readily** 11:15
**realized** 4:22
**reasonable** 7:17
  11:13
**reasonably** 11:16
  11:22 15:12
**reasons** 16:21
**recalculating**
  12:18
**receipt** 17:4
**recess** 4:17
**recklessly** 8:25
**recognized** 15:11
**record** 5:4,6 18:4
**recovering** 10:11
  10:21
**recovery** 12:10
  16:2,3,8
**reduce** 2:3 5:13
  7:2
**reduced** 17:5
**reduction** 16:25
**refers** 11:10
**reflect** 12:19 17:5
**reflecting** 5:5 17:2
  17:12
**regularly** 16:4
**relatively** 5:2
**relief** 7:19 17:2
**rely** 7:23
**remaining** 17:4
**remanding** 12:17
**reply** 6:13
**represent** 5:18
**reputations** 14:9
**request** 16:7
**requested** 6:19

**requests** 6:3 7:1
  10:25 14:23
**required** 7:18
**requires** 7:16 8:19
**resignation** 12:4
**resigned** 10:14
**resolution** 7:7
**respect** 5:11 12:23
  13:23
**respond** 4:13
**response** 6:6
**rest** 11:25
**result** 10:16 14:6
  14:10 16:12
**retaliation** 10:15
**review** 7:9
**right** 4:6,13
**road** 3:14 18:21
**rodriguez** 13:19
**rotary** 12:24
**rule** 7:5,12,15
  11:11,17
**rules** 7:15 11:11
**ruling** 6:19 17:11
**rulings** 16:24
  17:13

**s**

**s** 3:1 4:1
**s.d.n.y.** 15:21 16:7
**sacramento** 8:23
**san** 6:8
**sanction** 15:13
**scc** 1:3
**schiller** 3:11
**schwarzenegger**
  8:13
**screen** 4:25
**section** 7:4 14:25
  15:5
**securities** 11:8
**see** 4:14 9:11
  10:15,18 11:17
  12:4,8,16 13:10

14:22
**seek** 8:2 10:17
  13:12 14:12,20
**seeking** 13:4,17
**seeks** 5:22 7:2
**seminal** 16:5
**sentence** 10:4
**separate** 12:12
  14:12
**september** 6:5
**series** 6:16
**serve** 16:14
**served** 15:1
**set** 7:18 16:22,25
**sets** 6:25
**setting** 16:2 17:3
**settled** 7:23
**settlement** 6:18
**severe** 14:5,9
**sexual** 13:14
**seymour** 5:25
**seymour's** 9:4
**shelley** 1:22
**short** 5:2,5 17:15
**showing** 4:25
**similarly** 16:15
**slack** 12:16
**smith** 8:7
**sold** 12:24 13:3
**solution** 4:8
**solutions** 18:20
**sonya** 2:25 18:3,8
**sorry** 4:21 5:18
**sought** 17:6
**sources** 11:16,21
**southern** 1:2
**special** 8:7
**specifically** 6:2
  8:11
**standard** 7:9,13
  10:6
**standards** 8:14

**state**   6:24 7:14,19
  7:25 8:3,20 9:7
**stated**   11:4 13:18
  15:20
**statement**   8:5,10
  8:11,12,20
**statements**   8:15
  9:8,9,15,19,24,25
  10:4,5,10 14:11
**states**   1:1 7:12
  14:5,7 15:11
**stating**   10:5,7
**store**   12:21
**stross**   3:17 4:4,5,8
  4:16
**subject**   11:13
**submitted**   17:6
**subordinate**   16:5
**subsequent**   6:4
**subsequently**   6:13
**substance**   6:17
  8:12,16,19 9:8,18
  9:23 10:10
**suffered**   13:17
  14:5,8
**sufficiency**   7:10
**sufficient**   9:13
**sufficiently**   8:20
  9:23
**suite**   3:14 18:22
**summary**   12:22
**superior**   6:24
  14:1
**supervising**   8:23
**supp**   8:13 12:25
**supplemental**   2:2
  6:11,12,20 9:11
  11:7,20 12:5
  16:25
**support**   10:22
  14:3
**supreme**   15:11,16

**sustains**   16:22
**sutfin**   5:25 9:3
**sylvia**   5:24 9:3

**t**

**t**   18:1,1
**take**   7:24 11:1,12
  11:18
**telephonically**   3:8
**television**   13:10
**tendency**   8:6
**terminate**   11:6
**terminated**   11:24
  13:2
**terribly**   4:21
**territorial**   11:14
**thank**   4:6 5:21
  17:13,14
**theory**   12:9,10
**things**   8:2 15:4
**think**   5:9
**thirty**   2:2
**three**   6:8,9
**time**   10:21
**timely**   17:6
**title**   12:22 13:1,7
  13:8,12
**torts**   14:12
**transcribed**   2:25
**transcript**   5:6,7
  6:15 18:4
**transferred**   12:20
**treat**   7:16
**trial**   11:14
**true**   7:17,22 18:4
**trust**   16:9
**try**   4:18
**two**   14:2
**twombly**   7:21
**type**   5:3

**u**

**u.s.**   1:11,23 7:21
  11:5 12:21 15:14

**ultimate**   11:2,18
**unblock**   4:10
**understand**   4:22
**unfamiliar**   5:3
**united**   1:1 15:10
**unmute**   4:11
**unprivileged**   8:6
**unsecured**   16:17
**unsuccessful**   6:18

**v**

**v**   7:20 8:7,12
  12:16,20,24 13:10
  13:19,25 15:14
**vague**   9:22
**vega**   5:24 9:3
**verbatim**   8:10
  10:4
**veritext**   18:20
**vests**   15:5
**victims**   16:10
**viewed**   12:12
**vii**   12:23 13:1,7,8
  13:12
**virtually**   10:1

**w**

**wages**   10:12,21
  12:15 13:4,16
**wait**   17:12
**warn**   11:4,19
**warner**   13:10
**weil**   3:3 4:7,11,12
  4:13,14,18,21
**went**   16:1
**wish**   10:8 14:15
**woman**   5:16
**work**   9:4,17,25
  10:2,5 12:12
**workforce**   11:25
**written**   17:3
**wrongdoer**   16:17
**wrongdoers**   16:19

**x**

**x**   1:4,9

**y**

**yeah**   4:10
**year**   11:9
**york**   1:2,13 3:6