**Hearing Date and Time: May 23, 2019 at 2:00 p.m. (Eastern Time)**
**Response Deadline: May 17, 2019 at 4:00 p.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEARS HOLDINGS CORPORATION, *et al.*,[1] | ) | Case No. 18-23538 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**TRANSFORM HOLDCO LLC'S INTIAL RESPONSE TO THE BRUCE TRUSTS'[2]**
**(I) DESIGNATABLE CONTRACT ASSUMPTION AND ASSIGNMENT OBJECTION,**
**AND (II) RESERVATION OF RIGHTS**

Transform Holdco, LLC ("Transform" or the "Buyer") as Buyer pursuant to the *Order*

*(I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale*

*of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances,*

*(III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816) .  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2]     The "Bruce Trusts" refers to, collectively, the Steven Bruce Revocable Trust, the Allison Bruce Irrevocable Trust, and the Cara Bruce Revocable Trust (together, the "Objectors").

*Connection Therewith and (IV) Granting Related Relief* (the "Sale Order") (ECF No. 2507)

approving the sale of certain of the assets of the above-captioned debtors and debtors-in-

possession (collectively, the "Debtors") hereby submits this initial brief (the "Initial Brief") in

further support of the Sale Order and the Court's *Order (I) Authorizing Assumption and*

*Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (the

"Assumption and Assignment Order") (ECF No. 3008) and in response to the *Objection to the*

*Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory*

*Contracts and Unexpired Leases in Connection with the Global Sale Transaction and Notice of*

*Expiration of Lease* (the "January Objection") (ECF No. 2281) and *The Bruce Trusts' (I)*

*Designatable Contract Assumption and Assignment Objection, and (II) Reservation of Rights*

(the "April Objection") (ECF No. 3421).

## PRELIMINARY STATEMENT

1.    Kmart has been the tenant of a store located at 1001 Patton Avenue in Asheville,

North Carolina continuously since 1964.  In 1992, Kmart extended the lease for this property

(the "Kmart Lease" or "Lease") until November 2032, unambiguously providing that Kmart is

currently the tenant of an unexpired lease.  Having enjoyed the benefit of this bargain for more

than 25 years, Objectors now claim that the extension was ineffective and the lease has expired.

The Court should not entertain this attempt to rewrite history.

2.    Objectors' principal argument is that the landlord under the Kmart Lease (the

"Landlord") was not authorized to enter into agreements related to this Lease.  This argument is

belied by the relevant contractual language.  An early amendment to the Kmart Lease provided

that the word "Landlord" would include the Landlord's assignees.  Less than six months later,

Kmart's Landlord "assign[ed]" all of its "right, title and interest" in the Kmart Lease.  This

2

assignment prevented the assignee from reducing the rent or shortening the term of the Kmart Lease, but included no such restriction on any extension of the Lease. The assignee then extended the Kmart Lease through the present day pursuant to and within the scope of this assignment.

3.      No more convincing is Objectors' argument that Kmart became Landlord's subtenant. Kmart was the original tenant of the Kmart Lease, and later leases on the same property were made subject to this existing lease. Indeed, every amendment to the Kmart Lease explicitly states that it is between Kmart as tenant and the successor to the original Landlord. As a matter of law, a lease between a landlord's assignee and tenant creates a tenancy, not a subtenancy.

4.      In the alternative, the assignee had actual or apparent authority to bind the Objectors to the Kmart Lease. Kmart reasonably relied on the contractual assignments of the Kmart Lease, particularly given that it has paid rent for more than 50 years to the assignee as its Landlord. By waiting decades to raise their present concerns, all while benefitting from Kmart's increased rent and improvements to the property, Objectors effectively ratified the Kmart Lease. Given all of the above, allowing Objectors to walk away from their obligations would be inequitable and contrary to the purpose of Section 365 of the Bankruptcy Code, and they should be estopped from asserting that the Lease has expired.

5.      Finally, the Objectors' cursory objections as to adequate assurance, cure, and restrictive covenants echo other objections rejected by the Court at the May 8, 2019 hearing. These objections fail for the same reasons previously articulated by the Court.

## BACKGROUND

### a. Factual Background

#### i. The Kmart Lease

6.      On December 18, 1964, the S. S. Kresge Company ("Kmart"),[3] as tenant, entered into the Kmart Lease with Patton Avenue Development Corporation ("PADC"), as landlord, for a Kmart Store ("Kmart Store 4112") located at 1001 Patton Avenue in Asheville, North Carolina ("1001 Patton Avenue").  Declaration of Samuel Levander ("Levander Decl."), Ex. A, Kmart Lease.

7.      PADC had to construct a store at its expense for Kmart on this property.  Id. ¶ 1. The original term of the lease was approximately 20 years, and Kmart had the unilateral option to extend the lease for three additional terms of five years each and a fourth term of up to one year.  Id. ¶¶ 2, 12.  The Kmart Lease set annual rent at $136,700 and 1% of gross sales exceeding $5,435,000.  Id. ¶¶ 3, 4.

8.      Paragraph 34 of the Kmart Lease provides:  "The conditions, covenants and agreements contained in this lease shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns."  Id. ¶ 34 (emphasis added).

9.      The First Amendment to the Kmart Lease, between the same parties as the Kmart Lease itself, was executed on August 27, 1965 (the "First Amendment").  Among other clarifications to the original Lease terms, the First Amendment stated that the word "Landlord" as used in the Kmart Lease also referred to the Landlord's assignees.  Levander Decl., Ex. B,

---

[3]      The S.S. Kresge Company, which is named for the founder of the company that would become Kmart, was renamed the Kmart Corporation in 1977.  Kmart transferred the Kmart Lease to an affiliate, Kmart of North Carolina LLC, in 1999, Levander Decl., Ex. P; Kmart of North Carolina LLC transferred the Kmart Lease back to Kmart Corporation in 2007.  Levander Decl., Ex. R.  For ease of reference, the S.S. Kresge Company, the Kmart Corporation, and Kmart of North Carolina LLC are collectively defined here as "Kmart."

