# Exhibit J

<u>ASSIGNMENT OF LEASES</u>

ASHEVILLE K-M ASSOCIATES, a North Carolina limited partner-
ship, having an office c/o Paul Green, Esq., 501 Madison Avenue,
New York, New York 10022, hereinafter called "ASSIGNOR" for
and in consideration of the sum of Ten ($10) Dollars and other
good and valuable considerations to it in hand paid by NINETEENTH
ASHEVILLE CORP., having an office at 1133 Avenue of the Americas,
19th floor, New York, New York 10036, hereinafter called "ASSIGNEE",
the receipt of which is hereby acknowledged, does hereby transfer,
sell, assign and set over to said Assignee, the leases described
in EXHIBIT B, annexed hereto and made a part hereof.

The above leases pertain to building and site improvements
erected at the property described in EXHIBIT A hereto annexed.

TO HAVE AND TO HOLD UNTO THE SAID ASSIGNEE, their successors
and assigns forever.

The assignee is the tenant of the premises in Exhibit A
annexed hereto under a lease of even date herewith and upon
termination of said lease in any manner, or for any reason, the
Assignee, after ten (10) days written notice shall reassign the
above leases to the Assignor  or the then owner of the premises,
and upon its failure to do so the Assignor or the then owner
is hereby designated attorney-in-fact for the Assignee to make
such reassignment with full power and substitution.

-1-

seal this 23ʳᵈ day of December, 1975.

ASHEVILLE K-M ASSOCIATES

By

Paul Green, General Partner

## ASSUMPTION

The undersigned corporation, NINETEENTH ASHEVILLE CORP.
as Assignee, does hereby accept the foregoing instrument and
assumes all of the obligations of the landlord thereunder.

IN WITNESS WHEREOF, the Assignee has set its hand and seal
this 23ʳᵈ day of December, 1975.

NINETEENTH ASHEVILLE CORP.

By

Harold W. Schulkind, Vice Pres.

ATTEST: _____
Robert Goldberg, Secretary

STATE OF NEW YORK    )
                     ) SS.
COUNTY OF NEW YORK   )

BE IT REMEMBERED, That on this 23ʳᵈ day of December, 1975,
before me the subscriber, a Notary Public in and for said county,
personally came the above named NINETEENTH ASHEVILLE CORP., the
Tenant, in the foregoing Memorandum of Lease, by Harold W. Schulkind,
a Vice President, and Robert Goldberg, Secretary, of said corpora-
tion, who acknowledged the signing of the same to be their voluntary
act and deed for and as the act and deed of said Corporation, for
the uses and purposes therein mentioned.

JULIE BLANKE
Notary Public, State of New York
No. 41-0313060
Qualified in Queens County
Commission Expires March 30, 1977

-2-

STATE OF NEW YORK    )
                     ) SS.
COUNTY OF NEW YORK   )


BE IT REMEMBERED, That on this 23ʳᵈ day of December, 1975,
before me the subscriber, a Notary Public in and for said county,
personally came the above named ASHEVILLE K-M ASSOCIATES, the
Tenant, in the foregoing Memorandum of Lease, by Paul Green,
a general partner, who acknowledged the signing of the same to
be his voluntary act and deed for and as the act and deed of
said partnership, for the uses and purposes therein mentioned.

_JulieBlanke_

JULIE BLANKE
Notary Public, State of New York
No. 41-0310050
Qualified in Queens County
Commission Expires March 30, 1977

-3-

All that certain plot, piece or parcel of land
with the buildings and improvements thereon erected, situate,
lying and being in the City of Asheville, County of Buncombe,
North Carolina:

TRACT ONE:   BEGINNING at a concrete monument in
the northern margin of the right of way line of dual U.S. Highways
#19-23, known as Patton Avenue, at the southeast corner of the
lands of Wachovia Bank and Trust Company and running thence
with the line of said Bank, N 12-52 W 227 feet to a concrete
monument;   thence S 89-45 W 119.3 feet to a concrete monument
in the right of way line of Louisiana Avenue;   thence N 36-57
W 221.5 feet to an iron in the eastern margin of Louisiana
Avenue;   thence with the eastern margin of Louisiana Avenue
N 28-51 W 63.5 feet to an iron pipe;   the Joyner corner;   thence
with Joyner S 81-17 E 234.57 feet to an iron pipe;   thence still
with Joyner N 3-7 E 161.69 feet to a concrete monument, the
Joyner northeast corner;   thence with Joyner N 78-27 W 353.92
feet to an iron in the eastern margin of Louisiana Avenue;
thence with the eastern Margin of Louisiana Avenue N 19-26 W
87.85 feet;   thence still with said Avenue N 5-22 W 100 feet;
thence S 86-10-30 E 114.09 feet to an iron pipe;   thence N
7-20 E 52.86 feet, corner with Hargus;   thence with Hargus S.
76-10-30 E 124.63 feet;   thence N 7-34-30 E 93.99 feet;   thence
N 5-50 E 181.17 feet;   thence S 70-45 E 312 feet to an iron;  
thence N 37-26 E 148.93 feet to an iron;   thence S 70-11 E
573.02 feet to an iron in Hawkins Lane;   thence with Hawkins
Lane S 27-56 W 386.4 feet to a concrete monument;   thence N
82-15 W 113.79 feet to an iron;   thence S 32-53-30 W 193.5
feet to a concrete monument;   thence S 23-27 W 165.86 feet to
a concrete monument;   thence S 85-57-30 E 17.59 feet to a dogwood
tree;   thence S 20-50-30 E 290.35 feet to an existing spike in
the northern margin of Patton Avenue;   thence with the northern
margin of Patton Avenue S 85-26-30 W 350.45 feet to a concrete
monument;   thence still with the northern margin of Patton
Avenue S 87-34 W 25 feet to the point of Beginning.   Subject,
however, to right of way for the widening of Hawkins Lane and
the right of way for the widening of Louisiana Avenue.

TRACT TWO:   BEGINNING at an iron pipe in the
eastern margin of Louisiana Avenue, Wells' northwest corner,
and running thence with the Wells' line, S 81-17 E 234.57 feet
to an iron in the line of the land of G-E, Inc.;   thence
with said line N 3-7 E 161.69 feet to a monument at a 24 inch
pin, corner with Shelton;   thence with the Shelton line N
78-27 W 353.92 feet to an iron pipe in the eastern margin of
Louisiana Avenue;   thence with the eastern margin of Louisiana
Avenue S 19-26 E 12.15 feet and S 28-51 E 211.64 feet to the
point of Beginning.

EXHIBIT "A"

1.  Lease dated December 18,1964 from Patton Avenue Development
    Corporation to S. S. Kresge (memorandum of lease recorded
    in Book 918, page 279).

2.  Lease dated May 6, 1966 from Patton Plaza Associates to
    Bancroft Realty Company (Eckerd's Drugs,Inc.)

3.  Lease dated June 11, 1972 from Nineteenth Asheville Corp. to
    Piece Goods Shops, Inc. of North Carolina.

4.  Lease dated February 12, 1974 from Nineteenth Asheville Corp.
    to Blazer Financial Services, Inc.

EXHIBIT  "B"

# Exhibit K

December 30, 1975    **LEASE FILE**

MR. H. F. JARVIS
REAL ESTATE ACCOUNTING

Re:  K mart #4112
     Asheville, North Carolina

 By double Assignment of Lease - from Nineteenth Asheville Corp. to Asheville
K-M Associates dated December 23, 1975 and from Asheville K-M to Nineteenth
Asheville Corp., also dated December 23, 1975, we arrive at the same landlord
as heretofore and all correspondence, notices and rent payments will continue
to be forwarded as follows:

Checks payable to:    Nineteenth Asheville Corp.

Mailed to:            1133 Avenue of the Americas
                      19th floor
                      New York, N. Y. 10036

cc: AREO
    Miss Gruss
    Lease File

                                   B. L. McGaw

# Exhibit L

## J & W MANAGEMENT CORP.

1633 BROADWAY, 14TH FL. • NEW YORK, NEW YORK 10019 • (212) 265-6600

February 3, 1988

K-Mart Corporation
International Headquarters
3100 West Big Beaver Road
Troy, MI  48084

Re:   FE 107 - Battle Creek, MI - 4065
      141 - St. Louis, MO 4270
      142 - Denver, CO 4224
      147 - Elkhart, IN 4249
      170 - Marion, IN 4294
      200 - Greeley, CO 4347
      207 - Asheville, NC 4112

Gentlemen:

Please change the payees on your rent checks for each of
above locations to read "......... Properties" instead
of "......... Corp."  We dissolved all of these corporations
in January, 1976.  Thereafter your landlord has been Marilyn
J. Samuels and Walter R. Samuels d/b/a "......... Properties"
in each instance, just as it has been for many other K-Marts
in which the Samuels' are your landlord.  Examples include
'Third Oregon Properties, 'Third Hamilton Properties', 'Eight
Antioch Properties', etc.

Also enclosed are copies of assignments of Landlord's interest
in each of the above-named entities.

Very truly yours,

Arthur Seibert

AS:cp
Encs.

# Exhibit M

BK 1515 PG 258

REGISTERED

'88 APR 12 P3:11

|  |  |
|---|---|
| Excise Tax - 0 - | Recording Time, Book and Page |

Tax Lot No. ................................................................ Parcel Identifier No. ................................................................

Verified by ................................................ County on the ................ day of ................................................, 19............

by ........................................................................................................................................................

Mail after recording to    ALFRED G. ADAMS,   VAN WINKLE, BUCK, WALL, STARNES, & DAVIS, P.A.
................................................ POST OFFICE BOX 7376, ASHEVILLE, NC  28802 ................................................

This instrument was prepared by    ALFRED G. ADAMS ........................................................

Brief description for the Index

# NORTH CAROLINA SPECIAL WARRANTY DEED

THIS DEED made this ..05.... day of ..~~MARCH~~ APRIL......................, 19..88...., by and between

| GRANTOR | GRANTEE |
|---|---|
| MARTIN BRUCE AND WIFE, SYLVIA BRUCE | MARTIN BRUCE, TRUSTEE OF THE MARTIN BRUCE REVOCABLE TRUST DATED THE 21ST OF JANUARY 1988 |
|  | **A 50% UNDIVIDED INTEREST |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of ASHEVILLE ..............................., ........................................... Township, BUNCOMBE ........................................ County, North Carolina and more particularly described as follows:

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF AS IF SET FORTH HEREIN VERBATIM.

THIS DEED IS BEING MADE SIMULTANEOUSLY WITH A LIKE DEED BY SYLVIA BRUCE TO SYLVIA BRUCE AS TRUSTEE UNDER TRUST INDENTURE DATED JANUARY 21, 1988 WITH THE INTENDED RESULT THAT THE GRANTEE HEREIN, AS TRUSTEE HEREINABOVE DESCRIBED, SHALL OWN 50% INTEREST AS TENANT-IN-COMMON WITH SYLVIA BRUCE AS SUCH TRUSTEE OF THE REMAINING 50% INTEREST AS TENANT-IN-COMMON, IN THE PREMISES ABOVE DESCRIBED.

A MEMORANDUM OF TRUST AGREEMENT ALLOWING THE TRUSTEE TO SELL, CONVEY, OR MORTGAGE THE ABOVE DESCRIBED PROPERTY SUBJECT TO THE TRUSTEE'S SOLE DISCRETION IS ATTACHED HERETO AS EXHIBIT B.

N. C. Bar Assoc. Form No. 6 © 1977 — James Williams & Co., Inc., Box 127, Yadkinville, N. C. 27055
Printed by Agreement with the N. C. Bar Assoc. — 1981

**Book: 1515  Page: 258  Seq: 1**

BK 1 5 1 5 PG 2 5 9

EXHIBIT A

### TRACT ONE

BEGINNING at a concrete monument in the northern margin of the right-of-way line of dual U. S. Highway #19-23, known as Patton Avenue, at the southeast corner of the lands of Wachovia Bank and Trust Company and running thence with the line of said Bank, North 12 deg. 52 min. West 227 feet to a concrete monument; thence South 89 deg. 45 min. West 119.3 feet to a concrete monument in the right-of-way line of Louisiana Avenue; thence North 36 deg. 57 min. West 221.5 feet to an iron in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, North 28 deg. 51 min. West 63.5 feet to an iron pipe; the Joyner corner; thence with Joyner, South 81 deg. 17 min. East 234.57 feet to an iron pipe; thence still with Joyner, North 3 deg. 7 min. East 161.69 feet to a concrete monument, the Joyner northeast corner; thence with Joyner, North 78 deg. 27 min. West 353.92 feet to an iron in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, North 19 deg. 26 min. West 87.85 feet; thence still with said Avenue, North 5 deg. 22 min. West 100 feet; thence South 86 deg. 10 min. 30 sec. East 114.09 feet to an iron pipe; thence North 7 deg. 20 min. East 52.86 feet, corner with Hargus; thence with Hargus, South 76 deg. 10 min. 30 sec. East 124.63 feet; thence North 7 deg. 34 min. 30 sec. East 93.99 feet; thence North 5 deg. 50 min. East 181.17 feet; thence South 70 deg. 45 min. East 312 feet to an iron; thence North 37 deg. 24 min. East 148.93 feet to an iron; thence South 70 deg. 11 min. East 573.02 feet to an iron in Hawkins Lane; thence with Hawkins Lane, South 27 deg. 56 min. West 386.4 feet to a concrete monument; thence North 82 deg. 15 min. West 113.79 feet to an iron; thence South 32 deg. 53 min. 30 sec. West 193.5 feet to a concrete monument; thence South 23 deg. 27 min. West 165.86 feet to a concrete monument; thence South 85 deg. 57 min. 30 sec. East 17.59 feet to a dogwood tree; thence South 20 deg. 50 min. 30 sec. East 290.35 feet to an existing spike in the northern margin of Patton Avenue; thence with the northern margin of Patton Avenue, South 85 deg. 26 min. 30 sec. West 350.45 feet to a concrete monument; thence still with the northern margin of Patton Avenue, South 87 deg. 34 min. West 25 feet to the point of BEGINNING. Subject, however, to right-of-way for the widening of Hawkins Lane and the right-of-way for the widening of Louisiana Avenue, and together with and subject to rights of ingress, egress, and regress in, over and through that tract of land fronting 50 feet on Patton Avenue and running North 12 deg. 52 min. West 35 feet, the center line of which is the first call in the foregoing description.
LESS AND EXCEPTING THAT property conveyed to the Trustees of the Temple Baptist Church as recorded in Deed Book 1085, at Page 359, of the Buncombe County, N.C. Register's Office.
The above described property being the same property conveyed to Martin Bruce and wife, Sylvia Bruce as recorded in Deed Book 935, at Page 1, of the Buncombe County, N.C. Register's Office.

