FILED
1st JUDICIAL DISTRICT COURT
Santa Fe County
4/24/2019 4:56 PM
STEPHEN T. PACHECO
CLERK OF THE COURT
Desiree Brooks

**FIRST JUDICIAL DISTRICT COURT**
**COUNTY OF SANTA FE**
**STATE OF NEW MEXICO**

TAYLOR SORENSEN, as the Personal Representative of the
WRONGFUL DEATH ESTATE OF JONATHAN SORENSEN, Deceased,

      Plaintiff,

                                    D-101-CV-2019-01127
                                      Case assigned to Biedscheid, Bryan

v.                                        ~~Civil Action No.~~

KMART OPERATIONS LLC, a foreign limited liability company
authorized to do business in New Mexico, d/b/a KMART STORE #4136;
KMART CORPORATION, a foreign profit corporation authorized
to do business in New Mexico, JONATHAN PENDLEY;
EDWARD FLEMING; JOSEPHINE WALDREP; DARREN ROYBAL;
and UNIDENTIFIED JOHN and JANE DOES 1-10,

      Defendants.

### COMPLAINT FOR WRONGFUL DEATH AND PUNITIVE DAMAGES

    **COMES NOW**, Plaintiff Taylor Sorensen, as Personal Representative of the Estate of

Jonathan Sorensen (deceased), by and through his counsel of record, Bleus & Associates, LLC,

and for his causes of action for wrongful death, negligence, premises liability, intentional

infliction of emotional distress, and punitive damages and other causes of action brought against

Kmart Operations LLC, d/b/a Kmart Store #4136; Kmart Corporation; Jonathan Pendley;

Edward Fleming; Josephine Waldrep; Darren Roybal; and presently Unidentified John and Jane

Doe's 1 – 10, hereby states as follows:

### PARTIES AND JURISDICTION

1.    At the time of his untimely death, Jonathan Sorensen was twenty five (25) years old and a

citizen resident of Albuquerque, Bernalillo County, New Mexico.

2.    Plaintiff Taylor Sorensen is the surviving sibling of the deceased and the appointed

Personal Representative of the Estate of Jonathan Sorensen, for purposes of prosecuting this

Wrongful Death action pursuant to N.M. Stat. Ann. § 41-2-1 (1978) *et. seq.* (See *In re: Matter of the Estate of Jonathan J. Sorensen, Deceased,* D-101-PB-2019-00006, Order filed 01/11/2019). For purposes of determining jurisdiction, Plaintff Taylor Sorensen takes on the citizenship of decedent in a wrongful death action. 28 U.S.C. § 1332(c)(2).

3.      Upon information and belief, **Defendant KMART OPERATIONS LLC** d/b/a K-Mart Store No. 4136, (hereinafter referred to as "Defendant Kmart") is a Foreign For-Profit Limited Liability Company that is, or was, authorized to do business in the State of New Mexico, with a registered agent for service of process identified as: CT Corp., located at 206 S. Coronado Ave, Espanola, NM, 87532; or 123 East Marcy St., Santa Fe, New Mexico 87501. Defendant Kmart has submitted to the jurisdiction of the Courts of State of New Mexico, and because its Registered Agent is located in Espanola, New Mexico, venue is proper in the First Judicial District Court.

4.      Upon information and belief, **Defendant KMART CORPORATION** d/b/a Kmart Store No. 4136, (hereinafter referred to as "Defendant Kmart Corporation") is a Foreign For-Profit Corporation, originally incorporated in the State of Michigan, that is, or was, authorized to do business in the State of New Mexico, with a registered agent for service of process identified as: CT Corp., located at 206 S. Coronado Ave, Espanola, NM, 87532; or 123 East Marcy, Santa Fe, New Mexico 87501. Defendant Kmart Corporation has submitted to the jurisdiction of the Courts of State of New Mexico, and Because its Registered Agent is located in Espanola, New Mexico, venue is proper in the First Judicial District Court.

5.      Upon information and belief, **Defendant Kmart** and/or **Defendant Kmart Corporation**, individually or in concert, were the owner(s), landlord(s), lessor(s), franchisee(s), franchisor(s), manager(s), and/or operator(s) of the subject property identified as Kmart Store No. 4136

("Kmart Store"), which, at all times relevant to this lawsuit, had its principal place of business at 2100 Carlisle Blvd, in Albuquerque, Bernalillo County, New Mexico, and who exercised dominion and control of the above-named premises at the time of the Wrongful Death Incident made the basis of this lawsuit. Defendant Kmart and Kmart Corporation shall be referred to together as "**Defendant Kmart Entities**".

6.      Upon information and belief, **Defendant Jonathan Pendley** was over the age of 18, and a servant, agent, representative, contractor, and/or employee of Defendant Kmart or Defendant Kmart Corporation, who acted within the course and scope of his employment with one or both of the Defendant KMart Entities on the date of the Wrongful Death Incident. Upon information and belief, at the time of the Wrongful Death Incident, Defendant Jonathan Pendley was a resident of the State of New Mexico, and may be served with process by serving him at his place of residence, or wherever he may be found.

7.      Upon information and belief, **Defendant Edward Fleming** was over the age of 18, and a servant, agent, representative, contractor, and/or employee of one or both of the Defendant Kmart Entities, who acted within the course and scope of his employment with one or both of the Defendant Kmart Entities on the date of the Wrongful Death Incident. Upon information and belief, at the time of the Wrongful Death Incident Defendant Edward Fleming was a resident of the State of New Mexico, and may be served with process by serving him at his place of residence, or wherever he may be found.

8.      Upon information and belief, **Defendant Josephine Waldrep** was over the age of 18, and a servant, agent, representative, contractor, and/or employee of one or both of the Defendant Kmart Entities, who acted within the course and scope of her employment with one or both of the Defendant Kmart Entities on the date of the subject occurrence. Upon information and belief,

at the time of the Wrongful Death Incident Defendant Josephine Waldrep was a resident of the State of New Mexico, and may be served with process by serving her at her place of residence, or wherever she may be found.

9.      Upon information and belief, **Defendant Darren Roybal,** was over the age of 18, and a servant, agent, representative, contractor, and/or employee of one or both of the Defendant Kmart Entities and acted within the course and scope of his employment with one or both of the Defendant Kmart Entities on the date of the Wrongful Death Incident. Upon information and belief, at the time of the Wrongful Death Incident Defendant Darren Roybal was a resident of the State of New Mexico, and may be served with process by serving him at his place of residence, or wherever he may be found.

10.     The identities of John or Jane Doe's are presently unknown. Upon information and belief, however, **Defendant John and Jane Doe's 1-10** are presently, or were believed to be servants, agents, representatives, principles, contractors, sub-contractors, and/or employees of one or both of the Defendant Kmart Entities and were believed to be New Mexico residents at the time of the Wrongful Death Incident. John and Jane Doe's 1-10 are believed to have acted within the course and scope of their employment at all times relevant and material hereto. Further, some or all of Defendants John and Jane Doe's 1-10 are believed to have regularly conducted business and/or exercised control over other employees or agents and controlled and/or managed the premises on behalf of one or both of the Defendant Kmart Entities. As such, Defendant John and Jane Doe's 1-10 are subject to personal jurisdiction in the State of New Mexico.

