**Hearing Date and Time: May 21, 2019 at 10:00 a.m. (Eastern)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re                                                        :

                                                             :        **Chapter 11**

**SEARS HOLDINGS CORPORATION,** *et al.,*    :

                                                             :        **Case No. 18-23538 (RDD)**

                                                             :

Debtors.[1]                               :        **(Jointly Administered)**

                                                             :

------------------------------------------------------------x

## THIRD OMNIBUS OBJECTION OF DEBTORS TO
## MOTIONS FOR RELIEF FROM STAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, LLC (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation ("**Sears Holdings**"), Sears, Roebuck & Co. ("**Roebuck**"), and certain of their affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection to the motions seeking relief from the automatic stay filed by Jenny and Ronald Yednak (ECF No. 1569) (the "**Yednak Motion**"), William Juiris (ECF No. 2745) (the "**Juiris Motion**"), Rosa Melgar (ECF No. 2960) (the "**Melgar Motion**"), Liberty Insurance Corp (ECF No. 3294) (the "**Liberty Motion**" and, collectively, the "**Stay Relief Motions**," and all of the proponents thereof, collectively, the "**Movants**"), and respectfully represent as follows:

## Preliminary Statement

1.      A movant seeking relief from the automatic stay must show cause warranting such relief.  11 U.S.C. § 362(d)(1).  If the movant fails to satisfy this burden, then "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  Here, Movants have failed to satisfy their burden to establish cause to lift the automatic stay.

2.      Movants seek to proceed with their respective prepetition actions (collectively, the "**Actions**").  The Stay Relief Motions are premised, at least in part, on the purported availability of third-party insurance or other coverage for liability for Movants' claims and related defense costs.  As the Debtors have explained to Movants, however, no such coverage is available with respect to the Actions.  If the automatic stay is lifted, the Debtors will be forced to incur all administrative and defense costs associated with these claims and lawsuits.  Movants are only a few of the Debtors' many thousands of prepetition general unsecured creditors.  It would be premature, inefficient, and prejudicial to all of the Debtors' administrative, priority, and other

2

general unsecured creditors to expend estate resources on any of Movants' claims at this time. The Stay Relief Motions should be denied.[2]

### Background

3.      Beginning on October 15, 2018 and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

5.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6.      On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the

---

[2] Several other parties filed motions for relief from the automatic stay after the Court entered the Stay Procedures Order (defined below), which provides a process requiring the submission of an Inquiry (defined below) to the Debtors in advance of filing a motion seeking relief. The following movants (the "**Inquiry Movants**") filed a motion and proposed a hearing date prior to submitting an Inquiry: Steven R. Wolf, et al. (ECF No. 2961), Martha West (ECF No. 2992), Matt L. Bauer (ECF No. 3177), and Jose Acosta (ECF No. 3124 amended by ECF No. 3189). The Inquiry Movants were informed that the Debtors consider the Inquiry Movants' motions to be automatically adjourned until the appropriate review periods under the Stay Procedures Order have expired. The Debtors reserve all rights to object to their motions as well as other motions that have been filed to date.

WEIL:\97026284\5\73217.0004

Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**"). The Sale Transaction closed on February 11, 2019.

7.    On March 1, 2019, the Court entered the *Order Approving Procedures for Modification of the Automatic Stay Under Certain Circumstances* (ECF No. 2720) (the "**Stay Procedures Order**").  The Stay Procedures Order approved procedures for the Debtors to review requests to lift the automatic stay to proceed with prepetition actions with recovery limited to available insurance proceeds (the "**Stay Procedures**").  Stay Procedures Order ¶ 2(a).  The Stay Procedures provide that a party seeking to lift the automatic stay submit a form inquiry that was annexed as Exhibit 1 to the Stay Order (an "**Inquiry**").  *Id.* ¶ 2(a).  The Debtors are afforded 45 calendar days to review and respond to an Inquiry and parties may file a motion for relief from the automatic stay if the Debtors do not respond to an Inquiry after the expiration of the 45-day period. *Id.* ¶ 2(e).

8.    On April 17, 2019, the Debtors filed the *Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 3275) (the "**Plan**"), and the *Disclosure Statement for Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 3276).

9.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on October 15, 2018 (ECF No. 3).

## Jurisdiction

10.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

WEIL:\97026284\5\73217.0004

(Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Actions Subject to Stay

### A.    The Yednak Action

11.    Movants Jenny and Ronald Yednak are plaintiffs in a pre-petition action

against Debtor Roebuck filed July 9, 2018 in the Circuit Court of Cook County, Illinois (the "**Cook**

**County Court**"), captioned as *Jenny Yednak et al. v. Sears Roebuck & Co. et al.*, Case No. 2018-

L-007065 (the "**Yednak Action**"), seeking damages for injuries that allegedly occurred as a result

of a wet floor on the premises of a Sears store.  *See* Yednak Mot. at *2.

