**Hearing Date and Time: May 21, 2019 at 10:00 a.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| Debtors.[1] | : | |
| | : | **(Jointly Administered)** |
| | : | |
| | : | |

------------------------------------------------------------x

## DEBTORS' OMNIBUS OBJECTION TO VENDORS' MOTIONS FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc.

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby file this omnibus objection to the following motions (the **"Motions"**):

(i)  *Motion of Winners Industry Co., Ltd. for Allowance and Payment of Administrative Expense Claims* [ECF No. 1386] (the "**Winners Motion**");

(ii) *Motion of Milton Manufacturing, LLC to Allow and Compel Payment of Administrative Expense Claim Under 11 U.S.C. § 503(b) for Craftsman Branded Goods Delivered to the Debtor Postpetition* [ECF No. 1477] (the "**Milton Motion**")[2];

(iii) *Motion of Mien Co. Ltd. to Allow and Compel Payment of Administrative Expense Claim Under 11 U.S.C. § 503(b) for Jaclyn Smith Branded and Private Label Goods Delivered to the Debtor Post-Petition* [ECF No. 3323];

(iv) *Motion by Pearl Global Industries Ltd. to Allow and Compel Payment of Administrative Expense Claim Under 11 U.S.C. § 503(b)(1)* [ECF No. 3604] (the "**Pearl Motion**");

(v) *Motion of Apex Tool Group, LLC to Allow and Compel Immediate Payment of Administrative Expense Claim Pursuant to 11 U.S.C. 503(b)(1)(A) and 11 U.S.C. § 503(b)(9)* [ECF No. 1491];

(vi) *Supplement to Motion of Apex Tool Group, LLC to Allow and Compel Immediate Payment of Administrative Expense Claim Pursuant to 11 U.S.C. 503(b)(1)(A) and 11 U.S.C. § 503(b)(9)* [ECF No. 3667]; and

(vii) *Motion by Gokaldas Exports Ltd. to Allow and Compel Payment of Administrative Expense Claims under 11 U.S.C. § 503(b)* [ECF No. 3670] (the "**Gokaldas Motion**").

### Preliminary Statement

1. Six movants impermissibly seek to leap ahead of thousands of other creditors in both priority of payment and priority of allowance of their prepetition claims. Each Motion relates to goods manufactured and delivered to the Debtors' consolidator or common carrier in Asia prior to the petition date. The Debtors placed orders with each of the vendor-

---

[2] The Debtors previously filed objections to the Winners Motion [ECF No. 2839] and the Milton Motion [ECF No. 2481] and incorporate those objections herein by reference. The Debtors include these motions in this omnibus response given the passage of time and for convenience of the Court in addressing all of the Motions together.

movants prepetition, the Debtors took title to the goods prepetition, and the Debtors' obligation to pay the vendor-movants arose prepetition.  The claims alleged are not entitled to priority or current payment pursuant to section 503(b)(1) of the Bankruptcy Code.  Further, prior to consummation of a chapter 11 plan, creditors are not entitled to payment for, and the Debtors will not be paying, claims entitled to priority pursuant to section 503(b)(9).  Creditors cannot replace the Debtors' (and all parties in interest's) unlimited time to reconcile and efficiently object to claims with arbitrary objection deadlines simply by filing motions to allow claims.  The Court should reject this practice to stem a breach of the floodgates by the remainder of the Debtors' thousands of vendors.  The Motions should be denied.

## The Motions Should be Denied

**A.    Movants Failed to Meet Their Burden**

2. Movants bear the burden to establish their right to an administrative claim. *See, e.g.*, *In re Adelphia Bus. Solutions, Inc.*, 296 B.R. 656, 662 (Bankr. S.D.N.Y. 2003).  As set forth below, movants have failed to do so here.

**(i)    Time of Arrival of Shipment Is Not the Standard for 503(b)(1)**

3. The primary argument in each Motion is one that has been soundly rejected by courts both in and out of this circuit—namely, that the key to determining a vendor's entitlement to a 503(b)(1) claim is the date on which goods reach their final destination.

