**HEARING DATE: May 21, 2019 at 10:00 a.m.**

Mark Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue, Floor 11
New York, New York 10022
212.593.1100
mfrankel@bfklaw.com

and

Matthew A. Olins (admitted *pro hac vice*)
Ellen M. Chapelle (admitted *pro hac vice*)
Vanessa R. Tiradentes (admitted *pro hac vice*)
GOULD & RATNER LLP
222 North LaSalle Street, Suite 800
Chicago, IL 60601
312.236.3003
molins@gouldratner.com
echapelle@gouldratner.com
vtiradentes@gouldratner.com

*Attorneys for 233 S. Wacker, LLC*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| SEARS HOLDING CORPORATION, *et al.*, | ) Case No. 18-23538 (RDD) |
| Debtors. | ) (Jointly Administered) |

### 233 S. WACKER, LLC'S OBJECTION TO MOTION OF
### BRE 312 OWNER LLC FOR RELIEF FROM AUTOMATIC STAY

233 S. Wacker, LLC ("*233*"), by and through its attorneys, Backenroth Frankel & Krinsky, LLP and Gould & Ratner LLP, objects to the Motion of BRE 312 Owner LLC ("*BRE*") for Relief from Automatic Stay (the "*Motion*").[1] In support of this Objection, 233 respectfully states as follows:

---

[1] By agreement of the parties, 233's deadline to object to the Motion was continued to May 16, 2019.

**INTRODUCTION**

1.  BRE asks this Court to lift the automatic stay so that BRE may sell 233's sculpture titled "Universe" (the "*Sculpture*") that was formally in the lobby of the Willis Tower (the "*Building*") in Chicago, Illinois. BRE mistakenly claims certain liens in the Sculpture that it alleges secure amounts BRE alleges it is owed. There is no dispute concerning the ownership of the Sculpture – the above captioned Debtors and Debtors in possession (the "*Debtors*") acknowledge that 233 owns the Sculpture. Debtors Sears, Roebuck and Co. ("*Sears, Roebuck*") and Sears Holdings Corporation (collectively, "*Sears*") have claimed a right to buy the Sculpture from 233, and Sears and 233 are presently litigating that issue in Illinois state court (the "*State Court Litigation*"). BRE removed the Sculpture from the Building and placed it in storage after BRE purchased the Building. BRE has been unwilling to return the Sculpture to 233 unless 233 obtains the consent of Sears and certain other conditions are fulfilled.

2.  As discussed in detail below, this Court should deny the Motion because the Sculpture is not property of the Debtors' estates, is not under this Court's jurisdiction, and is not subject to the automatic stay. Even if the Sculpture were property of the Debtors' estates, this Court should deny the Motion because BRE does not seek relief from the stay so that it may attempt to exercise its state law rights. Rather, BRE is attempting to circumvent state law, and circumvent 233's right to due process and right to defend its property, by asking this Court for blanket authorization to sell the Sculpture – skipping all of the state law requirements even if it had valid liens. Such relief is outside of this Court's authority (even if it had jurisdiction) and not in compliance with Illinois state law governing the liens at issue. The Motion should also be denied because even if this Court had jurisdiction, and even if this Court could grant relief beyond lifting the stay so that BRE could attempt to exercise state law rights, the Federal Rules of Bankruptcy Procedure require such relief to be sought via an adversary proceeding. 233 must

not be deprived of its property via a simple, unsubstantiated motion with no real due process and only a brief period to file an objection. Finally, BRE fails to establish that it has liens in Sculpture. While the issue of BRE's liens must be decided in a separate proceeding that affords 233 full due process, 233 has set forth certain initial defects in BRE's lien claims below.

## FACTUAL BACKGROUND

3.  The Sculpture was installed in the Building, shortly after completion of the Building's construction in 1974. After 233 purchased the Building and Sculpture from Sears's successor in interest, Sears attempted, in 2010, to exercise its option under a certain Option Agreement (the "*Option Agreement*") to purchase the Sculpture. Sears's attempt to exercise the option culminated in litigation between Sears and 233 that ultimately resulted in a Settlement Agreement dated July 1, 2013 (the "*Settlement Agreement*") between Sears and 233.

