WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                          :
                                                               :    **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,                      :
                                                               :    **Case No. 18-23538 (RDD)**
                                                               :
Debtors.[1]                                                    :    **(Jointly Administered)**
                                                               :
                                                               :
---------------------------------------------------------------x

# OBJECTION OF DEBTORS TO MOTION OF BRE 312 OWNER LLC
# FOR RELIEF FROM AUTOMATIC STAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Abrantes Const. Corp. v. U.S. (In re Abrantes Const. Corp.)*,
   132 B.R. 234 (N.D.N.Y. 1991) .................................................................................................9

*In re Artisanal 2015, LLC*,
   No. 17-12319, 2017 Bankr. LEXIS 3813 (Bankr. S.D.N.Y. Nov. 3, 2017) ............................8

*Chartschlaa v. Nationwide Mut. Ins. Co.*,
   538 F.3d 116 (2d Cir. 2008) .....................................................................................................6

*Chimera Capital, L.P. v. Nisselson (In re MarketXT Holdings, Corp.)*,
   428 B.R. 579 (S.D.N.Y. 2010) .................................................................................................7

*In re Chittur & Assocs., P.C.*,
   No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968 (S.D.N.Y. Dec. 18,
   2018) ........................................................................................................................................9

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l)*,
   28 B.R. 324 (Bankr. S.D.N.Y. 1983) .....................................................................................13

*In re Congregation Birchos Yosef*,
   535 B.R. 629 (Bankr. S.D.N.Y. 2015) .....................................................................................7

*In re Containership Co. (TCC) A/S*,
   466 B.R. 219 (Bankr. S.D.N.Y. 2012) ...................................................................................15

*In re Curtis*,
   40 B.R. 795 (Bankr. D. Utah 1984) .......................................................................................11

*In re Drexel Burnham Lambert Group Inc.*,
   1990 Bankr. LEXIS 2889 (Bankr. S.D.N.Y. Dec. 14, 1990) .................................................12

*Garcia v. Garcia (In re Garcia)*,
   494 B.R. 799 (Bankr. E.D.N.Y. 2013) .....................................................................................6

*Jimmo v. Burwell*,
   2016 WL 4401371 (D. Vt. Aug. 17, 2016) ..............................................................................6

*In re MarketXT Holdings Corp.*,
   No. 04-12078 (ALG), 2009 Bankr. LEXIS 1897 (Bankr. S.D.N.Y. July 20,
   2009) ......................................................................................................................................12

18-23538-shl    Doc 3917    Filed 05/16/19    Entered 05/16/19 23:00:37    Main Document
                                    Pg 3 of 20

*In re Mazzeo*,
    167 F.3d 139 (2d Cir. 1999) ..................................................................................................8

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
    474 U.S. 494 (1986) ..........................................................................................................7

*Musso v. Hirsch (In re Hirsch)*,
    2011 U.S. Dist. LEXIS 111561 (E.D.N.Y. Sept. 29, 2011) ..................................................13

*In re Project Orange Assocs., LLC*,
    432 B.R. 89 (Bankr. S.D.N.Y. 2010) ..................................................................................14

*In re RCM Global Long Term Capital Appreciation Fund, Ltd.*,
    200 B.R. 514 (Bankr. S.D.N.Y. 1996) ..................................................................................8

*Red Ball Interior Demolition Corp. v. Palmadessa*,
    173 F.3d 481 (2d Cir. 1999) ..................................................................................................6

*In re Residential Capital, LLC*,
    519 B.R. 890 (Bankr. S.D.N.Y. 2014) ..................................................................................6

*In re Residential Capital, LLC*,
    No. 12-12020 (MG), 2012 Bankr. LEXIS 3777 (Bankr. S.D.N.Y. Aug. 16,
    2012)....................................................................................................................................12

*In re Ross*,
    548 B.R. 632 (Bankr. E.D.N.Y. 2016), *aff'd sub nom. Mendelsohn v. Ross*,
    251 F. Supp. 3d 518 (E.D.N.Y. 2017)..................................................................................6

*Segal v. Rochelle*,
    382 U.S. 375 (1996) ............................................................................................................6

*Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
    907 F.2d 1280 (2d Cir. 1990)......................................................................................*passim*

