**BUCHANAN INGERSOLL & ROONEY PC**
640 5th Avenue, 9th Floor
New York, New York 10019-6102
(212) 440-4400
Christopher P. Schueller, Esq. (christopher.schueller@bipc.com)
Tanya Bosi, Esq. (tanya.bosi@bipc.com)
*Attorneys for Gokaldas Exports Ltd.*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------X<br>In re:<br><br>SEARS HOLDING CORPORATION, *et al.,*[1]<br><br>　　　　　　　　　　　　　Debtors.<br>-------------------------------------------------------X | **Hearing Date and Time**<br>May 21, 2019 at 10:00 a.m.<br><br>Objection Deadline:<br>May 14, 2019 at 4:00 p.m. (ET)<br><br>Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

### REPLY BY GOKALDAS EXPORTS LTD. TO DEBTORS' OMNIBUS OBJECTION TO VENDORS' MOTIONS FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Gokaldas Exports Ltd. ("Gokaldas"), by its attorneys, Buchanan Ingersoll & Rooney PC, submits this reply to Debtors' Omnibus Objection to Vendors' Motions for Allowance and Payment of Administrative Expense Claims [Docket No. 3883] (the "Objection"). For the reasons set forth below, in addition to those provided in Gokaldas's motion for allowance and payment of administrative expense claims [Docket No. 3670] (the "Gokaldas Motion"), Gokaldas respectfully requests that this Court direct immediate payment of its administrative expense claims; and grant such other and further relief as this Court deems appropriate.

I.     **Preliminary Statement.**

1.     The Debtors' Objection is very predictable and not particularly compelling. For purposes of the Gokaldas Motion, the Objection: (a) argues that arrival of shipment is not the proper standard for section 503(b)(1) claims, based on no binding, precedential authority, but rather, a selection of bankruptcy court opinions scattered from around the country – all of which predate *World Imports* and all but one of which predate BAPCPA; (b) makes the obvious point that *World Imports* did not itself expressly apply to section 503(b)(1); and (c) suggests (incorrectly) that Gokaldas is somehow forced to rely on the Debtors' contractual agreement with the Buyer to seek payment from the Buyer for its December 2018 shipments as its sole means of recourse.

2.     Gokaldas replies to the Objection principally on three matters as follows: (a) the Court should follow *In re World Imports* regarding the determinative timing for section 503(b)(9) claims revolving around actual, physical receipt of goods (the only U.S. Court of Appeals opinion on the issue); (b) if the Court does follow *World Imports* on the determinative timing for section 503(b)(9) claims, then *World Imports* should also inform the Court's application of section 503(b)(1) to vendor claims, in order to harmonize these statutory sections

which have a common underlying legislative purpose; and (c) the APA does <u>not</u> release the Debtors' estates from liability of amounts owing in connection with Gokaldas's December 2018 shipments, regardless of whether the Buyer agreed to assume certain ambiguous accounts payable, subject to offsets and other accounting adjustments to which Gokaldas was not privy.

  **II.** **<u>This Court should follow *World Imports* with respect to section 503(b)(9) claims.</u>**

  3. The Third Circuit in *In re World Imports* held that the date that goods come into the physical possession of the debtor is the relevant date for determining if a creditor's claim qualifies as an administrative expense under section 503(b)(9). *In re World Imports, Ltd.*, 862 F.3d 338 (3d Cir. 2017).

  4. The Third Circuit's holding of "physical receipt" was guided by the interrelationship between reclamation under section 546 and the alternative remedy provided by section 503(b)(9) – one of the countless instances in which a court favored an interpretation that provides the most logical and consistent function across statutory sections.

  5. This Court should follow the rationale of *World Imports* and apply the same timing rule for determining the eligibility of a creditor's claim for administrative expense status under section 503(b)(9) – that is, physical receipt by the Debtors.

