Hearing Date and Time: May 21, 2019 at 10:00 a.m. (Eastern Time)
Objection Date and Time: May 14, 2019 at 4:00 p.m. (Eastern Time)

**NORTON ROSE FULBRIGHT US LLP**
Eric Daucher
Francisco Vazquez
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel for FTI Consulting Canada Inc.,*
*in its capacity as court-appointed monitor for*
*Sears Canada Inc. and certain of its affiliates*

**HUGHES HUBBARD & REED LLP**
Neil J. Oxford
Dustin P. Smith
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Counsel for the Honourable J. Douglas*
*Cunningham, Q.C., as court-appointed*
*litigation trustee for Sears Canada Inc. and*
*Counsel for 1291079 Ontario Limited as class*
*representative of all Sears Hometown Dealer*
*stores*

**ALLEN & OVERY LLP**
Laura R. Hall
Joseph Badtke-Berkow
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
*Counsel for Morneau Shepell Ltd., in its*
*capacity as administrator of the Sears Canada*
*Inc. Registered Pension Plan*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE**
**AUTOMATIC STAY FOR THE PURPOSE OF JOINING SEARS**
**HOLDINGS CORPORATION AS A DEFENDANT IN EXISTING**
**LITIGATION PENDING BEFORE THE ONTARIO SUPERIOR COURT**
**OF JUSTICE (COMMERCIAL LIST) AND TO LIQUIDATE CERTAIN CLAIMS**
**AGAINST SEARS HOLDINGS CORPORATION IN SUCH EXISTING LITIGATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................. 1

REPLY ...................................................................................................................................... 4

    A.   The Debtors Have Not Contested the Core Assertions of the Motion ................ 4

    B.   The Canadian Plaintiffs Are Not Seeking a "Distributional Advantage" .......... 6

    C.   Granting the Requested Relief Would Avoid Duplicative Litigation ................. 7

    D.   The Canadian Court Is a Specialized Tribunal and Is Best-Positioned to
        Resolve the Canadian Plaintiffs' Claims ........................................................... 10

    E.   The Canadian Plaintiffs' Claims are Not "Garden Variety" and Granting
        the Requested Relief Will Not "Open the Floodgates" to Similar Claims ........ 14

    F.   The Canadian Litigation Primarily Involves Third Parties .............................. 16

    G.   Relief from the Stay Is Appropriate Now; Delay Will Squander a Time-
        Sensitive Opportunity to Integrate Sears Holdings into the Canadian
        Litigation ............................................................................................................ 17

CONCLUSION....................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624 (2d Cir. 1976) ...........................................16

*Cornfield v. Investors Overseas Servs.*, Ltd., 471 F. Supp. 1255 (S.D.N.Y. 1979)...........16

*E&L Consulting, Ltd. v. Doman Indus. Ltd.*, 360 F. Supp. 2d 465 (E.D.N.Y. 2005)........15

*EMA Garp Fund v. Banro Corp.*, No. 18 Civ. 1986 (KPF), 2019 WL 773988
    (S.D.N.Y. Feb 21, 2019) ................................................................................................15

*First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989).........................9

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, No. 05 Civ. 5704 (RPP),
    2006 WL 2255071 (S.D.N.Y. Aug. 4, 2006)..................................................................11

*In re Anton*, 145 B.R. 767 (Bankr. E.D.N.Y. 1992) .........................................................7

*In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616 (Bankr. S.D.N.Y.
    2009) ...............................................................................................................................11

*In re Beck Indus., Inc.*, 725 F.2d 880 (2d Cir. 1984) .........................................................7

*In re Breitburn Energy Partners LP*, 571 B.R. 59 (Bankr. S.D.N.Y. 2017) .........4, 5, 6, 12

*In re Cole*, 202 B.R. 356 (Bankr. S.D.N.Y. 1996)..............................................................6

*In re David X. Manners Co. Inc.*, No. 15-51490 (JJT), 2018 WL 1997674 (Bankr.
    D. Conn. Apr. 26, 2018) ................................................................................................6

*In re Lear Corp.*, No. 09-14326 (ALG), 2009 WL 3191369 (Bankr. S.D.N.Y.
    Sept. 24, 2009)................................................................................................................9

*In re Manners*, No. 18CV778 (WWE), 2018 WL 3079470 (D. Conn. June 21,
    2018) ...............................................................................................................................6

*In re Mego Int'l, Inc.*, 28 B.R. 324 (Bankr. S.D.N.Y. 2017) .............................................12

*In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010).................15

*In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017 (Bankr.
    S.D.N.Y. Feb. 28, 2018) .....................................................................................6, 12, 17

*In re Motors Liquidation Co.*, No. 10 Civ. 36 (RJH), 2010 WL 4630327
    (S.D.N.Y. Nov. 8, 2010).................................................................................................14

*In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 WL 3249641 (Bankr. S.D.N.Y. Aug. 7, 2012) ........................................................................................11, 17

*In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 WL 3423285 (Bankr. S.D.N.Y. Aug. 14, 2012) ....................................................................................12

*In re Taub*, 413 B.R. 55 (Bankr. E.D.N.Y. 2009) ................................................................6

*In re Wyly*, 526 B.R. 194 (Bankr. N.D. Tex. 2015) ............................................................9

*Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139 (2d Cir. 1999) .......................................4

*S.E.C. v. Miller*, 808 F.3d 623 (2d Cir. 2015)....................................................................9

*Sears Holdings Corp. v. Lampert*, No. 19-08250 (Bankr. S.D.N.Y. Apr. 18, 2019).........19

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990)....................................................................................4

