# **EXHIBIT B**

CITATION: The Toronto Dominion Bank v. Bank of Nova Scotia, 2013 ONSC 6029
**COURT FILE NO.:** CV-13-483985
**DATE:** 20130925

**SUPERIOR COURT OF JUSTICE – ONTARIO**

**COMMERCIAL LIST**

| | |
|---|---|
| **RE:** | The Toronto Dominion Bank, Applicant |
| | **AND:** |
| | Bank of Nova Scotia, Respondent |
| **BEFORE:** | D. M. Brown J. |
| **COUNSEL:** | B. van Niejenhuis, for the Applicant |
| | B. Harrison, for the Respondent |
| **HEARD:** | September 20, 2013 |

**REASONS FOR DECISION**

**I.  Motion to transfer a derivatives contract proceeding to the Toronto Region Commercial List under the "basket clause"**

[1]   The request by The Toronto Dominion Bank to transfer this proceeding to the Toronto Region Commercial List initially came before me at a 9:30 appointment. Counsel for the Bank of Nova Scotia opposed the request and asked for an opportunity to file materials in that regard. As a result, I heard a formal motion to transfer at a further 9:30 appointment on September 20. Notwithstanding the vigorous submissions of BNS, I granted the motion to transfer, with written reasons to follow. These are those reasons.

**II.  General principles governing transfer requests to the Commercial List**

[2]   The Commercial List is not a separate court, but a group of Toronto Region judges assigned to hear insolvency and commercial matters. The List possesses several key attributes: (i) the judges who sit on the list possess or develop expertise in insolvency and commercial disputes; (ii) the List affords quick access to judges by litigants to meet the needs of the "real-time" nature of many of the cases on it; (iii) to that end the 9:30 system of appointments enables parties to get before a judge within 24 hours, when required; and, (iv) a significant number of the proceedings on the List are case managed by judges through case conferences to ensure the fair, timely and cost-effective adjudication or resolution of the disputes on their merits.

[3]     However, the flexibility and accessibility offered by the Commercial List, when combined with the modest number of judges assigned to the List, necessitates that some limits be placed on the types of cases which may be heard on it. To that end the Commercial List Practice Direction identifies the matters eligible to be heard on the List. In addition to the proceedings commenced under or relating to specified statutes, paragraph 1(m) of the Practice Direction contains a "basket clause" which reads as follows:

> 1(m).  Such other commercial matters as a judge presiding over the Commercial List may direct to be listed on the Commercial List, including: suitably complex cases under the *Arthur Wishart Act* (Franchise Disclosure), suitable commercial matters under the *International Commercial Arbitration Act* (Ontario), *Arbitration Act,* 1991 (Ontario) and *Commercial Arbitration Act* (Canada). (See *771225 Ontario Inc. v. Bramco Holdings Co. Ltd.*, [1993] O.J. No. 1772 and *Maple Valley Acres Limited v. CIBC*, [1992] O.J. No. 2610), *Piedra v. TSX Inc.*, [2009] O.J. No. 5351 (Div. Ct.)).
>
> In considering whether to make a direction under sub-paragraph 1(m), the judge may take into account the current and expected caseload of matters listed on the Commercial List.

[4]     As can be seen from the language of the basket clause, a broad discretion exists in determining which matters may be transferred on to the List. How that discretion should be exercised has been addressed over the years in the case law:

(i)      As stated by Lederman, J., sitting as a Divisional Court judge, in *Piedra v. TSX Inc.*:

> "The Practice Direction that governs what matters may be on the Commercial List mandates an 'in essence' test, namely, the matter must, in essence, involve a commercial statute or a commercial matter";[1]

(ii)     Whether the degree of commercial issues amounts to being substantial or, "in essence", so as to be eligible for listing, is within the discretion of the motions judge. No hard and fast rules govern the assessment of sufficiency of the commercial nature of the action in question;[2]

(iii)    Judges usually first consider whether the matter is commercial in nature, and then may go on to consider such factors as the complexity of the subject matter and whether a number of parties are involved;[3]

(iv)    As Cumming J. once pointed out.: "Overall, the basket clause has been applied broadly and with flexibility";[4]

---

[1] 2009 CarswellOnt 7823 (Div. Ct.), para. 10.
[2] *Ibid.*, para. 18.
[3] *Gyles v. Mytravel Canada Holidays Inc.,* [2006] O.J. No. 2497 (S.C.J.), para. 8.

