Hearing Date and Time: May 21, 2019 at 10:00 a.m. (Eastern Time)

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Gregg M. Galardi
Sam N. Ashuraey
Kimberly J. Kodis

*Attorneys for Apex Tool Group, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
In re                                            :    Chapter 11
                                                 :
SEARS HOLDING CORPORATION, *et al.*,[1]          :    Case No. 18-23538 (RDD)
                                                 :
                    Debtors.                     :    (Jointly Administered)
---------------------------------------------------------x

# REPLY OF APEX TOOL GROUP, LLC
# TO DEBTORS' OMNIBUS OBJECTION TO VENDORS' MOTIONS FOR
# ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Apex Tool Group, LLC ("Apex"), by and through its undersigned counsel, hereby submits this Reply (i) to the *Debtors' Omnibus Objection to Vendors' Motions for Allowance and Payment of Administrative Expense Claims* [D.I. 3883] (the "Omnibus Objection") and (ii) in further support of Apex's motion [D.I. 1491] to allow an administrative expense claim pursuant to sections 503(b)(1)(A) and 503(b)(9) of the Bankruptcy Code and to compel the Debtors to immediately pay such claim to the extent it is allowed under section 503(b)(1)(A) and the supplement thereto [D.I. 3667] (together, the "Apex Motion").[2]  In support hereof, Apex states as follows:

## PRELIMINARY STATEMENT

1.      From the very outset of these chapter 11 cases, the Debtors requested that Apex and other vendors continue to ship goods in further support of the Debtors' reorganization efforts. *See* Shipping Motion at ¶ 33 ("Without the support of their vendors, the Debtors will incur significant costs and lose valuable business relationships to the detriment of all parties in interest."). Critically, in furtherance of this request, the Debtors assured vendors that they would be fully paid in the ordinary course of business for goods shipped but not yet delivered to the Debtors by the Petition Date (the "In-Transit Goods"), even though the sale of such goods was based on pre-petition orders. *See* Shipping Motion at ¶ 20 "([T]he Debtors seek an order confirming administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed Prepetition Orders and authorizing the Debtors to satisfy such obligations in the ordinary course of business."). Now, however, after obtaining tens of millions of dollars of goods, the Debtors seek to avoid paying for such goods, contending that the post-petition delivery of goods that were purchased by the Debtors prepetition does not entitle vendors to administrative expense treatment under Bankruptcy Code section 503(b)(1). *See* Omnibus Objection at ¶ 1. As demonstrated below,

---

[2]    All capitalized terms used herein but not otherwise defined have the meanings provided in the Apex Motion.

2

the Debtors may not reverse their position that the goods delivered post-petition to the Debtors as debtors in possession are administrative expenses claims that must now be paid pursuant to Bankruptcy Code section 503(b)(1).[3]

## ARGUMENT

I.  **Goods Delivered After The Petition Date In Reliance On The Shipping Orders Are Entitled To Administrative Expense Treatment**

2. Despite their arguments in the Shipping Motion to the contrary, *see* Shipping Motion at ¶¶ 19-20, the Debtors now contend that none of the vendors have satisfied their burden of showing that the post-petition delivery of goods satisfies the requirements of Bankruptcy Code section 503(b)(1). This is simply not the case.

3. As the Debtors acknowledge, Apex and other vendors are entitled to an administrative expense claim under Bankruptcy Code section 503(b)(1), if their sale of goods to the Debtors constituted an actual, necessary cost or expense of preserving the Debtors' estates. *See* 11 U.S.C. § 503(b)(1); Omnibus Objection at ¶ 12. To demonstrate this, Apex and the other vendors must show two things: (i) that there was a transaction with the Debtors as debtors in possession and (ii) the transaction provided consideration that was supplied to and beneficial to the Debtors as debtors in possession in the operation of their business. *See id.* (citing *Adelphia Bus. Solutions, Inc.,* 296 B.R. 656, 661-62 (Bankr. S.D.N.Y. 2003)). Here, both elements were met.

    A.  **The In-Transit Goods Provided The Debtors And Their Estates With An Actual Benefit**

---

[3] Apex is not presently seeking relief on its request for payment under Bankruptcy Code section 503(b)(9) and reserves its right to contend that any goods delivered to the Debtors on or after the Petition Date are entitled to administrative expense treatment under that section if they are not granted administrative expense treatment under Bankruptcy Code section 503(b)(1).

3

4.         The Debtors have not, and cannot, dispute that the post-petition delivery of goods satisfies the second part of the test for a Section 503(b)(1) administrative expense claim.

5.         The Debtors do not, and cannot dispute that they (i) received the goods after the Petition Date; (ii) "accepted" the delivery of the goods after the Petition Date, *see* § 2-606.*What Constitutes Acceptance of Goods.*, U.C.C. Text § 2-606 ("Acceptance of goods occurs when the buyer [among other things] fails to make an effective rejection … but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them"); (iii) received credit under the Debtor in Possession financing facilities for such goods after the Petition Date, *see Final Order (I) Authorizing The Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection To The Prepetition Secured Parties; (III) Modifying The Automatic Stay; and (IV) Granting Related Relief* [D.I. 955]; and (iv) ultimately obtained the sale price for such goods after the Petition Date. Therefore, the Debtors cannot contend that the goods delivered to and accepted by the Debtors on and after the Petition Date provided the Debtors with no actual benefit to their estates and the operations of their business.

