DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200
David H. Wander, Esq. (dhw@dhclegal.com)
Garrett Kingman, Esq. (gk@dhclegal.com)
*Attorneys for Pearl Global Industries Ltd.*

Hearing Date and Time:
May 21, 2019 at 10:00 am (EST)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:

SEARS HOLDING CORPORATION, *et al.*,

                                 Debtors.

-------------------------------------------------------X

Chapter 11

Case No. 18-23538 (RDD)

(Jointly Administered)

**REPLY BY PEARL GLOBAL INDUSTRIES LTD. TO
DEBTORS' OMNIBUS OBJECTION TO VENDORS' MOTIONS FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Pearl Global Industries, Ltd. ("Pearl Global")[1] submits the following reply to the *Debtor's Omnibus Objection to Vendors' Motions for Allowance and Payment for Administrative Expense Claims* ("Objection.") [Doc. No. 3883], including the motion by Pearl Global ("Pearl Global Motion")[2] [Doc. No. 3604]:

**PRELIMINARY STATEMENT**

1. The Debtors should embrace this opportunity to obtain a ruling from this Court on both §§ 503(b)(1) and (b)(9), because it will affect the allowance (or disallowance) of tens of millions of dollars (if not more than a hundred million dollars) of administrative claims and,

---

[1] Pearl Global was the Debtors' largest vendor in India and its third largest supplier of women's apparel in the world. On the Petition Date, almost a million dollars' worth of Pearl Global's goods were in transit under various prepetition orders from the Debtors (the "Goods"). The Goods were delivered to the Debtors postpetition and provided a benefit to the Debtors' estates. *Pearl Global Motion,* ¶ 8.

[2] The Pearl Global Motion was supported by the *Declaration of Mahesh Seth* ("Seth Declaration") [Doc. No. 3606].

654339v.1

therefore, have a great impact on whether the Debtors' can establish administrative solvency so as to be able to confirm a plan.

2.   Neither Pearl Global nor any of the other foreign vendor movants seek to leap ahead of anyone, as the Debtors claim. *Objection,* ¶ 1. Pearl Global is not insisting that the Debtors immediately review all of Pearl Global's invoices to determine the exact amount of its administrative claim. *See Objection*, ¶¶ 19-20. But the key issues -- how the §§ 503(b)(1) and (b)(9) claims are determined -- should be decided now; otherwise, this case cannot move forward.

3.   According to the Debtors, $139 million in 503(b)(9) claims are to be paid by Transform SR Holding Management LLC or its affiliate ("Transform"), as the purchaser of substantially all of the assets of Sears. But how will they know what claims should be covered by this pool of money, without a ruling by the Court?[3] At some point, the Court, undoubtedly, will have to address *In re World Imports, Ltd.*, 862 F.3d 338 (3d Cir. 2017) and, similarly, the Court must determine whether pre-BAPCPA case law on § 503(b)(1) must be re-examined in light of the Congress' enactment of subsection 503(b)(9). The Court should reject the Debtors attempt to salami slice these issues. While the Debtors' apparently believe their legal position is stronger if the Court analyzes § 503(b)(1) in a vacuum, their position ignores the well-settled canon of statutory construction that a statute must be interpreted so as to harmonize each individual provision with the statute as a whole.

## THE OBJECTION

4.   Contrary to the Debtors' statement as to when the vendors' contractual obligations were completed, *see Objection* at ¶ 3, Pearl Global's contractual obligations were not

---

[3] Surely if the Debtors and the asset buyer agree amongst themselves on a method of calculating the date goods were received, that is neither binding on the affected vendors nor on this Court.

654339v.1                                    2

completed when the goods were dropped off in Asia to be shipped because the original bill of lading was not delivered at that time. Rather, the original bill of lading was delivered after the goods were put in transit.[4] Moreover, Pearl Global had control over the goods until they were offloaded onto the docks at the port of destination. *Seth Declaration,* ¶ 5.

5.  Regarding the Debtors' statement that Pearl Global's inducement claim fails because it relies on a Court order that specifically stated it was not "intended to create, any rights in favor or, or enhance the status of any claim held by, any party," *see Objection* at ¶ 16, the Debtors confused Pearl Global's motion with that of another movant. *Id.* at fn. 7. Rather, Pearl Global's reliance claim is based upon an email from Sears with a letter from its Chief Financial Officer, on October 16, 2018, while the Goods were still in transit, stating that Sears would pay

---

[4] Notably, the buyer now seeks to change the procedure that was in effect. In a notice sent to the vendor community on May 7, 2019, Transform stated as follows:

> Dear Valued Supplier,
>
> We are very pleased to share the new company's progress with you. As you are aware, on February 11, 2019, Transform SR Holding Management LLC or one of its affiliates (Transform) acquired substantially all of the assets of Sears Holding Corporation, including the "Go Forward Stores" on a going-concern basis. This transaction was supported by an asset based loan and credit facility (ABL) that provides the new company the financing necessary to do business with all of our supplier partners. To support this new agreement, it will become necessary for us to change the administrative process that defines the steps we take to move purchases through our supply chain. These changes will become effective on 5/12/2019.
>
> In the legacy environment, suppliers fulfill our orders and then reach out to our freight forwarder (UPS) when orders are ready for pick up. The forwarder then books transit on an ocean carrier using a Sea Waybill. On May 12th, we will be asking our freight forwarder to change this process and upon receiving the ready notification from the supplier will produce three copies of the original bills of lading instead of the Sea Waybill. <u>After the vendor settles all local charges, these original bills will be released and collected by the supplier for endorsement.</u> We request that this endorsement be completed and returned to our freight forwarder within 48 hours of collection.
>
> <u>Upon receipt of the endorsed original bills by UPS, they will retain these documents as an agent for our lender until the shipment is due to arrive at the US port.</u> UPS will send or transmit these bills to the ocean carrier to insure timely discharge to final US destination.

*See* **Exhibit A** (emphasis added). Importantly, the notice supports Pearl Global's position that performance was not completed when the goods were dropped off at port in Asia since the bills of lading were not delivered at that time.

654339v.1                                        3

vendors in the ordinary course of for all goods and services "provided" after the bankruptcy filing, as opposed to goods "delivered" prior to the bankruptcy:

> The company intends to pay our vendors in the ordinary course for <u>all goods and services provided on or after the filing date</u>. Invoices for these goods and services should be submitted through the ordinary channels, and payments will be processed in accordance with the terms of our purchase order or contract. Claims for amounts owed, for <u>goods delivered, and services rendered prior to the filing date</u> will be determined by the Court.

*Seth Declaration,* ¶ 6 and **Exhibit B** (emphasis added).

6. In accordance with the foregoing and the legal points filed and authorities set forth in the papers by the other vendors with similar motions, the Court should now decide the overriding §§ 503(b)(1) and (b)(9) issues, even if the claims review process for individual claims needs additional time.

Dated: New York, New York
      May 17, 2019

DAVIDOFF HUTCHER & CITRON LLP

By:  /s/ David H. Wander
     David H. Wander
605 Third Avenue
New York, New York 10158
(212) 557-7200
dhw@dhclegal.com
*Attorneys for Pearl Global Industries Ltd.*