# Exhibit A

# Pollani Declaration

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                     :    Chapter 11
                                                           :
SEARS HOLDINGS CORPORATION, *et al.*,                      :    Case No. 18-23538 (RDD)
                                                           :    (Jointly Administered)
                                  Debtors.                 :
-----------------------------------------------------------------x

## SUPPLEMENTAL DECLARATION OF PETER POLLANI IN SUPPORT OF OBJECTION TO ASSUMPTION AND ASSIGNMNENT OF NON-RESIDENTIAL REAL PROPERTY LEASE

Peter Pollani, pursuant to 28 U.S.C. § 1746, declares the following under penalty of perjury:

1. I am employed by Midwood Management Corp. ("Midwood") as a Portfolio Manager and have been acting in such role since October 2016. I am fully familiar with the facts and circumstances stated herein.

2. I respectfully submit this Declaration in support of Midwood's *Supplemental Objection to Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sales Transaction* (the "Supplemental Objection"). I have read the Supplemental Objection.

3. Midwood is the authorized agent of for Expressway Plaza I, LLC and Farmingville Associates Phase 1, LLC as tenants in common ("Landlord") with respect to the property located at 2280 North Ocean Avenue, Farmingville, New York (the "Property"). Landlord, as assignee of Farmingville Associates, a New York general partnership, and Kmart Corporation are parties to a lease (as amended and extended, the "Lease"), dated December 20, 1991, under which Kmart leased a portion of the Property from Landlord. The portion of the Property leased by Kmart (the "Premises) is located within a shopping center known as

Expressway Plaza. Expressway Plaza is one of the properties I manage for Midwood.

4. Since March 2017, I, on behalf of Midwood, have raised concerns with Kmart about the condition of the common areas of the Expressway Plaza parking lot for which Kmart was responsible for maintaining. Copies of my email correspondence with personnel from Kmart and Sears Holdings Corporation from February 2017 through May 2017 on this subject, but excluding numerous photographs that were attached as exhibits to these emails, are annexed hereto as Exhibit "1". Numerous potholes I brought to Kmart's attention in early March 2017 were not addressed by Kmart until on or about April 10, 2017. Kmart's representative explained to me by email on March 24, 2017 that he was required to solicit bids for the repair work and then apply for funding—a process that evidently contributed to the delay.

5. On April 7, 2017, an inspector from the Town of Brookhaven (the hamlet of Farmingville lies within the Town of Brookhaven), whom Midwood had invited to Expressway Plaza to inspect an ongoing construction project to build out space for a new tenant, commented to Ryan Frederick, project manager for Midwood, on the poor condition of the parking lot and indicated that, unless repaired, the potholes and curb damage could hinder Midwood's ability to obtain certificates of occupancy for incoming tenants. I forwarded Mr. Frederick's report of that conversation to Kmart by email that same day and requested prompt action in lieu of sending Kmart a formal notice of default. However, as of May 16, 2017, the curbs had not been repaired and potholes had reappeared.

6. In late October or early November 2017, Midwood, on behalf of the Landlord, was nearing completion of another construction project at Expressway Plaza to build out space for an incoming tenant. In connection with that construction project, Midwood arranged for a visit to the construction site from an inspector from the Town of Brookhaven. I was not present

2

at this site visit, but learned the outcome from Midwood's project manager Ryan Frederick, who was present and who talked with the inspector.

7. I understand from Mr. Frederick that, upon arriving at Expressway Plaza, the inspector, Bruce Schaal, remarked to him that the road surface of the drive lanes leading to the Kmart Premises were in very bad shape and needed to be repaired quickly.

8. I am aware from my experience managing other construction projects that asphalt cannot be applied properly when the air temperature is too cold and, for this reason, many asphalt plants in the New York City metropolitan area shut down in late Fall every year and do not reopen until Spring. I was also mindful of Midwood's experiences with Kmart earlier that year when Kmart moved very slowly to required address parking lot repairs. For these reasons, I caused Midwood to obtain its own quotes from paving contractors for the work needed to repair the drive lanes.

