**Presentment Date and Time:  May 28, 2019 at 10:00 a.m. (Eastern Time)**
**Objection Deadline:  May 27, 2019 at 4:00 p.m. (Eastern Time)**
**Hearing Date and Time (Only if Objection Filed):  June 20, 2019 at 10:00 a.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                 :

In re                            :       **Chapter 11**
                                 :

**SEARS HOLDINGS CORPORATION,** *et al.,*  :      **Case No. 18-23538 (RDD)**
                                 :

               Debtors.[1]      :       **(Jointly Administered)**
                                 :

-----------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR- Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**NOTICE OF PRESENTMENT OF
STIPULATION, AGREEMENT, AND ORDER AUTHORIZING
DEBTOR TO ASSUME AND ASSIGN UNEXPIRED NONRESIDENTIAL
REAL PROPERTY LEASE (3701 BROADWAY STREET, QUINCY, ILLINOIS)**

PLEASE TAKE NOTICE that Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), will present the attached Stipulation, Agreement, and Order (the "**Stipulation, Agreement, and Order**") to the Honorable Robert D. Drain, United States Bankruptcy Judge, for signature on **May 28, 2019 at 10:00 a.m. (Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that, unless a written objection to the Stipulation, Agreement, and Order with proof of service, is served and filed with the Clerk of the Court, and a courtesy copy is delivered to the undersigned and to the chambers of the Honorable Robert D. Drain, so as to be received by **May 27, 2019 at 4:00 p.m. (Eastern Time)**, there will not be a hearing and the Stipulation, Agreement, and Order may be signed.

PLEASE TAKE FURTHER NOTICE that, if a written objection is timely filed and served, a hearing (the "**Hearing**") will be held to consider the Stipulation, Agreement, and Order on **June 20, 2019 at 10:00 a.m. (Eastern Time)** before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601.

WEIL:\97028985\5\73217.0004

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to

attend the Hearing and failure to appear may result in relief being granted or denied upon default.

Dated: May 21, 2019
      New York, New York

                                              /s/ Jacqueline Marcus
                                              WEIL, GOTSHAL & MANGES LLP
                                              767 Fifth Avenue
                                              New York, New York  10153
                                              Telephone:  (212) 310-8000
                                              Facsimile:  (212) 310-8007
                                              Ray C. Schrock, P.C.
                                              Jacqueline Marcus
                                              Garrett A. Fail
                                              Sunny Singh

                                              *Attorneys for Debtors*
                                              *and Debtors in Possession*

WEIL:\97028985\5\73217.0004

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                  :

In re                           :            **Chapter 11**
                  :

**SEARS HOLDINGS CORPORATION, *et al.*,**    :       **Case No. 18-23538 (RDD)**
                  :

             **Debtors.**[1]        :       **(Jointly Administered)**
                  :

---------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

### STIPULATION, AGREEMENT, AND ORDER AUTHORIZING DEBTOR TO ASSUME AND ASSIGN UNEXPIRED NONRESIDENTIAL REAL PROPERTY LEASE (3701 BROADWAY STREET, QUINCY, ILLINOIS )

This stipulation, agreement, and order (the "**Stipulation, Agreement, and Order**") is entered into by and among Kmart Stores of Illinois LLC ("**Kmart**"), as debtor and debtor-in-possession in the above captioned chapter 11 cases, Certified Capital, LP (f/k/a the Libaw Family, LP) (the "**Landlord**"), and Broadway and 36th GP ("**Broadway**"). Kmart, Landlord, and Broadway are collectively referred to in this Stipulation, Agreement, and Order as the "**Parties**" and each as a "**Party**." The Parties hereby stipulate and agree and follows:

### RECITALS

A.      By that certain lease, dated August 12, 1970 (together with any amendments, modifications, renewals and guaranties, the "**Lease**"), the Landlord, as successor in interest, leased non-residential real property located at 3701 Broadway Street, Quincy, Illinois (the "**Premises**") to Kmart. Kmart refers to the Premises as "**Store 4433**."

