Allen G. Kadish
Lance A. Schildkraut
ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
       lschildkraut@archerlaw.com

    and

Kenneth M. Florey
M. Neal Smith
ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
       nsmith@robbins-schwartz.com

    and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

Hearing Date: May 29, 2019 at 1:30 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.,* | Case No. 18-23538 (RDD) |
|  | (Jointly Administered) |
| Debtors. |  |

**LIMITED OBJECTION OF
COMMUNITY UNIT SCHOOL DISTRICT 300
TO DISCLOSURE STATEMENT FOR AMENDED JOINT CHAPTER 11 PLAN
OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS**

    COMMUNITY UNIT SCHOOL DISTRICT 300, an Illinois school district existing and

operating pursuant to the Illinois School Code, 105 Illinois Compiled Statutes 5/1-1, *et seq.* (the

"**School District**"), by and through its attorneys, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Gensburg Calandriello & Kanter, P.C., and Archer & Greiner, P.C., hereby files its limited objection and reservation of rights (the "**Objection**") to the *Disclosure Statement for Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors,* filed on May 16, 2019 [Docket No. 3895] (the "**Disclosure Statement**")[1] filed by the above-captioned debtors (the "**Debtors**"). In support of this Objection, the School District respectfully states:

I.

**PRELIMINARY STATEMENT**

1. The Amended Disclosure Statement does not provide any information as to the current dispute between the School District and the Debtors, including potentially the priority of the School District's claims against the Debtors, as may be determined after litigation of issues in the Illinois Circuit Court.[2] The Amended Disclosure Statement fails to adequately describe differences in the proposed structure of the Liquidating Trust(s), depending on whether these cases are substantively consolidated or not. Finally, inadequate background has been provided in support of the proposed Debtor Releases, especially with respect to any pre-petition claims against Related Parties.

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Disclosure Statement.

[2] See Orders in this Case dated April 25, 2019 and May 7, 2019 (Docket Nos. 3362 and 3666). The School District also reserved its rights in its *Limited Objection of Community Unit School District 300 to Debtors' Motion for Authority to (A) Obtain Post-Petition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* (the "**Limited Objection**") and Supplement to the Limited Objection [Docket Nos. 557 and 805] and in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Super-priority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 101].

## II.

## LEGAL STANDARD

**A.    Disclosure**

2.    Section 1125 of the Bankruptcy Code requires that, before a plan proponent may solicit acceptances or rejections to a plan, the plan proponent must transmit to the parties to be solicited a court-approved disclosure statement, containing "adequate information."  The Bankruptcy Code at section 1125(a)(1) defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor or the relevant class to make an informed judgment about the plan… and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information…

*In re Adelphia Communications Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006).

3.    The disclosure statement requirement of section 1125 of the Bankruptcy Code is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (*citing Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414 (3d Cir. 1988)).  The "adequate information" requirement is designed to help creditors in their negotiations with debtors over the plan, *see Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94 (3d Cir. 1988), so creditors have sufficient information with respect to the implications, risks and financial consequences of the plan, *see In re McLean Industries, Inc.,* 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).  The information in a

3

disclosure statement should be simple and clear so creditors can discern the intended treatment of their claims. *See In re Copy Crafters Quickpoint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

4. Section 1129(a)(2) conditions confirmation upon compliance with applicable Bankruptcy Code provisions. The disclosure requirement of section 1125 is one of those provisions. *See In re PWS Holding Corp.,* 228 F.3d 224, 248 (3d Cir. 2000).

5. The disclosure requirements of section 1125 are biased toward more, not less, disclosure, and thus, section 1125 establishes a minimum, not a maximum, disclosure standard. *See Adelphia,* 352 B.R. at 596; *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).

**B.    Non-Confirmability**

6. Even if a disclosure statement is clear and informative with respect to the proposed language, it should not be approved if a plan patently is unconfirmable. *See In re American Capital Equipment LLC*, 688 F.3d 145 (3d Cir. 2012) (bankruptcy court can determine at the disclosure statement stage that a Chapter 11 plan is unconfirmable without first holding a confirmation hearing). A plan is patently unconfirmable where (1) confirmation "defects [cannot] be overcome by creditor voting results" and (2) those defects "concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *Id*. at 155.

