| | |
|---|---|
| **NORTON ROSE FULBRIGHT US LLP** | **HUGHES HUBBARD & REED LLP** |
| Eric Daucher | Neil J. Oxford |
| Francisco Vazquez | Dustin P. Smith |
| 1301 Avenue of the Americas | One Battery Park Plaza |
| New York, New York 10019-6022 | New York, New York 10004-1482 |
| Telephone: (212) 408-5100 | Telephone: (212) 837-6000 |
| Facsimile: (212) 541-5369 | Facsimile: (212) 422-4726 |
| *Counsel for FTI Consulting Canada Inc., in its capacity as court-appointed monitor for Sears Canada Inc. and certain of its affiliates* | *Counsel for the Honourable J. Douglas Cunningham, Q.C., as court-appointed litigation trustee for Sears Canada Inc., and Counsel for 1291079 Ontario Limited, as class representative for the potential class of all Sears Hometown Dealer stores* |

**ALLEN & OVERY LLP**
Laura R. Hall
Joseph Badtke-Berkow
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

*Counsel for Morneau Shepell Ltd., in its capacity as administrator of the Sears Canada Inc. Registered Retirement Plan*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**THE CANADIAN PLAINTIFFS' LIMITED OBJECTION REGARDING**
<u>**THE DEBTORS' AMENDED DISCLOSURE STATEMENT**</u>

CPAM: 34078441.1

FTI Consulting Canada Inc., in its capacity as the court-appointed monitor (the "Monitor") for Sears Canada Inc. ("Sears Canada") and certain of its affiliates[1] (collectively with Sears Canada, the "Canadian Debtors") in insolvency proceedings under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"); the Honourable J. Douglas Cunningham, Q.C., in his capacity as the court-appointed litigation trustee for the Canadian Debtors (the "Litigation Trustee"); Morneau Shepell Ltd., in its capacity as administrator (the "Plan Administrator") of the Sears Canada Inc. Registered Retirement Plan (the "Canadian Plan"), and 1291079 Ontario Limited as the class representative for the potential class of Sears Hometown Dealer stores (the "Class Action Representative," and, collectively with the Monitor, the Litigation Trustee, and the Plan Administrator, the "Canadian Plaintiffs") hereby submit this limited objection (the "Limited Objection") in response to the *Debtors' Motion for an Order (I) Approving Disclosure Statement; (II) Establishing Notice and Objection Procedures for Confirmation of the Plan; (III) Approving Solicitation Packages and Procedures for Distribution Thereof; (IV) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan; and (V) Granting Related Relief* [Docket No. 3277] (the "Disclosure Statement Motion") and the *Disclosure Statement for Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 3895] (the "Amended Disclosure Statement"). In support of this Limited Objection, the Canadian Plaintiffs respectfully state as follows:

---

1. The Canadian Debtors are: Sears Canada; 9370-2751 Quebec Inc.; 191020 Canada Inc.; The Cut Inc.; Sears Contact Services Inc.; Initium Logistics Services Inc.; 9845488 Canada Inc.; Initium Trading and Sourcing Corp.; Sears Floor Covering Centres Inc.; 173470 Canada Inc.; 2497089 Ontario Inc.; 6988741 Canada Inc.; 10011711 Canada Inc.; 1592580 Ontario Limited; 955041 Alberta Ltd.; 4201531 Canada Inc.; 168886 Canada Inc.; and 3339611 Canada Inc.

