# *EXHIBIT G*

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2785
amainoo@cgsh.com

VICTOR I. LEWKOW
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
YARON Z. REICH
RICHARD S. LINCER
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW

FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE

DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
ANDREA M. BASHAM
LAURA BAGARELLA
SHIRLEY M. LO
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

May 13, 2019

<u>BY E-MAIL</u>

Sunny Singh, Esq.
Jared Friedmann, Esq.
Paul Genender, Esq.
Jennifer Brooks Crozier, Esq.
Weil, Gotshal & Manges LLP

Re:  <u>Post-Closing Reconciliation</u>

Dear Sunny, Jared, Paul and Jennifer:

  I am writing on behalf of Transform Holdco LLC ("<u>Transform</u>") in response to your May 9, 2019 letter.

  As detailed in my May 3 letter, and as recognized by your May 9 letter, Transform has been providing reconciliation analyses and detailed supporting information to Debtors since late-March.  That information contained supporting documentation, including information on cash reconciliations, estate checks, p-cards, taxes, telecommunication expenses, pre-closing orders, and March GOB rent.

  Transform has devoted and continues to devote significant resources to respond promptly to the May 1 Requests.  To that end, I enclosed with my May 3 letter responses to Requests 2 and 3.  Enclosed with this letter is information responsive to Requests 1, 3, 7, and 8.

  In response to Request 1, we have included with this letter, a file showing our current estimate of the accounts payable balance at Closing and associated payments by Transform, along with supporting information.  This analysis currently only captures invoices that had been physically entered as of the Closing date.  We are continuing to capture (i) additional invoices not entered as of the Closing date that relate to the pre-Closing period and associated payments by Transform, and (ii) agreements by Transform to pay post-petition, pre-

Singh
Friedmann
Genender
Crozier, p. 2

Closing accounts payable as part of the contract assignment and cure process.  Once such amounts are captured, we will update the analysis accordingly.

Your letter asks for a complete list of invoices that were outstanding as of February 11, 2019, with supporting detail.  As an initial matter, we dispute that such request has been outstanding since March.  It was made for the first time earlier this month.  Moreover, collecting that information would impose a substantial burden on Transform and does not appear geared toward providing Debtors with information relevant to the reconciliation process.  Transform obtained the information it provided you by querying its systems for the aggregate amounts payable by vendor at the time of Closing and by tracking additional invoices as they came in to determine whether they related to pre-Closing activities.  As M-III should know, Transform's AP system does not allow it to automatically generate an invoice level build-up of the open AP balance and therefore to produce such a report the company would need to manually retrieve this data for every vendor in each of its AP systems.  This would take at least 3 to 4 weeks to generate and would require significant resources to be devoted.  The information we have provided you today should permit you to conduct all the analyses that are necessary.  Accordingly, we ask that Debtors reconsider this request or, if not, explain how this information would be necessary for the reconciliation process.

As to Requests 3 and 7, we have included with this letter supporting information on the calculation of the $766,420 in real estate taxes paid by Transform on behalf of the Estate in respect of rejected leases.  We have confirmed that all of the checks used to pay for the $766,420 in property taxes were in fact Transform checks.  The supporting file provided today includes in column Q the check number for each property tax payment, and in the top corner lists the last check number issued by the Estate, which confirms that the checks listed in column Q were issued by Transform and not by Debtors.

With respect to Request 8, we have included with this letter updated supporting information regarding P-Card transactions, which now includes in column V a description of the purpose of each transaction.

Your May 9 letter also recites certain information that you claim Debtors need in connection with the reconciliation process.  Contrary to the contention in your letter, certain of this information has not been outstanding but is raised for the first time in your May 9 letter.  It raises the following additional questions and requests:

- Cash Reconciliation:  You state that Debtors previously indicated that they did not dispute the figure for Cash-in-Transit from regional bank accounts and individual stores' pre-Closing proceeds that had not arrived in the company's concentration accounts as of the Closing.  That is the figure to which we are referring.  This item should now be resolved.

