PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: 212-373-3000
Fax: 212-757-3990
Paul M. Basta
Kelley A. Cornish
Lewis R. Clayton
Susanna M. Buergel
Robert A. Britton

*Counsel to the Debtors Acting at the Direction of the Restructuring Subcommittee
of the Board of Directors of Sears Holdings Corporation*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : Case No. 18-23538 (RDD) |
| | : |
| Debtors.[1] | : (Jointly Administered) |
| | : |

------------------------------------------------------------------x

**RESPONSE OF THE RESTRUCTURING SUBCOMMITTEE TO THE OBJECTIONS
OF ESL INVESTMENTS, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); Sears Brands Management Corporation (5365), and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**Table of Contents**

**Page**

Preliminary Statement ............................................................................................................... 1

Argument ................................................................................................................................... 3

I. The Debtors Have Proposed the Optimal Governance Structure for the Liquidating Trust Board. ........................................................................................ 3

II. The Subcommittee Is Informed, Impartial, and Is Pursuing the Complaint in Good Faith ................................................................................................................... 8

III. ESL Incorrectly Asserts Entitlement to Recoveries from Other Assets and the Credit Bid Release Consideration. .................................................................... 9

    A. ESL 507(b) Priority Claims Are Only Entitled to Recover from the Proceeds of Other Causes of Action. ................................................................ 10

    B. ESL Claims Are Not Entitled to Recovery from the Proceeds of the Credit Bid Release Consideration. ................................................................ 11

Conclusion ............................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Beyond.com*,
   289 B.R. 138 (Bankr. N.D. Cal. 2003) ..................................................................................6

*In re LightSquared Inc.*,
   511 B.R. 253 (Bankr. S.D.N.Y. 2014) .................................................................................11

*In re Lyondell Chemical Co.*,
   544 B.R. 75 (Bankr. S.D.N.Y. 2016) ...................................................................................12

*In re Sabine Oil & Gas Corp.*,
   555 B.R. 180 (Bankr. S.D.N.Y. 2016) ...................................................................................6

*In re Sentinel Management Group, Inc.*,
   398 B.R. 281 (Bankr. N.D. Ill. 2008) ....................................................................................7

**STATUTES**

Bankruptcy Code section 507(b) ................................................................................................10

Bankruptcy Code section 1129(a)(5) ..................................................................................3, 6, 7

The Restructuring Subcommittee (the "Subcommittee") of the Restructuring Committee (the "Restructuring Committee") of the Board of Directors of Sears Holdings Corporation ("Sears," and together with its debtor affiliates, as debtors and debtors in possession, the "Debtors"*)* hereby submits this response (this "Response") to the ESL Objection [Docket No. 3988] and the Creditors' Committee Objection [Docket No. 3995] (collectively, the "Objections"). This Response applies only to those portions of the Objections that pertain to issues within the Subcommittee's mandate.

**Preliminary Statement**

1.      *First*, the Debtors' proposed governance structure for the Liquidating Trust Board—a three-member board comprising the two members of the Subcommittee and one additional member selected from the members of the Creditors' Committee—is the most efficient and effective governance structure given the unique facts and circumstances of these Chapter 11 Cases.[2] Among other things, the Subcommittee has been spearheading the ongoing and extensive investigation of billions of dollars of complex prepetition related party transactions since the outset of these chapter 11 cases. It is intimately familiar with the details of the investigation, and the prepetition related-party transactions. The Subcommittee is continuing to orchestrate ongoing discovery into those matters, has filed an extensive 108-page complaint against ESL and others (the "Complaint"), and will continue to pursue those claims in order to maximize recoveries for all creditors. The members of the Subcommittee have also attended dozens of Restructuring Committee meetings and are familiar with the oversight of all aspects of the claims reconciliation and plan processes, prosecution of preference actions, and ongoing ESL Asset Purchase Agreement issues. It is in the best interests of the Debtors' estates and all

---

[2]    To the extent necessary, members of the Subcommittee are available and willing to testify in support of the Disclosure Statement or confirmation of the Plan.

