Amish R. Doshi, Esq.  
**DOSHI LEGAL GROUP, P.C.**  
1979 Marcus Avenue, Suite 210E  
Lake Success, New York 11042  
Telephone: (516) 622-2335  

And  

Shawn M. Christianson, Esq.  
Valerie Bantner Peo, Esq.  
**BUCHALTER, A Professional Corporation**  
55 Second Street, 17th Floor  
San Francisco, California 94105-2126  
Telephone: (415) 227-0900  

Hearing Date: TBD  
Hearing Time: TBD  
Objection Date: May 28, 2019  

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**SEARS HOLDINGS CORPORATION, et. al.,**<br><br>Debtors. | Chapter 11<br><br>Case No.   18-23538 (RDD)<br><br>Jointly Administered |

**ORACLE'S LIMITED OBJECTION AND RESERVATION OF RIGHTS REGARDING DEBTORS' (I) NOTICE OF ASSUMPTION AND ASSIGNMENT OF ADDITIONAL EXECUTORY CONTRACTS [CM-ECF D.E.  3950] AND (II) NOTICES OF REJECTION OF EXECUTORY CONTRACTS [CM-ECF D.E.  3879 AND 3915]**

Oracle America, Inc., successor in interest to PeopleSoft, Inc., Maxymiser, Inc. Responsys, Inc. and Global Logistics Technologies, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned Chapter 11 cases, submits this reservation of rights ("Rights Reservation") in response to (1) the *Notice of Assumption and Assignment of Additional Executory Contracts* filed on May 20, 2019 [CM-ECF D.E. 3950] ("Assumption Notice"); (2) the *Notice of Rejection of Executory Contracts* filed on May 15, 2019 [CM-ECF D.E. 3879] ("May 15 Rejection Notice"); and (3) the *Notice of Rejection of Executory Contracts* filed on May 16, 2019 [CM-ECF D.E. 3915] ("May 16 Rejection Notice" and, together with the May 15

Rejection Notice, the "Rejection Notices") filed by the above-captioned debtors, Sears Holdings Corporation, *et al.* ("Debtors").

## I.     INTRODUCTION

1. Oracle's agreements are, or pertain to, licenses of intellectual property that are not assignable absent Oracle's consent, pursuant to both the underlying license agreements and applicable law.

2. Oracle and the Debtors are party to a number of agreements pursuant to which the Debtors license Oracle software and obtain related services. Oracle's agreements provide the Debtors with two categories of software: software installed locally ("On Premise") and software installed on Oracle's servers and accessed by Debtors ("Cloud").

3. The February 8, 2019 Sale Order[1] authorized the sale of substantially all the Debtors' assets to Transform HoldCo LLC ("Transform").

4. The Sale Order also authorized Transform to designate certain of the Debtors' executory contracts for assumption and assignment to Transform.

5. Following Court approval of the sale, Oracle has been in contact with Transform regarding the potential assumption and assignment of various Oracle agreements to Transform. Pursuant to those discussions, the parties determined that Transform would not seek Oracle's consent to assumption and assignment of the Debtors' Cloud agreements.

6. However, Transform indicated it did wish to obtain Oracle's consent to the assumption and assignment of certain Oracle On Premise agreements.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them by the Debtors in the Assumption Notice.

2

7. The Assumption Notice identifies a single agreement between Oracle's and the Debtors' predecessors: a Master Software Services Agreement dated December 23, 2005 ("MSSA").

8. The Rejection Notices identify numerous Oracle agreements, including, as anticipated, certain Oracle Cloud agreements.

9. However, the Rejection Notices also identify an amendment to the MSSA, as well as support service agreements related to Oracle On Premise applications, such as Global Logistics ("G-Log") and Business Intelligence/Oracle Transportation Management ("OTM").

10. Oracle objects to the Assumption Notice and the Rejection Notices, and does not consent to the assumption and assignment of its agreements, for the following reasons:

   a) First, the Assumption Notice identifies the MSSA for assumption and assignment to Transform, while the Rejection Notice purports to reject amendment 2 to the MSSA. If the MSSA is to be assumed and assigned, it must be assumed and assigned "in toto."

   b) Second, as presently formulated, the Assumption Notice does not identify the individual On Premise application licenses that Transform intends to use, if any. The Debtors must identify those individual On Premise application licenses for assumption and assignment – even if those products will be unsupported or supported by a third party. Otherwise, those licenses will be rejected by operation of the Debtors' proposed plan and any continued use of those On Premise applications would be unlicensed.

   c) Finally, to the extent that the Debtors have identified the MSSA as a "catch all" for the individual On Premise application licenses that Transform wishes to use, Oracle objects to the stated $0 cure amount. All defaults under the individual On Premise licenses must first be cured.

