WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
James N. Lawlor
Cassandra Postighone
    - and -
THE LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Telephone: 312-263-0272
Michael M. Mulder*
Elena N. Liveris*
*Pro hac application forthcoming

*Attorneys for Richard Bruce and Ronald Olbrysh*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In re:

SEARS HOLDINGS CORPORATION, *et al,*

                              Debtors.

Chapter 11

Case No. 18-23538 (RDD)

(Jointly Administered)

-----------------------------------------------------------------X

### **DECLARATION OF MICHAEL M. MULDER**

    1.    I have been a member in good standing of the State Bar of Illinois since 1975 and plan to file my appearance in this matter through association with a member of this Court.

    2.    I am one of the attorneys for Sears retirees Richard Bruce and Ronald Olbrysh.

1

3. All of the facts stated in this Declaration are true and correct within my personal knowledge and if called as a witness I could and would testify competently to the facts stated herein.

4. I submit this Declaration in support of the Motion of Retirees Pursuant to Section 1114(d) of the Bankruptcy Code, Directing the Appointment of a Committee of Retired Employees in the matter of *In re: Sears Holding Corporation, et. al,* Case No. 18-23538 (RDD).

5. I previously served as counsel for named class representative Bruce and class member Olbrysh, and as lead-Class Counsel for plaintiffs and the class in *In re: Sears Retiree Group Life Insurance Litigation*, Civil Action No. 97 C 7453 (D. Ill.) ("Sears Life Insurance Litigation"), which resulted in a Stipulation of Settlement with vested retiree life insurance benefits (the "Stipulation of Settlement") for the class.

6. Ronald Olbrysh is presently the Chairman of the Board of Directors of the National Association of Retired Sears Employees ("NARSE"). Richard Bruce is presently on the Board of Directors and is the Director of Benefits of NARSE.

## *In re: Sears Retiree Group Life Insurance Litigation*

7. Sears Group Life Insurance Plan was initially insured by Allstate Life Insurance Company, and was commonly referred to as "paid-up retirement life insurance" by Sears employees.

8. For example, documents from the Sears Life Insurance Litigation showed that as early as May 1959, the Sears employee handbook informed employees that they would receive "**PAID UP LIFE INSURANCE** – free life insurance for the rest of [their lives]" if they participated in the Group Life Insurance Plan for ten consecutive years prior to retirement.

9. The "Balanced Benefit Program" section of the March 1960 employee handbook further contained a benefits summary chart which included the following similar representation regarding life insurance benefits at retirement: "**PAID-UP GROUP LIFE INSURANCE** Free life insurance for the rest of your life (provided you have been a member of the Plan for at least 10 years)."

10. Effective January 1, 1989, Sears Group Life Insurance Plan became insured by Metropolitan Life Insurance Company. This plan was amended on November 1, 1992, to discontinue providing any life insurance coverage except to retirees and certain disabled associates. It was renamed Sears Retiree Group Life Insurance Plan ("the Plan").

11. Effective August 1, 2010, The Prudential Insurance Company of America became the underwriter and administrator of the Plan.

12. Eligibility for Retiree Life Insurance under the Plan required being insured under the Plan as a retiree on December 31, 1996; or being insured under the Plan as an associate on October 31, 1992, and having retired from Sears after December 31, 1996, but before January 1, 1998.

13. To be eligible for Retiree Life Insurance at the time, retired employees must have been: at least 55 years of age with at least 20 years of continuous service, or at least 60 years of age with at least 10 years of continuous service.

14. The eligible Amount of Retiree Life Insurance was equal to 40% of the Amount of Life Insurance in effect on August 31, 1987, up to a maximum Amount of Retiree Life Insurance of $100,000. (The amount of life insurance coverage for each employee varied, and was calculated by a formula based on salary).

15. Effective January 1, 1998, a change was implemented under the Sears Group Life Insurance Plan that resulted in a reduction of the Sears provided retiree life insurance over a 10-year period ending with year 2007.

16. This reduction in retiree life insurance affected approximately 80,000 retirees and caused a serious rift between many of these retirees and Sears.

17. As a result, a number of suits were filed against Sears by retirees who believed they had been promised "free" or "paid up" life insurance for the rest of their lives. In addition, many retirees protested in angry demonstrations against Sears.

18. The various lawsuits by retirees were eventually consolidated in the United States District Court in Chicago, Illinois, and were assigned to Judge James B. Moran.

19. The parties began negotiations in March, 2001, at a time when they were preparing to try the breach of fiduciary duty claims of a group of twelve named plaintiffs. On June 1, 2001, Sears moved for summary judgment on the breach of fiduciary duty claims of each of the named plaintiffs in this first group. On June 5, 2001, after extensive mediation, the parties reached agreement to settle the case.

*Class Settlement*

20. On October 10, 2001, the Court directed the parties to provide notice of the class-wide settlement.

21. Approximately 56,000 retirees filed claims to participate in the settlement. Another 128 rejected the settlement and the remaining retirees did not file a claim.

22. A final approval hearing on the settlement was conducted on March 5, 2002 by Judge Moran, who approved the Stipulation of Settlement. *See* Minute Order (Case No. 1-97-cv-07453, Dkt. 191), attached hereto as Exhibit 1.

23. The Settlement provided that Sears could not further accelerate the life insurance reduction schedule that began in 1998 and it could not reduce the final insurance amount to less than $5,000, regardless of whether a class member completed and filed a claim form.

