# EXHIBIT 1

( Original fund Lease

**Parties**

     THIS LEASE made and entered into as of this 18th day of December , 19 64 , between PATTON AVENUE DEVELOPMENT CORPORATION,

a North Carolina corporation having its principal office at P. O. Box 1747, Greensboro, North Carolina. 27402
(herein referred to as "Landlord"), and S. S. KRESGE COMPANY, a Michigan corporation having its principal office at 2727 Second Avenue, Detroit, Michigan 48232 (herein referred to as "Tenant"),

     WITNESSETH: That in consideration of the rents, covenants and conditions herein set forth, Landlord and Tenant do hereby covenant, promise and agree as follows:

**Demised Premises**

     1. Landlord does demise unto Tenant and Tenant does take from Landlord for the term hereinafter provided, and any extension thereof, the following property: a completed store unit to be constructed, as hereinafter specified, by Landlord at its expense on part of the land described in Exhibit "A", attached hereto and made a part hereof, situated in the City of Asheville , County of Buncombe ; State of North Carolina , said store unit to be a part of the Commercial Development known as K-MART PLAZA – ‐ – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – to be in the location outlined in red on Exhibit "B", attached hereto and made a part hereof, and to be of the following dimensions:

     Tenant's store unit shall contain approximately one hundred five · thousand one hundred forty-nine (105,149) square feet, consisting of the following rooms:

     (a) Main storeroom: 340 feet in width by
                           220 feet in depth – – – – – – = 74,800 square feet

     (b) Food super market: 120 feet in width by
                            185 feet in depth – – – – – – = 22,200 square feet

     (c) Free standing automobile center: 60 feet in
           width by 121 feet 2½ inches in depth plus
           extension 17 feet 11½ inches in width by
           48 feet 9 3/4 inches in depth – – – – – – = 8,149 square feet

Said completed store unit, together with the licenses, rights, privileges and easements set forth in Article 9 hereof, shall be hereinafter collectively referred to as the "demised premises".

**Term**

     2. The term of this lease shall commence upon the "date of occupancy by Tenant", as that term is defined in Article 10 hereof, and shall terminate upon such date as shall be twenty – – – ( 20 ) years from the last day of the month in which said date of occupancy by Tenant shall occur; provided, however, the term of this lease may be extended as provided in Article 12 hereof. The phrase "lease term", as used in this lease, shall be the term of this lease and any extension thereof pursuant to said Article 12.

**Annual Minimum Rental**

     3. Tenant shall, during the lease term, pay to Landlord, at such place as Landlord shall designate in writing from time to time. an annual minimum rental of ONE HUNDRED THIRTY-SIX THOUSAND SEVEN HUNDRED – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – DOLLARS ($136,700.00 – – ), unless abated or diminished as hereinafter provided, in equal monthly installments on the first day of each month, in advance, commencing upon the first day of the lease term; provided, however, in the event the first day of the lease term shall not be the first day of a calendar month, then the rental for such month shall be prorated upon a daily basis.

(10/22/64)

**Additional Rental**

4. In addition to the aforesaid annual minimum rental, with respect to any lease year during the lease term in which its "gross sales", as hereinafter defined, shall exceed the sum of FIVE MILLION FOUR HUNDRED THIRTY-FIVE THOUSAND – – – – – – – – – – – – – – – – DOLLARS ($5,435,000.00 ) Tenant shall pay to Landlord as additional rental an amount which shall be:



one – – – – – – – – – – – per cent ( 1 %) of gross sales exceeding FIVE MILLION FOUR HUNDRED THIRTY-FIVE THOUSAND – – – – – – – – DOLLARS ($5,435,000.00 ) and not exceeding

DOLLARS ($ ), and

per cent ( %) of gross sales exceeding

DOLLARS ($ ) and not exceeding

DOLLARS ($ ), and

per cent ( %) of gross sales in excess of

DOLLARS ($ ).

The foregoing dollar amount or amounts shall hereinafter be referred to as the "minimum basis of sales".

Said additional rental shall be paid on or before the twenty-first (21st) day following the end of each "lease year". For the purposes of this lease, a "lease year" shall be each successive period of twelve (12) consecutive calendar months from the last day of the month in which said lease term shall commence. Sales for any period preceding the first lease year shall be included in gross sales reported for the first lease year. Tenant shall, on or before the twenty-first (21st) day following the end of each lease year or "lesser period", deliver to Landlord a statement signed by an officer of Tenant certifying the true amount of the gross sales for such lease year or lesser period. The term "lesser period", as used herein, shall be any period beginning on the first (1st) day of any lease year and ending, by reason of the termination of this lease, prior to the end of such lease year. In the event that a period of more or less than twelve (12) months shall be so required to be included in any such statement, then said minimum basis of sales shall be proportionately increased or decreased, as the case may be.

Should Tenant at its option operate its fountain and lunch counter prior to opening its store unit for other business, such operation shall not be an acceptance of the demised premises, or an acknowledgment that the representations and warranties of Article 11 shall have been fulfilled, or an opening for business under Article 10 or any other provision of this lease, but sales from such operation shall be included in Tenant's reported gross sales for the first lease year.

Landlord or its agent may inspect Tenant's record of gross sales in said store unit annually, provided such inspection shall be made at Tenant's principal office within six (6) months after the statement of sales shall be delivered to Landlord and shall be limited to the period covered by such statement. Except to the extent that disclosure shall be required for any bona fide sale or mortgage of demised premises or for legal proceedings in any court, at law or in equity, Landlord shall hold in confidence sales figures or other information obtained from Tenant's records.

The term "gross sales", as used herein, shall be the total sales of merchandise or services made by Tenant, or any occupant, in said store unit whether wholesale or retail, cash or credit (including merchandise ordered on the store unit premises and delivered from another place), except that the following shall be excluded:

    (a) Sales of merchandise subsequently returned for refund or credit, merchandise transferred to a warehouse or another store of Tenant, discounts on merchandise which shall be allowed to employees of Tenant, or merchandise which shall be issued in redemption of trading stamps, if any, which shall have been issued free of charge to Tenant's customers at the time of sale of other merchandise or services;

    (b) Any and all taxes levied upon, assessed against, or measured by the receipt or purchase of merchandise by any occupant of said store unit, and any and all occupational sales taxes and other taxes levied upon, assessed against, based upon, or measured by (i) such occupant's gross receipts, or any part thereof, or (ii) the sale or sales price of merchandise and services, or either, and which shall be payable by such occupant, whether or not

Additional
Rental
(Cont'd)

collected by such occupant from its customers as reimbursement or as agent of the taxing authority, and whether or not the same shall be commonly known as a sales tax, use tax, retailers' occupational tax, gross receipts tax or excise tax; provided, however, said taxes to be excluded from gross sales shall not include any net income tax, franchise tax, or any other tax not levied upon or computed upon gross sales or gross receipts, or any portion thereof; provided, further, said taxes to be excluded from gross sales shall be excludable regardless of whether imposed under any existing or future orders, regulations, laws, statutes or ordinances;

(c) Receipts from cigarettes, lockers, stamp machines, public telephones, pay toilets, "kiddie rides", money orders and all licenses sold to the public;

(d) Service and interest charges for time payment accounts and charge accounts; and

(e) All sales of merchandise or services made by any supermarket grocery store, which shall occupy any portion or portions of said store unit, provided that the aggregate area of said portion or portions shall not exceed twenty-two thousand two hundred ( 22,200 ) square feet of floor area.

The term "store unit" as utilized in this Article shall include trucks, trailers or vans from which sales are made directly to the public from anywhere on the "common facilities" areas as hereinafter defined.

New Build-
ing by
Landlord

5. Said store unit shall be completed and delivered to Tenant promptly and with due diligence, giving consideration to scarcity of materials, strikes, lockouts, fire or other casualty, governmental restrictions and regulations, and construction delays; and Landlord warrants that a general contract for construction of said store unit and the buildings and improvements referred to in Article 11 hereof shall be let, rough site grading shall be completed and foundations and footings commenced for Tenant's store unit and other buildings, if any, specified in Article 11 hereof not later than June 1, 1965 If for any reason whatever Landlord shall fail to comply fully with this warranty, Tenant shall have, in addition to other remedies which may be available to it by law or otherwise, the option to terminate this lease by notice to Landlord; provided, further, in the event that, regardless of the reason therefor, said store unit shall not have been completed and the lease term shall not have commenced prior to June 1, 1966 , then Tenant shall, at any time thereafter, have the further option of terminating this lease by notice to Landlord. Notwithstanding anything to the contrary herein contained, in the event that the lease term shall not have commenced prior to such date as shall be seven (7) years from the date of this lease, then this lease shall be automatically terminated without further act of either party hereto.

Plans and
Specifi-
cations

6. Said store unit shall be constructed by Landlord, at its sole cost and expense, in accordance with working plans and specifications prepared by Landlord which shall, with respect to standards of construction and division of responsibility for supplying materials and equipment, substantially conform to the requirements of Tenant's typical store plans and specifications Set No. D-1152 consisting of sheets D-1b, D-2b, D-3 thru D-11, DE-1b, DE-2b, DE-3b, DE-4, DM-1b, DM-2 thru DM-5 all dated May 1, 1964 as are the corresponding specifications except for Pages 1 and 2 of the Hardware Schedule that have minor revisions through September 1, 1964. Supplemental Sheets include D-1b-S1, D-8A, DE-1b-S1, DM-1b-S1 all dated November 11, 1964 and Sheet D-6-S dated November 10, 1964. Plans and specifications for the food super market Set No. DF-1152 include sheets DFA-1a, DFE-1a, DFE-2a, DFM-1a and DFM-2a all dated November 8, 1963 as are the corresponding specifications. Plans and specifications for the free standing automobile cent Set No. ASC-1152 include sheets 1a thru 6a, E1a thru E5a and M1a thru M4a, all dated December 4, 1964, as are the corresponding specifications. Costs of constructing the food super market are to be divided between Landlord and Tenant as outlined in letter dated December 2, 1964 and entitled "Division of Responsibilities for Food Market." Receipt of the above is hereby acknowledged by Landlord.

Receipt of the above is hereby acknowledged by Landlord. Said typical plans and specifications are subject to the following exceptions and such other deviations as may be approved in writing by Tenant's Construction Department:

(a) Such modifications of arrangement of space, location of entrances, exits, and columns and other structural members as shall be indicated on a store layout drawing which shall be prepared by Tenant and be delivered to Landlord within thirty (30) days after receipt of Landlord's written request therefor, which request shall be accompanied by preliminary building outlines, together with any available elevations and sections;

(b) Changes of type and standards of construction and of arrangement to the extent as shall be required by applicable laws, codes or ordinances.

3

(6/3/64)

**Plans and Specifications (Cont'd)**

Said working plans and specifications shall be submitted to Tenant for approval prior to commencement of construction and such approval shall not be unreasonably withheld. Within sixty (60) days after receipt of such working plans and specifications Tenant shall, in writing, inform Landlord of all exceptions or objections thereto, and Landlord shall revise said working plans and specifications to satisfy any such exceptions or objections and resubmit them for Tenant's approval after any such revision. In the event Tenant shall not so object in writing within said sixty (60) days, said working plans and specifications shall be approved and accepted for the purposes hereof.

Said typical store plans and specifications, store layout drawing and working plans and specifications, as approved by Tenant, shall be a part of this lease.

**Guarantee of Materials**

7. Landlord shall unconditionally guarantee all work performed by Landlord, or at its expense, in the construction of Tenant's store unit against defective workmanship and materials either for the period of one (1) year from the date of completion of said store unit or for the period of any guarantee therefor given Landlord, whichever period shall be the longer.

**Advance Possession for Fixturing**

8. For a period of four (4) weeks prior to completion of said store unit by Landlord, Tenant shall have the privilege, rent free, of entering its store unit for installing storage bins, storing merchandise, and other purposes not creating unreasonable interference with the work of Landlord. Such entry shall not be construed as acceptance of the store unit under the provisions of this lease, or as a waiver of any of the provisions hereof.

**Parking and Other Common Areas**

9. Prior to the date of commencement of the lease term, Landlord shall construct (as hereinafter provided) the sidewalks, service drives, parking aisles, driveways, streets and parking areas (all of which shall be hereinafter sometimes referred to as the "common facilities") substantially as shown on Exhibit "B". The aggregate area provided for the parking of automobiles shall, during the lease term, be either in the ratio of four (4) square feet of parking area for each square foot of floor area contained in buildings in said Commercial Development or sufficient to accommodate not less than eight hundred – – – – – – – – ( 800 ) automobiles on basis of arrangement depicted on Tenant's typical store plans, whichever shall be the greater. All sidewalks shall be of concrete construction, and all service drives, parking aisles, driveways, streets and parking areas shall be graded, levelled and paved with concrete or asphalt, and marked for the orderly distribution of automobiles. Landlord covenants, represents and warrants that, during the lease term, there shall be adequate sidewalks, driveways and roadways for automotive and pedestrian ingress and egress to and from the Commercial Development and adjacent public streets and highways. Landlord shall make no charge of any kind or nature for the use of said common facilities or any additions thereto. All of said common facilities shall be constructed in a workmanlike manner and shall, during the lease term, be maintained by Landlord, at its sole cost and expense, in good order and repair and in an adequate, sightly and serviceable condition. Said maintenance shall include, without limitation, keeping the same reasonably free and clear of foreign objects, papers, debris, obstructions, standing water, snow and ice, and supplying illumination during Tenant's business hours, and a reasonable period prior and subsequent thereto, to a minimum of one and one-half (1½) foot candles measured at ground level, for each square foot of common facilities. To assure the foregoing the Landlord shall cause the common facilities to be thoroughly cleaned not less than once weekly, and more often if necessary, and snow to be promptly removed on every occasion where it impedes the use of said facilities.

During the lease term, Landlord shall maintain a paved driveway at the rear of Tenant's store unit in order to provide convenient ingress and egress from the delivery or service entrance of said store unit to adjacent public streets and highways for the purpose of receiving and delivering merchandise and otherwise servicing said store unit. Said driveway shall be of sufficient width so as to permit the passage, unloading and, if necessary, the turning around of trailer trucks and other commercial vehicles.

The term "common areas", as used in this lease, shall include the following: (a) said common facilities indicated on Exhibit "B" and those which shall at any time and from time to time be contained in said Commercial Development or any future enlargement thereof, (b) areas within the Commercial Development which shall be open to the public generally, such as rest rooms and other facilities, if any, and (c) all other areas (except those areas which shall be occupied from time to time by building structures) included within the confines of the land described in Exhibit "A" or any enlargement of said Commercial Development.

During the lease term, Landlord shall keep Tenant insured against all statutory and common law liabilities for damages on account of injuries to property or person, including death, sustained by any person or persons while within said common areas, in a policy or policies in the amount of One Hundred Thousand Dollars ($100,000) with respect to injury to any one person and in the amount of Three Hundred Thousand Dollars ($300,000) with respect to any one accident or disaster, and in the amount of Twenty-five Thousand Dollars ($25,000) with respect to damage to property; and Landlord shall also indemnify and save Tenant harmless against any such liability. Any such policies shall bear endorsements to the effect that Tenant shall be notified not less than five (5) days in advance of any modification or cancellation thereof. Copies of such policies, so endorsed, or certificates evidencing the existence thereof, shall be promptly delivered to Tenant upon written request therefor.

4

(7/20/64)

**Parking and Other Common Areas (Cont'd)**

Landlord hereby gives and grants unto Tenant, its agents, employees, customers and invitees the full licenses, rights, privileges and easements to use said common areas, in common with Landlord and other tenants of the land described in said Exhibit "A", and their respective agents, employees, customers and invitees. No persons other than those described in the preceding sentence of this paragraph shall be permitted to park upon or exercise any other rights over any of the parking areas of said Commercial Development. In the event that unauthorized persons, including tenants or invitees of tenants occupying buildings now, or at any future time located beyond the limits of the land described in Exhibit "A", utilize said parking areas for parking or other purposes to an extent which shall be objectionable to Tenant, Landlord shall, upon written request by Tenant, take whatever action as shall be so requested to prevent said unauthorized utilization, including the erection of fences or other barricades.

Tenant may, at its election, from time to time, utilize portions of the common areas for carnival or circus type shows, rides and entertainment, outdoor shows, home shows, automobile shows or such other uses which in Tenant's judgment tend to attract the public. Tenant shall give Landlord notification of such intended use a reasonable time in advance thereof, and on request supply Landlord with reasonable proofs of adequate insurance or indemnification against injuries to property or person, including death, sustained in connection therewith. In addition, Tenant shall be responsible for any physical damage to said common areas resulting from said use. Rent, if any, from such use shall be included as part of "gross sales" under Article 4 hereof.

**Store Opening**

10. The term "date of occupancy by Tenant", as used in this lease, shall be the first to occur of the following two dates: (a) the date upon which Tenant shall open its said store unit for business, or (b) the date which shall be sixty (60) days (plus a period of time equal to any delays due to conditions beyond Tenant's control) after the date upon which (i) said store unit shall be completed in accordance with said working plans and specifications and the possession thereof shall be tendered to Tenant, and (ii) all of the representations and warranties set forth in Article 11 with respect to said Commercial Development shall be fulfilled; except, however, notwithstanding anything to the contrary in this lease contained, in the event said date of occupancy shall occur during the period between September 1st and the last day of February, the lease term shall not commence until March 1, unless Tenant shall elect to open its store unit for business prior thereto. Tenant shall have the option to open its said store unit for business prior to the completion of the matters set forth in subdivisions (i) and (ii) of this Article 10, and in the event of the exercise of such option, Landlord shall complete said store unit as expeditiously as possible; provided, however, if Landlord shall have failed to complete said store unit according to the said working plans and specifications within ninety (90) days after such opening of Tenant's store unit for business, Tenant shall thereafter at any time be privileged, but not obligated, to complete, correct or remedy in all or part, any such deficiency, and the cost thereof shall be deducted from the rentals due under this lease, without waiver of Tenant's other remedies hereunder.

**Landlord's Representations and Warranties**

11. Landlord represents and warrants that it shall, prior to commencement of the lease term, complete said Commercial Development substantially in accordance with the plan shown on said Exhibit "B". Said Commercial Development shall be completed substantially in accordance with said plan when the following representations and warranties have been fulfilled:

(a) Completion of said common facilities (including a service drive at the rear of said store unit) in accordance with the provisions of Article 9 hereof;

(b) Any buildings or other structures shall be erected or constructed only within the confines of the building site or sites (or future building sites) shown on said Exhibit "B" and upon no other part of the land described in said Exhibit "A". The land described in said Exhibit "A" shall consist of not less than   twelve — — — — — — ( 12 ) acres;

(c) Completion of buildings comprised of not less than _____ ( ) individual store units having an aggregate of not less than _____ ( ) square feet of gross rentable floor area and not less than _____ ( ) lineal feet of store frontages, all relatively located as shown on said Exhibit "B". Tenant's store unit, the number of square feet of gross rentable floor area therein and the lineal feet of store frontage thereof shall be included in the foregoing totals;

(d) Store premises (excluding Tenant's store unit) having an aggregate of _____ ( ) square feet of gross floor area shall be leased and open for business; provided, however, included in said store premises required to be leased and open for business shall be store premises occupied by the tenants hereinafter set forth in this Article, each of which tenants shall, so long as each shall be in occupancy of any store premises in said Commercial Development, occupy store premises which shall be in the relative location shown on Exhibit "B" and shall be of the dimensions hereinafter set forth:

5

(7/20/64)

**Landlord's Representations and Warranties (Cont'd)**

Notwithstanding the provisions of Article 10 or any other provision of this lease, the lease term shall not commence and said annual minimum rental, and other charges payable under this lease, shall not commence to accrue until the foregoing representations and warranties shall have been fulfilled; provided, however, in the event that Tenant shall elect to open its store for business before the Landlord shall have fulfilled the foregoing representations and warranties, the term of this lease shall commence, but Tenant shall not be obligated to pay the annual minimum rental or the additional rental; provided, further, in lieu thereof, Tenant shall pay monthly in arrears one per cent (1%) of said gross sales and Tenant shall continue said payment until Landlord's said representations and warranties shall be fulfilled, at which time Tenant shall commence payment of the rental as set forth in Articles 3 and 4 hereof.

In the event Landlord's said representations and warranties shall not be fulfilled within twelve (12) months after such date as Tenant shall open its said store unit for business, Tenant may notify Landlord in writing thereof and Landlord shall have ninety (90) days within which to fulfill said representations and warranties. If said representations and warranties shall not have been fulfilled within said ninety (90) day period, Tenant thereafter shall have the option of terminating this lease by notice to Landlord, which notice shall state an effective date of termination of not less than sixty (60) days from the date of such notice.

**Option to Extend Lease**

12.  (a)  Tenant shall have the option to extend the term of this lease for an additional period of five – – – – – – – ( 5 ) years upon the same terms and conditions of this lease, which option shall be exercised by notice to Landlord not less than six (6) months prior to expiration of the term hereof.

(b)  If Tenant shall have exercised the foregoing option, it shall have the option further to extend the term of this lease for an additional period of five – – – – – ( 5 ) years upon the same terms and conditions of this lease, which option shall be exercised by notice to Landlord not less than six (6) months prior to the expiration of such extended term.

(c)  If Tenant shall have exercised the foregoing options, it shall have the option further to extend the term of this lease for an additional period of five – – – – – – ( 5 ) years upon the same terms and conditions of this lease, which option shall be exercised by notice to Landlord not less than six (6) months prior to the end of such further extended term.

(d)  Regardless of the exercise or nonexercise by Tenant of any or all of the foregoing options, Tenant shall have, unless the last day of the lease term shall be January 31 of any year, the option to extend (or further extend, as the case may be) the term of this lease for such period of time as shall cause the last day of the term of this lease to be the January 31 next succeeding the date upon which the term of this lease would expire but for the exercise of this option. This option shall be exercised by notice to Landlord not less than six (6) months from the expiration of the term of this lease, or any extension thereof.

6

(1/20/64)

**Option for Additional Space**

13. Upon the written request of Tenant at any time after the third (3rd) lease year, Landlord shall, at its sole expense, enlarge the ground floor area of said store unit to an amount specified by Tenant not to exceed  thirty thousand – – – – – – – – – – – – – – – – – – – – – (30,000) square feet. If at the time of such request by Tenant, there shall remain less than fifteen (15) years of the original term of this lease, said term shall be automatically extended so as to expire fifteen (15) years following the first day of the month during which such addition to said store unit shall be completed as hereinafter specified and possession thereof shall be tendered to Tenant. Said addition shall be constructed in accordance with working plans and specifications prepared by Landlord which shall as nearly as practicable conform to Tenant's typical store plans and specifications described in Article 6 hereof, and shall be located where specified by Tenant within the confines of the area on Exhibit "B" designated as "Optional Expansion". Landlord shall do all work necessary to integrate the additional space with the initial store unit. Landlord shall proceed promptly and complete said addition with reasonable dispatch, subject to delays due to conditions beyond Landlord's control. Upon such completion of said addition and the tender of the possession thereof to Tenant, said minimum rental and minimum basis of sales shall be increased in the proportion in which the total gross floor area shall be increased thereby, and all the terms and provisions of this lease applicable to said store unit shall be applicable to such addition.

**Repairs**

14. Tenant shall make and pay for all replacement of plate glass and all nonstructural repairs and replacements to the interior of Tenant's store unit which it deems necessary to keep the premises in a good state of repair, but in no event shall Tenant be obligated to make repairs and replacements which Landlord shall be required to make under any provision of this lease or which shall be necessitated by Landlord's negligence, default or failure to repair. Landlord shall make and pay for all repairs and replacements (except those which Tenant shall be specifically obligated to make under the provisions of this Article and those due to Tenant's negligence) to said store unit which shall be necessary to maintain the same in a safe, dry and tenantable condition, and in good order and repair. Notwithstanding anything to the contrary herein contained, Tenant shall not be required to make any repairs or replacements (or be liable for the cost thereof) which shall be necessitated by any damage or destruction with respect to which Landlord shall be insured or against which Landlord shall be required by the terms of this lease to insure, but Landlord shall make all such repairs or replacements.

In the event said store unit or a portion thereof shall be rendered unusable due to Landlord's default or negligence with respect to required repairs, there shall be a just and equitable abatement of said annual minimum rental and all other charges payable under this lease until said premises shall be made usable. Emergency repairs which shall be Landlord's responsibility hereunder, and which shall be necessary to protect the building or its contents may be made by Tenant without notice to Landlord, and the cost of such repairs not to exceed Five Hundred Dollars ($500.00) in any one instance, may be deducted by Tenant from rentals subsequently accruing hereunder.

**Alterations and Additional Construction**

15. Tenant may, at its own expense, from time to time make such alterations, additions or changes, structural or otherwise, in and to its store unit as it may deem necessary or suitable; provided, however, Tenant shall obtain Landlord's prior written consent to plans and specifications for structural alterations, additions or changes; provided, further, Landlord shall not withhold its consent thereto if the structural strength of the building will not be impaired by such work. The term, "structural changes", as used herein, shall not include moving of stud partitions, minor plumbing and electrical work, modification and rearrangement of fixtures or other minor changes. Landlord, at Tenant's cost, shall cooperate with Tenant in securing building and other permits or authorizations required from time to time for any work permitted hereunder or installations by Tenant.

Tenant may, at its own expense, at any time erect or construct additional buildings or structures on any portion of the "common facilities" areas as defined in Article 9 and depicted on Exhibit "B"; provided, however, gross sales made in or from said additions shall be excluded from gross sales as defined in Article 4 of this lease and provided further, Tenant shall reimburse Landlord for any real estate taxes imposed on said additions or new construction, which .axes are solely attributable thereto, and Tenant shall reimburse Landlord for any increase in insurance premiums attributable thereto. Tenant shall also be solely responsible for exterior repairs thereto, except those necessitated by fire or casualty for which Landlord is obligated to insure. In the event Tenant constructs any such additions or new construction, Landlord shall not be obligated to furnish additional parking areas in substitution of areas thereby built over, nor shall the floor area thereof be utilized in any computation with respect to required ratio of building area to parking area under said Article 9, and the number of parking spaces required thereunder shall be reduced by the number of spaces covered by such additional buildings or structures.

(11/3/64)

**Utilities**

    16.  Tenant shall promptly pay for all public utilities rendered or furnished to Tenant's store unit during the lease term, including water, gas and electricity, provided separate meters shall be installed for Tenant. Landlord covenants, represents and warrants that, during the lease term, said store unit shall at all times be connected to electric, water and gas lines of an adequate source of supply, and to storm and sanitary sewer systems of adequate capacity.

    Landlord may provide a disposal or septic tank system in lieu of public sanitary sewer, subject to Tenant's written approval of plans and specifications and Landlord's continuing obligation to clean and maintain said system at all times in good and serviceable condition during the full term of this lease or any extension and at its sole expense. Sewer charges or sewer taxes, regardless of the manner billed or assessed, shall be paid by Landlord.

**Governmental Regulations**

    17.  Tenant shall observe and comply with all rules, orders and regulations of the federal, state and municipal governments or other duly constituted public authority affecting said store unit, including the making of nonstructural alterations, insofar as they are due to Tenant's occupancy; provided, however, in the event such rules, orders and regulations shall either (a) require structural changes including, but not limited to the erection of a fire escape or exit, installation of a sprinkler system or other fire preventive device of a structural nature, or (b) require nonstructural changes which would have been required irrespective of the nature of the tenancy, then, in either such event, the same shall be complied with by Landlord at its sole expense.

**Landlord's Covenant**

    18.  Landlord covenants, represents and warrants that, within the confines of the area of the Commercial Development described in Exhibit "A" now or in the future owned or controlled, directly or indirectly, by Landlord, Landlord's principal owners, stockholders, directors or officers, or their assignees or vendees, no premises (other than Tenant's store unit) shall be leased, rented, used or occupied for any purposes whatsoever without Tenant's prior written consent, which may be witheld or granted at Tenant's sole discretion and further, that in addition no premises so owned or controlled outside the confines of the area of the Commercial Development but within a four (4) mile radius thereof, shall be leased, rented, used or occupied for the operation of a variety store, department store, junior department store, cut-rate store or discount store. This covenant shall run with the land commencing with the date of execution of this lease and shall continue until such date as shall be the last day of the lease term or extension or renewal thereof; provided, however, this covenant shall cease and determine and be of no further force or effect in the event that either (a) subsequent to the commencement of the lease term, said store unit shall cease to be used for the operation of a cut-rate store or discount store or any store managed by Tenant for a period of six (6) consecutive months, excluding temporary interruptions of said operation because of causes beyond Tenant's control, or (b) said date of occupancy described in Article 10 hereof shall not occur prior to such date as shall be seven (7) years from the date of the execution of this lease.

**Fire**

    19.  From and after the date on which Tenant shall be privileged to enter upon demised premises for the purposes specified in Article 8 hereof, Landlord shall insure the Commercial Development, including Tenant's store unit, against damage or destruction by fire and other casualties insured under a standard extended coverage endorsement. Said insurance shall be in an amount equal to not less than eighty per cent (80%) of the insurable value of the permanent improvements thereof. All policies with respect to said Commercial Development shall bear endorsements to the effect that Tenant shall be notified not less than five (5) days in advance of modification or cancellation thereof and that the assured has waived right of recovery from Tenant. Copies of such insurance policies or certificates evidencing the existence thereof, so endorsed, shall be promptly delivered to Tenant upon written request therefor. Irrespective of the cause thereof, Tenant shall not be liable for any loss or damage to the Commercial Development or in or about the demised premises resulting from fire, explosion or any other casualty.

    In the event that, at any time during the lease term, the permanent improvements then constituting said store unit shall be damaged or destroyed (partially or totally) by fire, the elements or any other casualty, Landlord shall, at its expense, promptly and with due diligence repair, rebuild and restore the same as nearly as practicable to the condition existing just prior to such damage or destruction; provided, however, if as a result of any such damage or destruction during the last two (2) years of the lease term, Tenant's fixtures, equipment or other property shall be damaged or destroyed in an amount exceeding Five Thousand Dollars ($5000.00), then either party may terminate this lease as of the date of such damage or destruction by giving written notice to the other party within thirty (30) days thereafter and Tenant shall have an additional sixty (60) days, rent free, within which to remove its property from the demised premises. Notwithstanding any such termination of this lease by Landlord as provided in this Article, Tenant shall have the right to exercise any option to extend the term hereof in accordance with the provisions of Article 12 within thirty (30) days after the date of the receipt of Landlord's notice of termination, and, upon the exercise of any such option (other than the option set forth in subparagraph (d) of Article 12) by Tenant, then this lease shall continue in full force and effect despite such notice of termination by Landlord and Landlord shall repair, rebuild and restore the permanent improvements constituting said store unit as above provided. In the event that this lease shall be terminated as above provided, all unearned rent and other charges paid in advance shall be refunded to Tenant.

(7/20/64)

**Fire (Cont'd)**

During any period commencing upon the date of any such damage or destruction and ending upon the date of completion of the repairs, rebuilding and restoration required herein, the annual minimum rental and any other charges payable under this lease shall abate in the proportion that the part of the store unit which shall be untenantable shall bear to the whole.

In the event that, at any time during the lease term except the last two (2) years thereof, any other building or buildings of said Commercial Development shall be damaged or destroyed (partially or totally) by fire, the elements or any other casualty, Landlord shall, at its expense, promptly and with due diligence repair, rebuild and restore the same as nearly as practicable to the condition existing just prior to such damage or destruction; provided, however, during such period of time (including the last two (2) years of the lease term) that either (a) twenty per cent (20%) or more of the gross rentable floor area (as set forth in subparagraph (c) of Article 11) of the Commercial Development shall be so rendered untenantable, or (b) any of the stores of tenants specifically required to be open for business prior to Tenant's opening its store unit for business (as set forth in subparagraph (d) of Article 11) shall not be open for business because of such damage or destruction, then the annual minimum rental for such period of time shall be abated, whether or not Tenant's store unit shall be damaged or destroyed and during such period Tenant shall pay monthly in arrears one per cent (1%) of its gross sales.    (Continued on Rider, Page 1.)

**Eminent Domain**

20. In the event all of Tenant's store unit shall be expropriated by public or quasi-public authority, this lease shall terminate as of the date Tenant shall be deprived of the physical possession thereof.

In the event that less than the whole, but more than ten per cent (10%) of Tenant's store unit shall be expropriated by public or quasi-public authority, Tenant shall have the option to terminate this lease as of the date Tenant shall be dispossessed from the part so expropriated, by giving notice to Landlord of such election so to terminate within ninety (90) days from the date of such dispossession.

In the event of an expropriation of any portion of Tenant's store unit, if this lease shall not be terminated as hereinabove provided, it shall continue as to that portion of the store unit which shall not have been expropriated or taken, in which event Landlord shall, at its sole cost and expense, promptly and with due diligence restore said store unit as nearly as practicable to a complete unit of like quality and character as existed just prior to such expropriation. The annual minimum rental and other charges shall abate during the period of demolition and restoration, and thereafter the annual minimum rental and minimum basis of sales shall be reduced in the proportion the ground floor area of the part of Tenant's store unit so expropriated shall bear to the total ground floor area of said store unit prior to such expropriation.

Without limiting the foregoing, in the event that more than ten per cent (10%) of the land described in Exhibit "A" shall be expropriated by public or quasi-public authority, Tenant shall have the option to terminate this lease as of the date possession of the land shall be taken by such authority, by giving notice to Landlord of such election within ninety (90) days thereafter; provided, however, said termination by Tenant shall be null and void if, within ninety (90) days following the date possession of said land shall be so taken, Landlord shall substitute equivalent and similarly improved lands contiguous to and properly integrated with the remainder of the Commercial Development/ Notwithstanding any other provision of this lease, in the event that more than ten per cent (10%) of the aggregate number of square feet of ground floor area in the buildings in the Commercial Development shall be expropriated by public or quasi-public authority, Tenant may terminate this lease at any time following notice of such expropriation. Any such termination shall be effective as of the date of notice to Landlord. Landlord shall immediately notify Tenant of any notice of any such proposed expropriation.

and as a result thereof the number of parking spaces in the common areas shall be reduced to less than 600.

In the event this lease shall be terminated pursuant to this Article, any annual minimum rental and other charges paid in advance shall be refunded to Tenant, and Tenant shall have an additional sixty (60) days, rent free, within which to remove its property from the demised premises. In the event that at the time of any expropriation of Tenant's store unit, Tenant shall not have fully amortized expenditures which it may have made on account of any improvements, alterations or changes to its store unit, Landlord shall assign to Tenant so much of any award payable as a result of such expropriation as shall equal the unamortized portion of Tenant's said expenditures. Said unamortized portion of Tenant's said expenditures shall be determined by multiplying such expenditures by a fraction, the numerator of which shall be the number of remaining years of the lease term at the time of such expropriation and the denominator which shall be the number of remaining years of the lease term at the time such expenditures shall have been made plus the number of years for which the lease term may have been subsequently extended.

or the Landlord shall proceed to double-deck such portion of the parking facilitie as may be necessary to provide at least six hundred (600) parking spaces, the plan and specifications for such double-decking to be subject to Tenant's approval.

**Assignment and Subletting**

21. The premises hereby demised shall not be used for any unlawful purpose, and the Tenant may assign this lease or sublet the whole or any part of said demised premises, but if it does so without Landlord's consent, it shall remain liable and responsible under this lease.

**Signs**

22. Tenant shall have the option to erect at its sole cost and expense, within the confines of the Commercial Development, one or two pylon-type signs. Any such sign (a) shall be of such height and other dimensions as Tenant shall determine, (b) shall bear such legend or inscription advertising Tenant's store as Tenant shall determine, and (c) shall be located upon such sites, other than sites reserved by Landlord for buildings, as Tenant shall determine. Tenant shall have the option to utilize the lighting standards in the parking lot for advertising purposes by attaching, or causing to be attached, signs advertising any and all products and services as Tenant shall elect.

Landlord shall not permit any other advertising signs, billboards or posters to be displayed on any portion of the premises described in Exhibit "A" hereof, excepting flat wall signs which may be placed on other stores, if any, now depicted on Exhibit "B" or in the future erected on "future building areas" as depicted thereon, providing such signs shall be utilized solely for the purpose of advertising the names of the respective tenants thereof.

Landlord shall not, without Tenant's written consent, at any time utilize the exterior of Tenant's store unit, or the space above it, for sign display purposes.

**Ingress and Egress to Commercial Development**

23. Landlord warrants as a consideration for this lease it will initially provide and maintain for the period of this lease and any extension thereof, ingress and egress facilities to public highways in the number and substantially the locations depicted on Exhibit "B", subject to unavoidable temporary closings or relocations necessitated by public authority or other circumstances beyond Landlord's control.

**Landlord's Remedies**

24. If the rent reserved in this lease, or any part thereof, shall remain unpaid for a period of thirty (30) days or if Tenant shall be in default under any other provision of this lease and shall remain so for a period of thirty (30) days after notice to Tenant of said nonpayment or other default, then Landlord may, by giving notice to Tenant at any time thereafter during the continuance of such default, either (a) terminate this lease, or (b) re-enter said store unit by summary proceedings or otherwise, expel Tenant and remove all property therefrom, relet said store unit at the best possible rent readily obtainable (making reasonable efforts therefor), and receive the rent therefrom; provided, however, Tenant shall remain liable for the equivalent of the amount of all rent reserved herein less the avails of reletting, if any, after deducting therefrom the reasonable cost of obtaining possession of said store unit and of any repairs and alterations necessary to prepare it for reletting. Any and all monthly deficiencies so payable by Tenant shall be paid monthly on the date herein provided for the payment of rent. If any default by Tenant (except nonpayment of rent) cannot reasonably be remedied within thirty (30) days after notice of default, then Tenant shall have such additional time as shall be reasonably necessary to remedy such default before this lease can be terminated or other remedy enforced by Landlord. Except for the legal remedy of damages (provided Landlord shall, in all instances, be required to mitigate damages) and the equitable remedy of an injunction, the remedies of Landlord herein shall be exclusive of any other remedies.

**Bankruptcy**

25. If a petition in bankruptcy shall be filed by Tenant, or if Tenant shall be adjudicated bankrupt, or if Tenant shall make a general assignment for the benefit of creditors, or if in any proceeding based upon the insolvency of Tenant a receiver of all the property of Tenant shall be appointed and shall not be discharged within ninety (90) days after such appointment, then Landlord may terminate this lease by giving notice to Tenant of its intention so to do; provided, however, neither bankruptcy, insolvency, an assignment for the benefit of creditors nor the appointment of a receiver shall affect this lease or permit its termination so long as the covenants on the part of Tenant to be performed shall be performed by Tenant or someone claiming under it.

**Covenant of Title**

26. Landlord covenants, represents and warrants that it has full right and power to execute and perform this lease and to grant the estate demised herein and that Tenant, on payment of the rent herein reserved and performing the covenants and agreements hereof, shall peaceably and quietly have, hold and enjoy the demised premises and all rights, easements, appurtenances and privileges belonging or in anywise appertaining thereto during the lease term without molestation or hindrance of any person whomsoever, and if at any time during the term hereby demised the title of Landlord shall fail or it be discovered that its title shall not enable Landlord to grant the term hereby demised, Tenant shall have the option at Landlord's expense to correct such defect or to annul and void this lease with full reservation of its right to damages, if any.

10                    (7/20/84)

**Covenant of Title (Cont'd)**

Landlord further covenants, represents and warrants that it is seized of an indefeasible estate in fee simple in the land described in Exhibit "A" free and clear of any liens, encumbrances, restrictions and violations (or claims or notices thereof) with exceptions, if any, listed and attached hereto as Exhibit "C".

Landlord shall, without expense to Tenant, and within thirty (30) days after written request by Tenant, furnish (a) a certification by an attorney acceptable to Tenant that Landlord's title is as herein represented and certifying that the premises depicted on Exhibit "B" are within the bounds of the property described in Exhibit "A", (b) a survey by licensed surveyor of the land described in Exhibit "A", and (c) agreements wherein each holder of any lien against the demised premises shall consent to this lease and warrant that Tenant's possession and right of use under this lease in and to the demised premises shall not be disturbed by such holder unless and until Tenant shall breach any of the provisions hereof and this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

**Mortgage Sub-ordination**

27. Upon written request by Landlord, Tenant shall execute and deliver an agreement subordinating this lease to any first mortgage upon the demised premises; provided, however, such subordination shall be upon the express condition that the validity of this lease shall be recognized by the mortgagee, and that, notwithstanding any default by the mortgagor with respect to said mortgage or any foreclosure thereof, Tenant's possession and right of use under this lease in and to the demised premises shall not be disturbed by such mortgagee unless and until Tenant shall breach any of the provisions hereof and this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

**Tenant Indemnifies Landlord**

· 28. During the lease term, Tenant and its assignees and sublessees shall indemnify and save Landlord harmless against all penalties, claims or demands of whatsoever nature arising from Tenant's use of its store unit, except those which shall result, in whole or in part, and directly or indirectly, from the default or negligence of Landlord.

**Tenant's Right to Cure Landlord's Defaults**

29. In the event Landlord shall neglect to pay when due any taxes or any obligations on any mortgage or encumbrance affecting title to demised premises and to which this lease shall be subordinate, or shall fail to perform any obligation specified in this lease, then Tenant may, after the continuance of any such default for seven (7) days after notice thereof by Tenant, pay said taxes, assessments, principal, interest or other charges and cure such default, all on behalf of and at the expense of Landlord, and do all necessary work and make all necessary payments in connection therewith, and Landlord shall on demand pay Tenant forthwith the amount so paid by Tenant together with interest thereon at the rate of six per cent (6%) per annum, and Tenant may withhold any and all rental payments and other payments thereafter due to Landlord and apply the same to the payment of such indebtedness.

Provided the holder of a properly recorded first mortgage shall have notified Tenant in writing that it is the holder of such lien on the demised premises and shall so request, Tenant shall, in the event it shall notify Landlord to correct any default, give a similar notice to such holder, and such holder shall be granted sixty (60) days after receipt thereof to correct or remedy such default.

**Condition of Premises at Termination**

30. At the expiration or earlier termination of the lease term, Tenant shall surrender its store unit, together with alterations, additions and improvements then a part of said store unit, in good order and condition except for the following: ordinary wear and tear, repairs required to be made by Landlord, and loss or damage by fire, the elements and other casualty or occurrence excepted. All furniture and trade fixtures installed in said store unit at the expense of Tenant or other occupant shall remain the property of Tenant or such other occupant; provided, however, Tenant shall, at any time and from time to time during the lease term, have the option to relinquish its property rights with respect to such trade fixtures (including, but not limited to, air conditioning machinery and lighting fixtures), which option shall be exercised by notice of such relinquishment to Landlord, and from and after the exercise of said option, the property specified in said notice shall be the property of Landlord.

**Holding Over**

31. In the absence of any written agreement to the contrary, if Tenant should remain in occupancy of said store unit after the expiration of the lease term, it shall so remain as a tenant from month-to-month and all provisions of this lease applicable to such tenancy shall remain in full force and effect.

**Notices**

32. Notices required under this lease shall be in writing and deemed to be properly served on receipt thereof if sent by certified or registered mail to Landlord at the last address where rent was paid or to Tenant at its principal office in Detroit, Michigan, or to any subsequent address which Tenant shall designate for such purpose.

11                                                                                          (7/20/64)

**Captions and Definitions**

33. Marginal captions of this lease are solely for convenience of reference and shall not in any way limit or amplify the terms and provisions thereof. The necessary grammatical changes which shall be required to make the provisions of this lease apply (a) in the plural sense if there shall be more than one Landlord, and (b) to any Landlord which shall be either a corporation, an association, a partnership, or an individual, male or female, shall in all instances be assumed as though in each case fully expressed. Unless otherwise provided, upon the termination of this lease under any of the Articles hereof, the parties hereto shall be relieved of any further liability hereunder except as to acts, omissions or defaults occurring prior to such termination.

**Successors and Assigns**

34. The conditions, covenants and agreements contained in this lease shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns. All covenants and agreements of this lease shall run with the land.

**Memorandum of Lease**

35. The parties hereto have simultaneously with the execution and delivery of this lease executed and delivered a Memorandum of Lease which Landlord shall at its sole expense cause to be recorded within sixty (60) days following delivery of this lease and returned to Tenant by Landlord within sixty (60) days thereafter.

For Article 36 see Rider.

IN WITNESS WHEREOF, the parties hereto have executed these presents in ~~duplicate~~ triplicate and affixed their seals hereto as of the day and year first above written.

WITNESSES:

PATTON AVENUE DEVELOPMENT CORPORATION

By: Lawrence T. Hoyle,    President

Attest: T. C. Hoyle, Jr.    Secretary

S. S. KRESGE COMPANY

APPROVED

J. K. Tewel

Agnes Krausman

By: John B. Hollister,    Vice-President

Attest: John C. Cook,    Assistant Secretary

12

(7/20/64)

EXHIBIT "A" ATTACHED TO AND MADE A PART OF
THE LEASE ENTERED INTO DECEMBER 18, 1964
BETWEEN PATTON AVENUE DEVELOPMENT CORPORATION,
LANDLORD, AND S. S. KRESGE COMPANY, TENANT.

Located in the City of Asheville, Buncombe County, North Carolina:

## TRACT ONE

BEGINNING at a concrete monument in the northern margin of the right-of-way line of dual U. S. Highways #19-23, known as Patton Avenue, at the southeast corner of the lands of Wachovia Bank and Trust Company and running thence with the line of said Bank, N. 12° 52' W. 227 feet to a concrete monument; thence S. 89° 45' W. 119.3 feet to a concrete monument in the right-of-way line of Louisiana Avenue; thence N. 36° 57' W. 221.5 feet to an iron in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, N. 28° 51' W. 63.5 feet to an iron pipe, the Joyner corner; thence with Joyner, S. 81° 17' E. 234.57 feet to an iron pipe; thence still with Joyner, N. 3° 7' E. 161.69 feet to a concrete monument, the Joyner northeast corner; thence with Joyner, N. 78° 27' W. 353.92 feet to an iron in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, N. 19° 26' W. 87.85 feet; thence still with said Avenue, N. 5° 22' W. 100 feet; thence S. 86° 10' 30" E. 114.09 feet to an iron pipe; thence N. 7° 20' E. 52.86 feet, corner with Hargus; thence with Hargus, S. 76° 10' 30" E. 124.63 feet; thence N. 7° 34' 30" E. 93.99 feet; thence N. 5° 50' E. 181.17 feet; thence S. 70° 45' E. 312 feet to an iron; thence N. 37° 24' E. 148.93 feet to an iron; thence S. 70° 11' E. 573.02 feet to an iron in Hawkins Lane; thence with Hawkins Lane, S. 27° 56' W. 386.4 feet to a concrete monument; thence N. 82° 15' W. 113.79 feet to an iron; thence S. 32° 53' 30" W. 193.5 feet to a concrete monument; thence S. 23° 27' W. 165.86 feet to a concrete monument; thence S. 85° 57' 30" E. 17.59 feet to a dogwood tree; thence S. 20° 50' 30" E. 290.35 feet to an existing spike in the northern margin of Patton Avenue; thence with the northern margin of Patton Avenue, S. 85° 26' 30" W. 350.45 feet to a concrete monument; thence still with the northern margin of Patton Avenue, S. 87° 34' W. 25 feet to the point of beginning. Subject, however, to right-of-way for the widening of Hawkins Lane and the right-of-way for the widening of Louisiana Avenue, and together with and subject to rights of ingress, egress, and regress in, over and through that tract of land fronting 50 feet on Patton Avenue and running N. 12° 59' W. 35 feet, the center

line of which is the first call in the foregoing description.

<u>TRACT TWO</u>

A leasehold interest in and to: BEGINNING at an iron pipe in the eastern margin of Louisiana Avenue, Wells' northwest corner, and running thence with the Wells' line, S. 81° 17' E. 234.57 feet to an iron in the line of the land of G-K, Inc.; thence with said line, N. 3° 7' E. 161.69 feet to a monument at a 24 inch pin, corner with Shelton; thence with the Shelton line, N. 78° 27' W. 353.92 feet to an iron pipe in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, S. 19° 26' E. 12.15 feet and S. 26° 51' E. 211.64 feet to the point of beginning.

Consisting of approximately 12 acres, and being as more particularly shown on survey dated October 19, 1964 prepared by Hollowell, Borum and Associates, Greensboro, North Carolina.

THIS RIDER CONSISTING OF ONE    PAGE   IS ATTACHED
TO AND FORMS A PART OF THE LEASE ENTERED INTO
DECEMBER 18, 1964 BETWEEN PATTON AVENUE DEVELOP-
MENT CORPORATION, LANDLORD, AND S. S. KRESGE
COMPANY, TENANT.

**FIRE**
(Cont'd. from
Article 19,
Page 9 of
printed lease)

19.            In the event that any other building or buildings of said Commercial

Development shall be damaged or destroyed by fire, the elements or any other

casualty, the Landlord shall, at its expense, promptly and with due diligence

either repair, rebuild and restore the same as nearly as practicable to the

condition existing just prior to such damage or destruction, or, in the

alternative, Landlord shall raze such damaged or destroyed building or buildings

and pave the land thereunder for additional parking facilities in the manner

required in Article 9 hereof.

**GASOLINE**
**STATION**

36.            For a period of two (2) years from the commencement of the lease

term, the Tenant shall have an option to require Landlord to construct facilities

for the storage and sale of gasoline and related products for automobiles, such

facilities to be situated on the parking areas shown on Exhibit "B" attached

hereto in a location selected by Tenant. Said option shall be exercised by

Tenant by mailing a written notice to Landlord on or before the last day of said

two (2) year period.

In the event Tenant so exercises said option, Landlord shall prepare

working plans and specifications satisfactory to Tenant for the construction of

said facilities. After the Tenant has approved said working plans and specifi-

cations, Landlord shall proceed with the construction of said facilities and,

upon completion thereof, Landlord shall tender said facilities to Tenant. All

work contemplated hereunder shall be completed without undue delay and in accord-

ance with any building codes, rules, regulations, ordinances and statutes

governing such construction.

Tenant shall pay to Landlord a gross rental for said facilities to

be mutually agreed upon prior to commencement of construction; said rent to

commence upon the date said facilities are completed in accordance with the

terms and provisions of this lease and possession thereof tendered to Tenant.

If at the time said facilities are tendered to Tenant there shall remain less

than fifteen (15) years of the original term of this lease, said term shall be

deemed automatically extended so as to expire fifteen (15) years following the

last day of the month during which said facilities shall have been completed

and tendered to Tenant in accordance herewith.

## ACKNOWLEDGMENTS

STATE OF *N. C.*
COUNTY OF *Guilford* }ss:

I do hereby certify that on this *28th* day of *Dec.*, 19 *64*, before me, *Betty Jean Jeffress*, a Notary Public in and for the County and State aforesaid, residing therein and duly commissioned, personally appeared *Lawrence J. Hayle* and *J. C. Hayle, Jr.* known to me to be the President and Secretary of *Patton Avenue Development Corporation*, who, being by me duly sworn, did depose and say that they reside in *Guilford Co., N. C.*, respectively; that they are the President and Secretary respectively of *Patton Avenue Development Corporation* the corporation described in and which executed the foregoing instrument; that they know the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that, on behalf of said corporation and by order of its board of directors, they signed, sealed and delivered said instrument for the uses and purposes therein set forth, as its and their free and voluntary act; and that they signed their names thereto by like order.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

My commission expires *June 28, 1966*    *Betty Jean Jeffress*
    Notary Public

---

STATE OF MICHIGAN }ss:
COUNTY OF WAYNE

I do hereby certify that on this  31st  day of  December , 19 64, before me, Jean Currie, a Notary Public in and for the County and State aforesaid, residing therein and duly commissioned, personally appeared John B. Hollister  and  John C. Cook known to me to be the Vice President and Assistant Secretary of S. S. Kresge Company, who, being by me duly sworn, did depose and say that they reside in  Detroit, Michigan and  Grosse Pointe, Michigan respectively; that they are the Vice President and Assistant Secretary respectively of S. S. Kresge Company, the corporation described in and which executed the foregoing instrument; that they know the seal of said corporation; that the seal affixed to said instrument is the corporate seal of said corporation; that, on behalf of said corporation and by order of its board of directors, they signed, sealed and delivered said instrument for the uses and purposes therein set forth, as its and their free and voluntary act; and that they signed their names thereto by like order.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

My commission expires *March 18, 1966*    *Jean Currie*
    Notary Public

13

CODE No. 920-80—100—Only—8/64—3064/64K—X26—Printed in U.S.A.