# EXHIBIT 5

INDEX

ARTICLE 1          Premises

ARTICLE 2          Definitions

ARTICLE 3          Term

ARTICLE 4          Rent

ARTICLE 5          Payment of Taxes, Assessments, Etc.
                   (Impositions)

ARTICLE 6          Tenant's Personal Property

ARTICLE 7          Use

ARTICLE 8          Maintenance and Repairs

ARTICLE 9          Tenant's Obligation to Construct Addition

ARTICLE 10         Alterations

ARTICLE 11         Compliance with Certificate of Occupancy
                   Laws, Ordinances, Requirements of
                   Public Authorities

ARTICLE 12         Mechanics' Liens

ARTICLE 13         Assignment, Subletting and Mortgaging

ARTICLE 14         Insurance

ARTICLE 15         Damage or Destruction

ARTICLE 16         Condemnation

ARTICLE 17         Default Provisions

ARTICLE 18         Landlord's Right to Perform - Cumulative
                   Remedies - Waivers - Tenant's Right to
                   Cure Landlord's Default - Tenant's
                   Deposits - Attornment - Miscellaneous

ARTICLE 19         Excavation

ARTICLE 20         Renewal Terms

ARTICLE 21         Arbitration

ARTICLE 22        Mortgages of the Fee

ARTICLE 23        Compliance with Fee Mortgage

ARTICLE 24        Surrender at End of Term

ARTICLE 25        Quiet Enjoyment

ARTICLE 26        Waiver of Trial by Jury

ARTICLE 27        Notices

ARTICLE 28        Covenants Binding

ARTICLE 29        Short Form Lease

ARTICLE 30        Broker

AGREEMENT made this 1st day of February, 1966, between
MARTIN BRUCE and SYLVIA BRUCE of 9 Lake Road, Lake Success, New
York, hereinafter referred to as "Landlord," and PATTON PLAZA
ASSOCIATES, a partnership consisting of ROBERT SIEGEL of 40
Schenck Avenue, Great Neck, New York, and BERNARD L. NUSSINOW,
of 24 Elm Street, Woodbury, New York, hereinafter referred to as
"Tenant."

IN CONSIDERATION of the mutual promises, conditions and
terms herein, the parties hereby agree as follows:

# ARTICLE 1

## Premises

The Landlord does hereby demise and lease to Tenant, and Tenant does hereby hire and take from Landlord the premises located at Patton Avenue and Louisiana Avenue, Asheville, North Carolina, and described in Schedule "A" attached hereto and made a part hereof. Said premises are hired and leased subject to the following:

    (a) Any state of facts an accurate survey may show, including any changes in street lines now or hereafter to be made;

    (b) Covenants, restrictions, reservations, easements, declarations, conditions, rights of way, agreements and consents of record;

    (c) Party walls and party wall agreements, if any;

    (d) Existing leases, contracts, agreements, including surveys and maintenance and union contracts, if any, the obligations of which Tenant hereby assumes and indemnifies Landlord from any claims or damages in connection therewith;

    (e) Possible lack of title to any land, lying in the bed of any street upon which the premises fronts or abuts;

    (f) Rights, if any, acquired by any utility company or municipality to maintain and operate lines, wires, cables, conduits, pipes, poles, distribution boxes, in, over and upon said premises;

(g)  Unpaid installments of any assessments due and/or accruing after the date hereof;

(h)  Liens and encumbrances of record;

(i)  Easements arising out of agreements and/or implication;

(j)  Unpaid taxes, sewer rent, water frontage and meter charges, building purpose charges, if any, and other municipal levies relating to the premises, fixed or unfixed;

(k)  Any state of facts a personal inspection would show;

(l)  Violations of local, municipal or state ordinances, orders or requirements; including lack of a permanent certificate of occupancy;

(m)  Building and zoning regulations, conditions and ordinances and amendments thereof;

(n)  Variations between record lines and fences and retaining walls, if any;

(o)  Encroachments of window sills, pipes, stoops, areas, cellar steps, trim, cornices, retaining walls, walks, coal chutes, cellar doors, sidewalk elevator, fences, fire escapes, projections, stone pilasters, tunnels, porticos, awnings, canopies, if any, upon, over or under any street or highway, or adjoining property;

(p)  Any and all consents by the present or any former owner of the premises for the erection or maintenance

11.

of any structure on, under or above any street
on which said premises may abut;

(q) Any and all rights of laws of municipal and other
governmental authorities and others to require the
removal of any vaults, coal chutes, tunnels,
ramps or other projections which may be beyond
the building lines;

(r) Condition of the premises and personalty as of
the closing of title;

(s) State of facts and title shown in Policy binder
of American Title Insurance Company of
current date, respecting the Demised Premises.

TO HAVE AND TO HOLD unto the Tenant, its successors and
permitted assigns for the term of this Lease as defined in Subdivision (d)
of Section 2.01.

1c

ARTICLE 2

Definitions

SECTION 2.01. The terms defined in this Article shall, for all purposes of this Lease and all agreements supplemental thereto, have the meaning herein specified unless the context otherwise requires.

(a) "Demised Land" shall mean the parcel of land described in Section 1.01.

(b) "Demised Premises" shall mean the Demised Land and the Building as defined in subsection (c) of this Article.

(c) "Buildings" shall mean and include the structure erected upon the Demised Land, all equipment, machinery, building fixtures, furniture, furnishings and appurtenances therein and thereto and all personal property of every kind and description, affixed or attached to, or used in connection therewith owned by Landlord (other than the property which may be removed by Tenant or Undertenant as permitted by the provisions of this Lease) and any and all other buildings, improvements and structures, equipment, machinery, building fixtures, furniture, furnishings, appurtenances and personal property (except as aforesaid) at any time placed upon the Demised Land, and any and all renewals and replacements thereof, additions thereto and substitutes therefor.

(d) "Term of this Lease" shall mean the initial

term and any and all renewals effected under

the provisions hereof.

(e) "Impositions" shall mean all taxes, assess-

ments, charges, rates and rents, charges for

public utilities, excises, levies, license and

permit fees and other charges, general and

special, ordinary and extraordinary, foreseen

and unforeseen, of any kind and nature whatso-

ever, which shall or may during the Term of

this Lease be assessed, levied, charged, con-

firmed or imposed upon or become payable out

of or become a lien on the Demised Premises or

any part thereof or the appurtenances thereto,

and such franchises, licenses and permits as

may be appurtenant to the use of the Demised

Premises, this transaction, or any documents to

which the Tenant is a party, creating or trans-

ferring an interest or an estate in the Demised

Premises; but shall not include any municipal,

state or Federal income taxes, assessed against

the Landlord, or any municipal, state or Federal

capital levy, estate, succession, inheritance, or

transfer taxes of the Landlord, or any franchise

taxes imposed upon any corporate owner of the fee

of the Demised Premises or any income, profits,

or revenue tax, assessment or charge imposed

31.

upon the rent received as such by the Landlord
under this Lease; provided, however, that if at
any time during the Term of this Lease, the
present method of taxation or assessment shall
be so changed that there shall be substituted for
the whole or any part of the taxes, assessments,
levies, Impositions, or charges, now or here-
after levied, assessed, or imposed on real es-
tate and the improvements, a capital tax or other
tax imposed on the rents received by the Landlord
from said real estate or the rents reserved herein,
or any part thereof, then all such capital taxes or
other taxes shall, to the extent that they are so
substituted, be deemed to be included within the
term "Impositions" and to the extent that such
capital tax would be payable if the Demised Prem-
ises were the only property of the Landlord sub-
ject thereto.

(f)  "Unavoidable Delays" shall mean delays due to
strikes, lockouts, acts of God, inability to obtain
labor, materials, government restrictions, enemy
action, civil commotion, fire, unavoidable casualty
or other similar causes beyond the control of the
Tenant.

(g)  "Lending Institution" shall mean any national bank;
state bank, savings bank; savings and loan associa-
tion; life insurance company; corporate trustee;



health, welfare, educational, fraternal,
labor union fund, or eleemosynary organization
which is entitled to exemption from income tax
under the Internal Revenue Code.



ARTICLE 3

Term

SECTION 3.01.  The initial term of this l[...]
period of thirty (30) years and shall commence on Feb[...]
shall terminate on January 31, 1996.

## ARTICLE 4

### Rent

SECTION 4.01. Tenant covenants and agrees to pay dur    the Term of this Lease "basic annual rent" of One Hundred Eighte    Thousand Six Hundred Twenty ($118,620.00) Dollars per annum, payable  i equal monthly installments of Nine Thousand Eight Hundred Eighty-fi·e ($9,885.00) Dollars, in advance on the first day of each month commencing on the first day of the Term of this Lease.

SECTION 4.02. Impositions and all costs, payments and charges which Tenant under any of the provisions of this Lease assumes or agrees to pay shall be deemed additional rent, and, in the event of nonpayment, Landlord shall have all the rights and remedies herein provided for in case of non-payment of rent.

SECTION 4.03. Tenant shall pay all Impositions provided for in Section 5.01 hereof, in the manner provided in Article 5 of this Lease, except that all Impositions for the fiscal year or tax year in which the initial term commences shall be apportioned as of the initial term rental commencement date.

SECTION 4.04. All costs, payments and charges which Tenant under any of the provisions of this Lease assumes or agrees to pay, shall be paid in the manner provided therefor in the particular Article, section or subsection of this Lease pertaining thereto.

SECTION 4.05. All payments of basic rent, additional rent, and other payments required to be made to Landlord, shall be in lawful money of the United States of America and shall be paid to Landlord at the address designated by Landlord in writing.

SECTION 4.06. This Lease shall be deemed and construed to

4a

be a net lease, and Tenant shall pay the Landlord absolutely net throughout

the Term of this Lease, basic rent, additional rent, and other payments

hereunder, free of any charges, assessments, Impositions or deductions

of any kind and without abatement, deduction or set-off other than those

herein expressly provided for, and under no circumstances or conditions

whether now existing or hereafter arising or whether beyond the present

contemplation of the parties, shall the Landlord be expected or required to

make any payment of any kind whatsoever or be under any obligation or

liability hereunder except as herein otherwise expressly set forth.

# ARTICLE 5

## Payment of Taxes, Assessments, Etc.

### (Impositions)

SECTION 5.01.  As additional rental during the initial term and any renewal term hereunder, Tenant will pay or cause to be paid as and when the same becomes due, all Impositions as defined in subsection (e) of Section 2.01 hereof.

All Impositions for the fiscal year or tax year in the initial term, wherein the rental commencement date takes place, as well as during the year in which the Term of this Lease expires, shall be apportioned so that Tenant shall pay its proportionate share of the Impositions which are payable in the year in which the rental commencement date takes place and in the year in which the term expires.

SECTION 5.02.  Tenant may, if it shall so desire, contest the validity or amount of any such Imposition, in which event, Tenant may defer the payment thereof during the pendency of such contest; provided that within fifteen (15) days after the same shall have become due, Tenant shall have deposited with the Landlord an amount sufficient to pay such contested item, together with interest and penalties thereof (as reasonably estimated by Landlord) which amount the Landlord shall apply to the payment of such item when the amount thereof shall be finally fixed and determined and the Landlord shall receive instructions to that effect in writing from the Tenant.  In lieu of cash deposited, Tenant may deliver to Landlord other security satisfactory in form and negotiability to the Landlord.  Nothing herein contained, however, shall be so construed as to allow such items to remain unpaid for such length of time as shall permit the Demised Premises, or any part

5a

thereof, or the lien thereon created by such item to be sold by governmental
or municipal authority for the non-payment of the same; and if at any time in
the judgment of Landlord it shall become necessary or proper to do so,
Landlord may apply the said monies so deposited with it, or so much thereof
as may be required, to prevent the sale of the Demised Premises or any
part thereof, or the lien created thereon by such item. If the amount so
deposited as aforesaid shall exceed the amount of such payment, the excess
shall be paid to the Tenant, or in case there shall be any deficiency, the
amount of such deficiency shall be forthwith deposited by Tenant with the
Landlord, and if not so deposited, shall be payable as additional rent on
demand, or at the option of the Landlord, with the next installment or any
subsequent installments of basic rent hereby reserved and thereafter be-
coming due and shall be collectible as rent.

SECTION 5.03. The certificate, bill or statement issued or
given by the appropriate officials authorized or designated by law to issue
or give the same or to receive payment of any Imposition shall be prima
facie evidence for all purposes of the existence, non-payment or amount of
such Imposition.

SECTION 5.04. Tenant may, if it shall so desire, endeavor at
any time or times to obtain a lowering of the assessed valuation upon the
Demised Premises for any tax year during the Term of this Lease for the
purpose of reducing taxes thereon and, in such event, Landlord will, at the
request of the Tenant and without expense to Landlord, co-operate with
Tenant in effecting such a reduction. Tenant shall be authorized to collect
any tax refund payable as a result of any proceeding Tenant may institute
for that purpose and any such tax refund shall be the property of Tenant to

5b

the extent to which it may be based on a payment made by Tenant, subject, however, to an apportionment between the Landlord and Tenant with respect to taxes paid in the year in which the Term of this Lease ends, after deducting from such refund the cost and expenses, including legal fees, incurred in connection with obtaining such refund.

SECTION 5.05.  Landlord shall not be required to join in any action or proceeding referred to in Section 5.02 or Section 5.04 hereof unless required by law or any rule or regulation in order to make such action or proceeding effective, in which event, any such action or proceeding may be taken by Tenant in the name of, but without expense to, Landlord. Landlord, however, will co-operate to the extent necessary and supply such data and execute such documents required for the purpose of obtaining a decision thereon either through litigation, settlement, or otherwise.

# ARTICLE 6

## Tenant's Personal Property

SECTION 6.01.  Tenant shall maintain and keep the furniture, furnishings, fixtures and equipment and all other articles of personal property herein leased, or any personal property substituted therefor or any addition or any replacement thereto during the term hereof, in good physical condition and repair, and Tenant shall from time to time renew and replace the same to the end that at all times there shall be similar quantities and qualities of the same or similar items as herein leased and all of the terms of this Lease in connection with the representations and remedies of Landlord hereunder shall be applicable hereto.  At the election of the Landlord, an annual inventory of the furniture, furnishings, fixtures, equipment and all other articles of personal property shall be taken by the Landlord and Tenant or their agents or local representatives.  It is agreed that in lieu of the Landlord and Tenant making an inspection of the personalty as provided for herein, that upon the election of the Landlord, the Tenant shall submit to the Landlord a sworn statement that the quantity of the furnishings, furniture and equipment is not less than that in the Demised Premises at the time of the making of this Lease, or at last subsequent inventory.

SECTION 6.02.  Subject to the provisions of Article 9 hereof, the Tenant covenants that all of the furniture, furnishings and fixtures forming a part of or used in connection with the operation of the Demised Premises are the property of the Landlord, except the property of all occupying subtenants, and all replacements, additions and substitutions of the foregoing furniture, furnishings and fixtures made by the Tenant during the term hereof or any renewal term, shall become the property of the Landlord immediately upon installation.  The Tenant shall not remove or permit the removal from the Demised Premises of any of the

6a

property leased or any replacement or substitutions thereto made by the

Tenant, or any additions made hereto by Tenant during the Term of this

Lease, provided, however, that Tenant shall have the right, subject to the

terms of any mortgage to which this Lease is subject and subordinate, to

remove any of the personal property herein leased or any of the substitutions,

replacements or additions thereto, made by Tenant at any time and from

time to time, during the term hereof and any time during the term hereof and

any renewal term, on the condition that Tenant immediately replace said

personal property with personal property of similar quality and utility and

with an unencumbered equity, of at least equivalent value to the property

being replaced, title to which shall vest in Landlord immediately.  Upon

demand, at any time and from time to time, Tenant shall execute and deliver

to Landlord bills of sale with affidavit of title to any and all personal prop-

erty placed by Tenant in the Demised Premises as aforesaid.

SECTION 6.03.  Tenant shall not purchase any replacements or

additions of furniture, furnishings and equipment for the Demised Premises

upon conditional bills of sale or chattel mortgage.

6b

## ARTICLE 7

### Use

SECTION 7.01.  Tenant shall use and occupy the Demised Premises as a shopping center and for such purposes as may be incidental and accessory thereto, but are not detrimental to such main purpose.  Tenant further covenants not to use or suffer said premises to be used at any time for any dishonorable or immoral purposes.

7

## ARTICLE 8

### Maintenance and Repairs

SECTION 8.01.  Landlord shall not be required to furnish any service or facilities or to make any repairs or alterations in or to the Demised Premises, throughout the Term of this Lease, the Tenant hereby assuming the full and sole responsibility for the construction, operation, repair, replacement, maintenance and management of the entire Demised Premises.  Without limiting the foregoing the Tenant covenants at its own cost and expense to make any and all repairs or replacements, ordinary or extraordinary, structural or otherwise, seen or unforeseen, necessary to keep in good physical order and condition the Building or Buildings on the Demised Premises now standing, or hereafter erected, inside and outside, including, but not limited to, repairs to and replacements of foundations, walls, roofs, floors, ceilings, fire escapes, vaults, sidewalks, water and sewer connections, gas pipes, wires, conduits for electricity, fences and retaining walls.

## ARTICLE 9

### Tenant's Obligation to Construct Addition

SECTION 9.01. Tenant covenants at its sole cost and expense to erect and construct an addition to the existing K-Mart Building of at least Forty Thousand (40,000) square feet, suitable for use as retail stores of the same general design and quality of construction as said existing Building to which said addition shall be annexed.

The construction of said addition shall be commenced on or before August 1, 1967, and diligently prosecuted to completion, subject to Unavoidable Delays as defined. Tenant covenants to complete the construction of said addition ready for occupancy of Tenants on or before January 31, 1968. In the event of Unavoidable Delays, Tenant's time to complete the addition shall be extended an equal number of days as elapsed during said Unavoidable Delay or Delays.

SECTION 9.02. Before commencing construction of said addition, Tenant shall deliver to Landlord:

(a) The written consent of the holder of the fee mortgage to which this Lease shall then be subordinate if the same be required under the terms of said mortgage;

(b) Copies of all required governmental permits and authorizations;

(c) Copies of policies of insurance covering Workmen's Compensation-covering all persons employed in the work, Comprehensive Public Liability Insurance (including owned and non-owned vehicles)-covering contractor, Protective Public Liability (including owned and non-owned vehicles)-covering contractor, Tenant and Landlord, Property damage-

9a

covering contractor, Protective Property Damage-covering co     ctor,

Tenant and Landlord, Automobile Property Damage (including     d and

non-owned vehicles)-covering contractor, all of said insurance     imits no

less than the amounts provided in Article 14 of this Lease;

(d) An executed counterpart of a contract between Tenant    a

reputable and responsible general contractor containing a provis. n waiving

said general contractor's right to lien the Demised Premises, and provid-

ing for the completion of such addition for a fixed amount;

(e) Surety company performance and payment bonds guarantying com-

pletion by the contractor enforceable by the Tenant or the Landlord as the

Tenant's assignee conditioned solely on the payment of the contract amount;

(f) An assignment of said contract between Tenant and its general con-

tractor duly executed and acknowledged by Tenant by its terms to be effec-

tive upon termination of this Lease prior to the complete performance of

such contract. Such assignment shall also include the benefit of payments

made on account of said contract including payments made prior to the

effective date of said assignment.

SECTION 9.03. The addition to the existing Building to be

constructed by Tenant pursuant to the Terms of this Article shall be and

remain the property of the Tenant and shall not be deemed to be part of the

Demised Premises so long as Tenant is not in default of any of the terms or

conditions of this Lease.

In the event, however, that this Lease is terminated, or the Demised

Premises are repossessed by the Landlord by or as a result of Tenant's de-

fault of any of the terms or conditions of this Lease, said Building as defined

herein to include equipment, machinery, fixtures and appurtenances therein

and thereto and all personal property of the Tenant of any kind or description

affixed or attached to, or used in connection therewith shall be made and remain the property of the Landlord, and title thereto in such event shall pass to the Landlord without the necessity for the execution of any further documents, and Landlord shall be entitled to recover possession thereof together with possession of the Demised Land.

The Buildings as defined herein shall be and remain free and clear of all liens and encumbrances, and the Landlord's right to repossess same as part of the Demised Premises in the event of Tenant's default shall in no way be impaired by the Tenant. Nothing contained herein shall be construed to prevent the Tenant from mortgaging or assigning its leasehold and the Building together therewith, pursuant to Article 13, provided the leasehold and the Building shall be and remain inseparable from one another and subject to the terms and conditions hereof.

SECTION 9.04. Tenant acknowledges that Landlord has entered into this Lease under the terms and conditions hereof relying upon Tenant's covenant to fully and faithfully perform Tenant's obligations under this Article, as well as all other obligations of Tenant under this Lease. The parties agree that Tenant's failure to complete the addition to the existing Building in accordance with the requirements of this Article would cause substantial damage to Landlord in amounts difficult of immediate determination. Landlord and Tenant hereby stipulate that Landlord's liquidated damages for Tenant's failure to complete the addition in accordance with Tenant's obligations under this Article and within the time limitations fixed thereby shall be and are hereby fixed in the amount of One Hundred Thousand ($100,000.00) Dollars which Tenant hereby covenants and agrees to pay as additional rent.

9c

Upon payment by the Tenant to Landlord of said stipulated and liqui-
dated damages of One Hundred Thousand ($100,000.00) Dollars, the basic
annual rent shall thereafter be reduced by Eight Thousand Five Hundred
and Fifty ($8,550.00) Dollars, which reduction shall be apportioned on the
per diem basis to the date of payment of said stipulated and liquidated
damages.

9d

## ARTICLE 10

### Alterations

SECTION 10.01. Tenant shall have the right to make changes or alterations to the Building on the Demised Premises without the consent of the Landlord, provided however, that no consent of the Landlord shall be required in the event that the change or alteration involves a cost not in excess of Ten Thousand ($10,000.00) Dollars provided further

(a) That no change or alteration shall at any time be made, which shall impair the structural soundness or diminish the value of the Building on the Demised Premises, and

(b) That no change or alteration shall be undertaken until Tenant shall have procured and delivered to Landlord the written consent of the holder of the fee mortgage to which this Lease is subordinate, if the same be required under the terms of the mortgage and

(c) No change or alteration shall be undertaken until Tenant shall have procured and paid for all required governmental permits and authorizations, and

(d) That all work done in connection with any change or alteration shall be done in a good and workmanlike manner and in compliance with all local laws and regulations and with the orders, rules and regulations of the Board of Fire Underwriters, or any other body now or hereafter constituted exercising similar functions and Tenant shall procure certificates of occupancy or other certificates if required by law, and

(e) Copies of policies of insurance covering Workmen's Compensation-covering all persons employed in the work, Comprehensive Public

10a

Liability Insurance (including owned and non-owned vehicles)-covering
contractor, Protective Public Liability (including owned and non-owned
vehicles)-covering contractor, Tenant and Landlord, Property damage-
covering contractor, Protective Property Damage-covering contractor,
Tenant and Landlord, Automobile Property Damage-(including owned and
non-owned vehicles)-covering contractor, all of said insurance in limits
no less than the amounts provided in Article 14 of this Lease.

(f)  In the case of an alteration, change or addition involving a cost
in excess of Ten Thousand ($10,000.00) Dollars, the Landlord may reasonably
require, as a condition to its consent, a cash deposit in the amount of one
hundred ten (110%) per cent of the estimated cost of said alteration, change
or addition or, as an alternative to said cash deposit, a surety company
payment bond in the same amount, together with a contract with a reputable
and responsible builder in form assignable by Tenant to Landlord, providing
for the completion of such alteration, change or addition for a fixed amount,
which amount shall be no greater than said estimated cost, accompanied by:

1.  An assignment of the contract so furnished, duly executed
and acknowledged by Tenant, by its terms to be effective upon any
termination of this Lease or the termination of any renewal, or
upon Landlord's re-entry upon the premises following a default by
Tenant and notices as herein provided, prior to the complete per-
formance of such contract; such assignment shall also include the
benefit of all payments made on account of said contract including
payments made prior to the effective date of such assignment.

10b

## ARTICLE 11

Compliance with Certificate of Occupancy Laws,

Ordinances, Requirements of Public Authorities,

SECTION 11.01. Tenant shall not use or occupy the Demised Premises nor permit anything to be done in or on the Demised Premises, in whole or in part, in a manner which would in any way violate any Certificate of Occupancy affecting the Demised Premises, or make void or voidable any insurance then in force with respect thereto, and shall not use or occupy or permit the Demised Premises to be used or occupied in a manner which may violate any present or future laws, regulations, ordinances, or requirements of the federal, state or municipal governments, or of any departments, subdivisions, bureaus or offices thereof, or of any other governmental, public or quasi-public authorities now existing or hereafter created, having juris-diction in the premises; provided, however, that Tenant may, in good faith (and wherever necessary in the name of, but without expense to Landlord) and after having secured the Landlord to its reasonable satisfaction by cash or by a surety company bond in an amount, in a company and in substance satisfactory to the Landlord, against loss or damage, contest the validity of any such laws, regulations, ordinances or requirements, and, pending the determination of such contest may postpone compliance therewith, except that Tenant shall not so postpone compliance therewith as to subject the Landlord to any fine or penalty or to prosecution for a crime, or to cause the Demised Premises or any part thereof to be condemned or to be vacated, or to cause a breach or default in any of the provisions of the fee mortgage to which this Lease is subject and subordinate, unless said mortgagee agrees in writing to said postponement.

11

## ARTICLE 12

### Mechanics' Liens

SECTION 12.01.  Tenant will not create or permit to be created or to remain and will discharge or bond any lien, encumbrances or charge levied on account of any mechanics', or materialman's lien, which might be or become a lien, encumbrance or charge upon the Demised Premises, whether or not the work, labor and services or materials furnished were performed or supplied prior to the commencement of the term hereof.

SECTION 12.02.  If any such lien at any time be filed against the Demised Premises Tenant within thirty (30) days after notice of the filing thereof, or such shorter period as may be required by the holder of any fee mortgage to which this Lease is subject and subordinate, will cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise. If Tenant shall fail to cause such lien to be discharged within the period aforesaid then in addition to any other right or remedy Landlord, without being obligated to do so may discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or by bonding proceeding and in such event Landlord shall be entitled, if Landlord elects, to compel the prosecution of an action for the foreclosure of such lien by the lienor and to pay the amount of the judgment in favor of the lienor with interest, costs, and allowances.  Any amount so paid by Landlord and all costs, expenses incurred by Landlord in connection therewith,

12a

together with interest thereon at the rate of six per cent (6%) per annum

from the respective dates of Landlord's making of the payment or

incurring of the cost and expense shall constitute additional rent payable

by Tenant under this Lease and shall be paid by Tenant to Landlord on

demand.   Nothing herein contained shall obligate the Tenant to pay

or discharge any lien created by Landlord.

SECTION 12.03.   Nothing in this Lease contained shall be

deemed or construed in any way as constituting the consent, request or

approval of Landlord, express or implied, by inference or otherwise to

anyone for the performance of any labor or services, the furnishing of

any materials for any improvement, alteration or repair of the Demised

Premises or any part thereof, nor as giving Tenant any right, power or

authority to contract for or permit the rendering of any services or

labor or the furnishing of any materials that would give rise to the

filing of any lien against the Demised Premises or any part thereof.

# ARTICLE 13

## Assignment, Subletting and Mortgaging

SECTION 13.01.  The Tenant or its successive assignees, may assign,
pledge, mortgage or transfer all of this Lease or its leasehold, together
with the addition to the existing Building as constructed by Tenant and re-
maining its property pursuant to Article 9 hereof, as inseparable from said
leasehold, or sublet all of the Demised Premises, without the consent of the
Landlord, provided, however, that the Tenant in so doing does not encumber
the Landlord's title to the Demised Premises.

Each assignee shall assume this Lease and shall be liable for the pay-
ment of the basic rent, Impositions and all costs, payments and charges
which Tenant under any of the provisions of this Lease assumes or agrees to
pay, and for the due performance of all the terms, covenants, conditions,
and agreements herein contained on Tenant's part to be performed for the
Term of this Lease so long as said assignee is the holder of said Lease.
No assignment shall be valid unless the assignee shall deliver to Landlord
an instrument in recordable form, or a counterpart thereof, which contains
a covenant of assumption by the assignee, as aforesaid, and a signed coun-
terpart of such assignment is delivered to the Landlord.  Upon any valid
assignment, the then assignor shall be deemed released and discharged
from further obligations under this Lease, and shall be liable only for rent
then due but unpaid and such defaults of which Tenant shall have been given
previous written notice, provided the assignee assumes all of the
obligations of the then assignor and all of the obligations of the Tenant un-
der this Lease.

It is specifically understood and agreed that neither party shall en-
force nor seek to enforce, any personal liability against any of the principals

of the other party, the remedies of each party for collection of any claims to be limited to the entity which constitutes the then Landlord or the then Tenant.

SECTION 13.02.  Subject to the provisions of any fee mortgage to which this Lease may be subject and subordinate, if Tenant or Tenant's successors or assigns shall mortgage this leasehold in accordance with the foregoing provisions and to a Lending Institution as herein defined, and shall furnish Landlord with written notice thereof together with a duplicate original of the mortgage instrument within ten (10) days after the execution and delivery thereof, Landlord agrees that so long as any such leasehold mortgage shall remain unsatisfied of record, the following provisions shall apply:

(a)  There shall be no cancellation, surrender, acceptance of surrender, or modification of this Lease, without the prior consent in writing of the Leasehold Mortgagee;

(b)  Landlord shall, upon serving the Tenant any notice of default or any other notice under the provisions of or with respect to this Lease, simultaneously serve a copy of such notice upon the holder of such leasehold mortgage and no notice of such default shall be deemed to have been duly given unless and until a copy thereof has been served upon the Leasehold Mortgagee.  The Leasehold Mortgagee shall thereupon have ten (10) days more time than is given to the Tenant to remedy or cause to be remedied the defaults complained of, and Landlord shall accept such performance by or at the instigation of such Leasehold Mortgagee as if the same had been done by the Tenant;

(c)  For the purpose of this Article, no default on the part of the Tenant, in the performance of work to be performed, or acts to be done, or conditions to be remedied, shall be deemed to exist, if steps shall in

13b

good faith have been commenced promptly to rectify the same, and shall be prosecuted to completion with diligence and continuity;

(d)  Anything herein contained notwithstanding, while such lease-hold mortgage remains unsatisfied of record, if an event or events of default shall occur, which under any provision of this Lease shall occur, which under any provision of this Lease shall entitle Landlord to terminate this Lease, and if before the expiration of ten (10) days of the date of service of termination of said notice, such Leasehold Mortgagee shall have paid to Landlord all rent and additional rent and other payments herein provided for, and then in default, and shall have complied or shall engage in the work of complying with all of the other requirements of this Lease, if any, are then in default, then in such event Landlord shall not be entitled to terminate this Lease and any notice of termination theretofore given shall be void and of no effect;

(e)  Landlord agrees that the name of the Leasehold Mortgagee may be added to the "Loss Payable Endorsement" of any and all insurance policies required to be carried by the Tenant hereunder and that (subject to the provisions of prior mortgages affecting the fee) Landlord will make all insurance and/or condemnation proceeds to which Tenant may be entitled hereunder, for purposes of restoration of the premises, available jointly to the Tenant and such Leasehold Mortgagee;

(g)  In the event Tenant fails or neglects to exercise any of the renewal options contained in Article 20 of this Lease within the time limitations set forth therein, Landlord shall send the Leasehold Mortgagee the notice required to be sent under Article 20, and the Leasehold Mortgagee may exercise said option or options on behalf of Tenant.

13c

SECTION 13.03.   Tenant may sublet any part of the Demised
Premises to an occupying subtenant without the written consent of the
Landlord provided:

(a)   The annual rent payable by such subtenant shall be no less
than the then market rental value thereof, and in any event no less than
One and 50/100 ($1.50) Dollars per square foot, without monetary con-
cessions of any kind.

(b)   The Term of said Lease shall be no more than ten (10) years.

(c)   Such sublease shall contain the following provision:

Tenant understands that the landlord herein is the tenant under a
ground or underlying lease of the Demised Premises and that this lease
is subject and subordinate to such underlying lease and any extensions or
modifications thereof.   Tenant covenants and agrees that if by reason of
any default upon the part of the landlord as tenant under such underlying
lease, the latter is terminated by summary proceedings, voluntary agree-
ment or through foreclosure by any fee or leasehold mortgagee, or other-
wise, the Tenant herein will attorn to and recognize the Landlord under
such underlying lease or to the purchaser at foreclosure sale in any such
foreclosure proceeding, as the case may be, as Tenant's landlord under
this lease, ~~unless the landlord under such underlying lease or the~~
~~mortgagee in any such foreclosure proceeding shall elect in connection~~
~~therewith, to terminate this lease.~~   The Tenant further agrees to execute
and deliver at any time upon request of the landlord or of any person,
firm or corporation which shall succeed to the interest of the landlord as
tenant under such underlying lease, any instrument to evidence such
attornment.   The Tenant waives the provisions of any law now or here-
after in effect which may give Tenant any right of election to terminate
this lease or to surrender possession of the premises demised hereby in
the event any proceeding is brought by the Landlord under such underlying
lease to terminate such underlying lease or in the event that any pro-
ceeding is brought by any mortgagee to foreclose any such mortgage.
Tenant further covenants and agrees that upon demand of any fee or
leasehold mortgagee of the demised premises or of any receiver in pro-
ceedings brought to foreclose any such mortgage to pay to the mortgagee
or to such receiver as the case may be, all rent becoming due hereunder
after such demand.

SECTION 13.04.   Subject to the terms and conditions of any fee
mortgage to which this Lease is subject and subordinate, Landlord agrees
that so long as such subtenant continues to pay the rent and observes
and complies with the other terms, covenants, and conditions in such

13d

sublease provided, and shall not be in default under such sublease, Land-lord shall not abrogate or diminish any rights of such subtenant under such sublease, nor disturb such subtenant's right to possession and use and enjoyment of such sublease premises in the exercise by Landlord of Landlord's rights against Tenant.

SECTION 13.05.  The Landlord shall, without charge and at any time, and from time to time, but not more frequently than once in any period of twelve calendar months, or in the event of a proposed bona fide sale, assignment or transfer of this Lease within thirty (30) days, at the request by Tenant, certify by written instrument duly executed, acknowledged, and delivered, whether the Tenant has or has not, as the case may be faithfully and fully made all payments then due to Landlord, and whether Landlord knows or does not know, as the case may be, of any default by Tenant in the performance by Tenant of all covenants, conditions and agreements on Tenant's part to be performed.

SECTION 13.06.  Tenant shall, on demand, execute, acknowledge, and deliver to the Landlord, or any mortgagee, without charge, a duly executed recordable certificate certifying that the Lease is valid and existing and in full force and effect, and that neither the Tenant nor the Landlord at the time are in default under any of the terms of this Lease, if same be the fact.

SECTION 13.07.  Subject to the prior rights of the holder of any mortgage to which this lease is or may be subordinate, Landlord here-by assigns to Tenant all the right, title and interest of the Landlord in and to all leases now in effect covering the demised premises, including the right to receive and collect the rents and profits therefrom, and Tenant assumes the performance of all of the obligations of the Landlord

13e

under all of such leases, and agrees to indemnify and hold the Landlord free and harmless against any claims of any tenants arising out of or relating to the said leases and the making thereof except for acts after the date hereof of the within named Landlord, its successors or assigns and their respective agents, servants or employees.

SECTION 13.08.   As additional security to the Landlord under this lease, the Tenant does hereby assign to Landlord, subject to any prior assignment that may be made to any holders of any mortgage or mortgages to which this lease is or may be subject and subordinate all the right, title and interest of the Tenant in and to all leases now in effect and hereafter covering all space now leased, or hereafter leased to the subtenants of the premises, including the right to receive and collect the rents and profits under all leases now or hereafter existing.  The assignment so made by the Tenant to the Landlord in this section is conditional only, and shall not become operative, absolute or in effect unless and until a default has occurred on the part of the Tenant as in this lease provided, and such default has not been cured, as in this lease permitted or not waived.  The Tenant shall not without the prior written consent of the Landlord with respect to any lease now in existence or any renewal or extension thereof of any space demised to any tenant, accept prepayment of rent prior to its due date in excess of one (1) month.

SECTION 13.09.   Tenant agrees to furnish Landlord with either a photostatic copy, or a copy certified to by Tenant as a true copy hereof of all subleases within thirty (30) days after the execution thereof.

SECTION 13.10.   Notwithstanding anything contained in this Lease, Tenant will not without the prior written consent of the Landlord, which

13f

Landlord covenants shall not be unreasonably withheld, and without the

prior written consent of the holder of any mortgage to which this Lease

is subordinate when required, in each instance obtained, enter into any

agreement affecting any present or future occupancy lease which would

reduce the rent, shorten the term, permit cancellation or surrender there-

of (unless such cancellation or surrender takes place simultaneously with

a new occupancy lease with a tenant of equal or better financial status

and for a term and upon rentals not less favorable than the lease being

cancelled or surrendered, provided such cancellation or surrender afore-

said is not in violation of the provisions of any mortgage to which this

Lease is subordinate), or impair or threaten to impair the value thereof

as security for the payment of the mortgage debt then due and owing to

the holder of any mortgage to which this Lease is subordinate or accept

prepayment of more than one month's rent payable thereunder.

SECTION 13.11.  Notwithstanding anything herein contained, any and

all securities or deposits deposited by any subtenant shall be retained

by Tenant, and Tenant guarantees the application thereof in accordance

with and pursuant to the terms and provisions of the applicable subleases,

and Tenant holds Landlord harmless in connection with any claim arising

out of or in connection with same.  Upon any assignment of this lease,

or a subletting of the premises, as an entirety, said Tenant prior thereto

and as a condition to a valid assignment, subletting or conveyance, shall

furnish to Landlord a verified statement of all deposits or securities

deposited by any subtenant and thereupon Tenant shall turn over said

securities or deposits to the assignee or sublessee of this lease, and in

such event the Tenant shall be deemed released from all liability in con-

13g

nection with the said securities.

SECTION 13.12.   Tenant acknowledges that Landlord has not re-
ceived any securities under any subleases in effect at the date hereof.

13h

## ARTICLE 14

### Insurance

SECTION 14.01. From and after the date of the commencement
of the Term of this Lease, Tenant shall, at Tenant's cost and expense
keep and maintain policies of:

(a) Fire and Lightning, with Extended Coverage and Vandalism and
Malicious Mischief endorsements attached, covering the Building
in amounts at all times sufficient to prevent the Landlord or Tenant from
becoming a co-insurer under the terms of the applicable policies, and in
no event less than the amount required by the holders of any first mortgage to
which this Lease may be subordinate, and no less than ninety (90%) per
cent of the ten full insurable value of the Building. Included in the coverage
of said policy shall be furniture, furnishings, fixtures, and equipment
constituting part of the Building as defined herein, together with
additions, substitutions, and replacements thereof. The term "full
insurable value" shall mean actual replacement value (exclusive of cost
of excavation, foundations and footings.) Such "full insurable value"
shall be determined from time to time (but not more frequently than once
in any thirty-six (36) calendar months) at the request of Landlord by one
of the insurers, or, at the option of Tenant, by an appraiser, engineer,
architect or contractor approved in writing the Landlord (which approval
shall not be unreasonably withheld) and paid by Tenant. In the event of
any change in the co-insurance requirements applicable to the Demised
Premises by the New York Fire Insurance Rating Organization or any similar
body, or by statute, the policies shall comply with such changes. The insurance

shall also contain a replacement clause, if the same may be obtained for a reasonable increased premium.

(b) Fire and Lightning, with Extended Coverage Endorsement attached, covering the Rental Value of the Demised Premises in an amount equal to the total of one (1) year's gross rent of the Demised Premises and one (1) year's impositions, insurance premiums and mortgage amortization and interest payments for which the Tenant is responsible to pay under the Terms of this Lease.

(c) Comprehensive General Liability including Elevator Liability and Garage Keepers Legal Liability, if a garage is maintained on the premises, extended by the "Occurrence" and Personal Injury Endorsements, subject to liability limits of $~~$1,000,000.00~~ $500,000.00 per person and $1,000,000.00 per occurrence for Personal Injury and $1,000,000.00 per accident and $25,000.00 aggregate for Property Damage.

(d) Boiler and Machinery covering all Steam Boilers or other types of Fired and Unfired Pressure Vessels, Air Conditioning Systems, etc., in use in the leased premises, subject to a limit of $1,000,000.00 per accident, and extended to also provide Use and Occupancy Coverage with adequate amounts of monthly indemnity for loss of gross rental income due to the occurrence of an insured peril.

(e) Comprehensive Glass Coverage on any large exposures of plate glass in the Demised Premises, except the K-Mart premises.

(f) Water Damage Insurance, subject to a limit of $100,000.00 per accident and Water Damage Legal Liability Insurance, subject to a liability limit of $100,000.00 per accident.

(g) If a Sprinkler System is in use in the leased premises, Sprinkler

14b

Leakage Insurance, subject to a limit of $100,000.00 per accident and

Sprinkler Leakage Liability Insurance, subject to a liability limit of

$100,000.00 per accident.

(h) War Damage Insurance, when obtainable and if required by the

Landlord in an amount at least equal to eighty (80%) per cent of the "full

insurable value" of the Demised Premises.

(i) Other insurance and in such amounts as may from time to time be

reasonably required by Landlord against insurable hazards which, from

time to time, are commonly insured against in the case of premises

similarly situated, due regard being given to the nature of improvements

on the Demised Premises and consturction, use and occupancy, and if by

reason of changed economic conditions the insurance amounts referred to in

this Lease shall become inadequate, Tenant shall increase the amounts of

such insurance carried;

All premiums on all policies of insurance referred to in this Lease

shall be paid by the Tenant as "additional rent" at least ten (10) days prior

to the due date for the payment of such premiums.  The originals of all

such policies shall be delivered to the Landlord, except when such originals

are required to be held by the holder of the fee mortgage to which this

Lease may be subordinate, in which case, copies or certificates of insur-

ance shall be sent to the Landlord.

All policies of insurance shall not be pledged or encumbered and are

to be written for a period of at least one (1) year in advance, provided that

if the policies be of a longer term, Tenant may pay premiums under such

policies to the insurance company in no less than in equal annual in-

stallments over the term of said policies.  All insurance shall be written

14.

by such responsible companies as are reasonably acceptable to the Land-lord and in any event acceptable to the holder of any fee mortgage on the Demised Premises to which this Lease is or may be subject and subordinate, and the original policies shall be at all times held by Landlord or, when required by the holder of any such fee mortgage to be held by such mortgagee, copies or certificates of such policies shall be delivered by Tenant to Landlord.

All insurance policies required by this Article shall be carried in favor of Landlord and Tenant, as their respective interests may appear, and, in the case of insurance against damage to the Demised Premises by fire or other casualty, shall also include the interest of any holder of any fee mortgage to which this Lease is or may be subject and subordinate. The proceeds of fire insurance or other casualty insurance policy as may be carried pursuant to the subsections hereof, shall be payable pursuant to the provisions of Article 15 hereof, subject, however, at all times to the terms and requirements of any fee mortgage to which this Lease is or may be subject and subordinate. Rent insurance proceeds are hereby assigned to Landlord to be held by Landlord as security for the payment of rent, im-positions, insurance premiums, mortgage amortization and interest and addi-tional rent until restoration of the Demised Premises by Tenant. Tenant shall observe and comply with the requirements of all policies at any time in force with respect to the Demised Premises. Each policy of insurance or certificate therefor required to be supplied by Tenant pursuant to this Lease shall contain an agreement by the insurer that such policies shall not be cancelled without at least ten (10) days' prior written notice to the Landlord or any mortgagee to whom a loss thereunder may be payable. Tenant shall

14d

not take out separate insurance concurrent in form or contributing in the
event of loss with that required by this Lease, unless the Landlord is included
therein with the insured loss payable as in this Lease provided.  Tenant
shall immediately notify Landlord of the taking out of any such separate in-
surance and shall cause the same to be delivered as in this Lease herein-
before required.

14e

## ARTICLE 15

### Damage or Destruction

SECTION 15.01.  If, at any time during the Term of this Lease, the Demised Premises or any part thereof shall be damaged or destroyed by fire or other casualty of any kind or nature, ordinary or extraordinary, foreseen or unforeseen (~~and if this damage shall not be an excepted casualty as in Section 15.03 provided~~), Tenant, at its sole cost and expense, and whether or not the insurance proceeds, if any, shall be sufficient for the purpose, shall proceed with reasonable diligence (subject to a reasonable time allowance for the purpose of adjusting such loss and to Unavoidable Delays) to repair, alter, restore, replace or rebuild the same as nearly as possible to its value, condition and character immediately prior to such damage or destruction, subject to such changes or alterations as the Tenant may propose, provided that the Landlord approves same in accordance with the provisions of Article 10. Such repairs, alterations, restoration, replacement or rebuilding, including such changes and alterations as aforementioned and including temporary repairs or the protection of other property pending the completion of any thereof, are sometimes referred to in this Article as the "Work."

SECTION 15.02.  Subject to the terms of any fee mortgage to which this Lease is or may be subject and subordinate, which shall prevail, Landlord agrees to pay over to Tenant, from time to time, upon the following terms, any monies which may be received by Landlord as a consequence of such damage or destruction from the policies of insurance provided for in Article 14, but in no event to any extent or in any sum exceeding the amount actually collected by the Landlord upon the loss; provided, however, that

15a

the Landlord before paying or causing the payment of such monies to the Tenant shall be entitled to reimburse itself therefrom to the extent, if any, of the necessary and proper expenses paid or incurred by Landlord in the collection of such monies.  Landlord shall pay or cause to be paid to Tenant as hereinafter provided, the aforesaid insurance proceeds for the purpose of repairs or restorations of the Demised Premises.  Prior to the making of any repair Tenant shall furnish Landlord with an estimate of cost of any such Work prepared by a licensed architect approved by the Landlord, which approval will not be unreasonably withheld, and such insurance proceeds received by the Landlord shall be paid to Tenant from time to time thereafter in installments as the making of such Work progresses upon application to be submitted by the Tenant showing the cost of labor and materials incorporated in such Work, or incorporated therein since the last previous application and paid for by the Tenant.  If any mechanic's lien is filed against the Demised Premises the Tenant shall not be entitled to receive any further installment until such lien is satisfied or otherwise discharged.  The amount of any installment to be paid to Tenant shall be such proportion of the total insurance monies received by Landlord as the cost of labor and materials theretofore incorporated by Tenant in such Work, or incorporated therein since the payment of the last previous installment bears to the total estimated cost of such Work less twenty (20%) per cent on the installment to be paid.  Upon completion of and payment for such Work by Tenant the insurance proceeds then being retained by Landlord shall be paid over to Tenant.

In the event of any loss, damage or destruction and the cost of repairs to the premises exceeds Ten Thousand ($10,000.00) Dollars in the aggregate the Tenant agrees at least ten (10) days before the commencement of any

15b

Work or any demolition of any building or buildings, now or hereafter

erected upon the Demised Premises or before the commencement of any

Work necessary to repair and restore any building, now or hereafter

erected on the Demised Premises, which shall be partially or wholly

damaged or destroyed by fire or other casualty, risk or hazard, or before

the commencement of any Work necessary to repair, alter or renew any

building now or hereafter erected on the premises, or any part thereof,

that the Tenant shall furnish to the Landlord the following:

(a) complete plans and specifications for the demolition, construction,

repair, replacing, renewing or altering of said building and improve-

ments, as the case may be, prepared by an architect whose qualifications

shall meet with the reasonable satisfaction of Landlord and which plans

and specifications shall meet with the reasonable approval of the Land-

lord together with the approval thereof by any governmental board,

bureau or body then exercising jurisdiction, with regard to such Work,

plans and specifications, which plans and specifications shall be and

become the sole and absolute property of Landlord in the event that for

any reason this Lease and any renewals thereof shall for any reason

terminate;

(b) a fixed sum contract in assignable form made with a reputable

and responsible builder, providing for the erection, completion and

terms of payment for all Work, labor and materials necessary to

construct and complete the new building and improvements depicted in

said plans and specifications; and

(c) an assignment of the contract so furnished, duly executed and

acknowledged by Tenant, by its terms to be effective upon any termina-

15c

tion of this Lease or the termination of any renewal, or upon Landlord's re-entry upon the premises following a default by Tenant and notices as herein provided, prior to the complete performance of such contract; such assignment shall also include the benefit of all payments made on account of said contract including payments made prior to the effective date of such assignment;

(d) such repairs or restorations shall be made in accordance with such plans and specifications and any applicable law, statute, ordinance, regulation or requirement, federal, state, county or municipal;

(e) during the course of any alterations, restoration or reconstruction of the Demised Premises, the Tenant will carry for the protection of the Landlord protective liability, workmen's compensation and property damage insurance in such amounts as may from time to time be reasonably required by the Landlord, and such other insurance as is required under Article 9.02 hereof.

(f) Notwithstanding anything herein contained, the Tenant shall comply with any requirements imposed by the holder of any fee mortgage to which this Lease is or may be subject and subordinate.

In the event of any loss, damage or destruction to the premises by fire or other casualty of any kind or nature, ordinary or extraordinary, the Tenant, at its sole cost and expense, shall adjust, negotiate, compromise and/or litigate all claims resulting therefrom against the insurance company subject to the provisions of any fee mortgage to which this Lease is subject and subordinate, provided, however, that the Tenant shall not settle any loss with the insurance carrier for any damage exceeding a cost of repair or restoration of ~~Five Thousand ($5,000.00)~~ Ten Thousand ($10,000.00) Dollars, without consent of Land-lord, which consent shall not be unreasonably withheld.

15d

SECTION 15.03.   In no event shall Tenant be entitled to any abatement, allowance, reduction or suspension of rent because part or all of the Demised Premises shall be untenantable owing to the partial or total destruction thereof, and anything herein to the contrary, no such damage or destruction shall affect in any way the obligation of Tenant to pay the rent, additional rent and other charges herein reserved or required to be paid, nor release Tenant of or from any obligation imposed upon Tenant under this Lease.   Section 227 of the Real Property Law of the State of New York and its equivalent provisions in any other state's laws are hereby waived by Tenant.

SECTION 15.04.   In the event that the holder of any mortgage to which this Lease is or shall be subject and subordinate, shall elect to apply any insurance proceeds paid by the insurers, in reduction of the principal of such mortgage, then Landlord shall have a period of ninety days thereafter within which to replace the amount so applied by such mortgagee, through refinancing or otherwise.   In the event that Landlord does not so replace said amount within said period of ninety days then Tenant shall have the right to obtain a commitment for refinancing of the leasehold and/or fee of the Demised Premises, the proceeds of which, after payment of all origination costs and amounts required to satisfy prior liens, will equal or exceed the amount originally required to be replaced by Landlord, as aforesaid.   Provided said commitment is obtained from a Lending Institution, as defined herein, and the required payments of interest and amortization to be made on said proposed mortgage do not exceed the payments required under the then existing mortgage, Landlord shall execute all instruments and do all things necessary in order to close said proposed mortgage.   Upon said mortgage closing, the proceeds thereof

156

necessary to replace the amount previously applied by a prior mortgagee in reduction of principal, shall be paid over and applied for repairs and reconstruction in accordance with the provisions of this Article 15 and the balance shall be the property of the Landlord. Nothing in this Section 15.04 shall alter or diminish Tenant's complete obligation to repair, alter, install, replace and rebuild as provided in Section 15.01.

SECTION 15.05. In the event the holder of any mortgage to which this Lease is or shall be subject and subordinate shall apply insurance proceeds in reduction of the principal of such mortgage, Tenant shall proceed to reconstruct, but shall not be required to deliver a cash deposit or unqualified completion bond until such amounts are replaced by refinancing.

## ARTICLE 16

### Condemnation

SECTION 16.01.    If, at any time during the Term of this Lease, or of any renewal hereof, title to the whole or substantially all of the Demised Premises shall be taken in condemnation proceedings or by any right of eminent domain, this Lease shall terminate and expire on the date of such taking and the rent and additional rent reserved shall be apportioned and paid to the date of such taking.

In the event of such taking of all or substantially all of the Demised Premises after commencement of this term, the award or awards shall be apportioned between the Landlord and Tenant as follows:

(1)    There shall be first paid to Landlord any and all reasonable fees and expenses incurred in collecting the award or awards;

(2)    There shall be next paid to the Landlord the sum of One Million Five Hundred Thousand ($1,500,000.00) Dollars, out of which Landlord shall pay any principal balance of any fee mortgage to which this Lease shall then be subject and subordinate;

(3)    There shall be next paid to Tenant, after payment of the foregoing amounts, the amount equal to the original the sum of the leasehold mortgage, which Tenant shall have placed against its leasehold simultaneously with or immediately following completion of the addition to be constructed by Tenant at Tenant's cost and expense pursuant to Article 9 hereof;

(4)    The balance of any award or awards as aforesaid shall be divided between the Landlord and Tenant as follows:

Tenant shall receive a sum equal to 50 per cent of such balance reduced by 1/99th for each year that has elapsed from the date hereof to the date of taking, and the remainder of the reward shall be paid over to Landlord;

166

(5) In the event of a condemnation as provided herein, the Tenant hereby waives all claim for any value of its leasehold or Lease and the right to a separate award.

SECTION 16.02. In the event of any taking in condemnation of less than the whole or substantially all of the Demised Premises, the Term of this Lease and its provisions shall not be reduced or affected in any way, and the parties shall be entitled to receive such award or awards as their respective interests in the Demised Premises shall entitle them. In the event that said proceedings shall not result in separate awards to Landlord and Tenant, the single award in such case shall be divided between Landlord and Tenant in accordance with arbitration to be held pursuant to Article 21 hereof.

SECTION 16.03. Tenant shall have the right to appear and participate in any condemnation proceedings by counsel of Tenant's own choice and at Tenant's own separate expense.

SECTION 16.04. In the event of any taking in condemnation of less than the whole or substantially all of the Demised Premises but resulting in a partial demolition of any Building on the Demised Land, Tenant shall, at its sole cost and expense, restore the remaining part of such Building to substantially its former condition to the extent that the same shall be feasible and so as to constitute a complete Building.

SECTION 16.05. If, at any time during the Term of this Lease, the whole or part of the Demised Premises shall be taken in condemnation proceedings or by any right of eminent domain for a temporary use or occupancy, the Term of this Lease shall not be reduced or affected in any way and tenant shall continue to pay in full the basic rent, additional rent and other charges herein provided for, in the manner and at the times herein

16b

specified.  In the event of any such taking as in this Section 16.05 referred
to, Tenant shall be entitled to appear, claim, prove and receive the entire
award for such taking including the cost of restoration of the Demised Prem-
ises.  In the event that the award payable to the Tenant for use and occu-
pancy shall be for a period which includes all or part of the Term not then
renewed, the portion of the award applicable to the term not then renewed,
shall belong to Tenant only if such term shall be renewed by Tenant, pur-
suant to the Terms of this Lease, but if such term shall not be renewed,
Landlord shall be entitled to that portion of the award representing the term
not renewed when the time for exercise of the option of renewal shall have
expired.

SECTION 16.06.  The portion of the award in such temporary
taking received by Tenant for restoration of the Demised Premises shall be
retained by the Tenant only on condition that the Tenant shall, without undue
delay, obtain, repossess and proceed to restore the same as nearly as may
be reasonably possible to the condition in which the Demised Premises were
immediately prior to such taking, with such changes and alterations as Ten-
ant may elect to make.

16c

## ARTICLE 17

### Default Provisions

SECTION 17.01.    (a)  Whenever Tenant shall default in the payment of any installment of rent or of any other sum payable by Tenant to Landlord herein, or of any Imposition required to be paid by Tenant, when and as the same shall become due and payable and such default shall continue for a period of five (5) days; or

(b)  Whenever Tenant shall do or permit anything to be done, whether by action or inaction, contrary to any covenant or agreement on the part of Tenant herein contained or contrary to any of the covenants, agreements, terms or provisions of this Lease, or shall fail in the keeping or performance of any of the covenants, agreements, terms or provisions contained in this Lease (which on the part or behalf of Tenant are to be kept or performed other than those referred to in the foregoing subsection (a) of this section), and Tenant shall fail to commence to take steps to remedy the same within twenty (20) days after Landlord shall have given to Tenant written notice specifying the same, or having so commenced shall thereafter fail to proceed diligently to remedy the same; or

(c)  Whenever at any time during the Term hereby demised or any renewal, there shall be filed by Tenant in possession, in any court pursuant to any statute either of the United States or any state, a petition in bankruptcy or insolvency or for reorganization, or for the appointment of a receiver or trustee of all or a portion of Tenant's property, or if the Tenant in possession makes an assignment for the benefit of creditors or petition for entry into an arrangement; or

(d)  Whenever at any time during the term hereby demised or any renewal, there shall be filed against Tenant in possession in any court

17a

pursuant to any statute either of the United States or of any state, a petition

in bankruptcy or insolvency or for reorganization or for appointment of re-

ceiver or trustee of all or a portion of Tenant's property, and if within

ninety (90) days after the commencement of any such proceeding against

said Tenant the same shall not have been dismissed; or

(e)  The Demised Premises shall be abandoned by the Tenant or

shall become vacant for more than thirty (30) days during the term; or

(f)  an execution or attachment shall be issued against the

Tenant in possession and such execution or attachment shall not be vacated

or removed by court order, bonding or otherwise, within a period of sixty

(60) days after the issuance thereof;

then regardless of and notwithstanding the fact that Landlord has or may

have some other remedy under this Lease or by virtue hereof, or in law or

in equity, Landlord may give to Tenant a notice of intention to end the Term

of this Lease specifying a date not less than five (5) days thereafter and,

unless the default complained of is cured within said five-day period, this

Lease and the term and estate hereby granted shall expire and terminate

upon the day so specified in the notice as fully and completely and with the

same force and effect as if the day so specified were the date hereinbefore

fixed for the expiration of the Term of this Lease and all rights of Tenant un-

der this Lease shall expire and terminate, but Tenant shall remain liable

for damages as hereinafter provided.

SECTION 17.02.  Upon any such termination or expiration of

this Lease, Tenant shall peaceably quit and surrender the Demised Prem-

ises to Landlord, and Landlord may without further notice enter upon, re-

enter, possess and repossess itself thereof, by force, summary proceedings,

17b

ejectment or otherwise, and may dispossess and remove Tenant and all

other persons and property from the Demised Premises and may have, hold

and enjoy the Demised Premises and the right to receive all rental and other

income of and from the same.

SECTION 17.03.  Tenant in the event of the expiration or ter-

mination of this Lease or of re-entry by Landlord, under any of the pro-

visions of this Article 17 or pursuant to law, by reason of default hereunder

on the part of the Tenant, shall pay to Landlord, as damages at the election

of Landlord, either:

(a) a sum which at the time of such termination of this Lease or

at the time of any such re-entry by Landlord, as the case may be, repre-

sents the excess, if any, of

(i)   the aggregate rent which would have been

payable by Tenant for the period commencing with

such earlier termination of this Lease or the date

of any such re-entry, as the case may be, and ending

with the date of expiration of the Term of this Lease

had this Lease not so terminated or had Landlord

not so re-entered the premises, over

(ii) the aggregate rental value of the premises

for the same period, or

(b) sums equal to the rent which would have been payable by

Tenant had this Lease not so terminated, or had Landlord not so re-entered

the premises, payable upon the rent days specified herein following such

termination or such re-entry and until the date of expiration of the Term of

this Lease, provided, however, that if Landlord shall relet the premises

during the said period, which Landlord shall use its best efforts to do so,

by actively offering the same for rent in order to mitigate damages, Land-lord shall credit Tenant with the net rents, if any, received by Landlord from such reletting, such rents to be determined by first deducting from the gross rents as and when received by Landlord from such reletting the ex-penses incurred or paid by Landlord in terminating this Lease or of re-entering the premises and of securing possession thereof as well as the ex-penses of reletting, including altering and preparing the premises for new tenants, brokers' commission, and all other expenses properly chargeable against the premises and the rental therefrom; but in no event shall Tenant be entitled to receive any excess of such net rents over the sums payable by Tenant to Landlord hereunder.

Suit or suits for the recovery of such damages, or any install-ments thereof, may be brought by Landlord from time to time at Landlord's election, and nothing contained herein shall be deemed to require Landlord to postpone suit until the date when the Term of this Lease would have ex-pired if it had not been terminated under the provisions of this Article 17 or under any provisions of law, or had Landlord not re-entered the premises.

Nothing herein contained shall be construed as limiting or pre-cluding the recovery by Landlord against Tenant of any damages to which Landlord may lawfully be entitled in any case other than those particularly provided for above.

SECTION 17.04.  Tenant hereby expressly waives the service of any notice of intention to re-enter provided for in any statute, or of the in-stitution of legal proceedings to that end, and Tenant waives for and on be-half of itself and all persons claiming through or under said Tenant, includ-ing any assignee or creditor of Tenant, any and all right of redemption or re-entry or re-possession or to restore the operation of this Lease in case

Tenant shall be dispossessed by summary proceedings, by a judgment or by a warrant of any court or judge or in any case of re-entry or re-possession by Landlord or in case of any expiration or termination of this Lease.

SECTION 17.05.  The words "enter", "entry", "re-enter" or "re-entry" are not restricted to their technical legal meaning.

SECTION 17.06.  If this Lease shall be terminated as provided in this Article 17 or by summary proceedings, Landlord shall be entitled to retain and set off against its damages any monies being held as deposits, and all insurance policies shall continue until their expiration date unless surrendered and cancelled by the Landlord; in the event said insurance policies are surrendered and cancelled by the Landlord, the Landlord shall be entitled to retain and set off against its damages any refund and/or return premiums and Tenant waives all right or claim to same.

17-

## ARTICLE 18

Landlord's Right to Perform - Cumulative Remedies -
Waivers - Tenant's Right to Cure Landlord's Default -
Tenant's Deposits - Attornment - Miscellaneous

SECTION 18.01. If Tenant shall fail to pay any Imposition or
make any other payment required to be made under this Lease or shall de-
fault in the performance of any other covenant, agreement, term, provision,
or condition herein contained, Landlord, without being under any obligation
to do so and without thereby waiving such default, may make such payment
and/or remedy such other default for the account and at the expense of Ten-
ant, immediately and without notice in the case of emergency, or in any
other case only provided Tenant shall fail to make such payment or remedy
such default with reasonable dispatch after Landlord shall have notified
Tenant in writing of such default. Bills for any expense incurred by Land-
lord in connection therewith may be sent by Landlord to Tenant monthly, or
immediately, at the Landlord's option, and shall be due and payable in ac-
cordance with the terms of said bills and if not paid when due the amount
thereon shall immediately become due and payable as additional rent under
this Lease, and when paid by Tenant to Landlord shall constitute Tenant's
cure of such default.

SECTION 18.02. Landlord may restrain any breach or threat-
ened breach of any covenant, agreement, term, provision or condition herein
contained, but the mention herein of any particular remedy shall not pre-
clude Landlord from any other remedy Landlord might have, either in law
or in equity. The failure of Landlord to insist upon the strict performance
of any one of the covenants, agreements, terms, provisions or conditions of
this Lease or to exercise any right, remedy or election herein contained or
permitted by law shall not constitute or be construed as a waiver or re-
linquishment for the future of such covenant, agreement, term, provision,

condition, right, remedy or election, but the same shall continue and re-
main in full force and effect.   Any right or remedy of Landlord in this Lease
specified or any other right or remedy that Landlord may have at law, in
equity or otherwise upon breach of any covenant, agreement, term, provi-
sion or condition in this Lease, contained upon the part of Tenant to be
performed, shall be distinct, separate and cumulative rights and remedies
and no one of them, whether exercised by Landlord or not, shall be deemed
to be in exclusion of any other.   No covenant, agreement, term, provision
or condition of this Lease shall be deemed to have been waived by Landlord
unless such waiver be in writing, signed by Landlord or Landlord's agent
duly authorized in writing.   Consent of Landlord to any act or matter must
be in writing and shall apply only with respect to the particular act or mat-
ter to which such consent is given and shall not relieve Tenant from the ob-
ligation wherever required under this Lease to obtain the consent of Land-
lord to any other act or matter.   Receipt or acceptance of rent by Landlord
shall not be deemed to be a waiver of any default under the covenants,
agreements, terms, provisions and conditions of this Lease, or of any
right which Landlord may be entitled to exercise under this Lease.

SECTION 18.03.   If the Landlord commences any action or pro-
ceedings against the Tenant prior to any default being remedied by Tenant,
all sums paid by the Landlord for expenses of any such action or proceeding
including reasonable counsel fees, shall be paid by Tenant to Landlord on
demand and may be collectible by the Landlord as rent hereunder.

SECTION 18.04.   The Tenant shall and will indemnify and save
harmless the Landlord of and from any and all liability, loss, damage or
expense, causes of action, suits, claims and judgments, including reason-
able legal expenses in connection with defending against any such action,

18b

suit or claim (whether or not such action, suit or claim is covered by insurance) arising from injury to persons or property of any and every nature, or from loss of life sustained in or about the said Demised Premises and the Buildings and improvements, thereof, or in or upon the sidewalks, vaults, or streets in front of or appurtenant thereto by any person or persons whatever, and for any matter or thing growing out of the occupation of the Demised Premises, or any part thereof, or arising or growing out of the use, occupation, management or possession of the Demised Premises, or of any Building thereon, or any part thereof, or of the vaults, or sidewalks adjacent thereto, occasioned by the Tenant, its agents, employees or occupants of any part of the Demised Premises, or by their agents, or employees, respectively, or which may be occasioned by any person or thing whatsoever or which may be caused by the operations of any municipal or governmental authorities or of any of their departments, bureaus, etc., in the construction of any public work.

The Landlord shall not be liable for any personal injuries or damage to the Tenant or its officers, agents and employees or to any other persons or to any occupant of any part of the Demised Premises, or for any injury or damage to any goods, wares, merchandise or property of the Tenant or of any occupant of any part of the said Demised Premises, irrespective of how the same may be caused, whether from action of the elements or acts of negligence of the owner or occupants of the adjacent properties.

SECTION 18.05. The Tenant accepts the Buildings, improvements, and personalty on the Demised Premises in their present condition and without any representation or warranty by the Landlord as to the condition of said Buildings or as to the use or occupancy which may be made thereof, and the Landlord shall not be responsible for any latent defect or change of

condition in the Buildings and personalty and the rent hereunder shall in no

case be withheld or diminished on account of any defect in the Buildings, nor

for any damage occurring thereto, nor because of the existence of any vio-

lations in any Municipal Departments.

SECTION 18.06. (a) Tenant shall permit Landlord or the hold-

ers of any mortgages affecting the Demised Premises to which this Lease is

subordinate, or its or their agents, to enter the Demised Premises at all

reasonable times during usual business hours for the purpose of inspection

of both the Demised Premises and the equipment, furniture and furnishings

therein; and

(b) Tenant shall permit Landlord or its agents to enter the

Demised Premises at all reasonable times for the purpose of making any

necessary repairs to the Demised Premises and performing any necessary

work therein that may be required by reason of Tenant's failure to make any

such repairs or perform any such work or to commence the same. Nothing

herein shall imply any duty upon the Landlord to do any such work which

under any provision of this Lease Tenant may be required to perform, and

the performance thereof by Landlord shall not constitute a waiver of Tenant's

default in failing to perform the same. In case of the neglect or default of

the Tenant in making any such repairs after notice as provided under this

Lease, the Landlord may do so during the term hereby granted or after its

expiration and all the costs and expenses consequent thereon with interest

thereon shall be repaid by the Tenant to the Landlord as additional rent. The

receipted bills of the mechanics or contractors employed by the Landlord

showing the payment by the Landlord for the making of such repairs, altera-

tions or improvements shall be prima facie evidence of the reasonableness

of such charges therefor, and that the same have been paid by the Landlord,

and when paid by Tenant to Landlord shall constitute Tenant's cure of such

default.

18-1

Landlord shall not in any event be liable for inconvenience, annoyance, disturbance, loss of business or other damage to Tenant by reason of making such repairs or the performance of any such work in the Demises Premises, or on account of bringing materials, supplies and equipment into or through the Demised Premises during the course thereof, and the obligations of Tenant under this Lease shall not thereby be affected in any manner whatsoever.

SECTION 18.07.   Landlord shall have the right to enter the Demised Premises at all reasonable times during usual business hours for the purpose of showing the same to prospective purchasers thereof, and at any time within twenty-four (24) months prior to the expiration of the Term of this Lease (unless Tenant shall have given written notice of its election to renew this Lease as provided in this Lease) or within twenty-four (24) months prior to the expiration of any renewal term of this Lease (unless Tenant, if entitled to renew this Lease as provided in this Lease, shall have given Landlord a written notice of its election so to renew this Lease as therein provided), for the purpose of showing the same to prospective tenants.

SECTION 18.08.   If at any time during the Term of this Lease or of any renewal hereof any proceedings are instituted or orders made for the widening or other enlargement of any street or highway contiguous to the Demised Premises, requiring removal of any projection or encroachment on, under or above any such street or highway, or any changes or alterations upon the Demised Premises, or in the sidewalks, curbs, gutters, vaults or appurtenances, Tenant, at Tenant's own cost and expense, will promptly comply with such requirements, and on Tenant's failure to do so, Landlord, after notice as provided under this Lease, may comply with the same, and add the amount expended therefor, and any interest, fines, penalties, architects' fees, counsel fees or other expenses incurred by Landlord

18.

in such compliance or by the failure of Tenant so to comply, as additional
rent to any installment of net rent thereafter due.

SECTION 18.09. ~~Tenant shall furnish to Landlord~~ Tenant shall also fur-
nish to Landlord within ~~ninety~~ sixty (60) days after the end of its fiscal year a
written statement of operations of the Demised Premises for the preceding
fiscal year setting forth in detail the income and expenses relating to the
operations of the Demised Premises and the names of any subtenants with
the terms and conditions of their respective tenancies. Said statements shall
be certified to as true and correct by Tenant or its certified public account-
ant. Tenant shall, upon request from any holder of a mortgage to which this
Lease is subject and subordinate, furnish said mortgagee at any time and
from time to time, with the foregoing information and statements. Upon
written request by the Landlord the Tenant shall from time to time make
available for inspection by the Landlord, or its designee, during reasonable
business hours, the subleases covering the various portions of the Demised
Premises, such subleases to be made available for such inspection when and
as requested as aforesaid, either at the Demised Premises or at such other
place in the City of New York, State of New York, as Tenant may designate
by notice to the Landlord after such request for inspection is made.

SECTION 18.10. The Landlord shall not be required to furnish
any service to the Demised Premises, including, but not limited to, heat,
water, help and power, and shall not be liable for any failure of water sup-
ply or electric current or of any service by any utility, nor for injury or
damage to person (including death) or property caused by or resulting from
steam, gas, electricity, water, rain or snow which may flow or leak from
any part of the Demised Premises, or from any pipes, appliances or plumb-

186

ing works of the same, or from the street or subsurface or from any other place, nor from interference with light or other incorporeal hereditaments or easements, however caused, except if due to the affirmative acts of the Landlord. The Tenant agrees to pay all charges for gas, electricity, water, light, heat, power and/or other services used or charges imposed in or about or supplied to said Building, and shall indemnify the Landlord against any and all liability on such account.

SECTION 18.11. The term "Landlord" as used in this Lease means only the Landlord for the time being of the land and Building which constitute the Demised Premises (or of the fee if Landlord be the fee owner) so that in the event of any sale or transfer of said leasehold interest (or of the fee if Landlord be the fee owner), the said Landlord shall be and hereby is entirely freed and relieved of all covenants and obligations of Landlord hereunder and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, at any such sale, that the purchaser has assumed and agreed to carry out any and all covenants and obligations of Landlord hereunder.

SECTION 18.12. If any term or provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

SECTION 18.13. Whenever in this Lease agreement, any words of obligation or duty are used, such words or expressions shall have the

18g

same force and effect as though made in the form of covenants.

SECTION 18.14. It is expressly understood and agreed by and between the parties hereto that this Lease sets forth all the promises, agreements and conditions, inducements and understandings between Land-lord and Tenant relative to the Demised Premises and that there are no promises, agreements, conditions, understandings, inducements, warran-ties or representations, oral or written, expressed or implied, between them other than as herein set forth and this Lease shall not be modified in any manner except by an instrument in writing executed by the parties.

SECTION 18.15. In order to insure the payment of Impositions as provided in Article 5 hereof, insurance premiums, as provided in Article 14 hereof, and interest and amortization on mortgages payable by Tenant, if any, under any of the provisions hereof, the Tenant agrees to pay to the Landlord a sum equal to 1/12th of the annual Impositions, insurance prem-iums and interest and amortization as aforesaid, on the 1st day of each and every month. At the commencement of the Term of this Lease the Tenant shall pay to Landlord such additional amounts as may be required, in addi-tion to the regularly monthly installments, to provide the Landlord with funds sufficient to pay each particular Imposition, insurance premium and interest and amortization payment at least thirty (30) days prior to the re-spective due dates thereof. If at any time during the Term of this Lease, the respective funds on hand are insufficient for the payment of any Imposi-tion, insurance premium or interest and amortization payment on a date thirty (30) days prior to the due date thereof, Tenant shall forthwith make a deposit equal to any such deficiency. It is the intention of the parties that the Tenant shall deposit with the Landlord the necessary funds so that the Landlord at all times during the Term of this Lease shall have on hand

18h

sufficient deposits covering each of the several items for the respective accrued periods pertaining thereto, so that the deposits for one shall not be used for the payment of another.

SECTION 18.16. In the event Tenant is in default under this Lease, or the Lease has been terminated, prior to its normal expiration date as a result of Tenant's default, then Landlord and not Tenant shall be entitled to all monies deposited under Section 18.15 hereof, and to all monies which may be payable as a result of any proceeding for the reduction of taxes.

SECTION 18.17. The parties stipulate and it is their intention that this Lease shall be construed in accordance with the laws of the State of New York.

SECTION 18.18. Tenant acknowledges that Landlord is not now the fee owner of Tract 2 described in Exhibit "A" annexed hereto and that to such extent, Tenant hereunder is a subtenant of that part of the Demised Premises.

SECTION 18.19. In the event that Landlord elects not to exercise Landlord's option to purchase said Tract 2 pursuant to the terms of Landlord's lease thereof, Landlord shall give Tenant notice thereof at least thirty (30) days prior to the deadline for giving sixty (60) days prior notice under the terms of said option. Upon such notice being given by Landlord to Tenant, Tenant shall exercise said option, at Tenant's cost and expense, and cause title to said Tract 2 to be conveyed to Landlord hereunder. Upon Tenant's compliance with the foregoing and conveyance of Tract 2 to Landlord, the basic annual rent, payable hereunder, shall be reduced in the amount of Two Thousand Four Hundred ($2,400.00) dollars per annum apportioned to the date of such conveyance.

18i

~~entitled to a maximum sum of the Twenty-Three and ($20,000.00) Dollars~~
~~option price paid by Tenant in the amount such of Tenant's and the pro~~
~~rata book the rent during of the for mortgage done by default following~~
~~such insurance sum.~~

SECTION 18.20.  Landlord shall keep all deposits made by Tenant in a separate bank account specifically maintained by Landlord for this Lease.  Landlord shall on Tenant's written request exhibit copies of all statements and cancelled checks with respect to said account.

SECTION 18.21.  In the event that Landlord shall at any time fail to pay any installment of principal or interest or any other sum payable under the fee mortgage now encumbering the Demised Premises, or Impositions or insurance of which ample deposits have been made by Tenant, Tenant shall have the right, but not before the last five (5) days of the period, at the expiration of which the failure to make such payment would constitute a default or commence a penalty period to pay any such principal, interest, insurance premium, or Imposition, and to deduct the amount of such payment from the next succeeding installment or installments of basic annual rent, which shall become due and payable.  Tenant shall give Landlord Twenty-four (24) hours notice before making such payment.

## ARTICLE 19

### Excavation

SECTION 19.01. In the event that an excavation should be made for building or other purposes upon land adjacent to the Demised Premises, or should be authorized to be made, Tenant shall, if necessary, afford to the person or persons causing or authorized to cause such excavation, license to enter upon the Demised Premises for the purpose of doing such work as shall reasonably be necessary to protect or preserve the wall or walls of the Building, or the Building, from injury or damage and to support them by proper foundations, pinning and/or underpinning.

19

## ARTICLE 20

### Renewal Terms

SECTION 20.01.   The Tenant shall have the option, if this Lease shall at the time of the exercise thereof be in full force and effect and if the Tenant shall not then be in default in fulfilling any of its terms, covenants and conditions on the part of the Tenant to be performed, of renewing this Lease for three (3) additional renewal terms of twenty-three (23) years each, provided that in each instance this Lease shall, at the time of the exercise of said option, be in full force and effect, and the Tenant shall not be in default in fulfilling any of its terms, covenants and conditions on the part of the Tenant to be performed.   Each renewal option shall be exercised by the Tenant giving to the Landlord notice of intention to renew not less than twelve (12) months nor more than eighteen (18) months prior to the expiration of the next preceding term.   Each of said renewal terms shall be upon the same agreements, terms, covenants and conditions, including rent, as are provided for herein for the intial term (unless changed or modified by written mutual agreement).   Any termination of this Lease shall terminate any right of renewal hereunder.

SECTION 20.02.   In the event Tenant fails to exercise any of the foregoing renewal options within the time limits above stated, Landlord shall, at least twenty (20) days before such time expires, give written notice thereof to Tenant, and if Landlord fails to do so, the time so limited for the exercise of Tenant's option shall be deemed extended for twenty (20) days after Landlord shall later give such notice.

20

ARTICLE 21

Arbitration

SECTION 21.01. In any case in which it is expressly provided by the provisions of this Lease, and only in such cases, that any matter shall be determined by arbitration, such matter shall be settled by arbitration as follows:

The same shall be settled and determined by arbitration in accordance with the rules then obtaining and before the American Arbitration Association in the City of New York. A judgment so awarded or rendered on such arbitration shall be conclusive and binding upon the parties, successors and assigns, and may be rendered as a final judgment in any court having jurisdiction thereof.

Notwithstanding the foregoing, the Landlord reserves the right to have every dispute of whatsoever nature which may arise out of or in connection with this Lease, the breach, making or interpretation thereof, not expressly provided to be subject to arbitration, to be determined by arbitration as aforesaid, and upon Landlord exercising its option, Tenant agrees to and shall submit to such arbitration. In the event that Tenant fails to submit to arbitration, Tenant shall be deemed in default under this Lease, and Landlord may proceed to terminate this Lease upon five (5) days' written notice to the Tenant to such effect, and at the end of said five (5) day period, this Lease shall be deemed terminated and at an end, and all right of occupancy hereunder on the part of Tenant shall cease and terminate with the same force and effect as though the term originally reserved herein had expired.

## ARTICLE 22

### Mortgages of the Fee

SECTION 22.01.  This Lease is subject and subordinate to any mortgage or mortgages of the fee of the Demised Premises which Landlord may obtain, providing:

(a)  Such mortgage or mortgages shall contain provisions providing in substance that so long as Tenant continues to pay the rent and observe and comply with the other terms, covenants and conditions in this Lease reserved and shall not be in default under this Lease, the mortgagee shall not abrogate or diminish any rights of tenants under this Lease, nor disturb Tenant's right to possession and use and enjoyment of the Demised Premises in any foreclosure proceeding or in the exercise by such mortgagee of any other of its rights under such mortgage.

(b)  All cost and expense in connection with the making or placement of said mortgage or mortgages shall be borne exclusively by the Landlord.

The proceeds of said mortgage or mortgages shall be and remain the property of Landlord.  The Tenant hereby covenants to execute, acknowledge and deliver all necessary or convenient documents to evidence same, and to evidence the subordination of the Tenant's interest in this leasehold to such mortgage or mortgages.

All improvements, equipment, machinery, fixtures, furniture, furnishings, appurtenances and other property of the Tenant installed or placed on or in the Demised Premises at any time prior to or during the Term of this Lease are and shall be immediately subject and subordinate to any mortgage to which this Lease is or shall be subject and subordinate.

22a

SECTION 22.02.  The subordination of this Lease to a mortgage or mortgages of the fee of the Demised Premises provided for in this Lease shall be automatic and self-operating and no separate instrument of subordination shall be necessary thereto.  However, without limiting such without expense to Tenant, automatic and self-operative subordinations, Tenant shall/ on demand, at any time or times execute, acknowledge and deliver to Landlord, without any by Tenant, charge to Landlord/ any and all instruments that may be necessary or convenient to subordinate this Lease, and all rights hereunder to the lien of any such mortgage or mortgages and each renewal, modification, spreading, consolidation, replacement or extension thereof, and if Tenant shall fail at any time to do so, the Landlord is hereby authorized to execute, acknowledge and deliver same as the attorney-in-fact of Tenant in Tenant's name, place and stead, which authority is hereby made irrevocable during the Term of this Lease and any renewals thereof.

## ARTICLE 23

### Compliance with Fee Mortgage

SECTION 23.01. Tenant agrees that it will perform all duties and obligations which the mortgagor under any mortgage now or hereafter a lien upon the Demised Premises and to which this Lease is or may be subject and subordinate, may be required by the terms thereof to perform, and Tenant agrees to satisfy the aforesaid mortgage obligations at or prior to ten (10) days before the last day allowed to the mortgagor under the terms of any such mortgage to perform such duty or obligation without suffering the risk of foreclosure or the exercise of any other right or remedy by the mortgagee. Tenant further agrees that Tenant will not do, suffer or permit to be done any act, condition, status, happening or occurrence which may be prohibited under the terms of any such present or future mortgage or mortgages to which this Lease is or may be subject and subordinate except that, notwithstanding anything hereinabove stated, Tenant shall not be required to pay or to see to the payment of any principal or interest that may be reserved under the terms of any such mortgage or mortgages except as may be otherwise specifically required by other provisions of this Lease.

SECTION 23.02. In the event that Tenant defaults under, or fails to carry out and abide by, the foregoing duties and obligations, Landlord, at its option, shall have the right forthwith after the time within which Tenant should have performed and carried out the same, to do and carry out and perform the obligation which Tenant should have done, performed or carried out, and, if necessary, to enter the premises for the purpose of doing so, and Landlord may enter or break into the premises, using as much force as may be necessary; and the costs and expenses incurred by Landlord in doing, carrying out and performing the said duties and

23.

obligations shall become due and payable as additional rent hereunder, to-
gether with interest at the rate of 6 per cent per annum.

## ARTICLE 24

### Surrender at End of Term

SECTION 24.01. The Tenant shall surrender and deliver up the Buildings and premises and the sidewalk, vaults and streets in front of or appurtenant to said premises, and also all pipes, plumbing, electric wires, boilers and steam heating plant, and all machinery, together with all furniture, furnishings, fixtures and equipment, at the expiration of the Term of this Lease or sooner termination of the term, in good repair and condition, broom clean and free of Tenant's property, to which end the Tenant herein specifically contracts, under penalty of forfeiture, that the Tenant will at all times not only keep any Building on the said Demised Premises, sidewalks, vaults and streets, together with all furniture, furnishings, fixtures and equipment in good repair, inside and outside, but will from time to time, if necessary, renew the same to the end that delivery of the aforesaid Building and said sidewalk, vault and streets and all pipes, plumbing, electric wires boilers and steam heating plant, elevators and machinery, together with all furniture, furnishings, fixtures and equipment may be at the expiration of this Lease in good repair and condition, reasonable wear and tear thereto excepted.

24

## ARTICLE 25

### Quiet Enjoyment

SECTION 25.01. The Landlord covenants that if and so·long as Tenant keeps and performs each and every covenant, agreement, term, provision and condition herein contained on the part and on behalf of Tenant to be kept and performed, Tenant shall quietly enjoy the Demised Premises without hindrance or molestation by Landlord, subject to covenants, agreements, terms, provisions and conditions of this Lease.

25

## ARTICLE 26

### Waiver of Trial by Jury

SECTION 26.01. The parties hereto waive a trial by jury of any and all issues arising in any action or proceeding between them or their successors or assigns under or connected with this Lease or any of its provisions or any negotiations therewith or the Tenant's use or occupation of the Demised Premises.

## ARTICLE 27

### Notices

SECTION 27.01.  Any notice or demand required to be given by the terms and provisions of this Lease or by any law or governmental regulation either by Landlord to Tenant or by Tenant to Landlord shall be in writing.  Unless otherwise required by such law or regulation, except as may be specifically provided in any section of this Lease to be otherwise given, such notice or demand shall be given and shall be deemed to have been served and given by Landlord and received by Tenant, when Landlord shall have deposited such notice or demand by registered mail, return receipt requested, enclosed in a securely closed postpaid wrapper in a United States Government General or Branch Post Office, addressed to Tenant at 777 Northern Boulevard, Great Neck, New York.  Such notice or demand shall be given and shall be deemed to have been served and given by Tenant and received by Landlord when Tenant shall have deposited such notice or demand by registered mail, return receipt requested, enclosed in a securely closed postpaid wrapper in a United States Government General or Branch Post Office, addressed to Landlord at 9 Lake Road, Lake Success, New York.  Either party may by notice as aforesaid, designate a different address or addresses for notice or demands to it.

SECTION 27.02.  In the event more than one person, firm or corporation shall, during the Term of this Lease become the tenants of said leased premises (including the present Tenant), notice by Landlord to any one of such tenants shall be notice or payment to all, and Landlord may act on notice from any one of such tenants of said premises and, in case of conflicting notices, may recognize any one of them as authority and disregard the others; provided, however, that Landlord may treat any notice in

27a

the case of several owners as of no effect unless signed by all.

## ARTICLE 28

### Covenants Binding

SECTION 28.01.  The covenants, agreements, terms, provisions and conditions of this Lease shall be binding upon and inure to the benefit of the heirs, administrators and assigns of the Landlord, except as otherwise provided herein and the successors and assigns of the Tenant.

## ARTICLE 29

### Short Form Lease

SECTION 29.01.  In the event that the Landlord and Tenant shall execute and deliver a short form of lease for the purpose of recording, said short form of lease shall not in any circumstances be deemed to modify or change any of the provisions of this Lease, which shall in all instances prevail.

29

## ARTICLE 30

### Broker

SECTION 30.01. The parties agree that no broker brought about this transaction, and Tenant hereby represents to Landlord that no broker introduced him to the parties or property involved herein.

IN WITNESS WHEREOF, the Landlord and Tenant have respec-

tively signed and sealed these presents the day and year first above written.

IN PRESENCE OF:

_____     Martin Bruce _____     Landlord

_____     Sylvia Bruce _____     Landlord

PATRON PLAZA ASSOCIATES

_____     Robert Siegel _____     Tenant

_____     Bernard L. Nussbaum _____     Tenant

STATE OF NORTH CAROLINA )
                         ) ss.:
COUNTY OF                )

On this 1st day of February, 1966, before me personally ap-

peared ROBERT SIEGEL and BERNARD L. NUSSINOW, to me known and

known to me to be the individuals described in and who executed the

foregoing Lease, and they thereupon each duly acknowledged to me that

they executed the same.

*Gwen B. Sparrow*
Notary Public
My Commission Expires: May 23, 1967

ALL that certain plot, piece or parcel of land, with the buildings

and improvements thereon erected, situate, lying and being in the City of

Asheville, County of Buncombe, North Carolina:

TRACT ONE:

BEGINNING at a concrete monument in the northern margin of the right-of-way line of dual U. S. Highways #19-23, known as Patton Avenue, at the southeast corner of the lands of Wachovia Bank and Trust Company and running thence with the line of said Bank, North 12° 52' West 227 feet to a concrete monument; thence South 89° 45' West 119.3 feet to a concrete monument in the right-of-way line of Louisiana Avenue; thence North 36° 57' West 221.5 feet to an iron in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, North 28° 51' West 63.5 feet to an iron pipe; the Joyner corner; thence with Joyner, South 81° 17' East 234.57 feet to an iron pipe; thence still with Joyner, North 3° 7' East 161.69 feet to a concrete monument, the Joyner northeast corner; thence with Joyner, North 78° 27' West 353.92 feet to an iron in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, North 19° 26' West 87.85 feet; thence still with said Avenue, North 5° 22' West 100 feet; thence South 86° 10' 30" East 114.09 feet to an iron pipe; thence North 7° 20' East 52.86 feet, corner with Hargus; thence with Hargus, South 76° 10' 30" East 124.63 feet; thence North 7° 34' 30" East 93.99 feet; thence North 5° 50' East 181.17 feet; thence South 70° 45'. East 312 feet to an iron; thence North 37° 24' East 148.93 feet to an iron; thence South 70° 11' East 573.02 feet to an iron in Hawkins Lane; thence with Hawkins Lane, South 27° 56' West 386.4 feet to a concrete monument; thence North 82° 15' West 113.79 feet to an iron; thence South 32° 53' 30" West 193.5 feet to a concrete monument; thence South 23° 27' West 165.86 feet to a concrete monument; thence South 85° 57' 30" East 17.59 feet to a dogwood tree; thence South 20° 50' 30" East 290.35 feet to an existing spike in the northern margin of Patton Avenue; thence with the northern margin of Patton Avenue, South 85° 26' 30" West 350.45 feet to a concrete monument; thence still with the northern margin of Patton Avenue, South 87° 34' West 25 feet to the point of Beginning. Subject, however, to right of way for the widening of Hawkins Lane and the right of way for the widening of Louisiana Avenue, and together with and subject to rights of ingress, egress, and regress, in, over and through that tract of land fronting 50 feet on Patton Avenue and running North 12° 59' West 35 feet, the center line of which is the first call in the foregoing description.

Schedule A

TRACT TWO:

BEGINNING at an iron pipe in the eastern margin of Louisiana Avenue, Wells' northwest corner, and running thence with the Wells' line, South 81° 17' East 234.57 feet to an iron in the line of the land of G-K, Inc.; thence with said line, North 3° 7' East 161.69 feet to a monument at a 24-inch pin, corner with Shelton; thence with the Shelton line, North 78° 27' West 353.92 feet to an iron pipe in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue, South 19° 26' East 12.15 feet and South 28° 51' East 211.64 feet to the point of Beginning.