# EXHIBIT 12

## LEASE

DATED:            DECEMBER  23,        1975

DATED:            DECEMBER  23,        1975

Conditional Limitations:
  Other Defaults                         24                27

Remedies                                 25                28

No Representations by Landlord            26                30

No Waiver                                27                30

End of Term                              28                30

Quiet Enjoyment                          29                30

## TABLE OF CONTENTS

| Subject | Article | Page |
|---|---|---|
| Demise | 1 | 1 |
| Term:  Initial and Renewal Terms | 2 | 2 |
| Use/Purposes | 3 | 2 |
| Rent and Additional Rent | 4 | 3 |
| Taxes and Other Charges | 5 | 4 |
| Assignment | 6 | 7 |
| Sublet | 6 | 7 |
| Leasehold Mortgage | 8 | 7 |
| Demolition and Alterations | 9 | 9 |
| Repairs | 10 | 11 |
| Liens and Removal | 11 | 12 |
| Requirements of Public Auth-<br>orities and of Insurance<br>Underwriters and Policies | 12 | 12 |
| Insurance | 13 | 14 |
| Destruction | 14 | 17 |
| Condemnation | 15 | 20 |
| Subordination and Refinancing | 16 | 22 |
| Landlord Not Liable for Injury<br>or Damage:  Indemnity | 17 | 24 |
| No Rent Abatement | 18 | 24 |
| Access to Premises:  Shoring | 19 | 24 |
| Vaults, Stoop, Etc. | 20 | 25 |
| No Unlawful Occupancy | 21 | 25 |
| Machines and Weights | 22 | 26 |
| Bankruptcy-Insolvency | 23 | 26 |
| Conditional Limitations:<br>Other Defaults | 24 | 27 |
| Remedies | 25 | 28 |
| No Representations by Landlord | 26 | 30 |
| No Waiver | 27 | 30 |
| End of Term | 28 | 30 |
| Quiet Enjoyment | 29 | 30 |

TABLE OF CONTENTS (Cont'd)

| | | |
|---|---|---|
| Arbitration | 30 | 31 |
| Tenant's Certificate | 31 | 31 |
| Landlord's Certificate | 32 | 31 |
| Short Form Lease | 33 | 31 |
| Landlord's Performance of Mortgages | 34 | 31 |
| Tenant's Compliances with Mortgages | 35 | 32 |
| Rights of Leasehold Mortgagee | 36 | 32 |
| Payment of Rent | 37 | 33 |
| Law | 38 | 34 |
| Notices | 39 | 34 |
| Unavoidable Delays | 40 | 34 |
| Consent Approval or Satisfaction | 41 | 34 |
| Advanced Rentals: Subtenancies | 42 | 35 |
| Undisclosed Principal | 43 | 35 |
| Certain Definitions | 44 | 35 |
| Marginal Notes | 45 | 36 |
| Variations in Pronouns | 46 | 36 |
| Waiver of Trial by Jury | 47 | 36 |
| Entire Agreement | 48 | 36 |
| Successors and Assigns | 49 | 36 |
| Saving Clause | 50 | 36 |
| Reciprocal Rights of First Refusal | 51 | 36 |
| Incorporation by Reference: Effect | 52 | 37 |

AGREEMENT OF LEASE made on the 2 7 day of DECEMBER, 1975

between ASHEVILLE K-M ASSOCIATES (a North Carolina Limited

Partnership) c/o Paul Green, 501 Madison Avenue, New York,

New York (herein "Landlord") and NINETEENTH ASHEVILLE CORP.,

a North Carolina corporation of 1133 Avenue of the Americas,

19th Floor, New York, New York 10036 (herein "Tenant")


# W I T N E S S E T H :

## 1. DEMISE

1.1  Landlord hereby demises and leases to Tenant
and Tenant hereby hires and takes from Landlord the premises
described in Schedule 1.1 hereto upon the agreements, terms,
covenants and conditions hereinafter set forth.

The demise also includes:
            the leasehold
        (a)  All/ right, title and interest of the
Landlord, if any, in and to any land lying in the bed of any
street in front of said premises to the center line thereof.

        (b)  All attachments, fittings, electric wiring,
plumbing, and all other improvements and appurtenances belong-
ing to Landlord, which are affixed to the building and insep-
arable therefrom without substantial damage to the demised premises.

        (c)  The leases thereof and the rent and additional
rent due or to become due thereunder and all of Landlord's rights,
title and interest therein and thereto, and Landlord shall execute
and deliver, in recordable form, assignments of the foregoing.

    (All the property above described and buildings thereon,
or referred to, together with all replacements, additions, im-
provements, and betterments of said property belonging to Land-
lord, are herein collectively referred to as "demised premises".)

1.2  The foregoing demise and lease is subject to the
following:

        (a)  Encroachments of stoops, area, cellar
steps, trim and cornices, if any, upon any street or highway.

        (b)  Rights of subtenants now in possession and
the subleases and concession agreements now in existence, which
are specified in Schedule 1 2(b) hereto, all of the obligations
of Landlord thereunder being hereby assumed by Tenant, provided
that assignment thereof shall have been made to Tenant by Landlord.

(c) Rights, if any, required a utility company to maintain and operate lines, wires, cables, poles and distribution boxes in, over, under and upon the demised premises.

(d) Violations, orders, notices or requirements of any Federal, State or Municipal agency now or hereafter having jurisdiction.

(e) The fact that there is not or may not be any right to maintain any vault, vaulted area, coal chute, fuel oil pipe, water lines, motor room or sidewalk elevator, in or under any street or sidewalk on which said premises abut and the right of governmental authorities to require the removal of any vaults, areas, coal chutes or other projections which may be beyond the building lines.

(f) Lien of any unpaid taxes, assessments, water rates and sewer rentals.

(g) All covenants, restrictions, easements and agreements now of record affecting the demised premises.

(h) The Mortgage (Deed of Trust) specified in Schedule 1.2(h) hereto.

(i) Items and matters set forth in Schedule 1.2(i) hereto.

## 2: TERM: INITIAL AND RENEWAL TERMS

2.1. TO HAVE AND TO HOLD the demised premises from the date hereof for the term (initial term) specified in Schedule 2.1 hereto, unless sooner terminated as herein provided and for such additional terms (renewal terms) specified in Schedule 2.2 hereto, as to which the Tenant shall exercise its option and right of renewal.

2.2 Tenant is hereby given and granted the irrevocable and absolute right to renew and extend this lease for three (3) successive renewal terms of 23 years each, the first renewal term to commence on February 1, 1996.

2.3 Unless otherwise required by the text of a provision of this lease, the word "term" shall mean the aggregate of the initial term and and all renewal terms for which Tenant shall extend this lease.

2.

2.4  The initial term and the renewal terms shall each terminate as of the last day of the month thereof.


3.  USE/PURPOSES

Tenant shall use and occupy the whole or any part of the demised premises, throughout the term hereof for any commercial or business use or any other use which may be lawfully permitted.


(THIS SPACE LEFT BLANK INTENTIONALLY)


-2a-

## 4.   RENT AND ADDITIONAL RENT

4.1   Tenant shall pay to Landlord without notice or demand net rent, annual rent, annual basic rent and additional annual basic rent (hereinafter called "the net rent") in lawful money of the United States legally payable in discharge of public and private debts, during the term, without any setoff or deduction whatsoever as follows:

(a)   The Annual Basic Rent specified in Schedule 4.1(a) payable in equal monthly installments in advance, commencing with the date hereof and on the first day of each month and thereafter until the expiration of the term of this Lease, If the commencement of the term of this Lease shall not be the first day of a calendar month, the Annual Basic Rent shall be prorated over the balance of the then calendar month. The rent payable under this subparagraph (a) is herein referred to as the Annual Basic Rent.

*   and all the rents and all other charges and obligations payable under the Ground Lease as set forth in Schedule 4.1(a) and at the time specified in said Schedule.

If there shall be no existing first fee mortgage the Tenant shall not be required to pay any additional Rent pursuant to this subdivision 4.1(b), except as is set forth below in Article designated 16.3.

Said additional annual basic rent shall be paid in advance on the 25th day of the month preceding each month in which a payment of debt of service on the mortgage to which this Lease is subordinate is due and payable, or fifteen (15) days prior to the expiration of the grace period of such payment of the debt service installment, whichever is the first to occur.

(bb)   Tenant shall also pay further additional Annual Basic Rent as provided in Schedule 4.1(bb) hereto.

(c)   If by the terms of any mortgage to which this Lease is subordinate, Landlord is required to deposit with the

—3—

holder thereof any real property taxes, Tenant shall pay such
amounts as are required by such mortgagee to Landlord as a part
of its regular periodic installments of Additional Annual
Basic Rent.  The obligations of Landlord in respect to such pay-
ment including, but not limited to, the due remittance of the
same to such mortgagee shall be the same as for the payment of
debt service on any mortgage to which this Lease is subordinate.

If, however, the holder of any mortgage to which
this Lease is subordinate does not require the periodic deposit
of money to assure the payment of real property taxes when due,
Tenant shall deposit monthly in a tax escrow account at the
Israel Discount Bank Ltd., 511 Fifth Avenue, New York, New York
or such other bank in the City of New York as may be agreed to
between Landlord and Tenant a sum equal to 1/12th of the advalorem
taxes assessed against the demised premises by the proper tax
authorities having jurisdiction.  Such deposits shall be accumu-
lated to be used solely for the purpose of paying each install-
ment of such taxes as the same become due and payable.  Such de-
posits by Tenant shall be made concurrently with the payment of
the Additional Annual Basic Rent and shall be deemed to be a
part thereof.  Such deposit by Tenant shall be evidenced by a
duplicate deposit slip mailed to Landlord.  Payment of real pro-
perty taxes on the demised premises shall be made by Tenant from
such tax escrow account prior to the same becoming delinquent.
If the amount in such tax escrow account is not sufficient to pay
the tax then due, Tenant shall promptly deposit sufficient funds
in such account to assure the payment without penalty or interest
of the tax then due.  Such deposit shall be deemed additional
rent.

In the event that the amount of such taxes assessed or
imposed against the demised premises has not been definitely
ascertained at the time when any such deposit should be made,
Tenant shall make the deposits based upon the amount of such
taxes as assessed or imposed against the demised premises
for the preceding year subject to adjustment as and when the
amount of such taxes is ascertained.

(THIS SPACE LEFT BLANK INTENTIONALLY)

(d)  Tenant shall pay all rent and additional rent as provided.

(e)  All taxes, costs and expenses which Tenant assumes or agrees to pay hereunder shall be deemed to be additional rent.  In the event of non-payment thereof Landlord shall have all the rights and remedies provided for in the case of non-payment of rent or of a breach of condition.

(f)  If

(i)  Tenant shall default in making any payment required hereby, or

(ii)  Tenant shall default in complying with any other provision hereof and such default in complying shall continue for a period of thirty (30) days after notice and Tenant shall not in good faith have commenced within such thirty (30) days to correct such default and diligently proceed therewith, or,

(iii)  Any such default shall consist of or constitute a failure to comply with any provision of any institutional mortgage to which this Lease is subject and subordinate and if such failure shall continue for the applicable period of grace provided for by any such instrument,

then and in any such event Landlord shall have the right at its option, in addition to other rights it may have under this Lease and otherwise, to make any such payment or comply with any such provision hereof.

The amounts so expended by Landlord (other than payments of principal or interest on such mortgage), if the direct payment thereof is the obligation of Tenant, with legal interest thereon from the date of expenditure, shall become due and payable by Tenant after five (5) days notice as additional rent with the next succeeding installment of net rent which shall become due after such expenditure and notice by Landlord.

Landlord shall have the right to enter the demised premises for the purpose of correcting or remedying any such default and to remain therein until the same shall have been corrected or remedied; but any such expenditure by Landlord shall not be deemed to waive or release Tenant's default, or the right of Landlord to take such action as may otherwise be permissible as in the case of default in the payment of net rent.

## 5.  TAXES AND OTHER CHARGES

5.1 (a)  Tenant shall, without demand, as additional rent, pay and discharge punctually as and when the same shall become due and payable without penalty or interest

(i)  All taxes and other charges which are payable under the terms and provisions of this Lease, and

(ii)  All taxes, assessments, water rents, rates and charges, sewer rents, and other governmental impositions and charges of every kind and nature whatsoever, foreseen and unforeseen, extra-ordinary as well as ordinary, and each and every installment thereof, which shall or may during the term be laid,

-4-

charged, levied, assessed or imposed on or become a lien upon
or arise in connection with the use, occupancy or possession
of, or grow due or payable out of or for or by reason of the
demised premises or any part thereof, or any buildings, ap-
purtenances, furniture and furnishings or equipment now or
hereafter erected or placed thereon or therein or any part
thereof, or the sidewalks or

(THIS SPACE LEFT BLANK INTENTIONALLY)

-4a-

streets in front of or adjoining the demised premises, and
all taxes laid, levied, assessed or imposed in lieu of or
in addition to the foregoing, together with all interest
and penalties thereon, under or by virtue of all present
or future laws, ordinances, requirements, orders, directions,
rules or regulations of the federal, state, county and city
governments and of all other governmental authorities what-
soever, and

(iii)  All water rents, rates and charges,
sewer rents, and charges for water, steam, heat, gas, hot water,
electricity, light and power, and other service or services,
furnished to the demised premises or the occupants thereof
during the term, and

(iv)  All fees and charges of public and
governmental authorities for construction, maintenance,
occupation or use during the term of any vault, passage-
way or space in, over or under any sidewalk or street on or
adjacent to the demised premises, or for construction, maint-
enance or use during the term of any part of any building
covered hereby within the limits of any street.

(b)  To the extent that same may be permitted
by law and by any mortgage to which this lease may be subject
and subordinate and subject to any conditions set forth in any
such mortgage, Tenant shall have the right to ap ly for the
conversion of any assessment for local improvements to make
the same payable in annual or other periodic installments,
but not longer than over a ten year period, and upon such
conversion Tenant shall pay and discharge punctually only such
of said installments as shall become due and payable during
the term of this Lease.

(c)  Tenant shall be deemed to have complied
with the covenants of this Paragraph 5.1, if payment of such
rents, taxes, assessments, water rents, rates and charges,
sewer rents, and other governmental impositions and charges,
shall have been made within any grace period allowed by law
or by the governmental authority imposing the same during
which payment is permitted without penalty or interest, and
before the same shall become both a lien upon the demised
premises and delinquent, but in any event before any impairment
of the same shall constitute a default under any mortgage to
which this Lease is subordinate.  Tenant shall within thirty
(30) days after the time above provided for the payment by
Tenant thereof produce and exhibit to Landlord satisfactory
evidence of such payment.

5.2  All such rents, taxes, water rents, rates and
charges, sewer rents, and other governmental impositions and
charges which shall be so laid, levied, assessed or imposed,
and the current installment of any assessment which has been
converted into periodic installments under the provisions of
Paragraph 5.1(b) above, for each fiscal period in which the
term commences and terminates shall be apportioned pro-rata be-
tween Landlord and Tenant in accordance with the respective portions
of each such fiscal period during which the term shall be in
effect.  If during the term Tenant shall have paid in full any
assessment for local improvements without conversion of the same
into periodic installments, Landlord shall at the expiration of
the term reimburse to Tenant a sum equal to the excess of the
amount so paid by Tenant over and above a sum bearing the same
proportion to the amount so paid by Tenant, net of any refund
actually received by Tenant under Paragraph 5.3 as the period
of the term following the date of entry of said assessment bears

- 5 -

amount so paid by Tenant over and above a sum bearing the same
proportion to the amount so paid by Tenant, net of any refund
actually received by Tenant under Paragraph 5.3 as the period
of the term following the date of entry of said assessment bears

(THIS SPACE LEFT BLANK INTENTIONALLY)

to ten years.  In the event of any refund thereafter received
under Paragraph 5.3 the same shall be appropriately adjusted
between Landlord and Tenant.

5.3  Tenant shall have the right to contest or review
by legal proceedings, or in such other manner as it may deem
suitable (which, if instituted, Tenant shall conduct promptly
at its own expense, free of any expense to Landlord, and, if
necessary, in the name of Landlord).  The Landlord agrees to
sign any necessary documents required to make any such applica-
tion for review or contest of any tax, assessment, water rent,
rate or charge, sewer rent, or other governmental imposition
or charge aforementioned.

Before instituting any such proceedings, if the
contested items shall not have been paid, Tenant shall furnish
to Landlord, or to the holder of any mortgage to which this
Lease is subordinate, a surety company bond, a cash deposit,
or other security satisfactory to Landlord, sufficient to cover
the amount of the contested items, with interest and penalties
for the period which such proceedings may reasonably be ex-
pected to take, securing payment of such contested items, interest
and penalties, and all costs in connection therewith.  Not-
withstanding the furnishing of any such bond, deposit or security,
Tenant shall promptly pay all such items,if at any time the de-
mised premises or any part thereof shall be in danger of being
sold, forfeited or lost as the result of Tenant's failure to comply
or Landlord shall be subjected to criminal exposure or liability
for such non-performance or non-payment.  The legal proceedings
herein referred to shall include appropriate proceedings for
review of tax assessments and appeals from orders therein and
appeals from any judgments, decrees or orders, but all such
proceedings shall be begun as soon as reasonably possible after
the imposition or assessment of any contested items but shall
be prosecuted to final adjudication with reasonable dispatch.
In the event of any reduction, cancellation or discharge, Tenant
shall pay the amount finally levied or assessed against the
demised premises or adjudicated to be due and payable on any
such contested items and if there shall be any refund with
respect thereto Tenant shall be entitled to the same, subject
to apportionment or adjustment as provided in Paragraph 5.2.

5.4  It is the intention of the parties that the net rent
payable hereunder shall be net to Landlord so that this Lease
shall yield net to Landlord the net rent specified herein during
the term of this Lease, and that all costs, expenses and obliga-
tions of every kind and nature whatsoever relating to the demised
premises (except the taxes of Landlord, as provided in Paragraph
5.6) shall be paid by Tenant.

5.5  Tenant, during the term hereof, covenants and agrees
to pay any and all taxes which are or may become due and payable
on account of the value of the personal property located on the
demised premises and owned by the Landlord and used in the opera-
tion or maintenance of the demised premises under and pursuant to
the provisions of any law or regulation pertaining thereto.

5.6   If the state or any local government agency or
district in which the demised premises are situated shall impose
a tax upon the gross rent receipts, the Tenant shall pay any
and all such taxes which it hereby covenants and agrees to do.
Tenant shall, however, be entitled to receive and retain
any reimbursement by a sub-lessee of the demised premises
for such gross receipts rent tax paid by the sub-lessee to
the Tenant or directly to the taxing authority imposing such
tax, and such reimbursement or credit shall not be considered
overages or percentages.

5.7   Nothing herein contained shall require or be con-
strued to require Tenant to pay any inheritance, estate, suc-
cession, transfer, gift, franchise, income, profit or excess
profit, capital stock, capital levy, corporate or unincorporated
business tax or other similar tax, that is or may be imposed upon
Landlord, or upon the rent payable by Tenant, unless such taxes shall
be levied instead and in lieu of real estate taxes upon the real
property hereby demised, but then only to the extent the same
shall relieve or reduce Tenant's obligations to pay such real
estate taxes.

5.8   Tenant shall pay as additional rent as and when the

(THIS SPACE LEFT BLANK INTENTIONALLY)

same shall become due and payable all charges of any kind
or nature applicable to easements and rights of way per-
taining to the demised premises or their use and promptly
upon payment, Tenant shall produce and exhibit to Landlord
satisfactory evidence of such payments.

5.9 Any proof of payment required to be exhibited
to the Landlord shall at the option of the Landlord also be
exhibited by the Tenant to the holder of any mortgage to
which this lease is subordinate.

## 6. ASSIGNMENT

6.1 Tenant shall not have the right to assign this lease
for a period of five (5) years from date hereof.

For the purposes of this Paragraph, an assignment
to the stockholders of the tenant or members of their immediate
family shall not be deemed to be an assignment.

6.2 (a) Thereafter, Tenant shall have the right to assign
this lease, provided it complies with the following conditions:

(i) At the time of making such assignment, there
is no existing and unremedied default on the part of Tenant
under any of the agreements, terms, covenants and conditions
of this Lease on the part of Tenant to be performed, as to
which Landlord shall have served notice upon Tenant, where
required by this Lease.

(ii) Such assignment shall be in writing, duly exe-
cuted and acknowledged, and in proper form for recording.

(iii) Assignment shall assume in writing all of
the terms, covenants and conditions of this Lease to be
performed by Tenant.

(iv) Tenant shall have given written notice to
Landlord of the making of such assignment and the effective date
thereof at least ten (10) days prior to the execution and
delivery of such assignment and shall record the same within
ten (10) days after the execution and delivery thereof.

(v) A duplicate original of such assignment and
the assumption by the assignee shall be served on Landlord
within ten (10) days after the date of recordation of the
assignment which shall include the date of the recording of
such Assignment.

(b) In the event, Tenant (which term shall also in-
clude any of successive assignees succeeding to the original
Tenant as well as a leasehold mortgagee acquiring the Lease by
foreclosure or assignment in lieu thereof and the successors
in interest of such mortgagee) assigns this Lease in accordance
with the terms of this Article, the assignor shall thereafter
be relieved of any further liability hereunder, except for such
obligations which shall have accrued to the date of the execution
of said assumption agreement by the assignee.

## 7. SUBLET

7.1 Tenant shall have the right to sublet the whole or
portions of the demised premises at any time and from time to

-7-

time without Landlord's consent, provided that all subleases
except those in existence at the time of the execution of this
Lease shall be subordinated to this Lease and shall contain
provisions effectuating such subordination and provided further
that each sublease shall contain a provision that at the
option of the Landlord such subtenant thereunder may be
required to attorn directly to the Landlord. No sublease
shall provide for prepayment of rent in excess of three (3)
months except with the prior consent of the Landlord which
shall not be unreasonably withheld.

7.2   Notwithstanding the foregoing the Tenant shall not
modify, alter, amend or (except for non-payment or other
default by a subtenant) terminate any sublease now or
hereafter existing or any extension thereof without the prior
written consent of the Landlord which shall not be unreasonably
withheld.


THERE IS NO ARTICLE 8.


-8-

## 9. DEMOLITION AND ALTERATIONS

(a)  Subject to the limitation that no substantial portion of any buildings on the demised premises shall be demolished or removed by Tenant without the prior consent in writing of Landlord and, if necessary, of any ground lessor and fee mortgagees, Tenant may at any time or times during the term, and at its own cost and expense, make any alterations, rebuildings, replacements, changes, additions and improvements in and to the demised premises and to the buildings thereon, provided:

(i)  that the same shall be performed in a first-class workmanlike manner, and shall not weaken or impair the structural strength, or lessen the value, of such buildings as shall be on the demised premises at the time, or change the purposes for which such buildings may be used;

(ii)  that the same shall be made according to plans and specifications therefor, which, provided the estimated cost thereof is more than $15,000, shall be first submitted to and approved in writing by Landlord;

(iii)  that before the commencement of any such work such plans and specifications shall be filed and approved by all governmental departments or authorities having jurisdiction, and any public utility company having an interest therein, and all such work shall be done subject to and in accordance with the requirements of law and local regulations, of all governmental departments or authorities having jurisdiction and of such public utility company;

(iv)  that before the commencement of any such work Tenant shall pay the amount of any increase in premiums on insurance policies provided for under Article 11 on account of endorsements to be made thereon covering the risk during the course of such work, and Tenant shall in addition, if the estimated cost of work shall exceed $15,000, at Tenant's expense, give to Landlord a surety company performance bond in a company acceptable to Landlord, in an amount equal to the estimated cost of such work or in lieu thereof a cash deposit for the estimated cost of such work guaranteeing the completion of such work according to said plans and specifications therefor and free of mechanics and materialmens liens; and

(v)  that the Tenant will include in any contract or agreement made by it for the rendition to it in respect of the demised premises of labor or services or the furnishing of material or supplies which are subject to mechanics or materialmens liens in connection with any such alterations, rebuilding, replacements, change, addition or improvement for which the aggregate expenditure will be more

than $10,000, a waiver to the extent permitted by
local law of all right of lien which a party permit-
ted to lien under the mechanics or materialmens lien
law of the state having jurisdiction may have against
the demised premises or a written waiver independent of
the contract. The tenant shall provide a payment bond
to the extent that the rights to file mechanics and
materialmens liens have not been waived by contractors,
subcontractors or materialmen.

(b)  All buildings, alterations, rebuildings, replace-
ments, changes, additions, improvements, equipment and appur-
tenances on or in the demised premises at the commencement
of the term, and which may be erected, installed or affixed
on or in the demised premises during the term, are and shall
be deemed to be and immediately become part of the realty
and the sole and absolute property of Landlord and shall be
deemed to be part of the demised premises, except that all
movable trade fixtures (any items installed by any subten-
ant which may be removed without material damage to the
realty) installed by Tenant shall be and remain the property
of Tenant.

(c)  To the extent permitted by any subleases of any
portion of the demised premises at the time of the execution
of this Lease, alterations, structural or otherwise, may
be made by the Tenant named therein or its assigns.

(THIS SPACE LEFT BLANK INTENTIONALLY).

-9a-

(d)   In connection with any work done by the Tenant or subtenant as permitted by this Article 9:

(i)   Tenant shall make the full payment of the entire cost and all charges of and for such alteration, change or addition free and clear of and from any and all mechanics' or other liens, charges or claims of any kind against Landlord or said demised premises;

(ii)   Tenant, in addition to the general liability insurance to be carried by Tenant during the term hereof for the protection of Landlord as in this Lease elsewhere provided for, shall and will also take out and carry, and provide Landlord with, at Tenat's own cost and expense, additional liability insurance in the name and for the further protection of Landlord (or as directed by Landlord), in a responsible insurance company authorized to do business in the States of Michigan and New York indemnifying and holding Landlord harmless from and against liability for damages in an amount not less than One Million ($1,000,000.) Dollars on account of any accident resulting in injuries to or in the death of one person, and not less than Two Million ($2,000,000.) Dollars on account of any accident resulting in injury to or in the death of more than one person, and Two Hundred Fifty Thousand ($250,000.) Dollars on account of damage to property in any wise arising out of or from such alteration, change or addition, the policy or policies for such additional liability insurance, or duplicates or certificates thereof together with receipts or other vouchers showing the payment of the premiums therefor, to be delivered to Landlord and held by Landlord.  Wherever the Tenant is required to furnish liability insurance to the Landlord such insurance shall also be for personal injury.  Tenant shall be deemed to have complied with the requirements for such additional liability insurance if it shall deliver to Landlord certificates of insurance or riders, adding the hazards herein provided for to the liability policies furnished under Article 11 (a) (ii); and Tenant or the contractor employed by Tenant for such alteration, change or addition shall and will take out and carry, at their own cost and expense, full workmen's compensation insurance in respect of any work upon such alteration, change or addition, as well as any other insurance as may then be required by law, and copies of any policies for such workmen's compensation and other insurance shall be delivered to Landlord on demand; and

(iii)   In case of the provisions of any fire,
liability or other insurance policy or policies then
covering said demised premises, or any part thereof,
any consent to such alteration, change or addition by
said insurance company or companies issuing such policy
or policies shall be required to continue and keep such
policy or policies in full force and effect, Tenant
shall obtain such consents and pay any additional pre-
miums or charges therefor that may be imposed by said
insurance company or companies; and, if necessary under
the terms of any mortgage to which this lease is subor-
dinate.

(c)   Tenant expressly agrees that the work upon
any such alteration, change or addition shall and will be
fully completed, within a reasonable time at Tenant's own
cost and expense after the foregoing conditions precedent
to the commencement thereof shall have been fully complied
with (delays by strikes, lockouts or other causes beyond
Tenant's control excepted), in a good and workmanlike man-
ner, substantially in accordance with said plans and speci-
fications and with any and all laws, statutes, orders and
requirements of any government or of any governmental au-
thority, bureau or department having jurisdiction, and with
any and all requirements of the responsible board of fire
insurance underwriters, or other body exercising similar
functions. Tenant expressly further agrees promptly to pay
any and all sums or amounts as and when the same become due
and payable for any and all work, labor and material fur-
nished upon or for any such alteration, change or addition,
and to keep Landlord and the demised premises free and clear
of and from any mechanics' or other liens, charges or claims
of any kind arising from such alteration, change or addition.

(d)   Any such alteration, change or addition shall
be deemed completed, when all work has been done in substan-
tial accordance with said approved plans and specifications
and all requirements as to cost have been complied with and
all certificates as are customarily obtained from any govern-
mental agency, department or bureau including without limita-
tion the responsible board of fire insurance underwriters or
other body exercising similar functions, having jurisdiction,
have been duly issued, provided said demised premises are
free and clear of and from any and all mechanics' and other
liens, claims, charges, governmental orders and violations
of any and all kinds, and when receipts or other evidence
reasonably satisfactory to Landlord showing final payments
to the builders and subcontractors have been exhibited to
Landlord and Landlord has been given an opportunity to rea-
sonably satisfy itself by inspection either personally or
through authorized representatives, that all of the forego-
ing requirements have been met and complied with.

(e)   Notwithstanding anything herein contained to
the contrary, Tenant shall have the right, at its own cost
and expense, at any time, and from time to time, to make
any alteration, change or addition of, in, or to said de-
mised premises, or any part thereof, without being required
to submit to Landlord any plans or specifications therefor,
provided the entire estimated cost of such alteration, change
or addition under any one operation shall not exceed the
sum of $15,000.00 and provided also that such alteration,
change or addition shall not substantially affect the type
of operation of the demised premises nor reduce the value
of said demised premises, nor decrease the number of stories
in or height of any building on said demised premises, and

-10-

provided further that such alteration, change or addition
shall, if necessary, be approved by the governmental or public
authorities, bureaus or departments now existing, or here-
after created, having jurisdiction in the premises, and pro-
vided further that Tenant shall and will secure the consent,
if necessary, of the holder of any mortgage to which this
Lease is subordinate or of any insurance company under
any policy or policies covering said demised premises, which,
under the provisions of such policy or policies may be required
as a condition for making such alteration, change or addi-
tion, and provided Tenant shall effect and furnish to
Landlord, at Tenant's own cost and expense, additional lia-
bility insurance of the same kind as is more particularly
provided for under the provisions of subparagraph (b) (ii)
of this Article 9.

## 10.  REPAIRS

10.1  Tenant, from and after the commencment of the term,
and at all times during the term, at its own cost and expense,
shall put, keep, replace and maintain in thorough repair and
good, safe and substantial order and condition, howsoever the
necessity or desirability therefor shall arise, all buildings
and improvements on the demised premises now and thereafter
erected on the demised premises, or forming part thereof, and
their full equipment and appurtenances, including all of the
fixtures forming a part of, located or thereafter located in,
or used in connection with the operation of the demised premises.

Tenant shall make all repairs of every kind or
nature necessary or desirable in the demised premises, whether
inside or outside, structural or non-structural, extra-
ordinary or ordinary, seen or unforeseen, whether or not neces-
sitated by wear, tear, obsolescence or defects or any other
cause and whether latent or otherwise.

Tenant shall use all reasonable precaution to prevent
waste, damage or injury.

Tenant also, at its own cost and expense,

(THIS SPACE LEFT BLANK INTENTIONALLY)

shall put, keep, replace and maintain in thorough repair and
good order and safe condition, and free from dirt, snow, ice,
rubbish and other obstructions, or encumbrances, the sidewalks,
parking areas, coal chutes, sidewalk hoists, railings, gutters
and curbs in front of and adjacent to the demised premises.

10.2   Tenant shall indemnify and save harmless Landlord
against and from all costs, expenses, liabilities, losses,
damages, suits, fines, penalties, claims and demands, because
of Tenant's failure to comply with the foregoing.   Tenant shall
not call upon Landlord for any disbursement or outlay whatso-
ever in connection therewith.   Tenant hereby expressly releases
and discharges Landlord of and from any liability therefor.

10.3   Landlord shall in no event be required to make
any alterations, rebuildings, replacements, changes, additions,
improvements or repairs, structural or otherwise, during the
term, except that this provision shall not release or affect any
requirement in this Lease for the application or turnover by
the Landlord of all or a portion of fire or other hazard insur-
ance payments, or liability claim recoveries or condemnation
awards for such purposes to the extent actually received by
Landlord.

10.4   Landlord shall not be required to furnish to
Tenant any facilities or services of any kind whatsoever during
the term, such as, but not limited to, water, steam, heat, gas,
hot water, electricity, light and power.

11.   LIENS AND REMOVAL

11.1   Except as otherwise specifically provided in
this Lease, Tenant shall have no power to do any act or make
any contract which may create or be the foundation for any lien,
mortgage or other encumbrance upon the reversion or other es-
tate of Landlord, or upon any interest of Landlord in the de-
mised premises or in the buildings or improvements therein.
Should Tenant cause any alterations, rebuildings, replacements,
changes, additions, improvements, or repairs to be made to the
demised premises, or labor performed or material furnished
therein, thereon or thereto, neither Landlord nor the demised
premises shall under any circumstances be liable for the payment
of any expense incurred or for the value of any work done or
material furnished.   All such alterations, rebuildings, replace-
ments, changes, additions, improvements and repairs, and labor
and material, shall be made, furnished and performed at Tenant's
expense, and Tenant shall be solely and wholly responsible to
contractors, laborers and materialmen furnishing and performing
such labor and material.

11.2   If, because of any act or omission (or alleged
act or omission), of Tenant, any mechanics' or other lien,
charge or order for the payment of money shall be filed against
the demised premises or any buildings or improvements thereon,
or against Landlord (whether or not such lien, charge or order
is valid or enforceable as such), Tenant at its own cost and
expense, shall cause the same to be cancelled and discharged
of record or bonded within twenty (20) days after notice to
Tenant of the filing thereof, and Tenant shall indemnify and
save harmless Landlord against and from all costs, expenses,
liability, losses, damages, suits, fines, penalties, claims
and demands, including reasonable counsel fees, resulting
therefrom.

12.   REQUIREMENTS OF PUBLIC AUTHORITIES AND OF INSURANCE
UNDERWRITERS AND POLICIES

12.1   Tenant covenants and agrees that Tenant at its

own cost and expense, during the term of this Lease shall
promptly execute and comply with any and all present and future
rules, orders, ordinances, regulations, statutes and requirements
of law, irrespective of the nature of the work required to be
done, extraordinary as well as ordinary, of federal, state,
city, county, borough or other governmental public or quasi-
public authorities now existing or hereafter created, and of
any and all of their departments and bureaus, and of a respon-
sible board of fire insurance underwriters or any body exer-
cising similar functions applicable to or affecting said demised
premises or any street, avenue or sidewalks in front thereof or
any vault in or under the same or with respect to the removal
of any encroachment or the condition, equipment, maintenance,
use or occupation of said demised premises, whether or not the
same involve or require any structural change or the making
of any alterations or additions in or to any structure upon
or appurtenant to said demised premises, whether or not such
alterations or additions be structural or be required on ac-
count of any particular use to which said demised premises
or any part thereof, may be put, and whether or not such rules,
orders, ordinances, regulations, statutes and requirements be
of a kind that might be deemed not to be within the contempla-
tion of the parties hereto.

Tenant, at its own cost and expense, during the
entire term of this Lease shall also execute and comply with
any and all provisions and requirements of any fire, liability
or other insurance policy affecting or covering said demised
premises, or any part thereof, at any time, during said term.

12.2  If within two (2) years prior to the expiration
of the final term of this Lease Tenant shall be required to
comply with any law, ordinance, requirement, order, direction,
rule or regulation of the federal, state, city, county or borough
government or any other governmental authority affecting the de-
mised premises or appurtenances or any part thereof or any of
their respective departments, bureaus, or officials or of the
fire insurance underwriters or any other body exercising similar
functions or of any insurance company writing policies covering
the demised premises or any part thereof or to comply with
the terms of any mortgage on the fee of the demised premises
to which this Lease is subordinate, and the estimated cost of such
compliance shall be Ten Thousand ($10,000) Dollars or more, Tenant
shall have the option to terminate this Lease within the time
in this Lease provided for the commencement of such compliance,
providing there is no existing and unremedied default on the part
of Tenant under any of the provisions of this Lease on the part
of Tenant to be performed, as to which Landlord has served
notice in writing addressed to Tenant. Such termination
shall be effective upon the date specified in such notice and
in no event more than thirty (30) days from the date of service
of such notice. Thereupon this Lease shall cease and come
to an end on the date specified in such notice with the same
force and effect as if such date were the date herein definitely
fixed for the expiration of the term. Tenant, with such notice,
shall make payment of all net rent, additional rent and other
charges payable by Tenant hereunder justly apportioned to the
date of such termination.

Tenant shall be deemed relieved from compliance
and of all obligations arising under this Lease after the
effective date of such surrender, except for possession by
subtenants, in the condition and manner in this Lease pro-

-13-

vided as in the case of the natural termination of the Lease
and the apportionment and payment of all net rent, additional
rent and other charges to such date and the surrender and
assignment to Landlord of all subleases and the payment to

(THIS SPACE LEFT BLANK INTENTIONALLY)

-13a-

Landlord for all of received by Tenant from subtenants for any period beyond the termination date.

During the notice period, Landlord shall have the right to enter the demised premises for the purpose of complying with any such law, ordinance, requirement, order, direction, rule or regulation, and the amounts expended by Landlord in connection therewith, with interest thereon, at the legal rate, from the date of expenditure, shall become due and payable by Tenant, unless tenant shall have complied with all the conditions for such termination.

Upon giving such notice of termination, Tenant shall hold in trust any and all rents received by Tenant subsequent to the date of such notice, for the benefit of Landlord and Tenant and for the payment of the net rent, additional rent and other charges payable by Tenant to Landlord to the date of such termination, and upon the payment to Landlord of all such charges and prepaid rent received from Tenants and other occupants, the balance if any, remaining in such trust fund shall belong to Tenant.

12.3   Tenant shall have the right to contest or review by legal proceedings, or in such other manner as it may deem suitable (which, if instituted, Tenant shall prosecute diligently at its own expense, and free of any expenses to Landlord and, if in Tenant's opinion necessary, in the name of Landlord), any such laws, ordinances, requirements, order, directions, rules or regulations aforementioned or the application thereof. During such contest, compliance with any such contested matter may be deferred by Tenant upon condition that, before instituting any such proceedings, Tenant shall furnish to Landlord, and if required to the holder of any mortgages to which this Lease is subordinate, a surety company bond, a cash deposit or other security satisfactory to Landlord, sufficient to cover the cost of complying with the contested matter, with interest, penalties, fines, fees and other expenses, for the period which such proceedings may reasonably be expected to take, securing compliance with such contested items and payment of all interest, penalties, fines, fees and expenses in connection therewith. Any such proceedings instituted by Tenant shall be commenced as soon as is reasonably possible after the issuance of any such contested matters and shall be prosecuted to final adjudication with reasonable dispatch. Notwithstanding the furnishing of any bond, deposit or security, Tenant shall promptly comply with any such matters if at any time the demised premises, or any part thereof, shall be in danger of being forfeited or lost or if Landlord shall be in danger of being subjected to criminal liability or penalty by reason of non-compliance therewith.

13.   INSURANCE

13.1   During the term Tenant, at its own cost and expense, and as additional rent, shall:

(a)   Keep all buildings and improvements and all fixtures and equipment on, in or appurtenant to the demised premises at the commencement of the term and thereafter

-14-

erected or installed thereon or therein, including all al-
terations, rebuildings, replacements, changes, additions
and improvements, insured for the benefit of Landlord, Tenant,
feeholder and the holder of any mortgage to which the Lease
is subordinate and the Lease of any subtenant may so require,
as their respective interests may appear, against loss or damage
by fire, and extended coverage, and if required, by the holder
of any mortgage or fee holder to which this lease is subordinate
pursuant to the provisions of such mortgage, or if reasonably
required by Landlord, other hazards, and similar insurance
including malicious mischief and vandalism and in such amounts
as the Landlord may reasonably require or as may from time to
time be required by the Ground Lessor and/or the holder of
such mortgage pursuant to the provisions of such mortgage.

(THIS SPACE LEFT BLANK INTENTIONALLY)

-14a-

All such insurance shall be in an aggregate amount which shall not be less than eighty (80%) percent of the full insurable value of the property thereby insured but, in any event, in no less than the minimum amount necessary to avoid the effect of co-insurance provisions of the policies, provided, however, that Tenant may, so long as any co-insurance provisions of the policies are not thereby made operative in the event of a loss, cause such hazard insurance policies to be subject to a $5,000. deductible per occurrence. Tenant shall be deemed a self insurer to the extent of such deductible. All such insurance shall be carried in such insurance companies and in such form as shall be reasonably satisfactory to Landlord and the holder of any such mortgage, and such sublease or sublessee. All of such policies shall provide that loss, if any, payable thereunder shall be adjusted with and payable to the holder of such mortgage, Landlord, Tenant and subtenant, as their respective interests may appear. All such policies, with receipts evidencing payment of the premiums thereon, shall be delivered to and held by Landlord or the holder of any such mortgage.

The term "full insurable value" shall mean actual replacement value (exclusive of cost of excavation, foundations and footings below the lowest basement floor). Such "full insurable value" shall be determined from time to time (but not more frequently than once in any twenty-four (24) calendar months) at the request of Landlord by an appraiser, engineer, architect or contractor approved in writing by Landlord, at the expense of Tenant. No omission on the part of Landlord to request any such determination shall relieve Tenant of any of its obligations under this Article 13;

(b) Provide and keep in force for the benefit of Landlord and Tenant/Fee Holder and Fee Mortgagee comprehensive general public, liability and boiler insurance policies (if there be a boiler on the premises), in insurance companies authorized to do business in the States specified in Schedule 9.2(a)(1) hereto, reasonably satisfactory to Landlord and in standard form, protecting Landlord and Tenant against any and all liability, in the amount of not less than that specified in Schedule 9.2(a)(1) hereto in respect of any one occurrence and in the amount of not less than that specified in Schedule 9.2(a)(1) hereto in respect of injuries to or death of any one person, and in the amount of not less than that specified in Schedule 9.2(a)(1) hereto in respect of destruction or damage to property. Such policies shall cover the entire buildings and demised premises, as well as the sidewalks in front thereof. All such policies, with receipts evidencing payment of the premiums thereon, shall be delivered to and held by Landlord. A liability policy or policies covering Landlord and Tenant as their interest may appear, but otherwise, in companies, amounts and form herein provided, shall be deemed a compliance with the covenants of this Paragraph 13.1(b).

(c) Provide and keep in force for the benefit of the Landlord and for any fee mortgagee /and fee holder entitled thereto, if this Lease is subordinate thereto, rental value insurance against loss or damage by fire (with extended coverage) in an amount not less than the current annual net rent, plus the amount

of taxes upon the demised premises, both land and building,
water charges, sewer rents, installments of assessments and
annual premiums for insurance, including rental value in-
surance.

(d)  Provide and keep in force plate glass insurance
covering the glass in the demised premises except as may be
carried by sublessees.

(e)  If a sprinkler system shall be located in any
building, or portion thereof, on the demised premises, provide
and keep in force sprinkler leakage insurance in amounts and forms
satisfactory to Landlord on the basis of 50% co-insurance factor.

(f)  If after the execution of this lease insurance coverages
not provided for herein become such as are customarily carried for
the type of property as are the demised premises in the geographical
area in which the same are situated, the Tenant will provide such
coverage at the written request of the Landlord provided that such
coverage is available from American companies qualified in New
York and Kentucky.  Any differences arising out of this clause
or as to the performance or breach thereof shall be settled by
arbitration in accordance with Article 30 of this lease.  The
new coverages provided by this paragraph may be carried under
blanket or master policy coverage.

13.2  The insurance policies required under this
Article 13 to be furnished and paid for by Tenant may, at the
direction of Tenant, be furnished or paid for by any sublessee
or other person having an insurable interest in the demised
premises.

(THIS SPACE LEFT BLANK INTENTIONALLY)

-15a-

13.3  Tenant shall pay all premiums and charges for all such policies. If Tenant shall fail to make any such payment when due, or carry any such policy, Landlord, at its option, may, but shall not be obligated to, make such payment or carry such policy, and the amounts paid by Landlord, with legal interest thereon from the date of payment, shall become due and payable by Tenant, as additional rent, with the next succeeding installment of net rent which shall become due after such payment by Landlord. Payment by Landlord of any such premiums or the carrying by Landlord of any such policy shall not be, nor be deemed to be, a waiver or release of the default of Tenant with respect thereto, or the right of Landlord to institute summary proceedings or to take such other action as may be permissible hereunder as in the case of default in the payment of net rent.

13.4  At least twenty (20) days prior to the expiration of each such policy, Tenant shall pay or finance the premiums for renewal insurance and within such period shall deliver to Landlord  or to the holder of any mortgage to which this Lease is subordinate, the original policy with an endorsement thereon marked paid or duplicate receipt or other information satis- factory to Landlord evidencing payment thereof, except that Tenant shall in no event be required to prepay premiums on any insurance for more than one year in advance. If Tenant shall fail to pay any such premiums, or deliver such policies, Landlord, at its option, may, but shall not be obligated to, procure or pay therefor, and the amounts paid by Landlord, with interest thereon at the legal rate from the date of payment, shall become due and payable by Tenant, as additional rent with the succeeding installment of net rent which shall become due after such payment by Landlord. Payment by Landlord of such other prem- iums shall not be, nor deemed to be, a waiver or release of the default in the payment thereof by Tenant, or the right of Landlord to institute summary proceedings or take such other action as may be permissible hereunder as in the case of default in the payment of net rent.

13.5  Tenant shall not violate or permit to be vio- lated any of the conditions or provisions of any such policy, and Tenant shall so perform and satisfy the requirements of the companies writing such policies that at all times com- panies of good standing satisfactory to Landlord and to the holder of any mortgage to which this Lease is subordinate shall be willing to write or continue such insurance.

13.6  Tenant and Landlord shall cooperate in connection with the collection of any insurance moneys that may be due in the event of loss, but at the sole expense of Tenant and Tenant and Landlord shall execute and deliver such proofs of loss and other instruments which may be required for the purpose of ob- taining the recovery of any such insurance moneys.

13.7  Each such policy or certificate therefor issued by the insurer shall, to the extent obtaining, contain an agree- ment by the insurer that such policy shall not be cancelled without at least ten (10) days prior written notice to Landlord and, as applicable, the holder of any mortgage to which this Lease is subordinate and in no event shall such policies be cancelled by Tenant without Landlord's prior written consent.

13.8  Tenant shall not carry separate insurance, con-
current in form or contributing in the event of loss, with any
insurance required or which may reasonably be required to
be furnished by Tenant under the provisions of this Article
13, unless Landlord is included therein as one of the insureds,
with loss payable as provided in this Lease.  Tenant shall
promptly notify Landlord of the issuance of any such separate

(THIS SPACE LEFT BLANK INTENTIONALLY)

-16a-

insurance and shall cause any such policies to be delivered to Landlord as provided in this Article 13, unless otherwise required by the Lease of a subtenant.

13.9   In the event of any dispute between Landlord and Tenant as to the amount or type of insurance required by Landlord, or as to any other matter with respect to this Article 13, the same shall be settled by arbitration as in Article 30 provided.

13.10   The premiums on all insurance policies shall be apportioned between Landlord and Tenant in such manner that Landlord shall reimburse Tenant for that portion of the aggregate unearned premiums on all such policies in force at the expiration of the term of this Lease.

## .14.   DESTRUCTION.

14.1   If, during the term, the buildings, improvements or the equipment on, in or appurtenant to the demised premises at the commencement of the term or thereafter erected thereon or therein shall be destroyed or damaged in whole or in part by fire or other cause, Tenant shall give to Landlord immediate notice thereof, and Tenant, at its own cost and expense, shall with reasonable promptness, repair, replace and rebuild the same, at least to the extent of the value and as nearly as possible to the character of the buildings and improvements and the equipment therein existing immediately prior to such occurrence; and Landlord shall in no event be called upon to repair, replace or rebuild any such buildings, improvements or equipment, nor to pay any of the costs or expenses thereof beyond or in excess of the insurance proceeds as herein provided.

14.2   For the purpose of paying towards the cost of such repairs, replacements or rebuilding, Landlord shall make available all net sums received by Landlord under insurance policies covering such loss, as provided in Paragraph 13.1 (a) and (c) either: (1) to the parties whom Tenant may employ to repair, replace or rebuild the same as such repairs, replacements or rebuilding shall progress, or (2) to Tenant, if Tenant shall make or pay for such repairs, replacement or rebuildings, but in either case in payment of the cost of work and materials actually incorporated in the demised premises. Such payment shall be madeupon the requisition certificates of the architect in charge of such work whose selection shall be subject to the prior written approval of Landlord, which approval Landlord shall not unreasonably withhold, provided, however, that in each instance of requisition aforesaid prior to completion of such work the architect shall also certify to Landlord, and, at Landlord's request, to the holder of any mortgage to which this Lease is subordinate, that the cost of the then remaining work necessary for completion thereof does not exceed 90% of the balance of said insurance proceeds as will remain after payment of the sum so requisitioned, and that such work has been prosecuted in accordance with the plans and specifications therefor, and proof shall have

been furnished to Landlord that no lien or liability has
attached or will attach to the demised premises or to Landlord
in connection with such repairs, replacement or rebuilding.
If in the course of such work any mechanic's or other lien or
order for the payment of money shall be filed against the
demised premises or against Landlord or Tenant or any
contractor of Tenant, or if Tenant shall default in the
performance of any of the agreements, terms, covenants or
conditions hereof, Landlord shall not be obligated to make
any payment of such insurance proceeds until and unless such
lien or order shall have been fully bonded, satisfied, can-
celled or discharged of record, and/or until such default
shall have been cured.  If the net amount of such insurance
proceeds shall be insufficient for the proper and effective
repair, replacement or rebuilding of such damaged or de-
stroyed buildings, improvements or equipment, Tenant shall
pay the additional sums required, and if the amount of such
insurance proceeds shall be in excess of the cost thereof
the excess shall be divided equally between the Landlord
and the Tenant, unless by the terms of any mortgage to which
this Lease is or shall be subordinate such excess is or shall
be required to be paid to the holder of such mortgage, in
which event such excess shall be paid to such holder.

14.3  Such work and the performance thereof shall be
subject to and shall be performed in accordance with the pro-
visions of Paragraph    9     , except that the surety company
performance bond provided for in Paragraph 9 (a)iv shall be the
amount, if any, by which the estimated cost of the work exceeds
the insurance proceeds.

14.4 (a)  Tenant shall commence the work of repairing,
replacing or rebuilding such damaged or destroyed buildings,
improvements, fixtures or equipment within sixty (60) days
after such damage or destruction and shall prosecute such
work with reasonable diligence and continuity.  In the event
that Tenant shall default in complying with the foregoing re-
quirements of this Paragraph 14.4 and such default shall
continue for a period of fifteen (15) days after notice by
Landlord specifying such failure to commence or expeditiously
prosecute such work, as the case may be, then in addition to
any other remedy to which the Landlord shall be entitled to
by reason of a default hereunder, Landlord shall have the right
to do the necessary work, pay for same, and retain an amount of
money (equal to the cost) from the insurance proceeds, and
any amount paid by Landlord in excess of all insurance proceeds
received by it, with interest thereon at the legal rate from
the date of payment, shall become due and payable by Tenant
as additional rent with the next succeeding installment of
net rent which shall become due after such payment by Landlord.

(b)  Tenant shall, within one year after the date
of said destruction, complete the work of repairing, replac-
ing or rebuilding such damaged or destroyed buildings, improve-
ments, furniture, furnishings, fixtures or equipment.  In the
event that Tenant shall default in complying with this provi-
sion, Landlord may complete said work at Tenant's expense;
and Tenant hereby agrees to indemnify Landlord for any expense
incurred.

14.5  This Lease shall not terminate or be affected in any manner by reason of damage to or total, substantial or partial destruction of the buildings, improvements or equipment on, in or appurtenant to the demised premises at the commencement of the term or thereafter erected thereon or therein, or by reason of the untenantability of the demised premises, or any part thereof, for or due to any reason or cause whatsoever, and the net rent reserved herein and all additional rent and other charges shall be paid by Tenant to Landlord, in accordance with the agreements, terms, covenants and conditions hereof, notwithstanding the happening of any such event, without any claim for any abatement, diminution or reduction or other expense whatsoever.

14.6  In the event any insurance proceeds shall come into possession of the holder of any mortgage to which this lease is subject and subordinate and such holder shall fail or refuse to make available to the parties whom Tenant may employ to repair, replace or rebuild the same, or to Tenant if Tenant shall do such repairing, replacing or rebuilding, the net sums received under such insurance policies, covering such loss, in accordance with the provisions of Paragraphs 14.1, 14.2, 14.3 and 14.4 hereof, Landlord shall give prompt written notice thereof to Tenant and Tenant may at its option either:

> (i)  If the loss occurs after the expiration of the 10th year of the initial term of this Lease, terminate this Lease in the same manner as provided in Paragraph 12.2          herein, and be relieved of its obligation

(THIS SPACE LEFT BLANK INTENTIONALLY)

-18a-

hereunder to repair, replace or rebuild, or

(ii) after written notice to Landlord, obtain a
mortgage on the demised premises payable by Landlord
which mortgage may be a first mortgage and shall
either be in the amount of the existing mortgage
before being reduced by the insurance proceeds and
in substitution for such mortgage or in addition
to the then balance of the existing mortgage, if
any, as reduced by the insurance proceeds collected
and not made available by the holder of said
mortgage, sufficient to assure that there will be
made available to Tenant for the payment of the cost
of the repairing, replacing, or rebuilding of the
demised premises an amount equal to the first proceeds
of the insurance collected from the insurance company
and withheld by the holder of such mortgage (including
all reasonable cost of obtaining this mortgage) pro-
vided that said mortgage or mortgages shall provide for
aggregate constant payments on account of principal
and interest not exceeding the constant payments
therefor, required to be made immediately prior to the
loss and provided further that the date of maturity
and the rate of interest are the same.  Landlord
agrees that if said mortgage is obtained by Tenant,
Landlord or its nominee will without incurring personal
liability thereunder, execute, acknowledge and deliver
the same and all such instruments and documents as are
necessary to enable Tenant fully to enjoy the benefits
of the foregoing provisions, and if Landlord or its
nominee shall fail at any time to execute, acknowledge
and deliver any such mortgage and other instruments
and documents, Tenant may execute, acknowledge and
deliver the same as attorney in fact of Landlord and
in Landlord's name, place and stead, and Landlord hereby
irrevocably makes, constitutes and appoints Tenant,
such attorney in fact for that purpose.

14.7  If Landlord shall fail to make available to Tenant
any insurance proceeds made available to it by the holder of
any mortgage to which this Lease is subordinate for the purpose
of repairing, replacing or rebuilding, then and in such event,
Tenant shall proceed with such repairing, replacing or
rebuilding and deduct the amount not so made available by
Landlord, with interest thereon, from any net rent then due
or thereafter accruing until Tenant shall have been fully
reimbursed for such sums and interest at 9% or the legal rate,
whichever is less, and until Tenant shall have been so re-
imbursed.

    If any of the rights of the Tenant hereunder shall
conflict with the rights of the Landlord herein as Tenant under
the Ground Lease, then Tenant's rights herein shall be extinguished
and without further force and effect.

-19-

14.8   The sixty (60) day period and the one (1) year period mentioned in paragraph 14.4 shall be deemed to be extended by such period as Tenant may be delayed by strikes, labor or material shortages, gov ernmental restrictions or priorities, or similar causes beyond Tenant's reasonable control.

(THIS SPACE LEFT BLANK INTENTIONALLY)

14.9. If, within two (2) years prior to the expiration of the term of this Lease, the buildings then on the demised premises shall be destroyed or damaged to an extent greater than $100,000, Tenant shall have the option within sixty (60) days from the date of such destruction or damage, provided there is no existing and unremedied default on the part of Tenant under any of the agreements, terms, covenants, and conditions of this Lease on the part of Tenant to be performed, as to which Landlord has served notice upon Tenant, to terminate this Lease by notice in writing addressed to Landlord, which termination shall be effective not less than thirty (30) days nor more than sixty (60) days after the giving of such notice, and thereupon, this Lease shall cease and come to an end on the date specified in such notice with the same force and effect as if such date were the date herein definitely fixed for the expiration of the term, and Tenant shall be relieved from the requirement to repair, replace or rebuild the same upon the surrender of the premises, in the condition and manner in this lease provided except for possession of subtenants, as in the case of the natural termination of the lease, and the apportionment and payment of all net rent, additional rent and other charges to such date, and the surrender and assignment to Landlord of all subleases and the payment to Landlord of all rent received by Tenant from subtenants for any period beyond the termination date. During the notice period, Landlord shll have the right to enter the demised premises for the purpose of repairing, replacing or rebuilding the demised premises. Upon giving such notice of termination, Tenant shall hold in trust any and all rents received byTenant subsequent to the date of such notice, for the benefit of Landlord and Tenant and for the payment of the net rent, additional rent and other charges payable by Tenant to the date of such termination, and upon the payment of all such charges and prepaid rent, the balance, if any, remaining in such trust fund shall belong to Tenant and all insurance money shall belong to Landlord (except as to the proceeds of any rent insurance equal to the total amount of any net rent, additional rent, taxes or other charges which may have been paid by Tenant to Landlord for the period from the date of such loss to the date of termination, which proceeds shall belong to Tenant), and Tenant shall have no interest therein, and in the event of such termination, Tenant shall not be required to repaid the damage. In the event of a dispute between the parties as to whether the damage is of the extent aforesaid to vest such option in Tenant, such dispute shall be determined by arbitration as in Paragraph        provided, and in such event, the time of Tenant to exercise such option shall be extended to ten (10) days after a final determination of such arbitration.

## 15.  CONDEMNATION

15.1  If the whole of the demised premises shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, or if any part thereof shall be so taken or condemned and the part thereof not so taken or condemned cannot be used or reconverted for the major business, commercial or other use being made of the entire demised premises at the time of such taking, then and in any such event this Lease and the term hereof shall cease and terminate as of the date

-- 20 --

Landlord and Tenant in and to the entire award, or the aggregate of any separate awards to Landlord and Tenant, after the payment of all reasonable fees and expenses incurred in connection with the establishing and collection of such awards, shall be as follows:

(a)  There shall first be paid the amount due under the Ground Lease to the fee owner.

(b)  There shall then be paid to the Landlord the sum set forth on Schedule 15.1(b).

(c)  There shall then be paid to the Tenant and to the owner of the purchase money mortgage given concurrently with the making of this lease, jointly the sum set forth in Schedule 15.1(c) to be applied first to the then unpaid principal balance of such mortgage and any excess of such payment to be retained by the payees.

(d)  The undistributed balance of such award or such awards shall be apportioned 50% thereof to Landlord and 50% thereof to Tenant.

It is understood that in the event there are insufficient funds to pay each of the categories above set forth,then a category first mentioned shall take to the exclusion of a category or categories thereafter mentioned.

In case of any governmental action, not resulting in the taking or condemnation of any portion of the demised premises but a creating a right to compensation therefor, such as, without limitation, the changing of the grade of any street upon which the demised premises abut, or if less than a fee title to all or any portion of the demised premises shall be taken or condemned by any federal, state, municipal or governmental authority for temporary use or occupancy, this Lease shall continue in full force and effect without reduction or abatement of rent, and the rights of Landlord and Tenant shall be unaffected by the other provision of this Article and shall be governed by applicable law.

15.2  If at any time during the term of this Lease a condemnation within the ambit of Paragraph 15.1 shall occur, then and in that event net rent and any additional rent reserved hereunder shall be apportioned and paid by the Tenant.

15.3  In the event of a partial condemnation which does not come within the ambit of Paragraph 15.1, any award shall be paid to the Landlord and the net rent as set forth in Paragraph 4.1 herein shall be reduced to such extent as shall be equitable under the circumstances.

15.4  Notwithstanding any language in this Article 15, or elsewhere in this Lease which may appear to limit Tenant's rights in and to any awards in condemnation, Tenant has specifically reserved, and is specifically granted, the right to notice to participate in the trial of any condemnation proceedings, any settlements thereof and any negotiations that may lead to acquisition by purchase in lieu of condemnation.  Landlord covenants not to settle any such condemnation proceedings without the prior written consent of the Tenant.

15.5  In any condemnation affecting the demised prem-
ises a taking shall be deemed to have occurred on the date
fixed by the appropriate law when the condemnor became vested
with title, unless such vesting of title occurred de facto prior
to the de jure vesting.  In the event of vesting of title
de facto in the condemnor the date of that occurrence shall
be the date of taking.  Condemnation proceedings shall also
include a private purchase in lieu of condemnation and the date
of the taking in the event of a private purchase in lieu of
condemnation shall be the date of the delivery of the deed unless
a prior de facto vesting in title shall have occurred in which
event the date of such de facto vesting shall be the date of
the taking.

15.6  Any dispute or difference under this Article 15
shall be settled by arbitration in accordance with the pro-
visions of Article 30 hereof.


THERE IS NO ARTICLE 16.

17.   LANDLORD NOT LIABLE FOR INJURY OR DAMAGE : INDEMNITY

17.1   Tenant is and shall be in exclusive control and
possession of the demised premises as provided herein.  Landlord
shall not in any event whatsoever be liable for any injury or
damage to any property or to any person happening on or about
the demised premises, nor for any injury or damage to the demised
premises, nor to any property, whether belonging to Tenant or
any other person, caused by any fire, breakage, leakage, defect
or bad condition in any part or portion of the demised premises,
or from water, rain or snow that may leak into, issue or flow
from any part of the said premises from the drains, pipes, or
plumbing work of the same, or from any place or quarter, or due
to the use, misuse  or abuse of all or some of the elevators, if
any, hatches, openings, installations, stairways or hallways
of any kind whatsoever which may exist or hereafter be erected
or constructed on the said premises, or from any kind of injury
which may arise from any other cause whatsoever on the said prem-
ises.  The provisions hereof permitting Landlord to enter and
inspect the demised premises are made for the purpose of enabling
Landlord to become informed as to whether Tenant is complying with
the agreements, terms, covenants and conditions hereof, and to
do such acts as Tenant shall fail to do.

17.2   In addition to any other indemnities to Landlord
specifically provided for in this Lease, Tenant shall indemnify
and save harmless Landlord against and from all costs, expenses,
liabilities, losses, damages,suits, fines, penalties, claims
and demands of every kind or nature, including reasonable counsel
fees by or on behalf of any person, party or governmental auth-
ority, whomsoever, arising out of any accident, injury or damage
which shall happen in, on or about the demised premises or appur-
tenances, and on or under the streets, sidewalks, curbs or vaults
in front of or adjacent thereto, however, occurring, and for any
matter or thing growing out of the condition, occupation,maintenance
alteration, repair, use or operation of the demised premises, or
of any part thereof, or of the streets, sidewalks, curbs or vaults
adjacent thereto during the term.

17.3   Tenant, however, shall be relieved and discharged
of and from the liability hereby assumed to the extent that
Landlord shall have enforceable insurance provided in accord-
ance with Paragraphs 9.2(a) and 13.1(b) of this Lease.

18.   NO RENT ABATEMENT

Except as otherwise specifically provided in this Lease,
no abatement, diminution or reduction of rent, charges or other
compensation shall be claimed by or allowed to Tenant, or any
person claiming under it, under any circumstances, whether for
inconveniences, discomfort, interruption of business, or other-
wise, arising from the making of alterations, changes, additions,
improvements or repairs to any buildings now on or which may
hereafter be erected on the demised premises, by virtue or because
of any present or future governmental law, ordinances, requirements,
orders, direction, rules or regulations or for any other cause or
reason.

19.   ACCESS TO PREMISES: SHORING

19.1   Tenant shall permit Landlord and the holder of any
mortgage affecting the demised premises to which this  Lease

is subordinate, or ... or their agents to ... ... ... ...
both the demised premises and Pg 42 of 72...
repairs that Tenant may neglect or refuse to make in accordance
with the agreements, terms, covenants and conditions hereof, and
also for the purpose of showing the demised premises to persons
wishing to purchase or make a mortgage loan upon the same, and
at any time within one year prior to the expiration of the term
to persons wishing to rent the same.

19.2   In the event that an excavation shall be made or
contemplated for building or other purposes upon land adjacent
to the demised premises, Tenant shall permit the person or
persons causing or contemplating such excavation to enter upon
the demised premises for the purpose of doing such work as may
be necessary to protect and preserve the wall and walls and to
the structure or structures upon the demised premises and to
support such walls or structures by proper foundation, pinning
or underpinning. Tenant shall, at its own expense, repair or
cause to be repaired any damage caused to any part of the demised
premises because of any excavation, construction work or other
work of a similar nature which may be done on any such adjacent
lands and Landlord hereby assigns to Tenant any and all rights
to sue for or recover against the adjoining owners or the parties
causing such damages, the amounts expended or injuries sustained
by Tenant because of the provisions of this Article 19 requiring
the Tenant to repair any damages sustained by such excavations,
construction work or other work.

## 20.   VAULTS, STOOP, ETC.

20.1   In case any vault or basement in front of or
adjoining the demised premises, or any portico, stoop, window
or other projection or erection of any kind beyond the building
lines, as the same shall be authorized and fixed by law, from
time to time during the term, shall be ordered removed or shall
be removed as the result or by virtue of any present or future
laws, ordinances, requirements, orders, directions, rules or
regulations of any federal, state, city, county or borough
government or other governmental authority, such removal whether
entire or partial, shall not constitute nor be deemed to be a
violation or breach of any covenant hereof on the part of Land-
lord to be kept, observed and performed, nor be deemed to be an
eviction, actual or constructive, nor be deemed to be a ground
for any claim for damage against Landlord, nor a ground for any
claim for the abatement, diminution or reduction of rent or other
charges; and any such removal and incidental alteration or re-
pair resulting therefrom shall be made by and at the expense of
Tenant, and Tenant shall indemnify and save harmless Landlord
against and from all costs, expenses, liabilities, losses, damages
suits, fines, penalties, claims, and demands, including reasonable
counsel fees, arising out of failure to comply with such laws,
ordinances, requirements, orders, directions, rules or regula-
tions directing such removal, alteration or repair.

20.2   Tenant shall pay all fees, payments or charges
that may be made, required or demanded for the maintenance and/or
construction of any such vault, portico, stoop, window or other
projection or erection.

## 21.   NO UNLAWFUL OCCUPANCY

Tenant shall not use or occupy, nor permit or suffer
the demised premises or any part thereof to be used or occupied
for any unlawful or illegal business, use or purpose, nor for
any business, use or purpose deemed disreputable, or extra
hazardous, nor in such manner as to constitute a nuisance of

- 24 -

any kind, and with respect to any provisions of
the certificate of occupancy, or any present or future govern-
mental laws, ordinances, requirements, orders, directions, rules
or regulations. Tenant shall immediately upon the discovery
of any such unlawful, illegal, disreputable or extra hazardous
use take all necessary steps, legal and equitable, to compel
the discontinuance of such use and to oust and remove any sub-
tenants, occupants or other persons guilty of such unlawful,
illegal, disreputable or extra hazardous use. Tenant shall in-
demnify and save harmless Landlord against and from all costs,
expenses, liabilities, losses, damages, injunctions, suits,
fines, penalties, claims and demands, including reasonable coun-
sel fees, arising out of, by reason of, or on account of, any
violation of or default in the covenants of this Paragraph 21.

## 22.  MACHINES AND WEIGHTS

Tenant shall not in or on the demised premises use or
operate, or permit any subtenant to use or operate, any machinery
or equipment that is harmful to the building or to place therein
any weights beyond the reasonably safe carrying capacity thereof.

## 23.  BANKRUPTCY-INSOLVENCY

23.1  If at any time during the term of this Lease,
Tenant shall voluntarily file a petition in bankruptcy or in-
solvency or shall file a voluntary petition for reorganization
or for an arrangement proceeding under the bankruptcy laws of
the United States or under any insolvency act of any state or
shall take advantage of any insolvency act, then and in any such
event Landlord may serve a written ten (10) days notice of
cancellation and termination of this Lease, and upon the
expiration of said ten (10) days, this Lease and the term
thereunder shall end and expire as fully and completely as if
the date of expiration of such ten (10) day period were the
day herein definitely fixed for the end and expiration of this
Lease and the term hereof.

23.2  If Tenant shall be adjudicated a bankrupt through
involuntary proceedings, or if, in any such involuntary proceed-
ings a receiver, trustee, assignee or other similar custodian of
Tenant's property shall be appointed, unless any such proceedings
shall be vacated and such receiver, trustee, assignee or similar
custodian of Tenant's property discharged within seventy-five (75)
days from the date of the happening of either event then and in
any such event Landlord may, at its option, serve a written five
(5) day notice of cancellation upon Tenant and upon the expira-
tion of said five (5) days, this Lease and the term hereunder
shall end and expire as fully and completely as if the date of
expiration of such five (5) day period were the day herein de-
finitely fixed for the end and expiration of this Lease and the
term hereof; provided, always, that the provisions of this sub-
division 23.2 shall not prevent Landlord from terminating this
Lease for Tenant's failure, in the meantime, to comply with all
the other provisions of this Lease within the time or times,
as in this Lease provided. The foregoing seventh-five (75)
day period shall be deemed extended during the period of any
bona fide appeal prosecuted with diligence and continuity pro-
vided that Tenant complies with all the other provisions on
the part of Tenant to be performed under this Lease.

23.3  Notwithstanding the provisions of the foregoing
Paragraphs 23.1 and 23.2, if in any such proceedings, whether
voluntary or involuntary, no application is made and no relief

is requested for a reformation or recasting of this Lease or for
any change, alteration or modification of any of the agreements,
terms, covenants or conditions of this Lease, or to relieve Ten-

(THIS SPACE LEFT BLANK INTENTIONALLY)

-25-A-

ant with respect to the punctual payment of the net rent, additional rent and other charges required by this Lease to be paid or from the punctual performance of any of the provisions of this Lease on the part of Tenant to be performed and observed, and if any such receiver, trustee, assignee or other similar custodian of Tenant's property or any other party having an interest in this Lease, shall punctually pay any and all installments of net rent, additional rent and other charges required by this Lease to be paid, as and when due, and shall fully and punctually comply with all other provisions of this Lease on the part of Tenant to be performed, then this Lease shall not be so terminated but shall continue in force and effect

23.4   The reference in this Article 23 to Tenant shall mean only the owner and holder for the time being of the leasehold estate created by this Lease and not of any such owner's predecessors in title to such leasehold estate.

## 24.   CONDITIONAL LIMITATIONS: OTHER DEFAULTS

24.1   If any one or more of the following events shall occur:

(a)   If Tenant shall desert or abandon the demised premises and such desertion or abandonment shall continue for a period of twenty (20) days after notice by Landlord; or

(b)   If this Lease or the estate of Tenant hereunder shall be transferred or assigned or subleased to any person or party, except in the manner as herein permitted, and Tenant shall fail to remedy or correct the same within twenty (20) days after notice by Landlord; or

(c)   If Tenant shall default in making payment to the Landlord of any net rent, additional rent or of any money advanced by Landlord and collectible as additional rent, as and when the same shall become due and payable; or

(d)   If Tenant shall fail to pay any assessment, water rent, rate or charge, sewer rent or other governmental imposition, or any other charge or lien against the demised premises which Tenant is required to pay, within any grace period allowed by law or by the governmental authority imposing the same; or

(e)   If Tenant shall default in payment of real estate taxes; or

(f)   If Tenant shall fail to comply with the provisions of Paragraph 14.3 within the time permitted and after notice by Landlord under the provisions of said paragraph 14.3; or

(g)   If Tenant shall fail to comply with the provisions of Article 12, or having commenced to comply therewith, shall fail to diligently and continuously prosecute such work of compliance, and such default shall continue for a period of twenty (20) days after notice by Landlord; or

(h)   If Tenant shall default in complying with any other provision of this Lease and such default in compliance shall continue for a period of twenty (20) days after notice by Landlord specifying the claimed default, and Tenant shall not,

period, to remedy such default, diligently and continuously
proceed therewith such twenty (20) days period shall be ex-
tended until twenty (20) days after the termination of a condi-
tion or cause not within Tenants' control frustrating the curing
of such default.

then, in any such event Landlord may serve a written ten (10)
day notice of cancellation and termination of this Lease, and
upon the expiration of said ten (10) days this Lease and the
term hereunder shall end and expire as fully and completely
as if the date of expiration of such ten (10) day period were
the day herein definitely fixed for the end and expiration of
this Lease and the term thereof, and Tenant shall then quit and
surrender to Landlord the demised premises and each and every
part thereof and Landlord may eter into or repossess the de-
mised premises and each and every part thereof either by force,
summary proceedings or otherwise.

24.2  Notwithstanding the provisions of this Article
24 or any other provisions of this Lease, there shall be no lia-
bility on the part of Tenant named in this Lease with respect to
any obligations accruing after such Tenant shall have assigned
this Lease in accordance with Article 6, and there shall be no
liability on the part of any assignee or transferee of this
Lease with respect to any obligations hereunder except such
liability as may result from privity of estate or shall have
been expressly assumed in writing by such assignee or transferee.

## 25. REMEDIES

25.1  In the event of a breach or a threatened breach
by Tenant of any of the agreements, terms, covenants or condi-
tions hereof, Landlord shall have the right of injunction to
restrain the same and the right to invoke any remedy allowed
by law or in equity, as if specific remedies, indemnity or
reimbursement were not herein provided.

25.2  In the event of any termination of this Lease,
whether the same be by expiration, forfeiture, cancellation,
surrender or by operation of law, by issuance of a final order,
or by service of notice of cancellation or termination as here-
in provided, Landlord may re-enter the demised premises using
such force for that purpose as may be necessary without being
liable to prosecution therefor, and thereupon Landlord shall be
entitled to retain possession of the demised premises free from
any estate or interest of Tenant therein.

25.3  Tenant hereby expressly waives service of any
notice of intention to re-enter, except as herein otherwise pro-
vided.

25.4  Tenant hereby waives any and all rights to re-
cover or regain possession of the demised premises or to re-
instate or to redeem this Lease as permitted or provided by or
under any statute, law or decision now or hereafter in force and
effect.

25.5  In all cases hereunder, and in any suit, action
or proceeding of any kind between the parties, it shall be pre-
sumptive evidence of the fact of the existence of a charge be-
ing due, if Landlord or Tenant or the holder of any mortgage to
which this Lease is subordinate shall produce a bill, notice or
certificate of any public official entitled to give the same to
the effect that such charge appears of record on the books in
his office and has not been paid.

25.6  No receipt of moneys by Landlord from Tenant

- 27 -

after the termination hereof in any lawful manner shall rein-
state, continue or extend the term, or affect any notice there-
tofore given to Tenant, or operate as a waiver of the right of
Landlord to enforce the payment of net rent and additional rent
then due or thereafter falling due, or operate as a waiver of
the right of Landlord to recover possession of the demised prem-
ises by proper suit, action, proceedings or other remedy. After
the service of notice of termination as herein provided and the
expiration of the time therein specified or after the commencement
of any suit, action, proceedings, or other remedy, or after a
final order or judgment for possession of the demised premises,
Landlord may demand, receive and collect any moneys due, or
thereafter falling due, without in any manner affecting such no-
tice, suit, action, proceedings, order or judgment. Any and all
such moneys so collected shall be deemed to be payments on ac-
count of the use and occupation of the demised premises, or, at
the election of Landlord, on account of Tenant's liability hereunder.

Upon the expiration of the term of this Lease by reason
of

(i) The happening of any of the events herein-
above described in Articles 23 and 24, or

(ii) In the event of the termination of this
Lease by summary dispossess proceedings or under any provision of
law now or at any time hereafter in force by reason of or based
upon or arising out of a default under or breach of this Lease
on the part of Tenant or of any such receiver or trustee, or

(iii) Upon Landlord recovering possession of
the demised premises in the manner or in any of the circumstances
hereinabove mentioned, or in any other manner or circumstances
whatsoever, whether with or without legal proceeding, by reason
of or based upon or arising out of a default under or breach of
this Lease on the part of Tenant or of any receiver or trustee
of Tenant.

25.7Landlord may, at its option, at any time and from
time to time relet the demised premises or any part or parts
thereof for the account of Tenant or otherwise, and receive and
collect the rents therefor, applying the same first to the
payment of such expenses as Landlord may have incurred in recover-
ing possession of the demised premises, including legal expenses
and attorneys' fees, and for putting the same into good order
or condition or preparing or altering the same for re-rental
and expenses, commissions and charges paid, assumed or incurred
by Landlord in and about the reletting of the premises, and
then to the fulfillment of the covenants of Tenant hereunder.

Any such reletting herein provided for may be for the
remainder of the term of this Lease or for a longer or shorter
period. In any such case and whether or not the demised
premises or any part thereof by relet, Tenant shall pay to
Landlord the Net Rent, any item of additional rent and all
other charges required to be paid by Tenant or any such re-
ceiver or trustee up to the time of such termination of this
Lease, or of such recovery of possession of the demised premises
by Landlord, as the case may be, Tenant covenants and agrees,
if required by Landlord thereafter, to pay to Landlord until
the end of the term of this Lease the equivalent of the amount
of all the Net Rent reserved herein and additional rent and
all other charges required to be paid by Landlord, less the net
avails of reletting, if any. The same shall be due and payable
by Tenant to Landlord on the several rent days above specified,
that is to say, upon each of such rent days, Tenant shall pay

In any of the circumstances hereinabove mentioned in which Landlord shall have the right to hold Tenant liable upon the several rent days herein specified to pay Landlord the equivalent of the amount of all the Net Rent and additional rent and all other charges required to be paid by Tenant less the net avails of reletting, if any, Landlord shall have the election in place and instead of holding Tenant so liable, forthwith to recover against Tenant as damages for loss of the bargain and not as a penalty an aggregate sum which, at the time of such termination of this Lease, or of such recovery of possession of the demised premises by Landlord, as the case may be, represents the then present worth of the excess, if any, of the aggregate of the net rent and additional rent and all other charges payable by Tenant hereunder that would have accrued for the balance of the term over the aggregate rental value of the demised premises for the balance of such term.

25.8 The rights and remedies given to Landlord in this Lease are distinct, separate and cumulative, and no one of them, whether or not exercised by Landlord, shall be deemed to be in exclusion of any of the others herein or by law or in equity provided.

## 26. NO REPRESENTATIONS BY LANDLORD

At the commencement of the term, Tenant shall accept the buildings and improvements and any equipment, on or in the demised premises in their existing condition and state of repair, and Tenant covenants that no representations, statements or warranties, express or implied, have been made by or on behalf of Landlord in respect thereof in respect of their condition, or the use or occupation that may be made thereof, and that Landlord shall in no event whatsoever be liable for any latent defects therein.

## 27. NO WAIVER

The failure of Landlord to insist upon a strict performance of any of the agreements, terms, covenants and conditions hereof shall not be deemed a waiver of any rights or remedies that Landlord may have and shall not be deemed a waiver of any subsequent breach or default in any of such agreements, terms, covenants and conditions.

## 28. END OF TERM

Except as herein otherwise provided, Tenant shall on the last day of the term, or upon the sooner termination of the term, peaceably and quietly surrender and deliver up to Landlord the demised premises, broom-clean, including all buildings, alterations, rebuildings, replacements, changes, additions and improvements constructed, erected, added or placed by Tenant thereon, with all equipment in or appurtenant thereto, together with all fixtures forming a part of, located in, or used in connection with the operation of the demised premises in as good condition and repair as at the commencement of the term (ordinary wear and tear, and damage by fire excepted), providing the fire insurance required to be carried under Paragraph 13.1 is then in full force and effect. Tenant hereby waives any notice now or hereafter required by law with respect to vacating the demised premises at any such termination date.

## 29. QUIET ENJOYMENT

Landlord warrants his title to demised premises and

- 29 -

subject to the ground lease/ covenants/that Tenant shall and may peaceably and quietly have hold and enjoy the demised premises for the term hereby granted, so long as Tenant shall faithfully perform the agreements, terms, covenants and conditions hereof.

30.  ARBITRATION

In all cases where this Lease specifically provides for arbitration, the matter in issue shall be settled by arbitration, in accordance with the rules then in existence, of the American Arbitration Association. Hearings shall be held in New York City.

The cost of the proceedings shall be divided equally among the parties. Any decision rendered by arbitration shall be final and accepted by all parties. A grace period of 30 days shall be allowed in any decision for the curing of the arbitrated item if said item can be reasonably cured in this allotted time.

31.  TENANT'S CERTIFICATE

31.1  Tenant shall, without charge, at any time and from time to time, within ten (10) days after reasonable request by Landlord, deliver a written instrument, to Landlord or any other person, firm or corporation specified by Landlord, duly executed and acknowledged, certifying:

(a)  that this Lease is unmodified and in full force and effect, or, if there has been any modification, that the same is in full force and effect as modified and stating any such modification;

(b)  whether or not there are then existing any set-offs or defenses against the enforcement of any of the agreements, terms, covenants or conditions of this Lease and any modification thereof upon the part of Tenant to be performed or complied with, and, if so, specifying the same; and

(c)  the dates to which the net rent, additional rent and other charges hereunder have been paid.

32.  LANDLORD'S CERTIFICATE

Landlord shall, without charge, at any time and from time to time, upon reasonable demand by Tenant, within ten (10) days after request by Tenant, deliver to Tenant a written instrument, certifying whether Tenant has or has not, as the case may be, faithfully and fully made all payments then and theretofore due to Landlord and whether Landlord knows or does not know, as the case may be, of any default by Tenant in the performance by Tenant of all agreements, terms, covenants and conditions on Tenant's part to be performed and if it does know of any default, specifying same.

33.  SHORT FORM LEASE

The parties hereto have simultaneously with the execution and delivery of this Lease executed, acknowledged and delivered a short form memorandum of lease for the purpose of recording. Tenant shall pay the cost of such recording.

THERE IS NO ARTICLE 34.

35. TENANT'S COMPLIANCE WITH MORTGAGES

Tenant covenants and agrees that:

(a) it will, unless prevented or hindered by
the act or omission of Landlord, duly and punctually observe and
perform all of the terms, covenants and conditions of any mort-
gage to which this Lease is subordinate;

(b) it will not, directly or indirectly, do any
act or suffer or permit any condition or thing to occur, unless
caused by Landlord, which would or might constitute a default
under any mortgage to which this Lease is subordinate, and

(c) it will, after notice, execute and deliver
any documents, papers or other instruments which may be necessary
or required to permit the due performance and compliance with
all of the terms, covenants and conditions of any mortgage to
which this Lease is subordinate, by the party responsible there-
under for such performance, except as provided in (a) above.

THERE IS NO ARTICLE 36.

-31-

on behalf of any Leasehold Mortgagee who has complied with
the provisions of this Paragraph 36.1, as if the same had
been performed by Tenant.  Such acceptance shall not there-
by create any additional rights as against Landlord in such
Leasehold Mortgagee, nor shall such Leasehold Mortgagee
thereby be subrogated to any interest or right of Landlord

(d)  If any event or events shall occur which
shall entitle Landlord to serve notice specifying a de-
fault and if before the expiration of the time within which
such default may be remedied after the date of service of such
notice and before giving of the five days' notice of termina-
tion provided for in Paragraph 24.1, any Leasehold Mortgagee
referred to in the foregoing subdivision (b) and who has
qualified to receive notice under Paragraph 36.2 shall have
paid to Landlord all rent and additional rent and other pay-
ments provided for in this Lease, then in default, and shall
have complied or shall be engaged diligently and with continuity,
in the work of complying with all the other requirements of this lease
if any then in default, then in such event Landlord shall not be
entitled to terminate this Lease, provided, however, that nothing
herein contained shall in any way effect, diminish or impair
the right of Landlord to terminate this Lease or to enforce
any other remedy in the event of non-payment of any sum there-
after payable by Tenant or in the event of any other subsequent
default in the performance of the obligations of Tenant hereunder.

36.2  The rights and privileges provided in Paragraph
36.1 shall apply and shall be exercised only as provided in this
Article 36.  No such rights, options or privileges shall apply
to any assignee or transferee of any Leasehold Mortgage, unless:

(i)  Landlord shall receive written notice of
any such assignment or transfer of the Leasehold Mortgage and
the effective date thereof within five (5) days, after the
execution of any such assignment, transfer or agreement, and

(ii)  such instrument of assignment, transfer
or agreement shall be promptly recorded and a duplicate
original or certified copy thereof shall be delivered to Land-
lord within ten (10) days after the execution of the same, and

(iii)  Landlord shall receive within five (5)
days after the execution of any such assignment or transfer of
the Leasehold Mortgage a statement and designation duly exe-
cuted and acknowledged by any such assignee or transferee,
setting forth and designating the name and post office address
in the United States of America, of one individual, firm or
corporation to whom any notices under this Article 36
shall be given.  Compliance with the foregoing requirements
set forth in this subdivision (iii) are and shall be conditions
precedent to any rights under this Article 36 and no rights,
options or privileges under this Article 36 shall inure to the
benefit of any assignee or transferee of the Leasehold Mortgage
unless such assignee or transferee shall have complied with
such requirements and Landlord shall in no event be required
to serve any notices of any nature whatsoever upon any assignee
or transferee of the Leasehold Mortgage unless such assignee
or transferee shall have complied with the provisions of this
subdivision (iii).

37.  PAYMENT OF RENT

All Net Rent, additional rent and other payments re-
quired to be paid by Tenant to Landlord shall be paid to Land-
lord at the aforementioned address of the Landlord or such other

direct, or shall be paid, in addition to no more than three (3) persons, firms or corporations, as Landlord may by written notice to Tenant direct. Landlord shall accept payment of rent hereunder from any Sublessee, who shall have been directed in writing by Tenant to pay the same, after service upon Landlord of a duplicate original of such direction executed and acknowledged by Tenant.

## 38. LAW

This agreement shall be governed by and construed in accordance with the laws of the State specified in Schedule 38 hereto.

## 39. NOTICES

39.1 Whenever it is provided herein that notice, demand, request or other communication shall or may be given to, or served upon, either of the parties by the other, and whenever either of the parties shall desire to give or serve upon the other any notice, demand, request or other communication with respect hereto, or the demised premises, each such notice, demand, request or other communication shall be in writing and, any law or statute to the contrary notwithstanding shall not be effective for any purpose unless the same shall be given or served as follows:

(a) if given or served by Landlord, by mailing the same to Tenant at its address above set forth by certified mail, postage prepaid, return receipt requested;

(b) if given or served by Tenant, by mailing the same to Landlord at its address above set forth by certified mail, postage prepaid, return receipt requested.

Every notice, demand, request or other communication hereunder shall be deemed to have been given or served at the time that the same shall be deposited in the United States mails, postage prepaid, in the manner aforesaid. Either party may change its address for notice by a notice in compliance with this paragraph.

## 40. UNAVOIDABLE DELAYS

Whenever Tenant shall be required by the terms of this Lease or by law to perform any contract, act, work, labor or services, (excepting for the payment of rent and additional rent and the discharging of any liens against the premises) or to perform and comply with any laws, rules, orders, ordinances, regulations or zoning regulations, Tenant shall not be deemed to be in default herein and Landlord shall not enforce or exercise any of its rights under this Lease, if and so long as non-performance or default herein shall be directly caused by strikes, non-availability of materials, war or national defense pre-emptions, governmental restrictions, acts of God or other similar causes beyond the control of Tenant; provided, however, that, notwithstanding any of the provisions of the foregoing Tenant shall defend and indemnify Landlord in every case.

## 41. CONSENT APPROVAL OR SATISFACTION

Subject to the provisions of the Ground Lease, in any case where the provisions of this Lease require the consent or approval of Landlord, it shall not unreasonably withhold or delay such consent or approval. In any case where Tenant is required to do anything to the satisfaction or or satisfactory to Landlord, it shall not unreasonably de-

-33-

cline to express its satisfaction with such action of Tenant.
In no event, however, shall Landlord be deemed to be unreason-
ably withholding or delaying consent or approval or unreason-
ably declining to express satisfaction where similar consent
or approval or expression of satisfaction is required from the
holder of any mortgage to which this Lease is subordinate, and
such holder fails, refuses or delays the giving of such consent
or approval or the expression of such satisfaction.

## 42.  ADVANCED RENTALS: SUBTENANCIES

Tenant, without the prior written consent of Land-
lord, shall not accept any rent from any subtenant (includ-
ing any sublessee) more than one month in advance of the re-
spective period for which such rent shall accrue.

## 43.  UNDISCLOSED PRINCIPAL

Notwithstanding the provisions of any law or statute,

no principal disclosed or undisclosed, other than Landlord and
Tenant, shall be liable for the performance of the agreements,
terms, covenants, and conditions of this Lease.

## 44.  CERTAIN DEFINITIONS

44.1  The term "Landlord", as used herein, shall mean
the owner of the demised/leasehold premises and the owner of the im-
provements thereon only so long as such Landlord shall be such
owner, so that in the event of a sale, transfer or conveyance
of the demised premises, the purchaser, transferee or grantee
shall succeed to the rights of and shall be deemed to have as-
sumed all obligations of Landlord hereunder, and from and after
the date of any such sale, transfer or conveyance, the grantor
shall be deemed to be and shall be released of and from all cov-
enants and obligations of Landlord hereunder accruing from and
after the date of such transfer, but Landlord shall remain liable
for any moneys not turned over to the purchaser, transferee or
grantee in which Tenant has an interest.

44.2  The term "Tenant", as used herein, shall mean
the Tenant named herein until an assignment in whole of said
Tenant's interest under this Lease, pursuant to the provisions
of Article 6, shall have been made; thereafter, "Tenant" shall
mean only the then owner and holder of this Lease.

44.3  The word "equipment" as used herein shall not
include the property of any subtenant or occupant, except a
Sublessee of the whole demised premises pursuant to Paragraph 7.1

44.4  The words "re-enter" and "re-entry" as used
herein shall not be restricted to their technical legal meaning.

44.5  The term "repairs" as used herein shall include
painting and decorating where reasonably necessary.

44.6  The term "mortgage" as used herein shall include
a deed to secure debt and the term "mortgagee" shall include
the grantee of such deed to secure debt.

44.7  The term "Sublease" as used herein shall mean
a sublease of the whole of the demised premises, unless the
context otherwise requires.

44.8  The term "Sublessee" as used herein shall mean
the holder, for the time being, of any Sublease, unless the con-
text otherwise requires.

## 45. MARGINAL NOTES

The marginal notes are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope or intent of this Lease nor in any way affect this Lease.

## 46. VARIATIONS IN PRONOUNS

All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

## 47. WAIVER OF TRIAL BY JURY

It is mutually agreed by and between Landlord and Tenant that the respective parties shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of, or in any way connected with this Lease, Tenant's use or occupancy of the demised premises, or any claim of injury or damages.

## 48. ENTIRE AGREEMENT

This instrument shall be deemed to express all of the agreements, terms, covenants and conditions in accordance with which the demised premises shall be held by Tenant from Landlord, and it is agreed that this lease contains the entire agreement between the parties and shall not be modified in any manner except by an instrument in writing executed by the parties.

## 49. SUCCESSORS AND ASSIGNS

The agreements, terms, covenants and conditions herein shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, personal representatives, successors and assigns, except as otherwise provided herein.

## 50. SAVING CLAUSE

If any term or provision of this Lease or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Lease or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

## 51. RECIPROCAL RIGHTS OF FIRST REFUSAL

51.1  If Tenant shall seek to assign this Lease otherwise than by a merger or consolidation or by the sale and transfer of all of its assets, as a part of a tax free reorganization, it shall give Landlord no less than thirty (30) days notice of such intention to assign and Landlord shall then have the right to offer to accept such assignment upon the same terms and conditions as proffered by Tenant's proposed assignee, which offer to accept shall be in writing mailed by Certified Mail, Return Receipt Requested, to Tenant within such thirty (30) days notice period and fix a date no later than thirty (30) days from the date of mailing for the closing of such assignment and fix a place within the City of New York for such closing. This subparagraph shall not constitute a modification of the requirements of Article 6 of this Lease

as to an effective assignment of this Lease.

51.2  If Landlord shall enter into a contract for the sale or transfer of the premises herein demised to Tenant, it shall as a condition of the effectiveness of such contract first tender such property to Tenant upon the same terms and conditions as set forth in its proposed contract.  Such tender shall be made in writing by Certified Mail, Return Receipt Requested, and the Tenant shall have thirty (30) days from the date of mailing to accept or reject such tender.  Tenant's failure to respond to the tender within such thirty (30) days shall be deemed a rejection.  If Tenant shall accept such tender, it shall do so in writing, which shall be mailed to Landlord, Certified Mail, Return Receipt Requested, within the thirty (30) days tender period, which acceptance shall fix a closing date no later than thirty (30) days from the date of mailing thereof and fix the place of closing in New York City. Upon the closing, the Landlord shall be obligated to deliver such title as it had agreed to deliver in its contract of sale.

## 52. SUBTENANT'S SECURITY.

All security of subtenants shall be deposited in a joint account in the ISRAEL DISCOUNT BANK, LTD. of 511 Fifth Avenue, New York, New York, or any other commercial bank within the City of New York and held for the purpose of such security with the Landlord and Tenant each designating an individual who will sign in its behalf and checks on such tenant's security account shall be payable only on the joint signatures of the Landlord's designee and the Tenant's designee.

## 53.  INCORPORATION BY REFERENCE: EFFECT

53.1  The following are hereby incorporated herein by specific reference thereto hereinbefore made in this Lease or by specific reference thereto in this Article 53:



INITIAL

(a)  Schedules:  1.1, 1.2(b), 1.2(h), 1.2(i), 2.1, 2.2, 4.1(a), 4.1(bb)(i), 4.1 (bb)(ii), 9.2(a)(i),  15.1(b), 15.1(c), 38.

(b)  The Addendum.

53.2  In the event of any conflict between the Lease and the Schedules on the one side and the Addendum on the other, the Addendum shall supervene and govern.

IN WITNESS WHEREOF, the parties hereto have set their
hand and seal as of the day and year first above written.


ASHEVILLE K-M ASSOCIATES, LANDLORD

By _____
    Paul Green, General Partner


NINETEENTH ASHEVILLE CORP., TENANT

by _____
    Harold W. Schulkind, Vice Pres.

-37-

ADDENDUM

#1.   Landlord may not place mortgages to which this
lease is subject and subordinate without the Tenant's prior
written consent.

#2.   For the purposes of clarification of Schedule
4.1 (bb), none of the income or expenses from the now
occupied space (Tract 1) and the now vacant space (Tract 2)
shall be merged, offset or mingled for the purposes of rent
due Landlord under this schedule.   Percentage rents for each
of these two parts of the shopping center shall forever be
separate and distinct.

#3.   Anything to the contrary in this lease notwith-
standing, the terms and conditions of the Ground Lease to
which this lease is subject and subordinate shall govern if
there is any conflict between the terms of the ground lease
and this lease.

#4.   Anywhere in this lease where the term "Fee Mortgagee
or first mortgagee" is used, it shall be construed to be read
as though the term was "Mortgagee, and/or Ground Lessor."

#5.   It is understood and agreed that the Landlord's
interest in the demised premises is a leasehold interest con-
sisting of Landlord's rights as Tenant under the Lease Agreement,
dated February 1, 1966, as later amended, between Martin Bruce
and Sylvia Bruce, as Landlord.   Tenant shall fulfill and perform
each and every obligation of Landlord as "Tenant" under such
Ground Lease to the same extent as if Tenant were the "Tenant"
thereunder, including, without limitation, all obligations to
pay rent, additional rent and all other sums payable thereunder,

-2-

provided that, Tenant shall pay such rent, additional rent
and all other sums directly to Landlord twenty days before
such rent, additional rent and other sums are due and payable
under such Ground Lease. Tenant hereby agrees to *indemnify,*
defend and
hold Landlord harmless from and against any and all damages,
losses, claims, liabilities and expenses of every nature
whatsoever (including, without limitation, attorneys fees)
arising out of Tenant's failure to comply with its obligations
under this paragraph or such Ground Lease, except for Landlord's
acts. Tenant's obligation under this subparagraph shall
continue notwithstanding the cancelation of this lease by
Landlord pursuant to subparagraph (c) of Schedule 4.1 (a).

SCHEDULE 1.1           TO LEASE
DATED DECEMBER 23  , 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD and
NINETEENTH ASHEVILLE CORP., TENANT


The premises demised and leased by the above Lease to Tenant are more particularly described in Exhibit "A" annexed hereto and made a part hereof.

All that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and be ng in the City of Asheville, County of Buncombe, North Carolina:

TRACT ONE: BEGINNING at a concrete monument in the northern margin of the right of way line of dual U.S. Highways #19-23, known as Patton Avenue, at the southeast corner of the lands of Wachovia Bank and Trust Company and running thence with the line of said Bank, N 12-52 W 227 feet to a concrete monument; thence S 89-45 W 119.3 feet to a concrete monument in the right of way line of Louisiana Avenue; thence N 36-57 W 221.5 feet to an iron in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue N 28-51 W 63.5 feet to an iron pipe; the Joyner corner; thence with Joyner S 81-17 E 234.57 feet to an iron pipe; thence still with Joyner N 3-7 E 161.69 feet to a concrete monument, the Joyner northeast corner; thence with Joyner N 78-27 W 353.92 feet to an iron in the eastern margin of Louisiana Avenue; thence with the eastern Margin of Louisiana Avenue N 19-26 W 87.85 feet; thence still with said Avenue N 5-22 W 100 feet; thence S 86-10-30 E 114.09 feet to an iron pipe; thence N 7-20 E 52.86 feet, corner with Hargus; thence with Hargus S 76-10-30 E 124.63 feet; thence N 7-34-30 E 93.99 feet; thence N 5-50 E 181.17 feet; thence S 70-45 E 312 feet to an iron; , thence N 37-24 E 148.93 feet to an iron; thence S 70-11 E 573.02 feet to an iron in Hawkins Lane; thence with Hawkins Lane S 27-56 W 386.4 feet to a concrete monument; thence N 82-15 W 113.79 feet to an iron; thence S 32-53-30 W 193.5 feet to a concrete monument; thence S 23-27 W 165.86 feet to a concrete monument; thence S 85-57-30 E 17.59 feet to a dogwood tree; thence S 20-50-30 E 290.35 feet to an existing spike in the northern margin of Patton Avenue; thence with the northern margin of Patton Avenue S 85-26-30 W 350.45 feet to a concrete monument; thence still with the northern margin of Patton Avenue S 87-34 W 25 feet to the point of Beginning. Subject, however, to right of way for the widening of Hawkins Lane and the right of way for the widening of Louisiana Avenue.

TRACT TWO: BEGINNING at an iron pipe in the eastern margin of Louisiana Avenue, Wells' northwest corner, and running thence with the Wells' line, S 81-17 E 234.57 feet to an iron in the line of the land of G-E, Inc.; thence with said line N 3-7 E 161.69 feet to a monument at a 24 inch pin, corner with Shelton; thence with the Shelton line N 78-27 W 353.92 feet to an iron pipe in the eastern margin of Louisiana Avenue; thence with the eastern margin of Louisiana Avenue S 19-26 E 12.15 feet and S 28-51 E 211.54 feet to the point of Beginning.

EXHIBIT "A"

SCHEDULE 1.2 (b)       TO LEASE
DATED DECEMBER 23 , 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD and
NINETEENTH ASHEVILLE CORP., TENANT

1. Lease dated December 18,1964 from Patton Avenue Development Corporation to S. S. Kresge (memorandum of lease recorded in Book 918, page 279).

2. Lease dated May 6, 1966 from Patton Plaza Associates to Bancroft Realty Company (Eckerd's Drugs,Inc.)

3. Lease dated June 11, 1972 from Nineteenth Asheville Corp. to Piece Goods Shops, Inc. of North Carolina.

4. Lease dated February 12, 1974 from Nineteenth Asheville Corp. to Blazer Financial Services, Inc.

SCHEDULE 1.2(h)        TO LEASE
DATED  DECEMBER $\partial 3$  , 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD And
NINETEENTH ASHEVILLE CORP., TENANT

Deed of Trust held by John F. Shuford as Trustee for the Penn Mutual Life Insurance Company dated January 27, 1966 in the original amount of $1,275,000.00 recorded in Deed of Trust Book 697 page 91 Buncombe County Registry.

This mortgage has been subordinated to the leasehold estate herein.

SCHEDULE 1.2 (i)   TO LEASE
DATED DECEMBER   23, 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD and
NINETEENTH ASHEVILLE CORP., TENANT

1.    Taxes subsequent to those for the year 1975.

2.    Rights of parties in possession, encroachments, overlaps,
      overhangs, unrecorded easements, deficiency in quantity
      of ground, or any matters not of record, which would be
      disclosed by an accurate survey and inspection of the
      premises.

3.    Easements to Southern Bell Telephone and Telegraph Company
      of record in Book 559, Page 460; Deed Book 667, Page 517;
      Deed Book 670, Page 50; Deed Book 708, Page 382; Carolina
      Power and Light Company, Deed Book 621, Page 135.

4.    Easement to Wachovia Bank and Trust Company as set forth
      in Deed Book 894, Page 457, Buncombe County Registry,
      affecting Tract One.

5.    Terms, covenants and conditions of that certain lease and
      amendments thereto from Martin Bruce and wife, Sylvia Bruce
      dated February 1, 1966.

6.    Rights of others in and to the use of drainage easements
      and roadway easements as contained in Book 1085, Page 359.

7.    Restrictions appearing of record in Book 1085, Page 359.

8.    Title to that portion of the property within the bounds
      of Hawkins Lane and Louisiana Avenue.



SCHEDULE 2.1     TO LEASE
DATED DECEMBER 23  , 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD and
NINETEENTH ASHEVILLE CORP., TENANT

### TERM

The initial term shall be for the balance of the initial

term of the MARTIN BRUCE AND SYLVIA BRUCE Ground Lease referred

to in Schedule 1.2(i) which initial term commenced on

February 1, 1966 and expires on January 31, 1996, which

latter date is the date of expiration of the initial term

of this lease.

SCHEDULE 2.2 TO LEASE
DATED   DECEMBER 23 , 1975
BETWEEN ASHEVILLE K-M ASSOCIATES , LANDLORD and
NINETEENTH ASHEVILLE CORP., TENANT


Tenant is hereby given and granted the irrevocable
and absolute right to renew and extend this lease for three
(3) successive renewal terms of 23 years each, the first
renewal term to commence on February 1, 1996, such renewal
to be exercised, by written notice by certified mail within
30 days of receipt of similar notice that landlord
has exercised the corresponding option under the
Ground Lease.

SCHEDULE 4.1 (a)   TO LEASE
DATED DECEMBER 23 , 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD and
NINETEENTH ASHEVILLE CORP., TENANT

(a)   The annual basic rent payable by the Tenant under this lease shall be at the annual basic rent of Ninety six thousand ($96,000.00) Dollars, per year payable in equal monthly installments in advance, commencing with the date hereof, and on the first day of each month and thereafter until the expiration of the term of this lease.

(b)   Notwithstanding anything herein provided, as the Purchase Money Second Mortgage is reduced by payments on account of principal thereof, the above annual basic rent shall be reduced by a sum equal to Four (4%) percent of the amount of each such reduction when, as and if the hereinbefore referred to Purchase Money Second Mortgage on the demised premises shall no longer be in force and effect, the annual basic rent payable by the Tenant shall be reduced to Sixty Thousand ($60,000.00) Dollars per year for the balance of the term of this Lease.

(c)   In addition to the foregoing items, tenant shall pay all the rents and all other charges and obligations payable under the Ground Leases as set forth in Schedule 1.2(i) at least 20 days prior to the date upon which rents and all other charges and obligations are due and payable and tenant's failure so to do shall render this lease null and void and without further force and effect if tenant shall fail to cure this default within five (5) days after receipt of written notice of said default from landlord.

SCHEDULE 4.1 (bb) TO LEASE
DATED DECEMBER 23, 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD
and
NINETEENTH ASHEVILLE CORP., TENANT

(a)  The further Additional Annual Basic Rent referred to in Section 4.1 (bb) shall be the sum of (i) 50% of Tract 1 Net Overage Rents and (ii) 50% of Tract 2 Net Overage Rents.

(b)  As used herein, the following terms shall have the following respective meanings:

Tract 1 Overage Rents.  During any calendar year, aggregate rentals paid by sublessees of Tract 1 (such lessees being, on the date hereof, S.S. Kresge Co., Eckerd Drugs, Inc., Piece Goods Shops, Inc. and Blazer Financial Services, Inc.) less the lesser of (i) aggregate rentals collected in 1974 with respect to Tract 1 from such sublessees or (ii) the aggregate rentals collected in 1975 with respect to Tract 1 from such sublessees.

Tract 2 Overage Rents.  During any calendar year, aggregate rentals paid by sublessees of Tract 2 less the lesser of (i) $40,000 or (ii) aggregate initial rentals actually paid by sublessees of each of the stores on Tract 2.

Tract 1 Net Overage Rents.  Tract 1 Overage Rents, less (to the extent not borne by the sublessees of Tract 1) the aggregate amount of (i) any increase in real property taxes for Tract 1 over the current real property taxes ($25,358.00), (ii) any increase in Hazard Insurance Premiums for Tract 1 over the current amount of such premiums ($2,424.00) and (iii) the currently amortizable portion (determined in accordance with applicable Internal Revenue Service guide- lines) of any major repairs effected after the date hereof

by Tenant to the improvements erected on Tract 1.

Tract 2 Net Overage Rents.   Tract 2 Overage Rents, less (to the extent not borne by the sublessees of Tract 2) (i) any increase in real property taxes over the amount of such taxes for the first fully assessed tax year for Tract 2, (ii) the amount of any increase in Hazard Insurance Premiums over the amount of such premiums for the first year in which all or substantially all of Tract 2 is occupied and (iii) the currently amortizable portion (determined in accordance with applicable Internal Revenue Service guidelines) of any major repairs effected after the date hereof by Tenant to the improvements erected on Tract 2, provided that, if, during the course of leasing this vacant space, Tenant is able to rent at a higher per square foot figure than $4.00 per square foot only by making extensive tenant alterations and if said square foot rental exceeds $6.00 per square foot per year, then Tenant may also treat such tenant alterations as a major repair hereunder.

(c)   All further Additional Annual Basic Rent referred to herein shall be paid to Landlord within fifteen (15) days after Tenant's receipt of the Tract 1 Overage Rents or the Tract 2 Overage Rents, as the case may be, and, in any event, within sixty (60) days after the end of the calendar year with respect to which such further Additional Annual Basic Rent is payable.

(d)   There shall be no offsets of income or expenses between Tracts 1 and 2 for the purpose of computation of Overage Rents.

SCHEDULE 9.2 (a) (i)   TO LEASE
DATED DECEMBER 33 , 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD and
NINETEENTH ASHEVILLE CORP., TENANT

The insurance required to be carried by the Tenant shall be in companies authorized to do business in the State of New York and the State of North Carolina.

The limits of coverage are as follows:

    (a)  On account of any accident resulting in injuries to or in the death of one person - $1,000,000.00.

    (b)  On account of any accident resulting in injuries to or in the death of more than one person - $2,000,000.00.

    (c)  On account of damage to property - $250,000.00.

Said insurance coverage shall include malicious mischief and vandalism coverage and the policy shall contain a full cost of recovery endorsement.

SCHEDULE  15.1(b)    TO LEASE
DATED  DECEMBER 23 , 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD and
NINETEENTH ASHEVILLE CORP., TENANT

$700,000.00

SCHEDULE  15.1 (c)     TO LEASE
DATED DECEMBER  *23*  , 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD and
NINETEENTH ASHEVILLE CORP., TENANT

$350,000.00

SCHEDULE   38           TO LEASE
   DATED DECEMBER  23    , 1975
BETWEEN ASHEVILLE K-M ASSOCIATES, LANDLORD and
NINETEENTH ASHEVILLE CORP., TENANT


STATE OF NORTH CAROLINA