# EXHIBIT 25

# J & W Management Corp.

505 Park Avenue, Suite 302, New York, New York 10022

TEL (212) 400-2424
FAX (212) 400-2425

April 23, 2014

Mr. Paul Bruce
Paul Bruce, Inc.
2402 Jackstay Terrace
Reston, VA 20190-2619

**(Via Federal Express)**

and

Ashville K-M Associates
c/o P & A Green Holdings, LLC
435 Park Avenue, 27th Floor
New York, NY 10022

**(Via Hand Delivery)**

RE: **1001 Patton Avenue**
   **Asheville, North Carolina (the "Shopping Center")**

Ladies and Gentlemen:

Since August of 2011, Kmart has been negotiating a sublease with Golden Corral wherein the subtenant would demolish the existing 8,149 square feet vacant auto shop and construct a new 12,500 square feet restaurant. Such transaction would greatly enhance the Shopping Center. As the term of the proposed sublease would extend beyond the current term of the Kmart lease, Golden Corral requires assurance from each of us that its possession of its premises will not be disturbed in the event of the prior termination of the Kmart Lease. A form of Non-Disturbance Consent and Attornment Agreement (the "NDA") is enclosed for your review.

The key provisions of the NDA are as follows:

1. The Golden Corral sublease (the "Sublease") would have a twenty year term.
2. Master Landlord is entitled to receive 50% of the Base Rent received by Kmart under the Sublease. Master Landlord is also obligated to share certain expenses for demolition of the existing improvements and removal of equipment and fixtures.
3. Master Landlord will receive the following annual amounts from Kmart following commencement of rent payments by Golden Corral:

|  |  |
|---|---|
| Years 1-5 | $53,250.00 |
| Years 6-10 | $59,125.00 |
| Years 11-15 | $65,037.50 |
| Years 16-20 | $71,541.25 |

Page Two
April 23, 2014

Such sums are substantially in excess of the slightly more than $16,000 in annual rent which Landlord receives from Kmart on the auto shop.

4. Kmart will continue to pay full rent on the auto shop until Golden Corral's rent commencement date, fifteen months after it receives possession of its premises in construction-ready condition.
5. Golden Corral will be responsible for ongoing repairs and maintenance of its new building.
6. Golden Corral is granted a "Protected Area" for tenant's business purposes in the portion of the parking lot shown on the attached exhibit.
7. Tenant's obligations under the Sublease are guaranteed by a financially responsible entity.
8. If the Kmart Lease should expire prior to the termination of the Sublease, Master Landlord will succeed to Kmart's position under the Sublease and Golden Corral will have undisturbed possession so long as it complies with the provisions of the Sublease, including paying 100% of all rent due thereunder to the Master Landlord.
9. Master Landlord has the right to commence an action directly against Golden Corral for defaults under the Sublease.

We believe that Golden Corral's presence would be a major benefit to the Shopping Center, substantially increasing our current rental stream. In addition, if Kmart should terminate its lease at some point in the future, the Golden Corral rent will help to cover the loss of income until such time as a replacement tenant for Kmart can be found.

Please let me know as soon as possible if the NDA is acceptable to you.

Very truly yours,

Glenn S. Howarth, Esq.
General Counsel

GSH/vo/Name/Bruce.doc

## **NON-DISTURBANCE, CONSENT AND ATTORNMENT AGREEMENT**

THIS NON-DISTURBANCE, CONSENT AND ATTORNMENT AGREEMENT (the "**Agreement**") is entered into this ____ day of _____, 2014 by and among GCP REAL XVI (ASHEVILLE), LLC, a North Carolina limited liability company, with a business address of 3816 Forrestgate Drive, Winston-Salem, NC 27103("**Subtenant**"), THE STEVEN BRUCE REVOCABLE TRUST, with an address of 867 Kansas Street, San Francisco, CA 94107 (The "Steven Bruce Trust"), THE CARA BRUCE IRREVOCABLE TRUST, with an address of 2402 Jackstay Terrace, Reston, VA 20190-2619 ("The Cara Bruce Trust"); THE ALLISON BRUCE IRREVOCABLE TRUST, with an address of 2402 Jackstay Terrace, Reston, VA 20190-2619 ("The Allison Bruce Trust") (The Steven Bruce Trust, The Cara Bruce Trust and The Allison Bruce Trust, are collectively referred to as "**The Bruce Interests**"), ASHEVILLE K-M ASSOCIATES, LLC, a North Carolina limited liability company ("**AKMA**") with an address c/o P&A Green Holdings, LLC at 425 Park Avenue, 27th Floor, New York, NY 10022 (the "Green Interests"), WALTER R. SAMUELS and MARILYN JOY SAMUELS, with an address c/o J&W Management Corp. 505 Park Avenue, Suite 302, New York, NY 10022, (Walter R. Samuels and Marilyn Joy Samuels are collectively referred to as the "Samuels" and "**Master Landlord**") and KMART CORPORATION whose address is c/o Sears Holdings Management Corporation, 3333 Beverly Road, A2-385B, Hoffman Estates, IL 60179 ("**Sublandlord**").

## WITNESSETH:

The parties identified herein have interests, as such interests are identified herein, in that certain shopping center located at real property commonly known as 1001 Patton Avenue, Asheville, North Carolina, 28806, described in **Exhibit A** and depicted in **Exhibit A-1** (both made a part hereof by reference, which as used herein, shall be referred to as the "**Shopping Center**");

The fee ownership of Shopping Center is held by The Bruce Interests.

The Bruce Interests have leased the Shopping Center to AKMA, which vested the Green Interests with full management authority for the Shopping Center.

AKMA / The Green Interests subleased the Shopping Center to the Samuels as tenants in common, who previously operated the Shopping Center property under an assumed name "Nineteenth Asheville Properties";

The Samuels, as Master Landlord, have subleased the Shopping Center to Sublandlord pursuant to that certain Sublease, dated December 18, 1964, by and between Patton Avenue Development Corporation, a North Carolina corporation, succeeded in interest by Master Landlord and Sublandlord, as successor in interest to S.S. Kresge Company (the "**Master Lease**"); and,

Subtenant has entered into a Ground Sublease dated _____ ____, 2014 to lease that certain pad site containing approximately 12,500 square feet of land which portion is the former Kmart auto center pad (the "**Premises**") within the Shopping Center (the "**Sublease**"); and

The parties wish to confirm certain terms and conditions of Subtenant's use of the Shopping Center as set forth in the Sublease for the full term therein specified, irrespective of the termination of the Master Lease or any other interests identified herein;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements herein contained, the parties hereto agree as follows:

1. **Incorporation of Recitals / Defined Terms**. The recitals set forth above are substantive portions of this Agreement and are incorporated herein by reference. Capitalized terms used herein without definition shall have the meanings given to them in the Sublease.

2. **Interest Holders' Consent and Agreement**. The Bruce Interests, AKMA / The Green Interests, and Master Landlord (collectively the "**Interest Holders**"), each individually with respect to its interest in the Shopping Center, hereby consent and agree:

    a. To the subleasing of the Premises by Sublandlord;
    b. Except as expressly modified herein, the Interest Holders each consent to all of the terms and conditions of the Sublease, including, without limitation:
        i. Designation of a "Protected Area" for Subtenant's business purposes, as the terms and conditions of such Protected Area is set forth in the Sublease, and depicted on the attached and incorporated **Exhibit A**, attached hereto;
        ii. Use of portions of the Shopping Centers for Subtenant's construction staging area, as such Staging Area is depicted on **Exhibit A**, attached hereto; and,
        iii. Subtenant's right to seek to have the Premises designated a separate tax parcel;
    c. To Sublandlord's "Sublease Rent-Share" obligations and "Auto-Center Rent Termination" (regarding, exclusively, the current auto-center area), both as detailed below in **Section 3**.

2

d. That Master Landlord shall pay demolition and equipment/fixture removal costs for the razing of the current improvements in place at the Premises and construction of new improvements at the Premises, as follows:
   i. Master Landlord shall pay fifty percent (50%) of the demolition expenses ("**ML Demolition Expense**") to raze the improvements currently in place at the Premises, provided that ML Demolition Expense shall be capped at $50,000;
   ii. Master Landlord shall pay fifty percent (50%) of the equipment / fixture removal expenses ("**ML E/F Removal Expense**") to remove the automobile lifts and oil-water separator equipment currently installed at the Premises, provided that ML E/F Removal Expense shall be capped at $30,000.
   iii. Master Landlord shall pay the ML Demolition Expense and ML E/F Removal Expense to Sublandlord within thirty (30) days of Sublandlord's delivery to Master Landlord of invoices for such work paid by Sublandlord.
e. To not disturb Subtenant's, and its successors or assigns', quiet possession of the Premises under the Sublease, nor deprive Subtenant of any of its rights, privileges or immunities thereunder, including its use of the building and improvements therein if the Sublease so provides, and shall not impose any additional obligations upon Subtenant not specifically provided for in the Sublease, unless and until an Event of Default (as defined in the Sublease) occurs or the Sublease is otherwise terminated pursuant to its terms.
f. That if and when the Master Lease shall expire or is otherwise terminated, provided that there are additional Sublease Years remaining pursuant to the Sublease (including pursuant to any optional renewal period), Master Landlord shall succeed to the position of the Sublandlord under the Sublease;
g. That if and when the Master Lease shall expire or is otherwise terminated, or should Sublandlord cease operating at the building occupied by Sublandlord within the Premises, provided that there are additional Sublease Years remaining pursuant to the Sublease, notwithstanding any other terms or conditions of the Sublease or this Agreement, including without limitation the "Exclusive Use" provision of Section 4(a) of the Sublease for the benefit of Subtenant, Master Landlord may utilize the building occupied by Sublandlord within the Premises ("**Sublandlord's Building**"), or permit the use of

    vi. All Rent sharing obligations between Sublandlord and Master Landlord shall continue at rate of the ML Portion for the Term, as extended, under the Sublease.

Master Landlord acknowledges that the obligation to pay the ML Portion shall be the sole obligation of Sublandlord upon Subtenant's payment of Base Rent to Sublandlord.

  b. **"Auto-Center Rent Payment Termination"**. Sublandlord shall continue to pay rent to Master Landlord for the current auto-center (specifically, the 8,149 feet of space designated currently as the auto-center) as required by the Master Lease through the date that Subtenant commences paying Base Rent to Sublandlord under the Sublease (the **"Rent Commencement Date"**, as defined in Section 1(w) in the Sublease). Upon the occurrence of the Sublease's Rent Commencement Date, Sublandlord's obligation to pay rent to Master Landlord for the current auto-center as required by the Master Lease shall automatically terminate, and the Sublease Rent Obligation, detailed in the preceding subsection, shall commence.

  c. Master Lease Amendment: Upon the occurrence of the events set forth in this Section 3, Master Landlord and Sublandlord shall memorialize such occurrences by way of the appropriate Amendment to the Master Lease consistent with the provisions of this Section 3.

  d. Sublandlord acknowledges that Subtenant, upon written notice from Master Landlord, whether due to the termination of the Master Lease, or such notice otherwise properly issued by Master Landlord under this Agreement or the Sublease, shall be authorized to make payments of Rent due under the Sublease directly to Master Landlord and such payment shall be in full satisfaction of Subtenant's liability with respect to that Rent payment.

4. **Subtenant's Covenants.** Subtenant hereby covenants and agrees:

  a. That it shall be bound under all of the terms, covenants, and provisions of the Sublease;

  b. That, in the event of an expiration of the Master Lease prior to the expiration or termination of the Sublease, and upon receipt of written notice from Master Landlord hereof, Subtenant will:

    i. attorn to Master Landlord and Master Landlord shall accept such attornment;

    ii. recognize Master Landlord as landlord under the Sublease; and,

5

Sublandlord's Building, or any portion thereof, for a buffet-style restaurant, irrespective of whether such buffet-style restaurant competes with Subtenant's business; and,

    h. That in the event of a termination of the Master Lease between Master Landlord and Sublandlord, the Sublease, if then in existence, and subject to the provisions hereof with respect to an Event of Default on the part of Subtenant, shall continue in full force and effect and Master Landlord and Subtenant will enter into an agreement supplemental hereto containing the same terms and conditions as those contained in the Sublease.

3. **Sublandlord's Covenants.**

    a. "Sublease Rent-Share": For so long as the Sublease is in full force and effect, Sublandlord hereby agrees that while Subtenant and/or its successors or assigns are paying to Sublandlord Base Rent, Master Landlord shall be entitled to receive payment from Sublandlord of fifty percent (50%) of the Base Rent received by Sublandlord from Subtenant under the Sublease (the "**ML Portion**") as provided for under the following "**Sublandlord Rent Payment Schedule**":

        i. Sublandlord shall pay the ML Portion to Master Landlord within ten (10) business days of Sublandlord's receipt of the Base Rent. Any ML Portion owing for a partial calendar month shall be paid to Master Landlord on the last day of the first full calendar month of the Sublease Term.

        ii. Sublease Years 1 through 5: Subtenant's Annual Base Rent shall be $107,500, paid in installments of Monthly Payments of $8,958.33, and the ML Portion shall be $53,750 annually, paid in monthly installments of $4,479.16;

        iii. Sublease Years 6 through 10: Subtenant's Annual Base Rent shall be $118,250, paid in installments of Monthly Payments of $9,854.17, and the ML Portion shall be $59,125 annually, paid in monthly installments of $4,927.09;

        iv. Sublease Years 11 through 15: Subtenant's Annual Base Rent shall be $130,075, paid in installments of Monthly Payments of $10,839.58, and the ML Portion shall be $65,037.50 annually, paid in monthly installments of $5,419.79;

        v. Sublease Years 16 through 20: Subtenant's Annual Base Rent shall be $143,082.50, paid in installments of Monthly Payments of $11,923.54, and the ML Portion shall be $71,541.25 annually, paid in monthly installments of $5,961.77; and,

      iii. pay one hundred (100%) percent of the rentals reserved in the Sublease to Master Landlord for the remainder of the Sublease, including any extensions thereof.

  c. That from and after any termination of the Master Lease, and if Subtenant's right to possession shall have been preserved, Subtenant shall:

      i. Attorn to Master Landlord and Master Landlord shall accept such attornment;

      ii. Shall recognize said Master Landlord as the "Sublandlord" under the Sublease; and

      iii. Shall pay to Master Landlord one hundred (100%) percent of the rentals reserved in said Sublease for the remainder of the Sublease and any extensions thereof. Master Landlord shall have the same remedies by entry, action or otherwise for the non-performance of any agreement contained in the Sublease, as Sublandlord would have had if the Master Lease had not terminated.

  d. That notwithstanding any other terms or conditions of the Sublease or this Agreement, including without limitation the "Exclusive Use" provision of Section 4(a) of the Sublease for the benefit of Subtenant, should Sublandlord cease operating at the building occupied by Sublandlord within the Premises ("Sublandlord's Building") for any reason, Master Landlord may use, or permit the use of Sublandlord's Building, or any portion thereof, for a buffet-style restaurant, irrespective of whether such buffet-style restaurant competes with Subtenant's business.

5. **Collection Actions under Sublease.** If Subtenant defaults under the Sublease by failing to pay Rent when due (a "**Non-Payment Default**"), then:

  a. If Sublandlord fails within thirty (30) days of the alleged Non-Payment Default to take required actions in order to default Subtenant under the Sublease, then Master Landlord may issue to Sublandlord a written notice of intent to commence a default action against Subtenant (the "**ML Required Default Notice**");

  b. If Sublandlord then fails, within ten (10) days of its receipt of the ML Required Default Notice, to take required actions in order default Subtenant under the Sublease, then Master Landlord may pursue the appropriate actions against Subtenant to default Subtenant and seeks appropriate remedy from Subtenant as permitted under the Sublease (the "**Master Landlord Proceedings**"). If Master Landlord commences Master Landlord Proceedings, then Sublandlord shall be responsible for one-half (1/2) of the costs and expenses of the Master Landlord Proceedings.

6

6. **No Amendment of Master Lease.** Master Landlord and Sublandlord acknowledge that this Agreement is a separate agreement from the Master Lease and shall not modify or amend the Master Lease in any way. Nothing contained herein shall be deemed to diminish in any respect the obligations of Sublandlord to Master Landlord under the Master Lease, including the amount of its rent specified therein, nor increase any obligation of Sublandlord to Master Landlord under the Lease.

7. **Miscellaneous**.

   a. The term "Master Landlord" as used herein shall mean only the owner for the time being of the Premises, so that in the event of any sale of the Premises, the Samuels shall be and is entirely free and relieved of all covenants and obligations of the Master Landlord hereunder; *provided however*, that this Agreement shall bind any subsequent owner of the premises, its successors or assigns.

   b. Except as herein specifically modified and amended, all of the covenants, agreements, restrictions, rights, privileges and obligations of the Master Lease and Sublease shall remain in full force and effect, and is not otherwise modified.

   c. This Agreement is to be governed and construed by the laws of the State of North Carolina.

   d. This Agreement and each and every covenant and other provision hereof shall be binding upon and be for the benefit of the parties hereto and their heirs, executors, administrators, representatives, successors, assigns and sub-lessees.

   e. The Interests Holders, Sublandlord and Subtenant all represent and warrant to each other party to this Agreement that it has the full power and authority to enter into this Agreement and that no such party needs the consent of any other party, including the holder of any mortgage on the Premises.

   f. Any notices which any party hereto may desire or may be required to give to any other party shall be in writing and the delivery thereof by Certified Mail or overnight express courier service to the following addresses or to such other places any party hereto may by notice in writing designate, shall constitute service of notice hereunder:

SUBTENANT:                          GCP REAL XVI (ASHEVILLE), LLC
                                    c/o GC Partners, Inc.
                                    3816 Forrestgate Drive

|  |  |
|---|---|
|  | Winston-Salem, NC 27103<br>Attention: David Gronewoller |
| SUBLANDLORD: | Kmart Corporation<br>c/o Sears Holdings Management Corporation<br>3333 Beverly Road, A2-385B<br>Hoffman Estates, IL 60179 |
| *On behalf of all Interest Holders*:<br>MASTER LANDLORD: | Walter & Marilyn Samuels<br>c/o J&W Management Corp.<br>505 Park Avenue, Suite 302<br>New York, New York 10022<br>Attention: Glenn S. Howarth, Esq.<br>General Counsel |

g. This Agreement may be executed in any number of counterpart originals, each of which, when taken together, shall be deemed to be one and the same instrument. Executed copies of this Agreement may be delivered between the parties via facsimile or electronic mail, and such shall be deemed effective and binding upon the parties the same as if such document was an original.

h. Each Party to this Agreement acknowledges that Section 37 of the Sublease governs payment of any brokers' commissions due under the Sublease.

*[Balance of Page Intentionally Blank / Signature Page Follows]*

8

IN WITNESS WHEREOF, the parties hereto have duly executed this NON-DISTURBANCE, CONSENT AND ATTORNMENT AGREEMENT as of the day and year first above written.

ATTEST:

_____

SUBLANDLORD:

**KMART CORPORATION,**
a Michigan corporation

By: _____
James B. Terrell, Vice President Real Estate

ATTEST:

_____

SUBTENANT:

**GCP REAL XVI(ASHEVILLE), LLC,**
a North Carolina limited liability company

By: _____
David E. Gronewoller, Manager

ATTEST:

_____

MASTER LANDLORD:

**WALTER R. SAMUELS**

_____

**MARILYN J. SAMUELS**

_____

ATTEST:

_____

THE BRUCE INTERESTS:

**THE STEVEN BRUCE REVOCABLE TRUST**

_____
Paul Bruce, Trustee

9

|                              | **THE CARA BRUCE IRREVOCALBE TRUST** |
|------------------------------|--------------------------------------|
| _____ | By: _____<br>Paul Bruce, Trustee |

 

|                              | **THE ALLISON BRUCE IRREVOCALBE TRUST** |
|------------------------------|-----------------------------------------|
| _____ | By: _____<br>Paul Bruce, Trustee |

ATTEST:

_____

AKMA / GREEN INTERESTS:

**ASHEVILLE K-M ASSOCIATES, LLC,**
a North Carolina limited liability company

By:   P&A Green Holdings, LLC
      A Delaware limited liability company

By: _____
      Manager

ACKNOWLEDGEMENTS

**TENANT NOTARY:**
STATE OF NORTH CAROLINA  )
                         ) ss.:
COUNTY OF                )

On the _____ day of _____, 2014, before me personally came David E. Gronewoller, to me known to be the individual who executed the foregoing instrument and, who being duly sworn by me, did depose and say that he is the Managing Member of GCP REAL XVI (ASHEVILLE), LLC, and he acknowledged that he executed said instrument as to act and deed of GCP REAL XVI (ASHEVILLE), LLC, a North Carolina limited liability company for the purposes set forth therein.

_____
Notary Public

**SUBLANDLORD NOTARY:**
STATE OF ILLINOIS        )
                         ) ss.:
COUNTY OF COOK           )

On the _____ day of _____, 2014, before me personally came James B. Terrell, to me known to be the individual described in and who executed the foregoing instrument, and to me known to be the Vice President Real Estate of Kmart Corporation, a Michigan corporation, and that he acknowledged that he executed said instrument pursuant to the authority duly given to him by said corporation.

_____
Notary Public

**MASTER LANDLORD NOTARY:**
STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

On the _____ day of _____, 2014, before me, personally came Walter R. Samuels, to me known to be the individual described in and who executed the foregoing instrument in his individual capacity, and he acknowledged that he executed said instrument as his act and deed for the purposes set forth therein.

_____
Notary Public

11

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

    On the _____ day of _____, 2014, before me, personally came Marilyn J. Samuels, to me known to be the individual described in and who executed the foregoing instrument in her individual capacity, and she acknowledged that she executed said instrument as her act and deed for the purposes set forth therein.

 

_____
Notary Public

**BRUCE INTERESTS NOTARY:**
STATE OF              )
                      ) ss.:
COUNTY OF             )

    On the _____ day of _____, 2014, before me, personally came Paul Bruce, to me known to be the individual described in and who executed the foregoing instrument in his individual capacity, and he acknowledged that he executed said instrument as his act and deed for the purposes set forth therein.

_____
Notary Public

STATE OF              )
                      ) ss.:
COUNTY OF             )

    On the _____ day of _____, 2014, before me, personally came _____, to me known to be the individual described in and who executed the foregoing instrument, and to me known to be the Trustee of The Cara Bruce Irrevocable Trust, and he acknowledged that he executed said instrument as the act and deed of said Trust for the purposes set forth therein.

_____
Notary Public

STATE OF                   )
                                  ) ss.:
COUNTY OF               )

On the _____ day of _____, 2014, before me, personally came _____, to me known to be the individual described in and who executed the foregoing instrument, and to me known to be the Trustee of The Allison Bruce Irrevocable Trust, and he acknowledged that he executed said instrument as the act and deed of said Trust for the purposes set forth therein.

                                                                     _____
                                                                                          Notary Public

**AKMA / GREEN INTERESTS NOTARY:**
STATE OF NEW YORK           )
                                         ) ss.:
COUNTY OF NEW YORK     )

On the _____ day of _____, 2014, before me personally came Alice Green, to me known to be the individual who executed the foregoing instrument and, who being duly sworn by me, did depose and say that she is the Manager of ASHEVILLE K-M ASSOCIATES, LLC, a North Carolina limited liability company, fully vested with authority to manage the interests that are the subject matter of this Agreement, and authorized to execute this Agreement on behalf of ASHEVILLE K-M ASSOCIATES, LLC.

                                                                     _____
                                                                                          Notary Public

**Exhibit A**
Subtenant's Protected Area / Staging Area Depiction

147265.151097 #10040975-1

14



SEARS HOLDINGS — REAL ESTATE DEPARTMENT — 4112 Ashville NC. — EXISTING AERIAL