# EXHIBIT 31

# SEARS HOLDINGS

Elizabeth Williams, Esq.
Associate General Counsel, Real Estate

Sears Holdings Management Corporation
3333 Beverly Road, BC-131B
Hoffman Estates, Illinois 60179
Writer's Direct Dial: (847) 286-1210
Fax: (847) 286-2286

August 15, 2018

<u>By Overnight Federal Express with a copy via Email</u>

The Allison Bruce Irrevocable Trust
The Cara Bruce Irrevocable Trust
The Steven Bruce Revocable Trust
2402 Jackstay Terrace
Reston, Virginia 20190-2619

   RE:  1001 Patton Avenue, Asheville, North Carolina
       K#4112

Dear Landlord:

We are in receipt of your letter dated August 6, 2018 ("Letter"). In order to avoid continued lengthy correspondence and for ease, any capitalized words used herein and not otherwise defined shall have the meanings given them in your Letter. To clarify and clear up any misconceptions, please see below.

1.  The Kmart Lease was entered into on December 18, 1964 between the then fee owner of the Premises and Kmart. The Kmart Lease was placed of record by Memorandum of Lease recorded in the county in which the Premises are located in Deed Book 918, page 279. Both the Lease and the Memorandum of Lease clearly stated that the conditions, covenants and agreements contained in the Lease are binding upon and inure to the benefit of the parties, their respective heirs, administrators, executors, successors and assigns. Further, both the Lease and the Memorandum of Lease state that the covenants and agreements of the Lease shall run with the land.

2.  Any and all future owners of the Premises ("Fee Owners") and their tenants, subtenants, assignees, licensees, etc. and all of the intervening leases (including without limitation the Ground Lease and the Sandwich Lease) all took subject to the Lease. The Lease remains a binding obligation on the Premises and the Fee Owners by virtue of being "first in time".

3.  You are correct in your footnote 2 of the Letter that customarily, a subtenant would want a recognition agreement. I assume the Golden Corral documents referenced in footnote 2 were requested and/or required by Golden Corral to protect their interest so that they would not be "wiped out" by a

The Allison Bruce Irrevocable Trust
The Cara Bruce Irrevocable Trust
The Steven Bruce Revocable Trust
August 15, 2018
Page (2)

termination of the prior Ground Lease and/or Sandwich Lease. However, as set forth above, Kmart and the Kmart Lease are prior and superior to the Ground Lease and the Sandwich Lease and, therefore, Kmart has no need for a recognition agreement from the Fee Owners since they took subject to the Kmart Lease. It is already a direct lease with the Fee Owners if any or all of the intervening leases are terminated.

4. So, the only real question at issue is whether Kmart could rely upon NAP as having authority to enter into the Second Amendment to Kmart Lease and the Third Amendment to Kmart Lease. The Ground Lease specifically granted the tenant thereunder the authority to deal with Kmart (including without limitation collecting all rents and other amounts due under the Kmart Lease). The only limitations on this authority are set forth in Section 13.10 of the Ground Lease which provides that the tenant under such Ground Lease shall not, without the prior written consent of the Fee Owners enter into any agreement affecting the Kmart Lease which would:

a. reduce rent;
b. shorten the term;
c. permit cancellation or surrender thereof;
d. impair the value of the lease; or
e. accept prepayment of rent of more than one month.

Per the specific terms of the Ground Lease, the only amendments that would require the Fee Owner's consent would be those containing the above. Therefore, all other amendments are authorized. NOTE, that "shortening the term" requires consent, but renewing or extending the term does not require consent. If the Fee Owners wanted to limit extensions of the Kmart Lease without their consent, then they should and would have included this in the list of things requiring their consent. The renewals set forth in the Second Amendment to Kmart Lease and the Third Amendment to Kmart Lease are authorized and binding upon the Fee Owners.

To summarize, Kmart has validly exercised the renewal option extending the Kmart Lease to November 30, 2022. The amendments containing the renewal option and the future renewal options were authorized by the grant of authority set forth in the Ground Lease and are binding upon the Fee Owners. The Kmart Lease is superior to the Ground Lease and all other intervening leases and, therefore, upon their termination, it will remain a direct lease between the Fee Owners and Kmart.

Given the legal right of Kmart to occupy the Premises, they will continue to do so as set forth in the Kmart Lease.

Thank you for your time.

Elizabeth Williams
Associate General Counsel
Sears Holdings Corporation