WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                               :

                                                    :        **Chapter 11**

**SEARS HOLDINGS CORPORATION**, *et al.*,           :

                                                    :        **Case No. 18-23538 (RDD)**

                                                    :

            Debtors.[1]                             :        **(Jointly Administered)**

-------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**NOTICE OF HEARING ON**
**APPLICATION OF DEBTORS FOR ENTRY OF**
**ORDER AUTHORIZING THE EMPLOYMENT AND**
**RETENTION OF ASK LLP AS SPECIAL AVOIDANCE ACTION**
**COUNSEL FOR DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019**

**PLEASE TAKE NOTICE** that a hearing on the annexed application (the "**Application**") of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**), for entry of order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules for the Southern District of New York (the "**Local Rules**"), to retain and employ ASK LLP as special avoidance action counsel for the Debtors, *nunc pro tunc* to April 1, 2019, all as more fully set forth in the Application, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy Court**") on **June 20, 2019 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Application shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on

WEIL:\97064433\1\73217.0004

November 1, 2018 (ECF No. 405), so as to be filed and received no later than **June 13, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

   **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered without further notice or opportunity to be heard.

   **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: June 6, 2019
  New York, New York

       _/s/ Garrett A. Fail_____
       WEIL, GOTSHAL & MANGES LLP
       767 Fifth Avenue
       New York, New York  10153
       Telephone:  (212) 310-8000
       Facsimile:  (212) 310-8007
       Ray C. Schrock, P.C.
       Jacqueline Marcus
       Garrett A. Fail
       Sunny Singh

       *Attorneys for Debtors*
       *and Debtors in Possession*

WEIL:\97064433\1\73217.0004

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                              :

                                               :      **Chapter 11**

**SEARS HOLDINGS CORPORATION**, *et al.*,          :

                                               :      **Case No. 18-23538 (RDD)**

                                               :

Debtors.[1]                                        :      **(Jointly Administered)**

                                               :

---------------------------------------------------------------x

### APPLICATION OF DEBTORS FOR ENTRY OF
### ORDER AUTHORIZING THE EMPLOYMENT AND
### RETENTION OF ASK LLP AS SPECIAL AVOIDANCE ACTION
### COUNSEL FOR DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully

represent as follows in support of this application (the "**Application**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## Relief Requested

1.     By this Application, the Debtors request, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), entry of an order authorizing the employment and retention of ASK LLP ("**ASK**") as special avoidance action counsel to the Debtors for the investigation and prosecution of, and collection of recoveries from, certain avoidance actions against non-insider non-affiliate third parties (the "**Avoidance Actions**"), effective *nunc pro tunc* to April 1, 2019 and granting related relief in accordance with the terms and conditions set forth in the engagement letter between the Debtors and ASK dated as of April, 1, 2019 (the "**Engagement Letter**").

2.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").  A copy of the Engagement Letter is annexed to the Proposed Order as **Exhibit 1**.

3.     In support of this Application, the Debtors submit the *Declaration of Joseph L. Steinfeld, Jr. in Support of Application of Debtors for Entry of Order Authorizing the Employment and Retention of ASK LLP as Special Avoidance Action Counsel for Debtors, Effective* Nunc Pro Tunc *To April 1, 2019*, a copy of which is annexed hereto as **Exhibit B** (the "**Steinfeld Declaration**"), and the Declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, which is attached hereto as **Exhibit C** (the "**Meghji Declaration**").

## Jurisdiction

4.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference M-431*, dated January 31, 2012

WEIL:\97064433\1\73217.0004

(Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

5.      Beginning on October 15, 2018, (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

6.      On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Creditors' Committee**").  The Debtors' cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

7.      On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**"). The Sale Transaction closed on February 11, 2019.

8.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on the Commencement Date (ECF No. 3).

WEIL:\97064433\1\73217.0004

**ASK's Qualifications**

9.      The Debtors seek to retain ASK as special avoidance action counsel for the investigation and prosecution of, and collection of recoveries from, certain Avoidance Actions in light of the large volume of the Debtors' prepetition transactions and because of ASK's extensive experience and knowledge in the field of avoidance recoveries.  ASK has assisted in preparing an initial preference analysis and a proposal for the recovery of the Avoidance Actions and has become familiar with the Debtors' affairs and potential legal issues which may arise in the context of the Avoidance Actions.  Thus, ASK is well suited to provide the legal services to the Debtors that are contemplated by the Engagement Letter and described herein.

10.      For over 35 years, ASK has specialized in the analysis and recovery of avoidance claims and accounts receivable.  ASK maintains law offices in midtown New York and Saint Paul, Minnesota, and has ten attorneys, two full time data analysts and eight litigation and administrative paralegals assisting in the analysis and recovery of avoidance claims.  Since 2000, ASK has sued over 75,000 defendants, recovered more than $400 million in avoidance claims, and handled hundreds of successful mediations and trials.  ASK is a large portfolio specialist that regularly handles 500+ adversary proceedings, whereby its largest filing was 1,745 cases.

11.      ASK's professionals have been retained as special counsel in a number of troubled company situations, including, among others, the following chapter 11 cases:  *In re The Wet Seal, LLC*, Case No. 17-10229 (CSS) (Bankr. D. Del. 2017); *In re Draw Another Circle, LLC*, Case No. 16-11452 (KJC) (Bankr. D. Del. 2016); *In re App Winddown, LLC*, Case No. 16-12551 (BLS) (Bankr. D. Del. 2016); *In re Fresh & Easy, LLC*, Case No. 15-12220 (BLS) (Bankr. D. Del. 2016); *In re Money Centers of America, Inc.*, Case No. 14-10603 (CSS) (Bankr. D. Del. 2015); *In re Deb Stores Holding LLC*, Case No. 14-12676 (KG) (Bankr. D. Del. 2015); *In re AFA*

WEIL:\97064433\1\73217.0004

*Investment, Inc.*, Case No. 12-11127 (MFW) (Bankr. D. Del. 2012); *In re Dreier LLP*, Case No.

08-15051 (SMB) (Bankr. S.D.N.Y. 2010).

**Services to Be Rendered**

12.    ASK has agreed to provide special counsel services to the Debtors in these

chapter 11 cases to analyze, prosecute and/or settle Avoidance Actions in accordance with the

terms and conditions set forth in the Engagement Letter.  The terms of the Engagement Letter

reflect the mutual agreement between the Debtors and ASK as to the substantial efforts that may

be required of ASK throughout the course of the Avoidance Action investigations and

prosecutions.    The Engagement Letter provides, in consideration for the compensation

contemplated thereby, that ASK will, to the extent reasonably requested by the Debtors, render the

following Avoidance Action services (collectively, the "**Services**"):[2]

> (a)    <u>Pre-Suit</u>.  ASK will attempt to recover claims before an adversary proceeding is commenced and expenses are incurred.  To procure settlements ASK will send a demand package consisting of the following documents, which will be pre-approved by the Debtors:
>
> > i.    Multi-paged customized explanatory letter regarding the preference liability;
> > ii.   Draft complaint; and
> > iii.  Settlement offer and acceptance form.
>
> ASK will attempt to make phone contact with every recipient of a preference demand to verify the package is in the right hands and to encourage the settlement option.  As part of the settlement process, ASK may share certain preference analysis reports.
>
> (b)    <u>Suit</u>.    If an action is commenced, ASK will determine whether to, and may, serve the following documents with the summons and complaints:
>
> > i.    Service cover letter; and

---

[2] In the event of any inconsistency between the description of the Services as set forth herein and the Engagement Letter, the Engagement Letter shall control.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

WEIL:\97064433\1\73217.0004

        ii.    Appropriate local forms such as a notice of dispute resolution alternatives.

ASK will again attempt to make phone contact with each recipient of a lawsuit to verify the package is in the right hands and to encourage settlement.[3]

13.      The Services are necessary to enable the Debtors to maximize the value of their estates.  ASK will coordinate with the Debtors' other retained professionals, including Katten Muchin Rosenman LLP ("**Katten**") and Acumen Recovery Services, LLC ("**Acumen**" and, together, "**Katten/Acumen**"), to avoid unnecessary duplication or overlap of work, as more fully set forth in the Engagement Letter.[4]

14.      ASK's engagement is conditioned upon the Avoidance Actions being divided in the manner directed by the Debtors equally (the Avoidance Actions to be pursued by Katten/Acumen, the "**Katten/Acumen Actions**" and Avoidance Actions to be pursued by ASK, the "**ASK Actions**"). ASK and Katten/Acumen may agree to modify the list of ASK Actions and Katten/Acumen Actions with the approval of the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "**Restructuring Committee**").

## **Professional Compensation**

15.      Subject to Court approval, and in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, the Debtors will compensate ASK in accordance with the terms and provisions of the Engagement Letter, which provides a compensation structure (the "**Contingency Fee Schedule**") in relevant part as follows: [5]

---

[3] The Debtors may further request, and ASK may agree to provide, legal services to the Debtors outside the scope of the Services upon supplemental disclosure to the Bankruptcy Court

[4] Contemporaneously herewith, the Debtors have submitted separate applications to retain Katten and ASK.

[5] In the event of any inconsistency between the description of the Contingency Fee Schedule as set forth herein and the Engagement Letter, the Engagement Letter shall control.

WEIL:\97064433\1\73217.0004

(a)    Pre-Suit.  ASK shall earn legal fees on a contingency basis of 7% of the ASK Gross Proceeds[6] obtained from a potential defendant of an Avoidance Action after ASK issues a demand letter but prior to initiating an Avoidance Action proceeding against such defendant (the "**Pre-Suit Fee**").

(b)    Post Suit.  ASK shall earn legal fees on a contingency basis of 10% of the ASK Gross Proceeds obtained in connection with the settlement of any Avoidance Action after ASK initiates such Avoidance Action proceeding ("the "**Post Suit Fee**").

(c)    Success Fees.

    i.    If ASK recovers $25 million in ASK Gross Proceeds, ASK's Pre-Suit Fee shall be retroactively adjusted to 12% of all past and future ASK Gross Proceeds and its Post Suit Fee shall be retroactively adjusted to 17% all past and future ASK Gross Proceeds.

    ii.   If ASK recovers $50 million in ASK Gross Proceeds, ASK shall earn legal fees on a contingency basis of 20% of the ASK Gross Proceeds above $50 million, provided, however, that this contingency fee applies only to ASK Gross Proceeds obtained within the first 18 months of the Bankruptcy Court's approval of ASK's engagement.

(d)    Tail Compensation. If the Debtors (or any successor thereof) terminate the engagement without cause, including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided, that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue ASK's engagement in accordance with their respective engagement letters), ASK shall be entitled to all fees and expenses earned as of the date of termination and all fees derived from the ASK Gross

---

[6] Pursuant to the Engagement Letter, "**ASK Gross Proceeds**" is defined as the total recovery obtained by ASK from a preference target in cash and claim waiver value before the deduction of any reimbursable expenses in connection with prosecution of an ASK Action.  For the avoidance of doubt, the value of a claim waiver for purposes of counting toward ASK Gross Proceeds shall be limited to the amount that would—(i) be distributable to the claimant pursuant to an approved chapter 11 plan, or (ii) if no plan is approved, be the estimated recovery to the claimant pursuant to an approved plan disclosure statement—as if the waiver had not been obtained, not the gross amount of the claim; and further notwithstanding the inclusion of any non-cash recovery component used in calculating ASK Gross Proceeds, any payment to ASK shall be limited to the cash proceeds actually recovered from the ASK Actions.

WEIL:\97064433\1\73217.0004

Proceeds for a period extending twelve months after the date of termination ("**Tail Compensation**").[7]

16.     ASK will provide the Debtors, with a copy to counsel to the Creditors' Committee, monthly reports summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection.  ASK will also send monthly status reports detailing the status of all pending cases that remain open for collection.  ASK will also provide the Debtors with weekly updates on the status of the Avoidance Actions.

17.     The Debtors believe that the rates described above for ASK's Services under the Contingency Fee Schedule are competitive and are in line with the rates charged by its competitors.  The Debtors believe that ASK's rates are reasonable given the quality of ASK's services and its professionals' bankruptcy expertise related to the Avoidance Actions.

18.     The Debtors request, in line with the terms of the Engagement Letter, that the Debtors may pay the fees pursuant to the Contingency Fee Schedule immediately, either by payment to ASK or by authorizing ASK to deduct these fees from any outstanding amounts currently in its attorney trust account waiting for distribution to the Debtors, without further court approval.

19.     In addition to compensation for performing the Services, the Debtors seek to reimburse ASK for reasonable out-of-pocket expenses as described in the Engagement Letter (the "**Expenses**" and, together with the Contingency Fee Schedule, the "**Fee and Expense**

---

[7] The Debtors may immediately terminate the engagement and ASK shall not be entitled to any such Tail Compensation if, after execution of this agreement: (i) a determination, rule, guideline, decree, or, order or other statement of similar formality is issued by any court (or by a  government agency finding or recommending that ASK not be permitted to serve as a professional for or advisor to a debtor, official committee or trustee or other fiduciary in a bankruptcy case,  (ii) the Restructuring Committee reasonably determines that ASK has generally failed to prosecute or has abandoned prosecution of the ASK Actions, or (iii) material harm to any Debtor results from ASK's gross negligence or willful misconduct. For the avoidance of doubt, Tail Compensation shall be determined using the same compensation fee structure as set forth below and in determining the amount of Tail Compensation to which ASK is entitled shall count all ASK Proceeds received prior to ASK's termination without cause.

WEIL:\97064433\1\73217.0004

Structure"). Reasonable Expenses are chargeable only against the ASK Gross Proceeds recovered. Such Expenses include reasonable expenses related to the importation of data, including the hiring of computer consultants to assist in the extraction of the Debtors' data; shipping costs of records, adversary, appellate, and other court filing fees; mediation fees; deposition expenses; entity name/officer verifications at $10.00 per entity; service of process (for writs, etc.); travel expenses, photocopying at 10 cents per page, postage and telephone charges; witness fees and costs; and fees and costs associated with the domestication and collection of judgments. ASK will deduct its expenses and costs from the remittances at least once a month. In the event there are insufficient recoveries in a given month to cover the out of pocket expenses, ASK will record the deficiency and will deduct such deficiency from cash ASK Gross Proceeds obtained in the following month(s) to the extent available.

20.    In determining the level of compensation to be paid to ASK and its reasonableness, the Debtors compared ASK's proposed fees with preference recovery fees proposed by other professionals. The Fee and Expense Structure anticipates that a substantial commitment of professional time and effort would be required of ASK and its professionals, and that such commitment may foreclose other opportunities for ASK. No advance or retainer is contemplated by ASK's engagement.

21.    The Debtors also submit that ASK has obtained valuable institutional knowledge of the Debtors' creditors and causes of action as a result of its providing services, including a preliminary preference recovery analysis, to the Debtors prior to filing this Application. ASK is also expected to have started its recovery demand process before approval of this Application is considered by the Court. Therefore, ASK is not only well qualified, but also uniquely able to perform these services and assist the Debtors in these chapter 11 cases.

WEIL:\97064433\1\73217.0004

22.     The Fee and Expense Structure is entirely based on reimbursement of expenses and dollar amounts recovered—not on time expended.  Accordingly, and as described further below, ASK and the Debtors request that ASK not be required to maintain or submit time records in connection with this matter.  Notwithstanding the foregoing, ASK intends to file short-form quarterly statements of ASK Proceeds and expenses and fees paid therefrom and a final fee application for the allowance of compensation for services rendered and reimbursement of expenses incurred (as more fully described below).  ASK also will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above.  ASK will be paid under the terms of the Engagement Letter in the ordinary course commencing upon approval of this Application by this Court.

23.     In sum, in light of the foregoing and given the uncertainty of success despite ASK's commitment to the time and effort necessary to address issues as they arise, and the prices for services for engagements of this nature, the Debtors believe that the Fee and Expense Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

24.     Accordingly, as more fully described below, the Debtors believe that this Court should approve ASK's retention subject solely to the standard of review set forth in section 328(a) of the Bankruptcy Code and that ASK's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

**<u>No Duplication of Services</u>**

25.     The Debtors intend that the services to be provided by ASK will complement, and not duplicate, the services being rendered by other professionals retained in these chapter 11 cases.  As mentioned above, and as more fully set forth in the Engagement Letter, ASK understands that the Debtors are seeking to retain Katten/Acumen to provide Avoidance Action

13

services.  ASK and Katten/Acumen have divided the Avoidance Actions equally between ASK and Katten/Acumen.  ASK will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

### Disinterestedness

26.     To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein and in the Steinfeld Declaration, ASK is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors or their estates in connection with the matters for which ASK is to be retained by the Debtors.

27.     ASK performed no services for the Debtors prior to the Commencement Date and received no retainer for the Services to be performed during these chapter 11 cases.  As such, during the 90-day period prior to the Commencement Date, ASK was not paid any amounts.

### Relief Requested Should Be Granted

28.     The Debtors seek authority to employ and retain ASK as special counsel under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code as those sections relate to cases under chapter 11 of the Bankruptcy Code, providing that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

WEIL:\97064433\1\73217.0004

29.    The Debtors also seek approval of the Fee and Expense Structure, and the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including attorneys, on flexible terms that reflect the nature of their services and market conditions.

30.    The Debtors believe the Contingency Fee Schedule set forth in the Engagement Letter contains reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.  The Contingency Fee Schedule adequately reflects (a) the nature of the services to be provided by ASK and (b) fee and expense structures typically utilized by ASK and other leading firms, which generally are compensated on a transactional basis for services of the type the Debtors request ASK to perform.  In particular, the Debtors believe the Contingency Fee Schedule creates a proper incentives through the use of tiers of contingency fees based on the successful recovery of value to the Debtors' estates. Moreover, ASK's substantial experience with respect to legal restructuring services, coupled with the nature and scope of work already performed by ASK at the request of the Debtors, further supports the reasonableness of the Contingency Fee Schedule.

31.    Courts in this jurisdiction and others have approved relief similar to the relief requested in this Application.  *See, e.g.*, *In re Caritas Health Care, Inc.*, Case No. 09-40901 (CEC) (Bankr. E.D.N.Y. 2011); *In re Dreier LLP*, Case No. 08-15051 (SMB) (Bankr. S.D.N.Y. 2010).

WEIL:\97064433\1\73217.0004

32.     The Debtors respectfully submit that retaining and employing ASK pursuant to the terms of the Engagement Letter is necessary and in the best interests of the Debtors' estates and all parties in interests in these chapter 11 cases.  The Debtors also believe that the terms and conditions of the Engagement Letter are reasonable in light of the anticipated high volume of creditors and other parties in interests that will be involved in these chapter 11 cases.

33.     Accordingly, to help provide added liquidity resulting from pursuit of the Avoidance Actions, the Debtors respectfully request the Court enter an order appointing ASK as special counsel in these chapter 11 cases pursuant to sections 327(a), 328(a), 330, and 331 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Bankruptcy Rules 2014-1 and 2016-1.

## Waiver of Certain Time-Keeping Requirements

34.     As set forth in the Steinfeld Declaration, compensation to be paid to ASK under the Engagement Letter is a mathematical function of the applicable percentage according to the Contingency Fee Schedule, multiplied by the amount for which any Avoidance Action is resolved, either by settlement or judgment, all of which are subject to approval by the Court after notice and an opportunity to be heard.  Therefore, the Debtors submit that ASK should not be required to maintain time records for this matter or provide time records to the Debtors, the Court, or the U.S. Trustee, as ASK would if it were being retained and paid on an hourly basis.  Further, the Debtors believe that ASK's requirement to apply to the Court quarterly for allowance of compensation for professional services rendered should be satisfied by filing a short form quarterly statement that includes the amount of fees paid and a detailed itemization of expenses incurred, including any filing fees advanced by ASK, and final fee application.  The Debtors have been advised that ASK intends to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines.

WEIL:\97064433\1\73217.0004

35.    ASK will file a short-form quarterly statement and a final fee application for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with section 330 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered by this Court.

36.    Courts in this jurisdiction and others have approved modifications of the type requested here.  *E.g.*, *In re Drier LLP*, No. 08-15051 (SMB) (Bankr. S.D.N.Y. Sept. 15, 2010) (authorizing procedure for applying for compensation and reimbursement by final fee application); *In re Drier LLP*, No. 08-15051 (SMB) (Bankr. S.D.N.Y. Aug. 6, 2014) (approving final fee application without time keeping requirement); *In re APP Winddown, LLC, et al.*, No 16-12551 (BLS) (Bankr. D. Del. July 31, 2017) (approving short-form format for fee applications).

### *Nunc Pro Tunc* **Relief Is Warranted**

37.    As stated above, ASK has already performed an initial analysis of the potential Avoidance Actions, which analysis is compensated as part of the overall contingency fee. The Debtors requested ASK to undertake this work prior to seeking Court authorization so that the Debtors could make an informed decision on whether to pursue the Avoidance Actions.  ASK has not received a retainer or billed for any work prior to this Application and was willing to perform this work with the understanding that it would not be compensated had the Debtors decided not to pursue the Avoidance Actions.  Accordingly, its fees will not be increased should the Court authorize the *nunc pro tunc* relief.

38.    The Debtors believe that employment of ASK effective *nunc pro tunc* to April 1, 2019 is warranted under the circumstances of these chapter 11 cases so that ASK may be

WEIL:\97064433\1\73217.0004

compensated for services rendered and expenses incurred[8] prior to entry of an order approving ASK's retention. Further, the Debtors believe that no party-in-interest will be prejudiced by the granting of *nunc pro tunc* employment because ASK has provided, and will continue to provide, valuable services to the Debtors' estates.

39.    Courts in this jurisdiction routinely approve *nunc pro tunc* employment similar to that requested herein. *See, e.g., In re Tops Holding II Corp.*, No. 18-22279 (Bankr. S.D.N.Y. March 22, 2018) (ECF No. 194); *In re Westinghouse Elec. Co. LLC*, No. 17-10751 (MEW) (Bankr. S.D.N.Y. Nov. 16, 2017) (ECF No. 1585); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014).

## Notice

40.    Notice of this Application will be provided in accordance with the procedures set forth in the Amended Order Implementing Certain Notice and Case Management Procedures (ECF No. 405). The Debtors respectfully submit that no further notice is required.

41.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

---

[8] To date, ASK has incurred $1,744.24 in expenses.

WEIL:\97064433\1\73217.0004

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 6, 2019
      New York, New York

                    SEARS HOLDINGS CORPORATION
                    *(for itself and on behalf of its debtor affiliates*
                    *as Debtors and Debtors in Possession*)

                    /s/ Mohsin Meghji_____
                    NAME: Mohsin Meghji
                    TITLE:  Chief Restructuring Officer

## Exhibit A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re                              :

                                :          **Chapter 11**

**SEARS HOLDINGS CORPORATION,** *et al.*,   :

                                :          **Case No. 18-23538 (RDD)**

                                :

Debtors.[1]                  :          **(Jointly Administered)**

                                :

-------------------------------------------------------------x

## ORDER AUTHORIZING THE
## EMPLOYMENT AND RETENTION OF
## ASK LLP AS SPECIAL AVOIDANCE ACTION COUNSEL
## TO THE DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

Upon consideration of the application (the "**Application**")[2] of the Debtors for entry

of an order (this "**Order**") authorizing the Debtors to retain and employ ASK LLP ("**ASK**") as

special avoidance action counsel to the Debtors *nunc pro tunc* to April 1, 2019, and related relief,

on the terms and conditions set forth herein and in the engagement agreement between ASK and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used, but not otherwise defined herein, shall have their meanings ascribed to such terms in the Application.

Sears Holdings Corporation dated as of April 1, 2019 (the "**Engagement Letter**"), all as more fully set forth in the Application; and upon the declaration of Joseph Steinfeld, Jr., as co-managing principal of ASK, annexed to the Application as **Exhibit B** (the "**Steinfeld Declaration**") and the declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, attached to the Application as **Exhibit C** (the "**Meghji Declaration**"); and the Court being satisfied, based on the representations made in the Application and the Steinfeld Declaration, that ASK is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that ASK neither represents nor holds any interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged; and the Court having jurisdiction to decide the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Application and the opportunity for a hearing thereon having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Application (the "**Hearing**") if necessary; and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as set forth in this Order *nunc pro tunc* to April 1, 2019.

2.      The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, to engage ASK as special avoidance action counsel to the Debtors *nunc pro tunc* to April 1, 2019, pursuant to the terms of the Application Engagement Letter, annexed hereto as **Exhibit 1**.

3.      All of ASK's compensation as set forth in the Engagement Letter including, without limitation, the Contingency Fee Schedule, the Expenses, and related obligations are approved pursuant to section 328(a) of the Bankruptcy Code and ASK shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of, and at the times specified in, the Engagement Letter.

4.      ASK shall apply for allowance of compensation for Services rendered and reimbursement of Expenses incurred by filing (i) short-form quarterly statements that include the amount of fees paid based on the Contingency Fee Schedule and a reasonably detailed itemization of Expenses incurred and paid and (ii) upon the conclusion of its services, a final fee application for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court; *provided that*, ASK shall be compensated and reimbursed pursuant to Bankruptcy Code section 328(a) and that ASK's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code; *provided further that*, such fees and expenses shall be paid by the Debtors as and when due as set forth in the Engagement Letter without the need to file monthly statements;

*provided further that*, for the avoidance of doubt, such fees and expenses shall be subject to review and approval in any quarterly statements and final fee application.

5.      Notwithstanding anything to the contrary herein, the Office of the United States Trustee for the Southern District of New York shall have the right to object to ASK's interim and final fee applications (including expense reimbursement) on all grounds, including the reasonableness standard provided in section 330 of the Bankruptcy Code.

6.      Notwithstanding anything to the contrary, ASK shall be excused from time-keeping reporting requirements in applying for allowance of compensation for Services authorized herein.

7.      None of the fees payable to ASK shall constitute a "bonus" or fee enhancement under applicable law.

8.      To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern.  To the extent that there may be any inconsistency solely between the terms of the Application and the Engagement Letter, the terms of the Engagement Letter shall govern.

9.      The relief granted herein shall be binding upon any chapter 11 trustee appointed in the chapter 11 cases, any trustee of a trust to which the ASK Actions are assigned in connection with confirmation of a chapter 11 plan, or any chapter 7 trustee appointed in the event of a subsequent conversion of the chapter 11 cases to cases under chapter 7.

10.     The terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

4

12.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

WEIL:\97064433\1\73217.0004

## **<u>Exhibit 1</u>**

**Engagement Letter**



Joseph L. Steinfeld, Jr., Esq.

Direct Line 651 289 3850 | Mobile 703 626 7387 | jsteinfeld@askllp.com
2600 Eagan Woods Drive, Suite 400 | St. Paul, Minnesota | 55121
phone 651 406 9665 | fax 651 406 9676 | www.askllp.com

## **CONFIDENTIAL**

April 1, 2019

### *Via Email*

Mr. Mohsin Y. Meghji
Chief Restructuring Officer
Sears Holdings Corporation, *et al.*, Debtors
c/o M-III Partners, LP
130 West 42nd Street, 17th Fl.
New York, New York   10036

> **Re:** **Sears Holdings Corporation, *et al.*, Case No.  18-23538 (RDD)**
> **Engagement Agreement for the Litigation of Avoidance Claims**

Dear Mr. Meghji:

This agreement sets forth the terms whereby ASK LLP ("ASK") will serve as special counsel for Sears Holdings Corporation and its affiliated debtors (the "Debtors") to analyze, prosecute and/or settle avoidance actions under chapter 5 of title 11 of the United States Code (the "Avoidance Actions") against non-insider non-affiliate transferees (the "Transferees") in the above captioned cases.

### **Staffing of this Engagement**

I will personally oversee the collection and litigation efforts undertaken by ASK and will be lead counsel along with my co-managing partner Edward Neiger and Kara Casteel, our case management partner in charge of Avoidance Action collections. We will utilize our staff of seasoned attorneys who have an average of ten years' experience working exclusively on avoidance actions. They in turn will be assisted by paralegals that have been collecting preferences and/or assisting in the litigation of preferences for more than fifteen years.

### **Katten/Acumen**

It is our understanding that the Debtors are also retaining Katten Muchin Rosenman LLP and Acumen Recovery Services, LLC (together, "Katten/Acumen") in connection with this matter. ASK's engagement is premised upon the Avoidance Actions being divided equally based on expected net recoveries, as determined by Katten/Acumen on the one hand, and ASK on the other hand in the manner directed by the Debtors.  ASK and Katten/Acumen have, to date, provided the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "Restructuring Committee") with information concerning the allocation of the first 1000 Transferees between ASK and Katten/Acumen and will provide the Restructuring Committee with all future allocations promptly upon their completion by ASK and Katten/Acumen, but in all events subject to approval of the Restructuring Committee. The Avoidance Actions being prosecuted by

ask | ATTORNEYS AT LAW

Dated as of April 1, 2019
Page 2

ASK shall hereinafter be referred to as the "<u>ASK Actions</u>" and the Avoidance Actions being prosecuted by Katten/Acumen shall be referred to as the "<u>Katten/Acumen Actions</u>."

## **Deliverables**

### A.    **Preference Analysis**

Provided the data is complete and transmitted to us in the format requested, we will produce a detailed preference analysis of all potential claims within 2-3 weeks of obtaining all of the data.

### B.    **Client Reports**

We provide at no additional cost customized reports that can be accessed online or be sent by email. We also will customize our online database to allow access to our database that instantly displays the collection status of the preference portfolio as a whole, or the status of an individual case.

### C.    **Recovery Work**

### 1.    **Pre-Suit**

ASK attempts to recover claims before an adversary proceeding is commenced and expenses are incurred. To procure settlements we send a demand package consisting of the following documents, all of which are to be pre-approved by you including the timing of the delivery of such demand packages:

- A multi-paged customized explanatory letter regarding the preference liability;
- A draft complaint; and
- A settlement offer and acceptance form.

Our professionals will attempt to make phone contact with every recipient of a preference demand to verify the package is in the right hands and to encourage the settlement option. As part of the settlement process we may share certain of our preference analysis reports.

### 2.    **Suit**

Once suit is authorized, we usually serve the following documents with the summons and complaint:

- Service cover letter; and
- Appropriate local forms such as a notice of dispute resolution alternatives.

Our professionals again attempt to make phone contact with every recipient of a lawsuit to verify the package is in the right hands and to encourage the settlement option.

ask | ATTORNEYS AT LAW

Dated as of April 1, 2019
Page 3

**D.**    **Fees and Expenses**- See Attached Addendum

**E.**    **Remittances and Reports**

All proceeds recovered by ASK ("<u>ASK Gross Proceeds</u>") will be deposited into a segregated attorney trust account.  ASK will make monthly remittances, net of our fees and expenses, to the designated account.  We will also make wire transfers to the chosen account.  As part of the remittance, ASK will provide monthly reports to the Debtors, with a copy to counsel to the official committee of unsecured creditors ("<u>Creditors' Committee Counsel</u>"), summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection.  Should ASK be required to remit in gross, then we expect payment of ASK's bill within 10 days of presentation, or as soon as practicable as allowed by the bankruptcy court.  ASK will also send monthly status reports to the Debtors, with a copy to Creditors' Committee Counsel, detailing the status of all pending cases that remain open for collection.  ASK will also provide the Debtors with weekly updates on the status of the Avoidance Actions.

**F.**    **Settlement Authority**

In order to assist the Debtors with the information necessary to make an informed decision, ASK will provide a settlement analysis spreadsheet and agrees to follow any instructions or settlement protocol that has been established.

**G.**    **Termination**

ASK may, in its sole discretion, terminate the engagement, in which case ASK shall be entitled to all fees and expenses earned as of the date of termination; <u>provided</u>, such fees and expenses shall be paid solely from the ASK Gross Proceeds.  The Debtors may, in their sole discretion, terminate the engagement. If the Debtors (or any successor thereof) terminate the engagement without cause, including termination caused by conversion of any case or cases with material Avoidance Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided, that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue ASK's engagement in accordance with their respective engagement letters), ASK shall be entitled to all fees and expenses earned as of the date of termination and all fees derived from the ASK Gross Proceeds for a period extending twelve months after the date of termination ("<u>Tail Compensation</u>"); <u>provided</u>, that the Debtors may immediately terminate the engagement and ASK shall not be entitled to any such Tail Compensation if, after execution of this agreement: (i) a determination, rule, guideline, decree, or, order or other statement of similar formality is issued by any court (or by a government agency finding or recommending that ASK not be permitted to serve as a professional for or advisor to a debtor, official committee or trustee or other fiduciary in a bankruptcy case, (ii)

ask | ATTORNEYS AT LAW

Dated as of April 1, 2019
Page 4

the Restructuring Committee reasonably determines that ASK has generally failed to prosecute or has abandoned prosecution of the ASK Actions, or (iii) material harm to any Debtor results from ASK's gross negligence or willful misconduct. For the avoidance of doubt, Tail Compensation shall be determined using the same compensation fee structure as set forth below and in determining the amount of Tail Compensation to which ASK is entitled shall count all ASK Proceeds received prior to ASK's termination without cause.

*(remainder of page intentionally left blank)*

ask-| ATTORNEYS AT LAW
Dated as of April 1, 2019
Page 5

Please review this letter and, if it meets with your approval, return a counter-signed copy of this letter via email.

We are grateful for your trust and confidence.


Very truly yours,

ASK LLP

*[signature]*

Joseph L. Steinfeld, Jr., Esq.



cc:    Brian Griffith (bgriffith@miiipartners.com)
       William Murphy (wmurphy@miiipartners.com)
       M-III Advisory Partners, LP
       Ray C. Schrock, Esq.  (ray.schrock@weil.com)
       Sunny Singh, Esq. (sunny.singh@weil.com)
       Weil, Gotshal & Manges LLP


This letter and the Terms of Engagement are agreed to and effective as of the date first written above.

**SEARS HOLDINGS CORPORATION ON BEHALF OF ITSELF AND ITS DEBTOR AFFILIATES**



By: *[signature]*
Name:
Title:    MOHSIN Y. MEGHJI
          CHIEF RESTRUCTURING OFFICER

ask | ATTORNEYS AT LAW

Dated as of April 1, 2019
Page 6

## **Addendum - Fees and Expenses**

## **Fees**

Our fee structure (including the success fee set forth below) is based on a contingency fee applied to the ASK Gross Proceeds.  "Gross Proceeds" is defined as the total recovery obtained by ASK from a preference target in cash and claim waiver value before the deduction of any reimbursable expenses in connection with prosecution of an ASK Action.  For the avoidance of doubt, the value of a claim waiver for purposes of counting toward ASK Gross Proceeds shall be limited to the amount that would—(i) be distributable to the claimant pursuant to an approved chapter 11 plan, or (ii) if no plan is approved, be the estimated recovery to the claimant pursuant to an approved plan disclosure statement—as if the waiver had not been obtained, not the gross amount of the claim; and further notwithstanding the inclusion of any non-cash recovery component used in calculating ASK Gross Proceeds, any payment to ASK shall be limited to the cash proceeds actually recovered from the ASK Actions.

Pre-Suit. ASK shall earn legal fees on a contingency basis of **7%** of the ASK Gross Proceeds obtained from a potential defendant of an Avoidance Action after ASK issues a demand letter but prior to initiating an Avoidance Action proceeding against such defendant.

Post Suit. ASK shall earn legal fees on a contingency basis of **10%** of the ASK Gross Proceeds obtained in connection with the settlement of any Avoidance Action after ASK initiates such Avoidance Action proceeding.

Success Fees. Once ASK recovers $25 million in ASK Gross Proceeds, ASK's Pre-Suit Fee shall be **retroactively** adjusted to **12%** of all past and future ASK Gross Proceeds and its Post Suit Fee shall be **retroactively** adjusted to **17%** all past and future ASK Gross Proceeds.

Once ASK recovers $50 million in ASK Gross Proceeds, ASK shall earn legal fees on a contingency basis of **20%** of the ASK Gross Proceeds above $50 million, provided, however, that this contingency fee applies only to ASK Gross Proceeds obtained within the first 18 months of the Bankruptcy Court's approval of ASK's engagement.

The Success fees will be paid by the Debtors immediately either by payment to ASK or by authorizing ASK to deduct these fees from any outstanding amounts currently in its attorney trust account waiting for distribution to the Debtors.

Subject to Bankruptcy Court approval, the Debtors (and any successor thereof, including a liquidating or litigation trustee or plan administrator) shall have the discretion to increase the contingency fee percentages set forth above and/or award a bonus to ASK.

ask | ATTORNEYS AT LAW

Dated as of April 1, 2019
Page 7

## Expenses

### ASK will Advance Expenses and Only Be Reimbursed From Collections

ASK will advance all fees and expenses and seek reimbursement only from collections. ASK will store all physical and electronic records without any charge.

### Reimbursed Expenses

Reasonable out of pocket expense items include, but are not limited to: reasonable expenses related to the importation of data, including the hiring of computer consultants to assist in the extraction of data, shipping costs of records, adversary, appellate, and other court filing fees; mediation fees, deposition expenses; entity name/officer verifications at $10.00 per entity; service of process (for writs, etc.); travel expenses, photocopying at 10 cents per page, postage, and telephone charges; witness fees and costs, and fees and costs associated with the domestication and collection of judgments.  We will deduct our expenses and costs from the remittances at least once a month. In the event there are insufficient recoveries in a given month to cover the out of pocket expenses, ASK will record the deficiency and will deduct such deficiency from cash ASK Gross Proceeds obtained in the following month(s) to the extent available.  For the avoidance of doubt, ASK will not be reimbursed for any expenses and costs exceeding ASK Gross Proceeds.

ASK is not responsible for any expert witness fees and expenses. ASK will work cooperatively with other retained professionals in these cases to avoid duplicative and/or competing efforts and will defer to you with respect to the decision(s) as to the hiring of experts. Retained experts (including, but not limited to, experts necessary to prove insolvency and/or to rebut objective defense industry experts) are to be separately employed and paid for by the Debtors and are not considered part of this proposal.

## **Exhibit B**

**Steinfeld Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re                                                  :

                                                       :        **Chapter 11**

**SEARS HOLDINGS CORPORATION,** *et al.,*              :

                                                       :        **Case No. 18-23538 (RDD)**

                                                       :

        Debtors.[1]                                    :        **(Jointly Administered)**

                                                       :

-------------------------------------------------------------x

**DECLARATION OF JOSEPH L. STEINFELD, JR. IN SUPPORT OF APPLICATION**
**OF DEBTORS FOR ENTRY OF ORDER AUTHORIZING THE EMPLOYMENT AND**
**RETENTION OF ASK LLP AS SPECIAL AVOIDANCE ACTION**
**COUNSEL FOR DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019**

        Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedures (the

"**Bankruptcy Rules**") I, Joseph L. Steinfeld, Jr., hereby declare as follows:

        1.      I am a co-managing principal of ASK LLP ("**ASK**", the "**Firm**", or "**We**"). The

Firm maintains offices at 2600 Eagan Woods Drive, Suite 400, St. Paul, Minnesota 55121 and 151

West 46th Street, 4th Floor, New York, NY 10036.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

2.      I am submitting this declaration (the "**Steinfeld Declaration**") in support of the

*Application of Debtors for Entry of Order Authorizing the Employment and Retention of ASK LLP as Special Avoidance Action Counsel for Debtors, Effective* Nunc Pro Tunc *To April 1, 2019* (the "**Application**").[2] Unless otherwise noted, I have personal knowledge of the facts set forth herein, or knowledge of such facts based upon the information contained in the books and records maintained by ASK. To the extent any information disclosed herein requires amendment or modification upon ASK's completion of further review, or as additional party-in-interest information becomes available to the Firm, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

## ASK's Qualifications

3.      For over 35 years ASK has specialized in the analysis and recovery of avoidance claims. Our firm utilizes a customized analysis program that evaluates the net of new value ("**NV**") and ordinary course of business ("**OCB**") defenses using different OCB ranges, enabling us to quickly calculate the net preference within a variety of potential OCB ranges. We also value the non-quantifiable factors (industry practices, collectability, or disposition of defendant or opposing counsel) that a computer program cannot quantify. Since 2000 ASK has sued over 75,000 defendants, recovered more than $400 million, filed approximately 500 suits over $1 million, and handled hundreds of successful mediations and trials. We are large portfolio specialists and regularly handle 500+ adversary proceedings (our largest filing was 1,745 cases). We maintain fully staffed offices in St. Paul and New York and have ten attorneys, two full time data analysts and eight litigation and administrative paralegals assisting in the analysis and recovery of avoidance claims. Unlike other firms, prosecuting preferences is the core practice of our

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

2

firm.  ASK has shaped preference law with numerous published decisions and we regularly lecture on the topic at trade associations and law firm CLEs.  The following list contains some of our major recent engagements (Retail cases are identified):

- Quebecor World (USA), Inc., et al, (S.D.N.Y.), recovered $51 million
- Hechinger Investment Company (D. Del.) **(Retail)**, recovered $47.2 million
- WP Steel Venture, LLC, et al. (D. Del.), recovered $46 million
- Montgomery Ward LLC (D. Del.), **(Retail)** recovered $41 million
- RadioShack Holding (D. Del.), **(Retail)** recovered more than $13 million (active case)
- hhgregg (S.D. Ind.) **(Retail)** recovered more than $11 million (active case)
- Fresh & Easy Markets (D. Del.) **(Retail** Grocery), recovered $6.6 million (active case)
- Standard Register Liquidation  LLC  (D. Del.), recovered $6.2 million (active case)
- New Page Creditor Liquidation Trust (D. Del.), recovered $6.15 million
- LHI Liquidation Co. Inc. (Loehmann's Holdings, Inc.) **(Retail)** recovered $4 million

## Scope of Services

4.      On or about March 8, 2019, ASK executed a Non-Disclosure Agreement with the Debtors so that ASK could provide an initial preference analysis and proposal for the recovery of the Avoidance Actions.  Thereafter, the Debtors provided ASK with voluminous records that allowed it to perform an initial preference analysis.  The Debtors now propose to retain ASK on the terms and conditions set forth in the Engagement Letter.  Under the Engagement Letter, ASK will provide legal advice to, consultation with, and representation of the Debtors in connection with the investigation and the prosecution of Avoidance Actions (the "**Services**").

5.      ASK will prosecute only those Avoidance Actions assigned to ASK.  The Debtors may elect to have additional counsel pursue certain other Avoidance Actions.[3] ASK will work

---

[3]     Substantially contemporaneous with this Application, the Debtors will have filed applications to retain Katten Muchin Rosenman LLP ("**Katten**") and the Acumen Recovery Services, LLC ("**Acumen**") to assist in pursuing certain of the Avoidance Actions.  Because both ASK and Katten will be receiving contingency fees for their work on the Avoidance Actions, and because both firms will be pursuing Avoidance Actions against different subsets of Defendants, there is no concern that work by additional firms on the Avoidance Actions will create any

3

cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors to ensure that no duplication of services occurs.

### Disclosures and Compensation

6.      ASK will perform the Services on a contingency-fee basis in accordance with the Engagement Letter, which sets forth a contingency-fee schedule (the "**Contingency Fee Schedule**") as follows:

a.    <u>Pre Suit</u>. ASK shall earn legal fees on a contingency basis of 7%[4] of the ASK Gross Proceeds[5] obtained from a potential defendant of an Avoidance Action after ASK issues a demand letter but prior to initiating an Avoidance Action proceeding against such defendant.

b.    <u>Post Suit</u>.  ASK shall earn legal fees on a contingency basis of 10% of the ASK Gross Proceeds obtained in connection with the settlement of any Avoidance Action after ASK initiates such Avoidance Action proceeding.

c.    <u>Success Fees.</u>

i.    If ASK recovers $25 million in ASK Gross Proceeds, ASK's Pre-Suit Fee shall be retroactively adjusted to 12% of all past and future ASK Gross Proceeds and its Post Suit Fee shall be retroactively adjusted to 17% of all past and future ASK Gross Proceeds.

ii.    If ASK recovers $50 million in ASK Gross Proceeds, ASK shall earn legal fees on a contingency basis of 20% of the ASK Gross Proceeds above $50

---

duplication of services or additional burden on the Debtors' estates.  Further, the Avoidance Actions will be split equitably between Katten and Acumen, on the one hand, and ASK, on the other hand.

[4]    The contingency fee percentages submitted by ASK in this Application are higher than those contingency fees listed by Katten in its declaration and application. However, Katten will be working in conjunction with Acumen (who is providing analysis support) in providing its legal services to the Debtors, whereas ASK will be performing the Firm's analysis services itself and not in conjunction with any other firm or entity.  Accordingly, ASK's fees do not reflect a higher percentage than the other law firm being retained, based on the differences in services provided.

[5]    Pursuant to the Engagement Letter, "**ASK Gross Proceeds**" is defined as the total recovery obtained by ASK from a preference target in cash and claim waiver value before the deduction of any reimbursable expenses in connection with prosecution of an ASK Action.  For the avoidance of doubt, the value of a claim waiver for purposes of counting toward ASK Gross Proceeds shall be limited to the amount that would—(i) be distributable to the claimant pursuant to an approved chapter 11 plan, or (ii) if no plan is approved, be the estimated recovery to the claimant pursuant to an approved plan disclosure statement—as if the waiver had not been obtained, not the gross amount of the claim; and further notwithstanding the inclusion of any non-cash recovery component used in calculating ASK Gross Proceeds, any payment to ASK shall be limited to the cash proceeds actually recovered from the ASK Actions.

4

million, provided, however, that this contingency fee applies only to ASK Gross Proceeds obtained within the first 18 months of the Bankruptcy Court's approval of ASK's engagement.

iii.    The success fees will be paid by the Debtors immediately either by payment to ASK or by authorizing ASK to deduct these fees from any outstanding amounts currently in its attorney trust account waiting for distribution to the Debtors, and will not need further court approval.

iv.    Subject to Bankruptcy Court approval, the Debtors (and any successor thereof, including a liquidating or litigation trustee or plan administrator) shall have the discretion to increase the contingency fee percentages set forth above and/or award a bonus to ASK.

d.    <u>Tail Compensation</u>. If the Debtors (or any successor thereof) terminate the engagement without cause, including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided, that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue ASK's engagement in accordance with their respective engagement letters), ASK shall be entitled to all fees and expenses earned as of the date of termination and all fees derived from the ASK Gross Proceeds for a period extending twelve months after the date of termination ("**Tail Compensation**").[6]

6.    I believe that the rates ASK charges for its Services under the Contingency Fee Schedule are competitive and are in line with the rates charged by its competitors. It is my further understanding that the Debtors believe that ASK's rates are reasonable given ASK's professionals' bankruptcy expertise related to the Avoidance Actions.

7.    As indicated in the Application, and subject to Court approval in accordance with section 330(a) of the Bankruptcy Code and any applicable orders of this Court, ASK will also be

---

[6]    The Debtors may immediately terminate the engagement and ASK shall not be entitled to any such Tail Compensation if, after execution of this agreement: (i) a determination, rule, guideline, decree, or, order or other statement of similar formality is issued by any court (or by a  government agency finding or recommending that ASK not be permitted to serve as a professional for or advisor to a debtor, official committee or trustee or other fiduciary in a bankruptcy case,  (ii) the Restructuring Committee reasonably determines that ASK has generally failed to prosecute or has abandoned prosecution of the ASK Actions, or (iii) material harm to any Debtor results from ASK's gross negligence or willful misconduct. For the avoidance of doubt, Tail Compensation shall be determined using the same compensation fee structure as set forth below and in determining the amount of Tail Compensation to which ASK is entitled shall count all ASK Proceeds received prior to ASK's termination without cause.

5

entitled to reimbursement for out-of-pocket expenses, as set forth in the Application and the Engagement Letter.  Attached as **Exhibit 1** to the proposed order attached to the Application as **Exhibit A** is a copy of the executed Engagement Letter between ASK and the Debtors.

8.      The compensation to be paid ASK under the Engagement Letter is a mathematical function of the applicable percentage according to the Contingency Fee Schedule multiplied by the amount for which any Avoidance Action is resolved, either by settlement or judgment, all of which are subject to approval by the Court after notice and an opportunity to be heard. Accordingly, I believe ASK should not be required to maintain time records for this matter or provide time records to the Debtors, the Court or the U.S. Trustee as ASK would if it were being retained and paid on an hourly basis. Further, I believe that ASK's requirement to apply to the Court quarterly for allowance of compensation for professional services rendered should be satisfied by filing a short form quarterly statement that includes the amount of fees paid and a detailed itemization of expenses incurred, including any filing fees advanced by ASK, and final fee application. ASK also intends to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines.

9.      ASK will file a final fee application for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with section 330 of the Bankruptcy Code and the other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered by the Court.

10.      Pursuant to Part D1 of the 2013 UST Guidelines, ASK is seeking employment as special counsel to the Debtors under section 327 of the Bankruptcy Code, and it hereby provides the following responses set forth below:

6

| Questions required by Part D1 of 2013 UST Guidelines: | Answer: | Further explanation: |
|---|---|---|
| Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? | No. | N/A |
| Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? | No. | N/A |
| If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If your billing rates and material financial terms have changed post-petition, explain the difference and reasons for the difference. | N/A | N/A |
| Has your client approved your respective budget and staffing plan, and, if so, for what budget period? | Compensation is a contingency-based fee, plus reimbursement of expenses. | N/A |

11.     ASK performed no services for the Debtors prior to the Petition Date and received

no retainer for the Services to be performed during the Cases. No promises have been received by

the Firm or by any member, of counsel, or associate thereof as to compensation in connection with

these cases other than in accordance with the provisions of the Bankruptcy Code.  The Firm has

no agreement with any other entity to share with such entity any compensation received by the

Firm in connection with these cases, except among the members, of counsel, and associates of the

Firm.

7

**Disinterestedness; Rule 5002**

12.     In connection with its proposed retention by the Debtors in these chapter 11 cases,
ASK does not anticipate having any conflicts or other relationships that might cause it not to be
disinterested or to hold or represent an interest adverse to Debtors.  There are, however, thousands
of potential preference targets (the "**Targets**") and other creditors and parties in interest in the
Debtors' chapter 11 cases.  It will take ASK personnel several weeks to process all of the Targets
through ASK's conflicts database but ASK will not begin to pursue any Target without first
assuring that ASK has no interest adverse to the Debtors with respect to such Target.  ASK has
prioritized the search of its conflicts database for the initial set of Targets agreed upon by
Katten/Acumen, ASK and the Debtors as well as searching the names of each of the Debtors (the
"**Initial Conflicts Search**").  To the extent that a Target is a client or an affiliate of a client of
ASK's, Katten/Acumen will assume responsibility for pursuing a preference action against such
Target and such Target will not be among those in the ASK Actions.  In addition to conducting
conflict searches for each of the potential Targets, ASK has conducted conflicts searches for each
of the Debtors, but submits that a search of every one of the Debtors' creditors or other potential
parties in interest in these cases is not required given the limited scope of ASK's engagement and
would cause needless delay.

13.     In view of the foregoing, and in light of the limited scope of ASK's role as special
counsel with respect to the Avoidance Actions, and based on the Initial Conflicts Search conducted
as described above, to the best of my knowledge, subject to the disclosures set forth below, neither
I nor the Firm holds or represents any interest adverse to, and has no connection with, the Debtors
herein or the estates, their creditors, the U.S. Trustee or any person employed in the Office of the
U.S. Trustee and/or the United States Bankruptcy Court for the Southern District of New York, or
any party in interest herein, and is a "disinterested person" within the meaning of section 101(14)

8

of the Bankruptcy Code. ASK and certain of its partners and associates may have in the past represented, may currently represent, and may in the future represent, entities that may be potential parties in interest in these chapter 11 cases in connection with matters unrelated the Debtors and these chapter 11 cases. Such entities include or may include, without limitation, certain of the Debtors' landlords, insurers, secured lenders, banks and parties who may be in litigation with the Debtors. The identities of potential parties in interest may change without our knowledge during the pendency of these chapter 11 cases. Accordingly, ASK will file supplemental declarations as necessary if and when ASK becomes aware of additional material information.

14.    To the best of my knowledge, ASK is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that the Firm, its partners, of counsel, and associates:

    a.  are not creditors, equity security holders, or insiders of the Debtors;

    b.  are not and were not, within two (2) years before the Petition Date, a director, officer, or employee of the Debtors; and

    c.  do not have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason, except as disclosed herein.

15.    As set forth above, and subject to any explanations and/or exceptions contained herein, ASK (a) does not hold or represent any interest adverse to the Debtors and (b) is disinterested. If the results of further investigation reveal any additional connections, ASK will make any further disclosures as may be appropriate at that time.

9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

June 6, 2019

_____

Joseph L. Steinfeld, Jr

10

<u>**Exhibit C**</u>

**Meghji Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------------------x
In re                                        :
                                             :        Chapter 11
SEARS HOLDINGS CORPORATION, et al.,          :
                                             :        Case No. 18-23538 (RDD)
                                             :
            Debtors.¹                        :        (Jointly Administered)
---------------------------------------------------------------x
```

### DECLARATION OF MOHSIN MEGHJI IN SUPPORT OF APPLICATION OF DEBTORS FOR AUTHORITY TO EMPLOY AND RETAIN ASK LLP AS SPECIAL AVOIDANCE ACTION COUNSEL FOR DEBTORS EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

Mohsin Meghji makes this declaration under 28 U.S.C. § 1746:

1.    I am the Chief Restructuring Officer of Sears Holding Corporation ("**Sears Holdings**"). In my current role at Sears Holdings, I am responsible for supervising outside counsel and other professionals and monitoring and managing legal fees and expenses.

2.    On October 15, 2018 (the "**Commencement Date**"), Sears Holdings and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Code (the "**Bankruptcy Code**"). I submit this Declaration in support of the Debtors'
application (the "**Application**")[2] pursuant to sections 327(a) and 328 of the Bankruptcy Code,
Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")
and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New
York (the "**Local Rules**"), for authority to employ and retain ASK LLP ("**ASK**"), as special
avoidance action counsel for the Debtors in the above-captioned chapter 11 cases, *nunc pro
tunc* to April 1, 2019, filed contemporaneously herewith.

3.      This Declaration is provided pursuant to Paragraph D.2 of the *United
States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of
Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective
November 1, 2013. Except as otherwise indicated herein, the facts set forth in this Declaration
are based upon my personal knowledge, information provided to me by the Debtors' employees
or advisors, or my opinion based upon knowledge and experience as Chief Restructuring Officer
of the Debtors. I am authorized to submit this Declaration on behalf of the Debtors.

### The Debtors' Selection of Avoidance Action Professionals

4.      ASK is proposed to serve as special avoidance action counsel to the
Debtors to pursue preference recoveries on behalf of the estates. I understand that a
comprehensive review process is necessary when selecting and managing counsel and other
professionals in a bankruptcy case to ensure the bankruptcy professionals are subject to the
same client-driven market forces, security, and accountability as professionals in non-
bankruptcy engagements. The Debtors chose ASK because of, among other factors, its
expertise and extensive experience in the field of avoidance recoveries under the Bankruptcy
Code.

---

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Application.

2

5.      Because there are several thousand potential preference actions, the Debtors also propose to retain, by separate applications, Katten Muchin Rosenman LLP ("**Katten**") as special avoidance action counsel, and Acumen Recovery Services, LLC ("**Acumen**").  Acumen will provide Katten with data gathering, defense analysis and litigation support services to assist Katten in the pursuit of such preference recoveries.  ASK has its own in-house capabilities to perform the necessary data gathering and analysis services that Acumen will provide to Katten.  ASK on the one hand, and Katten and Acumen on the other hand, will split the potential preference actions equitably, subject to approval of the Restructuring Committee.

## Cost Supervision

5.      As Chief Restructuring Officer, I was involved in negotiating the terms of ASK's, Katten's, and Acumen's engagement on behalf of the Debtors. All three firms are being paid on a contingency basis with their fees and expenses payable solely from cash recovered from preference recoveries.  The fees payable to ASK, because it has its own in-house data gathering and analysis capabilities, are based on the same percentages and tiers as the fees payable to Katten and Acumen collectively.  The fee arrangements were negotiated with ASK, Katten, and Acumen on an arm's-length basis and are structured to incentivize the professionals to achieve the maximum recoveries in the shortest possible time for the benefit of the estates and their creditors.

6.      To achieve the most favorable compensation structure for the estates, the Debtors seek to minimize any extra burdens on the professionals and therefore do not desire that ASK spend the time and effort to maintain or submit time records to the Debtors, the

Office of the United States Trustee or the Court, as ASK's compensation is based solely on their success in achieving preference recoveries.

7.       ASK, Katten, and Acumen will provide the Debtors and the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") with monthly reports on the status of preference actions, recoveries and their fees and expenses.  They will also file short-form quarterly statements of their fees and expenses with the Court and file a final fee application detailing their fees, expenses, and recoveries.  The Debtors submit that such submissions will provide the Debtors, the Creditors' Committee, and the Court with adequate oversight of these professionals.

8.       As Chief Restructuring Officer of the Debtors, I supervise and manage professional fees and expenses incurred by the Debtors' outside counsel and other professionals. I or someone under my supervision will review the fee and expense statements submitted by ASK, Katten, and Acumen and assure that their fees and expenses are consistent with the terms of engagement approved by the Debtors and the Court. The aforementioned review and approval process does not differ when the Debtors employ outside professionals for non-bankruptcy cases. Moreover, ASK, Katten, and Acumen have informed me that the Debtors will be provided with the opportunity to review all fee and expense statements and request adjustments to such invoices to the extent that the Debtors determine that such adjustments are appropriate in light of the terms of engagement approved by the Debtors and the Court.

WEIL:\97062457\3\73217.0004

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 6th day of June, 2019

/s/ Mohsin Meghji
Mohsin Meghji
Chief Restructuring Officer,
Sears Holdings Corporation

5