**Hearing Date and Time: June 20, 2019 at 10:00 a.m. (Eastern Time)**
**Objection Date and Time: June 13, 2019 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                              :
                                                   :          **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.,*          :
                                                   :          **Case No. 18-23538 (RDD)**
                                                   :
                    Debtors.[1]                    :          **(Jointly Administered)**
-------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**NOTICE OF HEARING ON APPLICATION OF
DEBTORS FOR ENTRY OF ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF ACUMEN RECOVERY SERVICES,
LLC TO PROVIDE PREFERENCE ACTION RECOVERY AND ANALYSIS
SERVICES TO THE DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019**

**PLEASE TAKE NOTICE** that a hearing on the annexed application (the "**Application**"), of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**), for entry of order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules for the Southern District of New York (the "**Local Rules**"), to retain and employ Acumen Recovery Services, LLC to provide preference action recovery and analysis services to the Debtors *nunc pro tunc* to April 1, 2019, all as more fully set forth in the Application, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy Court**") on **June 20, 2019 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard..

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Application shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with

2

the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on

November 1, 2018 (ECF No. 405), so as to be filed and received no later than **June 13, 2019 at**

**4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

        **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and

served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Application, which order may be entered without further notice or opportunity to be heard.

        **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted upon default.


Dated: June 6, 2019
      New York, New York

        /s/ Garrett A. Fail
        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York  10153
        Telephone:  (212) 310-8000
        Facsimile:  (212) 310-8007
        Ray C. Schrock, P.C.
        Jacqueline Marcus
        Garrett A. Fail
        Sunny Singh

        *Attorneys for Debtors*
        *and Debtors in Possession*

WEIL:\97064411\1\73217.0004

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

----------------------------------------------------------------x

## APPLICATION OF DEBTORS FOR ENTRY
## OF ORDER AUTHORIZING THE EMPLOYMENT
## AND RETENTION OF ACUMEN RECOVERY SERVICES, LLC
## TO PROVIDE PREFERENCE ACTION RECOVERY AND ANALYSIS
## SERVICES TO THE DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully

represent as follows in support of this application (the "**Application**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## Relief Requested

1.      By this Application, the Debtors request, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), entry of an order authorizing the employment and retention of Acumen Recovery Services, LLC ("**Acumen**") to provide data gathering, defense analysis, and litigation support services to the Debtors, effective *nunc pro tunc* to April 1, 2019, and granting related relief, in accordance with the terms and conditions set forth in the engagement letter between the Debtors and Acumen dated as of April 1, 2019 (the "**Engagement Letter**").

2.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").  A copy of the Engagement Letter is annexed to the Proposed Order as **Exhibit 1**.

3.      In support of this Application, the Debtors submit the *Declaration of Michael A. Cohen in Support of Application of Debtors for Entry of Order Authorizing the Employment and Retention of Acumen Recovery Services, LLC to Provide Preference Action Recovery and Analysis Services to the Debtors Nunc Pro Tunc to April 1, 2019*, a copy of which is annexed hereto as **Exhibit B** (the "**Cohen Declaration**"), and the Declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, which is attached hereto as **Exhibit C** (the "**Meghji Declaration**").

## Jurisdiction

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

WEIL:\97064411\1\73217.0004

(Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5.     Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

7.     The Debtors' cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

8.     On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**"). The Sale Transaction closed on February 11, 2019.

9.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on the Commencement Date (ECF No. 3).

WEIL:\97064411\1\73217.0004

### Acumen's Qualifications

10.     The Debtors are seeking to retain Acumen to provide the Debtors with data gathering, defense analysis, and litigation support services in light of the large volume of the Debtors' prepetition transactions and because of Acumen's expertise, experience, and knowledge. Acumen is experienced in providing preference recovery and analysis services to chapter 7 and 11 debtors. Acumen provides real-time data analysis and recovery forecasting together with secure data management and robust reporting tools to help streamline and expedite the process of recovering avoidable transfers for the benefit of chapter 7 and 11 debtors. The retention of Acumen will help streamline and expedite the process of recovering avoidable transfers for the benefit of the Debtors' Estates. Acumen's substantive understanding of the restructuring process, and its analytical and litigation management software, make it well-qualified to assist the Debtors in maximizing the value of the recoveries for the Debtors and their estates.

11.     Since the commencement of its engagement, Acumen has familiarized itself with the Debtors' businesses and taken the necessary preliminary steps to evaluate and analyze potential preference actions and the viability of potential defenses. The Debtors believe that the retention of Acumen will ensure the cost-effective and efficient analysis and recovery, to the ultimate benefit of the Debtors' creditors. Acumen's professionals will work closely with the Debtors to avoid the duplication of efforts.

12.     Acumen's professionals are experienced in representing clients in chapter 11 cases. Acumen has been actively involved in chapter 11 cases including *In re Rupari Holding Corp.*, No. 17-10793 (Bankr. D. Del. Oct. 31, 2017) and *In re Zetta Jet USA, Inc. (f/k/a Advanced Air Management, Inc.)*, No. 17-21386 (Bankr. C.D. Cal. Aug. 8, 2018).

WEIL:\97064411\1\73217.0004

## Services to Be Rendered

13.     Acumen has agreed to provide services to the Debtors in these chapter 11 cases to analyze certain avoidance actions that belong to the Debtors in accordance with the terms and conditions set forth in the Engagement Letter.  The terms of the Engagement Letter reflect the mutual agreement between the Debtors and Acumen as to the efforts that may be required of Acumen throughout the course of these proceedings.   The Engagement Letter provides, in consideration for the compensation contemplated thereby, that Acumen, to the extent reasonably requested by the Debtors, will render the following services (collectively, the "**Services**"):[2] providing the Debtors, their attorneys, and other professionals and advisors with non-legal services in anticipation of and in connection with litigation, including, but not limited to, analyzing, pursuing and/or settling certain avoidance actions against non-insider non-affiliate transferees arising under chapter 5 of title 11 of the United States Code and/or analogous state law assigned to Acumen or otherwise identified by the Debtors (collectively, the "**Preference Actions**") in connection with the Debtors' bankruptcy cases.[3]

14.     As noted in the Engagement Letter, Acumen will be working with law firm Katten Muchin Rosenman LLP ("**Katten**") who will be investigating, analyzing, prosecuting and/or settling certain Preference Actions.  To assist with the volume of expected avoidance actions the Debtors also intend to retain ASK LLP ("**ASK**") by separate application in connection

---

[2] In the event of any inconsistency between the description of the Services as set forth herein and the Engagement Letter, the Engagement Letter shall control.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

[3] The Debtors may further request, and Acumen may agree to provide, non-legal services to the Debtors outside the scope of the Services upon supplemental disclosure to the Bankruptcy Court.

WEIL:\97064411\1\73217.0004

with these chapter 11 cases.  As discussed herein, Katten, Acumen, ASK, and the Debtors'

professionals will work to ensure no duplication of services occurs.[4]

15.    The Services are necessary to enable the Debtors to maximize the value of

their estates.  Additionally, the Debtors have been advised by Acumen that it will coordinate with

the Debtors' other retained professionals to avoid unnecessary duplication or overlap of work.

## Professional Compensation

16.    Subject to Court approval, and in accordance with the Bankruptcy Code, the

Bankruptcy Rules and the Local Rules, the Debtors will compensate Acumen in accordance with

the terms and provisions of the Engagement Letter, which provides a compensation structure (the

"**Fee and Expense Structure**") in relevant part as follows:[5]

    a.    Proceeds recovered on account of the Preference Actions shall be paid to Acumen[6] according to the following contingency fee structure (the "**Contingency Fee Schedule**"):[7]

        (1)    <u>Tier 1</u>: If the total amount of the gross proceeds recovered on account of the Preference Actions (the "**Gross Proceeds**") obtained is less than $25 million, Acumen shall be paid 3.5% of the Gross Proceeds obtained in any Preference Action settled prior to the filing

---

[4] Contemporaneously herewith, the Debtors have submitted separate applications to retain Katten and ASK.

[5] In the event of any inconsistency between the description of the Fee and Expense Structure as set forth herein and the Engagement Letter, the Engagement Letter shall control.

[6] In addition to the fees to be paid to Acumen under the Contingency Fee Schedule, subject to Court approval, Katten may be entitled to separate and additional contingency fees as set forth in the engagement letter between the Debtors and Katten.

[7] If payment-in-kind, a claim waiver or other non-cash consideration is a component of the resolution of a Preference Action, Acumen will receive credit for such consideration to the extent provided for herein.  With respect to waivers of secured claims, administrative claims and other priority claims, the amount credited will be equal to 100% of the scheduled, agreed or allowed amount of the claim.  With respect to waivers of general unsecured claims, the amount of such credit will be calculated based on the amount of the anticipated distribution to the applicable claimant under an approved chapter 11 plan or, if no plan has been approved, the estimated distribution pursuant to an approved plan disclosure statement, or otherwise, on the claim being waived, with such amount constituting the Gross Proceeds of the applicable Preference Action.  With respect to payment-in-kind, or other non-cash consideration, the credit amount shall be approved by the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "**Restructuring Committee**"). For the avoidance of doubt, notwithstanding the inclusion of any non-cash recovery component in calculating Gross Proceeds, any payment to Acumen shall be limited to the cash proceeds actually recovered from the Preference Actions.

WEIL:\97064411\1\73217.0004

of a complaint and 3.5% of the Gross Proceeds obtained after the filing of a complaint.

(2) <u>Tier 2</u>: If the total amount of Gross Proceeds obtained is between $25 million and $50 million, Acumen shall be paid 6% of the Gross Proceeds obtained in any Preference Action settled prior to the filing of a complaint and 6% of the proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply retroactively to all Gross Proceeds obtained in connection with the matter prior to the $25 million threshold being met (i.e., after the $25 million threshold is achieved, the foregoing percentages shall apply to all Gross Proceeds obtained, beginning with the first dollar of Gross Proceeds obtained).

(3) <u>Tier 3</u>: If the total gross amount of Gross Proceeds obtained is more than $50 million, then (i) through and including the date that is eighteen (18) months after the date on which the Bankruptcy Court approves Katten's and Acumen's engagement (the "**Outside Date**"), Acumen shall be paid 10% of the gross proceeds obtained in any Preference Action settled prior to the filing of a complaint and 7% of the Gross Proceeds obtained after the filing of a complaint, and (ii) after the Outside Date, Acumen shall be paid 6% of the Gross Proceeds obtained in any Preference Action settled prior to the filing of a complaint and 6% of the Gross Proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply only to Gross Proceeds above $50 million.

(4) <u>Tail Compensation</u>: If the Debtors elect to terminate the Engagement Letter without Cause (as defined in the Engagement Letter), including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue Katten's and Acumen's engagement in accordance with their respective engagement letters), the Debtors will remain obligated to pay Acumen its contingency fee amount earned as of the date of termination and all fees based on recoveries in the Preference Actions for a period extending twelve months after the date of termination ("**Tail Compensation**").[8]

b. Out-of-pocket expenses (the "**Expenses**"), including but not limited to, data transfer, storage and management, postage, travel expenses, entity verification fees, adversary proceeding and other court filing fees, process

---

[8] If Acumen voluntarily terminates the Engagement Letter or the Debtors terminate the Engagement Letter for Cause, Acumen shall be entitled to no fee payments, including the Tail Compensation, but shall be entitled to receive 100% of expenses and disbursements advanced, which amounts shall only be payable from, and at the time of the Debtors' receipt of, any cash proceeds actually recovered. For the avoidance of doubt, Tail Compensation shall be determined using the same compensation tiers as set forth above and in determining the amount of Tail Compensation to which Acumen is entitled shall count all Gross Proceeds received prior to Acumen's termination without cause.

WEIL:\97064411\1\73217.0004

service fees and telephone charges will be charged against the Gross Proceeds.

17.    Acumen will provide the Debtors, with a copy to counsel to the Creditors' Committee, with monthly reports summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection and sending monthly status reports detailing the status of all pending cases that remain open for collection.

18.    The Debtors believe that Acumen's rates are reasonable given the quality of Acumen's services and its professionals' bankruptcy expertise.  Additionally, the Fee and Expense Structure was established to reflect the voluminous and time-sensitive nature of the assignments Acumen expects to undertake, as well as the potential for failure.  The Debtors thus believe that the Fee and Expense Structure is reasonable.

19.    In determining the level of compensation to be paid to Acumen and its reasonableness, the Debtors compared Acumen's proposed fees with preference recovery fees proposed by other professionals.  The Fee and Expense Structure anticipates that a substantial commitment of professional time and effort would be required of Acumen and its professionals, and that such commitment may foreclose other opportunities for Acumen.  No advance or retainer is contemplated by Acumen's engagement.

20.    The Debtors also submit that Acumen has obtained valuable institutional knowledge of the Debtors' creditors and causes of action as a result of its providing services, including a preliminary preference recovery analysis, to the Debtors prior to the filing of this Application.  Acumen is also expected to have started its recovery demand process before approval of this Application is considered by the Court.  Therefore, Acumen is not only well qualified, but also uniquely able to perform these services and assist the Debtors in these chapter 11 cases.

WEIL:\97064411\1\73217.0004

21.     The Fee and Expense Structure is entirely based on reimbursement of expenses and dollar amounts recovered—not on time expended.  Accordingly, and as described further below, Acumen and the Debtors request that Acumen not be required to maintain or submit time records in connection with this matter.  Notwithstanding the foregoing, Acumen intends to file short-form quarterly statements and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred (as more fully described below).  Acumen also will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above.  Acumen will be paid under the terms of the Engagement Letter in the ordinary course commencing upon approval of this Application by this Court.[9]

22.     In sum, in light of the foregoing and given the uncertainty of success despite Acumen's commitment to the time and effort necessary to address issues as they arise, and the prices for Acumen's services for engagements of this nature, the Debtors believe that the Fee and Expense Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

23.     Accordingly, as more fully described below, the Debtors believe that this Court should approve Acumen's retention subject solely to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Acumen's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

---

[9]  The Debtors request that they be permitted to pay Acumen's fees and expenses as and when due in accordance with the Engagement Letter, and without the filing of any monthly fee statements, given the contingent nature of Acumen's proposed compensation.  Acumen's fees and expenses, however, will be set forth in all quarterly statements and final fee applications.

WEIL:\97064411\1\73217.0004

**No Duplication of Services**

24.    The Debtors intend that the services to be provided by Acumen will complement, and not duplicate, the services being rendered by other professionals retained in these chapter 11 cases.  Acumen understands that the Debtors have retained and may retain additional professionals during these cases and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  In particular, Acumen understands that the Debtors intend also to retain Katten and ASK to conduct preference recovery services on behalf of the Debtors.  As discussed in the Cohen Declaration, Katten and Acumen on one hand and ASK on the other have agreed to split the pool of potential preference actions equitably to designate which of the two parties will be responsible for investigating, analyzing, prosecuting and/or settling such preference actions so that no duplication will occur.

**Disinterestedness**

25.    To the best of the Debtors' knowledge, information, and belief, and except and to the extent disclosed herein and in the Cohen Declaration, Acumen is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors or their estates in connection with the matters for which Acumen is to be retained by the Debtors.

26.    During the 90-day period prior to the Commencement Date, Acumen was not paid any amounts.

**Relief Requested Should Be Granted**

27.    The Debtors seek authority to employ and retain Acumen to provide preference recovery and analysis services to the Debtors under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or

WEIL:\97064411\1\73217.0004

assist the [Debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code as those sections relate to cases under chapter 11 of the Bankruptcy Code, providing that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

28.    The Debtors also seek approval of the Fee and Expense Structure and the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides that the Debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including non-legal professionals, on flexible terms that reflect the nature of their services and market conditions.

29.    The Debtors believe the Fee and Expense Structure set forth in the Engagement Letter contains reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure adequately reflects (a) the nature of the services to be provided by Acumen and (b) fee and expense structures typically utilized by Acumen and other leading firms, which are generally compensated on a transactional basis for services of the type Debtors request Acumen to perform. In particular, the Debtors believe the Fee and Expense Structure creates the proper incentives through the use of tiers of contingency fees based on the successful recovery of value to the Debtors' estates. Moreover, Acumen's experience with respect to preference recovery services, coupled with the

nature and scope of work already performed by Acumen at the request of the Debtors, further supports the reasonableness of the Fee and Expense Structure.

30.    The Debtors respectfully submit that retaining and employing Acumen pursuant to the terms of the Engagement Letter is necessary and in the best interests of the Debtors' estates and all parties in interests in these chapter 11 cases.  The Debtors also believe that the terms and conditions of the Engagement Letter are reasonable in light of the anticipated high volume of creditors and other parties in interests that will be involved in these chapter 11 cases.

31.    Courts in this jurisdiction and others have approved relief similar to the relief requested in this Application.  *See, e.g.*, *In re Caritas Health Care, Inc.*, Case No. 09-40901 (CEC) (Bankr. E.D.N.Y. 2011); *In re Dreier LLP*, Case No. 08-15051 (SMB) (Bankr. S.D.N.Y. 2010).

32.    Accordingly, the Debtors respectfully request the Court enter an order appointing Acumen in these chapter 11 cases pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.

## Modification of Reporting Requirements is Justified

33.    Consistent with its ordinary practice and the practice of professionals retained to assist in the analysis and prosecution of preference actions on a contingency fee basis, Acumen does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.  Acumen intends to maintain records in support of any actual, necessary costs and expenses incurred in connection with rendering of its services in these cases.  As Acumen's compensation will be calculated and paid based on a fixed percentage of Gross Proceeds, Acumen requests that it be excused from the time keeping and reporting requirements of Bankruptcy Rule 2016(a) and the Guidelines adopted by the Office of the United States Trustee (the "**Fee Guidelines**").  The compensation to be paid to Acumen under the Engagement Letter is

WEIL:\97064411\1\73217.0004

a mathematical function of the applicable percentage according to the Contingency Fee Schedule multiplied by the amount for which any Preference Action is resolved, either by settlement or judgment. Because keeping time is not necessary to Acumen's success (a function of dollars recovered) nor is it an input into Acumen's compensation (which is contingency-based), Acumen should not be required to maintain time records for this matter or provide time records to the Debtors, the Court or the U.S. Trustee as Acumen would do if it were being retained and paid on an hourly basis. Indeed, requiring Acumen to maintain time records would unnecessarily reallocate resources that could otherwise be used by Acumen to engage in recovery efforts.

34. Further, the Debtors submit that the requirement to apply to the Court for interim and final allowance of compensation for professional services rendered should be satisfied by Acumen filing (i) short-form quarterly statements that include the amount of fees paid based on the Contingency Fee Schedule and a reasonably detailed itemization of Expenses incurred and paid and (ii) upon the conclusion of its services, a final fee application for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court. Because of the purely contingent nature of Acumen's compensation, the use of recovery proceeds rather than existing Estate funds to pay Acumen's fees and expenses, and the benefit to the Debtors' Estates of Acumen devoting maximum resources to pursuing and negotiating recoveries and not to reporting requirements— the Debtors submit that short-form interim statements, and without the need to file monthly statements, are appropriate and justified. Acumen will be paid under the terms of the Engagement Letter in the ordinary course commencing upon approval of this Application by this Court.[10]

---

[10]  The Debtors request that they be permitted to pay Acumen's fees and expenses as and when due in accordance with the Engagement Letter, and without the filing of any monthly fee statements, given the contingent nature of Acumen's

WEIL:\97064411\1\73217.0004

35.    Courts in this jurisdiction and others have approved modifications of the type requested here. *E.g.*, *In re Drier LLP*, No. 08-15051 (SMB) (Bankr. S.D.N.Y. Sept. 15, 2010) (authorizing procedure for applying for compensation and reimbursement by final fee application); *In re Drier LLP*, No. 08-15051 (SMB) (Bankr. S.D.N.Y. Aug. 6, 2014) (approving final fee application without time keeping requirement); *In re APP Winddown, LLC, et al.*, No 16-12551 (BLS) (Bankr. D. Del. July 31, 2017) (approving short-form format for fee applications).

### *Nunc Pro Tunc* Relief Is Warranted

36.    The Debtors seek *nunc pro tunc* relief in this instance due to the contingency fee nature of Acumen's retention and the fact that Acumen has already performed an extensive initial analysis of the potential Preference Actions, which analysis is compensated as part of the overall contingency fee (described herein).  The Debtors believe that employment of Acumen effective *nunc pro tunc* to April 1, 2019 is warranted under the circumstances of these chapter 11 cases so that Acumen may be compensated for and expenses incurred[11] prior to entry of an order approving Acumen's retention.  Further, the Debtors believe that no party-in-interest will be prejudiced by the granting of *nunc pro tunc* employment because Acumen has provided, and will continue to provide, valuable services to the Debtors' estates.

37.    Courts in this jurisdiction routinely approve *nunc pro tunc* employment similar to that requested herein.  *See, e.g.*, *In re Tops Holding II Corp.*, No. 18-22279 (Bankr. S.D.N.Y. March 22, 2018) (ECF No. 194); *In re Westinghouse Elec. Co. LLC*, No. 17-10751

---

proposed compensation.  Acumen's fees and expenses, however, will be set forth in all quarterly and final fee applications.

[11] To date, Acumen has not incurred any reimbursable expenses, but it is likely to do so prior to consideration of this Application by the Court.

(MEW) (Bankr. S.D.N.Y. Nov. 16, 2017) (ECF No. 1585); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014).

**<u>Notice</u>**

38.    Notice of this Application will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405) (the "**Amended Case Management Order**").    The Debtors respectfully submit that no further notice is required.

39.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WEIL:\97064411\1\73217.0004

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 6, 2019
New York, New York

SEARS HOLDINGS CORPORATION
(for itself and on behalf of its debtor affiliates
as Debtors and Debtors in Possession)


 /s/ Mohsin Meghji_____
NAME: Mohsin Meghji
TITLE:  Chief Restructuring Officer

WEIL:\97064411\1\73217.0004

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                   :
                                                        :    **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,               :
                                                        :    **Case No. 18-23538 (RDD)**
                                                        :
Debtors.[1]                                             :    **(Jointly Administered)**
                                                        :
-------------------------------------------------------------x

### ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ACUMEN RECOVERY SERVICES, LLC TO PROVIDE PREFERENCE ACTION RECOVERY AND ANALYSIS SERVICES TO THE DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

Upon consideration of the application (the "**Application**")[2] of the Debtors for entry of an order (this "**Order**") authorizing the Debtors to retain and employ Acumen Recovery Services, LLC ("**Acumen**") to provide preference action recovery and analysis services to the Debtors *nunc pro tunc* to April 1, 2019, on the terms and conditions set forth herein and in the engagement agreement between Acumen and Sears Holdings Corporation dated as of April 1, 2019

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used, but not otherwise defined herein, shall have their meanings ascribed to such terms in the Application.

(the "**Engagement Letter**") and granting related relief, all as more fully set forth in the Application; and upon the declaration of Michael A. Cohen, as Chief Executive Officer of Acumen, annexed to the Application as **Exhibit B** (the "**Cohen Declaration**") and the declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, attached to the Application as **Exhibit C** (the "**Meghji Declaration**"); and the Court being satisfied, based on the representations made in the Application and the Cohen Declaration, that Acumen is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that Acumen neither represents nor holds any interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged; and the Court having jurisdiction to decide the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Application and the opportunity for a hearing thereon having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Application (the "**Hearing**") if necessary; and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

2

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as set forth in this Order *nunc pro tunc* to April 1, 2019.

2.      The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, to engage Acumen to provide preference action recovery services to the Debtors *nunc pro tunc* to April 1, 2019, pursuant to the terms of the Application and the Engagement Letter, annexed hereto as **Exhibit 1.**

3.      All of Acumen's compensation as set forth in the Engagement Letter including, without limitation, the Contingency Fee Schedule, the Expenses, and related obligations are approved pursuant to section 328(a) of the Bankruptcy Code and Acumen shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of, and at the times specified in, the Engagement Letter.

4.      Acumen shall apply for allowance of compensation for Services rendered and reimbursement of Expenses incurred by filing (i) short-form quarterly statements that include the amount of fees paid based on the Contingency Fee Schedule and a reasonably detailed itemization of Expenses incurred and paid and (ii) upon the conclusion of its services, a final fee application for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court; *provided that*, Acumen shall be compensated and reimbursed pursuant to Bankruptcy Code section 328(a) and that Acumen's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code; *provided further that*, such fees and expenses shall be paid by the Debtors as and when due as set forth in the Engagement Letter without the need to file

WEIL:\97064411\1\73217.0004

monthly statements; *provided further that*, for the avoidance of doubt, such fees and expenses shall be subject to review and approval in any quarterly statements and final fee applications.

5.      Notwithstanding anything to the contrary herein, the Office of the United States Trustee for the Southern District of New York shall have the right to object to Acumen's interim and final fee applications (including expense reimbursement) on all grounds, including the reasonableness standard provided in section 330 of the Bankruptcy Code.

6.      Notwithstanding anything to the contrary, Acumen shall be excused from time-keeping reporting requirements in applying for allowance of compensation for Services authorized herein.

7.      None of the fees payable to Acumen shall constitute a "bonus" or fee enhancement under applicable law.

8.      To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern.  To the extent that there may be any inconsistency solely between the terms of the Application and the Engagement Letter, the terms of the Engagement Letter shall govern.

9.      The relief granted herein shall be binding upon any chapter 11 trustee appointed in the chapter 11 cases, any trustee of a trust to which the Katten/Acumen Actions are assigned in connection with confirmation of a chapter 11 plan, or any chapter 7 trustee appointed in the event of a subsequent conversion of the chapter 11 cases to cases under chapter 7.

10.     The terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

12.    This Court retains exclusive jurisdiction with respect to all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
         White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

WEIL:\97064411\1\73217.0004

## **Exhibit 1**

**Engagement Letter**

EXECUTION VERSION

## Acumen Recovery Services, LLC Engagement Agreement

This Agreement is entered into as of April 1, between Acumen Recovery Services, LLC ("***Acumen***") and Sears Holdings Corporation and its debtor affiliates in the jointly administered chapter 11 cases of *In re Sears Holdings Corporation, et al.*, Case No. 18-23538 (RDD) (the "***Bankruptcy Case***"), and their successors and assigns (collectively, the "***Client***"). In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Acumen agrees to provide the Client, its attorneys, other professionals and advisors with services in anticipation of and in connection with litigation, including, but not limited to, analyzing, pursuing and/or settling certain avoidance actions against non-insider non-affiliate transferees arising under chapter 5 of title 11 of the United States Code and/or analogous state law assigned to Acumen or otherwise identified by the Client (collectively, the "***Preference Actions***") in connection with the Bankruptcy Case, and any other services agreed upon by the parties (all such services collectively, the "***Services***.")

   (b) The Client acknowledges and agrees that Acumen will often take direction from the Client's attorneys, representatives, employees, agents and/or professionals (collectively, the "***Client Parties***") with respect to providing the Services. The parties agree that Acumen may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client.

   (c) While Acumen may facilitate Client's attorneys' ability to give legal advice and assisting the Client's attorneys in providing legal services, the Client agrees and understands that Acumen shall not provide the Client or any other party with legal advice.

2. **Fees and Expenses**

   (a) Acumen understands that the Client is separately retaining Katten Muchin Rosenman LLP ("***Katten***") as legal counsel in connection with the Preference Actions, on terms substantially similar to those described below, Katten and Acumen will work together to analyze and pursue the Preference Actions. In addition, the Client is retaining ASK LLP ("***ASK***") to analyze and pursue a separate group of avoidance actions (collectively with the Preference Actions, the "***Sears Actions***").

   (b) Client agrees that Acumen shall earn fees on a contingency basis equal to the following:

       i. <u>Tier 1</u>: If the total amount of the gross proceeds recovered on account of the Preference Actions (the "***Gross Proceeds***") obtained is less than $25 million, Acumen shall be paid 3.5% of the Gross Proceeds obtained in any Preference Action settled prior to the filing of a complaint and 3.5% of the Gross Proceeds obtained after the filing of a complaint.

       ii. <u>Tier 2</u>: If the total amount of Gross Proceeds obtained is between $25 million and $50 million, Acumen shall be paid 6% of the Gross Proceeds obtained in any Preference



Action settled prior to the filing of a complaint and 6% of the proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply retroactively to all Gross Proceeds obtained in connection with the matter prior to the $25 million threshold being met (i.e., after the $25 million threshold is achieved, the foregoing percentages shall apply to all Gross Proceeds obtained, beginning with the first dollar of Gross Proceeds obtained).

   iii.  <u>Tier 3</u>: If the total gross amount of Gross Proceeds obtained is more than $50 million, then (i) through and including the date that is eighteen (18) months after the date on which the Bankruptcy Court approves Katten's and Acumen's engagement (the "***Outside Date***"), Acumen shall be paid 10% of the gross proceeds obtained in any Preference Action settled prior to the filing of a complaint and 7% of the Gross Proceeds obtained after the filing of a complaint, and (ii) after the Outside Date, Acumen shall be paid 6% of the Gross Proceeds obtained in any Preference Action settled prior to the filing of a complaint and 6% of the Gross Proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply only to Gross Proceeds above $50 million.

   iv.  Subject to Bankruptcy Court approval, the Board of Directors of Sears Holdings Corporation (prior to the effective date of a Chapter 11 plan) and the liquidating trustee (after the effective date of a Chapter 11 plan) shall have the discretion to increase the contingency fee percentages set forth above and/or award a bonus to Acumen.

(c) If payment-in-kind, a claim waiver or other non-cash consideration is a component of the resolution of a Preference Action, Acumen will receive credit for such consideration to the extent provided for herein. With respect to waivers of secured claims, administrative claims and other priority claims, the amount credited will be equal to 100% of the scheduled, agreed or allowed amount of the claim. With respect to waivers of general unsecured claims, the amount of such credit will be calculated based on the amount of the anticipated distribution to the applicable claimant under an approved chapter 11 plan or, if no plan has been approved, the estimated distribution pursuant to an approved plan disclosure statement, or otherwise, on the claim being waived, with such amount constituting the Gross Proceeds of the applicable Preference Action. *For example, if a transferee waives a $100,000.00 general unsecured claim, and the distribution on such claim would be(under a plan) or is anticipated to be (pursuant to a disclosure statement) 10%, the Gross Proceeds of the settlement attributed to the claim waiver would be $10,000.00.* With respect to payment-in-kind, or other non-cash consideration, the credit amount shall be approved by the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "***Restructuring Committee***"). For the avoidance of doubt, notwithstanding the inclusion of any non-cash recovery component in calculating Gross Proceeds, any payment to Acumen shall be limited to the cash proceeds actually recovered from the Preference Actions.

(d) Out-of-pocket third-party expenses, including but not limited to, data transfer, storage and management, postage, travel expenses, entity verification fees, adversary proceeding and other court filing fees, process service fees and telephone charges, but shall not include secretarial or other labor costs, will be charged against the Gross Proceeds. Acumen will store all physical and electronic records without any charge.



(e)  The Client will be responsible for the payment of fees and expenses of Katten and ASK as well as other legal counsel that may be retained. The Client shall pay the fees and expenses relating to mediation and expert witnesses, including any experts and other professionals required to respond to a defendant's "objective" ordinary course of business defense. Acumen will defer to the Client, its attorneys and its advisors with respect to the decision to hire any experts, attorney's fees and expert witness fees. Any experts or third-party professionals who are retained to prove insolvency or to respond to a defendant's "objective" ordinary course of business defense are to be separately retained and shall not be considered part of this engagement.

## 3.  **Invoicing and Payment**

(a)  Acumen will open up a segregated account in connection with this engagement (the "***Proceeds Account***"). Acumen will deduct expenses and costs from Gross Proceeds once per month. Acumen will make monthly remittances, net of Acumen/Katten's fees and expenses, to the designated recipient. Acumen will also make wire transfers to the chosen account. As part of the remittance, Katten and Acumen will provide monthly reports to the Client, with a copy to counsel to the official committee of unsecured creditors ("***Creditors' Committee Counsel***") summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection. In the event there are insufficient Gross Proceeds in a given month to cover Acumen's expenses and costs, Acumen will record the deficiency and will deduct such deficiency from Gross Proceeds obtained in the following month(s) to the extent available. For the avoidance of doubt, Acumen will not be reimbursed for any expenses and costs exceeding Gross Proceeds. If Katten/Acumen is required to remit Gross Proceeds, then we expect payment of our respective invoices within 10 days of presentation, or as soon as practicable as allowed by the Bankruptcy Court. Katten and Acumen will also send monthly status reports to the Client, with a copy to Creditors' Committee Counsel, detailing the status of all pending cases that remain open for collection.

## 4.  **Confidentiality**

(a)  The Client and Acumen agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b)  If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

## 5.  **Property Rights**

Acumen reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other



information or property (collectively, the "***Property***") furnished by Acumen for itself or for use by the Client hereunder.  Fees and expenses paid by the Client do not vest in the Client any rights in such Property.  Such Property is only being made available for the Client's use during and in connection with the Services provided by Acumen hereunder.

## 6.  **Bank Accounts**

At the request of the Client or the Client Parties, Acumen shall be authorized to establish accounts with financial institutions in the name of and as agent for the Client, including the Proceeds Account.

## 7.  **Term and Termination**

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Acumen or Katten that causes material harm to the Client, (ii) a determination, decree, rule, guideline, order or statement of similar formality is issued by any court or government agency finding or recommending that Acumen or Katten not be permitted to serve as a professional for or advisor to a debtor, official committee, trustee or other fiduciary in a bankruptcy case, or (iii) the Restructuring Committee reasonably determines that Acumen or Katten has generally failed to prosecute or has abandoned prosecution of the Preference Actions.

(b)  If the Client elects to terminate this agreement without Cause, including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue Katten's and Acumen's engagement in accordance with their respective engagement letters), the Client will remain obligated to pay Acumen its contingency fee amount earned as of the date of termination and all fees based on recoveries in the Preference Actions for a period extending twelve months after the date of termination ("***Tail Compensation***").  If Acumen voluntarily terminates this agreement or Client terminates this agreement for Cause, Acumen shall be entitled to no fee payments hereunder, including the Tail Compensation, but shall be entitled to receive 100% of expenses and disbursements advanced, which amounts shall only be payable from, and at the time of the Client's receipt of, any cash proceeds actually recovered.  For the avoidance of doubt, Tail Compensation shall be determined using the same compensation tiers as set forth above and in determining the amount of Tail Compensation to which Acumen is entitled shall count all Gross Proceeds received prior to Acumen's termination without cause.

## 8.  **Client Data**

(a)  The Client agrees, represents and warrants to Acumen that before delivery of any information to Acumen: (i) the Client has full authority to deliver such information to Acumen; and (ii) Acumen is authorized to use such information to perform Services hereunder.

(b)  Any data, storage media, programs or other materials furnished to Acumen by the Client may be retained by Acumen until the Services provided hereunder are paid in full.  The Client shall remain liable for all fees and expenses incurred by Acumen under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Acumen.  Any such disposal shall be in a manner requested by or acceptable to the Client.



9. **Force Majeure**

Whenever performance by Acumen of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Acumen's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

10. **Choice of Law**

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

11. **Integration; Severability; Modifications; Assignment**

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Client and an officer of Acumen.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Acumen may assign this Agreement to a wholly-owned subsidiary or affiliate without the Client's consent.

12. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

13. **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Acumen:    Acumen Recovery Services, LLC
747 Third Avenue, 2nd Floor
New York, NY 10017
Attn: Michael A. Cohen
Email: mcohen@acumenrecovery.com



If to the Client:    Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attn: Mohsin Y. Meghji
Chief Restructuring Officer
Email: mmeghji@miiipartners.com

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.


Acumen Recovery Services, LLC

By:   Michael A. Cohen
Title: Chief Executive Officer


Sears Holding Corporation on behalf of itself and its Debtor Affiliates

By:
Title:   M. Y. MEGHJI
C. R. O.

6

## Exhibit B

**Cohen Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                        :
In re                                                   :        **Chapter 11**
                                                        :
**SEARS HOLDINGS CORPORATION,** *et al.*,               :        **Case No. 18-23538 (RDD)**
                                                        :
Debtors.[1]                                             :        **(Jointly Administered)**
                                                        :
-------------------------------------------------------------x

**DECLARATION OF MICHAEL A. COHEN IN SUPPORT OF APPLICATION OF
DEBTORS FOR ENTRY OF ORDER AUTHORIZING THE EMPLOYMENT AND
RETENTION OF ACUMEN RECOVERY SERVICES, LLC TO PROVIDE
PREFERENCE ACTION RECOVERY AND ANALYSIS SERVICES
TO THE DEBTORS *NUNC PRO TUNC* TO APRIL 1, 2019**

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**") I, Michael A. Cohen, hereby declare as follows:

1.      I am the Chief Executive Officer of Acumen Recovery Services, LLC

("**Acumen**"), among other things, a preference analysis and recovery firm with its headquarters at

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

747 Third Avenue, 2nd Floor, New York, NY 10017. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.

2.     I submit this declaration (the "**Declaration**") in support of the application (the "**Application**")[2] of the Debtors for an order under sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2, authorizing the Debtors to employ and retain Acumen, effective *nunc pro tunc* to April 1, 2019, to provide preference recovery and analysis services to the Debtors in connection with their chapter 11 cases. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3.     Acumen is a leader in providing preference recovery and analysis services to chapter 7 and 11 debtors. Acumen is experienced in providing data gathering, defense analysis, and litigation support services to pursue the recovery of avoidable transfers. Acumen provides real-time data analysis and recovery forecasting together with secure data management and robust reporting tools to help streamline and expedite the process of recovering avoidable transfers for the benefit of chapter 7 and 11 debtors.

## Services

4.     Acumen will be working with the law firm of Katten Muchin Rosenman LLP ("**Katten**") and will provide the requisite analysis and litigation support to enable Katten and Acumen ("**Katten/Acumen**") to pursue recovery of preferences for the benefit of the Debtors' estates (the "**Katten/Acumen Actions**"). In light of the large volume of potential preferences, the Debtors have also engaged the law firm of ASK LLP ("**ASK**") to pursue preference recoveries on behalf of the Debtors' estates (the "**ASK Actions**"). To ensure a level of consistency and efficiency Katten/Acumen and ASK will coordinate their efforts so that no duplication of services

---

[2]     Capitalized terms not defined in this Declaration shall have the meanings given to those terms in the Application.

WEIL:\97052472\3\73217.0004

occur.  Further, because the Katten/Acumen Actions and the ASK Actions are different there will
not be a duplication of services by Katten/Acumen and ASK.  Acumen will coordinate with the
Debtors' other retained professionals to avoid unnecessary duplication or overlap of work.

5.      Since the commencement of its engagement, Acumen has familiarized itself
with the Debtors' businesses and taken the necessary preliminary steps to evaluate and analyze
potential preference actions and the viability of potential defenses.

### Disinterestedness

6.      In connection with the preparation of this Declaration, Acumen conducted
an analysis to determine whether it holds or represents any interests adverse to the Debtors.  Such
analysis consisted of a conflicts search of each of the Debtors and each of the preference targets
that Katten/Acumen will pursue (the "**Searched Parties**").[3]  Acumen's review included providing
a list of such parties to all Acumen employees and conducting a query of such Searched Parties in
a database containing the names of individuals and entities that are represented by Acumen.  Based
on the results of its review, to the best of my knowledge, except as discussed below, Acumen does
not have an active relationship with any of the Searched Parties in matters related to these chapter
11 cases.

7.      Further, as part of its diverse practice, Acumen appears in numerous cases,
proceedings, and participates in transactions that involve many different professionals, including
attorneys, accountants, and financial consultants, who represent claimants and parties in interest
in these chapter 11 cases.  Further, Acumen has performed in the past, and may perform in the

---

[3]    In light of the narrow focus of Acumen's representation as a provider of preference recovery and analysis services
with respect to the Katten/Acumen Actions, Acumen's search of its conflicts database was limited in scope as set
forth above.  To the extent Katten or Acumen has a conflict with a particular preference target, it has been agreed
that ASK will handle any such action and vice versa. To the extent required by the Court or the United States
Trustee, however, Acumen will broaden its search and file any necessary supplemental declarations.

3

future, services for various clients that may be involved in these proceedings. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which Acumen is to be employed, and none are in connection with the Debtors' chapter 11 cases.

8.    Acumen does not believe it is a "creditor" of the Debtors within the meaning of section 101(10) of the Bankruptcy Code. Further, neither I nor any member of the Acumen engagement team serving the Debtors, to the best of my knowledge, is a holder of any of the Debtors' debt or equity securities.

9.    To the best of my knowledge, Acumen is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Acumen:

    a)    is not a creditor, equity security holder, or insider of the Debtors;

    b)    was not, within two years before the date of filing of the Debtors' chapter 11 petition, a director, officer, or employee of the Debtors; and

    c)    does not have an interest materially adverse to the interests of the Debtors' estate or of any class of creditors or equity security holders.

10.    In addition, to the best of my knowledge and based upon the results of the relationship search of the Search Parties described above and disclosed herein, other than as described herein, Acumen neither holds nor represents an interest adverse to the Debtors.

11.    If any new material relevant facts or relationships are discovered or arise, Acumen will promptly file a supplemental declaration under Rule 2014(a) of the Bankruptcy Rules.

WEIL:\97052472\3\73217.0004

**Professional Compensation**

12.     Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable United States Trustee guidelines, and any orders of this Court, Acumen will seek payment for compensation in accordance with the contingency fee arrangement set forth in its engagement letter as **Exhibit 1** annexed to the proposed order attached as **Exhibit A** to the Application (the "**Contingency Fee Schedule**"). Acumen shall be paid solely from the proceeds of the Katten/Acumen Actions.

13.     The compensation to be paid to Katten under the Engagement Letter is a mathematical function of the applicable percentage according to the Contingency Fee Schedule multiplied by the amount of the Katten/Acumen Proceeds and is unrelated to the hours spent by Acumen professionals in providing its services to the Debtors.   Accordingly, I believe that Acumen should not be required to maintain time records for this matter or provide time records to the Debtors, the Court or the U.S. Trustee.   Further, instead of applying to the Court for allowance of compensation for professional services rendered on a monthly or quarterly basis, Acumen should be permitted to file short-form quarterly statements that include the amount of fees paid based on the Contingency Fee Schedule and a reasonably detailed itemization of expenses incurred and paid.   Upon the conclusion of its services, Acumen will file a final fee application for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with section 330 of the Bankruptcy Code.

14.     To the best of my knowledge, (a) no commitments have been made or received by Acumen with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules and (b) Acumen has no agreement with any person other than the professionals and employees of

5

Acumen to share with such person any compensation received by Acumen in connection with these chapter 11 cases.

15.    Acumen provides the following responses to the questions posed in the United States Trustee Guidelines and set forth below:

| Questions: | Answer: |
|---|---|
| Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? | No. |
| Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? | No. |
| If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If your billing rates and material financial terms have changed post-petition, explain the difference and reasons for the difference. | N/A |
| Has your client approved your respective budget and staffing plan, and, if so, for what budget period? | Compensation is a contingency-based fee, plus reimbursement of expenses. |

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 6, 2019

/s/ Michael A. Cohen
Michael A. Cohen
Chief Executive Officer
Acumen Recovery Services, LLC

6

**<u>Exhibit C</u>**

**Meghji Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                              :

                                                   :        **Chapter 11**

**SEARS HOLDINGS CORPORATION**, *et al.*,          :

                                                   :        **Case No. 18-23538 (RDD)**

                                                   :

            **Debtors.**[1]                         :        **(Jointly Administered)**

---------------------------------------------------------------x

## DECLARATION OF MOHSIN MEGHJI IN SUPPORT OF APPLICATION OF DEBTORS FOR AUTHORITY TO EMPLOY AND RETAIN ACUMEN RECOVERY SERVICES LLC TO PROVIDE PREFERENCE ACTION RECOVERY AND ANALYSIS SERVICES TO THE DEBTORS EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

Mohsin Meghji makes this declaration under 28 U.S.C. § 1746:

1.      I am the Chief Restructuring Officer of Sears Holding Corporation ("**Sears Holdings**"). In my current role at Sears Holdings, I am responsible for supervising outside counsel and other professionals and monitoring and managing legal fees and expenses.

2.      On October 15, 2018 (the "**Commencement Date**"), Sears Holdings and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Code (the "**Bankruptcy Code**"). I submit this Declaration in support of the Debtors'

application (the "**Application**")[2] pursuant to sections 327(a) and 328 of the Bankruptcy Code,

Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")

and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New

York (the "**Local Rules**"), for authority to employ and retain Acumen Recovery Services, LLC

("**Acumen**") to provide preference action recovery and analysis services to the Debtors in the

above-captioned chapter 11 cases, *nunc pro tunc* to April 1, 2019, filed contemporaneously

herewith.

   3. This Declaration is provided pursuant to Paragraph D.2 of the *United*

*States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of*

*Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective

November 1, 2013. Except as otherwise indicated herein, the facts set forth in this Declaration

are based upon my personal knowledge, information provided to me by the Debtors' employees

or advisors, or my opinion based upon knowledge and experience as Chief Restructuring Officer

of the Debtors.  I am authorized to submit this Declaration on behalf of the Debtors.

**The Debtors' Selection of Avoidance Action Professionals**

   4. Acumen is proposed to be retained to provide the Debtors with

preference recovery and analysis services to enable the Debtors to pursue preference recoveries

for the benefit of their estates and their creditors.  By separate application, the Debtors also

propose to engage the law firm of Katten Muchin Rosenman LLP ("**Katten**"), as special

avoidance action counsel.  Acumen is proposed to be retained to assist Katten and provide it

with data analysis and preference recovery forecasting, together with secure data management

and reporting capabilities to help streamline and expedite the process of recovering avoidable

---

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Application.

2

transfers for the benefit of the Debtors and their estates.  I understand that a comprehensive review process is necessary when selecting and managing counsel and other professionals in a bankruptcy case to ensure the bankruptcy professionals are subject to the same client-driven market forces, security, and accountability as professionals in non-bankruptcy engagements. The Debtors chose Acumen because of, among other factors, its expertise and extensive experience in the field of avoidance recoveries under the Bankruptcy Code.

5.     Because there are several thousand potential preference actions, the Debtors also propose to retain, by separate application, ASK LLP ("**ASK**") as special avoidance action counsel.  Acumen and Katten on the one hand, and ASK on the other hand, will split the potential preference actions equitably, subject to approval of the Restructuring Committee.

## <u>Cost Supervision</u>

5.     As Chief Restructuring Officer, I was involved in negotiating the terms of Acumen's, Katten's and ASK's engagement on behalf of the Debtors. All three firms are being paid on a contingency basis with their fees and expenses payable solely from cash recovered from preference recoveries.  The fees payable to Acumen and Katten collectively, are based on the same percentages and tiers as the fees payable to ASK, because ASK has its own in-house data gathering and analysis capabilities.  The fee arrangements were negotiated with Acumen, Katten, and ASK on an arm's-length basis and are structured to incentivize the professionals to achieve the maximum recoveries in the shortest possible time for the benefit of the estates and their creditors.

6.     To achieve the most favorable compensation structure for the estates, the Debtors seek to minimize any extra burdens on the professionals and therefore do not desire

3

that Acumen spend the time and effort to maintain or submit time records to the Debtors, the Office of the United States Trustee or the Court, as Acumen's compensation is based solely on their success in achieving preference recoveries.

7.    Acumen, Katten, and ASK will provide the Debtors and the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") with monthly reports on the status of preference actions, recoveries and their fees and expenses.  They will also file short-form quarterly statements of their fees and expenses with the Court and file a final fee application detailing their fees, expenses and recoveries.  The Debtors submit that such submissions will provide the Debtors, the Creditors' Committee, and the Court with adequate oversight of these professionals.

8.    As Chief Restructuring Officer of the Debtors, I supervise and manage professional fees and expenses incurred by the Debtors' outside counsel and other professionals. I or someone under my supervision will review the fee and expense statements submitted by Acumen, Katten and ASK and assure that their fees and expenses are consistent with the terms of engagement approved by the Debtors and the Court. The aforementioned review and approval process does not differ when the Debtors employ outside professionals for non-bankruptcy cases. Moreover, Acumen, Katten, and ASK have informed me that the Debtors will be provided with the opportunity to review all fee and expense statements and request adjustments to such invoices to the extent that the Debtors determine that such adjustments are appropriate in light of the terms of engagement approved by the Debtors and the Court.

WEIL:\97062447\2\73217.0004

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 6th day of June, 2019

/s/ Mohsin Meghji
Mohsin Meghji
Chief Restructuring Officer,
Sears Holdings Corporation

5