WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re                                                                  :
                                                                           :          **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.,*          :
                                                                           :          **Case No. 18-23538 (RDD)**
                                                                           :
                        Debtors.[1]                             :          **(Jointly Administered)**
-------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## NOTICE OF HEARING ON APPLICATION OF DEBTORS FOR ENTRY OF ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KATTEN MUCHIN ROSENMAN LLP AS SPECIAL AVOIDANCE ACTION COUNSEL FOR DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

**PLEASE TAKE NOTICE** that a hearing on the annexed application (the "**Application**") of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**), for entry of order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules for the Southern District of New York (the "**Local Rules**"), to retain and employ Katten Muchin Rosenman LLP as special counsel for the Debtors, *nunc pro tunc* to April 1, 2019, all as more fully set forth in the Application, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy Court**") on **June 20, 2019 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard..

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Application shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on

November 1, 2018 (ECF No. 405), so as to be filed and received no later than **June 13, 2019 at**

**4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

        **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and

served with respect to the Application, the Debtors may, on or after the Objection Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Application, which order may be entered without further notice or opportunity to be heard.

        **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted upon default.


Dated: June 6, 2019
      New York, New York

                       /s/ Garrett A. Fail
                       WEIL, GOTSHAL & MANGES LLP
                       767 Fifth Avenue
                       New York, New York  10153
                       Telephone:  (212) 310-8000
                       Facsimile:  (212) 310-8007
                       Ray C. Schrock, P.C.
                       Jacqueline Marcus
                       Garrett A. Fail
                       Sunny Singh

                       *Attorneys for Debtors*
                       *and Debtors in Possession*

WEIL:\97064412\1\73217.0004

Hearing Date and Time: June 20, 2019 at 10:00 a.m. (Eastern Time)
Objection Date and Time: June 13, 2019 at 4:00 p.m. (Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
In re                                                      :
                                                           :     **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,                  :
                                                           :     **Case No. 18-23538 (RDD)**
                                                           :
Debtors.[1]                                                :     **(Jointly Administered)**
-------------------------------------------------------------------x

### APPLICATION OF DEBTORS FOR ENTRY OF ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KATTEN MUCHIN ROSENMAN LLP AS SPECIAL AVOIDANCE ACTION COUNSEL FOR DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

            Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully

represent as follows in support of this application (the "**Application**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## Relief Requested

1.      By this Application, the Debtors request, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), entry of an order authorizing the employment and retention of Katten Muchin Rosenman LLP ("**Katten**") as special counsel to the Debtors for the investigation and prosecution of and collection of recoveries from certain avoidance actions against non-insider third-parties, effective *nunc pro tunc* to April 1, 2019, and granting related relief, in accordance with the terms and conditions set forth in the engagement letter between the Debtors and Katten dated as of April 1, 2019 (the "**Engagement Letter**").

2.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").  A copy of the Engagement Letter is annexed to the Proposed Order as **Exhibit 1**.

3.      In support of this Application, the Debtors submit the *Declaration of Steven J. Reisman in Support of Application of Debtors for Entry of Order Authorizing the Employment and Retention of Katten Muchin Rosenman LLP as Special Avoidance Action Counsel For Debtors Effective Nunc Pro Tunc to April 1, 2019*, a copy of which is annexed hereto as **Exhibit B** (the "**Reisman Declaration**"), and the Declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, which is attached hereto as **Exhibit C** (the "**Meghji Declaration**").

## Jurisdiction

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

## Background

5.    Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Creditors' Committee**").  No trustee or examiner has been appointed in these chapter 11 cases.

7.    The Debtors' cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

8.    On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**").  The Sale Transaction closed on February 11, 2019.

9.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on the Commencement Date (ECF No. 3).

WEIL:\97064412\1\73217.0004

### Katten's Qualifications

10.     The Debtors seek to retain Katten in light of the large volume of the

Debtors' prepetition transactions and because of Katten's expertise, experience, and knowledge in

the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11

of the Bankruptcy Code.

11.     Katten has been actively involved in major chapter 11 cases and has

represented debtors in many cases, including, among others, *In re Sizmek Inc.*, 19-10971 (SMB)

(Bakr. S.D.N.Y., April 23, 2019); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr.

S.D.N.Y., April 22, 2019); *In re J&M Stores, Inc.*, No. 18-11901 (LSS) (Bankr. D. Del., Aug. 27,

2018) and *In re Vitamin World, Inc.*, No 17-11933 (KJC) (Bankr. D. Del., Oct. 18, 2017).   In

addition, the attorneys at Katten have broad experience acting as counsel in large chapter 11 cases.

While at a prior firm, certain of the attorneys at Katten working on this engagement have

represented debtors in many cases, including, among others, *In re Fairway Group Holdings Corp.*,

No. 16-11241 (MEW) (Bankr. S.D.N.Y. June 1, 2016); *In re Breitburn Energy Partners LP*, No.

16-11390 (SMB) (Bankr. S.D.N.Y. June 15, 2016); *In re Genco Shipping & Trading Limited*, No.

14-11108 (SHL) (Bankr. S.D.N.Y. May 16, 2014); *In re Ashley Stewart Holdings, Inc.* (14-

14383)(MBK) (Bankr. D. N.J. April 1, 2014); *In re American Roads LLC*, No. 13-12412 (BRL)

(Bankr. S.D.N.Y. Aug. 21, 2013); *In re Trinity Coal Corp.*, No. 13-50364 (TNW) (Bankr. E.D.

Ky. April 5, 2013); *In re Residential Capital*, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Jul. 16,

2012); *In re Hawker Beechcraft*, Inc., No. 12-11873 (SMB) (Bankr. S.D.N.Y. May 30, 2012); *In

re Gen. Mar. Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 12, 2011); *In re Sbarro, Inc.*, No.

11-11527 (SCC) (Bankr. S.D.N.Y. May 3, 2011); *In re FGIC Corp.*, No. 10-14215 (SMB) (Bankr.

S.D.N.Y. Oct. 19, 2010); *In re CIT Group, Inc.*, No. 09-16565 (ALG) (Bankr. S.D.N.Y. Nov. 24,

2009); *In re Readers' Digest Ass'n, Inc.*, No. 09-23529 (RDD) (Bankr. S.D.N.Y. Sept. 17, 2009);

*In re Lear Corp.*, No. 09-14326 (ALG) (Bankr. S.D.N.Y. Jul. 31, 2009); *In re Star Tribune Holdings Corp.*, No. 09-10244 (RDD) (Bankr. S.D.N.Y. Feb. 9, 2009); and *In re Lehman Brothers Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 21, 2008). Katten is generally familiar with the Debtors' businesses and the types of legal issues that may arise in the context of these chapter 11 cases, and as discussed below, have conducted a preliminary detailed analysis of the Debtors' potential avoidance actions. Accordingly, Katten has developed significant relevant experience and expertise that will enable Katten to provide necessary services in these chapter 11 cases. The Debtors believe that Katten is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services to Be Rendered

12.     Katten has agreed to provide services to the Debtors in these chapter 11 cases to analyze, prosecute, and/or settle certain avoidance actions that belong to the Debtors in accordance with the terms and conditions set forth in the Engagement Letter. The terms of the Engagement Letter reflect the mutual agreement between the Debtors and Katten as to the efforts that may be required of Katten throughout the course of these proceedings. The Engagement Letter provides, in consideration for the compensation contemplated thereby, that Katten will, to the extent reasonably requested by the Debtors, render the following services (collectively, the "**Services**"):[2] advise and represent the Debtors in connection with investigating, analyzing, prosecuting and/or settling claims held by the Debtors against non-insider, non-affiliate transferees arising under section 547 of the Bankruptcy Code (collectively, the "**Preference Actions**").[3]

---

[2] In the event of any inconsistency between the description of the Services as set forth herein and the Engagement Letter, the Engagement Letter shall control. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

[3] The Debtors may further request, and Katten may agree to provide, legal services to the Debtors outside the scope of the Services upon supplemental disclosure to the Bankruptcy Court.

WEIL:\97064412\1\73217.0004

13.     As noted in the Engagement Letter, Katten will be working with Acumen Recovery Services, LLC ("**Acumen**")—a data analysis and advisory firm which focuses on data gathering, defense analysis and litigation support—in order to assist Katten in connection with investigating, analyzing, prosecuting and/or settling Preference Actions.  To assist with the volume of expected Preference Actions, the Debtors also intend to retain ASK LLP ("**ASK**") by separate application in connection with these chapter 11 cases.  As discussed herein, the engagements are designed, and Katten, Acumen, ASK, and the Debtors' professionals will work, to ensure no duplication of services occurs.[4]

14.     Katten's engagement is conditioned upon the Preference Actions being divided in the manner directed by the Debtors equally based on expected net recoveries, as determined by Katten and Acumen in their reasonable discretion, between Katten and Acumen (together, "**Katten/Acumen**"), on the one hand, and ASK on the other hand (the Preference Actions to be pursued by Katten/Acumen, the "**Katten/Acumen Actions**" and Preference Actions to be pursued by ASK, the "**ASK Actions**"). ASK and Katten/Acumen may agree to modify the list of ASK Actions and Katten/Acumen Actions with the approval of the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "**Restructuring Committee**").

15.     The Services are necessary to enable the Debtors to maximize the value of their estates.  Additionally, the Debtors have been advised by Katten that it will coordinate with the Debtors' other retained professionals to avoid unnecessary duplication or overlap of work.

## Professional Compensation

16.     Subject to Court approval, and in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, the Debtors will compensate Katten in accordance with

---

[4] Contemporaneously herewith, the Debtors have submitted separate applications to retain Acumen and ASK.

WEIL:\97064412\1\73217.0004

the terms and provisions of the Engagement Letter, which provides a compensation structure (the

"**Fee and Expense Structure**") in relevant part as follows:

    a.    Any cash proceeds obtained in connection with the Katten/Acumen Actions (collectively, the "**Katten/Acumen Proceeds**")[5] shall first be used to reimburse reasonable and documented direct and indirect expenses and costs of Katten and Acumen (the "**Expenses**"). Katten will deduct the Expenses from Katten/Acumen Proceeds once per month. In the event there are insufficient Katten/Acumen Proceeds in a given month to cover such expenses and costs, Katten will record the deficiency and will deduct such deficiency from Katten/Acumen Proceeds obtained in the following month(s) to the extent available.[6]

    b.    After the Expenses of Katten and Acumen have been paid in full, Katten/Acumen Proceeds shall be paid to Katten according to the following contingency fee structure (the "**Contingency Fee Schedule**"):

    (1)    <u>Tier 1</u>: If the total gross amount of Katten/Acumen Proceeds obtained is less than $25 million, Katten shall be paid 3.5% of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and 6.5% of the gross proceeds obtained after the filing of a complaint.

    (2)    <u>Tier 2</u>: If the total gross amount of Katten/Acumen Proceeds obtained is between $25 million and $50 million (the "**Tier 2 Threshold**"), Katten shall be paid 6.0% of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and 11.0% of the gross proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply retroactively to all Katten/Acumen Proceeds obtained in connection with the Matter (*i.e.,* after the Tier 2 Threshold is achieved, the foregoing percentages shall apply to all Katten/Acumen Proceeds obtained, beginning with the first dollar of Katten/Acumen Proceeds obtained).

---

[5] As set forth in the Engagement Letter, Katten/Acumen Proceeds include, that certain portion of a claim against the Debtors' estates that is waived or settled in connection any Katten/Acumen Action, that would—(i) be distributable to the claimant pursuant to an approved chapter 11 plan, or (ii) if no plan is approved, be the estimated recovery to the claimant pursuant to an approved plan disclosure statement—as if the claim had not been waived. With respect to waivers or settlements involving secured claims, administrative claims and other priority claims, the amount credited as Katten/Acumen Proceeds will be equal to 100% of the scheduled, agreed or allowed amount of such claims. Katten and Acumen shall also receive credit in an amount approved by the Restructuring Committee for settlements involving payments-in-kind and other non-cash form of consideration. For the avoidance of doubt, notwithstanding the inclusion of any non-cash recovery component used in calculating Katten/Acumen Proceeds, any payment to Katten/Acumen shall be limited to the cash proceeds actually recovered from the Katten/Acumen Actions.

[6] Acumen's fees and expenses shall be paid solely out of Katten/Acumen Proceeds and shall not constitute expenses of Katten. Accordingly, the retention of Acumen will not result in any incremental fees or expenses to the Debtors.

(3) <u>Tier 3</u>: If the total gross amount of Katten/Acumen Proceeds obtained is more than $50 million, then (i) through and including the date that is eighteen (18) months after the date on which the Bankruptcy Court approves Katten's and Acumen's engagement (the "**Outside Date**"), Katten shall be paid 10.0% of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and 13.0% of the gross proceeds obtained after the filing of a complaint, and (ii) after the Outside Date, Katten shall be paid 6.0% of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and 11.0% of the gross proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply only to Katten/Acumen Proceeds above $50 million.

(4) <u>Tail Compensation</u>: If at any time during the Firm's engagement, the Debtors terminate the engagement without cause, including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue Katten's and Acumen's engagement in accordance with their respective engagement letters), Katten shall be entitled to all fees and expenses earned as of the date of termination and all fees based on recoveries in the Katten/Acumen Actions for a period extending twelve months after the date of termination ("**Tail Compensation**").[7]

17.    Katten will provide the Debtors, with a copy to counsel for the Creditors' Committee, monthly reports summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection.

18.    The Debtors believe that the rates described above for Katten's Services under the Contingency Fee Schedule are competitive and are in line with the rates charged by its competitors.  The Debtors believe that Katten's rates are reasonable given the quality of Katten's services and its professionals' bankruptcy expertise.  Additionally, the Fee and Expense Structure

---

[7] The Debtors may immediately terminate the engagement and Katten shall not be entitled to any such Tail Compensation if, after execution of the Engagement Letter: (i) a determination, rule, guideline, decree, order or other statement of similar formality is issued by any court or government agency finding or recommending that Katten and/or Acumen not be permitted to serve as a professional for or advisor to a debtor, official committee, trustee or other fiduciary in a bankruptcy case, (ii) the Restructuring Committee reasonably determines that Katten and/or Acumen has generally failed to prosecute or has abandoned prosecution of the Katten/Acumen Actions, or (iii) material harm to any Debtor results from Katten's and/or Acumen's gross negligence or willful misconduct.

WEIL:\97064412\1\73217.0004

was established to reflect the voluminous and time-sensitive nature of the assignments Katten expects to undertake, as well as the potential for failure. The Debtors thus believe that the Fee and Expense Structure is reasonable.

19.    In determining the level of compensation to be paid to Katten and its reasonableness, the Debtors compared Katten's proposed fees with preference recovery fees proposed by other professionals. The Fee and Expense Structure anticipates that a substantial commitment of professional time and effort would be required of Katten and its professionals, and that such commitment may foreclose other opportunities for Katten. No advance or retainer is contemplated by Katten's engagement.

20.    The Debtors also submit that Katten has obtained valuable institutional knowledge of the Debtors' creditors and causes of action as a result of its providing services, including a preliminary preference recovery analysis, to the Debtors prior to filing this Application. Katten is also expected to have started its recovery demand process before approval of this Application is considered by the Court. Therefore, Katten is not only well qualified, but also uniquely able to perform these services and assist the Debtors in these chapter 11 cases.

21.    The Fee and Expense Structure is entirely based on reimbursement of expenses and dollar amounts recovered—not on time expended. Accordingly, and as described further below, Katten and the Debtors request that Katten not be required to maintain or submit time records in connection with this matter. Notwithstanding the foregoing, Katten intends to file short-form quarterly statements of Katten/Acumen Proceeds and expenses and fees paid therefrom and a final fee application for the allowance of compensation for services rendered and reimbursement of expenses incurred (as more fully described below). Katten also will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the

services discussed above.  Katten will be paid under the terms of the Engagement Letter in the ordinary course commencing upon approval of this Application by this Court.

22.      In sum, in light of the foregoing and given the uncertainty of success despite Katten's commitment to the time and effort necessary to address issues as they arise, and the prices for services for engagements of this nature, the Debtors believe that the Fee and Expense Structure is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

23.      Accordingly, as more fully described below, the Debtors believe that this Court should approve Katten's retention subject solely to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Katten's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

**No Duplication of Services**

24.      The Debtors intend that the services to be provided by Katten will complement, and not duplicate, the services being rendered by other professionals retained in these chapter 11 cases.  Katten understands that the Debtors have retained and may retain additional professionals during these cases and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.  In particular, Katten understands that the Debtors intend also to retain ASK to conduct preference recovery services on behalf of the Debtors.  As discussed above and in the Engagement Letter, Katten and ASK have agreed to split the pool of potential preference actions equitably to designate which of the two parties will be responsible for investigating, analyzing, prosecuting and/or settling such preference actions so that no duplication will occur.

**Disinterestedness**

25.     To the best of the Debtors' knowledge, information, and belief, and except
and to the extent disclosed herein and in the Reisman Declaration, Katten is a "disinterested
person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section
327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors or their
estates in connection with the matters for which Katten is to be retained by the Debtors.

26.     During the 90-day period prior to the Commencement Date, Katten was not
paid any amounts.

**Relief Requested Should Be Granted**

27.     The Debtors seek authority to employ and retain Katten as special counsel
under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ
professional persons "that do not hold or represent an interest adverse to the estate, and that are
disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this
title."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections
101(14) and 327(a) of the Bankruptcy Code as those sections relate to cases under chapter 11 of
the Bankruptcy Code, providing that "a person is not disqualified for employment under section
327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's
employment by or representation of the debtor before the commencement of the case."  11 U.S.C.
§ 1107(b).

28.     The Debtors also seek approval of the Fee and Expense Structure and the
Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides that the
Debtors, "with the court's approval, may employ or authorize the employment of a professional
person under section 327 . . . on any reasonable terms and conditions of employment, including
on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

WEIL:\97064412\1\73217.0004

11 U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including attorneys, on flexible terms that reflect the nature of their services and market conditions.

29.    The Debtors believe the Fee and Expense Structure set forth in the Engagement Letter contains reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.  The Fee and Expense Structure adequately reflects (a) the nature of the services to be provided by Katten and (b) fee and expense structures typically utilized by Katten and other leading firms, which are generally are compensated on a transactional basis for services of the type Debtors request Katten to perform.  In particular, the Debtors believe the Fee and Expense Structure creates the proper incentives through the use of tiers of contingency fees based on the successful recovery of value to the Debtors' estates.  Moreover, Katten's substantial experience with respect to legal restructuring services, coupled with the nature and scope of work already performed by Katten at the request of the Debtors, further supports the reasonableness of the Fee and Expense Structure.

30.    The Debtors respectfully submit that retaining and employing Katten pursuant to the terms of the Engagement Letter is necessary and in the best interests of the Debtors' estates and all parties in interests in these chapter 11 cases.  The Debtors also believe that the terms and conditions of the Engagement Letter are reasonable in light of the anticipated high volume of creditors and other parties in interests that will be involved in these chapter 11 cases.

31.    Courts in this jurisdiction and others have approved relief similar to the relief requested in this Application.  *See, e.g.*, *In re Caritas Health Care, Inc.*, Case No. 09-40901 (CEC) (Bankr. E.D.N.Y. 2011); *In re Dreier LLP*, Case No. 08-15051 (SMB) (Bankr. S.D.N.Y. 2010).

WEIL:\97064412\1\73217.0004

32.     Accordingly, to help provide added liquidity resulting from pursuit of the Preference Actions, the Debtors respectfully request the Court enter an order appointing Katten as special counsel in these chapter 11 cases pursuant to sections 327(a), 328(a), 330, and 331 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Bankruptcy Rules 2014-1 and 2016-1.

## Modification of Reporting Requirements is Justified

33.     Katten's fee compensation is on a purely contingent basis without hourly billing and is paid out of the proceeds of recoveries.  As a consequence, the Debtors request that Katten be excused from the time keeping and reporting requirements of Bankruptcy Rule 2016(a) and the Guidelines adopted by the Office of the United States Trustee (the "**Fee Guidelines**").  The compensation to be paid to Katten under the Engagement Letter is a mathematical function of the applicable percentage according to the Contingency Fee Schedule multiplied by the amount for which any Preference Action is resolved, either by settlement or judgment.  Because keeping time is not necessary to Katten's success (a function of dollars recovered) nor is it an input into Katten's compensation (which is purely contingency-based), Katten should not be required to maintain time records for this matter or provide time records to the Debtors, the Court or the U.S. Trustee as Katten would do if it were being retained and paid on an hourly basis.  Indeed, requiring Katten to maintain time records would unnecessarily reallocate resources that could otherwise be used by Katten to engage in recovery efforts.

34.     Further, the Debtors submit that the requirement to apply to the Court for interim and final allowance of compensation for professional services rendered should be satisfied by Katten filing (i) short-form quarterly statements that include the amount of fees paid based on the Contingency Fee Schedule and a reasonably detailed itemization of Expenses incurred and paid and (ii) upon the conclusion of its services, a final fee application for final allowance of

WEIL:\97064412\1\73217.0004

compensation for professional services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court. Because of the purely contingent nature of Katten's compensation, the use of recovery proceeds rather than existing Estate funds to pay Katten's fees and expenses, and the benefit to the Debtors' Estates of Katten devoting maximum resources to pursuing and negotiating recoveries and not to reporting requirements—the Debtors submit that short-form interim statements, without the need to file monthly statements, are appropriate and justified. The Debtors intend to pay Katten under the terms of the Engagement Letter in the ordinary course commencing upon approval of this Application by this Court.[8]

35.    Courts in this jurisdiction and others have approved modifications of the type requested here. *E.g.*, *In re Drier LLP*, No. 08-15051 (SMB) (Bankr. S.D.N.Y. Sept. 15, 2010) (authorizing procedure for applying for compensation and reimbursement by final fee application); *In re Drier LLP*, No. 08-15051 (SMB) (Bankr. S.D.N.Y. Aug. 6, 2014) (approving final fee application without time keeping requirement); *In re APP Winddown, LLC, et al.*, No 16-12551 (BLS) (Bankr. D. Del. July 31, 2017) (approving short-form format for fee applications).

### *Nunc Pro Tunc* Relief Is Warranted

36.    The Debtors seek *nunc pro tunc* relief in this instance due to the contingency fee nature of Katten's retention and the fact that Katten has already performed an initial analysis of the potential Preference Actions and has prepared hundreds of pre-suit demand letters, all of which is compensated as part of the overall contingency fee (described herein). The Debtors

---

[8]   The Debtors request that they be permitted to pay Katten's fees and expenses as and when due in accordance with the Engagement Letter, and without the filing of any monthly fee statements, given the contingent nature of Katten's proposed compensation. Katten's fees and expenses, however, will be set forth in all quarterly and final fee applications.

WEIL:\97064412\1\73217.0004

believe that employment of Katten effective *nunc pro tunc* to April 1, 2019 is warranted under the circumstances of these chapter 11 cases so that Katten may be compensated for expenses incurred[9] prior to entry of an order approving Katten's retention.  Further, the Debtors believe that no party-in-interest will be prejudiced by the granting of *nunc pro tunc* employment because Katten has provided, and will continue to provide, valuable services to the Debtors' estates.

37.     Courts in this jurisdiction routinely approve *nunc pro tunc* employment similar to that requested herein.  *See, e.g.*, *In re Tops Holding II Corp.*, No. 18-22279 (Bankr. S.D.N.Y. March 22, 2018) (ECF No. 194); *In re Westinghouse Elec. Co. LLC*, No. 17-10751 (MEW) (Bankr. S.D.N.Y. Nov. 16, 2017) (ECF No. 1585); *In re Eagle Bulk Shipping Inc.*, No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014).

## Notice

38.     Notice of this Application will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405) (the "**Amended Case Management Order**").   The Debtors respectfully submit that no further notice is required.

39.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

---

[9] To date, Katten has incurred approximately $700 in expenses, although certain expenses incurred to date involving billing by third parties may not be entered into Katten's billing system for several weeks after they are incurred.

WEIL:\97064412\1\73217.0004

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 6, 2019
New York, New York

SEARS HOLDINGS CORPORATION
(for itself and on behalf of its debtor affiliates
as Debtors and Debtors in Possession)


/s/ Mohsin Meghji
NAME: Mohsin Meghji
TITLE: Chief Restructuring Officer

WEIL:\97064412\1\73217.0004

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re                                                   :
                                                        :        Chapter 11
SEARS HOLDINGS CORPORATION, *et al.*,                   :
                                                        :        Case No. 18-23538 (RDD)
                                                        :
          Debtors.[1]                                   :        (Jointly Administered)
                                                        :
-------------------------------------------------------------------x

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KATTEN MUCHIN ROSEMAN LLP AS SPECIAL AVOICANCE COUNSEL FOR DEBTORS *NUNC PRO TUNC* TO APRIL 1, 2019

Upon consideration of the application (the "**Application**")[2] of the Debtors for entry

of an order (this "**Order**") authorizing the Debtors to retain and employ Katten Muchin Roseman

LLP ("**Katten**") as special avoidance action counsel for Debtors *nunc pro tunc* to April 1, 2019,

on the terms and conditions set forth herein and in the engagement agreement between Katten and

Sears Holdings Corporation dated as of April 1, 2019 (the "**Engagement Letter**") and granting

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used, but not otherwise defined herein, shall have their meanings ascribed to such terms in the Application.

related relief, all as more fully set forth in the Application; and upon the declaration of Steven J. Reisman, a partner of Katten, annexed to the Application as **Exhibit B** (the "**Reisman Declaration**")and the declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, attached to the Application as **Exhibit C** (the "**Meghji Declaration**"); and the Court being satisfied, based on the representations made in the Application and the Reisman Declaration, that Katten is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that Katten neither represents nor holds any interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged; and the Court having jurisdiction to decide the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Application and the opportunity for a hearing thereon having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Application (the "**Hearing**") if necessary; and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

2

**IT IS HEREBY ORDERED THAT:**

1.      The Application is granted as set forth in this Order *nunc pro tunc* to April 1, 2019.

2.      The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, to engage Katten as special counsel to the Debtors *nunc pro tunc* to April 1, 2019, pursuant to the terms of the Application and the Engagement Letter, annexed hereto as **Exhibit 1**.

3.      All of Katten's compensation as set forth in the Engagement Letter including, without limitation, the Contingency Fee Schedule, the Expenses, and related obligations are approved pursuant to section 328(a) of the Bankruptcy Code and Katten shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of, and at the times specified in, the Engagement Letter.

4.      Katten shall apply for allowance of compensation for Services rendered and reimbursement of Expenses incurred by filing (i) short-form quarterly statements that include the amount of fees paid based on the Contingency Fee Schedule and a reasonably detailed itemization of Expenses incurred and paid and (ii) upon the conclusion of its services, a final fee application for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court; *provided that*, Katten shall be compensated and reimbursed pursuant to Bankruptcy Code section 328(a) and that Katten's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code; *provided further that*, such fees and expenses shall be paid by the Debtors as and when due as set forth in the Engagement Letter without the need to file monthly

WEIL:\97064412\1\73217.0004

statements; *provided further that*, for the avoidance of doubt, such fees and expenses shall be subject to review and approval in any quarterly statements and final fee application.

5.      Notwithstanding anything to the contrary herein, the Office of the United States Trustee for the Southern District of New York shall have the right to object to Katten's interim and final fee applications (including expense reimbursement) on all grounds, including the reasonableness standard provided in section 330 of the Bankruptcy Code.

6.      Notwithstanding anything to the contrary, Katten shall be excused from time-keeping reporting requirements in applying for allowance of compensation for Services authorized herein.

7.      None of the fees payable to Katten shall constitute a "bonus" or fee enhancement under applicable law.

8.      To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern.  To the extent that there may be any inconsistency solely between the terms of the Application and the Engagement Letter, the terms of the Engagement Letter shall govern.

9.      The relief granted herein shall be binding upon any chapter 11 trustee appointed in the chapter 11 cases, any trustee of a trust to which the Katten/Acumen Actions are assigned in connection with confirmation of a chapter 11 plan, or any chapter 7 trustee appointed in the event of a subsequent conversion of the chapter 11 cases to cases under chapter 7.

10.     The terms and conditions of this Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

4

12.     This Court retains exclusive jurisdiction with respect to all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.


Dated: _____, 2019
         White Plains, New York


                                    _____
                                    THE HONORABLE ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY JUDGE

WEIL:\97064412\1\73217.0004

## __Exhibit 1__

**Engagement Letter**

# Katten

### Katten Muchin Rosenman LLP

575 Madison Avenue
New York, NY  10022-2585
212.940.8800 tel
www.kattenlaw.com

**Steven J. Reisman**
sreisman@katten.com
212.940.8700 direct

Dated as of April 1, 2019

***VIA EMAIL: mmeghji@miiipartners.com***

Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attn: Mohsin Y. Meghji
Chief Restructuring Officer

Re:  **Engagement Agreement**

Dear Mo:

We are pleased to have the opportunity to serve as special counsel for Sears Holdings Corporation and its debtor affiliates in the jointly administered chapter 11 cases of *In re Sears Holdings Corporation, et al.*, Case No. 18-23538 (RDD) (collectively, the "Debtors" or the "Client")[1] with regard to providing advice and representation in connection with investigating, analyzing, prosecuting and/or settling avoidance actions arising under chapter 5 of the Bankruptcy Code and/or applicable state law against non-insider, non-affiliate transferees (collectively, the "Matter").  As previously disclosed, we will be working with Acumen Recovery Services, LLC ("Acumen") on this Matter.  This letter and the enclosed Terms of Engagement describe the basis on which Katten Muchin Rosenman LLP (the "Firm" or "Katten") shall provide legal services.

I will be the lawyer at the Firm with the primary responsibility for this Matter and understand that it is your expectation, as well as my own intention, that I be involved in managing all aspects of the Matter.  I will be assisted by my partners Theresa Foudy, Karen Dine, Jeff Friedman, and such other partner(s), associate(s), and other member(s) of the Firm as appropriate.

Please review the enclosed Terms of Engagement, with the assistance of independent counsel if you wish, and let me know if you have any questions about them.  If all the terms are satisfactory, please indicate your consent by signing this letter and returning it to me.  However, your continuing instructions in this Matter will amount to your acceptance of the terms of this letter, including the Terms of Engagement (collectively the "Terms").  All parties to this agreement agree that a digital signature shall be effective to prove each party's agreement to the Terms.  Furthermore, the parties agree that the Terms may be proven through an electronic copy

---

[1] After the effective date of the Debtors' Chapter 11 plan, Client shall refer to the Liquidating Trust responsible for administering and monetizing avoidance actions.

AUSTIN    CENTURY CITY    CHARLOTTE    CHICAGO    DALLAS    HOUSTON    LOS ANGELES
NEW YORK    ORANGE COUNTY    SAN FRANCISCO BAY AREA    SHANGHAI    WASHINGTON, DC
LONDON: KATTEN MUCHIN ROSENMAN UK LLP
A limited liability partnership including professional corporations



Sears Holding Corporation
Dated as of April 1, 2019
Page 2

in digital format, and that no "original" hard-copy document need be retained to prove the Terms.

As noted, Katten will be working with Acumen, a data analysis and advisory firm which focuses on data gathering, defense analysis and litigation support, in order to assist Katten in connection with investigating, analyzing, prosecuting and/or settling claims held by the Client against non-insider non-affiliate transferees arising under Section 547 of the Bankruptcy Code (collectively, the "Preference Actions" and such defendant transferees, collectively the "Transferees").   Acumen's fees and expenses shall be paid solely out of Katten/Acumen Proceeds (defined below) and shall not constitute expenses of Katten.   Accordingly, the retention of Acumen will not result in any incremental fees or expenses to the Client.

It is our understanding that the Client is also retaining ASK LLP ("ASK") in connection with this Matter.  Katten's engagement in this Matter is conditioned upon the Preference Actions being divided in the manner directed by the Debtors equally based on expected net recoveries, as determined by the Firm and Acumen in their reasonable discretion, between Katten and Acumen (together, "Katten/Acumen"), on the one hand, and ASK on the other hand.  Preference Actions to be pursued by Katten/Acumen shall hereinafter be defined as "Katten/Acumen Actions", and Preference Actions to be pursued by ASK shall be defined as "ASK Actions".   ASK and Katten/Acumen may agree to modify the list of ASK Actions and Katten/Acumen Actions with the approval of the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "Restructuring Committee").

Throughout the engagement, to the extent practicable, given the circumstances of Client's chapter 11 cases, Client agrees to afford Katten and Acumen reasonable access to the Client's books and records and personnel who are knowledgeable about facts relevant to the Matter. Subject to the foregoing, Client shall reasonably cooperate, consult with, and provide all such information and documentation and access as may be reasonably requested by Katten and Acumen to enable Katten and Acumen to maximize the recovery on the Preference Actions.

Notwithstanding Paragraph IV of the Terms, Katten's fee arrangement in connection with investigating, analyzing, prosecuting and/or settling the Preference Actions shall be as set forth below:

1. Any cash proceeds obtained in connection with the Katten/Acumen Actions (collectively, the "Katten/Acumen Proceeds") shall first be used to reimburse reasonable and documented non-labor, third-party expenses and costs of Katten and Acumen directly related to the prosecution, negotiation, or collection of Katten/Acumen Actions.  Katten will store all physical and electronic records without any charge.  Katten will deduct such expenses and costs from Katten/Acumen

US_139718377v1



Sears Holding Corporation
Dated as of April 1, 2019
Page 3

Proceeds once per month. In the event there are insufficient Katten/Acumen Proceeds in a given month to cover such expenses and costs, Katten will record the deficiency and will deduct such deficiency from Katten/Acumen Proceeds obtained in the following month(s) to the extent available. For the avoidance of doubt, Katten and Acumen will not be reimbursed for any expenses and costs exceeding Katten/Acumen Proceeds. For the avoidance of doubt, notwithstanding anything contained in the Terms, the Client, and not Katten or Acumen, shall be responsible for payment of expert witness fees and expenses. Any experts or third-party professionals who are retained to prove insolvency or to respond to a defendant's "objective" ordinary course of business defense are to be separately retained and shall not be considered part of this engagement. Katten and Acumen will defer to the Client and its other advisors with respect to the decision to retain any experts.

2. Katten/Acumen Proceeds shall also include, without limitation, that certain portion of a claim against the Debtors' estates that is waived or settled in connection any Katten/Acumen Action, that would—(i) be distributable to the claimant pursuant to an approved chapter 11 plan, or (ii) if no plan is approved, be the estimated recovery to the claimant pursuant to an approved plan disclosure statement—as if the claim had not been waived. For example, if a Transferee waives a $100,000 general unsecured claim, and the distribution on such claim would (under an approved plan) or is anticipated to be (under a disclosure statement) 10%, then the Katten/Acumen Proceeds on account such claim waiver would be $10,000. With respect to waivers or settlements involving secured claims, administrative claims and other priority claims, the amount credited as Katten/Acumen Proceeds will be equal to 100% of the scheduled, agreed or allowed amount of such claims. Katten and Acumen shall also receive credit in an amount approved by the Restructuring Committee for settlements involving payments-in-kind and other non-cash form of consideration. For the avoidance of doubt, notwithstanding the inclusion of any non-cash recovery component used in calculating Katten/Acumen Proceeds, any payment to Katten/Acumen shall be limited to the cash proceeds actually recovered from the Katten/Acumen Actions.

3. The contingency fees of Katten shall be paid in accordance with points 4, 5 and 6 below.

4. After the expenses of Katten and Acumen have been paid in full, Katten/Acumen Proceeds shall be paid to Katten as follows:

   a. Tier 1: If the total gross amount of Katten/Acumen Proceeds obtained is less than $25 million, Katten shall be paid **3.5%** of the gross proceeds obtained in



Sears Holding Corporation
Dated as of April 1, 2019
Page 4

any Katten/Acumen Action settled prior to the filing of a complaint and **6.5%** of the gross proceeds obtained after the filing of a complaint.

b.  Tier 2: If the total gross amount of Katten/Acumen Proceeds obtained is between $25 million and $50 million (the "Tier 2 Threshold"), Katten shall be paid **6.0%** of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and **11.0%** of the gross proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply retroactively to all Katten/Acumen Proceeds obtained in connection with the Matter (*i.e.,* after the Tier 2 Threshold is achieved, the foregoing percentages shall apply to all Katten/Acumen Proceeds obtained, beginning with the first dollar of Katten/Acumen Proceeds obtained).

c.  Tier 3: If the total gross amount of Katten/Acumen Proceeds obtained is more than $50 million, then (i) through and including the date that is eighteen (18) months after the date on which the Bankruptcy Court approves Katten's and Acumen's engagement (the "Outside Date"), Katten shall be paid **10.0%** of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and **13.0%** of the gross proceeds obtained after the filing of a complaint, and (ii) after the Outside Date, Katten shall be paid **6.0%** of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and **11.0%** of the gross proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply only to Katten/Acumen Proceeds above $50 million.

5.  At any time during the Firm's engagement on the Matter, the Firm may, in its sole discretion, terminate the engagement, in which case Katten shall be entitled to all fees and expenses earned as of the date of termination; provided, such fees and expenses shall be paid solely from Katten/Acumen Proceeds.  The Client may, in its sole discretion, terminate the engagement.  If at any time during the Firm's engagement, the Client terminates the engagement without cause, including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue Katten's and Acumen's engagement in accordance with their respective engagement letters), Katten shall be entitled to all fees and expenses earned as of the date of termination and all fees based on recoveries in the Katten/Acumen Actions for a period extending twelve months after the date of termination ("Tail Compensation"); provided, that the Debtors may immediately terminate the engagement and Katten shall not be entitled to any such Tail Compensation if, after



Sears Holding Corporation
Dated as of April 1, 2019
Page 5

execution of this agreement: (i) a determination, rule, guideline, decree, order or other statement of similar formality is issued by any court or government agency finding or recommending that Katten and/or Acumen not be permitted to serve as a professional for or advisor to a debtor, official committee, trustee or other fiduciary in a bankruptcy case, (ii) the Restructuring Committee reasonably determines that Katten and/or Acumen has generally failed to prosecute or has abandoned prosecution of the Katten/Acumen Actions, or (iii) material harm to any Debtor results from Katten's and/or Acumen's gross negligence or willful misconduct. For the avoidance of doubt, Tail Compensation shall be determined using the same compensation tiers as set forth above and in determining the amount of Tail Compensation to which Katten is entitled shall count all Katten/Acumen Proceeds received prior to Katten's termination without cause.

6.   Subject to Bankruptcy Court approval, the Board of Directors of Sears Holdings Corporation (prior to the effective date of a Chapter 11 plan) and the liquidating trustee (after the effective date of a Chapter 11 plan) shall have the discretion to increase the contingency fee percentages set forth above and/or award a bonus to Katten and/or Acumen.

All Katten/Acumen Proceeds will be deposited into a segregated account maintained by Acumen.   Acumen will make monthly remittances, net of Katten's and Acumen's fees and expenses, to the designated recipient.   If desired, Acumen will also make wire transfers to an account designated by the Debtors.   As part of the remittance, Katten and Acumen will provide monthly reports summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection to the Debtors, with a copy to counsel to the official committee of unsecured creditors (the "Creditors' Committee Counsel").   If Katten/Acumen is required to remit Katten/Acumen Proceeds in gross, then we expect payment of our respective invoices within 10 days of presentation, or as soon as practicable as allowed by the Bankruptcy Court.   Katten and Acumen will also send monthly status reports to the Debtors, with a copy to Creditors' Committee Counsel, detailing the status of all pending cases that remain open for collection.

At Client's request, Katten may agree to provide legal services to the Client outside the scope of the Matter.   Client shall compensate Katten for such services, if any, at the Firm's standard hourly rates or on other such other terms as may be agreed to between the Client and the Firm and disclosed in a supplemental affidavit filed with the Bankruptcy Court.

A schedule of the Firm's standard hourly rates is annexed as Exhibit A.   The Firm's disbursements that are billed on a per-unit basis are annexed as Exhibit B.   The Firm's wiring instructions are annexed as Exhibit C and the Firm's W-9 Taxpayer Certification is annexed as



Sears Holding Corporation
Dated as of April 1, 2019
Page 6

<u>Exhibit D</u>.    Katten/Acumen and ASK have, to date, provided the Restructuring Committee with information concerning the allocation of the first 1000 Transferees between ASK and Katten/Acumen and will provide the Restructuring Committee with all future allocations promptly upon their completion by ASK and Katten/Acumen, but in all events subject to approval of the Restructuring Committee.

Thank you for allowing us the privilege of this representation.  We value and appreciate the trust and confidence you have placed in us and we assure you we will do our best to see that your expectations are satisfied.

My best.

Sincerely,

Steven J. Reisman

w/attachments

cc:    Brian Griffith (w/attachments, bgriffith@miiipartners.com)
        William Murphy (w/attachments, wmurphy@miiipartners.com)
          M-III Advisory Partners, LP
        Ray C. Schrock, Esq. (w/attachments, ray.schrock@weil.com)
        Sunny Singh, Esq. (w/attachments, sunny.singh@weil.com)
          Weil, Gotshal & Manges LLP

This letter and the Terms of Engagement are agreed to and effective as of the date first written above.

**SEARS HOLDINGS CORPORATION ON BEHALF OF ITSELF AND
ITS DEBTOR AFFILIATES**

By: _____
    Name:
    Title:    M.Y. MEGHJI
              C.R.O.

**KATTEN MUCHIN ROSENMAN LLP**
**TERMS OF ENGAGEMENT**

The information below describes the terms that apply to the legal services provided for you by Katten Muchin Rosenman LLP (the "Firm"). We encourage you to discuss any of these Terms with us at any time. If modifications to the Terms are needed, you should discuss that with us so that agreement on changes can be reached and reduced to writing. All references to "you" or "your" means only the client or clients identified in our engagement letter. **Individuals or entities that are related to or affiliated with you, such as partners, officers, directors, stockholders, parent companies, related companies, or family members, are not clients, unless we otherwise agree in writing.**

**I.      Scope of Representation.** The scope of the work we will do for you is limited to the description stated in our engagement letter. Any changes or additions to the scope of our work, which we would be pleased to consider, must be agreed to and memorialized by letter or email. Unless that description states otherwise, **our engagement does not include responsibility for:** (1) review of your insurance policies to determine the possibility of coverage for our fees and costs or for the claim asserted against you, (2) notification of your insurance carriers about a matter, (3) advice to you about your disclosure obligations concerning a matter under the federal securities laws or any other applicable law, or (4) advice to you about tax issues that relate to a matter. If we agree to represent you in additional matters, we will do so in writing by letter or email, and the Terms of our engagement will remain the same for these additional matters unless changed by agreement in writing.

Additionally, if in response to your request or by requirement of lawful process we: testify; gather and/or produce documents; respond to document hold or production requests; or respond to any other requests in connection with possible, threatened or actual proceedings commenced by third parties that relate to our representation of you, you agree to pay us our reasonable fees and costs incurred.

**II.      Staffing.** Steven J. Reisman will have the primary responsibility for our relationship. We assign additional lawyers and other personnel when needed based upon the type of work and the appropriate experience level required.

**III.      Client Responsibilities.** You agree to provide us with all information that we believe is necessary or appropriate to fulfill our professional responsibilities in this Matter and to cooperate with us in matters such as fact investigation, preparation of pleadings, discovery responses, settlement conferences, etc. You will designate one or more persons to give us instructions and authority to receive our requests and inquiries. You further agree that without our express written consent, you will not use our name or the fact of your engagement of us in any form of advertising or solicitation of business.

**IV.      Financial Arrangements.**

     A.      Fees and Expenses. Our fee and expense arrangements are set forth the engagement letter.

Expenses include items such as consultants, filing fees, court reporting fees, travel costs, overnight or other special mail services, messenger services, photocopies, long distance telephone, outgoing faxes, research service charges (e.g., LEXIS), and other special services such as document imaging. Certain of these charges are adjusted to include administrative and overhead expenses incurred by the Firm to provide the billed service. With respect to costs incurred and payable to third parties, such as court reporters, it is our usual policy to forward those bills to you for payment directly to the third party, and you agree to pay those fees directly to the provider. As an accommodation to you, however, we may advance those costs on your behalf and include them in our monthly bills. Some large disbursements may be forwarded to you for direct payment. Some charges may not be in the system at the time of monthly billing and will appear on a later bill. For the avoidance of doubt, and as set forth in the engagement letter, the Firm is not responsible for payment of expert witness fees and expenses.

B.    <u>Billing and Payment</u>. We reserve the right to terminate our representation of clients who do not pay promptly. We do not and cannot guarantee the outcome of any matter.

**V.    Electronic Communication.**    The use of email can be an efficient means of communication, and we use it often in communicating with clients. Some clients also use instant messaging as a means of communication. However, these electronic communications can be delayed or blocked (for example, by anti-spam software) or otherwise not transmitted. You must not assume that an email or instant message sent to us was actually opened and read by us unless you receive a non-automated reply message indicating that we have read your message.

**VI.    Responses to Auditors' Inquiries.**    We are frequently asked to provide information to auditing firms regarding client legal matters and we respond to those inquiries with the same level of care and professionalism used to handle the client's other legal work. We will accordingly charge for those services at the same rates. When you make a written request that we provide information to an auditing firm, we will deem your request to be your consent for us to disclose the requested information on your behalf. Additionally, when an auditing firm makes a written request for information on your behalf, that request will be deemed to be your consent for us to disclose that information to the auditing firm.

**VII.    Conclusion of Representation.**    We may also terminate our representation for any reason consistent with rules of professional responsibility, including conflicts of interest or your failure to pay our fees and expenses. Our representation may also be terminated upon your request subject to the terms of the engagement letter. Following termination, any nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional responsibility. Once our representation is concluded, we will not be obligated to take any steps such as keeping track of deadlines, filing papers, pursuing appeals, or monitoring or advising you about changes in the law or circumstances that might bear upon the concluded matter.

US_139718377v1

**VIII.  <u>Disposition of Client Files</u>.**  Upon conclusion of your representation, we may return to you your original papers, documents and/or other property that you provided to the Firm during our engagement. You agree to accept the return of such documents and/or property.  If you so request, we will also provide to you, at your expense, copies or originals of your complete file.  We reserve the right to make, at our expense, copies of all documents generated or received by us in the course of our representation of you.  The Firm will not provide copies or originals of the Firm Administrative or Matter Administration files pertaining to the Matter, which will be retained by the Firm.  All such documents retained by the Firm, including client files (including any original documents and/or property that we attempted unsuccessfully to return to you) and Firm Administrative or Matter Administration files, will be transferred to the person responsible for administering our records retention program.  For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any documents or other materials retained by us within a reasonable time, but not less than seven (7) years after the Matter is closed.

US_139718377v1

**Exhibit A**
**Rates**

| PROFESSIONALS | STANDARD RANGE |
|---|---|
| Partner | $785 - $1,430 |
| Associate | $450 - $930 |
| Counsel and Special Staff | $665 - $1,035 |
| Of Counsel | $865 - $1,205 |
| Paralegal | $190 - $545 |

4

**Exhibit B**
**Per Unit Expenses**

| Description | Cost per page |
| --- | --- |
| Fax | $1.60 |
| Photocopy Costs | $  .20 |
| Photocopy – Wide Format | $1.00 |
| Color Printing / Copies | $  .25 |

5

**Exhibit C**
**Katten Muchin Rosenman LLP Wire Instructions**

| | |
|---|---|
| Bank: | JP Morgan Chase Bank |
| | 1211 Avenue of the Americas |
| | New York, New York 10036 |
| | Attn: Mindy Drogos |
| | Phone 1-847-398-4102 |
| | |
| Account Name: | Katten Muchin Rosenman LLP |
| | Operating Account |
| | |
| Bank ABA#: | 021000021 |
| | |
| Account Number: | 967343933 |
| | |
| SWIFT Code: | CHASUS33 |
| | |
| Ref: | SEARS HOLDINGS CORPORATION ON BEHALF OF ITSELF AND |
| | ITS DEBTOR AFFILIATES |

US_139718377v1

**Exhibit D**
**Katten Muchin Rosenman LLP Form W-9**

Form **W-9**
(Rev. November 2017)
Department of the Treasury
Internal Revenue Service

### Request for Taxpayer
### Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

Give Form to the
requester. Do not
send to the IRS.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Katten Muchin Rosenman LLP

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC ☐ C Corporation ☐ S Corporation ☑ Partnership ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

525 West Monroe Street, Suite 1900

**6** City, state, and ZIP code

Chicago, Illinois 60661-3693

Requester's name and address (optional)

**7** List account number(s) here (optional)

*Print or type.*
*See Specific Instructions on page 3.*

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN,* later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

☐☐☐ – ☐☐ – ☐☐☐☐

**or**

Employer identification number

3 6 – 2 7 9 6 5 3 2

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**    Signature of U.S. person ▶ _____    Date ▶ 1/2/19

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9.*

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Cat. No. 10231X    Form **W-9** (Rev. 11-2017)

**<u>Exhibit B</u>**

**Reisman Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                      :

In re                              :          **Chapter 11**

SEARS HOLDINGS CORPORATION, *et al.*,  :          **Case No. 18-23538 (RDD)**

                                        :

Debtors.[1]                      :          **(Jointly Administered)**

                                        :

----------------------------------------------------------------x

## DECLARATION OF STEVEN J. REISMAN IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KATTEN MUCHIN ROSENMAN LLP AS SPECIAL AVOIDANCE ACTION COUNSEL FOR DEBTORS EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, I, Steven J.

Reisman, hereby declare as follows:

1.      I am a partner of the law firm of Katten Muchin Rosenman LLP, located at 575

Madison Avenue, New York, NY 10022 ("**Katten**"). I am the lead attorney from Katten engaged

by the Debtors in the above-captioned chapter 11 cases to pursue preference actions. I am a

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

member in good standing of the Bar of the State of New York, and I have been admitted to practice in the Southern District of New York. There are no disciplinary proceedings pending against me.

2.      I submit this declaration (the "**Declaration**") in support of the Debtors' *Application for Entry of an Order Authorizing the Retention and Employment of Katten Muchin Rosenman LLP as Special Avoidance Action Counsel for Debtors Effective* Nunc Pro Tunc *to April 1, 2019* (the "**Application**"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3.      The Debtors seek to retain Katten to pursue preference and other avoidance action recoveries on behalf of the estates because of Katten's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under the Bankruptcy Code. Katten will work closely with Acumen Recovery Services LLC ("**Acumen**") in providing its services to the Debtors. Acumen, which will be retained by the Debtors through a separate engagement letter and retention application, will provide data gathering, defense analysis and litigation support services to assist Katten in the pursuit of preference and other avoidance recoveries for the estates. Katten and Acumen will work closely with the Debtors' personnel to maximize recoveries in an efficient and professional manner.

4.      The Debtors have or will have also engaged the law firm of ASK LLP ("**ASK**") to provide similar services. Katten and Acumen ("**Katten/Acumen**"), on the one hand, and ASK, on the other hand, will split the potential preference claims equitably based on expected net recoveries (actions to be pursued by Katten/Acumen are hereinafter the "**Katten/Acumen Actions**"; actions to be pursued by ASK are hereinafter, the "**ASK Actions**"). Although there will be coordination between Katten/Acumen and ASK to insure a basic consistency in dealing with the potential

2

preference targets and in the legal positions asserted on behalf of the Debtors, Katten and ASK

will be working on different avoidance actions.  Thus, duplication of efforts will be minimal.[2]

Katten will coordinate with the Debtors' other retained professionals to avoid unnecessary

duplication or overlap of work.

### Katten's Qualifications

5.      Katten has been actively involved in major chapter 11 cases and has represented

debtors in many cases, including, among others, *In re Sizmek Inc.*, 19-10971 (SMB) (Bakr.

S.D.N.Y., April 23, 2019); *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr.

S.D.N.Y., April 22, 2019); *In re J&M Stores, Inc.*, No. 18-11901 (LSS) (Bankr. D. Del., Aug. 27,

2018) and *In re Vitamin World, Inc.*, No 17-11933 (KJC) (Bankr. D. Del., Oct. 18, 2017).  In

addition, the attorneys at Katten have broad experience acting as counsel in large chapter 11 cases.

While at a prior firm, certain of the attorneys at Katten working on this engagement have

represented debtors in many cases, including, among others, *In re Fairway Group Holdings Corp.*,

No. 16-11241 (MEW) (Bankr. S.D.N.Y. June 1, 2016); *In re Breitburn Energy Partners LP*, No.

16-11390 (SMB) (Bankr. S.D.N.Y. June 15, 2016); *In re Genco Shipping & Trading Limited*, No.

14-11108 (SHL) (Bankr. S.D.N.Y. May 16, 2014); *In re Ashley Stewart Holdings, Inc.* (14-

14383)(MBK) (Bankr. D. N.J. April 1, 2014); *In re American Roads LLC*, No. 13-12412 (BRL)

(Bankr. S.D.N.Y. Aug. 21, 2013); *In re Trinity Coal Corp.*, No. 13-50364 (TNW) (Bankr. E.D.

Ky. April 5, 2013); *In re Residential Capital*, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Jul. 16,

2012); *In re Hawker Beechcraft*, Inc., No. 12-11873 (SMB) (Bankr. S.D.N.Y. May 30, 2012); *In*

---

[2]      Katten/Acumen and ASK are being paid under a straight contingency fee arrangement and not as a function of
time.  Any time spent by Katten/Acumen on one hand and by ASK on the other hand, therefore, will be non-
duplicative.

3

*re Gen. Mar. Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 12, 2011); *In re Sbarro, Inc.*, No.

11-11527 (SCC) (Bankr. S.D.N.Y. May 3, 2011); *In re FGIC Corp.*, No. 10-14215 (SMB) (Bankr.

S.D.N.Y. Oct. 19, 2010); *In re CIT Group, Inc.*, No. 09-16565 (ALG) (Bankr. S.D.N.Y. Nov. 24,

2009); *In re Readers' Digest Ass'n, Inc.*, No. 09-23529 (RDD) (Bankr. S.D.N.Y. Sept. 17, 2009);

*In re Lear Corp.*, No. 09-14326 (ALG) (Bankr. S.D.N.Y. Jul. 31, 2009); *In re Star Tribune

Holdings Corp.*, No. 09-10244 (RDD) (Bankr. S.D.N.Y. Feb. 9, 2009); and *In re Lehman Brothers

Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 21, 2008).  Katten is generally familiar

with the Debtors' businesses and the types of legal issues that may arise in the context of these

chapter 11 cases, and have conducted a preliminary detailed analysis of the Debtors' potential

avoidance actions.

6.    I believe that Katten is well-qualified to represent the Debtors in pursuit of the

preference recoveries in these cases in an efficient and timely manner.

### Services to Be Provided

7.    Subject to further order of the Court and that certain engagement letter dated as of

April 1, 2019 (the "**Engagement Letter**"), a copy of which is attached as **Exhibit 1** to the

Proposed Order annexed to the Application, the Debtors retained Katten to provide advice and

representation in connection with investigating, analyzing, prosecuting and/or settling claims held

by the Debtors arising under chapter 5 of the Bankruptcy Code against non-insider non-affiliate

transferees.

### Professional Compensation

8.    Katten will perform professional services on a contingency fee basis in accordance

with the Engagement Letter, which sets forth a contingency fee schedule (the "**Contingency Fee

Schedule**").  In addition to the contingency fees payable to Katten, Acumen may be entitled to

4

separate and additional contingency fees as set forth in the engagement letter between Acumen and the Debtors dated April 1, 2019.

9.        As indicated in the Application, and subject to Court approval of the fee arrangement agreed to by Katten and the Debtors in accordance with section 328 of the Bankruptcy Code and any applicable orders of this Court, Katten and Acumen will also be entitled to reimbursement for out-of-pocket expenses.  Any cash proceeds obtained in connection with the Katten/Acumen Actions (collectively, the "**Katten/Acumen Proceeds**") shall first be used to reimburse reasonable and documented direct and indirect expenses and costs of Katten and Acumen and then to pay Katten and Acumen their respective contingency fees.

10.       Remaining Katten/Acumen Proceeds[3] will be paid to Katten in accordance with the following Contingency Fee Schedule:

(a)    Tier 1: If the total gross amount of Katten/Acumen Proceeds obtained is less than $25 million, Katten shall be paid 3.5% of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and 6.5% of the gross proceeds obtained after the filing of a complaint.

(b)    Tier 2: If the total gross amount of Katten/Acumen Proceeds obtained is between $25 million and $50 million (the "**Tier 2 Threshold**"), Katten shall be paid 6.0% of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and 11.0% of the gross proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply retroactively to all Katten/Acumen Proceeds obtained in connection with the Matter (*i.e.,* after the Tier 2 Threshold is achieved, the foregoing percentages shall apply to all

---

[3]    As set forth in the Engagement Letter, Katten/Acumen Proceeds include that certain portion of a claim against the Debtors' estates that is waived or settled in connection any Katten/Acumen Action, that would—(i) be distributable to the claimant pursuant to an approved chapter 11 plan, or (ii) if no plan is approved, be the estimated recovery to the claimant pursuant to an approved plan disclosure statement—as if the claim had not been waived.  With respect to waivers or settlements involving secured claims, administrative claims and other priority claims, the amount credited as Katten/Acumen Proceeds will be equal to 100% of the scheduled, agreed or allowed amount of such claims.   Katten and Acumen shall also receive credit in an amount approved by the Restructuring Committee for settlements involving payments-in-kind and other non-cash form of consideration. For the avoidance of doubt, notwithstanding the inclusion of any non-cash recovery component used in calculating Katten/Acumen Proceeds, any payment to Katten/Acumen shall be limited to the cash proceeds actually recovered from the Katten/Acumen Actions.

5

Katten/Acumen Proceeds obtained, beginning with the first dollar of Katten/Acumen Proceeds obtained).

(c)     Tier 3: If the total gross amount of Katten/Acumen Proceeds obtained is more than $50 million, then (i) through and including the date that is eighteen (18) months after the date on which the Bankruptcy Court approves Katten's and Acumen's engagement (the "**Outside Date**"), Katten shall be paid 10.0% of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and 13.0% of the gross proceeds obtained after the filing of a complaint, and (ii) after the Outside Date, Katten shall be paid 6.0% of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and 11.0% of the gross proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply only to Katten/Acumen Proceeds above $50 million.

(d)     Tail Compensation: If at any time during the Firm's engagement, the Debtors terminate the engagement without cause, including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue Katten's and Acumen's engagement in accordance with their respective engagement letters), Katten shall be entitled to all fees and expenses earned as of the date of termination and all fees based on recoveries in the Katten/Acumen Actions for a period extending twelve months after the date of termination ("**Tail Compensation**").[4]

11.     I believe that Katten's charges for its services under the Contingency Fee Schedule are competitive and are in line with the fees charged by its competitors. Further, the combined contingency fees percentages payable to Katten and Acumen from Katten/Acumen Proceeds are the same as the contingency fee percentages payable to ASK from the proceeds of ASK Actions. The Contingency Fee Schedule was negotiated at arm's-length with the Restructuring Committee

---

[4]     The Debtors may immediately terminate the engagement and Katten shall not be entitled to any such Tail Compensation if, after execution of the Engagement Letter: (i) a determination, rule, guideline, decree, order or other statement of similar formality is issued by any court or government agency finding or recommending that Katten and/or Acumen not be permitted to serve as a professional for or advisor to a debtor, official committee, trustee or other fiduciary in a bankruptcy case, (ii) the Restructuring Committee reasonably determines that Katten and/or Acumen has generally failed to prosecute or has abandoned prosecution of the Katten/Acumen Actions, or (iii) material harm to any Debtor results from Katten's and/or Acumen's gross negligence or willful misconduct.

6

of the Board of Directors of Sears Holdings Corporation (the "**Restructuring Committee**") and is fair and reasonable given the quality of Katten's services and its professionals' bankruptcy expertise.

12.     The compensation to be paid to Katten under the Engagement Letter is a mathematical function of the applicable percentage according to the Contingency Fee Schedule multiplied by the amount of the Katten/Acumen Proceeds and is unrelated to the hours spent by Katten professionals in providing its services to the Debtors.  Accordingly, I believe that Katten should not be required to maintain time records for this matter or provide time records to the Debtors, the Court or the U.S. Trustee as Katten typically would if it were being retained and paid on an hourly basis.  Further, instead of applying to the Court for allowance of compensation for professional services rendered on a quarterly basis, Katten should be permitted to file a short-form quarterly statement that includes the amount of fees paid based on the Contingency Fee Schedule and a reasonably detailed itemization of expenses incurred and paid.  Upon the conclusion of its services, Katten will file a final fee application for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with section 330 of the Bankruptcy Code.

### Compensation Received by Katten from Debtors

13.     As of the October 15, 2018 (the "**Petition Date**"), the Debtors had not paid any fees or any advance payment retainer to Katten.

14.     Pursuant to Bankruptcy Rule 2016(b), Katten has not shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Katten or (b) any compensation another person or party has received or may receive.

7

## Statement Regarding U.S. Trustee Guidelines

15.    The following is provided in response to the request for additional information set

forth in Paragraph D.1. of the *Guidelines for Reviewing Applications for Compensation and*

*Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*

*Effective As of November 1, 2013.*

a)  **Question**: Did Katten agree to any variations from, or alternatives to, Katten's standard billing arrangements for this engagement?

**Answer**:  Katten agreed to the Contingency Fee Schedule, as set forth herein.

b)  **Question**: Do any of the Katten professionals in this engagement vary their rate based on the geographic location of Debtors' chapter 11 cases?

**Answer**: No.

c)  **Question**: If Katten has represented the Debtors in the 12 months prepetition, disclose Katten's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If Katten's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer**:  Katten did not represent the Debtors in the twelve-month period prior to the Petition Date.

d)  **Question**:  Have the Debtors approved Katten's budget and staffing plan, and, if so, for what budget period?

**Answer**:  Not applicable.  Katten's compensation is a straight contingency fee arrangement, plus reimbursement of expenses.  The Debtors' Restructuring Committee has approved the contingency fee arrangement.

## Katten's Disinterestedness

16.    In connection with its proposed retention by the Debtors in these chapter 11 cases,

Katten does not anticipate having any conflicts or other relationships that might cause it not to be

disinterested or to hold or represent an interest adverse to Debtors.  There are, however, thousands

of potential preference targets (the "**Targets**") and other creditors and parties in interest in the

8

Debtors' chapter 11 cases.  It will take Katten personnel several weeks to process all of the Targets through Katten's conflicts database but Katten will not begin to pursue any Target without first assuring that Katten has no interest adverse to the Debtors with respect to such Target.  Katten has prioritized the search of its conflicts database for the initial set of Targets agreed upon by Katten/Acumen, ASK and the Debtors as well as searching the names of each of the Debtors (the "**Initial Conflicts Search**").  To the extent that a Target is a client or an affiliate of a client of Katten's, ASK will assume responsibility for pursuing a preference action against such Target and such Target will not be among those in the Katten/Acumen Actions.  In addition to conducting conflict searches for each of the potential Targets, Katten has conducted conflicts searches for each of the Debtors, but submits that a search of every one of the Debtors' creditors or other potential parties in interest in these cases is not required given the limited scope of Katten's engagement and would cause needless delay.

17.    To the best of my knowledge based on a search of Katten's conflicts database, Katten does not currently represent any parties in interest in connection with the Debtors' chapter 11 cases.  Katten and certain of its partners and associates may have in the past represented, may currently represent, and may in the future represent, entities that may be potential parties in interest in these chapter 11 cases in connection with matters unrelated the Debtors and these chapter 11 cases.   Such entities include or may include, without limitation, certain of the Debtors' landlords, insurers, secured lenders, banks and parties who may be in litigation with the Debtors. The identities of potential parties in interest may change without our knowledge during the pendency of these chapter 11 cases.  Accordingly, Katten will file supplemental declarations as necessary if and when Katten becomes aware of additional material information.

18.     To the best of my knowledge, Katten is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code, in that Katten, its partners, counsel and associates (a) are not creditors, equity security holders, or insiders of the Debtors, (b) are not and were not, within two (2) years before the Petition Date, a director, officer, or employee of the Debtors, and (c) do not hold or represent an interest materially adverse to the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason, except as may be disclosed in this Declaration.

19.     Moreover, based on the Initial Conflicts Search, to the best of my knowledge, Katten, its partners, counsel and associates, insofar as I have been able to ascertain, have no connection with the Debtors, their creditors, or any other parties in interest, or any Bankruptcy Judge currently serving on the United States Bankruptcy Court for the Southern District of New York, except as disclosed or otherwise described herein.

20.     Katten will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Katten will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

21.     From time to time, Katten has referred work to other professionals retained or to be retained in these chapter 11 cases.  Likewise, certain such professionals have referred work to Katten.

### Connections to Holders of Claims Against Debtors

22.     Katten's Distressed Debt and Trading Practice advises clients regarding investing in distressed debt.  Attorneys from Katten's Distressed Debt and Trading Practice have in the past

10

represented and may in the future represent clients in matters related to claims against the Debtors. The attorneys handling any such future representation will be screened from Katten's representation of the Debtors by appropriate ethical walls, will not perform work in connection with Katten's representation of the Debtors, and will not have access to confidential information related to Katten's representation of Debtors.

23.    Certain interrelationships exist among the Debtors.  Nevertheless, Katten does not believe that the Debtors' relationships to each other pose any conflict of interest because of the general unity of interest among the Debtors against the Targets.  Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude Katten's joint representation of Debtors in these chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated:  June 6, 2019


                                        Respectfully submitted,

                                         /s/ Steven J. Reisman
                                        _____
                                        STEVEN J. REISMAN
                                        Partner, Katten Muchin Rosenman LLP

11

## Exhibit C

**Meghji Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                              :
                                                   :          **Chapter 11**
**SEARS HOLDINGS CORPORATION, et al.,**            :
                                                   :          **Case No. 18-23538 (RDD)**
                                                   :
            Debtors.[1]                            :          **(Jointly Administered)**
-------------------------------------------------------------x

### DECLARATION OF MOHSIN MEGHJI IN SUPPORT OF APPLICATION OF DEBTORS FOR AUTHORITY TO EMPLOY AND RETAIN KATTEN MUCHIN ROSENMAN LLP AS SPECIAL AVOIDANCE ACTION COUNSEL FOR DEBTORS EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

Mohsin Meghji makes this declaration under 28 U.S.C. § 1746:

1.      I am the Chief Restructuring Officer of Sears Holding Corporation ("**Sears Holdings**"). In my current role at Sears Holdings, I am responsible for supervising outside counsel and other professionals and monitoring and managing legal fees and expenses.

2.      On October 15, 2018 (the "**Commencement Date**"), Sears Holdings and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Code (the "**Bankruptcy Code**"). I submit this Declaration in support of the Debtors' application (the "**Application**")[2] pursuant to sections 327(a) and 328 of the Bankruptcy Code, Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), for authority to employ and retain Katten Muchin Rosenman LLP ("**Katten**"), as special avoidance action counsel for the Debtors in the above-captioned chapter 11 cases, *nunc pro tunc* to April 1, 2019, filed contemporaneously herewith.

3.      This Declaration is provided pursuant to Paragraph D.2 of the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, information provided to me by the Debtors' employees or advisors, or my opinion based upon knowledge and experience as Chief Restructuring Officer of the Debtors. I am authorized to submit this Declaration on behalf of the Debtors.

### The Debtors' Selection of Avoidance Action Professionals

4.      Katten is proposed to serve as special avoidance action counsel to the Debtors to pursue preference recoveries on behalf of the estates. The Debtors are also proposing to retain under a separate application Acumen Recovery Services, LLC ("**Acumen**") to provide data gathering, defense analysis, and litigation support services to assist Katten in the pursuit of such preference recoveries. I understand that a comprehensive review process is necessary when selecting and managing counsel and other professionals in a bankruptcy case to ensure the bankruptcy professionals are subject to the same client-driven market forces, security, and accountability as professionals in non-bankruptcy engagements. The Debtors

---

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Application.

chose Katten because of, among other factors, its expertise and extensive experience in the field of debtors' protections, creditors' rights and business reorganizations under the Bankruptcy Code.

5.       Because there are several thousand potential preference actions, the Debtors also propose to retain, by separate application, ASK LLP ("**ASK**") as special avoidance action counsel.  Katten and Acumen on the one hand, and ASK on the other hand, will split the potential preference actions equitably, subject to approval of the Restructuring Committee.

## Cost Supervision

5.       As Chief Restructuring Officer, I was involved in negotiating the terms of Katten's, Acumen's, and ASK's engagement on behalf of the Debtors. All three firms are being paid on a contingency basis with their fees and expenses payable solely from cash recovered from preference recoveries.  The fees payable to Katten and Acumen collectively are based on the same percentages and tiers as those payable to ASK which has its own in-house capabilities for data gathering and analysis (*i.e.*, the services being provided to Katten by Acumen).  The fee arrangements were negotiated with Katten, Acumen, and ASK on an arm's-length basis and are structured to incentivize the professionals to achieve the maximum recoveries in the shortest possible time for the benefit of the estates and their creditors.

6.       To achieve the most favorable compensation structure for the estates, the Debtors seek to minimize any extra burdens on the professionals and therefore do not desire that Katten spend the time and effort to maintain or submit time records to the Debtors, the Office of the United States Trustee, or the Court, as Katten's compensation is based solely on their success in achieving preference recoveries.

3

7.      Katten, Acumen, and ASK will provide the Debtors and the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") with monthly reports on the status of preference actions, recoveries, and their fees and expenses.  They will also file quarterly short-form statements of their fees and expenses with the Court and file a final fee application detailing their fees, expenses, and recoveries.  The Debtors submit that such submissions will provide the Debtors, the Creditors' Committee, and the Court with adequate oversight of these professionals.

8.      As Chief Restructuring Officer of the Debtors, I supervise and manage professional fees and expenses incurred by the Debtors' outside counsel and other professionals. I or someone under my supervision will review the fee and expense statements submitted by Katten, Acumen, and ASK and assure that their fees and expenses are consistent with the terms of engagement approved by the Debtors and the Court. The aforementioned review and approval process does not differ when the Debtors employ outside professionals for non-bankruptcy cases. Moreover, Katten, Acumen, and ASK have informed me that the Debtors will be provided with the opportunity to review all fee and expense statements and request adjustments to such invoices to the extent that the Debtors determine that such adjustments are appropriate in light of the terms of engagement approved by the Debtors and the Court.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 6th day of June, 2019

/s/ Mohsin Meghji
Mohsin Meghji
Chief Restructuring Officer,
Sears Holdings Corporation

5