**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
: 
In re: : Chapter 11
: 
SEARS HOLDINGS CORPORATION, *et al.*,[1] :
: Case No. 18-23538-rdd
Debtors. :
: (Jointly Administered)
: 
: **Re: Docket No. 4135**
---------------------------------------------------------------X

**DECLARATION OF ABENA A. MAINOO IN SUPPORT OF
TRANSFORM HOLDCO LLC'S RESPONSE TO DEBTORS' MOTION TO (A)
ENFORCE THE AUTOMATIC STAY AGAINST FIRST DATA MERCHANT
SERVICES CORP. AND (B) COMPEL TURNOVER OF ESTATE PROPERTY**

I, Abena A. Mainoo, declare under penalty of perjury as follows:

1. I am an attorney duly admitted to practice before this Court, and I am a partner of the law firm Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), counsel for Transform

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Holdco LLC ("Transform").  I respectfully submit this declaration ("Mainoo Declaration") in connection with *Transform Holdco LLC's Response to Debtors' Motion to (A) Enforce the Automatic Stay Against First Data Merchant Services Corp. and (B) Compel Turnover of Estate Property*.

2. Attached hereto as Exhibit A is a true and correct copy of a May 10, 2019 letter from me to counsel for First Data Merchant Services Corp.

3. Attached hereto as Exhibit B is a true and correct copy of a May 10, 2019 email with the subject line "Credit Card Reserves" from me to counsel for Debtors.

Executed on June 7, 2019 in New York, New York.

Respectfully submitted,

*/s/ Abena A. Mainoo*
Abena A. Mainoo

# Exhibit A

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

D: +1 212 225 2785
amainoo@cgsh.com

VICTOR I. LEWKOW
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
YARON Z. REICH
RICHARD S. LINCER
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
ANDREA M. BASHAM
LAURA BAGARELLA
SHIRLEY M. LO
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

May 10, 2019

BY EMAIL

Joseph Pack
White & Case LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131-2352

Re:  Credit Card Reserves

Dear Joe:

Further to our discussion today, I am writing on behalf of Transform Holdco LLC ("Transform") regarding the credit card reserves held by First Data Merchant Services Corporation ("First Data") pursuant to the July 31, 2012 Merchant Services Bankcard Agreement between First Data and Transform ("MSBA").

As we previously informed you, on May 8, 2019, the bankruptcy court entered an order relating to the Reserve Accounts.  The May 8 order provided that Sears Holdings Corporation and its debtor affiliates (the "Debtors") were entitled to retain under the asset purchase agreement the oldest credit card accounts receivable in an amount of $14,639,618.38, comprised, in part, of $13.3 million held in the Reserve Account by First Data as described in the April 29 and May 1 letters from myself to the bankruptcy court less any amounts drawn from the Reserve Account pursuant to the MSBA to satisfy liabilities owed by the Debtors to First Data as of the Closing Date.  Such net amount is defined as the Adjusted Excess Amount.  In turn, the April 29 and May 1 letters referenced in the order describe the oldest of the credit card accounts receivable held by First Data as the $13.3 million reserve taken from November to December 2017 pursuant to Section 4.7 of the MSBA.  I enclose copies of the May 8 order and the April 29 and May 1 letters for your reference.

Joseph Pack, p. 2

      Pursuant to the May 8 order, Transform is obligated to deliver to the Debtors the Adjusted Excess Amount from First Data "no later than two business days after any release of" such amount by First Data to Transform. In addition, pursuant to the May 8 order, Transform is obligated to cooperate in good faith and to promptly provide First Data information in response to any reasonable request from First Data in connection with securing the release and/or transfer of an amount from the reserve taken from November to December 2017 pursuant to Section 4.7 of the MSBA equal to the Adjusted Excess Amount.

      Accordingly, we ask you to deliver to Transform or, in the alternative, to Debtors such amount, if any, from the $13.3 million reserve taken from November to December 2017 pursuant to Section 4.7 of the MSBA that the MSBA no longer entitles First Data to retain. (In connection with any such release, please advise us of the components of the amount released, including any reductions in respect of liabilities owed by the Debtors to First Data as of the Closing Date (or confirm that no such liabilities remain).) If First Data requires any information in order to determine whether First Data is entitled to retain such funds pursuant to the MSBA, please advise us promptly as to what information is required.

      In addition, and for clarity and completeness, but as a separate matter, we note that during our conversation today, you represented that First Data was prepared to release $15 million of funds withheld by First Data in October 2018 pursuant to the termination provision of the MSBA, Section 9.3. We informed you that those funds belong to Transform and accordingly should be returned directly to Transform.

      Very truly yours,

      CLEARY GOTTLIEB STEEN & HAMILTON LLP

      /s/ Abena A. Mainoo

      Abena A. Mainoo, a Partner

Attachments

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
In re                                                       :     Chapter 11
                                                            :
SEARS HOLDINGS CORPORATION, *et al.*,                       :     Case No. 18-23538 (RDD)
                                                            :
        Debtors.[1]                                         :     (Jointly Administered)
                                                            :
------------------------------------------------------------x

### ORDER ENFORCING ASSET PURCHASE AGREEMENT
### AGAINST TRANSFORM HOLDCO LLC

Upon the motion, dated March 11, 2019 (ECF No. 2796), and as set forth in supplemental supporting memoranda of law (ECF Nos. 2919, 3079) and supporting declarations (collectively, the "**Motion to Enforce**"),[2] of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the *Debtors' Supplemental Memorandum of Law in Further Support of Their Motion to Enforce the Automatic Stay* (ECF No. 3079).

18-23538-rdd    Doc 4141    Filed 06/03/19    Entered 06/03/19 11:45:15    Main Document
                                    Pg 7 of 19

18-23538-shl    Doc 4142    Filed 06/03/19    Entered 06/03/19 09:08:15    Main Document
                                    Pg 2 of 5

"**Debtors**"), for entry of an order (the "**Order**") enforcing the Sale Order and automatic stay and compelling turnover of Estate funds pursuant to sections 105, 362, 541, and 542 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"); and upon the objection (ECF No. 2864) of Transform Holdco LLC ("**Transform**"), along with Transform's supplemental memorandums of law (ECF Nos. 3011, 3156) and supporting declarations (collectively, the "**Objection**"), which was the sole objection to the Motion to Enforce; and upon the joinder (ECF No. 2808) (the "**Joinder**") to the Motion to Enforce filed by the Official Committee of Unsecured Creditors (the "**Creditors' Committee**"); and the Court having jurisdiction to decide the Motion to Enforce and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion to Enforce and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion to Enforce having been provided in accordance with the Amended Case Management Order, and such notice having been adequate and appropriate under the circumstances, no other or further notice being required; and the Court having held hearings to consider the relief requested in the Motion to Enforce on March 21, 2019 and on April 18, 2019 (together, the "**Hearings**"); and upon the record of the Hearings and all of the proceedings had before the Court; and, after due deliberation and for the reasons stated by the Court in its bench ruling and the April 18, 2019 Hearing, the Court having determined that the legal and factual bases set forth in the Motion to Enforce establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, and their creditors; and upon the Court's consideration of

WEIL:\97015369\7\73217.0004

the parties' proposed orders and accompanying correspondence submitted to the Court dated April 29, 2019, April 30, 2019 and May 1, 2019; now, therefore,

**IT IS HEREBY ORDERED THAT:**

1. The Motion to Enforce is granted to the extent set forth in this Order.

2. Based upon the plain and unambiguous language of the Asset Purchase Agreement, dated as of January 17, 2019, as amended by Amendment No. 1 thereto, dated February 11, 2019 (the "**APA**"), by and among Transform and the Debtors:

   a. The proceeds of pre-Closing credit card transactions held in reserve accounts by the Credit Card Payment Processors[3] pursuant to the Processing Agreements (the "**Reserve Accounts**") are Credit Card Accounts Receivable as that term is defined in Section 1.1 of the APA.

   b. The Debtors were entitled to, and did, deliver the Reserve Accounts to Transform at Closing to satisfy in part their obligation under Section 10.9 of the APA to deliver at least $1.657 billion, in the aggregate, of Acquired Inventory (excluding any Pending Inventory), Credit Card Accounts Receivable, and Pharmacy Receivables.

   c. The Debtors delivered an aggregate threshold excess of $14,639,618.38 to Transform, less any amounts drawn from the Reserve Accounts held by the respective Credit Card Payment Processors pursuant to the Processing Agreements to satisfy liabilities owed by the Debtors to the Credit Card Payment Processors as of the Closing Date (the amounts drawn from the $14,639,618.38 as of such date to be referred to as the "**Reserve Draw**").

3. Accordingly, pursuant to Section 10.9 of the APA, the Debtors are entitled to retain as an Excluded Asset (as that term is defined in the APA) the oldest Credit Card Accounts Receivable in an amount of $14,639,618.38, which comprises (a) $13.3 million held in the Reserve Account by First Data as detailed in the letters to the Court from Abena A. Mainoo,

---

[3] The Credit Card Payment Processors are First Data Merchant Services Corporation ("**First Data**"), DFS Services LLC, and American Express Travel Related Services Company, Inc. ("**American Express**").

18-23538-shl    Doc 4742    Filed 08/08/19    Entered 08/08/19 09:08:15    Main Document
                                    Pg 4 of 5

Esq. dated April 29, 2019 and May 1, 2019, and (b) $1,339,618.38 held in the Reserve Account by American Express, as also detailed in the foregoing letters from Abena A. Mainoo, Esq.—less the respective Reserve Draw amounts, if any (the "**Adjusted Excess Amounts**").

4. The Debtors are authorized to take the steps necessary to effectuate a transfer of the respective Adjusted Excess Amounts from First Data and American Express to the Debtors. Without limiting the foregoing, upon entry of this Order, Transform shall be obligated to deliver to the Debtors the Adjusted Excess Amounts no later than two business days after any release of such Amounts by the Credit Card Payment Processors to Transform, should the Credit Card Payment Processors release any such amounts to Transform instead of the Debtors.

5. Transform is directed to cooperate in good faith and promptly provide information to First Data or American Express in response to any reasonable request from First Data or American Express in connection with securing the release and/or transfer to the Debtors of an amount from the oldest Credit Card Accounts Receivable equal to the Adjusted Excess Amounts pursuant to paragraphs 3 and 4 of this Order. Upon the transfer of the Adjusted Excess Amounts to the Debtors as contemplated in paragraphs 3 and 4 of this Order, the Debtors will have no other right, title, or interest in the Reserve Accounts.

6. The Debtors' request for additional relief relating to Transform's alleged violation of the automatic stay with respect to Credit Card Accounts Receivable during the period preceding this Order is denied.

WEIL:\97015369\7\73217.0004

18-23538-rdd    Doc 3742    Filed 05/08/19    Entered 05/08/19 09:08:15    Main Document
                                    Pg 10 of 19
18-23538-shl    Doc 4141    Filed 06/03/19    Entered 06/03/19 11:45:15    Main Document
                                    Pg 5 of 5

18-23538-rdd    Doc 3742    Filed 05/08/19    Entered 05/08/19 09:08:15    Main Document
Pg 5 of 5

7. The remaining relief requested in the Motion to Enforce shall be continued until further determination by the Court.

8. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: May 8, 2019
      White Plains, New York

    /s/Robert D. Drain
    THE HONORABLE ROBERT D. DRAIN
    UNITED STATES BANKRUPTCY JUDGE

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

VICTOR I LEWKOW
THOMAS J MOLONEY
DAVID G. SABEL
JONATHAN I BLACKMAN
YARON Z REICH
RICHARD S. LINCER
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B BROD
NICOLAS GRABAR
CHRISTOPHER E AUSTIN
HOWARD S. ZELBO
DAVID E BRODSKY
ARTHUR H KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J SHIM
STEVEN L WILNER
ERIKA W NIJENHUIS
ANDRES DE LA CRUZ
DAVID C LOPEZ
MICHAEL A GERSTENZANG
LEWIS J LIMAN
LEV L DASSIN
NEIL Q WHORISKEY
JORGE U JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A KLINGSBERG
MICHAEL D DAYAN
CARMINE D BOCCUZZI, JR
JEFFREY D KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J RAYMOND
SUNG K KANG
LEONARD C JACOBY
SANDRA L FLOW

FRANCISCO L CESTERO
FRANCESCA L. ODELL
WILLIAM L MCRAE
JASON FACTOR
JOON H KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S PEACE
MEREDITH E KOTLER
CHANTAL E KORDULA
BENET J O REILLY
ADAM E FLEISHER
SEAN A O'NEAL
GLENN P MCGRORY
MATTHEW P SALERNO
MICHAEL J ALBANO
VICTOR L HOU
ROGER A. COOPER
AMY R SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A BAREFOOT
PAMELA L MARCOGLIESE
PAUL M TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H FEDIDA
ADRIAN R LEIPSIC
ELIZABETH VICENS
ADAM J BRENNEMAN
ARI D MACKINNON
JAMES E LANGSTON
JARED GERBER
COLIN D LLOYD
COREY M GOODMAN
RISHI ZUTSHI
JANE VANLARE

DAVID H HERRINGTON
KIMBERLY R SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A MAINOO
HUGH C CONROY, JR.
JOSEPH LANZKRON
MAURICE R GINDI
KATHERINE R REAVES
RAHUL MUKHI
  RESIDENT PARTNERS

SANDRA M ROCKS
S DOUGLAS BORISKY
JUDITH KASSEL
DAVID E WEBB
PENELOPE L CHRISTOPHOROU
BOAZ S MORAG
MARY E ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E LUFT
ANDREW WEAVER
HELENA K GRANNIS
JOHN V HARRISON
CAROLINE F HAYDAY
NEIL R MARKEL
KENNETH S BLAZEJEWSKI
ANDREA M BASHAM
LAURA BAGARELLA
SHIRLEY M LO
JONATHAN D W GIFFORD
SUSANNA E PARKER
  RESIDENT COUNSEL

LOUISE M PARENT
  OF COUNSEL

D: +1 212 225 2785
amainoo@cgsh.com

April 29, 2019

BY EMAIL

Judge Robert D. Drain
U.S. Bankruptcy Court
for the Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:  In re Sears Holdings Corp., Case No. 18-23538
     Transform Holdco LLC's Proposed Order

Dear Judge Drain:

This firm represents Transform Holdco LLC ("Transform") in the above-captioned case. Enclosed for your consideration is Transform's proposed order with respect to the Court's April 18, 2019 ruling on Debtors' Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property [Docket No. 2796].

Transform submits this proposed order for the Court's consideration to correct terms of Debtors' proposed order that are inconsistent with the Court's ruling. In particular:

1. <u>Transform's Obligations (¶ 4)</u>

- Transform's proposed order provides: "Upon entry of this Order, Transform shall be obligated to deliver to the Debtors any amounts of the Oldest Credit Card Accounts Receivable no later than two business days after the release by the Credit Card Payment Processors to Transform of such amounts, in an amount equal to the Adjusted Excess Amounts."

- Debtors' proposed order provides: "The Debtors are authorized to take the steps necessary to effectuate a transfer of the respective Adjusted Excess Amounts from First Data and American Express to the Debtors."

Debtors' proposed order could be read to impose on the Credit Card Payment Processors the obligation to make delivery to Debtors. However, the Credit Card Payment Processors were not made parties to Debtors' motion and therefore are not appropriately made subject to the order. Transform's proposed order corrects this ambiguity and makes clear that the obligation is on Transform once the amounts are released.

 2. Calculation of the Reserves Owing (¶ 2.c.)

- Transform's proposed order provides: "The Debtors delivered an aggregate threshold excess of $14,639,618.38 to Transform, less any amounts (current or future) owed by Transform, as the Debtors' assignee, for chargebacks or any other liabilities in respect of pre-Closing transactions chargeable against the Reserve Accounts held by the respective Credit Card Payment Processors pursuant to the Processing Agreements (the amounts to be deducted from the $14,639,618.38 to be referred to as the 'Chargeback Amount')."

- Debtors' proposed order provides: "The Debtors delivered an aggregate threshold excess of $14,639,618.38 to Transform, less any amounts drawn from the Reserve Accounts held by the respective Credit Card Payment Processors pursuant to the Processing Agreements to satisfy liabilities owed by the Debtors to the Credit Card Payment Processors as of the Closing Date (the amounts drawn from the $14,639,618.38 to be referred to as the 'Reserve Draw')."

At the April 18 hearing, the Court recognized that the reserve amounts are subject to "chargebacks and future other amounts that would be owed either by nature of setoff or recoupment under the processing agreements." Transcript at 81:10-19. That is consistent with the language of Section 10.9 of the APA that gives Debtors the right to retain only the amounts of Credit Card Accounts Receivable ("CCAR") that were due at the time of Closing and the language of the relevant card agreements that gives the Credit Card Payment Processors the right to offset the reserve amounts with the liabilities (current and future) on card sales that had transpired prior to the Closing date.[1] It is also necessary to avoid the windfall that Debtors would otherwise receive were they to obtain the full amount of the reserves without deducting for chargebacks, adjustments, fees, and other amounts that Transform has paid already or will pay in the future in respect of pre-Closing card sales. Debtors' proposal, providing only for the deduction of amounts relating to "liabilities owed by the Debtors to the Credit Card Payment Processors as of the Closing Date," does not account fully for the liabilities owed by the Debtors in respect of pre-Closing transactions, such as chargebacks post-Closing that are in respect of card sales before the Closing. Under the APA, Transform had the right not to assume the agreements and in that instance all Debtors would have been entitled to was a net amount of the

---

[1] Transform maintains its objection to the Court's ruling with respect to whether the reserves are Credit Card Accounts Receivable that were due at Closing.

Judge Drain, p. 3

reserves less chargebacks on transactions that preceded Closing. That Transform opted to assume the agreements after Closing should not give Debtors a right to a greater credit when the value of the reserves is measured at the time of Closing. Transform's proposed order thus appropriately provides for deduction of those amounts. In addition, it provides a mechanism[2] for determination of that amount by requiring Transform to cooperate in good faith with Debtors regarding the amounts of chargebacks and other liabilities that reduce the reserve amounts.

   3. <u>Oldest Credit Card Accounts Receivable (¶3)</u>

- Transform's proposed order provides: "Accordingly, pursuant to Section 10.9 of the APA, the Debtors are entitled to retain as an Excluded Asset (as that term is defined in the APA) Credit Card Accounts Receivable in an amount of $14,639,618.38—which is comprised of: (a) $13.3 million from the monies withheld by First Data from November to December 2017 pursuant to Section 4.7 of the First Data Merchant Services Bankcard Agreement and (b) $1,339,618.38 from the monies withheld by American Express in February 2018 pursuant to Section 3.a of the Agreement for American Express Card Acceptance (together, the 'Oldest Credit Card Accounts Receivable')"

- Debtors' proposed order provides: "Accordingly, pursuant to Section 10.9 of the APA, the Debtors are entitled to retain as an Excluded Asset (as that term is defined in the APA) the oldest Credit Card Accounts Receivable in an amount of $14,639,618.38, which is comprised of: (a) $13.3 million held in the Reserve Account by First Data and (b) $1,339,618.38 held in the Reserve Account by American Express"

The only CCAR that Debtors may retain to reduce excess collateral pursuant to the second clause of Section 10.9 of the APA are the oldest of any CCAR. Assuming that the reserves are CCAR, it is undisputed that the oldest CCAR at Closing would be the $13.3 million withheld by First Data from November to December 2017 pursuant to Section 4.7 of the First Data Merchant Services Bankcard Agreement and the $5 million withheld by American Express in February 2018 pursuant to Section 3.a of the Agreement for American Express Card Acceptance. *See* Transcript at 69:9-18 ("MR. FRIEDMANN: My understanding is that First Data is holding approximately $28 million and change and then the other credit card processors have some smaller amounts. In terms of determining what the oldest are, my understanding is the oldest $13.3 million, if my number is right, are with First Data. You would then need to go one of the other credit card processors if you're looking for the oldest to get the next whatever that is -- . . . One point whatever million."); March 20, 2019 Declaration of Terrence E. Rolecek [Docket No. 2915] and Exhibits B, C, and G thereto; Exhibit A to April 11, 2019 Declaration of Abena A. Mainoo [Docket No. 3153]. Transform's proposed order identifies the oldest CCAR, whereas Debtors' proposed order does not do so and invites future disputes about the interpretation of the order.

---

[2] *See* ¶ 5 of Transform's proposed order: "Transform and the Debtors are further directed to cooperate with one another in good faith to determine the applicable Chargeback Amount with respect to both First Data and American Express and to determine the Adjusted Excess Amounts."

Judge Drain, p. 4

      Transform's submission of the proposed order is without prejudice to any of its rights and Transform reserves all rights.  Thank you for your consideration.

                              Respectfully submitted,

                              Abena A. Mainoo

Attachment

CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2785
amainoo@cgsh.com

VICTOR I. LEWKOW
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
YARON Z. REICH
RICHARD S. LINCER
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW

FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE

DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
    RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
ANDREA M. BASHAM
LAURA BAGARELLA
SHIRLEY M. LO
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
    RESIDENT COUNSEL

LOUISE M. PARENT
    OF COUNSEL

May 1, 2019

BY EMAIL

Judge Robert D. Drain
U.S. Bankruptcy Court
for the Southern District of New York
300 Quarropas Street
White Plains, New York  10601

     Re: In re Sears Holdings Corp., Case No. 18-23538
       <u>Transform Holdco LLC's Proposed Order</u>

Dear Judge Drain:

    Transform Holdco LLC ("Transform") submits this letter in response to Debtors' April 30, 2019 letter regarding the proposed order with respect to the Court's April 18, 2019 ruling on Debtors' Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property [Docket No. 2796].

    1.  <u>Transform's Obligations (¶ 4)</u>

    Transform's proposed order, requiring Transform to make delivery to the Debtors no later than two business days after the release by the Credit Card Payment Processors, provides an adequate mechanism to implement the Court's ruling.  Debtors' claim that Transform is withholding Estate property mischaracterizes the parties' ongoing discussions regarding reconciliation of the cash in transit and rent prorations.[1]  Transform has assumed the Processing Agreements and, as a consequence, is the only person with any rights under the Processing

---

[1]  As Debtors acknowledged at the March 21, 2019 hearing, the parties "all agree[d] that there would be some offsets" with respect to the cash in transit and on the need to reconcile amounts as to the cash in transit and prorations.  Transcript of March 21, 2019 Hearing at 19:16-21:9.

Cleary Gottlieb Steen & Hamilton LLP or an affiliated entity has an office in each of the cities listed above.

Judge Drain, p. 2

Agreements.[2] *See City of Covington v. Covington Landing Ltd. Partnership*, 71 F.3d 1221, 1226 (6th Cir. 1995) (quoting *Matter of Village Rathskeller, Inc.*, 147 B.R. 665, 671 (S.D.N.Y. Nov. 20, 1992)) ("When the debtor assumes the lease or the contract under § 365, it must assume both the benefits and the burdens of the contract. . . . The Agreement becomes property of the estate in the same shape as it existed prior to bankruptcy, with all of its benefits and burdens."); *see also Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir. 1983) ("An assignment does not modify the terms of the underlying contract . . . Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor."). Debtors' proposal to seek recovery directly from the Credit Card Payment Processors not only is based on a false premise but would interfere with Transform's relationship with the Credit Card Payment Processors and is improper because those third parties are not subject to the order and must first release any amounts to Transform, as the assignee of the Processing Agreements.

        2.      <u>Calculation of the Reserves Owing (¶ 2.c.)</u>

Transform's proposed order appropriately provides for the deduction of current or future amounts owed by Transform, as Debtors' assignee, for liabilities in respect of pre-Closing transactions chargeable against the Reserve Accounts pursuant to the Processing Agreements. This is consistent both with the Court's interpretation of Debtors' obligations under those agreements and with the agreements themselves. *See* Transcript of April 18, 2019 hearing at 81:10-19 (Debtors obligated "for chargebacks and future other amounts that would be owed either by nature of setoff or recoupment under the processing agreements"); *id.* at 45:6-16 ("THE COURT: . . . [Credit Card Payment Processors] have a right of setoff" in reserves).[3] The Processing Agreements permit the Credit Card Payment Processors themselves to withhold amounts reasonably anticipated to become due and to deduct against the reserves Debtors' future liabilities from pre-Closing credit card sales. Put otherwise, it is undisputed that Debtors' only rights, under the Court's interpretation of the agreements, would be to retain the oldest Credit Card Accounts Receivable as they were valued in Debtors' hands at the time of Closing. At the time of Closing, and assuming that there never was an assumption and assignment to Transform, the value of those reserves would have been a net amount measured by what was being withheld less what would be needed to satisfy amounts that would become due based on pre-Closing sales. By seeking to obtain the gross amount, reflecting the fact that amounts due based on pre-Closing sales have already been paid by Transform out of post-Closing sales data, Debtors are overreaching and seeking a windfall. Their proposed order would allow them to earn a profit by retaining receipts on pre-Closing transactions that were cancelled post-Closing and refunded to the Credit Card Payment Processors by Transform.

        3.      <u>Oldest Credit Card Accounts Receivable (¶3)</u>

Transform's proposed order, identifying the oldest Credit Card Accounts Receivable, incorporates the relevant provisions of the Processing Agreements and cites the

---

[2]    *See* Notice of Filing of Further Revised List of Initial Assigned Agreements in Connection with the Sale Transaction [Docket No. 2910].
[3]    *See also id.* at 61:11-18 ("MR. LIMAN: . . . This money exists to satisfy the chargebacks, whether those chargebacks are pre-closing chargebacks, which are their liabilities, or chargebacks as a result of post-transactions, which -- THE COURT: Right, but you can tell which is which. You could tell what's pre and what's post.").

Judge Drain, p. 3

provisions the Credit Card Payment Processors invoked to establish the Reserve Accounts. Critically, Debtors do not dispute the accuracy of Transform's description of the oldest Credit Card Accounts Receivable. Thus, there is no genuine dispute before the Court as to what constitutes the oldest Credit Card Accounts Receivable. By contrast, Debtors' proposed order leaves the identity of the oldest Credit Card Accounts Receivable ambiguous, would seem to make it a matter that the Credit Card Payment Processors and Debtors alone can agree on in derogation of Transform's rights, and is a recipe for further disputes. Debtors offer no compelling reason for the Court now not to specify what are the oldest of the Credit Card Accounts Receivable.

Transform's proposed order corrects the deficiencies identified in Debtors' proposed order. Thank you for your consideration.

Respectfully submitted,

/s/ Abena A. Mainoo

# Exhibit B

| | |
|---|---|
| **From:** | Mainoo, Abena |
| **To:** | Schrock, Ray; Singh, Sunny; Friedmann, Jared; Genender, Paul |
| **Cc:** | Liman, Lewis J.; O"Reilly, Benet J.; O"Neal, Sean A.; Barefoot, Luke A. |
| **Subject:** | Credit Card Reserves |
| **Date:** | Friday, May 10, 2019 5:40:00 PM |

Dear Ray, Sunny, Jared and Paul:

We write to inform you of actions Transform has taken in compliance with the Court's May 8 order regarding credit card accounts receivable and to ask whether debtors are aware of further information required by the credit card processors. Specifically, today we have asked First Data and American Express to inform us as soon as possible of the information they require to secure the release as soon as possible of the Adjusted Excess Amounts from the $13.3 million reserve held by First Data and from the $1,339,618.38 from the reserve held by American Express.

We have also informed First Data and American Express of our position that First Data and American Express should deliver to Transform or, in the alternative, to Debtors the Adjusted Excess Amounts from such amount, if any, from the $13.3 million reserve taken in 2017 pursuant to Section 4.7 of the MSBA, which the MSBA no longer entitles First Data to retain, and the reserve that the American Express Card Agreement no longer entitles American Express to retain. Should First Data or American Express release those funds to Transform, we stand ready to deliver them to debtors within two business days of the date of release.

We ask you to inform us should First Data or American Express release those funds to debtors directly. We also ask you to inform us of any communications between debtors and First Data or American Express concerning the transfer of the Adjusted Excess Amounts.

Best,
Abena

---

**Abena Mainoo**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: mmontanez@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2785 | M: +1 610 733 9885
amainoo@cgsh.com  | clearygottlieb.com