WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

-------------------------------------------------------------x

**DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**AND MEMORANDUM IN SUPPORT THEREOF AND/OR TO DECLARE THAT THE**
**INSURANCE PROCEEDS ARE NOT PART OF THE BANKRUPTCY ESTATE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR - Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc. (3626)); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

               Sears Holdings Corporation, SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) ("**Sears Puerto Rico**"), and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection (the "**Objection**") in response to the *Motion for Relief From the Automatic Stay and Memorandum in Support Thereof and/or to Declare that the Insurance Proceeds Are Not Part of the Estate*, dated May 1, 2019 (ECF No. 3475) (the "**Motion**"), filed by Santa Rosa Mall, LLC (the "**Landlord**").[2]  In support of the Objection, the Debtors respectfully represent as follow:

**Background**

*The Debtors' Chapter 11 Cases*

               1.       Beginning on October 15, 2018 and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

               2.       On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in these chapter 11 cases.

               3.       The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

4.      The Debtors and Transform Holdco LLC ("**Transform**") entered into that certain asset purchase agreement, dated as of January 17, 2019 (as amended, the "**APA**") for the sale of substantially all of the Debtors' assets (the "**Sale Transaction**").

5.      On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and* Clear *of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507).  The Sale Transaction closed on February 11, 2019.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker* Pursuant *to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

*The Santa Rosa Lease and the Motion*

7.      On September 22, 1965, the Landlord and Sears Puerto Rico, Inc. entered into that certain lease agreement (the "**Santa Rosa Lease**") for the premises located in the Santa Rosa Mall in Bayamon, Puerto Rico.

8.      Under the APA, Transform had sixty (60) days after the closing of the Sale Transaction to designate unexpired leases for assumption and assignment (the "**Designation Period**").  The Designation Period was extended to May 3, 2019, provided that the extension would not apply to certain leases that were the subject of pending motions filed by the lease counterparties, including the Santa Rosa Lease.  At the request of Transform and the Landlord, the Debtors agreed to an extension of the Designation Period for the Santa Rosa Lease to April 30, 2019 (the "**Extended Designation Deadline**").

3

9.      On April 29, 2019, one day prior to the Extended Designation Deadline, the Landlord filed the *Santa Rosa Mall's Emergency Motion to Compel Compliance with the Court's February 8, 2019 Sale Order* (ECF No. 3417) (the "**Emergency Motion**") and the *Santa Rosa Mall, LLC's Motion for an Order Shortening Notice with Respect to Emergency Motion to Compel Compliance with the Court's February 8, 2019 Sale Order* (ECF No. 3418) (the "**Motion to Shorten Notice**").

10.      On April 30, 2019, the Debtors received formal notice from Transform that it would not be designating the Santa Rosa Lease for assumption and assignment, and the Debtors subsequently filed a notice of rejection of, among others, the Santa Rosa Lease (ECF No. 3449).

11.      On May 1, 2019, the Landlord withdrew the Emergency Motion and the Motion to Shorten Notice (ECF No. 3468). On the very same day, the Landlord filed the Motion.

12.      The Debtors informed the Landlord that the Motion was not filed in time to be heard at the next omnibus hearing, which was scheduled for May 21, 2019; the Landlord subsequently filed the *Emergency Motion for an Order Shortening Notice With Respect to Motion for Relief From the Automatic Stay and Memorandum in Support Thereof and/or to Declare that the Insurance Proceeds are Not Part of the Bankruptcy Estate* (ECF No. 3676) (the "**Emergency Motion to Shorten Notice**"). Moreover, the Debtors advised the Landlord that the Motion was inconsistent with the Court's admonition at the hearing held on March 21, 2019, that the Landlord should seek the relief it sought by adversary proceeding rather than by motion. *See In re Sears Holding Corporation*, Case No. 18-23538, Hr'g. Tr. at 81:20-24 (RDD) (Bankr. S.D.N.Y. Mar. 21, 2019) ("But I think if you're actually seeking to impose an equitable lien or reform an agreement, you need to move by adversary proceeding because you're looking for a declaratory judgment.").

4

13.     Given the duplicative filings by the Landlord and the untimeliness of the Motion, the Debtors requested a telephonic chambers conference with this Court (the "**Chambers Conference**"), which was held on May 8, 2019 with the participation of the Landlord.  During the Chambers Conference, this Court denied the Emergency Motion to Shorten Notice and reiterated that the Landlord should proceed by adversary proceeding.

14.     On June 7, 2019, the Landlord filed a complaint seeking to commence an adversary proceeding against Sears Puerto Rico (ECF No. 4153) (such complaint, the "**Adversary Complaint**" and the proceeding, the "**Adversary Proceeding**").

### The Motion Should Be Denied

15.     As an initial matter, the Motion should be denied because the issues raised in the Motion are also raised in the Adversary Complaint and will be properly addressed in the Adversary Proceeding.  Indeed, the substance of the Motion is nearly identical to the Adversary Complaint.

16.     During the Chambers Conference, the Court encouraged the parties to discuss whether an agreement could be reached to lift the automatic stay for the limited purpose of allowing the Landlord to prosecute claims against certain of the Debtors' insurers—AIG Europe Limited and Aon Risk Services Central, Inc. (the "**Insurers**")—the alternative relief requested in the Motion.  *See* Mot. ¶ 51-65.  Upon review of the settlement agreement entered into by the Debtors and the Insurers (the "**Settlement Agreement**"), the Debtors determined that the Settlement Agreement has an indemnity provision, pursuant to which the Debtors are obligated to indemnify the Insurers for any claims brought against the Insurers that relate to the claims settled pursuant to the Settlement Agreement.  The Debtors have already received notification from AIG Europe Limited that it will look to the Debtors to honor its obligations under the Settlement Agreement, specifically the indemnity provision, should the Landlord file suit against AIG Europe

5

Limited.  Consequently, the Debtors informed the Landlord that they could not agree to lift the automatic stay to allow the Landlord to prosecute claims against the Insurers because any such proceeding could require the Debtors to bear the Insurers' litigation expenses.

17.    In light of the above and the pending Adversary Proceeding, the Debtors requested that the Landlord withdraw or adjourn the Motion pending resolution of the Adversary Proceeding.  Alternatively, the Debtors requested an extension of the response deadline for the Motion to Friday, June 14, 2019, at 5 p.m.  The Landlord refused, stating that it will pursue the alternative arguments with respect to the Insurers at the hearing on June 20, 2019, despite the Debtors having informed the Landlord of the indemnity provision.  A copy of the Landlord's email response is attached hereto as **Exhibit A**.

18.    Due to the Landlord's refusal, the Debtors have been forced to waste the limited resources of the Debtors' estates and this Court and file this response, despite the fact that the Landlord has already commenced the Adversary Proceeding to address the issues raised in the Motion.  In an effort to limit the time and expense wasted in drafting this response, the Debtors' hereby incorporate by reference the *Objection to Motion for Entry of Order Compelling Debtor to Disclose Status of Insurance Claim and Deposit Any Insurance Proceeds into Separate Account (Santa Rosa Mall, Puerto Rico)* (ECF No. 2512), a copy of which is annexed hereto as **Exhibit B**, as well as the *Sonnax* arguments set forth in the *Third Omnibus Objection of Debtors to Motions for Relief From Stay* (ECF No. 3877) and the *Objection of Debtors to Motion of BRE 312 Owner LLC for Relief From Automatic Stay* (ECF No. 3917), copies of which are annexed hereto as **Exhibits C** and **D**, respectively, to the extent applicable.

19.    The Motion should be denied because the primary relief requested in the Motion is moot in light of the pending Adversary Proceeding and granting the alternative relief

WEIL:\97070677\3\73217.0004

requested with respect to the Insurers would harm the Debtors and the estates to the detriment of

all creditors in light of the indemnity provision in the Settlement Agreement.

## **Reservation of Rights**

20.     The Debtors hereby reserve the right to amend, modify, or supplement this

Objection.

## **Conclusion**

21.     For the foregoing reasons, the Motion should be denied.

Dated: June 13, 2019
       New York, New York

                                        /s/ Jacqueline Marcus
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Ray C. Schrock, P.C.
                                        Jacqueline Marcus
                                        Garrett A. Fail
                                        Sunny Singh

                                        *Attorneys for Debtors*
                                        *and Debtors in Possession*

WEIL:\97070677\3\73217.0004

## Exhibit A

**Landlord's Email Response**

| From: | Gustavo Chico |
|---|---|
| To: | Hwang, Angeline |
| Cc: | Sonia Colón; Mishkin, Jessie; Diktaban, Catherine; Lewitt, Alex; Marcus, Jacqueline |
| Subject: | RE: Sears Holdings Corporation | Bankr.S.D.N.Y. | 7:18-bk-23538 |
| Date: | Wednesday, June 12, 2019 6:23:36 PM |
| Attachments: | image008.png |
| | image002.png |

Dear Ms. Hwang:

In response to your email below, after having discussed it with our client, we will not withdraw the *Stay Relief Motion* (Docket No. 3475) or consent to adjourn the June 20th hearing.

For the upcoming hearing, we are willing to forego the arguments addressed in recently filed *Complaint* in Adversary Proceeding No. 19-08266.  We will not forego the remaining arguments related to the non-bankrupt insurance carriers/companies.

In addition, we are not in a position to consent to the extension of time to file a reply.  We need the time to promptly consider Sears' arguments in preparation for the upcoming hearing scheduled for June 20th.

Regards,

**Gustavo A. Chico-Barris**

| cid:image003.png@01D14A37.D16E52A0 | PO Box 195168 • San Juan, PR 00919-5168 |
|---|---|
| | 221 Ponce de León Avenue, Suite 500 |
| | San Juan, PR 00917 |
| | |
| | T. 787.766.7000 |
| | F. 787.766.7001 |
| | D. 787.773.1438 |
| | E. gchico@ferraiuoli.com |
| | W. www.ferraiuoli.com |

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  If you have received this communication by error, please notify us immediately by e-mail, and delete the original message.

🌿 *Before you print this E-mail, ask if it's really necessary. Our environment concerns us all...*

**From:** Hwang, Angeline <Angeline.Hwang@weil.com>
**Sent:** Wednesday, June 12, 2019 9:23 AM
**To:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; Gustavo Chico <Gchico@ferraiuoli.com>
**Cc:** Sonia Colón <scolon@ferraiuoli.com>; Mishkin, Jessie <jessie.mishkin@weil.com>; Diktaban, Catherine <Catherine.Diktaban@weil.com>; Lewitt, Alex <Alexander.Lewitt@weil.com>
**Subject:** RE: Sears Holdings Corporation | Bankr.S.D.N.Y. | 7:18-bk-23538

Gustavo, Sonia,

Following up on my email below.  Our response deadline for the June 20th hearing is tomorrow, so please confirm whether you'll agree to withdraw or adjourn the Stay Relief Motion.  Alternatively, please let us know if you are amenable to extending the response deadline to Friday, June 14th, at 5pm.

Thanks,



**Angeline Hwang**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Angeline.Hwang@weil.com
+1 212 310 8258 Direct
+1 212 310 8007 Fax

---

**From:** Hwang, Angeline
**Sent:** Tuesday, June 11, 2019 5:04 PM
**To:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; Gustavo Chico <Gchico@ferraiuoli.com>
**Cc:** Sonia Colón <scolon@ferraiuoli.com>; Mishkin, Jessie <jessie.mishkin@weil.com>; Diktaban, Catherine
<Catherine.Diktaban@weil.com>
**Subject:** RE: Sears Holdings Corporation | Bankr.S.D.N.Y. | 7:18-bk-23538

Gustavo,

In light of Jackie's email below and the pending adversary complaint you filed last Friday, will you agree to withdraw Santa Rosa's
automatic stay relief motion (ECF No. 3475) (the "**Stay Relief Motion**") or agree to adjourn the Stay Relief Motion pending
resolution of the adversary complaint?



**Angeline Hwang**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Angeline.Hwang@weil.com
+1 212 310 8258 Direct
+1 212 310 8007 Fax

---

**From:** Marcus, Jacqueline <jacqueline.marcus@weil.com>
**Sent:** Tuesday, June 11, 2019 2:42 PM
**To:** Gustavo Chico <Gchico@ferraiuoli.com>
**Cc:** Sonia Colón <scolon@ferraiuoli.com>; Hwang, Angeline <Angeline.Hwang@weil.com>; Mishkin, Jessie
<jessie.mishkin@weil.com>
**Subject:** RE: Sears Holdings Corporation | Bankr.S.D.N.Y. | 7:18-bk-23538

We have reviewed the settlement agreement with the insurers (the "**Insurers**") with respect to claims related to Hurricane Irma
and Hurricane Maria (the "**Settlement Agreement**").  The Settlement Agreement includes an indemnity provision obligating the
Debtors to indemnify the Insurers for suits brought against the Insurers relating to the claims settled under the Settlement
Agreement.  AIG has also notified the Debtors that they have been advised that your client intends to file suit against AIG in the
near future and will look to the Debtors to honor their indemnification obligations under the Settlement Agreement.  In light of
the above, the Debtors do not agree to consensually lifting the automatic stay to allow Santa Rosa to pursue the Insurers.



**Jacqueline Marcus**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Jacqueline.marcus@weil.com
+1 212 310 8130 Direct
+1 212 310 8007 Fax

---

**From:** Gustavo Chico <Gchico@ferraiuoli.com>

**<u>Exhibit B</u>**

**Debtors' Objection to Landlord's Motion to Compel
Status of Insurance Claim and Deposit of Insurance Proceeds**

Hearing Date and Time: February 14, 2019 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------x
                                                       :
In re                                                  :     Chapter 11
                                                       :
SEARS HOLDINGS CORPORATION, et al.,                    :     Case No. 18-23538 (RDD)
                                                       :
                 Debtors.¹                             :     (Jointly Administered)
                                                       :
------------------------------------------------------x
```

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**DEBTORS' OBJECTION TO MOTION FOR ENTRY OF
ORDER COMPELLING DEBTOR TO DISCLOSE STATUS OF
INSURANCE CLAIM AND DEPOSIT ANY INSURANCE PROCEEDS INTO
SEPARATE ACCOUNT (SANTA ROSA MALL, PUERTO RICO)**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation ("**SHC**"), Sears, Roebuck de Puerto Rico, Inc. ("**Sears Puerto Rico**" or "**Tenant**"), and certain of their affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection (the "**Objection**") in response to the *Motion for Entry of Order for the Debtor to: (I) Disclose Status of Insurance Claim; (II) Deposit Any Insurance Proceed Into Separate Account to be Used Exclusively to Repair the Insured Demised Premises; and (III) Alternatively, Find the Automatic Stay Inapplicable to the Insurance Proceeds*, dated December 14, 2018 (ECF No. 1240) (the "**Motion**"),[2] filed by Santa Rosa Mall, LLC (the "**Landlord**"). In support of the Objection, the Debtors respectfully represent as follows:

<u>Preliminary Statement</u>

1.      Sears Puerto Rico has been a tenant at the premises located in Bayamon, Puerto Rico since 1965, pursuant to that certain Sears Lease, dated September 22, 1965, a copy of which is attached to the Motion as Exhibit I (the "**Lease**"). Sears Puerto Rico operated Sears Store No. 1915 (the "**Sears Store**") from 1965 until the store closed in September 2017 due to severe damage caused by Hurricane Maria. In connection with the losses and damages inflicted on the Debtors' properties by Hurricane Irma and Hurricane Maria, including the Sears Store, SHC filed a claim (the "**Insurance Claim**") under its real and personal insurance policy (Policy Number

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

PTNAM1701557) (the "**Insurance Policy**") issued for the policy period of June 1, 2017 through June 1, 2018.[3]

2.      The Motion seeks entry of an order compelling the Debtors to (i) disclose the status of the Insurance Claim, (ii) place the insurance proceeds received on account of the Insurance Claim (the "**Insurance Proceeds**") in a separate account pursuant to Section 6.03(b)(3) of the Lease within seven (7) days, and (iii) declare that the Insurance Proceeds are not property of the Debtors' estate and must be exclusively used to rebuild the Sears Store. The Motion should be denied for several reasons.

3.      First, the Landlord served a subpoena on the Debtors on February 2, 2019 requesting information related to the status of the Insurance Claim.  In response to the subpoena, subject to an appropriate agreement on confidentiality, the Debtors intend to produce information in advance of the hearing on the Motion, including the Insurance Policy, that renders the request for the status of the Insurance Claim moot.

4.      Second, contrary to the assertions in the Motion, the Landlord is not named as a "loss payee" under the Insurance Policy.  While the Insurance Policy contemplates that "loss payees" or "additional insureds" might be added, that never occurred. The Insurance Policy is the governing document; a certificate of insurance is merely an indicia of insurance coverage and has no bearing on the insurance policy referred to therein.  Indeed, clearly set forth on the first page of the Aon Certificate of Insurance is a disclaimer that the document cannot extend or alter the coverage afforded by the Insurance Policy.  Given that the Landlord is not and never was a "loss payee" under the Insurance Policy, the Insurance Proceeds are rightfully property of the Debtors' estates and do not need to be deposited in a segregated account.

---

[3] The Debtors will furnish a copy of the Insurance Policy to the Court upon request.

WEIL:\96909251\4\73217.0004

5.     Third, the automatic stay imposed under section 362 of the Bankruptcy clearly applies to prohibit any attempt by the Landlord to possess or exercise control over the Insurance Proceeds. It is well established in this Circuit that proceeds of a debtor's insurance policy are property of the estate where the debtor has the right to receive those proceeds upon payment by the insurer. As described below, the "loss payable" clause contained in the Insurance Policy clearly provides that any loss will be payable to SHC or as directed by SHC. There is no reference to payment to a third party.

6.     Finally, on February 7, 2019, the Court approved the Debtors' sale of substantially all of their assets to ESL Investments, Inc. (together with its principals and affiliates, "**ESL**") for approximately $5.2 billion in the form of cash and non-cash consideration. Under the related asset purchase agreement (the "**Asset Purchase Agreement**"), the Lease is listed as a "Designatable Lease." ESL has not yet determined whether it will request that the Debtors assume and assign the Lease. If ESL designates the Lease, ESL will either cure defaults under the Lease on or prior to assumption or provide adequate assurance that it will promptly cure such defaults. Consequently, it is premature to make a determination as to whether the Insurance Proceeds have to be segregated and exclusively used to reconstruct the store at this time. Given the relatively short period of time afforded to ESL to exercise its designation rights, and the Debtors' continued payment of rent under the Lease, the Landlord is not prejudiced by a deferred ruling.[4]

7.     The balance of the equities favor the Debtors and, for the reasons set forth herein, the Debtors respectfully request that the Motion be denied.

---

[4] The Debtors requested the Landlord adjourn the Motion in recognition of the current facts and circumstances of these cases. The Landlord refused to do so.

4

## **Background**

### *The Debtors' Chapter 11 Cases*

8.      Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in these chapter 11 cases.

10.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

11.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

### *The Lease*

12.      The Lease contains certain provisions that address the rights and obligations of Sears Puerto Rico and the Landlord in the event of loss or damage to the Leased Premises.

5

13.    The provisions of the Lease relevant to insurance coverage are excerpted

below:

Section 6.01:

Tenant shall maintain at Tenant's sole cost and expense, for the benefit of Landlord and Tenant, insurance with respect to the Demised Premises, of the following types and in the following amounts:

(a)    Fire and extended coverage insurance (losses due to windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles smoke), vandalism, malicious mischief, sprinkler leakage and earthquake insurance and insurance against such other events as shall from time to time be added to the extended coverage insurance carried by Tenant's Parent Corporation [Sears Holdings Corporation] in an amount not less than 100% of the replacement cost (excluding excavation and foundation values) as the same is determined at five (5) year intervals by an architect or engineer designated by Tenant and satisfactory to Landlord.

Section 6.02:

Tenant shall have the option of effecting such insurance through an insurance company of recognized standing satisfactory to the Landlord and the holder of any mortgage on the fee of the Demised Premises or through Tenant's Parent Corporation (Sears, Roebuck and Company, a New York corporation) which would act as a self-insurer.

(a) If Tenant elects to effect such insurance through an insurance company, such policies shall be secured promptly and certificates thereof shall be furnished to Landlord. . . . Such policies shall contain loss payable clauses to Landlord and Tenant as hereinbelow provided in Section 6.03.

Section 6.03:

In the event that during the term of this lease the building or buildings referred to in Section 3.02 hereof or any additions thereto at any time erected on the Demised Premises shall be damaged by fire or other insured casualty, then:
       . . .

(b)    In case such damage shall amount to over $100,000:
       . . .

       (2) If such damage shall be so serious as to render the said building untenable, or shall amount to a total destruction of the building, then Tenant

6

shall proceed with all reasonable expedition to restore or rebuild, as the case may be, the building so destroyed or rendered untenantable, free from liens of every kind, in substantial accordance with the plans and specifications of the building so destroyed or rendered untenantable . . .

(3) The net sums recover *[sic]* Tenant on account of loss or damage, whether under the policies taken out as aforesaid, or under other insurance policies taken out by Tenant and indemnifying (as distinguished from the loss of use and occupancy or profits), shall be deposited in a special account separate *[sic]* all other funds of Landlord in a bank or trust company of the City of San Juan, Puerto Rico approved by Landlord and Tenant, to be applied on account of the cost of such restoration or rebuilding, as the case may be . . . and Tenant shall pay any and all additional moneys required in such restoration or rebuilding in excess of said net sums recovered, and shall be entitled to receive any surplus, if any, remaining of said deposit after such restoration or rebuilding has been completed as aforesaid . . .

14.    Article 16 of the Lease (Equipment and Fixtures Installed) provides that any equipment and fixtures used by Sears Puerto Rico in connection with its business will remain at all times Sears Puerto Rico's property.

15.    The Debtors have continued to pay monthly rent to the Landlord pursuant to the terms of the Lease, despite closure of the Sears Store in September 2017.

*The Insurance Policies and the Insurance Claim*

16.    The Insurance Policy does not name the Landlord or any of its affiliates, including, without limitation, 3 Pals Caribe, LLC and Commercial Centers Management, LLC, as a "loss payee". Paragraph 39 provides that (emphasis added):

It is agreed that Aon Risk Services, Inc. are authorized to issue Certificate(s) or Evidence(s) of Insurance being the Acord Certificate of Property Insurance 24 (1/95), naming Additional Named Insured(s), Loss Payee(s) or Mortgagee(s), and others for their respective rights and interests, *subject always to the terms, conditions and limits of endorsements in respect of such additional interests*. . . .

The foregoing expressly notes that any certificate of insurance issued by Aon is subject to the limits of endorsements and, as reflected in the Insurance Policy, there is no endorsement that lists the Landlord as a "loss payee".

7

17.    Further, paragraph 53 of the Insurance Policy states, as follows:

**Loss Payable**

Loss, if any, shall be adjusted with and payable to Sears Holdings Corporation or as directed by it.

Insurance Policy, ¶ 53. It is uncontroverted that the Debtors did not direct its insurer to make payment to a third party.

18.    On September 8, 2017 and September 28, 2017, in connection with Hurricane Irma and Hurricane Maria, respectively, SHC submitted claims under the Insurance Policy for at least 32 of its stores located in areas affected by such hurricanes. The Insurance Claim was comprised of amounts attributable to reconstructing the numerous buildings and amounts allocated for furniture, fixtures, and equipment.  After extensive negotiations with the Debtors' insurers, the parties reached an agreement whereby the Debtors' insurers agreed to pay SHC a fixed amount, in full and final satisfaction of the Insurance Claim.  The Debtors received certain portions of the settlement payment prior to the Commencement Date and, on January 17, 2019, in full and final resolution of the Insurance Claim, the Debtors agreed to settle their claim for a final installment payment.[5]  All payments made or to be made to SHC under the Insurance Policy were or will be made in accordance with Section 53 of the Insurance Policy.

19.    By letter dated October 30, 2017, the Landlord contacted the Debtors' insurance carrier, AIG Insurance Company Puerto Rico ("**AIG Puerto Rico**"), and represented that it was an "Additional Insured" under the Insurance Policies and, thus, it was to be informed as to the filing of any claim under such policies and any proceeds were to be deposited in accordance with Section 6.03 of the Lease.  A copy of the correspondence is attached hereto as

---

[5] Certain of the Debtors' insurers have not yet executed the Settlement Agreement and remitted their pro rata shares of the Insurance Proceeds.

8

Exhibit A. Upon information and belief the Landlord did not receive a response from AIG Puerto Rico.

20.    On June 1, 2018 and June 6, 2018, Sears Puerto Rico sent letters to the Landlord detailing its position with respect to the Landlord's claim that the Insurance Proceeds must be placed in a special segregated account solely to be used to rebuild the Sears Store. A copy of the letters are attached hereto as Exhibit B. The June 6, 2018 letter included a tentative construction schedule that reflected an anticipated completion date of the end of 2018 (the "**Construction Schedule**"). The letter also stated that if Sears Puerto Rico did not hear from the Landlord within five days (i.e., by June 11, 2018), Sears Puerto Rico would consider any default alluded to in the letter sent by an affiliate of the Landlord, CCM Puerto Rico, dated June 4, 2018, cured and rescinded. A copy of the Landlord's June 4, 2018 letter is attached hereto as Exhibit C. The Landlord did not issue a response or refute the positions articulated by Sears Puerto Rico until the filing of the Motion six months later.

21.    By letter dated January 23, 2019, the Landlord contacted AIG Europe Limited requesting information regarding the status of the Hurricane Maria Claim. The Landlord represented to the carrier that it is a "loss payee" under the Insurance Policies. A copy of the correspondence is attached hereto as Exhibit D. Upon information and belief, the Landlord did not receive a response to the letter.

### The Motion Should be Denied

22.    As noted above, the Debtors have or will comply with the Landlord's request for the status of the Insurance Claim and, as a result, the Court need not order such relief

WEIL:\96909251\4\73217.0004

in connection with the Motion. The remaining relief requested in the Motion should be denied for the reasons set forth more fully below.

## A.      The Landlord Is Not A "Loss Payee"

23.     Regardless of the language of the Lease or any ancillary document, the Insurance Policy is void of any reference of the Landlord as a "loss payee" and only an insurance policy can grant a party such rights.   Even if the Debtors were to concede that the Lease requires the Landlord to be named as a "loss payee", and they do not, the failure to comply with the terms of the Lease does not, in turn, provide the Landlord with rights, title and interest to the Insurance Proceeds.

24.     Notwithstanding any inconsistencies that may exist in the Lease or the certificate of insurance issued by Aon Risk Services, Inc. ("**Aon**"), dated October 25, 2017 (the "**2017 Certificate of Insurance**"), the 2017 Certificate of Insurance is not determinative of the extent of coverage under the Insurance Policy.   The 2017 Certificate of Insurance is a summary document and it expressly has the following warning on the first page:

> **THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.   THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.   THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.**

2017 Certificate of Insurance at 1 (emphasis in original).   The Debtors are not liable for the errors or omissions of Aon in issuing the 2017 Certificate of Insurance.

25.     Tellingly, the Motion does not allege that the Landlord has asserted any claims against the Debtors' insurers for failure to turn over the Insurance Proceeds to the Landlord, due to its purported capacity as a "loss payee."   Both letters sent by the Landlord to the Debtors'

WEIL:\96909251\4\73217.0004

insurers seeking information in connection with the Insurance Claim specifically note that the

Landlord is not making a demand for payment. If the Landlord truly believed that it had a

cognizable right to the Insurance Proceeds as a "loss payee," then surely it would have made a

payment demand to, or asserted claims against, the Debtors' insurers.

**B.    The Insurance Proceeds Are Property of the Debtors' Estates**

26.    The filing of a bankruptcy petition creates a bankruptcy estate. Section 541

of the Bankruptcy Code governs what constitutes property of a debtor's estate and it includes a

broad range of tangible and intangible assets. 11 U.S.C. § 541(a) (creating the bankruptcy estate

with all of the debtor's legal and equitable interest in property as of the date the bankruptcy petition

is filed).

27.    It has been consistently recognized in this District that a debtor's liability

policies are property of the debtor's estate. *See, e.g.*, *MacArthur Co. v. Johns-Manville Corp.*, 837

F.2d 89 (2d Cir. 1988), cert. denied, 488 U.S. 868 (1988) (stating that "an insurance policy and

any rights thereunder owned by a debtor upon filing a petition for relief in bankruptcy are property

of the bankrupt estate."). In the Motion, the Landlord concedes as much. *See* Motion, ¶ 28.

28.    Further, insurance proceeds that are paid directly to a debtor pursuant to the

terms of the insurance contract are generally held to be property of the estate. *See In re Bradt*, 757

F.2d 512 (2d Cir. 1985) (holding that, notwithstanding a security agreement providing a credit

union with security interest stemming from a vehicle, including insurance proceeds, pursuant to

section 541(a)(6) of the Bankruptcy Code the proceeds from the applicable insurance policy were

property of the debtor's estate); *Kirschenbaum v. Federal Ins. Co. (In re EMS Fin. Servs., LLC)*,

2013 Bankr. LEXIS 139, at 18 (Bankr. E.D.N.Y. Jan. 4, 2013) (stating "[w]hen an insurance policy

provides coverage only to the debtor, courts will generally rule that the proceeds are property of

11

the estate.") (internal citations omitted); *In re Island Helicopter Corp.*, 63 B.R. 515, 522 (Bankr. E.D.N.Y. 1986) (same).

29.     The Motion is entirely based on the Landlord's erroneous claim that it is a "loss payee" under the Insurance Policy. Indeed, the Landlord only cites to cases where a party is either a named "additional insured" or a "loss payee", in support of its claim.[6] As clearly established by the Insurance Policy, the Landlord is neither in this case. On its face, the Insurance Policy only provides for the payment of proceeds to SHC or a party identified by SHC. Consistent with established precedent, the Debtors request that the Court find that the Insurance Proceeds are property of their estates.

## C.     The Automatic Stay Applies To the Insurance Proceeds

30.     The Motion makes passing reference to the automatic stay imposed under section 362 of the Bankruptcy Code and, in conclusory fashion, states that the automatic stay is inapplicable to the Insurance Proceeds because such amounts are not property of the Debtors' estates. However, as established above, the Insurance Proceeds are property of the Debtors' estates. Accordingly, the protections of the automatic stay apply.

31.     Section 362(a) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition:

> . . . operates as a stay, applicable to all entities, of

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

---

[6] *See, In re Amiel Restaurant Partners, LLC*, 510 B.R. 744 (Bankr. D. N.J. 2014) (naming third party under commercial property insurance policy as loss payee); *In re Florian*, 233 B.R. 25 (D. Conn. 1999) (naming plaintiff as an "Additional Insured and Loss Payee").

11 U.S.C. § 362(a)(3) and (a)(6). The Landlord is clearly attempting to engage in actions expressly prohibited by the Bankruptcy Code. Despite the applicability of the automatic stay, the Motion fails to request modification of the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code. Moreover, even if the Landlord were to amend the Motion to seek such relief, any request for such relief in this case should be denied.

32.     The Second Circuit established a set of twelve factors in *Sonnax* (the "**Sonnax Factors**") that have become the standard by which courts in the Second Circuit consider whether to modify the automatic stay.[7] *See In re Lehman Bros. Holdings Inc.*, 435 B.R. 122, 138 (S.D.N.Y. 2010) ("*Sonnax* . . . is routinely referenced as the leading relief from stay precedent in this Circuit."), *aff'd sub nom. Suncal Cmtys. I LLC v. Lehman Commercial Paper, Inc.,* 402 F. App'x 634 (2d Cir. 2010).

33.     Although the *Sonnax* Court outlined twelve factors, courts need not consider each factor, but may consider only the factors that are relevant to the particular case. *See In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996) ("A court should . . . use only the factors that are deemed relevant . . . ."). In fact,

---

[7] The *Sonnax* Factors are:
　　(1) whether relief would result in a partial or complete resolution of the issues;
　　(2) lack of any connection with or interference with the bankruptcy case;
　　(3) whether the other proceeding involves the debtor as a fiduciary;
　　(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
　　(5) whether the debtor's insurer has assumed full responsibility for defending it;
　　(6) whether the action primarily involves third parties;
　　(7) whether litigation in another forum would prejudice the interests of other creditors;
　　(8) whether the judgment claim arising from the other action is subject to equitable subordination;
　　(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
　　(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
　　(11) whether the parties are ready for trial in the other proceeding; and
　　(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

13

the *Sonnax* Court itself considered only four of the twelve factors as relevant in that case. *Sonnax*, 907 F.2d at 1286. Additionally, courts need not assign equal weight to each factor, and have discretion in weighing the factors against one another. *RCM Global*, 200 B.R. at 526 ("A court should apply these factors on a case-by-case basis . . . assigning to each factor whatever weight the court feels is appropriate.").

34. The Second Circuit has held that the party seeking to lift or modify the automatic stay bears the initial burden to show cause as to why the stay should be modified or lifted and "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285. Once the movant has shown cause, the party opposing the motion must show that it is entitled to the continuing protections of the automatic stay. *See In re Enron*, 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004) (citing *In re M.J. & K. Co.*, 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993)); *see also RCM Global*, 200 B.R. at 526.

35. Without going through an exhaustive analysis of each *Sonnax* factor, it is evident that the following facts, among others, militate in favor of denying relief from the automatic stay:

- The Lease is among the "Designatable Leases" set forth in the Asset Purchase Agreement in connection with the Court–approved sale. If ESL requests that the Debtors assume and assign the Lease, the Motion may become moot because any defaults under the Lease would have to be cured.

- Any determination as to whether the Landlord has a direct entitlement to the Insurance Proceeds is within the core jurisdiction of this Court. 28 U.S.C. § 157(b)(2)((B)("allowance or disallowance of claims against the estate or *exemptions from property of the* estate")(emphasis supplied).

36. Given the Landlord's utter failure to satisfy its burden to establish cause for modification of the automatic stay, any request for relief from the stay should be denied.

14

## CONCLUSION

For the foregoing reasons, the Motion should be denied.


Dated: February 8, 2019
      New York, New York

                            /s/ Jacqueline Marcus
                            WEIL, GOTSHAL & MANGES LLP
                            767 Fifth Avenue
                            New York, New York 10153
                            Telephone: (212) 310-8000
                            Facsimile: (212) 310-8007
                            Ray C. Schrock, P.C.
                            Jacqueline Marcus
                            Garrett A. Fail
                            Sunny Singh
                            Jessica Liou

                            *Attorneys for Debtors*
                            *and Debtors in Possession*

18-23538-shl    Doc 2312    Filed 02/03/19    Entered 02/03/19 16:04:24    Main Document
Pg 1 of 99

## Exhibit A

Landlord Letter to AIG
Insurance Company Puerto Rico



**CCM PUERTO RICO**
*A CCM Group Company*
PO Box 362983, San Juan, PR 00936-2983
Tel. 787-622-9600 Fax 787-277-9601

**Exhibit I**

October 30, 2017

**Via email** <u>rolando.ortega@aig.com</u>

AIG Insurance Company Puerto Rico
Atn. Mr. Rolando Ortega
250 Muñoz Rivera, suite 500
San Juan, PR 00918

      **Re: Insurance policy number PTNAM1701557 for the Sears store located at Santa Rosa Mall, Bayamón, Puerto Rico**

Dear Mr. Ortega:

      The above referenced property insurance policy covers the Sears store located at Santa Rosa Mall, and both Santa Rosa Mall, LLC and Commercial Centers Management Realty, S en C ("CCM") are Additional Insureds under the policy. For ease of reference, I enclose a copy of the Certificate of Property Insurance.

      Please be advised that under Section 6.03 of the Lease Agreement, all net sums recovered for loss or damage under any applicable insurance policy must be deposited in a special account in the name of Landlord to be applied to the cost of rebuilding the premises. Under the existing Lease Agreement, Sears Holding Management Corporation ("Sears") is required to promptly and expeditiously repair the damage caused and/or rebuild the premises. Sears is aware and has agreed to fully comply with the provisions of the Lease herein discussed.

      CCM formally requests to be informed as to the filing of any claim under the policy as well as the processing of the same, and that any insurance proceeds be deposited as required by the Lease Agreement.

      Please contact the undersigned at <u>balvarez@ccmpr.com</u> to further discuss this matter and coordinate necessary arrangements regarding the foregoing.

Cordially,

*Betsy Alvarez*

Betsy Alvarez
Senior VP of Operations and Finance

c: claims.pr@aig.com

# CERTIFICATE OF PROPERTY INSURANCE

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**PRODUCER**
Aon Risk Services Central, Inc.
Chicago IL Office
200 East Randolph
Chicago IL 60601 USA

CONTACT NAME:
PHONE (A/C. No. Ext): (866) 283-7122
FAX (A/C. No): (800) 363-0105
E-MAIL ADDRESS:
PRODUCER CUSTOMER ID #: 570000034159

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: AIG Europe Limited | AA112084 |
| INSURER B: | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |
| INSURER F: | |

**INSURED**
Sears Holdings Corporation
dba Sears, Roebuck and Co.
Attn: Risk Management E3-219A
3333 Beverly Road
Hoffman Estates IL 60179 USA

**COVERAGES** CERTIFICATE NUMBER: 570069032839 REVISION NUMBER:

LOCATION OF PREMISES/ DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

RE: Sears Store No. 1915 - Santa Rosa Mall, Bayamon, PR.

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | | POLICY NUMBER | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|---|---|
| A | X PROPERTY | | | PTNA41701557 | 06/01/2017 | 06/01/2018 | BUILDING | |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | | PERSONAL PROPERTY | |
| | BASIC | BUILDING | | | | | BUSINESS INCOME | |
| | BROAD | CONTENTS | | | | | X EXTRA EXPENSE | $50,000,000 |
| | SPECIAL | | | | | | RENTAL VALUE | |
| | X EARTHQUAKE | | | | | | BLANKET BUILDING | |
| | X WIND | | | | | | BLANKET PERS PROP | |
| | X FLOOD | | | | | | X BLANKET BLDG & PP | $50,000,000 |
| | X ALL RISK-Subject to Exclusions | | | | | | X Earthquake - Aggreg | $50,000,000 |
| | Bld B&PP Ded | | | | | | X Flood - Aggregate | $50,000,000 |
| | INLAND MARINE | TYPE OF POLICY | | | | | | |
| | CAUSES OF LOSS | | | | | | | |
| | NAMED PERILS | POLICY NUMBER | | | | | | |
| | CRIME | | | | | | | |
| | TYPE OF POLICY | | | | | | | |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | |

SPECIAL CONDITIONS / OTHER COVERAGES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Coverage subject to the lease requirements, if any. Replacement Cost Valuation; No Coinsurance; Waiver of Subrogation included; Mold Coverage Excluded; All real and personal property owned, acquired by, used by, intended for use by the insured, including real and personal property of others in the insured's care, custody or control; extra expense, contingent extra expense, rents,

**CERTIFICATE HOLDER**
CCM Puerto Rico, A CCM Group Company
Santa Rosa Mall, LLC; 3 Pals Caribe, LLC
Commercial Centers Management Realty
S. en C.
Carr. #2, Km. 7.1
Bayamón PR 00960 USA

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE
*Aon Risk Services Central Inc.*

© 1995-2015 ACORD CORPORATION. All rights reserved.

ACORD 24 (2016/03) The ACORD name and logo are registered marks of ACORD

# ADDITIONAL REMARKS SCHEDULE

**ACORD®**

AGENCY CUSTOMER ID: 570000034159

LOC #:

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Sears Holdings Corporation |

| POLICY NUMBER | |
|---|---|
| See Certificate Number:  570069032839 | |

| CARRIER | NAIC CODE | |
|---|---|---|
| See Certificate Number:  570069032839 | | EFFECTIVE DATE: |

## ADDITIONAL REMARKS

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER:  ACORD 24    FORM TITLE:  Certificate of Property Insurance

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER | |
| INSURER | |
| INSURER | |
| INSURER | |

**ADDITIONAL POLICIES**  If a policy below does not include limit information, refer to the corresponding policy on the ACORD certificate form for policy limits.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|
| | PROPERTY | | | | | |
| A | | PTNAM1701557 | 06/01/2017 | 06/01/2018 | Boiler & Machinery | Included |

ACORD 101 (2008/01)

The ACORD name and logo are registered marks of ACORD

© 2008 ACORD CORPORATION. All rights reserved.

AGENCY CUSTOM#    :    570000034159

LOC #:

# ACORD®
# ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | | NAMED INSURED |
|---|---|---|
| Aon Risk Services Central, Inc. | | Sears Holdings Corporation |

| POLICY NUMBER | |
|---|---|
| See Certificate Number: | 570069032839 |

| CARRIER | | NAIC CODE | EFFECTIVE DATE: |
|---|---|---|---|
| See Certificate Number: | 570069032839 | | |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER:  ACORD 24    FORM TITLE:  Certificate of Property Insurance

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY

SPECIAL CONDITIONS / OTHER COVERAGES

rental income, leasehold interests, valuable papers, and records, accounts receivable and other coverage's
further described in the policy form.  Santa Rosa Mall, LLC, 3 Pals Caribe, LLC and Commercial Centers
Management, LLC are included as Loss Payee in accordance with the policy provisions of the Property policy
with respect to the property located at the above referenced Location.

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: 570000034159
LOC #:

**ACORD®**

## ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | | NAMED INSURED |
|---|---|---|
| Aon Risk Services Central, Inc. | | Sears Holdings Corporation |
| **POLICY NUMBER** | | |
| See Certificate Number: 570069032839 | | |
| **CARRIER** | **NAIC CODE** | **EFFECTIVE DATE:** |
| See Certificate Number: 570069032839 | | |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,
FORM NUMBER: ACORD 24    FORM TITLE: Certificate of Property Insurance

Property Program 6/1/17 - 6/1/18

$50,000,000 All Risk Policy Numbers:

Primary Property
ACE American Insurance Company - GPAD3739824A010 - 12% of $50M
Zurich American Insurance Company - XPP926068010 - 10% of $50M
Lloyds of London - Syndi 3000 MKL (Slip Leader) - PTNAM1701122 - 3% of $50M
*Novae Bermuda Underwriting Ltd - XRO4017ADFRT - 3%of $50M
*Allied World Assurance Company, Ltd. - PO03839014 - 18.33% of $50M
Lloyds of London - Synd 318 MSP (Slip Leader) - PTNAM1701562 - 7.5% of $50M
Aspen Specialty Insurance Company - PXAAS2817 - 1.67% of $50M
Westport Insurance Corporation - NAPO45210505 - 8% of $50M
HDI Global Insurance Company - XPD1488600 - 2.5% of $50M

Starr Companies - 5% of $50M
Starr Surplus Lines Insurance Company - SLSTPTY10966117
Chubb Custom Insurance Company - 4468121406
General Security Indemnity Company of Arizona (GSINDA) - TO234451703681
Executive Risk Specialty Insurance Company - 4468121506

Excess Property
Endurance Worldwide Insurance Ltd. (Slip Leader) - PTNAM1701564 - 2% of $50M
Lloyds of London - Synd 1414 ASC (Slip Leader) - PTNAM1701559 - 8% of $50M
Tokio Marine America Insurance Company - LCP648016706 - 4% of $50M
Liberty Mutual Fire Insurance Company - M32L9L426774037 - 4% of $50M
Ironshore Specialty Insurance Company - 000423108 - 2.5% of $50M
AIG Europe Ltd. - PTNAM1701557 - 8.5% of $50M

As indicated by ( * ), Aon Risk Solutions (U.S) is authorized to generate and distribute certificates in an
administrative capacity as evidence of insurance where required by clients of the Insured."

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

**EXHIBIT II**

ACORD®

# CERTIFICATE OF PROPERTY INSURANCE

DATE (MM/DD/YYYY)
10/25/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Aon Risk Services Central, Inc.<br>Chicago IL Office<br>200 East Randolph<br>Chicago IL 60601 USA | PHONE (A/C, No, Ext): (866) 283-7122 | | FAX (A/C, No): (800) 363-0105 |
| | E-MAIL ADDRESS: | | |
| | PRODUCER CUSTOMER ID #: 570000034159 | | |

Holder Identifier : 1915

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A: AIG Europe Limited | AA112084 |
| Sears Holdings Corporation | INSURER B: | |
| dba Sears, Roebuck and Co.<br>Attn: Risk Management E3-219A<br>3333 Beverly Road<br>Hoffman Estates IL 60179 USA | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |
| | INSURER F: | |

| COVERAGES | CERTIFICATE NUMBER: 570069032839 | REVISION NUMBER: |
|---|---|---|

LOCATION OF PREMISES/ DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

RE: Sears Store No. 1915 - Santa Rosa Mall, Bayamon, PR.

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|---|
| A | X PROPERTY | | PTNAW1701557 | 06/01/2017 | 06/01/2018 | BUILDING | |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | PERSONAL PROPERTY | |
| | BASIC | BUILDING | | | | BUSINESS INCOME | |
| | BROAD | | | | | X EXTRA EXPENSE | $50,000,000 |
| | SPECIAL | CONTENTS | | | | RENTAL VALUE | |
| | X EARTHQUAKE | | | | | BLANKET BUILDING | |
| | X WIND | | | | | BLANKET PERS PROP | |
| | X FLOOD | | | | | X BLANKET BLDG & PP | $50,000,000 |
| | X ALL RISK-Subject to Exclusions | | | | | X Earthquake - Aggrega | $50,000,000 |
| | Bld B&PP Ded | | | | | X Flood - Aggregate | $50,000,000 |
| | INLAND MARINE | | TYPE OF POLICY | | | | |
| | CAUSES OF LOSS | | | | | | |
| | NAMED PERILS | | POLICY NUMBER | | | | |
| | CRIME | | | | | | |
| | TYPE OF POLICY | | | | | | |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | |

SPECIAL CONDITIONS / OTHER COVERAGES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Coverage subject to the lease requirements, if any. Replacement Cost Valuation; No Coinsurance; Waiver of Subrogation included; Mold Coverage Excluded; All real and personal property owned, acquired by, used by, intended for use by the insured, including real and personal property of others in the insured's care, custody or control; extra expense, contingent extra expense, rents,

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| CCM Puerto Rico, A CCM Group Company<br>Santa Rosa Mall, LLC, 3 Pals Caribe, LLC<br>Commercial Centers Management Realty<br>S. en C.<br>Carr. #2, Km. 7.1<br>Bayamón PR 00960 USA | AUTHORIZED REPRESENTATIVE<br>*Aon Risk Services Central Inc.* |

CERTIFICATE NUMBER: 570069032839

© 1995-2015 ACORD CORPORATION. All rights reserved.

ACORD 24 (2016/03)          The ACORD name and logo are registered marks of ACORD

# ACORD®

## ADDITIONAL REMARKS SCHEDULE

Page __ of __

| AGENCY | | NAMED INSURED |
|---|---|---|
| Aon Risk Services Central, Inc. | | Sears Holdings Corporation |
| POLICY NUMBER | | |
| See Certificate Number: 570069032839 | | |
| CARRIER | NAIC CODE | |
| See Certificate Number: 570069032839 | | EFFECTIVE DATE: |

### ADDITIONAL REMARKS

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,
FORM NUMBER: ACORD 24    FORM TITLE: Certificate of Property Insurance

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER | |
| INSURER | |
| INSURER | |
| INSURER | |

**ADDITIONAL POLICIES**   If a policy below does not include limit information, refer to the corresponding policy on the ACORD certificate form for policy limits.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|
| | PROPERTY | | | | | |
| A | | PTNAN1701557 | 06/01/2017 | 06/01/2018 | Boiler & Machinery | Included |

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMI : 570000034159

LOC #:

*ACORD®*

## ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Sears Holdings Corporation |

**POLICY NUMBER**
See Certificate Number:   570069032839

| CARRIER | NAIC CODE | |
|---|---|---|
| See Certificate Number:   570069032839 | | **EFFECTIVE DATE:** |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER:  ACORD 24    FORM TITLE:  Certificate of Property Insurance

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY

SPECIAL CONDITIONS / OTHER COVERAGES

rental income, leasehold interests, valuable papers, and records, accounts receivable and other coverage's
further described in the policy form.  Santa Rosa Mall, LLC, 3 Pals Caribe, LLC and Commercial Centers
Management, LLC are included as Loss Payee in accordance with the policy provisions of the Property policy
with respect to the property located at the above referenced Location.

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: 570000034159

LOC #:

ACORD®

## ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | | NAMED INSURED |
|--------|--|---------------|
| Aon Risk Services Central, Inc. | | Sears Holdings Corporation |
| **POLICY NUMBER** | | |
| See Certificate Number:  570069032839 | | |
| **CARRIER** | **NAIC CODE** | **EFFECTIVE DATE:** |
| See Certificate Number:  570069032839 | | |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: ACORD 24    FORM TITLE:  Certificate of Property Insurance

Property Program 6/1/17 - 6/1/18

$50,000,000 All Risk Policy Numbers:

Primary Property
ACE American Insurance Company - GPAD3739824A010 - 12% of $50M
Zurich American Insurance Company - XPP926068010 - 10% of $50M
Lloyds of London - Syndi 3000 MKL (Slip Leader) - PTNAM1701122 - 3% of $50M
*Novae Bermuda Underwriting Ltd - XR04017ADFRT - 3%of $50M
*Allied World Assurance Company, Ltd. - P003839014 - 18.33% of $50M
Lloyds of London - Synd 318 MSP (Slip Leader) - PTNAM1701562 - 7.5% of $50M
Aspen Specialty Insurance Company - PXAA52817 - 1.67% of $50M
Westport Insurance Corporation - NAP045210505 - 8% of $50M
HDI Global Insurance Company - XPD1488600 - 2.5% of $50M

Starr Companies - 5% of $50M
Starr Surplus Lines Insurance Company - SLSTPTY10966117
Chubb Custom Insurance Company - 4468121406
General Security Indemnity Company of Arizona (GSINDA) - TO234451703681
Executive Risk Specialty Insurance Company - 4468121506

Excess Property
Endurance Worldwide Insurance Ltd. (Slip Leader) - PTNAM1701564 - 2% of $50M
Lloyds of London - Synd 1414 ASC (Slip Leader) - PTNAM1701559 - 8% of $50M
Tokio Marine America Insurance Company - LCP648016706 - 4% of $50M
Liberty Mutual Fire Insurance Company - MJZL9L426774037 - 4% of $50M
Ironshore Specialty Insurance Company - 000423108 - 2.5% of $50M
AIG Europe Ltd. - PTNAM1701557 - 8.5% of $50M

As indicated by ( * ), Aon Risk Solutions (U.S) is authorized to generate and distribute certificates in an
administrative capacity as evidence of insurance where required by clients of the Insured."

18-23538-shl    Doc 2311    Filed 02/03/19    Entered 02/03/19 16:04:24    Main Document
Pg 20 of 49

### Exhibit B

Sears Puerto Rico June 1, 2018 and June 6, 2018 Letters

# SEARS HOLDINGS CORPORATION

June 1, 2018

**CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
# 7016 2070 0000 0797 8831

Commercial Centers Management
PO Box 362983
San Juan, PR 00936

Via Email: balvarez@ccmpr.com

Re:     Sears 1915
        Location: Bayamon, PR
        Date of Loss: 9/21/2017
        Type of Loss: Hurricane Maria / Wind

Dear Ms. Alvarez,

This letter is a follow up to our earlier letter dated October 26, 2017 (copy attached).

We previously received notification on October 23, 2017 of the Landlord's inquiry for insurance proceeds to be placed into a special account for Sears 1915 Bayamon, PR in the name of the Landlord. Per Section 6.04 of the Lease, the Tenant is required to restore or rebuild the building due to damage or destruction. Upon review we see no requirement for the Tenant's Parent Corporation (Sears Holdings Corporation) to set up a special account in the Landlord's name with insurance proceeds if the Parent Corporation is the building insurer. Sears Holdings Corporation is the Parent Corporation of the Tenant, Sears, Roebuck De Puerto Rico, Inc., and insures the building. As such, Sears Holdings will continue to repair the building but no special account will be set up to fund these repairs.

Per the Lease Agreement entered September 6th, 1965, Section 6.04,

> If the Tenant's Parents Corporation is the insurer of the buildings on the Demised Premises against loss from fire or other casualty, then upon the damage or destruction of such buildings, Tenant shall promptly proceed to repair the damage or to restore or rebuild, in accordance with Section 6.03, Subsection (a) and Subsection (b), paragraphs (1) and (2) hereof, and Tenant shall promptly furnish to Landlord the written undertaking of its Parent Corporation to provide all monies which shall be required to complete the repair or reconstruction work.

Section 6.04 makes no reference or requirement to Subsection (3) of Section 6.03 requiring a special account to fund repairs.

This letter will serve as written confirmation that Parent Corporation, Sears Holdings Corporation, will provide all monies required to restore and rebuild the Sears store building as required by Section 6.04 of the Lease. Should the Landlord care to discuss these requirements please feel free to call.

As stated in our prior letter, Sears is currently in the process of completing permanent building repairs to Sears 1915 Bayamon, PR. Attached is the latest status of those repairs. For any questions involving the date of completion and other specifics please contact the Sears Project Manager, Barry Brunson. His cell phone # is (817) 689-3108.

Please contact me should you have any questions.

Sincerely,

Michael Lodi
Manager, Property Claims
Sears Holdings Corporation
3333 Beverly Road E3-237B; Hoffman Estates, IL 60179
Office: 847-286-2603 Email:Michael.Lodi@searshc.com

# SEARS HOLDINGS CORPORATION

October 26, 2017

**CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
# 7016 2070 0000 0797 8220

Commercial Centers Management
PO Box 362983
San Juan, PR 00936

Via Email: balvarez@ccmpr.com


Re:     Sears 1915
        Location: Bayamon, PR
        Date of Loss: 9/21/2017
        Type of Loss: Hurricane Maria / Wind


Dear Ms. Alvarez,

This letter is in response to your letter dated October 23, 2017 (copy enclosed).

As you are aware, the Sears building sustained extensive damage from Hurricane Maria. Northstar Recovery Services was contacted for emergency cleanup and dry-out to mitigate building damages and protect the building from further damage. Sears is currently in the process of obtaining permanent building repair proposals. Sears intends to repair the building on an expedited basis as material and labor are available. Nevertheless, it may take months for repairs to be completed and the store to open.

We agree the Lease Agreement dated September 6th, 1965, requires the Tenant to repair the building for damage or destruction by fire or other insured casualty. Sears has an insurance claim for this loss but it will take some time for insurance proceeds to be received to this loss. Please let us know what account the Landlord would like the insurance proceeds to be deposited to for building repair. Once the insurance payment is received arrangements will be made for it to be deposited with an agreed bank.

Sears District Facility Manager, Luis Almanza, is the point of contact to discuss on-site permanent building repairs, inspection and provide access to the premises. His cell phone number is (305) 725-0523.

Please let us know if there is anything further at this time. As information on the cost of repairs becomes available we will advise further.

Sincerely,

Michael Lodi
Property Analyst – Risk Management
Sears Holdings Corporation
3333 Beverly Road E3-272A; Hoffman Estates, Il. 60179
Office: 847-286-2603 Email:Michael.Lodi@searshc.com

| STORE # | TYPE | LOCATION | Project MGR | Status |
| --- | --- | --- | --- | --- |
| | | | | 5/4/2018 |
| 1915 | FLS | BAYAMON, PR | BARRY BRUNSON 817 689 3108 847 254 1915 | No Change Permit Plans have been processed. District supplied, Sales Support and Office plan, complete and transmitted waiting on Planning for revised Merchandise and Sales Support Plans. Store Hazardous Materials Abatement starts 4/16/2018. Store will be abated in Quadrants per floor starting on the 2nd Floor Stock Area. Please be aware of Hazardous Materials Warning signs that will be posted in the building in the areas work is being completed. Exterior Design for Building upper level Design and Repairs request have been sent to Architect for Research and Implementation into the Permit Drawings. Sandra Pechan sent a Request for Information to the District Team for Licensed Business, Cash wrap Placement and Sale Support information. This information is needed to send correct plans to the Architect. |

18-23538-rdd    Doc 2512    Filed 02/08/19    Entered 02/08/19 16:04:24    Main Document
Pg 30 of 49

| Status |
| --- |
| 5/11/2018 |

No Change Permit Plans have been processed. District supplied, Sales Support and Office plan, complete and transmitted waiting on Planning for revised Merchandise and Sales Support Plans. Store Hazardous Materials Abatement starts 4/16/2018. Store will be abated in Quadrants per floor starting on the 2nd Floor Stock Area. Please be aware of Hazardous Materials Warning signs that will be posted in the building in the areas work is being completed. Exterior Design for Building upper level Design and Repairs request have been sent to Architect for Research and Implementation into the Permit Drawings. Sandra Pechan sent a Request for Information to the District Team for Licensed Business, Cash Wrap Placement and Sale Support information. This information is needed to send correct plans to the Architect.

| Status |
| --- |
| 5/18/2018 |

No Change.

# SEARS HOLDINGS CORPORATION

June 6, 2018

**CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**
# 7016 2070 0000 0797 8848

Commercial Centers Management
PO Box 362983
San Juan, PR 00936

Via Email: ymelendez@ccmpr.com
        balvarez@ccmpr.com

Re:     Sears 1915
        Location: Bayamon, PR
        Date of Loss: 9/21/2017
        Type of Loss: Hurricane Maria / Wind

Dear Ms. Melendez,

This letter is intended to provide a brief recap of our telephone conversation on June 5, 2018.

As discussed, in Section 6.4 of the Lease the Tenant's Parent Corporation, Sears Holdings Corporation, is not required to place insurance money into a special account for building repairs as a result of fire or other casualty. Our letter of June 1st explains in detail. The Certificate of Insurance confirms Sears Holdings Corporation is the insured. Please let me know if there are any further questions.

As to the progress of the building repairs, we believe we have been proceeding in a diligent fashion. In order to assure Landlord of our intent and diligence, and as promised in our call attached you will find a Construction Schedule from the Sears Construction Team. The Construction Schedule provides the approximate dates Sears expects to have specific repair items completed. As you can see, Sears anticipates having a Grand Reopening on January 1, 2019. As stated in our prior letter, Sears Holdings Corporation will provide all monies required to restore and rebuild as required by the Lease. Should you or others at your company have any Construction specific questions please feel free to contact the Sears Project Manager, Barry Brunson. His cell phone number # is (817) 689-3108, and he has working knowledge of the construction progress.

Please contact me should you have any questions. At this juncture, if Tenant does not hear from Landlord to the contrary within 5 days from the date of this letter, Tenant will consider any default alluded to in Landlord's letter dated June 1, 2018, cured and rescinded.

Sincerely,

Dale Menendez, CPCU, MBA
Director, Property Claims - Risk Mgmt
Sears Holdings Management Corporation
3333 Beverly Road, E3-240B
Hoffman Estates, IL 60179

1915 Sears Bayamon, PR

Hurricane Repair and Build Back

Sears Holdings Corporation have undertaken significant steps in restoring the Bayamon property to original condition. See below for reference on the timeline and milestones for the build-back:

- Mold Remediation  - 11/2017 start, now Complete

- Interior Building Demo – 1/2018 start, now Complete

- Roof Replacement: Upper Level – 1/2018 start, now Complete

- ACM Environmental Abatement –3/2018 start, now Complete 6/15

- Architectural and Mechanical Permit Plans – Complete 6/29/2018

- Submit for Permits – 7/2 Start

- Pre-Bid Meeting – 7/06

- Material Orders Released – 7/09 Start

- Major Construction – 7/27 Start

- Roof Replacement: Lower Level – 8/3 Start

- Exterior Building Repairs – 8/6 Start

- Exterior Signs – 8/24 Start

- Merchandise Receipt: 10/15 Start

Planned date for Certificate of Occupancy to be complete is end of Calendar Year 2018

18-23538-rdd    Doc 2312    Filed 02/03/19    Entered 02/03/19 16:04:24    Main Document
Pg 33 of 49

### Exhibit C

Landlord June 4, 2018 Letter



**CCM**
**PUERTO RICO**
*A CCM Group Company*

PO Box 362983, San Juan, PR  00936-2983
Tel. 787-622-9600, Fax 787-277-9601

June 4, 2018

**Vía email:** Michael.Lodi@searshc.com

Sears Holdings Corporation
Attn. Mr. Michael Lodi
Manager, Property Claims
3333 Beverly Road, E3-237B-097B
Hoffman Estates, Il 60179

**Re: Sears store #1915 at Santa Rosa Mall, Bayamón, Puerto Rico**

Dear Mr. Lodi:

The assertions made in your June 1, 2018 letter, as to the self-insured status of Sears Holding Corporation for the damages suffered by the above referenced store during hurricane María are contrary to your letter dated October 26, 2017. In your October letter, you affirmatively represented that Sears had filed a claim to the insurance company and would indeed deposit the insurance proceeds in a mutually agreed account as required by the Agreement. Moreover, the possibility of Sears being self-insured is defeated by the fact that an insurance policy is in place as evidenced by the Certificate of Property Insurance dated July 26, 2017.  A copy of the Certificate of Property Insurance, covering the period from June 1, 2017 to June 1, 2018, is attached hereto as Exhibit 1.

In light of the foregoing, Section 6.04 of the September 6, 1965 Lease Agreement is inapposite, and Landlord reiterates that Sears is in default with the terms of Section 6.03 of the Agreement due to its failure to deposit, for the benefit of Landlord, in a mutually agreed local bank.  Moreover, the scarce information provided on the progress of the store repairs is completely inadequate to properly inform Landlord of the nature and scope of the work being performed, nor does it provide information as to a potential opening date.

Prompt and correct attention to this matter is required.  Should Tenant continue to delay the faithful compliance with the terms and conditions of the Lease Agreement, Landlord will vigorously defend and protect its rights and interests under the Agreement.

Cordially,

Betsy Alvarez
SVP of Operations and Finance

Enclosure

# ACORD® CERTIFICATE OF PROPERTY INSURANCE

DATE (MM/DD/YYYY)
10/25/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.  THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Aon Risk Services Central, Inc.<br>Chicago IL Office<br>200 East Randolph<br>Chicago IL 60601 USA | PHONE (A/C, No. Ext): (866) 283-7122 | FAX (A/C, No.): (800) 363-0105 | |
| | E-MAIL ADDRESS: | | |
| | PRODUCER CUSTOMER ID #: 570000034159 | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: AIG Europe Limited | | AA112084 |
| Sears Holdings Corporation<br>dba Sears, Roebuck and Co.<br>Attn: Risk Management E3-219A<br>3333 Beverly Road<br>Hoffman Estates IL 60179 USA | INSURER B: | | |
| | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES     CERTIFICATE NUMBER: 570069032839     REVISION NUMBER:

LOCATION OF PREMISES/ DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

RE: Sears Store No. 1915 - Santa Rosa Mall, Bayamon, PR.

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|---|---|---|
| A | X PROPERTY | | | PTNAM1701557 | 06/01/2017 | 06/01/2018 | | BUILDING | |
| | CAUSES OF LOSS | | DEDUCTIBLES | | | | | PERSONAL PROPERTY | |
| | BASIC | | BUILDING | | | | | BUSINESS INCOME | |
| | BROAD | | | | | | X | EXTRA EXPENSE | $50,000,000 |
| | SPECIAL | | CONTENTS | | | | | RENTAL VALUE | |
| | X EARTHQUAKE | | | | | | | BLANKET BUILDING | |
| | X WIND | | | | | | | BLANKET PERS PROP | |
| | X FLOOD | | | | | | X | BLANKET BLDG & PP | $50,000,000 |
| | X ALL RISK-Subject to Exclusions | | | | | | X | Earthquake - Aggrega | $50,000,000 |
| | Blkt B&PP Ded | | | | | | X | Flood - Aggregate | $50,000,000 |
| | INLAND MARINE | | TYPE OF POLICY | | | | | | |
| | CAUSES OF LOSS | | | | | | | | |
| | NAMED PERILS | | POLICY NUMBER | | | | | | |
| | CRIME | | | | | | | | |
| | TYPE OF POLICY | | | | | | | | |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | | |
| | | | | | | | | | |

SPECIAL CONDITIONS / OTHER COVERAGES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Coverage subject to the lease requirements, if any. Replacement Cost Valuation; No Coinsurance; Waiver of Subrogation included;
Mold Coverage Excluded; All real and personal property owned, acquired by, used by, intended for use by the insured, including
real and personal property of others in the insured's care, custody or control; extra expense, contingent extra expense, rents,

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| CCM Puerto Rico, A CCM Group Company<br>Santa Rosa Mall, LLC, 3 Pals Caribe, LLC<br>Commercial Centers Management Realty<br>S. en C.<br>Carr. #2, Km. 7.1<br>Bayamón PR 00960 USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Aon Risk Services Central, Inc.* |

© 1995-2015 ACORD CORPORATION. All rights reserved.

ACORD 24 (2016/03)          The ACORD name and logo are registered marks of ACORD

Holder Identifier : 1915

CERTIFICATE NUMBER: 570069032839

18-23538-rdd    Doc 2312    Filed 02/03/19    Entered 02/03/19 16:04:24    Main Document
Pg 30 of 99

AGENCY CUSTOMER ID: 570000034159

LOC #:

# ACORD® ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Sears Holdings Corporation |

**POLICY NUMBER**
See Certificate Number:    570069032839

| CARRIER | NAIC CODE | |
|---|---|---|
| See Certificate Number:    570069032839 | | **EFFECTIVE DATE:** |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: ACORD 24    FORM TITLE: Certificate of Property Insurance

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY

SPECIAL CONDITIONS / OTHER COVERAGES

rental income, leasehold interests, valuable papers, and records, accounts receivable and other coverage's further described in the policy form.  Santa Rosa Mall, LLC, 3 Pals Caribe, LLC and Commercial Centers Management, LLC are included as Loss Payee in accordance with the policy provisions of the Property policy with respect to the property located at the above referenced Location.

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID:  570000034159

LOC #:

# ACORD®  ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Sears Holdings Corporation |

| POLICY NUMBER | |
|---|---|
| See Certificate Number:  570069032839 | |

| CARRIER | NAIC CODE | EFFECTIVE DATE: |
|---|---|---|
| See Certificate Number:  570069032839 | | |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**
**FORM NUMBER:**  ACORD 24    **FORM TITLE:**  Certificate of Property Insurance

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER | |
| INSURER | |
| INSURER | |
| INSURER | |

**ADDITIONAL POLICIES**  If a policy below does not include limit information, refer to the corresponding policy on the ACORD certificate form for policy limits.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|
| | PROPERTY | | | | | |
| A | | PTNAM1701557 | 06/01/2017 | 06/01/2018 | Boiler & Machinery | Included |

ACORD 101 (2008/01)

The ACORD name and logo are registered marks of ACORD    © 2008 ACORD CORPORATION. All rights reserved.

AGENCY CUSTOMER ID: 570000034159

LOC #:

# ACORD®

## ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | | NAMED INSURED |
|---|---|---|
| Aon Risk Services Central, Inc. | | Sears Holdings Corporation |
| **POLICY NUMBER** | | |
| See Certificate Number: 570069032839 | | |
| **CARRIER** | **NAIC CODE** | **EFFECTIVE DATE:** |
| See Certificate Number: 570069032839 | | |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: ACORD 24    FORM TITLE: Certificate of Property Insurance

Property Program 6/1/17 - 6/1/18

$50,000,000 All Risk Policy Numbers:

Primary Property
ACE American Insurance Company - GPAD3739824A010 - 12% of $50M
Zurich American Insurance Company - XPP926068010 - 10% of $50M
Lloyds of London - Syndi 3000 MKL (Slip Leader) - PTNAM1701122 - 3% of $50M
*Novae Bermuda Underwriting Ltd - XR04017ADFRT - 3%of $50M
*Allied World Assurance Company, Ltd. - P003839014 - 18.33% of $50M
Lloyds of London - Synd 318 MSP (Slip Leader) - PTNAM1701562 - 7.5% of $50M
Aspen Specialty Insurance Company - PXAA52817 - 1.67% of $50M
Westport Insurance Corporation - NAP045210505 - 8% of $50M
HDI Global Insurance Company - XPD1488600 - 2.5% of $50M

Starr Companies - 5% of $50M
Starr Surplus Lines Insurance Company - SLSTPTY10966117
Chubb Custom Insurance Company - 4468121406
General Security Indemnity Company of Arizona (GSINDA) - T0234451703681
Executive Risk Specialty Insurance Company - 4468121506

Excess Property
Endurance Worldwide Insurance Ltd. (Slip Leader) - PTNAM1701564 - 2% of $50M
Lloyds of London - Synd 1414 ASC (Slip Leader) - PTNAM1701559 - 8% of $50M
Tokio Marine America Insurance Company - LCP648016706 - 4% of $50M
Liberty Mutual Fire Insurance Company - MJ2L9L426774037 - 4% of $50M
Ironshore Specialty Insurance Company - 000423108 - 2.5% of $50M
AIG Europe Ltd. - PTNAM1701557 - 8.5% of $50M

As indicated by ( * ), Aon Risk Solutions (U.S) is authorized to generate and distribute certificates in an administrative capacity as evidence of insurance where required by clients of the Insured."

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

18-23538-rdd    Doc 2512    Filed 02/08/19    Entered 02/08/19 16:04:24    Main Document
Pg 59 of 99

**Exhibit D**

Landlord Letter to AIG Europe Limited

**Ferraiuoli** LLC
*Looking Forward*

**15** ANNIVERSARY

390 Ponce de León Avenue, Suite 500
San Juan, PR 00917
T. 787-766-7000
F. 787.766.7001

January 23, 2019

**CERTIFIED MAIL:**

**AIG EUROPE LIMITED**
The AIG Building
58 Fenchurch Street
London EC3M 4AB

> This is not an attempt to collect a debt. This letter is sent for informational purposes only. We acknowledge your bankruptcy filing.

**RE:    Insurance Policy No. PTNAM1701557, effective from 06/01/2017-06/01/2018**
**Insurance Policy No. PTNAM1802875, effective from 06/01/2018-06/01/2019**

To Whom It May Concern:

Our firm represents Santa Rosa Mall, LLC ("Santa Rosa Mall"), a loss payee to the above referenced property insurance policies, which cover Sears Store No. 1915 ("Store 1915") located at Santa Rosa Mall, Bayamón, PR 00959. The purpose of this letter is to request information regarding the status of a claim under either policy, as set forth in our client's October 30th letter attached hereto as **Exhibit I**. This is not a collection letter or a demand for payment.

Store 1915 has remained closed since September 2017, due to damages suffered during Hurricane Maria. Pursuant to Michael Lodi, Property Analyst at Sears Holdings Corporation, "Sears has an insurance claim for this loss". At such time, Sears was insured by AIG Europe Limited ("AIG") under Policy No. PTNAM1701557. I am including a copy of the *Certificate of Property Insurance* as **Exhibit II**. Under the "Additional Remarks Schedule" of such *Certificate*, "Santa Rosa Mall LLC [] [is] included as Loss Payee in accordance with the policy provisions of the Property policy with respect to the property located at the above referenced location", referring to Store 1915. Id. Thus, upon information and belief, Sears is currently insured by AIG under Policy No. PTNAM1802875.

As a Loss Payee, Santa Rosa Mall affirming it has an interest in any negotiation conducted by and between AIG and Sears, as well as any proceeds thereto. As such, we provide notice, and hereby copy Debtor's counsel, that any insurance proceeds recovered for loss or damage be issued jointly to Debtor and Santa Rosa so that funds can be deposited in a segregated account to be used only for the repairs to Store 1915, in compliance with Section 6.03(b)(3) of the *Lease Agreement* executed by Santa Rosa Mall and Sears on September 22, 1965.

As it relates to AIG Europe Limited, this letter is being sent in conjunction with the Debtor for notification purposes. This notice is for informational purposes only and does not constitute a demand for payment.



**CCM PUERTO RICO**
*A CCM Group Company*
PO Box 362983, San Juan, PR 00936-2983
Tel. 787-622-9600 Fax 787-277-9601

**Exhibit I**

October 30, 2017

Via email rolando.ortega@aig.com

AIG Insurance Company Puerto Rico
Atn. Mr. Rolando Ortega
250 Muñoz Rivera, suite 500
San Juan, PR 00918

  Re: Insurance policy number PTNAM1701557 for the Sears store located at Santa Rosa Mall, Bayamón, Puerto Rico

Dear Mr. Ortega:

  The above referenced property insurance policy covers the Sears store located at Santa Rosa Mall, and both Santa Rosa Mall, LLC and Commercial Centers Management Realty, S en C ("CCM") are Additional Insureds under the policy. For ease of reference, I enclose a copy of the Certificate of Property Insurance.

  Please be advised that under Section 6.03 of the Lease Agreement, all net sums recovered for loss or damage under any applicable insurance policy must be deposited in a special account in the name of Landlord to be applied to the cost of rebuilding the premises. Under the existing Lease Agreement, Sears Holding Management Corporation ("Sears") is required to promptly and expeditiously repair the damage caused and/or rebuild the premises. Sears is aware and has agreed to fully comply with the provisions of the Lease herein discussed.

  CCM formally requests to be informed as to the filing of any claim under the policy as well as the processing of the same, and that any insurance proceeds be deposited as required by the Lease Agreement.

  Please contact the undersigned at balvarez@ccmpr.com to further discuss this matter and coordinate necessary arrangements regarding the foregoing.

Cordially,

*Betsy Alvarez*

Betsy Alvarez
Senior VP of Operations and Finance

c: claims.pr@aig.com

# CERTIFICATE OF PROPERTY INSURANCE

DATE (MM/DD/YYYY) 10/25/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**PRODUCER**
Aon Risk Services Central, Inc.
Chicago IL Office
200 East Randolph
Chicago IL 60601 USA

CONTACT NAME:
PHONE (A/C. No. Ext): (866) 283-7122
FAX (A/C. No): (800) 363-0105
E-MAIL ADDRESS:
PRODUCER CUSTOMER ID #: 570000034159

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: AIG Europe Limited | AA112084 |
| INSURER B: | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |
| INSURER F: | |

**INSURED**
Sears Holdings Corporation
dba Sears, Roebuck and Co.
Attn: Risk Management E3-219A
3333 Beverly Road
Hoffman Estates IL 60179 USA

CERTIFICATE NUMBER: 570069032839    REVISION NUMBER:

LOCATION OF PREMISES/DESCRIPTION OF PROPERTY

RE: Sears Store No. 1915 - Santa Rosa Mall, Bayamon, PR.

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|
| A | X PROPERTY | PTNA41701557 | 06/01/2017 | 06/01/2018 | BUILDING | |
| | CAUSES OF LOSS / DEDUCTIBLES | | | | PERSONAL PROPERTY | |
| | BASIC / BUILDING | | | | BUSINESS INCOME | |
| | BROAD | | | | X EXTRA EXPENSE | $50,000,000 |
| | SPECIAL / CONTENTS | | | | RENTAL VALUE | |
| | X EARTHQUAKE | | | | BLANKET BUILDING | |
| | X WIND | | | | BLANKET PERS PROP | |
| | X FLOOD | | | | X BLANKET BLDG & PP | $50,000,000 |
| | X ALL RISK-Subject to Exclusions | | | | X Earthquake - Aggrag | $50,000,000 |
| | Bld B&PP Ded | | | | X Flood - Aggregate | $50,000,000 |
| | INLAND MARINE | TYPE OF POLICY | | | | |
| | CAUSES OF LOSS | | | | | |
| | NAMED PERILS | POLICY NUMBER | | | | |
| | CRIME | TYPE OF POLICY | | | | |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | |

SPECIAL CONDITIONS / OTHER COVERAGES
Coverage subject to the lease requirements, if any. Replacement Cost Valuation; No Coinsurance; Waiver of Subrogation included; Mold Coverage Excluded; All real and personal property owned, acquired by, used by, intended for use by the insured, including real and personal property of others in the insured's care, custody or control; extra expense, contingent extra expense, rents,

**CERTIFICATE HOLDER**
CCM Puerto Rico, A CCM Group Company
Santa Rosa Mall, LLC, 3 Pals Caribe, LLC
Commercial Centers Management Realty
S. en C.
Carr. #2, Km. 7.1
Bayamón PR 00960 USA

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE
*Aon Risk Services Central Inc.*

© 1995-2015 ACORD CORPORATION. All rights reserved.

ACORD 24 (2016/03)    The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: 570000034159
LOC #:

# ACORD® ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Sears Holdings Corporation |

| POLICY NUMBER | |
|---|---|
| See Certificate Number: 570069032839 | |

| CARRIER | NAIC CODE | |
|---|---|---|
| See Certificate Number: 570069032839 | | EFFECTIVE DATE: |

## ADDITIONAL REMARKS

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,
FORM NUMBER: ACORD 24   FORM TITLE: Certificate of Property Insurance

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER | |
| INSURER | |
| INSURER | |
| INSURER | |

**ADDITIONAL POLICIES** If a policy below does not include limit information, refer to the corresponding policy on the ACORD certificate form for policy limits.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|
| | PROPERTY | | | | | |
| A | | PTNAM1701557 | 06/01/2017 | 06/01/2018 | Boiler & Machinery | Included |

ACORD 101 (2008/01)

The ACORD name and logo are registered marks of ACORD

© 2008 ACORD CORPORATION. All rights reserved.

AGENCY CUSTOM! : 570000034159
LOC #:

*ACORD*®
# ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Sears Holdings Corporation |

| **POLICY NUMBER** | |
|---|---|
| See Certificate Number: 570069032839 | |

| **CARRIER** | **NAIC CODE** | **EFFECTIVE DATE:** |
|---|---|---|
| See Certificate Number: 570069032839 | | |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

**FORM NUMBER:** ACORD 24    **FORM TITLE:** Certificate of Property Insurance

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY

SPECIAL CONDITIONS / OTHER COVERAGES

rental income, leasehold interests, valuable papers, and records, accounts receivable and other coverage's further described in the policy form. Santa Rosa Mall, LLC, 3 Pals Caribe, LLC and Commercial Centers Management, LLC are included as Loss Payee in accordance with the policy provisions of the Property policy with respect to the property located at the above referenced Location.

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

**ACORD®**

AGENCY CUSTOMER ID: 570000034159

LOC #:

# ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | | | NAMED INSURED |
|---|---|---|---|
| Aon Risk Services Central, Inc. | | | Sears Holdings Corporation |
| **POLICY NUMBER** | | | |
| See Certificate Number: 570069032839 | | | |
| **CARRIER** | | **NAIC CODE** | **EFFECTIVE DATE:** |
| See Certificate Number: 570069032839 | | | |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,
FORM NUMBER: ACORD 24    FORM TITLE: Certificate of Property Insurance

Property Program 6/1/17 - 6/1/18

$50,000,000 All Risk Policy Numbers:

Primary Property
ACE American Insurance Company - GPAD3739824A010 - 12% of $50M
Zurich American Insurance Company - XPP926068010 - 10% of $50M
Lloyds of London - Syndi 3000 MKL (Slip Leader) - PTNAM1701122 - 3% of $50M
*Novae Bermuda Underwriting Ltd - XRO4017ADFRT - 3%of $50M
*Allied World Assurance Company, Ltd. - P003839014 - 18.33% of $50M
Lloyds of London - Synd 318 MSP (Slip Leader) - PTNAM1701562 - 7.5% of $50M
Aspen Specialty Insurance Company - PXAAS2817 - 1.67% of $50M
Westport Insurance Corporation - NAP045210505 - 8% of $50M
HDI Global Insurance Company - XPD1488600 - 2.5% of $50M

Starr Companies - 5% of $50M
Starr Surplus Lines Insurance Company - SLSTPTY10966117
Chubb Custom Insurance Company - 4468121406
General Security Indemnity Company of Arizona (GSINDA) - T0234451703681
Executive Risk Specialty Insurance Company - 4468121506

Excess Property
Endurance Worldwide Insurance Ltd. (Slip Leader) - PTNAM1701564 - 2% of $50M
Lloyds of London - Synd 1414 ASC (Slip Leader) - PTNAM1701559 - 8% of $50M
Tokio Marine America Insurance Company - LCP648016706 - 4% of $50M
Liberty Mutual Fire Insurance Company - MJ2L9L426774037 - 4% of $50M
Ironshore Specialty Insurance Company - 000423108 - 2.5% of $50M
AIG Europe Ltd. - PTNAM1701557 - 8.5% of $50M

As indicated by ( * ), Aon Risk Solutions (U.S) is authorized to generate and distribute certificates in an
administrative capacity as evidence of insurance where required by clients of the Insured."

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

**EXHIBIT II**

| ACORD® | CERTIFICATE OF PROPERTY INSURANCE | DATE (MM/DD/YYYY) 10/25/2017 |
|---|---|---|

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Aon Risk Services Central, Inc. Chicago IL Office 200 East Randolph Chicago IL 60601 USA | PHONE (A/C. No. Ext): (866) 283-7122 | FAX (A/C, No): (800) 363-0105 | |
| | E-MAIL ADDRESS: | | |
| | PRODUCER CUSTOMER ID #: 570000034159 | | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A: ATG Europe Limited | AA112084 |
| Sears Holdings Corporation dba Sears, Roebuck and Co. Attn: Risk Management E3-219A 3333 Beverly Road Hoffman Estates IL 60179 USA | INSURER B: | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |
| | INSURER F: | |

Holder Identifier : 1915

| COVERAGES | CERTIFICATE NUMBER: 570069032839 | REVISION NUMBER: |
|---|---|---|

LOCATION OF PREMISES/ DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

RE: Sears Store No. 1915 - Santa Rosa Mall, Bayamon, PR.

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|---|
| A | X PROPERTY | | PTNAM1701557 | 06/01/2017 | 06/01/2018 | BUILDING | |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | PERSONAL PROPERTY | |
| | BASIC | BUILDING | | | | BUSINESS INCOME | |
| | BROAD | | | | | X EXTRA EXPENSE | $50,000,000 |
| | SPECIAL | CONTENTS | | | | RENTAL VALUE | |
| | X EARTHQUAKE | | | | | BLANKET BUILDING | |
| | X WIND | | | | | BLANKET PERS PROP | |
| | X FLOOD | | | | | X BLANKET BLDG & PP | $50,000,000 |
| | X ALL RISK-Subject to Exclusions | | | | | X Earthquake - Aggrega | $50,000,000 |
| | Bld B&PP Ded | | | | | X Flood - Aggregate | $50,000,000 |
| | INLAND MARINE | | TYPE OF POLICY | | | | |
| | CAUSES OF LOSS | | | | | | |
| | NAMED PERILS | | POLICY NUMBER | | | | |
| | CRIME | | | | | | |
| | TYPE OF POLICY | | | | | | |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | |

SPECIAL CONDITIONS / OTHER COVERAGES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Coverage subject to the lease requirements, if any. Replacement Cost Valuation; No Coinsurance; Waiver of Subrogation included; Mold Coverage Excluded; All real and personal property owned, acquired by, used by, intended for use by the insured, including real and personal property of others in the insured's care, custody or control; extra expense, contingent extra expense, rents,

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| CCM Puerto Rico, A CCM Group Company Santa Rosa Mall, LLC, 3 Pals Caribe, LLC Commercial Centers Management Realty S. en C. Carr. #2, Km. 7.1 Bayamón PR 00960 USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *Aon Risk Services Central Inc.* |

© 1995-2015 ACORD CORPORATION. All rights reserved.

ACORD 24 (2016/03)          The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: 570000034159

LOC #:



# ADDITIONAL REMARKS SCHEDULE

Page __ of __

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Sears Holdings Corporation |

| POLICY NUMBER | | |
|---|---|---|
| See Certificate Number: 570069032839 | | |

| CARRIER | NAIC CODE | EFFECTIVE DATE: |
|---|---|---|
| See Certificate Number: 570069032839 | | |

### ADDITIONAL REMARKS

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,
FORM NUMBER: ACORD 24    FORM TITLE: Certificate of Property Insurance

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER | |
| INSURER | |
| INSURER | |
| INSURER | |

**ADDITIONAL POLICIES**    If a policy below does not include limit information, refer to the corresponding policy on the ACORD certificate form for policy limits.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|
| | PROPERTY | | | | | |
| A | | PTNAN1701557 | 06/01/2017 | 06/01/2018 | Boiler & Machinery | Included |

ACORD 101 (2008/01)

The ACORD name and logo are registered marks of ACORD

© 2008 ACORD CORPORATION. All rights reserved.

AGENCY CUSTOMI : 570000034159
LOC #:

**ACORD®**

## ADDITIONAL REMARKS SCHEDULE

Page __ of __

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Sears Holdings Corporation |
| **POLICY NUMBER** | |
| See Certificate Number: 570069032839 | |

| CARRIER | NAIC CODE | EFFECTIVE DATE: |
|---|---|---|
| See Certificate Number: 570069032839 | | |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: ACORD 24      FORM TITLE: Certificate of Property Insurance

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY

SPECIAL CONDITIONS / OTHER COVERAGES

rental income, leasehold interests, valuable papers, and records, accounts receivable and other coverage's further described in the policy form. Santa Rosa Mall, LLC, 3 Pals Caribe, LLC and Commercial Centers Management, LLC are included as Loss Payee in accordance with the policy provisions of the Property policy with respect to the property located at the above referenced Location.

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: 570000034159
LOC #:

*ACORD*

# ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Sears Holdings Corporation |

| POLICY NUMBER | | |
|---|---|---|
| See Certificate Number: 570069032839 | | |

| CARRIER | NAIC CODE | |
|---|---|---|
| See Certificate Number: 570069032839 | | EFFECTIVE DATE: |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: ACORD 24    FORM TITLE: Certificate of Property Insurance

Property Program 6/1/17 - 6/1/18

$50,000,000 All Risk Policy Numbers:

Primary Property
ACE American Insurance Company - GPAD3739824A010 - 12% of $50M
Zurich American Insurance Company - XPP926068010 - 10% of $50M
Lloyds of London - Syndi 3000 MKL (Slip Leader) - PTNAM1701122 - 3% of $50M
*Novae Bermuda Underwriting Ltd - XR04017ADFRT - 3%of $50M
*Allied World Assurance Company, Ltd. - P003839014 - 18.33% of $50M
Lloyds of London - Synd 318 MSP (Slip Leader) - PTNAM1701562 - 7.5% of $50M
Aspen Specialty Insurance Company - PXAA52817 - 1.67% of $50M
Westport Insurance Corporation - NAP045210505 - 8% of $50M
HDI Global Insurance Company - XPD1488600 - 2.5% of $50M

Starr Companies - 5% of $50M
Starr Surplus Lines Insurance Company - SLSTPTY10966117
Chubb Custom Insurance Company - 4468121406
General Security Indemnity Company of Arizona (GSINDA) - TO234451703681
Executive Risk Specialty Insurance Company - 4468121506

Excess Property
Endurance Worldwide Insurance Ltd. (Slip Leader) - PTNAM1701564 - 2% of $50M
Lloyds of London - Synd 1414 ASC (Slip Leader) - PTNAM1701559 - 8% of $50M
Tokio Marine America Insurance Company - LCP648016706 - 4% of $50M
Liberty Mutual Fire Insurance Company - MJ7L9L426774037 - 4% of $50M
Ironshore Specialty Insurance Company - 000423108 - 2.5% of $50M
AIG Europe Ltd. - PTNAM1701557 - 8.5% of $50M

As indicated by ( * ), Aon Risk Solutions (U.S) is authorized to generate and distribute certificates in an
administrative capacity as evidence of insurance where required by clients of the Insured."

ACORD 101 (2008/01)                                © 2008 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

**<u>Exhibit C</u>**

**Debtors' Third Omnibus Objection to Motions for Relief from Stay**

Hearing Date and Time: May 21, 2019 at 10:00 a.m. (Eastern)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :
                                          :        Chapter 11
SEARS HOLDINGS CORPORATION, et al.,       :
                                          :        Case No. 18-23538 (RDD)
                                          :
          Debtors.¹                       :        (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

### THIRD OMNIBUS OBJECTION OF DEBTORS TO
### MOTIONS FOR RELIEF FROM STAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, LLC (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation ("**Sears Holdings**"), Sears, Roebuck & Co. ("**Roebuck**"), and certain of their affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection to the motions seeking relief from the automatic stay filed by Jenny and Ronald Yednak (ECF No. 1569) (the "**Yednak Motion**"), William Juiris (ECF No. 2745) (the "**Juiris Motion**"), Rosa Melgar (ECF No. 2960) (the "**Melgar Motion**"), Liberty Insurance Corp (ECF No. 3294) (the "**Liberty Motion**" and, collectively, the "**Stay Relief Motions**," and all of the proponents thereof, collectively, the "**Movants**"), and respectfully represent as follows:

### Preliminary Statement

1.      A movant seeking relief from the automatic stay must show cause warranting such relief. 11 U.S.C. § 362(d)(1). If the movant fails to satisfy this burden, then "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Here, Movants have failed to satisfy their burden to establish cause to lift the automatic stay.

2.      Movants seek to proceed with their respective prepetition actions (collectively, the "**Actions**"). The Stay Relief Motions are premised, at least in part, on the purported availability of third-party insurance or other coverage for liability for Movants' claims and related defense costs. As the Debtors have explained to Movants, however, no such coverage is available with respect to the Actions. If the automatic stay is lifted, the Debtors will be forced to incur all administrative and defense costs associated with these claims and lawsuits. Movants are only a few of the Debtors' many thousands of prepetition general unsecured creditors. It would be premature, inefficient, and prejudicial to all of the Debtors' administrative, priority, and other

2

general unsecured creditors to expend estate resources on any of Movants' claims at this time.  The

Stay Relief Motions should be denied.[2]

### Background

3.      Beginning on October 15, 2018 and continuing thereafter, each of the

Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United

States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their

business and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

4.      On October 24, 2018, the United States Trustee for Region 2 appointed an

official committee of unsecured creditors.  No trustee or examiner has been appointed in these

chapter 11 cases.

5.      The Debtors' chapter 11 cases are being jointly administered for procedural

purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6.      On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving*

*the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of*

*the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances,*

*(III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in*

*Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the

---

[2]  Several other parties filed motions for relief from the automatic stay after the Court entered the Stay Procedures Order (defined below), which provides a process requiring the submission of an Inquiry (defined below) to the Debtors in advance of filing a motion seeking relief.  The following movants (the "**Inquiry Movants**") filed a motion and proposed a hearing date prior to submitting an Inquiry:  Steven R. Wolf, et al. (ECF No. 2961), Martha West (ECF No. 2992), Matt L. Bauer (ECF No. 3177), and Jose Acosta (ECF No. 3124 amended by ECF No. 3189).  The Inquiry Movants were informed that the Debtors consider the Inquiry Movants' motions to be automatically adjourned until the appropriate review periods under the Stay Procedures Order have expired.  The Debtors reserve all rights to object to their motions as well as other motions that have been filed to date.

WEIL:\97026284\5\73217.0004

Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**").
The Sale Transaction closed on February 11, 2019.

7.      On March 1, 2019, the Court entered the *Order Approving Procedures for
Modification of the Automatic Stay Under Certain Circumstances* (ECF No. 2720) (the "**Stay
Procedures Order**").  The Stay Procedures Order approved procedures for the Debtors to review
requests to lift the automatic stay to proceed with prepetition actions with recovery limited to
available insurance proceeds (the "**Stay Procedures**").  Stay Procedures Order ¶ 2(a).  The Stay
Procedures provide that a party seeking to lift the automatic stay submit a form inquiry that was
annexed as Exhibit 1 to the Stay Order (an "**Inquiry**").  *Id.* ¶ 2(a).  The Debtors are afforded 45
calendar days to review and respond to an Inquiry and parties may file a motion for relief from the
automatic stay if the Debtors do not respond to an Inquiry after the expiration of the 45-day period.
*Id.* ¶ 2(e).

8.      On April 17, 2019, the Debtors filed the *Joint Chapter 11 Plan of Sears
Holdings Corporation and its Affiliated Debtors* (ECF No. 3275) (the "**Plan**"), and the *Disclosure
Statement for Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*
(ECF No. 3276).

9.      Additional information regarding the Debtors' business, capital structure,
and the circumstances leading to the commencement of these chapter 11 cases is set forth in the
*Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern
District of New York*, sworn to on October 15, 2018 (ECF No. 3).

## Jurisdiction

10.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.
§§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

4

(Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before

this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

<u>**Actions Subject to Stay**</u>

**A.    <u>The Yednak Action</u>**

11.    Movants Jenny and Ronald Yednak are plaintiffs in a pre-petition action

against Debtor Roebuck filed July 9, 2018 in the Circuit Court of Cook County, Illinois (the "**Cook**

**County Court**"), captioned as *Jenny Yednak et al. v. Sears Roebuck & Co. et al.*, Case No. 2018-

L-007065 (the "**Yednak Action**"), seeking damages for injuries that allegedly occurred as a result

of a wet floor on the premises of a Sears store.  *See* Yednak Mot. at *2.

12.    Jenny and Ronald Yendak filed the Yednak Motion on January 22, 2019,

seeking relief from the automatic stay to continue the Yednak action, arguing that insurance

coverage is likely available to satisfy all or a portion of a judgment entered against Roebuck in the

Yednak Action, and that the *Sonnax* factors (as described herein) weigh in favor of lifting the

automatic stay.  *See* Yednak Mot. at *2, 5–8.

**B.    <u>The Juiris Action</u>**

13.    Movant William Juiris commenced an action against Sears Holdings in the

Cook County Court, captioned as *William Juiris v. Heidi Juiris and Sears Holdings Corp.*, No. 13

D 10549 (the "**Juiris Action**") alleging that Sears Holdings failed to withhold spousal maintenance

payments in connection with a divorce proceeding, where Mr. Juiris held claims for maintenance

and child support against his former spouse.  On March 21, 2018 the Cook County Court entered

a judgment in favor of Mr. Juiris.  Sears Holdings appealed the judgment to the Appellate Court

of Illinois, First District.  In connection therewith, Sears Holdings posted a supersedeas bond (the

"**Bond**") as security for the collection of the judgment.

5

14.    Mr. Juiris filed the Juiris Motion on March 5, 2019, seeking to modify the

automatic stay as to the Debtors' interest in the Bond.  Juiris Mot. ¶ 4.  Mr. Juiris argues, among

other things, that the Bond is not property of Sears Holdings, and that as a result, lifting the stay

will not prejudice interests of the Debtors' creditors. Juiris Mot. ¶ 7.

15.    In addition, Mr. Juiris filed a proof of claim against Sears Holdings in

connection with the Juiris Action, in the amount of $92,900, on March 25, 2019 (Proof of Claim

No. 12025).

## C.    The Melgar Action

16.    On April 3, 2015 Movant Rosa Melgar filed a complaint in the Superior

Court of New Jersey Law Division Union County under Docket Number UNN-L-1270-17 (the

"**Melgar Action**"), against Sears Holdings, as well as other non-debtor defendants, seeking

damages for alleged negligence in connection with injuries allegedly sustained on April 2, 2015.

*See* Melgar Mot. ¶ 3; *id.* Ex. A ¶¶ 1–3.

17.    On March 26, 2019, Ms. Melgar filed the Melgar Motion, seeking relief

from the automatic stay in order to proceed with the Melgar Action and to seek "proceeds from

Defendant . . . insurance policies that cover liability." Melgar Mot. ¶ 8.

18.    In addition to the Melgar Motion, Ms. Melgar filed a proof of claim in these

cases against Sears Holdings in connection with the Melgar Action in the amount of $120,000

(Proof of Claim No. 6110).

## D.    The Liberty Action

19.    Movant Liberty Insurance Corporation ("**Liberty**") commenced an action

against Roebuck on May 30, 2018, currently pending in the United States District Court for the

Eastern District of Tennessee, Knoxville Division (the "**Tennessee Court**"), with the case caption

WEIL:\97026284\5\73217.0004

*Liberty Insurance Corporation v. Sears, Roebuck & Co.*, Case No. 3:18-cv-00212 (the "**Liberty Action**"). Liberty is acting as subrogee under a certain insurance policy for Parrish Simpson, an individual on whose premises a fire allegedly started by a defective or a defectively-installed microwave, distributed or sold by Roebuck. Liberty is seeking to recover payments made to Mr. Simpson for damages resulting from this fire. Liberty Mot. at *6.

20.     Liberty filed the Liberty Motion on April 19, 2019, seeking relief from the automatic stay to obtain a judgment against Roebuck and to enforce such judgment from the proceeds of the Debtors' available insurance, or any third party defendants, currently unknown. Liberty Mot. at *5. In addition to the Liberty Motion, Liberty filed a proof of claim in these cases against Roebuck in connection with the Liberty Action in the amount of $75,000 (Proof of Claim No. 15641).

### The Debtors' Insurance Coverage

21.     The Debtors maintained various insurance policies in their history over the prepetition period. Among them were both general liability and umbrella policies that potentially could have applied in the Movants' Actions. The Debtors' general liability policy had a $5 million aggregate limit for each annual period beginning on August 1 and ending on August 1 the following year. Paid losses to date have exceeded the $5 million limit on each of those policies for the following periods, which are applicable to one or more of the Actions: (a) Aug. 1, 2007 – Aug. 1, 2008; (b) Aug. 1, 2010 – Aug. 1, 2011; (c) Aug. 1, 2011 – Aug. 1, 2012; (d) Aug. 1, 2012 – Aug. 1, 2013; (e) Aug. 1, 2013 – Aug. 1, 2014; (f) Aug. 1, 2014 – Aug. 1, 2015; (g) Aug. 1, 2015 – Aug. 1, 2016; and (h) Aug. 1, 2016 – Aug. 1, 2017. Therefore, no coverage exists with respect to the general liability policy for these years. In these instances, the insurer has no duty to defend the Debtors or pay for the Debtors' losses. Accordingly, where a Movant's Action falls within the applicable period where coverage is exhausted or where the Debtors would have to cover the

7

liability through a deductible, the Debtors—the Debtors, and not a third party—would be paying the costs of the Movant's Action.  Copies of the notices of exhaustion evidencing the foregoing are attached hereto as **Exhibit A** (2007–2008), **Exhibit B** (2010–2011), **Exhibit C** (2011–2012), **Exhibit D** (2012–2013), **Exhibit E** (2013–2014), **Exhibit F** (2014–2015), **Exhibit G** (2015–2016), and **Exhibit H** (2016–2017).

22.     The following table summarizes the Actions that assert that insurance coverage is available:

| Cause of Action | Date of Incident | Asserted Claims | Applicable Dates of Insurance Policy | Applicable Lack of Coverage |
|---|---|---|---|---|
| Yednak Action | July 10, 2016 | $5,500,000 | 8/1/2015–8/1/2016 | Exhibit G |
| Juiris Action | Nov. 27, 2013 – Oct. 3, 2014 | $92,900 | 8/1/2013–8/1/2015 | Exhibits E, F |
| Melgar Action | Apr. 2, 2015 | $120,000 | 8/1/2014–8/1/2015 | Exhibit F |
| Liberty Action | Mar. 18, 2016 | $75,000 | 8/1/2015–8/1/2016 | Exhibit G |

23.     In addition to their general liability policies, the Debtors have umbrella coverage, which attaches after $5 million is incurred by the Debtors on a given claim. The umbrella coverage attachment applies whether or not the underlying policy has been exhausted.  Here, the Debtors have not incurred $5 million in defense costs on any of the Movants' Actions, and consequently, umbrella coverage is unavailable to pay any judgments or defense costs at this time.

24.     Accordingly, the Debtors are without coverage to defend or satisfy claims arising out of the applicable Actions.

### Third Party Coverage

25.     Ms. Melgar has asserted in the Melgar Motion that although the "Debtor, Sears was 'self insured' for purposes of personal injury claims its contractors, 'ICON Health and Fitness, Inc.,' and 'Out of the Box,' and its policies cover the Debtor as an additional insured."

8

Melgar Mot. ¶ 10. No third party has been covering the Debtors' defense costs in the Melgar

Action. To date, third parties have denied coverage of the Melgar Action.

26.      Accordingly, at this time, the Debtors have no third-party coverage to

defend or satisfy claims arising out of the Melgar Action.

**Argument**

**A.      Governing Legal Standards**

27.      The automatic stay is "one of the fundamental debtor protections provided

by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S.

494, 503 (1986). The stay is "designed to give the debtor time to organize its affairs—which

includes protection from having to defend claims brought against the estate . . . ." *Teachers Ins.

& Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986). One of the primary forms of

protection that the stay provides is preventing a debtor from being forced to litigate multiple claims

in multiple forums. *See In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983).

28.      Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that

upon a request of a party in interest and after notice and a hearing, the Court shall grant relief from

the automatic stay "for cause." 11 U.S.C. § 362(d)(1). "Cause" is not defined, and the decision

whether to modify the stay is left to the discretion of the bankruptcy court. *In re Marketxt Holdings

Corp.*, 428 B.R. 579, 584 (S.D.N.Y. 2010). In the Second Circuit, courts weigh twelve factors,

known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted. *See

Sonnax Indus., Inc. v. Tri-Component prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280,

1286 (2d Cir. 1990).[3] Not all of the factors will be relevant in a given case, and the Court may

---

[3] As noted by several of the Movants, the *Sonnax* factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection
with or interference with bankruptcy case; (3) whether the other proceeding involves the debtor as

9

disregard irrelevant factors. *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). Additionally, courts need not assign equal weight to each factor, and have discretion is weighing the factors against one another. *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

29.     Movants bear the initial burden to show cause for lifting the automatic stay. *Sonnax*, 907 F.2d at 1285. "The burden on the movant seeking relief from the automatic stay to prosecute an unsecured claim is heavy," as "[t]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *3 (Bankr. S.D.N.Y. Feb. 28, 2018) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

30.     However, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285; *In re Chittur & Assocs., P.C.,* No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *5–6 (S.D.N.Y. Dec. 18, 2018).

31.     Here, none of the Movants have satisfied the burden of establishing "cause" under section 362(d)(1), and as a result, the Stay Relief Motions should be denied.

---

fiduciary; (4) whether a specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether the debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*

**B.**    **The Debtors' Insurance Coverage Applicable to the Actions is Exhausted or**
         **Unavailable**

32.    Stay Relief Motions expressly cite to the availability of insurance coverage
against liability for a Movant's claims or other assumption of litigation and judgment costs (*i.e.*,
the fifth *Sonnax* factor).  *See* Melgar Mot. ¶ 8; Yednak Mot. ¶ 6; Liberty Mot. at *6.  Movants seek
relief from the automatic stay in order to proceed to recover from insurance coverage for which
Debtors are beneficiary or are otherwise indemnified.  Furthermore, certain of the Movants assert
that Debtors will not suffer any harm if the stay is lifted because they seek only the Debtors'
available insurance coverage.  *See, e.g.*, Melgar Mot. ¶ 13.

33.    As discussed above, the Debtors have determined that applicable insurance
is exhausted or otherwise unavailable to cover damages or costs associated with the Actions.  As
a result, there is little support for Movants' application of the *Sonnax* factors, including—most
obviously—the fifth factor, which considers whether the Debtors' insurer has assumed full defense
responsibility.  If the automatic stay were to be lifted with respect to the Movants' Actions for
which no insurance is available, the Debtors would be forced to directly incur the costs of all legal
fees and expenses to defend their interests or otherwise default and risk unjustified, larger damages
claims.  As additional administrative expense claims, those defense costs are "unquestionably a
factor to be given serious consideration" in the cause inquiry.  *In re Terry*, 12 B.R. 578, 582 (Bankr.
E.D. Wis. 1981).

34.    The Debtors can identify no third parties that will absorb the full costs of
litigation or of a potential judgment in a Movant's favor.  Therefore, the fifth—and most relevant—
*Sonnax* factor weighs against granting the Stay Relief Motions.

11

C.    **Additional *Sonnax* Factors Weigh Against Lifting the Automatic Stay**

35.    Movants argue that the first *Sonnax* factor—whether relief would result in
a partial or complete resolution of the issues—weighs in favor of lifting the stay because
proceeding with the Movants' Actions would allow them to establish liability and damages. *E.g.*,
Liberty Mot. at *9. But lifting the stay merely for this purpose is not necessarily a guarantee of
finality or resolution. *See, e.g.*, *E. Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 171
(2d Cir. 1998) (creditor filing multiple lawsuits against debtors spent the "better part of three years
in a fruitless effort" to obtain agreement or judgment for coverage from asserted third party).
Lingering issues would necessitate Debtor involvement and be a further drain on estate assets.

36.    Furthermore, courts in this District have ruled that satisfaction of the first
*Sonnax* factor is insufficient when complete resolution of a matter would be at a substantial cost,
or may take a long time. *See In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S.
Dist. LEXIS 213968, at *7 (S.D.N.Y. Dec. 18, 2018) (affirming a bankruptcy court decision
denying relief from the stay, and finding that while modification of the automatic stay may well
resolve the matter, it would do so at a substantial cost, and would be subject to a bankruptcy plan
of distribution); *In re SunEdison, Inc.*, 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) (denying relief
from the stay, and finding that "[t]he one factor weighing in favor of granting the *Motion* is that it
will completely resolve the issues between the Debtors and Vivint (Factor # 1). But even then,
final resolution following the exhaustion of the appellate process may be years away, and occur
long after the Debtors have confirmed a plan.").

37.    The second *Sonnax* factor—whether there is a lack of connection or
interference with the bankruptcy estate—does not weigh in favor of lifting the stay. Where there
is a lack of insurance, or even a dispute over the availability of insurance, the Debtors would
inevitably be involved in such discussions, defense of actions, or, at the very least, monitoring of

12

the cases, interfering with the administration of their estates. The automatic stay is meant to shield

debtors from creditor harassment and from a multitude of litigation in a variety of forums at a time

when the Debtors' personnel should be focused on the chapter 11 cases.

38.    Furthermore, permitting the Actions to proceed would be at significant cost

to the Debtors' estates, and would serve to deplete the amounts available to all creditors.  At this

stage of the Debtors' chapter 11 cases, the Debtors cannot make a reasonable business judgment

regarding the expenses that should be incurred in defending the Actions, because they are not in a

position to estimate the recovery available to holders of general unsecured claims.  In contrast, if

the stay remains in place, the proofs of claim filed by Movants would be dealt with as part of the

normal claims reconciliation process, and the Debtors, after consultation with the Creditors'

Committee, would be in a better position to make a reasoned decision regarding the allocation of

resources to dispute such claims.  *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 68 (Bankr.

S.D.N.Y. 2017) (finding that "[f]orcing the Debtors to bear the costs and disruptions involved in

liquidating these unsecured claims before knowing what distribution will be made to unsecured

creditors unnecessarily interferes with the bankruptcy cases and prejudices the unsecured

creditors.").

39.    The fourth *Sonnax* factor, whether a specialized tribunal with the necessary

expertise has been established to hear the cause of action, does not support lifting the stay.  The

Actions here do not present specialized issues that require a specialized tribunal.  The state courts

are not required to be uniquely equipped in order to deal with the straightforward factual issues in

the underlying disputes.  Moreover, for those Movants' Actions are that are in their early stages,

the state courts have had little opportunity to analyze and understand the facts and legal issues of

13

the cases to the extent that would make them "specialized". Accordingly, the fourth *Sonnax* factor

does not support granting relief in these circumstances.

40.     The seventh *Sonnax* factor, which considers whether litigation in another

forum would prejudice the interests of other creditors, similarly weighs against granting the Stay

Relief Motions. Lifting the stay where there is no insurance coverage would result in the Debtors

incurring unnecessary administrative costs to litigate the Movants' Actions before recoveries to

general unsecured creditors become available to them. Should the Lift Stay Motions be granted,

given the scale of the Debtors' prepetition business, further filings of motions to lift the automatic

stay are likely to occur. Simply negotiating and responding to such motions by itself creates

administrative costs that consume estate assets that would otherwise be available for unsecured

creditors. This result would be particularly impactful at this time when the Debtors are nearing

the final stages of their chapter 11 plan proposal process, and where administrative costs will have

a meaningful impact on creditor recoveries. Absent "extraordinary circumstances" the Movants

should be treated in the same manner and on the same timeline as other unsecured creditors. *See*

*Leibowitz*, 147 B.R. at 345.

41.     In the Juiris Motion, Mr. Juiris argues, among other things, that the seventh

*Sonnax* factor weighs in favor of lifting the stay, because, according to Mr. Juiris, the Bond is not

property of the Debtors since a judgment was entered against the Debtors in the lower court. Juiris

Mot. 7(c). Mr. Juiris fails to mention that should Sears succeed in the appeal, it will be entitled to

a return of the Bond, and, therefore, Sears does have an interest in the Bond. Furthermore, until

such time as a judgment is entered on appeal, Sears remains responsible for any defense costs,

including briefing, any discovery, and oral argument. Mr. Juiris cites to *In re Keene Corp.*, 171

B.R. 180, 182 (Bankr. S.D.N.Y. 1994), arguing that this decision is in its favor. However, in

14

*Keene*, the facts were different from those in this case, as in *Keene*, "[t]he parties completed the briefing of the appeals in January 1993, and at that point, awaited scheduling for oral argument." *Id.* at 182. Here, briefing has not been completed, and the parties are not close to a judgment being entered on appeal.

42.     The tenth *Sonnax* factor, whether relief would serve the interests of judicial economy and expeditious and economical resolution of litigation, also does not weigh in favor of lifting the automatic stay. The Debtors are party to numerous prepetition actions. If the Court were to lift the stay with respect to the Movants' Actions, the Debtors and the Court would continue to be inundated with similar requests for stay relief. Indeed, dozens of motions lifting the automatic stay have already been filed in these chapter 11 cases and, in addition, the Debtors are assessing multiple Inquiries being submitted to the Debtors under the Stay Procedures.

43.     The eleventh *Sonnax* factor, whether the parties are ready for trial in the other proceedings, also weighs against lifting the automatic stay in certain circumstances. In the Melgar Action, although depositions have been taken, arbitration proceedings are in progress. Accordingly, this Movant's Action is not 'ready for trial' as contemplated by the eleventh *Sonnax* factor.

44.     The twelfth *Sonnax* factor, which weighs the impact of the stay on the parties and the balance of the harms, does not support lifting the automatic stay. The Debtors have filed the Plan, and expect to have a confirmation hearing on that Plan in July of this year. The Debtors expect that the liquidating trust to be established under the Plan will be handling the claims reconciliation process. The Movants have not demonstrated how they would be prejudiced by waiting for liquidation of their claims in the chapter 11 cases or that they would be more prejudiced than any other potential creditor by waiting for the normal claims reconciliation process. *See, e.g.*,

15

*In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ("Whether awarded such claims sooner rather than later, they are no more prejudiced than any other potential creditor by what the Debtors anticipate will only be a short-term delay until a plan of reorganization is confirmed."); *SunEdison*, 557 B.R. at 309 ("[P]ostponing the liquidation of [movant's] claims will not adversely affect [movant]. The claim will be paid, if at all, under a confirmed plan. Furthermore, although the claim is large, the plan will pay it in 'bankruptcy dollars,' and the terms of a plan will indicate the true worth of the claim to the parties who must spend real dollars to litigate it.").

45.    Movants might argue that the claims are small compared to the Debtors' overall obligations. *See, e.g.*, Melgar Mot. ¶ 12. As explained above, however, the Debtors are party to numerous lawsuits. Indeed, this response addresses only a handful of the stay relief motions filed against the Debtors in these cases, demonstrating only a small portion of the volume of actions pending. Taken together, such lawsuits constitute a meaningful unsecured creditor constituency that the Debtors have an obligation to maximize value for as a whole. Although creditor recoveries are yet to be determined, the administrative costs expended on defending prepetition actions have a disproportionate negative impact on any constituency receiving less than full recovery. At this time, lifting the automatic stay would not expedite any potential recovery on account of these unsecured claims nor would it help to identify recovery amounts.

## Conclusion

46.    For the foregoing reasons, Movants have failed to satisfy their burden to establish cause to lift the automatic stay. Accordingly, the Stay Relief Motions should be denied.

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request

that the Court deny the Stay Relief Motions.

Dated: May 14, 2019
      New York, New York

                          /s/ Garrett A. Fail
                          WEIL, GOTSHAL & MANGES LLP
                          767 Fifth Avenue
                          New York, New York  10153
                          Telephone:  (212) 310-8000
                          Facsimile:  (212) 310-8007
                          Ray C. Schrock, P.C.
                          Jacqueline Marcus
                          Garrett A. Fail
                          Sunny Singh

                          *Attorneys for Debtors
                          and Debtors in Possession*

17

**<u>Exhibit D</u>**

**Debtors' Objection to BRE 312 Owner LLC's Motion for Relief from the Automatic Stay**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
In re                                    :
                                         :        Chapter 11
SEARS HOLDINGS CORPORATION, et al.,      :
                                         :        Case No. 18-23538 (RDD)
                                         :
              Debtors.¹                   :        (Jointly Administered)
                                         :
                                         :
-------------------------------------------------------------x
```

## OBJECTION OF DEBTORS TO MOTION OF BRE 312 OWNER LLC
## <u>FOR RELIEF FROM AUTOMATIC STAY</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abrantes Const. Corp. v. U.S. (In re Abrantes Const. Corp.)*,
132 B.R. 234 (N.D.N.Y. 1991) ...................................................................................9

*In re Artisanal 2015, LLC*,
No. 17-12319, 2017 Bankr. LEXIS 3813 (Bankr. S.D.N.Y. Nov. 3, 2017)............................8

*Chartschlaa v. Nationwide Mut. Ins. Co.*,
538 F.3d 116 (2d Cir. 2008) ...................................................................................6

*Chimera Capital, L.P. v. Nisselson (In re MarketXT Holdings, Corp.)*,
428 B.R. 579 (S.D.N.Y. 2010).................................................................................7

*In re Chittur & Assocs., P.C.*,
No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968 (S.D.N.Y. Dec. 18,
2018)..................................................................................................................9

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l)*,
28 B.R. 324 (Bankr. S.D.N.Y. 1983) .......................................................................13

*In re Congregation Birchos Yosef*,
535 B.R. 629 (Bankr. S.D.N.Y. 2015) .......................................................................7

*In re Containership Co. (TCC) A/S*,
466 B.R. 219 (Bankr. S.D.N.Y. 2012) .....................................................................15

*In re Curtis*,
40 B.R. 795 (Bankr. D. Utah 1984) .........................................................................11

*In re Drexel Burnham Lambert Group Inc.*,
1990 Bankr. LEXIS 2889 (Bankr. S.D.N.Y. Dec. 14, 1990) .............................................12

*Garcia v. Garcia (In re Garcia)*,
494 B.R. 799 (Bankr. E.D.N.Y. 2013) .......................................................................6

*Jimmo v. Burwell*,
2016 WL 4401371 (D. Vt. Aug. 17, 2016)...................................................................6

*In re MarketXT Holdings Corp.*,
No. 04-12078 (ALG), 2009 Bankr. LEXIS 1897 (Bankr. S.D.N.Y. July 20,
2009)................................................................................................................12

WEIL:\97034164\7\73217.0004

*In re Mazzeo*,
    167 F.3d 139 (2d Cir. 1999) ...................................................................8

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
    474 U.S. 494 (1986) ...............................................................................7

*Musso v. Hirsch (In re Hirsch)*,
    2011 U.S. Dist. LEXIS 111561 (E.D.N.Y. Sept. 29, 2011) ..................13

*In re Project Orange Assocs., LLC*,
    432 B.R. 89 (Bankr. S.D.N.Y. 2010) ....................................................14

*In re RCM Global Long Term Capital Appreciation Fund, Ltd.*,
    200 B.R. 514 (Bankr. S.D.N.Y. 1996) ....................................................8

*Red Ball Interior Demolition Corp. v. Palmadessa*,
    173 F.3d 481 (2d Cir. 1999) ...................................................................6

*In re Residential Capital, LLC*,
    519 B.R. 890 (Bankr. S.D.N.Y. 2014) ....................................................6

*In re Residential Capital, LLC*,
    No. 12-12020 (MG), 2012 Bankr. LEXIS 3777 (Bankr. S.D.N.Y. Aug. 16,
    2012)........................................................................................................12

*In re Ross*,
    548 B.R. 632 (Bankr. E.D.N.Y. 2016), *aff'd sub nom. Mendelsohn v. Ross*,
    251 F. Supp. 3d 518 (E.D.N.Y. 2017)......................................................6

*Segal v. Rochelle*,
    382 U.S. 375 (1996) ................................................................................6

*Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
    907 F.2d 1280 (2d Cir. 1990)..........................................................*passim*

*In re SquareTwo Fin. Servs. Corp.*,
    No. 17-10659 (JLG), 2017 Bankr. LEXIS 2570 (Bankr. S.D.N.Y. Sep. 11,
    2017)................................................................................................ 11, 13

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
    803 F.2d 61 (2d Cir. 1986) .....................................................................7

STATUTES

11 U.S.C. § 362(a) ............................................................................................5

11 U.S.C. § 362(d)(1)....................................................................................6, 7

11 U.S.C. § 541(a)(1)........................................................................................5

Illinois Labor Storage Lien Act, 770 ILCS 45/1 .......................................................................10

**OTHER AUTHORITIES**

Uniform Commercial Code § 7-209 ..................................................................................... 9, 10

Uniform Commercial Code § 7-102(13)...................................................................................9

White, Summers, & Hillman, Uniform Commercial Code § 28:25 (6th ed.) .............................10

WEIL:\97034164\7\73217.0004

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, "**Sears**" or the "**Debtors**"), submit this objection to the motion filed by BRE 312 Owner LLC ("**BRE 312**") seeking relief from the automatic stay (ECF 3435) (the "**Motion**"), and respectfully represent as follows:

### Preliminary Statement

1.     BRE 312 requests the extraordinary relief of lifting the automatic stay to conduct a public auction of an iconic, monumental sculpture created by Alexander Calder (the "**Calder**"), whose ownership status is subject to a state court proceeding to which the Debtors are party. While the Calder is indisputably worth many millions of dollars, BRE 312 seeks this relief in order to satisfy less than $50,000 in storage and other costs that BRE 312 alleges it is owed by a third party. In so doing, BRE 312 would hastily dispose of the Calder at a "fire sale," thereby depriving the Debtors and their constituents of the opportunity to realize significant value. This is so because a public auction of the Calder—as opposed to a private sale—would very likely result in a much lower sale price than it would otherwise fetch. Consequently, the relief requested by BRE 312 jeopardizes the Debtors' ability to maximize value on behalf of their estates, their creditors, and all other parties in interest. Moreover, contrary to BRE 312's assertions, the requested relief would necessarily disrupt the state court proceedings by depriving the Debtors of the remedy they seek in the state court litigation. In short, there is hardly a more intrusive or prejudicial step that could be taken than what BRE 312 proposes.

2.     Given the prejudice that the Debtors and their constituencies would suffer, BRE 312 cannot establish its right to the relief requested. Although BRE 312 has cited the seminal case in this Circuit regarding relief from the automatic stay, *In re Sonnax Indus., Inc.*, 907 F.2d

1280, 1285 (2d Cir. 1990), it has failed to even address the twelve factor *Sonnax* test.  Further, an examination of those factors clearly supports denying BRE 312's Motion.  Consequently, the Motion should be denied.

<u>**Background**</u>

3.     Beginning on October 15, 2018 and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in these chapter 11 cases.

5.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6.     On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**"). The Sale Transaction closed on February 11, 2019.

7.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

WEIL:\97034164\7\73217.0004

*Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on October 15, 2018 (ECF No. 3).

## The Dispute Regarding the Calder

8.       233 S. Wacker, LLC ("**233**") currently holds title to the Calder.  However, in 2010, Sears and 233 became embroiled in a lawsuit in Illinois state court regarding Sears' right to purchase the Calder pursuant to an option agreement.  That initial lawsuit was resolved pursuant to a settlement agreement between Sears and 233 in June 2013 (the "**Settlement Agreement**"). The Settlement Agreement provided, among other things, that:  (a) Sears would market the Calder for sale to a third-party during a set period of time; (b) in the event the Calder were not sold during that sale period, Sears would purchase it from 233 for $3,625,000 plus interest; and (c) if the Calder was sold to a third-party during the sale period, the Parties would share in the proceeds pursuant to an agreed-upon payment waterfall.

9.       With no third-party sale having occurred during the sale period, Sears was prepared to purchase the Calder for the agreed price.  233 refused.  Accordingly, Sears filed an action in Illinois state court, Case No. 2016-CH-10308 (the "**State Court Action**"), seeking specific performance of its right to purchase, and 233's obligation to sell, the Calder as provided in the Settlement Agreement.   233 then filed a counterclaim contending that Sears breached an implied duty of good faith and fair dealing in connection with Sears' marketing efforts, and its rejection of an allegedly *bona fide* third-party offer during the sale period.  By Stipulation, Agreement and Order "so ordered" by the court on March 27, 2019 (ECF No. 3019) (the "**233 Stay Relief Order**"), the Debtors agreed to provide 233 with relief from the automatic stay to, *inter alia*, permit 233 to assert, prosecute, and liquidate its counterclaim in the State Court Action.

10.     Fact discovery in the State Court Action is complete, with tens of thousands of pages having been produced, and eleven witnesses having been deposed. Experts and expert opinions have been disclosed and expert discovery is very nearly complete as well.

11.     BRE 312 does not own, and does not claim to own, the Calder. Rather, when BRE 312 acquired the Willis Tower from 233 in 2015, BRE 312 came into possession of the Calder which was on display at the Willis Tower at that time. It agreed, however, that its possession would be subject to the Settlement Agreement between 233 and Sears.

12.     BRE 312 unilaterally removed the Calder from the Willis Tower in March 2017, when it embarked on a voluntary redevelopment of the Willis Tower lobby. To accommodate that redevelopment, BRE 312 had the Calder de-installed by an art professional and moved to storage at an off-site location that specializes in fine art storage. Motion, ¶¶ 10, 11. Neither Sears nor 233 requested that BRE 312 remove the Calder from the Willis Tower, incur storage costs, or put the Calder into storage.

13.     While the Motion is rather vague, it appears that BRE 312 seeks to sell the Calder so that it can recoup storage, transportation, insurance, legal fees, and other costs purportedly associated with removing and storing the Calder. Upon information and belief, the amount of BRE 312's costs and expenses that have not been reimbursed total less than $50,000.[1] Critically, this amount is several orders of magnitude less than the value of the Calder at a private sale.

---

[1] Given that the Debtors do not own the Calder, they are not even liable for the storage costs. Nevertheless, BRE 312 has already filed a proof of claim for asserted prepetition amounts at issue here in the amount of $514,164.13 (Proof of Claim No. 16677), the lion's share of which has already been paid by 233 as a result of BRE 312's setoff against the purchase price paid to 233 for the Willis Tower. The Debtors reserve their rights to separately object to the proof of claim.

WEIL:\97034164\7\73217.0004

14.     Notably, although the Debtors and 233 have been embroiled in a dispute regarding the Calder for several years, the one thing they have been able to agree upon is that granting the relief requested by BRE 312 would cause immeasurable damage to them.[2]  Indeed, both the Debtors and 233 were prepared to resolve the Motion by transferring control over the Calder to 233, which is the current owner of the Calder.  Due to certain additional demands made by BRE 312, however, the parties were not able to finalize an agreement.

## The Motion Should Be Denied

A.     **The Debtors' Interest in the Calder Constitutes Property of the Estate**

15.     The automatic stay protects the Debtors' interests in the Calder.  For example, section 362(a) of the Bankruptcy Code provides, in pertinent part, that "a petition filed under section 301 . . . operates as a stay, applicable to all entities of—

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and]
> (4) any act to create, perfect, or enforce any lien against property of the estate . . . .

11 U.S.C. § 362(a).

16.     Section 541 of the Bankruptcy Code, in turn, defines property of a debtor's estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  In enacting section 541 of the Bankruptcy Code, Congress intended property of the estate to include a broad range of interests.  Collier on Bankruptcy ¶ 541.01 (16th 2019) ("Congress's intent to define property of the estate in the broadest possible sense is evident from the language of the statute which, in section 541(a)(1), initially defines the scope of estate

---

[2] Although both the Debtors and 233 seek denial of the Motion, the Debtors take issue with many of the statements in 233's objection to the Motion (ECF No. 3906) and reserve all of their rights with respect thereto.

WEIL:\97034164\7\73217.0004

property to be all legal or equitable interests of the debtor in property as of the commencement of the case, wherever located and by whomever held.").

17.     Although the Calder itself is not legally owned by the Debtors, the Debtors' interest in the Calder that arises from the Settlement Agreement is property of the estate. As the Second Circuit has held, because the reach of section 541 of the Bankruptcy Code is broad, "contractual rights clearly fall within [its reach]." *See, e.g., Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008); *see Jimmo v. Burwell*, 2016 WL 4401371, at *6 (D. Vt. Aug. 17, 2016) ("In turn, settlement agreements are contracts . . . .") (citing *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999)); *see also In re Ross*, 548 B.R. 632, 637 (Bankr. E.D.N.Y. 2016), *aff'd sub nom. Mendelsohn v. Ross*, 251 F. Supp. 3d 518 (E.D.N.Y. 2017) ("Property is construed most generously and an interest is not outside its reach because it is . . . contingent or because enjoyment must be postponed.") (internal quotations omitted) (citing *Segal v. Rochelle*, 382 U.S. 375, 379 (1996)); *In re Residential Capital, LLC*, 519 B.R. 890, 906 (Bankr. S.D.N.Y. 2014) ("[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541, including causes of action owned by the debtor.") (internal citations and quotations omitted); *Garcia v. Garcia (In re Garcia)*, 494 B.R. 799, 810 (Bankr. E.D.N.Y. 2013) ("As a general rule, contract rights and the interests arising from them are property of the estate.").

18.     Here, the Settlement Agreement gives the Debtors a right to purchase the Calder. Accordingly, the Debtors have interests in the Calder that are "protected from piecemeal dismantling by creditors by the automatic stay." Collier on Bankruptcy ⁋ 541.01 (16th 2019).

**B.     BRE 312 Has Not Shown Cause for Relief From the Stay**

19.     Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such

as by terminating, annulling, modifying, or conditioning such stay—(1) for cause . . . ." 11 U.S.C.

§ 362(d)(1). Courts have noted that the automatic stay is "one of the fundamental debtor

protections provided by the bankruptcy laws." *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dep't*

*of Envtl. Protection*, 474 U.S. 494, 502 (1986). The stay is "designed to give the debtor time to

organize its affairs—which includes protection from having to defend claims brought against the

estate." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *see also*

*In re Congregation Birchos Yosef*, 535 B.R. 629, 633 (Bankr. S.D.N.Y. 2015) (The automatic stay

"serves not only the debtor, but also the debtor's creditors in the collective context of the case by

ensuring the orderly determination of the debtor's liabilities, realization on the estate's assets, and

allocation of that value to creditors and interest holders according to the Bankruptcy Code's

priority scheme and policy of equality of distribution. In a context where every dollar counts, the

automatic stay prevents unilateral races to dismember the debtor and actions outside the

bankruptcy court's supervision with their attendant diversion of resources and impairment of the

debtor's value.") (internal citation omitted). Because "cause" is not defined by section 362(d), the

decision whether to modify the stay is left to the discretion of the bankruptcy court. *Chimera*

*Capital, L.P. v. Nisselson (In re MarketXT Holdings, Corp.)*, 428 B.R. 579, 584 (S.D.N.Y. 2010).

20.     In the Second Circuit, courts weigh twelve factors, known as the "*Sonnax*"

factors," in determining whether the automatic stay should be lifted. *See Sonnax Indus., Inc. v.*

*Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990). The

*Sonnax* factors are:

1. whether relief would result in partial or complete issue resolution;

2. lack of connection with or interference with bankruptcy case;

3. whether the other proceeding involves debtor as fiduciary;

4.  whether a specialized tribunal with necessary expertise has been established to hear cause of action;

5.  whether debtor's insurer has assumed full defense responsibility;

6.  whether the action primarily involves third parties;

7.  whether litigation in another forum would prejudice interests of other creditors;

8.  whether judgment claim arising from other action is subject to equitable subordination;

9.  whether movant's success in other proceeding would result in a judicial lien avoidable by debtor;

10. interests of judicial economy and expeditious and economical resolution of litigation;

11. whether parties are ready for trial in other proceeding; and

12. the impact of stay on parties and balance of harms.

*Id*.

21.    Not all of the factors will be relevant in a given case, and the Court may disregard irrelevant factors.  *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999).  Additionally, courts need not assign equal weight to each factor, and have discretion to weigh the factors against one another.  *See In re Artisanal 2015, LLC*, No. 17-12319, 2017 Bankr. LEXIS 3813, at *46 (Bankr. S.D.N.Y. Nov. 3, 2017); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

22.    In applying the *Sonnax* factors:

[t]he burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in property[.]' If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

*Sonnax*, 907 F.2d at 1285 (internal citations omitted); *see also In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *5-6 (S.D.N.Y. Dec. 18, 2018); *Abrantes Const. Corp. v. U.S. (In re Abrantes Const. Corp.)*, 132 B.R. 234, 247 (N.D.N.Y. 1991).

23.     Given that BRE 312 has not even made an initial showing regarding any of the *Sonnax* factors, the Court could deny the Motion on that basis alone.  Nevertheless, the Debtors submit that application of the *Sonnax* factors weighs heavily in favor of denying the Motion.

    *i.*    ***Whether Relief Would Result in Partial or Complete Issue Resolution (Factor One)***

24.     The State Court Action is close to resolution, and the Court already entered the 233 Stay Relief Order so that 233 can pursue its counterclaims against the Debtors in the Illinois court.  Far from resulting in a complete resolution of all of the issues relating to the Calder, if the Motion is granted, the dispute between Sears and 233 regarding the Calder would become even more complicated and the estates' ability to realize upon the value of the Calder would likely be delayed.

25.     BRE 312's conclusory assertion that it holds statutory liens which entitle it to sell the Calder, for example, are not supported.  *See* Motion ¶ 18.  In fact, BRE 312 has not even attempted to demonstrate that it has any such lien rights.

26.     BRE 312 asserts that it is entitled to a warehouse lien under Section 7-209 of the Uniform Commercial Code ("**UCC**").  But BRE 312 has failed to demonstrate that this section applies.  Specifically, UCC Section 7-209 provides that "[a] ***warehouse*** has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement."  UCC § 7-209 (AM. LAW INST. & UNIF. LAW COMM'N 2017) (emphasis added).  The UCC defines a warehouse as "a person engaged in the business of storing goods for hire."  *Id.* § 7-102(13).  BRE has not

demonstrated, and cannot demonstrate, that it qualifies as a "warehouse" within the ambit of the UCC.

27.    As the owner of the Willis Tower, BRE 312 is a commercial real estate owner and landlord—not a warehouse.  BRE 312 has not alleged, nor proven, that is in the business of storing goods for hire.  Accordingly, BRE 312 cannot qualify as a warehouse under the UCC and does not have a warehouse lien on the Calder pursuant to UCC § 7-209.  *See* White, Summers, & Hillman, Uniform Commercial Code § 28:25 (6th ed.) (providing that a lien would not be valid if the bailee was not a warehouse).  Thus, while the validity of BRE 312's claimed lien would ultimately be adjudicated in Illinois, if the stay is lifted, it is unlikely that BRE 312 would be able to bring itself within the scope of the UCC.

28.    Similarly, contrary to BRE 312's claims, *see* Motion ¶ 20, BRE 312 does not appear able to demonstrate that it is entitled to sell the Calder under the Illinois Labor Storage Lien Act (the "**Illinois Statute**").  Under 770 ILCS 45/1, a lien arises for a person that has "expended labor, skill or materials upon any chattel, or has furnished storage for said chattel, *at the request of* its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof . . . ." 770 ILCS 45/1 (emphasis supplied).

29.    BRE 312's conclusory statement that it has a lien, *see* Motion ¶ 21, would not establish that it has satisfied the requirements of the Illinois Statute.  BRE 312 does not identify the labor, skill, or materials it "expended" that would serve as predicates to such a lien.  Furthermore, in voluntarily removing the Calder from the Tower to pursue its own renovation plans, BRE 312 did not provide storage "at the request of" either 233 (the owner) or Sears.  Accordingly, BRE 312 may not be able to establish as a threshold matter that it would be entitled to the extreme remedy it seeks under applicable non-bankruptcy law.

WEIL:\97034164\7\73217.0004

30.    BRE 312's proposed course of action complicates and hinders the resolution of issues.  Accordingly, the first *Sonnax* factor militates against granting relief from the automatic stay.

*ii.*    ***Lack of Connection With or Interference with Bankruptcy Case (Factor Two)***

31.    The Debtors' interest in the Calder may be a source of significant value to the Debtors' estates.  In connection with its long-running dispute with 233 regarding the Calder, Sears consulted numerous experts regarding the best means for maximizing the value of the Calder.  The advice that Sears received was that a private sale would be the best way to maximize value.

32.    BRE 312 cites to the 2014 $25.9 million auction of Calder's 7 1/2-foot-long hanging mobile, *Poisson Volant (Flying Fish)* (1957) as evidence of the efficacy of public auction.  Motion ¶ 4 n.2.  This comparison ignores the most obvious difficulty in conducting a public sale of the Calder—its size.  The Calder is a 16,000-pound, 33-feet-high by 55-feet-long motorized sculptural installation consisting of five individual components including a massive black helix winding along at ground level.  Motion ¶ 5.  As a result, there is a limited universe of potential buyers.

33.    Particularly in these cases, where administrative solvency has been an issue that has concerned the Debtors and the Court, the Court should not grant relief that might jeopardize the estates' ability to realize that value.

34.    The second *Sonnax* factor militates in favor of denial of the Motion.

*iii.*    ***Whether Other Proceeding Involves Debtor as Fiduciary (Factor Three)***

35.    The third *Sonnax* factor addresses whether the other proceeding involves the Debtors as a fiduciary. "[G]enerally, proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *In re Curtis*, 40 B.R. 795, 799 (Bankr. D. Utah 1984) (internal citation omitted); *In re SquareTwo Fin. Servs. Corp.*, No. 17-10659 (JLG), 2017 Bankr.

LEXIS 2570, at *23 n.11 (Bankr. S.D.N.Y. Sep. 11, 2017); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3777, at *8 (Bankr. S.D.N.Y. Aug. 16, 2012) (finding that without an evidentiary showing that the respondent was acting as a fiduciary, "the third *Sonnax* Factor weighs against lifting the stay.").

36.    The relief that BRE 312 seeks does not involve claims against the Debtors in a fiduciary capacity.  Consequently, the third *Sonnax* factor weighs in favor of continuing the automatic stay.

> ### iv.    *Whether Specialized Tribunal with Necessary Expertise Has Been Established to Hear Cause of Action (Factor Four)*

37.    With respect to the fourth factor, courts generally find that a specialized tribunal is one with specialized knowledge of the specialized issues presented by the litigation. *See, e.g.*, *In re MarketXT Holdings Corp.*, No. 04-12078 (ALG), 2009 Bankr. LEXIS 1897, at *12 (Bankr. S.D.N.Y. July 20, 2009) (finding that the National Association of Securities Dealers is a specialized tribunal with expertise to adjudicate the relevant securities dispute); *In re Drexel Burnham Lambert Group Inc.*, 1990 Bankr. LEXIS 2889, at * 35 (Bankr. S.D.N.Y. Dec. 14, 1990) (referring to the New York Stock Exchange's Hearing Panel as a specialized tribunal with respect to disciplinary proceedings for violation of New York Stock Exchange rules).

38.    The relief sought in the Motion does not implicate a specialized tribunal. In fact, BRE 312 seems to think that this Court can authorize it to conduct an auction of the Calder, without resorting to any other court for approval (a contention with which the Debtors and 233 disagree).

39.    The fourth *Sonnax* factor, therefore, weighs against granting BRE 312 relief from the automatic stay.

> v.      **Whether Debtor's Insurer Has Assumed Full Defense Responsibility (Factor Five)**

40.     Given that the relief that BRE 312 seeks is not to pursue litigation against the Debtors, the fifth *Sonnax* factor is not applicable and does not support the relief requested in the Motion.

> vi.     **Whether The Action Primarily Involves Third Parties (Factor Six)**

41.     The bankruptcy court in *SquareTwo Fin. Servs.* addressed the import of this factor and held that "Factor #6 will weigh in favor of granting stay relief where 'the debtor functions only as a bailee or conduit for the goods or proceeds in question,' and when the action is probably 'unconnected' to the bankruptcy and 'unlikely to frustrate fair and expeditious distribution of the bankruptcy estate.'" *SquareTwo Fin. Servs.*, 2017 Bankr. LEXIS 2570, at *23 n.11 (citing *Musso v. Hirsch (In re Hirsch)*, 2011 U.S. Dist. LEXIS 111561, at *37 (E.D.N.Y. Sept. 29, 2011) (citing *City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983))).

42.     Here, Sears is not functioning merely as a bailee or conduit and is not merely on the sidelines.  In fact, the Debtors have a significant economic stake in the outcome of a sale of the Calder.  In general terms, under the Settlement Agreement, if the Debtors sell the Calder, they will be entitled to keep most of the proceeds, after payment of approximately $3.9 million to 233. Based upon the expected value of the Calder, which is several times the $3.9 million that would be owed to 233, the Debtors have the principal interest in the proceeds of the Calder.

43.     Consequently, the sixth *Sonnax* factor supports denial of the Motion.

WEIL:\97034164\7\73217.0004

vii.     **Whether Litigation in Another Forum Would Prejudice Interests of Other Creditors (Factor Seven)**

44.     BRE 312 does not seek to litigate in another forum but, rather, to sell the Calder via public auction.  Nevertheless, the spirit of the seventh *Sonnax* factor is applicable and supports denial of relief.

45.     The sale of the Calder through a public auction would severely prejudice the Debtors and their constituents by reducing the value of the Debtors' interest in the Calder, potentially by many millions of dollars.

46.     Consequently, granting the relief requested would prejudice the interest of other creditors.  Accordingly, the seventh *Sonnax* factor supports denial of the Motion.

viii.     **Whether Judgment Claim Arising From Other Action is Subject to Equitable Subordination (Factor Eight)**

47.     The Debtors believe this factor is inapplicable.  However, even if it were, this factor should not be given any significant weight.  *In re Project Orange Assocs., LLC*, 432 B.R. 89, 109 (Bankr. S.D.N.Y. 2010) (finding that because neither the eighth nor ninth *Sonnax* factor weighs strongly in favor of lifting the automatic stay "the Court need not consider them equally with the other factors and does not find them dispositive in its determination that the stay should be lifted").

ix.     **Whether Movant's Success in Other Proceeding Would Result in a Judicial Lien Avoidable by Debtor (Factor Nine)**

48.     The Debtors believe this factor is inapplicable.  However, even if it were, this factor should not be given any significant weight.  *Supra* ¶ 47.

x.     **Interests of Judicial Economy and Expeditious and Economical Resolution of Litigation (Factor Ten)**

49.     BRE's proposed course of action does not promote judicial economy or economical resolution of litigation.  The relief sought by BRE is in direct contravention of the

WEIL:\97034164\7\73217.0004

relief sought by Sears in the State Court Action and, undoubtedly, would complicate and delay

that litigation and, ultimately, the Debtors' realization of value for its interest in the Calder.

50.      Moreover, in light of the infirmities in BRE's legal support for its assertion

of a lien, *see supra* ¶¶ 25–29, it is unlikely to be able to effect a prompt sale of the Calder even if

the Motion is granted.

51.      The tenth *Sonnax* factor does not support relief from the stay.

#### xi.      *Whether Parties are Ready for Trial in Other Proceeding (Factor Eleven)*

*52.*    The eleventh *Sonnax* factor, which requires consideration of whether the

parties are ready for trial, is somewhat inapposite here, because BRE 312 is not seeking relief from

the automatic stay to pursue litigation.  *See In re Containership Co. (TCC) A/S*, 466 B.R. 219, 233

(Bankr. S.D.N.Y. 2012).  On the other hand, it is relevant that the State Court Action is nearly

ready for trial and relief from the stay has been granted to pursue that litigation to judgment.  As a

result, the resolution of the dispute that left BRE 312 in possession of the Calder is forthcoming.

53.      The eleventh *Sonnax* factor doesn't support relief from the stay.

#### xii.      *Impact of Stay on Parties and Balance of Harms (Factor Twelve)*

54.      The balance of the harms weighs decidedly in favor of denying the relief

requested in the Motion.  On the one hand, BRE 312 has a claim for less than $50,000, in respect

of which it has not demonstrated that it is entitled to assert a lien under either the UCC or the

Illinois Statute.  And BRE 312 has been offered (and refused) an opportunity to turn over storage

of the Calder to 233.  On the other hand, the Debtors have an interest in the value of the Calder

which they can monetize for millions of dollars, which may be jeopardized by a sale of the Calder

at public auction. Accordingly, the magnitude of the alleged harm to BRE 312 is significantly

outweighed by the harm created by a public auction.

WEIL:\97034164\7\73217.0004

55.    This is not even a close call.  Application of the balancing required by the

twelfth *Sonnax* factor supports denial of the stay relief.

56.    In sum, BRE 312 has failed to establish that any of the *Sonnax* factors

demonstrate cause sufficient to lift the automatic stay.  Rather BRE 312's proposed relief involving

a public auction is an unreasonable remedy that severely prejudices the Debtors and their

constituents by (i) eviscerating the specific performance rights that Debtors are entitled to pursue

in the State Court Action and (ii) imposing substantial risk of impairment to the value of the Calder

that is available for the Debtors' estates.

### Conclusion

57.    For the foregoing reasons, BRE 312 has not established that cause exists for

relief from the automatic stay and the Motion should be denied.

Dated: May 16, 2019
       New York, New York

/s/ Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

-16-