Hearing Date: June 20, 2019 at 10:00 A.M.
Objection Deadline: June 14, 2019 at 4:00 P.M.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------X

## STATEMENT BY SECRETARY OF LABOR IN SUPPORT OF MOTION FOR APPOINTMENT OF A SECTION 1114 RETIREE COMMITTEE

The Secretary (the "Secretary") of the United States Department of Labor (the "DOL"), as its statement in support of the motion for the appointment of a retiree committee under Section 1114 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., in the Chapter 11 Cases of Sears Holdings Corporation and Its Affiliated Debtors (collectively, the "Debtors") represents:

1. Section 1114(d) of the Bankruptcy Code provides for "the appointment of a commitee of retired employees if the debtor seeks to modify or not pay . . . retiree benefits." 11 U.S.C. § 1114(d). A decade ago in <u>In re Delphi Corp</u>., 2009 WL 637315 (Bankr. S.D.N.Y. Mar. 10, 2009), this Court ruled that no court approval was required if a retiree plan granted a debtor the unilateral right to modify or terminate such benefits.

2. On May 8, 2019 the DOL filed an objection (the "DOL Objection") to the Debtors' proposed description of its March 15, 2019 termination of its Retiree Group Life Insurance Plan (the "Retirement Plan") without seeking approval from this Court under Section 1114 and recommended that an official retiree committee be appointed.

3. The DOL Objection centered upon the inherent conflict between the Debtors alleged unilateral right to terminate the Retirement Plan in contrast with the Disclosure

Statement's description of a 2001 court settlement stipulation (the "Stipulation") between the Debtors and the retirement plan participants in which the Debtors "agreed that it would not reduce or terminate the applicable [agreed upon] coverage" provided under the plan. Disclosure Statement for Joint Chapter 11 Plan (Dkt. No. 3276) at 34.

4.      On May 28, 2019 two of the Retirement Plan participants (the "Retirees") filed a motion pursuant to Section 1114 (Dkt. No. 4054, the "Retiree Committee Motion") seeking the appointment of an official retiree committee in order to vindicate the vested rights of the retirees resulting from the Stipulation, which motion is to be heard on June 20, 2019.

5.      It has been agreed that the DOL Objection shall be resolved by advising creditors in a further amended Disclosure Statement of the Retirees' view that their rights are vested and that a retiree committee should be formed. The added language also shall reflect that the Stipulation received court approval.

6.      Having recognized court approval of the Stipulation, there appears to be no substantial legal basis for arguing that the Section 1114 process should not go forward.

7.      As described above, in Delphi this Court found that the debtor had the right to modify retiree benefits without court approval because of the unilateral rights granted to it under the ERISA plans at issue.  Nevertheless, it appointed a retiree committee "to review the factual record to determine whether . . . there is any group of beneficiaries of these plans, any retirees, who would have vested rights, notwithstanding the language of the plan documents." Delphi, 2009 WL 637315 at *8.

8.      While the Debtors still may somehow argue that the language in the Stipulation did not bar their unilateral termination of the Retirement Plan, that is an issue requiring the appointment of a committee to defend the rights of retirees rather than leaving them defenseless.

9. The Debtors state in the Disclosure Statement that they "do not currently have information with respect to the identities of the retirees that were covered by the Stipulation." Second Amended Disclosure Statement at 37. The relevant information may not be as difficult to generate as the Debtors suggest, particularly because at the confirmation stage all that would be needed is a good estimate of the aggregate amount of money needed to fund a "Retiree Reserve."

10. For example, the Stipulation itself, a copy of which is annexed to the DOL Objection, states that "[a] List of the class members identified by Sears is appended to the Stipulation as Exhibit I." Stipulation at ¶ 4.1. The Debtors have stated that approximately 29,000 of the retirees whose benefits were terminated in March, 2019 were covered under a Securian Group Life Insurance Policy (the "Securian Policy") and an additional 12 under an Allstate Financial Supplemental Group Life Insurance Plan (the "Allstate Policy" and collectively, the "Policies"). Id. A comparison of the names on Exhibit I with those covered under the Policies should identify which of the existing retirees are vested. As these Policies were terminated only three months ago, current information on the details of the benefits should be readily available. The amount in life insurance benefits paid out under the Policies to the beneficiaries of vested retirees covered by the Stipulation in the months prior to the Policies' premature termination could serve as a primary source of information for estimating the amount to be placed in the Retiree Reserve.

11. Funding of a Retiree Reserve should not be viewed as causing a loss to other creditors. If it is determined that the Section 1114 process should have been undertaken before the Retirement Plan was terminated then the savings in premiums resulting from that wrongful

3

termination will likely go far in covering the cost of the relief ultimately granted under Section 1114.

12. In enacting Section 1114 Congress "recognize[d] the conflict between the interests of all other unsecured creditors in a Chapter 11 proceeding and the special problems associated with the cut-off of health and insurance benefits to retirees." S. Rep. No. 119, 100th Cong. 1st Sess., 1987 WL 61477 at 684 (July 17, 1987). It concluded that "[t]he special treatment accorded retiree benefit payments [in Section 1114] is appropriate because of the hardship imposed on elderly recipients when such benefits are suddenly curtailed." Id.

13. It is respectfully submitted that a failure to establish a retiree committee would constitute an unwarranted failure to respect Congress's decision to ensure that the rights of retirees are not unfairly ignored.

14. Accordingly, the Secretary respectfully reiterates and joins with the request of the Retirees for the appointment of a retiree committee in these cases.

Dated: June 14, 2019
Washington, D.C.

                KATE S. O'SCANNLAIN
                Solicitor of Labor

                G. WILLIAM SCOTT
                Associate Solicitor
                  for Plan Benefits Security

                JOANNE ROSKEY
                Deputy Associate Solicitor
                  for Plan Benefits Security

                s/Leonard H. Gerson
                LEONARD H. GERSON
                Trial Attorney
                U.S. Department of Labor
                Office of the Solicitor
                Plan Benefits Security
                200 Constitution Ave. N.W.

Room N-4611  
Washington, D.C. 20210  
(202) 693-5615  
gerson.leonard@dol.gov

<u>Certificate of Service</u>

    I hereby certify that on the 14th day of June, 2019, I caused a copy of the foregoing pleading to be served through the Court's ECF system.

                                                        <u>s/Leonard H. Gerson</u>