WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                                   :

In re                                                :         Chapter 11
                                                     :

**SEARS HOLDINGS CORPORATION,** *et al.*,    :         Case No. 18-23538 (RDD)
                                                   :
                     Debtors.[1]                        :         **(Jointly Administered)**
                                                   :
---------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

**CERTIFICATE OF NO OBJECTION REGARDING APPLICATION
OF DEBTORS FOR ENTRY OF ORDER AUTHORIZING THE
EMPLOYMENT AND RETENTION OF ACUMEN RECOVERY SERVICES,
LLC TO PROVIDE PREFERENCE ACTION RECOVERY AND ANALYSIS
SERVICES TO THE DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Pursuant to 28 U.S.C. § 1746 and Rule 9075-2 of the Local Bankruptcy Rules for the Southern District of New York, the undersigned hereby certifies as follows:

1. Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code.

2. On June 6, 2019, the Debtors filed the *Application of Debtors for Entry of Order Authorizing the Employment and Retention of Acumen Recovery Services, LLC to Provide Preference Action Recovery and Analysis Services to the Debtors, Effective Nunc Pro Tunc to April 1, 2019* (ECF No. 4137) (the "**Application**").

3. The Debtors served the Application as reflected in the affidavit of service filed at ECF No. 4193.

4. The Application established a deadline (the "**Objection Deadline**") for parties to object or file responses to the Application for **June 13, 2019 at 4:00 p.m. (prevailing Eastern Time)**. The *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**") provides that a motion or application may be granted without a hearing, provided that no objections or other responsive pleadings have been filed after the passage of the Objection

2

Deadline and the attorney for the entity who filed the pleadings complies with the terms of the Amended Case Management Order.

5. The Objection Deadline has passed and, to the best of my knowledge, no objection, responsive pleading, or request for a hearing with respect to the Application has been (a) filed with the Court on the docket of the above-captioned case or (b) served on counsel to the Debtors.

6. Accordingly, the Debtors respectfully request that the proposed order granting the relief requested in the Application, annexed hereto as **Exhibit A**, be entered in accordance with the Amended Case Management Order.

I declare that the foregoing is true and correct.

Dated: June 18, 2019
     New York, New York

                                        /s/ Garrett A. Fail
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York  10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Ray C. Schrock, P.C.
                                        Jacqueline Marcus
                                        Garrett A. Fail
                                        Sunny Singh

                                        *Attorneys for Debtors*
                                        *and Debtors in Possession*

## Exhibit A

**Proposed Order**

WEIL:\97075251\2\73217.0004

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                       :
                                                            :     **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,                   :
                                                            :     **Case No. 18-23538 (RDD)**
                                                            :
Debtors.[1]                                                 :     **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

### ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ACUMEN RECOVERY SERVICES, LLC TO PROVIDE PREFERENCE ACTION RECOVERY AND ANALYSIS SERVICES TO THE DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO APRIL 1, 2019

Upon consideration of the application (the "**Application**")[2] of the Debtors for entry of an order (this "**Order**") authorizing the Debtors to retain and employ Acumen Recovery Services, LLC ("**Acumen**") to provide preference action recovery and analysis services to the Debtors *nunc pro tunc* to April 1, 2019, on the terms and conditions set forth herein and in the engagement agreement between Acumen and Sears Holdings Corporation dated as of April 1, 2019

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used, but not otherwise defined herein, shall have their meanings ascribed to such terms in the Application.

(the "**Engagement Letter**") and granting related relief, all as more fully set forth in the Application; and upon the declaration of Michael A. Cohen, as Chief Executive Officer of Acumen, annexed to the Application as **Exhibit B** (the "**Cohen Declaration**") and the declaration of Mohsin Meghji, Chief Restructuring Officer of the Debtors, attached to the Application as **Exhibit C** (the "**Meghji Declaration**"); and the Court being satisfied, based on the representations made in the Application and the Cohen Declaration, that Acumen is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code, and that Acumen neither represents nor holds any interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged; and the Court having jurisdiction to decide the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Application and the opportunity for a hearing thereon having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Application is granted as set forth in this Order *nunc pro tunc* to April 1, 2019.

2. The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, to engage Acumen to provide preference action recovery services to the Debtors *nunc pro tunc* to April 1, 2019, pursuant to the terms of the Application and the Engagement Letter, annexed hereto as **Exhibit 1**.

3. All of Acumen's compensation as set forth in the Engagement Letter including, without limitation, the Contingency Fee Schedule, the Expenses, and related obligations are approved pursuant to section 328(a) of the Bankruptcy Code and Acumen shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of, and at the times specified in, the Engagement Letter.

4. Acumen shall apply for allowance of compensation for Services rendered and reimbursement of Expenses incurred by filing (i) short-form quarterly statements that include the amount of fees paid based on the Contingency Fee Schedule and a reasonably detailed itemization of Expenses incurred and paid and (ii) upon the conclusion of its services, a final fee application for final allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court; *provided that*, Acumen shall be compensated and reimbursed pursuant to Bankruptcy Code section 328(a) and that Acumen's fees and expenses shall not be subject to review under the standard set forth in section 330 of the Bankruptcy Code; *provided further that*, such fees and expenses shall be paid by the Debtors as and when due as set forth in the Engagement Letter without the need to file

3

monthly statements; *provided further that*, for the avoidance of doubt, such fees and expenses shall be subject to review and approval in any quarterly statements and final fee application.

5. Notwithstanding anything to the contrary herein, the Office of the United States Trustee for the Southern District of New York shall have the right to object to Acumen's interim and final fee applications (including expense reimbursement) on all grounds, including the reasonableness standard provided in section 330 of the Bankruptcy Code.

6. Notwithstanding anything to the contrary, Acumen shall be excused from time-keeping reporting requirements in applying for allowance of compensation for Services authorized herein.

7. None of the fees payable to Acumen shall constitute a "bonus" or fee enhancement under applicable law.

8. To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern. To the extent that there may be any inconsistency solely between the terms of the Application and the Engagement Letter, the terms of the Engagement Letter shall govern.

9. The relief granted herein shall be binding upon any chapter 11 trustee appointed in the chapter 11 cases, any trustee of a trust to which the Katten/Acumen Actions are assigned in connection with confirmation of a chapter 11 plan, or any chapter 7 trustee appointed in the event of a subsequent conversion of the chapter 11 cases to cases under chapter 7.

10. The terms and conditions of this Order are immediately effective and enforceable upon its entry.

11. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

4

12. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
      White Plains, New York

                                              THE HONORABLE ROBERT D. DRAIN
                                              UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

**Engagement Letter**

**Acumen Recovery Services, LLC Engagement Agreement**

This Agreement is entered into as of April 1, between Acumen Recovery Services, LLC ("**Acumen**") and Sears Holdings Corporation and its debtor affiliates in the jointly administered chapter 11 cases of *In re Sears Holdings Corporation, et al.*, Case No. 18-23538 (RDD) (the "**Bankruptcy Case**"), and their successors and assigns (collectively, the "**Client**"). In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

    (a) Acumen agrees to provide the Client, its attorneys, other professionals and advisors with services in anticipation of and in connection with litigation, including, but not limited to, analyzing, pursuing and/or settling certain avoidance actions against non-insider non-affiliate transferees arising under chapter 5 of title 11 of the United States Code and/or analogous state law assigned to Acumen or otherwise identified by the Client (collectively, the "**Preference Actions**") in connection with the Bankruptcy Case, and any other services agreed upon by the parties (all such services collectively, the "**Services**.")

    (b) The Client acknowledges and agrees that Acumen will often take direction from the Client's attorneys, representatives, employees, agents and/or professionals (collectively, the "**Client Parties**") with respect to providing the Services. The parties agree that Acumen may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client.

    (c) While Acumen may facilitate Client's attorneys' ability to give legal advice and assisting the Client's attorneys in providing legal services, the Client agrees and understands that Acumen shall not provide the Client or any other party with legal advice.

2. **Fees and Expenses**

    (a) Acumen understands that the Client is separately retaining Katten Muchin Rosenman LLP ("**Katten**") as legal counsel in connection with the Preference Actions, on terms substantially similar to those described below, Katten and Acumen will work together to analyze and pursue the Preference Actions. In addition, the Client is retaining ASK LLP ("**ASK**") to analyze and pursue a separate group of avoidance actions (collectively with the Preference Actions, the "**Sears Actions**").

    (b) Client agrees that Acumen shall earn fees on a contingency basis equal to the following:

        i. Tier 1: If the total amount of the gross proceeds recovered on account of the Preference Actions (the "**Gross Proceeds**") obtained is less than $25 million, Acumen shall be paid 3.5% of the Gross Proceeds obtained in any Preference Action settled prior to the filing of a complaint and 3.5% of the Gross Proceeds obtained after the filing of a complaint.

        ii. Tier 2: If the total amount of Gross Proceeds obtained is between $25 million and $50 million, Acumen shall be paid 6% of the Gross Proceeds obtained in any Preference



Action settled prior to the filing of a complaint and 6% of the proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply retroactively to all Gross Proceeds obtained in connection with the matter prior to the $25 million threshold being met (i.e., after the $25 million threshold is achieved, the foregoing percentages shall apply to all Gross Proceeds obtained, beginning with the first dollar of Gross Proceeds obtained).

    iii. <u>Tier 3</u>: If the total gross amount of Gross Proceeds obtained is more than $50 million, then (i) through and including the date that is eighteen (18) months after the date on which the Bankruptcy Court approves Katten's and Acumen's engagement (the "**Outside Date**"), Acumen shall be paid 10% of the gross proceeds obtained in any Preference Action settled prior to the filing of a complaint and 7% of the Gross Proceeds obtained after the filing of a complaint, and (ii) after the Outside Date, Acumen shall be paid 6% of the Gross Proceeds obtained in any Preference Action settled prior to the filing of a complaint and 6% of the Gross Proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply only to Gross Proceeds above $50 million.

    iv. Subject to Bankruptcy Court approval, the Board of Directors of Sears Holdings Corporation (prior to the effective date of a Chapter 11 plan) and the liquidating trustee (after the effective date of a Chapter 11 plan) shall have the discretion to increase the contingency fee percentages set forth above and/or award a bonus to Acumen.

(c) If payment-in-kind, a claim waiver or other non-cash consideration is a component of the resolution of a Preference Action, Acumen will receive credit for such consideration to the extent provided for herein. With respect to waivers of secured claims, administrative claims and other priority claims, the amount credited will be equal to 100% of the scheduled, agreed or allowed amount of the claim. With respect to waivers of general unsecured claims, the amount of such credit will be calculated based on the amount of the anticipated distribution to the applicable claimant under an approved chapter 11 plan or, if no plan has been approved, the estimated distribution pursuant to an approved plan disclosure statement, or otherwise, on the claim being waived, with such amount constituting the Gross Proceeds of the applicable Preference Action. *For example, if a transferee waives a $100,000.00 general unsecured claim, and the distribution on such claim would be (under a plan) or is anticipated to be (pursuant to a disclosure statement) 10%, the Gross Proceeds of the settlement attributed to the claim waiver would be $10,000.00.* With respect to payment-in-kind, or other non-cash consideration, the credit amount shall be approved by the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "**Restructuring Committee**"). For the avoidance of doubt, notwithstanding the inclusion of any non-cash recovery component in calculating Gross Proceeds, any payment to Acumen shall be limited to the cash proceeds actually recovered from the Preference Actions.

(d) Out-of-pocket third-party expenses, including but not limited to, data transfer, storage and management, postage, travel expenses, entity verification fees, adversary proceeding and other court filing fees, process service fees and telephone charges, but shall not include secretarial or other labor costs, will be charged against the Gross Proceeds. Acumen will store all physical and electronic records without any charge.



(e) The Client will be responsible for the payment of fees and expenses of Katten and ASK as well as other legal counsel that may be retained. The Client shall pay the fees and expenses relating to mediation and expert witnesses, including any experts and other professionals required to respond to a defendant's "objective" ordinary course of business defense. Acumen will defer to the Client, its attorneys and its advisors with respect to the decision to hire any experts, attorney's fees and expert witness fees. Any experts or third-party professionals who are retained to prove insolvency or to respond to a defendant's "objective" ordinary course of business defense are to be separately retained and shall not be considered part of this engagement.

3. **Invoicing and Payment**

(a) Acumen will open up a segregated account in connection with this engagement (the "***Proceeds Account***"). Acumen will deduct expenses and costs from Gross Proceeds once per month. Acumen will make monthly remittances, net of Acumen/Katten's fees and expenses, to the designated recipient. Acumen will also make wire transfers to the chosen account. As part of the remittance, Katten and Acumen will provide monthly reports to the Client, with a copy to counsel to the official committee of unsecured creditors ("***Creditors' Committee Counsel***") summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection. In the event there are insufficient Gross Proceeds in a given month to cover Acumen's expenses and costs, Acumen will record the deficiency and will deduct such deficiency from Gross Proceeds obtained in the following month(s) to the extent available. For the avoidance of doubt, Acumen will not be reimbursed for any expenses and costs exceeding Gross Proceeds. If Katten/Acumen is required to remit Gross Proceeds, then we expect payment of our respective invoices within 10 days of presentation, or as soon as practicable as allowed by the Bankruptcy Court. Katten and Acumen will also send monthly status reports to the Client, with a copy to Creditors' Committee Counsel, detailing the status of all pending cases that remain open for collection.

4. **Confidentiality**

(a) The Client and Acumen agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.
(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

5. **Property Rights**

Acumen reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other

3



information or property (collectively, the "*Property*") furnished by Acumen for itself or for use by the Client hereunder. Fees and expenses paid by the Client do not vest in the Client any rights in such Property. Such Property is only being made available for the Client's use during and in connection with the Services provided by Acumen hereunder.

6. **Bank Accounts**

At the request of the Client or the Client Parties, Acumen shall be authorized to establish accounts with financial institutions in the name of and as agent for the Client, including the Proceeds Account.

7. **Term and Termination**

    (a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "*Cause*" means (i) gross negligence or willful misconduct of Acumen or Katten that causes material harm to the Client, (ii) a determination, decree, rule, guideline, order or statement of similar formality is issued by any court or government agency finding or recommending that Acumen or Katten not be permitted to serve as a professional for or advisor to a debtor, official committee, trustee or other fiduciary in a bankruptcy case, or (iii) the Restructuring Committee reasonably determines that Acumen or Katten has generally failed to prosecute or has abandoned prosecution of the Preference Actions.

    (b) If the Client elects to terminate this agreement without Cause, including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue Katten's and Acumen's engagement in accordance with their respective engagement letters), the Client will remain obligated to pay Acumen its contingency fee amount earned as of the date of termination and all fees based on recoveries in the Preference Actions for a period extending twelve months after the date of termination ("*Tail Compensation*"). If Acumen voluntarily terminates this agreement or Client terminates this agreement for Cause, Acumen shall be entitled to no fee payments hereunder, including the Tail Compensation, but shall be entitled to receive 100% of expenses and disbursements advanced, which amounts shall only be payable from, and at the time of the Client's receipt of, any cash proceeds actually recovered. For the avoidance of doubt, Tail Compensation shall be determined using the same compensation tiers as set forth above and in determining the amount of Tail Compensation to which Acumen is entitled shall count all Gross Proceeds received prior to Acumen's termination without cause.

8. **Client Data**

    (a) The Client agrees, represents and warrants to Acumen that before delivery of any information to Acumen: (i) the Client has full authority to deliver such information to Acumen; and (ii) Acumen is authorized to use such information to perform Services hereunder.

    (b) Any data, storage media, programs or other materials furnished to Acumen by the Client may be retained by Acumen until the Services provided hereunder are paid in full. The Client shall remain liable for all fees and expenses incurred by Acumen under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Acumen. Any such disposal shall be in a manner requested by or acceptable to the Client.

4



9. **Force Majeure**

Whenever performance by Acumen of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Acumen's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

10. **Choice of Law**

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

11. **Integration; Severability; Modifications; Assignment**

    (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

    (b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

    (c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Client and an officer of Acumen.

    (d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Acumen may assign this Agreement to a wholly-owned subsidiary or affiliate without the Client's consent.

12. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

13. **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

    If to Acumen:    Acumen Recovery Services, LLC
                          747 Third Avenue, 2nd Floor
                          New York, NY 10017
                          Attn: Michael A. Cohen
                          Email: mcohen@acumenrecovery.com



If to the Client:    Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attn: Mohsin Y. Meghji
Chief Restructuring Officer
Email: mmeghji@miiipartners.com

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

Acumen Recovery Services, LLC

By: Michael A. Cohen
Title: Chief Executive Officer


Sears Holding Corporation on behalf of itself and its Debtor Affiliates

By:
Title:    M. Y. MEGHJI
C.R.O.

6