Hearing Date:  June 20, 2019 at 10:00 a.m.
Objection Deadline:  June 14, 2019 at 4:00 p.m

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
James N. Lawlor
Cassandra Postighone
        -and-
THE LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Telephone:  312-263-0272
Michael M. Mulder*
Elena N. Liveris*
*Pro hac application pending

*Attorneys for Richard Bruce and Ronald Olbrysh*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No: 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al*, | Chapter 11 |
| | (Jointly Administered) |
| Debtors. | |

## REPLY IN FURTHER SUPPORT OF MOTION OF RETIREES PURSUANT TO SECTION 1114(d) OF THE BANKRUPTCY CODE DIRECTING THE APPOINTMENT OF A COMMITTEE OF RETIRED EMPLOYEES

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

REPLY TO DEBTORS' FACTUAL BACKGROUND .................................................................3

ARGUMENT ...................................................................................................................................7

    A.  The Settlement Remains the Governing Agreement Between the Retirees and Sears ........7

    B.  The Appointment of a Committee in This Case Is Not Discretionary ...............................8

    C.  Section 1114 Is Enforceable When There Is A Liquidating Plan Being Proposed .............9

    D.  The Court Should Permit the Committee to Be Formed and Work Without Restrictions
        Proposed by the Parties Holding Adverse Interests ..........................................................12

CONCLUSION ..............................................................................................................................13

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                          <u>Page(s)</u>

*In re Chicago Constr. Specialties, Inc.*,
   510 B.R. 205 (Bankr. N.D. Ill. 2014).................................................................................. 10

*In re Delphi Corp.*,
   2009 WL 637315 (Bankr. S.D.N.Y. Mar. 10, 2009).............................................................. 2

*In re GF Corp.*,
   120 B.R. 421 (Bankr. N.D. Ohio 1990) .............................................................................. 10

*In re Ionosphere Clubs, Inc.*,
   134 B.R. 515 (Bankr. S.D.N.Y. 1991) ............................................................................ 9, 10

*King v. Allied Vision, Ltd.*,
   65 F.3d 1051 (2d Cir. 1995)................................................................................................... 7

*Law v. Siegel*,
   571 U.S. 415, 134 S. Ct. 1188 (2014) ................................................................................. 11

*Loral Stockholders Prot. Comm. v. Loral Space & Comm. Ltd. (In re Loral Space & Comm. Ltd.)*,
   2014 WL 2979785 (S.D.N.Y. Dec. 23, 2004)........................................................................ 9

*Norwest Bank Worthington v. Ahlers*,
   485 U.S. 197 (1988) ............................................................................................................. 11

*Shenandoah Valley Broad., Inc.)*,
   331 F.2d 117 (2d Cir. 1964).................................................................................................... 7

*Tourangeau v. Uniroyal, Inc.*,
   101 F.3d 300 (2d Cir. 1996).................................................................................................... 7

*United States v. Armour & Co.*,
   402 U.S. 673 (1971) ............................................................................................................... 7

*United States v. Nolan*,
   517 U.S. 535 (1996) ............................................................................................................. 11

*United States v. Reorganized CF & I Fabricators of Utah, Inc.*,
   518 U.S. 213 (1996) ............................................................................................................. 11

**Statutes**

11 U.S.C. § 1104(c)(2)...................................................................................................... 9

11 U.S.C. § 1113............................................................................................................. 10

11 U.S.C. § 1114...................................................................................................... 1, 2, 8, 9

11 U.S.C. § 1114(d) ..................................................................................................... 1, 8, 9

TO:   **THE HONORABLE ROBERT D. DRAIN**
      **UNITED STATES BANKRUPTCY JUDGE**

Sears Roebuck retirees, Richard Bruce ("**Bruce**") and Ronald Olbrysh ("**Olbrysh**" and together with Bruce, the "**Retirees**"), by and through their undersigned counsel, respectfully submit this reply in further support of its Motion for appointment of a retiree committee under 11 U.S.C. Section 1114, for the above captioned chapter 11 debtors, and in reply to the Debtors' objection to the Motion, and in support, they represent as follows:

## PRELIMINARY STATEMENT

The Debtors[1] have objected (the "**Objection**") to the Retirees' request for a retiree committee to protect the vested benefits of 29,000 former employees, benefits that were unilaterally, and improperly, terminated. The Official Committee of Unsecured Creditors (the "**Creditors Committee**") has joined in that objection. The Objection is based on the faulty premise that a summary of the benefit plan issued in 2007 – not the actual plan documents and not a court-approved class action settlement – control whether the benefits are vested. The Debtors argue that several provisions of the summary render the benefits terminable at will. The Debtors are wrong.

The Stipulation of Settlement was approved by a federal district court and is the governing document as a matter of law. Courts in this Circuit enforce such settlements and reject subsequent attempts to rewrite them more favorably. Thus, the summary relied upon by the Debtors cannot, as a matter of law, alter that settlement agreement's binding terms. Moreover, the summary's language itself renders it subject to the plan documents, which the Debtors have yet to provide.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion of Retirees Pursuant to Section 1114(d) of the Bankruptcy Code Directing the Appointment of a Committee of Retired Employees dated May 28, 2019 (Dckt. No. 4054).

The Retirees submit that it is highly likely that the plan documents comply with the Stipulation of

Settlement's requirement of permanent vesting, as the Debtors appear to confirm in a July 26, 2010

Notice:

> Sears Holdings Corporation (including its affiliates) reserves the
> right to change or terminate any or all benefit plans at its
> discretion, **subject to the 2001 Settlement Agreement**. With
> respect to the coverage provided under the Sears Retiree Group
> Life Insurance Plan to covered retires who made a proper claim
> under the 2001 Settlement Agreement for the litigation known as
> "In re Sears Retiree Group Life Insurance Litigation", Sears
> Holdings Corporation **has agreed not to make any additional
> changes**. [emphasis added].

*See* Exhibit D hereto, at 2.  Regardless, the Stipulation of Settlement is the governing document as

to the vesting of the retiree benefits.

The remaining arguments by the Debtors are an attempt to legislate by asking the Court to

write Section 1114 out of existence in the liquidating plan context and to use the Debtors' own

lack of diligence and precarious financial situation as grounds to deny or limit meaningful relief

to the aggrieved parties.  The cases are uniform in their rejection of the Debtors' argument that

this Court may ignore the clear language of Section 1114.  There is also no valid reason not to

appoint a committee at this stage of the case.  The Retirees moved promptly and the limited role

and scope of any such committee will not undermine any plan.

Finally, as noted in the Motion, and as further explained in the June 14, 2019 submission

of the United States Department of Labor (the "DOL") supporting the Motion (Dckt. No. 4237),

the Debtors acted unilaterally to terminate Retirees' vested benefits without court involvement,

which runs directly counter to this Court's decision in *In re Delphi Corp.*, 2009 WL 637315

(Bankr. S.D.N.Y. Mar. 10, 2009).  The DOL and the Retirees request for the appointment of a

Retiree Committee is based on the Debtors admission that their predecessors entered the 2001

2

Stipulation of Settlement that bars termination, which establishes that the retirees benefits vested.

Even if there is a dispute over vesting, a committee is required under the rational of *Delphi*.

### REPLY TO DEBTORS' FACTUAL BACKGROUND

The Debtors make a number of assertions in the Objection regarding the governing

documents that purportedly trump the Stipulation of Settlement. (The Stipulation of Settlement

was previously provided by the Department of Labor as an attachment to an objection to the

Debtors' disclosure statement, but that version omitted a signature page. For the parties and

Court's convenience, a complete copy of the stipulation is annexed hereto as **Exhibit A**, which

contains the signatures of the Debtors' predecessors).

The first erroneous assertion is that the Court and the parties should rely on the 2007

Summary Plan Document ("**SPD**") attached to the Objection as Exhibit B as the definitive

document. Since the Motion was filed, the Retirees have been able to locate a number of

documents as set forth below that suggest the SPD is hardly reliable.

Second, the fact that the Retirees have been able to locate additional documents suggests

that the Debtors' due diligence has not been adequate. In addition to the Stipulation of

Settlement, the Debtors apparently failed to uncover what are multiple notices and plan

documents that relate to the Stipulation of Settlement.

Third, the Debtors' reliance on the SPD as a stand-alone document raises more issues

than it addresses. The SPD expressly states that "[t]he Plan is a Group Life Insurance Plan

governed by the Company's group insurance policy with Metropolitan Life Insurance Company

(MetLife), 200 Park Avenue, New York, NY 10166. The Group Policy **is the controlling**

**document** in all respects." *See* SPD at 18. The Debtors' continued reliance in view of that

language is questionable, at best.

3

And while the Debtors claim that the benefit plan was never amended, they have not

provided copies of the plan documents or even sworn statements to that effect.  Instead, the

Debtors allege that the SPD contains a reservation of rights language that allows the Debtors to

terminate at will and also rendered the benefits subject to further unilateral modifications as if

the SPD constitutes the plan document.[2]

Fourth, there are a series of documents that the Retirees have obtained that conflict with

the SPD.  For example, the class of retirees in the Sears Life Insurance Litigation covered by the

Stipulation of Settlement and impacted by the Debtors' improper termination, were notified by a

letter on Sears letterhead dated September 12, 2002 (the "**2002 Sears Notice**"), that Sears was

"**permanently** restoring one annual increment of your Sears-provided retire life insurance

[emphasis added]."  A copy of the 2002 Sears Notice is annexed hereto as **Exhibit B**.

Shortly after the SPD was issued, in March 2007, Sears had to issue as required by

ERISA a Notice of Material Modification to the retirees because the SPD contained an error (the

"**March 2007 Notice**").  Annexed hereto as **Exhibit C** is a copy of the March 2007 Notice

issued to one such retiree, Thomas Shaw.  Sears, the Plan Administrator, acknowledges in that

notice that the reduction schedule in the SPD was incorrect, because it failed to recognize that for

class members who filed a claim under the Stipulation of Settlement, Sears would forgo one

year's life insurance reduction resulting in a policy with a value greater than the minimum

guaranteed insurance of $5,000.  In other words, the 2007 SPD had to be revised in conformity

with the Stipulation of Settlement.

---

[2] The Debtors have not submitted an affidavit or a declaration that the SPD is consistent with the
actual plan documents.  Without a complete set of the alleged controlling documents, neither the
parties nor the Court can be certain of what those documents state.

4

The 2007 SPD's infirmities can be seen by still other plan-related notices and documents

issued by Sears.  By letter dated July 26, 2010, Sears notified the class members that the provider

of the group policy had changed to Prudential Life Insurance Company of America (the "**2010**

**New Provider Notice**").  Annexed hereto as **Exhibit D** is copy of the 2010 New Provider

Notice.  Page two of that notice expressly provides the following in a footnote:

> Sears Holdings Corporation (including its affiliates) reserves the
> right to change or terminate any or all benefit plans at its
> discretion, **subject to the 2001 Settlement Agreement**.  With
> respect to the coverage provided under the Sears Retiree Group
> Life Insurance Plan to covered retires who made a proper claim
> under the 2001 Settlement Agreement for the litigation known as
> "In re Sears Retiree Group Life Insurance Litigation", Sears
> Holdings Corporation **has agreed not to make any additional
> changes**. (emphasis added).

Sears' own contemporaneous document makes clear that the benefit plan is governed first and

foremost by the Settlement.

Even if the Debtors could have reasonably relied solely on the 2007 SPD, they should have

discovered an internal inconsistency.  The SPD was issued as the reduction of life insurance over

a ten year period was at an end.  If Sears had relied upon the reduction schedule in the SPD without

modification, **all the retirees** should have ended up with $5,000 in life insurance.  *See* SPD at 9.

The Debtors nonetheless admit in the Objection that the retirees are entitled to insurance in a

$5,000 to $14,500 range, Objection at ¶ 11, the same range that was imposed by the March 2007

Notice of Material Modification required by the Stipulation of Settlement as discussed above.

The Debtors make a number of additional factual claims, suggesting that it is somehow

meaningful that just two retirees have sought relief and, later in the Objection, claiming that even

5

those employees delayed too long.[3]  The Retirees, however, are the Chair and Benefits Director of a national organization of former Sears employees, an organization with many Class members that have expressed substantial interest in serving on a committee.  The Motion was also brought just two months after the termination notice was sent by Sears and less than a month after the grace period expired for conversion at the employees' expense.

It should also not be overlooked that the Retirees have come to learn that at least two similarly situated retirees have died since the plan was improperly terminated.  If the Retirees are correct, the beneficiaries hold administrative claims between $5,000 and $14,500.  And the potential for more such claims continues to grow as retirees pass away.

Finally, despite claims to the contrary, the Debtors have access to the necessary records to determine the life insurance amounts, the identity and the contact information of all the impacted retirees, as evidenced by the March 15, 2019 Notice – Termination of Retiree Group Life Insurance Plan (the "**Termination Notice**").  A copy of the Termination Notice is annexed as **Exhibit E**. The Termination Notice also contains a schedule for the replacement costs should a retiree convert to a replacement plan at the retiree's expense, suggesting calculating the estate's full exposure is not difficult.

---

[3] The Debtors point to their *ad hoc* handling of the Allstate life insurance benefits, which covered a whopping 12 former senior executives, as some kind of model for addressing this matter.  Notably, the Debtors never suggested to the 29,000 retirees, who are mostly not senior executives, that they had any right to seek different treatment than proposed by the Debtors, either individually or on an *ad hoc* basis.  In fact, it is unclear whether any of the 29,000 employees were advised that they may hold an unsecured claim against the Debtors.

## ARGUMENT

**A.     The Settlement Remains the Governing Agreement Between the Retirees and Sears.**

The Debtors' opening gambit to the Court is that they and their predecessors never properly

amended the benefit plan to reflect their own court-ordered class action Stipulation of Settlement.

Thus, the Debtors argue, either as a result of their own failure or their outright refusal to abide by

the Stipulation of Settlement, they retained the right to amend or terminate the benefit plan at will.

The argument fails as a matter of law.

As a preliminary matter, the Debtors do not appear to contest that they entered into a

binding stipulation that was approved by a federal district court in a class action involving the

Retirees.  Rather, the Debtors are focused on Sears' alleged failure of the benefit plan (actually the

non-governing SPD's alleged failure) to include the required non-termination clause.  As a matter

of law, however, the failure to include the clause is not determinative when the benefits were

vested by a court-approved class action settlement.

In the Second Circuit, courts enforce an unambiguous court-approved class action

settlements as written.  *See Tourangeau v. Uniroyal, Inc.*, 101 F.3d 300, 307 (2d Cir. 1996)

(enforcing class action settlement against successor company where the acquired entity agreed

not to "terminate or materially reduce the level of benefits provided under the terms or

conditions of the [welfare] Plans").  *See also United States v. Armour & Co.*, 402 U.S. 673, 682

(1971) ("the scope of a consent decree must be discerned within its four corners"); *United States

v. Am. Soc'y of Composers, Authors & Publishers (In re Application of Shenandoah Valley

Broad., Inc.)*, 331 F.2d 117, 123-24 (2d Cir. 1964) (stating that consent decrees should "not be

stretched beyond their terms").  Courts are not permitted to rewrite the court-approved settlement

to vary or include new or different terms.  *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d

Cir. 1995) ("a district court may not impose obligations on a party that are not unambiguously mandated by the decree itself").

Even if there is a discrepancy between the plan documents and the Settlement, as noted in the Retiree Motion, the Stipulation of Settlement anticipated that the Debtors may overlook or fail to include the Stipulation of Settlement's vesting requirement. *See* Motion at ¶¶ 30-33. The Stipulation of Settlement clearly provides that it—not the subsequent plan documents—will govern in the event of a discrepancy. The Debtors' failure to address that provision suggests that they cannot square their unilateral actions with their legal obligations to retirees. Indeed, the Debtors simply ignore any substantive legal argument as to the enforceability of the so-ordered Stipulation of Settlement.

**B.** **The Appointment of a Committee in This Case Is Not Discretionary.**

Apparently recognizing the estates' exposure resulting from their failure to address the Stipulation of Settlement, the Debtors attempt to argue that Section 1114 can be ignored in certain Chapter 11 cases. They suggest a qualifying phrase in Section 1114(d), that the Court "otherwise determines that [appointment] is appropriate," permits the denial of any request for a Retiree Committee. In support, they cite colloquy by Judge Gerber in a transcript from the *In re General Motors* bankruptcy cases, but omit two critical points. First, Judge Gerber's stated ruling on the law rejects the Debtors' position that the provision is entirely discretionary:

> [U]nder the statute, the Court **must** order the appointment of the committee if the debtor seeks to modify or not pay the retiree benefits. [Objection, Exh. C at 103 (emphasis added)].

Second, while Judge Gerber ultimately denied appointment without prejudice, he did not do so based upon the language cited by the Debtors, but instead held

> that Section 1114 doesn't apply to employee benefit plans that are terminable or amendable unilaterally by the plan sponsor. Putting it

8

another way, Section 1114 does not trump any agreement between
a company and its employee that gives the company the right to
amend or terminate a welfare plan [*id*. at 109-10].

Judge Gerber did not rule as to whether he had discretion to deny appointment when a benefit plan

contains, as the plan does here, a provision barring termination or modification.  Thus, the Debtors'

reliance on the colloquy is unavailing.

The Debtors' argument has been made and rejected in the context of other provisions of

the Code.  For example, the provision that mandates the appointment of an examiner also contains

language as appropriateness, but nonetheless, the mandatory language remains mandatory.  *See* 11

U.S.C. § 1104(c)(2); *Loral Stockholders Prot. Comm. v. Loral Space & Comm. Ltd. (In re Loral

Space & Comm. Ltd.),* 2014 WL 2979785 (S.D.N.Y. Dec. 23, 2004) (Section 1104(c)(2) mandates

the appointment if a party in interest requests it).  Thus, there is no reason to adopt the Debtors'

reading that the statute is discretionary.

**C.**   **Section 1114 Is Enforceable When There Is a Liquidating Plan Being Proposed.**

Hoping to avoid the clear language of Section 1114(d), the Debtors argue that Congress

could not have intended Section 1114 to apply to a liquidating plan.  Although the argument is

lengthy, it should be rejected as the cases do not hold that Section 1114 is discretionary in a

liquidating plan context and such an interpretation runs afoul of the plain language requirements

for applying Bankruptcy Code provisions.

The case the Debtors place the most weight upon for its argument is *In re Ionosphere Clubs,

Inc.*, 134 B.R. 515 (Bankr. S.D.N.Y. 1991), but that decision actually supports the Retirees'

position.  In *Ionosphere*, the bankruptcy court held Section 1114 applies to chapter 11 liquidation

cases.  *Id*. at 524.  While the Objection is correct that Judge Lifland stated that the section seems

incompatible when applied to liquidation, he ruled that "absent corrective or clarifying legislation,

the statute's placement in Chapter 11 requires its application to Chapter 11 liquidation cases." *Id.*[4]

In another of the Debtors' cited cases, *In re GF Corp.*, 120 B.R. 421 (Bankr. N.D. Ohio

1990), the bankruptcy court also rejected the statute's inapplicability in a Chapter 11 liquidation.

The case dealt with a compromise between the creditors, the retirees, and the debtors that was

contrary to a previous order by the same court.  Essentially, the same court ordered the debtors to

pay the retirees their unpaid benefits pursuant to Section 1114(e)(2).  *Id.* at 422.  The compromise

resulted in the rejection of the collective bargaining agreement pursuant to 11 U.S.C. Section 1113

and retiree benefit obligations pursuant to Section 1114.  *Id.* at 423.  The court permitted the

compromise as it was fair and equitable to all creditors and the original order would have force

conversion to a Chapter 7.  *Id.* at 425.  At no point in the opinion did the court find that Section

1114 was inapplicable in a Chapter 11 liquidation.

*In re Chicago Constr. Specialties, Inc.*, 510 B.R. 205 (Bankr. N.D. Ill. 2014), a case

decided under Section 1113, involved a liquidating Chapter 11 case where the debtor sought to

reject a collective bargaining agreement.  *Id.* at 211.  Section 1113 was held to apply in a Chapter

11 liquidation, because the court interpreted the term "reorganization" in Chapter 11 to mean

either reorganization or liquidation because liquidation is simply an option under Chapter 11.  *Id.*

at 215.

Based on the foregoing, the Debtors' argument runs counter to this Court's <u>Delphi</u> case

cited in the Motion and is not supported by the case law relied upon by the Debtor.  Moreover, in

---

[4] The Debtors cite to the argument before Judge Peck and his oral decision to deny the
appointment of a retiree committee in *In re Lehman Brothers Holdings, Inc.*  The motion in that
was made more than two years after the bankruptcy filing, nearly two years after termination of
the benefits and just a month before confirmation.  Notably, the Debtors asserted that the benefits
at issue were not vested, and no one appeared to contest that claim.

making the argument, the Debtors are improperly pursuing through the back door use of the Court's equitable powers to overrule Congress's express directives in Section 1114. By arguing that a proposed liquidating plan renders nugatory Section 1114, the Debtors are reading that section out of the Code in contravention of well-established Supreme Court precedent.

The U.S. Supreme Court has made clear that bankruptcy courts exercise their equitable powers in conformity with the express provisions of the Bankruptcy Code, not contrary to it. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"). In *Law v. Siegel*, 571 U.S. 415, 421, 134 S. Ct. 1188, 1194 (2014), the Court squarely concluded that neither Section 105(a) nor any inherent authority of the bankruptcy court could contravene a specific provision of the Bankruptcy Code. The Court has also held that the bankruptcy court may not use those equitable powers to alter the Bankruptcy Code's requirements, for example, such as its priority scheme. *See United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 229 (1996); *United States v. Nolan*, 517 U.S. 535, 543 (1996).

Here, there is a simple, express provision of the Bankruptcy Code applicable to all Chapter 11 cases. Regardless of whether the Debtors' plan is a liquidating one, the Debtors are obliged to comply with Section 1114 in order to dispense with vested benefits. Adopting the Debtors' position would violate Congress's express intent.

Finally, the Debtors claims of a multitude of hardships should a Retiree Committee be formed including additional costs to the estates, the potential of 29,000 "new" creditors, the alleged difficulty in calculating any claims, and the like, are sideshows. Any hardship is of the Debtors' own making as it failed to fully review its own files. Moreover, the claimed hardships are ephemeral. The Debtors are fully aware of the amounts of insurance each retiree holds and can

11

calculate the cost of replacement insurance for each. *See*, *e.g.*, Exhibit E (Premium Rate Schedule).

It can also determine which retirees died without coverage and are entitled to an administrative

claim for the face amount of the policy that was not paid.

The Court should reject the Debtors' suggestion that they decide the outcome for the

creditor retirees in advance of the appointment of a committee.

**D.    The    Court    Should    Permit    the    Committee    to    Be    Formed    and
Work Without Restrictions Proposed by the Parties Holding Adverse Interests.**

The Debtors' and the Creditors' Committee argue that the appointment of a Retiree

Committee will put pressures on the Debtors' ability to confirm a plan and pay their creditors.

Yet, the Debtors' failure to satisfy the requirements of Section 1114 and properly terminate the

benefit plan puts greater pressure on their plans for reorganization.

If court-approved Stipulation of Settlement rendered the benefit plan permanently vested,

the Debtors' ill-advised termination has created significant administrative expenses, expenses that

grow each day.  A number of retirees have died and not received the life insurance benefit to which

they are entitled.  A number of additional retirees have purchased replacement life insurance

offered by Securian in conjunction with the Notice of Termination they received.  But the time for

purchasing that insurance has past and Securian therefore can identify the retirees who purchased

replacement life insurance.  Similarly, other retirees may have purchased or are purchasing

replacement life insurance from other life insurance companies.  Those expenses can be

determined and such expenses passed on to the estate.  As fiduciaries, the objecting parties should

be actively seeking the appointment of a Retiree Committee given that they have exposed the

estates to significant administrative expense exposure.

As for the general, unspecified budgetary and time constraints the Debtors and the

Creditors Committee propose, the purpose of the Retiree Committee is to represent the interest of

12

the retirees that have been or may be injured by the Debtors' actions and to permit that committee

to operate in conformity with the Bankruptcy Code's requirements.  Its role is limited, and the time

the process will take is likely limited as well, given the late stage of the Debtors' cases.  Imposing

restraints in advance of appointment appears to be nothing more than an effort to neuter the

committee before it can undertake its role.  Indeed, if the Retiree Committee is so restricted, the

Debtors and the Committee will be able to use the limitations as a further bargaining chip in

negotiations by simply threatening to stall as long as possible until the Retiree Committee lacks

the ability to continue paying professionals.  Moreover, the Bankruptcy Code already requires the

Retiree Committee's professionals to be retained and seek court approve for any reasonable fees

and expenses incurred.  There is no reason to impose the additional limitations.

## CONCLUSION

WHEREFORE, the Retirees respectfully request that the Court (a) enter an order

substantially in the form of Exhibit A to the Motion, attached hereto, granting the relief requested

herein; and (b) grant such other and further relief as the Court may deem proper.

Dated:  June 18, 2019
        New York, New York

                                        Respectfully submitted,


                                        By: */s/ James N. Lawlor*
                                                James N. Lawlor
                                                Brad Axelrod
                                                Cassandra Postighone

                                        WOLLMUTH MAHER & DEUTSCH LLP
                                        500 Fifth Avenue
                                        New York, New York 10110
                                        P: 212-382-3300
                                        F: 973-741-2398
                                        Telephone: (212) 382-3300
                                        Facsimile:  (212) 382-0050

13

- and -

Michael M. Mulder*
Elena N. Liveris*
THE LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Telephone:  312-263-0272

*Attorneys for Richard Bruce and Ronald Olbrysh*

*\*Pro hac application pending*

14