# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

|  |  |
|---|---|
| IN RE: SEARS RETIREE GROUP LIFE INSURANCE LITIGATION THIS DOCUMENT RELATES TO: ALL ACTIONS | Civil Action **OCT 0 9 2001** No. 97 C 7453 Judge James B. Moran |

)
)
)
)
)
)

Civil Action OCT 0 9 2001
No. 97 C 7453
Judge James B. Moran

**NOTICE OF FILING**

**FILED**

OCT 0 5 2001

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

TO:   Michael M. Mulder
Paul W. Mollica
Shona B. Glink
MEITES, MULDER, BURGER & MOLLICA
208 South LaSalle Street, Suite 1410
Chicago, Illinois 60604

PLEASE TAKE NOTICE that on Friday, October 5, 2001, pursuant to prior order of the Court, we filed with the Clerk's Office of the United States District Court for the Northern District of Illinois, on 20th Floor of the Dirksen Federal Building, the following documents, copies of which are hereby served on you.

1. Stipulation of Settlement
2. Exhibits A-H to the Stipulation of Settlement
3. Exhibit I to the Stipulation of Settlement, Volumes 1-7

Dated: October 5, 2001

SEARS RETIREE GROUP LIFE INSURANCE PLAN, and SEARS, ROEBUCK AND CO.

By: _____
One of Their Attorneys

James D. Holzhauer (ARDC No. 6202746)
Gary A. Isaac (ARDC No. 6192407)
Charles F. Regan, Jr. (ARDC No. 6199007)
Britt M. Miller (ARDC No. 6256398)
Susan B. Nystrom (ARDC No. 6256460)
MAYER, BROWN & PLATT
190 South LaSalle Street
Chicago, Illinois 60603
(312) 782-0600

## CERTIFICATE OF SERVICE

I, Charles F. Regan, Jr., an attorney, hereby certify that on October 5, 2001, I caused

copies of the

1. The foregoing Notice Of Filing
2. Stipulation of Settlement
3. Exhibits A-H to the Stipulation of Settlement
4. Exhibit I to the Stipulation of Settlement, Volumes 1-7

to be served by messenger delivery upon:

Michael M. Mulder
Paul W. Mollica
Shona B. Glink
MEITES, MULDER, BURGER & MOLLICA
208 South LaSalle Street, Suite 1410
Chicago, Illinois 60604


_____
Charles F. Regan, Jr.

8906142.1

FILED

OCT 05 2001

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: SEARS RETIREE GROUP LIFE INSURANCE LITIGATION: )<br>)<br>)<br>**This Document Relates to All Actions** )<br>) | Civil Action No. 97 C 7453<br><br>Judge Moran |

DOCKETED

OCT 09 2001

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("Stipulation") is made, by and among Marie A. George, et al. ("Plaintiffs"), individually and on behalf of all Class Members, and defendants Sears, Roebuck and Co. ("Sears"), and the Sears Retiree Group Life Insurance Plan ("Plan")[1] (collectively "Defendants"), by and through their attorneys and subject to preliminary and final approval by the presiding Court. Subject to the following terms and conditions and further subject to final approval by the Court, this suit is hereby compromised and settled in full.

### LIST OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Claim Form |
| B | Second Consolidated Complaint |
| C | Memorandum of Understanding |
| D | Order Preliminarily Approving Settlement and Approving the Form and Manner of Notice |
| E | Detailed Class Notice for Delivery by First Class Mail |
| F | Summary Class Notice for Publication |

G               List of 71 Named Plaintiffs

H               List of Class Counsel

I               List of all Class members identified by Sears

## I.    THE ALLEGATIONS SETTLED BY THIS STIPULATION

Plaintiffs, in their Second Consolidated Class Action Complaint ("Complaint"),[2] alleged

that Sears violated statutory, contractual and federal common law duties and various provisions

of the Employee Income Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq.,

which Plaintiffs claimed Sears owed to the participants in the Plan.  The lawsuit was brought on

behalf of Sears retirees who were covered under the Plan, and challenged Sears' decision

announced in September 1997 (and implemented January 1, 1998) to reduce the Plan's payment

of retiree life insurance premiums in ten annual increments.  Plaintiffs contended that reduction

of Plan benefits violated express contractual promises, obligations, and fiduciary duties, and

asserted that they had been promised – and were entitled to – retiree life insurance at no further

cost to them for the rest of their lives.

Plaintiffs asserted six claims:

| | |
|---|---|
| Count I: | A claim for plan enforcement under 29 U.S.C. §1132(a)(1)(B), brought by the full class and all subclasses[3] described in the Complaint; |
| Count II: | A claim for breach of contract under federal common law and 29 U.S.C. §1132(a)(1)(B); |
| Count III: | A claim for breach of contract under federal common law and 29 U.S.C. §1132(a)(1)(B) brought only by the alleged subclasses; |

---

[2] The Complaint is appended to this Stipulation as **Exhibit B**.

[3] While the Complaint describes certain subclasses, only counts I & II were certified by the Court; no subclasses were certified by the Court.

Count IV:    A claim for equitable and promissory estoppel under federal common law and 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3);[4]

Count V:    A claim for breach of fiduciary duty under 29 U.S.C. §§1132(a)(3) and 1109(a); and

Count VI:    A claim for alternative equitable relief by the subclasses.

In their entirety, the six counts essentially assert claims on behalf of a class that the parties now agree may be described as follows:

> All retired employees of Sears, Roebuck and Co. and its affiliates who have been or will be subject to reductions of retiree life insurance under the terms of Sears Retiree Group Life Insurance Plan, and who prior to the reductions had retiree life insurance in an amount greater than $5,000.

This definition includes certain persons who were not included in the class originally certified, but who were affected by Sears' 10-year reduction in life insurance, and who should benefit from the proposed Settlement. A list of class members identified by Sears is appended to the Stipulation as Exhibit I. Accordingly, the parties condition the proposed Settlement on the Court modifying the previous class definition to read as above. As before, the parties have only agreed that certification is appropriate for Counts I and II, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).[5]

---

[4]  Counts IV and V were stated against Sears, Roebuck and Co. only, not against the Plan.

[5]  Although the parties have not agreed to the certification of any Counts other than Counts I and II, Plaintiffs can settle all claims that class members have against Sears growing out of the reduction in retiree life insurance, even those that are not subject to class certification. That is because the claims under Counts I and II were properly certified for class treatment, and are still alive, insofar as the time for appealing the Court's grant of summary judgment to Sears on those claims has not run. Williams v. General Electric Capital Auto Lease, Inc., 159 F.3d 266, 273-74 (7th Cir. 1998), cert. denied, 527 U.S. 1035 (1999).

In addition, although the parties have only agreed to certification under Rule 23(b)(2), which does not ordinarily require notice or an opportunity to opt out, the Court has plenary power under Rule 23(b)(2) and Rule 23(d)(5) to order that both notice and an opportunity to opt out be given to class members. Lemon v. International Union of Operating Eng'r, Local No. 139, 216 F.3d 577, 582 (7th Cir. 2000); Jefferson v. Ingersoll Int'l, Inc., 195 F.3d 894, 898 (7th Cir. 1999). The parties agree that this is an appropriate case for the exercise of the Court's power.

Each and every claim asserted in the Complaint is settled as a part of this Stipulation and Settlement, and every Class Member on Exhibit I who does not validly request exclusion from this Settlement will, if this Settlement is approved by the Court, fully and finally release Defendants from any and all Claims that were asserted in the Complaint or that could have been asserted in the Complaint, including statutory and common law claims of all kinds, subject only to the exclusions set forth in paragraphs 1.20 and 18 of this Stipulation.

## II.    PROCEDURAL HISTORY

**Origination of Suit:**  In September 1997, Sears announced that retiree life insurance benefits under the Plan would be cut back for all Plan participants who retired after January 1, 1978, at the rate of 10% per year on each retiree's life insurance amount in excess of $5,000. At the end of ten years, each retiree would have a $5,000 retiree life insurance policy, regardless of original amount. Sears reserved the right to reduce benefits even further, or to terminate the Plan entirely.

Shortly after the announcement, a number of suits were filed against Sears by retirees who alleged they had been promised "free" or "paid up" life insurance for the rest of their lives. All lawsuits were eventually transferred to and consolidated in the United States District Court for the Northern District of Illinois and were assigned to Judge James B. Moran.

**Claims:**  Sears retiree life insurance benefits were (and are) governed by the terms of a plan set up by Sears many years ago. In general, the complaints alleged that Sears had breached the terms of the Plan by cutting back the amount of the life insurance; that Sears had entered into – and breached – a separate contract with Class Members concerning life insurance; and that Sears had breached its fiduciary duty to Plan participants by making materially misleading and incorrect statements about retiree benefits to Plan participants before they retired.

**Defenses:**  Sears denied that it violated any statutory or common law obligation to its retirees, and asserted that it had a full legal and contractual right at all times to modify or terminate the terms of the Plan.

**Judgment Granted For Sears On Certified Claims:**  In order for Plaintiffs to proceed on behalf of all retirees as a class, they were required to satisfy the Court that the case met all of the requirements provided in the Federal Rules of Civil Procedure for "certification" of class actions.  After extensive briefing, the Court certified a class action only with respect to the "plan enforcement" aspects of the case, but denied class certification with respect to the breach of fiduciary duty claims and other claims brought by the Plaintiffs.  The Court ultimately granted Defendants summary judgment on the "plan enforcement" claims.  Because the other claims are pending, the time for appeal of the summary judgment ruling has not yet begun.

**Uncertified Claims Set for Trial:**  What remained were claims for breach of fiduciary duty – claims that were *not* certified by Judge Moran for class action treatment.

There were initially 71 named Plaintiffs in the various consolidated cases, five of whom have since died.  At the Plaintiffs' request, the Court directed the parties to select 12 of the 66 Plaintiffs whose cases would be tried in September 2001 on the issue of breach of fiduciary duty and promissory estoppel.  The parties engaged in extensive discovery, including dozens of depositions throughout the United States of present and former Sears employees and upper level executives, in preparation for the trial.  On June 1, 2001, Defendants moved for summary judgment on the claims of the 12 Plaintiffs whose claims were to be tried in September 2001.  The Defendants' motion for summary judgment remained pending at the time the parties signed the Memorandum of Understanding.

**Mediation and Negotiations:**  During ongoing trial preparations, the parties began a process of negotiation and formal mediation, using a professional mediator to assist them in moving toward a settlement.  In the settlement negotiations, several of the named Plaintiffs were regular participants, along with representatives of NARSE, the National Association of Retired Sears Employees, which had taken a very active interest in the prosecution of the case.

**Memorandum of Understanding:**  On July 5, 2001, after three months of mediation and negotiations, the parties signed a Memorandum of Understanding (**Exhibit C**).  On October 10, 2001, the Court will be asked to give preliminary approval to this proposed Settlement, to approve proposed Notice to all Class Members of the terms thereof and to set a date for a Fairness Hearing.[6]

**Procedure for Final Approval:**  At the Fairness Hearing, the Court, consistent with Rule 23 of the Federal Rule of Civil Procedure, will consider the request of the parties that the proposed conditional class be certified and the Settlement be finally approved.  The Court will

---

[6] The proposed Order Preliminarily Approving Settlement and Approving the Form and Manner of Notice is attached hereto as **Exhibit D**.

8900643.9

6

consider any objections asserted to the Settlement and any requests for exclusion; rule on the petition for attorneys' fees, costs, expenses, and class representative incentive awards; and decide whether to certify the conditional settlement class and order final approval of this settlement.

## III.    RATIONALE FOR SETTLEMENT

## A.    CLASS PLAINTIFFS' REASONS FOR SETTLEMENT

Plaintiffs and Class Counsel deny each and every defense of Sears and do not admit or concede any lack of merit of the action or their entitlement to class certification. Nonetheless, Plaintiffs and Class Counsel recommend the Settlement to all Class Members for the following reasons:

1.    As noted in the Procedural History, Judge Moran has denied class certification with respect to the only claims that remain viable in the case. Unless the case is settled on a "class" basis, which is what this settlement contemplates, retirees would be left with only the right to file individual suits against Sears. Such suits would be time consuming, costly, and procedurally complex. Plaintiffs and their advisors believe that only a relatively small percentage of the approximately 80,000 retirees affected by the insurance cutback would file individual suits. There would, of course, be no guarantee as to the outcome of those individual cases.

2.    For all retirees, this settlement prevents Sears from making further cutbacks beyond the scheduled reduction, and it prevents Sears from eliminating the insurance benefit altogether. Without the settlement, Sears continued to reserve the right to further amend or terminate the plan. Sears could have accelerated the cutback or changed the final amount to zero, or both, at any time. This benefit accrues to all Class Members, whether or not they file a Claim Form.

3.    The settlement provides an additional benefit to those who believe they were significantly misled by Sears and who sign the Claim Form. All such persons will, without having to engage in further litigation, receive at least one less annual reduction in the amount of coverage, and perhaps more (depending on the number of persons filing Claim Forms).

4.    The settlement was achieved with the participation – and endorsement – of the National Association of Retired Sears Employees (NARSE), which has offered steady assistance in communicating the terms of the settlement to Sears retirees, as well as several retired Sears employees not affiliated with NARSE.

5. All costs of suit will be borne by Sears; the benefit negotiated for Class Members is not diminished to pay for attorneys' fees, costs, expenses, representative plaintiff incentive awards, or costs of administration.

Neither this Stipulation of Settlement nor any document referred to herein, nor any action taken by the Plaintiffs to carry out this Stipulation is intended to be construed, nor may it be used by any person in any matter or cause whatsoever, as an admission, concession, indication, or evidence by Plaintiffs of any infirmity in claims asserted in the action.

## B.    SEARS' REASONS FOR SETTLEMENT

Sears denies each and every claim asserted by Plaintiffs, denies all claims for damages, and denies that Plaintiffs are procedurally entitled to class certification on the remaining claims. Nonetheless, Sears is willing to settle because:

1. Sears acknowledges the uncertainty, risks, delay and costs associated with litigation. Sears intended to pursue its pending motions for summary judgment against the 12 individual Plaintiffs whose trials are scheduled for September, and, if the motions were denied, to contest each and every aspect of the case throughout trial and beyond. If Plaintiffs had prevailed at the trial, Sears likely would have appealed the judgment. Litigation may have dragged on for years. Sears recognizes that other retirees might choose to file individual suits.

2. Sears believes that the settlement provides substantial benefits to Class Members, and would prefer to have all Class Members receive some benefit, and to have the claims of the Class Members resolved once and for all.

3. Sears' management wants to reunite the Sears family, and believes that this settlement constitutes an important step in consolidating the confidence and goodwill of its large retiree base.

Neither this Stipulation of Settlement nor any document referred to herein, nor any action taken by the Defendants to carry out this Stipulation is intended to be construed, nor may it be used by any person in any matter or cause whatsoever, as an admission, concession, indication, or evidence of any fault, wrongdoing, or liability of any kind on the part of the Defendants.

IV.    SUBSTANTIVE TERMS OF SETTLEMENT

1.    Definitions

1.1.    **"Approved Claimant"** means a Claimant whose claim has not been challenged by Sears within 30 days after the Claim Form is received by Sears and a Claimant as to whom any challenge by Sears has been overruled by the Mediator.

1.2.    **"Certifying Class Members"** is a term used in the Memorandum of Understanding only.   It is replaced in this Stipulation with the words "Claimant" and "Approved Claimant" as elsewhere herein defined.

1.3.    **"Claimant"** means a Class Member who completes and timely files a Claim Form.

1.4.    **"Claim Deadline"** means January 17, 2002.

1.5.    **"Claim Form"** means the Claim Form sent to Class Members with the Notice of Proposed Settlement. It also means a Claim Form substantively identical to the Claim Form.

1.6.    **"Class"** means all retired employees of Sears, Roebuck and Co. and its affiliates who have been or will be subject to reductions of retiree life insurance under the terms of Sears Retiree Group Life Insurance Plan, and who prior to the reductions had retiree life insurance in an amount greater than $5,000.  The members of the class are listed on Exhibit I.

1.7.    **"Class Counsel"** means the attorneys for plaintiffs and the Class whose firms are listed at the end of this Stipulation in Exhibit H.

1.8.    **"Class Member"** means an individual member of the Class, as listed on Exhibit I.

1.9.    **"Fee Petition"** means Class Counsel's petition for an award of attorneys' fees, costs and expenses pursuant to the terms of paragraph 19 of this Stipulation of Settlement.

1.10.    **"Final Approval of the Settlement"** means the date on which the Court's final judgment with respect to all matters other than the Fee Petition becomes final. For purposes of this definition, "final" means the later of the date of final affirmation on appeal or following a petition for writ of certiorari, if such is granted; the final dismissal of any appeal or proceeding on certiorari; or the expiration of the time allowed for the filing or noticing of any appeal or writ of certiorari involving the Court's final judgment with respect to all matters other than the Fee Petition, with no appeal being filed.

1.11.    **"Final Resolution of the Fee Petition"** means the date on which the Court's ruling with respect to the Fee Petition becomes final. For purposes of this definition, "final" means the later of the date of final affirmation on appeal or following a petition for writ of certiorari, if such is granted; the final dismissal of any appeal or proceeding on certiorari; or the expiration of the time allowed for the filing or noticing of any appeal or writ of certiorari involving the Court's final judgment with respect to the Fee Petition, with no appeal being filed.

1.12.    **"Mediator"** means Hunter R. Hughes of Rogers and Hardin, LLP, 2700 International Tower, Peachtree Center, 229 Peachtree Street Northeast, Atlanta, Georgia, 30303-1601.

1.13.    **"Named Plaintiffs"** means the Plaintiffs listed on Exhibit G to this Stipulation.

1.14. **"Net Present Value" or "NPV"** shall have the meaning normally ascribed to it by actuaries, subject to the conclusive actuarial assumptions stated in paragraph 22 of this Stipulation.

1.15. **"Participation Rate"** means the number of Approved Claimants divided by the total number of Class Members. In calculating the Participation Rate, the total number of Class Members will be based on the number of Class Members still living, according to the current records of the Sears Retiree Service Center, as of the date the Claims Form is first mailed by Sears.

1.16. **"Principal Plan Beneficiary"** means, for each Class Member who died on or before December 31, 2002, the beneficiary receiving the highest percentage of the life insurance payment, and if there is no such individual, then the beneficiary whose given name is alphabetically first in relation to other such beneficiaries.

1.17. **"Released Defendants"** means Sears and/or any of its current or former officers, directors, employees, related entities, affiliates, subsidiaries, divisions, stockholders, heirs, executors, representatives, auditors, experts, parent companies, agents, attorneys, predecessors, successors and assigns, whether acting for its own account or in any capacity of any kind pertaining to the Plan. "Released Defendants" also includes the Plan, its current or former administrators, agents, fiduciaries, attorneys, auditors, experts, representatives, employees, predecessors, successors, assets, and assigns.

1.18. **"Released Plaintiffs"** means Plaintiffs and Class Members who do not request exclusion, their heirs, beneficiaries (both under the Plan and otherwise), and assigns.

1.19.   **"Scheduled Reduction"** means the amount by which each Class Member's life insurance under the Plan is scheduled to be reduced each year, 1998-2007. Mathematically, a "Scheduled Reduction" is one-tenth of the difference between the original face amount of retiree life insurance under the Plan for each Class Member and $5,000.

1.20.   **"Settled Claims"** means any and all claims, counterclaims, rights and causes of action, damages, punitive or statutory damages, penalties, losses of any kind or nature, whether arising under federal, state or common law, asserted or unasserted, known or unknown, legal or equitable, including, but not limited, to all claims or counterclaims stated or which could have been stated in the Complaint or a counterclaim (whether or not asserted) and/or addressed at any point in any brief, memorandum of law or motion in this case and/or all claims arising under federal, state or common law which could be brought by or on behalf of any of the Released Plaintiffs against any Released Defendant, or which could be brought by or on behalf of any Released Defendant against any Released Plaintiff, whether individual, representative, legal, equitable, direct or indirect, or any other type or in any other capacity against the Released Plaintiffs or Released Defendants (as the case may be), insofar as such claims relate directly or indirectly to Sears' cutback of retiree group life insurance benefits as announced in 1997 and implemented in 1998, or to the Released Plaintiffs' participation in the Plan. "Settled Claims" also includes any claims for attorneys fees, costs and expenses, other than the claim for attorneys fees, costs and expenses permitted under paragraphs 17.2, 19 and 21.

1.21.   **"Settlement"** means the settlement whose terms are reflected in the Memorandum of Understanding and this Stipulation.

1.22.  **"Settlement Administrator"** means the third party(ies) designated by Sears to assist in the administration of this Settlement.  See paragraph 10.1.

2.    **Proposed Timetable.**

The parties agree to petition the Court for its Order setting the following deadlines by the dates stated on the following timetable:

| Date | Description |
|------|-------------|
| October 5, 2001 | File Motion for Preliminary Approval of Settlement. |
| October 10, 2001 | Preliminary Approval hearing and Order. |
| October 15, 2001 | Plaintiffs disclose records and other documents set forth in Local Rule 54.3(d)(1)-(4) that are requested by Sears. |
| November 1, 2001 | Mail Notice |
| November 8, 2001 | Publish Newspaper Notices |
| November 12, 2001 | Sears disclose records and other documents called for under Local Rule 54.3(d)(5)(A)-(D) that are requested by Plaintiffs. |
| November 19, 2001 | Parties are to identify remaining disputes about fees and expenses, as set forth in third paragraph of Local Rule 54.3(d)(5). |
| December 7, 2001 | Plaintiffs submit to Sears their portion of Joint Statement Regarding Fees and Expenses, as set forth in Local Rule 54.3(e). |
| December 10, 2001 | Deadline for receipt of objections and Requests for Exclusion. |
| December 17, 2001 | Sears submits to Plaintiffs its portion of Joint Statement Regarding Fees and Expenses, as set forth in Local Rule 54.3(e). |
| December 24, 2001 | Motion for Attorneys' Fees, Costs and Expenses and Class Representative Incentive Awards filed. |
| January 7, 2002 | Deadline for Sears to exercise option to cancel settlement. |
| January 11, 2002 | Brief in Support of Settlement Approval/Responses to Objections filed. |
| January 17, 2002 | Deadline for submission of Claim Forms. |

January 28, 2002         Opposition to Motion for Attorneys' Fees, Costs, Expenses, and Incentive Awards.

February 11, 2002       Reply to Opposition to Motion for Attorneys' Fees, Costs, Expenses and Incentive Awards.

[To be set by court]     Fairness hearing and ruling on Motion for Attorneys' Fees, Costs, Expenses, and Class Representative Incentive Awards.

3.     **Creation of Permanent Retiree Life Insurance Benefit for Class Members.**

Defendants agree that:

3.1.     Defendants will not accelerate the rate of reduction in the amount of life insurance for any Class Member beyond that announced in September 1997 and communicated to retirees in the form of "Your Personalized Retiree Life Insurance Information and Response Form";

3.2.     For Approved Claimants, Defendants will not reduce their retiree life insurance amounts to less than the total of $5,000 plus any life insurance reductions foregone and amounts restored, if any, under paragraph 8 below; and

3.3.     For Class Members who are not Approved Claimants, Defendants will not reduce their retiree life insurance amount to less than $5,000.

3.4.     Except as expressly provided herein, this Stipulation of Settlement is not subject to any reservation of rights or unilateral change of any kind by Sears. Within a reasonable period after the Final Approval of the Settlement, Sears will amend the Plan and Summary Plan Description to the extent necessary to incorporate paragraphs 3.1, 3.2, 3.3, 7, and 8 of this Stipulation. Sears agrees that any language preserving Sears' right to amend, modify, cancel or terminate the terms of the Plan, both now and in the future, shall not include the right to amend, modify, cancel or terminate any right conferred upon

8900643.9                                    14

to Class Members by the terms of this Stipulation of Settlement, or to diminish the value

of the benefit conferred to Class Members and Approved Claimants in this Stipulation.

### 4.    Modification of Class Definition

4.1    The parties agree that in order to implement this Stipulation of Settlement, they

will mutually petition the Court to modify the definition of the class certified pursuant to Fed. R.

Civ. P. 23(a) and 23(b)(2) for Counts I and II, as follows:

> All retired employees of Sears, Roebuck and Co. and its affiliates who have been or
> will be subject to reductions of retiree life insurance under the terms of Sears Retiree
> Group Life Insurance Plan, and who prior to the reductions had retiree life insurance
> in an amount greater than $5,000.

The parties have not agreed to class certification of any Counts other than Counts I and II.

4.2    A list of the class members identified by Sears is appended to the Stipulation as

Exhibit I.  Sears warrants and represents that to the best of its knowledge, after due inquiry, that

all members of the class as herein defined are listed on Exhibit I.  Plaintiffs are entering into this

settlement based on this representation and warranty.

4.3    If it is discovered by September 1, 2002, that a person who satisfies the class

definition set forth in paragraph 4.1 was not included in Exhibit I, Sears agrees that (a) if such

person is still alive, he or she shall be entitled to (i) submit a Claim Form within 75 days of being

sent one, and (ii) enjoy the benefits of paragraph 3.1, 3.3, and 3.4 whether or not he or she

submits a Claim Form; or (b) if such person has died, his or her Principal Plan Beneficiary shall

be entitled to receive a $100 gift card under the conditions set forth in paragraph 9.

4.4    In addition, if it is discovered by September 1, 2002, that more than 100 persons

who satisfy the class definition set forth in paragraph 4.1 were not included in Exhibit I, then the

provisions of paragraph 8 and Tables 2 and 3 shall be modified on a pro rata basis.  Any disputes

regarding such modification shall be submitted to the Mediator for his binding resolution.

4.5     The provisions of paragraphs 4.3 and 4.4 shall be the sole remedy for the violation of the representation and warranty set forth in paragraph 4.2.

**5.    Settlement Conditional**

This Stipulation is subject to and conditioned upon the Court's Preliminary and Final Orders approving the Settlement and Notices to the Class.

**6.    Claim Forms, Claimants and Approved Claimants**

6.1.    Each Class Member may participate in the Settlement benefits described in paragraphs 7 and 8 hereof by properly completing and timely filing the sworn Claim Form attached hereto as **Exhibit A** (subject to any modifications made by the Court upon preliminary approval) on or before the Claim Deadline.

6.2.    Class Members who complete and timely file a Claim Form on or before the Claim Deadline are referred to in this Stipulation as "Claimants."

6.3.    Class Members who submit Claim Forms shall be given a reasonable opportunity to cure missing or inconsistent information on timely filed Claim Forms.

6.4.    Sears may challenge Claim Forms only as set forth in paragraph 17.

6.5.    Claimants whose Claim Forms are not timely challenged by Sears under paragraph 17.1 hereof, or whose Claim Forms are upheld after a timely challenge by Sears are referred to in this Stipulation as "Approved Claimants."

**7.    Elimination of Scheduled Reduction(s) for Approved Claimants**

Sears will not make the Scheduled Reduction in the face amount of Retiree Life Insurance for Approved Claimants in the year 2003.  Sears will resume making the Scheduled Reductions in the same amounts as before for Approved Claimants in the year 2004 (at the earliest) or at such later date as is determined by the provisions set forth in paragraph 8 of this

Stipulation.  Scheduled Reductions will cease for all Class Members in the year 2007.  The final insurance face value for Approved Claimants will not be less than $5,000 plus the amount of one Scheduled Reduction.

7.1.    It is the intention of the parties hereto that the minimum benefit for Approved Claimants above and beyond the benefit created by paragraph 3 hereof, and subject to additional benefit as described in paragraph 8, can be illustrated in the example depicted in **Table 1**.

| Table 1 | | |
|---|---|---|
| **Example** | | |
| ***Minimum Effect of Settlement on an Approved Claimant with a $15,000 Policy Before January 1, 1998*** | | |
| Year | Old Reduction Schedule | Reduction Schedule Under Proposed Settlement Agreement |
| Before 1998 | 15,000 | 15,000 |
| 1998 | 14,000 | 14,000 |
| 1999 | 13,000 | 13,000 |
| 2000 | 12,000 | 12,000 |
| 2001 | 11,000 | 11,000 |
| 2002 | 10,000 | 10,000 |
| 2003 | 9,000 | 10,000  freeze |
| 2004 | 8,000 | 9,000 |
| 2005 | 7,000 | 8,000 |
| 2006 | 6,000 | 7,000 |
| 2007 (Final) | 5,000 | 6,000 |
| | Total of 10 reductions; final insurance amount $5,000 | Total of 9 reductions; final insurance amount $6,000 |
| Effect of settlement on a particular Approved Claimant obviously will vary. | | |

8.    **Elimination of Additional Scheduled Reductions or Portions Thereof Under Certain Circumstances for Approved Claimants**

8.1.    If the net present value ("NPV") (calculated with the assumptions set forth in paragraphs 1.14 and 22) of the cost to Sears of foregoing the Scheduled Reduction in the face amount of retiree life insurance for the Approved Claimants in the year 2003 is greater than $28 million, then Sears shall pay the amount in excess of $28 million

required to ensure that all Approved Claimants receive such Scheduled Reduction in the year 2003. The parties agree that $34.2 Million is a rough estimate of the net present value of eliminating the scheduled 2003 reduction for 100% of Class Members. If the NPV of the cost to Sears of foregoing the Scheduled Reduction in the face amount of retiree life insurance for the Approved Claimants in the year 2003 is less than the Guaranteed Minimum Amounts set forth in Table 2, then Sears will forego Scheduled Reductions of the face amount of life insurance in the subsequent year or years for Approved Claimants in a pro rata amount for each Certifying Class Member, to the extent necessary so that the NPV of the total Scheduled Reduction foregone by Sears equals the applicable Minimum Amount as calculated in Tables 2 and 3. In the event that the NPV of the total Scheduled Reductions foregone by Sears as set forth in the preceding sentence is less than such Minimum Amount set forth in Table 2, then Sears shall restore on a pro rata basis, the amount of any previous life insurance benefits it reduced for Approved Claimants. In the event that the NPV of the total Scheduled Reductions foregone and amounts restored is still less than such Minimum Amount, then Sears shall pay any remaining amounts in cash, on a pro rata basis, to all Approved Claimants unless the remaining amount is less than $1.5 million. If the amount is less than $1.5 million, then Sears shall donate, by no later than July 1, 2003, the difference between the applicable Minimum Amount set forth in Table 2 and the NPV of the total Scheduled Reduction foregone by Sears, to one or more organizations mutually agreed upon by the parties that are tax exempt under section 501(c)(3) of the Internal Revenue Code.

8.2.    As set forth in Table 2, for Participation Rates between 30% and 50%, the corresponding Guaranteed Minimum Amount shall equal $22 million plus $300,000 for

every percentage point or fraction of a percentage point above $30%. For example, if the Participation Rate is 34.01%, the Guaranteed Minimum Amount will be $23.5 million ($22 million plus 5 x $300,000).

| Table 2 | |
|---|---|
| **Participation Rate** | **Guaranteed Minimum Amount** |
| 50% or higher | $28 Million |
| 49% | $27.7 Million |
| 48% | $27.4 Million |
| 47% | $27.1 Million |
| 46% | $26.8 Million |
| 45% | $26.5 Million |
| 44% | $26.2 Million |
| 43% | $25.9 Million |
| 42% | $25.6 Million |
| 41% | $25.3 Million |
| 40% | $25 Million |
| 39% | $24.7 Million |
| 38% | $24.4 Million |
| 37% | $24.1 Million |
| 36% | $23.8 Million |
| 35% | $23.5 Million |
| 34% | $23.2 Million |
| 33% | $22.9 Million |
| 32% | $22.6 Million |
| 31% | $22.3 Million |
| 30% or less | $22 Million |

8.3.    The parties agree that the examples set forth in **Table 3** correctly reflect their mutual understanding as to application of the provisions of paragraph 8 in three hypothetical situations, which are intended to be illustrative, but not exhaustive.

---

### Table 3

### Examples for Paragraph 8

*Example 1*
Suppose the Participation Rate is 42.3% and the NPV of foregoing the Scheduled Reduction in the amount of retiree life insurance for Approved Claimants is $23,700,000. As shown on Table 2, Sears will pay a Guaranteed Minimum Amount of $25,900,000 ($22,000,000 + 13 x $300,000) in NPV. $23,700,000 of this guaranteed $25,900,000 will be used to forego 100% of the Scheduled Reductions for Approved Claimants in 2003, leaving $2,200,000 to be applied in 2004. If the NPV of foregoing a full year's reduction in 2004 is $22,600,000, then Sears will forego approximately 9.7% ($2,200,000/$22,600,000) of the Scheduled Reduction for 2004.

*Example 2*
Again suppose the Participation Rate is 42.3%. Suppose the NPV of foregoing the Scheduled Reduction in the amount of retiree life insurance for Approved Claimants in 2003 is $27,100,000. Since $27,100,000 exceeds $25,900,000 (the Guaranteed Minimum Amount for the Participation Rate shown in Table 2), Sears will forego the Scheduled Reduction for all Approved Claimants for year 2003 only.

*Example 3*
Suppose the Participation Rate is 72.0%, and the NPV of foregoing the Scheduled Reduction in the amount of retiree life insurance for Approved Claimants is $29,400,000. Since $29,400,000 exceeds $28.0 million (the Guaranteed Minimum Amount for 50% or higher participation in Table 2), Sears will forego the Scheduled Reduction for all Approved Claimants for year 2003 only.

---

### 9.  Gift Cards to Estates of Deceased Class Members

At Sears' expense, Sears shall distribute one unrestricted Sears gift card in the amount of $100 to the Principal Plan Beneficiary of each Class Member whose death occurs between January 1, 1998 and December 31, 2002, inclusive.

9.1.    Only one card will be distributed per estate.

the administrator or executor[trix] of such estate.    As is Sears' practice with respect to gift cards sold to consumers, the card will be a bearer instrument.

9.3.    Gift cards shall be distributed no later than sixty (60) days after the date of Final Approval of the Settlement for those Class Members who died at least sixty (60) days prior to the date of Final Approval of the Settlement.  For each other eligible representative/estate, such gift card shall be distributed within sixty (60) days after December 31, 2002, or as soon thereafter as practicable.

9.4.    The representatives/estates of Named Plaintiffs are not eligible for gift cards.

9.5.    The parties shall seek as a part of the Order of Final Approval the Court's approval of a procedure and a specific provision providing that Sears shall have no further obligation or liability in respect of any such gift card that has been issued and distributed in accordance with the foregoing subparts.

## 10.    Settlement Administration

To the extent necessary to insure compliance with the requirements of ERISA, Rule 23 of the Federal Rules of Civil Procedure, and the Orders of the United States District Court for the Northern District of Illinois, Sears and a third-party designee ("Settlement Administrator") shall be responsible for administering the settlement.

10.1.    Subject to the consent of the Liaison Counsel appointed by the Court, Sears shall select and retain one or more third parties with class action settlement administration experience to act as Settlement Administrator and to assist in the administration of this Settlement.

10.2.    Sears shall have the right, but is not required, to select MetLife as the Settlement Administrator.

10.3.    In the event the parties cannot agree on a Settlement Administrator, the Settlement Administrator shall be chosen by the Mediator.

10.4.    Except as otherwise expressly provided herein, Sears shall have the right to designate which portions of the Settlement it will administer directly, if any, and which portion(s) will be delegated to the Settlement Administrator, except that incoming calls and letters involving questions about the Settlement from Class Members shall be handled by the Settlement Administrator, and not by Sears.

10.5.    Within thirty (30) days of the date of execution of this Stipulation, Sears shall advise Plaintiffs in writing of its proposed Settlement Administrator(s) and its proposed allocation of duties as between Sears and the Settlement Administrator (the "Allocation Notice").  If Plaintiffs disagree with Sears' allocation of such administrative responsibilities, Plaintiffs may seek resolution by the Mediator of all such disputes, with each party using best efforts to resolve such disputes within twenty (20) days after Plaintiffs' receipt of the Allocation Notice.

## 11.    Mailing of Detailed Notices and Claim Form

Notice of the proposed Settlement, the Fairness Hearing, Class Members' rights to object or request exclusion, together with a copy of the Claim Form will be mailed by first class mail to each Class Member by Sears or the Settlement Administrator on or before November 1, 2001.

11.1.    The Notice shall be in the form attached hereto as **Exhibit E**, subject to any changes required or approved by the Court.

11.2.    The first class envelope containing the Notice and Claim Form shall be marked with a clear, conspicuous and bold identification on the front and back of the envelope alerting recipients that it contains an **"Important Class Action Settlement Notice and Claim Form for the Sears Retiree Group Life Insurance Litigation from the Clerk of United States District Court,"** and shall bear a return address which shall be the same address as the address shown on the Claim Form and in the instructions concerning the Request for Exclusion set out in the Notice (see paragraph 11.6).

11.3.    The Claim Form shall be blue in color, and no other materials within the mailing shall be of the same color.  Downloaded Claim Forms from the AARP and NARSE websites do not need to be blue.

11.4.    The mailing containing the Notice and Claim Form may also contain one edition of the Sears Retiree Newsletter at the discretion of Sears.

11.5.    The Notice of Settlement will also be sent by first class mail to the last known address of all named beneficiaries of Plan life insurance for those retirees who were Class Members as of January 1, 1998, had the Class been certified as of that date, but who have since died.

11.6.    As part of their administrative obligations, Sears and/or the Settlement Administrator shall, among other things, keep records of all Class Members (or in the case of deceased Class Members, the last known address of their respective representative/estates) to whom Notices were mailed which were returned as undeliverable, and shall undertake reasonable efforts to find the current address or otherwise provide the best practicable notice to Class Members and the representative/estate of Class Members whose Notices were returned undelivered.

11.7.    Copies of all records and notification efforts shall be provided upon request to Plaintiffs' counsel and/or the Court at Sears' expense.

11.8.    Upon preliminary approval of this Settlement by the Court, Sears or the Settlement Administrator shall establish a post office box in the name of the Clerk of Court for return of the Claim Forms.    Representatives of Class Counsel and Sears' counsel shall copy and log in all Claim Forms and from time to time provide a list, *inter alia*, to the Settlement Administrator.

## 12.    Publication of Summary Notice of Settlement

A summary Notice of the Settlement in form attached hereto as **Exhibit F** shall also be published once in the *Chicago Tribune*, once in the *Chicago Sun-Times*, and once in a major daily newspaper of general circulation in each of the following cities:  Dallas, Los Angeles, Miami, and Phoenix.

12.1.    The Notice shall be at least one-half page in size.

## 13.    Internet Availability of Claim Form

The National Association of Retired Sears Employees ("NARSE") and the American Association of Retired Persons ("AARP") shall be permitted to place the Notice of Settlement and a copy of the Claim Form (in a downloadable format) on their websites.

13.1.    Despite electronic availability of the Claim Form, Claim Forms must be filed in hard copy form only.  Hard copy filings shall be identifiable and traceable through the use of a bar code, social security number, or otherwise to ensure ease of administration and so that any duplicate filings may readily be identified. In the event such administrative controls cannot reasonably be established with respect to the NARSE and AARP websites' Claim Forms, the Claim Forms shall only be obtainable from Sears,

the Settlement Administrator, Plaintiffs' counsel, and any other Court-approved designees.

## 14.    Toll Free Telephone Line for Class Member Inquiries

The Settlement Administrator shall be required to establish a toll free call-in procedure by which Class Members may obtain independent information and responses to inquiries about the settlement claim procedure.   All such calls, together with any letters containing such inquiries, shall be handled by the Settlement Administrator and not by Sears.

14.1.    A record of the calls and responses shall be provided upon request to Class Counsel and the Court at Sears' expense.

14.2.    Sears and the Settlement Administrator shall develop, in conjunction with the active members of the Steering Committee (Michael M. Mulder, Wood R. Foster, Jr., and Arthur T. Susman) a script of responses to questions that the Settlement Administrator may be expected to receive concerning the settlement claim procedure. Class Members raising questions that are of a legal nature and that are not covered the script will be referred to Class Counsel at a toll-free number.

14.3.    The Settlement Administrator shall be staffed and equipped to enable it to make a good faith effort to have all calls answered by an operator within two minutes of the call being received and in a manner similar to the manner in which Sears handled calls in response to its 1997 announcement of changes to the Plan.

14.4.    The toll free line shall be maintained until January 24, 2002.

**15.    Deadlines for Mailing of Objections, Requests for Exclusions, Claim Forms**

15.1.    Subject to the approval of the Court, the deadline by which Class Members' Objections and Requests for Exclusions must be received is December 10, 2001.

15.2.    Subject to the approval of the Court, the deadline for receipt of the Claim Forms shall be January 17, 2002.  Sears shall have the discretion to accept Claim Forms received after that date.

**16.    Sears' Option to Cancel Settlement and Related Tolling Provisions**

Sears shall have the right to cancel this Settlement if more than 1,000 Class Members validly request exclusion from the Class.  This right to cancel must be exercised by Sears in writing (addressed to Class Counsel and the Court) by January 7, 2002 or within 20 days after the deadline for the submission of Requests for Exclusion, whichever is later.

16.1.    In the event Sears exercises its option to cancel, Sears will remain responsible for all administrative costs incurred up to the date of cancellation.

16.2.    In the event Sears exercises its option to cancel, the parties shall, as of a date thirty (30) days after Sears' timely delivery of Notice of Cancellation to Class counsel and the Court, be considered in all possible respects to be restored to the *status quo ante* as of June 5, 2001.  In such event, the parties will promptly and jointly request a further scheduling conference with the Court.

16.3.    Sears agrees to toll the statute of limitations, effective as of June 5, 2001, for all claims that Plaintiffs or the Class have or could have brought in this litigation, or that any Named Plaintiff or Class Member might assert arising out of Sears' reduction of life insurance benefits under the Plan.

16.4.    Tolling will come to an end as of the date of the Final Approval of the Settlement for any Named Plaintiff or Class Member who requests to be excluded from the Class.

16.5.    In the event the Court denies either preliminary or final approval of this Settlement, tolling will end as to all Class Members thirty (30) calendar days after the Court enters its order denying such approval, and the parties will be considered in all possible respects to be restored to their positions as of June 5, 2001.

## 17.    Limitation on Further Discovery; Exceptions

Because Plaintiffs and Sears have both conducted extensive discovery in the Retiree Life Litigation regarding the merits of the retirees' claims, no further discovery regarding the fairness of the Settlement is necessary or will be allowed to the parties. All scheduled discovery activity and briefing deadlines are suspended, subject to further order of the Court.

17.1.    Notwithstanding the foregoing, Sears shall be permitted to depose a Claimant regarding the statement made in his or her Claim Form for purposes of challenging the claim where there is substantial evidence of fraud by that Claimant. Before Sears shall be permitted to depose a Claimant regarding the statement made in the Claim Form, Sears must share its substantial evidence of fraud with the Mediator (or other person agreed to by the parties) and Class Counsel, who, at their option, may represent the Claimant, and the Mediator (or other person) must determine that such evidence is indeed substantial and warrants a deposition. If the Mediator determines such evidence is substantial, Sears shall take the Claimant's deposition within sixty days of challenging the claim.

17.1.1 Any challenge to a Claim Form by Sears shall be made within thirty (30) days of Sears' receipt of the Claim Form.

17.2.    If Class Counsel chooses to represent a Claimant whose Claim Form is challenged by Sears, and the Mediator determines that the Claimant's claim shall be honored, whereupon the Claimant becomes an Approved Claimant, Sears shall pay Class Counsel reasonable fees determined by the Mediator in addition to any fees awarded pursuant to paragraph 19 hereof.

17.3.    For good cause, as determined by the Mediator, the parties shall be permitted reasonable mutual discovery regarding the reasonableness of Class Counsel's Fee Petition, as submitted under the terms of paragraph 19.

**18.    Settled Claims Mutually Released and Dismissed.**

It is stipulated and agreed that subject to the final approval of this Settlement, the finality of any dismissal order (which shall contain a release) entered approving the proposed Settlement, and the terms and conditions set forth herein, the Settled Claims are hereby compromised, settled, released and discharged with prejudice.  The Released Defendants shall have no further or other liability or obligation to any of the Released Plaintiffs with respect to the Settled Claims, and the Released Plaintiffs shall have no further or other liability or obligation to any of the Released Defendants with respect to the Settled Claims, except as provided under the terms of this Stipulation of Settlement.  The Released Plaintiffs, upon final approval of this Settlement, fully, finally and forever settle and release the Settled Claims against the Released Defendants. The Released Defendants, upon the date of Final Approval of the Settlement, fully, finally and forever settle and release the Settled Claims against the Released Plaintiffs.

18.1.    This Release does not extend to ongoing rights established under this Stipulation.    The release of Settled Claims does not release the right to enforce the Settlement.

18.2.    Because the Release extends to claims that presumably exist but are unknown, each Class Member shall be deemed to waive any and all provisions, rights and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims, including but not limited to any and all rights and benefits conferred by California Civil Code § 1542, which reads: **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

18.3.    Excluded from the exchange of releases in this paragraph 18 are all claims that are not Settled Claims.

**19.     Payment of Attorneys' Fees and Pre-Settlement Costs and Expenses by Sears**

Prior to or as a part of the Court's Order of any final approval of this Settlement, the active members of the Steering Committee (Michael M. Mulder, Wood R. Foster, Jr., and Arthur T. Susman) shall have submitted and the Court shall have ruled on Class Counsel's consolidated petition for an award of attorneys' fees, costs and expenses ("Fee Petition") and shall award Class Counsel attorneys' fees, costs, and expenses in an amount no less than One Dollar ($1.00) and no greater than Five Million Four Hundred Thirty Thousand Dollars ($5,430,000), such amount to be paid solely by Sears, in addition to any other benefit conferred by this Stipulation.

19.1.   If the Court preliminarily approves this settlement, Class Counsel will, on or before December 24, 2001, petition the Court for approval of reasonable compensation for their services and costs. Sears specifically reserves the right to contest the amount of Class Counsel's Fee Petition. The amount of attorneys' fees, costs and expenses finally approved will be paid by Sears to Class Counsel no later than 30 days after the Final Resolution of the Fee Petition. The provisions of this paragraph 19.1 are subject to the provisions of paragraph 19.2.

19.2.   In Class Counsel's Fee Petition, it is agreed that the Court shall be permitted to award a fee, costs and expenses as if Class Counsel were petitioning against a common fund in the value of the settlement, even though it is Sears that will ultimately pay any fees and expenses awarded. Sears shall not be permitted to argue or assert, nor shall the Court consider, that Class Counsel are limited to lodestar fees on the grounds that it is Sears, rather than the fund (i.e., Plaintiffs' counsel's clients) that is paying the fee, under City of Burlington v. Dague, 505 U.S. 557 (1992) or otherwise. Nor shall Sears argue that common fund principles are not available to the Court, in the Court's discretion, with respect to any fee award. Sears shall be permitted to oppose Class Counsel's Fee Petition on any other grounds permitted by law. Subject to the foregoing, Sears can argue, for example, that paying a percentage is inappropriate in this case, or that awarding lodestar fees or a multiplier of lodestar fees is inappropriate, among other arguments.

19.3.   Any attorneys' fees, expenses and cost payments shall be paid into an account designated by the active members of the Steering Committee. Funds from said account shall be allotted among Class Counsel by the active members of the Steering

Committee.  If a dispute arises over the allocation of Plaintiffs' attorneys' fees, costs or expenses, the active members of the Steering Committee may petition the Court for a ruling.  Defendants shall have no right to participate in any such allocation petition.

### 20.   Class Representative Incentive Payments

Subject to Court approval, each of the 65 living Named Plaintiffs who does not request exclusion, and each of the six representatives/estates of the Named Plaintiffs who are no longer alive and whose representatives/estates do not request exclusion (for a total of 71 living and deceased Named Plaintiffs) will be given an incentive payment of $5,000 by Sears within sixty (60) days after Final Approval of the Settlement.  The names and addresses of the 71 living and deceased Named Plaintiffs are attached at **Exhibit G.**

### 21.   Costs and Expenses of Settlement Administration; Limitations

Sears shall be responsible for all costs and expenses of administration of this Settlement, including, but not limited to, actuarial, administrative, mediation and notice expenses.

21.1.   Such costs and expenses shall include reasonable actuarial costs not in excess of five thousand dollars ($5,000.00) for an independent actuary jointly selected by the parties to review Sears' determination of actuarial issues in conjunction with verification of the relief under the Settlement.

21.2.   Reasonable costs and expenses advanced by Class Counsel shall be reimbursed within sixty (60) days of their tendering the reimbursement statement to Sears.  However, whenever reasonably possible, Counsel shall advise Sears in advance of their intention to incur any such reimbursable costs and expenses in excess of $150. Sears agrees to pay the fees of the actuary for the class, in an amount not to exceed

$5,000.00, in conjunction with the calculations performed in connection with those class members who were receiving premium waiver life insurance as of January 1, 1998, .

21.3.   Sears shall not be responsible for costs and expenses relating to the NARSE and AARP websites.

## 22.   Conclusive Actuarial Assumptions

In calculating NPV or making any other actuarial calculations required under this Stipulation, the following assumptions shall be deemed conclusive:

22.1.   The number of retirees as January 1, 2001 shall be used for all calculations.

22.2.   Calculations shall be made as of January 1, 2001.

22.3.   An annual interest rate of 8.25% shall be used.

22.4.   Mortality Table UP-94, Sex Distinct, shall be used.

22.5.   Notwithstanding the foregoing, calculation of the Participation Rate is subject to the provisions of paragraph 1.15 and paragraph 8.

## 23.   Resolution of Disputes

Any disputes arising under this Stipulation, including disputes regarding the drafting of ancillary documents necessary to complete this settlement, and any disputes regarding claims issues, shall be subject to binding arbitration by the Mediator.

23.1.   The parties agree to abide by any procedures that may unilaterally be established by the Mediator for resolving disputes.

23.2.   No party shall have the right of appeal to any tribunal from the Mediator's resolution of issues.

8900643.9

24.   **Persons Receiving Premium Waiver Life Insurance**

24.1   Any class member who (1) was receiving life insurance under the premium waiver provision of the Plan; (2) became or becomes eligible to receive retiree life insurance under the Plan; (3) was not notified of the opportunity to become a participant in the Group Retiree Life Insurance Replacement Plan ("the Replacement Plan"); and (4) is alive as of the date of this Stipulation of Settlement, shall be given the opportunity to become a participant in the Replacement Plan by paying the premiums retroactive to January 1, 2001, for the life insurance available to such class member under the Replacement Plan through 2001. Sears shall provide liaison further identification of these class members by October 22, 2001. Such payment shall be made within 90 days of the class member's being notified of the opportunity to become a participant in the Replacement Plan, or the class member shall forever lose the opportunity to become a participant in the Replacement Plan. Upon becoming a participant in the Replacement Plan, the class member shall be subject to all of the terms of the Replacement Plan. The benefits in this paragraph 24.1 shall be in addition to the other benefits under this Settlement.

24.2   The beneficiaries of any class member who (1) was receiving life insurance under the premium waiver provision of the Plan; (2) became eligible to receive retiree life insurance under the Plan; (3) was not notified, during his or her lifetime, of the opportunity to become a participant in the Group Retiree Life Insurance Replacement Plan ("the Replacement Plan"); and (4) is deceased as of the date of this Stipulation of Settlement, shall be entitled to receive, in addition to any benefit received under the Plan, an amount equal to the insurance the class member could have purchased under the Replacement Plan, less the cost of replacement insurance. For example, if a retiree with $15,000 of life insurance in 1997 came off premium waiver in 1999 and passed away in that same year, then his beneficiary would have received

$13,000 in life insurance. As a result of the Settlement, the beneficiary shall be entitled to receive an additional $2,000 payment less the cost of the replacement insurance premiums paid if the deceased had been presented with the opportunity and purchased replacement insurance in 1999. Sears shall provide liaison counsel further identification of these class members and their beneficiaries by October 22, 2001. The benefits in this paragraph 24.2 are in addition to the benefits in paragraph 9.

25.    **General Terms Governing this Stipulation**

25.1.    **Exhibits; Headings**. The terms of this Stipulation include the terms set forth in each of the exhibits that are attached hereto and incorporated by reference as though fully set forth herein. All exhibits to this Stipulation shall be considered an integral part of this Stipulation, although changes and insertion of dates in the Class Notices approved by the Court that do not materially change the terms of the Stipulation shall not constitute a change in terms. The descriptive headings of any paragraphs or sections of this Stipulation are inserted for convenience of reference only and do not constitute separate terms of this Stipulation.

25.2.    **Modification**. This Stipulation may be amended or modified only by written instruments signed by (1) the Defendants or their counsel and (2) those Named Plaintiffs who, as of the date of such amendment or modification, have not requested exclusion from the Settlement, or the counsel for such Named Plaintiffs.

25.3.    **Integration**. This Stipulation and its exhibits constitute the entire agreement between the parties. No representations, warranties or inducements have been made to any party concerning this Stipulation or its exhibits other than the

8900643.9                          35

representations, warranties and covenants contained and memorialized in such documents.

25.4. **Drafting**. The parties agree that no single party shall be deemed to have drafted this Stipulation or any portion thereof, for purposes of *contra proferentem*. This Stipulation is the collaborative effort of attorneys for all parties.

25.5. **Authorization**. Counsel for all parties are expressly authorized by the parties whom they represent to enter into this Stipulation and to take all appropriate action required or permitted to be taken by such parties pursuant to this Stipulation in order to effectuate its terms, and to execute any other documents required to effectuate the terms of this Stipulation.

25.6. **Successors**. This Stipulation shall be binding upon and inure to the benefit of the successors, assigns, heirs and agents of the parties hereto.

25.7. **Cooperation**. Parties and their attorneys will cooperate with each other in good faith to effectuate the implementation of this Stipulation.

25.8. **Fairness**. The parties mutually believe that this Stipulation is fair and reasonable under the circumstances presented and have arrived at the terms of this Stipulation in the course of extensive arm's-length negotiations.

25.9. **Continuing Jurisdiction**. This Court shall retain continuing jurisdiction over all matters related to the administration of the terms of this Stipulation and Settlement and over the enforcement, construction and interpretation of the Stipulation and the Settlement and over the Named Plaintiffs, Defendants, and all Class Members with respect to matters relating hereto.

25.10. **Further Hearings.** The dates for hearings before the Court may be continued by the Court without further notice to the Class or any Class Member.

This 5th day of October, 2001.

COUNSEL FOR PLAINTIFFS:

Michael M. Mulder, Esq.
Meites, Mulder, Burger & Mollica
208 South LaSalle Street - Suite 1410
Chicago, IL 60604

Wood R. Foster, Jr., Esq.
Siegel, Brill, Greupner, Duffy & Foster, P.A.
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55402

Charles R. Watkins, Esq.
Susman & Watkins
Two First National Plaza, Suite 600
Chicago, IL 60603

COUNSEL FOR DEFENDANTS SEARS,
ROEBUCK AND CO. and SEARS RETIREE
GROUP LIFE INSURANCE PLAN:


Peter J. Brennan, Esq.
Associate General Counsel


Charles F. Regan, Jr., Esq.
Mayer, Brown & Platt
190 South LaSalle Street
Chicago, IL 60603