# Exhibit A

# FACILITIES SERVICES MASTER
# AGREEMENT UP TO $40,000

This Facilities Services Master Agreement (the "**Agreement**"), is made as of this 1st day of December, 2018 ("**Effective Date**") by and between Sears, Roebuck and Co., a New York corporation ("**Sears**"), Sears Operations LLC, a Delaware limited liability company ("**SO**"), Kmart Corporation, a Michigan corporation ("**Kmart**") and Kmart Corporation LLC, a Delaware limited liability company ("**KO**") (collectively "**Company**"), and M&S Landscaping and Contracting, a New York corporation ("**Contractor**").

## W I T N E S S E T H:

WHEREAS, Company conducts its business at multiple locations throughout the United States and its territories ("**Facility**" or "**Facilities**");

WHEREAS, Company desires to contract with Contractor to perform services at certain of its Facilities from time to time; and Contractor represents that it has the expertise and experience to perform such services and desires to undertake and perform such services for the Company in accordance with the requirements of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby confirmed and acknowledged, the parties do hereby agree as follows:

1. **SCOPE OF SERVICES**

    **1.1**    **General Scope of Services.**

    (i)    **Services.**  From time to time, Company may order General Contracting services ("**Services**" or "**Work**") from Contractor.  It is agreed and understood that Company is not promising that it will place any particular order with Contractor for Work and that no volume or other commitments have been made to Contractor whatsoever.

    (ii)    **Work Order.**  Whenever the parties agree on any Work to be performed by Contractor for Company, the parties will execute a "**Work Order**" in the form set forth on **Exhibit A**. The terms and conditions of this Agreement will govern all Work Orders between the parties.  The terms "**Services**" and "**Work**" include all labor, materials, equipment, transportation, delivery and other activities in connection with the Work set forth in the Work Order.  Each Work Order shall list the specific Services required for each project along with the Services described herein.

    (iii)    **Change Orders.**  Company, in its sole and absolute discretion, may order changes in the Work consisting of additions, deletions, or other revisions to the Contract Sum, scope of work or dates, using a written Change Order, **Exhibit D**, signed by Company and Contractor ("**Change Order**").  No change in any Work may be undertaken until a properly executed Change Order has been signed by the Contractor and executed by Company.   Prices for any changed work shall only be by pre-approved lump sum.

    (iv)    **Work Commencement and Completion Date.**  Time is of the essence.   All Work is to be commenced on the commencement date set forth in the Work Order ("**Work Commencement Date**") and completed by the completion date indicated on the Work Order ("**Work Completion Date**") and cannot be changed without the prior approval of Company.

    (v)    **Site Cleanup.**  Contractor shall be responsible for clean up of all waste materials and rubbish from and about the site, as well as tools, construction equipment, machinery, surplus

materials and leave the work in "broom-clean" or equivalent condition. If Contractor fails to clean up after verbal notice to do so, Company may do so and the costs shall be charged to Contractor.

(vi)    **Liquidated Damages.** Company shall be entitled to liquidated damages in the amount of one thousand five hundred dollars ($1,500.00) per day for each calendar day beyond the Work Completion Date that it takes Contractor to complete the Work. This liquidated damage amount is a reasonable estimate by the parties of the damages that Company will suffer should Contractor delay in completing its Work by the Work Completion Date. Such damages include, without limitation, lost revenue. The parties acknowledge that it would be difficult to calculate Company's actual damages caused by Contractor's delay and agree that the liquidated damage amount will become due and payable regardless of the type and amount of actual damages suffered by Company. The parties agree that Contractor will not be liable for liquidated damages for delays in completing the Work caused by Company, including but not limited to Company's failure to make available any equipment Company is required to provide for the Work as of the Work Commencement Date. The parties further agree that Contractor will only be liable for liquidated damages in connection with Work for which a specific Work Completion Date has been stated by the parties in a Work Order.

### 1.2    Warranties.

(i)    **General Warranty.** Contractor hereby warrants and guarantees: that all materials will be new; that all Work shall be performed in a good and workmanlike manner; that the Work is in compliance with all applicable laws, ordinances, and regulations; that the Work shall conform to the Agreement; and that the Work shall be free from defects as determined by Company. Any Work not in conformance with this guarantee shall be considered defective ("Defective Work").

(ii)    **Defective Work Warranty.** In addition to Contractor's warranty obligations in Paragraph 1.2(i), Contractor agrees to repair or replace, at Company's option, any Defective Work (including, without limitation, defective equipment or materials or faulty repair work) for a period of one (1) year from the actual or scheduled Work Completion Date, whichever is later, or early termination of this Agreement as herein provided (unless a longer warranty period is provided by any equipment manufacturer, or is established by applicable law, or is set forth in any Work Order or exhibit hereto, in which case such longer period shall apply), and during that time Contractor shall replace or repair to Company's satisfaction any Defective Work. Contractor shall repair or replace Company's materials, equipment, goods, and other Company property damaged as a consequence of Defective Work, all without any cost to Company. The provisions of this Paragraph 1.2(ii) shall not act as a time limitation on the obligations of Contractor in Paragraph 1.2(i) or other obligations in this Agreement.

(iii)    **Manufacturer's Warranty.** Contractor shall also provide Company with all manufacturers' warranties for products or materials incorporated into the Work. Such warranties shall be in addition to and not be limited by the provisions in 1.2(i) and (ii) above. Contractor hereby agrees to assign to Company all assignable warranties, representations and indemnities granted to Contractor by third parties in any work or materials or any components thereof, and all remedies for breach of such warranties, representations and indemnities. To the extent that Contractor is not permitted to assign any of such warranties and indemnities to Company, Contractor shall enforce such warranties and indemnities on behalf of Company to the extent Contractor is permitted to do so under the terms of the applicable third party agreements.

(iv)    **Survival.** The provisions of Paragraphs 1.2(i), (ii) and (iii) above shall survive completion of the Work to be performed under, or the earlier termination of, this Agreement.

### 1.3    Subcontractors.    Contractor shall not use subcontractors ("Subcontractors") without Company's prior written approval. The terms of this Agreement apply to Contractor's Subcontractors as they apply to Contractor. Contractor is responsible for the acts and omissions of its Subcontractors as though they were Contractor's own acts or omissions. Contractor's performance under this Agreement is deemed to include performance by all Subcontractors, Contractors, agents and others who perform any part of this Agreement on behalf of Contractor. Contractor shall timely pay its Personnel, including its

Subcontractors, and shall hold Company harmless against Personnel payment claims. Contractor shall ensure that each Subcontractor maintains the insurance and endorsements required of Contractor under this Agreement. Contractor shall, upon Company's request, immediately remove any Personnel objectionable to Company.

Contractor shall require its subcontractors to carry the insurance that Contractor is required to carry under Section 5 (Insurance). If a subcontractor does not maintain CGL, Contractor's CGL must insure the subcontractor, with the coverages and limits required under Section 5. Contractor shall hold harmless the Indemnified Parties from all damages, costs, losses, and liabilities suffered by the Indemnifying Parties as a result of the failure of Contractor or its subcontractors (or both) to maintain the insurance coverages required under this Agreement.

### 1.4. **General Requirements.**

(i)   **Performance of Work.**  Contractor shall perform all work in a good, professional and workmanlike manner.  Contractor represents and warrants that the Services shall be performed by only licensed, qualified, trained, careful and efficient employees or subcontractors, to the extent subcontractors approved herein.  The Work shall be in accordance with the best practice of other contractors similarly situated to Contractor, in compliance with the drawings and specifications (if any) and all applicable codes and laws.

(ii)   **Local Rules.**  Contractor shall cause its employees, subcontractors and their agents and employees, and any other persons performing any portion of the Services to observe the working rules, building rules and regulations, security regulations and holiday schedule of Company, while working on the Facilities and to perform their respective duties in a manner which does not unreasonably interfere with operations, and with a minimum of inconvenience to Company and its customers as judged by Company.  Company may require Contractor's employees and/or subcontractors to exhibit identification credentials at all times while at the Facilities. The personal property of Contractor's employees, subcontractors or agents will be subject to inspection by Company at any time.

(iii)   **Licenses and Permits and Compliance with Laws.** Prior to the commencement of the Services at the Facilities, Contractor shall procure all licenses, permits and approvals required by federal, state or local authorities in connection with the performance of the Services.  Contractor shall keep all such licenses, permits and approvals in full force and effect during performance of the Services and pay all fees therefor and furnish copies to Company upon request.  Contractor shall comply with (and give all notices required by) all laws, ordinances, rules, regulations, lawful orders and other requirements of public authorities bearing on performance of the Services.  All tools, supplies and other equipment provided or used by Contractor ("**Equipment**") in connection with Services hereunder shall comply with all federal, state and local laws.  Unless otherwise indicated in the Work Order, Contractor shall be responsible for obtaining at its sole expense all permits and licenses and for payment for all inspection fees and taxes.  In addition, where applicable, Contractor shall be responsible for furnishing the state with any guarantee or other bonds required under law.

(iv)   **Safety.**  Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of this Agreement.  Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to: (i) all persons performing any portion of the Services and other persons who may be affected thereby; (ii) the Facilities in which the Services are performed, and materials and equipment to be incorporated therein, whether in storage on or off the site, under the care, custody or control of Contractor or Contractor's subcontractors; and (iii) other property at the Facilities.  Contractor shall coordinate its Work with that of other contractors working at the Project or employed by Company or working at the site.  Contractor shall be in control of and responsible for all construction and repair means, methods, procedures, sequences, and job site safety.  Contractor shall erect and maintain, as required by existing conditions and performance of the Services, safeguards for safety and protection,

including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

(v)    **Site Examination.** Prior to the commencement of Work and from time to time thereafter, Contractor shall examine the drawings and specifications (if any) and the roof, including the deck (is applicable), to determine the existence of inconsistencies, errors, or omissions impacting the execution of the Work. Contractor also shall examine the site for conditions materially different from those indicated on the drawings and specifications and field verify all measurements identified on the drawings. Contractor shall notify Company in writing before commencing the Work or any applicable portion thereof in the event any inconsistency, error, omission, site condition, or field measurement may adversely impact the Work or any portion thereof.

(vi)    **Code of Conduct.** Contractor shall comply with Sears Holdings Corporation's Code of Vendor Conduct ("**Code of Conduct**"), as published by Company from time to time at http://searsholdings.com/docs/SHCCodeofVendorConduct.pdf. Contractor shall support the Code of Conduct and shall not take any action that may cause an employee to violate the Code of Conduct.

(vii)    **Asbestos and Hazardous Materials.** Contractor shall not perform any Work in which it uses or incorporates, in whole or in part, any asbestos, asbestos-containing materials or other hazardous materials as defined from time to time by applicable federal or state laws, rules and regulations in any aspect of its Work. Additionally, Contractor acknowledges and agrees as follows: (a) Contractor understands that the Facilities at which it is performing the Work may not have been tested for asbestos or labeled with asbestos warning signs; (b) if the Work that Contractor is going to perform involves construction, repair or maintenance relating to ceiling tile, floor tile, sprayed-on-fireproofing, or boiler, pipe and duct insulation, Contractor must presume that asbestos is present in these materials unless tests indicate otherwise; and if Contractor does not have documentation that any such material is asbestos-free, the material must be tested for asbestos under the direction of Company's Environment Department before disturbance by Contractor; and (c) if Contractor discovers an existing or suspected presence of any asbestos, asbestos-containing materials or other hazardous materials in any area of a Facility while performing its Work, Contractor shall immediately cease Work in that area, notify Company in writing of the discovery, continue Work at the Facility in unaffected areas and not remove any such materials from the Facility.

## 2.    PAYMENT

**2.1    Contract Sum.** Contractor's compensation for performance of the Work and all Services required by this Agreement shall be the amounts set forth in the Work Order ("**Contract Sum**"). The Contract Sum set forth on the Work Order includes all charges for applicable taxes, freight, licenses, permits, labor, materials, equipment, transportation, rigging, warehousing, insurance, delivery and all other activities associated with the Services. Contractor shall be responsible for and shall bear the cost of all aspects of administering, operating and performing the Services detailed in this Agreement and the Work Order, unless otherwise expressly provided for herein. Contractor shall purchase in its own name all supplies, services and equipment necessary for Contractor's performance of the Services. Any cost not listed in the Work Order, shall be at Contractor's sole expense.

**2.2    Application for Payment.** Upon final completion of the Work or upon such other time as may be mutually agreed upon, Contractor shall submit to Company an Application for Payment (see **Exhibit B**) and a Contractor's Affidavit and Sworn Statement on Company's forms, together with original, executed, and notarized waivers of lien executed by Contractor and its subcontractors on the Company's forms (**Exhibit C**), for all Work completed at, and materials delivered to, the applicable Facilities. Company will initiate payment on Contractor's properly submitted invoices 30 days after receipt of invoice. Contractor agrees to apply a five percent (5%) discount to invoices submitted pursuant to the payment terms set forth in this Section 2.2. However, if a payment date is a Saturday, Sunday or bank holiday, then Company will initiate payment the next business day. Contractor can expect to receive payment within not more than five days after Company initiates payment. Company

has no obligation to pay any amount first invoiced more than six months after it accrued. Company is not required to pay any disputed charge until the dispute is resolved. All payments will be in U.S. Dollars. Company may make payments using "Electronic Funds Transfer" (EFT) or ePayables (credit card settlement), in which case Contractor shall complete and deliver such applications and authorizations as Company customarily requires for these purposes.   No interest shall be payable to Contractor on any funds due or claimed to be due under this Agreement unless otherwise required under applicable state law.   Invoices and all fees payable to Contractor under this Agreement shall be detailed, categorized and clearly stated. Contractor shall reflect all applicable taxes on its invoices to Company hereunder and shall be solely responsible for the remittance of all such taxes to the proper taxing authorities.   All amounts payable under this Agreement shall be payable in U.S. Dollars.  Company, may, in its discretion, pay to Contractor an amount equal to ninety percent (90%) of the total amount of any Application for Payment with ten percent (10%) held as retainage.  The retainage shall be paid after the actual final completion of the Work which shall occur only upon Contractor: 1) completing all punch list items to the satisfaction of Company, which punch list shall be prepared after substantial completion of the Work as determined by Company; 2) tendering to Company original, executed, and notarized final lien waivers and notarized final Contractor's Affidavit and Sworn Statement for Contractor and all subcontractors, final Application for Payment and other close-out documentation as required by Company to Company's satisfaction; 3) delivering all executed Change Orders, if any; and, 4) delivering all applicable as-built drawings, warranties and guarantees.  With respect to Work performed in New Jersey, the parties agree that any disputes regarding whether Company has failed to make any payment to Contractor in accordance with New Jersey law may be submitted to a process of alternative dispute resolution.

**2.3    Address for Applications for Payment.**    Contractor shall submit its Applications for Payment in accordance with the terms set forth in this Agreement.  Contractor agrees to accept payment from Sears, SO, Kmart, KO or Sears Procurement Services, Inc. ("SPS"), a wholly owned subsidiary of Sears.  Any Applications for Payment and invoices sent directly to SPS shall be free of any sales or use tax, provided that SPS has furnished Contractor with the applicable sales tax exemption certificate.  Unless otherwise directed by Company, Applications for Payment shall be submitted to:

Sears Holdings Management Corporation

**2.4    Deductions.**  Company may decline to pay an invoice, in whole or in part to the extent Company determines it is necessary to protect it from loss due to (i) breach by Contractor of any of its obligations under this Agreement, including a failure to pay taxes; (ii) third party claims filed or reasonable evidence indicating probable filing of such claims; (iii) damage to Company where such damage arises out of the actual or alleged willful misconduct, negligent acts or omissions, or breach of this Agreement by Contractor, or its agents, employees, subcontractors, or any other person for whom, directly or indirectly, any one of them may be liable; or (iv) reasonable evidence that the Work will not be installed within the time requirements specified in the Work Order.  Acceptance by Contractor of final payment shall constitute a waiver of all claims against Company for Work performed under this Agreement. Company shall have the right of set-off and may withhold payment of sums invoiced by Contractor to the extent Contractor has not performed the Services to the full satisfaction of the Company or Contractor is otherwise indebted to Company.

**2.5    Books and Records.**  Contractor shall keep and maintain complete and accurate books and records regarding the Services provided hereunder at its principal place of business for a period of three (3) years or any longer period required by law following the completion of all Services under this Agreement.  Contractor shall keep and make available for inspection, examination and audit by the Company, its employees, agents or representatives, all records maintained by Contractor in connection with the furnishing of the Services hereunder.

**2.6    Additional Work.** Company shall not be responsible for the payment for additional work performed by Contractor that was not authorized in advance, in writing, by an authorized representative of Company.

**2.7    Liens.** Contractor agrees to keep the property which is the site of the Work and any funds held by Company or any lender of Company free of any liens (including stop notices) by any subcontractors. Should any such lien be filed or threatened, Company may, in its sole discretion, (i) require Contractor, at its expense, to furnish an appropriate bond or title indemnity of one hundred fifty percent (150%) of the lien amount to remove the effect of the lien from such property or funds; (ii) withhold funds otherwise due Contractor equal to one hundred fifty percent (150%) of the lien amount to assure payment of such liens; and/or (iii) consider Contractor in default and seek any or all remedies identified in Article 6.

**2.8    Electronic Communications.** Whenever requested by Company, Contractor shall electronically send to Company and receive from Company orders, invoices, and other documents and information via a third party e-commerce service provider specified by Company from time to time, currently Ariba Contractor Network (**"E-Commerce Provider"**). Contractor shall acquire and pay for the licenses, equipment, and service agreements that the E-Commerce Provider requires for the use of its systems, and other services required by Company from time to time. When transmitting a document or information through the E-Commerce Provider, Contractor is responsible to confirm its receipt by the other party, and to retransmit it in the event of any transmission failure or error, due to whatever cause. Contractor shall not use the malfunction, failure or temporary unavailability of the E-Commerce Provider's system as an excuse for its breach of this Agreement. The parties acknowledge that agreements, documents, and communications signed and transmitted through the E-Commerce Provider are as enforceable as physically delivered signed paper originals. The parties agree that this Agreement and each Order that has been electronically signed or accepted via a process approved by Company from time to time (such as, through DocuSign®) will have the same effect as though they were signed by pen on paper.

**2.9    Tax.** Company will pay all state and local sales and use taxes resulting from this Agreement to Contractor and Contractor will remit such taxes to the applicable taxing authority, unless Company provides Contractor with a valid tax exemption certificate for the appropriate taxing authority. Contractor will separately state taxes for each jurisdiction on the invoice provided to Company by tax category (e.g., taxable and non-taxable property and services will be separately stated). In the event a tax should later be imposed by any taxing authority upon services provided pursuant to this Agreement, Contractor may invoice Company and Company will pay such taxes to Contractor.

**3.    INDEPENDENT CONTRACTOR AND PERSONNEL**

It is clearly understood and agreed, that Contractor's status shall be that of an independent contractor and not that of a partner, joint venture, servant, agent or employee of the Company. Contractor is not authorized to, and shall not, make or undertake any agreement, understanding, waiver or representation on behalf of the Company. Contractor shall have the right to select and determine the persons who shall render the Services at the Facilities, provided that the Company reserves the right, which may be exercised in its sole discretion, to immediately remove, or to require Contractor to immediately remove, from the Facilities any employees or subcontractor who, in the Company's sole discretion, are unqualified, have engaged in improper conduct, or otherwise pose a hazard or threat to any persons or property on the Facilities; provided, however, that such right of the Company shall not give rise to a duty on the part of the Company to exercise this right for the benefit of Contractor or any other person or entity. Contractor assumes full responsibility for all contributions, deductions, taxes and assessments on all payrolls or otherwise under all applicable federal, state and local laws (including withholding from wages of its employees where required) and Contractor shall be responsible for all negotiations and contracts with the bargaining agents, if any, of the employees of the Contractor. Contractor shall ensure that there are no labor-related disruptions to Facilities operations. Any disruption in Services by Contractor's regular work force due to labor disputes or strikes must be resolved immediately, at

Contractor's sole expense, by hiring other compliance, nonunion labor or other solution as approved by Company, so that the end result is no disruption to the Facilities.

4.    **INDEMNIFICATION AND DEFENSE OF CLAIMS**

      4.1    **Indemnification.**  To the fullest extent permitted by law, Contractor shall defend, indemnify and hold harmless Sears, Roebuck and Co., Sears Operations LLC, Kmart Corporation, Kmart Operations LLC, the landlords (if any) and owners of the Facilities and their respective parent corporations, affiliates, officers, directors, shareholders, distributors, agents, employees, successors and assigns (collectively, the "**Indemnified Parties**"), from and against any and all claims, demands, actions, causes of action, liabilities, damages, losses, fines, penalties and expenses, including, without limitation, attorneys' fees and expenses, resulting from or arising out of, in whole or in part: (i) the Work; (ii) any acts, errors or omissions of Contractor, its employees, agents, or subcontractors, whether or not lawful or within the scope of their employment, (iii) the failure of Contractor, its employees, agents or subcontractors to comply with any law, statute, ordinance, code, rule, regulation or requirement of a public authority, (iv) an inquiry, investigation, or charges of any public authority relating to the Services; (v) any actual or alleged infringement of any patent, copyright, trade secret or other proprietary right of any third party relating to the Services performed under this Agreement; (vi) claims by Contractor's employees, agents or subcontractors, relating to the Services, including any allegations relating to failure to pay and liens or notices of liens, or stop pays in connection with the Work, (vii) assertions under workers' compensation or similar employee benefit acts by Contractor or its, agents, employees or subcontractors, or (viii) any breach by Contractor of any obligation of Contractor under this Agreement (items (i)-(viii) are collectively the "**Claims**").  The obligations of Contractor under this Article 4 shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 4.1.  The foregoing provisions shall apply irrespective of whether Claims are asserted by a party, its employees, subcontractors, or by unrelated third parties.

      4.2    **Worker's Compensation.**  With regard to work-related injuries involving Contractor's employees, Contractor specifically and expressly waives any immunity it may be granted under applicable Workers' Compensation statutes.  In claims against any person or entity indemnified under this Article 4 by an employee of Contractor, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Article 4 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for Contractor or a subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

      4.3    **Defense.**  Contractor shall have the right to control the defense of any Claim; provided, however, that Company shall have the right to participate in the defense and in selecting counsel therefor.  Upon Contractor's request, Company shall reasonably cooperate in such defense and Contractor shall reimburse Company for its reasonable out-of-pocket expenses in providing such cooperation.  Company shall provide prompt notification of any Claim; provided, however, that any delay by Company in giving such notice shall not relieve Contractor of its defense and indemnity obligations pursuant to this Agreement.

      4.4    **Loss of Materials or Equipment.**  Company will not assume responsibility for loss of materials or equipment due to theft, burglary or mysterious disappearance.  Contractor shall be responsible for Contractor's and subcontractors' tools, equipment, scaffolding, or any other property of Contractor or subcontractors not destined to become part of the Work, or any loss of or damage to such property shall be the Contractor's sole responsibility.

5.    **INSURANCE**

      5.1    **Policies Required.**  Contractor shall procure and maintain, at its own expense, the following policies of insurance:

(i) **Workers' Compensation Insurance** providing statutory benefits and limits of liability complying with all applicable statutory requirements in the state(s) in which Contractor or subcontractor will be providing the Services, with a waiver of subrogation in favor of all Indemnified Parties (except if such a waiver cannot be provided in connection with any applicable state funded workers' compensation program), and Employer's Liability Insurance with limits of not less than $100,000 per accident or disease and $500,000 aggregate by disease. Contractor may self-insure workers' compensation only in states where the governing state bureau has issued a qualified self-insurance license for workers' compensation. With respect to work performed in Puerto Rico, the foregoing provisions of this Section 5.1(i) shall not apply, provided that Contractor shall have statutory insurance providing benefits and coverage for the personnel providing services hereunder on Workers Accident Compensation, Non Occupational Disability Insurance, and Chauffeurs Social Security in accordance with applicable law. The requirement for Contractor to maintain workers' compensation insurance as described herein shall not apply if Contractor is a sole proprietor and is not required by applicable state law to maintain workers' compensation insurance, provided that Contractor certifies in writing on a form to be provided by Company that: (1) Contractor is a sole proprietor; (2) Contractor is not required by law to maintain workers' compensation insurance; and (3) if Contractor's entity status changes such that Contractor is no longer exempt from applicable statutory requirements regarding workers' compensation, then Contractor shall be subject to the full requirements of this Section 5.1(i).

(ii) **Motor Vehicle Liability Insurance** with coverage for all owned, non-owned and hired vehicles including the loading or unloading thereof with combined single limits of not less than One Million Dollars ($1,000,000) per occurrence for bodily injury and property damage for Contractor and subcontractor. If no vehicles are owned or leased, the Commercial General Liability Insurance shall be extended to provide insurance for non-owned and hired automobiles.

(iii) **Commercial General Liability Insurance** providing coverage for premises/ operations, contractual, products/completed operations and personal/advertising injury liabilities, with a cross-liability endorsement, severability of interests clauses, and providing coverage for explosion, collapse and underground hazards with combined single limits of not less than One Million Dollars ($1,000,000) per occurrence ($2,000,000 aggregate) for bodily injury and property damage. Completed operations coverage shall continue to be maintained for at least one (1) year following the completion of the Work, naming Sears, Roebuck and Co., Sears Operations LLC, Kmart Corporation, Kmart Operations LLC and the other Indemnified Parties as additional insureds during such period of continuation.

**5.2** **Insurance Requirements.** The Commercial General Liability insurance policy shall name "Sears, Roebuck and Co., Sears Operations LLC, Kmart Corporation, Kmart Operations LLC the landlords (if any) and owners of the Facilities where the Work is being performed and their respective affiliates" as additional insureds, and shall stipulate that such insurance is primary, and not contributing with, any other insurance carried by, or for the benefit of Company or the other additional insureds. All of the policies shall be issued by companies qualified to do business in the state where the services are to be provided, and shall be rated A-/VII or better in the most current edition of Best's Insurance Reports. Prior to execution of this Agreement, Contractor shall provide the Company with certificates of insurance evidencing the insurance coverage required hereunder, and at the request of the Company, certified copies of such policies or portions thereof. All such insurance policies shall provide that they may not be materially changed, non-renewed or canceled without at least thirty (30) days' prior written notice to the Company.

**5.3** **Failure to Maintain Insurance.** Any approval by the Company of any insurance policies shall not relieve Contractor of any responsibility hereunder, including, without limitation, claims in excess of the limits and coverage described above. Receipt and review by the Company of any copies of insurance policies or insurance certificates, or failure to request such evidence of insurance, shall not relieve Contractor of its obligation to comply with the insurance provisions of this Agreement. Any failure of Contractor or its subcontractors to procure and properly maintain the required insurance coverage shall give the Company the right to immediately cancel this Agreement, effective upon written notice to Contractor or to withhold payments from Contractor until evidence of such acceptable coverage is provided. Umbrella Insurance may be used to satisfy the limit requirements set out above for Commercial General Liability, and Motor Vehicle Liability Insurance. Such umbrella

policy shall apply without any gaps in the limits of coverage, be at least as broad as and follow the form of the underlying primary coverage.

**5.4    Waiver of Subrogation.**  Except where prohibited by law, the insurance carriers for each coverage set forth in Section 5.1 above shall waive all rights of subrogation that the insurer may have against the Company and the Indemnified Parties.

**5.5    Subcontractor Insurance.**  Contractor agrees to require subcontractors to comply with the insurance requirements of this Article 5 and will monitor subcontractor compliance. Contractor agrees that it will contractually obligate subcontractors to advise Contractor promptly of any lapse of the requisite insurance coverage, and Contractor agrees to advise Company promptly of same. Contractor warrants that if a subcontractor does not maintain any required insurance coverage, Contractor's insurance coverage shall insure the subcontractor. Contractor shall defend, indemnify and hold harmless Sears, Roebuck and Co., Sears Operations LLC, Kmart Corporation, Kmart Operations LLC, the landlords (if any) and owners of the Facilities where the Work is being performed and their respective affiliates for any loss or expense due to the failure of Contractor's subcontractor to maintain and possess such insurance, including but not limited to workers compensation insurance.

## 6.    TERM

**6.1    Term.**  This Agreement shall be effective on the date specified in paragraph one and shall expire terminate one year thereafter, unless terminated earlier as indicated in this Agreement.

**6.2    With Cause Termination.**  If Contractor breaches any term of this Agreement or fails to fulfill its obligations under any Work Order, makes a general assignment for the benefit of creditors, or should a receiver be appointed for Contractor, Contractor shall be in default of this Agreement. Upon Contractor's default, Company, without limiting or waiving any other rights which Company may have at law or equity, may do any or all of the following: a) terminate this Agreement or Work Order; b) suspend Contractor from the Work or any portion thereof; take possession of all or the applicable portion of Contractor's materials, tools, and appliances on the site; finish the Work or portion thereof; and seek compensation from Contractor for all sums Company expended in excess of the Contract Sum to complete the Work or portion thereof; c) withhold until breach is remedied payments to Contractor in the aggregate amount of one hundred fifty percent (150%) of the amount Company estimates it has been damaged or will be damaged by Contractor's default; and/or d) seek from Contractor monetary damages in excess of any unpaid Contract Sum for the Work performed to compensate Company for damages it sustained from Contractor's default, including, without limitation, compensation for additional management and administrative services, costs of design professional services, attorneys' fees, additional costs of other contractors to perform the Work, and damages for delay to the project. Company shall be entitled to collect its reasonable attorneys' fees and costs, including expert and consulting fees, incurred in enforcing any term of this Agreement or as a result of Contractor's breach of any term of this Agreement, including, without limitation, participation in any settlement discussions, alternative dispute resolution processes, or litigation.

**6.3    Without Cause Termination.**  Company has the right to terminate this Agreement or any applicable Work Order, in whole or in part, including as to a particular Company location, at any time and for any reason or no reason at all, upon not less than 30 days' prior written notice to Contractor.

**6.4    Out of the Ordinary Closures.**  Contractor understands that from time to time, a Facility may be temporarily or permanently and partially or entirely closed as a result of natural disasters, remodeling, actions of landlords or governmental entities, or other such causes.  In such case, the Company will have the right to terminate a Work Order at the Facility without providing seven days prior written notice. Company will notify Contractor of the closure as soon as practicable and whether the Services are to be suspended or modified.   Fees will be eliminated or reduced accordingly and immediately.

**6.5    Transition Upon Termination**.      During the Term of this Agreement or

any Work Order and for 12 months after expiration or termination of this Agreement or any applicable Work Order (including termination by either party and for any reason) (the "**Transition Period**"), Contractor will provide Company all reasonable transition services requested by Company, in order to effect a smooth transition of the Services to another provider or to Company's internal operations ("**Transition Services**"). To the extent that Transition Services are outside the Contractor's obligations under any applicable Work Order, Contractor may charge Company no more than Contractor's then-standard rates, taking into account the average discount Contractor provides similarly sized customers. However Contractor shall not charge for the final information transfer in connection with termination or expiration of this Agreement or any applicable Work Order. As part of the Transition Services, Company is entitled to month-to-month extensions of any existing Work Order, not to exceed 12 months, at the rates in effect between Company and Contractor immediately before expiration or termination. Company's payment of fees for Transition Services will not be a waiver of Company's right to claim those amounts as damages, in the event Contractor has breached this Agreement or any applicable Work Order. Regardless of anything to the contrary in this Agreement, termination of this Agreement will not terminate any licenses granted under this Agreement until the Transition Period has expired.

## 7.    **GENERAL PROVISIONS**

7.1    **Notices.**  Any notice, request, demand, instruction or other document to be given or served hereunder or under any document or instrument executed pursuant hereto shall be in writing and shall be (i) delivered personally with a receipt requested therefor, or (ii) sent by a nationally recognized overnight courier service, or (iii) sent by United States registered or certified mail, return receipt requested, postage prepaid and addressed to the parties at their respective addresses set forth below, and the same shall be effective (a) upon receipt or refusal if delivered personally, (b) one (1) business day after depositing with an overnight courier service, or (c) three (3) business days after deposit in the mails if mailed.  A party may change its address for receipt of notices by service of a notice of such change in accordance herewith.

(i)    If to Contractor:
At the address listed after the Contractor's signature
in this Agreement or in any Work Order.

(ii)    If to Company:

Sears Holdings Management Corporation
3333 Beverly Road, A2-374A
Hoffman Estates, Illinois 60179
Attn:  Director, Major Maintenance
With a copy to the General Counsel at the same address.

7.2    **Assignment.**    Contractor shall not assign or subcontract all or any part of its rights or obligations hereunder, without the prior written consent of Company, and any attempt to do so shall be null and void and of no force or effect whatsoever.  The Company may assign or transfer its interest in this Agreement without the consent of Contractor or other limitation.  The Company shall have no further duties or obligations under this Agreement upon its assignment of all of its rights.  This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns.

7.3    **No Waiver**. No delay or omission on the part of any party hereto in exercising any right hereunder shall operate as a waiver of such right or any other right under this Agreement.

7.4    **Headings**. The headings used herein are for reference only and shall not limit or control any term or provision of this Agreement or the interpretation or construction thereof.

7.5    **Applicable Law and Venue**. This Agreement shall be deemed to be entered into and shall be construed in accordance with the laws of the state of Illinois.

**7.6    Entire Agreement**. This Agreement, together with the Exhibits and any executed Work Orders and Change Orders, constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and this Agreement supersedes all prior proposals, agreements, memorandum, understanding, negotiations and discussions, whether written or oral, of the parties in connection with the subject matter hereof. No change, amendment or modification of this Agreement shall be binding unless in writing and executed by the party to be bound thereby.

**7.7    Confidentiality and Advertising.** During the term of this Agreement, the Company may communicate to Contractor certain information to enable Contractor to render the Services hereunder or Contractor may develop confidential information for the Company. Contractor agrees to treat, and to obligate Contractor's employees and subcontractor's to treat, as secret and confidential, all such information whether or not it is identified by the Company as confidential. Contractor agrees that confidential information will include all information about Company's individual customers, including, but not limited to, names, addresses, telephone numbers, account numbers, customer lists, and demographic, financial and transaction information. Contractor agrees that it will not use Company or its affiliate's name nor reveal the existence of this Agreement in any advertising, promotional activities, or publicity releases without the Company's prior written consent.

**7.8    Survival**. Upon termination or expiration of this Agreement, all terms that by their nature should survive, will survive, including without limitation, the obligations set forth in Articles 1.2, 4, 5.1(iii), and 7. In addition, to the extent any Work Order has not been completed at the time this Agreement expires, this Agreement shall continue until those Work Orders are completed to Company's satisfaction.

**7.9    Ownership of Documents**. All originals, duplicates and negatives of all plans, drawings, reports, photographs, charts, programs, models, specimens, specifications, and other documents and materials which may be furnished to Contractor hereunder, including drafts and reproduction copies thereof, shall be and remain the exclusive property of the Company. Upon the termination of this Agreement, or upon request of the Company, during any stage of the Services, Contractor shall promptly deliver all such materials to the Company.

**7.10    Rights and Remedies**. Duties and obligations imposed by this Agreement and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**7.11    Interpretation**. This Agreement has been negotiated and entered into by each party with the independent advice of counsel and shall not be construed against one party or the other based on which party drafted any portion of the Agreement.

**7.12    Non-Discrimination. To the extent applicable, Contractor and its subcontractors shall abide by the requirements of 41 C.F.R. 60-1.4(a) and (b), 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, sexual orientation, gender identity, or national origin. These regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment qualified individuals without regard to their race, religion, sex, sexual orientation, gender identity, national origin, protected veterans status or disability. To the extent applicable, Contractor shall also comply with regulations implementing Executive Order 13665, which prohibits discriminating against employees or applicants for inquiring about, discussing, or disclosing their own pay or the pay of other employees or applicants, except in certain circumstances. To the extent applicable, the employee notice requirements set forth in 29 C.F.R. Part 471, Appendix A to Subpart A are hereby incorporated into this Agreement.**

**7.13**   **Severability.** If any provision of this Agreement is deemed invalid, illegal, or unenforceable in any jurisdiction, (i) such provision will be deemed amended to conform to applicable laws of such jurisdiction so as to be valid and enforceable, or if it cannot be so amended without materially altering the intention of the parties, it will be stricken, and (ii) the remainder of this Agreement will remain in full force and effect.

**7.14**   **No Third Party Beneficiaries.** This Agreement shall not be deemed to confer any rights to any other party as a third party beneficiary or otherwise.

**7.15**   **Work Product.** All drawings, specifications, designs and data (hereinafter referred to as "Work Product") prepared by Contractor hereunder are and shall be the property of Company. Any copyrightable items which Contractor writes or creates for Company hereunder will be works made for hire and/or contributions to a composite work and Company will be deemed the author of same for copyright purposes. Company may use such materials in whole or in part or in modified form for such purposes as Company may deem desirable without further employment or compensation to Contractor.

**7.16**   **Shop Your Way® Vendor Engagement Program.** Company values strong relationships with its Contractors. Company believes that these relationships are strongest when our contractors and their employees are engaged with Company initiatives and are active users of Company programs, products and services. Contractor agrees to participate in Company's "Shop Your Way Vendor Engagement Program" as more specifically set forth in Exhibit E and through that program otherwise encourage its employees to participate in Company's Shop Your Way program. Company reserves the right to modify or discontinue, in whole or in part, the Shop Your Way Program and the Shop Your Way Vendor Engagement Program at any time in its sole discretion.

**7.17**   **Divestiture.** Unless directed by Company otherwise, Contractor shall treat any business that has been or is hereafter divested by Company (or one of its Affiliates), as an Affiliate of Company for a period of five years after its divestment and for an additional period of up to five years, during which additional period either party may, for any reason in its sole discretion, terminate recognition of the divested business as an Affiliate of Company under this Agreement upon 30 days advance notice to the other.

**7.18**   **Exhibits.** Attached hereto are Exhibit A, B, C, D and E, the terms and conditions of which are hereby incorporated by reference herein. In the event of a conflict between this Agreement and the exhibits or Work Orders, the terms and conditions of this Agreement shall prevail. Any provisions of Contractor's proposals, contracts, invoices, billing statements, acknowledgement forms or any other document which are inconsistent with the provisions of this Agreement shall be of no force or effect.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

**THIS AGREEMENT IS INTENDED ONLY FOR WORK THAT DOES NOT EXCEED $40,000. THIS AGREEMENT WILL BE VOIDABLE BY COMPANY, IN ITS SOLE DISCRETION, IF THE CONTRACT SUM IN ANY WORK ORDER EXCEEDS $40,000.**

**SEARS, ROEBUCK AND CO.**
**SEARS OPERATIONS LLC**
**KMART CORPORATION**
**KMART OPERATIONS LLC**
By: Sears Holdings Management Corporation, their Agent

Signature: _Roger Sinanan_

Printed Name:   ROGER SINANAN
Title:   District Facilities Manager

Facilities Services Master Agreement up to $40,000   rev. 6/25/2015

**CONTRACTOR:**

Signature: _Mustafa_____

**Printed Name:** *Mustafa Jamal*
**Title:** *President*

**Contractor Remittance Information:**

Contractor Name: *M&S Contracting*
Address: *112 Iroquois RD*
City: *Yonkers*  State: *NY*    Zip Code: *10710*
**Federal Tax ID Number:**  *38-3851907*

**Exhibits:**
A:    **Work Order Form for Scope of Work and Compensation**
B:    **Application for Payment**
C:    **Lien Waiver Forms**
D:    **Change Order Form**
E:    **Shop Your Way Vendor Engagement Program**

**Work Order Page 1 of  2**

# EXHIBIT A
## WORK ORDER FORM
## FOR SCOPE OF WORK AND COMPENSATION

Whereas,        ("Contractor") and Sears, Roebuck and Co., Sears Operations LLC, Kmart Corporation, and Kmart Operations LLC (collectively the "Company") have previously entered into a Facilities Services Master Agreement, dated        (the "Agreement"), which is intended to include the Services set forth in this Work Order.  The terms and conditions of the Agreement are hereby incorporated by reference herein.

| *Project Information:* | |
|---|---|
| Date: | |
| Project Name: | |
| District #: | |
| Unit #: | |
| Sears, SO, Kmart, or KO Facility (Indicate which): | |
| Facility Address: | |
| City, State, Zip: | |
| Work Order (SMART Ticket) #: | |
| Funding #: | |

| *Contractor Information:* | |
|---|---|
| Business Name: | |
| Business Address: | |
| City, State Zip: | |
| Phone#: | |
| Email: | |
| Work Commencement Date: | |
| Work Completion Date: | |

| *Compensation (Contract Sum):* | | |
|---|---|---|
| | Materials | $ |
| | Labor | $ |
| | Other | $ |
| | Permits and Fees | $ |
| | Freight | $ |
| | Taxes | $ |
| | | |
| | TOTAL | $ |
| | **NOT TO EXCEED $40,000** | |

**Scope of Service:**

**The following Specifications have been included as part of this Work Order:**

**The following drawings are included as part of this Work Order:**

**Agreed and Accepted:**

**Contractor:**                                      **Sears, Roebuck and Co., Sears Operations LLC,**
                                                     **Kmart Corporation, Kmart Operations LLC**
                                                     **By: Sears Holdings Management Corporation,**
                                                     **Their Agent**

**Signature:** _Mustapp_____    **Signature:** _Roger Sinanan_____
**Printed Name:** _____              **Printed Name:**   Roger Sinanan
**Title:** _____                        **Title:**   District Facilities Manager
**Date:** _____                         **Date:**

**Exhibit B**

## Application for Payment

| | | | |
|---|---|---|---|
| **Contractor:** | **Unit:** | **Dist:** | |
| **Location:** | **Today's Date:** | | |
| **Contract Number:** | **Funding Number:** | | |

| | |
|---|---|
| Original Contract Sum: | $ |
| Total of all Change Orders: | $ |
| Revised Contract Sum: | $ |
| Amount Due Contractor: | $ |

Payment breakdown (Must be completed):

| | |
|---|---|
| **Materials:** | $ |
| **Labor:** | $ |
| **Other:** | $ |
| **Permits & Fees:** | $ |
| **Freight:** | $ |
| **Taxes:** | $ |

This certifies that the Work covered by this Application for Payment has been completed and payment should be processed for the Contract Sum due Contractor. This further certifies that any Subcontractors on this project have been paid in full, and copies of their Final Waiver of Lien have been attached to this Application for Payment.

**Contractor**

**Signature:** _Mustafa_

**Print Name:** Mustafa Jamal

**Title:** President

**Date:** 11/19/2018

*Contractor: Return this form to the Company at the address indicated in Section 2.3 of the Agreement along with the invoice, copy of the Work Order, copies of any Change Orders, and signed Waivers of Lien from yourself and any Subcontractors.*

**Send to the Company:**

| | |
|---|---|
| This Form | _____ |
| Copy of Work Order | _____ |
| Copy of all Change Orders | _____ |
| Original Invoice | _____ |
| Certificate of Insurance | _____ |
| Signed Waiver of Lien from Contractor | _____ |
| Signed Waiver of Liens from Subcontractors | _____ |

EXHIBIT C
LIEN WAIVERS

## Waiver of Lien to Date and Contractor's Affidavit and Sworn Statement

State of ▮_____ )
                        ) SS
County of ▮_____ )

Project Name: _____
JA/Funding#: _____

TO WHOM IT MAY CONCERN:

    WHEREAS the undersigned has contracted with *(2)* _____ ("Owner") to furnish ▮ _____ for the premises known as *(4)* _____

The undersigned, for and in consideration of *(5)* _____ Dollars and other good and valuable consideration, the receipt whereof is hereby acknowledged, or, if not received as of this date, on the consideration that payment will be made no later than 60 days after Owner's receipt of this Waiver of Lien to Date and Contractor's Affidavit, does hereby waive and release any and all lien or claim of, or right to, lien, under the statutes of the State of *(6)*_____, relating to liens of mechanics, laborers and materialmen, with respect to and upon the foregoing described property, and the improvements thereon, and with respect to any statutory lien bond, and on the material, fixtures, apparatus or machinery furnished, and on the moneys, funds or other considerations due or to become due from the Owner (or Contractor), on account of labor, services, material, fixtures, apparatus or machinery furnished to this date by the undersigned for the foregoing described property.

Signed this _____ day of _____  ▮ Signature: _____

Notary Name: _____  Title: _____

Subscribed and sworn to before me this___day of _____  Print Name: _____

My Commission expires _____  Company Name: _____

Notary Seal Here:

**Contractor's Affidavit:** The undersigned, being duly sworn, deposes and says that it has contracted with *(2)* _____, the Contractor (or Owner) for the premises known as *(4)* _____

    That the total Contract Sum including extras is *(8)* $ _____ on which it has received payment of ▮ $ _____ for payment applications ▮ _____ to _____ prior to this payment. That all waivers submitted are true, correct and genuine and delivered unconditionally, and that there is no claim, either legal or equitable, to defeat the validity of said waivers. That the following are the names of all parties who have furnished material or labor, or both, for said work and all parties having contracts or subcontracts for specific portions of said work or for material entering into the construction thereof and the amount due or to become due to each and that the items mentioned include all labor and material required to complete said work according to plans and specifications:

| Names (include undersigned's portion of contract) Attach additional pages if necessary | What For | Contract Sum | Amount Paid | This Payment | Balance Due |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| Undersigned's portion (eg: fee, self-performed work, general conditions) |  |  |  |  |  |
| **TOTAL** (Undersigned MUST complete this line) |  | (8) | (6) |  | (11) |

    That there are no other contracts for said work outstanding, and that there is nothing due or to become due to any person for material, labor or other work of any kind done or to be done upon or in connection with said work other than above stated.

Signed this _____ day of _____  ▮ Signature: _____

    Title: _____

    Print Name: _____

    Company Name: _____

▮ Insert names of state and county where waiver is executed

(2) Insert name of party who hired you
▮ Describe what was furnished, e.g., carpentry, plumbing, etc.
(4) Provide location of project by legal description and/or common address if known
(5) Insert amount of the previous application for payment
(6) Insert name of state where project is located
▮ Signatory must be an officer of company; i.e. Pres., VP, Treasurer, CEO

(8) Insert Contract Sum including extras
▮ Insert total amount of prior payments to Subcontractors
▮ Insert prior payment application numbers which have been paid
(11) "Balance Due" plus amounts entered in the "Amount Paid" and "This Payment" columns must equal "Contract Sum" including extras

Notary Signature: _____

Subscribed and sworn to before me this _____ day of _____.

My Commission expires _____
Notary Seal Here

# Final Waiver of Lien and Contractor's Affidavit and Sworn Statement

State of ▮_____ )
County of ▮_____ ) SS
                          )

Project Name: _____
JA/Funding#: _____

**TO WHOM IT MAY CONCERN:**

WHEREAS the undersigned has contracted with *(2)* _____ ("Owner") to furnish ▮_____ for the premises known as *(4)* _____

The undersigned, for and in consideration of *(5)* _____ Dollars and other good and valuable consideration, the receipt whereof is hereby acknowledged, or, if not received as of this date, on the consideration that payment will be made no later than 60 days after Owner's receipt of this Waiver of Lien to Date and Contractor's Affidavit, does hereby waive and release any and all lien or claim of, or right to, lien, under the statutes of the State of *(6)* _____, relating to liens of mechanics, laborers and materialmen with respect to and upon the foregoing described property, and the improvements thereon, and with respect to any statutory lien bond, and on the material, fixtures, apparatus or machinery furnished, and on the moneys, funds or other considerations due or to become due from the Owner (or Contractor), on account of labor, services, material, fixtures, apparatus or machinery heretofore furnished, or which may be furnished at any time hereafter, by the undersigned for the foregoing described property.

Signed this _____ day of _____.

Notary Name: _____

Subscribed and sworn to before me this___day of _____

My Commission expires _____

Notary Seal Here:

▮ Signature: _____

Title: _____

Print Name: _____

Company Name: _____

**Contractor's Affidavit:**   The undersigned, being duly sworn, deposes and says that it has contracted with *(2)* _____, the Contractor (or Owner) for the premises known as *(4)*

That the total Contract Sum including extras is *(8)* $ _____ on which it has received payment of ▮ $ _____ for payment applications ▮ to _____ prior to this payment. That all waivers submitted are true, correct and genuine and delivered unconditionally, and that there is no claim, either legal or equitable, to defeat the validity of said waivers. That the following are the names of all parties who have furnished material or labor, or both, for said work and all parties having contracts or subcontracts for specific portions of said work or for material entering into the construction thereof and the amount due or to become due to each and that the items mentioned include all labor and material required to complete said work according to plans and specifications:

| Names (include undersigned's portion of contract) Attach additional pages if necessary | What For | Contract Sum | Amount Paid | This Payment | Balance Due | Union/ Non-Union | Minority Owned Business? |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Undersigned's portion (eg: fee, self-performed work, general conditions) |  |  |  |  |  |  |  |
| TOTAL   (Undersigned MUST complete this line) |  | (8) | (9) |  | (11) |  |  |

That there are no other contracts for said work outstanding, and that there is nothing due or to become due to any person for material, labor or other work of any kind done or to be done upon or in connection with said work other than above stated.

Signed this _____ day of _____.

▮ Signature: _____

Title: _____

Print Name: _____

Company Name: _____

Notary Signature: _____

My Commission expires _____

Notary Seal Here:

▮ Insert names of state and county where waiver is executed

(2) Insert name of party who hired you
▮ Describe what was furnished, e.g., carpentry, plumbing, etc.
(4) Provide location of project by legal description and/or common address if known
(5) Insert total contract amount including executed change orders
(6) Insert name of state where project is located
▮ Signatory must be an officer of the company; i.e. Pres., V.P., Treasurer, CEO

(8) Insert Contract Sum including extras
▮ Insert total amount of prior payments to Subcontractors
▮ Insert prior payment application numbers which have been paid
(11) "Balance Due" plus amounts entered in the "Amount Paid" and "This Payment" columns must equal "Contract Sum" including extras

Facilities Services Master Agreement up to $40,000     rev. 6/25/2015

# EXHIBIT B
## CHANGE ORDER
### [TO BE USED ONLY FOR CHANGES TO A WORK ORDER]

**Contractor:**          **Unit:**          **Dist:**

**Location:**          **Today's Date:**

**Contract Number:**          **Funding Number:**

This Change Order modifies the Work Order dated          between          and Sears Holdings Management Corporation, as agent, for Work performed at Unit Number          located at

_____ This is a Sears Facility

_____ This is Kmart Facility

**The Contractor is directed to make the following changes in the Work:**

**Description:**

Total cost of change: $          Written Amount:

**(This Change Order is effective only upon execution by a Sears Holdings Management Corporation representative.)**

Original Contract Sum:          $

Total of Previous Changes          $

Sub Total:          $

Total of This Change Order:          $

Revised Contract Sum:          $

Must Select One:

_____ This Change Order will NOT affect the Work Completion Date.

_____ The Work Completion Date has changed.

The new Work Completion Date is:

The terms and conditions in the Agreement dated          between the parties shall continue to govern this Work.

**Contractor:**

**Sears, Roebuck and Co., Sears Operations LLC, Kmart Corporation, Kmart Operations LLC**
**By: Sears Holdings Management Corporation, Their Agent**

*Roger Sinanan*

**Signature:** _____          **Signature:** _____

**Printed Name:**          **Printed Name:**    ROGER SINANAN

**Title:**          **Title:**    District Facilities Manager

**Date:**          **Date:**

## Exhibit E
## Shop Your Way Vendor Engagement Program

Contractor agrees to encourage each of its employees to engage in the Shop Your Way Program through Contractor's participation in at least 12 promotional efforts (as set forth below) during each calendar year this Agreement is in effect (pro-rated for any partial years).

Promotional efforts include the following. The number to the left of such item indicates the number of times Contractor has agreed to participate in such effort during each calendar year of this Agreement:

| # | SYW Promotional Effort |
|---|------------------------|
| ___ | Email to Contractor Employees promoting the Shop Your Way Program |
| ___ | Posting signage and/or Intranet postings regarding Shop Your Way Program |
| ___ | Articles on Shop Your Way Program in Contractor newsletters |
| ___ | On-Site enrollment opportunities at Contractor locations |
| ___ | Other promotional efforts mutually agreed to by the parties |

Company will provide electronically all related Shop Your Way program descriptions and materials for these promotions, which will explain the Shop Your Way benefits and any information necessary to enroll. Contractor will not alter program descriptions and materials, but will provide information reasonably necessary for Company to create the program descriptions specific to Vendor employees.

Contractor agrees to begin promotions for the Shop Your Way Program to its employees within sixty (60) days following the execution of this Agreement, or as otherwise agreed by Company should Company require additional time to modify or provide Shop Your Way promotional materials to Contractor. Company reserves the right to request and be granted a periodic review on a quarterly basis with Contractor's executive level members (Vice President level and up) to discuss Contractor's overall promotion and participation in the program.

Contractor has appointed the following individual as its point of contact for the Shop Your Way Vendor Engagement program and this individual will be responsible for overseeing Contractor's efforts to encourage its employees to engage in the Shop Your Way Program. Contractor additionally will maintain an appointed individual in the event of employee turnover.

Name: _____

Title: _____

Phone number: _____

E-mail address: _____