MICHAEL S. AMATO
RUSKIN MOSCOU FALTISCHEK, P.C.
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556-1425
(516) 663-6600

*Attorneys for Colonial Properties, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re                                                                          Chapter 11

SEARS HOLDINGS CORPORATION, et al.[1],            Case No. 18-23538 (rdd)

                                  Debtors.                              (Jointly Administered)
-----------------------------------------------------------X

**AMENDED MOTION OF COLONIAL PROPERTIES, LLC TO COMPEL PAYMENT OF POST-PETITION DATE RENT AND RELATED LEASE OBLIGATIONS PURSUANT TO 11 U.S.C. §§ 105(a), 363(e), 365(d)(3) AND 503(b)(1)(A)**

Colonial Properties, LLC ("Landlord") through their undersigned counsel, hereby submits this *Amended Motion to Compel Payment of Post-Petition Date Rent and Related Lease Obligations Pursuant to 11 U.S.C. §§ 105(a), 363(e), 365(d)(3) and 503(b)(1)(A)* (the "Amended Motion"). In support of the Amended Motion, the Landlord respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); SHC Licensed Business LLC (3718); and SHC Promotions LLC (9626). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

860509

## PRELIMINARY STATEMENT

1. Colonial files this Amended Motion to provide additional information that was not available at the time of the filing of its *Motion to Compel Payment of Post-Petition Date Rent and Related Lease Obligations Pursuant to 11 U.S.C. §§ 105(a), 363(e), 365(d)(3) and 503(b)(1)(A)* (the "Original Motion," Dct. 3164). Specifically, in addition to the amounts set forth in the Original Motion, and as set forth in the *Objection of Colonial Properties, LLC to Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Global Sale Transaction* dated January 31, 2019 (Dct. 2280, the "Cure Objection"), the Debtors are liable to landlord for deferred maintenance in the amount of $1,530,686.60 ("Deferred Maintenance").

2. As set forth in the Original Motion, Colonial is the landlord of property that is subject to a lease dated December 1, 1983, as amended and extended from time to time (the "Lease") for certain non-residential real property located at 118 Waller Mill Road, Williamsburg, VA 23185 (the "Premises"). The Debtors have failed to pay the full rent due under the Lease for the month of February, 2019. The Debtors are required to pay all other charges under the Lease including, but not limited to, real estate taxes, Deferred Maintenance and water charges. In addition, pursuant to the Lease the Debtors are responsible for all out-of-pocket counsel fees and expenses of landlord. Further, the Debtors subleased portions of the Premises. Landlord is entitled to immediate payment of all amounts collected by the Debtors from the subtenants subsequent to the rejection of the Premises. The Landlord seeks immediate payment of the unpaid post-Petition Date rent, additional rent and rent collected by the Debtors from the subtenants pursuant to §§ 363(e) and 365(d)(3) of the Bankruptcy Code.[2]

---

[2] The leased retail space is located in a "shopping center" as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

### The Chapter 11 Bankruptcy Case

3.     On October 15, 2018 (the "Petition Date"), the Debtors and certain of their affiliates (the "Debtors") filed respective voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

### JURISDICTION

4.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in the Motion are §§ 105(a), 363(e), 365(d)(3) and 503(b)(1) of the Bankruptcy Code.

### BACKGROUND

5.     The Debtors leased from the Landlord the entire Premises located at 118 Waller Mill Road, Williamsburg, VA 23185. A copy of the Lease is annexed to the Declaration of Lawrence Kadish dated April 11, 2019 (the "Kadish Declaration") as Exhibit A. The Lease requires the Debtors to pay monthly, among other charges, Base Rent for the use and occupancy of the Premises. Current annual Base Rent for the Premises is $562,500 (Lease, Kadish Declaration, Ex A., ¶ 6(iii)). Subsequent to the Petition Date, the Debtors made one (1) payment to the Landlord in the amount of $93,750 for the months of December 2018 and January 2019. A copy of check number 34000560, dated December 1, 2018, in the amount of $93,750 is annexed to the Kadish Declaration as Exhibit B. The Base Rent for the month of February 2019 in the amount of $46,875 remains unpaid.

6.     Pursuant to that certain *Order Approving the Rejection of Unexpired Leases of*

*Non-Residential Real Property and Abandonment of Property in Connection Therewith* the "Rejection Order") (Dct. 2805), the Debtors rejected the Lease as of February 26, 2019. As such, the Debtors are liable for rent for use and occupancy of the Premises for the period through and including February 2019.

7. In addition to the rent, the Debtors are obligated to pay:

(i) Late payments for any installment of basic rent not paid within five (5) days after its due date in the amount of one (1%) percent per annum (Kadish Declaration, Exhibit A, ¶ 6(c);

(ii) All taxes and assessments (Kadish Declaration, Exhibit A, ¶ 8);

(iii) Attorneys' fees and expenses for any and all expenses arising from any failure by the Debtors to perform any of the agreements, terms, covenants and conditions of the lease (Kadish Declaration, Exhibit A, ¶ 10).

8. Also, the Debtors occupy the entire shopping center at the Premises. Upon information and belief, the Debtors sublet portions of the Premises to eight (8) subtenants. As of the date of this Motion, Landlord has been unable to obtain any information relating to security deposits, as well as rent paid by the Subtenants to the Debtors for the period subsequent to February 26, 2019, the effective date of the rejection of the Lease. Based upon the foregoing, Landlord is entitled to payment of any and all rents and additional rents paid by the Subtenants to the Debtors for the period subsequent to February 26, 2019, together with any and all security deposits maintained by the Debtors for those Premises. A copy of a schedule of subleases entered into by the Debtors at the Premises is annexed to the Kadish Declaration as Exhibit C.

9. The Debtors also are liable to Colonial for Deferred Maintenance in accordance with the express terms and conditions of the Lease.

10. The Debtors occupied the entire Premises. Pursuant to the Lease, the Debtors

were responsible for the maintenance of the Premises during the Lease term.

11. Paragraph 11 of the Lease entitled "Maintenance and Repair" provides, in pertinent part:

> Maintenance and Repair. Lessee will, at its expense, maintain the Premises in good repair and condition, except for ordinary wear and tear, and will make all structural and non-structural, interior and exterior, foreseen and unforeseen and ordinary and extraordinary changes, replacements and repairs which may be required to keep the Premises in such good repair and condition, all of which shall be of quality at least equivalent to the original. Lessor shall not be required to maintain, repair or rebuild the Improvements or to maintain the Premises, and Lessee waives the right to make repairs at the expense of Lessor pursuant to any law at any time in effect.

(Lease, Exhibit A, ¶ 11).

12. Paragraph 12(b) entitled "Excluded Personal Property" permits the Debtors to have personal property at the Premises, however, the Debtors are responsible to repair any and all damage to the Premises caused by removal of any of the Debtors' personal property. (Lease, Exhibit A, ¶ 12(b)).

13. To the extent that the Debtors failed or refused to maintain the Premises, and make proper repairs and conduct maintenance during the term of the tenancy, then the Debtors are responsible for the costs incurred by Colonial upon surrender of the Premises. Paragraph 27 of the Lease entitled "Surrender" provides, in pertinent part:

> Surrender. Upon the expiration or termination of the term of this Lease (other than a termination pursuant to Section 17), Lessee shall surrender the Premises to Lessor in the condition in which the Premises were originally received from Lessor, except as repaired, rebuilt, restored, altered or added to as permitted or required hereby and except for ordinary wear and tear. Lessee shall remove from the Premises within 30 days after such expiration or termination all of the Excluded Personal Property then situated thereon and shall repair any damage caused by such removal. Excluded Personal Property not so removed shall become the

property of Lessor, and Lessor may cause such Excluded Personal Property to be removed from the Premises and disposed of, but the cost of any such removal and disposition (less the proceeds thereof) and of repairing any damage caused by such removal shall be borne by Lessee.

(Lease, Exhibit A, ¶ 27).

14. Subsequent to surrender of the Premises by the Debtors, Colonial obtained a Property Condition Assessment Report prepared by Professional Service Industries, Inc., dated as of April 24, 2019 ("Property Condition Report"). A copy of the Property Condition Report is annexed hereto as Exhibit "A."

15. The Property Condition Report lists required repairs as follows:

| Summary of Schedule of Material Physical Deficiencies | | | |
|---|---|---|---|
| Category | Description | Needs Priority | |
| | | Immediate | Short-Term |
| **SITE** | | | |
| | Seal coat and restripe parking lot | | X |
| | Remove former Kmart tenant's signage | | X |
| **STRUCTURAL FRAME AND BUILDING ENVELOPE** | | | |
| | Masonry crack repairs | X | |
| | Remove mezzanine storage level in Kmart | X | |
| | Replace wood windows and doors | | X |
| **ROOFING** | | | |
| | Replace low-slope roofs | | X |
| | Repair gutter systems along entry canopies | X | |
| **INTERIOR ELEMENTS** | | | |
| | Allowance for repair of interior finishes including mold remediation | X | |
| | Perform asbestos survey | X | |
| **ADA ACCESSIBILITY ASSESSMENT** | | | |
| | Convert parking spaces to meet "Van Accessible" guidelines | X | |
| | Install proper signage at existing accessible parking spaces | X | |

(Property Condition Report, Exhibit "A," p. 2).

16. Pursuant to the Property Condition Report, the Debtors are liable to Colonial for

6

Deferred Maintenance in the amount of $1,630,686.60.

17. As such, there is currently due and owing from the Debtors to the Landlord: (i) the sum of $46,875; (ii) Deferred Maintenance in the amount of $1,530,686.60; (iii) late fees, accrued and unpaid real estate taxes, water charges, and reasonable legal fees and expenses; and (iv) all monies collected from the Subtenants subsequent to February 26, 2019, together with any and all security deposits paid by the Subtenants.

## BASIS FOR RELIEF

### I. THE LANDLORD IS ENTITLED TO THE IMMEDIATE PAYMENT OF THE ACCRUED POST-PETITION DATE RENT PURSUANT TO § 365(d)(3) OF THE BANKRUPTCY CODE

18. Section 365(d)(3) of the Bankruptcy Code provides that the trustee or debtor-in-possession is to timely perform all obligations of the debtor until the nonresidential real property lease is assumed or rejected. The relevant part of the statute reads as follows:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

19. Congress adopted § 365(d)(3) in 1984 to balance the equities between a debtor lessee's retention of a leasehold interest in nonresidential real property during the pendency of its bankruptcy case, and the captive landlord's inability to dispossess such a debtor during the § 365(d)(4) period. *See In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209-11 (3d Cir. 2001) (holding that Congress, in adopting § 365(d)(3), intended a debtor to perform all leasehold obligations as they came due under the terms of the lease); *In re Stone Barn Manhattan LLC*, 398 B.R. 359, 362 (Bankr. S.D.N.Y. 2008); *see also* 145 Cong. Rec. S8887, 8895 (daily ed. June 29, 1984) (statement of Sen. Hatch) (explaining that § 365(d)(3) would require the trustee to

7

860509

"perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease").

20. Section 365(d)(3) requires debtors to timely perform all post-petition date obligations due and owing under leases, including the payment of rent and related charges. There is no need for a hearing to determine whether the amount of money owed under the terms of a lease is reasonable, and the obligation to make payment arises at the time the rent obligation accrues, and not at the time other administrative expenses are paid pursuant to a Chapter 11 plan. *See id.* at 362 ("[Section] 365(d)(3) require[s] timely payment of rent, and ... eliminate[s] the discretion that courts had previously exercised to establish a market rent for use and occupancy, fixing the amount payable for use and occupancy at the rate provided in the lease.") (citing *In re Ames Dep't Stores Inc.*, 306 B.R. 43, 68 (Bankr. S.D.N.Y. 2004)); *see also In re Barrister of Delaware, Ltd.*, 49 B.R. 446, 447 (Bankr. D. Del. 1985); *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 882-83 (Bankr. E.D.N.Y. 1986).

21. Rent relating to a debtor's post-petition date use of non-residential real property is entitled to allowance and treatment as an administrative expense. *See In re Garden Ridge Corp.*, 323 B.R. 136, 142 (Bankr. D. Del. 2005) ("When the debtor occupies and uses the premises, the landlord is entitled to an administrative expense claim equaling the fair market value of the premises."); *see also In re DVI, Inc.*, 308 B.R. 703, 707-08 (Bankr. D. Del. 2004).

22. Section 503(b)(1) of the Bankruptcy code provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual and necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1).

23. To qualify as an "actual" and "necessary" administrative expense, (i) the claim must arise out of a post-petition date transaction between the creditor and the debtor in

possession, and (ii) the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor in possession in the operation of the business. *See In re Health Diagnostic Lab., Inc.*, 557 B.R. 885, 894 (Bankr. E.D. Va. 2016).

24. The fact that a debtor occupies the leased premises is sufficient to establish that payment for such occupancy is a necessary and actual expense of preserving the debtor's estate. *See In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 614 (Bankr. D. Del. 2008) (citing *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 627 (3rd Cir. 1990)).

25. However, merely declaring the rent to be an administrative expense is insufficient in that administrative expenses ordinarily do not have to be paid until the end of a case. *See Stone Barn Manhattan*, 398 B.R. at 361-62. Requiring a landlord to wait for the payment of post-petition rent would be inconsistent with the logic and rationale underlying section 365(d)(3), particularly if there is an administrative insolvency, which is not only possible, but plausible in this case. To avoid such a result, many courts "have found § 503(b)(1) to be superseded by § 365(d)(3); to hold otherwise would flout the intent of Congress in that the landlord would still be forced to provide current services while awaiting an evidentiary hearing to determine the actual amount the debtor owed it." *Id.*, 398 B.R. at 362.

26. Accordingly, pursuant to §§ 363(e) and 365(d)(3) of the Bankruptcy Code, the Debtors should be required to pay immediately: (i) post-Petition Date rent under the Lease in the amount of $46,875; (ii) Deferred Maintenance in the amount of $1,530,686.60; (iii) all accrued and unpaid state and local taxes and charges; (iv) all payments made to the Debtors by Subtenants subsequent to February 26, 2019; (v) all security deposits paid by the Subtenants for any portion of the Premises; (vi) late fees, interest, attorneys' fees and expenses.

860509

## CONCLUSION

WHEREFORE, the Landlord respectfully requests that the Court enter an order pursuant to 11 U.S.C. §§ 105(a), 363(e), 365(d)(3) and 503(b)(1)(A) compelling Debtors' immediate payment of: (i) post-Petition Date rent under the Lease in the amount of $46,875; (ii) Deferred Maintenance in the amount of $1,530,686.60; (iii) all accrued and unpaid state and local taxes and charges; (iv) all payments made to the Debtors by Subtenants subsequent to February 26, 2019; (v) all security deposits paid by the Subtenants for any portion of the Premises; (vi) late fees, interest, attorneys' fees and expenses; and (vii) granting such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
       June 21, 2019

RUSKIN MOSCOU FALTISCHEK, P.C.
*Attorneys for Colonial Properties, LLC*

By: _____
Michael S. Amato
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, NY 11556-1425
(516) 663-6600

860509