WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
David J. Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
In re                                  :
                                       :      Chapter 11
SEARS HOLDINGS CORPORATION, et al.,    :
                                       :      Case No. 18-23538 (RDD)
                                       :
            Debtors.                   :      (Jointly Administered)
-----------------------------------------------------------------x
```

<u>**DECLARATION OF BRANDON AEBERSOLD**</u>

I, Brandon Aebersold, make this declaration under 28 U.S.C. § 1746:

1.      I am a Managing Director at Lazard Frères & Co. LLC ("**Lazard**"), the investment banker to Sears Holdings Corporation ("**SHC**") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with their non-debtor affiliates, the "**Company**" or "**Sears**").[1]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); SHC Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services,

1.      I submit this declaration ("**Declaration**") in support of entry of the *Debtors' (I) Opposition to Second-Lien Holders' Requests to Determine Amount of Second Lien Secured Claims Under Section 506(a) and Section 507(b) Administrative Claims and (II) Reply in Support of Debtors' Motion to Surcharge Second-Lien Collateral Pursuant to Section 506(b)* (the "**507(b) Response**").[2]

2.      Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gleaned during the course of my engagement with the Debtors; my discussions with the Debtors' senior management, other members of the Lazard team, and the Debtors' other advisors; my review of relevant documents; and my views based upon my experience.  If called to testify, I would testify competently to each of the facts set forth in this Declaration.  I am authorized to submit this Declaration on behalf of Lazard for the Debtors.

---

Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); SHC Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the 507(b) Response.

**DECLARATION OF BRANDON AEBERSOLD – Page 2**

## I.   <u>Background and Qualifications</u>[3]

3.      I am a Managing Director with Lazard, a financial advisory and investment banking firm.  I joined Lazard in 2007 and have approximately fifteen years of investment banking and restructuring experience.  Prior to joining Lazard, I practiced law at the firm of Simpson Thatcher & Bartlett LLP, where I focused on mergers and acquisitions and leveraged finance transactions.  I have advised corporate clients and creditor groups in a broad range of restructuring, reorganization, and capital raising transactions in traditional and distressed situations across a diverse variety of industries.

4.      Together with its predecessors and affiliates, Lazard has been advising clients around the world for over 165 years.  Lazard has dedicated professionals who provide restructuring services to its clients.  The current managing directors, directors, vice presidents, associates, and analysts of Lazard (including myself) have extensive experience working with financially troubled companies and creditors thereof in complex financial restructurings out-of-court and in chapter 11 proceedings.  Lazard and its professionals have been involved as advisors to debtors, creditors, equity constituencies, and government agencies in numerous reorganization cases.  Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing well over $1 trillion in debtor liabilities.

## II.   <u>Lazard's Retention</u>

5.      Pursuant to the terms and conditions of its engagement letter dated October 11, 2018 ("**Engagement Letter**"), Lazard agreed to serve as the Debtors' investment

---

[3] Additional information regarding Mr. Aebersold's background and qualifications can be found in the *Declaration of Brandon Aebersold in Support of Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties and (D) Schedule Second Interim Hearing and Final Hearing*, filed with the Bankruptcy Court on October 15, 2018 [ECF No. 9] ("**First Day Declaration**").

<u>DECLARATION OF BRANDON AEBERSOLD – Page 3</u>

banker to provide general restructuring advice and advise in connection with any Restructuring, Financing, and, if mutually agreed by the Debtors and Lazard, any Sale Transaction (as such terms are defined under the Engagement Letter), which would result from the Debtors' review of strategic alternatives to address their capital structure. In connection with its engagement, Lazard has worked with the Debtors' outside counsel, Weil, Gotshal & Manges LLP ("**Weil**") and M-III Advisory Partners, LP ("**M-III**"), to analyze, structure, negotiate, and effect a Restructuring or Sale transaction pursuant to the terms and conditions of the Engagement Letter. By order dated November 9, 2018 [ECF Nos. 606, 607], the Bankruptcy Court authorized Lazard's retention by the Debtors as investment banker in accordance with the terms of the Engagement Letter. Lazard and the Debtors subsequently agreed that Lazard would advise with respect to certain potential Sale Transactions. On January 18, 2019, the Bankruptcy Court authorized an amendment to the Engagement Letter in light of additional services provided by Lazard in connection with potential Sale Transactions. [ECF. No. 1775].

6.      Under my supervision, the Lazard team has worked closely with the Debtors' management and other professionals retained by the Debtors with respect to these cases and has become knowledgeable of and familiar with the Debtors' capital structure, liquidity needs, and business operations.

### III.    The Sale and Restructuring Process

7.      The Company owns and operates hundreds of stores under the *Sears* and *K-mart* brands across the United States and its territories.[4] Despite Sears' long history and iconic

---

[4] *See Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for the Southern District of New York*, filed with the Bankruptcy Court on October 15, 2018 [ECF No. 3] (providing a full description of the Debtors' businesses and operations).

**DECLARATION OF BRANDON AEBERSOLD – Page 4**

status, the Debtors have a highly-levered capital structure and faced liquidity challenges that necessitated these Chapter 11 Cases.

8.      Since filing the Chapter 11 Cases, the Debtors have explored a broad array of strategic alternatives and options, including a possible sale, recapitalization, reorganization, or orderly wind-down of all or substantially all of the Debtors' businesses (the "**Sale and Restructuring Process**" or "**Process**").

9.      More detailed information concerning the Sale and Restructuring Process can be found in (i) my Declaration in support of entry of the *Revised Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (IV) Granting Related Relief* (the "**Aebersold Sale Order Declaration**") dated February 1, 2019 [ECF No. 2335]; and (ii) my Declaration in support of the *Debtors' Motion for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Schedule Second Interim Hearing and Final Hearing* (the "**Aebersold DIP Motion Declaration**") dated October 15, 2018 [ECF No. 9].

10.     As set forth in further detail in the Aebersold Sale Order Declaration, the Debtors and their Restructuring Committee, with the advice and assistance of their advisors, ran a thorough and competitive Sale and Restructuring Process.   Throughout that Sale and Restructuring Process, the Restructuring Committee, Lazard, and Weil assessed and discussed multiple potential transactions, including sale transactions whereby all or substantially all of the Debtors' assets would be sold to an investor or buyer who would continue to operate the Debtors' businesses as a going concern, an alternative whereby individual businesses within

<u>**DECLARATION OF BRANDON AEBERSOLD – Page 5**</u>

Sears would be sold separately to multiple purchasers, and a potential orderly wind-down of the business.

11.     Based on my experience and participation, and as reflected in further detail in the Aebersold Sale Order Declaration, the Sale and Restructuring Process led by Lazard with the support of the Debtors' other advisors was extensive, involving solicitations of interest from a diverse set of potential strategic and financial parties, with hundreds of parties contacted and given opportunities to participate. The Sale and Restructuring Process also took place over an expedited timeframe, given the necessities of the Debtors and the deadlines and requirements outlined and approved by the Bankruptcy Court on November 19, 2018, in the *Order Approving Global Bidding Procedures and Granting Related Relief* [ECF No. 816] (the "**Bidding Procedures**") and further outlined in the November 22, 2018 *Notice of Filing of Global Bidding Procedures Process Letter* [ECF No. 862] (the "**Process Letter**").

12.     Although Lazard had been preparing virtual data rooms and having discussions with interested parties on or prior to the Petition Date, the formal Sale Process began on November 23, 2018, with the distribution of the Process Letter.

13.     It included, among other efforts, (i) electronic data rooms containing over 17,000 documents; (ii) confidential information memoranda which contained certain non-public information concerning certain of the Debtors' businesses; (iii) discussions with the Debtors' management; (iv) site visits; and (v) coordinating requested legal due diligence. During the overall Sale and Restructuring Process, Lazard, in conjunction with the Debtors and their other advisors, engaged with over 250 potential third-party investors.

14.     Between December 5, 2018 and January 9, 2019, Lazard analyzed the indications of interest submitted in response to the Bidding Procedures, including comparing a

going-concern proposal received by ESL with analyses of a potential wind-down of the business (which would potentially have involved both going-out-of-business sales at retail stores and separate sales of certain assets and businesses). During this period, the Debtors and their advisors responded to several hundred diligence questions, held over 40 formal diligence calls and in-person meetings with prospective bidders and their advisors (approximately half of which included relevant members of the Debtors' management), and held management presentations (that were preceded by numerous preparatory sessions and in-person rehearsals).

15.     This phase of the Sale and Restructuring Process was followed by an auction of the Debtors' assets, which was held at Weil's New York offices beginning on January 14, 2019, at 10:00 a.m. EST (the "**Auction**"). The Auction concluded on January 17, 2019, at 3:10 a.m.

16.     As set forth in additional detail in the Aebersold Sale Order Declaration, the Auction involved days of extensive negotiations and analyses, including analyses of the alternative of a wind-down. Ultimately, the Debtors, in consultation with their advisors, determined that ESL's bid to purchase substantially all of the Debtors' assets, including the "go-forward" retail stores and other assets and component businesses as a going concern, constituted the highest or otherwise best qualified bid (the "**Successful Bid**").

17.     In short, I believe that the Sale and Restructuring Process Auction was the result of robust and thorough efforts by the Debtors and their advisors. The Sale and Restructuring Process was unique in terms of its speed and efficiency under the circumstances. Based on my knowledge, observations and experience, the Debtors and their advisors could not have performed the necessary and multiple, simultaneous work streams that comprised the Sale and Restructuring Process (including soliciting interest for everything from liquidation bids, to

bids for parts of the Debtors' businesses, real estate bids, and going-concern bids and the related arm's-length negotiations that culminated in the Auction and Successful Bid) in a manner that was fair, reasonable, and diligent in a time frame meaningfully more compressed than was available in this case.

## IV.    The Second Lien Parties

18.    The Debtors and their advisors engaged in extensive arm's-length negotiations with ESL and its advisors throughout the Sale and Restructuring Process, and particularly during the period leading up to and during the Auction, as reflected in more detail in the Aebersold Sale Order Declaration.

19.    The Company and its advisors also had extensive discussions with Cyrus. Cyrus was actively involved throughout the process, including in pre-filing discussions regarding the DIP financing, as the ultimate arranger and funding party to the Junior DIP financing, and in the negotiations regarding the going-concern sale (as a provider of financing to effectuate the ESL bid).

20.    During the period that Lazard was engaged in the Sale and Restructuring Process, no member of the Second Lien Parties or their respective advisors advocated to Lazard that the Debtors should liquidate instead of engaging in potential sale transactions.

21.    To the contrary, from nearly the beginning of these chapter 11 cases, to the extent they advocated for any course of action, the Second Lien Parties with whom Lazard was engaged consistently took the position that a liquidation would be inferior to a going-concern sale.

22.    For example, on multiple occasions from the Commencement Date to the Auction, counsel for ESL, the largest Second Lien Holder, sent letters to Weil specifically urging

**DECLARATION OF BRANDON AEBERSOLD – Page 8**

the pursuit of a going-concern sale, and not a liquidation.  *See* Letter dated October 31, 2018 from counsel for ESL sent to Weil (attached hereto as **Exhibit A**) (the "**ESL October 31 Letter**") and Letter dated November 2, 2018, from counsel for ESL to Weil (attached hereto as **Exhibit B**) (the "**ESL November 2 Letter**").  Counsel for ESL also sent a letter directly to the Board of Directors of Sears Holdings Corporation (the "**Board**"), entitled "Re: Going Concern Sale/Liquidation" (attached hereto as **Exhibit C**) (the "**ESL January 7 Letter**").

23.     Throughout the Sale and Restructuring Process, ESL was the primary party that expressed interest in a going-concern sale.  If not for the existence of ESL as a potential going-concern buyer and the strong views expressed and actions taken by certain Second Lien Parties during the Sale and Restructuring Process in support of a going-concern sale and against liquidation, then the rationale for maintaining the enterprise would have been substantially removed and the only likely viable option would have been the immediate pursuit of a wind down.

24.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and after reasonable inquiry.

Dated:     June 27, 2019

New York, New York

*/s/ Brandon Aebersold*
Brandon Aebersold
Managing Director
Lazard Frères & Co.  LLC

**DECLARATION OF BRANDON AEBERSOLD – Page 9**

# *EXHIBIT A*

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2416
soneal@cgsh.com

VICTOR I. LEWKOW
LEE C. BUCHHEIT
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
EDWARD J. ROSEN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF

KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOOH H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER

COLIN D. LLOYD
COREY M. GOODMAN
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
RAHUL MUKHI
NEIL R. MARKEL
HUMAYUN KHALID
KENNETH S. BLAZEJEWSKI
ANDREA M. BASHAM
LAURA BAGARELLA
SHIRLEY M. LO
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

CONFIDENTIAL

October 31, 2018

<u>BY EMAIL</u>

Ray Schrock, Esq.
Sunny Singh, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Re:  <u>Request for Cooperation In Connection with DIP Process and Going Concern Bid</u>

Dear Ray:

I am writing on behalf of ESL Investments, Inc., its affiliated investment funds and Edward S. Lampert (together, "ESL") concerning the chapter 11 proceedings of Sears Holdings Corporation and its affiliated debtors (collectively, the "Debtors"). By this letter, I am requesting the prompt cooperation of the Debtors and their advisors in connection with ESL's ongoing efforts to help arrange for DIP financing and a going concern bid for substantially all the Debtors' assets.

As we have discussed, ESL believes that the best way for the Debtors to maximize the value of the estates (and to preserve tens of thousands of jobs) may be a going concern sale. During the first day hearings you, on behalf of the Debtors, highlighted the Debtors' interest in preserving the possibility of such a sale, which is also an important milestone in the ABL DIP Financing Credit Agreement. The Debtors have also said that a new DIP financing of $300 million or more (in addition to the existing ABL DIP Financing) is necessary to preserve the possibility of any such going concern sale.

With this background, last night I sent you a draft DIP financing proposal which ESL is actively pursuing. ESL, of course, realizes that there may be other DIP financing opportunities for

Ray Schrock, Esq., p. 2

the Debtors and consequently supports a competitive DIP financing process that results in the most favorable financing possible for the Debtors.  For a number of reasons, including its demonstrated commitment to the Debtors' business, ESL may be the best party to help arrange for and participate in the DIP and to make a going concern bid.

ESL's ability to participate in a DIP and to pursue a going concern bid, however, depends on the participation of other parties alongside ESL.  Indeed, as you know, a number of potential parties have reached out to ESL and its advisors about the possibility of participating with ESL in a DIP financing and/or a going concern bid.  ESL has requested the Debtors' permission to share confidential information with these parties, but the Debtors have often withheld or delayed such permission.  The inability to share confidential information and engage with potentially interested parties has delayed ESL's efforts to develop a potential DIP financing package and to put together a fully financed bid by December 15, 2018, as contemplated by the ABL DIP Financing Credit Agreement.

To be specific, as you know, ESL has repeatedly requested authorization to begin DIP financing discussions with Great American, Carlyle, Brigade, Fortress, Oaktree, among others, each of which reached out to ESL or its advisors about participating in the DIP as co-lenders.  However, the Company's advisors have not yet provided such permission unless each party confirms that it is only willing to do so exclusively with ESL and by default self-select out of any other DIP financing discussions which do not involve ESL.  While I know you have good intentions, the unilateral imposition of this condition is jeopardizing our efforts to develop a DIP financing package.  ESL itself has not required that any potential co-lenders commit to work exclusively with ESL and has been clear that all potential co-lenders would be free to discuss and pursue a potential DIP with any other parties.  Thus, any claim that discussions between ESL and these co-lenders would somehow chill the market for financing is misplaced.  To the contrary, it is the delay in granting permission that is potentially interfering with the DIP financing process by imposing an a condition that would understandably not be agreed to by any party that does not wish to commit to exclusivity with ESL.

Similarly, we understand that the Debtors have yet to execute non-disclosure agreements ("NDAs") with a number of potential investors who may be interested in working with ESL on a going concern bid, including, among others, Baupost, Elliot, and Fortress.  Nor have the Debtors established a data room for such interested parties.  ESL needs to begin discussions with these parties, also on a nonexclusive basis, but it is constrained from doing so due to the Debtors' decision to not promptly engage with the potential investors and to not authorize them to receive confidential information.  I know that you will be seeking bankruptcy court approval for a sales process, but as we have discussed, there is no need to wait for bankruptcy court approval to execute NDAs or create a dataroom.  We thus reiterate our request that this process be expedited, including that any outstanding NDAs be promptly executed with interested investors.

It goes without saying that time is of the essence.  Given the December 15, 2018 bid deadline imposed by the ABL DIP Lenders, ESL (and other parties) must operate on simultaneous dual tracks in working to arrange DIP financing and preparing a going concern bid. To do this, ESL (and other parties) need to engage with all potential partners on a non-exclusive basis.

Ray Schrock, Esq., p. 3

Sharing information with potential co-lenders and investors is just the first step of many. Creating obstacles in this process puts at risk the Debtors' continued existence and more than 68,000 jobs.

I know that you are incredibly busy, and that you are working tirelessly to stabilize the Debtors, but if we are not able to resolve these issues promptly, ESL will be forced to seek relief from the Court. I look forward to your response.

Very truly yours,

Sean A. O'Neal

cc:
Brandon Aebersold
Lazard
30 Rockefeller Plaza
New York, NY 10112

Lawrence Chu
Moelis & Company
399 Park Avenue
New York, NY 10022

# *EXHIBIT B*

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2416
soneal@cgsh.com

VICTOR I. LEWKOW
LEE C. BUCHHEIT
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
EDWARD J. ROSEN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF

KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER

COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
RAHUL MUKHI
NEIL R. MARKEL
HUMAYUN KHALID
KENNETH S. BLAZEJEWSKI
ANDREA M. BASHAM
LAURA BAGARELLA
SHIRLEY M. LO
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

CONFIDENTIAL

November 2, 2018

BY EMAIL

Ray Schrock, Esq.
Sunny Singh, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Re:  Designation of Go Forward Stores

Dear Mr. Schrock:

We write on behalf of ESL Investments, Inc., its affiliated investment funds (together, "ESL") and Edward S. Lampert in connection with the chapter 11 proceedings of Sears Holdings Corporation and certain of its affiliates (together, the "Debtors").

As you know, ESL has stated its intention to pursue a going concern bid for substantially all of the Debtors' assets, which would include certain owned and leased stores, inventory, business lines, real property and brands, among other things.  ESL believes that a going concern sale represents Sears' best chance for maximizing value for the estates, while also preserving jobs for thousands of working people.  A key component of any going concern bid will be the store footprint and the continued operation of the network of stores included in the footprint.

By this letter, ESL states its intention to include the 505 stores listed in Annex A attached hereto as part of any going concern bid and therefore requests that these stores not be included in any additional Store Rationalizations to take place prior to December 15, 2018, which is the deadline for the Debtors' receipt of a fully committed stalking horse bid relating to a sale of all or substantially all of the Debtors' assets pursuant to ABL DIP Financing Credit Agreement.  Upon

Ray Schrock, Esq., page 2

submission of such a bid, ESL would further request that the Debtors not initiate any additional Store Rationalizations until January 15, 2019.

We understand that the Debtors' are currently exceeding their cash projections by more than $200 million.  As such, there is no need to begin further store liquidations, lease rejections or employee terminations on an expedited basis.  Instead, ESL believes that the Debtors' priority should be preserving the Debtors' going concern value through at least December 15.  Accordingly, we see no economic or business justification to begin further liquidation sales prior to the going concern bid deadline and in fact believe that additional store liquidations would put at risk the Debtors' ability to recover the going concern value of the store network (and the potential to preserve the related jobs), whether from a bid from ESL or another bidder.

We understand that the ABL DIP Lenders have expressed the view that commencing additional GOB sales by November 18 is advisable in order to pay-down their debt and benefit from having the GOB sale period commence prior to "Black Friday" on November 23, 2018.  ESL respectfully disagrees with that view for a number of reasons.  The DIP budget anticipates that any further liquidations would result in realizing proceeds equal to approximately 89% of the cost of inventory.  Given the realization rates in prior Sears GOB sales (approximately 95-100%), the DIP budget includes substantial cushion, whether or not any GOB sales are announced prior to Black Friday.  We note that Sears has closed and liquidated the inventory at more than 1,000 stores in the last several years and that those sales have occurred at various times of the year, including off-season and outside of Black Friday but have consistently produced realization rates in excess of that which is reflected in the DIP budget.  As a result, ESL sees no reason to commence the liquidation of any additional stores (or seeking to reject associated leases) prior to the December 15 milestone for going concern bids.

We look forward to discussing these matters with you.

Very truly yours,

Sean A. O'Neal

cc:
Rob Riecker
Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Brandon Aebersold
Lazard
30 Rockefeller Plaza
New York, NY 10112

Lawrence Chu
Moelis & Company
399 Park Avenue
New York, NY 10022

**Annex A**

| | Store Number | City | State |
|---|---|---|---|
| 1. | **1008** | Los Angeles | CA |
| 2. | **1018** | Los Angeles | CA |
| 3. | **1033** | N Attleboro | MA |
| 4. | **1035** | Augusta | GA |
| 5. | **1042** | Joplin | MO |
| 6. | **1048** | Pasadena | CA |
| 7. | **1055** | Coral Springs | FL |
| 8. | **1066** | Jacksonville | FL |
| 9. | **1068** | Palmdale | CA |
| 10. | **1074** | Waldorf | MD |
| 11. | **1085** | Caguas | PR |
| 12. | **1088** | Glendale | CA |
| 13. | **1098** | Clovis | CA |
| 14. | **1114** | Brooklyn | NY |
| 15. | **1125** | Miami | FL |
| 16. | **1127** | Houston | TX |
| 17. | **1141** | Aurora | CO |
| 18. | **1147** | Baton Rouge | LA |
| 19. | **1165** | Concord | NC |
| 20. | **1168** | North Hollywood | CA |
| 21. | **1170** | Lansing | MI |
| 22. | **1175** | Merritt Island | FL |
| 23. | **1176** | Pasadena | TX |
| 24. | **1187** | Mesquite | TX |
| 25. | **1208** | Fresno | CA |
| 26. | **1209** | Long Beach | CA |
| 27. | **1217** | Corpus Christi | TX |
| 28. | **1228** | Sacramento | CA |
| 29. | **1248** | Hayward | CA |
| 30. | **1268** | Buena Park | CA |
| 31. | **1274** | Richmond | VA |
| 32. | **1278** | Torrance | CA |
| 33. | **1285** | Orlando | FL |
| 34. | **1288** | Stockton | CA |
| 35. | **1298** | Riverside | CA |
| 36. | **1300** | Oak Brook | IL |
| 37. | **1304** | Silver Spring | MD |
| 38. | **1309** | Downey | CA |
| 39. | **1317** | El Paso | TX |
| 40. | **1321** | Peoria | IL |

| 41. | **1335** | Greensboro | NC |
|---|---|---|---|
| 42. | **1345** | Hialeah | FL |
| 43. | **1358** | Chula Vista | CA |
| 44. | **1368** | Concord | CA |
| 45. | **1374** | Bel Air | MD |
| 46. | **1377** | Houston | TX |
| 47. | **1378** | Orange | CA |
| 48. | **1398** | San Bernardino | CA |
| 49. | **1407** | Beaumont | TX |
| 50. | **1410** | Canton | OH |
| 51. | **1417** | Humble | TX |
| 52. | **1427** | San Antonio | TX |
| 53. | **1437** | Arlington | TX |
| 54. | **1443** | Manchester | CT |
| 55. | **1456** | Oviedo | FL |
| 56. | **1460** | Livonia | MI |
| 57. | **1467** | Fort Collins | CO |
| 58. | **1485** | Orange Park | FL |
| 59. | **1488** | San Jose | CA |
| 60. | **1508** | Northridge | CA |
| 61. | **1578** | Aiea | HI |
| 62. | **1595** | Greenville | SC |
| 63. | **1605** | Raleigh | NC |
| 64. | **1629** | Pharr | TX |
| 65. | **1678** | Carlsbad | CA |
| 66. | **1681** | Honolulu | HI |
| 67. | **1688** | Salinas | CA |
| 68. | **1710** | North Olmsted | OH |
| 69. | **1711** | Camp Hill | PA |
| 70. | **1733** | Yonkers | NY |
| 71. | **1738** | Kaneohe | HI |
| 72. | **1758** | Escondido | CA |
| 73. | **1764** | Rockaway | NJ |
| 74. | **1795** | Myrtle Beach | SC |
| 75. | **1818** | Rancho Cucamonga | CA |
| 76. | **1820** | West Dundee | IL |
| 77. | **1831** | Thornton | CO |
| 78. | **1840** | Chicago Ridge | IL |
| 79. | **1854** | Baltimore | MD |
| 80. | **1905** | San Juan | PR |
| 81. | **1915** | Bayamon | PR |
| 82. | **1924** | Valley Stream | NY |
| 83. | **1925** | Carolina | PR |
| 84. | **1935** | Mayaguez | PR |
| 85. | **1945** | Ponce | PR |

| 86. | **2027** | Wasilla | AK |
|---|---|---|---|
| 87. | **2028** | Hemet | CA |
| 88. | **2029** | Union Gap | WA |
| 89. | **2036** | Jackson | TN |
| 90. | **2068** | Visalia | CA |
| 91. | **2085** | Fajardo | PR |
| 92. | **2088** | Santa Maria | CA |
| 93. | **2104** | St Clairsville | OH |
| 94. | **2105** | Burlington | NC |
| 95. | **2135** | Sebring | FL |
| 96. | **2148** | Kahului | HI |
| 97. | **2175** | Greenville | NC |
| 98. | **2179** | Medford | OR |
| 99. | **2183** | S Portland | ME |
| 100. | **2197** | Texas City | TX |
| 101. | **2219** | Lacey | WA |
| 102. | **2238** | Yuba City | CA |
| 103. | **2247** | Laredo | TX |
| 104. | **2265** | Johnson City | TN |
| 105. | **2299** | Aberdeen | WA |
| 106. | **2309** | Silverdale | WA |
| 107. | **2329** | Kennewick | WA |
| 108. | **2355** | Hatillo | PR |
| 109. | **2385** | Naranjito | PR |
| 110. | **2388** | Hilo | HI |
| 111. | **2395** | Manassas | VA |
| 112. | **2485** | Brooksville | FL |
| 113. | **2497** | Brownsville | TX |
| 114. | **2527** | Las Cruces | NM |
| 115. | **2593** | Newburgh | NY |
| 116. | **2628** | Eureka | CA |
| 117. | **2637** | Port Arthur | TX |
| 118. | **2675** | Guayama | PR |
| 119. | **2744** | Horseheads | NY |
| 120. | **2745** | Leesburg | FL |
| 121. | **2784** | Winchester | VA |
| 122. | **2829** | Victorville | CA |
| 123. | **3013** | Cleveland | OH |
| 124. | **3021** | Auburn | ME |
| 125. | **3029** | Erlanger | KY |
| 126. | **3040** | Hyannis | MA |
| 127. | **3056** | Wayne | NJ |
| 128. | **3059** | St Paul | MN |
| 129. | **3086** | Chico | CA |
| 130. | **3136** | Shillington | PA |

| | | | |
|---|---|---|---|
| 131. | **3142** | Tallmadge | OH |
| 132. | **3155** | Belleville | MI |
| 133. | **3172** | Hagerstown | MD |
| 134. | **3202** | Westwood | NJ |
| 135. | **3216** | Vernon | CT |
| 136. | **3223** | Fort Walton Beach | FL |
| 137. | **3225** | Chambersburg | PA |
| 138. | **3243** | North Canton | OH |
| 139. | **3266** | Kingston | PA |
| 140. | **3268** | Wilkes Barre | PA |
| 141. | **3269** | Lantana | FL |
| 142. | **3286** | Brunswick | OH |
| 143. | **3301** | Santa Fe | NM |
| 144. | **3317** | Boca Raton | FL |
| 145. | **3379** | Waterford | MI |
| 146. | **3390** | Williamsport | PA |
| 147. | **3405** | Minneapolis | MN |
| 148. | **3412** | Salinas | CA |
| 149. | **3415** | Buffalo | NY |
| 150. | **3484** | Elkview | WV |
| 151. | **3499** | Kearny | NJ |
| 152. | **3501** | Petaluma | CA |
| 153. | **3529** | Pittsburgh | PA |
| 154. | **3592** | Las Vegas | NV |
| 155. | **3597** | Holmes | PA |
| 156. | **3678** | Ramona | CA |
| 157. | **3692** | Oconomowoc | WI |
| 158. | **3707** | Lake Havasu City | AZ |
| 159. | **3725** | Freedom | CA |
| 160. | **3737** | Doylestown | PA |
| 161. | **3744** | Kill Devil Hills | NC |
| 162. | **3748** | Hollister | CA |
| 163. | **3750** | Waupaca | WI |
| 164. | **3798** | Hyattsville | MD |
| 165. | **3810** | Willow Street | PA |
| 166. | **3818** | Hollywood | FL |
| 167. | **3819** | Hastings | MI |
| 168. | **3829** | St Thomas | VI |
| 169. | **3839** | Corvallis | OR |
| 170. | **3841** | Marshall | MI |
| 171. | **3842** | Oakdale | CA |
| 172. | **3851** | Racine | WI |
| 173. | **3853** | Guayama | PR |
| 174. | **3873** | Wilmington | DE |
| 175. | **3882** | Mayaguez | PR |

| 176. | 3888 | The Dalles | OR |
|------|------|------------|-----|
| 177. | 3911 | Columbia | PA |
| 178. | 3949 | Wind Gap | PA |
| 179. | 3954 | Walnutport | PA |
| 180. | 3963 | Elizabethtown | PA |
| 181. | 3972 | St Croix | VI |
| 182. | 3993 | Juana Diaz | PR |
| 183. | 4016 | Greenville | SC |
| 184. | 4022 | Grand Forks | ND |
| 185. | 4034 | Mattydale | NY |
| 186. | 4057 | Fargo | ND |
| 187. | 4141 | West Columbia | SC |
| 188. | 4170 | Rapid City | SD |
| 189. | 4206 | Warren | MI |
| 190. | 4272 | Bismarck | ND |
| 191. | 4349 | Redwood City | CA |
| 192. | 4353 | Minot | ND |
| 193. | 4355 | St Petersburg | FL |
| 194. | 4381 | Bridgeview | IL |
| 195. | 4389 | Mc Allen | TX |
| 196. | 4399 | Silver Spring | MD |
| 197. | 4407 | Brockton | MA |
| 198. | 4421 | North Hollywood | CA |
| 199. | 4442 | Charleston | WV |
| 200. | 4448 | Salem | NH |
| 201. | 4453 | Pueblo | CO |
| 202. | 4457 | Hayward | CA |
| 203. | 4470 | West Long Branch | NJ |
| 204. | 4478 | Trenton | NJ |
| 205. | 4494 | Trujillo Alto | PR |
| 206. | 4713 | Towanda | PA |
| 207. | 4725 | Key West | FL |
| 208. | 4726 | Jamestown | NY |
| 209. | 4728 | Miami | FL |
| 210. | 4732 | Aguadilla | PR |
| 211. | 4751 | Tehachapi | CA |
| 212. | 4782 | Clinton | OK |
| 213. | 4807 | Bear | DE |
| 214. | 4819 | Lakeport | CA |
| 215. | 4844 | Rio Piedras | PR |
| 216. | 4857 | Desert Hot Springs | CA |
| 217. | 4871 | Farmingville | NY |
| 218. | 4893 | Ellenton | FL |
| 219. | 4928 | Queensbury | NY |
| 220. | 7006 | Twin Falls | ID |

| 221. | **7016** | Hobbs | NM |
|------|----------|-------|-----|
| 222. | **7017** | Roswell | NM |
| 223. | **7030** | Kalispell | MT |
| 224. | **7031** | Menominee | MI |
| 225. | **7033** | Lewiston | ID |
| 226. | **7034** | Walla Walla | WA |
| 227. | **7035** | Farmington | NM |
| 228. | **7042** | Valparaiso | IN |
| 229. | **7048** | West Lebanon | NH |
| 230. | **7062** | Sumter | SC |
| 231. | **7068** | Midland | MI |
| 232. | **7083** | New Castle | PA |
| 233. | **7098** | Concord | CA |
| 234. | **7104** | Acton | MA |
| 235. | **7109** | Watertown | CT |
| 236. | **7133** | Augusta | ME |
| 237. | **7139** | Jackson | WY |
| 238. | **7165** | Camarillo | CA |
| 239. | **7175** | Riverside | CA |
| 240. | **7177** | Belleville | NJ |
| 241. | **7192** | Easton | PA |
| 242. | **7208** | Clemmons | NC |
| 243. | **7243** | Kokomo | IN |
| 244. | **7246** | Richmond | IN |
| 245. | **7255** | Somerset | KY |
| 246. | **7294** | Vero Beach | FL |
| 247. | **7321** | Bradenton | FL |
| 248. | **7329** | Loveland | CO |
| 249. | **7372** | Leechburg | PA |
| 250. | **7374** | West Chester | PA |
| 251. | **7383** | Barberton | OH |
| 252. | **7390** | Mckinleyville | CA |
| 253. | **7397** | Grove City | OH |
| 254. | **7413** | St Croix | VI |
| 255. | **7419** | Caguas | PR |
| 256. | **7446** | Cayey | PR |
| 257. | **7477** | Marietta | OH |
| 258. | **7566** | Arecibo | PR |
| 259. | **7570** | Bayamon | PR |
| 260. | **7602** | Wall Township | NJ |
| 261. | **7616** | Lexington | SC |
| 262. | **7619** | Atascadero | CA |
| 263. | **7626** | Waynesville | NC |
| 264. | **7639** | Santa Paula | CA |
| 265. | **7644** | Harrison | OH |

| 266. | **7648** | Mauston | WI |
|---|---|---|---|
| 267. | **7649** | Ripon | WI |
| 268. | **7653** | Big Bear Lake | CA |
| 269. | **7665** | Carolina | PR |
| 270. | **7673** | Stevensville | MD |
| 271. | **7676** | Sidney | NY |
| 272. | **7677** | Wellsville | NY |
| 273. | **7699** | Lebanon | PA |
| 274. | **7705** | Tamuning | GU |
| 275. | **7713** | Edgewater | MD |
| 276. | **7741** | Ponce | PR |
| 277. | **7749** | New York | NY |
| 278. | **7752** | Yauco | PR |
| 279. | **7756** | Bishop | CA |
| 280. | **7767** | Charles City | IA |
| 281. | **7768** | Guaynabo | PR |
| 282. | **7777** | New York | NY |
| 283. | **7783** | San Juan | PR |
| 284. | **7784** | Vega Alta | PR |
| 285. | **7788** | Bayamon | PR |
| 286. | **7793** | St Thomas | VI |
| 287. | **9030** | Peru | IN |
| 288. | **9096** | Fostoria | OH |
| 289. | **9122** | Warsaw | IN |
| 290. | **9124** | Elwood | IN |
| 291. | **9153** | South Lake Tahoe | CA |
| 292. | **9161** | Berwick | PA |
| 293. | **9220** | Algona | IA |
| 294. | **9224** | Marathon | FL |
| 295. | **9255** | Palmer | MA |
| 296. | **9274** | Greenwich | NY |
| 297. | **9319** | Alliance | NE |
| 298. | **9353** | Crystal City | MO |
| 299. | **9385** | Clio | MI |
| 300. | **9394** | Fajardo | PR |
| 301. | **9416** | White Plains | NY |
| 302. | **9423** | Bridgehampton | NY |
| 303. | **9463** | Somers Point | NJ |
| 304. | **9549** | Morganton | NC |
| 305. | **9551** | Paradise | CA |
| 306. | **9557** | Grayling | MI |
| 307. | **9589** | Bath | NY |
| 308. | **9593** | Oscoda | MI |
| 309. | **9614** | Key Largo | FL |
| 310. | **9619** | Morehead City | NC |

| | | | |
|---|---|---|---|
| 311. | 9621 | Lebanon | TN |
| 312. | 9662 | Ephrata | PA |
| 313. | 9689 | International Falls | MN |
| 314. | 9692 | Webster | MA |
| 315. | 9693 | Marine City | MI |
| 316. | 9735 | Sevierville | TN |
| 317. | 9746 | Grass Valley | CA |
| 318. | 9794 | St George | UT |
| 319. | 9797 | Scotts Valley | CA |
| 320. | 1668 | Las Vegas | NV |
| 321. | 1725 | Annapolis | MD |
| 322. | 1728 | Tucson | AZ |
| 323. | 1765 | Palm Beach Gardens | FL |
| 324. | 3886 | Asheville | NC |
| 325. | 4113 | Erie | PA |
| 326. | 7654 | Bronx | NY |
| 327. | 9608 | Auburn | CA |
| 328. | 9808 | Hamilton | MT |
| 329. | 1011 | Grandville | MI |
| 330. | 1015 | Vero Beach | FL |
| 331. | 1023 | Dulles | VA |
| 332. | 1024 | Falls Church | VA |
| 333. | 1029 | Spokane | WA |
| 334. | 1038 | Spokane | WA |
| 335. | 1041 | Omaha | NE |
| 336. | 1044 | Jersey City | NJ |
| 337. | 1045 | Durham | NC |
| 338. | 1073 | Exton | PA |
| 339. | 1075 | Daytona Beach | FL |
| 340. | 1081 | Heath | OH |
| 341. | 1092 | Westland | MI |
| 342. | 1094 | Hackensack | NJ |
| 343. | 1095 | Douglasville | GA |
| 344. | 1097 | San Antonio | TX |
| 345. | 1104 | Marlborough | MA |
| 346. | 1108 | Temecula | CA |
| 347. | 1110 | Portage | MI |
| 348. | 1111 | Colorado Springs | CO |
| 349. | 1120 | Dublin | OH |
| 350. | 1121 | Independence | MO |
| 351. | 1133 | Leominster | MA |
| 352. | 1136 | Hoover | AL |
| 353. | 1148 | Ventura | CA |
| 354. | 1149 | Whittier | CA |
| 355. | 1154 | Whitehall | PA |

| | | | |
|---|---|---|---|
| 356. | **1155** | Kennesaw | GA |
| 357. | **1161** | Wichita | KS |
| 358. | **1172** | Bloomingdale | IL |
| 359. | **1182** | Saint Peters | MO |
| 360. | **1189** | West Covina | CA |
| 361. | **1192** | Muskegon | MI |
| 362. | **1195** | Ft Lauderdale | FL |
| 363. | **1204** | Freehold | NJ |
| 364. | **1206** | N Little Rock | AR |
| 365. | **1207** | Richardson | TX |
| 366. | **1210** | Columbus | OH |
| 367. | **1221** | Colorado Springs | CO |
| 368. | **1223** | Brockton | MA |
| 369. | **1224** | Harrisburg | PA |
| 370. | **1226** | Metairie | LA |
| 371. | **1243** | Hanover | MA |
| 372. | **1271** | Littleton | CO |
| 373. | **1281** | Pueblo | CO |
| 374. | **1283** | Braintree | MA |
| 375. | **1284** | Alexandria | VA |
| 376. | **1297** | Hurst | TX |
| 377. | **1303** | Danbury | CT |
| 378. | **1307** | Abilene | TX |
| 379. | **1313** | Nashua | NH |
| 380. | **1314** | New Brunswick | NJ |
| 381. | **1328** | Las Vegas | NV |
| 382. | **1333** | Poughkeepsie | NY |
| 383. | **1337** | Plano | TX |
| 384. | **1354** | Willow Grove | PA |
| 385. | **1364** | Lake Grove | NY |
| 386. | **1365** | Miami | FL |
| 387. | **1367** | Waco | TX |
| 388. | **1386** | Goodlettsville | TN |
| 389. | **1387** | Amarillo | TX |
| 390. | **1404** | Massapequa | NY |
| 391. | **1434** | Wayne | NJ |
| 392. | **1447** | Fort Worth | TX |
| 393. | **1463** | S Burlington | VT |
| 394. | **1475** | Durham | NC |
| 395. | **1494** | Moorestown | NJ |
| 396. | **1495** | Ft Myers | FL |
| 397. | **1570** | Schaumburg | IL |
| 398. | **1585** | Tallahassee | FL |
| 399. | **1590** | Saginaw | MI |
| 400. | **1614** | Livingston | NJ |

| 401. | **1624** | Staten Island | NY |
|---|---|---|---|
| 402. | **1634** | Baltimore | MD |
| 403. | **1640** | Fairview Heights | IL |
| 404. | **1644** | Lancaster | PA |
| 405. | **1650** | Merrillville | IN |
| 406. | **1674** | White Plains | NY |
| 407. | **1684** | Woodbridge | NJ |
| 408. | **1714** | Greensburg | PA |
| 409. | **1722** | Bloomington | MN |
| 410. | **1745** | Tampa | FL |
| 411. | **1748** | Montclair | CA |
| 412. | **1754** | Gaithersburg | MD |
| 413. | **1760** | Novi | MI |
| 414. | **1773** | Salisbury | MD |
| 415. | **1775** | Pembroke Pines | FL |
| 416. | **1788** | Richmond | CA |
| 417. | **1798** | Glendale | AZ |
| 418. | **1800** | Mishawaka | IN |
| 419. | **1804** | Barboursville | WV |
| 420. | **1810** | Cincinnati | OH |
| 421. | **1822** | Cape Girardeau | MO |
| 422. | **1834** | North Wales | PA |
| 423. | **1838** | Burbank | CA |
| 424. | **1853** | Wilmington | DE |
| 425. | **1868** | Moreno Valley | CA |
| 426. | **1894** | Rochester | NY |
| 427. | **1968** | Palm Desert | CA |
| 428. | **1974** | Roanoke | VA |
| 429. | **1984** | Buffalo | NY |
| 430. | **2010** | Mansfield | OH |
| 431. | **2023** | Concord | NH |
| 432. | **2049** | Everett | WA |
| 433. | **2059** | Tracy | CA |
| 434. | **2092** | Appleton | WI |
| 435. | **2114** | Washington | PA |
| 436. | **2126** | Hot Springs | AR |
| 437. | **2145** | Pt Charlotte | FL |
| 438. | **2191** | Lincoln | NE |
| 439. | **2203** | Brunswick | ME |
| 440. | **2215** | Key West | FL |
| 441. | **2218** | Prescott | AZ |
| 442. | **2232** | Madison | WI |
| 443. | **2288** | Antioch | CA |
| 444. | **2373** | N Dartmouth | MA |
| 445. | **2390** | Springfield | OH |

| | | | |
|---|---|---|---|
| 446. | **2422** | Sioux City | IA |
| 447. | **2435** | Charlottesville | VA |
| 448. | **2487** | Killeen | TX |
| 449. | **2494** | Altoona | PA |
| 450. | **2505** | Gainesville | GA |
| 451. | **2515** | Hickory | NC |
| 452. | **2597** | Farmington | NM |
| 453. | **2664** | Frederick | MD |
| 454. | **2694** | Fredericksburg | VA |
| 455. | **2755** | Jacksonville | NC |
| 456. | **2774** | Cumberland | MD |
| 457. | **2845** | Athens | GA |
| 458. | **2885** | Port Richey | FL |
| 459. | **2990** | Rockford | IL |
| 460. | **3071** | Toms River | NJ |
| 461. | **3074** | Miami | FL |
| 462. | **3088** | Kenosha | WI |
| 463. | **3127** | Temple City | CA |
| 464. | **3131** | Frederick | MD |
| 465. | **3147** | Kingsport | TN |
| 466. | **3174** | Stockton | CA |
| 467. | **3175** | Hooksett | NH |
| 468. | **3235** | West Covina | CA |
| 469. | **3256** | Baltimore | MD |
| 470. | **3288** | Billerica | MA |
| 471. | **3368** | Redlands | CA |
| 472. | **3433** | Holyoke | MA |
| 473. | **3438** | Avenel | NJ |
| 474. | **3471** | Chesapeake | VA |
| 475. | **3486** | Somerville | MA |
| 476. | **3667** | Raleigh | NC |
| 477. | **3699** | Apple Valley | VA |
| 478. | **3722** | Burlington | WA |
| 479. | **3785** | Tabb | VA |
| 480. | **3834** | Burbank | CA |
| 481. | **3862** | Bohemia | NY |
| 482. | **4047** | Costa Mesa | CA |
| 483. | **4147** | Spokane | WA |
| 484. | **4214** | Des Plaines | IL |
| 485. | **4351** | Rochester | MN |
| 486. | **4371** | Santa Maria | CA |
| 487. | **4810** | Metairie | LA |
| 488. | **4996** | Tucson | AZ |
| 489. | **7065** | Horseheads | NY |
| 490. | **7293** | Clifton Heights | PA |

| 491. | **7725** | Rehoboth Beach | DE |
|------|----------|----------------|-----|
| 492. | **9328** | Long Beach | CA |
| 493. | **9413** | West Orange | NJ |
| 494. | **9414** | Yorktown Heights | NY |
| 495. | **9420** | Bronx | NY |
| 496. | **9520** | Gulfport | MS |
| 497. | **1007** | Brandon | FL |
| 498. | **1013** | Glen Burnie | MD |
| 499. | **1053** | Saugus | MA |
| 500. | **1139** | Tukwila | WA |
| 501. | **1171** | Springfield | MO |
| 502. | **1212** | North Riverside | IL |
| 503. | **1213** | Auburn | MA |
| 504. | **1478** | San Bruno | CA |
| 505. | **1654** | Media | PA |

# *EXHIBIT C*

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2264
jbromley@cgsh.com

VICTOR I. LEWKOW
LEE C. BUCHHEIT
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
YARON Z. REICH
RICHARD S. LINCER
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL O. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY

SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE

DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
HUMAYUN KHALID
KENNETH S. BLAZEJEWSKI
ANDREA M. BASHAM
LAURA BAGARELLA
SHIRLEY M. LO
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

January 7, 2019

BY EMAIL

Board of Directors
Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, Illinois 60179

Re: Going Concern Sale/Liquidation

Dear Sir/Madam:

This firm represents ESL Investments, Inc. and its affiliates (including JPP, LLC and JPP II, LLC) and Mr. Edward S. Lampert (together, "ESL"), which submitted a series of proposals to purchase on a going concern basis substantially all of the operating assets of Sears Holdings Corporation ("SHC") and certain of its debtor affiliates, all of which are debtors and debtors-in-possession (collectively, the "Debtors").

As set forth in detail below, ESL hereby demands that the Board of Directors of SHC (the "Board") immediately override the decision of the Subcommittee of the Restructuring Committee of the Board (the "Subcommittee") to reject ESL's improved going concern bid referred to below to prevent an imminent breach of fiduciary duties, work to formalize and qualify that proposal and move forward with the auction contemplated by the Bidding Procedures Order. In the event that the Board does not override the Subcommittee's decision, ESL will have no choice but to commence litigation on an expedited basis to hold the relevant members of the Board and the Subcommittee responsible for their breaches of fiduciary duties.

As the Board is aware, ESL is the Debtors' largest creditor, having lent the Debtors more than $2.6 billion, of which more than $2.4 billion is secured by valid and enforceable security interests over much of the Debtors' assets. On January 4, 2019, ESL filed 236 proofs of claim memorializing its claims against the Debtors. In addition, Cascade, as agent, filed 12 proofs of

Board of Directors, p. 2

claim memorializing additional claims against the Debtors in which ESL holds approximately 87% of the economic exposure.

As the Board is further aware, ESL has expended substantial resources in its efforts to submit a going concern bid. ESL structured and offered to provide a junior debtor-in-possession financing facility (a "Junior DIP"), which served as the (uncompensated) stalking horse for Great American and for the eventual Junior DIP provided by Cyrus. ESL has conducted substantial due diligence, engaged in extensive good faith negotiations with the Debtors, the Subcommittee and their respective advisors, and expended millions of dollars attempting to reach agreement on the terms of a going concern bid.

In addition, ESL has produced hundreds of thousands of pages of documents to the Subcommittee on a voluntary basis and made Mr. Lampert and Mr. Kamlani, its two most senior executives, available for full day interviews in connection with the Subcommittee's investigation. ESL refutes the allegations made by the Subcommittee's advisors that there are colorable claims against ESL and is confident that there will never be a finding of liability against ESL. In any event, the theories underlying the purported claims alleged against ESL actually concern the appropriateness of the conduct of the Board generally (not limited to ESL), the committees of independent directors that approved the relevant transactions, and the advisors to the Board and such committees.

Throughout this process, ESL has stated consistently its belief in Sears, its belief in the future of Sears and in its steadfast dedication to saving this iconic American retailer and the nearly 50,000 jobs that it provides to Americans across the country. In pursuit of its goal of consummating a going concern bid, ESL assembled and submitted a compelling and actionable bid by the December 28, 2018 deadline set forth in the Bidding Procedures Order (as set forth in more detail in the letter from ESL to Lazard Frères & Co. LLC dated December 28, 2018, the "December 28 Bid"). Among other things, the December 28 Bid included a commitment from three leading financial institutions for up to $1.3 billion of asset backed financing for "new" Sears, provided a basis to resolve virtually all secured claims against the Debtors, and would have preserved a substantial store footprint for Sears and continued employment opportunities for tens of thousands employees.

ESL strongly believes that the December 28 Bid, as submitted, should have been designated a "Qualified Bid" as defined in the Bidding Procedures. Representatives of ESL, including its Chief Executive Officer (Mr. Lampert), met with three of the four members of the Special Committee, including both members of the Subcommittee, and their respective advisors for three hours in the early evening of January 2, 2019 at the offices of Weil Gotshal & Manges LLP to discuss ESL's going concern proposal. A few hours after that meeting concluded, ESL was informed by representatives of the Debtors and the Subcommittee that the December 28 Bid would not be designated a qualified bid and advised that ESL would need to improve its proposal in at least four "threshold" respects. ESL was also advised that a chambers conference was scheduled with the Bankruptcy Court for the afternoon of January 4, 2019.

After further discussions on January 3, 2019, ESL worked to respond to those four issues. The first issue, which related to the availability of the ABL financing, was resolved after several discussions among ESL, the Debtors and their respective advisors. The second issue involved a

Board of Directors, p. 3

$30 million difference in the deposit, seemed capable of prompt resolution in the event that the other issues were resolved.  After further discussions with the Debtors, ESL proposed on January 4, 2019 to resolve the remaining two issues, the responsibility for paying what was described as $450 million in administrative claims and the release requested by ESL as part of its proposal, by agreeing to assume approximately $225 million of administrative liabilities.

Despite these very material improvements, counsel for the Debtors informed counsel for ESL that the improved going concern proposal had also been rejected.  ESL's counsel then attended the January 4 chambers conference, at which the Debtors' counsel stated in the presence of the Bankruptcy Court that despite the rejection of its most recent proposal, ESL should remain engaged in the process.

Again, notwithstanding ESL's even stronger belief that both the December 28 Bid and the substantially improved proposal should be qualified, ESL made a further improved proposal on the evening of January 5, 2019.  The January 5 proposal included the assumption by ESL of "cure costs" in respect of contracts and leases that would be assumed as part of the going concern proposal.  Although such cure costs were estimated to be as much as $180 million, ESL's January 5 proposal did not set any cap on such obligations.  Repeating the now disheartening pattern, late in the afternoon of January 6, 2019, ESL was told that its further improved going concern proposal would not be qualified under the Bidding Procedures.

In rejecting the January 6 proposal, the primary rationale given by the Subcommittee and its representatives was that ESL's improved bid, if accepted, would not provide "complete assurance" that the Debtors would remain administratively solvent because there was some risk that the remaining assets of the estates would not be sufficient to satisfy the remaining administrative liabilities.  As a result, ESL was advised that its bid could be qualified only if ESL assumed this risk and "backstopped" the payment of all administrative claims, estimated to be approximately $335 million.  In a final attempt to bridge the gap, ESL proposed today to acquire certain assets and assume $257 million of additional administrative liabilities, including severance obligations and section 503(b)(9) obligations.  With these additional modifications, ESL improved its December 28 Bid by taking responsibility for an additional $482 million in administrative claims, plus cure costs relating to assumed contracts in an uncapped amount.  By this proposal, ESL clearly satisfied the Subcommittee's previously stated "threshold" issue of providing for payment of $450 million in administrative liabilities.  Nevertheless, the Subcommittee rejected this still further improved proposal, again citing a concern about administrative solvency.

This oft-stated concern is unfounded for several reasons.

First, the January 7 proposal should not leave the Debtors administratively insolvent.  When these cases were filed, the Debtors, with the consent of senior secured lenders, including ESL, agreed to establish a wind-down reserve of $240 million to avoid the risk of administrative insolvency.  This wind-down reserve, managed prudently, particularly if the estates provide appropriate oversight of professionals' fees, should be more than enough to assure administrative solvency.  Furthermore, we are confident that that the evidence will demonstrate that even in a going concern sale predicated on ESL's January 7 proposal, the Debtors should have reasonable assurance that the estates will remain administratively solvent.  Quite simply, it would be a

Board of Directors, p. 4

terrible tragedy if Sears were to liquidate, with the attendant loss of tens of thousands of jobs and enormous value, as a result of a poorly managed wind-down or reckless reliance on inaccurate projections. In addition, the determination as to the possibility of administrative solvency should be made by management and the team from M-III Partners, who are most familiar with the numbers, and not the Subcommittee, which on this issue faces an insurmountable conflict described below.

This situation stands in stark contrast with the situation in Toys R Us. In Toys, the company plunged headlong into the holiday season with grand plans of a prompt emergence backed by billions in DIP loans and billions in new trade credit, only to find itself commencing a complete liquidation in the US by early March, with the main US operating entity administratively insolvent (administrative creditors at Toys R Us Delaware, Inc. are estimated to recover approximately 42 cents on the dollar). Here, the process from the beginning has focused on the narrow window available for a going concern transaction and the need for a wind-down reserve. Unlike Toys, where there was no going concern bid, the Debtors have a viable and fully funded going concern bid.

Second, even if there were a possibility that ESL's going concern proposal would leave the Debtors administratively insolvent, there is no alternative available to the Debtors that would lead to a better result for the Debtors or their creditors. Strikingly, the Subcommittee and its advisors have never advised that a piecemeal liquidation, the only real alternative to ESL's going concern proposal, would yield anywhere near the value that would be obtained by the January 7 proposal. Rather, every other alternative will yield a result that is materially worse for the Debtors' creditors and, in such circumstances, courts have recognized that administrative insolvency, while not favored, does not prevent approval of a going concern sale under section 363 of the Bankruptcy Code. The best overall result should be pursued, even if administrative insolvency may result.[1] In fact, given that a chapter 7 trustee is empowered to sell assets under section 363,[2] there is simply no argument that administrative solvency is a *sine qua non* for approval of a going concern bid.

To this end, the Debtors and, in particular, the Subcommittee, which is in control of the decision given its mandate, must focus on achieving the resolution of these cases that will maximize the value of the Debtors' assets. The proposition is quite simple – the Debtors have a duty to pursue the transaction that maximizes value. Period.

Under this standard, the January 7 proposal is far and away the best alternative for the Debtors. There is simply no comparison between ESL's going concern proposal and any other option. The going concern proposal is the only one that will satisfy, in full, nearly all of the Debtors' senior secured debt – the DIP Loan (the rolled-up $1.2 billion pre-petition ABL loan as well as the $300 million of post-petition incremental financing), the Junior DIP Loan, the FILO

---

[1] *See In re ICL Holding Co.*, 802 F.3d 547 (3d Cir. 2015); *In re Real Mex Rests., Inc.*, No. 11-13122-BLS, Hr'g Tr., Dkt. No. 93 at 192 (Bankr. D. Del. Feb. 10, 2012) ("[W]hile I recognize that there is an administrative insolvency at present in this case, and I have noted my hope and expectation with respect to the, frankly, improvement via a sale in the prospects for all creditors in this case, I believe that it would be much worse, and the administrative insolvency and the circumstances for all creditors would be much worse without this sale."); *In re Allen Family Foods, Inc.*, No. 11-11764-KJC, Hr'g Tr., Dkt. No. 225 at 44 (Bankr. D. Del. July 27, 2011).

[2] 11 U.S.C. § 363(b), (c)1; *see also In re Mejia*, 576 B.R. 464, 468-69 and 471 (Bankr. S.D.N.Y. 2017) (Glenn, J.).

Board of Directors, p. 5

Facility, the IP/GL Facility, the Dove and Sparrow real estate facilities, and the Second Lien Loans. To fund the bid, ESL has raised $1.3 billion from three leading banks, ESL and Cyrus are adding an additional $175 million in incremental real estate loans, and ESL has committed to invest more than $200 million to buy out the senior lenders in several separate loan facilities, including Cascade, Kawa, Cyrus and Great American.

Third, the January 7 going concern proposal also is the best result for *all* of the Debtors' creditors, not just for the administrative creditors, which include retained professionals and the members of the Subcommittee themselves. It will eliminate the burden of billions of dollars of claims on the Debtors' estates, it will employ nearly 50,000 people and avoid the severance and similar claims that would arise if those employees were needlessly terminated, it would prevent claims from the rejection of real estate leases, and it would assume substantial claims of trade creditors.

Fourth, a rejection of the ESL proposal violates the very real duties that the Board and the Subcommittee owe to ESL and to Cyrus, which is participating in the bid, both of which are the Debtors' largest senior secured creditors. Based on extensive conversations with the advisors to the Debtors and the Subcommittee – other than ESL and Cyrus – will be treated virtually the same (and are thus indifferent to the form of a resolution) under a liquidation or a going concern proposal. Moreover, the liquidation scenarios shared with ESL are hopelessly wrong, ignoring the hundreds of millions of dollars owed to ESL and Cyrus in respect of adequate protection replacement liens and superpriority claims under 507(b), which must be paid before general administrative claims. The Board and the Subcommittee cannot simply ignore the very real interests of their largest senior secured creditors, particularly on the basis of made up numbers.

While administrative solvency is important, it cannot be a myopic goal, particularly one that obscures logic and prevents the acceptance of the clearly superior going concern proposal. It is quite clear that the mere possibility of an administrative solvency on which the Subcommittee is focused is predicated on successful litigation against ESL on multiple fronts. There is not any question that ESL lent the Debtors over $2.6 billion, that each loan was approved by independent directors supported by their selected independent financial and legal advisors, and that all of the liens supporting ESL's secured debt are valid and perfected. Success in litigation therefore lies in what would be a lengthy, expensive and highly speculative attack on multiple transactions against the Debtors' largest creditor. The only thing that is certain from that approach is the feeding frenzy of professional fees that will result. That is not a prudent basis on which to predicate administrative solvency. That is casino gambling at its worst, particularly when ESL's proposal contains a very rich settlement offer made in the hope of facilitating a commercial resolution proffered only in the context of saving Sears.

The decision to reject the going concern proposal is simply not a decision that is consistent with the fiduciary duties that the members of the Subcommittee owe to the Debtors' creditors, including the Debtors' largest creditors, ESL and Cyrus. First, the rejection of the going concern proposal violates the duty of care, because it guarantees that the Debtors' largest creditor, ESL, will receive a materially lower recovery on its claims than if the January 7 proposal were accepted. Second, and more importantly, the rejection of the going concern proposal violates the duty of loyalty because the Subcommittee's focus on administrative

Board of Directors, p. 6

solvency is a thinly disguised requirement that the members of the Subcommittee receive releases from the ramifications of their reckless decision to reject the going concern proposal, releases that would be provided through a confirmed chapter 11 plan of reorganization.  Because a confirmed plan would not be possible without the administrative solvency required by 11 U.S.C. §1129(a)(9)(A), the Subcommittee is requiring unreasonable assurances of administrative solvency.  Its members are hopelessly conflicted.

In light of the foregoing, ESL hereby demands that the Board immediately override the decision of the Subcommittee to reject the January 7 going concern proposal to prevent an imminent breach of fiduciary duties, work to formalize and qualify that proposal and conduct the auction on the basis of the qualified bids received by December 28, 2018 bid deadline.  In the event that the Board does not immediately override the Subcommittee's decision, ESL will have no choice but to commence litigation on an expedited basis to hold the Board and the Subcommittee responsible for their breaches of fiduciary duties.

Very truly yours,

*/s/ James L. Bromley*

James L. Bromley

cc:   Ray C. Schrock, P.C.
       Paul M. Basta
       Scott K. Charles