UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                  :

In re                              :          **Chapter 11**

SEARS HOLDINGS CORPORATION, *et al.*,  :         **Case No. 18-23538 (RDD)**
                                  :

Debtors.[1]                      :          **(Jointly Administered)**
                                  :
------------------------------------------------------------x

## ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE PLAN, (III) APPROVING SOLICITATION PACKAGES AND PROCEDURES FOR DISTRIBUTION THEREOF, (IV) APPROVING THE FORMS OF BALLOTS AND ESTABLISHING PROCEDURES FOR VOTING ON THE PLAN, AND (V) GRANTING RELATED RELIEF

Upon the motion, dated April 17, 2019, (ECF No. 3277) (the "**Motion**")[2] of Sears

Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105, 1125, 1126,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or, as applicable, the *Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 4389) (as it may be amended, modified, and supplemented, the "**Plan**").

and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 3017,

3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

and Rules 3017-1, 3018-1, and 3020-1 of the Local Bankruptcy Rules for the Southern District of

New York (the "**Local Rules**"), for entry of an order (i) approving a proposed disclosure statement

under section 1125 of the Bankruptcy Code for a proposed chapter 11 plan; (ii) approving the form

and manner of the Disclosure Statement Hearing Notice, (iii) establishing notice and objection

procedures for the Confirmation Hearing, including the form of notice; (iv) approving the Notice

Packages and procedures for the distribution thereof; (v) approving the forms of ballots, and

establishing procedures for voting on their chapter 11 plan; and (vi) granting related relief, all as

more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing

Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion

and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

relief requested in the Motion having been provided in accordance with the Amended Case

Management Order, such notice having been adequate and appropriate under the circumstances,

and it appearing that no other or further notice need be provided; and upon all of the objections to

the Motion and the Debtors' proposed disclosure statement and the Debtors' response thereto; and

the Court having held a hearing to consider the relief requested in the Motion on May 29, 2019

(the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before

the Court; and the Court having granted certain of the objections, directed the Debtors to make

certain changes to their proposed disclosure statement and otherwise overruled the objections; and

the Debtors having filed on June 28, 2019 a revised disclosure statement (the "**Disclosure**

**Statement**") and a revised chapter 11 plan (the "**Plan**") to reflect subsequent developments in these cases, primarily a resolution of the Debtors' disputes with the Creditors Committee; and, after due deliberation the Court having determined that the Disclosure Statement contains adequate information as required by section 1125 of the Bankruptcy Code and the Debtors are entitled to solicit acceptances of the Plan; and it further appearing that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, which is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor, it is

**FOUND AND DETERMINED THAT:**[3]

A.    The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

B.    The Disclosure Statement Hearing Notice filed by the Debtors and served upon parties in interest in these chapter 11 cases, constitutes adequate and sufficient notice of the hearing to consider approval of the Disclosure Statement and the deadline for filing objections to the Disclosure Statement and responses thereto, and is hereby approved.

C.    The forms of Ballots and Master Ballots, substantially in the forms annexed hereto as **Exhibit C** are consistent with Official Form B 314, adequately address the particular needs of these cases, and are appropriate for each Class entitled to vote on the Plan.

D.    Ballots need not be provided to any of the Classes with Claims against and Interests in the specified Debtors listed in this paragraph because such Classes are unimpaired under the Plan, and, therefore, conclusively presumed to accept the Plan pursuant to section

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

1126(f) of the Bankruptcy Code (each a "**Non-Voting Unimpaired Class**," and collectively, the "**Non-Voting Unimpaired Classes**"):

     i.   *Kmart Corp*: Class 1 – Priority Non-Tax Claims;

     ii.  *Kmart Stores of Illinois LLC* ("**Kmart IL** "): Class 1 – Priority Non-Tax Claims

     iii. *Kmart of Washington LLC* ("**Kmart of Washington**"): Class 1 – Priority Non-Tax Claims;

     iv. *Sears Holdings Corporation* ("**SHC"**): Class 1 – Priority Non-Tax Claims;

     v.  *All Other Debtors*: Class 1 – Priority Non-Tax Claims.

E.     Ballots need not be provided to any of the Classes with Claims against and Interests in the specified Debtors listed in this paragraph because such Classes are not receiving or retaining any property under the Plan, and, therefore, conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code (each a "**Non-Voting Impaired Class**," and collectively, the "**Non-Voting Impaired Classes**"):

     i.   *Kmart Corp*: Class 6 – Intercompany Claims, Class 7 – Intercompany Interests, Class 8 – Subordinated Securities Claims;

     ii.  *Kmart IL* : Class 6 – Intercompany Claims; Class 7 – Intercompany Interests, Class 8 – Subordinated Securities Claims;

     iii. *Kmart of Washington*: Class 6 – Intercompany Claims, Class 7 – Intercompany Interests, Class 8 – Subordinated Securities Claims;

     iv. *SHC*: Class 6 – Intercompany Claims, Class 7 – Intercompany Interests, Class 8 – Subordinated Securities Claims, Class 9 – Existing SHC Equity Interests;

     v.  *All Other Debtors*: Class 6 – Intercompany Claims, Class 7 – Intercompany Interests, Class 8 – Subordinated Claims.

F.     The period set forth below, during which the Debtors may solicit acceptances of the Plan, is a reasonable period of time for entities entitled to vote on the Plan to make an informed decision to either accept or reject the Plan.

G.      The procedures for the solicitation and tabulation of votes to accept or reject the Plan (as more fully set forth in the Motion) provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

H.      The procedures for transmitting the documents and information required by Bankruptcy Rule 3017(d) to the record holders and beneficial holders of the Debtors' Securities are adequate and appropriate.

I.      The procedures set forth below regarding notice to all parties in interest of the time, date, and place of the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") and the filing of objections thereto, and the distribution and contents of the Notice Packages, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      The Disclosure Statement is approved.

3.      The following dates and times are approved in connection with solicitation and confirmation of the Plan:[4]

| | |
|---|---|
| **Voting Record Date:** | May 9, 2019 |
| **Disclosure Statement Objection Deadline:** | May 22, 2019 at 4:00 p.m. |
| **Disclosure Statement Hearing:** | May 29, 2019 at 1:30 p.m. |
| **Solicitation Deadline:** | The date that is five (5) business days after entry of this Order, or as soon as reasonably practicable thereafter |
| **Publication Deadline:** | July 12, 2019 |
| **Plan Supplement Filing Deadline:** | Seven (7) days prior to the Voting Deadline |

---

[4] All proposed times set forth in the table below are in Prevailing Eastern Time.

| | |
|---|---|
| **Voting Deadline:** | August 2, 2019 at 5:00 p.m. |
| **Plan Confirmation Objection Deadline:** | August 2, 2019 at 4:00 p.m. |
| **Voting Certification Deadline:** | August 9, 2019 |
| **Deadline to File Brief in Support of Confirmation and Reply to Plan Objection(s):** | August 13, 2019 at 12:00 p.m. |
| **Plan Confirmation Hearing:** | August 16, 2019 at 10:00 a.m. |

4.     The notice of the time set for filing objections to, and the hearing to consider approval of, the Disclosure Statement as described in the Motion and reflected in the Affidavit of Service filed by the Debtors' voting agent, Prime Clerk, LLC (the "**Voting Agent**" or "**Prime Clerk**"), (ECF No. 3309) was proper, adequate, and sufficient notice thereof.

5.     Each of the Classes listed in this paragraph with Claims against and Interests in the specified Debtors will be entitled to vote (each a "**Voting Class**," and collectively, the "**Voting Classes**"):

a.   _Kmart Corp_: Class 2 – Secured Claims, Class 3 – PBGC Claims, Class 4 – General Unsecured Claims, Class 5 – ESL Unsecured Claims;

b.   _Kmart IL_ : Class 2 – Secured Claims, Class 3 – PBGC Claims, Class 4(A) – General Unsecured Claims (other than Guarantee Claims), Class 4(B) – Guarantee claims, Class 5 – ESL Unsecured Claims;

c.   _Kmart of Washington_: Class 2 – Secured Claims, 3 – PBGC Claims, Class 4(A) – General Unsecured Claims (other than Guarantee Claims), 4(B) – Guarantee Claims, Class 5 – ESL Unsecured Claims;

d.   _SHC_: Class 2 – Secured Claims, Class 3 – PBGC Claims, Class 4 – General Unsecured Claims, Class 5 – ESL Unsecured Claims;

e.   _All Other Debtors_: Class 2—Secured Claims, Class 3 – PBGC Claims, Class 4 – General Unsecured Claims, Class 5 – ESL Unsecured Claims.

6.      The Ballots and the Master Ballots, substantially in the forms annexed hereto as **Exhibits C-1**, **C-2**, and **C-3** are approved and are authorized to be distributed to the holders of Claims in each of the Voting Classes.

7.      The Voting Record Date for purposes of determining which parties (i) are entitled to vote on the Plan, (ii) will receive a Notice of Non-Voting Status, and (iii) will receive the Confirmation Hearing Notice, shall be May 9, 2019.

8.      With respect to holders of Claims in Kmart Corp. Class 2 - Secured Claims, Kmart Corp. Class 4 – General Unsecured Claims, Kmart IL Class 2 – Secured Claims, Kmart IL Class 4(A) – General Unsecured Claims (other than Guarantee Claims), Kmart IL Class 4(B) – Guarantee Claims, Kmart of Washington Class 2 – Secured Claims, Kmart of Washington Class 4(A) – General Unsecured Claims (other than Guarantee Claims), Kmart of Washington Class 4(B) – Guarantee Claims, SHC Class 2 – Secured Claims, SHC Class 4 – General Unsecured Claims, and for all other Debtors, Class 2 – Secured Claims and Class 4 – General Unsecured Claims, relating the Second Lien Notes, the Second Lien PIK Notes and the Unsecured Notes (collectively, the "**Debtors' Securities**"), the Debtors are authorized to send Ballots to record holders of such Debtors' Securities, including, without limitation, brokers, banks, dealers, or other agents or nominees, or any mailing agents thereof (collectively, the "**Master Ballot Agents**"), and each Master Ballot Agent shall be entitled to receive reasonably sufficient copies of Ballots and Notice Packages to distribute to the beneficial owners of the Debtors' Securities for whom such Master Ballot Agent holds such Debtors' Securities.  The Debtors shall be responsible for each Master Ballot Agent's reasonable, documented costs and expenses associated with (i) the distribution of copies of Beneficial Owner Ballots and appropriate Notice Packages to the beneficial owners of such Debtors' Securities and (ii) the tabulation of such Ballots.

9.     Each Master Ballot Agent may either (i) forward the appropriate Notice Package together with the Beneficial Owner Ballot to each beneficial owner of the Debtors' Securities entitled to vote on the Plan (within five (5) business days of the receipt by such Master Ballot Agent of the Notice Package) for voting and include a return envelope provided by and addressed to the Master Ballot Agent, so that the beneficial owner may return the completed Beneficial Owner Ballot to the Master Ballot Agent by a date calculated by the Master Ballot Agent to allow it to prepare and return the Master Ballot to the Voting Agent by the Voting Deadline or (ii) "pre-validate" the Beneficial Owner Ballots contained in the Notice Package by (a) indicating thereon the name, address, and DTC participant number of the record holder of the Debtors' Securities to be voted, the amount of the Debtors' Securities held by the beneficial owner as of the Voting Record Date, and the appropriate account numbers through which the beneficial owner's holdings are derived, the applicable CUSIP for such beneficial holder, and (b) executing the beneficial owner's Beneficial Owner Ballot, and then forwarding the Notice Package to the beneficial owner of the Debtors' Securities for voting within five (5) business days after the receipt by such Master Ballot Agent of the Notice Package, with the beneficial owner then returning the Beneficial Owner Ballot directly to the Voting Agent in the return envelope to be provided in the Notice Package by the Voting Deadline.

10.     The Master Ballot Agents shall complete the Master Ballots according to the instructions set forth in the Master Ballots.

11.     Holders of Claims arising under the Second Lien Debt will receive a Ballot to vote in Kmart Corp. Class 2 – Secured Claims, Kmart IL Class 2 – Secured Claims, Kmart of Washington, Class 2 – Secured Claims, SHC Class 2 – Secured Claims, and for all other Debtors, Class 2 – Secured Claims and a Ballot to vote in Class 4 – General Unsecured Claims.  Such

Ballots will be counted in Class 2 to the extent such Claims are secured, and will be counted in

Class 4 – General Unsecured Claims to the extent such Claims are unsecured, as determined in

accordance with section 506(a) of the Bankruptcy Code.

12.     With respect to holders of the Debtors' Securities who fall into Class 5 –

ESL Unsecured Claims on account of their identities as "ESL Parties", the Debtors are authorized

to send directly to those ESL Parties customized Class 5 Beneficial Owner Ballots.  The Debtors

will customize those Class 5 Beneficial Owner Ballots based on the information provided by the

Debtors, the ESL Parties, and/or counsel to the ESL Parties in advance of solicitation. To the extent

an ESL Party receives a Class 4 Beneficial Owner Ballot through ordinary channels, the ESL Party

shall disregard the Class 4 Beneficial Owner Ballot.

13.     All Ballots or Master Ballots must be properly executed, completed, and

delivered to the Voting Agent in accordance with the instructions on the Ballots or Master Ballots,

as applicable, so that they are actually received by the Voting Agent no later than 5:00 p.m.

(Prevailing Eastern Time) on August 2, 2019 (the "**Voting Deadline**").

14.     The Notices of Non-Voting Status, substantially in the form annexed hereto

as **Exhibits D** and **E** are approved.

15.     On or before five (5) business days after entry of the Proposed Order, or as

soon as reasonably practicable thereafter, the Debtors shall distribute (i) a Notice of Non-Voting

Status – Unimpaired Classes (the "**Notice of Non-Voting Status – Unimpaired Classes**"),

substantially in the form annexed hereto as **Exhibit D**, and the Confirmation Hearing Notice,

substantially in the form annexed hereto as **Exhibit B**, to the holders of Non-Voting Unimpaired

Class Claims as of the close of business on the Voting Record Date, which Classes are unimpaired

and therefore not entitled to vote to accept or reject the Plan; and (ii) a Notice of Non-Voting Status

– Impaired Classes (the "**Notice of Non-Voting Status – Impaired Classes**," and, together with the Notice of Non-Voting Status – Unimpaired Classes, the "**Notices of Non-Voting Status**"), substantially in the form annexed hereto as **Exhibit E**, and the Confirmation Hearing Notice, to the holders of Non-Voting Impaired Class Claims and Interests as of the close of business on the Voting Record Date, which Classes are impaired and deemed to reject the Plan.  With respect to Class 6 – Intercompany Claims and Class 7 Intercompany Interests, the Debtors are not required to serve the applicable Notices of Non-Voting Status, or any other type of notice in connection with solicitation of the Plan because such Claims and Interests are held by the Debtors or the Debtors' controlled affiliates.

16.    The Notices of Non-Voting Status satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules, and the Debtors therefore are not required to distribute copies of the Plan and the Disclosure Statement to any holder of a Claim or Interest in either the Non-Voting Impaired Classes or the Non-Voting Unimpaired Classes, unless such party otherwise makes a request to the Debtors for copies of the Plan or the Disclosure Statement.

17.    Solely for the purpose of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a Claim, and without prejudice to the rights of the Debtors in any other context, each Claim within a Class entitled to vote to accept or reject the Plan is to be temporarily allowed in an amount equal to the amount of such Claim as set forth in a timely filed proof of Claim, or, if no proof of Claim was filed, the amount of such Claim as set forth in the applicable Debtors' schedules of liabilities, January 17, 2019 (as amended, the "**Schedules**"), provided, that:

(a)    If a Claim is deemed Allowed pursuant to the Plan, such Claim shall be Allowed for voting purposes in the deemed Allowed amount set forth in the Plan;

(b)     If a Claim, for which a proof of Claim has been timely filed, is wholly contingent, unliquidated, or disputed (based on the face of the proof of Claim or a reasonable review of the proof of Claim and its supporting documentation), such Claim shall be allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, unless such Claim is disputed in the manner set forth in subparagraph (f) below;

(c)     If a Claim, for which a proof of Claim was timely filed, lists an amount that is partially unliquidated or contingent, such Claim shall be temporarily allowed only in the liquidated, noncontingent amount set forth on the proof of Claim, unless such Claim is disputed in the manner set forth in subparagraph (f) below;

(d)     If a Claim has been estimated for voting purposes or otherwise allowed for voting purposes by order of the Court, such Claim shall be allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution, unless otherwise provided by order of the Court;

(e)     If a Claim is listed in the Schedules as contingent, unliquidated, disputed, in the amount of $0.00, or unknown, and a proof of Claim was not (i) filed by the applicable bar date for the filing of proofs of Claim established by the Court or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, unless the Debtors have consented in writing, such Claim shall be disallowed for voting purposes;

(f)     If the Debtors file and serve an objection to, or a request for estimation of, a Claim at least twenty (20) days before the Voting Deadline, such Claim shall be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in the objection or request for estimation and subject to the outcome of any Rule 3018(a) Motion (as defined below) filed in accordance with paragraph 16 hereof.  If the Debtors file and serve a request for estimation or an objection to a portion of a Claim, the undisputed portion of such Claim shall be temporarily allowed for voting purposes only and not for the purposes of allowance or distribution, except to the extent and in the manner as may be set forth in the request for estimation or objection and subject to the outcome of any Rule 3018(a) Motion filed in accordance with paragraph 16 hereof;

(g)     If the Debtors file and serve an objection to a Claim at least twenty (20) days before the Voting Deadline, and the relief sought in that objection is to supersede one or more scheduled Claims with a filed Claim, such scheduled Claim(s) shall be temporarily disallowed for voting purposes only and not for purpose of allowance or distribution; *provided, however,* that in the event the holder of such Claim(s) has returned only the Ballot in

connection with the scheduled Claim(s), such Ballot shall be counted in the amount of the filed Claim;

(h)    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, the Voting Agent shall tabulate votes related to separate Claims held by a single creditor in a particular Class separately;

(i)    Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class shall be provided with only one Notice Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

(j)    If a proof of claim has been amended by a later proof of claim that is filed on or prior to the Voting Record Date, the later filed amending claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended claim. Except as otherwise ordered by the Court, any amendments to proofs of claim after the Voting Record Date shall not be considered for purposes of these tabulation rules;

(k)    A beneficial owner that has filed a proof of Claim on account of the Debtors' Securities shall not be allowed to vote on account of such filed proof of Claim; *provided, however,* that such holder shall otherwise be entitled to receive a Notice Package and vote in accordance with the procedures set forth in this Order provided that such holder is a holder as of the Voting Record Date;

(l)    Notwithstanding anything contained herein to the contrary, the Voting Agent, in its discretion, may contact entities entitled to vote to cure any defects in the Ballots or Master Ballots;

(m)    There shall be a rebuttable presumption that in the case where more than one timely, properly completed Ballot or Master Ballot voting the same Claim is received, only the last properly completed otherwise valid Ballot or Master Ballot received by the Voting Agent will be counted unless the holder of the Claim receives Court approval otherwise;

(n)    If a Claim is filed in the amount of $0.00, the holder of such Claim shall not be entitled to vote on account of such Claim; and

(o)    If a Claim is filed in a currency other than U.S. Dollars and is not Allowed in a sum certain pursuant to the Plan, the holder of such Claim shall be entitled to vote a Claim in the amount of $1.00.

18.     If a holder of a Claim seeks to challenge the allowance (or disallowance) of its Claim for voting purposes, in accordance with the above procedures, such holder is directed to serve on the Debtors and file with the Court (with a copy to Chambers) on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, to such Claim, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting to accept or reject the Plan (a "**Rule 3018(a) Motion**").

19.     If a holder of a Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless temporarily allowed by the Court for voting purposes pursuant to an order entered at least five (5) days prior to the Voting Deadline or as otherwise directed by the Court.

20.     Any Ballot that is properly completed, executed, and timely returned to the Voting Agent but does not indicate an acceptance or rejection of a Debtors' Plan, or indicates both an acceptance and a rejection of a Debtors' Plan, shall not be counted.

21.     Holders of Claims must vote all of their Claims within a particular Class that is entitled to vote, either to accept or reject the Plan and may not split their vote(s), and, thus, a Ballot that partially rejects and partially accepts a Debtors' Plan shall not be counted.

22.     Beneficial holders of SRAC Unsecured PIK Notes, Second Lien Notes, and Second Lien PIK Notes who vote on all of the Debtors' Plans will be deemed to vote on only Plan(s) for the applicable Debtor obligor(s), and Debtor guarantor(s) of such notes.  The votes of Beneficial Holders of SRAC Unsecured PIK Notes, Second Lien Notes, and Second Lien PIK Notes who vote on each of the Debtors' Plans separately will only be counted with respect to Plan(s) for the applicable Debtor, obligor(s), and Debtor guarantor(s) of such notes.

23.    The following types of Ballots shall not be counted in determining whether the Plan has been accepted or rejected:  (i) any Ballot received after the Voting Deadline unless the Debtors have granted, in writing, an extension of the Voting Deadline with respect to such Ballot, (ii) any Ballot that is illegible or contains insufficient information to permit the identification of the Claim holder, (iii) any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan, (iv) any Ballot cast for a Claim identified in the Schedules as unliquidated, contingent, or disputed for which no proof of Claim was timely filed, (v) any Ballot that is unsigned or without an original signature; *provided, however*, for the avoidance of doubt, a Ballot submitted via the Voting Agent's online balloting portal on the Case Website ("**E-Ballot**") shall be deemed to be an original signature; and (vi) any Ballot transmitted to the Voting Agent by facsimile, or electronic transmission, or other electronic means (other than Master Ballots which are entitled to vote via electronic mail and Ballots entitled to be submitted via E-Ballot).

24.    For holders of Claims subject to the Voting Record Date, no transfer of Claim(s) pursuant to Bankruptcy Rule 3001 shall be recognized unless: (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date; (b) the transferee files with the Court, no later than the Voting Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer, and (ii) a sworn statement of the transferor supporting the validity of the transfer; or (c) no timely objection with respect to such transfer was filed at least twenty (20) days before the Voting Deadline.  In instances where a Claim has been the subject of one or more partial transfers, all holders of any portion of said Claim shall be treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and

solicitation procedures set forth herein) and be required to vote every portion of such claim collectively either to accept or reject the Plan.

25.    With respect to the tabulation of Master Ballots and Ballots cast by Master Ballot Agents and beneficial owners of the Debtors' Securities, for purposes of voting, the amount that will be used to tabulate acceptance or rejection of the Plan will be the principal amount held as of the Voting Record Date (the "**Record Amount**").  The following additional rules will apply to the tabulation of Master Ballots and Ballots cast by Master Ballot Agents and beneficial owners of the Debtors' Securities:

(a)    Votes cast by beneficial owners through a Master Ballot Agent will be applied against the positions held by such entities in the applicable Debtors' Security as of the Voting Record Date, as evidenced by the record and depository listings.  Votes submitted by a Master Ballot Agent, whether pursuant to a Master Ballot or pre-validated Ballots, will not be counted in excess of the Record Amount of such Debtors' Securities held by such Master Ballot Agent; *provided, however*, that the Voting Agent may adjust such Record Amount to reflect the amount in accordance with subparagraph (e) below;

(b)    To the extent that conflicting votes or "overvotes" are submitted by a Master Ballot Agent, whether pursuant to a Master Ballot or pre-validated Ballots, the Voting Agent will attempt to reconcile discrepancies with the Master Ballot Agent;

(c)    To the extent that overvotes on a Master Ballot or pre-validated Ballots are not reconcilable prior to the preparation of the Voting Certification (as defined below), the Voting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Ballots that contained the overvote, but only to the extent of the Master Ballot Agent's position in the applicable Debtors' Security;

(d)    Multiple Master Ballots may be completed by a single Master Ballot Agent and delivered to the Voting Agent.  Votes reflected by multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the last, properly completed Master Ballot received by the Voting Date will be counted; and

(e)    For purposes of tabulating votes, each record holder or beneficial owner will be deemed to have voted their applicable Record Amount, although the Voting Agent may be asked to make adjustments to reflect the claim amount.

26.    Subject to an Order of the Court to the contrary, the Debtors, in their sole discretion, reserve the right to waive any defect in any Ballot at any time, whether before or after the Voting Deadline, and any such waivers shall be documented in the Voting Certification prepared by the Voting Agent.

27.    The Confirmation Hearing will be held on August 16, 2019 at 10:00 a.m. (Prevailing Eastern Time); provided, however, that the Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice other than through adjournments announced in open Court or as indicated in any notice filed with the Court.

28.    Any objections to confirmation of the Plan must:

(a)    Be in writing;

(b)    State the name and address of the objecting party and the amount and nature of the Claim or Interest of such party;

(c)    State with particularity the basis and nature of any objection;

(d)    Conform to the Bankruptcy Rules and the Local Rules;

(e)    Be filed with the Bankruptcy Court (i) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov) and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable; and

(f)    Be filed and served in accordance with General Order M-399 so as to be received **no later than August 2, 2019 at 4:00 p.m.** (Prevailing Eastern Time) (the "**Plan Confirmation Objection Deadline**") by the Court and the following parties (the "**Standard Parties**")—

(i)      the Chambers of the Honorable Judge Robert D. Drain ("**Chambers**"), United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 248, White Plains, New York 10601;

(ii)     Counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garret A. Fail, Esq., and Sunny Singh, Esq.);

(iii)    the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**"), 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Paul Schwartzberg, Esq.);

(iv)     Counsel to the Creditors' Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira Dizengoff, Esq., Philip Dublin, Esq., and Sara Brauner, Esq.).

29.    Objections to confirmation of the Plan that are not timely filed and served in the manner set forth above shall not be considered and shall be deemed overruled.

30.    The Debtors shall file their brief in support of confirmation of the Plan and the Debtors and other parties in interest are authorized to file responsive pleadings to any objection to confirmation of the Plan by no later than 12:00 p.m. (Prevailing Eastern Time) on August 13, 2019.

31.    The Confirmation Hearing Notice, substantially in the form hereto as **<u>Exhibit B</u>**, is approved.

32.    On or before five (5) business days after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall mail or caused to be mailed the following materials (the "**Notice Packages**") in connection with voting on the Plan, notice of the Confirmation Hearing, and the filing of objections to confirmation of the Plan:

(a)      With respect to holders of Claims in the Voting Classes;

(i)      The Confirmation Hearing Notice;

17

    (ii)    An appropriate form of Ballot, Beneficial Owner Ballot, and/or Master Ballot and appropriate return envelope with prepaid postage;

    (iii)    Instructions detailing how to access electronic versions or request hard copies of each of the following materials:

        (1)    A copy of this Order (without any exhibits);

        (2)    The Disclosure Statement (with the Plan annexed thereto);

        (3)    Any letter(s) recommending acceptance of the Plan.

(b)    With respect to holders of Claims in the Non-Voting Unimpaired Classes:

    (i)    The Confirmation Hearing Notice; and

    (ii)    A Notice of Non-Voting Status – Unimpaired Classes.

(c)    With respect to holders of Claims or Interests in the Non-Voting Impaired Classes:

    (i)    The Confirmation Hearing Notice; and

    (ii)    A Notice of Non-Voting Status – Impaired Classes.

33.    On or before five (5) business days after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall mail or cause to be mailed a copy of the Confirmation Hearing Notice (to the extent not already provided) to:

    (i)    All Notice Parties;

    (ii)    All persons or entities that filed proofs of Claim on or before the date of the Disclosure Statement Hearing, except to the extent their respective Claim was paid pursuant to, or expunged by, prior order of the Court;

    (iii)    All persons or entities listed in the Schedules as holding liquidated, noncontingent, and undisputed Claims in an amount greater than $0.00, other than scheduled Claims that have been superseded by a filed proof of Claim;

    (iv)    The transfer agent(s) and the record holders of the Debtors' Securities as of the Voting Record Date;

(v)     All other parties in interest that have filed a request for notice pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases prior to the date of the Disclosure Statement Hearing; and

(vi)    Any other known holders of Claims against, or Interests in, the Debtors.

34.     Pursuant to section 1126(f) of the Bankruptcy Code and Bankruptcy Rule 3017(d), Notice Packages for holders of Claims in any Non-Voting Unimpaired Classes, which Classes are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, will not include a Ballot.

35.     Pursuant to section 1126(g) of the Bankruptcy Code and Bankruptcy Rule 3017(d), Notice Packages for holders of Claims or Interests in any Non-Voting Impaired Classes, which Classes are conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code, will not include a Ballot.

36.     The Debtors shall not be required to send Notice Packages or any other notice to holders of Claims that have already been paid in full; *provided, however*, that if any such holder would be entitled to receive a Notice Package or any other notice for any reason other than by virtue of the fact that its Claim had been paid in full by the Debtors, then such holder shall be sent a notice in accordance with the procedures set forth herein.

37.     The Debtors shall publish the Confirmation Hearing Notice not less than twenty (20) days before the Plan Confirmation Objection Deadline once in the national edition of the *New York Times*.    Additionally, the Confirmation Hearing Notice shall be posted electronically on the website maintained for the Debtors by the Voting Agent, https://restructuring.primeclerk.com/sears (the "**Case Website**").

38.     To the extent Master Ballot Agents incur out-of-pocket expenses in connection with distribution of the Beneficial Owner Ballets and Notice Packages, the Debtors are

authorized, but not directed, to reimburse such entities for their reasonable and customary expenses incurred in this regard without further order of the Court.

39.    With respect to addresses from which notices in these chapter 11 cases have been returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Notice Packages or other notice to the entities listed at such addresses, unless the Debtors are provided with accurate addresses for such entities at least twenty (20) days before the Confirmation Hearing.  Failure to mail the Notice Packages to such entities shall neither constitute inadequate notice of the Confirmation Hearing or the Voting Deadline, nor violate Bankruptcy Rule 3017(d).

40.    The Debtors are authorized to make nonsubstantive and nonmaterial changes to the Disclosure Statement, the Plan, the Notice Packages, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among such documents.

41.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

42.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: June 28, 2019
      White Plains, New York

                       /s/ Robert D. Drain
                       THE HONORABLE ROBERT D. DRAIN
                       UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

### List of Classes of Claims and Interests

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) presumed to accept or deemed to reject the Plan:

**Kmart Corp.**

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claims | Impaired | Yes |
| 3 | PBGC Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | ESL Unsecured Claims | Impaired | Yes |
| 6 | Intercompany Claims | Impaired | No (Deemed to Reject) |
| 7 | Intercompany Interests | Impaired | No (Deemed to Reject) |
| 8 | Subordinated Securities Claims | Impaired | No (Deemed to Reject) |

**Kmart Stores of Illinois LLC**

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claims | Impaired | Yes |
| 3 | PBGC Claims | Impaired | Yes |
| 4(A) | General Unsecured Claims (other than Guarantee Claims) | Impaired | Yes |
| 4(B) | Guarantee Claims | Impaired | Yes |
| 5 | ESL Unsecured Claims | Impaired | Yes |
| 6 | Intercompany Claims | Impaired | No (Deemed to Reject) |
| 7 | Intercompany Interests | Impaired | No (Deemed to Reject) |
| 8 | Subordinated Securities Claims | Impaired | No (Deemed to Reject) |

**Kmart of Washington LLC**

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claims | Impaired | Yes |
| 3 | PBGC Claims | Impaired | Yes |
| 4(A) | General Unsecured Claims (other than Guarantee Claims) | Impaired | Yes |
| 4(B) | Guarantee Claims | Impaired | Yes |
| 5 | ESL Unsecured Claims | Impaired | Yes |
| 6 | Intercompany Claims | Impaired | No (Deemed to Reject) |
| 7 | Intercompany Interests | Impaired | No (Deemed to Reject) |
| 8 | Subordinated Securities Claims | Impaired | No (Deemed to Reject) |

**Sears Holdings Corp.**

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claims | Impaired | Yes |
| 3 | PBGC Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | ESL Unsecured Claims | Impaired | Yes |
| 6 | Intercompany Claims | Impaired | No (Deemed to Reject) |
| 7 | Intercompany Interests | Impaired | No (Deemed to Reject) |
| 8 | Subordinated Securities Claims | Impaired | No (Deemed to Reject) |
| 9 | Existing SHC Equity Interests | Impaired | No (Deemed to Reject) |

**All other Debtors**

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claims | Impaired | Yes |
| 3 | PBGC Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | ESL Unsecured Claims | Impaired | Yes |
| 6 | Intercompany Claims | Impaired | No (Deemed to Reject) |
| 7 | Intercompany Interests | Impaired | No (Deemed to Reject) |
| 8 | Subordinated Securities Claims | Impaired | No (Deemed to Reject) |

**<u>Exhibit B</u>**

**Confirmation Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
:
In re                                                    :          **Chapter 11**
:
**SEARS HOLDINGS CORPORATION,** *et al.*,                 :          **Case No. 18-23538 (RDD)**
:
Debtors.[1]                                               :          **(Jointly Administered)**
:
-------------------------------------------------------------x

**NOTICE OF (I) HEARING ON CONFIRMATION OF THE PLAN
AND PROCEDURES FOR OBJECTING TO CONFIRMATION OF THE
PLAN; AND (II) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN**

**PLEASE TAKE NOTICE** that:

       1.    **Approval of Disclosure Statement**.  By order dated [_____], 2019 (ECF No.___) (the "**Order**"), the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") approved the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation  and Its Affiliated Debtors* dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") filed by Sears Holdings Corporation  and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") (ECF No. 4390).  The Bankruptcy Court authorized the Debtors to solicit votes with regard to the approval or rejection of the *Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Plan**"),[2] annexed as **Exhibit A** to the Disclosure Statement.  Any capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, LLC (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

2.      **Confirmation Hearing**.  A hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan will be held on **August 16, 2019 at 10:00 a.m. (Prevailing Eastern Time),** before the Honorable Robert D. Drain, United States Bankruptcy Judge, in Courtroom 118 of the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601.  The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtors at the Confirmation Hearing or any continued hearing or as indicated in any notice filed by the Debtors with the Bankruptcy Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to interested parties.

3.      The Disclosure Statement and the Plan are on file with the Clerk of the Bankruptcy Court (the "**Clerk**") and may be examined during normal business hours at the office of the Clerk.  Copies of the Disclosure Statement and the Plan may also be obtained from the Court's electronic docket for the Debtors' chapter 11 cases, which can be found at http://www.nysb.uscourts.gov (a PACER login and password are required to access documents on the Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

4.      Copies of this Order, the motion to approve the Disclosure Statement (ECF No. 3277), the Disclosure Statement, and the Plan may also be accessed free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk, LLC ("**Prime Clerk**" or "**Voting Agent**"), at https://restructuring.primeclerk.com/sears, or obtained by written request as follows:

| **If by standard or overnight mail or hand delivery:** | **If by e-mail to:** |
| --- | --- |
| Sears Holdings Corporation Ballot Processing c/o Prime Clerk, LLC One Grand Central Place 60 East 42nd Street, Suite 1440 New York, NY 10165 | searsinfo@primeclerk.com with a reference to "Sears" in the subject line |

**THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT PROVIDE, LEGAL ADVICE.**

5.      **Record Date for Voting Purposes**.  Only parties who are eligible to vote and hold Claims against the Debtors as of May 9, 2019 are entitled to vote on the Plan.

6.      **Parties in Interest Not Entitled to Vote**.  (a) The following holders of Claims and Interests are not entitled to vote on the Plan: (i) holders of unimpaired Claims or Interests that are presumed to accept the Plan (Class 1 – Priority Non-Tax Claims) (ii) holders of impaired Claims or Interests that are deemed to reject the Plan (Kmart Corp. Class 6 – Intercompany Claims, Kmart Corp. Class 7 – Intercompany Interests, Kmart Corp. Class 8 – Subordinated Securities Claims; Kmart IL  Class 6 – Intercompany Claims; Kmart IL Class 7 – Intercompany Interests, Kmart IL Class 8 – Subordinated Securities Claims; Kmart of Washington Class 6 – Intercompany Claims, Kmart of Washington Class 7 – Intercompany Interests, Kmart of Washington Class 8 – Subordinated Securities Claims; SHC Class 6 – Intercompany Claims, SHC Class 7 – Intercompany Interests, SHC Class 8 – Subordinated Securities Claims, SHC Class 9 – Existing SHC Equity Interests, for all other Debtors Class 6 – Intercompany Claims, Class 7 – Intercompany Interests, Class 8 – Subordinated Claims), and (iii) holders of Claims that are the subject of filed objections or requests for estimation.  (b) If you have timely filed a proof of Claim and disagree with the Debtors' classification of, objection to, or request for estimation of, your Claim and believe that you should be entitled to vote on the Plan, then you must serve on the Debtors at the address set forth below and file with the Bankruptcy Court (with a copy to chambers) a motion (a "**Rule 3018(a)**

**Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing such Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan. (c) All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, as to such Claim. In accordance with Bankruptcy Rule 3018, as to any creditor filing a Rule 3018(a) Motion, such creditor's ballot will not be counted except as may be otherwise ordered by the Bankruptcy Court at least five (5) days prior to the Voting Deadline or as the Bankruptcy Court may direct. Creditors may contact the Voting Agent at (844) 384-4460 (domestic toll-free) or (929) 955-2419 (international) to receive an appropriate ballot for any Claim for which a proof of Claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.

7.    **Voting Deadline**. All votes to accept or reject the Plan must be actually received by Prime Clerk, LLC ("**Prime Clerk**"), the Debtors' voting agent (the "**Voting Agent**") by no later than **August 2, 2019** (the "**Voting Deadline**"), unless extended by the Debtors. Any failure to follow the voting instructions included with your ballot may disqualify your ballot and your vote.

8.    **Objections to Confirmation**. Responses and objections, if any, to confirmation of the Plan must (a) be in writing, (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party, (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection, (d) conform to the Bankruptcy Rules and the Local Rules, (e) be filed with the Court together with proof of service by either (i) *Electronic Filing*: the filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System; electronic filing must be in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), or (ii) *Conventional Filing*: the filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601; the hard copy of the response or objection should be accompanied by a CD-ROM containing the response or objection in text-searchable portable document format (PDF); and (iii) *All filers* – those filing electronically as well as those filing conventionally – must provide Bankruptcy Court Chambers with two separate, single-sided hard copies of the response or objection; any proposed order should be accompanied by a CD-ROM containing the response or objection in text searchable portable document format (PDF); and (f) be served upon the following parties in accordance with General Order M-399 so as to be received no later than **August 2, 2019 at 4:00 p.m. (Prevailing Eastern Time)**, and on the following parties:(i) the Chambers of the Honorable Judge Robert D. Drain ("**Chambers**"), United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 248, White Plains, New York 10601; (ii) Counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garret A. Fail, Esq., and Sunny Singh, Esq.); (iii) the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**"), 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Paul Schwartzberg, Esq.); and (iv) Counsel to the Creditors' Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira Dizengoff, Esq., Philip Dublin, Esq., and Sara Brauner, Esq.).

**IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

9.    **Parties Who Will Not Be Treated as Creditors**. Any holder of a Claim that (i) is scheduled in the Debtors' schedules of assets and liabilities at $0.00, or in an unknown amount, or as

disputed, contingent, or unliquidated, and is not the subject of a timely filed proof of Claim or a proof of Claim deemed timely filed with the Bankruptcy Court, or (ii) is not scheduled and is not the subject of a timely filed proof of Claim or a proof of Claim deemed timely filed with the Bankruptcy Court, shall not be treated as a creditor with respect to such Claim for purposes of voting on the Plan.

10.     **Classification and Treatment. A chart summarizing the treatment provided by the Plan to each class of Claims and Interests is included in <u>Annex A</u>.  Annex A is qualified in its entirety by reference to the Plan**.

11.     **Releases.  Please be advised that under the Plan, the following holders are deemed to have granted the releases contained in Section 15.9 of the Plan, which is set forth for convenience on <u>Annex B</u> hereto: (i) the holders of all Claims or Interests who vote to accept the Plan; (ii) the holders of Claims or Interests who reject the Plan or abstain from voting on the Plan but do not opt out of these releases on the Ballots; (iii) each of the Released Parties (other than the Debtors); and (iv) with respect to any entity in the foregoing clauses (i) through (iii), (x) such entity's predecessors, successors, and assigns, and (y) all persons entitled to assert Claims through or on behalf of such entities with respect to the matters for which the releasing entities are providing releases.**

**ELECTION TO WITHHOLD CONSENT TO THE RELEASES CONTAINED IN THE PLAN IS AT THE OPTION OF THE CLAIM OR INTEREST HOLDER.**

12.     **The Plan also contains other discharge, injunction, release, and exculpation provisions that may affect your rights such as those forth in <u>Annex B</u>.  Annex B is qualified in its entirety by reference to the Plan**.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

13.     **Executory Contracts and Unexpired Leases**.  On the Effective Date, except as otherwise provided in the Plan or Plan Supplement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) as of the Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory Contract; (2) is a contract, engagement letter that has been approved by an order of the Bankruptcy Court, release, or other agreement or document entered into in connection with the Plan; or (3) is a D&O Policy or an insurance policy.

14.     **Additional Information**.  Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan should contact the Debtors' voting agent, Prime Clerk, at (844) 384-4460 (domestic toll-free) or (929) 955-2419 (international), or may view such documents by accessing the Debtors' website: https://restructuring.primeclerk.com/sears     or     the     Bankruptcy     Court's     website: http://www.nysb.uscourts.gov.  As previously noted above, a PACER (www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Bankruptcy Court's website

(http://www.nysb.uscourts.gov).  **PRIME CLERK IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE**.

Dated: _____, 2019
       New York, New York

                     _____
                     WEIL, GOTSHAL & MANGES LLP
                     767 Fifth Avenue
                     New York, New York  10153
                     Telephone:  (212) 310-8000
                     Facsimile:  (212) 310-8007
                     Ray C. Schrock, P.C.
                     Jacqueline Marcus
                     Garrett A. Fail
                     Sunny Singh

                     *Attorneys for Debtors*
                     *and Debtors in Possession*

**Annex A[1]**

**Summary of Plan Classification and Treatment of Claims and Interests**

| | Claims and Interests for Kmart Corp. | | | |
|---|---|---|---|---|
| **Class** | **Claim or Interest** | **Treatment** | **Impaired or Unimpaired** | **Entitlement to Vote on the Plan[2]** |
| 1 | Priority Non-Tax Claims | Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment of such Claim in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Non-Tax Claim, at the option of the Debtors (subject to the Creditors' Committee Notice Procedures) or the Liquidating Trustee, each such holder shall receive from the respective Debtor or the Liquidating Trust, as applicable: (i) payment in full in Cash in an amount equal to such Claim, payable on the latest of (A) the Effective Date, (B) the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or (C) the next Distribution Date after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, paid (x) first out of the Wind Down Account, subject to the payment in full of Administrative Expense Claims, and pro rata with any Priority Tax Claims; and (y) if the amount available for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holders pursuant to this sentence, from the Net Proceeds of Total Assets; or (ii) such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired. | Unimpaired | No (Presumed to Accept) |

---

[1] **Annex A is qualified in its entirety by reference to the Plan**.

[2] The amounts set forth herein are estimates primarily based on the Debtors' books and records.  Actual Allowed amounts will depend upon, among other things, final reconciliation and resolution of all Claims.  Consequently, the actual Allowed Claim amounts may differ materially from these estimates.

| | | Claims and Interests for Kmart Corp. | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[2] |
| 2 | Secured Claims | Except to the extent that a holder of an Allowed Secured Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to different treatment, on the latest of (x) the Effective Date, (y) the date that is ten (10) Business Days after the date such Secured Claim becomes an Allowed Claim, or (z) the next Distribution Date after such Secured Claim becomes an Allowed Secured Claim, each holder of an Allowed Secured Claim will receive from the Debtor against which its Secured Claim is Allowed, on account and in full satisfaction of such Allowed Claim, at the option of the Debtors (subject to the Creditors' Committee Notice Procedures) or Liquidating Trustee, as applicable: (i) Cash in an amount equal to the Allowed amount of such Secured Claim; (ii) transfer of the collateral securing such Secured Claim or the proceeds thereof in satisfaction of the Allowed amount of such Secured Claim; or (iii) such other treatment sufficient to render such holder's Allowed Secured Claim Unimpaired. | Impaired | Yes |
| 3 | PBGC Claims | In accordance with the PBGC Settlement, except to the extent otherwise expressly provided under the Plan Settlement as set forth in <u>Section 9.2</u> of this Plan, PBGC shall receive from the Liquidating Trust, (i) the PBGC Liquidating Trust Priority Interest and (ii) in respect of the Allowed PBGC Unsecured Claims, subject to <u>Section 9.2(a)(viii)</u>, PBGC's *Pro Rata* share of (w) the Kmart Corp. General Unsecured Liquidating Trust Interests; (x) Kmart Corp. Specified Unsecured Liquidating Trust Interests; (y) the General Unsecured Liquidating Trust Interests; and (z) the Specified Unsecured Liquidating Trust Interests, in full and final satisfaction, settlement, release, and discharge of all PBGC Claims against Kmart Corp; <u>provided,</u> that for the avoidance of doubt, no Kmart Corp. Specified Unsecured Liquidating Trust Interests or Specified Unsecured Liquidating Trust Interests shall be granted to holders of Allowed ESL Unsecured Claims | Impaired | Yes |

| Claims and Interests for Kmart Corp. | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[2] |
| 4 | General Unsecured Claims | Subject to the Plan Settlement as provided in Section 9.2 of this Plan, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, in full and final satisfaction, settlement, release, and discharge of an Allowed General Unsecured Claim, each such holder thereof shall receive its Pro Rata share of (i) the Kmart Corp. General Unsecured Liquidating Trust Interests; (ii) Kmart Corp. Specified Unsecured Liquidating Trust Interests; (iii) the General Unsecured Liquidating Trust Interests; (iv) the Specified Unsecured Liquidating Trust Interests; and (v) any Excess PBGC Amounts that would have been distributed to PBGC on account of Kmart Corp. General Unsecured Liquidating Trust Interests and Kmart Corp. Specified Unsecured Liquidating Trust Interests; provided, that for the avoidance of doubt, no Kmart Corp. Specified Unsecured Liquidating Trust Interests or Specified Unsecured Liquidating Trust Interests shall be granted to holders of Allowed ESL Unsecured Claims | Impaired | Yes |
| 5 | ESL Unsecured Claims | Subject to the Plan Settlement as provided in Section 9.2 of this Plan and section 9.13(c) of the Asset Purchase Agreement, except to the extent that a holder of an Allowed ESL Unsecured Claim against Kmart Corp. agrees with the Debtors (subject to the consent of the Creditors' Committee, not to be unreasonably withheld) prior to the Effective Date, provided, that, prior to the Effective Date, the Creditors' Committee shall have consent rights with respect to the Allowance or settlement of any ESL Unsecured Claims that were not Allowed pursuant to the Sale Order, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed ESL Unsecured Claim, each such holder thereof shall receive its Pro Rata share of (i) the Kmart Corp. General Unsecured Liquidating Trust Interests; (ii) the General Unsecured Liquidating Trust Interests; and (iii) any Excess PBGC Amounts that would have been distributed to PBGC on account of Kmart Corp. General Unsecured Liquidating Trust Interests | Impaired | Yes |
| 6 | Intercompany Claims | On the Effective Date, pursuant to the Plan Settlement as provided in Section 9.2 of this Plan, except as provided in Section 9.2(e), no separate distributions shall be made under the Plan on account of Intercompany Claims, and such Claims shall be extinguished by distribution, contribution, or otherwise, in the discretion of the Debtors (subject to the Creditors' Committee Notice Procedures) and in accordance with section 9.2(a) of the Asset Purchase Agreement | Impaired | No (Deemed to Reject) |

| Claims and Interests for Kmart Corp. | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[2] |
| 7 | Intercompany Interests | On or after the Effective Date, all Intercompany Interests shall be cancelled.  Each such holder thereof shall neither receive nor retain any property of the Estate or direct interest in property of the Estate of the Debtors on account of such Intercompany Interest | Impaired | No (Deemed to Reject) |
| 8 | Subordinated Securities Claims | Holders of Subordinated Securities Claims shall not receive or retain any property under the Plan on account of such Subordinated Securities Claims.  On the Effective Date, all Subordinated Securities Claims shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise | Impaired | No (Deemed to Reject) |

| Claims and Interests for Kmart Stores of Illinois LLC | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[3] |
| 1 | Priority Non-Tax Claims | Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment of such Claim in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Non-Tax Claim, at the option of the Debtors (subject to the Creditors' Committee Notice Procedures) or the Liquidating Trustee, each such holder shall receive from the respective Debtor or the Liquidating Trust, as applicable: (i) payment in full in Cash in an amount equal to such Claim, payable on the latest of (A) the Effective Date, (B) the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or (C) the next Distribution Date after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, paid (x) first out of the Wind Down Account, subject to the payment in full of Administrative Expense Claims, and pro rata with any Priority Tax Claims; and (y) if the amount available for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holders pursuant to this sentence, from the Net Proceeds of Total Assets; or (ii) such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired. | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claims | Except to the extent that a holder of an Allowed Secured Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to different treatment, on the latest of (x) the Effective Date, (y) the date that is ten (10) Business Days after the date such Secured Claim becomes an Allowed Claim, or (z) the next Distribution Date after such Secured Claim becomes an Allowed Secured Claim, each holder of an Allowed Secured Claim will receive from the Debtor against which its Secured Claim is Allowed, on account and in full satisfaction of such Allowed Claim, at the option of the Debtors (subject to the Creditors' Committee Notice Procedures) or Liquidating Trustee, as applicable: (i) Cash in an amount equal to the Allowed amount of such Secured Claim; (ii) transfer of the collateral securing such Secured Claim or the proceeds thereof in satisfaction of the Allowed amount of such Secured Claim; or (iii) such other treatment sufficient to render such holder's Allowed Secured Claim Unimpaired. | Impaired | Yes |

---

[3] The amounts set forth herein are estimates primarily based on the Debtors' books and records.  Actual Allowed amounts will depend upon, among other things, final reconciliation and resolution of all Claims.  Consequently, the actual Allowed Claim amounts may differ materially from these estimates.

| | | Claims and Interests for Kmart Stores of Illinois LLC | | |
|---|---|---|---|---|
| **Class** | **Claim or Interest** | **Treatment** | **Impaired or Unimpaired** | **Entitlement to Vote on the Plan**[3] |
| 3 | PBGC Claims | In accordance with the PBGC Settlement, except to the extent otherwise expressly provided under the Plan Settlement as set forth in <u>Section 9.2</u> of this Plan, PBGC shall receive from the Liquidating Trust, (i) the PBGC Liquidating Trust Priority Interest and (ii) in respect of the Allowed PBGC Unsecured Claims, subject to <u>Section 9.2(a)(viii)</u>, PBGC's *Pro Rata* share of (w) Kmart IL Guarantee General Unsecured Liquidating Trust Interests; (x) Kmart IL Guarantee Specified Unsecured Liquidating Trust Interests; (y) the General Unsecured Liquidating Trust Interests; and (z) the Specified Unsecured Liquidating Trust Interests, in full and final satisfaction, settlement, release, and discharge of all PBGC Claims against Kmart Stores of Illinois LLC; <u>provided,</u> that for the avoidance of doubt, no Kmart IL Guarantee Specified Unsecured Liquidating Trust Interests or Specified Unsecured Liquidating Trust Interests shall be granted to holders of Allowed ESL Unsecured Claims | Impaired | Yes |
| 4(A) | General Unsecured Claims (other than Kmart WA Guarantee Claims) | Subject to the Plan Settlement as provided in Section 9.2 of this Plan, except to the extent that a holder of an Allowed General Unsecured Claim (other than a Guarantee Claim) agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of an Allowed General Unsecured Claim (other than a Guarantee Claim), each such holder thereof shall receive its Pro Rata share of (i) the General Unsecured Liquidating Trust Interests and (ii) the Specified Unsecured Liquidating Trust Interests; provided, that for the avoidance of doubt, no Specified Unsecured Liquidating Trust Interests shall be granted to holders of Allowed ESL Unsecured Claims | Impaired | Yes |

| | Claims and Interests for Kmart Stores of Illinois LLC | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[3] |
| 4(B) | Guarantee Claims | Subject to the Plan Settlement as provided in Section 9.2 of this Plan, except to the extent that a holder of an Allowed Guarantee Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of an Allowed Guarantee Claim, each such holder thereof shall receive its Pro Rata share of: (i) Kmart IL Guarantee General Unsecured Liquidating Trust Interests; (ii) Kmart IL Guarantee Specified Unsecured Liquidating Trust Interests; (iii) the General Unsecured Liquidating Trust Interests; (iv) the Specified Unsecured Liquidating Trust Interests; and (v) any Excess PBGC Amounts that would have been distributed to PBGC on account of Kmart IL Guarantee General Unsecured Liquidating Trust Interests and Kmart IL Guarantee Specified Unsecured Liquidating Trust Interests; provided, that for the avoidance of doubt, no Kmart IL Guarantee Specified Unsecured Liquidating Trust Interests or Specified Unsecured Liquidating Trust Interests shall be granted to holders of Allowed ESL Unsecured Claims | Impaired | Yes |
| 5 | ESL Unsecured Claims | Subject to the Plan Settlement as provided in Section 9.2 of this Plan and section 9.13(c) of the Asset Purchase Agreement, except to the extent that a holder of an Allowed ESL Unsecured Claim against Kmart Stores of Illinois LLC agrees with the Debtors (subject to the consent of the Creditors' Committee, not to be unreasonably withheld)  prior to the Effective Date, provided, that, prior to the Effective Date, the Creditors' Committee shall have consent rights with respect to the Allowance or settlement of any ESL Unsecured Claims that were not Allowed pursuant to the Sale Order, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed ESL Unsecured Claim, each such holder thereof shall receive its Pro Rata share of:  (i) Kmart IL Guarantee General Unsecured Liquidating Trust Interests, including any Excess PBGC Amounts; (ii) the General Unsecured Liquidating Trust Interests; and (iii) any Excess PBGC Amounts that would have been distributed to PBGC on account of Kmart IL Guarantee General Unsecured Liquidating Trust Interests | Impaired | Yes |
| 6 | Intercompany Claims | On the Effective Date, pursuant to the Plan Settlement as provided in Section 9.2 of this Plan, except as provided in Section 9.2(e), no separate distributions shall be made under the Plan on account of Intercompany Claims, and such Claims shall be extinguished by distribution, contribution, or otherwise, in the discretion of the Debtors (subject to the Creditors' Committee Notice Procedures) and in accordance with section 9.2(a) of the Asset Purchase Agreement. | Impaired | No (Deemed to Reject) |

| Claims and Interests for Kmart Stores of Illinois LLC | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[3] |
| 7 | Intercompany Interests | On or after the Effective Date, all Intercompany Interests shall be cancelled. Each such holder thereof shall neither receive nor retain any property of the Estate or direct interest in property of the Estate of the Debtors on account of such Intercompany Interest | Impaired | No (Deemed to Reject) |
| 8 | Subordinated Securities Claims | Holders of Subordinated Securities Claims shall not receive or retain any property under the Plan on account of such Subordinated Securities Claims. On the Effective Date, all Subordinated Securities Claims shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise | Impaired | No (Deemed to Reject) |

| Claims and Interests for Kmart of Washington LLC | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[4] |
| 1 | Priority Non-Tax Claims | Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment of such Claim in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Non-Tax Claim, at the option of the Debtors (subject to the Creditors' Committee Notice Procedures) or the Liquidating Trustee, each such holder shall receive from the respective Debtor or the Liquidating Trust, as applicable: (i) payment in full in Cash in an amount equal to such Claim, payable on the latest of (A) the Effective Date, (B) the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or (C) the next Distribution Date after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, paid (x) first out of the Wind Down Account, subject to the payment in full of Administrative Expense Claims, and pro rata with any Priority Tax Claims; and (y) if the amount available for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holders pursuant to this sentence, from the Net Proceeds of Total Assets; or (ii) such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired. | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claims | Except to the extent that a holder of an Allowed Secured Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to different treatment, on the latest of (x) the Effective Date, (y) the date that is ten (10) Business Days after the date such Secured Claim becomes an Allowed Claim, or (z)  the next Distribution Date after such Secured Claim becomes an Allowed Secured Claim, each holder of an Allowed Secured Claim will receive from the Debtor against which its Secured Claim is Allowed, on account and in full satisfaction of such Allowed Claim, at the option of the Debtors (subject to the Creditors' Committee Notice Procedures) or Liquidating Trustee, as applicable: (i) Cash in an amount equal to the Allowed amount of such Secured Claim; (ii) transfer of the collateral securing such Secured Claim or the proceeds thereof in satisfaction of the Allowed amount of such Secured Claim; or (iii) such other treatment sufficient to render such holder's Allowed Secured Claim Unimpaired. | Impaired | Yes |

---

[4] The amounts set forth herein are estimates primarily based on the Debtors' books and records.  Actual Allowed amounts will depend upon, among other things, final reconciliation and resolution of all Claims.  Consequently, the actual Allowed Claim amounts may differ materially from these estimates.

| | **Claims and Interests for Kmart of Washington LLC** | | | |
|---|---|---|---|---|
| **Class** | **Claim or Interest** | **Treatment** | **Impaired or Unimpaired** | **Entitlement to Vote on the Plan[4]** |
| 3 | PBGC Claims | In accordance with the PBGC Settlement, except to the extent otherwise expressly provided under the Plan Settlement as set forth in Section 9.2 of this Plan, PBGC shall receive from the Liquidating Trust, (i) the PBGC Liquidating Trust Priority Interest and (ii) in respect of the Allowed PBGC Unsecured Claims, subject to Section 9.2(a)(viii), PBGC's Pro Rata share of (w) Kmart WA Guarantee General Unsecured Liquidating Trust Interests; (x) Kmart WA Guarantee Specified Unsecured Liquidating Trust Interests; (y) the General Unsecured Liquidating Trust Interests; and (z) the Specified Unsecured Liquidating Trust Interests, in full and final satisfaction, settlement, release, and discharge of all PBGC Claims against Kmart of Washington LLC; provided, that for the avoidance of doubt, no Kmart WA Guarantee Specified Unsecured Liquidating Trust Interests or Specified Unsecured Liquidating Trust Interests shall be granted to holders of Allowed ESL Unsecured Claims | Impaired | Yes |
| 4(A) | General Unsecured Claims (other than Kmart WA Guarantee Claims) | Subject to the Plan Settlement as provided in Section 9.2 of this Plan, except to the extent that a holder of an Allowed General Unsecured Claim (other than a Guarantee Claim) agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of an Allowed General Unsecured Claim (other than a Guarantee Claim), each such holder thereof shall receive its Pro Rata share of (i) the General Unsecured Liquidating Trust Interests and (ii) the Specified Unsecured Liquidating Trust Interests; provided, that for the avoidance of doubt, no Specified Unsecured Liquidating Trust Interests shall be granted to holders of Allowed ESL Unsecured Claims | Impaired | Yes |

| | | Claims and Interests for Kmart of Washington LLC | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[4] |
| 4(B) | Guarantee Claims | Subject to the Plan Settlement as provided in Section 9.2 of this Plan, except to the extent that a holder of an Allowed Guarantee Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of an Allowed Guarantee Claim, each such holder thereof shall receive its Pro Rata share of: (i) Kmart WA Guarantee General Unsecured Liquidating Trust Interests, including any Excess PBGC Amounts; (ii) Kmart WA Guarantee Specified Unsecured Liquidating Trust Interests; (iii) the General Unsecured Liquidating Trust Interests, including any Excess PBGC Amounts; (iv) the Specified Unsecured Liquidating Trust Interests; and (v) any Excess PBGC Amounts that would have been distributed to PBGC on account of Kmart WA Guarantee General Unsecured Liquidating Trust Interests and Kmart WA Guarantee Specified Unsecured Liquidating Trust Interests; provided, that for the avoidance of doubt, no Kmart WA Guarantee Specified Unsecured Liquidating Trust Interests or Specified Unsecured Liquidating Trust Interests shall be granted to holders of Allowed ESL Unsecured Claims | Impaired | Yes |
| 5 | ESL Unsecured Claims | Subject to the Plan Settlement as provided in Section 9.2 of this Plan and section 9.13(c) of the Asset Purchase Agreement, except to the extent that a holder of an Allowed ESL Unsecured Claim against Kmart of Washington LLC agrees with the Debtors (subject to the consent of the Creditors' Committee, not to be unreasonably withheld) prior to the Effective Date, provided, that, prior to the Effective Date, the Creditors' Committee shall have consent rights with respect to the Allowance or settlement of any ESL Unsecured Claims that were not Allowed pursuant to the Sale Order, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed ESL Unsecured Claim, each such holder thereof shall receive its Pro Rata share of: (i) Kmart WA Guarantee General Unsecured Liquidating Trust Interests, including any Excess PBGC Amounts; (ii) the General Unsecured Liquidating Trust Interests; and (iii) any Excess PBGC Amounts that would have been distributed to PBGC on account of Kmart WA Guarantee General Unsecured Liquidating Trust Interests | Impaired | Yes |
| 6 | Intercompany Claims | On the Effective Date, pursuant to the Plan Settlement as provided in Section 9.2 of this Plan, except as provided in Section 9.2(e), no separate distributions shall be made under the Plan on account of Intercompany Claims, and such Claims shall be extinguished by distribution, contribution, or otherwise, in the discretion of the Debtors (subject to the Creditors' Committee Notice Procedures) and in accordance with section 9.2(a) of the Asset Purchase Agreement | Impaired | No (Deemed to Reject) |

| Claims and Interests for Kmart of Washington LLC | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[4] |
| 7 | Intercompany Interests | On or after the Effective Date, all Intercompany Interests shall be cancelled.  Each such holder thereof shall neither receive nor retain any property of the Estate or direct interest in property of the Estate of the Debtors on account of such Intercompany Interest | Impaired | No (Deemed to Reject) |
| 8 | Subordinated Securities Claims | Holders of Subordinated Securities Claims shall not receive or retain any property under the Plan on account of such Subordinated Securities Claims.  On the Effective Date, all Subordinated Securities Claims shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise | Impaired | No (Deemed to Reject) |

| | | Claims and Interests for Sears Holdings Corporation | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[5] |
| 1 | Priority Non-Tax Claims | Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment of such Claim in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Non-Tax Claim, at the option of the Debtors (subject to the reasonable consent of the Creditors' Committee) or the Liquidating Trustee, each such holder shall receive from the respective Debtor or the Liquidating Trust, as applicable: (i) payment in full in Cash in an amount equal to such Claim, payable on the latest of (A) the Effective Date, (B) the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or (C)  the next Distribution Date after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, paid (x) first out of the Wind Down Account, subject to the payment in full of Administrative Expense Claims, and pro rata with any Priority Tax Claims; and (y) if the amount available for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holders pursuant to this sentence, from the Net Proceeds of Total Assets; or (ii) such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired. | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claims | Except to the extent that a holder of an Allowed Secured Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to different treatment, on the latest of (x) the Effective Date, (y) the date that is ten (10) Business Days after the date such Secured Claim becomes an Allowed Claim, or (z)  the next Distribution Date after such Secured Claim becomes an Allowed Secured Claim, each holder of an Allowed Secured Claim will receive from the Debtor against which its Secured Claim is Allowed, on account and in full satisfaction of such Allowed Claim, at the option of the Debtors (subject to the Creditors' Committee Notice Procedures) or Liquidating Trustee, as applicable: (i) Cash in an amount equal to the Allowed amount of such Secured Claim; (ii) transfer of the collateral securing such Secured Claim or the proceeds thereof in satisfaction of the Allowed amount of such Secured Claim; or (iii) such other  treatment sufficient to render such holder's Allowed Secured Claim Unimpaired. | Impaired | Yes |

[5] The amounts set forth herein are estimates primarily based on the Debtors' books and records.  Actual Allowed amounts will depend upon, among other things, final reconciliation and resolution of all Claims.  Consequently, the actual Allowed Claim amounts may differ materially from these estimates.

| Claims and Interests for Sears Holdings Corporation | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[5] |
| 3 | PBGC Claims | In accordance with the PBGC Settlement, except to the extent otherwise expressly provided under the Plan Settlement as set forth in Section 9.2 of this Plan, PBGC shall receive from the Liquidating Trust, (i) the PBGC Liquidating Trust Priority Interest and (ii) in respect of the Allowed PBGC Unsecured Claims, PBGC's Pro Rata share of (x) the General Unsecured Liquidating Trust Interests and (y) the Specified Unsecured Liquidating Trust Interests, in full and final satisfaction, settlement, release, and discharge of all PBGC Claims against Sears Holdings Corp. | Impaired | Yes |
| 4 | General Unsecured Claims | Subject to the Plan Settlement as provided in Section 9.2 of this Plan, except to the extent that a holder of an Allowed General Unsecured Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of an Allowed General Unsecured Claim, each such holder thereof shall receive its Pro Rata share of (i) the General Unsecured Liquidating Trust Interests and (ii) the Specified Unsecured Liquidating Trust Interests; provided, that for the avoidance of doubt, no Specified Unsecured Liquidating Trust Interests shall be granted to holders of Allowed ESL Unsecured Claims | Impaired | Yes |
| 5 | ESL Unsecured Claims | Subject to the Plan Settlement as provided in Section 9.2 of this Plan and section 9.13(c) of the Asset Purchase Agreement, except to the extent that a holder of an Allowed ESL Unsecured Claim against Sears Holdings Corp. agrees with the Debtors (subject to the consent of the Creditors' Committee, not to be unreasonably withheld) prior to the Effective Date, provided, that, prior to the Effective Date, the Creditors' Committee shall have consent rights with respect to the Allowance or settlement of any ESL Unsecured Claims that were not Allowed pursuant to the Sale Order, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed ESL Unsecured Claim, each such holder thereof shall receive its Pro Rata share of the General Unsecured Liquidating Trust Interests. | Impaired | Yes |
| 6 | Intercompany Claims | On the Effective Date, pursuant to the Plan Settlement as provided in Section 9.2 of this Plan, except as provided in Section 9.2(e), no separate distributions shall be made under the Plan on account of Intercompany Claims, and such Claims shall be extinguished by distribution, contribution, or otherwise, in the discretion of the Debtors (subject to the Creditors' Committee Notice Procedures) and in accordance with section 9.2(a) of the Asset Purchase Agreement. | Impaired | No (Deemed to Reject) |

| Claims and Interests for Sears Holdings Corporation | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[5] |
| 7 | Intercompany Interests | On or after the Effective Date, all Intercompany Interests shall be cancelled.  Each such holder thereof shall neither receive nor retain any property of the Estate or direct interest in property of the Estate of the Debtors on account of such Intercompany Interest | Impaired | No (Deemed to Reject) |
| 8 | Subordinated Securities Claims | Holders of Subordinated Securities Claims shall not receive or retain any property under the Plan on account of such Subordinated Securities Claims.  On the Effective Date, all Subordinated Securities Claims shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise | Impaired | No (Deemed to Reject) |
| 9 | Existing SHC Equity Interests | On the Effective Date, all Existing SHC Equity Interests shall be cancelled.  Each such holder thereof shall neither receive nor retain any property of the Estate or direct interest in property of the Estate of SHC on account of such Existing SHC Equity Interest | Impaired | No (Deemed to Reject) |

| Claims and Interests for All Other Debtors | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[6] |
| 1 | Priority Non-Tax Claims | Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment of such Claim in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Non-Tax Claim, at the option of the Debtors (subject to the Creditors' Committee Notice Procedures) or the Liquidating Trustee, each such holder shall receive from the respective Debtor or the Liquidating Trust, as applicable: (i) payment in full in Cash in an amount equal to such Claim, payable on the latest of (A) the Effective Date, (B) the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or (C) the next Distribution Date after such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, paid (x) first out of the Wind Down Account, subject to the payment in full of Administrative Expense Claims, and pro rata with any Priority Tax Claims; and (y) if the amount available for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holders pursuant to this sentence, from the Net Proceeds of Total Assets; or (ii) such other treatment so as to render such holder's Allowed Priority Non-Tax Claim Unimpaired. | Unimpaired | No (Presumed to Accept) |
| 2 | Secured Claims | Except to the extent that a holder of an Allowed Secured Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to different treatment, on the latest of (x) the Effective Date, (y) the date that is ten (10) Business Days after the date such Secured Claim becomes an Allowed Claim, or (z) the next Distribution Date after such Secured Claim becomes an Allowed Secured Claim, each holder of an Allowed Secured Claim will receive from the Debtor against which its Secured Claim is Allowed, on account and in full satisfaction of such Allowed Claim, at the option of the Debtors (subject to the Creditors' Committee Notice Procedures) or Liquidating Trustee, as applicable: (i) Cash in an amount equal to the Allowed amount of such Secured Claim; (ii) transfer of the collateral securing such Secured Claim or the proceeds thereof in satisfaction of the Allowed amount of such Secured Claim; or (iii) such other treatment sufficient to render such holder's Allowed Secured Claim Unimpaired. | Impaired | Yes |

---

[6] The amounts set forth herein are estimates primarily based on the Debtors' books and records.  Actual Allowed amounts will depend upon, among other things, final reconciliation and resolution of all Claims.  Consequently, the actual Allowed Claim amounts may differ materially from these estimates.

| Claims and Interests for All Other Debtors | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[6] |
| 3 | PBGC Claims | In accordance with the PBGC Settlement, except to the extent otherwise expressly provided under the Plan Settlement as set forth in Section 9.2 of this Plan, PBGC shall receive from the Liquidating Trust, (i) the PBGC Liquidating Trust Priority Interest and (ii) in respect of the Allowed PBGC Unsecured Claims, PBGC's Pro Rata share of (x) the General Unsecured Liquidating Trust Interests and (y) the Specified Unsecured Liquidating Trust Interests, in full and final satisfaction, settlement, release, and discharge of all PBGC Claims against any Debtor (other than Kmart Corp., Kmart Stores of Illinois LLC, Kmart of Washington LLC, and Sears Holdings Corp.) for which the Plan is confirmed | Impaired | Yes |
| 4 | General Unsecured Claims | Subject to the Plan Settlement as provided in Section 9.2 of this Plan, except to the extent that a holder of an Allowed General Unsecured Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of an Allowed General Unsecured Claim, each such holder thereof shall receive its Pro Rata share of (i) the General Unsecured Liquidating Trust Interests and (ii) the Specified Unsecured Liquidating Trust Interests; provided, that for the avoidance of doubt, no Specified Unsecured Liquidating Trust Interests shall be granted to holders of Allowed ESL Unsecured Claims | Impaired | Yes |
| 5 | ESL Unsecured Claims | Subject to the Plan Settlement as provided in Section 9.2 of this Plan and section 9.13(c) of the Asset Purchase Agreement, except to the extent that a holder of an Allowed ESL Unsecured Claim against all Debtors other than (i) Kmart Corp., (ii) Kmart Stores of Illinois LLC, (iii) Kmart of Washington LLC, and (iv) Sears Holdings Corp., agrees with the Debtors (subject to the consent of the Creditors' Committee, not to be unreasonably withheld) prior to the Effective Date, provided, that, prior to the Effective Date the Creditors' Committee shall have consent rights with respect to the Allowance or settlement of any ESL Unsecured Claims that were not Allowed pursuant to the Sale Order, or the Liquidating Trust after the Effective Date, to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of such Allowed ESL Unsecured Claim, each such holder thereof shall receive its Pro Rata share of the General Unsecured Liquidating Trust Interests | Impaired | Yes |

| Claims and Interests for All Other Debtors | | | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Plan[6] |
| 6 | Intercompany Claims | On the Effective Date, pursuant to the Plan Settlement as provided in Section 9.2 of this Plan, except as provided in Section 9.2(e), no separate distributions shall be made under the Plan on account of Intercompany Claims, and such Claims shall be extinguished by distribution, contribution, or otherwise, in the discretion of the Debtors (subject to the Creditors' Committee Notice Procedures) and in accordance with section 9.2(a) of the Asset Purchase Agreement | Impaired | No (Deemed to Reject) |
| 7 | Intercompany Interests | On or after the Effective Date, all Intercompany Interests shall be cancelled. Each such holder thereof shall neither receive nor retain any property of the Estate or direct interest in property of the Estate of the Debtors on account of such Intercompany Interest | Impaired | No (Deemed to Reject) |
| 8 | Subordinated Securities Claims | Holders of Subordinated Securities Claims shall not receive or retain any property under the Plan on account of such Subordinated Securities Claims. On the Effective Date, all Subordinated Securities Claims shall be deemed cancelled without further action by or order of the Bankruptcy Court, and shall be of no further force and effect, whether surrendered for cancellation or otherwise | Impaired | No (Deemed to Reject) |

## Annex B[1]

## Select Plan Provisions

### Select Defined Terms

"*Exculpated Parties*" means collectively: (a) the Debtors; (b) the Creditors' Committee and each of its members in their official capacity; (c) with respect to each of the foregoing entities in clauses (a) through (b), all Related Parties; provided, that ESL Parties shall not be Exculpated Parties under the Plan.  For the avoidance of doubt, each of the Debtors' post-Commencement Date directors, officers, and employees (other than the ESL Parties) shall be Exculpated Parties under the Plan.

"*Related Parties*" means with respect to any Released Party or Exculpated Party, such Party's successors and assigns, managed accounts or funds, and all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and persons' respective heirs, executors, estates, servants, and nominees, including the Restructuring Committee, Restructuring Subcommittee, and each of its respective members; provided, that, any ESL Party shall not be a Related Party.

"*Released Parties*" means in each case, solely in their capacities as such: (a) the Debtors; (b) the Creditors' Committee and each of its members; (c) the Liquidating Trustee; (d) the Liquidating Trust Board; (e) with respect to each of the foregoing entities in clauses (a) through (d), all Related Parties; provided, that, with respect to each of the foregoing entities in clause (c) and (d), each shall not be released for any post-Effective Date conduct;  provided, further, that the following entities shall not be "Released Parties" under the Plan: (i) the ESL Parties; (ii) any person or Entity against which any action has been commenced on behalf of the Debtors or their Estates, in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing; (iii) any Entity identified as a defendant or a potential defendant of an Estate Cause of Action in the Plan Supplement; and (iv) any subsequent transferee of any of the foregoing with respect to any Assets of the Debtors; provided, further, that recovery on account of any Causes of Action against the Specified Directors and Officers, solely with respect to D&O Claims, shall be subject to the limitations set forth in Section 15.11.

"*Specified Directors and Officers*" means any person who is a director of any of the Debtors on the Effective Date and any person who was an officer of any of the Debtors immediately prior to the closing of the Sale Transaction, each in their capacity as a director or officer of the Debtors, as applicable.

"*D&O Claim*" means any Preserved Cause of Action against the Specified Directors and Officers.

**Section 15.7 of the Plan: Term of Injunctions or Stays**: Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**Section 15.8 of the Plan: Injunction**: (a) Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; (b) Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan)

---

[1] **Annex B** is qualified in its entirety by reference to the Plan.

and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Liquidating Trust or against property or interests in property of any of the Debtors or the Liquidating Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (c) By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim extinguished or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in this Section 15.8; (d) The injunctions in this Section 15.8 shall extend to any successors of the Debtors and their respective property and interests in property.

**Section 15.9 of the Plan: Releases**: (a) Debtor Release. As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect after the Effective Date, for good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed released and discharged, by the Debtors, the Liquidating Trust, and the Estates, and any Entity seeking to exercise the rights of or on behalf of the Estates, and any successors to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, from any and all Causes of Action that the Debtors, the Liquidating Trust, or the Debtors' Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' Estates, the conduct of the Debtors' businesses, the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan, and the Definitive Documents, or any related agreements, instruments, or other documents, and the negotiation, formulation, or preparation or implementation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, or other event taking place on or before the Effective Date; provided, that, nothing in this Section 15.9(a) shall be construed to release the Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that nothing shall be construed to release the Released Parties from any Canadian Causes of Action.  For the avoidance of doubt, nothing herein shall release any Claim or Cause of Action that is expressly preserved and not released pursuant to the terms of the Asset Purchase Agreement.  The foregoing releasing parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 15.9(a) against each of the Released Parties.  (b) Third Party Releases. As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date (including the right of the Liquidating Trust to prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Preserved Causes of Action, including the Specified Causes of Action), for good and valuable consideration, on and after the Effective Date, in accordance with section 1141 of the Bankruptcy Code, each of the Released Parties shall be deemed released and discharged, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, except as otherwise provided herein, by each of the following (all such persons or Entities, the "Releasing Parties"): (i) the holders of all Claims who vote to accept the Plan, (ii) the holders of Claims who reject the Plan or abstain from voting on the Plan and do not opt out of these releases on the Ballots, (iii) each of the Released Parties (other than the Debtors), and (iv) with respect to any entity in the foregoing clauses (i) through (iii), (x) such entity's predecessors, successors, and assigns, and (y) all persons entitled to assert Claims through or on behalf of such entities with respect to the matters for which the releasing entities are providing releases; in each case, from any and all Causes of Action that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part,

the Debtors, the Debtors' Estates, the Plan, the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the Sale Transaction, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party (other than assumed contracts or leases), the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments or other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that, nothing in this Section 15.9(b) shall be construed to release the Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that, nothing in this Section 15.9(b) shall be construed to release any Claim or Cause of Action relating to or arising from the Sale Transaction following entry of the Sale Order by the Bankruptcy Court; provided, further, that nothing shall be construed to release the Released Parties from any Canadian Causes of Action. The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 15.9(b) against each of the Released Parties. For the avoidance of doubt, notwithstanding anything to the contrary herein, the releases set forth in Section 15.9(b) of the Plan shall not apply to any investor that does not qualify as an "Accredited Investor" (within the meaning of rule 501(a) of Regulation D of the Securities Act of 1933).

**Section 15.10 of the Plan: Exculpation**: To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Commencement Date in connection with or arising out of the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement; the negotiation and pursuit of the Disclosure Statement, the restructuring transactions, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Distribution of any securities issued or to be issued pursuant to the Plan, whether or not such Distributions occur following the Effective Date; the occurrence of the Effective Date, negotiations regarding or concerning any of the foregoing; or the administration of the Plan or property to be distributed under the Plan; the wind down of the businesses of any of the Debtors; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute fraud, gross negligence, criminal misconduct or willful misconduct. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Section 15.11 of the Plan: Limitations on Executable Assets with Respect to the D&O Claims**: Any recovery by or on behalf of the Liquidating Trust (and the beneficiaries thereof) on account of any Preserved Cause of Action against any of the Specified Directors and Officers, solely in his or her capacity as a director of the Debtors prior to the Effective Date, or officer of the Debtors prior to the closing of the Sale Transaction, as applicable, including in each case by way of settlement or judgment, shall be limited to the Debtors' available D&O Policies' combined limits, after payment from such D&O Policies of any and all covered costs and expenses incurred by the covered parties in connection with the defense of any D&O Claim (the "D&O Insurance Coverage"). No party, including the Liquidating Trust, shall execute, garnish or otherwise attempt to collect on any settlement of or judgment in the D&O Claims upon any assets of the Specified Directors and Officers on account of any Preserved Cause of Action except to the extent necessary to trigger the D&O Insurance Coverage. In the event D&O Insurance Coverage is denied for any settlement or judgment in the Liquidating Trust's favor, the Specified Directors and Officers shall assign any claims for coverage or other rights of recovery they may have against the D&O Policy insurers to the Liquidating Trust.

## Exhibit C

**Forms of Ballot**

**<u>Exhibit C-1</u>**

**Form of Master Ballot for**
**Class 4 – General Unsecured Claims**
**(Excluding Second Lien Notes and Second Lien PIK Notes)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                        :

In re                          :         **Chapter 11**
                          :

**SEARS HOLDINGS CORPORATION,** *et al.,*  :        **Case No. 18-23538 (RDD)**
                          :

          Debtors.[1]           :         **(Jointly Administered)**
                          :

-------------------------------------------------------------x

## MASTER BALLOT
## FOR ACCEPTING OR REJECTING JOINT CHAPTER 11 PLAN OF
## <u>SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS</u>

### Class 4 – General Unsecured Claims
### (Excluding Second Lien Notes and Second Lien PIK Notes)

          Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), are soliciting votes with respect to the Debtors' *Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Plan**"),[2] from the holders of certain impaired Claims against the Debtors. All capitalized terms used but not defined herein or in the enclosed voting instructions have the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

meanings ascribed to such terms in the Plan.  Please review the Disclosure Statement and the Plan in their entirety before you submit this Master Ballot.

If you have any questions on how to properly complete this Master Ballot, please call the Voting Agent at (844) 384-4460 (domestic toll-free) or (929) 955-2419 (international). **THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, together with any mailing agents thereof, a "**Master Ballot Agent**"); or as the proxy holder of a Master Ballot Agent or the beneficial owners of the Debtors' Securities (the "**Beneficial Owners**"), to transmit to the Voting Agent the votes of such Beneficial Owners in respect of their Class 4 – General Unsecured Claims to accept or reject the Plan.

This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 4 – General Unsecured Claims.

Any Beneficial Owners that fall within the definition of an "ESL Party" as defined in Article 1.61 of the Plan will receive directly from the Voting Agent a customized Class 5 Beneficial Owner Ballot for the purpose of voting their Claims arising under the Debtors Securities.  Therefore, you are directed to exclude any votes from ESL Parties on your Master Ballot.

## INSTRUCTIONS FOR COMPLETING THE BALLOT

**VOTING DEADLINE/VOTING AGENT:**

**To have the votes reflected on this Master Ballot counted, this Master Ballot must be completed, signed, and returned to the Voting Agent so that it is actually received no later than 5:00 p.m. (Prevailing Eastern Time) on July 8, 2019 (the "Voting Deadline"), unless such time is extended by the Debtors.**  Master Ballots must be delivered to the Voting Agent at the appropriate address listed below:

| If by standard or overnight mail or hand delivery: | If by e-mail to: |
|---|---|
| Sears Holdings Corporation Ballot Processing c/o Prime Clerk, LLC One Grand Central Place 60 East 42nd Street, Suite 1440 New York, NY 10165 | searsballots@primeclerk.com with a reference to "Sears" in the subject line |

**Master Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (other than by e-mail to searsballots@primeclerk.com with a reference to "Sears Master Ballot" in the subject line).**

**The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.**

**HOW TO VOTE:**

1.    If you are both the record holder and the Beneficial Owner for any of the Debtors' Securities in Class 4 – General Unsecured Claims and you wish to vote on account those Debtors' Securities, you may complete, sign, and return to the Voting Agent either an individual Beneficial Owner Ballot or this Master Ballot.

2.    **If you are transmitting the votes of any Beneficial Owners of Debtors' Securities other than yourself, you may either:**

a.    "Pre-validate" the individual Beneficial Owner Ballot and then forward the Beneficial Owner Ballot, the Confirmation Hearing Notice, and instructions on how to access the Disclosure Statement, the Plan (with all other exhibits thereto), and the Order approving the Disclosure Statement (without exhibits) (collectively, the "**Solicitation Materials**") to Beneficial Owners for voting within five (5) business days after your receipt of the Solicitation Materials, along with clear instructions stating that Beneficial Owners must return their pre-validated Beneficial Owner Ballots directly to the Voting Agent so that they are actually received by the Voting Agent on or before the Voting Deadline.  The Beneficial Owner should then return the individual pre-validated Beneficial Owner Ballot directly to the Voting Agent in the return envelope provided in the solicitation materials, or to: Sears Holdings Corporation Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165.

You "**pre-validate**" a Beneficial Owner Ballot by indicating thereon the name, address, and DTC participant number of the nominee of the Debtors' Securities, the amount of any such Debtors' Securities held by the Beneficial Owner, the appropriate account numbers through which the Beneficial Owner's holdings are derived, and the applicable CUSIP number, and executing the Beneficial Owner Ballot.  The Beneficial Owner should complete and return the pre-validated Beneficial Owner Ballot directly to the Voting Agent;

OR

b.    Within five (5) business days after the receipt of the Solicitation Materials, forward the Solicitation Materials to each Beneficial Owner along with a Beneficial Owner Ballot along with a return envelope provided by and addressed to you, as the Master Ballot Agent.  The Beneficial Owner should return the individual Beneficial Owner Ballot to you.  In such case, you will tabulate the votes of the respective Beneficial Owners on this Master Ballot, in accordance with these instructions, and then return

the Master Ballot to the Voting Agent.  You should advise the Beneficial Owners to return their individual Beneficial Owner Ballots to you by a date calculated by you to allow you to prepare and return the Master Ballot to the Voting Agent so that the Master Ballot is <u>actually received</u> by the Voting Agent by the Voting Deadline.

c.    In addition, you are authorized to collect votes to accept or to reject the Plan from Beneficial Owners in accordance with their customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Owner Ballot, and collecting votes from Beneficial Owners through online voting, by phone, facsimile, or other electronic means.

3.    With respect to all votes returned to you from your Beneficial Owners, you must properly complete the Master Ballot, as follows:

a.    Check the appropriate box in Item 1 on the Master Ballot;

b.    No Master Ballot should convey votes for more than one (1) CUSIP.  Therefore, check the appropriate box on Annex A to the Master Ballot indicating the specific Debtors' Securities being voted through this Master Ballot.  <u>You may check only one (1) box on Annex A</u>.

c.    Provide the information requested in Item 2 of the Master Ballot, as transmitted to you by the Beneficial Owners.  To identify such Beneficial Owners without disclosing their names, please use the customer account number assigned by you to each such Beneficial Owner, or if no such customer account number exists, please assign a number to each account (making sure to retain a separate list of each Beneficial Owner and the assigned number).  **IMPORTANT:  EACH BENEFICIAL OWNER MUST VOTE <u>ALL</u> OF ITS CLASS 4 – GENERAL UNSECURED CLAIMS AGAINST EACH DEBTOR ON A PER-DEBTOR BASIS AS SET FORTH IN ITEM 2 <u>EITHER</u> TO ACCEPT <u>OR</u> REJECT THE PLAN AND MAY NOT SPLIT SUCH VOTE.  IF ANY BENEFICIAL OWNER HAS ATTEMPTED TO SPLIT SUCH VOTE, PLEASE CONTACT THE VOTING AGENT IMMEDIATELY.**

d.    Any Beneficial Owner Ballot that is signed, dated, and timely received, but does not indicate acceptance or rejection of a particular Plan or indicates both an acceptance and rejection of a particular Plan, by order of the Bankruptcy Court, will not be counted

For administrative ease, the Beneficial Owner Ballots permit the Beneficial Owners to either accept all applicable Plans or reject all applicable Plans by completing the "*Vote on All Applicable Debtors' Plans*" section of the Beneficial Owner Ballot, which you can record in Item 2 of this Master Ballot;

e.    Please note that Item 3 of the Master Ballot requests that you transcribe the information provided by each Beneficial Owner in Item 3 of each completed

Beneficial Owner Ballot relating to other Class 4 – General Unsecured Claims voted;

f.      Review the certification in Item 4 of the Master Ballot;

g.      Sign and date the Master Ballot, and provide the remaining information requested;

h.      If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding;

i.      Contact the Voting Agent if you need any additional information; and

j.      Deliver the completed, executed Master Ballot so as to be <u>received</u> by the Voting Agent before the Voting Deadline.  For each completed, executed Beneficial Owner Ballot returned to you by a Beneficial Owner, you must retain such Beneficial Owner Ballot in your files for one year from the Voting Deadline and produce the same upon the written request of the Debtors, the Reorganized Debtors, or their respective counsel.

4.      The Master Ballot is *not* a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan.  At this time, Beneficial Owners should not surrender certificates representing their Debtors' Securities.  Neither the Debtors nor the Voting Agent will accept delivery of any such certificates surrendered together with the Master Ballot.

5.      No Beneficial Owner Ballot or Master Ballot shall constitute or be deemed a proof of Claim or an assertion of a Claim.

6.      No fees, commissions, or other remuneration will be payable to any Master Ballot Agent for soliciting votes on the Plan.  The Debtors will, however, reimburse you for reasonable, documented, actual costs and expenses incurred by you in forwarding the Beneficial Owner Ballots and other Solicitation Materials to Beneficial Owners in your role as a Master Ballot Agent or in a fiduciary capacity and in tabulating the Beneficial Owner Ballots.

7.      In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.      The following votes will not be counted in determining the acceptance or rejection of the Plan: (i) any vote cast through a Beneficial Owner Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Owner, (ii) any vote case by a Beneficial Owner that does not hold a Claim entitled to vote on the applicable Debtor's Plan, (iii) any vote cast through an unsigned Master Ballot, (v) any vote cast through a Master Ballot or pre-validated Beneficial Owner Ballot that does not contain an original signature (other than a Master Ballot submitted by e-mail); (vi) any Master Ballot or pre-validated

Beneficial Owner Ballot transmitted to the Voting Agent by facsimile, or electronic transmission, or other electronic means (other than Master Ballots which are entitled to vote via electronic mail); and (viii) any Master Ballot or pre-validated Class 4 Beneficial Owner Ballot casting a vote submitted by an "ESL Party"[3].  An otherwise properly completed, executed, and timely returned Master Ballot or pre-validated Beneficial Owner Ballot failing to indicate either acceptance or rejection of a particular Plan or indicating both acceptance and rejection of a particular Plan will not be counted.

**THE DEBTORS INTEND TO REQUEST AT CONFIRMATION THAT IF NO VOTES TO ACCEPT OR REJECT THE PLAN ARE RECEIVED WITH RESPECT TO A PARTICULAR CLASS, SUCH CLASS IS DEEMED TO HAVE VOTED TO ACCEPT THE PLAN.  THE COURT WILL DETERMINE WHETHER SUCH RELIEF IS GRANTED AT THE CONFIRMATION HEARING.**

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE VOTING AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS OR THE VOTING AGENT WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE ENCLOSED DOCUMENTS.**

**IF YOU (I) HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT, (II) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR MASTER BALLOT, (III) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR (IV) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT AT (844) 384-4460 (DOMESTIC TOLL-FREE) OR (929) 955-2419 (INTERNATIONAL), OR BY E-MAILING SEARSBALLOTS@PRIMECLERK.COM WITH A REFERENCE TO "SEARS MASTER BALLOT" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.  THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

---

[3] ESL Parties will be solicited directly by the Voting Agent through customized Class 5 Beneficial Owner Ballots.

## IMPORTANT INFORMATION REGARDING THE DISCHARGE, INJUNCTION, RELEASES, AND EXCULPATIONS IN THE PLAN[4]

### Select Plan Provisions

### Select Defined Terms

"*Exculpated Parties*" means collectively: (a) the Debtors; (b) the Creditors' Committee and each of its members in their official capacity; (c) with respect to each of the foregoing entities in clauses (a) through (b), all Related Parties; provided, that ESL Parties shall not be Exculpated Parties under the Plan.  For the avoidance of doubt, each of the Debtors' post-Commencement Date directors, officers, and employees (other than the ESL Parties) shall be Exculpated Parties under the Plan.

"*Related Parties*" means with respect to any Released Party or Exculpated Party, such Party's successors and assigns, managed accounts or funds, and all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and persons' respective heirs, executors, estates, servants, and nominees, including the Restructuring Committee, Restructuring Subcommittee, and each of its respective members; provided, that, any ESL Party shall not be a Related Party.

"*Released Parties*" means in each case, solely in their capacities as such: (a) the Debtors; (b) the Creditors' Committee and each of its members; (c) the Liquidating Trustee; (d) the Liquidating Trust Board; (e) with respect to each of the foregoing entities in clauses (a) through (d), all Related Parties; provided, that, with respect to each of the foregoing entities in clause (c) and (d), each shall not be released for any post-Effective Date conduct;  provided, further, that the following entities shall not be "Released Parties" under the Plan: (i) the ESL Parties; (ii) any person or Entity against which any action has been commenced on behalf of the Debtors or their Estates, in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing; (iii) any Entity identified as a defendant or a potential defendant of an Estate Cause of Action in the Plan Supplement; and (iv) any subsequent transferee of any of the foregoing with respect to any Assets of the Debtors; provided, further, that recovery on account of any Causes of Action against the Specified Directors and Officers, solely with respect to D&O Claims, shall be subject to the limitations set forth in Section 15.11.

"*Specified Directors and Officers*" means any person who is a director of any of the Debtors on the Effective Date and any person who was an officer of any of the Debtors immediately prior to the closing of the Sale Transaction, each in their capacity as a director or officer of the Debtors, as applicable.

"*D&O Claim*" means any Preserved Cause of Action against the Specified Directors and Officers.

**Section 15.7 of the Plan: Term of Injunctions or Stays**: Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**Section 15.8 of the Plan: Injunction**: (a) Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; (b) Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor

---

[4] The provisions herein are qualified in their entirety by reference to the Plan.

of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Liquidating Trust or against property or interests in property of any of the Debtors or the Liquidating Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (c) By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim extinguished or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in this Section 15.8; (d) The injunctions in this Section 15.8 shall extend to any successors of the Debtors and their respective property and interests in property.

**Section 15.9 of the Plan: Releases**: (a) Debtor Release. As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect after the Effective Date, for good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed released and discharged, by the Debtors, the Liquidating Trust, and the Estates, and any Entity seeking to exercise the rights of or on behalf of the Estates, and any successors to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, from any and all Causes of Action that the Debtors, the Liquidating Trust, or the Debtors' Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' Estates, the conduct of the Debtors' businesses, the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan, and the Definitive Documents, or any related agreements, instruments, or other documents, and the negotiation, formulation, or preparation or implementation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, or other event taking place on or before the Effective Date; provided, that, nothing in this Section 15.9(a) shall be construed to release the Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that nothing shall be construed to release the Released Parties from any Canadian Causes of Action.  For the avoidance of doubt, nothing herein shall release any Claim or Cause of Action that is expressly preserved and not released pursuant to the terms of the Asset Purchase Agreement.  The foregoing releasing parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 15.9(a) against each of the Released Parties.  (b) Third Party Releases. As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date (including the right of the Liquidating Trust to prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Preserved Causes of Action, including the Specified Causes of Action), for good and valuable consideration, on and after the Effective Date, in accordance with section 1141 of the Bankruptcy Code, each of the Released Parties shall be deemed released and discharged, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, except as otherwise provided herein, by each of the following (all such persons or Entities, the "Releasing Parties"): (i) the holders of all Claims who vote to accept the Plan, (ii) the holders of Claims who reject the Plan or abstain from voting on the Plan and do not opt out of these releases on the Ballots, (iii) each of the Released Parties (other than the Debtors), and (iv) with respect to any entity in the foregoing clauses (i) through (iii), (x) such entity's predecessors, successors, and assigns, and (y) all persons entitled to assert Claims through or on behalf of such entities with respect to the matters for which the releasing entities are providing releases;

in each case, from any and all Causes of Action that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' Estates, the Plan, the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the Sale Transaction, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party (other than assumed contracts or leases), the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments or other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that, nothing in this Section 15.9(b) shall be construed to release the Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that, nothing in this Section 15.9(b) shall be construed to release any Claim or Cause of Action relating to or arising from the Sale Transaction following entry of the Sale Order by the Bankruptcy Court; provided, further, that nothing shall be construed to release the Released Parties from any Canadian Causes of Action.  The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 15.9(b) against each of the Released Parties.  For the avoidance of doubt, notwithstanding anything to the contrary herein, the releases set forth in Section 15.9(b) of the Plan shall not apply to any investor that does not qualify as an "Accredited Investor" (within the meaning of rule 501(a) of Regulation D of the Securities Act of 1933).

**Section 15.10 of the Plan: Exculpation**:  To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Commencement Date in connection with or arising out of the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement; the negotiation and pursuit of the Disclosure Statement, the restructuring transactions, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Distribution of any securities issued or to be issued pursuant to the Plan, whether or not such Distributions occur following the Effective Date; the occurrence of the Effective Date, negotiations regarding or concerning any of the foregoing; or the administration of the Plan or property to be distributed under the Plan; the wind down of the businesses of any of the Debtors; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute fraud, gross negligence, criminal misconduct or willful misconduct. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Section 15.11 of the Plan: Limitations on Executable Assets with Respect to the D&O Claims**: Any recovery by or on behalf of the Liquidating Trust (and the beneficiaries thereof) on account of any Preserved Cause of Action against any of the Specified Directors and Officers, solely in his or her capacity as a director of the Debtors prior to the Effective Date, or officer of the Debtors prior to the closing of the Sale Transaction, as applicable, including in each case by way of settlement or judgment, shall be limited to the Debtors' available D&O Policies' combined limits, after payment from such D&O Policies of any and all covered costs and expenses incurred by the covered parties in connection with the defense of any D&O Claim (the "D&O Insurance Coverage"). No party, including the Liquidating Trust, shall execute, garnish or otherwise attempt to collect on any settlement of or judgment in the D&O Claims upon any assets of the Specified Directors and Officers on account of any Preserved Cause of Action except to the extent necessary to trigger the D&O Insurance Coverage.  In the event D&O Insurance Coverage is denied for any settlement or judgment in the Liquidating Trust's favor, the Specified Directors and Officers shall assign any claims for coverage or other rights of recovery they may have against the D&O Policy insurers to the Liquidating Trust.

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1.  Certification of Authority to Vote.**  The undersigned certifies that as of May 9, 2019, (the "**Voting Record Date**"), the undersigned (please check appropriate box):

> Is a broker, bank, or other agent or nominee for the Beneficial Owners of the aggregate principal amount of Debtors' Securities checked on Annex A and in the amount(s) set forth in Item 2 below, and is the record holder of such securities; or

> Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other agent or nominee, or a Beneficial Owner that is the record holder of the aggregate principal amount of Debtors' Securities checked on Annex A and in the amount(s) set forth in Item 2 below; or

> Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other agent or nominee, or a Beneficial Owner, that is the record holder of the aggregate principal amount of Debtors' Securities checked on Annex A and in the amount(s) set forth in Item 2 below;

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Debtors' Securities described in Item 2.

**Item 2.  Vote on the Plan.**  The Master Ballot Agent certifies that the below-listed Beneficial Owners of the Debtors' Securities indicated on **Annex A** hereto and as identified by their respective customer account numbers below, are the Beneficial Owners of the Debtors' Securities as of the Voting Record Date, and have delivered to the undersigned, as Master Ballot Agent, a valid vote on the Plan.

In the applicable chart(s) below, please indicate in the appropriate column the aggregate principal amount of Debtors' Securities voted for each account, or attach such information to this Master Ballot in the form of the following table.  Please note each Beneficial Owner must vote all of its Debtors' Securities to accept or to reject a particular Plan and may not split such vote or vote to both accept and reject the particular Plan.)

To ease the administrative burden of casting votes on individual Plans, Beneficial Owners are provided with the opportunity in Item 2 of the Beneficial Owner Ballot to cast an omnibus vote against all applicable Debtors at one time by checking the box to either accept or reject in the "*Vote on All Applicable Debtors' Plans*".  Please use the chart directly below to convey those votes.

**Omnibus Vote on All Applicable Debtors' Plans**

| Your Customer Account Number for Each Beneficial Owner of Debtors' Securities Voted | Principal Amount of Debtors' Securities Held by Beneficial Owner as of Voting Record Date | Item 2 — Indicate the omnibus vote cast on the Beneficial Owner Ballot by checking the appropriate box below. | | | Item 4 — Opt-Out Release Election — Please check below if the Beneficial Owner checked the box in Item 4. |
|---|---|---|---|---|---|
| | | Accept the Plan | Or | Reject the Plan | |
| 1 | $ | ☐ | | ☐ | ☐ |
| 2 | $ | ☐ | | ☐ | ☐ |
| 3 | $ | ☐ | | ☐ | ☐ |
| 4. | | | | | |
| 5. | | | | | |
| **TOTALS** | $ | | | | |

12

If, however, your Beneficial Owner did not cast a vote on all of the applicable Debtors' Plans at one time by completing the box provided in Item 2 of the Beneficial Owner Ballot to "*Vote on All Debtors' Plans*", please record the votes from Item 2 of the Beneficial Owner Ballot on a Debtor-by-Debtor basis in the chart below.

**Vote on a per-Debtor Basis**

| Your Customer Account Number for Each Beneficial Owner of Debtors' Securities Voted | Principal Amount of Debtors' Securities Held by Beneficial Owner as of Voting Record Date | Debtor | Indicate the vote cast on the Beneficial Owner Ballot in Item 2 by checking the appropriate box below. | | | Opt-Out Release Election<br><br>Please check below if the Beneficial Owner checked the box in Item 4. |
| --- | --- | --- | --- | --- | --- | --- |
| | | | **Accept the Plan** | **Or** | **Reject the Plan** | |
| 1 | $ | | ☐ | | ☐ | ☐ |
| 2 | $ | | ☐ | | ☐ | ☐ |
| 3 | $ | | ☐ | | ☐ | ☐ |
| 4 | $ | | ☐ | | ☐ | ☐ |
| **TOTALS** | $ | | | | | |

To vote on each applicable Plan, the Beneficial Owner must have checked each appropriate box in Item 2 of the Beneficial Owner Ballot to ACCEPT or REJECT the Plan of each Debtor or clearly conveyed such vote through an acceptable and customary means. If the Beneficial Owner did not clearly convey its vote to accept or reject each applicable Debtor's Plan (including by failing to check a box to accept or reject), by order of the Bankruptcy Court its vote will not be counted. If such Beneficial Owner checked the box in Item 4 opting out of the releases in the Plan regardless of whether the Beneficial Owner's vote will be counted, you should still indicate such opt-out election above.

If your client checked the box to accept or reject in the section of Item 2 providing for the "*Vote on All Applicable Debtors' Plans*", such election will supersede any votes made on a per-Debtor basis.

**Item 3.  Certification as to Transcription of Information from Item 3 as to Class 4 – General Unsecured Claims Voted Through Other Beneficial Owner Ballots.**  The undersigned certifies that the undersigned has transcribed in the following table the information, if any, provided by Beneficial Owners in Item 3 of each Beneficial Owner's original Beneficial Owner Ballot or as otherwise conveyed through customary means, identifying any Debtors' Securities for which such Beneficial Owners have submitted other Beneficial Owner Ballots to other than the undersigned (use additional sheets of paper if necessary):

| Your Customer Account Number for Each Beneficial Owner of Debtors' Securities Who Completed Item 3 of the Beneficial Owner Ballots | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL OWNER BALLOTS: | | | | |
|---|---|---|---|---|---|
| | Name of Record Holder or Other Master Ballot Agent (if applicable) | Account Number with other Master Ballot Agent (if applicable) | Principal Amount of Other Debtors' Securities Voted | CUSIP of Other Debtors' Securities Claims Voted | Debtor |
| 1. | | | | | |
| 2. | | | | | |

**Item 4.  Certification.**  By signing this Master Ballot, the undersigned certifies that:

a.  each Beneficial Owner of the Debtors' Securities listed in Item 2 above has been provided with Beneficial Owner Ballot and copies of the Solicitation Materials (or instructions on how to access the Solicitation Materials electronically);

b.  the undersigned is the record holder or Master Ballot Agent of the securities being voted or agent thereof;

c.  the undersigned has been authorized by each such Beneficial Owner to vote on the Plan and to make applicable elections;

d.  the undersigned has properly disclosed: (i) the number of Beneficial Owners voting Debtors' Securities through the undersigned; (ii) the respective amounts of Debtors' Securities owned by each such Beneficial Owner; (iii) each such Beneficial Owner's respective vote concerning each applicable Plan; and (iv) the customer account or other identification number for each such Beneficial Owners;

e.  the undersigned will maintain Beneficial Owners Ballots or other customary communications for conveying votes and elections returned by Beneficial Owners (whether properly completed or defective) for at least one (1) year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered; and

f.  The undersigned further acknowledges that the Debtors' solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Order approving the Disclosure Statement, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Master Ballot Agent: _____

DTC Participant Number: _____

Name of Proxy Holder or Agent (if
applicable): _____

Signature: _____

Name of Signatory (if different than claimant): _____

Title: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**<u>Annex A</u>**

**Please indicate below the CUSIP/ISIN to which this Master Ballot pertains.**

**<u>PLEASE CHECK ONLY ONE BOX</u>. IF YOU CHECK MORE THAN ONE BOX IN THE CHART BELOW, YOUR MASTER BALLOT WILL NOT BE TABULATED.**

| | Class 4 (General Unsecured Claims) | |
|---|---|---|
| | 8% Senior Unsecured Notes due 2019 ("Senior Unsecured Notes") | CUSIP 812350AF3 |
| | 8% Senior Unsecured Convertible PIK Toggle Notes due 2019 ("Unsecured PIK Notes") | CUSIP 812350AG1 |
| | 8% Senior Unsecured Convertible PIK Toggle Notes due 2019 ("Unsecured PIK Notes") | CUSIP U8124CAC8 |
| | 8% Senior Unsecured Convertible PIK Toggle Notes due 2019 ("Unsecured PIK Notes") | CUSIP 812350AH9 |
| | 1995 Unsecured SRAC Notes | CUSIP 812404BK6 |
| | 1995 Unsecured SRAC Notes | CUSIP 812404BE0 |
| | 1995 Unsecured SRAC Notes | CUSIP 812404AZ4 |
| | 1995 Unsecured SRAC Notes | CUSIP 812404AX9 |
| | 1995 Unsecured SRAC Notes | CUSIP 812404408 |
| | 2002 Unsecured SRAC Notes | CUSIP 812404507 |
| | 7% / 12% PIK Unsecured Notes due 2028 ("SRAC Unsecured PIK Notes") | CUSIP 812404BM2 |
| | 7% / 12% PIK Unsecured Notes due 2028 ("SRAC Unsecured PIK Notes") | CUSIP 812404BN0 |

<u>**Exhibit C-2**</u>

**Form of Beneficial Owner Ballot for
Class 4 – General Unsecured Claims
(Excluding Second Lien Notes and Second Lien PIK Notes)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                            :
In re                                       :          Chapter 11
                                            :
SEARS HOLDINGS CORPORATION, *et al.*,       :          Case No. 18-23538 (RDD)
                                            :
        Debtors.[1]                         :          (Jointly Administered)
                                            :
-----------------------------------------------------------------x

BENEFICIAL OWNER BALLOT
FOR ACCEPTINGOR REJECTING JOINT CHAPTER 11 PLAN
OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS

Class 4 – General Unsecured Claims
(Excluding Second Lien Notes and Second Lien PIK Notes)

---

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS
CAREFULLY BEFORE COMPLETING THIS BALLOT.

IF YOU ARE AN "ESL PARTY" AS DEFINED BY ARTICLE 1.61 OF THE
PLAN, YOU WILL SEPARATELY RECEIVE A CUSTOMIZED CLASS 5
BENEFICIAL OWNER BALLOT FOR CASTING YOUR VOTE ARISING FROM
ANY HOLDINGS OF THE DEBTORS SECURITIES, SO YOU ARE DIRECTED
TO DISREGARD THIS CLASS 4 BENEFICIAL OWNER BALLOT.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**TO HAVE YOUR VOTE COUNTED TOWARD CONFIRMATION OF THE PLAN (AS DEFINED BELOW), YOU MUST COMPLETE, SIGN, AND RETURN THIS BALLOT (THE "<u>BENEFICIAL OWNER BALLOT</u>") TO (OR OTHERWISE FOLLOW THE INSTRUCTIONS OF) YOUR BROKER, BANK, DEALER, OR OTHER AGENT OR NOMINEE (EACH, A "<u>MASTER BALLOT AGENT</u>") WITH ENOUGH TIME TO ALLOW FOR YOUR MASTER BALLOT AGENT TO CAST YOUR VOTE ON A MASTER BALLOT (EACH, A "<u>MASTER BALLOT</u>") SO THAT THE MASTER BALLOT IS <u>ACTUALLY RECEIVED</u> BY PRIME CLERK LLC (THE "<u>VOTING AGENT</u>") PRIOR TO 5:00 P.M., PREVAILING EASTERN TIME ON JULY 8, 2019 (THE "<u>VOTING DEADLINE</u>") UNLESS EXTENDED BY THE DEBTORS.  YOUR BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE FOLLOWING:**

---

**IF YOU RECEIVED A RETURN ENVELOPE
<u>ADDRESSED TO YOUR MASTER BALLOT AGENT</u>:**

YOU MUST RETURN THIS BENEFICIAL OWNER BALLOT TO YOUR MASTER BALLOT AGENT IN THE ENVELOPE PROVIDED OR IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR MASTER BALLOT AGENT.

**IF YOU RECEIVED A RETURN
<u>ENVELOPE ADDRESSED TO THE VOTING AGENT</u>:**

YOU MUST RETURN THIS BENEFICIAL OWNER BALLOT
DIRECTLY TO THE VOTING AGENT IN THE ENVELOPE PROVIDED SO THAT
THE BENEFICIAL OWNER BALLOT IS ACTUALLY RECEIVED BY
THE VOTING AGENT PRIOR TO THE VOTING DEADLINE.

---

This Beneficial Owner Ballot is provided to you by Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), to solicit your vote to accept or reject the *Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Plan**").[2]  The Plan is attached as <u>Exhibit A</u> to the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation  and Its Affiliated Debtors*, dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") (ECF No. 4390), which is available online at https://restructuring.primeclerk.com/sears.  All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to such terms in the Plan. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

---

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

If you have any questions on how to properly complete this Beneficial Owner Ballot, please call your Master Ballot Agent.

If you have any questions about the Debtors' solicitation and tabulation, please contact the Voting Agent at (844) 384-4460 (domestic toll-free) or (929) 955-2419 (international). **THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

This Beneficial Owner Ballot is to be used for voting of Claims held in Class 4 by the record or beneficial owner of the Debtors' Securities (the "**Beneficial Owners**") with the CUSIP as indicated by your Master Ballot Agent (or otherwise) on Annex A attached hereto.

In order for your vote to be counted, this Beneficial Owner Ballot must be properly completed, signed, and returned in the envelope provided (or otherwise in accordance with the instructions of your Master Ballot Agent). **The deadline for the receipt by the Voting Agent of pre-validated Beneficial Owner Ballots and Master Ballots cast on behalf of Beneficial Owners is no later than 5:00 p.m. (Prevailing Eastern Time) on July 8, 2019 (the "Voting Deadline"), unless such time is extended by the Debtors.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR MASTER BALLOT AGENT, PLEASE ALLOW SUFFICIENT TIME FOR YOUR MASTER BALLOT AGENT TO PROCESS YOUR VOTE, INCLUDE YOUR VOTE ON ITS MASTER BALLOT, AND RETURN THE MASTER BALLOT TO THE VOTING AGENT BEFORE THE VOTING DEADLINE.**

**The Beneficial Owner Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.**

This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 4 - General Unsecured Claims.

## INSTRUCTIONS FOR COMPLETING THE BALLOT

This Beneficial Owner Ballot is submitted to you to solicit your vote to accept or reject each applicable Debtor's Plan. The terms of the Plan are described in the Disclosure Statement, including all exhibits thereto. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

The following votes will not be counted in determining the acceptance or rejection of the Plan: (i) any vote cast through a Beneficial Owner Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Owner, (ii) any vote cast by a Beneficial Owner that does not hold a Claim entitled to vote on the Plan, (iii) any vote cast through an unsigned Beneficial Owner Ballot, (v) any vote cast through a Beneficial Owner Ballot that does not contain an original signature; (vi) any Beneficial Owner Ballot (other than a validly pre-validated Beneficial Owner Ballot) transmitted directly to the Voting Agent; (vii) any Beneficial Owner Ballot (including a validly pre-validated Beneficial Owner Ballot) transmitted to the Voting Agent by facsimile, or electronic transmission, or other electronic means; and (viii)

any vote cast by an ESL Party using this Class 4 Beneficial Owner Ballot. An otherwise properly completed, executed, and timely returned pre-validated Beneficial Owner Ballot failing to indicate either acceptance or rejection of any particular Plan or indicating both acceptance and rejection of any particular Plan will not be counted.

In order for the vote on your Class 4 – General Unsecured Claim to be counted, the Beneficial Owner Ballot must be properly completed, signed, and returned in the envelope provided (or otherwise in accordance with the instructions of your Master Ballot Agent).

**Beneficial Owner Ballots will not be accepted by telecopy, facsimile, or other electronic means of transmission (except as instructed by your Master Ballot Agent).**

To properly complete the Beneficial Owner Ballot, you must follow the procedures described below:

a.    Make sure that the information contained in Annex A (the CUSIP for the Debtors' Securities) and on Item 1 (the principal amount of Debtors' Securities) as of May 9, 2019 is correct;

b.    If you have a Class 4 – General Unsecured Claim on account of holding Debtors' Securities, cast one vote to accept or reject the Plan as it pertains to each Debtor separately on a per-Debtor basis by checking the appropriate boxes in Item 2;

c.    For administrative ease, this Beneficial Owner Ballot permits you to cast an omnibus vote against all applicable Debtors at one time by checking the box to either accept or reject in the "*Vote on All Applicable Debtors' Plans*" in Item 2;

d.    Provide the information required by Item 3, if applicable to you;

e.    If you vote to reject one or more Plans or abstain from voting on one or more Plans, you may elect to opt-out of the releases contained in Section 15.9 of the Plan as it applies to those Plans. To opt-out of the releases for those Plans for which you voted to reject or abstained from voting, you must check the box in Item 3. For the avoidance of doubt, by checking the box in Item 3, you are electing to opt-out of the releases as it applies to all Plans for which you voted to reject or for which you abstained from voting. Election to withhold consent is at your option. The failure to affirmatively elect to opt-out by checking the box in Item 3, will be deemed your consent to the releases contained in Section 15.9 of the Plan to the fullest extent permitted by applicable law. Holders of Claims who accept a Plan may not opt-out of the releases contained in Section 15.9 of the Plan as it applies to any Plan they accept;

f.    If you vote to accept a Plan by checking the appropriate "accept" box in Item 2, but you also check the box in Item 3, your election to opt-out with respect to the releases contained in Section 15.9 of the Plan will not be counted in the context of the Plan you voted to accept; rather, your vote in favor of that Plan shall be deemed a consent to the releases as it applies to that Plan to the fullest extent permitted by applicable law;

g.      If you are completing this Beneficial Owner Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 5.  By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

h.      If you hold Claims in other Classes you may receive more than one Ballot. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims against a particular Debtor only if you complete, sign, and return the Ballot labeled for such Class of Claims in accordance with the instructions on that Ballot. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you receive;

i.      If you are an "ESL Party" as defined by Article 1.61 of the Plan, you will receive separately a customized Class 5 Beneficial Owner Ballot for casting your vote based on the Debtors Securities and you shall disregard this Class 4 Beneficial Owner Ballot;

j.      You must vote all your Claims against a particular Debtor within a single Class under a Plan either to accept or reject the Plan;

k.      If more than one timely, properly completed Beneficial Owner Ballot is received, only the last, properly completed Beneficial Owner Ballot received will be counted, unless the holder of the Claim receives Bankruptcy Court approval otherwise;

l.      If you believe that you have received the wrong Ballot, please contact the Voting Agent immediately;

m.      Provide your name, mailing address, and any remaining information requested;

n.      Sign and date your Beneficial Owner Ballot; and

o.      Return your Beneficial Owner Ballot with an original signature using the enclosed pre-addressed return envelope (or otherwise in accordance with the instructions of your Master Ballot Agent).

No Beneficial Owner Ballot shall constitute or be deemed a proof of Claim or an assertion of a Claim.

In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Beneficial Owner Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

THE DEBTORS INTEND TO REQUEST AT CONFIRMATION THAT IF NO VOTES TO ACCEPT OR REJECT THE PLAN ARE RECEIVED WITH RESPECT TO A PARTICULAR CLASS, SUCH CLASS IS DEEMED TO HAVE VOTED TO ACCEPT THE PLAN.  THE COURT WILL DETERMINE WHETHER SUCH RELIEF IS GRANTED AT THE CONFIRMATION HEARING.

IF YOU (I) HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL OWNER BALLOT, (II) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BENEFICIAL OWNER BALLOT, (III) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR (IV) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT YOUR MASTER BALLOT AGENT.

FOR ANY FURTHER QUESTIONS ON THE SOLICIATION AND TABULATION OF THE PLAN, PLEASE CONTACT THE VOTING AGENT AT (844) 384-4460 (DOMESTIC TOLL-FREE) OR (929) 955-2419 (INTERNATIONAL), OR BY E-MAILING <u>SEARSBALLOTS@PRIMECLERK.COM</u> WITH A REFERENCE TO "SEARS" IN THE SUBJECT LINE.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.  THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

# IMPORTANT INFORMATION REGARDING THE DISCHARGE, INJUNCTION, RELEASES, AND EXCULPATIONS IN THE PLAN[3]

## Select Plan Provisions

### Select Defined Terms

"*Exculpated Parties*" means collectively: (a) the Debtors; (b) the Creditors' Committee and each of its members in their official capacity; (c) with respect to each of the foregoing entities in clauses (a) through (b), all Related Parties; provided, that ESL Parties shall not be Exculpated Parties under the Plan.  For the avoidance of doubt, each of the Debtors' post-Commencement Date directors, officers, and employees (other than the ESL Parties) shall be Exculpated Parties under the Plan.

"*Related Parties*" means with respect to any Released Party or Exculpated Party, such Party's successors and assigns, managed accounts or funds, and all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and persons' respective heirs, executors, estates, servants, and nominees, including the Restructuring Committee, Restructuring Subcommittee, and each of its respective members; provided, that, any ESL Party shall not be a Related Party.

"*Released Parties*" means in each case, solely in their capacities as such: (a) the Debtors; (b) the Creditors' Committee and each of its members; (c) the Liquidating Trustee; (d) the Liquidating Trust Board; (e) with respect to each of the foregoing entities in clauses (a) through (d), all Related Parties; provided, that, with respect to each of the foregoing entities in clause (c) and (d), each shall not be released for any post-Effective Date conduct;  provided, further, that the following entities shall not be "Released Parties" under the Plan: (i) the ESL Parties; (ii) any person or Entity against which any action has been commenced on behalf of the Debtors or their Estates, in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing; (iii) any Entity identified as a defendant or a potential defendant of an Estate Cause of Action in the Plan Supplement; and (iv) any subsequent transferee of any of the foregoing with respect to any Assets of the Debtors; provided, further, that recovery on account of any Causes of Action against the Specified Directors and Officers, solely with respect to D&O Claims, shall be subject to the limitations set forth in Section 15.11.

"*Specified Directors and Officers*" means any person who is a director of any of the Debtors on the Effective Date and any person who was an officer of any of the Debtors immediately prior to the closing of the Sale Transaction, each in their capacity as a director or officer of the Debtors, as applicable.

"*D&O Claim*" means any Preserved Cause of Action against the Specified Directors and Officers.

**Section 15.7 of the Plan: Term of Injunctions or Stays**: Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**Section 15.8 of the Plan: Injunction**: (a) Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; (b) Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan)

---

[3] The provisions herein are qualified in their entirety by reference to the Plan.

and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Liquidating Trust or against property or interests in property of any of the Debtors or the Liquidating Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (c) By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim extinguished or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in this Section 15.8; (d) The injunctions in this Section 15.8 shall extend to any successors of the Debtors and their respective property and interests in property.

**Section 15.9 of the Plan: Releases**: (a) Debtor Release. As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect after the Effective Date, for good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed released and discharged, by the Debtors, the Liquidating Trust, and the Estates, and any Entity seeking to exercise the rights of or on behalf of the Estates, and any successors to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, from any and all Causes of Action that the Debtors, the Liquidating Trust, or the Debtors' Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' Estates, the conduct of the Debtors' businesses, the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan, and the Definitive Documents, or any related agreements, instruments, or other documents, and the negotiation, formulation, or preparation or implementation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, or other event taking place on or before the Effective Date; provided, that, nothing in this Section 15.9(a) shall be construed to release the Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that nothing shall be construed to release the Released Parties from any Canadian Causes of Action. For the avoidance of doubt, nothing herein shall release any Claim or Cause of Action that is expressly preserved and not released pursuant to the terms of the Asset Purchase Agreement. The foregoing releasing parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 15.9(a) against each of the Released Parties. (b) Third Party Releases. As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date (including the right of the Liquidating Trust to prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Preserved Causes of Action, including the Specified Causes of Action), for good and valuable consideration, on and after the Effective Date, in accordance with section 1141 of the Bankruptcy Code, each of the Released Parties shall be deemed released and discharged, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, except as otherwise provided herein, by each of the following (all such persons or Entities, the "Releasing Parties"): (i) the holders of all Claims who vote to accept the Plan, (ii) the holders of Claims who reject the Plan or abstain from voting on the Plan and do not opt out of these releases on the Ballots, (iii) each of the Released Parties (other than the Debtors), and (iv) with respect to any entity in the foregoing clauses (i) through (iii), (x) such entity's predecessors, successors, and assigns, and (y) all persons entitled to assert Claims through or on behalf of such entities with respect to the matters for which the releasing entities are providing releases; in each case, from any and all Causes of Action that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part,

the Debtors, the Debtors' Estates, the Plan, the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the Sale Transaction, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party (other than assumed contracts or leases), the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments or other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that, nothing in this Section 15.9(b) shall be construed to release the Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that, nothing in this Section 15.9(b) shall be construed to release any Claim or Cause of Action relating to or arising from the Sale Transaction following entry of the Sale Order by the Bankruptcy Court; provided, further, that nothing shall be construed to release the Released Parties from any Canadian Causes of Action.  The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 15.9(b) against each of the Released Parties.  For the avoidance of doubt, notwithstanding anything to the contrary herein, the releases set forth in Section 15.9(b) of the Plan shall not apply to any investor that does not qualify as an "Accredited Investor" (within the meaning of rule 501(a) of Regulation D of the Securities Act of 1933).

**Section 15.10 of the Plan: Exculpation**:  To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Commencement Date in connection with or arising out of the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement; the negotiation and pursuit of the Disclosure Statement, the restructuring transactions, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Distribution of any securities issued or to be issued pursuant to the Plan, whether or not such Distributions occur following the Effective Date; the occurrence of the Effective Date, negotiations regarding or concerning any of the foregoing; or the administration of the Plan or property to be distributed under the Plan; the wind down of the businesses of any of the Debtors; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute fraud, gross negligence, criminal misconduct or willful misconduct. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Section 15.11 of the Plan: Limitations on Executable Assets with Respect to the D&O Claims**: Any recovery by or on behalf of the Liquidating Trust (and the beneficiaries thereof) on account of any Preserved Cause of Action against any of the Specified Directors and Officers, solely in his or her capacity as a director of the Debtors prior to the Effective Date, or officer of the Debtors prior to the closing of the Sale Transaction, as applicable, including in each case by way of settlement or judgment, shall be limited to the Debtors' available D&O Policies' combined limits, after payment from such D&O Policies of any and all covered costs and expenses incurred by the covered parties in connection with the defense of any D&O Claim (the "D&O Insurance Coverage"). No party, including the Liquidating Trust, shall execute, garnish or otherwise attempt to collect on any settlement of or judgment in the D&O Claims upon any assets of the Specified Directors and Officers on account of any Preserved Cause of Action except to the extent necessary to trigger the D&O Insurance Coverage.  In the event D&O Insurance Coverage is denied for any settlement or judgment in the Liquidating Trust's favor, the Specified Directors and Officers shall assign any claims for coverage or other rights of recovery they may have against the D&O Policy insurers to the Liquidating Trust.

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1.  Amount of Claim.**  The undersigned hereby certifies that as of May 9, 2019, the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner) or the Master Ballot Agent of a Beneficial Owner of Debtors' Securities indicated on Annex A in the following principal amount (insert amount in box below) against each applicable Debtor.  If your Debtors' Securities are held by a Master Ballot Agent on your behalf and you do not know the principal amount of Claim held, please contact your Master Ballot Agent immediately.

| |
|---|
| **Amount**:[1]          $_____ |

**Item 2.  Vote on the Plan.**  The Beneficial Owner of the Debtors' Securities identified in Annex A and in the amount set forth above in Item 1 hereby votes on each applicable Debtors' Plan as set forth below.

For administrative purposes, if you wish to have the same vote applied to each of the applicable Debtors' Plans, please check the box in the omnibus "*Vote on All Applicable Debtors' Plans*" below to either accept or reject each of the applicable Debtors' Plans.  If you check one of the boxes in the "Vote on All the Debtors' Plan" option, that vote will supersede any votes cast on a per-Debtor basis.

| | |
|---|---|
| Vote on All Applicable Debtors' Plans (<u>i.e.</u>, the omnibus vote) | Check one box:<br><br>    ☐  Accept the Plan<br><br>    ☐  Reject the Plan<br><br>(Please note that if you check one of the above boxes, your vote will be applied to all of the Debtors' Plans and will supersede any votes may cast on a per-Debtor basis below.  If you intend to vote separately for each applicable Debtor's Plan, do NOT check either box above.) |

---

[1] The amount indicated here is only for voting purposes, subject to the Voting Agent's tabulation rules.

*Please continue below if you did not check one of the boxes on the "Vote on All Applicable Debtors' Plans" above and would like to vote each of the Debtors' Plans separately.*

|  | Check one box for each Debtor: | |
|---|---|---|
| Sears Holdings Corporation (0798) | ☐ Accept the Plan | ☐ Reject the Plan |
| Kmart Holding Corporation (3116) | ☐ Accept the Plan | ☐ Reject the Plan |
| Kmart Operations LLC (6546) | ☐ Accept the Plan | ☐ Reject the Plan |
| Sears Operations LLC (4331) | ☐ Accept the Plan | ☐ Reject the Plan |
| Sears, Roebuck and Co. (0680) | ☐ Accept the Plan | ☐ Reject the Plan |
| ServiceLive Inc. (6774) | ☐ Accept the Plan | ☐ Reject the Plan |
| SHC Licensed Business LLC (3718) | ☐ Accept the Plan | ☐ Reject the Plan |
| A&E Factory Service, LLC (6695) | ☐ Accept the Plan | ☐ Reject the Plan |
| A&E Home Delivery, LLC (0205) | ☐ Accept the Plan | ☐ Reject the Plan |
| A&E Lawn & Garden, LLC (5028) | ☐ Accept the Plan | ☐ Reject the Plan |
| A&E Signature Service, LLC (0204) | ☐ Accept the Plan | ☐ Reject the Plan |
| FBA Holdings Inc. (6537) | ☐ Accept the Plan | ☐ Reject the Plan |
| Innovel Solutions, Inc. (7180) | ☐ Accept the Plan | ☐ Reject the Plan |
| Kmart Corporation (9500) | ☐ Accept the Plan | ☐ Reject the Plan |
| MaxServ, Inc. (7626) | ☐ Accept the Plan | ☐ Reject the Plan |
| Private Brands, Ltd. (4022) | ☐ Accept the Plan | ☐ Reject the Plan |
| Sears Development Co. (6028) | ☐ Accept the Plan | ☐ Reject the Plan |
| Sears Holdings Management Corporation (2148) | ☐ Accept the Plan | ☐ Reject the Plan |
| Sears Home & Business Franchises, Inc. (6742) | ☐ Accept the Plan | ☐ Reject the Plan |
| Sears Home Improvement Products, Inc. (8591) | ☐ Accept the Plan | ☐ Reject the Plan |

|  | Check one box for each Debtor: | |
|---|---|---|
| Sears Insurance Services, L.L.C. (7182) | ☐ Accept the Plan | ☐ Reject the Plan |
| Sears Procurement Services, Inc. (2859) | ☐ Accept the Plan | ☐ Reject the Plan |
| Sears Protection Company (1250) | ☐ Accept the Plan | ☐ Reject the Plan |
| Sears Protection Company (PR) Inc. (4861) | ☐ Accept the Plan | ☐ Reject the Plan |
| Sears Roebuck Acceptance Corp. (0535) | ☐ Accept the Plan | ☐ Reject the Plan |
| SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626) | ☐ Accept the Plan | ☐ Reject the Plan |
| SYW Relay LLC (1870) | ☐ Accept the Plan | ☐ Reject the Plan |
| Wally Labs LLC (None) | ☐ Accept the Plan | ☐ Reject the Plan |
| SHC Promotions LLC (9626) | ☐ Accept the Plan | ☐ Reject the Plan |
| Big Beaver of Florida Development, LLC (None) | ☐ Accept the Plan | ☐ Reject the Plan |
| California Builder Appliances, Inc. (6327) | ☐ Accept the Plan | ☐ Reject the Plan |
| Florida Builder Appliances, Inc. (9133) | ☐ Accept the Plan | ☐ Reject the Plan |
| KBL Holding Inc. (1295) | ☐ Accept the Plan | ☐ Reject the Plan |
| KLC, Inc. (0839) | ☐ Accept the Plan | ☐ Reject the Plan |
| Kmart of Michigan, Inc. (1696) | ☐ Accept the Plan | ☐ Reject the Plan |
| Kmart of Washington LLC (8898)[2] | ☐ Accept the Plan | ☐ Reject the Plan |
| Kmart Stores of Illinois LLC (8897)[3] | ☐ Accept the Plan | ☐ Reject the Plan |
| Kmart Stores of Texas LLC (8915) | ☐ Accept the Plan | ☐ Reject the Plan |

---

[2] Certain unsecured claims arising under the SRAC Unsecured PIK Notes against Kmart of Washington LLC are classified in Class 4B of the Plan as applicable to Kmart of Washington LLC and will be tabulated accordingly.

[3] Certain unsecured claims arising under the SRAC Unsecured PIK Notes against Kmart Stores of Illinois, LLC are classified in Class 4B of the Plan as applicable to Kmart Stores of Illinois, LLC and will be tabulated accordingly.

|  | Check one box for each Debtor: | |
|---|---|---|
| MyGofer LLC (5531) | □  Accept the Plan | □  Reject the Plan |
| Sears Brands Business Unit Corporation (4658) | □  Accept the Plan | □  Reject the Plan |
| Sears Holdings Publishing Company, LLC. (5554) | □  Accept the Plan | □  Reject the Plan |
| Sears Protection Company (Florida), L.L.C. (4239) | □  Accept the Plan | □  Reject the Plan |
| SHC Desert Springs, LLC (None) | □  Accept the Plan | □  Reject the Plan |
| SOE, Inc. (9616) | □  Accept the Plan | □  Reject the Plan |
| StarWest, LLC (5379) | □  Accept the Plan | □  Reject the Plan |
| STI Merchandising, Inc. (0188) | □  Accept the Plan | □  Reject the Plan |
| Troy Coolidge No. 13, LLC (None) | □  Accept the Plan | □  Reject the Plan |
| BlueLight.com, Inc. (7034) | □  Accept the Plan | □  Reject the Plan |
| Sears Brands, L.L.C. (4664) | □  Accept the Plan | □  Reject the Plan |
| Sears Buying Services, Inc. (6533) | □  Accept the Plan | □  Reject the Plan |
| Kmart.com LLC (9022) | □  Accept the Plan | □  Reject the Plan |
| Sears Brands Management Corporation (5365) | □  Accept the Plan | □  Reject the Plan |
| SRe Holding Corporation (4816) | □  Accept the Plan | □  Reject the Plan |

**Item 3.  Certification as to Debtors' Securities held in Additional Accounts.**  By completing and returning this Beneficial Owner Ballot, the Beneficial Owner certifies that either (i) it has not submitted any other Beneficial Owner Ballots for other Debtors' Securities held in other accounts or other record names or (ii) it has provided the information specified in the following table for all other Debtors' Securities for which it has submitted additional Beneficial Owner Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED OTHER CLASS 4 CLAIMS THROUGH BENEFICIAL OWNER BALLOTS OTHER THAN THIS BENEFICIAL OWNER BALLOT.

| Name of Record Holder or Other Master Ballot Agent (if applicable) | Account Number with Other Master Ballot Agent (if applicable) | Principal Amount of Debtors' Securities  Voted | CUSIP of Debtors' Securities Voted | Name of Debtor |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**

**IF YOU VOTE TO ACCEPT A PLAN, YOU WILL BE DEEMED TO GRANT THE RELEASES FOUND IN SECTION 15.9 OF THAT PLAN REGARDLESS OF WHETHER YOU CHECK THE BOX IN ITEM 4 BELOW.  IF YOU VOTE TO REJECT ONE OR MORE PLANS OR ABSTAIN FROM VOTING ON ONE OR MORE PLANS AND SUBMIT A BALLOT WITHOUT CHECKING THE BOX IN ITEM 4 BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN SECTION 15.9 OF THAT PLAN.  IF YOU FAIL TO SUBMIT A BALLOT, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES FOUND IN SECTION 15.9 OF THAT PLAN.**

**IF YOU VOTE TO REJECT ONE OR MORE PLANS OR ABSTAIN FROM VOTING ON ONE OR MORE PLANS, YOU MUST OPT OUT OF THE RELEASES PROVIDED IN SECTION 15.9 OF THE PLAN BY CHECKING THE BOX IN ITEM 4 BELOW, IN ORDER TO NOT BE BOUND BY SUCH RELEASES.**

**Item 4.  Optional Release Election.  COMPLETE THIS ITEM 4 ONLY IF YOU VOTED TO REJECT OR ABSTAINED FROM VOTING ON ONE OR MORE PLANS.**

Check this box if you elect <u>not</u> to grant the releases contained in Section 15.9 of the Plan.  Election to withhold consent is your option.

> The undersigned elects <u>not</u> to grant the releases contained in Section 15.9 of the Plan.

**Item 5.  Acknowledgements and Certification.**  By returning this Beneficial Owner Ballot, the Beneficial Owner of the Debtors' Securities identified on Annex A hereto and in the amount set forth in Item 1 above acknowledges that it has been provided with a copy of the Confirmation Hearing Notice and instructions on how to access copies of the Disclosure Statement (including the Plan and all other exhibits thereto) and the Order approving the Disclosure Statement (without exhibits).  The undersigned certifies that (i) it is the holder of the Debtors' Securities identified on Annex A hereto and in the amount set forth in Item 1 above, and/or (ii) it has full power and authority to vote to accept or reject the Plan.  The undersigned further acknowledges that the Debtors' solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Order approving the Disclosure Statement, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claimant: _____

Signature: _____

Name of Signatory (if different than claimant): _____

If by Authorized Agent, Title of Agent: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

### ANNEX A

**YOUR MASTER BALLOT AGENT MAY HAVE CHECKED A BOX BELOW TO INDICATE THE CUSIP TO WHICH THIS BENEFICIAL OWNER BALLOT PERTAINS, OR OTHERWISE PROVIDED THAT INFORMATION TO YOU ON A LABEL OR SCHEDULE ATTACHED TO THIS BENEFICIAL OWNER BALLOT.**

**IF YOUR MASTER BALLOT AGENT HAS NOT CHECKED ONE BOX BELOW, PLEASE CHECK THE APPROPRIATE BOX.  IF MORE THAN ONE BOX IN THE CHART BELOW IS CHECKED, YOUR BENEFICIAL OWNER BALLOT WILL NOT BE TABULATED.**

| Class 4 (General Unsecured Claims) | |
|---|---|
| 8% Senior Unsecured Notes due 2019 ("Senior Unsecured Notes") | CUSIP 812350AF3 |
| 8% Senior Unsecured Convertible PIK Toggle Notes due 2019 ("Unsecured PIK Notes") | CUSIP 812350AG1 |
| 8% Senior Unsecured Convertible PIK Toggle Notes due 2019 ("Unsecured PIK Notes") | CUSIP U8124CAC8 |
| 8% Senior Unsecured Convertible PIK Toggle Notes due 2019 ("Unsecured PIK Notes") | CUSIP 812350AH9 |
| 1995 Unsecured SRAC Notes | CUSIP 812404BK6 |
| 1995 Unsecured SRAC Notes | CUSIP 812404BE0 |
| 1995 Unsecured SRAC Notes | CUSIP 812404AZ4 |
| 1995 Unsecured SRAC Notes | CUSIP 812404AX9 |
| 1995 Unsecured SRAC Notes | CUSIP 812404408 |
| 2002 Unsecured SRAC Notes | CUSIP 812404507 |
| 7% / 12% PIK Unsecured Notes due 2028 ("SRAC Unsecured PIK Notes") | CUSIP 812404BM2 |
| 7% / 12% PIK Unsecured Notes due 2028 ("SRAC Unsecured PIK Notes") | CUSIP 812404BN0 |

## Exhibit C-3

**Form of General Ballot for**

**Class 4 – General Unsecured Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                    :

In re                   :          **Chapter 11**

                    :

**SEARS HOLDINGS CORPORATION,** *et al.*,  :          **Case No. 18-23538 (RDD)**

                    :

       **Debtors.**[1]        :          **(Jointly Administered)**

                    :

---------------------------------------------------------------x

**GENERAL BALLOT**
**FOR ACCEPTING OR REJECTING JOINT CHAPTER 11 PLAN OF**
**SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS**

**Class 4 – General Unsecured Claims**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS**
> **CAREFULLY _BEFORE_ COMPLETING THIS BALLOT.**

**TO HAVE YOUR VOTE COUNTED TOWARD CONFIRMATION OF THE PLAN (AS DEFINED BELOW), YOU MUST COMPLETE, SIGN, AND RETURN THIS BALLOT (THE "BALLOT") SO THAT THIS BALLOT IS _ACTUALLY RECEIVED_ BY PRIME CLERK, LLC (THE "VOTING AGENT") PRIOR TO 5:00 P.M., PREVAILING EASTERN TIME ON JULY 8, 2019 (THE "VOTING DEADLINE") UNLESS EXTENDED BY THE DEBTORS.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

This Ballot is provided to you by Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), to solicit your vote to accept or reject the *Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Plan**").[2] The Plan is attached as <u>Exhibit A</u> to the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") (ECF No. 4390), which is available online at https://restructuring.primeclerk.com/sears. All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to such terms in the Plan. The Disclosure Statement provides information to assist you in deciding how to vote on the Plan. You should review the Disclosure Statement and the Plan in their entirety before you vote. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

If you have any questions on how to properly complete this Ballot, please call the Voting Agent at (844) 384-4460 (domestic toll-free) or (929) 955-2419 (international). **THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**This Ballot is to be used for voting by holders of certain Claims in Class 4 – General Unsecured Claims.**

This Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, the Class 4 – General Unsecured Claims.

---

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**INSTRUCTIONS FOR COMPLETING THE BALLOT**

This Ballot is submitted to you to solicit your vote to accept or reject the Plan.  The terms of the Plan are described in the Disclosure Statement, including all exhibits thereto. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**To have your vote counted, you must complete, sign, and return this Ballot so that it its received by the Voting Agent no later than the Voting Deadline, unless such time is extended by the Debtors.  Ballots must be delivered to the Voting Agent (i) at an appropriate address listed below or (ii) via the Voting Agent's E-Ballot platform by visiting https://restructuring.primeclerk.com/sears, clicking on the "E-Ballot" link and following the instructions set forth on the website.  Holders are encouraged to submit their Ballots via the E-Ballot platform.  If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your hard copy Ballot as well.  Please choose only one method of return for your Ballot.**

---

**If by standard or overnight mail or hand delivery:**

Sears Holdings Corporation Ballot Processing
c/o Prime Clerk, LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165

**If by electronic submission:**

Visit  https://restructuring.primeclerk.com/sears. Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot.  If you choose to submit your Ballot via Prime Clerk's E-Ballot system, you should not also return a hard copy of your Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID#:**
_____

**"E-Balloting" is the sole manner in which Ballots will be accepted via electronic transmission.**

---

**Ballots will not be accepted by e-mail, telecopy, facsimile, or other electronic means of transmission (except via the Voting Agent's E-Ballot platform).**

**The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the voting creditor, (ii) any Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any Ballot that does not contain an original signature (for the avoidance of doubt, Ballots submitted through E-Ballot shall be deemed as containing an original signature), (iv) any Ballot cast for a Claim identified in the Debtors' schedules of liabilities as unliquidated, contingent, or disputed for which no proof of Claim was timely filed; (v) any vote cast by an ESL Party using a Class 4 General Unsecured Claims Ballot, or (vi) any Ballot transmitted to the Voting Agent by e-mail, facsimile, or electronic transmission, or other electronic means (other than by E-Ballot). An otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan or indicating both acceptance and rejection of the Plan will not be counted.**

To properly complete the Ballot, you must follow the procedures described below:

p.      Make sure that the information contained in Item 1 is correct, including the Debtor against which your Claim is asserted and the amount of your Claim;

q.      If you have a Claim in Class 4 – General Unsecured Claims, cast one vote to accept or reject the Plan by checking the appropriate box in Item 2;

r.      If you vote to reject the Plan or abstain from voting on the Plan and elect to opt-out of the releases contained in Section 15.9 of the Plan, you must check the box in Item 3. Election to withhold consent is at your option. The failure to do so, whether or not you vote on the Plan, will be deemed your consent to the releases contained in Section 15.9 of the Plan to the fullest extent permitted by applicable law. Holders of Claims who accept the Plan may not opt-out of the releases contained in Section 15.9 of the Plan.

s.      If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election to opt-out with respect to the releases contained in Section 15.9 of the Plan will not be counted, as your vote in favor of the Plan shall be deemed a consent to the releases set forth in Section 15.9 of the Plan to the fullest extent permitted by applicable law.

t.      If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing on the appropriate line in Item 4. By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

u.      If you hold other Class 4 – General Unsecured Claims against other Debtors, or Claims in other Classes you may receive more than one Ballot. Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims against a particular Debtor only if you complete, sign, and return the Ballot

labeled for such Class of Claims in accordance with the instructions on that Ballot. Each Ballot votes only your Claims indicated on that Ballot. Please complete and return each Ballot you receive;

v.      You must vote all your Claims against a particular Debtor within a single Class under the Plan either to accept or reject the Plan;

w.      If more than one timely, properly completed Ballot is received, only the last properly completed Ballot received by the Voting Agent will be counted, unless the holder of the Claim receives Bankruptcy Court approval otherwise;

x.      If you believe that you have received the wrong Ballot, please contact the Voting Agent immediately;

y.      Provide your name, mailing address, and any remaining information requested;

z.      Sign and date your Ballot; and

aa.     Return your Ballot with an original signature to the Voting Agent. For the avoidance of doubt, a Ballot submitted by the E-Ballot platform shall be deemed to bear an original signature.

No Ballot shall constitute or be deemed a proof of Claim or an assertion of Claim.

In the event that (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

**THE DEBTORS INTEND TO REQUEST AT CONFIRMATION THAT IF NO VOTES TO ACCEPT OR REJECT THE PLAN ARE RECEIVED WITH RESPECT TO A PARTICULAR CLASS, SUCH CLASS IS DEEMED TO HAVE VOTED TO ACCEPT THE PLAN. THE COURT WILL DETERMINE WHETHER SUCH RELIEF IS GRANTED AT THE CONFIRMATION HEARING.**

**IF YOU (I) HAVE ANY QUESTIONS REGARDING THIS BALLOT, (II) DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, (III) DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR (IV) NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE VOTING AGENT AT (844) 384-4460 (DOMESTIC TOLL-FREE) OR (929) 955-2419 (INTERNATIONAL), OR BY E-MAILING SEARSINFO@PRIMECLERK.COM WITH A REFERENCE TO "SEARS" IN THE SUBJECT LINE. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT. THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

## IMPORTANT INFORMATION REGARDING THE DISCHARGE, INJUNCTION, RELEASES, AND EXCULPATIONS IN THE PLAN[3]

## Select Plan Provisions

### Select Defined Terms

"*Exculpated Parties*" means collectively: (a) the Debtors; (b) the Creditors' Committee and each of its members in their official capacity; (c) with respect to each of the foregoing entities in clauses (a) through (b), all Related Parties; provided, that ESL Parties shall not be Exculpated Parties under the Plan.  For the avoidance of doubt, each of the Debtors' post-Commencement Date directors, officers, and employees (other than the ESL Parties) shall be Exculpated Parties under the Plan.

"*Related Parties*" means with respect to any Released Party or Exculpated Party, such Party's successors and assigns, managed accounts or funds, and all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and persons' respective heirs, executors, estates, servants, and nominees, including the Restructuring Committee, Restructuring Subcommittee, and each of its respective members; provided, that, any ESL Party shall not be a Related Party.

"*Released Parties*" means in each case, solely in their capacities as such: (a) the Debtors; (b) the Creditors' Committee and each of its members; (c) the Liquidating Trustee; (d) the Liquidating Trust Board; (e) with respect to each of the foregoing entities in clauses (a) through (d), all Related Parties; provided, that, with respect to each of the foregoing entities in clause (c) and (d), each shall not be released for any post-Effective Date conduct;  provided, further, that the following entities shall not be "Released Parties" under the Plan: (i) the ESL Parties; (ii) any person or Entity against which any action has been commenced on behalf of the Debtors or their Estates, in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing; (iii) any Entity identified as a defendant or a potential defendant of an Estate Cause of Action in the Plan Supplement; and (iv) any subsequent transferee of any of the foregoing with respect to any Assets of the Debtors; provided, further, that recovery on account of any Causes of Action against the Specified Directors and Officers, solely with respect to D&O Claims, shall be subject to the limitations set forth in Section 15.11.

"*Specified Directors and Officers*" means any person who is a director of any of the Debtors on the Effective Date and any person who was an officer of any of the Debtors immediately prior to the closing of the Sale Transaction, each in their capacity as a director or officer of the Debtors, as applicable.

"*D&O Claim*" means any Preserved Cause of Action against the Specified Directors and Officers.

**Section 15.7 of the Plan: Term of Injunctions or Stays**: Unless otherwise provided herein, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**Section 15.8 of the Plan: Injunction**: (a) Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; (b) Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan)

---

[3] The provisions herein are qualified in their entirety by reference to the Plan.

and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Liquidating Trust or against property or interests in property of any of the Debtors or the Liquidating Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (c) By accepting Distributions pursuant to the Plan, each holder of an Allowed Claim extinguished or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in this Section 15.8; (d) The injunctions in this Section 15.8 shall extend to any successors of the Debtors and their respective property and interests in property.

**Section 15.9 of the Plan: Releases**: (a) Debtor Release. As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remain in effect after the Effective Date, for good and valuable consideration, on and after the Effective Date, the Released Parties shall be deemed released and discharged, by the Debtors, the Liquidating Trust, and the Estates, and any Entity seeking to exercise the rights of or on behalf of the Estates, and any successors to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, from any and all Causes of Action that the Debtors, the Liquidating Trust, or the Debtors' Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' Estates, the conduct of the Debtors' businesses, the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan, and the Definitive Documents, or any related agreements, instruments, or other documents, and the negotiation, formulation, or preparation or implementation thereof, the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, or other event taking place on or before the Effective Date; provided, that, nothing in this Section 15.9(a) shall be construed to release the Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that nothing shall be construed to release the Released Parties from any Canadian Causes of Action.  For the avoidance of doubt, nothing herein shall release any Claim or Cause of Action that is expressly preserved and not released pursuant to the terms of the Asset Purchase Agreement.  The foregoing releasing parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 15.9(a) against each of the Released Parties.  (b) Third Party Releases. As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Definitive Documents that remains in effect after the Effective Date (including the right of the Liquidating Trust to prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Preserved Causes of Action, including the Specified Causes of Action), for good and valuable consideration, on and after the Effective Date, in accordance with section 1141 of the Bankruptcy Code, each of the Released Parties shall be deemed released and discharged, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, except as otherwise provided herein, by each of the following (all such persons or Entities, the "Releasing Parties"): (i) the holders of all Claims who vote to accept the Plan, (ii) the holders of Claims who reject the Plan or abstain from voting on the Plan and do not opt out of these releases on the Ballots, (iii) each of the Released Parties (other than the Debtors), and (iv) with respect to any entity in the foregoing clauses (i) through (iii), (x) such entity's predecessors, successors, and assigns, and (y) all persons entitled to assert Claims through or on behalf of such entities with respect to the matters for which the releasing entities are providing releases; in each case, from any and all Causes of Action that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part,

the Debtors, the Debtors' Estates, the Plan, the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the Sale Transaction, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party (other than assumed contracts or leases), the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments or other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that, nothing in this Section 15.9(b) shall be construed to release the Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that, nothing in this Section 15.9(b) shall be construed to release any Claim or Cause of Action relating to or arising from the Sale Transaction following entry of the Sale Order by the Bankruptcy Court; provided, further, that nothing shall be construed to release the Released Parties from any Canadian Causes of Action.  The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 15.9(b) against each of the Released Parties.  For the avoidance of doubt, notwithstanding anything to the contrary herein, the releases set forth in Section 15.9(b) of the Plan shall not apply to any investor that does not qualify as an "Accredited Investor" (within the meaning of rule 501(a) of Regulation D of the Securities Act of 1933).

**Section 15.10 of the Plan: Exculpation**:  To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Commencement Date in connection with or arising out of the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement; the negotiation and pursuit of the Disclosure Statement, the restructuring transactions, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Distribution of any securities issued or to be issued pursuant to the Plan, whether or not such Distributions occur following the Effective Date; the occurrence of the Effective Date, negotiations regarding or concerning any of the foregoing; or the administration of the Plan or property to be distributed under the Plan; the wind down of the businesses of any of the Debtors; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute fraud, gross negligence, criminal misconduct or willful misconduct. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Section 15.11 of the Plan: Limitations on Executable Assets with Respect to the D&O Claims**: Any recovery by or on behalf of the Liquidating Trust (and the beneficiaries thereof) on account of any Preserved Cause of Action against any of the Specified Directors and Officers, solely in his or her capacity as a director of the Debtors prior to the Effective Date, or officer of the Debtors prior to the closing of the Sale Transaction, as applicable, including in each case by way of settlement or judgment, shall be limited to the Debtors' available D&O Policies' combined limits, after payment from such D&O Policies of any and all covered costs and expenses incurred by the covered parties in connection with the defense of any D&O Claim (the "D&O Insurance Coverage"). No party, including the Liquidating Trust, shall execute, garnish or otherwise attempt to collect on any settlement of or judgment in the D&O Claims upon any assets of the Specified Directors and Officers on account of any Preserved Cause of Action except to the extent necessary to trigger the D&O Insurance Coverage.  In the event D&O Insurance Coverage is denied for any settlement or judgment in the Liquidating Trust's favor, the Specified Directors and Officers shall assign any claims for coverage or other rights of recovery they may have against the D&O Policy insurers to the Liquidating Trust.

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1.  Amount of Class 4 – General Unsecured Claims.**  For purposes of voting to accept or reject the Plan, the undersigned certifies that as of May 9, 2019, the undersigned holds Class 4 – General Unsecured Claims against the Debtor listed below in the aggregate amount set forth below.

> **Claim Amount:**[4]   $_____
>
> **Debtor**:          _____

**Item 2.  Vote on the Plan**.  The undersigned holder of Class 4 – General Unsecured Claims in the amount set forth in Item 1 above hereby votes to:

    **Check one box**:                    Accept the Plan

                                                 Reject the Plan

> **IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**
>
> **IF YOU VOTE TO ACCEPT THE PLAN, YOU WILL BE DEEMED TO GRANT THE RELEASES FOUND IN SECTION 15.9 OF THE PLAN REGARDLESS OF WHETHER YOU CHECK THE BOX IN ITEM 3 BELOW.  IF YOU VOTE TO REJECT THE PLAN OR ABSTAIN AND SUBMIT A BALLOT WITHOUT CHECKING THE BOX IN ITEM 3 BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN SECTION 15.9 OF THE PLAN.  IF YOU FAIL TO SUBMIT A BALLOT, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES FOUND IN SECTION 15.9 OF THE PLAN.**
>
> **IF YOU VOTE TO REJECT THE PLAN OR ABSTAIN, YOU MUST OPT OUT OF THE RELEASES PROVIDED IN SECTION 15.9 OF THE PLAN BY CHECKING THE BOX IN ITEM 3 BELOW, IN ORDER TO NOT BE BOUND BY SUCH RELEASES.**

---

[4] The amount indicated here is only for voting purposes and subject to the Voting Agent's tabulation rules.

**Item 3.  Optional Release Election.  COMPLETE THIS ITEM 3 ONLY IF YOU VOTED TO REJECT THE PLAN OR ARE ABSTAINING FROM VOTING ON THE PLAN IN ITEM 2 ABOVE.**

Check this box if you elect <u>not</u> to grant the releases contained in Section 15.9 of the Plan.  Election to withhold consent is your option.

> The undersigned elects <u>not</u> to grant the releases contained in Section 15.9 of the Plan.

**Item 4.  Acknowledgements and Certification.**  By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a Confirmation Hearing Notice as well as instructions on how to access a copy of the Disclosure Statement (including the Plan and all other exhibits thereto) and a copy of the Order approving the Disclosure Statement without exhibits.  The undersigned certifies that (i) it is the holder of the Class 4 – General Unsecured Claims identified in Item 1 above, and/or (ii) it has full power and authority to vote to accept or reject the Plan.  The undersigned further acknowledges that the Debtors' solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Order approving the Disclosure Statement, and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claimant: _____

Signature: _____

Name of Signatory (if different than claimant): _____

If by Authorized Agent, Title of Agent: _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

Please check one <u>or both</u> of the below boxes if the above address is a change of address for the purpose(s) of:

> Future notice mailings in these chapter 11 cases; and/or

> Distributions, if any, upon your Claim in these chapter 11 cases.

**Exhibit D**

**Notice of Non-Voting Status – Unimpaired Classes**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                         :

**In re**                      :        **Chapter 11**
                          :

**SEARS HOLDINGS CORPORATION,** *et al.*,   :        **Case No. 18-23538 (RDD)**
                          :

             **Debtors.**[1]     :        **(Jointly Administered)**
                          :

-------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## NOTICE OF NON-VOTING STATUS TO UNIMPAIRED CLASSES[2]

**PLEASE TAKE NOTICE THAT** on [_____], 2019, the United States Bankruptcy Court for the Southern District of New York approved the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") filed by Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for use by the Debtors in soliciting acceptances or rejections of the *Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Plan**"), from holders of impaired Claims against the Debtors (each, as defined in the Plan), who are (or may be) entitled to receive distributions under the Plan.

**UNDER THE TERMS OF THE PLAN, YOUR CLASS 1 – PRIORITY NON-TAX CLAIMS AGAINST THE DEBTORS ARE NOT IMPAIRED AND, THEREFORE, PURSUANT TO SECTION 1126(f) OF TITLE 11 OF THE UNITED STATES CODE, YOU ARE (I) PRESUMED TO HAVE ACCEPTED THE PLAN AND (II) NOT ENTITLED TO VOTE ON THE PLAN WITH RESPECT TO YOUR CLASS 1 – PRIORITY NON-TAX CLAIMS.**

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S), OR WISH TO REQUEST A COPY OF THE PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTORS' VOTING AGENT, PRIME CLERK, LLC, BY ONE OF THE METHODS BELOW. THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

| | |
|---|---|
| **If by standard or overnight mail or hand delivery:**<br>Sears Holdings Corporation Ballot Processing<br>c/o Prime Clerk, LLC<br>850 Third Avenue, Suite 412<br>Brooklyn, New York 11232<br><br>**If by telephone:**<br><br>(844) 384-4460 (domestic toll-free) or<br>(929) 955-2419 (international) | **If by e-mail to:**<br><br>SearsBallots@primeclerk.com with a reference to "Sears" in the subject line |

---

[2] The Unimpaired Classes that are not entitled to vote under the Plan are K-Mart Corp. Class 1 – Priority Non-Tax Claims; Kmart IL Class 1 – Priority Non-Tax Claims; Kmart of Washington Class 1 – Priority Non-Tax Claims; SHC Class 1 – Priority Non-Tax Claims; for all other Debtors Class 1 – Priority Non-Tax Claims.

Dated: _____, 2019
        New York, New York

                _____

                WEIL, GOTSHAL & MANGES LLP
                767 Fifth Avenue
                New York, New York  10153
                Telephone:  (212) 310-8000
                Facsimile:  (212) 310-8007
                Ray C. Schrock, P.C.
                Jacqueline Marcus
                Garrett A. Fail
                Sunny Singh

                *Attorneys for Debtors*
                *and Debtors in Possession*

**<u>Exhibit E</u>**

**Notice of Non-Voting Status – Impaired Classes**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                          :

**In re**                         :         **Chapter 11**
                          :

**SEARS HOLDINGS CORPORATION, *et al.*,**   :      **Case No. 18-23538 (RDD)**
                          :

           **Debtors.**[1]        :      **(Jointly Administered)**
                          :
------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## NOTICE OF NON-VOTING STATUS TO IMPAIRED CLASSES[2]

**PLEASE TAKE NOTICE THAT** on [_____], 2019, the United States Bankruptcy Court for the Southern District of New York approved the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") filed by Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for use by the Debtors in soliciting acceptances or rejections of the *Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Plan**"), from holders of impaired Claims against, and Interests in (each, as defined in the Plan), who are (or may be) entitled to receive distributions under the Plan.

**UNDER THE TERMS OF THE PLAN, YOUR CLASS 8 – SUBORDINATED SECURITIES CLAIMS AND/OR CLASS 9 – EXISTING SHC EQUITY INTERESTS IN, THE DEBTORS ARE IMPAIRED AND, THEREFORE, PURSUANT TO SECTION 1126(f) OF TITLE 11 OF THE UNITED STATES CODE, YOU ARE (I) PRESUMED TO HAVE REJECTED THE PLAN AND (II) NOT ENTITLED TO VOTE ON THE PLAN WITH RESPECT TO YOUR CLASS 8 – SUBORDINATED SECURITIES CLAIMS AND/OR CLASS 9 – EXISTING SHC EQUITY INTERESTS.**

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR INTERESTS, OR WISH TO REQUEST A COPY OF THE PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTORS' VOTING AGENT, PRIME CLERK, LLC, BY ONE OF THE METHODS BELOW. THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

---

[2] The Impaired Classes that are not entitled to vote under the Plan are Kmart Corp. Class 6 – Intercompany Claims, Kmart Corp. Class 7 – Intercompany Interests, Kmart Corp. Class 8 – Subordinated Securities Claims; Kmart IL  Class 6 – Intercompany Claims; Kmart IL Class 7 – Intercompany Interests, Kmart IL Class 8 – Subordinated Securities Claims; Kmart of Washington Class 6 – Intercompany Claims, Kmart of Washington Class 7 – Intercompany Interests, Kmart of Washington Class 8 – Subordinated Securities Claims; SHC Class 6 – Intercompany Claims, SHC Class 7 – Intercompany Interests, SHC Class 8 – Subordinated Securities Claims, SHC Class 9 – Existing SHC Equity Interests; for all other debtors Class 6 – Intercompany Claims, Class 7 – Intercompany Interests, Class 8 – Subordinated Claims.

| If by standard, or overnight mail, or hand delivery: | If by e-mail to: |
|---|---|
| Sears Holdings Corporation Ballot Processing<br>c/o Prime Clerk, LLC<br>850 Third Avenue, Suite 412<br>Brooklyn, New York 11232<br><br>**If by telephone:**<br><br>(844) 384-4460 (domestic toll-free) or<br>(929) 955-2419 (international) | SearsBallots@primeclerk.com with a reference to "Sears" in the subject line |

Dated: _____, 2019
      New York, New York

                          _____
                          WEIL, GOTSHAL & MANGES LLP
                          767 Fifth Avenue
                          New York, New York  10153
                          Telephone:  (212) 310-8000
                          Facsimile:  (212) 310-8007
                          Ray C. Schrock, P.C.
                          Jacqueline Marcus
                          Garrett A. Fail
                          Sunny Singh

                          *Attorneys for Debtors*
                          *and Debtors in Possession*