Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 18-23538-rdd

4  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  SEARS HOLDINGS CORPORATION,

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   United States Bankruptcy Court

13                   300 Quarropas Street, Room 248

14                   White Plains, NY 10601

15

16                   February 14, 2019

17                   10:03 AM

18

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  NAROTAM RAI

Page 2

1   HEARING re Notice of Agenda of Matters Scheduled for Hearing

2   on February 14, 2019

3

4   Motion to Extend Exclusivity Period for Filing a Chapter 11

5   Plan and Disclosure Statement / Motion of Debtors Pursuant

6   to Section 1121(d) of the Bankruptcy Code to Extend

7   Exclusive Periods (document #2312)

8

9   Limited Objection of the Official Committee of Unsecured

10  Creditors (document #2544)

11

12  Motion Midwood Management Corp. to Confirm Termination or

13  Absence of Stay Motion for Order Declaring Automatic Stay

14  Inapplicable to Non-Residential real Property Lease

15  (document 932)

16

17  Debtors' Objection (document #2497)

18

19  Midwood Reply (document #2578)

20

21  Motion to Confirm Termination or Absence of Stay Motion for

22  Order Declaring Automatic Stay Inapplicable to Non-

23  Residential Real Property Lease filed by Veronique Urban on

24  behalf of Midwood Management Corp. (document #932)

25

1    Motion to Compel Immediate Payment of Postpetition

2    Arrearages; Granting an Administrative Claim; and Compelling

3    Debtors to Assume or Reject Agreement (document #1477)

4

5    Motion of Milton Manufacturing, LLC to (I) Compel the Debtor

6    to Assume or Reject Purchase Orders Related to Craftsman

7    Branded Goods Ordered by the Debtor Being Warehoused in

8    Taiwan, and (II) Grant Related Relief filed by Joel D.

9    Applebaum on behalf of Milton Manufacturing, LLC (document

10   #1479)

11

12   Debtors' Objection (document #2481)

13

14   Debtors' Objection (document #1547)

15

16   Motion for Relief from Stay to Allow Civil Litigation in

17   Action (1) and for Action, (2) To Proceed, and for the

18   Parties to Proceed with Alternative Dispute Resolution (ADR)

19   and Settlement Negotiations to which had Begun Since July

20   27, 2018, with Certificate of Service (document #1006)

21

22   Response of Cyrus Capital Partners, L.P. (document #2470)

23

24   Limited Objection of OCO Capital Partners, L.P. (document

25   #2471)

1    Joinder of Och-Ziff Capital Structure Arbitrage Master Fund,

2    Ltd. (document #2474)

3

4    Ex-Parte Motion of the Official Committee of Unsecured

5    Creditors for the Entry of an Order Pursuant to Bankruptcy

6    Code Sections 105 and 1103 and Bankruptcy Rules 2004 and

7    9016, Authorizing the Examination of the CDS Participants

8    (document #1557)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES LLP

 4        Attorneys for the Debtor

 5        767 Fifth Avenue

 6        New York, NY 10153

 7

 8   BY:  SUNNY SINGH

 9        RAY S. SCHROCK

10        CANDACE M. ARTHUR

11        GARRETT FAIL

12

13   AKIN GUMP STRAUSS HAUER & FELD LLP

14        Attorneys for UCC

15        One Bryant Park

16        New York, NY 10036

17

18   BY:  PHILIP C. DUBLIN

19        SARA L. BRAUNER

20

21

22

23

24

25
```

Page 6

1   MILBANK, TWEED, HADLEY & MCCLOY LLP

2        Attorney for Cyrus Partners

3        2029 Century Park East - 33rd Floor

4        Los Angeles, CA 90067

5

6   BY:  THOMAS R. KRELLER

7

8   CLARK HILL

9        Attorney for Milton Manufacturing LLC

10       210 Carnegie Center

11       Suite 102

12       Princeton, NJ 08540

13

14  BY:  NOLA R. BENCZE

15

16  HERRICK, FEINSTEIN LLP

17       Attorney for Proposed Special Conflicts Counsel

18       To the Official Committee of Unsecured Creditors

19       Two Park Avenue

20       New York, NY 10016

21

22  BY:  STEVEN B. SMITH

23       SEAN E. O'DONNELL

24

25

Page 7

```
 1    FARRELL FRITZ P.C.

 2         Attorney for Midwood Management Corp.

 3         400 RXR Plaza

 4         Uniondale, NY 11556

 5

 6    BY:  PATRICK T. COLLINS

 7

 8    SEYFARTH SHAW LLP

 9         Attorneys for Wilmington Trust, NA as Indenture Trustee

10         and Collateral Agent

11         620 Eighth Avenue

12         New York, NY 10018

13

14    BY:  EDWARD M. FOX

15

16    UNITED STATES DEPARTMENT OF JUSTICE

17         Attorneys for the U.S. Trustee

18         201 Varick Street, Suite 1006

19         New York, NY 10014

20

21    BY:  PAUL SCHWARTZBERG (TELEPHONICALLY)

22

23    APPEARING TELEPHONICALLY:

24    XY PANG

25    ARLENE R. ALVES
```

Page 8

1   RAPHAEL ANDREWS

2   NEGISA BALLUKU

3   ALIX BROZMAN

4   SARA COELHO

5   JASON DIBATTISTA

6   TED A. DILLMAN

7   DANIEL M. EGGERMANN

8   WILLIAM P. FENNELL

9   DEBORAH L. FLETCHER

10  GREGG M. GALARDI

11  IVAN M. GOLD

12  KRISTOPHER M. HANSEN

13  TAYLOR B. HARRISON

14  CATHERINE HEIZENRATER

15  ANA LUCIA HURTADO

16  KELLY E. KLEIST

17  MATTHEW KOCH

18  STEVEN KOSSON

19  ZACHARY D. LANIER

20  STEPHANIE C. LIEB

21  TERESA LII

22  MICHASEL G. LINN

23  KATHERINE E. MASSEY

24  MICHAEL MITTELMAN

25  BYRAN OBERG

Page 9

1    THOMAS ONDER

2    SEAN O'NEAL

3    RICHARD PEDONE

4    JASON M. PIERCE

5    RYAN REINERT

6    JOSH F. SAUL

7    COURTNEY A. SCHAEL

8    PAUL SCHWARTZBERG

9    PETER B. SIROKA

10   CHRIST STAUBLE

11   BRAD SWEENEY

12   EVAN J. ZUCKER

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.  Okay, good morning.

3       In re Sears Holdings Corporation.

4              MR. SCHROCK:  Good morning, Your Honor.  Ray

5       Schrock of Weil Gotshal & Manges.  I'm here on behalf of the

6       Debtors.  It's good to be in front of you again, Your Honor,

7       with a substantially smaller audience.

8              THE COURT:  Yes, we could have used the other

9       courtroom, but in any event, here we are.

10             MR. SCHROCK:  Your Honor, first on the agenda is

11      the Debtors' Motion to Extend the Exclusivity Period.  As we

12      notified your Chambers yesterday, we did resolve the limited

13      objection of the Official Unsecured Creditors Committee.

14             THE COURT:  Great.

15             MR. SCHROCK:  I have a revised order.  May I

16      approach?

17             THE COURT:  So, it's, in essence, a 60-day

18      extension?

19             MR. SCHROCK:  It's a 60-day extension, Your Honor,

20      it's a -- we agreed to provide an update on the plan

21      process, which we would anyway, at the next omnibus hearing

22      on March 21st, and for the record, of course, we're going to

23      agree to negotiate with the UCC on the plan in good faith,

24      which we would always do.

25             THE COURT:  Okay.

Page 11

1          MR. SCHROCK:  But I do have a red line of the

2    order, if you'd like to see it.

3          THE COURT:  That's fine.  You can hand that up.

4    For what it's worth, that's what I had in mind, if you

5    hadn't agreed, so.

6          MR. SCHROCK:  Well, I'm glad we agreed.

7          THE COURT:  Okay, so, this will get entered.

8          MR. SCHROCK:  Okay, great, thanks very much, Your

9    Honor.  And just a brief update for you on -- since what we

10   had going since we were last in front of you.  We did, as I

11   know you -- as I'm sure you're aware, we did close the sale

12   on Monday, thank goodness, so that was a big accomplishment,

13   obviously, in these cases.  We've also filed a Motion for a

14   Claims Bar Date, and for 503(b)(9) procedures, which provide

15   for, we think, an expedited and efficient way to resolve

16   those 503(b)(9) claims.  We filed this morning, a Motion for

17   PI procedures for Personal Injury Claims, so that we can

18   resolve those efficiently.  We have started to move forward

19   with the PVGC settlement, including executing Trusteeship

20   papers so that the PBGC can take over the plan.  They would

21   then dismiss the action in the Northern District of Illinois

22   for an involuntary termination.  And now, frankly, we're

23   turning the Plan and Disclosure Statement, sitting down with

24   the UCC, sitting down with the other constituents, and our

25   intent is to move very quickly, because --

1          THE COURT:  It would make sense.

2          MR. SCHROCK:  Exactly, we have to finish this up

3     quickly.  We intend to do that, and so, we have -- the 60-

4     day extension takes the plan filing period out to April

5     15th, but my expectation is that we can get something on

6     file substantially before that, but we will work with the

7     UCC as well as other parties to make sure that we try and

8     bring it to Your Honor in as smooth a process as possible.

9          THE COURT:  That's all to the good.  The bar date

10    motion, I'm assuming you don't need a hearing on that.  On

11    the 503, I guess that's for the next omnibus hearing, or are

12    we looking to do that --

13         MR. SCHROCK:  It's part of the --

14         THE COURT:  It's all part of the same motion, so

15    you're not going to be looking for a hearing on that?

16         MR. SCHROCK:  It is.  Not unless it's needed, Your

17    Honor.

18         THE COURT:  Okay.  All right, that's fine.  I

19    think the sooner rather than better for that as well.

20         MR. SCHROCK:  Okay, fine.  With that, Your Honor,

21    I think that we're going to go with -- go out of order, with

22    your permission, because the ex-parte motion of the UCC for

23    the 2004 examination related to the MTNs is here on consent.

24         THE COURT:  Okay.  I saw that email, so, why don't

25    we take that motion?  Of course, it's no longer ex-parte,

Page 13

1      and it hasn't been for a while, but --

2               MR. O'DONNELL:  Good morning, Your Honor.  For the

3      record, Sean O'Donnell with Herrick, Feinstein.  With my is

4      my colleague, Steven Smith.  We are the Proposed Conflict

5      Counsel for the Unsecured Creditors Committee.

6               THE COURT:  Right.

7               MR. O'DONNELL:  As an aside, our application --

8      retention application was submitted yesterday morning.  I

9      understand that that's scheduled to be heard at the next

10     omnibus hearing on March 21st.

11              THE COURT:  Okay.

12              MR. O'DONNELL:  Okay.  Your Honor, just very

13     briefly, so, on January 12th, 2018, on behalf of the

14     Committee, we moved pursuant to 2004(a) to conduct an

15     examination of certain parties that participated in the

16     Debtors' sale or potential sale of certain medium-term notes

17     that were owned by the Debtors under a non-Debtor affiliate,

18     Sears Re.  Your Honor, there were three responses that were

19     filed in response to our 2004 Motion.  Cyrus filed a

20     response that Cyrus Capital Partners, which stated that

21     they, quote, "did not oppose the Rule 2004 Motion," but,

22     pursuant to our agreement with Cyrus counsel, they reserve

23     their rights with respect to the scope and timing of the

24     discovery.  There was also a limited objection, and that was

25     filed by OCO Capital Partners on behalf of itself and its

1  managed funds.  OCO, Your Honor, the funds that are managed

2  were previously managed by Omega, represented by Quinn

3  Emanuel.  Omega ceased, as I understand it, being the

4  managers as of January 1, 2019, but it's the same funds that

5  we were talking about previously.

6          THE COURT:  Okay.

7          MR. O'DONNELL:  And then Och-Ziff Capital filed a

8  joinder to that motion.  The were no other responses that

9  were filed with respect to the 2004 motion, as you noted, is

10 no longer ex-parte, and what we've done since filing our

11 Motion in accordance with representations we made to the

12 Court in our reply brief, is we've reached out to the

13 parties, and I'm happy to report that we've reached an

14 amicable resolution.  Just very briefly, if I can outline it

15 for Your Honor --

16          THE COURT:  Sure.

17          MR. O'DONNELL:  -- and we have a proposed order.

18 So, the scope of the order for now, Your Honor, would be as

19 follows -- or the scope of discovery, excuse me.  We would

20 be seeking discovery as it relates to the sale of the MTNs,

21 also the MTNs themselves, and the SRAC Credit Default Swaps.

22 We would also be seeking discovery, the second category has

23 to do with the de-risking and the offsetting transactions

24 that we understand took place between December 20th, 2018

25 and January 1 -- January 4, excuse me, 2019.  They were

Page 15

1    described in some of the pleadings that were submitted by

2    Omega to Your Honor.

3            THE COURT:  Great.

4            MR. O'DONNELL:  And then finally, Your Honor,

5    there is a category that relates to the Barclays Consortium

6    order -- offer, excuse me.  You may recall, at the December

7    20th hearing, there was reference to that.  We're seeking

8    discovery of that as well.  In terms of the time period,

9    there was a disagreement with the parties as to what would

10   be the right time period, and based on discussions with

11   counsel, for now, we've agreed that the time period would be

12   December 20th, 2018 through January 4th, 2019, which is when

13   we understand that the transactions, the de-risking and

14   offsetting transactions closed.

15           Finally, Your Honor, we would also be seeking

16   discovery as it relates to -- pardon me, we would also be

17   taking a deposition of each of the CES participants, and all

18   of this is without prejudice to us coming back on behalf of

19   the Committee saying that we need additional discovery, and

20   of course, it's without prejudice to the other parties

21   saying, no you don't.

22           THE COURT:  Okay.  That sounds like a reasonable

23   resolution.  The one thing I would add is that I guess, from

24   what I heard, you still have a reservation with Cyrus and

25   maybe the other parties as to whether -- when you actually

1    send out your document requests or the like, if it's

2    something over-broad or the like, they can raise it with you

3    and you can still try to work it out, or have you actually

4    worked out the scope?

5           MR. O'DONNELL:  So, we've worked out the scope.  I

6    will say, it's noted in the order, this is where I get out

7    in front of my skis, but we then have to identify the

8    custodians, the search terms, et cetera.

9           THE COURT:  Okay.

10          MR. O'DONNELL:  We're going to work with the other

11   parties on that, and we've agreed that if we can't reach a

12   resolution, which I don't expect to be the case, then we

13   would come back before Your Honor.

14          THE COURT:  Okay, but then that -- the short

15   answer to my question is, I won't be expecting motions to

16   quash or Chambers conferences on the scope --

17          MR. O'DONNELL:  Exactly.

18          THE COURT:  -- because you've worked that out with

19   the parties?

20          MR. O'DONNELL:  And it's laid out in the proposed

21   order that we have, if I can approach, Your Honor?

22          THE COURT:  Okay.  Good enough, that's fine.  You

23   can email that to Chambers.

24          MR. O'DONNELL:  Yes.  Would you like a hard copy

25   as well, or just the --

Page 17

```
 1              THE COURT:  I don't need it.  I think that you've

 2    summarized it, unless any of the other parties who

 3    (indiscernible) want to add anything.  Okay.  So, you can

 4    email that over to Chambers.

 5              MR. O'DONNELL:  Thank you, Your Honor.

 6              THE COURT:  Thank you.

 7              MR. SCHROCK:  Your Honor, I believe we have a

 8    couple of third-party motions, but in the vein of minimizing

 9    administrative expenses, may I be excused?

10              THE COURT:  Yes.

11              MR. SCHROCK:  Okay.

12              THE COURT:  Okay, thank you.  Okay, so, we were

13    going back to the agenda now, and I think the next matter on

14    the agenda is the Midwood Management Motion.

15              MR. COLLINS:  Good morning, Your Honor.  Patrick

16    Collins, Farrell Fritz on behalf of Midwood Management Corp.

17              THE COURT:  Good morning.

18              MR. COLLINS:  Midwood Management is the agent for

19    Expressway Plaza I and Farmingville Associates.  They are

20    the tenants-in-common, the owners of the property out in

21    Farmington, New York.  There's a shopping center there known

22    as Expressway Plaza.  One of the tenants in the shopping

23    center is Kmart, under a lease entered into in 1991.  A copy

24    of the lease is next to our Motion.  We filed the Motion

25    seeking entry of an order pursuant to § 362(b)(10) of the
```

1    Bankruptcy Code, declaring that the automatic stay does not

2    apply to Landlord's efforts to recover the leased premises

3    from Kmart.  The automatic stay does not apply because the

4    term of the lease is expired.  The term expired by operation

5    of the conditional limitation provision in the lease, an

6    uncured pre-petition default, in Landlord's pre-petition

7    service of a Notice of Election to treat the term of the

8    lease as expired within ten days on account of a default.

9            THE COURT:  The default is a payment default,

10   right?

11           MR. COLLINS:  Failure to pay additional rent for

12   the Landlord's costs to carry out maintenance at the leased

13   premises, that's correct.

14           THE COURT:  Under 25(a) of the lease?

15           MR. COLLINS:  Correct.  Under New York law, as a

16   result of the condition limitation, the term of the lease

17   was shortened upon landlord's service of the Lease

18   Termination Notice.  The term is shortened from the

19   termination date stated in the lease to ten days from the

20   date notice was given.

21           THE COURT:  Well, can we stop on that point?

22           MR. COLLINS:  Sure.

23           THE COURT:  What New York law are you referring

24   to?  I mean, the Debtors dispute whether there actually was

25   a default, under 25(a) and (f), that would tender the

1     obligation to pay more of the rent, the roughly over --

2     well, over $215,000 of additional rent.

3               MR. COLLINS:  Correct, it has been --

4               THE COURT:  So, what is the -- I mean, that's

5     still in dispute, so, how did it terminate?

6               MR. COLLINS:  It terminated because the Landlord

7     did not respond to -- the Tenant did not respond to the

8     Landlord's Notice of Default and opportunity to cure at all,

9     neither to protest, neither to pay, neither to ask for more

10    time.

11              THE COURT:  Well, it's doing it now.  It's

12    disputed that there was a default.

13              MR. COLLINS:  It is doing it now, after the

14    expiration of the ten-day period in the Lease Termination

15    Notice.  If the Court rules that § 362(b)(10) were to apply,

16    we would, of course, then go to State Court and commence a

17    Landlord-Tenant Action to evict Kmart, and Kmart can arrange

18    whatever defenses it wants in the Landlord-Tenant Action.

19              THE COURT:  So, the reason I asked is, I don't

20    think you cited to me any New York cases that stand for the

21    proposition that, if the Debtor disputes the underlying

22    default that causes the conditional termination, the

23    Landlord automatically has the right to assume that the

24    lease is terminated for all purposes.  Doesn't it have to be

25    a Court determination of that dispute?

1          MR. COLLINS:  As I said, the right of Kmart to

2     contest the default is still there.  They can assert that in

3     State Court, if they so choose.

4          THE COURT:  Okay.  All right, so --

5          MR. COLLINS:  Or here, if it -- or here.

6          THE COURT:  -- what is the -- but then it hasn't

7     terminated, because that dispute still is live, isn't it?

8          MR. COLLINS:  No, it's terminated, depending on

9     who's right and who's wrong.

10         THE COURT:  But, I know, but that hasn't been

11    decided yet, so it's hard for me to see how it's actually

12    terminated, since that issue is still an open issue.

13         MR. COLLINS:  I guess, my view is that if the

14    Landlord is correct, the lease is terminated.

15         THE COURT:  Well, that's right, and if the Debtor

16    is correct, it hasn't.

17         MR. COLLINS:  That's right.

18         THE COURT:  So, it's hard to say it has

19    terminated, because it's an open issue.

20         MR. COLLINS:  But the events have already

21    occurred.  I mean, the events --

22         THE COURT:  That's fair.

23         MR. COLLINS:  -- the events that will lead to a

24    determination as to whether the lease is terminated or not

25    have already occurred.

1          THE COURT:  But you're saying it actually has

2     terminated.

3          MR. COLLINS:  Yes.

4          THE COURT:  Are you asking me for a determination

5     today that it has?

6          MR. COLLINS:  I'm asking the Court for a

7     determination of § 362(b)(10), under that provision, that

8     the automatic stay does not apply because the lease is

9     terminated.

10          THE COURT:  But, are you asking on the basis of

11     saying that you want me to decide whether your client is

12     correct that there was, in fact, the default that gave rise

13     to the payment obligation, or that -- or, in the

14     alternative, that the Debtor is correct and I need to decide

15     that issue; or are you basically saying that I should assume

16     that, if the Landlord asserts there's a default, then that's

17     enough for a termination?

18          MR. COLLINS:  We don't dispute that the issue

19     needs to be decided somewhere.

20          THE COURT:  All right.

21          MR. COLLINS:  And that can be here, that can be in

22     Landlord-Tenant court in State Court.

23          THE COURT:  All right.  So, it doesn't seem to me

24     that it's actually terminated.

25          MR. COLLINS:  Once again, I --

1          THE COURT:  For the purposes of this hearing.

2          MR. COLLINS:  Well, I --

3          THE COURT:  Which -- I'm not trying to get you to

4     say that your position is incorrect.  I fully understand

5     your position.  All I'm saying is, it doesn't seem to me

6     that it actually has terminated because there's still an

7     open issue.

8          MR. COLLINS:  It's still an open issue, but there

9     are open issues in the other cases where courts --

10         THE COURT:  Actually, I disagree with that

11    completely.  And I also disagree with the meaning of §

12    362(b)(10), which doesn't say, "has terminated," it says,

13    "stated term".

14         MR. COLLINS:  Correct.

15         THE COURT:  When I look at the lease, the term of

16    the lease is stated in Paragraph 2, not in Paragraph 25.

17         MR. COLLINS:  But that's what Policy Realty is all

18    about, Your Honor.

19         THE COURT:  Policy Realty is not really about

20    that.  Policy Realty is about the fact that when a lease

21    terminates for any reason --

22         MR. COLLINS:  Right.

23         THE COURT:  -- it can't be assumed because it's no

24    longer a lease.  That's different than (b)(10).  At least,

25    that's what the editors of Collier's say, and the majority

Page 23

1    of cases.

2            MR. COLLINS:  But Policy Realty dealt with the

3    conditional limitation that -- that's the nature of a

4    conditional limitation, it shortens --

5            THE COURT:  That has already been decided.

6            MR. COLLINS:  -- it shortens the terms of the

7    lease.

8            THE COURT:  There are two different points.

9            MR. COLLINS:  Right, okay.

10           THE COURT:  And, frankly I don't think this was

11   necessary for the decision in Policy Realty, or, I don't

12   think, even briefed to the District Court or the Court of

13   Appeal -- or the Second Circuit.  There -- and Collier's

14   makes this clarification, too: there are two different

15   concepts pertaining to termination of a lease and the

16   Debtors' ability to continue with the lease.  Concept one is

17   really the concept that was issue in Policy Realty, which

18   is, you can't assume a lease that is over, that is done, and

19   you know it's done, because there's no remaining issue.  You

20   can't create a new lease, in other words, you have to live

21   with the lease you have.  That's a function of just the

22   definition in § 365, which is the word, "lease".  If you

23   don't have a lease anywhere because it's over, you don't

24   have it.

25           So, the case law is quite clear, you can't revive

Page 24

1   a lease if it's over, although, even there, the courts say,

2   under New York law, you actually can revive a lease under

3   RPAPL 749 because there's an ability to go back to State

4   Court and say, reconsider the issuance of the order of

5   eviction, Judge, the Debtor is ready to assume the lease

6   under 365; and there are plenty of cases that deal with

7   that: Mad Lolo, Joker Enterprises, et cetera.  That's one

8   set of issues, is the lease over or not?

9        There's a separate set of issues, which are

10  covered by § 362(b)(10), and § 541(b)(2), and that's a much

11  more limited provision that says, if the lease is expired by

12  "its stated term," not that it is terminated, but expired by

13  "its stated term," then the stay doesn't apply and it's not

14  property of the estate.  Now, it's pretty easy for people to

15  figure out, including judges:  even judges could figure this

16  out, that if a lease runs for ten years, that's its stated

17  term, the lease runs for ten years, and you're now in year

18  11, the lease is over its stated term, it's over.  And

19  Congress said, well, at least in those circumstances, we're

20  not going to engage in any more speculation.  It's over.

21        That's what, I think, § 362(b)(10) and the same

22  provision in 541, are dealing with, not a conditional

23  termination or consequential termination, which are dealt

24  with in the cases that deal with whether you still have a

25  lease or not.  But, all of those cases, and it's the same

Page 25

1    under New York law, that's why we have Yellowstone

2    injunctions, is, if a landlord says the lease is over

3    because you've defaulted and we have this default provision,

4    we can send a notice and if it's not cured, then the lease

5    is terminated, that's a whole separate set of issues where

6    you have controversies.  You have them all the time.  You

7    know, "No, Judge, there wasn't a default, you know, they --

8    this is a pretext.  We've been living up to our lease."  And

9    so, that's a whole separate set of issues, and those leases

10   aren't over until it's over.  And that has to be decided by

11   someone.  I don't -- I believe -- I know there are a few

12   cases going the other way, but I believe that Congress

13   understood that distinction, and by using the phrase,

14   "stated term," made it.

15        So, I think you're absolutely right that Policy

16   Realty stands for the proposition that if the lease really

17   is over, for whatever reason, whether it's because the

18   stated term has run, or because there's a, you know, a

19   consequential termination, the Debtor can't revive it,

20   although, frankly, there's a lot within that phrase, "the

21   lease is over," because we know that it actually can be

22   revived, even if the warrant of eviction is issued, because

23   that's what Mad Lolo and 749 of the RPAPL say.  But, in

24   Policy Realty, that's what it was: it was a consequential

25   breach, it wasn't a "term" breach, and it was over.  I

Page 26

1    appreciate that they quote -- they cite 362, but they didn't

2    need to, and I think if anyone had actually made the

3    argument to them, they would have gotten it, and I view that

4    application as dicta, as far as § 362(b)(10) and §

5    541(b)(2), though.  It's just a separate -- it's not

6    necessary, and it's against the majority of case law, the

7    leading commentator, and the plain language of the statute.

8             MR. COLLINS:  I would point out to you, it's a

9    District Court decision that was affirmed by the Second

10   Circuit.

11            THE COURT:  I know, but it didn't -- it's dicta on

12   that point, because the lease was over.

13            MR. COLLINS:  But the reason --

14            THE COURT:  And the law is really clear, that if

15   you know the lease is over, if there's no issue about the

16   dispute, then -- I'm not alone in this.  In the Artisanal

17   case, Judge Garrity reached the same result.  It's not over.

18   It's a consequential default, it's disputed.  And there are

19   plenty of other judges that have done the same thing.

20            MR. COLLINS:  Understood.  But I would submit that

21   the reasoning of Policy Realty is sound.  I mean, that's

22   what a conditional limitation is.

23            THE COURT:  It's totally sound in terms of the

24   proposition that, if a lease is truly terminated, for

25   whatever reason, then it cannot be revived.  That's -- it's

1    totally sound on that point.  And that's what the -- you

2    know, everything else under that case is dicta.

3              MR. COLLINS:  On Policy Realty, it hadn't

4    completely terminated as of the filing date.  The TRO is

5    said to expire later that day, so --

6              THE COURT:  But there was nothing to do.  There

7    was nothing -- there's no way to extend it.  There was no

8    dispute about the default.  They were done, and they weren't

9    in possession.

10             MR. COLLINS:  And they were not in possession.

11             THE COURT:  So, it's -- you know, it's -- listen,

12   you may appreciate that this is not the first time I've

13   dealt with these arguments.

14             MR. COLLINS:  Mm hmm.

15             THE COURT:  And that I think that, obviously,

16   landlord attorneys love Policy Realty, and they frequently

17   cite it for more than it stands for.  I don't blame them for

18   doing that, but, you know, it's -- the statute's clear, I

19   believe.  We have to decide this issue, whether there's a

20   consequential default, eventually --

21             MR. COLLINS:  You mentioned Artisanal and Lolo,

22   Your Honor.

23             THE COURT:  Right.

24             MR. COLLINS:  In both of those cases, the outcome,

25   in both of those cases, was that the Court ruled that §

1    362(b)(10) did not apply --

2              THE COURT:  Right.

3              MR. COLLINS:  -- but that the stay was lifted --

4              THE COURT:  Right.

5              MR. COLLINS:  -- to allow litigation somewhere to

6    determine --

7              THE COURT:  That's right.

8              MR. COLLINS:  -- to determine the underlying

9    issue, so --

10             THE COURT:  But you haven't sought that relief.

11             MR. COLLINS:  Well, because -- because 362 --

12   well, because the Sonnax Factors that they cited were in a

13   different context.

14             THE COURT:  I know, but there's no motion for

15   relief of the stay in front of me.

16             MR. COLLINS:  The Court has discretion to award

17   alternate remedies in the course of the outcome, here.

18             THE COURT:  Well, I don't know -- I haven't even

19   looked at that.  Is there an arbitration provision in the

20   lease, for example?  I don't know if there's some sort of

21   ADR in the lease that would be relevant to me?  Related to

22   that, I don't even know when this lease is stated to be

23   assumed, or are they looking to reject it?  I mean, that's

24   clearly a Sonnax factor.  There's no reason to send this to

25   a State Court litigation if it's going to be rejected

Page 29

1    anyway.  Then, I'm just -- then I would decide the damages,

2    if you really want to pursue them, through a proof of claim.

3    So, I think it's premature to -- I mean, I understand why

4    you didn't move for relief from the stay, because I think

5    it's premature.

6            MR. COLLINS:  So, as long as our rights to -- as

7    to the issue as to whether the lease is terminated is

8    preserved, Your Honor.

9            THE COURT:  Oh, clearly.  Clearly it is, and you

10   may -- you may be right about that, ultimately.  It may be

11   that your client was perfectly within its rights to declare

12   an emergency and do the parking lot work and bill $215,000

13   at 18 percent interest, which actually, where is that

14   provision, the 18 percent provision?

15           MR. COLLINS:  In 25(f), Your Honor.

16           THE COURT:  Okay.  All right.

17           MR. COLLINS:  If you keep reading, it says that --

18           THE COURT:  All right.  So, it may be perfectly

19   appropriate, but it's a -- given the emails, the Debtors did

20   dispute it when it first -- when they first got the notice.

21           MR. COLLINS:  Yeah, we don't read the emails that

22   way.

23           THE COURT:  Well, I mean, the guy says, we don't

24   think it's an emergency.

25           MR. COLLINS:  Well, the work was done, and they

1    don't dispute that the work needed to be done.

2         THE COURT:  I don't know.  You know, that's for

3    another day, I think.  So, I will deny the Motion insofar it

4    seeks a declaration that the stay doesn't apply to the

5    Landlord's actions to terminate the lease, and to enforce

6    its rights under the lease, including eviction, and the

7    related proposition that, under § 541, the lease isn't

8    property of the estate.  That denial, though, is clearly

9    without prejudice to the Landlord's contention that, on a

10   proper record, with, you know, proper procedures, which I'm

11   assuming would include discovery under the Part VII rules,

12   that, in fact, the default that resulted in the assertion

13   that another $215,000 and change was owing, in fact, did

14   occur, and was -- that there's no defense to that default.

15         There is a related proposition that I haven't

16   given a whole lot of thought to, which is that the default

17   here is a payment default, and the Notice in respect of the

18   termination because of the payment default didn't occur

19   until the post-petition period.  You may well have a

20   response to that.  I think I understand what it is, but that

21   may affect the analysis, too, as opposed to a performance

22   default that, frankly, can't -- you know, you can't rewrite

23   that, if it, in fact, occurred.  But I'm going to, therefore

24   -- you know, the Debtor can send in an order to that effect.

25   They should run it by you to make sure, you know, the

1     reservation -- I'm not a big one on reserving rights, but I

2     think it's worth putting into the Order here.

3               MR. COLLINS:  I think the ruling is clear that the

4     right to argue that the lease is terminated is preserved,

5     and I --

6               THE COURT:  It absolutely is.

7               MR. COLLINS:  -- I appreciate it, Your Honor.

8               THE COURT:  But I -- just to close out the record

9     on this, then, the motion before me seeks a determination

10    that the lease between the parties here terminated, for

11    purposes of § 363(b)(10), either -- well, in fact, it

12    terminated post-petition.  But § (b)(10) says that "The

13    filing of a petition under the Bankruptcy Code does not

14    operate as a stay under subsection (a) of this section of

15    any act by a Lessor, under a lease of non-residential real

16    property that has terminated by the expiration of the stated

17    term of the lease before the commencement of, or during, a

18    case under this title, to obtain possession of such

19    property."  I'm going to go back and emphasize the phrase:

20    "and has terminated by the expiration of the stated term of

21    the lease".  The leading treatise on bankruptcy, Collier on

22    Bankruptcy, notes, at Paragraph 362(b)(10), quote: "It

23    should be noted that this exception is limited to leases

24    under which the stated term expires, not to leases

25    terminated for other reasons.  Leases completely terminated

Page 32

1   pre-petition should not be considered property of the estate

2   because the Debtor retains no legal or equitable interest

3   after termination, except, perhaps, possession, to which the

4   automatic stay would apply.  However, a lessor should be

5   stayed from terminating a lease for non-payment of rent, or

6   other cause, after commencement of a bankruptcy case.

7   Moreover, the Lessor remains stayed from seeking to retake

8   the premises, even after automatic termination of a lease

9   upon an event of default the termination occurs post-

10  petition.  Only when the termination is based on expiration

11  of the agreed term of the lease, may the stay be

12  disregarded," close quote.

13         The most recent case to construe this section, and

14  there's a parallel section in § 541(b)(2) of the Bankruptcy

15  Code, I think, is In re Hotel Equities, LLC, 586 B.R. 870

16  (Bankr. E.D. Mich.) 586 B.R. -- I'm sorry, 2008.  Now, in

17  that case, the lease actually did terminate pre-petition,

18  but not because of the expiration of its stated term.  It

19  terminated because of the consequential termination

20  provision for a breach, and the Court there noted that a

21  number of courts have taken the position that termination,

22  under those circumstances, fits within § 362(b)(10), but

23  takes the view with, I think, the majority of the courts and

24  Collier's that (b)(10), by its plain terms, is much more

25  narrow, and just refers to the stated term of the lease, as

Page 33

1  opposed to a consequential termination or simple

2  termination.  The law is somewhat confused in some of the

3  cases cited for the contrary proposition that the Michigan

4  court disagreed with.  They exacerbate that confusion by the

5  two very related concepts that are articulated by Collier's.

6  One is termination of the stated term, the other is

7  termination because the lease is over, in other words, for a

8  consequential default.

9          And that's complicated here by the fact that the

10  actual termination did occur post-petition, although the --

11  for a payment default, although the notice was sent pre-

12  petition, following a Default Notice that was pre-petition.

13  But, as I said during your oral arguments, I think some of

14  those cases that don't make the distinction that Collier's

15  makes, and I think that the statute requires, rely, in large

16  part, on In re Policy Realty Corp., 2000 U.S. App. LEXIS

17  8846 (2d Cir. May 2, 2000), and in the lower Court District

18  Court opinion that appears at 242 B.R. 121 (S.D.N.Y. 1999).

19          But in that case there was really nothing left,

20  and the Debtor didn't have possession anyway, so, the second

21  proposition stated by Collier's applies, and the application

22  of § 362(b)(10) I view as dictum.  That, I believe, is

23  confirmed by a number of opinions, including Judge Garrity's

24  opinion recently in, In re Artisanal 2015, LLC., which is at

25  2017 Bankr. LEXIS 3813 (Bankr. S.D.N.Y. Nov. 3, 2017), at

1    pages 29-33, and Judge Garrity's discussion about how, under

2    New York law, the issue of consequential defaults, which

3    this is -- which is what this is in the facts before me, are

4    dealt with through the Yellowstone injunction process and,

5    even under that process, the fact that a Yellowstone

6    injunction expires does not mean that the lease has been

7    terminated as a result of the consequential default because

8    there has not yet been a determination by a court that the

9    default occurred.

10           As stated by Warren's Weed New York Real Property,

11   § 82.30, subparagraph 281: "A tenant served with a notice to

12   cure an alleged violation of a lease has two options.  She

13   can either comply with the landlord's demands or litigate

14   the matter.  However, with the landlord's -- "complying with

15   the landlord's demands can be burdensome, however; the lease

16   contains a conditional limitation permitting the landlord to

17   terminate the lease in the event of a tenant's failure to

18   cure the breach prior to the deadline for the cure, the

19   tenant who fails to cure in time will be subject to

20   eviction,"  but then, and this is the important part of the

21   section: "in the event the court ultimately determines that

22   the tenant's conduct constituted a breach of the lease."

23   That hasn't happened here yet.  There hasn't even been a

24   warrant of eviction.  There hasn't been a lawsuit started

25   over the dispute.

Page 35

1           So, the lease here, I believe, until the dispute

2    is resolved some way, and it may be resolved very quickly

3    under some of the theories that the landlord stated in its

4    reply brief, but until the dispute is resolved, the lease is

5    not terminated under the default provisions, and, therefore,

6    can still be a live lease where the automatic stay applies.

7    That is separate and apart from the fact that the Debtor

8    here is still in possession, unlike the Debtor in Policy

9    Realty.  Now, their possession may well simply lead to a

10   very quick lift stay order, but it's not, arguably, covered

11   by Policy Realty either.  But I think the main point is

12   that, there is a live lease until the dispute is decided,

13   and therefore the stay still applies.  § 362(b)(10) doesn't

14   apply, it's still property of the estate: 541(b)(2),

15   therefore, doesn't apply, and the motion will be denied on

16   that basis.

17           I'll note that, whether a live lease is or isn't -

18   - whether a lease is still alive or not, is a tricky

19   question, even after the issuance of a warrant of eviction,

20   given that courts in the Southern District have permitted

21   debtors, even after the issuance of a warrant of eviction,

22   that have convinced the judge to approve assumption on the

23   condition of their warrant being vacated under § 749 of

24   R.P.A.P.L., that the court will still keep the stay in place

25   to let the debtor under appropriate circumstances, go back

Page 36

1    to State Court and seek the vacatur of the warrant of

2    eviction, as discussed by a number of courts, including

3    Judge Glenn in the Mad Lolo case that the parties have

4    cited.  So, I'm going to ask the Debtors to prepare an

5    order, as I said, and they should run it by you before

6    submitting it to Court.

7              MR. COLLINS:  One housekeeping matter, Your Honor.

8    The Debtor has been paying, and the landlord has been

9    accepting --

10             THE COURT:  I think the landlord should certainly

11   feel free to cash the check without prejudice to these

12   rights.

13             MR. COLLINS:  Yeah, the --

14             THE COURT:  You're not going to be getting lured

15   into a finding that you've waived the default by cashing a

16   check.

17             MR. COLLINS:  We would ask that that premise be

18   applied to the real estate taxes, which are now --

19             THE COURT:  Well, if it's covered by the lease, I

20   mean, that's part of the rent.  That's -- you know.

21             MR. COLLINS:  Thank you, Your Honor.

22             THE COURT:  Okay.  That doesn't require the Debtor

23   to pay the $215,000 because that's -- we don't know whether

24   that's actually owing or not.

25             MR. COLLINS:  I understand.

1            THE COURT:  Okay.

2            MR. COLLINS:  Thank you, Your Honor.

3            THE COURT:  Okay, thank you.

4            MR. FAIL:  Thank you, Your Honor.  The next item

5    on the agenda are the Motions filed by Milton Manufacturing,

6    LLC.  I'm not sure if Milton's attorneys -- oh, its

7    attorneys are here.

8            MS. BENCZE:  Yes.  Okay.  Nola Bencze of Clark

9    Hill on behalf of Milton Manufacturing, LLC.  Your Honor,

10   we're here on two motions today.  The first Motion is to

11   Compel the Payment of Administrative Expense, Pursuant to §

12   503(b)(1), or in the Alternative, Pursuant to § 503(b)(9).

13   I do note --

14           THE COURT:  And that's with respect to certain

15   purchase orders?

16           MS. BENCZE:  Correct, Your Honor, certain --

17           THE COURT:  Prior to the motion.

18           MS. BENCZE:  -- of the Craftsman -- Craftsman

19   Tools.

20           THE COURT:  Right.  That were delivered to Sears

21   in California on October 18th.

22           MS. BENCZE:  Correct, Your Honor.

23           THE COURT:  Okay.  Pursuant to pre-petition

24   purchase orders.

25           MS. BENCZE:  Right, correct.  I mean, I think,

Page 38

1    Your Honor, you know, not to sort of jump into it, but I

2    could jump into it.  There doesn't seem to be a dispute that

3    the goods were ordered pre-petition.  I don't know what

4    (indiscernible).  The case was filed October 15th, goods

5    were delivered on October 18th, and I believe, then November

6    9th.  And the Debtor took the goods, accepted the goods, and

7    as far as we know, what we understand, they sold the goods,

8    and have profited from the sale of those goods.  And as a

9    consequence, owes us $377,132.16.  We have, in our motion

10   here, relied upon an analysis of the First Day Order that

11   was signed, dealing with a shipment of these pre-petition

12   goods, as well as an analysis of § 503(b)(1).  The Order,

13   however, Your Honor, is extremely critical (indiscernible).

14          THE COURT:  I -- I tried to -- I actually don't --

15   in the binder I have, I don't have a copy of that Order.

16   Does -- do either of you have one that I could --

17          MS. BENCZE:  I do.  I have some hieroglyphics on

18   it, though, Your Honor.

19          THE COURT:  Well --

20          MS. BENCZE:  I don't have a clean copy.

21          THE COURT:  Do you have an extra copy, on the

22   Debtors' behalf?  I mean, I don't think the motion itself

23   refers to the Order.  I think in the reply you refer to it.

24          MS. BENCZE:  Yes, I did.

25          MR. FAIL:  May I approach, Your Honor?

1          THE COURT:  Sure.  Yeah.  Thanks.  Okay.

2          MS. BENCZE:  Well, actually, I think, in our

3     motion, original motion due would refer to the Order, but

4     because the Debtor, in its opposition to us, sort of said,

5     we were kind of acting like we were entitled.

6          THE COURT:  Well --

7          MS. BENCZE:  And I don't want the Court to think

8     that we're trying to jump ahead of anybody.

9          THE COURT:  No, I'm just -- I really am just

10    trying to figure out which -- what paragraph should I be

11    focusing on.

12         MS. BENCZE:  It's Paragraph 8, Your Honor.

13         THE COURT:  Paragraph 8?  Okay.

14         MS. BENCZE:  Eight.

15         THE COURT:  Okay.  So, that says: "All undisputed

16    obligations of the Debtors arising from the post-petition

17    delivery or shipment" by -- "of goods under the pre-petition

18    orders are granted administrative expense priority status,

19    pursuant to § 503(b)(1)(a)," so, "post-petition delivery or

20    shipment," and so here, they're delivered post-petition.

21    So, that --

22         MS. BENCZE:  Correct, Your Honor.

23         THE COURT:  When I say, why is that disputed?  I

24    don't know.

25         MS. BENCZE:  No, I don't think there is a dispute.

1          THE COURT:  No, I'm looking over at the Debtors'

2     counsel.

3          MS. BENCZE:  Oh, I'm sorry.

4          MR. FAIL:  Yeah.

5          THE COURT:  Okay.

6          MR. FAIL:  So, for the record, Garrett Fail, Weil,

7     Gotshal & Manges for the Debtors.  We did dispute.  We

8     dispute a number of things, but what we said in our

9     pleadings was, we weren't going to dig in.

10          THE COURT:  At this point.

11          MR. FAIL:  The seven P.O.s -- at this point, to

12     figure out, if and when those seven P.O.s were delivered to

13     ports abroad, if and when they shipped, if and when they

14     were received, if and when they were sold.

15          THE COURT:  All right.

16          MR. FAIL:  Completely didn't engage in this

17     exercise, Your Honor.

18          THE COURT:  So, you're relying more on the second

19     clause in this paragraph, it's after saying that they're

20     granted administrative expense priority status, which says,

21     quote: "And the Debtors are authorized, but not directed, to

22     pay such obligations in the ordinary course, consistent with

23     the party's business practices."

24          MR. FAIL:  Your Honor, Your Honor, on that point,

25     we also dispute that there could be reliance upon someone to

1   ship and drop off goods to a consolidator abroad as if they

2   could have --

3            THE COURT:  No, that's, in fact, their § 503(b)(9)

4   point, I think.

5            MR. FAIL:  Well, also, that there's a reliance on

6   this, that's my only point.

7            THE COURT:  Okay.

8            MR. FAIL:  First of all, there's no evidence, but

9   second of all, that someone could deliver --

10           THE COURT:  Anyway, but those disputes, you

11  haven't gotten to the facts on that.

12           MR. FAIL:  No, but that anybody could necessarily

13  rely on that order, after they've delivered goods, is

14  something that we would contest.  That was --

15           THE COURT:  I'm sorry, you're saying that they

16  delivered the goods after the order was entered, not but --

17  but these here, they delivered before the order was entered.

18           MR. FAIL:  That's my point, Your Honor.

19           THE COURT:  Arguably.  If they did -- if the facts

20  were that they delivered the goods before the order was

21  entered, how could you rely on the order?

22           MR. FAIL:  Thank you, Your Honor.

23           THE COURT:  Okay.  All right.

24           MS. BENCZE:  Right.  Your Honor, this is the

25  issue.  I think that they defined the pre-petition orders,

Page 42

1    which are mentioned in your Order, it's defined in their

2    Motion that was seeking this Order from the Court.  And in

3    that Motion, they define the pre-petition orders as $162

4    million dollars' worth of merchandise from suppliers --

5              THE COURT:  Right.

6              MS. BENCZE:  -- or vendors that will not be

7    delivered until after the commencement.  So, to me --

8              THE COURT:  It's really a -- ultimately, that's a

9    fact issue, is whether people relied on that.  I don't even

10   know if your clients read it, that motion.  So, I think the

11   real point is, should --

12             MS. BENCZE:  But that's -- sorry.

13             THE COURT:  -- should I focus on those issues or

14   should I wait for a point when administrative expenses are

15   going to be paid, generally, in the case?

16             MS. BENCZE:  Well, this is our problem, Your

17   Honor.  I mean, I have a client --

18             THE COURT:  It's a timing issue, in other words.

19             MS. BENCZE:  Yeah, it's a timing issue.

20             THE COURT:  Yeah.

21             MS. BENCZE:  And you know, nothing new in

22   Bankruptcy Court, people are in need of money.  The whole

23   purpose of the § 503(b)(1) is to get paid for administrative

24   expenses, and we believe we even fit into that, if you were

25   to just analyze the statute on its own.  So, there are other

Page 43

1    administrative creditors who are getting paid, and perhaps

2    to our detriment, if, in fact, the estate becomes

3    administratively insolvent.

4            THE COURT:  Right.

5            MS. BENCZE:  So, it's the -- as Your Honor

6    correctly pointed out, it's the timing of this, and

7    thankfully, they have filed a motion for § 503(b)(9).

8            THE COURT:  Right.

9            MS. BENCZE:  Right?  They did last night, I

10   haven't looked at it, but it's sort of what we were hoping

11   would happen, and so --

12           THE COURT:  They've also -- they've also --

13           MS. BENCZE:  -- if not now -- if not now, when?

14           THE COURT:  They've also committed to turn, right

15   away, maybe this afternoon Mr. (indiscernible) will let her

16   know, but right away, to negotiate a plan and exclusivity

17   that has been extended for only a very short period.  We're

18   really talking, I think, about 60 days.  You can't confirm a

19   plan without paying all the administrative expenses in full.

20   We also have -- I've been told that the ESL deal closed.

21   The, ESL agreed to assume a certain dollar amount of

22   payables.  So, it does appear to me that -- well, I mean, I

23   have a question about that, which is, what is the timing on

24   that -- on actually identifying those payables and getting

25   them paid, but it seems to me that, even without that,

Page 44

1    there's a reasonable possibility, or probability, that a

2    plan would be confirmed, or we'll know that one can't be

3    confirmed, in which case, administrative expenses will be

4    paid pro rata within a couple of months.  Is that -- you

5    know.  I -- I understand that a number of people who are

6    vendors to Sears are hurting, but can they wait a couple of

7    months?

8            MS. BENCZE:  Well, you know, I have -- before

9    today, I was contacted by a few vendors similarly situated.

10           THE COURT:  Right, right.

11           MS. BENCZE:  There are vendors, I guess, that

12   consider themselves -- they had goods on the water, so to

13   speak, on their way from China that were about to be

14   delivered, and so, you know, they do look to this Order.

15           THE COURT:  Well, but the Order is very clear that

16   the timing of the payment is open.  I mean, that clause I

17   read, that, you know, it doesn't say it shall be paid

18   immediately.

19           MS. BENCZE:  Right.

20           THE COURT:  The Debtors are authorized, but not

21   directed, to pay in the ordinary course.

22           MS. BENCZE:  Right.  Well, we wanted to bring that

23   to your attention.

24           THE COURT:  Okay.

25           MS. BENCZE:  The second part of that motion had to

Page 45

1   do with § 503(b)(9) but apparently, there's now a Motion

2   pending, but --

3            THE COURT:  Well, the (b)(9) point, I have not

4   ruled on this issue.  I don't know whether anyone in the

5   Southern District has ruled on this issue.  I know there's

6   law in the Third Circuit that really distinguishes between

7   physical delivery to the Debtor and delivery on board a ship

8   or to an agent.  That does kind of leave an odd glitch,

9   although maybe this Order is -- the whole point of this

10  Order was to assure people that that glitch wouldn't apply,

11  because you have § 503(b)(1).  But, it's all -- I don't --

12  to me, it's going to be one or the other.

13           MS. BENCZE:  So, you see resolution when that's to

14  be resolved?

15           THE COURT:  Yeah.  I mean -- yeah, Mr. Fail, as

16  I'm sure will tell me, we haven't looked at the facts here.

17  We don't know if, in fact, these deliveries occurred the way

18  the -- your motion says they did, and we reserved our rights

19  on that, and that's fair.  But if, in fact, they were

20  delivered post-petition, it might not -- it wouldn't fall

21  under § 503(b)(9), but it -- I don't see why it wouldn't

22  fall under (b)(1).

23           MS. BENCZE:  Okay, so --

24           THE COURT:  Depending on whether they delivered,

25  actually, to Sears.

1          MS. BENCZE:  My understanding is they delivered to

2     their warehouse.

3          THE COURT:  Right.

4          MS. BENCZE:  That's my understanding.

5          THE COURT:  Okay.  So, shall we deal with the 503

6     motion first, and then the separate assumption motion,

7     compel assumption or rejection motion, so let me hear from

8     Mr. Fail on the --

9          MS. BENCZE:  Sure.

10          THE COURT:  -- 503 motion.

11          MS. BENCZE:  Okay.  I'm sorry.

12          MR. FAIL:  As long as both microphones can hear

13     me, Your Honor, I'm happy to stand here.

14          MS. BENCZE:  Thank you.

15          MR. FAIL:  Again, for the record, Garrett Fail,

16     Weil, Gotshal for the Debtors.  Your Honor, I made clear

17     before, we haven't investigated the facts because our

18     response is that this shouldn't go forward now.

19          THE COURT:  In terms of payment?

20          MR. FAIL:  Yeah.  Milton's suggestion that the

21     harm that others go first, it should be remedied by them

22     going first, is not the approach that the Debtors have

23     taken.  The Debtors are saying, there's a bar date that's

24     being requested.  All parties can file their claims.  Claims

25     that are filed will be allowed unless objected to.  That's

Page 47

1   the simplest path.  Creditors shouldn't be encouraged to run

2   to the Court to seek the allowance ahead of that, or to jump

3   the line, or to set the schedule --

4          THE COURT:  Which actually creates more misery and

5   expenses.

6          MR. FAIL:  Incredible amount, Your Honor, for a

7   $300,000 Milton expected needs to be reconciled, prior to a

8   $5 billion-dollar sale closing; we are paying attention to

9   small and large vendors and small and large things in these

10  cases, but the Debtors need the flexibility to administer

11  the cases in the most efficient way for all creditors.

12         THE COURT:  Can you remind me --

13         MR. FAIL:  Yeah.

14         THE COURT:  -- the ESL sale, the buyer assumed

15  $166, I think, million of payables.  Is that -- if this is,

16  in fact, a post-petition payable, is that the bucket it

17  would fall under?  Is there some other bucket it might fall

18  under?

19         MR. FAIL:  Whether or not this is a post-petition

20  payable, Your Honor, the Debtors will investigate all

21  claims, whether they're pre-petition --

22         THE COURT:  Well, I'm asking you the question.

23         MR. FAIL:  -- no, I know, I know, I just want to

24  state for the record.  Additional facts that haven't been

25  stated here, but I think that we put in our reply, but if

1    not, I'm happy to add right now, title passes, in general,

2    for all foreign vendors to the Debtors, when they deliver

3    them to a consolidator or the port in foreign places, such

4    as Hong Kong, Bangladesh, and India.

5              THE COURT:  Right.

6              MR. FAIL:  At that point in time, the Debtors may

7    take the position that a claim arose.  That would put it,

8    perhaps, outside of the § 503(b)(9), and the delivery

9    overseas, over water, and received by the Debtors may or may

10   not, we think not, incur an administrative expense, but

11   we'll brief that at a later date.

12             THE COURT:  All right.

13             MR. FAIL:  The point of the Debtor that's applied

14   here --

15             THE COURT:  And then the question is -- there's

16   the Order, too.

17             MR. FAIL:  The Order, Your Honor, was -- we'll

18   deal with that interpretation, again --

19             THE COURT:  Okay, anyway --

20             MR. FAIL:  -- I'll reserve all rights.  I'll --

21             THE COURT:  -- you're reserving your rights.  I'm

22   not -- I'm not trying to box you in to say, this falls

23   within, but I'm just saying, if it's --

24             MR. FAIL:  I'll respond.

25             THE COURT:  -- if it's an administrative expense,

Page 49

1    if it's a post-petition payable, is that the bucket that

2    would be applied in the ESL deal, or some other buckets too?

3            MR. FAIL:  The Debtors are going to be working

4    with ESL on a number of different fronts, as we get into the

5    post-closing phase --

6            THE COURT:  Right.

7            MR. FAIL:  -- including the thousands of contracts

8    that are going to be determined to be assumed or assigned,

9    and I know that's the next motion, but they're very plain,

10   Your Honor.

11           THE COURT:  Certain -- They could be, because

12   you'd have to cure the default.

13           MR. FAIL:  There's 60 days to figure out whether

14   contracts are going to be assumed or assigned, and then

15   there's the purchase orders that you heard about at the

16   trial, Your Honor, and whether or not certain post-petition

17   liabilities are assumed.  It depends on whether these are

18   post-petition liabilities, and it depends on which ones are

19   going to get assumed.  But, we're going to be working with

20   ESL, but the point is, it hasn't been determined yet.  I

21   can't say for sure right now, and that's why this Motion is

22   premature.  Claims may be satisfied.  All we're saying, Your

23   Honor, is, we waited for the bar, then send the reply.  We

24   waited to file a bar date so we didn't trigger flooding of

25   claims for protection agreements with other claims for

Page 50

1   contracts that were assumed, so that there wouldn't be

2   needless administrative expenses, the parties filing claims

3   having to reconcile for things that there are no claims.

4   The Debtors need time to figure out which liabilities pre,

5   priority or post, are going to be paid for, either by the

6   reorganized, or the going forward concern New Company, or by

7   the Debtors, in connection with the sale.  It's possible

8   that even cure amounts -- post-petition cures, will be paid

9   through our -- by the Debtors.  We need to let that play

10  out, and I certainly can't make any representation for $370-

11  something thousand dollars of seven invoices for Milton

12  today.

13          THE COURT:  So, there's 60 days to assume

14  contracts --

15          MR. FAIL:  Under the contracts.

16          THE COURT:  -- if this -- under the ESL contract,

17  if the purchase orders that we're going to talk about next,

18  are in fact, executory, ESL would, I'm assuming, unless they

19  find some other supplier, they're going to want to assume

20  that.

21          MR. FAIL:  I can't make any representation on

22  that.

23          THE COURT:  But anyway, in 60 days, you'll know

24  one way or the other.

25          MS. BENCZE:  Your Honor --

Page 51

1          MR. FAIL:  We'll know one way or another.

2          THE COURT:  And on the non-executory contracts,

3     and just assume for a moment that these purchase orders have

4     already been performed, except for the payment of money, so

5     that'll be non-executory even on that basis, whether or not

6     they're executory as purchase orders, ever.  You're saying -

7     -

8          MS. BENCZE:  Your Honor --

9          THE COURT:  -- let me -- I'm just trying to make

10    sure I understand --

11         MS. BENCZE:  Oh, I'm sorry.

12         THE COURT:  -- what Mr. Fail is leading up to.

13    You're saying that there would be a process whereby people

14    would submit their claims and the Debtors will go through

15    those, in some instances with ESL, which may have other

16    dealings with these vendors, going forward, and come up with

17    a -- with, in essence, a payment plan?

18         MR. FAIL:  I'm saying, Your Honor, we'll certainly

19    have more clarity in this next 60 days.  The sale closed

20    Monday afternoon.  It's Thursday right now, maybe?  The

21    parties have been working on it, on a number of issues, and

22    all we're saying, Your Honor, is, file a proof of claim.  If

23    they think they're entitled to priority, they can mark the

24    box.  If they think they're entitled to administrative

25    expense, they can mark the box.  § 503(b)(9) claims aren't

1    being paid outside of the assumption of liabilities of the

2    ESL transaction.  They're -- it's -- Milton isn't being

3    prejudiced.  These aren't perishable goods that we're

4    talking about.  There's absolutely no cause --

5            THE COURT:  The only prejudice is that they're not

6    getting paid.  But --

7            MR. FAIL:  Amongst other people, and it's not

8    obvious that they're entitled to it.

9            THE COURT:  -- the Code doesn't -- the Code

10   doesn't require payment of administrative expenses until

11   confirmation.  The Debtor has discretion to pay them, and

12   the Debtor needs to be careful not to prefer some over

13   others, but even there, they have some discretion.  So, it

14   seems to me that I should adjourn this motion.

15           MS. BENCZE:  I just have one question that I was

16   going to ask.  I believe there has been a list filed of the

17   contracts, potentially, to be assumed with a cure?

18           THE COURT:  That's a -- but that's not a final

19   list.

20           MS. BENCZE:  I know it's not -- I know it's not a

21   final list, but I just wanted to alert -- we're not on it.

22           THE COURT:  Okay.

23           MS. BENCZE:  So, to us, this function was not

24   premature.

25           THE COURT:  Well, but they have 60 days.

Page 53

1              MS. BENCZE:  Fine.

2              THE COURT:  So, I -- you know.  I think your

3     client should ask themselves, are there other people that

4     could buy these Craftsman tools?

5              MS. BENCZE:  Well, I mean, our relief is -- part

6     of our relief on all these motions was to be able to sell it

7     to -- if they don't want to assume the contract, was to sell

8     it to Stanley, or an authorized dealer.

9              THE COURT:  Right, but they are -- they are, you

10    know, they're Craftsman tools.

11             MS. BENCZE:  Yeah.

12             THE COURT:  A couple months is not going to --

13    they're not going to, you know --

14             MS. BENCZE:  I think we're paying -- on the

15    executory contracts, we're paying for storage, so that's

16    part of it.

17             THE COURT:  Right, but I'm just focusing on the

18    503 motion at this point.

19             MS. BENCZE:  Yes.

20             THE COURT:  It's not like cheese.

21             MS. BENCZE:  Not going to go bad?

22             THE COURT:  They're screwdrivers and things like

23    that.

24             MS. BENCZE:  Some cheese tastes good when it goes

25    bad.

1            THE COURT:  Well, it depends on the cheese.

2            MS. BENCZE:  Yeah.

3            THE COURT:  So, can we turn to the 365 motion,

4    now?

5            MS. BENCZE:  Okay, Your Honor.

6            THE COURT:  It's a Motion to Compel Assumption or

7    Rejection.

8            MS. BENCZE:  Yes, Your Honor.

9            THE COURT:  I guess, one issue I had there is, I'm

10   not sure -- it's a two-edged sword for both of -- both

11   parties here.  The non-Debtor party to a non-executory

12   contract is supposed to perform.  I'm not sure your client's

13   performing.  On the other hand, the Debtors may still want

14   to say that it's either executory or non-executory.  They

15   want to, I think, preserve their flexibility on that.

16           MS. BENCZE:  Well, they haven't said it's non-

17   executory.

18           THE COURT:  Right.

19           MS. BENCZE:  They reserved their rights.

20           THE COURT:  They reserved their rights, and so, I

21   guess the issue I have -- they're not -- are they demanding

22   that they perform, though?  Are they demanding that these

23   tools be delivered?

24           MS. BENCZE:  No.

25           MR. FAIL:  I don't think so, Your Honor.

1             THE COURT:  All right, so, I think -- I don't want

2      to put words in your mouth, but tell me if I'm wrong.  It

3      seems to me that --

4             MR. FAIL:  And Your Honor, I think specifically

5      not.  I think that's the issue.  I think specifically, if we

6      had asked for them to deliver them --

7             THE COURT:  Yeah.

8             MR. FAIL:   -- then we would be obligated to pay

9      for them, and I think specifically, we're not --

10            THE COURT:  We're not doing --

11            MR. FAIL:  -- which is why they're holding them,

12     so that they don't have to be paid for.

13            THE COURT:  I mean, the criteria for compelling

14     assumption or rejection, to my mind, it's a hard -- it's a

15     pretty hard burden for the movant to compel assumption or

16     rejection, and the most appealing case for the movant is

17     where the Debtor is saying to the non-Debtor contract party,

18     perform, perform, perform, you have to, 365 requires it, and

19     by the way, we're not paying you, or there's a real risk

20     we're not going to pay you.  Even there, the Second Circuit

21     in Burger Boys said, that's not a per se reason to compel

22     assumption.  But, it's a pretty appealing reason, under the

23     facts, and the Court has a fair amount of discretion.  But,

24     I didn't get the impression here that that -- and then Mr.

25     Fail just confirmed it, that that's what the Debtor is

1   saying.  You know, you are incurring some storage costs, I

2   appreciate that, but they're not taking, at this point, the

3   tools.

4           MS. BENCZE:  Well, that's why I'm saying, reject.

5   That's what --

6           THE COURT:  Well, but -- but they -- may -- the

7   buyer may well assume them.  And, you may want them to be

8   assumed.  If -- you know, because then they'll pay.  And,

9   the reason the burden is heavy to compel assumption or

10  rejection is that, that's an option that debtors have.  I

11  mean, that -- you know, the Bankruptcy Code gives debtors

12  that flexibility, to decide -- and here again, we have a

13  deadline.  I mean, it's 60 days, and, hopefully, they'll let

14  you know before then, and I'm assuming, for their larger

15  vendors at least, they'll be very quickly trying to -- and

16  this is what I've told -- this was my last parting word to

17  Mr. Lampert's representative who was in the courtroom, which

18  is, reach out right away to the vendors and -- as well as to

19  the employees and you know, establish those -- get those

20  relations on good terms.

21          So, I'm assuming that that will happen, if your

22  client is an important vendor, and that -- you know,

23  Craftsman tools are certainly important to Sears, so I would

24  think that they'd be reaching out to them before the 60

25  days.  But it's -- we know there's a 60-day limit.  So, to

Page 57

1    me, that does not seem to be unduly burdensome under the

2    case law.  You know, Judge Lifland dealt with this at some

3    length in the Dana Corp case, 350 B.R. 144 (Bankr. S.D.N.Y.

4    2006).  It's a balancing test, but unless the -- to my mind,

5    unless the non-debtor contract party is really being put to

6    the wall by being forced to perform without any real

7    assurance that they're going to get paid, and then, the --

8    in almost every case, they're going to lose.  And even

9    there, you know, in, in re Burger Boys 94 F.3d 755 (2d. Cir.

10   1996), even under that scenario, the Second Circuit said,

11   you know, that's not a per se reason to compel assumption or

12   rejection.  There may be a good reason to delay assumption

13   or rejection, even if the Debtor isn't paying.  But here,

14   they're not requiring performance, so, I'm going to -- I

15   think both of these motions should be adjourned.

16           MS. BENCZE:  Yes, Your Honor.

17           THE COURT:  We can see where we are at the next

18   omnibus.  I'm expecting -- as well as there being a report

19   on the plan progress, we can have a report on the

20   reconciliation process on the administrative expenses, and

21   we'll see where we are then.  Hopefully, they'll give that

22   to you before the hearing, and you'll say, let's adjourn

23   this another 30 days.

24           MS. BENCZE:  Okay, Your Honor.

25           MR. FAIL:  Your Honor --

1              MS. BENCZE:  Is the next omnibus this month?

2              MR. FAIL:  No, the next omnibus is --

3              MS. BENCZE:  March?

4              MR. FAIL:  -- is March 21st, I believe.  But I

5    think the bar date order and the § 503(b)(9) procedures

6    order, we've requested that any requests that are filed be

7    adjourned until April, in the very least.  So we would

8    expect that this --

9              THE COURT:  Well, we'll see where we are.  I'm

10   assuming that there will have been some outreach by ESL

11   before then, at least, to some of these -- to the vendors.

12             MR. FAIL:  I hope that's the case.

13             THE COURT:  I hope so, too.

14             MS. BENCZE:  Me too, Your Honor.

15             THE COURT:  Okay.

16             MS. BENCZE:  All right, thank you very much.

17             THE COURT:  Okay, thank you.

18             MR. FAIL:  Thank you.  Your Honor, the next item

19   on the agenda is another third-party motion, but No. 5 on

20   the agenda.  It's the Motion for Relief from Automatic Stay

21   filed by Mr. Ng, and I see Mr. Ng is in the courtroom today.

22             THE COURT:  Right.

23             MR. NG:  Good morning, Your Honor.

24             THE COURT:  Good morning, and you're Mr. Ng?

25             MR. NG:  Yes, Your Honor.

1          THE COURT:  And you're representing yourself?

2          MR. NG:  Yes, Your Honor.

3          THE COURT:  Okay.

4          MR. NG:  Briefly, the last time we were in here, I

5     was here, you indicated that if I identified insurance that

6     the defendants -- that the Debtors did not identify, then

7     most likely, it would mean that they would have perhaps okay

8     with the stipulation.

9          THE COURT:  Well -- yeah.

10         MR. NG:  I have not received a stipulation.  I

11    received a letter asking me to withdraw, and then --

12         THE COURT:  Well, in the Debtors' response to your

13    Motion, they say that they have insurance for these types of

14    claims, but there is a $5 million-dollar limit on it, and

15    they've already -- that's already been exceeded.  So -- and

16    secondly, that there's no duty to defend provision in that

17    insurance that would require the insurer to take over the

18    defense of your litigation.  So, while there was insurance,

19    at some point, and there is a policy that might cover your

20    claim, it's, they say, as a factual matter, it's not

21    available at this point, and there's no insurance for the

22    defense costs, so they would have to be paying the lawyers

23    for litigation of this pre-petition claim.

24         MR. NG:  Well, that's not what I received in the

25    email last week.

Page 60

1          THE COURT:  Well, okay, but do you have anything

2     to show that there actually is live insurance that would

3     cover them?

4          MR. NG:  Well, yes.  They indicated to me that

5     there was a $5 million-dollar insurance, and that -- with a

6     $5 million-dollar deductible.  My understanding, from

7     information that I gathered that, they -- is the Debtor will

8     not be forced to pay a $5 million-dollar deductible because

9     the insurance is supposed to pay first.

10          THE COURT:  No, but -- that's fair, but they say

11     that the general liability policy that covers incidents, you

12     know, between August 1, 2016 and August 1, 2017, has a $5-

13     million aggregate limit, and that paid lawsuits have already

14     exceeded that limit.  So, the fact that there is a $5-

15     million deductible is another fact, but their key point is

16     that, there's -- they've exceeded the limits of the policy,

17     at this point.

18          MR. NG:  That's not the insurance that I'm looking

19     at here, where I'm -- they -- the policy is that the general

20     liability that I'm looking at, dated August 1st, 2018 to

21     January 1st, 2019.

22          THE COURT:  But when did your accident happen?

23          MR. NG:  The accident that I'm making claim for --

24          THE COURT:  Yeah.

25          MR. NG:  -- is -- it happened August 2018, August

1    2018 and in November 2018.  November 2018.  That's what --

2    that's what I'm looking at.

3              THE COURT:  When did -- when did -- what was the

4    accident?

5              MR. NG:  Okay, the first issue came up with

6    respect to the month that lead me to see Dr. Ed to get the

7    medical treatment now, I have been on these medications.

8              THE COURT:  Right, but when did that happen?

9              MR. NG:  Just August -- November 2018.

10             THE COURT:  No, but --

11             MR. NG:  And it's in my --

12             THE COURT:  But your complaint is a pre-bankruptcy

13    complaint.

14             MR. NG:  Well, no, no, no, Your Honor, I had two

15    separate matters before the Bankruptcy Court.  One of which,

16    an action I already filed, and one is to filed November --

17    which I had --

18             THE COURT:  No, but that's -- let me just -- I --

19             MR. NG:  They have been fully amended from --

20             THE COURT:  I have a copy of the complaint, here -

21    -

22             MR. NG:  Yes, and I'm --

23             THE COURT:  -- which is Exhibit -- well, it's a

24    Summons of Complaint, Supreme Court, State of New York, it's

25    dated March 28, 2018.

1              MR. NG:  Yes.

2              THE COURT:  And it says, this is an action for

3    leave to settle ongoing disputes concerning --

4              MR. NG:  Yes.

5              THE COURT:  -- neglect, (indiscernible) and

6    refusal by Defendant (indiscernible) claims (indiscernible)

7    services to investigate a latent injury claim, which was

8    filed with them as a result of an exposure to toxic

9    substances in July 2010 --

10             MR. NG:  Yeah.

11             THE COURT:  -- and then -- and a neglected

12   (indiscernible) by Defendant Kmart to safeguard claimant's

13   medical records, and then if you go down, it says: "Kmart's

14   data systems was breached several times between January 2013

15   and May 2017."

16             MR. NG:  Right.

17             THE COURT:  So, that seems to me to be the period

18   where this injury happened, as far as the Debtor was

19   concerned, is the medical records breach.

20             MR. NG:  No, Your Honor, there is a legal matter

21   that I had for --

22             THE COURT:  Well, I'm just dealing now with the

23   existing complaint, which is -- you are also looking to

24   relief -- for relief on the stay to go pursue that action,

25   still, in New York State Supreme Court, right?  The pending

```
 1    complaint?

 2              MR. NG:  Well, this is where we are --

 3              THE COURT:  That was removed?

 4              MR. NG:  -- no -- that is part of what we were

 5    trying to negotiate the settlement of the ADR.  But, during

 6    the period of time we came before the Supreme Court, and the

 7    judge had asked for -- whether there was records that was

 8    delivered to me, and they did not provide the records that

 9    was under the judge's order.

10              THE COURT:  Well -- I'm sorry.

11              MR. NG:  And then how that --

12              THE COURT:  But I want to break this down, okay?

13    Because you made a Motion for two -- to lift the stay for

14    two things.  The first one was, to lift the stay to continue

15    to pursue the causative actions that are laid out in this

16    complaint that I just quoted from.

17              MR. NG:  Yes.

18              THE COURT:  The second one was to bring a new

19    action --

20              MR. NG:  Yes.

21              THE COURT:  -- it wasn't that clear to me what

22    that was for.  We can talk about it in a moment.

23              MR. NG:  Yes, yes.

24              THE COURT:  But, as far as the first part of the

25    relief you're seeking --
```

Page 64

1              MR. NG:  Yes, Your Honor.  Yes, Your Honor.

2              THE COURT:  -- it appears to me that, there is no

3     insurance --

4              MR. NG:  Yes.

5              THE COURT:  -- available for that claim.

6              MR. NG:  That's what I understood from them.

7              THE COURT:  Okay, so that's -- so, I'm going to

8     deny the Motion as far as that claim is concerned.

9              MR. NG:  Okay, Your Honor.

10             THE COURT:  If there's -- under the relevant case

11    law, which goes back to the Sonnax case.  This isn't

12    insured, as a practical matter.  The claims that are laid

13    out in the Amended Verified Complaint in the New York State

14    Supreme Court action, because the insurance has been used up

15    for that -- for that period that Kmart is alleged to have

16    done the breach of the data, which was January 2013 through

17    May 2017, which is what the complaint says.

18             MR. NG:  Okay.

19             THE COURT:  So, I'm denying that portion of the

20    Motion.

21             MR. NG:  Yes, Your Honor.

22             THE COURT:  So, then, that -- the second portion

23    of the Motion seeks to bring a new claim?

24             MR. NG:  Yes, Your Honor.  That claim, dated

25    November 13th, and that is after I suffered the injury, and

Page 65

1    have to see doctor.

2              THE COURT:  Right, but is that for the same

3    exposure?  What is the claim against Kmart that dates from

4    the post-bankruptcy period?

5              MR. NG:  Okay, it all began in 2010 when I want

6    there and I got treatments.

7              THE COURT:  Right, no, I understand all that, but

8    what new thing has Kmart, you allege, done, after the start

9    of this bankruptcy case in October '13?

10             MR. NG:  Yeah, they have lied to the Supreme Court

11   that they have given me records, medical records, when they

12   did not.

13             THE COURT:  But is that -- is that -- you made a

14   request after the start of the bankruptcy case?

15             MR. NG:  No, Your Honor.

16             THE COURT:  Well --

17             MR. NG:  It was before the bankruptcy that the

18   judge -- the hearing was October -- September 2018, and the

19   judge went -- sent an Order for -- give me a moment, Your

20   Honor.  Okay, so the judge said -- the judge issued a

21   subpoena and they did not provide me with all the records

22   like, that I need.

23             THE COURT:  The request -- so, you requested

24   records of them --

25             MR. NG:  Yeah, the judge --

1           THE COURT:  -- when -- I'm sorry, when did you

2    make that request?

3           MR. NG:  The judge signed the Order June 29, 2018.

4           THE COURT:  Right.

5           MR. NG:  They were served, and we all just

6    appeared before the judge --

7           THE COURT:  Right, but then the bankruptcy

8    happened, so they probably didn't -- then everything

9    stopped, is my guess.

10          MR. NG:  Everything stopped, but the judge still

11   appear -- during that time, after heads --

12          THE COURT:  So, it's a -- basically, to provide

13   records now?

14          MR. NG:  To provide records.

15          THE COURT:  Okay, so I can I interrupt you?  If

16   that's the case, can they provide him the records?

17          MR. NG:  They did not.

18          THE COURT:  No, I'm asking the Debtors' lawyer.  I

19   don't necessarily view this as a litigation.  I just think

20   he's entitled to his records, right?

21          MR. FAIL:  In the -- I have the attached copies,

22   Your Honor, of the records that he received, and I think

23   he's saying they were falsified.  I don't think there's -- I

24   don't think anybody's denying him.  I think they don't

25   understand what he's asking for.

Page 67

1          THE COURT:  You think -- you think they're

2     incorrect, or is it you think they're falsified?

3          MR. FAIL:  I thought he's attached all his pleas

4     to his records.

5          MR. NG:  The judge find this -- made an order and

6     had found that this is something that is subject for trial,

7     a trial.  Trial of fact.

8          THE COURT:  Well, but -- I guess --

9          MR. NG:  Here's the trial --

10         THE COURT:  I'm trying to -- I'm trying to

11    formulate what I want to say.  Whether you have a new claim

12    or not, for 2018, depends on when that claim arose, and if

13    you're saying that the Debtors have an obligation to give

14    you records in 2018, and they didn't do it, then that might

15    be a 2018 claim.  On the other hand, if you're saying the

16    Debtors have an obligation to give me records, and they gave

17    me the records, but the records are false --

18         MR. NG:  Utterly.

19         THE COURT:  -- and the alterations happened in the

20    past, not in 2018, then you don't have a 2018 claim.

21         MR. NG:  It happened in 2018.

22         THE COURT:  Well, I'm sorry, you're saying that

23    they were falsified in 2018 --

24         MR. NG:  Yes, in 2018.

25         THE COURT:  -- as opposed to in the past?

Page 68

1          MR. NG:  Yes, within November 6, and November 6,

2     2018, (indiscernible).

3          THE COURT:  Well, we have a -- we have a --

4     there's an administrative claims bar date, okay, that's

5     going to be set.  This would be a post-petition claim,

6     because you're saying it's November, right?

7          MR. NG:  It's November and August, and --

8          THE COURT:  Well, if it's August, it's pre --

9     anyway, there's going to be a bar date.  I'd rather not do

10    this orderly.  I think you need to comply with the bar date,

11    file your claim, and then they'll have a better idea of what

12    it's about, and it'd probably be -- I don't know how we

13    liquidate it.  I can't tell you right now, sir, but it

14    doesn't sound like -- it's sounds like it may -- depending

15    on what the claim actually says in writing, I can figure out

16    how to deal with it.

17         MR. NG:  Well, I suffered emotional distress, so I

18    want --

19         THE COURT:  No, I don't mean the consequences of

20    the claim.  I'm saying, where the claim -- how the claim

21    arose, what the claim is based on, and I don't really know

22    enough about that, at this point, because I don't have

23    anything that really lays it out.  The -- a bar date order

24    what will say, you have to file proofs of claim by X date,

25    you know, I don't know what it'll be, end of March,

Page 69

1    beginning of April, some date.  File your claim, lay out

2    what you think the claim is and when it arose and what it's

3    for, and then we can decide what to do with this.  I don't

4    really -- I have your complaint for the State Court action.

5    I know what that's about, but I don't really have anything

6    that lays out this claim.

7              MR. NG:  Well, the claim that I'm referring to

8    right now, that --

9              THE COURT:  No, I -- I -- look, I do much better

10   with things in writing.

11             MR. NG:  Yes.

12             THE COURT:  You need to lay it out in writing,

13   because it -- I couldn't figure it out, okay?

14             MR. NG:  Okay, Your Honor.  So --

15             THE COURT:  So, I'm going to adjourn this until

16   after the bar date, the hearing on this motion, I'm going to

17   adjourn it until after the bar date.  The bar date will be

18   set very soon.  It'll probably be a hearing in April, okay?

19             MR. NG:  Okay, Your Honor.

20             THE COURT:  Okay.

21             MR. NG:  I'm suffering a lot of damages and

22   medical bills and everything, and that's why I'm trying to

23   seek -- get justice.

24             THE COURT:  And if it was a question of the

25   records being released, I would direct the Debtors to

1    release the records, but it sounds like they were released

2    to you.   The dispute is to whether they were altered at some

3    point.

4              MR. NG:   They were altered.

5              THE COURT:   Well, I -- but that doesn't -- see,

6    that's a different type of claim than just giving you

7    records so you can go to a doctor and deal with them, so I'm

8    going to adjourn this until the first omnibus hearing after

9    the bar date is set.

10              MR. NG:   One other thing I would like to mention,

11   Your Honor, is that I did make reference to the Unclean Hand

12   Doctrine, that I had laid out in my papers, and they make no

13   -- they did not address these.

14              THE COURT:   Well, that's really a defense.

15   They're not asserting a claim against you.

16              MR. NG:   Well, they're seeking to have the matter

17   denied, and --

18              THE COURT:   No, but the Unclean Hands is a

19   defense, saying, you can't assert a claim against me, a

20   defense that you would have, that Sears can't assert a claim

21   against you because they have Unclean Hands, but they're not

22   asserting a claim against you, so I can see why they didn't

23   respond to that.

24              MR. NG:   Yeah, so, if I understand you correctly,

25   I should wait until I get some sort of order --

1           THE COURT:  Yeah, we'll serve you with notice of

2    the bar date.  If you want to still file a claim, file a

3    proof of claim, and I'll have that in front of me when I --

4    when we come back here on the remaining part of your Motion.

5    I'm denying the first part, because there's really -- the

6    record doesn't reflect any real insurance for that.  The

7    second part, we'll deal with it after the bar date, when I

8    can see where the claim -- what the claim really is for.

9           MR. NG:  Okay, but I can go ahead and do the proof

10   of claim --

11          THE COURT:  Yeah.  I mean, if you don't give me

12   the proof of claim, we're -- you know, that's the end.  So,

13   you need to comply with the bar date order and file a proof

14   of claim describing the claim.

15          MR. NG:  Yeah, so, I should not do it before --

16   until I get the bar --

17          THE COURT:  You can do it -- you can do it before.

18   There's no reason that you have to wait until you get the

19   order.

20          MR. NG:  Okay.  Okay, thank you.  Thank you very

21   much.

22          MR. FAIL:  Thank you, Your Honor.  Just to close

23   out the record on this, again, Garrett Fail from Weil for

24   the Debtors.  Based on what we've heard so far, being

25   alleged, it sounds like the entirety of Mr. Ng's claims

Page 72

1    would be pre-petition, not what we --

2            MR. NG:  It might will be.

3            MR. FAIL:  -- so, we encourage him to file a claim

4    by the pre-petition claims bar date as well, making whatever

5    allegations he may.  I would also just point out for this

6    Court, and again, for Mr. Ng, that this -- his underlying

7    case that has been filed is no longer pending in New York

8    State --

9            THE COURT:  It's in Federal Court, now.  It's been

10   moved.

11           MR. FAIL:  Thank you, so, Mr. Ng has already

12   appeared post-bankruptcy, in the New York State Court, and

13   has sought another hearing, has indeed advised Mr. Ng that

14   the automatic stay remains in place.  The Debtors will not

15   be participating in either New York State or Federal

16   District Court with regard to his pre-petition matter.  In

17   response, Mr. Ng has sent me and my firm threats for

18   defamation.  We'll ignore that for now, but I just want to

19   advise him again, we won't be participating in Court.  Those

20   actions were stayed.

21           THE COURT:  Okay.  All right.  So, Mr. Ng, if you

22   can just come up for a second.

23           MR. NG:  Sure.

24           THE COURT:  Two things.  First, I referred to the

25   State Court complaint, but that action was removed to

Page 73

1   Federal District Court, so it's actually pending Federal

2   District Court at this time.  That's the first point.  It's

3   not actually in the State Court, it's in the Federal

4   District Court.  That action names other parties besides

5   Kmart.  There are other parties who are Defendants in that

6   action.  It is stayed by the automatic stay, as to Kmart.

7   So, you can't -- you can't invoke the Court against Kmart.

8   So, you can't get relief against Kmart from the District

9   Court, or if the District Court, for some reason, sends it

10  back to the State Court, from the State Court.  If there are

11  third parties, that the stay doesn't apply to, you know, you

12  can go against them, but not against Kmart, okay?

13              MR. NG:  Well -- just to add something that,

14  perhaps, you are not aware of, the Supreme Court judge did

15  make an order, and in that request, any -- didn't make any

16  sort of move.  I was advised by the Court to appear for the

17  hearing, the judge made an order, for all parties to appear,

18  March 13th, this coming March 13th.

19              THE COURT:  Well, that's not Sears, because the

20  stay applies to Sears.

21              MR. NG:  Sorry?

22              THE COURT:  That's not Kmart, because the stay

23  applies to Kmart.

24              MR. NG:  So --

25              THE COURT:  It won't include Kmart.

1          MR. NG:  It wouldn't include Kmart?

2          THE COURT:  No.

3          MR. NG:  I don't -- after (indiscernible).

4          THE COURT:  Have you given the State Court notice

5    of the bankruptcy?

6          MR. FAIL:  We gave the State Court -- we gave Mr.

7    Ng.  We're happy to arrange.

8          THE COURT:  So, they understand this.

9          MR. FAIL:  We'll take care of it, Your Honor.

10   We'll advise the State Court.

11         THE COURT:  I -- I'd give lectures to the State

12   Court judges just up the road at the judicial college that

13   they have at Pace Law School.  They understand the automatic

14   stay.

15         MR. NG:  Yeah.  The State Court told me they

16   didn't receive anything, so that's why -- that's why -- how

17   is State Court not aware?

18         THE COURT:  Fine, I understand.  That's the State

19   Court's issue.  You cannot seek relief against Kmart.

20         MR. NG:  I'm not seeking any relief of there, Your

21   Honor.

22         THE COURT:  Okay.  All right.

23         MR. NG:  Thank you.  Thank you.

24         THE COURT:  Okay, thank you.

25         MR. FAIL:  Thank you, Your Honor.  That concludes

1    today's agenda.

2            THE COURT:  Okay, thank you.

3            MR. FAIL:  Thank you.

4            MR. COLLINS:  Thank you, Your Honor.

5      (Whereupon these proceedings were concluded at 11:29 AM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6        Sonya
7        Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital1@veritext.com, c=US
Date: 2019.03.19 15:01:31 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 18, 2019

[& - 94]                                                                                    Page 1

| **&** | | | |
| --- | --- | --- | --- |
| **&**  5:3,13 6:1 10:5 40:7 | **1557**  4:8 | **21st**  10:22 13:10 58:4 | **4th**  15:12 |
| **0** | **15th**  12:5 38:4 | **2312**  2:7 | **5** |
| **08540**  6:12 | **162**  42:3 | **242**  33:18 | **5**  47:8 58:19 59:14 60:5,6,8,12,14 |
| **1** | **166**  47:15 | **2470**  3:22 | **503**  11:14,16 12:11 37:12,12 38:12 39:19 41:3 42:23 43:7 45:1 45:11,21 46:5,10 48:8 51:25 53:18 58:5 |
| **1**  3:17 14:4,25 37:12 38:12 39:19 42:23 45:11,22 60:12,12 | **18**  29:13,14 76:25 | **2471**  3:25 | |
| | **18-23538**  1:3 | **2474**  4:2 | |
| | **18th**  37:21 38:5 | **248**  1:13 | |
| | **1991**  17:23 | **2481**  3:12 | |
| | **1996**  57:10 | **2497**  2:17 | |
| **10**  17:25 19:15 21:7 22:12,24 24:10,21 26:4 28:1 31:11,12,22 32:22,24 33:22 35:13 | **1999**  33:18 | **25**  18:14,25 22:16 29:15 | **541**  24:10,22 26:5 30:7 32:14 35:14 |
| | **1st**  60:20,21 | **2544**  2:10 | **586**  32:15,16 |
| | **2** | **2578**  2:19 | **6** |
| | **2**  3:17 22:16 24:10 26:5 32:14 33:17 35:14 | **27**  3:20 | **6**  68:1,1 |
| | | **28**  61:25 | **60**  10:17,19 12:3 43:18 49:13 50:13 50:23 51:19 52:25 56:13,24,25 |
| **10014**  7:19 | **2000**  33:16,17 | **281**  34:11 | |
| **10016**  6:20 | **2004**  4:6 12:23 13:14,19,21 14:9 | **29**  66:3 | |
| **10018**  7:12 | | **29-33**  34:1 | **620**  7:11 |
| **10036**  5:16 | **2006**  57:4 | **2d**  33:17 57:9 | **7** |
| **1006**  3:20 7:18 | **2008**  32:16 | **3** | **749**  24:3 25:23 35:23 |
| **10153**  5:6 | **201**  7:18 | **3**  33:25 | |
| **102**  6:11 | **2010**  62:9 65:5 | **30**  57:23 | **755**  57:9 |
| **105**  4:6 | **2013**  62:14 64:16 | **300**  1:13 76:22 | **767**  5:5 |
| **10601**  1:14 | **2015**  33:24 | **300,000**  47:7 | **8** |
| **10:03**  1:17 | **2016**  60:12 | **330**  76:21 | **8**  39:12,13 |
| **11**  2:4 24:18 | **2017**  33:25,25 60:12 62:15 64:17 | **33rd**  6:3 | **82.30**  34:11 |
| **1103**  4:6 | | **350**  57:3 | **870**  32:15 |
| **1121**  2:6 | **2018**  3:20 13:13 14:24 15:12 60:20 60:25 61:1,1,1,9 61:25 65:18 66:3 67:12,14,15,20,20 67:21,23,24 68:2 | **362**  17:25 19:15 21:7 22:12 24:10 24:21 26:1,4 28:1 28:11 31:22 32:22 33:22 35:13 | **8846**  33:17 |
| **11501**  76:23 | | | **9** |
| **11556**  7:4 | | | **9**  11:14,16 37:12 41:3 43:7 45:1,3 45:21 48:8 51:25 58:5 |
| **11:29**  75:5 | | | |
| **121**  33:18 | | | |
| **12th**  13:13 | **2019**  1:16 2:2 14:4 14:25 15:12 60:21 76:25 | **363**  31:11 | **90067**  6:4 |
| **13th**  64:25 73:18 73:18 | | **365**  23:22 24:6 54:3 55:18 | **9016**  4:7 |
| | **2029**  6:3 | **370**  50:10 | **932**  2:15,24 |
| **14**  1:16 2:2 | **20th**  14:24 15:7 15:12 | **377,132.16.**  38:9 | **94**  57:9 |
| **144**  57:3 | | **3813**  33:25 | |
| **1477**  3:3 | **210**  6:10 | **4** | |
| **1479**  3:10 | **215,000**  19:2 29:12 30:13 36:23 | **4**  14:25 | |
| **1547**  3:14 | | **400**  7:3 | |

**9th** 38:6

**a**

**ability** 23:16 24:3
**able** 53:6
**abroad** 40:13 41:1
**absence** 2:13,21
**absolutely** 25:15
   31:6 52:4
**accepted** 38:6
**accepting** 36:9
**accident** 60:22,23
   61:4
**accomplishment**
   11:12
**account** 18:8
**accurate** 76:4
**act** 31:15
**acting** 39:5
**action** 3:17,17
   11:21 19:17,18
   61:16 62:2,24
   63:19 64:14 69:4
   72:25 73:4,6
**actions** 30:5 63:15
   72:20
**actual** 33:10
**add** 15:23 17:3
   48:1 73:13
**additional** 15:19
   18:11 19:2 47:24
**address** 70:13
**adjourn** 52:14
   57:22 69:15,17
   70:8
**adjourned** 57:15
   58:7
**administer** 47:10
**administrative**
   3:2 17:9 37:11
   39:18 40:20 42:14
   42:23 43:1,19
   44:3 48:10,25
   50:2 51:24 52:10

57:20 68:4
**administratively**
   43:3
**adr** 3:18 28:21
   63:5
**advise** 72:19
   74:10
**advised** 72:13
   73:16
**affect** 30:21
**affiliate** 13:17
**affirmed** 26:9
**afternoon** 43:15
   51:20
**agenda** 2:1 10:10
   17:13,14 37:5
   58:19,20 75:1
**agent** 7:10 17:18
   45:8
**aggregate** 60:13
**agree** 10:23
**agreed** 10:20 11:5
   11:6 15:11 16:11
   32:11 43:21
**agreement** 3:3
   13:22
**agreements** 49:25
**ahead** 39:8 47:2
   71:9
**akin** 5:13
**alert** 52:21
**alive** 35:18
**alix** 8:3
**allegations** 72:5
**allege** 65:8
**alleged** 34:12
   64:15 71:25
**allow** 3:16 28:5
**allowance** 47:2
**allowed** 46:25
**alterations** 67:19
**altered** 70:2,4

**alternate** 28:17
**alternative** 3:18
   21:14 37:12
**alves** 7:25
**amended** 61:19
   64:13
**amicable** 14:14
**amount** 43:21
   47:6 55:23
**amounts** 50:8
**ana** 8:15
**analysis** 30:21
   38:10,12
**analyze** 42:25
**andrews** 8:1
**angeles** 6:4
**answer** 16:15
**anybody** 39:8
   41:12
**anybody's** 66:24
**anyway** 10:21
   29:1 33:20 41:10
   48:19 50:23 68:9
**apart** 35:7
**app** 33:16
**apparently** 45:1
**appeal** 23:13
**appealing** 55:16
   55:22
**appear** 43:22
   66:11 73:16,17
**appeared** 66:6
   72:12
**appearing** 7:23
**appears** 33:18
   64:2
**applebaum** 3:9
**application** 13:7,8
   26:4 33:21
**applied** 36:18
   48:13 49:2
**applies** 33:21 35:6
   35:13 73:20,23

**apply** 18:2,3
   19:15 21:8 24:13
   28:1 30:4 32:4
   35:14,15 45:10
   73:11
**appreciate** 26:1
   27:12 31:7 56:2
**approach** 10:16
   16:21 38:25 46:22
**appropriate**
   29:19 35:25
**approve** 35:22
**april** 12:4 58:7
   69:1,18
**arbitrage** 4:1
**arbitration** 28:19
**aren't** 25:10
   51:25 52:3
**arguably** 35:10
   41:19
**argue** 31:4
**argument** 26:3
**arguments** 27:13
   33:13
**arising** 39:16
**arlene** 7:25
**arose** 48:7 67:12
   68:21 69:2
**arrange** 19:17
   74:7
**arrearages** 3:2
**arthur** 5:10
**articulated** 33:5
**artisanal** 26:16
   27:21 33:24
**aside** 13:7
**asked** 19:19 55:6
   63:7
**asking** 21:4,6,10
   47:22 59:11 66:18
   66:25
**assert** 20:2 70:19
   70:20

**asserting** 70:15,22
**assertion** 30:12
**asserts** 21:16
**assigned** 49:8,14
**associates** 17:19
**assume** 3:3,6
  19:23 21:15 23:18
  24:5 43:21 50:13
  50:19 51:3 53:7
  56:7
**assumed** 22:23
  28:23 47:14 49:8
  49:14,17,19 50:1
  52:17 56:8
**assuming** 12:10
  30:11 50:18 56:14
  56:21 58:10
**assumption** 35:22
  46:6,7 52:1 54:6
  55:14,15,22 56:9
  57:11,12
**assurance** 57:7
**assure** 45:10
**attached** 66:21
  67:3
**attention** 44:23
  47:8
**attorney** 6:2,9,17
  7:2
**attorneys** 5:4,14
  7:9,17 27:16 37:6
  37:7
**audience** 10:7
**august** 60:12,12
  60:20,25,25 61:9
  68:7,8
**authorized** 40:21
  44:20 53:8
**authorizing** 4:7
**automatic** 2:13,22
  18:1,3 21:8 32:4,8
  35:6 58:20 72:14
  73:6 74:13

**automatically**
  19:23
**available** 59:21
  64:5
**avenue** 5:5 6:19
  7:11
**award** 28:16
**aware** 11:11
  73:14 74:17

**b**

**b** 1:21 6:22 8:13
  9:9 11:14,16
  17:25 19:15 21:7
  22:12,24 24:10,10
  24:21 26:4,5 28:1
  31:11,12,22 32:14
  32:22,24 33:22
  35:13,14 37:12,12
  38:12 39:19 41:3
  42:23 43:7 45:1,3
  45:11,21,22 48:8
  51:25 58:5
**b.r.** 32:15,16
  33:18 57:3
**back** 15:18 16:13
  17:13 24:3 31:19
  35:25 64:11 71:4
  73:10
**bad** 53:21,25
**balancing** 57:4
**balluku** 8:2
**bangladesh** 48:4
**bankr** 32:16
  33:25,25 57:3
**bankruptcy** 1:1
  1:12,23 2:6 4:5,6
  18:1 31:13,21,22
  32:6,14 42:22
  56:11 61:12,15
  65:4,9,14,17 66:7
  72:12 74:5
**bar** 11:14 12:9
  46:23 49:23,24

58:5 68:4,9,10,23
69:16,17,17 70:9
71:2,7,13,16 72:4
**barclays** 15:5
**based** 15:10 32:10
  68:21 71:24
**basically** 21:15
  66:12
**basis** 21:10 35:16
  51:5
**began** 65:5
**beginning** 69:1
**begun** 3:19
**behalf** 2:24 3:9
  10:5 13:13,25
  15:18 17:16 37:9
  38:22
**believe** 17:7 25:11
  25:12 27:19 33:22
  35:1 38:5 42:24
  52:16 58:4
**bencze** 6:14 37:8
  37:8,16,18,22,25
  38:17,20,24 39:2
  39:7,12,14,22,25
  40:3 41:24 42:6
  42:12,16,19,21
  43:5,9,13 44:8,11
  44:19,22,25 45:13
  45:23 46:1,4,9,11
  46:14 50:25 51:8
  51:11 52:15,20,23
  53:1,5,11,14,19
  53:21,24 54:2,5,8
  54:16,19,24 56:4
  57:16,24 58:1,3
  58:14,16
**better** 12:19 68:11
  69:9
**big** 11:12 31:1
**bill** 29:12
**billion** 47:8

**bills** 69:22
**binder** 38:15
**blame** 27:17
**board** 45:7
**box** 48:22 51:24
  51:25
**boys** 55:21 57:9
**brad** 9:11
**branded** 3:7
**brauner** 5:19
**breach** 25:25,25
  32:20 34:18,22
  62:19 64:16
**breached** 62:14
**break** 63:12
**brief** 11:9 14:12
  35:4 48:11
**briefed** 23:12
**briefly** 13:13
  14:14 59:4
**bring** 12:8 44:22
  63:18 64:23
**broad** 16:2
**brozman** 8:3
**bryant** 5:15
**bucket** 47:16,17
  49:1
**buckets** 49:2
**burden** 55:15
  56:9
**burdensome**
  34:15 57:1
**burger** 55:21 57:9
**business** 40:23
**buy** 53:4
**buyer** 47:14 56:7
**byran** 8:25

**c**

**c** 5:1,18 8:20 10:1
  76:1,1
**ca** 6:4
**california** 37:21

candace 5:10
can't 16:11 22:23
  23:18,20,25 25:19
  30:22,22 43:18
  44:2 49:21 50:10
  50:21 68:13 70:19
  70:20 73:7,7,8
capital 3:22,24
  4:1 13:20,25 14:7
care 74:9
careful 52:12
carnegie 6:10
carry 18:12
case 1:3 16:12
  23:25 26:6,17
  27:2 31:18 32:6
  32:13,17 33:19
  36:3 38:4 42:15
  44:3 55:16 57:2,3
  57:8 58:12 64:10
  64:11 65:9,14
  66:16 72:7
cases 11:13 19:20
  22:9 23:1 24:6,24
  24:25 25:12 27:24
  27:25 33:3,14
  47:10,11
cash 36:11
cashing 36:15
category 14:22
  15:5
catherine 8:14
causative 63:15
cause 32:6 52:4
causes 19:22
cds 4:7
ceased 14:3
center 6:10 17:21
  17:23
century 6:3
certain 13:15,16
  37:14,16 43:21
  49:11,16

certainly 36:10
  50:10 51:18 56:23
certificate 3:20
certified 76:3
ces 15:17
cetera 16:8 24:7
chambers 10:12
  16:16,23 17:4
change 30:13
chapter 2:4
check 36:11,16
cheese 53:20,24
  54:1
china 44:13
choose 20:3
christ 9:10
cir 33:17 57:9
circuit 23:13
  26:10 45:6 55:20
  57:10
circumstances
  24:19 32:22 35:25
cite 26:1 27:17
cited 19:20 28:12
  33:3 36:4
civil 3:16
claim 3:2 29:2
  48:7 51:22 59:20
  59:23 60:23 62:7
  64:5,8,23,24 65:3
  67:11,12,15,20
  68:5,11,15,20,20
  68:20,21,24 69:1
  69:2,6,7 70:6,15
  70:19,20,22 71:2
  71:3,8,8,10,12,14
  71:14 72:3
claimant's 62:12
claims 11:14,16
  11:17 46:24,24
  47:21 49:22,25,25
  50:2,3 51:14,25
  59:14 62:6 64:12

68:4 71:25 72:4
clarification
  23:14
clarity 51:19
clark 6:8 37:8
clause 40:19
  44:16
clean 38:20
clear 23:25 26:14
  27:18 31:3 44:15
  46:16 63:21
clearly 28:24 29:9
  29:9 30:8
client 21:11 29:11
  42:17 53:3 56:22
clients 42:10
client's 54:12
close 11:11 31:8
  32:12 71:22
closed 15:14
  43:20 51:19
closing 47:8 49:5
code 2:6 4:6 18:1
  31:13 32:15 52:9
  52:9 56:11
coelho 8:4
collateral 7:10
colleague 13:4
college 74:12
collier 31:21
collier's 22:25
  23:13 32:24 33:5
  33:14,21
collins 7:6 17:15
  17:16,18 18:11,15
  18:22 19:3,6,13
  20:1,5,8,13,17,20
  20:23 21:3,6,18
  21:21,25 22:2,8
  22:14,17,22 23:2
  23:6,9 26:8,13,20
  27:3,10,14,21,24
  28:3,5,8,11,16

29:6,15,17,21,25
  31:3,7 36:7,13,17
  36:21,25 37:2
  75:4
come 16:13 51:16
  71:4 72:22
coming 15:18
  73:18
commence 19:16
commencement
  31:17 32:6 42:7
commentator
  26:7
committed 43:14
committee 2:9 4:4
  6:18 10:13 13:5
  13:14 15:19
common 17:20
company 50:6
compel 3:1,5
  37:11 46:7 54:6
  55:15,21 56:9
  57:11
compelling 3:2
  55:13
complaint 61:12
  61:13,20,24 62:23
  63:1,16 64:13,17
  69:4 72:25
completely 22:11
  27:4 31:25 40:16
complicated 33:9
comply 34:13
  68:10 71:13
complying 34:14
concept 23:16,17
concepts 23:15
  33:5
concern 50:6
concerned 62:19
  64:8
concerning 62:3

[concluded - creditors]                                                    Page 5

concluded  75:5
concludes  74:25
condition  18:16
  35:23
conditional  18:5
  19:22 23:3,4
  24:22 26:22 34:16
conduct  13:14
  34:22
conferences  16:16
confirm  2:12,21
  43:18
confirmation
  52:11
confirmed  33:23
  44:2,3 55:25
conflict  13:4
conflicts  6:17
confused  33:2
confusion  33:4
congress  24:19
  25:12
connection  50:7
consent  12:23
consequence  38:9
consequences
  68:19
consequential
  24:23 25:19,24
  26:18 27:20 32:19
  33:1,8 34:2,7
consider  44:12
considered  32:1
consistent  40:22
consolidator  41:1
  48:3
consortium  15:5
constituents
  11:24
constituted  34:22
construe  32:13
contacted  44:9

contains  34:16
contention  30:9
contest  20:2 41:14
context  28:13
continue  23:16
  63:14
contract  50:16
  53:7 54:12 55:17
  57:5
contracts  49:7,14
  50:1,14,15 51:2
  52:17 53:15
contrary  33:3
controversies
  25:6
convinced  35:22
copies  66:21
copy  16:24 17:23
  38:15,20,21 61:20
corp  2:12,24 7:2
  17:16 33:16 57:3
corporation  1:7
  10:3
correct  18:13,15
  19:3 20:14,16
  21:12,14 22:14
  37:16,22,25 39:22
correctly  43:6
  70:24
costs  18:12 56:1
  59:22
counsel  6:17 13:5
  13:22 15:11 40:2
country  76:21
couple  17:8 44:4,6
  53:12
course  10:22
  12:25 15:20 19:16
  28:17 40:22 44:21
court  1:1,12 10:2
  10:8,14,17,25
  11:3,7 12:1,9,14
  12:18,24 13:6,11

14:6,12,16 15:3
15:22 16:9,14,18
16:22 17:1,6,10
17:12,17 18:9,14
18:21,23 19:4,11
19:15,16,19,25
20:3,4,6,10,15,18
20:22 21:1,4,6,10
21:20,22,22,23
22:1,3,10,15,19
22:23 23:5,8,10
23:12,12 24:4
26:9,11,14,23
27:6,11,15,23,25
28:2,4,7,10,14,16
28:18,25 29:9,16
29:18,23 30:2
31:6,8 32:20 33:4
33:17,18 34:8,21
35:24 36:1,6,10
36:14,19,22 37:1
37:3,14,17,20,23
38:14,19,21 39:1
39:6,7,9,13,15,23
40:1,5,10,15,18
41:3,7,10,15,19
41:23 42:2,5,8,13
42:18,20,22 43:4
43:8,12,14 44:10
44:15,20,24 45:3
45:15,24 46:3,5
46:10,19 47:2,4
47:12,14,22 48:5
48:12,15,19,21,25
49:6,11 50:13,16
50:23 51:2,9,12
52:5,9,18,22,25
53:2,9,12,17,20
53:22 54:1,3,6,9
54:18,20 55:1,7
55:10,13,23 56:6
57:17 58:9,13,15
58:17,22,24 59:1

59:3,9,12 60:1,10
60:22,24 61:3,8
61:10,12,15,18,20
61:23,24 62:2,5
62:11,17,22,25
63:3,6,10,12,18
63:21,24 64:2,5,7
64:10,14,19,22
65:2,7,10,13,16
65:23 66:1,4,7,12
66:15,18 67:1,8
67:10,19,22,25
68:3,8,19 69:4,9
69:12,15,20,24
70:5,14,18 71:1
71:11,17 72:6,9,9
72:12,16,19,21,24
72:25 73:1,2,3,4,7
73:9,9,10,10,14
73:16,19,22,25
74:2,4,4,6,8,10,11
74:12,15,17,18,22
74:24 75:2
courtney  9:7
courtroom  10:9
  56:17 58:21
courts  22:9 24:1
  32:21,23 35:20
  36:2
court's  74:19
cover  59:19 60:3
covered  24:10
  35:10 36:19
covers  60:11
craftsman  3:6
  37:18,18 53:4,10
  56:23
create  23:20
creates  47:4
credit  14:21
creditors  2:10 4:5
  6:18 10:13 13:5
  43:1 47:1,11

**criteria** 55:13
**critical** 38:13
**cure** 19:8 34:12
 34:18,18,19 49:12
 50:8 52:17
**cured** 25:4
**cures** 50:8
**custodians** 16:8
**cyrus** 3:22 6:2
 13:19,20,22 15:24

**d**

**d** 1:22 2:6 3:8
 8:19 10:1
**damages** 29:1
 69:21
**dana** 57:3
**daniel** 8:7
**data** 62:14 64:16
**date** 11:14 12:9
 18:19,20 27:4
 46:23 48:11 49:24
 58:5 68:4,9,10,23
 68:24 69:1,16,17
 69:17 70:9 71:2,7
 71:13 72:4 76:25
**dated** 60:20 61:25
 64:24
**dates** 65:3
**day** 10:17,19 12:4
 19:14 27:5 30:3
 38:10 56:25
**days** 18:8,19
 43:18 49:13 50:13
 50:23 51:19 52:25
 56:13,25 57:23
**de** 14:23 15:13
**deadline** 34:18
 56:13
**deal** 24:6,24 43:20
 46:5 48:18 49:2
 68:16 70:7 71:7
**dealer** 53:8

**dealing** 24:22
 38:11 62:22
**dealings** 51:16
**dealt** 23:2 24:23
 27:13 34:4 57:2
**deborah** 8:9
**debtor** 1:9 3:5,7
 5:4 13:17 19:21
 20:15 21:14 24:5
 25:19 30:24 32:2
 33:20 35:7,8,25
 36:8,22 38:6 39:4
 45:7 48:13 52:11
 52:12 54:11 55:17
 55:17,25 57:5,13
 60:7 62:18
**debtors** 2:5 3:3
 10:6 13:17 18:24
 29:19 35:21 36:4
 39:16 40:7,21
 44:20 46:16,22,23
 47:10,20 48:2,6,9
 49:3 50:4,7,9
 51:14 54:13 56:10
 56:11 59:6 67:13
 67:16 69:25 71:24
 72:14
**debtors'** 2:17 3:12
 3:14 10:11 13:16
 23:16 38:22 40:1
 59:12 66:18
**december** 14:24
 15:6,12
**decide** 21:11,14
 27:19 29:1 56:12
 69:3
**decided** 20:11
 21:19 23:5 25:10
 35:12
**decision** 23:11
 26:9
**declaration** 30:4

**declare** 29:11
**declaring** 2:13,22
 18:1
**deductible** 60:6,8
 60:15
**defamation** 72:18
**default** 14:21 18:6
 18:8,9,9,25 19:8
 19:12,22 20:2
 21:12,16 25:3,7
 26:18 27:8,20
 30:12,14,16,17,18
 30:22 32:9 33:8
 33:11,12 34:7,9
 35:5 36:15 49:12
**defaulted** 25:3
**defaults** 34:2
**defend** 59:16
**defendant** 62:6,12
**defendants** 59:6
 73:5
**defense** 30:14
 59:18,22 70:14,19
 70:20
**defenses** 19:18
**define** 42:3
**defined** 41:25
 42:1
**definition** 23:22
**delay** 57:12
**deliver** 41:9 48:2
 55:6
**delivered** 37:20
 38:5 39:20 40:12
 41:13,16,17,20
 42:7 44:14 45:20
 45:24 46:1 54:23
 63:8
**deliveries** 45:17
**delivery** 39:17,19
 45:7,7 48:8
**demanding** 54:21
 54:22

**demands** 34:13,15
**denial** 30:8
**denied** 35:15
 70:17
**deny** 30:3 64:8
**denying** 64:19
 66:24 71:5
**department** 7:16
**depending** 20:2
 45:24 68:14
**depends** 49:17,18
 54:1 67:12
**deposition** 15:17
**described** 15:1
**describing** 71:14
**determination**
 19:25 20:24 21:4
 21:7 31:9 34:8
**determine** 28:6,8
**determined** 49:8
 49:20
**determines** 34:21
**detriment** 43:2
**dibattista** 8:5
**dicta** 26:4,11 27:2
**dictum** 33:22
**didn't** 26:1,11
 29:4 30:18 33:20
 40:16 49:24 55:24
 66:8 67:14 70:22
 73:15 74:16
**different** 22:24
 23:8,14 28:13
 49:4 70:6
**dig** 40:9
**dillman** 8:6
**direct** 69:25
**directed** 40:21
 44:21
**disagree** 22:10,11
**disagreed** 33:4
**disagreement**
 15:9

disclosure 2:5
11:23
discovery 13:24
14:19,20,22 15:8
15:16,19 30:11
discretion 28:16
52:11,13 55:23
discussed 36:2
discussion 34:1
discussions 15:10
dismiss 11:21
dispute 3:18
18:24 19:5,25
20:7 21:18 26:16
27:8 29:20 30:1
34:25 35:1,4,12
38:2 39:25 40:7,8
40:25 70:2
disputed 19:12
26:18 39:23
disputes 19:21
41:10 62:3
disregarded
32:12
distinction 25:13
33:14
distinguishes 45:6
distress 68:17
district 1:2 11:21
23:12 26:9 33:17
35:20 45:5 72:16
73:1,2,4,8,9
doctor 65:1 70:7
doctrine 70:12
document 2:7,10
2:15,17,19,24 3:3
3:9,12,14,20,22
3:24 4:2,8 16:1
doesn't 19:24
21:23 22:5,12
24:13 30:4 35:13
35:15 36:22 38:2
44:17 52:9,10

68:14 70:5 71:6
73:11
doing 19:11,13
27:18 55:10
dollar 43:21 47:8
59:14 60:5,6,8
dollars 50:11
dollars' 42:4
don't 12:10,24
15:21 16:12 17:1
21:18 23:23 25:11
27:17 29:21 30:1
33:14 38:14 45:11
45:21 53:7 55:12
66:19,24 68:19,21
69:3,5 71:11 74:3
dr 61:6
drain 1:22
drop 41:1
dublin 5:18
due 39:3
duty 59:16

**e**

e 1:21,21 5:1,1
6:23 8:16,23 10:1
10:1 76:1
e.d. 32:16
east 6:3
easy 24:14
ecro 1:25
ed 61:6
edged 54:10
editors 22:25
edward 7:14
effect 30:24
efficient 11:15
47:11
efficiently 11:18
efforts 18:2
eggermann 8:7
eight 39:14
eighth 7:11

either 31:11 34:13
35:11 38:16 50:5
54:14 72:15
election 18:7
email 12:24 16:23
17:4 59:25
emails 29:19,21
emanuel 14:3
emergency 29:12
29:24
emotional 68:17
emphasize 31:19
employees 56:19
encourage 72:3
encouraged 47:1
enforce 30:5
engage 24:20
40:16
entered 11:7
17:23 41:16,17,21
enterprises 24:7
entirety 71:25
entitled 39:5
51:23,24 52:8
66:20
entry 4:5 17:25
equitable 32:2
equities 32:15
esl 43:20,21 47:14
49:2,4,20 50:16
50:18 51:15 52:2
58:10
essence 10:17
51:17
establish 56:19
estate 24:14 30:8
32:1 35:14 36:18
43:2
et 16:8 24:7
evan 9:12
event 10:9 32:9
34:17,21

events 20:20,21
20:23
eventually 27:20
evict 19:17
eviction 24:5
25:22 30:6 34:20
34:24 35:19,21
36:2
evidence 41:8
ex 4:4 12:22,25
14:10
exacerbate 33:4
exactly 12:2 16:17
examination 4:7
12:23 13:15
example 28:20
exceeded 59:15
60:14,16
exception 31:23
exclusive 2:7
exclusivity 2:4
10:11 43:16
excuse 14:19,25
15:6
excused 17:9
executing 11:19
executory 50:18
51:2,5,6 53:15
54:11,14,14,17
exercise 40:17
exhibit 61:23
existing 62:23
expect 16:12 58:8
expectation 12:5
expected 47:7
expecting 16:15
57:18
expedited 11:15
expense 37:11
39:18 40:20 48:10
48:25 51:25
expenses 17:9
42:14,24 43:19

[expenses - glenn]                                                                Page 8

44:3 47:5 50:2
52:10 57:20
**expiration**  19:14
31:16,20 32:10,18
**expire**  27:5
**expired**  18:4,4,8
24:11,12
**expires**  31:24 34:6
**exposure**  62:8
65:3
**expressway**  17:19
17:22
**extend**  2:4,6
10:11 27:7
**extended**  43:17
**extension**  10:18
10:19 12:4
**extra**  38:21
**extremely**  38:13

**f**

**f**  1:21 9:6 18:25
29:15 76:1
**f.3d**  57:9
**fact**  21:12 22:20
30:12,13,23 31:11
33:9 34:5 35:7
41:3 42:9 43:2
45:17,19 47:16
50:18 60:14,15
67:7
**factor**  28:24
**factors**  28:12
**facts**  34:3 41:11
41:19 45:16 46:17
47:24 55:23
**factual**  59:20
**fail**  5:11 37:4
38:25 40:4,6,6,11
40:16,24 41:5,8
41:12,18,22 45:15
46:8,12,15,15,20
47:6,13,19,23
48:6,13,17,20,24

49:3,7,13 50:15
50:21 51:1,12,18
52:7 54:25 55:4,8
55:11,25 57:25
58:2,4,12,18
66:21 67:3 71:22
71:23 72:3,11
74:6,9,25 75:3
**fails**  34:19
**failure**  18:11
34:17
**fair**  20:22 45:19
55:23 60:10
**faith**  10:23
**fall**  45:20,22
47:17,17
**falls**  48:22
**false**  67:17
**falsified**  66:23
67:2,23
**far**  26:4 38:7
62:18 63:24 64:8
71:24
**farmington**  17:21
**farmingville**
17:19
**farrell**  7:1 17:16
**february**  1:16 2:2
76:25
**federal**  72:9,15
73:1,1,3
**feel**  36:11
**feinstein**  6:16
13:3
**feld**  5:13
**fennell**  8:8
**fifth**  5:5
**figure**  24:15,15
39:10 40:12 49:13
50:4 68:15 69:13
**file**  12:6 46:24
49:24 51:22 68:11
68:24 69:1 71:2,2

71:13 72:3
**filed**  2:23 3:8
11:13,16 13:19,19
13:25 14:7,9
17:24 37:5 38:4
43:7 46:25 52:16
58:6,21 61:16,16
62:8 72:7
**filing**  2:4 12:4
14:10 27:4 31:13
50:2
**final**  52:18,21
**finally**  15:4,15
**find**  50:19 67:5
**finding**  36:15
**fine**  11:3 12:18,20
16:22 53:1 74:18
**finish**  12:2
**firm**  72:17
**first**  10:10 27:12
29:20,20 37:10
38:10 41:8 46:6
46:21,22 60:9
61:5 63:14,24
70:8 71:5 72:24
73:2
**fit**  42:24
**fits**  32:22
**fletcher**  8:9
**flexibility**  47:10
54:15 56:12
**flooding**  49:24
**floor**  6:3
**focus**  42:13
**focusing**  39:11
53:17
**following**  33:12
**follows**  14:19
**forced**  57:6 60:8
**foregoing**  76:3
**foreign**  48:2,3
**formulate**  67:11

**forward**  11:18
46:18 50:6 51:16
**found**  67:6
**fox**  7:14
**frankly**  11:22
23:10 25:20 30:22
**free**  36:11
**frequently**  27:16
**fritz**  7:1 17:16
**front**  10:6 11:10
16:7 28:15 71:3
**fronts**  49:4
**full**  43:19
**fully**  22:4 61:19
**function**  23:21
52:23
**fund**  4:1
**funds**  14:1,1,4

**g**

**g**  8:22 10:1
**galardi**  8:10
**garrett**  5:11 40:6
46:15 71:23
**garrity**  26:17
**garrity's**  33:23
34:1
**gathered**  60:7
**general**  48:1
60:11,19
**generally**  42:15
**getting**  36:14 43:1
43:24 52:6
**give**  57:21 65:19
67:13,16 71:11
74:11
**given**  18:20 29:19
30:16 35:20 65:11
74:4
**gives**  56:11
**giving**  70:6
**glad**  11:6
**glenn**  36:3

glitch   45:8,10
go   12:21,21 19:16
   24:3 31:19 35:25
   46:18,21 51:14
   53:21 62:13,24
   70:7 71:9 73:12
goes   53:24 64:11
going   10:22 11:10
   12:15,21 16:10
   17:13 24:20 25:12
   28:25 30:23 31:19
   36:4,14 40:9
   42:15 45:12 46:22
   49:3,8,14,19,19
   50:5,6,17,19
   51:16 52:16 53:12
   53:13,21 55:20
   57:7,8,14 64:7
   68:5,9 69:15,16
   70:8
gold   8:11
good   10:2,4,6,23
   12:9 13:2 16:22
   17:15,17 53:24
   56:20 57:12 58:23
   58:24
goodness   11:12
goods   3:7 38:3,4,6
   38:6,7,8,12 39:17
   41:1,13,16,20
   44:12 52:3
gotshal   5:3 10:5
   40:7 46:16
gotten   26:3 41:11
grant   3:8
granted   39:18
   40:20
granting   3:2
great   10:14 11:8
   15:3
gregg   8:10
guess   12:11 15:23
   20:13 44:11 54:9

54:21 66:9 67:8
gump   5:13
guy   29:23

**h**

hadley   6:1
hadn't   11:5 27:3
hand   11:3 54:13
   67:15 70:11
hands   70:18,21
hansen   8:12
happen   43:11
   56:21 60:22 61:8
happened   34:23
   60:25 62:18 66:8
   67:19,21
happy   14:13
   46:13 48:1 74:7
hard   16:24 20:11
   20:18 55:14,15
harm   46:21
harrison   8:13
hasn't   13:1 20:6
   20:10,16 34:23,23
   34:24 49:20
hauer   5:13
haven't   28:10
   30:15 47:24 54:16
heads   66:11
hear   46:7,12
heard   13:9 15:24
   49:15 71:24
hearing   2:1,1
   10:21 12:10,11,15
   13:10 15:7 22:1
   57:22 65:18 69:16
   69:18 70:8 72:13
   73:17
heavy   56:9
heizenrater   8:14
here's   67:9
herrick   6:16 13:3
he's   66:20,23,25
   67:3

hieroglyphics
   38:17
hill   6:8 37:9
hmm   27:14
holding   55:11
holdings   1:7 10:3
hon   1:22
hong   48:4
honor   10:4,6,10
   10:19 11:9 12:8
   12:17,20 13:2,12
   13:18 14:1,15,18
   15:2,4,15 16:13
   16:21 17:5,7,15
   22:18 27:22 29:8
   29:15 31:7 36:7
   36:21 37:2,4,9,16
   37:22 38:1,13,18
   38:25 39:12,22
   40:17,24,24 41:18
   41:22,24 42:17
   43:5 46:13,16
   47:6,20 48:17
   49:10,16,23 50:25
   51:8,18,22 54:5,8
   54:25 55:4 57:16
   57:24,25 58:14,18
   58:23,25 59:2
   61:14 62:20 64:1
   64:1,9,21,24
   65:15,20 66:22
   69:14,19 70:11
   71:22 74:9,21,25
   75:4
hope   58:12,13
hopefully   56:13
   57:21
hoping   43:10
hotel   32:15
housekeeping
   36:7
hurtado   8:15

hurting   44:6
hyde   4:25 76:3,8

**i**

idea   68:11
identified   59:5
identify   16:7 59:6
identifying   43:24
ignore   72:18
ii   3:8
illinois   11:21
immediate   3:1
immediately
   44:18
important   34:20
   56:22,23
impression   55:24
inapplicable   2:14
   2:22
incidents   60:11
include   30:11
   73:25 74:1
including   11:19
   24:15 30:6 33:23
   36:2 49:7
incorrect   22:4
   67:2
incredible   47:6
incur   48:10
incurring   56:1
indenture   7:9
india   48:4
indicated   59:5
   60:4
indiscernible   17:3
   38:4,13 43:15
   62:5,6,6,12 68:2
   74:3
information   60:7
injunction   34:4,6
injunctions   25:2
injury   11:17 62:7
   62:18 64:25

**insofar** 30:3
**insolvent** 43:3
**instances** 51:15
**insurance** 59:5,13
  59:17,18,21 60:2
  60:5,9,18 64:3,14
  71:6
**insured** 64:12
**insurer** 59:17
**intend** 12:3
**intent** 11:25
**interest** 29:13
  32:2
**interpretation**
  48:18
**interrupt** 66:15
**investigate** 47:20
  62:7
**investigated**
  46:17
**invoices** 50:11
**invoke** 73:7
**involuntary** 11:22
**isn't** 20:7 30:7
  35:17 52:2 64:11
**issuance** 24:4
  35:19,21
**issue** 20:12,12,19
  21:15,18 22:7,8
  23:17,19 26:15
  27:19 28:9 29:7
  34:2 41:25 42:9
  42:18,19 45:4,5
  54:9,21 55:5 61:5
  74:19
**issued** 25:22
  65:20
**issues** 22:9 24:8,9
  25:5,9 42:13
  51:21
**item** 37:4 58:18
**it'd** 68:12

**it'll** 68:25 69:18
**it's** 10:6,17,19,20
  12:13,14,16,25
  14:4 15:20 16:1,6
  16:20 19:11,11
  20:8,11,11,18,19
  21:24 22:8,23
  23:19,23 24:1,13
  24:14,18,20,25
  25:4,10,17 26:5,5
  26:6,8,11,17,18
  26:18,23,25 27:11
  27:11,18 28:25
  29:3,5,19,24 31:2
  35:10,14 36:19
  39:12 40:19 42:1
  42:8,18,19 43:5,6
  43:10 45:11,12
  48:23,25 49:1
  50:7 51:20 52:2,7
  52:20,20 53:20
  54:6,10,14,16
  55:14,14,22 56:13
  56:25 57:4 58:20
  59:20,20 61:11,23
  61:24 66:12 68:6
  68:7,8,8,12,14
  69:2 72:9,9 73:1,2
  73:3
**ivan** 8:11
**i'd** 68:9 74:11
**i'll** 35:17 48:20,20
  48:24 71:3
**i'm** 10:5 11:6,11
  12:10 14:13 21:6
  22:3,5 26:16 29:1
  30:10,23 31:1,19
  32:16 36:4 37:6
  39:9 40:1,3 41:15
  45:16 46:11,13
  47:22 48:1,21,22
  48:23 50:18 51:9
  51:11,18 53:17

  54:9,12 55:2 56:4
  56:14,21 57:14,18
  58:9 60:18,19,20
  60:23 61:2,22
  62:22 63:10 64:7
  64:19 66:1,18
  67:10,10,22 68:20
  69:7,15,16,21,22
  70:7 71:5 74:20
**i've** 27:12 43:20
  56:16

**j**

**j** 9:12
**january** 13:13
  14:4,25,25 15:12
  60:21 62:14 64:16
**jason** 8:5 9:4
**joel** 3:8
**joinder** 4:1 14:8
**joker** 24:7
**josh** 9:6
**judge** 1:23 24:5
  25:7 26:17 33:23
  34:1 35:22 36:3
  57:2 63:7 65:18
  65:19,20,20,25
  66:3,6,10 67:5
  73:14,17
**judges** 24:15,15
  26:19 74:12
**judge's** 63:9
**judicial** 74:12
**july** 3:19 62:9
**jump** 38:1,2 39:8
  47:2
**june** 66:3
**justice** 7:16 69:23

**k**

**katherine** 8:23
**keep** 29:17 35:24
**kelly** 8:16
**key** 60:15

**kind** 39:5 45:8
**kleist** 8:16
**kmart** 17:23 18:3
  19:17,17 20:1
  62:12 64:15 65:3
  65:8 73:5,6,7,8,12
  73:22,23,25 74:1
  74:19
**kmart's** 62:13
**know** 11:11 20:10
  23:19 25:7,7,11
  25:18,21 26:11,15
  27:2,11,18 28:14
  28:18,20,22 30:2
  30:2,10,22,24,25
  36:20,23 38:1,3,7
  39:24 42:10,21
  43:16 44:2,5,8,14
  44:17 45:4,5,17
  47:23,23 49:9
  50:23 51:1 52:20
  52:20 53:2,10,13
  56:1,8,11,14,19
  56:22,25 57:2,9
  57:11 60:12 68:12
  68:21,25,25 69:5
  71:12 73:11
**known** 17:21
**koch** 8:17
**kong** 48:4
**kosson** 8:18
**kreller** 6:6
**kristopher** 8:12

**l**

**l** 5:19 8:9
**l.p.** 3:22,24
**laid** 16:20 63:15
  64:12 70:12
**lampert's** 56:17
**landlord** 19:6,17
  19:18,23 20:14
  21:16,22 25:2
  27:16 34:16 35:3

36:8,10
**landlord's** 18:2,6
  18:12,17 19:8
  30:5,9 34:13,14
  34:15
**language** 26:7
**lanier** 8:19
**large** 33:15 47:9,9
**larger** 56:14
**latent** 62:7
**law** 18:15,23
  23:25 24:2 25:1
  26:6,14 33:2 34:2
  45:6 57:2 64:11
  74:13
**lawsuit** 34:24
**lawsuits** 60:13
**lawyer** 66:18
**lawyers** 59:22
**lay** 69:1,12
**lays** 68:23 69:6
**lead** 20:23 35:9
  61:6
**leading** 26:7
  31:21 51:12
**lease** 2:14,23
  17:23,24 18:4,5,8
  18:14,16,17,19
  19:14,24 20:14,24
  21:8 22:15,16,20
  22:24 23:7,15,16
  23:18,20,21,22,23
  24:1,2,5,8,11,16
  24:17,18,25 25:2
  25:4,8,16,21
  26:12,15,24 28:20
  28:21,22 29:7
  30:5,6,7 31:4,10
  31:15,17,21 32:5
  32:8,11,17,25
  33:7 34:6,12,15
  34:17,22 35:1,4,6
  35:12,17,18 36:19

**leased** 18:2,12
**leases** 25:9 31:23
  31:24,25
**leave** 45:8 62:3
**lectures** 74:11
**ledanski** 4:25 76:3
  76:8
**left** 33:19
**legal** 32:2 62:20
  76:20
**length** 57:3
**lessor** 31:15 32:4
  32:7
**letter** 59:11
**let's** 57:22
**lexis** 33:16,25
**liabilities** 49:17
  49:18 50:4 52:1
**liability** 60:11,20
**lieb** 8:20
**lied** 65:10
**lifland** 57:2
**lift** 35:10 63:13,14
**lifted** 28:3
**lii** 8:21
**limit** 56:25 59:14
  60:13,14
**limitation** 18:5,16
  23:3,4 26:22
  34:16
**limited** 2:9 3:24
  10:12 13:24 24:11
  31:23
**limits** 60:16
**line** 11:1 47:3
**linn** 8:22
**liquidate** 68:13
**list** 52:16,19,21
**listen** 27:11
**litigate** 34:13
**litigation** 3:16
  28:5,25 59:18,23
  66:19

**live** 20:7 23:20
  35:6,12,17 60:2
**living** 25:8
**llc** 3:5,9 6:9 32:15
  33:24 37:6,9
**llp** 5:3,13 6:1,16
  7:8
**lolo** 24:7 25:23
  27:21 36:3
**long** 29:6 46:12
**longer** 12:25
  14:10 22:24 72:7
**look** 22:15 44:14
  69:9
**looked** 28:19
  43:10 45:16
**looking** 12:12,15
  28:23 40:1 60:18
  60:20 61:2 62:23
**los** 6:4
**lose** 57:8
**lot** 25:20 29:12
  30:16 69:21
**love** 27:16
**lower** 33:17
**lucia** 8:15
**lured** 36:14

| m |
| --- |

**m** 5:10 7:14 8:7
  8:10,11,12 9:4
**mad** 24:7 25:23
  36:3
**main** 35:11
**maintenance**
  18:12
**majority** 22:25
  26:6 32:23
**making** 60:23
  72:4
**managed** 14:1,1,2
**management** 2:12
  2:24 7:2 17:14,16
  17:18

**managers** 14:4
**manges** 5:3 10:5
  40:7
**manufacturing**
  3:5,9 6:9 37:5,9
**march** 10:22
  13:10 58:3,4
  61:25 68:25 73:18
  73:18
**mark** 51:23,25
**massey** 8:23
**master** 4:1
**matter** 1:5 17:13
  34:14 36:7 59:20
  62:20 64:12 70:16
  72:16
**matters** 2:1 61:15
**matthew** 8:17
**mccloy** 6:1
**mean** 18:24 19:4
  20:21 26:21 28:23
  29:3,23 34:6
  36:20 37:25 38:22
  42:17 43:22 44:16
  45:15 53:5 55:13
  56:11,13 59:7
  68:19 71:11
**meaning** 22:11
**medical** 61:7
  62:13,19 65:11
  69:22
**medications** 61:7
**medium** 13:16
**mention** 70:10
**mentioned** 27:21
  42:1
**merchandise** 42:4
**mich** 32:16
**michael** 8:24
**michasel** 8:22
**michigan** 33:3
**microphones**
  46:12

**midwood** 2:12,19
2:24 7:2 17:14,16
17:18
**milbank** 6:1
**million** 42:4 47:15
59:14 60:5,6,8,13
60:15
**milton** 3:5,9 6:9
37:5,9 47:7 50:11
52:2
**milton's** 37:6
46:20
**mind** 11:4 55:14
57:4
**mineola** 76:23
**minimizing** 17:8
**misery** 47:4
**mittelman** 8:24
**mm** 27:14
**moment** 51:3
63:22 65:19
**monday** 11:12
51:20
**money** 42:22 51:4
**month** 58:1 61:6
**months** 44:4,7
53:12
**morning** 10:2,4
11:16 13:2,8
17:15,17 58:23,24
**motion** 2:4,5,12
2:13,21,21 3:1,5
3:16 4:4 10:11
11:13,16 12:10,14
12:22,25 13:19,21
14:8,9,11 17:14
17:24,24 28:14
30:3 31:9 35:15
37:10,17 38:9,22
39:3,3 42:2,3,10
43:7 44:25 45:1
45:18 46:6,6,7,10
49:9,21 52:14

53:18 54:3,6
58:19,20 59:13
63:13 64:8,20,23
69:16 71:4
**motions** 16:15
17:8 37:5,10 53:6
57:15
**mouth** 55:2
**movant** 55:15,16
**move** 11:18,25
29:4 73:16
**moved** 13:14
72:10
**mtns** 12:23 14:20
14:21

**n**

**n** 5:1 10:1 76:1
**names** 73:4
**narotam** 1:25
**narrow** 32:25
**nature** 23:3
**necessarily** 41:12
66:19
**necessary** 23:11
26:6
**need** 12:10 15:19
17:1 21:14 26:2
42:22 47:10 50:4
50:9 65:22 68:10
69:12 71:13
**needed** 12:16 30:1
**needless** 50:2
**needs** 21:19 47:7
52:12
**negisa** 8:2
**neglect** 62:5
**neglected** 62:11
**negotiate** 10:23
43:16 63:5
**negotiations** 3:19
**neither** 19:9,9,9
**new** 1:2 5:6,16
6:20 7:12,19

17:21 18:15,23
19:20 23:20 24:2
25:1 34:2,10
42:21 50:6 61:24
62:25 63:18 64:13
64:23 65:8 67:11
72:7,12,15
**ng** 58:21,21,23,24
58:25 59:2,4,10
59:24 60:4,18,23
60:25 61:5,9,11
61:14,19,22 62:1
62:4,10,16,20
63:2,4,11,17,20
63:23 64:1,4,6,9
64:18,21,24 65:5
65:10,15,17,25
66:3,5,10,14,17
67:5,9,18,21,24
68:1,7,17 69:7,11
69:14,19,21 70:4
70:10,16,24 71:9
71:15,20 72:2,6
72:11,13,17,21,23
73:13,21,24 74:1
74:3,7,15,20,23
**ng's** 71:25
**night** 43:9
**nj** 6:12
**nola** 6:14 37:8
**non** 2:14,22 13:17
31:15 32:5 51:2,5
54:11,11,14,16
55:17 57:5
**northern** 11:21
**note** 35:17 37:13
**noted** 14:9 16:6
31:23 32:20
**notes** 13:16 31:22
**notice** 2:1 18:7,18
18:20 19:8,15
25:4 29:20 30:17
33:11,12 34:11

71:1 74:4
**notified** 10:12
**nov** 33:25
**november** 38:5
61:1,1,9,16 64:25
68:1,1,6,7
**number** 32:21
33:23 36:2 40:8
44:5 49:4 51:21
**ny** 1:14 5:6,16
6:20 7:4,12,19
76:23

**o**

**o** 1:21 10:1 76:1
**o'donnell** 13:2,7
13:12 14:7,17
15:4 16:5,10,17
16:20,24 17:5
**oberg** 8:25
**objected** 46:25
**objection** 2:9,17
3:12,14,24 10:13
13:24
**obligated** 55:8
**obligation** 19:1
21:13 67:13,16
**obligations** 39:16
40:22
**obtain** 31:18
**obvious** 52:8
**obviously** 11:13
27:15
**occur** 30:14,18
33:10
**occurred** 20:21,25
30:23 34:9 45:17
**occurs** 32:9
**och** 4:1 14:7
**oco** 3:24 13:25
14:1
**october** 37:21
38:4,5 65:9,18

**odd**  45:8
**offer**  15:6
**official**  2:9 4:4
  6:18 10:13
**offsetting**  14:23
  15:14
**oh**  29:9 37:6 40:3
  51:11
**okay**  10:2,25 11:7
  11:8 12:18,20,24
  13:11,12 14:6
  15:22 16:9,14,22
  17:3,11,12,12
  20:4 23:9 29:16
  36:22 37:1,3,8,23
  39:1,13,15 40:5
  41:7,23 44:24
  45:23 46:5,11
  48:19 52:22 54:5
  57:24 58:15,17
  59:3,7 60:1 61:5
  63:12 64:7,9,18
  65:5,20 66:15
  68:4 69:13,14,18
  69:19,20 71:9,20
  71:20 72:21 73:12
  74:22,24 75:2
**old**  76:21
**omega**  14:2,3 15:2
**omnibus**  10:21
  12:11 13:10 57:18
  58:1,2 70:8
**once**  21:25
**onder**  9:1
**ones**  49:18
**ongoing**  62:3
**open**  20:12,19
  22:7,8,9 44:16
**operate**  31:14
**operation**  18:4
**opinion**  33:18,24
**opinions**  33:23

**opportunity**  19:8
**oppose**  13:21
**opposed**  30:21
  33:1 67:25
**opposition**  39:4
**option**  56:10
**options**  34:12
**oral**  33:13
**order**  2:13,22 4:5
  10:15 11:2 12:21
  14:17,18 15:6
  16:6,21 17:25
  24:4 30:24 31:2
  35:10 36:5 38:10
  38:12,15,23 39:3
  41:13,16,17,20,21
  42:1,2 44:14,15
  45:9,10 48:16,17
  58:5,6 63:9 65:19
  66:3 67:5 68:23
  70:25 71:13,19
  73:15,17
**ordered**  3:7 38:3
**orderly**  68:10
**orders**  3:6 37:15
  37:24 39:18 41:25
  42:3 49:15 50:17
  51:3,6
**ordinary**  40:22
  44:21
**original**  39:3
**outcome**  27:24
  28:17
**outline**  14:14
**outreach**  58:10
**outside**  48:8 52:1
**overseas**  48:9
**owes**  38:9
**owing**  30:13 36:24
**owned**  13:17
**owners**  17:20
**o'donnell**  6:23
  13:3

**o'neal**  9:2

**p**

**p**  5:1,1 8:8 10:1
**p.c.**  7:1
**p.o.s**  40:11,12
**pace**  74:13
**pages**  34:1
**paid**  42:15,23
  43:1,25 44:4,17
  50:5,8 52:1,6
  55:12 57:7 60:13
**pang**  7:24
**papers**  11:20
  70:12
**paragraph**  22:16
  22:16 31:22 39:10
  39:12,13 40:19
**parallel**  32:14
**pardon**  15:16
**park**  5:15 6:3,19
**parking**  29:12
**part**  12:13,14
  30:11 33:16 34:20
  36:20 44:25 53:5
  53:16 63:4,24
  71:4,5,7
**parte**  4:4 12:22,25
  14:10
**participants**  4:7
  15:17
**participated**
  13:15
**participating**
  72:15,19
**parties**  3:18 12:7
  13:15 14:13 15:9
  15:20,25 16:11,19
  17:2 31:10 36:3
  46:24 50:2 51:21
  54:11 73:4,5,11
  73:17
**parting**  56:16

**partners**  3:22,24
  6:2 13:20,25
**party**  17:8 54:11
  55:17 57:5 58:19
**party's**  40:23
**passes**  48:1
**path**  47:1
**patrick**  7:6 17:15
**paul**  7:21 9:8
**pay**  18:11 19:1,9
  36:23 40:22 44:21
  52:11 55:8,20
  56:8 60:8,9
**payable**  47:16,20
  49:1
**payables**  43:22,24
  47:15
**paying**  36:8 43:19
  47:8 53:14,15
  55:19 57:13 59:22
**payment**  3:1 18:9
  21:13 30:17,18
  32:5 33:11 37:11
  44:16 46:19 51:4
  51:17 52:10
**pbgc**  11:20
**pedone**  9:3
**pending**  45:2
  62:25 72:7 73:1
**people**  24:14 42:9
  42:22 44:5 45:10
  51:13 52:7 53:3
**percent**  29:13,14
**perfectly**  29:11,18
**perform**  54:12,22
  55:18,18,18 57:6
**performance**
  30:21 57:14
**performed**  51:4
**performing**  54:13
**period**  2:4 10:11
  12:4 15:8,10,11
  19:14 30:19 43:17

[period - question]                                                          Page 14

62:17 63:6 64:15
65:4
**periods** 2:7
**perishable** 52:3
**permission** 12:22
**permitted** 35:20
**permitting** 34:16
**personal** 11:17
**pertaining** 23:15
**peter** 9:9
**petition** 18:6,6
   30:19 31:12,13
   32:1,10,17 33:10
   33:12,12 37:23
   38:3,11 39:16,17
   39:19,20 41:25
   42:3 45:20 47:16
   47:19,21 49:1,16
   49:18 50:8 59:23
   68:5 72:1,4,16
**phase** 49:5
**philip** 5:18
**phrase** 25:13,20
   31:19
**physical** 45:7
**pi** 11:17
**pierce** 9:4
**place** 14:24 35:24
   72:14
**places** 48:3
**plain** 26:7 32:24
   49:9
**plains** 1:14
**plan** 2:5 10:20,23
   11:20,23 12:4
   43:16,19 44:2
   51:17 57:19
**play** 50:9
**plaza** 7:3 17:19,22
**pleadings** 15:1
   40:9
**pleas** 67:3

**please** 10:2
**plenty** 24:6 26:19
**point** 18:21 26:8
   26:12 27:1 35:11
   40:10,11,24 41:4
   41:6,18 42:11,14
   45:3,9 48:6,13
   49:20 53:18 56:2
   59:19,21 60:15,17
   68:22 70:3 72:5
   73:2
**pointed** 43:6
**points** 23:8
**policy** 22:17,19,20
   23:2,11,17 25:15
   25:24 26:21 27:3
   27:16 33:16 35:8
   35:11 59:19 60:11
   60:16,19
**port** 48:3
**portion** 64:19,22
**ports** 40:13
**position** 22:4,5
   32:21 48:7
**possession** 27:9
   27:10 31:18 32:3
   33:20 35:8,9
**possibility** 44:1
**possible** 12:8 50:7
**post** 30:19 31:12
   32:9 33:10 39:16
   39:19,20 45:20
   47:16,19 49:1,5
   49:16,18 50:5,8
   65:4 68:5 72:12
**postpetition** 3:1
**potential** 13:16
**potentially** 52:17
**practical** 64:12
**practices** 40:23
**pre** 18:6,6 32:1,17
   33:11,12 37:23
   38:3,11 39:17

41:25 42:3 47:21
   50:4 59:23 61:12
   68:8 72:1,4,16
**prefer** 52:12
**prejudice** 15:18
   15:20 30:9 36:11
   52:5
**prejudiced** 52:3
**premature** 29:3,5
   49:22 52:24
**premise** 36:17
**premises** 18:2,13
   32:8
**prepare** 36:4
**preserve** 54:15
**preserved** 29:8
   31:4
**pretext** 25:8
**pretty** 24:14
   55:15,22
**previously** 14:2,5
**princeton** 6:12
**prior** 34:18 37:17
   47:7
**priority** 39:18
   40:20 50:5 51:23
**pro** 44:4
**probability** 44:1
**probably** 66:8
   68:12 69:18
**problem** 42:16
**procedures** 11:14
   11:17 30:10 58:5
**proceed** 3:17,18
**proceedings** 75:5
   76:4
**process** 10:21
   12:8 34:4,5 51:13
   57:20
**profited** 38:8
**progress** 57:19
**proof** 29:2 51:22
   71:3,9,12,13

**proofs** 68:24
**proper** 30:10,10
**property** 2:14,23
   17:20 24:14 30:8
   31:16,19 32:1
   34:10 35:14
**proposed** 6:17
   13:4 14:17 16:20
**proposition** 19:21
   25:16 26:24 30:7
   30:15 33:3,21
**protection** 49:25
**protest** 19:9
**provide** 10:20
   11:14 63:8 65:21
   66:12,14,16
**provision** 18:5
   21:7 24:11,22
   25:3 28:19 29:14
   29:14 32:20 59:16
**provisions** 35:5
**purchase** 3:6
   37:15,24 49:15
   50:17 51:3,6
**purpose** 42:23
**purposes** 19:24
   22:1 31:11
**pursuant** 2:5 4:5
   13:14,22 17:25
   37:11,12,23 39:19
**pursue** 29:2 62:24
   63:15
**put** 47:25 48:7
   55:2 57:5
**putting** 31:2
**pvgc** 11:19

**q**

**quarropas** 1:13
**quash** 16:16
**question** 16:15
   35:19 43:23 47:22
   48:15 52:15 69:24

[quick - response]                                                    Page 15

| | | | |
|---|---|---|---|
| **quick** 35:10 | 55:22 56:9 57:11 | **rejection** 46:7 | **representation** |
| **quickly** 11:25 | 57:12 71:18 73:9 | 54:7 55:14,16 | 50:10,21 |
| 12:3 35:2 56:15 | **reasonable** 15:22 | 56:10 57:12,13 | **representations** |
| **quinn** 14:2 | 44:1 | **related** 3:6,8 | 14:11 |
| **quite** 23:25 | **reasoning** 26:21 | 12:23 28:21 30:7 | **representative** |
| **quote** 13:21 26:1 | **reasons** 31:25 | 30:15 33:5 | 56:17 |
| 31:22 32:12 40:21 | **recall** 15:6 | **relates** 14:20 15:5 | **represented** 14:2 |
| **quoted** 63:16 | **receive** 74:16 | 15:16 | **representing** 59:1 |
| | **received** 40:14 | **relations** 56:20 | **request** 65:14,23 |
| **r** | 48:9 59:10,11,24 | **release** 70:1 | 66:2 73:15 |
| **r** 1:21 5:1 6:6,14 | 66:22 | **released** 69:25 | **requested** 46:24 |
| 7:25 10:1 76:1 | **reconcile** 50:3 | 70:1 | 58:6 65:23 |
| **r.p.a.p.l.** 35:24 | **reconciled** 47:7 | **relevant** 28:21 | **requests** 16:1 58:6 |
| **rai** 1:25 | **reconciliation** | 64:10 | **require** 36:22 |
| **raise** 16:2 | 57:20 | **reliance** 40:25 | 52:10 59:17 |
| **raphael** 8:1 | **reconsider** 24:4 | 41:5 | **requires** 33:15 |
| **rata** 44:4 | **record** 10:22 13:3 | **relied** 38:10 42:9 | 55:18 |
| **ray** 5:9 10:4 | 30:10 31:8 40:6 | **relief** 3:8,16 28:10 | **requiring** 57:14 |
| **rdd** 1:3 | 46:15 47:24 71:6 | 28:15 29:4 53:5,6 | **reservation** 15:24 |
| **reach** 16:11 56:18 | 71:23 76:4 | 58:20 62:24,24 | 31:1 |
| **reached** 14:12,13 | **records** 62:13,19 | 63:25 73:8 74:19 | **reserve** 13:22 |
| 26:17 | 63:7,8 65:11,11 | 74:20 | 48:20 |
| **reaching** 56:24 | 65:21,24 66:13,14 | **rely** 33:15 41:13 | **reserved** 45:18 |
| **read** 29:21 42:10 | 66:16,20,22 67:4 | 41:21 | 54:19,20 |
| 44:17 | 67:14,16,17,17 | **relying** 40:18 | **reserving** 31:1 |
| **reading** 29:17 | 69:25 70:1,7 | **remaining** 23:19 | 48:21 |
| **ready** 24:5 | **recover** 18:2 | 71:4 | **residential** 2:14 |
| **real** 2:14,23 31:15 | **red** 11:1 | **remains** 32:7 | 2:23 31:15 |
| 34:10 36:18 42:11 | **refer** 38:23 39:3 | 72:14 | **resolution** 3:18 |
| 55:19 57:6 71:6 | **reference** 15:7 | **remedied** 46:21 | 14:14 15:23 16:12 |
| **really** 22:19 23:17 | 70:11 | **remedies** 28:17 | 45:13 |
| 25:16 26:14 29:2 | **referred** 72:24 | **remind** 47:12 | **resolve** 10:12 |
| 33:19 39:9 42:8 | **referring** 18:23 | **removed** 63:3 | 11:15,18 |
| 43:18 45:6 57:5 | 69:7 | 72:25 | **resolved** 35:2,2,4 |
| 68:21,23 69:4,5 | **refers** 32:25 38:23 | **rent** 18:11 19:1,2 | 45:14 |
| 70:14 71:5,8 | **reflect** 71:6 | 32:5 36:20 | **respect** 13:23 14:9 |
| **realty** 22:17,19,20 | **refusal** 62:6 | **reorganized** 50:6 | 30:17 37:14 61:6 |
| 23:2,11,17 25:16 | **regard** 72:16 | **reply** 2:19 14:12 | **respond** 19:7,7 |
| 25:24 26:21 27:3 | **reinert** 9:5 | 35:4 38:23 47:25 | 48:24 70:23 |
| 27:16 33:16 35:9 | **reject** 3:3,6 28:23 | 49:23 | **response** 3:22 |
| 35:11 | 56:4 | **report** 14:13 | 13:19,20 30:20 |
| **reason** 19:19 | **rejected** 28:25 | 57:18,19 | 46:18 59:12 72:17 |
| 22:21 25:17 26:13 | | | |
| 26:25 28:24 55:21 | | | |

**responses** 13:18
  14:8
**result** 18:16 26:17
  34:7 62:8
**resulted** 30:12
**retains** 32:2
**retake** 32:7
**retention** 13:8
**revised** 10:15
**revive** 23:25 24:2
  25:19
**revived** 25:22
  26:25
**rewrite** 30:22
**richard** 9:3
**right** 12:18 13:6
  15:10 18:10 19:23
  20:1,4,9,15,17
  21:20,23 22:22
  23:9 25:15 27:23
  28:2,4,7 29:10,16
  29:18 31:4 37:20
  37:25 40:15 41:23
  41:24 42:5 43:4,8
  43:9,14,16 44:10
  44:10,19,22 46:3
  48:1,5,12 49:6,21
  51:20 53:9,17
  54:18 55:1 56:18
  58:16,22 61:8
  62:16,25 65:2,7
  66:4,7,20 68:6,13
  69:8 72:21 74:22
**rights** 13:23 29:6
  29:11 30:6 31:1
  36:12 45:18 48:20
  48:21 54:19,20
**rise** 21:12
**risk** 55:19
**risking** 14:23
  15:13
**road** 74:12 76:21

**robert** 1:22
**room** 1:13
**roughly** 19:1
**rpapl** 24:3 25:23
**rule** 13:21
**ruled** 27:25 45:4,5
**rules** 4:6 19:15
  30:11
**ruling** 31:3
**run** 25:18 30:25
  36:5 47:1
**runs** 24:16,17
**rxr** 7:3
**ryan** 9:5

**s**

**s** 5:1,9 10:1
**s.d.n.y.** 33:18,25
  57:3
**safeguard** 62:12
**sale** 11:11 13:16
  13:16 14:20 38:8
  47:8,14 50:7
  51:19
**sara** 5:19 8:4
**satisfied** 49:22
**saul** 9:6
**saw** 12:24
**saying** 15:19,21
  21:1,11,15 22:5
  40:19 41:15 46:23
  48:23 49:22 51:6
  51:13,18,22 55:17
  56:1,4 66:23
  67:13,15,22 68:6
  68:20 70:19
**says** 22:12 24:11
  25:2 29:17,23
  31:12 39:15 40:20
  45:18 62:2,13
  64:17 68:15
**scenario** 57:10
**schael** 9:7

**schedule** 47:3
**scheduled** 2:1
  13:9
**school** 74:13
**schrock** 5:9 10:4
  10:5,10,15,19
  11:1,6,8 12:2,13
  12:16,20 17:7,11
**schwartzberg**
  7:21 9:8
**scope** 13:23 14:18
  14:19 16:4,5,16
**screwdrivers**
  53:22
**se** 55:21 57:11
**sean** 6:23 9:2 13:3
**search** 16:8
**sears** 1:7 10:3
  13:18 37:20 44:6
  45:25 56:23 70:20
  73:19,20
**seated** 10:2
**second** 14:22
  23:13 26:9 33:20
  40:18 41:9 44:25
  55:20 57:10 63:18
  64:22 71:7 72:22
**secondly** 59:16
**section** 2:6 31:14
  32:13,14 34:21
**sections** 4:6
**see** 11:2 20:11
  45:13,21 57:17,21
  58:9,21 61:6 65:1
  70:5,22 71:8
**seek** 36:1 47:2
  69:23 74:19
**seeking** 14:20,22
  15:7,15 17:25
  32:7 42:2 63:25
  70:16 74:20
**seeks** 30:4 31:9
  64:23

**sell** 53:6,7
**send** 16:1 25:4
  28:24 30:24 49:23
**sends** 73:9
**sense** 12:1
**sent** 33:11 65:19
  72:17
**separate** 24:9
  25:5,9 26:5 35:7
  46:6 61:15
**september** 65:18
**serve** 71:1
**served** 34:11 66:5
**service** 3:20 18:7
  18:17
**services** 62:7
**set** 24:8,9 25:5,9
  47:3 68:5 69:18
  70:9
**settle** 62:3
**settlement** 3:19
  11:19 63:5
**seven** 40:11,12
  50:11
**seyfarth** 7:8
**shaw** 7:8
**ship** 41:1 45:7
**shipment** 38:11
  39:17,20
**shipped** 40:13
**shopping** 17:21
  17:22
**short** 16:14 43:17
**shortened** 18:17
  18:18
**shortens** 23:4,6
**show** 60:2
**signed** 38:11 66:3
**similarly** 44:9
**simple** 33:1
**simplest** 47:1
**simply** 35:9

singh  5:8
sir  68:13
siroka  9:9
sitting  11:23,24
situated  44:9
skis  16:7
small  47:9,9
smaller  10:7
smith  6:22 13:4
smooth  12:8
sold  38:7 40:14
solutions  76:20
somewhat  33:2
sonnax  28:12,24
  64:11
sonya  4:25 76:3,8
soon  69:18
sooner  12:19
sorry  32:16 40:3
  41:15 42:12 46:11
  51:11 63:10 66:1
  67:22 73:21
sort  28:20 38:1
  39:4 43:10 70:25
  73:16
sought  28:10
  72:13
sound  26:21,23
  27:1 68:14
sounds  15:22
  68:14 70:1 71:25
southern  1:2
  35:20 45:5
speak  44:13
special  6:17
specifically  55:4,5
  55:9
speculation  24:20
srac  14:21
stand  19:20 46:13
stands  25:16
  27:17

stanley  53:8
start  65:8,14
started  11:18
  34:24
state  19:16 20:3
  21:22 24:3 28:25
  36:1 47:24 61:24
  62:25 64:13 69:4
  72:8,12,15,25
  73:3,10,10 74:4,6
  74:10,11,15,17,18
stated  13:20 18:19
  22:13,16 24:12,13
  24:16,18 25:14,18
  28:22 31:16,20,24
  32:18,25 33:6,21
  34:10 35:3 47:25
statement  2:5
  11:23
states  1:1,12 7:16
status  39:18 40:20
statute  26:7 33:15
  42:25
statute's  27:18
stauble  9:10
stay  2:13,13,21,22
  3:16 18:1,3 21:8
  24:13 28:3,15
  29:4 30:4 31:14
  32:4,11 35:6,10
  35:13,24 58:20
  62:24 63:13,14
  72:14 73:6,11,20
  73:22 74:14
stayed  32:5,7
  72:20 73:6
stephanie  8:20
steven  6:22 8:18
  13:4
stipulation  59:8
  59:10
stop  18:21

stopped  66:9,10
storage  53:15
  56:1
strauss  5:13
street  1:13 7:18
structure  4:1
subject  34:19 67:6
submit  26:20
  51:14
submitted  13:8
  15:1
submitting  36:6
subparagraph
  34:11
subpoena  65:21
subsection  31:14
substances  62:9
substantially  10:7
  12:6
suffered  64:25
  68:17
suffering  69:21
suggestion  46:20
suite  6:11 7:18
  76:22
summarized  17:2
summons  61:24
sunny  5:8
supplier  50:19
suppliers  42:4
supposed  54:12
  60:9
supreme  61:24
  62:25 63:6 64:14
  65:10 73:14
sure  11:11 12:7
  14:16 18:22 30:25
  37:6 39:1 45:16
  46:9 49:21 51:10
  54:10,12 72:23
swaps  14:21
sweeney  9:11

sword  54:10
systems  62:14

**t**

t  7:6 76:1,1
taiwan  3:8
take  11:20 12:25
  48:7 59:17 74:9
taken  32:21 46:23
takes  12:4 32:23
talk  50:17 63:22
talking  14:5 43:18
  52:4
tastes  53:24
taxes  36:18
taylor  8:13
ted  8:6
telephonically
  7:21,23
tell  45:16 55:2
  68:13
ten  18:8,19 19:14
  24:16,17
tenant  19:7,17,18
  21:22 34:11,19
tenants  17:20,22
tenant's  34:17,22
tender  18:25
teresa  8:21
term  13:16 18:4,4
  18:7,16,18 22:13
  22:15 24:12,13,17
  24:18 25:14,18,25
  31:17,20,24 32:11
  32:18,25 33:6
terminate  19:5
  30:5 32:17 34:17
terminated  19:6
  19:24 20:7,8,12
  20:14,19,24 21:2
  21:9,24 22:6,12
  24:12 25:5 26:24
  27:4 29:7 31:4,10
  31:12,16,20,25,25

[terminated - unclean]                                                                  Page 18

32:19 34:7 35:5
**terminates** 22:21
**terminating** 32:5
**termination** 2:12
2:21 11:22 18:18
18:19 19:14,22
21:17 23:15 24:23
24:23 25:19 30:18
32:3,8,9,10,19,21
33:1,2,6,7,10
**terms** 15:8 16:8
23:6 26:23 32:24
46:19 56:20
**test** 57:4
**thank** 11:12 17:5
17:6,12 36:21
37:2,3,4 41:22
46:14 58:16,17,18
71:20,20,22 72:11
74:23,23,24,25
75:2,3,4
**thankfully** 43:7
**thanks** 11:8 39:1
**that'll** 51:5
**that's** 11:3,4 12:9
12:11,18 13:9
16:22 18:13 19:4
20:22 21:16 22:17
22:24,25 23:3,21
24:7,10,16,21
25:1,5,9,23,24
26:21,25 27:1
28:23 30:2 33:9
36:20,20,23,24
37:14 41:3,6,18
42:8,12 45:13,19
46:4,23,25 48:13
49:9,21 52:18,18
53:15 55:5,21,25
56:4,5,10 57:11
58:12 59:15,24
60:10,18 61:1,2
61:18 64:6,7

66:16 68:4 69:5
69:22 70:6,14
71:12 73:2,19,22
74:16,16,18
**theories** 35:3
**there's** 17:21
21:16 22:6 23:19
24:3,9 25:18,20
26:15 27:7,19
28:14,20,24 30:14
32:14 41:5,8 44:1
45:1,5 46:23
48:15 49:13,15
50:13 52:4 55:19
56:25 59:16,21
60:16 64:10 66:23
68:4,9 71:5,18
**they'd** 56:24
**they'll** 56:8,13,15
57:21 68:11
**they're** 39:20
40:19 47:21 49:9
50:19 51:6,23,24
52:2,5,8 53:10,13
53:22 54:21 55:11
56:2 57:7,8,14
67:1,2 70:15,16
70:21
**they've** 41:13
43:12,12,14 59:15
60:16
**thing** 15:23 26:19
65:8 70:10
**things** 40:8 47:9
50:3 53:22 63:14
69:10 72:24
**think** 11:15 12:19
12:21 17:1,13
19:20 23:10,12
24:21 25:15 26:2
27:15 29:3,4,24
30:3,20 31:2,3
32:15,23 33:13,15

35:11 36:10 37:25
38:22,23 39:2,7
39:25 41:4,25
42:10 43:18 47:15
47:25 48:10 51:23
51:24 53:2,14
54:15,25 55:1,4,5
55:5,9 56:24
57:15 58:5 66:19
66:22,23,24,24
67:1,1,2 68:10
69:2
**third** 17:8 45:6
58:19 73:11
**thomas** 6:6 9:1
**thought** 30:16
67:3
**thousand** 50:11
**thousands** 49:7
**threats** 72:17
**three** 13:18
**thursday** 51:20
**time** 15:8,10,11
19:10 25:6 27:12
34:19 48:6 50:4
59:4 63:6 66:11
73:2
**times** 62:14
**timing** 13:23
42:18,19 43:6,23
44:16
**title** 31:18 48:1
**today** 21:5 37:10
44:9 50:12 58:21
**today's** 75:1
**told** 43:20 56:16
74:15
**tools** 37:19 53:4
53:10 54:23 56:3
56:23
**totally** 26:23 27:1
**toxic** 62:8

**transaction** 52:2
**transactions**
14:23 15:13,14
**transcribed** 4:25
**transcript** 76:4
**treat** 18:7
**treatise** 31:21
**treatment** 61:7
**treatments** 65:6
**trial** 49:16 67:6,7
67:7,9
**tricky** 35:18
**tried** 38:14
**trigger** 49:24
**tro** 27:4
**true** 76:4
**truly** 26:24
**trust** 7:9
**trustee** 7:9,17
**trusteeship** 11:19
**try** 12:7 16:3
**trying** 22:3 39:8
39:10 48:22 51:9
56:15 63:5 67:10
67:10 69:22
**turn** 43:14 54:3
**turning** 11:23
**tweed** 6:1
**two** 6:19 23:8,14
33:5 34:12 37:10
54:10 61:14 63:13
63:14 72:24
**type** 70:6
**types** 59:13

| u |

**u.s.** 1:23 7:17
33:16
**ucc** 5:14 10:23
11:24 12:7,22
**ultimately** 29:10
34:21 42:8
**unclean** 70:11,18
70:21

**uncured** 18:6
**underlying** 19:21
  28:8 72:6
**understand** 13:9
  14:3,24 15:13
  22:4 29:3 30:20
  36:25 38:7 44:5
  51:10 65:7 66:25
  70:24 74:8,13,18
**understanding**
  46:1,4 60:6
**understood** 25:13
  26:20 64:6
**undisputed** 39:15
**unduly** 57:1
**uniondale** 7:4
**united** 1:1,12 7:16
**unsecured** 2:9 4:4
  6:18 10:13 13:5
**update** 10:20 11:9
**urban** 2:23
**utterly** 67:18

**v**

**vacated** 35:23
**vacatur** 36:1
**varick** 7:18
**vein** 17:8
**vendor** 56:22
**vendors** 42:6 44:6
  44:9,11 47:9 48:2
  51:16 56:15,18
  58:11
**verified** 64:13
**veritext** 76:20
**veronique** 2:23
**view** 20:13 26:3
  32:23 33:22 66:19
**vii** 30:11
**violation** 34:12

**w**

**wait** 42:14 44:6
  70:25 71:18

**waited** 49:23,24
**waived** 36:15
**wall** 57:6
**want** 17:3 21:11
  29:2 39:7 47:23
  50:19 53:7 54:13
  54:15 55:1 56:7
  63:12 65:5 67:11
  68:18 71:2 72:18
**wanted** 44:22
  52:21
**wants** 19:18
**warehouse** 46:2
**warehoused** 3:7
**warrant** 25:22
  34:24 35:19,21,23
  36:1
**warren's** 34:10
**wasn't** 25:7,25
  63:21
**water** 44:12 48:9
**way** 11:15 25:12
  27:7 29:22 35:2
  44:13 45:17 47:11
  50:24 51:1 55:19
**weed** 34:10
**week** 59:25
**weil** 5:3 10:5 40:6
  46:16 71:23
**went** 65:19
**weren't** 27:8
**we'll** 44:2 48:11
  48:17 51:1,18
  57:21 58:9 71:1,7
  72:18 74:9,10
**we're** 10:22 11:22
  12:21 15:7 16:10
  24:19 37:10 39:8
  43:17 49:19,22
  50:17 51:22 52:3
  52:21 53:14,15
  55:9,10,19,20
  71:12 74:7

**we've** 11:13 14:10
  14:12,13 15:11
  16:5,11 25:8 58:6
  71:24
**white** 1:14
**who's** 20:9,9
**william** 8:8
**wilmington** 7:9
**withdraw** 59:11
**won't** 16:15 72:19
  73:25
**word** 23:22 56:16
**words** 23:20 33:7
  42:18 55:2
**work** 12:6 16:3,10
  29:12,25 30:1
**worked** 16:4,5,18
**working** 49:3,19
  51:21
**worth** 11:4 31:2
  42:4
**writing** 68:15
  69:10,12
**wrong** 20:9 55:2

**x**

**x** 1:4,10 68:24
**xy** 7:24

**y**

**yeah** 29:21 36:13
  39:1 40:4 42:19
  42:20 45:15,15
  46:20 47:13 53:11
  54:2 55:7 59:9
  60:24 62:10 65:10
  65:25 70:24 71:1
  71:11,15 74:15
**year** 24:17
**years** 24:16,17
**yellowstone** 25:1
  34:4,5
**yesterday** 10:12
  13:8

**york** 1:2 5:6,16
  6:20 7:12,19
  17:21 18:15,23
  19:20 24:2 25:1
  34:2,10 61:24
  62:25 64:13 72:7
  72:12,15
**you'd** 11:2 49:12
**you'll** 50:23 57:22
**you're** 11:11
  12:15 21:1 24:17
  25:15 36:14 40:18
  41:15 48:21 51:6
  58:24 59:1 63:25
  67:13,15,22 68:6
**you've** 16:18 17:1
  25:3 36:15

**z**

**zachary** 8:19
**ziff** 4:1 14:7
**zucker** 9:12

**,**

**'13** 65:9