# Katten
### Katten Muchin Rosenman LLP

575 Madison Avenue
New York, NY 10022-2585
212.940.8800 tel
www.kattenlaw.com

**STEVEN J. REISMAN**
sreisman@katten.com
212.940.8700 direct

Dated as of April 1, 2019

*VIA EMAIL: mmeghji@miiipartners.com*

Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attn: Mohsin Y. Meghji
Chief Restructuring Officer

Re:  **Engagement Agreement**

Dear Mo:

We are pleased to have the opportunity to serve as special counsel for Sears Holdings Corporation and its debtor affiliates in the jointly administered chapter 11 cases of *In re Sears Holdings Corporation, et al.*, Case No. 18-23538 (RDD) (collectively, the "Debtors" or the "Client")[1] with regard to providing advice and representation in connection with investigating, analyzing, prosecuting and/or settling avoidance actions arising under chapter 5 of the Bankruptcy Code and/or applicable state law against non-insider, non-affiliate transferees (collectively, the "Matter"). As previously disclosed, we will be working with Acumen Recovery Services, LLC ("Acumen") on this Matter. This letter and the enclosed Terms of Engagement describe the basis on which Katten Muchin Rosenman LLP (the "Firm" or "Katten") shall provide legal services.

I will be the lawyer at the Firm with the primary responsibility for this Matter and understand that it is your expectation, as well as my own intention, that I be involved in managing all aspects of the Matter. I will be assisted by my partners Theresa Foudy, Karen Dine, Jeff Friedman, and such other partner(s), associate(s), and other member(s) of the Firm as appropriate.

Please review the enclosed Terms of Engagement, with the assistance of independent counsel if you wish, and let me know if you have any questions about them. If all the terms are satisfactory, please indicate your consent by signing this letter and returning it to me. However, your continuing instructions in this Matter will amount to your acceptance of the terms of this letter, including the Terms of Engagement (collectively the "Terms"). All parties to this agreement agree that a digital signature shall be effective to prove each party's agreement to the Terms. Furthermore, the parties agree that the Terms may be proven through an electronic copy

---

[1] After the effective date of the Debtors' Chapter 11 plan, Client shall refer to the Liquidating Trust responsible for administering and monetizing avoidance actions.

AUSTIN    CENTURY CITY    CHARLOTTE    CHICAGO    DALLAS    HOUSTON    LOS ANGELES
NEW YORK    ORANGE COUNTY    SAN FRANCISCO BAY AREA    SHANGHAI    WASHINGTON, DC
LONDON: KATTEN MUCHIN ROSENMAN UK LLP
A limited liability partnership including professional corporations

US_139718377v1



Sears Holding Corporation
Dated as of April 1, 2019
Page 2

in digital format, and that no "original" hard-copy document need be retained to prove the Terms.

As noted, Katten will be working with Acumen, a data analysis and advisory firm which focuses on data gathering, defense analysis and litigation support, in order to assist Katten in connection with investigating, analyzing, prosecuting and/or settling claims held by the Client against non-insider non-affiliate transferees arising under Section 547 of the Bankruptcy Code (collectively, the "Preference Actions" and such defendant transferees, collectively the "Transferees"). Acumen's fees and expenses shall be paid solely out of Katten/Acumen Proceeds (defined below) and shall not constitute expenses of Katten. Accordingly, the retention of Acumen will not result in any incremental fees or expenses to the Client.

It is our understanding that the Client is also retaining ASK LLP ("ASK") in connection with this Matter. Katten's engagement in this Matter is conditioned upon the Preference Actions being divided in the manner directed by the Debtors equally based on expected net recoveries, as determined by the Firm and Acumen in their reasonable discretion, between Katten and Acumen (together, "Katten/Acumen"), on the one hand, and ASK on the other hand. Preference Actions to be pursued by Katten/Acumen shall hereinafter be defined as "Katten/Acumen Actions", and Preference Actions to be pursued by ASK shall be defined as "ASK Actions". ASK and Katten/Acumen may agree to modify the list of ASK Actions and Katten/Acumen Actions with the approval of the Restructuring Committee of the Board of Directors of Sears Holdings Corporation (the "Restructuring Committee").

Throughout the engagement, to the extent practicable, given the circumstances of Client's chapter 11 cases, Client agrees to afford Katten and Acumen reasonable access to the Client's books and records and personnel who are knowledgeable about facts relevant to the Matter. Subject to the foregoing, Client shall reasonably cooperate, consult with, and provide all such information and documentation and access as may be reasonably requested by Katten and Acumen to enable Katten and Acumen to maximize the recovery on the Preference Actions.

Notwithstanding Paragraph IV of the Terms, Katten's fee arrangement in connection with investigating, analyzing, prosecuting and/or settling the Preference Actions shall be as set forth below:

1. Any cash proceeds obtained in connection with the Katten/Acumen Actions (collectively, the "Katten/Acumen Proceeds") shall first be used to reimburse reasonable and documented non-labor, third-party expenses and costs of Katten and Acumen directly related to the prosecution, negotiation, or collection of Katten/Acumen Actions. Katten will store all physical and electronic records without any charge. Katten will deduct such expenses and costs from Katten/Acumen



Sears Holding Corporation
Dated as of April 1, 2019
Page 3

    Proceeds once per month.  In the event there are insufficient Katten/Acumen Proceeds in a given month to cover such expenses and costs, Katten will record the deficiency and will deduct such deficiency from Katten/Acumen Proceeds obtained in the following month(s) to the extent available.  For the avoidance of doubt, Katten and Acumen will not be reimbursed for any expenses and costs exceeding Katten/Acumen Proceeds. For the avoidance of doubt, notwithstanding anything contained in the Terms, the Client, and not Katten or Acumen, shall be responsible for payment of expert witness fees and expenses.  Any experts or third-party professionals who are retained to prove insolvency or to respond to a defendant's "objective" ordinary course of business defense are to be separately retained and shall not be considered part of this engagement.  Katten and Acumen will defer to the Client and its other advisors with respect to the decision to retain any experts.

2. Katten/Acumen Proceeds shall also include, without limitation, that certain portion of a claim against the Debtors' estates that is waived or settled in connection any Katten/Acumen Action, that would—(i) be distributable to the claimant pursuant to an approved chapter 11 plan, or (ii) if no plan is approved, be the estimated recovery to the claimant pursuant to an approved plan disclosure statement—as if the claim had not been waived.  For example, if a Transferee waives a $100,000 general unsecured claim, and the distribution on such claim would (under an approved plan) or is anticipated to be (under a disclosure statement) 10%, then the Katten/Acumen Proceeds on account such claim waiver would be $10,000.  With respect to waivers or settlements involving secured claims, administrative claims and other priority claims, the amount credited as Katten/Acumen Proceeds will be equal to 100% of the scheduled, agreed or allowed amount of such claims.  Katten and Acumen shall also receive credit in an amount approved by the Restructuring Committee for settlements involving payments-in-kind and other non-cash form of consideration.  For the avoidance of doubt, notwithstanding the inclusion of any non-cash recovery component used in calculating Katten/Acumen Proceeds, any payment to Katten/Acumen shall be limited to the cash proceeds actually recovered from the Katten/Acumen Actions.

3. The contingency fees of Katten shall be paid in accordance with points 4, 5 and 6 below.

4. After the expenses of Katten and Acumen have been paid in full, Katten/Acumen Proceeds shall be paid to Katten as follows:

    a. <u>Tier 1</u>: If the total gross amount of Katten/Acumen Proceeds obtained is less than $25 million, Katten shall be paid **3.5%** of the gross proceeds obtained in



Sears Holding Corporation
Dated as of April 1, 2019
Page 4

   any Katten/Acumen Action settled prior to the filing of a complaint and **6.5%** of the gross proceeds obtained after the filing of a complaint.

  b. <u>Tier 2</u>: If the total gross amount of Katten/Acumen Proceeds obtained is between $25 million and $50 million (the "<u>Tier 2 Threshold</u>"), Katten shall be paid **6.0%** of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and **11.0%** of the gross proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply retroactively to all Katten/Acumen Proceeds obtained in connection with the Matter (*i.e.,* after the Tier 2 Threshold is achieved, the foregoing percentages shall apply to <u>all</u> Katten/Acumen Proceeds obtained, beginning with the first dollar of Katten/Acumen Proceeds obtained).

  c. <u>Tier 3</u>: If the total gross amount of Katten/Acumen Proceeds obtained is more than $50 million, then (i) through and including the date that is eighteen (18) months after the date on which the Bankruptcy Court approves Katten's and Acumen's engagement (the "<u>Outside Date</u>"), Katten shall be paid **10.0%** of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and **13.0%** of the gross proceeds obtained after the filing of a complaint, and (ii) after the Outside Date, Katten shall be paid **6.0%** of the gross proceeds obtained in any Katten/Acumen Action settled prior to the filing of a complaint and **11.0%** of the gross proceeds obtained after the filing of a complaint, it being understood that the foregoing rates shall apply only to Katten/Acumen Proceeds above $50 million.

5. At any time during the Firm's engagement on the Matter, the Firm may, in its sole discretion, terminate the engagement, in which case Katten shall be entitled to all fees and expenses earned as of the date of termination; <u>provided</u>, such fees and expenses shall be paid solely from Katten/Acumen Proceeds.  The Client may, in its sole discretion, terminate the engagement.  If at any time during the Firm's engagement, the Client terminates the engagement without cause, including termination caused by conversion of any case or cases with material Preference Actions to chapter 7 or appointment of a chapter 11 trustee in any such case or cases (provided that the Debtors will use their reasonable best efforts to cause the chapter 11 trustee to continue Katten's and Acumen's engagement in accordance with their respective engagement letters), Katten shall be entitled to all fees and expenses earned as of the date of termination and all fees based on recoveries in the Katten/Acumen Actions for a period extending twelve months after the date of termination ("<u>Tail Compensation</u>"); <u>provided</u>, that the Debtors may immediately terminate the engagement and Katten shall not be entitled to any such Tail Compensation if, after



Sears Holding Corporation
Dated as of April 1, 2019
Page 5

    execution of this agreement: (i) a determination, rule, guideline, decree, order or other statement of similar formality is issued by any court or government agency finding or recommending that Katten and/or Acumen not be permitted to serve as a professional for or advisor to a debtor, official committee, trustee or other fiduciary in a bankruptcy case, (ii) the Restructuring Committee reasonably determines that Katten and/or Acumen has generally failed to prosecute or has abandoned prosecution of the Katten/Acumen Actions, or (iii) material harm to any Debtor results from Katten's and/or Acumen's gross negligence or willful misconduct. For the avoidance of doubt, Tail Compensation shall be determined using the same compensation tiers as set forth above and in determining the amount of Tail Compensation to which Katten is entitled shall count all Katten/Acumen Proceeds received prior to Katten's termination without cause.

6. Subject to Bankruptcy Court approval, the Board of Directors of Sears Holdings Corporation (prior to the effective date of a Chapter 11 plan) and the liquidating trustee (after the effective date of a Chapter 11 plan) shall have the discretion to increase the contingency fee percentages set forth above and/or award a bonus to Katten and/or Acumen.

All Katten/Acumen Proceeds will be deposited into a segregated account maintained by Acumen. Acumen will make monthly remittances, net of Katten's and Acumen's fees and expenses, to the designated recipient. If desired, Acumen will also make wire transfers to an account designated by the Debtors. As part of the remittance, Katten and Acumen will provide monthly reports summarizing settlements received and costs incurred in the prior month and its contingency fee percentage for each collection to the Debtors, with a copy to counsel to the official committee of unsecured creditors (the "Creditors' Committee Counsel"). If Katten/Acumen is required to remit Katten/Acumen Proceeds in gross, then we expect payment of our respective invoices within 10 days of presentation, or as soon as practicable as allowed by the Bankruptcy Court. Katten and Acumen will also send monthly status reports to the Debtors, with a copy to Creditors' Committee Counsel, detailing the status of all pending cases that remain open for collection.

At Client's request, Katten may agree to provide legal services to the Client outside the scope of the Matter. Client shall compensate Katten for such services, if any, at the Firm's standard hourly rates or on other such other terms as may be agreed to between the Client and the Firm and disclosed in a supplemental affidavit filed with the Bankruptcy Court.

A schedule of the Firm's standard hourly rates is annexed as Exhibit A. The Firm's disbursements that are billed on a per-unit basis are annexed as Exhibit B. The Firm's wiring instructions are annexed as Exhibit C and the Firm's W-9 Taxpayer Certification is annexed as



Sears Holding Corporation
Dated as of April 1, 2019
Page 6

<u>Exhibit D</u>.    Katten/Acumen and ASK have, to date, provided the Restructuring Committee with information concerning the allocation of the first 1000 Transferees between ASK and Katten/Acumen and will provide the Restructuring Committee with all future allocations promptly upon their completion by ASK and Katten/Acumen, but in all events subject to approval of the Restructuring Committee.

Thank you for allowing us the privilege of this representation. We value and appreciate the trust and confidence you have placed in us and we assure you we will do our best to see that your expectations are satisfied.

My best.

Sincerely,

Steven J. Reisman

w/attachments

cc:    Brian Griffith (w/attachments, bgriffith@miiipartners.com)
       William Murphy (w/attachments, wmurphy@miiipartners.com)
         M-III Advisory Partners, LP
       Ray C. Schrock, Esq. (w/attachments, ray.schrock@weil.com)
       Sunny Singh, Esq. (w/attachments, sunny.singh@weil.com)
         Weil, Gotshal & Manges LLP

This letter and the Terms of Engagement are agreed to and effective as of the date first written above.

**SEARS HOLDINGS CORPORATION ON BEHALF OF ITSELF AND
ITS DEBTOR AFFILIATES**

By: _____
Name:
Title:    M.Y. MEGHJI
          C.R.O.

**KATTEN MUCHIN ROSENMAN LLP**
**TERMS OF ENGAGEMENT**

The information below describes the terms that apply to the legal services provided for you by Katten Muchin Rosenman LLP (the "Firm").  We encourage you to discuss any of these Terms with us at any time.  If modifications to the Terms are needed, you should discuss that with us so that agreement on changes can be reached and reduced to writing.  All references to "you" or "your" means only the client or clients identified in our engagement letter.  **Individuals or entities that are related to or affiliated with you, such as partners, officers, directors, stockholders, parent companies, related companies, or family members, are not clients, unless we otherwise agree in writing.**

**I.     Scope of Representation.**  The scope of the work we will do for you is limited to the description stated in our engagement letter.  Any changes or additions to the scope of our work, which we would be pleased to consider, must be agreed to and memorialized by letter or email.  Unless that description states otherwise, **our engagement does not include responsibility for:** (1) review of your insurance policies to determine the possibility of coverage for our fees and costs or for the claim asserted against you, (2) notification of your insurance carriers about a matter, (3) advice to you about your disclosure obligations concerning a matter under the federal securities laws or any other applicable law, or (4) advice to you about tax issues that relate to a matter.  If we agree to represent you in additional matters, we will do so in writing by letter or email, and the Terms of our engagement will remain the same for these additional matters unless changed by agreement in writing.

Additionally, if in response to your request or by requirement of lawful process we: testify; gather and/or produce documents; respond to document hold or production requests; or respond to any other requests in connection with possible, threatened or actual proceedings commenced by third parties that relate to our representation of you, you agree to pay us our reasonable fees and costs incurred.

**II.    Staffing.**  Steven J. Reisman will have the primary responsibility for our relationship. We assign additional lawyers and other personnel when needed based upon the type of work and the appropriate experience level required.

**III.   Client Responsibilities.**  You agree to provide us with all information that we believe is necessary or appropriate to fulfill our professional responsibilities in this Matter and to cooperate with us in matters such as fact investigation, preparation of pleadings, discovery responses, settlement conferences, etc.  You will designate one or more persons to give us instructions and authority to receive our requests and inquiries.  You further agree that without our express written consent, you will not use our name or the fact of your engagement of us in any form of advertising or solicitation of business.

**IV.    Financial Arrangements.**

   A.    Fees and Expenses.  Our fee and expense arrangements are set forth the engagement letter.

Expenses include items such as consultants, filing fees, court reporting fees, travel costs, overnight or other special mail services, messenger services, photocopies, long distance telephone, outgoing faxes, research service charges (e.g., LEXIS), and other special services such as document imaging. Certain of these charges are adjusted to include administrative and overhead expenses incurred by the Firm to provide the billed service. With respect to costs incurred and payable to third parties, such as court reporters, it is our usual policy to forward those bills to you for payment directly to the third party, and you agree to pay those fees directly to the provider. As an accommodation to you, however, we may advance those costs on your behalf and include them in our monthly bills. Some large disbursements may be forwarded to you for direct payment. Some charges may not be in the system at the time of monthly billing and will appear on a later bill. For the avoidance of doubt, and as set forth in the engagement letter, the Firm is not responsible for payment of expert witness fees and expenses.

B.  **Billing and Payment**.  We reserve the right to terminate our representation of clients who do not pay promptly. We do not and cannot guarantee the outcome of any matter.

**V.    Electronic Communication.**  The use of email can be an efficient means of communication, and we use it often in communicating with clients. Some clients also use instant messaging as a means of communication. However, these electronic communications can be delayed or blocked (for example, by anti-spam software) or otherwise not transmitted. You must not assume that an email or instant message sent to us was actually opened and read by us unless you receive a non-automated reply message indicating that we have read your message.

**VI.   Responses to Auditors' Inquiries.**  We are frequently asked to provide information to auditing firms regarding client legal matters and we respond to those inquiries with the same level of care and professionalism used to handle the client's other legal work. We will accordingly charge for those services at the same rates. When you make a written request that we provide information to an auditing firm, we will deem your request to be your consent for us to disclose the requested information on your behalf. Additionally, when an auditing firm makes a written request for information on your behalf, that request will be deemed to be your consent for us to disclose that information to the auditing firm.

**VII.  Conclusion of Representation**.  We may also terminate our representation for any reason consistent with rules of professional responsibility, including conflicts of interest or your failure to pay our fees and expenses. Our representation may also be terminated upon your request subject to the terms of the engagement letter. Following termination, any nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional responsibility. Once our representation is concluded, we will not be obligated to take any steps such as keeping track of deadlines, filing papers, pursuing appeals, or monitoring or advising you about changes in the law or circumstances that might bear upon the concluded matter.

**VIII.   Disposition of Client Files.**  Upon conclusion of your representation, we may return to you your original papers, documents and/or other property that you provided to the Firm during our engagement. You agree to accept the return of such documents and/or property.  If you so request, we will also provide to you, at your expense, copies or originals of your complete file.  We reserve the right to make, at our expense, copies of all documents generated or received by us in the course of our representation of you.  The Firm will not provide copies or originals of the Firm Administrative or Matter Administration files pertaining to the Matter, which will be retained by the Firm.  All such documents retained by the Firm, including client files (including any original documents and/or property that we attempted unsuccessfully to return to you) and Firm Administrative or Matter Administration files, will be transferred to the person responsible for administering our records retention program.  For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any documents or other materials retained by us within a reasonable time, but not less than seven (7) years after the Matter is closed.

**Exhibit A**
**Rates**

| **PROFESSIONALS** | **STANDARD RANGE** |
|---|---|
| Partner | $785 - $1,430 |
| Associate | $450 - $930 |
| Counsel and Special Staff | $665 - $1,035 |
| Of Counsel | $865 - $1,205 |
| Paralegal | $190 - $545 |

4

**Exhibit B**
**Per Unit Expenses**

| Description | Cost per page |
|---|---|
| Fax | $1.60 |
| Photocopy Costs | $ .20 |
| Photocopy – Wide Format | $1.00 |
| Color Printing / Copies | $ .25 |

5

**Exhibit C**
**Katten Muchin Rosenman LLP Wire Instructions**

| | |
|---|---|
| Bank: | JP Morgan Chase Bank<br>1211 Avenue of the Americas<br>New York, New York 10036<br>Attn: Mindy Drogos<br>Phone 1-847-398-4102 |
| Account Name: | Katten Muchin Rosenman LLP Operating Account |
| Bank ABA#: | 021000021 |
| Account Number: | 967343933 |
| SWIFT Code: | CHASUS33 |
| Ref: | SEARS HOLDINGS CORPORATION ON BEHALF OF ITSELF AND ITS DEBTOR AFFILIATES |

**Exhibit D**
**Katten Muchin Rosenman LLP Form W-9**

US_139718377v1

| Form **W-9** (Rev. November 2017) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** ▶ Go to *www.irs.gov/FormW9* for instructions and the latest information. | Give Form to the requester. Do not send to the IRS. |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.
Katten Muchin Rosenman LLP

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.
☐ Individual/sole proprietor or single-member LLC    ☐ C Corporation    ☐ S Corporation    ☑ Partnership    ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):
Exempt payee code (if any) _____
Exemption from FATCA reporting code (if any) _____
*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.
525 West Monroe Street, Suite 1900

**6** City, state, and ZIP code
Chicago, Illinois 60661-3693

Requester's name and address (optional)

**7** List account number(s) here (optional)

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number: ___–___–____

or

Employer identification number: 36-2796532

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

Sign Here   Signature of U.S. person ▶ [signature]   Date ▶ 1/2/19

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)
• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
• Form 1099-S (proceeds from real estate transactions)
• Form 1099-K (merchant card and third party network transactions)
• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
• Form 1099-C (canceled debt)
• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See *What is backup withholding*, later.

Cat. No. 10231X   Form **W-9** (Rev. 11-2017)