Objection Deadline: TBD

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
In re:                                                     :   Chapter 11
                                                          :
SEARS HOLDINGS CORPORATION, *et al.*,                      :   Case No. 18-23538 (RDD)
                                                          :
                                                          :   (Jointly Administered)
                                                          :
                              Debtors.[1]                  :
---------------------------------------------------------- x

## NOTICE OF HEARING ON BILTMORE COMMERCIAL PROPERTIES I, LLC'S MOTION FOR IMMEDIATE PAYMENT OF POST-PETITION, PRE-REJECTION LEASE OBLIGATIONS AS ADMINISTRATIVE EXPENSES

**PLEASE TAKE NOTICE** that a hearing on *Biltmore Commercial Properties I, LLC's Motion for Immediate Payment of Post-Petition, Pre-Rejection Lease Obligations as Administrative Expenses* (the "Motion") will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York 10601-4140 (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

"Bankruptcy Court") on the next Omnibus Hearing date that is at least fourteen (14) days from the date of the Motion (the "Hearing"), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections ("Objections") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405), so as to be filed and received no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is seven (7) days before the Hearing (the "Objection Deadline").

[The remainder of this page is intentionally left blank.]

**PLEASE TAKE FURTHER NOTICE** that, if no Objections are filed and served with respect to the Motion by the Objection Deadline, the relief requested in the Motion may be granted without a hearing.

Dated:  July 3, 2019
      New York, New York

TROUTMAN SANDERS LLP

By: */s/ Brett D. Goodman*
    Brett D. Goodman
    Alissa K. Piccione
    875 Third Avenue
    New York, NY 10022
    Telephone: (212) 704-6000
    Facsimile: (212) 704-6288
    Brett.Goodman@troutman.com
    Alissa.Piccione@troutman.com

    Amy Pritchard Williams *(pro hac vice pending)*
    301 S. College Street, Suite 3400
    Charlotte, NC  28202
    Telephone: 704.998.4102
    amy.williams@troutman.com

    *Attorneys for Landlord*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
In re:                                                         :    Chapter 11
                                                               :
SEARS HOLDINGS CORPORATION, *et al.*,                          :    Case No. 18-23538 (RDD)
                                                               :
                                                               :    (Jointly Administered)
                                                               :
                                          Debtors.[1]          :
-------------------------------------------------------------- x

### BILTMORE COMMERCIAL PROPERTIES I, LLC'S MOTION FOR IMMEDIATE PAYMENT OF POST-PETITION, PRE-REJECTION LEASE OBLIGATIONS AS ADMINISTRATIVE EXPENSES

Biltmore Commercial Properties I, LLC ("Landlord"), by and through its undersigned counsel,

files this motion (the "Motion"), pursuant to section 365(d)(3) of title 11 of the United States Code,

11 U.S.C. § 101, *et seq*. (the "Bankruptcy Code") or, alternatively (and to the extent applicable),

section 503(b) of the Bankruptcy Code, compelling the immediate payment of post-petition, pre-

rejection obligations owed by Debtor Kmart Corporation ("Kmart") that remain outstanding under

a lease (the "Lease") between Landlord and Kmart for the premises located at 980 Brevard Road,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Asheville, North Carolina, and known as Kmart Store No. 3886 ("Store 3886"). In support of the Motion, Landlord states as follows:

## PRELIMINARY STATEMENT

On May 8, 2019, the Debtors noticed the Lease for rejection pursuant to section 365(a) of the Bankruptcy Code. But before that, the Debtors (at the urging of the then proposed buyer of the Lease) pursued assumption and assignment of the Lease, which Landlord opposed. Quite simply, the Debtors failed to satisfy the requirements for assuming and assigning the Lease in bankruptcy. The evening before the hearing on Landlord's objection, the Lease was removed from the list of contracts designated for assumption and assignment and was noticed for rejection shortly thereafter.

Section 365(d)(3) of the Bankruptcy Code undoubtedly requires a debtor-in-possession to perform timely post-petition, pre-rejection obligations under its unexpired leases. If the debtor fails to comply, as is the case here, then the Court may compel immediate payment of such obligations as administrative expenses. Unlike creditors asserting ordinary administrative expense claims, however, landlords asserting claims under section 365(d)(3) are not required to show a corresponding benefit to the estate that justifies priority payment or that the amount claimed is reasonable.

During the bankruptcy case, the Debtors failed to pay most common area maintenance charges and real estate taxes as required under the Lease and section 365(d)(3) of the Bankruptcy Code. And like many of the Debtors' stores, Store 3886 "went dark" post-petition.[2] Going dark had two main consequences for Landlord, both of which were negative. First, the "going out of business" signs that the Debtors hung in anticipation of ceasing operations at Store 3886 damaged

---

[2] Store 3886 went dark before the Lease was noticed for rejection.

39123797v5

Landlord's building and pylon. Under the Lease, the Debtor has the burden of paying these repair costs but has not done so. Second, one of the other tenants of the Landlord's shopping center was entitled to a rent reduction under the terms of its lease with Landlord once Kmart went dark. As a direct result of Kmart no longer operating in Store 3886, Landlord lost a significant amount of rent under that Lease. And had the Debtors rejected sooner, Landlord could have found a replacement tenant sooner. Therefore, the Debtors should pay Landlord the lost rent that it caused.

Because Kmart failed to pay its obligations, and initially put Landlord through the assumption and assignment process, Landlord enforced the Lease and incurred attorneys' fees, which Landlord seeks to recover pursuant to section 365(d)(3) of the Bankruptcy Code. As courts in this District have held, "The payment of attorney fees *is* an obligation of the lease that must be satisfied under section 365(d)(3) when the lease at issue provides for such recovery as an obligation of the Debtor." *E.g., In re Ames Dep't Stores, Inc.,* 306 B.R. 43, 81 (Bankr. S.D.N.Y. 2004). Alternatively, these attorneys' fees and any other costs deemed outside the scope of section 365(d)(3) are recoverable pursuant to section 503(b) of the Bankruptcy Code as administrative expenses.

Therefore, the Court should enter an order directing the Debtors to pay all the foregoing obligations to Landlord immediately.

## **BACKGROUND**

### *Debtors' bankruptcies and Lease rejection*

1.       On October 15, 2018 (the "Petition Date"), each of the above-captioned affiliated debtors and debtors in possession (each a "Debtor", and collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and each thereby commenced chapter

39123797v5

11 cases in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2.      The Debtors remain in possession of their property and continue to manage their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      The Landlord is the owner of the shopping center in which Kmart previously operated Store 3886. A true and correct copy of the Lease between Landlord and Kmart (and the Addendum thereto) for Store 3886 is attached as Exhibit A.

4.      On October 26, 2018 and November 19, 2019, the Court entered orders [Doc. Nos. 337 & 823] (the "Store Closing Orders") approving certain procedures that may be used by the Debtors to close any of their stores, distribution centers, and other non-retail locations (the "Closing Stores") and sell the inventory, furniture, fixtures, and equipment at the Closing Stores. Pursuant to the Store Closing Orders, the Debtors filed a *Notice of Intent to Conduct Store Closing Sales* [Doc. No. 1444], which included Store 3886 as a Closing Store.

5.      On March 10, 2019, Kmart ceased retail sales at Store 3886, and on March 15, 2019, Kmart vacated the premises.

6.      On November 21, 2018, the Debtors filed a motion [Doc. No. 429] (the "Sale Motion") seeking, among other things, entry of an order authorizing and approving the sale of certain "Acquired Assets" and the assumption and assignment of certain executory contracts and unexpired leases of the Debtors in connection therewith.

7.      On February 8, 2019, the Court entered an order [Doc. No. 2507] (the "Sale Order") approving the Asset Purchase Agreement, dated as of January 17, 2019, by and among Transform Holdco LLC (the "Buyer") and the seller parties thereto (including the Debtors and certain other subsidiaries of Sears Holding Corporation), authorizing the assumption and assignment of certain

4

executory contracts and leases in connection therewith, and granting related relief sought in the Sale Motion.

8.    In accordance with the terms of the Sale Order, the Buyer was granted the right to designate certain leases for assumption and assignment for up to sixty (60) days after the closing date, which date occurred on February 11, 2019 and was later extended through May 3, 2019.

9.    Originally, the Buyer designated the Lease for assumption and assignment. *See Notice of Assumption and Assignment of Additional Designatable* Leases, dated April 19, 2019 [Doc. No. 3298]. Landlord objected to the designation on various grounds, *see* Doc. Nos. 2284 & 3413 (together, the "Objection"), and Buyer filed an omnibus reply, *see* Doc. No. 3654.

10.    Shortly before the hearing on the Objection, the Buyer determined and informed Landlord that it would withdraw the Lease from the list of designated leases and have the Debtors reject the Lease pursuant to section 365 of the Bankruptcy Code. On May 8, 2019, the Debtors filed a *Notice of Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* [Doc. 3763] (the "Rejection Notice"), which included the Lease on the schedule of "Rejected Leases."

11.    Pursuant to the Rejection Notice and that certain *Order Authorizing Debtors to Establish Procedures for Rejection of Unexpired Leases of Nonresidential Real Property and Abandon Property in Connection Therewith* [Doc. No. 800], rejection of the Lease would be deemed effective as of May 8, 2019 (the "Rejection Date") unless an objection was timely filed and served.[3]

---

[3] Pursuant to the Rejection Notice, the deadline to object was May 20, 2019. Upon information and belief, no objections were filed. Accordingly, the rejection of the Lease became effective as of the Rejection Date.

12.     On May 23, 2019, the Court entered an *Order Approving the Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* [Doc. No. 4005] (the "Rejection Order").  On June 24, 2019, Landlord timely filed a proof of claim against Kmart for rejection damages in the amount of $611,133.93 and expressly reserved its right to file this Motion.

*Relevant Lease provisions and outstanding obligations*

  A.  *CAM charges*

13.     Pursuant to Article 15 of the Lease, Kmart is responsible for paying Landlord its pro rata share of common area maintenance ("CAM") charges. *See* Ex. A art. 15.  Landlord bills CAM charges quarterly.

14.     During the post-petition, pre-rejection period, Kmart incurred CAM charges in the following amounts, which remain unpaid:

| Dates Incurred | Amount |
|---|---|
| Petition Date – December 31, 2018 | $5,629.54[4] |
| January 1, 2019 through March 31, 2019 | $14,764.32 |
| April 1, 2019 through May 8, 2019 | $8,889.14 |
| TOTAL | $29,283.00 |

True and correct copies of the invoices and statements supporting these charges are attached as Exhibit "B".

---

[4] CAM charges are billed quarterly. The CAM charges for the fourth quarter of 2018 (October 1, 2018 through December 31, 2018) were $22,2941.48, of which $6,640 remains unpaid. Landlord has included the prorated amount of $1,010.46 (corresponding to the period October 1, 2018 through the Petition Date) in its rejection damages proof of claim.

15.    Relatedly, for the post-petition period of January 1, 2019 through April 1, 2019, Kmart incurred $879.49 for Ridgefield POA, which has not been paid.

B.  *Property damage and signs*

Pylon and exterior façade

16.    Under the Lease, Kmart has an ongoing obligation to pay for all maintenance, replacements, and repairs that were necessary to keep Store 3886 "in tenable condition, consistent with first-class community shopping centers . . . ." Ex. A art. 15.  And while Kmart is authorized, subject to obtaining Landlord's approval, to alter the building's façade, Kmart can only do so at its own expense. *See id.* art. 16.

17.    The Lease permits Kmart to hang signs on the building's exterior provided that "all signs shall be erected and installed at Tenant's sole expense and Tenant shall . . . remove . . . such signs." *Id.* art. 23. With respect to the shopping center's pylon, Kmart is obligated to pay its pro rata share of the maintenance costs but, for its own sign panel, Kmart is responsible for installation costs and replacement. *See id.* Further, Kmart has a duty to keep its sign panel in good condition and repair and, except for that sign (and the other tenants' identification signs), no other signs are permitted on the pylon. *See id.*

18.    In connection with its store closing, Kmart hung "going out of business" signs. Removing these signs and repairing the damage that they caused to the building's brick façade and shopping center's pylon cost Landlord $1,002.00 and $11,500.00, respectively, for a total of $12,502.00 in damages. Attached as <u>Exhibit "C"</u> are photos showing the damage caused by the going out of business signage.

HVAC units, plumbing, and miscellaneous items

19.    Kmart also caused other damage to the premises that was or must be repaired. Among other things, certain HVAC units required replacement parts and repairs, and plumbing

7

work is needed. This work and the actual or anticipated cost (the "Other Property Damages") can

be itemized as follows:

| Nature of Work | Cost |
|---|---|
| HVAC repair and replacement | $183,900.00 |
| Plumbing | $5,046.00 |
| Backflow testing | $400.00 |
| Janitorial cleaning | $11,475.00 |
| Power disconnects | $2,250.00 |
| Interior light repair | $11,360.00 |
| Scissor lift rental | $1,040.00 |
| Debris removal | $7,500.00 |
| Removal of data cabling | $10,000.00 |
| Removal of safe and satellite dishes; disassembly and disposal of cooler | $3,300.00 |
| **TOTAL** | **$236,271.00** |

20.     Attached as Exhibit D are copies of the invoices or estimates, as applicable, that

support the calculation of Other Property Damages. Attached as Exhibit E are photos evidencing

the physical damage Kmart caused to the HVAC units and other property on the premises.

8

C. *Real estate taxes*

21.     The Lease further obligates Kmart to pay all ad valorem real estate taxes and assessments during the Lease's term. *See* Ex. A art 5. During the post-petition, pre-rejection period, real estate taxes of $22,739.13 became due,[5] and that amount remains outstanding.

D. *Use*

22.     The Lease requires Kmart to use the premises for retail purposes only. *See* Ex. A add. at 2. Kmart violated this provision when it let Store 3886 "go dark" before the Lease was rejected, which, in turn, triggered a rent reduction provision of another lease for space in the shopping center. The other tenant's monthly rent was automatically reduced from $4,302.00 to $2,025.00, and the tenant was no longer obligated to pay CAM or other charges as of March 10, 2019. Attached as <u>Exhibit "F"</u> is a true and correct copy of a letter from that other tenant notifying Landlord that the rent reduction provision of its lease had gone effective.

23.     The rent reduction under the other lease continues through the end of the other tenant's current term. Accordingly, Landlord's damages, for which Kmart is responsible pursuant to the use clause discussed above and the indemnification clause discussed below, totaled $13,637.00.

E. *Indemnification and attorneys' fees*

24.     Kmart is required to indemnify Landlord from, among other things, all costs, liabilities, damages, and expenses. *See* Add. at 2. While enforcing the Lease (in the context of assumption and assignment), Kmart incurred attorneys' fees of at least $65,849.60. Such fees, costs, and expenses are reimbursable under the Lease.

---

[5] This amount includes the prorated amount of $1,171.00 for real estate taxes incurred from May1, 2019 through May 8, 2019.

39123797v5

## RELIEF REQUESTED

25.     Landlord requests entry of an order pursuant to section 365(d)(3) of the Bankruptcy Code or, alternatively (and to the extent applicable), section 503(b) of the Bankruptcy Code, directing the Debtors to pay at least $381,161.22 immediately to Landlord for obligations incurred during the post-petition, pre-rejection period under the Lease. But if the Court should determine that any portion of Landlord's administrative expenses are not allowable as such, Landlord reserves the right to add such expenses to its unsecured claim.

## BASIS FOR RELIEF

I.     **Section 365(d)(3) of the Bankruptcy Code requires debtors in possession to pay full rent and other obligations that arise under their leases before rejection.**

26.     Section 365(d)(3) provides, in relevant part, "The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3). "Obligations" include "rent, common area, and other charges . . . pending the trustee's assumption or rejection of the lease." 130 CONG. REC. S8894–95 (daily ed. June 29, 1984) (statement of Sen. Hatch). In other words, the scope of section 365(d)(3) is not limited to base rent. *In re Pudgie's Dev. of NY, Inc.* (*Pudgie's I*), 202 B.R. 832, 834–35 (Bankr. S.D.N.Y. 1996) ("The statute, in mandatory language, requires performance of 'all the obligations.'"); *accord In re Cukierman,* 265 F.3d 846, 851 (9th Cir. 2001) ("Interpreting § 365(d)(3) as a bright-line rule, encompassing all obligations contained in a bargained-for agreement, ensures prompt performance of lease obligations by bankruptcy trustees. The simplicity of this rule prevents delays and disputes caused by uncertainty over whether the provision applies to any given lease obligation.").

10

27. If the debtor violates section 365(d)(3), courts will usually treat the unpaid obligations as "automatic" administrative expenses that are "independent of section 503(b)." *In re BH S&B Holdings LLC*, 401 B.R. 96, 103 (Bankr. S.D.N.Y. 2009) (citation and internal quotation marks omitted). Relying on the express language of section 365(d)(3), courts have held that commercial landlords need not show that the lease benefitted the estate or that the amounts owed are reasonable, which would normally be required to claim administrative priority under section 503(b)(1) of the Bankruptcy Code. *See In re Microvideo Learning Sys., Inc.*, 232 B.R. 602, 604 (Bankr. S.D.N.Y.), *aff'd*, 254 B.R. 90 (S.D.N.Y. 1999), *aff'd,* 227 F.3d 474 (2d Cir. 2000) (collecting cases); *Pudgie's I*, 202 B.R. at 834–35 (same). This means that (i) administrative priority is appropriate even if the debtor vacated the premises during the post-petition, pre-rejection period, and (ii) the landlord is entitled to rent and other charges arising before rejection in the full amount required by the lease. *See, e.g., In re B. B. Ballew Sales Co., Inc.,* No. 96 CIV. 4267 RPP, 1996 WL 551663, at *3 (S.D.N.Y. Sept. 26, 1996)*. Congress intentionally granted landlords this extra protection because landlords "may be *compelled* to continue performing post-petition whereas virtually every other category of administrative creditor who extends credit or provides goods or services post-petition does so voluntarily with knowledge of the degree of risk of administrative insolvency." *Pudgie's I*, 202 B.R. at 836; *see also In re Microvideo Learning Sys., Inc.*, 232 B.R. at 604.

28. During the pre-rejection period of Kmart's bankruptcy case, CAM charges, repair costs, real estate taxes, and other reimbursement obligations, including attorneys' fees, became due and, notwithstanding Store 3886 going dark, must be paid immediately (*see infra* section II regarding timing of payment).

11

29.     As a threshold matter, it cannot be disputed that the Lease is for nonresidential real estate. Accordingly, the Debtors must comply with section 365(d)(3) of the Bankruptcy Code and pay all post-petition, pre-rejection Lease obligations in full. This is true even though Kmart ceased operating a retail business at Store 3886 before rejecting the Lease.

30.     The table below identifies the nature of each of Kmart's outstanding obligations, the amount of each obligation and any exhibits that support the calculation, the relevant lease provision under which each obligation arose, and the date incurred:

| Obligation | Amount /w Ex. Refs. | Lease Art(s). | Date Incurred |
|---|---|---|---|
| CAM charges (prorated) | $29,283.00; Ex. B | Art. 15 | Petition Date – Rejection Date |
| Ridgefield POA | $879.49 | Art. 15 | 1/1/19 – Rejection Date |
| Repair costs | $12,502.00; Ex. C $236,271.00; Ex. D, E | Arts. 15, 16, 23, 31 | Petition Date – Rejection Date |
| Real estate taxes (prorated) | $22,739.13 | Art. 5 | Petition Date – Rejection Date |
| Use violation | $13,637.00; Ex. F | Add. at 2 | 3/10/19 |
| Attorneys' fees | $65,849.60 | Add. at 2 | Petition Date – Rejection Date |

31.     For the avoidance of doubt, Landlord submits that the attorneys' fees relate to Landlord's enforcement of its Lease (albeit in the context of assumption and assignment of the Lease). During those proceedings, Landlord sought to enforce the payment terms of the Lease and restrictive covenants. Landlord further submits that the attorneys' fees are reasonable based on the scope of legal work required, arose directly from the requirement set forth on page 2 of the Lease Addendum, and arose during the pre-rejection period. Therefore, they are covered by section 365(d)(3). *See In re Ames Dep't Stores, Inc.,* 306 B.R. at 81; *see also Urban Retail Properties v. Loews Cineplex Entm't Corp.,* No. 01 CIV.8946 (RWS), 2002 WL 535479, at *9 (S.D.N.Y. Apr.

12

9, 2002) ("[B]ecause the Lease provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the Debtor's other obligations that arise postpetition and therefore should be awarded.").

32.     Based on the unambiguous terms of the Lease and section 365(d)(3) of the Bankruptcy Code, Landlord is entitled to an order compelling the Debtors to pay a total of at least $381,161.22 to Landlord as post-petition, pre-rejection lease obligations.

## II.    Under section 365(d)(3) of the Bankruptcy Code, all obligations arising under an unexpired lease of nonresidential real property must be paid immediately.

33.     A debtor must pay its section 365(d)(3) obligations immediately unless, perhaps, it is administratively insolvent or there is other cause to delay payment. *Compare In re Microvideo Learning Sys., Inc.*, 232 B.R. at 609 ("Here, I am faced with an administratively insolvent debtor. As a result, when an administrative expense is paid will determine whether it is going to paid at all."), *and In re Pudgie's Dev. of NY, Inc.,* 239 B.R. 688, 693 (S.D.N.Y. 1999) (*Pudgie's II*) (denying automatic, super-priority claim for accrued rent when debtors were administratively insolvent), *with In re Telesphere Commc'ns, Inc.,* 148 B.R. 525, 529 (Bankr. N.D. Ill. 1992) ("[T]o withhold payment when the debtor may be administratively insolvent would actually reverse legislative intent, because it would require involuntary extensions of credit by lessors in the very circumstances where the debtors are least likely to honor their lease obligations.").

34.     Even if some courts have recognized an exception to the usual rule, the exception does not apply here: There is no evidence that the Debtors are administratively insolvent. Based on the Debtors' plan and disclosure statement, it seems that Kmart has the wherewithal to pay professionals and other priority claimants in full, with funds remaining for unsecured creditors. Moreover, Landlord has not "sat on its rights" by allowing unpaid obligations to accrue over an extended period before seeking relief from this Court. *See Pudgie's II,* 239 B.R. at 696–97

13

(landlord waited over 17 months from petition date to file section 365(d)(3) motion). Rather, Landlord timely moves this Court to compel payment.[6] Therefore, immediate payment of the Lease obligations is appropriate under the circumstances.[7]

### III.   If the Court determines that any post-petition obligation for which Landlord requests immediate payment is outside the scope of section 365(d)(3), then any such obligation is an administrative expense pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

35.     Pursuant to section 503(b)(1)(A), the "actual, necessary costs and expenses of preserving the estate" are administrative expenses entitled to priority payment. 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2).

36.     To the extent any claims in this Motion are not otherwise immediately payable pursuant section 365(d)(3), then they are entitled to administrative expense priority pursuant to section 503(b)(1)(A). Kmart's estate benefitted from the opportunity to market the Lease and conduct going-out-of-business sales on the premises. Therefore, Kmart's estate would be unjustly enriched if Landlord is not compensated for these benefits that the Lease conferred on the estate.

---

[6] Until early May 2019, it seemed as if Kmart was going to assume the Lease and would have been required to promptly cure Kmart's outstanding Lease obligations.

[7] At the very least, Landlord is entitled to share pro rata with other administrative priority creditors. As one court explained,

> The Court, however, does not follow the line of cases that would give this administrative expense claim for post-petition rental payments a "super-priority" status; it is simply an administrative expense of equal priority with other administrative claims under § 507(a)(1). There are probably enough assets in this case to pay all administrative claims, and therefore, the Court could order that any administrative claim for post-petition rent by Petula be paid immediately. However, in a case where the estate is insolvent and is unable to pay all administrative expenses, the landlord is entitled to payment on a pro-rata basis with all other allowed administrative claims.

*In re Amber's Stores, Inc.*, 193 B.R. 819, 825 (Bankr. N.D. Tex. 1996).

39123797v5

## RESERVATION OF RIGHTS

37.    Landlord reserves the right to supplement, amend, or otherwise modify this Motion and to, among other things, claim additional amounts arising from or related to the Lease as obligations payable as administrative expenses under section 365(d)(3) of the Bankruptcy Code or under section 503(b) of the Bankruptcy Code, as applicable. Nothing in this Motion prevents Landlord from supplementing, amending, or otherwise modifying its proof of claim for rejection damages. All Landlord's rights and remedies under the Lease are expressly reserved.

## CONCLUSION

38.    For all the reasons stated in this Motion, Landlord respectfully requests entry of an order directing the Debtors to pay Landlord at least $381,161.22 immediately as administrative expenses. In the alternative, if the Court should determine that any portion of Landlord's administrative expenses are not allowable as such, Landlord reserves the right to add such expenses to its unsecured claim.

Dated:  July 3, 2019
      New York, New York

                TROUTMAN SANDERS LLP

                By: */s/ Brett D. Goodman*  _____
                      Brett D. Goodman
                      Alissa K. Piccione
                      875 Third Avenue
                      New York, NY 10022
                      Telephone: (212) 704-6000
                      Facsimile: (212) 704-6288
                      Brett.Goodman@troutman.com
                      Alissa.Piccione@troutman.com

                      Amy Pritchard Williams *(pro hac vice pending)*
                      301 S. College Street, Suite 3400
                      Charlotte, NC  28202
                      Telephone: 704.998.4102
                      amy.williams@troutman.com

                      *Attorneys for Landlord*

39123797v5

## PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- x
In re:                                              :    Chapter 11
                                                    :
SEARS HOLDINGS CORPORATION, et al.,                 :    Case No. 18-23538 (RDD)
                                                    :
                                                    :    (Jointly Administered)
                                                    :
                        Debtors.¹                   :
-------------------------------------------------------- x
```

### ORDER GRANTING BILTMORE COMMERCIAL PROPERTIES I, LLC'S MOTION FOR IMMEDIATE PAYMENT OF POST-PETITION, PRE-REJECTION LEASE OBLIGATIONS AS ADMINISTRATIVE EXPENSES

Upon the motion (the "Motion")[2] of Biltmore Commercial Properties I, LLC ("Landlord")

for entry of an order compelling the immediate payment of post-petition, pre-rejection obligations

owed by Debtor Kmart Corporation ("Kmart") that remain outstanding under a lease (the "Lease")

between Landlord and Kmart for the premises located at 980 Brevard Road, Asheville, North

Carolina, and known as Kmart Store No. 3886 ("Store 3886"); and the Court having found that it

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b); and the Court

having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having

found that venue of the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and the Court having found that Landlord provided appropriate notice of the Motion and that no

other notice need be provided; and the Court having determined that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Within five (5) business days of entry of this Order, the Debtors shall pay

$381,161.22 to Landlord for post-petition, pre-rejection obligations that remain outstanding under

the Lease.

3.      The Court shall retain jurisdiction to hear and determine all matters arising from or

related to the implementation, interpretation, or enforcement of this Order.