# Friedmann

# *EXHIBIT B*

*IN RE: SEARS HOLDINGS CORPORATION, et al.*

*MOHSIN MEGHJI*
*June 21, 2019*



ELLEN GRAUER
COURT REPORTING CO. LLC
A U.S. Legal Support Company

*Original File 275535.txt*
*Min-U-Script® with Word Index*

```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK
     ------------------------------------X
 3   In Re:

 4   SEARS HOLDINGS CORPORATION, et al.,

 5                    Debtor.

 6   Chapter 11 - Case No.: 18-23538 (RDD)
     ------------------------------------X
 7

 8                    767 Fifth Avenue
                      New York, New York
 9
                      June 21, 2019
10                    11:33 a.m.

11

12          DEPOSITION of MOHSIN MEGHJI, before

13   Melissa Gilmore, a Shorthand Reporter and

14   Notary Public of the State of New York.

15

16

17

18

19

20

21

22

23      ELLEN GRAUER COURT REPORTING CO., LLC
          126 East 56th Street, Fifth Floor
24             New York, New York 10022
                   212-750-6434
25                 REF:  275535
```

```
 1   A P P E A R A N C E S:

 2


 3   WEIL GOTSHAL & MANGES, LLP

 4   Attorneys for Debtors and Debtors-in-Possession,

 5   Sears Holdings Corporation, et al.

 6        767 Fifth Avenue

 7        New York, New York 10153

 8   BY:  JARED R. FRIEDMANN, ESQ.

 9        JENNIFER CROZIER, ESQ.

10        PHONE 212-310-8828

11        E-MAIL jared.friedmann@weil.com

12               jennifer.crozier@weil.com

13

14   WEIL, GOTSHAL & MANGES, LLP

15   Attorneys for Debtors and Debtors-in-Possession,

16   Sears Holdings Corporation, et al.

17        200 Crescent Court, Suite 300

18        Dallas, Texas 75201-6950

19   BY:  PAUL GENENDER, ESQ.

20        PHONE 214-746-7877

21        E-MAIL paul.genender@weil.com

22

23

24

25
```

```
 1   A P P E A R A N C E S:   (Cont'd)
 2
 3   CLEARY GOTTLIEB STEEN & HAMILTON LLP
 4   Attorneys for ESL Investments, Inc.
 5        One Liberty Plaza
 6        New York, New York 10006
 7   BY:  ABENA MAINOO, ESQ.
 8        BRIAN P. GIUNTA, ESQ.
 9        PHONE 212-225-2785
10        E-MAIL amainoo@cgsh.com
11               bgiunta@cgsh.com
12
13   AKIN GUMP STRAUSS HAUER & FELD LLP
14   Attorneys for Unsecured Creditors
15        One Bryant Park
16        New York, New York 10036-6745
17   BY:  JOHN P. KANE, ESQ.
18        PHONE 212-872-1006
19        E-MAIL jkane@akingump.com
20
21   ALSO PRESENT:
22        BRIAN GRIFFITH, M-III
23        CHRISTOPHER GOOD, M-III
24        JACK WHITELEY, Law Clerk, Cleary Gottlieb
25        STEVE SZROM, Law Clerk, Cleary Gottlieb
```

```
 1   ------------------ I N D E X ------------------
 2   WITNESS              EXAMINATION BY              PAGE
 3   MOHSIN MEGHJI        MS. MAINOO                    6
 4                        MR. FRIEDMANN                67
 5
 6
 7   ---------------- E X H I B I T S ----------------
 8   MEGHJI               DESCRIPTION              FOR I.D.
 9   Exhibit 1            E-Mail from Natasha           9
10                        Hwangpo, dated January 6,
11                        2019
12   Exhibit 2            E-Mail from Josh             23
13                        Gruenbaum to Kunal
14                        Kamlani, dated January 8,
15                        2019
16   Exhibit 3            Minutes of Meeting,          25
17                        January 9, 2019, Bates
18                        Stamped SEARS_UCC00413790
19                        through 413792
20   Exhibit 4            E-Mail from Charles Allen    30
21                        to Brandon Aebersold,
22                        dated January 9, 2019
23   Exhibit 5            Asset Purchase Agreement,    38
24                        Execution Version
25
```

```
 1    ------------ E X H I B I T S (Cont'd) -----------
 2    MEGHJI              DESCRIPTION                 FOR I.D.
 3    Exhibit 6           E-Mail from Chris Good to      48
 4                        Kunal Kamlani, dated
 5                        January 8, 2019
 6    Exhibit 7           E-Mail from Josh               51
 7                        Gruenbaum to Cullen
 8                        Murphy, dated January 28,
 9                        2019
10    Exhibit 8           E-Mail from Hayden             57
11                        Guthrie to Charles Allen,
12                        dated February 4, 2019
13    Exhibit 9           Amendment No. 1 to Asset       65
14                        Purchase Agreement
15
16
17              (EXHIBITS TO BE PRODUCED)
18
19
20
21
22
23
24
25
```

```
 1   M O H S I N   M E G H J I,   called as a
 2        witness, having been duly sworn by a
 3        Notary Public, was examined and testified
 4        as follows:
 5
 6   EXAMINATION BY
 7   MR. MAINOO:
 8        Q.   Good morning.  As I mentioned
 9   earlier, my name is Abena Mainoo.  I'm a lawyer
10   at Cleary Gottlieb.  I represent Transform
11   Holdco.
12        A.   Good morning.
13        Q.   Please state your name for the
14   record.
15        A.   Mohsin Meghji, M-O-H-S-I-N.
16        Q.   Mr. Meghji, you have been deposed
17   before?
18        A.   Yes.
19        Q.   So you understand that the court
20   reporter will be recording your answers and I
21   will be asking you questions?
22        A.   I do.
23        Q.   And in response to my questions, I
24   need you to answer orally so the court reporter
25   can record your responses.
```

```
 1                      MEGHJI
 2   used in the Asset Purchase Agreement, correct?
 3        A.    I believe so.
 4        Q.    How is the term "ordered inventory"
 5   used in the Asset Purchase Agreement?
 6        A.    Can I have a look at the Asset
 7   Purchase Agreement?  I don't recall it
 8   specifically.
 9        Q.    Okay.
10              (Meghji Exhibit 5, Asset Purchase
11         Agreement, Execution Version, marked for
12         identification.)
13        Q.    Mr. Meghji, you have been handed
14   Exhibit 5, which is the Asset Purchase
15   Agreement, execution version, and the
16   definition of ordered inventory is on page 24.
17              And it says, "Ordered inventory
18   shall mean inventory other than prepaid
19   inventory of the type set forth on Schedule
20   1.1(f) that has been ordered by sellers prior
21   to the closing date, but as to which sellers
22   have not taken title or delivery prior to the
23   closing date."
24              So my question, Mr. Meghji, ordered
25   inventory would have come with payment
```

```
 1                       MEGHJI
 2    obligations, correct?
 3         A.    No.
 4               MR. FRIEDMANN:  Object to form.
 5         A.    Not in this instance.
 6         Q.    Ordered inventory would have had
 7    some associated payment obligations at some
 8    point in time, correct?
 9               MR. FRIEDMANN:  Object to form.
10         A.    Let me read this again, and I'll
11    explain.  "Ordered inventory shall mean
12    inventory of the type" --
13               MR. FRIEDMANN:  Don't skip words.
14         A.    "Ordered inventory shall mean
15    inventory other than prepaid inventory of the
16    type set forth on Schedule 1.1(f) that has been
17    ordered by sellers prior to the closing date,
18    but as to which sellers have not taken title or
19    delivery prior to the closing date."
20               For this type of ordered inventory,
21    there is no payment obligation.
22         Q.    When ordered inventory is delivered,
23    there is a payment obligation, correct?
24               MR. FRIEDMANN:  Object to form.
25         A.    When ordered inventory is delivered
```

```
 1                          MEGHJI
 2   in the future, there is -- there will -- it
 3   will create a future payment obligation.  This
 4   says here, "but as to which sellers have not
 5   taken title or delivery prior to the closing
 6   date."
 7        Q.    When inventory that has been ordered
 8   is delivered, payment needs to be made to the
 9   vendor that sends the inventory, correct?
10        A.    After it's delivered.
11        Q.    Okay.
12        A.    And title -- and/or title has been
13   taken.
14        Q.    ==And so there would be value in
15   transferring the liability to make that payment
16   to the vendor, correct?==
17              MR. FRIEDMANN:  Object to form.
18        A.    I'm sorry.  There's no liability
19   associated with ordered inventory as it's
20   defined here, under the term "ordered
21   inventory."
22        Q.    I think you agreed with me when I
23   said, "When inventory that has been ordered is
24   delivered, the payment needs to be made to the
25   vendor."
```

```
 1                    MEGHJI
 2             But then, at that point, it creates
 3     an asset called prepaid inventory.
 4          Q.    Are there any payment obligations
 5     associated with ordered inventory?
 6             MR. FRIEDMANN:  Object to form.
 7             You're referring to ordered
 8        inventory generally or as it's defined in
 9        the APA?
10        A.    Liabilities only get created or cash
11     goes out for prepaid inventory.  Liabilities do
12     not get created simply from ordered inventory.
13        Q.    And my question is, are there any
14     payment obligations associated with ordered
15     inventory?
16             MR. FRIEDMANN:  Object to form,
17        asked and answered.
18        A.    Not that I can think of.
19             (Meghji Exhibit 6, E-Mail from Chris
20        Good to Kunal Kamlani, dated January 8,
21        2019, marked for identification.)
22        Q.    Mr. Meghji, you have been handed
23     what's marked as Exhibit 6.  At the top of it
24     is an e-mail from Chris Good to
25     kunal@eslinvest.com.  And you're copied on it.
```

```
1                       MEGHJI
2        Q.    Do you remember anything else from
3   this conversation?
4        A.    Not off the top of my head.
5        Q.    Mr. Gruenbaum worked at Moelis,
6   correct?
7        A.    Yes.
8        Q.    And Moelis was Transform's advisor?
9        A.    Correct.
10       Q.    Mr. Kamlani, are you familiar with a
11  credit provided under an economic development
12  agreement to Sears Holdings Corporation?
13             MR. FRIEDMANN:  It's not
14     Mr. Kamlani.
15       A.    Mr. Kamlani is not here.
16       Q.    Apologies.  This document mentions
17  Mr. Kamlani.
18             Mr. Meghji, are you familiar with
19  the credit provided to Sears Holdings
20  Corporation under an economic development
21  agreement?
22       A.    Yes.
23       Q.    And is it your understanding that
24  Sears' eligibility for that economic
25  development agreement credit was based on the
```

```
 1                     MEGHJI
 2     number of workers with 35 or more hours a week
 3     employed by Sears, Sears' contractors and
 4     attendant companies at Hoffman Estates?
 5          A.    In general, yes.
 6                (Meghji Exhibit 8, E-Mail from
 7          Hayden Guthrie to Charles Allen, dated
 8          February 4, 2019, marked for
 9          identification.)
10          Q.    Mr. Meghji, you have been handed
11     Exhibit 8.  It's an e-mail from Hayden Guthrie
12     at Weil, dated February 4, 2019, and the e-mail
13     reads, "Please see attached for an updated
14     draft of the APA amendments and a redline
15     against the Cleary draft of February 3, 2019,"
16     correct?
17          A.    That's what it looks like, correct.
18          Q.    And according to this e-mail, Weil
19     was sending an updated version of the
20     amendments to the Asset Purchase Agreement,
21     correct?
22          A.    That's what it says.
23          Q.    So let's turn to the attachment,
24     which is entitled "Amendment No. 1 to Asset
25     Purchase Agreement."
```

```
 1                    MEGHJI
 2            You previously provided a
 3   declaration to the bankruptcy court concerning
 4   those, the receipt of monies from the EDA
 5   funds, correct?
 6       A.   Yes.
 7       Q.   What is your understanding as to how
 8   those EDA funds are created?  Where does that
 9   money come from?
10       A.   It's a rebate of the property taxes
11   paid by Sears.
12       Q.   Mr. Meghji, you were also asked
13   earlier a series of questions about ordered
14   inventory.  And when I'm asking questions, I'm
15   referring specifically to ordered inventory as
16   that term is defined in the Asset Purchase
17   Agreement.
18            So if you want to turn to the
19   definition there to make sure you've got that
20   in mind when answering the question.
21       A.   Okay.
22       Q.   It's on page 24 for everybody
23   following along at home.
24            Why is it that ordered inventory, as
25   it's defined in the Asset Purchase Agreement,
```

1                    MEGHJI
2     doesn't create any payment obligation?
3           A.    Because, as defined in the purchase
4     agreement, where you have not taken title or
5     delivery of ordered inventory, there is no
6     payment obligation.  So you could cancel that
7     order and not have any liability.
8           Q.    So was there some benefit to the
9     debtor from Transform agreeing to take on or
10    assume the obligations for any ordered
11    inventory as that term is defined in the Asset
12    Purchase Agreement?
13          A.    There was no financial benefit.  It
14    was really to ensure that, as an ongoing
15    business, they assumed the ordered inventory
16    obligations to keep the business running.
17          Q.    But on the same side, what if
18    Transform had said, no, we're not going to take
19    it, we're going to leave the ordered inventory
20    with Sears or with debtor, I should say, would
21    debtor have been worse off had Transform not
22    agreed to take on the ordered inventory?
23          A.    I think we would have gone to the
24    vendors and canceled the orders.
25          Q.    Would there have been any impact,

70

```
 1                       MEGHJI
 2   from your perspective as the CRO, on the
 3   debtor's financial status by doing so?
 4        A.    Not -- there would not be a
 5   significant liability if we hadn't taken any of
 6   the goods, either delivery or title of those.
 7        Q.    Would there have been a payment
 8   obligation if you had canceled those orders?
 9        A.    I don't believe so.
10             MR. FRIEDMANN:  I have nothing
11        further.
12             MS. MAINOO:  Nothing further.
13             MR. FRIEDMANN:  Thank you.
14             MS. MAINOO:  Thank you.
15             (Time noted:  1:07 p.m.)
16
17
18
19
20
21
22
23
24
25
```

```
 1              A C K N O W L E D G M E N T
 2
 3    STATE OF                 )
 4                             :ss
 5    COUNTY OF                )
 6
 7          I, MOHSIN MEGHJI, hereby certify
 8    that I have read the transcript of my testimony
 9    taken under oath in my deposition; that the
10    transcript is a true, complete and correct
11    record of my testimony, and that the answers on
12    the record as given by me are true and correct.
13
14                         _____
15                              MOHSIN MEGHJI
16
17
18    Signed and subscribed to before me
19    this _____ day of _____, ____.
20
21    _____
22    Notary Public, State of _____
23
24
25
```

```
1                C E R T I F I C A T E
2

3    STATE OF NEW YORK   )
4                        :ss
5    COUNTY OF RICHMOND  )
6

7            I, MELISSA GILMORE, a Notary Public
8    within and for the State of New York, do hereby
9    certify:
10           That MOHSIN MEGHJI, the witness
11   whose deposition is hereinbefore set forth, was
12   duly sworn by me and that such deposition is a
13   true record of the testimony given by such
14   witness.
15           I further certify that I am not
16   related to any of the parties to this action by
17   blood or marriage; and that I am in no way
18   interested in the outcome of this matter.
19           IN WITNESS WHEREOF, I have hereunto
20   set my hand this 21st day of June, 2019.
21
22
23   [signature: Melissa Gilmore]
24   _____
25   MELISSA GILMORE
```