# Friedmann

# *EXHIBIT D*

Page 1

1  UNITED STATES BANKRUPTCY COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------------x
3  In re:
4  SEARS HOLDINGS CORPORATION, et al.,
            Debtor.
5
6           Chapter 11
            Case No. 18-23538 (RDD)
7
8  ------------------------------------x
9       ***HIGHLY CONFIDENTIAL***
10  30(b)(6) DEPOSITION OF ESL INVESTMENTS, INC.,
11     BY ITS CORPORATE REPRESENTATIVE
12            KUNAL KAMLANI
13         NEW YORK, NEW YORK
14       WEDNESDAY, JANUARY 23, 2019
15
16
17
18
19
20
21  Reported by:
22  MARK RICHMAN, CSR, RPR, CM
23  JOB NO:   154614
24
25

1
2
3              New York, New York
4              January 23, 2019
5              11:45 A.M.
6
7         30(b)(6) DEPOSITION of ESL INVESTMENTS,
8    INC. by its Corporate Representative KUNAL
9    KAMLANI, held at the offices of Akin Gump
10   Strauss Hauer & Feld LLP, One Bryant Park, New
11   York, New York, before MARK RICHMAN, a
12   Certified Shorthand Reporter, Registered
13   Professional Reporter and Notary Public of the
14   State of New York
15
16
17
18
19
20
21
22
23
24
25

1   APPEARANCES:

2

3   AKIN GUMP STRAUSS HAUER & FELD

4   Attorneys for Unsecured Creditors

5           One Bryant Park

6           Bank of America Tower

7           New York, New York 10036

8   BY:     ABID QURESHI, ESQ.

9           DEAN CHAPMAN, JR., ESQ.

10          JOHN KANE, ESQ.

11          JOSEPH SORKIN, ESQ.

12          CHRISTOPHER CARTY, ESQ.

Page 4

1    A P P E A R A N C E S (Continued):

2

3    WEIL, GOTSHAL & MANGES

4    Attorneys for Debtors

5    and Debtors-in-Posession: Sears Holdings

6    Corporation, et al.

7    200 Crescent Court

8    Dallas, Texas 75201

9    BY:    PAUL GENENDER, ESQ.

10           JENNIFER CROZIER, ESQ.

11

12

13

14

15

16   WEIL, GOTSHAL & MANGES

17   Attorneys for Debtors

18   and Debtors-in-Posession: Sears Holdings

19   Corporation, et al.

20           767 Fifth Avenue

21           New York, New York 10153

22   BY:    GARRETT FAIL, ESQ.

23

24

25

1   A P P E A R A N C E S (Continued):

2   SKADDEN, ARPS, SLATE, MEAGHER & FLOM

3   Attorneys for the ABL Lenders

4           4 Times Square

5           New York, New York 10036

6   BY:     SHANA ELBERG, ESQ.

12  PAUL, WEISS, RIFKIND, WHARTON & GARRISON

13  Attorneys for the Restructuring Committee

14          1285 Avenue of the Americas

15          New York, New York 10019

16  BY:     DAVID GILLER, ESQ.

17          KAREN KING, ESQ.

1  A P P E A R A N C E S (Continued):

2

3  CLEARY GOTTLIEB STEEN & HAMILTON

4  Attorneys for ESL Investments, Inc.

5  and the Witness

6       One Liberty Plaza

7       New York, New York 10006

8  BY:   JAMES BROMLEY, ESQ.

9        LEWIS LIMAN, ESQ.

10       ILYA GLINCHENKO, ESQ.

11

12

13

14

15

16  PRESENT:

17  MICHAEL BAIRD, Pension Benefit Corp (via phone)

18  SAMUEL STAR, FTI Consulting

19  CHRISTA HART, FTI Consulting

20  MARSHALL EISLER, FTI Consulting

21  BRADLEY GEER, Houlihan Lokey

22  NATALIE WEELBORG, Houlihan Lokey

23

24

25

1            KAMLANI (HIGHLY CONFIDENTIAL)
2                KUNAL KAMLANI, called as a
3       witness, having been first duly sworn
4       by the Notary Public (Mark Richman),
5       was examined and testified as
6       follows:
7                EXAMINATION BY MR. QURESHI:
8       Q.    Mr. Kamlani, good morning.  For
9    the record, my name is Abid Kureshi of
10   Akin Gump, and as I think you know we
11   represent the Official Committee of
12   Unsecured Creditors in these cases.
13   Sir, have you had your deposition taken
14   before?
15      A.    Not by you.
16      Q.    But you have been deposed before?
17      A.    I have.
18      Q.    Okay.  Then I am going to
19   dispense with reminding you of the rules
20   of the road for this type of proceeding,
21   other than to tell you that if you don't
22   understand a question that I ask you or
23   if you need a clarification, please ask
24   me and I'll be happy to restate or
25   clarify the question.  If you don't do

1                KAMLANI (HIGHLY CONFIDENTIAL)
2        Q.      So what I'm trying to understand
3    is why do you draw a connection between
4    the proceeds coming into the estate to
5    pay down the first lien and the
6    assumption of the junior DIP on the one
7    hand, and liabilities on the other?
8        A.      So this transaction was not put
9    together in an hour or a day.  The final
10   transaction was a negotiation that took
11   a course over several days if not weeks
12   to land in a final spot.
13            Along the way in that negotiation
14   there was several discussions about
15   Transformco assuming the liabilities of
16   the estate.
17            The estate was concerned that --
18   let me rephrase.
19            During the discussions with
20   respect to TransformCo's willingness to
21   take over liabilities of the estate, the
22   representatives of the estate provided
23   us with their view on what their debt
24   balances were going to be at closing and
25   what their cash was going to be at

1            KAMLANI (HIGHLY CONFIDENTIAL)
2    closing.
3            Rather than debate them on what
4    the debt balances were going to be at
5    closing, we agreed to just take their
6    numbers for face value.
7            And so the context here is very,
8    very important.  And the context was
9    that we would take the liabilities that
10   they were asking us to take because they
11   were showing us debt balances that would
12   not allow them to satisfy those
13   liabilities on their own, if in fact
14   their debt balances turned out to be
15   correct.
16           So in order to make sure that we
17   entered into a transaction that was fair
18   for both sides, if their debt balances
19   turned out to be correct, and we take
20   the liabilities, no adjustment is
21   needed.
22           However, we're not going to have
23   the benefit of hindsight until after the
24   closing date or at the closing date.
25           So if their debt balances are

1           KAMLANI (HIGHLY CONFIDENTIAL)
2     incorrect and they actually turn out to
3     be lower than $1.2 billion, and had we
4     known that X-weeks ago, then we wouldn't
5     have taken on the liabilities that they
6     asked us to take because they would have
7     had the cash to satisfy those
8     liabilities on their own.  But they did
9     not want to take that risk.
10           The committee, as conveyed by the
11    advisors, is that they were extremely
12    risk averse to being in a position of
13    having liabilities that they could not
14    satisfy.
15           We are in the business of taking
16    risk.  So we were willing to take that
17    risk with the caveat that if it turns
18    out that you would have had the cash to
19    satisfy those liabilities, then in fact
20    we should have a credit because we would
21    know that at the closing table when we
22    don't know it now.
23      Q.    And at the time these
24    negotiations were taking place did you
25    have an understanding as to the

Page 238

1        KAMLANI (HIGHLY CONFIDENTIAL)
2    with the company and reduce what would
3    otherwise come in on the closing date?
4        A.    So I don't know the exact
5    mechanics of how all the wiring will
6    work.  The net effect is that 120
7    million should be applied toward cash
8    that's required at closing.
9        Q.    Over the course of today you had
10   mentioned a couple of areas of the
11   negotiations concerning the APA that
12   were principally handled by Mr. Lampert,
13   the two that I recall as I sit here is
14   the credit bidding, I guess it's three,
15   the credit bidding, the release and the
16   lease designation rights, correct?
17       A.    Yes.
18       Q.    Are there any other areas of the
19   negotiations concerning the APA that you
20   recall Mr. Lampert to have been
21   particularly involved in?
22       A.    My recollection is those are the
23   primary ones.
24            MR. QURESHI:  That is all I have.
25     Thank you very much for your time.

1 KAMLANI (HIGHLY CONFIDENTIAL)
2     THE WITNESS: Thank you,
3 appreciate it.
4     MR. QURESHI: Anybody else?
5 Anybody on the phone have any
6 questions? Then we shall go off the
7 record and call it a day.
8     MR. BROMLEY: Thank you much.
9     (Time noted: 6:20 p.m.)
10
11   _____
12     KUNAL KAMLANI
13
14 Subscribed and sworn to
15 before me this _____
16 day of _____, 2019.
17
18 _____
19     Notary Public
20
21
22
23
24
25

Page 240

1  KAMLANI (HIGHLY CONFIDENTIAL)

2

3  E X H I B I T S

4  NUMBER       DESCRIPTION                         PAGE

5  EXHIBIT 1    Notice of 30(b)(6)                    8
6               deposition of ESL
7               Investments, Inc.
8  EXHIBIT 2    Letter dated December the            26
9               28th, 2018 from Transform
10              Holdco to Lazard bearing
11              the signature of Mr.
12              Lampert
13 EXHIBIT 3    Document entitled Material           55
14              Terms of the Successful Bid
15              filed on docket 1730
16 EXHIBIT 4    Document entitled Official           82
17              Committee of Unsecured
18              Creditors Discussion
19              Materials dated November
20              12, 2018
21 EXHIBIT 5    Document dated December              86
22              2018 labeled Preliminary
23              Business Plan
24 EXHIBIT 6    Project Transform -                  89
25              Business Plan, January 2019

1 KAMLANI (HIGHLY CONFIDENTIAL)
2 EXHIBIT 7      Document labeled Project        100
3                Transform Liquidity
4                Analysis
5 EXHIBIT 8      January 16, 2019 email          101
6 EXHIBIT 9      Sears Holdings deck labeled     146
7                SG&A
8 EXHIBIT 10     Asset Purchase Agreement        205

         PREVIOUSLY MARKED EXHIBITS
NONE
                I N D E X



   WITNESS     EXAMINATION BY              PAGE

   KUNAL KAMLANI    QURESHI                    7



       REQUESTS

     Page              Line

              NONE

Page 242

1       KAMLANI (HIGHLY CONFIDENTIAL)

2            CERTIFICATION

3   STATE OF NEW YORK    )
                         : ss.
4   COUNTY OF NEW YORK   )

5       I, MARK RICHMAN, Certified Shorthand

6   Reporter, Registered Professional Reporter

7   and Notary Public for and within the State

8   of New York, do hereby certify:

9       That the witness whose testimony is

10  herein set forth, was duly sworn by me; and

11  that the within transcript is a true record

12  of the testimony given by said witness.

13      I further certify that I am not related

14  to any of the parties to this action by

15  blood or marriage, and that I am in no way

16  interested in the outcome of this matter.

17      IN WITNESS WHEREOF, I have hereunto set

18  my hand this 23rd day of JANUARY, 2019.

19

20  _____

21      MARK RICHMAN, CSR, RPR, CM

22           *     *     *

23

24

25

Page 243

1  NAME OF CASE:
2  DATE OF DEPOSITION:
3  NAME OF WITNESS:
4  Reason Codes:
5       1.  To clarify the record.
6       2.  To conform to the facts.
7       3.  To correct transcription errors.
8  Page _____ Line _____ Reason _____
9  From _____ to _____
10 Page _____ Line _____ Reason _____
11 From _____ to _____
12 Page _____ Line _____ Reason _____
13 From _____ to _____
14 Page _____ Line _____ Reason _____
15 From _____ to _____
16 Page _____ Line _____ Reason _____
17 From _____ to _____
18 Page _____ Line _____ Reason _____
19 From _____ to _____
20 Page _____ Line _____ Reason _____
21 From _____ to _____
22 Page _____ Line _____ Reason _____
23 From _____ to _____
24
25                                    _____