WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
David J. Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
**In re**                                               :    **Chapter 11**
:
**SEARS HOLDINGS CORPORATION,** *et al.*,               :    **Case No. 18-23538 (RDD)**
:
Debtors.                                                :    **(Jointly Administered)**
:
------------------------------------------------------------x

<u>**DECLARATION OF CHRISTOPHER A. GOOD IN SUPPORT OF THE
DEBTORS' BRIEF IN OPPOSITION TO TRANSFORM HOLDCO LLC'S
ADVERSARY COMPLAINT AND IN FURTHER SUPPORT OF DEBTORS'
SUPPLEMENTAL MOTION TO ENFORCE THE ASSET PURCHASE AGREEMENT**</u>

Pursuant to 28 U.S.C. § 1746, I, Christopher A. Good, hereby declare as follows:

1. I submit this Declaration in support of the *Debtors' Brief in Opposition to Transform HoldCo LLC's Adversary Complaint and in Further Support of Debtors' Supplemental Motion to Enforce the Asset Purchase Agreement* (the "**Brief**"), filed concurrently with this Declaration.[1]

---

[1] Capitalized terms used in this Declaration but not otherwise defined herein will have the meanings set forth in the Brief or in the APA, as applicable.

2. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gleaned during the course of my engagement with the Debtors, my discussions with the Debtors' senior management, other members of the M-III team, and the Debtors' other advisors, and my review of relevant documents and/or my opinion based upon my experience. If called to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, and/or opinion.

**Cash In Transit**

3. Buyer has refused to turn over $30,423,697 in Estate property, claiming that it is offset by a number of liabilities owing to Buyer. While Buyer has provided a good deal of information, it has yet to provide all of the information necessary to substantiate its reconciliations—claiming the requested information either doesn't exist, is too burdensome, or, worse yet, that the Debtors have not provided a basis for the information.

4. For example, with respect to checks written to the Debtors, but deposited post-Closing into Buyer's accounts – items that will cause the Buyer to owe the Debtors more – only after the Debtors inquired about the issue did Buyer's advisors confirm that Buyer is in possession of approximately $5.9 million in Estate checks deposited into Buyer's bank accounts.

5. Specifically, the checks were identified only after the Debtors' advisor obtained a list of checks deposited by the Buyer from the date of the Closing through March 18, 2019 and requested this audit be conducted. As it turned out, over 85% of those amounts deposited were for obligations owing to the Debtors. To date, Buyer has refused to perform the same audit checks received after March 18, 2019. Accordingly, the Debtors have no way of knowing what additional amounts may still be owed to it.

6. In general, Buyer's analyses and calculations of amounts supposedly owed by the Debtors to Buyer have constantly changed. In virtually every instance when the Debtors' advisors have pushed back on certain aspects of Buyer's reconciliations, Buyer's advisors have had to either concede that certain offsets were improper or that additional funds were owed to the Debtors.

7. Moreover, to date, Buyer has not been able to satisfactorily demonstrate that it removed checks for property taxes. In fact, the list of checks provided to the Debtors includes a significant number of checks that appear to be made out to property tax authorities—*e.g.*, Dallas County Tax Assessor, El Paso City Tax Assessor.

8. With respect to other offsets, Buyer still has not provided sufficient information to confirm the accuracy of the amounts to be reconciled. For example, the Buyer claims it should offset some $3,155,380 for "P-Cards"—*i.e.*, employee expense. Although the Debtors do not dispute that pre-Closing employee expenses paid by Buyer should be offset against amounts owed to the Debtors, it was only after the Debtors identified certain P-Card expenses that were satisfied by a pre-Closing payment made by Debtors (on February 8, 2019) that Buyer then removed approximately $400,000 from its offset. Buyer has not satisfactorily confirmed that it has reconciled other pre-Close payments to ensure that other P-Card payments included in its calculation were not also already paid for by the Debtors. The June 14, 2019 reconciliation provided by Buyer's advisors lists the status of this analysis as "pending."

**Severance Reimbursement Obligations**

9. To date, the Debtors have incurred and paid approximately $11.5 million and still anticipate paying $1.5 million of Severance Reimbursement Obligations.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: July 3, 2019
      New York, New York

                                        */s/ Christopher A. Good*
                                        Christopher A. Good
                                        Director
                                        M-III Advisory Partners, LP