**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------  x
In re                                                         :   Chapter 11
                                                              :
SEARS HOLDINGS CORPORATION, et al.,                           :   Case No. 18-23538 (RDD)
                                                              :
                                                              :
        Debtors.¹                                             :   (Jointly Administered)
------------------------------------------------------------  x
```

## ORDER (I) AUTHORIZING ASSUMPTION AND
## ASSIGNMENT OF CERTAIN LEASES AND (II) GRANTING RELATED RELIEF

Upon the motion, dated November 1, 2018 (Docket No. 429) (the "Sale Motion"),[2] filed

by the above-captioned debtors and debtors in possession (the "Debtors") seeking, among other

things, the entry of an order, pursuant to sections 105, 363 and 365 of the United States Bankruptcy

Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9008

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 6004-1, 6005-

1 and 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for  the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein but not otherwise defined have the meanings given to them in the Asset Purchase Agreement (as defined below) or, if not defined in the Asset Purchase Agreement, the meanings given to them in the Sale Order (as defined below).

Southern District of New York (the "Local Rules"), authorizing and approving the sale of the

Acquired Assets and the assumption and assignment of certain executory contracts and unexpired

leases of the Debtors in connection therewith; and the Court having entered this Court's prior

order, dated November 19, 2018 (Docket No. 816) including the schedule as revised by the *Global

Bidding Procedures Process Letter* filed with the Bankruptcy Court on November 21, 2018

(Docket No. 862) (together, the "Bidding Procedures Order"), approving competitive bidding

procedures for the Acquired Assets and granting certain related relief; and Transform Holdco LLC

(the "Buyer") having submitted the highest or otherwise best bid for the Acquired Assets, as

reflected in the Asset Purchase Agreement (as defined below); and the Court having conducted a

hearing on the Sale Motion, which commenced on February 4, 2019, at which time all interested

parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court

having entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer,

(II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims,

Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain

Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief* (the

"Sale Order") on February 8, 2019 (Docket No. 2507); the Court having entered the *Order (I)

Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II)

Granting Related Relief* (the "Assumption and Assignment Order") on April 2, 2019 (Docket No.

3008), pursuant to which the Debtors may assume and assign certain executory contracts or

unexpired leases to Buyer or Buyer's Assignee in accordance with the Asset Purchase Agreement,

dated as of January 17, 2019 by and among the Buyer and the Sellers party thereto (including each

Debtor and certain other subsidiaries of Sears Holdings Corporation, the "Sellers") (as may be

amended, restated, amended and restated from time to time, including pursuant to that certain

2

Amendment No. 1 to Asset Purchase Agreement, dated as of January 17, 2019 by and among the

Buyer and the Sellers, the "Asset Purchase Agreement"); and the Buyer having filed the *Notice of*

*Assumption and Assignment of Additional Designatable Leases* (Docket No. 3298) (the

"Designated Lease Notice"), pursuant to which the Debtors seek to assume and assign the lease

for store number 4112, located as 1001 Patton Avenue, Asheville, North Carolina (the "Designated

Lease") in accordance with the Assumption and Assignment Order; and the counterparties to  the

Designated Lease having filed *Objection to the Supplemental Notice of Cure Costs and Potential*

*Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the*

*Global Sale Transaction and Notice of Expiration of Lease* (the "January Objection") (ECF  No.

2281) and *The Bruce Trusts' (I) Designatable Contract Assumption and Assignment Objection,*

*and (II) Reservation of Rights* (the "Landlord Objections") (Docket No. 3421); and the Buyer

having filed *Transform Holdco LLC's Omnibus Reply in Support of Assumption and Assignment*

*of Designated Leases* on May 6, 2019 (Docket No. 3654) (the "Buyer's Reply"); and the Court

having entered the *Stipulation and Order by and Among Sellers, Buyer and Bruce Trusts (I)*

*Extending Time Under 11 U.S.C. 365(d)(4) for Assumption or Rejection of Leases of*

*Nonresidential Real Property and (II) Setting Briefing Schedule* (the "Extension Stipulation")

(Docket No. 3835); and the Court having conducted an evidentiary hearing on the assumption and

assignment of the Designated Lease (the "First Assumption and Assignment Hearing"), which

commenced on May 8, 2019, at which time all interested parties were offered an opportunity to be

heard with respect to the Assumption and Assignment Notices and their objections and responses

thereto; and the Court having entered the *Order (I) Authorizing Assumption and Assignment of*

*Certain Leases and (II) Granting Related Relief* (Docket No. 3850) (the "Revised Assumption and

Assignment Order"), pursuant to which the Debtors assumed and assigned certain unexpired leases

to the Buyer; and the Court having entered the *Stipulation and Order by and Among Sellers, Buyer, and Landlord the Bruce Trusts (I) Extending Time under 11 U.S.C. § 365(d)(4) for Lease of Nonresidential Real Property and (II) Setting Briefing Schedule* (the "<u>Second Extension Stipulation</u>") (Docket No. 4028); and the Buyer having filed *Transform Holdco LLC's Initial Response to the Bruce Trusts (I) Designatable Contract Assumption and Assignment Objection, and (II) Reservation of Rights* on May 14, 2019 (Docket No. 3868) and the Declaration of Samuel Levander in support (Docket No. 3870); and the counterparties to the Designated Lease having filed *The Bruce Trusts' (I) Designatable Contract Assumption and Assignment Objection, and (II) Reservation of Rights* (Docket No. 4092) and the Declaration of Paul Bruce in support on May 30, 2019 (Docket No. 4091); and the Buyer having filed *Transform Holdco LLC's Reply to the Bruce Trusts (I) Designatable Contract Assumption and Assignment Objection, and (II) Reservation of Rights* (Docket No. 4233) and the Second Declaration of Samuel Levander in support on June 13, 2019 (Docket No. 4232); and the Court having conducted an additional evidentiary hearing on the assumption and assignment of the Designated Lease (the "<u>Supplementary Assumption and Assignment Hearing</u>"), which commenced on June 27, 2019, at which time all interested parties were offered an opportunity to be heard with respect to the Designated Lease and their objections and responses thereto; and due notice of the Sale Motion, the Asset Purchase Agreement, the Sale Order, and the Assumption and Assignment Order, the Designated Lease Notice, the Revised Assumption and Assignment Order, Assumption and Assignment Hearing, the Supplementary Assumption and Assignment Hearing and this proposed order (the "<u>Supplementary Assumption and Assignment Order</u>") having been provided; and, except as otherwise provided for herein, all objections with respect to the Designated Lease hereto having been withdrawn, resolved, adjourned or overruled as provided in this Supplementary Assumption and Assignment Order; and

4

it appearing that the relief granted herein is in the best interests of the Debtors, their estates and creditors and all parties in interest in these chapter 11 cases; and upon the record of the Supplementary Assumption and Assignment Hearing and these chapter 11 cases; and after due deliberation; and good cause appearing therefor, it is hereby.

**FOUND AND DETERMINED THAT:**

A.    **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Assumption and Assignment Hearing and the Supplementary Assumption and Assignment Hearing. This Supplementary Assumption and Assignment Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

B.    **Jurisdiction and Venue**. This Court has jurisdiction over the Sale Motion, the Sale Transaction and the property of the Debtors' estates, including the Acquired Assets, pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157. Venue of these chapter 11 cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    The Debtors have demonstrated a good, sufficient, and sound business purpose and justification for the immediate assumption and assignment of the Designated Lease consistent with

the Sale Order and the Adequate Assurance Order.  Buyer shall be subject to the stay provided by

Bankruptcy Rules 6004(h) and 6006(d) through and including July 7, 2019.

        D.      **<u>Vested Title</u>**. The Designated Lease constitutes property of the Debtors' estates,

and title thereto is vested in the Debtors' estates within the meaning of 541(a) of the Bankruptcy

Code.

        E.      **<u>Notice and Opportunity to Object</u>**. Actual written notice of, and a fair and

reasonable opportunity to object to and to be heard with respect to the Designated Lease has been

given, as required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Asset

Purchase Agreement, and the Amended Case Management Order.  Pursuant to the Sale Order, and

Assumption and Assignment Order, the Designated Lease Notice was properly served and the

counterparties thereto were afforded timely, good, appropriate and sufficient notice and  an

opportunity to object in accordance with the Sale Order and no further notice need be given with

respect to the assumption and assignment of the Designated Lease.

        F.      **<u>Cure Notice</u>**. As evidenced by the certificates of service filed with the Court,  the

Debtors have served, prior to the Supplementary Assumption and Assignment Hearing, the

*Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory*

*Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Docket No. 1774)

(the "<u>First Supplemental Cure Notice</u>"), dated January 23, 2019, on each counterparty to the

Designated Lease, which provided notice of the Debtors' intent to assume and assign such

Designated Leases and notice of the related proposed Cure Costs upon each non-debtor

counterparty to such Potential Transferred Agreements. The service of the Assumption and

Assignment Notices was timely, good, sufficient, and appropriate under the circumstances and no

further notice need be given with respect to the Cure Costs for the assumption and assignment of

the Designated Leases. *See Affidavits of Service* (Docket Nos. 1969, 2132, 2162, 3649). All non-debtor parties to the Designated Lease have had a reasonable opportunity to object both to the Cure Costs listed on the First Supplemental Cure Notice and Designated Lease Notice and, to the assumption and assignment of the Designated Lease to the Buyer or an Assignee, if applicable, in accordance with the Bidding Procedures Order and the Assumption and Assignment Order.

G.    **Assignment or Transfer Agreement**. Each applicable assignment agreement or any other agreement or instrument of assignment or transfer (an "Assignment or Transfer Agreement") with respect to the Designated Lease was negotiated and proposed in good faith, from arms'-length bargaining positions, and without collusion. Neither the Debtors, the Buyer nor the Buyer's Assignee (if applicable) have engaged in any conduct that would cause or permit the assumption, assignment, or transfer to the Buyer or an Assignee pursuant to the Assignment or Transfer Agreement and this Supplementary Assumption and Assignment Order, to be avoided under 363(n) of the Bankruptcy Code.

H.    **Assumption and Assignment of Designated Leases**. The assumption and assignment of the Designated Lease is integral to the Asset Purchase Agreement, is in the best interests of the Debtors and their estates, and represents the valid and reasonable exercise of the Debtors' sound business judgment.

I.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**. The assumption and assignment of the Designated Lease must be approved and consummated promptly in order to preserve the value of the Acquired Assets particularly given the July 8, 2019 deadline pursuant to the Second Extension Stipulation.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval of the assumption and assignment of the Designated Lease in connection with the Sale Transaction as

7

contemplated by the Asset Purchase Agreement and approved pursuant to the Sale Order. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to this Supplementary Assumption and Assignment Order in part so that the Supplementary Assumption and Assignment Order becomes effective on July 8, 2019 (the "Effective Date").

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1. **Motion is Granted**. The Sale Motion and the relief requested therein with respect to the Designated Lease to the extent not previously granted by this Court pursuant to the Bidding Procedures Order and/or the Assumption and Assignment Order is granted and approved solely to the extent set forth herein.

2. **Findings of Fact and Conclusions**. The Court's findings of fact and conclusions of law in the Sale Order and Revised Assumption and Assignment Order, and the record of the hearing with respect to the Sale Order and the First Assumption and Assignment Hearing are incorporated herein by reference, solely with respect to the Designated Lease. The Designated Lease constitutes an Acquired Asset. Accordingly, all findings of fact and conclusions of law in the Sale Order and Revised Assumption and Assignment Order with respect to the Acquired Assets, including any explicitly governing the Initial Assigned Agreements shall apply to the Designated Lease with full force and effect, and as the Buyer or Assignee of such Designated Leases, Buyer and any Assignee are entitled to all of the protections set forth in the Sale Order and Revised Assumption and Assignment Order with respect to Acquired Assets.

3. **Objections Overruled**.        All objections to the assumption and assignment or designation of the Designated Lease that have not been withdrawn, waived, settled, or otherwise resolved as announced to the Court at the Supplementary Assumption and Assignment Hearing (if

any) to consider entry of this Order or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits and with prejudice; *provided* that any timely filed cure objections that have not already been resolved shall be reserved in accordance with paragraph 11 of this Supplementary Assumption and Assignment Order.

4.    **Notice**. Notice of the proposed assumption and assignment of the Designated Leases was adequate, appropriate, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, and the Amended Case Management Order.

5.    **Assumption and Assignment**. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors, as well as their officers, employees and agents, are authorized to take any and all actions as may be (i) reasonably necessary or desirable to implement the assumption and assignment of the Designated Leases pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, the Related Agreements, the Sale Order, and this Supplementary Assumption and Assignment Order or (ii) reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to the Buyer's possession or the Buyer's Assignee's possession, if applicable, the Designated Lease.

6.    **Transfer of the Designated Leases Free and Clear**. Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Designated Lease in accordance with the terms of the Asset Purchase Agreement and the Sale Order. The Designated Lease shall be transferred to the Buyer or the Buyer's Assignee, if applicable, in accordance with the terms of the Asset Purchase Agreement, the Sale Order, the Assumption and Assignment Order, and the Revised Assumption and Assignment Order and such

9

transfer shall: (i) be valid, legal, binding and effective; (ii) vest the Buyer or the Buyer's Assignee, if applicable, with all right, title and interest of the Debtors in the Designated Lease; and (iii) be free and clear of all Claims against the Debtors (including Claims of any Governmental Authority) in accordance with section 363(f) of the Bankruptcy Code.

7.        This Supplementary Assumption and Assignment Order: (i) shall be effective as a determination that, all Claims against the Debtors have been unconditionally released, discharged, and terminated as to the Designated Lease, and that the conveyances and transfers described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of such Designated Leases free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded Claims against the Designated Lease recorded prior to the date of this Supplementary Assumption and Assignment Order.  A certified copy of this Supplementary Assumption and Assignment Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded Claims against the Designated Leases recorded prior to the date of this Supplementary Assumption and Assignment Order. All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

8.      No holder of any Claim against the Debtors or their estates shall interfere with the Buyer's or Buyer's Assignee's, if applicable, title to or use and enjoyment of the Designated Lease or the premises governed by such Designated Lease based on or related to any such Claim or based on any actions the Debtors have taken or may take in these chapter 11 cases.

9.      If any Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Claims against the Debtors or the Designated Lease shall not have delivered to the Debtors as of the time of entry of this Supplementary Assumption and Assignment Order, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or, as appropriate, releases of all Claims the Person has with respect to the Debtors or such Designated Lease or otherwise, then with regard to such Designated Lease: (i) the Debtors are hereby authorized and directed to, and the Buyer is hereby authorized to, execute and file such statements, instruments, releases and other documents on behalf of the person with respect to such Designated Lease; (ii) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Supplementary Assumption and Assignment Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against such Designated Lease; and (iii) the Buyer may seek in this Court or any other court to compel appropriate persons to execute termination statements, instruments of satisfaction, and releases of all Claims with respect to such Designated Lease; provided that, notwithstanding anything in this Supplementary Assumption and Assignment Order, the Sale Order, or the Asset Purchase Agreement to the contrary, the provisions of this Supplementary Assumption and Assignment Order shall be self-executing, and neither the Sellers nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions

11

of this Supplementary Assumption and Assignment Order. This Supplementary Assumption and Assignment Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department, or office.

10.    Subject to the terms of this Supplementary Assumption and Assignment Order, this Supplementary Assumption and Assignment Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer by the Debtors of the Designated Lease acquired under the Asset Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in all of the Debtors' right, title, and interest in and to such Designated Lease to the Buyer or Buyer's Assignee, if applicable.

11.    **Assumption and Assignment of Designated Leases**. The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Designated Lease to the Buyer or the Buyer's Assignee, if applicable, free and clear of all Claims to the extent set forth in the Sale Order, the Assumption and Assignment Order, and this Supplementary Assumption and Assignment Order, to execute and deliver to the Buyer or the Buyer's Assignee, if applicable, such documents or other instruments as may be necessary to assign and transfer such Designated Lease to the Buyer or the Buyer's Assignee, if applicable, as provided in the Asset Purchase Agreement, and to transfer all of the Debtors' rights, title, and interests in such Designated Lease to the Buyer or the Buyer's Assignee, if applicable. With respect to the Designated Lease, all Cure Costs that have not been waived by, or as to which an objection has been timely filed by, or that have not been otherwise addressed in an alternate arrangement with, any non-debtor party to the Designated Lease shall be: (i) with respect to the undisputed amounts set forth on Exhibit A, be paid in cash by the Buyer, within five business days of entry of

12

this Supplementary Assumption and Assignment Order and (ii) with respect to any disputed amounts asserted in timely filed objections, the Buyer shall establish a cash reserve within five business days of entry of this Supplementary Assumption and Assignment Order and the Buyer shall pay or release such amounts promptly upon resolution of any such disputed Cure Cost. The Buyer and Designated Lease counterparties shall work in good faith to reconcile any disputes with respect to Cure Amounts, provided, however, that if either party believes, following good faith discussions, that an impasse has been reached with respect to any Cure Amounts, such party shall give written notice to the other, and within five days after such notice, in the absence of an agreement, such party may seek a hearing before the Bankruptcy Court in accordance with the Assumption and Assignment Order. All parties' rights and defenses with respect to cure costs disputes that were timely raised and filed in accordance with the Bidding Procedures Order, the Sale Order, and the Assumption and Assignment Order are fully reserved pending any such hearing and determination by the Bankruptcy Court. Payment of Cure Costs with respect to disputed cure amounts as subsequently agreed by the parties or determined by the Court, shall: (i) be in full satisfaction and cure of any and all defaults under these Designated Lease, whether monetary or non-monetary; (ii) compensate the non-Debtor counterparty for any actual pecuniary loss resulting from such defaults and (iii) shall be made solely by the Buyer and the Debtors shall have no liability therefor.

12.    With respect to the Designated Lease, the Buyer, in accordance with the provisions of the Asset Purchase Agreement, has provided adequate assurance of future performance under the Designated Lease in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the non-debtor counterparties to such Designated Lease. Upon the Effective Date of this Supplementary Assumption and Assignment

Order with respect to the Designated Lease, the Buyer or Buyer's Assignee, if applicable, shall be fully and irrevocably vested with all rights, title, and interest of the Debtors under such Designated Lease and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to breach of such Designated Lease occurring after such assumption and assignment. As between the Debtors and the Buyer, the Buyer shall be solely responsible for any liability arising and owed pursuant to the terms of the Designated Lease after the Closing. Buyer or Buyer's Assignee, if applicable, acknowledges and agrees that from and after the Effective Date of this Supplementary Assumption and Assignment Order, with respect to the Designated Lease, in accordance with this Supplementary Assumption and Assignment Order, it shall comply with the terms of the Designated Lease in its entirety, including any indemnification obligations expressly contained in such Designated Lease (including with respect to events that occurred prior to the Effective Date of this Supplementary Assumption and Assignment Order, for which cure costs were not known, liquidated or due and owing as such date), as to which the Buyer continues to reserve its rights against the Debtors for indemnification to the extent provided in the Asset Purchase Agreement and the Debtors reserve their respective rights and defenses with respect to any claims therefor. The assumption by the Debtors and assignment to the Buyer or Buyer's Assignee, if applicable, of the Designated Lease shall not be a default under such Designated Lease.

13.     All of the requirements of sections 365(b) and 365(f), including without limitation, the demonstration of adequate assurance of future performance and payment of Cure Costs required under the Bankruptcy Code have been, or will be, satisfied for the assumption by the Debtors, and the assignment by the Debtors to the Buyer or its designated Assignee, with respect to the Designated Lease. Pursuant to the Sale Order, if the proposed Assignee for a Designated Lease is not the Buyer, the Buyer has delivered to the applicable Designated Lease counterparty

14

(and delivered by email or facsimile to counsel for the applicable Designated Lease counterparty, if such counsel has filed a notice of appearance in the Bankruptcy Cases) evidence of adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code with respect to the applicable Designated Lease that is proposed to be assumed and assigned to such Assignee.

14.    The Buyer and each of its designated Assignees have satisfied their adequate assurance of future performance requirements with respect to the Designated Lease and in connection therewith have presented sufficient evidence regarding their business plan, the experience and expertise of their management, and demonstrated they are sufficiently capitalized to comply with the necessary obligations under such Designated Lease. With respect to Designated Lease, the Buyer shall, as further adequate assurance, within fifteen days after entry of this Supplementary Assumption and Assignment Order, execute and deliver guaranty agreements substantially in the form annexed hereto as **Exhibit A** (the "Form of Guaranty").

15.    The assumption of any liabilities under the Designated Lease shall constitute a legal, valid, and effective delegation of all liabilities thereunder to the applicable Assignee identified on Exhibit A and, following payment of all amounts required to be paid by agreement of the parties or an order of the Court, and except as expressly set forth in the Asset Purchase Agreement, the Sale Order or this Supplementary Assumption and Assignment Order, shall divest the Debtors of all liability with respect to such Designated Lease for any breach of such Designated Lease occurring after the Closing Date in accordance with Section 2.9 of the Asset Purchase Agreement.

16.    Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, the Buyer shall, within five business days after entry of this Supplementary Assumption and Assignment Order,

pay to the applicable Designated Lease counterparty all undisputed Cure Costs set forth in Exhibit A and other such undisputed amounts required with respect to such Designated Lease. Upon assumption and assignment of the Designated Lease, the Debtors and their estates shall be relieved of any liability for breach of such Designated Lease after the Closing pursuant to the Asset Purchase Agreement and section 365(k) of the Bankruptcy Code and the Buyer shall be responsible for any costs or expenses (including, without limitation, for royalties, rents, utilities, taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent) arising under the Designated Lease attributable to (x) the portion of such calendar year occurring prior to such Lease Assignment or (y) for any previous calendar year; provided that, the Buyer reserves all rights against the Debtors for indemnification for such expenses, to the extent provided in the Asset Purchase Agreement and Related Agreements and the Debtors reserve all their respective rights and defenses with respect to any claims therefor. For the avoidance of doubt, the Buyer will perform under and in accordance with the terms of the Designated Lease from and after entry of this Supplementary Assumption and Assignment Order.

17.    Solely in connection with the Designated Lease and the proposed transfer set forth upon the Effective Date of this Supplementary Assumption and Assignment Order, any provision in the Designated Lease that purports to declare a breach or default as a result of a change or transfer of control or any interest in respect of the Debtors is unenforceable and the Designated Lease shall remain in full force and effect notwithstanding assignment thereof. Solely in connection with the Designated Lease and the proposed transfer, no sections or provisions of the Designated Lease, that in any way purport to: (i) prohibit, restrict, or condition the Debtors' assignment of such Designated Lease (including, but not limited to, the conditioning of such assignment on the consent of any non-debtor party to such Designated Lease); (ii) provide for the

16

cancellation, or modification of the terms of the Designated Lease based on the filing of a

bankruptcy case, the financial condition of the Debtors, or similar circumstances; (iii) provide for

additional payments (e.g., so called "profit" sharing/splitting), penalties, fees, charges, or other

financial accommodations in favor of the non-debtor third party to such Designated Lease upon

assignment thereof; or (iv) provide for any rights of first refusal on a contract counterparty's part,

rights of first offer, or any other purchase option or any recapture or termination rights in favor of

a contract counterparty, or any right of a Landlord to take an assignment or sublease from a tenant,

shall have any force or effect with respect to the grant and honoring of the Designation Rights or

the rights under Section 2.9 of the Asset Purchase Agreement in accordance with the Sale Order, this

Supplementary Assumption and Assignment Order, and the Asset Purchase Agreement and

assignments of Designated Leases by the Debtors in accordance therewith and herewith, because

they constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy

Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code. Upon

assumption and assignment of the Designated Lease pursuant hereto, the Buyer or Buyer's

applicable Assignee shall enjoy all of the rights and benefits, under the Designated Lease as of the

date of the entry of this Supplementary Assumption and Assignment Order and shall assume all

obligations as of the Closing Date.

18.    Solely in connection with the Designated Lease and notwithstanding anything to

the contrary in paragraph 12 or 16 hereof, upon the Effective Date of this Supplementary

Assumption and Assignment Order, except as otherwise expressly agreed by the Buyer and the

applicable Designated Lease Counterparty, notwithstanding any provision in any Designated

Lease that purports to prohibit, restrict, or condition such action, (x) the Buyer or the applicable

Assignee shall be authorized to: (i) use the applicable Lease Premises, subject to section 365(b)(3)

of the Bankruptcy Code, as a retail store or distribution center (and related goods and services);
(ii) operate such Lease Premises under the Buyer's trade name or any other trade name which the
Buyer owns or is authorized to use (including any of the Debtors' trade names); (iii) subject to the
provisions of the applicable Designated Lease, make such alterations and modifications to the
applicable Lease Premises (including signage, together with appropriate changes to existing tenant
signage in the respective shopping center or mall, including panels on all pylons, monuments,
directional and other ground and off-premises signs where Sellers are currently represented)
deemed necessary by the Buyer or such Assignee (subject to all applicable laws including all
applicable municipal codes) as are necessary or desirable for the Buyer or such Assignee to
conform such Lease Premises to the prototypical retail store or distribution center, as applicable
(or such Assignee's typical retail store or distribution center, as applicable); (iv) solely with respect
to Lease Premises that are currently "dark," remain "dark" (including partially or fully un-
occupied) with respect to such Lease Premises after such assumption and assignment until the date
that is necessary to permit the Buyer or such Assignee to take occupancy, remodel, restock, re-
fixture, change signage, and/or until completion of the work described in clause (iii) above (so long
as such date is not more than one hundred fifty (150) days after the entry of this Supplementary
Assumption and Assignment Order) or such later date as may be reasonably required for the
restoration of such Lease Premises following any applicable Casualty / Condemnation Event; and
(v) exercise, utilize, or take advantage of any renewal options and any other current or future rights,
benefits, privileges, and options granted or provided to the Debtors under the Designated Lease
(including all of the same which may be described or designated as, or purport to be, "personal"
to the Debtors or to a named entity in such Designated Lease or to be exercisable only by the
Debtors or by a named entity or an entity operating under a specific trade name) and (y) neither

18

the Buyer nor the applicable Assignee shall have any responsibility or liability for any Excluded

Asset-Sale Taxes and Excluded Asset-Reorganization Taxes.

19.     ***Ipso Facto* Clauses Ineffective**. Except as otherwise specifically provided for by

order of this Court or in the Asset Purchase Agreement, the Designated Lease shall be transferred

to, and remain in full force and effect for the benefit of, the Buyer or, for applicable Designated

Leases, the Assignee in accordance with their respective terms, including all obligations of the

Buyer or, for applicable Designated Leases, the Assignee as the assignee of the Designated Leases,

notwithstanding any provision in any such Designated Leases (including, without limitation, those

of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts

or conditions such assignment or transfer. There shall be no, and all non-Debtor parties to the

Designated Lease are forever barred and permanently enjoined from raising or asserting against

the Debtors, the Buyer, or, for the Designated Lease, the Assignee, any defaults, breaches, claims,

pecuniary losses, rent accelerations, escalations, assignment fees, increases or any other fees

charged to the Buyer, for the Designated Lease, the Assignee, or the Debtors as a result of the

assumption or assignment of the Designated Lease pursuant to this Supplementary Assumption

and Assignment Order.

20.     Except as otherwise specifically provided for by order of this Court, upon the

Debtors' assignment of the Designated Lease to the Buyer or Buyer's Assignee, if applicable,

under the provisions of this Supplementary Assumption and Assignment Order and full payment

of all Cure Costs as required under section 365(b) of the Bankruptcy Code, no default shall exist

under the Designated Lease, and no counterparty to the Designated Lease shall be permitted to

declare a default by any Debtor, the Buyer, or, if applicable, the Assignee, or otherwise take action

against the Buyer or any applicable Assignee as a result of any Debtor's financial condition,

bankruptcy, or failure to perform any of the Debtors' obligations under the Designated Lease. Any provision in the Designated Lease that prohibits or conditions the assignment of such Designated Lease or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, refuse to renew, or modify any term or condition upon such assignment, constitutes an unenforceable anti-assignment provision that is void and of no force and effect solely in connection with the transfer thereof pursuant to this Supplementary Assumption and Assignment Order. The failure of the Debtors, the Buyer or, if applicable, the Assignee, to enforce at any time one or more terms or conditions of any Designated Lease shall not be a waiver of such terms or conditions, or of the Debtors', the Buyer's or, if applicable, the Assignee's, rights to enforce every term and condition of the Designated Lease.

21.    To the extent that any of the Designated Leases is designated to an Assignee, the transaction and the Assignment or Transfer Agreement is undertaken by Assignee without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein shall not affect the validity of such transaction, unless such authorization is duly stayed pending such appeal. By virtue of the transaction contemplated by the Assignment or Transfer Agreement, Assignee shall not be deemed to (i) be a legal successor, or otherwise be deemed a successor to the Debtors; (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise or operations of the Debtors.

22.    **<u>Waiver of Bankruptcy Rules 6004(h), 6006(d) and 7062</u>**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), or 7062 or any applicable provisions of the Local Rules, this Supplementary Assumption and Assignment Order shall not be stayed on and

after the Effective Date, but shall be effective and enforceable immediately upon the Effective

Date, and from the Effective Date forward the fourteen (14) day stay provided in Bankruptcy Rules

6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in

assuming and assigning the Designated Lease in connection with the Court approved Sale

Transaction.  Any party objecting to this Supplementary Assumption and Assignment Order must

exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law, or

risk its appeal will be foreclosed as moot. This Supplementary Assumption and Assignment Order

constitutes a final order upon which the Debtors and the Buyer are entitled to rely.

23.    **Conflicts; Precedence**.  In the event that there is a direct conflict between the terms

of this Supplementary Assumption and Assignment Order, Assumption and Assignment Order,

the Sale Order, the Asset Purchase Agreement, or any documents executed in connection

therewith, the provisions contained in the Sale Order, the Asset Purchase Agreement, this

Supplementary Assumption and Assignment Order, and the Assumption and Assignment Order

and any documents executed in connection therewith shall govern, in that order. Nothing contained

in any chapter 11 plan hereafter confirmed in these chapter 11 cases, any order confirming such

plan, or in any other order of any type or kind entered in these chapter 11 cases (including, without

limitation, any order entered after any conversion of any or all of these chapter 11 cases to cases

under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with, or

derogate from the provisions of the Asset Purchase Agreement, the Assumption and Assignment

Order, the Sale Order, the Revised Assumption and Assignment Order, or the terms of this

Supplementary Assumption and Assignment Order.

24.    **Lease Deposits and Security**.  The Buyer shall not be required, pursuant to section

365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with

respect to the Designated Lease to the extent not previously provided by the Debtors or to the extent that such deposit or security required under the Designated Lease has already been deposited by Debtors.

25.     **Termination**. On July 20, 2018, Kmart Corporation, the Debtor entity party to the Designated Lease, timely elected to extend the terms of the Designated Lease pursuant to that certain Second Amendment to the Designated Lease, by and among Kmart Corporation and Nineteenth Asheville Properties ("NAP") dated March 3, 1992 (the "Second Amendment"), and that certain Third Amendment to the Designated Lease, by and among Kmart Corporation and NAP dated May 23, 2017 (the "Third Amendment"). Therefore, the Designated Lease has not expired by its terms and was instead effectively extended by the Debtors pursuant to the valid and enforceable Second Amendment and Third Amendment. If the tenant under the Designated Lease exercises all available options, the Designated Lease will expire November 30, 3032.

26.     **Automatic Stay**. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Supplementary Assumption and Assignment Order.

27.     **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of this Supplementary Assumption and Assignment Order, the Sale Order, and the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to the Sale Order, this Supplementary Assumption and Assignment Order, or the Asset Purchase Agreement (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

28.    **Insurance Obligations**. To the extent required by the express terms of any Designated Lease, within thirty days hereof, the Buyer shall provide the counterparty to such Designated Lease with any evidence or certificates of insurance that may be required.

Dated:   White Plains, New York
              July 3, 2019                                  /s/Robert D. Drain
                                                            HON. ROBERT D. DRAIN
                                                            U.S. BANKRUPTCY JUDGE

**Exhibit A:**
**Designated Lease**

| Store # | RE ID | Property Group | Address | Counterparty | Building Size | Contract Name | Assignee | Debtors' Cure | Counterparty's Asserted Cure |
|---|---|---|---|---|---|---|---|---|---|
| 4112 | 411200 | Closed Store | 1001 Patton Ave, Asheville, NC | The Steven Bruce Revocable Trust, the Cara Bruce Irrevocable Trust, and the Allison Bruce Irrevocable Trust | 93,827 | Lease | Transform Leaseco LLC | $0 | $69,633.32 plus pro rated real estate taxes, storm water and other CAM charges, July rent, and further subject to inspection of premises (including failure to light parking lot) |

**Exhibit B**
**Form of Guaranty**

FORM

## LEASE GUARANTY AGREEMENT

**THIS LEASE GUARANTY AGREEMENT** dated as of July [_], 2019 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the provisions hereof, this "Agreement"), by TRANSFORM MIDCO LLC, a Delaware limited liability company ("Guarantor").

## WITNESSETH:

[ENTER LANDLORD NAME] ("Landlord") entered into a certain [ENTER TITLE OF DOCUMENT], dated as of [ENTER DATE OF LEASE], with [ENTER DEBTOR NAME] (the "Debtor Tenant") (as amended, restated, amended and restated, extended, supplemented or otherwise modified, the "Lease").

Sears Holdings Corporation and its debtor affiliates, including the Debtor Tenant, as debtors and debtors in possession (collectively, the "Debtors"), filed a motion, dated November 1, 2018 (ECF No. 429) seeking, among other things, the entry of an order pursuant to sections 105, 363 and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq., Rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure, and Rules 6004-1, 6005-1 and 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, authorizing and approving the sale of the Acquired Assets (as defined therein) and the assumption and assignment of certain executory contracts and unexpired leases of the Debtors in connection therewith.

On February 8, 2019, the Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief (the "Sale Order") (ECF No. 2507) was entered by the United States Bankruptcy Court Southern District of New York (the "Court").

On April 2, 2019, the Court entered its the Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief (the "Assumption and Assignment Order") (ECF No. 3008).

On [_], 2019 and pursuant to the terms of the Sale Order and the Assumption and Assignment Order, Buyer filed notice with the Court designating the Lease for assumption and assignment (the "Assignment") to [INSERT ASSIGNEE] (the "Tenant").

Guarantor is an affiliate of Tenant, will derive direct or indirect benefit from the Lease and is executing this Agreement in connection with the Assignment.

**NOW, THEREFORE,** in consideration of the premises, Guarantor agrees as follows:

1.      Guarantor hereby absolutely and unconditionally guarantees to the Landlord (i) the full and punctual payment of all monetary obligations (including, without limitation, the payment of all rent, maintenance charges and any and all other charges or assessments) payable under the Lease by Tenant and (ii) the full and punctual performance by Tenant of all the terms, conditions,

covenants and obligations to be performed by Tenant under the Lease, in the case of each of (i) and (ii), from and after the effective date of the Assignment (the "Obligations").

2.      Guarantor hereby waives demand, protest, notice of any indulgences or extensions granted to the Tenant, any requirement of diligence or promptness on the part of the Landlord in the enforcement of the Lease and any notice thereof and any other notice whereby to charge Guarantor. Any payment or performance of the Obligations (as hereinafter defined) required to be made by Guarantor may be required by the Landlord on any number of occasions. Guarantor hereby waives any right to require Landlord to proceed against Tenant or any other person or pursue any other right or remedy for Guarantor' benefit. Guarantor agrees that Landlord may proceed against Guarantor with respect to the Obligations without taking any action against Tenant or any other person. Guarantor agrees that Landlord may unqualifiedly exercise, in its sole discretion, any or all rights and remedies available to it against Tenant or any other person, at any time either before, after, in conjunction with or independently of Landlord's assertion against Guarantor of any remedies. Such exercise of Landlord's rights and remedies against Tenant or any other person shall not impair any of Landlord's rights and remedies in enforcing this Agreement, under which the liabilities of Guarantor shall remain independent and unconditional.

3.      The liability and obligations of Guarantor hereunder shall remain in full force and effect without regard to, and shall in no way be impaired or affected by, (a) the release or discharge of Tenant in any creditors', receivership or bankruptcy proceeding, including, without limitation rejection of some or all of the Obligations in a bankruptcy of Tenant; (b) any rescission, waiver, amendment, extension or modification of, or any release from, any of the terms or provisions of the Lease (whether or not separately consented to, acknowledged or confirmed by Guarantor); (c) any permitted sale, assignment, or sublease, pledge or mortgage of the rights of Tenant or Landlord under the Lease or any other agreement delivered or given in connection herewith or therewith; (d) the compromise, release or discharge of Tenant, consent, extension, indulgence or other action or inaction by Landlord in respect to any of the terms, conditions or provisions of the Lease; or (e) any application or release of any security or other guaranty given for the performance and observance of the covenants and conditions in the Lease on Tenant's part to be performed and observed.

4.      The obligations of Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason (other than the payment and performance in full of the Obligations), including any claim of waiver, release, surrender, alteration or compromise of any of the Obligations, and shall not be subject to any defense or set-off, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Obligations or otherwise (other than the defense of payment and performance in full of the Obligations). Without limiting the generality of the foregoing, the obligations of Guarantor shall not be discharged or impaired or otherwise affected by the failure of the Landlord to assert any claim or demand or to enforce any remedy under this Agreement, the Lease or any other agreement delivered or given in connection herewith or therewith, by any waiver or modification of any provision of the Lease or any other agreement delivered or given in connection therewith, by any default, failure or delay, willful or otherwise, in the performance of the Obligations, or by any other act or omission that may or might in any manner or to any extent vary the risk of any Guarantor or that would otherwise operate as a discharge of any Guarantor as a matter of law or

2

equity (other than a written release of Guarantor from the Landlord in accordance with the terms of the Lease or the payment and performance in full of the Obligations).

5.    Notwithstanding the provisions of Section 7, Guarantor agrees that its guarantee hereunder shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any Obligation is rescinded or must otherwise be restored or returned by the Landlord upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of either Tenant or Guarantor, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, either Tenant or Guarantor or any substantial part of its property, or otherwise, all as though such payment had not been made.

6.    Guarantor assumes all responsibility for being and keeping itself informed of Tenant's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment or nonperformance of the Obligations and the nature, scope and extent of the risks that Guarantor assumes and incurs hereunder, and agrees Landlord will have no duty to advise any of Guarantor of information known to it regarding such circumstances or risks.

7.    This Agreement shall survive the expiration or termination of the term of the Lease (including all option periods or extensions) and shall not terminate until indefeasible payment and performance in full of all Obligations.  Notwithstanding anything to the contrary contained herein, Guarantor hereby unconditionally and irrevocably waives, releases and abrogates, until such time as the Obligations shall have been indefeasibly paid and performed in full, any and all rights it may now or hereafter have under any agreement, at law or in equity (including any law subrogating Guarantor to the rights of Landlord), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Tenant or any other Person liable for payment or performance of any or all of the Obligations for any payment or performance made or undertaken by Guarantor under or in connection with this Agreement or otherwise.

8.    Guarantor represents, as to itself, that it has the full legal right, power and authority to enter into this Agreement and perform the transactions contemplated hereby. This Agreement has been duly authorized and delivered by Guarantor and constitutes the legal, valid and binding agreement of Guarantor, enforceable against Guarantor in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application relating to or affecting the enforcement of creditors' right and the application of equitable principles relating to the availability of remedies. Guarantor represents that its entry into and performance of this Agreement will not (i) violate or conflict with any provision of its formation and governance documents, (ii) violate any material legal requirement, regulation, order, writ, judgment, injunction, decree or permit applicable to it or (iii) except as would not reasonably be expected to result in a material adverse effect on Guarantor, violate or conflict with any contract to which it is bound. Guarantor represents, as to itself, that no consent, approval, authorization, order or filings of or with any court or Governmental Authority (as defined in the Lease) is required for the execution, delivery and performance by such Guarantor of, or compliance by Guarantor with, this Agreement or the consummation of the transactions contemplated hereunder, other than those that have been obtained by Guarantor.

9.    By accepting delivery of this Agreement, Landlord agrees that this Agreement is for its confidential use only and that neither its existence nor the terms hereof will be disclosed by

3

it to any person. Notwithstanding the foregoing, (i) Landlord may disclose this Agreement to its officers, directors, employees, affiliates, independent auditors, legal counsel and other advisors on a confidential and "need to know" basis in connection with the transactions contemplated hereby, (ii) Landlord may make such other public disclosures of the terms and conditions hereof as (and solely to the extent) Landlord is required by law to make and (iii) Landlord may disclose this Agreement in a lawsuit, action or proceeding commenced to enforce the terms of this Agreement against Guarantor.

10.     This Agreement shall inure to the benefit of the Landlord and its successors and assigns and any assignee of the Landlord's interest in the Lease, and shall be binding upon Guarantor and its successors and assigns.

11.     The whole of this Agreement is herein set forth and there is no verbal or other written agreement, and no understanding or custom affecting the terms hereof.  Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

12.     This Agreement may not be changed or terminated orally, but only by a written amendment hereto signed by Guarantor and Landlord.

13.     This Agreement is a guarantee of payment and performance (not of mere collection). All remedies afforded to Landlord, or its successors or assigns, by reason of this Agreement are separate and cumulative remedies, and no one of such remedies, whether exercised by the Landlord or not, shall be deemed to be an exclusion of any other of the remedies available to the Landlord and shall in no way limit or prejudice any other legal or equitable remedies which the Landlord may have.

14.     This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed and enforced in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such State, without giving effect to the principles of conflicts of law. Guarantor hereby irrevocably consents to and submits to the exclusive jurisdiction over Guarantor's person by any of the state or federal courts in the County of Buncombe, State of North Carolina.

15.     This Agreement shall be binding upon Guarantor and Guarantor's legal representatives, the legal representatives of Guarantor's estate and Guarantor's heirs, successors and assigns. Guarantor may not assign its obligations hereunder without the prior written consent of the Landlord.

16.     TO THE EXTENT PERMITTED BY LAW, GUARANTOR AND, BY ITS ACCEPTANCE HEREOF, LANDLORD, HEREBY IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM IN ANY WAY INVOLVING OR CONNECTED WITH THE LEASE OR THIS AGREEMENT.

17.     This Agreement may be executed in any number of counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which

4

when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or other electronic imaging (including in .pdf format) means shall be effective as delivery of a manually executed counterpart of this Agreement.

18.     Guarantor, and by its acceptance of this Agreement, the Landlord, hereby confirms that it is the intention of all such persons that this Agreement and the Obligations guaranteed by Guarantor hereunder not constitute a fraudulent transfer or conveyance for purposes of the United States Bankruptcy Code or any other federal, state or foreign bankruptcy, insolvency, receivership or similar law, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act or any similar foreign, federal or state law to the extent applicable to this Agreement and the obligations of Guarantor hereunder. To effectuate the foregoing intention, the Landlord and Guarantor hereby irrevocably agree that the Obligations for which Guarantor shall be liable under this Agreement at any time shall be limited to the maximum amount as will result in the obligations of Guarantor under this Agreement not constituting a fraudulent transfer or conveyance.

19.     In the event that Guarantor should breach or fail to timely perform any provisions of this Agreement, Guarantor shall pay within ten (10) Business Days of demand all reasonable out-of-pocket attorneys' fees, paralegals' fees, and all other reasonable out-of-pocket costs and expenses incurred by Landlord in connection with any trial, appellate, or bankruptcy proceeding in the enforcement of or preservation of Landlord's rights under this Agreement whether suit be brought or not.

20.     Any notice required hereunder to be sent to any Guarantor shall be sufficiently given by mailing certified or registered mail, postage prepaid, addressed as follows:

> c/o ESL Investments, Inc.
>
> 1170 Kane Concourse, Suite 200
> Bay Harbor Islands, FL 33154
> Attention:  Kunal Kamlani
>
> With a copy to:
>
> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York 10006
> Attention:  Joseph Lanzkron, Esq.
>
> [REMAINDER OF PAGE INTENTIONALLY BLANK]

5

**IN WITNESS WHEREOF,** Guarantor has duly executed this Agreement as of the day and year first above written.

**TRANSFORM MIDCO LLC**

By: _____

Name:

Title: