David W. Dykhouse (dwdykhouse@pbwt.com)
PATTERSON BELKNAP WEBB & TYLER, LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Tel: (212) 336-2000
Fax: 9212) 336-2222

Thomas J. Flynn (tflynn@larkinhoffman.com)
LARKIN HOFFMAN DALY & LINDGREN, LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437-1060
Tel: (952) 835-3800
Fax: (952) 896-3333

*Attorneys for MOAC Mall Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.*, | (Jointly Administered) |
| Debtors.[1] | |

# MOAC MALL HOLDINGS LLC'S FOURTH SUPPLEMENTAL

## (I) OBJECTIONS AND REPLY TO DEBTOR'S NOTICE OF ASSUMPTION AND ASSIGNMENT OF ADDITIONAL DESIGNATABLE LEASES, AND

## (II) OBJECTION TO DEBTOR'S STATED CURE AMOUNT

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

MOAC Mall Holdings LLC ("MOAC"), by and through its undersigned counsel, and based on newly obtained facts, hereby submits this supplement to its prior objections and reply (Doc. Nos. 2199, 3501, 3926) to the Notice of Assumption and Assignment of Additional Designatable Leases (Doc. No. 3298) in response to the Debtor's Response and Reservation of Rights with Respect to Objections to Cure Amounts and/or Assumption and Assignment of Designatable Leases (Doc. No. 3651) and Transform Holdco LLC's Omnibus Reply in Support of Assumption and Assignment of Designated Leases (Doc. No. 3654) (hereafter "Supplemental Objection"), and in support hereof states as follows:

Preliminary Statement

Background

1. On October 15, 2018, Sears Holding Corporation and its affiliated Debtor entities (collectively, the "Debtor") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in the U.S. Bankruptcy Court for the Southern District of New York.

2. MOAC is the owner of property, a mall in Bloomington, MN, more popularly known as Mall of America®. Sears is an anchor tenant in that building, under lease identified in the Debtor's motion with Store No. 1722 (the "MOAC Lease", attached to Hoge Decl. as Exs. A & B.).

3. MOAC properly objected to the Debtor's attempt to assume and assign the MOAC Lease to Transform Holdco LLC ("Holdco" or "Buyer," collectively with all of its affiliates, "Transform") for, among other reasons, the Debtor's failure to provide the adequate assurance required for assumption and assignment of shopping center leases under Section 365(b)(3) of the Bankruptcy Code.

4.  Holdco previously argued that MOAC failed to establish that Mall of America is a shopping center. Deferring to Holdco's argument, neither the Debtor nor Holdco attempted to comply with the adequate assurance requirements of Section 365(b)(3).

5.  The MOAC Lease's status as a shopping center lease has now been stipulated. [Doc. No. 4354, ¶4.] In addition, while neither Debtor nor Holdco have, prior to the date of this Supplemental Objection, filed any arguments that their requested assumption and assignment complies with the requirements of Section 365(b)(3).[2] However, MOAC has conducted discovery regarding this issue.

6.  Incorporating and reiterating MOAC's prior objections (Doc. Nos. 2199, 3501, 3926), this memorandum summarizes the primary dispute regarding Section 365(b)(3) and provides a supplemental update of facts discovered subsequent to MOAC's last memorandum on the issue.[3]

Procedural History

7.  On February 2, 2019, the Court issued an order (the "Sale Order") approving the sale of the Debtor's assets to Holdco. [Doc. No. 2507.] The Sale Order also authorized the assumption and assignment of certain executory contracts and leases, and provided a process for the *possible* subsequent assumption and assignment of other executory contracts and leases ("Designatable Leases"). The Sale Order explicitly preserved "all timely filed objections to the assumption and assignment of a Contract or Lease that is not an Initial Assigned Agreement [assigned through the Sale Order]." [*Id.* at 25–26.]

---

[2] Debtor is expected to file a reply of even date with this Supplemental Objection.

[3] Rather than simply repeat the prior statements of fact and objections, this supplementation focuses on the relevant and salient facts and objections warranting supplementation.

3.

8.  MOAC had timely filed its objection on January 30, 2019. [Doc. No. 2199.]

9.  On April 19, 2019, the Debtor filed a notice of assumption and assignment of certain Designatable Leases. [Doc. No. 3298.] This notice includes the MOAC Lease as a lease to be assigned to Transform Leaseco LLC ("Leasco"), an affiliate of Holdco. [*Id.* at 7.] This notice also defines a deadline of May 3, 2019, to object to the assumption and assignment of the noticed leases. [*Id.* at 4.]

10. On May 2, 2019, MOAC supplemented and amended its objections to the assumption and assignment of the MOAC Lease. [Doc. No. 3501.]

11. Numerous other landlords also filed similar supplemental objections prior to the May 3, 2019 deadline. The Debtor and Holdco each filed subsequent responses to these landlord objections, including MOAC's prior objections. The Debtor deferred to Holdco to respond to objections regarding adequate assurance. [Doc. No. 3651, ¶4.] While Holdco discusses the requirements of Section 365(f), Holdco provided no facts or discussion regarding adequate assurance required by Section 365(b)(3). [*See id.*, ¶49.] Instead, Holdco claimed that Section 365(b)(3) simply does not apply by claiming all relevant landlords failed to establish their leases as shopping-center leases. [*Id.*, ¶49.]

12. Accordingly, MOAC replied to the Debtor and Holdco by supplementing MOAC's prior objections to explain how the Debtor and the Buyer still failed to satisfy their obligations under Section 365 of the Bankruptcy Code. [Doc. No. 3926.] This filing also provided additional facts to supplement the previous affirmative factual assertions regarding the status of the MOAC Lease as a shopping center lease. [*Id.*; *see also* Doc. No. 3927 (declaration in support of Doc. No. 3926).]

Discovery and Requests for Admissions

13. On May 20, 2019, MOAC served requests for admission and interrogatories on Debtor and Holdco—both parties to this contested matter. [Declaration of Thomas J. Flynn, dated July 8, 2019, ¶¶2-5, Exs. A ("Debtor's Admissions"), B ("Debtor's Answers"), C ("Requests for Admissions to Holdco"), D ("Interrogatories to Holdco").] While the Court's Amended Case Management Order permits discovery on shortened time periods (Doc. No. 405, ¶41), MOAC gave Debtor and Holdco a full 30 days to respond to these discovery requests.

14. On June 15, 2019, the Court approved a stipulation between Debtor, Holdco, and MOAC. [Doc. No. 4354 (the "Stipulation").] Among other things, the parties stipulated that the MOAC Lease constituted a shopping-center lease under Section 365(b)(3). [*Id.*, ¶4.] The parties also stipulated to an extension, to July 2, 2019, to Debtor's and Holdco's deadline to respond to MOAC's discovery requests—including the requests for admission. [*Id.*, ¶8.]

15. While Debtor submitted responses, albeit insufficient, to MOAC's discovery requests (Debtor's Admissions; Debtor's Answers), more often than not, it deferred any response to be obtained from Holdco. Debtor even suggested that <u>only</u> Holdco would have the information needed to respond. However, Holdco failed to respond to any of MOAC's discovery requests. (Flynn Decl., ¶6.) Accordingly, pursuant to Fed. R. Civ. P. 36(a)(3), incorporated by Fed. R. Bankr. P. 7036, Requests for Admissions to Holdco are all deemed admitted ("Holdco's Admissions").

Current Status and Facts

16. In addition to Holdco's Admissions, in an email, dated June 3, 2019, Transform confirms that it has "no plans to reopen the store at this [Mall of America] location." (Flynn Decl., Ex. E.) Transform also confirms that it does not yet have tenants to sub-lease any of the MOAC Lease space. [*Id.*] Transform does not provide a clear timeline for filling the space—

5.

instead only saying that Transform is "hopeful to have new tenants in the coming months." [*Id.*] Transform goes on to clarify that, while the space encompasses three floors, its primary focus is on finding tenants for the ground floor and second floor. [*Id.*]

17.     Accordingly, MOAC now supplements and updates its prior objections to provide and take into account these additional, newly discovered and established facts. Again, all facts, discussion, and objections asserted in MOAC's prior objections are also incorporated and reiterated herein by reference. [Doc. Nos. 2199, 3501, 3926.]

## DISCUSSION

18.     MOAC continues to maintain its arguments discussed in its previously filed objections. [Doc. Nos. 2199, 3501, 3926.] Rather than rehash those arguments in full, this discussion focusses on placing the newly discovered and established facts in context of MOAC's continuing objections.

19.     In replying to Holdco's response to MOAC's objection, MOAC demonstrated how Debtor and Transform fail to prove the special adequate assurances required for shopping center leases like the MOAC Lease in Section 365(b)(3). [Doc. No. 3926, ¶¶20–31.] The newly discovered and established facts further demonstrate that Debtor and Leaseco/Transform fail to meet the additional adequate assurance requirements of Section 365(b)(3) because they (A) fail to provide assurance that key lease provisions will not be violated by Leaseco, (B) fail to provide any assurance that tenant mix and balance will not be disturbed, (C) fail to establish that Transform's operating condition is similar to or better than that of Sears in 1991, and (D) fail to even argue that Transform's financial condition is similar to or better than that of Sears in 1991. Each of these points is discussed in turn.

20. The Debtor bears the burden of demonstrating the assignee's ability to comply with all requirements of Section 365, including, but not limited to, Sections 365(b)(3) of the Bankruptcy Code. *See, e.g.*, *In re Bygraph, Inc,.* 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986); *see also In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991). Absent such a showing, the Bankruptcy Code requires denial of the proposed assumption and assignment.

21. Because Mall of America indisputably constitutes a shopping center, as stipulated by the parties (Doc. No. 4354, ¶4), the Debtor must meet specific requirements of adequate assurance under Section 365(b)(3) of the Bankruptcy Code, which are intended to "protect the rights of lessors *and* the centers other tenants." *See, e.g.*, *In re Joshua Slocum,* 922 F.2d 1081, 1086 (3rd Cir. 1990) (emphasis added). The nature of the proposed tenant's business and its affect on tenant mix is an important consideration and "may be as important to the lessor as the actual promised rental payments." *Id.* at 1091 (quoting H.R. Rep. No. 595, 95th Cong., 1st Session 348–49). In other words, in exchange for taking away a landlord's contractual ability to regulate and ensure a stable tenant mix, the Code builds in its own protections.

A.  <u>Debtor and Transform fail to assure compliance with MOAC Lease's go-dark provisions.</u>

22. In its prior objection, MOAC demonstrated how Debtor and Transform fail to prove adequate assurance that, once the lease is assigned, the assignee will comply with the lease term requiring one-year notice before the third floor goes dark. [Doc. No. 3926, ¶¶25–25.] Section 365(b)(3)(C) requires the Debtor and assignee to prove that the assignee will comply with all provisions of the lease. *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531 (1984); *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000); *In re MF Glop. Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D. N.Y. 2012).

23. The MOAC Lease requires one-year's notice before the third floor goes dark. [Hoge Decl., ¶12.] Transform admits that it does not plan to operate a retail store in the MOAC Lease space and that it has not provided any assurance that retail tenants will fill the space within a reasonable period of time. [Holdco's Admissions, Request Nos. 9, 11, 13.] Debtor admits that it has provided no such assurance either and defers to Transform regarding its planned use of the space. [*See* Debtor's Admissions, Request Nos. 9, 11–13.] Transform also recently stated that it will not reopen the Sears in Mall of America and has no tenants for the space and that its efforts to find tenants are primarily focused on the first two floors. This provides further evidence that Holdco will not comply with the MOAC Lease's requirement to provide one-year notice before the third floor goes dark.

24. Accordingly, Debtor has (a) failed to establish compliance with Section 365(b)(3)(C)(2); (b) admitted, with Transform, failure to comply with this section; and (c) additional facts demonstrate that this section will not be satisfied.

B. <u>Debtor and Transform fail to assure stable tenant mix and balance.</u>

25. In its prior objection, MOAC also demonstrated how, by failing to provide any information about the actual tenants for the leased premises or any real assurance that there even would be tenants, Debtor and Transform fail to provide adequate assurance that the assignment will not disrupt Mall of America's tenant mix. [Doc. No. 3926, ¶¶28–31.]

26. *In addition to* the other, separate adequate assurance requirements of Section 365(b)(3), Section 365(b)(3)(D) requires adequate assurance that assumption and assignment "will not disrupt any tenant mix or balance in the shopping center." Even a portion of the leased space remaining dark for an unreasonable period of time violates this provision. *See In re Rickel*

*Home Centers, Inc.*, 240 B.R. 826 (Bankr. D. Del. 1998), *appeal dismissed*, 209 F.3d 291 (2000), *cert. denied*, 531 U.S. 873 (2000).

27. The plain text of the Section 365(b)(3)(D) requires that tenant mix provision be considered separately from, and in addition to, Section (b)(3)(C)'s consideration of contractual tenant mix, and other, requirements. This court has analyzed Section 365(b)(3)(D) separately from Section 365(b)(3)'s other requirements. *See, e.g.*, *In re Ames Dept. Stores, Inc.*, 348 B.R. 91 (Bankr. S.D.N.Y. 2006); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299 (Bankr. S.D.N.Y. 1983); *In re Ames Dep't Stores, Inc.*, 121 B.R. 160, 165 (Bankr. S.D.N.Y. 1990) (same); *accord In re Rickel Home Centers, Inc.*, 240 B.R. 826 (Bankr. D. Del. 1998), *appeal dismissed*, 209 F.3d 291 (2000), *cert. denied*, 531 U.S. 873 (2000) (analyzing tenant mix requirement for shopping center, even with a provision allowing the space to go dark). The Third Circuit, in *In re Joshua Slocum, Ltd.*, discussed Congress's intent in protecting both landlords *and* tenants from vacancy, partial operation, and other disruptions to tenant mix:

> Congress wished to alleviate the hardship caused landlord and tenant resulting from vacancy or partial operation of the debtor's space in the shopping center. Section 365 also insures that the landlord will continue to receive payments due under the lease. Finally, the statute guarantees to the landlord <u>and remaining tenants</u> that the tenant mix will not be substantially disrupted. (emphasis added)

922 F.2d 1081 (3d Cir. 1990) (citing 130 Cong. Rec. S8891); *see also In re Trak Auto Corp.*, 367 F.3d 267, 241–44 (4th Cir. 2004) (discussing Congress's intent in preventing tenant mix issues by removing flexibility from § 365(b)(3)(C) and (D)).[4] Accordingly, Section 365(b)(3)(D) must be considered without regard for contractual tenant-mix requirements, as intentional, distinct

---

[4] In 1983, Congress removed the "substantially" qualifier from both Section 365(b)(3)(C) *and* (D). *Compare* 11 U.S.C. §365(b)(3) (1982) *with* Pub.L. 98-353, Title III, §§ 362, 402-404, July 10, 1984, 98 Stat. 361, 367; 11 U.S.C. § 65(b)(3) (2019).

9.

protection for both landlords and other tenants in light of other contracted-for protections taken away through the Bankruptcy Code's assignment process. *See, e.g.*, *In re Rickel, supra* (holding that a shopping center had to be entirely rented out to new tenants within six months of assumption, even though original lease allowed the debtor to go dark).

28. As explained in MOAC's prior objection (Doc. No. 3926), the MOAC Lease space is a critical space in Mall of America, and it is essential that the space be completely filled with appropriate tenants. (Hoge Decl., ¶¶8, 11, 14.)

29. Debtor and Transform both admit that all three floors of the MOAC Lease space was filled with Sears—a major retail tenant—from the time Mall of America until Sears closed as a part of this bankruptcy. [Debtor Admissions, ¶¶3, 4; Holdco Admissions, ¶¶3, 4.]

30. As explained in the previous section, Debtor and Transform also admit that they have provided no assurance that the MOAC Lease space will not continue to remain dark for more than a reasonable period. Transform confirmed that it currently has no one to fill the MOAC Lease space. [Flynn Decl., Ex. E.] Transform only has a "hope" to have tenants "in the coming months." [*Id.*] Transform makes no claim that these hoped-for tenants will fill all three floors and admits that its efforts to find tenants are primarily focused on two of the three floors. [*Id.*] Accordingly, Transform's recent statements and admissions both indicate that the anchor-tenant space, in whole or in part, will remain dark for the foreseeable future. MOAC is not even provided with any recourse to ensure that the space is filled with appropriate tenants within a reasonable period of time.

31. Accordingly, Debtor has (1) failed to establish compliance with the separate requirements of Section 365(b)(3)(D), (2) admitted, with Transform, failure to comply with this section, and (3) additional facts demonstrate that this section will not be satisfied.

C.  <u>Debtor and Transform have failed to prove similar or better assignee operating performance.</u>

32. In its prior objection, MOAC demonstrated how Debtor and Transform failed to provide the required adequate assurance that the financial condition and *operating performance* of the relevant assignee are similar to that of Sears on May 30, 1991. [Doc. No. 3926, ¶¶20–24.]

33. Section 365(b)(3)(A) requires the Debtor and assignee to prove adequate assurance of *both* financial condition *and operating performance* of the assignee—*in addition to adequate assurance of rent*. Recognizing that shopping-center landlords enter into leases based on the financial condition and operating performance of the tenant-to-be, the Code requires that the new tenant's financial condition and operating performance be similar to the debtor *as of the time it became the lessee*. 11 U.S.C. §365(b)(3)(A). A Massachusetts bankruptcy court, in *In re Casual Male Corp.*, noted that congress's 1984 amendments to Section 365(b)(3)(A) were intended to provide assurance to the landlord and tenants that the assignee would not go bankrupt as well:

> The legislative history indicates that the purpose of this language was "to insure that the assignee itself will not soon go into bankruptcy and will provide operating and advertising benefits to the other tenants similar to those provided by the original tenant when its lease was executed."

120 B.R. 256, 264 n.8 (Bankr. D. Mass. 1990) (quoting 130 Cong.Rec. S889 *reprinted in* App. 3 *Collier on Bankruptcy* XX–71 (15th ed.1989)).

34. In comparing the operating performance of the proposed assignee to that of the debtor, at the time the lease commenced, the *Casual Male* court looked at historical operating losses or profits. *Id.* at 265. Where the assignee is a new company, the U.S. District Court for the Southern District of New York approved of *Casual Male*'s approach in using the operating

11.

performance of the assignee's principal. *In re Ames Dept. Stores, Inc.*, 2003 WL 749172 at *2 (S.D.N.Y. Mar. 5, 2003) (citing *Casual Male*).

35. Transform admits that its operating performance is not similar or better than that of Debtor in 1991, when the MOAC Lease was executed (Holdco's Admissions, Request No. 6), and Debtor effectively defers to Transform on this issue. [Debtor's Admissions, Request No. 6.] Again, neither Debtor nor Transform have argued that the assignee's operating performance meets the requirement of Section 365(b)(3)(A). Since the assignee, in this case, is not intending to even fill the space with its own retail operations, the assignee's operating performance is irrelevant in assuring the landlord and tenants of continued operations and advertising benefits of a tenant in the MOAC Lease space. That said, the operating performance of the principal of Transform, in this case, was to run Sears and K-Mart into bankruptcy.

36. Accordingly, Debtor has (a) failed to establish compliance with the separate requirements of Section 365(b)(3)(A) to show that the assignee's operating performance is similar to that of Debtor when the MOAC Lease was executed; (b) admitted, through Transform, failure to comply with this requirement; and (c) additional facts demonstrate that this requirement is not satisfied.

37. Debtor and Transform also fail to establish that the financial condition of Transform is similar to that of Debtor in 1991. The Debtor has failed to even argue this point. Instead, Debtor defers to Transform on this issue (*See* Debtor's Admissions, Request No. 5), and Transform admits that its financial condition is not similar or better than that of Debtor in 1991. [Holdco's Admissions, Request No. 5.]

38. Not only has the Debtor and Transform failed to even try to establish their compliance with the adequate assurance requirements for shopping center leases under Section 365(b)(3), Transform, and, by deference, Debtor, has admitted that the requirements are not

satisfied, and the newly discovered evidence further indicates that these requirements are not satisfied.

Cure Amount

39.     The cure due MOAC as of May 2, 2019 was $609,869.59, based upon pre-petition arrearages and post-petition default. This amount does not include attorney's fees and costs, which are allowed under the MOAC Lease and continue to accrue.

Joinder and Reservation of Rights

40.     MOAC maintains all previously identified objections in their entirety. MOAC reserves the right to make such other and further objections as may be appropriate as additional documentation and information is provided by the Debtor. MOAC specifically reserves all rights, remedies, and positions with respects to any proposed assignee including the right (i) to object to any proposed use or change use of any and all of the premises once such assignee has been identified and (ii) to amend or update any cure amounts in connection therewith. MOAC hereby joins in the objections filed by Debtor's other landlords and the official committee of unsecured creditors, to the extent such objections are consistent herewith.

[remainder of page intentionally left blank]

Conclusion

Wherefore, MOAC respectfully request that the Court (i) deny the assumption and assignment of the MOAC Lease, unless and until the issues identified herein are addressed, and fully satisfied, and (ii) grant such further relief as the court deems just and proper.

Dated:  July 8, 2019                Respectfully submitted,

                                     /e/ Thomas J. Flynn
                                    Thomas J. Flynn (30570)
                                    Larkin Hoffman Daly & Lindgren, Ltd.
                                    8300 Norman Center Drive
                                    Suite 1000
                                    Minneapolis, Minnesota  55437-1060
                                    (952) 835-3800
                                    tflynn@larkinhoffman.com

                                    Admitted *pro hac vice* on December 26, 2018

Dated:  July 8, 2019                 /e/ David W. Dykhouse
                                    David W. Dykhouse
                                    Patterson Belknap Webb & Tyler, LLP
                                    1133 Avenue of the Americas
                                    New York, New York  10036-6710
                                    (212) 336-2000
                                    mdwdykhouse@pbwt.com

                                    *Attorneys for MOAC Mall Holdings LLC*

4849-8922-5881, v. 1