**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X
                                                    :
In re                                               :
                                                    :
**SEARS HOLDINGS CORPORATION, *et al.*,**           :
             **Debtors.**[1]                        :
                                                    :
                                                    :
                                                    :
---------------------------------------------------------------- X

**Chapter 11 Case No.**

**18-23538 (RDD)**

**(Jointly Administered)**

**DECLARATION OF CULLEN D. MURPHY IN SUPPORT OF TRANSFORM HOLDCO LLC'S BRIEF IN SUPPORT OF THE ADVERSARY COMPLAINT AND IN OPPOSITION TO DEBTORS' SUPPLEMENTAL MOTION TO ENFORCE THE ASSET PURCHASE AGREEMENT**

I, Cullen D. Murphy, declare under penalty of perjury as follows:

1.      I respectfully submit this declaration ("Declaration") in support of Transform

Holdco LLC's Brief in Support of the Adversary Complaint and in Opposition to Debtors'

Supplemental Motion to Enforce the Asset Purchase Agreement.

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC(6546); Sears Operations LLC(4331); Sears, Roebuck and Co. (0680); Service Live Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); Max Serv, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); My Gofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); Star West, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); and Sears Brands Management Corporation (5365).

2.      I have more than six years of financial experience, with a particular focus on restructuring and bankruptcy transactions. I have held positions at several major investment banks. Presently, I am a Vice President at Moelis & Company LLC ("Moelis"), an independent investment bank.

3.      After Sears Holdings Corporation ("SHC") and certain of its subsidiaries (collectively, the "Debtors") filed for bankruptcy in October of 2018, ESL Investments Inc. ("ESL") engaged Moelis to advise ESL on the potential purchase of substantially all of Debtors' assets in a Section 363 sale (the "Transaction") by a newly-formed subsidiary of ESL, Transform Holdco LLC ("Transform").

4.      Following Moelis' retention, the Debtors and ESL engaged in extensive negotiations over the terms of the Transaction. The process of negotiating what became the Asset Purchase Agreement, dated January 17, 2019 (the "APA"), lasted from approximately October 2018 to January 17, 2019. During that time, I and my colleagues from Moelis participated in a team from the Transform side that included representatives of ESL (including Kunal Kamlani and Edward S. Lampert) and lawyers from Cleary Gottlieb Steen & Hamilton LLP ("Cleary"). We interfaced with representatives of M-III Partners, LP ("M-III") (including Mohsin Meghji and Chris Good), Lazard Frères & Co. LLC ("Lazard"), Weil, Gotshal & Manges LLP ("Weil"), legal counsel for the Debtors, and Debtors' Restructuring Committee along with its advisors.

5.      Moelis' role on the engagement included, among other things, assisting Transform in structuring and negotiating the financial terms of the proposed deal and in preparing financial models and liquidity analyses for Transform based on the offers made by Transform and information provided by Debtors. I and my colleagues at Moelis interacted on a

regular basis with Debtors' principals and advisors, including Chris Good, Brian Griffith, Jonathan Boffi and others from M-III, Brandon Aebersold, Levi Quaintance and others from Lazard, and Ray Schrock, Sunny Singh and others from Weil.

6.      Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge of the circumstances surrounding the negotiation and closing of the Transaction. If called to testify, I would testify competently to each of the facts set forth in this Declaration.

7.      On December 28, 2018, Transform submitted a definitive going-concern bid (the "December 28 Bid") for Transform to purchase substantially all of Debtors' assets including stores, intellectual property, and inventory on hand or related to the business in exchange for an aggregate consideration of up to $4.4 billion. The December 28 Bid did not have Transform assuming Debtors' severance reimbursement obligations, 503(b)(9) liabilities, or accounts payable, all of which would have remained with Debtors had the offer been accepted.

8.      On January 2, 2019, Transform's principals and their advisors from Moelis and Cleary met with the Restructuring Committee of the Debtors, the Restructuring Subcommittee and their advisors from Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss"), Evercore Group LLC and Alvarez & Marsal North America, LLC ("A&M"), and Debtors' principals and their advisors from M-III, Lazard and Weil to discuss the December 28 Bid. I was present for the meeting. Debtors and the Restructuring Committee expressed the concern, among others, that accepting the December 28 Bid would leave the estates administratively insolvent due to the liabilities left with the estates. Debtors indicated that they would take the position that Transform's bid was non-qualifying and indicated that Transform might be able to make a qualifying bid by offering more cash for its proposed release as well as assuming

additional liabilities including additional property taxes and cure costs. In connection with that meeting, Debtors' advisors from Lazard provided Transform and its advisors (including Moelis) a spreadsheet of Debtors' administrative claims, indicating (among other things) that Debtors faced estimated outstanding administrative claims of $139 million in 503(b)(9) claims, $35 million in severance obligations, $135 million in property taxes, and $166 million in accounts payable (comprised of $111 million in merchandise accounts payable and $55 million in non-merchandise accounts payable). *See* Exhibit A, attached hereto, which is a true and correct copy of a cover email attaching this spreadsheet.

9.      After Debtors refused to designate the December 28 Bid as a qualified bid, Transform's principals and its advisors, including a team at Moelis of which I was a part, spent substantial time negotiating and ultimately formulating, after discussions with Debtors and their advisors, what became Transform's final bid. That process lasted from early January until January 17, 2019. The outline and principal terms of that bid (the "Revised Proposal") were reflected in a January 9, 2019 bid letter (the "January 9 Bid Letter") from Transform to Lazard. As part of the January 9 bid, Transform agreed to assume up to $166 million of payment obligations with respect to goods ordered by Debtors prior to the closing of the proposed transaction but as to which goods Debtors had not yet taken delivery and title prior to closing. In exchange, the Revised Proposal called for Debtors to deliver additional inventory with a book value of up to $166 million with respect to which Transform assumed payment obligations (the "166 Million Ordered Inventory"). These provisions were among several categories of liabilities, including severance reimbursement obligations and 503(b)(9) liabilities, that Transform agreed to assume in exchange for assets it proposed to acquire.

4

10.     The genesis of the changes in the Revised Proposal, from the December 28 Bid,
came from a series of communications between Transform with its advisors and Debtors and
their advisors over the course of several days starting on or about January 3, 2019.

11.     Starting on or about January 3, 2019, Transform and its advisors discussed with
Debtors and their advisors the possibility of Transform assuming additional liabilities and/or
purchasing additional assets in order for Transform to improve its bid. Among the proposed
liabilities to potentially be assumed were post-petition accounts payable for goods to be
delivered post-Closing.

12.     In response to Transform's willingness to improve its bid, on January 6, 2019,
Debtors provided Transform a presentation setting forth the assets that would have remained
with the estates under Transform's December 28 Bid and that therefore were available to be
provided to Transform in connection with a revised offer that would have Transform assuming
some of Debtors' liabilities.  The Debtors also provided Transform a presentation listing the
liabilities remaining with the estates, which Transform might assume in a revised bid.  *See*
Exhibit B, attached hereto, which is a true and correct copy of email correspondence including
Weil, Cleary, M-III and Moelis, dated January 6, 2019, attaching a presentation entitled
"Remaining Value at SHC Estate in an ESL Transaction" (the "Remaining Value Presentation")
and a presentation entitled "Discussion Materials – Project Blue."  In the Remaining Value
Presentation, Debtors estimated that $155 million remained in real estate value, $376 million
remained in accounts receivable, $171 million remained in prepaid inventory, and $35 million
remained from proceeds of a credit card tort claim.

13.     As described by Debtors in the days after the December 28 Bid was rejected,
Debtors had three sources of inventory they were prepared to provide Transform.  One source

was the inventory that had already been paid for and as to which Debtors would have taken title

before the Closing. This inventory was sometimes referred to in conversations between the

parties' advisors as "on the stock ledger" inventory. In connection with the December 28 Bid,

Transform had offered to purchase at least $1,553 million in on the stock ledger inventory.

14.      The second source of inventory was prepaid inventory, inventory for which

Debtors had paid but as to which they had not taken title or delivery at the time of Closing

("Prepaid Inventory"). Debtors estimated that they would have $147 million in Prepaid

Inventory. The third category was additional inventory (as reflected in the January 9 Bid Letter)

as to which Debtors would not have taken title and delivery until after the Closing. Debtors

estimated that there was $166 million in this additional inventory. My belief was that $166

million in additional inventory was not reflected in the Remaining Value Presentation because it

was not yet owned by the estates; however, it was the subject of numerous discussions between

Transform, Debtors and their respective advisors.

15.      On Friday, January 4, 2019, I sent an email to Chris Good at M-III asking whether

the inventory associated with the accounts payable that Transform had indicated a willingness to

potentially assume would be delivered post-close or would be part of the $1,553 million in on the

stock ledger inventory Transform had already indicated a willingness to potentially purchase.

The intent of my email was to make sure that Transform would be acquiring the right to

inventory in exchange for the $166 million in obligations it was assuming and that such

inventory would not be part of, and would be in addition to, the on the stock ledger inventory.

*See* Exhibit C, attached hereto, which is a true and correct copy of this email correspondence

between M-III and Moelis. My email is in the middle of a chain that starts with correspondence

about property taxes. I wrote: "The A/P that the Company is asking NewCo to assume – will

this be delivered pre-close? Said another way is the inventory associated with this A/P in the $1,553 or will it be delivered post close?" I emphasized: "Important point that Kunal [Kamlani] wants to be 100% sure on. Would be great if you have any thoughts tonight even if work needs to be done. He also suggested that we put a call on the books for tomorrow to discuss this issue in detail which I agree with."

16.    A series of communications followed in which Mr. Good reflected that the "company is working on it," which I understood to mean that Debtors were working to confirm that the $166 million in payables would be in respect of additional inventory that would not be in the $1,553 million in on the stock ledger inventory and were engaged in the task of calculating, from the accounts payable that were on the books at the time of the early January emails, what Debtors expected to be on the books at the time of closing. I communicated to Mr. Good my concern that if Transform closed the Transaction "the first week of February and these goods have been ordered [meaning the goods for which there were accounts payable pending in early January] then wouldn't most of these goods be in stock by closing?" Mr. Good responded by indicating that the accounts payable at closing would be for other goods that would then be in transit and not part of the $1,553 million: "You'll take whatever that AP is at close no? And thus there will be other goods in transit at close?"

17.    To make sure that my understanding of the business agreement was absolutely clear, I replied: "So you're saying that the A/P that is outstanding now will be paid off by close and the A/P associated with new goods ordered will be what we are actually assuming. And further that those goods will be delivered post close. Did I get that right?" Both parts of that email were critical. Because of Mr. Kamlani's stated concerns, I wanted to make sure that the accounts payable that Transform would be assuming under the Revised Proposal would be in

connection with "new goods ordered." Those goods would provide the support to be able to satisfy the accounts payable. I also wanted to make sure that the new goods ordered would not be part of the $1,553 million in on the stock ledger inventory that Transform had already agreed to purchase.

18.     Mr. Good's response was clear. He replied:  "100% - yes." This was express confirmation to me that Debtors shared Transform's business understanding that the contractual obligations that Transform was assuming in respect of the up to $166 million obligation would be solely with respect to $166 million in additional inventory Transform would be obtaining that was not part of the on the stock ledger inventory.

19.     I then asked what, if any, of the accounts payable existing at the Closing would be for goods delivered before the Closing. This was an important distinction because the transaction that the parties were discussing also required Debtors to deliver $1,553 million in on the stock ledger inventory, which I had understood Transform separately bargained to purchase. My understanding of the on the stock ledger inventory was that it was inventory in Debtors' possession and as to which Debtors had title at the Closing. If Debtors by Closing expected to take delivery and title to some of the inventory for which Transform was assuming the up to $166 million obligation, it would become on the stock ledger inventory and would not be a true offset to the obligation Transform would be assuming (since, based on my understanding, Transform was already separately purchasing on the stock ledger inventory).

20.     It was critical for Transform to understand as a practical matter how much of the approximately $166 million in inventory was expected to be incremental to the on the stock ledger inventory because that figure was critical for Transform's analysis of the value provided for by the transaction and the accuracy of its liquidity models, which in turn was critical to

Transform's financing. Calculating that value depended on estimating how much of the inventory for which there would be the $166 million in accounts payable as of Closing would have been part of the on the stock ledger inventory. Responding to my question, Mr. Good relayed that based on the average terms for non-CIA domestic vendors, only 11% of those goods would be delivered before the Closing. He also said that, for imports, none would be received before the Closing. Given this conversation, I understood from Mr. Good that the vast majority of inventory in connection with the $166 million in what he said were accounts payable would be incremental to the on the stock ledger inventory.

21.      On January 8, 2019, Mr. Kamlani sent an email to Mr. Good in which Mr. Kamlani asked Mr. Good if he could "confirm that the $166 of AP is 90%+ for goods that will not be in the Company's possession as of 2/8." I was copied on the email. *See* Exhibit D, attached hereto, which is a true and correct copy of this email correspondence between ESL, M-III and Moelis. Mr. Good responded, "yes that is approximately correct." Thus, I understood that as a business matter, nearly all of the inventory for which Transform was assuming what Debtors claimed was $166 million in accounts payable would not be in Debtors' possession at Closing and would not be on the stock ledger inventory, but rather would be new goods which would support the obligation Transform would agree to assume.

22.      The shared understanding of the business agreement was reflected in a liquidity analysis sent to potential lenders for the financing of the going concern sale. *See* Exhibit E, attached hereto, which is a true and correct copy of email correspondence between ESL, Cleary, Moelis and Bank of America Merrill Lynch, attaching a Summary of Model Adjustments dated January 8, 2019. In the Summary of Model Adjustments summarizing changes made to the

liquidity analysis, Transform wrote that the revised liquidity model "[a]ssumes post close

delivery of $166mm of inventory *and associated accounts payable*" (emphasis added).

23.    Between submitting the Revised Proposal and the signing of the final bid,

Transform and Debtors negotiated over the timing by which Transform would need to satisfy the

liabilities it had agreed to assume in the Revised Proposal. The concern among Transform and

its advisors was in ensuring that Transform would have the liquidity needed to satisfy the

obligations for the additional inventory Transform would be receiving when those obligations

became due. Thus, Transform and its advisors requested a schedule for when payments for the

$166 million in accounts payable would be due. To my knowledge, I was never a part of any

discussion that indicated that in addition to the $166 million in accounts payable Transform

would be required to assume a separate set of liabilities denominated "payment obligations" with

respect to Ordered Inventory which is why Moelis never requested such a schedule on behalf of

its client.

24.    On January 14, 2019, Mr. Good forwarded detail from the Debtors on accounts

payable by vendor in response to Transform's request for the schedule of when payments would

be due. The original email sent from Nick Weber at M-III lists out "Total AP between domestic

and import" as $121.3 million for "merch," and $49.0 million for "non-merch." Good made no

comment on this break-down, but the excel attachment to this email providing back-up for these

figures also referred to $141 million in "merch AP" and $55 million in "non-merch AP,"

signaling that Transform could assume up to $141 million in "merch" accounts payable with the

remainder being "non-merch" accounts payable. See Exhibit F, attached hereto, which is a true

and correct copy of this email correspondence between Moelis and M-III. On January 16, 2019,

I asked if Moelis could get, "for the $166mm of A/P being assumed, a breakdown of when that

10

has to be paid by month starting at close." Moelis forwarded this correspondence to Transform

and its advisors. Again, no request was made for detail of payment obligations with respect to

Ordered Inventory separate from payables, nor did Debtors ever suggest there was such a

separate obligation. Given that we were asking for a schedule of the future payments Transform

would have to make, I would have expected Debtors to produce separate lists for payment

obligations with respect to Ordered Inventory and payables if those were separate categories of

obligations that they believed Transform to be assuming. My belief is that the reason Debtors

did not provide such a separate schedule for additional obligations is because they had the same

business understanding that I had: that there was only a single obligation with respect to payables

with respect to Ordered Inventory and that it related to inventory that was incremental to the on

the stock ledger inventory.

25.    Thus, prior to signing the APA, Debtors made a request that Transform assume a

single obligation of up to $166 million in accounts payable in exchange for $166 million in

additional inventory that would not be part of the on the stock ledger inventory.

26.    After the parties signed the APA, and in anticipation of the Sale Hearing, debtors'

communications regarding the $166 million in accounts payable changed dramatically.

27.    On or around January 22, 2019, Mr. Good contacted me for information on how

Transform was reflecting the $166 million in assumed payables and $166 million in Ordered

Inventory in its liquidity analysis. He told me this information was requested for the declaration

of Debtors' Chief Restructuring Officer, Mohsin Meghji. On Wednesday, January 23, 2019, my

colleague Josh Gruenbaum sent an email to Mr. Meghji, which showed how Transform reflected

the $166 million in Ordered Inventory in the liquidity analysis. The email, on which I was

copied, explained that the $166 Million Ordered Inventory reflected a cash benefit for Transform,

because it would receive the inventory before having to pay the associated payables. This explanation was also reflected in a schedule attached to the email, which described the "A/P for post-close inventory." The liquidity analysis meanwhile assumed that Transform would have a "starting A/P balance of $166mm of assumed AP payable in November." Transform's assumption of an increase in liquidity from the $166 Million Ordered Inventory was reflected in the "Change A/P" line item in the "Budget Overview." *See* Exhibit G, attached hereto, which is a true and correct copy of this email correspondence between M-III and Moelis. This presentation was consistent with the business understanding that Mr. Good had conveyed to me: the only additional obligation which Transform would be assuming would be up to $166 million in what M-III conveyed were or would become accounts payable, and those accounts payable would be in respect of additional inventory that was not part of the on the stock ledger inventory and that Transform would be able to use to pay the accounts payable. Mr. Meghji never responded to this email. The liquidity impact of the $166 million of Ordered Inventory was identical to that in a January 16, 2019 liquidity analysis shared with Debtors and potential lenders before the signing of the APA. *See* Exhibit H, attached hereto, which is a true and correct copy of email correspondence between Moelis, ESL, Debtors, M-III, and others, attaching the liquidity analysis and other documents.

28.    On the morning of Friday, January 25, 2019, A&M, financial advisors to the Restructuring Subcommittee of SHC's Board of Directors, asked my colleague Josh Gruenbaum questions regarding the same issue previously discussed with Mr. Meghji (i.e., how the $166 million in accounts payable was reflected in Transform's liquidity analysis). Mr. Gruenbaum sent a follow-on email later that afternoon to A&M (on which I and Robert Britton from Paul Weiss, an advisor to the Restructuring Subcommittee, were copied). *See* Exhibit I, attached

hereto, which is a true and correct copy of email correspondence between A&M, Paul Weiss,

Cleary and Moelis, attaching two schedules.  Mr. Gruenbaum's email stated that Transform

received "the associated benefit of the $166mm AP assumption through receipt of $166mm of

inventory in February . . . to be paid out over 3 months."  In other words, Transform would

benefit by receiving the $166 Million Ordered Inventory in February before having to pay for it

in subsequent months.  This was consistent with the business understanding as conveyed by

Debtors and their advisors to me.  At no time during the discussions with Mr. Meghji or others at

M-III did Debtors' advisors suggest that the $166 million in accounts payable was in respect of

anything other than additional inventory that was not part of the on the stock ledger inventory.

29.    Later that day, Mr. Good relayed to Moelis a new understanding of the bargain.

*See* Exhibit J, attached hereto, which is a true and correct copy of this email correspondence

between M-III and Moelis, which was forwarded to Transform and its other advisors.  While Mr.

Good had previously forwarded files showing a break-down of accounts payable for "merch"

and "non merch," in conversations he had previously stated that the up to $166 million in

accounts payable Transform would be assuming would be in respect of an equivalent amount of

additional inventory it would be receiving.  He now stated that a portion of the payables which

Transform was assuming would be for "non merch" and that some of the inventory would be part

of the on the stock ledger inventory.  He said "not all of [the payables] will have inventory

delivered post close but there will be a significant amount - especially the on the water of

$70mm plus all the domestic."  Earlier in the chain, Mr. Good had forwarded to Moelis an email

from a representative of A&M noting that "[i]t essentially seems as though [Transform isn't]

picking up any exi[s]ting AP and [is] just taking inventory which hasn't yet arrived at the

Company," and Mr. Good suggested to Moelis that there was a drafting error.  I had responded

that there was no drafting error and that my business understanding was that Transform would assume accounts payable up to $166 million backed up by inventory that would be incremental to the on the stock ledger inventory. In response, Mr. Good had said "Ok," and this was when he stated that "some of [the payables] were non merch."

30.     On the evening of January 25, 2019, Mr. Good called me to say that M-III had determined that approximately $50 million of the $166 million in accounts payable would be for services and not for inventory that would be incremental to the on the stock ledger inventory. Mr. Good still did not at any point during this conversation suggest that the $166 million in accounts payable was completely separate from the $166 Million Ordered Inventory. Rather, Mr. Good indicated that the vast majority of the $166 million in accounts payable was tied to Ordered Inventory—as Transform had initially been told—but that part of the accounts payable were for services, which Transform would still be able to utilize and had not been consumed by the Debtors. Mr. Good explained that Transform would still be getting something of value in exchange for assuming these payables. In communications and correspondence during this time with Mr. Good, I made clear that it was Transform's understanding that the total of the $166 million in accounts payable was to be in respect of Ordered Inventory incremental to the on the stock ledger inventory. For example, in an email sent on January 26, 2019 at 8:58 A.M., I wrote to Mr. Good that "Kunal [Kamlani] had the same understanding as myself, i.e. that the full A/P was backed by merchandise inventory to be delivered post close." *See* Exhibit J.

31.     During this period, Mr. Good never suggested that Transform was incorrect in its understanding that the business deal was for Transform to assume a single liability of up to $166 million in accounts payable in exchange for an equivalent amount of additional inventory. Rather, he at most indicated that he had previously relayed that Transform may receive a small

amount of the $166 million in Ordered Inventory that would be paid for by the accounts payable

in the form of services.  To this end, Mr. Good at 11:53 P.M. on January 25, 2019 sent me an

email stating affirmatively that he expected that Transform would receive at least $111 million in

merchandise and $55 million in non-merchandise in respect of the $166 million in accounts

payable.  *See* Exhibit J.

32.    I had a further conversation with Mr. Good on January 27, 2019.  Mr. Good told

me he now believed that $70 million of the on-the-water inventory, i.e. inventory from overseas

not yet delivered to the company, which he had previously indicated would be incremental to the

on the stock ledger inventory, was in fact part of the on stock ledger inventory.  This was the

first time that I heard this.  I responded by telling him Transform and its advisors were told the

exact opposite in prior conversations.  At no point did he disagree with my description of the

business understanding that Transform was assuming a single responsibility for up to $166

million in accounts payable that would be backed by value that would be incremental to the on

the stock ledger inventory.  The next day, he confirmed that the $70 million of on-the-water

inventory that Mr. Good and I had discussed the prior day was part of the $1,553 million on the

stock ledger inventory and that he now believed Transform would be getting just $30-$40

million of inventory post-Closing incremental to the $1,553 million as a result of the assumption

of the $166 million of accounts payable.

33.    After this, conversations with Mr. Good concerning the business agreement

ceased and Debtors' legal advisors then handled what they then characterized as a dispute.  At no

point during my conversations with Mr. Good did he or anyone else from the Debtors or their

advisors take the position that Transform was assuming two obligations – with respect to

payables and with respect to payment obligations for Ordered Inventory – or that the obligation would not be supported by value that would be incremental to the on the stock ledger inventory.

<p style="text-align:center">*      *      *</p>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of knowledge, information, and belief.

Executed on June 25, 2019 in New York, NY.

Respectfully submitted,

Cullen D. Murphy

# Exhibit A

**From:**              Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>
**Sent:**              Wednesday, January 2, 2019 3:10 PM
**To:**                Chris Good
**Subject:**           RE: Project Blue - Admin Claims
**Attachments:**       Project Blue - Admin Claims (1.1.2018)vFinal.pdf


Attached


_____
Josh Gruenbaum | T 212.883.8358 | M 201.410.9782


-----Original Message-----
From: Chris Good [mailto:cgood@miiipartners.com]
Sent: Wednesday, January 02, 2019 3:09 PM
To: Gruenbaum, Josh
Subject: [EXT] FW: Project Blue - Admin Claims

Can you forward me which version was sent to you? Thx

-----Original Message-----
From: Mohsin Meghji
Sent: Wednesday, January 2, 2019 11:38 AM
To: Waldman, Adam <Adam.Waldman@moelis.com>; Aebersold, Brandon <brandon.aebersold@lazard.com>
Cc: Quaintance, Levi <levi.quaintance@lazard.com>; Murphy, Cullen <Cullen.Murphy@moelis.com>; Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>; Chris Good <cgood@miiipartners.com>
Subject: RE: Project Blue - Admin Claims

Chris and Levi best people to follow up with

Regards, Mo

Mo Meghji
M-III Partners, LP
212 716 1492 (o)

-----Original Message-----
From: Waldman, Adam [mailto:Adam.Waldman@moelis.com]
Sent: Wednesday, January 2, 2019 11:37 AM
To: Aebersold, Brandon <brandon.aebersold@lazard.com>
Cc: Quaintance, Levi <levi.quaintance@lazard.com>; Mohsin Meghji <mmeghji@miiipartners.com>; Murphy, Cullen <Cullen.Murphy@moelis.com>; Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>
Subject: RE: Project Blue - Admin Claims

Thank you.

We will obviously want to see the underlying detail that builds up to these numbers.

We will also want to understand how these numbers change in a non-going concern scenario.

_____

Adam Waldman
MOELIS & COMPANY
399 Park Avenue, 5th Floor |New York, NY 10022
T   212.883.3676 |M  732.598.7554
adam.waldman@moelis.com
www.moelis.com

-----Original Message-----
From: Aebersold, Brandon [mailto:brandon.aebersold@lazard.com]
Sent: Wednesday, January 02, 2019 3:04 AM
To: Waldman, Adam
Cc: Quaintance, Levi; Mohsin (Mo) Y. Meghji
Subject: [EXT] Project Blue - Admin Claims

Subject to FRE 408. See below draft of admin claims, excluding dip financing. Feel free to reach out to M3 if you'd like to discuss.

Disclaimer: Click here<https://urldefense.proofpoint.com/v2/url?u=http-3A__www.moelis.com_SitePages_EmailDisclaimer.aspx_&d=DwIGaQ&c=6ldJ3EG4a4nVimLYnfpfYA&r=xG0zSIc035Dbd4QDYkT_3A&m=Wrpy202iUxgS5IjSNQUAAJmT6MGdmurvdkcC2goa58E&s=yHHH2x1GEphZ5Ov1_NJSZCkMXOx3oBbxG-x-cVKg10s&e= > for important information about Moelis & Company and this e-mail.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

# Exhibit A-1

## Project Blue - Admin Claims (ESL Bid)

*($ in millions)*

| Estimated Outstanding Administrative Claims as of 2/9/19 [1] | |
|---|---:|
| 503(b)(9) Claims [2] | 139 |
| Merch AP [3] | 111 |
| Non-Merch AP [4] | 55 |
| Severance [5] | 35 |
| WARN [6] | 18 |
| Franchise Taxes [7] | 3 |
| Property Taxes [8] | 135 |
| Employee Claims [9] | 8 |
| RemainCo Winddown Costs [10] | 80 |
| **Total** | **$583** |

[1]  Carve-out reserve is funded with $87mm including $22mm of success
   fees plus accrued professional fees of $65mm

[2]  $172mm of 503(b)(9) claims as of 12/27/18 less $33mm of critical
   vendor payment offsets

[3]  Based on DIP budget projection

[4]  Assumes current balance remains constant

[5]  Includes $7mm total TPP for 80 store closures plus 10 weeks of
   severance per employee for RIFs scheduled in January 2019

[6]  Includes $5mm remaining WARN for 80 store closures, plus
   remaining WARN for RIFs scheduled in January 2019

[7]  Estimated franchise taxes to be funded in cash

[8]  Balances as of December 2018 ending balance sheet (net against
   prepaid amount) reduced by $21mm paid in DIP budget

[9]  $110mm of employee claims included in first day wages motion
   and paid in operating budget; remaining claims are related
   to prepetition  severance up to $12k cap

[10]  Includes $20mm POR filing costs, $25mm WindDownCo
   operating expenses and $35mm litigation contingency

# Exhibit B

| From: | Hwangpo, Natasha |
|---|---|
| To: | Schrock, Ray; O'Neal, Sean A.; Munz, Naomi; Odoner, Ellen; mmeghji@miiipartners.com; pbasta@paulweiss.com; Aebersold, Brandon; Quaintance, Levi; cadams@miiipartners.com; Singh, Sunny; cgood@miiipartners.com; O'Reilly, Benet J.; Allen, Charles W.; Lanzkron, Joseph; Adam Waldman; LC@moelis.com; Cullen.Murphy@moelis.com; Josh.Gruenbaum@moelis.com; Austin, Christopher E.; Britton, Robert |
| Subject: | RE: Sears - Schedule Discussion [Confidential; Subject to FRE 408] |
| Date: | Sunday, January 6, 2019 8:18:38 PM |
| Attachments: | 2018.01.06 RemainCo Asset Summary - ESL_Transaction.pdf<br>2019.01.06 ESL Bid Value Required_vDraft2.pdf |

**Highly Confidential; Subject to FRE 408**

Attached is an additional schedule for tonight's discussion.  Re-attaching both documents here for easy reference.



**Natasha S. Hwangpo**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
natasha.hwangpo@weil.com
+1 212 310 8715 Direct
+1 702 501 8088 Mobile
+1 212 310 8007 Fax

---

**From:** Hwangpo, Natasha
**Sent:** Sunday, January 6, 2019 8:00 PM
**To:** Schrock, Ray <Ray.Schrock@weil.com>; O'Neal, Sean A. <soneal@cgsh.com>; Van Groll, Paloma <Paloma.VanGroll@weil.com>; DiDonato, Phil <Philip.DiDonato@weil.com>; Munz, Naomi <Naomi.Munz@weil.com>; Odoner, Ellen <ellen.odoner@weil.com>; mmeghji@miiipartners.com; pbasta@paulweiss.com; Aebersold, Brandon <brandon.aebersold@lazard.com>; Quaintance, Levi <levi.quaintance@lazard.com>; cadams@miiipartners.com; Singh, Sunny <sunny.singh@weil.com>; cgood@miiipartners.com; O'Reilly, Benet J. <boreilly@cgsh.com>; Allen, Charles W. <callen@cgsh.com>; Lanzkron, Joseph <jlanzkron@cgsh.com>; Adam Waldman <Adam.Waldman@moelis.com>; LC@moelis.com; Cullen.Murphy@moelis.com; Josh.Gruenbaum@moelis.com; Austin, Christopher E. <caustin@cgsh.com>
**Subject:** RE: Sears - Schedule Discussion [Confidential; Subject to FRE 408]

**Highly Confidential; Subject to FRE 408**

In advance of our call, please find attached the schedule to be discussed.



**Natasha S. Hwangpo**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
natasha.hwangpo@weil.com
+1 212 310 8715 Direct
+1 702 501 8088 Mobile
+1 212 310 8007 Fax

-----Original Appointment-----
**From:** Hwangpo, Natasha
**Sent:** Sunday, January 6, 2019 7:51 PM
**To:** Hwangpo, Natasha; Schrock, Ray; O'Neal, Sean A.; Van Groll, Paloma; DiDonato, Phil; Munz, Naomi; Odoner, Ellen
**Cc:** mmeghji@miiipartners.com; pbasta@paulweiss.com; Aebersold, Brandon; Quaintance, Levi; cadams@miiipartners.com; Singh, Sunny; cgood@miiipartners.com; O'Reilly, Benet J.; Allen, Charles W.; Lanzkron, Joseph; Adam Waldman; LC@moelis.com; Cullen.Murphy@moelis.com; Josh.Gruenbaum@moelis.com; Austin, Christopher E.
**Subject:** Sears - Schedule Discussion [Confidential; Subject to FRE 408]
**When:** Sunday, January 6, 2019 8:30 PM-9:00 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** 1-888-235-7501,,2123108715


Dial In Information

-
Domestic
Dial in: 1-888-235-7501
Passcode: 212-310- 8715#


International
Dial in: 1-206-445-0084
Passcode: 212-310- 8715#


Mobile  888.235.7501,,2123108715#

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

# Exhibit B-1

HIGHLY CONFIDENTIAL



Preliminary Draft; Subject to Material Change

# Remaining Value at SHC Estate in an ESL Transaction

January 6th, 2019

SEARS HOLDINGS

TRFM-00018626

[Confidential; Prepared at the Request of Counsel; Preliminary Draft]

# Executive Summary

- **We have done a preliminary review of the remaining assets left behind for the SHC estate under ESL's going concern bid, which include the following:**
    - Real Estate[1]
    - Unencumbered Accounts Receivable ("AR") [2]
    - Cash-in-Advance ("CIA") Prepaid Inventory
    - Credit Card ("CC") Tort Claim[3]

| Asset | Book Value [4] | Estimated Collected Value | Recovery (%) |
|---|---|---|---|
| Real Estate [1] | $155 | $155 | 100% |
| Unencumbered AR [2] | 376 | 164 | 44% |
| CIA Prepaid Inventory | 171 | 171 | 100% |
| CC Tort Claim [3] | 35 | 35 | 100% |
| **Total** | **$737** | **$525** | **71%** |

Note: Analysis excludes $13mm insurance payment and $15mm from First Data.
1)  Assumes same valuation for Book Value and Estimated Collected Value.
2)  Net recovery of ~44% on gross notional amount of ~$376mm. The $376mm gross total excludes a $(39)mm offset allowance for bad debt; bad debt allowance is 100% included in net recovery of $164mm.
3)  Per estimate from Lazard and initial bids received. Assumes low end of $35-50mm valuation range.
4)  Book value represents the estimated market value for real estate and CC tort claims.

HIGHLY CONFIDENTIAL

TRFM-0011862Z

[Confidential; Prepared at Request of Counsel; Preliminary Draft]

HIGHLY CONFIDENTIAL

# <u>Real Estate</u>: Preliminary Schedule of Real Estate Excluded from ESL Bid and Estimated Valuations

*Estimates are preliminary, and subject to change*

- **Our current gross value estimate for properties excluded from the ESL bid is approximately $155mm**
  - Excluded Real Estate with Identifiable Value
    - Our $155M estimate is informed by assuming the lesser of (1) current high offer value, (2) JLL appraised value and (3) BOV, where available
      - 99 of 433 properties have currently identifiable value
      - $104M (67%) of value based on first round offers
    - Upside in these values lies in a couple of larger properties where current offer is considerably below appraised value or BOV
    - Downside in these values reflects the fact that offers are indicative and not committed
      - Downside risk mitigated by diversity of pool and low average price
  - Additional Excluded Properties
    - The remaining excluded properties (approximately 330) have no assumed value
      - Generally term is too short or rental rate too high for leases to have value
      - Approximately 150 of these are leases on the 142 and 40 GOB stores

TRFM-00018628

HIGHLY CONFIDENTIAL

[Confidential; Prepared at the Request of Counsel; Preliminary Draft]

## Real Estate: Preliminary Schedule of Real Estate Excluded from ESL Bid and Estimated Valuations (cont'd)

**Excluded Real Estate with Value**

**99**

| Count | Unit | RE ID | Name | St | Format |
|---|---|---|---|---|---|
| 1 | 470 | 47000 | MANTENO | IL | Other-CDFC |
| 2 | 3780 | 375900 | Miami | FL | Kmart |
| 3 | 3899 | 389800 | Apple Valley | CA | Kmart |
| 4 | 1075 | 107500 | Daytona Beach | FL | FLS |
| 5 | 62528 | 6253800 | TUSTIN | CA | UUP Sears Essentials/Grand |
| 6 | 26731 | 2673100 | Dublin | OH | UUP SAC Freestanding |
| 7 | 2374 | 237400 | Vineland | NJ | UUP FLS |
| 8 | 2451 | 245100 | Greeley | CO | UUP FLS |
| 9 | 1353 | 135300 | De Witt/Syracuse | NY | UUP FLS |
| 10 | 3544 | 354400 | Salem | VA | UUP Kmart |
| 11 | 30920 | 3092000 | Chicago | IL | UUP Kmart |
| 12 | 61540 | 6154000 | INDIANAPOLIS | IN | UUP FLS |
| 13 | 61237 | 6123700 | HOUSTON | TX | UUP FLS |
| 14 | 30900 | 3090000 | New Lenox | IL | UUP Kmart |
| 15 | 1150 | 115000 | Westland | OH | UUP FLS |
| 16 | 7415 | 741500 | Springboro | VA | Kmart |
| 17 | 1910 | 191000 | Northgate | OH | FLS |
| 18 | 1251 | 125100 | Lithonia | GA | UUP FLS |
| 19 | 30581 | 3058100 | Greensboro | NC | UUP Closed - RRC/RDC |
| 20 | 1310 | 131000 | Elyria | OH | UUP FLS |
| 21 | 6233 | 623300 | Covina | CA | UUP SAC Freestanding |
| 22 | 7461 | 746100 | Clarksville | TN | UUP Kmart |
| 23 | 30981 | 3090103 | GREENSBORO | NC | UUP Distribution/Warehouse |
| 24 | 1363 | 166300 | Johnstown | PA | UUP FLS |
| 25 | 30941 | 3094100 | Sioux Falls | SD | UUP Kmart |
| 26 | 30918 | 3091800 | Jackson | MI | UUP Kmart |
| 27 | 28186 | 2518800 | Clarksville | IN | UUP Kmart |
| 28 | 1795 | 179500 | Boynton Beach | FL | FLS |
| 29 | 1475 | 147500 | Durham | NC | FLS |
| 30 | 1370 | 137000 | Eastland | OH | UUP FLS |
| 31 | 61610 | 6161000 | Calumet City | IL | UUP FLS |
| 32 | 6570 | 657800 | Spokane | WA | Freestanding |
| 33 | 30634 | 3063400 | Memphis | TN | UUP Kmart |
| 34 | 28987 | 2698700 | Chicago | IL | UUP Vacant Land |
| 35 | 30949 | 3094900 | Natchez | MS | UUP Kmart |
| 36 | 4310 | 461000 | Metairie | LA | Kmart |
| 37 | 31903 | 3190300 | Fort Atkinson | WI | UUP Kmart |
| 38 | 3413 | 341300 | Kent | WA | Kmart |
| 39 | 6874 | 687400 | HOUSTON | TX | UUP SAC Detached |
| 40 | 1722 | 172200 | Bloomington | MN | FLS |
| 41 | 3256 | 325800 | Baltimore | MD | Kmart |
| 42 | 61106 | 6110600 | Jackson | MS | UUP FLS |
| 43 | 30867 | 3095700 | Springdale | AR | UUP Kmart |
| 44 | 2832 | 283200 | Fairview Hts | IL | Detached |
| 45 | 31900 | 3190000 | Sterling | IL | UUP Kmart |
| 46 | 68035 | 6823900 | PHOENIX | AZ | UUP Retail Warehouse |
| 47 | 9678 | 967600 | Streetsboro | OH | UUP Kmart |
| 48 | 443 | 44300 | WILKES BARRE | PA | RRC |
| 49 | 3527 | 352700 | Philadelphia | PA | Kmart |

1)   Low Value assumes the lesser of current high offer, JLL appraisal value and BOV value, where available.

TRFM-00018629

[Confidential; Prepared at the Request of Counsel; Preliminary Draft]

HIGHLY CONFIDENTIAL

# Real Estate: Preliminary Schedule of Real Estate Excluded from ESL Bid and Estimated Valuations (cont'd)

**Excluded Real Estate with Value**

**99**

| Count | Unit | RE ID | Name | St | Format |
|-------|------|-------|------|----|--------|
| 50 | 8780 | 873000 | Mira Loma | CA | RSC |
| 51 | 8731 | 873100 | Chambersburg | PA | RSC |
| 52 | 1041 | 104100 | Omaha | NE | FLS |
| 53 | 4893 | 469300 | Elkton | FL | Kmart |
| 54 | 1514 | 151400 | Niagara Falls | NY | ULP FLS |
| 55 | 2940 | 294000 | Franklin | OH | ULP FLS |
| 56 | 26586 | 2659600 | Memphis-Hickory | TN | ULP FLS |
| 57 | 30901 | 3090100 | Lansing | IL | ULP Kmart |
| 58 | 7439 | 743900 | Council Bluff | IA | ULP SAC Freestanding |
| 59 | 2939 | 293900 | Chicago | IL | Detached |
| 60 | 26717 | 2671700 | Newport News | VA | ULP SAC Freestanding |
| 61 | 1261 | 126100 | Midwest City | OK | ULP FLS |
| 62 | 6784 | 873400 | Matteson | IL | Freestanding |
| 63 | 26965 | 2696500 | Chicago | IL | ULP Vacant Land |
| 64 | 6488 | 648800 | Mayaguez | PR | ULP Vacant Land |
| 65 | 2332 | 233200 | San Antonio | TX | Freestanding |
| 66 | 2001 | 200100 | Paus | OH | FLS |
| 67 | 7915 | 791503 | Eureka | CA | ULP Vacant Land |
| 68 | 7916 | 791604 | Eureka | CA | ULP Vacant Land |
| 69 | 1130 | 113000 | Janesville | WI | FLS |
| 70 | 30927 | 3092700 | Macomb | IL | ULP Kmart |
| 71 | 26568 | 2656800 | Salem | OH | ULP FLS |
| 72 | 3968 | 396800 | Wasco | CA | ULP Vacant Land |
| 73 | 9245 | 924500 | Cheboygan | MI | ULP Kmart |
| 74 | 1588 | 133800 | Costa Mesa | CA | FLS |
| 75 | 6303 | 630300 | BANGOR | ME | Retail Warehouse |
| 76 | 4351 | 435100 | Rochester | MN | Kmart |
| 77 | 30958 | 3095800 | EL CENTRO | CA | ULP Vacant Land |
| 78 | 3878 | 387800 | Peachtree City | GA | Kmart |
| 79 | 5996 | 599800 | Dinuba | CA | ULP Vacant Land |
| 80 | 4490 | 449000 | San Juan | PR | Kmart |
| 81 | 1618 | 161800 | Modesto | CA | FLS |
| 82 | 2296 | 229800 | Merced | CA | FLS |
| 83 | 2303 | 232300 | Hyannis | MA | FLS |
| 84 | 9081 | 908100 | Huntington | NY | Kmart |
| 85 | 7471 | 747100 | Placerville | CA | Kmart |
| 86 | 2145 | 214800 | Port Charlotte | FL | FLS |
| 87 | 37683 | 3768300 | Washington Courthouse | OH | ULP Vacant Land |
| 88 | 3251 | 325100 | Indianapolis | IN | Kmart |
| 89 | 9628 | 962805 | Tolleson | AZ | ULP Vacant Land |
| 90 | 37914 | 3791400 | Chicago | IL | Office |
| 91 | 9982 | 998205 | Lemoore | CA | ULP Vacant Land |
| 92 | 4721 | 472103 | Coalinga | CA | ULP Vacant Land |
| 93 | 1034 | 103400 | Ross Park | PA | ULP FLS |
| 94 | 1134 | 113400 | Milford | CT | FLS |
| 95 | 3939 | 393903 | Cleveland | OH | ULP Vacant Land |
| 96 | 2226 | 222600 | Murfreesboro | TN | FLS |
| 97 | 7087 | 708700 | Fort Myers | FL | ULP Kmart |
| 98 | 31930 | 3193008 | HIALEAH | FL | ULP Vacant Land |
| 99 | 3982 | 398209 | Lemoore | CA | Kmart |

1)    Low Value assumes the lesser of current high offer, JLL appraisal value and BOV value, where available.

TRFM-00018630

5

HIGHLY CONFIDENTIAL

[Confidential; Prepared at the Request of Counsel; Preliminary Draft]

## Other Receivables: Preliminary Schedule and Estimated Recovery Value

($ in millions)

| Break Entry # | Ledger Account Name | Gross Amount ($) | Recovery (%) | Net Recovery ($) | Description / Comments / Notes |
|---|---|---|---|---|---|
| 11482 | A/P Vendor Reclass Post | $52.6 | 50% | $26.3 | Kmart vendor receivables (net debit reclassification, i.e. a positive receivable balance after all debits netted against all credits for vendors) |
| 11488 | Return Merchandise Receivable | 59.9 | 50% | 29.9 | Sears vendor receivables (net debit reclassification, i.e. a positive receivable balance after all debits netted against all credits for vendors) |
| 11300 | Svc Contr 3rd Party Warranties | 53.6 | 80% | 42.9 | Home Warranty Sales commission due from Cross Country over next 11 months |
| 11390 | A/R CUSTOMER RECEIVABLES | 41.5 | 50% | 20.8 | $34mm Monark (paid over time for big high end construction jobs: recieve money when job is complete); $4mm home warranty (paid in installments); $3.5mm intercompany payment |
| 11395 | SHO Receivable Inv/PA/SPP | 34.7 | 80% | 27.8 | Sears Hometown and Outlet; when items pulled out of a DC, recievable shows up; billed weekly, paid every 10 days |
| 11364 | Wholesale A/R Receivables | 22.8 | 50% | 11.4 | KCD Business receivables; over $8mm pertains to Amazon |
| 11129 | A/R NCC-OEM | 10.3 | 50% | 5.1 | National Claims Center recievables (related to Home Services) |
| 11300 | Sears Home Improvement | 8.0 | 50% | 4.0 | Sears Home Improvement - receivables related to contracts; paid over time but mostly at time of completion |
| 11490 | A/R PA INSTALLMENT | 4.8 | 50% | 2.4 | Protection agreement installment receivables; generally over 11 months |
| 11300 | 09987 SEARS ONE CARD CLEARANCE | 6.3 | 90% | 5.6 | Financial services related; travel / debit card |
| 11300 | 08500 FINANCE RELATED EXP | 6.8 | 50% | 3.4 | Non-CIA vendors with net money due due status at Kmart |
| 11300 | Fulfilment, SC & Sourcing | 7.2 | 50% | 3.6 | UPS Rebate received by Company every year at end of January or 1st of February |
| 11368 | CSI Receivable | 0.0 | 50% | 0.0 | Vender allowances; Kmart side only |
| 11333 | A/R CITI OTHER RECENABLES | 5.8 | 90% | 5.2 | Other fees / receivables with Citi |
| 11420 | A/R WEX COMMERCIAL CREDIT | 3.4 | 50% | 1.7 | Receivables related to companies that do business w/ Sears Auto |
| 11475 | A/R - Other Companies | 3.5 | 50% | 1.8 | Service Live; pending jobs that will be paid when completed |
| 11330 | A/R NEW ACCOUNT BOUNTY | 2.7 | 90% | 2.5 | Commission on new credit card accounts w/ Citi |
| 11331 | A/R CREDIT SALES REVENUE | 2.5 | 90% | 2.2 | Fees from Citi when Sears credit card is used |
| 11128 | A/R NCC-AE | 2.8 | 50% | 1.4 | National Claims Center recievables (related to Home Services) |
| 11255 | A/R - 3RD PARTY GIFT CARDS | 4.8 | 50% | 2.4 | Receivables related to fees from third party gift cards (mainly Blackhawk) |
| 11305 | A/R LICENSED BUSINESSES | 1.4 | 50% | 0.7 | SHIP-related receivables; normally paid when job is complete |
| 11300 | Parts Direct | 2.3 | 50% | 1.2 | Parts Direct division related receivables |
| 11365 | A/R - Merchandise Allowance | 2.1 | 50% | 1.0 | Vendor allowances; paid by invoice versus deduction from account |
| 11367 | A/R VENDOR ALLOWANCE - IMPORT | 1.7 | 50% | 0.9 | Vendor allowances; paid by invoice versus deduction from account (for foreign venders) |
| 11140 | A/R - Sub-Tenants | 1.9 | 50% | 0.9 | Rent from sub-tenants at Kmart and Sears locations (mostly Sears) |
| 11220 | A/R - Coupons | 1.0 | 50% | 0.5 | Paid within 21 days of coupon redemption from 3rd party coupon company (highly current as what stores don't submit is written off); netted against allowance / reserve |
| 11252 | A/R - Store Receivable | 1.3 | 50% | 0.7 | Layaway; receivables related to payments required by customer over time before item is received |
| 11256 | WHY NOT LEASE IT RECEIVABLE | 0.6 | 50% | 0.3 | Receivable from "Why Not Lease It", which provides third party credit to store customers on items; settles within 5 days |
| 11131 | A/R 3rd Party Retail Installat | 0.6 | 50% | 0.3 | Home Services receivables |
| 11253 | ACCRUED OVER/SHORTAGES | 0.5 | 90% | 0.4 | Timing issue on cash counted in stores; overnight timing difference |
| 11170 | A/R - Freight Claims | 0.5 | 50% | 0.2 | COD shipments with damage where SHC pays vendor upfront and then has to later collect from carrier |
| 15340 | A/R WU Wire Transfer Payout | 0.2 | 90% | 0.1 | Western Union wires that go through treasury; settled daily |
| 11335 | A/R - WIC | 0.2 | 75% | 0.2 | Food stamps; Reimbursement from state |
| 11290 | A/R - Loans and Advances | 0.1 | 25% | 0.0 | Employee payroll advances |
| 11300 | Service Contracts PA | 0.1 | 25% | 0.0 | Service Contracts division protection agreement installments |
| 11250 | A/R - Bad Checks | 0.1 | 0% | -- | Bounced checks; third party will chase down; netted against allowance / reserve |
| NA | All Other Receivables | 30.0 | 0% | -- | Miscellaneous; includes non-receivables and other potentially not recoverable items |
| 11332 | 0% FINANCE (NETS 11330/1) | (4.8) | 100% | (4.8) | Offset against Citi accounts (11330, 11331, 11333) to provide customers with 0% interest financing |
| A0112 | Allowance for Bad Debt | (38.8) | 100% | (38.8) | Allowance for Bad Debt |
| | **Total** | **$337.3** | | **$164.4** | |

Note: Balance from Company as of 12/1/2018. Analysis excludes $13mm insurance payment and $15mm from First Data.

TRFM-00018631

[Confidential; Prepared at the Request of Counsel; Preliminary Draft]

# CIA Prepaid Inventory: Preliminary Schedule



| Top 20 Non-Merchandise Vendors | | | Top 20 Merchandise Vendors | | |
|---|---|---|---|---|---|
| ($ in millions) | | | ($ in millions) | | |
| Duns # | Vendor Name | Total | Duns # | Vendor Name | Total |
| 395280 | | | 1288075 | | |
| 114442648 | | | 1163823 | | |
| 706893 | | | 4196515 | | |
| 1200443 | | | 613620 | | |
| 518753 | | | 348334 | | |
| 41707563 | | | 116145681 | | |
| 72818347 | | | 1902212 | | |
| 22312628 | | | 3219367 | | |
| 3155454 | | | 1029195471 | | |
| 1661222 | | | 70094818 | | |
| 79695521 | | | 4961041 | | |
| 714075 | | | 9138033 | | |
| 37704855 | | | 9109273 | | |
| 916152424 | | | 8029498 | | |
| 80211920 | | | 134544 | | |
| 440768 | | | 95443321 | | |
| 612757070 | | | 38204020 | | |
| 33079757 | | | 2347102 | | |
| 714531 | | | 83922229 | | |
| 744342 | | | 1000471433 | | |
| NA | | | NA | | |
| Total | | $23.6 | Total | | $147.4 |

- CIA Prepaid Inventory represents inventory purchased under cash-in-advance payment terms that SHC has not yet received. The current balance is $171mm

Note: Balance from Company as of 1/4/2019.

HIGHLY CONFIDENTIAL

# Exhibit B-2

CONFIDENTIAL

6 JANUARY 2019

## DISCUSSION MATERIALS

### Project Blue

 

**The following summarizes the administrative and other priority claims that the estate needs to satisfy, sources of value available to address these claims and the incremental value required after these sources are applied (other than for settlement and release)**

| Admin & Other Priority Claims Uses of Value | | Less: ESL Value [1] | Remaining Claims | Additional Value Required after Application of Other Sources of Value | |
|---|---|---|---|---|---|
| **Admin** | | | | **Additional Value Required** | **$680** |
| 503(b)(9) | $139 | $-- | $139 | Less: ESL Proposed Cash Contribution | (35) |
| Accounts Payable | 166 | (125) | 41 | Less: Company Cash | (89) |
| Severance and Employee Claims | 43 | -- | 43 | Less: Professional Fee Carve-out Account | (95) |
| WARN | 18 | -- | 18 | Less: MTN Sale Proceeds | (81) |
| Franchise Taxes | 3 | -- | 3 | Less: SHIP Sale Proceeds | (45) |
| Property Taxes | 135 | (100) | 35 | **Administrative Claim Backstop Requested [2]** | **$335** |
| RemainCo Winddown Costs | 80 | -- | 80 | | |
| **Total Admin** | **$583** | **($225)** | **$358** | **Required Deposit** | **$120** |
| | | | | | |
| **Other** | | | | | |
| ABL DIP | $950 | ($850) | $100 | | |
| Junior DIP | 350 | (230) | 120 | | |
| Professional Fees | 102 | -- | 102 | | |
| Cure Costs | 150 | (150) | -- | | |
| **Total Other** | **$1,552** | **($1,230)** | **$322** | | |
| | | | | | |
| **Total** | **$2,135** | **($1,455)** | **$680** | | |

Source: MIII projection of administrative and other priority claims; ESL proposal.

[1]  Includes value provided by ESL via assumption of liabilities and/or debt paydown.

[2]  Requested Administrative Claim Backstop does not include amounts necessary for settlement and release but is inclusive of Restructuring Subcommittee support for Court order to allow ESL to credit bid claims included in ESL bid.

 

# Exhibit C

| | |
|---|---|
| **From:** | Chris Good |
| **To:** | Murphy, Cullen |
| **Cc:** | Jonathan B. Boffi; Gruenbaum, Josh; Zakarin, Reece; Hachem, Alaa; Waldman, Adam; Project_Blue_BP |
| **Subject:** | [EXT] RE: Property Taxes |
| **Date:** | Monday, January 7, 2019 12:52:10 PM |

Following up – average terms for non-CIA domestic vendors is 29.85. In theory, you will have only received 11% of the goods that are within Merch AP at close if the ratio holds true based on the domestic receipt timing. For imports, it is 26.72, so all of those goods would still be in transit with none received.

_____

Christopher A. Good
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O:  212.716.1497
M: 252.714.2092
cgood@miiipartners.com

---

**From:** Murphy, Cullen [mailto:Cullen.Murphy@moelis.com]
**Sent:** Saturday, January 5, 2019 12:51 PM
**To:** Chris Good <cgood@miiipartners.com>
**Cc:** Jonathan B. Boffi <jboffi@miiipartners.com>; Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>; Zakarin, Reece <Reece.Zakarin@moelis.com>; Hachem, Alaa <Alaa.Hachem@moelis.com>; Waldman, Adam <Adam.Waldman@moelis.com>; Project_Blue_BP <project_blue_bp@miiipartners.com>
**Subject:** RE: Property Taxes

That makes sense but I guess then the question is just – what, if any, of the A/P at close will be fore goods that have been delivered pre close, and I guess that's what you guys are working on.

Cullen Murphy
MOELIS & COMPANY
399 Park Avenue, 5th Floor
New York, NY 10022
T 212-883-4238
M 646-416-4991
cullen.murphy@moelis.com
www.moelis.com

---

**From:** Chris Good [mailto:cgood@miiipartners.com]
**Sent:** Saturday, January 05, 2019 12:50 PM
**To:** Murphy, Cullen
**Cc:** Jonathan B. Boffi; Gruenbaum, Josh; Zakarin, Reece; Hachem, Alaa; Waldman, Adam; Project_Blue_BP
**Subject:** [EXT] Re: Property Taxes

100% - yes.

_____

Christopher A. Good
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O:  212.716.1497
M: 252.714.2092
cgood@miiipartners.com

On Jan 5, 2019, at 10:46 AM, Murphy, Cullen <Cullen.Murphy@moelis.com> wrote:

> So you're saying that the A/P that is outstanding now will be paid off by close and the
> A/P associated with new goods ordered will be what we are actually assuming. And
> further that those goods will be delivered post close.
>
> Did I get that right?
>
> Cullen Murphy
> MOELIS & COMPANY
> 399 Park Avenue, 5th Floor
> New York, NY 10022
> T 212-883-4238
> M 646-416-4991
> cullen.murphy@moelis.com
> www.moelis.com
>
> ---
>
> **From:** Chris Good [mailto:cgood@miiipartners.com]
> **Sent:** Saturday, January 05, 2019 12:44 PM
> **To:** Murphy, Cullen
> **Cc:** Jonathan B. Boffi; Gruenbaum, Josh; Zakarin, Reece; Hachem, Alaa; Waldman, Adam;
> Project_Blue_BP
> **Subject:** [EXT] Re: Property Taxes
>
> You'll take whatever that AP is at close no? And thus there will be other goods in transit
> at close?
>
> _____
>
> Christopher A. Good
> M-III Partners
> 130 West 42nd Street, 17th Floor
> New York, New York 10036
> O:  212.716.1497
> M: 252.714.2092
> cgood@miiipartners.com
>
> On Jan 5, 2019, at 10:27 AM, Murphy, Cullen <Cullen.Murphy@moelis.com> wrote:

Got it. But if we close the first week of February and these goods have been ordered then wouldn't most of these goods be in stock by closing?

Cullen Murphy
MOELIS & COMPANY
399 Park Avenue, 5th Floor
New York, NY 10022
T 212-883-4238
M 646-416-4991
cullen.murphy@moelis.com
www.moelis.com

---

**From:** Chris Good [mailto:cgood@miiipartners.com]
**Sent:** Saturday, January 05, 2019 12:22 PM
**To:** Murphy, Cullen
**Cc:** Jonathan B. Boffi; Gruenbaum, Josh; Zakarin, Reece; Hachem, Alaa; Waldman, Adam; Project_Blue_BP
**Subject:** [EXT] Re: Property Taxes

Cullen -

The company is working on it. We've gotten average days in transit. Here's the numbers below which would imply you would have the majority of those goods in transit still and not in the stock ledger yet. Still waiting on average terms. Little surprised domestic in transit days is so high so digging into that as well.

Average days to receipt for domestic vendors is 26.5 days and for import vendors is 29.5 days.  Average across both domestic and import vendors is 27.5 days.

Best,
Chris

_____

Christopher A. Good
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O:  212.716.1497
M: 252.714.2092
cgood@miiipartners.com

On Jan 5, 2019, at 9:15 AM, Murphy, Cullen <Cullen.Murphy@moelis.com> wrote:

Any word back on this?

Cullen Murphy

MOELIS & COMPANY
399 Park Avenue, 5th Floor
New York, NY 10022
T 212-883-4238
M 646-416-4991
cullen.murphy@moelis.com
www.moelis.com

---

**From:** Chris Good [mailto:cgood@miiipartners.com]
**Sent:** Friday, January 04, 2019 10:28 PM
**To:** Murphy, Cullen
**Cc:** Jonathan B. Boffi; Gruenbaum, Josh; Zakarin, Reece;
Hachem, Alaa; Waldman, Adam
**Subject:** [EXT] Re: Property Taxes

Understood. Let us take a look. Need the company to help us
so will do our best to push.

_____
Christopher A. Good
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O:  212.716.1497
M: 252.714.2092
cgood@miiipartners.com

On Jan 4, 2019, at 8:26 PM, Murphy, Cullen
<Cullen.Murphy@moelis.com> wrote:

> Agree and that is good news. I think what we
> want to know is how much is in the $1,553mm
> at close and how much is not.
>
> Cullen Murphy
> MOELIS & COMPANY
> 399 Park Avenue, 5th Floor
> New York, NY 10022
> T 212-883-4238
> M 646-416-4991
> cullen.murphy@moelis.com
> www.moelis.com
>
> ---
>
> **From:** Chris Good
> [mailto:cgood@miiipartners.com]
> **Sent:** Friday, January 04, 2019 10:25 PM
> **To:** Murphy, Cullen
> **Cc:** Jonathan B. Boffi; Gruenbaum, Josh; Zakarin,
> Reece; Hachem, Alaa; Waldman, Adam
> **Subject:** [EXT] Re: Property Taxes
>
> Most of it will be delivered post close. Let us

think about a way to quantify that better but would think average terms and average days in transit gets us an idea of a ratio. Does that work?

Happy to hop on the phone but not sure what it would accomplish aside from us getting some analysis going and getting back to you.

_____

Christopher A. Good
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O:  212.716.1497
M: 252.714.2092
cgood@miiipartners.com

On Jan 4, 2019, at 8:17 PM, Murphy, Cullen <Cullen.Murphy@moelis.com> wrote:

> The A/P that the Company is asking NewCo to assume – will this be delivered pre-close? Said another way is the inventory associated with this A/P in the $1,553 or will it be delivered post close?
>
> Important point that Kunal wants to be 100% sure on. Would be great if you have any thoughts tonight even if work needs to be done. He also suggested that we put a call on the books for tomorrow to discuss this issue in detail which I agree with.
>
> Let us know what times work for you tomorrow.
>
> Thanks,
>
> Cullen Murphy
> MOELIS & COMPANY
> 399 Park Avenue, 5th Floor

New York, NY 10022
T 212-883-4238
M 646-416-4991
cullen.murphy@moelis.com
www.moelis.com

---

**From:** Chris Good
[mailto:cgood@miiipartners.com]
**Sent:** Friday, January 04, 2019
7:24 PM
**To:** Murphy, Cullen
**Cc:** Jonathan B. Boffi; Gruenbaum,
Josh; Zakarin, Reece; Hachem, Alaa
**Subject:** [EXT] Re: Property Taxes

It flows through rent and
occupancy. Will need company to
break it down.

_____
Christopher A. Good
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O: 212.716.1497
M: 252.714.2092
cgood@miiipartners.com

On Jan 4, 2019, at 5:23 PM,
Murphy, Cullen
<Cullen.Murphy@moelis.com>
wrote:

> Chris / Jon –
>
> Where in the model
> (ideally in the "Store
> Database" tab)
> would we find the
> property taxes
> flowing through the
> model.
>
> Just want to confirm
> that 1) these are in
> the model, 2) that
> we can compare the
> number in the model

to the $120mm from
the file you sent.

Thanks,

Cullen Murphy
MOELIS &
COMPANY
399 Park Avenue, 5th
Floor
New York, NY 10022
T 212-883-4238
M 646-416-4991
cullen.murphy@moelis.com
www.moelis.com

Disclaimer: Click
here for important
information about
Moelis & Company
and this e-mail.

This message contains
information which may be
confidential and privileged.
Unless you are the intended
addressee (or authorized to
receive for the intended
addressee), you may not
use, copy or disclose to
anyone the message or any
information contained in
the message. If you have
received the message in
error, please advise the
sender by reply email or by
calling 212-716-1491 and
delete the message.

This message contains information which
may be confidential and privileged. Unless
you are the intended addressee (or
authorized to receive for the intended
addressee), you may not use, copy or disclose
to anyone the message or any information
contained in the message. If you have
received the message in error, please advise
the sender by reply email or by calling 212-
716-1491 and delete the message.

This message contains information which
may be confidential and privileged. Unless
you are the intended addressee (or
authorized to receive for the intended
addressee), you may not use, copy or disclose
to anyone the message or any information
contained in the message. If you have
received the message in error, please advise

the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

# Exhibit D

| | |
|---|---|
| **From:** | Chris Good |
| **To:** | kunal@eslinvest.com |
| **Cc:** | Mohsin Meghji; Murphy, Cullen; Gruenbaum, Josh; Joseph Frantz |
| **Subject:** | [EXT] Re: Severance $43M |
| **Date:** | Tuesday, January 8, 2019 2:31:44 PM |

Kunal - will get you detail on severance.

For the AP numbers, yes that is approximately correct. Cullen should have the details on how calculated that.

Best,
Chris


_____

Christopher A. Good
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O:  212.716.1497
M: 252.714.2092
cgood@miiipartners.com

On Jan 8, 2019, at 1:06 PM, Kunal Kamlani <kunal@eslinvest.com> wrote:

> Can you guys send me a schedule of when this would need to be paid.
>
> Can you confirm that the $166 of AP is 90%+ for goods that will not be in the Company's possession as of 2/8.
>
> ...have to turn around an updated model to the banks asap. Few more questions probably coming.
>
> Thanks In Advance-
> KSK

This message is intended only for the designated recipient(s). It may contain confidential, privileged or proprietary information. If you are not the designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the sender by reply e-mail and delete this message. Thank you.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

# Exhibit E

**From:** Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>
**Sent:** Tuesday, January 8, 2019 4:18 PM
**To:** Kunal Kamlani <kunal@eslinvest.com>; Ratto, Betsy - GCIB BOS <betsy.ratto@baml.com>;
Russell, David - GCIB NY <david.russell@baml.com>
**Cc:** Waldman, Adam <Adam.Waldman@moelis.com>; Murphy, Cullen
<Cullen.Murphy@moelis.com>; O'Neal, Sean A. <soneal@cgsh.com>; Chu, Lawrence
<LC@moelis.com>; Rubin, Alex <alex.rubin@moelis.com>
**Subject:** RE: Summary of model changes will be out shortly...model to follow after that. We should

Betsy, David,

Please find attached for the key model modifications. Please distribute to the rest of group. We will
be sending the associated model shortly.

Thanks,
Josh

_____

Josh Gruenbaum  |  T 212.883.8358  |  M 201.410.9782

**From:** Kunal Kamlani [mailto:kunal@eslinvest.com]
**Sent:** Tuesday, January 08, 2019 4:05 PM
**To:** Ratto, Betsy - GCIB BOS; Russell, David - GCIB NY
**Cc:** Waldman, Adam; Murphy, Cullen; Gruenbaum, Josh
**Subject:** [EXT] Summary of model changes will be out shortly...model to follow after that. We should

Walk through the changes to provide context on how it impacts liquidity as it will not be readily
evident from the summary. Alternatively, it may make sense to wait for the model.

KSK

This message is intended only for the designated recipient(s). It may contain confidential, privileged or proprietary information. If you are
not the designated recipient, you may not review, copy or distribute this message. If you receive this message in error, please notify the
sender by reply e-mail and delete this message. Thank you.

Disclaimer: Click here for important information about Moelis & Company and this e-mail.

# Exhibit E-1

**HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408**

# Project Transform – Summary of Model Adjustments

ANY INFORMATION REGARDING VALUATION, FORECASTS, PROJECTIONS, RECOVERIES OR TREATMENT IN THIS PRESENTATION IS FOR ILLUSTRATIVE AND DISCUSSION PURPOSES ONLY, AND ASSUMES THAT ALL TRANSACTIONS CONTEMPLATED HEREIN ARE EXECUTED IN A TIMELY MANNER AND THAT NO TRANSACTION WILL BE EXECUTED UNLESS ALL TRANSACTIONS ARE EXECUTED AS CONTEMPLATED HEREIN.

**January 8, 2019**

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# Disclaimer

This presentation has been prepared by ESL Investments ("ESL") based on confidential information provided by the Company and publicly available information. ESL and its representatives have not assumed any responsibility for independently verifying the information herein, ESL and its representatives make no representation or warranty as to the accuracy, completeness or reasonableness of the information herein and ESL and its representatives disclaim any liability with respect to the information herein. This presentation may include projections, forecasts or other forward-looking statements with respect to the Company and there can be no assurance as to ESL's or the Company's future performance. This presentation speaks only as of its date, and ESL and its representatives assume no obligation to update it or to advise any person that any of its conclusions has changed.

Sears has not approved or endorsed this document. Any action or response of Sears in connection with the items discussed in this presentation will require prior review and approval by Sears' Board, the Restructuring Sub-Committee, the Special Committee and/or the Related Party Committee. There can be no assurance that any action will be taken in response to ESL's proposals contained herein, and any action plan that is adopted could vary materially from the proposals described in this document.

This presentation is solely for informational purposes. This presentation is not intended to provide the basis for any decision on any transaction. The recipient should make its own independent business and legal decisions based on all other information, advice and the recipient's own judgment. **This presentation is not an offer to sell or a solicitation of an indication of interest to purchase any security, option, commodity, future, loan or currency. It is not a commitment to underwrite any security, to loan any funds or to make any investment.**

**HIGHLY CONFIDENTIAL**
**NOT FOR DISTRIBUTION**
**SUBJECT TO FRE 408**

# Summary of ESL Bid Modifications

**The below reflects the changes to the ESL liquidity model for NewCo since the last time the banks received the analysis on December 27, 2018**

| Model Modifications - Assets |
|:---:|

- Purchase of an additional ~127 real estate properties (schedule of properties to be included in APA)

- Additional cash receipt of ~$54mm as a result of home warranties sold in connection with CCHS in FY2018 (spread evenly over 11 months)

- Includes the purchase of $192mm of accounts receivable (assumes 75% collection rate)

- Includes purchase of CIA inventory purchased prior to close of $171mm and Visa/MasterCard litigation

- Assumes post close delivery of $166mm of inventory and associated accounts payable

  — Model assumes accounts payable paid at the later of (i) 9 months and (ii) plan confirmation

| Model Modifications - Liabilities |
|:---:|

- Additionally assumes assumption of 503(b)(9) claims (up to $139mm) and severance (up to $43mm)

  — Model assumes 503(b)(9) paid at the later of (i) 9 months and (ii) plan confirmation

- Cure costs associated with key contracts of $90mm

- Assumed carrying costs associated with designation rights

- Explicitly assumed up to $135mm of property taxes; previous model already assumed $120mm

# Exhibit F

| | |
|---|---|
| **From:** | Murphy, Cullen |
| **To:** | Chris Good; Waldman, Adam; Gruenbaum, Josh |
| **Cc:** | Project_Blue_BP; Nicholas Weber; Hachem, Alaa; Wechsler, Isabelle |
| **Subject:** | RE: Current and Projected AP Balances |
| **Date:** | Wednesday, January 16, 2019 10:42:45 AM |

Could we get – for the $166mm of A/P being assumed, a breakdown of when that has to be paid by month starting at close?

Trying to get the model updated this morning and challenging to allocate the spreadsheet you sent by month for only the $166mm unless we're missing something

Thanks,

Cullen Murphy
MOELIS & COMPANY
399 Park Avenue, 5th Floor
New York, NY 10022
T 212-883-4238
M 646-416-4991
cullen.murphy@moelis.com
www.moelis.com

**From:** Chris Good [mailto:cgood@miiipartners.com]
**Sent:** Monday, January 14, 2019 11:36 PM
**To:** Waldman, Adam; Gruenbaum, Josh; Murphy, Cullen
**Cc:** Project_Blue_BP; Nicholas Weber
**Subject:** [EXT] FW: Current and Projected AP Balances

Gents – have been asked to ensure that you have detail on the AP by vendor along with the forecast of $196mm. Please let us know if you have any questions.

Thanks,
Chris

_____
Christopher A. Good
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O:  212.716.1497
M: 252.714.2092
cgood@miiipartners.com

**From:** Nicholas Weber
**Sent:** Monday, January 14, 2019 11:20 PM
**To:** Odoner, Ellen <ellen.odoner@weil.com>; Munz, Naomi <Naomi.Munz@weil.com>; Brian Griffith <bgriffith@miiipartners.com>; Colin M. Adams <cadams@miiipartners.com>; Chris Good <cgood@miiipartners.com>
**Cc:** Clayton Stoker <cstoker@miiipartners.com>

**Subject:** Current and Projected AP Balances

Please see the attached files for the current AP balances and projected AP balances.

**CURRENT AP BALANCES**

DAPP 1-14-19 – File includes both merch and non-merch AP as of 1-14-19 for a total of $145.6mm (merch equals $96.6mm and non-merch equals $49.0mm)

Import AP 1-14-19 – File includes current merch AP from foreign vendors equal to $24.7mm

Total AP between domestic and import :
-    Merch: $121.3mm
-    Non-Merch: $49.0mm
-    Total: $170.3mm

**FORECAST AP BALANCES AS OF 2/9/19**

Merch and Non-Merch AP Backup (1.14.19)  - Includes roll-forward of merch and non-merch AP based on Company projections. Merchandise forecast based on beginning balance as of 1/13/19 as well as Company's expectation of inventory receipts and merchandise disbursements. Non-merch disbursements forecast assumes Company accrues expenses 14 days in advance of projected cash disbursements.

Regards,
Nick


Nick Weber
M-III Partners, LP
(914) 620-5588


This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.


This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.


Disclaimer: Click here for important information about Moelis & Company and this e-mail.

**This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.**

# Exhibit F-1

[FILED UNDER SEAL
PURSUANT TO 7/2/19
ORDER DOCKET #4420]

# Exhibit F-2

[FILED UNDER SEAL
PURSUANT TO 7/2/19
ORDER DOCKET #4420]

# Exhibit F-3

TRFM-00006748

HIGHLY CONFIDENTIAL

# Merch and Non-Merch AP Backup

($ in millions)



| Merch and Non-Merch Balance as of 2H'19 | |
| --- | --- |
| Merch AP | $141 |
| Non-Merch AP | 55 |
| **Total** | **$196** |

THE REMAINDER OF THIS
SPREADSHEET IS
REDACTED PURSUANT TO
7/2/2019 COURT ORDER
DOCKET #4420

# Exhibit G

| | |
|---|---|
| **From:** | Gruenbaum, Josh |
| **To:** | Murphy, Cullen |
| **Subject:** | FW: ESL Liquidity Pages |
| **Date:** | Monday, January 28, 2019 7:23:39 PM |
| **Attachments:** | Project Transform - Liquidity Analysis_v2019.01.23.01_MIII.PDF |
| | Project Transform - Liabilities_v2019.01.23.01.pdf |
| | ESL_NewCo_Reorg_Model_v294_EXT_22.xlsm |

Josh Gruenbaum | T 212.883.8358 | M 201.410.9782

**From:** Gruenbaum, Josh
**Sent:** Wednesday, January 23, 2019 3:48 PM
**To:** mmeghji@miiipartners.com
**Cc:** Murphy, Cullen; 'Chris Good'; 'Kunal Kamlani'; Waldman, Adam
**Subject:** ESL Liquidity Pages

Mo,

Please find attached for 3 documents:

1. Updated liquidity pages which you should use to reference – this is largely the same file we sent you earlier today, just updated for timing on severance payments and the accounts payable payments
2. Schedule of the assumed liabilities ESL has taken on and will be paying out by month
3. ESL model which supports item 1. We have kept the ESL SSS assumptions, but it is dynamic and your team can flex between M-III case or what you had referenced on our call
   a. Note, for the assumed accounts payable, we have kept the cash benefit from that assumption in the accounts payable line in the model. Our thinking around this is that this is really the line item that expresses the cash savings best. In other words, had we not assumed the $166mm on the 30, 60, 90 days terms, we'd have bought that amount on 10 day terms. Instead, we benefit from not having to pay the AP liability back until the schedule requires so (schedule noted on the next item in this email)
      i. Note, you can see this build up based on the o/s amount of that account in tab "NewCo Model" rows 135-137, which flows to tab "Liabilities CF", which is the schedule of the payments.

Please confirm receipt as they file sizes are sometimes too large for email.

Thanks,
Josh Gruenbaum
*Associate*
MOELIS & COMPANY
399 Park Avenue, 5th Floor
New York, New York 10022

T   212.883.8358
M   201.410.9782
josh.gruenbaum@moelis.com
www.moelis.com

# Exhibit G-1

CONFIDENTIAL
NOT FOR DISTRIBUTION

# Project Transform – *Liquidity Analysis*

CONFIDENTIAL
NOT FOR DISTRIBUTION

## Disclaimer

This presentation has been prepared by ESL Investments ("ESL") based on confidential information provided by the Company and publicly available information. ESL and its representatives have not assumed any responsibility for independently verifying the information herein, ESL and its representatives make no representation or warranty as to the accuracy, completeness or reasonableness of the information herein and ESL and its representatives disclaim any liability with respect to the information herein. This presentation may include projections, forecasts or other forward-looking statements with respect to the Company and there can be no assurance as to ESL's or the Company's future performance. This presentation speaks only as of its date, and ESL and its representatives assume no obligation to update it or to advise any person that any of its conclusions has changed.

The assessments of Sears situation and the proposal described in this document are solely an expression of ESL's views. Sears has not approved or endorsed this document. Any action or response of Sears in connection with the items discussed in this presentation will require prior review and approval by Sears' Board, the Restructuring Sub-Committee, the Special Committee and/or the Related Party Committee. There can be no assurance that any action will be taken in response to ESL's proposals contained herein, and any action plan that is adopted could vary materially from the proposals described in this document.

This presentation is solely for informational purposes. This presentation is not intended to provide the basis for any decision on any transaction. The recipient should make its own independent business and legal decisions based on all other information, advice and the recipient's own judgment. **This presentation is not an offer to sell or a solicitation of an indication of interest to purchase any security, option, commodity, future, loan or currency. It is not a commitment to underwrite any security, to loan any funds or to make any investment.**

[1]

HIGHLY CONFIDENTIAL

## Financial Overview

CONFIDENTIAL
NOT FOR DISTRIBUTION

# Financial Forecast – Key Assumptions

| BUSINESS SEGMENT | KEY ASSUMPTIONS |
|---|---|
| Brick and Mortar | ☒ Assumes 223 Sears stores and 202 Kmart stores<br><br>☒ Assumes same store sales growth of -1% in 2019F, 2% in 2020F and 3% in 2021F<br><br>☒ Assumes 125bps margin improvement in 2019F and assumes 200bps margin improvement in 2020F and 2021F, respectively |
| Kenmore 3rd Party | ☒ Amazon revenue expected to increase from $80M in 2018 to $300M by 2021F, conservatively assumes ~50% less incremental Amazon revenue than Company's projections<br><br>☒ Assumes one additional 3rd party account coming online in 2020F with expected sales of $500mm and $1,000mm in 2020F and 2021F respectively<br>— Assumes 4% licensing fee on all associated 3rd party sales |
| Sears Home Services | ☒ Assumes 2018B to 2021E will be driven by a 30% increase in B2B volume, D2C growth, and improvements in the PartsDirect website and IHR mobile technology over the next two years, offset by the cumulative effect of 3rd party underwriting transaction<br>— Projections exclude SHIP business segment which will either be sold to Service.com with the proceeds distributed to NewCo or, if the contemplated sale to Service.com fails to close, the SHIP business will be acquired by NewCo as part of NewCo acquisition transaction |
| Innovel | ☒ Assumes increased 3rd party revenue, growing to $300mm by 2021F, conservatively $200mm less than Company's projections |
| Sears Auto Center | ☒ Assumes same store sales growth of -1% in 2019F, 2% in 2020F and 3% in 2021F<br><br>☒ Assumes 125bps margin improvement in 2019F and assumes 200bps margin improvement in 2020F and 2021F, respectively |
| E-Commerce | ☒ Assumes 5% year over year growth throughout the projection period<br>— Traffic, AOV and conversion ratios are held constant based on historicals |
| ShopYourWay | ☒ Assumes historical % of total revenue through the projection period |
| Monark | ☒ Assumes $1mm, $2mm and $3mm of EBITDA 2019F, 2020F and 2021F respectively |

[ 2 ]

## *Financial Overview*
# Financial Forecast – Key Assumptions (Cont'd)

CONFIDENTIAL
NOT FOR DISTRIBUTION

### WORKING CAPITAL ASSUMPTIONS

| | |
|---|---|
| **Accounts Payables (days)** | * 10 days in February , 12.5 days in March, 15 days in April , 17.5 days in May, 20 days in June and 32 days in July, then remaining constant for the rest of 2019F<br>* 37 days in 2020F and 42 days in 2021F<br> — Pre-petition DPO was 22 days<br> — Industry average ~50 days<br>* Assumes starting A/P balance of $166mm of assumed AP payable in November |
| **Accounts Receivables (days)** | * Adjusted for seasonality based off of historical accounts receivable as a percentage of inventory |
| **Inventory** | * Assumes starting inventory of $1,553mm<br>* Adjusted for seasonality based off of historicals |

### OVERHEAD ASSUMPTIONS

| | |
|---|---|
| **2019F SG&A Forecast (including supply chain costs)** | * $545mm, representing  ~6% of total 2019F sales<br> — Pre-petition SG&A of $1.2bn, representing ~10% of total 2018B sales |
| **Vendor Discount & Other Adjustments** | * Assumes ~2.8% of COGS |

### CAPITAL STRUCTURE ASSUMPTIONS

| | |
|---|---|
| **ABL Balance** | * $655mm Revolver[1]; $250mm Term Loan at close |
| **ABL Interest Rate** | * L + 375 Revolver; L + 800 Term Loan |
| **NewCo L/C Facility** | * L + 1100; Matures 1/22 |
| **Real Estate Debt** | * Assumes $175mm of new Real Estate debt with an interest rate of L + 850 cash and L + 1050 PIK; 3 year term |
| **Exit Financing** | * Assumes $350mm roll over of Junior DIP into Exit Financing at L + 1000 cash and L + 1300 PIK |

### OTHER ASSUMPTIONS

| | |
|---|---|
| **Dove & Sparrow Real Estate** | * Assumes $200mm of annual proceeds from dispositions from 2019 to 2021, with 80% of proceeds used to pay down any outstanding real estate debt, and the remaining 20% used to pay down the ABL facility (first 120 days 100% of proceeds to ABL) |
| **CapEx** | * Assumes approximately ~$50mm of store growth CapEx per year |
| **ABL L/C** | * The company is targeting $35mm of L/C reduction under the ABL in February 2019; for conservatism, the model assumes $17.5mm of L/C reduction in March 2019 |
| **2022 – 2023** | * Assumes top line growth of 4% annually and a 25 bps EBITDA margin improvement in 2022 and 2023<br>* All working capital assumptions are kept constant from 2021, other than days payable which are  assumed to be 3 days higher |

1.    Represents amount pre-paydown using real estate debt

[ 3 ]

*Financial Overview*
## Consolidated Projections

CONFIDENTIAL
NOT FOR DISTRIBUTION

*($ in millions)*

| | 2015A | 2016A | 2017A | 2018B | 2019F | 2020F | 2021F | 2022F | 2023F |
|---|---|---|---|---|---|---|---|---|---|
| Revenue | $24,533 | $21,543 | $16,248 | $11,648 | $7,939 | $8,075 | $8,502 | $8,842 | $9,196 |
| (-) COGS | (16,272) | (14,312) | (10,525) | (7,427) | (4,882) | (4,984) | (5,155) | (5,361) | (5,576) |
| **Gross Margin** | **$8,262** | **$7,230** | **$5,723** | **$4,220** | **$3,057** | **$3,091** | **$3,347** | **$3,481** | **$3,620** |
| *Margin (%)* | *34%* | *34%* | *35%* | *36%* | *39%* | *38%* | *39%* | *39%* | *39%* |
| *Margin Imporvement (%)* | | | | | | | | | |
| (-) Operating Expenses | (7,034) | (6,263) | (4,902) | (3,769) | (2,487) | (2,422) | (2,443) | (2,519) | (2,597) |
| (-) Supply Chain & Logistics | (483) | (389) | (326) | (291) | (228) | (210) | (207) | (215) | (224) |
| (-) Home Office SG&A[1] | (1,613) | (1,412) | (1,098) | (823) | (401) | (336) | (343) | (356) | (371) |
| (+) PA Adjustment[2] | 33 | 36 | 46 | 37 | 84 | 50 | 23 | 24 | 25 |
| **EBITDA** | **($836)** | **($798)** | **($557)** | **($625)** | **$25** | **$171** | **$378** | **$415** | **$454** |
| *Margin (%)* | *(3%)* | *(4%)* | *(3%)* | *(5%)* | *0%* | *2%* | *4%* | *5%* | *5%* |
| **Memo: Store Count** | 1,646 | 1,405 | 979 | 505 | 425 | 425 | 425 | 425 | 425 |

1. Home Office SG&A expense includes an additional new hire expense of $10mm in 2019E and $15mm in years 2020E to 2023E; previously categorized Sears Home Services SG&A expenses have been re-allocated to Sears Home Services OpEx line item
2. PA Adjustment related to SHS commission/expense in connection with protection warranty sales

[ 4 ]

## Financial Overview
## 2015A – 2021F Performance By Business Unit

CONFIDENTIAL
NOT FOR DISTRIBUTION

($ in millions)

| | 2015A | 2016A | 2017A | 2018E | 2019E | 2020E | 2021E |
|---|---|---|---|---|---|---|---|
| **Memo: Store Count** | 1,646 | 1,405 | 979 | 505 | 425 | 425 | 425 |
| **Retail (4-Wall + Online + SYW)** | | | | | | | |
| Revenue | $21,381 | $18,492 | $13,531 | $8,991 | $5,768 | $5,909 | $6,166 |
| Gross Margin | 6,541 | 5,476 | 4,119 | 2,572 | $1,697 | $1,829 | $2,046 |
| EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| **Home Services** | | | | | | | |
| Revenue | $2,139 | $2,159 | $1,953 | $1,762 | $1,681 | $1,573 | $1,593 |
| Gross Margin | $1,582 | $1,592 | $1,433 | 1,276 | $1,237 | $1,107 | $1,099 |
| EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| **Financial Services** | | | | | | | |
| Revenue | $66 | $68 | $74 | $103 | $49 | $42 | $44 |
| EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| **Other Businesses** | | | | | | | |
| Kenmore / Craftsman / DieHard EBITDA [1] | $11 | $11 | ($2) | ($10) | $3 | $37 | $79 |
| Monark EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| **Overhead and Adjustments** | | | | | | | |
| Supply Chain and Innovel | ($483) | ($389) | ($326) | ($291) | ($228) | ($210) | ($207) |
| Home Office / Corporate SG&A | (1,580) | (1,376) | (1,052) | (786) | ($317) | ($287) | ($320) |
| **Total SHC EBITDA** | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| **Retail EBITDA Detail** | | | | | | | |
| 425 Store Go-Forward 4-Wall EBITDA | ▮ | ▮ | | ▮ | ▮ | | ▮ |
| All Other 4-Wall EBITDA+ Online | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| Vendor Discounts & Other Adjustments | 239 | 304 | 238 | 183 | 92 | 91 | 91 |
| Sears Auto Center EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| ShopYourWay EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| **Total Retail EBITDA** | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |

1.    SHC level EBITDA adjustment related to the protection agreement business
2.    2015 – 2018E numbers are based off of SOS stores

[ 5 ]

## Financial Overview

## 2019F - Key Operating Units & 2020F - 2021F Forecast

CONFIDENTIAL
NOT FOR DISTRIBUTION

($ in millions)

| | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | 2019E Total | 2020E Total | 2021E Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Retail (4-Wall + Online + SYW)** | | | | | | | | | | | | | | | |
| B&M Same Store Sales (% Change) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | 2.0% | 3.0% |
| Revenue | $382 | $491 | $390 | $465 | $573 | $405 | $429 | $495 | $362 | $559 | $765 | $452 | $5,768 | $5,909 | $6,166 |
| Gross Margin | 108 | 144 | 129 | 147 | 169 | 127 | 114 | 132 | 107 | 163 | 235 | 121 | 1,697 | 1,829 | 2,046 |
| EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| **Home Services** | | | | | | | | | | | | | | | |
| Revenue | $127 | $160 | $131 | $133 | $166 | $135 | $132 | $162 | $125 | $126 | $155 | $129 | $1,681 | $1,573 | $1,593 |
| Gross Margin | 94 | 119 | 95 | 96 | 120 | 97 | 95 | 119 | 95 | 94 | 116 | 96 | 1,237 | 1,107 | 1,099 |
| EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| **Financial Services** | | | | | | | | | | | | | | | |
| Revenue | $3 | $4 | $3 | $4 | $5 | $3 | $4 | $4 | $3 | $5 | $7 | $4 | $49 | $42 | $44 |
| EBITDA | ▬ | ▬ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| **Other Businesses** | | | | | | | | | | | | | | | |
| Kenmore / Craftsman / DieHard EBITDA | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $3 | $37 | $79 |
| Monark EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | | | |
| **Overhead and Adjustments** | | | | | | | | | | | | | | | |
| Supply Chain and Innovel | ($23) | ($18) | ($22) | ($21) | ($16) | ($19) | ($20) | ($16) | ($22) | ($22) | ($12) | ($17) | ($228) | ($210) | ($207) |
| Home Office / Corporate SG&A | (37) | (35) | (36) | (36) | (35) | (31) | (26) | (25) | (27) | (28) | (28) | (29) | (317) | (287) | (320) |
| **Total SHC EBITDA** | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▬ | ▬ | ▬ |
| **Retail EBITDA Detail** | | | | | | | | | | | | | | | |
| Brick and Mortar 4-Wall EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |
| Vendor Discounts & Other Adjustments | 6 | 8 | 6 | 7 | 9 | 6 | 7 | 8 | 6 | 9 | 13 | 8 | 92 | 91 | 91 |
| Sears Auto Center EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | | | |
| Online EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | | | |
| ShopYourWay EBITDA | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | | | |
| **Total Retail EBITDA** | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▬ | ▬ | ▬ |
| **Ending Stores** | | | | | | | | | | | | | | | |
| Sears | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 |
| Kmart | 191 | 188 | 185 | 182 | 179 | 176 | 173 | 170 | 167 | 164 | 161 | 158 | 158 | 158 | 158 |
| **Total Ending Stores** | 422 | 419 | 416 | 413 | 410 | 407 | 404 | 401 | 398 | 395 | 392 | 389 | 389 | 389 | 389 |

1.  Call center support allocated at corporate level

[ 6 ]

# *Financial Overview*

CONFIDENTIAL
NOT FOR DISTRIBUTION

## 2019 Monthly Budget & 2020F-2023F Annual Forecast

*($ in millions)*

### Debt Overview

| | | |
|---|---|---|
| ABL Facility Drawn | $535 | |
| Outstanding L/C | 118 | |
| ABL Facility | $653 | L + 375 |
| Citi L/C Facility[1] | 271 | L + 1100 |
| Real Estate Debt[2] | 175 | L + 850 |
| FILO Term Loan | 250 | L + 800 |
| Exit Financing[3] | 350 | L + 1300 |

### Key ABL Assumptions

| | |
|---|---|
| Assumed 1L Outstanding 2/8 | $850 |
| Plus: Transaction Fees | 50 |
| Remaining ABL Balance | $900 |
| Less: Term Loan | (250) |
| Plus: OID | 5 |
| Draw Needed[4] | $653 |

| | Pre-Petition | NewCo |
|---|---|---|
| RCF Facility Size | $1,500 | $1,050 |
| FILO Term Loan Facility Size | N/A | 250 |
| Rate on Undrawn | 63 bps | 50 bps |
| Borrowing Base Reserves | 62 | 50 |
| L/C Under ABL Facility | 124 | 118 |

| | Pre-Petition | NewCo |
|---|---|---|
| NOLV on Inventory | Varies | Varies |
| ABL Inventory Ineligibles | 6.0% | 6.0% |
| Advance Rate on Inventory | 80.0% | 90.0% |
| Advance Rate on CC AR | 85.0% | 90.0% |
| NOLV on Scripts | N/A | 90.0% |
| Advance Rate on Scripts | N/A | 85.0% |
| Advance Rate on Pharmacy AR | 85.0% | 85.0% |

### Real Estate Debt

| | |
|---|---|
| Real Estate Debt | $175 |
| Appraised Value | 1,652.1 |
| *Loan to Value %* | *10.6%* |

### Budget Overview

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Consolidated EBITDA** | | **($33)** | **$4** | **($7)** | **$7** | **$24** | **($6)** | **($17)** | **($3)** | **($25)** | **$15** | **$87** | **($22)** | **$25** | **$171** | **$378** | **$415** | **$454** |
| Less: Interest Expense | | (14) | (14) | (14) | (15) | (13) | (11) | (12) | (12) | (13) | (13) | (12) | (11) | (153) | (129) | (112) | (79) | (71) |
| Less: Capex[5] | | (10) | (11) | (11) | (10) | (9) | (9) | (9) | (9) | (9) | (9) | (10) | (11) | (117) | (78) | (88) | (82) | (85) |
| Plus: PIK Interest | | 4 | 5 | 5 | 5 | 4 | 3 | 4 | 4 | 4 | 4 | 3 | 3 | 47 | 31 | 29 | 33 | 34 |
| Plus: Real Estate Sale Proceeds[6] | | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 200 | 200 | 200 | - | - |
| Plus: Asset Sale Proceeds[7] | | - | - | - | - | 100 | - | - | - | - | - | 50 | - | 150 | 130 | - | - | - |
| Less: Mandatory Debt Paydown[8] | | - | - | - | - | (113) | (13) | (13) | (13) | (13) | (13) | (63) | (13) | (257) | (207) | (271) | - | (269) |
| Plus: Draw of Real Estate Debt or S/T Debt | | - | - | - | 33 | - | - | - | - | - | - | - | - | 33 | - | - | - | - |
| (+/-) Change in Inventory[9] | | (157) | 116 | (146) | 1 | 275 | 88 | (107) | (171) | 131 | (176) | 134 | 148 | 135 | - | - | (48) | (53) |
| (+/-) Change A/R | | 20 | 40 | 33 | 28 | 44 | 12 | (10) | 10 | (16) | (72) | 80 | 15 | 185 | - | - | (1) | (1) |
| (+/-) Change A/P | | 148 | 32 | (23) | 61 | 99 | 44 | 40 | 61 | (136) | 156 | 158 | (232) | 410 | 68 | 74 | 82 | 25 |
| (+/-) Change SHS Deferred Acquisition Costs | | 18 | 17 | 16 | 17 | 16 | 17 | 16 | 16 | 15 | 16 | 16 | 16 | 198 | 101 | 39 | 7 | 7 |
| (+/-) Change SHS Unearned Revenue | | (42) | (42) | (42) | (42) | (42) | (42) | (42) | (42) | (42) | (42) | (42) | (42) | (504) | (269) | (128) | (29) | (29) |
| (-) SHS PA Adjustment | | (8) | (10) | (7) | (7) | (9) | (7) | (6) | (8) | (6) | (6) | (7) | (5) | (84) | (50) | (23) | (23) | (23) |
| (+) Cross Country Adjustment | | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | - | 54 | - | - | - | - |
| (-) Liability Assumption Payment | | - | (43) | - | (139) | - | - | - | - | - | - | - | - | (182) | - | - | - | - |
| (-) Cure Costs & Add'l RE Taxes | | (20) | (30) | (30) | (12) | (12) | (12) | (12) | (12) | - | - | - | - | (140) | - | - | - | - |
| (-) Designation Rights Costs | | (11) | (13) | - | - | - | - | - | - | - | - | - | - | (25) | - | - | - | - |
| (+) Cash Savings from CIA Inventory | | 74 | 74 | - | - | - | - | - | - | - | - | - | - | 148 | - | - | - | - |
| **Cash Flow Before Revolver Draw / (Repayment)** | | **($9)** | **$147** | **($204)** | **($50)** | **$385** | **$85** | **($146)** | **($158)** | **($87)** | **($120)** | **$416** | **($137)** | **$123** | **($31)** | **$113** | **$275** | **($9)** |
| ***Unlevered Free Cash Flow*** | | ***1*** | ***156*** | ***(198)*** | ***(73)*** | ***808*** | ***106*** | ***(125)*** | ***(196)*** | ***(64)*** | ***(97)*** | ***488*** | ***(115)*** | ***493*** | ***274*** | ***467*** | ***921*** | ***297*** |
| Beginning ABL Balance | $653 | $478 | $486 | $322 | $526 | $609 | $190 | $105 | $251 | $409 | $496 | $616 | $200 | $478 | $337 | $367 | $254 | - |
| Draw / (Repayment) | (175) | 9 | (147) | 204 | 83 | (419) | (85) | 146 | 158 | 87 | 120 | (416) | 137 | (141) | 31 | (113) | (254) | - |
| **Ending ABL Balance** | **$478** | **$486** | **$322** | **$526** | **$609** | **$190** | **$105** | **$251** | **$409** | **$496** | **$616** | **$200** | **$337** | **$337** | **$367** | **$254** | - | - |
| **Borrowing Base - Total** | ***1,130*** | ***1,222*** | ***1,148*** | ***1,261*** | ***1,263*** | ***1,067*** | ***1,000*** | ***1,083*** | ***1,208*** | ***1,159*** | ***1,334*** | ***1,165*** | ***1,001*** | ***1,001*** | ***1,001*** | ***1,001*** | ***1,035*** | ***1,079*** |
| *Borrowing Base - Revolver* | *880* | *972* | *898* | *1,011* | *1,013* | *817* | *750* | *833* | *958* | *903* | *1,084* | *915* | *751* | *751* | *751* | *751* | *785* | *823* |
| *Ending ABL Availability*[10] | *402* | *486* | *559* | *485* | *437* | *627* | *645* | *582* | *549* | *406* | *484* | *715* | *414* | *414* | *383* | *496* | *785* | *823* |
| *Less: FCCR Reserve* | *(88)* | *(97)* | *(90)* | *(101)* | *(101)* | *(82)* | *(75)* | *(83)* | *(96)* | *(90)* | *(105)* | *(92)* | *(75)* | *(75)* | *(75)* | *(75)* | *(79)* | *(82)* |
| *Ending Availability - Net of Reserve* | *314* | *388* | *469* | *384* | *336* | *545* | *570* | *498* | *453* | *316* | *329* | *624* | *339* | *339* | *308* | *421* | *707* | *741* |
| *Ending Liquidity* | *314* | *388* | *469* | *384* | *369* | *545* | *570* | *498* | *453* | *316* | *329* | *624* | *339* | *339* | *308* | *421* | *728* | *753* |
| Ending ABL Balance[11] | $478 | $486 | $322 | $526 | $609 | $190 | $105 | $251 | $409 | $496 | $616 | $200 | $337 | $337 | $367 | $254 | $0 | $0 |
| Citi L/C Facility | 271 | 271 | 271 | 271 | 271 | 271 | 271 | 271 | 271 | 271 | 271 | 271 | 271 | 271 | 271 | - | - | - |
| Term Loan | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Real Estate Debt | 175 | 175 | 175 | 175 | 208 | 195 | 182 | 168 | 155 | 142 | 128 | 115 | 102 | 102 | - | - | - | - |
| Exit Financing | 350 | 354 | 359 | 364 | 368 | 272 | 276 | 279 | 283 | 287 | 290 | 244 | 247 | 247 | 173 | 202 | 235 | - |
| **Total Debt Outstanding** | **$1,524** | **$1,537** | **$1,377** | **$1,585** | **$1,707** | **$1,179** | **$1,084** | **$1,220** | **$1,369** | **$1,446** | **$1,556** | **$1,080** | **$1,206** | **$1,206** | **$1,062** | **$706** | **$485** | **$250** |
| **Interest Expense** | **N/A** | **14** | **14** | **14** | **15** | **13** | **11** | **12** | **12** | **13** | **13** | **12** | **11** | **153** | **129** | **112** | **79** | **71** |
| **Debt / LTM EBITDA:** | | | | | | | | | | | | | | **N/A** | **6.2x** | **1.9x** | **1.2x** | **0.6x** |
| **LTM EBITDA / Interest Expense:** | | | | | | | | | | | | | | **0.2x** | **1.3x** | **3.4x** | **5.2x** | **6.4x** |

Note: Assumes 2% OID on Term Loan; Excludes any annual fee on real estate debt; Assumes Jr. DIP PIK interest with maturity of 12/23

1. L/C Facility priced 300bps wider than Term Loan
2. Model illustrates payment of L+850bps cash interest; Facility has PIK Toggle with PIK interest rate of L+1050bps
3. Model illustrates payment of L+1300bps PIK interest; Facility has PIK Toggle with cash interest rate of L+1000bps
4. Initial draw prior to repayment from real estate debt proceeds
5. Capex includes $30mm maintenance capex, $30mm IT capex, $10mm supply chain capex and $50mm store growth capex
6. Assumes $200mm of annual sale-lease back transactions from 2019-2021, pro-rata by month; does not account for incremental associated lease expense; assumes 100% of proceeds are used to pay down any the ABL in the first 4 months, and then 80% of proceeds used starting June 2019, while the remaining 20% is used to pay down the ABL facility; Assumes facility is fully paid down at end of 2021
7. Conservatively assumes the sale of previously unencumbered assets acquired in conjunction with the rollover of the Jr. DIP of in $100mm in June 2019, $100mm in June 2020 and $30mm in December 2020; All proceeds assumed to pay down Jr. Dip Rollover
8. Includes mandatory repayment of real estate debt, Jr. Dip Facility and Citi L/C facility
9. Assumes 3 stores with negative 4-wall EBITDA sold per month in 2019; conservatively assumes no EBITDA benefit associated with sale of stores
10. Ending Availability at closing is subject to continued diligence of outstanding 1L balance at close
11. Reflects $17.5mm of L/C reduction under ABL in March 2019

**Financial Overview**

CONFIDENTIAL
NOT FOR DISTRIBUTION

## 2019 Monthly Working Capital Budget & 2020F-2023F Annual Forecast

*($ in millions)*

| Forecasted Working Capital Overview | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $ in millions / Working Capital Forecast[1] | Opening | Feb-2019 | Mar-2019 | Apr-2019 | May-2019 | Jun-2019 | Jul-2019 | Aug-2019 | Sep-2019 | Oct-2019 | Nov-2019 | Dec-2019 | Jan-2020 | 2020F | 2021F | 2022F | 2023F | 2024F |
| Ending Cash Balance | - | - | - | $33.3 | - | - | - | - | - | - | - | - | - | - | - | - | $20.9 | $12.0 |
| Inventory | 1,553.0 | 1,710.2 | 1,594.3 | 1,740.2 | 1,739.4 | 1,464.4 | 1,376.5 | 1,483.3 | 1,654.6 | 1,529.3 | 1,699.6 | 1,566.0 | 1,418.0 | 1,418.0 | 1,418.0 | 1,418.0 | 1,466.5 | 1,519.0 |
| Accounts Receivable | 64.0 | 44.0 | 42.0 | 47.2 | 57.1 | 51.4 | 39.5 | 48.8 | 39.7 | 55.6 | 127.7 | 47.0 | 32.7 | 32.7 | 32.7 | 32.7 | 33.8 | 35.1 |
| Vendor Accounts Receivable | 153.2 | 153.2 | 114.9 | 76.6 | 38.3 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Pharmacy Receivables | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 18.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 18.0 | 10.0 | 10.0 |
| Pharmacy Scripts | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 | 27.0 |
| Accounts Payable | 166.0 | 148.4 | 181.6 | 157.7 | 218.8 | 318.0 | 361.8 | 401.9 | 463.2 | 327.6 | 489.5 | 641.7 | 409.6 | 409.6 | 477.6 | 551.6 | 654.1 | 653.4 |
| Accounts Payable Days | | 10 | 13 | 15 | 18 | 20 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 37 | 42 | 45 | 45 |
| SHS Deferred Acquisition Cost | 352.7 | 334.6 | 317.4 | 301.5 | 294.2 | 267.9 | 251.4 | 234.9 | 218.6 | 208.2 | 186.9 | 170.6 | 154.3 | 154.3 | 53.7 | 14.9 | 7.5 | - |
| SHS Unearned Revenue | 956.3 | 908.3 | 866.3 | 824.3 | 782.3 | 740.3 | 698.3 | 656.3 | 614.3 | 572.3 | 530.3 | 488.3 | 446.3 | 446.3 | 177.5 | 57.5 | 20.7 | - |

1.    Represents forecast for period ending balance; working capital under further diligence

[ 8 ]

TRFM-00000735

# Exhibit G-2

[FILED UNDER SEAL
PURSUANT TO 7/2/19
ORDER DOCKET #4420]

# Exhibit H

**To:** Hachem, Alaa[Alaa.Hachem@moelis.com]; Harold Talisman[harold@eslinvest.com]; Kunal Kamlani[kunal@eslinvest.com]; rob.riecker[rob.riecker@searshc.com]; Chris Good[cgood@miiipartners.com]; Jonathan B. Boffi[jboffi@miiipartners.com]; Enrique Acevedo[eacevedo@miiipartners.com]; David Tyburski (US - Advisory)[david.t.tyburski@pwc.com]; Archibald Gabriel Benhamou (US - Advisory)[archibald.gabriel.benhamou@pwc.com]; Harrison Rodriguez (US - Advisory)[harrison.b.rodriguez@pwc.com]; Mark Renzi[mrenzi@thinkbrg.com]; Ratto, Betsy - GCIB BOS[betsy.ratto@baml.com]; Alexander Geshwind[ageshwind@thinkbrg.com]; Caroline Tetelboum (US - ADVS)[caroline.tetelboum@pwc.com]; Issame Rahimi[issame.rahimi@pwc.com]; Merlynd Ameti (US - ADVS)[merlynd.ameti@pwc.com]; Koeckeis, Sebastian[sebastian.koeckeis@rbccm.com]; Smith, Shapleigh[shapleigh.smith@citi.com]; Trauber, Douglas[douglas.trauber@citi.com]; Bott, Ryan[ryan.bott@citi.com]; Dockeray, Alan[alan.dockeray@citi.com]; Grant, Haley[haley.grant@citi.com]; Halsch, Thomas[thomas.halsch@citi.com]; Smith, David L2[david.l2.smith@citi.com]; Pratt, Michelle1[michelle1.pratt@citi.com]; Kothari, Faizan[faizan.kothari@citi.com]; Mcreynolds, Parker[parker.mcreynolds@citi.com]; Cohen, Mark[Mark.Cohen@rbc.com]; Souh, Benjamin[benjamin.souh@rbccm.com]; Gioia, Daniel[dan.gioia@rbccm.com]; Noriega, Pierre[pierre.noriega@rbccm.com]; Borrelli, Guido[guido.borrelli@rbccm.com]; Farkas, Caroline[caroline.farkas@rbccm.com]; Frank, David[david.frank@rbccm.com]; Pelaez, Nadia[nadia.pelaez@rbccm.com]; Hummel, Dana[dana.hummel@rbc.com]; MacArthur, Gordon[Gordon.MacArthur@rbccm.com]; Garvin, Stephen - GCIB BOS[stephen.garvin@baml.com]; Russell, David - GCIB NY[david.russell@baml.com]; Lindblom, Brian P[brian.p.lindblom@baml.com]; Miscimarra, Jonathan - GCM[jonathan.miscimarra@baml.com]; Balta, Nicholas J[nicholas.j.balta@baml.com]; Szymanski, Stephen - GCM[stephen.szymanski@baml.com]; Waldman, Adam[Adam.Waldman@moelis.com]; Murphy, Cullen[Cullen.Murphy@moelis.com]; Wechsler, Isabelle[Isabelle.Wechsler@moelis.com]
**From:** Gruenbaum, Josh
**Sent:** Wed 1/16/2019 5:49:51 PM (UTC-05:00)
**Subject:** RE: Sears

Project Blue - Draft Pro Forma Datapack (1.16.2019) Lender Presentation.....xlsx
Project Transform - Liquidity Analysis_v2019.01.16.07.pdf
Project Transform - Borrowing Base_v2019.01.16.01.pdf

See attached for reference files ahead of the call.

Thanks,
Josh

-----Original Appointment-----
**From:** Hachem, Alaa
**Sent:** Wednesday, January 16, 2019 5:17 PM
**To:** Hachem, Alaa; Harold Talisman; Kunal Kamlani; rob.riecker; Chris Good; Jonathan B. Boffi; Enrique Acevedo; David Tyburski (US - Advisory); Archibald Gabriel Benhamou (US - Advisory); Harrison Rodriguez (US - Advisory); Mark Renzi; Ratto, Betsy - GCIB BOS; Alexander Geshwind; Caroline Tetelboum (US - ADVS); Issame Rahimi; Merlynd Ameti (US - ADVS); Koeckeis, Sebastian; Smith, Shapleigh; Trauber, Douglas; Bott, Ryan; Dockeray, Alan; Grant, Haley; Halsch, Thomas; Smith, David L2; Pratt, Michelle1; Kothari, Faizan; Mcreynolds, Parker; Cohen, Mark; Souh, Benjamin; Gioia, Daniel; Noriega, Pierre; Borrelli, Guido; Farkas, Caroline; Frank, David; Pelaez, Nadia; Hummel, Dana; MacArthur, Gordon; Garvin, Stephen - GCIB BOS; Russell, David - GCIB NY; Lindblom, Brian P; Miscimarra, Jonathan - GCM; Balta, Nicholas J; Szymanski, Stephen - GCM; Waldman, Adam; Murphy, Cullen; Gruenbaum, Josh; Wechsler, Isabelle
**Subject:** Sears
**When:** Wednesday, January 16, 2019 6:00 PM-6:30 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Dial-in: (877) 211-3621; Passcode: 331 657 6602#


US Dial-In:        (877) 211-3621
International Dial-In:  View a Complete List
Passcode:        3316576602 then #
Mobile One-Click:      (877) 211-3621,,, 3316576602#

Disclaimer: Click here for important information about Moelis & Company and this e-mail.

CTRL0002655470

# Exhibit H-1

[FILED UNDER SEAL
PURSUANT TO 7/2/19
ORDER DOCKET #4420]

# Exhibit H-2

CONFIDENTIAL
NOT FOR DISTRIBUTION

# Project Transform – *Liquidity Analysis*

CONFIDENTIAL
NOT FOR DISTRIBUTION

## Disclaimer

This presentation has been prepared by ESL Investments ("ESL") based on confidential information provided by the Company and publicly available information. ESL and its representatives have not assumed any responsibility for independently verifying the information herein, ESL and its representatives make no representation or warranty as to the accuracy, completeness or reasonableness of the information herein and ESL and its representatives disclaim any liability with respect to the information herein. This presentation may include projections, forecasts or other forward-looking statements with respect to the Company and there can be no assurance as to ESL's or the Company's future performance. This presentation speaks only as of its date, and ESL and its representatives assume no obligation to update it or to advise any person that any of its conclusions has changed.

The assessments of Sears situation and the proposal described in this document are solely an expression of ESL's views. Sears has not approved or endorsed this document. Any action or response of Sears in connection with the items discussed in this presentation will require prior review and approval by Sears' Board, the Restructuring Sub-Committee, the Special Committee and/or the Related Party Committee. There can be no assurance that any action will be taken in response to ESL's proposals contained herein, and any action plan that is adopted could vary materially from the proposals described in this document.

This presentation is solely for informational purposes. This presentation is not intended to provide the basis for any decision on any transaction. The recipient should make its own independent business and legal decisions based on all other information, advice and the recipient's own judgment. **This presentation is not an offer to sell or a solicitation of an indication of interest to purchase any security, option, commodity, future, loan or currency. It is not a commitment to underwrite any security, to loan any funds or to make any investment.**

1

*Financial Overview*

CONFIDENTIAL
NOT FOR DISTRIBUTION

# Financial Forecast – Key Assumptions

| BUSINESS SEGMENT | KEY ASSUMPTIONS |
|---|---|
| **Brick and Mortar** | • Assumes 223 Sears stores and 202 Kmart stores |
| | • Assumes same store sales growth of -1% in 2019F, 2% in 2020F and 3% in 2021F |
| | • Assumes 125bps margin improvement in 2019F and assumes 200bps margin improvement in 2020F and 2021F, respectively |
| **Kenmore 3rd Party** | • Amazon revenue expected to increase from $80M in 2018 to $300M by 2021F, conservatively assumes ~50% less incremental Amazon revenue than Company's projections |
| | • Assumes one additional 3rd party account coming online in 2020F with expected sales of $500mm and $1,000mm in 2020F and 2021F respectively |
| | — Assumes 4% licensing fee on all associated 3rd party sales |
| **Sears Home Services** | • Assumes 2018E to 2021E will be driven by a 30% increase in B2B volume, D2C growth, and improvements in the PartsDirect website and IHR mobile technology over the next two years, offset by the cumulative effect of 3rd party underwriting transaction |
| | — Projections exclude SHIP business segment which will either be sold to Service.com with the proceeds distributed to NewCo or, if the contemplated sale to Service.com fails to close, the SHIP business will be acquired by NewCo as part of NewCo acquisition transaction |
| **Innovel** | • Assumes increased 3rd party revenue, growing to $300mm by 2021F, conservatively $200mm less than Company's projections |
| **Sears Auto Center** | • Assumes same store sales growth of -1% in 2019F, 2% in 2020F and 3% in 2021F |
| | • Assumes 125bps margin improvement in 2019F and assumes 200bps margin improvement in 2020F and 2021F, respectively |
| **E-Commerce** | • Assumes 5% year over year growth throughout the projection period |
| | — Traffic, AOV and conversion ratios are held constant based on historicals |
| **ShopYourWay** | • Assumes historical % of total revenue through the projection period |
| **Monark** | • Assumes $1mm, $2mm and $3mm of EBITDA 2019F, 2020F and 2021F respectively |

| 2 |

Financial Overview

CONFIDENTIAL
NOT FOR DISTRIBUTION

# Financial Forecast – Key Assumptions (Cont'd)

| | WORKING CAPITAL ASSUMPTIONS |
|---|---|
| Accounts Payables (days) | × 10 days in February , 12.5 days in March, 15 days in April, 17.5 days in May, 20 days in June and 32 days in July, then remaining constant for the rest of 2019F<br>× 37 days in 2020F and 42 days in 2021F<br> ·· Pre-petition DPO was 22 days<br> ·· Industry average ~50 days<br>× Assumes starting A/P balance of $166mm of assumed AP payable in November |
| Accounts Receivables (days) | × Adjusted for seasonality based off of historical accounts receivable as a percentage of inventory |
| Inventory | × Assumes starting inventory of $1,553mm<br>× Adjusted for seasonality based off of historicals |

| | OVERHEAD ASSUMPTIONS |
|---|---|
| 2019F SG&A Forecast (including supply chain costs) | × $545mm, representing ~6% of total 2019F sales<br> ·· Pre-petition SG&A of $1.2bn, representing ~10% of total 2018B sales |
| Vendor Discount & Other Adjustments | × Assumes ~2.8% of COGS |

| | CAPITAL STRUCTURE ASSUMPTIONS |
|---|---|
| ABL Balance | × $655mm Revolver¹; $250mm Term Loan at close |
| ABL Interest Rate | × L + 375 Revolver; L + 800 Term Loan |
| NewCo L/C Facility | × L + 1100; Matures 1/22 |
| Real Estate Debt | × Assumes $175mm of new Real Estate debt with an interest rate of L + 850 cash and L + 1050 PIK; 3 year term |
| Exit Financing | × Assumes $350mm roll over of Junior DIP into Exit Financing at L + 1000 cash and L + 1300 PIK |

| | OTHER ASSUMPTIONS |
|---|---|
| Dove & Sparrow Real Estate | × Assumes $200mm of annual proceeds from dispositions from 2019 to 2021, with 80% of proceeds used to pay down any outstanding real estate debt, and the remaining 20% used to pay down the ABL facility (first 120 days 100% of proceeds to ABL) |
| CapEx | × Assumes approximately ~$50mm of store growth CapEx per year |
| ABL L/C | × The company is targeting $35mm of L/C reduction under the ABL, in February 2019; for conservatism, the model assumes $17.5mm of L/C reduction in March 2019 |
| 2022 – 2023 | × Assumes top line growth of 4% annually and a 25 bps EBITDA margin improvement in 2022 and 2023<br>× All working capital assumptions are kept constant from 2021, other than days payable which are assumed to be 3 days higher |

1. Represents amount per pay-down using real estate debt

3

## Financial Overview
# Consolidated Projections

CONFIDENTIAL
NOT FOR DISTRIBUTION

($ in millions)

| | 2015A | 2016A | 2017A | 2018B | 2019F | 2020F | 2021F | 2022F | 2023F |
|---|---|---|---|---|---|---|---|---|---|
| Revenue | $24,533 | $21,543 | $16,248 | $11,648 | $7,939 | $8,075 | $8,502 | $8,842 | $9,196 |
| (-) COGS | (16,272) | (14,312) | (10,525) | (7,427) | (4,882) | (4,984) | (5,155) | (5,361) | (5,576) |
| Gross Margin | $8,262 | $7,230 | $5,723 | $4,220 | $3,057 | $3,091 | $3,347 | $3,481 | $3,620 |
| Margin (%) | 34% | 34% | 35% | 36% | 39% | 38% | 39% | 39% | 39% |
| (-) Operating Expenses | (7,034) | (6,263) | (4,902) | (3,769) | (2,487) | (2,422) | (2,443) | (2,684) | (2,940) |
| (-) Supply Chain & Logistics | (483) | (389) | (326) | (291) | (228) | (210) | (207) | (227) | (249) |
| (-) Home Office SG&A | (1,580) | (1,376) | (1,052) | (786) | (317) | (287) | (320) | (351) | (385) |
| EBITDA | ($836) | ($798) | ($557) | ($625) | $25 | $171 | $378 | $415 | $454 |
| Margin (%) | (3%) | (4%) | (3%) | (5%) | 0% | 2% | 4% | 5% | 5% |
| Memo: Store Count | 1,646 | 1,405 | 979 | 505 | 425 | 425 | 425 | 425 | 425 |

1.   Str level EBITDA adjustment related to the protection agreement business
2.   Reflects 2019F h-wall gross margin expansion

4

TRFM-00006444

## Financial Overview

CONFIDENTIAL
NOT FOR DISTRIBUTION

## 2015A – 2021F Performance By Business Unit

*($ in millions)*

| | 2015A | 2016A | 2017A | 2018E | 2019F | 2020F | 2021F |
|---|---|---|---|---|---|---|---|
| Memo: Store Count | 1,646 | 1,405 | 979 | 505 | 425 | 425 | 425 |
| **Retail (4-Wall + Online + SYW)** | | | | | | | |
| Revenue | $21,381 | $18,492 | $13,531 | $8,991 | $5,768 | $5,909 | $6,166 |
| Gross Margin | 6,541 | 5,476 | 4,119 | 2,572 | $1,697 | $1,829 | $2,046 |
| EBITDA | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| **Home Services** | | | | | | | |
| Revenue | $2,139 | $2,159 | $1,953 | $1,762 | $1,681 | $1,573 | $1,593 |
| Gross Margin | $1,582 | $1,592 | $1,433 | 1,276 | $1,237 | $1,107 | $1,099 |
| EBITDA | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| **Financial Services** | | | | | | | |
| Revenue | $66 | $68 | $74 | $103 | $49 | $42 | $44 |
| EBITDA | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| **Other Businesses** | | | | | | | |
| Kenmore / Craftsman / DieHard EBITDA [1] | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| Monark EBITDA | ■ | ■ | ■ | | | | |
| **Overhead and Adjustments** | | | | | | | |
| Supply Chain and Innovel | ($483) | ($389) | ($326) | ($291) | ($228) | ($210) | ($207) |
| Home Office / Corporate SG&A | (1,580) | (1,376) | (1,052) | (786) | ($317) | ($287) | ($320) |
| **Total SHC EBITDA** | ■ | ■ | | | | ■ | ■ |
| **Retail EBITDA Detail** | | | | | | | |
| 425 Store Go-Forward 4-Wall EBITDA | ■ | ■ | | ■ | ■ | ■ | ■ |
| All Other 4-Wall EBITDA + Online | ■ | ■ | ■ | ■ | | | |
| Vendor Discounts & Other Adjustments | 239 | 304 | 238 | 183 | 92 | 91 | 91 |
| Sears Auto Center EBITDA | ■ | ■ | ■ | | ■ | | |
| ShopYourWay EBITDA | | | | | | | |
| **Total Retail EBITDA** | ■ | ■ | ■ | ■ | ■ | ■ | ■ |

1.    SHC level EBITDA adjustment related to the protection agreement business
2.    2015 – 2018E numbers are based off of 505 stores

[5]

## Financial Overview

CONFIDENTIAL
NOT FOR DISTRIBUTION

# 2019F - Key Operating Units & 2020F - 2021F Forecast

($ in millions)

| | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | 2019F Total | 2020F Total | 2021F Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Retail (4-Wall + Online + SYW)** | | | | | | | | | | | | | | | |
| B&M Same Store Sales (% Change) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | (1.0%) | 2.0% | 3.0% |
| Revenue | $382 | $491 | $390 | $465 | $573 | $405 | $429 | $495 | $362 | $559 | $765 | $452 | $5,768 | $5,903 | $6,166 |
| Gross Margin | 108 | 144 | 129 | 147 | 169 | 127 | 114 | 132 | 107 | 193 | 235 | 121 | 1,697 | 1,829 | 2,046 |
| EBITDA | | | | | | | | | | | | | | | |
| **Home Services** | | | | | | | | | | | | | | | |
| Revenue | $127 | $190 | $131 | $133 | $166 | $135 | $132 | $162 | $125 | $126 | $155 | $129 | $1,681 | $1,573 | $1,593 |
| Gross Margin | 94 | 119 | 95 | 96 | 120 | 97 | 95 | 119 | 95 | 94 | 116 | 96 | 1,237 | 1,107 | 1,099 |
| EBITDA | | | | | | | | | | | | | | | |
| **Financial Services** | | | | | | | | | | | | | | | |
| Revenue | $3 | $4 | $3 | $4 | $5 | $3 | $4 | $4 | $3 | $5 | $7 | $4 | $49 | $42 | $44 |
| EBITDA | | | | | | | | | | | | | | | |
| **Other Businesses** | | | | | | | | | | | | | | | |
| Kenmore / Craftsman / DieHard EBITDA | | | | | | | | | | | | | | | |
| Monark EBITDA | | | | | | | | | | | | | | | |
| **Overhead and Adjustments** | | | | | | | | | | | | | | | |
| Supply Chain and Innovel | ($23) | ($18) | ($22) | ($21) | ($16) | ($19) | ($20) | ($16) | ($22) | ($22) | ($12) | ($17) | ($228) | ($210) | ($207) |
| Home Office / Corporate SG&A | (37) | (35) | (36) | (36) | (35) | (31) | (28) | (25) | (27) | (28) | (28) | (29) | (317) | (287) | (320) |
| **Total SHC EBITDA** | | | | | | | | | | | | | | | |
| **Retail EBITDA Detail** | | | | | | | | | | | | | | | |
| Brick and Mortar 4-Wall EBITDA | | | | | | | | | | | | | | | |
| Vendor Discounts & Other Adjustments | 6 | 8 | 6 | 7 | 9 | 6 | 7 | 8 | 6 | 9 | 13 | 8 | 92 | 91 | 91 |
| Sears Auto Center EBITDA | | | | | | | | | | | | | | | |
| Online EBITDA | | | | | | | | | | | | | | | |
| ShopYourWay EBITDA | | | | | | | | | | | | | | | |
| **Total Retail EBITDA** | | | | | | | | | | | | | | | |
| **Ending Stores** | | | | | | | | | | | | | | | |
| Sears | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 | 231 |
| Kmart | 191 | 188 | 185 | 182 | 179 | 176 | 173 | 170 | 167 | 164 | 161 | 158 | 158 | 158 | 158 |
| **Total Ending Stores** | **422** | **419** | **415** | **413** | **410** | **407** | **404** | **401** | **398** | **395** | **392** | **389** | **389** | **389** | **389** |

1. Call center support allocated at corporate level

6

## Financial Overview

CONFIDENTIAL
NOT FOR DISTRIBUTION

# 2019 Monthly Budget & 2020F-2023F Annual Forecast

($ in millions)

### Debt Overview

| | |
|---|---|
| ABL Facility Drawn | $335 |
| Outstanding L/C | 116 |
| ABL Facility | $651  L = 315 |
| CdL L/C Facility | 271  L = 1380 |
| Real Estate Debt | 175  L = 800 |
| FILO Term Loan | 250  L = 800 |
| Exit Financing | 100  L = 1360 |

### Key ABL Assumptions

| | |
|---|---|
| Assumes 1: Outstanding 2/3 | $850 |
| Plus: Transaction Fees | 50 |
| Remaining ABL Balance | $900 |
| Less: Term Loan | (250) |
| Plus: L/C | 3 |
| Gross Need | $653 |

| | Pre-Petition | NewCo |
|---|---|---|
| BCF Facility Size | $1,500 | $1,360 |
| FILO Term Loan Facility Size | N/A | 250 |
| Rate on Unfunded | 63bps | 59bps |
| Accommodation Reserves | 40 | 50 |
| L/C Under ABL Facility | 124 | 118 |

| | Pre-Petition | NewCo |
|---|---|---|
| ABL Inventory Ineligibles | 6.0% | 6.0% |
| Advance Rate on Inventory | 80.0% | 90.0% |
| Advance Rate on CC AR | 85.0% | 90.0% |
| NOLV on Scripts | N/A | 90.0% |
| Advance Rate on Scripts | N/A | 85.0% |
| Advance Rate on Pharmacy AR | 85.0% | |

### Real Estate Debt

| | |
|---|---|
| Real Estate Debt | $175 |
| Appraised Value | 1,862.1 |
| Loan to Value % | 30.0% |

### Budget Overview

# Financial Overview

CONFIDENTIAL
NOT FOR DISTRIBUTION

## 2019 Monthly Working Capital Budget & 2020F-2023F Annual Forecast

($ in millions)

**Forecasted Working Capital Overview**

Working Capital Forecast

- Ending Cash Balance
- Inventory
- Accounts Receivable
- Vendor Accounts Receivable
- Pharmacy Receivables
- Pharmacy Scripts
- Accounts Payable
- Accounts Payable Days
- Std Deferred Acquisition Cost
- SKU Deferred Revenue

HIGHLY CONFIDENTIAL
TRFM-00006448

# Exhibit H-3

[FILED UNDER SEAL
PURSUANT TO 7/2/19
ORDER DOCKET #4420]

# Exhibit I

**From:** Gruenbaum, Josh
**Sent:** Friday, January 25, 2019 4:54 PM
**To:** Britton, Robert; Murphy, Cullen; O'Neal, Sean A.
**Cc:** Weaver, Andrew; Waldman, Adam; DStogsdill@alvarezandmarsal.com; Grossi, Nick
**Subject:** RE: [EXT] RE: liquidity analysis

A&M Team,

Thanks for the call earlier this morning. As a follow-up, please find attached for two schedules:

1. The first schedule lays out the liquidity impact from the Accounts Payable line item
    a. The first item on the schedule is straightforward: simply positive liquidity impact due to growth in the AP, starting at 0 and then building up terms ($109mm in the first month, etc.)
    b. The second impact ($40mm in February) is what we had articulated on the call, namely, the way the model adjusted for the assumption of this new AP works as follows:
        i. NewCo receives the associated benefit of the $166mm AP assumption through receipt of $166mm of inventory in February
        ii. Because the NewCo model had previously modeled out all inventory requirements for the projected months/years, receiving the additional $166mm of inventory through the assumption of the AP would give NewCo an extra $166mm of inventory than it needed. Consequently, NewCo was able to "swap" out $166mm of previously modeled inventory on worse terms (i.e. 10 days out the gate), for $166mm of newly assumed inventory for better terms, to be paid out over 3 months (see accompanying schedule)
        iii. The impact of this "swap" is $40mm of liquidity increase in the first month, as only $126mm of the $166mm needs to be paid out in February, with the remaining portion burning over March and April as a cash outflow ($31mm in March and $8mm in April)
    c. Taking items 'a' and 'b' together (i.e. change in AP and the benefit/cost of the assumed $166mm), there is an overall positive liquidity impact of $148mm in Feb from the overall AP line item
2. The second schedule has the Occupancy Costs which are flowing through the model for 2019. As noted, this figure of $213mm includes all property taxes which will be due for the 425 stores of NewCo over 2019. The $135mm figure from the company is an accrued number, but it being paid out as due and is current. NewCo will then pick up the 2019 tab

Thanks,
Josh

Josh Gruenbaum | T 212.883.8358 | M 201.410.9782

---

**From:** Britton, Robert [mailto:rbritton@paulweiss.com]
**Sent:** Friday, January 25, 2019 4:18 PM
**To:** Murphy, Cullen; O'Neal, Sean A.
**Cc:** Weaver, Andrew; Waldman, Adam; Gruenbaum, Josh; DStogsdill@alvarezandmarsal.com; Grossi, Nick
**Subject:** RE: [EXT] RE: liquidity analysis

I believe there was some follow-up from this morning's call that we're still waiting for. What's the status of that?

**Bob Britton** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3615 (Direct Phone) | +1 815 978 3205 (Cell)
+1 212 492 0615 (Direct Fax)
rbritton@paulweiss.com | www.paulweiss.com

---

**From:** Murphy, Cullen <Cullen.Murphy@moelis.com>
**Sent:** Thursday, January 24, 2019 11:14 PM
**To:** O'Neal, Sean A. <soneal@cgsh.com>; Britton, Robert <rbritton@paulweiss.com>
**Cc:** Weaver, Andrew <aweaver@cgsh.com>; Waldman, Adam <Adam.Waldman@moelis.com>; Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>; DStogsdill@alvarezandmarsal.com; Grossi, Nick <ngrossi@alvarezandmarsal.com>
**Subject:** RE: [EXT] RE: liquidity analysis

I would prefer 10:30 but could make either work.

Cullen


Sent with BlackBerry Work
(www.blackberry.com)

---

**From:** O'Neal, Sean A. <soneal@cgsh.com>
**Date:** Thursday, Jan 24, 2019, 9:10 PM
**To:** Britton, Robert <rbritton@paulweiss.com>
**Cc:** Weaver, Andrew <aweaver@cgsh.com>, Waldman, Adam <Adam.Waldman@moelis.com>, Murphy, Cullen <Cullen.Murphy@moelis.com>, Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>, DStogsdill@alvarezandmarsal.com <DStogsdill@alvarezandmarsal.com>, Grossi, Nick <ngrossi@alvarezandmarsal.com>
**Subject:** [EXT] RE: liquidity analysis

Here is the liquidity analysis. It was sent to UCC counsel earlier this evening given time constraints.

11 am work for me. Moelis team?

Sean

**Sean A. O'Neal**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: ichan@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2416 | F: +1 212 225 3999 | M: +1 917 324 8364
soneal@cgsh.com | clearygottlieb.com

---

**From:** Britton, Robert [mailto:rbritton@paulweiss.com]
**Sent:** Thursday, January 24, 2019 10:59 PM
**To:** O'Neal, Sean A. <soneal@cgsh.com>
**Cc:** Weaver, Andrew <aweaver@cgsh.com>; Waldman, Adam <Adam.Waldman@moelis.com>;
Murphy, Cullen <Cullen.Murphy@moelis.com>; Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>;
DStogsdill@alvarezandmarsal.com; Grossi, Nick <ngrossi@alvarezandmarsal.com>
**Subject:** RE: liquidity analysis

Copying A&M.   11 a.m.?   What's the status of the slides?

Bob Britton | Partner
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3615 (Direct Phone) | +1 815 978 3205 (Cell)
+1 212 492 0615 (Direct Fax)
rbritton@paulweiss.com | www.paulweiss.com

---

**From:** O'Neal, Sean A. <soneal@cgsh.com>
**Date:** Thursday, Jan 24, 2019, 19:35
**To:** Britton, Robert <rbritton@paulweiss.com>
**Cc:** Weaver, Andrew <aweaver@cgsh.com>, Waldman, Adam <Adam.Waldman@moelis.com>, Murphy,
Cullen <Cullen.Murphy@moelis.com>, Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>
**Subject:** liquidity analysis

You will be getting bates stamped updated liquidity analysis tonight.  Can you help us arrange a call
with A&M so that Moelis can walk them through it?

Sean

**Sean A. O'Neal**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: ichan@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2416 | F: +1 212 225 3999 | M: +1 917 324 8364
soneal@cgsh.com | clearygottlieb.com

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

Disclaimer: Click here for important information about Moelis & Company and this e-mail.

# Exhibit I-1

CONFIDENTIAL
NOT FOR DISTRIBUTION

# Project Transform – *A&M Follow-Up*

CONFIDENTIAL
NOT FOR DISTRIBUTION

# Disclaimer

This presentation has been prepared by ESL Investments ("ESL") based on confidential information provided by the Company and publicly available information. ESL and its representatives have not assumed any responsibility for independently verifying the information herein, ESL and its representatives make no representation or warranty as to the accuracy, completeness or reasonableness of the information herein and ESL and its representatives disclaim any liability with respect to the information herein. This presentation may include projections, forecasts or other forward-looking statements with respect to the Company and there can be no assurance as to ESL's or the Company's future performance. This presentation speaks only as of its date, and ESL and its representatives assume no obligation to update it or to advise any person that any of its conclusions has changed.

The assessments of Sears situation and the proposal described in this document are solely an expression of ESL's views. Sears has not approved or endorsed this document. Any action or response of Sears in connection with the items discussed in this presentation will require prior review and approval by Sears' Board, the Restructuring Sub-Committee, the Special Committee and/or the Related Party Committee. There can be no assurance that any action will be taken in response to ESL's proposals contained herein, and any action plan that is adopted could vary materially from the proposals described in this document.

This presentation is solely for informational purposes. This presentation is not intended to provide the basis for any decision on any transaction. The recipient should make its own independent business and legal decisions based on all other information, advice and the recipient's own judgment. **This presentation is not an offer to sell or a solicitation of an indication of interest to purchase any security, option, commodity, future, loan or currency. It is not a commitment to underwrite any security, to loan any funds or to make any investment.**

CONFIDENTIAL
NOT FOR DISTRIBUTION

# *Financial Overview*
# Accounts Payable Schedule

## Change in Accounts Payable

| ($ in Millions) | Closing | Feb-2019 | Mar-2019 | Apr-2019 | May-2019 | Jun-2019 | Jul-2019 | Aug-2019 | Sep-2019 | Oct-2019 | Nov-2019 | Dec-2019 | Jan-2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Accounts Payable | - | 109 | 172 | 158 | 219 | 318 | 362 | 402 | 463 | 328 | 484 | 642 | 410 |
| Change in Accounts Payable | | 109 | 64 | (15) | 61 | 99 | 44 | 40 | 61 | (136) | 156 | 158 | (232) |
| | | | | | | | | | | | | | |
| Inventory Received (Cash Benefit) | | 166 | - | - | - | - | - | - | - | - | - | - | - |
| Cash Payout Associated with Inventory Received  (AP Assumption) | | (126) | (31) | (8) | - | - | - | - | - | - | - | - | - |
| *Liquidity Impact Associated with AP Assumption* | | *40* | *(31)* | *(8)* | - | - | - | - | - | - | - | - | - |
| **Total Liquidity Impact** | | **$148** | **$32** | **($23)** | **$61** | **$99** | **$44** | **$40** | **$61** | **($136)** | **$156** | **$158** | **($232)** |

## Additional Accounts Payable Cash Flow Schedule

| ($ in Millions) | Assumed Liability at Closing | Feb-2019 | Mar-2019 | Apr-2019 | May-2019 | Jun-2019 | Jul-2019 | Aug-2019 | Sep-2019 | Oct-2019 | Nov-2019 | Dec-2019 | Jan-2020 | FY2019 | Ending Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A/P for Post Close Inventory[1] | 166 | (126) | (31) | (8) | - | - | - | - | - | - | - | - | - | (166) | - |
| **Total** | **$166** | **($126)** | **($31)** | **($8)** | - | - | - | - | - | - | - | - | - | **($166)** | - |

1.    AP payment schedule assumptions from Company

[ 2 ]

CONFIDENTIAL
NOT FOR DISTRIBUTION

## *Financial Overview*
# Property Tax Schedule

| ($ in Millions) | Feb-2019 | Mar-2019 | Apr-2019 | May-2019 | Jun-2019 | Jul-2019 | Aug-2019 | Sep-2019 | Oct-2019 | Nov-2019 | Dec-2019 | Jan-2020 | 2019 PF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Occupancy Costs[1] | 18 | 20 | 16 | 17 | 19 | 17 | 17 | 19 | 18 | 17 | 17 | 19 | 213 |
| **Total** | **$18** | **$20** | **$16** | **$17** | **$19** | **$17** | **$17** | **$19** | **$18** | **$17** | **$17** | **$19** | **$213** |

1.    Occupancy costs include property taxes, rent, CAM and other

# Exhibit J

| | |
|---|---|
| **From:** | Chris Good |
| **To:** | Murphy, Cullen |
| **Cc:** | Gruenbaum, Josh; Hachem, Alaa; Waldman, Adam; Brian Griffith |
| **Subject:** | RE: [EXT] Re: $166M AP Assumption |
| **Date:** | Saturday, January 26, 2019 12:40:54 PM |
| **Attachments:** | RE Project Blue - Admin Claims.msg |
| | RE Current and Projected AP Balances.msg |
| | RE Current and Projected AP Balances.msg |

I'm not sure how the understanding of the $166mm came to be that it was all merch on your side. Looking back at emails, it makes no sense. Please see attached.

Email 1 – Brandon sent you a doc that showed the $166mm being $111mm merch and $55mm non-merch on 1/2 which Josh confirmed received and forwarded to me
Email 2 – email I forwarded from Nick showing updated non-merch of $49mm on 1/14 and was asked by Weil to ensure you had the info, which Cullen responded to
Email 3 – Clayton sent you a detailed breakdown of AP by vendor which clearly labels vendors Merch or Non-Merch which shows $49mm of non-merch

How did this get interpreted differently? This seems black and white from a business deal perspective.

_____
Christopher A. Good
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O:  212.716.1497
M: 252.714.2092
cgood@miiipartners.com

---

**From:** Murphy, Cullen [mailto:Cullen.Murphy@moelis.com]
**Sent:** Saturday, January 26, 2019 12:06 PM
**To:** Chris Good <cgood@miiipartners.com>
**Cc:** Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>; Hachem, Alaa <Alaa.Hachem@moelis.com>; Waldman, Adam <Adam.Waldman@moelis.com>; Brian Griffith <bgriffith@miiipartners.com>
**Subject:** RE: [EXT] Re: $166M AP Assumption

These numbers came from Weil and we believe they consulted with MIII in preparing them but weren't pet of that discussion so can't say for sure.

Cullen

Sent with BlackBerry Work
(www.blackberry.com)

**From:** Chris Good <cgood@miiipartners.com>
**Date:** Saturday, Jan 26, 2019, 9:28 AM
**To:** Murphy, Cullen <Cullen.Murphy@moelis.com>
Cc: Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>, Hachem, Alaa <Alaa.Hachem@moelis.com>,
Waldman, Adam <Adam.Waldman@moelis.com>, Brian Griffith <bgriffith@miiipartners.com>
**Subject:** [EXT] Re: $166M AP Assumption

Where did the $278mm come from?

On Jan 26, 2019, at 8:58 AM, Murphy, Cullen <Cullen.Murphy@moelis.com> wrote:

> Kunal had the same understanding as myself, ie that the full A/P was backed by
> merchandise inventory to be delivered post close. We spoke to Cleary and our
> understanding of the APA is that the Company has to deliver ordered inventory at close.
> The schedule 1.1(f) attached to the APA indicates $166mm of ordered inventory which only
> really makes sense if one is thinking about this the way Kunal was. The reference to
> inventory in the table clearly indicates that this was intended to be goods (merch) and the
> $166mm clearly aligns with the $166mm of A/P to be assumed.
>
> Table below, let us know what you think the next steps, if any, are here.
>
> <image001.png>
>
> Cullen Murphy
> MOELIS & COMPANY
> 399 Park Avenue, 5th Floor
> New York, NY 10022
> T 212-883-4238
> M 646-416-4991
> cullen.murphy@moelis.com
> www.moelis.com

**From:** Chris Good [mailto:cgood@miiipartners.com]
**Sent:** Friday, January 25, 2019 11:53 PM
**To:** Murphy, Cullen
**Cc:** Gruenbaum, Josh; Hachem, Alaa
**Subject:** [EXT] Re: $166M AP Assumption

It's going to be the full $166mm. I'd assume the $111mm and $55mm in the
spreadsheet provided.

On Jan 25, 2019, at 9:54 PM, Murphy, Cullen <Cullen.Murphy@moelis.com> wrote:

> Just making sure you noticed that you sent this to us.
>
> Can you tell us what you anticipate being the A/P you would deliver at close
> (merch and non-merch) and the value of the inventory associated with that?
> Just trying to dimensionalize this for people on our end.
>
> Thanks,
>
> Cullen Murphy

MOELIS & COMPANY

399 Park Avenue, 5th Floor
New York, NY 10022
T 212-883-4238
M 646-416-4991
cullen.murphy@moelis.com
www.moelis.com

**From:** Chris Good [mailto:cgood@miiipartners.com]
**Sent:** Friday, January 25, 2019 8:39 PM
**To:** Murphy, Cullen
**Cc:** Gruenbaum, Josh; Hachem, Alaa
**Subject:** [EXT] Re: $166M AP Assumption

Jonah -

There is a dispute over this topic. Moelis is working through it with Kunal and Cleary. We'll circle back once we hear more.

Best,
Chris

On Jan 25, 2019, at 7:33 PM, Murphy, Cullen
<Cullen.Murphy@moelis.com> wrote:

> I thought the non-merch was CIA stuff. This is just the A/P assumed. My understanding was that this all had inventory backing it but I can check with Kunal and see if he had a different view.
>
> Can you give me a call on my cell when you have a chance?
>
> Cullen Murphy
> MOELIS & COMPANY
> 399 Park Avenue, 5th Floor
> New York, NY 10022
> T 212-883-4238
> M 646-416-4991
> cullen.murphy@moelis.com
> www.moelis.com
>
> **From:** Chris Good [mailto:cgood@miiipartners.com]
> **Sent:** Friday, January 25, 2019 7:29 PM
> **To:** Murphy, Cullen
> **Cc:** Gruenbaum, Josh; Hachem, Alaa
> **Subject:** [EXT] Re: $166M AP Assumption
>
> Ok - but some of that's non merch etc. Not all of it will have inventory delivered post close but there will be a significant amount - especially the on the water of $70mm plus all the domestic. You're not saying that if $1 worth doesn't have

inventory backing it that you're not taking it right? Just need to confirm the business deal.

On Jan 25, 2019, at 7:26 PM, Murphy, Cullen <Cullen.Murphy@moelis.com> wrote:

> I think this is just a misunderstanding on A&M's part. I don't think it's a drafting issue but not sure what in the bid Jonah is referencing. NewCo is assuming A/P up to 166mm with the inventory backing that up to be delivered post close.
>
> Cullen Murphy
> MOELIS & COMPANY
> 399 Park Avenue, 5th Floor
> New York, NY 10022
> T 212-883-4238
> M 646-416-4991
> cullen.murphy@moelis.com
> www.moelis.com
>
> ---
>
> **From:** Chris Good [mailto:cgood@miiipartners.com]
> **Sent:** Friday, January 25, 2019 7:18 PM
> **To:** Gruenbaum, Josh; Murphy, Cullen
> **Subject:** [EXT] Fwd: $166M AP Assumption
>
> Gents - this sounds like a drafting issue...
>
> Can you confirm that you're taking $166mm of AP full stop? We will give you by vendor just like we did before.
>
> Thanks,
> Chris
>
> Begin forwarded message:
>
>> **From:** "Galaz, Jonah" <jgalaz@alvarezandmarsal.com>
>> **Date:** January 25, 2019 at 6:33:01 PM EST
>> **To:** Brian Griffith <bgriffith@miiipartners.com>, Chris Good <cgood@miiipartners.com>
>> **Cc:** "Stogsdill, Dennis" <DStogsdill@alvarezandmarsal.com>,

"Grossi, Nick"
<[ngrossi@alvarezandmarsal.com](mailto:ngrossi@alvarezandmarsal.com)>,
"Corio, Brian"
<[BCORIO@alvarezandmarsal.com](mailto:BCORIO@alvarezandmarsal.com)>,
"Gasbarra, Andrew"
<[agasbarra@alvarezandmarsal.com](mailto:agasbarra@alvarezandmarsal.com)>

**Subject: $166M AP Assumption**

Brian and Chris,

Can you catch up in 15 minutes on the $166M AP liability assumption? We are concerned about the way the bid reads and how ESL's projections are treating AP at close. It essentially seems as though they aren't picking up any exiting AP and are just taking inventory which hasn't yet arrived at the Company. Just want to talk through.

Thanks,
Jonah

Jonah Galaz
Alvarez & Marsal North America, LLC
540 West Madison, 18th Floor
Chicago, IL 60661
Cell: (312) 442-2668
[www.alvarezandmarsal.com](http://www.alvarezandmarsal.com)

*This message is intended only for the use of the addressee(s) and may contain information that is PRIVILEGED and CONFIDENTIAL. If you are not the intended recipient(s), you are hereby notified that any dissemination of this communication is strictly prohibited.*
*If you have received this communication in error, please erase all copies of the message and its attachments and notify us*

*immediately.*
*Your email address and contact*
*information will be stored within*
*A&M's Customer Relationship*
*Management platforms (CRM)*
*and Communication Management*
*Systems and may be used by A&M*
*for lawful business purposes. A&M*
*does not share or sell your contact*
*information. Details about how we*
*use your information and your*
*rights are contained within our*
*Privacy Policy (click* here *to view*
*our Privacy Policy).*

This message contains information which
may be confidential and privileged. Unless
you are the intended addressee (or
authorized to receive for the intended
addressee), you may not use, copy or disclose
to anyone the message or any information
contained in the message. If you have
received the message in error, please advise
the sender by reply email or by calling 212-
716-1491 and delete the message.

This message contains information which may be confidential
and privileged. Unless you are the intended addressee (or
authorized to receive for the intended addressee), you may not
use, copy or disclose to anyone the message or any information
contained in the message. If you have received the message in
error, please advise the sender by reply email or by calling 212-
716-1491 and delete the message.

Disclaimer: Click here for important
information about Moelis & Company and
this e-mail.

This message contains information which may be confidential
and privileged. Unless you are the intended addressee (or
authorized to receive for the intended addressee), you may not
use, copy or disclose to anyone the message or any information
contained in the message. If you have received the message in
error, please advise the sender by reply email or by calling 212-
716-1491 and delete the message.

This message contains information which may be confidential and privileged.
Unless you are the intended addressee (or authorized to receive for the intended
addressee), you may not use, copy or disclose to anyone the message or any
information contained in the message. If you have received the message in error,

please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to

receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

# Exhibit J-1

| | |
|---|---|
| **From:** | Gruenbaum, Josh <Josh.Gruenbaum@moelis.com> |
| **Sent:** | Wednesday, January 2, 2019 3:10 PM |
| **To:** | Chris Good |
| **Subject:** | RE: Project Blue - Admin Claims |
| **Attachments:** | Project Blue - Admin Claims (1.1.2018)vFinal.pdf |

Attached

_____
Josh Gruenbaum | T 212.883.8358 | M 201.410.9782

-----Original Message-----
From: Chris Good [mailto:cgood@miiipartners.com]
Sent: Wednesday, January 02, 2019 3:09 PM
To: Gruenbaum, Josh
Subject: [EXT] FW: Project Blue - Admin Claims

Can you forward me which version was sent to you? Thx

-----Original Message-----
From: Mohsin Meghji
Sent: Wednesday, January 2, 2019 11:38 AM
To: Waldman, Adam <Adam.Waldman@moelis.com>; Aebersold, Brandon <brandon.aebersold@lazard.com>
Cc: Quaintance, Levi <levi.quaintance@lazard.com>; Murphy, Cullen <Cullen.Murphy@moelis.com>; Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>; Chris Good <cgood@miiipartners.com>
Subject: RE: Project Blue - Admin Claims

Chris and Levi best people to follow up with

Regards, Mo

Mo Meghji
M-III Partners, LP
212 716 1492 (o)

-----Original Message-----
From: Waldman, Adam [mailto:Adam.Waldman@moelis.com]
Sent: Wednesday, January 2, 2019 11:37 AM
To: Aebersold, Brandon <brandon.aebersold@lazard.com>
Cc: Quaintance, Levi <levi.quaintance@lazard.com>; Mohsin Meghji <mmeghji@miiipartners.com>; Murphy, Cullen <Cullen.Murphy@moelis.com>; Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>
Subject: RE: Project Blue - Admin Claims

Thank you.

We will obviously want to see the underlying detail that builds up to these numbers.

We will also want to understand how these numbers change in a non-going concern scenario.

_____
Adam Waldman
MOELIS & COMPANY
399 Park Avenue, 5th Floor |New York, NY 10022
T   212.883.3676 |M  732.598.7554
adam.waldman@moelis.com
www.moelis.com


-----Original Message-----
From: Aebersold, Brandon [mailto:brandon.aebersold@lazard.com]
Sent: Wednesday, January 02, 2019 3:04 AM
To: Waldman, Adam
Cc: Quaintance, Levi; Mohsin (Mo) Y. Meghji
Subject: [EXT] Project Blue - Admin Claims

Subject to FRE 408. See below draft of admin claims, excluding dip financing. Feel free to reach out to M3 if you'd like to discuss.

Disclaimer: Click here<https://urldefense.proofpoint.com/v2/url?u=http-3A__www.moelis.com_SitePages_EmailDisclaimer.aspx_&d=DwIGaQ&c=6ldJ3EG4a4nVimLYnfpfYA&r=xG0zSIc035Dbd4QDYkT_3A&m=Wrpy202iUxgS5IjSNQUAAJmT6MGdmurvdkcC2goa58E&s=yHHH2x1GEphZ5Ov1_NJSZCkMXOx3oBbxG-x-cVKg10s&e= > for important information about Moelis & Company and this e-mail.


This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.


This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.


This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

# Exhibit J-1a

# Project Blue - Admin Claims (ESL Bid)

*($ in millions)*

| Estimated Outstanding Administrative Claims as of 2/9/19 [1] | |
|---|---:|
| 503(b)(9) Claims [2] | 139 |
| Merch AP [3] | 111 |
| Non-Merch AP [4] | 55 |
| Severance [5] | 35 |
| WARN [6] | 18 |
| Franchise Taxes [7] | 3 |
| Property Taxes [8] | 135 |
| Employee Claims [9] | 8 |
| RemainCo Winddown Costs [10] | 80 |
| **Total** | **$583** |

[1] Carve-out reserve is funded with $87mm including $22mm of success fees plus accrued professional fees of $65mm

[2] $172mm of 503(b)(9) claims as of 12/27/18 less $33mm of critical vendor payment offsets

[3] Based on DIP budget projection

[4] Assumes current balance remains constant

[5] Includes $7mm total TPP for 80 store closures plus 10 weeks of severance per employee for RIFs scheduled in January 2019

[6] Includes $5mm remaining WARN for 80 store closures, plus remaining WARN for RIFs scheduled in January 2019

[7] Estimated franchise taxes to be funded in cash

[8] Balances as of December 2018 ending balance sheet (net against prepaid amount) reduced by $21mm paid in DIP budget

[9] $110mm of employee claims included in first day wages motion and paid in operating budget; remaining claims are related to prepetition severance up to $12k cap

[10] Includes $20mm POR filing costs, $25mm WindDownCo operating expenses and $35mm litigation contingency

# Exhibit J-2

| | |
|---|---|
| **From:** | Murphy, Cullen |
| **To:** | Chris Good; Waldman, Adam; Gruenbaum, Josh |
| **Cc:** | Project_Blue_BP; Nicholas Weber; Hachem, Alaa; Wechsler, Isabelle |
| **Subject:** | RE: Current and Projected AP Balances |
| **Date:** | Wednesday, January 16, 2019 10:42:45 AM |

Could we get – for the $166mm of A/P being assumed, a breakdown of when that has to be paid by month starting at close?

Trying to get the model updated this morning and challenging to allocate the spreadsheet you sent by month for only the $166mm unless we're missing something

Thanks,

Cullen Murphy
MOELIS & COMPANY
399 Park Avenue, 5th Floor
New York, NY 10022
T 212-883-4238
M 646-416-4991
cullen.murphy@moelis.com
www.moelis.com

**From:** Chris Good [mailto:cgood@miiipartners.com]
**Sent:** Monday, January 14, 2019 11:36 PM
**To:** Waldman, Adam; Gruenbaum, Josh; Murphy, Cullen
**Cc:** Project_Blue_BP; Nicholas Weber
**Subject:** [EXT] FW: Current and Projected AP Balances

Gents – have been asked to ensure that you have detail on the AP by vendor along with the forecast of $196mm. Please let us know if you have any questions.

Thanks,
Chris

_____

Christopher A. Good
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O:  212.716.1497
M: 252.714.2092
cgood@miiipartners.com

**From:** Nicholas Weber
**Sent:** Monday, January 14, 2019 11:20 PM
**To:** Odoner, Ellen <ellen.odoner@weil.com>; Munz, Naomi <Naomi.Munz@weil.com>; Brian Griffith <bgriffith@miiipartners.com>; Colin M. Adams <cadams@miiipartners.com>; Chris Good <cgood@miiipartners.com>
**Cc:** Clayton Stoker <cstoker@miiipartners.com>

**Subject:** Current and Projected AP Balances

Please see the attached files for the current AP balances and projected AP balances.

**CURRENT AP BALANCES**

<u>DAPP 1-14-19</u> – File includes both merch and non-merch AP as of 1-14-19 for a total of $145.6mm (merch equals $96.6mm and non-merch equals $49.0mm)

<u>Import AP 1-14-19</u> – File includes current merch AP from foreign vendors equal to $24.7mm

Total AP between domestic and import :
- Merch: $121.3mm
- Non-Merch: $49.0mm
- Total: $170.3mm

**FORECAST AP BALANCES AS OF 2/9/19**

<u>Merch and Non-Merch AP Backup (1.14.19)</u> - Includes roll-forward of merch and non-merch AP based on Company projections. Merchandise forecast based on beginning balance as of 1/13/19 as well as Company's expectation of inventory receipts and merchandise disbursements. Non-merch disbursements forecast assumes Company accrues expenses 14 days in advance of projected cash disbursements.

Regards,
Nick

Nick Weber
M-III Partners, LP
(914) 620-5588

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

Disclaimer: Click here for important information about Moelis & Company and this e-mail.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

# Exhibit J-3

| | |
|---|---|
| **From:** | Clayton Stoker |
| **To:** | Gruenbaum, Josh; Waldman, Adam; Murphy, Cullen |
| **Cc:** | Project_Blue_BP; Chris Good; Nicholas Weber |
| **Subject:** | RE: Current and Projected AP Balances |
| **Date:** | Wednesday, January 16, 2019 4:28:19 PM |
| **Attachments:** | AP DAPP File Detail (1.16.2019).xlsx |

Moelis team,

Please find attached the detailed AP payment schedule backup. It does not tie exactly to the $166 number but should be representative of the spread. Let us know if you have any questions.

Best,

**Clayton Stoker**
M-III Partners, LP
130 West 42nd Street - 17th Floor
New York, New York 10036
Cell:  618-340-6545
Office:  212-430-2057
cstoker@miiipartners.com

---

**From:** Gruenbaum, Josh <Josh.Gruenbaum@moelis.com>
**Sent:** Monday, January 14, 2019 11:43 PM
**To:** Chris Good <cgood@miiipartners.com>; Waldman, Adam <Adam.Waldman@moelis.com>;
Murphy, Cullen <Cullen.Murphy@moelis.com>
**Cc:** Project_Blue_BP <project_blue_bp@miiipartners.com>; Nicholas Weber
<nweber@miiipartners.com>
**Subject:** RE: Current and Projected AP Balances

Thanks

---

**From:** Chris Good [mailto:cgood@miiipartners.com]
**Sent:** Monday, January 14, 2019 11:36 PM
**To:** Waldman, Adam; Gruenbaum, Josh; Murphy, Cullen
**Cc:** Project_Blue_BP; Nicholas Weber
**Subject:** [EXT] FW: Current and Projected AP Balances

Gents – have been asked to ensure that you have detail on the AP by vendor along with the forecast
of $196mm. Please let us know if you have any questions.

Thanks,
Chris

_____
**Christopher A. Good**
M-III Partners
130 West 42nd Street, 17th Floor
New York, New York 10036
O:  212.716.1497

M: 252.714.2092
cgood@miiipartners.com

---

**From:** Nicholas Weber
**Sent:** Monday, January 14, 2019 11:20 PM
**To:** Odoner, Ellen <ellen.odoner@weil.com>; Munz, Naomi <Naomi.Munz@weil.com>; Brian Griffith
<bgriffith@miiipartners.com>; Colin M. Adams <cadams@miiipartners.com>; Chris Good
<cgood@miiipartners.com>
**Cc:** Clayton Stoker <cstoker@miiipartners.com>
**Subject:** Current and Projected AP Balances

Please see the attached files for the current AP balances and projected AP balances.

**CURRENT AP BALANCES**

<u>DAPP 1-14-19</u> – File includes both merch and non-merch AP as of 1-14-19 for a total of $145.6mm
(merch equals $96.6mm and non-merch equals $49.0mm)

<u>Import AP 1-14-19</u> – File includes current merch AP from foreign vendors equal to $24.7mm

Total AP between domestic and import :
-   Merch: $121.3mm
-   Non-Merch: $49.0mm
-   Total: $170.3mm

**FORECAST AP BALANCES AS OF 2/9/19**

<u>Merch and Non-Merch AP Backup (1.14.19)</u> - Includes roll-forward of merch and non-merch AP
based on Company projections. Merchandise forecast based on beginning balance as of 1/13/19 as
well as Company's expectation of inventory receipts and merchandise disbursements. Non-merch
disbursements forecast assumes Company accrues expenses 14 days in advance of projected cash
disbursements.

Regards,
Nick



Nick Weber
M-III Partners, LP
(914) 620-5588

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

Disclaimer: Click here for important information about Moelis & Company and this e-mail.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

This message contains information which may be confidential and privileged. Unless you are the intended addressee (or authorized to receive for the intended addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email or by calling 212-716-1491 and delete the message.

# Exhibit J-3a

[FILED UNDER SEAL
PURSUANT TO 7/2/19
ORDER DOCKET #4420]