**UNITED STATES BANKRUPT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 18023538 (RDD)<br><br>Jointly Administered |
| TRANSFORM HOLDCO LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>SEARS HOLDINGS CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 19-_____ (RDD) |

**ADVERSARY COMPLAINT**

Plaintiff Transform Holdco LLC (the "Buyer" or "Transform"), the buyer under a certain Asset Purchase Agreement, dated as of January 17, 2019, by and among Sears Holdings Corporation ("SHC" or "Sears"), each of SHC's subsidiaries party thereto (together with SHC, the "Sellers," and all together with Transform, the "Parties"), and Transform (as may be amended, restated, supplemented or modified from time to time, the "APA"),[1] by and through its attorneys, Cleary Gottlieb Steen & Hamilton LLP, files this adversary complaint pursuant to 11 U.S.C. § 105, 28 U.S.C. § 2201, and Rule 7001 of the Federal Rules of Bankruptcy Procedure against the

---

[1] The APA refers to the Asset Purchase Agreement filed as Ex. B to the Order (I) Approving the Asset Purchase Agreement among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection therewith and (IV) Granting Related Relief [Docket No. 2507] (the "Sale Order"), as amended by the Amendment No. 1 to Asset Purchase Agreement filed as Ex. E to the Notice of Filing Executed (I) Employee Lease Agreement, (II) Services Agreement, and (III) Amendment No. 1 to the Asset Purchase Agreement [Docket No. 2599] (the "Notice of Filing of Amendment No. 1 to the APA"). All capitalized terms used but not defined herein shall have the meaning ascribed to them in the APA.

Sellers that are currently Debtors in this Chapter 11 proceeding (the "Defendants")[2] and alleges as follows:

## NATURE OF THE ACTION

1.     Transform brings this adversary complaint against Defendants to address a breach of contract in contravention of the APA and this Court's Sale Order authorizing the sale of substantially all of the Defendants' assets to Transform (the "Sale Transaction"). The Defendants' course of conduct has violated the Court's Sale Order and deprived Transform of bargained-for assets. Prompt resolution of the dispute raised in this Complaint is important not only to Transform but also to the administration of the estates as the Defendants seek to confirm a Chapter 11 plan.[3]

2.     Transform's parent company, ESL Investments, Inc. ("ESL"), was Sears' largest shareholder and creditor prior to these bankruptcy proceedings, in large part due to its longstanding

---

[2]    The Defendants in this Adversary Proceeding are the following Debtors in this Chapter 11 proceeding (stated along with the last four digits of each Debtor's federal tax identification number): Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).

[3]    On May 25, 2019, Transform commenced an action, *Transform Holdco LLC v. Sears Holdings Corp., et al.*, Adv. Pro. 19-08262, against Sears for numerous breaches of the APA. Those breaches are independent of that pled here and, at the time that action was commenced Defendants were hopeful that the issue presented here would not ripen into a dispute. Unfortunately, Debtors have failed to respond to Transform's complaints. *See* Ex. C; Ex. D. Accordingly, Transform is compelled to bring this action.

efforts to provide Sears with a path towards growth and success in a period of unprecedented upheaval for the retail sector in America.

3. Consistent with its more than 15-year commitment to Sears and Kmart, ESL from the outset of these Chapter 11 proceedings was the only bidder to submit a viable going-concern bid for substantially all of the Defendants' assets. Transform's final winning bid of $5.2 billion represented the only going-concern bid for substantially all of Sears' assets. Defendants selected Transform's bid as the highest and best, and the Court ruled that this sale was in the best interests of all stakeholders, including the Defendants' estates and their creditors.

4. Through much effort by all the Parties, the APA was structured to balance the Defendants' concerns about administrative solvency and certainty of meeting Closing conditions with Transform's need for assurances that Sears would continue operating in the ordinary course pending the sale and deliver a going concern with the necessary assets and liquidity.

5. All that effort has been for naught. The Defendants have continuously violated the APA by attempting to force Transform to assume liens and accounts payable that it did not agree to assume, failing to deliver the required amount of prepaid inventory and specified receivables under the APA, as well as transfer title to certain real property located in Hoffman Estates, the Hoffman Estates EDA Funds, and adequate assurance deposits, each of which is the subject of the adversary proceeding *Transform Holdco LLC v. Sears Holdings Corp., et al.*, Adv. Pro. 19-08262. Defendants' latest violation is the subject of this action. Defendants have failed to deliver deeds to two parcels of land which, along with several other parcels – all of which have been transferred to Transform – are related to a Sears retail store located in Brooklyn, New York and which Transform is owed under the terms of the APA.

6. The Defendants' misconduct has harmed Transform by depriving it of assets that it contracted to purchase under the APA. Transform has attempted in good faith to resolve this dispute with the Defendants. However, Defendants have remained intent on obstructing the performance under the APA to which Transform is entitled without articulating any grounds for their failure to comply with the agreement, instead apparently attempting to use this dispute as leverage in a separate, ongoing dispute stemming from the APA. In their most recent response to Transform's request that the deeds be delivered, Defendants provided the curt answer, without further explanation, "I don't think there is anything to discuss."

7. Transform therefore brings this Adversary Complaint to preserve and vindicate its serious claims against the Defendants.

## JURISDICTION AND VENUE

8. On October 15, 2018 (the "Petition Date"), the Defendants filed the above-captioned bankruptcy case under Chapter 11 of the United States Code (the "Bankruptcy Code"). This adversary proceeding arises from and is related to this Chapter 11 proceeding currently pending in this Court.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

10. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

11. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12. This is an adversary proceeding brought pursuant to Rule 7001(1) and (9) of the Federal Rules of Bankruptcy Procedure.

## THE PARTIES

13.     Transform is a limited liability company established under the laws of the State of Delaware for the purpose of purchasing and operating the go-forward Sears and Kmart businesses as purchased from the Defendants pursuant to the APA and the Sale Order.

14.     Transform is a subsidiary of non-party ESL, which was Sears' largest shareholder and creditor as of the Petition Date. ESL was founded in 1988 by non-party Edward S. Lampert. ESL purchased a controlling stake in Kmart in 2003, and Kmart and Sears merged in March 2005 to form SHC. Following the merger, Lampert became Chairman of SHC's Board of Directors. In February 2013, SHC's Board asked Lampert to become CEO, which Lampert remained until his resignation on the Petition Date. Lampert resigned as Chairman and Director of SHC on February 12, 2019, following the consummation of the Sale Transaction.

15.     The Defendants are the Sellers under the APA that are currently Debtors in this Chapter 11 proceeding. The Defendants operated a large retail business throughout forty-nine states, Guam, Puerto Rico, and the U.S. Virgin Islands. Among other things, the Defendants sold products in the appliance, tool, lawn and garden, fitness equipment, and automotive repair and maintenance sectors. As of the Petition Date, the Defendants operated 687 department stores, mainly based in shopping malls, as well as big-box discount stores, under the brand names Sears and Kmart.

## FACTUAL BACKGROUND

16.     This dispute centers around two of seven parcels (the "fee ownership parcels") that comprise the land that was used by Sears or one of its subsidiaries to operate a Sears retail store in Brooklyn, New York (the "Brooklyn Store" or the "Store").

18. The Brooklyn Store property includes a single, large department store building, a Sears Auto Center facility and parking lots surrounding each of them. Of the seven parcels, Sears was the fee owner of two parcels, held leasehold rights for three parcels and enjoys rights through an arrangement with the City of New York with respect to the remaining two parcels (the "right of access parcels").

19. The Brooklyn Store building is located on the largest of the leasehold parcels; the remainder of that parcel is a parking lot. The surrounding four parcels are each used primarily, if not exclusively, as a parking lot for the Store. Across the street, the Sears Auto Center facility sits on another leasehold parcel, and behind it, another parcel is used as the parking lot for this facility.

20. One of the fee ownership parcels abuts the Store-occupied parcel and the two right of access parcels. Together, those parcels and one additional leasehold parcel form a large, undivided parking lot.

21. The second fee ownership parcel comprises the rear parking lot adjoined to a single leasehold parcel comprising the Sears Auto Center facility and its front parking lot. This Sears Auto Center facility is across the street from the larger parking lot and the Store building.

22. Attached as Exhibit A is a map showing the Brooklyn Store and related property, with the two fee-owned parcels highlighted in orange, as well as a satellite map of the parcels related to the Brooklyn store, showing the lack of visible divisions between the properties.

23. Under the APA, Defendants agreed to deliver, among other items, "all assets, properties and rights Related to the Business,"[4] including all the parcels comprising the Brooklyn Store property.

24. To date, Defendants have transferred all of their rights in the parcels comprising

---

[4] APA § 2.1.

-6-

the Brooklyn Store property except they failed to deliver deeds to the two fee-owned parcels following the Closing.

25. Section 2.1 of the APA provides that, on the Closing Date, the Defendants would "sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered" to Transform, and Transform would "purchase, all right, title and interest of Sellers, in, to or under all assets, properties and rights Related to the Business other than the Excluded Assets, *and* the following assets, properties and rights."[5]

26. Transform acquired title in each of the two fee-owned parcels that make up a portion of the parking lots surrounding the Brooklyn Store because those parcels are properties "Related to the Business other than the Excluded Assets" under Section 2.1.

27. Business is defined in the Recitals in the APA to include, among other things, "a national network of retail stores and pharmacies under the 'Sears' and 'Kmart' brands as conducted at the Operating Owned Properties and the Operating Lease Properties (as defined below) and the supporting general and administrative functions related to such retail stores."[6]

28. The Brooklyn Store is a Sears retail store.

29. Operating Lease Properties is defined in Article I of the APA as the "real property demised pursuant to an Operating Lease," which in turn is defined in the APA, in relevant part, as "leases or lease agreements (including ground leases) related to the real properties identified on Schedule 1.1(o) (together with all amendments, modifications, supplements and renewals thereof)."[7]

30. The ground lease associated with the Brooklyn Store is identified as Store Number

---

[5] APA § 2.1.
[6] APA Recitals.
[7] APA § 1.

-7-

1114 in Schedule 1.1(o) (the "Operating Leases").[8]  Accordingly, the Brooklyn Store is a part of the "Business" as defined in the APA.

31. The two fee-owned parcels are properties "Related" to the Brooklyn Store. "Related" is defined in Article I of the APA as "owned or held primarily by, required primarily for, or used, intended for use, leased or licensed, primarily in connection with, or (in the case of Liabilities) to the extent accrued, reserved or incurred in connection with, such business, asset or Liability."[9]

32. All of the parcels comprising the Brooklyn Store property, except for the portions of land that occupy the Store building and Sears Auto Center facility, serve as parking lots to ensure the Brooklyn Store's continued operation. Defendants do not dispute this.

33. The two fee ownership parcels are used "primarily in connection" with the adjoining parcels as parking for commercial and customer vehicles servicing or visiting the Brooklyn Store and Sears Auto Center facility. It is equally plain that the two parcels were "used" and "intended for use" in connection with the Brooklyn Store. The two fee ownership parcels are intermingled with, and indivisible from, the other parcels that together form two parking lots. In some cases, a single parking space spans two or three of the seven parcels as shown on the map attached as Exhibit A. The layout of the parcels suggests that they were all intended to be "used" together for the same purpose.

34. The APA does not contemplate, nor did any of the Parties ever suggest, dividing the parcels of land that make up the Brooklyn Store property or any properties Related to the transferred Business. The clear intent supporting Section 2.1 is to keep Business-Related properties together; nevertheless, Defendants insist on a piecemeal division of the properties

---

[8] APA Schedule 1.1(o).
[9] APA § 1.

-8-

Related to the Brooklyn Store, rendering the property and Defendants' performance obligations under the APA incomplete and jeopardizing Transform's use of the Brooklyn Store. But there is no basis in the APA to conclude that the fee-owned properties should be severed from the remainder of the Brooklyn Store property.

35. The only exclusion from the broad language in Section 2.1 is for "Excluded Assets." The two fee-owned parcels are Related to an Acquired Asset or Assigned Lease and, therefore, are not "Excluded Assets."

36. Lease is defined in Article I of the APA as "(i) the Initially Assigned Leases, and (ii) the Designatable Leases," the latter of which is defined, in relevant part, to include Operating Leases.[10]

37. The lease associated with the Brooklyn Store is operated under an Operating Lease as indicated by Schedule 1.1(o), and is thus a Designatable Lease and a Lease as defined in the APA.[11]

38. The Notice of Assumption and Assignment of Additional Designatable Leases, Docket No. 3298, lists the Brooklyn Store as a lease which has been designated for assumption and assignment to the Buyer. Accordingly, the Brooklyn Store Lease is an Acquired or Assigned Lease and the Related fee-owned parcels are not "Excluded Assets."

39. Thus, under Section 2.1 of the APA, Transform acquired title to the two fee-owned parcels as of the Closing Date as properties "Related to the Business."

40. In any event, even if the parcels comprising the Brooklyn Store property are not properties "Related to the Business" (they are), the second clause of Section 2.1, "and the following

---

[10] APA § 1.1.
[11] APA Schedule 1.1(o).

assets, properties and rights," also independently requires the transfer of the deeds to the two parcels to Transform.

41. Specifically, Section 2.1(cc) is one of a long list of assets that the Defendants agreed to "sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered" to Transform.[12] Section 2.1(cc) provides as follows: "any proceeds from the sale or other disposition of the collateral pledged to secure the applicable debt obligations with respect to the credit bids set forth in Section 3.1(b) to which the holders of Claims secured by such collateral has attached."[13]

42. Section 3.1(b)(i) provides that the credit bid will include "all outstanding obligations held by Buyer and its Affiliates as of the Closing Date under the IP/Ground Lease Term Loan Facility."[14]

43. Schedule 1.1(d) lists the Brooklyn Store as an IP/Ground Lease Property.

44. As of April 10, 2018, the mortgage under the IP/Ground Lease Term Loan Facility was amended to explicitly include the two fee-owned parcels. *See* Ex. B (describing in Exhibit A – Legal Description the parcels that are subject to the mortgage).

45. Therefore, under the APA, Sears could not benefit from the two fee-owned parcels, as the proceeds from any sale of the property would need to be transferred to Transform and, accordingly, Sears has no ownership interest in said parcels.[15]

46. Additionally, the bill of sale transferred Defendants' rights in all of the assets acquired by Transform. The two fee-owned parcels were included in the bill of sale; Defendants

---

[12] APA § 2.1
[13] APA § 2.1(cc).
[14] APA § 3.1(b)(i).
[15] APA § 2.1 (emphasis added).

must now deliver the deeds to record this transfer.

47. Defendants understood the intention was that the APA transfer properties in whole. Indeed, their actions with respect to the Brooklyn Store property have largely been consistent with that approach; Defendants have transferred all of their property rights in the parcels comprising the Brooklyn Store property except the two fee-owned parcels.

48. On May 23, 2019, Transform informed Defendants that they had not received the deeds to the two fee-owned parcels of land and requested that Defendants complete their performance and promptly transfer title to each parcel pursuant to the terms of the APA.

49. Transform repeatedly asked Defendants to further discuss the issue and try to resolve the matter out of court, but Defendants failed to engage in such discussions, and the attempts were to no avail.

50. By email and attached letter dated July 3, 2019, attached as Exhibit C, Transform set forth the sections of the APA and reasoning as to why Defendants were required to transfer the deeds to the two fee-owned parcels of land, invited Defendants to have a discussion, informed Defendants that if they did not commit to do so by July 8 Transform would be forced to bring the dispute to the attention of the Court, and invited Defendants to contact Transform. When that correspondence went unanswered, Transform again invited a conversation.

51. Defendants finally responded to Transform's emails and letter with a curt response declining a conversation and declining to deliver the deeds. In an email dated July 8, 2019 attached as Exhibit D, Defendants stated simply, "I don't think there is anything to discuss, but I'll let you know if that changes." To date, there has been no further response.

52. Defendants' conduct is a material breach of their obligations under Section 2.1 of the APA, and the breach has caused Transform irreparable injury for which specific performance

-11-

is the only adequate remedy.

53. Defendants have agreed that a breach of any provision of the APA constitutes irreparable harm to Transform warranting specific performance. Section 13.14 of the APA states:

> <u>Specific Performance</u>. The Parties acknowledge and agree that (a) irreparable injury, for which monetary damages, even if available, would not be an adequate remedy, will occur in the event that any of the provisions of this Agreement are not performed in accordance with the specific terms hereof or are otherwise breached, and (b) the non-breaching Party or Parties shall therefore be entitled, in addition to any other remedies that may be available, to obtain (without the posting of any bond) specific performance of the terms of this Agreement by the breaching Party or Parties. If any Proceeding is brought by the non-breaching Party or Parties to enforce this Agreement, the Party in breach shall waive the defense that there is an adequate remedy at Law.

54. The damages from the Defendants' failure to deliver the two deeds to the fee-owned parcels that are indivisible from the larger seven-parcel Brooklyn Store property, which Transform purchased in its entirety at Closing, are material and difficult to calculate, and therefore Transform is entitled to specific performance in the delivery of the entirety of the parcels comprising the Brooklyn Store property.

## GROUNDS FOR RELIEF

### COUNT ONE
(Breach of Contract)

55. Transform repeats and realleges each and every allegation contained in paragraphs 1 through 54 of this Complaint, as though fully set forth herein.

56. Defendants and Transform entered into the APA as of January 17, 2019. The APA is a valid, binding, and enforceable agreement between Defendants and Transform.

57. As established *supra*, Defendants' actions have breached Section 2.1 of the APA.

58. Pursuant to Section 2.1, Defendant was to "sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered" "all right, title and

interest of Sellers, in, to or under all assets, properties and rights Related to the Business," which includes the fee-owned parcels, to Transform.

59. Defendant failed to do so, and its breach has prevented Transform from enjoying the full benefit of its bargain.

60. Transform is therefore entitled to damages in an amount to be determined at trial, specific performance, or such other and further relief as the Court may deem just and proper.

## COUNT TWO
(Specific Performance)

61. Transform repeats and realleges each and every allegation contained in paragraphs 1 through 60 of this Complaint, as though fully set forth herein.

62. Defendants and Transform entered into the APA as of January 17, 2019. The APA is a valid, binding, and enforceable agreement between Defendants and Transform.

63. Pursuant to Section 2.1 of the APA, on the Closing Date, the Defendants were obligated to "sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered . . ." to Transform, and Transform would "purchase, all right, title and interest of Sellers, in, to or under all assets, properties and rights Related to the Business other than the Excluded Assets, and the following assets, properties and rights."

64. The Recitals in the APA define Business to include, in relevant part, "a national network of retail stores and pharmacies under the 'Sears' and 'Kmart' brands as conducted at the Operating Owned Properties and the Operating Lease Properties . . . and the supporting general and administrative functions related to such retail stores."

65. Operating Lease Properties is defined in Article I of the APA as the "real property demised pursuant to an Operating Lease," which in turn is defined in the APA, in relevant part as, "leases or lease agreements (including ground leases) related to the real properties identified on

Schedule 1.1(o) (together with all amendments, modifications, supplements and renewals thereof)."

66. The Brooklyn Store is a Sears retail store, and the lease associated with the Store is identified as Store Number 1114 in Schedule 1.1(o).

67. The fee-owned parcels fall within the category of assets, properties and rights Related to Business which Defendants were required to sell, and Transform was required to purchase, on the Closing Date.

68. Transform has performed its obligations under Section 2.1 of the APA, thereby acquiring title to the fee-owned parcels at the Closing.

69. However, the Defendants have breached their contractual obligations to deliver the deeds to these parcels.

70. The Defendants' breach of Section 2.1 of the APA has caused Transform irreparable injury and damages are difficult to calculate based on the Defendants' failure to deliver full title.

71. Specific performance is the only adequate remedy for the Defendants' refusal to comply with their obligations to transfer title to the fee-owned parcels.

72. Transform has a contractual remedy to specific performance pursuant to Section 13.14 of the APA. Pursuant to the plain terms of the APA, there is no adequate remedy at law for the Defendants' breach of Section 2.1 of the APA.

73. Accordingly, Transform seeks an order of specific performance requiring the Defendants to transfer title to the two fee-owned parcels that abut the Brooklyn Store pursuant to the terms of the APA.

## PRAYER FOR RELIEF

WHEREFORE, Transform respectfully demands judgment against Defendants, jointly and severally, as follows:

(a)     Awarding Transform specific performance requiring the Defendants to transfer title to each parcel that has not been previously transferred to Transform for the fee owned parcels abutting the Brooklyn Store;

(b)     Awarding Transform compensatory damages in an amount to be determined at trial;

(c)     Awarding Transform the legal fees and costs it has incurred in this action and otherwise enforcing its rights under the APA; and

(d)     Awarding Transform pre-judgement interest; and such other and further relief as this Court may deem just and proper.

Dated:  July 10, 2019
        New York, New York

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

*/s/ Lewis J. Liman*
Lewis J. Liman
Sean A. O'Neal
Luke A. Barefoot
Abena A. Mainoo
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

*Counsel for Transform Holdco LLC*