**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION, *et al*.,** | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |

# AFFIDAVIT OF PUBLICATION

I, Gregory R. DePalma, depose and say that I am employed by Prime Clerk LLC ("***Prime Clerk***"), the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

This Affidavit of Publication includes a sworn statement verifying that the *Notice of (I) Hearing on Confirmation of the Plan and Procedures for Objecting to Confirmation of the Plan; and Deadline for Voting on the Plan*, was published on July 10, 2019, in the National Edition of *The New York Times* as described on **Exhibit A** attached hereto.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Dated: July 12, 2019

Gregory R. DePalma

State of New York

County of New York

Subscribed and sworn to (or affirmed) before me on July 12, 2019, by Gregory R. DePalma, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: ______________________

JAMES A. MAPPLETHORPE
Notary Public, State of New York
No. 01MA6370846
Qualified in New York County
Commission Expires February 12, 2022

Pg 3 of 5

# **Exhibit A**

SRF 34243

The New York Times

620 8TH AVENUE • NEW YORK, NY 10018

# PROOF OF PUBLICATION

July 11 2019

I, Alice Weber, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

JUL 10 2019 B3 NATIONAL

Alice Weber

Sworn before me the 11th day of July 2019

Michelle M. Scibilia

Notary Public

MICHELLE M. SCIBILIA
Notary Public, State of New Yo[rk]
Registration #01SC6281145
Qualified In Nassau County
Commission Expires May 13, 202[illegible]

---

**UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION, *et al.*,** | : | **Case No. 18-23538 (RDD)** |
| **Debtors.[1]** | : | **(Jointly Administered)** |

**NOTICE OF (I) HEARING ON CONFIRMATION OF THE PLAN AND PROCEDURES FOR OBJECTING TO CONFIRMATION OF THE PLAN; AND (II) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN**

**PLEASE TAKE NOTICE** that:

1. **Approval of Disclosure Statement**. By order dated June 28, 2019 (ECF No.4392) (the "**Order**"), the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") approved the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") filed by Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") (ECF No. 4390). The Bankruptcy Court authorized the Debtors to solicit votes with regard to the approval or rejection of the *Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors*, dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Plan**"),[2] annexed as Exhibit A to the Disclosure Statement. Any capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan

2. **Confirmation Hearing**. A hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan will be held on **August 16, 2019 at 10:00 a.m. (Prevailing Eastern Time)**, before the Honorable Robert D. Drain, United States Bankruptcy Judge, in Courtroom 118 of the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601. The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtors at the Confirmation Hearing or any continued hearing or as indicated in any notice filed by the Debtors with the Bankruptcy Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to interested parties

3. The Disclosure Statement and the Plan are on file with the Clerk of the Bankruptcy Court (the "**Clerk**") and may be examined during normal business hours at the office of the Clerk. Copies of the Disclosure Statement and the Plan may also be obtained from the Court's electronic docket for the Debtors' chapter 11 cases, which can be found at http://www.nysb.uscourts.gov (a PACER login and password are required to access documents on the Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

4. Copies of this Order, the motion to approve the Disclosure Statement (ECF No. 3277), the Disclosure Statement, and the Plan may also be accessed free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk, LLC ("**Prime Clerk**" or "**Voting Agent**"), at https://restructuring.primeclerk.com/sears, or obtained by written request as follows: **If by standard or overnight mail or hand delivery:** Sears Holdings Corporation Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; **If by e-mail to:** searsplandocuments@primeclerk.com with a reference to "Sears" in the subject line.

**THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT PROVIDE, LEGAL ADVICE.**

5. **Record Date for Voting Purposes.** Only parties who are eligible to vote and hold Claims against the Debtors as of May 9, 2019 are entitled to vote on the Plan.

6. **Parties in Interest Not Entitled to Vote**. (a) The following holders of Claims and Interests are not entitled to vote on the Plan: (i) holders of unimpaired Claims or Interests that are presumed to accept the Plan (Class 1 – Priority Non-Tax Claims) (ii) holders of impaired Claims or Interests that are deemed to reject the Plan (Kmart Corp. Class 6 – Intercompany Claims, Kmart Corp. Class 7 – Intercompany Interests, Kmart Corp. Class 8 – Subordinated Securities Claims; Kmart IL Class 6 – Intercompany Claims; Kmart IL Class 7 – Intercompany Interests, Kmart IL Class 8 – Subordinated Securities Claims; Kmart of Washington Class 6 – Intercompany Claims, Kmart of Washington Class 7 – Intercompany Interests, Kmart of Washington Class 8 – Subordinated Securities Claims; SHC Class 6 – Intercompany Claims, SHC Class 7 – Intercompany Interests, SHC Class 8 – Subordinated Securities Claims, SHC Class 9 – Existing SHC Equity Interests, for all other Debtors Class 6 – Intercompany Claims, Class 7 – Intercompany Interests, Class 8 – Subordinated Claims), and (iii) holders of Claims that are the subject of filed objections or requests for estimation. (b) If you have timely filed a proof of Claim and disagree with the Debtors' classification of, objection to, or request for estimation of, your Claim and believe that you should be entitled to vote on the Plan, then you must serve on the Debtors at the address set forth below and file with the Bankruptcy Court (with a copy to chambers) a motion (a "**Rule 3018(a) Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing such Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan. (c) All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, as to such Claim. In accordance with Bankruptcy Rule 3018, as to any creditor filing a Rule 3018(a) Motion, such creditor's ballot will not be counted except as may be otherwise ordered by the Bankruptcy Court at least five (5) days prior to the Voting Deadline or as the Bankruptcy Court may direct. Creditors may contact the Voting Agent at (844) 384-4460 (domestic toll-free) or (929) 955-2419 (international) to receive an appropriate ballot for any Claim for which a proof of Claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.

7. **Voting Deadline**. All votes to accept or reject the Plan must be actually received by Prime Clerk, LLC ("**Prime Clerk**"), the Debtors' voting agent (the "**Voting Agent**") by no later than **August 2, 2019** (the "**Voting Deadline**"), unless extended by the Debtors. Any failure to follow the voting instructions included with your ballot may disqualify your ballot and your vote.

8. **Objections to Confirmation**. Responses and objections, if any, to confirmation of the Plan must (a) be in writing, (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party, (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection, (d) conform to the Bankruptcy Rules and the Local Rules, (e) be filed with the Court together with proof of service by either (i) *Electronic Filing*: the filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System, electronic filing must be in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), or (ii) *Conventional Filing*: the filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601; the hard copy of the response or objection should be accompanied by a CD-ROM containing the response or objection in text-searchable portable document format (PDF); and (iii) *All filers* – those filing electronically as well as those filing conventionally – must provide Bankruptcy Court Chambers with two separate, single-sided hard copies of the response or objection; any proposed order should be accompanied by a CD-ROM containing the response or objection in text searchable portable document format (PDF); and (f) be served upon the following parties in accordance with General Order M-399 so as to be received no later than **August 2, 2019 at 4:00 p.m. (Prevailing Eastern Time)**, and on the following parties: (i) the Chambers of the Honorable Judge Robert D. Drain ("**Chambers**"), United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 248, White Plains, New York 10601; (ii) Counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garrett A. Fail, Esq., and Sunny Singh, Esq.); (iii) the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**"), 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Paul Schwartzberg, Esq.); and (iv) Counsel to the Creditors' Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira Dizengoff, Esq., Philip Dublin, Esq., and Sara Brauner, Esq.).

**IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

9. **Parties Who Will Not Be Treated as Creditors.** Any holder of a Claim that (i) is scheduled in the Debtors' schedules of assets and liabilities at $0.00, or in an unknown amount, or as disputed, contingent, or unliquidated, and is not the subject of a timely filed proof of Claim or a proof of Claim deemed timely filed with the Bankruptcy Court, or (ii) is not scheduled and is not the subject of a timely filed proof of Claim or a proof of Claim deemed timely filed with the Bankruptcy Court, shall not be treated as a creditor with respect to such Claim for purposes of voting on the Plan.

10. **Classification and Treatment. A chart summarizing the treatment provided by the Plan to each class of Claims and Interests is included in Annex A. Annex A is qualified in its entirety by reference to the Plan.**

11. **Releases. Please be advised that under the Plan, the following holders are deemed to have granted the releases contained in Section 15.9 of the Plan, which is set forth for convenience on Annex B hereto: (i) the holders of all Claims or Interests who vote to accept the Plan; (ii) the holders of Claims or Interests who reject the Plan or abstain from voting on the Plan but do not opt out of these releases on the Ballots; (iii) each of the Released Parties (other than the Debtors); and (iv) with respect to any entity in the foregoing clauses (i) through (iii), (x) such entity's predecessors, successors, and assigns, and (y) all persons entitled to assert Claims through or on behalf of such entities with respect to the matters for which the releasing entities are providing releases.**

**ELECTION TO WITHHOLD CONSENT TO THE RELEASES CONTAINED IN THE PLAN IS AT THE OPTION OF THE CLAIM OR INTEREST HOLDER.**

12. **The Plan also contains other discharge, injunction, release, and exculpation provisions that may affect your rights such as those forth in Annex B. Annex B is qualified in its entirety by reference to the Plan.**

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

13. **Executory Contracts and Unexpired Leases.** On the Effective Date, except as otherwise provided in the Plan or Plan Supplement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) as of the Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory Contract; (2) is a contract, engagement letter that has been approved by an order of the Bankruptcy Court, release, or other agreement or document entered into in connection with the Plan; or (3) is a D&O Policy or an insurance policy.

14. **Additional Information**. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan should contact the Debtors' voting agent, Prime Clerk, at (844) 384-4460 (domestic toll-free) or (929) 955-2419 (international), or may view such documents by accessing the Debtors' website: https://restructuring.primeclerk.com/sears or the Bankruptcy Court's website: http://www.nysb.uscourts.gov. As previously noted above, a PACER (www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Bankruptcy Court's website (http://www.nysb.uscourts.gov). **PRIME CLERK IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Dated: June 28, 2019, New York, New York; /s/ Sunny Singh, WEIL, GOTSHAL & MANGES LLP, 767 Fifth Avenue, New York, New York 10153, Telephone: (212) 310-8000, Facsimile: (212) 310-8007, Ray C. Schrock, P.C., Jacqueline Marcus, Garrett A. Fail, Sunny Singh, *Attorneys for Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**ECONOMY | POLITICS**

# *Trade Breakthrough Reopens U.S. Business With China's Huawei*

By JIM TANKERSLEY and ANA SWANSON

WASHINGTON — The Trump administration is following through with plans to allow American companies to continue doing business with Huawei, the Chinese telecom equipment giant, just weeks after placing the company on a Commerce Department blacklist.

On Tuesday, Commerce Secretary Wilbur Ross said the administration will issue licenses for American companies that want to do business with Huawei "where there is no threat to national security." And another top official suggested the move would allow chip makers to continue selling certain technology to Huawei.

The comments confirm President Trump's surprise announcement last month, after meeting with Chinese President Xi Jinping, that the United States would relax restrictions on Huawei as part of an effort to restart stalled trade talks with China. Weeks earlier, the Commerce Department said it had placed the company and dozens of affiliates on a list of firms deemed risks to national security, effectively barring it from buying American parts and technologies without seeking United States government approval.

Larry Kudlow, the director of the White House National Economic Council, said at a CNBC event on Tuesday that the United States has "opened the door — relaxed a bit, the licensing requirements from the Commerce Department" for companies that sell to Huawei.

"We are opening that up for a limited time period," Mr. Kudlow said.

That could offer a reprieve to American companies like Qualcomm, Intel, Broadcom and Google, which sell microchips to Huawei and other specialized parts that go into its smartphones and telecom equipment.

American technology companies have been lobbying the administration, saying that the ban will cut them off from a major source of revenue, while doing little to hold back Huawei's technological advancement, since Huawei will merely purchase some less-advanced components from competitors in Japan, South Korea or elsewhere instead.

Mr. Kudlow also said negotiations with China, which fell apart in May and seemed on the brink of collapse, are set to resume.

"The most important thing, the headline, is that talks and negotiations will resume, after a couple months of hiatus," he said.

On Tuesday, Robert Lighthizer, the United States trade representative, and Treasury Secretary Steven Mnuchin spoke with Chinese Vice Premier Liu He and Minister Zhong Shan to continue negotiations aimed at resolving the outstanding trade disputes between the United States and China, according to a senior administration official. Both sides will continue these talks as appropriate, the official said.

Whether those talks can result in a trade deal is unclear. Deep differences remain, including whether China will agree to codify changes to its trade practices in Chinese law, as the administration has demanded. The United States has not yet committed to lifting any of the tariffs it has placed on $250 billion worth of goods.

And while Washington is relaxing its restrictions on Huawei, a broader effort to crack down on China's ability to buy American technology is continuing.

Mr. Ross, speaking at an export control conference in Washington, said the administration would continue to protect America's development of advanced technologies, including potentially curbing the ability of other countries to buy sensitive technology.

He said the administration was updating its export control policies to reflect a "fusion" between China's military and civilian businesses, which Mr. Ross called a threat to America. And he warned companies not to sacrifice intellectual property and other trade secrets in order to gain access to growing markets like China.

"The future prosperity of the United States depends on our strategic advantage in advanced technologies," Mr. Ross said. "It is wrong to trade sensitive I.P. or source codes for access to a foreign market," he said, "no matter how lucrative that market might be."

Mr. Ross stopped short of announcing additions to the list of products subject to American export controls, but said the Commerce Department would continue to review which technologies might need protection.

"If new export controls seem necessary, the department seeks public input and strives for multilateral agreements, so that important controls are universally adopted," he said.

Mr. Ross said that the department would soon announce members of an "emerging technology technical advisory committee to help review those technologies," who would help "modernize" its export control list.

Commerce was tasked with creating new rules for protecting sensitive American technologies from foreign incursions by a defense bill that Mr. Trump signed into law last August. But the department has found creating the list of technologies to be difficult.

Rules that are too restrictive could weigh heavily on businesses that depend on freely trading components around the world, and ultimately hinder their ability to design and manufacture products in America. Companies could be forced to move research sites abroad, potentially putting risking the country's position as a hub for research and development.

"This is the dilemma," said William Reinsch, who led what now is called the Bureau of Industry and Security under the Clinton administration. "You have to constantly walk this line between controlling too loose and letting stuff you want out, and controlling too tight and incentivizing other people to make it."

Alan Rappeport contributed reporting.

SPENCER PLATT/GETTY IMAGES

The Federal Reserve's chair, Jerome H. Powell, will testify before lawmakers on Wednesday and Thursday, and the Fed will meet on July 30 and 31.

# Fed Faces Fire No Matter What It Does

By JEANNA SMIALEK

WASHINGTON — The Federal Reserve's meeting this month was never going to be an easy one given that officials remain split over when — or whether — to cut interest rates. The last few weeks could set the Fed up for an even more difficult call.

President Trump has put the Fed under a microscope, jawboning officials for months to cut rates and calling the central bank America's "most difficult problem" in a series of posts on Twitter on July 5.

The Fed's chair, Jerome H. Powell, and his colleagues say they ignore politics when making decisions. But if they do reduce interest rates, as markets expect, some slice of the Fed-watching public will interpret that as a sign that they have caved under pressure even as job gains remain solid and economic growth is still strong.

If they stand pat, they'll deliver an unwelcome surprise to markets and could incur the White House's wrath.

Mr. Powell will get a chance to lay the groundwork for the Fed's meeting on July 30 and 31 when he testifies before lawmakers on Wednesday and Thursday. Markets are fully pricing in a 0.25 percentage-point rate cut this month and the Fed's pre-meeting blackout period starts July 20, so officials have just this week and next to manage expectations.

As of last reading, they seemed unsure about what to do.

The 17-member Fed policymaking committee split sharply in June over whether the central bank should cut rates this year, with eight officials projecting a cut before the end of the year and nine pointing to no change or a rate increase. Mr. Powell said many of the officials who did not project a rate cut saw the case for one strengthening.

Data since have provided little clarity — if anything, the economic snapshot may be blurrier. Job gains have rebounded after a slow May, and Mr. Trump and President Xi Jinping of China spoke at a summit in Osaka, Japan, averting an immediate escalation of the trade war between their nations.

But temporary relief is not a permanent solution, and tensions could reignite, creating uncertainty that threatens economic growth. The global economy continues to struggle, manufacturing

## Division over whether to cut rates or hold steady.

data are flagging, and price increases in the United States remain mired below the Fed's goal.

"They are in a bit of a bind," said Joseph Song, United States economist at Bank of America. "It's going to be difficult. The committee is clearly divided."

Mr. Song said that he expected the Fed to hold off on cutting interest rates until September and that he thought Mr. Powell would need to communicate that later timing at his congressional appearance this week.

If there is a case for cutting rates sooner, it hinges on inflation data, he said. Price gains have been mired below the Fed's 2 percent goal almost permanently since the central bank formally adopted the target back in 2012. That's a problem because it creates a credibility issue for the Fed and increases the risks that prices could fall into economy-harming price declines in a recession. Deflation would be bad news since it could encourage consumers to hold off on purchases, knowing that they will be cheaper tomorrow, and would exacerbate a downturn.

The Fed's preferred inflation index increased just 1.5 percent in the year through May, and June figures will be released on July 30, the first day of the Fed's meeting.

Against that backdrop, and with trade tensions still humming in the background, the Fed may feel justified cutting rates this month even as economic growth data hold up. They set policy with an eye toward the future, since monetary policy moves take time to kick in.

"The question my colleagues and I are grappling with is whether these uncertainties will continue to weigh on the outlook and thus call for additional policy accommodation," Mr. Powell said in a speech last month.

Moving now could signal the Fed's commitment to hitting the inflation target and a willingness to proactively offset any fallout as trade tensions drag on.

The case for a rate cut "was never about the labor market, or the consumer, which seemed pretty good," said Julia Coronado, founder of MacroPolicy Perspectives, who expects a rate cut with the message that the economy "is in a good place, and we're going to keep it there."

But even if the Fed delivers on a rate cut, the move is unlikely to insulate the central bank from political fire.

Mr. Trump has continued to criticize the Fed even as it has pivoted from raising rates steadily to pledging "patience" in the first half of this year, and more recently, to setting up for coming rate cuts. The president said over the weekend that "our Federal Reserve doesn't have a clue!" and that "they raised rates too soon, too often, & tightened."

The White House has reportedly looked into firing Mr. Powell, though that may prove legally impossible. Larry Kudlow, Mr. Trump's National Economic Council director, said at a CNBC event Tuesday that there was no immediate move to get rid of Mr. Powell. "I will say that unequivocally, at the present time, yes, he is safe," he said.

Political strife makes this week's appearance all the more important for Mr. Powell. While the president may take issue with the Fed's policy setting, lawmakers in the House and Senate are the Fed's bosses. They give the Fed its goals, have the ability to change the law that sets out its rules and responsibilities, and are able to support or reject the White House's nominees for future central bank leaders.

Mr. Powell has cultivated relationships on Capitol Hill, meeting regularly with members of the Senate Banking and House Financial Services Committees. He got together with nine members in May, and has had 44 congressional meetings this year, seeing some lawmakers who oversee the Fed twice, based on his calendars.

"There's really no way that the Fed can win with President Trump," Ms. Coronado said. She said the Fed was concentrated on communicating with lawmakers and, importantly, making moves that could stand on merit. "Chair Powell is focused first on making careful, methodical decisions."

# *Houston to Host Third Debate*

By MICHAEL M. GRYNBAUM

The 2020 Democratic presidential contest is headed to Texas for the third televised debate of the party's primary campaign.

Houston is set to host the Democratic debate on Sept. 12 and 13, sponsored by ABC News and the Spanish-language network Univision.

After a New York Times article about the location of the third debate was published online on Tuesday, ABC News and the Democratic National Committee officially announced the debate in Houston.

"As the nation's most diverse city, Houston is the perfect place for the Democratic Party's third debate," Tom Perez, the party chairman, said in a statement on Tuesday night.

Like Miami, which hosted the Democrats' first debate in June, Houston was among the final group of cities considered to host next year's Democratic convention. (Milwaukee eventually took the prize.) The choice of Texas could also be seen as a statement of intent by the party to be competitive in a state that has not been won by a Democratic presidential candidate since 1976.

The last time that Democrats hosted a presidential primary debate in Texas was in February 2008, when Barack Obama and Hillary Clinton met in Austin at an event sponsored by CNN and Univision.

The third debate, which will pre-empt ABC's usual weeknight

WILFREDO LEE/ASSOCIATED PRESS

Senator Amy Klobuchar last month at the Democratic debate in Miami.

programming, is expected to include a more condensed version of the current, sprawling Democratic field. A total of 20 candidates appeared over two nights in Miami last month, and 20 are expected for the second Democratic debate in Detroit in July, which will also be split between two nights to accommodate the number of contenders.

But Democratic officials tightened requirements for the ABC debate, raising the threshold that candidates must meet for national polling performance and the number of unique donors to their campaigns.

Ratings for the first Democratic debate in Miami, hosted by NBC, MSNBC and Telemundo, exceeded industry expectations. The June 28 event — which featured a clash between Senator Kamala Harris of California and former Vice President Joseph R. Biden Jr. — was seen live by about 18 million Americans, a record for a Democratic primary debate and a sign of intense early engagement with the 2020 race.

CNN is hosting the Detroit debate on July 30 and 31, which will be moderated by two of the network's leading political correspondents, Dana Bash and Jake Tapper, along with the prime-time anchor Don Lemon.

In a move borrowed from the playbook of reality TV, CNN will broadcast a live drawing on July 18 in prime time to determine which of the qualifying candidates will appear on which night.

ABC News, for its part, has emerged as a competitive player in early coverage of the 2020 presidential race.

"The View," an ABC talk show aimed at women, became a required stop for Democratic hopefuls. Beto O'Rourke, the former Texas congressman, was asked by a voter in Iowa when he would appear on the show, and Mr. Biden headed to its Manhattan studio for his first television interview after announcing his candidacy.

Over all, 11 candidates chose ABC News programs to announce their candidacy or grant their first TV news interview. The list includes Ms. Harris, who declared her run on the network's morning show, "Good Morning America."

**UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION, *et al.*,** | : | **Case No. 18-23538 (RDD)** |
| **Debtors.**[1] | : | **(Jointly Administered)** |

**NOTICE OF (I) HEARING ON CONFIRMATION OF THE PLAN AND PROCEDURES FOR OBJECTING TO CONFIRMATION OF THE PLAN; AND (II) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN**

**PLEASE TAKE NOTICE** that:

1. **Approval of Disclosure Statement**. By order dated June 28, 2019 (ECF No.4392) (the "**Order**"), the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") approved the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Disclosure Statement**") filed by Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") (ECF No. 4390). The Bankruptcy Court authorized the Debtors to solicit votes with regard to the approval or rejection of the *Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated June 28, 2019 (as it may be amended, modified, and supplemented, the "**Plan**"),[2] annexed as **Exhibit A** to the Disclosure Statement. Any capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan

2. **Confirmation Hearing**. A hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan will be held on **August 16, 2019 at 10:00 a.m. (Prevailing Eastern Time)**, before the Honorable Robert D. Drain, United States Bankruptcy Judge, in Courtroom 118 of the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601. The Confirmation Hearing may be continued from time to time without further notice other than the announcement by the Debtors at the Confirmation Hearing or any continued hearing or as indicated in any notice filed by the Debtors with the Bankruptcy Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to interested parties.

3. The Disclosure Statement and the Plan are on file with the Clerk of the Bankruptcy Court (the "**Clerk**") and may be examined during normal business hours at the office of the Clerk. Copies of the Disclosure Statement and the Plan may also be obtained from the Court's electronic docket for the Debtors' chapter 11 cases, which can be found at http://www.nysb.uscourts.gov (a PACER login and password are required to access documents on the Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

4. Copies of this Order, the motion to approve the Disclosure Statement (ECF No. 3277), the Disclosure Statement, and the Plan may also be accessed free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk, LLC ("**Prime Clerk**" or "**Voting Agent**"), at https://restructuring.primeclerk.com/sears, or obtained by written request as follows: **If by standard or overnight mail or hand delivery:** Sears Holdings Corporation Ballot Processing, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; **If by e-mail to:** searsplandocuments@primeclerk.com with a reference to "Sears" in the subject line.

**THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT PROVIDE, LEGAL ADVICE.**

5. **Record Date for Voting Purposes**. Only parties who are eligible to vote and hold Claims against the Debtors as of May 9, 2019 are entitled to vote on the Plan.

6. **Parties in Interest Not Entitled to Vote**. (a) The following holders of Claims and Interests are not entitled to vote on the Plan: (i) holders of unimpaired Claims or Interests that are presumed to accept the Plan (Class 1 – Priority Non-Tax Claims) (ii) holders of impaired Claims or Interests that are deemed to reject the Plan (Kmart Corp. Class 6 – Intercompany Claims, Kmart Corp. Class 7 – Intercompany Interests, Kmart Corp. Class 8 – Subordinated Securities Claims; Kmart IL Class 6 – Intercompany Claims; Kmart IL Class 7 – Intercompany Interests, Kmart IL Class 8 – Subordinated Securities Claims; Kmart of Washington Class 6 – Intercompany Claims, Kmart of Washington Class 7 – Intercompany Interests, Kmart of Washington Class 8 – Subordinated Securities Claims; SHC Class 6 – Intercompany Claims, SHC Class 7 – Intercompany Interests, SHC Class 8 – Subordinated Securities Claims, SHC Class 9 – Existing SHC Equity Interests, for all other Debtors Class 6 – Intercompany Claims, Class 7 – Intercompany Interests, Class 8 – Subordinated Claims), and (iii) holders of Claims that are the subject of filed objections or requests for estimation. (b) If you have timely filed a proof of Claim and disagree with the Debtors' classification of, objection to, or request for estimation of, your Claim and believe that you should be entitled to vote on the Plan, then you must serve on the Debtors at the address set forth below and file with the Bankruptcy Court (with a copy to chambers) a motion (a "**Rule 3018(a) Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing such Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan. (c) All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, as to such Claim. In accordance with Bankruptcy Rule 3018, as to any creditor filing a Rule 3018(a) Motion, such creditor's ballot will not be counted except as may be otherwise ordered by the Bankruptcy Court at least five (5) days prior to the Voting Deadline or as the Bankruptcy Court may direct. Creditors may contact the Voting Agent at (844) 384-4460 (domestic toll-free) or (929) 955-2419 (international) to receive an appropriate ballot for any Claim for which a proof of Claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.

7. **Voting Deadline**. All votes to accept or reject the Plan must be actually received by Prime Clerk, LLC ("**Prime Clerk**"), the Debtors' voting agent (the "**Voting Agent**") by no later than **August 2, 2019** (the "**Voting Deadline**"), unless extended by the Debtors. Any failure to follow the voting instructions included with your ballot may disqualify your ballot and your vote.

8. **Objections to Confirmation**. Responses and objections, if any, to confirmation of the Plan must (a) be in writing, (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party, (c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection, (d) conform to the Bankruptcy Rules and the Local Rules, (e) be filed with the Court together with proof of service by either (i) *Electronic Filing*: the filer must be an attorney in possession of passwords and logins to both PACER and the Bankruptcy Court's Electronic Case Filing System; electronic filing must be in accordance with General Order M-399 (which can be found at http://www.nysb.uscourts.gov), or (ii) *Conventional Filing*: the filer must send the response or objection by mail, courier, or messenger to the Bankruptcy Court's clerk at the following address: United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601; the hard copy of the response or objection should be accompanied by a CD-ROM containing the response or objection in text-searchable portable document format (PDF); and (iii) *All filers* – those filing electronically as well as those filing conventionally – must provide Bankruptcy Court Chambers with two separate, single-sided hard copies of the response or objection; any proposed order should be accompanied by a CD-ROM containing the response or objection in text searchable portable document format (PDF); and (f) be served upon the following parties in accordance with General Order M-399 so as to be received no later than **August 2, 2019 at 4:00 p.m. (Prevailing Eastern Time)**, and on the following parties: (i) the Chambers of the Honorable Judge Robert D. Drain ("**Chambers**"), United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 248, White Plains, New York 10601; (ii) Counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., Garret A. Fail, Esq., and Sunny Singh, Esq.); (iii) the Office of the United States Trustee for Region 2 (the "**U.S. Trustee**"), 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Paul Schwartzberg, Esq.); and (iv) Counsel to the Creditors' Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Ira Dizengoff, Esq., Philip Dublin, Esq., and Sara Brauner, Esq.).

**IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

9. **Parties Who Will Not Be Treated as Creditors**. Any holder of a Claim that (i) is scheduled in the Debtors' schedules of assets and liabilities at $0.00, or in an unknown amount, or as disputed, contingent, or unliquidated, and is not the subject of a timely filed proof of Claim or a proof of Claim deemed timely filed with the Bankruptcy Court, or (ii) is not scheduled and is not the subject of a timely filed proof of Claim or a proof of Claim deemed timely filed with the Bankruptcy Court, shall not be treated as a creditor with respect to such Claim for purposes of voting on the Plan.

10. **Classification and Treatment. A chart summarizing the treatment provided by the Plan to each class of Claims and Interests is included in Annex A. Annex A is qualified in its entirety by reference to the Plan.**

11. **Releases. Please be advised that under the Plan, the following holders are deemed to have granted the releases contained in Section 15.9 of the Plan, which is set forth for convenience on Annex B hereto: (i) the holders of all Claims or Interests who vote to accept the Plan; (ii) the holders of Claims or Interests who reject the Plan or abstain from voting on the Plan but do not opt out of these releases on the Ballots; (iii) each of the Released Parties (other than the Debtors); and (iv) with respect to any entity in the foregoing clauses (i) through (iii), (x) such entity's predecessors, successors, and assigns, and (y) all persons entitled to assert Claims through or on behalf of such entities with respect to the matters for which the releasing entities are providing releases.**

**ELECTION TO WITHHOLD CONSENT TO THE RELEASES CONTAINED IN THE PLAN IS AT THE OPTION OF THE CLAIM OR INTEREST HOLDER.**

12. **The Plan also contains other discharge, injunction, release, and exculpation provisions that may affect your rights such as those forth in Annex B. Annex B is qualified in its entirety by reference to the Plan.**

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

13. **Executory Contracts and Unexpired Leases**. On the Effective Date, except as otherwise provided in the Plan or Plan Supplement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) as of the Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory Contract; (2) is a contract, engagement letter that has been approved by an order of the Bankruptcy Court, release, or other agreement or document entered into in connection with the Plan; or (3) is a D&O Policy or an insurance policy.

14. **Additional Information**. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan should contact the Debtors' voting agent, Prime Clerk, at (844) 384-4460 (domestic toll-free) or (929) 955-2419 (international), or may view such documents by accessing the Debtors' website: https://restructuring.primeclerk.com/sears or the Bankruptcy Court's website: http://www.nysb.uscourts.gov. As previously noted above, a PACER (www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Bankruptcy Court's website (http://www.nysb.uscourts.gov). **PRIME CLERK IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Dated: June 28, 2019, New York, New York, /s/ Sunny Singh, WEIL, GOTSHAL & MANGES LLP, 767 Fifth Avenue, New York, New York 10153, Telephone: (212) 310-8000, Facsimile: (212) 310-8007, Ray C. Schrock, P.C., Jacqueline Marcus, Garrett A. Fail, Sunny Singh, *Attorneys for Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.