**EXHIBIT D**

*Execution Version*
PRIVILEGED AND CONFIDENTIAL
ATTORNEY CLIENT COMMUNICATION

**EXHIBIT B**

**SUMMARY OF AGREED TERMS**

| | |
|---|---|
| **Parties** | ESL Investments, Inc. (along with its affiliated investment funds, "ESL"), funds managed by Cyrus Capital Partners, LP ("Cyrus"), Transform Holdco LLC (a Delaware limited liability company), a wholly owned subsidiary of ESL ("Newco"), as borrower (the "Borrower"), and solely with respect to the New LC Facility, Citibank, N.A., as LC Issuer. |
| **Transaction** | Newco will acquire, directly or indirectly, substantially all of the go-forward retail footprint and other assets and component businesses of Sears Holdings Corporation and its debtor subsidiaries (collectively, "Sears") as a going concern pursuant to a sale under section 363 of title 11 of the United States Code and as further described in that certain Asset Purchase Agreement, executed by Newco as of January 17, 2019 (the "APA"). Cyrus will participate alongside ESL in Newco's transactions contemplated by the APA under the terms outlined herein (the "Transaction"). |
| **Treatment of Claims** | |
| **Debtor-in-Possession Conversion** | The certain junior debtor-in-possession facility (the "Existing DIP"), pursuant to that Superpriority Junior Lien Secured Debtor-in-Possession Credit Agreement, dated as of November 29, 2018 (the "Existing DIP Agreement") shall be rolled into a new financing of Newco (the "Exit Financing Facility") with Cyrus acting as lender thereunder (in such capacity, the "Exit Financing Lender") at or substantially concurrently with the consummation of the Transaction, which shall include funding with the proceeds of a new senior asset-based loan facility (the "New ABL"), subject to limitations set forth in the following paragraph. The agreement to document the Exit Financing Facility shall be negotiated in good faith and shall be on substantially the same terms and conditions as the New ABL, other than (i) as otherwise specified herein, (ii) such other changes to the terms set forth therein as may be mutually agreed upon, taking into account the operational and strategic requirements of the Borrower and its subsidiaries (after giving effect to the acquisition and the Transaction) in light of their capitalization, size, business, industry, matters disclosed in the APA and the Borrower's proposed business plan, as well as the financial condition, credit quality and historical performance of the Company and (iii) modifications to reflect changes in law or standard market practice (such as bail-in provisions, provisions relating to successor LIBOR and provisions relating to divisible limited liability companies) (collectively, the "Exit Financing Documentation Principles").

The aggregate principal amount of the Existing DIP outstanding at the closing (the "Closing") of the Transaction (up to $350 million) will be rolled over on a cashless basis into the Exit Financing Facility at the Closing, with any amounts under the Existing DIP being paid off in full and commitments |

| | |
|---|---|
| | thereunder terminated at the Closing. The guarantors under the Exit Financing Facility shall be limited to each existing and future domestic subsidiary of Newco that guaranties the obligations incurred under the New ABL. The Borrower and each of the guarantors shall grant the Exit Financing Lender (as defined below) valid and perfected first priority liens in the Exit Financing Collateral, subject to certain customary exclusions to be agreed, consistent with the Exit Financing Documentation Principles.<br><br>The Borrower and each of the guarantors shall grant the Exit Financing Lender (as defined below) valid and perfected first priority liens in the Exit Financing Collateral, subject to certain customary exclusions to be agreed, consistent with the Exit Financing Documentation Principles.<br><br>No more than $170 million of the Existing DIP shall remain an obligation of the Debtors as of the Closing and such amount shall be repaid by the Debtors at Closing. |
| **Term** | The maturity of the Exit Financing Facility will be coterminous with the maturity of the New ABL, which will not exceed 5 years from the Closing, but the amounts outstanding may be pre-paid at any time by Newco or ESL, subject to the limitations on voluntary prepayments set forth in the New ABL. Pre-payment may be made at par plus accrued interest during the first year of the loan, at 103% plus accrued interest during the second year of the loan, at 102% plus accrued interest during the third year of the loan, at 101% plus accrued interest in the fourth year of the loan, and at par plus accrued interest thereafter.<br><br>In addition to the right to prepay at any time, ESL shall have a call right pursuant to which it can purchase the loans under Exit Financing Facility from the Exit Financing Lender at a price equal to the principal amount outstanding under the Existing Financing Facility, plus accrued and unpaid interest (which shall exclude default interest, unless such default interest is actually repaid to ESL, as agent, in which case such amount for the applicable period shall be remitted by ESL to Cyrus), plus the prepayment penalties provided in the previous paragraph, if applicable.<br><br>There shall be no amortization, cash sweeps or mandatory prepayments, except as set forth below under the caption "Asset Sales" below. |
| **Interest Rate** | The applicable interest rate of the Exit Financing Facility shall be LIBOR + 13%, paid in kind ("PIK Interest") and will accrue monthly until full repayment of the Exit Financing. The PIK Interest shall be added to the principal amount of the Exit Financing Facility (the accrued PIK Interest, the "PIK Principal"). Pursuant to the terms of a letter agreement to be entered into between ESL and the Exit Financing Lender (the "ESL/Cyrus Side Letter"), ESL shall agree that it shall purchase and the Exit Financing Lender may sell to ESL on a monthly basis 100% of the PIK Principal accrued in respect of the previous month in exchange for an amount in cash equal to LIBOR +10% on the principal amount of the Exit Financing Facility outstanding as of such date (without giving effect to the PIK Interest), and the Exit Financing Lender shall have the right to put the PIK Principal to ESL if ESL fails to purchase the PIK Principal within 5 business days following the monthly payment date (which shall be mutually agreed). The PIK Principal will continue to accrue interest under the Exit Financing and, pursuant to the terms of the ESL/Cyrus Side Letter, will (x) be junior to any payment |

2

| | |
|---|---|
| | otherwise required to be made to the Exit Financing Lender and repaid following repayment of all other principal and accrued interest owing under the Exit Financing Facility to the Exit Financing Lender and (y) not have any voting rights under the Exit Financing Facility documentation. |
| **Collateral** | The Exit Financing Lender shall have a first lien priority on all of the assets that are acquired pursuant to the APA, other than (i) the ABL Priority Collateral (as defined in the ABL Commitment Letter (as defined below)), (ii) the assets secured under the Dove Loan Agreement[1] (the "Dove Collateral") and (iii) the assets secured under the Sparrow Loan Agreement[2] (the "Sparrow Collateral") (such collateral, the "Exit Financing Collateral"). |
| | The New ABL lenders shall have a first lien priority on the ABL Priority Collateral (as defined in that certain ABL commitment letter, dated as of January 9, 2019, by and among Bank of America, N.A., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets Inc., Royal Bank of Canada, RBC Capital Markets and Transform Holdco LLC (the "ABL Commitment Letter")) and a silent second lien priority on the Exit Financing Collateral. The New ABL lenders shall automatically release their liens on the Exit Financing Collateral upon any disposition of Exit Financing Collateral that constitutes a permitted disposition under the New ABL and/or upon repayment in full of the amounts outstanding under Exit Financing Facility (and any refinancing thereof) and the release of the liens on the Exit Financing Collateral by the Exit Financing Lenders in connection with such repayment. Intercreditor arrangements between the Exit Financing Lenders, the LC Lenders and the New ABL Lenders attached are set forth on Annex I hereto. |
| | For the avoidance of doubt, in connection with the Transaction, the holders of the debt secured by the Sparrow Collateral and/or Dove Collateral may credit bid the par amount plus accrued and unpaid interest of all debt secured by Sparrow Collateral and Dove Collateral in exchange for equity in Newco at par plus accrued interest. |
| | Newco shall agree that the equity interests in the entity that is the most junior mezzanine borrower, which is the indirect owner of the Dove Collateral and Sparrow Collateral, shall not be pledged to any Person. |
| **Asset Sales** | To the extent there is a sale of any of the Exit Financing Collateral, (x) 100% of the net cash proceeds (calculated net of taxes and expenses but before prepayment of the Exit Financing Facility) received by Newco from such asset sale shall be used to repay the amount outstanding under the Exit Financing Facility until the aggregate principal amount of such payments equal $230 million and (y) thereafter, (1) 50% of the net cash proceeds (calculated net of taxes and expenses but before prepayment of the Exit Financing Facility) received by Newco from such asset sale shall be used to repay the amount |

---

[1] "Dove Loan Agreement" means that certain Third Amended and Restated Loan Agreement, dated as of June 4, 2018 (as may be amended, restated, amended and restated or otherwise modified from time to time), by and among Sears Holdings Corporation (the "Guarantor"), certain of the Debtors (individually or collectively, as the context may require, the "Borrowers"), JPP, LLC ("JPP"), JPP II, LLC and Cascade Investment, L.L.C. and JPP its capacity as the Administrative Agent at such time.

[2] "Sparrow Loan Agreement" means that certain Credit Agreement, dated March 14, 2018 (as may be amended, restated, amended and restated or otherwise modified from time to time), by and among SRC O.P. LLC, SRC Facilities LLC and SRC Real Estate (TX), LLC, collectively as borrower, the lenders party thereto, UBS AG, Stamford Branch, as administrative agent, and UBS Securities LLC, as Lead Arranger and Bookrunner.

| | |
|---|---|
| | outstanding under the Exit Financing Facility and (2) 50% of the net cash proceeds (calculated net of taxes and expenses but before prepayment of the Exit Financing Facility) received by Newco from such asset sale shall be used to repay the amount outstanding under the New ABL (without a requirement to reduce revolving commitments). |
| **Letter of Credit Facility** | The certain letter of credit facility (the "LC Facility") pursuant to that certain Letter of Credit and Reimbursement Agreement, dated as of December 28, 2016, as amended prior to the date hereof, among Sears Holdings Corporation, Sears Roebuck Acceptance Corp. and Kmart Corporation, as borrowers, Citibank, N.A., as administrative agent and issuing bank and the lenders party thereto, (the "LC Facility Agreement"), at Closing, shall be rolled over into a new letter of credit facility with Newco (the "New LC Facility"), which documentation for the New LC Facility shall be negotiated in good faith and shall be on substantially the same terms and conditions as the LC Facility Agreement (including the related cash collateral agreement), other than (i) modifications as expressly set forth in this Term Sheet, including with respect to security and intercreditor agreements as described below, (ii) there shall be no restrictions on amendments to, or borrowings under, the New ABL, (iii) the borrowing base under the LC Facility Agreement shall be amended in the New LC Facility to be (x) 80% of the book value of pledged inventory of Newco, (y) 90% of the book value of pledged receivables of Newco and (z) 10% of the appraised equity value[3] of the Dove Collateral and the Sparrow Collateral, tested against the sum of (a) the outstanding LC Commitments under the New LC Facility and (b) the total amount of outstanding indebtedness secured by the ABL Priority Collateral that is senior to or pari passu with the New LC Facility, (iv) the New LC Facility will not be a "bank product" under the New ABL, (v) such other changes to the terms set forth therein as may be mutually agreed upon among Citibank, N.A., as LC Issuer, and if applicable, as administrative agent under the New LC Facility, Cyrus and ESL, as LC Lenders, taking into account (A) the operational and strategic requirements of the Borrower and its subsidiaries (after giving effect to the acquisition and the Transaction) in light of their capitalization, size, business, industry, matters disclosed in the APA and the Borrower's proposed business plan, as well as the financial condition, credit quality and historical performance of the Company and (B) the administrative, agency, policy and operational requirements of the administrative agent and LC Issuer under the New LC Facility in light of the transaction structure or otherwise and (vi) modifications to reflect changes in law or standard market practice (such as bail-in provisions, beneficial ownership provisions, provisions relating to successor LIBOR and provisions relating to divisible limited liability companies) (collectively, the "LC Documentation Principles"). <br><br>ESL shall be a letter of credit lender and hold approximately $106 of the New LC Facility, Cyrus shall be a letter of credit lender and hold approximately $165 million of the New LC Facility (each of ESL and Cyrus, individually or collectively as the context may require, in such capacity, an "LC Lender") and Citibank, N.A. shall be the letter of credit issuer of the New LC Facility (in such capacity, the "LC Issuer"). |

---

[3] "Equity Value" means the appraised value of the Dove Collateral and the Sparrow Collateral less the amount of any debt secured by such real estate (to be based on the most recent Cushman & Wakefield appraisals and to be updated for any subsequent appraisals).

| | |
|---|---|
| | The New LC Facility will have a silent second lien priority on the ABL Priority Collateral (which first lien priority, for the avoidance of doubt, shall be held by the lenders under the New ABL) and will have a third lien priority on the Exit Financing Collateral (which first lien priority, for the avoidance of doubt, shall be held by the lenders under the Exit Financing Facility and which second lien priority, for the avoidance of doubt, shall be held by the lenders under the New ABL). For the avoidance of doubt, the maturity date of the New LC Facility shall be the same as the LC Facility Agreement.<br><br>The liens on the Exit Financing Collateral securing the New LC Facility shall be automatically released and cease to constitute "Collateral" upon payment in full of the amounts outstanding under the Exit Financing Facility (and any refinancing thereof) and the release of the liens thereunder.<br><br>The borrower and each of the guarantors under the New LC Facility shall grant the LC Lenders valid and perfected second priority liens in the ABL Priority Collateral and perfected third priority liens in the Exit Financing Collateral, subject to certain customary exclusions to be agreed, consistent with the LC Documentation Principles.<br><br>There shall be new security agreements put in place to evidence such liens. For the avoidance of doubt, all existing cash collateral pledged pursuant to that certain Amended and Restated Cash Collateral Agreement, dated as of August 9, 2017, as amended, among the Letter of Credit Lenders under the LC Facility Agreement as pledgers and Citibank, N.A., as secured party, shall remain in place and will continue to secure the obligations of the LC Lenders under the New LC Facility. Cyrus represents and warrants to ESL that, as of the date hereof, it holds approximately $165 million of the outstanding debt pursuant to the LC Facility, plus accrued and unpaid interest (the "Cyrus LC Debt"). |
| **FILO Term Loan** | In connection with the Transaction, the par amount plus accrued and unpaid interest outstanding under FILO term loans shall be credit bid by its holders in exchange for equity in Newco on the same basis as other secured debt. Any lender under the FILO term loan facility that is not participating in such credit bid shall be paid in full in cash at or prior to the Closing Date, or, alternatively, ESL shall pay cash to the Sellers on the Closing Date in the amount of the obligations owed to such lender under the FILO term loan as of the Closing Date and such lender's liens shall attach to such proceeds in their relative order of priority. |
| **Intellectual Property/Ground Lease Term Loans** | Cyrus represents and warrants to ESL that, as of the date hereof, it holds $48.1 million Tranche A indebtedness of the principal amount outstanding pursuant to IP/GL Loan Agreement[4](the "Cyrus IP/GL Debt").<br><br>At Closing (and conditioned on the Closing occurring), ESL shall purchase the Cyrus IP/GL Debt for an amount equal to the outstanding principal amount of the Cyrus IP/GL Debt at such time plus accrued and unpaid interest |

---

[4] "IP/GL Loan Agreement" means that certain Term Loan Credit Agreement, dated as of January 19, 2018 (at any time amended, restated, amended and restated, supplemented or otherwise modified), by and among Sears Holdings Corporation, Sears Roebuck Acceptance Corporation and Kmart Corporation, as borrowers, JPP LLC, the lenders party thereto and JPP, LLC as agent.

| | |
|---|---|
| | (excluding default interest, unless such default interest is actually repaid to ESL as agent, in which case such amount for the applicable period shall be remitted by ESL to Cyrus, and including $93,000 in unpaid legal fees previously billed to Sears by Cyrus); provided, that upon the request of ESL the closing of such acquisition may be extended to a date no later than 60 days following Closing, with the consent of Cyrus in its sole discretion. |
| **Second Lien Debt** | "2L Notes" shall mean those certain 6.625% Notes due 2019 of Sears Holding Corporation. Cyrus represents and warrants to ESL that, as of the date hereof, it holds $155.6 million (including accrued interest through October 15th, 2018) of the 2L Notes (the "Cyrus 2L Notes"). "Second Lien Debt" shall mean (i) any amounts outstanding under that certain Second Lien Credit Agreement, dated September 1, 2016, by and among Sears Holding Corporation, Sears Roebuck Acceptance Corp. and Kmart Corporation, the lenders named therein and JPP, LLC as agent, and (ii) the 2L Notes<br><br>The Cyrus 2L Notes that are being credit bid pursuant to the APA shall be exchanged for equity in Newco at Closing at par plus, in each case, the applicable interest accrued and unpaid thereon. Any remaining 2L Notes held by Cyrus and not credit bid as described in the forgoing sentence shall remain outstanding and be in full force and effect as of, and from and after, the Closing, and shall be (x) unaffected by any provisions hereof, and (y) be subject to the treatment and receive any and all distributions to which such remaining 2L Notes are entitled in the bankruptcy estates of the Debtors.<br><br>At Closing, Cyrus will receive equity in Newco in the amount of the Second Lien Debt held at Closing by Cyrus consistent with valuing inventory at 100% of cost, but in no case less than 1.26% of the Newco equity per $50 million of principal and accrued interest (pro-rated for lesser amounts). Cyrus expects to deliver no less than approximately $159mm of Second Lien Debt principal including interest accrued through February 15, 2019 (equivalent to 4% of Newco equity).<br><br>The Second Lien Debt held by Cyrus will retain a deficiency claim against the Debtors/Sellers consistent with valuing inventory at the actual credit bid amount (i.e., the difference between par plus accrued interest less the credit bid amount). |
| **Debt and Dividend Restrictions** | For so long as the principal amount outstanding under the Exit Financing Facility is equal to or greater than $50,000,000, the following covenants shall apply under the Exit Financing Facility (provided, that Borrower shall have the right at any time to request consent to take the following actions under the Exit Financing Facility, subject to the consent of the Required Lenders (as defined in the Exit Financing Facility agreement):<br><br>• The total amount of debt, in the aggregate, that is secured by the Dove Collateral and Sparrow Collateral (including mortgage debt and mezzanine debt) shall not exceed $375,000,000; provided that in no event shall it exceed 50% of the as-leased appraised value of the Sparrow Collateral and Dove Collateral (in the aggregate)  and<br><br>• Newco shall not make any dividends or distributions to its equity holders (other than any amounts that are required pursuant to applicable law or the Internal Revenue Service Code). |

6

| **Financial Covenant** | None |
|---|---|
| **Amortization** | None |
| **Affirmative Covenants** | With respect to the Exit Financing Facility, the same as, and with respect to the New LC Facility, subject to the LC Documentation Principles, substantially the same as, those under the New ABL with conforming changes, but in no event less favorable to the Borrower than those in the Credit Documentation (as defined in the ABL Commitment Letter). |
| **Negative Covenants** | The same as those under the New ABL (but in no event less favorable to the Borrower than those in the New ABL) with conforming changes to be mutually agreed. |
| **Representations and Warranties** | The same as those under the New ABL with conforming changes, but in no event less favorable to the Borrower than those in the Credit Documentation (as defined in the ABL Commitment Letter). |
| **Events of Default** | The same as those under the New ABL with conforming changes to be mutually agreed, but in no event less favorable to the Borrower than those in the New ABL; *provided* that certain cushions to be agreed with respect to the increase of materiality thresholds in comparison to the corresponding thresholds under the New ABL. |
| **Post-Transaction** | |
| **Corporate Governance** | For so long as Cyrus holds at least 1% of Newco equity, Cyrus shall have the right to appoint one director of the board of directors of Newco that is acceptable to ESL, such consent not to be unreasonably withheld.  If such director satisfies applicable independence requirements, including qualifying as an "Independent Director" as determined by the New York Stock Exchange and SEC rules) such director shall be a member of any independent committee of the board of directors of Newco that is formed to approve transactions of Newco with affiliates.<br><br>Cyrus shall receive the following rights with respect to the Newco equity held by Cyrus: (i) customary tag-along rights, (ii) registration rights if Newco offers its shares through an initial public offering (for the avoidance of doubt, Cyrus cannot use registration rights to cause an initial public offering), and (iii) the right to receive monthly, quarterly and annual unaudited and audited financial reports of Newco.  In addition, ESL shall have the right to drag-along Cyrus' equity interest in Newco in connection with any sale or merger of the equity of Newco to a third party (other than to ESL, any affiliate of ESL or any entity in which ESL is the largest shareholder of such entity). |
| **Governing Law** | New York |

*Execution Version*
PRIVILEGED AND CONFIDENTIAL
ATTORNEY CLIENT COMMUNICATION

**ANNEX I**

[To attach Intercreditor Term Sheet]