# *EXHIBIT B*

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# Project Transform – ESL Bid Presentation

ANY INFORMATION REGARDING VALUATION, FORECASTS, PROJECTIONS, RECOVERIES OR TREATMENT IN THIS PRESENTATION IS FOR ILLUSTRATIVE AND DISCUSSION PURPOSES ONLY, AND ASSUMES THAT ALL TRANSACTIONS CONTEMPLATED HEREIN ARE EXECUTED IN A TIMELY MANNER AND THAT NO TRANSACTION WILL BE EXECUTED UNLESS ALL TRANSACTIONS ARE EXECUTED AS CONTEMPLATED HEREIN.

**January 2, 2019**

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# Disclaimer

This presentation has been prepared for ESL Investments ("ESL") based on confidential information provided by the Company and publicly available information. ESL and its representatives have not assumed any responsibility for independently verifying the information herein, ESL and its representatives make no representation or warranty as to the accuracy, completeness or reasonableness of the information herein and ESL and its representatives disclaim any liability with respect to the information herein. This presentation may include projections, forecasts or other forward-looking statements with respect to the Company and there can be no assurance as to ESL's or the Company's future performance. This presentation speaks only as of its date, and ESL and its representatives assume no obligation to update it or to advise any person that any of its conclusions has changed.

Sears has not approved or endorsed this document. Any action or response of Sears in connection with the items discussed in this presentation will require prior review and approval by Sears' Board, the Restructuring Sub-Committee, the Special Committee and/or the Related Party Committee. There can be no assurance that any action will be taken in response to ESL's proposals contained herein, and any action plan that is adopted could vary materially from the proposals described in this document.

This presentation is solely for informational purposes. This presentation is not intended to provide the basis for any decision on any transaction. The recipient should make its own independent business and legal decisions based on all other information, advice and the recipient's own judgment. **This presentation is not an offer to sell or a solicitation of an indication of interest to purchase any security, option, commodity, future, loan or currency. It is not a commitment to underwrite any security, to loan any funds or to make any investment.**

[1]

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

## Agenda

**ESL is pleased to present its going concern bid for a reorganized NewCo to the Restructuring Sub-Committee**

**1** ESL Bid Details

**2** Why ESL's Bid Should Prevail

**3** Litigation Considerations

ESL_507B_00000024

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

## ESL Bid Summary

**ESL is pleased to offer its $4.4bn bid for NewCo as a going concern, which is composed of the following:**

- $850mm in cash

- $1.3bn credit bid of secured debt (includes ~$220mm of senior debt repayment by ESL)

- $501mm in roll-over debt ($230mm of Junior DIP and $271mm of Citi LC facility)

- $592mm SRC debt assumption

- $1.1bn of assumed liabilities

- $35mm cash and $100mm rights offering for release

- The ESL offer is for the acquisition of:

  - A 425 go-forward store footprint

    - Additionally includes Dove and Sparrow properties not included in the 425 footprint

  - Sears Auto Centers

  - Innovel & supply chain (DCs, MDOs, etc.)

  - Sears Home Services

  - Monark

  - Shop Your Way

  - KCD Notes (purchased in connection with the assumption of the SHS PA Liability)

  - Additional previously unencumbered assets (e.g. real estate)

- Bid amount does not include transaction for Kenmore and Diehard, which is being separately negotiated

- ESL's bid incorporates the agreement in principle with Cyrus

1.   Not shown pro forma for potential pay down resulting from contemplated U-Haul transaction

ESL_507B_00000025

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# Transaction Overview – Sources & Uses[1]

**The contemplated transaction offers the estate ~$4.4bn in total value**

*($ in millions)*

| Sources | $ | % |
|---|---|---|
| Credit Bid - Dove | $436 | 9% |
| Dove - Cash to Buyout of Tranche A Holder[12] | 108 | 2% |
| Cash to Purchase Sparrow Equity | 0.005 | 0% |
| Assumption of Sparrow Debt | 592 | 13% |
| Citi L/C Facility | 271 | 6% |
| New ABL Facility and Term Loan[5] | 900 | 20% |
| Credit Bid of FILO - Inventory & Receivables[4] | 90 | 2% |
| FILO - Cash to Sears from Non-Credit Bid Part of FILO (Great American) | 35 | 1% |
| 2L Credit Bid ESL - Inventory & Receivables[2,3] | 351 | 8% |
| 2L Credit Bid Third Party - Inventory & Receivables[2,3] | 83 | 2% |
| Credit Bid - IP/GL | 152 | 3% |
| IP/GL - Cash to Buyout 3rd party holder(s) | 79 | 2% |
| New Real Estate Debt | 175 | 4% |
| Home Services PA Liability | 1,009 | 22% |
| Junior DIP Rollover - SHS & Other | 230 | 5% |
| 2018 Gift Card Vintage | 13 | 0% |
| SYW Point Liability | 68 | 1% |
| **Total Sources** | **$4,592** | **100%** |

| Total Cash Potentially Needed to Buyout 3rd Party Debtholders | $222 |
|---|---|

| Total Credit Bid[9] | $1,334 |
|---|---|

| 2L Deficiency Claim[10] | $637 |
|---|---|

| Dove Deficiency Claim | $254 |
|---|---|

| Uses | $ | % |
|---|---|---|
| Purchase of Dove Real Estate | $544 | 12% |
| Cash to Purchase Sparrow Equity | 0.005 | 0% |
| Assumption of Sparrow Debt | 592 | 13% |
| New Citi LC Facility | 271 | 6% |
| Purchase of Inventory[6,7] | 1,320 | 29% |
| Purchase of Credit Card / Pharmacy Receivables[6,8] | 88 | 2% |
| Cash to Paydown Revolver | 175 | 4% |
| Transaction Fees | 50 | 1% |
| Home Services PA Liability | 1,009 | 22% |
| Purchase of IP/GL Collateral | 231 | 5% |
| Purchase of SHS & Other[11] | 230 | 5% |
| 2018 Gift Card Vintage | 13 | 0% |
| SYW Point Liability | 68 | 1% |
| **Total Uses** | **$4,592** | **100%** |

*Revised S&U as of 12/28/18 reflects a 425 store footprint (down from 505 on 12/05/18 and the sale of SHIP). The values herein reflect the interdependencies across these assets and are contingent on acquiring the enumerated assets collectively.*

1. Sources & Uses excludes the impact associated with any direct purchase of Kenmore & Diehard
2. Third party 2L holders to credit bid alongside ESL pursuant to 2L collateral agent direction
3. Total 2L debt of $1,160mm comprised of $847mm of ESL owned debt, $293mm of 3rd party debt and $20mm owned by Tommy Tisch. Approximately $89mm of 3rd party 2L debt (cash pay notes due 10/15/18) not part of credit bid because it is subordinated in waterfall and remaining $1,071mm of 2L debt is pro-rata shared between ESL/Tommy Tisch (81% or $351mm) and 3rd Party (19% or $83mm)
4. Assumes Tommy Tisch credit bids along with ESL
5. Used to pay down $850mm of 1L debt and $50mm transaction fees
6. Assumes pro rata ownership of inventory, accounts receivables and scripts in NewCo for 2L component of the credit bid
7. Assumes purchase of $1,553mm projected book value of inventory at close at 85 cents
8. Assumes purchase of $104mm projected book value of credit card and pharmacy receivables at close at 85 cents
9. Total credit bid amount includes cash used to buyout 3rd party debtholders
10. Assumes shared deficiency claim amongst 2L credit-bidders
11. Other includes certain Unencumbered RE, Innovel, SYW, Monark, SAC and Designation Rights (see Annex 3.05)
12. Does not account for potential paydown of Tranche A debt as a result of pending U-Haul transaction

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# Transaction Mechanics

| | | Key Details |
|---|---|---|
| **ESL Credit-Bidding** | **Dove & Sparrow** | * ESL owns all of the Sparrow first mortgage debt, as well as over 85% of Dove outstanding debt<br>— Dove collateral agent (Cascade) signed credit bid letter as part of ESL's 12/28/18 bid package<br>— ESL intends to purchase Cascade's Dove debt and credit bid the facility in exchange for the Dove RE assets, including $32mm of U-Haul proceeds held in segregated account<br>— ESL could either purchase the equity of Sparrow and foreclose on the Sparrow properties, or flip Sparrow into Chapter 11 and credit bid its debt for the Sparrow real estate |
| | **FILO** | * Current holders include ESL, Tisch and Great American<br>* ESL intends to purchase the Great American owned FILO debt and credit bid the entire facility for inventory and receivables |
| | **IP/GL** | * Current holders include ESL, Cyrus and Kawa<br>* ESL intends to purchase Cyrus and Kawa's positions and credit bid the facility in exchange for the non-KCD IP of Sears, as well as the 17 ground leases which secure the facility |
| | **2L** | * ESL Currently owns $827mm of 2L debt and the remainder is held by other third parties<br>* ESL has directed the 2L collateral agent to credit bid in exchange for inventory and receivables<br>* 2L collateral agent signed credit bid letter as part of ESL's 12/28/18 bid package |
| **New Financing** | **New ABL Facility** | * ESL obtained commitment for a $1.3bn committed ABL facility to fund purchase of key assets of NewCo<br>— Facility is being led by a syndicate of three large global banks (BAML, Citi and RBC) |
| | **Real Estate Financing** | * ESL to raise up to $275mm of RE debt, secured by Dove & Sparrow real estate assets<br>— ESL has committed $87.5mm, and Cyrus will fund $87.5mm |
| | **Citi LC Facility** | * ESL and Cyrus to roll-over $271mm LC facility onto the balance sheet of NewCo as a new LC facility |
| | **Junior DIP Roll-Over** | * NewCo to assume up to $230mm of the Jr. Dip facility in exchange for the purchase of $230mm of value of previously unencumbered real estate assets |
| **Other** | **Releases** | * ESL is currently in negotiations with the estate for the purchase of a release<br>— APA seeks to purchase release for $35mm in cash, plus rights to participate in $100mm NewCo rights offering |
| | **Kenmore & Diehard** | * ESL is currently negotiating a transaction for Kenmore and Diehard with the PBGC, but can acquire Kenmore and Diehard through purchase of KCD notes |

ESL_507B_00000027

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# ESL Bid Evolution

**ESL's bid has been revised to purchase a 425 go forward store footprint (down from 505) and no longer includes SHIP, Kenmore or Diehard, but does include the purchase of the KCD notes**

*($ in millions)*

| 13D Transaction Offer (12/5) | | |
|---|---|---|
| Uses | $ | % |
| Purchase of Dove & Sparrow Real Estate | $965 | 21% |
| Purchase of IP/GL Collateral | 231 | 5% |
| Purchase of Inventory | 1,445 | 31% |
| Purchase of Credit Card / Pharmacy Receivables | 88 | 2% |
| New Citi LC Facility | 271 | 6% |
| Transaction Fees | 50 | 1% |
| Home Services PA Liability | 1,009 | 22% |
| Purchase of Previously Unencumbered Non-IP Assets | 500 | 11% |
| 2018 Gift Card Vintage | 13 | 0% |
| SYW Point Liability | 68 | 1% |
| **Total Purchase Price** | **$4,640** | **100%** |

| Updated ESL Offer | | |
|---|---|---|
| Uses | $ | % |
| Purchase of Dove Real Estate | $544 | 12% |
| Cash to Purchase Sparrow Equity[1] | 0.005 | 0% |
| Assumption of Sparrow Debt | 592 | 13% |
| New Citi LC Facility | 271 | 6% |
| Purchase of Inventory | 1,320 | 30% |
| Purchase of Credit Card / Pharmacy Receivables | 88 | 2% |
| Transaction Fees | 50 | 1% |
| Home Services PA Liability | 1,009 | 23% |
| Purchase of IP/GL Collateral | 231 | 5% |
| Previously Unencumbered Assets (Jr. DIP Roll-Over)[2] | 230 | 5% |
| 2018 Gift Card Vintage | 13 | 0% |
| SYW Point Liability | 68 | 2% |
| **Total Purchase Price** | **$4,417** | **100%** |

## Original Bid Commentary

- Assumed NewCo footprint of 505 go forward locations and associated inventory
- Assumed credit bid of Sparrow real estate portfolio
- Assumed purchase of SHIP, Kenmore and Diehard in the form of cash/stock/debt/waiver of AP liens

## Updated Bid Commentary

- Assumes NewCo footprint of 425 go forward locations and associated inventory
- Assumes purchase of Sparrow equity and foreclosure on real estate assets
- Does not assume purchase of SHIP, Kenmore or Diehard
- Assumes roll-over of Junior DIP ($230mm) in exchange for $230mm of unencumbered assets

1. Excludes assumption of liability through purchase of Sparrow equity
2. Assumes total purchase of unencumbered assets and designation rights purchased through roll-over of Junior DIP of $230mm. Assets includes Unencumbered RE, Innovel, SYW, Monark, SAC and Designation Rights

[6]

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# Why ESL's Bid Should Be Accepted

ESL's going concern bid provides the most value maximizing alternative for the Debtors and their constituents, as well as **has an important social impact in the form of significant job preservation**

**1** Going concern business preserves tens of thousands of jobs and ensures the continuance of an iconic American brand

- Best result for vendors, suppliers, customers and other unsecured creditors who can continue relationship with Sears

**2** Bid includes ~$1.1bn of cash: (i) entry into $900mm of new ABL financing, (ii) repayment of ~$220mm[1] of senior debt, and (iii) payment of $35mm of UCC settlement proceeds

**3** Provides for payment of substantially all of Sears' senior debt (~$4.3bn) through repayment, credit-bidding, roll-overs and assumption of debt as part of the offer

**4** Significantly reduces threshold for unsecured creditor recovery (~$300mm+ reduction); additionally:

- NewCo to assume ~$1.1bn of unsecured claims

- NewCo to assume contracts and leases

- Opportunity for out of the money creditors to participate in NewCo through equity investment

**5** Maximizes value of the assets

A liquidation scenario will lead to a significant degradation of value, as demonstrated by recent retail bankruptcy auctions having proven unsuccessful (e.g., Toys R Us, Sports Authority and BonTon) and Sears' multiple prepetition analyses

---

1. Does not account for planned use of segregated funds to Tranche A debt as a result of pending U-Haul transaction

ESL_507B_00000029

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# ① Positive Social Impact

- **Going Concern bid will save tens of thousands of American jobs**

  — Jobs saved provide good income to middle class American families

  — With the success of NewCo, thousands of additional jobs could be created

- Liquidation harms brand value while the Going Concern bid saves an iconic American brand

- Vendor community has strong interest in the survival of NewCo

  — Many landlords would prefer to see NewCo bid succeed and continue to receive rent payments as opposed to trying to recover in the GUC pool

  — Landlords rooting for liquidation should not drive process intended to maximize recovery for creditors

- NewCo's assumption of ~$80mm of customer rewards / gift cards sends strong message to customer community

- ESL is willing to assume some social costs (e.g., post closing severance)

- Liquidation results in administrative costs to implement a value minimizing transaction (e.g., severance, WARN Act, professional fees)

[8]

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

**② Cash Requirements**

- **ESL's bid requires a significant cash infusion (approximately $1.1bn):**

- **$850mm new ABL financing for payment of senior ABL debt**

  — Syndicated between 3 large global banks

- **~$220mm of senior debt paydown in form of cash to be paid by ESL**

  — Includes repayment of Cascade ($108mm Dove)[1], Great American ($35mm FILO) and Cyrus / Kawa ($79mm IP/GL)

- **$35mm of UCC settlement proceeds (see pg. 14)**

1.   Does not account for planned use of segregated funds to Tranche A debt as a result of pending U-Haul transaction

ESL_507B_00000031

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# ③ ESL's Proposal Eliminates ~$4.3bn of Sears' Debt

## Reduction in Sears Indebtedness

*(in $ millions)*

| Debt | Current Amount | Adjustment | Pro Forma Amount |
|---|---|---|---|
| **Senior DIP Facility** | | | |
| Senior DIP Facility - New Money | $300.0 | ($300.0) | - |
| Incremental DIP Facility | 350.0 | (305.0) | 45.0 |
| **Total DIP Facility** | **$650.0** | **($605.0)** | **$45.0** |
| ABL Revolving Credit Facility | 318.0 | (318.0) | - |
| 1st Lien Term Loan B | 571.0 | (571.0) | - |
| 1st Lien L/C Facility | 121.0 | (121.0) | - |
| ABL Revolving Credit Facility - Roll-up | 1,010.0 | (1,010.0) | - |
| **Total DIP Facility (inc. Roll-up)** | **$1,660.0** | **($1,615.0)** | **$45.0** |
| **Senior Secured Debt Facility** | | | |
| Cascade Real Estate Loan (Note A) | $108.1 | ($108.1) | - |
| ESL Real Estate Loan (Note B) | 723.3 | (723.3) | - |
| First Mortgage | 624.2 | (624.2) | - |
| **Total Real Estate Debt** | **$1,455.6** | **($1,455.6)** | **-** |
| IP/GL Term Loan (PIK) | 231.0 | (231.0) | - |
| Capitalized Lease Obligations | 59.8 | (59.8) | - |
| Citi L/C Facility | 271.1 | (271.1) | - |
| FILO | 125.0 | (125.0) | - |
| **Total Other 1st Lien Debt** | **$686.9** | **($686.9)** | **-** |
| ESL 2nd Lien Loan (PIK) | 320.0 | (320.0) | - |
| 2nd Lien Notes (Cash) | 89.0 | (89.0) | - |
| 2nd Lien Notes (PIK) | 181.0 | (181.0) | - |
| 2nd Lien Line of Credit Loans | 570.0 | (570.0) | - |
| 2L Adequate Protection Liens | - | 591.4 | 591.4 |
| **Total 2nd Lien Debt** | **$1,160.0** | **($568.6)** | **$591.4** |
| **Total Secured Debt** | **$4,962.4** | **($4,326.1)** | **$636.4** |
| **Senior Unsecured Debt Facility** | | | |
| Senior Unsecured Notes (Cash) | 411.0 | - | 411.0 |
| Senior Unsecured Notes (PIK) | 222.6 | - | 222.6 |
| SRAC Notes (Cash) | 185.6 | - | 185.6 |
| SRAC Notes (PIK) | 101.9 | - | 101.9 |
| **Total Unsecured Debt** | **$921.0** | **-** | **$921.0** |
| **Total Secured & Unsecured Debt** | **$5,883.5** | **($4,326.1)** | **$1,557.4** |

## Key Commentary

Ⓐ Assumes entirety of Senior DIP facility roll-up is paid down with new ABL financing

Ⓑ Assumes ESL buys out Cascade and credit bids real estate debt for Dove & Sparrow assets

Ⓒ Assumes IP/GL, FILO or Citi L/C are rolled over or credit bid in order to acquire assets

Ⓓ Assumes minimum amount of 2L is credit bid to acquire inventory and receivables



| | | |
|---|---|---|
| $5,883.5 | ($4,326.1) | $1,557.4 |
| Current Debt | De-Leveraging From Going Concern Bid | RemainCo Debt |

ESL_507B_00000032

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

## ③ How a Going Concern Maximizes Value by Claimant

| | Going Concern Bid | | Liquidation | |
| --- | --- | --- | --- | --- |
| | Value to Claimant | Recovery | Value to Claimant | Recovery |
| **DIP ABL Facility** | ⁂ Repaid in cash in full at transaction date | 100% | ⁂ Paydown over time from the liquidation of inventory and additional ABL collateral (including restricted cash and receivables) | 100% |
| **Citi L/C Facility** | ⁂ Facility to be rolled-over into NewCo | 100% | ⁂ Paydown over time from the liquidation of inventory and additional ABL collateral (including restricted cash and receivables)<br>⁂ Any residual claim to receive adequate protection lien | 100% |
| **FILO Facility** | ⁂ Used to credit bid for inventory and other ABL collateral<br>⁂ Third party (excluding Tisch) to be cashed out | 100% | ⁂ Paydown over time from the liquidation of inventory and additional ABL collateral (including restricted cash and receivables)<br>⁂ Any residual claim to receive adequate protection liens and claims | 100% |
| **IP/GL Facility** | ⁂ Used to credit bid for collateral, including ground leases and non-KCD intellectual property<br>⁂ Third parties (Cyrus, Kawa) to be cashed out | 100% | ⁂ Liquidation would result in harm to value of collateral<br>⁂ Paydown to result from the sale of ground leases and IP serving as collateral / potential credit bid for collateral<br>⁂ Any residual claim to be treated as deficiency claim | Possibly Impaired |
| **Dove & Sparrow** | ⁂ Dove debt used to credit bid for real estate collateral; Sparrow debt to be assumed<br>⁂ Any residual claims to receive deficiency claim | Assets Acquired | ⁂ Used to credit bid for real estate collateral<br>⁂ Any residual claim to receive deficiency claim | Possibly Impaired |
| **2L Indebtedness** | ⁂ Used to credit bid for inventory and other ABL collateral<br>⁂ Residual claims to include adequate protection super priority liens and claims | Assets Acquired | ⁂ Liquidation would result in harm to value of collateral<br>⁂ Paydown to result from the liquidation of inventory and additional ABL collateral (including receivables)<br>⁂ Any residual claim to receive adequate protection super priority liens and claims | Impaired |
| **Jr. DIP Facility** | ⁂ $230mm of facility to be rolled-over into NewCo in exchange for ownership interests in NewCo<br>⁂ Remainder of facility to receive sale proceeds or other cash payout from the residual assets of Debtor | Roll-over / Cash Paydown | ⁂ Liquidation would result in harm to value of collateral<br>⁂ Paydown to result from the sale of previously unencumbered assets<br>⁂ Any residual claim to be treated as deficiency claim | Possibly Impaired |
| **Unsecured Claims** | ⁂ TBD from ESL for settlement of any potential claims<br>⁂ All other unsecured claims to receive any proceeds from the residual assets of Debtor and other litigation or settlements | Settlement and Recovery | ⁂ Liquidation would result in significant reduction in value of assets<br>⁂ PBGC claims dilute recovery<br>⁂ All other unsecured claims to receive any remaining proceeds after adequate protection liens and claims are fully recovered | No Recovery |

[11]

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# ④ ESL Bid Eliminates Virtually All Claims Senior to Unsecured Creditors

## Unsecured Threshold Calculation

| Outstanding 1L Indebtedness on 2/1 | Going Concern | Liquidation |
|---|---|---|
| **Total 1L ABL Debt** | **$1,831.0** | **$1,831.0** |
| Less: Proceeds from GOB Sales | TBD | TBD |
| Less: Use of Restricted Cash | (100.0) | (100.0) |
| Plus: Operating Cash Burn | TBD | TBD |
| **1L ABL Debt on 2/1**[1] | **$850.0** | **$850.0** |
| **ABL Collateral At Close** | | |
| Inventory[1] | **$1,553.0** | **$1,553.0** |
| Credit Card / Pharmacy Receivables | **104.0** | **104.0** |
| Ⓐ **ABL Collateral on 2/1** | **$1,657.0** | **$1,657.0** |

| Illustrative 1L Paydown | Going Concern | Liquidation |
|---|---|---|
| Remaining ABL Collateral | $1,657.0 | $1,657.0 |
| @ *Illustrative Purchase Price*[2] | *1,408.5* | *1,367.1* |
| Less: 1L ABL Indebtedness | (850.0) | (1,246.0) |
| Ⓑ **Remaining ABL Collateral** | **$558.5** | **$121.1** |

| Pre-Petition Unencumbered Threshold | Going Concern | Liquidation |
|---|---|---|
| Wind Down Reserve | $240.0 | $240.0 |
| Less: MTN Issuance | (80.0) | (80.0) |
| Less: SHIP Proceeds | (55.0) | (55.0) |
| Less: Sale of Credit Card Litigation | (40.0) | (40.0) |
| Ⓒ Net Wind Down Reserve Funding Need | $65.0 | $65.0 |
| Ⓓ Plus: Jr. DIP | 45.0 | 100.0 |
| Total Pre-Adequate Protection Liens | $110.0 | $165.0 |
| Adequate Protection Liens and Claims - ESL[3] | $503.6 | $769.6 |
| Ⓔ Adequate Protection Liens and Claims - Others[3] | 87.8 | 134.2 |
| Total Post-Adequate Protection Liens, Pre Admin Claims | $701.4 | $1,068.8 |
| Ⓕ Plus: Admin Claims[4] | $583.0 | $583.0 |
| Less: Wind Down Reserve | (240.0) | (240.0) |
| Admin Claims Net of Wind Down | $343.0 | $343.0 |
| Plus: Intercompany Liens[4] | TBD | TBD |
| Ⓖ **Unsecured Value Threshold** | **$1,044.4** | **$1,411.8** |

1. Assumption per Company's daily cash forecast 12/21/2018
2. Assumes 85% purchase price in Going Concern scenario, while the liquidation scenario assumes 82.5% purchase price
3. Potential AP Liens and claims are calculated using 96% of the book value of petition date inventory to determine coverage; Assumes credit bid of 2L debt of ~$434mm leaving ~$591mm of AP liens and claims and additional deficiency claims
4. $583mm of administrative claims for materials from the Debtor in a going concern scenario; further diligence required to determine administrative claims in a liquidation scenario (e.g., severance and other wind down costs) and analysis illustratively assumes $583mm

## Commentary

Ⓐ Assumed remaining ABL collateral from Company forecast, based off 425 store footprint at 2/1

Ⓑ Illustrative bid price of collateral net of 1L paydown

Ⓒ Wind-Down Reserve net of proceeds to be received from potential transactions

Ⓓ In Going Concern Scenario, NewCo assumes $230mm of the Jr. DIP facility outstanding leaving $120mm for paydown; in the Liquidation scenario, assumed balance of $100mm due to shorter case duration resulting in smaller cash need

Ⓔ Assumes, in Going Concern Scenario, 2L is credit bid to buy the remaining ABL collateral, leaving deficiency claims including substantial adequate protection super priority claim of ~$591mm; in Liquidation scenario, the adequate protection super priority claims is ~$312mm higher

Ⓕ Illustratively assumes $583mm of Admin Claims in both Going Concern and Liquidation scenarios, which is composed of $139mm 503(b)(9) claims, $111mm Merchandise AP, $55mm, of non-merchandise AP, $35mm of severance, $18mm of WARN act related costs, $135mm of property taxes, $80mm of RemainCo Wind down costs, and an additional $11mm of other administrative claims

Ⓖ In the Liquidation scenario the unsecured value threshold is ~$300mm higher than in the Going Concern and the pool of unsecured claims is larger as a result of incremental deficiency claims from the Real Estate, 2L and IP/GL facilities

> *In the Going Concern scenario, a cash need of $453mm exists to cover the projected Admin costs ($583 of Admin Claims, plus the $45mm remaining Jr. DIP outstanding, less $175mm funded wind down reserve). In the Liquidation scenario, a cash need of $508mm exists, due to an incremental Jr. DIP Balance of $55mm*

[12]

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# ❹ Adequate Protection Claim Considerations

❋ **The Debtors have utilized some of the proceeds from the sale of inventory to fund the bankruptcy case**

— The inventory sold in connection to GOB sales is the collateral of the 2L debt, of which ESL is the largest holder

❋ **As a result of the decrease of value to the 2L inventory collateral, ESL has valid super priority claims on previously unencumbered assets**

— In a liquidation, these super priority claims must be paid before administrative claimants can be repaid

❋ **ESL would like to understand the following key questions from the Debtor:**

— What are the Debtor's views on how these claims would be repaid?

— What is the Debtor's estimate of the amount of these claims in a liquidation scenario, including factoring in potential for incremental diminution of value as a result of the liquidation?

— What is the Debtor's estimate of the timing for ESL to be repaid for these claims in a liquidation?

[ 13 ]

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# ④ Settlement Overview

In connection with the transaction, ESL would purchase a release to provide value to the Estate. ESL has proposed the following offer to the Estate:

* $35 million cash; plus

* Opportunity to buy $100 million of equity in NewCo through a Rights Offering

    ⋯ Equity has no voting rights (assumption is that this is a separate class of equity)

    ⋯ Put Right: Higher of appraisal or NewCo value at close; not exercisable until the 3rd anniversary of the Closing

* In exchange, the Estate would waive all related claims against ESL and its related parties (not to include Seritage, Land's End or other third parties)

* In addition, in connection to the ESL offer for NewCo, an assumption ~$1.1bn of liabilities would substantially reduce the unsecured claim pool and provide an increased recovery for the GUCs

* ESL is willing to discuss other frameworks for purchase of release

ESL_507B_00000036

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

## 4 Litigation Would Be Futile And Expensive

* There are no valid claims against ESL

* There was nothing improper about ESL's good-faith efforts to help Sears succeed

* Sears followed best practices in corporate governance, with independent board members and advisors

* Board was appropriately focused on avoiding the value destruction of bankruptcy, as experienced in Toys "R" Us (and now borne out in Sears' own bankruptcy proceedings)

* If litigation is chosen, ESL will vigorously defend itself over the long term

* Litigation would entail multiple actions on 10 or more transactions, require the development of new law on multiple issues, and be very costly, with ultimate success highly speculative

* It does not benefit any of the stakeholders to substantially overstate the strength of the claims against ESL or to discount ESL's powerful defenses and thereby overvalue potential recoveries in litigation

ESL_507B_00000037

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# 4 ESL Has Powerful Defenses

## The Facts Support ESL

* ESL and Lampert will be able to demonstrate that their efforts to help Sears succeed were undertaken in good faith and involved concrete steps and reasonable, actionable plans.

* There is copious evidence of Sears' state-of-the-art corporate governance, and of the care that the Board took to ensure that its decisions were based on complete and accurate information, supported by the analysis of reputable independent experts, and that appropriate steps were taken to address conflicts of interest.

* Business judgments of an independent board will not be overcome by hindsight-based second-guessing.

* ESL's actions did not result in any harm to other creditors of Sears. Most major creditor groups were able to reduce their exposure over the years because of the Board's actions. Insiders were not compensated to the detriment of creditors.

* Sears was solvent. It received fair value in all of the transactions at issue.

## The Law Supports ESL

* Claims relating to Lands' End are time-barred.

* Ample evidence demonstrates that Sears was solvent at and after the time of the Seritage transaction.

* Duff & Phelps and Cushman & Wakefield, independent experts at the top of their field, will stand behind their work in connection with the Seritage transaction.

* Intentional fraud claims are ridiculous and not worth responding to.

* Equitable subordination and recharacterization are extraordinary remedies and will not be available with respect to the financing transactions.

* There were no breaches of fiduciary duty.

* There is no valid claim for "deepening insolvency."

*The issues facing Sears today in Chapter 11 are the very reason that ESL and the Board took great efforts to avoid bankruptcy and its destruction of value.*

[ 16 ]

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# ⑤ Asset Value Maximization

※ **ESL believes that there is synergistic value which can only be achieved through the preservation of the Sears "ecosystem"**

※ **Preserving the cohesion of Sears' essential business segments is a pre-requisite for maximizing value**



ESL_507B_00000039

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408



Appendix

ESL_507B_00000040

HIGHLY CONFIDENTIAL
NOT FOR DISTRIBUTION
SUBJECT TO FRE 408

# NewCo Pro Forma Capital Structure

*(in $ millions)*

| Debt | Amount |
|---|---|
| **New ABL Facility** | |
| ABL Revolver Oustanding | $480 |
| ABL Term Loan | $250 |
| **Total ABL Factility** | **$730** |
| Citi L/C Facility | $271 |
| **Total Other 1st Lien Debt** | **$271** |
| **Senior Secured Debt Facility** | |
| Real Estate Debt | $175 |
| **Total Real Estate Debt** | **$175** |
| **Rollover Jr. DIP Facility** | |
| Jr. DIP Rollover | $230 |
| **Total DIP Facility** | **$230** |
| **Total Secured Debt** | **$1,406** |

ESL_507B_00000041