# EXHIBIT 20

HVAC EQUIPMENT INSTALLED ON THE ROOF



Exhibit 20   395

HVAC EQUIPMENT INSTALLED ON THE ROOF



Exhibit 20    396

# EXHIBIT 21

HVAC EQUIPMENT INSTALLED ON THE ROOF



Exhibit 21    397

HVAC EQUIPMENT STORED ON PREMISES WAITING TO BE INSTALLED



Exhibit 21    398

HVAC EQUIPMENT STORED ON PREMISES WAITING TO BE INSTALLED



Exhibit 21    399

HVAC EQUIPMENT STORED ON PREMISES WAITING TO BE INSTALLED



**Exhibit 21**    **400**

## HVAC EQUIPMENT STORED ON PREMISES WAITING TO BE INSTALLED



Exhibit 21    401



Exhibit 21    402

HVAC EQUIPMENT STORED ON PREMISES WAITING TO BE INSTALLED

HVAC EQUIPMENT STORED ON PREMISES WAITING TO BE INSTALLED



Exhibit 21 403

HVAC EQUIPMENT STORED ON PREMISES WAITING TO BE INSTALLED



Exhibit 21    404

# EXHIBIT 22

# `East River Group LLC

**724 S. Spring St., #802 Los Angeles, CA 90014**
**Tel# (213) 623-3800   Fax# (213) 634-6625**

September 25, 2018

**VIA Certified Mail: 7018 0360 0001 1098 4679 / Return Receipt Requested**

Sears, Roebuck and Co.
3333 Beverly Road
Hoffman Estates, Illinois 60179

**RE: NOTICE OF CONSTRUCTION**

Dear Mr Steven Velkel,

It was great meeting with you last week. Based on our meeting on September 21st, 2018, we would like to provide you with more information and dates in regards to the construction process and timeline for the Sears Building and the Sears Store. Hopefully, permits will be pulled in November 2018 and construction will start immediately after that.

*Attached is a site map that shows how we will be staging and phasing the construction as well as ways to avoid interfering with the Sears Store. The sitemap includes:*

1. The area in red is where the construction will begin  at the 1964 portion of the Building once permits are pulled
2. The area in green will be fenced off and will be part of our staging during the life of the construction
3. The area in blue refers to the area we will need to use from time to time (dates are tentative), during the construction that will not interfere during Sears business hours. If the area is needed during business hours, we will make sure to provide a one week notice.
4. The area in yellow is where we will provide pedestrian canopies at the two main entrances to provide protection from any work being done above.

*Hopefully, Sears will agree to close from February 1st, 2019 to August 15 2019. This will drastically shorten the construction in the Sears store.  Construction for the Sears Store would begin immediately during that time frame. Please refer to the attached timeline for the process and dates in regards to the construction for the Sears Store in 2019.*

Please note while construction may impose some challenges, once the project is completed, it will be incredibly beneficial for the future of Sears and the entire area. This development will provide Sears store with the following improvements and benefits:

1- A new HVAC system,
2- A new freight elevator
3- A new main for the electrical system,
4- Exterior painting
5- Parking lots will be resurfaced and restriped
6 - A new 2,600 parking structure
7- Providing ADA access into the Sears Store
8- Seismically retrofitting the building

Exhibit 22    405

# East River Group LLC

724 S. Spring St., #802 Los Angeles, CA 90014
Tel# (213) 623-3800   Fax# (213) 534-6625

**- Most beneficial is the Seismic retrofit.** Per the city ordinance, the building and store will have to be seismically upgraded within the next 20 years. If the building does not get seismically upgraded, the building and the lease for Sears will have no value to it. (Please refer to the city ordinance attached that explains why this is important).

In addition, the completion of this project will bring tremendous value to the Sears Store. It will bring over 1500 new residents in the building, over 2000 office employees in the 200,000 sq ft of office space and approximately 500 employees to the restaurants/bars at the food hall. In addition, it will become a destination for thousands of new patrons/visitors

We hope we were able to provide you with helpful information in regards to the future of this project.

If you have any questions or require any additional information, please feel free to contact me directly at (310) 780-7434 or by email at jon@shomofgroup.com.

Again, thank you so much for your patience and cooperation through this process.

Sincerely,

Jonathan Shomof
Project Manager
Office: (310) 780-7434
Email: jon@shomofgroup.com

Exhibit 22    406



1964 Building Starting Once
Permits Pulled (Nov 1 at the
latest)
Construction Staging
Area

Sears Entry Canopy
During Construction

Building Construction
Access Only During
None Business Hours
of Sears



PROJECT TIMELINE SEARS 2018

Exhibit 22    408



PROJECT TIMELINE SEARS 2019

Exhibit 22    409

# CITY OF LOS ANGELES
CALIFORNIA



**BOARD OF
BUILDING AND SAFETY
COMMISSIONERS**

—

**VAN AMBATIELOS**
PRESIDENT

**E. FELICIA BRANNON**
VICE PRESIDENT

**JOSELYN GEAGA-ROSENTHAL
GEORGE HOVAGUIMIAN
JAVIER NUNEZ**

ERIC GARCETTI
MAYOR

**DEPARTMENT OF
BUILDING AND SAFETY**
201 NORTH FIGUEROA STREET
LOS ANGELES, CA 90012

—

**FRANK M. BUSH**
GENERAL MANAGER
SUPERINTENDENT OF BUILDING

**OSAMA YOUNAN, P.E.**
EXECUTIVE OFFICER

SHOMOF,ERIC TRS ET AL I AND A SHOMOF TRUST LESSOR
206 W 6TH ST APT 100                     1-1
LOS ANGELES CA 90014-1849              00051

## ORDER TO COMPLY

| | |
|---|---|
| **REFERENCE NO.:** | **NDC-31** |
| **BUILDING ID NO.:** | **494670831382** |
| **EFFECTIVE DATE:** | **11/20/17** |

**COMPLIANCE DATES:**

| | | |
|---|---|---|
| **CHECKLIST:** | Within | **3 Years from Effective Date** |
| **PLAN SUBMITTAL:** | Within | **10 Years from Effective Date** |
| **WORK COMPLETION:** | Within | **25 Years from Effective Date** |

**SITE ADDRESS: 2650 E OLYMPIC BLVD**

Based on an inspection of the site address referenced above and review of departmental records, the Los Angeles Department of Building and Safety (LADBS) has determined that the building(s) located on the above-referenced site fall within the scope of Division 95, Article I, Chapter IX of the Los Angeles Municipal Code (LAMC), LAMC § 91.9500 *et seq.*, titled Mandatory Earthquake Hazard Reduction in Existing Non-Ductile Concrete Buildings (hereinafter, the "Ordinance"), and is therefore required to meet the minimum seismic standards of the Ordinance.

Therefore, you are hereby ordered to comply with the following requirements as set forth in LAMC § 91.9504.2:

1. *Within three (3) years after service of the "Order to Comply" letter described in Section 91.9505 (effective date of this letter), submit on the form provided by the Department a completed checklist for the Department to review and approve.*

2. *Within ten (10) years after service of the "Order to Comply" letter (effective date of this letter), submit a detailed evaluation of the building documenting whether the building meets or exceeds the requirements set forth in Section 91.9508. The evaluation shall include one of the following:*
   a. *Proof that the building was previously retrofitted in conformity with the provisions in either Chapter 85 or Former Chapter 95 (Ordinance 171,260; No. 179,324; No. 179,592; and No. 182,850) of the Los Angeles Building Code; or*
   b. *Proof that the building was previously retrofitted in conformity with the engineering requirements of this division; or*

**Page 2 of 3**
*Effective Date:* 11/20/17
**2650 E OLYMPIC BLVD**

    c. *A report consisting of a structural analysis that shows the building meets the engineering requirements of this division; or*

    d. *A report consisting of a structural analysis and plans for the proposed structural alteration of the building to comply with the engineering requirements of this division; or*

    e. *Plans for demolition of the building.*

**3.** *Within twenty-five (25) years after service of the "Order to Comply" letter (effective date of this letter), complete all necessary demolition or retrofit work on the building.*

## NOTICE OF RECORDATION OF CERTIFICATE

A CERTIFICATE HAS BEEN FILED WITH THE OFFICE OF THE LOS ANGELES COUNTY RECORDER STATING THAT THE BUILDING(S) ON THE ABOVE-REFERENCED SITE FALL(S) WITHIN THE SCOPE OF THE NON-DUCTILE CONCRETE RETROFIT ORDINANCE 183893, AND THAT THE OWNER HAS BEEN ORDERED TO STRUCTURALLY ANALYZE AND STRUCTURALLY ALTER OR DEMOLISH THE BUILDING(S) PURSUANT TO LAMC § 91.9504.2.

## NON-COMPLIANCE FEE WARNING:

IT IS YOUR REPONSIBILITY TO COMPLY WITH THIS ORDER AND CONTACT THE NON-DUCTILE CONCRETE RETROFIT UNIT LISTED BELOW BEFORE A NON-COMPLIANCE FEE IS IMPOSED. Failure to comply with this order within 15 days from the Compliance Date, may result in the imposition of the fee noted below.

A proposed non-compliance fee in the amount of $660.00 may be imposed for failure to comply with this order within 15 days after the Compliance Date, or any compliance date thereafter, unless an appeal or request for slight modification is filed according to the time limits specified in the "APPEAL PROCEDURES" below.

**NOTE:**  FAILURE TO PAY THE NON-COMPLIANCE FEE WITHIN 30 DAYS AFTER THE DATE OF MAILING OF AN INVOICE, MAY RESULT IN A LATE CHARGE OF TWO (2) TIMES THE NON-COMPLIANCE FEE PLUS A 50 PERCENT COLLECTION FEE FOR A TOTAL OF **$2,310.00.** Any person who fails to pay the non-compliance fee, late charge, and collection fee shall also pay interest. Interest shall be calculated at the rate of one percent per month.

## APPEAL PROCEDURES:

Within 60 days from the service date of this order, an owner may appeal the Department's initial determination that a building falls within the scope of the Ordinance. LAMC § 91.9505.5. Such an appeal shall be made in writing to the Board of Building and Safety Commissioners, and shall be accompanied by supporting documents (e.g., building permits for original construction, original construction plans, or proof that building complies with the minimum design standards of the Ordinance).

All other bases for appeals to this order, including appeal of any Department action that is taken incidental to this order, and requests for slight modification may be made pursuant to LAMC §§ 98.0403.1 - 98.0403.2.

**NOTE:**  Except for an appeal of the Department's initial determination that a building falls within the scope of the Ordinance, if an appeal or request for slight modification is not filed within 15 days of a compliance date, or extensions granted therefrom, the determination of the Department to impose and collect a noncompliance fee shall be final. LAMC § 98.0411(b).

**Page 3 of 3**
*Effective Date:* 11/20/17
**2650 E OLYMPIC BLVD**

## NOTICE OF TENANT RELOCATION ASSISTANCE:

Relocation assistance may be required if a tenant is evicted as a result of compliance with an order from a governmental agency. *See* LAMC §§ 151.09.A.11, 163.00-163.07. For more information regarding tenant relocation assistance, call the Los Angeles Housing and Community Investment Department (LAHCID) at 866-557-7368 or go to http://hcidla.lacity.org.

## PENALTY WARNING:

Any person who violates or causes or permits another person to violate any provision of the Los Angeles Municipal Code, including failure to comply with this order, shall be guilty of a misdemeanor, which is punishable by a fine of not more than $1,000.00 and/or six (6) months for each violation. LAMC §§ 11.00(m), 91.103.3.

If you have any questions or require additional information, please contact the Non-Ductile Concrete Retrofit Unit at (213) 978-4475 or email at ladbs.nonductileconcrete@lacity.org.

**NON-DUCTILE CONCRETE RETROFIT UNIT**
**201 N. FIGUEROA ST., SUITE 880**
**LOS ANGELES, CA 90012**



## NON-DUCTILE CONCRETE BUILDING CHECKLIST

**Order to Comply No./Reference No.:** _____

**Order to comply date:** _____

## BUILDING DATA

**Building Address:** _____  **Date:** _____

**Building Name:** _____

**Owner Name:** _____

**Email:** _____  **Phone #:** _____

**Owner Address:** _____

**Engineer's Name:** _____

**Email:** _____  **Phone #:** _____

**Engineer's Address:** _____

**Building Use:** _____

**Year Built:** _____   **Original Design building Code:** _____

**No. of Stories:** _____   **Length (ft):** _____   **Width (ft):** _____

**Levels below grade:** _____   **Story Height:** _____   **Total Height:** _____

## CONSTRUCTION DATA

Building designed to 1977 LABC (1976 UBC) or later building code:   ☐ Yes   ☐ No
(If yes, supporting documentation required to be provided with checklist)

Building elements supporting:
concrete floor or roof
☐ Structural Concrete Wall   ☐ Concrete Column
☐ Unreinforced Masonry Wall   ☐ Reinforced Masonry Wall
☐ Steel Columns   ☐ Steel Columns encased in Concrete
☐ Other _____

| | Structural Concrete | | Other | |
|---|---|---|---|---|
| Type of Floor/Roof: | ☐ | ( | | ) |
| Roof Materials/Framing: | ☐ | ( | | ) |
| Intermediate Floors/Framing: | ☐ | ( | | ) |
| Ground Floor: | ☐ | ( | Slab on grade | ) |

Please complete information on page-2 and -3.

Previous Building Retrofit:   Date: _____   City of Los Angeles Building Permit No.: _____

Standard Used: _____
Note: Substantiating documentation is required to be included with the checklist

----------------------------------------------------------------------------------------------------

## LATERAL-FORCE-RESISTING SYSTEM

|  |  | Longitudinal (Long side of Building) | Transverse (Short side of Building) |
|---|---|---|---|
| Vertical Elements: | Shear Wall | ☐ | ☐ |
|  | Moment Resisting Frame | ☐ | ☐ |
|  | Other | _____ | _____ |
| Diaphragms: | Concrete | ☐ Yes   ☐ No |  |
|  | Other material | _____ |  |

## IRREGULARITIES

Identify irregularities of building:

<u>Horizontal Irregularities</u>

☐ Possible Torsional

☐ Possible Extreme Torsional

☐ Reentrant Corner

☐ Diaphragm Discontinuity

☐ Out-of-Plane Offset

☐ Nonparallel System

<u>Vertical Irregularities</u>

☐ Possible Stiffness-Soft Story

☐ Possible Stiffness-Extreme Soft Story

☐ Possible Weight (Mass)

☐ Possible Vertical Geometric

☐ In-Plane Discontinuity in Vertical Lateral Force-Resisting element

☐ Possible Discontinuity in Lateral Strength-Weak Story

☐ Possible Discontinuity in Lateral Strength-Extreme Weak Story

----------------------------------------------------------------------------------------------------

If the building is determined to be a "Non-Ductile Concrete Building", within ten (10) years after service of the "order to comply", submit a detailed evaluation of the building documenting whether the building meets or exceeds the requirements set forth in Section 91.9508 of Ordinance No. 183,893. The evaluation shall include one of the following:

(a) Proof that the building was previously retrofitted in conformity with the provisions in either Chapter 85 or former Chapter 95 (Ordinance No. 171,260; No. 179,324; No. 172,592; and No. 182,850) of the Los Angeles Building Code; or

(b) Proof that the building was previously retrofitted in conformity with the engineering requirements of this provision; or

(c) A report consisting of a structural analysis that shows the building meets the engineering requirements of this provision; or

----------------------------------------------------------------------------------------------------

(d) A report consisting of a structural analysis and detailed plans for the proposed structural alteration of the building to comply with the engineering requirements of this provision of Chapter-95 (Ordinance-183893); or

(e) Plans for demolition of the building.

**STATEMENT FROM ENGINEER OF RECORD**

"I, _____ as the licensed Engineer/Architect for the completion of the
          (Print Name)
LADBS Non-Ductile Building Checklist, have performed the necessary investigation of the building, have reviewed the available construction documents of the building, and have determined that the subject building **(IS) (IS NOT)** within the scope of LABC Chapter 95, Mandatory Earthquake Hazard Reduction in Existing Non-Ductile Concrete Building (Ordinance No. 183893, effective Nov. 22, 2015).

Signature: _____    Seal:

Date: _____ / _____ / _____

What information is needed to exempt affected building from Non-Ductile Concrete Ordinance:

1) Copy of Building Permit showing application for a new building was submitted to LADBS after January 13, 1977.

2) Copy of historical building plans showing building construction does not include concrete floors and/or roofs supported by concrete walls, concrete columns, or concrete frames with or without masonry infills or any combination thereof. Specific areas of the building construction will need to be verified by non-destructive testing or visual exposure and inspections made by LADBS to verify the building construction is consistent with the building plans. Within 3 years from the service date of the order to comply, a building permit application will need to be submitted to the structural plan check section along with all supporting documentations to verify information provided.

3) Where historical building plans are not available, schematic diagrams showing materials of construction may be used in lieu of historical building plans.

**PURPOSE:** The purpose of this form is to confirm that this building is within the scope of the ordinance.

| DEPARTMENT USE ONLY | |
|---|---|
| REVIEWED BY: | RECEIVED DATE: _____ / _____ / _____ |

Los A...
Non-D...
Conc...
Ret...
Prog...

Property Ow...

Exhibit 22

## For additional information, please contact:

**DEPARTMENT OF BUILDING AND SAFETY**

### Non-Ductile Concrete Retrofit Unit
201 N. Figueroa St., Suite 880
Phone: (213)978-4475
Email: ladbs.nonductileconcrete@lacity.org

Office Hours:
7:30 am – 4:30 pm M, T, Th, F
9:00 am – 4:30 pm W
http://ladbs.org/non-ductile

For Tenant Habitability Plan and Cost Recovery Guide, contact the Housing and Community Investment Department (HCIDLA):

### Tenant Habitability Program Unit
(213) 252-1464
hcidla.code.seismic@lacity.org
http://hcidla.lacity.org/tenant-habitability-program

### Cost Recovery Applications & RSO Information
(866) 557-RENT (7368)
hcidla.rso@lacity.org
http://hcidla.lacity.org

## Financial Help by PACE Program

### What is PACE (Property Assessed Clean Energy)?

PACE allows for commercial and residential property owners to obtain financing for seismic retrofit improvements in addition to energy efficiency, water conservation, and renewable energy improvements.

Property owners participating in PACE receive financing through the PACE provider and repay the investment as an assessment added to the property tax bill.

### How does PACE work?

To schedule a one-on-one meeting or to speak with someone to learn more about your options, call (877)755-2237 or email info@lapace.org

http://lapace.org

## Retrofitting Resources

**LADBS Non-Ductile Concrete Retrofit Program:**

http://ladbs.org/non-ductile

**Ordinances:**
Non-Ductile Concrete Retrofit Ordinance eff. 11/22/15 Ord. 183893:
http://clkrep.lacity.org/onlinedocs/2014/14-1697_S1_ord_183893_11-22-15.pdf
Substantial Structural Damage Ordinance eff. 5/11/16 Ord. 184169:
http://clkrep.lacity.org/onlinedocs/2014/14-1697_ord_184169_5-11-16.pdf

**Structural Engineers Association of Southern California (SEAOSC) Find an Engineer:**
http://www.seaosc.org/find-an-engineer

...itions

...te Building:

having concrete floors ...ith or without beams, ... walls and/or concrete ...crete frames with or ...s, or any combination ...to a permit application ...t was submitted before

building by altering or ...ments to mitigate the ...xisting buildings.




## ...le Concrete Program

**...m about?**

...rogram is to reduce the ...of life that may result ...earthquakes on non-...ildings.   Non-ductile ...: a major contributor to ...around the world. In ...tructed to building code ...the code improvements ...lar risk for collapse and ...it life safety hazards.

...l concrete buildings are ...nted capacity to absorb ...ground shaking beyond ...range, causing the ...se and mortality for ...am provides a guide for ...minimum standards to ...nce of these buildings.

**...affected?**

...ed that your building ...criteria:

...rete floors and/or roofs, ...thout beams, supported ...alls and/or concrete ...concrete frames with or ...ry infills, or any ...of; and,

...a permit application for ...at was submitted to the ...e January 13, 1977.

...am does not apply to ...y dwellings or detached

## Services

...S Non-Ductile Concrete ...: http://ladbs.org/non-...ng information:

Questions

...e Concrete Building

## Property Owner's Responsibility

**What do I need to do first?**

The property owner must hire an engineer licensed by the State of California to:

- Evaluate the building, complete the LADBS "Non-Ductile Concrete Building Checklist", and submit it with the supporting documents required by the checklist to LADBS Non-Ductile Concrete Retrofit Unit within three years from the date of the "Order to Comply" letter.

**What do I do next?**

Within 10 years from the date of the "Order to Comply" letter, submit proof of previous retrofit in conformance with Chapter 85 or former 95 of the Los Angeles Building Code, a structural analysis showing compliance with the retrofit ordinance, structural analysis and plans to retrofit, or plans to demolish the subject building(s) to the LADBS. Plans and calculations will be checked for compliance with the Non-Ductile Concrete Retrofit Ordinance. LADBS will provide guidance for all necessary steps to obtain the retrofit permit, which includes obtaining clearances from pertinent agencies.

The property owner must notify the residential tenants of the building in writing per HCIDLA regulations prior to issuance of the building permit for the building retrofit.

**What do I do after a permit is issued?**

Begin construction and request inspections at the required phases of construction at: http://ladbs.org/

**How do I find ...**

An **Engineer?** Please visit the State of California's Board for Professional Engineers, Land Surveyors, and Geologists for information regarding licensed engineers: http://bpelsg.ca.gov
An **Architect?** Please visit the California Architects Board for information regarding licensed architects: http://cab.ca.gov
A **Contractor?** Please visit the Contractors State License Board for information regarding hiring a contractor and to verify if a contractor is licensed and insured: http://cslb.ca.gov

## Compliance Requirements

**How soon do I have to comply?**

### 3 years

from the date of the Order to Comply



### 10 years

from the date of the Order to Comply



### 25 years

from the date of the Order to Comply

## Submittal Package

**What should I submit to LADBS?**

The documents required for submittal are:

- Structural analysis/calculation package
- Architectural plans
- Structural plans and construction details

For more details, see the LADBS Information Bulletin for Submittal Requirements.

## Appeal F

**What should I do if ...**

is exempt from the p ...The owner of the build ...60 days of the service ...Comply" letter by submi ...to the Board of ...Commissioners. The ...supporting documents, ...permits for original con ...permit and final inspe ...prior retrofit that con ...Ductile Concrete Retrofi

**What information do ...to show my building ...the Non-Ductile ...Ordinance?**

The following document

- Provide building ...(new) building ...submitted to LAD ...13, 1977, or
- Provide proof th ...previously retrofit ...with all the provis ...Chapter 85 or ...(Ordinance No. 1 ...No. 172,592; and ...Provide a copy o ...plans showing buil ...of concrete constru

Specific areas of the bu ...need to be verified by r ...or visual exposure and ...approved by LADBS t ...construction is consisten

The provided constructio ...and other supporting do ...submitted to LADBS anc ...be required to  re ...documentation.

Exhibit 22   417

# EXHIBIT 23

**IN RE: SEARS HOLDING CORPORATION, et al.**

**IZEK SHOMOF**
**June 24, 2019**

---

**Page 61**

1  what I said.
2      Q   And under the lease and amendment, there's no
3  obligation for Sears to close for six months; correct?
4      A   Absolutely not.
5      Q   Okay. So I understand that you believe
6  there's value for Sears. Fine.
7          But what I'm trying to understand is what
8  Sears has done that is in breach of the amendment or the
9  lease by not shutting down for six months. That's what
10  I'm trying to understand.
11      A   All they could have done is continue
12  negotiating with me and says, Izek, work around us.
13  We're allowing to give you the space what the lease
14  says. We are not going to shut down. And if they would
15  have said that, I would have maneuvered the whole
16  situation and tried to work with my general contractor
17  that is going to be doing the job to work within Sears'
18  space and not asking them to shut down. The problem
19  with it occurred that they just stopped negotiating,
20  stopped talking to us due to Sears' bankruptcy.
21      Q   I understand that's your view. I'm just
22  asking specifically as it relates to the obligations
23  under the lease and the amendment. And as I understand
24  it, you made one proposal, as you testified today, that
25  Sears shut down for six months without any compensation:

---

**Page 62**

1  is that correct?
2      A   I asked Sears to shut down, and they asked
3  me -- they said it will cost you. And I says I'm
4  already contributing a lot to this. And if they would
5  have said definitely it will cost you "X" amount of
6  dollar, I would -- may say okay. I have no choice. I
7  need to get it done.
8          But the point -- the whole point here, it's
9  not about Sears wanting money and I said no and that's
10  when it fell apart. It's that Sears did not say it will
11  only need to be with money. Sears did not say you can
12  only do it partially or otherwise do it partially. I
13  would -- I would revisit the whole situation and just do
14  it partially, if needed.
15      Q   Did you make any proposal other than Sears
16  shutting down for six months without compensation?
17      A   There was no one to talk to. I mean, it's
18  basically Sears. I spoke to Steve repeatedly, and Steve
19  says, Izek, I have no one to talk to.
20      Q   I understand that your view is that there was
21  no one to talk to and Steve told you there was no one to
22  talk to. My question is whether or not when talking to
23  Steve or talking to anyone, you proposed any other
24  solutions rather than shutting down for six months
25  without any compensation. "Yes" or "no," did that

---

**Page 63**

1  happen?
2      A   Propose to who?
3      Q   To Steve.
4          Did --
5      A   When Steve's telling me no one to talk to --
6      Q   Mr. Shomof, can you please answer my question.
7  Did you at any time provide an alternative proposal
8  other than shutting down for six months without
9  compensation? It's a yes-or-no question.
10      A   I was trying to, and Steve told me flat out no
11  one to talk to.
12      Q   I'm not asking you what Steve told you. I'm
13  asking whether you and the landlord made any other
14  proposals. It's a yes-or-no question, sir.
15      A   Proposal, no. Attempt to make proposal, yes.
16      Q   Okay. And what was the proposal you wanted to
17  make?
18      A   Let's talk about how we going to get it done,
19  if it needs to be partially doing it or you guys willing
20  to close down.
21      Q   Was it a condition for your construction
22  financing that Sears close down for six months?
23      A   It was a -- they want to see some kind of an
24  agreement.
25      Q   Was it a condition of your proposed

---

**Page 64**

1  construction financing that Sears shut down for six
2  months?
3      A   The answer is they wanted to see some kind of
4  an agreement.
5      Q   And what was the condition of that agreement?
6  What did it need to say?
7      A   You need to provide us an agreement with Sears
8  that they will allow you to do the seismic retrofit.
9  And at the same time, we want to see from the general
10  contractor if it going to be partially, we want to see
11  the general contractor can get the job done, the overall
12  job done, because it was a 36-months construction.
13          So if we would have known that it's a
14  definitely no, no with Sears shutting down for six
15  months, we would go the route of doing it partially. We
16  will talk to the general contractor that this job needs
17  to be done partially. And I would ask for Sears to
18  let's make a -- the agreement stating that we are going
19  to go in with -- eight months in and out or a year in
20  and out. But when Sears refuse to talk and no one to
21  talk to, that's where the whole thing fell apart.
22      Q   Mr. Shomof, did you ever tell your contractor
23  to develop a plan that would --
24      A   Yes.
25      Q   -- require -- let me finish the question.

---

Exhibit 23   418

# EXHIBIT 24

6/14/2019                           Pacific Investment Mail - Sears Store time line

                              Izek Shomof <izek@shomofgroup.com>

## Sears Store time line
3 messages

**Jonathan Shomof** <jon@shomofgroup.com>                    Fri, Sep 28, 2018 at 3:36 PM
To: svelkei@bautelaw.com, abaghdishyan@bautelaw.com, Izek Shomof <izek@shomofgroup.com>, Jimmy Shomof
<jimmy@shomofgroup.com>, Leo Pustilnikov <leo@slhinvestments.com>, Marc Cohen <marc@clgapc.com>, Diony Rebuta
<diony@shomofgroup.com>, Ericson Alviz <ericson@citifymgt.com>

Hello Steve,

Hope all is well with you
Please include Damian and I believe it was Nikko
Attached is what we spoke about last week.
Please let me know if you have any questions

Thanks

Jonathan Shomof



shomofgroup.com
724 South Spring St Suite 802
Los Angeles, CA 90014
Office: 213-378-1006
Cell: 310-780-7434

📄 **Sears Letter.pdf**
5693K

---

**Steven A. Velkei** <svelkei@bautelaw.com>                    Fri, Sep 28, 2018 at 5:59 PM
To: Jonathan Shomof <jon@shomofgroup.com>, Artyom Baghdishyan <abaghdishyan@bautelaw.com>, Izek Shomof
<izek@shomofgroup.com>, Jimmy Shomof <jimmy@shomofgroup.com>, Leo Pustilnikov <leo@slhinvestments.com>, Marc
Cohen <marc@clgapc.com>, Diony Rebuta <diony@shomofgroup.com>, Ericson Alviz <ericson@citifymgt.com>

This shall confirm receipt of your letter. I will circulate to Sears.

To be clear, this letter does not appear to be offered in the spirit in which we discussed it last week. It comes across more
as a direction from you as opposed to offering a proposed timeline and outlining some issues that remain to be negotiated
before the process begins.

The history of this project is riddled with errors that have put our employees and patrons at risk and breached negotiated
protocols, not to mention broken promises about timing. Just two months ago, you notified us that you would likely not
pursue the project.

Before anything proceeds, we need the fire issue resolved and we then need to come together to agree upon a process
to avoid business disruption to Sears and risk to our employees and patrons while the construction is pending. That is a
fundamental right under the lease. If we have to go to court to enforce those rights, we will.

Focusing on the fire issue, I do not share your collective optimism that this issue will get resolved quickly. The fire
detection system in the rest of the building is not only inactive, but has been dismantled by your crews. I am assuming
that affects 1.7 million square feet and puts the store at risk. It has to be resolved first and foremost.

We do share a desire for this project to proceed both for the store and the community. We have expressed that to you.
We also understand time is money. But, the project has to be done right and without risk of harm. That requires          SLH000601

https://mail.google.com/mail/u/1?ik=32c3cbe77f&view=pt&search=all&permthid=thread-f%3A1612892556844719534&simpl=msg-f%3A1612892556...    1/2

Exhibit 24    419

6/14/2019                              Pacific Investment Mail - Sears Store time line

collaboration.

I have offered to meet your lawyer so we can start to work through these issues and I renew this offer.

Steve


Sent from my Verizon, Samsung Galaxy smartphone
[Quoted text hidden]

---

**Jonathan Shomof** <jon@shomofgroup.com>                          Mon, Oct 1, 2018 at 1:36 PM
To: Izek Shomof <Izek@shomofgroup.com>, Jimmy Shomof <jimmy@shomofgroup.com>

Just wanted to confirm you saw this email
let me know if you want me to respond?

Jonathan Shomof


### shomof
### group
shomofgroup.com
724 South Spring St Suite 802
Los Angeles, CA 90014
Office: 213-378-1006
    Cell: 310-780-7434


[Quoted text hidden]

# EXHIBIT 25

**SulmeyerKupetz**
A PROFESSIONAL CORPORATION

December 11, 2018

E-MAIL dkupetz@sulmeyerlaw.com
DIRECT DIAL 213.617.5274

## VIA E-MAIL AND FEDEX

Weil, Gotshal & Manges
767 Fifth Avenue
New York, New York 10153
Attn.:
Ray C. Schrock, P.C. – ray.schrock@weil.com
Garrett A. Fail – garrett.fail@weil.com
Jacqueline Marcus –
jacqueline.marcus@weil.com
Sunny Singh – sunny.singh@weil.com

Re:    Sears Building/Sears Store - Boyle Heights, Los Angeles, California (Store No. 1008)

Dear Counsel:

My firm represents Izek Shomof and Aline Shomof Irrevocable Children's Trust Dated February 11, 1999, Vegas Group, LLC, and East River Group, LLC (collectively, "Landlord"), the owners of the iconic Sears building in Boyle Heights, Los Angeles, California. The building was constructed by Sears in 1927 as a mail order distribution center and Sears currently operates a retail store at the premises (Store No. 1008). Sears, Roebuck and Co. has a 99 year lease with Landlord that commenced May 5, 2011. Rent was prepaid under the lease at the rate of $1 per year (there are other monetary obligations, however, outstanding under the lease, including without limitation, CAM charges, real estate tax reimbursement and construction expense reimbursement).

Prior to Sears entering Chapter 11, Landlord was in discussions with Sears regarding the planned rehabilitation of the building and the seismic retrofitting, new HVAC system, ADA compliant access, new freight elevator, and other improvements to and work to be done in the leased premises. Following commencement of the Chapter 11 cases by Sears, it appears to Landlord that the business representatives of Sears have become non-responsive. I am reaching out to you in an effort to resume discussions regarding work to be done in the leased premises.

Included with this letter is a letter sent by Landlord to Sears dated September 25, 2018, explaining the desire to commence construction promptly. The letter also explained the dramatic and necessary improvements that would greatly benefit the leasehold interest held by Sears if the work to be done in the leased space is able to proceed, including seismic retrofitting, new HVAC system, and other improvements. Sears did not respond to Landlord's September 25 letter.

333 SOUTH GRAND AVENUE, SUITE 3400, LOS ANGELES, CA 90071 • TELEPHONE 213.626.2311 • FACSIMILE 213.629.4520
2424 SE BRISTOL ST, SUITE 300, NEWPORT BEACH, CA 92660 • TELEPHONE 949.721.7300 • FACSIMILE 213.629.4520

DAP\ 2657592.1 12/11/2018 (10:53 AM)                                                      Exhibit 25    421

Weil, Gotshal & Manges
December 11, 2018
Page 2


Landlord is convinced that allowing the work to be done in the leased premises to proceed as
requested will tremendously increase the value of the leasehold interest held by Sears'
bankruptcy estate.  Landlord desires to re-engage with Sears to attempt to work out a plan for
doing so.  Can you please advise whether Sears is willing to re-engage and, if so, who landlord
should be communicating with on this matter and please provide contact information for the
Sears representative(s).

Your courtesy and response with regard to this matter would be greatly appreciated.




Very truly yours,

SulmeyerKupetz
A Professional Corporation


David S. Kupetz

# EXHIBIT 26

IN RE: SEARS HOLDING CORPORATION, et al.

IZEK SHOMOF
June 24, 2019

Page 105

1    A    It could have been pulled.
2    Q    What do you mean "could have been pulled"?
3    A    Well, we pulled the permit, I think,
4 February 5th or 10th.
5    Q    Okay.
6    A    The reason we decided to do that, just to
7 preserve our entitlement. We didn't want to pull that
8 if it wouldn't be the issue with the entitlement because
9 we were waiting for financing to pay for the permit fee.
10 But the end of the day, we pull it out of pocket just to
11 preserve our entitlement. But it could have been pulled
12 a month prior or a week prior.
13    Q    To be clear, on the date of this letter was
14 written on December 25th, 2018, you had not finalized or
15 closed on your construction financing; correct?
16    A    Finalized our construction financing? Like I
17 said before and I'm saying it again, our construction
18 financing had a few conditions that the majority of the
19 conditions were very, very, very minor. Could have been
20 done with no -- no issue. The one major issue was the
21 Sears issue, the Sears agreement issue.
22    MR. WEAVER: Let's use tab 13.
23    Let's make this Exhibit Number 12.
24    (Exhibit 12 marked.)
25 ////

Page 106

1 BY MR. WEAVER:
2    Q    Mr. Shomof, we've handed you exhibit marked
3 Number 12, another e-mail chain bearing Bates Number
4 SK 6801 to 6802.
5    Do you see at the bottom of this first page,
6 there appears to be a e-mail from Steve to Jonathan,
7 you, and others?
8    A    Yes.
9    Q    Okay. And this is dated February -- I'm
10 sorry -- Friday, September 28th.
11    You see that?
12    A    Yes.
13    Q    Okay. So he's confirmed receipt of your
14 letter; is that right?
15    A    Yes.
16    Q    And he states "To be clear, this letter does
17 not appear to be offered in the spirit in which we
18 discussed it last week."
19    What did you understand him to mean by "not in
20 the spirit"?
21    A    I don't know.
22    Q    He states that it comes across more as a
23 direction from you as opposed to offering a proposed
24 timeline outlining some of the issues that remain to be
25 negotiated.

Page 107

1    A    So he understood it that way. That was not
2 our intention direction. We told him that's what we
3 talked about. That's how we spelled it out in the
4 letter.
5    Q    And so your understanding was that the letter
6 itself had spelled out the timeline necessary --
7    A    Yes.
8    Q    -- to complete the project?
9    And that it resolved all the issues that you
10 discussed during the meeting prior to sending the
11 letter?
12    A    To preserve all the issue. There's always
13 other issue comes along. But I don't know. Most likely
14 it was. It's a very vague question, you know? From
15 minute to minute, issues can occur. What issues are you
16 talking about?
17    Q    Well, I don't know. You were in the meeting.
18 I wasn't, sir. That's why I'm asking.
19    A    Oh, you talking about the issues of the
20 meeting?
21    Q    Correct.
22    A    Oh, I'm sorry.
23    Q    That Steve seems to be referring to.
24    A    Okay. Well, the issues -- we spelled out the
25 summary of the conversation. We send him that e-mail.

Page 108

1 He understood it differently. So the answer is no, I
2 don't understand what exactly he mean by the spirit of
3 the issue.
4    Q    In the third paragraph, he states "The history
5 of the project is riddled with errors that have put our
6 employees and patrons at risk and breached negotiated
7 protocols, not to mention broken promises about timing.
8 Just two months ago, you notified us that you would
9 likely not pursue this project."
10    Did you ever communicate in sum or substance
11 to Steve or anyone representing Sears that you were not
12 likely to pursue the redevelopment project?
13    A    That's not the way he spelled it out, not at
14 all. When I was sitting down at Steve's office with
15 Alan Shaw, I said it's getting costly because Alan said
16 it may cost you for us to shut down. I said the project
17 is getting costly. Don't bring it to a situation, come
18 with a number that I'm not going to be able to do it.
19    Q    Okay. Well, let's go back because I thought
20 I'd asked you about all the details of that conversation
21 in that meeting. So let's go back to that meeting
22 because I want to make sure I have the complete picture.
23    So during that meeting, did you -- what did
24 you say about the project becoming costly?
25    A    It's for them, you know. When we are talking

Exhibit 26    423

# EXHIBIT 27



# REQUEST FOR MODIFICATION OF BUILDING ORDINANCES
UNDER AUTHORITY OF L.A.M.C. SECTION 98.0403

| PERMIT APP. #: 16016 - 10000 - 05707 | DATE: 2.21.19 | **For City Dept. Use Only** |
|---|---|---|
| JOB ADDRESS: 2650 E. OLYMPIC BLVD | | |

| Tract: TR 9410 | Block: NONE | **Misc.** |
|---|---|---|
| | Lot: PR 157 | |

| Owner: EAST RIVER GROUP, LLC | Petitioner: OMGIV NING |
|---|---|
| Address: 724 S. SPRING ST #501 | Address: 724 S. SPRING ST #501 |
| City LOS ANGELES  State CA  Zip 90014  Phone 310 7807934 | City LOS ANGELES  State CA  Zip 90014  Phone 213 896.5602 |

**REQUEST** (SUBMIT PLANS OR ADDITIONAL SHEETS AS NECESSARY)    CODE SECTIONS: L.A.M.C 98.0603

To allow an extension of time until 9.16.2019 in which to obtain a building permit for plans filed for checking on 3.16.2016 under plan check number

2. To allow the permit to be issued using the 2014 LABC, Current Zoning, Disabled Access Requirements, and LA Green Code Requirements.

**JUSTIFICATION** (SUBMIT PLANS OR ADDITIONAL SHEETS AS NECESSARY)

SEISMIC RETROFIT PORTION HAS BEEN APPROVED, BUT ADDITIONAL TIME IS REQUIRED FOR THE CHANGE OF USE PORTION

| Jonathan Sargent | | Owner |
|---|---|---|
| Owner/Petitioner Name (Print) | (Signature) | Position |

## FOR CITY DEPARTMENT'S USE ONLY BELOW THIS LINE

Concurrences required from the following Department(s)                                    Approved    Denied

| | | | | Approved | Denied |
|---|---|---|---|---|---|
| ☐ Los Angeles Fire Department | Print Name___ | Sign___ | | ☐ | ☐ |
| ☐ Public Works Bureau of Engineering | Print Name___ | Sign___ | | ☐ | ☐ |
| ☐ Department of City Planning | Print Name___ | Sign___ | | ☐ | ☐ |
| ☐ Department of County Health | Print Name___ | Sign___ | | ☐ | ☐ |
| ☐ Other ___ | Print Name___ | Sign___ | | ☐ | ☐ |

| **DEPARTMENT ACTION** | Wing Kam Suen | | 2.21.2019 |
|---|---|---|---|
| | Reviewed by: (Staff) (Print) | Sign | Date |
| ☐ GRANTED  ☐ DENIED | | | |
| | Action taken by: (Supervisor) (Print) | Sign | Date |

**NOTE:   IN CASE OF DENIAL, SEE PAGE #2 OF THIS FORM FOR APPEAL PROCEDURES**

| **CONDITIONS OF APPROVAL** (Continued on Page 2): | **For Cashiers Use Only** (PROCESS ONLY WHEN FEES ARE VERIFIED) |
|---|---|
| 1. This extension approval is contingent upon the owner submitting all plans | |
| for the proposed work to the Department to recheck and verify its | |
| compliance with the current Zoning, Disabled Access (Title 24) | |
| and Green Building Code Requirements. An additional plan check fee based on plan | |

**FEES**  (DEPARTMENT USE ONLY)

| | | | |
|---|---|---|---|
| Appeal Processing Fee.. (No. of Items) = | 2 | X $130 + $39/addl | = 169.00 |
| Inspection Fee ................. (No of Insp.) = | | X $ 84.00 | = |
| Research Fee ... (Total Hours Worked) = | 2 | X $104.00 | = 208.00 |
| Subtotal .......................... | | | = 377.00 |
| Development Services Center Surcharge | | X 3% | = 11.31 |
| Systems Development Surcharge .......... | | X 6% | = 22.62 |
| Total Fees ........................ | | | = 410.93 |

Fees verified by:

Print and Sign  Wing Kam Suen

PC-STR.Mod 41 (Rev. 05-22-2017)                    Page 1 of 2                    www.ladbs.org

Exhibit 27    424

| Permit App #: 16016 - 10000 - 05707 | Job Address: 2650 E. OLYMPIC BLVD |
|---|---|

## CONDITIONS OF APPROVAL (Continued from Page 1)

1. (Cont.) review and correction verification time will be assessed by the Department. The date the plans are resubmitted in compliance with this condition shall be construed as the plan check submittal date for the purpose of determining the applicability of laws, regulations, and ordinances.
2. This extension does NOT extend to the compliance date of any order to comply that any have been issued to this site by LADBS for a code violation.
3. This extension approval is contingent upon the owner re-obtaining required clearances for any expired agencies' approval plus any additional clearances due to new regulations.

# CITY OF LOS ANGELES
# BOARD OF BUILDING AND SAFETY/DISABLED ACCESS
# COMMISSION APPEAL FORM
### (Must be Attached to the Modification Request Form, Page 1)

**AFFIDAVIT** – LADBS BOARD OF BUILDING AND SAFETY COMMISSIONERS – RESOLUTION NO. 832-93

I, _____ do state and swear as follows:
(Print or Type Name of the Person Signing this Form)

1. The name and mailing address of the owner of the property (as defined in the resolution 832-93) at _____ as shown on the appeal application (LADBS Com 31) are correct, and
2. The owner of the property as shown on the appeal application will be made aware of the appeal and will receive a copy of the appeal.

I declare under PENALTY OF PERJURY that the foregoing is true and correct.

Owner's Name(s) _____    _____
(Please Type or Print)    (Please Type or Print)

Owner's Signature(s) _____    (Two Officers' Signatures Required for Corporations)
(Please Sign)

Name of Corporation _____    _____
(Please Print Name of Corporation)    (Please Type or Print)

Dated this _____ day of _____ 20_____

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT————SIGNATURE(S) MUST BE NOTARIZED

State of _____ County of _____ on _____

before me, _____, personally appeared _____
Name, Title of Officer (e.g. Jane Doe, Notary Public)    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing is true and correct.

WITNESS my hand and official seal.    Signature _____

As a covered entity under Title II of the Americans with Disabilities Act, the City of Los Angeles does not discriminate on the basis of disability and, upon request, will provide reasonable accommodation to ensure equal access to its programs, services and activities.

## APPEAL OF DEPARTMENT ACTION TO THE BOARD OF BUILDING AND SAFETY
## COMMISSIONERS/DISABLED ACCESS APPEALS COMMISSION

Applicant's Name _____    Applicant's Title _____

Signature _____    Date _____

| FEES | (DEPARTMENT USE ONLY) | | | For Cashiers Use Only |
|---|---|---|---|---|
| | | | | (PROCESS ONLY WHEN FEES ARE VERIFIED) |
| Board Fee ......................... (No. of Items) | 1 X | $354.00 | = _____ | |
| Inspection Fee................. (No of Insp.) = | X | $84.00 | = _____ | |
| Research Fee.... (Total Hours Worked) = | X | $104.00 | = _____ | |
| Subtotal .......................................... | | | = _____ | |
| Development Services Center Surcharge | X | 3% | = _____ | |
| Systems Development Surcharge .......... | X | 6% | = _____ | |
| Total Fees .......................................... | | | = _____ | |
| Fees verified by: | | | | |
| Print and Sign | | | | |



**DEPARTMENT OF BUILDING AND SAFETY**

LA Department of Building and Safety
LA ESTE 104151177 2/21/2019 3:35:11 PM

| | |
|---|---:|
| BOARD APPLIC FEE | $169.00 |
| SYSTEMS DEV SURCH | $10.14 |
| DEV SERV CENTER SURCH | $5.07 |
| RESEARCH FEE | $208.00 |
| SYSTEMS DEV SURCH | $12.48 |
| DEV SERV CENTER SURCH | $6.24 |
| | |
| Sub Total: | $410.93 |

Receipt #: 0104005279

Exhibit 27    426