UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re                                                        :
                                                             :   Chapter 11
SEARS HOLDINGS CORPORATION, *et al.*,                        :
                                                             :   Case No. 18-23538 (RDD)
                                                             :
Debtors.[1]                                                  :   (Jointly Administered)
------------------------------------------------------------ x

## DECLARATION IN SUPPORT OF MOTION OF DEBTORS
## FOR MODIFICATION OF RETIREE BENEFITS

I, William Murphy, declare pursuant to 28 U.S.C. § 1746, under penalty of perjury to the best of my knowledge and belief, that:

1.  I am a Senior Director at M-III Partners, LP ("**M-III**"), the financial advisor to Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**Sears**"). Inclusive of my time at M-III, I have over thirty years of experience in corporate restructuring, including advising companies on strategic planning, financial projections, and debt restructuring.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

2. I submit this declaration in support of the *Motion of Debtors for Modification of Retiree Benefits* [ECF No. 4635] (the "**Motion**").[2]

3. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gleaned during the course of my engagement with the Debtors, my discussions with the Debtors' senior management, other members of the M-III team, and the Debtors' other advisors, and my review of relevant documents and/or my opinion based upon my experience. If called to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, and/or opinion.

4. I am familiar with the Debtors' Liquidation Analysis and related assumptions. I directly managed the M-III team that prepared the Liquidation Analysis. I reviewed and provided analysis for various Debtor entities, and was fully involved in discussions regarding the assumptions critical to the Liquidation Analysis and the results for each group of Debtors, during the time leading up to the filing of the Plan and the Disclosure Statement. I am aware of the Debtors' current cash position.

5. Sears Holdings sponsored the Retiree Plan, which provided retiree life insurance benefits to certain retired employees of the Debtors covered under the Allstate Policy or the Securian Policy. As of March 15, 2019, the Allstate Policy covered twelve retirees, who are former senior executives, and the Securian Policy covered approximately 29,000 retirees. The death benefit payable with respect to retirees who are covered under the Allstate Policy is between

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

$356,080 and $2,680,000, while the death benefit payable to retirees who are covered under the Securian Policy is between $5,000 and $14,500.

6. To maintain the coverage provided under the Policies, the Debtors would be required to pay an annual premium under the Allstate Policy of $647,821.00, and a monthly premium under the Securian Policy of approximately $1.3 million. The Debtors made all premium payments required under the respective policies for the period through December 31, 2018.

7. Given the financial circumstances of their estates, the Debtors could no longer justify paying the significant premiums for the Policies, and determined that they would need to terminate any further post-petition obligations under the Retiree Plan. On March 7, 2019, the Board of Directors of Sears Holdings approved the termination of the Retiree Plan, effective as of March 15, 2019.

8. On March 8, 2019, Sears posted on the Sears Holdings Corporation Alumni webpage a "Notice – Termination of Retiree Life Insurance Plan" to notify all Retiree Plan participants of the termination of the Retiree Plan. In the notice, Sears also provided retirees with information regarding the opportunity to convert coverage under the Securian Policy to individual life insurance policies, which conversion option has been offered to retirees by Securian.

9. The Allstate Policy has been amended by SRC and Allstate to extend the grace period under the Allstate Policy to August 1, 2019, at no cost to the Debtors, to cover retirees until that date, while Allstate and the Debtors work to resolve how covered retirees can maintain coverage at their own cost.

10. As of March 15, 2019, the Debtors had unpaid premium obligations relating to the Retiree Plan of approximately $3.9 million and approximately $647,821, with respect to the Securian Policy and the Allstate Policy, respectively.

11. After termination of the Retiree Plan, the Debtors were advised that in 2001, SRC entered into the Stipulation in connection with the reduction of certain retiree life insurance benefits available to eligible retirees at that time.

12. After the appointment of the Retiree Committee on June 25, 2019, the Debtors made a Proposal for modification of the Retiree Plan to the Retiree Committee, proposing to terminate the Retiree Plan effective March 15, 2019. The Proposal included the following components:

    a. <u>Coverage for Class Members Who Have Died Between the Termination Date and Entry of the Proposed Order</u>. The Debtors propose granting the estate of any Class Member that dies between the Termination Date and the date of the entry of a final order approving the modification of the Retiree Plan, and whose benefits under the Securian Policy have not been paid by Securian, an allowed administrative expense claim in the chapter 11 case of SRC in the amount of $5,000 (the "**Administrative Expense Claim**"). The Debtors estimate that fewer than 25 Class Members have died during the relevant period and, therefore, granting the estates of such members administrative expense claims does not impose an undue burden on the Debtors' estates or jeopardize confirmation of the Plan.

    b. <u>Other Class Members</u>. The Debtors propose granting each remaining Class Member an allowed general unsecured claim in the chapter 11 case of SRC in the amount of $5,000 (the "**Retiree Unsecured Claims**"). The Debtors estimate that the aggregate amount of the Retiree Unsecured Claims arising from the Proposal will be approximately $144,875,000.

    c. The Debtors shall use commercially reasonable efforts to assist the Retiree Committee in determining which Class Members are entitled to Administrative Expense Claims and Retiree Unsecured Claims, to the extent the Debtors have access to such information.

13. To assist the Retiree Committee in evaluating the Proposal, the Debtors provided the Retiree Committee with a copy of the Debtors' Liquidation Analysis.

14. Substantially all of the Debtors' assets already have been sold to Transform. Pursuant to the Plan, any remaining assets will be transferred to a liquidating trust and will

liquidated; the proceeds of such dispositions, together with the Debtors' cash on hand, will be distributed to the Debtors' stakeholders, in accordance with their respective interests, as reflected in the Plan and the Disclosure Statement.  As reflected in the Liquidation Analysis, the Debtors estimate that they will have distributable proceeds in the amount of approximately $334 million on the effective date of the Plan.  That cash will be used to pay all administrative claims, as well as Post-Conversion Professional Fees, Secured Claims, 507(b) Claims, Priority Tax Claims, Priority Non-Tax Claims, and PBGC Liquidating Trust Priority Interests (as each such term is defined in the Disclosure Statement), leaving approximately $132 million available for distribution to the Debtors' unsecured creditors.  The Debtors' equity holders will not receive any distributions under the Plan and their interests will be cancelled.

15. The Debtors estimate that holders of general unsecured claims will receive distributions under the Plan of 2.3% to 2.7% of their claims, depending on the applicable Debtor.  As reflected in the Liquidation Analysis, conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code would result in a reduction of recoveries for general unsecured creditors to an estimated .5% to .9%, depending on the Debtor.

16. As described in the Motion, every dollar of additional administrative expense claims reduces the recovery to holders of general unsecured claims.  In addition, granting the Retirees Unsecured Claims will reduce the pro rata distribution available to holders of other general unsecured claims.

17. The Debtors' Liquidation Analysis does not take into account the cost of maintaining the Retiree Plan, and the Debtors do not expect that they will have sufficient funds to make payments under the Retiree Plan and to pay the secured, administrative, and priority claims that must be paid pursuant to section 1129(a)(9) of the Bankruptcy Code on the effective date of

the Plan. The Debtors' cash projections reflect that they have insufficient cash with which to pay the past due amounts owed under the Securian Policy, or to continue to make payments under the Retiree Plan.

## Conclusion

18. For the reasons set forth herein, I believe that the Motion should be granted.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: July 29, 2019

By: */s/ William Murphy*
William Murphy
M-III Partners, LP

WEIL:\97134502\4\73217.0004