**HEARING DATE: August 16, 2019 at 10:00 a.m.**

Mark Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue, Floor 11
New York, New York 10022
212.593.1100
mfrankel@bfklaw.com

and

Matthew A. Olins (admitted *pro hac vice*)
Ellen M. Chapelle (admitted *pro hac vice*)
Vanessa R. Tiradentes (admitted *pro hac vice*)
GOULD & RATNER LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
312.236.3003
molins@gouldratner.com
echapelle@gouldratner.com
vtiradentes@gouldratner.com

*Attorneys for 233 S. Wacker, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| SEARS HOLDING CORPORATION, *et al.*, | ) Case No. 18-23538 (RDD) |
| Debtors. | ) (Jointly Administered) |

### 233 S. WACKER, LLC'S OBJECTION TO MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS

233 S. Wacker, LLC ("*233*"), by and through its attorneys, Backenroth Frankel & Krinsky, LLP and Gould & Ratner LLP, objects to the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings (the "*Plan*") of the above captioned debtors and debtors in possession (the "*Debtors*"). In support of this Objection, 233 respectfully states as follows:

## INTRODUCTION

1.      Since filing their bankruptcy cases, Debtors Sears, Roebuck and Co. and Sears Holdings Corporation (collectively, "*Sears*") have continued the litigation pending in the Circuit Court of Cook County, Illinois, Chancery Division (the "*State Court*"), Case No. 2016-CH-10308 (the "*State Court Litigation*") that Sears initiated on August 4, 2016.  In the State Court Litigation, as discussed below, Sears asserts a single claim for specific performance under a Settlement Agreement (defined below), seeking to compel 233 to sell Sears 233's 60-foot high sculpture by Alexander Calder (the "*Sculpture*") that was formerly in the lobby of the Willis Tower (the "*Building*") located in Chicago, Illinois and that now sits in storage.  233 filed a counterclaim (the "*Counterclaim*") against Sears in the State Court Litigation for Sears's breach of its duty of good faith and fair dealing as discussed below.  233 has also filed proofs of claim against Sears relating to the Sculpture and the Settlement Agreement.

2.      While preserving and not waiving any of its objections or defenses to the continuation of any aspect of the State Court Litigation after the Effective Date (as defined in the Plan), 233 objects to the Plan enjoining, releasing, or otherwise preventing 233 from litigating its Counterclaim, fully defending itself, or liquidating its claims in the State Court Proceeding if the State Court Proceeding is continued after the Effective Date.  233 also objects to the feasibility of the Plan to the extent the Debtors require a $4 million cash receipt during the month of August for the Sculpture, which the Debtors appear to represent they will receive in their [Proposed] Stipulation and Order Concerning Debtors' Continuing Use of Cash Collateral, dated June 7, 2019 [Docket No. 4155] and Stipulation and Order Concerning Debtors' Continuing Use of Cash Collateral, dated June 18, 2019 [Docket No. 4287]  (collectively, the "*Stipulation*"), because there is no such receipt at the time of the filing of this Objection.

**FACTUAL BACKGROUND**

3. The Sculpture was installed in the Building shortly after completion of the Building's construction in 1974. After 233 purchased the Building and Sculpture from Sears's successor in interest, Sears attempted, in 2010, to exercise its option under a certain Option Agreement to purchase the Sculpture. Sears's attempt to exercise the option culminated in litigation between Sears and 233. The prior litigation ultimately resulted in a Settlement Agreement dated July 1, 2013 (the "*Settlement Agreement*") between Sears and 233. The current State Court Litigation arises from the Settlement Agreement.

4. Pursuant to the Settlement Agreement, Sears agreed to attempt to effectuate a sale of the Sculpture to a third party during a two-year sale period (the "*Third-Party Sale Period*") with the proceeds of such sale to be split between Sears and 233 pursuant to the terms of the Settlement Agreement. In the event that Sears was unable to sell the Sculpture, Sears could acquire title to the Sculpture from 233 by paying a sum specified by the Settlement Agreement. Although the Settlement Agreement gave Sears control and complete discretion with respect to any and all efforts to effectuate a sale to a third party, such discretion had to conform to the implied duty of good faith and fair dealing under Illinois law.

5. During the Third-Party Sale Period, 233 sold the Building to another party subject to the obligation to maintain the Sculpture until the end of the Third-Party Sale Period, which had been extended by agreement of Sears and 233 for an additional year until June 30, 2016.

6. Close to the end of the extension period, Sears received two offers to purchase the Sculpture, one of which would have resulted in proceeds to Sears and 233 greater than $6 million each, but Sears summarily and unreasonably rejected the offers with no counter.

7. On June 30, 2016, Sears served notice to 233 that Sears intended to purchase the Sculpture for itself for $3,860,625.00 (plus certain costs), which would have deprived 233 of any

benefit of its share of the prior offers that Sears rejected. Sears's rejection of the offers it received and attempt to purchase the Sculpture for itself constituted a breach of the Settlement Agreement and, accordingly, relieved 233 of any obligation to sell the Sculpture to Sears.

8. Ownership of the Sculpture is not in dispute – 233 and Sears both acknowledge that the Sculpture is property of 233 and not of Sears or any of the Debtors' estates.

9. On August 4, 2016, Sears initiated State Court Litigation. Sears's Complaint contains one count seeking specific performance, compelling 233 to sell it the Sculpture. 233 then filed its Counterclaim against Sears for Sears's breach of its duty of good faith and fair dealing in connection with Sears's marketing efforts and rejection of the offer it received. Sears should not prevail in the State Court Litigation; however, even if it does, Sears will be required to pay 233 $3,860,625.00 plus the additional costs of removing and storing the Sculpture (collectively, the "*Forced Sales Price*").

10. On October 15, 2018, the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in this Court. The filing of these cases automatically stayed 233's Counterclaim pursuant to section 362(a)(1) of the Bankruptcy Code; however, Sears informed 233 and the State Court that it wished to proceed with the State Court Litigation.

11. On February 1, 2019, 233 filed its Motion of 233 S. Wacker, LLC for Relief from Automatic Stay [Docket No. 2326] (the "*Lift Stay Motion*") in this case to pursue its Counterclaim given Sears's plan to continue to prosecute the State Court Litigation. In the Lift Stay Motion, 233 argued, *inter alia*, that so long as Sears sought affirmative relief as a plaintiff in the State Court Litigation, 233 must have the right to defend itself, including 233's right to pursue its Counterclaim against Sears for Sears's breach of its duty of good faith and fair dealing in connection with its obligations to market the Sculpture and share the proceeds of a sale with 233.

12. 233 and Sears resolved the Lift Stay Motion through the Stipulation, Agreement, and Order Granting Limited Relief from the Automatic Stay (233 S. Wacker, LLC) [Docket No. 3019], which was entered by this Court on April 2, 2019 and, among other things, allowed both parties to prosecute their claims.

13. On April 4, 2019, 233 filed its Proof of Claim against Sears, Roebuck and Co. (Claim #13878) and its Proof of Claim against Sears Holdings Corporation (Claim #14102) (collectively, the "*Proofs of Claim*"). The Proofs of Claim are in an amount estimated to be in excess of $6,000,000. *See* the Proofs of Claim for more details concerning the bases and amounts of 233's claims.

14. On July 9, 2019, the Debtors filed their Plan and their Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors (the "*Disclosure Statement*").

15. The Plan could be read to deny 233 its due process and ability to defend itself in the State Court Litigation. For example, Section 15.8(b) of the Plan provides the following injunction:

> Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or

      the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Liquidating Trust or against property or interests in property of any of the Debtors or the Liquidating Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

Plan at p.75. Section 15.9 of the Plan also provides additional releases; however, 233 has exercised its option in its ballots rejecting the Plan to not grant the releases contained in Section 15.9 of the Plan. The Plan also contains certain exculpation provisions.

      16.    On June 7, 2019, the Debtors and certain other "Parties" defined therein, filed their Stipulation. The Weekly Cash Flow Budget attached to the Stipulation, which appears to have been prepared by professionals retained by the Debtors, shows a $4 million cash receipt in the month of August in a line item titled "Calder Statue." Provided the "Calder Statue" is the one at issue in the State Court Litigation, a cash receipt of $4 million in August is not possible absent a settlement. There is no such settlement.

## OBJECTION

**A.    The Plan Should Not Enjoin, Release, Or Otherwise Prevent 233 From Litigating Its Counterclaim, Fully Defending Itself, Or Liquidating Its Claims In The State Court Proceeding.**

      17.    If the Debtors and/or Liquidating Trust are able to prosecute the State Court Litigation, the Plan may not be converted from a shield to sword that prevents 233 from defending itself while the Debtors and/or the Liquidating Trust continues as an assailant. To avoid this inequity, justice and due process require that 233 be able to defend itself, which is the point of the Counterclaim.

      18.    Additionally, in order for 233's Proofs of Claim to be determined, 233 must be able to liquidate its claims. The State Court is the best forum as it is already familiar with the facts at issue in the State Court Litigation and is knowledgeable about the area of law required to

considerer the Counterclaim, the Proofs of Claim, and all other defenses 233 has in connection with Sears's claims.

19. Section 1129(a)(3) of the Bankruptcy Code provides a requirement for confirmation that the "plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Denying 233 its ability to defend itself and liquidate its claims in the State Court Litigation is a denial of 233's basic due process rights, which is forbidden by law and certainly not in good faith. Accordingly, the order confirming the Plan (the "*Confirmation Order*") should contain the following language:

> Notwithstanding any provision of the Plan or this Confirmation Order to the contrary, 233 S. Wacker, LLC is permitted to continue to assert, prosecute, litigate, liquidate, and/or settle its counterclaim and its claims against the Debtors, their estates, and any successors thereto in Case No. 2016-CH-10308 pending in the Circuit Court of Cook County, Illinois, Chancery Division, and no injunction, release, exculpation, or other provision of the Plan or this Confirmation Order shall be applicable thereto, and all parties shall reserve their rights with respect to any payments obligated to be made as a result of such proceeding.

**B. To The Extent The Debtors Require A $4 Million Cash Receipt During The Month of August From The Sculpture, The Plan Is Not Feasible.**

20. In the Weekly Cash Flow Budget attached to the Stipulation, the Debtors represent to the Court that they anticipate receiving $4 million in the month of August from a "Calder Statue." 233 is unaware of any "Calder Statue" that the Debtors own other than the Sculpture. If the Debtors are referring to the Sculpture, then the Debtors owe an explanation. As of the date of the filing of this Objection, discovery has not even closed in the State Court Litigation, no trial date has been set, and litigation is anticipated to continue for months. Under no possible litigation scenario could the Debtors recover $4 million for the Sculpture in the month of August. Additionally, no settlement of the State Court Litigation has been reached. To the extent the Debtors require a $4 million cash receipt from the Sculpture in the month of August, the Debtors should explain the Stipulation before this Court makes a finding that the Plan is feasible.

## **RESERVATION OF RIGHTS**

21.  233 reserves all objections and defenses to the continuation of the State Court Litigation after the Effective Date, and nothing herein should be construed as an acknowledgement by 233 that the State Court Litigation may be continued after the Effective Date.

WHEREFORE, 233 respectfully requests that this Court (a) deny confirmation of the Plan unless 233's proposed language set forth above is added to the Confirmation Order, (b) require the Debtors to explain the $4 million "Calder Statue" receipt before this Court finds that the Plan is feasible, and (c) grant such other and further relief as this Court deems just.

Dated: July 31, 2019

Respectfully submitted,
**233 S. WACKER, LLC**

By: /s/ Mark Frankel
    One of Its Attorneys
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue, Floor 11
New York, New York 10022
212.593.1100
mfrankel@bfklaw.com

and

By: /s/ Matthew A. Olins
    One of Its Attorneys
Matthew A. Olins (admmitted *pro hac vice*)
Ellen M. Chapelle (admitted *pro hac vice*)
Vanessa R. Tiradentes (admitted *pro hac vice*)
GOULD & RATNER LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
312.236.3003
molins@gouldratner.com
echapelle@gouldratner.com
vtiradentes@gouldratner.com