| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: August 16, 2019<br>Hearing Time: 10:00 a.m. |

-------------------------------------------------- x
                                                   :
In re                                              :   Chapter 11
                                                   :
SEARS HOLDINGS CORPORATION, *et al.*,              :   Case No. 18-23578 (RDD)
                                                   :
                                       Debtors.    :   Jointly Administered
                                                   :
-------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE
TO MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF SEARS
HOLDING CORPORATION AND ITS AFFILIATED DEBTORS**

TO:   THE HONORABLE ROBERT D. DRAIN,
      UNITED STATES BANKRUPTCY JUDGE

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits this objection to the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors (the "Plan"). ECF Doc No. 4476. In support thereof, the United States Trustee respectfully states:

**I. PRELIMINARY STATEMENT**

The United States Trustee objects to confirmation of the Plan because the Debtor has failed to meet its burden of proof to show that the Plan meets the statutory requirements of section 1129 of the Bankruptcy Code. First, the Plan impermissibly seeks non-debtor third-party releases that do not comport with Second Circuit law and the Bankruptcy Code. As set forth in greater detail below, the United States Trustee respectfully requests that the Court require the Debtors to eliminate the non-debtor third party releases. Second, the Plan both releases claims against the Debtors as well as enjoins post-petition actions against the Debtors. This is the equivalent of providing the Debtor a discharge. Section 1141(d)(3) of the Bankruptcy Code,

however, prohibits liquidating debtors from receiving a discharge. Therefore, because in these cases the Debtors are liquidating, the Debtors must remove the provisions which provide the Debtor the functional equivalent of a discharge. Finally, as set forth in the Disclosure Statement, the Debtors <u>estimate</u> a razor thin margin to pay administrative claims in full. In order for the Plan to be confirmed, all administrative expense claims must be paid in full unless the holder of an administrative claim agrees to a different treatment. Accordingly, at confirmation the Debtors must demonstrate that the Plan complies with Bankruptcy Code section 1129(a)(9).

## II. BACKGROUND

### A. General Background

1. Sears Holdings Corporation and its debtor affiliates ("Sears" or "Debtors") commenced voluntary cases under chapter 11 of the Bankruptcy Code on October 15, 2018 (the "Petition Date").

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. ECF Doc. No. 118.

4. On October 24, 2018, the United States Trustee appointed the Official Committee of Unsecured Creditors. ECF No. 276.

5.  On the Petition Date Sears operated 687 retail stores in forty-nine states, Guam, Puerto Rico, and the U.S. Virgin Islands.  See Declaration of Robert A. Riecker, ECF Doc. No. 3, ¶ 25.

6.  On February 8, 2019, the Bankruptcy Court entered the Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyers, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith and (IV) Granting Related Relief (the "Sale Order").  ECF No. 2507.  The Sale Order approved a transaction by which the Debtors sold substantially all of their assets.

**B.  The Plan and Disclosure Statement**

7.  On April 17, 2018, the Debtors filed their initial Joint Chapter 11 Plan of Sears Holding Corporation and its Affiliated Debtors and accompanying disclosure statement.  ECF Nos. 3275 and 3276, respectively.

8.  On June 28, 2019, the Court entered an Order approving the Debtors' Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its affiliated Debtors.  ECF No. 4392.  On July 9, 2019, the Debtors filed their Disclosure Statement (the "Disclosure Statement") for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its affiliated Debtors.  ECF No. 4478.

9.  On the effective date of the Plan, all of the Debtors' assets will be transferred to a liquidating trust.  Disclosure Statement at 2.  A liquidating trustee and liquidating trust board of directors will be appointed to carry out the terms of the Plan.  Id.

10. According to the Disclosure Statement, the Debtors' estimate that administrative claims, excluding claims pursuant to section 507(b) of the Bankruptcy Code, will be approximately $468 million. Disclosure Statement at 57- 58. The Debtors further estimate, not including litigation recoveries, that they will have approximately $487 million to satisfy administrative claims. Id. at 58. To the extent the Debtors determine there will be an administrative shortfall, the Debtors state that they may solicit administrative claimants to receive less than a 100% recovery before or after the confirmation hearing. Id.

11. The Plan provides non-consensual third-party releases for the benefit of certain Released Parties.

12. Specifically, under the Plan each Released Party shall be deemed released and discharged by Releasing Parties

> from any and all Causes of Action that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' Estates, the Plan, the filing and administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the Sale Transaction, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party (other than assumed contracts or leases), the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments or other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that, nothing in Section 15.9(b) of the Plan shall be construed to release the Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that, nothing in Section 15.9(b) of the Plan shall be construed to release any Claim or Cause of Action relating to or arising from the Sale Transaction following entry of the Sale Order by the Bankruptcy Court; provided further, that nothing shall be construed to release the Released Parties

> from any Canadian Causes of Action. The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under Section 15.9(b) of the Plan against each of the Released Parties. For the avoidance of doubt, notwithstanding anything to the contrary herein, the releases set forth in section 15.9(b) of the Plan shall not apply to any investor that does not qualify as an "Accredited Investor" (within the meaning of rule 501(a) of Regulation D of the Securities Act of 1933).

Plan at Section 15.9(b).

13. Released Parties are defined under the Plan to include

> (a) the Debtors; (b) the Creditors' Committee and each of its members; (c) the Liquidating Trustee; (d) the Liquidating Trust Board; and (e) with respect to each of the foregoing entities in clauses (a) through (b), all Related Parties; provided, that, with respect to each of the foregoing entities in clauses (c) and (d), each shall not be "Released Parties" under the Plan:(i) the ESL Parties; (ii) any person or Entity against which any action has been commenced on behalf of the Debtors or their Estates, in this Bankruptcy Court or any court of competent jurisdiction prior to the Confirmation Hearing; (iii) any Entity identified as a defendant or a potential defendant of an Estate Cause of Action in the Plan Supplement; and (iv) any subsequent transferee of any of the foregoing with respect to any Assets of the Debtors; provided, further, that recovery on account of any Causes of Action against the Specified Directors and Officers, solely with respect to D&O Claims, shall be subject to the limitations set forth in Section 15.11.

Plan at Section 1.135.

14. Related Parties are defined under the Plan to include

> such Party's successors and assigns, managed accounts or funds, and all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and persons' respective heirs, executors, estates, servants, and nominees, including the Restructuring Committee, Restructuring Subcommittee, and each of its respective members; provided, that, any ESL Party shall not be a Related Party.

Plan at 1.134.

15. Releasing Parties include holders of claims who (1) vote to accept the Plan, (2) reject the Plan or abstain from voting on the Plan but do not opt-out of the releases on their ballots.  Plan at Section 15.9(b).

16. In addition to the releases, the Plan permanently enjoins holders of claims and interests from pursuing claims against, among others, the Debtors.  Plan at 15.8 (b). Specifically, section 15.8(b) of the Plan provides as follows:

> Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Liquidating Trust or against property or interests in property of any of the Debtors or the Liquidating Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

Id.

### III.    OBJECTION

**A.    Confirmation Standards and Statutory Framework**

There are two relevant statutes pertinent to the issues herein governing chapter 11 plan provisions and confirmation.  Section 1123(b)(6) allows plan proponents to include terms that are "not inconsistent with the applicable provisions" of the Code. 11 U.S.C. § 1123(b)(6). Section 1129 of the Bankruptcy Code authorizes the bankruptcy court to confirm a plan only when it "complies with the applicable provisions of the Code." 11 U.S.C. 1129.  The plan proponent bears the burden of establishing compliance with section 1129.  In re Charter Commc'ns, 419 B.R. 221, 243-44 (Bankr. S.D.N.Y. 2009) (citing Heartland Fed. Savs. & Loan, Ass'n v. Briscoe Enters. (In re Briscoe Enters.), 994 F.2d 1160, 1165 (5th Cir. 2993) (stating that "[t]he combination of legislative silence, Supreme Court holdings, and the structure of the Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under §1129(a) and in a cramdown")); In re Worldcom, Inc., No. 02-13533 (AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing In re Briscoe Enters.).

**B.    The Plan Improperly Deems Consent to Third-Party Releases[1]**

The Plan improperly deems that the Released Parties are released by creditors that vote to reject the Plan or abstain from voting on the Plan but do not opt-out of the releases on their ballots. Plan at Section 15(9)(b).

---

1 The United States Trustee acknowledges that in several other cases the Court has overruled the United States Trustee's objection to plan confirmation regarding the need for an opt-in requirement for third-party releases. Nonetheless, particularly under the facts of these cases, including the potential for a small distribution to unsecured creditors in these liquidating cases, the United States Trustee reiterates his prior position herein.

The Court in In re SunEdison, Inc., 576 B.R. 45, 13-14 (Bankr. S.D.N.Y. 2017) ruled that creditors who did not affirmatively vote could not be deemed to consent to the releases in the plan. The Court in SunEdison cited to the following language in In re Chassix Holdings, 533 B.R. 54, 81 (Bankr. S.D.N.Y. 2015) ("Chassix"):

> Charging all inactive creditors with full knowledge of the scope and implications of the Proposed third party *releases*, and implying a "consent" to the third party *releases* based on the creditors' inaction, is simply not realistic or fair, and would stretch the meaning of "consent" beyond the breaking point.

Emphasis in original.

Further, the SunEdison Court held that the debtors have failed to sustain their burden of proving that the Court had subject matter jurisdiction to approve the third party releases. In re SunEdison, Inc., 576 B.R. 453 (Bankr. S.D.N.Y. 2017). In that case, the non-voting releasors did not consent to the release, the creditors were not being paid in full, and the third party claims would have been extinguished rather than channeled to a fund for payment. Id. Further, the debtors did not identify which third party claims would directly impact their reorganization and given the scope of the release, the Court determined that it is likely that many of the claims would not impact the reorganization. Id. Thus, the Court granted the debtors leave to propose a modified form of release under the condition that they must specify the release by name or readily identifiable group and the claims to be released, demonstrate how the outcome of the claims to be released might have a conceivable effect on the debtors' estates and show that this is one of the rare cases involving unique circumstances in which the release of the claims is appropriate under Metromedia. Id.

The Chassix Court also made clear its opposition to requiring creditors to opt out of the releases. The Court required the debtors to revise the definition of "Consenting Creditors" in the

8

plan and did not permit an opt-out procedure for creditors who abstained from voting, voted to reject the plan, or were deemed to accept or reject the plan. Chassix, 533 B.R. at 80-82. Accordingly, creditors who reject the Plan or abstain from voting on the Plan but do not opt- out of the releases on their ballots should not be deemed to have consented to the third-party releases in the Plan.

Additionally, the Plan, if confirmed, will provide releases to a wide range of third parties. Specifically, third-party releases include the Released Parties' successors and assigns, managed accounts or funds, and all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and persons' respective heirs, executors, estates, servants, and nominees, including the Restructuring Committee, Restructuring Subcommittee, and each of its respective members. Plan at Sections 1.134 and 1.135. The Debtors have not met their burden to prove that the Court has subject matter jurisdiction to release this multitude of persons who qualify as Released Parties from claims of the creditors who do not opt out of the third-party releases. See In re SunEdison, Inc., 576 B.R. at 463.

   C.    **The Debtor Release and Injunction are Akin to a Discharge and Should Not be Permitted Under Section 1141(d)(3)**

The Debtors are defined as a Released Party under the Plan. Plan at 1.135. Section 15.8 of the Plan enjoins holders of claims and interests from pursuing claims against the Debtors. Plan at Section 15.8(b). Section 1141(d)(3) of the Bankruptcy Code provides that the confirmation of a plan does not discharge a debtor if (i) the plan provides for the liquidation of

all or substantially all of the property of the estate, (ii) the debtor does not engage in business after consummation of the plan, and (iii) the debtor would be denied a discharge under section 727(a) of the Bankruptcy Code if the case were a Chapter 7 liquidation case.  11 U.S.C. §1141(d)(3); see also In re Wood Family Interests, Ltd., 135 B.R. 407, 410 (Bankr. D. Colo. 1989)(holding that a discharge is not available to corporate or partnership debtors who propose a liquidating plan of reorganization).  Because (i) the Plan provides for the liquidation of the Debtors' assets, (ii) the Debtors will not retain any significant assets to operate after the consummation of the Plan, and (iii) the Debtor, as a corporation, would not be entitled to a discharge in a Chapter 7 case, the Court should direct the Debtors to remove those portions of the Plan that provide for releases and injunctions to be provided the Debtors.  See In re Bigler, LP, 442 B.R. 537, 544-56 (Bankr. S.D. Tex. 2010 (where liquidating debtor is not permitted a discharge due to section 1141(d)(3), a plan injunction preventing post-confirmation prosecution of claims that would operate as a discharge is also impermissible).

**D.**     **The Debtors Must Meet Their Burden and Demonstrate That They Comply with Section 11 U.S.C. 1129(a)(9)**

For the Plan to be confirmed administrative expense claims must be paid in full, unless the holder of an administrative claim agrees to a different treatment.  11 U.S.C. § 1129(a)(9).  As set forth in the Disclosure Statement, the Debtors' estimate a razor thin margin to pay administrative claims in full.  Disclosure Statement at 58.  Accordingly, at confirmation the Debtors must demonstrate that the Plan complies with Bankruptcy Code section 1129(a)(9).

## IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court sustain the Objection of the United States Trustee and grant such other relief as is just.

Dated: New York, New York
       August 1, 2019

>                    Respectfully Submitted,
>
>                    WILLIAM K. HARRINGTON
>                    UNITED STATES TRUSTEE
>
> By:    /s/ *Paul Schwartzberg*
>        Paul Schwartzberg
>        Trial Attorney
>        201 Varick Street, Room 1006
>        New York, New York 10004
>        (212) 510-0500