TARTER KRINSKY & DROGIN LLP
*Attorneys for Alpine Creations Ltd.*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Rocco A. Cavaliere, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re:                                          :
                                                :    Chapter 11
SEARS HOLDINGS CORPORATION, *et. al.*[1],       :
                                                :    Case No. 18-23538 (RDD)
                                    Debtors.    :    (Jointly Administered)
------------------------------------------------------------ x

### OBJECTION OF ALPINE CREATIONS LTD. TO CONFIRMATION OF DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS

TO:   THE HONORABLE ROBERT D. DRAIN,
      UNITED STATES BANKRUPTCY JUDGE:

Alpine Creations Ltd. ("Alpine"), by and through its undersigned counsel, submits this objection to the Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Affiliated Debtors dated June 28, 2019 (the "Plan")[2] and respectfully states as follows:

## BACKGROUND

1. On October 15, 2018 (the "Petition Date"), Sears Holdings Corporation, a debtor and debtor in possession in the above-captioned chapter 11 cases and its affiliated debtors and debtors in possession (collectively, the "Debtors"), commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

2. In the twenty days prior to the Petition Date, Alpine provided apparel and related goods to the Debtors with a value of $677,681.72. Pursuant to section 503(b)(9) of the Bankruptcy Code, Alpine asserts that it maintains an allowed administrative claim for the value of such goods in the amount of $677,681.72 (the "§ 503(b)(9) Claim") as reflected in various invoices (the "503(b)(9) Invoices").[3]

3. In January 2019, Alpine provided certain apparel and related goods to the Debtors. Alpine issued several invoices (the "Post-Petition Invoices") to the Debtors in connection with these goods with a value aggregating $202,286.89 (the "503(b)(1) Claim"). The Post-Petition Invoices are past due and remain unpaid.

4. Alpine filed its *Motion to Allow and Compel Payment of Administrative Expense Claim Under 11 U.S.C. §§ 503(b)(1) and 503(b)(9)* (the "Alpine Motion") [Dkt. No. 4631]. The Alpine Motion is scheduled to be heard on August 22, 2019 at 10:00 a.m. To date, the Debtors have not disputed the 503(b)(9) Invoices or the Post-Petition Invoices. As will be

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms under the Plan.
[3] Alpine filed timely proofs of claim against Sears Holdings Corporation (Claim No. 15992) as well as Sears Roebuck & Co. (Claim No. 15288) and Kmart Corporation (Claim No. 16006), which reflect, among other things, the 503(b)(9) Claim asserted against each of these Debtors: Sears Roebuck & Co. ($426,698.78) and Kmart Corporation ($250,982.94). Together, these amounts are $677,681.72.

{Client/085149/1/01882075.DOCX;1 }                2

easily demonstrated at the upcoming hearing, these amounts are entitled to administrative expense claim status under the Bankruptcy Code.

5. In total, as of the Petition Date, Alpine had a claim of $4,715,270.43, of which $1,361,346.87 was asserted as a reclamation claim and $677,681.72 was asserted as a section 503(b)(9) claim, while the balance of the claim was asserted as a general unsecured claim.

## OBJECTION TO PLAN[4]

6. There is no dispute that this has been a difficult case for a number of constituents and parties in interest. Among those constituents severely impacted by the Debtors' bankruptcy filing are loyal vendors such as Alpine that had worked with the Debtors for decades. Unfortunately, despite the significant harm already caused to Alpine and others by the Debtors' predicament, including the realization that general unsecured claims will likely receive less than a 3% recovery on unsecured claims, the Plan seeks to cause more pain to Alpine and other similarly situated creditors by depriving them of their statutory rights to immediate payment in full on their allowed administrative claims. The Debtors have stated on more than one occasion that these cases would not be run on the backs of vendors. See e.g., *Debtors' Reply to Objections to Junior Debtor-in-Possession Financing*, ¶ 6 [Dkt. No. 1297]. However, that is exactly what has happened thus far in this case, and the Plan, if approved in its current form, continues this unfortunate pattern.

---

[4] In many responses and replies filed by the Debtors in these cases, the Debtors cite the usual refrain that there are thousands of creditors but only "X" numbers of creditors filed an objection to the relief requested. This is not effective argument and hopefully will be excluded from the Debtors' upcoming omnibus reply. Notably, the fact that only dozens or scores of creditors have the financial wherewithal and desire to file objections and protect their rights does not mean the Debtors' Plan makes sense to the balance of non-objecting creditors that have not submitted objections. Perhaps those non-objecting creditors do not have the financial means to submit objections or are simply relying on the Court to enforce the Bankruptcy Code, as written.

{Client/085149/1/01882075.DOCX;1 }   3

7. The Bankruptcy Code is clear that holders of administrative expense claims are to be paid in full on the effective date in order for a plan to be confirmed. Namely, section 1129(a)(9)(A) states, in relevant part, as follows:

> Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that –
>
> (A) With respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

See In re Teligent, Inc., 282 B.R. 765, 768 (Bankr. S.D.N.Y. 2002) (unless an administrative expense creditor agrees to a different treatment, the debtors must "cash out the administrative creditors on the effective date"); In re Molycorp, Inc., 562 B.R. 67, 78 (Bankr. D. Del. 2017) ("section 1129(a)(9)(A) of the Bankruptcy Code requires that, unless agreed otherwise, each holder of an administrative claim will receive cash equal to the allowed amount of such claim on the effective date of the plan; this is true regardless to the existence of unencumbered assets"); see e.g. In re A&B Associates, LP., 2019 WL 1470892 (Bankr. S.D. Ga. March 29, 2019) (finding that section 1129(a)(9) had not been satisfied because the Debtor had not explained how administrative claims would be paid on the plan's effective date).

8. Notwithstanding this clear statement of the law, the Plan at Section 2.1(a) makes clear that the Debtors do not intend on making payment of administrative claims on the Effective Date; rather, the Debtors seek to delay the payment indefinitely until an uncertain period of time, without any provision in the Plan for a reserve equal to the administrative claims in the case. Further, section 2.1(a)'s references to payment of Administrative Expense Claims "(x) first out of the Wind Down Account; and (y) if the amount for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holders pursuant to this

sentence, <u>subject to the payment in full</u> of any Allowed ESL 507(b) Priority Claim and Other 507(b) Priority Claims…from the Net Proceeds of Total Assets" (emphasis added), creates the perception that there is a likelihood and possibility that some administrative expense claims will not be paid in full, either at confirmation or thereafter.[5]  Indeed, the Plan itself speaks of a waterfall of administrative claim distributions happening after the confirmation of the Plan and Effective Date. Meanwhile, the asserted superiority of an administrative expense claim is not at all relevant for plan purposes since **all** holders of administrative expense claims must be paid in full under the Bankruptcy Code if a plan is to be confirmed.

9. Section 2.1(b) is equally puzzling as it seems to tie holders of section 503(b)(9) claims to amounts that are expected to be paid from the $139 million (subject to credits) that will be received from Transform when it complies with its obligations under the Asset Purchase Agreement.  The Debtors negotiated an asset purchase agreement and assumed the risk of non-payment of certain assumed liabilities from Transform.  The asset purchase agreement does not deprive Alpine of the right to full payment of its administrative claims on the effective date and require administrative claimants to await a resolution of the Transform litigation.  The dispute with Transform is not yet resolved and it could take months, if not longer, and after appeals, for such monies to become assets in this case.  Likewise, post-petition administrative claims are not limited to any possible corpus falling under the definition of "Other Payables" under the Asset Purchase Agreement.  In order to confirm the Plan, the Debtors must use all of their available cash to pay administrative claim holders in full on the Effective Date or otherwise reserve the amount of cash needed to pay such claims if there was a dispute regarding such claims as of the Effective Date.

---

[5] This is particularly troubling if it is the intention of the Debtors to pursue vendors on avoidance actions and use those proceeds to cover shortfalls in superpriority claims of banks and hedge funds. This should be clarified.

10. Moreover, if there is currently insufficient cash in the Debtors' estates, the Debtors need to seek out other sources to cover such administrative claims if they wish to confirm a plan at this present time. For instance, in In re Molycorp, Inc., 562 B.R. 67, 78-79 (Bankr. D. Del. 2017), the debtor's secured lender desired a confirmed plan and objected to the allowance of fees to creditor committee counsel in an amount greater than the carveout amount under an earlier cash collateral order. Judge Sontchi found that committee counsel was not limited to a carveout amount in a plan confirmation scenario, stating that "the Code's confirmation scheme elevates allowed administrative claims to a dominant priority such that unless the holders agree to a different treatment, a plan cannot be confirmed without full payment of those exclaims even if there are no estate assets to pay them", and that if "the secured parties desire confirmation, the administration claims must be paid in full in cash at confirmation even if it means invading their collateral." Id. Likewise, the holders of administrative expense claims in the Debtors' cases are not limited to the consideration negotiated by the Debtors under the Asset Purchase Agreement for which they have not yet received from Transform, and which itself may be insufficient to cover administrative claims in any event.

11. In addition, because the Plan is premised on recovery of litigation proceeds against various parties, the Plan does not satisfy the feasibility standards of section 1129(a)(11) of the Bankruptcy Code.

12. Further, while Alpine has not presently identified any other third parties that may become independently liable to Alpine for the damages caused to it by the Debtors' failure to make payment on its claims, Alpine objects to the broad releases of third parties in Article XV of the Plan and the mechanism under the Plan requiring specific "opt outs" for releases of direct claims that may be discovered against third party non-debtors. See In re SunEdison, Inc., 576 B.R. 453, 460-

61 (Bankr. S.D.N.Y. 2017) (nonvoting creditors were not bound by the third party release in a chapter 11 plan as affirmative acceptance was required); In re Washington Mut. Inc., 442 B.R. 314, 355 (Bankr. D. Del. 2011 ("inaction was not a sufficient manifestation of consent to support a release").

13. Finally, Alpine objects to the release provisions to the extent that they are intended to impact any rights of setoff or recoupment that Alpine may have.

## RESERVATION OF RIGHTS

14. Alpine reserves the right to supplement or amend this Objection and make additional arguments at the hearing on confirmation of the Plan.

15. Alpine joins in other objections filed by holders of administrative expense claims, to the extent that such objections are not inconsistent with the arguments set forth herein.

## CONCLUSION

16. While confirmation of a chapter 11 plan, especially one in such a historic retail case involving an iconic brand remembered by generations, is a noble goal, the Debtors are still required to comply with the Bankruptcy Code in order to achieve such goal. One of the principal requirements for plan confirmation is section 1129(a)(9)'s requirement that administrative expense claims are paid in full on the effective date of the Plan. Unfortunately, the Debtors' Plan does not satisfy this key requirement under the statute, and for this reason, amongst others, it cannot be confirmed in its current form.

WHEREFORE, Alpine respectfully requests that the Court sustain this Objection and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 2, 2019

                         Respectfully submitted,

                         TARTER KRINSKY & DROGIN LLP
                         *Attorneys for Alpine Creations Ltd.*

                         By: /s/Rocco A. Cavaliere
                              Rocco A. Cavaliere
                              1350 Broadway, 11th Floor
                              New York, New York 10018
                              (212) 216-8000