**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 |
| SEARS HOLDINGS CORPORATION, et al., | Case No. 18-23538 (RDD) |
| Debtors.[1] | (Jointly Administered) |

**WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD'S (1) OBJECTION TO CONFIRMATION OF MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS AND (2) JOINDER IN OBJECTION OF TANNOR CAPITAL ADVISORS, LLC TO PLAN**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Weihai Lianqiao International Coop. Group Co., Ltd. ("WLI") hereby files this objection to the confirmation of the *Modified Second Amended Joint Chapter 11 Plan Of Sears Holdings Corporation And Its Affiliated Debtors* (the "Plan") [Dkt. 4476], which is described in the *Disclosure Statement For Modified Second Amended Joint Chapter 11 Plan Of Sears Holdings Corporation And Its Affiliated Debtors* (the "Disclosure Statement") [Dkt. 4478], as follows:[2]

## STATEMENT OF FACTS

### A.   BACKGROUND

1.       On October 15, 2018 (the "Petition Date"), Sears Holdings Corporation, a debtor and debtor in possession in the above-captioned chapter 11 cases and certain of its affiliated debtors and debtors in possession (collectively, the "Debtors"), including Sears, Roebuck and Co. ("Sears") and Kmart Corporation ("Kmart"), commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

### B.   WLI'S CLAIMS, INCLUDING SUBSTANTIAL ADMINISTRATIVE CLAIMS, AGAINST DEBTORS SEARS AND KMART

2.       WLI timely filed a Proof of Claim (the "Sears POC") against Sears asserting a claim in the total amount of $2,611,888.60, with $646,697.26 of such claim designated as an administrative claim pursuant to 11 U.S.C. § 503(b)(9) for goods received by Sears within 20 days before the Petition Date and which were sold by WLI to Sears in the ordinary course of their business (the "Sears § 503(b)(9) Administrative Claim").  A true and correct copy of the

---

[2] In addition to the objections below, WLI hereby joins in the *Objection Of Tannor Capital Advisors Llc To Confirmation Of The Modified Second Amended Joint Chapter 11 Plan Of Sears Holdings Corporation And Its Affiliated Debtors* [Dkt. 4673].

Sears POC, which appears as PrimeClerk POC No. 15587, is attached hereto as **Exhibit "1."** There has been no objection to the Sears POC. *See* Court Docket. Therefore, the Sears POC is currently deemed to be allowed. 11 U.S.C. § 502(a).

3.      WLI timely filed a Proof of Claim (the "Kmart POC") against Kmart asserting a claim in the total amount of $890,112.68, with $267,841.10 of such claim designated as an administrative claim pursuant to 11 U.S.C. § 503(b)(9) for goods received by Sears within 20 days before the Petition Date and which were sold by WLI to Kmart in the ordinary course of their business (the "Kmart § 503(b)(9) Administrative Claim" and, with the Sears § 503(b)(9) Administrative Claim, the "§ 503(b)(9) Administrative Claims"). A true and correct copy of the Kmart POC, which appears as PrimeClerk POC No. 15702, is attached hereto as **Exhibit "2."** There has been no objection to the Kmart POC. *See* Court Docket. Therefore, the Kmart POC is currently deemed to be allowed. 11 U.S.C. § 502(a).

4.      On August 2, 2019, WLI filed its *Motion Of Weihai Lianqiao International Coop. Group Co., Ltd To Allow And Compel Payment Of Administrative Expense Claims Under 11 U.S.C. §§ 503(b)(1) And 503(b)(9)* (the "Administrative Claims Motion") [Dkt. 4706], which is pending with the Court. A true and correct copy of the Administrative Claims Motion, without exhibits, is attached hereto as **Exhibit "3."** Pursuant to the Administrative Claims Motion, WLI is seeking, (a) the allowance of the § 503(b)(9) Administrative Claims that total $914,538.36, (b) the allowance of *additional* administrative claims in the total amount of $470,530.74 ($357,041.71 against Sears and $113,489.03 against Kmart) (collectively the "§ 503(b)(1)(A) Claims" and, with the § 503(b)(9) Administrative Claims, the "WLI Administrative Claims"), pursuant to 11 U.S.C. § 503(b)(1)(A), for goods WLI provided to Sears and Kmart after the Petition Date.

5.    Based on the foregoing, the WLI Administrative Claims total ***$1,385,069.10.***

## C.    THE FILING OF THE PLAN AND DISCLOSURE STATEMENT AND CERTAIN PROVISIONS THEREOF.

6.    On July 9, 2019, the Debtors filed their Disclosure Statement and Plan.[3]

7.    The Disclosure Statement provides, *inter alia*, as follows:

The Plan contemplates distributions of Cash as assets are monetized, including from the following sources:[6] [list of purported sources of Cash follow most of which are defined as the **"Total Assets"**].
…

In addition to the Cash sources noted above, up to approximately $347 million of Administrative Expense Claims are the responsibility of the Buyer [aka Transform] pursuant to Section 2.3(k) of the Asset Purchase Agreement and the Sale Order comprised of: up to $139 million on account of Claims arising under section 503(b)(9) of the Bankruptcy Code ("***503(b)(9) Claims***"), as may be reduced dollar-for-dollar by, as applicable, the Aggregate DIP Shortfall Amount, the Specified Receivables Shortfall Amount, the Warranty Receivables Shortfall Amount, and the Prepaid Inventory Shortfall Amount (as those terms are defined in the Asset Purchase Agreement), and up to $166 million on account of Other Payables (as defined in the Asset Purchase Agreement), as may be reduced dollar-for-dollar by, as applicable, the Aggregate DIP Shortfall Amount, and less any amounts previously paid by the Buyer [aka Transform], each in accordance with Section 2.3(k) of the Asset Purchase Agreement.[7]

***The Plan contemplates*** an orderly liquidation of the Debtors' assets and ***distributions in the following order of recovery*** from the identified sources. ***Distributions to junior classes will*** <u>***only***</u> ***be made if senior classes are satisfied (or adequately reserved for).***

| Claim | Recovery |
|---|---|
| Fee Claims[4] | Satisfied in full from:<br>• Proceeds of the Carve Out Account; and<br>• Net Proceeds of the Total Assets. |
| Other Secured Claims | Satisfied in full from: |

---

[3] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Disclosure Statement and Plan.

[4] "***Fee Claim***" means a Claim for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by the Debtors or the Creditors' Committee by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, or 503(b) of the Bankruptcy Code in the Chapter 11 Cases.  Plan § 1.68.

| | Transfer of or net cash proceeds of the relevant collateral. |
|---|---|
| Other 507(b) Priority Claims | Satisfied in full in Cash from the Net Proceeds of Total Assets. |
| ESL 507(b) Priority Claims | [intentionally deleted] |
| Administrative Expense Claims[5] | Satisfied in full from:<br>• Proceeds of the Wind Down Account; and<br>• Net proceeds of the Total Assets. |
| [Seven Classes of Junior Unsecured Claims Follow] | |

6  All "proceeds" shall be net of costs, including but not limited to costs of pursuing Preserved Causes of Action, Liquidating Trustee fees, and amounts sufficient to fund the Disputed Claim Reserve.

7  The Buyer [aka Transform] has disputed all or some of these amounts and its obligations to the Debtors with respect to such amounts.

Disclosure Statement, ¶ I.B (emphasis added).

As of June 22, 2019, the Debtors' estimate that Administrative Expense Claims, excluding any claim entitled to administrative priority under section 507(b) of the Bankruptcy Code, total approximately $468 million in the aggregate for all of the Debtors, including, but not limited to, up to $181 million in 503(b)(9) claims, $180 million of Accounts Payable, and $1 million of severance costs. Based on the Debtors' current estimates, assets available to satisfy such Administrative Expense Claims total approximately $487 million, which are comprised of, among other assets, an agreement by Transform to absorb up to $263 million[25] of these liabilities (subject to reduction in accordance with the Asset Purchase Agreement), $69 million in various cash operating accounts, $69 million in the professional fee Carve Out Account, and $39 million in cash and inventory currently being withheld by Transform. The Debtors' current analysis does not currently reflect any litigation recoveries, including preference and other avoidance actions, that the Debtors intend to prosecute in the near term. Recoveries from such causes of action could be substantial. Unless otherwise agreed to by the holder of the Claim, Administrative Expense Claims will be paid in full in cash.

---

5  *"Administrative Expense Claim"* means any right to payment constituting a cost or expense of administration incurred during the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Commencement Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; and (b) Fee Claims; provided, that, Administrative Expense Claims shall not include ESL 507(b) Priority Claims, or Other 507(b) Priority Claims.  Plan § 1.11.

As of June 19, 2019, 2,540 Claims have been filed asserting priority treatment under section 503(b)(9) of the Bankruptcy Code, totaling approximately $1.36 billion. The Debtors have conducted a preliminary analysis of the filed claims which is ongoing. The Debtors estimate that the ultimate amount of section 503(b)(9) Claims should not exceed $181 million after taking into account and disallowing (i) duplicate claims, (ii) claims for goods which the Debtors never had possession, (iii) claims satisfied by critical vendor payments, and (iv) reclassified claims.

There is no precedent binding on the Bankruptcy Court or the Debtors for the determination of the allowance of certain of the claims filed against the Debtors asserting priority pursuant to section 503(b)(9). Based on proofs of claim asserted against the Debtors, the Debtors estimate that the aggregate amount of 503(b)(9) claims may be as high as $181 million, but could be materially lower. However, the claims reconciliation process is still ongoing and the amounts are subject to change.

The Plan provides for a toggle mechanism under which, if the Bankruptcy Court does not approve the Plan Settlement (as defined below), the Plan shall revert to a joint plan of liquidation for each Debtor. Accordingly, to the extent a particular Debtor has insufficient Assets to satisfy Allowed Administrative Expense Claims, Allowed ESL 507(b) Claims, Allowed Other 507(b) Claims, Allowed Priority Tax Claims, or Allowed Priority Non-Tax Claims, another Debtor with sufficient Assets may, in consultation with the Creditors' Committee and the PBGC, make an intercompany loan to the applicable Debtor on or about the Effective Date to allow such Debtor to satisfy such Claims. Such intercompany loan shall be secured by the proceeds of Preserved Causes of Action of the borrowing Debtor. In addition, in accordance with Section 2.1 of the Plan, to the extent that the Debtors determine that there will be an administrative shortfall, the Debtors may solicit administrative claimants to receive less than 100% recovery of their administrative claims before or after the Confirmation Hearing.

The Debtors' estimate of Administrative Expense Claims does not include any Administrative Expense Claims that may be asserted by Transform, including those arising from alleged breaches of the Asset Purchase Agreement. Transform asserts that such breaches may impact the administrative solvency analysis. Further, Transform has informed the Debtors that it has not agreed to the amounts "absorbed" by Transform or cash and inventory currently being "withheld" by Transform noted above, and that those amounts are subject to further reconciliation and disputes. The Debtors do not believe they are in breach of the Asset Purchase Agreement and, instead, intend to prosecute Transform's breaches of the Asset Purchase Agreement.

While the Debtors' estimates of Administrative Expense Claims do not include any amounts on account of Claims entitled to priority under section 507(b) of the Bankruptcy Code, ESL has asserted that the amount of 507(b) Claims could be

substantial and may impact the Debtors' ability to demonstrate administrative solvency. For example, at the Sale Hearing, Transform suggested that its adequate protection claims could be $700 million to $900 million. Pursuant to the Final DIP ABL Order and the Final Junior DIP Order, ESL received claims pursuant to 507(b) of the Bankruptcy Code to the extent of diminution in value of its interest in the collateral securing the Prepetition FILO Term Loan, the Stand- Alone L/C Facility, the Second Lien Credit Facility, and the Second Lien PIK Notes, respectively. The Final DIP Orders also provided ESL with valid and perfected adequate protection liens in respect of its position for these debt instruments, which liens are secured by (a) in the case of Prepetition FILO Term Loan and the Stand-Alone L/C Facility, all assets securing the DIP ABL Facility and (b) in the case of the Second Lien Credit Facility and the Second Lien PIK Notes, all assets securing the DIP ABL Facility that are owned by the entities obligated on the underlying second lien debt. Subsequently, pursuant to the Sale Order, each of ESL's secured claims were deemed allowed for all purposes in the amounts set forth in Exhibit G to the Asset Purchase Agreement. For the avoidance of doubt, Exhibit G of the Asset Purchase Agreement is not determinative of the amounts of the secured portion of the Claim described therein.

25 The $263 million is comprised of (i) $139 million of 503(b)(9) Claims, (ii) $13 million in severance costs, (iii) $166 million in Account Payable, less $55 million in Prepaid Inventory Shortfall.

Disclosure Statement, ¶ IV.T.

## A.    Administrative Expense and Priority Claims

### 1.    Treatment of Administrative Expense Claims

(a)    Except to the extent that a holder of an Allowed Administrative Expense Claim agrees with the Debtors (subject to the consent of the Creditors' Committee, not to be unreasonably withheld) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Fee Claim) shall receive, in final satisfaction, settlement, release, and discharge of such Claim from the respective Debtor or Liquidating Trust, as applicable, Cash in an amount equal to such Allowed Administrative Expense Claim on the latest of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, and (iii) the next Distribution Date after such Administrative Expense Claim becomes an Allowed Administrative Expense Claim. Administrative Expense Claims shall be paid (x) first out of the Wind Down Account; and (y) if the amount available for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holders pursuant to this sentence, subject to the payment in full of any Allowed ESL 507(b) Priority Claims, and Other 507(b) Priority Claims in

accordance with Sections 2.4 and 2.5 of the Plan, respectively, from the Net Proceeds of Total Assets; provided, that, for the avoidance of doubt Administrative Expense Claims shall be paid on the latest of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, and (iii) the next Distribution Date after such Administrative Expense Claim becomes an Allowed Administrative Expense Claim. For the avoidance of doubt, Section 2.1 of the Plan shall not govern Distributions on Allowed ESL 507(b) Claims and Other 507(b) Priority Claims, and Distributions on such Claims shall be governed by Sections 2.4 and 2.5 of the Plan, respectively.

(b)      In accordance with the Asset Purchase Agreement:

(i)      Holders of Allowed Administrative Expense Claims arising under section 503(b)(9) of the Bankruptcy Code shall be paid, (x) first by or on behalf of the Debtors on or after the date that Transform or any of its subsidiaries satisfies any amounts that may be owed pursuant to section 2.3(k)(iv) of the Asset Purchase Agreement up to $139 million in the aggregate, as may be reduced, dollar-for-dollar by, as applicable, the Aggregate DIP Shortfall Amount, Specified Receivables Shortfall Amount, Warranty Receivables Shortfall Amount and Prepaid Inventory Shortfall Amount (as those terms are defined in the Asset Purchase Agreement) and less any amounts previously satisfied by the Transform or any of its subsidiaries, and (y) if the amount available for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holders pursuant to this sentence, in accordance with Section 2.1(a) of the Plan.

(ii) Holders of Allowed Administrative Expense Claims arising under Other Payables (as defined in the Asset Purchase Agreement) shall be paid, (x) first by or on behalf of the Debtors on or after the date that Transform or any of its subsidiaries satisfies any amounts that may be owed pursuant to section 2.3(k)(v) of the Asset Purchase Agreement up to $166 million in the aggregate as may be reduced, dollar-for-dollar by, as applicable, the Aggregate DIP Shortfall Amount (as defined in the Asset Purchase Agreement) and less any amounts previously satisfied by the Transform or any of its subsidiaries, and (y) if the amount available for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holders pursuant to this sentence, in accordance with Section 2.1(a) of the Plan.

...

## 2. Treatment of Fee Claims

(a)　　All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file and serve on counsel to (i) the Debtors, (ii) the Creditors' Committee, (iii) the Liquidating Trustee, (iv) the Fee Examiner, and (v) the U.S. Trustee on or before the date that is forty-five (45) days after the Effective Date, their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred from the Commencement Date through the Effective Date. Objections to any Fee Claims must be filed and served on counsel to the Debtors, the Creditors' Committee, the Liquidating Trustee, the Fee Examiner, and the U.S. Trustee, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Fee Claim)

(b)　　Allowed Fee Claims shall be paid in full, in Cash, by the Debtors or Liquidating Trust, as applicable, in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which an order relating to any such Allowed Fee Claim is entered or as soon as reasonably practicable thereafter; or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim, the Debtors (subject to the consent of the Creditors' Committee, not to be unreasonably withheld) or the Liquidating Trustee, as applicable, (x) first out of the Carve Out Account; and (y) if the amount available for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holders pursuant to this sentence, from the Net Proceeds of Total Assets. Notwithstanding the foregoing, any Fee Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court may be paid at the times and in the amounts authorized pursuant to such orders.

(c)　　On or about the Effective Date, holders of Fee Claims shall provide a reasonable estimate of unpaid Fee Claims incurred in rendering services five (5) Business Days before the Effective Date to the Debtors, the Creditors' Committee, and the Liquidating Trustee and the Debtors or Liquidating Trustee, as applicable, shall fund from collateral subordinate to the Carve Out Account or the Wind Down Account such estimated amounts into the Carve Out Account for the benefit of the holders of the Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties. If a holder of a Fee Claim does not provide an estimate, the Debtors, in consultation with the Creditors' Committee, or Liquidating Trustee, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Fee Claim. When all such Allowed Fee Claims have been paid in full, any remaining amount in such Carve Out Account for purposes of this

paragraph shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Debtor(s) that funded such amounts without any further action or order of the Bankruptcy Court.

Disclosure Statement, ¶ V.A.  The same treatment is provided in the Plan.  Plan §§ 2.1-2.2.

### K.   Procedures for Disputed Claims

#### 1.   Claims Reconciliation

(a) Subject to Section 10.7(g) of the Plan or any order of the Bankruptcy Court, including the Claims Procedures Order and the rights of the Creditors' Committee set forth therein, the Liquidating Trustee shall be entitled to reconcile, object to, or settle Claims filed against the Debtors, as approved by, or at the direction of, the Liquidating Trust Board. After the Effective Date, the Liquidating Trust shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed. Any objections to Claims (including any Administrative Expense Claims, Secured Claims, ESL 507(b) Priority Claims, Other 507(b) Priority Claims, Priority Tax Claims, Priority Non-Tax Claims, General Unsecured Claims, ESL Unsecured Claims), shall be served and filed on or before the later of (a) one-hundred and eighty (180) days after the Effective Date, and (b) on such later date as ordered by the Bankruptcy Court for cause.

…

#### 3.   Payments and Distributions with Respect to Disputed Claims

Notwithstanding anything in the Plan to the contrary, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

…

#### 5.   No Distributions Pending Allowance

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

Disclosure Statement, ¶ V.K.  The same procedures are provided in the Plan.  Plan §§ 12.1, 12.3, 12.5.

## OBJECTIONS TO CONFIRMATION OF THE PLAN

**A.** **THE PLAN CANNOT BE CONFIRMED BECAUSE IT WAS NOT FILED IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW AS REQUIRED BY 11 U.S.C. § 1129(a)(3).**

Pursuant to Section 1129(a)(3), the Plan can only be confirmed if it "has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  Here, the Plan does not satisfy Section 1129(a)(3), because the Plan inappropriately provides more favorable treatment for the administrative claims of professionals employed by the estate, including those fundamental in assisting the Debtors to draft, propose, and seek confirmation of the Plan, over the administrative claims of other creditors, including vendors like WLI, that provided goods and services to the Debtors.  More specifically, under the Plan, "Administrative Expense Claims" includes claims specified under Section 503(b) and entitled to priority under Sections 507(a)(2), 507(b), and 1142.  Plan § 1.11.  If that were the end of the definition and all Administrative Expense Claims were treated the same under the Plan, there would be no issue, but that is not the case.

Within the foregoing definition of "Administrative Expense Claims" there is a sub-definition for "Fee Claims."  Plan § 1.11.  Fee Claims are defined as claims for "for professional services rendered or costs incurred on or after the Commencement Date through the Effective Date by professional persons retained by the Debtors or the Creditors' Committee by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, or 503(b) of the Bankruptcy Code in the Chapter 11 Cases.  Plan § 1.68.

The Plan provides for disparate treatment between Fee Claims and Administrative Expense Claims that are not Fee Claims ("Non-Fee Administrative Expense Claims") in a

number of ways.  See generally Plan, § 2.1 (setting forth treatment for Administrative Expense Claims) and § 2.2 (setting forth disparate and better treatment for Fee Claims).

As an initial matter, though not stated in the Plan, the Disclosure Statement indicates that the intent is to have Fee Claims paid in full before Non-Fee Administrative Expense Claims. *See* Disclosure Statement, ¶ 1.B ((1) providing that "[t]he Plan contemplates … an orderly liquidation of the Debtors' assets and distributions in the following order of recovery from the identified sources. Distributions to junior classes will only be made if senior classes are satisfied (or adequately reserved for) and (2) listing the order of claims as Fee Claims, then Other Secured Claims, then Other 507(b) Priority Claims, and only then Non-Fee Administrative Expense Claims).

Moreover, the Plan provides for different pools of funds for payment on Fee Claims and Non-Fee Administrative Expense Claims.  Fee Claims are to be paid from "Proceeds of the Cave Out Account and Net proceeds of the Total Assets," while Non-Fee Administrative Expense Claims are to be paid from "Proceeds of the Wind Down Account and Net proceeds of the Total Assets."  Disclosure Statement, ¶ 1.B; see also Plan, §§ 2.1 and 2.2.  As set forth in the Administrative Solvency Tracker, which is Exhibit "C" to the Disclosure Statement, Fee Claims are estimated to total $73 million and there is approximately $73 million in the Carve Out Account.  Even if there were a shortfall in the Carve Out Account, the Plan still provides a means to ensure there are sufficient funds on hand on the Effective Date to pay Fee Claims immediately on approval.  *See* Plan, § 2.2(c) (providing that on or about the Effective Date, holders of Fee Claims shall provide an estimate of their unpaid Fee Claims and the Debtor or Liquidating Trustee shall fund such estimated amounts into the Carve Out Account to cover any existing shortfall in the Carve Out Account).  Therefore, the holders of Fee Claims are intended to have

the amounts necessary to pay their Fee Claims fully funded on the Effective Date.  On the other hand, as discussed more fully below with regard to the Plan's failure to satisfy the requirements of Section 1129(a)(9), the payment in full of Non-Fee Administrative Expense Claims is far from certain and appears unlikely and the amounts necessary to pay Non-Fee Administrative Expense Claims will not be fully funded on the Effective Date, if ever.

In addition to the foregoing, the Plan provides for Fee Claims to be paid much quicker than Non-Fee Administrative Expense Claims.  Under the Plan, Fee Claims will likely be paid between 10 to 70 days after the Effective Date.  *See* Plan, § 2.2(a) and (b) (providing that (1) holders of Fee Claims shall file their final fee applications within 45 days of the Effective Date, (2) any objections to final fee applications shall be filed within 21 days after the filing of final fee applications, and (3) allowed Fee Claims pursuant to final fee applications shall be paid in full in cash on the date when the order approving the subject final fee application is entered or as soon practicable thereafter).  On the other hand, Non-Fee Administrative Expense Claims may be paid (and possibly not in full) ***up to and possibly more than 180 days or six months after the Effective Date.***  *See* Plan, § 2.1(a) (providing that allowed Non-Fee Administrative Expense Claims are to be paid "on the ***latest*** of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such [Non-Fee] Administrative Expense Claim becomes an Allowed [Non-Fee] Administrative Expense Claim, and (iii) the next Distribution Date after such [Non-Fee]Administrative Expense Claim becomes an Allowed Administrative Expense Claim) and § 12.1 (providing that objections to Claims, including Non-Fee Administrative Expense Claims shall be filed on or before the later of (a) 180 days after the Effective Date and (b) on such later date as ordered by the Bankruptcy Court for cause (which extensions are often requested and granted in large cases)).

Even worse, the Plan provides that if even one dollar of a multimillion dollar Non-Fee Administrative Expense Claim is disputed, no distribution shall be made on the claim until it is allowed.  *See* Plan, § 12.3 ("Notwithstanding anything herein [the Plan] to the contrary, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.")  There is no such limitation on Fee Claims.

Based on the foregoing, the Debtors (with the assistance of certain counsel employed by the estate that have Fee Claims) are proposing a plan that provides vastly disparate treatment to Fee Claims and Non-Fee Administrative Expense Claims, with the former being entitled to much more favorable treatment, including quicker payment and a near-guaranty that such Fee Claims will be paid in full.  Such a Plan is not proposed in good faith and, therefore, does not satisfy the requirements of Section 1129(a)(3).

B.    **THE PLAN CANNOT BE CONFIRMED BECAUSE IT DOES NOT PROVIDE FOR THE PAYMENT OF ADMINISTRATIVE CLAIMS IN FULL ON THE EFFECTIVE DATE AS REQUIRED BY 11 U.S.C. § 1129(a)(9).**

Pursuant to Section 1129(a)(9), the Plan can only be confirmed if,

> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
>
>> (A) with respect to a claim of a kind specified in section 507(a)(2) [*i.e.*, administrative claims such as the WLI Administrative Claims totaling $1,385,069.10] …, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9)(A).

*To be clear, WLI does not agree or consent to treatment of the WLI Administrative Claims other than in accordance with Section 1129(a)(9), requiring payment of the WLI*

***Administrative Claims, in full, on the Effective Date.  WLI also does not agree to treatment of the WLI Administrative Claims that is less favorable than the treatment of Fee Claims.***

Here, the Plan does not provide for the payment of the WLI Administrative Claims in full on the Effective Date.  As discussed above, pursuant to the Plan, the WLI Administrative Claims will likely not be paid until up to and possibly more than 180 days or six months after the Effective Date.  In addition, the Debtors have not demonstrated that the WLI Administrative Claims will ever be paid in full, and the Disclosure Statement and Plan indicate that WLI Administrative Claims will never be paid in full.

The Disclosure Statement and Administrative Solvency Tracker, which is Exhibit "C" to the Disclosure Statement, indicates that (1) the Debtors have $670 million in Administrative Expense Claims, including $181 million in § 503(b)(9) administrative claims and $180 million in postpetition accounts payable, (2) $263 million in Administrative Expense Claims are supposed to be "absorbed" or otherwise paid by Transform pursuant to the Asset Purchase Agreement, which would purportedly reduce the Administrative Expense Claims payable by the Debtors to $407 million, (3) the Debtors are expected to have $414 million to pay Claims, which amount includes a payment in the amount of $35 million anticipated from ESL, which controls Transform, and (4) based on the foregoing, the Debtors are administratively solvent by $7 million.  *See* Disclosure Statement, Exhibit "C," which frames the foregoing figures as set forth above and ¶ IV.T, which frames the figures differently.

The foregoing figures and purported $7 million in administrative solvency are not supported by evidence and are extremely questionable for a number of reasons, including the following:

- By the Debtors own admissions, (1) the foregoing projected estimate of Administrative Expense Claims does not include any Administrative Expense Claims asserted by Transform for purported breaches of the Asset Purchase Agreement and (2) Transform asserts that such claims may impact the Debtors' administrative solvency

15

analysis (as such claims if allowed necessarily would).[6]  Disclosure Statement, ¶¶ I.B and IV.T.

- By the Debtors own admissions, (1) the foregoing projected estimate of Administrative Expense Claims does not include any § 507(b) claims that would have priority over the other Administrative Expense Claims and (2) ESL asserts ESL [Superpriority Administrative] Claims of between *$700 million to $900 million*, though the Debtors assert that such claims would be capped at $50 million.[7]  Disclosure Statement, ¶¶ I.B and IV.T.

- By the Debtors own admissions, Transform has disputed (1) that it is responsible for funding or paying any portion of the foregoing $263 million dollar amount purportedly to be used to pay Administrative Expense Claims and (2) that it is required to transfer to the Debtors cash and inventory currently being held by Transform that the Debtors assert are payable to it.  Disclosure Statement, ¶¶ I.B, at n. 7 and IV.T.

- By the Debtors own admissions, (1) over approximately *$1.36 billion* in § 503(b)(9) Administrative Expense Claims have been filed and (2) the Debtors have conducted only a "preliminary analysis of the filed claims which is ongoing," yet, without any evidence or basis for doing so, the Debtors estimate that the 503(b)(9) Administrative Expense Claims will not exceed $181 million (*i.e.*, that the Debtors will be successful in disallowing 87% of asserted 503(b)(9) Administrative Expense Claims). Disclosure Statement, ¶ IV.T.

- Further, Wilmington Trust, National Association, as Indenture Trustee and Collateral Agent for the Second Lien Lenders, has sought a Rule 3012 determination of secured claims and administrative claims pursuant to 11 U.S.C § 506(a) and 507(b) [Dkt.

---

[6] Based on the high volume of pleadings filed with the Court regarding the disputes between the Debtors, on one hand, and Transform and ESL, on the other hand, related to, *inter alia*, the Asset Purchase Agreement and obligation thereunder, WLI assumes that the Court is well aware of the disputes and the ongoing litigation between the parties with respect thereto.

[7] If such claims were allowed even at half of the purported capped amount of $50 million, the Debtors' estates would be woefully administratively insolvent.

4279], which could total as much as $50 million, and thus further imperil the Debtors' ability under the Plan to pay in full all administrative claims as required by section 1129(a)(9) of the Bankruptcy Code.

- The Administrative Solvency Tracker, which is Exhibit "C" to the Disclosure Statement, (1) provides nominal information regarding $655 million of $670 million in Administrative Expense Claims, but not in regard to the other $15 million in Administrative Expense Claims, the information for which is redacted without reason and (2) provides nominal information regarding $355 million of $414 million in assets purportedly to be available to pay Claims, but not in regard to the other $59 million in assets purportedly to be available to pay Claims, the information for which is redacted without reason. Just that missing information alone calls the purported $7 million in administrative solvency into question and shows there is no factual basis or evidence to support such alleged administrative solvency.

As noted, the Debtors are currently projecting $7 million in administrative solvency. While that may seem like a lot in a vacuum, given that the Debtors themselves currently estimate $670 million in Administrative Expense Claims, the foregoing $7 million represents a cushion of *only 1%.* More importantly, for that razor thin administrative solvency cushion to hold up, the Debtors would have to be correct on essentially every one of the foregoing assumptions they have made regarding, inter alia, (1) *over $2 billion in Administrative Expense Claims* that are not accounted for and presumed to be disallowed and (2) collecting on *$263 million* in Administrative Expense Claims are supposed to be "absorbed" or otherwise paid by Transform pursuant to the Asset Purchase Agreement. There is simply no evidentiary support for such wild assumptions. Therefore, the Debtors have not demonstrated that they can or will satisfy the requirements of Section 1129(a)(9) requiring the payment, in full, in cash of the WLI Administrative Claims on the Effective Date, not 6 months or more later and not if and when a highly litigious Transform and/or ESL pay the Debtors amounts they assert they are entitled to but which Transform and ESL dispute. *See Pan Am Corp. v. Delta Air Lines*, 175 B.R. 438, 483

17

(Bankr. S.D.N.Y. 1994) (referring to Bankruptcy Code section 1129(a)(9) as the "administrative solvency" requirement and stating that "[b]y itself, administrative insolvency would have prevented confirmation of the Joint Plan."); *In re Scott Cable Commc'ns, Inc.*, 227 B.R. 596, 600 (Bankr. D. Conn. 1998) ("The code's confirmation scheme elevates allowed administrative claims to a dominant priority such that unless the holders agree to a different treatment, a plan cannot be confirmed without full payment of those claims even if there are no estate assets to pay them.").

C.    **THE PLAN CANNOT BE CONFIRMED BECAUSE IT IS NOT FEASIBLE AS REQUIRED BY 11 U.S.C. § 1129(a)(11).**

Section 1129(a)(11) provides that a court may confirm the Plan only if "[c]onfirmation of the [P]lan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  In order to meet this feasibility standard, a debtor must demonstrate that the plan has a "reasonable probability of success."  *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir.1986); *In re Pike's Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir. 1985); *In re Apex Oil Co.*, 118 B.R. 683, 708 (Bankr. E.D. Mo. 1990).

There are at least two (2) important aspects of a feasibility analysis.  The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date to pay all the claims that are entitled to be paid on such date.  The second aspect considers whether the Debtors will have enough cash over the life of the Plan to make the required Plan payments.

For all of the reasons set forth above, the Debtors have not demonstrated that they will have enough cash on the Effective Date to pay all Administrative Expense Claims, including the WLI Administrative Claims totaling $1,385,069.10, required to be paid on the Effective Date. Indeed, in addition to the reasons set forth above, WLI notes that, pursuant to the Plan, $263 million of the $407 million in Administrative Expense Claims (which amount is likely much higher) is to be paid by Transform and there is no indication that such amount will be paid by the Effective Date.  In fact, given the litigation between the Debtors, it is unlikely that the entire

$263 million will be paid to the Debtor on the Effective Date, if ever. *See e.g., Quarles v. U.S. Trustee*, 194 B.R. 94, 97 (W.D. Va. 1996) (stating that a debtor's premise "that outcomes in pending litigation favorable to him will cure his financial ills is pure speculation" and concluding that the debtor did not have a reasonable likelihood of effectuating a reorganization); *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) ("A plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely.") (quoting *Sherman v. Harbin (In re Harbin)*, 486 F.3d 510, 519 (9th Cir. 2007)).

Further, to the extent the Debtors purport to make WLI responsible to go after Transform to recover the $263 million payable to the Debtors under the Asset Purchase Agreement (or any amount thereof payable to WLI by the Debtors) because (1) Transform is purportedly "absorbing" obligations to pay such amounts or (2) the $263 million is supposed to be the initial source of paying Allowed Administrative Expense Claims, the Plan is even more unfeasible and incapable of meeting the requirements of Section 1129(a)(9) that such claims be paid by the Debtors, in full, in cash, on the Effective Date.

## D.     **POTENTIAL RESOLUTION.**

The foregoing issues raised by WLI could potentially be resolved if (1) the parties can agree on the amount of the WLI Administrative Claims and (2) the Debtors agree to pay such amount, in full, in cash, on the Effective Date.

/ / /

/ / /

/ / /

## **CONCLUSION**

WHEREFORE, based on the foregoing, in the absence of a settlement between the Debtors and WLI, the Court should not confirm the Plan.

Dated: Los Angeles, California
August 2, 2019

LEVENE, NEALE, BENDER, YOO
& BRILL

By: */s/ David L. Neale*
David L. Neale
NY Bar No. 2211126
Todd M. Arnold
Cal. Bar No. 221868
(*pro hac vice* pending)
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067
T: 310-229-1234
E: dln@lnbyb.com, tma@LNBYB.com
*Attorneys for Weihai Lianqiao International
Coop. Group Co., Ltd.*

# EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**Fill in this information to identify the case (Select only one Debtor per claim form):**

| | | | | |
|---|---|---|---|---|
| ☐ Sears Holdings Corporation (18-23538) | ☐ Kmart Corporation (18-23549) | ☐ Sears, Roebuck de Puerto Rico, Inc. (18-23561) | ☐ MyGofer LLC (18-23573) | ☐ Kmart.com LLC (18-23585) |
| ☒ Sears, Roebuck and Co. (18-23537) | ☐ MaxServ, Inc. (18-23550) | ☐ SYW Relay LLC (18-23562) | ☐ Sears Brands Business Unit Corporation (18-23574) | ☐ Sears Brands Management Corporation (18-23586) |
| ☐ Kmart Holding Corporation (18-23539) | ☐ Private Brands, Ltd. (18-23551) | ☐ Wally Labs LLC (18-23563) | ☐ Sears Holdings Publishing Company, LLC (18-23575) | ☐ SHC Licensed Business LLC (18-23616) |
| ☐ Kmart Operations LLC (18-23540) | ☐ Sears Development Co. (18-23552) | ☐ Big Beaver of Florida Development, LLC (18-23564) | ☐ Kmart of Michigan, Inc. (18-23576) | ☐ SHC Promotions LLC (18-23630) |
| ☐ Sears Operations LLC (18-23541) | ☐ Sears Holdings Management Corporation (18-23553) | ☐ California Builder Appliances, Inc. (18-23565) | ☐ SHC Desert Springs, LLC (18-23577) | ☐ SRe Holding Corporation (19-22301) |
| ☐ ServiceLive, Inc. (18-23542) | ☐ Sears Home & Business Franchises, Inc. (18-23554) | ☐ Florida Builder Appliances, Inc. (18-23566) | ☐ SOE, Inc. (18-23578) | |
| ☐ A&E Factory Service, LLC (18-23543) | ☐ Sears Home Improvement Products, Inc. (18-23555) | ☐ KBL Holding Inc. (18-23567) | ☐ StarWest, LLC (18-23579) | |
| ☐ A&E Home Delivery, LLC (18-23544) | ☐ Sears Insurance Services, L.L.C. (18-23556) | ☐ KLC, Inc. (18-23568) | ☐ STI Merchandising, Inc. (18-23580) | |
| ☐ A&E Lawn & Garden, LLC (18-23545) | ☐ Sears Procurement Services, Inc. (18-23557) | ☐ Sears Protection Company (Florida), L.L.C. (18-23569) | ☐ Troy Coolidge No. 13, LLC (18-23581) | |
| ☐ A&E Signature Service, LLC (18-23546) | ☐ Sears Protection Company (18-23558) | ☐ Kmart of Washington LLC (18-23570) | ☐ BlueLight.com, Inc. (18-23582) | |
| ☐ FBA Holdings Inc. (18-23547) | ☐ Sears Protection Company (PR) Inc. (18-23559) | ☐ Kmart Stores of Illinois LLC (18-23571) | ☐ Sears Brands, L.L.C. (18-23583) | |
| ☐ Innovel Solutions, Inc. (18-23548) | ☐ Sears Roebuck Acceptance Corp. (18-23560) | ☐ Kmart Stores of Texas LLC (18-23572) | ☐ Sears Buying Services, Inc. (18-23584) | |

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor   WEIHAI LIANQIAO INTL COOP GP CO LTD

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Todd M. Arnold
Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067

Contact phone   310-229-1234
Contact email   tma@lnbyb.com

Where should payments to the creditor be sent? (if different)

Weihai Lianqiao International
Coop Group Co. Ltd.
Attn: Helen Zhu
No. 269, West Wenhua Rd.
Hi-Tech Deve Zone
China, CN26420

Contact phone   0086 18663132616
Contact email   helen_zhu@lianqiao.net

**4. Does this claim amend one already filed?**

☐ No
☒ Yes.   Claim number on court claims registry (if known) 818 and 5213

Filed on   10/26/2018
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

Proof of Claim                                               page 1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?** $ 2,611,888.60 . **Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Goods Sold

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☐ No<br>☒ **Yes. Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $646,697.26 |

---

### Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Helen Zhu*
Helen Zhu (Apr 9, 2019)

**Email:** tma@lnbyb.com

Signature

**Print the name of the person who is completing and signing this claim:**

Name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | **HELEN ZHU** | | |
| | First name | Middle name | Last name |
| Title | **DEPARTMENT MANAGER** | | |
| Company | **WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD** | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | **NO.269, WEST WENHUA ROAD, HI-TECH DEVE ZONE** | | |
| | Number      Street | | |
| | **WEIHAI, SHANDONG, CHINA** | **CN** | **26420** |
| | City | State | ZIP Code |
| Contact phone | **0086 18663132616** | Email | **helen_zhu@lianqiao.net** |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ have supporting documentation.
   (attach below)
☐ do not have supporting documentation.

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION** When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

Modified Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at http://restructuring.primeclerk.com/sears.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Sears Holdings Corporation Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

---

**Do not file these instructions with your form**

**In re Sears Holdings Corporation et al.**
**Chapter 11 Case No. Case No. (18-23538)**
**(Jointly Administered)**

## ATTACHMENT TO WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD. PROOF OF CLAIM

1.      Weihai Lianqiao International Coop. Group Co., Ltd. ("WLI") provided goods to Sears, Roebuk and Co. ("Sears") and/or certain affiliated debtors in the above-referenced jointly administered bankruptcy cases (the "Debtors") for resale in the Debtors' retail business.

2.      The Proof of Claim (the "POC") to which this Attachment is attached amends Proof of Claim 818 filed by WLI against Sears on October 19, 2018 and Proof of Claim 5213 filed by WLI against Sears on October 26, 2018 (together, the "Prior POCs")

3.      WLI asserts a pre-petition claim in the amount of $2,611,888.60 (the "Claim"), which amount includes a claim in the amount of $646,697.26 for goods received by Sears within 20 days of the petition date that were sold to Sears in the ordinary course of Sears' business, which is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9) (the "503(b)(9) Claim").    A summary of the invoices underlying the Claim and identifying the invoices underlying the 503(b)(9) Claim is attached hereto as **Exhibit "1."**

4.      The documentation underlying the Claim (including the 503(b)(9) Claim) (a) was previously submitted with the Prior POCs and is incorporated herein by this reference and (b) is voluminous and will be provided to the Debtors upon request.

5.      In addition to the foregoing Claim, WLI also asserts a post-petition claim against Sears in the approximate amount of $357,041.71, which is entitled to administrative priority pursuant to 11 U.S.C. §§ 503(b) and 507(a)(2) (the "Administrative Claim").    WLI is not asserting the Administrative Claim pursuant to this POC.    WLI will file a motion for the allowance and payment of its Administrative Claim.

6.      WLI reserves the right to amend this POC, including, but not limited to, in the event (a) WLI discovers further unpaid amounts for pre-petition invoices, (b) Sears asserts that any portion of the 503(b)(9) Claim and/or Administrative Claim are misclassified for any reason,

1

including by reason of the date the underlying goods were loaded for shipment, in transit, delivered to port, or actually received by the Debtors, and/or (c) Sears asserts that the Claim (including the 503(b)(9) Claim) should have been asserted against one of the other Debtors.

7.      Any **objection to this proof of claim** must be served on:

>   Todd M. Arnold
>   Levene, Neale, Bender, Yoo & Brill L.L.P.
>   10250 Constellation Boulevard, Suite 1700
>   Los Angeles, California 90067
>   tma@lnbyb.com
>
>   and
>
>   Weihai Lianqiao International
>   Coop Group Co. Ltd.
>   Attn: Helen Zhu
>   No. 269, West Wenhua Rd.
>   Hi-Tech Deve Zone
>   China, CN26420

8.      Any other communications about this proof of claim should be directed to:

>   Todd M. Arnold
>   Levene, Neale, Bender, Yoo & Brill L.L.P.
>   10250 Constellation Boulevard, Suite 1700
>   Los Angeles, California 90067
>   tma@lnbyb.com
>   310-229-1234

**WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD**

**WEIHAI LIANQIAO INTL COOP GP CO LTD**

TO:SEARS(2642)

| Commercial Invoice | Amount | Payment Due | LOAD | DISCHARGE | DESTINATION | Pre-BK | 503(b)(9) | Post-BK [1] |
|---|---|---|---|---|---|---|---|---|
| 201820075682 | $74,954.16 | 2018/9/14 | 2018/7/2 | 2018/8/2 | 2018/8/10 | X | | |
| 201820076137 | $83,052.80 | 2018/9/14 | 2018/7/2 | 2018/8/2 | 2018/8/10 | X | | |
| 201820453134 | $35,141.44 | 2018/9/14 | 2018/7/2 | 2018/8/2 | 2018/8/10 | X | | |
| 201820076750 | $10,727.28 | 2018/9/19 | 2018/7/7 | 2018/7/25 | 2018/8/2 | X | | |
| 201820076460 | $1,797.12 | 2018/9/14 | 2018/7/2 | 2018/8/2 | 2018/8/10 | X | | |
| 201820058650 | $91,580.40 | 2018/9/19 | 2018/7/7 | 2018/7/25 | 2018/8/2 | X | | |
| 201820060481 | $101,620.72 | 2018/9/19 | 2018/7/7 | 2018/7/25 | 2018/8/2 | X | | |
| 201820452976 | $42,970.88 | 2018/9/19 | 2018/7/7 | 2018/7/25 | 2018/8/2 | X | | |
| 201820075469 | $12,847.92 | 2018/9/19 | 2018/7/7 | 2018/7/25 | 2018/8/2 | X | | |
| 201820075091 | $2,257.92 | 2018/9/19 | 2018/7/7 | 2018/7/25 | 2018/8/2 | X | | |
| 201820252031 | $8,375.68 | 2018/9/26 | 2018/7/14 | 2018/8/2 | 2018/8/10 | X | | |
| 201820250725 | $5,199.60 | 2018/9/26 | 2018/7/14 | 2018/8/2 | 2018/8/10 | X | | |
| 201820251761 | $44,017.60 | 2018/9/26 | 2018/7/14 | 2018/8/2 | 2018/8/10 | X | | |
| 201820254204 | $6,828.00 | 2018/9/28 | 2018/7/16 | 2018/8/9 | 2018/8/17 | X | | |
| 201820252274 | $4,308.24 | 2018/9/28 | 2018/7/16 | 2018/8/9 | 2018/8/17 | X | | |
| 201820252432 | $35,973.40 | 2018/9/28 | 2018/7/16 | 2018/8/9 | 2018/8/17 | X | | |
| 201820353438 | $23,689.80 | 2018/10/1 | 2018/7/19 | 2018/8/10 | 2018/8/18 | X | | |
| 201820353778 | $19,384.80 | 2018/9/27 | 2018/7/15 | 2018/8/26 | 2018/9/3 | X | | |
| 201820544099 | $43,768.78 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820545431 | $4,003.68 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820546556 | $30,881.35 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820545098 | $32,190.37 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820542385 | $33,705.25 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820549414 | $15,187.20 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820545721 | $32,015.84 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820545835 | $14,535.00 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820544888 | $36,070.93 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |
| 201820545580 | $3,336.40 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |
| 201820562305 | $25,130.23 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |
| 201820545900 | $26,221.90 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |
| 201820544551 | $27,615.25 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |
| 201820556761 | $12,422.40 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |
| 201820545808 | $26,084.96 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |

| Commercial Invoice | Amount | Payment Due | LOAD | DISCHARGE | DESTINATION | Pre-BK | 503(b)(9) | Post-BK [1] |
|---|---|---|---|---|---|---|---|---|
| 201820545869 | $12,055.50 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |
| 201820732914 | $12,642.00 | 2018/10/18 | 2018/8/5 | 2018/8/24 | 2018/9/1 | X | | |
| 201820844733 | $68,976.36 | 2018/10/18 | 2018/8/5 | 2018/8/24 | 2018/9/1 | X | | |
| 201820725521 | $14,592.60 | 2018/10/18 | 2018/8/5 | 2018/8/24 | 2018/9/1 | X | | |
| 201820845039 | $32,080.90 | 2018/10/18 | 2018/8/5 | 2018/8/24 | 2018/9/1 | X | | |
| 201820733141 | $10,290.00 | 2018/10/18 | 2018/8/5 | 2018/8/24 | 2018/9/1 | X | | |
| 201820843579 | $56,600.82 | 2018/10/18 | 2018/8/5 | 2018/8/24 | 2018/9/1 | X | | |
| 201820726553 | $11,939.40 | 2018/10/13 | 2018/7/31 | 2018/8/30 | 2018/9/7 | X | | |
| 201820844107 | $26,326.14 | 2018/10/18 | 2018/8/5 | 2018/8/24 | 2018/9/1 | X | | |
| 201820941067 | $109,258.20 | 2018/10/24 | 2018/8/11 | 2018/8/31 | 2018/9/8 | X | | |
| 201820849050 | $71,414.20 | 2018/10/24 | 2018/8/11 | 2018/8/31 | 2018/9/8 | X | | |
| 201820929030 | $100,133.32 | 2018/11/6 | 2018/8/24 | 2018/9/10 | 2018/9/18 | X | | |
| 201820962598 | $3,550.56 | 2018/10/24 | 2018/8/11 | 2018/8/31 | 2018/9/8 | X | | |
| 201820955709 | $105,906.31 | 2018/10/19 | 2018/8/6 | 2018/9/6 | 2018/9/14 | X | | |
| 201820963681 | $18,379.52 | 2018/10/19 | 2018/8/6 | 2018/9/6 | 2018/9/14 | X | | |
| 201820954683 | $107,707.43 | 2018/10/19 | 2018/8/6 | 2018/9/6 | 2018/9/14 | X | | |
| 201820988215 | $1,186.38 | 2018/10/15 | 2018/8/2 | 2018/8/6 | 2018/8/8 | X | | |
| 201820985675 | $34,459.80 | 2018/11/6 | 2018/8/24 | 2018/9/10 | 2018/9/18 | X | | |
| 201821065486 | $94,530.80 | 2018/11/6 | 2018/8/24 | 2018/9/10 | 2018/9/18 | X | | |
| 201821018228 | $18,324.40 | 2018/10/25 | 2018/8/12 | 2018/9/13 | 2018/9/21 | X | | |
| 201821066407 | $86,939.40 | 2018/10/25 | 2018/8/12 | 2018/9/13 | 2018/9/21 | X | | |
| 201821100819 | $108,942.88 | 2018/11/10 | 2018/8/28 | 2018/9/27 | 2018/10/5 | X | | |
| 201821239612 | $14,543.36 | 2018/11/10 | 2018/8/28 | 2018/9/27 | 2018/10/5 | X | | |
| 201821153169 | $66,726.03 | 2018/11/10 | 2018/8/28 | 2018/9/27 | 2018/10/5 | X | | |
| 201821119601 | $143,497.73 | 2018/11/3 | 2018/8/21 | 2018/9/20 | 2018/9/28 | X | | |
| 201821240030 | $11,801.28 | 2018/11/3 | 2018/8/21 | 2018/9/20 | 2018/9/28 | X | | |
| 201821246306 | $24,889.91 | 2018/11/10 | 2018/8/28 | 2018/9/27 | 2018/10/5 | X | | |
| 201821245823 | $30,612.49 | 2018/11/15 | 2018/9/2 | 2018/9/24 | 2018/10/2 | X | | |
| 201821413426 | $1,625.44 | 2018/11/20 | 2018/9/7 | 2018/9/28 | 2018/10/6 | X | | |
| 201821412444 | $13,476.72 | 2018/11/20 | 2018/9/7 | 2018/9/28 | 2018/10/6 | X | | |
| 201821413747 | $5,270.88 | 2018/11/20 | 2018/9/7 | 2018/9/28 | 2018/10/6 | X | | |
| 201821413879 | $17,926.48 | 2018/11/20 | 2018/9/7 | 2018/9/28 | 2018/10/6 | X | | |
| 201821412826 | $18,876.38 | 2018/11/20 | 2018/9/7 | 2018/9/28 | 2018/10/6 | X | | |
| 201821430175 | $78,127.33 | 2018/11/20 | 2018/9/7 | 2018/9/28 | 2018/10/6 | X | | |
| 201821431011 | $69,397.41 | 2018/11/17 | 2018/9/4 | 2018/10/4 | 2018/10/12 | X | | |
| 201821414125 | $14,548.76 | 2018/11/17 | 2018/9/4 | 2018/10/4 | 2018/10/12 | X | | |
| 201821414017 | $15,347.68 | 2018/11/17 | 2018/9/4 | 2018/10/4 | 2018/10/12 | X | | |

| Commercial Invoice | Amount | Payment Due | LOAD | DISCHARGE | DESTINATION | Pre-BK | 503(b)(9) | Post-BK [1] |
|---|---|---|---|---|---|---|---|---|
| 201821413941 | $11,086.50 | 2018/11/17 | 2018/9/4 | 2018/10/4 | 2018/10/12 | X | | |
| 201821540762 | $72,917.73 | 2018/11/28 | 2018/9/15 | 2018/10/8 | 2018/10/16 | | | X |
| 201821739794 | $13,064.00 | 2018/11/28 | 2018/9/15 | 2018/10/8 | 2018/10/16 | | | X |
| 201821540641 | $70,453.54 | 2018/11/23 | 2018/9/10 | 2018/10/11 | 2018/10/19 | | | X |
| 201821784669 | $19,902.65 | 2018/11/28 | 2018/9/15 | 2018/10/8 | 2018/10/16 | | | X |
| 201821783023 | $15,958.10 | 2018/11/28 | 2018/9/15 | 2018/10/8 | 2018/10/16 | | | X |
| 201821778959 | $46,691.26 | 2018/11/28 | 2018/9/15 | 2018/10/8 | 2018/10/16 | | | X |
| 201821782595 | $13,146.10 | 2018/11/29 | 2018/9/16 | 2018/10/18 | 2018/10/26 | | | X |
| 201821781297 | $16,026.02 | 2018/11/29 | 2018/9/16 | 2018/10/18 | 2018/10/26 | | | X |
| 201821778231 | $37,727.95 | 2018/11/29 | 2018/9/16 | 2018/10/18 | 2018/10/26 | | | X |
| 201822122594 | $23,004.72 | 2018/12/14 | 2018/10/1 | 2018/11/1 | 2018/11/9 | | | X |
| 201822122859 | $28,149.64 | 2018/12/19 | 2018/10/6 | 2018/10/29 | 2018/11/6 | | | X |
| **TOTAL GENERAL PRE-PETITION UNSECURED NON-503(b)(9) CLAIM** | | | | | | $ 1,965,191.34 | | |
| **TOTAL PRE-PETITION 503(b)(9) CLAIM** | | | | | | $ 646,697.26 | | |
| **TOTAL PRE-PETITION CLAIM** | | | | | | $ 2,611,888.60 | | |

**TOTAL POST-PETITION ADMINISTRATIVE CLAIM TO BA ASSERTED BY SEPARATE REQUEST FOR TE ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM**                    $    357,041.71

[1] To be asserted by separate request for the allowance and payment of administrative claim

# Electronic Proof of Claim

Final Audit Report                                                          2019-04-09

| | |
|---|---|
| Created: | 2019-04-09 |
| By: | Sears Claims (searsclaims@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAASmz7Ui3DvY58Qzed5xetabjslpVHeyAp |

## "Electronic Proof of Claim" History

Widget created by Sears Claims (searsclaims@primeclerk.com)
2019-04-09 - 5:48:53 PM GMT

Helen Zhu (tma@lnbyb.com) uploaded the following supporting documents:
Attachment
2019-04-09 - 5:57:27 PM GMT

Widget filled in by Helen Zhu (tma@lnbyb.com)
2019-04-09 - 5:57:27 PM GMT- IP address: 38.88.223.171

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64; rv:66.0) Gecko/20100101 Firefox/66.0)
2019-04-09 - 5:57:29 PM GMT- IP address: 38.88.223.171

Signed document emailed to Sears Claims (searsclaims@primeclerk.com) and Helen Zhu (tma@lnbyb.com)
2019-04-09 - 5:57:29 PM GMT

# EXHIBIT "2"

UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**Fill in this information to identify the case (Select only one Debtor per claim form):**

| | | | | |
|---|---|---|---|---|
| ☐ Sears Holdings Corporation (18-23538) | ☒ Kmart Corporation (18-23549) | ☐ Sears, Roebuck de Puerto Rico, Inc. (18-23561) | ☐ MyGofer LLC (18-23573) | ☐ Kmart.com LLC (18-23585) |
| ☐ Sears, Roebuck and Co. (18-23537) | ☐ MaxServ, Inc. (18-23550) | ☐ SYW Relay LLC (18-23562) | ☐ Sears Brands Business Unit Corporation (18-23574) | ☐ Sears Brands Management Corporation (18-23586) |
| ☐ Kmart Holding Corporation (18-23539) | ☐ Private Brands, Ltd. (18-23551) | ☐ Wally Labs LLC (18-23563) | ☐ Sears Holdings Publishing Company, LLC (18-23575) | ☐ SHC Licensed Business LLC (18-23616) |
| ☐ Kmart Operations LLC (18-23540) | ☐ Sears Development Co. (18-23552) | ☐ Big Beaver of Florida Development, LLC (18-23564) | ☐ Kmart of Michigan, Inc. (18-23576) | ☐ SHC Promotions LLC (18-23630) |
| ☐ Sears Operations LLC (18-23541) | ☐ Sears Holdings Management Corporation (18-23553) | ☐ California Builder Appliances, Inc. (18-23565) | ☐ SHC Desert Springs, LLC (18-23577) | ☐ SRe Holding Corporation (19-22301) |
| ☐ ServiceLive, Inc. (18-23542) | ☐ Sears Home & Business Franchises, Inc. (18-23554) | ☐ Florida Builder Appliances, Inc. (18-23566) | ☐ SOE, Inc. (18-23578) | |
| ☐ A&E Factory Service, LLC (18-23543) | ☐ Sears Home Improvement Products, Inc. (18-23555) | ☐ KBL Holding Inc. (18-23567) | ☐ StarWest, LLC (18-23579) | |
| ☐ A&E Home Delivery, LLC (18-23544) | ☐ Sears Insurance Services, L.L.C. (18-23556) | ☐ KLC, Inc. (18-23568) | ☐ STI Merchandising, Inc. (18-23580) | |
| ☐ A&E Lawn & Garden, LLC (18-23545) | ☐ Sears Procurement Services, Inc. (18-23557) | ☐ Sears Protection Company (Florida), L.L.C. (18-23569) | ☐ Troy Coolidge No. 13, LLC (18-23581) | |
| ☐ A&E Signature Service, LLC (18-23546) | ☐ Sears Protection Company (18-23558) | ☐ Kmart of Washington LLC (18-23570) | ☐ BlueLight.com, Inc. (18-23582) | |
| ☐ FBA Holdings Inc. (18-23547) | ☐ Sears Protection Company (PR) Inc. (18-23559) | ☐ Kmart Stores of Illinois LLC (18-23571) | ☐ Sears Brands, L.L.C. (18-23583) | |
| ☐ Innovel Solutions, Inc. (18-23548) | ☐ Sears Roebuck Acceptance Corp. (18-23560) | ☐ Kmart Stores of Texas LLC (18-23572) | ☐ Sears Buying Services, Inc. (18-23584) | |

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor    WEIHAI LIANQIAO INTL COOP GP CO LTD

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Todd M. Arnold
Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067

Contact phone  310-229-1234
Contact email  tma@lnbyb.com

Where should payments to the creditor be sent? (if different)

Weihai Lianqiao International
Coop Group Co. Ltd.
Attn: Helen Zhu
No. 269, West Wenhua Rd.
Hi-Tech Deve Zone
China, CN26420

Contact phone  0086 18663132616
Contact email  helen_zhu@lianqiao.net

**4. Does this claim amend one already filed?**

☐ No
☒ Yes. Claim number on court claims registry (if known) 519 and 2340

Filed on  10/26/2018
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

**7. How much is the claim?**    $ 890,112.68 . Does this amount include interest or other charges?

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Goods Sold

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | **Amount entitled to priority** |
|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).     $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).     $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).     $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).     $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).     $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_____) that applies.     $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☐ No | |
|---|---|---|
| | ☑ **Yes.** Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. | $267,841.10 |

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Helen Zhu*
Helen Zhu (Apr 9, 2019)

**Email:** tma@lnbyb.com

Signature

**Print the name of the person who is completing and signing this claim:**

Name of the person who is completing and signing this claim:

| Name | HELEN ZHU | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | DEPARTMENT MANAGER | | |
| Company | WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | NO.269, WEST WENHUA ROAD, HI-TECH DEVE ZONE | | |
| | Number    Street | | |
| | WEIHAI, SHANDONG, CHINA | CN | 26420 |
| | City | State | ZIP Code |
| Contact phone | 0086 18663132616 | Email | helen_zhu@lianqiao.net |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
  (attach below)

☐ I do not have supporting documentation.

🔗 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION** When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

Modified Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                 12/15

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at http://restructuring.primeclerk.com/sears.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

### Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

### Please send completed Proof(s) of Claim to:

Sears Holdings Corporation Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

**Do not file these instructions with your form**

**In re Sears Holdings Corporation et al.**
**Chapter 11 Case No. Case No. (18-23538)**
**(Jointly Administered)**

## ATTACHMENT TO WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD. PROOF OF CLAIM

1.    Weihai Lianqiao International Coop. Group Co., Ltd. ("WLI") provided goods to Kmart Corporation ("Kmart") and/or certain affiliated debtors in the above-referenced jointly administered bankruptcy cases (the "Debtors") for resale in the Debtors' retail business.

2.    The Proof of Claim (the "POC") to which this Attachment is attached amends Proof of Claim 519 filed by WLI against Kmart on October 19, 2018 and Proof of Claim 2340 filed by WLI against Kmart on October 26, 2018 (together, the "Prior POCs")

3.    WLI asserts a pre-petition claim in the amount of $622,271.58 (the "Claim"), which amount includes a claim in the amount of $267,841.10 for goods received by Kmart within 20 days of the petition date that were sold to Kmart in the ordinary course of Kmart's business, which is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9) (the "503(b)(9) Claim").    A summary of the invoices underlying the Claim and identifying the invoices underlying the 503(b)(9) Claim is attached hereto as **Exhibit "1."**

4.    The documentation underlying the Claim (including the 503(b)(9) Claim) (a) was previously submitted with the Prior POCs and is incorporated herein by this reference and (b) is voluminous and will be provided to the Debtors upon request.

5.    In addition to the foregoing Claim, WLI also asserts a post-petition claim against Kmart in the approximate amount of $113,489.03, which is entitled to administrative priority pursuant to 11 U.S.C. §§ 503(b) and 507(a)(2) (the "Administrative Claim").    WLI is not asserting the Administrative Claim pursuant to this POC.    WLI will file a motion for the allowance and payment of its Administrative Claim.

6.    WLI reserves the right to amend this POC, including, but not limited to, in the event (a) WLI discovers further unpaid amounts for pre-petition invoices, (b) Kmart asserts that any portion of the 503(b)(9) Claim and/or Administrative Claim are misclassified for any reason,

1

including by reason of the date the underlying goods were loaded for shipment, in transit, delivered to port, or actually received by the Debtors, and/or (c) Kmart asserts that the Claim (including the 503(b)(9) Claim) should have been asserted against one of the other Debtors.

7.    Any **objection to this proof of claim** must be served on:

> Todd M. Arnold
> Levene, Neale, Bender, Yoo & Brill L.L.P.
> 10250 Constellation Boulevard, Suite 1700
> Los Angeles, California 90067
> tma@lnbyb.com
>
> and
>
> Weihai Lianqiao International
> Coop Group Co. Ltd.
> Attn: Helen Zhu
> No. 269, West Wenhua Rd.
> Hi-Tech Deve Zone
> China, CN26420

8.    Any other communications about this proof of claim should be directed to:

> Todd M. Arnold
> Levene, Neale, Bender, Yoo & Brill L.L.P.
> 10250 Constellation Boulevard, Suite 1700
> Los Angeles, California 90067
> tma@lnbyb.com
> 310-229-1234

**WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD**

**WEIHAI LIANQIAO INTL COOP GP CO LTD**

TO:KMART(2641)

| Commercial Invoice | Amount | Payment Due | LOAD | DISCHARGE | DESTINATION | Pre-BK | 503(b)(9) | Post-BK [1] |
|---|---|---|---|---|---|---|---|---|
| 201820279309 | $128.70 | 2018/9/14 | 2018/7/2 | 2018/8/2 | 2018/8/10 | X | | |
| 201820060111 | $30,952.28 | 2018/9/14 | 2018/7/2 | 2018/8/2 | 2018/8/10 | X | | |
| 201820059688 | $25,244.32 | 2018/9/19 | 2018/7/7 | 2018/7/25 | 2018/8/2 | X | | |
| 201820350161 | $8,729.83 | 2018/10/1 | 2018/7/19 | 2018/8/10 | 2018/8/18 | X | | |
| 201820350637 | $11,058.25 | 1902/8/21 | 1902/6/8 | 2018/8/16 | 2018/8/24 | X | | |
| 201820533679 | $3,573.76 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820533619 | $4,349.76 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820498950 | $6,642.84 | 2018/10/9 | 2018/7/27 | 2018/8/17 | 2018/8/25 | X | | |
| 201820534197 | $3,671.48 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |
| 201820536141 | $4,728.00 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |
| 201820535811 | $6,784.68 | 2018/10/5 | 2018/7/23 | 2018/8/23 | 2018/8/31 | X | | |
| 201820870567 | $10,052.55 | 2018/10/18 | 2018/8/5 | 2018/8/24 | 2018/9/1 | X | | |
| 201820915593 | $15,606.58 | 2018/10/18 | 2018/8/5 | 2018/8/24 | 2018/9/1 | X | | |
| 201820914831 | $38,394.78 | 2018/10/18 | 2018/8/5 | 2018/8/24 | 2018/9/1 | X | | |
| 201820817108 | $24,316.88 | 2018/10/13 | 2018/7/31 | 2018/8/30 | 2018/9/7 | X | | |
| 201820871312 | $7,511.00 | 2018/10/13 | 2018/7/31 | 2018/8/30 | 2018/9/7 | X | | |
| 201820916917 | $12,856.05 | 2018/10/13 | 2018/7/31 | 2018/8/30 | 2018/9/7 | X | | |
| 201820916811 | $19,874.04 | 2018/10/13 | 2018/7/31 | 2018/8/30 | 2018/9/7 | X | | |
| 201820915831 | $48,827.70 | 2018/10/13 | 2018/7/31 | 2018/8/30 | 2018/9/7 | X | | |
| 201820817638 | $30,932.40 | 2018/10/13 | 2018/7/31 | 2018/8/30 | 2018/9/7 | X | | |
| 201820871443 | $7,917.00 | 2018/10/13 | 2018/7/31 | 2018/8/30 | 2018/9/7 | X | | |
| 201820846941 | $15,059.35 | 2018/10/24 | 2018/8/11 | 2018/8/31 | 2018/9/8 | X | | |
| 201820847600 | $11,281.00 | 2018/10/24 | 2018/8/11 | 2018/8/31 | 2018/9/8 | X | | |
| 201820904879 | $85,240.85 | 2018/10/24 | 2018/8/11 | 2018/8/31 | 2018/9/8 | X | | |
| 201820848478 | $11,843.60 | 2018/10/19 | 2018/8/6 | 2018/9/6 | 2018/9/14 | X | | |

| Commercial Invoice | Amount | Payment Due | LOAD | DISCHARGE | DESTINATION | Pre-BK | 503(b)(9) | Post-BK [1] |
|---|---|---|---|---|---|---|---|---|
| 201820904608 | $98,477.00 | 2018/10/19 | 2018/8/6 | 2018/9/6 | 2018/9/14 | X | | |
| 201820848289 | $19,192.76 | 2018/10/19 | 2018/8/6 | 2018/9/6 | 2018/9/14 | X | | |
| 201820877481 | $925.38 | 2018/10/15 | 2018/8/2 | 2018/8/6 | 2018/8/8 | X | | |
| 201821014937 | $25,454.37 | 2018/11/6 | 2018/8/24 | 2018/9/10 | 2018/9/18 | X | | |
| 201821014299 | $32,321.53 | 2018/10/25 | 2018/8/12 | 2018/9/13 | 2018/9/21 | X | | |
| 201820989279 | $322.86 | 2018/10/26 | 2018/8/13 | 2018/8/16 | 2018/8/18 | X | | |
| 201821334395 | $70,057.68 | 2018/11/10 | 2018/8/28 | 2018/9/27 | 2018/10/5 | X | | |
| 201821335154 | $5,620.23 | 2018/11/10 | 2018/8/28 | 2018/9/27 | 2018/10/5 | X | | |
| 201821390361 | $138.80 | 2018/11/10 | 2018/8/28 | 2018/9/27 | 2018/10/5 | X | | |
| 201821451501 | $639.00 | 2018/11/10 | 2018/8/28 | 2018/9/27 | 2018/10/5 | X | | |
| 201821335449 | $66,256.48 | 2018/11/15 | 2018/9/2 | 2018/9/24 | 2018/10/2 | X | | |
| 201821390456 | $69.40 | 2018/11/15 | 2018/9/2 | 2018/9/24 | 2018/10/2 | X | | |
| 201821451519 | $575.10 | 2018/11/15 | 2018/9/2 | 2018/9/24 | 2018/10/2 | X | | |
| 201821410610 | $55,181.11 | 2018/11/20 | 2018/9/7 | 2018/9/28 | 2018/10/6 | X | | |
| 201821412033 | $69,303.30 | 2018/11/17 | 2018/9/4 | 2018/10/4 | 2018/10/12 | X | | |
| 201821745965 | $9,319.01 | 2018/11/28 | 2018/9/15 | 2018/10/8 | 2018/10/16 | | | X |
| 201821745754 | $33,205.13 | 2018/11/28 | 2018/9/15 | 2018/10/8 | 2018/10/16 | | | X |
| 201821743157 | $37,902.56 | 2018/11/29 | 2018/9/16 | 2018/10/18 | 2018/10/26 | | | X |
| 201821744696 | $11,820.83 | 2018/11/29 | 2018/9/16 | 2018/10/18 | 2018/10/26 | | | X |
| 201822099995 | $11,900.00 | 2018/12/14 | 2018/10/1 | 2018/11/1 | 2018/11/9 | | | X |
| 201822099866 | $9,341.50 | 2018/12/19 | 2018/10/6 | 2018/10/29 | 2018/11/6 | | | X |
| **TOTAL GENERAL PRE-PETITION UNSECURED NON-503(b)(9) CLAIM** | | | | | | $  622,271.58 | | |
| **TOTAL PRE-PETITION 503(b)(9) CLAIM** | | | | | | $  267,841.10 | | |
| **TOTAL PRE-PETITION CLAIM** | | | | | | $  890,112.68 | | |

**TOTAL POST-PETITION ADMINISTRATIVE CLAIM TO BA ASSERTED BY SEPARATE REQUEST FOR TE ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM**              $    113,489.03

[1] To be asserted by separate request for the allowance and payment of administrative claim

# Electronic Proof of Claim

Final Audit Report                                                        2019-04-09

| | |
|---|---|
| Created: | 2019-04-09 |
| By: | Sears Claims (searsclaims@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAQOOx9bBTwpuqKIgJIuBVCWyDx8r2IDH2 |

## "Electronic Proof of Claim" History

📄 Widget created by Sears Claims (searsclaims@primeclerk.com)
2019-04-09 - 6:03:40 PM GMT

📎 Helen Zhu (tma@lnbyb.com) uploaded the following supporting documents:
    📎 Attachment
2019-04-09 - 6:10:10 PM GMT

📄 Widget filled in by Helen Zhu (tma@lnbyb.com)
2019-04-09 - 6:10:10 PM GMT- IP address: 38.88.223.171

✍️ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64; rv:66.0)
Gecko/20100101 Firefox/66.0)
2019-04-09 - 6:10:13 PM GMT- IP address: 38.88.223.171

✅ Signed document emailed to Sears Claims (searsclaims@primeclerk.com) and Helen Zhu (tma@lnbyb.com)
2019-04-09 - 6:10:13 PM GMT

Prime Clerk    POWERED BY
               Adobe Sign

# EXHIBIT "3"

18-23538-rdd   Doc 4706   Filed 08/02/19   Entered 08/02/19 13:51:46   Main Document

**HEARING DATE: August 22, 2019**
**HEARING TIME: 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| SEARS HOLDINGS CORPORATION, et al., | Case No. 18-23538 (RDD) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF MOTION OF WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS UNDER 11 U.S.C. §§ 503(b)(1) AND 503(b)(9)

**PLEASE TAKE NOTICE** that, pursuant to the annexed motion (the "Motion"), Weihai

Lianqiao International Coop. Group Co., Ltd. ("WLI") shall move before the Honorable Robert

D. Drain, United States Bankruptcy Judge, in his courtroom at the United States Bankruptcy

Court, 300 Quarropas Street, White Plains, New York 10601, on **August 22, 2019 at 10:00 a.m.**

or as soon thereafter as counsel may be heard, for an order allowing and compelling the Debtors

to pay WLI its administrative expense claims pursuant to sections 503(b)(1) and 503(b)(9) of the

---

[1] The debtors (the "Debtors") in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

Bankruptcy Code.

      **PLEASE TAKE FURTHER NOTICE**, that any responses or objection ("Objections")
to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules,
shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court,
including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-
399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a
CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered
directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and
General Order M-399, to the extent applicable, and shall be served in accordance with the
Amended Order Implementing Certain Notice and Case Management Procedures, entered on
November 1, 2018 [Dkt. No. 405], so as to be filed and received no later than **August 15, 2019
at 4:00 p.m. (Eastern Time)** (the "Objection Deadline").

      **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served
with respect to the Motion, WLI may, on or after the Objection Deadline, submit to the
Bankruptcy Court an order substantially in the form of the proposed order annexed to the
Motion, which order may be entered without further notice or opportunity to be heard.

Dated: Los Angeles, California
       August 2, 2019

                                  LEVENE, NEALE, BENDER, YOO
                                     & BRILL

                                  By: */s/ David L. Neale*
                                  David L. Neale
                                  NY Bar No. 2211126
                                  Todd M. Arnold
                                  Cal. Bar No. 221868
                                  (*pro hac vice* pending)
                                  10250 Constellation Blvd.
                                  Suite 1700
                                  Los Angeles, CA 90067
                                  T: 310-229-1234
                                  E: dln@lnbyb.com, tma@LNBYB.com
                                  *Attorneys for Weihai Lianqiao International
                                  Coop. Group Co., Ltd.*

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 |
| SEARS HOLDINGS CORPORATION, et al., | Case No. 18-23538 (RDD) |
| Debtors.[2] | (Jointly Administered) |

## MOTION OF WEIHAI LIANQIAO INTERNATIONAL COOP. GROUP CO., LTD TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. §§ 503(b)(1) AND 503(b)(9)

---

[2] The debtors (the "Debtors") in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Weihai Lianqiao International Coop. Group Co., Ltd. ("WLI"), by and through its undersigned counsel, submits this Motion to Allow and Compel Payment of Administrative Expense Claim Under 11 U.S.C. §§ 503(b)(1) and 503(b)(9) (the "Motion"). In support of the Motion, WLI respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (B), and (O).

2.      The statutory predicates for the relief requested herein are sections 105, 503(b)(1)(A) and (b)(9), and 1129(a)(9)(A) of Title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

3.      On October 15, 2018 (the "Petition Date"), Sears Holdings Corporation, a debtor and debtor in possession in the above-captioned chapter 11 cases and certain of its affiliated debtors and debtors in possession (collectively, the "Debtors"), including Sears, Roebuck and Co. ("Sears") and Kmart Corporation ("Kmart"), commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

4.      On the Petition Date, the Debtors also filed a motion requesting authority to pay vendors in the ordinary course of business for goods ordered prepetition but delivered to the Debtors postpetition [Dkt. No. 14] (the "Postpetition Deliveries Motion").

5.      In the Postpetition Deliveries Motion, the Debtors requested an order:

> . . . granting administrative priority status to all undisputed obligations of the Debtors owing to third party vendors and suppliers arising from the postpetition delivery of goods ordered prior to the [Petition Date] and authorizing the Debtors to pay such obligations in the ordinary course of business.

4

Postpetition Deliveries Motion, ¶ 5.

6.     The Court approved the Postpetition Deliveries Motion by final order entered November 20, 2018 (the "Postpetition Deliveries Order") [Dkt. No. 843].  The Postpetition Deliveries Order provides:

> All undisputed obligations of the Debtors arising from the postpetition delivery or shipment [] of goods under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code, and the Debtors are authorized, but not directed, to pay such obligations in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

Postpetition Deliveries Order, ¶ 8.

7.     Also on the Petition Date, the Debtors filed a motion requesting approval to enter into a debtor-in-possession asset-based lending facility ("DIP ABL Facility") and a junior debtor-in-possession facility ("Junior DIP Facility") [Dkt. No. 7].

8.     The Debtors then filed a supplemental motion related to the Junior DIP Facility [Dkt. No. 872] on November 25, 2018.

9.     The Court approved entry into the DIP ABL Facility on an interim basis by order entered October 16, 2018, and on a final basis by order entered November 30, 2018. *See* Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief ("DIP ABL Facility Final Order") [Dkt. No. 955]. Under the DIP ABL Facility, the Debtors have access to up to $300 million in new money.

10.     The Court also approved entry into the Junior DIP Facility on an interim basis by order entered November 30, 2018 [Dkt. No. 951], and on a final basis at a hearing on December 20, 2018. Under the Junior DIP Facility, Debtors have access to up to $350 million of new

5

money.

11.     Soon after the Petition Date, the Debtors induced WLI to maintain and continue shipments with the promise of continued payments for goods shipped and delivered after the Petition Date.  The Debtors were also induced by the Debtors to maintain and continue shipments to the Debtors based on the Postpetition Deliveries Motion and Postpetition Deliveries Order.

12.     After the Petition Date, the Debtors represented that the Debtors' estates (including the estates of Sears and Kmart) were administratively solvent.  *See* DIP ABL Facility Final Order.  To the extent they are not administratively solvent, the Debtors (a) would not be able to pay allowed administrative claims, including those of WLI, on the effective date of any plan as required by section 1129(a)(9)(A) of the Bankruptcy Code and, therefore, (b) would not be able to confirm any plan.

## WLI'S ADMINISTRATIVE CLAIMS

13.     In the twenty (20) days prior to the Petition Date, WLI provided goods to the Debtors with a value of $914,538.36 ($646,697.26 to Sears and $267,841.10 to Kmart). Pursuant to section 503(b)(9) of the Bankruptcy Code, WLI asserts that it maintains allowed administrative claims for the value of such goods in the amount of $914,538.36, which amount includes a section 503(b)(9) claim in the amount of $646,697.26 against Sears and a section 503(b)(9) claim in the amount of $267,841.10 against Kmart) (collectively the "§ 503(b)(9) Claims").  A summary of the invoices underlying the § 503(b)(9) Claim related to Sears, together with true and correct copies of currently available invoices and related shipping documents supporting the § 503(b)(9) Claim related to Sears (the "Sears § 503(b)(9) Invoices") are annexed hereto as **Exhibit "A."**[3]  A summary of the invoices underlying the § 503(b)(9) Claim related to Kmart, together with true and correct copies of currently available invoices and related shipping documents supporting the § 503(b)(9) Claim related to Kmart (with the Sears § 503(b)(9)

---

[3] To the extent any of the invoices and related shipping documents supporting the administrative claims referenced herein are not currently available, WLI will file a supplemental declaration with such invoices and shipping documents.

Invoices, the "§ 503(b)(9) Invoices") are annexed hereto as **Exhibit "B."**

14.    WLI filed timely proofs of claim in the Sears and Kmart cases asserting the foregoing § 503(b)(9) Claims.  A true and correct copy of the proof of claim filed in the Sears case is annexed hereto as **Exhibit "C."**  A true and correct copy of the proof of claim filed in the Kmart case is annexed hereto as **Exhibit "D."**

15.    After the Petition Date, WLI provided goods (the "Postpetition Goods") to the Debtors with a value of $470,530.74 ($357,041.71 to Sears and $113,489.03 to Kmart). Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, WLI asserts and is entitled to the allowance of administrative claims for the value of such goods in the amount of $470,530.74, which amount includes a section 503(b)(1)(A) claim in the amount of $357,041.71 against Sears and a section 503(b)(1)(A) claim in the amount of $113,489.03 against Kmart) (collectively the "§ 503(b)(1)(A) Claims").  A summary of the invoices underlying the § 503(b)(1)(A) Claim related to Sears, together with true and correct copies of currently available invoices and related shipping documents supporting the § 503(1)(A) Claim related to Sears (the "Sears Post-Petition Invoices") are annexed hereto as **Exhibit "E."**  A summary of the invoices underlying the § 503(b)(1)(A) Claim related to Kmart, together with true and correct copies of currently available invoices and related shipping documents supporting the § 503(1)(A) Claim related to Kmart (with the Sears Post-Petition Invoices, the "Post-Petition Invoices") are annexed hereto as **Exhibit "F."**

**RELIEF REQUESTED**

16.    WLI requests entry of an order, substantially in the form attached hereto as **Exhibit "G:"** (a) granting WLI an allowed administrative expense claim in the amount of $470,530.74 under section 503(b)(1)(A) of the Bankruptcy Code for goods provided to the Debtors post-petition ($357,041.71 to Sears and $113,489.03 to Kmart), (b) granting WLI an allowed administrative claim in the amount of $914,538.36 for goods provided to the Debtors in the twenty (20) days prior to the Petition Date ($646,697.26 to Sears and $267,841.10 to Kmart)

7

under section 503(b)(9) of the Bankruptcy Code,[4] and (c) requiring the Debtors to immediately pay such allowed administrative expense claims and no later than the date the Debtors' plan becomes effective.

## BASIS FOR RELIEF

17.     The Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including — the actual, necessary costs and expenses of preserving the estate ...." 11 U.S.C. § 503(b)(1)(A)."

18.     Under section 503(b)(1)(A) of the Bankruptcy Code, "[a]n expense is administrative only if it arises out of a transaction between the creditor and the bankruptcy trustee or debtor in possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *See In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2017) (*citing Trustees of Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98, 101 (2d Cir. 1986)).

19.     The Debtors previously acknowledged that claims for Postpetition Goods are entitled to administrative priority under section 503(b)(1)(A) as actual, necessary costs and expenses of preserving the estate:

> Pursuant to section 503(b) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority because they benefit the estate postpetition. 11 U.S.C. § 503(b)(1)(A ).

Postpetition Deliveries Motion, ¶ 32

---

[4] While WLI believes all of the goods underlying the § 503(b)(9) Claims were received within twenty (20) days before the Petition Date, (1) to the extent that any of the goods were instead deemed to have been received by the Debtors after the Petition Date, WLI nonetheless asserts that such goods should, in that instance, be entitled to administrative claim status under section 503(b)(1) of the Bankruptcy Code and (2) to the extent the Debtors argue, or the Court determines, that a date other than the date of actual delivery to the Debtors (which is the date used by WLI in calculating and determining its § 503(b)(9) Claims), WLI reserves the right to adjust its administrative claims accordingly.

20.     Further, under section 503(b)(9) of the Bankruptcy Code, a claim based on "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business" is entitled to administrative expense status. *See* 11 U.S.C. § 503(b)(9).

21.     Here, WLI is asserting § 503(b)(1)(A) Claims in the amount of $470,530.74 ($357,041.71 against Sears and $113,489.03 against Kmart) for goods provided to the foregoing Debtors after the Petition Date and 503(b)(9) Claims in the amount of $914,538.36 ($646,697.26 against Sears and $267,841.10 against Kmart) for the value of the goods received by the foregoing Debtors in the twenty (20) days before the Petition Date.   Moreover, the foregoing Debtors have already benefited from the goods provided by WLI and there has been no dispute to the Post-Petition Invoices or the § 503(b)(9) Invoices. Accordingly, WLI is entitled to administrative expense priority pursuant to sections 503(b)(1)(A) and 503(b)(9) of the Bankruptcy Code.

22.     In addition to allowance of the foregoing administrative claims, WLI respectfully requests immediate payment of such administrative claims.  With respect to timing of payment of an allowed administrative claim, courts have discretion to order the immediate payment of such a claim. *See In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (*citing Matter of Baptist Medical Center of New York, Inc.*, 52 B.R. 417, 421 (Bankr. E.D.N.Y. 1985); *In re Global Home Prods., LLC*, 2006 Bankr. LEXIS 3608, at *10-11 (Bankr. D. Del. Dec. 21, 2006).  Courts look to a variety of factors in determining whether to order immediate payment, including (a) bankruptcy's goal of orderly and equal distribution among creditors, (b) the particular needs of the administrative claimant, and (c) the length and expense of the case's administration.  *Id.* Other courts have interpreted these factors as (a) prejudice to the debtors, (b) hardship to the claimant, and (c) potential detriment to other creditors. *See Global Home Prods.*, LLC, 2006 Bankr. LEXIS 3608, at *12.  Courts use their discretion as to timing to "ensure the orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets," especially if there is a doubt as to the administrative solvency of the debtor overall." *In*

9

*re King*, 392 B.R. 62, 68 (Bankr. S.D.N.Y. 2008) (*citing*, among various cases, *In re HQ Global Holdings, Inc.*, 282 B.R. at 173).

23.    As set forth above, at the Debtors' request, WLI provided goods to the Debtors after the Petition Date and prior to the Petition Date.  The Debtors have not disputed the Post-Petition Invoices or the § 503(b)(9) Invoices.  The DIP ABL Facility and the Junior DIP Facility provide Debtors with the funds necessary to keep current with the administrative expenses incurred. Indeed, upon information and belief, the Debtors are paying their legal professionals their ongoing fees in connection with the Court's monthly compensation order as well as other administrative claim holders in the ordinary course of business.  The Debtors have stated on more than one occasion in these cases that these cases would not be run on the backs of vendors. *See e.g.*, Debtors' Reply to Objections to Junior Debtor-in-Possession Financing, ¶ 6 [Dkt. No. 1297].  It would be patently unfair, and without legal basis for the Debtors to pay some administrative expense claimants who supply goods and services to the Debtors in the ordinary course of business and not pay other similarly situated creditors.  *See, e.g.*, 11 U.S.C. §§ 507, 1122(a), 1123(a)(4); *Hall v. Perry (In re Cochise College Parlc, Inc.)*, 703 F.2d 1339, 1356 n. 22 (9th Cir. 1983) ("All administrative expense creditors must be treated with 'absolute equality,' unless, of course, some creditors, with full knowledge of the fact, have agreed to subordinate their claims.") (citation omitted).

24.    In addition to the foregoing, section 1129(a) provides that the Debtors' pending plan can only be confirmed if, "[e]xcept to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that — (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder such claim will receive on account of such claim cash equal to the allowed amount of such claim." 11 U.S.C.  § 1129(a)(9)(A).  Here, WLI does not agree to treatment of its § 503(b)(9) Claims or § 503(b)(1)(a) Claims (which are clams specified in section 507(a)(2) of the Bankruptcy Code) other than as specified in section 1129(a)(9)(A) of the Bankruptcy Code

25.    Accordingly, WLI requests that the Court direct the Debtors to make immediate payment of WLI's allowed administrative expense claims set forth herein and certainly no later than the date the Debtors' plan becomes effective, if it is indeed confirmed by the Court.

## NOTICE

26.    Notice of this Motion will be served on (a) counsel to the Debtors, (b) Counsel to the Official Committee of Unsecured Creditors, (c) the Office of the United States Trustee, Region 2, (d) and all other parties entitled to receive notice under Bankruptcy Rule 2002 and under the Amended Order Implementing Certain Notice and Case Management Procedures [Dkt. No. 405]. WLI submits that no other or further notice need be provided.

27.    No previous motion or application for the relief sought herein has been made to this or any other Court.

## RESERVATION OF RIGHTS

28.    WLI reserves the right to supplement or amend this Motion and make additional arguments at the hearing to consider the Motion. WLI further reserves any rights of setoff and/or recoupment it may have in connection with the claims asserted in this Motion.

29.    As indicated in this Motion, the Debtors have never disputed the Post-Petition Invoices or the § 503(b)(9) Invoices and there are no factual issues requiring an evidentiary hearing on the allowance and payment of WLI's administrative claims. To the extent that the Debtors manufacture a factual issue in advance of the hearing, WLI reserves the right to request that the Court hold an evidentiary hearing on August 22, 2019, the date of the hearing on this Motion, or alternatively seek documents and testimony from the Debtors to the extent that the Court deems that the issues relevant to the allowance of the administrative claims requires an evidentiary record.s

/ / /

/ / /

/ / /

11

**CONCLUSION**

30.     For the foregoing reasons, WLI respectfully requests that the Court (a) enter an order, substantially in the form attached hereto as **Exhibit "G,"** (i) granting WLI an allowed administrative expense claim in the amount of $470,530.74 ($357,041.71 against Sears and $113,489.03 against Kmart) on account of the § 503(b)(1)(A) Claims, (ii) granting WLI an allowed administrative claim in the amount of $914,538.36 ($646,697.26 against Sears and $267,841.10 against Kmart) on account of the § 503(b)(9) Claims, and (iii) requiring the Debtors to immediately pay the § 503(b)(1)(A) Claims and § 503(b)(9) Claims and no later than the date the Debtors' plan becomes effective (if it is confirmed); and (b) grant such other and further relief to WLI as the Court deems just and proper.

Dated: Los Angeles, California
        August 2, 2019

                                        LEVENE, NEALE, BENDER, YOO
                                           & BRILL

                                        By: */s/ David L. Neale*
                                        David L. Neale
                                        NY Bar No. 2211126
                                        Todd M. Arnold
                                        Cal. Bar No. 221868
                                        (*pro hac vice* pending)
                                        10250 Constellation Blvd.
                                        Suite 1700
                                        Los Angeles, CA 90067
                                        T: 310-229-1234
                                        E: dln@lnbyb.com, tma@LNBYB.com
                                        *Attorneys for Weihai Lianqiao International*
                                        *Coop. Group Co., Ltd.*

## DECLARATION OF SUN TIE

I, SUN TIE, hereby declare as follows:

1.      I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I make this declaration in support of the Motion to which this declaration is attached.  Unless otherwise state, all capitalized terms herein have the same meanings as in the Motion.

3.      I am the of General Manager of Weihai Lianqiao International Coop. Group Co., Ltd. ("WLI").  In that position, I am familiar with the WLI's books and records, including those documenting WLI's transactions with the Debtors.

4.      In the twenty (20) days prior to the Petition Date, WLI provided goods to the Debtors with a value of $914,538.36 ($646,697.26 to Sears and $267,841.10 to Kmart).  A summary of the invoices underlying the § 503(b)(9) Claim related to Sears, together with true and correct copies of currently available invoices and related shipping documents supporting the § 503(b)(9) Claim related to Sears (the "Sears § 503(b)(9) Invoices") are annexed hereto as **Exhibit "A."**

5.      A summary of the invoices underlying the § 503(b)(9) Claim related to Kmart, together with true and correct copies of currently available invoices and related shipping documents supporting the § 503(b)(9) Claim related to Kmart (with the Sears § 503(b)(9) Invoices, the "§ 503(b)(9) Invoices") are annexed hereto as **Exhibit "B."**

6.      WLI filed timely proofs of claim in the Sears and Kmart cases asserting the foregoing § 503(b)(9) Claims.  A true and correct copy of the proof of claim filed in the Sears case is annexed hereto as **Exhibit "C."**  A true and correct copy of the proof of claim filed in the Kmart case is annexed hereto as **Exhibit "D."**

7.      After the Petition Date, WLI provided goods (the "Postpetition Goods") to the Debtors with a value of $470,530.74 ($357,041.71 to Sears and $113,489.03 to Kmart).  A

13

summary of the invoices underlying the § 503(b)(1)(A) Claim related to Sears, together with true and correct copies of currently available invoices and related shipping documents supporting the § 503(1)(A) Claim related to Sears (the "Sears Post-Petition Invoices") are annexed hereto as **Exhibit "E."**

8.      A summary of the invoices underlying the § 503(b)(1)(A) Claim related to Kmart, together with true and correct copies of currently available invoices and related shipping documents supporting the § 503(1)(A) Claim related to Kmart (with the Sears Post-Petition Invoices, the "Post-Petition Invoices") are annexed hereto as **Exhibit "F."**

9.      To my knowledge, Sears and Kmart have already benefited from the goods provided by WLI and there has been no dispute to the Post-Petition Invoices or the § 503(b)(9) Invoices.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 2ⁿᵈ day of August 2019, at _We Hai   China_

_____

TIE SUN

14