Allen G. Kadish
Lance A. Schildkraut
ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
      lschildkraut@archerlaw.com

   and

Kenneth M. Florey
M. Neal Smith
ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
      nsmith@robbins-schwartz.com

   and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF COMMUNITY UNIT SCHOOL DISTRICT 300
TO CONFIRMATION OF THE SECOND AMENDED JOINT CHAPTER 11
PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS**

Community Unit School District 300, an Illinois school district existing and operating pursuant to the Illinois School Code, 150 Illinois Compiled Statutes ("**ILCS**") 5/1-1, *et seq.* (the "**School District**"), and a creditor in the cases of Sears Holdings Corporation (0798), Sears,

1

Roebuck and Co. (0680), and Sears Holdings Management Corporation (2148), by and through its undersigned counsel, hereby objects to confirmation of the Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors (the "**Plan**").  The School District further reserves its right to object to confirmation on additional grounds.  The basis for this objection and reservation is as follows:

A.   **OBJECTIONS TO CONFIRMATION**

1.   **The Plan does not comply with Section 1129(a)(1) of the Bankruptcy Code**

For the following reasons, among others, the Plan does not comply with applicable provisions of the Bankruptcy Code.

a.   The Plan violates section 1123(a)(5) of the Bankruptcy Code, because it does not provide an adequate means for its implementation.  Among the Plan's defects in this regard are the following:

(1)   *Improper Vacatement of Prior Abstention Order*:  Section 15.8(b) of the Plan states that "[e]xcept as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors * * * are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust."  A similar provision is found in section 15.9(b) of the Plan dealing with third-party releases.  Here, the Plan provides that each Released Party, as defined therein, shall be deemed released and discharged by Releasing Parties "from any and all Causes of Action that such Entity would have been legally

2

entitled to assert in its own right (whether individually or collectively) based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' Estates * * * *"

Whether done intentionally or unintentionally, these provisions arguably have the affect of improperly vacating this Court's "Order Granting Community Unit School District 300's Motion For Abstention" dated April 25, 2019 [Doc. No. 3362] (the "**Abstention Order**"). Through the Abstention Order entered pursuant to 28 U.S.C. §1334(c)(2), the Court abstained from hearing the issues raised in the Motion of Debtors to Compel Turnover of Estate Property [Docket No. 2715] related objections thereto, and the School District and all other relevant parties were authorized to proceed to prosecute and achieve complete relief and resolution with respect to the matters raised therein related to whether the Debtors or the School District are entitled to receive certain moneys currently held by the Village of Hoffman Estates, Illinois, in its Special Tax Allocation Fund.

As a result of the Abstention Order, the action pending in the Circuit Court of Cook County, State of Illinois styled, *Community Unit School District 300 v. Village of Hoffman Estates, et al.,* Case No. 2018 CH 12683 (the "**Illinois Action**") is proceeding forward. Cross motions for summary judgment have been filed by the parties in the Illinois Action, the matter has been fully briefed and the court is expected to rule on August 21, 2019.

Where the Court has abstained, the Debtors cannot indirectly revest the Court with jurisdiction over the dispute, nor enjoin the underlying action with respect to which the Court abstained, through undiscriminating provisions providing for an injunction and release, innocuously inserted in the Plan. *In re S.N.A. Nuts Co.,* 206 B.R. 495, 500 (Bankr. N.D. Ill. 1997) (The court could not assert jurisdiction simply because jurisdiction is provided for in debtor's plan.); *In re Resorts Intern., Inc.,* 372 F.3d 154, 161 (3rd Cir. 2004). To the extent the injunction provision is otherwise valid, it should be modified to preserve the integrity of the Abstention Order.

3

(2) *Secured Creditors Entitled to Interest if Payments Deferred*: Section 11.9 of the Plan states that "[e]xcept as otherwise provided in the Plan, the Confirmation Order or other order of the Bankruptcy Court or required by the Bankruptcy Code, interest shall not accrue or be paid on any Claims or after the Commencement; provided however, that if interest is payable pursuant to the preceding sentence, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. §1961 on a non-compounded basis." Similarly, section 12.7 of the Plan provides that "[t]o the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date."

The School District has filed secured claims against three debtor entities. Under section 1129(b)(2)(A)(i)(II) of the Bankruptcy Code, any deferred cash payments due a secured creditor must equal "a value, as of the effective date of the plan, of at least the value of such holder's interest in the estates interest in" the collateral. This provision requires that the plan pay the "present value" of the secured claim. *Matter of MPM Silicones, L.L.C.,* 874 F.3d 787 (2nd Cir. 2017) states that interest can be calculated using the market rate approach when an efficient market for financing exists. Quoting *In re American Home Patient, Inc.*, 420 F.3d 559, 568 (6th Cir. 2005), the Second Circuit also adopted a two-part process for selecting an interest rate in Chapter 11 cramdowns:

> [T]he market rate should be applied in Chapter 11 cases where there exists an efficient market. But where no efficient market exists for a Chapter 11 debtor, then the bankruptcy court should employ the formula approach endorsed by the *Till* plurality. *Id.* at 800.

Therefore, to the extent that the School District is granted an Allowed Secured Claim, and to the extent that payment on that claim is deferred for any reason, the School District's claim

4

should be allowed to accrue interest from the confirmation date through the date of payment at either a market rate or at a rate established utilizing the formula approach endorsed by *Till*.

(3)    *The Debtors Improperly Seek a Discharge*:  The Plan contemplates the formation of a Liquidating Trust which, on the Effective Date, will receive all of the Liquidating Trust Assets, which is defined in section 1.104 of the Plan to mean "all assets of the Debtors that are not distributed on or prior to the Effective Date."  Section 9.6 of the Plan then provides that simultaneously with the aforementioned conveyance, "all Debtors shall be dissolved without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder(s) or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities."

Despite the fact that the Debtors are liquidating, section 15.8(b) of the Plan provides for an injunction, which effectively acts as a discharge.  This section specifically provides:

> **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Liquidating Trust or against property or interests in property of any of the**

> **Debtors or the Liquidating Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

The injunctive provisions of section 15.8(b) violate Section 1141(d)(3) of the Bankruptcy Code. Section 1141(d)(3) provides that in a Chapter 11 case the debtor will not receive a discharge upon confirmation of the plan if the following three requirements are present: (1) the plan provides for the liquidation of all or substantially all of the property of the estate (§1141(d)(3)(A)); (2) the debtor does not engage in business after consummation of the plan (§1141(d)(3)(B)); and (3) the debtor would be denied a discharge under §727(a) of this title if the case were a case under chapter 7 of this title (§1141(d)(3)(C)). The Plan as now been submitted provides for the liquidation of substantially all the Debtors assets and their Effective Date dissolution. Further, the Debtors would be denied a discharge under 11 U.S.C. §727(a) because they are not individuals. As a result, all of the elements of §1141(d)(3) are meet, and the Debtors are not entitled a discharge in the guise of injunctive relief.

(4) *The Plan Improperly Abrogates Set-Off and Recoupment Rights*: Section 15.8(b) of the Plan also improperly abrogates rights of setoff and recoupment and, potentially, defenses to actions brought by the Debtors and Liquidating Trust. The Plan does so, while simultaneously reserving all rights of the Debtors to assert set-offs against claims of other parties. The School District filed three proofs of claim [Nos. 15125, 15768, and 19611] against, respectively, Sears Holdings Corporation, Sears, Roebuck and Co., and Sears Holdings Management Corporation (the "**School District Claims**"). The School District Claims assert a claim secured by a lien on real estate, pursuant to 35 ILCS 200/21-75, as well as setoff and recoupment rights. To the extent allowed, the School District is entitled to exercise its setoff and recoupment rights. *See In re PPI Enterprises, Inc.*, 324 F.3d 197, 208 (3d Cir. 2003). Section 553 takes precedence over the discharge of Section 1141 and plan confirmation cannot invalidate otherwise appropriate set-off

6

rights. *See Carolco Television Inc. v. Nat'l Broadcasting Co. (In re De Laurentiis Entertainment Group Inc.)*, 963 F.2d 1269 (9th Cir. 1992) (setoff rights survive plan confirmation); *see also In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001). The same analysis applies to recoupment, which is similarly unaffected by a debtor's discharge. *See In re Madigan*, 270 B.R. 749, 754 (9th Cir. BAP 2001); *see also, Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257-61 (3rd Cir. 2000) (recoupment defense survives free and clear sale of debtor's assets). The Plan cannot limit any ability of the School District to assert setoff or recoupment rights, and should be appropriately modified.

(5) *The Plan Improperly Seeks Substantive Consolidation*: The Plan constitutes a sub-rosa substantive consolidation of the Debtors without attempting to meet the requirements for substantive consolidation. Thus, the Plan assumes that in liquidation, all creditors should be treated equally, even though the assets and liabilities of the various Debtors appear to differ vastly. In particular, section 9.2 of the Plan proposes a compromise and settlement of inter-estate and inter-creditor issues, including those relating to whether the liabilities and assets of the Debtors should be substantively consolidated as follows: (i) all Assets of the Debtors shall be consolidated and treated as Liquidating Trust Assets irrespective of which Debtor owns such Assets; (ii) all guarantee Claims (other than Kmart IL Guarantee Claims, Kmart WA Guarantee Claims, ESL Unsecured Claims against Kmart, ESL Unsecured Claims against Kmart Stores of Illinois LLC and ESL Unsecured Claims against Kmart of Washington LLC) will not be entitled to Distributions from the Liquidating Trust; (iii) all Claims against any Debtors on account of joint obligations of two or more Debtors (other than Kmart IL Guarantee Claims, Kmart WA Guarantee Claims, ESL Unsecured Claims against Kmart, ESL Unsecured Claims against Kmart Stores of Illinois LLC and ESL Unsecured Claims against Kmart of Washington LLC) shall be treated as a

single Claim entitled to a single recovery against the Liquidating Trust Assets; and (iv) pre- and post-petition Intercompany Claims shall be disregarded and not participate in Distributions from the Liquidating Trust.

The Second Circuit has considered two factors in evaluating substantive consolidation requests, i.e., (i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors. *See In re Augie/Restivo Baking Co., Ltd.,* 869 F.2d 515 (2nd Cir. 1988).

In *Reserve Capital Corp.*, 2007 WL 880600 (March 21, 2007 Bankr. N.D.N.Y.) a case where the Chapter 11 Trustee sought to substantively consolidate 7 related Chapter 11 cases, the court evaluated the *Augie/Restivo* test.  In considering the first factor, the court noted that it was essential that the court be able to ensure that creditors obtain the benefit of their bargain.  Keeping this in mind, the court noted that insufficient evidence supported substantive consolidation.  There was no suggestion that the debtors disregarded corporate formalities which created contractual expectations of creditors that they were dealing with the debtors as one undistinguishable entity. *Id*. at *4.  In fact, it was evident that certain creditors relied on the debtors' separate identities. These creditors obtained mortgages on real estate to secure their claims and were granted guaranties from other debtors.  In particular, the way the loans were documented reflected the creditors' understanding that each debtor entity was separate and distinct.  There was no indication that these creditors believed that they were transacting business with any other entity than the designated debtor.  The fact that the debtors may have certain commonalities did not provide a rationale for consolidation.

In *Reserve*, the trustee also did not satisfy the second prong of the substantive consolidation test, when he admitted that untangling the affairs of the debtors, while possibly requiring extensive legal and forensic accounting work, was not impossible.  Further, while denial of the debtors' requests might cause additional delay in case administration and the ultimate distribution to creditors, those concerns were not sufficient to warrant substantive consolidation of the cases.

The same problems exist in the instant case.  With respect to the first test, there is no evidence of corporate disregard creating contractual expectations of the creditors that they were dealing with Debtors as one indistinguishable entity, i.e., there is no evidence of prepetition disregard of the Debtors' separate corporate existence.  Further, there is no evidence that in their prepetition dealings, any creditor actually and reasonably relied on the Debtors' supposed unity. As it concerns the second test, there is no meaningful evidence postpetition of hopeless commingling of the debtors' assets and liabilities.  Indeed, there was no question which Debtor owns which principal assets and has which material liabilities.  In *In re Owens-Corning,* 419 F.3d 195 (3rd Cir. 2005), the court stated that "commingling justifies consolidation only when separate accounting for the assets and liabilities of the distinct entities will reduce the recovery of every creditor - that is, when every creditor will benefit from the consolidation."  Neither the impossibility or perfection in untangling the affairs of the entities or the likelihood of some inaccuracies in the effort to do so is sufficient to justify consolidation.  Here, given the uncertainties associated with intercompany claims, including potential avoidance actions, it is currently impossible to evaluate the impact of the Debtors' proposed Plan Settlement.

b.    *The Debtors Need to Resolve Conflict Issues Associated With the Toggle Plan*: The Plan violates section 1123(a)(7), which requires that the Plan's provisions with respect to the manner of selection of any director, officer, or trustee, or any successor thereto, be "consistent

9

with the interests of creditors and equity security holders and with public policy. Specifically, pursuant to section 9.2(g) of the Plan, in the event the Bankruptcy Court does not approve the Plan Settlement, the Plan shall revert to a joint plan of liquidation of the Debtors for administrative purposes only, and constitute a separate chapter 11 plan of liquidation for each Debtor (the "**Toggle Plan**"). Yet this Toggle Plan appears to contemplate the retention of one Liquidating Trustee and one Liquidating Trust Board for all fifty-three debtors. These individuals, in turn, will (a) control and effectuate the Claims reconciliation process, object to and seek to subordinate, compromise or settle any and all claims, (b) prosecute any remaining Causes of Action, or elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Cause of Action, and (c) subject to the Asset Purchase Agreement, administer each Debtor's tax obligations. However, the Plan fails to describe how in this "toggle" scenario the selected liquidating trustee and liquidating trust board will transparently resolve conflicts arising from intercompany claims, loans, rights, and causes of action in a scenario where the trustee and board will, necessarily, be acting as a fiduciary for both parties involved in the intercompany dispute. Given the substantial intercompany claims which exist, this form of centralized management creates insurmountable conflicts of interest and fiduciary duties which will impact the interests of creditors and public policy.

### 2. Reservation of Rights to Assert Further Objections

Section 1129(a)(9)(A) of the Bankruptcy Code requires cash payments of all expenses of administration at confirmation unless the holders agree otherwise. During the course of this case, it has become evident that these Debtors are or might become administratively insolvent. The School District reserves its right to object to confirmation to the extent that at least some of the School District's claims are expenses of administration under §§ 503(b) or 507(b), and the Debtors

are unable to demonstrate they can make those payments in cash at confirmation or the date the claims are allowed, and still perform all of their obligations under the Plan.

WHEREFORE, Community Unit School District 300 asks that this Court deny confirmation of the Plan and grant all other just and proper relief.

Dated: New York, New York
August 2, 2019

ARCHER & GREINER, P.C.

By: /s/ Allen G. Kadish
    Allen G. Kadish
    Lance A. Schildkraut
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
       lschildkraut@archerlaw.com

and

Kenneth M. Florey
M. Neal Smith
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
       nsmith@robbins-schwartz.com

and

Matthew T. Gensburg
Gensburg Calandriello & Kanter, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

216870420v1