FERRAIUOLI, LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001
Email: scolon@ferraiuoli.com
Email: gchico@ferraiuoli.com

Attorneys for *Santa Rosa Mall, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**OBJECTION TO MODIFIED SECOND AMENDED PLAN**
(Related Docket No. 4476)

TO THE HONORABLE COURT:

COMES NOW Santa Rosa Mall, LLC ("Santa Rosa Mall"), by and through its undersigned counsel, and hereby objects to the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* (Docket No. 4476) as follows:

Background

1.      Sears Holding Corporation and its affiliated co-debtors (collectively the "Debtors") filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 15, 2018 (Docket No. 1).

2.      On June 7, 2019, Santa Rosa Mall filed a *Complaint* (Adversary Proceeding No. 19-08266, Docket No. 1) for breach of contract, specific performance, unjust enrichment, aiding and abetting fraudulent misrepresentation, and relief in the form of declaratory judgment. Santa Rosa Mall moves the Court to enter a declaratory judgment that the insurance proceeds obtained as a result of Hurricane Maria under Policy No. PTNAM1701557 are not property of the bankruptcy estate to the extent they relate to the damages sustained by former Store No. 1915.

3.      On June 14, Santa Rosa Mall filed *Amended Proof of Claim No. 19,755* in the amount of

$44,344,475.58, on account of its *Contingent Claim for Insurance Proceeds* for the damages caused to

Store No. 1915 by Hurricanes Irma and Maria back in September 2017, *Contingent Claim for Aiding and*

*Abetting Fraudulent Misrepresentation*, *Claim for Rejection Damages*, and *Claim for Store No. 4660*.  See

*Amended Proof of Claim No. 19,755*.  Santa Rosa Mall further reserved its rights to amend its claim to

reflect a *Contingent Administrative Expense Claim for Cleanup of Hazardous Materials*.  Id.

4.      On July 9, 2019, the Debtors filed a *Modified Second Amended Joint Chapter 11 Plan of*

*Sears Holdings Corporation and Its Affiliated Debtors* (the "*Modified Plan*", Docket No. 4476), the

*Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation*

*and Its Affiliated Debtors* (the "*Modified Disclosure Statement*", Docket No. 4478) and a *Notice of Filing*

*of (I) Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated*

*Debtors and (II) Related Disclosure Statement with Clarifying Modifications* (the "*Notice*", Docket No.

4479).

5.      The hearing to consider the *Modified Plan* is scheduled for August 16, 2019 at 10:00 AM.

See *Modified Disclosure Statement*, Docket No. 4478.  The foregoing objection is timely pursuant to the

deadline established by the Court in such *Modified Disclosure Statement* (id.).

<u>Applicable Law and Discussion</u>

*A.*      *The Plan Improperly Deems Consent to Third-Party Releases*

6.      The *Modified Plan* improperly provides non-consensual third-party releases for the benefit

of certain Released Parties.  Specially, Section 15.9(b) of the *Modified Plan* discharges and releases third

parties:

> from any and all Causes of Action that such Entity would have been legally entitled to assert
> in its own right (whether individually or collectively) based on or relating to, or in any manner
> arising from, in whole or in part, the Debtors, the Debtors' Estates, the Plan, the filing and
> administration of the Chapter 11 Cases, including the Asset Purchase Agreement, the Sale
> Transaction, the purchase, sale or rescission of the purchase or sale of any security of the
> Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or
> Interest that is treated in the Plan, the business or contractual arrangements between any
> Debtor and any Released Party (other than assumed contracts or leases), the restructuring of
> Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation,

preparation or consummation of the Plan (including the Plan Supplement), the Definitive Documents, or any related agreements, instruments or other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, that, nothing in <u>Section 15.9(b)</u> of the Plan shall be construed to release the Released Parties from gross negligence, willful misconduct, criminal misconduct or intentional fraud as determined by a Final Order by a court of competent jurisdiction; provided, further, that, nothing in <u>Section 15.9(b)</u> of the Plan shall be construed to release any Claim or Cause of Action relating to or arising from the Sale Transaction following entry of the Sale Order by the Bankruptcy Court; provided, further, that nothing shall be construed to release the Released Parties from any Canadian Causes of Action. The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under <u>Section 15.9(b)</u> of the Plan against each of the Released Parties. []

Docket No. 4476, § 15.9(b), pp. 82-83.

7.    In addition to the releases, the *Modified Plan* permanently enjoins holders of claims and interests from pursuing claims against, *inter alia*, the Debtors.  See Docket No. 4476, § 15.8, pp. 80-81.

Specifically, Section 15.8(b) of the *Modified Plan* provides that upon entry of a confirmation order,

all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, **from** (i) **commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind** (including any proceeding in a judicial, arbitral, administrative or other forum) **against or affecting the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust,** (ii) **enforcing, levying, attaching** (including any prejudgment attachment), **collecting, or otherwise recovering** by any manner or means, whether directly or indirectly, **any judgment, award, decree, or order against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust,** (iii) **creating, perfecting, or otherwise enforcing in any manner**, directly or indirectly, **any encumbrance of any kind against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust,** (iv) asserting  any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Liquidating Trust or against property or interests in property of any of the Debtors or the Liquidating Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

<u>Id</u>. at § 15.8(b), p. 81 (emphasis added).  Further, "[b]y accepting Distributions pursuant to the [*Modified Plan*], each holder of an Allowed Claim extinguished or released pursuant to the [*Modified Plan*] shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in this Section 15.8."  <u>Id</u>. at § 15.8(c), p. 81.

8.      If confirmed, the *Modified Plan* will improperly release a wide range of third parties, specifically the Released Parties' successors and assigns, managed accounts or funds, and all of their respective postpetition officers, postpetition directors, postpetition principals, postpetition employees, postpetition agents, postpetition trustees, postpetition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and persons' respective heirs, executors, estates, servants, and nominees, including the Restructuring Committee, Restructuring Subcommittee, and each of its respective members.  Id. at §§ 1.134-1.135, p. 22.

9.      The Released Parties, as further defined in the *Modified Plan*, are deemed released by creditors that vote to reject the *Modified Plan* but do not opt-out of the releases on their ballots or abstain from voting all together.  While Santa Rosa Mall has exercised its option to reject the *Modified Plan* and opt out of the releases contained in Section 15.9 on the Ballots, in an abundance of caution, Santa Rosa Mall hereby objects to the improper release and discharge of third parties.  Santa Rosa Mall further objects to the injunction contained in Section 15.8 of the *Modified Plan* to the extent it interferes with Adversary Proceeding No. 19-08266 and Santa Rosa Mall's rights thereto.

B.      *The Plan Is Not Proposed in Good Faith*

10.     The filing of a Chapter 11 bankruptcy case like the instant one requires the Debtor's good faith upon filing. For instance, Section 1129(b)(3) of the Bankruptcy Code expressly requires that every Chapter 11 plan must be "proposed in good faith and not by any means forbidden by law" (underline added). Hence, the "requirement of good faith is an implicit requirement in the filing and maintenance of a Chapter 11 bankruptcy case."  1500 Mineral Spring Assocs., LP v. Gencarelli, 353 B.R. 771, 781 (D.R.I. 2006), citing In re Y.J. Sons & Co., Inc., 212 B.R. 793, 801 (D.N.J. 1997).

11.     Requiring good faith upon the filing of a Chapter 11 petition "prevents abuse of the bankruptcy process by debtors whose overriding motive it is to delay creditors without benefitting them in any way…".  In re Integrated Telecom Express, Inc., 384 F.3d 108, 119 (3rd Cir. 2004) (citations omitted).

12.     The totality of the circumstances in the instant case, reveals that the *Modified Plan* is not

proposed in good faith. Upon information and belief, on or about January 17, 2019, the Debtors and certain insurance underwriters executed a *Confidential Settlement and Release Agreement* (the "*Settlement Agreement*") on account of the Hurricane Irma and Hurricane Maria Loss, as further described therein. Neither the Debtors' *Modified Plan* and/or its supplement exhibits afford any information whatsoever as to the existence, status or whereabouts of Insurance Policy No. PTNAM1701557 and/or its proceeds, claims, adjustments, payments or related information following the *Settlement Agreement.* Indeed, Debtors' liquidation analysis, on which the plan is based, exclude and/or otherwise do not disclose payments made to the Debtors under the *Settlement Agreement* and do not account for its distribution.

13.    "[P]olicy proceeds are not available to all creditors, … [although] they may be available to a class of creditors whose claims are covered by insurance." 3 Collier on Bankruptcy ¶ 362.03[5][b] (16th ed. 2019). Also see In re OGA Charters, L.L.C., 901 F.3d 599, 604 (5th Cir. 2018) (same); Tringali v. Hathaway Mach. Co., Inc., 796 F.2d 553, 560 (1st Cir. 1986) ("[A debtor's] interest in liability insurance . . . [is] the debtor's right to have the insurance company pay money to satisfy one kind of debt"); In re Mahoney Hawkes, LLP, 289 B.R. 285, 295 (Bankr. D. Mass. 2002) (finding that insurance proceeds were not available for distribution to creditors other than those whose claims are covered by such policies).

14.    Debtors' *Modified Plan* does not disclose and/or take into account Santa Rosa Mall's proposed scenario in which the Insurance Proceeds for the damages caused by Hurricanes Irma and Maria in September 2017 for Store No. 1915 are not part of the bankruptcy estate and/or part of the general fund available for distribution to all creditors, which is a matter pending resolution by the Court. Consequently, Santa Rosa Mall further reserves all rights to that extent.

15.    It appears that, in the process of settling the Hurricane Irma and Hurricane Maria losses and insurance claims, the Debtors intentionally misrepresented that they were the only party that had the right to file claims and demand payments under Policy No. PTNAM1701557, *inter alia*. The representations made by the Debtors are not true and directly prejudice Santa Rosa Mall. The Debtors intentionally did not disclose to the underwriters that the insurance policy in question included Santa Rosa Mall as an additional named insured and/or loss payee in an effort to retain the monies derived from the

*Settlement Agreement* for their subsequent liquidation.  In further failing to divulge the *Settlement Agreement* and the monies derived thereunder, the *Modified Plan* is not proposed in good faith.

<u>Prayer for Relief</u>

WHEREFORE, Santa Rosa Mall moves the Court to take notice of the foregoing and deny the Debtors' *Modified Plan* (Docket No. 4476), on the foregoing grounds, and grant such other relief it deems just and proper.

Respectfully submitted.
Dated: August 2, 2019.

**Ferraiuoli** LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001

-and-

221 Ponce de León Avenue
5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001

*/s/ Sonia E. Colon Colon*
Sonia E. Colón Colón
Admitted *Pro Hac Vice*
USDC-PR No. 213809
scolon@ferraiuoli.com

*/s/ Gustavo A. Chico-Barris*
Gustavo A. Chico-Barris
NY State Bar No. 929147
USDC-PR No. 224205
gchico@ferraiuoli.com

Attorneys for
*Santa Rosa Mall, LLC*