Hearing Date and Time: August 16, 2019 at 10:00 am

**THE SARACHEK LAW FIRM**
Joseph E. Sarachek, Esq. (NY Bar #2163228)
101 Park Avenue -27th Floor
New York, NY. 10178
Telephone: (646) 517-5420
Facsimile: (646) 861-4950

*Attorneys for Mien Co. Ltd., Helen Andrews, Strong Progress Garment Factory Company, Ltd., Samil Solutions, Shanghai Fochier, Purcell Murry, A&A HK Industrial, Mingle Fashion Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **SEARS HOLDING CORPORATION,** *et al.*[1], | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF MIEN CO. LTD., HELEN ANDREWS, STRONG PROGRESS GARMENT FACTORY COMPANY, LTD, SAMIL SOLUTIONS, SHANGHAI FOCHIER, PURCELL MURRAY, A&A HK INDUSTRIAL, MINGLE FASHION TO CONFIRMATION OF THE MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS**

TO:    THE HONORABLE ROBERT D. DRAIN
       UNITED STATES BANKRUPTCY JUDGE

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Mien Co. Ltd., Helen Andrews, Strong Progress Garment Company, Ltd., Samil Solutions, Shanghai Fochier, Purcell Murray, A&A HK Industrial, Mingle Fashion (the "Objecting Parties"), by and through their undersigned counsel, The Sarachek Law Firm, hereby object (the "Objection") to the confirmation of the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [ECF No. 4476] (the "Plan"). In support of their Objection, the Objecting parties state as follows:

## Summary

For over ten months, the Objecting Parties have actively participated in the bankruptcy cases of Sears Holding Corporation, et al. (the "Debtors") as vendors who have supplied goods to the Debtors and by retaining counsel to assist them with the bankruptcy process.  Two of the Objecting Parties are owed monies for post-petition goods received and have filed separate motions under Section 503(b)(1) of the Bankruptcy Code to be paid [Dkt. Nos. 3323 and 4689].  All of the Objecting Parties fall within the construct of Section 503(b)(9) of the Bankruptcy Code as they provided goods which were received within twenty days of bankruptcy filing.  Collectively, these vendors are owed in excess of $9 million dollars.  Notwithstanding that each of these vendors have followed the rules set forth under the Bankruptcy Code and Rules, as well as the rules established by this Court, the Debtors have provided no assurances that the Objecting Parties will be paid in full.  The Objecting Parties are small businesses that cannot afford <u>not</u> to be paid.   For the reasons set forth below, the Plan cannot be confirmed.

## These Debtors' Plan Does Not Satisfy 11 U.S.C § 1129(a)(9)(A)

1.    The Plan cannot be confirmed because the Debtors do not satisfy section 1129(a)(9)(A) of the Bankruptcy Code which states that "(a) [t]he court shall confirm a plan only if all of the following requirements are met … (9) Except to the extent that the holder of a particular claim has

2

agreed to a different treatment of such claim, the plan provides that (A) with respect to a claim of a kind specified in section 507(a)(2) … of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim…" 11 U.S.C. § 1129(a)(9)(A). Section 507(a)(2) refers to 503(b) administrative claims. *See* 11 U.S.C. § 507(a). *See Pan Am Corp. v. Delta Air Lines*, 175 B.R. 438, 483 (Bankr. S.D.N.Y. 1994) ("By itself, administrative insolvency would have prevented confirmation of the Joint Plan.")

2. The Objecting Parties are collectively holders of two types of administrative claims under different sections of the Bankruptcy Code: (i) 503(b)(1); and (ii) 503(b)(9). The Debtors in this proceeding have provided only superficial information that administrative claims will be paid in full. The Debtors assert that these claims will be paid through funding provided by Transform Holding Co. ("Transform"), the company that purchased the bulk of the Debtors' assets. What the Debtors have not provided, despite repeated requests from the Objecting Creditors and other creditors of the Debtors, is any evidence that administrative creditors can be paid in full. Objecting Creditors are part of an unofficial group of administrative creditors that have attempted to obtain this information without success from both the Debtor's counsel, Weil Gotshal, and counsel to the Unsecured Creditors Committee, Akin Gump. Despite months of hearings, emails, and phone calls, between counsel for the administrative creditors and these two professional firms representing the estate, there are no assurances that administrative creditors will be paid in full. There is no evidence that the remaining assets in the Debtors' estate, the back-up mechanism to pay administrative claims, are sufficient to cover administrative payments if Transform's payments are not enough. Additionally, reliance on possible litigation outcomes with Transform provides neither assurance that administrative solvency is possible nor belief that the money will be available on the Effective Date as defined in the Plan.

3.      Even assuming the Debtors truly believe administrative claims will be paid in full, the Plan on its face makes no provision to pay these claims on the Effective Date. The Debtors allow themselves the later of the Effective Date, thirty days after the date on which the Administrative Expense Claim is allowed or the next Distribution Date after the Administrative Expense Claim is allowed.  *See* the Plan section 2.1.

4.      There is simply no basis for the Objecting Creditors to "trust" that Administrative Expense Claims will be paid in full, or to even form an opinion as to whether they will be paid in full, because no evidence has been provided by the Debtors.

### The Plan improperly seeks Broad Releases of Non-Debtor parties

5.      In addition to skirting the Bankruptcy Code on administrative expenses, Section 15(9)(b) of the Plan seeks to release non-debtor parties even if creditors vote to reject the Plan or abstain from voting on the Plan. Sections 1.134 and 1.135 define related and released parties to include third parties, including successors and assigns, managed accounts or funds, and all of their respective post-petition officers, post-petition directors, post-petition principals, post-petition employees, post-petition agents, post-petition trustees, post-petition advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and persons' respective heirs, executors, estates, servants, and nominees, including the Restructuring Committee, Restructuring Subcommittee, and each of its respective members. What if at a later date, in a future litigation, the aggrieved creditors are able to prove that certain of these parties, as a result of their actions were liable for the damages caused to administrative creditors. Should these parties be released?  Of course not.  However, under the Plan as proposed, they would be. There should be no safe harbor for non-debtor parties who participated in an action that caused damages to creditors.

6. This provision also violates the Bankruptcy Code and the caselaw in this district. As stated in a recent Southern District case, *In re SunEdison, Inc.,* 576 B.R. 453, 464 (Bankr. S.D.N.Y. 2017), creditors who did not vote could not be deemed to consent to the releases in the plan. The SunEdison Court cited in *In re Chassix Holdings,* 533 B.R. 54 (Bankr. S.D.N.Y. 2015) ("*Chassix*") as support for its decision. "Charging all inactive creditors with full knowledge of the scope and implications of the proposed third-party releases, and implying a 'consent' to the third party releases based on the creditors' inaction, is simply not realistic or fair, and would stretch the meaning of "consent" beyond the breaking point." *Chassix at 81.* Furthermore, the *SunEdison* Court held that the debtors failed to sustain their burden of proving that the Court had subject matter jurisdiction to approve the third-party releases. *In re SunEdison, Inc.,* 576 B.R. 453, 463 (Bankr. S.D.N.Y. 2017).

7. The *SunEdison* court concluded that the non-voting releasors did not consent to the release, the creditors were not being paid in full, and the third-party claims would have been extinguished rather than channeled to a fund for payment. Further, the debtors did not identify which third party claims would directly impact their reorganization and given the scope of the release, the Court determined that it is likely that many of the claims would not impact the reorganization. The Court required the debtors to propose a modified form of release under the condition that they must specify the release by name or readily identifiable group and the claims to be released, demonstrate how the outcome of the claims to be released might have a conceivable effect on the debtors' estates and show that this is one of the rare cases involving unique circumstances in which the release of the claims is appropriate under *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)* 416 F.3d 136 (2d Cir. 2005).

8. The *Chassix* Court also rejected the concept of requiring creditors to opt out of the releases. The Court required the debtors to revise the definition of "Consenting Creditors" in the plan

and did not permit an opt-out procedure for creditors who abstained from voting, voted to reject the plan, or were deemed to accept or reject the plan. *Chassix*, 533 B.R. at 80-82. The *Chassix* case stands for the principal that creditors who reject a plan or abstain from voting on a plan but do not opt- out of the releases on their ballots have not consented to the third-party releases in the plan. In the event this Court determines that the Plan should be approved, and administrative creditors are not paid in full, these creditors should have the ability to pursue each and every non-debtor party that benefitted from the value of their goods.

### The Debtors' Plan Violates 11 U.S.C. § 1141(d)(3)

9.    In addition to disallowing third party releases, the Court should deny the Debtor a discharge. Section 1141(d)(3) of the Bankruptcy Code provides that "[t]he confirmation of a plan does not discharge a debtor if – (A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied discharge under section 727(a) of this title if the case were a case under chapter 7 of this title. The instant case is a liquidation. There should be no discharge. The Debtors will no longer be in business after consummation of the Plan, and since the Debtors are not an individual no discharge would be available were this a case under chapter 7 of the bankruptcy code.

**Conclusion**

10. For the above reasons, the Objecting Creditors request that the Court not confirm the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors.*

Date:   New York, NY
        August 2, 2019

                        Respectfully submitted,

                        THE SARACHEK LAW FIRM

                        /s/ Joseph E. Sarachek
                        Joseph E. Sarachek
                        101 Park Avenue – 27th Floor New York, NY. 10178
                        Telephone: (646) 517-5420
                        Facsimile: (646) 861-4950
                        joe@sarscheklawfirm.com