Eric R. Reimer (admitted *pro hac vice*)
Thomas R. Kreller (admitted *pro hac vice*)
Robert J. Liubicic
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000

Brian Kinney
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Counsel to Cyrus Capital Partners, L.P.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| Debtors. | : | (Jointly Administered) |
| | : | Re: Docket No. 4476 |

**CYRUS CAPITAL PARTNERS, L.P.'S LIMITED OBJECTION TO
CONFIRMATION OF MODIFIED SECOND AMENDED CHAPTER 11 PLAN
OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS**

Cyrus Capital Partners, L.P. ("Cyrus") submits this limited objection ("Objection") to confirmation of the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 4476] (the "Plan") and respectfully represents as follows:[1]

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**BACKGROUND**

**A.  Cyrus Is a Significant Creditor of the Debtors' Estates with Significant Claims.**

1. Cyrus is a significant creditor of the Debtors' estates, holding material positions in: (i) second lien debt instruments issued and guaranteed by various Debtors; (ii) five series of SRAC-issued unsecured notes; (iii) the SRAC 7.00%/12.00% PIK – Toggle Notes due 2028; and (iv) certain SRAC-issued unsecured Medium Term Notes of various interest rates and maturities (collectively, the "Cyrus Prepetition Claims"). In the aggregate, the Cyrus Prepetition Claims exceed $635 million, of which nearly $370 million is guaranteed by one or more Debtors and therefore impacted by the Debtors proposed Substantive Consolidation Settlement.

2. In addition to the Cyrus Prepetition Claims, Cyrus, as well as other second lien creditors (collectively, the "Second Lien Parties"), was granted liens on certain collateral, including cash collateral, under the Final DIP Order[2] to adequately protect the Second Lien Parties from any diminution in value of their prepetition collateral (the "Prepetition Second Lien Facilities Adequate Protection Claims," as defined in the Final DIP Order). That collateral included substantially all of the assets (with certain specified exclusions) of each of the DIP ABL Loan Parties, *including* the proceeds of avoidance actions and litigation claims (collectively, the "AP Lien Collateral"). As a result, the Prepetition Second Lien Facilities Adequate Protection Claims arising under the Final DIP Order asserted by the Second Lien Lenders are postpetition, secured claims to the extent of the value of the AP Lien Collateral (the "Secured AP Claims").

---

[2]  *Final Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (the "Final DIP Order") [Docket No. 955].

3.      Further, to the extent the Prepetition Second Lien Facilities Adequate Protection Claims exceed the value of the AP Lien Collateral, the Second Lien Lenders were also granted post-petition section 507(b) superpriority claims (the "Section 507(b) Claims") to compensate for the "failed" adequate protection.

4.      Although the Bankruptcy Court's ruling on Cyrus' Section 507(b) Claims on July 31, 2019 means that Cyrus does not have a currently allowed Section 507(b) Claim, Cyrus and others may challenge this ruling, or portions of it, once an order has been entered. As Cyrus still asserts that it has significant Section 507(b) Claims, and those claims have not been disallowed or otherwise denied under any final order.

**B.    The Plan Ignores Previous Court Orders That Were Expressly Designed to Prevent the Debtors from Disregarding Intercompany Rights and Obligations in the Manner Now Proposed in the Plan.**

5.      In addition to the adequate protection provisions described above, the final DIP orders entered in these cases also contemplated protections for the various lenders, including the Second Lien Lenders, against intercompany "mischief" by the Debtors. Specifically, paragraph 39 of the Final DIP Order requires that:

> The Debtors shall establish reasonable procedures (reasonably acceptable to the Creditors' Committee, the DIP ABL Agents, and the Prepetition Second Lien Credit Parties) to trace cash proceeds from the sale of inventory of the Debtors and to track liabilities and payables of the Debtors, including shared services and professional fees and costs (collectively, the "Allocable Costs"), on an entity by entity basis, including without limitation between obligors and non-obligors under the Prepetition Second Lien Obligations, and to report the same to the Creditors' Committee, the DIP ABL Agents and the Prepetition Second Lien Credit Parties on a monthly basis. At the time of repayment or treatment of the Postpetition Intercompany Obligations pursuant to a chapter 11 plan or otherwise, the Debtors, the Creditors' Committee, the DIP ABL Agents and the Prepetition Second Lien Credit Parties agree to cooperate in good faith to propose and adopt a fair and reasonable allocation of all Allocable Costs on an entity by entity basis.[3]

---

[3]  Paragraph 38 of the Final Junior DIP Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Grant Secured Priming Liens and Superpriority Administrative Expense Claims; (II) Modifying the Automatic Stay; and (III) Granting Related Relief [Docket No. 1436] (the "Junior DIP Order") contains a substantially similar provision but also requires the involvement of the Junior DIP Agent (as defined therein).

- 3 -

6.  To date, the Debtors have failed to satisfy this allocation requirement, and the Plan fully and finally disregards this order by grouping all prepetition and postpetition claims together and then essentially eliminating them for distribution purposes – thus gutting paragraph 39 of the Final DIP Order and paragraph 38 of the Junior DIP Order altogether, without regard for the protections the Court was led to believe it was granting and the parties believed they were receiving.

## ARGUMENT

**A. The Plan Must Reserve For The Full Asserted Amount of the Cyrus Section 507(b) Claims.**

7.  Given the superpriority nature of the Section 507(b) Claims that Cyrus continues to assert and whose disallowance is not yet final, to the extent they are subsequently allowed they must be paid in full, in cash and with priority over all other administrative expenses. While the Plan contemplates that a Disputed Claims Reserve may be maintained for Section 507(b) Claims that remain disputed as of the Effective Date, it does not establish the amount with which the Disputed Claims Reserve will be funded.

8.  Given the statutory priority granted to Section 507(b) Claims, a separate Disputed Claims Reserve should be established for Section 507(b) Claims whose disallowance is not yet final in the full asserted amount of such claims. Otherwise, the Plan will risk violating the requirements of sections 507(b) and 1129(a)(9)(A) of the Bankruptcy Code as the Liquidating Trust may be unable to satisfy a subsequently allowed Section 507(b) Claim in full in cash even though other administrative or even unsecured claims may have received recoveries. *See In re Molycorp, Inc.*, 562 B.R. 67, 77-78 (Bankr. D. Del. 2017), citing *In re Scott Cable Communications, Inc.*, 227 B.R. 596, 600 (Bankr. D. Conn. 1998), (The Bankruptcy Code's

"confirmation scheme elevates allowed administrative claims to a dominant priority such that unless the holders agree to a different treatment, a plan cannot be confirmed without full payment of those claims even if there are no estate assets to pay them."); *In re Lehman Brothers Holdings Inc.,* 508 B.R. 283, 290 (S.D.N.Y. 2014), citing *In re Mid Region Petrol., Inc.,* 1 F.3d 1130, 1132 (10th Cir. 1993), ("Administrative expenses are specially favored post-petition claims, given priority in asset distribution over most other claims against the bankruptcy estate.").

9. Indeed, the requirements of section 1129(a)(9)(A) have been referred to as the "administrative solvency" requirement which requires a debtor to show at the time of confirmation that it has sufficient cash to satisfy **all** administrative expenses. *See In re Molycorp, Inc.,* 562 B.R. at 78 n.48, citing *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 436, 508 (S.D.N.Y. 1994). To date the Debtors have not shown that they meet this requirement and indeed the Debtors' Disclosure Statement expressly highlights this risk. *Disclosure Statement for Plan* [Docket No. 4478] §VIII.A.11. The risk is further highlighted by the Admin Solvency Tracker attached to the Disclosure Statement as Exhibit C which (i) does not reflect any reserves for Section 507(b) Claims, (ii) shows a very slim "solvency" as it is and (iii) includes many assets other than cash in hand. As such, the Debtors will need to show that they actually have sufficient cash on hand at the date of the confirmation hearing to satisfy all allowed and asserted administrative claims, including the Section 507(b) Claims.

**B.  The Plan's Failure to Allocate Postpetition Costs to Each Debtor Entity on a Fair and Reasonable Basis Violates the Final DIP Order and the Junior DIP Order**

10. The Plan as proposed cannot meet the requirements of sections 1129(a)(2) or section 1129(a)(3) of the Bankruptcy Code because it is premised upon the Debtors' abject

failure to allocate post-petition Allocable Costs (as defined in those orders) in a "fair and reasonable allocation" on an "entity by entity" basis. To date the Debtors have failed to comply with these provisions in the Court's orders or to seek relief therefrom and have proposed a Plan that ignores these requirements and effectively reads them out of the Final DIP Order and the Junior DIP Order. However, the failure to comply with a bankruptcy court's own orders has been viewed as fatal to a debtors' attempt to confirm a plan of reorganization. *See In re Multiut Corp.*, 449 B.R. 323, 341 (Bankr. N.D. Ill. 2011) (finding that failure to comply with the court's prior order meant that the debtor had not complied with the applicable provisions of the Bankruptcy Code and therefore had not complied with section 1129(a)(2)); *In re Smithfield Estates, Inc.*, 52 B.R. 220, (Bankr. D.R.I. 1985) (finding a debtor's failure to comply with the court's prior order called the debtor's good faith into "serious question" thus implicating section 1129(a)(3)).

**C.    The Third Party Release is Too Broad**

11.    The Plan provides a broad third-party release that releases all Released Parties from claims held by Releasing Parties. Pursuant to Exhibit A to the Debtors' Plan Supplement [Docket No. 4632] Cyrus and 7 of its related parties were identified as "Individuals or Entities not considered 'Released Parties' or 'Related Parties' under the Plan. While Cyrus does not believe that there are any viable claims or causes of action against it, it objects to any possibility that Cyrus (or its related parties) would be deemed a "Releasing Party" under the Plan. As such, the definition of "Releasing Party" should be revised to expressly exclude any Entity or Individual that was expressly excluded from the definitions of "Released Party" or "Related Party" under the Plan and the Plan Supplement.

**D.    The Debtors Have Failed to Demonstrate The Propriety of Substantive Consolidation Contained in the Plan Settlement**

12.    The Plan as proposed is based on a Plan Settlement that substantively consolidates most (but not all) of the Debtors' estates.  As the Second Circuit has stated, substantive consolidation "is no mere instrument of procedural convenience . . . but a measure vitally affecting substantive rights" and thus is "to be used sparingly." *In re Augie/Restivo Banking Co.*, 860 F.2d 515, 518 (2d Cir. 1988) (citations omitted).  As such, the remedy requires "a searching review of the record, on a case-by-case basis" to ensure that the result is in fact "fairness to all creditors." *FDIC v. Colonial Realty Co.*, 633 F.2d 57, 61 (2d Cir. 1992).  To date, the Debtors have not submitted evidence that even begins to approach this standard.  In fact, the Debtors' posture that substantive consolidation issues are being "settled" under the Plan suggests an effort by the Debtors to sidestep the high hurdle established under the case law regarding substantive consolidation.  Therefore Cyrus will evaluate the evidence produced by the Debtors at confirmation and reserves its rights to object to the Plan Settlement and the included substantive consolidation if such evidence does not demonstrate such fairness.

[Remainder of Page Intentionally Left Blank]

WHEREFORE, for the reasons set forth above, Cyrus respectfully requests that this Court: (i) deny confirmation of the Plan; and (ii) grant such other and further relief as is just and appropriate under the circumstances.

Dated: August 2, 2019
New York, New York

**MILBANK LLP**

By: /s/ Thomas R. Kreller
Eric R. Reimer
Thomas R. Kreller
Robert J. Liubicic
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000


Brian Kinney
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Counsel to Cyrus Capital Partners, L.P.*