**Hearing Date and Time:** August 16, 2019 at 10:00 am (Prevailing Eastern Time)
**Objection Date and Time:** August 2, 2019 at 4:00 pm (Prevailing Eastern Time)

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Chelsey Rosenbloom
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for ESL Investments Inc. and certain of its affiliates and Transform Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

---

1        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR-Rover De Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF ESL INVESTMENTS, INC. AND TRANSFORM HOLDCO LLC TO JOINT CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS**

ESL Investments, Inc. and certain of its affiliated entities (including JPP, LLC and JPP II, LLC) (collectively, "ESL") in their capacities as creditors of Sears Holdings Corporation and certain of its affiliates (collectively, "Sears" and with respect to its Chapter 11 affiliates, the "Debtors"), and Transform Holdco LLC ("Transform"), the buyer under the Asset Purchase Agreement (as defined in the Plan), by their undersigned counsel, hereby submit this limited objection and reservation of rights (the "Limited Objection") pursuant to section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") with respect to the confirmation of the Debtors' proposed *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (the "Plan") [Docket No. 4476] dated as of July 9, 2019. The Debtors also filed the amended disclosure statement for the Plan (the "Disclosure Statement") [Docket No. 4478] with the Bankruptcy Court (modified version filed on July 9, 2019).[2] In support of this Limited Objection, ESL and Transform respectfully state as follows:

## PRELIMINARY STATEMENT

1. ESL submits this Limited Objection in order to seek modifications of the Plan and to preserve its rights with respect to issues that have not been fully adjudicated.

2. <u>First</u>, ESL believes that the Plan relies on questionable assumptions concerning the Debtors' administrative solvency, especially with respect to the obligations of Transform and the Debtors under the Asset Purchase Agreement. As discussed below, those assumptions are in several respects contrary to this Court's rulings.

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

3.      <u>Second</u>, the Plan should be revised to clarify that to the extent any ESL 507(b) Priority Claims are Allowed, the sources of recovery for those Claims must be as determined by a Final Order (as defined in the Plan). The Plan, as drafted, limits any such recovery to the proceeds of Other Causes of Action, contrary to this Court's ruling this week that the 507(b) Claims are payable (except to the extent the Asset Purchase Agreement otherwise limits ESL's recovery) from the proceeds of all "Claims" (as defined in the Asset Purchase Agreement) and, thus, are payable from additional sources beyond Other Causes of Action, including Other Assets.

4.      <u>Third</u>, Transform seeks a clarification that those Unexpired Leases subject to an extended assumption deadline and that those Executory Contracts subject to a pending notice to assume and assign shall not be deemed rejected as of the Effective Date of the Plan.

## ARGUMENT

### I. SIGNIFICANT ISSUES CONCERNING THE DEBTORS' ADMINISTRATIVE SOLVENCY REMAIN OUTSTANDING

5.      The Debtors' Admin Solvency Tracker and Budget Update (the "<u>Administrative Solvency Tracker</u>"), an earlier version of which was attached as Exhibit C to the Disclosure Statement and most recently updated on July 31, 2019, appears to rely on incorrect assumptions regarding Transform's (and the Debtors') obligations under the Asset Purchase Agreement. See *Declaration of Chelsey Rosenbloom In Support of Limited Objection and Reservation of Rights of ESL Investments, Inc. and Transform Holdco LLC's Objection to Joint Chapter 11 Plan of Sears Holdings Corporation And Its Affiliated Debtors* ("<u>Rosenbloom Decl.</u>"), Ex. A at 2. Once corrected, these assumptions could render the Debtors administratively insolvent. See <u>In re Lehman Bros. Holdings Inc.</u>, 508 B.R. 283, 289 (S.D.N.Y. 2014) (explaining that in Chapter 11 cases, "all administrative expenses must be paid in full"); see <u>Pan Am Corp. v. Delta Air Lines, Inc.</u>, 175 B.R. 438, 508 (Bankr. S.D.N.Y. 1994) (finding that the plan of reorganization cannot be

confirmed because the "[Debtor] and the Creditors Committee were unable to establish the 'administrative solvency' of the [estate]"); see also 11 U.S.C. § 1129(a)(9).

6. The Disclosure Statement states that as of June 22, 2019, the Debtors' estimate of Administrative Expense Claims was $468 million and that the Debtors' estimate of the assets available to satisfy those Claims totaled approximately $487 million. Disclosure Statement at 57-58. The Debtors' Administrative Solvency Tracker paints an even bleaker picture, showing that the Debtors' so-called "Solvency Gap" (actually, a solvency "cushion") is only $5 million, with $368 million in expected Administrative Expense Claims and only $373 million in expected assets available to satisfy those Claims. See Rosenbloom Decl., Ex. A, Administrative Solvency Tracker at 2.

7. Even this narrow "surplus" to pay Administrative Expense Claims is based on dubious assumptions. For example, the Debtors appear to assume that Transform will assume up to $263 million of the Debtors' Administrative Expense Claims (which consists of $139 million in 503(b)(9) Claims, $13 million in severance costs, and $166 million in Accounts Payable, reduced by the projected $55 million Prepaid Inventory Shortfall Amount). See Disclosure Statement at 58. ESL and Transform believe that these estimated amounts overstate Transform's potential obligations, as this Court's recent rulings in the disputes between the parties regarding the Asset Purchase Agreement make clear.

8. At the hearing on July 11, 2019, the Court issued a ruling in favor of Transform on the Prepaid Inventory Shortfall Amount (as defined in the Asset Purchase Agreement), holding that the Debtors' "GAAP financial reporting approach is not the approach [to value the Prepaid Inventory Shortfall Amount] that is intended by the plain meaning of the [Asset Purchase Agreement]" and that the parties should instead use "a methodology that actually properly reflects

the value of the prepaid inventory." July 11, 2019 Hr'g Tr. 221-222. Nonetheless, the Debtors appear to be continuing to use the same figure for the Prepaid Inventory Shortfall Amount—$55 million—that they initially cited to in their briefing, using the GAAP reporting methodology rejected by the Court. See Disclosure Statement at 58; *Debtors' Supplemental Motion to Enforce the Asset Purchase Agreement* [Docket No. 4029], ¶ 19. Applying the correct methodology increases the shortfall amount by at least $10 million, which is not reflected in the Administrative Solvency Tracker.[3]

9. The Court also issued a ruling in Transform's favor on the Specified Receivables Shortfall Amount (as defined in the Asset Purchase Agreement), holding that the Debtors could not credit as part of their delivery of the Specified Receivables (as defined in the Asset Purchase Agreement) those accounts which did not actually constitute real accounts receivable, that is, an account which has "not yet been paid as of the closing." July 11, 2019 Hr'g Tr. 177:23-24. While the exact amount is still being reconciled between Transform and the Debtors, the Debtors do not factor in *any* shortfall for Specified Receivables in their solvency analysis. While the Administrative Solvency Tracker states that "[d]isputed items reflect $50 [million] placeholder to account for risk of specified receivables shortfall and $4.5mm reflecting 50% of the difference between the estate's estimate of the Prepaid Inventory Shortfall amount and Transform's estimate of the Prepaid Inventory Shortfall amount," the "Disputed Items" line item, which does not take into account any of these disputed amounts and in effect assumes them to be zero, reflects unrealistic assumptions. See Rosenbloom Decl., Ex. A, Administrative Solvency Tracker at 3. Once the numbers are eventually reconciled, Transform believes the Debtors will have a Specified Receivables Shortfall Amount in the high tens of millions of dollars, reducing dollar-for-dollar,

---

[3] Transform and the Debtors are currently consulting on the exact amount of the Prepaid Inventory Shortfall Amount.

along with the adjusted Prepaid Inventory Shortfall Amount, the liabilities that Transform would be obligated to reimburse the estates under the Asset Purchase Agreement, thereby shifting the burden of satisfying those liabilities to the Debtors. This fact alone could render the Debtors administratively insolvent, based on the Debtors' own calculations, by tens of millions of dollars.

10. Moreover, the Debtors do not account for the fact that Transform's asserted damages for the Debtors' breach of the Asset Purchase Agreement, if Allowed, will, as this Court also made clear in its ruling, be treated as Administrative Expense Claims. While the Court has not yet adjudicated Transform's damages claim, Transform continues to assert, among other things, that the Debtors inflated the amount of accounts payable at the closing of the Sale Transaction by withholding payments outside the ordinary course in violation of the Asset Purchase Agreement, and also that the Debtors failed to factor in the correct amount of available cash held by the Debtors at the closing of the Sale Transaction, thereby increasing the Aggregate DIP Shortfall Amount (as defined in the Asset Purchase Agreement). If a Final Order is ultimately issued in Transform's favor on any of these issues, Transform's obligations to assume liabilities will be further reduced and the Debtors will potentially owe tens of millions of dollars in additional Administrative Expense Claims to Transform.[4]

11. In addition, the Debtors claim that the forecasted amount of the GOB Inventory Gross (as defined in the Administrative Solvency Tracker) is $4 million and further assume an additional $5 million in forecasted "Other Proceeds" for "Proceeds primarily related to estate checks held by Transform and owed to the estate as part of the cash

---

[4] Transform and the Debtors continue to reconcile the various amounts owed under the Asset Purchase Agreement pursuant to the hearing on July 11, 2019, and the analysis in this portion of the Limited Objection may require amendment through oral argument at the Confirmation Hearing in light of the ongoing reconciliation. Transform reserves all rights with regards to Transform's alleged liabilities and the Debtor's obligations under the Asset Purchase Agreement.

reconciliation."  See Rosenbloom Decl., Ex. A, Administrative Solvency Tracker at 2-3. According to Debtors' Objections and Responses to ESL Investments, Inc.'s Document Requests dated July 26, 2019 at 9, the entire $9 million is pursuant to "the June 14, 2019 Post-Close Reconciliation Items with [Transform]."  However, this amount is subject to ongoing reconciliation between the Debtors and Transform and could be offset against amounts owed by Debtors to Transform.  See July 11, 2019 Hr'g Tr 195:8-24.  Thus, the Debtors improperly assume in the Administrative Solvency Tracker that they will recover an additional $9 million as part of cash reconciliation, when that outcome is in substantial doubt.

12.    The only contingency adjustment the Debtors make is a $10 million placeholder for "Other Potential Liabilities."  See Rosenbloom Decl., Ex. A, Administrative Solvency Tracker at 2.  Given all the uncertainties, this appears materially inadequate.[5]

13.    In short, there are material infirmities in the Debtors' assumptions underlying the Debtors' case that the Debtors will be able to pay all Administrative Expense Claims.  ESL respectfully submits that the Court should consider these infirmities in determining whether the Plan is confirmable under Section 1129(a)(9) of the Bankruptcy Code.  In any event, ESL and Transform hereby reserve all of their Claims and rights in connection with the Asset Purchase Agreement and related disputes with the Debtors.

---

[5]    As is evident from the *Motion of Debtors for Modification of Retiree Benefits* [Docket No. 4635] (the "Retiree Motion"), the Debtors recognize that they are teetering on the edge of administrative insolvency even by their own calculations.  See Retiree Motion at 14 ("The Debtors clearly cannot continue to maintain the Retiree Plan and be reasonably assured that they will have sufficient funds to pay the secured, administrative, and priority claims that must be paid pursuant to section 1129(a)(9) of the Bankruptcy Code on the effective date of the Plan. Absent termination of the Retiree Plan, satisfying the requirements for confirmation of the Plan will likely be impossible.") Nevertheless, the assumption that the Debtors will be relieved of existing obligations such as the obligations under the Retiree Plan (as defined in the Retiree Motion)—an assumption upon which the Debtors' administrative solvency calculations depends and without which the Debtors would be administratively insolvent—is not reflected in any way in the Administrative Solvency Tracker, raising questions about what other material assumptions may have been omitted entirely.

## II. THE PLAN MUST CLARIFY THE SOURCES OF RECOVERY FOR THE ESL 507(b) PRIORITY CLAIMS

14. On July 31, 2019, this Court held a hearing to consider the Second Lien Parties' requests for a determination of their adequate protection claims. At that hearing, the Court issued a ruling with respect to the ESL 507(b) Priority Claims, including that Section 9.13 of the Asset Purchase Agreement restricts the total recoveries available on ESL's 507(b) Priority Claims from all sources to the $50 million cap and that the Asset Purchase Agreement does not limit ESL's recovery up to that cap to only the proceeds of Other Causes of Action in the Asset Purchase Agreement. In light of the Court's ruling, the Plan must be revised in two ways.

15. <u>First</u>, the Plan should state that any recoveries on account of the ESL 507(b) Priority Claims will be entitled to sources of recovery in addition to the Other Causes of Action (unless the Debtors appeal the Court's ruling and obtain, on appeal, a Final Order to the contrary). The Asset Purchase Agreement states that "any ESL Claims arising under Section 507(b) of the Bankruptcy Code shall be entitled to distributions of not more than $50 million from the proceeds of any *Claims* or causes of action of the Debtors or their estates . . . " Asset Purchase Agreement, § 9.13(c) (emphasis added). The Court interpreted the use of the defined term "Claim" to mean that ESL agreed to cap its 507(b) Claims from *all sources* of recovery in an aggregate amount of $50 million. While the Court thus did not accept ESL's position that the $50 million cap did not apply to recoveries from potential non-litigation sources of recovery, the Court also did not accept the Debtors' position that ESL limited its recovery on account of its 507(b) Claims to only the proceeds of Other Causes of Action. Disclosure Statement at 5, n. 11 ("ESL is not entitled to recovery from any other sources [in addition to the proceeds from Other Causes of Action] with respect to ESL 507(b) Priority Claims."). Under the Court's reading of the reference to the term "Claim" in Section 9.13(c) of the Asset Purchase Agreement, the recoveries for the ESL 507(b)

Priority Claims, if Allowed, can be from sources in addition to the proceeds of Other Causes of Action. One such additional potential source of recovery is the proceeds of Other Assets, which is defined broadly under the Plan to mean "all remaining Assets of each of the Debtors" other than defined Causes of Action under the Plan. The proceeds from those "Other Assets" would necessarily be the proceeds of a "Claim" (as defined in the Asset Purchase Agreement), under the Court's ruling. Plan at 12. Accordingly, the Plan must be revised to clarify that the ESL 507(b) Priority Claims, if Allowed, are entitled to recover from additional sources of recovery, including, at the very minimum, the Other Assets (again, unless the Debtors appeal this Court's ruling and obtain a Final Order to the contrary).

16. <u>Second</u>, ESL reserves all rights with regards to the ESL 507(b) Priority Claims, including the right to appeal this Court's interpretation of the Asset Purchase Agreement with regards to the treatment of the ESL 507(b) Priority Claims and the ESL 507(b) Cap. Accordingly, the Plan should be revised to reflect that the Plan will permit recoveries for the ESL 507(b) Priority Claims as determined by a Final Order.

### III.    THE PLAN MUST ACKNOWLEDGE THE EXTENDED LEASE AND CONTRACT ASSUMPTION DEADLINE

17. As this Court is aware, the deadline to assume certain specified Unexpired Leases has been extended, including the leases for Stores 1018, 1077, 1243, 1248, 1274, 1434, 1508, 1585, 1624, 1678, 1681, 1684, 1722, 1728, 1775, 2059, 2092, 2388, 2597, 2628, 3127, 3527, 3667, 7777, 7749, 8290 pursuant to Section 365(d)(4) of the Bankruptcy Code. Because the court-ordered extended deadline could result in assumption of such Unexpired Leases after the confirmation of the Plan, Section 13.1 of the Plan should be revised to clarify that these specified Unexpired Leases will not be deemed rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code on the Effective Date of the Plan. As previously disclosed to the Court,

Transform is paying all occupancy costs relating to these certain specified Unexpired Leases prior to the extended deadline for assuming these Unexpired Leases, so no additional claims against the Debtors will accrue as a result of the extended deadline.

18. In addition, certain Executory Contracts are subject to pending notices to assume and assign. While the notices to assume the Executory Contracts have already been filed, certain assumptions and assignments to Transform have not yet become effective in light of pending objections that have been filed and that Transform is in the process of resolving. Section 13.1 of the Plan should similarly be modified to clarify that Executory Contracts subject to a pending notice of assumption and assignment will not be deemed rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code on the Effective Date of the Plan.

## IV.    RESERVATION OF RIGHTS

19. As noted above, ESL and Transform reserve all rights, including but not limited to, a) Transform and the Debtors' respective obligations under the Asset Purchase Agreement and b) all rights relating to the ESL 507(b) Priority Claims, including the right to appeal this Court's rulings with respect to the treatment of the ESL 507(b) Priority Claims and the ESL 507(b) Cap. ESL and Transform further reserves the right to supplement this Limited Objection.

## CONCLUSION

20. For the reasons stated above, ESL and Transform seek modifications to address the issues described herein, and for the Court to grant such other and further relief that it deems just and appropriate.

Dated: August 2, 2019
      New York, New York

                          CLEARY GOTTLIEB STEEN & HAMILTON LLP

                          By: /s/ *Sean A. O'Neal*
                               Sean A. O'Neal
                               Luke A. Barefoot
                               Chelsey Rosenbloom
                               One Liberty Plaza
                               New York, NY 10006
                               Telephone: (212) 225-2000
                               Fax: (212) 225-3999

                               *Attorneys for ESL Investments, Inc. and certain of its affiliates and Transform Holdco LLC*