Hearing Date: August 12, 2019 at 12:30 P.M.
Objection Deadline: August 6, 2019

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
------------------------------------------------------------------X

**JOINDER BY THE SECRETARY OF LABOR IN OPPOSITION TO DEBTORS'**
**SECTION 1114 MOTION**

The Secretary (the "Secretary") of the United States Department of Labor (the "DOL") joins with the Official Committee of Retirees in its opposition to the motion of Sears Holdings Corporation and Its Affiliated Debtors (collectively, the "Debtors") under Section 1114 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., (the "Section 1114 Motion") for modification of retiree benefits provided under the Sears Retiree Group Life Insurance Plan (the "Retiree Plan")and respectfully represents:

1.    As more fully described in the brief of the Official Retiree Committee and paragraph 23 of the Section 1114 Motion, the Debtors seek to reduce the value of life insurance benefits of almost all class members under a court approved 2001Stipulation of Settlement to general unsecured claims  of $5,000.[1]  In contrast to their prior position, the Debtors' argument is grounded upon the <u>unstated</u> premise that they needed Section 1114 approval before they unilaterally terminated the life insurance benefits in March of this year.

---

[1] Under the Debtors' proposal a projected fewer than twenty-five class members would be granted an administrative expense priority for their $5000 claims.  It is believed that the life insurance amounts of all class members had ranged in amount from $5000 to $14,500.

2. The Debtors previously have relied upon this Court's opinion in In re Delphi Corp., No. 05-44481, 2009 WL 637315 (Bankr. S.D.N.Y. Mar. 10, 2009) as the legal basis for their alleged unilateral right to terminate the Retiree Plan.

3. For example, the Debtors state in their Disclosure Statement: "[T]he Debtors believe they were authorized to terminate the Retiree Plan without seeking Bankruptcy Court approval pursuant to section 1114 of the Bankruptcy Code. *See In re Delphi Corp.*, 2009 WL 637315 (Bankr. S.D.N.Y. Mar. 10, 2009) (Drain, J.)." Disclosure Statement for Second Amended Joint Chapter 11 Plan (Dkt. #4390) at 40.

4. The Debtors ignored that the opinion in Delphi also reflects that no unilateral right to terminate exists if retirees have a vested right to the benefits provided under a plan. Delphi, 2009 WL 637315 at *8. Such vesting may occur under the terms of a plan or under the doctrine of promissory estoppel. Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 82-87 (2d Cir. 2001).

5. As this Court is aware from prior argument in these cases involving the appointment of the Official Retiree Committee, the Debtors agreed in a 2001 class settlement that the rights of retirees in their life insurance benefits provided under what is now the Securian Financial Group Life Insurance Policy (the "Securian Policy") had vested.[2]

---

[2] The Debtors in substance recognized that the vesting had occurred by including the following language in their Disclosure Statement: "After termination of the Retiree Plan, the Debtors were advised that, in 2001, Sears Roebuck had entered into a Stipulation of Settlement (In Re: Sears Retiree Group Life Insurance Litigation Civil Action No. 97C 7453), in connection with the reduction of certain retiree life insurance benefits available to eligible retirees at that time. Under the Stipulation, which was approved by the United States District Court of the Northern District of Illinois, Sears Roebuck agreed that it would not reduce or terminate the retiree coverage subject to the Stipulation, and would amend the applicable plan consistent with such limitation." Disclosure Statement for Second Amended Joint Chapter 11 Plan (Dkt. #4390) at 40 (underlining added).

6. Consequently, the Debtors lacked the legal authority to terminate the Securian Policy in March of this year.

7. Without addressing the issue, as described below, the Debtors now are asking this Court to bless their violation of Section 1114(e) of the Bankruptcy Code by making the Section 1114(e) order that they are seeking retroactive to March 15, 2019.

8. Section 1114(e)(1) of the Bankruptcy Code provides in pertinent part:

> [T]he debtor in possession … <u>shall timely pay and shall not modify</u> any retiree benefits, except that (A) the court, on motion . . . may order modification of such payments, . . . or (B) the trustee and the authorized representative . . . may agree to modification of such benefits, <u>after</u> which such benefits as modified shall continue to be paid by the trustee.

11 U.S.C. § 1114(e)(1) (emphasis added).

9. Section 1114(e)(2) states that such payment obligation "has the status of an allowed administrative expense." 11 U.S.C. § 1114(e)(2).

10. Thus, the Debtors remain obligated under Section 1114(e)(1) to continue to "timely pay" the vested retirees their life insurance benefits until the Official Retiree Committee or this Court otherwise agrees to a reduction in these amounts and such payments are an allowed administrative expense under Section 1114(e)(2). See <u>In re A.C.E. Elevator Co.</u>, 347 B.R. 473, 484 (Bankr. S.D.N.Y. 2006) (Drain, J.) ("Bankruptcy Code section 1114(e) . . . provides for the timely payment of any retiree benefits before confirmation of a chapter 11 plan and accords such obligation administrative expense priority regardless of when earned.").

11. Rather than allowing for prior modification of retiree benefits, Section 1114(e)(1) expressly states that modified payment amounts become applicable only "after" a court or the retiree's representative approves such modification. <u>Nunc pro tunc</u> relief will not be granted where it will serve as "an end-run around" what Congress has mandated. <u>United States v. Ketabchi</u>, No. 17-243-3, 2019 WL 1510444, at *2 (S.D.N.Y. Sept. 25, 2019).

3

12.     Remarkably, nowhere in the 56 page Section 1114 Motion of the Debtors or the six page declaration of William Murphy in support of the motion (Dkt. # 4636) do the Debtors discuss the nunc pro tunc nature of the relief that they are seeking by making the proposed Section 1114 order retroactive to March 15, 2019.

13.     The Second Circuit Court of Appeals has created a very demanding test for the granting of nunc pro tunc relief.  It has declared:

> Nunc pro tunc approval should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances.

In re Keren Ltd., 189 F.3d 86, 87 (2d. Cir. 1999).

14.     Even if a debtor has shown that the requested relief would have been granted, nunc pro tunc approval will nevertheless be denied if the requisite "extraordinary circumstances" are not shown.  In re Aquatic Development Group, Inc., 352 F. 3d 671, 678-79 (2d Cir. 2003).

15.     The Debtors have not simply failed to meet this weighty burden.  They have wrongfully failed to even address it.

16.     Although they were advised of the existence of the Stipulation by a Sears retiree on March 12, 2019, see Declaration of Michael Mulder dated May 28, 2019 (Dkt. # 4055) at 7, the Debtors waited more than four months to file the Section 1114 Motion.  They waited more than two months after they were advised in the Secretary's objection to the Disclosure Statement (Dkt. # 3759) that their unilateral termination of retiree benefits could not be reconciled with the terms of the Stipulation. They even waited more than a month to file the Section 1114 Motion after they announced their intention to file the motion at the June 20 hearing at which the Court ruled that it was granting the motion for the appointment of the Official Retiree Committee.

4

Transcript at June 20, 2019 Hearing at p. 62, lines 22-24. This lack of diligence is an additional reason that the Section 1114 Motion should be denied.

17. <u>Nunc pro tunc</u> relief will be denied where there is excessive delay, a lack of good faith or undue prejudice to the opposing party. <u>Drayton v. New Britain Auto Sales, LLC</u>, No. 05-2015, 2008 WL 11483464, at *1 (D. Conn. Oct. 8, 2008). All of these factors are present here.

Accordingly, the Secretary joins with the request of the Official Committee of Retirees for the denial of the Section 1114 Motion in its present form.

Dated: August 6, 2019
Washington, D.C.

          KATE S. O'SCANNLAIN
          Solicitor of Labor

          G. WILLIAM SCOTT
          Associate Solicitor
            for Plan Benefits Security

          JOANNE ROSKEY
          Deputy Associate Solicitor
            for Plan Benefits Security

          <u>s/Leonard H. Gerson</u>
          LEONARD H. GERSON
          Trial Attorney
          U.S. Department of Labor
          Office of the Solicitor
          Plan Benefits Security
          200 Constitution Ave. N.W.
          Room N-4611
          Washington, D.C. 20210
          (202) 693-5615
          gerson.leonard@dol.gov

<u>Certificate of Service</u>

    I hereby certify that on the 6th day of August, 2019, I caused a copy of the foregoing pleading to be served through the Court's ECF system.

                                                 <u>s/Leonard H. Gerson</u>