Hearing Date and Time: August 22, 2019 at 10:00 a.m. (EDT)
Objection Deadline: August 15, 2019 at 4:00 p.m. (EDT)

Laura E. Appleby
Steven Wilamowsky
CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000
Facsimile: (212) 697-7210

*Attorneys for WSSR, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
:
In re                                                          :    Chapter 11
:
SEARS HOLDINGS CORPORATION, *et al.*[1],     :    Case No. 18-23538 (RDD)
:
Debtors.                                       :    (Jointly Administered)
:
---------------------------------------------------------------X

### NOTICE OF MOTION OF WSSR, LLC FOR AN ORDER PURSUANT TO 11 U.S.C. §§365(d)(3), 503 AND 507(A)(2), DIRECTING THE IMMEDIATE PAYMENT OF POST-PETITION, PRE-REJECTION LEASE OBLIGATIONS AS ADMINISTRATIVE EXPENSES

**PLEASE TAKE NOTICE** that, pursuant to the annexed motion (the "*Motion*"), WSSR, LLC ("*WSSR*"), by and through its undersigned counsel, shall move before the Honorable Robert

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

D. Drain, United States Bankruptcy Judge, for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601 (the "*Bankruptcy Court*"), on **August 22, 2019 at 10:00 a.m. (EDT)**, or as soon thereafter as counsel may be heard for the entry of an order pursuant to 11 U.S.C. §§ 365(d)(3), 503 and 507(a)(2), for the Payment of Post-Petition, Pre-Rejection Lease Obligations as Administrative Expenses in the total sum of $98,354.15 (the "*Motion*").

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "*Objections*") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the Amended Order Implementing Certain Notice and Case Management Procedures, entered on November 1, 2018 (ECF No. 405), so as to be filed and received no later than **August 15, 2019 at 4:00 p.m. (EDT)** (the "*Objection Deadline*").

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, WSSR may, on or after the Objection Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered without further notice or opportunity to be heard.

Dated:  New York, New York                         CHAPMAN AND CUTLER LLP
        August 6, 2019


                                      By: /s/Laura E. Appleby
                                          Laura E. Appleby
                                          Steven Wilamowsky
                                          1270 Avenue of the Americas
                                          New York, New York 10020
                                          Telephone: (212) 655-6000
                                          Facsimile:  (212) 697-7210
                                          appleby@chapman.com
                                          wilamowsky@chapman.com

                                      *Attorneys for WSSR, LLC*

Laura E. Appleby
Steven Wilamowsky
CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000
Facsimile: (212) 697-7210

*Attorneys for WSSR, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
: 
In re                                                          :   Chapter 11
:
SEARS HOLDINGS CORPORATION, *et al.* [1],                      :   Case No. 18-23538 (RDD)
:
Debtors.                                                       :   (Jointly Administered)
:
---------------------------------------------------------------X

# WSSR, LLC'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§365(d)(3), 503 AND 507(A)(2), DIRECTING THE IMMEDIATE PAYMENT OF POST-PETITION, PRE-REJECTION LEASE OBLIGATIONS AS ADMINISTRATIVE EXPENSES

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

WSSR, LLC (the "*Landlord*"), by and through its undersigned counsel, as and for its motion, pursuant to 11 U.S.C. §§ 365(d)(3), 503 and 507(a)(2), for an Order directing the immediate payment of post-petition, pre-rejection obligations owed by Debtor Sears, Roebuck and Co. (the *"Debtor-Tenant"*) in the total sum of $98,354.15 that remain outstanding under that certain Ground Lease dated as of January 8, 2001 by and between Warm Springs Promenade, L.L.C. and the Debtor-Tenant (as may have been amended from time to time, the "*Lease*")[1] for the premises located at 1245 West Warm Springs Road, Henderson, Nevada (the *"Premises"*), and known as Sears Store No. 1709, respectfully represents as follows:

## PRELIMINARY STATEMENT

The Landlord is a small business whose primary source of income had been the rent from the Premises -- a Sears location in Henderson, Nevada. The Debtor-Tenant (as defined herein) rejected the Lease and abandoned the Premises on or about April 30, 2019. Before the Debtor-Tenant rejected the Lease and abandoned the Premises, however, and after the Petition Date (as defined below) (the *"Post-Filing, Pre-Rejection Period"*), certain amounts that accrued under the terms of the Lease went unpaid by the Debtor-Tenant. For instance, despite repeated, written requests, and the express mandate of the Lease, the Debtor-Tenant failed to pay an installment of property taxes that became due and payable on the Premises before the Lease was rejected, forcing the Landlord to pay such amounts or risk losing the property. Additionally, the Debtor-Tenant repeatedly refused to pay contractually required Percentage Rent to the Landlord, despite a clear requirement in the Lease.

---

[1] A copy of the Lease is annexed as Exhibit "A" hereto. Capitalized terms used and not defined herein have the meanings ascribed thereto in the Lease.

2

The amounts due to the Landlord and claimed herein accrued during the Post-Filing, Pre-Rejection Period and are required to be paid under the Lease and pursuant to Section 365(d)(3) of the Bankruptcy Code. The Debtor-Tenant's refusal to pay the amounts owed is a violation of its duty as a debtor in possession and has forced the Landlord to unnecessarily incur legal expenses to pursue claims that cannot be colorably disputed. Therefore, the Court should enter an order directing the Debtor-Tenant to pay all obligations due and owing to the Landlord that accrued during the Post-Filing, Pre-Rejection Period immediately, including the Landlord's attorney fees.

## BACKGROUND

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. On or about October 15, 2018 (the "*Petition Date*"), Sears Holding Corporation and certain of its affiliates, including the Debtor-Tenant (collectively, the "*Debtors*"), each filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*"). The Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

A. **The Lease and Treatment as a Part of the Debtors' Proceedings**

3. On January 8, 2001, Warm Springs Promenade, L.L.C., a predecessor to WSSR, LLC, and the Debtor-Tenant entered into the Lease related to the Premises, which is identified by the Debtors as Sears Store No. 1709.

4. On October 26, 2018, the Court entered the *Interim Order Approving (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* [ECF No. 337] (the *"Interim Order"*) in which the Court authorized the Debtors to commence a

3

store closing sale at, among other locations, Sears Store No. 1709. The Interim Order became a Final Order on November 19, 2019 (ECF No. 823) (the *"Final Store Closing Order"*).

5. On November 19, 2018, the Court entered its *Order Approving Global Bidding Procedures and Granting Related Relief* (the *"Bidding Procedures"*) (ECF No. 816), in which the Court approved bidding procedures for the sale of substantially all of the Debtors' assets. In relation to the Bidding Procedures and in connection with the approval of an asset purchase agreement with Transform Holdco LLC (the *"Purchaser"*) dated as of January 17, 2019, the Debtors were permitted to designate leases that could be assigned and assumed in connection with the sale of the Debtors' assets.

6. On January 23, 2019, the Debtors filed a supplemental notice advising that the Lease could be assumed and assigned pursuant to the Bidding Procedures (ECF No. 1709) (the *"Supplemental Notice"*).

7. In response to the Supplemental Notice, the Landlord filed its *Limited Objection to the Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Global Sale Transaction* (ECF No. 2236) and a supplement thereto (ECF No. 2863) (collectively, the "*Limited Objection*").

8. On April 30, 2019, the Debtor-Tenant filed its *Notice of Rejection of Certain Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* (ECF No. 3449), which included the Lease. The Court entered its *Order Approving the Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* on May 15, 2019 (ECF No. 3884).

9. On or about April 30, 2019, the Debtor-Tenant surrendered possession of the Premises to the Landlord. The surrendering of the Premises to the Landlord, however, did not

4

absolve the Debtor-Tenant from paying those obligations due to the Landlord that accrued during the Post-Filing, Pre-Rejection Period under the Lease, some of which remain due and owing despite request for payment by the Landlord, including the following:

### 1. *Unpaid Percentage Rent*

10. The Lease requires the Debtor-Tenant to pay Percentage Rent, which the Debtor-Tenant has refused to pay from January 1, 2019 through the date on which the Lease was rejected. Rent under the Lease has two basic components, the Fixed Rent and Percentage Rent. For periods in which the Debtor-Tenant is operating at the Premises, Percentage Rent is equal to 2% of Net Sales. For periods in which the Debtor-Tenant is not operating, the Lease provides that Percentage Rent is to be calculated as the "average of the Percentage Rent paid by Tenant for the three (3) previous Lease Years." Lease, § 2.06(e).

11. Debtors' counsel has suggested to Landlord's counsel that Percentage Rent for periods after the Store Closing Date constitutes an unenforceable "penalty for going dark." This assertion is nonsensical. Among other things, the Percentage Rent provision at issue only applies during the Initial Term after the Tenant's Operating Covenant (*see* Lease, § 2.03) no longer is in effect, *i.e.,* while the Tenant is contractually free to operate or not operate at its sole discretion. If the Tenant chooses not to operate, then the formula in Section 2.06(e) applies as a way of calculating Percentage Rent during the Initial Term in order to provide the Landlord with the benefit of its bargain.

12. Based on the formula set forth in the Lease, the Debtor-Tenant is liable to the Landlord for a not less than $15,046.55 per month in Percentage Rent after the date in which the Debtor-Tenant ceased operating at the leased location.[2] Upon information and belief, the Debtor-

---

[2] The Landlord has provided an estimate of the Percentage Rent based upon amounts of Percentage Rent that it received from the Debtor-Tenant from January 2016 through December 2018. The Landlord submits that the

5

Tenant ceased operating at the leased location on or about January 1, 2019 (the "*Store Closing Date*"). For the period from January 1, 2019 through April 30, 2019, the Landlord received from the Debtor-Tenant Percentage Rent in the amount of only $99.02, well below the $60,186.20 of Percentage Rent due the Landlord under the express terms of the Lease. Therefore, the Debtor-Tenant owes the Landlord as an administrative expense at least $60,087.18 in Percentage Rent that accrued during the Post-Filing, Pre-Rejection Period, but remains unpaid.

    2.    *__Unpaid Real Estate Taxes__*

13.    The Debtor-Tenant has additionally failed to pay Real Estate Taxes owed with respect to the Premises, which are the Debtor-Tenant's obligation as Additional Rent pursuant to Section 2.06 of the Lease, and has asserted that the Purchaser, not the Debtor-Tenant, is responsible for payment of the Real Estate Taxes. *See also* Lease, § 10.02. The Debtors, further, despite the express requirement of § 363(d)(3) of the Bankruptcy Code of timely performance of lease obligations, have asserted that the Debtor-Tenant is only required to pay the Real Estate Taxes that accrued through April 30, 2019, and not the entire amount of the quarterly tax payment, even though such payment became due and owing on March 4, 2019, during the Post-Filing, Pre-Rejection Period.

14.    As set forth in **Exhibit B** hereto, Nevada state property taxes in the amount of $18,261.02 became due and owing on March 4, 2019. Despite the requirements of Sections 2.06 and 10.02 of the Lease, the Debtor-Tenant failed to make this payment. Due to the nonpayment of this required Lease obligation, penalties accrued on the unpaid Real Estate Taxes, and at the time the Landlord paid the Real Estate Taxes (or risk losing the Premises for nonpayment of such

---

Debtor-Tenant's records are the best evidence of the amount of Percentage Rent due under the Lease and that, upon information and belief, the Landlord did not receive all Percentage Rent that accrued immediately prior to the Debtors' bankruptcy proceedings being filed.

6

taxes) the Landlord incurred a penalty for lack of payment in the amount of $739.44. Specifically, after learning that the Lease had been rejected, in order to avoid further penalties and other adverse effects of non-payment, the Landlord paid the full balance of $19,000.46 due the State of Nevada, which amount is due and owing to Landlord by Debtor-Tenant.

### 3. *Unpaid Legal Fees*

15.    Landlord has incurred not less than $19,266.51 in legal fees enforcing its interests with respect to the Debtor-Tenant's late payments of, among other things, Fixed Rent, Percentage Rent and Additional Rent, from and after the Petition Date and is entitled to such amounts pursuant to Section 15.19 of the Lease.

16.    Based upon the foregoing amounts, Debtor-Tenant owes Landlord not less than $98,354.15 of administrative claims consisting of: (i) unpaid Percentage Rent; (ii) unpaid Real Estate Taxes; and (iii) unpaid legal fees under the terms of the Lease.

## RELIEF REQUESTED

17.    The Landlord seeks entry of an order pursuant to Bankruptcy Code § 365(d)(3), or alternatively (and to the extent applicable), pursuant to Bankruptcy Code § 503(b), directing the Debtors to pay at least $98,354.15 immediately to the Landlord for Lease obligations incurred during the Post-Petition, Pre-Rejection Period. To the extent the Court determines that any portion of the amounts set forth herein are not allowable as administrative expenses, the Landlord reserves the right to amend its proof of claim to add such expenses.

## BASIS FOR RELIEF

18.    Pursuant to § 365(d)(3) of the Bankruptcy Code, with certain exceptions, until a debtor-in-possession assumes or rejects an unexpired lease of nonresidential property, it must *timely* perform *all* obligations under the lease, notwithstanding the provisions of § 503(b)(1) of the

7

Bankruptcy Code. 11 U.S.C. § 365(d)(3). If a debtor violates § 365(d)(3), courts will usually treat the unpaid obligations as "automatic" administrative expenses that are "independent of section 503(b)." *In re BH S&F Holdings LLC*, 401 B.R. 96, 103 (Bankr. S.D.N.Y. 2009) (citation and internal quotation marks omitted); *but see In re Microvideo Learning Sys., Inc.*, 232 B. R. 602, 604 (Bankr. S.D.N.Y.), *aff'd*, 254 B. R. 90 (S.D.N.Y. 1999), *aff'd,* 227 F.3d 474 (2d Cir 2000) (noting that a commercial landlord need to make a showing of the benefit a lease provided to an estate, but finding that an exception to the requirements of § 365(d)(3) may apply to an administratively insolvent estate).

19. It cannot be disputed here that the Lease is for nonresidential real property, and that the Debtors were required to adhere to § 365(d)(3) in making all payments due under the Lease until the rejection of the Lease. In fact, the Debtor-Tenant made some payments due under the Lease during the Post-Filing, Pre-Rejection Period as required by the Bankruptcy Code. Section 365(d)(3), however, does not permit a debtor to cherry-pick which payments it will and will not make under a lease. *See, e.g., In re Babbs*, 265 B.R. 35, 38 (Bankr. S.D.N.Y. 2001). Rather, § 365(d)(3) requires a debtor to timely perform all obligations due and owing under a lease as those obligations arise. *Id*. Here, the Debtor-Tenant has not done so, necessitating the Landlord to file this Motion.

20. Indeed, pursuant to § 365(d)(3) a debtor is required to make all timely payments due under a lease, even if the debtor disputes the amount due. *See, e.g., In re Caldor, Inc.—NY*, 217 B.R. 116, 120 (Bankr. S.D.N.Y. 1998) (requiring debtor to make immediate payment of rent and taxes due under lease even where dispute as to amounts owed existed); *In re C.A.F. Binder, Inc.*, 199 B.R. 828, 831 (Bankr. S.D.N.Y. 1996) (requiring debtor-lessee to perform upon the terms of the governing lease). Such payments are "unconditionally due." *Caldor*, 217 B.R. at 119

8

(quoting *In re Wingspread Corp.*, 116 B.R. 915 (Bankr. S.D.N.Y. 1990) and noting that the only exception to this rule is if an act of the landlord requires a different, equitable result).

21.    Pursuant to Section 2.03 of the Lease, Percentage Rent is unambiguously due. The Percentage Rent that is due and owing following the closing of Store No. 1709 is not a going-dark penalty, but rather a negotiated provision of the Lease.[3]  Additionally, pursuant to Sections 2.06 and 10.02 of the Lease, the Debtor-Tenant was unambiguously required to pay any Real Estate Taxes that became due and owing on the Premises during the term of the Lease.  Here, the Real Estate Taxes became due and owing on March 4, 2019.  The Debtor-Tenant failed to timely pay such amounts.  The Debtor-Tenant should not be able to ignore the the timely performance requirement of payments due under the in hopes of reducing such liabilities post-rejection. Additionally, the Landlord should not be penalized because the Purchaser has refused to pay the Real Estate Taxes under the Lease.  Under § 365(d)(3) of the Bankruptcy Code, it is not a purchaser, but a *debtor's* obligation to make timely payments under a Lease.  11 U.S.C. § 365(d)(3).

22.    Finally, pursuant to Section 15.19 of the Lease, the Landlord is entitled to its attorneys fees because it has been forced to enforce the terms of its Lease throughout the Debtors' bankruptcy.  The Landlord submits that its attorneys fees are reasonable based upon the scope of legal work required, and were necessary to ensure that the Debtor-Tenant would continue to

---

[3] Even if the Percentage Rent formula in the Lease could reasonably be characterized as a "going dark" provision (which it cannot), there is nothing in the Bankruptcy Code that renders such provisions *per se* unenforceable. Rather, it has been suggested (although the case law supporting it is remarkably sparse) that such provisions, if formulated a particular way, arguably can become *de facto* anti-assignment provisions that are unenforceable under section 363(f)(3). The Percentage Rent formula here is not that; it is an essential component of the Landlord's compensation for the use of the Premises. *Cf. Ramco-Gershenson Properties, L.P. v. Serv. Merchandise Co., Inc.*, 293 B.R. 169, 182 (M.D. Tenn. 2003) (landlord's right under lease to purchase tenant's leasehold improvements if tenant ceased operations for nine continuous months constituted unenforceable restriction on assignment).

9

perform under the terms of the Lease and to make those payments required under the terms of the Lease.

23. Based on the unambiguous terms of the Lease and § 365(d)(3) of the Bankruptcy Code, Landlord is entitled to an order compelling the Debtor-Tenant to pay a total of not less than $98,354.15 to Landlord as post-filing, pre-rejection lease obligations.

24. If, however, the Court determines that the amounts due the Landlord as set forth herein are outside the scope of § 365(d)(3), they such amounts should be treated as an administrative expense pursuant to § 503(b)(1)(A). Pursuant to § 503(b)(1)(A), the "actual, necessary costs and expenses of preserving the estate" are administrative expenses entitled to priority payments. 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2). The Debtors' estates benefitted from the opportunity to market the Lease and conduct going-out-of-business sales on the premises. Therefore, the Debtors' estate would be unjustly enriched if Landlord is not compensated for these benefits that the Lease conferred on the estate.

## RESERVATION OF RIGHTS

25. Landlord reserves the right to supplement, amend, or otherwise modify this Motion and to, among other things, claim additional amounts arising from or related to the Lease as obligations payable as administrative expenses under § 365(d)(3) of the Bankruptcy Code or under § 503(b) of the Bankruptcy Code, as applicable. Nothing in this Motion prevents Landlord from supplementing, amending, or otherwise modifying its proof of claim for rejection damages. All Landlord's rights and remedies under the Lease are expressly reserved.

**CONCLUSION**

WHEREFORE, Landlord respectfully requests the entry of an order directing the Debtor-Tenant to forthwith pay the sum of $98,354.15 to Landlord as and for an expense of administration and granting such other and further relief as is just and proper.

Dated:  New York, New York  
        August 6, 2019

CHAPMAN AND CUTLER LLP

By: /s/Laura E. Appleby  
    Laura E. Appleby  
    Steven Wilamowsky  
    1270 Avenue of the Americas  
    New York, New York 10020  
    Telephone: (212) 655-6000  
    Facsimile:  (212) 697-7210  
    appleby@chapman.com  
    wilamowsky@chapman.com

*Attorneys for WSSR, LLC*