Hearing Date and Time:  August 12, 2019, 10:00 a.m. (Eastern Time)
Objection Deadline and Time:  August 6, 2019, 4:00 p.m. (Eastern Time)

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
James N. Lawlor
Cassandra Postighone
- and -
THE LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Telephone:  312-263-0272
Michael M. Mulder*
Elena N. Liveris*
*Pro hac application pending

*Proposed Counsel to the Official Committee of
Retirees with Life Insurance Benefits of the
Sears Holdings Corporation, et al.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No: 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.*, | Chapter 11 |
| | (Jointly Administered) |
| Debtors. | |

## OBJECTION OF THE OFFICIAL COMMITTEE OF RETIREES WITH LIFE INSURANCE BENEFITS OF THE SEARS HOLDINGS CORPORATION, ET AL. TO DEBTORS' MOTION FOR MODIFICATION OF RETIREE BENEFITS

# **Table of Contents**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT FACTUAL BACKGROUND ..............................................................................2

ARGUMENT.............................................................................................................................8

A.      Debtors Breached 11U.S.C. § 1114 by Improperly Terminating Retirees' Benefits ..........8

B.      Debtors Have Failed to Treat its Retired Employees Fairly and Equitably Under 11
U.S.C. § 1114(f) ....................................................................................................................10

C.      The Retirees Committee Has Good Cause for Rejecting Debtors' Proposal....................11

CONCLUSION........................................................................................................................17

# Table of Authorities

**Page**

Cases

*Bouboulis v. Transp. Workers Union of Am.,*
  442 F.3d 55 (2d Cir. 2006)..................................................................................................12

*Devlin v. Empire Blue Cross & Blue Shield,*
  274 F.3d 76 (2d Cir. 2001)..................................................................................................12

*In re A.C.E. Elevator Co., Inc.,*
  347 B.R. 473 (Bankr. S.D.N.Y. 2006)................................................................................15

*In re Certified Air Technologies,*
  300 B.R. 355 (Bankr. C.D. Cal. 2003) ..............................................................................15

*In re Ionosphere Clubs, Inc.,*
  22 F.3d 403 (2d Cir. 1994)..................................................................................................15

*In re Motors Liquidation Co.,*
  447 B.R. 198 (Bankr. S.D.N.Y. 2011)................................................................................16

*In re Pinnacle Airlines Corp.,*
  483 B.R. 381 (Bankr. S.D.N.Y. 2012)................................................................................11

*In re Tower Automotive, Inc.,*
  342 B.R. 158 (Bankr. S.D.N.Y. 2006)..................................................................................8

*Schonholz v. Long Island Jewish Med. Ctr.,*
  87 F.3d 72 (2d Cir. 1996)....................................................................................................12

*Truck Drivers Local 807, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.
  v. Carey Transp. Inc.,*
  816 F.2d 82 (2d Cir. 1987)..................................................................................................11

Statutes

11 U.S.C. § 1113(e) ...............................................................................................................15
11 U.S.C. § 1114.................................................................................................................1,5
11 U.S.C. § 1114(a) .................................................................................................................6
11 U.S.C. § 1114(e) ......................................................................................................8, 9, 15
11 U.S.C. § 1114(e)(1).............................................................................................................8
11 U.S.C. § 1114(e)(2)...........................................................................................................15
11 U.S.C. § 1114(d) .................................................................................................................6
11 U.S.C. § 1114(f).............................................................................................................13,14

11 U.S.C. § 1114(f)(1) ................................................................................................................9
11 U.S.C. § 1114(f)(1)(B) .........................................................................................................15
11 U.S.C. § 1114(f)(2) ........................................................................................................ 10, 11
11 U.S.C. § 1114(g)(2)..............................................................................................................11
11 U.S.C. § 1114(g)(3)..............................................................................................................10
29 U.S.C. § 1024(b)(1)................................................................................................................7

**TO:   THE HONORABLE ROBERT D. DRAIN**

**UNITED STATES BANKRUPTCY JUDGE**

The Official Committee of Retirees with Life Insurance Benefits (the "Retirees Committee") of Sears Holdings Corporation and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") submits this objection (the "Objection") to the Debtors' motion to modify retiree benefits (ECF 4635) (the "Motion"), and respectfully represents:

### PRELIMINARY STATEMENT

1.     The Retirees Committee represents tens of thousands of Sears Roebuck retirees who are entitled to a modest life insurance benefit under a decades-old benefit plan (the "Death Benefit Plan") that was fully vested by operation of a court-approved settlement.  In 1998, Sears attempted to terminate the Death Benefit Plan, which the retirees had partially paid for during their employment[1] and the company represented was paid-up retiree life insurance. Meeting stiff resistance in the form of a class action lawsuit,[2] Sears capitulated and agreed never to modify or terminate the Death Benefit Plan, vesting the retirees' death benefit rights permanently.

2.     Notwithstanding what should have been well known to the Debtors and its senior management, Debtors proceeded to unilaterally terminate the Death Benefit Plan in violation of the explicit requirements set forth in Section 1114 of the Bankruptcy Code.  While this Court has not yet concluded that the benefits are fully vested, the evidence is overwhelming that they are.

---

[1] Sears employees who paid life insurance premiums for at least ten consecutive years immediately prior to retirement under the Group Life Insurance Plan received life insurance at a fixed amount (typically 40% of the pre-retirement level) upon retirement at age 60 or higher without further cost during the duration of the retiree's life in order to have paid-up life insurance in retirement.

[2] *In re: Sears Retiree Group Life Insurance Litigation, Civil Action No. 97 C 7453 (D. Ill.)* (the "Sears Life Insurance Litigation").

To ensure that retirees are properly represented and receive what they are entitled to under the Code, the Court appointed the Retirees Committee to act on their behalf.

3.      Despite their failure to comply with Section 1114, Debtors are now asking the Court to agree to retroactively approve Debtors' modification to the Death Benefit Plan that still fails to reflect the fully vested nature of the benefits.  Under the Debtors' proposal, the retirees would receive significantly less than what they are statutorily entitled to under Sections 1114 and 507. The Retirees Committee has rejected Debtors' proposed modifications and instead has provided its own proposal reflecting Section 1114's requirements, as set forth herein, which it hopes will result in a negotiated resolution.

## RELEVANT FACTUAL BACKGROUND

4.      The Retirees Committee incorporates by reference the background sections of the motion under Bankruptcy Code section 1114(d) by which certain retirees sought the committee's appointment (ECF 4054) (the "Retirees 1114 Motion"), the supporting declaration of Michael M. Mulder (ECF 4055) (the "Mulder Decl."), and the reply to the Debtor's objection to the Retirees 1114 Motion (ECF 4262) (the "Retirees 1114 Reply"), and all accompanying declarations and exhibits attached to them.  It only repeats those portions necessary to address the Motion.

5.      More than sixteen years ago, the Debtors sought to terminate the Death Benefit Plan.  Meeting stiff resistance in the form of the Sears Life Insurance Litigation in the United States District Court for the Northern District of Illinois, the Debtor's capitulated and forever waived their right to modify or terminate the Death Benefit Plan for class members:

> Sears agrees that any language preserving Sears' right to amend, modify, cancel or terminate the terms of the Plan, both now and in the future, shall not include the right to amend, modify, cancel or terminate any right conferred upon to Class Members by the terms of this Stipulation of Settlement, or to diminish the value of the benefit conferred to Class Members and Approved Claimants in this Stipulation.

2

(The Declaration of James N. Lawlor, attached hereto as Attachment 1 (the "Lawlor Decl."), Ex. A at 14-15.)  The Stipulation of Settlement was so ordered by the District Court.  (Lawlor Decl., Ex. B.)

6.      From 2002 until the bankruptcy filings, the Debtors treated the benefits as vested, and the communications to retirees over the course of the past two decades confirms as such.

7.      For example, the class of retirees in the Sears Life Insurance Litigation covered by the Stipulation of Settlement and impacted by the Debtors' improper termination, were notified by a letter on Sears letterhead dated September 12, 2002 (the "2002 Sears Notice"), that Sears was "**permanently** restoring one annual increment of your Sears-provided retire life insurance [emphasis added]." (Lawlor Decl., Ex. C.)

8.      In March 2007, Sears had to issue as required by ERISA a Notice of Material Modification to the retirees because the Summary Plan Description contained an error[3] (the "March 2007 Notice"). (Lawlor Decl., Ex. D.) The notice makes clear, "This Notice is intended to constitute summaries of **material modifications** with respect to the most recent SPDs . . ." (emphasis added).  Sears, the Plan Administrator, acknowledges in that notice that the reduction schedule in the SPD was incorrect, because it failed to recognize that for class members who filed a claim under the Stipulation of Settlement, Sears would forgo one year's life insurance reduction resulting in a policy with a value greater than the minimum guaranteed insurance of $5,000 and up to $14,500. In other words, the 2007 SPD had to be revised in conformity with the Stipulation of Settlement.

---

[3] A summary of material modification is required under section 104(b)(1) of ERISA, 29 U.S.C. § 1024(b)(1), to the plan participants and beneficiaries when updates or amendments of the summary plan description occur.

9.      Then, by letter dated July 26, 2010, Sears notified the class members that the provider of the group policy had changed to Prudential Life Insurance Company of America (the "2010 New Provider Notice"). (Lawlor Decl., Ex. E.) Page two of that notice expressly provides the following in a footnote:

> Sears Holdings Corporation (including its affiliates) reserves the right to change or terminate any or all benefit plans at its discretion, **subject to the 2001 Settlement Agreement**. With respect to the coverage provided under the Sears Retiree Group Life Insurance Plan to covered retires who made a proper claim under the 2001 Settlement Agreement for the litigation known as "In re Sears Retiree Group Life Insurance Litigation", Sears Holdings Corporation **has agreed not to make any additional changes**. (emphasis added).

10.     On March 7, 2019, the Board of Directors of Sears Holdings (the "Board of Directors") unilaterally resolved to terminate the Death Benefit Plan effective as of March 15, 2019. On March 8, 2019, Sears posted on the Sears Holdings Corporation Alumni webpage a "Notice – Termination of Retiree Life Insurance Plan," notify participants in the Death Benefit Plan of its termination.

11.     On March 11, 2019, three days before the March 15 termination effective date, Sears Holdings Chief Human Resources officer, Robert Weber, sent retiree and Chairman of the National Association of Retired Sears Employees ("NARSE") Ronald Olbrysh an email mentioning a "'heads up' regarding retiree life coverage in the voicemail." (Retirees 1114 Motion ¶ 10; *see also* the Declaration of Ronald Olbrysh, attached hereto as Attachment 2 (the "Olbrysh Decl.") ¶ 5.)

12.     On March 12, 2019, Olbrysh wrote back to Weber explaining the retiree life insurance was subject to the Sears Life Insurance Litigation. He further pointed out that the life insurance amount under the Stipulation of Settlement could not be reduced and asserted that "Sears cannot arbitrarily cancel such insurance as long as the company is still in existence. I suggest you

4

bring this immediately to the attention of your General Counsel." (Retirees 1114 Motion ¶ 11; *see also* Olbrysh Decl. ¶ 6.)

13.    The notice of the life insurance termination did not make any mention of the pending bankruptcy proceedings. The notice provided that the Death Benefit Plan would provide for life insurance for the retirees until April 15, 2019.  Regardless of whether the Board of Directors knew about the Stipulation of Settlement prior to the time it unilaterally terminated the Death Benefit Plan, Olbrysh's email correspondence put Debtors on notice of the Stipulation of Settlement prior to the effective end of the Death Benefit Plan, and yet the Board of Directors took no action to reverse its decision.

14.    On May 1, 2019, Olbrysh in his capacity as NARSE Chairman wrote to Robert A. Riecker, Sears Holdings Corporation CFO. (Olbrysh Decl. ¶ 14; Olbrysh Decl. Ex. 1.) The letter provided examples showing that the replacement insurance offered by Securian Life Insurance after Sears terminated the life insurance coverage was "noncompetitive in today's insurance marketplace." Olbrysh reported that NARSE had received many inquiries from insurance companies who wanted to market life insurance to the retirees, but in order to offer a reasonable group policy needed to know the statistics of the retiree population. NARSE asked Mr. Riecker to provide NARSE with the names, addresses, age and gender of the affected retirees who were covered by the Settlement, but it received no response to the letter. *Id.*

15.    On May 8, 2019, the Department of Labor ("DOL") filed a Limited Objection to the Disclosure Statement For Joint Chapter 11 Plan of Sears Holdings Corporation And Its Affiliated Debtors suggesting this Court exercise its discretion to appoint a retiree committee in these cases under Section 1114 of the Bankruptcy Code to protect the interests of the Debtors' retirees. The DOL supported its objection by attaching as Exhibit A the Stipulation of Settlement

5

from the Sears Life Insurance Litigation and quoting its vesting language from pages 14-15. (ECF 3759, ¶ 6; ECF 3759-1, ¶ 3.4.)

16.     On May 28, 2019, two retirees, Mr. Olbrysh and another retiree, Richard Bruce, moved this Court to appoint a retiree committee under 11 U.S.C. Section 1114. (Retirees 1114 Motion (ECF 4054).)

17.     On June 14, 2019, the DOL filed a statement in support of the Retirees 1114 Motion (ECF 4237).

18.     On June 25, 2019, this Court granted the Retirees 1114 Motion and ordered the United States Trustee to appoint an official committee of retired employees to act as the authorized representative of those persons who may be entitled to receive retiree benefits within the meaning of section 1114(a) of the Bankruptcy Code (ECF 4357).

19.     On July 9, 2019, the United States Trustee appointed the Retirees Committee. (ECF 4470).[4] The Committee has met several times to discuss its options.  (Olbrysh Decl. ¶ 3.)

20.     On July 22, 2019, the Debtors proposed to the Retirees Committee terms for modifying the Death Benefit Plan (*see* Debtors' Motion, Ex. A.). The Retirees Committee, through counsel, engaged the Debtors in negotiation.

21.     On July 29, 2019, with negotiations ongoing, the Debtors filed the Motion. As the Retirees Committee understands it, the Debtors dispute that the benefits were vested by the Stipulation of Settlement.

22.     Also on July 29, 2019, the Retirees Committee sent the Debtors an informal request seeking information about, among other things, potential retirees subject to the 1114

---

[4] The Retirees Committee currently comprises: (i) Richard Bruce, (ii) Ronald Olbrysh, (iii) Mary Rose Steininger, (iv) James T. Nally, and (v) Joseph E. Hartzell. Ronald Olbrysh serves as chairman of the Retirees Committee and Richard Bruce serves as vice chairman.

Motion, the Debtors' decision to terminate the Death Benefit Plan, and their knowledge of the Stipulation of Settlement. While the Debtors have provided certain information, they maintain that most of the information sought is irrelevant to the issues before the Court. Nonetheless, the parties continue to attempt to narrow the dispute in the hopes it can be resolved.

23. Even though it did not have complete information, on August 1, 2019, the Retirees Committee delivered to the Debtors a counterproposal (the "Retirees Committee's Proposal"):

    i.    Payment of the full benefit owed ($5,000 to $14,500) to any beneficiary of a retiree that passed away between December 2018 and the date of the entry of a final order approving the modification of the Retiree Plan (the "Breach Period") who was not previously paid by Securian, and an administrative reserve fund set aside to fund such claims.

    ii.    Reimbursement to any retiree that purchased replacement life insurance in the Breach Period, after Securian sent notice to retirees of the termination of their coverage.

    iii.    Establishment of an administrative expense fund in the amount of the unpaid premiums that should have been made during the Breach Period to be distributed pro rata to all remaining retirees on the basis of the amount of their life insurance policies owed ($5,000 to $14,500).

    iv.    For those retirees still alive after the Breach Period, general unsecured claims in the face amount of the lost insurance benefit ($5,000 to $14,500).

    v.    Process to provide appropriate direct notice to all retirees of their claims and reasonable time period to file their claims, and a process for the retirees or beneficiaries to assert claims if they disagree with the amounts set forth in the notice.

    vi.    Termination of the vested life insurance benefits upon the date, if any, the Court approves modification of the Retiree Plan.

    vii.    Payment of the legal expenses for the retirees that successfully prosecuted the motion under a substantial contribution theory.

    viii.    Identical treatment for the full benefit owed to any retiree under the Allstate plan, provided, however, that there is evidence that the plan for those 12 retirees is fully vested. The Committee has no such evidence, and would like a copy of the plan documents. To the best of the Committee's knowledge, the 12 employees were not part of the class in the 2001 settlement, which is the basis of the class's vested rights.

(Lawlor Decl., Ex. F).

24. The Debtors have not responded to the Retirees Committee's Proposal.

## ARGUMENT

### A.  Debtors Breached 11 U.S.C. § 1114 by Improperly Terminating Retirees' Benefits.

25.     Section 1114 prohibits a debtor from unilaterally discontinuing or modifying retiree benefit payments.[5] *See In re Tower Automotive, Inc.*, 342 B.R. 158, 160 n.4 (Bankr. S.D.N.Y. 2006) (citing 11 U.S.C. § 1114(e)(1)) ("Section 1114 requires that retiree benefit payments be continued during the course of a Chapter 11 case unless a court order is obtained or unless there is an agreement otherwise with the authorized representative of the retirees.").

26.     Before a debtor in possession may seek relief under Section 1114, it must complete Section 1114(f)(1)'s post-petition procedures:

> **Subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits**, the trustee shall—
>
> (A) make a proposal to the authorized representative of the retirees, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

---

[5] Section 1114 states, in relevant part:

> (1) Notwithstanding any other provision of this title, the debtor in possession, or the trustee if one has been appointed under the provisions of this chapter (hereinafter in this section "trustee" shall include a debtor in possession), shall timely pay and shall not modify any retiree benefits, except that—
>   (A) the court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section, or
>   (B) the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments,
> after which such benefits as modified shall continue to be paid by the trustee.
> (2) Any payment for retiree benefits required to be made before a plan confirmed under section 1129 of this title is effective has the status of an allowed administrative expense as provided in section 503 of this title.

11 U.S.C. § 1114(e).

(B) provide, subject to subsection (k)(3), the representative of the retirees
with such relevant information as is necessary to evaluate the proposal.

11 U.S.C. § 1114(f)(1) (emphasis added).

27.    By their own admission, the Debtors ignored Section 1114(f) and breached Section

1114(e). They prematurely and unilaterally ceased paying premiums after December 31, 2018, and

terminated the Death Benefit Plan effective March 15, 2019. (Debtors' Motion ¶¶ 14–16.)  Instead

of providing retirees meaningful, individualized prior notice of their benefit loss, the Debtors

merely posted a generalized message to that effect on the Sears Holdings Corporation Alumni

webpage. (Debtors' Motion ¶ 16.)

28.    The Debtors suggest their failure to comply with Section 1114(f) is excusable

because they were unaware of the so-ordered Stipulation of Settlement. Even if ignorance could

excuse their breach—and it cannot—the Debtors' claim is belied by Weber's communications with

Olbrysh on March 11 and 12, three days before the termination effective date, in which Olbrysh

specifically told Weber about the Stipulation of Settlement and exhorted him to bring the matter

to counsel's attention.  Moreover, the Debtors' proposal for a March 15, 2019 retroactive effective

date of termination is tell-tale sign that it recognizes the infirmity of its actions prior to filing of its

Motion.  Under the circumstances, the Court should not grant rejection given the vested nature of

the benefits.

29.    Despite sufficient information in at least March 2019 that they had improperly

ceased premium payments and terminated their retirees' death benefits and well before the April

15, 2019 cut off of the Death Benefit Plan's coverage, the Debtors did nothing until forced to act.

The Debtors even opposed the formation of the Retirees Committee, wasting further valuable time,

and now ask the Court to ratify their breach and deem their modification proposal—untimely by

more than seven months—to comply with the statute.  Section 1114, however, is clear on its face,

and the Debtors may not ignore the statute's procedural requirement or deprive retirees of the statutory protections before the Court has weighed the application.

**B.    Debtors Have Failed to Treat its Retired Employees Fairly and Equitably Under 11 U.S.C. § 1114(f).**

30.    Bankruptcy courts may only authorize plan modifications that are necessary to permit a debtor's reorganization *and* treat affected parties fairly and equitably. 11 U.S.C. § 1114(g)(3).

31.    Even if the Court finds the Debtors' proposed modifications necessary for their reorganization in these cases, it cannot find that the Debtors have treated their retirees fairly and equitably. By ignoring Section 1114(f), the Debtors unfairly and inequitably deprived their retirees of a meaningful opportunity to "confer in good faith in attempting to reach mutually satisfactory modifications of [their] benefits" (11 U.S.C. § 1114(f)(2)), and deprived the retirees' representative "such relevant information as is necessary to evaluate the proposal." (11 U.S.C. § 1114(f)(1)(B)). Instead, the Debtors have forced upon their retirees a *fait accompli,* precisely the opposite of what Congress intended for benefit plans in bankruptcy.

32.    The improper termination caused a number of additional harms.  First, retirees are in their 70s, 80s and 90s, and some have gone out-of-pocket and purchased highly expensive replacements given their current health conditions.  Had the Debtors complied with Section 1114, however, more than 29,000 retirees would have had a real opportunity to negotiate new group benefits at reasonable cost. Indeed, based on the Motion, the Debtors were paying approximately $44 per month per retiree for the benefit.  Since termination, individual retirees have been quoted premium payments well in excess of $3,000 per year. (*See* Olbrysh Decl. ¶¶ 8–12.) Had the termination been done properly, the entire group may have been able to secure substantially reduced premium payments on a group policy.  Thus, the Debtors' improper termination made it

impossible for many retirees to procure replacement insurance at an affordable cost, which in and

of itself would be another potential measure of damages and would likely far exceed what the

committee has proposed as a resolution.

**C.      The Retirees Committee Has Good Cause for Rejecting Debtors' Proposal.**

33.      The Debtors acknowledge that they bear the burden of persuading the Court that

retirees' authorized representative "has refused to accept [their modification] proposal without

good cause." (Motion ¶ 43; 11 U.S.C. § 1114(g)(2)). *See Truck Drivers Local 807, Int'l Bhd. of*

*Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Carey Transp. Inc*., 816 F.2d 82, 92

(2d Cir. 1987); *see also In re Pinnacle Airlines Corp.*, 483 B.R. 381, 409 (Bankr. S.D.N.Y. 2012),

as corrected (Nov. 29, 2012).

34.      The Retirees Committee has rejected Debtors' proposal for several reasons. First,

by unilaterally and prematurely ceasing to pay insurance policy premiums, the Debtors, in effect,

wrongfully converted approximately $1.3 million per month ($9.1 million to date) that they were

obligated to use to preserve their retirees' death benefits, diverting those funds to satisfy their

bankruptcy and Plan priorities. Having been disenfranchised from the Plan formulation and

negotiation process, the Retirees Committee is justified in rejecting this misappropriation of the

required premium payments. Second, because the Debtors have already attempted to terminate the

benefits, it is simply not possible for the Debtors to meet the good faith requirements to confer in

an attempt to reach a mutually satisfactory modification of the Death Benefit Plan, as Section

1114(f)(2) requires. Rather, the Debtors have unilaterally modified the benefits and are not offering

anything that approaches the equivalent of what was lost.  In essence, the Debtors are negotiating

with the retirees' money.

35.     Moreover, the Debtors have continued to deny that they have breached Section 1114 on the meritless ground that the retirees' death benefits are not vested because the Debtors cannot find in their files any amendment to the Death Benefit Plan that actually implemented the Stipulation of Settlement.  The irony in the Debtors' position is unavoidable:  The Debtors claim their breach of Section 1114 is justified by their own failure to satisfy their obligations under the Stipulation of Settlement.

36.     While an employer is free to modify its life insurance plan, it may also make enforceable promises that will vest benefits.  *Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 82 (2d Cir. 2001) ("[E]ven though Empire is 'generally free' to modify its life insurance plan, if Empire promised vested benefits, those benefits will be enforced.")  Written communications outside the summary plan description or other plan documents may be considered in evaluating whether an employer promised to vest ERISA welfare benefits.  *See Bouboulis v. Transp. Workers Union of Am.,* 442 F.3d 55, 62 (2d Cir. 2006) (letter sent to plan participants "could potentially be construed as a statutorily required notice of a material modification, and thus sufficiently formal to be considered."); *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 78 (2d Cir. 1996) (promise to vest benefits may be formalized in correspondence rather than formal plan document). A court must look at whether there exists "'specific written language that is reasonably susceptible to interpretation as a promise' to vest the benefits." *Bouboulis*, 442 F.3d at 60 (*quoting Devlin,* 274 F.3d at 84).

37.     The Stipulation of Settlement here is certainly formal enough documentation under Second Circuit law to bind Debtors to their promise of vested life insurance benefits to class members defined by the Stipulation. (*See* Lawlor Decl., Ex. A.) The 2007 Notice of Material Modification and the 2010 New Provider Notice constitute further written communication

12

sufficient to evidence Debtors' promise of vested life insurance. (*See* Lawlor Decl., Exs. D, E.) Even in the Debtors' Motion, Debtors again acknowledge the provisions of the Stipulation of Settlement waiving Debtors' right to modify or terminate retiree benefits for the class members, and cite no other document that invalidates these vesting provisions.[6] Debtors state at paragraph 19 of the Motion:

> Paragraph 3.1 of the Stipulation appears to limit SRC's ability to accelerate the rate of reduction in the amount of life insurance for any Class Member (as defined therein). Paragraph 3.4 of the Stipulation further provides that Sears will amend the Plan and the SPD within a reasonable period after approval of the Stipulation to the extent necessary to incorporate, *inter alia*, paragraph 3 thereof. Paragraph 3.4 also appears to limit SRC's right to amend, modify, cancel or terminate any right conferred upon a Class Member, or to diminish the value of the benefit granted to Class Members under the Stipulation.

Debtors' Motion ¶ 19. Further, the Debtors produced a copy of a Securian Group Term Life Insurance Policy, effective as of January 1, 2016, which states: "Associates who were subject to the reduction schedule and who signed a release and waiver in 2002 agreeing to certain conditions regarding the reductions were not subject to the 2003 reduction. The amount that was scheduled to be reduced in 2003 was not subtracted, and was included in the final insurance amount effective on January 1, 2007." Lawlor Decl., Ex. G at SEARS_RET00000049. That language clearly references the agreement in the so-ordered Stipulation of Settlement and, at a minimum, placed

---

[6] The Board of Directors' unilateral termination of the life insurance benefits based on reservation language in the 2007 Summary Plan Description is flawed, because the Board never referenced the March 2007 Material Modification of the SPD. The sole document that the Board relied on was the 2007 SPD. The Retirees Committee has requested any documents showing that the Board was fulfilling their obligations under the Plan and Debtors have refused the Committee's request as "irrelevant." Debtors cannot begin to meet their burden to show the termination of plan benefits was consistent with a reasonable review of the Plan documents. The Committee has likewise requested Debtors' directors and officers liability insurance policy, and Debtors have refused.

the Debtors on inquiry, if not actual, notice that the policy was subject to an external 2002 "release and waiver" agreement.

38.    Prior to terminating the Death Benefit Plan, the Board of Directors proposed filing a stipulation and order with the Court regarding terminating Allstate's coverage of 13 former Sears executives, which was a separate group also covered by the Death Benefit Plan, the same Plan covering the 29,000 retirees. (Lawlor Decl., Ex. H at SEARS_RET00000002.)  If Debtors planned to bring to the Court's attention the termination of the Allstate policy, that was apparently not a vested benefit protected by the Stipulation of Settlement, Debtors surely knew or should have known that the termination of the vested retiree group could not be accomplished without this Court's approval.  Debtors completely failed to conduct their fiduciary duty under ERISA to undertake the required due diligence to review the plan documents to determine if they could terminate the Death Benefit Plan without the Court's approval.

39.    Further, even if it were possible to have a good-faith negotiation after the fact, the Debtors' modification proposal suggests that it is just going through the motions rather than actually negotiating.  The initial proposal does not even offer their retirees an allowed unsecured claim in the face amount of their terminated death benefits (ignoring the required administrative expense claim mandated by Section 1114).  As the Motion states, "the **death benefit payable to retirees who are covered under the Securian Policy is between $5,000 and $14,500**." (Motion ¶ 13 (emphasis added).)  Yet for nearly all of the 29,000 retirees affected by Debtors' wrongful termination of the Securian Policy, the Debtors have offered only a "general unsecured claim . . . of $5000" (Debtors' Motion, Ex. A), regardless of the actual death benefit for each retiree.

40.    Finally, the Debtors' modification proposal improperly classifies the retirees' claims as general unsecured claims, but under the Bankruptcy Code's plain language, those claims

are entitled to administrative expense priority status. The Bankruptcy Code is clear that "[a]ny payment for retiree benefits required to be made before a plan confirmed under section 1129 of this title is effective has the status of an allowed administrative expense as provided in section 503 of this title." 11 U.S.C. § 1114(e)(2).

> Bankruptcy Code section 1114(e), unlike section 1113(f), apparently provides for the timely payment of any retiree benefits before confirmation of a chapter 11 plan and accords such obligation administrative expense priority, regardless of when earned. *See In re Ionosphere Clubs, Inc.*, 22 F.3d at 408 (contrasting sections 1113(f) and 1114(e)); *In re Certified Air Technologies*, 300 B.R. at 368. That is, by its plain terms Bankruptcy Code section 1114(e) does not appear to make any distinction between retiree benefit obligations on account of prepetition consideration and those arising postpetition; each would be payable as an administrative expense.

*In re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 484–85 (Bankr. S.D.N.Y. 2006 (Drain, B.J.)).  The Debtors have not yet confirmed their reorganization Plan under Section 1129, but have failed (wrongfully) to pay amounts due under the Death Benefit Plan.  Some portion of the retirees' resulting claims consequently are entitled to administrative expense priority status under Section 507(a)(5).  Certainly, the Debtors are not entitled to retain the unpaid premiums to be used for its own purposes rather than to satisfy the claims of retirees. They are not general unsecured claims, as Debtors have proposed.

41.    The Retirees Committee Proposal is reasonable, provides retirees with what they are entitled to receive under Section 1114, and boils down to four principal requests which the Court should enforce as part of any modification of the Death Benefit Plan:

> i.    Payment of the full benefit owed ($5,000 to $14,500) to any beneficiary of a retiree who passed away between December 2018 and the date on which an order on the Motion becomes final (the "Breach Period") who was not paid by Securian, and an administrative reserve fund set aside to fund those amounts.

15

    ii.    Reimbursement to any retiree who purchased replacement life insurance during the Breach Period and after Securian, at the Debtors' direction, improperly notified the retiree that coverage had been terminated.

    iii.    Establishment of an administrative expense fund in the amount of the unpaid premiums of roughly $9.1 million that should have been made during the Breach Period to be distributed *pro rata* to all remaining retirees on the basis of the amount of their life insurance policies owed ($5,000 to $14,500).

    iv.    For the retirees still alive after the Breach Period, general unsecured claims in the face amount of their lost insurance benefit ($5,000 to $14,500).

42.    The Retirees Committee has also requested as a substantial contribution claim that the costs of the motion to form the Committee also be reimbursed as that expense was only made necessary by the Debtors' failure to properly seek relief under Section 1114, and is reimbursable under *In re Motors Liquidation Co.*, 447 B.R. 198 (Bankr. S.D.N.Y. 2011). The Retirees Committee contends the relief it proposes is fair and equitable to order (i)–(iii) above before providing general unsecured claims in the face amount of the lost insurance benefit ($5,000 to $14,500).

43.    The Retirees Committee notes that notwithstanding the limited exposure the estate would have from approval of the committee's proposal, it should not render the Debtors' proposed plan non-confirmable given the expected distribution to unsecured creditors in excess of $100 million.

## CONCLUSION

44.    For the reasons stated above, the Retirees Committee respectfully requests that the

Court (a) deny Debtors' Motion, and (b) grant such other and further relief as is just.


New York, New York
August 6, 2019

Respectfully submitted,


By: */s/ James N. Lawlor*
James N. Lawlor
Brad J. Axelrod
Cassandra Postighone

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
P: 212-382-3300
F: 973-741-2398
Telephone: (212) 382-3300
Facsimile: (212) 382-0050

- and -

Michael M. Mulder*
Elena N. Liveris*
THE LAW OFFICES OF MICHAEL M. MULDER
1603 Orrington Avenue, Suite 600
Evanston, Illinois 60201
Telephone: 312-263-0272

*Proposed Counsel to the Official Committee of*
*Retirees with Life Insurance Benefits of the*
*Sears Holdings Corporation, et al.*
*\*Pro hac application pending*

# ATTACHMENT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No: 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al*, | Chapter 11 |
| | (Jointly Administered) |
| Debtors. | |

**DECLARATION OF JAMES N. LAWLOR IN SUPPORT OF THE**
**RETIREES COMMITTEE'S OBJECTION TO DEBTOR'S MOTION**
**FOR MODIFICATION OF RETIREE BENEFITS**

Under 28 U.S.C. § 1746, I, James N. Lawlor, declare as follows under the penalty of perjury:

1.      I am an attorney admitted to practice in the State of New York and before the United States District Court for the Southern District of New York.

2.      I am a partner of the firm of Wollmuth Maher & Deutsch LLP ("WMD"). WMD maintains offices at, among other places, 500 Fifth Avenue, New York, New York 10110. There are no disciplinary proceedings pending against me.

3.      I respectfully submit this declaration (the "Lawlor Declaration") in support of the objection (the "Objection")[1] of the Official Committee of Retirees With Life Insurance Benefits (the "Retirees Committee") of Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors") to the Debtors' motion for modification of retiree benefits (ECF 4635) (the "Motion").

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Objection.

4.     The Retirees Committee was appointed on July 9, 2019 (ECF 4470). The Retirees

Committee selected WMD to serve as co-counsel to the Retirees Committee, subject to Court

approval (ECF 4652).

5.     Attached hereto as Exhibit A is a true and correct copy of the stipulation of

settlement with vested retiree life insurance benefits (the "Stipulation of Settlement") resulting

from the matter known as *In re: Sears Retiree Group Life Insurance Litigation*, Civil Action No.

97 C 7453 (D. Ill.) ("Sears Life Insurance Litigation").

6.     Attached hereto as Exhibit B is a true and correct copy of the Minute Order (Case

No. 1-97-cv- 07453, Dkt. 191) approving the Stipulation of Settlement at the final approval

hearing conducted on March 5, 2002 by Judge Moran.

7.     Attached hereto as Exhibit C is a true and correct copy of the letter on Sears

letterhead dated September 12, 2002 (the "2002 Sears Notice") to the class of retirees in the

Sears Life Insurance Litigation covered by the Stipulation of Settlement and impacted by the

Debtors' improper termination, notifying the retirees that Sears was "permanently restoring one

annual increment of your Sears-provided retire life insurance."

8.     Attached hereto as Exhibit D is a true and correct copy of the March 2007 Notice

of Material Modification issued to one such retiree, Thomas Shaw, which Sears had to issue as

required by ERISA to the retirees because the SPD contained an error (the "March 2007

Notice").

9.     Attached hereto as Exhibit E is a true and correct copy of a letter dated July 26,

2010, in which Sears notified the class members that the provider of the group policy had

changed to Prudential Life Insurance Company of America (the "2010 New Provider Notice").

2

10.     Attached hereto as Exhibit F is a true and correct copy of the Retirees Committee's counterproposal (the "Retirees Committee's Proposal") provided to Debtors on August 1, 2019.

11.     Attached hereto as Exhibit G is a true and correct copy of the Group Term Life Insurance Policy of Sears Holding Corporation, effective January 1, 2016, produced by Debtors in this action and bearing the document control numbers SEARS_RET00000041 – SEARS_RET00000049.

12.     Attached hereto as Exhibit H is a true and correct copy of an email regarding the Board of Directors of Sears Holdings' resolution to terminate the retiree life insurance plans, produced by Debtors in this action and bearing the document control numbers SEARS_RET00000001 – SEARS_RET00000002.

I declare under penalty of perjury that the foregoing is true and correct on this sixth day of August 2019.

/s/ James N. Lawlor

James N. Lawlor

3

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
OCT 0 9 2001

| | |
|---|---|
| IN RE: SEARS RETIREE GROUP LIFE INSURANCE LITIGATION THIS DOCUMENT RELATES TO: ALL ACTIONS | Civil Action No. 97 C 7453 Judge James B. Moran |

**NOTICE OF FILING**

**FILED**
OCT 0 5 2001
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

TO:    Michael M. Mulder
        Paul W. Mollica
        Shona B. Glink
        MEITES, MULDER, BURGER & MOLLICA
        208 South LaSalle Street, Suite 1410
        Chicago, Illinois 60604

PLEASE TAKE NOTICE that on Friday, October 5, 2001, pursuant to prior order of the Court, we filed with the Clerk's Office of the United States District Court for the Northern District of Illinois, on 20th Floor of the Dirksen Federal Building, the following documents, copies of which are hereby served on you.

1.    Stipulation of Settlement
2.    Exhibits A-H to the Stipulation of Settlement
3.    Exhibit I to the Stipulation of Settlement, Volumes 1-7

Dated:  October 5, 2001

SEARS RETIREE GROUP LIFE INSURANCE PLAN, and SEARS, ROEBUCK AND CO.

By: _____
        One of Their Attorneys

James D. Holzhauer (ARDC No. 6202746)
Gary A. Isaac (ARDC No. 6192407)
Charles F. Regan, Jr. (ARDC No. 6199007)
Britt M. Miller (ARDC No. 6256398)
Susan B. Nystrom (ARDC No. 6256460)
MAYER, BROWN & PLATT
190 South LaSalle Street
Chicago, Illinois 60603
(312) 782-0600

## CERTIFICATE OF SERVICE

I, Charles F. Regan, Jr., an attorney, hereby certify that on October 5, 2001, I caused

copies of the

1.    The foregoing Notice Of Filing
2.    Stipulation of Settlement
3.    Exhibits A-H to the Stipulation of Settlement
4.    Exhibit I to the Stipulation of Settlement, Volumes 1-7

to be served by messenger delivery upon:

Michael M. Mulder
Paul W. Mollica
Shona B. Glink
MEITES, MULDER, BURGER & MOLLICA
208 South LaSalle Street, Suite 1410
Chicago, Illinois 60604

_____
Charles F. Regan, Jr.

8906142.1

**FILED**

OCT 0 5 2001

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: SEARS RETIREE GROUP LIFE INSURANCE LITIGATION: <br><br> **This Document Relates to All Actions** | ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No. 97 C 7453

Judge Moran

**DOCKETED**

OCT 0 9 2001

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("Stipulation") is made, by and among Marie A. George, et al. ("Plaintiffs"), individually and on behalf of all Class Members, and defendants Sears, Roebuck and Co. ("Sears"), and the Sears Retiree Group Life Insurance Plan ("Plan")[1] (collectively "Defendants"), by and through their attorneys and subject to preliminary and final approval by the presiding Court. Subject to the following terms and conditions and further subject to final approval by the Court, this suit is hereby compromised and settled in full.

### LIST OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Claim Form |
| B | Second Consolidated Complaint |
| C | Memorandum of Understanding |
| D | Order Preliminarily Approving Settlement and Approving the Form and Manner of Notice |
| E | Detailed Class Notice for Delivery by First Class Mail |
| F | Summary Class Notice for Publication |

G           List of 71 Named Plaintiffs

H           List of Class Counsel

I           List of all Class members identified by Sears

## I.    THE ALLEGATIONS SETTLED BY THIS STIPULATION

Plaintiffs, in their Second Consolidated Class Action Complaint ("Complaint"),[2] alleged

that Sears violated statutory, contractual and federal common law duties and various provisions

of the Employee Income Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq.,

which Plaintiffs claimed Sears owed to the participants in the Plan.  The lawsuit was brought on

behalf of Sears retirees who were covered under the Plan, and challenged Sears' decision

announced in September 1997 (and implemented January 1, 1998) to reduce the Plan's payment

of retiree life insurance premiums in ten annual increments.  Plaintiffs contended that reduction

of Plan benefits violated express contractual promises, obligations, and fiduciary duties, and

asserted that they had been promised – and were entitled to – retiree life insurance at no further

cost to them for the rest of their lives.

Plaintiffs asserted six claims:

| | |
|---|---|
| Count I: | A claim for plan enforcement under 29 U.S.C. §1132(a)(1)(B), brought by the full class and all subclasses[3] described in the Complaint; |
| Count II: | A claim for breach of contract under federal common law and 29 U.S.C. §1132(a)(1)(B); |
| Count III: | A claim for breach of contract under federal common law and 29 U.S.C. §1132(a)(1)(B) brought only by the alleged subclasses; |

---

[2] The Complaint is appended to this Stipulation as **Exhibit B**.

[3] While the Complaint describes certain subclasses, only counts I & II were certified by the Court; no subclasses were certified by the Court.

Count IV:    A claim for equitable and promissory estoppel under federal common law and 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3);[4]

Count V:     A claim for breach of fiduciary duty under 29 U.S.C. §§1132(a)(3) and 1109(a); and

Count VI:    A claim for alternative equitable relief by the subclasses.

In their entirety, the six counts essentially assert claims on behalf of a class that the parties now agree may be described as follows:

All retired employees of Sears, Roebuck and Co. and its affiliates who have been or will be subject to reductions of retiree life insurance under the terms of Sears Retiree Group Life Insurance Plan, and who prior to the reductions had retiree life insurance in an amount greater than $5,000.

This definition includes certain persons who were not included in the class originally certified, but who were affected by Sears' 10-year reduction in life insurance, and who should benefit from the proposed Settlement. A list of class members identified by Sears is appended to the Stipulation as Exhibit I. Accordingly, the parties condition the proposed Settlement on the Court modifying the previous class definition to read as above. As before, the parties have only agreed that certification is appropriate for Counts I and II, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).[5]

---

[4] Counts IV and V were stated against Sears, Roebuck and Co. only, not against the Plan.

[5] Although the parties have not agreed to the certification of any Counts other than Counts I and II, Plaintiffs can settle all claims that class members have against Sears growing out of the reduction in retiree life insurance, even those that are not subject to class certification. That is because the claims under Counts I and II were properly certified for class treatment, and are still alive, insofar as the time for appealing the Court's grant of summary judgment to Sears on those claims has not run. Williams v. General Electric Capital Auto Lease, Inc., 159 F.3d 266, 273-74 (7th Cir. 1998), cert. denied, 527 U.S. 1035 (1999).

In addition, although the parties have only agreed to certification under Rule 23(b)(2), which does not ordinarily require notice or an opportunity to opt out, the Court has plenary power under Rule 23(b)(2) and Rule 23(d)(5) to order that both notice and an opportunity to opt out be given to class members. Lemon v. International Union of Operating Eng'r, Local No. 139, 216 F.3d 577, 582 (7th Cir. 2000); Jefferson v. Ingersoll Int'l, Inc., 195 F.3d 894, 898 (7th Cir. 1999). The parties agree that this is an appropriate case for the exercise of the Court's power.

Each and every claim asserted in the Complaint is settled as a part of this Stipulation and Settlement, and every Class Member on Exhibit I who does not validly request exclusion from this Settlement will, if this Settlement is approved by the Court, fully and finally release Defendants from any and all Claims that were asserted in the Complaint or that could have been asserted in the Complaint, including statutory and common law claims of all kinds, subject only to the exclusions set forth in paragraphs 1.20 and 18 of this Stipulation.

## II.    PROCEDURAL HISTORY

**Origination of Suit:**  In September 1997, Sears announced that retiree life insurance benefits under the Plan would be cut back for all Plan participants who retired after January 1, 1978, at the rate of 10% per year on each retiree's life insurance amount in excess of $5,000. At the end of ten years, each retiree would have a $5,000 retiree life insurance policy, regardless of original amount. Sears reserved the right to reduce benefits even further, or to terminate the Plan entirely.

Shortly after the announcement, a number of suits were filed against Sears by retirees who alleged they had been promised "free" or "paid up" life insurance for the rest of their lives. All lawsuits were eventually transferred to and consolidated in the United States District Court for the Northern District of Illinois and were assigned to Judge James B. Moran.

**Claims:**  Sears retiree life insurance benefits were (and are) governed by the terms of a plan set up by Sears many years ago. In general, the complaints alleged that Sears had breached the terms of the Plan by cutting back the amount of the life insurance; that Sears had entered into – and breached – a separate contract with Class Members concerning life insurance; and that Sears had breached its fiduciary duty to Plan participants by making materially misleading and incorrect statements about retiree benefits to Plan participants before they retired.

**Defenses:** Sears denied that it violated any statutory or common law obligation to its retirees, and asserted that it had a full legal and contractual right at all times to modify or terminate the terms of the Plan.

**Judgment Granted For Sears On Certified Claims:** In order for Plaintiffs to proceed on behalf of all retirees as a class, they were required to satisfy the Court that the case met all of the requirements provided in the Federal Rules of Civil Procedure for "certification" of class actions. After extensive briefing, the Court certified a class action only with respect to the "plan enforcement" aspects of the case, but denied class certification with respect to the breach of fiduciary duty claims and other claims brought by the Plaintiffs. The Court ultimately granted Defendants summary judgment on the "plan enforcement" claims. Because the other claims are pending, the time for appeal of the summary judgment ruling has not yet begun.

**Uncertified Claims Set for Trial:** What remained were claims for breach of fiduciary duty – claims that were *not* certified by Judge Moran for class action treatment.

There were initially 71 named Plaintiffs in the various consolidated cases, five of whom have since died. At the Plaintiffs' request, the Court directed the parties to select 12 of the 66 Plaintiffs whose cases would be tried in September 2001 on the issue of breach of fiduciary duty and promissory estoppel. The parties engaged in extensive discovery, including dozens of depositions throughout the United States of present and former Sears employees and upper level executives, in preparation for the trial. On June 1, 2001, Defendants moved for summary judgment on the claims of the 12 Plaintiffs whose claims were to be tried in September 2001. The Defendants' motion for summary judgment remained pending at the time the parties signed the Memorandum of Understanding.

**Mediation and Negotiations:**  During ongoing trial preparations, the parties began a process of negotiation and formal mediation, using a professional mediator to assist them in moving toward a settlement.  In the settlement negotiations, several of the named Plaintiffs were regular participants, along with representatives of NARSE, the National Association of Retired Sears Employees, which had taken a very active interest in the prosecution of the case.

**Memorandum of Understanding:**  On July 5, 2001, after three months of mediation and negotiations, the parties signed a Memorandum of Understanding (**Exhibit C**).  On October 10, 2001, the Court will be asked to give preliminary approval to this proposed Settlement, to approve proposed Notice to all Class Members of the terms thereof and to set a date for a Fairness Hearing.[6]

**Procedure for Final Approval:**  At the Fairness Hearing, the Court, consistent with Rule 23 of the Federal Rule of Civil Procedure, will consider the request of the parties that the proposed conditional class be certified and the Settlement be finally approved.  The Court will

---

[6] The proposed Order Preliminarily Approving Settlement and Approving the Form and Manner of Notice is attached hereto as **Exhibit D**.

8900643.9

6

consider any objections asserted to the Settlement and any requests for exclusion; rule on the petition for attorneys' fees, costs, expenses, and class representative incentive awards; and decide whether to certify the conditional settlement class and order final approval of this settlement.

## III.    RATIONALE FOR SETTLEMENT

## A.    CLASS PLAINTIFFS' REASONS FOR SETTLEMENT

Plaintiffs and Class Counsel deny each and every defense of Sears and do not admit or concede any lack of merit of the action or their entitlement to class certification. Nonetheless, Plaintiffs and Class Counsel recommend the Settlement to all Class Members for the following reasons:

1. As noted in the Procedural History, Judge Moran has denied class certification with respect to the only claims that remain viable in the case. Unless the case is settled on a "class" basis, which is what this settlement contemplates, retirees would be left with only the right to file individual suits against Sears. Such suits would be time consuming, costly, and procedurally complex. Plaintiffs and their advisors believe that only a relatively small percentage of the approximately 80,000 retirees affected by the insurance cutback would file individual suits. There would, of course, be no guarantee as to the outcome of those individual cases.

2. For all retirees, this settlement prevents Sears from making further cutbacks beyond the scheduled reduction, and it prevents Sears from eliminating the insurance benefit altogether. Without the settlement, Sears continued to reserve the right to further amend or terminate the plan. Sears could have accelerated the cutback or changed the final amount to zero, or both, at any time. This benefit accrues to all Class Members, whether or not they file a Claim Form.

3. The settlement provides an additional benefit to those who believe they were significantly misled by Sears and who sign the Claim Form. All such persons will, without having to engage in further litigation, receive at least one less annual reduction in the amount of coverage, and perhaps more (depending on the number of persons filing Claim Forms).

4. The settlement was achieved with the participation – and endorsement – of the National Association of Retired Sears Employees (NARSE), which has offered steady assistance in communicating the terms of the settlement to Sears retirees, as well as several retired Sears employees not affiliated with NARSE.

7

5.   All costs of suit will be borne by Sears; the benefit negotiated for Class Members is not diminished to pay for attorneys' fees, costs, expenses, representative plaintiff incentive awards, or costs of administration.

Neither this Stipulation of Settlement nor any document referred to herein, nor any action taken by the Plaintiffs to carry out this Stipulation is intended to be construed, nor may it be used by any person in any matter or cause whatsoever, as an admission, concession, indication, or evidence by Plaintiffs of any infirmity in claims asserted in the action.

**B.   SEARS' REASONS FOR SETTLEMENT**

Sears denies each and every claim asserted by Plaintiffs, denies all claims for damages, and denies that Plaintiffs are procedurally entitled to class certification on the remaining claims. Nonetheless, Sears is willing to settle because:

1.   Sears acknowledges the uncertainty, risks, delay and costs associated with litigation. Sears intended to pursue its pending motions for summary judgment against the 12 individual Plaintiffs whose trials are scheduled for September, and, if the motions were denied, to contest each and every aspect of the case throughout trial and beyond. If Plaintiffs had prevailed at the trial, Sears likely would have appealed the judgment. Litigation may have dragged on for years. Sears recognizes that other retirees might choose to file individual suits.

2.   Sears believes that the settlement provides substantial benefits to Class Members, and would prefer to have all Class Members receive some benefit, and to have the claims of the Class Members resolved once and for all.

3.   Sears' management wants to reunite the Sears family, and believes that this settlement constitutes an important step in consolidating the confidence and goodwill of its large retiree base.

Neither this Stipulation of Settlement nor any document referred to herein, nor any action taken by the Defendants to carry out this Stipulation is intended to be construed, nor may it be used by any person in any matter or cause whatsoever, as an admission, concession, indication, or evidence of any fault, wrongdoing, or liability of any kind on the part of the Defendants.

## IV.   SUBSTANTIVE TERMS OF SETTLEMENT

### 1.   Definitions

1.1.   **"Approved Claimant"** means a Claimant whose claim has not been challenged by Sears within 30 days after the Claim Form is received by Sears and a Claimant as to whom any challenge by Sears has been overruled by the Mediator.

1.2.   **"Certifying Class Members"** is a term used in the Memorandum of Understanding only.  It is replaced in this Stipulation with the words "Claimant" and "Approved Claimant" as elsewhere herein defined.

1.3.   **"Claimant"** means a Class Member who completes and timely files a Claim Form.

1.4.   **"Claim Deadline"** means January 17, 2002.

1.5.   **"Claim Form"** means the Claim Form sent to Class Members with the Notice of Proposed Settlement. It also means a Claim Form substantively identical to the Claim Form.

1.6.   **"Class"** means all retired employees of Sears, Roebuck and Co. and its affiliates who have been or will be subject to reductions of retiree life insurance under the terms of Sears Retiree Group Life Insurance Plan, and who prior to the reductions had retiree life insurance in an amount greater than $5,000.  The members of the class are listed on Exhibit I.

1.7.   **"Class Counsel"** means the attorneys for plaintiffs and the Class whose firms are listed at the end of this Stipulation in Exhibit H.

1.8.   **"Class Member"** means an individual member of the Class, as listed on Exhibit I.

1.9.    **"Fee Petition"** means Class Counsel's petition for an award of attorneys' fees, costs and expenses pursuant to the terms of paragraph 19 of this Stipulation of Settlement.

1.10.    **"Final Approval of the Settlement"** means the date on which the Court's final judgment with respect to all matters other than the Fee Petition becomes final.  For purposes of this definition, "final" means the later of the date of final affirmation on appeal or following a petition for writ of certiorari, if such is granted; the final dismissal of any appeal or proceeding on certiorari; or the expiration of the time allowed for the filing or noticing of any appeal or writ of certiorari involving the Court's final judgment with respect to all matters other than the Fee Petition, with no appeal being filed.

1.11.    **"Final Resolution of the Fee Petition"** means the date on which the Court's ruling with respect to the Fee Petition becomes final.  For purposes of this definition, "final" means the later of the date of final affirmation on appeal or following a petition for writ of certiorari, if such is granted; the final dismissal of any appeal or proceeding on certiorari; or the expiration of the time allowed for the filing or noticing of any appeal or writ of certiorari involving the Court's final judgment with respect to the Fee Petition, with no appeal being filed.

1.12.    **"Mediator"** means Hunter R. Hughes of Rogers and Hardin, LLP, 2700 International Tower, Peachtree Center, 229 Peachtree Street Northeast, Atlanta, Georgia, 30303-1601.

1.13.    **"Named Plaintiffs"** means the Plaintiffs listed on Exhibit G to this Stipulation.

1.14.   **"Net Present Value" or "NPV"** shall have the meaning normally ascribed to it by actuaries, subject to the conclusive actuarial assumptions stated in paragraph 22 of this Stipulation.

1.15.   **"Participation Rate"** means the number of Approved Claimants divided by the total number of Class Members.  In calculating the Participation Rate, the total number of Class Members will be based on the number of Class Members still living, according to the current records of the Sears Retiree Service Center, as of the date the Claims Form is first mailed by Sears.

1.16.   **"Principal Plan Beneficiary"** means, for each Class Member who died on or before December 31, 2002, the beneficiary receiving the highest percentage of the life insurance payment, and if there is no such individual, then the beneficiary whose given name is alphabetically first in relation to other such beneficiaries.

1.17.   **"Released Defendants"** means Sears and/or any of its current or former officers, directors, employees, related entities, affiliates, subsidiaries, divisions, stockholders, heirs, executors, representatives, auditors, experts, parent companies, agents, attorneys, predecessors, successors and assigns, whether acting for its own account or in any capacity of any kind pertaining to the Plan.  "Released Defendants" also includes the Plan, its current or former administrators, agents, fiduciaries, attorneys, auditors, experts, representatives, employees, predecessors, successors, assets, and assigns.

1.18.   **"Released Plaintiffs"** means Plaintiffs and Class Members who do not request exclusion, their heirs, beneficiaries (both under the Plan and otherwise), and assigns.

8900643.9                                    11

1.19.   **"Scheduled Reduction"** means the amount by which each Class Member's life insurance under the Plan is scheduled to be reduced each year, 1998-2007. Mathematically, a "Scheduled Reduction" is one-tenth of the difference between the original face amount of retiree life insurance under the Plan for each Class Member and $5,000.

1.20.   **"Settled Claims"** means any and all claims, counterclaims, rights and causes of action, damages, punitive or statutory damages, penalties, losses of any kind or nature, whether arising under federal, state or common law, asserted or unasserted, known or unknown, legal or equitable, including, but not limited, to all claims or counterclaims stated or which could have been stated in the Complaint or a counterclaim (whether or not asserted) and/or addressed at any point in any brief, memorandum of law or motion in this case and/or all claims arising under federal, state or common law which could be brought by or on behalf of any of the Released Plaintiffs against any Released Defendant, or which could be brought by or on behalf of any Released Defendant against any Released Plaintiff, whether individual, representative, legal, equitable, direct or indirect, or any other type or in any other capacity against the Released Plaintiffs or Released Defendants (as the case may be), insofar as such claims relate directly or indirectly to Sears' cutback of retiree group life insurance benefits as announced in 1997 and implemented in 1998, or to the Released Plaintiffs' participation in the Plan. "Settled Claims" also includes any claims for attorneys fees, costs and expenses, other than the claim for attorneys fees, costs and expenses permitted under paragraphs 17.2, 19 and 21.

1.21.   **"Settlement"** means the settlement whose terms are reflected in the Memorandum of Understanding and this Stipulation.

8900643.9                                  12

1.22.    **"Settlement Administrator"** means the third party(ies) designated by Sears to assist in the administration of this Settlement.  See paragraph 10.1.

2.    **Proposed Timetable.**

The parties agree to petition the Court for its Order setting the following deadlines by the dates stated on the following timetable:

| Date | Description |
| --- | --- |
| October 5, 2001 | File Motion for Preliminary Approval of Settlement. |
| October 10, 2001 | Preliminary Approval hearing and Order. |
| October 15, 2001 | Plaintiffs disclose records and other documents set forth in Local Rule 54.3(d)(1)-(4) that are requested by Sears. |
| November 1, 2001 | Mail Notice |
| November 8, 2001 | Publish Newspaper Notices |
| November 12, 2001 | Sears disclose records and other documents called for under Local Rule 54.3(d)(5)(A)-(D) that are requested by Plaintiffs. |
| November 19, 2001 | Parties are to identify remaining disputes about fees and expenses, as set forth in third paragraph of Local Rule 54.3(d)(5). |
| December 7, 2001 | Plaintiffs submit to Sears their portion of Joint Statement Regarding Fees and Expenses, as set forth in Local Rule 54.3(e). |
| December 10, 2001 | Deadline for receipt of objections and Requests for Exclusion. |
| December 17, 2001 | Sears submits to Plaintiffs its portion of Joint Statement Regarding Fees and Expenses, as set forth in Local Rule 54.3(e). |
| December 24, 2001 | Motion for Attorneys' Fees, Costs and Expenses and Class Representative Incentive Awards filed. |
| January 7, 2002 | Deadline for Sears to exercise option to cancel settlement. |
| January 11, 2002 | Brief in Support of Settlement Approval/Responses to Objections filed. |
| January 17, 2002 | Deadline for submission of Claim Forms. |

8900643.9

13

January 28, 2002      Opposition to Motion for Attorneys' Fees, Costs, Expenses, and Incentive Awards.

February 11, 2002     Reply to Opposition to Motion for Attorneys' Fees, Costs, Expenses and Incentive Awards.

[To be set by court]  Fairness hearing and ruling on Motion for Attorneys' Fees, Costs, Expenses, and Class Representative Incentive Awards.

3.      **Creation of Permanent Retiree Life Insurance Benefit for Class Members.**

Defendants agree that:

3.1.    Defendants will not accelerate the rate of reduction in the amount of life insurance for any Class Member beyond that announced in September 1997 and communicated to retirees in the form of "Your Personalized Retiree Life Insurance Information and Response Form";

3.2.    For Approved Claimants, Defendants will not reduce their retiree life insurance amounts to less than the total of $5,000 plus any life insurance reductions foregone and amounts restored, if any, under paragraph 8 below; and

3.3.    For Class Members who are not Approved Claimants, Defendants will not reduce their retiree life insurance amount to less than $5,000.

3.4.    Except as expressly provided herein, this Stipulation of Settlement is not subject to any reservation of rights or unilateral change of any kind by Sears. Within a reasonable period after the Final Approval of the Settlement, Sears will amend the Plan and Summary Plan Description to the extent necessary to incorporate paragraphs 3.1, 3.2, 3.3, 7, and 8 of this Stipulation. Sears agrees that any language preserving Sears' right to amend, modify, cancel or terminate the terms of the Plan, both now and in the future, shall not include the right to amend, modify, cancel or terminate any right conferred upon

8900643.9                            14

to Class Members by the terms of this Stipulation of Settlement, or to diminish the value

of the benefit conferred to Class Members and Approved Claimants in this Stipulation.

### 4.    Modification of Class Definition

4.1    The parties agree that in order to implement this Stipulation of Settlement, they

will mutually petition the Court to modify the definition of the class certified pursuant to Fed. R.

Civ. P. 23(a) and 23(b)(2) for Counts I and II, as follows:

> All retired employees of Sears, Roebuck and Co. and its affiliates who have been or
> will be subject to reductions of retiree life insurance under the terms of Sears Retiree
> Group Life Insurance Plan, and who prior to the reductions had retiree life insurance
> in an amount greater than $5,000.

The parties have not agreed to class certification of any Counts other than Counts I and II.

4.2    A list of the class members identified by Sears is appended to the Stipulation as

Exhibit I. Sears warrants and represents that to the best of its knowledge, after due inquiry, that

all members of the class as herein defined are listed on Exhibit I. Plaintiffs are entering into this

settlement based on this representation and warranty.

4.3    If it is discovered by September 1, 2002, that a person who satisfies the class

definition set forth in paragraph 4.1 was not included in Exhibit I, Sears agrees that (a) if such

person is still alive, he or she shall be entitled to (i) submit a Claim Form within 75 days of being

sent one, and (ii) enjoy the benefits of paragraph 3.1, 3.3, and 3.4 whether or not he or she

submits a Claim Form; or (b) if such person has died, his or her Principal Plan Beneficiary shall

be entitled to receive a $100 gift card under the conditions set forth in paragraph 9.

4.4    In addition, if it is discovered by September 1, 2002, that more than 100 persons

who satisfy the class definition set forth in paragraph 4.1 were not included in Exhibit I, then the

provisions of paragraph 8 and Tables 2 and 3 shall be modified on a pro rata basis. Any disputes

regarding such modification shall be submitted to the Mediator for his binding resolution.

8900643.9                                    15

4.5     The provisions of paragraphs 4.3 and 4.4 shall be the sole remedy for the violation of the representation and warranty set forth in paragraph 4.2.

## 5.   Settlement Conditional

This Stipulation is subject to and conditioned upon the Court's Preliminary and Final Orders approving the Settlement and Notices to the Class.

## 6.   Claim Forms, Claimants and Approved Claimants

6.1.    Each Class Member may participate in the Settlement benefits described in paragraphs 7 and 8 hereof by properly completing and timely filing the sworn Claim Form attached hereto as **Exhibit A** (subject to any modifications made by the Court upon preliminary approval) on or before the Claim Deadline.

6.2.    Class Members who complete and timely file a Claim Form on or before the Claim Deadline are referred to in this Stipulation as "Claimants."

6.3.    Class Members who submit Claim Forms shall be given a reasonable opportunity to cure missing or inconsistent information on timely filed Claim Forms.

6.4.    Sears may challenge Claim Forms only as set forth in paragraph 17.

6.5.    Claimants whose Claim Forms are not timely challenged by Sears under paragraph 17.1 hereof, or whose Claim Forms are upheld after a timely challenge by Sears are referred to in this Stipulation as "Approved Claimants."

## 7.   Elimination of Scheduled Reduction(s) for Approved Claimants

Sears will not make the Scheduled Reduction in the face amount of Retiree Life Insurance for Approved Claimants in the year 2003. Sears will resume making the Scheduled Reductions in the same amounts as before for Approved Claimants in the year 2004 (at the earliest) or at such later date as is determined by the provisions set forth in paragraph 8 of this

Stipulation.  Scheduled Reductions will cease for all Class Members in the year 2007.  The final insurance face value for Approved Claimants will not be less than $5,000 plus the amount of one Scheduled Reduction.

7.1.   It is the intention of the parties hereto that the minimum benefit for Approved Claimants above and beyond the benefit created by paragraph 3 hereof, and subject to additional benefit as described in paragraph 8, can be illustrated in the example depicted in **Table 1**.

| Table 1 |
| :---: |
| Example |
| **_Minimum Effect of Settlement on an Approved Claimant with a $15,000 Policy Before January 1, 1998_** |

| Year | Old Reduction Schedule | Reduction Schedule Under Proposed Settlement Agreement |
| :--- | :---: | :---: |
| Before 1998 | 15,000 | 15,000 |
| 1998 | 14,000 | 14,000 |
| 1999 | 13,000 | 13,000 |
| 2000 | 12,000 | 12,000 |
| 2001 | 11,000 | 11,000 |
| 2002 | 10,000 | 10,000 |
| 2003 | 9,000 | 10,000   freeze |
| 2004 | 8,000 | 9,000 |
| 2005 | 7,000 | 8,000 |
| 2006 | 6,000 | 7,000 |
| 2007 (Final) | 5,000 | 6,000 |
| | Total of 10 reductions; final insurance amount $5,000 | Total of 9 reductions; final insurance amount $6,000 |

Effect of settlement on a particular Approved Claimant obviously will vary.

8.   **Elimination of Additional Scheduled Reductions or Portions Thereof Under Certain Circumstances for Approved Claimants**

8.1.   If the net present value ("NPV") (calculated with the assumptions set forth in paragraphs 1.14 and 22) of the cost to Sears of foregoing the Scheduled Reduction in the face amount of retiree life insurance for the Approved Claimants in the year 2003 is greater than $28 million, then Sears shall pay the amount in excess of $28 million

required to ensure that all Approved Claimants receive such Scheduled Reduction in the year 2003. The parties agree that $34.2 Million is a rough estimate of the net present value of eliminating the scheduled 2003 reduction for 100% of Class Members. If the NPV of the cost to Sears of foregoing the Scheduled Reduction in the face amount of retiree life insurance for the Approved Claimants in the year 2003 is less than the Guaranteed Minimum Amounts set forth in Table 2, then Sears will forego Scheduled Reductions of the face amount of life insurance in the subsequent year or years for Approved Claimants in a pro rata amount for each Certifying Class Member, to the extent necessary so that the NPV of the total Scheduled Reduction foregone by Sears equals the applicable Minimum Amount as calculated in Tables 2 and 3. In the event that the NPV of the total Scheduled Reductions foregone by Sears as set forth in the preceding sentence is less than such Minimum Amount set forth in Table 2, then Sears shall restore on a pro rata basis, the amount of any previous life insurance benefits it reduced for Approved Claimants. In the event that the NPV of the total Scheduled Reductions foregone and amounts restored is still less than such Minimum Amount, then Sears shall pay any remaining amounts in cash, on a pro rata basis, to all Approved Claimants unless the remaining amount is less than $1.5 million. If the amount is less than $1.5 million, then Sears shall donate, by no later than July 1, 2003, the difference between the applicable Minimum Amount set forth in Table 2 and the NPV of the total Scheduled Reduction foregone by Sears, to one or more organizations mutually agreed upon by the parties that are tax exempt under section 501(c)(3) of the Internal Revenue Code.

8.2. As set forth in Table 2, for Participation Rates between 30% and 50%, the corresponding Guaranteed Minimum Amount shall equal $22 million plus $300,000 for

every percentage point or fraction of a percentage point above $30%. For example, if the Participation Rate is 34.01%, the Guaranteed Minimum Amount will be $23.5 million ($22 million plus 5 x $300,000).

| Table 2 | |
|---|---|
| **Participation Rate** | **Guaranteed Minimum Amount** |
| 50% or higher | $28 Million |
| 49% | $27.7 Million |
| 48% | $27.4 Million |
| 47% | $27.1 Million |
| 46% | $26.8 Million |
| 45% | $26.5 Million |
| 44% | $26.2 Million |
| 43% | $25.9 Million |
| 42% | $25.6 Million |
| 41% | $25.3 Million |
| 40% | $25 Million |
| 39% | $24.7 Million |
| 38% | $24.4 Million |
| 37% | $24.1 Million |
| 36% | $23.8 Million |
| 35% | $23.5 Million |
| 34% | $23.2 Million |
| 33% | $22.9 Million |
| 32% | $22.6 Million |
| 31% | $22.3 Million |
| 30% or less | $22 Million |

8.3.   The parties agree that the examples set forth in **Table 3** correctly reflect their mutual understanding as to application of the provisions of paragraph 8 in three hypothetical situations, which are intended to be illustrative, but not exhaustive.

---

**Table 3**

**Examples for Paragraph 8**

*Example 1*
Suppose the Participation Rate is 42.3% and the NPV of foregoing the Scheduled Reduction in the amount of retiree life insurance for Approved Claimants is $23,700,000. As shown on Table 2, Sears will pay a Guaranteed Minimum Amount of $25,900,000 ($22,000,000 + 13 x $300,000) in NPV. $23,700,000 of this guaranteed $25,900,000 will be used to forego 100% of the Scheduled Reductions for Approved Claimants in 2003, leaving $2,200,000 to be applied in 2004. If the NPV of foregoing a full year's reduction in 2004 is $22,600,000, then Sears will forego approximately 9.7% ($2,200,000/$22,600,000) of the Scheduled Reduction for 2004.

*Example 2*
Again suppose the Participation Rate is 42.3%. Suppose the NPV of foregoing the Scheduled Reduction in the amount of retiree life insurance for Approved Claimants in 2003 is $27,100,000. Since $27,100,000 exceeds $25,900,000 (the Guaranteed Minimum Amount for the Participation Rate shown in Table 2), Sears will forego the Scheduled Reduction for all Approved Claimants for year 2003 only.

*Example 3*
Suppose the Participation Rate is 72.0%, and the NPV of foregoing the Scheduled Reduction in the amount of retiree life insurance for Approved Claimants is $29,400,000. Since $29,400,000 exceeds $28.0 million (the Guaranteed Minimum Amount for 50% or higher participation in Table 2), Sears will forego the Scheduled Reduction for all Approved Claimants for year 2003 only.

---

**9.   Gift Cards to Estates of Deceased Class Members**

At Sears' expense, Sears shall distribute one unrestricted Sears gift card in the amount of $100 to the Principal Plan Beneficiary of each Class Member whose death occurs between January 1, 1998 and December 31, 2002, inclusive.

9.1.   Only one card will be distributed per estate.

the administrator or executor[trix] of such estate.   As is Sears' practice with respect to gift cards sold to consumers, the card will be a bearer instrument.

9.3.   Gift cards shall be distributed no later than sixty (60) days after the date of Final Approval of the Settlement for those Class Members who died at least sixty (60) days prior to the date of Final Approval of the Settlement.  For each other eligible representative/estate, such gift card shall be distributed within sixty (60) days after December 31, 2002, or as soon thereafter as practicable.

9.4.   The representatives/estates of Named Plaintiffs are not eligible for gift cards.

9.5.   The parties shall seek as a part of the Order of Final Approval the Court's approval of a procedure and a specific provision providing that Sears shall have no further obligation or liability in respect of any such gift card that has been issued and distributed in accordance with the foregoing subparts.

## 10.   Settlement Administration

To the extent necessary to insure compliance with the requirements of ERISA, Rule 23 of the Federal Rules of Civil Procedure, and the Orders of the United States District Court for the Northern District of Illinois, Sears and a third-party designee ("Settlement Administrator") shall be responsible for administering the settlement.

10.1.   Subject to the consent of the Liaison Counsel appointed by the Court, Sears shall select and retain one or more third parties with class action settlement administration experience to act as Settlement Administrator and to assist in the administration of this Settlement.

8900643.9                                                    22

10.2.    Sears shall have the right, but is not required, to select MetLife as the Settlement Administrator.

10.3.    In the event the parties cannot agree on a Settlement Administrator, the Settlement Administrator shall be chosen by the Mediator.

10.4.    Except as otherwise expressly provided herein, Sears shall have the right to designate which portions of the Settlement it will administer directly, if any, and which portion(s) will be delegated to the Settlement Administrator, except that incoming calls and letters involving questions about the Settlement from Class Members shall be handled by the Settlement Administrator, and not by Sears.

10.5.    Within thirty (30) days of the date of execution of this Stipulation, Sears shall advise Plaintiffs in writing of its proposed Settlement Administrator(s) and its proposed allocation of duties as between Sears and the Settlement Administrator (the "Allocation Notice").  If Plaintiffs disagree with Sears' allocation of such administrative responsibilities, Plaintiffs may seek resolution by the Mediator of all such disputes, with each party using best efforts to resolve such disputes within twenty (20) days after Plaintiffs' receipt of the Allocation Notice.

## 11.    Mailing of Detailed Notices and Claim Form

Notice of the proposed Settlement, the Fairness Hearing, Class Members' rights to object or request exclusion, together with a copy of the Claim Form will be mailed by first class mail to each Class Member by Sears or the Settlement Administrator on or before November 1, 2001.

11.1.    The Notice shall be in the form attached hereto as **Exhibit E**, subject to any changes required or approved by the Court.

11.2.    The first class envelope containing the Notice and Claim Form shall be marked with a clear, conspicuous and bold identification on the front and back of the envelope alerting recipients that it contains an **"Important Class Action Settlement Notice and Claim Form for the Sears Retiree Group Life Insurance Litigation from the Clerk of United States District Court,"** and shall bear a return address which shall be the same address as the address shown on the Claim Form and in the instructions concerning the Request for Exclusion set out in the Notice (see paragraph 11.6).

11.3.    The Claim Form shall be blue in color, and no other materials within the mailing shall be of the same color.  Downloaded Claim Forms from the AARP and NARSE websites do not need to be blue.

11.4.    The mailing containing the Notice and Claim Form may also contain one edition of the Sears Retiree Newsletter at the discretion of Sears.

11.5.    The Notice of Settlement will also be sent by first class mail to the last known address of all named beneficiaries of Plan life insurance for those retirees who were Class Members as of January 1, 1998, had the Class been certified as of that date, but who have since died.

11.6.    As part of their administrative obligations, Sears and/or the Settlement Administrator shall, among other things, keep records of all Class Members (or in the case of deceased Class Members, the last known address of their respective representative/estates) to whom Notices were mailed which were returned as undeliverable, and shall undertake reasonable efforts to find the current address or otherwise provide the best practicable notice to Class Members and the representative/estate of Class Members whose Notices were returned undelivered.

11.7.    Copies of all records and notification efforts shall be provided upon request to Plaintiffs' counsel and/or the Court at Sears' expense.

11.8.    Upon preliminary approval of this Settlement by the Court, Sears or the Settlement Administrator shall establish a post office box in the name of the Clerk of Court for return of the Claim Forms.   Representatives of Class Counsel and Sears' counsel shall copy and log in all Claim Forms and from time to time provide a list, *inter alia*, to the Settlement Administrator.

## 12.    Publication of Summary Notice of Settlement

A summary Notice of the Settlement in form attached hereto as **Exhibit F** shall also be published once in the *Chicago Tribune*, once in the *Chicago Sun-Times*, and once in a major daily newspaper of general circulation in each of the following cities:   Dallas, Los Angeles, Miami, and Phoenix.

12.1.    The Notice shall be at least one-half page in size.

## 13.    Internet Availability of Claim Form

The National Association of Retired Sears Employees ("NARSE") and the American Association of Retired Persons ("AARP") shall be permitted to place the Notice of Settlement and a copy of the Claim Form (in a downloadable format) on their websites.

13.1.    Despite electronic availability of the Claim Form, Claim Forms must be filed in hard copy form only.   Hard copy filings shall be identifiable and traceable through the use of a bar code, social security number, or otherwise to ensure ease of administration and so that any duplicate filings may readily be identified. In the event such administrative controls cannot reasonably be established with respect to the NARSE and AARP websites' Claim Forms, the Claim Forms shall only be obtainable from Sears,

the Settlement Administrator, Plaintiffs' counsel, and any other Court-approved designees.

## 14.    Toll Free Telephone Line for Class Member Inquiries

The Settlement Administrator shall be required to establish a toll free call-in procedure by which Class Members may obtain independent information and responses to inquiries about the settlement claim procedure.   All such calls, together with any letters containing such inquiries, shall be handled by the Settlement Administrator and not by Sears.

14.1.    A record of the calls and responses shall be provided upon request to Class Counsel and the Court at Sears' expense.

14.2.    Sears and the Settlement Administrator shall develop, in conjunction with the active members of the Steering Committee (Michael M. Mulder, Wood R. Foster, Jr., and Arthur T. Susman) a script of responses to questions that the Settlement Administrator may be expected to receive concerning the settlement claim procedure. Class Members raising questions that are of a legal nature and that are not covered the script will be referred to Class Counsel at a toll-free number.

14.3.    The Settlement Administrator shall be staffed and equipped to enable it to make a good faith effort to have all calls answered by an operator within two minutes of the call being received and in a manner similar to the manner in which Sears handled calls in response to its 1997 announcement of changes to the Plan.

14.4.    The toll free line shall be maintained until January 24, 2002.

**15.    Deadlines for Mailing of Objections, Requests for Exclusions, Claim Forms**

15.1.    Subject to the approval of the Court, the deadline by which Class Members' Objections and Requests for Exclusions must be received is December 10, 2001.

15.2.    Subject to the approval of the Court, the deadline for receipt of the Claim Forms shall be January 17, 2002.  Sears shall have the discretion to accept Claim Forms received after that date.

**16.    Sears' Option to Cancel Settlement and Related Tolling Provisions**

Sears shall have the right to cancel this Settlement if more than 1,000 Class Members validly request exclusion from the Class.  This right to cancel must be exercised by Sears in writing (addressed to Class Counsel and the Court) by January 7, 2002 or within 20 days after the deadline for the submission of Requests for Exclusion, whichever is later.

16.1.    In the event Sears exercises its option to cancel, Sears will remain responsible for all administrative costs incurred up to the date of cancellation.

16.2.    In the event Sears exercises its option to cancel, the parties shall, as of a date thirty (30) days after Sears' timely delivery of Notice of Cancellation to Class counsel and the Court, be considered in all possible respects to be restored to the *status quo ante* as of June 5, 2001.  In such event, the parties will promptly and jointly request a further scheduling conference with the Court.

16.3.    Sears agrees to toll the statute of limitations, effective as of June 5, 2001, for all claims that Plaintiffs or the Class have or could have brought in this litigation, or that any Named Plaintiff or Class Member might assert arising out of Sears' reduction of life insurance benefits under the Plan.

16.4.    Tolling will come to an end as of the date of the Final Approval of the Settlement for any Named Plaintiff or Class Member who requests to be excluded from the Class.

16.5.    In the event the Court denies either preliminary or final approval of this Settlement, tolling will end as to all Class Members thirty (30) calendar days after the Court enters its order denying such approval, and the parties will be considered in all possible respects to be restored to their positions as of June 5, 2001.

## 17.    Limitation on Further Discovery; Exceptions

Because Plaintiffs and Sears have both conducted extensive discovery in the Retiree Life Litigation regarding the merits of the retirees' claims, no further discovery regarding the fairness of the Settlement is necessary or will be allowed to the parties. All scheduled discovery activity and briefing deadlines are suspended, subject to further order of the Court.

17.1.    Notwithstanding the foregoing, Sears shall be permitted to depose a Claimant regarding the statement made in his or her Claim Form for purposes of challenging the claim where there is substantial evidence of fraud by that Claimant. Before Sears shall be permitted to depose a Claimant regarding the statement made in the Claim Form, Sears must share its substantial evidence of fraud with the Mediator (or other person agreed to by the parties) and Class Counsel, who, at their option, may represent the Claimant, and the Mediator (or other person) must determine that such evidence is indeed substantial and warrants a deposition. If the Mediator determines such evidence is substantial, Sears shall take the Claimant's deposition within sixty days of challenging the claim.

17.1.1 Any challenge to a Claim Form by Sears shall be made within thirty (30) days of Sears' receipt of the Claim Form.

17.2. If Class Counsel chooses to represent a Claimant whose Claim Form is challenged by Sears, and the Mediator determines that the Claimant's claim shall be honored, whereupon the Claimant becomes an Approved Claimant, Sears shall pay Class Counsel reasonable fees determined by the Mediator in addition to any fees awarded pursuant to paragraph 19 hereof.

17.3. For good cause, as determined by the Mediator, the parties shall be permitted reasonable mutual discovery regarding the reasonableness of Class Counsel's Fee Petition, as submitted under the terms of paragraph 19.

**18. Settled Claims Mutually Released and Dismissed.**

It is stipulated and agreed that subject to the final approval of this Settlement, the finality of any dismissal order (which shall contain a release) entered approving the proposed Settlement, and the terms and conditions set forth herein, the Settled Claims are hereby compromised, settled, released and discharged with prejudice. The Released Defendants shall have no further or other liability or obligation to any of the Released Plaintiffs with respect to the Settled Claims, and the Released Plaintiffs shall have no further or other liability or obligation to any of the Released Defendants with respect to the Settled Claims, except as provided under the terms of this Stipulation of Settlement. The Released Plaintiffs, upon final approval of this Settlement, fully, finally and forever settle and release the Settled Claims against the Released Defendants. The Released Defendants, upon the date of Final Approval of the Settlement, fully, finally and forever settle and release the Settled Claims against the Released Plaintiffs.

18.1.   This Release does not extend to ongoing rights established under this Stipulation.   The release of Settled Claims does not release the right to enforce the Settlement.

18.2.   Because the Release extends to claims that presumably exist but are unknown, each Class Member shall be deemed to waive any and all provisions, rights and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims, including but not limited to any and all rights and benefits conferred by California Civil Code § 1542, which reads: **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

18.3.   Excluded from the exchange of releases in this paragraph 18 are all claims that are not Settled Claims.

**19.    Payment of Attorneys' Fees and Pre-Settlement Costs and Expenses by Sears**

Prior to or as a part of the Court's Order of any final approval of this Settlement, the active members of the Steering Committee (Michael M. Mulder, Wood R. Foster, Jr., and Arthur T. Susman) shall have submitted and the Court shall have ruled on Class Counsel's consolidated petition for an award of attorneys' fees, costs and expenses ("Fee Petition") and shall award Class Counsel attorneys' fees, costs, and expenses in an amount no less than One Dollar ($1.00) and no greater than Five Million Four Hundred Thirty Thousand Dollars ($5,430,000), such amount to be paid solely by Sears, in addition to any other benefit conferred by this Stipulation.

19.1.    If the Court preliminarily approves this settlement, Class Counsel will, on or before December 24, 2001, petition the Court for approval of reasonable compensation for their services and costs. Sears specifically reserves the right to contest the amount of Class Counsel's Fee Petition. The amount of attorneys' fees, costs and expenses finally approved will be paid by Sears to Class Counsel no later than 30 days after the Final Resolution of the Fee Petition. The provisions of this paragraph 19.1 are subject to the provisions of paragraph 19.2.

19.2.    In Class Counsel's Fee Petition, it is agreed that the Court shall be permitted to award a fee, costs and expenses as if Class Counsel were petitioning against a common fund in the value of the settlement, even though it is Sears that will ultimately pay any fees and expenses awarded. Sears shall not be permitted to argue or assert, nor shall the Court consider, that Class Counsel are limited to lodestar fees on the grounds that it is Sears, rather than the fund (i.e., Plaintiffs' counsel's clients) that is paying the fee, under City of Burlington v. Dague, 505 U.S. 557 (1992) or otherwise. Nor shall Sears argue that common fund principles are not available to the Court, in the Court's discretion, with respect to any fee award. Sears shall be permitted to oppose Class Counsel's Fee Petition on any other grounds permitted by law. Subject to the foregoing, Sears can argue, for example, that paying a percentage is inappropriate in this case, or that awarding lodestar fees or a multiplier of lodestar fees is inappropriate, among other arguments.

19.3.    Any attorneys' fees, expenses and cost payments shall be paid into an account designated by the active members of the Steering Committee. Funds from said account shall be allotted among Class Counsel by the active members of the Steering

Committee. If a dispute arises over the allocation of Plaintiffs' attorneys' fees, costs or expenses, the active members of the Steering Committee may petition the Court for a ruling. Defendants shall have no right to participate in any such allocation petition.

20.     **Class Representative Incentive Payments**

Subject to Court approval, each of the 65 living Named Plaintiffs who does not request exclusion, and each of the six representatives/estates of the Named Plaintiffs who are no longer alive and whose representatives/estates do not request exclusion (for a total of 71 living and deceased Named Plaintiffs) will be given an incentive payment of $5,000 by Sears within sixty (60) days after Final Approval of the Settlement. The names and addresses of the 71 living and deceased Named Plaintiffs are attached at **Exhibit G**.

21.     **Costs and Expenses of Settlement Administration; Limitations**

Sears shall be responsible for all costs and expenses of administration of this Settlement, including, but not limited to, actuarial, administrative, mediation and notice expenses.

21.1.   Such costs and expenses shall include reasonable actuarial costs not in excess of five thousand dollars ($5,000.00) for an independent actuary jointly selected by the parties to review Sears' determination of actuarial issues in conjunction with verification of the relief under the Settlement.

21.2.   Reasonable costs and expenses advanced by Class Counsel shall be reimbursed within sixty (60) days of their tendering the reimbursement statement to Sears. However, whenever reasonably possible, Counsel shall advise Sears in advance of their intention to incur any such reimbursable costs and expenses in excess of $150. Sears agrees to pay the fees of the actuary for the class, in an amount not to exceed

$5,000.00, in conjunction with the calculations performed in connection with those class members who were receiving premium waiver life insurance as of January 1, 1998, .

21.3.   Sears shall not be responsible for costs and expenses relating to the NARSE and AARP websites.

## 22.   Conclusive Actuarial Assumptions

In calculating NPV or making any other actuarial calculations required under this Stipulation, the following assumptions shall be deemed conclusive:

22.1.   The number of retirees as January 1, 2001 shall be used for all calculations.

22.2.   Calculations shall be made as of January 1, 2001.

22.3.   An annual interest rate of 8.25% shall be used.

22.4.   Mortality Table UP-94, Sex Distinct, shall be used.

22.5.   Notwithstanding the foregoing, calculation of the Participation Rate is subject to the provisions of paragraph 1.15 and paragraph 8.

## 23.   Resolution of Disputes

Any disputes arising under this Stipulation, including disputes regarding the drafting of ancillary documents necessary to complete this settlement, and any disputes regarding claims issues, shall be subject to binding arbitration by the Mediator.

23.1.   The parties agree to abide by any procedures that may unilaterally be established by the Mediator for resolving disputes.

23.2.   No party shall have the right of appeal to any tribunal from the Mediator's resolution of issues.

24.    **Persons Receiving Premium Waiver Life Insurance**

24.1    Any class member who (1) was receiving life insurance under the premium waiver provision of the Plan; (2) became or becomes eligible to receive retiree life insurance under the Plan; (3) was not notified of the opportunity to become a participant in the Group Retiree Life Insurance Replacement Plan ("the Replacement Plan"); and (4) is alive as of the date of this Stipulation of Settlement, shall be given the opportunity to become a participant in the Replacement Plan by paying the premiums retroactive to January 1, 2001, for the life insurance available to such class member under the Replacement Plan through 2001. Sears shall provide liaison further identification of these class members by October 22, 2001. Such payment shall be made within 90 days of the class member's being notified of the opportunity to become a participant in the Replacement Plan, or the class member shall forever lose the opportunity to become a participant in the Replacement Plan. Upon becoming a participant in the Replacement Plan, the class member shall be subject to all of the terms of the Replacement Plan. The benefits in this paragraph 24.1 shall be in addition to the other benefits under this Settlement.

24.2    The beneficiaries of any class member who (1) was receiving life insurance under the premium waiver provision of the Plan; (2) became eligible to receive retiree life insurance under the Plan; (3) was not notified, during his or her lifetime, of the opportunity to become a participant in the Group Retiree Life Insurance Replacement Plan ("the Replacement Plan"); and (4) is deceased as of the date of this Stipulation of Settlement, shall be entitled to receive, in addition to any benefit received under the Plan, an amount equal to the insurance the class member could have purchased under the Replacement Plan, less the cost of replacement insurance. For example, if a retiree with $15,000 of life insurance in 1997 came off premium waiver in 1999 and passed away in that same year, then his beneficiary would have received

8900643.9                                    34

$13,000 in life insurance. As a result of the Settlement, the beneficiary shall be entitled to receive an additional $2,000 payment less the cost of the replacement insurance premiums paid if the deceased had been presented with the opportunity and purchased replacement insurance in 1999. Sears shall provide liaison counsel further identification of these class members and their beneficiaries by October 22, 2001. The benefits in this paragraph 24.2 are in addition to the benefits in paragraph 9.

### 25.    General Terms Governing this Stipulation

25.1.    **Exhibits; Headings**. The terms of this Stipulation include the terms set forth in each of the exhibits that are attached hereto and incorporated by reference as though fully set forth herein. All exhibits to this Stipulation shall be considered an integral part of this Stipulation, although changes and insertion of dates in the Class Notices approved by the Court that do not materially change the terms of the Stipulation shall not constitute a change in terms. The descriptive headings of any paragraphs or sections of this Stipulation are inserted for convenience of reference only and do not constitute separate terms of this Stipulation.

25.2.    **Modification**. This Stipulation may be amended or modified only by written instruments signed by (1) the Defendants or their counsel and (2) those Named Plaintiffs who, as of the date of such amendment or modification, have not requested exclusion from the Settlement, or the counsel for such Named Plaintiffs.

25.3.    **Integration**. This Stipulation and its exhibits constitute the entire agreement between the parties. No representations, warranties or inducements have been made to any party concerning this Stipulation or its exhibits other than the

representations, warranties and covenants contained and memorialized in such documents.

25.4. **Drafting**. The parties agree that no single party shall be deemed to have drafted this Stipulation or any portion thereof, for purposes of *contra proferentem*. This Stipulation is the collaborative effort of attorneys for all parties.

25.5. **Authorization**. Counsel for all parties are expressly authorized by the parties whom they represent to enter into this Stipulation and to take all appropriate action required or permitted to be taken by such parties pursuant to this Stipulation in order to effectuate its terms, and to execute any other documents required to effectuate the terms of this Stipulation.

25.6. **Successors**. This Stipulation shall be binding upon and inure to the benefit of the successors, assigns, heirs and agents of the parties hereto.

25.7. **Cooperation**. Parties and their attorneys will cooperate with each other in good faith to effectuate the implementation of this Stipulation.

25.8. **Fairness**. The parties mutually believe that this Stipulation is fair and reasonable under the circumstances presented and have arrived at the terms of this Stipulation in the course of extensive arm's-length negotiations.

25.9. **Continuing Jurisdiction**. This Court shall retain continuing jurisdiction over all matters related to the administration of the terms of this Stipulation and Settlement and over the enforcement, construction and interpretation of the Stipulation and the Settlement and over the Named Plaintiffs, Defendants, and all Class Members with respect to matters relating hereto.

25.10. **Further Hearings.**    The dates for hearings before the Court may be continued by the Court without further notice to the Class or any Class Member.

This 5th day of October, 2001.

COUNSEL FOR PLAINTIFFS:

Michael M. Mulder, Esq.
Meites, Mulder, Burger & Mollica
208 South LaSalle Street - Suite 1410
Chicago, IL 60604

Wood R. Foster, Jr., Esq.    w/permission
Siegel, Brill, Greupner, Duffy & Foster, P.A.
1300 Washington Square
100 Washington Avenue South
Minneapolis, MN 55402

Charles R. Watkins, Esq.    w/permission
Susman & Watkins
Two First National Plaza, Suite 600
Chicago, IL 60603

8900643.9

37

COUNSEL FOR DEFENDANTS SEARS, ROEBUCK AND CO. and SEARS RETIREE GROUP LIFE INSURANCE PLAN:


Peter J. Brennan, Esq.
Associate General Counsel


Charles F. Regan, Jr., Esq.
Mayer, Brown & Platt
190 South LaSalle Street
Chicago, IL 60603

# EXHIBIT B

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7453 | **DATE** | 3/5/2002 |
| **CASE TITLE** | In Re: In Re: Sears Retiree Group Life etc | | |

**MOTION:**  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at ____

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Fairness hearing held. Plaintiffs' unopposed motion to file corrected brief is granted. Defendants' motion for leave to file a revised statement regarding the fees claimed by Schiffrin & Barroway is granted. Plaintiffs' motion for final approval of settlement is granted. (DRAFT ORDER TO FOLLOW)

(11)  ☐  [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 0 6 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 191 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | CLERK U.S. DISTRICT COURT | date mailed notice | |
| WAH | courtroom deputy's initials | 02 MAR -5 PM 4: 30 | Date/time received in central Clerk's Office | mailing deputy initials |

# EXHIBIT C

## SEARS RETIREE LIFE INSURANCE

1840

PAUL J. DERR

Dear Paul J. Derr:

Our records indicate that you filed a claim in the Sears Retiree Life Insurance settlement. Under the terms of this settlement, Sears is permanently restoring one annual increment of your Sears-provided retiree life insurance. This means that the amount of coverage you have will not reduce in 2003. In other words, as a result of the settlement, the amount of life insurance you have each year going forward will be greater by one annual increment than originally scheduled. Attached is your revised personal phase down schedule, showing the effect on your life insurance in future years, including the amount in 2007 and subsequent years.

If you have any questions about your retiree life insurance, refer to the Summary Plan Description for the plan or call the Retiree Service Center at 1-800-762-7327, press 1 if you're calling from a touch tone phone and select the Life Insurance Inquiries prompt – option 2, Monday through Friday, between the hours of 7 a.m. and 4 p.m. Central Time.

Sincerely,

Sears Retiree Life Group
P.O. Box 6160
Utica, NY 13504

September 12, 2002

Name: ███████
Street: ███████
City/State/Zip: ███████
Date of Birth: ███████

| Your Annual Reduction Amount | |
| --- | --- |
| Your retiree life coverage ( before reduction ) | $50,000.00 |
| Your coverage in 10 years, on January 1, 2007 | $9,500.00 |
| Your total reduction over 10 years | $40,500.00 |
| Your annual incremental reduction amount | $4,500.00 |

| Your Reduction Schedule | | |
| --- | --- | --- |
| | Your age as of January 1 | Sears provides coverage in this amount |
| 1998  68 | | $ 45,500.00 |
| **1999  69** | | **$ 41,000.00** |
| 2000  70 | | $ 36,500.00 |
| **2001  71** | | **$ 32,000.00** |
| 2002  72 | | $ 27,500.00 |
| **2003  73** | | **$ 27,500.00** |
| 2004  74 | | $ 23,000.00 |
| **2005  75** | | **$ 18,500.00** |
| 2006  76 | | $ 14,000.00 |
| **2007  77** | | **$ 9,500.00** |

This form is for Informational purposes only. For specific plan information, please refer to the Sears Retiree Group Life Insurance Summary Plan Description

# EXHIBIT D

**To:**    **Retirees Covered under the Sears Retiree Group Life Insurance Plan**
**Retirees Covered under the Sears Group Retiree Life Insurance Replacement Plan**

**From:**  **Sears Holdings Benefits Department**
**Date:**  **March 2007**

---

This Notice contains important information about the Sears Retiree Group Life Insurance Plan and the Sears Group Retiree Life Insurance Replacement Plan.

You should review this information and keep it with your other benefit plan information regarding these plans. If you have any questions about this information, please contact the Sears Holdings Corporation Administrative Committee, Sears Holdings Corporation, 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## Clarifications to January 1, 2007 SPDs

Sears Retiree Group Life Insurance Plan Summary Plan Description

Notwithstanding the list of annual reductions on page 10 of the SPD under the section entitled Retiree Life Insurance Reductions, please note that any covered retiree who made a proper claim under the 2001 Settlement Agreement for the litigation known as *In re Sears Retiree Group Life Insurance Litigation* was not subject to the January 1, 2003 reduction (Reduction #6). In other words, these retirees were subject to nine (9) instead of ten (10) reductions. This is reflected on your March 2007 personal statement included along with this Notice.

Sears Group Retiree Life Insurance Replacement Plan Summary Plan Description

Notwithstanding the list of coverage increments on page 2 under the section entitled Coverage Effective Date, please note that any covered retiree who made a proper claim under the 2001 Settlement Agreement for the litigation known as *In re Sears Retiree Group Life Insurance Litigation* (and was otherwise eligible to make purchase the annual incremental coverage) would not have had the option to elect to purchase such coverage as of January 1, 2003 (Increment #6). Thereafter, the options for incremental coverage would continue, subject to the terms of the plan, as summarized in the SPD. Your purchase of incremental coverage is reflected on your March 2007 personal statement included along with this Notice.

---

This *Notice* is intended to constitute summaries of material modifications with respect to the most recent SPDs for the referred to plans, in accordance with applicable regulations under the Employee Retirement Income Security Act (ERISA).

# EXHIBIT E

# SEARS HOLDINGS

 **Prudential**

July 26, 2010

Paul Derr



Dear Paul,

## Our Retiree Group Life Insurance Provider Is Changing

Sears Holdings recognizes the importance of life insurance protection for you and your family. We're pleased to inform you that we have selected The Prudential Insurance Company of America as our **new** life insurance provider only for The Sears Retiree Group Life Insurance Plan.

For over 90 years, Prudential has been a leader in the group insurance industry. They are a well recognized name in the insurance market and are known for their ability to deliver high quality products and services to their customers.

### What Does This Change Mean To You?

**Effective August 1, 2010, Prudential will underwrite and administer The Sears Retiree Group Life Insurance Plan offered by Sears Holdings. You will continue to receive this valuable benefit with no interruption and at no cost to you.**

Enclosed with this letter are communications that will assist you in understanding this change to Prudential and provide you with contact information if you have any questions.

- *Frequently Asked Questions and Answers*. Review the list of *Frequently Asked Questions and Answers* to learn more about the life insurance provider change.

- *Magnet*. Place the magnet in a convenient location and use it as a reference for Prudential's customer service contact information.

0182014-00002-00

-over-                    Life Insurance Provider Change Without RP -Retired

32487

**Who Should You Contact with Questions?**

The Metropolitan Life Insurance Company will continue to process all life insurance benefit claims that occur on or before July 31, 2010. The Prudential Insurance Company of America will begin processing all Sears Retiree Group Life Insurance Plan claims that occur on or after August 1, 2010. To file a claim for benefits or if you have questions about your coverage, please contact the Retiree Service Center at **1-800-762-7327** and choose the Retiree Life Insurance option on the main menu.

Prudential's Customer Service Representatives will be available to respond to any questions you may have, beginning August 1st. Please call 1-800-762-7327 for assistance.

For additional information, review the enclosed *Frequently Asked Questions and Answers* document.

Remember, there are no changes to your Sears Retiree Group Life Insurance coverage. This letter is to notify you only of the change in our life insurance provider to The Prudential Insurance Company of America for The Sears Retiree Group Life Insurance Plan. No action is required on your part as a result of this change.

You will be receiving additional information regarding this change to The Prudential Insurance Company of America within the next 3 or 4 weeks.

Sincerely,


Sears Holdings Benefits Department


This is preliminary to the issuance of a booklet explaining the proposed coverage.

**Please note:** Every effort has been made to ensure that the information included in this letter is accurate. However, this letter is not a legal plan document. If there are any conflicts between the information presented in this letter and the legal plan document that governs each benefit plan, the legal plan documents will govern. Sears Holdings Corporation (including its affiliates) reserves the right to change or terminate any or all benefit plans at its discretion, subject to the 2001 Settlement Agreement. With respect to the coverage provided under the Sears Retiree Group Life Insurance Plan to covered retirees who made a proper claim under the 2001 Settlement Agreement for the litigation known as "In re Sears Retiree Group Life Insurance Litigation", Sears Holdings Corporation has agreed not to make any additional changes.

This letter is intended to serve as a summary of material modifications with respect to changes outlined under the benefit programs that constitute ERISA-governed employee benefit plans.

Sears Retiree Group Life Insurance Plan is issued by The Prudential Insurance Company of America, 751 Broad Street, Newark, NJ 07102. (Contract Series: 96945 and 83500). Prudential and the Rock logo are registered service marks of The Prudential Insurance Company of America, Newark, NJ.

0182014-00002-00

# SEARS HOLDINGS

 **Prudential**

## Frequently Asked Questions and Answers
## Change in Retiree Group Life Insurance Provider

**Q. Who will be the new provider of my Sears Retiree Group Life Insurance?**
**A.** Your Sears Retiree Group Life Insurance will be underwritten and administered by The Prudential Insurance Company of America. For over 90 years, Prudential has been a leading provider of group insurance in the United States.

**Q. When will this change be effective?**
**A.** This change will be effective August 1, 2010.

**Q. Will this change in provider affect my coverage?**
**A.** No, there are no changes to your Retiree Group Life Insurance coverage.

**Q. Will Sears Holdings continue to pay for my Sears Retiree Group Life Insurance coverage?**
**A.** Yes. This insurance coverage is fully paid for by Sears Holdings.

**Q. Do I need to take any action?**
**A.** No action is required by you, unless you have questions, in which case you should call the Retiree Service Center at **1-800-762-7327** and select the Retiree Life Insurance option to be connected to a life insurance representative.

**Q. To whom should claims be submitted?**
**A.** If a death occurs on or before July 31, 2010, The Metropolitan Life Insurance Company will process and handle all eligible claims for benefits.

If a death occurs on or after August 1, 2010, The Prudential Insurance Company of America will process and handle all eligible claims for benefits.

**Q. What happens if a claim for my Sears Retiree Group Life Insurance is in progress with The Metropolitan Life Insurance Company and the benefit is not paid by July 31, 2010?**
**A.** If a claim is currently in progress with The Metropolitan Life Insurance Company and is not resolved by July 31, 2010, The Metropolitan Life Insurance Company will continue to handle and process that claim through completion, even past August 1, 2010.

**Q. Whom should I contact if I have additional questions about my Sears Retiree Group Life Insurance?**
**A.** If you have additional questions about your Sears Retiree Group Life Insurance, please contact the Retiree Service Center at **1-800-762-7327**. Choose the Retiree Life Insurance option to be connected to a life insurance representative.

**Securian Financial Group, Inc.**  Securian
Life Insurance Company Minnesota Life
Insurance Company Group Customer
Service
400 Robert Street North
St. Paul, MN  55101-2098
1-888-628-8922

SEARS HOLDINGS CORPORATION

March 15, 2019

RICHARD BRUCE
145 S YORK ST UNIT 228
ELMHURST IL  60126

## Notice – Termination of Retiree Group Life Insurance Plan

SEE REVERSE SIDE

## An Important Update from Sears Holdings

Dear RICHARD BRUCE:
Policy: 0070040  Contract: 536579100000

We are writing to inform you that after a thorough review of the company's programs and offerings, Sears Holdings Corporation has made the difficult decision to terminate the life insurance coverage issued by Securian Life Insurance Company for Sears retirees.  Therefore, your coverage will terminate effective March 15, 2019.

We recognize that this situation impacts you and your family.  You will have an opportunity to convert all or a portion of your group life insurance coverage into an Individual Whole Life policy. No medical questions will be required.

### Details Regarding Limited Conversion

The limited conversion right allows you to convert the coverage amount you previously had in force but not to exceed $10,000.  Converted coverage will be issued with an effective date of April 16, 2019.

> The maximum coverage you can convert is **$10,000**
> Your estimated quarterly premium for this coverage amount is **$921.90**

If you do not wish to keep this coverage, no action is needed.

If you wish to keep this coverage, you must take the following action to submit your conversion request:

- Complete the enclosed application and Identity Verification form
- Send **$921.90** (your first three months of premiums) and your application directly to Securian Life Insurance Company
- The payment must be submitted by personal or cashier's check
- **Your completed application with check must be postmarked no later than April 16, 2019**

More information about the conversion process, premium rates, application forms, and frequently asked questions have been enclosed for your convenience.

Sincerely,

Sears Holdings Corporation

Insurance products are issued by Minnesota Life Insurance Company or Securian Life Insurance Company, a New York authorized insurer. Minnesota Life is not an authorized New York insurer and does not do insurance business in New York. Both companies are headquartered in Saint Paul, MN. Product availability and features may vary by state. Each insurer is solely responsible for the financial obligations under the policies or contracts it issues.

# Frequently Asked Questions:

**Why is my coverage terminating?**
*Sears Holdings Corporation will no longer provide life insurance benefits for retirees.*

**When is this termination effective?**
*Your group benefit terminated March 15, 2019.*

**What are my options?**
- *Option 1: Do nothing and your benefit will terminate effective March 15, 2019.*
- *Option 2: Convert your previous coverage amount to an Individual policy (not to exceed $10,000).*
- *Option 3: Convert to an Individual policy using a lower amount of coverage that suits your needs. You will make payments based on the coverage amount selected.*

**What is the amount of coverage I can convert?**
*The limited conversion right allows you to convert the amount you previously had in force but not to exceed $10,000. Any newly converted coverage will be provided via an Individual Whole Life policy.*

**How can I estimate the premium for a different coverage amount?**
*The enclosed packet includes instructions and rates for calculating your premium.*
- *Your new premium will be calculated using your age on April 16, 2019.*
- *Premium rates provided in the packet are rates for every $1,000 in coverage you apply for. If you are applying for $5,000 in coverage, you need to take the rate in the packet and multiply it by 5 for each $1,000 in coverage.*

**How can I convert my coverage to a whole life policy?**
1. *Complete the enclosed application AND Identity Verification form.*
2. *Enclose a personal or cashier's check for three months of premium.*
3. *If the ownership of the contract has been transferred to another owner/representative, that owner/representative must sign the documents to complete the conversion. Please provide copies of any supporting documents (Guardianship, Power Of Attorney, Certification of Trustee Authority, etc.).*

**Is there a time limit to submit my conversion application?**
*Yes. Conversion applications must be postmarked no later than April 16, 2019.*

**What if I die before I have the chance to convert my insurance?**
*If you die during the conversion period (on or before April 16, 2019), your beneficiary will be eligible to receive the full amount of insurance that was available to you for conversion. If you die after April 16, 2019, there is no benefit payable unless you convert to an Individual Whole Life policy no later than April 16, 2019.*

**After converting my coverage, can I change my payment frequency?**
*Yes, after the Whole Life policy is issued you can pay premiums: Monthly (by EFT only), Quarterly, Semi-Annual or Annually.*

**What happens to my beneficiary designations on file?**
*A new beneficiary needs to be named on the application for the Individual Whole Life policy.*

# EXHIBIT F

| | |
|---|---|
| **From:** | Lawlor, James |
| **Sent:** | Thursday, August 01, 2019 9:26 AM |
| **To:** | Peshko, Olga; Marcus, Jacqueline |
| **Cc:** | Axelrod, Brad J.; Michael M. Mulder; Elena Liveris; Postighone, Cassandra |
| **Subject:** | RE: In re Sears Holdings Corporation, et. al, Case No. 18-23538 (RDD) - Retirees Committee |

Olga,

I am available after 1 today, and I will let Mike advise if he is as well.  Also the Committee met yesterday afternoon and has the following counterproposal:

- Payment of the full benefit owed ($5,000 to $14,500) to any beneficiary of a retiree that passed away between December 2018 and the date of the entry of a final order approving the modification of the Retiree Plan (the "Breach Period") who was not previously paid by Securian, and an administrative reserve fund set aside to fund such claims.
- Reimbursement to any retiree that purchased replacement life insurance in the Breach Period, after Securian sent notice to retirees of the termination of their coverage.
- Establishment of an administrative expense fund in the amount of the unpaid premiums that should have been made during the Breach Period to be distributed pro rata to all remaining retirees on the basis of the amount of their life insurance policies owed ($5,000 to $14,500).
- For those retirees still alive after the Breach Period, general unsecured claims in the face amount of the lost insurance benefit ($5,000 to $14,500).
- Process to provide appropriate direct notice to all retirees of their claims and reasonable time period to file their claims, and a process for the retirees or beneficiaries to assert claims if they disagree with the amounts set forth in the notice.
- Termination of the vested life insurance benefits upon the date, if any, the Court approves modification of the Retiree Plan.
- Payment of the legal expenses for the retirees that successfully prosecuted the motion under a substantial contribution theory.
- Identical treatment for the full benefit owed to any retiree under the Allstate plan, provided, however, that there is evidence that the plan for those 12 retirees is fully vested. The Committee has no such evidence, and would like a copy of the plan documents.  To the best of the Committee's knowledge, the 12 employees were not part of the class in the 2001 settlement, which is the basis of the class's vested rights.

Finally, we read that Sears estimates that 25 retirees have passed away following termination.  Please advise how that information was obtained, for example, was it based on past experience or an actual head count.  Moreover, please let us know if the Securian has the ability to estimate based on experience the likely total number of retirees that my pass away during the Breach Period.

Regards, Jim

James N. Lawlor
Wollmuth Maher & Deutsch LLP
51 JFK Parkway
First Floor West
Short Hills, NJ  07078
- and -
500 Fifth Avenue

# EXHIBIT G

## Group Term Life Insurance Policy

**Securian Life Insurance Company** • A Stock Company
400 Robert Street North • St. Paul, Minnesota  55101-2098



---

| | |
|---|---|
| **POLICYHOLDER:** | Sears Holdings Corporation |
| **POLICY NUMBER:** | 70040 |
| **POLICY SITUS:** | This policy was issued and delivered in Illinois |
| **POLICY EFFECTIVE DATE:** | January 1, 2016 |
| **POLICY ANNIVERSARY DATE:** | January 1 of each year beginning January 1, 2017 |
| **POLICY PREMIUM DUE DATE(S):** | The first day of each month |

## Read Your Policy Carefully

This policy was issued to the policyholder on the effective date shown above.  We promise to pay the benefits provided by this policy, subject to its conditions, limitations, and exceptions.  We make this promise and issue this policy in consideration of the application for this policy and the payment of the premiums.

Signed for Securian Life Insurance Company at St. Paul, Minnesota on the effective date.

Secretary                                President

## TABLE OF CONTENTS

Definitions........................................................... 3
General Information ........................................... 3
Premiums ............................................................ 3
Termination.......................................................... 4
Additional Information....................................... 4

**GROUP TERM LIFE INSURANCE POLICY • NONPARTICIPATING**

14-31700

Securian Life 1
EdF84037  8-2015

## Certificates of Insurance Schedule

The following Certificates of Insurance and Certificate Endorsements (if any) are attached to and made a part of this policy:

| Certificate Title | Certificate Form Number | Applies To | Effective Date |
|---|---|---|---|
| Associate Group Term Life Certificate of Insurance | 14-31702.12 | Class 1 Hourly Associates | January 1, 2016 |
| Associate Group Term Life Certificate of Insurance | 14-31702.12 | Classes 2 & 5<br><br>Class 2: Salaried Associates<br><br>Class 5: Grandfathered VGUL plan participants | January 1, 2016 |
| Associate Group Term Life Certificate of Insurance | 14-31702.12 | Classes 3 & 4 Closed Group of Grandfathered Retired and Disabled Associates | January 1, 2016 |

14-31700

Securian Life 2
EdF84037 8-2015

CONFIDENTIAL

SEARS_RET00000042

## Definitions

**associated company**

Any company which is a subsidiary or affiliate of the policyholder which is designated by the policyholder and agreed to by us to participate under this policy.

**contributory insurance**

Insurance for which an employee is required to make premium contributions.

**noncontributory insurance**

Insurance for which an employee is not required to make premium contributions.

**policyholder**

The owner of the group policy as shown on the first page of this policy.

**we, our, us**

Securian Life Insurance Company.

**you, your**

The policyholder.

## General Information

**What is your agreement with us?**

This policy and your application contain the entire insurance contract between you and us. Any statements you make will, in the absence of fraud, be considered representations and not warranties. Also, any statement that you make will not be used to void this policy, nor will it be used in our defense if we refuse to pay a claim, unless the statement is contained in your application.

No change or waiver of any provisions of this policy, or any certificate issued under it, will be valid unless made in writing by us and signed by our president, a vice-president, our secretary, or an assistant secretary. No agent or other person has the authority to change or waive any provisions of this policy, or of any certificate issued under it.

**Are employees of associated companies eligible for insurance under this policy?**

Yes. Employees of associated companies may be eligible for insurance under this policy. You represent any associated company in all transactions pertaining to this policy. Your acts or omissions and every notice given by us to you shall be binding on every associated company. When an associated company ceases its participation under the policy, the policy shall be considered to be terminated for all employees of the associated company. All provisions related to the policy terminating will apply to such employees.

**Can this policy be amended?**

Yes. The insured's consent is not required to amend this policy or any certificates issued under it. Any amendment will be without prejudice to any claim for benefits incurred prior to the effective date of the amendment.

## Premiums

**When and how often are premiums due?**

Unless we have agreed to some other premium payment procedure, premiums for this policy are remitted to us monthly. Premiums are due on the premium due date as shown on the first page of this policy. We apply premiums consecutively to keep the insurance in force.

Premium contributions for contributory insurance are to be paid to you. The premium contributions by insureds for contributory insurance should be remitted to us as due along with the premiums payable for noncontributory insurance.

**How is the premium determined?**

The premium will be the premium rate multiplied by the number of $1,000 units of insurance in force on the date premiums are due. The premium may also be computed by any other method on which you and we agree.

We may change the premium rate:

(1) on any premium due date following the expiration of any rate guarantee period; or
(2) on any premium due date following the date that the amount of insurance in force for any one coverage or across coverages changes by more than 15% for years 1, 2 and 3, 25% for years 4 and 5 from that which was used to determine the current rates (active employee coverage and retiree coverage are considered separate coverages, as are basic life, supplemental life, spouse life, child life and AD&D); or
(3) anytime the policy terms are amended.

**What factors do we consider when premium is changed?**

If premium is changed, the change will be based upon future estimated or emerging experience, which factors include: interest rates, mortality, taxes, our expenses and profit considerations.

**Can a premium be paid after the date it is due?**

Yes. This policy has a 90-day grace period. If a premium is not paid on or before the date it is due, that premium may be paid during the 90-day period following the due date. The insurance under this policy will remain in effect during the 90-day grace period.

14-31700

Securian Life 3
EdF84037 8-2015

**Can the premium be adjusted?**

Yes. An adjustment will be made to the premium on each due date for insurance which was effective or terminated before the most recent due date, but not reflected in prior premium payments, so that the correct premium is paid.

# Termination

### When does this group policy terminate?

You may terminate this group policy by giving us 31 days prior written notice. We reserve the right to terminate this policy on the earlier of the following to occur:

(1) 90 days (the grace period) after the due date of any premiums which are not paid; or
(2) 180 days after we provide you with notice of our intent to terminate this policy.

# Additional Information

### Are you required to maintain records?

Yes. You are required to maintain adequate records of any information necessary for us to administer this policy. We will have reasonable access to such records in order to administer the policy.

If an administration or clerical error is made in keeping records on or administering the insurance under this policy, it will not affect otherwise valid insurance. A clerical or administrative error, however, does not continue insurance which is otherwise stopped, make insurance effective when it should not have been or change the amount of insurance provided by the provisions of this policy and no claim shall be paid on amounts put into effect as a result of a past clerical or administrative error. If an error causes a change in premium payment, a fair adjustment will be made.

### Will a certificate of insurance be provided for each insured?

Yes. We will provide you with a certificate of insurance for delivery to each insured. The certificate will include information regarding the principal provisions of his or her coverage.

### Are you our agent?

No. For all purposes of this policy, neither you, an associated company, nor any administrator you appoint is our agent. We will not be liable for any of your acts or omissions or those of an associated company or administrator.

### Will the provisions of this policy conform with state law?

Yes. If any provision in this policy, or in the certificates issued under this policy, is in conflict with the laws of the state governing the policy or the certificates, the provision will be deemed to be amended to conform to such laws.

### Does ownership of this policy entitle you to membership in Securian Life Insurance Company's parent company?

No. The ultimate parent company of Securian Life Insurance Company is a mutual insurance holding company. This policy does not entitle you to any holding company membership rights.

Securian Life 4
EdF84037 8-2015

CONFIDENTIAL

SEARS_RET00000044

**Implementation Credit
Policy Rider**



**Securian Life Insurance Company**
400 Robert Street North • St. Paul, Minnesota  55101-2098

## General Information

This rider is subject to every term, condition, exclusion, limitation and provision of the group policy unless otherwise expressly provided for herein.

**What does this rider provide?**

This rider provides for an additional benefit to offset the direct and indirect costs of changing your life insurance carrier to Securian Life.

**What is the amount of the implementation credit?**

The implementation credit is in an amount equal to the lesser of:

    (1)  $100,000; or
    (2)  the direct or indirect costs you incur in connection with transfer of your insurance coverage to us that are incurred no later than 1 year after the policy effective date.

**When will the implementation credit be payable?**

We will pay the implementation credit after you have submitted to us reasonably detailed documentation evidencing the cost you incurred in connection with the transfer.  Such documentation must be sent within one year of the policy effective date.

**To whom will we pay the implementation credit?**

We will pay the implementation credit to you or to an entity you have named to receive it.

## Termination

**When does this rider terminate?**

This rider terminates upon the earlier of:

    (1)  the date the group policy to which it is attached terminates; or
    (2)  the date requested by you to cancel this rider for your plan.

Secretary            President

14-31701

Securian Life  1
EdF84044  8-2015

CONFIDENTIAL

SEARS_RET00000045

Eligibility requirements for closed group of disabled and retired associates in a classification eligible for continued coverage as determined by the policyholder.

Amounts shall be the amount of insurance inforce under the prior carrier's policy on December 31, 2015, as reported to Securian Life by the policyholder via census file prior to the effective date of this Group Policy.

Continuation of insurance for all classes below is contingent upon continued premium payment by the policyholder

---

**Class 3**    Closed group of grandfathered retired associates in one of the classifications listed below:

**Class 3-A**    Closed group of grandfathered retired associates in an eligible class on 8/31/87, for whom all of the following apply:
- insured under the employer's basic associate term life plan in effect on 8/31/87; and
- remained continuously employed and continuously insured under basic associate term coverage from 9/1/87-10/31/92; and
- remained employed with continuous service in accordance with the employer's personnel policy until date of retirement; and
- retired on or after 11/1/92; and
- is not eligible for coverage in any other classification under this policy.

**Class 3-B**    Closed group of grandfathered retired associates in an eligible class on 10/31/92, for whom all of the following apply:
- insured under the employer's basic associate term life plan in effect on 10/31/92; and
- remained employed with continuous service in accordance with the employer's personnel policy until date of retirement; and
- retired on or after 11/1/92; and
- is not eligible for coverage in any other classification under this policy.

**Class 3-C**    Closed group of grandfathered retirees of Coldwell Banker Residential Group who retired on or prior to 10/8/93 for whom the following apply:
- eligible retiree of Coldwell Banker Residential Group on 10/8/93; and
- contributed to the cost of premiums according to the schedule determined by employer  from 5/1/94 until 4/30/95; and
- is not eligible for coverage in any other classification under this policy.

**Class 3-D**    Closed group of grandfathered retirees of Coldwell Banker Parent Division who retired on or prior to 12/31/93 for whom the following apply:
- eligible retiree of Coldwell Banker Parent Division on 12/31/93; and
- contributed to the cost of premiums according to the schedule determined by the employer from 5/1/93 until 4/30/95; and
- is not eligible for coverage in any other classification under this policy.

**Class 3-E**    Closed group of grandfathered retirees of Sears Mortgage Banking Group who retired on or prior to 11/30/93 who are not eligible for coverage in any other classification under this policy.

**Class 3-F**    Closed group of grandfathered Homart Development Co. retirees who retired prior to 1/1/90 for whom the following apply:
- retired prior to 1/1/90; and
- was insured under the Homart plan on 3/31/96; and
- is not covered under the waiver of contributions provision; and
- is not eligible for coverage in any other classification under this policy.

CONFIDENTIAL

Class 3-G    Closed group of grandfathered Homart Development Co. retirees who retired on or after 1/1/90 for whom the following apply:
- retired on or after 1/1/90; and
- was insured under the Homart plan on 12/31/89; and
- was covered under the Homart Plan on 3/31/96; and
- qualified for retiree life insurance under the Homart plan; and
- is not covered under the waiver of contributions provision; and
- is not eligible for coverage in any other classification under this policy.

Class 3-H    Closed group of grandfathered Homart Development Co. retirees who retired on or after 1/1/90 for whom the following apply:
- retired on or after 1/1/90; and
- was not insured under the Homart plan on 12/31/89; and
- was employed by Homart prior to 11/1/92; and
- was covered under the Homart plan on 3/31/96; and
- qualified for retiree life insurance under the Homart plan; and
- is not covered under the waiver of contributions provision; and
- is not eligible for coverage in any other classification under this policy.

Class 3-I    Closed group of direct billed Coldwell Banker retirees who are not otherwise included in classes 3-C and 3-D who pay the entire cost of premiums.

Class 4    Closed group of grandfathered disabled associates in one of the classifications noted below:

Class 4-A    Closed group of grandfathered disabled associates on approved waiver of contribution on 10/31/92 for whom the following apply:
- approved for continued coverage under the waiver of contribution provision in effect on 10/31/92; and
- remain continuously disabled and eligible for continued coverage without payment of premium, as determined by the employer's practices.
- is not eligible for coverage in any other classification under this policy.

Class 4-B    Closed group of grandfathered disabled associates for whom the following apply:
- Is identified as a disabled associate eligible for continued coverage according to the employer's practices; and
- Is not eligible for coverage in any other classification under this certificate; and
- is not eligible for coverage in any other classification under this policy

Class 4-C    Closed group of grandfathered disabled associates with an onset of disability prior to 10/31/92 who were not on approved waiver of contribution on 10/31/92 due to waiting period requirements, for whom the following apply:
- was approved for continued coverage under the waiver of contribution provision in effect on 10/31/92; and
- remained continuously disabled and eligible for continued coverage without payment of premium, as determined by the employer's practices.
- is not eligible for coverage in any other classification under this policy.

Class 4-D    Closed group of grandfathered disabled associates of Coldwell Banker Residential Group disabled on or before 10/8/93 who are not eligible for coverage in any other classification under this policy.

Class 4-E    Closed group of grandfathered disabled associates of Coldwell Banker Parent Group disabled on or before 12/31/93 who are not eligible for coverage in any other classification under this policy.

Class 4-F    Closed group of grandfathered disabled associates of Sears Mortgage Banking Group disabled on or before 11/30/93 for whom the following apply:
- was insured under the Coldwell Banker & Co plan on 11/30/93; and
- was a disabled Associate of Sears Mortgage Banking Group on 11/30/93; and
- is not eligible for coverage in any other classification under this policy.

CONFIDENTIAL

Class 4-G    Closed group of grandfathered Homart disabled associates with an onset of disability on or before 3/31/96 who were not on approved waiver of contribution on 3/31/96 due to waiting period requirements, for whom the following apply:
- was totally disabled on 3/31/96 and subsequently approved for waiver of contributions according to the provisions in effect on 3/31/96; and
- remain continuously disabled and eligible for continued coverage without payment of premium, as determined by the employer's practices; and
- is not eligible for coverage in any other classification under this policy.

Class 4-H    Closed group of grandfathered NTW or Tire American disabled associates with an onset of disability on or before 3/31/97 who were not on approved waiver of contribution on 3/31/97 due to waiting period requirements, for whom the following apply:
- was totally disabled on 3/31/97 and subsequently approved for waiver of contributions according to the provisions in effect on 3/31/97; and
- remain continuously disabled and eligible for continued coverage without payment of premium, as determined by the employer's practices; and
- is not eligible for coverage in any other classification under this policy.

Retiree Term Life Insurance Reductions – Prior to the effective date of this Group Policy.
Except as otherwise provided below, effective January 1, 1998 the amount of retiree life insurance began reducing over a ten-year period, ending January 1, 2007.  Effective January 1, 2007, the final amount of retiree life insurance is $5,000.

The amount of the annual retiree life insurance reductions were calculated as follows:

Amount of retiree life insurance subject to reduction
Minus $5,000
Divided by 10
Equals the dollar amount reduced each year.

The reductions were effective during an insured's lifetime on the following dates:

Reduction #1:    January 1, 1998
Reduction #2:    January 1, 1999
Reduction #3:    January 1, 2000
Reduction #4:    January 1, 2001
Reduction #5:    January 1, 2002
Reduction #6:    January 1, 2003
Reduction #7:    January 1, 2004
Reduction #8:    January 1, 2005
Reduction #9:    January 1, 2006
Reduction #10:  January 1, 2007

Exceptions for Reduction Schedule:

- The following groups of retired associates are not subject to the retiree life insurance reductions described above:
  (a)  Those who have an amount of Associate Term Life Insurance of $5,000 or less.
  (b)  Those who retired prior to January 1, 1978.
  (c)  Those who retired from Coldwell Banker Residential Group or Coldwell Banker Parent Division who are paying the total premium due for Associate Term Life Insurance identified (classes 3-C and 3-D above).
- Retired and former associates who are covered by the premium waiver provisions of the plan were not subject to the retiree life insurance reductions described above.  Upon termination of premium waiver life insurance, the reductions described above will be applied to the amount of associate term life insurance as though the reductions had started on January 1, 1998.
- Retired associates who were under age 60 as of January 1, 1998, and paying contributions for their retiree life insurance under the provisions of the plan in effect prior to 1987 are not subject to the retiree life insurance reductions described above until 30 days after their 60th birthday.  At that time, in accordance with the plan provisions in effect prior to 1987, the amount of Associate Term Life Insurance reduces to 40% of its former amount (maximum $100,000).  The amount of associate term life insurance is then further reduced by the January 1, 1998 retiree life insurance reduction described above.  The January 1, 1999 reduction then became effective on January 1, 1999.

CONFIDENTIAL                                                                                    SEARS_RET00000048

- Associates who were subject to the reduction schedule and who signed a release and waiver in 2002 agreeing to certain conditions regarding the reductions were not subject to the 2003 reduction. The amount that was scheduled to be reduced in 2003 was not subtracted, and was included in the final insurance amount effective on January 1, 2007.

**NO DOUBLE COVERAGE:**  A person cannot be covered under more than one class.  A person who is eligible as an active associate under the policyholder's plan of insurance is not eligible for coverage as a grandfathered retiree or disabled associate.

CONFIDENTIAL

SEARS_RET00000049

# EXHIBIT H

| **From:** | Margolis, Steven <steven.margolis@weil.com> |
| **Sent:** | Tuesday, July 30, 2019 10:22 AM |
| **To:** | Marcus, Jacqueline <jacqueline.marcus@weil.com>; Peshko, Olga <Olga.Peshko@weil.com>; Pappas, Nicholas <nicholas.pappas@weil.com>; Richards, Lauren <Lauren.Richards@weil.com> |
| **Cc:** | Wessel, Paul <Paul.Wessel@weil.com>; Mishra, Akansha <Akansha.Mishra@weil.com> |
| **Subject:** | FW: Board Resolutions - Sears Retiree Group Life |
| **Attach:** | Sears - Resolution to Termination Retiree Life Insurance_WEIL_96941261_4.DOCX; Sears - Resolution to Termination Retiree Life Insurance_WEIL_96941261_4.pdf |

Please see Unanimous Written Consent of SHC Board dated March 7, 2019 terminating the retiree life insurance plans effective as of March 15, 2019.  Also, in the body of the email is the summary of the resolution that was provided to the SHC Board.  Steve



**Steven Margolis**
Counsel

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153
Steven.margolis@weil.com
+1 212 310 8124 Direct
+1 914 588 3529 Mobile
+1 212 310 8007 Fax

**From:** Descovich, Kaitlin <Kaitlin.Descovich@weil.com>
**Sent:** Thursday, March 7, 2019 4:12 PM
**To:** Valentino, Luke (Luke.Valentino@searshc.com) <Luke.Valentino@searshc.com>
**Cc:** Odoner, Ellen <ellen.odoner@weil.com>; Wessel, Paul <Paul.Wessel@weil.com>; Margolis, Steven <steven.margolis@weil.com>; Mishra, Akansha <Akansha.Mishra@weil.com>; Marcus, Jacqueline <jacqueline.marcus@weil.com>; Singh, Sunny <sunny.singh@weil.com>; Peshko, Olga <Olga.Peshko@weil.com>
**Subject:** Board Resolutions - Sears Retiree Group Life

Luke, as mentioned, please see attached for resolutions (word and PDF) that we kindly request to be posted for the Board's approval as soon as possible.  Set forth below is a summary of the context for the request for a cover note, if helpful.  Please let us know if you have any questions or concerns.  Thank you.

Regards,
Kaitlin

**

Members of the Board of Directors of Sears Holdings:

Your consent is requested for the accompanying resolutions in respect of the Sears Retiree Group Life Insurance Plan. Set forth below is a summary of the context for the request:

- Sears maintains the Sears Retiree Group Life Insurance Plan (the "Plan") providing life insurance benefits to certain retirees of Sears and its affiliates under insurance policies issued by Securian Financial Group ("Securian") and Allstate Group Life Insurance ("Allstate").

- Sears has not paid the premium with respect to retirees on the Securian Financial Group Life Insurance Policy (the "Securian Policy") for any period after December 31, 2018 and on the Allstate Group Life Insurance Policy (the "Allstate Policy") for any period after January 31, 2019.

- The Securian policy covers is the broad-based retiree life insurance policy and covers approximately 32,000 retirees and provides limited death benefits.

- The Allstate policy covers 13 former Sears executives (all age 87 and older) and provides death benefits ranging from approximately $356,000 to $2,680,000.

- Sears informed Securian and Allstate that it will not make any further premium payments for retirees under the Securian Policy or the Allstate Policy.

- The Plan documents indicate that the Plan may be terminated by the Company at any time.  The attached Unanimous Written Consent seeks approval to terminate the Plan as of March 15, 2019.

- Plan participants under the Securian Policy will have a "conversion privilege" (under which they can continue life insurance coverage at their own cost).  Counsel for Allstate has suggested but not confirmed that the same will be true for retirees under the Allstate Policy.

- Once the termination of the Plan is approved, Sears will post a notice on the retiree web page informing them of the Plan termination and, for those under the Securian Policy, the conversion privilege opportunity.

- Sears will file in Bankruptcy Court, on presentment, a stipulation and order with Allstate, stipulating to the termination of the Allstate policy, describing the written notice provided to retirees, and providing interested parties with an opportunity to object.

Please provide your signed consent at your earliest convenience.  Thank you.



**Kaitlin Descovich**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
kaitlin.descovich@weil.com
+1 212 310 8103 Direct
+1 917 209 3968 Mobile
+1 212 310 8007 Fax

SEARS_RET00000002

# ATTACHMENT 2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re:* | Case No: 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al*, | Chapter 11 |
| | (Jointly Administered) |
| Debtors. | |

## DECLARATION OF RONALD OLBRYSH IN SUPPORT OF THE RETIREES COMMITTEE'S OBJECTION TO DEBTOR'S MOTION FOR MODIFICATION OF RETIREE BENEFITS

Under 28 U.S.C. § 1746, I, Ronald Olbrysh, declare as follows under the penalty of perjury:

1.      I am a member and appointed chairman of the Official Committee of Retirees With Life Insurance Benefits (the "Retirees Committee") of Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors").

2.      I am familiar with the matters set forth herein and make this declaration in support of the Retiree Committee's Objection to Debtors' Motion for Modification of Retiree Benefits.

3.      The Retirees Committee was appointed on July 9, 2019 (ECF 4470), and I was named a member of the Committee by the U.S. Trustee.  The Retirees Committee has met several times to discuss its options.

4.      I was a participant in the Sears Retiree Group Life Insurance Plan (the "Plan") from approximately July 1972 until the Plan was terminated on March 15, 2019.

5.      On March 11, 2019, Sears Holdings Chief Human Resources officer, Robert Weber, sent me an email mentioning a "'heads up' regarding retiree life coverage in the voicemail."

6.      On March 12, 2019, I wrote back to Weber explaining the retiree life insurance was subject to the Sears Life Insurance Litigation. I further pointed out that the life insurance amount under the Stipulation of Settlement could not be reduced and asserted that "Sears cannot arbitrarily cancel such insurance as long as the company is still in existence. I suggest you bring this immediately to the attention of your General Counsel."

7.      I received notice from Debtors that my policy was terminated effective March 15, 2019.

8.      As of March 15, 2019, the face-value of my life insurance policy through the Retiree Plan was $10,900.  Prior to the termination of the policy by Debtors, Debtors paid the monthly premiums for my life insurance policy in the amount of approximately $44 per month.[1]

9.      In their notice of termination of life insurance benefits, Debtors informed me that I could continue to hold my life insurance policy through Securian but would need to pay the monthly premiums for the policy.  The monthly premium through Securian to continue my policy was $232.23. This amount was more expensive than what Debtors were paying because Securian was offering the life insurance to me on an individual, not group policy basis as it was offering it to Debtors prior to the termination. Since termination, individual retirees have been quoted premium payments well in excess of $3,000 per year.

10.     Following termination of my policy by Debtors, I sought replacement life insurance policy through New York Life Insurance.  My original application for replacement

---

[1] Per the Motion of Debtors For Modification of Retiree Benefits (ECF 4635, ¶ 13), "as of March 15, 2019 . . . the Securian Policy covered approximately 29,000 retirees." Sears also states that "to maintain the coverage provided under the Policies, the Debtors would be required to pay . . . a monthly premium under the Securian Policy of approximately $1.3 million." (*Id*. at ¶ 14) Given these approximate numbers, a $1,300,000 average monthly premium expenditure by Sears per retiree, divided by 29,000 retirees results in an average monthly expenditure of approximately $44 per retiree.

insurance was denied on May 31, 2019 due to health reasons.

11.     I applied again through AARP, and received a guaranteed issue life insurance policy from New York Life Insurance Company on July 2, 2019.

12.     This replacement life insurance policy is for a face-value of $10,000, for which I pay $152.50 in monthly premiums.  The monthly premiums paid to New York Life Insurance are $79.73 less than the amount required by Securian for continuation of my policy on an individual basis.

13.     Debtors' proposal to modify the Sears Retiree Group Life Insurance Plan does not include an administrative expense claim for reimbursement of such replacement insurance policies, but I would not have had to purchase replacement life insurance since April 15 if Sears Holding Company had not unilaterally terminated the Plan.

14.     Attached hereto as Exhibit 1 is a true and correct copy of a letter that I sent on May 1, 2019, acting in my capacity as the Chairman of the National Association of Retired Sears Employees ("NARSE"), to Robert A. Riecker, Sears Holdings Corporation, CFO.  My letter provided examples showing that the replacement life insurance offered by Securian Life Insurance, after Sears terminated the life insurance coverage was "noncompetitive in today's insurance market place."  I reported that NARSE had received many inquiries from insurance companies who wanted to market life insurance to the retirees, but in order to offer a reasonable group policy, needed to know the statistics of the retiree population.  On behalf of NARSE, I asked Mr. Riecker to provide it with the names, addresses, age and gender of the affected retirees who were covered by the class action settlement.  I did not receive any response to my letter from Mr. Riecker.

I declare under penalty of perjury that the foregoing is true and correct on this sixth day of

August 2019.

Ronald Olbrysh

# EXHIBIT 1

**NATIONAL ASSOCIATION OF RETIRED
SEARS EMPLOYEES
1212 S. Naper Blvd. – Ste 119-315
Naperville, IL 60540**

May 1, 2019

Robert A. Riecker, CFO
Office of the Chief Executive
Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

Dear Mr. Riecker:

As I am sure you are aware, NARSE, and most likely Sears, has been deluged with
frantic calls and letters from retirees as a result of the unfortunate decision of Sears'
management to terminate the promised retirees' life insurance policy.

The letter to retirees terminating the life insurance on March 15, 2019, was not sent out
until March 15 and received by retirees four to seven days after the termination date!
This is not only unprofessional but also unethical on the part of the company.  Normally a
30-day notice has to be given following ERISA guidelines.

As Sears Holdings stated in its termination letter, it was making *"the difficult decision to
terminate the life insurance coverage issued by Securian Life Insurance Company for
Sears retirees"* however the company was giving retirees the *"opportunity to convert all
or a portion of (the) group life insurance coverage into an individual Whole Life policy"*
with no medical questions.  The maximum coverage a retiree could covert was $10,000.

As part of this termination letter, Sears estimated the quarterly premium for this $10,000
coverage at $590.58.  The company could not have gotten this amount from Securian as
we know of no retiree who was quoted this premium amount from Securian.

As just one example of many letters NARSE has received, an 80-year-old retiree was told
he could sign up for the Securian new $10,000 maximum policy by paying *"only
$1,456.90 per quarter or only $5,827.60 annually!!!*

In contrast, a recent advertisement appearing in the Chicago Sun-Times for United of
Omaha Life Insurance Company offered an 80-year-old male a $10,000 whole life
insurance policy with a monthly premium of $166.06 or an annual premium of $1,992.72.
This rate is locked in at the age you apply with no medical or health questions.  Maybe
this is where Sears Holdings approximated the $590.58 quarterly payment for the
$10,000 Securian conversion policy.

So, the bottom line is that the Securian Life Insurance premiums are totally unrealistic and noncompetitive in today's insurance marketplace. Evidently Securian does not want the business.

NARSE has received many inquiries from insurance company representatives who view this termination of the retiree life insurance by Sears Holdings as a marketing opportunity for their organizations. However, these insurance companies need to know the statistics of our retiree population in order to provide a reasonable group policy offering. This is information that NARSE does not have.

Therefore, as a result, since Sears arbitrarily and without prior notice decided to terminate the retiree life insurance, we propose that Sears Holdings or Transform Holdco or whatever name the company is now operating under today, provide NARSE with the names, addresses, age, and gender of the affected retirees who were covered by the class action life insurance lawsuit settlement agreement in 2002 that was nullified as a result of the bankruptcy proceedings.

Thank you for your consideration

Ronald Olbrysh
NARSE Chairman

*cc:* Luke Valentino, General Counsel
Robert Weber, Chief Human Resources Officer