Hearing Date & Time: August 16, 2019, 10:00 a.m. ET

**DIAMOND MCCARTHY LLP**
*Counsel to Team Worldwide Corporation*
295 Madison Avenue, 27th Floor
New York, New York 10017
(212) 430-5400
Allan B. Diamond
Charles M. Rubio
Sheryl P. Giugliano
adiamond@diamondmccarthy.com
crubio@diamondmccarthy.com
sgiugliano@diamondmccarthy.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDING CORPORATION, *et al.* | Case No. 18-23538 (RDD) |
| | (Jointly Administered) |
| Debtors.[1] | |

-------------------------------------------------------------x

**TEAM WORLDWIDE CORPORATION'S LIMITED OBJECTION TO
MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF
SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS**

Team Worldwide Corporation ("**Team Worldwide**"), a creditor of Sears Holdings

Corporation and Sears, Roebuck and Co. (together, the "**Infringing Debtors**" and collectively

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

with all the other affiliated debtors, the "**Debtors**"), by and through its undersigned counsel, hereby submits this limited objection (this "**Limited Objection**")[2] to the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF 4476] (as amended and modified, the "**Plan**") and in support of this Limited Objection, Team Worldwide states as follows:

## PRELIMINARY STATEMENT

1. Team Worldwide designs and manufactures products including inflatable mattresses generally known as "air beds." Team Worldwide's products are sold under multiple brands in the United States. Team Worldwide owns certain U.S. Patents (the "**Asserted Patents**") related to these products.

2. The Infringing Debtors have imported, sold, and offered for sale in the United States, air beds which infringe the Asserted Patents (the "**Infringing Products**")[3]. As a result, Team Worldwide holds pre-petition claims against the Infringing Debtors in the amount of not less than $21 million, and post-petition administrative expense claims for the Infringing Debtors' post-petition sales of the Infringing Products in an estimated amount of not less than $2 million.[4]

---

[2] Over the last few weeks, Team Worlwide has been involved in negotiations with the Debtors to resolve the issues raised in this Limited Objection. To that end, the Debtors agreed to extend Team Worldwide's deadline to file an objection to confirmation of the Plan (defined below) through and including August 6, 2019 at 5:00 p.m. ET. Unfortunately, Team Worlwide and the Debtors have not yet reached a resolution of the issues and, therefore, Team Worlwide files this Limited Objection in order to preserve its rights in the event it is unable to resolve its issues with the Debtor prior to the Plan confirmation hearing, currently scheduled for August 16, 2019.

[3] The "Infringing Products" includes, without limitation: all non-Team Worldwide products referred to by the Infringing Debtors as "air bed," "airbed" "air mattress" "airmattress," "airbed mattress," "air bed mattress," "Airbed Mattress with Built-in Electric Pump," "Airbed with Built-in Electric Pump," "Airbed Mattress with Built-in Pump," "Airbed with Built-in Pump," "Airbed Mattress with Built-in Electric Pump," "Air bed Mattress with Built-in Electric Pump," "Air bed with Built-in Electric Pump," "Air bed Mattress with Built-in Pump," "Air bed with Built-in Pump," "Air bed Mattress with Built-in Electric Pump," "Airmattress with Built-in Electric Pump," "Airmattress with Built-in Electric Pump," as well as all products that would be included as search results when any of these terms are used in the search bar at Sears.com or any internal database search at the Infringing Debtors.

[4] There is no deadline established yet in these cases to file administrative expense claims. While the Plan (defined below) contemplates establishing an Administrative Expense Claims Bar Date (as defined in the Plan), such

2

3.      On April 10, 2019, Team Worldwide filed two proofs of claim (the "**Proofs of Claim**") against both Infringing Debtors' estates arising from amounts owed to Team Worldwide as a result of damages incurred due to the Infringing Debtors' importing, selling and/or offering to sell infringing products and committing patent infringement under the patent laws of the United States, Title 35 of the United States Code.

4.      Team Worldwide previously commenced a separate law suit asserting similar claims against Wal-Mart Stores, Inc. (the "**Wal-Mart Action**"), among others, Case No. 2-17-cv-00235 in the United States District Court for the Eastern District of Texas, Marshall Division (the "**District Court**"), in which the District Court entered a claim construction order regarding the Asserted Patents, and Wal-Mart, Intex, Bestway, and Coleman admitted that many of the accused products infringed.

5.      During the Wal-Mart Action, several manufacturers intervened in the case on the basis of indemnification agreements with Wal-Mart, noting that they have the same type of broad indemnification agreements with numerous other retailers around the United States. For example, Intex (the largest supplier) stated, "As with Walmart, Intex has agreed to indemnify its other customers against lawsuits related to the Accused Products, including claims of patent infringement. (*Id*. ¶ 19.) Intex expects its other customers would similarly request that Intex tender indemnification if Plaintiff accused them of patent infringement." Wal-Mart Action, 8/29/17, Doc. 29, at 6. Other major suppliers represented the same as to indemnification for retailers generally in the United States, including Coleman (Wal-Mart Action, Doc. 35, at 5) and Bestway (Wal-Mart Action, 10/5/17, Doc. 64, at 8-10).

---

bar date has not yet been established.  Plan, § 1.12. Also, Team Worldwide has been negotiating with the Debtors regarding the contents of this Limited Objection, including Team Worldwide's asserted post-petition administrative claim. Accordingly, Team Worldwide has not yet filed an application for allowance and payment of its post-petition administrative expense claim but reserves the right to do so at any time prior to the deadline established by the Court.

3

6.     The Infringing Debtors are parties to certain similar agreements (the **"Sears Supply Agreements"**)[5] pursuant to which the Infringing Products are sold to the Infringing Debtors, and that the Infringing Debtors have broad indemnification rights under those agreements, including the rights to have the indemnifying manufacturers pay for all amounts of damages and royalties related to settlements and judgments, together with all attorneys' fees and costs, and other costs associated with any claims of patent infringement.  Basically, the Debtors are completely indemnified by the manufacturers for Team Worldwide's patent infringement claims.

7.     In April 2019, just after the Debtors filed their initial version of the Plan, Team Worldwide contacted the Debtors to request copies of the Sears Supply Agreements, to the extent they exist.  Team Worldwide informed the Debtors that the Sears Supply Agreements likely contained indemnification provisions that could satisfy Team Worldwide's general unsecured claims (estimated to be tens of millions of dollars) and administrative expense claims (estimated to be millions of dollars) for patent infringement by the Infringing Debtors, saving the estates a significant amount.  Team Worldwide suggested to the Debtors that the most efficient way to accomplish that outcome would be to modify the Plan in order to preserve these indemnification rights.  The Plan as currently drafted enjoins Team Worldwide from taking actions against the Debtors (and the Liquidating Trust (defined below)) that would need to occur in order to invoke the indemnification rights.

8.     Team Worldwide followed up with the Debtors several times between April and June 2019 to inquire into the status of locating the Sears Supply Agreements.  On June 24, 2019,

---

[5] The Infringing Debtors are parties to certain Universal Terms and Conditions ("**UTCs**") with certain suppliers of air mattresses including Bestway (Hong Kong) International Ltd.; Coleman Company, Inc.; Intex Trading, Inc.; Boyd Flotation, Inc.; King Koil Licensing Company, Inc.; Sun Pleasure Co. Ltd.; and Southern Exchange Ltd. d/b/a Texsport.  These UTCs contain the terms and conditions for purchase orders with these suppliers.  The reference to Sears Supply Agreements in this Limited Objection is in reference to the purchase orders that incorporate the terms and conditions from the UTCs.

4

having at that time not received a single document from the Debtors, and facing an objection deadline for the Plan, Team Worldwide filed an application (the "**2004 Application**") under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") to request the Sears Supply Agreements and related discovery. On July 11, 2019, the Court granted the 2004 Application as modified on the record. On July 19, 2019, the Court entered an order [ECF 4576] (the "**2004 Order**") approving the 2004 Application, as modified.

9. Team Worldwide files this Limited Objection, because the injunctions under the Plan prevent Team Worldwide from commencing an action against the Infringing Debtors which is a condition to invoking the manufacturers' indemnification obligations under the Sears Supply Agreements. Accordingly, the Plan improperly discharges these indemnifying manufacturers in contravention of the Bankruptcy Code which prohibits a debtor's discharge from discharging any third-party that is liable for such debt.

10. Team Worldwide respectfully requests that this Court deny confirmation of the Plan unless the Debtors modify the Plan to preserve the Infringing Debtors' indemnification rights against the manufacturers under the Sears Supply Agreements and permit Team Worldwide to name the Infringing Debtors (and the Liquidating Trust, if needed) as nominal defendants in a lawsuit to invoke the indemnification obligations.

11. Team Worldwide previously provided the Debtors, through counsel, with language it recommends for inclusion in the order confirming the Plan, as follows (the "**Proposed Plan Language**"):[6]

> Notwithstanding anything else herein, nothing in the Plan or this Order shall be deemed or construed to impact, impair, affect, determine, release, waive, modify,

---

[6] On July 24, 2019, the Debtors proposed alternative language for inclusion in the order confirming the Plan, which acts as a broad reservation of rights. The parties are negotiating the specific language, but in light of the fact that a resolution has not yet been accomplished, Team Worldwide is compelled to file this Limited Objection, and asks the Court to consider the more appropriate, specific language that Team Worldwide proposed to the Debtors.

limit or expand: (i) the terms and conditions of any supply agreement (collectively, the "Supply Agreements") between a party (an "Indemnifying Party") and a Debtor containing a provision or clause that purports to create an obligation of the Indemnifying Party to indemnify, defend against, reimburse, fund, or otherwise be responsible for any liabilities, damages, losses, or costs associated with any potential claims, suits, actions, or other proceedings seeking judgment against the Debtor or its affiliates (the "Indemnity Obligations"); (ii) any of the rights, remedies, defenses to coverage and other defenses of any party under or in respect of any Supply Agreements; (iii) any claims, actions, rights to payment or other similar claims held by Team Worldwide Corporation ("Team Worldwide") against any Debtor if covered by the Indemnity Obligations (the "Covered Claims"), and (iv) any claims, actions, rights to payment or other similar claims held by Team Worldwide against the Buyer, as a result of post-closing infringement claims. All such rights, remedies, and defenses are expressly reserved and preserved.

Notwithstanding anything in the Plan or this Order, Team Worldwide is authorized to pursue, in any court of competent jurisdiction, a determination of liability (the "Infringement Liability") of the Covered Claims against the Debtors to final judgment and to enforce any resulting judgment against the Indemnifying Parties (the "Coverage Lawsuit").

Following the commencement of the Coverage Lawsuit, the Debtors and/or the Liquidating Trustee shall provide notice to the Indemnifying Parties of the Covered Claims and take such further action reasonably required under the Supply Agreements to have the Indemnifying Parties perform their Indemnity Obligations.

12. The inclusion of the Proposed Plan Language in the confirmation order will resolve this Objection and the *Motion of Team Worldwide To Modify Automatic Stay Pursuant To 11 U.S.C. §362* [ECF 4344] (the "**Stay Relief Motion**").

## FACTUAL BACKGROUND

13. On October 15, 2018 (the "**Petition Date**"), the Debtors filed voluntary chapter 11 petitions with this Court.

14. On April 10, 2019, Team Worldwide filed the Proofs of Claim.

15. On June 24, 2019, Team Worldwide filed the Stay Relief Motion, which is scheduled to be heard at the omnibus hearing on August 22, 2019.

16. On June 24, 2019, Team Worldwide filed the 2004 Application. On July 19, 2019, the Court entered the 2004 Order.

6

17. On July 9, 2019, the Debtors filed the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF 4476] (the "**Plan**") and the *Disclosure Statement For Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF 4478] ("**Disclosure Statement**").

18. The Plan provides for the liquidation of all or substantially all of the property of the Debtors' estates. Disclosure Statement, I.B. (On February 11, 2019, the Debtors and the Buyer completed the Sale Transaction (the "Sale Closing") and substantially all of the Debtors' assets were transferred to the Buyer.") The Debtors will not engage in business after consummation of the Plan.

19. The Plan also provides for conditional, risky, and unlikely treatment and payment of Allowed Administrative Expense Claims (as defined in the Plan). Plan, §2.1(a).

20. The Plan also includes broad injunctions on creditors, including Team Worldwide, from continuing or commencing any action post-confirmation against the Debtors (the "**Plan Injunctions**").[7]

---

7     Plan, Section 15.8 "Injunction" states:

> Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Interests in any or all of the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Liquidating Trust or the property of any of the Debtors or the Liquidating Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Liquidating Trust or the

7

21. As of June 22, 2019, the Debtors estimated that the Administrative Expense Claims, excluding any claim entitled to priority under Bankruptcy Code §507(b), total approximately $468 million in the aggregate for all of the Debtors. *See* Disclosure Statement, §IV.T. This estimate attributes only $181 million to claims asserted under Section 503(b)(9), even though as of June 19, 2019, holders of administrative expense claims under Section 503(b)(9) filed 2,540 proofs of claim totaling $1.36 billion, and the Debtors have not begun their analysis of those claims or filed any objections. *Id.* The Debtors also have yet to disclose which Administrative Expense Claims will be allowed.

## LIMITED OBJECTION

### A.  The Plan Improperly Discharges the Manufacturers in Violation of Sections 1129(a)(1) and 524(e) of the Bankruptcy Code

22. Section 524(e) of the Bankruptcy Code provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for such debt." 11 U.S.C. § 524(e). Because section 1129(a)(l) requires as a condition to confirmation that the plan complies with title 11, a plan cannot be confirmed if it violates section 524(e)'s specific prohibition.

23. Section 524(e) permits a creditor to seek recovery from "any other entity" who may be liable on behalf of the debtor. In discussing the scope of section 524 of the Bankruptcy Code, Collier's makes this observation:

> the provisions of 524(a) apply only with respect to the personal liability of the debtor. When it is necessary to commence or continue a suit against a debtor in order, for example, to establish liability of another, perhaps a surety, such suit would not be barred. Section 524(e) was intended for the benefit of the debtor but

---

property of any of the Debtors or the Liquidating Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors or the Liquidating Trust or against property or interests in property of any of the Debtors or the Liquidating Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

8

was not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required.

Collier on Bankruptcy ¶ 524.01 at 524-16 (15th ed.1987).

24. "[P]ursuant to section 524(e), a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another[.]" *In re Jet Fla. Sys., Inc.*, 883 F.2d 970, 976 (11th Cir. 1989). Even in situations such as this where the Infringing Debtors would be named as nominal defendants and could elect to defend the claims, courts have nonetheless permitted such suits to proceed against debtors recognizing that "the practical and economic realities compel the [indemnifying party] to defend the underlying action." *Id.*; *see also Matter of Holtkamp*, 669 F.2d 505, 508-09 (7th Cir.1982).

25. The Second Circuit Court of Appeals has recognized that bankruptcy should not be used to protect non-debtors from their liabilities. *See First National Bank of Herkimer v. Poland Union*, 109 F.2d 54, 56 (2d Cir.) *cert. denied* 309 U.S. 682 (1940) ("[T]he essence of the plan is a perpetual injunction restraining in personam suits against shareholders - a decree the reorganization court cannot make under the circumstances here present. Such an injunction would be tantamount to a discharge in bankruptcy. Yet the shareholders have filed no petition, they have not been subject to any examination, and their assets are not in judicial custody").

26. Here, the Plan Injunctions currently prevent Team Worldwide from commencing an action against the Infringing Debtors. However, the commencement of such an action is a condition precedent to invoking the broad and comprehensive manufacturers' indemnification obligations under the Sears Supply Agreements.

27. The Plan should not be confirmed unless there is an exception to the Plan Injunctions to allow Team Worldwide to commence an action against the Infringing Debtors for the purpose of invoking the Infringing Debtors' indemnification rights under the Sears Supply

9

Agreements. Otherwise the indemnifying manufacturers stand to realize a very substantial windfall, in the tens of millions of dollars, by having these manufacturer's own liabilities and obligations improperly discharged together with and as a result of the Debtors' discharge.

> **B.    The Plan Violates the Prohibition Against Discharge Contained In Section 1141(d)(3)**

28.    Section 1141(d)(3) of the Bankruptcy Code provides:

(3) The confirmation of a plan does not discharge a debtor if --

> (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
>
> (B) the debtor does not engage in business after consummation of the plan; and
>
> (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3).

29.    Section 727(a)(1) of the Bankruptcy Code provides that a debtor that is not an individual is not entitled to a discharge in a Chapter 7 bankruptcy case. 11 U.S.C. § 727(a)(1). *In re Miller,* 97 B.R. 760 (Bankr. W.D.N.Y. 1989) ("[A] Chapter 11 debtor may be denied discharge for any of the grounds listed under section 727(a) if a plan of reorganization is confirmed which provides for the liquidation of substantially all the estate property and the debtor desists from engaging in business after consummation of the plan.") (citing 11 U.S.C. § 1141(d)(3)).

30.    Section 524(a) of the Bankruptcy Code explains that a discharge is an injunction against the commencement or continuation of an action to collect or recover any debt as a personal liability of the debtor. 11 U.S.C. § 524(a) ("A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]").

31.     Here, in the context of a liquidating plan, the Plan Injunctions are an injunction against the commencement or continuation of an action to collect or recover a debt of the Debtors and, therefore, constitute a "discharge" under the Bankruptcy Code. *In re Bigler LP,* 442 B.R. 537, 541 n3 (Bankr. S.D. Tex. 2010) ("[A] discharge or injunction is only available to Chapter 11 debtors under a plan of rehabilitation. Under a liquidating plan, . . . a debtor will not be entitled to a discharge or an injunction, pursuant to 11 U.S.C. § 1141(d)(3).").

32.     The elements of Section 1141(d)(3) are plainly met here. The Plan provides for the sale of substantially all of the Debtors' assets, and the Debtors will not be operating a business after the consummation of the Plan. The Plan, despite the statutory prohibition in section 1141(d)(3), attempts to grant the Debtors a discharge. The Plan's discharge provisions are clearly contrary to section 1141(d)(3) and, therefore, section 1129(a)(1) prohibits confirmation of the Plan.

       **C.**     **The Plan Is Not Proposed In Good Faith and Violates Section 1129(a)(3)**

33.     Section 1129(a)(3) of the Bankruptcy Code requires the Plan to be "proposed in good faith and not by any means forbidden by law." "Good faith," as used in section 1129(a)(3), is not defined in the Bankruptcy Code. Section 1129(a)(3) "speaks more to the process of plan development than to the content of the plan." *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010).

34.     Team Worldwide believes that although the Plan as a whole may have been proposed in good faith, the Debtors have not in good faith attempted to address Team Worldwide's valid concerns concerning language in the Plan which prejudices Team Worldwide's rights post-confirmation.

11

35. Team Worldwide's efforts to gain the Debtors' attention and cooperation with respect to proposed modifications to the Plan which are necessary to preserve Team Worldwide's rights and benefit the Debtors' estates were initially ignored, and eventually addressed in a "take it or leave it" fashion.  In April 2019, soon after the Debtors filed their original version of the Plan, Team Worldwide contacted the Debtors in order to request copies of the Sears Supply Agreements and discuss how to best resolve Team Worldwide's concerns regarding the indemnification rights provided for therein, the Proofs of Claim, and how those issues might be impacted by the Plan. Team Worldwide informed the Debtors that certain manufacturers likely indemnified the Debtors for liabilities relating to infringement of Team Worldwide's patents, and that these indemnification rights are valuable to the Debtors' estates.  Team Worldwide informed the Debtors that these indemnification rights could be used to reduce the general unsecured claims and administrative expense claims against the Debtors' estates as set forth in the Proofs of Claim, but under the current formulation of the Plan these indemnification rights would likely be lost.

36. Over the next few months, the Debtors filed three more versions of the Plan after Team Worldwide raised these issues with the Debtors.   Team Worldwide went so far as to draft proposed language that the Debtors could insert in the Plan or confirmation order.

37. Instead of negotiating with Team Worldwide to find language that would satisfy both parties, the Debtors did not incorporate any language into the amended Plans to address the issues raised by Team Worldwide.  The Debtors did not incorporate any provisions into the Plan to try to preserve the Debtors' indemnification rights against the indemnifying manufacturers or provide Team Worldwide a means invoke these indemnification rights.  Furthermore, instead of working with Team Worldwide in response to the 2004 Application, which would provide crucial information to Team Worldwide from the only source of that information, the Debtors filed an

objection. And, it was only after the 2004 Order was entered that the Debtors provided the Sears Supply Agreements and related materials.

38. The Debtors did not contest the merits of Team Worldwide's position. Instead, without providing any substantive explanation at all, the Debtors told Team Worldwide that they "prefer" (without any factual or legal basis) to <u>not modify</u> the Plan to address these issues.[8] To date, the Debtors continue to propose a Plan that enjoins Team Worldwide from commencing an action against the Infringing Debtors which would shield the manufacturers from their substantial liabilities and obligations under the Sears Supply Agreements.

39. Team Worldwide presented a meritorious issue to the Debtors and proposed a straight-forward way for the Debtors to deal with it in their Plan. The Debtors refusal to engage this issue, despite the fact that resolving Team Worldwide's issues would be simple and likely result in the elimination of millions of dollars of pre-petition and post-petition claims against the Debtors' estates, is not "good faith." The Debtors have violated section 1129(a)(3) and confirmation of the Plan should be denied.

### D. The Plan Cannot be Confirmed – The Debtors Have Not Demonstrative Compliance with Section 1129(a)(9)

40. Bankruptcy Code §1129(a)(9) requires that with respect to administrative expense claims, "on the effective date of the plan, the holder of such claim will receive – (i) on account of such claim cash equal to the allowed amount of such claim." 11 U.S.C. §1129(a)(9). *See also* 11 U.S.C. §507(a)(2); *Pan Am Corp. v. Delta Air Lines,* 175 B.R. 438, 483 (S.D.N.Y. 1994) (referring to Bankruptcy Code §1129(a)(9) as the "administrative solvency" requirement); *In re Scott Cable Communications, Inc.,* 227 B.R. 596, 600 (Bankr. D. Conn. 1998) ("The code's confirmation

---

[8] Prior to the deadline to object to the Plan, the Debtors provided Team Worldwide with proposed language to modify the Plan, which is essentially a reservation of rights. Team Worldwide is continuing to work with the Debtors to reach mutually agreeable language, but was unable to find a workable solution prior to the deadline to object to the Plan confirmation.

scheme elevates allowed administrative claims to a dominant priority such that unless the holders agree to a different treatment, a plan cannot be confirmed without full payment of those claims . . . .") (citing *Pan Am Corp. v. Delta Airlines, Inc.,* 175 B.R. 438, 456, 508 (S.D.N.Y. 1994)).

41. The Plan cannot be confirmed because the Debtors have not demonstrated their ability to satisfy the requirement that on the Effective Date, holders of Administrative Expense Claims will be paid in full in cash on account of such claims, unless they have agreed otherwise.

42. While the Plan contemplates an Administrative Expense Claim Bar Date, no such bar date has been established and as stated above, the Plan provides for a risky, contingent, and unclear method for satisfaction of what appears to be still an unknown universe of Administrative Expense Claims. Under the Plan, Administrative Expense Claims are entitled to be paid in full upon the Effective Date or promptly following the allowance of such administrative expense claim. Plan, § 2.1.

43. As stated above, Team Worldwide will assert an administrative expense claim against the Infringing Debtors for infringing Team Worldwide's patents after the Petition Date. Team Worldwide estimates that its administrative expense claim against the Infringing Debtors' estates for post-petition patent infringement will be in excess of $2 million.

44. The Plan does not provide for any different treatment agreed to by holders of Administrative Expense Claims, and it is not clear that the Debtors will be able to pay all Administrative Expense Claims in full in cash on the Effective Date. Thus, the Debtors have not demonstrated that the proposed treatment of administrative claims under the Plan satisfies the requirements of Bankruptcy Code §1129(a)(9).

E. **The Plan is Not Feasible – The Debtors Must Satisfy Their Burden Under Section 1129(a)(11)**

45. Section 1129(a)(11) of the Bankruptcy Code requires that a chapter 11 plan is not likely to be followed by liquidation or the need for further financial reorganization. 11 U.S.C. § 1219(a)(11). This is known as the "feasibility test."

46. The Debtors must demonstrate that the Plan's provision for payment in full of all Allowed Administrative Expense Claims is feasible. The Plan purports to provide that each holder of an Allowed Administrative Expense Claim will be paid in full (unless they agree otherwise), but for the reasons set forth above, the Debtors have not demonstrative their ability to actually fulfill that promise, or that they have even undertaken such an analysis.

47. Team Worldwide has presented the Debtors a proposal to avoid having to pay such claims from the Debtors' estates, but the Debtors have declined this proposal and have not provided a meaningful alternative.

48. As a result, Team Worldwide will hold the Debtors to their burden to demonstrate that the Plan is feasible and that there will be sufficient resources to pay all administrative expense claims in full in accordance with the terms of the Plan.

[Remainder of Page Intentionally Left Blank]

## CONCLUSION

For the foregoing reasons, Team Worldwide respectfully requests that the Court deny confirmation of the Plan unless the confirmation order preserves the Debtors' indemnification rights under the Sears Supply Agreements against the indemnifying manufacturers and provides a means for Team Worldwide to invoke these indemnification obligations.

Dated: New York, New York
August 6, 2019

**DIAMOND McCARTHY LLP**

By: *Charles M. Rubio*
Allan B. Diamond
Charles M. Rubio
Sheryl P. Giugliano
295 Madison Avenue, 27th Floor
New York, New York 10017
(212) 430-5400

*Counsel to Team Worldwide Corporation*