Alan M. Feld, Esq.
Ted Cohen, Esq. *Admitted Pro Hac Vice*
**SHEPPARD MULLIN RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701

*Counsel for Everlast World's Boxing Headquarters Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS, *et. al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>Jointly Administered<br><br>Hearing Date:     September 25, 2019, 10:00 a.m. ET<br>Objection Deadline:  August 21, 2019, 4:00 p.m. ET |

**NOTICE OF HEARING ON MOTION OF EVERLAST WORLD'S BOXING HEADQUARTERS CORP. UNDER BANKRUPTCY CODE SECTION 503(b)(1)(A) FOR <u>ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM</u>**

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion") of

Everlast World's Boxing Headquarters Corp. ("Everlast" or "Licensor") under Bankruptcy Code

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

SMRH:4831-8050-9085.4

Section 503(b)(1)(A) For Allowance and Payment of Administrative Expense Claim, all as more fully set forth in the Motion, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York 10061-4140 (the "Bankruptcy Court") on September 25, 2019 at 10:00 a.m. (Eastern Time) (the "Hearing"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "Objections") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "Case Management Order"), so as to be filed and received no later than August 21, 2019 at 4:00 p.m. (Eastern Time) (the "Objection Deadline").[2]

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, Licensor may, on or after the Objection Deadline, submit to the

---

[2] Pursuant to paragraph 29 of the Case Management Order, because this Motion is being filed in advance of the deadline for a hearing on September 25, 2019 (such deadline being September 11, 2019), the Objection Deadline may be set for a date equal to seven (7) calendar days plus the number of calendar days the Motion is filed in advance of September 11, 2019. The August 21, 2019 Objection Deadline provides more time to object than is required under the Case Management Order.

Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted upon default.

Dated: August 6, 2019
       Los Angeles, California    **SHEPPARD MULLIN RICHTER &**
                                               **HAMPTON LLP**

                                               By: _/s/ Ted Cohen_
                                               Alan M. Feld, Esq.
                                               Ted Cohen, Esq. *Admitted Pro Hac Vice*
                                               30 Rockefeller Plaza
                                               New York, New York 10112
                                               Tel: (212) 653-8700
                                               Fax: (212) 653-8701
                                               E-mail: afeld@sheppardmullin.com
                                                               tcohen@sheppardmullin.com

                                               *Counsel for Everlast World's Boxing Headquarters Corp.*

Alan M. Feld, Esq.
Ted Cohen, Esq. *Admitted Pro Hac Vice*
**SHEPPARD MULLIN RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 653-8700
Fax: (212) 653-8701

*Counsel for Everlast World's Boxing Headquarters Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS, *et. al.*,[3]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>Jointly Administered<br><br>Hearing Date:       September 25, 2019, 10:00 a.m. ET<br>Objection Deadline: August 21, 2019, 4:00 p.m. ET |

**MOTION OF EVERLAST WORLD'S BOXING HEADQUARTERS CORP.**
**UNDER BANKRUPTCY CODE SECTION 503(b)(1)(A) FOR ALLOWANCE AND**
**PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

Everlast Worldwide's Boxing Headquarters Corp. ("Everlast" or "Licensor") files this

Motion Under Bankruptcy Code Section 503(b)(1)(A) For Allowance and Payment of

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Administrative Expense Claim (the "Motion") and the concurrently filed supporting Declaration of Margaret Kivett ("Kivett Dec."), and respectfully represents in support of the Motion:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

2.  The statutory predicate for the relief requested herein is Section 503(b)(1)(A) of Title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

3.  Everlast is the former trademark licensor to debtors Sears, Roebuck & Co. ("Sears") and Kmart Corporation (collectively with Sears, "Licensees") as licensees under an August 18, 2010 Trademark License Agreement (as amended from time to time, the "License Agreement") for the "Everlast" and related trademarks (collectively, the "Everlast Marks"). Under the License Agreement, Licensees were authorized through February 1, 2020 to order the manufacture of, and to sell, specified Everlast branded products in the United States and its territories on further terms set forth in the License Agreement.  [Kivett Dec., ¶4]

4.  The license granted by Licensor to Licensee was exclusive, so that Licensor could not license the Everlast Marks to anyone else in the covered territory, thereby limiting Licensor's revenues from the Everlast Marks to royalties paid by Licensees to Licensor in exchange for such exclusive license.  Licensees were required to pay Licensor royalties equal to the greater of royalties at specified rates on actual revenues or a minimum dollar royalty, on an annual basis. The parties determined the pricing (including the royalty rates and the annual minimums) based

on Licensees' projected volume and the exclusivity that Licensees received under the License Agreement. [Kivett Dec., ¶5]

5. Licensees' fiscal year under the License Agreement ran from February 1 through January 31. Licensees filed bankruptcy on October 15, 2018, and continued post-petition to reap the benefits of the License Agreement through April 10, 2019, the date upon which Licensees rejected the License Agreement. After taking into account partial payments that Licensees have made to Licensor, Licensor has claims against Licensees for unpaid royalties for fiscal years 2018 (2/1/18 through 1/31/19) and 2019 (2/1/19 through 1/31/20). Because part of fiscal year 2018 was pre-petition and part of fiscal year 2019 was post-rejection, part of Licensor's claim for unpaid royalties is entitled to administrative priority, and the remainder is unsecured.

## RELIEF REQUESTED

6. As set forth in the concurrently filed Kivett Dec. and below, Licensor has an administrative expense claim in these cases under Bankruptcy Code Section 503(b)(1)(A) in an amount no less than $1,209,844.30, and possibly in excess of $1,368,268.55. Licensor requests entry of an order, substantially in the form attached hereto as Exhibit A: (i) granting Licensor an allowed administrative expense claim under Bankruptcy Code Section 503(b)(1)(A) for actual, necessary costs and expenses of preserving the estate in an amount no less than $1,209,844.30, and possibly in excess of $1,368,268.55, and (ii) compelling payment of such allowed administrative expense claim upon allowance thereof, and no later than the effective date of Licensees' plan.

## BASIS FOR RELIEF

7. Under the License Agreement, for fiscal years 2018 and 2019, the annual minimum guaranteed royalties were $4,500,000 per year ("AMGR"). Licensees did not have

enough sales to generate at least $4,500,000 of royalties in fiscal year 2018 (from February 1, 2018 through January 31, 2019), meaning that their royalty liability for that year was $4,500,000. Licensees paid Licensor a total of $2,539,548.06 in royalties for fiscal year 2018, leaving an AMGR shortfall and balance owed of $1,960,451.94. $592,183.39 of that amount is unpaid, pre-petition royalties on actual revenues (Licensor's Proofs of Claim filed against Licensees on February 4, 2019 (Claim Nos. 8355 and 8380) ("Proofs of Claim")[4]), leaving an AMGR shortfall for fiscal year 2018 of $1,368,268.55. Under Section 4.2 of the License Agreement, any AMGR shortfall is calculable and becomes due after the end of the fiscal year, which for 2018 was January 31, 2019. [Kivett Dec., ¶¶ 4(e), 6] Throughout the relationship between Licensor and Licensees under the License Agreement, the parties operated as provided in Section 4.2, i.e., in years where there was an AMGR shortfall, the AMGR shortfall was calculated and became due after the end of each such fiscal year. [Kivett Dec., ¶4(e)] As Licensor contended in its Proofs of Claim and in Licensor's since-withdrawn Motion to Compel Assumption or Rejection of the License Agreement filed March 7, 2019 (the "365 Motion") [Dkt. No. 2779], because the 2018 AMGR shortfall was calculated and became due post-petition and represented the bargained-for exclusivity that Licensees received under the License Agreement, the entire AMGR shortfall of $1,960,451.94 net of the $592,183.39 pre-petition portion, in the amount of $1,368,268.55 is entitled to administrative priority.

8.      In paragraph 13 of their opposition to the 365 Motion filed March 15, 2019 [Dkt. No. 2844], Licensees disputed Licensor's contention that the entire AMGR shortfall is entitled to

---

[4] In addition to the Proofs of Claim, on May 21, 2019, Licensor filed rejection claims against Licensee based on Licensees' rejection of the License Agreement (Claim Nos. 19548 and 19555) (the "Rejection Claims"). Licensor reserves and does not waive its Proofs of Claim and Rejection Claims. Licensor will know the ultimate amounts of its Proofs of Claim and Rejection Claims after its administrative claim is determined and allowed, and thereafter will amend its Proofs of Claim and Rejection Claims accordingly.

administrative priority. Licensees argued, and cited cases for the proposition, that with respect to trademark licenses, the licensor's allowed administrative claim should be the minimum royalty amount provided for in the license agreement, prorated for the days of actual usage of the trademark during the post-petition, pre-rejection period. Dkt. No. 2844, ¶13, citing *In re Home Interiors & Gifts, Inc.*, No. 08-31961-11-BJH, 2008 WL 4772102, at *10 (Bankr. N.D. Tex. 10/9/08); *In re Beverage Canners Int'l Corp.*, 255 B.R. 89, 91 (Bankr. S.D. Fla. 2000).

9. If Licensees are correct that Licensor's administrative claim is limited to the minimum royalty amount provided for in the License Agreement, prorated for the days of actual usage of the Everlast Marks during the post-petition, pre-rejection period, then the portion of Licensor's unpaid royalties for fiscal year 2018 would be $359,159.17, calculated as follows. With an AMGR of $4,500,000, the pro-rated daily AMGR is $12,328.77 ($4,500,000 divided by 365 days). For the 17 post-petition, pre-rejection days in the third quarter of fiscal year 2018 (October 15 through 31, 2018), Licensees paid Licensor $194,088.76. The pro-rated AMGR for that period is $209,589.09 (which is $12,328.77 per day times 17 days). The difference between $209,589.09 and $194,088.76 is $15,500.33. For the 92 post-petition, pre-rejection days in the fourth quarter of fiscal year 2018 (November 1, 2018 through January 31, 2019), Licensees paid Licensor $790,588. The pro-rated AMGR for that period is $1,134,246.84 (which is $12,328.77 per day times 92 days). The difference between $1,134,246.84 and $790,588 is $343,658.84. Adding $15,500.33 to $343,658.84 is $359,159.17. [Kivett Dec., ¶7]

10. If the Court accepts Licensor's contention, the administrative portion of Licensor's unpaid claim for fiscal year 2018 is $1,368,268.55. If the Court accepts Licensees' contention, the administrative portion of Licensor's unpaid claim for fiscal year 2018 is $359,159.17.

11. Like fiscal year 2018, Licensees almost certainly did not have enough sales to generate at least $4,500,000 of royalties in fiscal year 2019 (from February 1, 2019 through January 31, 2020), meaning that their royalty liability for that year is $4,500,000. This is not surprising given that Licensees rejected the License Agreement effective April 10, 2019, only a few months into fiscal year 2019. Fiscal year 2019 is the mirror image of fiscal year 2018. If the Court accepts Licensor's contention that the AMGR shortfall is not calculated and due until the end of the fiscal year (which would be January 31, 2020), then the portion of Licensor's claim for fiscal year 2019 entitled to administrative priority would be limited to the royalty due on actual revenues. Because Licensees have not provided Licensor with the royalty report for the first quarter of fiscal year 2019 (which was due by the end of May), Licensor does not know what the royalty for actual revenues between February 1, 2019 (the first day of the first quarter of fiscal year 2019) and April 10, 2019 (the date of rejection of the License Agreement) would be. [Kivett Dec., ¶8]

12. If the Court accepts Licensees' contention that the AMGR is prorated based on actual days of usage post-petition and pre-rejection, the royalty due for actual revenues between February 1, 2019 and April 10, 2019 likely would not matter (because it is unlikely that Licensees achieved the pro-rated AMGR for that time period), and Licensor's administrative claim for unpaid royalties in the first quarter of fiscal year 2019 through the date of rejection would be $850,685.13, calculated as follows. During the first quarter of fiscal year 2019, Licensees used the Everlast Marks under the License Agreement from February 1, 2019 (the first day of the quarter) through April 10, 2019 (the rejection date of the License Agreement). This is a total of 69 days. Since the AMGR for fiscal year 2019 was also $4,500,000, the daily proration is $12,328.77, which multiplied by 69 days is $850,685.13. [Kivett Dec., ¶9]

13. In sum, if the Court treats the entire AMGR shortfall as an administrative claim on the theory that the AMGR shortfall is not calculated and due until after the end of the fiscal year, the amount of Licensor's administrative claim is $1,368,268.55 for fiscal year 2018 plus royalties on actual revenues for the period February 1, 2019 through April 10, 2019 for fiscal year 2019 (which amount is unknown to Licensor because Licensees have not provided the royalty report for such time period). On the other hand, if the Court prorates the AMGR for the days of actual usage of the Everlast Marks during the post-petition, pre-rejection period, the amount of Licensor's administrative claim is $1,209,844.30, comprised of the sum of $359,159.17 of unpaid post-petition, pre-rejection royalties for fiscal year 2018 plus $850,685.13 of unpaid post-petition, pre-rejection royalties for fiscal year 2019.

14. The following chart illustrates Licensor's administrative claim:

**Administrative Claim Amount**

| **If Entire AMGR Shortfall is Entitled To Administrative Priority** | **If Only AMGR for Days of Actual Usage During Post-Petition, Pre-Rejection Period is Entitled to Administrative Priority** |
| --- | --- |
| FY 2018 - $1,368,268.55 | FY 2018 - $359,159.17 |
| FY 2019 – unknown because Licensees have not provided royalty report, which is past due (2/1/19-4/10/19) | FY 2019 - $850,685.13 (2/1/19-4/10/19) |
| Total: **$1,368,268.55 plus royalty on actual revenues 2/1/19-4/10/19** | Total: **$1,209,844.30** |

15. The Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including — the actual, necessary costs and expenses of preserving the estate ...." 11 U.S.C. §503(b)(1)(A)."

16.     In this case, Licensees continued to use the Everlast Marks post-petition and derive substantial income therefrom. Moreover, from October 15, 2018 through April 10, 2019 (the post-petition, pre-rejection period during which Licensees obtained the benefits of the License Agreement), Licensees had the exclusive right to use the Everlast Marks in the United States and its territories. Based on the prohibition of Licensor from also licensing the Everlast Marks to other licensees in the United States, the parties negotiated the $4,500,000 AMGR. Thus, Licensees derived substantial post-petition benefit to their operations. As reflected in paragraph 13 of their opposition to the 365 Motion and paragraph 8 herein, Licensees do not dispute Licensor's entitlement to administrative priority for the unpaid AMGR shortfall. The only issue is whether the AMGR shortfall is determined at the end of the fiscal year (in which case the amount of Licensor's administrative claim is $1,368,268.55 for fiscal year 2018 plus royalties on actual revenues for the period February 1, 2019 through April 10, 2019 for fiscal year 2019 (which amount is unknown to Licensor because Licensees have not provided the royalty report for such time period)), or whether, as Licensees contend, Licensor's administrative claim should be the minimum royalty amount provided for in the license agreement, prorated for the days of actual usage of the Everlast Marks during the post-petition, pre-rejection period (in which case the amount of Licensor's administrative claim is $1,209,844.30, comprised of the sum of $359,159.17 of unpaid post-petition, pre-rejection royalties for fiscal year 2018 plus $850,685.13 of unpaid post-petition, pre-rejection royalties for fiscal year 2019).

17.     In addition to allowance of the foregoing administrative claim, Licensor respectfully requests immediate payment thereof. With respect to timing of payment of an allowed administrative claim, courts have discretion to order the immediate payment of such a claim. *See In re HQ Global Holdings, Inc.,* 282 B.R. 169, 173 (Bankr. D. Del. 2002) (citing

*Matter of Baptist Medical Center of New York, Inc.,* 52 B.R. 417, 421 (Bankr. E.D.N.Y. 1985); *In re Global Home Prods., LLC,* 2006 Bankr. LEXIS 3608, at *10-11 (Bankr. D. Del. Dec. 21, 2006). Courts look to a variety of factors in determining whether to order immediate payment, including (i) bankruptcy's goal of orderly and equal distribution among creditors, (ii) the particular needs of the administrative claimant, and (iii) the length and expense of the case's administration. *Id.* Other courts have interpreted these factors as (i) prejudice to the debtors, (ii) hardship to the claimant, and (iii) potential detriment to other creditors. *See Global Home Prods., LLC,* 2006 Bankr. LEXIS 3608, at *12. Courts use their discretion as to timing to "ensure the "orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets," especially if there is a doubt as to the administrative solvency of the debtor overall." *In re King,* 392 B.R. 62, 68 (Bankr. S.D.N.Y. 2008) (citing, among various cases, *In re HQ Global Holdings, Inc.,* 282 B.R. at 173).

18. Licensor respectfully requests that the Court order Licensees to make payment of Licensor's allowed administrative expense claim upon allowance thereof, and no later than the effective date of Licensees' plan.

## NOTICE

19. Notice of this Motion is being served on (i) counsel to the Debtors, (ii) Counsel to the Official Committee of Unsecured Creditors, (iii) the Office of the United States Trustee, Region 2, (iv) and all other parties entitled to receive notice under Bankruptcy Rule 2002 and under paragraph 5 of the Case Management Order. Licensor submits that no other or further notice need be provided. No previous motion or application for the relief sought herein has been made to this or any other Court.

## RESERVATION OF RIGHTS

20. Licensor reserves the right to supplement or amend this Motion and make additional arguments at the hearing on this Motion. Licensor believes that there are no factual disputes requiring an evidentiary hearing on this Motion. In the event that Licensees assert in any opposition or other response to this Motion that there are any factual issues, Licensor reserves the right to request that the Court hold an evidentiary hearing on September 25, 2019 (the date of the hearing on this Motion), and to seek discovery from Licensees.

## CONCLUSION

21. Based on the foregoing, Licensor respectfully requests that the Court enter an order substantially in the form attached hereto as Exhibit A: (i) granting Licensor an allowed administrative expense claim under Bankruptcy Code Section 503(b)(1)(A) for the actual, necessary costs and expenses of preserving the estate in an amount no less than $1,209,844.30, and possibly in excess of $1,368,268.55, and (ii) compelling payment of such allowed administrative expense claim upon allowance thereof, and no later than the effective date of Licensees' plan.

Dated: August 6, 2019
    Los Angeles, California

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
By: */s/ Ted Cohen*
Alan M. Feld, Esq.
Ted Cohen, Esq.
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 653-8700
Fax: (212) 653-8701
E-mail: afeld@sheppardmullin.com
      tcohen@sheppardmullin.com

*Counsel for Everlast World's Boxing Headquarters Corp.*

## Exhibit A

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS, *et. al.*[5],<br><br>     Debtors. | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>Jointly Administered |

**ORDER ALLOWING AND COMPELLING PAYMENT OF ADMINISTRATIVE
EXPENSE CLAIM OF EVERLAST WORLDWIDE'S BOXING HEADQUARTERS
UNDER 11 U.S.C. § 503(b)(1)(A)**

Upon the Motion of Everlast Worldwide's Boxing Headquarters Corp. ("Licensor") Under Bankruptcy Code Section 503(b)(1)(A) For Allowance And Payment Of Administrative Expense Claim (the "Motion"); and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. Sections 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and requested relief therein being a core proceeding pursuant to 28 U.S.C. Section

---

[5] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

157(b); and venue being proper before this Court pursuant to 28 U.S.C. Sections 1408 and 1409; and due and proper notice of the relief requested in the Motion having been provided in accordance with the Case Management Order; such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and that the relief sought in the Motion is in the best interests of the Debtors, their assets, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted.

2. Licensor is granted an allowed administrative expense claim against the Debtors pursuant to Bankruptcy Code § 503(b)(1)(A) in the amount of $_____ (the "Claim").

3. The Debtors are directed to pay the Claim in cash within _____ (__) days of the date of this Order.

4. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE