Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5

6    SEARS HOLDINGS CORPORATION,          Case No. 18-23538-rdd

7

8           Debtor.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11

12                    U.S. Bankruptcy Court

13                    300 Quarropas Street

14                    White Plains, New York 10601

15

16                    May 29, 2019

17                    2:14 PM

18

19

20

21

22    B E F O R E :

23    HON ROBERT D. DRAIN

24    U.S. BANKRUPTCY JUDGE

25    ECRO:  NAROTAM RAI

Page 2

1   Notice of Agenda of Matters Scheduled for Hearing on May 29,

2   2019 at 1:30 p.m.

3

4   Statement: Notice of Filing of Exhibits to the Disclosure

5   Statement for Joint Chapter 11 Plan of Sears Holdings

6   Corporation and Its Affiliated Debtors (related

7   document(s)3276)

8

9   Motion to Approve : Debtors Motion for an Order (I)

10   Approving Disclosure Statement; (II) Establishing Notice and

11   Objection Procedures for Confirmation of the Plan; (III)

12   Approving Solicitation Packages and Procedures for

13   Distribution Thereof; (IV) Approving the Forms of Ballots

14   and Establishing Procedures for Voting on the Plan; and (V)

15   Granting Related Relief (related document(s)3276, 3275

16

17   Objection of Relator Carl Ireland, Administrator of the

18   Estate of James Garbe [ECF No. 4007]

19

20   Objection of California Commercial Roofing Systems [ECF No.

21   3640]

22

23   Objection of California Commercial Roofing Systems [ECF No.

24   3641]

25

Page 3

1    Objection of United States Trustee [ECF No. 3681]

2

3    Objection of U.S. Department of Labor, Employee Benefits

4    Security Administration [ECF No. 3759]

5

6    Objection of Linda J. Gonyo [ECF No. 3767]

7

8    Limited Objection of Winners Industry Co., Ltd. [ECF No.

9    3769]

10

11   Objection of Santa Rosa Mall, LLC [ECF No. 3771]

12

13   Objection of ESL Investments, Inc. [ECF No. 3988]

14

15   Objection of Wilmington Trust, National Association, as

16   Indenture Trustee and Collateral Agent [ECF No. 3990]

17

18   Limited Objection of Community Unit School District 300 [ECF

19   No. 3992]

20

21   The Canadian Plaintiffs' Limited Objection [ECF no. 3994]

22

23   Objection of the Official Committee of the Unsecured

24   Creditors [ECF No. 3995]

25

1    Objection of Santa Rosa Mall, LLC [ECF No. 3996]

2

3    Cyrus Capital Partners, L.P.'s Objection [ECF No. 3997]

4

5    Limited Joinder of Plus Mark LLC [ECF No. 4009]

6

7    Sears Retiree's Joinder of Secretary of Labors Limited

8    Objection to the Disclosure Statement for Joint Chapter 11

9    Plan of Sears Holdings Corporation and its Affiliated

10   Debtors [ECF No. 4058]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sherri L. Breach, Cert*D-397

```
                                                              Page 5

 1     A P P E A R A N C E S :

 2     WEIL, GOTSHAL & MANGES, LLP

 3          Attorneys for Debtors

 4          767 Fifth Avenue

 5          New York, New York 10153

 6

 7     BY:  SUNNY SINGH, ESQ.

 8          RAY C. SCHROCK, ESQ.

 9          JARED  R. FRIEDMANN, ESQ.

10

11     CLEARY, GOTTLIEB, STEEN & HAMILTON, LLP

12          Attorneys for Transform Holdco LLC & its affiliates

13          One Liberty Plaza

14          New York, New York 10006

15

16     BY:  THOMAS J. MOLONEY, ESQ.

17          SEAN A. O'NEAL, ESQ.

18

19     SEYFARTH SHAW, LLP

20          Attorneys for Wilmington Trust

21          620 Eighth Avenue

22          New York, New York 10018

23

24     BY:  EDWARD M. FOX, ESQ.

25
```

```
                                                        Page 6

  1   PBGC

  2         Attorneys for the Pension Benefit Guaranty Corporation

  3         1200 K Street NW

  4         Washington, D.C. 20005

  5

  6   BY:  MICHAEL BAIRD, ESQ.

  7

  8   LOCKE LORD, LLP

  9         Attorneys for Pension Benefit Guarantee Corporation

 10         111 South Wacker Drive

 11         Chicago, Illinois 60606

 12

 13   BY:  BRIAN A. RAYNOR, ESQ.

 14

 15   AKIN, GUMP, STRAUSS, HAUER & FELD, LLP

 16         Attorneys for Unsecured Creditors' Committee

 17         One Bryant Park

 18         New York, New York 10036

 19

 20   BY:  SARA L. BRAUNER, ESQ.

 21        JOSEPH L. SORKIN, ESQ.

 22        ZACH LANIER, ESQ.

 23        PHILIP C. DUBLIN, ESQ.

 24

 25
```

1   HUGHES, HUBBARD & REED

2        Attorneys for Canadian Litigation Trustee

3        Representative

4        One Battery Park Plaza

5        New York, New York 10044

6

7   BY:  DUSTIN P. SMITH, ESQ.

8

9   ALLEN & OVERY, LLP

10       Attorneys for Morneau Shepell Ltd

11       1221 Avenue of the Americas

12       New York, New York 10020

13

14   BY:  JOSEPH BADTKE-BERKOW, ESQ.

15

16   NORTON ROSE FULBRIGHT US, LLP

17       Attorneys for FTI, Canadian Monitor

18       1301 Avenue of the Americas

19       New York, New York 10019

20

21   BY:  ERIC DAUCHER, ESQ.

22

23

24

25

Page 8

```
 1   MILLBANK, LLP

 2        Attorneys for Cyrus Capital Partners, LP

 3        2029 Century Park East, 33rd Floor

 4        Los Angeles, California 90067

 5

 6   BY:  THOMAS R. KRELLER, ESQ.

 7        ERIC REIMER, ESQ.

 8

 9   ARCHER & GREINER, P.C.

10        Attorneys for Community Unit School District 300

11        630 Third Avenue

12        New York, New York 10017

13

14   BY:  ALLEN G. KADISH, ESQ.

15

16   O'MELVENY & MYERS, LLP

17        Attorneys for Unspecified

18        Times Square Tower

19        7 Times Square

20        New York, New York 10036

21

22   BY:  DANIEL S. SHAMAH, ESQ.

23

24

25
```

Page 9

1    WOLLMUTH, MAHER & DEUTSCH, LLP

2         Attorneys for Richard Bruce & Ronald Olbrush, Creditors

3         One Gateway Center

4         Newark, New Jersey 07102

5

6    BY:  JAMES N. LAWLOR, ESQ.

7

8    SEWARD & KISSEL, LLP

9         Attorneys for Wilmington Savings Fund Society

10        One Battery Park Plaza

11        New York, New York 10004

12

13   BY:  ARLENE R. ALVES, ESQ.

14

15   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP

16        Attorneys for Restructuring Subcommittee

17        1285 Avenue of the Americas

18        New York, New York 10019

19

20   BY:  LEWIS R. CLAYTON, ESQ.

21        PAUL M. BASTA, ESQ.

22

23

24

25

1    OFFICE OF THE UNITED STATES TRUSTEE

2         Attorneys for U.S. Trustee

3         201 Varick Street, Suite 1006

4         New York, New York 10014

5

6    BY:  PAUL SCHWARTZBERG, ESQ.

7

8    ALSO APPEARING TELEPHONICALLY:

9    LEONARD GERSON, ESQ.

10   GUSTAVO CHICO-BARRIS, ESQ.

11   WALTER BENZIJA, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE COURT:  Okay.  Good afternoon.  In re: Sears

3    Holdings Corporation, et al.

4            MR. SCHROCK:  Good afternoon, Your Honor.  Ray

5    Schrock, Weil, Gotshal & Manges on behalf of the debtors.

6    I'm here today with my partners, Sunny Singh and Jared

7    Friedmann.

8            First of all, thanks very much, Your Honor, for

9    the additional time.  I do think it was time well spent and

10   that, you know, we're in a position at this point where the

11   disclosure statement hearing should be, fingers crossed,

12   largely uncontested.

13           THE COURT:  Okay.

14           MR. SCHROCK:  Your Honor, again, thanks to your

15   court chambers, and we filed a number of documents over the

16   last 24 hours.  We did file a copy of our reply, an amended

17   plan and disclosure statement, as well as an amended

18   liquidation analysis that we also filed last evening.

19           THE COURT:  I've read each of those.

20           MR. SCHROCK:  All right, Your Honor.  And what I

21   would like to do is just make a few opening remarks and then

22   I can take you through some of the part -- court and parties

23   in interest through some of the plan amendments --

24           THE COURT:  Okay.

25           MR. SCHROCK:  -- and then just cover the

Page 12

1    objections, if that would be okay.

2              THE COURT:  That's fine.

3              MR. SCHROCK:  Your Honor, it's extremely clear to

4    the debtors that we're in a situation where we need to have

5    a catalyst to wind up these cases.  As we've said before we

6    believe this plan is that catalyst.  And without a date set

7    for confirmation, without the ability to solicit votes, we

8    think these cases will languish and a plan will not be

9    confirmed, and we will face an administratively insolvent

10   estate.

11             And we are steadfast in our belief that what --

12   that, you know, not moving the dates is the right way to

13   resolve issues here.  It's no coincidence to the debtors

14   that the one time that we seem to be able to resolve issues

15   in these cases -- we resolved some issues outside of the

16   court hearing dates, but the court hearings provide a funnel

17   and an ability for us to get things resolved in these cases.

18   And this hearing is certainly no exception to that.

19             We have a plan and a process for getting there,

20   and we've done our job in these cases.  We were able to

21   prosecute the sale.  We were able to save tens of thousands

22   of jobs.  We have plan exclusivity which was just extended

23   with the consent of the UCC, and, you know, we frankly just

24   need to get to the end so that we can stop the in-fighting

25   among the various creditor groups.

Page 13

1          Now we've crafted a plan with the support of the

2   largest unsecured creditor in the debtors' estates.  That's

3   the PBGC.  The PBGC, we believe, maintains a claim of up to

4   and in excess of 1.7 billion against all of the debtors on a

5   joint and several basis.

6          At the same time we've continued to work with

7   parties to resolve issues.  We've met with the creditors'

8   committee on numerous occasions.  We've met with the second

9   lien creditors.  We continue to face literally hundreds of

10   inquiries from creditors on a daily and weekly basis, and

11   it's really, when you see the magnitude of the company it's

12   really extraordinary that we only have 13 disclosure

13   statement objections.

14          But at their core most of these inquiries and

15   disputes, because you have a number of parties in a

16   complicated case asking for more of what the debtors don't

17   have, that's more money.  They -- every party is looking for

18   a little slice of this.  We've got a plan, a liquidating

19   plan that follows the absolute priority rule, has a plan

20   settlement construct we believe makes sense.  And it's the

21   one thing that we've heard from another -- a number of

22   creditors that bringing an end to these proceedings through

23   a confirmation should prove to be the best outcome.

24          Now in the case of ESL, we have been at numerous

25   meetings with ESL and, listen, this is just the debtors'

Page 14

1     view, but I need to make clear for the record that, you

2     know, the debtors believe that ESL's agenda here is delay,

3     okay; that they want to delay these cases to fight because

4     they know that they're on the other end of a multi-billion

5     dollar complaint and this is something that, you know, these

6     see these estates, they're liquidating, and it's the nature

7     of the liquidating case.  You know, if you're going to try

8     and argue against your plaintiff, you know, you can try and

9     engage in a war of attrition.  We believe that's exactly

10    what's happened here.

11          And you need look no farther than what just

12    happened the other day with filing a complaint and we file a

13    motion.  File a complaint because, frankly, it takes longer

14    and it cost more money.

15          On the 507(b) claims we filed a motion for

16    estimation of the 507(b) claims.  I think that there's been

17    a competing schedule that was suggested and -- by ESL and

18    we're frankly fine with that schedule.  We just think that

19    getting those matters heard and getting the schedule so that

20    they're heard in advance of confirmation is the right

21    outcome.

22          We don't have -- I don't have a lot of faith that

23    those matters are going to be resolved absent the court

24    ruling on them.  I think everybody has a fundamentally

25    different view of what is a diminution in value claim in the

                                                       Page 15

1     context of these cases.

2              We did make some adjustments in the context of the

3     plan to the plan settlement.  As you may recall, Your Honor,

4     we had, originally it was an $80 million priority recovery

5     against the litigation proceeds.  They would take -- the

6     PBGC would then take steps to waive the $120 million KCB

7     administrative claim and at the same time the PBGC would

8     agree to reduce its general unsecured claim to 800 million.

9              Well, as part of a settlement of substantive

10    consolidation the debtors agreed to increase the priority

11    claim of the PBGC to litigation proceeds of 297.5 million.

12    We lay out the rationale and the benefits of the settlement

13    in the disclosure statement.

14             We've also been working closely with counsel that

15    are pursuing preference actions, and I believe the first

16    round of demand letters is scheduled to go out    imminently

17    which should -- you know, we're hopeful would provide

18    additional funds into these estates.

19             At a high level in terms of the changes to the

20    plan, Your Honor, we did incorporate revised terms of the

21    settlement of the interstate and intercreditor issues,

22    including substantive consolidation.  The debtors believe

23    that the estates are hopelessly entangled and that the

24    vendors and trade creditors typically viewed the debtors as

25    a consolidated operation.

Page 16

1             And in light of these and other consideration the

2       debtors filed a first amended plan to allow the settlement

3       of subcon (sic) with a toggle backstop to a deconsolidated

4       plan should the settlement of substantive consolidation not

5       be approved by the Court.

6             And now in response to the objections of parties

7       in interest, including the creditors' committee who argued

8       that certain creditors would be uniquely disadvantaged by

9       such a settlement, the debtors calculated a plan settlement

10      premium which would bridge the gap by providing incremental

11      recoveries to the effected K-Mart and guarantee creditors.

12      And that's in Section 9.2 of the plan.

13            More specifically, a percentage of the total

14      assets amongst the debtors will be available only for

15      creditors of K-Mart Corp. K-Mart of Illinois and K-Mart of

16      Washington, and of note the PBGC will not participate in any

17      distributions in excess of the amounts the PBGC would have

18      received under the plan without the settlement premium.

19            We still have the non-consolidated plan

20      alternative which we're deeming a toggle plan.  The debtors

21      with -- now in that case if there were debtors with

22      insufficient assets to pay third party claims or vendors, we

23      would be able to get -- you know, make intercompany loans on

24      terms that were acceptable to the debtors and the PBGC.

25            A quick note on administrative claims, we do --

Page 17

1   the debtors do believe, listen, we are administratively

2   solvent.  We do have certain disputes that we are working on

3   in advance of confirmation.  And our view on that issue is

4   if we have to go talk to administrative creditors at some

5   point in this process, and we'll certainly talk to the

6   committee and other parties about this, we will do that.

7   The plan has a mechanism that says you're going to be paid

8   in full in cash unless you otherwise agree.

9           And if the debtors find themselves in a situation

10  where we have to go out and talk to administrative claimants

11  at a given entity, we're certainly prepared to do that and

12  that's part of the restructuring committee's planning.

13          In terms of post-effective date governance, we

14  provide a composition of the liquidating trust board with

15  Allen Karr (ph) and Bill Tranzier (ph) who are members of

16  the debtors' restructuring subcommittee.  The debtors have

17  also clarified removal procedures for liquidating trust

18  board members and we designated the debtors' chief

19  restructuring officer as the liquidating trustee.

20          We've made some changes to the releases at the

21  request of the SEC.  And at the request of the U.S. Trustee

22  the debtors have clarified that the releases are not

23  intended to limit the liability of attorneys pursuant to New

24  York Rules of Professional Conduct.

25          We don't contemplate a discharge.  We don't

Page 18

```
 1    contemplate -- and we've allowed the second lien creditors

 2    to be solicited just because we don't know how the 507(b)

 3    determination will ultimately be ruled upon by the Court.

 4             Your Honor, I won't go through every change to the

 5    disclosure statement, but I think at this point what I would

 6    like to do is just thumb through some of the objections that

 7    were filed and tell you how we've resolved them.  And

 8    perhaps if we -- subject to any comments or questions the

 9    Court has we could address them one at a time, and I would

10    propose to use, you know, the order in which they appear on

11    the agenda or in the objection summary chart.

12             THE COURT:  Okay.  I don't care.  Either one is

13    fine with me.

14             MR. SCHROCK:  Okay.  I think they're pretty much

15    the same, Judge, so I -- I'll just -- I have it in front of

16    me just the objection summary chart, the -- that was

17    attached to the debtors' reply.

18             Item 1 was actually a confirmation objection, I

19    believe.  It was by Williamson County, et al.  And that is a

20    confirmation objection.  That remains open, but I don't --

21    our view is that should be addressed at confirmation.  We

22    put it out -- in here out of an abundance of caution.  It

23    was about certain liens attaching to property of the

24    debtors.  You know, the plan treats all tax claims in

25    accordance with the Bankruptcy Code.
```

1          THE COURT:  Okay.  Is anyone here on the phone for

2     Williamson County and the other Texas counties that filed

3     the objection?

4          Okay.  I agree with the debtors, the termination

5     of a response on this issue.  I think it is a plan issue.

6     The plan provides for the allowance and payment of other

7     secured claims and priority claims, and there's no reason to

8     distinguish individual claims like this in the disclosure

9     statement.

10          MR. SCHROCK:  Thanks, Your Honor.

11          The next objection is from California Commercial

12     Roofing Systems.  That's at ECF Number 3640 and 3641.  They

13     have argued that, for payment of an administrative expense

14     and they're seeking to compel payment.  They've -- they --

15     it's styled as a disclosure statement objection, but I don't

16     believe it's a disclosure statement or a plan confirmation

17     objection.  And we ask that the Court overrule that

18     objection.

19          THE COURT:  All right.  Is there anyone present

20     for California Commercial Roofing Systems?

21          All right.  I agree with the debtors' response on

22     this.  This is really a disclosure statement objection.

23     We'll -- we will deal later in the hearing with the plan and

24     disclosure statement's treatment of administrative expenses.

25     But this objection doesn't really deal with that.  It just

Page 20

1    seeks full payment.

2              MR. SCHROCK:  Thank you, Your Honor.

3              The next objection was filed by the Office of the

4    United States Trustee.  The debtors' position is that the

5    U.S. Trustee's argument is making arguments around the

6    nature or the releases that were being granted under the

7    plan.  We did, you know, note that the disclosure statement

8    contains nearly three pages of justification regarding the

9    third party releases which are opt-out.  And the debtors

10   will add a statement to the disclosure statement that the

11   U.S. Trustee opposes the releases contained in the plan.

12             You know, the debtor -- the U.S. Trustee had

13   certain other issues that we believe were resolved or noted

14   as confirmation objections.  So we attempted to work with

15   the office.  I think that Mr. Schwartzberg is here and he

16   wanted to say a few words to the Court and argue his point.

17             THE COURT:  Okay.

18             MR. SCHWARTZBERG:  Good afternoon, Your Honor.

19             THE COURT:  Good afternoon.

20             MR. SCHWARTZBERG:  As Your Honor I'm sure has read

21   our objection and our concern is primarily the opt-in, opt-

22   out issue.  The debtor says it's a confirmation issue, but

23   because we're seeking the approval of a disclosure statement

24   that will have a ballot, that will have the opt-in or opt-

25   out on it and I thought it would be appropriate to at least

Page 21

1  raise it at this point.

2          I'm aware the Court has ruled on this issue in

3  other instances, but I just wanted to note in this

4  particular case creditors are getting a small distribution,

5  if any.  The likelihood that a lot of these creditors are

6  going to page through the hundreds of pages of documents

7  that they'll get in terms of the opt-in or opt-out are

8  minimal or unlikely.

9          Also, I note in this particular case --

10          THE COURT:  It may be then they don't really care

11  about the claim either.  But I'll leave that for another

12  day.

13          MR. SCHWARTZBERG:  Also, Your Honor --

14          THE COURT:  That they're opting in or out --

15  opting out of.

16          MR. SCHWARTZBERG:  Correct, Your Honor.

17          The debtors are also liquidating.  There's no

18  post-confirmation operations, so the need or the likelihood

19  or the need of effectuating the plan to have these releases

20  is questionable.

21          And then when I asked in our objection why they

22  need the releases and what's being given in return, the

23  debtor basically indicated that the individuals or the

24  officers and directors had done their jobs and guided this

25  debtor through confirmation and made it as if their award in

Page 22

1    the releases are -- the award of the releases are a bonus or

2    some sort of award for doing a good job during the

3    bankruptcy.  And we believe under Second Circuit law, which

4    requires extraordinary circumstances, that the debtors

5    aren't describing an extraordinary circumstance.  And,

6    therefore, the releases should be considered not under the

7    (indiscernible) and they had -- they have to come in under a

8    consensual or non-consensual venue.

9              And, therefore, based on the case law that we cite

10   in the -- in our objection which I know Your Honor has at

11   times taken an opposite determination.  But based on the

12   circumstances of these cases, including the liquidation of

13   the debtor and the apparent no need for these officers and

14   directors to look at the releases to continue their jobs

15   post-confirmation, we believe it should be an opt-in rather

16   than an opt-out.

17             THE COURT:  Okay.

18             MR. SCHWARTZBERG:  If Your Honor has any questions

19   I'll --

20             THE COURT:  No.  I mean, as you know I disagree

21   with that view.  I think the plan is binding if people don't

22   object.  I did have a couple of comments and we'll get to

23   them on the description of the opt-out right.  I wanted to

24   beat that up a little bit.

25             MR. SCHROCK:  Certainly.

Page 23

1              THE COURT:  And I think we glossed over this, but

2    I just want to make sure.  The -- there are claims that I

3    think, the other secured claims, I think those claims --

4              MR. SCHROCK:  Yes.

5              THE COURT:  -- would be unimpaired but for the

6    release issue, right?

7              MR. SCHROCK:  Correct.

8              THE COURT:  And I think -- I came to understand

9    that, but I think -- and I'll mention this when I give you

10   my comments on the disclosure statement.  I don't think it's

11   clear in the plan -- I mean, clear in the description of

12   their plan treatment and the disclosure statement that's why

13   they're impaired.  So I -- just we'll get to it later.  But

14   I think there needs to be something stated that that's why

15   they're impaired and voting because your ordinary bankruptcy

16   lawyer would look at that and say, well, why --

17             MR. SCHROCK:  Right.

18             THE COURT:  -- why do you have them voting.

19             MR. SCHROCK:  Yeah.  Very well, Judge.  Yeah.  Of

20   course we'll be --

21             THE COURT:  And that's --

22             MR. SCHROCK:  -- happy to add that.

23             THE COURT:  -- the deal with the Chasick's (ph)

24   issue.

25             MR. SCHROCK:  Excellent.

Page 24

1          THE COURT:  Okay.  So I believe that the true

2      disclosure statement objections by the U.S. Trustee have

3      been dealt with by the revisions to the disclosure statement

4      and/or the plan.  And the remaining objections really are

5      plan issues.  On these facts I tend to agree with the U.S.

6      Trustee that meeting the Metro Media standards would be a

7      heavy burden.  But at the same time that's not the only

8      basis for a release under a plan by third parties.  And I

9      think the mechanism that the plan lays out is fair for

10     voting purposes and disclosure purposes.

11         MR. SCHROCK:  Thank you, Your Honor.

12         The next objection was filed by the U.S.

13     Department of Labor as well as I believe there was a joinder

14     to that objection that was filed yesterday.

15         This, you know, as Your Honor has probably saw

16     there was a motion filed to form a retiree committee.

17         THE COURT:  I didn't see that.  Was that filed

18     yesterday?

19         MR. SCHROCK:  It was filed yesterday, Your Honor.

20         THE COURT:  Okay.

21         MR. SCHROCK:  Yes.  And, you know, the -- I think

22     the contention here was that, you know, the debtor should

23     have to justify and go through 1114 in order to terminate

24     any retiree benefits.  We provide an explanation in the

25     disclosure statement that we believe that none of those

Page 25

1    benefits were, in fact, vested.  And we think that, you

2    know, that at this point it's a disclosure issue.  We've

3    provided adequate disclosure around it, and if there would

4    have to be, subject to the Court actually hearing the 1114

5    motion if there had to be an additional change in treatment,

6    you know, then -- or if there had to be additional

7    disclosure we could always supplement.

8              But at this point we've put everything that we

9    know about those claims in here and we provided, you know,

10   why we, in fact, terminated those benefits because they

11   were, in fact, not vested.

12             THE COURT:  Well, the disclosure says it was

13   terminated because you had a right to terminate --

14             MR. SCHROCK:  Yes.

15             THE COURT:  -- under the --

16             MR. SCHROCK:  Right.  I meant --

17             THE COURT:  -- plan document.

18             MR. SCHROCK:  -- without going through 1114.

19             THE COURT:  Right.

20             MR. SCHROCK:  I misspoke.

21             THE COURT:  Okay.  So is the counsel for the DOL

22   here?

23             UNIDENTIFIED SPEAKER:  He's on the phone, Your

24   Honor, I believe.

25             THE COURT:  Mr. Gerson, are you on the phone?

Page 26

```
 1        (Pause)

 2             THE COURT:  Well, is he on there?

 3             UNIDENTIFIED SPEAKER:  Uh-huh.

 4             THE COURT:  It is -- it's on -- it's not on mute,

 5   right?

 6             MR. GERSON:  Good --

 7             THE COURT:  Oh, there we go.  Is that counsel for

 8   the U.S. DOL?

 9             MR. GERSON:  That's correct, Your Honor.

10             THE COURT:  Oh, okay.  Could you just state your

11   name for the record?

12             MR. GERSON:  Leonard Gerson.

13             THE COURT:  All right.  Good afternoon.

14             MR. GERSON:  Good afternoon, Your Honor.

15             THE COURT:  So I -- I've read the objection and

16   the discussion of this issue in the disclosure statement.

17   I'm just trying to turn to it now.  Here it is on page 37.

18   And the objection points out that the last paragraph of that

19   discussion states that:

20             "The debtors were advised that in 2001 Sears

21   Roebuck had entered into a stipulation of settlement In re:

22   Sears Retiree Group Life Insurance litigation, Civil Action

23   Number 97 in connection with the reduction of certain

24   retiree life insurance benefits available to eligible

25   retirees at that time.
```

1          "Under the stipulation Sears Roebuck agree that it

2    would not reduce or terminate the retiree coverage subject

3    to the stipulation and would amend the applicable plan

4    consistent with such limitation.  The debtors do not

5    currently have information with respect to the identities of

6    the retirees that were covered by the stipulation."

7          And then it says:

8          "Further, based on review of its file the debtors

9    are not aware of any such amendment having been made to the

10   retiree plan that was terminated by the debtors."

11         So I guess my question for the debtors is was this

12   civil action, was it a class action, were there -- who were

13   the parties to it?  I would think that that would give you a

14   window into who -- into what this agreement covered.

15         MR. GERSON:  Are you --

16         THE COURT:  Mr. Schrock is conferring.

17         MR. SCHROCK:  Yes.  Sorry, Your Honor.

18         Your Honor, I don't -- we don't know at this point

19   who the -- you know, who specifically was a party to the

20   action at this point.

21         THE COURT:  Was it a class action?

22         MR. SCHROCK:  Not that we're aware of, Your Honor.

23         THE COURT:  Okay.  I guess what -- I'm just

24   concerned that the debtors may not have done enough on this

25   point.  You know --

1           MR. SCHROCK:  Okay.

2           THE COURT:  -- when litigation started there's

3    usually defendants and plaintiffs and parties covered by it.

4    And in part I think this goes to the notice issue as to, you

5    know, whether these people are getting notice of the

6    confirmation hearing, for example.  So that's my --

7           MR. GERSON:  Your Honor, can I --

8           THE COURT:  -- that's my --

9           MR. GERSON:  -- add something --

10          THE COURT:  Sure.

11          MR. GERSON:  -- that might be helpful?

12          THE COURT:  Yes.

13          MR. GERSON:  Yeah.  It -- according -- first off,

14   according to the stipulation the settlement that was annexed

15   to our objection, it was a class action.  And possibly even

16   more to the point, the motion filed yesterday seeking the

17   appointment of a retiree committee was filed by one of the

18   attorneys, Mr. Molder (ph), who describes himself as lead

19   counsel in the class action.

20          And the motion itself was filed by two members,

21   one the chairman, one head of the board of benefits of the

22   National Association of Sears Employees which is a voluntary

23   organization that's still in existence.

24          And in the papers it's further alleged in contrast

25   to the statement in the disclosure statement that the

1    debtors only learned about this stipulation after the

2    termination of the retiree plan.  The papers allege that on

3    March 12th, I believe, which was subsequent to the March 7

4    decision by the Sears Board of Directors to terminate the

5    plan, but prior to the March 15th effective date of the

6    termination Mr. Obresh (ph), the chairman of the retiree

7    association, notified the head of Sears HR that, in fact,

8    the stipulation existed and that a number of retirees were

9    vested and Sears had -- Sears did not have the unilateral

10   right to terminate their benefits.  That conflicted with the

11   stip -- the court-ordered stipulation.

12           And your decision in Delphi which the debtors have

13   amended their disclosure statement and cited as the basis

14   for their terminating the retirement plan without Section

15   1114 approval.  As you may remember, while that was the

16   ruling in that case, you also, as we mentioned in our

17   objection, established a retiree committee to make sure that

18   none of the retirees were actually vested and thus required

19   the -- a Section 1114 process to go forward.

20           Well, I mean, that's the situation that appears to

21   exist in this case.

22           THE COURT:  Well, I don't know.  I mean --

23           MR. GERSON:  Of course, it --

24           THE COURT:  -- I wasn't even aware of yesterday's

25   filing.  So that's not really before me today.  What I am

Page 30

1   concerned about is whether the description here is accurate.

2            MR. SCHROCK:  The -- Your Honor, we're happy to

3   have a meet and confer and frankly add additional language.

4            THE COURT:  Yeah.  I think that's what the people

5   should do here.  I mean, even the stipulation that was

6   attached --

7            MR. SCHROCK:  Right.

8            THE COURT:  -- it actually -- my version isn't so

9   ordered.  It's just signed by --

10           MR. SCHROCK:  Right.

11           THE COURT:  -- by counsel for the plaintiffs.

12           MR. SCHROCK:  Yeah.  Our understanding is there

13   was a stipulation and then --

14           THE COURT:  Anyway --

15           MR. SCHROCK:  -- Sears never did anything.

16           THE COURT:  -- I think -- are you one of the

17   counsel, sir?

18           UNIDENTIFIED SPEAKER:  Yes, Your Honor.  I

19   represent the two retirees.

20           THE COURT:  Okay.  I mean, I think -- I came into

21   this hearing not -- as I said not knowing about the motion

22   that you filed yesterday.  I really was at a bit of a loss

23   as to who the debtors should be talking with about this.

24   Maybe they should be talking to you since you filed this

25   motion.  Not knowing that I was going to suggest that they

Page 31

1    dig further into the civil action to see if they could get

2    more out of it than what was attached to the DOL's response.

3          But I think that there needs to be some language

4    added here to try to give some clarity as to who the parties

5    were to that stipulation and whether it was, in fact,

6    approved as part of the class settlement or the like.  It

7    just -- it wasn't clear to me at this point.

8          UNIDENTIFIED SPEAKER:  That's fine, Your Honor.

9          MR. SCHROCK:  We --

10          THE COURT:  Okay.

11          MR. SCHROCK:  We are happy to meet and we're happy

12    to add additional language.

13          THE COURT:  Okay.  Very well.  So that --

14          MR. GERSON:  And, Your Honor, this is a disclosure

15    statement objection, so that's all that would be required.

16          THE COURT:  Right.  That's right.

17          So I'm going to give you some language on other

18    parts of this.  This one is just -- had a question mark.  So

19    -- but the record will reflect how the parties are going to

20    deal with it.

21          There is a typo in the first -- in the second line

22    of this paragraph.  I'll give you my markup and you'll see

23    it there.  Certain retired employees of the Sears covered

24    under the -- just doesn't quite fit.  So there's a missing

25    word or something there.

1          MR. SCHROCK:  Okay.  Very well, Your Honor.  We're

2    happy to make the change.

3          THE COURT:  Okay.

4          MR. SCHWARTZBERG:  Thank you, Your Honor.

5          THE COURT:  Thanks.

6          MR. SCHROCK:  Your Honor, I'm sorry.  The sixth

7    objection was from a Ms. Gonyo, ECF Number 3767.  She had

8    noted that the disclosure statement does not adequately

9    define general unsecured liquidating trust interest and the

10   specified unsecured liquidating trust interest including a

11   description of the assets.  The debtors noted some language

12   that they've added to Disclosure Statement Section 1(c) that

13   we believe addressed -- that addressed it.  But we wanted to

14   confirm it.  We just haven't received a response, I believe,

15   whether or not that resolves the issue.

16          THE COURT:  Okay.  Is counsel for Ms. Gonyo here

17   or on the phone?

18          Okay.  I reviewed the changes.  I think for

19   someone that wasn't living with this as the debtors'

20   professionals have been and these professionals and others I

21   somewhat sympathize with this objection.  But I think the

22   language is -- that's been added clarifies it.

23          I did have one point I wanted to raise with you

24   all that I'll -- which is as far as I could see there's

25   nothing in the disclosure statement as to whether these

Page 33

1    interests were intended to be tradable or the like.  And I

2    think that's probably worth noting, or if tradable how trade

3    -- you know, how they would be.

4              MR. SCHROCK:  Your Honor, we're -- we'll be happy

5    to address it.

6              THE COURT:  Okay.

7              MR. SCHROCK:  We were trying to keep our options

8    open on that particular one.

9              THE COURT:  Well, you could say that, too.  I just

10   -- I just want to -- you know, I think that -- and you may

11   need to run that by the SEC, the --

12             MR. SCHROCK:  Yes.  Exactly.

13             THE COURT:  -- people that gave you comment.

14             MR. SCHROCK:  We don't want to become a public --

15             THE COURT:  But I --

16             MR. SCHROCK:  -- you know, reporting unit.

17             THE COURT:  But I think that not having anything

18   about that may disadvantage --

19             MR. SCHROCK:  Yes.

20             THE COURT:  -- small holders who are not as easily

21   advised on trading issues as larger holders.

22             MR. SCHROCK:  Your Honor, we can certainly -- I

23   know we have some language from other cases that we can pull

24   around that.  So we will --

25             THE COURT:  Okay.

1          MR. SCHROCK:  -- do so.

2          THE COURT:  Okay.

3          MR. SCHROCK:  Your Honor, the next objection I

4     believe has been resolved.  It was Winners Industry Company

5     Ltd., Number 7 at ECF Number 3769.  We added some disclosure

6     in Section 4(t) and we believe that that, you know, resolves

7     the issue.

8          THE COURT:  All right.  Is there anyone here for

9     Winners Industries?

10         Okay.  I saw that language.  I revised it slightly

11    to be a little more consistent with my ruling, but I think

12    it does as revised address the -- what actually happened on

13    this point I guess last week.

14         MR. SCHROCK:  Thank you, Judge.

15         THE COURT:  Okay.

16         MR. SCHROCK:  Number 8 is the Santa Rose Mall, LLC

17    ECF Number 3771 and 3996.  They had asked that the

18    disclosure statement included information regarding the

19    insurance policy that provides coverage for damage caused by

20    the hurricanes to the movant's property.  You know, we

21    didn't believe any additional disclosure would be required.

22    We thought that -- we reached out to the party to confirm

23    and the party stated their objection was not resolved --

24         THE COURT:  Okay.

25         MR. SCHROCK:  -- at this point.

Page 35

```
 1              THE COURT:  Is there anyone here for Santa Rosa

 2    Mall?  On the phone?

 3              MR. CHICO-BARRIS:  Yes, Your Honor.

 4              THE COURT:  Okay.

 5              MR. CHICO-BARRIS:  Yes, Your Honor.  Good

 6    afternoon.  I am Gustavo Chico on behalf of Santa Rosa Mall.

 7              THE COURT:  Okay.  I mean, the parties are in --

 8    they have their own dispute on this.  I don't think -- I

 9    mean, there -- there will be discovery in that dispute if

10    there hasn't been already.  I don't think any other party in

11    interest has any interest in this issue as a disclosure

12    matter for purposes of the plan.

13              So in other words a disclosure statement is not a

14    substitute for taking disclosure in the case on discreet

15    issues that are really X, V, Y, creditor versus debtor type

16    issues.  So I just don't think this is an appropriate

17    addition to a disclosure statement.

18              So I'm going to overrule the objection.

19              MR. SCHROCK:  Thanks very much, Your Honor.

20              The next objection is from ESL Investments which

21    is at ECF Number 3988.  They had a number of objections that

22    we believe we resolved through additional language.  They

23    actually gave us some further additional language tweaks

24    right before the hearing.  I think that ESL's counsel wanted

25    to say a few words related to the 507(b) claims process and
```

Page 36

1   other issues.  But I believe we're largely resolved unless

2   --

3            THE COURT:  Okay.

4            MR. SCHROCK:  -- Sean tells me otherwise.

5            THE COURT:  Okay.  The first thing you're going to

6   tell me is ESL really doesn't want to drag this out --

7            MR. O'NEAL:  That's --

8            THE COURT:  -- that it was just asked to answer on

9   both 507(b) and the APA disputes.

10           MR. O'NEAL:  There is an element of truth to that.

11       (Laughter)

12           THE COURT:  Okay.

13           MR. O'NEAL:  So -- and actually Mr. Schrock gave

14  me an opportunity to raise an issue that I wanted to, which

15  I think he had mentioned that we are focused on trying to

16  delay the APA resolution.

17           THE COURT:  Right.

18           MR. O'NEAL:  And that's why we filed the

19  complaint.  And I would like to have the privilege of

20  correcting that record.

21           Last week before we filed a complaint we had a

22  meeting with Weil and others, and we told them that we were

23  going to file a complaint because we wanted to get these

24  issues resolved.  And the response was that they would file

25  a motion to enforce the APA.  They were faster.  They filed

Page 37

1    their motion and then an hour or two or maybe three later we

2    filed our complaint.

3            But in this courtroom I've found that sometimes

4    folks are trying to vilify ESL and try to ascribe all sorts

5    of misconduct or other kinds of allegations.  The fact is --

6    and we've seen that.  We've seen that with the sale hearing.

7    We've seen it with fraudulent conveyance complaint.  We've

8    seen it with the APA litigation.  We've seen it at nearly

9    every hearing we've come to today.

10            But as with those matters what we will find is

11   that the facts will belie that actual suggestion that we're

12   trying to delay.  If you look at the complaint itself, it's

13   very -- it's page 4.  It says, transform brings this

14   adversary complaint rather than a motion primarily because,

15   among other things, it claims -- it seeks -- it seeks

16   damages from the defendants.  Transforms' representatives

17   are prepared to meet and confer and settle on a schedule

18   that would permit the resolution of its claims prior to or

19   as part of the Chapter 11 plan confirmation.

20            THE COURT:  That's --

21            MR. O'NEAL:  So that's --

22            THE COURT:  -- correct.  It says that and that's

23   what the parties should do.

24            MR. O'NEAL:  Yeah.  And that's what we -- that's -

25   - I stand here today telling you that's what we'll do.

1              THE COURT:  Okay.

2              MR. O'NEAL:  I think the other thing that we

3     wanted to talk about, we do have a number of disputes about

4     the plan.  But we're going to push those to the side for

5     now.  And I think we tried to be constructive and save

6     people time by giving line edits to the disclosure statement

7     and we appreciate Mr. Schrock and Mr. Singh including those

8     comments.

9              But we still do have some disagreements and we do

10    think there will be serious confirmation issues.  And one

11    issue that we did want to address to the Court briefly is

12    the 507(b)(9) cap.  I think we're -- we were frankly

13    surprised that this has become an issue.  We believe the

14    language in Section 913 of the APA is -- which is replicated

15    in the sale order is clear.

16             THE COURT:  Well, on that point I had a suggestion

17    on the plan and disclosure statement, is that you guys just

18    track that language, track -- you know, or say as provided

19    in those two documents.

20             MR. O'NEAL:  Certainly.

21             THE COURT:  And that's -- that -- you know, that

22    way no one can say anyone's rewriting anything.

23             MR. SCHROCK:  Yes.  Yes, Your Honor.

24             THE COURT:  Okay.

25             MR. O'NEAL:  That would be acceptable to us.  We

Page 39

1     can compare the language after the hearing.

2              THE COURT:  Okay.

3              MR. O'NEAL:  Thank you, Your Honor.

4              And I think -- with that I don't think we have any

5     other comments.  I could go through with you the arguments

6     on --

7              THE COURT:  No.

8              MR. O'NEAL:  -- our 507(b) --

9              THE COURT:  No need.

10        (Laughter)

11             MR. O'NEAL:  But I'm sensing that maybe that is

12    not what you want to do.

13             THE COURT:  I just don't -- I mean, I think the

14    language speaks for itself.

15             MR. O'NEAL:  Yes.  Thank you, Your Honor.

16             THE COURT:  Okay.

17             MR. SCHROCK:  Thank you, Your Honor.

18             I believe the next objection is from Wilmington

19    Trust which is at ECF Number 3990, and I believe that we

20    have resolved the issue with -- issues with Mr. Fox.  We,

21    you know, included language in Section 4(d)(3) of the

22    disclosure statement.  You know, we confirmed that we gave

23    them the right to vote as a secured claimant to the extent

24    they have secured claims.  And -- but Mr. Fox is here.

25             THE COURT:  Okay.

1          Actually, before -- you're right by a microphone,

2     too, Mr. Schrock.

3          MR. SCHROCK:  Yeah.

4          THE COURT:  I -- it wasn't clear to me.  Maybe I

5     just didn't -- maybe I glossed over the paragraph.  The

6     toggle plan --

7          MR. SCHROCK:  Uh-huh.

8          THE COURT:  -- goes debtor by debtor.

9          MR. SCHROCK:  It does.

10         THE COURT:  So does the voting order, the voting

11    procedures order now contemplate that this class will vote

12    debtor by debtor?

13         MR. SCHROCK:  Yes, Your Honor.

14         THE COURT:  Okay.  All right.  Okay.

15         MR. FOX:  Good morning or good afternoon, Your

16    Honor.  Edward Fox from Seyfarth Shaw on behalf of

17    Wilmington Trust National Association as indentured trustee

18    and collateral agent.

19         Your Honor, some issues have been resolved.  I

20    think some have not.  And I think there are some new issues

21    given the debtors' filings within the last 24 hours of a

22    significantly amended plan that in some cases, at least to

23    me, is not all that clear as to how that's supposed to work.

24         In no particular order let me start with the

25    voting issue for the second lien notes in Class 2 which is

Page 41

1    the other secured claims.  The debtor says in its response

2    that it will have the -- them vote.  But otherwise if you

3    parse through the language none of it actually says that.

4            So at a minimum the proposed order has to be

5    changed to reflect that.  The reason why is that the plan

6    defines other secured claims to specifically exclude the

7    second lien notes.  The plan then says that second lien debt

8    shall receive the same treatment as holders of other secured

9    claims to the extent that the claim is secured.

10           So you kind of don't know today or when the

11   ballots go out whether they're going to be treated as

12   secured or unsecured.  The debtors' response says that they

13   will be allowed to vote.  Mr. Schrock, when he said it on

14   the record just a minute ago, left open that question of if

15   they're secured.

16           So my understanding of what the debtors intend is

17   to provide that they will vote and then they'll -- in Class

18   2 and the debtors and the Court or all of us will decide

19   later whether, in fact, those votes will be counted in --

20           THE COURT:  Right.

21           MR. FOX:  -- Class 2 or not.

22           THE COURT:  So you're right.  The --

23           MR. SCHROCK:  That's correct.

24           THE COURT:  The definition on page 12 of the plan

25   needs to be changed on this.  That's the 1.118 of the

Page 42

1    secured claim.  I think it should be changed to say means a

2    secured claim, period.  I mean, I think this -- the

3    definition of secured claim --

4              MR. SCHROCK:  Yes.

5              THE COURT:  -- is the definition we all know which

6    is to the extent that you have assets that are collateral,

7    then --

8              MR. SCHROCK:  You're right, Judge.  That's an

9    error.  It should be --

10             THE COURT:  Okay.

11             MR. SCHROCK:  There should be --

12             THE COURT:  Right.

13             MR. SCHROCK:  It should be a period.  We'll

14   exclude clauses A, B and C.

15             THE COURT:  All right.

16             MR. FOX:  Yeah.  The problem was that there's the

17   open question --

18             THE COURT:  Right.

19             MR. FOX:  -- today --

20             MR. SCHROCK:  As to whether or not  --

21             MR. FOX:  -- as to whether or not --

22             THE COURT:  And on that point, the debtors do

23   discuss to some extent that they believe that these claims

24   are not going to be secured claims.

25             MR. FOX:  Yeah.  The language that was added to

1    the disclosure statement to describe the debtors' views

2    about that --

3              THE COURT:  Right.

4              MR. FOX:  -- I'm not raising an issue with.  We --

5              THE COURT:  Okay.

6              MR. FOX:  -- appreciate the fact that they added

7    it.

8              THE COURT:  It's just the plan, the way the plan

9    works.

10             MR. FOX:  It's just a question of the way the

11   voting works.

12             THE COURT:  Right.

13             MR. FOX:  And I would also point out that what

14   they filed last night did not include all the ballots.  So

15   we haven't seen the specific ballots that would go out to

16   the specific holders.  We've seen samples.  And I -- there

17   are multiple iterations of the ballots depending on who is

18   voting.

19             THE COURT:  Okay.

20             MR. FOX:  So for the noteholders there's a

21   different form of ballot than what's attached to the

22   exhibits that were filed overnight.

23             THE COURT:  All right.  But there was nothing

24   wrong with that -- those forms.  It's just --

25             MR. FOX:  So far --

```
 1              THE COURT:  Okay.

 2              MR. FOX:  -- so good.

 3              THE COURT:  All right.

 4              MR. FOX:  They need to add to that the voting in

 5    Class 2.  But we just need to see it because we -- it -- we

 6    haven't seen it.

 7              THE COURT:  That's fine.

 8              MR. FOX:  Also with respect to voting, and this

 9    goes to changes that were made in the plan yesterday -- and

10    in fairness to the debtors they did send us a copy --

11              MR. SCHROCK:  Monday.

12              MR. FOX:  -- 2:30 on Monday on Memorial Day as

13    well.  But --

14              MR. SCHROCK:  2:30 p.m.

15              MR. FOX:  Yes.  Yes.  But --

16         (Laughter)

17              MR. FOX:  But it's not clear from reading the plan

18    as far as I can tell with respect to K-Mart, K-Mart of

19    Illinois and K-Mart of Washington when it refers to the

20    treatment of general unsecured claims if it's referring to

21    the treatment of general unsecured claims of those specific

22    debtors or the defined term generally as just general

23    unsecured claims against anybody in the case.

24              So you can't tell from reading the plan what's

25    intended, and then you can't tell -- if you can't tell what
```

Page 45

1    the plan means, you can't determine whether the disclosure

2    is correct.

3                THE COURT:  I had the same problem.  I think I

4    understand it's general unsecured claims against those

5    debtors.

6                MR. SCHROCK:  Yes.

7                THE COURT:  But I think it was just a little too

8    eloquent.  I think you need just to add some language just

9    to make it clear that --

10               MR. SCHROCK:  We'll do so, Judge.

11               THE COURT:  -- to the extent it's against those --

12               MR. FOX:  Yeah.

13               THE COURT:  -- unsecured claims against those

14    specific debtors.

15               MR. FOX:  Right.  And then -- and that also

16    affects the notes because the guarantee claim is against

17    multiple debtor entities.

18               THE COURT:  But it's only against those debtors

19    where there's the bump up.

20               MR. FOX:  That's correct.

21               THE COURT:  Right.

22               MR. FOX:  But because the notes have guarantee

23    claims --

24               THE COURT:  No.  I know.  They could get all

25    excited and think, oh, we're getting the bump up, but that's

1    not the case.

2              MR. FOX:  Well, I think they're supposed to

3    because they are --

4              THE COURT:  Against those debtors.

5              MR. FOX:  Against those debtors.  Right.

6              THE COURT:  But not against all of the debtors.

7              MR. FOX:  Right.  But it --

8              THE COURT:  Yeah.

9              MR. FOX:  Yeah.

10             THE COURT:  Okay.

11             MR. SCHROCK:  And it's 53, you know, we're

12   counting votes separately for each plan.

13             THE COURT:  Correct.

14             MR. FOX:  Right.  Yeah.  That part and we

15   appreciate the fact the debtor changed that.

16             The -- with respect to the liquidation analysis we

17   raised concerns about that.  The debtors' response was,

18   well, we'll deal with that at confirmation.  I appreciate

19   the best interest test point at confirmation, but it's also

20   a disclosure statement issue, particularly in this case

21   since the holders are being asked either vote for a

22   liquidating plan or if they vote against it, they'll wind up

23   with a liquidation and a Chapter 7.

24             And so the disclosure concerning the liquidation

25   analysis is particularly relevant, I think, here given the

1   alternative.  And that's really what people are -- the

2   holders are being asked to choose between.

3              THE COURT:  But I -- I thought given the revised

4   analysis or the amended analysis which includes both a --

5   the plan and the toggle plan --

6              MR. FOX:  Yeah.  There's two --

7              THE COURT:  -- that they covered most of your

8   points.  I mean, I appreciate that you have --

9              MR. SCHROCK:  We tried to --

10             THE COURT:  -- some disagreements with them about

11  various discounts.  But those are things that people can

12  factor in themselves.  I think, you know, you can do your

13  own analysis as to whether it should be 30 percent or 25

14  percent or 15 percent or --

15             MR. FOX:  Well --

16             THE COURT:  Same with the fees, those sorts of

17  things.

18             MR. FOX:  Remember, Your Honor, that Wilmington

19  Trust is here on behalf of the noteholders.  They're the

20  ones who are going to vote.  They're not --

21             THE COURT:  No.  I understand.

22             MR. FOX:  -- necessarily the sophisticated parties

23  who are able to make that determination.

24             THE COURT:  But I don't -- to me the real issue

25  with the liquidation analysis was not showing the non-

Page 48

1    substantive consolidation aspect of it.  And I think they've

2    dealt with that.

3                MR. FOX:  The comparison between substantive and

4    non.

5                THE COURT:  Yeah.

6                MR. FOX:  No.  I understand that.

7                THE COURT:  And in both cases against Chapter 7.

8                MR. FOX:  Right.  It's really the comparison

9    against Chapter 7, the issues of, you know, being -- having

10   lower recoveries because a Chapter 7 trustee will be in a

11   hurry or is going to --

12               THE COURT:  Well --

13               MR. FOX:  -- you know, hire more lawyers.

14               THE COURT:  But I think -- look, people can -- I

15   mean, they -- these people are bondholders.  I mean, I think

16   they -- and they can call you up and ask them about those

17   sorts of things.  They -- you could point them to your

18   objection.  I just don't think there's any -- once you get

19   into that level of detail, everyone has their different

20   views on those points.  So --

21               MR. FOX:  Also, Your Honor, we asked for -- we

22   asked the debtors to provide information about the claims

23   that they believe are being released by the releases

24   because, again, the holders are voting for that, and their

25   response was they don't need to do that.

Page 49

1          Given the fact that holders are being asked to

2    vote on a plan which is going to include releases, we think

3    at least with respect to the third parties or the, I guess

4    it's the directors and their officers, if there are claims

5    out there that holders should be given some understanding of

6    what they are that's being released.

7          THE COURT:  Right.  Well, on that point are the

8    debtors aware of potential claims that go beyond D&O

9    insurance, that wouldn't be covered by D&O insurance?

10         MR. SCHROCK:  Just those that are, you know,

11   subject to what counsel of the subcommittee would have to

12   say about that, just those that are being prosecuted by the

13   subcommittee.  Not all those are D&O claims.

14         THE COURT:  Okay.

15         MR. SCHROCK:  There's preference claims,

16   obviously, but, you know, as to third party type claims I --

17         MR. FOX:  All we know, Your Honor, is that --

18         THE COURT:  I mean, as I understand it the release

19   that you're addressing is a partial release because it

20   doesn't release --

21         MR. SCHROCK:  Right.  So we would have preserved

22   --

23         THE COURT:  -- claims that would be --

24         MR. SCHROCK:  -- claims like --

25         THE COURT:  -- covered by D&O insurance.

1          MR. SCHROCK:  That's correct.

2          THE COURT:  So I'm just trying to figure out are

3    there meaningful claims against people with -- then the

4    other question is do people have meaningful assets?

5          MR. FOX:  We have no idea, Your Honor.

6          THE COURT:  Okay.

7          MR. BASTA:  Your Honor, Paul Basta from Paul Weiss

8    for the subcommittee.

9          In our papers that we filed one of the objections

10   of the committee was that we -- the plan was releasing

11   claims of potential defendants.

12         THE COURT:  Right.

13         MR. BASTA:  And my understanding on -- in the

14   mechanic is, you know, we can designate in the plan

15   supplement who is and is not going to be getting released.

16   But our intention is not to release anybody under the plan

17   that is a potential defendant in the lawsuit.  And the

18   lawsuit, from our perspective, is covering the material

19   causes of action of the estate.

20         THE COURT:  All right.

21         MR. CLAYTON:  Your Honor, Lou Clayton.  Just to

22   clarify that obviously the people who are already named --

23         THE COURT:  Well, they're not getting a release.

24         MR. CLAYTON:  -- in the (indiscernible) complaint

25   are not getting releases.

1           THE COURT:  Right.

2           MR. CLAYTON:  And we intend to make sure that the

3      list of people not getting releases will include everyone

4      who had any material role in the transactions alleged in the

5      complaint, whether or not they are now or may be in the

6      future in the complaint.

7           THE COURT:  Okay.

8           MR. SCHROCK:  And, Your Honor, just to be direct

9      about this, I mean, given it is a liquidating case, if there

10     are claims where it makes sense to pursue them, we're

11     pursuing them.  If they're not, you know, we're releasing

12     them.

13          THE COURT:  Well, then I think you should beef up

14     that discussion --

15          MR. SCHROCK:  Okay.

16          THE COURT:  -- and say that as Mr. Basta and Mr.

17     Clayton said, in the -- I think the response by the

18     subcommittee puts it in writing that --

19          MR. SCHROCK:  Okay.

20          THE COURT:  -- (a) the complaint has been filed,

21     and (b) if there are parties that are currently defined as

22     released parties that would be determined that there would

23     be claims against them, they would not have the benefit of

24     the release.

25          MR. SCHROCK:  All right.  Very well, Your Honor.

Page 52

1    We'll work with counsel to subcommittee and add some

2    language.

3              THE COURT:  Okay.

4              MR. FOX:  Thank you.  I mean, Your Honor, if the

5    debtors don't believe they have meaningful claims against --

6              THE COURT:  It doesn't matter.

7              MR. FOX:  -- the parties getting the partial

8    releases --

9              THE COURT:  Right.

10             MR. FOX:  -- fine.  They can say that.

11             Lastly, the order --

12             THE COURT:  I think it's more than that, though.

13             MR. FOX:  Yeah.

14             THE COURT:  I think it's what was just said on the

15    record.

16             MR. FOX:  Right.

17             Lastly, Your Honor, with respect to I think it's

18    now paragraph 20, it was paragraph 18 of the order, which

19    provides that if a -- if there's no votes on a class, the

20    class is deemed to accept.

21             THE COURT:  Right.

22             MR. FOX:  I know the debtor refers to other cases

23    which have said the contrary.  That's not what the statute

24    says.  And we wouldn't have to do all this if it was just

25    negative notice basically.

1          THE COURT:  Okay.  So there's a disconnect between

2      the plan and disclosure statement on the one hand and that

3      order, proposed order on the other.

4          The plan and disclosure statement statement say

5      that the debtors will request, it doesn't say when they'll

6      request that a class where there are no votes is deemed to

7      be an accepting class.

8          I think -- I read that to mean, since it's in the

9      plan and the disclosure statement that --

10         MR. SCHROCK:  Yes

11         THE COURT:  -- that you're requesting to have that

12     be ruled on at confirmation.

13         MR. SCHROCK:  We are, Your Honor.

14         THE COURT:  So I think for the order it shouldn't

15     say that now.  And instead the ballot should say that the

16     debtors intend to request at confirmation that if there are

17     no votes in a particular class it will be deemed to accept.

18     And, you know, that way people know that that's the risk

19     they take in not voting because it's not like Brazil where

20     you have to vote.

21         (Laughter)

22         MR. FOX:  Thank you, Your Honor.  We'll look

23     forward to seeing the, hopefully the ballots and the revised

24     form of order.

25         THE COURT:  Okay.  And I would even put that in

Page 54

1    bold.  I mean, you have some other stuff in bold.  I would

2    that in bold on the ballot.

3           MR. SCHROCK:  We will, Your Honor.  We'll put that

4    in bold and make those changes.

5           THE COURT:  Okay, because it's really, again,

6    based on the theory of implied consent.

7           MR. SCHROCK:  Right.

8       (Pause)

9           MR. SCHROCK:  Your Honor, the next objection was

10   the objection of Community Unit School District 300 which is

11   at ECF Number 3992.  They had argued that the disclosure

12   described the extent and nature of the ongoing Illinois EDA

13   Act dispute.  We added language.  We believe that this

14   matter has been resolved.

15          THE COURT:  Okay.

16          MR. KADISH:  Well, almost.

17          MR. SCHROCK:  Almost.

18          THE COURT:  Okay.

19          MR. KADISH:  Almost.  Your Honor, Allen Kadish,

20   Archer & Greiner for Community Unit School District 300 in

21   Illinois.

22          We raised two substantive issues and I think over

23   the last hour I've heard a lot talked about the plan and

24   trust structure and the release issue.  And with respect to

25   the specific language that we suggested in our objection,

Page 55

1    Mr. Friedmann and I and our colleagues outside the courtroom

2    continue to negotiate the language.  And I hope we're going

3    to get there.

4            THE COURT:  Well, what are you still talking

5    about?

6            MR. KADISH:  We're still talking about we want

7    the, in our objection we suggested language to disclose the

8    dispute between Sears and the school district that is now

9    going on in Illinois and the potential impact of that.  And

10   we're down --

11           THE COURT:  To me the --

12           MR. KADISH:  -- we're down to one clause, I think,

13   between Chicago and Michigan.

14           MR. FRIEDMANN:  Yeah.  Your Honor, Jared

15   Friedmann, Weil, Gotshal & Manges on behalf of the debtors.

16   We're literally down to one line where we had quoted the

17   language of the EDA.  They instead wanted to paraphrase it

18   using their interpretation.  I suggested coming and just

19   saying the EDA's requirements to eliminate this.

20           THE COURT:  Do that.  That's fine.

21           MR. KADISH:  We're -- they're negotiating as --

22           THE COURT:  No.  No.  That's it.

23           MR. KADISH:  -- as we're sitting here.

24           THE COURT:  The EDA's requirements.  No one cares

25   about that except your client and the debtor.  Although I

Page 56

1      see ESL now wants the money.

2                MR. O'NEAL:  Yeah.

3                MR. SCHROCK:  Yes, they do.

4           (Laughter)

5                THE COURT:  Okay.

6                MR. SCHROCK:  Your Honor, but I believe -- I think

7      with the language we'll either resolve it or if it hasn't

8      been resolved we would ask that the objection be overruled.

9                THE COURT:  No.  I -- with that change it's

10     resolved.

11               MR. SCHROCK:  Okay.

12               THE COURT:  Okay.

13               MR. SCHROCK:  Thanks very much.

14               Your Honor, the next objection is Number 12, FTI

15     Consulting Canada in its capacity as a court-appointed

16     monitor for Sears Canada.  We have agreed to resolve this

17     objection by providing them information, by providing the

18     Canadian monitor with information and intercompany claims

19     and have a conference call regarding the same.  And their

20     rights to the allocation of fees and a toggle plan we're

21     noting for the record are reserved, which --

22               THE COURT:  Okay.

23               MR. SCHROCK:  -- it's a confirmation issue.

24               THE COURT:  So the resolution doesn't involve any

25     more language to the disclosure statement.  It just --

```
 1              MR. SCHROCK:  That's it.

 2              THE COURT:  -- is that commitment to deal with

 3     that.

 4              MR. SCHROCK:  That's it, Your Honor.

 5              THE COURT:  Is that right as far as the monitor's

 6     counsel is concerned?

 7              UNIDENTIFIED SPEAKER:  That's correct, Your Honor.

 8              THE COURT:  Okay.  All right.  You do need to

 9     update the discussion of the ruling on the stay.  I think

10     that was --

11              MR. SCHROCK:  Yes.  We -- yeah.  We'll do that,

12     Your Honor.

13              THE COURT:  Okay.

14              MR. SCHROCK:  Okay.  Almost there.  Two more.

15              So next is the objection of Cyrus Capital Partners

16     LP, ECF Number 3997.  I believe that we have added

17     additional language to resolve their issue.  They may have

18     wanted to speak to the 507(b) issues, but we may be

19     resolved.

20              MR. KRELLER:  Your Honor, Tom Kreller of Millbank,

21     LLP on behalf of Cyrus.

22              Your Honor, we're resolved with respect to our

23     adequacy of disclosure objections.  We do still have issues

24     with the plan, but we'll deal with those as plan

25     confirmation issues.
```

Page 58

```
 1              THE COURT:  Okay.  That's fine.  Thank you.

 2              MR. SCHROCK:  Your Honor, the next two objections

 3   have been resolved.  Sorry, Your Honor.  Just -- Item 14 is

 4   Liberty Mutual Insurance Company, ECF Number 3989.  We had

 5   -- they had noted that they wanted a provision describing a

 6   surety bond program and the debtors' certain aspects of

 7   Liberty's continued rights.  We said this is a confirmation

 8   objection and we have noted language requested by Liberty in

 9   Section 13.6 of the plan.

10              THE COURT:  Okay.  Is there anyone here for

11   Liberty Mutual?

12              MR. SCHROCK:  And our understanding is it's

13   resolved.

14              THE COURT:  Okay.  I'm sorry.  That's in 13.6 of

15   the plan or in the disclosure statement?

16              MR. SCHROCK:  The plan, Your Honor.

17              THE COURT:  Okay.

18              MR. SCHROCK:  Yeah, page 66 carrying over to 67.

19         (Pause)

20              THE COURT:  Okay.

21              MR. SCHROCK:  Okay.  Thank you.

22              THE COURT:  To the extent it's still live I'll

23   overrule the objection.  But it looks like it's been

24   resolved.

25              MR. SCHROCK:  Yes.
```

1              Your Honor, next was the relator, Carl Ireland,

2      administrator of the estates of James Garbe at ECF Number

3      4007.  This is, you know, an assertion that the disclosure

4      statement did not accurately reflect the mortgagee's rights

5      with respect to their super priority administrative claims.

6      We added some language to the disclosure statement as noted

7      in the debtors' response chart.

8              I believe that that matter is resolved at this

9      point with the addition of that language subject to Mr.

10     Ireland's counsel telling me I have that wrong.

11             THE COURT:  Is counsel for Mr. Ireland as realtor

12     here or on the phone?

13             MR. BENZIJA:  Good afternoon, Your Honor.  Walter

14     Benzija of Halperin Battaglia Benzija on behalf of Carl

15     Ireland as Relator.

16             Your Honor, we have resolved the disclosure

17     statement objections subsequent to the filing of the

18     debtors' response -- reply.  We did have a couple of

19     additional tweaks to some of the language and some of the

20     description which we were able to resolve yesterday.  So

21     with those additional changes we have no further objection

22     to the disclosure statement.

23             THE COURT:  Okay.  That's fine.  So that I think

24     just leaves the committee's objection.

25             MR. SCHROCK:  That's right, Your Honor.

Page 60

1            During the short adjournment before we were

2    scheduled to start we worked with the unsecured creditors'

3    committee counsel.  They gave us a list of items that they

4    would like us to include with respect to the disclosure

5    statement.  They were all disclosure related items.  We did

6    not have a problem with including those items.

7            One of the items they noted was just the inclusion

8    of I think a letter from the creditors' committee that they

9    would like to go out with the disclosure statement and we

10   said, you know, subject to seeing it and making sure it's

11   accurate we were fine.  Normally we like to see those before

12   we say yes.

13           But I think, you know, there were other items

14   that, you know, a number of items they asked for disclosure

15   for we agreed to walk through it.  But I'll let Mr. Dublin

16   explain their position and then we can respond if necessary.

17           THE COURT:  Okay.

18           MR. DUBLIN:  Good afternoon, Your Honor.  Phil

19   Dublin, Akin Gump, on behalf of the official committee of

20   unsecured creditors.

21           Mr. Schrock is correct that we did meet with the

22   debtors' counsel as well as counsel to the special committee

23   of the restructuring committee to go over some items that we

24   had as it relates to disclosure and on a number topics both

25   that we believe required additional disclosure based on our

Page 61

1    objection as well as additional disclosure based on

2    modifications to the disclosure statement that were filed

3    yesterday.

4            They committed to work with us in good faith to

5    address language, additional language issues that we thought

6    were necessary as well as to allow us to have an opportunity

7    to comment on some of the additional language that they have

8    added that addresses points or positions that the committee

9    has that we would like to clarify further.

10           So we will endeavor to agree on language with the

11   debtors on those points and we fully expect we'll be able to

12   do so.

13           Of course as is commonplace we would like to be

14   able to submit a letter with respect to -- and in as plain

15   language or plain English as possible so that the unsecured

16   creditor body can understand what all of these pages mean

17   and what issues the creditors' committee has with the plan

18   as we go forward towards the confirmation process.

19           As we laid out in our objection we do have a

20   number of issues that go to the heart of the plan and the

21   confirmability of the plan ranging from the propriety of the

22   settlement to whether the debtors actually will be

23   administratively solvent at the end of the day, which, of

24   course, is an overriding issue in order to confirm the plan.

25           We have concerns with the PBGC settlement, the

Page 62

1    scope of the releases and how the release language works in

2    relation to D&O insurance which we are going to work with

3    Mr. Basta and Mr. Clayton to ensure appropriately protects

4    the availability of D&O insurance separate and apart from

5    the scope of the releases themselves.

6           The debtors have advised today that they fully

7    expect administrative expense claims to be paid in full in

8    cash, meaning that the beneficiaries ultimately of the

9    litigation trust should be unsecured creditors in these

10   cases.  As we highlight extensively in our pleading, we

11   believe (indiscernible) governs the trust should then belong

12   to the beneficiaries to choose their fiduciaries.  That will

13   be an issue that we will raise in connection with

14   confirmation to the extent we are unable to resolve with the

15   debtors and the restructuring committee in advance.

16          And, of course, the best interest of creditors

17   test, there was a lot of information provided with respect

18   to the liquidation analysis yesterday or very early this

19   morning.  I think it was filed around 1 a.m.  One of the

20   items in there was a material increase in the claim

21   estimates for -- I believe at almost every debtor and

22   especially at K-Mart where the number went up by about 600

23   million compared to the last estimate.  We've asked for

24   additional disclosure as to why that number has increased so

25   substantially in a short period of time since the debtors

Page 63

 1    had previously filed their last liquidation analysis.

 2          The debtors have also agreed to further update

 3    their administrative expense tracker which primarily

 4    focusing on at this point on the professional fee budget

 5    which is at page 4 of Exhibit C of what they filed, which

 6    essentially stops in June.  But obviously we're looking at a

 7    confirmation hearing currently being scheduled toward the

 8    end of July.  So there needs to be some updated numbers

 9    included for the various professionals in those line items

10    as well as estimates for potential costs of litigation that

11    is going to be taking place between now and then related to

12    in addition to the plan, the APA disputes, the 507(b)

13    claims, and potentially other issues.

14          So we talked to the debtors about all of those

15    issues and, again, we expect to work cooperatively to agree

16    on language and will otherwise be reserving our objections

17    to confirmation.  And we, of course, will provide a copy of

18    our letter to the debtors in advance and work through any

19    comments or questions they may have so that it can be

20    included in a solicitation package.

21          THE COURT:  Okay.  I appreciate your opening

22    statement about making it in plain English and brief.  But

23    it sounds like there's a risk that this could become a major

24    document.

25          MR. DUBLIN:  We have a draft that's four pages,

Page 64

1   Your Honor.  I don't think we're looking at a major

2   document.

3           THE COURT:  Okay.

4           MR. DUBLIN:  We're trying to make it as simple as

5   possible to highlight issues and give people an idea of

6   where to look and what they can expect in treatment based on

7   the estimate so that they cannot have to read all the pages.

8           THE COURT:  Okay.  Well, I -- if you can't work it

9   out we should have some mechanism for me to decide --

10          MR. DUBLIN:  Of course, Your Honor.

11          THE COURT:  -- whether it's adequate information

12  since that really is sent out with the disclosure statement.

13  So I'll just leave it at that for now.

14          MR. DUBLIN:  Understood.

15          THE COURT:  I guess the only other thing I was

16  reacting to, and maybe it was just because it was a list of

17  concerns as opposed to issues which people sometimes

18  confuse, is the emphasis on potential administrative

19  insolvency.  Obviously, the committee doesn't represent

20  administrative expense creditors.  So the focus should be

21  on, you know, what's good for the unsecureds if there is

22  administrative insolvency.

23          MR. DUBLIN:  Of course.

24          THE COURT:  Okay.

25          MR. DUBLIN:  Of course.

1              THE COURT:  All right.  Okay.

2              MR. DUBLIN:  Thank you, Your Honor.

3              THE COURT:  That's fine.  Someone's --

4              MR. SCHROCK:  Your Honor --

5              THE COURT:  Someone's standing up behind you.  I

6     don't know if there's an objection or --

7              MR. SCHROCK:  Oh, I thought I was done.

8              MR. RAYNOR:  Good afternoon, Your Honor.  Brian

9     Raynor of Locke Lord on behalf of the Pension Benefit

10    Guarantee Corporation.

11             THE COURT:  Good afternoon.

12             MR. RAYNOR:  I think it's important that we update

13    the Court and all the other parties in interest on the

14    status of our negotiations with the debtors in our efforts

15    to incorporate the term sheet as modified for substantive

16    consolidation and to the amended plan.

17             The debtors' professionals and PBGC have been

18    negotiating in good faith.  We've made a lot of progress.

19    But at this current juncture we're not entirely there in

20    supporting the plan.

21             As everybody knows there's really two versions of

22    the plan.  There's the subcomm plan settlement and we think

23    we're largely there with, you know, the principle terms and

24    how that is going to work.  Of course, a lot of paper was

25    filed last night.  We need to screen the paper to make sure

Page 66

1    there's nothing inconsistent with what we've discussed.

2            But the problem is largely, at least at this

3    juncture, with the toggle mechanism.  The way the toggle

4    works currently is not a formulation that PBGC can support

5    because it leaves open a wide -- a possibility that K-Mart

6    can be the only effective debtor absent an uneconomical loan

7    to other insolvent debtors.  We are continuing to negotiate

8    on the debtors --

9            THE COURT:  I'm sorry.  Say that again.  K-Mart

10   could be the only what debtor

11           MR. RAYNOR:  Plan that goes effective.

12           THE COURT:  Oh, effective.  Okay.

13           MR. RAYNOR:  That's right.  Absent an uneconomical

14   loan to other administratively insolvent debtors.  We are

15   working with the debtors' professionals on a potential

16   mechanic that will address that potentially.  We're not

17   there yet.  We hope to be there.  But we thought it was

18   important to update the Court on the possibility that if

19   there isn't a resolution on the toggle mechanism, that the

20   plan will not have PBGC support.

21           THE COURT:  Okay.  So the need to confirm with

22   regard to the main debtors is just for the settlement plan,

23   not the toggle plan.

24           MR. SCHROCK:  Right.

25           THE COURT:  Okay.

Page 67

1          MR. RAYNOR:  This isn't -- Your Honor, I think

2    it's important to disclose, you know, we don't object to the

3    disclosure statement going out and for soliciting votes.

4    But we do think a couple of lines added underneath the

5    description of the toggle would be important to say that in

6    its current formulation it does not have PBGC support.

7          THE COURT:  Okay.  So the term sheet didn't spell

8    this out?

9          MR. RAYNOR:  Your Honor, the term sheet speaks of

10   PBGC and the debtors, plural, confirming the Chapter 11

11   plan.  With the toggle there is a potential for a debtor to

12   confirm a plan and the rest sit in a potential Chapter 7

13   which we don't think makes sense for anybody.  We don't

14   think it makes sense for PBGC.  We don't think it makes

15   sense for creditors.  And I would be surprised if the

16   debtors thought it made sense either.  But the fact that

17   there's this potentiality out there raises a serious issue.

18          MR. SCHROCK:  Yeah.  Judge, in plain English --

19          THE COURT:  So maybe an academic issue.

20          MR. SCHROCK:  Yeah.  I think it's an academic

21   issue because, you know, the thought of having one debtor go

22   effective while we have, you know, conversions for multiple

23   other debtors and have this eventuality, that's certainly

24   not the debtors' intention.  If we have issues and we're

25   under the toggle plan and we have admin solvency issues,

1    we're going to be talking to admin creditors --

2              THE COURT:  All right.  Well, I --

3              MR. SCHROCK:  -- going into confirmation.

4              THE COURT:  -- I think you should add the

5    footnote, though, because --

6              MR. SCHROCK:  Okay.

7              THE COURT:  -- the -- when you read the disclosure

8    statement you get the view that the PBGC is on board with

9    both.

10             MR. SCHROCK:  Right.

11             MR. RAYNOR:  Thank you, Your Honor.

12             THE COURT:  Okay.

13             MR. SCHROCK:  I will do so unless I can convince

14   them otherwise, Your Honor.

15             THE COURT:  That's right.

16             MR. SCHROCK:  I'll add it.

17             Okay.  Your Honor, I believe subject to any

18   comments the Court has which I saw your markup peeking over

19   there that -- and we are happy, of course, to incorporate

20   any comments the Court has and we would ask for approval of

21   the disclosure statement so that we can move forward,

22   resolve these language issues and begin soliciting votes on

23   the debtors' plan.

24             THE COURT:  Okay.  I did have a couple of comments

25   that I wanted to relay to you.  And I guess I'll start with

Page 69

1    the plan.

2            MR. SCHROCK:  Uh-huh.

3            THE COURT:  You've already talked about a couple

4    of them so I'm not going to repeat those.  And I'll give you

5    my markup, too.  But I'm looking at the plan here just

6    really for clarity's sake.

7            MR. SCHROCK:  Uh-huh.

8            MR. SCHROCK:  And there would be complimentary

9    changes in the disclosure statement.  When you get to 2.1

10    which is the treatment of administrative expense claims --

11            MR. SCHROCK:  Yes.

12            THE COURT:  -- the first part of Section 2.8 says

13    that they will be paid on the latest of the effective date

14    or the first business day after the date that's 30 days

15    after it's allowed.

16            MR. SCHROCK:  Uh-huh.

17            THE COURT:  But then later it says from the net

18    proceeds of total assets, which would include litigation

19    proceeds.  So it just needs to be -- is that still on the --

20    that same timing applies to that?

21            MR. SCHROCK:  Yes.

22            THE COURT:  Okay.  Because it says, and why if the

23    amount available for distribution pursuant to the foregoing

24    clause is insufficient then from total assets.  So it

25    doesn't really -- I just -- I wanted clarity on what it is.

1    I think it's the latter, but I think you should make it

2    clear that you're intending here that this is always from

3    that period.

4              MR. SCHROCK:  Yes.

5              THE COURT:  Unless, of course, parties agree

6    otherwise.

7              MR. SCHROCK:  Yeah.  That has to be the case.

8              THE COURT:  Okay.

9              MR. SCHROCK:  We'll make --

10             THE COURT:  It's just given that it's --

11             MR. SCHROCK:  Yeah.

12             THE COURT:  -- X and Y, there's a suggestion that

13   maybe it's the latter.

14             THE COURT:  Right.  And not unless somebody would

15   agree, so.

16             THE COURT:  Exactly.

17             And then the next page on fee claims, in C at the

18   bottom, it says that there's a mechanism where there's a

19   reasonable estimate to pay them made within five days before

20   the effective date.  And it says that the debtors of the

21   liquidating trustee as applicable shall fund such estimated

22   amounts into the carve out account.

23             And my question was fund from where.  I'm assuming

24   -- I guess the carve out includes someone has a lien on

25   everything, right, so it's basically -- it doesn't matter

Page 71

1    where it comes from.  This is a question for everybody.  I

2    --

3              MR. SCHROCK:  Yeah.  I think it's either --

4              THE COURT:  You can't -- in other words you can't

5    use this as a way to expand the carve out amount.  But I'm

6    assuming that since there's -- there are parties that have a

7    lien on everything, it would be covered by the carve out.  I

8    just want to make sure that that's the case.

9              MR. SCHROCK:  Right.  Other than the wind down,

10   the wind down account, of course.

11             THE COURT:  Right.  So I guess it's from

12   collateral.

13             MR. SCHROCK:  Yes.

14             THE COURT:  You know, subordinate to the carve

15   out.

16             MR. SCHROCK:  Yeah.

17             THE COURT:  And then in the treatment of the ESL

18   and 507(b) priority claims, it says they are to be paid

19   prior to the payment of any other administrative expense

20   claims other than fee claims.  But it's just fee claims from

21   the carve out, right?  It's not --

22             MR. SCHROCK:  It is.

23             THE COURT:  So you should probably put that in,

24   other than the fee claims to the extent of the carve out.

25             MR. SCHROCK:  Okay.  Got it.

Page 72

1          THE COURT:  And then in -- right below there where

2     it talks about the separate plans, it says, claims against

3     each debtor other than admin expense claims and priority tax

4     claims are classified.  But I think you should add to that

5     list the other 507 priority claims and the ESL priority

6     claims.

7          MR. SCHROCK:  Right.  Yeah.  We will do so.

8          THE COURT:  Okay.  I'm not going over all these.

9     I think some of them are --

10          MR. SCHROCK:  Okay.

11          THE COURT:  -- just self-explanatory.

12          I have -- in each -- when you deal with the other

13     secured claims, the treatment of them, and they show up in

14     various guises it says that they're impaired.  I guess you

15     don't need to make this point here, although you could drop

16     a footnote saying impaired because of the release issue.

17     But you should definitely do that in the disclosure

18     statement.

19          MR. SCHROCK:  We'll do that in the DS, Your Honor.

20          THE COURT:  Okay.  In the treatment of the PBGC

21     claims there's a defined term, specified GUC liquidating

22     trust interest that's not in the defined terms.  So I don't

23     know if that's from an earlier version, but --

24          MR. SCHROCK:  Yeah.  It's a --

25          THE COURT:  -- I think it needs to just be --

Page 73

1              MR. SCHROCK:  We'll correct that.

2              THE COURT:  -- fixed.

3              Oh, so on page 48, I just made your job more

4    difficult, but I should raise it.  At the carry over

5    paragraph at the top it talks in the toggle plan about the

6    ability to make these intercompany loans.

7              MR. SCHROCK:  Yes.

8              THE COURT:  And it says that those loans shall be

9    immediately repaid from and secured by an automatically

10   perfected first priority lien on the proceeds of preserved

11   causes of action.

12             Now you've already given a first priority lien to

13   PBGC.  So I don't know how those relate to each other, if

14   they're both first or --

15             MR. SCHROCK:  Yeah.  First.  Right.  I mean, the

16   -- given the 507(b) claims which technically have to be paid

17   to go effective our thought was that the 507(b)s are up top

18   and then the, you know, the PBGC goes -- you know, doesn't

19   have a lien as a first priority interest, you know,

20   effectively right behind it.  But we'll clarify.

21             THE COURT:  But this is -- but this would be a

22   loan.  This isn't a 507(b).  This is a -- the intercompany

23   loan.

24             MR. SCHROCK:  Right.  I -- and I misspoke.  I

25   mean, the -- to the extent we needed to repay those

Page 74

1   intercompany loan claims which were admin claims necessary

2   to go effective, it's the same --

3             THE COURT:  So you think that would --

4             MR. SCHROCK:  -- same issue.

5             THE COURT:  -- go first?

6             MR. SCHROCK:  Yes, it would.

7             THE COURT:  But you -- I think you should just

8   make that clear --

9             MR. SCHROCK:  Okay.

10            THE COURT:  -- then.

11            MR. SCHROCK:  We'll do that.

12            THE COURT:  I skipped something and I apologize.

13  Going back to page 12, the definition of other assets, 1.116

14  --

15            MR. SCHROCK:  Uh-huh.

16            THE COURT:  -- there's a potential ambiguity here.

17  It says, "Means all remaining assets of each of the debtors,

18  other than the specified causes of action, other causes of

19  action, and credit bid release consideration."

20            So the question I have is, is the other -- are the

21  other causes of action and the credit bid release

22  consideration part of the carve out, that it's all, you

23  know, other than --

24            MR. SCHROCK:  Yes.  Yeah.  It's a list.

25            THE COURT:  It's --

1              MR. SCHROCK:  Yeah.

2              THE COURT:  Knowing your adversary here I think

3      you should be just a little clearer on that.

4              MR. SCHROCK:  Okay.  Thank you.

5              THE COURT:  And then this is, I think, a holdover

6      from another plan.

7              MR. SCHROCK:  Oh, boy.

8              THE COURT:  On page 49 at 9.5 it says, on the

9      effective date all liquidating trust assets of the debtor

10     shall be transferred to their respective liquidating trust

11     of such debtor.

12             MR. SCHROCK:  Right.

13             THE COURT:  But it's -- I think it's now just the

14     --

15             MR. SCHROCK:  Right.

16             THE COURT:  -- liquidating trust.

17             MR. SCHROCK:  It's just the one trust.  Yeah.

18             THE COURT:  And we talked about the language on

19     the release of the people that, in 15.11 I think that we

20     just talked about.  That needs to be --

21             MR. SCHROCK:  Yes.

22             THE COURT:  I think we worked --

23             MR. SCHROCK:  Yeah.

24             THE COURT:  So those -- I think those are needed

25     to make the plan clear.

Page 76

1          MR. SCHROCK:  Uh-huh.

2          THE COURT:  And there are conforming changes to

3    the disclosure statement which I'll give you, but let me go

4    through the ones that may not be clear.

5          Kind of an odd statement on page 3.  It says, the

6    liquidating trustee will, among other things, be responsible

7    for all decisions and duties with respect to, and then it

8    lists five things.  I guess because it says among other

9    things, but I just --

10         MR. SCHROCK:  Right.

11         THE COURT:  -- you know, he's going to be

12   responsible for everything, right?

13         MR. SCHROCK:  Yeah.

14         THE COURT:  So --

15         MR. SCHROCK:  Subject to the oversight of the --

16         THE COURT:  Yeah.

17         MR. SCHROCK:  -- the board.

18         THE COURT:  So I think I would probably change

19   that to just -- for every -- you know, he does everything.

20         MR. SCHROCK:  Okay.

21         THE COURT:  And then in the charts for admin

22   claims, priority claims, it has them being paid out of the

23   net proceeds of total assets.  I don't know if you want to

24   add a footnote, you know, it's -- that unless otherwise

25   agreed it would be on the effective date.

Page 77

1              MR. SCHROCK:  Right.  Yeah.  We will make that

2     change.  That's --

3              THE COURT:  Okay.  And then this chart doesn't

4     have what I just wrote down in shorthand the K-Mart

5     guarantee claims.  So I think you need to add that.

6              MR. SCHROCK:  Yeah.

7              THE COURT:  And that can also clarify Mr. Fox's

8     point about, you know, they're separate so that's what they

9     -- they get that.

10        (Pause)

11              THE COURT:  Actually, this was a plan comment,

12     although I put it here instead.  But you should think of it

13     in the plan, too.

14              The released parties include the liquidating

15     trustee and the liquidating trust board.

16              MR. SCHROCK:  Uh-huh.

17              THE COURT:  And your response explains, in

18     response to the U.S. Trustee's objection, that this is in

19     their capacity as successor in assign, but not with respect

20     to their post-effective date --

21              MR. SCHROCK:  Right.

22              THE COURT:  -- conduct.  But I think you should

23     have put that in the plan, although you could add, you know,

24     Barton type language.

25              MR. SCHROCK:  Yeah.  I understand, Judge.  We'll

1   add that.

2           THE COURT:  Okay.  Then on page 11, at the top

3   there there's a paragraph that says, ballot.  And I think

4   this is where you put in bold that the debtors intend to

5   request the Court to treat any class where there have been

6   no votes at all as an accepted class.  And just, you know --

7           MR. SCHROCK:  Got it.

8           THE COURT:  -- put that in bold, you know, deeming

9   it to have consented.

10          MR. SCHROCK:  Will do.

11          THE COURT:  On page 14, you have the chart of the

12  prepetition indebtedness.  I think you should put a footnote

13  here, because at the bottom of that it says, total

14  intercompany debt.

15          MR. SCHROCK:  Uh-huh.

16          THE COURT:  But you should say excluding or

17  exclusive of intercompany claims or balances because that's

18  obviously a --

19          MR. SCHROCK:  Right.

20          THE COURT:  -- a big issue for people.

21          And in the discussion on page 20 I think you

22  should -- on the intercompany claims and notes discussion I

23  think you should add, maybe this is in the committee's

24  language they're giving you, but I think you should add a

25  sentence saying how the intercompany obligations have lien

1   and priority status, and maybe have a cross-reference to the

2   K-Mart guarantee claim section.

3          MR. SCHROCK:  Got it.

4          THE COURT:  And then on the next page, on 21,

5   after you say, as more recent -- as (indiscernible) set

6   forth in Section 4(n) below, the PBGC settlement provides

7   that the PBGC will take all reasonable actions requested by

8   the debtors to cause KCD to waive any alleged administrative

9   expense claim against the debtors arising from the failure

10  to make royalty payments.

11         MR. SCHROCK:  Uh-huh.

12         THE COURT:  I don't know if this is the committee

13  language.  If it is you should just go with the committee

14  language.  But there should be some note here that the

15  committee asserts that the main or the primary obligor on

16  those administrative expense claims would not have the

17  wherewithal to pay more than X percent of them.

18         MR. SCHROCK:  Yes.

19         THE COURT:  On the next page -- well, it starts on

20  page 21, you talk about the Ezrack (sic) medium terms notes,

21  the Sparrow term loan and the Sparrow mezzanine term loan.

22  What do they -- this doesn't say what they get under the

23  plan, how they're treated.  Are they in a particular class?

24  Are they getting no distribution?

25         MR. SCHROCK:  Well, they were -- you know, they

1      were among non-debtors, Your Honor.  So --

2              THE COURT:  But they have -- but they are --

3         (Pause)

4              THE COURT:  Do they have any claims against the

5      debtors?  That's my --

6              MR. SCHROCK: No, they --

7              THE COURT:  -- question.

8              MR. SCHROCK:  -- don't, Your Honor.

9              THE COURT:  All right.

10             MR. SCHROCK:  That's just informational.  So --

11             THE COURT:  Okay.

12             MR. SCHROCK:  -- that may be unnecessary.

13             THE COURT:  Well --

14             MR. KRELLER:  Your Honor, Tom Kreller for Cyrus.

15     It -- Cyrus holds some of those MTNs that are purchased at

16     the auction.  So they -- so Cyrus does have unsecured claims

17     against the issuers --

18             MR. SCHROCK:  Oh, I was referring to the --

19             MR. KRELLER:  -- of those notes.

20             MR. SCHROCK:  -- Sparrow loans.

21             THE COURT:  But then there's Ezrack and -- yeah,

22     it's just Ezrack.

23             MR. SCHROCK:  Correct.

24             THE COURT:  So --

25             MR. SCHROCK:  The Sparrow loans, though, those

1    were transferred along with DSL to --

2              UNIDENTIFIED SPEAKER:  Correct.

3              MR. SCHROCK:  Right.

4              THE COURT:  Okay.  And on Ezrack do they have a

5    claim --

6              MR. SINGH:  Yeah, Judge.  The --

7              THE COURT:  But don't the -- is this the one where

8    they don't get any distribution as long as there's --

9              MR. SINGH:  No.  No, Your Honor.  In the latest

10   changes to the plan the definition section has the Ezrack

11   notes specifically included and then they're all given

12   general unsecured treatment.

13             THE COURT:  Okay.  Okay.

14             All right.  I think on page 55 you say in

15   addition, in accordance with Section 2.1 of the plan to the

16   extent that the debtors determine that there will be an

17   administrative shortfall the debtors may solicit

18   administrative claimants.

19             MR. SCHROCK:  Uh-huh.

20             THE COURT:  I think you should probably say either

21   before or after the confirmation hearing, or something like

22   that.

23        (Pause)

24             THE COURT:  This was just a question.  We've added

25   the language that I think responded to ESL's objection about

1   the ability to object to their claims.  I don't -- I just

2   don't remember, were they allowed for all purposes or just

3   for purposes of the credit bid?

4           MR. SCHROCK:  I thought it was for all purposes.

5           MR. SINGH:  Yes.

6           THE COURT:  Anyway, just --

7           MR. SINGH:  Your Honor, it's for --

8           THE COURT:  Just double check that.

9           MR. SINGH:  Yeah.  In the sale order it's for all

10  purposes.

11          MR. SCHROCK:  Yeah.

12          THE COURT:  But they were allowed just in a -- I

13  mean --

14          MR. SINGH:  Your Honor, they were allowed just

15  with respect to the particular notes that were being credit

16  bid.  To the extent they have other claims, it's an open

17  issue and I -- Mr. O'Neal can correct me if I'm wrong.

18          THE COURT:  Anyway, I just want to make sure you

19  focus on this one to get it --

20          MR. O'NEAL:  Yeah.

21          THE COURT:  -- get it clear.

22          MR. O'NEAL:  Your Honor, we'll work with the

23  debtors.  But it was the -- the claims scheduled on Exhibit

24  G --

25          THE COURT:  Right.

1          MR. O'NEAL:  -- were allowed in full for all

2     purposes.

3          THE COURT:  Well, this was my question is I don't

4     see how one can allow them in full as secured claims because

5     I had -- no one had fixed the value of the collateral yet.

6          MR. O'NEAL:  They are -- why don't we --

7          MR. SCHROCK:  The amount is --

8          MR. O'NEAL:  Yes.  The amount is --

9          THE COURT:  The amount.

10         MR. O'NEAL:  -- fixed.

11         THE COURT:  So I think that's --

12         MR. O'NEAL:  And the amount is allowed for all

13    purposes.  And we can look at the language of the sale order

14    and make sure it conforms to the sale order.

15         THE COURT:  Okay.  All right.

16         MR. BASTA:  Your Honor, Paul Basta.  Just one

17    other point.  And this will be part of the dispute that we

18    have with ESL.  Part of the relevance of this allowance

19    dovetails to the treatment obviously because if it's

20    recourse only to --

21         THE COURT:  Right.

22         MR. BASTA:  -- the non-litigation proceeds --

23         THE COURT:  Then the credit bid --

24         MR. BASTA:  -- it didn't really --

25         THE COURT:  -- the credit bid consideration --

1          MR. BASTA:  Right.  It did -- so they kind of go

2     together.

3          THE COURT:  But I -- but just focusing on this,

4     and I was just focusing on the value point --

5          MR. BASTA:  Understood.

6          THE COURT:  -- because that's one of your issues

7     with the 507(b) point.  Nothing from nothing is nothing.

8     That's basically the debtors' argument, right?

9          MR. SCHROCK:  Yes.

10          THE COURT:  Okay.  You can't have a secured claim

11     that's diminished in value if it never had any value in the

12     first place.

13          MR. SCHROCK:  Correct.

14          THE COURT:  All right.

15          Okay.  Well, you've got to clean up page 65, third

16     paragraph of the footnote.

17          MR. SCHROCK:  Uh-huh.

18          THE COURT:  And I'm assuming the committee's given

19     you language.

20        (Laughter)

21          MR. SCHROCK:  Yes.  That's -- it was a late night,

22     Judge.  Sorry.  And the same for 66.

23          THE COURT:  All right.  And the last point is on

24     the release discussion on page 153.  The third full

25     paragraph says, for those who abstain from voting or vote to

Page 85

1   reject the plan, but do not opt out of the third party

2   releases on the ballots, the debtors will demonstrate at

3   confirmation that such releases are an integral part of the

4   plan and can be approved on a consensual basis.  And then I

5   would add this phrase in bold, if you don't opt out, or on

6   -- and then continue on, or on a non-consensual basis under

7   Metro Media.

8             MR. SCHROCK:  Yeah.  We'll add that in bold, Your

9   Honor.

10            THE COURT:  Well, I think you say -- if you don't

11  opt out and/or don't object to confirmation, say that.

12            MR. SCHROCK:  Okay.

13            THE COURT:  Okay.  So let me just make sure.  The

14  liquidation analysis.

15       (Pause)

16            THE COURT:  Okay.  So with those changes I will

17  approve the disclosure statement as containing adequate

18  information and let the debtors solicit acceptances.

19            Obviously you need to go over the letter with the

20  committee.

21            MR. SCHROCK:  Yes.

22            THE COURT:  And you should quickly circulate a

23  redline of the changes to the plan and disclosure statement

24  to the people who objected and --

25            MR. SCHROCK:  Yes, we will.

1          THE COURT:  -- and the other parties you've been

2     dealing with like the PBGC.  And then you don't need to

3     settle it, just in a brief period, and then e-mail it to

4     chambers with a clean blackline and the order.

5          MR. SCHROCK:  Thank you very much, Your Honor.  We

6     --

7          THE COURT:  Okay.

8          MR. SCHROCK:  -- really appreciate it.

9          THE COURT:  Okay.  And it's clear to me that there

10    are still important differences to be resolved here on the

11    settlement plan aspect of this as well as other issues that

12    the committee has raised, including the composition of the

13    liquidating trust board and the like.  There are related

14    issues as to the treatment of administrative expenses, which

15    we talked about last week, and 507(b) claims.

16          Some of those can be decided very quickly.  Some

17    can be decided at confirmation.  If the parties want to have

18    help with an independent third party in trying to resolve

19    them, I'm amenable to that as long as we stay on schedule

20    unless parties have really made enormous progress in that

21    process, or as I keep saying to you all, you're fully

22    capable of negotiating these things among yourselves, too.

23          But if it's -- if you decide to go the former

24    route, let me know and, you know, I have a standard

25    mediation order.  I also have a couple of my judge

Page 87

1   colleagues who not only owe me one, but have said they owe

2   me one and are willing --

3       (Laughter)

4           THE COURT:  So if you want a judicial mediator,

5   just someone who, at least one, maybe two who would be

6   available.

7           MR. SCHROCK:  Yeah.  Thanks very much, Your Honor.

8   We're going to discuss that with the restructuring committee

9   --

10          THE COURT:  Okay.

11          MR. SCHROCK:  -- and discuss it with the committee

12  and other parties and we'll --

13          THE COURT:  I mean --

14          MR. SCHROCK:  -- try and come to grounds on it.

15          THE COURT:  -- a mediation isn't free, although if

16  it's with a judge that part is free.

17          MR. SCHROCK:  That's almost free.

18          THE COURT:  But there are a lot of parties who

19  attend and participate.  But if it's cost effective, if

20  people think it would be worthwhile, then, you know, you

21  shouldn't hesitate to request it.

22          MR. SCHROCK:  We're open to just about anything,

23  Judge.

24          THE COURT:  Okay.

25          MR. SCHROCK:  All right.

Page 88

1          THE COURT:  All right.  Very well.  Thank you.

2          MR. SCHROCK:  Thank you.

3      (Whereupon, these proceedings concluded at 3:58 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              I N D E X

2

3                              RULINGS

4                                                              Page

5    Motion to Approve : Debtors Motion for an Order (I)

6    Approving Disclosure Statement; (II) Establishing

7    Notice and Objection Procedures for Confirmation of

8    the Plan; (III) Approving Solicitation Packages and

9    Procedures for Distribution Thereof; (IV) Approving

10   the Forms of Ballots and Establishing Procedures for

11   Voting on the Plan; and (V) Granting Related Relief

12   (related document(s)3276, 3275                           85

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 90

1                    C E R T I F I C A T I O N

2

3        I, Sherri Lynn Breach, certify that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sherri L

     Breach

7    _____

8    Sherri L. Breach

9    AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11

12

13   Date:  May 31, 2019

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501