AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner

*Counsel to the Official Committee of Unsecured
Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

-------------------------------------------------------------x

**SECOND INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
<u>PERIOD OF MARCH 1, 2019 THROUGH AND INCLUDING JUNE 30, 2019</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

| General Information | |
|---|---|
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors |
| Petition Date: | October 15, 2018 |
| Retention Date: | December 10, 2018, *nunc pro tunc* to October 24, 2018 |
| Prior Applications: | 1 |

| Summary of Fees and Expenses Sought in this Application | |
|---|---|
| Time Period Covered by this Application: | March 1, 2019 through and including June 30, 2019 (the "Compensation Period") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $5,741,021.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $817,560.08 |
| Total Compensation and Expenses Requested for the Compensation Period: | $6,558,581.58 |

| Summary of Fees and Expenses Allowed Pursuant to Prior Applications | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $20,309,841.00 |
| Total Expenses Approved by Interim Order to Date: | $1,325,684.75 |
| Total Compensation and Expenses Approved by Interim Order to Date: | $21,635,525.80 |
| Total Allowed Compensation Paid to Date: | $20,309,841.00 |
| Total Allowed Expenses Paid to Date: | $1,325,684.75 |
| Total Allowed Compensation and Expenses Paid to Date: | $21,635,525.80 |

| *Summary of Fees, Professionals, Rates and Budget in this Application* | |
|---|---|
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees): | $1,900,158.00[2] |
| Expenses Sought in this Application Already Paid Pursuant to the Compensation Order But Not Yet Allowed (100% of Expenses): | $693,577.56[3] |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $2,593,735.56 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $3,964,846.02 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $428,757.33[4] |

| *Summary of Fees and Expenses Sought in this Application* | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $841.75 |
| Blended Rate in this Application for All Timekeepers: | $821.38 |
| Number of Timekeepers Included in this Application: | 46 (39 attorneys; 7 paraprofessionals and other non-legal staff) |

---

[2] Akin Gump has received $811,521.20 (80% of $1,014,401.50) as compensation for services rendered during the period of March 1, 2019 through March 30, 2019, as requested in the Sixth Monthly Fee Statement (as defined below) and $1,088,636.80 (80% of $1,360,796.00) as compensation for services rendered during the period of April 1, 2019 through April 30, 2019, as requested in the Seventh Monthly Fee Statement (as defined below).

[3] Akin Gump has received $274,293.00 for reimbursement of actual and necessary expenses during the period of March 1, 2019 through March 30, 2019, as requested in the Sixth Monthly Fee Statement and $419,284.56 for reimbursement of actual and necessary expenses during the period of April 1, 2019 through April 30, 2019, as requested in the Seventh Monthly Fee Statement.

[4] Akin Gump voluntarily reduced its fees and expenses by the following amounts: (i) $403,748.50 for fee reductions applied prior to the filing of the applicable Monthly Fee Statement (as defined herein) and (ii) $25,008.83 for expense reductions applied prior to the filing of the applicable Monthly Fee Statement.  Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 13 |
|---|---|
| Increase in Rates Since Date of Retention: | $1^5$ |
| Interim or Final Application: | Interim |

---

[5] Akin Gump increased its rates on January 1, 2019, consistent with its customary practice and as disclosed in the Akin Retention Application (as defined herein).

## SUMMARY OF MONTHLY FEE STATEMENTS

| DATE FILED | ECF NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|
| 06/03/19 | 4112 | 03/01/19 - 03/31/19 | $811,521.20 (80% of $1,014,401.50) | $274,293.00 | $811,521.20 | $274,293.00 |
| 07/02/19 | 4411 | 04/01/19 – 04/30/19 | $1,088,636.80 (80% of 1,360,796.00) | $419,284.56 | $1,088,636.80 | $419,284.56 |
| 07/30/19 | 4641 | 05/01/19 – 05/31/19 | $1,634,706.40 (80% of 2,043,383.00) | $93,342.50 | $0.00 | $0.00 |
| 08/14/19 | 4843 | 06/01/19 – 06/30/19 | $1,057,952.80 (80% of 1,322,441.00) | $30,640.02 | $0.00 | $0.00 |

Summary of Any Objections to Monthly Fee Statements:  None

Compensation and Expenses Sought in This Application Not Yet Paid:  $3,964,846.02

## COMPENSATION BY PROFESSIONAL
## <u>MARCH 1, 2019 THROUGH AND INCLUDING JUNE 30, 2019</u>

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Dizengoff, Ira S. | Partner | Financial Restructuring | 1993 | $1,550.00 | 198.00 | $306,900.00 |
| Dublin, Philip C. | Partner | Financial Restructuring | 1999 | $1,475.00 | 304.70 | $449,432.50 |
| Jacobson, Howard | Partner | Tax | 1979 | $1,120.00 | 52.40 | $58,688.00 |
| Lawrence, Lacy M. | Partner | Litigation | 2006 | $1,020.00 | 63.40 | $64,668.00 |
| Leyden, Lauren H. | Partner | Labor | 2006 | $1,200.00 | 5.10 | $6,120.00 |
| Miller, Allison P. | Partner | Corporate | 2003 | $1,250.00 | 56.70 | $70,875.00 |
| Phelps, David S. | Partner | Real Estate | 1987 | $1,160.00 | 12.70 | $14,732.00 |
| Qureshi, Abid | Partner | Financial Restructuring | 1995 | $1,475.00 | 66.80 | $98,530.00 |
| Sorkin, Joseph L. | Partner | Litigation | 2008 | $1,120.00 | 234.20 | $262,304.00 |
| Vondle, David C. | Partner | Intellectual Property | 2002 | $1,020.00 | 9.50 | $9,690.00 |
| Brauner, Sara L. | Counsel | Financial Restructuring | 2011 | $1,125.00 | 852.80 | $959,400.00 |
| Chapman, Dean L. | Counsel | Litigation | 2009 | $980.00 | 442.80 | $433,944.00 |
| Demander, Kathryn G. | Counsel | Litigation | 2013 | $805.00 | 62.40 | $50,232.00 |
| Fey, Hilary D. | Counsel | Real Estate | 1997 | $825.00 | 5.50 | $4,537.50 |
| Field, Eric | Counsel | Labor | 1998 | $1,170.00 | 14.70 | $17,199.00 |
| Koo, Angeline K. | Counsel | Litigation | 2005 | $940.00 | 28.80 | $27,072.00 |
| Locke, Adam T. | Counsel | Litigation | 2012 | $915.00 | 8.00 | $7,320.00 |
| Matheson, Clayton | Counsel | Intellectual Property | 2010 | $885.00 | 29.60 | $26,196.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Morris, Brandon T. | Counsel | Tax | 2009 | $1,040.00 | 6.10 | $6,344.00 |
| Peckham, Heather L. | Counsel | Litigation | 2000 | $905.00 | 96.30 | $87,151.50 |
| Tizravesh, Roxanne | Counsel | Litigation | 2009 | $905.00 | 175.20 | $158,556.00 |
| Aminian, Sarah | Associate | Corporate | 2018 | $540.00 | 5.30 | $2,862.00 |
| Brewer, Erin M. | Associate | Litigation | 2018 | $510.00 | 8.90 | $4,539.00 |
| Chen, Michael | Associate | Litigation | 2019 | $540.00 | 131.70 | $71,118.00 |
| Farovitch, Aaron S. | Associate | Tax | 2017 | $690.00 | 4.70 | $3,243.00 |
| Figueroa-Santana, Bianca | Associate | Litigation | 2018 | $690.00 | 7.10 | $4,899.00 |
| Glackin, Patrick J. | Associate | Litigation | 2019 | $540.00 | 319.20 | $172,368.00 |
| Hiner, Chance | Associate | Financial Restructuring | 2017 | $660.00 | 9.10 | $6,006.00 |
| Holland, Erica E. | Associate | Litigation | 2016 | $770.00 | 41.30 | $31,801.00 |
| Kane, John P. | Associate | Litigation | 2016 | $770.00 | 509.10 | $392,007.00 |
| Kulikowski, Jillian R. | Associate | Litigation | 2019 | $540.00 | 359.80 | $194,292.00 |
| Lanier, Zachary D. | Associate | Financial Restructuring | 2017 | $760.00 | 763.50 | $580,260.00 |
| Latov, Jeffrey A. | Associate | Litigation | 2017 | $760.00 | 394.80 | $300,048.00 |
| Mahkamova, Shirin | Associate | Financial Restructuring | 2019 | $560.00 | 371.70 | $208,152.00 |
| Miller, Katlyne | Associate | Litigation | 2018 | $510.00 | 21.70 | $11,067.00 |
| Park, Daniel S. | Associate | Litigation | 2011 | $690.00 | 34.70 | $23,943.00 |
| Parlar, Erin | Associate | Litigation | 2015 | $815.00 | 75.90 | $61,858.50 |
| Szydlo, Joseph E. | Associate | Financial Restructuring | 2019 | $560.00 | 488.00 | $273,280.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Collins, Russell J. | Staff Attorney | Practice Attorney | 1998 | $455.00 | 470.60 | $214,123.00 |
| Blair, Laurel Diane | Legal Assistant | Litigation | N/A | $355.00 | 5.00 | $1,775.00 |
| Ejoh, Kareen C. | Legal Assistant | Litigation | N/A | $270.00 | 10.10 | $2,727.00 |
| Ginsborg, Michael | Specialist | Research | N/A | $265.00 | 11.30 | $2,994.50 |
| Krasa-Berstell, Dagmara | Legal Assistant | Financial Restructuring | N/A | $395.00 | 25.90 | $10,230.50 |
| Levy, Sophia D. | Legal Assistant | Financial Restructuring | N/A | $235.00 | 118.40 | $27,824.00 |
| Southwell, Tracy | Legal Assistant | Financial Restructuring | N/A | $395.00 | 17.10 | $6,754.50 |
| Robertson, Emony | Legal Assistant | Litigation | N/A | $220.00 | 58.90 | $12,958.00 |

## TOTAL FEES FOR THE COMPENSATION PERIOD

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,337.26 | 1,003.50 | $1,341,939.50 |
| Senior Counsel / Counsel | $1,032.37 | 1,722.20 | $1,777,952.00 |
| Associates | $636.25 | 4,017.10 | $2,555,866.50 |
| Paraprofessionals and Other Non-Legal Staff | $264.55 | 246.70 | $65,263.50 |
| **Blended Attorney Rate** | **$841.75** | | |
| **Blended Rate for All Timekeepers** | **$821.38** | | |
| **Total Fees Incurred** | | **6,989.50** | **$5,741,021.50** |

## COMPENSATION BY PROJECT CATEGORY
### MARCH 1, 2019 THROUGH AND INCLUDING JUNE 30, 2019

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 2 | Case Administration | 58.50 | $31,627.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 423.90 | $276,485.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 47.30 | $38,237.50 |
| 5 | Review/Preparation of Schedules, Statements | 0.00 | $0.00 |
| 6 | Retention of Professionals | 10.70 | $10,610.50 |
| 7 | Creditors Committee Matters/Meetings (including 341 Meetings) | 102.70 | $105,928.50 |
| 8 | Hearings and Court Matters/Court Preparation | 182.80 | $153,086.00 |
| 9 | Financial Reports and Analysis | 4.10 | $3,831.00 |
| 10 | DIP, Cash Collateral Usage, Adequate Protection and Exit Financing | 20.80 | $21,258.50 |
| 11 | Executory Contract/Lease Issues | 7.10 | $7,736.00 |
| 12 | General Claims Analysis/Claims Objections | 231.10 | $200,239.00 |
| 13 | Analysis of Pre-Petition Transactions | 2,305.20 | $1,596,754.00 |
| 14 | Insurance Issues | 33.10 | $29,726.00 |
| 15 | Secured Creditors Issues/Communications/Meetings | 484.90 | $406,805.50 |
| 16 | Automatic Stay Issues | 214.90 | $196,110.00 |
| 17 | General Litigation Matters/Adversary Proceedings | 29.00 | $20,566.00 |
| 18 | Tax Issues | 46.60 | $48,951.50 |
| 19 | Labor Issues/Employee Benefits | 56.20 | $58,570.00 |
| 21 | Exclusivity | 35.90 | $29,932.50 |

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 2,260.80 | $2,091,731.00 |
| 23 | Asset Dispositions/363 Asset Sales | 388.80 | $363,294.50 |
| 24 | Real Estate Issues | 18.70 | $19,832.00 |
| 25 | Travel Time | 24.50 | $26,976.50 |
| 26 | Securities Law Issues | 0.00 | $0.00 |
| 27 | Environmental | 0.00 | $0.00 |
| 28 | General Corporate Matters | 0.00 | $0.00 |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | 1.90 | $2,732.50 |
| 30 | Customer, Supplier and Vendor Issues (including Critical Vendors) | 0.00 | $0.00 |
| 31 | Business Operations | 0.00 | $0.00 |
| **Total** | | **6,989.50** | **$5,741,021.50** |

## EXPENSE SUMMARY
### MARCH 1, 2019 THROUGH AND INCLUDING JUNE 30, 2019

| Disbursement Activity | Amount |
|---|---|
| Computerized Legal Research - Lexis - in contract 30% discount | $12,280.96 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $47,026.09 |
| Computerized Legal Research - Courtlink- in contract 50% discount | $794.57 |
| Document Retrieval | $4,173.10 |
| Court Cost | $25.10 |
| Professional Fees - Consultant Fees | $74,491.44 |
| Courier Service/Messenger Service - Off Site | $63.61 |
| Duplication - In House | $4,887.80 |
| Duplication - Off Site | $552.21 |
| Color Copy | $2,380.00 |
| Meals - Overtime | $622.03 |
| Meals - Business | $176.28 |
| Meals (100%) | $10,724.72 |
| Office Supplies - Binding | $19,730.33 |
| Office Supplies | $102.34 |
| Overtime - Admin Staff | $350.30 |
| Professional Fees - Appraisal Fees | $366,959.00 |
| Professional Fees - Legal | $147,598.74 |
| Professional Fees - Misc. | $79,121.87 |
| Research | $50.00 |
| Telephone - Long Distance | $419.00 |

| Disbursement Activity | Amount |
|---|---|
| Deposition | $13,106.55 |
| Transcripts | $18,950.55 |
| Travel - Airfare | $2,998.42 |
| Travel - Ground Transportation | $3,164.90 |
| Travel - Lodging (Hotel, Apt, Other) | $1,485.66 |
| Travel - Telephone & Fax | $530.43 |
| Local Transportation - Overtime | $4,794.08 |
| **Total** | **$817,560.08** |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner

*Counsel to the Official Committee of Unsecured
Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re:                                                     :        Chapter 11
                                                           :
SEARS HOLDINGS CORPORATION, et al.,      :        Case No. 18-23538 (RDD)
                                                           :
                                                           :        (Jointly Administered)
                          Debtors.[1]                      :
----------------------------------------------------------------x

**SECOND INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD OF MARCH 1, 2019 THROUGH AND INCLUDING JUNE 30, 2019**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official

Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation

and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby submits

its second application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the

United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of

compensation for services rendered to the Creditors' Committee for the period of March 1, 2019

through and including June 30, 2019 (the "Compensation Period") and for reimbursement of

expenses incurred in connection therewith.  In support of this Application, Akin Gump submits

the declaration of Philip C. Dublin, a partner at Akin Gump, which is attached hereto as **Exhibit**

**A** and incorporated by reference into this Application.  In further support of this Application,

Akin Gump respectfully represents as follows.

## INTRODUCTION[2]

1.      By this Application, Akin Gump seeks (i) interim allowance of compensation for

the professional services rendered by Akin Gump during the Compensation Period in the amount

of $5,741,021.50, representing 6,742.80 hours of professional services and 246.70 hours of

paraprofessional and other non-legal services, and (ii) reimbursement of actual and necessary

expenses incurred by Akin Gump during the Compensation Period in the amount of $817,560.08.

2.      This Application has been prepared in accordance with the applicable provisions

of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order*

---

[2] Capitalized terms used but otherwise not defined herein shall have the meaning ascribed to such terms in the
*Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF
No. 4704] (as amended, supplemented or otherwise modified from time to time, the "Plan").

*Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 796] (the "Interim Compensation Order"), the *Order Authorizing Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 327* [ECF No. 3307] (the "Fee Examiner Order"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the "U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.       The Chair (as defined below) of the Creditors' Committee has been given the opportunity to review this Application and has approved the compensation and reimbursement of expenses requested herein.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.       Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.       The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

### A.       The Debtors' Chapter 11 Cases

7.       On October 15, 2018, and continuing thereafter, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a)

and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.    On October 24, 2018 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Creditors' Committee pursuant to Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of Unsecured Creditors* [ECF No. 276].  The Creditors' Committee currently comprises eight members.[3]  Simon Property Group, L.P. serves as chair of the Creditors' Committee (the "Chair").

9.    On January 3, 2019, the U.S. Trustee filed the *Motion of United States Trustee for Order Authorizing Appointment of Independent Fee Examiner* [ECF No. 1470].  On April 22, 2019, this Court entered the Fee Examiner Order.  On the same day, Paul E. Harner was appointed as fee examiner in the Chapter 11 Cases (the "Fee Examiner").  The Fee Examiner has retained Ballard Spahr LLP as legal counsel.

**B.    Retention of Akin Gump**

10.    On the Formation Date, the Creditors' Committee selected Akin Gump as its legal counsel.  On November 28, 2018, the Creditors' Committee filed its application to retain and employ Akin Gump as counsel to the Creditors' Committee [ECF No. 923] (the "Akin Retention Application"), which application was authorized by an order of this Court dated December 10, 2018 [ECF No. 1107] (the "Akin Retention Order").[4]

---

[3] The following entities currently comprise the Creditors' Committee:  (i) Apex Tool Group, LLC; (ii) The Bank of New York Mellon Trust Company, N.A. as Indenture Trustee; (iii) Brixmor Operating Partnership, L.P.; (iv) Computershare Trust Company, N.A.; (v) Oswaldo Cruz; (vi) Pension Benefit Guaranty Corporation ("PBGC"); (vii) Simon Property Group, L.P.; and (viii) Winiadaewoo Electronics America, Inc.

[4] The Creditors' Committee selected FTI Consulting, Inc. ("FTI") to serve as its financial advisor and Houlihan Lokey Capital, Inc. ("Houlihan") to serve as its investment banker on October 25, 2018 and October 29, 2018, respectively.  The orders authorizing the retention of FTI [ECF No. 1325] and Houlihan [ECF No. 1326] were entered on December 19, 2018.

11.     The Akin Retention Order authorizes the Creditors' Committee to retain and employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's normal hourly rates and disbursement policies, *nunc pro tunc* to October 24, 2018, all as contemplated by the Akin Retention Application.  Specifically, the Akin Retention Order authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

**C.    Prior Fee Applications and Fee Statements Filed During the Compensation Period**

12.     On April 15, 2019, Akin Gump filed and served the *First Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of October 24, 2018 Through and Including February 28, 2019* [ECF No. 3190] (the "First Interim Fee Application").  Pursuant to the First Interim Fee Application, Akin Gump requested interim allowance of fees in the amount of $20,309,841.00 and reimbursement of expenses in the amount of $1,325,684.75 for the period from October 24, 2018 through and including February 28, 2019.  There were no objections to the First Interim Fee Application and, on July 1, 2019, the Court entered an order approving the First Interim Fee Application [ECF No. 4409] (the "First Interim Fee Order").  Pursuant to the First Interim Fee Order, on July 9, 2019, Akin Gump received payment of $4,061,968.20 (representing the 20% of fees withheld from the payments made on account of the monthly fee statements subject to the First Interim Fee Application).[5]

---

[5] On February 12, 2019, Akin Gump filed and served the *First Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of October 24, 2018 Through October 31, 2018* [ECF No. 2567] in which Akin Gump requested payment of compensation for services rendered in the amount of $873,974.00 (80% of $1,092,467.50) and reimbursement for expenses in the amount of $8,488.36.  On March 11, 2019, Akin Gump filed and served the *Second Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services*

13.     On June 3, 2019, Akin Gump filed and served the *Sixth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of March 1, 2019 Through March 31, 2019* [ECF No. 4112] (the "Sixth Monthly Fee Statement"),[6] pursuant to which Akin Gump sought payment of (i) $811,521.20 (80% of $1,014,401.50) as compensation for professional services rendered and (ii) $274,293.00 for reimbursement of expenses.  Akin Gump did not receive any objections to the Sixth Monthly Fee Statement and received payment in respect thereof on June 24, 2019.

14.     On July 2, 2019, Akin Gump filed and served the *Seventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of April 1, 2019 Through April 30, 2019* [ECF No. 4411] (the "Seventh Monthly Fee Statement"),[7] pursuant

---

*Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of November 1, 2018 Through November 30, 2018* [ECF No. 2794], in which Akin Gump requested payment of compensation for services rendered in the amount of $4,062,269.60 (80% of $5,077,837.00) and reimbursement of expenses in the amount of $94,516.91.  On March 26, 2019, Akin Gump filed and served the *Third Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of December 1, 2018 Through December 31, 2018* [ECF No. 2958], in which Akin Gump requested payment of compensation for services rendered in the amount of $3,460,633.60 (80% of $4,325,792.00) and reimbursement for expenses in the amount of $198,291.83.  On April 5, 2019, Akin Gump filed and served the *Fourth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of January 1, 2019 Through January 31, 2019* [ECF No. 3063], in which Akin Gump requested payment of compensation for services rendered in the amount of $5,749,269.60 (80% of $7,186,587.00) and reimbursement of expenses in the amount of $308,404.81.  On April 10, 2019, Akin Gump filed and served the *Fifth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of February 1, 2019 Through February 28, 2019* [ECF No. 3118], in which Akin Gump requested payment of compensation for services rendered in the amount of $2,101,726.00 (80% of $2,627,157.50) and reimbursement for expenses in the amount of $715,982.84.  Akin Gump received payment in respect of each of the foregoing fee statements.

[6] A copy of the Sixth Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MTgxOTk2&id2=0.

[7] A copy of the Seventh Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MTg0NTAz&id2=0.

to which Akin Gump sought payment of (i) $1,088,636.80 (80% of $1,360,796.00) as compensation for professional services rendered and (ii) $419,284.56 for reimbursement of expenses.  Akin Gump did not receive any objections to the Seventh Monthly Fee Statement and received payment in respect thereof on August 1, 2019.

15.    On July 30, 2019, Akin Gump filed and served the *Eighth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of May 1, 2019 Through May 31, 2019* [ECF No. 4641] (the "Eighth Monthly Fee Statement")[8], pursuant to which Akin Gump sought payment of (i) $1,634,706.40 (80% of $2,043,383.00) as compensation for professional services rendered and (ii) $93,342.50 for reimbursement of expenses.  As of the date of this Application, Akin Gump has not received any objections to the Eighth Monthly Fee Statement.

16.    On August 14, 2019, Akin Gump filed and served the *Ninth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of June 1, 2019 Through June 30, 2019* [ECF No. 4843] (the "Ninth Monthly Fee Statement"[9] and, together with the Sixth Monthly Fee Statement, the Seventh Monthly Fee Statement and the Eighth Monthly Fee Statement, the "Monthly Fee Statements"), pursuant to which Akin Gump sought payment of (i) 1,057,952.80 (80% of $1,322,441.00) as compensation for professional services rendered and (ii) $30,640.02 for reimbursement of expenses.

---

[8] A copy of the Eighth Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MjAyNDU2&id2=0.

[9] A copy of the Ninth Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MjE0NDQz&id2=0

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

17.     By this Application, Akin Gump requests allowance of interim compensation for professional services rendered to the Creditors' Committee during the Compensation Period in the amount of $5,741,021.50 and expense reimbursements of $817,560.08.[10]  During the Compensation Period, Akin Gump attorneys and paraprofessionals expended a total of 6,989.50 hours for which compensation is sought.

18.     The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance with Akin Gump's existing billing rates and procedures in effect during the Compensation Period.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

19.     Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with its representation of the Creditors' Committee in the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services

---

[10] Akin Gump voluntarily reduced its fees and expenses by the following amounts: (i) $403,748.50 for fee reductions applied prior to the filing of the applicable Monthly Fee Statement and (ii) $25,008.83 for expense reductions applied prior to the filing of the applicable Monthly Fee Statement.  Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

8

for the Creditors' Committee during the Compensation Period have been filed and served in the

Monthly Fee Statements in accordance with the Interim Compensation Order.

20.    Akin Gump also maintains records of all actual and necessary out-of-pocket

expenses incurred in connection with the rendition of its professional services.  A summary of

the categories of expenses and amounts for which reimbursement is requested by this

Application is attached hereto as **Exhibit E**.

21.    Akin Gump's staffing plan for the Compensation Period is attached hereto as

**Exhibit F**.

### SUMMARY OF SERVICES PERFORMED BY
### AKIN GUMP DURING THE COMPENSATION PERIOD

22.    The services provided by Akin Gump during the Compensation Period were

actual and necessary for the administration of the Chapter 11 Cases, performed at the request of

the Creditors' Committee and commensurate with the complexity and significance of this matter.

The variety and complexity of the issues in the Chapter 11 Cases and the need to act or respond

to such issues on an expedited basis during the Compensation Period required the expenditure of

significant time by Akin Gump professionals and paraprofessionals from numerous legal

disciplines.

23.    The following is a summary of the professional services rendered by Akin Gump

during the Compensation Period.  This summary is organized in accordance with Akin Gump's

internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee

Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services

performed in the category that most closely related to the services provided.  The below does not

include summaries for certain task codes for which a *de minimis* amount of time was billed

during the Compensation Period.

24.     Moreover, the following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed.  Rather, it merely is an attempt to highlight certain of those areas in which services were rendered to the Creditors' Committee, as well as to identify certain of the matters and issues that Akin Gump was required to address during the Compensation Period.

**A.     General Case Administration (Task Code 2)**

| Total Hours | Fees |
|:---:|:---:|
| 58.50 | $31,627.50 |

25.     This category includes time spent by Akin Gump professionals and paraprofessionals performing various administrative services in order to represent the Creditors' Committee effectively and efficiently, including, among other things: (i) reviewing background materials; (ii) reviewing and analyzing pleadings filed by the Debtors and third parties; (iii) reviewing and apprising Akin Gump attorneys and paraprofessionals of recently filed pleadings and upcoming deadlines; (iv) preparing internal task lists; and (v) communicating with the members of the Creditors' Committee, the Debtors' advisors and other parties in interest regarding general case administration and related matters.

26.     During the Compensation Period, Akin Gump was in close contact with counsel to the Debtors and other relevant parties in interest on a regular basis to discuss the timing for filing various motions and applications and the type of information the Creditors' Committee would require to analyze each motion or application properly.  Akin Gump also consulted regularly with FTI and Houlihan with respect to documents and other information received from the Debtors, their representatives and other parties in interest.  Akin Gump professionals and paraprofessionals also monitored the docket for the Chapter 11 Cases to remain apprised of critical matters.  For each significant pleading filed, Akin Gump professionals and

paraprofessionals worked to ensure that the appropriate parties were notified of its contents,

relevant response deadlines, hearing dates and any other critical matters related thereto.

Moreover, in connection with motions and applications filed by the Debtors and other parties in

interest in the Chapter 11 Cases, Akin Gump analyzed and conducted diligence with respect to

the subject matter of the motion or application to, among other things, ascertain the effect the

relief requested would have on the Debtors, their business and the administration of the Chapter

11 Cases.  Akin Gump's analysis and diligence efforts included reviewing underlying

documentation and/or litigation related to the applicable motion or application, meeting with or

holding conference calls with representatives of the Debtors and/or third parties to attempt to

achieve amicable resolutions of the issues involved and working with the Creditors' Committee's

other advisors to ensure that the Creditors' Committee had a complete understanding of the

effect the granting of the relief requested would have on the Debtors' estates and creditors.  Due

to Akin Gump's experience counseling official committees of unsecured creditors, Akin Gump

believes it was able to address all issues relating to case administration that have arisen during

the pendency of the Chapter 11 Cases in an effective and efficient manner.

**B.    Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
|---|---|
| 423.90 | $276,485.00 |

27.    This category includes time spent by Akin Gump professionals and

paraprofessionals preparing and drafting the Monthly Fee Statements and the First Interim Fee

Application.  Pursuant to the Interim Compensation Order, each of the First Interim Fee

Application and the Monthly Fee Statements contained a list of individuals who rendered

services to the Creditors' Committee during the relevant compensation period, information as to

each individual's title, billing rate and hours worked and a comprehensive breakdown of the fees

incurred and disbursements expended.  To minimize costs in connection with this time-intensive

process, Akin Gump relied on paraprofessionals to prepare the initial drafts of the First Interim

Fee Application and Monthly Fee Statements, thereby limiting the time spent by attorneys on the

review of fees, where reasonably practicable.

**C.      Analysis of Other Professionals Fee Applications/Reports (Task Code 4)**

| Total Hours | Fees |
|---|---|
| 47.30 | $38,237.50 |

28.      This category includes time spent by Akin Gump professionals and

paraprofessionals reviewing monthly fee statements submitted to the Court by other estate

retained professionals.  Akin Gump reviewed such fee statements to ensure that professionals

operated in accordance with their individual mandates and charged reasonable fees in connection

therewith.  This category also includes time spent assisting the Creditors' Committee's other

professionals in finalizing, filing and serving their respective fee statements and fee applications.

29.      In addition, during the Compensation Period, Wilmington Trust, National

Association ("Wilmington Trust") filed the *Objection to Payment of the Fee Statement of

Houlihan Lokey Capital, Inc. for Compensation for Services Rendered and Reimbursement of

Expenses Incurred as Investment Banker for the Official Committee of Unsecured Creditors for

the Period from February 1, 2019 Through February 28, 2019* [ECF No. 3310] (the "Houlihan

Fee Objection").  In response to the Houlihan Fee Objection, Akin Gump, on behalf of the

Creditors' Committee, and in conjunction with the Debtors, prepared a letter response to

Wilmington Trust disputing its assertions that the payment of Houlihan's fees were unauthorized

[ECF No. 3409].  Ultimately, Wilmington Trust did not pursue its objection.

**D.    Retention of Professionals (Task Code 6)**

| Total Hours | Fees |
|:---:|:---:|
| 10.70 | $10,610.50 |

30.    This category includes time spent by Akin Gump professionals and paraprofessionals with respect to various professional retention matters including, among other things: (i) assisting Houlihan with drafting and, on April 4, 2019, filing the *Supplemental Declaration of Saul Burian in Support of the Application of Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Retention of Houlihan Lokey Capital, Inc. as Investment Banker to the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 328 and 1103 Nunc Pro Tunc to October 29, 2018* [ECF No. 3047] and, on June 13, 2019, the *Supplemental Declaration of Saul Burian in Support of the Application of Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Retention of Houlihan Lokey Capital, Inc. as Investment Banker to the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 328 and 1103 Nunc Pro Tunc to October 29, 2018* [ECF No. 4217], both of which were filed in further support of Houlihan's retention as investment banker to the Creditors' Committee; (ii) assisting RERC, LLC with drafting and, on April 2, 2019, filing the *Declaration of Susan E. Bow as Representative of Commercial Real Estate Appraisal and Valuation Advisor to the Official Committee of Unsecured Creditors* [ECF No. 3022] in support of its engagement as commercial real estate appraisal and valuation advisor to the Creditors' Committee; and (iii) reviewing and analyzing contingency fee proposals submitted to the Debtors by advisors seeking to be retained to pursue avoidance actions under Bankruptcy Code section 547 and other comparable "preference" actions under applicable nonbankruptcy law (the "Preference Proposals" and such firms, the "Preference Firms").  After analyzing the Preference Proposals, Akin Gump provided the Creditors' Committee with summaries of the key terms of each

Preference Proposal, made relevant recommendations to the Creditors' Committee and engaged

with the Debtors' advisors and the Preference Firms to discuss the Preference Proposals.  The

Debtors, in consultation with the Creditors' Committee, selected ASK LLP [ECF No. 4136] and

Katten Muchin Rosenman LLP [ECF No. 4138] as special avoidance action counsel, and

Acumen Recovery Services, LLC as preference action recovery advisor [ECF No. 4137], each of

which was formally retained on June 26, 2019 pursuant to orders of the Court [ECF Nos. 4373,

4374 and 4362].

**E.    Creditor Committee Matters/Meetings (Task Code 7)**

| Total Hours | Fees |
|:---:|:---:|
| 102.70 | $105,928.50 |

31.    This category includes time spent by Akin Gump professionals and

paraprofessionals: (i) preparing for and participating in meetings and conference calls with the

Creditors' Committee as a whole and with individual members of the Creditors' Committee; (ii)

participating in update calls among the professionals to the Creditors' Committee regarding

pending matters and strategy; (iii) responding to numerous inquiries from individual unsecured

creditors; and (iv) attending to other general Creditors' Committee matters.

32.    The Creditors' Committee played a very active role in the Chapter 11 Cases

during the Compensation Period and Akin Gump, together with the Creditors' Committee's other

professionals, held no fewer than 13 telephonic meetings with the full Creditors' Committee

during the Compensation Period in addition to numerous telephonic conferences with individual

Creditors' Committee members on various topics.  Prior to each scheduled meeting with the

Creditors' Committee, Akin Gump attorneys reviewed and analyzed pending matters,

coordinated with the Creditors' Committee's other advisors and prepared an agenda addressing

issues requiring the Creditors' Committee's attention.  In addition, Akin Gump prepared, and/or

assisted FTI and Houlihan in preparing, detailed memoranda and presentations for the Creditors'
Committee addressing pertinent matters in the Chapter 11 Cases. During these meetings, Akin
Gump assisted the Creditors' Committee in formulating positions with respect to significant
matters.

33.    Through meetings, conference calls and correspondence, Akin Gump assisted the
Creditors' Committee in fulfilling its statutory duties to make informed decisions regarding the
various issues that have arisen in the Chapter 11 Cases, monitor closely the Debtors'
management of their business and the Chapter 11 Cases and reach independent conclusions on
the merits of specific matters. Akin Gump professionals and paraprofessionals devoted a
significant number of hours to this category during the Compensation Period in order to provide
information relating to the Chapter 11 Cases to the Creditors' Committee and ensure that the
Creditors' Committee was prepared to make informed decisions with respect to significant case
issues. Although the tasks in this category do not necessarily relate to specific legal issues, they
nevertheless were essential because they facilitated Akin Gump's management of the Chapter 11
Cases and supported Akin Gump's performance of other substantive tasks.

**F.    Court Hearings (Task Code 8)**

| Total Hours | Fees |
|:---:|:---:|
| 182.80 | $153,086.00 |

34.    This category includes time spent by Akin Gump professionals and
paraprofessionals in connection with Court hearings and Chambers conferences held during the
Compensation Period. During the Compensation Period, Akin Gump participated in nine
hearings and numerous Chambers conferences. In preparing for hearings and conferences, Akin
Gump professionals, together with the Creditors' Committee's other advisors, reviewed and
analyzed all issues, applicable motions and applications filed with the Court, including any

objections and responses thereto, discussed with the Debtors' advisors and other relevant parties

the relief requested and, as necessary, asserted the Creditors' Committee's position at such

hearings and conferences.  In addition, following each hearing or conference, Akin Gump

provided the Creditors' Committee with updates and analyses of the results thereof, either in

written form or during the following Creditors' Committee call.

**G.      DIP, Cash Collateral Usage and Exit Financing (Task Code 10)**

| Total Hours | Fees |
| --- | --- |
| 20.80 | $21,258.50 |

35.      This category includes time spent by Akin Gump professionals and

paraprofessionals in connection with the Debtors' use of cash collateral.  On April 4, 2019,

Wilmington Trust filed a motion to prohibit or condition the Debtors' continued use of cash

collateral [ECF No. 3050] (the "Cash Collateral Motion"), which motion was joined by ESL

Investments, Inc. ("ESL") [ECF No. 3134] and Cyrus Capital Partners, L.P. ("Cyrus") [ECF No.

3142] in their respective capacities as holders of Second Lien Debt (collectively, the Second

Lien Parties").  By the Cash Collateral Motion, Wilmington Trust argued that, pursuant to the

Court's orders approving the Debtors' postpetition financing facilities and the use of cash

collateral, the Debtors' use of cash collateral was (i) conditioned upon approval of a 13-week,

postpetition budget and (ii) subject to the Debtors' ability to provide Wilmington Trust with

adequate protection of its interest in the collateral.  Accordingly, Wilmington Trust requested

that the Court enter an order (x) requiring the Debtors to segregate and account for cash

collateral and (y) prohibiting the Debtors from using cash collateral unless and until the Debtors

and Wilmington Trust were able reach an agreement on a new budget and adequate protection.

On April 15, 2019, the Debtors filed an objection to the Cash Collateral Motion [ECF No. 3198]

(the "Cash Collateral Objection").

36.    Prior to and following the filing of the Cash Collateral Objection, Akin Gump worked closely with the Debtors to evaluate the relief sought by Wilmington Trust and joined by ESL and Cyrus.  After analyzing the relevant documents and conducting legal research on the issues implicated by the requested relief, on April 15, 2019, Akin Gump, on behalf of the Creditors' Committee, filed and served the *Joinder of the Official Committee of Unsecured Creditors to Debtors' Objection to Motion of Wilmington Trust, National Association, as Indenture Trustee and Collateral Agent, to Prohibit or Condition Debtors' Continued Use of Collateral, Including Cash Collateral* [ECF No. 3210] (the "Cash Collateral Objection Joinder"). By the Cash Collateral Objection Joinder, the Creditors' Committee expressed its support for the arguments set forth in the Cash Collateral Objection and requested that the Court deny the relief requested by the Cash Collateral Motion and related joinders.  At the hearing on April 18, 2019, the Cash Collateral Motion was adjourned *sine die*.  Ultimately, on June 19, 2019, the Court entered a stipulation among the parties [ECF No. 4287] that, among other things, further adjourned the Cash Collateral Motion pending a determination by the Court with respect to the value of any adequate protection liens and/or claims in favor of the Second Lien Parties

## H.    General Claims Analysis/Claims Objections (Task Code 12)

| Total Hours | Fees |
|:---:|:---:|
| 231.10 | $200,239.00 |

37.    This category includes time spent by Akin Gump professionals and paraprofessionals reviewing and analyzing claims and potential claims against the Debtors' estates.  During the Compensation Period, Akin Gump, together with FTI and Houlihan, worked closely with the Debtors' advisors to understand the projected size of the unsecured claims pool and the specific Debtor entities liable for such claims.  In connection with these efforts, Akin Gump (i) provided the Creditors' Committee with updates regarding claims pool estimates and

issues related thereto and (ii) performed legal analyses with respect to the bases for various

claims, including those asserted by PBGC, certain plaintiffs involved in the insolvency

proceedings of Sears Canada Inc. ("Sears Canada") and other parties in interest.

38.     In addition, during the Compensation Period, certain vendors (the "Vendors")

filed motions asserting entitlement to administrative expense claims under Bankruptcy Code

sections 503(b)(1) and 503(b)(9) and seeking payment thereon.[11]   Akin Gump conferred with the

Debtors' advisors on the proper response to such motions and conducted research in connection

therewith.  On May 15, 2019, the Debtors filed the *Debtors' Omnibus Objection to Vendors'*

*Motions for Allowance and Payment of Administrative Expense Claims* [ECF No. 3883] (the

"Vendor Claims Objection") and, on May 20, 2019, Akin Gump, on behalf of the Creditors'

Committee, filed a joinder thereto  [ECF No. 3942] (the "Joinder to Vendor Claims Objection").

By the Vendor Claims Objection, the Debtors argued, among other things, that: (i) the Vendors

had not met their burden of establishing their entitlement to administrative claims under

Bankruptcy Code section 503(b)(1); (ii) if the Court were to grant such priority status to the

Vendors' claims, it would be inappropriate to require the Debtors to satisfy such claims prior to

completion of the Debtors' claims reconciliation process; and (iii) immediate payment of the

Vendors' asserted claims under Bankruptcy Code 503(b)(9) was premature in light of, among

---

[11] *See Motion of Winners Industry Co., Ltd. for Allowance and Payment of Administrative Expense Claims* [ECF No. 1386]; *Motion of Milton Manufacturing, LLC to Allow and Compel Payment of Administrative Expense Claim Under 11 U.S.C. § 503(b) for Craftsman Branded Goods Delivered to the Debtor Postpetition* [ECF No. 1477]; *Motion of Apex Tool Group, LLC to Allow and Compel Immediate Payment of Administrative Expense Claim Pursuant to 11 U.S.C. 503(b)(1)(A) and 11 U.S.C. § 503(b)(9)* [ECF No. 1491]; *Motion of Mien Co. Ltd. to Allow and Compel Payment of Administrative Expense Claim Under 11 U.S.C. § 503(b) for Jaclyn Smith Branded and Private Label Goods Delivered to the Debtor Post-Petition* [ECF No. 3323]; *Motion by Pearl Global Industries Ltd. to Allow and Compel Payment of Administrative Expense Claim Under 11 U.S.C. § 503(b)(1)* [ECF No. 3604]; *Supplement to Motion of Apex Tool Group, LLC to Allow and Compel Immediate Payment of Administrative Expense Claim Pursuant to 11 U.S.C. 503(b)(1)(A) and 11 U.S.C. § 503(b)(9)* [ECF No. 3667]; and  *Motion by Gokaldas Exports Ltd. to Allow and Compel Payment of Administrative Expense Claims under 11 U.S.C. § 503(b)* [ECF No. 3670] (collectively, the "Vendor Motions").

other things, the procedures established by the Court for the reconciliation of such claims.  By

the Joinder to Vendor Claims Objection, the Creditors' Committee supported the Debtors'

position that (i) the Vendors' claims, which arose out of prepetition transactions with the

Debtors, were not entitled to administrative expense priority or insufficient evidence had been

provided supporting such entitlement and (ii) the Vendors were not entitled to immediate

payment on account of such claims, even if such claims were granted administrative expense

status.  During the hearing on May 21, 2019, the Court denied the Vendor Motions.

## I.    Analysis of Pre-Petition Transactions (Task Code 13)

| Total Hours | Fees |
|:---:|:---:|
| 2,305.20 | $1,596,754.00 |

39.     This category includes time spent by Akin Gump professionals and

paraprofessionals, in conjunction with the Creditors' Committee's other advisors, continuing the

Creditors' Committee's comprehensive investigation (the "Investigation") into the transactions

that preceded the commencement of the Chapter 11 Cases and claims arising therefrom, which

the Creditors' Committee expects will provide a valuable source of recovery for creditors.

40.     During the Compensation Period, the Investigation comprised, among other

things, the following efforts by Akin Gump professionals and paraprofessionals: (i) reviewing

the voluminous discovery produced in the Chapter 11 Cases in connection with the Debtors'

prepetition transactions and engaging in other fact discovery; (ii) conducting extensive legal

research and analysis in connection with potential claims arising from the Debtors' prepetition

transactions, including analysis of the impact of the release provision (the "Release") contained

in the Asset Purchase Agreement, which released certain claims and causes of action arising from

prepetition conduct in order to facilitate ESL's credit bid; and (iii) working with the advisors to

the Restructuring Subcommittee on various proposed amendments to the adversary complaint

filed on April 17, 2019 against ESL and other parties [ECF No. 3287] (the "Adversary

Complaint").

41.     During the Compensation Period, Akin Gump attorneys conducted significant fact

and document discovery.  These efforts included preparing for and participating in the interview

of Myron Marcinkowski.  In connection therewith, Akin Gump professionals, along with the

Creditors' Committee's other advisors, reviewed the valuations of certain of the Debtors'

intellectual property prepared by Mr. Marcinkowski and other related discovery, prepared

compilations of key documents to be presented to Mr. Marcinkowski during his interview and

drafted outlines to facilitate effective questioning.

42.     Akin Gump, on behalf of the Creditors' Committee, also engaged in significant

document discovery.  Specifically, Akin Gump began receiving documents on a rolling basis in

mid-November 2018 and continued to receive document productions throughout the

Compensation Period.  To date, Akin Gump has received over 350,000 documents comprising

over 6,000,000 pages.  During the Compensation Period, Akin Gump professionals and

paraprofessionals developed document review protocols, crafted and applied targeted searches to

the documents received and conducted multi-level reviews of potentially relevant documents.

43.     In furtherance of the Investigation, Akin Gump professionals also spent

considerable time conducting legal analyses of the causes of action not subject to the Release.

44.     Finally, this category includes time that Akin Gump professionals and

paraprofessionals spent working with the Restructuring Subcommittee to amend the Adversary

Complaint (and, to the extent such amendments were not accepted by the Restructuring

Subcommittee, preparing a separate complaint and related motion to intervene and seek standing

to pursue additional claims and to include certain additional defendants).  As filed, the Adversary

Complaint did not include a number of claims, defendants and allegations of fact identified by the Creditors' Committee during the course of the Investigation. Therefore, Akin Gump attorneys drafted and proposed to the Restructuring Subcommittee an amended complaint that included additional claims, defendants and allegations of fact. The proposed amendments to the Adversary Complaint were the result of significant efforts on the part of Akin Gump professionals and paraprofessionals.

**J.    Secured Creditor Issues/Communications/Meetings (Task Code 15)**

| Total Hours | Fees |
|---|---|
| 484.90 | $406,805.50 |

45.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with claims asserted by the Second Lien Parties arising under Bankruptcy Code section 507(b) (the "507(b) Claims") and the Debtors' proposed surcharges of the Second Lien Parties' collateral pursuant to Bankruptcy Code section 506(c) (the "506(c) Surcharges"). In connection therewith, on May 26, 2019, the Debtors filed the *Debtors' Motion to Estimate Certain 507(b) Claims for Reserve Purposes* [ECF No. 4034] (the "Estimation Motion"). By stipulation entered by the Court on June 21, 2019 [ECF No. 4316] (the "Rule 3012 Stipulation"), the Estimation Motion was deemed to be a motion pursuant to Bankruptcy Rule 3012 to determine the amount, if any, of the Second Lien Parties' 507(b) Claims and the amount of any 506(c) Surcharges. The Rule 3012 Stipulation set forth a briefing and discovery schedule with respect to the 507(b) Claims and 506(c) Surcharges that commenced during the Compensation Period and continued thereafter.

46.     In accordance with the schedule set forth in the Rule 3012 Stipulation, on June 18, 2019, the Second Lien Parties filed demands for payment in respect of their 507(b) Claims[12] as well as memoranda and expert reports in support of such claims.  During the Compensation Period, Akin Gump attorneys, along with the Creditors' Committee's other advisors, worked closely with the Debtors' advisors to analyze the factual and legal arguments raised by the Second Lien Parties in support of their asserted 507(b) Claims and responses thereto. Specifically, Akin Gump attorneys reviewed and analyzed fact discovery regarding the 507(b) Claims and 506(c) Surcharges, including reviewing relevant documents and attending the depositions of five witnesses.  To prepare for the depositions, Akin Gump attorneys reviewed public and nonpublic documents and prepared compilations thereof.  Following each deposition, Akin Gump attorneys reviewed and analyzed the witness's testimony and the potential ramifications such testimony could have on the outcome of the disputes.  In addition, Akin Gump attorneys devoted significant time to researching and analyzing all applicable case law and conferring with the Debtors' counsel regarding legal responses to the Second Lien Parties' alleged 507(b) Claims.

47.     On June 27, 2019, the Debtors filed a reply in opposition to the 507(b) Claims and in support for the 506(c) Surcharges [ECF No. 4381] (the "507(b) Reply").  In connection therewith, Akin Gump, on behalf of the Creditors' Committee, drafted and filed the *Creditors' Committee's (I) Qualified Joinder to the Debtors' Objection to the Second Lien Parties' Requests to Determine Claims Under Section 506(a) and Section 507(b) and Reply in Support of*

---

[12] *See ESL's Demand for Payment* [ECF No. 4276]; *Request for Payment* [ECF No. 4278]; and *Request of Wilmington Trust, National Association, as Indenture Trustee and Collateral Agent for Payment of an Administrative Expense Pursuant to 11 U.S.C. § 503(a) with Priority Over All Other Administrative Expenses Pursuant to 11 U.S.C. § 507(b) and for Allowance of a Secured Claim to the Extent of Remaining Collateral Pursuant to 11 U.S.C. § 506(a)* [ECF No. 4279].

the Debtors' Rule 3012 Motion and (II) Supplemental Objection to the Second Lien Parties'

Request to Determine Claims Under Section 506(a) and Section 507(b) [ECF No. 4385].

**K.    Automatic Stay Issues (Task Code 16)**

| Total Hours | Fees |
|:---:|:---:|
| 214.90 | $196,110.00 |

48.    This category includes time spent by Akin Gump professionals and

paraprofessionals reviewing and analyzing the motion for relief from the automatic stay [ECF

No. 3237] (the "Sears Canada Motion") filed by FTI Consulting Canada, Inc., the Honourable J.

Douglas Cunningham, Q.C., Morneau Shepell Ltd. and 1291079 Ontario Limited (collectively,

the "Canadian Plaintiffs") and related issues.  By the Sears Canada Motion, the Canadian

Plaintiffs sought to join Sears Holdings Corporation ("Sears Holdings") as a named defendant in

proceedings before the Ontario Superior Court of Justice, which proceedings related to Sears

Holdings' conduct, as the controlling shareholder of Sears Canada during the relevant time

period, in connection with dividends declared and paid by Sears Canada in 2012 and 2013.  Prior

to and after the filing of the Sears Canada Motion, Akin Gump attorneys devoted a significant

amount of time reviewing the factual background and legal validity of the Canadian Plaintiffs'

claims, discussing such claims and the appropriate strategy with respect thereto with the Debtors'

advisors (including the Debtors' Canadian counsel) and engaging with the Canadian Plaintiffs

and their advisors on potential resolutions or settlements in respect of the Sears Canada Motion

and the underlying claims.

49.    In connection with these efforts, Akin Gump attorneys conducted extensive legal

research, drafted detailed memoranda and provided regular updates and recommendations to the

Creditors' Committee with respect to the Sears Canada Motion and the underlying claims.  On

May 14, 2019, the Debtors filed their opposition to the Sears Canada Motion [ECF No. 3865]

and Akin Gump, on behalf of the Creditors' Committee, filed the *Qualified Joinder of the Official Committee of Unsecured Creditors to Debtors' Objection to Motion for Relief from the Automatic Stay for the Purpose of Joining Sears Holdings Corporation as a Defendant in Existing Litigation Pending Before the Ontario Superior Court of Justice (Commercial List) and to Liquidate Claims* [ECF No. 3867], by which the Creditors' Committee joined the Debtors' arguments opposing the Canadian Plaintiffs' request that the automatic stay be lifted.

50.     On May 21, 2019, the Court held a hearing to consider the Sears Canada Motion, and, on May 23, 2019, entered an order [ECF No. 4004] granting the Sears Canada Motion.

**L.     Tax Issues (Task Code 18)**

| Total Hours | Fees |
|:---:|:---:|
| 46.60 | $48,951.50 |

51.     This category includes time spent by Akin Gump attorneys reviewing and analyzing tax issues affecting unsecured creditors in connection with various chapter 11 plan-related efforts, including structuring of the post-Effective Date Liquidating Trust to be established under the Plan.  These efforts required extensive review and analysis of the structure of the Plan and Liquidating Trust.  In connection therewith, Akin Gump attorneys consulted with the Creditors' Committee's other professionals as well as the Debtors' advisors.

**M.     Labor Issues/Employee Benefits (Task Code 19)**

| Total Hours | Fees |
|:---:|:---:|
| 56.20 | $58,570.00 |

52.     This category includes time spent by Akin Gump professionals and paraprofessionals reviewing and analyzing the terms of a settlement entered into between the Debtors and PBGC in respect of claims arising from the Debtors' termination of certain pension plans [ECF No. 2529] (the "PBGC Settlement").  Negotiations relating to the PBGC Settlement began after PBGC objected to the Sale Transaction.  In order to resolve PBGC's objection and

24

reduce PBGC's asserted $1.4 billion claim in respect of unfunded benefits liability, the Debtors entered into the PBGC Settlement, pursuant to which PBGC would, among other things: (i) withdraw its objection to the Sale Transaction; (ii) take reasonable efforts to ensure that KCD waived its claims against the Debtors; (iii) release the Debtors of all pension funding liabilities and waive any termination premiums; and (iv) vote in favor of the Debtors' plan.  In consideration thereof, the PBGC Settlement called for PBGC to receive an allowed general unsecured claim against each Debtor in the amount of $800 million as well as a priority interest in the first $80 million of proceeds recovered from certain claims and causes of action (which amount was subsequently increased to $97.5 million).

53.     During the Compensation Period, Akin Gump professionals evaluated the terms of the PBGC Settlement and the underlying legal authority for the claims asserted by PBGC, analyzed the potential impact of the PBGC Settlement on unsecured creditors' recoveries and provided frequent updates to the Creditors' Committee regarding the status of ongoing negotiations in respect of the PBGC Settlement.  The Creditors' Committee expressed concerns and reservations with respect to the PBGC Settlement in connection with its Disclosure Statement Objection (as defined below).  Ultimately, as a result of modifications incorporated into the Plan through the Committee Settlement (as defined below), the Creditors' Committee agreed to the terms of the PBGC Settlement.

54.     This category also includes time spent by Akin Gump professionals and paraprofessionals in connection with the motion to appoint an official committee of retired employees, which was filed by former employees of Sears, Roebuck & Co. on May 28, 2019 [ECF No. 4054] (the "Retirees" and such motion, the "Retiree Motion").  By the Retiree Motion, the Retirees sought an order directing the appointment of an official committee of retired

employees (the "1114 Committee") pursuant to Bankruptcy Code section 1114 to act as the authorized representatives of persons entitled to receive "retiree benefits." In connection with the Retiree Motion, the Retirees also asserted that, pursuant to a prepetition settlement, the Debtors were prohibited from modifying or terminating a certain life insurance benefit plan with respect to certain former employees that were part of a class action (the "Life Insurance Plan") and that the Debtors violated such settlement when they abruptly ceased all premium payments and terminated the Life Insurance Plan as of March 15, 2019. The Debtors objected to the Retiree Motion on June 14, 2019 [ECF No. 4238] (the "Objection to Retiree Motion") on the grounds that, among other things, (i) appointing an 1114 Committee would serve no practical purpose in light of the Debtors' current financial position and inability to put forth a meaningful proposal to such 1114 Committee and (ii) the Debtors retained the unilateral right to amend or terminate the Life Insurance Plan pursuant to the terms thereof, which right was unaffected by the Chapter 11 Cases.

55.    During the Compensation Period, Akin Gump attorneys worked with the Creditors' Committee's other professionals to assess the costs the Debtors would incur if the relief sought by the Retiree Motion were granted as well as the impact such costs would have on the Debtors' estates and creditors. Akin Gump also reviewed the terms of the prepetition class settlement underlying the Retiree Motion, in order to analyze the legal arguments set forth therein. On June 14, 2019, following numerous discussions with the Debtors' professionals, Akin Gump, on behalf of the Creditors' Committee, filed the *Qualified Joinder of the Official Committee of Unsecured Creditors to the Objection of Debtors to Motion of Retirees Pursuant to Section 1114(d) of the Bankruptcy Code* [ECF No. 4239], pursuant to which the Creditors' Committee supported the arguments set forth in the Objection to Retiree Motion and expressed

its view that, in light of the Debtors' financial position and inability to put forth a meaningful

proposal to the Retirees, appointing an 1114 Committee would serve no practical purpose.  The

Court granted the Retiree Motion at the hearing held on June 20, 2019 and the order approving

the Retiree Motion was entered on June 25, 2019 [ECF No. 4357].  Subsequent to the

Compensation Period, the Debtors filed a motion seeking to modify the terms of the Life

Insurance Plan [ECF No. 4635] (the "Life Insurance Plan Modification Motion").  Discussions

among the Debtors, the Creditors' Committee and the Retirees remain ongoing and the Life

Insurance Plan Modification Motion is set for hearing on August 22, 2019.

**N.     Exclusivity (Task Code 21)**

| Total Hours | Fees |
|---|---|
| 35.90 | $29,932.50 |

56.     This category includes time spent by Akin Gump professionals and

paraprofessionals during the Compensation Period on all matters relating to the Debtors'

exclusive periods to propose and solicit a plan under the Bankruptcy Code.  On April 12, 2019,

the Debtors filed a motion to extend further their exclusive periods to file and solicit a plan to

June 12, 2019 and August 13, 2019, respectively [ECF No. 3183].  In response, and at the

direction of the Creditors' Committee, Akin Gump attorneys prepared and, on May 7, 2019, filed

the *Statement of the Official Committee of Unsecured Creditors with Respect to the Motion of*

*Debtors Pursuant to 1121(d) of the Bankruptcy Code to Further Extend Exclusive Periods* [ECF

No. 3661] (the "Exclusivity Statement").  The Exclusivity Statement set forth the Creditors'

Committee's concerns with respect to the viability of the Debtors' proposed path forward and

reserved the Creditors' Committee's rights to move for termination of the Debtors' exclusive

periods in the event that subsequent negotiations between the Debtors and Creditors' Committee

failed to yield a consensual resolution on the terms of a plan of liquidation.  On May 10, 2019,

the Court entered an order [ECF No. 3800] granting the Debtors' motion to extend further their
exclusive periods to June 12, 2019 and August 13, 2019, respectively.

57.      On June 10, 2019, the Debtors filed another motion seeking to extend further their
exclusive periods to file and solicit their proposed plan to August 12, 2019 and October 14,
2019, respectively [ECF No. 4171].  Akin Gump professionals analyzed this motion and
discussed the proposed extensions to the Debtors' exclusive periods with the Creditors'
Committee.  Ultimately, in light of the continued, good faith negotiations between the Creditors'
Committee and the Debtors on the terms of a consensual plan of liquidation, the Creditors'
Committee determined not to oppose the Debtors' request to extend further their exclusive
periods.  On June 25, 2019, the Court entered an order [ECF No. 4353] granting the Debtors'
motion to extend further their exclusive periods to August 12, 2019 and October 14, 2019,
respectively.

**O.    Disclosure Statement/Solicitation/Plan Confirmation (Task Code 22)**

| Total Hours | Fees |
|---|---|
| 2,260.80 | $2,091,731.00 |

58.      This category includes time spent by Akin Gump professionals and
paraprofessionals during the Compensation Period in connection with the Plan and the
Disclosure Statement.[13]

59.      On April 17, 2019, the Debtors filed the *Joint Chapter 11 Plan of Sears Holdings
Corporation and Its Affiliated Debtors* [ECF No. 3275] (the "Initial Plan") and related
*Disclosure Statement for Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated
Debtors* (the "Initial Disclosure Statement") [ECF No. 3276].  The Debtors filed their motion to

---

[13] "Disclosure Statement" means the *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of
Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 4478].

approve the Initial Disclosure Statement on April 17, 2019, with an original objection deadline of May 9, 2019.

60.     The Initial Plan provided for a separate chapter 11 plan of liquidation for each Debtor.  Akin Gump worked with the Creditors' Committee's other advisors, as well as the advisors to the Debtors and other parties in interest, to evaluate numerous issues in connection with the Initial Plan and Initial Disclosure Statement.  On May 16, 2019, the Debtors filed the *Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 3894] the ("Amended Plan") and the *Disclosure Statement for Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 3895] (the "Amended Disclosure Statement").  Among other changes from the Initial Plan, the Amended Plan provided for (i) the substantive consolidation of the Debtors' estates and (ii) a $17.5 million increase (from $80 million to $97.5 million) in PBGC's priority interest in proceeds recovered from certain claims and causes of action.

61.     During the Compensation Period, Akin Gump conducted significant legal analysis and prepared memoranda in respect of issues raised by each of the Initial Plan and the Amended Plan.  Akin Gump also worked closely with the Creditors' Committee's other advisors to analyze the Debtors' financial position and consider various alternatives available to the Debtors' estates.

62.     Akin Gump engaged in extensive negotiations with the Debtors and their advisors regarding the terms of the Amended Plan and the treatment of unsecured creditors.  Despite these efforts, the Creditors' Committee believed that the Amended Disclosure Statement did not adequately address certain issues of key significance to unsecured creditors.  Thus, notwithstanding numerous attempts to resolve the Creditors' Committee's concerns on a consensual basis, on May 22, 2019, Akin Gump, on behalf of the Creditors' Committee, filed the

*Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for an Order (I)*

*Approving Disclosure Statement; (II) Establishing Notice and Objection Procedures for*

*Confirmation of the Plan; (III) Approving Solicitation Packages and Procedures for Distribution*

*Thereof; (IV) Approving Forms of Ballots and Establishing Procedures for Voting on the Plan;*

*and (V) Granting Related Relief* [ECF No. 3995] (the "<u>Disclosure Statement Objection</u>").

      63.     By the Disclosure Statement Objection, the Creditors' Committee argued that the

Amended Plan, as then proposed: (i) was patently unconfirmable because of, among other things,

the proposed substantive consolidation of the Debtors' estates through a settlement with PBGC

and the numerous unresolved contingencies, including open disputes with respect to Transform's

obligations under the Asset Purchase Agreement (the "<u>APA Disputes</u>") and the entitlement of

certain Second Lien Parties to 507(b) Claims; (ii) prejudiced the prosecution of the Preserved

Causes of Action (which are the primary remaining assets of the Debtors' estates and the sole

source of recovery for unsecured creditors); (iii) prevented unsecured creditors from selecting the

fiduciaries that will be responsible for determining their recoveries; (iv) provided inappropriate

priority treatment for the claims of PBGC; and (v) failed to satisfy the best interests of creditors

test by demonstrating that creditors would not fare better in a chapter 7 liquidation.  In addition,

Akin Gump, on behalf of the Creditors' Committee, drafted a letter to be included in the

solicitation packages delivered to unsecured creditors, in which the Creditors' Committee

recommended that such creditors vote to reject the Amended Plan.

      64.     Prior to the hearing on the approval of the Amended Disclosure Statement, Akin

Gump continued to engage in discussions with counsel for the Debtors regarding the issues

raised by the Creditors' Committee in the Disclosure Statement Objection.  In addition, Akin

Gump attorneys analyzed objections to approval of the Amended Disclosure Statement filed by

other parties and the Debtors' reply thereto.  To that end, the Debtors and the Creditors'

Committee were able to reach an agreement on certain of the modifications requested by the

Creditors' Committee through the inclusion of additional information relevant to unsecured

creditors in the Amended Disclosure Statement.  Moreover, to address the Creditors'

Committee's concerns regarding substantive consolidation and the effect it would have on

unsecured creditors' recoveries at certain Debtor entities, the Debtors filed the *Second Amended*

*Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 4041]

(the "Second Amended Plan") and related *Disclosure Statement for Second Amended Joint*

*Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 4042] on

May 28, 2019, which provided for certain "settlement premiums" to be granted to creditors

adversely affected by the proposed substantive consolidation settlement, such as creditors of

Kmart Corporation.  The Court approved the Disclosure Statement at a hearing held on May 29,

2019 and, on June 28, 2019, the Court entered the order approving the Disclosure Statement

[ECF No. 4392].

65.     Following the Court's approval of the Amended Disclosure Statement, Akin

Gump attorneys drafted and began serving discovery requests in accordance with the

confirmation schedule and began preparing for a contested confirmation hearing.  Concurrently,

in an attempt to avoid the significant cost, delay and uncertainty associated with confirmation-

related litigation, the Creditors' Committee continued to endeavor to resolve its plan-related

concerns with the Debtors.  These efforts ultimately proved successful, and on June 17, 2019, the

Creditors' Committee and the Debtors reached an agreement in principle on the terms of a

settlement (the "Committee Settlement"), which terms are reflected in the Plan and Disclosure

Statement.  As a result of the Committee Settlement, the following changes, among others, were

made to the Plan:

- the Creditors' Committee was provided with the right to appoint three of the five members of the Liquidating Trust Board;

- the Liquidating Trust Board was provided with the right to select the Liquidating Trustee, based on the majority vote of the Board members (with the ability of non-consenting Liquidating Trust Board members to object to the majority's selection if more than one member opposed such selection);

- the Liquidating Trust Board was provided with the right to select the advisors for the Liquidating Trust, based on the majority vote of the Board members (with the ability of non-consenting Liquidating Trust Board members to object to the majority's selection of primary litigation counsel if more than one member opposes such selection);

- the Liquidating Trust was anticipated to have initial funding of approximately $25 million in cash;

- the Creditors' Committee was provided with consent rights, such consent not to be unreasonably withheld, with respect to any settlement or resolution of claims asserted by certain parties in interest, including ESL, Cyrus and Wilmington Trust, for alleged 507(b) Claims.

- the Creditors' Committee was provided with consent rights, such consent not to be unreasonably withheld, with respect to the settlement of any Administrative Expense Claims;

- the Creditors' Committee was provided with consultation rights with respect to the settlement or resolution of issues related to ongoing disputes between the Debtors and Transform regarding the APA Disputes; *provided, however,* that none of the APA Disputes would be settled without the Creditors' Committee's consent to the extent that such settlement results in the settlement or impairment of the Preserved Causes of Action; and

- the Plan, the Liquidating Trust Agreement, and all other Plan-related documents were required to be reasonably acceptable to the Creditors' Committee.

66.     During and after the Compensation Period, Akin Gump worked closely with

counsel for the Debtors to ensure that the terms of the Plan incorporated the Committee

Settlement and otherwise appropriately protected the interests of unsecured creditors.  To that

end, Akin Gump reviewed and commented on multiple drafts of the Plan and the associated

further amended Disclosure Statement prior to filing and communicated with the Debtors'

advisors regularly with respect thereto.  In addition, Akin Gump attorneys drafted and filed the

*Creditors' Committee's Letter in Support of Second Amended Joint Chapter 11 Plan of Sears*

*Holdings Corporation and Its Affiliated Debtors* [ECF No. 4395] (the "Committee Support

Letter") on June 28, 2019.  By the Committee Support Letter, the Creditors' Committee

recommended that unsecured creditors vote in favor of the Plan.

**P.    Asset Dispositions/363 Asset Sales (Task Code 23)**

| Total Hours | Fees |
|:---:|:---:|
| 388.80 | $363,294.50 |

67.    This category includes time spent by Akin Gump professionals and

paraprofessionals in connection with the APA Disputes between the Debtors and Transform.  On

March 6, 2019, Transform filed a motion to compel mediation [ECF No. 2766] (the "Mediation

Motion") in which Transform requested entry of an order assigning the APA Disputes to

mediation.  In response, the Debtors filed a motion to enforce the Asset Purchase Agreement and

compel the turnover of estate property that the Debtors argued Transform wrongfully was

withholding [ECF No. 2796] (the "Turnover Motion").  Specifically, by the Turnover Motion, the

Debtors argued that Transform (i) was refusing to turn over $57.5 million of estate property and

(ii) filed the Mediation Motion in an effort to delay the transfer of estate assets and gain leverage

in respect of negotiations related to the APA Disputes.  On March 13, 2019, Akin Gump filed, the

*Joinder of the Official Committee of Unsecured Creditors to Debtors' (I) Motion to (A) Enforce*

*Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel*

*Turnover of Estate Property, and (II) Response to Transform Holdco LLC's Motion to Assign*

*Matter to Mediation* [ECF No. 2808] (the "Turnover Joinder").  By the Turnover Joinder, the

Creditors' Committee argued that the Court should enforce the automatic stay against Transform

and compel the turnover to the Debtors of any estate property held by Transform, and deny the

Mediation Motion.

68.     On March 18, 2019, Transform filed a response to the Turnover Motion [ECF No.

2864], which was followed, on March 20, 2019, by the Debtors' reply in support of the Turnover

Motion [ECF No. 2913].  Akin Gump attorneys analyzed and reviewed Transform's and the

Debtors' respective filings, prepared internal memoranda regarding the same, consulted with the

Creditors' Committee's other professionals on a regular basis and apprised the Creditors'

Committee of all developments.

69.     At a hearing held on March 21, 2019, the Court instructed Transform and the

Debtors to attempt to resolve the APA Disputes based on guidance provided during that hearing.

Transform and the Debtors, however, were not able to resolve the remaining APA Disputes and,

on May 24, 2019, the Debtors filed the *Motion to Enforce the Asset Purchase Agreement* [ECF

No. 4029] (the "Motion to Enforce").  Thereafter, on May 25, 2019, Transform filed an

adversary complaint against the Debtors [ECF No. 4033] (the "Transform Adversary

Complaint").  In the Motion to Enforce and the Transform Adversary Complaint, the Debtors and

Transform set forth their respective arguments regarding Transform's obligations to assume

certain of the Debtors' liabilities pursuant to the Asset Purchase Agreement and Transform's

arguments that the Debtors breached the terms of the Asset Purchase Agreement.  During the

Compensation Period, Akin Gump attorneys and the Creditors' Committee's other advisors

analyzed Transform's and the Debtors' arguments, conducted research regarding those arguments

and prepared memoranda for the Creditors' Committee regarding their assessment of those

arguments.  In coordination with counsel to the Debtors, Akin Gump attorneys prepared for and

attended the depositions of the following witnesses in connection with the APA Disputes: (i)

Rob Riecker; (ii) Kunal Kamlani; (iii) Jeffrey Butz; (iv) Mohsin Meghji; and (v) Chris Good.

**Q.    Real Estate Issues (Task Code 24)**

| Total Hours | Fees |
|:---:|:---:|
| 18.70 | $19,832.00 |

70.     This category includes time spent by Akin Gump professionals and

paraprofessionals analyzing issues related to the Debtors' substantial real estate portfolio,

including, among other things, (i) negotiating the terms of a go-forward listing agreement, broker

agreements and related documents entered into between the Debtors, Jones Lang LaSalle

Americas, Inc. and JLL Valuation & Advisory Services (collectively, "JLL"), pursuant to which

JLL was granted the exclusive rights to market certain of the Debtors' remaining real estate

assets and (ii) reviewing the proposed sale and transfer of various fee and leasehold interests and

the relevant transactional agreements to accomplish such dispositions for assets that were not

included in the Sale Transaction.

**R.    Travel Time (Task Code 25)**

| Total Hours | Fees |
|:---:|:---:|
| 24.50 | $26,976.50 |

71.     This category includes time spent by Akin Gump attorneys in transit to all

hearings and meetings with parties in interest that required in-person attendance on behalf of the

Creditors' Committee. Akin Gump has discounted this time by 50% in accordance with the

Local Rules and Fee Guidelines.

## ACTUAL AND NECESSARY DISBURSEMENTS

72.     Akin Gump seeks allowance of reimbursement in the amount of $817,560.08 for

expenses incurred during the Compensation Period in the course of providing professional

services to the Creditors' Committee. Akin Gump's disbursement policies pass through all out

of pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to

determine.  For example, as it relates to computerized research, Akin Gump believes that it does

not make a profit on that service as a whole although the cost of any particular search is difficult

to ascertain.  Other reimbursable expenses (whether the service is performed by Akin Gump in-

house or through a third party vendor) include, but are not limited to, long-distance calls,

overtime meals, deliveries, court costs, transcript fees, discovery and temporary legal staffing

services, travel and clerk fees.

**FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES**

73.    Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]" *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration
>        of, or beneficial at the time at which the service was
>        rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable
>        amount of time commensurate with the complexity,
>        importance, and nature of the problem, issue, or task
>        addressed; and
>
> (E)    with respect to a professional person, whether the person is
>        board certified or otherwise has demonstrated skill and
>        experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonably based on the
>        customary compensation charged by comparably skilled
>        practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

74.    The clear congressional intent and policy expressed in Bankruptcy Code section

330 is to provide for adequate compensation in order to continue to attract qualified and

competent bankruptcy practitioners to bankruptcy cases.  *In re Drexel Burnham Lambert Grp.,*

*Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market,

not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by

appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir.

1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide

sufficient economic incentive to lure competent bankruptcy specialists to practice in the

bankruptcy courts.").

75.    In assessing the "reasonableness" of the fees requested, the Second Circuit has

stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express,*

*Inc.*, while also incorporating the "lodestar method."  *See Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190

(2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974),

*abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The

"lodestar method" of calculating the reasonable fee contemplates "the number of hours

reasonably expended . . . multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart et*

*al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny*

*A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr.

S.D. N.Y. 1991).  The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544

F.2d 1291, 1298-99 (5th Cir. 1977) have been adopted by most courts.[14]  *See In re Nine Assocs.,*

---

[14] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson,*
with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by

*Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine*

*Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*,

403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON

BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and

*Johnson* as the "leading cases to be considered in determining a reasonable allowance of

compensation").

76.     Akin Gump respectfully submits that a consideration of these factors should result

in the Court's allowance of the full compensation sought in this Application.

    a.   <u>Time and Labor Required</u>.  Akin Gump billed a total of 6,742.80 hours of
professional services and 246.70 hours of paraprofessional and other non-legal
services during the Compensation Period.  As evidenced by this Application,
Akin Gump professionals and paraprofessionals worked diligently and
efficiently without unnecessary duplication of efforts throughout the
Compensation Period.  This is especially true when considering the nature and
complexity of the issues that arose in the Chapter 11 Cases during the
Compensation Period, including, among other things, analyzing the APA
Disputes and the Second Lien Parties' 507(b) Claims, prosecuting objections
to the Disclosure Statement, engaging with the Debtors in extensive
negotiations over the terms of a plan of liquidation and investigating the
Debtors' prepetition transactions which ultimately resulted in the consensual
Plan and the Committee Settlement.  Akin Gump's representation of the
Creditors' Committee has required it to balance the need to provide quality
services with the need to act quickly and represent the Creditors' Committee
in an effective, efficient and timely manner.  Akin Gump submits that the
hours spent were reasonable given the size and complexity of the Chapter 11
Cases, the significant—and often times urgent—legal and business issues
raised, and the numerous pleadings filed in the Chapter 11 Cases.

    b.   <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable
attorneys to research, analyze and provide advice on difficult and complex
bankruptcy, litigation, finance, real estate, tax and other issues.  As further
described herein, Akin Gump's skilled teams assisted the Creditors'
Committee in evaluating, among other things, the Debtors' and ESL's relative
obligations arising from the Asset Purchase Agreement, the Second Lien
Parties' asserted 507(b) Claims, the PBGC Settlement, the treatment of

---

Congress.  *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*,
127 F.3d 1398, 1403 (11th Cir. 1997).

various classes of claims under the Plan and the Debtors' prepetition transactions.

c.  <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice and its creative approach to the resolution of issues has contributed to the successful administration of the Chapter 11 Cases and benefited the Debtors and the Creditors' Committee.  Due to the nature and complexity of the legal issues presented in the Chapter 11 Cases, Akin Gump was required to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy, litigation, tax, real estate, labor and corporate transaction matters. Additionally, Akin Gump's strong working relationship with the legal and financial advisors to other parties in interest enabled Akin Gump to work with such advisors towards a swift, consensual resolution of many of the salient issues in the Chapter 11 Cases.

d.  <u>Preclusion of Other Employment by Applicant Due to Acceptance of the Case</u>.  Due to the size of Akin Gump's financial restructuring and litigation departments, Akin Gump's representation of the Creditors' Committee did not preclude its acceptance of new clients, but the demands for immediate and substantive action in the Chapter 11 Cases imposed significant burdens on Akin Gump professionals and paraprofessionals working concurrently on other matters.

e.  <u>Customary Fee</u>.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy matters.  Akin Gump's fee structure also is equivalent to the fee structure used by Akin Gump for restructuring, workout, bankruptcy, insolvency and comparable matters, as well as similar complex corporate and litigation matters, whether in-court or otherwise, regardless of whether a fee application is required.  The firm's customary hourly rates and rate structure reflect that restructuring and related matters typically involve great complexity, numerous tasks requiring a high level of expertise and severe time pressures, as is the case here.  Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f.  <u>Whether the Fee Is Fixed or Contingent</u>.  Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained.  The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Creditors' Committee in the Chapter 11 Cases.

g.  <u>Time Limitations Imposed by the Client or Other Circumstances</u>.  As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines.  Akin Gump and the Creditors' Committee's other advisors were faced with limited time in which to engage in negotiations while also preparing to prosecute objections at various hearings as necessary.  For example, Akin Gump took discovery in connection with the Adversary Complaint while simultaneously engaging in extensive negotiations with the advisors for the Debtors, the Buyer and others, with respect to disputes arising from the Asset Purchase Agreement.  The tremendous efforts of Akin Gump attorneys and paraprofessionals in completing this work permitted the Creditors' Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h.  <u>Amount Involved and Results Obtained</u>.  Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors.  During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in maximizing value for the benefit of unsecured creditors.  In particular, Akin Gump's efforts in connection with, among other things, the Disclosure Statement Objection and the Committee Settlement ultimately ensured that the governance of the Liquidating Trust would be aligned with the interests of its primary beneficiaries—unsecured creditors—and that the Liquidating Trust would have adequate funding in order to maximize the distributions to unsecured creditors.  Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i.  <u>Experience, Reputation and Ability of Attorneys</u>.  Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights and business reorganizations and liquidations under chapter 11 of the Bankruptcy Code.  During the Compensation Period, Akin Gump solicited the skill and expertise of its attorneys and paraprofessionals, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines.  Akin Gump attorneys have actively represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Nine West Holdings, Inc.*, *In re iHeartMedia, Inc.*, *In re Cumulus Media Inc.*, *In re Avaya Inc.*, *In re Chassix Holdings, Inc.*, *In re Energy Future Holdings Corp.*, *In re Dynegy Holdings, LLC*, *In re Nortel Networks Inc.*, *In re Lightsquared Inc.*, *In re Longview Power, LLC*, *In re Eastman Kodak Company*, *In re Cal Dive International, Inc.*, *In re Washington Mutual Inc.*, *In re NII Holdings, Inc.*, *In re MPM Silicones, LLC*, *In re Overseas Shipholding Group, Inc.*, *In re QCE Finance LLC*, *In re*

> *Residential Capital, LLC, In re Solutia, Inc., In re WorldCom, Inc., In re XO Communications, Inc., In re Tower Automotive LLC, In re VeraSun Energy Corp.,* and many others.  Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

> j.   <u>"Undesirability" of the Cases</u>.  This factor is not applicable to the Chapter 11 Cases.

> k.   <u>Nature and Length of Professional Relationship</u>.  Akin Gump has been rendering professional services to the Creditors' Committee since it was selected as counsel to the Creditors' Committee on October 24, 2018.

77.   For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Creditors' Committee and consistently performed in a timely manner.  The compensation sought in this Application is reasonable in light of the value of such services to the Creditors' Committee and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump.  Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

78.   No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases.  No prior application has been made in this Court or in any other court for the relief requested herein as it relates to the Compensation Period.

## ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

79.     The following is provided in response to the request for additional information set

forth in ¶ C.5. of the U.S. Trustee Guidelines.

**Question**:     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response:     No.

**Question**:     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:     Not applicable.

**Question**:     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:     No.

**Question**:     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:     Yes. During the Compensation Period, 242.70 hours and $169,579.00 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:     See above.

**Question**:     If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

<u>Response</u>:          Akin Gump disclosed to the Creditors' Committee the hourly rates charged at the time of its retention and the hourly rates to be charged beginning in January 2019 in the Akin Retention Application, which the Creditors' Committee agreed to.

## **RESERVATION OF RIGHTS**

To the extent that there are services rendered or expenses incurred that relate to the

Compensation Period but were not processed prior to the preparation of the Application, Akin

Gump reserves the right to request additional compensation for such services and reimbursement

of such expenses in a future application.

[*Remainder of page left blank intentionally*]

## CONCLUSION

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of

compensation for professional services rendered during the Compensation Period in the amount

of $5,741,021.50 and expense reimbursement in the amount of $817,560.08; (ii) the allowance of

such compensation for professional services rendered and reimbursement of actual and necessary

expenses incurred be without prejudice to Akin Gump's right to seek additional compensation

for services performed and expenses incurred during the Compensation Period which were not

processed at the time of the Application; and (iii) such other and further relief as the Court deems

just, proper and equitable.

Dated: New York, New York
       August 14, 2019

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  */s/ Philip C. Dublin*
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
pdublin@akingump.com
sbrauner@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of
Sears Holdings Corporation, et al.*

**<u>EXHIBIT A</u>**

**CERTIFICATION OF PHILIP C. DUBLIN**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:                                          :          Chapter 11
                                                :
SEARS HOLDINGS CORPORATION, et al.              :          Case No. 18-23538 (RDD)
                                                :
                                                :          (Jointly Administered)
                    Debtors.[1]                 :
---------------------------------------------------------------x

### CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE SECOND INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF MARCH 1, 2019 THROUGH AND INCLUDING JUNE 30, 2019

I, Philip C. Dublin, hereby certify that:

1.       I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of

the above captioned Debtors.  Akin Gump is counsel to Creditors' Committee of Sears Holdings

Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors").

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

2.      In accordance with the Fee Guidelines, this certification is made with respect to

the Application, for interim allowance of compensation and reimbursement of expenses incurred

during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

(a)      I have read the Application;

(b)      to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

(c)      the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

(d)      in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the

Interim Compensation Order, I certify that Akin Gump has complied with those provisions

requiring it to provide the Debtors and the Creditors' Committee with a statement of Akin

Gump's fees and disbursements accrued during the previous month, although, due to

administrative limitations, such statements were not always provided within the timeframe set

forth in the Local Guidelines or the Interim Compensation Order.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the

U.S. Trustee and the members of the Creditors' Committee are each being provided with a copy

of the Application.

Dated: New York, New York                    By: */s/ Philip C. Dublin*
August 14, 2019                                        Philip C. Dublin

2

## **EXHIBIT B**

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY Office for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,108.80 | $1,337.26 |
| Senior Counsel and Counsel | $921.60 | $1,032.37 |
| Associate | $651.46 | $636.25 |
| Legal Assistant | $239.63 | $264.55 |
| **All Timekeepers Aggregated** | **$778.97** | **$821.38** |

---

[1] Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (i.e., the New York office), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month year ending June 30, 2019.

**<u>EXHIBIT C</u>**

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Dizengoff, Ira S. | Partner | Financial Restructuring | 1993 | $1,550.00 | 198.00 | $306,900.00 |
| Dublin, Philip C. | Partner | Financial Restructuring | 1999 | $1,475.00 | 304.70 | $449,432.50 |
| Jacobson, Howard | Partner | Tax | 1979 | $1,120.00 | 52.40 | $58,688.00 |
| Lawrence, Lacy M. | Partner | Litigation | 2006 | $1,020.00 | 63.40 | $64,668.00 |
| Leyden, Lauren H. | Partner | Labor | 2006 | $1,200.00 | 5.10 | $6,120.00 |
| Miller, Allison P. | Partner | Corporate | 2003 | $1,250.00 | 56.70 | $70,875.00 |
| Phelps, David S. | Partner | Real Estate | 1987 | $1,160.00 | 12.70 | $14,732.00 |
| Qureshi, Abid | Partner | Financial Restructuring | 1995 | $1,475.00 | 66.80 | $98,530.00 |
| Sorkin, Joseph L. | Partner | Litigation | 2008 | $1,120.00 | 234.20 | $262,304.00 |
| Vondle, David C. | Partner | Intellectual Property | 2002 | $1,020.00 | 9.50 | $9,690.00 |
| Brauner, Sara L. | Counsel | Financial Restructuring | 2011 | $1,125.00 | 852.80 | $959,400.00 |
| Chapman, Dean L. | Counsel | Litigation | 2009 | $980.00 | 442.80 | $433,944.00 |
| Demander, Kathryn G. | Counsel | Litigation | 2013 | $805.00 | 62.40 | $50,232.00 |
| Fey, Hilary D. | Counsel | Real Estate | 1997 | $825.00 | 5.50 | $4,537.50 |
| Field, Eric | Counsel | Labor | 1998 | $1,170.00 | 14.70 | $17,199.00 |
| Koo, Angeline K. | Counsel | Litigation | 2005 | $940.00 | 28.80 | $27,072.00 |
| Locke, Adam T. | Counsel | Litigation | 2012 | $915.00 | 8.00 | $7,320.00 |
| Matheson, Clayton | Counsel | Intellectual Property | 2010 | $885.00 | 29.60 | $26,196.00 |
| Morris, Brandon T. | Counsel | Tax | 2009 | $1,040.00 | 6.10 | $6,344.00 |
| Peckham, Heather L. | Counsel | Litigation | 2000 | $905.00 | 96.30 | $87,151.50 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Tizravesh, Roxanne | Counsel | Litigation | 2009 | $905.00 | 175.20 | $158,556.00 |
| Aminian, Sarah | Associate | Corporate | 2018 | $540.00 | 5.30 | $2,862.00 |
| Brewer, Erin M. | Associate | Litigation | 2018 | $510.00 | 8.90 | $4,539.00 |
| Chen, Michael | Associate | Litigation | 2019 | $540.00 | 131.70 | $71,118.00 |
| Farovitch, Aaron S. | Associate | Tax | 2017 | $690.00 | 4.70 | $3,243.00 |
| Figueroa-Santana, Bianca | Associate | Litigation | 2018 | $690.00 | 7.10 | $4,899.00 |
| Glackin, Patrick J. | Associate | Litigation | 2019 | $540.00 | 319.20 | $172,368.00 |
| Hiner, Chance | Associate | Financial Restructuring | 2017 | $660.00 | 9.10 | $6,006.00 |
| Holland, Erica E. | Associate | Litigation | 2016 | $770.00 | 41.30 | $31,801.00 |
| Kane, John P. | Associate | Litigation | 2016 | $770.00 | 509.10 | $392,007.00 |
| Kulikowski, Jillian R. | Associate | Litigation | 2019 | $540.00 | 359.80 | $194,292.00 |
| Lanier, Zachary D. | Associate | Financial Restructuring | 2017 | $760.00 | 763.50 | $580,260.00 |
| Latov, Jeffrey A. | Associate | Litigation | 2017 | $760.00 | 394.80 | $300,048.00 |
| Mahkamova, Shirin | Associate | Financial Restructuring | 2019 | $560.00 | 371.70 | $208,152.00 |
| Miller, Katlyne | Associate | Litigation | 2018 | $510.00 | 21.70 | $11,067.00 |
| Park, Daniel S. | Associate | Litigation | 2011 | $690.00 | 34.70 | $23,943.00 |
| Parlar, Erin | Associate | Litigation | 2015 | $815.00 | 75.90 | $61,858.50 |
| Szydlo, Joseph E. | Associate | Financial Restructuring | 2019 | $560.00 | 488.00 | $273,280.00 |
| Collins, Russell J. | Staff Attorney | Practice Attorney | 1998 | $455.00 | 470.60 | $214,123.00 |
| Blair, Laurel Diane | Legal Assistant | Litigation | N/A | $355.00 | 5.00 | $1,775.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Ejoh, Kareen C. | Legal Assistant | Litigation | N/A | $270.00 | 10.10 | $2,727.00 |
| Ginsborg, Michael | Specialist | Research | N/A | $265.00 | 11.30 | $2,994.50 |
| Krasa-Berstell, Dagmara | Legal Assistant | Financial Restructuring | N/A | $395.00 | 25.90 | $10,230.50 |
| Levy, Sophia D. | Legal Assistant | Financial Restructuring | N/A | $235.00 | 118.40 | $27,824.00 |
| Southwell, Tracy | Legal Assistant | Financial Restructuring | N/A | $395.00 | 17.10 | $6,754.50 |
| Robertson, Emony | Legal Assistant | Litigation | N/A | $220.00 | 58.90 | $12,958.00 |

4

# EXHIBIT D

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS
AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 40 – 60 | $24,400.00 – $32,500.00 | 58.50 | $31,627.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 350 – 440 | $228,300.00 – $287,000.00 | 423.90 | $276,485.00 |
| 4 | Analysis of Other Professionals' Fee Applications/Reports | 45 – 60 | $36,400.00 – $48,600.00 | 47.30 | $38,237.50 |
| 5 | Review/Preparation of Schedules, Statements | 5 – 10 | $4,200.00 – $8,300.00 | 0.00 | $0.00 |
| 6 | Retention of Professionals | 5 – 10 | $5,000.00 – $10,000.00 | 10.70 | $10,610.50 |
| 7 | Creditor Committee matters/Meetings (including 341 meetings) | 150 – 190 | $154,800.00 – $196,000.00 | 102.70 | $105,928.50 |
| 8 | Court Hearings | 200 – 250 | $167,500.00 – $209,400.00 | 182.80 | $153,086.00 |
| 9 | Financial Reports and Analysis | 10 – 20 | $9,400.00 – $18,700.00 | 4.10 | $3,831.00 |
| 10 | DIP, Cash Collateral Usage and Exit Financing | 30 – 40 | $30,700.00 – $40,900.00 | 20.80 | $21,258.50 |
| 11 | Executory Contracts/Lease Issues | 15 – 20 | $16,400.00 – $21,800.00 | 7.10 | $7,736.00 |
| 12 | General Claims Analysis/Claims Objections | 200 – 250 | $173,300.00 – $216,700.00 | 231.10 | $200,239.00 |
| 13 | Analysis of Pre-Petition Transactions | 2,000 – 2,500 | $1,388,400.00 – $1,735,500.00 | 2,305.20 | $1,596,798.00 |
| 14 | Insurance Issues | 30 – 40 | $27,000.00 – $36,000.00 | 33.10 | $29,726.00 |
| 15 | Secured Creditors Issues /Communications/ Meetings | 450 – 570 | $377,600.00 – $478,200.00 | 484.90 | $406,805.50 |
| 16 | Automatic Stay Issues | 200 – 250 | $182,600.00 – $228,200.00 | 214.90 | $196,110.00 |
| 17 | General Litigation Matters/Adversary Proceedings | 20 – 30 | $14,200.00 – $21,300.00 | 29.00 | $20,566.00 |
| 18 | Tax Issues | 45 – 60 | $47,300.00 – $63,100.00 | 46.60 | $48,951.50 |
| 19 | Labor Issues/Employee Benefits | 50 – 70 | $52,200.00 – $73,000.00 | 56.20 | $58,570.00 |
| 21 | Exclusivity | 75 – 100 | $62,600.00 – $83,400.00 | 35.90 | $29,932.50 |
| 22 | Disclosure Statement/ Solicitation/Plan/ Confirmation | 2,500 – 3,130 | $2,313,100.00 – $2,896,000.00 | 2,260.80 | $2,091,731.00 |

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 23 | Asset Dispositions/363 Asset Sales | 350 – 440 | $325,500.00 – $409,200.00 | 388.80 | $363,294.50 |
| 24 | Real Estate Issues | 25 – 40 | $26,600.00 – $42,500.00 | 18.70 | $19,832.00 |
| 25 | Travel Time | 40 – 50 | $40,700.00 – $50,900.00 | 24.50 | $26,976.50 |
| 28 | General Corporate Matters | 25 – 40 | $20,600.00 – $32,900.00 | 0.00 | $0.00 |
| 29 | Intercompany Claims/ Intercompany Transactions/Cash Management | 5 – 10 | $7,200.00 – $14,400.00 | 1.90 | $2,732.50 |
| 30 | Customer, Supplier, and Vendor Issues (including Critical Vendor issues) | 10 – 20 | $8,300.00 – $16,500.00 | 0.00 | $0.00 |
| 31 | Business Operations | 10 – 20 | $8,300.00 – $16,500.00 | 0.00 | $0.00 |
| **TOTAL** | | **6,860 – 8,690** | **$5,752,600.00 – $7,287,500.00** | **6,989.50** | **$5,741,021.50** |

## **EXHIBIT E**

### **SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount |
|---|---|
| Computerized Legal Research - Lexis - in contract 30% discount | $12,280.96 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $47,026.09 |
| Computerized Legal Research - Courtlink- in contract 50% discount | $794.57 |
| Document Retrieval | $4,173.10 |
| Court Cost | $25.10 |
| Professional Fees - Consultant Fees | $74,491.44 |
| Courier Service/Messenger Service - Off Site | $63.61 |
| Duplication - In House | $4,887.80 |
| Duplication - Off Site | $552.21 |
| Color Copy | $2,380.00 |
| Meals - Overtime | $622.03 |
| Meals - Business | $176.28 |
| Meals (100%) | $10,724.72 |
| Office Supplies - Binding | $19,730.33 |
| Office Supplies | $102.34 |
| Overtime - Admin Staff | $350.30 |
| Professional Fees - Appraisal Fees | $366,959.00 |
| Professional Fees - Legal | $147,598.74 |
| Professional Fees - Misc. | $79,121.87 |
| Research | $50.00 |
| Telephone - Long Distance | $419.00 |

| Disbursement Activity | Amount |
| --- | --- |
| Deposition | $13,106.55 |
| Transcripts | $18,950.55 |
| Travel - Airfare | $2,998.42 |
| Travel - Ground Transportation | $3,164.90 |
| Travel - Lodging (Hotel, Apt, Other) | $1,485.66 |
| Travel - Telephone & Fax | $530.43 |
| Local Transportation - Overtime | $4,794.08 |
| **Total** | **$817,560.08** |

## **EXHIBIT F**

**STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 10 | $1,239.00 |
| Senior Counsel and Counsel | 10 | $954.09 |
| Associate | 20 | $631.11 |
| Paralegals & Non-Legal Staff | 10 | $305.00 |