# Exhibit A[1]

## Excerpts from the Leases and Related Documents

### Temple City Lease

"LEASE, dated as of the 15th day of December, 1977, between EGS OF CALIFORNIA ('Lessor'), a California general partnership having an address c/o Eltinge, Graziadio, & Sampson Development Company, P.O. Box 92959, Los Angeles, California 90009, and K mart ENTERPRISES OF CALIFORNIA, INC. ('Lessee'), a Michigan corporation having an address c/o K mart Corporation, 3100 West Big Beaver, Troy, Michigan 48084."

Article 1 – Lease Property; Term
"SUBJECT, HOWEVER, to (i) the covenants and provisions of an REA (hereinafter referred to), the Parking Agreement, the Maintenance Agreement and (ii) the matters set forth in Schedule A; to have and to hold for (A) an interim term (the 'Interim Term') commencing on the date hereof and ending at midnight on January 1, 1978, and (B) a fixed term of twenty-five (25) years (the 'Fixed Term') commencing on January 2, 1978 and ending at midnight on January 1, 2003, and (C) the renewal terms provided for in Article XXII, unless this Lease is sooner terminated as hereinafter provided."

Article 7.2 – Use of the Leased Property
"Lessee may use the Leased Property for a full-line department store with office space and related facilities or for any other lawful purpose. Lessee agrees that it will not permit any unlawful occupation, business or trade to be conducted on the Leased Property or any use to be made thereof contrary to any Legal Requirements or In-surance Requirements applicable thereto. Lessee shall not use or occupy or permit the Leased Property to be used or occupied, nor do or permit anything to be done in or on the Leased Property or any part thereof, in a manner that may make it impossible to obtain fire or other insurance thereon which Lessee is, or may be, required to furnish hereunder, or that will cause or be likely to cause structural injury to any of the Leased Improvements, or that will constitute a public or private nuisance or waste. Except as provided in Article XI, nothing in this Lease contained and no action or inaction by Lessor shall be deemed or construed to mean that Lessor has granted to Lessee any right, power or permission to do any act or to make any agreement that may create or be the foundation for any right, title, interest, lien, claim or other incumbrance upon the estate of Lessor in the Leased Property."

Article 22 – Renewal Terms
"If no Event of Default shall have occurred that has not been waived, Lessee is hereby granted the right to renew this Lease for seven successive terms of five years each, upon giving written notice to Lessor of one or more of such renewals at least one hundred eighty (180) days prior to the termination of the then current Term. During each such renewal term all of the terms and conditions of this Lease shall continue in full force and effect except that (i) the net annual Basic Rent payable during the first renewal term shall be in an amount equal to the fraction, the numerator of which shall be equal to the product of (a) the annual debt service constant which will fully amortize, on a level payment basis monthly in arrears, a five-year loan at the lowest interest

---

[1]    This exhibit is provided for convenience.  If there is a discrepancy between this exhibit and one of the Leases or related-documents, the lease or related-document governs.

rate then generally available to Guarantor, times (b) the sum of $706,550.68, and the denominator of which shall be the Cost of the Leased Property; provided, however, that such Basic Rent shall not be less than 4% of the Cost of the Leased Property nor be more than 7% of the Cost of the Leased Property, (ii) the net annual Basic Rent for the second through seventh successive renewal term shall be the sum of $141,428 per annum, (iii) the Basic Rent shall be payable during each renewal term hereof in equal, consecutive, monthly installments, in arrears, and (iv) the number of renewal terms permitted hereunder shall be reduced by one upon the expiration of each renewal term for which Lessee has exercised its option."

Article 26.1 – Subletting and Assignment; Attornment
"Lessee shall have the right to sublet the Leased Property or any part thereof or assign or transfer this Lease or any of Lessee's rights or obligations hereunder, pro-vided that (a) in the case of a subletting, the sub-lease shall comply with the provisions of Section 26.2, (b) in the case of an assignment, the assignee shall assume in writing and agree to keep and perform all of the terms of this Lease on the part of Lessee to be kept and performed and shall be, and become, jointly and severally liable with Lessee for the performance thereof, (c) an original counterpart of each such sublease and assignment and assumption, duly exe-cuted by Lessee and such sublessee or assignee, as the case may be, in form and substance satisfactory to Lessor, shall be delivered promptly to Lessor, and (d) in case of either an assignment or sublet-ting, Lessee shall remain primarily liable, as prin-cipal rather than as surety, for the prompt payment of the Rent and for the performance and observance of all of the covenants and conditions to be performed by Lessee hereunder."

**Temple City First Amendment to Lease**
"First Amendment (this 'First Amendment'), dated as of May 29, 1978, between EGS OF CALIFORNIA ('Lessor'), a California general partnership having an address c/o Eltinge, Graziadio & Sampson Development Company, P.O. Box 92959, Los Angeles, California 90009, and K mart ENTERPRISES OF CALIFORNIA, INC. ('Lessee'), a Michigan corporation having an address at 3100 West Big Beaver, Troy, Michigan 48084, to Lease (the 'Lease'), dated as of December 15, 1978."

Article 22
"'Renewal Terms. If no Event of Default -shall-have occurred that has not been waived and Lessor shall have rejected 'Lessee's offer to purchase the Leased Property pursuant to Article XXXVII, Lessee is hereby granted the right to renew this Lease for seven successive terms of five years each, upon giving written notice to Lessor of one or more of such renewals at least one hundred eighty (180) days prior to the termination of the then current Term. During each such renewal term all of the terms and conditions of this Lease shall continue in full force and effect except that (i) the net annual Basic Rent payable during the first renewal term shall be in an amount equal to the product of (a) the annual debt service constant which will fully amortize, on a level payment basis monthly in arrears, a five-year loan at the lowest interest rate then generally available to Guarantor, times (b) the sum of $706,550.68, provided, however, that such Basic Rent shall not be less than 4% of the Cost of the Leased Property nor be more than 7% of the Cost of the Leased Property, (ii) the net annual Basic Rent for the second through seventh successive renewal terms shall be the sum of $141,428 per annum, (iii) the Basic Rent shall be payable during each renewal term hereof in equal, consecutive, monthly installments, in arrears, and (iv) the number of renewal terms

permitted hereunder shall be reduced by one upon the expiration of each renewal term for which Lessee has exercised its option.'"

## Temple City REA
### Section 2 – Use in General
"2.1.   Neither the Shopping Center nor any part of it will be used, and no building or other improvement will be constructed, maintained, or used, for any purposed other than the following: those generally located in similar shopping centers in California.  Such purposes include without limiting the foregoing, food market, retail, offices, and service establishments.   Service establishments include, without limitation, financial institutions, brokerage houses, restaurants, automotive service stations, travel and other agencies.  Such purposes exclude, without limiting the foregoing, automotive sales, display areas, bowling alleys, skating rinks, motion picture theatres, other similar recreational uses, mortuary, commercial laundry plant, transportation depots of any sort, and similar establishments unless specifically approved in writing by the owner of each parcel.  These restrictions are for the sole purpose of maintaining the integrity and adequacy of the Common Area."

### Section 11 – Extent of Agreement and Enforcement
"11.1. Each and all of the foregoing covenants, conditions and restrictions:
a.  Shall apply to and bind the parties hereto as the owners of the Shopping Center, and each and all of the owners of any and all portions of the Shopping Center and each and all of their respective heirs, successors, assigns, grantees, tenants and subtenants, and the grantees, mortgagees, tenants and subtenants of assigns, grantees, successors and heirs.
b.  Are hereby imposed pursuant to a general plan for the improvement and use of the Shopping Center and are designated for the mutual benefit of said owners, tenants and occupants of any and all portions thereof; and
c.  Shall obligate, inure to, and pass with each and every portion of the Shopping Center, and shall remain in full force and effect as hereinafter provided.
d.  In the event of the assignment, transfer or conveyance of the whole of the interest of any person in and to the parcel in which such person has an interest, without retaining any beneficial interest other than under the terms of a deed of trust or mortgage, or without simultaneously acquiring a new interest by way of leasehold, life estate, or other possessory interest, then the powers, rights and interest conferred on such person will be deemed assigned, transferred or conveyed to such transferee, assignee, or grantee, and the obligations will be deemed assumed by such transferee, assignee or grantee with the interest so acquired; and the duties obligations and rights of the person so transferring the interest shall be discharged.
e.  Shall apply to and bind the parties hereto and each and all of the persons enumerated in Section 11.1.a with respect to any interest any one of them may hereafter acquire in Parcels B-6, B-7, or B-8 as shown on Exhibit 'A', and the maximum building area for any such parcels shall be not greater than twenty-eight per cent (28%) of any such after acquired parcel.
f.  Shall apply to and bind the parties hereto and each and all of the persons enumerated in Section 11.1.a with respect to any interest any one of them may hereafter acquire in the Agency Parking Area; and such portions of the Agency Parking Area so acquired shall become a part of the Common Area.  Thereafter, all provisions of this Agreement affecting the Common Areas shall apply to such acquired portions of the Agency Parking Area, and the provisions of this Agreement

affecting the Agency Parking Area shall [illegible] to apply to such acquired portions of the Agency Parking Area.

g.  Shall apply to, benefit, or bind the owner of Parcel B-[illegible] or anyone claiming thereunder, if and only if the then existing owner agrees to be bound by this Agreement and to subject Parcel B-[illegible] to the covenants and restrictions of this Agreement and further agrees to grant the easements hereinafter described.

h.  Shall apply to, benefit, or bind the owner of Parcel B-4 or anyone claiming hereunder, if and only if the then existing owner agrees to be bound by this Agreement and to subject Parcel B-4 to the covenants and restrictions of this Agreement and further agrees to grant the easements hereinafter described."

"11.7.   All of the provisions of this Agreement shall be covenants running with the land pursuant to applicable law, including, but not limited to Section 1468 of the Civil Code of the State of California.  It is expressly agreed that each covenant to do or refrain from doing some act on the Shopping (described in Exhibit 'A' hereto) or any part thereof with respect to each covenantor (a) is for the benefit of the land of each covenantee, as that land is described in Exhibits 'A' and 'B'; and (b) runs with both the land owned by the covenantor and the land owned by each covenantee; and (c) shall benefit or be binding upon such successive owner, during his ownership, of any portion of the land affected hereby and each person having an interest therein derived through any owner of the land affected hereby."

## **Raleigh Lease**
### Parties
"THIS LEASE made and entered into as of this 31st day of July, 1987, between LEADMINE ASSOCIATES I, LTD., a North Carolina limited partnership having its principal office at Bob Hughes Associates, 8865 Six Forks Road, Raleigh, North Carolina 27615 (herein referred to as 'Landlord'), and K MART CORPORATION, a Michigan corporation having its principal office at 3100 West Big Beaver Road, Troy, Michigan 48084 (herein referred to as 'Tenant')."

### Term
"2.  The term of this lease shall commence on the 'date of occupancy by Tenant' as that term is defined in Article 11 hereof, and shall terminate upon such date as shall by Twenty-Five (25) years from the last day of the month in which said date of occupancy by Tenant shall occur; provided, however, the term of this lease may be extended as provided in Article 13 hereof.  The phrase 'lease term', as used in this lease, shall be the term of this lease and any extension thereof pursuant to said Article 13."

### Landlord's Representations and Warranties
"12.  Landlord represents, warrants and covenants that it shall, prior to commencement of the lease term, complete the buildings and site improvements, including Tenant's demised premises as Phase II, substantially in accordance with the site plan depicted on said Exhibit 'B', including completion of said common areas in accordance with the provisions of Article 10 hereof.  Landlord represents, warrants and covenants that there currently is, and will be at time Tenant's lease begins, an existing Phase I portion of the shopping center consisting of approximately 70,000 sq. ft. containing 25,000 sq. ft. Food Lion Market, 9,000 sq. ft. Eckerd drug store, and 36,000 sq. ft. of retail shops; plus a 20,000 sq. ft. 6-Plex theatre.  Further, Landlord is to use its best efforts and will

aggressively pursue Phase III development of 160,000 square feet of additional retail shops and services, including one additional anchor fashion store of approximately 60,000 sq. ft., all to the end that these additional spaces will be complete within approximately one year from Tenant's store opening.  When the shopping center is fully developed it will contain Phase IV of 113,500 sq. ft. of additional retail space, including a third anchor, for a total of 450,000 sq. ft. in the center. Landlord further covenants that it will not erect any buildings or other structures on the land described in Exhibit 'A-1' except as shown on said Exhibit 'B'.

Landlord further represents, warrants and covenants that the land described in Exhibits 'A-1' and 'A-2' will, at the time of the commencement of construction by Landlord and at the time of the commencement of the lease term, be properly zoned for Tenant's intended use, and that all necessary governmental consents, permits and approvals for such use shall have been obtained. Further, Landlord shall deliver to Tenant a Certificate of Occupancy prior to commencement of the lease term.

The lease term shall not commence and said annual minimum rental and other charges payable under this lease shall not commence to accrue until the foregoing representations and warranties shall have been fulfilled; provided, however, in the event that Tenant shall elect to open for business before the Landlord shall have fulfilled the foregoing representations and warranties, the term of this lease shall commence, but Tenant shall not be obligated to pay the annual minimum rental or the additional rental; provided, further, in lieu thereof, Tenant shall pay monthly in arrears one percent (1%) of said gross sales and Tenant shall continue said payment until Landlord's said representations and warranties shall be fulfilled, at which time Tenant shall commence payment of the rental set forth in Articles 3 and 4 hereof.

In the event Landlord's representations and warranties shall not be fulfilled within ninety (90) days after commencement of the lease term, Tenant thereafter shall have the option of either completing said representations and warranties at Landlord's cost and expense, or, alternatively, Tenant shall have an option to terminate this lease by notice to Landlord, which notice shall state an effective date of termination of not less than sixty (60) days from the date of such notice."

Options to Extend Lease
"13.  (a) Tenant shall have ten (10) successive options to extend the term of this lease for an additional period of five (5) years on each such option, such extended to begin respectively upon the expiration of the term of this lease or of this lease as extended and the same terms and conditions as herein set forth shall apply to each such extended term.  If Tenant shall elect to exercise the aforesaid options, it shall do so by giving notice to Landlord not less than six (6) months prior to the expiration of the term of this lease or of this lease as extended."

Use, Assignment and Subletting
"22.  The premises hereby demised may be used for any lawful purpose except as hereinafter limited.  Tenant may assign this lease or sublet the whole or any part of the demised premises but if it dos so, it shall remain liable and responsible under this lease.  Notwithstanding, Tenant may not assign or sublet the whole or any part of the demised premises without Landlord's approval, which approval will not be unreasonably withheld.  The following uses shall be prohibited during the entrie Term of the Lease: Bingo parlor, Bowling alley, Movie theatre, Disco, Bar/Lounge, Auto

sales or use(s), Truck terminal, Lodging facility, Hospital, Nursing home, Distribution center or warehouse (except that any stock area or the storage of goods intended to be sold at any retail establishment or business on the demised premises shall not be deemed a warehouse).  Tenant may not operate a supermarket in the demised premises as long as the present food tenant continues to operate a supermarket in its premises."