First Amendment ¶ 1 ("Wherever the word 'Landlord' is used herein, it is intended that this shall also include the Landlord's principal owners, stockholders, directors, officers and their <u>assignees</u> or vendees.") (emphasis added).

10.    On February 1, 1966, PADC conveyed its interests in 1001 Patton Avenue to G-K, Inc., which in turn conveyed its interests to Martin and Sylvia Bruce (together, the "<u>Bruces</u>"). Levander Decl., Ex. C; Levander Decl., Ex. D.  That same day, the Bruces and Patton Plaza Associates ("<u>PPA</u>") entered into an agreement that:  (1) "assign[ed]" PPA "all the right, title and interest of the Landlord in and to all leases now in effect covering the demised premises," including the Kmart Lease, Levander Decl. Ex. E, Ground Lease and Assignment § 13.07 (the "<u>Assignment</u>"), and (2) gave PPA a 30-year lease and three renewal terms of 23 years each, for a total of 99 years, with annual rent of $118,620 (the "<u>Ground Lease</u>").  <u>Id.</u> §§ 3.01, 20.01.  On November 6, 1969, PPA assigned its interests in the Ground Lease and Assignment to Nineteenth Asheville Corp. ("<u>NAC</u>").  Levander Decl., Ex. F, Assignment.

11.    In December 1975, NAC and Asheville K-M Associates ("<u>Asheville K-M</u>") entered into a series of transactions that Objectors refer to collectively as the "Sandwich Lease." First, NAC assigned its interests in the Ground Lease and Assignment to Asheville K-M. Levander Decl., Ex. G; Levander Decl., Ex. H.  Asheville K-M subsequently sublet the Ground Lease to NAC and assigned the Assignment back to NAC.  Levander Decl., Ex. I; Levander Decl., Ex. J.  At the conclusion of this series of transactions comprising the Sandwich Lease, Asheville K-M became the tenant under the Ground Lease, and NAC became the sub-tenant under the Ground Lease while remaining the Landlord under the Kmart Lease.  <u>See</u> Levander Decl., Ex. K.

12.     In 1988, Martin and Sylvia Bruce conveyed their ownership interests in the

property to the Martin Bruce Revocable Trust and the Sylvia Bruce Revocable Trust, Levander

Decl., Exs. M, N, Special Warranty Deeds, who in turn conveyed these interests through a series

of intra-family conveyances to the present Objectors—the Steven Bruce Revocable Trust, the

Allison Bruce Irrevocable Trust, and the Cara Bruce Irrevocable Trust.

### ii.   The Second and Third Amendments to the Kmart Lease

13.     On March 3, 1992, Nineteenth Asheville Properties ("NAP") and Kmart entered

into the Second Amendment to the Kmart Lease (the "Second Amendment").  NAP did so as

successor to NAC and pursuant to its authority under the Ground Lease and Assignment as

assignee of all right, title, and interest as the Landlord of the Kmart Lease.  See Levander Decl.,

Ex. L, Letter from Arthur Seibert dated Feb. 3, 1988.  The Second Amendment extended the

term of the Kmart Lease to November 30, 2012 and provided four successive options to extend

the Lease for an additional five years.  It also increased Kmart's annual rent and obligated it to

make certain improvements to the property and pay for certain real estate taxes.  Levander Decl.,

Ex. O, Second Amendment ¶¶ 1-5.

14.     The Second Amendment set forth:

WHEREAS, by Lease agreement dated, December 18, 1964, PATTON AVENUE
DEVELOPMENT CORPORATION, a North Carolina corporation, leased to
Tenant [Kmart Corporation] a building together with site improvements and land
at a shopping center located at and situated in the City of Asheville . . .; and

WHEREAS, the Lease agreement was modified by Amendment to Lease, dated
August 27, 1965.  The lease agreement, as modified, is herein referred to as the
"Lease"; and

WHEREAS, Landlord [NAP] succeeded to the lessor's interest in the Lease.

Id. at 1 (emphasis added).

15.     On May 23, 2017, NAP and Kmart entered into a third amendment to the Kmart Lease (the "Third Amendment").  The Third Amendment identified that "[NAP's] predecessor-in-interest and [Kmart's] predecessor-in-interest are parties to that certain Lease dated December 18, 1964, as amended by that certain Amendment to Lease dated August 27, 1965, and that certain Second Amendment to Lease dated March 3, 1992."  Levander Decl., Ex. S, Third Amendment at 1.  The Third Amendment split Kmart's option to extend the Kmart Lease until November 30, 2022 into two sub-option periods, and extended the Lease until January 31, 2019.

16.     The Third Amendment further stated that:

> Each individual executing this Amendment on behalf of any party represents and warrants that he or she is fully authorized to execute and deliver this Amendment on behalf of such party in accordance with its terms, and that this Amendment is not in violation of, inconsistent with, or contrary to the provisions of any agreement to which it is a party.

Id. ¶ 6(f) (emphasis added).

### iii.  Objectors Wrongfully Assert that the Kmart Lease Has Been Terminated

17.     On July 20, 2018, Kmart timely elected to extend the Lease, pursuant to the Second Amendment and Third Amendment, for a term ending November 30, 2022.  Levander Decl., Ex. T, Lease Extension.  On July 24, 2018, a representative of NAP responded that the Ground Lease would not be renewed, and referred Kmart to representatives of the Bruce Trusts. Levander Decl., Ex. U.

18.     On August 6, 2018, representatives of the Bruce Trusts wrote to Kmart asserting that the Bruce Trusts were not bound by any extension of the Kmart Lease beyond January 31, 2001, despite the fact that Kmart had continuously been a tenant under the valid extension of the Kmart Lease for 17 years past that date, and rejected Kmart's attempt to exercise its option to

extend the Lease.  Levander Decl., Ex. V, Letter from Alison Bruce Irrevocable Trust & Cara Bruce Irrevocable Trust to Joanne Catanese.

### b.  Procedural History

#### i.  The Sears Bankruptcy

19.     On October 15, 2018 (the "Petition Date"), Sears Holdings Corporation and certain of its affiliates, including Kmart Corporation (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

20.     The Debtors filed a motion on November 1, 2018 (the "Sale Motion") (ECF No. 429), seeking, *inter alia*, the entry of an order pursuant to sections 105, 363, and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure, and Rules 6004-1, 6005-1, and 6006-1 of the Local Bankruptcy Rules for the Bankruptcy Court, authorizing and approving procedures for the sale of the Debtors' assets and for the assumption and assignment of executory contracts or unexpired non-residential real property leases of the Debtors.

21.     On November 19, 2018, the Bankruptcy Court entered an order which approved the global bidding and sale procedures for the sale of Debtors' assets (the "Bidding Procedures Order") (ECF No. 816).

22.     On January 14, 2019, the Debtors commenced an auction for the sale of substantially all of its assets.  On January 16, 2019, Transform, an entity formed by ESL Investments Inc. and its affiliates as a vehicle to acquire these and certain non-debtor assets, was declared the highest and best bidder at the auction, and on January 18, 2019, the Debtors filed a notice to this effect (ECF No. 1730).

### ii.    Debtors Assume the Kmart Lease

23.    On January 18, 2019, Debtors also filed and served on applicable counterparties

the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and*

*Unexpired Leases in Connection with Global Sale Transaction* (the "Initial Notice") (ECF No.

1731), which included proposed cure amounts for leases subject to assumption and assignment as

part of the sale of substantially all of Debtors' assets.

24.    On January 23, 2019, the Debtors filed and served on applicable counterparties

the *Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory*

*Contracts and Unexpired Leases in Connection with Global Sale Transaction* (the

"Supplemental Notice") (ECF No. 1774).  Debtors included the Lease for Kmart Store 4112 in

the Supplemental Notice, and proposed a cure amount of $10,170.60.

### iii.    The Bruce Trusts' Initial Objection

25.    On January 31, 2019, the Bruce Trusts filed an *Objection to the Supplemental*

*Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and*

*Unexpired Leases in Connection with the Global Sale Transaction and Notice of Expiration of*

*Lease* (the "January Objection") (ECF No. 2281), alleging that, notwithstanding the valid

assignment granting NAP all right, title, and interest as Landlord under the Kmart Lease, the

Second and Third Amendments granting Kmart an option until 2032 were inoperative.

Therefore, according to the Bruce Trusts, the Kmart Lease expired when the Ground Lease

expired on January 31, 2019.

### iv.    The Sale Order and Assumption and Assignment Order

26.    On February 8, 2019, the Bankruptcy Court entered the Sale Order, pursuant to

which Transform is permitted to designate additional contracts and designatable leases for

assumption and assignment for up to sixty (60) days after the date the sale closed – February 11,

2019.  The Debtors and Transform agreed to extend this period and, on April 12, 2019, the

Debtors filed a *Notice of Amendment to Asset Purchase Agreement Extending Certain Deadlines*

(ECF No. 3171), extending the period to designate certain designatable leases to May 13, 2019.

27.    On April 2, 2019, the Bankruptcy Court entered the Assumption and Assignment

Order.  The Assumption and Assignment Order established, among other things, a noticing

procedure for the assumption and assignment of additional assigned agreements.

28.    In accordance with the Sale Order and the Assumption and Assignment Order,

Transform has designated certain leases for assumption and assignment by filing notices of

assumption and assignment of certain designatable leases.  On April 19, 2019, Transform filed

the *Notice of Assumption and Assignment of Additional Designatable Leases* ("Designated Lease

Notice") (ECF No. 3298), which designated the Kmart Lease for assumption and assignment and

included a revised cure amount for the Lease in the amount of $0.00.

### v.  The Bruce Trusts' Second Objection

29.    On April 29, 2019, the Bruce Trusts filed the April Objection, again asserting that

the Kmart Lease has expired and therefore cannot be assumed.  The April Objection also

objected to the proposed assumption and assignment based on a lack of adequate assurance of

future performance, the revised cure amount of $0.00, and the assignment of the Kmart Lease

free and clear of restrictive covenants.

30.    On May 8, 2019, the Bruce Trusts and Transform filed on the docket a *Stipulation

and Order by and Among Sellers, Buyer, and Landlord the Bruce Trusts (I) Extending Time

Under 11 U.S.C. § 365(d)(4) for Lease of Nonresidential Real Property and (II) Setting Briefing

Schedule* (the "Stipulation") (ECF No. 3740), extending the deadline for Debtors to assume or

reject the lease from May 13, 2019 to May 30, 2019.  The Court subsequently scheduled a

hearing on this matter for May 23, 2019 at 2:00 p.m.

10

## ARGUMENT

### II.    The Kmart Lease Has Not Expired

31.    Under 11 U.S.C. §§ 365 and 1107(a), a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Objectors principally assert that debtors-in-possession here may not assume the Kmart Lease because it has expired.  It is evident from the face of the Kmart Lease and its Amendments (as summarized in Appendix A) that Objectors' contentions are meritless.

32.    Over the last 55 years, the Kmart Lease has been extended, amended, and assigned, but it has never expired or been terminated.  While subsequent agreements related to the property at 1001 Patton Avenue created a separate ground lease, none served to interpose a tenant between Kmart and the Landlord of the Kmart Lease.

### a.    Kmart Entered into and Extended the Kmart Lease with Its Landlord

33.    Courts frequently analogize property rights to a bundle of sticks – a collection of rights that all initially belong to the fee owner.  See, e.g., United States v. Craft, 535 U.S. 274, 278 (2002); Jackson v. Don Johnson Forestry, Inc., No. COA18-354-2, 2019 WL 1601723, at *2-3 (N.C. Ct. App. Apr. 16, 2019);[4] Everett's Lake Corp. v. Dye, 821 S.E.2d 637, 639 (N.C. Ct. App. 2018), review denied, 824 S.E.2d 421 (N.C. 2019).  The fee owner may subsequently convey these rights individually or collectively, and a single transaction may serve to convey

---

[4]    Under New York choice of law rules, courts typically apply the law of the state where property is located for claims involving title of real property.  See, e.g., Riley v. Rivers, No. 15-CV-5022 (DLI), 2016 WL 11263672 (E.D.N.Y. Sept. 19, 2016), adopted by No. 15-CV-5022 (DLI) (RLM), 2017 WL 1093193 (E.D.N.Y. Mar. 23, 2017), aff'd 710 F. App'x 503 (2d Cir. 2018).  North Carolina law on real property frequently borrows from and tracks the real property law of other jurisdictions.  See, e.g., E. Town Mkt., L.P. v. 550 Foods, LLC, 776 S.E.2d 364 (Table), No. COA15-46, 2015 WL 44484555, at *6 (N.C. Ct. App. July 21, 2015) ("Because North Carolina has limited authority on the issue of a surrender of a primary lease and its effect on a subtenant, we find cases from other jurisdictions to be instructive.").

multiple distinct rights.  See, e.g., Jackson, 2019 WL 1601723 at *2-3; Everett's Lake Corp., 821
S.E.2d at 639.

34.     The Kmart Lease provided that PADC was both the Landlord entitled to collect
rent from the tenant of the real property at 1001 Patton Avenue, Levander Decl., Ex. A, Kmart
Lease ¶¶ 3 ("Tenant shall, during the lease term, pay to Landlord . . . an annual minimum rental
of [$136,700] . . . in equal monthly installments . . . ."), 4 (providing for potential additional rent
paid by tenant to Landlord based on a percentage of gross sales), and the fee owner of that
property.  Id. ¶ 26 ("Covenant of Title").

35.     In 1965, PADC and Kmart executed the First Amendment to the Kmart Lease,
which clarified that the term "Landlord" in the Kmart Lease also applied to the Landlord's
assignees.  Levander Decl., Ex. B, First Amendment ¶ 1.

36.     Thereafter, on February 1, 1966, PADC conveyed its interests as Landlord and fee
owner of the property at 1001 Patton Avenue to the Bruces.  That same day, the Bruces entered
into the Ground Lease and Assignment with PPA.  The Bruces gave PPA two distinct "sticks"
through the Ground Lease and Assignment.

37.     First, the Bruces assigned PPA "all the right, title and interest of the Landlord in
and to all leases now in effect covering the demised premises," including the Kmart Lease.
Levander Decl., Ex. E, Ground Lease and Assignment § 13.07.  The only limitations on this
assignment derive from § 13.10, which prevent the assignee from, inter alia, reducing the rent
and shortening the term of the Lease.  Id. § 13.10.  In assigning all right, title and interest as
Landlord and restricting only the assignee's ability to shorten the lease, the Bruces gave PPA the
authority to extend the terms of the Lease.  See, e.g., Dickens v. Puryear, 276 S.E.2d 325, 330

n.8 (N.C. 1981) (applying the canon of *expressio unius exclusio alterius* – the expression of one thing is the exclusion of another).

38.    *Second*, the Bruces gave PPA a ground lease for a term of up to 99 years that was subject to the existing Kmart Lease.  Id. §§ 1(d), 3.01, 20.01.

39.    On November 6, 1969, PPA assigned its right as Landlord under the Kmart Lease to NAC, Levander Decl., Ex. F, which subsequently changed its name to NAP.  Levander Decl., Ex. L.  Pursuant to its assigned "right, title and interest" as Landlord under the Kmart Lease, NAP entered into two further amendments of the Kmart Lease.

40.    On March 3, 1992, NAP extended the term of the Kmart Lease until November 30, 2012, with four successive options for Kmart to extend the Lease for additional periods of five years each, such that the final option would expire in November 2032.  Levander Decl., Ex. O, Second Amendment ¶ 2.  The recitals to the Second Amendment make clear that it is an amendment to the 1964 Kmart Lease, that NAP "succeeded to the lessor's [PADC's] interest in the [Kmart] Lease," and that NAP entered into the Amendment as Landlord under the Kmart Lease.  Id. at 1.

41.    Similarly, the Third Amendment to the Kmart Lease, dated May 23, 2017, is "between NINETEENTH ASHEVILLE PROPERTIES . . . ('**Landlord**') and KMART CORPORATION, a Michigan corporation ('**Tenant**'),)" and recites that "Landlord's predecessor-in-interest and Tenant's predecessor-in-interest are parties to that certain Lease dated December 18, 1964."  Levander Decl., Ex. S, Third Amendment at 1 (emphasis in original).  The Third Amendment extended the Kmart Lease until January 31, 2019, provided Kmart with the option to extend the lease until November 30, 2022, and left undisturbed Kmart's subsequent options to extend the lease until 2032.  Id. ¶ 3.

13

42.     In short, the Kmart Lease and all of its amendments were properly executed between the Landlord and Kmart as tenant.  The Kmart Lease therefore is currently effective, and Kmart retains options to extend it until 2032.  For purposes of § 365 of the Bankruptcy Code, the Kmart Lease is thus an unexpired lease.

> **b.    Alternatively, the Second and Third Amendments to the Kmart Lease Established a Valid Landlord-Tenant Relationship under the Principles of Agency, Ratification, and Equitable Estoppel**

43.     As laid out above, § 13.07 of the Ground Lease and Assignment effectively assigned NAP all "right, title and interest" to enter into the Second and Third Amendments with Kmart.  In the alternative, even if this valid assignment were somehow ineffective, NAP had actual or apparent authority as Landlord to extend the Kmart Lease, or, at a minimum, the Objectors ratified these extensions.

44.     Under North Carolina law, "[a] principal is liable upon a contract duly made by its agent with a third person in three instances: when the agent acts within the scope of his or her actual authority; when a contract, although unauthorized, has been ratified; or when the agent acts within the scope of his or her apparent authority, unless the third person has notice that the agent is exceeding actual authority."  Hogue v. Cruz, 812 S.E.2d 915 (Table), No. COA17-122, 2018 WL 2016470, at *3 (N.C. Ct. App. May 1, 2018); see Walker v. Sloan, 529 S.E.2d 236, 243-44 (N.C. Ct. App. 2000).  All three principles apply here.

45.     *First*, even if § 13.07 of the Ground Lease and Assignment somehow did not create a valid assignment of the Landlord's interest in the Kmart Lease, it provided NAP with the actual authority to enter into the Second and Third Amendments.  The strongest manifestation of actual authority derives from contract, see Restatement (Third) of Agency § 3.01, and NAP exercised its contractual "right, title and interest" as Landlord when it entered into the Second and Third Amendments.  Such contractually authorized actions properly bind the fee owners.

14

See id.; Migerobe, Inc. v. Certina USA, Inc., 924 F.2d 1330, 1336 (5th Cir. 1991) (finding that a written memo gave salesman actual authority to enter into a particular transaction).

46.      *Second*, even if NAP lacked actual authority to enter into the Second and Third Amendments as Landlord, it had the apparent authority to do so.  Under North Carolina law, a principal is bound by an agent's actions if the agent had apparent authority to transact on behalf of the principal.  Zimmerman v. Hogg & Allen, Prof'l Ass'n, 286 N.C. 24, 30, 209 S.E.2d 795, 799 (1974).  "Apparent authority is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses."  Id.  "Where a third party in good faith and with reasonable prudence deals with an agent having apparent authority, the principal is bound by the agent's acts."  Foote & Davies, Inc. v. Arnold Craven, Inc., 324 S.E.2d 889, 892 (N.C. Ct. App. 1985).

47.      Here, principal and agent represented to Kmart by form of executed contract that NAP had all "right, title and interest" as Landlord.  Levander Decl., Ex. E, Ground Lease and Assignment §§ 13.07, 13.08.  Kmart therefore reasonably relied on NAP's subsequent repeated recitals that it was the successor to PADC as Landlord under the Kmart Lease, see Levander Decl., Ex. O, Second Amendment at 1; Levander Decl., Ex. S, Third Amendment at 1, and that it was "fully authorized to execute and deliver this [Third] Amendment," which was "not in violation of, inconsistent with, or contrary to the provisions of any agreement to which it is a party."  Id. § 6(f).

48.      Moreover, this reliance was justified by the parties' course of dealing.  See Morpul Research Corp. v. Westover Hardware, Inc., 140 S.E.2d 416, 418 (N.C. 1965) (apparent authority may be conferred "by reason of acts indicating authority which the principal has approved, or knowingly, or, at times, even negligently, permitted"); Foote, 324 S.E.2d at 893

(stating that the parties' "ordinary course of business" is a factor in determining apparent authority).

49.     Since 1969, Kmart has paid rent to NAP (or its predecessor NAC) as its Landlord without protestation from the fee owner.  See, e.g., Levander Decl., Ex. K, Letter from B. L. McGaw of NAC to H. F. Jarvis of Kmart.  Kmart therefore reasonably believed that NAP had the power to act as Landlord under the Kmart Lease and bind the fee owner.  Indeed, by 1992, when the Second Amendment was signed, Kmart and NAP had been in a landlord-tenant relationship for nearly 23 years.

50.     *Third*, and relatedly, the fee owners ratified NAP's execution of the Second and Third Amendments as Landlord.  "Ratification is 'the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons is given effect as if originally authorized by him.'"  Walker, 529 S.E.2d at 244 (quoting Espinosa v. Martin, 520 S.E.2d 101, 111 (N.C. Ct. App. 1999)).  Ratification may be either express or implied, Walker, 529 S.E. 2d at 244, and occurs when the principal receives and retains the benefit of a contract after acquiring knowledge of its circumstances, Citizens' Lumber Co. v. Elias, 154 S.E. 54 (N.C. 1930); see also Restatement (Third) of Agency § 4.01 cmt. g (ratification may be based on the receipt or retention of benefits generated by the agent's act).  A ratification, once effected, cannot later be revoked.  See Restatement (Third) of Agency § 4.02 cmt. b ("If a ratification occurs, the principal does not have the privilege of unilaterally revoking it.").

51.     In negotiating for the Second Amendment, and obtaining the benefit of a lease extension until 2032, Kmart took on significant obligations.  *First*, Kmart agreed to a more than 50% rent increase (from $136,700 per year to $208,900 per year), even though it was entitled to

continue paying the lower rent amount for several more years under the original Kmart Lease.

Levander Decl., Ex. O, Second Amendment ¶ 3. *Second*, Kmart contracted to expand its

storeroom at its own expense.  Id. ¶ 1.  *Third*, Kmart agreed to take on certain real estate taxes it

was not obligated to pay under the original Kmart Lease.  Id. ¶ 5.  Thus, Landlord and fee

owners benefited from higher rent and improvements to their property for more than 25 years on

the basis of an amendment they now argue is invalid.  Because fee owners enjoyed the benefits

derived from these Amendments—Kmart's continued tenancy of their property under improved

terms—for more than 25 years, they ratified these contracts as a matter of law.  See, e.g., GDG

Acquisitions LLC v. Gov't of Belize, 849 F.3d 1299, 1307-10 (11th Cir. 2017) (holding that the

Government of Belize's retention of telecommunications equipment for the duration of a ten-

year lease constitutes ratification); Thermo Contracting Corp. v. Bank of N.J., 354 A.2d 291, 296

(N.J. 1976) (accepting the benefit of the bargain for a period of 6 months before raising the

question of lack of authority constitutes ratification).

52.     *Finally*, the Bruce Trusts' objections should be rejected based on the doctrine of

equitable estoppel, which "precludes a party from asserting rights 'he otherwise would have had

against another' when his own conduct renders assertion of those rights contrary to equity."

Woodring v. Swieter, 637 S.E.2d 269, 279 (N.C. Ct. App. 2006) (citation omitted);  In"l Paper

Co. v. Schwabedissen Maschinen & Anlagen, GMBH, 206 F.3d 411, 417-18 (4th Cir. 2000).

This principle applies where a party seeks to terminate an interest in real property only after a

counterparty has expended money or labor in reliance on the existence of such an interest.  See

Delk v. Hill, 365 S.E.2d 218, 221 (N.C. Ct. App. 1988).

53.    Having so benefited from the Second Amendment as described above, Objectors

should now be estopped from asserting that the Amendments were invalid.[5]

## III.    Objectors' Counterarguments Are Unavailing

54.    Objectors argue in the alternative that the Kmart Lease expired on January 31,

2001 or that it terminated on January 31, 2019.  Both arguments fail:  The Kmart Lease was

effectively amended in 1992 and again in 2017 such that it is currently unexpired, and the Kmart

Lease created a tenancy that survives the termination of the Ground Lease, not a subtenancy.

### a.    The Kmart Lease Did Not Expire in 2001

55.    Objectors argue that the Second and Third Amendments were ineffective, and that

the Kmart Lease therefore expired on January 31, 2001, at the end of the original 20-year term

and three additional five-year terms.  The upshot of this absurd and untimely argument would be

that the Landlord has been collecting Kmart's rent for the last 18 years pursuant to an expired

lease.

56.    Objectors first assert that the Second and Third Amendments were ineffective

because they were signed by NAP, not the fee owners.  This argument is plainly belied by

§ 13.07 of the Ground Lease and Assignment, which provides NAP with "all the right, title and

interest of the Landlord" in the Kmart Lease such that NAP was authorized to act as Landlord.

The only restrictions on NAP's "right, title and interest" derive from § 13.10 of the Ground

Lease and Assignment, which explicitly prevents NAP from <u>shortening</u> the term of the Kmart

Lease, but provides no similar prohibition on <u>lengthening</u> this term.  <u>See, e.g.</u>, <u>Dickens</u>, 276

---

[5]    Relatedly, the Objectors are barred from asserting that the Kmart Lease expired in 2001 by the doctrine of laches.  Under North Carolina law, laches applies "where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim . . . and when the claimant knew of the existence of the grounds for the claim."  <u>Abernethy v. Town of Boone Board of Adjustment</u>, 427 S.E.2d 875, 878 (N.C. Ct. App. 1993).  Here, it is unjust for Objectors to argue that the Kmart Lease expired in 2001 when they have benefitted from Kmart's expending sums of money to improve the premises and taking on the burden of increased rent and property taxes from 1992 until the present.

S.E.2d at 330 n.8.  In short, the fee owner assigned its rights as Landlord to NAP, which was

therefore the proper landlord to extend the Kmart Lease in the Second and Third Amendments.

57.     Alternatively, Objectors argue that the Second and Third Amendments should

have been signed by Asheville K-M as the Ground Lease tenant.[6]  But, as discussed in more

detail below, the Second and Third Amendments modified and extended the Kmart Lease, which

is not a sublease to the Ground Lease, and the Amendments therefore need not have been signed

nor approved by the Ground Lease tenant.

58.     Next, Objectors argue that the Second Amendment was unauthorized because

§ 13.03 of the Ground Lease and Assignment prohibits subleases of the Ground Lease exceeding

ten years.  April Objection ¶ 37.  Once more, this argument fails because the Kmart Lease is not

a sublease of the Ground Lease, nor is it a sublease at all.

59.     Section 13.03 states:  "Tenant may sublet any part of the Demised Premises to an

occupying subtenant without the written consent of the Landlord provided:  . . . (b) The Term of

said Lease shall be no more than ten (10) years."  Levander Decl., Ex. E, Ground Lease and

Assignment § 13.03 (emphasis added).  By its terms, this provision envisions a hypothetical

future sublease, not the extensions of the existing Kmart Lease.

60.     The Ground Lease and Assignment carefully distinguishes between existing

leases, which include the Kmart Lease, and potential future subleases of the Ground Lease, as

described in § 13.03.  Compare id. §§ 1(d) (addressing "Existing leases"), 13.07 (describing "all

leases now in effect covering the demised premises"), 13.08 ("right, title and interest of the

Tenant in and to all leases now in effect") with id. §§ 13.01 (establishing the future right to

---

[6]     Asheville K-M Associates assigned its interest in the Ground Lease to Asheville K-M Associates, LLC on
December 31, 1999.  Levander Decl., Ex. Q, Assignment.  For ease of reference, "Asheville K-M" refers to both
Asheville K-M Associates and Asheville K-M Associates, LLC.

"sublet all of the Demised Premises"), 13.03 (providing the future right to "sublet any part of the Demised Premises" under certain conditions), 13.08 ("right, title and interest . . . hereafter leased to the subtenants of the premises").  To interpret the Kmart Lease as a sublease within the ambit of § 13.03 would conflate the Ground Lease and Assignment's distinct usage of "existing leases" and "subleases" and violate the cardinal principle of contract construction that every word must be given independent meaning.  See, e.g., Williams v. Ohio Nat'l Life Assurance Co., 364 F. Supp. 3d 605, 610 (W.D.N.C. 2019) (citing Woods v. Nationwide Mut. Ins. Co., 246 S.E.2d 773, 777 (1978)) ("If possible, every word of a contract is to be given effect.").  In sum, § 13.03 of the Ground Lease and Assignment had no effect on NAP's ability to grant an extension of the Kmart Lease until 2032.

61.    Finally, Objectors assert that the Amendments were ineffective because there is no evidence that notice was provided to Asheville K-M, as they insist was required under the terms of the Sandwich Lease.  However, the Sandwich Lease requires only that notice be provided of an extension of the Sandwich Lease itself; it creates no such requirement related to the Kmart Lease.  In any event, the appropriate remedy even if NAP had failed to provide requisite notice to Asheville K-M would not be the nullification of the Second and Third Amendments at Kmart's expense.

### b. The Kmart Lease Did Not Expire in January 2019

62.    In the alternative, Objectors argue that, under North Carolina law, the termination of the Ground Lease triggered the termination of the Kmart Lease.  April Objection ¶ 39 (citing E. Town Mkt., L.P. v. 550 Foods, LLC, 776 S.E.2d 364 (Table), No. COA15-46, 2015 WL 44484555, at *6 (N.C. Ct. App. July 21, 2015); Neal v. Craig Brown, Inc., 86 N.C. App. 157, 163 (1987)).  Objectors' argument is based on the incorrect premise that the Kmart Lease is a

"dependent sublease" of the Ground Lease.  The North Carolina cases cited by Objectors are therefore inapplicable.

63.    The Kmart Lease and each of the three amendments to the Kmart Lease all explicitly describe a relationship between a primary landlord and primary tenant, not sublandlord and subtenant.  Levander Decl., Ex. A, Kmart Lease; Levander Decl., Ex. O, Second Amendment; Levander Decl., Ex. S, Third Amendment.  Despite Objectors' arguments otherwise, Kmart never became a subtenant and never became party to a sublease.

64.    Under North Carolina law, a "sublease" requires that a tenant act as sublandlord to lease some portion of its tenancy to a subtenant.  See Northside Station Assocs. P'ship v. Maddry, 413 S.E.2d 319 (N.C. Ct. App. 1992); see also 1 Webster's Real Estate Law in North Carolina § 12.14 (A "sublease . . . exists when the tenant alienates the land or subject of the lease for only a part of his time, leaving a reversion of the remainder of his term, however short, in himself."); Subtenant, Black's Law Dictionary (10th ed. 2014) (A "subtenant" is "one who leases all or a part of the rented premises from the original lessee for a term less than that held by the latter.").  By contrast, a lease between the assignee of a landlord and a tenant creates a tenancy, not a subtenancy.  See Rose v. Vulcan Materials Co., 194 S.E.2d 521, 535 (N.C. 1973) (quoting Cook v. Eastern Gas & Fuel Assocs., 39 S.E.2d 321 (W. Va. 1946) ("The assignee steps into the shoes of the assignor."); In re Jason Realty, L.P., 59 F.3d 423, 427-29 (3d Cir. 1995) (holding that a landlord's assignment of rights to certain leases transfers title in those leases to the assignee).  Under these circumstances, the landlord assignee and tenant are in direct privity of contract.

65.    Objectors concede that the Kmart Lease established a landlord-tenant relationship between the fee owner of the store at 1001 Patton Avenue and Kmart's predecessor corporation.

See April Objection ¶ 3.  The fee owner then assigned NAP "all the right, title and interest" in

the Kmart Lease, "including the right to receive and collect the rents and profits therefrom," and

NAP "assume[d] the performance of all of the obligations" of the fee owner under the Kmart

Lease "of the Landlord under all of such leases."  Levander Decl., Ex. E, Ground Lease and

Assignment § 13.07.  Pursuant to this assignment, NAP and Kmart entered into the Second and

Third Amendments as Landlord and tenant, and never turned the Kmart Lease into a subtenancy.

Levander Decl., Ex. O, Second Amendment; Levander Decl., Ex. S, Third Amendment.

## IV.    The Bruce Trusts' Supplemental Objections Fail

66.    For the reasons set forth by the Court on the record at the May 8, 2019 hearing

and as described in *Transform Holdco LLC's Omnibus Reply in Support of Assumption and

Assignment of Designated Leases* (the "Omnibus Reply") (ECF No. 3654), the Bruce Trusts'

objections to adequate assurance, cure, and restrictive covenants fail.

67.    *First*, Objectors assert that Debtors have failed to provide adequate assurance of

the future performance of Transform and its assignee affiliates, and that they have not received

financial or other information about these entities sufficient to determine whether the assignee

can perform the Kmart Lease obligations.

68.    On May 7, 2019, Transform filed the Omnibus Reply, which, among other things,

set forth that "Transform has sufficiently demonstrated adequate assurance of future

performance," as required by Section 365 of the Bankruptcy Code.  Omnibus Reply ¶ 19.  As

explained by the Omnibus Reply, in order to provide adequate assurance, Transform does not

need to show an absolute guarantee that it will thrive and make a profit, but rather simply that it

appears that it will meet its lease obligations.  See In re Natco Indus., Inc., 54 B.R. 436, 440

(Bankr. S.D.N.Y. 1985) (noting that the adequate assurance standard does not require a debtor to

prove that it "will thrive and make a profit," but rather that it "appears that the rent will be paid
and other obligations thereunder met"); see also In re Peterson's Ltd., 31 B.R. 524, 528 (Bankr.
S.D.N.Y. 1983) ("[A]ssurance does not require a 100% guarantee that the lease will be
performed.  It merely requires 'adequate' assurance and that has been provided.").  At the May 8,
2019 hearing, the Court stated that "[t]he caselaw is clear that, although the Bankruptcy Code
does not defined adequate assurance, Courts are counseled to give the phrase a pragmatic
construction focusing on the assignees' ability to fulfill the financial obligations under the lease.
That construction is clearly short of a guarantee of payment. . . ."  Tr. Hr'g 35:19-24, May 8,
2019.

69.    In order to provide adequate assurance to counterparties of executory contracts
and leases that Debtors sought to assume and assign to Transform and its affiliates, on April 26,
2019, Transform made available a letter to counterparties setting forth important information
about its ability to perform under the contracts and leases going forward (the "April 26 Letter").
The April 26 Letter tracked information in a previously-furnished letter to certain counterparties
dated January 18, 2019, which the Bankruptcy Court found sufficient to satisfy adequate
assurance of future performance when the Court approved the sale of assets to Transform.  In the
April 26 Letter, Transform laid out the financing terms of the sale transaction and subsequent
improvements in capital structure, demonstrating that Transform and its affiliates have sufficient
capital to perform under the applicable assumed contracts and leases on a go-forward basis.  The
April 26 Letter also outlined a recent financing transaction, which underscores the willingness of
outside lenders to transact with Transform on terms favorable to it, further strengthening its
ability to perform under the assumed contracts and leases.

70.     To address any concerns by landlords who timely raised adequate assurance objections, arguing that the lack of segregated financials impacts the Bankruptcy Court's ability to properly assess assurances provided by Transform, Transform offered in its Omnibus Reply a guarantee by Transform MidCo LLC to those landlords seeking further adequate assurance.  See Omnibus Reply, Ex. A, Proposed Order at Ex. B.

71.     The Court has repeatedly found that Transform has demonstrated adequate assurance of future performance, and should do so again here.  Sale Order ¶ 31; Tr. Hr'g 35:11-37:19, May 8, 2019.  At the May 8, 2019 hearing, the Court found that the evidence before it demonstrates that Transform has substantial available cash (the amount of which has increased since the sale hearing), Transform's financing is improved on a covenant and cash flow basis since the sale hearing, Transform has substantial equity on a balance sheet basis and projections showing a prompt return to positive EBITDA, and that Transform has agreed to provide a guarantee of Transform MidCo LLC, which has access to this substantial equity.  Tr. Hr'g 36:25-37:16, May 8, 2019.  Given this evidence, the Court concluded that Transform had met its burden under Section 365 to show adequate assurance of future performance.  Id. 37:16-19

72.     The Bruce Trusts further object to the Revised Cure Amount of $0.00 contained in the Designated Lease Notice filed by Transform on April 19, 2019.  According to the Bruce Trusts, including the February and March 2019 rent checks that they have received but not deposited, a balance of $69,633.32 remained outstanding under the Kmart Lease as of April 29, 2019.

73.     As explained in the Omnibus Reply, Transform has agreed to escrow, within five (5) business days, the full value of any disputed cure amount pending an agreement between

Transform and the Bruce Trusts or further order of the Court.  This procedure provides adequate assurance of the payment of any valid cure amount required by Bankruptcy Code Section 365(b).

74.    Finally, the Bruce Trusts object to the assignment of the Kmart Lease free and clear of restrictive covenants, without referring to any specific restrictive covenants in the Lease they seek to retain.  Objectors point to no specific restrictive covenants in the Kmart Lease to which they object, and none are readily apparent in the Kmart Lease or its amendments.[7]  In any event, Transform is not seeking to modify any restrictive covenant in the Kmart Lease.

## CONCLUSION

75.    Transform requests that the Court deny the Bruce Trusts' objections and grant assumption and assignment of the Kmart Lease pursuant to 11 U.S.C. § 365.

Dated: May 14, 2019
       New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Luke A. Barefoot*
Luke A. Barefoot
Samuel Levander

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Transform Holdco LLC*

---

[7]    To the extent that the Bruce Trusts object to the provision of the Kmart Lease allowing assignment, but maintaining that tenant still be liable if assigned without their consent, that objection fails.  Pursuant to section 365(f), an anti-assignment provision in a lease is unenforceable with respect to the assignment of such lease from a debtor to a third party.  *See* 11 U.S.C. § 365(f).

# Appendix A

LANDLORD
TENANT
Patton Avenue Development Corporation
Lease dated 12/18/64
First Amendment dated 8/27/65
S.S. Kresge Company
Lease dated 12/18/64
G-K, Inc.
Deed dated 2/1/66
Martin Bruce & Sylvia Bruce
Deed dated 2/1/66
Patton Plaza Associates
Ground Lease & Assignment dated 2/1/66
Nineteenth Asheville Corp.
Assignment dated 11/6/69
Asheville K-M Associates
Assignment dated 12/17/75
Assignment dated 12/23/75
Nineteenth Asheville Corp. (subsequently, Nineteenth Asheville Properties)
Assignment dated 12/23/75
Kmart Corporation
By Name Change 1977
Second Amendment dated 3/3/92
Kmart of North Carolina LLC
Assignment 7/29/99
Kmart Corporation
Assignment dated 12/13/07
Third Amendment dated 5/23/17