### TRACT TWO

BEGINNING at an iron pipe in the eastern margin of Louisiana Avenue, Wells' northwest corner, and running thence with the Wells' line, South 81 deg. 17 min. East 234.57 feet to an iron in the line of the land of G-K, Inc.; thence with said line, North 3 deg. 7 min. East 161.69 feet to a monument at a 24-inch pin, corner with Shelton; thence with the Shelton line, North 78 deg. 27 min. West 353.92 feet to an iron pipe in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, South 19 deg. 26 min. East 12.15 feet and South 28 deg. 51 min. East 211.64 feet to the point of BEGINNING.
The above described property being the same property conveyed to Martin Bruce and wife, Sylvia Bruce as Tenants, in Common as recorded in Deed Book 1105, at Page 708, of the Buncombe County, N.C. Register's Office.

BK 1515 PG 260

EXHIBIT B

SYLVIA BRUCE REVOCABLE TRUST

## DECLARATION OF TRUST

I, Sylvia Bruce, as Settlor, of Dade County, Florida, have transferred to myself, as Trustee, the property listed on the attached Schedule "A" and I declare that I hold such property in trust according to the terms and conditions of the instrument.

## **WITNESSETH**

WHEREAS, the Settlor is desirous of creating a revocable trust primarily for the benefit of herself, her husband and children; and

WHEREAS, the Settlor desires to create such trust with property described in Schedule "A" annexed hereto and made a part hereof; and such other property, real, personal or mixed, as she or others may hereafter contribute to said trust, all of which property shall hereinafter be referred to as the "Trust Estate";

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, the Trust Estate shall be held and administered IN TRUST upon the terms and conditions and for the uses and purposes as hereinafter follow:

## ARTICLE I

## NAME OF TRUST

This trust shall, for convenience, be known as the SYLVIA BRUCE REVOCABLE TRUST dated the _____ day of January, 1988, and it

- 3 -

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 868-7800

BK 1515 PG 261

(b)   Any Trustees may settle his or her account at any time by agreement with the beneficiaries or judicially. Any such agreement shall be made with those beneficiaries who are subject to no legal disability and who, at the time are, or would be, entitled to income or principal if the same were then distributable. Such an agreement shall bind all persons, whether or not then in being or of legal capacity; then or thereafter entitled to any income or principal and such an agreement shall release and discharge said Trustee for the acts and proceedings embraced in the account as effectively as a judicial settlement. The Trustee shall pay the costs and expenses of any such action or proceeding out of the principal or income or both of the trust concerned including the compensation and expenses of attorneys or guardians who may be necessary.

6.   Compensation of Trustees.

Any individual trustee acting hereunder shall be entitled to, but may waive, reasonable compensation for his or her services rendered hereunder. Any corporate trustee acting hereunder shall be entitled to compensation based on its published fee schedule from time to time, provided such fees are reasonable for the services rendered.

ARTICLE X

TRUSTEE'S POWERS

The Trustees and their respective successors are hereby authorized and empowered by this Trust Agreement, to exercise from time to time in their absolute discretion, and without prior

- 17 -

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS. FL 33154 - (305) 868-7800

BK 1515 PG 262

authority of any court, in respect of any property forming part of any trust created pursuant to this Trust Agreement, all powers conferred by law upon them, or expressed in this Trust Agreement, and it is intended that such powers including the following be construed in the broadest possible manner:

1. To retain any such property as an investment without regard to the proportion which such property or property of a similar character so held may bear to the entire value of the trust in which such property is held, whether or not such property is of the class in which Trustees are authorized by law to invest trust funds.

2. To invest and reinvest in and to acquire by exchange or otherwise property of any character including stocks of any classification, obligations or other property, real or personal, whether or not of the same kind, and participations in any common trust fund, without regard to diversification and without being limited to the investments authorized by law for the investment of trust funds.

3. To sell at public or private sale, grant options on, exchange or otherwise dispose of all or any part of such property or any interest therein at such times and upon such terms and conditions, including credit, as shall seem proper and to give good and sufficient instruments of transfer thereof and to receive the proceeds of any such disposition.

4. To register and carry any security or property in their own names or in the name of their nominee or to hold it unregistered but without thereby increasing or decreasing their liability as fiduciaries.

5. To employ as custodian or agent a bank or trust company located within or without the United States, and to acquire, hold, register or dispose of property in the name of such custodian or agent or a nominee thereof without designation of fiduciary capacity, and to pay out of principal or income, or both, the charges and expenses of any such custodian or agent.

6. To deposit funds in the savings department of any Corporate Trustee or of any other bank without limitation as to duration or amount.

7. To exercise or sell all conversion, substitution and other rights, options, powers and privileges, to vote at any corporate meetings; to delegate discretionary voting power to one or more proxies, or to trustees of a voting trust for any period of time.

- 18 -

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING · 1140 KANE CONCOURSE · BAY HARBOR ISLANDS, FL 33154 · (305) 868-7800

BK 1515 PG 263

8.   To hold, manage and invest property constituting separate shares of any of the trusts or separate trusts hereunder, in solido, for convenience of investment and administration.

9.   To merge any trust created herein that will continue after the death of Settlor and Settlor's spouse with any continuing testamentary or inter-vivos trust created by Settlor's spouse upon the death of the survivor of the Settlor and the Settlor's spouse; provided, however, that the terms for the retention, administration and distribution of each trust before any such merger shall govern the principal and income of each trust after such merger.

10.   To consent to, or otherwise participate in any voting trust, merger, consolidation, reorganization, dissolution, liquidation, sale, exchange, lease, mortgage, pledge or other change affecting any corporate security or other property held by any trust herein created.

11.   To organize corporations under the laws of this or any other state and to transfer all or any part of a business or other assets held in any trust herein created, and to receive in exchange therefor such stocks, bonds, promissory notes and other securities as they may deem advisable.

12.   To sell, exchange, lease, mortgage, alter, improve or otherwise dispose of, any real property forming part of any trust herein created, upon such terms as they shall deem proper, and to execute and deliver deeds, leases, mortgages and other instruments relating thereto.   Any lease may be made for such periods (even though the same exceed the maximum terms specifically authorized by law) as they shall deem proper, and shall contain such covenants, including covenants of renewal, as may be desirable to effect any such leasing.

13.   To make a just and equitable division or partition of any such property, to allocate particular assets or portions thereof or undivided interests therein to the several beneficiaries or trusts as hereinabove provided and to make distribution in cash or in kind, or partly in each.

14.   To permit any person having an interest in the income of any trust hereby created to occupy any real property forming part of such trust upon such terms as my trustees shall deem proper, whether rent free, or in consideration of the payment of taxes, insurance, maintenance and ordinary repairs, or otherwise.

15.   To borrow in the name of any Trust (including on margin or other credit terms) herein created such sums for such periods and upon such terms as they shall deem necessary or convenient in the administration of such Trust, and to secure any such loan by mortgage or pledge.   No lender shall be bound to see to or be liable for the application of the proceeds, and no Trustees shall

- 19 -
BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 868-7800

BK 1515 PG 264

be personally liable, but each such loan shall be payable only out of assets of such Trust.

16. To extend the time of payment of any note, bond or other obligation, and mortgage held by them, or of any installment of principal or interest or to hold such note, bond, or other obligation, and mortgage after maturity as past due; to consent to the alteration or modification of any terms thereof, waive defaults in the performance of the terms thereof; to foreclose any such mortgage or compromise or settle claims thereunder; to take over, take title to or manage the property or any part thereof affected by any such mortgage, either temporarily or permanently, and in partial or complete satisfaction of any claim thereunder; to protect such property against or redeem it from, foreclosure for nonpayment of taxes, assessments or other liens; to insure, protect, maintain and repair such property; and generally, without limiting the foregoing specification, to exercise with respect to such note, bond or other obligation and mortgage or such property, all rights and powers as may be exercised by a person owning similar property in his own right.

17. To compromise, settle, submit to arbitration, or release, upon such terms as to them may seem proper, any claim or obligation of or against any Trust.

18. To apportion between principal and income stock dividends or distributions by a corporation or association in the shares of its own stock, whether in the form of a stock split or a stock dividend.

19. To charge to principal such sums as they shall determine to be the net loss incurred in operating or carrying any parcel of real property which in their opinion is not producing net income.

20. To determine whether or not to amortize from income either in whole or in part, the premium at which any property may be purchased, or depreciation on, or any expenses in connection with, any property, real or personal; to discontinue any sinking fund at any time and distribute the same as income, in whole or in part; to pay from principal or income, or partly from each, any deficit from the operation of any improved or unimproved property.

21. To employ and compensate, out of the principal or income of the Trust Estate, as the Trustees shall deem proper, agents, accountants, brokers, attorneys in fact, attorneys at law, specialists, investment counsel and other assistants and advisors deemed by them to be necessary for the proper settlement and administration of the trusts created herein, notwithstanding the fact that such persons or any of them may be interested in this trust as a fiduciary or beneficiary; and to pay to such persons in whole or in part, compensation for services whether such persons are serving alone, or with another fiduciary, with-

- 20 -

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 868-7800

BK 1515 PG 265

out prior application to court and in advance of the settlement of the account of the Trustees.  The Trustees shall be without any liability for the misconduct or the default of any such agent or attorney provided he was selected and retained with reasonable care.

22.    To reimburse themselves from any trust herein created for all reasonable expenses incurred in the administration there-of.

23.    To make distributions in cash or in specific property, real or personal, or an undivided interest therein, or partly in cash or partly in such property.

24.    With respect to any life insurance policies con-stituting an asset of any trust herein created, to pay premiums; to apply dividends in reduction of such premiums; to borrow against the cash values of such policies, and to use the proceeds therefrom either to pay premiums or for any other reason deemed advisable; to pledge such policies; to surrender such policies and receive the cash values thereof; to convert such policies into other forms of insurance, including paid-up insurance; to exercise any settlement options provided in any such policies; to receive the proceeds of any policy upon its maturity and to ad-minister such proceeds as a part of the principal of the trust and, in general, to exercise all other options, benefits, rights and privileges under such policies; provided, however, that any Trustee who is also an insured under any life insurance policy constituting an asset of any trust herein created, is specifi-cally prohibited from exercising any options, benefits, rights and privileges under such policies and is further prohibited from dealing in any manner whatsoever with such policies.

25.    To receive additional property from any person, by Will or otherwise, and to treat such property in the same manner as all other property.

26.    No person dealing with the Trustees shall be required to inquire into the necessity or propriety of any transaction entered into with them or into the application of any money or property paid or delivered to them.

27.    The neuter gender hereunder shall be deemed to include the masculine and feminine wherein necessary or appropriate, the masculine to include the feminine, the feminine to include the masculine, the singular to include the plural, and the plural to include the singular.

28.    Any of the named Trustees shall have the power to change the situs of any trust created hereunder to the state of his or her residence; or, if there be two Trustees named here-under, then by a unanimous vote of both Trustees; or, if there be more than two Trustees named hereunder, then by decision of a majority vote of such Trustees.

- 21 -

**BARASH & ASSOCIATES, P. A.**
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 866-7800

Bk 1515 Pg 266

29.   To terminate and distribute to the persons then entitled to receive or have the benefit therefrom, in the sole discretion of the Trustees, the balance of the Trust Estate, at such time as the principal of such trust created hereunder is less than Twenty-Five Thousand Dollars ($25,000).  This power shall not be exercisable, however, by a beneficiary who is also a Trustee of the Trust sought to be terminated.

30.   To delegate any or all of the powers, duties and discretion of a Trustee to any Co-Trustee (with the consent of such Co-Trustee) by an instrument in writing, which delegation may be revoked, at will, in the same manner.

31.   To exercise all tax-related elections, options and choices in such manner as will achieve, in such fiduciaries' sole judgment, the overall minimum in total combined present and reasonably anticipated future taxes of all kinds, upon not only Settlor's estate, but also its beneficiaries, any trusts hereunder, and their beneficiaries.  Without limiting the generality of the foregoing, the aforesaid direction to minimize taxes shall include the following particular matters:

(a)  Exclusion from, or inclusion in, Settlor's gross estate of any assets, and all matters of valuation for federal and state estate tax purposes;

(b)  Election as to alternate valuation dates for federal and state estate tax purposes;

(c)  Allocation of such charges and costs of administration as are available as deductions for reduction of either estate or income taxes;

(d)  Distribution of assets having different income tax bases among the beneficiaries;

(e)  Election to file, or not file, any permitted joint tax return with Settlor's spouse and to pay all or such ratable share of any taxes due thereon as they shall deem proper;

(f)  Election to consent, or not consent, to having any gifts made by Settlor's spouse treated as having been made one-half by Settlor for gift tax purposes;

(g)  Election to continue, revoke, or make any consent to any election under Subchapter S of the Internal Revenue Code;

(h)  Selection of any appropriate income tax fiscal year, timing of distributions and of payment of deductible expenses, etc.; and

(i)  Retaining of competent tax counsel for advice, the preparation of returns, tax controversies, etc.

- 22 -

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 868-7800

BK 1515 PG 267

Settlor's fiduciaries shall not be accountable to any person interested in Settlor's estate or any trust created herein for the manner in which they shall carry out this direction to mini- mize overall taxes; and, even though their decisions in this regard may result in increased tax or decreased distributions to such estate or trust, or to one or more beneficiaries, they shall not be required to make any compensating adjustments or reim- bursements among said estate, trust or beneficiaries by reason of the manner in which my fiduciaries carry out this direction.

32.    When required to make a distribution or transfer of all or part of the assets of Settlor's estate or of any trust created hereunder, Settlor's fiduciaries may retain therefrom assets sufficient in their judgment to cover any liability which may then or later be imposed upon them, including but not limited to their liability for estate, income or other taxes, until such liability shall have been finally determined.

33.    If any beneficiary of a Trust created hereunder shall be subject to income tax on all or a portion of the Trust's tax- able income because of a power over said Trust held by the bene- ficiary and the amount taxable has not actually been distributed to such beneficiary, then the Trustees are authorized to distri- bute to such beneficiary an amount sufficient to offset any in- come tax burden imposed on such beneficiary because of the exis- tence of such power.

34.    All powers granted herein shall be construed and exer- cised in a manner permitting the intended operation of any mari- tal deduction gift, in trust or otherwise, to accomplish its intended purpose and effect. Any power not complying with the applicable provisions of the Internal Revenue Code, as may from time to time exist, allowing said marital deduction, shall not be exercised by the Trustees with respect to any marital deduction gift made herein.

35.    To do all such acts and exercise all such rights and privileges, although not specifically mentioned hereunder, with regard to any such property as if the absolute owner thereof.

## ARTICLE XI

### GOVERNING LAW

The construction of this instrument, the validity of the interests created hereby, the administration of the Trust Estate, and the trusts herein created shall be governed by the laws of the State of Florida.

- 23 -

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 868-7800

BK 1515 PG 268

The property hereinabove described was acquired by Grantor by instrument recorded in .................................

DEED BOOK 1105, AT PAGE 708 AND DEED BOOK 935, AT PAGE 1

A map showing the above described property is recorded in Plat Book ..................... page .....................

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.**

And the Grantor covenants with the Grantee, that Grantor has done nothing to impair such title as Grantor received, and Grantor will warrant and defend the title against the lawful claims of all persons claiming by, under or through Grantor, except for the exceptions hereinafter stated.

Title to the property hereinabove described is subject to the following exceptions:

SUBJECT to   mortgages, leases, easements, agreement and encumbrances of record.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

------------------------------------------
(Corporate Name)

By: --------------------------------------

----------------------------------President

ATTEST:

-------------------------------------------

----------------------Secretary (Corporate Seal)

**USE BLACK INK ONLY**

_Martin Bruce_____(SEAL)
MARTIN BRUCE

_Sylvia Bruce_____(SEAL)
SYLVIA BRUCE

-------------------------------------(SEAL)

-------------------------------------(SEAL)

SEAL - STAMP   FLORIDA        DADE
~~NORTH CAROLINA~~ -----------------------County.

I, a Notary Public of the County and State aforesaid, certify that -----------------------
MARTIN BRUCE AND WIFE, SYLVIA BRUCE ---------------------- Grantor,
personally appeared before me this day and acknowledged the execution of the foregoing instrument. Witness my hand and official stamp or seal, this 5ᵗʰ day of APRIL ------------------, 1988.
NOTARY PUBLIC, STATE OF FLORIDA.
MY COMMISSION EXPIRES: JULY 26, 1991.
My commission~~BONDED THRU NOTARY PUBLIC UNDERWRITERS~~.  _Rochelle L. Hayes_____Notary Public

SEAL - STAMP      NORTH CAROLINA, -----------------------------County.
I, a Notary Public of the County and State aforesaid, certify that -------------------------,
personally came before me this day and acknowledged that ----- he is ------------------------ Secretary of
-------------------------------------------- a North Carolina corporation, and that by authority duly
given and as the act of the corporation, the foregoing instrument was signed in its name by its ------------------
President, sealed with its corporate seal and attested by ----------- as its ------------------------Secretary.
Witness my hand and official stamp or seal, this ----- day of ------------------------, 19------.

My commission expires: -------------------------    ------------------------------------Notary Public

The foregoing Certificate(s) of ------------------------------------------------------
------------------------_Rochelle L. Hayes_-------------------------------------------
--------------------------------------------------------------------------------------
is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

_Otto W. DeBruhl_-----------------REGISTER OF DEEDS FOR _Buncombe_--------- COUNTY
By _Sharon C. Taylor_-----------------Deputy/~~Assistant~~ Register of Deeds.

N. C. Bar Assoc. Form No. 6 © 1977 — James Williams & Co., Inc., Box 127, Yadkinville, N. C. 27055
Printed by Agreement with the N. C. Bar Assoc. — 1981

Book: 1515  Page: 258  Seq: 11

# Exhibit N

BK 1515 PG 269

REGISTERED

'88 APR 12 P3:11

| Excise Tax – 0 – | Recording Time, Book and Page |

Tax Lot No. .................................................................... Parcel Identifier No. ........................................................

Verified by ..................................................... County on the ............ day of ............................................, 19............

by ....................................................................................................................................................................................

Mail after recording to  ALFRED G. ADAMS,  VAN WINKLE, BUCK, WALL, STARNES, & DAVIS, P.A.
POST OFFICE BOX 7376, ASHEVILLE, NC 28802

This instrument was prepared by  ALFRED G. ADAMS

Brief description for the Index

# NORTH CAROLINA SPECIAL WARRANTY DEED

THIS DEED made this ...05... day of ...~~MARCH~~ APRIL..................., 19..88......., by and between

| GRANTOR | GRANTEE |
|---|---|
| SYLVIA BRUCE AND HUSBAND, MARTIN BRUCE | SYLVIA BRUCE, TRUSTEE OF THE SYLVIA BRUCE REVOCABLE TRUST DATED THE 21ST OF JANUARY 1988 **A 50% UNDIVIDED INTEREST |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of ...ASHEVILLE......................, .................................... Township,

...BUNCOMBE........................ County, North Carolina and more particularly described as follows:

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF AS IF SET FORTH HEREIN VERBATIM.

THIS DEED IS BEING MADE SIMULTANEOUSLY WITH A LIKE DEED BY MARTIN BRUCE TO MARTIN BRUCE AS TRUSTEE UNDER TRUST INDENTURE DATED JANUARY 21, 1988 WITH THE INTENDED RESULT THAT THE GRANTEE HEREIN, AS TRUSTEE HEREINABOVE DESCRIBED, SHALL OWN 50% INTEREST AS TENANT-IN-COMMON WITH MARTIN BRUCE AS SUCH TRUSTEE OF THE REMAINING 50% INTEREST AS TENANT-IN-COMMON, IN THE PREMISES ABOVE DESCRIBED.

A MEMORANDUM OF TRUST AGREEMENT ALLOWING THE TRUSTEE TO SELL, CONVEY, OR MORTGAGE THE ABOVE DESCRIBED PROPERTY SUBJECT TO THE TRUSTEE'S SOLE DISCRETION IS ATTACHED HERETO AS EXHIBIT B.

N. C. Bar Assoc. Form No. 6 © 1977 — James Williams & Co., Inc., Box 127, Yadkinville, N. C. 27055
Printed by Agreement with the N. C. Bar Assoc. — 1981

BK 1515 PG 270

EXHIBIT A

TRACT ONE

BEGINNING at a concrete monument in the northern margin of the right-of-way line of dual U. S. Highway #19-23, known as Patton Avenue, at the southeast corner of the lands of Wachovia Bank and Trust Company and running thence with the line of said Bank, North 12 deg. 52 min. West 227 feet to a concrete monument; thence South 89 deg. 45 min. West 119.3 feet to a concrete monument in the right-of-way line of Louisiana Avenue; thence North 36 deg. 57 min. West 221.5 feet to an iron in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, North 28 deg. 51 min. West 63.5 feet to an iron pipe; the Joyner corner; thence with Joyner, South 81 deg. 17 min. East 234.57 feet to an iron pipe; thence still with Joyner, North 3 deg. 7 min. East 161.69 feet to a concrete monument, the Joyner northeast corner; thence with Joyner, North 78 deg. 27 min. West 353.92 feet to an iron in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, North 19 deg. 26 min. West 87.85 feet; thence still with said Avenue, North 5 deg. 22 min. West 100 feet; thence South 86 deg. 10 min. 30 sec. East 114.09 feet to an iron pipe; thence North 7 deg. 20 min. East 52.86 feet, corner with Hargus; thence with Hargus, South 76 deg. 10 min. 30 sec. East 124.63 feet; thence North 7 deg. 34 min. 30 sec. East 93.99 feet; thence North 5 deg. 50 min. East 181.17 feet; thence South 70 deg. 45 min. East 312 feet to an iron; thence North 37 deg. 24 min. East 148.93 feet to an iron; thence South 70 deg. 11 min. East 573.02 feet to an iron in Hawkins Lane; thence with Hawkins Lane, South 27 deg. 56 min. West 386.4 feet to a concrete monument; thence North 82 deg. 15 min. West 113.79 feet to an iron; thence South 32 deg. 53 min. 30 sec. West 193.5 feet to a concrete monument; thence South 23 deg. 27 min. West 165.86 feet to a concrete monument; thence South 85 deg. 57 min. 30 sec. East 17.59 feet to a dogwood tree; thence South 20 deg. 50 min. 30 sec. East 290.35 feet to an existing spike in the northern margin of Patton Avenue; thence with the northern margin of Patton Avenue, South 85 deg. 26 min. 30 sec. West 350.45 feet to a concrete monument; thence still with the northern margin of Patton Avenue, South 87 deg. 34 min. West 25 feet to the point of BEGINNING. Subject, however, to right-of-way for the widening of Hawkins Lane and the right-of-way for the widening of Louisiana Avenue, and together with and subject to rights of ingress, egress, and regress in, over and through that tract of land fronting 50 feet on Patton Avenue and running North 12 deg. 52 min. West 35 feet, the center line of which is the first call in the foregoing description.
LESS AND EXCEPTING THAT property conveyed to the Trustees of the Temple Baptist Church as recorded in Deed Book 1085, at Page 359, of the Buncombe County, N.C. Register's Office.
The above described property being the same property conveyed to Martin Bruce and wife, Sylvia Bruce as recorded in Deed Book 935, at Page 1, of the Buncombe County, N.C. Register's Office.

TRACT TWO

BEGINNING at an iron pipe in the eastern margin of Louisiana Avenue, Wells' northwest corner, and running thence with the Wells' line, South 81 deg. 17 min. East 234.57 feet to an iron in the line of the land of G-K, Inc.; thence with said line, North 3 deg. 7 min. East 161.69 feet to a monument at a 24-inch pin, corner with Shelton; thence with the Shelton line, North 78 deg. 27 min. West 353.92 feet to an iron pipe in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, South 19 deg. 26 min. East 12.15 feet and South 28 deg. 51 min. East 211.64 feet to the point of BEGINNING.
The above described property being the same property conveyed to Martin Bruce and wife, Sylvia Bruce as Tenants in Common as recorded in Deed Book 1105, at Page 708, of the Buncombe County, N.C. Register's Office.

BK 1515 PG 271

### EXHIBIT B

### SYLVIA BRUCE REVOCABLE TRUST

### DECLARATION OF TRUST

I, Sylvia Bruce, as Settlor, of Dade County, Florida, have transferred to myself, as Trustee, the property listed on the attached Schedule "A" and I declare that I hold such property in trust according to the terms and conditions of the instrument.

### **WITNESSETH**

WHEREAS, the Settlor is desirous of creating a revocable trust primarily for the benefit of herself, her husband and children; and

WHEREAS, the Settlor desires to create such trust with property described in Schedule "A" annexed hereto and made a part hereof; and such other property, real, personal or mixed, as she or others may hereafter contribute to said trust, all of which property shall hereinafter be referred to as the "Trust Estate";

NOW, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, the Trust Estate shall be held and administered IN TRUST upon the terms and conditions and for the uses and purposes as hereinafter follow:

### ARTICLE I

### NAME OF TRUST

This trust shall, for convenience, be known as the SYLVIA BRUCE REVOCABLE TRUST dated the _1/18_ day of January, 1988, and it

- 3 -

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING · 1140 KANE CONCOURSE · BAY HARBOR ISLANDS, FL 33154 · (305) 868-7800

BK 1515 PG 272

(b)   Any Trustees may settle his or her account at any time by agreement with the beneficiaries or judicially.  Any such agreement shall be made with those beneficiaries who are subject to no legal disability and who, at the time are, or would be, entitled to income or principal if the same were then distributable.   Such an agreement shall bind all persons, whether or not then in being or of legal capacity; then or thereafter entitled to any income or principal and such an agreement shall release and discharge said Trustee for the acts and proceedings embraced in the account as effectively as a judicial settlement. The Trustee shall pay the costs and expenses of any such action or proceeding out of the principal or income or both of the trust concerned including the compensation and expenses of attorneys or guardians who may be necessary.

6.   Compensation of Trustees.

Any individual trustee acting hereunder shall be entitled to, but may waive, reasonable compensation for his or her services rendered hereunder.  Any corporate trustee acting hereunder shall be entitled to compensation based on its published fee schedule from time to time, provided such fees are reasonable for the services rendered.

ARTICLE X

TRUSTEE'S POWERS

The Trustees and their respective successors are hereby authorized and empowered by this Trust Agreement, to exercise from time to time in their absolute discretion, and without prior

- 17 -

BK 1515 PG 273

authority of any court, in respect of any property forming part
of any trust created pursuant to this Trust Agreement, all powers
conferred by law upon them, or expressed in this Trust Agreement,
and it is intended that such powers including the following be
construed in the broadest possible manner:

1.    To retain any such property as an investment without
regard to the proportion which such property or property of a
similar character so held may bear to the entire value of the
trust in which such property is held, whether or not such prop-
erty is of the class in which Trustees are authorized by law to
invest trust funds.

2.    To invest and reinvest in and to acquire by exchange or
otherwise property of any character including stocks of any
classification, obligations or other property, real or personal,
whether or not of the same kind, and participations in any common
trust fund, without regard to diversification and without being
limited to the investments authorized by law for the investment
of trust funds.

3.    To sell at public or private sale, grant options on,
exchange or otherwise dispose of all or any part of such property
or any interest therein at such times and upon such terms and
conditions, including credit, as shall seem proper and to give
good and sufficient instruments of transfer thereof and to re-
ceive the proceeds of any such disposition.

4.    To register and carry any security or property in their
own names or in the name of their nominee or to hold it unregis-
tered but without thereby increasing or decreasing their lia-
bility as fiduciaries.

5.    To employ as custodian or agent a bank or trust company
located within or without the United States, and to acquire,
hold, register or dispose of property in the name of such cus-
todian or agent or a nominee thereof without designation of fidu-
ciary capacity, and to pay out of principal or income, or both,
the charges and expenses of any such custodian or agent.

6.    To deposit funds in the savings department of any Corpo-
rate Trustee or of any other bank without limitation as to dura-
tion or amount.

7.    To exercise or sell all conversion, substitution and
other rights, options, powers and privileges, to vote at any
corporate meetings; to delegate discretionary voting power to one
or more proxies, or to trustees of a voting trust for any period
of time.

– 18 –

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 866-7800

BK 1515 PG 274

8.   To hold, manage and invest property constituting
separate shares of any of the trusts or separate trusts here-
under, in solido, for convenience of investment and administra-
tion.

9.   To merge any trust created herein that will continue
after the death of Settlor and Settlor's spouse with any con-
tinuing testamentary or inter-vivos trust created by Settlor's
spouse upon the death of the survivor of the Settlor and the
Settlor's spouse; provided, however, that the terms for the
retention, administration and distribution of each trust before
any such merger shall govern the principal and income of each
trust after such merger.

10.  To consent to, or otherwise participate in any voting
trust, merger, consolidation, reorganization, dissolution, liqui-
dation, sale, exchange, lease, mortgage, pledge or other change
affecting any corporate security or other property held by any
trust herein created.

11.  To organize corporations under the laws of this or any
other state and to transfer all or any part of a business or
other assets held in any trust herein created, and to receive in
exchange therefor such stocks, bonds, promissory notes and other
securities as they may deem advisable.

12.  To sell, exchange, lease, mortgage, alter, improve or
otherwise dispose of, any real property forming part of any trust
herein created, upon such terms as they shall deem proper, and to
execute and deliver deeds, leases, mortgages and other instru-
ments relating thereto.  Any lease may be made for such periods
(even though the same exceed the maximum terms specifically auth-
orized by law) as they shall deem proper, and shall contain such
covenants, including covenants of renewal, as may be desirable to
effect any such leasing.

13.  To make a just and equitable division or partition of
any such property, to allocate particular assets or portions
thereof or undivided interests therein to the several benefici-
aries or trusts as hereinabove provided and to make distribution
in cash or in kind, or partly in each.

14.  To permit any person having an interest in the income
of any trust hereby created to occupy any real property forming
part of such trust upon such terms as my trustees shall deem
proper, whether rent free, or in consideration of the payment of
taxes, insurance, maintenance and ordinary repairs, or otherwise.

15.  To borrow in the name of any Trust (including on margin
or other credit terms) herein created such sums for such periods
and upon such terms as they shall deem necessary or convenient in
the administration of such Trust, and to secure any such loan by
mortgage or pledge.  No lender shall be bound to see to or be
liable for the application of the proceeds, and no Trustees shall

- 19 -

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 868-7800

BK 1515 PG 275

be personally liable, but each such loan shall be payable only out of assets of such Trust.

16. To extend the time of payment of any note, bond or other obligation, and mortgage held by them, or of any install-ment of principal or interest or to hold such note, bond, or other obligation, and mortgage after maturity as past due; to consent to the alteration or modification of any terms thereof, waive defaults in the performance of the terms thereof; to fore-close any such mortgage or compromise or settle claims there-under; to take over, take title to or manage the property or any part thereof affected by any such mortgage, either temporarily or permanently, and in partial or complete satisfaction of any claim thereunder; to protect such property against or redeem it from, foreclosure for nonpayment of taxes, assessments or other liens; to insure, protect, maintain and repair such property; and gen-erally, without limiting the foregoing specification, to exercise with respect to such note, bond or other obligation and mortgage or such property, all rights and powers as may be exercised by a person owning similar property in his own right.

17. To compromise, settle, submit to arbitration, or re-lease, upon such terms as to them may seem proper, any claim or obligation of or against any Trust.

18. To apportion between principal and income stock divi-dends or distributions by a corporation or association in the shares of its own stock, whether in the form of a stock split or a stock dividend.

19. To charge to principal such sums as they shall deter-mine to be the net loss incurred in operating or carrying any parcel of real property which in their opinion is not producing net income.

20. To determine whether or not to amortize from income either in whole or in part, the premium at which any property may be purchased, or depreciation on, or any expenses in connection with, any property, real or personal; to discontinue any sinking fund at any time and distribute the same as income, in whole or in part; to pay from principal or income, or partly from each, any deficit from the operation of any improved or unimproved property.

21. To employ and compensate, out of the principal or in-come of the Trust Estate, as the Trustees shall deem proper, agents, accountants, brokers, attorneys in fact, attorneys at law, specialists, investment counsel and other assistants and advisors deemed by them to be necessary for the proper settlement and administration of the trusts created herein, notwithstanding the fact that such persons or any of them may be interested in this trust as a fiduciary or beneficiary; and to pay to such persons in whole or in part, compensation for services whether such persons are serving alone, or with another fiduciary, with-

- 20 -

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 868-7800

BK 1515 PG 276

out prior application to court and in advance of the settlement of the account of the Trustees. The Trustees shall be without any liability for the misconduct or the default of any such agent or attorney provided he was selected and retained with reasonable care.

22. To reimburse themselves from any trust herein created for all reasonable expenses incurred in the administration thereof.

23. To make distributions in cash or in specific property, real or personal, or an undivided interest therein, or partly in cash or partly in such property.

24. With respect to any life insurance policies constituting an asset of any trust herein created, to pay premiums; to apply dividends in reduction of such premiums; to borrow against the cash values of such policies, and to use the proceeds therefrom either to pay premiums or for any other reason deemed advisable; to pledge such policies; to surrender such policies and receive the cash values thereof; to convert such policies into other forms of insurance, including paid-up insurance; to exercise any settlement options provided in any such policies; to receive the proceeds of any policy upon its maturity and to administer such proceeds as a part of the principal of the trust and, in general, to exercise all other options, benefits, rights and privileges under such policies; provided, however, that any Trustee who is also an insured under any life insurance policy constituting an asset of any trust herein created, is specifically prohibited from exercising any options, benefits, rights and privileges under such policies and is further prohibited from dealing in any manner whatsoever with such policies.

25. To receive additional property from any person, by Will or otherwise, and to treat such property in the same manner as all other property.

26. No person dealing with the Trustees shall be required to inquire into the necessity or propriety of any transaction entered into with them or into the application of any money or property paid or delivered to them.

27. The neuter gender hereunder shall be deemed to include the masculine and feminine wherein necessary or appropriate, the masculine to include the feminine, the feminine to include the masculine, the singular to include the plural, and the plural to include the singular.

28. Any of the named Trustees shall have the power to change the situs of any trust created hereunder to the state of his or her residence; or, if there be two Trustees named hereunder, then by a unanimous vote of both Trustees; or, if there be more than two Trustees named hereunder, then by decision of a majority vote of such Trustees.

– 21 –

**BARASH & ASSOCIATES, P. A.**
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 868-7800

BK 1515 PG 277

29.    To terminate and distribute to the persons then en-
titled to receive or have the benefit therefrom, in the sole
discretion of the Trustees, the balance of the Trust Estate, at
such time as the principal of such trust created hereunder is
less than Twenty-Five Thousand Dollars ($25,000).    This power
shall not be exercisable, however, by a beneficiary who is also a
Trustee of the Trust sought to be terminated.

30.    To delegate any or all of the powers, duties and dis-
cretion of a Trustee to any Co-Trustee (with the consent of such
Co-Trustee) by an instrument in writing, which delegation may be
revoked, at will, in the same manner.

31.    To exercise all tax-related elections, options and
choices in such manner as will achieve, in such fiduciaries' sole
judgment, the overall minimum in total combined present and
reasonably anticipated future taxes of all kinds, upon not only
Settlor's estate, but also its beneficiaries, any trusts here-
under, and their beneficiaries.   Without limiting the generality
of the foregoing, the aforesaid direction to minimize taxes shall
include the following particular matters:

(a)    Exclusion from, or inclusion in, Settlor's
gross estate of any assets, and all matters of valuation for
federal and state estate tax purposes;

(b)    Election as to alternate valuation dates for
federal and state estate tax purposes;

(c)    Allocation of such charges and costs of ad-
ministration as are available as deductions for reduction of
either estate or income taxes;

(d)    Distribution of assets having different in-
come tax bases among the beneficiaries;

(e)    Election to file, or not file, any permitted
joint tax return with Settlor's spouse and to pay all or such
ratable share of any taxes due thereon as they shall deem proper;

(f)    Election to consent, or not consent, to hav-
ing any gifts made by Settlor's spouse treated as having been
made one-half by Settlor for gift tax purposes;

(g)    Election to continue, revoke, or make any
consent to any election under Subchapter S of the Internal Rev-
enue Code;

(h)    Selection of any appropriate income tax fis-
cal year, timing of distributions and of payment of deductible
expenses, etc.; and

(i)    Retaining of competent tax counsel for ad-
vice, the preparation of returns, tax controversies, etc.

- 22 -

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 868-7800

BK1515PG278

Settlor's fiduciaries shall not be accountable to any person interested in Settlor's estate or any trust created herein for the manner in which they shall carry out this direction to minimize overall taxes; and, even though their decisions in this regard may result in increased tax or decreased distributions to such estate or trust, or to one or more beneficiaries, they shall not be required to make any compensating adjustments or reimbursements among said estate, trust or beneficiaries by reason of the manner in which my fiduciaries carry out this direction.

32.  When required to make a distribution or transfer of all or part of the assets of Settlor's estate or of any trust created hereunder, Settlor's fiduciaries may retain therefrom assets sufficient in their judgment to cover any liability which may then or later be imposed upon them, including but not limited to their liability for estate, income or other taxes, until such liability shall have been finally determined.

33.  If any beneficiary of a Trust created hereunder shall be subject to income tax on all or a portion of the Trust's taxable income because of a power over said Trust held by the beneficiary and the amount taxable has not actually been distributed to such beneficiary, then the Trustees are authorized to distribute to such beneficiary an amount sufficient to offset any income tax burden imposed on such beneficiary because of the existence of such power.

34.  All powers granted herein shall be construed and exercised in a manner permitting the intended operation of any marital deduction gift, in trust or otherwise, to accomplish its intended purpose and effect.  Any power not complying with the applicable provisions of the Internal Revenue Code, as may from time to time exist, allowing said marital deduction, shall not be exercised by the Trustees with respect to any marital deduction gift made herein.

35.  To do all such acts and exercise all such rights and privileges, although not specifically mentioned hereunder, with regard to any such property as if the absolute owner thereof.

### ARTICLE XI

### GOVERNING LAW

The construction of this instrument, the validity of the interests created hereby, the administration of the Trust Estate, and the trusts herein created shall be governed by the laws of the State of Florida.

– 23 –

BARASH & ASSOCIATES, P. A.
KANE CONCOURSE EXECUTIVE BUILDING - 1140 KANE CONCOURSE - BAY HARBOR ISLANDS, FL 33154 - (305) 868-7800

BK 1515 PG 279

The property hereinabove described was acquired by Grantor by instrument recorded in ......................................

DEED BOOK 1105, AT PAGE 708 AND DEED BOOK 935, AT PAGE 1

A map showing the above described property is recorded in Plat Book ..................... page ....................

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple. **

And the Grantor covenants with the Grantee, that Grantor has done nothing to impair such title as Grantor received, and Grantor will warrant and defend the title against the lawful claims of all persons claiming by, under or through Grantor, except for the exceptions hereinafter stated.
Title to the property hereinabove described is subject to the following exceptions:

SUBJECT to mortgages, leases, easements, agreement and encumbrances of record.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

_____(Corporate Name)

By: _____

_____President

ATTEST:

_____

_____Secretary (Corporate Seal)

USE BLACK INK ONLY

Martin Bruce _____(SEAL)
MARTIN BRUCE

Sylvia Bruce _____(SEAL)
SYLVIA BRUCE

_____(SEAL)

_____(SEAL)

SEAL - STAMP

FLORIDA
NORTH CAROLINA, ____DADE_____County.

I, a Notary Public of the County and State aforesaid, certify that ____SYLVIA BRUCE AND MARTIN BRUCE_____ Grantor, personally appeared before me this day and acknowledged the execution of the foregoing instrument. Witness my hand and official stamp or seal, this ____5th____ day of ____APRIL_____ 19..88..

NOTARY PUBLIC, STATE OF FLORIDA.
MY COMMISSION EXPIRES: JULY 26, 1991.
My commission BONDED THRU NOTARY PUBLIC UNDERWRITERS.  ____Rochelle L. Hayes____Notary Public

SEAL - STAMP

NORTH CAROLINA, _____County.

I, a Notary Public of the County and State aforesaid, certify that _____,
personally came before me this day and acknowledged that ____ he is _____ Secretary of
_____ a North Carolina corporation, and that by authority duly
given and as the act of the corporation, the foregoing instrument was signed in its name by its _____
President, sealed with its corporate seal and attested by _____ as its _____Secretary.
Witness my hand and official stamp or seal, this _____ day of _____,19_____.

My commission expires: _____  _____Notary Public

The foregoing Certificate(s) of _____
_____Rochelle L. Hayes_____
_____

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

____Otto W. DeBruhl_____REGISTER OF DEEDS FOR ____Buncombe_____ COUNTY
By ____Sharon C. Taylor_____Deputy/Assistant Register of Deeds.

N. C. Bar Assoc. Form No. 6 © 1977 — James Williams & Co., Inc., Box 127, Yadkinville, N. C. 27055
Printed by Agreement with the N. C. Bar Assoc. — 1981

Book: 1515 Page: 269 Seq: 11

# Exhibit O

Kmart #4112
Asheville, NC

## SECOND AMENDMENT TO LEASE

THIS AMENDMENT TO LEASE is made and entered into this $3/4$
day of _March_, 1992, between NINETEENTH ASHEVILLE PROPERTIES,
a New York partnership, having its principal office at 810 Seventh
Avenue, 28th floor, New York, NY 10019 ("Landlord") and KMART
CORPORATION, a Michigan Corporation, having its principal office at 3100
West Big Beaver Road, Troy, Michigan 48084 ("Tenant").

### WITNESSETH

WHEREAS, by Lease agreement dated, December 18, 1964, PATTON
AVENUE DEVELOPMENT CORPORATION, a North Carolina corporation, leased to
Tenant a building together with site improvements and land at a shopping
center located at and situated in the City of Asheville, County of
Buncombe, State of North Carolina; and more fully described in Exhibit
"A" to the Lease; and

WHEREAS, the Lease agreement was modified by Amendment to
Lease, dated August 27, 1965. The lease agreement, as modified, is
herein referred to as the "Lease"; and

WHEREAS, Landlord, succeeded to the lessor's interest in the
Lease; and

WHEREAS, Landlord and Tenant desire to further amend and
modify the Lease as herein provided.

NOW, THEREFORE, it is mutually agreed, and the sufficiency of
such is acknowledged, as follows:

1.    Tenant, at tenant's expense, shall expand its storeroom in the
demised premises by removing the wall between the main storeroom and the
Food Super Market described in Article 1 of the Lease and combining them
into one storeroom of 97,000 square feet.

2.    The term of the Lease is extended to and including November 30,
2012.    In addition Tenant shall have four successive options to
extend the lease for additional periods of five years each; which
options shall be exercised by notice to Landlord not less than six
months prior to expiration of the then term of the Lease, as extended.
If Tenant exercises all four options, the last option period will expire
November 30, 2032.

3.    Commencing December 1, 1992, the minimum rent under Article 3 of
the Lease shall be increased to TWO HUNDRED EIGHT THOUSAND NINE HUNDRED
and 00/100 DOLLARS ($208,900.00).

4.    Commencing December 1, 1992, the additional rental under Article 4
of the Lease shall be an amount equal to one percent (1%) of gross sales
in excess of TWELVE MILLION SIX HUNDRED FIFTY-FIVE THOUSAND DOLLARS
($12,655,000), as gross sales are defined in Article 4.    Subparagraph
(e) of Article 4 of the Lease is hereby deleted.

5.    Commencing December 1, 1992, Tenant shall reimburse Landlord for
(1) the ad valorem real estate taxes levied on tenant's buildings, and
(2) tenant's pro rata share of the ad valorem real estate taxes levied
against the land described in Exhibit "A".

Landlord and Tenant shall use their reasonable efforts to obtain a
separate tax assessment with respect to Tenant's buildings.    In the
event that a separate tax assessment with respect to tenant's buildings
cannot be obtained, then for purposes of this lease, the parties shall

- 1 -

refer to the office records of the assessing authority including but not limited to worksheets and field reports, in order to obtain the relevant building valuations required to calculate Tenant's separate liability for the real estate taxes hereunder.

In the event that neither a separate tax assessment for tenant's building can be obtained nor an accurate tax liability established from the assessing office records can be determined, the taxes allocable to tenant's buildings shall be equal to: Tenant's pro rata share of taxes attributable to all of the buildings on the land described in Exhibit "A".

Tenant's pro rata share of taxes attributable to all of the building on the land described in Exhibit "A" shall be computed by multiplying the total tax liability against the buildings located with the land described in Exhibit "A" by a fraction the numerator of which shall be the number of square feet of ground floor area of Tenant's building at the end of such real estate fiscal tax year (excluding the garden shop) multiplied by 70% and the denominator of which shall be the total number of square feet of ground floor area of all of the buildings located within the land described in Exhibit "A" (excluding Tenant's building) at the end of such real estate fiscal tax year plus the total number of square feet of ground floor area of Tenant's building at the end of such real estate fiscal year (excluding the garden shop) multiplied by 70%.

Tenant's pro rata share of the taxes assessed against the total land described in Exhibit "A" shall be computed by multiplying the total tax liability against the land described in Exhibit "A" by a fraction, the numerator of which shall be the number of square feet of Tenant's buildings, and the denominator of which shall be the total square footage of all of the buildings on the land described in Exhibit "A".

To the extent permitted by law, Landlord shall pay any such assessment in annual installments. Tenant shall reimburse Landlord only for those installments which shall become due and payable during the lease term. Any such installments due and payable in the year commencing after December 1, 1992 and in the year in which this lease terminates shall be prorated proportionately. Tenant shall make reimbursement to Landlord within 45 days after Landlord provides Tenant with proof of payment of the taxes paid by Landlord.

In the event there is currently in effect any law providing for the taxation of leases or if any law is enacted or adopted after the date of this lease amendment which changes the laws now in force for the taxation of leases, including but not limited to a Goods and Services Tax (GST), or the manner of the operation of any such taxes, or which otherwise imposes a tax either directly or indirectly on the lease or the rents received therefrom, tenant will pay such tax with interest and penalties thereon.

Tenant shall not be chargeable with, nor be obligated to pay any income, profit, inheritance, estate, succession, gift, franchise, or transfer taxes which are or may be imposed upon Landlord, its successors or assigns, by whatsoever authority imposed or howsoever designated.

Written evidence of the payment of taxes and assessments hereunder shall be furnished by Tenant to Landlord upon Landlord's written request therefor.

In the event Tenant constructs, as provided in Article 16 hereof, additional buildings or structures on any portion of the land described in Parcel A of Exhibit "A", said additional buildings or structures shall be separately assessed and all ad valorem taxes and assessments levied thereon shall be paid and discharged by Tenant and shall not be deductible from additional rentals as provided herein.

- 2 -

The Tenant shall have the right to participate in all negotiations of tax assessments. Tenant shall have the right to contest the validity or the amount of any tax or assessment levied against the taxable premises or the Shopping Center by such appellate or other proceedings as may be appropriate in the jurisdiction, and may defer payment of such obligations, pay same under protest, or take such other steps as Tenant may deem appropriate; provided, however, Tenant shall take no action which will cause or allow the institution of any foreclosure proceedings or similar action against the demised premises. Landlord shall, at Tenant's expense, cooperate in the institution and prosecution of any such proceedings initiated by the Tenant and will execute any documents required therefor.

Should the Landlord institute proceedings to contest the validity or the amount of any tax or assessment levied against the Shopping Center, the Tenant will cooperate in such proceedings; provided, however, that Landlord shall take no action which will cause or allow the institution of any foreclosure proceedings or similar action against the demised premises which might result in the termination of this Lease.

Should any of the proceedings referred to in the preceding two paragraphs of this Article 5 result in reducing the total annual real estate tax and assessment liability against the taxable premises, the Tenant shall be entitled to receive all refunds paid by the taxing authorities. After payment of all of Landlord's and Tenant's expenses incurred in any such proceeding in which a refund is paid, the Tenant shall pay to the Landlord either the balance of such refund or, alternatively, Tenant shall pay to the Landlord that part of the excess tax payment which may have been deducted from additional rent in the tax year for which the refund was granted, whichever amount shall be the lesser. Any balance of said refund remaining after such payment to Landlord shall belong to the Tenant. If no refund shall be secured in any given proceeding, the party instituting the proceeding shall bear the entire cost.

6.    Commencing December 1, 1992, Tenant shall pay the Landlord its pro-rata share of the costs of maintaining the common areas as herein provided. Tenant's said share shall be based upon the ratio that the ground floor area of Tenant's building bears to the total gross ground floor area contained in all buildings actually erected on any portion of the land described in Exhibit "A", and depicted on Exhibit "B".

For purposes of this Article, the costs of ~~marinating~~ _MAINTAINING_ the common areas and common facilities shall mean the following:    (1)    all amounts paid for cleaning and sweeping (which shall be performed as often as necessary but not less than once weekly) and restriping (which shall be done not less than once every two years) of the parking areas, sidewalks and driveways, including snow and ice removal, which shall be performed as often as necessary;    (2)    maintenance and repair of planted or landscaped areas;    (3)    maintenance, repair and replacement of bulbs and light standards with respect to the parking lot lighting and electrical cost of lighting if Tenant's parking lot lighting is not metered directly into Tenant's meter;    (4)    and wages and salaries of persons directly and actually performing services described herein.  The cost of maintaining the common areas and common facilities shall not include capital expenses, depreciation, permit fees, electric lighting charges beyond Tenant's normal business hours unless Tenant is operating during extended hours, rubbish removal for other tenants, or other administrative expenses, including overhead.

Landlord shall maintain accurate records with respect to the aforesaid costs and shall submit to Tenant a bill not more often than every 30 days during the term of the lease for the amount required to be paid by Tenant hereunder.   Such bill will set forth the items and amounts charged to Tenant in reasonable detail and will reflect the calculations of Tenant's obligation.   With such bill, Landlord shall also submit to Tenant copies of paid receipts to support each said item and amount.   Tenant shall pay such amounts within thirty (30) days after receipt of Landlord's billing therefor.

Tenant may, upon seven (7) days notice, have Landlord's records of common area expenditures for the previous twelve (12) month period audited by Tenant's accountant; should such audit disclose any overpayment by Tenant, Landlord shall remit said overpayment upon demand.

Notwithstanding anything contained herein to the contrary, Tenant reserves the right, for any reason whatsoever, at any time upon thirty (30) days prior written notice to Landlord to assume the duties of Landlord to maintain the common areas located within Parcel A of Exhibit "A".   If Tenant shall elect to maintain the common areas located within Parcel A of Exhibit "A", then, and in such event, Tenant shall not during such period be required to make any contributions to the common area costs as hereinabove defined, however, Landlord shall maintain the remaining portions of the common area described in Exhibit "A".

The Lease as amended is ratified and confirmed by Landlord and Tenant.

IN WITNESS THEREOF, the parties have executed this Amendment to Lease which is to be effective as provided herein.

Signed in our Presence:                    NINETEENTH ASHEVILLE PROPERTIES, a
                                           New York partnership

By: _____
Its: _____


By: _____
Its: _____



                                           KMART CORPORATION

                                           By: _____
                                              M.    Skiles, Vice President
                                           By: _____
                                                            Asst. Secretary

- 4 -

ACKNOWLEDGMENTS

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK   )

On the 19th day of March 1992, before me personally came WALTER R.
SAMUELS to me known, who being by me duly sworn, did depose and say
that he is the General Partner of Nineteenth Asheville Properties
described in and which executed the foregoing instrument on behalf
of said Partnership.

CORINNE BECKER
Notary Public, State of New York
No. 31-4792263
Qualified in New York County
Commission Expires January 31, 19/.

_Corinne Becker_
Notary Public

STATE OF MICHIGAN)
                  ) ss:
COUNTY OF OAKLAND)

    I do hereby certify that on this 2ND day of MARCH        , 19 92,
before me,  JANINE K. SCHUMACHER           , a Notary Public in and
for the County and State aforesaid, and duly commissioned, personally
appeared
    M. L. Skiles    and    C.E.LOTZAR, JR        , known to me to be the
Vice President and Assistant Secretary of Kmart Corporation, who, being by me
duly sworn, did depose and say that they reside in Rochester and Birmingham
respectively; that they are the Vice President and Assistant Secretary
respectively of Kmart Corporation, the corporation described in and which
executed the foregoing instrument; that they know the seal of said
corporation; that the seal affixed to said instrument is the corporate seal
of said corporation; that, on behalf of said corporation and by order of its
board of directors, they signed, sealed and delivered said instrument for the
uses and purposes therein set forth, as its and their free and voluntary act;
and that they signed their names thereto by like order.

    In Witness Whereof, I have hereunto set my hand and affixed my official
seal the day and year in this certificate first above written.

My commission expires:  9. 30 ·92

_Janine K. Schumacher_
Notary Public
JANINE K. SCHUMACHER
Notary Public, Oakland County, Mich.
My Commission Expires September 30, 1992

# Exhibit P

## ASSIGNMENT OF LEASE

**KMART CORPORATION**, a Michigan corporation, with offices at 3100 West Big Beaver Road, Troy, Michigan 48084 (**"Assignor"**) for and in consideration of the sum of Ten ($10.00) Dollars and other good and valuable consideration, to it paid by **KMART OF NORTH CAROLINA LLC**, a North Carolina limited liability company, with offices at 3100 West Big Beaver Road, Troy, Michigan 48084 (**"Assignee"**), receipt of which is hereby acknowledged, effective the date hereof, does hereby assign, transfer and set over unto Assignee all of Assignor's right, title and interest in and to the lease, amendments and agreements, if any, described on **Schedule I** which is annexed hereto and made a part hereof (the **"Lease"**), together with all rights and interest of Assignor in and to the premises demised by the Lease and all easements, covenants, restrictions and other hereditaments and appurtenances relating thereto (collectively the **"Premises"**).

**TO HAVE AND TO HOLD** the same unto Assignee, its successor and assigns, forever.

Assignee hereby accepts this Assignment as of the date hereof and assumes payment and performance of all the covenants, agreements, terms, provisions, conditions, limitations and other obligations to be paid or performed on the part of Assignor under the Lease or otherwise relating to the Premises accruing from and after the date hereof.

This Assignment of Lease shall inure to the benefit of and shall be binding upon the parties hereto, their successors, transferees and assigns.

**IN WITNESS WHEREOF,** Assignor and Assignee have caused this Assignment of Lease to be duly executed as of the 29th day of July, 1999.

ASSIGNOR:

KMART CORPORATION

By:_____

_____ Vice _____ President

ATTEST:

_____

_____ Assistant _____ Secretary

(Corporate Seal)

ASSIGNEE:

KMART OF NORTH CAROLINA LLC

By:_____ (SEAL)

Its: Manager

Drafted by:

Robert V. Peterson, Esq.
Dickinson Wright PLLC
525 North Woodward, Suite 2000
Bloomfield Hills, MI  48304

# ACKNOWLEDGMENTS

STATE OF MICHIGAN    )
                              ) SS.

COUNTY OF OAKLAND    )

I,    Notary   Public   for   the   County   and   State   aforesaid,   certify   that
<u>Alice I. Buckley</u> personally came before me this day and acknowledged that
<u>she is its Asst.</u> Secretary of KMART CORPORATION, a Michigan corporation, and
that by authority duly given and as the act of the corporation, the foregoing instrument was
signed in its name by its Vice President, sealed with its corporate seal and attested by
<u>Alice I. Buckley</u> as its <u>Assistant</u> Secretary.

Witness my hand and official stamp or seal, this <u>8th</u> day of <u>July</u>, 1999.

My commission expires: <u>2/2/2002</u>          *Mary Kae Thursam*

                                    Notary Public   MARY KAE THURSAM

---

Register of Deeds for _____ County

By:_____
        Deputy/Assistant-Register of Deeds

STATE OF MICHIGAN    )
                              ) SS.

COUNTY OF OAKLAND    )

I,    Notary   Public   for   the   County   and   State   aforesaid,   certify   that
<u>J. Misplon</u> personally came before me this day and acknowledged that
<u>_</u>he is a Manager of KMART OF NORTH CAROLINA LLC, a North Carolina limited liability
company and that by authority duly given and as the act of the company, the foregoing
instrument was signed in its name by such Manager.

Witness my hand and official stamp or seal, this __8th__ day of ____July_____, 1999.

My commission expires:___2/2/2002_____

_____
Notary Public          MARY KAE THURSAM

_____
Register of Deeds for _____ County

By:_____
    Deputy/Assistant-Register of Deeds

## SCHEDULE I

Lease dated December 18, 1964 between Patton Avenue Development Corporation, a North Carolina corporation, as Landlord, and S. S. Kresge, now known as Kmart Corporation, a Michigan corporation, as Tenant, as amended by Amendment to Lease dated August 27, 1965, as amended by Second Amendment to Lease dated March 3, 1992.

Memorandum of Lease dated December 18, 1964 between Patton Avenue Development Corporation, a North Carolina corporation, as Landlord and S. S. Kresge, now known as Kmart Corporation, a Michigan corporation, as Tenant.

Asheville, NC
Store #4112
6/21/99

BLOOMFIELD 11335-4936 295088-1

# Exhibit Q

STATE OF NORTH CAROLINA                                                    ASSIGNMENT

COUNTY OF BUNCOMBE

KNOW ALL MEN BY THESE PRESENTS that:

ASHEVILLE K-M ASSOCIATES, a North Carolina limited partnership (hereafter called the "Assignor") for Ten and 00/100 ($10.00) Dollars and other valuable consideration to the Assignor in hand by ASHEVILLE K-M ASSOCIATES, LLC, a North Carolina limited liability company (hereafter called the "Assignee"), the receipt whereof is hereby acknowledged,

HEREBY SELLS, ASSIGNS AND TRANSFERS unto the Assignee that certain Indenture of Lease and all amendments thereto and the leasehold estate created thereby, dated February 1, 1966, made by Martin Bruce and Sylvia Bruce, as Lessor, and Patton Plaza Associates, as Lessee, a memorandum of which was recorded in the Buncombe County, North Carolina Registry on February 1, 1966 in Book 934, Page 649, and which said lease was subsequently assigned by Patton Plaza Associates to Nineteenth Asheville Corp. on November 6, 1969, by Assignment which was recorded in the Buncombe County, North Carolina Registry on November 7, 1969, in Book 1009, page 487 and further assigned by Nineteenth Asheville Corp. to Assignor by Assignment ("Second Assignment") recorded in Book 1133, page 376, Buncombe County, North Carolina Registry, covering the following described property:

All those certain tracts of land with the buildings and improvements thereon erected, situate, lying and being in the City of Asheville, County of Buncombe, North Carolina as more particularly described on Exhibit "A" annexed to the Second Assignment (the "Premises").

Together with all of the rights, title and interest of the Assignor as Lessee in and to the same and in and to any buildings and improvements thereon with all appurtenances, and together with all right, title and interest of Assignor in all subleases of the Premises or any portion thereof by Assignor.

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns, from the date of these presents for all of the rest of the years mentioned in said Indenture of Lease, and such subleases, each as amended.

SUBJECT, HOWEVER, to the rents, covenants, terms, conditions and provisions mentioned and contained in said Indenture of Lease, and such subleases, each as amended, and all matters of record.

AND the Assignee hereby assumes the performance of all of the terms, covenants, conditions and agreements contained in the aforesaid Indenture of Lease and such subleases hereby assigned to it; and hereby assumes said Indenture of Lease and subleases, the obligations of the Assignor thereunder and all of the obligations of the tenant under said Indenture of Lease and the landlord under such subleases, and shall be liable for the payment of the basic rent, Impositions and all costs and payments and charges which tenant under any of the provisions of such Indenture of Lease assumes or agrees to pay, and for the due performance of all of the terms, covenants, conditions and agreements contained

C-622341v01_.11812.00011

on tenant's part to be performed for the term of said Indenture of Lease, an further assumes and shall be liable with respect to any and all liabilities secured by any deed of trust encumbering said Indenture of Lease.

Assignee covenants and agrees with Assignor that Assignee shall indemnify, defend and hold Assignor harmless from and against all losses, damages, claims, demands and liabilities which may be suffered by or asserted against Assignor by reason of Assignee's failure to perform Assignee's obligations in connection with this Assignment and the obligations and liabilities assumed by Assignee hereunder. Assignee shall be entitled to all benefits under said Indenture of lease and subleases from and after the date hereof.

IN WITNESS WHEREOF, the Assignor and the Assignee have duly executed this instrument under seal, this 31ˢᵗ day of _December_, 1999.

ASHEVILLE K-M ASSOCIATES, a North
Carolina limited partnership          (SEAL)

By: _____          (SEAL)
Name: Paul Green
Title: General Partner

ASHEVILLE K-M ASSOCIATES, LLC, a North
Carolina limited liability company

By: _____
Name: Paul Green
Title: Manager

STATE OF _NEW YORK_
COUNTY OF _NEW YORK_

This _31_ day of _DECEMBER_, _1999_ personally came before me Paul Green who, being by me duly sworn, says that he is a general partner of **ASHEVILLE K-M ASSOCIATES**, a North Carolina limited partnership, and acknowledged the due execution of the foregoing instrument on behalf of said partnership.

WITNESS my hand and official seal, this the _31ᵗ_ day of _DECEMBER_, _1999_

_Carol Abraham_
Notary Public

My commission expires:

_1 / 31 / 2001_

[NOTARIAL SEAL]

Carol Abraham
Notary Public State Of New York
No. 41-4679727
Qualified In Queens County
Commission Expires Jan 31 2001

STATE OF _NEW YORK_
COUNTY OF _NEW YORK_

I, _CAROL ABRAHAM_, a Notary Public for said county and state, do hereby certify that Paul Green, the Manager of **ASHEVILLE K-M ASSOCIATES, LLC**, a North Carolina limited liability company, personally appeared before me this day and acknowledged the due execution of the foregoing instrument on behalf of said limited liability company.

Witness my hand and notarial stamp or seal, this _31_ day of _DECEMBER 1999_

_Carol Abraham_
Notary Public

My commission expires: _1 / 31 / 2001_

[NOTARIAL SEAL]

Carol Abraham
Notary Public State Of New York
No. 41-4679727
Qualified In Queens County
Commission Expires Jan 31 2001

# Exhibit R



**kmart.**

December 13, 2007

Nineteenth Asheville Properties
C/O J & W Management Corp
505 Park Ave
New York, NY  10022

**RE: Kmart 4112 - 1001 Patton Ave, Asheville, NC**

To Whom it May Concern:

Please be advised that Kmart of North Carolina LLC has assigned its interest in
the above referenced lease to its affiliate Kmart Corporation effective February 1,
2007.

This change will be virtually invisible to third parties, as store names and day to
day operations will remain the same.  Please continue to forward all future
notices and correspondence to Kmart Corporation at the new address listed
below.

> *Vice President Real Estate*
> Kmart Corporation
> 3333 Beverly Road
> Hoffman Estates, IL  60179

The assignment of the Lease will not require Landlord to take any action other
than to contact your insurance underwriter   An amendment to your insurance
policy may be required.

Sincerely,

Kal Gibron
Div. Vice President Real Estate and Real Estate Law

## ASSIGNMENT OF LEASE

**KMART OF NORTH CAROLINA LLC.,** a North Carolina limited liability company with offices at c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates, Illinois, 60179 ("Assignor") for and in consideration of the sum of Ten ($10.00) Dollars and other good and valuable consideration, to it paid by **KMART CORPORATION,** a Michigan corporation with offices at c/o Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates, Illinois 60179 ("Assignee") receipt of which is hereby acknowledged, effective the date hereof, does hereby assign, transfer and set over unto Assignee all of Assignor's right, title and interest in and to the lease, amendments and agreements if any, described on **Schedule 1** which is annexed hereto and made a part hereof (the "Lease"), together with all rights and interest of Assignor in and to the premises demised by the Lease and all easements; covenants, restrictions and other hereditaments and appurtenances relating thereto (collectively the "Premises").

**TO HAVE AN TO HOLD** the same unto Assignee, its successor and assigns, forever.

Assignee hereby accepts this Assignment as of the date hereof and assumes payment and performance of all the covenants, agreements, terms, provisions, conditions, limitations and other obligations to be paid or performed on the part of Assignor under the lease or otherwise relating to the Premises accruing from and after the date thereof.

This Assignment of Lease shall insure to the benefit of and shall be binding upon the parties hereto, their successors, transferees and assigns.

**IN WITNESS WHEREOF,** Assignor and Assignee have caused this Assignment of Lease to be duly executed as of the 1st of February 2007.

ASSIGNOR:

**KMART OF NORTH CAROLINA, LLC**

By: _____
      James B. Terrell

Title: _____
      Vice President Real Estate

ATTEST: _____
      J. Kal Gibron
      Divisional V P  Real Estate

ASSIGNEE:

**KMART CORPORATION**

By: _____
      James B. Terrell

Title: _____
      Vice President Real Estate

ATTEST: _____
      J. Kal Gibron
      Divisional V P  Real Estate

## SCHEDULE I

Lease dated December 18, 1964 between Patton Avenue Development Corporation, a
North Carolina corporation, as Landlord, and S. S. Kresge, now known as Kmart
Corporation, a Michigan corporation, as Tenant, as amended by Amendment to Lease
dated August 27, 1965, as amended by Second amendment to Lease dated March 3, 1992.

Memorandum of Lease dated December 18, 1964 between Patton Avenue Development
Corporation, a North Carolina corporation, as Landlord, and S. S. Kresge, now known as
Kmart Corporation, a Michigan corporation, as Tenant.

Asheville, NC, Store #4112
February 1, 2007

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ⬚ Agent ⬚ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ⬚ Yes
   If YES, enter delivery address below:       ⬚ No

1. Article Addressed to:

Nineteenth Asheville Properties
C/O J & W Management Corp
505 Park Ave
New York, NY 10022

3. Service Type
   ☒ Certified Mail   ⬚ Express Mail
   ⬚ Registered       ☒ Return Receipt for Merchandise
   ⬚ Insured Mail     ⬚ C.O.D.

4. Restricted Delivery? (Extra Fee)    ⬚ Yes

2. Article Number
   (Transfer from service label)    7007 0220 0004 3218 8059

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# Exhibit S

## THIRD AMENDMENT TO LEASE
*Asheville, NC K-4112*

THIS THIRD AMENDMENT TO LEASE (the "**Amendment**") is made and entered into as of the *23rd* day of *May*____, 2017 ("**Effective Date**"), by and between NINETEENTH ASHEVILLE PROPERTIES, c/o J & W Management Corporation ("**Landlord**") and KMART CORPORATION, a Michigan corporation ("**Tenant**").

## RECITALS

**WHEREAS**, Landlord's predecessor-in-interest and Tenant's predecessor-in-interest are parties to that certain Lease dated December 18, 1964, as amended by that certain Amendment to Lease dated August 27, 1965, and that certain Second Amendment to Lease dated March 3, 1992 (collectively, the "**Lease**") for the space currently containing approximately 93,827 rentable square feet commonly known as the Kmart Unit #4112 located at 1001 Patton Avenue in the City of Asheville, State of North Carolina (the "**Demised Premises**");

**WHEREAS**, Tenant desires to exercise one of its remaining options to extend the term of the Lease; and

**WHEREAS**, Landlord and Tenant wish to amend the Lease as set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Landlord and Tenant agree as follows:

1.  **Incorporation of Recitals**.  The foregoing recitals form a material part of this Amendment and are incorporated herein as if fully rewritten and restated at length herein.

2.  **Capitalized terms**.  Capitalized terms used herein but not defined herein shall have the respective meanings ascribed to such term as specified in the Lease.

3.  **Second Option to Extend**.  Tenant's second option to extend the Term of the Lease for a 5 year period commencing December 1, 2017, through and including November 30, 2022, as set forth in Paragraph (2) of the Second Amendment to Lease, is hereby split into two sub-option periods as follows:

    "**Option 2.1:**"    December 1, 2017 – January 31, 2019
    "**Option 2.2:**"    February 1, 2019 – November 30, 2022

4.  **Exercise of Option 2.1**.  By execution of this Amendment, Tenant hereby exercises Option 2.1 to extend the Term of the Lease for the period commencing December 1, 2017, to and including January 31, 2019 (the "**Extended Term**").  By execution hereof, Landlord hereby expressly acknowledges and agrees to the validity of such exercise and extension and waives any

- 1 -

and all claims as to the effectiveness, enforceability or timeliness thereof.   Landlord and Tenant agree that in addition to Options 2.1 and 2.2, Tenant has two (2) additional five (5) year options which shall remain in full force and effect and shall remain unchanged by this Amendment.

5.    **Notices**.  The notice address for Landlord and Tenant shall be as follows:

Landlord's notice address:    Nineteenth Asheville Properties
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY  10022
Attn: Erica M. Cohen, Leasing Manager
Phone: (212) 400-2424 ext. 103
Fax: (212) 400-2425
Email: ecohen@jw-management.com

With a copy to:    Nineteenth Asheville Properties
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY  10022
Attn: Glenn Howarth, Esq.
Phone: (212) 400-2424 ext. 104
Fax: (212) 400-2425
Email: ghowarth@jw-management.com

Tenant's notice address:    Kmart Corporation
c/o Sears Holdings Corporation
3333 Beverly Road, 824RE
Hoffman Estates, IL  60179
Attn: President - Real Estate

    with a copy to:    Sears Holdings Corporation
3333 Beverly Road, 824RE
Hoffman Estates, IL  60179
Attn: Associate General Counsel – Real Estate

6.    **Miscellaneous**.

(a)    Continuance of Lease.  The legally enforceable provisions in the Lease, as amended hereby, shall be deemed to be continuing and in full force and effect and this Amendment is not intended to be a new contract between the parties.

(b)    Successors and Assigns.  This Amendment shall be binding upon, and shall inure to the benefit of, the successors and assigns of the parties hereto.

(c)    Entire Agreement.  This Amendment sets forth the entire agreement between the

parties with respect to the matters set forth herein. There have been no additional oral or written representations or agreements with respect to the matters set forth herein. In case of any inconsistency between the provisions of the Lease and this Amendment, the provisions of this Amendment shall govern and control.

(d)    <u>Time is of the Essence</u>. Time is of the essence for this Amendment and the Lease and each provision hereof.

(e)    <u>No Presumption Against Drafter</u>. This Amendment shall be construed without regard to any presumption or any other rule requiring construction against the party drafting a document. The parties acknowledge that this Amendment is the result of negotiations between the parties, and in construing any ambiguity hereunder no presumption shall be made in favor of either party.

(f)    <u>Authority</u>. Each individual executing this Amendment on behalf of any party represents and warrants that he or she is fully authorized to execute and deliver this Amendment on behalf of such party in accordance with its terms, and that this Amendment is not in violation of, inconsistent with, or contrary to the provisions of any agreement to which it is a party.

(g)    <u>Severability</u>. If any provision of this Amendment or the application thereof to any person or circumstances is or shall be deemed illegal, invalid, or unenforceable, the remaining provisions hereof shall remain in full force and effect and this Amendment shall be interpreted as if such illegal, invalid, or unenforceable provision did not exist herein.

(h)    <u>Counterpart Signatures</u>. This Amendment may be executed in any number of counterpart originals, each of which, when taken together, shall be deemed to be one and the same instrument. Executed copies of this Amendment may be delivered between the parties via facsimile or electronic mail and such shall be deemed effective and binding upon the parties the same as if such document was an original. This Amendment will not be binding upon any party until this document has been executed by all parties thereto.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

**IN WITNESS WHEREOF**, Landlord and Tenant have duly executed this Third Amendment as of the Effective Date.

LANDLORD:
NINETEENTH ASHEVILLE PROPERTIES
C/O J & W MANAGEMENT CORPORATION

By: _____

Name: _____

Its: _____


TENANT:
KMART CORPORATION, a Michigan corporation

By: _____

Name: _____

Its: _____


REAL ESTATE
LEGAL

- 4 -

# Exhibit T

# SEARS HOLDINGS

3333 Beverly Road
Hoffman Estates, IL 60179

July 20, 2018

**VIA CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
**#7014 2120 0001 5426 5859**

Nineteenth Asheville Properties
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Erica M. Cohen, Leasing Manager

**VIA CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
**#7014 2120 0001 5426 5866**

The Estate of Walter R. Samuels and
Marilyn Joy Samuels, as Tenants-in-Common
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Erica M. Cohen, Leasing Manager

Re:    Lease dated December 18, 1964, as amended and
assigned, for the premises located at 1001 Patton Avenue,
Asheville, NC, and known as Kmart Store Unit # 4112

Dear Landlord:

The undersigned hereby elects to extend the subject Lease for an additional term of three (3) years
and ten (10) months, commencing February 1, 2019, to and including November 30, 2022, upon the
terms, conditions, and rental as set forth in said Lease, as amended and assigned.

Sincerely,

KMART CORPORATION,
a Michigan corporation

By: _JoAnn Catanese_
JoAnn Catanese
Divisional Vice President, Real Estate

JC/cm

cc:  Lease File
Julie Jenkins, Sears Holdings Corporation
Allison Bruce Irrevocable Trust c/o Paul Bruce
Cara Bruce Irrevocable Trust c/o Paul Bruce
Steven Bruce Revocable Trust c/o Paul Bruce

**VIA CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
**#7014 2120 0001 5426 5620**

Paul Bruce, et. al.
2402 Jackstay Terrace
Reston, VA 20191

**VIA CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
**#7010 0290 0000 0645 1643**

Nineteenth Asheville Properties
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Glenn Howarth, Esq.

**VIA CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
**#7010 0290 0000 0645 1650**

The Estate of Walter R. Samuels and
Marilyn Joy Samuels, as Tenants-in-Common
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Glenn Howarth, Esq.

**U.S. Postal Service**
**CERTIFIED MAIL**
*(Domestic Mail Only; No I*
BC-108A

For delivery information visit our website at www.usps.com

OFFICIAL US

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |

R# 4112

Nineteenth Asheville Properties
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Glenn Howarth, Esq.

7010 0290 0000 0645 1450

---

**U.S. Postal Service**
**CERTIFIED MAIL**
*(Domestic Mail Only; No I*
BC-108A
Olivia Morales (824RE)

For delivery information visit our website at www.usps.com

OFFICIAL US

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total | |

R# 4112

Sent: The Estate of Walter R. Samuels and
Marilyn Joy Samuels, as Tenants-in-Common
c/o J & W Management Corporation
Street or PO: 505 Park Avenue, Suite 302
City: New York, NY 10022
Attn: Glenn Howarth, Esq.

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Nineteenth Asheville Properties
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Glenn Howarth, Esq.

9590 9402 1370 5285 3816 09  R# 4112

2. Article Number (Transfer from service label)

7010 0290 0000 0645 1643

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Erica M Cohen_
☐ Agent
☑ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053      Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Estate of Walter R. Samuels and
Marilyn Joy Samuels, as Tenants-in-Common
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Glenn Howarth, Esq.

9590 9402 1370 5285 3815 93  R# 4112

2. Article Number (Transfer from service label)

7010 0290 0000 0645 1650

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Erica M Cohen_
☐ Agent
☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053      Domestic Return Receipt

U.S. Postal Service™
CERTIFIED MAIL
Domestic Mail Only

Olivia Morales (824RE)
BC-108A

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees

HOFFMAN ESTATES
JUL 2016
POST OFFICE
Postmark
Here

K#4112

7014 2120 0001 5426 5859

Nineteenth Asheville Properties
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Erica M. Cohen, Leasing Manager

---

U.S. Postal Service™
CERTIFIED MAIL
Domestic Mail Only

Olivia Morales (824RE)
BC-108A

For delivery information, visit our website at www.usps.com®

OFFICIAL USE

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees

HOFFMAN ESTATES
JUL 2016
POST OFFICE
Postmark
Here

K#4112

7014 2120 0001 5426 5866

The Estate of Walter R. Samuels and
Marilyn Joy Samuels, as Tenants-in-Common
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Erica M. Cohen, Leasing Manager

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Nineteenth Asheville Properties
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Erica M. Cohen, Leasing Manager

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Venus Og                    □ Agent
                              □ Addressee

B. Received by (Printed Name)     C. Date of Delivery
Venus Og

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
□ Adult Signature                    □ Priority Mail Express®
□ Adult Signature Restricted Delivery □ Registered Mail™
☑ Certified Mail®                     □ Registered Mail Restricted Delivery
□ Certified Mail Restricted Delivery  □ Return Receipt for Merchandise
□ Collect on Delivery                 □ Signature Confirmation™
□ Collect on Delivery Restricted Delivery □ Signature Confirmation Restricted Delivery
□ Mail Restricted Delivery

9590 9402 1370 5285 3816 23   4112

2. Article Number (Transfer from service label)
7014 2120 0001 5426 5859

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Estate of Walter R. Samuels and
Marilyn Joy Samuels, as Tenants-in-Common
c/o J & W Management Corporation
505 Park Avenue, Suite 302
New York, NY 10022
Attn: Erica M. Cohen, Leasing Manager

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X mon M Cohen                 □ Agent
                              □ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
□ Adult Signature                    □ Priority Mail Express®
□ Adult Signature Restricted Delivery □ Registered Mail™
☑ Certified Mail®                     □ Registered Mail Restricted Delivery
□ Certified Mail Restricted Delivery  □ Return Receipt for Merchandise
□ Collect on Delivery                 □ Signature Confirmation™
□ Collect on Delivery Restricted Delivery □ Signature Confirmation Restricted Delivery
□ Mail Restricted Delivery

9590 9402 1370 5285 3816 16   4112

2. Article Number (Transfer from service label)
7014 2120 0001 5426 5866

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt



Olivia Morales (824RE)

BC-108A

Paul Bruce, et. al.
2402 Jackstay Terrace
Reston, VA  20191

K# 4112

# Exhibit U

# J & W Management Corp.

505 Park Avenue, Suite 302, New York, New York 10022
EMAIL: Ghowarth@jw-management.com

TEL (212) 400-2424
FAX (212) 400-2425

July 24, 2018

**(Via Certified Mail and Return Receipt Requested)**

Ms. Joanne Catanese
Divisional Vice President, Real Estate
Sears Holdings
3333 Beverly Road
Hoffman Estates, IL 60176

RE:   **Lease dated December 18, 1964**
**as amended and assigned, for the premises located at**
**1001 Patton Avenue, Asheville, NC and**
**known as Kmart Store Unit #4112**

Dear Ms. Catanese:

Nineteenth Asheville Properties and the Estate of Walter R. Samuels and Marilyn Joy Samuels, as tenants-in-common ("Landlord"), are in receipt of your notice electing to extend the subject Lease for the period commencing February 1, 2019 through November 30, 2022.  A copy of such notice is attached hereto.  Landlord currently leases the subject premises from Asheville K-M Associates, which in turn leases such premises from the Allison Bruce Irrevocable Trust, the Cara Bruce Irrevocable Trust, and the Steven Bruce Irrevocable Trust, which entities are collectively the fee owner of the leased premises.  The two foregoing leases currently expire on January 31, 2019, and neither lease has been renewed for any additional period beyond such date.  For any period after February 1, 2019, all Tenant communications regarding the leased premises should be sent to the fee owner at the following address:

Paul Bruce
2402 Jackstay Terrace
Reston, VA 20191
Email: paulbruceinc@comcast.net
Tel: (703) 909-0453

Very truly yours,

Glenn S. Howarth, Esq.
General Counsel

cc:   Julie Jenkins
Rachna K. Sachdev, Esq.
Paul Bruce

**(Via Email:  Julie.jenkins@searshc.com)**
**(Via Email: PAGreenHoldings@gmail.com)**
**(Via Email: Paulbruceinc@gmail.com)**

GSH/vo/name/Catanese.doc

# Exhibit V

DocuSign Envelope ID: CEF48694-50B9-4FF0-9F9E-9D947548E68A

**The Allison Bruce Irrevocable Trust**
**2402 Jackstay Terrace**
**Reston, Virginia 20190-2619**

**The Cara Bruce Irrevocable Trust**
**2402 Jackstay Terrace**
**Reston, Virginia 20190-2619**

August 6, 2018

**U.S. CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Ms. Joanne Catanese
Divisional Vice President, Real Estate
Kmart Corporation
c/o Sears Holding Corporation
3333 Beverly Road, 824RE
Hoffman Estates, Illinois 60179

      Re:  1001 Patton Avenue, Asheville, North Carolina
           Kmart Store #4112

        **REJECTION OF LEASE EXTENSION; NOTICE OF LEASE**
        **EXPIRATION; DEMAND FOR POSSESSION**

Dear Ms. Catanese:

      We are writing, as and on behalf of The Allison Bruce Irrevocable Trust, The Cara Bruce Irrevocable Trust and The Steven Bruce Revocable Trust (collectively, the "**Fee Owners**"), as the owners of fee simple title to the above-described property, in response to your correspondence of July 20, 2018 (the "**Notice**"), to Nineteenth Asheville Properties ("**NAP**") and the Estate of Walter R. Samuels and Marilyn Joy Samuels (collectively, the "**Samuels**", with the Samuels and NAP being herein collectively "**19th & Samuels**"). In the Notice, Kmart Corporation ("**Kmart**"), writing on letterhead of Sears Holdings ("**Sears**"), purports to extend through November 30, 2022, the Lease (as amended as hereafter described, the "**Kmart Lease**") between Patton Avenue Development Corporation ("**PADC**"), as "Landlord", and S. S. Kresge Company ("**Kresge**"), as "Tenant", dated December 18, 1964 (as amended by Amendment to Lease between such parties dated August 27, 1965, Second Amendment to Lease between NAP and Kmart dated March 3, 1992 [the "**Second Amendment to Kmart Lease**"], and Third Amendment to Lease between NAP and Kmart dated May 23, 2017 [the "**Third Amendment to Kmart Lease**"]) for premises at 1001 Patton Avenue, Asheville, Buncombe County, North Carolina. Response to the Notice has previously been given (i) by Glenn S. Howarth, General Counsel to J&W Management Corp., dated July 24, 2018, and sent on behalf of 19th & Samuels, and (ii) e-mail correspondence of Steven Bruce on behalf of The Steven Bruce Revocable Trust also dated July 24, 2018 (copies of both of which, being herein the "**Prior Responses**", are attached).

      This correspondence is written in amplification of the Prior Responses, as the Notice from Kmart did not and does not, for the reasons more fully articulated below, bind Fee Owners, as a result of which the term of the Kmart Lease has not been thereby extended, and cannot be extended,

Kmart Corporation
August 6, 2018
-- page 2 --

beyond its current expiration date of January 31, 2019, without the express written agreement of Fee Owners, which agreement has not been obtained.

When the Kmart Lease was entered into in 1964, PADC was the owner of the **"Commercial Development"** (as described and defined in the Kmart Lease) that was subject to the Kmart Lease, including the portion thereof leased to Kmart (the **"Premises"**). After the date of the Kmart Lease, ownership of the Commercial Development was transferred by a series of conveyances on February 1, 1966, from PADC to Martin Bruce and wife, Sylvia Bruce (collectively, the **"Bruces"**). Fee Owners in turn have succeeded to the interests of the Bruces in ownership of fee title to the Commercial Development.

Immediately following conveyance of fee ownership of the Commercial Development to the Bruces, the Commercial Development was in turn ground leased by the Bruces to Patton Plaza Associates (**"PPA"**) by Agreement (as amended as hereafter described, the **"Ground Lease"**) dated February 1, 1966 (as amended by Agreement between such parties dated November 5, 1969, Agreement dated July 11, 1972, between the Bruces and Nineteenth Asheville Corp. (**"NAC"**, errantly described in such instrument as Nineteenth Ashville Corp.), and Agreement dated July 27, 1973, between the Bruces and NAC). The Ground Lease was, by its terms, entered into and made subject to the Kmart Lease.

Following the entering into of the Ground Lease, PPA transferred and assigned the interest of the tenant under the Ground Lease to NAC by Assignment dated November 6, 1969. NAC in turn assigned the interest of the tenant under the Ground Lease to Asheville K-M Associates (**"Asheville K-M"**[1]) by Assignment dated December 17, 1975, following which Asheville K-M effectively sublet the Commercial Development back to NAC by virtue of Lease between such parties dated December 23, 1975 (the **"Sandwich Lease"**). The Sandwich Lease by its terms was made expressly subject to subleases then in existence.

Record notice of the Ground Lease was filed in the Office of the Register of Deeds of Buncombe County, North Carolina (the **"Registry"**), in Book 934, Page 649 (filed February 1, 1966), and Book 2601, Page 846 (filed October 5, 2001). Likewise, evidence of assignment of the Tenant's interest under the Ground Lease has been recorded at Book 1009, Page 487 (filed November 7, 1969), Book 1133, Page 376 (filed December 23, 1975) and Book 2220, Page 433 (filed January 10, 2000), all in the Registry. In addition, record notice of the Sandwich Lease was filed in the Registry in Book 1134, Page 438 (filed January 13, 1976) and Book 1135, Page 162 (filed January 23, 1976).

---

[1] Asheville K-M Associates further assigned the interest of the tenant under the Ground Lease to Asheville K-M Associates, LLC in connection with a partnership conversion on December 31, 1999, by Assignment recorded on January 10, 2000, at Book 2220, Page 433, in the Registry hereafter described. For purposes of this correspondence, "Asheville K-M" shall include both Asheville K-M Associates and Asheville K-M Associates, LLC, as the context requires.

Kmart Corporation
August 6, 2018
-- page 3 --

The Kmart Lease, when originally entered into, was for a term of approximately twenty (20) years, and the tenant under the Lease had options to extend the term of the Kmart Lease for three (3) consecutive terms of five (5) years each. As the Kmart Lease commenced on or about February 1, 1966, the maximum term under the original Kmart Lease (including available extensions, had Kmart exercised its options for same) would have run through only January 31, 2001. Because the original fee owner of the Property (PADC) entered into the original Kmart Lease, any subsequent fee owner of the Commercial Development (including the Bruces) was, along with the ground tenant under the Ground Lease, bound for that original term and the originally-contemplated extension terms, if exercised.

While the fee owner of the Commercial Development would have been bound by the Kmart Lease for its full original term (including exercised extensions) as aforesaid, interjection of the Ground Lease and Sandwich Lease changed the relationships among the interested parties. Any amendment of the Kmart Lease signed only by Kmart and the Tenant under the Ground Lease (or, even more so, by only Kmart and the sublessee under the Sandwich Lease following introduction of that additional layer in 1975) that resulted in an extension of Kmart's occupancy of the Premises beyond January 31, 2001 (or that otherwise modified the original terms of the Kmart Lease), would **not** be effective to bind the owner of the underlying fee title to the Commercial Development, absent the written agreement of the underlying fee owner to be bound, inasmuch as – among other things -- the additional interest in the Premises being acquired by Kmart in such document was derivative of the leasehold or subleasehold estate only of Asheville K-M and the Samuels, as applicable, and record notice of such derivative interests had been properly filed of record in the Registry prior to the entering into of either of the Second Amendment to Kmart Lease and Third Amendment to Kmart Lease. Customarily, such an agreement to be bound would be reflected in some type of non-disturbance or recognition agreement by the fee owner in favor of the subtenant (or, in this case, sub-subtenant).[2] In the case at hand, however, an agreement binding the fee owner was never made by Kmart and the then-fee owner, as a result of which Fee Owners and their predecessors are not bound by any provisions of the 1992 and 2017 amendments to the Kmart Lease extending the term thereof beyond January 31, 2001, as those amendments were signed by Kmart and NAP only.

At this time, Asheville K-M has declined timely to exercise its right to extend the term of the Ground Lease beyond its current expiration date of January 31, 2019, and the option to do so under the Ground Lease has now expired and is of no further force and effect. Because the option

---

[2] We note that, in connection with a potential sub-sublease transaction proposed in 2015 by Kmart for a Golden Corral restaurant within the Commercial Development, the parties recognized that, in order to protect fully the term of the Golden Corral sublease that was being contemplated, it was necessary to have the Fee Owners, Asheville K-M and the Samuels all join in execution of such "recognition documentation." While the Golden Corral transaction was never concluded, preparation of the necessary recognition documentation in negotiating the transaction clearly demonstrates that Kmart was aware of the layered ownership/leasing structure pertaining to the Commercial Development and that Kmart and the Samuels were unable to conclude agreements amongst themselves regarding continued leasing within the Commercial Development that would be binding upon the interests of the Fee Owners, Asheville K-M and/or the Samuels absent their execution of such documentation.

Kmart Corporation
August 6, 2018
-- page 4 --

of Asheville K-M under the Ground Lease expired, 19th & Samuels likewise had and has no further right to continued occupancy of the Commercial Development or Premises beyond January 31, 2019, as no non-disturbance or recognition agreement between Fee Owners and 19th & Samuels was entered into either. Given that the rights to continued occupancy of the Commercial Development and Premises belonging to the parties intervening between Fee Owners and Kmart have not been extended, the rights of occupancy of both of such parties (as well as any other parties claiming through them) altogether terminate and expire on January 31, 2019. As a result (and as stated previously), Kmart's Notice does not bind Fee Owners and, accordingly, is ineffective to extend the term of the Kmart Lease, which will likewise expire on January 31, 2019, along with the Ground Lease and Sandwich Lease.

Given the foregoing, Kmart should vacate and surrender possession of the Premises and Commercial Development to Fee Owners in accordance with the terms of the Kmart Lease on or before January 31, 2019, and demand for possession on such date is hereby made by Fee Owners.

Sincerely,

THE ALLISON BRUCE IRREVOCABLE TRUST

By: _Allison Bruce Trustee_

Name: _Allison Bruce_
Title: _Trustee_

Signatures to continue on next page

Kmart Corporation
August 6, 2018
-- page 5 --



**THE CARA BRUCE IRREVOCABLE TRUST**

By: ┌─ DocuSigned by:
    │ *Cara Bruce*
    └─ AE1AC14B7D054BC...

Name: Cara Bruce

Title: 8/5/2018 7:49:33 AM PDT



enclosures

cc:   Sears Holdings Corporation (via U.S. Certified Mail, Return Receipt Requested w/enclosures)
      3333 Beverly Road, 824RE
      Hoffman Estates, Illinois 60179
      Attention: Associate General Counsel – Real Estate

      Ms. Joanne Catanese (via e-mail w/attachments)

      Glenn S. Howarth, Esq. (via e-mail w/attachments)