11.     At all times relevant and material hereto, Defendants John and Jane Doe's 1-10 include unidentified and presently unknown servants, agents, representatives, principles, contractors, sub-contractors, and/or employees of one or both of the Defendant Kmart Entities, who acted

within the course and scope of their employment with one or both of the Defendant Kmart Entities, acting with the color of authority as one or both of the Defendant Kmart Entities' owners, partners, agents, servants, contractors, sub-contractors, joint ventures, managers, supervisors, employees, employers and/or representatives. All servants, agents, representatives, principles, contractors, sub-contractors, and/or employees of one or both of the Defendant Kmart Entities is responsible for the other's conduct and is vicariously responsible for the conduct of the servants, agents, representatives, principles, contractors, sub-contractors, and/or employees of the other Defendants.

12.    That the acts and conduct alleged herein were known to; authorized; and/or ratified, (individually or collectively), by one or both of the Defendant Kmart Entities; Defendants John and Jane Doe's 1-10; and/or any of the named individual Defendants implicated by the facts stated herein.

13.    The Wrongful Death Incident occurred at the Kmart Store located at 2100 Carlisle Blvd, in Albuquerque, Bernalillo County, New Mexico.

14.    That all acts and/or omissions complained of herein, were committed by the agents, servants, representatives, designees, employees and/or independent contractor agents, of the Defendants for which the Defendants are vicariously liable pursuant to the doctrine of *respondeat superior*.

15.    That all of the serious personal injuries, wrongful death and related damages, suffered by the Plaintiff are due solely and proximately, to the negligent acts and/or reckless conduct of the Defendants, individually or collectively, without any contributing negligence on the part of Plaintiff.

16.    That prior to, and on the date of the wrongful death incident, Defendant(s) had a non-delegable duty.  The duty created by their relationships with any other Defendant named herein is also non-delegable.

17.    As a result, Defendants are therefore jointly and severally liable for all damages incurred by, or caused to, the Plaintiff.

18.    That to the extent one Defendant seeks to hold any other Defendant named herein, its agents, servants, representatives, contractors, employees, and/or any other third party liable for the Plaintiff's serious personal injuries and wrongful death, Defendants are jointly and severally liable with them all, and with any other persons or entities to which its non-delegable duties apply.

## JURISDICTION AND VENUE

19.    That jurisdiction and venue of the Court are proper in the District Court of Santa Fe County, New Mexico, pursuant to Section 38-3-1 NMSA 1978, because the Personal Representative,  Plaintff Taylor Sorensen, takes on the citizenship of the decedent in a wrongful death action. 28 U.S.C. § 1332(c)(2), the individually named Defendants are residents of New Mexico and the Defendant Kmart Entities' registered agents are located in Santa Fe County, New Mexico.

## DEFINITIONS

20.    Whenever in this Complaint the term "Defendants" is utilized, such term collectively refers to, and includes, the Defendant Kmart Entities and all individually named Defendants, including John and Jane Doe Defendants involved in this lawsuit.

21.    Whenever in this Complaint it is alleged that Defendants did any act or thing, or failed to do any act or thing, it is meant that the officers, agents, servants, representatives, contractors,

and/or employees of Defendant Kmart Entities, performed, participated in, ratified, engaged in, encouraged, or failed to perform such acts or things while in the course and scope of their employment or agency relationship with said Defendants.

22.    Whenever in this Complaint the term "Kmart Store" or "Premises" is utilized, such term refers to the Kmart store, formerly located at 2100 Carlisle Boulevard NE, in Albuquerque, Bernalillo County, New Mexico.

23.    Whenever in this Complaint the term "Wrongful Death Incident" is utilized, such term refers to the facts and circumstances surrounding the wrongful death of Jonathan Sorensen, occurring inside the Kmart Store on or about May 3, 2016.

24.    Whenever in this Complaint the term "APD" is utilized, such term collectively refers to patrol officers, peace officers, detectives, supervisors, supervisors, and/or sergeants at the Albuquerque Police Departement in Albuquerque, Bernalillo County, New Mexico.

25.    Whenever in this Complaint the term "Principle Perpetrator Defendants" is utilized such term refers to the individually named Defendants: Jonathan Pendley, Edward Fleming, Josephine Waldrep, Darren Roybal and any presently unidentified John or Jane Doe's 1-10.

## STATEMENT OF MATERIAL FACTS

26.    On or about May 3, 2016, Jonathan Sorensen was a visitor, business invitee, patron, customer and/or guest at the Kmart Store located at 2100 Carlisle Boulevard NE, in Albuquerque, Bernalillo County, New Mexico, and was lawfully on the subject Premises during normal business hours.

27.    That at the time of the Wrongful Death Incident at the Kmart Store, the subject Store was owned, leased, controlled, managed, and/or maintained by one or both of the Defendant Kmart Entities.

28.    That on May 3, 2016, while inside the Kmart Store during normal business hours, several Kmart Store agents, servants, representatives, managers, contractors and/or employees, wrongfully and unreasonably, accosted, physically assaulted, battered, forcefully restrained, detained and handcuffed decedent Jonathan Sorensen, depriving him of his liberty.

29.    Also on that date, various Kmart Store agents, servants, representatives, managers, contractors and/or employees, forceably pushed Jonathan Sorensen to the ground, forcing him upon his stomach, with multiple agents or employees of the Defendant Kmart Entities kneeling, sitting, and/or leaning on top of his body, or otherwise physically restraining him in a dangerous, unreasonable and excessive manner under the circumstances.

30.    That at the time of the incident, Defendant Josephine Waldrep, joined the action upon hearing a commotion, and at that time, co-employee Defendants Jonathan Pendley and Edward Fleming already had Plaintiff Sorensen restrained (face down upon his stomach on the floor), and were attempting to cuff him with two sets of handcuffs.

31.    During this period, upon information and belief, Defendant Fleming was situated on top of Jonathan Sorensen's back and Defendant Pendley was on top of Mr. Sorensen, closer to his head, neck and shoulder area.

32.    Witnesses reported hearing Jonathan Sorensen yelling "[L]eave me alone or somethin' like that" and several witnesses reported that he was stating that he could not breathe and was begging for his life, as the Defendants continued to remain on top of him, even after Plaintiff lay motionless on the floor.

33.    Defendant Waldrep estimated that after Jonathan Sorensen was cuffed, she sat on him for an additional fifteen minutes until the "fire guys" arrived to the scene.

34.     During the time that decedent Sorensen was hand-cuffed behind his back and pinned face-down to the ground by the named Principle Perpetrator Defendants (and possibly by one or more of the John and Jane Doe Defendants 1 – 10), several customers who were in the area heard Mr. Sorensen decry "I'm scared," "I'm sorry," and "I need water." These customers also observed Mr. Sorensen acting under extreme duress and observed that he was in obvious distress.

35.     At the time at which Jonathan Sorensen was accosted, and physically assaulted, the Principle Perpetrator Defendants knew, or should have known, that Jonathan Sorensen was not armed and had no weapons in his possession.

36.     Upon information and belief, and at the time at which Jonathan Sorensen was accosted, unlawfully detained, and physically assaulted, the Principle Perpetrator Defendants knew, or should have known, that the detention ran afoul of Kmart policies, procedures and guidelines.

37.     That at the time of the forceful and unlawful restraint, Albuquerque Police Department dispatch logs indicate that a caller from the Kmart Store contacted 911 to report that a subject was in custody. Upon information and belief Defendant Jonathan Pendley's call was logged into dispatch at 16:34 and the dispatch log entry indicates "Male in cuffs … is being held on ground."

38.     That when interviewed by APD following the incident, one Kmart employee (Aaron Martinez), indicated that **after** Mr. Sorensen was handcuffed, three (3) Kmart employees (Defendants Roybal, Waldrep and Fleming) continued to pin the Plaintiff down, informing the Detective that "they were just basically sitting on him."  Aaron Martinez further described the forceful restraint as follows, "like their bodies were on top of him[.]"

39.     During the forceful and unlawful restraint, Kmart Store employee (Jennifer Gutierrez) was also asked to help in restraining Mr. Sorensen, and when she approached the scene Mr. Sorensen was not yet cuffed, but he was being restrained by multiple persons on the ground.

When interviewed by APD, Jennifer Gutierrez reported that Mr. Sorensen was not being violent, but he was yelling. Ms. Gutierrez did not recall exactly what Plaintiff Sorensen yelled, but believed it was something like "Maybe get off me."

40.    Jennifer Gutierrez further reported that she went to get co-employee Aaron Martinez for additional assistance, and **at one point all four of the named Principle Perpetrator Defendants were situated on top of Mr. Sorensen**, in some manner.

41.    Ms. Gutierrez even recalled that at some point in the forceful restraint, an unidentified customer showed Defendant Josephine Waldrep how to restrain Sorensen's legs.

42.    That Kmart employee, Taylor Dooley first observed the incident at a point in time when Plaintiff Sorensen was already restrained, laying face down upon his stomach with three Kmart employees sitting on him. Ms. Dooley reported that, Mr. Sorensen was no longer moving, and stated, "I believe he was already dead at that moment."   Taylor Dooley was at the incident location before firefighters arrived on scene.   Ms. Dooley recounted that her co-workers were situated on top of the Plaintiff, even though it appeared that he was deceased, reporting to APD investigators, "It was like 10 minutes they were still sitting on him – even though he wasn't moving."

43.    That as a result of the incident, Officer John Bonet, Badge No. P5359, was dispatched to the scene, and the dispatch log indicates at 16:48:46 Officer Bonet was "*ONSCN" (On scene). The dispatch log further indicates at 16:50:41: "MALE SUBJ NOT BREATHING. UNCON."

44.    Upon information and belief, APD Officer John Bonet was the first officer to arrive on scene. When he arrived he observed an Albuquerque Ambulance Unit [#64] and Albuquerque Fire Engine [#13] already on scene. Officer Bonet was met at the door by a female, wearing a

Kmart employee shirt or smock. That employee, Frances Rodulfo directed the officer to the back

of the store.

45.    Officer Bonet's written Incident Report describing his initial observations states as

follows:

> As I neared the toy section I observed rescue and a crowd of employees and customers gathering around the east end of the store near the toy section. I observed Sorensen in a face down position while handcuffed with three employees holding him to the ground. I observed Josephine Waldrep sitting on the back portion of Sorensen's legs while Edward Fleming had his hands towards the center portion of Sorensen's back with what appeared to be both his knees leaned atop the upper and lower portion of Sorensen's right hip area. I also observed Darren Roybal towards Sorensen's upper right shoulder area with both his hands holding Sorensen's upper chest to the ground while Pendley was having the back of his head checked. As I stepped to the left side of Sorensen's person near the shelves all three employees stepped away from Sorensen. I observed Sorensen to still be motionless and appeared to have discolored skin tones.
>
> I grabbed Sorensen's right biceps and forearm to turn him onto his left side to remove him from his chest and stomach. While rolling Sorensen onto his left side his head quickly went limp towards the ground. I observed Sorensen to still be motionless, unconscious, not breathing, and had a maroon/purple discoloration to his facial area. Albuquerque Ambulance checked for a pulse on Sorensen and showed a large amount of concern towards Sorensen's current condition. At this time I uncuffed Sorensen while advising rescue and parametric (sic) to tend to him while pulling Sorensen onto his back.

*See, Excerpt, Officer Bonnet Report, at 9 of 10,* [**Exhibit 1**].

46.    Upon information and belief, on or about May 3, 2016, the Principle Perpetrator

Defendants: Pendley, Fleming, Waldrep and Roybal, as well as unidentified Defendants John

and Jane Does 1-10, negligently, carelessly, and/or recklessly, and in violation of the laws and

regulations of the State of New Mexico, did accost, assault, batter, forcefully and unreasonably

restrained Jonathan Sorensen, contributing to, accelerating, and/or causing his death.

47.    That one or both Defendant Kmart Entities either knew, or in the exercise of reasonable

care, should have known that the Principle Perpetrator Defendants and Defendant John and Jane

Doe's 1-10 were inadequately hired, qualified, trained, supervised, and/or managed in a manner that greatly increased a risk of harm to the public, in general, and to Jonathan Sorensen, specifically.

48.     That one or both of the Defendant Kmart Entities failed to adequately train, qualify, manage or supervise the Principle Perpetrator Defendants and Defendant John and Jane Doe's 1-10 in loss prevention and/or standard safety practices, to ensure the safety of guests, patrons and/or invitees such as Jonathan Sorensen while on Kmart premises.

49.     That one or both of the Defendant Kmart Entities failed to implement and/or enforce proper or adequate safety measures, including loss prevention policies, procedures and guidelines, in order to protect guests, patrons and/ot invitees from the actions of its agents, servants, representatives, managers, contractors and/or employees.

50.     That as a direct and proximate result of Defendants' gross negligence or reckless conduct, Jonathan Sorensen was killed, due in whole or in party to positional asphyxiation, directly caused by the mode, method, and means by which he was restrained by the Principle Perpetrator Defendants and Defendant John and Jane Doe's 1 - 10.

51.     That following his death and autopsy, the Chief Medical Investigator for the Office of the Medical Investigator ("OMI") concluded that: "Several store personnel placed their weight on [decedent Sorensen's] upper and lower back and legs for approximately 10 minutes until a police officer arrived. During this interval Mr. Sorrensen ceased to struggle. When the police officer arrived Mr. Sorensen was unresponsive."

52.     At the end of Mr. Sorensen's short-lived life, Defendants (individually or in concert) caused him to suffer unimaginable pain, caused him to suffer severe emotional distress and exteme mental anguish. As a result of their actions or omissions, Defendants caused Jonathan

Sorensen to be gripped with fear while struggling to breathe, and further caused him to relieve himself, such that in his last moments of life he experienced unimaginable suffering from sheer humiliation, panic, and affront to his dignity.

## COUNT I
## WRONGFUL DEATH [NMSA 1978 §§ 41-2-1 – 3]
## (ALL DEFENDANTS)

53.    The allegations of the proceedings and succeeding paragraphs are incorporated herein by reference.

54.    On May 3, 2016, the acts and omissions of Defendants, (individually or in concert with one another), by and through their agents, servants, representatives, managers, contractors and/or employees, were wrongful and negligent, and were a direct and proximate cause of Jonathan Sorensen's wrongful death.

55.    As a result, Plaintiff is entitled to recover all damages legally available under the New Mexico Wrongful Death Act, NMSA 1978, §§ 41-2-1 -- 3, including the loss of enjoyment of life, loss of society, loss of earnings capacity, the monetary worth of Jonathan Sorensen's consious pain and suffering, the reasonable expenses of necessary medical care and treatment and of funeral and burial, together with all other damages that are fair and just, and as further described in the Damages prayer, below.

56.    The actions of all Defendants as described *supra*, by and through their agents, servants, representatives, managers, contractors and/or employees, were malicious, deliberate, willful, reckless, obdurate, and/or done with wanton disregard for the safety of Jonathan Sorensen, giving rise to punitive damages against these Defendants, individually and in concert.

## COUNT II
## VICARIOUS LIABILITY
## NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION
## (DEFENDANT KMART ENTITIES & JOHN AND JANE DOE DEFENDANTS)

57.     The allegations of the proceedings and succeeding paragraphs are incorporated herein by reference.

58.     Prior to May 3, 2016, Defendant Kmart entities and/or John and Jane Doe's, negligently hired, qualified, trained and failed to properly supervise the Principle Perpetrator Defendants and unidentified Jane Doe's 1-10.

59.     As an employer, Defendant Kmart entities and/or John and Jane Doe's are independently negligent in hiring, qualifying, training, entrusting, supervising and retaining the Principle Perpetrator Defendants and unidentified Jane Doe's 1-10 in connection with their employment with Kmart and for otherwise failing to act as a reasonable and prudent employer under the same or similar circumstances.

60.     On May 3, 2016, the Principle Perpetrator Defendants and/or unidentified Jane Doe's 1-10 were in the course and scope of their employment with  Defendant Kmart entities and John and Jane Doe's when they were involved in an unlawful and forceful detention leading to Plaintiff's wrongful death.

61.     That upon information and belief, Defendant Kmart entities and/or John and Jane Doe's, either knew, or should have known, that the Principle Perpetrator Defendants and unidentified Jane Doe's 1-10 were untrained, unfit, inadequately supervised, and generally unqualified to work for said company.

62.     That upon further information and belief, Defendant Kmart entities and/or John and Jane Doe's, either knew, or should have known, that the Principle Perpetrator Defendants and unidentified Jane Doe's 1-10 were poorly trained or supervised in the practices of loss

prevention, including, chasing, physically restraining and/or detaining, and confronting members of the public based on their beliefs that shoplifting had possibly occurred.

63.    That on the date and time of the Wrongful Death Incident, one or both of the Defendant Kmart Entities failed to have in place proper policies, procedures and/or guidelines for their loss-prevention personnel that would assure the safety of all guests, patrons, and invitees upon Defendants' Premises.

64.    That on the date and time of the Wrongful Death Incident, one or both of the Defendant Kmart Entities did authorize, encourage, participate in, promote, negligently entrust, accommodate, and/or generally embolden the unreasonable and unjustifiable use of force by its employees, including lethal force, used by its agents, servants, representatives, managers, contractors and/or employees, including the Principle Perpetrator Defendants and Defendant John and Jane Doe's 1-10, in circumstances in which those employees may have a reasonable or unreasonable belief that an individual upon Defendants' premises was committing an act commonly referred to as "shoplifting."

65.    That on the date of the Wrongful Death Incident, Defendant Kmart Entities negligently and/or recklessly entrusted handcuffs and other loss prevention items and/or equipment to its untrained or under-trained employees, such that the employees used the items to forcefully detain and hasten Plaintiff Jonathan Sorensen's death.

66.    That prior to, and on the date of the Wrongful Death Incident, Defendant Kmart entities and/or John and Jane Doe's failed to ensure that the Principle Perpetrator Defendants and unidentified Jane Doe's 1-10 complied with federal and state laws and regulations, industry standards, and further complied with Kmart policies, procedures, and guidelines.

67.     That as an employer Defendant Kmart entities and/or John and Jane Doe's, had certain non-delegable duties and responsibilities as defined by state and federal law, regulations, and industry standards.

68.     That Defendant Kmart Entities and their management and supervisory-level personnel (*some of whom may be John and Jane Doe Defendants*) owed a duty to guests, patrons, invitees and the general public, including Jonathan Sorensen, to ensure that Defendant's agents, servants, representatives, managers, contractors and/or employees, were adequately hired, qualified, trained, managed, supervised, and retained to work for Defendant Kmart, and that the Principle Perpetrator Defendants, and presently unidentified John and Jane Doe's 1 – 10, would operate, manage, or work at each Kmart Store, in such a manner so as to ensure that the premises were safe for use by the general public.

69.     That Defendants (individually or in concert) breached the duty of care owed to guests, patrons, invitees and the general public, including Jonathan Sorensen, and were grossly negligent in their training, supervision, and specifically negligent and/or reckless in their contact, treatment and interactions with Jonathan Sorensen, on May 3, 2016.

70.     That on or about May 3, 2016, the Principle Perpetrator Defendants and Defendant John and Jane Doe's 1-10 were in the course and scope of their employment with one or both of the Defendant Kmart Entities, when some or all of them took part in forcefully and physically accosting, assaulting, battering, unreasonably restraining, asphyxiating, crushing, and killing Jonathan Sorensen, without justification, which Wrongful Death Incident is the subject matter of this litigation.

71.    That one or both Defendant Kmart Entities is vicariously liable for the negligent and/or reckless conduct of the Principle Perpetrator Defendants and/or unnamed John and Jane Doe Defendants.

72.    That one or both of Defendant Kmart Entities is liable for the negligent and/or reckless conduct of the Principle Perpetrator Defendants and unnamed John and Jane Doe Defendants under the doctrines of *Respondeat Superior* and negligent entrustment.

73.    That as a direct and proximate result of the vicarious liability and negligent entrustment on the part of one or both Defendant Kmart Entities contributing to the actions or omissions of the Principle Perpetrator Defendants and/or unnamed John and Jane Doe Defendants, Jonathan Sorensen suffered untold pain and suffering, personal injuries, humiliation, loss of dignity, conscious pain and suffering, severe emotional distress, extreme mental anguish, and death.

74.    That the nature, extent and duration of the grievous personal injuries to Plaintiff resulting in his Wrongful Death, are due to the vicarious liability and negligent entrustment of one or both Defendant Kmart Entities to the Principle Perpetrator Defendants and the unnamed John and Jane Doe Defendants, without any contributing or comparative negligence on the part of decedent Jonathan Sorensen.

75.    That at all times relevant and material hereto, Defendant Kmart Entities had a non-delegable duty. The duty created by its relationships with any other Defendant named herein is also non-delegable. As a result, Defendant Kmart Entities is therefore jointly and severally liable for all damages caused to the Plaintiff.

76.    To the extent that Defendant Kmart Entities seeks to hold any other Defendant named herein, its' servants, agents, employees or any other third party liable for the Plaintiff's injuries and Wrongful Death and related damages, Defendant Kmart Entities are jointly and severally

liable with them all and with any other persons or entities to which its' non-delegable duties apply.

77.      As a result of the above, Plaintiff seeks incidental, consequential and punitive damages resulting from Defendants negligence, willful, wanton and reckless conduct and/or Defendant's intentional conduct with utter indifference to the consequences resulting therefrom as allowed by law and to be proven at trial.

## COUNT III
## NEGLIGENCE, NEGLIGENCE *PER SE,* AND *RES IPSA LOQUITUR*
## (ALL DEFENDANTS)

78.      The allegations of the proceedings and succeeding paragraphs are incorporated herein by reference.

79.      That on May 3, 2016, Defendant Kmart Entities and their management and supervisory-level personnel, the Principle Perpetrator Defendants, and presently unidentified John and Jane Doe's 1 – 10, owed a duty to decedent Sorensen, as a guest, patron, visitor, invitee and/or customer on the Kmart Premises, to keep him reasonably safe from harm, so as not to endanger the life and welfare of the Plaintiff or the general public.

80.      That Defendants (individually or in concert), breached the duty of care owed to decedent Sorensen by unreasonably chasing him, assaulting him, battering him, physically accosting him, depriving him of his freedom and liberty, forcefully and unreasonably restraining and detaining him, and causing his untimely death while on the subject Premises.

81.      That Defendants (individually or in concert), further breached the duty of care owed to decedent Sorensen by having in place unlawful, unreasonable and/or outdated loss prevention measures, policies, procedures and guidelines; or the Principal Perpetrator Defendants and John and Jane Doe Defendants 1 - 10 failed to follow or disregarded the Defendant Kmart Entities'

policies and procedures (such as the "hands off policy"), causing the untimely death of Decedent Sorensen.

82.    That Jonathan Sorensen's personal injuries were of the kind and nature, which do not ordinarily occur in the absence of negligence, such as the actions of the Defendants (individually or in concert), in this case.

83.    That the grievous personal injuries and Wrongful Death of Mr. Sorensen were a proximate result of the acts and/or omissions of all Defendants identified herein, individually or in concert.

84.    That Defendants' actions in contacting, interacting with, chasing, physically accosting, battering, forcefully and unreasonably restraining, and detaining Plaintiff were in violation of several New Mexico criminal statutes that were in full force and effect at the time of the Wrongful Death Incident, such as:

   a.  NMSA 1978, § 30-16-23 – Certain merchants and their agents can only *reasonably* restrain or detain an individual that they have probable cause to believe may be shoplifting (taking possession of merchandise with the intent to convert, and without paying for the merchandise). Defendants' efforts to restrain and detain Mr. Sorensen were without probable cause and/or were conducted forcefully and unreasonably. As a result, Defendants' actions were unreasonable and unjustifiable, such that  Defendants' actions were unlawful.

   b.  NMSA 1978, § 30-3-4 and/or § 30-3-5 – Defendants, individually or in concert, did unlawfully and intentionally touch or apply force to Jonathan Sorensen in a rude, insolent or angry manner; or with the intent to injure Mr. Sorensen, and did, in fact, injure and kill Mr. Sorensen.

    c. NMSA 1978, § 30-4-3 – Defendants, individually or in concert, did falsely imprison Mr. Sorensen and deprive him of his liberty by intentionally confining or restraining him without his consent and with knowledge that Defendants had no authority or justification for doing so.

85. Defendants' violations of New Mexico law constitutes negligence *per se*.

86. That as a direct result of Defendants' actions and/or omissions in violation of New Mexico law, Jonathan Sorensen and his statutory heirs under the Wrongful Death Act, NMSA 1978, §§ 41-2-1, et seq., suffered the following damages, including but not limited to: the reasonable expenses of his medical care, the monetary worth of his pain and suffering, extreme emotional distress, the reasonable expenses of his funeral and burial, the monetary worth of his life and the loss of the value of his life, and other damages specified in the Damages Requested Section, set forth *infra*.

87. The actions of Defendants, by and through their agents, servants, representatives, contractors and/or employees, were deliberate, obdurate, malicious, willful, reckless, and/or done with wanton disregard for Jonathan Sorensen, giving rise to punitive damages against all Defendants.

88. As a result of the above, Plaintiff seeks incidental, consequential and punitive damages resulting from Defendants negligence, willful, wanton and reckless conduct and/or Defendant's intentional conduct with utter indifference to the consequences resulting therefrom as allowed by law and to be proven at trial.

## COUNT IV
## JOINT AND SEVERAL LIABILITY
## (DEFENDANT KMART ENTITIES)

89.     The allegations of the proceedings and succeeding paragraphs are incorporated herein by reference.

90.     Plaintiff Jonathan Soresen's grievous injuries resulting in his Wrongful Death were of a kind and nature which does not ordinarily occur in the absence of negligence on Defendants' part.

91.     The personal injuries and Wrongful Death of Plaintiff Sorensen are a result of the acts or omissions by the above-named Defendants set forth above, individually or in concert.

92.     As a direct result of Defendants' actions and omissions Jonathan Sorensen, and his statutory heirs under the Wrongful Death Act, suffered the following damages: the reasonable expenses of his medical care and treatment; the reasonable expenses of his funeral and burial; the monetary worth of his pain and suffering; the monetary worth of his life and the loss of the value of his life. The actions or inactions resulting in Mr. Sorensen's death was accompanied by aggravating circumstances for which Plaintiff is entitled to additional punitive damages.

93.     At all times relevant to this Complaint, Defendant Kmart Entities and their management and supervisory-level personnel, had control over the time, manner, and method of operations and persons working at Kmart Store #4136., including the Principle Perpetrator Defendants, Defendant John and Jane Doe's 1-10, and persons responsible for hiring, qualifying, training and supervising and setting the policies and procedures for safety training and implementation for Defendant Kmart.

94.    On May 3, 2016, the Principle Perpetrator Defendants and Defendant John and Jane Doe's 1-10 were acting in furtherance and in the scope of Defendants' Kmart's business venture.

95.    That at all times relevant to this Complaint, Defendant Kmart Entities were responsible for, and exercised dominion and control over, the time; manner; and method of the Principle Perpetrator Defendants and Defendant John and Jane Doe's 1-10's safety policies, procedures and guidelines.

96.    Because of the methodolgies, policies, procedures and guidelines (or lack thereof) regarding merchandise loss prevention employed by, sanctioned, encouraged and approved by one or both of the Defendant Kmart Entities, which methodolgies, policies and procedures included physical confrontation, physical restraint of customers or members of the public, excessive force, and were, therefore, inherently dangerous as that term is defined under New Mexico law, and/or because of the nature of the relationship and obligations entered by one or both of the Defendant Kmart Entities as a results of their statutory obligations, one or both of the Defendant Kmart Entities had a non-delegable duty for which they cannot escape liability.

97.    One or both of the Defendant Kmart Entities recognized or should have recognized that the merchandise loss prevention policies and practices which were the cause of Jonathan Sorensen's death were likely to create a particular risk of physical harm to others, including Jonathan Sorensen, unless reasonable precautions were taken.

98.    The risks associated with the merchandise loss prevention policies and practices of physically accosting, detaining, and/or restraining suspected shoplifters was unusual and not a normal routine matter of customary human activity.

99.    A reasonable entity would recognize that special risks arose from the performance of the merchandise loss prevention policies and practices themselves, their character, or manner of performance against which there was a necessity of taking special precautions, including, but not limited to, special training and regular re-training and reassessing of the employees tasked with the special skills necessary to work in the loss-prevention area.

100.    The work involved in this case was inherently dangerous because policies and practices associated with persuing merchandise loss prevention, was very likely to cause harm if reasonable precautions against the peculiar risk or special danger was not taken.

101.    Furthermore, the danger involved and associated with merchandise loss prevention policies and practices flows from the activity itself, when carried out in its ordinary, expected way (such as chasing, confronting, tackling, physically restraining, cuffing and/or detaining suspects), such that reasonable precautions aimed at lessening the risk could be expected to have that effect.

102.    Pleading in the alternative, one or both of the Defendant Kmart Entities had a non-delegable duty as a result of its relationships and contractual obligations in relation to the polices and actual practices involved with merchandise loss prevention made the basis of the instant lawsuit. The duty created by its relationships with any other Defendant named herein is non-delegable.

103.    As a result of the non-delegable nature of one or both of the Defendant Kmart Entities' duties in this case, they are jointly and severally liable for the damages caused to Plaintiff and the decedent, Jonathan Sorensen. To the extent that one or both of the Defendant Kmart Entities seeks to hold any other Defendant named herein, its employees or any other third party liable for Jonathan Sorensen's injuries and death, one or both of the Defendant Kmart Entities is jointly

and severally liable with them and with any other persons or entities to which its non-delegable duties apply.

104.    The actions of Defendants, by and through their agents, servants, representatives, contractors and/or employees, were deliberate, obdurate, malicious, willful, reckless, and/or done with wanton disregard for Jonathan Sorensen, giving rise to punitive damages against all Defendants.

105.    As a result of the above, Plaintiff seeks incidental, consequential and punitive damages resulting from Defendants negligence, willful, wanton and reckless conduct and/or Defendant's intentional conduct with utter indifference to the consequences resulting therefrom as allowed by law and to be proven at trial.

## COUNT V
## PREMISES LIABILITY
## (DEFENDANT KMART ENTITIES)

106.    The allegations of the proceedings and succeeding paragraphs are incorporated herein by reference.

107.    At the time of the Wrongful Death Incident, Plaintiff Jonathan Sorensen was a visitor, invitee and/or guest who entered and/or remained on the premises owned, leased, controlled, managed, and/or maintained by one or both of the Defendant Kmart Entities.

108.    That one or both Defendant Kmart Entities owed a duty to maintain the premises in a safe manner, a duty to alleviate or guard against any dangerous conditions on or about the premises, and a duty to maintain its premises in a reasonable and safe condition.

109.    That on May 3, 2016, such duty was breached by the Defendants, and Jonathan Sorensen was severely injured and killed as a proximate result of that breach of duty.

110.    One or both of the Defendant Kmart Entities' breach of their duty to use ordinary care in the upkeep of the subject Premises and failure to provide warnings of known hazards, or dangerous conditions, were the proximate causes of Jonathan Sorensen's personal injuries and Wrongful Death as set forth within this Complaint.

111.    The employees, agents, representatives, and/or owners of one or both Defendant Kmart Entities knew, or should have known, that their actions and/or inactions, or the actions of its' agents, servants, representatives, managers, contractors and/or employees, including the Principle Perpetrator Defendants and Defendant John and Jane Doe's 1-10, caused a threat to the safety of Jonathan Sorensen and similarly-situated guests, invitees and customers, and Defendants (individually or in concert) failed to warn them and/or take action to make sure their guests, invitees and customers were not harmed.

112.    Due to the failure of one or both of the Defendant Kmart Entities to warn and protect Plaintiff Jonathan Soressen of the above-described hazard and dangerous condition and as a result hereof, decedent Jonathan Sorensen suffered injury and death as set forth in this Complaint.

113.    The actions of Defendants, by and through their agents, servants, representatives, contractors and/or employees, were deliberate, obdurate, malicious, willful, reckless, and/or done with wanton disregard for Jonathan Sorensen, giving rise to punitive damages against all Defendants.

114.    As a result of the above, Plaintiff seeks incidental, consequential and punitive damages resulting from Defendants negligence, willful, wanton and reckless conduct and/or Defendant's intentional conduct with utter indifference to the consequences resulting therefrom as allowed by law and to be proven at trial.

## COUNT VI
## PUNITIVE DAMAGES
## (ALL DEFENDANTS)

115.    The allegations of the proceedings and succeeding paragraphs are incorporated herein by reference.

116.    The Defendants' have been guilty of such willful misconduct, malice, wantonness, oppression, an utter disregard for public safety, and an entire want of care sufficient to raise the presumption of conscious indifference to the consequences.

117.    That Defendants' misconduct (individually or in concert) was so aggravating, it authorizes, warrants, and demands the imposition of substantial punitive damages against the Defendants.

118.    That at all times relevant and material hereto, Defendants conduct (individually or in concert) was willful, defined as the intentional doing of an act with knowledge that harm may result.

119.    That at all times relevant and material hereto, Defendants conduct (individually or in concert) was reckless, defined as the intentional doing of an act with utter indifference to the consequences.

120.    That at all times relevant and material hereto, Defendants conduct was wanton, defined as the doing of an act with utter indifference to, or conscious disregard for, a person's safety. UJI 13-1827 NMSA (1978).

121.    That Defendant Employer, authorized, ratified, or in some manner encouraged, the conduct of its' agents, servants, representatives, managers, contractors and/or employees, including the Principle Perpetrator Defendants and Defendant John and Jane Doe's 1-10, which were obdurate, grossly negligent, malicious, willful, wanton and reckless.

122.    As a direct and proximate result of the willful, wanton, and reckless conduct of Defendant's agents, servants, representatives, managers, contractors and/or employees, including the Principle Perpetrator Defendants and Defendant John and Jane Doe's 1-10 in causing the Wrongful Death of Jonathan Sorensen, Plaintiff  has suffered serious physical and psychological injuries, and died as a result of his injuries and Defendant's acts or omissions.

123.    That the longevity, scope and severity of Defendants' failures and direct actions and their deliberately indifferent actions or inactions with regard to the welfare and safety of the public, and, specifically, Jonathan Sorensen, constitutes gross negligence, willful, wanton, reckless, malicious and/or intentional misconduct.

124.    That such conduct included adopting loss prevention policies and procedures which inevitably posed an unreasonable danger to its guests, invitees and/or customers, including Jonathan Sorensen; or failing to properly train its employees with respect to its loss prevention policies, such that those employees, including the Principle Perpetrator Defendants and the John and Jane Doe Defendants, were ill-prepared and acted unreasonably, grossly neglient, willful, wanton, reckless, malicious or with intentional misconduct towards Jonathan Sorensen.

125.    Such conduct was undertaken by Defendants without regard to the health and safety consequences to Jonathan Sorensen.  Moreover, such conduct evidences such little regard for Defendants' duties of care, good faith, and fidelity owed to to the public as to raise a reasonable belief that the acts and omissions set forth above are the result of conscious indifference to Jonathan Sorensen's rights and welfare.

126.    The actions of Defendants, by and through their agents, servants, representatives, contractors and/or employees, were deliberate, obdurate, malicious, willful, reckless, and/or done

with wanton disregard for Jonathan Sorensen, giving rise to punitive damages against all Defendants.

127.    As a result of the above, Plaintiff seeks incidental, consequential and punitive damages resulting from Defendants negligence, willful, wanton and reckless conduct and/or Defendant's intentional conduct with utter indifference to the consequences resulting therefrom as allowed by law and to be proven at trial.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (ALL DEFENDANTS)

128.    Prior to the Wrongful Death Incident made the basis of this lawsuit, Jonathan Sorensen was a loving, caring, and healthy young man.

129.    That during the May 3, 2016 incident and Defendants' actions in contacting, interacting with, chasing, physically accosting, battering, forcefully and unreasonably restraining, and detaining Plaintiff in violation of several New Mexico criminal statutes, and as a direct and proximate result of Defendant's deliberate, wanton wilful and reckless conduct, Jonathan Sorensen suffered severe emotional distress, extreme mental anguish, damage to his dignity, humiliation and severe and disabling injuries, which resulted in his death.

130.    That Defendants, (individually and in concert), engaged in extreme and outrageous conduct in contacting, interacting with, chasing, physically accosting, battering, forcefully and unreasonably restraining, and detaining Plaintiff in violation of several New Mexico criminal statutes, such that their conduct caused Plaintiff Jonathan Sorensen's death.

131.    Defendants' conduct was intentional, reckless, wilful, wanton, obdurate and in utter disregard for the consequences thereof.

132.    Upon information and belief, Defendants either expected their intentional acts or omissions to result in the type of injury or death to Plaintiff, or Defendants utterly disregarded the consequences of their actions and/or omissions.

133.    Defendants' intentional and willful condcuct constituted a profit-motivated example of elevating product, merchandise and revenue over safety, and were executed without just cause or excuse.

134.    As a result, while alive, Plaintiff Sorensen was caused to suffer severe emotional distress, extreme mental anguish, damage to his dignity, humiliation, and severe and disabling injuries, which resulted in his death, and such conduct was a direct and proximate result of Defendants' extreme, outrageous, intentional, willful, and reckless conduct in contacting, interacting with, chasing, physically accosting, battering, forcefully and unreasonably restraining, and detaining Plaintiff in violation of several New Mexico criminal statutes.

135.    Defendants' conduct evinced a complete indifference to, or a conscious disregard for, the safety of others, including Plaintiff Jonathan Sorensen

136.    The actions of Defendants, by and through their agents, servants, representatives, contractors and/or employees, were deliberate, obdurate, malicious, willful, reckless, and/or done with wanton disregard for Jonathan Sorensen, giving rise to punitive damages against all Defendants.

137.    As a result of the above, Plaintiff seeks incidental, consequential and punitive damages resulting from Defendants negligence, willful, wanton and reckless conduct and/or Defendant's intentional conduct with utter indifference to the consequences resulting therefrom as allowed by law and to be proven at trial.

## DAMAGES SOUGHT

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, jointly and severly, or, alternatively, comparatively, awarding all damages to which he is entitled pusuant to the New Mexico Wrongful Death Act, NMSA 1978, §§ 41-2-1 – 41-2-3, and based upon the aggravating circumstances attending the wrongful acts alleged herein, including but not limited to damages such as:

a.     The reasonable expenses of necessary medical care and treatment, funeral and burial;

b.     The conscious pain and suffering experienced by the deceased between the initial contact with the Principle Perpetrator Defendants and Decedent Sorensen's death;

c.     The nature, extent and duration of the Decedent's pain and suffering between the initial contact with the Principle Perpetrator Defendants and death;

d.     The lost earnings; the lost earning capacity; the value of the lost household services of the decedent considering the decedent's young age, earning capacity, health, habits and life expectancy;

e.     The loss of opportunity of the decedent considering the decedent's youthful age, earning capacity, health, habits and life expectancy;

f.     The mitigating or aggravating circumstances attending the wrongful act;

g.     The emotional distress to the family caused by the loss of society and companionship enjoyed with the decedent;

h.     The value of the decedent's life, apart from his earning capacity;

i.     Such other compensatory damages as the jury may deem it just and proper to award;

j.      Punitive damages;

k.      Costs and attorneys' fees incurred in bringing this action, as allowed by law;

l.      Pre- and post-judgment interest; and

m.      For such other and further relief as the Court deems just and proper.


Respectfully submitted by:

**BLEUS & ASSOCIATES, LLC**

/s/ George Anthony Bleus, Esq.
George Anthony Bleus, Esq.
Nghiem Nguyen, Esq.
Attorneys at Law
2633 Dakota St NE
Albuquerque, NM 87110
Telephone: (505) 884-9300
Facsimile: (505) 884-9305
E-mail: bleusandassociates@gmail.com
*Attorneys for the Plaintiff*

## Modus Operandi

▲

| Gang Act? | Gang Name | Property Targeted | Physical Evidence | Method of Entry | Point of Entry |
|---|---|---|---|---|---|
| Premise Type | Entry Location | Oddity | Alarm | Suspect Action | Crime Code(s) | Hate Crime Date |

## Narrative

▲

| Narrative |
|---|

On 05/03/16 at 1639 hours, Sergeant W. Young and I were dispatched to a priority one shoplifting call at KMart, which is located at 2100 Carlisle Bl NE. The call indicated loss prevention was with an individual, who was later identified as Jonathan Sorensen. Comments on the call indicated Sorensen was attempting to hit the caller, who was later identified as Jonathan Pendley, and was being violent. Additional comments indicated Sorensen was in custody and with Pendley in the "mail hallway" and that Sorensen was wearing a black shirt, red pants, and white tennis shoes. As officers were still responding additional information was updated that Sorensen and Pendley were in the toy section by the office and Sorensen was attempting to fight with Pendley and other employees.
At 1636 hours the call indicated Sorensen was in handcuffs and being held to the ground. As more comments were being added rescue was being requested due to Pendley having an injury to the back portion of his head.
Upon arrival to the scene I observed Albuquerque Ambulance number 64 and Albuquerque Fire Engine 13 were parked in the front and personal were already inside. I was the first officer to arrive while Sergeant W. Young was shortly behind me. I entered the store due to the comments on the call and due to rescue already being inside.
As I neared the toy section I observed rescue and a crowd of employees and customers gathering around the east end of the store near the toy section. I observed Sorensen in a face down position while handcuffed with three employees holding him to the ground. I observed Josephine Waldrep sitting on the back portion of Sorensen's legs while Edward Fleming had his hands towards the center portion of Sorensen's back with what appeared to be both his knees leaned atop the upper and lower portion of Sorensen's right hip area. I also observed Darren Roybal towards Sorensen's upper right shoulder area with both his hands holding Sorensen's upper chest to the ground while Pendley was having the back of his head checked. As I stepped to the left side of Sorensen's person near the shelves all three employees stepped away from Sorensen. I observed Sorensen to still be motionless and appeared to have discolored skin tones.
I grabbed Sorensen's right biceps and forearm to turn him onto his left side to remove him from his chest and stomach. While rolling Sorensen onto his left side his head quickly went limp towards the ground. I observed Sorensen to still be motionless, unconscious, not breathing, and had a maroon/purple discoloration to his facial area. Albuquerque Ambulance checked for a pulse on Sorensen and showed a large amount of concern towards Sorensen's current condition. At this time I un-cuffed Sorensen while advising rescue and parametric to tend to him while pulling Sorensen onto his back. While rolling Sorensen onto his back his head inadvertently struck the corner of a nearby bottom shelf while clearing the area for rescue to treat him. Employees were asked how long they estimated Sorensen was laying in the face down position, at which time I was advised
Once rescue began treating Sorensen I began to contact multiple employees to begin setting up shopping carts around where Sorensen was being treated to establish an inner perimeter for scene security. While securing the scene I observed employees confronting and gathering around two females, Chantel Trujillo and Rosemarie Romero, as Trujillo was recording the incident with her cell phone. Additional officers were requested to the scene to assist with the large amounts of people and scene security while I separated the employees from Trujillo and Romero. I briefly spoke with Trujillo and Romero who appeared very upset at the time reference what just occurred and indicated they believed Sorensen was held down for approximately twenty minutes. Trujillo and Romero were asked if they would like to stay for statements and interviews with detectives, which they agreed to do.

I was notified by rescue that they were not making progress in reviving Sorensen and were going to conclude any additional treatment. Field Investigator R. Sanchez responded to the call and was advised of the situation as rescue was concluding their efforts and Sergeant W. Young was requesting homicide detectives to the scene. While detectives and additional officers were responding I continued to locate and relocate witnesses, suspects, customers, and employees to different areas of the store while closing the store completely to preserve the scene. The store was cleared and closed from all customers, all witnesses were moved to the jewelry section/department for provide written statements, and all remaining employees were moved to the break room. The unidentified pharmacist remained at the pharmacy while upper management stayed at the from of the store to assist officers/logistics in keeping the scene secure.

Prior to rescue leaving the scene spoke with both paramedics and AFD as to what they observed when they arrived shortly before officers. I was advised Sorensen was in a face down position not responding and motionless, but allowed employees to continue to deal with Sorensen due to officers not being present to secure the scene and began evaluating Pendley.

Homicide detectives later arrived on scene and were briefed on all the information I had obtained on scene and they began their investigation.

I remained on scene to conduct my report until crime scene investigators and the Office of Medical Investigators (OMI) cleared the scene. I spoke with Mr. Wasko who pronounced the time of death at 1915 hours. A copy of this report was forwarded to Detective M. Caplan (P5272) for his case preparation and all lapel videos were uploaded to Evidence.com. This concluded my involvement in this investigation.

**End of document**

| SUMMONS ON COMPLAINT | |
|---|---|
| First Judicial District Court<br>Santa Fe County<br>New Mexico<br><br>Court Address:<br>225 Montezuma Ave, Santa Fe,<br>NM 87501<br>Phone: 505-455-8250 | Case No. D-101-CV-2019-01127<br><br><br>Judge: Honorable Bryan Biedscheid |
| Plaintiff(s): TAYLOR SORENSEN, as the Personal Representative of the WRONGFUL DEATH ESTATE OF JONATHAN SORENSEN, Deceased,<br><br>v.<br><br>Defendant(s): KMART OPERATIONS LLC, a foreign limited liability company authorized to do business in New Mexico, d/b/a KMART STORE #4136; KMART CORPORATION, a foreign profit corporation authorized to do business in New Mexico, JONATHAN PENDLEY; EDWARD FLEMING; JOSEPHINE WALDREP; DARREN ROYBAL; and UNIDENTIFIED JOHN and JANE DOES 1-10. | Defendant:<br>KMART OPERATIONS LLC<br>C/O<br>C T CORPORATION SYSTEM<br>206 S CORONADO AVE<br>ESPANOLA, NM 87532 -2792 |

**TO THE ABOVE NAMED DEFENDANT:** Take notice that

1.    A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.    You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.    You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.    If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.    You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.    If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6606.

**RETURN**

| | |
|---|---|
| STATE OF NEW MEXICO | ) |
| | ) ss. |
| COUNTY OF BERNALILLO | ) |

I, being duly sworn on oath, say that I am over the age of eighteen (18) years and not a party to this lawsuit and that I served this Summons in ___Rio Arriba___ County on ___May 3, 2019___ by delivering a copy of this Summons with a copy of Complaint attached in the following manner:

[Check one box and fill in appropriate blanks]

[ ]    To defendant _____ (to be used when person receives a copy of the Summons and Complaint for Damages or refuses to accept the Summons and Complaint for Damages)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*)

After attempting to serve the Summons and Complaint for Damages on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this Summons, with a copy of Complaint for Damages attached, in the following manner:

[ ]    To _____ person over eighteen (18) years of age and residing at the usual place of abode of defendant, _____, (*used when the defendant is not presently at place of abode*) located at _____ (*insert defendant's last known mailing address*) a copy of the Summons and Complaint for Damages the time of such service was absent there from.

[ ]    To _____ the person apparently in charge at the actual place of business or employment of the defendant _____ at _____ (*insert defendant's business address*).

[X]    To ___Wolters Kluwer – Customer Specialist Rep – CT Corporation located at 206 S. Coronado Ave, Espanola, NM 87532___ an agent authorized to receive service of process for Defendant ___K-Mart Operation, LLC___.

[ ]    to _____ [parent] [guardian] [custodian] conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*)

[ ]    To _____ title of person authorized to receive service (used when Defendant is a corporation or association subject to suit under a common name, a land grant, board  trustees, the State of New Mexico, or any  political subdivision).

Fees: $_____

_____
Michael Tinker - Process Server

Subscribed and sworn to before me this __6th__ day of ___May___, 2019

_____
Judge, Notary Public, or other Officer
Authorized to Administer Public Oaths

OFFICIAL SEAL
Mikail    Tinker
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: __8-9-2019__

_____
Official Title

Santa Fe
Dated at ~~Bernalillo~~, New Mexico, this __25__ day of __April_____, 2019.

STEPHEN T. PACHECO
CLERK OF THE COURT

BY: ~~Veronica F. Rivera~~
DEPUTY

/s/ George Anthony Bleus, Esq.
Attorney for Plaintiff
Bleus & Associates, LLC
George Anthony Bleus, Esq.
2633 Dakota, NE
Albuquerque, New Mexico 87110
(505) 884-9300 Telephone
(505) 884-9305 Facsimile
bleusandassociates@gmail.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF
CIVIL PROCEDURE FOR DISTRICT COURTS.

| **SUMMONS ON COMPLAINT** | |
|---|---|
| First Judicial District Court<br>Santa Fe County<br>New Mexico<br><br>Court Address:<br>225 Montezuma Ave, Santa Fe,<br>NM 87501<br>Phone: 505-455-8250 | Case No. D-101-CV-2019-01127<br><br><br>Judge: Honorable Bryan Biedscheid |
| Plaintiff(s):  TAYLOR SORENSEN, as the Personal Representative of the WRONGFUL DEATH ESTATE OF JONATHAN SORENSEN, Deceased,<br><br>v.<br><br>Defendant(s):  KMART OPERATIONS LLC, a foreign limited liability company authorized to do business in New Mexico, d/b/a KMART STORE #4136; KMART CORPORATION, a foreign profit corporation authorized to do business in New Mexico, JONATHAN PENDLEY; EDWARD FLEMING; JOSEPHINE WALDREP; DARREN ROYBAL; and UNIDENTIFIED JOHN and JANE DOES 1-10. | Defendant:<br>KMART CORPORATION<br>C/O<br>C T CORPORATION SYSTEM<br>206 S CORONADO AVE<br>ESPANOLA, NM 87532 -2792 |

**TO THE ABOVE NAMED DEFENDANT:** Take notice that

1.    A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.    You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.    You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.    If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.    You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.    If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6606.

**RETURN**

STATE OF NEW MEXICO                                    )
                                                       )  ss.
COUNTY OF BERNALILLO                                   )

      I, being duly sworn on oath, say that I am over the age of eighteen (18) years and not a party to this lawsuit and that I served this Summons in _Rio Arriba_ County on _May 3, 2019_ by delivering a copy of this Summons with a copy of Complaint attached in the following manner:

[Check one box and fill in appropriate blanks]

[ ]    To defendant _____ (to be used when person receives a copy of the Summons and Complaint for Damages or refuses to accept the Summons and Complaint for Damages)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*)

After attempting to serve the Summons and Complaint for Damages on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this Summons, with a copy of Complaint for Damages attached, in the following manner:

[ ]    To _____ person over eighteen (18) years of age and residing at the usual place of abode of defendant, _____, (*used when the defendant is not presently at place of abode*) located at _____ (*insert defendant's last known mailing address*) a copy of the Summons and Complaint for Damages the time of such service was absent there from.

[ ]    To _____ the person apparently in charge at the actual place of business or employment of the defendant _____ at _____ (*insert defendant's business address*).

[X]    To _Wolters Kluwer – Customer Specialist Rep – CT Corporation located at 206 S. Coronado Ave, Espanola, NM 87532_ an agent authorized to receive service of process for Defendant _K-Mart Corporation_ .

[ ]    to _____ [parent] [guardian] [custodian] conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*)

[ ]    To _____ title of person authorized to receive service (used when Defendant is a corporation or association subject to suit under a common name, a land grant, board trustees, the State of New Mexico, or any political subdivision).

Fees: $_____

_____
Michael Tinker - Process Server

Subscribed and sworn to before me this _6th_ day of _May_ , 2019

_____
Judge, Notary Public, or other Officer
Authorized to Administer Public Oaths

OFFICIAL SEAL
Mikail    Tinker
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: _____

_____
Official Title

Santa Fe
Dated at ~~Bernalillo~~, New Mexico, this __25__ day of __April_____, 2019.

STEPHEN T. PACHECO
CLERK OF THE COURT
BY: _~~Veronica F. Rivera~~_
        DEPUTY

/s/ George Anthony Bleus, Esq.
Attorney for Plaintiff
Bleus & Associates, LLC
George Anthony Bleus, Esq.
2633 Dakota, NE
Albuquerque, New Mexico 87110
(505) 884-9300 Telephone
(505) 884-9305 Facsimile
bleusandassociates@gmail.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.