12.    Jenny and Ronald Yendak filed the Yednak Motion on January 22, 2019,

seeking relief from the automatic stay to continue the Yednak action, arguing that insurance

coverage is likely available to satisfy all or a portion of a judgment entered against Roebuck in the

Yednak Action, and that the *Sonnax* factors (as described herein) weigh in favor of lifting the

automatic stay.  *See* Yednak Mot. at *2, 5–8.

### B.    The Juiris Action

13.    Movant William Juiris commenced an action against Sears Holdings in the

Cook County Court, captioned as *William Juiris v. Heidi Juiris and Sears Holdings Corp.*, No. 13

D 10549 (the "**Juiris Action**") alleging that Sears Holdings failed to withhold spousal maintenance

payments in connection with a divorce proceeding, where Mr. Juiris held claims for maintenance

and child support against his former spouse.  On March 21, 2018 the Cook County Court entered

a judgment in favor of Mr. Juiris.  Sears Holdings appealed the judgment to the Appellate Court

of Illinois, First District.  In connection therewith, Sears Holdings posted a supersedeas bond (the

"**Bond**") as security for the collection of the judgment.

5

14.     Mr. Juiris filed the Juiris Motion on March 5, 2019, seeking to modify the automatic stay as to the Debtors' interest in the Bond.  Juiris Mot. ¶ 4.  Mr. Juiris argues, among other things, that the Bond is not property of Sears Holdings, and that as a result, lifting the stay will not prejudice interests of the Debtors' creditors. Juiris Mot. ¶ 7.

15.     In addition, Mr. Juiris filed a proof of claim against Sears Holdings in connection with the Juiris Action, in the amount of $92,900, on March 25, 2019 (Proof of Claim No. 12025).

## C.     The Melgar Action

16.     On April 3, 2015 Movant Rosa Melgar filed a complaint in the Superior Court of New Jersey Law Division Union County under Docket Number UNN-L-1270-17 (the "**Melgar Action**"), against Sears Holdings, as well as other non-debtor defendants, seeking damages for alleged negligence in connection with injuries allegedly sustained on April 2, 2015. *See* Melgar Mot. ¶ 3; *id.* Ex. A ¶¶ 1–3.

17.     On March 26, 2019, Ms. Melgar filed the Melgar Motion, seeking relief from the automatic stay in order to proceed with the Melgar Action and to seek "proceeds from Defendant . . . insurance policies that cover liability." Melgar Mot. ¶ 8.

18.     In addition to the Melgar Motion, Ms. Melgar filed a proof of claim in these cases against Sears Holdings in connection with the Melgar Action in the amount of $120,000 (Proof of Claim No. 6110).

## D.     The Liberty Action

19.     Movant Liberty Insurance Corporation ("**Liberty**") commenced an action against Roebuck on May 30, 2018, currently pending in the United States District Court for the Eastern District of Tennessee, Knoxville Division (the "**Tennessee Court**"), with the case caption

6

*Liberty Insurance Corporation v. Sears, Roebuck & Co.*, Case No. 3:18-cv-00212 (the "**Liberty Action**"). Liberty is acting as subrogee under a certain insurance policy for Parrish Simpson, an individual on whose premises a fire allegedly started by a defective or a defectively-installed microwave, distributed or sold by Roebuck. Liberty is seeking to recover payments made to Mr. Simpson for damages resulting from this fire. Liberty Mot. at *6.

20.     Liberty filed the Liberty Motion on April 19, 2019, seeking relief from the automatic stay to obtain a judgment against Roebuck and to enforce such judgment from the proceeds of the Debtors' available insurance, or any third party defendants, currently unknown. Liberty Mot. at *5. In addition to the Liberty Motion, Liberty filed a proof of claim in these cases against Roebuck in connection with the Liberty Action in the amount of $75,000 (Proof of Claim No. 15641).

### The Debtors' Insurance Coverage

21.     The Debtors maintained various insurance policies in their history over the prepetition period. Among them were both general liability and umbrella policies that potentially could have applied in the Movants' Actions. The Debtors' general liability policy had a $5 million aggregate limit for each annual period beginning on August 1 and ending on August 1 the following year. Paid losses to date have exceeded the $5 million limit on each of those policies for the following periods, which are applicable to one or more of the Actions: (a) Aug. 1, 2007 – Aug. 1, 2008; (b) Aug. 1, 2010 – Aug. 1, 2011; (c) Aug. 1, 2011 – Aug. 1, 2012; (d) Aug. 1, 2012 – Aug. 1, 2013; (e) Aug. 1, 2013 – Aug. 1, 2014; (f) Aug. 1, 2014 – Aug. 1, 2015; (g) Aug. 1, 2015 – Aug. 1, 2016; and (h) Aug. 1, 2016 – Aug. 1, 2017. Therefore, no coverage exists with respect to the general liability policy for these years. In these instances, the insurer has no duty to defend the Debtors or pay for the Debtors' losses. Accordingly, where a Movant's Action falls within the applicable period where coverage is exhausted or where the Debtors would have to cover the

liability through a deductible, the Debtors—the Debtors, and not a third party—would be paying the costs of the Movant's Action. Copies of the notices of exhaustion evidencing the foregoing are attached hereto as **Exhibit A** (2007–2008), **Exhibit B** (2010–2011), **Exhibit C** (2011–2012), **Exhibit D** (2012–2013), **Exhibit E** (2013–2014), **Exhibit F** (2014–2015), **Exhibit G** (2015–2016), and **Exhibit H** (2016–2017).

22.    The following table summarizes the Actions that assert that insurance coverage is available:

| Cause of Action | Date of Incident | Asserted Claims | Applicable Dates of Insurance Policy | Applicable Lack of Coverage |
|---|---|---|---|---|
| Yednak Action | July 10, 2016 | $5,500,000 | 8/1/2015–8/1/2016 | Exhibit G |
| Juiris Action | Nov. 27, 2013 – Oct. 3, 2014 | $92,900 | 8/1/2013–8/1/2015 | Exhibits E, F |
| Melgar Action | Apr. 2, 2015 | $120,000 | 8/1/2014–8/1/2015 | Exhibit F |
| Liberty Action | Mar. 18, 2016 | $75,000 | 8/1/2015–8/1/2016 | Exhibit G |

23.    In addition to their general liability policies, the Debtors have umbrella coverage, which attaches after $5 million is incurred by the Debtors on a given claim. The umbrella coverage attachment applies whether or not the underlying policy has been exhausted. Here, the Debtors have not incurred $5 million in defense costs on any of the Movants' Actions, and consequently, umbrella coverage is unavailable to pay any judgments or defense costs at this time.

24.    Accordingly, the Debtors are without coverage to defend or satisfy claims arising out of the applicable Actions.

### Third Party Coverage

25.    Ms. Melgar has asserted in the Melgar Motion that although the "Debtor, Sears was 'self insured' for purposes of personal injury claims its contractors, 'ICON Health and Fitness, Inc.,' and 'Out of the Box,' and its policies cover the Debtor as an additional insured."

8

Melgar Mot. ¶ 10.  No third party has been covering the Debtors' defense costs in the Melgar

Action.  To date, third parties have denied coverage of the Melgar Action.

26.    Accordingly, at this time, the Debtors have no third-party coverage to

defend or satisfy claims arising out of the Melgar Action.

<u>**Argument**</u>

**A.    <u>Governing Legal Standards</u>**

27.    The automatic stay is "one of the fundamental debtor protections provided

by the bankruptcy laws."  *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S.

494, 503 (1986).  The stay is "designed to give the debtor time to organize its affairs—which

includes protection from having to defend claims brought against the estate . . . ."  *Teachers Ins.*

*& Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).  One of the primary forms of

protection that the stay provides is preventing a debtor from being forced to litigate multiple claims

in multiple forums.  *See In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983).

28.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that

upon a request of a party in interest and after notice and a hearing, the Court shall grant relief from

the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  "Cause" is not defined, and the decision

whether to modify the stay is left to the discretion of the bankruptcy court.  *In re Marketxt Holdings*

*Corp.*, 428 B.R. 579, 584 (S.D.N.Y. 2010).  In the Second Circuit, courts weigh twelve factors,

known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted.  *See*

*Sonnax Indus., Inc. v. Tri-Component prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280,

1286 (2d Cir. 1990).[3]  Not all of the factors will be relevant in a given case, and the Court may

---

[3] As noted by several of the Movants, the *Sonnax* factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection
with or interference with bankruptcy case; (3) whether the other proceeding involves the debtor as

disregard irrelevant factors.  *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999).  Additionally, courts need not assign equal weight to each factor, and have discretion is weighing the factors against one another.  *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

29.     Movants bear the initial burden to show cause for lifting the automatic stay. *Sonnax*, 907 F.2d at 1285.  "The burden on the movant seeking relief from the automatic stay to prosecute an unsecured claim is heavy," as "[t]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."  *In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *3 (Bankr. S.D.N.Y. Feb. 28, 2018) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

30.     However, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285; *In re Chittur & Assocs., P.C.,* No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *5–6  (S.D.N.Y. Dec. 18, 2018).

31.     Here, none of the Movants have satisfied the burden of establishing "cause" under section 362(d)(1), and as a result, the Stay Relief Motions should be denied.

---

fiduciary; (4) whether a specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether the debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*

**B.      The Debtors' Insurance Coverage Applicable to the Actions is Exhausted or Unavailable**

32.      Stay Relief Motions expressly cite to the availability of insurance coverage against liability for a Movant's claims or other assumption of litigation and judgment costs (*i.e.*, the fifth *Sonnax* factor). *See* Melgar Mot. ¶ 8; Yednak Mot. ¶ 6; Liberty Mot. at *6. Movants seek relief from the automatic stay in order to proceed to recover from insurance coverage for which Debtors are beneficiary or are otherwise indemnified. Furthermore, certain of the Movants assert that Debtors will not suffer any harm if the stay is lifted because they seek only the Debtors' available insurance coverage. *See, e.g.*, Melgar Mot. ¶ 13.

33.      As discussed above, the Debtors have determined that applicable insurance is exhausted or otherwise unavailable to cover damages or costs associated with the Actions. As a result, there is little support for Movants' application of the *Sonnax* factors, including—most obviously—the fifth factor, which considers whether the Debtors' insurer has assumed full defense responsibility. If the automatic stay were to be lifted with respect to the Movants' Actions for which no insurance is available, the Debtors would be forced to directly incur the costs of all legal fees and expenses to defend their interests or otherwise default and risk unjustified, larger damages claims. As additional administrative expense claims, those defense costs are "unquestionably a factor to be given serious consideration" in the cause inquiry. *In re Terry*, 12 B.R. 578, 582 (Bankr. E.D. Wis. 1981).

34.      The Debtors can identify no third parties that will absorb the full costs of litigation or of a potential judgment in a Movant's favor. Therefore, the fifth—and most relevant—*Sonnax* factor weighs against granting the Stay Relief Motions.

11

C.    **Additional *Sonnax* Factors Weigh Against Lifting the Automatic Stay**

35.    Movants argue that the first *Sonnax* factor—whether relief would result in a partial or complete resolution of the issues—weighs in favor of lifting the stay because proceeding with the Movants' Actions would allow them to establish liability and damages. *E.g.*, Liberty Mot. at *9. But lifting the stay merely for this purpose is not necessarily a guarantee of finality or resolution. *See, e.g., E. Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 171 (2d Cir. 1998) (creditor filing multiple lawsuits against debtors spent the "better part of three years in a fruitless effort" to obtain agreement or judgment for coverage from asserted third party). Lingering issues would necessitate Debtor involvement and be a further drain on estate assets.

36.    Furthermore, courts in this District have ruled that satisfaction of the first *Sonnax* factor is insufficient when complete resolution of a matter would be at a substantial cost, or may take a long time. *See In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *7 (S.D.N.Y. Dec. 18, 2018) (affirming a bankruptcy court decision denying relief from the stay, and finding that while modification of the automatic stay may well resolve the matter, it would do so at a substantial cost, and would be subject to a bankruptcy plan of distribution); *In re SunEdison, Inc.*, 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) (denying relief from the stay, and finding that "[t]he one factor weighing in favor of granting the *Motion* is that it will completely resolve the issues between the Debtors and Vivint (Factor # 1). But even then, final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan.").

37.    The second *Sonnax* factor—whether there is a lack of connection or interference with the bankruptcy estate—does not weigh in favor of lifting the stay. Where there is a lack of insurance, or even a dispute over the availability of insurance, the Debtors would inevitably be involved in such discussions, defense of actions, or, at the very least, monitoring of

12

the cases, interfering with the administration of their estates. The automatic stay is meant to shield

debtors from creditor harassment and from a multitude of litigation in a variety of forums at a time

when the Debtors' personnel should be focused on the chapter 11 cases.

38.    Furthermore, permitting the Actions to proceed would be at significant cost

to the Debtors' estates, and would serve to deplete the amounts available to all creditors.  At this

stage of the Debtors' chapter 11 cases, the Debtors cannot make a reasonable business judgment

regarding the expenses that should be incurred in defending the Actions, because they are not in a

position to estimate the recovery available to holders of general unsecured claims.  In contrast, if

the stay remains in place, the proofs of claim filed by Movants would be dealt with as part of the

normal claims reconciliation process, and the Debtors, after consultation with the Creditors'

Committee, would be in a better position to make a reasoned decision regarding the allocation of

resources to dispute such claims.  *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 68 (Bankr.

S.D.N.Y. 2017) (finding that "[f]orcing the Debtors to bear the costs and disruptions involved in

liquidating these unsecured claims before knowing what distribution will be made to unsecured

creditors unnecessarily interferes with the bankruptcy cases and prejudices the unsecured

creditors.").

39.    The fourth *Sonnax* factor, whether a specialized tribunal with the necessary

expertise has been established to hear the cause of action, does not support lifting the stay.  The

Actions here do not present specialized issues that require a specialized tribunal.  The state courts

are not required to be uniquely equipped in order to deal with the straightforward factual issues in

the underlying disputes.  Moreover, for those Movants' Actions are that are in their early stages,

the state courts have had little opportunity to analyze and understand the facts and legal issues of

WEIL:\97026284\5\73217.0004

the cases to the extent that would make them "specialized". Accordingly, the fourth *Sonnax* factor does not support granting relief in these circumstances.

40.    The seventh *Sonnax* factor, which considers whether litigation in another forum would prejudice the interests of other creditors, similarly weighs against granting the Stay Relief Motions. Lifting the stay where there is no insurance coverage would result in the Debtors incurring unnecessary administrative costs to litigate the Movants' Actions before recoveries to general unsecured creditors become available to them. Should the Lift Stay Motions be granted, given the scale of the Debtors' prepetition business, further filings of motions to lift the automatic stay are likely to occur. Simply negotiating and responding to such motions by itself creates administrative costs that consume estate assets that would otherwise be available for unsecured creditors. This result would be particularly impactful at this time when the Debtors are nearing the final stages of their chapter 11 plan proposal process, and where administrative costs will have a meaningful impact on creditor recoveries. Absent "extraordinary circumstances" the Movants should be treated in the same manner and on the same timeline as other unsecured creditors. *See Leibowitz*, 147 B.R. at 345.

41.    In the Juiris Motion, Mr. Juiris argues, among other things, that the seventh *Sonnax* factor weighs in favor of lifting the stay, because, according to Mr. Juiris, the Bond is not property of the Debtors since a judgment was entered against the Debtors in the lower court. Juiris Mot. 7(c). Mr. Juiris fails to mention that should Sears succeed in the appeal, it will be entitled to a return of the Bond, and, therefore, Sears does have an interest in the Bond. Furthermore, until such time as a judgment is entered on appeal, Sears remains responsible for any defense costs, including briefing, any discovery, and oral argument. Mr. Juiris cites to *In re Keene Corp.*, 171 B.R. 180, 182 (Bankr. S.D.N.Y. 1994), arguing that this decision is in its favor. However, in

*Keene*, the facts were different from those in this case, as in *Keene*, "[t]he parties completed the briefing of the appeals in January 1993, and at that point, awaited scheduling for oral argument." *Id.* at 182. Here, briefing has not been completed, and the parties are not close to a judgment being entered on appeal.

42.    The tenth *Sonnax* factor, whether relief would serve the interests of judicial economy and expeditious and economical resolution of litigation, also does not weigh in favor of lifting the automatic stay. The Debtors are party to numerous prepetition actions. If the Court were to lift the stay with respect to the Movants' Actions, the Debtors and the Court would continue to be inundated with similar requests for stay relief. Indeed, dozens of motions lifting the automatic stay have already been filed in these chapter 11 cases and, in addition, the Debtors are assessing multiple Inquiries being submitted to the Debtors under the Stay Procedures.

43.    The eleventh *Sonnax* factor, whether the parties are ready for trial in the other proceedings, also weighs against lifting the automatic stay in certain circumstances. In the Melgar Action, although depositions have been taken, arbitration proceedings are in progress. Accordingly, this Movant's Action is not 'ready for trial' as contemplated by the eleventh *Sonnax* factor.

44.    The twelfth *Sonnax* factor, which weighs the impact of the stay on the parties and the balance of the harms, does not support lifting the automatic stay. The Debtors have filed the Plan, and expect to have a confirmation hearing on that Plan in July of this year. The Debtors expect that the liquidating trust to be established under the Plan will be handling the claims reconciliation process. The Movants have not demonstrated how they would be prejudiced by waiting for liquidation of their claims in the chapter 11 cases or that they would be more prejudiced than any other potential creditor by waiting for the normal claims reconciliation process. *See, e.g.*,

*In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ("Whether awarded such claims sooner rather than later, they are no more prejudiced than any other potential creditor by what the Debtors anticipate will only be a short-term delay until a plan of reorganization is confirmed."); *SunEdison*, 557 B.R. at 309 ("[P]ostponing the liquidation of [movant's] claims will not adversely affect [movant]. The claim will be paid, if at all, under a confirmed plan. Furthermore, although the claim is large, the plan will pay it in 'bankruptcy dollars,' and the terms of a plan will indicate the true worth of the claim to the parties who must spend real dollars to litigate it.").

45.    Movants might argue that the claims are small compared to the Debtors' overall obligations. *See, e.g.*, Melgar Mot. ¶ 12. As explained above, however, the Debtors are party to numerous lawsuits. Indeed, this response addresses only a handful of the stay relief motions filed against the Debtors in these cases, demonstrating only a small portion of the volume of actions pending. Taken together, such lawsuits constitute a meaningful unsecured creditor constituency that the Debtors have an obligation to maximize value for as a whole. Although creditor recoveries are yet to be determined, the administrative costs expended on defending prepetition actions have a disproportionate negative impact on any constituency receiving less than full recovery. At this time, lifting the automatic stay would not expedite any potential recovery on account of these unsecured claims nor would it help to identify recovery amounts.

## Conclusion

46.    For the foregoing reasons, Movants have failed to satisfy their burden to establish cause to lift the automatic stay. Accordingly, the Stay Relief Motions should be denied.

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request

that the Court deny the Stay Relief Motions.

Dated: May 14, 2019
      New York, New York

          /s/ Garrett A. Fail
          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York  10153
          Telephone:  (212) 310-8000
          Facsimile:  (212) 310-8007
          Ray C. Schrock, P.C.
          Jacqueline Marcus
          Garrett A. Fail
          Sunny Singh

          *Attorneys for Debtors*
          *and Debtors in Possession*

WEIL:\97026284\5\73217.0004

**Exhibit A**

WEIL:\96895822\6\73217.0004

**CHUBB**

525 W. Monroe, Chicago, Il. 60661
O 312-612-8804  F 866-635-5688
dan.digioia@chubb.com
**Please Mail All Correspondence to:**
Chubb North America, P.O. Box 5120, Scranton, PA 18505

October 10, 2018

**VIA CERTIFIED MAIL, OVERNIGHT MAIL & EMAIL**
Larry Jenchel
Managing Litigation Counsel
Risk Management Department
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Re:    Policy #: HDOG21745078
       Policy Period: 08/01/2007 -08/01/2008
       Insurer: ACE American Insurance Company ("ACE")

Dear Mr. Jenchel:

Chubb North American Claims ("Chubb") is now responsible for handling claims previously handled by ACE American Insurance Company ("ACE"). ACE insured Sears Holding Corp. under policy # HDOG21745078, for the period of 08/01/2007 to 08/01/2008. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**
1.  **Insuring Agreement**
    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
         (1)   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
         (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
         No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.   The General Aggregate Limit is the most we will pay for the sum of:

     a.   Medical expenses under Coverage C.
     b.   Damages under Coverage A, and
     c.   Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action. Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Insurance Department, it maintains a Public Services Division to investigate complaints at 100 West Randolph, Chicago, IL, 60601 and at 320 West Washington Street, Springfield, IL 62767.

If you have any questions or would like to discuss, please feel free to contact me at 312-612-8804.

Sincerely,

*Dan Digioia*

Dan Digioia
Assistant Vice President
Casualty Claim Manager, North America Claims

Cc: AON:    Tim Routhieaux, tim.routhieaux@aon.com
            Carol Murphy, carol.murphy@aon.com
    ACE:    Rowland Banini, rowland.banini@chubb.com

**<u>Exhibit B</u>**



ACE North America                818-428-3751 *tel*
ARM Claims                       866-635-5687 *fax*
9200 Oakdale Ave. 8th Floor
Chatsworth, CA 91311             Alma.Magana@acegroup.com
                                 www.ace-ina.com

**Alma B. Magana**
*Assistant Vice President*

October 5, 2011

David Hallfield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Rd.
Hoffman Estates, IL 60179

Re:    Policy #:         HDO G25519826
       Policy Period:    8-1-10 to 08-01-11
       Insurer:          ACE American Insurance Co. (ACE)

Dear Mr. Hallfield;

ACE American Insurance Company ("ACE") insured Sears Holdings Corp under policy # HDO G25519826, for the period of 8-1-10 to 8-1-11. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit; no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined General Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits show, subject to all of the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products / Completed Operations) | $5,000,000 |
| Products / Completed Operations Aggregate Limit | $5,000,000 |



The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims.  With the payment of losses in excess of $5million there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

### SECTION I – COVERAGES

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)  The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

        (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

Additionally, the policy contains the **COMBINED POLICY AGGREGATE** endorsement. The endorsement states:

### Section III – LIMITS OF INSURANCE

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a.  Medical expenses under Coverage C.
    b.  Damages under Coverage A, and
    c.  Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Page 2/3



Should you have questions, please contact this writer.  The above recitation of ACE' position regarding coverage is neither expected nor intended to be a waiver of ACE American's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE American shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE American expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE American reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action.  ACE American reserves its right to supplement this letter.  ACE American also reserve its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Sincerely,

ACE American Insurance Company
Alma Magana

Copies:

AON -  Tim Rothieux
       Carol Murphy

ACE -  Ruth Ahlman

Page 3/3

**Exhibit C**



ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

818-428-3763 *tel*

keri.lefferts@acegroup.com
www.acegroup.com

**Keri Lefferts**
*Claims Specialist*

September 18, 2012

David Hallfield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

> **Sears Holdings Corp.**
> **Risk Management**
>
> SEP 2 4 2012
>
> ROUTED *Liz*

|       | Policy #:       | HDOG25530962 |
| :---- | :-------------- | :----------- |
|  Re:  | Policy Period:  | 8/1/11 to 8/1/12 |
|       | Insurer:        | ACE American Insurance Company ("ACE") |

Dear Mr. Hallfield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG25530962, for the period of 8-1-11 to 8-1-12. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
| :---- | :---- |
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been

paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

### Section I – COVERAGES

1. **Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

### Section III – LIMITS OF INSURANCE

2. The General Aggregate Limit is the most we will pay for the sum of:

   a.  Medical expenses under Coverage C.

   b.  Damages under Coverage A, and

   c.  Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

Page 2/3



The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3763.

Sincerely,

Keri Lefferts

cc: AON:    Tim Routhieaux, Tim.Routhieaux@aon.com

Carol Murphy, Carol.Murphy@aon.com

ACE:    Ruth Ahlman, Ruth.Ahlman@acegroup.com

Page 3/3

**Exhibit D**

818-428-3763 *tel*

keri.lefferts@acegroup.com
www.acegroup.com

**Keri Lefferts**
*Senior Claims Specialist*

ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

July 29, 2013

**VIA EMAIL AND REGULAR MAIL**
David Halffield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Re:    Policy #:          HDOG27011871
        Policy Period:     8/1/12 to 8/1/13
        Insurer:          ACE American Insurance Company ("ACE")

Dear Mr. Halffield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG27011871, for the period of 8-1-12 to 8-1-13. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope that the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been



paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1. **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.    The General Aggregate Limit is the most we will pay for the sum of:

    a.    Medical expenses under Coverage C.

    b.    Damages under Coverage A, and

    c.    Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

Page 2/3



The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3763.

Sincerely,

Keri Lefferts

cc: AON:       Tim Routhieaux, Tim.Routhieaux@aon.com

              Carol Murphy, Carol.Murphy@aon.com

    ACE:      Ruth Ahlman, Ruth.Ahlman@acegroup.com

**<u>Exhibit E</u>**

# A

ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

818-428-3763 tel

keri.lefferts@acegroup.com
www.acegroup.com

**Keri Lefferts**
*Claims Director*

August 21, 2014

## VIA CERTIFIED MAIL & EMAIL
Mr. David Halffield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Re:     Policy #:                    HDOG27022327
        Policy Period:               8/1/13 to 8/1/14
        Insurer:                     ACE American Insurance Company ("ACE")

Dear Mr. Halffield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG27022327, for the period of 8-1-13 to 8-1-14. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

> In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
| --- | --- |
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.



Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

**1.    Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the  COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

**2.**    The General Aggregate Limit is the most we will pay for the sum of:

a.    Medical expenses under Coverage C.

b.    Damages under Coverage A, and

c.    Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.



ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3763.

Sincerely,

*Keri Lefferts*

Keri Lefferts

cc:  AON:        Tim Routhieaux, Tim.Routhieaux@aon.com

                Carol Murphy, Carol.Murphy@aon.com

      ACE:        Ruth Ahlman, Ruth.Ahlman@acegroup.com

**<u>Exhibit F</u>**



818-428-3763 *tel*

ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

keri.lefferts@acegroup.com
www.acegroup.com

**Keri Lefferts**
*Claims Director*



August 4, 2015

## VIA CERTIFIED MAIL & EMAIL
Mr. David Halffield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

|  |  |  |
|---|---|---|
| Re: | Policy #: | HDOG27334143 |
|  | Policy Period: | 8/1/14 to 8/1/15 |
|  | Insurer: | ACE American Insurance Company ("ACE") |

Dear Mr. Halffield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG27334143, for the period of 8-1-14 to 8-1-15. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.



Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

### Section I – COVERAGES

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

### Section III – LIMITS OF INSURANCE

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C,

   b. Damages under Coverage A, and

   c. Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

Page 2/3



ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue.
ACE reserves its right to assert new, additional or different coverage defenses should new,
additional or different information and/or documents be received that warrant such action. ACE
reserves its right to supplement this letter. ACE also reserves its right to assert additional terms
and conditions of the Policy at issue to its current coverage determination should new, additional
or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-
3763.

Sincerely,

Keri Lefferts

cc: AON:     Tim Routhieaux, Tim.Routhieaux@aon.com

            Carol Murphy, Carol.Murphy@aon.com

   ACE:      Christine Kloss, Christine.Kloss@acegroup.com

**Exhibit G**

**CHUBB**

Chubb North American Claims                                818-428-3744 tel

Primary Casualty                                          818-428-3588 fax
P.O. Box 5113                                             will.elkner@chubb.com
Scranton, PA 18505

**Will Elkner**
*Senior Claims Specialist*

July 22, 2016

**VIA CERTIFIED MAIL & EMAIL**

Rob C. Fanning
Managing Litigation Counsel
Risk Management Department
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

|  | Re: | Policy #: | HDOG27334143 |
|--|-----|-----------|--------------|
|  |     | Policy Period: | 8/1/15 - 7/31/16 |
|  |     | Insurer: | ACE American Insurance Company ("ACE") |

Dear Mr. Fanning:

Chubb North American Claims ("Chubb") is now responsible for handling claims previously handled by ACE American Insurance Company ("ACE"). ACE insured Sears Holding Corp. under policy # HDOG27334143, for the period of 8-1-15 to 7/31/16. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|----------------|---------------------|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been

paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1.   **Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.   The General Aggregate Limit is the most we will pay for the sum of:

a.   Medical expenses under Coverage C.

b.   Damages under Coverage A, and

c.   Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE

reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Insurance Department, it maintains a Public Services Division to investigate complaints at 100 West Randolph, Chicago, IL, 60601 and at 320 West Washington Street, Springfield, IL 62767.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3744.

Sincerely,

ACE American Insurance Company

Will Elkner
Senior Claims Specialist

cc:  AON:     Tim Routhieaux, Tim.Routhieaux@aon.com

          Carol Murphy, Carol.Murphy@aon.com

     ACE:     Christine Kloss, Christine.Kloss@acegroup.com

**Exhibit H**

Will Elkner      O  +213.612.5365
Pacific Region     F  +818.428.3588
555 S. Flowers Street, 5th Floor, Los will.elkner@chubb.com
Angeles, CA 90017
USA

April 11, 2019

<u>**VIA CERTIFIED MAIL & EMAIL**</u>

Robin C. Fanning
Managing Litigation Counsel
Risk Management Department
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179



|        |                 |                                              |
|--------|-----------------|----------------------------------------------|
| Re:    | Policy #:       | HDO G27853717                                |
|        | Policy Period:  | 08/01/2016 -08/01/2017                       |
|        | Insurer:        | ACE American Insurance Company ("ACE")       |

Dear Ms. Fanning:

Chubb North American Claims ("Chubb") is now responsible for handling claims previously handled by ACE American Insurance Company ("ACE"). ACE insured Sears Holding Corp. under policy # HDOG27853717, for the period of 8-1-16 to 08/01/2017. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form:                                              | Limits of Insurance |
|------------------------------------------------------------|---------------------|
| COMMERCIAL GENERAL LIABILITY                               |                     |
| General Aggregate Limit (other than Products/Completed/Operations) | <u>$5,000,000</u>   |
| Products/Completed/Operations Aggregate Limit             | <u>$5,000,000</u>   |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights,

duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1.  **Insuring Agreement**

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1)   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.   The General Aggregate Limit is the most we will pay for the sum of:

    a.   Medical expenses under Coverage C.

    b.   Damages under Coverage A, and

    c.   Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Insurance Department, it maintains a Public Services Division to investigate complaints at 100 West Randolph, Chicago, IL, 60601 and at 320 West Washington Street, Springfield, IL 62767.

If you have any questions or would like to discuss, please feel free to contact me at 213.612.5365.

Sincerely,

ACE American Insurance Company

Will Elkner
Senior Claims Specialist
.

cc:      AON:          Carol Murphy, Carol.Murphy@aon.com

         Sears:        Laurence Jenchel, Laurence.Jenchel@searshc.com
                       David Halffield, David.Halffield@searshc.com

         Chubb :       Christine Kloss
                       John Edmonds
                       Neal Bhatnagar
                       Steve Naylor
                       Roland Banini