4. Movants do not cite a single case that stands for their primary theory of entitlement.  Indeed, no court has held that postpetition physical delivery alone is the proper benchmark for a 503(b)(1) administrative claim.  This Court should reject the argument as well.  The Debtors estimate that adopting the movants' unprecedented interpretation of section 503(b)(1) would add tens of millions of dollars in administrative claims against the Debtors.

WEIL:\97036304\2\73217.0004

5.      The Debtors placed orders with each of the movants prepetition, the Debtors took title to the goods prepetition in Asia, and the Debtors' obligation to pay the movants arose prepetition. The Debtors' payment was due a certain number of days after the goods departed the port in Asia. But once the vendors dropped off their goods at port, their contractual obligations were complete and no further performance was due from the vendors. If a carrier damaged the goods—or even if the goods were lost at sea—the Debtors' obligation to the vendors would nonetheless survive, because title and risk of loss had already transferred. The current state of the law is clear—in these circumstances, there can be no 503(b)(1) administrative claim.[3]

6.      Like here, in *In re K Chemical Corporation*, a vendor delivered goods to a carrier hired by the debtor prepetition who later delivered the goods to the debtors' warehouse postpetition. *In re K Chemical Corp.*, 188 B.R. 89, 95 (Bankr. D. Conn. 1995) ("It is stipulated that the sale of the Chemicals was procured by the Debtor, and the Chemicals were in fact delivered to an agent of the Debtor, prior to the actual time of filing of the voluntary petition in this case. Therefore, there is no issue as to the material fact of whether the subject sale was a transaction with the Debtor–in–Possession. It was not."). The *K Chemical* court rejected the vendor's request for an administrative expense claim because the delivery to the common carrier was not a transaction with a debtor in possession. *Id.* at 95 n.5. The *K Chemical* court highlighted that the sale transaction was completed and the claim arose when the vendor delivered goods to the agreed place of delivery. *Id.* (noting that title to the goods transferred upon delivery to the carrier).

---

[3] Indeed, reliance on a delivery date in these circumstances would create arbitrary results. Vendors could receive a 503(b)(1) administrative expense claim where title transferred and goods were shipped months or potentially years before the debtor-in-possession came into being on a petition date.

4

7. Similarly, in *In re Mayers Pollock Steel Corporation*, the court determined that the key delivery with respect to a 503(b)(1) claim is when the vendor delivers the goods to the common carrier. *In re Mayer Pollock Steel Corp.*, 157 B.R. 952, 963 (Bankr. E.D. Penn. 1993) ("Although [Vendor] argues that delivery was not complete until the scrap reached [the Debtor], we believe that this argument is factually inaccurate. [Vendor] completed *its* performance with respect to delivery as soon as it loaded [the common carrier's] cars . . . . Therefore, the sales of the scrap in issue in these five shipments occurred pre-petition.") (modifications supplied). In rejecting the vendor's claim, the court clarified that a vendor cannot have a section 503(b)(1) claim so long as performance was completed by the vendor when it delivered to the common carrier. *Id.* Indeed, the *Mayer Pollock* court specifically noted in denying the movant a 503(b)(1) claim that its performance was completed as soon as it loaded the goods onto the common carrier. *Id.*

8. Other cases on remarkably similar facts have been decided in favor of the Debtors' position. *See, e.g.*, *In re Nevins Ammunition Inc.*, 79 B.R. 11, 15 (Bankr. D. Idaho 1987) (finding no administrative claim when vendor delivered goods to a common carrier prepetition under a prepetition shipment contract); *In re A. Marcus Co.*, 64 B.R. 207 (Bankr. N.D. Ill. 1986) (finding no inducement or transaction with a postpetition debtor when foreign vendor delivered goods to prepetition debtor in Japan that were later received in the United States after the petition date). *Cf. In re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 481 (Bankr. S.D.N.Y. 2006) ("[T]he law in this Circuit that administrative priority is not based simply on an obligation's due date, but, rather, depends on the date of the consideration underlying the claim.").

9. None of the Motions distinguishes these cases or can dispute that the entire weight of case law supports the Debtors' view.

### (ii)  The *In re World Imports* Decision Is Not Applicable to 503(b)(1) Claims

10. Without precedent, certain movants argue that the decision in *In re World Imports, Ltd.*, 862 F.3d 338 (3d Cir. 2017), supports their entitlement to 503(b)(1) administrative expense claims. It does not. Section 503(b)(1) is not discussed or cited in the *World Imports* opinion. The court in *World Imports* interpreted a different provision of the Bankruptcy Code (section 503(b)(9)) and a different set of facts.[4] The *World Imports* decision is non-binding and non-persuasive in the 503(b)(1) context or in context of the current facts.

11. The *World Imports* decision interpreted the word "receipt" within section 503(b)(9) of the Bankruptcy Code. In that case, the question presented was: when were goods "received" by the Debtors for purposes of section 503(b)(9). The word "receipt" is not in section 503(b)(1) of the Bankruptcy Code. Movants' policy arguments do not override the plain meaning of, or permit the Court to read the word "receipt" into, section 503(b)(1). In fact, Movants' reference to the Bankruptcy Abuse Prevention and Consumer Prevention Act ("**BAPCPA**") support *the Debtors'* argument. Pursuant to BAPCPA, section 503(b)(1) was amended and section 503(b)(9) was added to the Bankruptcy Code. If Congress' intent was to (i) legislatively overrule all of the cases cited above by the Debtors and (ii) make physical receipt at a final destination the determining factor for 503(b)(1) administrative claims, Congress could have done so clearly when it amended section 503(b)(1) to remove language related to wages and salaries. However, as Congress chose to include the word "receive" in section 503(b)(9) and declined to add similar language in section 503(b)(1), the Court cannot conclude that Congress intended to disturb the existing case law regarding 503(b)(1) administrative claims on which the Debtors rely.

---

[4] Importantly, *World Imports* relied heavily on the critical fact that the common carrier at issue in *World Imports* was not an agent of the debtors. Whether the common carriers, consolidators or freight forwarders are agents of the Debtors may vary from vendor to vendor and ultimately depends on the facts and circumstance of each shipment.

WEIL:\97036304\2\73217.0004

### (iii) The Vendors Could Not Have Been Induced and Are Not Entitled to 503(b)(1) Priority as a Matter of Law

12. Section 503(b)(1) of the Bankruptcy Code provides that a party shall be entitled to an administrative expense claim only for the "actual, necessary costs and expenses of preserving the estate . . ." 11 U.S.C. § 503(b)(1).

13. The Court has established that, to qualify for section 503(b)(1) priority status, "two elements must be satisfied. First, the expense must arise out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession. Second, the expense's consideration must be both supplied to and beneficial to the debtor in possession in the operation of the business." *See Adelphia Bus. Solutions, Inc.*, 296 B.R. at 661-62 (internal citations and quotation marks omitted).[5] The purpose underlying this element "is to encourage vendors to deal with the post-petition estate." *Id.*

14. As set forth clearly above, the movants did not transact with the debtors in possession: orders were placed prepetition, the vendors completed their contractual obligations prepetition, title passed prepetition, and the vendors' claims arose prepetition. The benefit supplied by the vendors was supplied prepetition, when the goods were manufactured and delivered, and the vendors passed title to the Debtors.

15. Thus, two of the movants—Pearl Global Industries Ltd. ("**Pearl**") and Apex Tool Group, LLC ("**Apex**")—made an alternative argument. Pearl and Apex have asserted that, even if the Court declines to adopt their "receipt"-based theory of section 503(b)(1) claims, they

---

[5] Longstanding case law universally provides that an obligation or expense only gives rise to a section 503(b)(1) claim when a party is induced to perform a transaction by the debtor-in-possession, and not the prepetition debtor. *See, e.g.*, *Trustees of Amalgamated Ins. Fund*, 78 F.2d 98, 101 (2d Cir. 1986) ("[A]n expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession."); *In re Old Carco LLC*, 424 B.R. 650, 656 (Bankr. S.D.N.Y. 2010) ("The services performed by the claimant must have been 'induced' by the debtor-in-possession, not the pre-petition debtor").

7

are still entitled to a 503(b)(1) claim because they were induced postpetition by the Debtors.[6] Pearl alleges it was induced by the Debtors' "first-day" shippers' motion, and Apex alleges it was induced by both that motion and the *final* order granting same. Pearl and Apex argue that these documents elevated their claims to 503(b)(1) priority status and therefore induced them to not exercise a purported right to stop shipments of goods in transit. *See* ECF Nos. 14 (motion), 115 (interim order), and 843 (final order).

16. Setting aside factual arguments regarding whether Pearl and Apex had a right to stop shipments, whether they had the practical ability to do so, the timing of various deliveries compared to knowledge, and the reasonableness of any purported reliance, Pearl's and Apex's inducement argument fails as a matter of law. The court documents on which they purport to rely for their inducement contain language that preclude reliance. Fatally, they included the following statement: "Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party." Indeed, the Court acknowledged this language would not enhance any creditor's claim before entering the final shippers' order over Apex's objection.[7] *See Hr'g Tr.* Nov. 15, 2018 at 123-24

---

[6] No other movant has asserted postpetition inducement, and all others should be estopped from doing so.

[7] *See Response and Limited Objection of Apex Tool Group, LLC to the Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders Of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to The Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business* [ECF No. 558]. No other import vendor raised any issue with respect to inducement or the stopping of goods in transit at the time the Court considered the shippers motion.

("Court: As I read it, this order doesn't change anyone's rights under the statute. . . . again, the order doesn't change anyone's rights under the statute.").[8]

17. Even assuming, *arguendo*, the Court were to find a potential for postpetition inducement, inducement alone would be insufficient to satisfy the requirement that a claimant provide an actual and necessary benefit to the postpetition debtor. Administrative priority "depends on the date of the consideration of the underlying claim." *A.C.E. Elevator Co.*, 347 B.R. at 473. Here, the alleged consideration for the inducement is forbearance of a purported right and ability to stop shipments. Mere relinquishment of a questionable legal right is likely insufficient and too speculative to support an administrative expense claim. *See Enron*, 279 B.R. at 86 ("[A] speculative benefit or the mere potential for benefit is not enough to warrant an administrative claim priority."); *In re CIS Corp.*, 142 B.R. 640 (Bankr. S.D.N.Y. 1992) ("[A] a mere potential benefit does not qualified as a benefit for the purpose of determining administrative expense status."). Indeed, other courts have already determined that forbearance from exercising a stop shipment right is insufficient to form a "new value" preference defense. *See In re Eleva, Inc.*, 235 B.R. 486, 489-90 (10th Cir. B.A.P. 1999) (holding "forbearance from stopping shipment does not constitute new value" for purposes of a defense to a preference action").

### (iv) The Court Cannot Allow a 503(b)(1) Claim Based on Inducement and Actual and Necessary Benefit Without Discovery and Evidentiary Hearings

18. Even in the event the Court does not deny Pearl's and Apex's request for allowance of 503(b)(1) claims as a matter of law, the Court cannot allow a 503(b)(1) claim based on inducement and actual and necessary benefit without permitting the Debtors to conduct discovery, without an evidentiary hearing, and without supplemental briefing on a number of

---

[8] The documents also did not use the word "received"; instead they use the word "delivery," which aligns with the longstanding case law of 503(b)(1) claims discussed above.

9

complex legal issues. *See Adelphia Bus. Solutions, Inc.*, 296 B.R. at 666 (adjourning request for administrative claim to allow for an evidentiary hearing on the inducement factor). Movants have not satisfied their heavy burdens through the Motions alone.

**B.    Requests for Allowance of 503(b)(9) Claims Should Be Denied and Discouraged**

19.    The Debtors and their professionals continue to work to efficiently administer these chapter 11 cases. A number of workstreams remain active and require the attention of the Debtors and their professionals. Among other things, the Debtors have sought, and the Court has approved, procedures governing the establishment of a bar date for prepetition claims, including those entitled to priority pursuant to section 503(b)(9) of the Bankruptcy Code. *See* ECF No. 2676.[9] The Debtors also sought and the Court also approved procedures governing the objection to and settlement of such claims. *See* ECF No. 3014.

20.    The Debtors are processing and have not yet competed the review of the **over 2,000 proofs of claim that assert section 503(b)(9) priority**. Each requires a fact-intensive analysis and may require access to both historical information and the use of employees that are performing services for the buyer of the Debtors' assets. Each claim may relate to multiple invoices; each invoice may tie to multiple shipments. *See, e.g.*, Winners Motion (attaching over 350 pages of documentation); Pearl Motion (attaching over 950 pages of documentation); Gokaldas Motion (attaching over 500 pages of documentation). In addition, claims were filed using various methods of calculation, seemingly depending on what was most favorable to the claimant.

21.    But, as with all other prepetition claims, claims entitled to priority pursuant to section 503(b)(9) will be deemed allowed unless objected to. *See* 11 U.S.C. § 502(a). To date,

---

[9] Parties that did not file proofs of claim asserting 503(b)(9) priority are barred from doing so.

10

the Debtors have not objected to any proofs of claim. The Debtors submit no hearing on the allowance of a prepetition claim is necessary until an objection is filed to any such claims.

22.     The Debtors understand that each of the creditors that filed a total of almost 20,000 proofs of claim in these cases would like confirmation that its claim has been allowed or details regarding specific objections that could be interposed. It is the Debtors' job to determine the most efficient way to resolve claims for the benefit of all parties in interest. The alternative process, a run on the Court, adopted by the six movants, simply is not practicable and will waste limited estate assets.

23.     As set forth above, prior to consummation of a chapter 11 plan, creditors are not entitled to payment for, and the Debtors will not be paying, claims entitled to priority pursuant to section 503(b)(9).

## C.     Liability for Postpetition Claims Asserted in the Gokaldas Motion Were Assumed

24.     The Gokaldas Motion separately seeks payment for goods allegedly shipped to the Debtors *after* the petition date. The Debtors have not been able to verify such claim. If valid, the Debtors submit that the liability for such claim has been assumed Transform HoldCo LLC (the "**Buyer**") pursuant to that certain Asset Purchase Agreement, dated as of January 17, 2019 (the "**APA**"). As the Court is aware, the Buyer has assumed $166 million in accounts payable that were outstanding when the transaction closed. In a preliminary discussion at the sale hearing, the Court indicated that there was no ambiguity in the APA and the Buyer was responsible for assuming $166 million in accounts payable. *See Hr'g Tr.* Feb. 7, 2019 at 284-85. Upon information and the belief and the allegations in the Gokaldas Motion, the Buyer has not satisfied its contractual requirements to assume and pay this full amount. The Debtors are in discussions

11

with the Buyer regarding the Buyer's obligations under the APA, and may seek appropriate relief at the June omnibus hearing if a resolution is not reached.

### Reservation of Rights

25. The Debtors reserve all their rights, including, but not limited to, the right to supplement this objection as necessary and to take discovery of the movants and other parties. None of the movants has requested an evidentiary hearing pursuant to the *Amended Order Implementing Certain Notice and Case Management Procedures* [ECF No. 405]. Accordingly, the first hearing on the Motions will not be an evidentiary one. The Debtors' reserve all their rights with respect to any request.

### Conclusion

For all of the foregoing reasons, the Debtors request that the Court deny the Motions.

Dated: May 15, 2019
      New York, New York

/s/ Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*