4.  Pursuant to the Settlement Agreement, Sears agreed to attempt to effectuate a sale of the Sculpture to a third party during a two-year sale period ("*Third-Party Sale Period*") with the proceeds of such sale to be split between Sears and 233 pursuant to the terms of the Settlement Agreement. In the event that Sears was unable to sell the Sculpture, Sears could acquire title to the Sculpture from 233 by paying a sum specified by the Settlement Agreement. Although the Settlement Agreement gave Sears sole control and complete discretion with respect to any and all efforts to effectuate a sale to a third party, such discretion is, of course, limited by the implied duty of good faith and fair dealing under Illinois law.

5.  During the Third-Party Sale Period, 233 sold the Building to BRE subject to the obligation to maintain the Sculpture until the end of the Third-Party Sale Period, which had been extended by agreement of Sears and 233 for an additional year until June 30, 2016.

6.  Close to the end of the extension period, Sears received two offers to purchase the Sculpture, one of which would have resulted in proceeds to Sears and 233 greater than $6

million each, but Sears summarily and unreasonably rejected the offer with no counter.

7. On June 30, 2016, Sears served notice to 233 that Sears would purchase the Sculpture for $3,860,625.00, which would have deprived 233 of the benefit of its share of the prior offer that Sears rejected. Sears's rejection of the offer it received and attempt to purchase the Sculpture for itself constituted a breach of the Settlement Agreement, relieving 233 of any obligation to sell the Sculpture to Sears.

8. Ownership of the Sculpture is not in dispute – 233 and Sears both acknowledge that the Sculpture is property of 233 and not of Sears or any of the Debtors' estates.

9. On August 4, 2016, Sears initiated State Court Litigation in the Circuit Court of Cook County, Illinois, Chancery Division (the "*State Court*"), Case No. 2016-CH-10308 seeking, among other things, to compel 233 to sell it the sculpture. 233 then filed a counterclaim (the "*Counterclaim*") for Sears's breach of its duty of good faith and fair dealing in connection with Sears's marketing efforts and rejection of the offer it received.

10. On October 15, 2018, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in this Court. The filing of these cases automatically stayed 233's Counterclaim pursuant to section 362(a)(1) of the Bankruptcy Code; however, Sears informed 233 and the State Court that it wished to proceed with the State Court Litigation.

11. On February 1, 2019, 233 filed its Motion of 233 S. Wacker, LLC for Relief from Automatic Stay (the "*233 Motion*") in this case to pursue its Counterclaim given Sears's plan to continue to prosecute the State Court Litigation.[2] 233 and Sears resolved the 233 Motion through the Stipulation, Agreement, and Order Granting Limited Relief from the Automatic Stay

---

[2] Contrary to footnote 3 of the Motion, 233 did not seek relief from the stay because of any alleged right Sears had to 233's Sculpture. 233 filed its Motion to pursue its Counterclaim, which was stayed by operation of section 362(a)(1) of the Bankruptcy Code.

(233 S. Wacker, LLC), which was entered by this Court on April 2, 2019.

12.  BRE correctly asserts that, in 2016, it notified Sears and 233 that it wished to have the Sculpture removed from the Building in order to remodel the Building's lobby. However, BRE fails to acknowledge that it conditioned release of the Sculpture to 233 on 233 obtaining an agreement from Sears, a condition that was outside of the control of 233. When Sears, 233, and BRE failed to reach an agreement concerning the removal of the Sculpture, BRE unilaterally removed it and placed it into storage.

## OBJECTION

### I. The Sculpture Is Not Property Of The Debtors' Estates, Is Not Under This Court's Jurisdiction, And Is Not Subject To The Automatic Stay.

13.  Section 541(a) of the Bankruptcy Code provides that, among other things, a debtor's estate is comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). A bankruptcy court has jurisdiction over "all the property, wherever located, of the debtor as of the commencement of [the] case, and of property of the estate…." 28 U.S.C. § 1334. Additionally, the automatic stay operates as a stay against "any act to obtain possession of property *of the estate* or property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(3) (emphasis added), and "any act to create, perfect, or enforce any lien against property *of the estate*…." 11 U.S.C. § 362(4) (emphasis added).

14.  233, not Sears, owned the Sculpture as of the commencement of the Debtors' bankruptcy cases, and 233 continues to own the Sculpture. Neither the Debtors nor their estates acquired title to the sculpture pre- or post-petition. Neither of these facts are disputed by Sears; therefore, this court does not have jurisdiction over 233's Sculpture, and 233's Sculpture is not subject to the automatic stay.

15. It is true that Sears's alleged *cause of action* that it asserts in the State Court Proceeding is property of Sears's estates. It is also true that if Sears's estates had acquired, or in the future acquires, the Sculpture, it will be property of Sears's estates. However, in order for Sears's estates to ever acquire the Sculpture, Sears must prevail in the State Court Proceeding (which 233 contends should never happen), pay 233 $3,860,625.00 plus interest and other costs, otherwise be able to perform all of the other obligations under the Settlement Agreement, and be able to take ownership of the Sculpture. None of these events ever occurred, and their possibility is remote.

16. This case should be distinguished from cases in which a debtor had a "contingent" right to an item as of its petition date and then actually acquired that item post-petition. In this case, Sears has not acquired nor received the Sculpture, and Sears concedes that the Sculpture is owned by 233. Only the cause of action is property of Sears's estates, and only if Sears's estates acquires the Sculpture, will the Sculpture become property of Sears's estates. If this Court is to hold that all items a debtor has rights to buy (including highly disputed rights to buy) become property of the estate, it is not difficult to imagine the magnitude of property owned by non-debtors that will suddenly become property of bankruptcy estates and subject to automatic stays. The Court should reject this absurdity and deny the Motion.

**II.    The Motion Improperly Seeks To Circumvent State Law Foreclosure Procedure.**

17. Even if the Sculpture were property of Sears's bankruptcy estates, this Court should not grant the Motion because it seeks to circumvent the requirements under Illinois law for foreclosing liens. The Motion does not request that this Court grant BRE relief from the stay to pursue its alleged state law lien rights. Rather, BRE seeks "relief from the automatic stay to dispose of the [Sculpture] in a commercially reasonable manner and to take any other action necessary…." Motion p.9.

18. Before a holder of a lien under Article 7 of the Uniform Commercial Code (the "*UCC*"), as adopted by Illinois in 810 ILCS 5/7-101 *et seq.,* or the Illinois Labor and Storage Lien Act, 770 ILCS 45/1 *et seq.* (the "*Storage Lien Act*"), may foreclose its security interest, the holder must comply with the foreclosure procedures set forth in the Illinois statutes. A holder may not simply "dispose" of the collateral or file a motion with a bankruptcy court seeking to skip those requirements. While section 362(d) of the Bankruptcy Code does grant a bankruptcy court power to terminate, annul, modify, or condition the automatic stay, *see* 11 U.S.C. §362(d), nowhere does the Bankruptcy Code grant a bankruptcy court authorization to circumvent state law foreclosure procedure as requested by the Motion. If BRE seeks to exercise highly disputed alleged lien rights, it must do so in a manner consistent with Illinois law and that affords 233 due process and the right to demonstrate that BRE is not entitled to force a sale of 233's property.

### III. Even If This Court Had Jurisdiction Over The Sculpture And Were Able To Grant Any Relief Beyond Lifting The Stay, BRE's Request Would Have To Be Determined By An Adversary Proceeding.

19. Rule 7001 of the Federal Rules of Bankruptcy Procedure provides that proceedings to recover money or property, proceedings to determine the validity, priority, or extent of a lien or other interest in property, and proceedings to obtain equitable relief are adversary proceedings. BANKR. R. PRO. 7001(1), (2), (7). Even if this Court did have jurisdiction over the Sculpture, and were able to grant any relief to BRE beyond lifting the stay, BRE is required to seek such relief through an adversary proceeding and not a simple motion. *See* 10 COLLIER ON BANKRUPTCY ¶ 7001.02 at 7001-5 n.4 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("an adversary proceeding is not required if a secured creditor seeks to lift the automatic stay to exercise its undisputed rights in the collateral. If, however, a secured creditor's rights are disputed (such as to the extent, validity or priority of the lien), an adversary proceeding under Rule 7001(1) (to recover property) and Rule 7001(2) (to determine the validity, extent or

priority of the lien) is required.").

20.     233 disputes BRE's lien claim, and is entitled to the full due process of an adversary proceeding to defend its property rights.  Allowing BRE to strip 233's title to the Sculpture by only filing the Motion – a simple, unproven, collection of allegations – and only giving 233 an extremely limited time to object without any other procedural safeguards such as discovery and a full trial, would be a gross violation of 233's property rights and right to due process.  Therefore, even if this Court did have jurisdiction over the Sculpture, and were able to grant any relief to BRE beyond lifting the stay, 233 is entitled an adversary proceeding as mandated by Rule 7001 of the Federal Rules of Bankruptcy Procedure.

**IV.     BRE Has Not Established Liens In The Sculpture.**

21.     In the Motion, BRE asserts that it has "the right to sell the Calder" because it holds certain statutory liens, including an alleged warehouse lien under the UCC and the Illinois Storage Lien Act, 770 ILCS 45/0 *et seq.*  Motion ¶¶ 18-21.  Importantly, BRE does not articulate facts establishing that it possesses such liens, but rather makes only conclusory assertions that it is has the liens and is permitted to sell the Sculpture.  *Id.*  However, there are significant issues of fact and law that make BRE's assertion of lien rights suspect at best, and such assertions are certainly insufficient to justify BRE selling the Sculpture without following the process required by state law.

**A.     BRE Has Not Shown That It Had Legal Possessory Rights Over the Sculpture As Required By Article 7 Of The UCC And The Storage Lien Act.**

22.     BRE has not established that it had legal possession of the Sculpture sufficient to create lien rights.  BRE's possession of the Sculpture is analogous, in relevant respects, to the defendant's possession of a tenant's personal property in *Rubin v. City National Bank and Trust Company*, 81 Ill. App. 3d 1020 (2d Dist. 1980).  In that case, the plaintiff was evicted from the premises, and the landlord defendant removed the plaintiff's property and placed it into storage.

*Id.* at 1021. The defendant asserted that it sold plaintiff's property to pay for storage charges and did so pursuant to a warehouseman's lien under Section 7-210 of the UCC, the same lien BRE alleges it has. *Id.* at 1022-23. The Appellate Court noted that in order "to have a valid lien against all persons, including plaintiff, the depositor must have been the legal possessor of the goods at the time of the deposit." *Id.* at 1023. The Appellate Court ultimately found that though "[d]efendant . . . did have a right to have plaintiff and his personal property removed from the premises," but it "was not the legal possessor of the property which was deposited" because it placed "plaintiff's property in storage, arguably over plaintiff's objection." *Id.* at 1024. Thus, the defendant in that case "depended upon a non-existent lien for the sale of the goods." *Id.*

23. In its Motion, BRE makes clear that it "does not assert any ownership interest in the Sculpture." Motion ¶ 3; *see also id.* at ¶ 9 ("The purchase agreement for the Building established that [BRE] did not purchase the Calder."). BRE has not included any facts supporting a conclusion that it was the "legal possessor" of the property, which is a prerequisite for the liens it asserts.

24. Despite its lack of ownership, and despite Sears and 233's failure to reach an agreement with BRE regarding removal of the Sculpture from the Building, "[BRE] had the Calder deinstalled by an art professional and moved to storage at an off-site location that specialized in fine art storage." *Id.* at ¶¶ 10-11. BRE exercised dominion over the Sculpture, and conditioned its release to 233 upon 233 obtaining consent of a third party – Sears.[3] Much like the defendant in *Rubin*, it is likely that BRE was not the legal possessor of the Sculpture at the time it had the Sculpture moved to storage, thus it bases its right to sell the Sculpture on a "non-existent lien" under the UCC.

25. Similarly, BRE has not established that it had possessory rights over the Sculpture

---

[3] BRE also negotiated with Sears for release of the Sculpture to Sears over 233's objection.

sufficient to create a lien under the Storage Lien Act. In *Glaser v. Kazak*, plaintiff, the lessee of farmland, moved to foreclose on an airplane that had blown onto her property after a storm. 173 Ill. App. 3d 108, 109 (1st Dist. 1988). The Appellate Court reversed the judgment of the lower court in favor of plaintiff because "[w]hile plaintiff may have had the right to have the aircraft removed from her farmland, she did not acquire possessory rights in the aircraft simply because it wrongfully remained on her property." *Id.* at 115. In reaching this conclusion, the Court noted that the Illinois Chattel Lien Act (the predecessor to the Storage Lien Act) requires that the storage furnished for the chattel must be "*at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof.*" *Id.* at 113 (emphasis in original). In this instance, plaintiff could not "be considered defendant's agent because she did not act in a representational capacity, nor was she under the control of the defendant, nor was she the bailee of the aircraft since she did not accept control over the aircraft." *Id.* at 115. "A construction that the plaintiff was the lawful possessor of the aircraft would be a strained interpretation and application of the statutory lien provisions." *Id.* The Appellate Court further held that "[s]ince the plaintiff had no valid possessory lien on the aircraft, which she had removed from her farmland without the defendant's consent, her refusal to return the aircraft to the defendant until the storage charge was paid may be found to be an act of conversion." *Id.* at 115.

26. As noted above, BRE exercised dominion over the Sculpture and conditioned its release upon 233, the owner, obtaining the consent of a third party.[4] When 233 was unable to

---

[4] In fact, BRE arguably also does not have a lien under the Storage Lien Act because BRE undertook to move the Sculpture to storage for its ***own*** benefit (*i.e.*, avoidance of a claim by Sears or 233 for turning it over to the other party and securing its purported lien on the Sculpture), rather than at the request of 233. *See Weiland Tool & Mfg. Co. v. Whitney*, 44 Ill. 2d 105, 118, 251 N.E.2d 242, 249 (1969) ("We are of the opinion that the trial court was in error in determining that Weiland was entitled to compensation for storing the machinery and steel. Whitney had demanded its return and Weiland was holding it to protect its lien. Under such circumstances Weiland's storing of it was for its own purposes and not for Whitney's benefit."); *Johnson v. Throop St. Auto & Wagon Co.*, 232 Ill. App. 513, 515–16 (1st Dist. 1924) ("Under this statute we do not think that the lien claimed for storage of the truck for said three months can be allowed, it not being stored during that period at plaintiff's request."); *Country Mut. Ins. Co. v. Styck's Body Shop, Inc.*, 396 Ill. App. 3d 241, 246–47, 918 N.E.2d 1195, 1200–01 (4th Dist. 2009) ("Body

obtain that consent, BRE decided to move the Sculpture. BRE has not established that it did so with the consent of 233. Motion ¶¶ 10-11. While BRE may have had the right to have the Sculpture removed from the Building, such right did not automatically create possessory rights sufficient to create a statutory lien with respect to the Sculpture.

### B. BRE Has Not Shown It Possesses A Statutory Lien Under The UCC.

27. Even if BRE were to show that it had possessory rights to the Sculpture, it nonetheless has not established in its Motion that it possesses any liens under the UCC. Under the UCC, "[a] warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof in its possession for charges for storage or transportation, including demurrage and terminal charges, insurance, labor, or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law." 810 ILCS 5/7-209.

28. First, BRE must establish that it is in fact a warehouse. A "warehouse" is defined as "a person engaged in the business of storing goods for hire." 810 ILCS 5/7-102(13). In its Motion, BRE does not establish that it is "engaged in the business of storing goods for hire."

29. Second, under Section 810 ILCS 5/7-209, BRE's purported warehouse lien would be only for "goods covered by a warehouse receipt or storage agreement." Nowhere in its Motion does BRE establish that the Sculpture is covered by a warehouse receipt or storage agreement wherein BRE is the warehouse. *See generally* Motion ¶¶ 18-19.

30. Third, under the statute, the warehouse only has a lien "for charges for storage or

---

Shop appears to believe because it had the right to retain a vehicle pursuant to its lien, it also had the right to continue charging storage fees on that vehicle. This is incorrect. Regardless of whether Body Shop had the right to retain possession of a vehicle pursuant to a claimed lien after Country demanded the vehicle's return, established Illinois law does not allow Body Shop a legal monetary remedy for the days it continued to retain the vehicle, regardless of the legal theory or process it used in its attempt to collect those daily storage fees."); *Navistar Fin. Corp. v. Allen's Corner Garage & Towing Serv., Inc.*, 153 Ill. App. 3d 574, 579, 505 N.E.2d 1321, 1324 (2d Dist. 1987) ("Since defendant retained and stored the truck for no reason other than to be able to insist on its lien rights, the trial court was correct in denying it a lien for storage charges.").

transportation, including demurrage and terminal charges, insurance, labor, or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law." 810 ILCS 5/7-209. In addition to storage and removal costs, BRE in its Motion makes clear that it is seeking legal fees. Motion ¶ 12. Nothing in 810 ILCS 5/7-209 suggests that attorneys' fees are recoverable as part of a warehouse lien. To the contrary, other courts interpreting Section 7-209 of the UCC have held that attorneys' fees are not recoverable as "other charges . . . in relation to the goods." *See Nat'l Cold Storage Co. v. Tiya Caviar Co.*, 52 Misc. 2d 289, 290–91, 276 N.Y.S.2d 57, 59 (Sup. Ct. 1966) ("The referee also properly rejected plaintiffs' attempt to base their claim for attorneys' fees upon Section 7-209 of the UCC, which gives a warehouseman a lien for the usual charges arising out of a storage transaction. The fees here sought certainly do not appear to be such usual charges."); *Imp. Sys. Int'l, Inc. v. Houston Cent. Indus.*, 752 F. Supp. 745, 747-48 (S.D. Tex. 1990) ("The expenses incurred in the handling, preservation, and sale of bailed goods are distinct from the expenses incurred by attorneys to collect the debt. The expenses that may be the subject of a warehouseman's lien are storage, advertising, rental of facilities for the sale, and payment of auctioneers or salesmen. Nothing in the statute requires the retention of attorneys. . . . This court will not read attorney's fees into the warehouseman's lien statute….").

31.     Finally, in order to foreclose on the Sculpture under the UCC, BRE would have to meet certain notice requirements or risk the threat of claim of conversion by the litigants. *See* 810 ILCS 5/7-210; *see also* 810 ILCS 5/7-204 ("A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances.").

**C. BRE Has Not Shown It Possesses A Statutory Lien Under The Storage Lien Act.**

32.     BRE's analysis under the Storage Lien Act is similarly faulty. As an initial

matter, the lien interest created by this Act is not intended for use by parties such as BRE. The classic use of the lien created by the Act is to protect automobile repair shops in the event of nonpayment by automobile owners for repairs to their vehicles. *See, e.g., Nat'l Bank of Joliet v. Bergeron Cadillac, Inc.*, 347 N.E.2d 874 (Ill.App.4th 1976). Thus, it is inappropriate for BRE to attempt to utilize the Act for this purpose.

33. Second, BRE's reliance on the single case it cites in support of its purported statutory lien is misplaced. In *Minuti v. Johnson* (an unreported case), the defendant was an art consultant whose services consisted of helping art collectors authenticate works of art. 2003 WL 260705, at *1 (N.D. Ill. Feb. 5, 2003). The defendant was employed by the plaintiff for these services, and was in possession of several works from plaintiff's art collection. *Id.* The employment devolved into a dispute, and defendant claimed a statutory lien interest over plaintiff's art collection under the Act, arguing that it performed "labor" on the works. *Id.* The court disagreed and held that the defendant did not perform the kind of labor that qualified under the Act, and therefore had no valid lien claim under the Act. *Id.* Specifically, the court stated that the "labor, skills, and materials" contemplated by the Act are akin to improvements and restoration of a chattel, such as "the work of an auto mechanic on an engine, after which the engine has been affected somehow (hopefully for the better)." *Id.* BRE has not expended any labor that is akin to the work a mechanic performs when repairing or restoring an engine. Thus, BRE has no standing under the Storage Lien Act to institute a statutory lien related to the Sculpture.[5]

34. Third, as discussed above, a lien is created only when the person is acting on

---

[5] BRE's claim for a lien based on attorneys' fees is likewise not well founded. Illinois observes the "American Rule" which authorizes the award of attorneys' fees only if the statute authorizes such an award. *Estate of Downs v. Webster*, 307 Ill. App. 3d 65, 70 (3d Dist. 1999) ("A court may only award attorney fees if they are expressly authorized by statute or by agreement of the parties. . . . When the language does not specifically state that 'attorney fees' are recoverable, courts will not give the language an expanded meaning."). Neither the UCC sections governing the purported Warehouse Lien nor the Storage Lien Act authorizes the award of attorneys' fees. *See generally* 810 ILCS 5/7-209, *et seq.*; 770 ILCS 45/1, *et. seq.*

behalf of the owner in storing the goods at issue. *Glaser v. Kazak*, 173 Ill. App. 3d 108, 113-15 (1st Dist. 1988). In fact, in its Motion, BRE notes that the statute provides that "[e]very person, firm or corporation who expended labor, skill or materials upon any chattel, or has furnished storage for said chattel, at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof, shall have a lien . . ." Motion ¶ 20 (citing 770 ILCS 45/1). Despite citing the statute, BRE makes no effort to show that it was acting "at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor." *Id.* To the contrary, BRE has stated in its Motion that it acted on its own accord, after failing to reach agreement with the litigants with respect to removal of the Sculpture. Motion ¶¶ 10-11.

35.    Fourth, BRE also ignores the relevant provision which requires filing a foreclosure action "in the circuit court of any county in the State of Illinois" and provides for various notice requirements. 770 ILCS 45/6. BRE has not established in its Motion that it meets any of those requirements. Indeed, a reading of the statute further evidences that this matter is better resolved by the Circuit Cook of Cook County, Illinois, where the Sculpture is located, rather than expending the resources of this court in resolving these issues.

36.    The above is an initial/partial analysis of BRE's lien claims. 233 has had limited time to fully analyze all relevant issues relating to BRE's claims, and reserves its right to supplement its arguments above and make further arguments.

### RESERVATION OF RIGHTS FOR EVIDENTIARY HEARING AND TO FILE A SEPARATE OBJECTION TO BRE'S PROOF OF CLAIM

37.    If this Court (i) overrules 233's objection to this Court's jurisdiction over the Sculpture and (ii) overrules 233's objection to this Court considering the Motion outside of the context of an adversary proceeding even if it did have jurisdiction, 233 requests that this Court set an evidentiary hearing on the Motion.

38.     As set forth above, 233 objects to BRE's claim of a lien in its Sculpture. Therefore, 233 objects to BRE's Proof of Claim filed in this case being "deemed allowed" under section 502(a) of the Bankruptcy Code and constituting "prima facie evidence" under Federal Rule of Bankruptcy Procedure 3001(f) with respect to any assertion of lien or other interest in the Sculpture or other property of 233.  Also as set forth above, BRE's alleged lien rights are not properly resolved through a contested matter before this Court; however, 233 reserves its right to file a separate objection to BRE's Proof of Claim if necessary.

WHEREFORE, 233 respectfully requests that this Court deny the Motion and grant such other and further relief as this Court deems just.

Dated:  May 16, 2019

Respectfully submitted,
**233 S. WACKER, LLC**

By: /s/ Mark Frankel
    One of Its Attorneys
Mark Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue, Floor 11
New York, New York 10022
212.593.1100
mfrankel@bfklaw.com

and

By: /s/ Matthew A. Olins
    One of Its Attorneys
Matthew A. Olins (admmitted *pro hac vice*)
Ellen M. Chapelle (admitted *pro hac vice*)
Vanessa R. Tiradentes (admitted *pro hac vice*)
GOULD & RATNER LLP
222 North LaSalle Street, Suite 800
Chicago, IL 60601
312.236.3003
molins@gouldratner.com
echapelle@gouldratner.com
vtiradentes@gouldratner.com