*In re SquareTwo Fin. Servs. Corp.*,
    No. 17-10659 (JLG), 2017 Bankr. LEXIS 2570 (Bankr. S.D.N.Y. Sep. 11,
    2017) ............................................................................................................................11, 13

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
    803 F.2d 61 (2d Cir. 1986) ..................................................................................................7

**STATUTES**

11 U.S.C. § 362(a) ........................................................................................................................5

11 U.S.C. § 362(d)(1)................................................................................................................6, 7

11 U.S.C. § 541(a)(1)....................................................................................................................5

-ii-
WEIL:\97034164\7\73217.0004

Illinois Labor Storage Lien Act, 770 ILCS 45/1 .......................................................................10

**OTHER AUTHORITIES**

Uniform Commercial Code § 7-209 ...................................................................................9, 10

Uniform Commercial Code § 7-102(13).....................................................................................9

White, Summers, & Hillman, Uniform Commercial Code § 28:25 (6th ed.) ..............................10

WEIL:\97034164\7\73217.0004

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, "**Sears**" or the "**Debtors**"), submit this objection to the motion filed by BRE 312 Owner LLC ("**BRE 312**") seeking relief from the automatic stay (ECF 3435) (the "**Motion**"), and respectfully represent as follows:

### Preliminary Statement

1. BRE 312 requests the extraordinary relief of lifting the automatic stay to conduct a public auction of an iconic, monumental sculpture created by Alexander Calder (the "**Calder**"), whose ownership status is subject to a state court proceeding to which the Debtors are party. While the Calder is indisputably worth many millions of dollars, BRE 312 seeks this relief in order to satisfy less than $50,000 in storage and other costs that BRE 312 alleges it is owed by a third party. In so doing, BRE 312 would hastily dispose of the Calder at a "fire sale," thereby depriving the Debtors and their constituents of the opportunity to realize significant value. This is so because a public auction of the Calder—as opposed to a private sale—would very likely result in a much lower sale price than it would otherwise fetch. Consequently, the relief requested by BRE 312 jeopardizes the Debtors' ability to maximize value on behalf of their estates, their creditors, and all other parties in interest. Moreover, contrary to BRE 312's assertions, the requested relief would necessarily disrupt the state court proceedings by depriving the Debtors of the remedy they seek in the state court litigation. In short, there is hardly a more intrusive or prejudicial step that could be taken than what BRE 312 proposes.

2. Given the prejudice that the Debtors and their constituencies would suffer, BRE 312 cannot establish its right to the relief requested. Although BRE 312 has cited the seminal case in this Circuit regarding relief from the automatic stay, *In re Sonnax Indus., Inc.*, 907 F.2d

1280, 1285 (2d Cir. 1990), it has failed to even address the twelve factor *Sonnax* test. Further, an examination of those factors clearly supports denying BRE 312's Motion. Consequently, the Motion should be denied.

## Background

3. Beginning on October 15, 2018 and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

5. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6. On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**"). The Sale Transaction closed on February 11, 2019.

7. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

*Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on October 15, 2018 (ECF No. 3).

### The Dispute Regarding the Calder

8. 233 S. Wacker, LLC ("**233**") currently holds title to the Calder. However, in 2010, Sears and 233 became embroiled in a lawsuit in Illinois state court regarding Sears' right to purchase the Calder pursuant to an option agreement. That initial lawsuit was resolved pursuant to a settlement agreement between Sears and 233 in June 2013 (the "**Settlement Agreement**"). The Settlement Agreement provided, among other things, that: (a) Sears would market the Calder for sale to a third-party during a set period of time; (b) in the event the Calder were not sold during that sale period, Sears would purchase it from 233 for $3,625,000 plus interest; and (c) if the Calder was sold to a third-party during the sale period, the Parties would share in the proceeds pursuant to an agreed-upon payment waterfall.

9. With no third-party sale having occurred during the sale period, Sears was prepared to purchase the Calder for the agreed price. 233 refused. Accordingly, Sears filed an action in Illinois state court, Case No. 2016-CH-10308 (the "**State Court Action**"), seeking specific performance of its right to purchase, and 233's obligation to sell, the Calder as provided in the Settlement Agreement. 233 then filed a counterclaim contending that Sears breached an implied duty of good faith and fair dealing in connection with Sears' marketing efforts, and its rejection of an allegedly *bona fide* third-party offer during the sale period. By Stipulation, Agreement and Order "so ordered" by the court on March 27, 2019 (ECF No. 3019) (the "**233 Stay Relief Order**"), the Debtors agreed to provide 233 with relief from the automatic stay to, *inter alia*, permit 233 to assert, prosecute, and liquidate its counterclaim in the State Court Action.

10. Fact discovery in the State Court Action is complete, with tens of thousands of pages having been produced, and eleven witnesses having been deposed. Experts and expert opinions have been disclosed and expert discovery is very nearly complete as well.

11. BRE 312 does not own, and does not claim to own, the Calder. Rather, when BRE 312 acquired the Willis Tower from 233 in 2015, BRE 312 came into possession of the Calder which was on display at the Willis Tower at that time. It agreed, however, that its possession would be subject to the Settlement Agreement between 233 and Sears.

12. BRE 312 unilaterally removed the Calder from the Willis Tower in March 2017, when it embarked on a voluntary redevelopment of the Willis Tower lobby. To accommodate that redevelopment, BRE 312 had the Calder de-installed by an art professional and moved to storage at an off-site location that specializes in fine art storage. Motion, ¶¶ 10, 11. Neither Sears nor 233 requested that BRE 312 remove the Calder from the Willis Tower, incur storage costs, or put the Calder into storage.

13. While the Motion is rather vague, it appears that BRE 312 seeks to sell the Calder so that it can recoup storage, transportation, insurance, legal fees, and other costs purportedly associated with removing and storing the Calder. Upon information and belief, the amount of BRE 312's costs and expenses that have not been reimbursed total less than $50,000.[1] Critically, this amount is several orders of magnitude less than the value of the Calder at a private sale.

---

[1] Given that the Debtors do not own the Calder, they are not even liable for the storage costs. Nevertheless, BRE 312 has already filed a proof of claim for asserted prepetition amounts at issue here in the amount of $514,164.13 (Proof of Claim No. 16677), the lion's share of which has already been paid by 233 as a result of BRE 312's setoff against the purchase price paid to 233 for the Willis Tower. The Debtors reserve their rights to separately object to the proof of claim.

14. Notably, although the Debtors and 233 have been embroiled in a dispute regarding the Calder for several years, the one thing they have been able to agree upon is that granting the relief requested by BRE 312 would cause immeasurable damage to them.[2] Indeed, both the Debtors and 233 were prepared to resolve the Motion by transferring control over the Calder to 233, which is the current owner of the Calder. Due to certain additional demands made by BRE 312, however, the parties were not able to finalize an agreement.

## The Motion Should Be Denied

### A. The Debtors' Interest in the Calder Constitutes Property of the Estate

15. The automatic stay protects the Debtors' interests in the Calder. For example, section 362(a) of the Bankruptcy Code provides, in pertinent part, that "a petition filed under section 301 . . . operates as a stay, applicable to all entities of—

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and]
> (4) any act to create, perfect, or enforce any lien against property of the estate . . . .

11 U.S.C. § 362(a).

16. Section 541 of the Bankruptcy Code, in turn, defines property of a debtor's estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In enacting section 541 of the Bankruptcy Code, Congress intended property of the estate to include a broad range of interests. Collier on Bankruptcy ¶ 541.01 (16th 2019) ("Congress's intent to define property of the estate in the broadest possible sense is evident from the language of the statute which, in section 541(a)(1), initially defines the scope of estate

---

[2] Although both the Debtors and 233 seek denial of the Motion, the Debtors take issue with many of the statements in 233's objection to the Motion (ECF No. 3906) and reserve all of their rights with respect thereto.

-5-

property to be all legal or equitable interests of the debtor in property as of the commencement of the case, wherever located and by whomever held.").

17.     Although the Calder itself is not legally owned by the Debtors, the Debtors' interest in the Calder that arises from the Settlement Agreement is property of the estate. As the Second Circuit has held, because the reach of section 541 of the Bankruptcy Code is broad, "contractual rights clearly fall within [its reach]." *See, e.g.*, *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008); *see Jimmo v. Burwell*, 2016 WL 4401371, at *6 (D. Vt. Aug. 17, 2016) ("In turn, settlement agreements are contracts . . . .") (citing *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999)); *see also In re Ross*, 548 B.R. 632, 637 (Bankr. E.D.N.Y. 2016), *aff'd sub nom. Mendelsohn v. Ross*, 251 F. Supp. 3d 518 (E.D.N.Y. 2017) ("Property is construed most generously and an interest is not outside its reach because it is . . . contingent or because enjoyment must be postponed.") (internal quotations omitted) (citing *Segal v. Rochelle*, 382 U.S. 375, 379 (1996)); *In re Residential Capital, LLC*, 519 B.R. 890, 906 (Bankr. S.D.N.Y. 2014) ("[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541, including causes of action owned by the debtor.") (internal citations and quotations omitted); *Garcia v. Garcia (In re Garcia)*, 494 B.R. 799, 810 (Bankr. E.D.N.Y. 2013) ("As a general rule, contract rights and the interests arising from them are property of the estate.").

18.     Here, the Settlement Agreement gives the Debtors a right to purchase the Calder. Accordingly, the Debtors have interests in the Calder that are "protected from piecemeal dismantling by creditors by the automatic stay."  Collier on Bankruptcy ₱ 541.01 (16th 2019).

**B.     BRE 312 Has Not Shown Cause for Relief From the Stay**

19.     Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such

-6-

as by terminating, annulling, modifying, or conditioning such stay—(1) for cause . . . ." 11 U.S.C. § 362(d)(1). Courts have noted that the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 502 (1986). The stay is "designed to give the debtor time to organize its affairs—which includes protection from having to defend claims brought against the estate." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *see also In re Congregation Birchos Yosef*, 535 B.R. 629, 633 (Bankr. S.D.N.Y. 2015) (The automatic stay "serves not only the debtor, but also the debtor's creditors in the collective context of the case by ensuring the orderly determination of the debtor's liabilities, realization on the estate's assets, and allocation of that value to creditors and interest holders according to the Bankruptcy Code's priority scheme and policy of equality of distribution. In a context where every dollar counts, the automatic stay prevents unilateral races to dismember the debtor and actions outside the bankruptcy court's supervision with their attendant diversion of resources and impairment of the debtor's value.") (internal citation omitted). Because "cause" is not defined by section 362(d), the decision whether to modify the stay is left to the discretion of the bankruptcy court. *Chimera Capital, L.P. v. Nisselson (In re MarketXT Holdings, Corp.)*, 428 B.R. 579, 584 (S.D.N.Y. 2010).

20. In the Second Circuit, courts weigh twelve factors, known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted. *See Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990). The *Sonnax* factors are:

1. whether relief would result in partial or complete issue resolution;
2. lack of connection with or interference with bankruptcy case;
3. whether the other proceeding involves debtor as fiduciary;

    4. whether a specialized tribunal with necessary expertise has been established to hear cause of action;

    5. whether debtor's insurer has assumed full defense responsibility;

    6. whether the action primarily involves third parties;

    7. whether litigation in another forum would prejudice interests of other creditors;

    8. whether judgment claim arising from other action is subject to equitable subordination;

    9. whether movant's success in other proceeding would result in a judicial lien avoidable by debtor;

    10. interests of judicial economy and expeditious and economical resolution of litigation;

    11. whether parties are ready for trial in other proceeding; and

    12. the impact of stay on parties and balance of harms.

*Id.*

    21. Not all of the factors will be relevant in a given case, and the Court may disregard irrelevant factors. *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). Additionally, courts need not assign equal weight to each factor, and have discretion to weigh the factors against one another. *See In re Artisanal 2015, LLC*, No. 17-12319, 2017 Bankr. LEXIS 3813, at *46 (Bankr. S.D.N.Y. Nov. 3, 2017); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

    22. In applying the *Sonnax* factors:

> [t]he burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in property[.]' If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

-8-

*Sonnax*, 907 F.2d at 1285 (internal citations omitted); *see also In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *5-6 (S.D.N.Y. Dec. 18, 2018); *Abrantes Const. Corp. v. U.S. (In re Abrantes Const. Corp.)*, 132 B.R. 234, 247 (N.D.N.Y. 1991).

23. Given that BRE 312 has not even made an initial showing regarding any of the *Sonnax* factors, the Court could deny the Motion on that basis alone. Nevertheless, the Debtors submit that application of the *Sonnax* factors weighs heavily in favor of denying the Motion.

> *i.    Whether Relief Would Result in Partial or Complete Issue Resolution (Factor One)*

24. The State Court Action is close to resolution, and the Court already entered the 233 Stay Relief Order so that 233 can pursue its counterclaims against the Debtors in the Illinois court. Far from resulting in a complete resolution of all of the issues relating to the Calder, if the Motion is granted, the dispute between Sears and 233 regarding the Calder would become even more complicated and the estates' ability to realize upon the value of the Calder would likely be delayed.

25. BRE 312's conclusory assertion that it holds statutory liens which entitle it to sell the Calder, for example, are not supported. *See* Motion ¶ 18. In fact, BRE 312 has not even attempted to demonstrate that it has any such lien rights.

26. BRE 312 asserts that it is entitled to a warehouse lien under Section 7-209 of the Uniform Commercial Code ("**UCC**"). But BRE 312 has failed to demonstrate that this section applies. Specifically, UCC Section 7-209 provides that "[a] ***warehouse*** has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement." UCC § 7-209 (AM. LAW INST. & UNIF. LAW COMM'N 2017) (emphasis added). The UCC defines a warehouse as "a person engaged in the business of storing goods for hire." *Id.* § 7-102(13). BRE has not

-9-

demonstrated, and cannot demonstrate, that it qualifies as a "warehouse" within the ambit of the UCC.

27. As the owner of the Willis Tower, BRE 312 is a commercial real estate owner and landlord—not a warehouse. BRE 312 has not alleged, nor proven, that is in the business of storing goods for hire. Accordingly, BRE 312 cannot qualify as a warehouse under the UCC and does not have a warehouse lien on the Calder pursuant to UCC § 7-209. *See* White, Summers, & Hillman, Uniform Commercial Code § 28:25 (6th ed.) (providing that a lien would not be valid if the bailee was not a warehouse). Thus, while the validity of BRE 312's claimed lien would ultimately be adjudicated in Illinois, if the stay is lifted, it is unlikely that BRE 312 would be able to bring itself within the scope of the UCC.

28. Similarly, contrary to BRE 312's claims, *see* Motion ¶ 20, BRE 312 does not appear able to demonstrate that it is entitled to sell the Calder under the Illinois Labor Storage Lien Act (the "**Illinois Statute**"). Under 770 ILCS 45/1, a lien arises for a person that has "expended labor, skill or materials upon any chattel, or has furnished storage for said chattel, *at the request of* its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof . . . ." 770 ILCS 45/1 (emphasis supplied).

29. BRE 312's conclusory statement that it has a lien, *see* Motion ¶ 21, would not establish that it has satisfied the requirements of the Illinois Statute. BRE 312 does not identify the labor, skill, or materials it "expended" that would serve as predicates to such a lien. Furthermore, in voluntarily removing the Calder from the Tower to pursue its own renovation plans, BRE 312 did not provide storage "at the request of" either 233 (the owner) or Sears. Accordingly, BRE 312 may not be able to establish as a threshold matter that it would be entitled to the extreme remedy it seeks under applicable non-bankruptcy law.

-10-

30.  BRE 312's proposed course of action complicates and hinders the resolution of issues.  Accordingly, the first *Sonnax* factor militates against granting relief from the automatic stay.

### ii.   *Lack of Connection With or Interference with Bankruptcy Case (Factor Two)*

31.  The Debtors' interest in the Calder may be a source of significant value to the Debtors' estates.  In connection with its long-running dispute with 233 regarding the Calder, Sears consulted numerous experts regarding the best means for maximizing the value of the Calder.  The advice that Sears received was that a private sale would be the best way to maximize value.

32.  BRE 312 cites to the 2014 $25.9 million auction of Calder's 7 1/2-foot-long hanging mobile, *Poisson Volant (Flying Fish)* (1957) as evidence of the efficacy of public auction.  Motion ¶ 4 n.2.  This comparison ignores the most obvious difficulty in conducting a public sale of the Calder—its size.  The Calder is a 16,000-pound, 33-feet-high by 55-feet-long motorized sculptural installation consisting of five individual components including a massive black helix winding along at ground level.  Motion ¶ 5.  As a result, there is a limited universe of potential buyers.

33.  Particularly in these cases, where administrative solvency has been an issue that has concerned the Debtors and the Court, the Court should not grant relief that might jeopardize the estates' ability to realize that value.

34.  The second *Sonnax* factor militates in favor of denial of the Motion.

### iii.   *Whether Other Proceeding Involves Debtor as Fiduciary (Factor Three)*

35.  The third *Sonnax* factor addresses whether the other proceeding involves the Debtors as a fiduciary. "[G]enerally, proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *In re Curtis*, 40 B.R. 795, 799 (Bankr. D. Utah 1984) (internal citation omitted); *In re SquareTwo Fin. Servs. Corp.*, No. 17-10659 (JLG), 2017 Bankr.

LEXIS 2570, at *23 n.11 (Bankr. S.D.N.Y. Sep. 11, 2017); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3777, at *8 (Bankr. S.D.N.Y. Aug. 16, 2012) (finding that without an evidentiary showing that the respondent was acting as a fiduciary, "the third *Sonnax* Factor weighs against lifting the stay.").

36. The relief that BRE 312 seeks does not involve claims against the Debtors in a fiduciary capacity. Consequently, the third *Sonnax* factor weighs in favor of continuing the automatic stay.

### iv. *Whether Specialized Tribunal with Necessary Expertise Has Been Established to Hear Cause of Action (Factor Four)*

37. With respect to the fourth factor, courts generally find that a specialized tribunal is one with specialized knowledge of the specialized issues presented by the litigation. *See, e.g.*, *In re MarketXT Holdings Corp.*, No. 04-12078 (ALG), 2009 Bankr. LEXIS 1897, at *12 (Bankr. S.D.N.Y. July 20, 2009) (finding that the National Association of Securities Dealers is a specialized tribunal with expertise to adjudicate the relevant securities dispute); *In re Drexel Burnham Lambert Group Inc.*, 1990 Bankr. LEXIS 2889, at * 35 (Bankr. S.D.N.Y. Dec. 14, 1990) (referring to the New York Stock Exchange's Hearing Panel as a specialized tribunal with respect to disciplinary proceedings for violation of New York Stock Exchange rules).

38. The relief sought in the Motion does not implicate a specialized tribunal. In fact, BRE 312 seems to think that this Court can authorize it to conduct an auction of the Calder, without resorting to any other court for approval (a contention with which the Debtors and 233 disagree).

39. The fourth *Sonnax* factor, therefore, weighs against granting BRE 312 relief from the automatic stay.

-12-

### v. *Whether Debtor's Insurer Has Assumed Full Defense Responsibility (Factor Five)*

40.  Given that the relief that BRE 312 seeks is not to pursue litigation against the Debtors, the fifth *Sonnax* factor is not applicable and does not support the relief requested in the Motion.

### vi. *Whether The Action Primarily Involves Third Parties (Factor Six)*

41.  The bankruptcy court in *SquareTwo Fin. Servs.* addressed the import of this factor and held that "Factor #6 will weigh in favor of granting stay relief where 'the debtor functions only as a bailee or conduit for the goods or proceeds in question,' and when the action is probably 'unconnected' to the bankruptcy and 'unlikely to frustrate fair and expeditious distribution of the bankruptcy estate.'" *SquareTwo Fin. Servs.*, 2017 Bankr. LEXIS 2570, at *23 n.11 (citing *Musso v. Hirsch (In re Hirsch)*, 2011 U.S. Dist. LEXIS 111561, at *37 (E.D.N.Y. Sept. 29, 2011) (citing *City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983))).

42.  Here, Sears is not functioning merely as a bailee or conduit and is not merely on the sidelines. In fact, the Debtors have a significant economic stake in the outcome of a sale of the Calder. In general terms, under the Settlement Agreement, if the Debtors sell the Calder, they will be entitled to keep most of the proceeds, after payment of approximately $3.9 million to 233. Based upon the expected value of the Calder, which is several times the $3.9 million that would be owed to 233, the Debtors have the principal interest in the proceeds of the Calder.

43.  Consequently, the sixth *Sonnax* factor supports denial of the Motion.

    *vii.*    ***Whether Litigation in Another Forum Would Prejudice Interests of Other Creditors (Factor Seven)***

    44.    BRE 312 does not seek to litigate in another forum but, rather, to sell the Calder via public auction. Nevertheless, the spirit of the seventh *Sonnax* factor is applicable and supports denial of relief.

    45.    The sale of the Calder through a public auction would severely prejudice the Debtors and their constituents by reducing the value of the Debtors' interest in the Calder, potentially by many millions of dollars.

    46.    Consequently, granting the relief requested would prejudice the interest of other creditors. Accordingly, the seventh *Sonnax* factor supports denial of the Motion.

    *viii.*    ***Whether Judgment Claim Arising From Other Action is Subject to Equitable Subordination (Factor Eight)***

    47.    The Debtors believe this factor is inapplicable. However, even if it were, this factor should not be given any significant weight. *In re Project Orange Assocs., LLC*, 432 B.R. 89, 109 (Bankr. S.D.N.Y. 2010) (finding that because neither the eighth nor ninth *Sonnax* factor weighs strongly in favor of lifting the automatic stay "the Court need not consider them equally with the other factors and does not find them dispositive in its determination that the stay should be lifted").

    *ix.*    ***Whether Movant's Success in Other Proceeding Would Result in a Judicial Lien Avoidable by Debtor (Factor Nine)***

    48.    The Debtors believe this factor is inapplicable. However, even if it were, this factor should not be given any significant weight. *Supra* ¶ 47.

    *x.*    ***Interests of Judicial Economy and Expeditious and Economical Resolution of Litigation (Factor Ten)***

    49.    BRE's proposed course of action does not promote judicial economy or economical resolution of litigation. The relief sought by BRE is in direct contravention of the

-14-

relief sought by Sears in the State Court Action and, undoubtedly, would complicate and delay that litigation and, ultimately, the Debtors' realization of value for its interest in the Calder.

50. Moreover, in light of the infirmities in BRE's legal support for its assertion of a lien, *see supra* ¶¶ 25–29, it is unlikely to be able to effect a prompt sale of the Calder even if the Motion is granted.

51. The tenth *Sonnax* factor does not support relief from the stay.

### xi. *Whether Parties are Ready for Trial in Other Proceeding (Factor Eleven)*

*52.* The eleventh *Sonnax* factor, which requires consideration of whether the parties are ready for trial, is somewhat inapposite here, because BRE 312 is not seeking relief from the automatic stay to pursue litigation. *See In re Containership Co. (TCC) A/S*, 466 B.R. 219, 233 (Bankr. S.D.N.Y. 2012). On the other hand, it is relevant that the State Court Action is nearly ready for trial and relief from the stay has been granted to pursue that litigation to judgment. As a result, the resolution of the dispute that left BRE 312 in possession of the Calder is forthcoming.

53. The eleventh *Sonnax* factor doesn't support relief from the stay.

### xii. *Impact of Stay on Parties and Balance of Harms (Factor Twelve)*

54. The balance of the harms weighs decidedly in favor of denying the relief requested in the Motion. On the one hand, BRE 312 has a claim for less than $50,000, in respect of which it has not demonstrated that it is entitled to assert a lien under either the UCC or the Illinois Statute. And BRE 312 has been offered (and refused) an opportunity to turn over storage of the Calder to 233. On the other hand, the Debtors have an interest in the value of the Calder which they can monetize for millions of dollars, which may be jeopardized by a sale of the Calder at public auction. Accordingly, the magnitude of the alleged harm to BRE 312 is significantly outweighed by the harm created by a public auction.

55.     This is not even a close call.  Application of the balancing required by the twelfth *Sonnax* factor supports denial of the stay relief.

56.     In sum, BRE 312 has failed to establish that any of the *Sonnax* factors demonstrate cause sufficient to lift the automatic stay.  Rather BRE 312's proposed relief involving a public auction is an unreasonable remedy that severely prejudices the Debtors and their constituents by (i) eviscerating the specific performance rights that Debtors are entitled to pursue in the State Court Action and (ii) imposing substantial risk of impairment to the value of the Calder that is available for the Debtors' estates.

### Conclusion

57.     For the foregoing reasons, BRE 312 has not established that cause exists for relief from the automatic stay and the Motion should be denied.

Dated: May 16, 2019
      New York, New York

/s/ Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*