  **III.** **<u>Although the *World Imports* holding does not expressly address section 503(b)(1), the statutory section should be reconciled with section 503(b)(9) in a manner that is logical and promotes the underlying legislative purpose of section 503.</u>**

  6. As this Court knows, it was the Debtors who initially requested that this Court grant certain administrative priority to claimants in their *Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Post-petition*

*and Satisfy Such Obligations in the Ordinary Course of Business* [Docket No. 14] ("First Day Motion"), in order to avoid disruption to their global vendor supply chain.  *See*, First Day Motion, ¶¶ 34-125.  As noted in the First Day Motion,

> [a]bsent such relief, the Debtors may be required to expend substantial time and effort reissuing the Prepetition Orders to provide their vendors with assurance of administrative priority. This disruption to the continuous flow of goods and services to the Debtors would seriously impact the Debtor's ability to operate their business. Without the support of the vendors, the Debtors will incur significant cost and lose valuable business relationships to the detriment of all parties in interest

*Id.* at ¶ 35.

7.     This relief, which was intended to provide vendors with additional comfort in their continued performance, is entirely consistent with a major policy of section 503(b) which is "to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services." *In re United Trucking Serv. Inc.*, 851 F.2d 159, 161 (6th Cir. 1988) (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)).

8.     Despite the Debtors' obvious point in the Objection that *World Imports* did not expressly rule on section 503(b)(1), this policy consideration demonstrates why the Third Circuit's ruling in *World Imports*, if followed, should not be limited to section 503(b)(9) claims as Debtors suggest.

9.     It is a well-settled principle of statutory interpretation that statutory provisions should not be considered in isolation but in conjunction with the statute as a whole. *Yerdon v. Henry*, 91 F.3d 370 (2d Cir. 1996) ("[b]ecause the meaning of statutory language, plain or not, depends on the context, the interpretation of the statute requires consideration of the language of the relevant provision in conjunction with the entire statute.  Where an examination of the statute as a whole demonstrates that a party's interpretation would lead to absurd or futile results …

4

plainly at variance with the policy of the legislation as a whole, that interpretation must be rejected.) (internal citations and quotations omitted).

10. Accordingly, courts must read section 503(b)(1) in conjunction with the rest of section 503, the passage of section 503(b)(9) and, if *World Imports* is followed, the resulting effects of implementing a physical possession timing rule thereunder.

11. In fact, consistent cross-section statutory interpretation is a driving principle that underlies the *World Imports* decision itself.

12. Because Congress has determined that vendors providing goods within the twenty days before a bankruptcy filing should be compensated with administrative priority, it necessarily follows that goods delivered subsequently (*i.e.*, goods delivered to the debtor *after* the goods that are already afforded administrative expense status) should be similarly elevated to administrative priority. To hold otherwise would render absurd results whereby the pre-petition delivery of goods by a vendor could receive administrative claim status, while the same goods delivered days later and physically received post-petition would result in a general unsecured claim. *See* demonstrative flow chart at p.6 of *Initial Reply to Debtors' Objection to Motion of Winners Industry Co., Ltd. for Allowance and Payment of Administrative Expense Claims* [Docket No. 3229].

13. Such a reading of section 503 is completely at odds with the fundamental concept of administrative expense claims. Indeed, if goods delivered within twenty days of the bankruptcy petition play an important role in rehabilitating the debtor and, therefore, are afforded administrative priority, certainly goods delivered subsequent thereto provide critical value to the debtor and should be compensated through an administrative expense claim.

5

14. If *World Imports* is adopted by this Court, the contrary position advanced by the Debtors regarding section 503(b)(1) would place it at odds with section 503(b)(9), would create perverse incentives for vendors dealing with a debtor sliding toward bankruptcy, and would undermine the legislative intent of section 503.

15. Debtors' cases cited on this point are not authoritative, as they are not binding precedent, and they are all outdated cases issued before BAPCPA, *World Imports* or both.

16. Accordingly, this Court should follow *World Imports* and also adopt a consistent application of section 503(b)(1) to vendor claims which rejects the Debtors' chronologically twisted theory, thereby focusing on physical receipt, which will properly motivate vendors to continue doing business with financially-troubled parties.

IV. **The Asset Purchase Agreement does not relieve Debtors of their obligations to Gokaldas in connection with the requested administrative expense claims.**

17. Debtors' Objection suggests that because Transform Hold Co., LLC (the "Buyer") assumed certain liabilities by way of the Asset Purchase Agreement, dated As of January 17, 2019 (the "APA"), the Debtors are no longer responsible for the administrative expenses claimed by Gokaldas for goods shipped to the Debtors after the petition date.

18. As previously asserted, Gokaldas has reached out to the Buyer who has informed Gokaldas that the Debtors remain responsible for the invoices. Gokaldas Motion, ¶ 17. Again, Gokaldas is the victim of a contractual dispute between the Debtors and the Buyer. *Id.* at ¶ 18.

19. As a general matter, absent novation, a party remains liable for the obligations under a contract despite any assignment or assumption. *See, e.g.*, *In. re Chemtura Corp.*, 448 B.R. 635, 653 n.64 (Bankr. S.D.N.Y. 2011). This was contemplated by the Court in its Final Order Approving the Asset Purchase Agreement [Doc. 2507] where it stated "for the avoidance

of doubt, the Buyer's agreement to pay Assumed 503(b)(9) Claims, Specified Payables, or any other administrative or priority claim of the Sellers pursuant to the terms of the Asset Purchase Agreement is a general unsecured contractual *obligation of the Buyer owed solely to the Sellers*". Doc 2507, ¶ 28 (emphasis added). Thus, it is evident that even if the Buyer has in fact assumed the responsibility to pay for the administrative expenses in question, doing so did not relieve Debtors of their obligation to Gokaldas.

20. Although the Buyer may have had an obligation to pay for $166 million in accounts payable as outlined in Schedule 1.1(g) of the APA, this schedule provided no notice to any creditors as to whether their particular outstanding claims were to be considered 'Other Payables.' Further, a reasonable creditor reading this APA would assume that not all administrative expense claims were assumed by the Buyer because such an interpretation would render the APA's specific reference to 'Assumed 503(b)(9) Claims' meaningless.

21. Therefore, Debtors' suggestion that Gokaldas must look solely to the Buyer for payment of administrative expenses claimed by Gokaldas on account of goods shipped to the Debtors after the petition date fails. If this Court eventually rules that the Buyer assumed these obligations, it still does not affect Debtors' obligations to Gokaldas until the obligations are actually satisfied.

WHEREFORE, for the reasons set forth above and as set forth in the Gokaldas Motion, Gokaldas respectfully requests that the Court (a) enter an order, substantially in the form attached hereto as Exhibit A, (i) granting Gokaldas allowed administrative expense claims under 11 U.S.C. § 503(b)(1)(A) in the amount of $563,085.39 with respect to Kmart Corporation and $836,908.04 with respect to Sears, Roebuck & Co., on account of post-petition goods delivered evidenced by, among other things, the Invoices Due March 2019 (as defined in the Gokaldas

Motion), and requiring the Debtors to promptly pay such administrative expense claims; (ii) granting Gokaldas allowed administrative expense claims under 11 U.S.C. § 503(b)(9) in the amount of $12,709.20 with respect to Kmart Corporation and $45,781.60 with respect to Sears, Roebuck & Co. on account of goods delivered within 20 days of the Petition Date, as set forth in Gokaldas's Kmart and Sears POCs (as defined in the Gokaldas Motion); (iii) and requiring the Debtors to promptly pay such administrative expense claims; and (b) grant such other and further relief to Gokaldas as the Court deems just and proper.

Dated: May 17, 2019
New York, New York

                                        BUCHANAN INGERSOLL & ROONEY PC

                                        By: */s/ Christopher P. Schueller*
                                        Christopher P. Schueller
                                        Tanya Bosi
                                        640 5th Avenue, 9th Floor
                                        New York, New York 10019-6102
                                        (212) 440-4400
                                        christopher.schueller@bipc.com
                                        tanya.bosi@bipc.com
                                        *Attorneys for Gokaldas Exports Ltd.*