*Tradewell, Inc. v. Am. Sensors Elecs., Inc.*, No. 96 Civ. 2474 (DAB), 1997 WL 423075 (S.D.N.Y. July 29, 1997) ...............................................................................15

## **Canadian Authorities**

*771225 Ontario Inc. v. Bramco Holdings Co.,* [1992] O.J. No. 1772 ..............................10

*Companies' Creditors Arrangement Act*, R.S.C. 1985 .......................................................1

*Housen v. Nikolaisen*, 2002 SCC 33, [2002] 2 S.C.R. 235.................................................11

*Sun Indalex Fin., LLC v. United Steelworkers*, 2013 SCC 6 .............................................13

*Toronto Dominion Bank v. Bank of Nova Scotia*, 2013 ONSC 6029 ...............................11

*Western Larch Ltd. v. Di Poce Mgmt. Ltd.*, 2013 ONCA 722....................................10, 11

FTI Consulting Canada Inc., in its capacity as the court-appointed monitor (the "Monitor") for Sears Canada Inc. ("Sears Canada") and certain of its affiliates[1] (collectively with Sears Canada, the "Canadian Debtors") in insolvency proceedings under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), the Honourable J. Douglas Cunningham, Q.C., in his capacity as the court-appointed litigation trustee for the Canadian Debtors (the "Litigation Trustee"), Morneau Shepell Ltd., in its capacity as administrator (the "Plan Administrator") of the Sears Canada Inc. Registered Pension Plan (the "Canadian Plan"), and 1291079 Ontario Limited as the class representative for the potential class of Sears Hometown Dealer stores (the "Class Action Representative," and, collectively with the Monitor, the Litigation Trustee, and the Plan Administrator, the "Canadian Plaintiffs") hereby submit this *Reply* (the "Reply") *in Support of Motion for Relief from the Automatic Stay for the Purpose of Joining Sears Holdings Corporation as a Defendant in Existing Litigation Pending before the Ontario Superior Court of Justice (Commercial List) and to Liquidate Certain Claims against Sears Holdings Corporation in such Existing Litigation* (the "Motion").[2]  In further support of the Motion, the Canadian Plaintiffs respectfully represent as follows:

## PRELIMINARY STATEMENT

The Canadian Plaintiffs' claims against Sears Holdings will need to be resolved in one forum or another.  The most appropriate and equitable forum is the Canadian Court, which is a

---

[1]    The Canadian Debtors are: Sears Canada; 9370-2751 Quebec Inc.; 191020 Canada Inc.; The Cut Inc.; Sears Contact Services Inc.; Initium Logistics Services Inc.; 9845488 Canada Inc.; Initium Trading and Sourcing Corp.; Sears Floor Covering Centres Inc.; 173470 Canada Inc.; 2497089 Ontario Inc.; 6988741 Canada Inc.; 10011711 Canada Inc.; 1592580 Ontario Limited; 955041 Alberta Ltd.; 4201531 Canada Inc.; 168886 Canada Inc.; and 3339611 Canada Inc.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

specialized tribunal with Canadian insolvency and corporate law expertise in which the Canadian Plaintiffs, as fiduciaries to a Canadian insolvency estate, a Canadian pension plan, and a potential class (certified under Canadian law) of harmed entities, are already proceeding under Canadian law as against fourteen non-Debtor defendants.   The Canadian Court will move that litigation forward towards a trial currently scheduled for early next year regardless of whether relief from the stay is granted.   The only question is whether the Canadian Litigation should be conducted only once, before the Canadian Court, so as to resolve the Canadian Plaintiffs' claims as against all defendants, or whether it should be split across two different courts, in two different countries, to try the same issues of Canadian law and fact, first against the fourteen Existing Canadian Defendants in Canada and then later against Sears Holdings in this Court.   To the Canadian Plaintiffs, the answer is simple: there is one sets of facts, so one trial is better than two, which would be an extraordinary waste of judicial and estate resources.

Nothing in the Debtors' objection to the Motion (the "Debtors' Objection"), or in the Official Committee of Unsecured Creditors' (the "Committee") qualified joinder to the Debtors' Objection (the "Committee's Joinder"), changes that fundamental equation.   Applying the *Sonnax* factors, cause to lift the automatic stay clearly exists.   There is no merit to the suggestion that the Canadian Plaintiffs are seeking to obtain a distributional advantage—they have expressly disclaimed any request to enforce any resulting judgment against Sears Holdings outside of these chapter 11 cases.   Nor will granting relief "open the floodgates" to an "avalanche" of similar motions.   There are no other claimants situated similarly to the Canadian Plaintiffs, who appear before this Court as parties charged under Canadian law with representing a diverse range of stakeholders in a related insolvency process in a sister jurisdiction in which the Canadian Court

has entered multiple orders specifically requesting that this Court extend assistance and aid them in the performance of their duties.

Further, the Debtors' central argument that the Canadian Plaintiffs' request to lift the stay is premature because they are unable to project recoveries no longer accurately reflects the reality of these chapter 11 cases, if it ever did.  The *Disclosure Statement for the Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Certain of its Affiliated Debtors* [Docket No. 3895] (the "Amended Disclosure Statement") makes clear that the Debtors believe that the estates will be administratively solvent and that there will be recoveries for general unsecured creditors.  With that acknowledgement, one of the main arguments put forth by the Debtors in opposition to the Motion falls away.  The validity and amount of the Canadian Plaintiffs' claims will need to be determined.  The only question is whether that determination will be made efficiently through a single proceeding, or inefficiently split between duplicative proceedings in two jurisdictions.

The Debtors' and the Committee's call for further delay while they deliberate on an appropriate path forward is untenable and risks squandering a valuable opportunity to preserve the assets available to both the creditors of the U.S. Debtors and the creditors of the Canadian Debtors.  At the request of Sears Holdings itself, certain dates in the Canadian Litigation have been held in abeyance pending disposition of the Motion.  But following disposition of the Motion, the Canadian Litigation will move forward towards a trial that is currently scheduled to begin early next year.  If the relief requested is not granted, the opportunity to preserve estate resources—on both sides of the border—by having only a single trial in respect of the claims at issue in the Canadian Litigation will be permanently lost.  The Debtors and the Committee do not need more time to decide whether it is better to have one litigation or two.  They certainly

should not be permitted to inflict multiplied costs on the Canadian Plaintiffs to the detriment of the thousands of Canadian stakeholders they represent as a result of their indecision. The automatic stay should be modified as requested by the Canadian Plaintiffs.

## REPLY

1.     Section 362(d)(1) of the Bankruptcy Code states that a court "shall" grant relief from the automatic stay where "cause" to do so exists.  11 U.S.C. 362(d)(1).  The Canadian Plaintiffs need only make a *prima facie* showing that such cause exists—the ultimate burden of demonstrating that the stay should be maintained lies with the Debtors.  *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999); *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990)).  The Debtors have not carried and cannot carry their burden because the overwhelming majority of the *Sonnax* factors favor granting the requested relief.  *See Sonnax*, 907 F.2d at 1286.

A.     The Debtors Have Not Contested the Core Assertions of the Motion

2.     Neither the Debtors nor the Committee have contested the Motion's core assertions: the Canadian Litigation involves Canadian insolvency estates and Canadian causes of action; primarily concerns the conduct of non-Debtors, which greatly outnumber Sears Holdings as the only potential Debtor-defendant; and is being overseen by a Canadian Court that is indisputably better positioned to address those claims than this Court.  Although the Debtors, joined by the Committee, make an effort to attack many of the *Sonnax* factors, the breadth of what is uncontested is striking:

- With one narrow exception related to a punitive damages claim (which is addressed and resolved below), the Debtors and the Committee do not dispute that granting the relief requested would allow all the claims at issue in the Canadian Litigation to be resolved against all parties in a single forum (Factor 1).  *See* Motion ¶¶ 36-37.

- The Debtors and the Committee do not contend that the Canadian Litigation will delay distributions to creditors under a plan (Factor 2). *See* Motion ¶ 39. Indeed, they do not dispute that the Canadian Litigation has been scheduled for efficient resolution by an early trial, and, in light of the timeline implied by the Debtors' Objection and the schedule set by the Canadian Court, it is apparent that the Canadian Plaintiffs' claims will likely be determined before the U.S. Debtors advance their own claims resolution process (Factor 11).

- While the Debtors argue that the Ontario Superior Court of Justice as a whole is not a "specialized tribunal," *see* Debtors' Objection ¶ 46; Committee's Joinder ¶ 2, they do not even address the fact that the Canadian Litigation is pending before the Commercial List, a specialized part of that Court (Factor 4). *See* Motion ¶¶ 41-44.

- The Debtors and the Committee have not contested that the focus of the Canadian Litigation is squarely on the conduct of parties other than Sears Holdings, and have instead made only the milquetoast objection that Sears Holdings was more than a mere bailee or conduit with respect to the 2013 Dividend (Factor 6). *See* Motion ¶¶ 45-47; Debtors' Objection ¶¶ 53-54.

- The Debtors and the Committee do not contend that the Canadian Litigation would result in a subordinated claim or an avoidable judicial lien (Factors 8 and 9). *See* Motion ¶¶ 50-51.

- Perhaps most importantly, neither the Debtors nor the Committee contest that granting the relief requested would avoid costly and duplicative litigation (Factors 7 and 10). Motion ¶¶ 48-49, 52-54. Indeed, the Debtors admit that "lifting the stay may well eliminate the need for duplicative litigation for the Canadian Plaintiffs," and complain only that granting the requested relief will not resolve other litigation commenced by the Debtors. Debtors' Objection ¶ 70.

3.    In sum, the Motion clearly establishes at least a *prima facie* case that cause exists to lift the stay, shifting the burden to the Debtors to demonstrate that the stay must be maintained. *See Breitburn*, 571 B.R. at 65. The Debtors' responses—which range from assertions that the Canadian Plaintiffs are attempting to improperly advantage themselves, to claims that relief from the stay is only proper if it would eliminate all litigation in which the Debtors are embroiled—simply do not meet that burden. The stay should be modified as requested by the Canadian Plaintiffs.

B.    The Canadian Plaintiffs Are Not Seeking a "Distributional Advantage"

4.    Throughout their objections, the Debtors and the Committee repeatedly suggest that relief should be denied because the Canadian Plaintiffs are seeking to gain an improper "distributive advantage contrary to the principle of equality of distribution."  Debtors' Objection ¶ 25 (quoting *Breitburn*, 571 B.R. at 65).  Nothing could be further from the truth.

5.    Courts in this District and elsewhere in this Circuit have repeatedly recognized that prejudice to a debtor's estate can be effectively eliminated by granting relief from the stay only to the extent necessary to allow a creditor to liquidate its claim.  *See, e.g., In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *4 (Bankr. S.D.N.Y. Feb. 28, 2018) ("Sonnax Factor 7: Liquidating the Movants' claim in the FLSA Litigation will not prejudice the interests of other creditors because the Movants only seek to determine the amount of their claim against the Debtor."); *In re Cole*, 202 B.R. 356, 362 (Bankr. S.D.N.Y. 1996) (no prejudice because "[t]he bankruptcy court can limit stay relief to the liquidation of the amount of the Movant's unsecured claim, and require her to return to the bankruptcy court to enforce her judgment through the claims allowance process."); *In re David X. Manners Co. Inc.*, No. 15-51490 (JJT), 2018 WL 1997674, at *6 (Bankr. D. Conn. Apr. 26, 2018) ("Finally, Sonnax factor seven, whether litigation in another forum … would prejudice the interests of other creditors; and factor twelve, the impact of the stay on the parties and the balance of harms, both weigh in favor of allowing relief.  Any risk to creditors here is addressed by limiting the scope of stay relief to allow the state court to determine the issues up to the entry of judgment, but not enforcement, so that the interests of creditors here are not harmed."), *appeal dismissed sub nom. In re Manners*, No. 18CV778 (WWE), 2018 WL 3079470 (D. Conn. June 21, 2018); *In re Taub*, 413 B.R. 55, 65-66 (Bankr. E.D.N.Y. 2009) ("the risk of prejudice to creditors can be addressed by limiting the scope of stay relief" to liquidation of claims).

6

6. Here, the Canadian Plaintiffs have conscientiously minimized any potential prejudice to the Debtors and their estates by seeking only to liquidate their claims as against Sears Holdings through the Canadian Litigation—as courts have repeatedly found is appropriate. *See* Motion ¶ 32. They are not seeking authority to enforce their claims against Sears Holdings outside of these chapter 11 cases. *Id.* Accordingly, there is no risk that the Canadian Plaintiffs would be improperly advantaged by liquidating their claims through the Canadian Litigation.

7. The Debtors have, however, raised one well-founded point: this Court properly exercises control over potential awards of punitive damages against a debtor's estate. *See In re Beck Indus., Inc.*, 725 F.2d 880, 892 (2d Cir. 1984); Debtors' Objection ¶¶ 30-33. To ensure that granting relief from the stay will allow the Canadian Court to fully resolve all of the issues regarding the Canadian Litigation without the need for additional proceedings before this Court, the Canadian Plaintiffs represent that they will waive any claim for punitive or exemplary damages as against Sears Holdings. With that clarification and representation, the Debtors' concerns are fully resolved.

C.    Granting the Requested Relief Would Avoid Duplicative Litigation

8. If the stay is not modified as requested, the Canadian Plaintiffs will be required to try the same facts and law twice—first before the Canadian Court and then again before this Court—incurring substantial unnecessary costs and needlessly consuming judicial resources. This is precisely the situation that the seventh and tenth *Sonnax* factors are designed to avoid. *See, e.g., In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992) ("If the stay is not lifted, the Movants will have to try the same facts twice, once against the other defendants in the District Court and a second time against the Debtor in the Bankruptcy Court. Multiplicity of suits involving unnecessary time and expense on the part of Movants should be avoided."). Indeed, the Debtors admit that forcing the Canadian Plaintiffs—two of which represent an insolvency

7

estate—to endure purely duplicative litigation can be avoided by lifting the stay.  *See* Debtors'
Objection ¶ 70 ("Lifting the stay may well eliminate the need for duplicative litigation for the
Canadian Plaintiffs").  With that admission, the Debtors all but concede that the seventh and
tenth *Sonnax* factors support granting relief from the stay.

9.      Additionally, the Debtors' claim that litigating the same issues twice will be
cheaper for them is meritless.  The Debtors will incur costs in connection with resolving the
Canadian Plaintiffs' claims regardless of whether the determination is made by the Canadian
Court or this Court.  They are already incurring costs by employing Canadian Counsel to monitor
and, as necessary, participate in the Canadian Litigation.  If the Motion were to be denied, the
Debtors will continue to incur some of those costs, while still having to incur additional costs to
litigate the Canadian Plaintiffs' claims before this Court.  If the Motion were to be granted, the
Debtors would only incur costs of one litigation and would reap the savings arising from
proceeding in a jurisdiction with more limited discovery and lower legal costs generally.

10.      Attempting to sidestep their admission that denying the Motion would eliminate
duplicative litigation regarding the Canadian Plaintiffs' claims, the Debtors attempt to equate
those claims with the factually distinct claims in the Adversary Proceeding (as defined in the
Debtors' Objection), which are brought by—not against—the Debtors.  *See* Debtors' Objection
¶ 70 ("given the existence of the Adversary Proceeding, lifting the stay … will not avoid
duplicative litigation for the *Debtors*.") (emphasis in original).  But granting relief from the stay
will not eliminate the Debtors' need to litigate the Adversary Proceeding precisely because the
Canadian Litigation and the Adversary Proceeding are not duplicative of each other.  The two
proceedings involve different transactions, entered into by different entities, with different
controlling law, largely different witnesses, and with the limited exception of Lampert and ESL,

different defendants.  The Canadian Litigation is concerned exclusively with the allegedly improper approval and issuance of the 2013 Dividend by a Canadian corporation and the consequences, under Canadian law, of that approval and issuance.  *See* Monitor's Declaration Exs. G, H, I, & J (copies of the Monitor Statement of Claim, the Litigation Trustee Statement of Claim, the Plan Administrator Statement of Claim, and the Class Action Representative Statement of Claim, respectively).  The Adversary Proceeding, by contrast, does not concern the 2013 Dividend, does not involve Canadian law, and does not involve the Canadian Plaintiffs. Indeed, the Debtors have repeatedly admitted that their claims and those of the Canadian Plaintiffs arise from different operative facts:

- "[T]he claims in the Adversary Proceeding and the Dividend Litigation [*i.e.*, the Canadian Litigation] arise from different events…."  Debtors' Objection ¶ 29.

- "[T]he transactions at issue in the Dividend Litigation and the Adversary Proceeding differ…."  Debtors' Objection ¶ 70.

11.     In any event, it is not the Canadian Plaintiffs' burden to show that lifting the stay will somehow eliminate *every* piece of litigation in which the Debtors are engaged.  Rather, judicial economy is enhanced by any elimination of duplicative litigation.  *See S.E.C. v. Miller*, 808 F.3d 623, 634 (2d Cir. 2015) (quoting *In re Wyly*, 526 B.R. 194, 196 n.4 (Bankr. N.D. Tex. 2015)) ("From the standpoint of judicial economy, it likely would make the most sense for the District Court, in one coordinated proceeding, to liquidate the amount of alleged ill-gotten gains of the securities fraud that all relief defendants allegedly received and still possess."); *In re Lear Corp.*, No. 09-14326 (ALG), 2009 WL 3191369, at *2 (Bankr. S.D.N.Y. Sept. 24, 2009) (citing *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)).  By the Debtors' own admission, there will be less duplicative litigation if relief is granted.  *See* Debtors' Objection ¶ 70.

D.    The Canadian Court Is a Specialized Tribunal and Is
      Best-Positioned to Resolve the Canadian Plaintiffs' Claims

12.    The Debtors' characterization of the "Canadian Court" as a court of general jurisdiction, Debtors' Objection ¶ 46, misrepresents the specialized nature and role of the actual Canadian court that is currently presiding over the Canadian Litigation.  The Debtors' citation to the Ontario Superior Court of Justice is misplaced—the Canadian Litigation is actually proceeding before the Ontario Superior Court of Justice (**Commercial List**) (the "Commercial List").  The Commercial List is a specialized part of the Ontario Superior Court of Justice that (i) has a select "team of judges who have experience in managing complex commercial litigation,"[3] (ii) only hears complex commercial cases, and (iii) has mandatory jurisdiction over matters arising from or under the CCAA.  The Commercial List employs "special procedures" that expedite the hearing and determination of eligible matters.[4]  Accordingly, the Commercial List's purpose is limited—it was specifically established to preside over the exact types of claims that have been brought by the Canadian Plaintiffs, *i.e.* complex litigations, including those arising from a proceeding commenced under the CCAA.  Canadian courts have themselves recognized the Commercial List's specialized purpose and expertise in these fields of Canadian law.[5]  And as the Debtors acknowledge, when a court has a specialized knowledge of the issues

---

[3]    Superior Court of Justice:  Commercial List, *available at* http://www.ontariocourts.ca/scj/ civil/commercial-list/ (last visited May 14, 2019).

[4]    *See* Consolidated Practice Direction Concerning the Commercial List Part II: Matters Eligible for the Commercial List, *available at* http://www.ontariocourts.ca/scj/practice/ practice-directions/toronto/commercial/#Part_II_Matters_Eligible_for_the_Commercial_List (last visited May 14, 2019) (identifying actions which may be listed on the Commercial List); *see also id.* Part I: Introduction.

[5]    For example, the Court of Appeal for Ontario has held that "judges available to sit in the List are some of those who have experience, expertise and an interest by aptitude and inclination in corporate/commercial matters, of a complex or intricate nature." *Western Larch Ltd. v. Di Poce Mgmt. Ltd.,* 2013 ONCA 722*,* at para. 16 (quoting *771225 Ontario Inc. v. Bramco Holdings Co.,* [1992] O.J. No. 1772) (internal quotation marks omitted), a copy of which is

presented by a litigation, it is properly classified as a "specialized tribunal" for the purpose of the *Sonnax* analysis.  Debtors' Objection ¶ 46.

13.    Indeed, Canadian Courts have repeatedly recognized that "[t]he Commercial List is a specialized court" whose interpretations of commercial issues are entitled to "deference" even from Canadian appellate courts.  *Western Larch Ltd.*, 2013 ONCA 722, at para. 16 (citing *Housen v. Nikolaisen*, 2002 SCC 33, [2002] 2 S.C.R. 235).  The assertion that the Canadian Court is anything other than a specialized tribunal that is particularly well-suited for addressing the claims at issue in the Canadian Litigation is thus utterly unfounded.

14.    The Debtors skip over the fact that the Canadian Litigation has been designated to the Commercial List due to its highly complex nature and its inextricable connection to the CCAA proceedings of the Canadian Debtors.  Accordingly, the Debtors miss the mark in citing to decisions concerning generic civil lawsuits before state courts that, unlike the Commercial List, are unspecialized courts of general jurisdiction.  *Cf. Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, No. 05 Civ. 5704 (RPP), 2006 WL 2255071, at *10 (S.D.N.Y. Aug. 4, 2006) (addressing request to lift stay to allow litigation to proceed in a state court of general jurisdiction); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 WL 3249641, at *6 (Bankr. S.D.N.Y. Aug. 7, 2012) (same); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) (same).

15.    In any event, bankruptcy courts applying the *Sonnax* factors have found the fourth *Sonnax* factor to weigh in favor of lifting the automatic stay, even when the alternative tribunal is not "specialized," where the alternative tribunal nonetheless has the "necessary expertise."  *See,*

---

attached hereto as Exhibit A.  In particular, the "judges who sit on the list possess or develop expertise in insolvency" and "have specialized knowledge about commercial issues…." *Toronto Dominion Bank v. Bank of Nova Scotia*, 2013 ONSC 6029, at paras. 2 and 4(vii) (citations omitted), a copy of which is attached hereto as Exhibit B.

*e.g.*, *Mildred Deli*, 2018 WL 1136017, at *4 ("While the District Court is not a specialized tribunal, it is highly experienced in actions brought under the FLSA and New York Labor Law and is familiar with the particular issues involved in the FLSA Litigation."); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 WL 3423285, at *7 (Bankr. S.D.N.Y. Aug. 14, 2012) ("The state court is in the best position to determine whether a counterclaim is properly asserted as a defense to the foreclosure claim under applicable state law. Accordingly, the fourth *Sonnax* Factor weighs in favor of granting relief from the automatic stay…."). Accordingly, even if the Court determines that the Commercial List is not a "specialized tribunal," the fourth *Sonnax* factor still weighs in favor of lifting the automatic stay because, as a Canadian court well-versed in determining Canadian law claims such as those asserted in the Canadian Litigation, the Commercial List is in "the best position" to determine the Canadian Plaintiffs' claims. The Debtors have conceded as much insofar as they do not contest that (a) the Canadian Litigation involves only Canadian law-based causes of action, or (b) the Canadian Court is indisputably better situated than this Court to evaluate such causes of action.

16.    Allowing the Canadian Court to employ its specialized expertise is particularly appropriate given that many of the claims at issue involve unsettled or particularly complex issues of Canadian law. *See In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 2017). The Debtors acknowledge that the fourth *Sonnax* factor, at a minimum, may weigh in favor of granting relief if the Canadian Litigation "involves any such [unsettled] question of Canadian law." Debtors' Objection ¶ 47 n.4 (citing *Breitburn*, 571 B.R. at 68). They contend, incorrectly, that the Canadian Plaintiffs have failed to assert the existence of any such unsettled questions. *See id.* In fact, the Canadian Plaintiffs repeatedly asserted that the actions involved unique and complex questions of Canadian law. *See* Motion ¶¶ 4, 37 n.38, 41, 44. For example, as the

Monitor has already stated publicly through its Twenty-Seventh Report, the Monitor Action

turns on unsettled questions of Canadian law:

> The Monitor is of the view that there is a reasonable basis to
> conclude that Section 96 of the [Bankruptcy and Insolvency Act]
> can operate in combination with Section 101 of the [Bankruptcy
> and Insolvency Act] to remedy dividend transactions that adversely
> impact the assets of the estate available to creditors.  The Monitor
> notes, however, that Canadian jurisprudence on this point is very
> limited.  The only Canadian decision the Monitor has identified
> that deals directly with this point supports the conclusion that a
> dividend can be found to be a transfer at undervalue under a
> predecessor provision to Section 96 notwithstanding that
> concurrent operation of the predecessor provision to Section 101 of
> the BIA.  The Monitor has identified no Canadian precedent
> addressing the application of Section 96 to the payment of
> shareholder dividends.[6]

17.    The Plan Administrator Action likewise involves emerging questions of Canadian

law as it asserts claims for breach of fiduciary duties relating to the administration of the

Canadian Plan.    While recent Canadian jurisprudence has confirmed that pension plan

administrators owe fiduciary duties to pension plan members pursuant to Canadian common law

(as well as by statute), *Sun Indalex Fin., LLC v. United Steelworkers*, 2013 SCC 6, a copy of

which is attached hereto as Exhibit C, there is limited jurisprudence applying the scope of these

duties within the pension context, and the application of these duties remains an evolving area of

Canadian law.  The scope of the duties owed by Sears Canada and Sears Canada's directors as

prescribed by Canadian law, the application of such duties to the conduct of Sears Canada and its

directors, the responsibility of shareholders of Sears Canada (including Sears Holdings) for

knowing assistance and/or knowing receipt relating to breaches of such duties, and the remedies

---

[6]    *Sears Canada Reports: Twenty Seventh Report of the Monitor*, http://cfcanada.
fticonsulting.com/searscanada/docs/Motion%20Record%20and%2027th%20Report%20of%
20the%20Monitor%20(TUV%20Approval).pdf (last visited May 15, 2019).

available to the Plan Administrator under Canadian law are all central issues that will need to be determined as part of the Plan Administrator Action.

18.     In sum, the Canadian Litigation is pending before a specialized tribunal with particular expertise in complex questions of Canadian insolvency and corporate law.  Given the unsettled nature of certain of the issues raised by the Canadian Litigation, the resolution of which could be of great relevance to the continued development of several areas of substantive Canadian law, it is especially appropriate to defer to the expertise of the Canadian Court and lift the automatic stay.

E.     The Canadian Plaintiffs' Claims Are Not "Garden Variety" and Granting the Requested Relief Will Not "Open the Floodgates" to Similar Claims

19.     The Debtors invent a parade of horribles that will purportedly occur if the automatic stay is modified to the limited extent requested in the Motion.  In particular, the Debtors speculate that granting the Motion "may open the floodgates," forcing the Debtors to expend resources dealing with "other litigants with garden variety claims."  Debtors' Objection ¶ 41 (quoting *In re Motors Liquidation Co.*, No. 10 Civ. 36 (RJH), 2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010)).  This unsupported and generalized argument—which could be made without modification in opposition to any motion for relief from the automatic stay—is unfounded, and ignores the fact that the Canadian Plaintiffs are uniquely situated.

20.     The Canadian Plaintiffs are fiduciaries and/or court officers charged under Canadian law to act on behalf of numerous constituents: a group of affiliated Canadian insolvency estates and their stakeholders (the Monitor and the Litigation Trustee), a Canadian pension plan and its individual beneficiaries (the Plan Administrator), and a potential class of harmed Canadian entities certified under Canadian law (the Class Action Representative).  *See* Monitor's Declaration Exs. E, F.

14

21.    Indeed, courts in this District have regularly recognized that a monitor appointed under the CCAA "act[s] with fiduciary duties to all stakeholders."[7] *EMA Garp Fund v. Banro Corp.*, No. 18 Civ. 1986 (KPF), 2019 WL 773988, at *1 (S.D.N.Y. Feb 21, 2019).   Moreover, two of the Canadian Plaintiffs—the Monitor and the Litigation Trustee—come before this Court with orders of the Canadian Court "request[ing] the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in … the United States" in carrying out their respective duties.   Monitor's Declaration Ex. C ¶ 20, Ex. E ¶ 22.   Indeed, in authorizing the Monitor to pursue transfer at undervalue claims, the Canadian Court specifically requested that this Court provide assistance.   *See* Monitor's Declaration Ex. F ¶ 14 ("THIS COURT HEREBY REQUESTS the aid and recognition of any court … in the United States … to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order, including the U.S. Bankruptcy Court.") (emphasis in original).   Comity and assistance are particularly appropriate, where, as here, it is sought by the courts or representatives of Canada, a sister common law jurisdiction, in service of a fundamentally fair proceeding, such as a CCAA action.   *See EMA Garp Fund*, 2019 WL 773988, at *6 (citing *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 698-99 (Bankr. S.D.N.Y. 2010); *E&L Consulting, Ltd. v. Doman Indus. Ltd.*, 360 F. Supp. 2d 465, 470 (E.D.N.Y. 2005); *Tradewell, Inc. v. Am. Sensors Elecs., Inc.*, No. 96 Civ. 2474 (DAB), 1997 WL 423075, at *4 (S.D.N.Y. July 29, 1997)) (dismissing U.S. litigation in favor of CCAA proceedings because "CCAA proceedings satisfy fundamental standards of procedural fairness."); *Cornfield v. Investors Overseas Servs., Ltd.*, 471

---

[7]    For this same reason, the Debtors' characterization that Canadian Plaintiffs "are obviously self-interested," and cannot overcome the "judgment of the Debtors, who are charged with representing all stakeholders," is inappropriate.   Debtors' Objection ¶ 59.   The Canadian Plaintiffs, as much as the Debtors, are charged with acting on behalf of diverse stakeholders in an insolvency estate.   *See EMA Garp Fund*, 2019 WL 773988, at *1.

F. Supp. 1255, 1259 (S.D.N.Y. 1979) (quoting *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624, 630 (2d Cir. 1976)) ("Canada is 'a sister common law jurisdiction with procedures akin to our own,' and thus there need be no concern over the adequacy of the procedural safeguards of Canadian proceedings."), *aff'd,* 614 F.2d 1286 (2d Cir. 1979).

22.    Given the consistent recognition by Courts in this District that Canadian proceedings under the CCAA are fair, and that their representatives are entitled to assistance, this Court should lift the automatic stay to ensure that the Canadian Plaintiffs can fulfill their duties to their stakeholders by resolving one of the few remaining issues in the Sears Canada insolvency proceedings.[8]  The argument that there is an "avalanche" of similarly situated court officers waiting in the wings to bring similar motions if relief is granted to the Canadian Plaintiffs is pure fiction.

F.    The Canadian Litigation Primarily Involves Third Parties

23.    The Debtors do not, because they cannot, contest that the overwhelming majority of the defendants in the Canadian Litigation are non-Debtors.  Nor do they contest that the allegations underlying the Canadian Litigation focus primarily upon the conduct of those non-Debtors.  Instead, the Debtors would have this Court limit the sixth *Sonnax* factor—whether the action primarily involves third parties—to those instances where the debtor is a bailee or a conduit.  *See* Debtors' Objection ¶¶ 53, 54.  That cramped reading is inconsistent with the Second Circuit's wording, and narrower than the interpretation given to that factor by other courts.  The factor only weighs against granting relief "if the debtor is the main party to litigation."  *Residential Capital, LLC*, 2012 WL 3249641, at *5.  For example, in granting a

---

[8]    The Canadian Debtors have completed an orderly wind down of their operations.  *See* Motion ¶ 13.  Aside from one real estate asset, the Canadian Litigation is the last remaining asset of the Canadian Debtors' estates to be monetized.  Recoveries from the Canadian Litigation are expected to be a primary driver of distributions to Canadian stakeholders.

16

motion to lift the automatic stay to allow a Fair Labor Standards Act litigation to proceed, this court found that the sixth *Sonnax* factor weighed in favor of granting relief where "third parties are involved." *Mildred Deli*, 2018 WL 1136017, at *4 ("Although the Debtor alleges the FLSA Litigation does not primarily involve third parties, they admit that third parties are involved."). Here, where the transaction at the heart of all the causes of actions raised in the Canadian Litigation is alleged to have been orchestrated by non-Debtor defendants and with non-Debtor defendants outnumbering potential Debtor defendants fourteen to one, there is no question that the action "primarily" involves non-Debtors. *See* Motion ¶ 47.

G.    Relief from the Stay Is Appropriate Now; Delay Will Squander a Time-Sensitive Opportunity to Integrate Sears Holdings into the Canadian Litigation

24.    Granting the Canadian Plaintiffs' request for relief now—when the Canadian Litigation is ready to proceed but before it is too late to join Sears Holdings—represents a time-sensitive opportunity to achieve substantial procedural and cost efficiencies. Nevertheless, perhaps the most-repeated refrain in the Debtors' and the Committees' respective objections is that granting relief from the stay is premature because the Debtors (and the Committee) are not yet able to say whether unsecured creditors will receive a distribution. *See* Debtors' Objection ¶¶ 35, 63; Committee's Joinder ¶ 6. There are at least three fundamental flaws in that reasoning.

25.    First, further delay in joining Sears Holdings to the Canadian Litigation is not a viable option. The Canadian Litigation is already underway. *See* Monitor's Declaration ¶ 18. Trial is currently scheduled to begin on February 3, 2020. *See* Monitor's Declaration ¶ 19. The Canadian Court had also scheduled a number of interim dates leading up to that fixed trial date. For example, motions to strike were initially scheduled to be heard on April 17 and 18, 2019. However, at the request of Sears Holdings, those dates were adjourned by the Canadian Court pending resolution of the Motion in order to afford Sears Holdings the opportunity to make

17

submissions if the Motion is granted.[9]  That limited delay cannot be extended indefinitely.  The

trial remains calendared for February 3, 2020, and the Canadian Litigation needs to resume

progress in short order.  If relief is not granted now and Sears Holdings is not promptly joined,

the opportunity to incorporate it into the Canadian Litigation will be irretrievably lost.[10]

26.    Second, neither the Debtors nor the Committee has offered any evidence to

support the remarkable assertion that "[g]ranting the Canadian Plaintiffs' Lift Stay Motion is

premature—if not entirely futile—because in any scenario … the recovery on such claims is

likely to be *de minimis* at best."  Committee Joinder ¶ 6.  Indeed, the Amended Disclosure

Statement projects meaningful recoveries for unsecured creditors (although the recoveries

actually realized will, of course, depend on the outcome of the Adversary Proceeding, among

other factors).  *See* Amended Disclosure Statement at p. 19; Amended Disclosure Statement Ex.

C at 5, 6.

27.    Third, the suggestion that it may not be worthwhile, when all is said and done, for

unsecured creditors such as the Canadian Plaintiffs to press their claims, or for the estates to

defend against claims that they deem improper, is at odds with the entire manner in which the

Debtors and the Committee have conducted themselves in these cases.  As this Court is well

aware, the Committee initially sought standing to bring the Adversary Proceeding precisely

because they believed that it could create meaningful value for creditors.[11]  Ultimately, the

---

[9]    A true and correct copy of the Canadian Court's April 18, 2019 Order granting Sears
Holdings' request to adjourn certain dates is attached hereto as Exhibit D.

[10]    There may be additional cost savings available to the Debtors' estates from lifting the stay.
Setting aside the fact that Canada is a generally less-expensive jurisdiction in which to
litigate, if relief from the stay is granted, Sears Holdings would be one of several defendants
in the Canadian Litigation and, consequently, could share some of the costs of defense with
its co-defendants rather than bearing the full costs of that litigation.

[11]    *See Motion of the Official Committee of Unsecured Creditors of Sears Holding Corporation,
et al. for Entry of an Order Granting (I) Leave, Standing, and Authority to Commence and*

Debtors, with the Committee's consent, commenced the Adversary Proceeding, presumably after conducting a thorough investigation of the claims asserted therein and determining in their business judgment that they would create value for the estates. *See Sears Holdings Corp. v. Lampert*, No. 19-08250 (Bankr. S.D.N.Y. Apr. 18, 2019), Docket No. 1. Even now, the Committee is requesting that the Debtors amend the Adversary Complaint to include additional defendants and causes of action. *See* Committee's Joinder ¶ 2 n.3. They would not be, or at the very least should not be, taking any of these steps if they did not believe that there is likely to be meaningful value for creditors such as the Canadian Plaintiffs. It is disingenuous and self-serving for the Debtors and the Committee to assert that it is too soon for the Debtors to know whether it is worth defending against the Canadian Plaintiffs' claims while at the same time asking the Canadian Plaintiffs and other creditors to accept a proposed chapter 11 plan that would entail extraordinary expense in relation to the Adversary Proceeding.

## CONCLUSION

WHEREFORE, the Canadian Plaintiffs respectfully request that the Court grant the Motion and enter an order, substantially in the form attached to the Motion as Exhibit "A."

---

*Prosecute Certain Claims on Behalf of the Debtors' Estates and (II) Non-Exclusive Settlement Authority in Respect of Such Claims* [Docket No. 1765], Ex. C ("As the Creditors' Committee has repeated countless times, there exist extremely valuable causes of action against ESL and related entities that are worth hundreds of millions of dollars to the Debtors' estates….")

Dated: May 17, 2019
New York, New York

_/s/  Eric Daucher_

Eric Daucher
Francisco Vazquez
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
eric.daucher@nortonrosefulbright.com
francisco.vazquez@nortonrosefulbright.com

_Counsel for FTI Consulting Canada Inc.,_
_in its capacity as court-appointed monitor for_
_Sears Canada Inc. and certain of its affiliates_

-and-

_/s/  Neil J. Oxford_

Neil J. Oxford
Dustin P. Smith
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
neil.oxford@hugheshubbard.com
dustin.smith@hugheshubbard.com

_Counsel for the Honourable J. Douglas_
_Cunningham, Q.C., as court-appointed litigation_
_trustee for the Canadian Debtors and Counsel_
_for 1291079 Ontario Limited as class_
_representative for the potential class of all_
_Sears Hometown Dealer stores_

-and-

_/s/  Laura R. Hall_

Laura R. Hall
Joseph Badtke-Berkow
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
laura.hall@allenovery.com
joseph.badtke-berkow@allenovery.com

_Counsel for Morneau Shepell Ltd., in its capacity_
_as administrator of the Sears Canada Inc._
_Registered Pension Plan_