- (v) Factors other than the strict subject-matter of a proceeding, such as the level of the workload on the Commercial List at any point of time, may enter into the decision whether to transfer a matter on to the List. As stated by Blair J., as he then was, in *Maple Valley Acres Ltd. v. Canadian Imperial Bank of Commerce*, in turn quoting Farley J.:

    > As Farley J. pointed out, in *771225 Ontario Inc. v. Bramco Holdings Co.*, [1992] O.J. No. 1772, there is a flexibility in the application of the basket clause. What fruit is selected for the basket may depend somewhat on how heavily loaded the Commercial Lift wagon is with work at a given time. It is not necessary, however, that the selection be based on the ejusdem generis principle of similarity in nature to the enumerated items in subclauses (a) to (i). The practice on the List is an evolving one, and an ability to analogize between the circumstances of the case sought to be transferred and the enumerated heads may be of assistance to the Commercial List judge hearing the motion for transfer. If the matter is a commercial one, and if it is of sufficient complexity in terms of subject matter or of procedure or in terms of the numbers of parties involved -- or a combination of these varying factors -- it will be considered.[5]

- (vi) As well, the ability of an urgent matter to be heard elsewhere in the Court or the need for a proceeding to be subject to the style of case management practised on the Commercial List may enter into the consideration of a transfer request;

- (vii) Further, as Lederman J. observed in the *Piedra* case:

    > There is no disadvantage to a party in having the case listed on the Commercial List. In fact, procedures on the Commercial List allow for greater expediency. Moreover, the judges on the Commercial List not only have specialized knowledge about commercial issues but are part of the Superior Court of Justice and are generalists as well, quite capable of deciding issues of negligence and causation at common law.[6]

- (viii) Finally, the location of the parties can play an important role in any decision to transfer a matter to the Commercial List. Paragraph 8 of the Practice Direction states:

    > Only Toronto Region matters can be listed on the Commercial List (unless, for special reasons, authorization is given by the supervising judge). Aside from urgent insolvency matters, there should be a material connection to the Toronto

---

[4] *Ibid.*, para. 11.
[5] (1992), 13 C.P.C. (3d) 358 (Ont. Gen. Div.), p. 361.
[6] *Piedra, supra.*, para. 21.

Region over and above the location of counsel. Matters listed on the Commercial List shall only be heard in Toronto.

### III.   Application of these principles to the facts of the present case

[5]   As pleaded in the Notice of Application, the dispute between TD and BNS involves two series of equity derivative transactions – specifically, cash settled equity basket options – entered into by the parties in 2009.  One of the equities in the basket covered by two standard ISDA confirmations was EnCana Corporation.  EnCana's equity was restructured after the parties had entered into the derivative transactions.  TD pleads that the parties had agreed upon a method to adjust the settlement mechanisms of both derivative transactions in light of EnCana's re-organization, but TD discovered in 2012, when some transactions were settled, that BNS had changed the adjustment mechanism.  At least that is the pleading made by TD; no doubt BNS will give its side of the story in its responding materials.

[6]   Disputes involving the interpretation or performance of derivative transactions generally are heard on the Commercial List involving, as they do, commercial contracts at the more complex end of the spectrum.  Given that subject-matter of the present application, I concluded that it was appropriate to transfer TD's application to the Commercial List.

[7]   I ordered that the parties appear before me on October 2, 2013, at a 9:30 appointment, to finalize a schedule and to set a hearing date.

[8]   Since this motion only consumed 10 minutes on a 9:30 appointment, I made no order as to costs.

2013 ONSC 6029 (CanLII)

D. M. Brown J.

**Date**: September 25, 2013