        **B.**         **The In-Transit Goods Were Provided To The Debtors Pursuant To A Post-Petition Transaction**

6.         In response to Apex and the vendors, the Debtors contend that there was no post-petition transaction with the Debtors as debtors in possession because the Debtors placed the orders prepetition, the Debtors took title to the goods prepetition and their obligation to pay for the goods arose prepetition. *See* Omnibus Objection at ¶ 5. While this might be true, it is not sufficient to prove there was no post-petition transaction. The Debtors must acknowledge the incontestable fact that they induced vendors not to exercise their legal rights to interfere and stop the post-petition delivery of In-Transit Goods by seeking and obtaining the Shipping Orders.

7. As a number of courts within this district have concluded, a post-petition transaction exists if a debtor in possession induces a third party to take action. *E.g.*, *In re Enron Corp.*, 279 B.R. 695, 705 (Bankr. S.D.N.Y. 2002) (holding services performed by creditor must have been "induced" by the debtor-in-possession, not the prepetition debtor) performed *In re WorldCom, Inc.*, 308 B.R. 157, 166 (Bankr. S.D.N.Y. 2004) (same); *In re AppliedTheory Corp.*, 312 B.R. 225, 238 n. 59 (Bankr. S.D.N.Y. 2004) (same). There is no question that the Debtors induced vendors to continue shipping goods and, perhaps more importantly, to stand down on any attempt to interrupt or interfere with the delivery of the In-Transit Goods.

8. As set forth in the Shipping Motion, the Debtors assured vendors that, despite goods having been ordered prepetition, the vendors would be paid for goods delivered post-petition in the ordinary course. *See* Shipping Motion at ¶ 32 (citing 11 U.S.C.§ 503(b)(1)(A); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d. Cir. 1993); In *re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 481 (Bankr. S.D.N.Y. 2006). Furthermore, although the Debtors threatened that any vendor stopping shipment would be violating the automatic stay provisions of Bankruptcy Code section 362, the Debtors fully understood that vendors had the right to seek stay relief to reclaim the goods pursuant to Bankruptcy Code section 546(c) and the applicable provisions of the Uniform Commercial Code, and that the Debtors themselves had the right to inspect the goods and reject them. Thus, the post-petition delivery and acceptance of goods constituted a consensual compromise of vendors' legal right to reclaim goods in exchange for post-petition payment. This, along with the Debtors' acceptance of such goods, constituted a post-petition transaction intended by the Shipping Motion to avoid post-petition disruption to the Debtors' business and the incurrence of significant legal costs by the Debtors' estates. *See* Shipping Motion at ¶ 33.

9.     Nor may the Debtors now take a contrary legal position. Indeed, they are estopped from doing so. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8 (2000). As the Supreme Court noted in *New Hampshire v. Maine,* "courts have uniformly recognized that its purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." 532 U.S. 742, 749–51 (2001) (internal citations and quotation marks omitted).

10.    As set forth above, relying on *Chateaugay* and *A.C.E. Elevator*, the Debtors contended that goods delivered on or after the Petition Date were entitled to administrative expense treatment. The Shipping Orders provide that "[a]ll undisputed obligations of the Debtors arising from the postpetition delivery or shipment by *[sic]* of goods under the Prepetition Orders[4] are granted administrative expense priority status pursuant to section 503(b)(1)(A)." Interim Shipping Order at ¶ 8; Final Shipping Order at ¶ 8. Thus, both the Shipping Motion and Shipping Orders state in clear and unambiguous terms that goods ordered prepetition are entitled to administrative expense status if they are either shipped ***or delivered*** post-petition. Indeed, by distinguishing between "shipped" and "delivered," the Shipping Orders make clear that goods shipped prepetition but delivered postpetition are entitled to administrative expense status under section 503(b)(1)(A). And this conclusion is entirely consistent with this Court's statement that "delivered," as used in the Shipping Orders simply has the "colloquial meaning." 11/15/2018 Hr'g Tr. at 123:1-12 .

11.    Furthermore, although judicial estoppel does not require a showing of a benefit or unfair advantage to the party taking a subsequent inconsistent position – mere inconsistency is sufficient – courts have considered this to be a factor in favor of applying judicial estoppel. *See,*

---

[4] "Prepetition Orders" is defined as "$162 million in Merchandise [that the Debtors ordered prior to the Petition Date] that will not be delivered until on or after the Commencement Date." Shipping Motion at ¶ 19.

*e.g.*, *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014). Here, the entry of the Shipping Orders and the assurance those orders provided vendors undoubtedly benefited the Debtors, as discussed above. The benefits the Debtors gained from entry of the Shipping Orders, in addition to being clear benefits under section 503(b)(1)(A), demonstrate that the Debtors are attempting to gain an unfair advantage by gaming the judicial process and now arguing that the In-Transit Goods are not entitled to administrative expense status.

12. And finally, although the Debtors cite cases in support of their legal position that a vendor who delivers goods to a carrier prepetition is not entitled to a 503(b)(1)(A) claim, the factual circumstances in which those rulings arose are readily distinguishable. *First,* in none of those cases had the debtor sought and obtained an order authorizing the debtor to pay for goods that were shipped or delivered post-petition in the ordinary course. *Second*, all of the applicable cases were decided prior to the 2005 enactment of the Bankruptcy Abuse Prevention and Consumer Prevention Act, and thus simply do not address the fact that Congress has sought to protect the sellers of goods by providing them an administrative expense priority for goods a debtor receives within the 20 days before bankruptcy. *See* 11 U.S.C. § 503(b)(9).[5]

13. Therefore, Apex and the other vendors' post-petition delivery of goods provided the Debtors with an actual benefit, and the Debtors should be directed to pay the vendors the costs of those goods under Bankruptcy Code section 503(b)(1) because they are the actual and necessary costs arising out of a post-petition transaction with the Debtors.

II. **Under *World Imports* Post-Petition Delivery Is Sufficient For Administrative Treatment Under Bankruptcy Code Section 503(b)(1)**

---

[5] The only case cited by the Debtors decided after 2005, *In re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 475 (Bankr. S.D.N.Y. 2006), is a decision on the priority of pension plan payments and is not relevant to the In-Transit Goods.

14. Admittedly, the Third Circuit Court of Appeals decision in *In re World Imports, Ltd.*, 862 F.3d 338 (3d Cir. 2017), is neither binding on this Court nor dispositive on the issue of whether the post-petition delivery of goods to the Debtors is entitled to administrative expense treatment under Bankruptcy Code section 503(b)(1). As numerous parties have argued, however, principles of statutory construction require that the subsections of Bankruptcy Code section 503(b) should be interpreted consistently and thus, the Court is required to read 503(b)(1) as entitling vendors who deliver good into the physical possession of a debtor post-petition to an administrative expense. Apex supports this interpretation.

15. If, however, the Court disagrees, and concludes that Bankruptcy Code section 503(b)(1) is to be interpreted independently, Apex maintains that a broader reading of section 503(b)(9) will be required to realize Congress' intent to protect the sellers of goods than the reading given to Bankruptcy Code section 503(b)(9) by the Third Circuit in *World Imports*. Accordingly, Apex reserves its right to contend that "receipt" occurred when the goods were provided to the shippers and title passed for the purposes of Bankruptcy Code section 503(b)(9).

### III. No Evidentiary Hearing Is Necessary

16. The Debtors further seek to delay the payment of administrative expense claims by contending that an evidentiary hearing is necessary with respect to any arguments regarding inducement. The evidentiary record is presently sufficient to determine that Apex holds an administrative claim. As set forth above, the facts regarding delivery and inducement cannot be reasonably disputed and the Debtors' reliance on *In re Adelphia Bus. Sols*, 296 B.R. at 666, is misplaced. *Adelphia* involved determining whether a debtor wanted and knowingly accepted services from a creditor. Here, no such inquiry with respect to intent or knowing acceptance is necessary – the Shipping Motion, the Shipping Orders and the *Declaration of Robert A. Riecker*

*Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York* [D.I. 3] are all of the evidence needed to rule that Apex is entitled to an administrative expense claim for any goods it delivered to the Debtors on or after the Petition Date.

## RESERVATION OF RIGHTS

17.     This Reply is filed with a full reservation of rights, including the right to amend and/or supplement this Reply in all respects and to make such additional arguments at the Hearing on the Apex Motion and the Omnibus Objection.

## NOTICE

18.     Notice of this Reply has been provided to (a) counsel to the Debtors, (b) the Office of the United States Trustee for Region 2, (c) counsel to the Official Committee of Unsecured Creditors, (d) all other parties entitled to service pursuant to paragraph 5 of the *Amended Order Implementing Certain Notice and Case Management Procedures* [D.I. 405], and (e) parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

*[Text continues on following page]*

**WHEREFORE**, for the foregoing reasons and for the reasons stated in the Apex Motion, Apex respectfully requests that the Court overrule the Omnibus Objection and enter an Order (i) allowing the Apex Administrative Claims as administrative claims under 11 U.S.C. §§ 503(b)(1)(A), (ii) directing the Debtors to immediately pay the Apex 503(b)(1) Claim pursuant to 11 U.S.C. § 507(a)(2), and (iii) granting such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: May 17, 2019<br>New York, New York | **APEX TOOL GROUP, LLC**<br><br>*/s/ Gregg M. Galardi*<br>Gregg M. Galardi<br>Sam N. Ashuraey<br>Kimberly J. Kodis<br>ROPES & GRAY LLP<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Telephone: (212) 596-9000<br>Facsimile: (212) 596-9090 |