9. Subsequent to the inspector's visit with Mr. Frederick, I met with the inspector personally at Expressway Plaza. He told me that the parking lot drive lanes needed to be re-paved immediately. Upon inspecting the drive lanes myself, I agreed with his assessment. The inspector said that many other areas of the Kmart parking lot needed to be addressed as well, but I was able to convince him the additional work could wait until Spring because those areas did not experience a heavy amount of traffic. The inspector said the Town of Brookhaven would not issue a certificate of occupancy for the incoming tenant until the drive lanes were repaired and added that he would not permit asphalt to be poured once the temperature dropped below the to a specified lowest acceptable level, which was expected to occur within a matter of a couple of weeks.

10. At my direction, Midwood served on Kmart the notice, dated November 8, 2017,

3

informing Kmart it was in default of its obligation to maintain the parking lot and that Landlord was exercising its rights under Article 25(F) to perform emergency repair work to the parking lot and drive lanes (the "Emergency Work") at Kmart's cost and expense. I understand that a copy of this notice was annexed as Exhibit "3" to the Declaration of Steven Brown (the "Brown Declaration") submitted with Midwood's *Objection to Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sales Transaction* (the "Initial Landlord Objection").

11. Bradley Pukas from Sears Holdings Corporation telephoned me after Kmart received the November 8, 2017 notice. We also communicated by email during this period. Copies of the email exchange between me and Mr. Pukas are annexed hereto as Exhibit "2". On November 19, 2017, at Mr. Pukas' request, I sent him photographs the showing areas of the parking lot and drive lanes in need of emergency repair, the quotes I had obtained from a paving contractor to perform the emergency repair and a diagram of the areas identified by the town inspector for immediate reconstruction. Mr. Pukas responded by email on November 20, 2017 stating, among other things, he had a "feeling" the situation did not warrant an emergency repair. He also requested "documentation from the municipality confirming their mandate of this work to be done immediately." In that message, he stated his "Facilities team will be reviewing the information . . . [I] provided and will likely have questions . . . ." The email exchange accurately reflects our conversation, except that I remember that either before or after Mr. Pukas sent his November 20, 2018 email message, I told him over the phone the Town of Brookhaven's practice was to not reduce to writing demands such as its demand that the parking lot drive lanes be re-paved immediately. I understood Mr. Pukas' November 20, 2018 email message to me to mean that he had the information he needed about the Emergency Work and would be contacting

4

me if Kmart had questions about the Emergency Work or concerns about Midwood's intention to pass on to Kmart the expenses incurred by Landlord to carry out the Emergency Work.

12.   I and others at Midwood had numerous subsequent communications with Kmart, primarily with the Kmart personnel present at the Expressway Plaza Premises, to coordinate the Emergency Work, which was carried out on November 20-23, 2017 and then during the week of November 27, 2017. However, I did not receive any subsequent communications from Mr. Pukas, or anyone else at or on behalf of Kmart, questioning the need for the Emergency Work or whether Kmart would be responsible for reimbursing Landlord for the expenses it incurred to perform the Emergency Work. Receiving no objections or further questions from Kmart, Midwood billed Kmart on April 4, 2018 and April 26, 2018 for Kmart's proportionate share of the sums expended by Landlord to perform the Emergency Work. No one from Kmart ever contacted me about these bills.

13.   Even after completion of the Emergency Work, I observed during my frequent visits to the Premises, the condition of the Premises, including the parking lot, to continue to deteriorate. For this reason, In April 2018, I caused Landlord to retain Titan Engineers PC to perform a Structural Condition Survey of the Premises. In its report of the results of the Structural Condition Survey, Titan Engineers indicated numerous material physical deficiencies existed at the Premises. Titan Engineers recommended numerous specific actions be taken within six months to address these deficiencies and estimated that those repairs would cost approximately $1,439,790.00. I understand a copy of the Titan Engineers report is annexed as Exhibit "5" to the Brown Declaration submitted with the Initial Landlord Objection. The recommended repairs, summarized on page 3 of the report, are as follows:

5

| ITEM | ESTIMATED COST |
|---|---|
| Repairs of cracking & deterioration in CMU façade | $2,700 |
| Painting (Exterior) CMU Façade | $40,245 |
| Painting (Interior) CMU front wall portion | $6,000 |
| Misc. Repairs | $15,000 |
| Roof leak repairs and replacement of water stained acoustic panels | $2,500 |
| Structural evaluation of Fire Water Piping | $2,400 |
| Bollard Repairs (Allowance) | $1,800 |
| Exterior Door Repairs (Allowance) | $3,000 |
| Storm Drain Structure Repairs (Allowance) | $15,000 |
| Curbing Replacement | $242,445 |
| Asphalt Milling & Repave | $624,000 |
| Seal Coat & Striping | $41,600 |
| Concrete Pad (Trash compactor and Trailer) | $51,000 |
| Rooftop HVAC units (3 Ton AAON unit from 1993) | $12,000 |
| Rooftop HVAC units (7 Ton AAON unit from 1993) | $21,000 |
| Rooftop HVAC units (15 Ton AAON unit from 1993) | $364,000 |
| Traffic Parking Signage Repairs (Allowance) | $1,050 |

14.    At the direction of me and others at Midwood, Landlord's counsel sent Kmart (i) a Notice of Default and Thirty (30) Day Opportunity to Cure, dated September 6, 2018, on account of Kmart's failure to maintain the Premises in good and tenable repair, which notice included a copy of the report from Titan Engineers. I understand a copy of the Notice of Default and Thirty (30) Day Opportunity to Cure, including a copy of the report from Titan Engineers is attached as Exhibit "A" to the Declaration of Aaron Zerykier submitted with the Initial Objection.

15.    Kmart never responded to the Notice of Default and Thirty (30) Day Opportunity to Cure and, based on my observations during my periodic visits to the Premises, has never undertaken any of the repairs noted in the Titan Engineers report even though Titan Engineers recommended such repairs be made within six months of the report, which is dated May 17, 2018, as revised on August 29, 2018.

6

16. I visited Premises on April 19, 2019. I observed that the condition of the parking lot continues to deteriorate with no repairs or maintenance undertaken by Kmart. Though an email, dated April 19, 2019, to Mr. Pukas and Roger Sinanan of Sears Holding Corporation and the local Kmart store manager, I, on behalf of Landlord, notified Kmart of potholes, storm drain damage, torn-down road signs and debris in the parking lot abutting the Premises (the "Additional Parking Lot Damage"). A copy of this email message is attached hereto as Exhibit "3". To date, Kmart has taken no steps to address these hazardous conditions and no one from Sears or Kmart has even bothered to respond to my message.

17. I estimate the cost to repair the Additional Damage is $5,125, broken down as follows:

>Pothole Repair - $500
>Stop Sign Replacement- $325
>Repair of damaged/leaning signage- $300
>Repair of storm drain- $2,500
>Clean up of debris- $1,500

18. I am aware that charges asserted by Landlord in its Initial Objection include the estimated cost to replace the parking lot abutting the Premises. However, the Additional Damages do not duplicate charges asserted in the Initial Objection because repairs to address the Additional Damages are needed immediately. Even if Kmart undertakes to replace the parking lot, it would need to repair the Additional Damages now in advance of when the parking lot is replaced.

19. I last visited the Premises on May 15, 2019. I observed that Kmart had undertaken no repairs of any kind to address either the Additional Parking Lot Damage or the deficiencies cited in the Notice of Default and Thirty (30) Day Opportunity to Cure.

Dated: May 17, 2019

_____
PETER POLLANI

FF\8403504.1