B.      Beginning on October 15, 2018 (the "**Commencement Date**"), Kmart and its debtor affiliates (collectively, the "**Debtors**") each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C.      On the Commencement Date, Kmart announced it was closing Store 4433. The Premises have been vacant for more than four months and since such time Kmart has continued to pay fixed annual rent in the amount of $119,851.08 payable in equal monthly

2

installments of $9,987.59.   By its terms, the Lease expires on November 30, 2046 if all remaining options are exercised.

D.       By order dated November 16, 2018, pursuant to section 365(d)(4) of the Bankruptcy Code, the Bankruptcy Court extended the period within which the Debtors may assume or reject unexpired leases of nonresidential real property through and including the earlier of (a) May 13, 2019 and (b) the date of the entry of an order by the Bankruptcy Court confirming a chapter 11 plan (the "**Assumption/Rejection Deadline**") (ECF No. 776).

E.       On April 30, 2019, Kmart filed its *Notice of Rejection of Certain Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* (the "**Rejection Notice**") (ECF No. 3449).   Store 4433 was one of the stores identified for rejection on the Rejection Notice.   Pursuant to the Rejection Notice, if no objections were filed by May 10, 2019 (the "**Rejection Objection Deadline**"), the Debtors would be  authorized to submit a Rejection Order (as defined in the Rejection Notice), which would include Store 4433 and provide that the Lease would be deemed rejected as of April 30, 2019.

F.       Rather than rejecting Store 4433 under the Rejection Order, at the request of the Landlord, Kmart has agreed to assume and assign the Lease to Broadway, pursuant to that certain assignment agreement attached hereto as **Exhibit A** (the "**Assignment Agreement**"), in exchange for the Debtors' receipt of certain negotiated consideration including, without limitation, payment in the amount of fifteen thousand dollars ($15,000).

G.       Pursuant to the Assignment Agreement, Kmart shall assign all of its rights, title and interests under the Lease to Broadway (the "**Assignment**"), in exchange for Broadway assuming and agreeing to perform all of Kmart's liabilities, obligations, and responsibilities

3

under the Lease arising from and after the Effective Date (as hereinafter defined), in accordance with the terms and conditions set forth in the Assignment Agreement.

        H.      The Debtors have not been operating at the Premises for over four months but continue to pay rent for the Premises. Accordingly, the Lease is an unnecessary expense and of no value to the Debtors and their estates. The Debtors, in an exercise of sound business judgement, believe that the Assignment to Broadway, as provided for under this Stipulation, Agreement, and Order, is in the best interests of the Debtors, their estates, and their creditors.

        I.      In order to allow sufficient time to effectuate the Assignment pursuant to the Assignment Agreement, the Parties agreed to further extend the Assumption/Rejection Deadline for the Lease.

        J.      In connection with the foregoing matter, the Parties have agreed, subject to approval by the Bankruptcy Court, to the terms set forth herein.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT IS HEREBY STIPULATED AND AGREED, BY AND BETWEEN THE PARTIES, THROUGH THEIR UNDERSIGNED COUNSEL, AND, UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT:**

## <u>AGREEMENT</u>

        1.      This Stipulation, Agreement, and Order shall have no force or effect unless and until the date it is approved by the Bankruptcy Court (the "**Effective Date**").

        2.      Pursuant to section 365(d)(4)(B)(ii) of the Bankruptcy Code, the Assumption/Rejection Deadline is extended through and including the earlier of (a) June 30, 2019 and (b) the date of the entry of an order confirming a chapter 11 plan for the Debtors (the "**Extended Deadline**"), such Extended Deadline being effective *nunc pro tunc* to May 13, 2019.

4

3.      The Parties acknowledge and agree that this Stipulation, Agreement, and Order constitutes the "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, to the Extended Deadline.

4.      The Parties agree that upon the Effective Date, Broadway shall pay Kmart fifteen thousand dollars ($15,000) in cash pursuant to wiring instructions provided by the Debtors.

5.      Upon the Effective Date, Kmart shall assume the Lease and assign it to Broadway pursuant to sections 365(a) and 365(f) of the Bankruptcy Code, Rule 6006 of the Federal Rules of Bankruptcy Procedure, and Rule 6006-1 of the Local Bankruptcy Rules for the Southern District of New York.

6.      As of the Effective Date, the Lease, all of Kmart's rights, title, interests, powers, privileges, benefits, and obligations in and to the Lease, shall be deemed assigned to Broadway, its successors and assigns, pursuant to the Assignment Agreement, and the Lease shall remain in full force and effect for the benefit of Broadway.  Broadway shall assume and agree to perform all of the liabilities, obligations, and responsibilities of Kmart under the Lease arising from and after the Effective Date.  For the avoidance of doubt, the assumption and assignment of the Lease shall not be considered a novation.  Rather, the assumption and assignment shall be considered for all purposes a strict assignment of the Lease.

7.      As of the Effective Date, Kmart shall be relieved of any obligation to (a) cure any defaults under the Lease, whether attributable to the period before or after the Commencement Date, pursuant to section 365(b)(1) of the Bankruptcy Code or otherwise, (b) provide any adequate protection of future performance to Broadway pursuant to section

5

365(f)(2) of the Bankruptcy Code, or (c) satisfy any liabilities arising under the Lease after the Effective Date pursuant to section 365(k) of the Bankruptcy Code.

8.      As of the Effective Date, the Rejection Notice will be deemed withdrawn with respect to the Lease and the Lease will not be rejected by the proposed Rejection Order or other order of the Court.

9.      Upon the Effective Date, other than the right to implementation and effectuation of the Assignment or as otherwise provided for under the Assignment Agreement, Kmart or any other Debtor, the affiliates controlled by the Debtors, or their respective successors or assigns (collectively, the "**Debtor Parties**") shall have no obligations to Landlord, Broadway and/or their respective affiliates, successors and assigns, and their respective past, present and future members, officers, directors, shareholders, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "**Assignee Parties**") with respect to the Lease.  As of the Effective Date, the Assignee Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff and recoupment, debt, liens, losses, demands, damages, costs and causes of action of whatever nature arising out of or relating to the Lease against any of the Debtor Parties (the "**Assignee Released Claims**"), and shall be barred from asserting any and all Assignee Released Claims whatsoever, whether known or unknown, whether accrued or unaccrued, matured or unmatured, liquidated or unliquidated, certain or contingent, asserted or not asserted, and whether found in fact or law or in equity, in existence as of the Effective Date.

10.     Upon the Effective Date, other than the right to implementation and effectuation of the Assignment or as otherwise provided for under the Assignment Agreement,

6

the Assignee Parties shall have no obligations to the Debtor Parties with respect to the Lease.  As of the Effective Date, the Debtor Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff and recoupment, debt, liens, losses, demands, damages, costs and causes of action of whatever nature arising out of or relating to the Lease, other than as set forth in the Assignment Agreement (the "**Debtors' Released Claims**," and together with the Assignee Released Claims, the "**Released Claims**") against any of the Assignee Parties, and shall be barred from asserting any and all Debtors' Released Claims whatsoever, whether known or unknown, whether accrued or unaccrued, matured or unmatured, liquidated or unliquidated, certain or contingent, asserted or not asserted, and whether found in fact or law or in equity, in existence as of the Effective Date.

11.    All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the releases in Paragraphs 7, 9, and 10.  Section 1542 of the California Civil Code reads as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

12.    Upon the Effective Date, nothing contained in the Lease or subsequent agreements executed thereafter shall limit or prevent Broadway from using the Premises.

13.    Upon the Effective Date, Broadway shall accept the Premises in "as-is," "where-is," and "with all faults" condition.  Kmart has not made any express or implied, verbal

7

or written, representations, warranties or statements to Broadway, with respect to any matter whatsoever, except as expressly set forth in the Assignment Agreement.

14.     Subject to compliance with the terms of this Stipulation, Agreement, and Order, as of the Effective Date, the Parties are authorized and directed to complete and deliver the Assignment Agreement, all other instruments and documents, and take all other actions as may be necessary or appropriate to execute, implement, consummate and effectuate the Assignment.

15.     Each person who executes this Stipulation, Agreement, and Order on behalf of a Party hereto represents that he or she is duly authorized to execute this Stipulation, Agreement, and Order on behalf of such Party.

16.     This Stipulation, Agreement, and Order contains the entire agreement among the Parties and supersedes all prior discussions, agreements, and undertakings between the Parties relating to the subject matter hereof.

17.     This Stipulation, Agreement, and Order shall be filed and become part of the record in the Debtors' chapter 11 cases.

18.     This Stipulation, Agreement, and Order may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation, Agreement, and Order to present any copy, copies, electronic copies, or facsimiles signed by the Parties.

19.     This Stipulation, Agreement, and Order shall not be modified, altered, amended or vacated without the written consent of all parties hereto or by further order of the Bankruptcy Court.

8

20.    Notwithstanding the applicability of Bankruptcy Rule 6006(d), the terms and provisions of this Stipulation, Agreement, and Order shall be immediately effective and enforceable upon the Effective Date.

21.    This Stipulation, Agreement, and Order shall be governed by, and construed in accordance with, the laws of the State of New York, except to the extent that the Bankruptcy Code applies, without regard to principles of conflicts of law that would require the application of laws of another jurisdiction.

22.    The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from this Stipulation, Agreement, and Order.

[*Remainder of page intentionally left blank*]

9

IN WITNESS WHEREOF, this Stipulation, Agreement, and Order has been executed and delivered as of the day and year first below written.

Dated: May 21, 2019                                          Dated: May 21, 2019

/s/ Jacqueline Marcus                                        /s/ Eve H. Karasik
Jacqueline Marcus                                            Eve H. Karasik
WEIL GOTSHAL & MANGES LLP                                    LEVENE, NEALE, BENDER, YOO & BRILL LLP
767 Fifth Avenue                                             10250 Constellation Blvd., 17th Floor
New York, New York 10153                                     Los Angeles, California 90067
(212) 310-8000                                               (310) 229-3350

*Attorneys for Debtors and*                                  *Attorneys for Certified Capital, LP*
*Debtors in Possession*


Dated: May 21, 2019
BROADWAY AND 36TH GP

/s/ Evan Justin Libaw
Evan Justin Libaw,
Trustee of the E.J. Libaw Family Trust
c/o the Horowitz Group
11911 San Vincente Blvd., Suite 310
Los Angeles, CA 90049

*General Partner of Broadway and 36th GP*



**SO ORDERED**:

Dated: _____, 2019
        New York, New York


_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

WEIL:\97028985\5\73217.0004

## Exhibit A

**Assignment Agreement**

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (this "**Assignment**") is made as of May 21, 2019, by and between KMART STORES OF ILLINOIS, LLC, an Illinois limited liability company ("**Kmart**" or "**Assignor**"), and BROADWAY AND 36TH GP, a California general partnership ("**Assignee**").

### RECITALS:

A.    Certified Capital, LP (f/k/a The Libaw Family, LP) ("**Certified**"), a California limited partnership, as successor in interest to Donald G. Davis, and Kmart entered into a lease agreement for certain nonresidential real property dated August 12, 1970 (together with any amendments, modifications, renewals and guaranties, the "**Existing Lease**"), whereby Certified leased to Kmart that certain parcel of land located at 3701 Broadway Street, Quincy, Illinois (the "**Leased Property**"). A true and correct copy of the legal description for the Leased Property is attached hereto as **Exhibit A**.

B.    Certified is the current "**Landlord**" of the Leased Property.

C.    Assignor is the current "**Tenant**" of the Leased Property.

D.    Assignor desires to assign all of its right, title and interest under the Existing Lease to Assignee, and Assignee desires to assume and perform Assignor's obligations under the Existing Lease after the Assignment Effective Date (defined below), subject to the terms and conditions set forth below.

E.    Assignor, Assignee and Landlord entered into that certain Stipulation, Agreement, and Order to Assume and Assign Unexpired Nonresidential Property Lease for the Leased Property known as 3701 Broadway Street, Quincy, Illinois, and identified by Assignor as Store #4433 (the "**Stipulation**").[1]

F.    The Existing Lease and this Assignment are collectively referred to herein as the "**Lease**."

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    **Consideration**.  As consideration for the purchase of Assignor's rights, title and interest under the Lease, Assignee shall pay to Assignor the sum of $15,000.00, which consideration shall be paid upon the execution of this Assignment by the parties and in accordance with the Assignor's payment instructions.

2.    **Assignment and Assumption**. Effective as of the date the Court so-orders the Stipulation (the "**Assignment Effective Date**"), Assignor hereby assigns, transfers, conveys, and delivers to Assignee all of Assignor's estate, rights, title and interests as tenant of the leasehold estate described under the Existing Lease, and Assignee hereby accepts the assignment, transfer,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

conveyance, and delivery of Assignor's estate, rights, title and interest in, to and under such leasehold estate, and assumes all obligations thereunder arising from and after the Assignment Effective Date.

3.      **As Is, Where Is**. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS ASSIGNMENT, THE LEASED PROPERTY IS BEING ASSIGNED TO ASSIGNEE, AND ASSIGNEE AGREES TO ACCEPT THE LEASED PROPERTY, IN "AS-IS," "WHERE- IS" AND "WITH ALL FAULTS" CONDITION ON THE ASSIGNMENT EFFECTIVE DATE. ASSIGNOR HAS NOT MADE ANY VERBAL OR WRITTEN REPRESENTATIONS, WARRANTIES OR STATEMENTS OF ANY NATURE OR KIND WHATSOEVER TO ASSIGNEE, WHETHER EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER WHATSOEVER, EXCEPT AS EXPRESSLY SET FORTH HEREIN.

4.      **Memorandum of Assignment**. Promptly following the Assignment Effective Date, the parties' execution of this Assignment, and Assignor's receipt of payment from Assignee, Assignor and Assignee will execute and record a memorandum of this Assignment in substantially the form attached hereto as **Exhibit B**.

5.      **No Modifications**. Except as expressly set forth in this Assignment, the Lease is not modified and remains in full force and effect, in accordance with its terms.

6.      **Authority**. Each party represents and warrants to the other that it has full power and lawful authority to enter into and perform its obligations under this Assignment, that the person or persons signing on its behalf has been duly authorized to do so, and that the execution, delivery and performance by such party will not be in violation of any material agreement or restriction by which such party is bound or affected.

7.      **Conflict**.    The assumption and assignment of the Existing Lease (including Assignor's rights, title, interests and obligations thereunder), made hereunder are made in accordance with and subject to the Stipulation, which is incorporated herein by reference. In the event of a conflict between the terms and conditions of this Assignment and the terms and conditions of the Stipulation, the terms and conditions of the Stipulation shall govern, supersede, and prevail. Notwithstanding anything to the contrary in this Assignment, nothing herein is intended to, nor shall it, extend, amplify, or otherwise alter the representations, warranties, covenants, and obligations of the parties contained in the Stipulation or the survival thereof.

8.      **Further Assurances**. Each of the parties, without additional consideration, shall execute and deliver all such further documents and do such other things as the other party may reasonably request to give full effect to this Assignment, including, without limitation, any other form of assignment agreement required in order to record this Assignment in the appropriate public records of the county in which the Leased Property is located.

9.      **Counterparts**. This Assignment may be executed in any number of counterparts. All counterparts so executed shall constitute one contract, binding on all parties, even though all parties are not signatory to the same counterpart.

[signatures follow]

EXECUTED as of the date first above written.

**ASSIGNOR:**

**KMART STORES OF ILLINOIS LLC,**
an Illinois limited liability company,

> By: Kmart Corporation, as its sole
> member

By: _Debra Cherry_
Name: Debra Cherry
Title: Assistant Secretary

**ASSIGNEE:**

**BROADWAY AND 36TH GP,**
a California general partnership

By: _Evan Justin Libaw_
Name: Evan Justin Libaw trustee of the
Title: E. J. Libaw Family Trust,
General Partner

3

## EXHIBIT A

### Legal Description of the Leased Property

LEGAL DESCRIPTION OF REAL ESTATE

K-MART #4433; 36th and Broadway, Quincy, Illinois

\* \* \*

Lots One (1) and Two (2) in Reagan's Subdivision of a portion of Lot One (1) of the Subdivision of Administrators of Estate of Abner Chase, deceased (Chase and King's Subdivision) of part of the Southwest Quarter of Section Thirty-two (32), Township One (1) South, Range Eight (8) West, in Adams County, Illinois, and parts of Lots One (1), Two (2) and Three (3) in said Subdivision of Administrators of Estate of Abner Chase, deceased (Chase and King's Subdivision) of the Southwest Quarter of Section Thirty-two (32), Township One (1) South, Range Eight (8) West, in said county and state, all more particularly described as follows:

Commencing at a point at the intersection of the east right-of-way line of 36th Street with the north right-of-way line of East Broadway (Illinois State Route No. 104), which point is twenty-four and seventeen hundredths (24.17) feet east of and fourteen and twenty-two hundredths (14.22) feet north of the southwest corner of Section Thirty-two (32), Township One (1) South, Range Eight (8) West; and from said point of beginning extending thence north along the east line of said 36th Street a distance of three hundred forty-nine (349) feet, more or less, to an iron pipe at the northwest corner of Lot Two (2) in said Reagan's Subdivision; thence south eighty-nine (89) degrees forty (40) minutes east along the north line of said Lot Two (2) a distance of one hundred seventy-five and three tenths (175.3) feet to an iron rod at the northeast corner of said Lot Two (2); thence north along the east line of said Reagan's Subdivision a distance of two hundred ninety-six and fifty-five hundredths (296.55) feet to the north line of Lot One (1) in the Subdivision of Administrators of Estate of Abner Chase, deceased (Chase and King's Subdivision); thence south eighty-nine (89) degrees fifty-three (53) minutes east a distance of three hundred eighteen and twenty-five hundredths (318.25) feet to an iron pipe which is one hundred forty (140) feet west of the northeast corner of Lot Two (2) in said Subdivision of Administrators of Estate of Abner Chase; thence south zero (0) degrees three (3) minutes east a distance of forty (40) feet to an iron pipe; thence south eighty-nine (89) degrees fifty-three (53) minutes east a distance of one hundred forty (140) feet to an iron pipe on the east line of said Lot Two (2); thence north zero (0) degrees three (3) minutes west along the east line of said Lot Two (2) a distance of forty (40) feet to an iron pin at the northeast corner of said Lot Two (2); thence south eighty-nine (89) degrees fifty-three (53) minutes east along the north line of Lot Three (3) in said Subdivision of Administrators of Estate of Abner Chase, deceased, three hundred twenty-nine and sixty-six hundredths (329.66) feet to an iron pin at the northeast corner of said Lot Three (3); thence south zero (0) degrees nine (9) minutes east along the east line of said Lot Three (3) four hundred one (401) feet to an iron pipe; thence north eighty-nine (89) degrees fifty-three (53) minutes west a distance of one hundred sixty-five (165) feet to an iron pipe; thence south zero (0) degrees nine (9) minutes east a distance of two hundred forty-eight and sixty-six hundredths (248.66) feet to an iron pipe in the north line of the right-of-way of East Broadway (Illinois State Route 104); thence north eighty-nine (89) degrees thirty-four (34) minutes west along the north line of said highway right of way a distance of eight hundred and twelve hundredths (800.12) feet to the place of beginning, containing twelve and seven hundredths (12.07) acres, more or less, all in accordance with a survey made in April, 1970, by W. H. Klingner, Illinois Registered Land Surveyor No. 913.

EXHIBIT A

**EXHIBIT B**

**FORM**

**RECORDING MEMORANDUM**

WHEN RECORDED RETURN TO:
Broadway and 36th GP
c/o the Horowitz Group
11911 San Vincente Blvd., Suite 310
Los Angeles, CA 90049
Attention: Ralph Horowitz

**MEMORANDUM OF ASSIGNMENT OF LEASE**

THIS MEMORANDUM OF ASSIGNMENT OF LEASE (this "**Memorandum**") is made as of the ___ day of May, 2019, by BROADWAY AND 36TH GP, a California general partnership ("**Assignee**"), and KMART STORES OF ILLINOIS LLC, an Illinois limited liability company ("**Kmart**" or "**Assignor**").

Certified Capital, LP (f/k/a The Libaw Family, LP) ("**Certified**"), a California limited partnership, as successor in interest to Donald G. Davis, and Kmart entered into a lease agreement for certain nonresidential real property dated August 12, 1970 (together with any amendments, modifications, renewals and guaranties, the "**Existing Lease**"), whereby Certified leased to Kmart that certain parcel of land ("**Land**"), buildings and improvement existing on said Land, building fixtures, and to the extent available, building machinery and building equipment thereto (collectively, the "**Improvements**"), and all easements, rights and appurtenances thereto (collectively with the Land and the Improvements, the "**Leased Property**").

Pursuant to that certain Assignment and Assumption of Lease dated as of the date hereof (the "**Assignment**"; the Existing Lease and the Assignment are collectively the "**Lease**"), by and between Assignor and Assignee, Assignee succeeded to the interest of Assignor under the Existing Lease.

Assignee and Assignor desire to enter into this Memorandum to be recorded in the real property records of Adams County Illinois to place third parties on notice of the Assignment. Capitalized terms used in this Memorandum will have the same meanings as is given to such terms in the Lease.

1.    The address of Assignee as forth in the Lease is:

BROADWAY AND 36TH GP
c/o the Horowitz Group
11911 San Vincente Blvd., Suite 310
Los Angeles, CA 90049
Attention: Ralph Horowitz

The Leased Property which is leased to Assignee pursuant to the Lease is described in **Exhibit A** attached hereto.

2.      The term of the Lease as between Lessor and Assignee continues until November 30, 2021, with five (5) five (5) year options and a following stub period as provided paragraph 12(l) of the Existing Lease.

3.      This Memorandum is not intended to modify or amend any of the provisions of the Lease. If any of the provisions of this Memorandum are inconsistent with any of the provisions of the Lease, the provisions of the Lease shall be controlling.

[Signature Page Follows]

IN WITNESS WHEREOF, Assignee and Assignor have entered into this Memorandum to be effective as of the date first set forth above.

**Assignee:**

**BROADWAY AND 36TH GP,**
a California General Partnership

By: _____
Evan Justin Libaw, Trustee of the E.J. Libaw Family
Trust, General Partner

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California              )
County of _____  )

On _____ before me, _____, Notary Public personally appeared _____ of Broadway and 36th GP, a California general partnership, on behalf of said general partnership, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ **(Seal)**

_____
Notary Public, State of California

IN WITNESS WHEREOF, Assignee and Assignor have entered into this Memorandum to be effective as of the date first set forth above.

**Assignor**:

**KMART STORES OF ILLINOIS LLC,**
An Illinois limited liability company,

By: Kmart Corporation, as its sole member

By: _____
Print Name:_____
Print Title:_____

STATE OF ILLINOIS                         §
                                          §
COUNTY OF COOK                            §

    This instrument was acknowledged before me on the _____ day of _____,
201__, by _____, _____
of Kmart Corporation, as sole member of KMART STORES OF ILLINOIS LLC, an Illinois limited liability company, on behalf of said limited liability company.

                          _____
                          Notary Public, State of Illinois

**<u>EXHIBIT A TO MEMORANDUM OF ASSIGNMENT</u>**

**Legal Description of the Leased Property**

## LEGAL DESCRIPTION OF REAL ESTATE

### K-MART #4433; 36th and Broadway, Quincy, Illinois

\* \* \*

Lots One (1) and Two (2) in Reagan's Subdivision of a portion of Lot One (1) of the Subdivision of Administrators of Estate of Abner Chase, deceased (Chase and King's Subdivision) of part of the Southwest Quarter of Section Thirty-two (32), Township One (1) South, Range Eight (8) West, in Adams County, Illinois, and parts of Lots One (1), Two (2) and Three (3) in said Subdivision of Administrators of Estate of Abner Chase, deceased (Chase and King's Subdivision) of the Southwest Quarter of Section Thirty-two (32), Township One (1) South, Range Eight (8) West, in said county and state, all more particularly described as follows:

Commencing at a point at the intersection of the east right-of-way line of 36th Street with the north right-of-way line of East Broadway (Illinois State Route No. 104), which point is twenty-four and seventeen hundredths (24.17) feet east of and fourteen and twenty-two hundredths (14.22) feet north of the southwest corner of Section Thirty-two (32), Township One (1) South, Range Eight (8) West; and from said point of beginning extending thence north along the east line of said 36th Street a distance of three hundred forty-nine (349) feet, more or less, to an iron pipe at the northwest corner of Lot Two (2) in said Reagan's Subdivision; thence south eighty-nine (89) degrees forty (40) minutes east along the north line of said Lot Two (2) a distance of one hundred seventy-five and three tenths (175.3) feet to an iron rod at the northeast corner of said Lot Two .(2); thence north along the east line of said Reagan's Subdivision a distance of two hundred ninety-six and fifty-five hundredths (296.55) feet to the north line of Lot One (1) in the Subdivision of Administrators of Estate of Abner Chase, deceased (Chase and King's Subdivision); thence south eighty-nine (89) degrees fifty-three (53) minutes east a distance of three hundred eighteen and twenty-five hundredths (318.25) feet to an iron pipe which is one hundred forty (140) feet west of the northeast corner of Lot Two (2) in said Subdivision of Administrators of Estate of Abner Chase; thence south zero (0) degrees three (3) minutes east a distance of forty (40) feet to an iron pipe; thence south eighty-nine (89) degrees fifty-three (53) minutes east a distance of one hundred forty (140) feet to an iron pipe on the east line of said Lot Two (2); thence north zero (0) degrees three (3) minutes west along the east line of said Lot Two (2) a distance of forty (40) feet to an iron pin at the northeast corner of said Lot Two (2); thence south eighty-nine (89) degrees fifty-three (53) minutes east along the north line of Lot Three (3) in said Subdivision of Administrators of Estate of Abner Chase, deceased, three hundred twenty-nine and sixty-six hundredths (329.66) feet to an iron pin at the northeast corner of said Lot Three (3); thence south zero (0) degrees nine (9) minutes east along the east line of said Lot Three (3) four hundred one (401) feet to an iron pipe; thence north eighty-nine (89) degrees fifty-three (53) minutes west a distance of one hundred sixty-five (165) feet to an iron pipe; thence south zero (0) degrees nine (9) minutes east a distance of two hundred forty-eight and sixty-six hundredths (248.66) feet to an iron pipe in the north line of the right ·of way of East Broadway (Illinois State Route 104); thence north eighty-nine (89) degrees thirty-four (34) minutes west along the north line of said highway right of way a distance of eight hundred and twelve hundredths (800.12) feet to the place of beginning, containing twelve and seven hundredths (12.07) acres, more or less, all in accordance with a survey made in April, 1970, by W. H. Klingner, Illinois Registered Land Surveyor No. 913.

EXHIBIT A