### III.

### LIMITED OBJECTIONS

**A.    Disclosure of School District's Claims**

7. The School District's interests and claims in these cases arise out of the Debtors' alleged violation of the Economic Development Area and Tax Increment Allocation Act, 20 ILCS 620/1, *et seq.* (the "**Illinois EDA Act**") passed in Illinois in 1989 and amended in 2012. The

4

School District believes that the Debtors have failed to maintain certain statutorily required levels of full-time equivalent jobs at their corporate campus in Hoffman Estates, Illinois, in 2018 and 2017, and failed to do so for a number of prior years. If these allegations are accurate, the result is that the School District would recapture large portions of property taxes that the Debtors were never entitled to receive.

8.      The School District has noted that to the extent the Debtors improperly received real estate tax rebates, those funds and proceeds of the same are to be restored under the Illinois EDA Act and arguably should be deemed held in a constructive trust for the benefit of the School District and other impacted taxing districts, or alternatively, that the resulting improper tax rebates to the Debtors, together with all penalties, interests and costs, might be subject to being re-imposed on the real estate in question as liens arising under applicable Illinois state law. The extent and nature of this dispute should briefly be described in the Disclosure Statement.

**B.      Structure of the Liquidation Trust.**

9.      Unlike the original Joint Chapter 11 Plan and Disclosure Statement, the Amended Plan and Disclosure Statement now provides that, as a compromise and settlement, the cases of Sears Holdings Corporation and its Affiliated Debtors will be substantively consolidated. As a consequence, among other matters, (i) all Assets of the Debtors will be consolidated and treated as Liquidating Trust Assets irrespective of which Debtors own such Assets, (ii) holders of unsecured claims will receive their distribution from the consolidated Liquidating Trust Assets, and (iii) pre-and post-petition Intercompany Claims shall be disregarded and not participate in the recoveries of the Liquidating Trust.

10.     However, the Amended Plan and Disclosure Statement also furnishes a toggle, which provides that "[i]n the event the Bankruptcy Court does not approve the Substantive

5

Consolidation Settlement, the Plan shall revert to a joint plan of liquidation of the Debtors for administrative purposes only, and constitutes a separate chapter 11 plan of liquidation for each Debtor.

11. Notwithstanding this toggle feature in the Amended Plan and Disclosure Statement, Section E. of Article V of the Amended Disclosure Statement dealing with the Liquidating Trust is identical, whether the cases are substantively or not, which is counterintuitive. Differences in the structure and operation of the Liquidating Trust(s) in a non-substantive consolidation versus a substantive consolidation scenario needs to be clarified. For example, in a non-substantive consolidation scenario will there be multiple liquidating trusts, as suggested by Paragraph D.5 of Article V of the Amended Disclosure Statement which states that "[o]n the Effective Date, all Liquidating Trust Assets of the Debtor shall be transferred to *the respective Liquidating Trust* of such Debtor in accordance with Article VI of the Plan." (Emphasis added). The uncertainty is highlighted with the deletion of Paragraph E.13 of Article V of the original Disclosure Statement which formerly stated that:

> "Notwithstanding that there is only one Liquidating Trust, the Assets, Claims, and proceeds thereof that are contributed to the Liquidating Trust shall be allocated to the applicable Debtor in accordance with the Plan. Holders of Allowed Claims against a particular Debtor may only recover from the proceeds of the Assets and Claims allocated to such Debtor in accordance with the Plan."

12. Further, the Plan appears to contemplate one liquidating trustee and one liquidating trust board. The Amended Disclosure Statement should describe how, in a non-substantive consolidation scenario the selected liquidating trustee and liquidating trust board will transparently resolve conflicts arising from intercompany claims, loans, rights and causes of action in a scenario where the trustee and board will, necessarily, be acting as a fiduciary for both parties involved in the intercompany transaction.

6

13. The Disclosure Statement should also among other matters, (i) describe the methodology (and the logic for the same) by which: (a) administrative expenses and claims will be allocated among the various estates; (b) fees and expenses related to Avoidance and Litigation Actions will be allocated among the various estates; and (c) any excess funds in the Wind Down and/or Carve-Out Accounts will be allocated among the various estates; (ii) highlight that the current analysis of intercompany activity encompasses only post-petition Intercompany Claims, with pre-petition Intercompany Claims still under review and, as a result, excluded from the Debtors Liquidation Analysis; (iii) estimate the likely duration of the Debtors' wind-down, including the time required to reconcile prepetition Intercompany Claims and the estimated additional post-confirmation fees and expenses involved; and (iv) detail the probable amount, terms and conditions of any anticipated post-confirmation intercompany loans.

**C.     No Release**

14. The School District objects to any release or disposition of claims or property that could impair the implementation of the School District's rights as may be determined in litigation, against real estate or proceeds to which the School District may have a claim or lien, or the imposition of other remedies. In addition, with respect to the "Debtor Releases" of "Related Parties" from prepetition conduct, the Amended Disclosure Statement should detail what, if any, investigation of such conduct has been performed, and the results and conclusions thereof.

**D.     Proposed Language**

15. Only the Debtors can address several of the points set forth above. But in order to disclose the presence of the dispute and the potential impact of the School District's litigation on the Debtors and their creditors and lenders, the School District proposes the following addition to the disclosure statement:

Community Unit School District 300, an Illinois school district existing and operating pursuant to the Illinois School Code (the "**School District**"), has asserted one or more claims, against the Debtors pursuant to the Economic Development Area and Tax Increment Allocation Act, 20 ILCS 620/1, *et seq.* (the "**Illinois EDA Act**") and that certain Economic Development Agreement entered into with the Village of Hoffman Estates, Illinois (the "**1990 Agreement**").  The Illinois EDA Act and the 1990 Agreement were designed to incentivize the Debtors to relocate their headquarters from downtown Chicago to undeveloped farmland in the Village by, among other things, providing financial assistance and subsidies for the Debtors to develop their corporate campus in the Village.  The 1990 Agreement, as amended, enabled the Debtors to recapture a large portion of the property taxes paid on their corporate campus to cover the cost incurred in its development.

The Illinois EDA Act and 1990 Agreement, as amended, includes a requirement that the Debtors create or retain not less than 4,250 full-time equivalent jobs at their headquarters in the Village.  The School District believes that Sears fails to maintain the minimum jobs requirement under the Illinois EDA Act and the 1990 Agreement from at least 2015 thru 2018, and possibly as far back as 2012 and, as a result, any taxes which were improperly rebated are subject to recapture.  The dispute between the Debtors and School District as to how to interpret the Illinois EDA Act is now pending in the Circuit Court of Cook County, State of Illinois (the "**Circuit Court**"), in a matter styled, *Community Unit School District 300 v. Village of Hoffman Estates, et al.*, Case No. 2018 CH 12683 (the "**Illinois Action**")

Depending on the outcome of the Illinois Action, the School District believes that a lien for the outstanding taxes, penalties, interest and costs, on the Debtors' corporate headquarters could exist or arise under the Illinois Property Tax Code, with the priority provided thereunder.  The School District also asserted a claim for a constructive trust involving any taxes improperly rebated, and alternatively, priority or general unsecured claims.  In addition, the Debtors are payees pursuant to certain Tax Increment Revenue Notes (the "Revenue Notes"), arising from Agreed Judgment Orders between the Debtor, the Cook County Collector, the Village of Hoffman Estates, and the School District entered in the Circuit Court of Cook County, Illinois resolving disputes related to Debtor's real estate tax obligations.  To the extent said Revenue Notes are enforceable and continuing obligations, the School District believes that it may be setoff or recouped against said Revenue Notes.

### IV.

### **CONCLUSION**

WHEREFORE, (i) the Disclosure Statement should not be approved, (ii) in the alternative, the Disclosure Statement should not be approved absent the clarification and detail requested herein and the inclusion of the School District's proposed language as forth above, and (iii) the School District should be afforded such other and further relief as is just and proper.

Dated: New York, New York  
   May 22, 2019

ARCHER & GREINER, P.C.

By:   s/ Allen G. Kadish
   Allen G. Kadish  
   Lance A. Schildkraut  
630 Third Avenue  
New York, New York 10017  
Tel: (212) 682-4940  
Email: akadish@archerlaw.com  
    lschildkraut@archerlaw.com

and

Kenneth M. Florey  
M. Neal Smith  
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.  
631 E. Boughton Road, Suite 200  
Bolingbrook, Illinois 60440  
Tel: (630) 929-3639  
Email: kflorey@robbins-schwartz.com  
    nsmith@robbins-schwartz.com

and

Matthew T. Gensburg  
Gensburg Calandriello & Kanter, P.C.  
200 West Adams Street, Suite 2425  
Chicago, Illinois 60606  
Tel: (312) 263-2200  
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

216477365v1