2

**LIMITED OBJECTION TO ADEQUACY OF AMENDED DISCLOSURE STATEMENT**

1. The Canadian Plaintiffs submit this Limited Objection because the Amended Disclosure Statement[2] lacks adequate information as required pursuant to section 1125 of the Bankruptcy Code regarding the alternate, non-settlement Plan (the "Alternative Plan") that may go into effect following the Confirmation Hearing through the purported "toggle mechanism" described in the Amended Disclosure Statement. The entirety of the Debtors' disclosure with respect to the Alternative Plan is contained in Section IV.T of the Amended Disclosure Statement and states in pertinent part:

> The Plan provides for a toggle mechanism under which, if the Bankruptcy Court does not approve the Substantive Consolidation Settlement (as defined below), the Plan shall revert to a joint plan of liquidation for each Debtor. Accordingly, to the extent a particular Debtor has insufficient Assets to satisfy Allowed Administrative Expense Claims, Allowed ESL 507(b) Claims, Allowed Other 507(b) Claims, Allowed Priority Tax Claims, or Allowed Priority Non-Tax Claims, another Debtor with sufficient Assets may, in consultation with the Creditors' Committee and the PBGC, make an intercompany loan to the applicable Debtor on or about the Effective Date to allow such Debtor to satisfy such Claims. Such intercompany loans shall be secured by the proceeds of the Preserved Causes of Action of the borrowing Debtor.

Amended Disclosure Statement § IV.T.

2. Section 1125(a)(1) defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

---

2. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Amended Disclosure Statement.

11 U.S.C. § 1125(a)(1).

3. The Amended Disclosure Statement fails to provide any basic information, let alone adequate disclosure, as to the terms of the Alternative Plan. Among other inadequacies, the Amended Disclosure Statement fails to provide (i) the terms of the Alternative Plan; (ii) adequate information regarding the classification and treatment of claims under the Alternative Plan; (iii) estimations of recoveries for creditors under the Alternative Plan; (iv) a liquidation analysis for the Alternative Plan; (v) the method by which creditors are to vote on the terms of the Alternative Plan versus the Plan; and (vi) the legal basis for the proposed "intercompany loans" and granting of security interests for such loans contemplated by the Alternative Plan. Further, the Amended Disclosure Statement lacks adequate information regarding the Debtors' projected recoveries and/or modeling of recoveries from the Avoidance and Litigation Actions with regards to either proposed plan, let alone how such recoveries would be distributed by the Plan or Alternative Plan.

4. Moreover, the incorporation, if any, of the disclosure statement [Docket No. 3276], including separately filed exhibits [Docket No. 3618] (together, the "Original Disclosure Statement") filed in connection with the first-filed *Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 3275] (the "Original Plan") would not cure the deficiencies in the Amended Disclosure Statement in respect of the Alternative Plan.

5. The Original Disclosure Statement failed to adequately disclose the scope, nature, or amount of "post-petition Intercompany Claims," despite the fact that the Debtors recognized the central role these claims would play in creditor recoveries. *See* Exhibit D to the Original Disclosure Statement, Liquidation Analysis § III.8.a. (the "Original Liquidation Analysis") ("Post-petition Intercompany Claims have a significant impact on entity level recoveries and

4

result in approximately $278 million of $314 million in total Asset value allocated to Kmart Corporation in the chapter 11 scenario and approximately $220 million of $255 million in total Asset value allocated to Kmart Corporation in the chapter 7 scenario."). There is no information contained anywhere in the Original Disclosure Statement or the Original Plan describing (i) the projected total amount of post-petition Intercompany Claims, (ii) the basis on which the claims would be asserted and allowed against individual Debtors, or (iii) the methodology proposed to allocate post-petition Intercompany Claims to the separate Debtor estates. Given the complete lack of information with respect to the post-petition Intercompany Claims—the size and impact of which, the Debtors report, are potentially subject to material revisions, but which in all events appear to be the single most important driver of recoveries for creditors of individual Debtors under the Original Plan—there is no way for a hypothetical investor to make an informed judgment about the Original Plan.

6. The Original Disclosure Statement also fails to provide adequate information regarding the "book value" allocation of pre-conversion professional fees. The Original Liquidation Analysis provides that "[p]re-conversion professional fees are allocated based on the book value of assets at each Debtor as of the Commencement Date." *Id.* The Original Liquidation Analysis does not, however, provide disclosure as to the book values being relied upon or the actual percentage allocation of professional fees among the different estates that results from this methodology. Nor does the Original Disclosure Statement discuss the justification for allocating pre-conversion professional fees on a book value basis or disclose the impact on creditor recoveries if a different methodology were adopted.

7. In any event, the Debtors' reliance on the book value methodology is misplaced. The Bankruptcy Code and relevant case law make clear that post-petition expenses should be

5

fairly allocated among jointly administered estates. Bankruptcy Code Section 503(b) controls the allowance of administrative expenses and, therefore, applies directly to, or otherwise provides guidance for, the allocation of the Debtors' wind-down expenses in these cases. *See In re Energy Future Holdings Corp.*, 593 B.R. 217, 255 (Bankr. D. Del. 2018). Section 503(b) provides that, to qualify as an administrative expense of a particular debtor, that expense must be an "actual, necessary cost[] and expense[] of *preserving the estate*." 11 U.S.C. 503(b)(1)(A) (emphasis added); *see also Energy Future Holdings*, 593 B.R. at 259; *In re Eagle Creek Subdivision, LLC*, No. 08-04292-8-JRL, 2009 WL 313383, at *3 (Bankr. E.D.N.C. Feb. 5, 2009) (noting that, because professionals' fees can be paid to the extent same "are necessary or beneficial to the case in which they are incurred. . . . It follows that each case must stand on its own when determining the allocation of professionals' fees among parallel debtors."). Accordingly, a principled approach to allocating expenses among the Debtors' estates in these cases must reflect the relative benefits received by each estate and ensure that no estate (or its creditors) pays more than its fair share.

8. To the extent that the Amended Disclosure Statement relies on the Original Liquidation Analysis, the Amended Disclosure Statement should at a minimum provide: (a) disclosure of the Debtors' projected recoveries and/or modeling of recoveries from the Avoidance and Litigation Actions; (b) the book values upon which the allocation of pre-conversion professional fees is proposed to be based; (c) the percentage of pre-conversion professional fees that would be borne by each estate as a result of this allocation methodology; (d) the total amount of post-petition professional fees projected to be borne by each estate as a result of this allocation methodology; and (e) disclosure that a book value allocation

methodology has not been agreed upon and is subject to challenge by the Creditors' Committee, among others.

## **CONCLUSION**

WHEREFORE, the Canadian Plaintiffs respectfully request that this Court (i) (a) require that the Debtors remove the "toggle mechanism" from the Amended Disclosure Statement and Plan, or (b) alternatively, deny the Disclosure Statement Motion until the Amended Disclosure Statement is modified to address the issues identified in this Limited Objection, and (ii) enter such other relief as this Court deems just and proper.

*[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]*

Dated: May 22, 2019
New York, New York

| | |
|---|---|
| */s/ Eric Daucher* | */s/ Laura R. Hall* |

Eric Daucher
Francisco Vazquez
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 408-5100
Facsimile: (212) 541-5369
eric.daucher@nortonrosefulbright.com
francisco.vazquez@nortonrosefulbright.com

*Counsel for FTI Consulting Canada Inc.,
in its capacity as court-appointed monitor for
Sears Canada Inc. and certain of its affiliates*

Laura R. Hall
Joseph Badtke-Berkow
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
laura.hall@allenovery.com
joseph.badtke-berkow@allenovery.com

*Counsel for Morneau Shepell Ltd., in its capacity
as administrator of the Sears Canada Inc.
Registered Retirement Plan*

-and-

*/s/ Neil J. Oxford*

Neil J. Oxford
Dustin P. Smith
**HUGHES HUBBARD & REED LLP**
One Battery Park Plaza
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
neil.oxford@hugheshubbard.com
dustin.smith@hugheshubbard.com

*Counsel for the Honourable J. Douglas
Cunningham, Q.C., as court-appointed litigation
trustee for Sears Canada Inc., and Counsel for
1291079 Ontario Limited, as class representative
for the potential class of all Sears Hometown
Dealer stores*

-and-