- Estate Checks:  You ask for information to understand and confirm the methodology by which Transform made $2.73 million in deductions for Kmart and Sears rent.  The methodology was as follows:  after M-III asked

Singh
Friedmann
Genender
Crozier, p. 3

Transform's advisers to confirm that checks for Kmart and Sears rent were not included in the list of Estate checks, Transform's advisers reviewed the list of relevant checks in detail to determine which of those were paid to landlords or are otherwise covered by rent prorations and eliminated those checks. Detailed check information, indicating the checks that were eliminated as being for Kmart and Sears rent, was included in the "Estate Checks Report" file provided by Transform on May 3, 2019 in the tabs titled "K-Mart Rent" and "Sears Rent." We ask that Debtors inform us if they disagree with any of the information in this schedule.

The second point under Estate Checks, with respect to the reconciliation of property checks, is referenced above. The supporting file we provide today should permit you to make the requested confirmation.

Your third point asks why Transform continues to include approximately $1.1 million paid by Debtors on February 11, 2019, in the amounts owed to Transform. We do not know the $1.1 million to which you are referring. We also disagree that this request has been "repeatedly raised."

- P-Cards: We have enclosed with this letter supporting documentation with respect to P-Card transactions. You ask for the date Transform paid a particular expense, information that you claim is necessary to confirm that Transform has incurred a pre-Closing obligation. The information we have provided is sufficient to permit you to confirm that the obligations Transform has incurred are pre-Closing. The calculation is based on when the P-Card charge was incurred. Transform cannot readily provide the date on which the particular expense was paid, nor do Debtors explain why such information would be relevant. In particular, Transform—like most payors on credit card debt—does not track the payment to a credit card processor of amounts due to particular expenses that underlie those amounts due. Transform is charged for P-Card expenses in an aggregate amount and pays those aggregate expenses either when due or in an amount sufficient to stay under the applicable credit limits.

- Taxes: You ask for a tax schedule that includes information on store numbers to which a payment applies. Transform does not have that information. Where sales are delivered, sales tax is based on where an item is delivered to a customer and not the store from which it is delivered. Accordingly, the tax reported for a specific jurisdiction could relate to multiple store units. We can confirm that the sales tax payments made in February 2019 relate to sales tax for fiscal January 2019 and that the Estate should have filed and paid the returns.

Singh
Friedmann
Genender
Crozier, p. 4

- <u>Telecom Expenses</u>:  You ask for information to confirm that the telecom expenses relate to expenses incurred at GOB Stores.  We ask you to explain the relevance of this information.  To the extent your letter suggests that telecom expenses are subject to reconciliation only if they relate to a GOB store, that position is inconsistent with Section 9.11(iii) of Amendment No. 1 to the APA, which specifically lists "telephone service" for all Properties and the Sparrow Properties as an item subject to proration.

- <u>Estate Checks file</u>:  EY is working to provide information regarding post-Closing checks received by Transform for pre-Closing amounts owed to Debtors.  This request was first made on April 16, 2019 and requires input from 8 to 10 business units at Transform regarding approximately $6.8 million in checks.

- <u>Expense Pro-Rations Report</u>:  EY is in the process of preparing a response based on the actual utility expenses and we will provide that as soon as it is prepared.  In any event, our understanding is that the actual utility expenses are very close to the estimates of those expenses.

- <u>Real Estate Taxes</u>:  The supporting information we provide today on the calculation of the $766,420 in real estate taxes paid by Transform includes in column P the fiscal year associated with each property tax payment.  This is the only time period data available on this point.

Subject to the above, we will continue to respond to the remaining items in the May 1 Requests and the additional requests made in your May 9 letter on a rolling basis.  If it would be helpful to discuss particular items, we are likewise happy to arrange a call between EY and M-III.  We also remain available for a meeting this week to try to achieve a global resolution of the open issues between Transform and Debtors without recourse to litigation.  We look forward to your response.

Very truly yours,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Abena A. Mainoo*
Abena A. Mainoo, a Partner

Attachments