1

creditors for the Subcommittee to continue to lead the litigation process relating to the Complaint, rather than for the Subcommittee to needlessly turn the ongoing investigation and prosecution of the Complaint over to parties that are not as familiar with the relevant facts giving rise to the causes of action or the Subcommittee's comprehensive litigation strategy. There is no legal or factual basis for the Creditors' Committee's assertions that (a) it must be authorized to select a majority of the members of the Liquidating Trust Board or the Liquidating Trustee, (b) that unless the Debtors agree to the Creditors' Committee's inflexible demands—after settling with the largest unsecured creditor—the Debtors are pursuing a plan in bad faith, or (c) that these issues must be resolved at the Disclosure Statement hearing.

2.    *Second*, the Creditors' Committee's assertion that the Complaint, as filed, somehow releases certain directors from liability (or limits access to the Debtors' D&O Policies), is simply wrong. The defendants named in the Complaint (and those not named) were deliberately and strategically chosen, as were the causes of action included in the Complaint. The Subcommittee can, and will, prevent all members of the Debtors' prepetition Related Party Transaction Committee from receiving any Plan Releases by naming them as potential defendants in the Plan Supplement. The Subcommittee also can amend the Complaint to add additional defendants at a later date if necessary, and intends to amend the Complaint to add certain causes of action suggested by the Creditors' Committee (even though the Subcommittee believes those claims are not in any sense necessary to afford the Debtors' estates full and complete recovery).

3.    *Finally*, ESL's attempt to rewrite the plain terms of the Asset Purchase Agreement [Docket No. 2507] should not be condoned. ESL agreed to specific limitations on its claim recovery in exchange for the limited release and the right to credit bid certain claims to

obtain valuable estate assets pursuant to the Asset Purchase Agreement. As a result of these limitations, ESL is not entitled to distributions on its 507(b) claim from the proceeds of Other Assets (as defined in the Plan), and is not entitled to any distributions from the Credit Bid Release Consideration. These agreements are memorialized in the plain language of the Asset Purchase Agreement and Sale Order, and reflect the parties' intent that (a) "round-tripping" of the $35 million in Credit Bid Release Consideration back to ESL would not be permitted, and (b) ESL would not be permitted to recover from any claims related to its own misconduct.

4. In any event, the Objections raise confirmation issues and should not block approval of the Disclosure Statement. At this stage, the appropriate remedy for the Objections is to disclose the positions of ESL and the Creditors' Committee in the Disclosure Statement, to which the Subcommittee consents.

**Argument**

I. **The Debtors Have Proposed the Optimal Governance Structure for the Liquidating Trust Board.**

5. As will be demonstrated further at the confirmation hearing, a three-member Liquidating Trust Board, comprising the two members of the Subcommittee and one member selected from the members of the Creditors' Committee, will maximize the value of the estates' Preserved Causes of Action and is consistent with the interests of all relevant stakeholders and public policy, as required by section 1129(a)(5)(A)(ii) of the Bankruptcy Code. The Creditors' Committee asserts that, in order for the Debtors to meet the good faith requirement of section 1129(a)(3), the Creditors' Committee should be authorized to select a majority of the Liquidating Trust Board members, thereby controlling the governance of the Liquidating Trust.[3]

---

[3] The Creditors' Committee also misstates the applicable legal standard by relying heavily upon inapposite chapter 7 case law.

3

6. The Creditors' Committee's argument focuses only on holders of General Unsecured Claims and their recoveries from Preserved Causes of Action. *See*, *e.g.*, Creditors' Committee Objection at ¶ 52 ("As the primary (if not sole) beneficiaries of the Preserved Causes of Action, . . . unsecured creditors should control the governance of the Liquidating Trust."). The Liquidating Trust Beneficiaries, however, include other creditors against whose Liquidating Trust Interests the Creditors' Committee has lodged objections. For example, the Plan contemplates that Other 507(b) Priority Claims will receive from the Debtors or Liquidating Trust "payment in full in Cash from the Net Proceeds of the Total Assets." If the PBGC settlement is approved, the PBGC also will have a priority right of recovery from the proceeds of Preserved Causes of Action.[4] The members of the Liquidating Trust Board will owe fiduciary duties to *all* stakeholders in the trust, not just to general unsecured creditors. That duty mirrors the duty that the members of the Subcommittee owe today. As they have demonstrated, the members of the Creditors' Committee currently have duties to only one major stakeholder in the proposed Liquidating Trust. The Creditors' Committee cannot explain why it is better situated to fulfill the duties of members of the Liquidating Trust Board than the members of the Subcommittee. To the contrary, the Creditors' Committee's Objection acknowledges only general unsecured creditors as legitimate beneficiaries of the Liquidating Trust, and overlooks that the Subcommittee has been intimately involved, often daily, in the job of maximizing value for all creditors for estates of one of the largest retail enterprises in the world.

7. A three-member Liquidating Trust Board that includes both members of the Subcommittee and a member of the Creditors' Committee will make the most efficient and effective use of the significant estate resources already invested in the Subcommittee's

---

[4] The Creditors' Committee Objection argues that the Debtors should not be permitted to grant the PBGC a priority claim against the proceeds of the Preserved Causes of Action. *See* Creditors' Committee Objection at ¶¶ 57, 63.

4

investigation to date, while protecting the interests of all stakeholders in the Liquidating Trust and ensuring that the unique views and interests of unsecured creditors will be given an important voice (and vote) in the Liquidating Trust governance process.  For over seven months, the Subcommittee has spearheaded the Debtors' investigation of the complex Sears related party transactions, analyzing hundreds of thousands of documents, and conducting twelve on-the-record witness interviews.  The Subcommittee recently served ten additional document requests seeking additional discovery in pursuit of the causes of action set forth in the Complaint.  The Subcommittee is actively prosecuting the Complaint, which is far more comprehensive in terms of factual background, legal theories, plaintiffs, and defendants[5] than the complaint the Creditors' Committee filed with its standing motion over four months ago [Docket No. 1765].  The Subcommittee will advocate for a swift and efficient trial schedule, with a trial to be scheduled as soon as the first quarter of 2020.  Were the Creditors' Committee's request to be granted, the proposed change in Liquidating Trust governance would unduly complicate and prejudicially delay the litigation process and impose substantial additional costs on the Debtors' estates without any alternate benefit to the estate .

8. To protect the rights of unsecured creditors, the proposed Plan gives the Creditors' Committee the right to appoint a member of the Liquidating Trust Board and to remove any members for cause, with disputes to be resolved by the court. Section 6.7 of the Plan also provides that any party in interest with standing may object to significant settlements proposed by the Liquidating Trustee and have such objections and other concerns heard before the Bankruptcy Court. In addition, the Debtors have now proposed a construct whereby holders of at least 50.1% in outstanding principal amount of Claims entitled to distributions from the

---

[5] Among other things, the Creditors' Committee's complaint did not assert claims against any of the independent directors or former Sears officers that the Creditors' Committee now urges the Subcommittee to name.

5

Proceeds of the Specified Causes of Action would have the ability to remove members of the Liquidating Trust Board for cause upon ten days' written notice to the Liquidating Trustee, with disputes to be resolved by the court. Taken together, these extensive protections ensure that unsecured creditors' views will be heard and rights will be protected throughout the trust administration process.

9.   The survey of cases attached to the Creditors' Committee's objection does not include a single case where a properly functioning independent committee of the Debtors' board, advised by fully independent professionals, was created at the outset of the chapter 11 case to investigate and prosecute relevant claims, diligently and effectively fulfilled its mandate by carrying out a thorough investigation, filed a lengthy, complex complaint, and continued to pursue the claims and causes of action contained in the complaint throughout the plan confirmation process. In other words, none of the Creditors' Committee's alleged comparable cases on trust governance bear any resemblance to the facts and circumstances of these Chapter 11 Cases.

10.   In the context of chapter 11 plan confirmation, section 1129(a)(5) controls the appointment of a post-confirmation board. Section 1129(a)(5)(A)(ii) requires that the appointment to or continuance in post-confirmation office of an individual be "consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1129(a)(5)(A)(ii)). Courts have found compliance with section 1129(a)(5)(A)(ii) where "members of current management are competent, and together with the rest of the new board, will provide both continuity and fresh insights." *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 314 (Bankr. S.D.N.Y. 2016); *see also In re Beyond.com*, 289 B.R. 138, 145 (Bankr. N.D. Cal. 2003) (finding that continued service by prior management may be inconsistent with the interest

of creditors, equity security holders, and public policy if such management "directly or indirectly perpetuates incompetence, lack of discretion, inexperience, or affiliations with groups inimical to the best interests of the debtor."). Importantly, "section 1129(a)(5)(A) does not require that every creditor of a debtor must be represented by post-confirmation management." *In re Sentinel Management Group, Inc.*, 398 B.R. 281, 309 (Bankr. N.D. Ill. 2008) (overruling objections to a plan where the court determined that the liquidation trust agreement contained "sufficient safeguards with respect to post-confirmation governance of [the debtor's] estate to ensure that the interests of creditors and equity security holders are protected.").

11.    The Debtors easily satisfy section 1129(a)(5). The members of the Subcommittee have proven they are competent, exercise appropriate discretion, are experienced, and are independent. As the Court previously noted, the members of the Subcommittee are "truly independent … exercised their responsibilities in an active and informed way [and have] brought their experience to bear …." Hr'g Tr. 226:11-25 Feb. 7, 2019. And, as in *Sentinel*, the Debtors have also provided sufficient safeguards in the Plan to ensure that the interests of general unsecured creditors are protected.

12.    The Liquidating Trust governance structure has been proposed in good faith, is consistent with the interests of all creditors and public policy as required by section 1129(a)(5) of the Bankruptcy Code, ensures efficient governance and continued access to the knowledge of the investigation that the members of the Subcommittee have gained during the course of these chapter 11 cases, and will maximize the value of the estates' litigation assets. That structure also provides unsecured creditors with a significant voice and vote on the Liquidating Trust Board, the right to object to any significant settlements proposed by the trust, and the ability to remove Liquidating Trust Board members for cause, with disputes to be resolved by the court. It should

7

be approved. While these are confirmation issues, the Debtors are willing to include a description of the Committee's views in the Disclosure Statement.

## II.    The Subcommittee Is Informed, Impartial, and Is Pursuing the Complaint in Good Faith

13.    ESL and the Creditors' Committee take issue with the identity of defendants named (or not named) in the Complaint (and the lack of explanation about the choice of Defendants), but they have no justification for doing so. *See* ESL Objection at ¶ 50; Creditors' Committee Objection at ¶¶ 71–73. As the Subcommittee has already explained in detailed correspondence to the Committee, and as set forth in the Plan, the Subcommittee will name members of the Related Party Transaction Committee (among others) as potential defendants in the Plan Supplement, thereby precluding them from receiving any Plan Release and preserving the ability to name those individuals in an amended Complaint, if later deemed appropriate.[6]

14.    In all events, the Subcommittee's decisions with respect to which defendants to name in its 108-page Complaint were deliberate, strategic, and intended to maximize the estates' recoveries. Those not named (a) do not appear to have received a direct financial benefit from the transactions at issue, (b) have no significant personal assets, and (c) may be strategically important to the Liquidating Trust's pursuit of the relevant claims and causes of action. These decisions reflect months of investigation and analysis, including the review of hundreds of thousands of documents, twelve on-the-record interviews and in-depth deliberations among the members of the Subcommittee and their advisors—characteristic of the Subcommittee's

---

[6]    Released Parties means, "each case, solely in their capacities as such: (a) the Debtors; (b) the Creditors' Committee and each of its members; (c) the Liquidating Trustee; (d) the Liquidating Trust Board; (e) with respect to each of the foregoing entities in clauses (a) through (d), all Related Parties; provided, that ***the following entities shall not be "Released Parties" under the Plan:*** (i) the ESL Parties; (ii) any person or Entity against which any action has been commenced on behalf of the Debtors or their Estates, in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing; (iii) ***any Entity identified as a defendant or a potential defendant of an Estate Cause of Action in the Plan Supplement***; and (iv) any subsequent transferee of any of the foregoing with respect to any Assets of the Debtor…." Plan § 1.137 (emphasis added).

independence and diligence.  Nor has the Subcommittee's decision, at this time, not to name the members of the Related Party Transaction Committee as defendants had any impact on the Subcommittee's ability to prosecute the complaint.  The Subcommittee already has served extensive document requests on all defendants, prepared third-party document requests, and has scheduled an in-person conference with all parties on Thursday May 30, pursuant to Civil Procedure Rule 26(f), during which, among other issues, the Subcommittee expects to negotiate an expeditious schedule to govern the litigation.

15.     Whether or not the members of the Related Party Transaction Committee are defendants, as ESL suggests, affects neither the strength of the allegations in the Complaint nor the estates' potential recoveries.  The Creditors' Committee's objection that the failure to assert claims against certain directors risks limiting access to D&O insurance policies is based on the misconception that a decision to not assert claims at this time constitutes a release of those claims.  As noted, it does not, because the members of the Related Party Transaction Committee *will* be named in the Plan Supplement and therefore will *not* receive any type of release under the Plan.  In sum, the Subcommittee stands ready, willing and able to continue its vigorous pursuit of the claims set forth in the Complaint as the only truly independent body in these Chapter 11 Cases.

### III.    ESL Incorrectly Asserts Entitlement to Recoveries from Other Assets and the Credit Bid Release Consideration.

16.     ESL is not entitled to distributions from the proceeds of Other Assets[7] or the Credit Bid Release Consideration[8] with respect to any ESL 507(b) Priority Claims, and is not

---

[7] Other Assets means "all remaining Assets of each of the Debtors, other than the Specified Causes of Action, Other Causes of Action, and Credit Bid Release Consideration, including all Cash owned by each of the Debtors on the Effective Date other than Cash used to fund or held in the Disputed Claim Reserve, or the Carve Out Account." Plan § 1.97.

[8] Credit Bid Release Consideration means "an amount of cash equal to Thirty-Five Million Dollars ($35,000,000)." APA art. I.

entitled to distributions from the proceeds of the Credit Bid Release Consideration with respect to any claims, including ESL Unsecured Claims. This is a result mandated by the plain language of both the Sale Order and the Asset Purchase Agreement, and the agreement among the parties to prevent ESL from "round-tripping" the $35 million of Credit Bid Release Consideration or from recovering from any claims related to ESL's own misconduct.

### A.     ESL 507(b) Priority Claims Are Only Entitled to Recover from the Proceeds of Other Causes of Action.

17.    The Sale Order and the Asset Purchase Agreement govern ESL's ability to assert Claims arising under section 507(b) of the Bankruptcy Code:

> [A]ny ESL Claims arising under Section 507(b) of the Bankruptcy Code ***shall be entitled to distributions of not more than $50 million from the proceeds of any Claims or causes of action of the Debtors or their estates other than the [Specified Causes of Action⁹]***; provided that, in the event that, in the absence of this clause (c)(ii), any such proceeds to the Debtors or their estates would have resulted in distributions in respect of such ESL Claims in excess of $50 million, the right, on account of the ESL Claims, to receive such distributions in excess of $50 million shall be treated as an unsecured claim and receive pro rata recoveries with general unsecured claims other than the [Specified Causes of Action]; . . . (emphasis added).

18.    This provision is not ambiguous: it plainly provides that ESL 507(b) Priority Claims are entitled to distributions, capped at $50 million (with any excess 507(b) Priority Claim being treated as an unsecured deficiency claim), from the proceeds of any claims or causes of action of the Debtors or their estates other than the Specified Causes of Action (*i.e.*, the Other Causes of Action as defined in the Plan). In other words, ESL is entitled to priority recoveries on

---

⁹ Specified Causes of Action means collectively "any Claims or Causes of Action of the Debtors or their Estates related to Lands' End, Inc., the "spin-off" (as such term is defined in the Information Statement of Lands' End, Inc. dated March 18, 2014), Seritage Growth Properties, Inc., Seritage Growth Properties, L.P, the "Transaction" (as that term is defined in the registration statement on Form S-11 filed by Seritage Growth Properties, which registration statement became effective on June 9, 2015), ***any Claim or Cause of Action involving any intentional misconduct by ESL (as defined in the Asset Purchase Agreement)***, or the proceeds of any of the foregoing. For the avoidance of doubt, the Specified Causes of Action shall not be released pursuant to Article XI of the Plan" (emphasis added). Plan § 1.147.

10

account of 507(b) claims only from the proceeds of Other Causes of Action, and only up to $50 million.

19. ESL and the Subcommittee negotiated vigorously and struck a bargain to cap ESL's 507(b) priority recoveries at $50 million, and to limit those recoveries to a single source of (valuable) assets, in order to ensure that other sources of recovery remained fully available for non-insider creditors. ESL should not now be permitted to end-run that agreement through a misrepresentation of the bargain that it struck with the Subcommittee and the plain-language of the Sale Order and Asset Purchase Agreement that it negotiated.

### B. ESL Claims Are Not Entitled to Recovery from the Proceeds of the Credit Bid Release Consideration.

20. ESL is not entitled to a distribution on *any* of its Claims from proceeds of the Credit Bid Release Consideration. Again, ESL and the Subcommittee specifically agreed that none of the $35 million Credit Bid Release Consideration would be "round-tripped" back to ESL. The Sale Order and the Asset Purchase Agreement both provide that "no Claims or causes of action of ESL shall have recourse to, or any other right of recovery from, . . . ***any Claim or cause of action involving any intentional misconduct by ESL, or the proceeds of any of the foregoing***…" (emphasis added).

21. The Credit Bid Release Consideration was paid by ESL to ensure its right to credit bid in exchange for a release of estate claims involving intentional misconduct by ESL (*i.e.* equitable subordination and recharacterization). APA §9.13. These claims necessarily involve some willful misconduct by ESL that harmed other creditors[10] (equitable subordination)

---

[10] *See*, *e.g.*, *In re LightSquared Inc.*, 511 B.R. 253, 347 (Bankr. S.D.N.Y. 2014) ("[I]n order for this Court to exercise its power of equitable subordination, three conditions must be satisfied: (i) the claimant must have engaged in some type of inequitable conduct; (ii) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and (iii) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.") (internal punctuation omitted).

11

and the willful disguise of capital contributions as debt to receive undeserved priority recoveries over other creditors (recharacterization).[11] The Credit Bid Release Consideration constitutes the proceeds of those estate claims. ESL's own counsel previously conceded this to the Bankruptcy Court. *See* Hr'g Tr. 91:23–92:6, Feb. 7, 2019 ("You've seen from the pleadings submitted by the Subcommittee that they have conducted an extensive investigation. They have taken a look very specifically at these equitable subordination, disallowance, and recharacterization claims and they have [c]ome to a reasoned conclusion that the consideration being provided both in the form of the $35 million as well as all of the other assumptions of liabilities is more tha[n] enough to justify this release."). Because it constitutes the proceeds of estate claims and causes of action involving willful misconduct by ESL, ESL does not have recourse to, or any other right of recovery from, the Credit Bid Release Consideration.

[*Remainder of page intentionally left blank*]

---

[11] *See, e.g., In re Lyondell Chemical Co.*, 544 B.R. 75, 92 (Bankr. S.D.N.Y. 2016) (The purpose of [recharacterization] is so "that fraud will not prevail, that substance will not give way to form, [and] that technical considerations will not prevent substantial justice from being done.").

**Conclusion**

22.     The Disclosure Statement for Amended Joint Chapter 11 Plan should be approved.

Dated: May 28, 2019
       New York, New York

                         /s/ *Paul M. Basta*
                         PAUL, WEISS, RIFKIND,
                         WHARTON & GARRISON LLP
                         1285 Avenue of the Americas
                         New York, New York 10019
                         Tel: 212-373-3000
                         Fax: 212-757-3990
                         Paul M. Basta
                         Kelley A. Cornish
                         Lewis R. Clayton

                         *Counsel to the Debtors Acting at the Direction*
                         *of the Restructuring Subcommittee of the Board of Directors*
                         *of Sears Holdings Corporation*