## II. FACTUAL BACKGROUND

11. Oracle and the Debtors entered into the MSSA on December 23, 2005.[2]

---

[2] The MSSA is confidential. Oracle believes the Debtors and Transform possess a complete copy of the MSSA. Any party in interest seeking a copy of the MSSA should contact Oracle's undersigned counsel; however, Oracle reserves the right to withhold the MSSA from any requesting party in interest other than the Debtors.

3

12. The MSSA provides general terms and conditions upon which the Debtors may separately obtain Oracle application licenses and related support services.[3]

13. The MSSA was subsequently amended on December 24, 2010 and again on January 8, 2016, thereby (among other things) extending the term of the MSSA to December 23, 2020.

14. The above-captioned case was filed on October 15, 2018. An order approving joint administration was entered shortly thereafter.

15. The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

16. The Debtors filed the Sale Motion on November 1, 2018, seeking Court authority to sell the Debtors retail stores and related assets as a going concern or, alternatively, on a liquidation basis.

17. The Sale Order was entered on February 8, 2019 and the sale to Transform closed on February 11, 2019.[4]

---

[3] MSSA §§ 2.1, 2.2, 3.1, 4.2, 9.1, 9.2.

[4] The Sale Order provides that:

> No provision of this Sale Order, the Sale Motion, or the Asset Purchase Agreement shall authorize the Debtors or the Buyer as applicable to use any software or other intellectual property (the "Proprietary Information") owned by or licensed from, or any software-related services provided by, SAP Industries, Inc. and its affiliates SAP America, Inc. and Concur Technologies, Inc. (collectively, "SAP") and Oracle America, Inc. including its partner Rimini Street (collectively, "Oracle"), to the benefit of any other party under any Services Agreement or otherwise to the extent prohibited by the contracts governing such Proprietary Information or software-related services.
> No provision of this Sale Order, the Sale Motion, or the Asset Purchase Agreement shall authorize the Debtors or the Buyer as applicable to transfer or sell any Proprietary Information to the Buyer licensed from SAP, Oracle, Microsoft Corporation and its wholly-owned affiliates, Microsoft Licensing, GP, and Microsoft Online, Inc. (collectively, "Microsoft"), LinkedIn Corporation, as applicable, absent the consent of SAP, Oracle, Microsoft, or LinkedIn Corporation, as applicable, to the extent such consent is required under the applicable agreement and such provision is enforceable under applicable law.

Sale Order ¶¶ 68 & 69.

18. The time for the Debtors to designate contracts for assumption and assignment to Transform ended on May 13, 2019 ("Designation Deadline"). [CM-ECF D.E. 3171]

19. On May 8, 2019, the Debtors filed a Notice of Assumption and Assignment of Additional Executory Contracts ("May 8 Designation Notice") [CM-ECF D.E. 3761], which identifies an agreement with Rimini Street, Inc., ("Rimini") a company unrelated to Oracle that provides software support services for Oracle licensed software, as follows:

| Counter Party/ Counterparties | Contract Type and Description | Contract Executed Date | Contract Expiration Date | Contract Number | Cure Amount |
|---|---|---|---|---|---|
| Rimini Street | IT-Rimini Street – Statement of Work 01 (PeopleSoft Support Services (2016) | 9/30/2016 | 9/29/2019 | CW2319307 | $0.00 |

20. Oracle filed a reservation of rights in response to the May 8 Designation Notice [Dkt. No. 3911] in order to raise Oracle's concern that the Debtors identified the Rimini support agreement, but did not identify the underlying Oracle licenses.

21. The fact that Debtors are seeking to assign to Transform a Rimini support agreement necessarily shows that Transform intends to use the underlying Oracle licenses software, as Transform would not need any support for software it is not using.

22. Use of Oracle's copyrighted software without a license is copyright infringement.

23. The May 15 Rejection Notice identifies the following Oracle agreements:

| Counter Party/Counterparties | Contract Type and Description | Contract Number | Contract Executed Date | Contract Expiration Date |
|---|---|---|---|---|
| Oracle America, Inc. – 402651 | SYW – Oracle – OD for Email Marketing – 2018 | CW2339264 | 7/9/2018 | 7/8/2020 |
| Oracle America, Inc. – 402651 | MKTG – Home Services – Oracle- | CW2340060 | 9/8/2018 | 9/7/2019 |

5

| | Maxymiser – 2018 | | | |
|---|---|---|---|---|
| Oracle America, Inc. – 402651. | SYW – Oracle – MSA – 2016 | CW2311500 | 3/25/2016 | 3/24/2021 |
| Oracle America, Inc. – 402651 | HS-Oracle - OD for HS Email Services – 2018 | CW2339405 | 6/1/2018 | 5/31/2018 |
| Oracle America, Inc. – 402651 | SYW – Oracle – OD - 2018 | CW2339388 | 6/1/2018 | 5/31/2020 |
| Oracle America, Inc. | ITG – Oracle Amendment 2 to MSA-2005 | CW2309081 | 12/24/2015 | 12/23/2020 |
| Oracle America, Inc. | IT – Oracle – Cloud Services Agreement – 20160531 | CW2318109 | 5/31/2016 | 5/30/2021 |
| Oracle America, Inc. | n/a | CW2340060 | 9/8/2018 | 9/7/2019 |
| Oracle America | Oracle Weblogic OTM Renewal 2018 | | n/a | n/a |
| Oracle America | Oracle Weblogic 12K Renewal 2018 | | n/a | n/a |
| Oracle | n/a | CW2340060 | 9/8/2018 | 9/7/2019 |
| Oracle USA, Inc. | MySQL Ordering Document Under Master Services Software Agreement SLSA-19970-23-Dec-2005 | n/a | 9/26/18 | 9/28/19 |

24. The May 16 Rejection Notice identifies the following Oracle agreements:

| Counter Party/Counterparties | Contract Type and Description | Contract Number | Contract Execution Date | Contract Expiration Date |
|---|---|---|---|---|
| Oracle America, Inc. – 402651 | SYW – Oracle – OD FOR DELIVERABILITY - 2018 | CW2335726 | n/a | n/a |
| Oracle America | Oracle BI/Fusion 2018 Annual Maintenance | n/a | n/a | n/a |
| Oracle America | Oracle G-Log GC3 Bundle 2018 Annual Renewal | n/a | n/a | n/a |

25. Also, on May 16, 2019, the Debtors filed the Amended Joint Chapter 11 Plan of Sears Holding Corporation and Its Affiliated Debtors [CM-ECF D.E. 3894] ("Plan").

6

26. Article 9.1 of the Plan provides that all executory contracts not previously assumed, or assumed and assigned will be rejected upon confirmation of the Plan.

27. The Debtors filed the Assumption Notice on May 20, 2019, after the Designation Deadline, which identifies the MSSA as follows:

| Counter Party/ Counterparties | Contract Type and Description | Contract Number | Contract executed date | Contract Expiration Date | Cure Amount |
|---|---|---|---|---|---|
| Oracle | IT OPS – Oracle USA Inc – MSSA-2005 | SHCKCW1600 | 12/23/05 | 12/23/20 | $0.00 |

### III. ARGUMENT

#### A. The Debtors Must Assume and Assign The MSSA In Its Entirety.

28. The general rule is that if a debtor elects to assume an executory contract, it must assume the contract in its entirety. *See, e.g., N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531 (1984) (overturned by statute on unrelated grounds); *Empire State Bldg. Co. v. N.Y. Skyline, Inc. (In re N.Y. Skyline, Inc.)*, 432 B.R. 66, 77 (Bankr. S.D.N.Y. 2010) (an "indivisible agreement . . . must be assumed or rejected in toto").

29. This means "that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement." *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 197 Fed. Appx. 285, 288-89 (5th Cir. 2006) (internal citations omitted).

30. Whether an agreement is severable into components that may each be assumed or rejected is a question of state law. *See, e.g., United Air Lines, Inc. v. HSBC Bank USA (In re United Air Lines Inc.)*, 453 F.3d 463, 467 (7th Cir. 2006).

7

31. The MSSA is governed by Illinois law.[5]

32. "Under Illinois law, the test for severability depends on the intent of the parties ….The issue is whether the parties intended a single contract even though it may be expressed in separate agreements or whether they intended separate contracts even though they are 'bundled' together in one agreement." *In re Buffets Holdings, Inc.,* 387 B.R. 115, 120-121 (Bankr. D. Del. 2008) (internal citations omitted) (finding individual real property leases were not severable from master lease and could not be independently assumed or rejected). "[E]ven if the parties entered a multi-part contract, that contract cannot be severed after the fact if the parties entered it 'as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out.'" *Id.* at 122 (citing *In re United Air Lines Inc.*, 453 at 468-470).

33. The amendments to the MSSA refer to and amend the MSSA, cannot be understood or performed without the MSSA terms and conditions, and therefore were intended as "a single whole."

34. The Debtors appear to acknowledge this truth in the Assumption Notice, which states that the identified agreements "shall be deemed to include any and all applicable supplements, amendments, and/or addenda."

35. However, the Debtors have separately indicated in the May 15 Rejection Notice that they wish to reject Amendment 2 to the MSSA.

36. If the Debtors wish to assume the MSSA, they must assume it in its entirety and may not separately reject the MSSA amendments.

### B. The Debtors May Not Assume And Assign Oracle Agreements Absent Oracle's Consent.

37. Section 365(c) of the Bankruptcy Code provides, in relevant part:

---

[5] MSSA § 17.2.

8

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

38. Federal law makes non-exclusive copyright licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable.").

39. Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software.

40. Therefore, pursuant to Bankruptcy Code section 365, if the Debtors wish to assume and assign any Oracle agreement, including the MSSA, they may only do so with Oracle's consent.

41. The MSSA conditions any assignment of that agreement on the assignee's agreement to be bound to the terms of both the MSSA and all purchase orders, ordering documents and statements of work entered into pursuant to the MSSA.[6]

42. Thus, if the Debtors wish to assume and assign the MSSA, the Debtors must also identify all product software licenses the Debtors or Transform wish to use – regardless of

---

[6] MSSA § 17.1.

whether Transform wishes to utilize Oracle support prospectively, maintain the software without support, or obtain support from a third party.

43. Use of Oracle's copyrighted software without a license is copyright infringement.

**C. Prior to Assumption and Assignment, The Debtors Must Pay all Required Cure Amounts.**

44. Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

45. The Debtors have identified a $0.00 cure amount for the MSSA.

46. Oracle objects to the $0.00 cure amount to the extent that the Debtors are identifying the MSSA as an umbrella for the product licenses that are governed by the MSSA because some of the product licenses are in payment default and must be cured.

47. Here, the Debtors began licensing Oracle software via the MSSA and related purchase orders, ordering documents and statements of work in 2005.

48. Debtors also received support from Oracle for the Debtors' On Premise software, which includes not only updates, security patches, and bug fixes, but also includes entirely new version of the licensed software.

49. While some software vendors require customers to purchase new versions of software, customers who are on Oracle support are entitled to these new versions at no additional cost.

50. Further, updates, security patches, bug fixes and new version of the software are essential because the computer ecosystem (e.g., hardware, software and operating systems) is constantly changing. For example, when the MSSA was signed in 2005, Apple had yet to

10

release the iPhone; today, software that cannot interact with smartphones is of very limited value.[7]

51. Since 2005, then, the software in the Debtors' possession has changed through the provision of technical support by Oracle, and the Debtors must pay for all such support in order to maintain a license to use the software.

52. Oracle reserves all rights regarding the cure amount until the Debtors clarify which Oracle licensed products the Debtors (and Transform) intend to use pursuant to the MSSA.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

---

[7] *See*, MSSA Glossary definition of "Software" and "Enhancements."

## IV. CONCLUSION

53. For the reasons set forth above, Oracle objects to the Notice of Assumption and Notices of Rejection, and reserves its right to be heard on all issues set forth herein.

Dated: May 28, 2019　　　　　　　　　　　Respectfully submitted,
　　　　Lake Success, New York

　　　　　　　　　　　　　　　　　　　　By:  /s/ Amish R. Doshi
　　　　　　　　　　　　　　　　　　　　Amish R. Doshi, Esq.
　　　　　　　　　　　　　　　　　　　　**DOSHI LEGAL GROUP, P.C.**
　　　　　　　　　　　　　　　　　　　　1979 Marcus Avenue, Suite 210E
　　　　　　　　　　　　　　　　　　　　Lake Success, NY 11042
　　　　　　　　　　　　　　　　　　　　Tel: (516) 622-2335
　　　　　　　　　　　　　　　　　　　　E-Mail: amish@doshilegal.com

　　　　　　　　　　　　　　　　　　　　Shawn M. Christianson, Esq.
　　　　　　　　　　　　　　　　　　　　Valerie Bantner Peo, Esq.
　　　　　　　　　　　　　　　　　　　　**BUCHALTER, A Professional Corporation**
　　　　　　　　　　　　　　　　　　　　55 Second Street, 17th Floor
　　　　　　　　　　　　　　　　　　　　San Francisco, California 94105-2130
　　　　　　　　　　　　　　　　　　　　Telephone: (415) 227-0900

　　　　　　　　　　　　　　　　　　　　Deborah Miller, Esq.
　　　　　　　　　　　　　　　　　　　　Benjamin Wheeler, Esq.
　　　　　　　　　　　　　　　　　　　　**ORACLE AMERICA, INC.**
　　　　　　　　　　　　　　　　　　　　500 Oracle Parkway
　　　　　　　　　　　　　　　　　　　　Redwood City, California 94065
　　　　　　　　　　　　　　　　　　　　Telephone: (650) 506-5200

　　　　　　　　　　　　　　　　　　　　**Attorneys for Oracle America, Inc.**