24. Class members who timely mailed claim forms that were approved were guaranteed at least one less annual reduction than the scheduled ten reductions. Their final insurance amount would therefore be at least $5,000 plus the amount of one year's reduction. The "skipped" reduction was the reduction previously scheduled for the year 2003.

25. For example, the original face value of Bruce's Sears Retiree Group Life Insurance was $64,000. After the Settlement, Bruce received the forgiveness of one of 10 years' reduction of $5,900.00 and the $5,000 guarantee, resulting in a reduced amount of coverage of $10,900. See additional example provided at paragraph 7 in the Stipulation of Settlement. (Dkt. 3759-1, Ex. A to DOL Objection).

26. Correspondence dated March 2007 from the Sears Holdings Retirement Service Center provided the final value of class members' basic Sears Retiree Group Life Insurance, and if they opted to participate in the Sears Group Retiree Life Insurance Replacement Plan.

27. This correspondence also included "Clarifications to January 1, 2007 SPDs" which explained that any covered retiree who made a proper claim under the Settlement "were subject to nine (9) instead of ten (10) reductions."

28. All along, Sears provided the life insurance with no reduction for a period of 20 years.

29. Sears Holdings has been fully aware of all the retirees affected by the reduction in the retiree life insurance because it periodically was in communication with the retirees. The

same group of retirees was covered by Securian and were notified by Sears and Securian in April 2019 about the discontinuance of the retiree life insurance.

### *NARSE*

30. NARSE is the oldest national retiree organization in the country. It represents the interests of 50,000+ retirees nationwide, and was formed to protect and preserve retirement benefits.

31. NARSE was formed in 1997 after then former Sears chairman, Arthur Martinez, announced he was reducing the promised retiree life insurance benefits over the next ten years. NARSE vigorously supported the efforts of the 67 individual retirees, including retiree Bruce, when they filed in *In re: Sears Retiree Group Life Insurance Litigation*.

32. NARSE is an all-volunteer association with no paid employees, and is solely funded by retiree membership dues and voluntary contributions.

33. The dues collected are used to support NARSE's communication efforts with thousands of retirees across the country, to Sears's directors, government legislators, the media, and the public at large.

34. NARSE regularly communicates with thousands of Sears's retirees with its 12-page STRAIGHT TALK newsletter and its popular website, www.narse.org, updated daily with current retiree and retail industry news and comments. The website has an average of 3,000 visits a month with 4,500 pages viewed.

35. NARSE also maintains an active e-mail network used to inform retirees about breaking news about Sears and Sears Holdings Corp. The latest e-mail "blast" went out to retirees shortly after March 15, 2019 informing retirees that Sears Chairman Lampert terminated their life insurance. This cancellation message was also posted on NARSE's webpage.

36. As a result of the life insurance cancellation, the chairman of NARSE, retiree Olbrysh, received an average of twenty phone calls daily from retirees about this decision by Sears Holdings.

37. NARSE tracks legislation impacting and protecting retiree benefits. There are many legislative proposals regarding changes in healthcare/Medicare coverage including prescription drugs.

38. NARSE has monthly meetings with its members and other Sears retirees. All of the monthly meetings include a toll-free conference call that NARSE members across the country can access. NARSE has members in each of the country's fifty states.

39. NARSE provide speakers to bring information to local retiree clubs and has reunited thousands of retirees with former associates and friends.

*March 2019 Termination of Benefits*

40. On March 11, 2019, three days prior to the March 15, 2019 effective date of the termination of the retiree life insurance benefits, Sears Holdings Chief Human Resources officer, Robert Weber, sent retiree Olbrysh an email mentioning the "'heads up' regarding retiree life coverage in the voicemail."

41. On March 12, 2019 retiree Olbrysh wrote back explaining the retiree life insurance was subject to the Sears Life Insurance Litigation. He further pointed out that the life insurance amount under the Stipulation of Settlement could not be reduced and took the position that "Sears cannot arbitrarily cancel such insurance as long as the company is still in existence. I suggest you bring this immediately to the attention of your General Counsel."

42. Retirees Bruce and Olbrysh believe there are members of the Sears Life Insurance Litigation class who have recently passed away and whose beneficiaries have been deprived of

their deceased spouse's life insurance payment due to the Debtors' unilateral termination of the policies.

43. For example, one Sears retiree who is believed to be a former member of the class in the Sears Life Insurance Litigation passed away on May 6, 2019. Because his death came 21 days after the Debtors unilaterally imposed termination of his vested benefit of April 15, 2019, his life insurance policy will not be paid by Securian, the last life insurance company providing coverage for Sears' retirees under the Stipulation of Settlement.

44. If the Court directs a retiree committee to be formed, one of the important issues it can assist the Court in addressing is how to identify those beneficiaries of deceased retirees, and the filing of their administrative claims for payment in light of Sears Holdings' actions to terminate vested retiree life insurance without this Court's approval.

[remainder of page intentionally left blank]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 28, 2019

_____
Michael M. Mulder

# EXHIBIT 1

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7453 | **DATE** | 3/5/2002 |
| **CASE TITLE** | In Re: In Re: Sears Retiree Group Life etc | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Fairness hearing held. Plaintiffs' unopposed motion to file corrected brief is granted. Defendants' motion for leave to file a revised statement regarding the fees claimed by Schiffrin & Barroway is granted. Plaintiffs' motion for final approval of settlement is granted. (DRAFT ORDER TO FOLLOW)

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 0 6 2002 date docketed | |
| ✓ | Docketing to mail notices. | | 191 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAH | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 MAR -5 PM 4: 30 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |