# Exhibit A

EXECUTION VERSION

## LEASE SALE AGREEMENT
*Vernon, CA , S #68738*

**THIS LEASE SALE AGREEMENT** ("**Contract**") is made as of July 25, 2019 (the "**Effective Date**"), by and between **SEARS, ROEBUCK AND CO.**, a New York corporation and INNOVEL SOLUTIONS, INC., a Delaware corporation  (collectively "**Seller**" or "**Tenant**") and **Henry Shahery or his assignee,** ("**Purchaser**"; Seller and Purchaser are also collectively referred to in this Contract as the "**Parties**" and individually referred to in this Contract as a "**Party**"). Seller and Purchaser agree as follows:

1.    **PURCHASE AND SALE**

Seller is (i) the tenant under those certain leases for a warehouse and adjacent parking lot which is designated in Seller's accounting system as CA# S68738 more specifically described on the respective leases **Exhibits "A-1"** (the Warehouse) and "A-2" (the Parking Lot) attached hereto and made a part hereof (together with any amendments, modifications, extensions and renewals, the "**Primary Leases**"), with respect to all or a portion of certain real property (the "**Leased Premises**"), which real property is more particularly described in **Exhibits "B-1"** and B-2 attached hereto and made a part hereof (the "**Property**"); and (ii) sublandlords under those certain Subleases, more specifically described on **Exhibits "C-1 and C-2"** attached hereto and made a part hereof (together with any amendments, modifications, extensions and renewals, the "**Subleases**", and together with the Primary Lease, collectively, the "**Leases**").  Subject to the terms and conditions set forth in this Contract, Seller agrees to sell, assign, convey and transfer all of its rights, title and interests as tenant under the Lease to Purchaser and Purchaser agrees to purchase and accept such assignment and assume all rights, title, interests and obligations of Tenant under the Lease at the Purchase Price set forth in Section 2 of this Contract. On the Closing Date set forth in Section 9 of this Contract, Seller shall cause the Lease to be assigned to Purchaser.

2.    **PURCHASE PRICE**

(a)    **Purchase Price.**    The consideration for the assignment of the Lease shall be Five Million Two Hundred Fifty Thousand and No/100 Dollars ($5,250,000.00) (the "**Purchase Price**") and payable by Purchaser in United States dollars in good and certifiable funds at Closing.

(b)    **Options Consideration**.  Purchaser tenders to Seller and Seller acknowledges receipt of the sum of $100.00 as independent and non-refundable contract consideration for any options granted in this Contract.   This independent consideration is in addition to any other deposits made under this Contract, is earned by Seller upon its execution of this Contract, and will not be credited against the Purchase Price.

3.    **EARNEST MONEY DEPOSIT**

Within two (2) business days of the Effective Date, Purchaser shall deposit with Chicago Title Insurance Company, 10 South LaSalle Street, Suite 3100, Chicago, Illinois 60603

Attention: Cheri L. Sutton, Telephone: (312) 223-2958, Fax: (312) 223-5801, Email: Cheri.Sutton@ctt.com ("**Escrow Agent**") the sum of One Million and No/100 Dollars ($1,000,000.00) United States dollars (the "**Earnest Money Deposit**") by means of a certified check, cashier's check or wire transfer, to be held by the Escrow Agent in an interest bearing account in accordance with the terms of the strict joint order escrow instructions executed by the Parties attached hereto as **Exhibit "D"** and incorporated into this Contract by this reference (the "**Earnest Money Escrow Instructions**") and also the terms and conditions of this Contract. Any escrow fees as set forth in the Earnest Money Escrow Instructions will be paid by Purchaser. Purchaser may elect to direct the Escrow Agent to invest the Earnest Money Deposit on its behalf in compliance with the Escrow Agent's standard investment instructions, and Purchaser agrees that it shall be solely responsible for any investment fees charged by the Escrow Agent. Subject to the terms and conditions as otherwise set forth in this Contract, any and all interest accrued on the Earnest Money Deposit shall be paid to Purchaser at Closing. The Earnest Money Deposit shall be credited against the Purchase Price at the time of Closing, and Purchaser agrees to pay or satisfy the balance of the Purchase Price, plus or minus prorations, no later than 11:00 am (Chicago time) on the Closing Date, by wire transfer of immediately available funds. If Purchaser shall fail to deposit the Earnest Money Deposit within the time period provided for above, Seller may at any time prior to the deposit of the Earnest Money Deposit, terminate this Contract, in which case this Contract shall be null and void ab initio and neither Party shall have any further rights or obligations to the other hereunder, except as otherwise expressly set forth in this Contract.

4.     **INTENTIONALLY OMITTED.**


5.     **PRORATIONS AND EXPENSES**

   (a)     **Prorations.**     Rent payable under the Primary Leases and Rent received by Seller under the Subleases, any funds remaining in the construction escrow maintained by Seller, any security deposits paid to Seller under the Subleases and which are in the possession of Seller, and all taxes including state property taxes and City of Vernon Parcel Taxes shall be apportioned *pro rata* on a per diem basis as of the Closing Date. Other than rent, there will be no prorations between Seller and Purchaser on the Closing Date, and no post-assignment reconciliations or adjustments of any kind shall occur.    Purchaser shall receive the benefits and burdens for all adjustments under the Lease that occur after the Closing Date (regardless of the period in question that is subject to the adjustment), including year-end adjustments for taxes, fees, any common area maintenance charges, and percentage rent for calendar year 2018 and thereafter and Purchaser shall fully indemnify and hold harmless Seller with respect thereto.

   (b)     **Closing-related Costs.**  At Closing, Purchaser shall pay the cost of the Closing Escrow. Except as otherwise provided for in this Contract, the Parties shall each be solely responsible for the fees and disbursements of their respective counsel and

other professional advisors.  The obligations under this <u>Section 5</u> shall survive the Closing.

6.    **ASSIGNMENT AND ASSUMPTION**

As of the Closing Date, pursuant to sections 363 and 365 of the Bankruptcy Code and in accordance with the Approval Order, Tenant shall grant, transfer and assign to Purchaser, without representation or warranty of any kind, all of its right, title, and interest in and to the Leases.  On and after the Closing Date, Purchaser shall assume all of the covenants, agreements, and obligations of Tenant as tenant and Sub-Landlord under the Leases.  In further consideration of the above assignment, Purchaser hereby agrees that it shall, as of the Closing Date: (a) perform all of the covenants, conditions and agreements of the Leases (including making all payments) as if Purchaser were the original tenant under the Lease and (b) that the Leases shall remain in full force and effect.  As of the Closing Date, Seller shall have no further liabilities or obligations with respect to the Leases, including, but not limited to, obligations related to rents, utilities, taxes, insurance and common area maintenance, regardless of when due and payable, and Seller shall be released from all such obligations and Purchaser shall fully indemnify and hold harmless Seller with respect thereto. The provisions of this <u>Section 6</u> shall survive the Closing.

7.    **FREE AND CLEAR OF ALL LIENS**

Subject to and in accordance with the Approval Order, Seller shall convey its rights and interests under the Lease to Purchaser free and clear of all liens, claims, interests, or encumbrances (collectively, "**Liens**"), if any, with any such Liens attaching to the proceeds paid to Seller.

8.    **CONDITIONS TO CLOSING**

(a)    **Conditions to Seller's Obligation to Close.** In addition to any other conditions and/or contingencies set forth in this Contract, Seller's obligation to close the transactions contemplated by this Contract is subject to each and all of the following conditions precedent (or express written waiver thereof by Seller):

(i)    All of Purchaser's representations and warranties contained in this Contract shall be true and correct as of the Closing in all material respects; and

(ii)    All obligations of Purchaser that were to have been performed on or before the Closing Date have been timely and duly performed in all material respects.

(b)    **Conditions to Purchaser's Obligation to Close**.  In addition to any other conditions and/or contingencies set forth in this Contract, Purchaser's obligation to close the transactions contemplated by this Contract is subject to each and all of the following conditions precedent (or express written waiver thereof by Purchaser):

(i)     All of Seller's representations contained in this Contract shall be true and correct as of the Closing in all material respects; and

(ii)     All obligations of Seller that were to have been performed on or before the Closing Date have been timely and duly performed in all material respects including without limitation the payment of all amounts due under the Primary Leases and the payment of all taxes of any kind due up to and including the Closing Date.

(c)     **Conditions to Closing of Both Parties**: In addition to any other conditions and/or contingencies set forth in this Contract, the Parties' obligation to close on the transactions contemplated by this Contract is subject to entry by the Bankruptcy Court of an order, in form and substance acceptable to Seller, in its sole discretion, that authorizes Seller to assume the Lease and assign it to the Purchaser in accordance with section 365 of the Bankruptcy Code (the "**Approval Order**"). The Approval Order shall provide that the provisions of the Leases are assigned to Purchaser, including without limitation, any options to renew the Leases.

## 9.    CLOSING

(a)     **Closing Date**. Provided all conditions and/or contingencies to Closing described in this Contract have been fulfilled or waived, the Closing (the "**Closing**") shall take place at the office of the Escrow Agent within two (2) business days of entry of the Approval Order, or such later date as reasonably requested by Seller (the "**Closing Date**").

(b)     **Seller Closing Deliverables**. On or before the Closing Date, Seller shall deliver or use commercially reasonable efforts to cause to be delivered to the Escrow Agent the following Closing documents:

(i)     An Assignment and Assumption of Lease (the "**Assignment and Assumption**") in the form attached hereto as **Exhibit "E"**;

(ii)     A FIRPTA Affidavit in customary form duly executed by Seller;

(iii)     A file-stamped copy of the Approval Order; and

(iv)     Notice to both landlords in the form attached hereto as **Exhibit "F"** (the "**Landlord Notice**").

(c)     **Purchaser Closing Deliverables.** No later than 11:00 am (Chicago time) on the Closing Date, Purchaser shall deliver or cause to be delivered to the Escrow Agent the following for Closing:

(i)     The full amount of the Purchase Price, as adjusted by prorations and credits, in immediately available federal funds wire transferred to Escrow Agent's

account and deliver to Escrow Agent instructions to immediately release the
full amount to Seller;

(ii)    A fully executed counterpart of the Assignment and Assumption; and

(iii)    An executed copy of all such other documents, certificates, instruments,
affidavits and transfer tax returns as may be required in the State to record
the Assignment and Assumption and effectuate the transactions
contemplated herein.

(d)    On or before the Closing Date, Seller and Purchaser shall jointly execute and
deliver or cause to be executed and delivered a closing proration statement and
State, county and municipal transfer tax declarations, in each case duly approved
by Seller and Purchaser, which approval by both parties shall not be unreasonably
withheld or conditioned, and all other documents required by the Escrow Agent in
order to consummate the Closing as contemplated in this Contract.

## 10.    **CLOSING ESCROW**

The Closing shall take place through a deed and money escrow at the Escrow Agent in
accordance with the standard deed and money escrow agreement utilized by the Escrow
Agent ("**Closing Escrow**") to be opened with the Escrow Agent on or before the Closing
Date, with such special provisions inserted in the Closing Escrow as may be required to
conform to this Contract; provided, however, in the event of a conflict between the terms
of this Contract and the Closing Escrow, the terms of this Contract shall control. All
documents required to be provided by Purchaser and Seller pursuant to this Contract and
otherwise appropriate to consummate the transactions contemplated by this Contract shall
be delivered to the Escrow Agent, as closing agent, on or before Closing. Notwithstanding
the foregoing, the Parties agree that the Closing may be set up remotely and/or in a manner
so that the Parties and their respective attorneys, or any of them, need not be physically
present and may deliver all necessary documents by overnight mail or other means, in
which event the Parties agree to complete all arrangements for Closing not later than the
Closing Date so that all requirements, with the exception of the Purchase Price, for Closing
are in place by the scheduled time for the Closing.

## 11.    **DUE DILIGENCE PERIOD**

(a)    **Access**.    Purchaser is presently in possession of the Property as the Subtenant
under the Subleases.

(b)    **Due Diligence Period**. Purchaser shall not have a Due Diligence Period.

(c)    **Survival of Purchaser's Obligations**. Notwithstanding anything to the contrary
herein, any and all obligations, commitments, and indemnifications by Purchaser
and the Purchaser Entities specified in this Section 11 and otherwise set forth in the
Access Agreement shall survive the expiration or termination of this Contract (and

the Access Agreement) and the delivery of the Deed without the further need to document such agreement.

(d)    All of Seller's service contracts on the Property are national contracts and will not be assigned to or assumed by Purchaser, and Seller will cause the Property to be released from such service contracts on or prior to the Closing Date.

(e)    Purchaser acknowledges that, prior to the Effective Date, Seller has provided Purchaser with electronic access to the "Potential Purchaser Diligence Documents" in Seller's electronic online data room for the Property (as the same may be updated from time-to-time). Such electronic access to the "Potential Purchaser Diligence Documents" as provided herein shall be deemed to satisfy any and all notice requirements as set forth in Section 16 hereof.

In the event this Contract is terminated, all materials provided by or on behalf of Seller to Purchaser (the "**Due Diligence Materials**") shall be promptly returned by Purchaser to Seller at no cost to Seller. SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, REGARDING (i) THE TRUTH, ACCURACY OR COMPLETENESS OF ANY OF THE DUE DILIGENCE MATERIALS, (ii) THE QUALIFICATIONS OF THE PERSONS PREPARING THE SAME, (iii) ANY DATA OR INFORMATION DELIVERED BY SELLER OR THE SOURCES THEREOF, (iv) WHETHER ANY OF THE DUE DILIGENCE MATERIALS REPRESENT ALL OF THE NECESSARY OR RELEVANT INFORMATION RELATING TO THE PROPERTY, OR (v) THE ENFORCEABILITY OR VALIDITY OF ANY OF THE DUE DILIGENCE MATERIALS. PURCHASER ACKNOWLEDGES AND AGREES THAT THE DUE DILIGENCE MATERIALS ARE PROVIDED TO PURCHASER AS A CONVENIENCE ONLY AND THAT ANY RELIANCE ON OR USE OF THE DUE DILIGENCE MATERIALS SHALL BE AT THE SOLE RISK OF PURCHASER AND WITHOUT ANY REPRESENTATIONS, WARRANTIES, OR GUARANTIES OF SELLER OR THE INDEMNIFIED PARTIES, AND PURCHASER SHALL NOT HAVE ANY RIGHT TO RELY ON ANY SUCH DUE DILIGENCE MATERIALS, BUT RATHER WILL RELY ON ITS OWN DUE DILIGENCE, INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AND ANY REPORTS COMMISSIONED BY PURCHASER WITH RESPECT THERETO. NEITHER SELLER, NOR ANY AFFILIATE OF SELLER, NOR THE PERSON OR ENTITY WHICH PREPARED ANY OF THE DUE DILIGENCE MATERIALS SHALL HAVE ANY LIABILITY TO PURCHASER FOR ANY INACCURACY, OR OMISSION, IN ANY OF THE DUE DILIGENCE MATERIALS. THE FAILURE TO DELIVER ANY REPORT, FINDINGS, RESULTS, FACTS, INFORMATION, OR DUE DILIGENCE MATERIALS SHALL NOT BE ACTIONABLE BY PURCHASER AND SELLER SHALL HAVE NO LIABILITY IN CONNECTION THEREWITH. PURCHASER ACKNOWLEDGES THAT THE DUE DILIGENCE MATERIALS PROVIDED BY SELLER MAY NOT NECESSARILY REPRESENT ALL OF THE DOCUMENTATION AND INFORMATION IN EXISTENCE (OR IN SELLER'S POSSESSION OR CONTROL) WITH

RESPECT TO THE PROPERTY, BUT, RATHER, REPRESENTS DOCUMENTATION MADE AVAILABLE BY SELLER AS A CONVENIENCE FOR PURCHASER. PURCHASER ACKNOWLEDGES AND AGREES THAT THE DUE DILIGENCE MATERIALS MAY HAVE BEEN OBTAINED BY SELLER FROM A VARIETY OF SOURCES, AND THAT SELLER HAS NOT MADE (AND IS UNDER NO DUTY TO MAKE) ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF ANY DUE DILIGENCE MATERIALS. PURCHASER WAIVES, RELEASES AND FORFEITS ANY AND ALL CLAIMS OF ANY KIND WHATSOEVER AGAINST SELLER, THE INDEMNIFIED PARTIES, OR THIRD PARTIES ARISING OUT OF PURCHASER'S USE OF THE DUE DILIGENCE MATERIALS. THIS SECTION 11(f) SHALL SURVIVE THE CLOSING OR EARLIER TERMINATION OF THIS CONTRACT.

12.     **REPRESENTATIONS AND WARRANTIES**

(a)     **Seller Representations**.     Seller represents to Purchaser that as of the date hereof and as of the Closing Date:

    (i)     Subject to Section 8(c) of this Contract, Seller has, or will have by the Closing Date, full capacity, right, power and authority to execute, deliver and perform this Contract and all documents to be executed by Seller pursuant hereto, and all required action and approvals therefor have been duly taken and obtained. The individuals signing this Contract and all other documents executed or to be executed pursuant hereto on behalf of Seller are and shall be duly authorized to sign the same on Seller's behalf and to bind Seller thereto, subject to Section 8(c) of this Contract.

(b)     **Purchaser Representations.** Purchaser represents and warrants to Seller that as of the date hereof and as of the Closing Date:

    (i)     Purchaser has full capacity, right, power and authority to execute, deliver and perform this Contract and all documents to be executed by Purchaser pursuant hereto, and all required action and approvals therefor have been duly taken and obtained. Neither the execution of this Contract nor the performance of Purchaser's obligations hereunder will conflict with, or with or without notice or the passage of time or both, result in a breach of, violate any term or provision of, or constitute a default under any of Purchaser's organizational documents. The individuals signing this Contract and all other documents executed or to be executed pursuant hereto on behalf of Purchaser are and shall be duly authorized to sign the same on Purchaser's behalf and to bind Purchaser thereto.

(ii)     Purchaser is not in default under any agreement or instrument where the liability thereunder might adversely affect Purchaser's ability to perform its obligations under this Contract.

(iii)    This Contract and all documents required hereby to be executed by Purchaser hereunder are and shall be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms.

(iv)    As of the Closing Date, Purchaser shall not have commenced, within the meaning of Title 11 of the United States Code, or any similar state law for the relief of debtors ("**Bankruptcy Law**") a voluntary case, nor shall there have been commenced against Purchaser an involuntary case, nor shall Purchaser have consented to the appointment of a receiver, trustee, assignee, liquidator or similar official under any Bankruptcy Law (a "**Custodian**") of it or for all or any part of its property, nor shall a court of competent jurisdiction have entered an order or decree under any Bankruptcy Law that is for relief against Purchaser in an involuntary case or appoints a Custodian of Purchaser for all or any part of its property.

The continued validity in all material respects of all representations and warranties of Seller and all representations and warranties of Purchaser set forth in this Contract shall be conditions precedent to the performance of Seller's and Purchaser's respective obligations hereunder. All representations and warranties of Seller and all representations and warranties of Purchaser set forth in this Contract shall be continuing and shall be true and correct on and as of the Closing Date in all material respects with the same force and effect as if made at that time. Further, all representations and warranties of Seller and all representations and warranties of Purchaser set forth in this Section 12 shall merge with the transfer of title and shall not survive Closing. If the Closing takes place, Seller shall have no liability with respect to any claim which Purchaser may have against Seller for a breach of any such representation or warranty, whether such breach is known or unknown.

13.    **AS IS/NO WARRANTIES**

(a)    **As-Is Condition.**    Purchaser acknowledges that it has fully inspected or waived the right to inspect the Leased Premises prior to the execution of this Contract and does hereby assume all of the risks, including, but not limited to, latent defects in the Leased Premises. Seller shall deliver the Leased Premises in "broom-clean" condition, but shall not be obligated to do any work or alter, restore, repair or develop the Leased Premises, and has no obligation to remove its exterior signs, inventory, trade fixtures, equipment and other personal property (the "**Personal Property**"). Any Personal Property left in the Leased Premises after the Closing Date shall be deemed abandoned by Seller and Seller shall have no liability with respect thereto and Purchaser may dispose of and/or demolish any such Personal Property, without compensation to Seller; in this regard, Seller hereby waives any statutory or common law rights that would prevent Purchaser from demolishing or removing any such Personal Property from the Leased Premises after the Closing

Date. Any work (including demolition) which may be necessary to adapt the Leased Premises for Purchaser's occupancy or for the operation of Purchaser's business therein shall be the sole responsibility of Purchaser and shall be performed by Purchaser at its sole cost and expense, in accordance with the terms of the Lease. Purchaser expressly acknowledges that Purchaser taking assignment of the Lease in an "AS IS" "WHERE IS" "WITH ALL FAULTS CONDITION" with regard to all aspects of the Property without warranty or representation of any kind by Seller or any of Seller's managers, members, officers, directors, employees, partners, agents, representatives, beneficiaries, attorneys, subsidiaries, Affiliates, contractors subcontractors, successors and assigns ( the "**Indemnified Parties**"), including specifically and without limitation, any warranty or representation as to the presence or absence of any Hazardous Materials. As used in this Contract, the term "**Hazardous Material(s)**" shall mean asbestos, petroleum, polychlorinated biphenyl and any other materials defined as a hazardous substance, hazardous waste, hazardous constituents or solid waste in (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9601 et seq., and any amendments thereto and regulations thereunder, (b) the Resource Conservation and Recovery Act, 42 U.S.C. §6901 et seq., and any amendments thereto and regulations thereunder, (c) Section 311 of the Federal Water Pollution Control Act, 33 U.S.C. §1251 et seq. (33 U.S.C. §1321), and (d) any federal, state or local law, statute, ordinance or regulation. Purchaser, hereby agrees to release, defend, hold harmless and indemnify Seller and the Indemnified Parties with regard to any demand, claim, liability, loss or damage, including reasonable attorneys' fees and costs, arising from (x) any Hazardous Materials currently located or which come to be located upon the Property or the release of any Hazardous Materials into, from or through the Property (except to the extent the presence or release thereof was directly caused by the affirmative acts of Seller, its employees, agents or contractors from and after the Effective Date) or (y) any Hazardous Materials which have migrated, leached, or traveled onto or off of the Property, from any source.

(b)    **No Warranties, Representations**.    Purchaser warrants, acknowledges to, and agrees with Seller that Purchaser is accepting assignment of the Lease in "AS IS" "WHERE IS" "WITH ALL FAULTS CONDITION", and specifically and expressly without any warranties, representations or guarantees, either express or implied, of any kind, nature, or type whatsoever from, or on behalf of, Seller. Purchaser acknowledges that Purchaser's agreement hereunder to accept assignment of the Lease in its "AS IS" "WHERE IS" "WITH ALL FAULTS CONDITION" was bargained for in the Purchase Price.    Without in any way limiting the generality of the immediately preceding sentences, Purchaser and Seller further acknowledge and agree that in entering into this Contract and closing the transactions hereunder, except as otherwise provided for in the representations and warranties in Section 12 of this Contract:

SELLER MAKES NO REPRESENTATIONS, WARRANTIES, OR GUARANTEES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT

TO: ANY MATTER RELATED TO THE LEASE OR THE LEASED PREMISES (INCLUDING, WITHOUT LIMITATION, INCOME TO BE DERIVED FROM OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE LEASED PREMISES; THE PHYSICAL CONDITION OF THE LEASED PREMISES; THE PRESENCE OR ABSENCE OF ANY HAZARDOUS MATERIALS IN, ON OR ABOUT THE LEASED PREMISES OR ANY OTHER MATTER RELATED TO THE ENVIRONMENTAL CONDITION OF THE LEASED PREMISES; THE ZONING OF THE LEASED PREMISES; THE POSSIBILITY OF DEVELOPING OR USING THE LEASED PREMISES IN THE MANNER CONTEMPLATED BY PURCHASER OR OBTAINING ANY CONSENTS, APPROVALS, PERMITS, AUTHORIZATIONS OR ENTITLEMENTS IN CONNECTION THEREWITH; THE VALUE OF THE LEASE OR THE LEASED PREMISES; THE FITNESS OF THE LEASED PREMISES, FOR ANY PARTICULAR PURPOSE OR USE; THE ACCURACY, COMPLETENESS, OWNERSHIP OR TRANSFERABILITY OF ANY DOCUMENTS OR OTHER MATERIALS FURNISHED TO PURCHASER WITH RESPECT TO THE LEASED PREMISES (OR ANY PORTION THEREOF); OR ANY OTHER MATTER OR THING RELATED TO THE LEASE OR THE LEASED PREMISES). PURCHASER ACKNOWLEDGES THAT PURCHASER HAS NOT RELIED, AND IS NOT RELYING, UPON ANY INFORMATION, DOCUMENT, SALES BROCHURES OR OTHER LITERATURE, MAPS OR SKETCHES, PROJECTIONS, PRO FORMAS, STATEMENTS, REPRESENTATIONS, GUARANTEES OR WARRANTIES (WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, OR MATERIAL OR IMMATERIAL) THAT MAY HAVE BEEN GIVEN BY OR MADE BY OR ON BEHALF OF SELLER. PURCHASER ALSO ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED OR WAIVED THE RIGHT TO CONDUCT AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE LEASED PREMISES AND ALL SUCH OTHER MATTERS RELATED TO OR AFFECTING THE LEASED PREMISES AND/OR THE LEASE, AS PURCHASER DEEMED NECESSARY OR APPROPRIATE AND PURCHASER IS ACQUIRING THE LEASE AND THE LEASED PREMISES, BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS OR PURCHASER'S INDEPENDENT JUDGMENT, AND PURCHASER IS NOT RELYING UPON ANY REPRESENTATIONS OF SELLER OR SELLER'S AGENTS. ACCORDINGLY, PURCHASER HEREBY ACCEPTS THE LEASED PREMISES IN ITS "AS IS, WHERE IS," "WITH ALL FAULTS," CONDITION AND ALL LATENT OR PATENT DEFECTS, INCLUDING WITHOUT LIMITATION, ANY DEFECTS OR DAMAGE TO THE ROOF OF THE LEASED PREMISES.

(c)   **WAIVER/RELEASE OF PURCHASER CLAIMS**.   WITHOUT IN ANY WAY LIMITING THE GENERALITY OF THE PRECEDING SUBSECTIONS 13(a) AND 13(b), PURCHASER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES, RELEASES AND DISCHARGES ANY

CLAIM IT HAS, MIGHT HAVE HAD, OR MAY HAVE, AGAINST THE SELLER AND THE INDEMNIFIED PARTIES, WHETHER KNOWN OR UNKNOWN, ACTUAL OR CONTINGENT, FORSEEN OR UNFORSEEN, RELATING TO, ARISING OUT OF OR WITH RESPECT TO (i) THE CONDITION OF THE LEASED PREMISES, EITHER PATENT OR LATENT, (ii) PURCHASER'S ABILITY, OR INABILITY, TO OBTAIN OR MAINTAIN TEMPORARY OR FINAL CERTIFICATES OF OCCUPANCY, PERMITS OR OTHER LICENSES FOR THE USE OR OPERATION OF THE LEASED PREMISES, AND/OR CERTIFICATES OF COMPLIANCE FOR THE LEASED PREMISES, (iii) THE ACTUAL OR POTENTIAL INCOME, OR PROFITS, TO BE DERIVED FROM THE LEASED PREMISES, (iv) THE REAL ESTATE, OR OTHER, TAXES OR SPECIAL ASSESSMENTS, NOW OR HEREAFTER PAYABLE ON ACCOUNT OF, OR WITH RESPECT TO, THE LEASED PREMISES, OR (v) ANY OTHER MATTER RELATING TO THE LEASED PREMISES.

(d)     **No Representations as to Condition/Full Investigation**.  Except as expressly set forth in this Contract, no representations or warranties have been made or are made and no responsibility has been or is assumed by Seller or any of the Indemnified Parties as to the condition or repair of the Leased Premises or the value, expense of operation, or income potential thereof or as to any other fact or condition which has or might affect the Leased Premises or the condition, repair, value, expense of operation or income potential of the Leased Premises or any portion thereof. The Parties agree that all understandings and contracts heretofore made between them or their respective agents or representatives are merged in this Contract and the Exhibits hereto annexed, which alone fully and completely express their Contract, and that this Contract has been entered into after full investigation, or with the Parties satisfied with the opportunity afforded for investigation, neither Party relying upon any statement or representation by the other unless such statement or representation is specifically embodied in this Contract or the Exhibits annexed hereto.  Purchaser acknowledges that Seller has requested that Purchaser inspect the Leased Premises fully and carefully and investigate all matters relevant thereto and that Purchaser rely solely upon the results of Purchaser's own inspections or other information obtained or otherwise available to Purchaser, rather than any information that may have been provided by Seller to Purchaser.

14.   **NON-FOREIGN SELLER CERTIFICATION**

Seller represents that Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code of 1986, as amended (the "**Code**"), and the regulations promulgated thereunder, and is therefore exempt from the withholding requirements of said Section. At Closing, Seller will deliver to Purchaser the certification set forth in Section 1445 of the Code and regulations.

15.   **DEFAULT AND REMEDIES**

(a)   **Termination Events:**

(i)   <u>Termination by Either Party</u>:  Notwithstanding anything to the contrary set forth herein, this Contract may be terminated at any time prior to the Closing Date by either Party if the Bankruptcy Court fails to issue the Approval Order by September 30, 2019,  provided, however, that the right to terminate this Contract pursuant to this <u>Section 15(a)</u> shall not be available to any party whose breach of any of its representations, warranties, covenants or agreements contained herein results in such ruling or order.

(ii)   <u>Termination by Purchaser.</u> If Seller fails or refuses to comply with the terms of this Contract within fifteen (15) days of receipt by Seller of written notice of such default from Purchaser (excluding any default by Purchaser and Purchaser's failure to diligently complete or cure the same), Purchaser shall have as its sole and exclusive remedy the right to terminate the Contract, in which event Purchaser shall be entitled to the prompt return of the Earnest Money Deposit and all accrued interest thereon in full satisfaction of all damages suffered by Purchaser by reason of Seller's default and the Contract shall be terminated and of no further force or effect except as provided for in this Contract.  Notwithstanding the foregoing, in the event that Seller assigns the Leases to a party other than Purchaser as a result of its fiduciary obligation, within 10 business days after the Closing Date, Seller shall request the approval of the Bankruptcy Court for the payment of $100,000 to Purchaser as a break-up fee.

(iii)   <u>Termination by Seller.</u> If Purchaser fails or refuses to comply with the terms of this Contract within fifteen (15) days of receipt by Purchaser of notice of such default from Seller (excluding any default by Seller of Seller's failure to diligently complete or cure the same), and Seller's sole remedy shall be to terminate this Contract, in which event Seller shall be entitled to receive the Earnest Money Deposit as liquidated damages in lieu of all other remedies available to Seller and this Contract shall terminate with neither Party having any further rights or liabilities hereunder, except as those specifically provided to survive the termination of this Contract; provided, however, that this <u>Section 15(a)(iii)</u> shall not limit Seller's claims pursuant to any of Purchaser's indemnification obligations in this Contract. Seller and Purchaser acknowledge and agree that: (i) it would be extremely difficult to accurately determine the amount of damages suffered by Seller as a result of Purchaser's default hereunder; (ii) the Earnest Money Deposit is a fair and reasonable amount to be retained by Seller as agreed and liquidated damages for Purchaser's default under this Contract; and (iii) retention by Seller of the Earnest Money Deposit upon Purchaser's default hereunder shall not constitute a penalty or forfeiture.

(b)   **Effect of Termination.**      In the event of a termination of this Contract pursuant to this <u>Section 15</u> (other than a termination of this Contract pursuant to <u>Section 15(a)(iii)</u>), Seller and Purchaser shall instruct the Escrow Agent to, and the Escrow

Agent shall, promptly (but in any event within two (2) Business Days of such instruction) return to Purchaser the Earnest Money Deposit by wire transfer of immediately available funds and the return thereof shall constitute the sole and exclusive remedy of Purchaser in the event of a termination hereunder.

16.    **NOTICES**

Any notice which either Party desires or is required to give hereunder shall be in writing and effective and deemed properly served when hand delivered, provided that the addressee of such notices signs an acknowledgement of receipt of such notice, or if deposited with the United States Postal Service, as registered or certified mail, return receipt requested, bearing adequate postage or being deposited with a reputable overnight courier service for guaranteed next day delivery with required signature acknowledgement of receipt to the Parties at the following addresses:

| | |
|---|---|
| To Seller: | **Sears, Roebuck & Co.**<br>3333 Beverly Road<br>Hoffman Estates, Illinois 60179<br>Attn: President, Real Estate<br>Department 824RE |
| With copies to: | **Weil, Gotshal & Manges LLP**<br>767 Fifth Avenue<br>New York, New York 10153<br>Attn: W. Michael Bond, Esq.<br>Phone: (212) 310-8035<br>E-mail: Michael.Bond@weil.com |
| To Purchaser: | Mr. Henry Shahery<br>9777 Wilshire Blvd., Suite 470 Beverly Hills, Ca 90212<br>Tel. (424) 343-0371 Ext 220<br>Fax (424) 343-0379<br>E-Mail henry@hshmanagement.net |
| With copies to: | Law Offices of Saul Reiss<br>2800 28th Street, Suite 328<br>Santa Monica, CA 90405-6201<br>Phone:310-450-2888 _____<br>E-mail: saulreiss@verizon.net |

Notice of change of address for receipt of notices shall be sent in the manner set forth in this Section 16.

17.    **ENTIRE CONTRACT, AMENDMENTS AND WAIVERS**

This Contract contains the entire agreement and understanding of the Parties with respect to the subject matter hereof, and the same may not be amended, modified or discharged

nor may any of its terms be waived except by an instrument in writing signed by the Party to be bound thereby.

18. **FURTHER ASSURANCES**

The Parties each agree to do, execute, acknowledge and deliver all such further acts, instruments and assurances and to take all such further action before or after the Closing as shall be necessary or desirable to fully carry out this Contract and to fully consummate and effect the transaction contemplated hereby.

19. **SURVIVAL AND BENEFIT**

Except to the extent specifically stated to the contrary elsewhere in this Contract, all representations, warranties, agreements and obligations of the Parties contained in this Contract shall be merged with the Assignment and Assumption at Closing. Wherever in this Contract there is a reference to termination of this Contract, such termination shall not be construed to terminate the obligations of the Parties with respect to any representations, warranties and obligations of the Parties contained in this Contract which by their terms to the extent specifically stated in this Contract shall survive termination of this Contract.

20. **CONFIDENTIALITY**

Without limiting the terms of any other confidentiality agreements entered into by or between Purchaser and Seller (or any of Seller's Affiliates), if any, Purchaser agrees that (i) the results of all inspections, analyses, studies, and similar reports relating to the Leased Premises prepared by, for, or on behalf of Purchaser on, after or before the Effective Date, (ii) all terms of this Contract and any and all drafts of this Contract, if any, and all documents and instruments executed in connection therewith, (iii) all information or materials provided to or obtained (from whatever source) by Purchaser on, after or before the Effective Date, whether written or oral, in any way related to or pertaining to Seller, Seller's Affiliates, and/or the Leased Premises, (iv) any other electronic files and other documents in Seller's electronic online data room, and (v) all information regarding the Leased Premises of whatsoever nature, whether written or oral, and regardless of when obtained (collectively, the "**Confidential Information**") is strictly confidential, shall remain confidential and shall not be disclosed to any Person by Purchaser or the Purchaser Entities without the prior written consent of Seller, which consent may be withheld, conditioned, or delayed in Seller's sole and absolute discretion, including, but not limited to, any federal, state and/or local governmental entity, except that Purchaser may disclose the Confidential Information without Seller's prior written consent to Purchaser's respective officers, Affiliates, and advisors (including, without limitation, attorneys, accountants, consultants and financial advisors) (collectively, the "**Permitted Parties**") so long as Purchaser informs the Permitted Parties of the confidential nature of the Confidential Information and directs the Permitted Parties to treat the Confidential Information confidentially in accordance with the terms of this Section 20. Without limiting the foregoing, Purchaser agrees and acknowledges that no copies, summaries, abstracts or other reproductions of the Confidential Information, as applicable, shall be provided or disclosed by Purchaser, the Purchaser Entities, or the Permitted Parties to any

Person not subject to the same confidentiality obligation as Purchaser, the Purchaser Entities, or the Permitted Parties. If Purchaser, the Purchaser Entities, or the Permitted Parties breach (or threaten the breach of) the terms of this <u>Section 20</u>, Purchaser acknowledges and agrees that (a) Purchaser shall be liable and responsible for any breach of this Contract by any of the Purchaser Entities or Permitted Parties, and (b) Seller will be irreparably harmed, but that Seller's damages are difficult to calculate and, therefore, Seller shall be entitled to pursue an action for equitable relief, including, but not limited to, temporary or permanent injunctions, against any actual or threatened breach of the terms of this <u>Section 20</u>, in addition to all other rights and remedies available at law or in equity. Notwithstanding the foregoing, the Parties agree that the term "Confidential Information" shall not include any material or information that (1) is or becomes generally available to the public other than as a direct or indirect result of a disclosure of any such information by Purchaser, the Purchaser Entities, or the Permitted Parties, (2) becomes available to Purchaser, the Purchaser Entities, or the Permitted Parties on a non-confidential basis from a source other than Seller or any of the Indemnified Parties and the source of such information was not bound by any contractual or other obligation of confidentiality to Seller or to any other Person with respect to any of such information, or (3) any information that is developed by or on behalf of Purchaser independently of the disclosure of Confidential Information and without reference to or use of the Confidential Information. Purchaser acknowledges that Seller may file this Contract and any related matters with the Bankruptcy Court and thus make this Contract publicly available. The terms of this <u>Section 20</u> shall survive termination of this Contract.

21. **<u>BROKERAGE</u>**

Except for Jones Lang LaSalle Americas, Inc. ("**<u>JLL</u>**") representing the Seller ("**<u>Seller's Broker</u>**"), each party hereto represents and warrants to the other that it has dealt with no other brokers or finders in connection with this transaction.

Seller hereby indemnifies, protects and defends and holds Purchaser harmless from and against all losses, claims, costs, expenses, damages (including, but not limited to, attorneys' fees of counsel selected by the Purchaser) resulting from the claims of any broker (including the Seller's Broker), finder, or other such party claiming by, through or under the acts or agreements of Seller or Seller's Broker. Purchaser hereby indemnifies, protects and defends and holds Seller and JLL harmless from and against all losses, claims, costs, expenses, damages (including, but not limited to, attorneys' fees of counsel selected by the Seller) resulting from the claims of any broker, finder, or other such party claiming by, through or under the acts or agreements of Purchaser.

Any commission or other compensation due the Seller's Broker shall be the responsibility of the Seller and same shall be paid to the Seller's Broker at the Closing in accordance with separate agreements between Seller's Broker and Seller.

22. **<u>ASSIGNMENT</u>**

Purchaser may not assign or transfer its rights or obligations under this Contract other than to a limited liability company as to which Henry Shahery has majority ownership and is

the Manager without Seller's prior written consent, the granting or denial of which consent shall be in the sole discretion of Seller; provided, however, that Purchaser shall have the right to assign this Contract without Seller's consent in connection with a tax-deferred exchange or to an entity in which Purchaser has sole ownership interest provided that (i) written notice of such assignment is delivered to Seller at least ten (10) business days prior to Closing and (ii) any such assignee executes an assumption of this Contract, if requested by and in form and substance reasonably acceptable to Seller. No transfer or assignment by Purchaser shall relieve Purchaser of its obligations hereunder. No such transfer or assignment in violation of the provisions hereof shall be valid or enforceable.

23. **NO THIRD PARTY BENEFITS**

This Contract is for the sole and exclusive benefit of the Parties hereto and their respective successors and permitted assigns and, except for any of the Indemnified Parties, no third party is intended to or shall have any rights hereunder. This Contract is binding upon and inures to the benefit of the successors and assigns of the Parties.

24. **LITIGATION COSTS**

In the event of any legal action or other proceeding between the Parties regarding this Contract (an "**Action**"), the prevailing party shall be entitled to the payment by the losing party of its reasonable attorneys' fees, court costs and litigation expenses, as determined by the court. The term "prevailing party" as used in this Section 24 includes, without limitation, a party: (i) who agrees to dismiss an Action on the other party's performance of the covenants allegedly breached, (ii) who obtains substantially the relief it has sought (which includes, without limitation, a party who has an Action voluntarily dismissed against it), or (iii) against whom an Action is dismissed (with or without prejudice) and cannot be refiled. In addition, the prevailing party in any Action shall be entitled, in addition to and separately from the amounts recoverable under this Section, to the payment by the losing party of the prevailing party's reasonable attorneys' fees, court costs and litigation expenses incurred in connection with: (y) any appellate review of the judgment rendered in such Action or of any other ruling in such Action; and (z) any proceeding to enforce a judgment in such Action. It is the intent of the Parties that the provisions of this Section be distinct and severable from the other rights of the Parties under this Contract, shall survive Closing, shall survive the entry of judgment in any Action and shall not be merged into such judgment.

25. **SEVERABILITY**

In the event that any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision in this Contract, and this Contract shall be construed as if such invalid, illegal or unenforceable provision had never been contained in the Contract.

26.    **NO FURTHER MARKETING OR NEGOTIATIONS:** From the Effective Date until the Closing Date or termination of this Contract, JLL and M-III Partners shall cease any further marketing efforts and/or negotiations with respect to the sale of the Leases.

27.    **COUNTERPARTS**

This Contract may be executed in any number of counterparts, each of which shall constitute one and the same instrument, and any Party hereto may execute this Contract by signing any such counterpart delivery of an executed signature page of this Contract by any Party hereto by facsimile or .pdf transmission; and such facsimile or .pdf shall be binding on the delivering Party as if the original had been delivered.

28.    **SUCCESSORS AND ASSIGNS**

This Contract shall be binding upon and inure to the benefit of the respective successors and permitted assigns of the Parties to this Contract; provided, however, that Purchaser may only assign this Contract in accordance with the provisions of Section 22 of this Contract.

29.    **NO RECORDING**

Purchaser agrees not to record this Contract or any memorandum or short form of this Contract. Any such recording by Purchaser shall be a default under this Contract and shall entitle Seller to terminate this Contract and retain the Earnest Money Deposit.

30.    **TIME FOR PERFORMANCE**

All references in this Contract to "days" shall mean calendar days. Notwithstanding the foregoing, whenever any expiration of a time limit or specific date provided in this Contract falls on a Saturday, Sunday, or other day on which national banks in the State are authorized or required to be closed, then that date is extended to the next day that is not a Saturday, Sunday, or other day on which national banks in the State are authorized or required to be closed. The term "business day" as used in this Contract means any day that is not a Saturday, Sunday, or other day on which national banks in the State are authorized or required to be closed.

31.    **TIME OF THE ESSENCE**

Time is of the essence of this Contract.

32.    **RESERVED**

33.    **CONDEMNATION AND CASUALTY**

(a)    Seller agrees to give Purchaser prompt written notice of any fire, flood or similar casualty affecting any portion of the Leased Premises or of any taking or condemnation of all or any portion of any Leased Premises.

(b)    If prior to Closing there shall occur: (i) damage to any Leased Premises caused by fire or other casualty; or (ii) the taking or condemnation of all or any portion of the Leased Premises; then, in each case, the Closing Date shall occur as provided in this Contract, and Purchaser shall be assigned at the Closing Date (A) all interest of Seller in and to any insurance proceeds actually received by Seller (including, but not limited to, any proceeds of business interruption insurance for the period after the date of the Closing Date) or (B) condemnation awards payable to Seller on account of that event, in the case of both (A) and (B), less sums which Seller incurs before the Closing Date for the direct cost of the repair of any of the damage or taking that Seller may elect, in its sole discretion, to undertake or in pursuing the collection of any such insurance proceeds or participating in any condemnation proceeding.

(c)    The Parties hereby waive the provisions of the Uniform Vendor and Purchaser Risk Act (to the extent the same is applicable to the Leased Premises) and of any other Law to the same or similar effect, and agree that the same shall not apply to this Contract.

**34.    SECTION HEADINGS**

The section headings contained in this Contract are for convenience only and shall in no way enlarge or limit the scope or meaning of the various and several sections hereof.

**35.    INTERPRETATION**

Whenever used in this Contract, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders.

**36.    GOVERNING LAW, JURISDICTION & VENUE**

This Contract will be exclusively governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of law principles thereof. EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENTS TO SUBMIT TO THE JURISDICTION OF THE BANKRUPTCY COURT FOR ANY AND ALL DISPUTES ARISING OUT OF OR OTHERWISE RELATING TO THIS CONTRACT. SHOULD THE BANKRUPTCY COURT ABSTAIN FROM EXERCISING ITS JURISDICTION OR BE FOUND NOT TO HAVE JURISDICTION OVER A MATTER RELATING TO THIS CONTRACT, SUCH MATTER SHALL BE ADJUDICATED IN EITHER A FEDERAL DISTRICT COURT IN THE STATE OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN NEW YORK COUNTY, NEW YORK. Without limiting other means of service of process permissible under applicable law, the Parties hereby agree that service of any process, summons, notice or document by U.S. registered mail to the addresses set forth in Section 16 of this Contract shall be effective service of process for any suit or proceeding in connection with this Contract.

37. **AMENDMENTS**

No agreement, amendment, modification, understanding or waiver of or with respect to this Contract or any term, provision, covenant or condition hereof, nor any approval or consent given under or with respect to this Contract, shall be effective for any purpose unless contained in writing and executed by each Party hereto. However, such amendments and/or supplements may be executed in counterparts, all of which shall be deemed to constitute one document.

38. **ENTIRE CONTRACT**

The Parties acknowledge and agree that at all times they have intended that none of the preliminary negotiations concerning this transaction would be binding on either Party, and that they would be bound to each other only by a single, formal, comprehensive document containing this Section and all of the agreements of the Parties, in final form, which has been executed and delivered by Purchaser and Seller. The Parties acknowledge that none of the prior oral agreements between them (and none of the representations on which either of them has relied) relating to the subject matter of this Contract shall have any force or effect whatever, except as and to the extent that such agreements and representations have been incorporated in this Contract.

39. **PATRIOT ACT**

Seller certifies that its name is SEARS, ROEBUCK AND CO., a New York corporation, and Seller is not (i) in violation of any laws relating to terrorism or money laundering, or (ii) among the individuals or entities identified on any list compiled pursuant to Executive Order 13224 for the purpose of identifying suspected terrorists or on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control. Purchaser certifies that its name is [            ,            ], and to Purchaser's knowledge, neither Purchaser or affiliated entities are (i) in violation of any laws relating to terrorism or money laundering, or (ii) among the individuals or entities identified on any list compiled pursuant to Executive Order 13224 for the purpose of identifying suspected terrorists or on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control.

40. **EXCULPATION; LIMITATION OF LIABILITY**

Notwithstanding anything to the contrary contained in this Contract, no officer, director, shareholder, employee, agent, manager, member or partner of Seller or Purchaser shall have any personal liability with respect to any of the obligations contained in this Contract. Under no circumstances shall Seller or Purchaser be responsible for consequential, special or punitive damages, and Seller and Purchaser hereby waive any and all such claims against the other for such consequential, special or punitive damages. The provisions of this Section 40 shall survive the expiration of the term or any earlier termination of this Contract.

41.    **PRESS RELEASES**

Neither Purchaser nor any of Purchaser's Affiliates shall make any press release or other public announcement concerning the transaction(s) contemplated by this Contract without Seller's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. If Purchaser desires to make a press release or other public announcement respecting this Contract or the transaction(s) contemplated hereby, Purchaser shall wait at least five (5) business days after the Closing (the "**No Public Announcement Period**"), and after the expiration of the No Public Announcement Period, shall provide Seller with a draft of the press release or other public announcement for review at least ten (10) business days prior to the time that such press release or other public announcement is to be made. The Parties will attempt in good faith to expeditiously reach agreement on such press release or other public announcement and the contents thereof. Seller's failure to provide comments back to Purchaser within ten (10) business days of receipt of the draft release or announcement will be deemed consent to the public disclosure of such press release or other public announcement and the content thereof. Purchaser shall be liable for the compliance of its respective Affiliates with the terms of this Section 41. Notwithstanding anything to the contrary herein, any press release or other public announcement shall not reveal any Confidential Information and otherwise be in accordance with Section 20 hereof. This Section 41 shall survive the Closing.

42.    **LOCAL LAW PROVISIONS**

The parties agree to amend this Contract after the Effective Date but prior to Closing to address any applicable local law requirements in a manner reasonably satisfactory to Seller and Purchaser.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

**IN WITNESS WHEREOF**, the Parties have executed this Real Estate Sale Contract as of the date first above written.

**SELLER:**

**SEARS, ROEBUCK AND CO.,**
a New York corporation

By:_____
Name:_____
Its:_____

**INNOVEL SOLUTIONS, INC.,**
a Delaware corporation

By:_____
Name:_____
Its:_____

**PURCHASER:**

**Henry Shahery,**
[                    ]

By:_____
Name:_____
Its:_____

## EXHIBITS

Exhibit "A-1":   Warehouse Primary Lease Description
Exhibit "A-2"    Parking Lot Primary Lease Description
Exhibit "B-1":   Warehouse Lease Property Description
Exhibit "B-2"    Parking Lot Lease Property Description
Exhibit "C-1":   Warehouse Sublease Description
Exhibit "C-2"    Parking Lot Sublease Description

IN WITNESS WHEREOF, the Parties have executed this Real Estate Sale Contract as of the date first above written.

SELLER:

SEARS, ROEBUCK AND CO.,
a New York corporation

By: _Jane S Borden_____
Name: Jane S. Borden_____
Its: President – Real Estate____

INNOVEL SOLUTIONS, INC.,
a Delaware corporation

By: _Jane S Borden_____
Name: Jane S Borden_____
Its: VICE President_____

PURCHASER:

Henry Shahery

By:_____
Name:_____
Its:_____

## EXHIBITS

Exhibit "A-1":   Warehouse Primary Lease Description
Exhibit "A-2"    Parking Lot Primary Lease Description
Exhibit "B-1":   Warehouse Lease Property Description
Exhibit "B-2"    Parking Lot Lease Property Description
Exhibit "C-1":   Warehouse Sublease Description
Exhibit "C-2"    Parking Lot Sublease Description

**IN WITNESS WHEREOF**, the Parties have executed this Real Estate Sale Contract as of the date first above written.

SELLER:

**SEARS, ROEBUCK AND CO.,**
a New York corporation

By:_____
Name:_____
Its:_____

**INNOVEL SOLUTIONS, INC.,**
a Delaware corporation

By:_____
Name:_____
Its:_____

PURCHASER:

**Henry Shahery,**
[]

By:_____
Name:_____
Its:_____

## EXHIBITS

| | |
|---|---|
| Exhibit "A-1": | Warehouse Primary Lease Description |
| Exhibit "A-2" | Parking Lot Primary Lease Description |
| Exhibit "B-1": | Warehouse Lease Property Description |
| Exhibit "B-2" | Parking Lot Lease Property Description |
| Exhibit "C-1": | Warehouse Sublease Description |
| Exhibit "C-2" | Parking Lot Sublease Description |

Exhibit "D":    Earnest Money Escrow Instructions
Exhibit "E":    Assignment and Assumption
Exhibit "F":    Landlord Notice

## EXHIBIT "A-1"

Warehouse Primary Lease Description

Indenture of Lease dated April 3, 1947 by and between Connecticut General Life Insurance Company, as landlord, and Sears, Roebuck and Co., as tenant.

## EXHIBIT "A-2"

Parking Lot Primary Lease Description

Parking Lot Lease Agreement dated December 15, 1998 by and between 51st Street Partnership, as landlord, and Sears Logistics Services, Inc., as tenant.

## EXHIBIT "B-1"

Warehouse Primary Lease Property Description

The description set forth in that certain Indenture of Lease dated April 3, 1947 by and between Connecticut General Life Insurance Company, as landlord, and Sears, Roebuck and Co., as tenant.

## EXHIBIT "B-2"

Parking Lot Primary Lease Property Description

The description set forth in that certain Parking Lot Lease Agreement dated December 15, 1998 by and between 51st Street Partnership, as landlord, and Sears Logistics Services, Inc., as tenant.

## EXHIBIT "C-1"

Warehouse Sublease Description

Sublease dated December 21, 2017 by and between Sears, Roebuck and Co., as sublandlord, and Mr. Henry Shahery, as subtenant.

## EXHIBIT "C-2"

Parking Lot Sublease Description

Sublease dated December 21, 2017 by and between Innovel Solutions, Inc., successor-in-interest to Sears Logistics Services, Inc., as sublessor, and Mr. Henry Shahery and Shason, Inc., collectively as sublesee.

## EXHIBIT "D"

## EARNEST MONEY ESCROW INSTRUCTIONS

(please see attached)

 **CHICAGO TITLE AND TRUST COMPANY:  ESCROW TRUSTEE**
**10 S. LASALLE, STE 3100, CHICAGO, IL 60603**

Refer to: Krystina Cozzie
Phone no.: 312-223-3366
Fax no: 312-223-2076

### STRICT JOINT ORDER #1 ESCROW TRUST INSTRUCTIONS (EARNEST MONEY)

ESCROW TRUST NO:                                  DATE:

To: Chicago Title and Trust Company, Escrow Trustee:

Customer Identification:

Seller:

Purchaser:

Property Address:

Project Reference:

Proposed Disbursement Date:

Escrow Deposits:

1. The sum of $              by      CHECK/WIRE        Representing:  INITIAL
EARNEST MONEY

2. The sum of $              by      CHECK/WIRE        Representing:  (Additional)

***PLEASE NOTE: Uncertified checks are held for ten business days after date of deposit. No
funds can be dispensed before 10 business days limit expires. To avoid delays, use Cashier's or
Certified checks or wire transfer.***

Funds:

( ) WILL     ( ) WILL NOT BE INVESTED
NOTE: If funds are to be invested, an investment package will be sent.  Please complete and
return to Escrow Trustee as soon as possible in order to begin accruing interest.

Delivery of Deposits:

The above-referenced escrow trust deposits ("deposits") are deposited with the escrow trustee to be delivered by it only upon the receipt of a joint order of the undersigned or their respective legal representatives or assigns.

In no case shall the above-mentioned deposits be surrendered except upon the receipt of an order signed by the parties hereto, their respective legal representatives or assigns, or in obedience to the court order described below.

Billing Instructions:

Escrow trust fee will be deducted as follows: $300 escrow fee. If the transaction closes in the Chicago Title Loop office, the escrow fee will be waived. Any overnight delivery or wire fee will be $35.
The parties acknowledge that beginning after a period of one year from the date of this agreement, Chicago Title and Trust Company will impose an administrative maintenance fee equivalent to the fee set forth on the Company's then current rate schedule.

This fee may be deducted from the outstanding escrow balance or billed.

PLEASE NOTE: The escrow trust fee for these joint order escrow trust instructions is due and payable within 30 days from the projected disbursement date (which may be amended by joint written direction of the parties hereto). In the event no projected disbursement date is ascertainable, said escrow trust fee is to be billed at acceptance and is due and payable within 30 days from the billing date. Chicago Title and Trust Company, at its sole discretion, may reduce or waive the escrow trust fee for these joint order escrow instructions in the event the funds on deposit herein are transferred to or disbursed in connection with sale escrow trust instructions or an agency closing transaction established at Chicago Title.

Standard Provisions:

Investment:

Deposits made pursuant to these instructions may be invested on behalf of any party or parties hereto; provided that any direction to escrow trustee for such investment shall be expressed in writing and contain the consent of all parties to this escrow, and also provided that escrow trustee is in receipt of the taxpayer's identification number and investment forms as required. Escrow trustee will, upon request, furnish information concerning its procedures and fee schedules for investment.

In the event the escrow trustee is requested to invest deposits hereunder, Chicago Title and Trust Company is not to be held responsible for any loss of principal or interest which may be incurred as a result of making the investments or redeeming said investment for the purposes of these escrow trust instructions.

Direction Not to Invest/Right to Commingle:

Except as to deposits of funds for which escrow trustee has received express written direction concerning investment or other handling, the parties hereto direct the escrow trustee NOT to invest any funds deposited by the parties under the terms of this escrow and waive any rights which they may have under Section 2-8 of the Corporate Fiduciary Act (205 ILCS 620/2-8) to receive interest on funds deposited hereunder. In the absence of an authorized direction to invest funds, the parties hereto agree that the escrow trustee shall be under no duty to invest or reinvest any such funds at any time held by it hereunder; and, further, that escrow trustee may commingle such funds with other deposits or with its own funds in the manner provided for the administration of funds under said Section 2-8 and may use any part or all of such funds for its own benefit without obligation to any party for interest or earnings derived thereby, if any. Further, even with appropriate instructions to invest Escrow Deposits, Escrow Trustee may commingle the Escrow Deposits with other funds in a trust account in order to facilitate placing the Escrow Deposits into a segregated interest bearing account and to disburse the Escrow Deposits once they have been removed from such segregated interest bearing account as required by the terms of this Agreement. Provided, however, nothing herein shall diminish escrow trustee's obligation to apply the full amount of such funds in accordance with the terms of these escrow instructions.

Compliance With Court Order:

The undersigned authorize and direct the escrow trustee to disregard any and all notices, warnings or demands given or made by the undersigned (other than jointly) or by any other person. The said undersigned also hereby authorize and direct the escrow trustee to accept, comply with, and obey any and all writs, orders, judgments or decrees entered or issued by any court with or without jurisdiction; and in case the said escrow trustee obeys or complies with any such writ, order, judgment or decree of any court, it shall not be liable to any of the parties hereto or any other person, by reason of such compliance, notwithstanding any such writ, order, judgment or decree be entered without jurisdiction or be subsequently reversed, modified, annulled, set aside or vacated. In case the escrow trustee is made a party defendant to any suit or proceedings regarding this escrow trust, the undersigned, for themselves, their heirs, personal representatives, successors, and assigns, jointly and severally, agree to pay to said escrow trustee, upon written demand, all costs, attorney's fees, and expenses incurred with respect thereto. The escrow trustee shall have a lien on the deposit(s) herein for any and all such costs, fees and expenses. If said costs, fees and expenses are not paid, then the escrow trustee shall have the right to reimburse itself out of the said deposit(s).

Disputes/Circumstance not contemplated:

If any dispute arises with respect to the disbursement of any funds on deposit or if circumstances arise that were not contemplated or described in the original escrow agreement, and Escrow Trustee is unsure as to its duties as a result, Escrow Trustee may continue to hold said funds until either in receipt of a joint order from the parties or a court order directing payment. In such instance, Escrow Trustee may elect to commence an action in interpleader and in conjunction therewith remit the Escrow Deposit to a court of competent jurisdiction pending resolution of such dispute, and the parties hereto hereby indemnify and hold harmless Escrow Trustee for any action taken by it in good faith in the execution of its duties hereunder. The parties further agree that the cost of any such action shall be deducted from the Escrow Deposit prior to disbursement

to the parties. Notwithstanding the foregoing, where a party to this escrow agreement has been placed in default and the period to cure such default has lapsed, without cure, upon the delivery to Escrow Trustee of commercially reasonable documentation evidencing the same, Escrow Trustee shall, without delay, release the Escrow Deposit to the non-defaulting party entitled to receive such Escrow Deposit without direction from a court or delivery of a joint order from the parties to this escrow agreement.

Disclaimer Re: Validity of Documentation:

In its capacity as Escrow Trustee, Escrow Trustee shall not be responsible for the genuineness or validity of any security, instrument, document or item deposited with it and shall have no responsibility other than to faithfully follow the instructions contained herein, and shall not be responsible for the validity or enforceability of any security interest of any party and it is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto and reasonably believed by Escrow Trustee to have been signed by the proper person. Escrow Trustee may assume that any person purporting to give any notice hereunder has been duly authorized to do so.

*[Signature Page to Follow]*

Execution:

These escrow trust instructions are governed by and are to be construed under the laws of the state of Illinois. The escrow trust instructions, amendments or supplemental instructions hereto, may be executed in counterparts, each of which shall be deemed an original and all such counterparts together shall constitute one and the same instrument.

| For Seller: | For Purchaser: |
|---|---|
| Name: | Name: |
| | |
| By:_____ | By:_____ |
| Name:_____ | Name:_____ |
| Its:_____ | Its:_____ |
| | |
| Address: | Address: |
| Phone: | Phone: |
| Fax: | Fax: |
| Email: | Email: |
| | |
| Legal Representative: | Legal Representative: |
| Name: | Name: |
| By: | By: |
| Address: | Address: |
| Phone: | Phone: |
| Fax: | Fax: |
| Email: | Email: |
| Signature: | |

Signature:


Accepted: Chicago Title and Trust Company, as Escrow Trustee

By:                                                Date:

**\*Upon receipt of the funds, the escrow agreement becomes effective.**

EXHIBIT "E"

ASSIGNMENT AND ASSUMPTION

[See attached]

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is entered into and effective as of [_____], 2019, by and among **SEARS, ROEBUCK AND CO.**, a New York corporation and INNOVEL SOLUTIONS, INC., a Delaware corporation   (collectively "Seller" or "Assignor") and **Henry Shahery** or any of its permitted assignees ("Purchaser" or "Assignee"). Seller and Purchaser are referred to collectively herein as the "Parties."

WHEREAS, the Parties are parties to that certain **LEASE SALE AGREEMENT** , dated _____ (the "Purchase Agreement") (capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Purchase Agreement); and

WHEREAS, the execution and delivery of this Agreement is contemplated by Section 9(b)(i) and 9(c)(ii) of the Purchase Agreement.

NOW, THEREFORE, in consideration of the promises and mutual agreements set forth in the Purchase Agreement, the Parties hereby agree as follows:

1)    Assignment and Assumption.  Effective as of the Closing, Seller hereby assigns, grants, conveys, and transfers Seller's estate, right, title and interest as tenant of the leasehold estate described under the Lease, and Purchaser hereby accepts the conveyance, transfer, assignment and delivery of Seller's rights, title and interest as tenant of the leasehold estate described under the Lease.  The Lease to be assigned to Purchaser under this Agreement is described in Exhibit A attached hereto.

2)    Conflict.  The assignment and assumption of the Lease made hereunder are made in accordance with and subject to the Purchase Agreement (including, without limitation, the representations, warranties, covenants, and agreements contained therein), which is incorporated herein by reference.  In the event of a conflict between the terms and conditions of this Agreement and the terms and conditions of the Purchase Agreement, the terms and conditions of the Purchase Agreement shall govern, supersede, and prevail. Notwithstanding anything to the contrary in this Agreement, nothing herein is intended to, nor shall it, extend, amplify, or otherwise alter the representations, warranties, covenants, and obligations of the Parties contained in the Purchase Agreement or the survival thereof.

3)     <u>Notices</u>. Any notice, request, or other document to be given hereunder to any Party shall be given in the manner specified in Section 16 of the Purchase Agreement. Any Party may change its address for receiving notices, requests, and other documents by giving written notice of such change to the other Parties.

4)     <u>Severability</u>. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

5)     <u>Enforceability</u>. If any provision of this Agreement or the application of any such provision to any person or circumstance shall be held invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other provision hereof.

6)     <u>Amendments; Waivers</u>. This Agreement may not be amended or modified except by an instrument in writing signed by, or on behalf of, Purchaser and Seller. Any waiver of rights hereunder must be set forth in writing.

7)     <u>Further Assurances</u>. Each of the Parties shall execute and deliver all such further documents and do such other things as the other Party may reasonably request to give full effect to this Agreement.

8)     <u>Counterparts; Facsimile and Electronic Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. This Agreement or any counterpart may be executed and delivered by facsimile copies or delivered by electronic communications by portable document format (.pdf), each of which shall be deemed an original.

9)     <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York (without giving effect to the principles of conflicts of Laws thereof), except to the extent that the Laws of such state are superseded by the Bankruptcy Code.

10)     <u>Third Party Beneficiaries and Obligations</u>. This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to or shall confer upon any Person other than the Parties or their respective successors and permitted assigns, any rights, remedies, or liabilities under or by reason of this Agreement.

11)     <u>Entire Agreement</u>. This Agreement, together with the Purchase Agreement and the exhibits and the documents referred to in the Purchase Agreement, contain the entire understanding between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, representations and statements, oral or written, between the Parties on the subject matter hereof, which such prior agreements,

understandings, representations and statements, oral or written, shall be of no further force or effect.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of date first above

written.

**SELLER / ASSIGNOR:**
**SELLER:**

**SEARS, ROEBUCK AND CO.,**
a New York corporation


By:_____
Name:_____
Its:_____

**INNOVEL SOLUTIONS, INC.,**
a Delaware corporation


By:_____
Name:_____
Its:_____



**PURCHASER / ASSIGNEE:**

**PURCHASER:**

**Henry Shahery,**
[                                    ]



By:_____
Name:_____
Its:_____

<u>Exhibit A</u>

<u>The Lease</u>

<u>EXHIBIT "F"</u>

<u>LANDLORD NOTICE</u>

[See attached]

## NOTICE TO LANDLORD

_____, 2019

**<u>Via Federal Express</u>**

_____
_____
_____

     Re:    Notice of assignment of lease at **[ADDRESS]** (the "**<u>Lease</u>**")

Ladies and Gentlemen:

     Please be advised that on October 21, 2018, **[SELLER/TENANT]** the tenant under the Lease ("**<u>Tenant</u>**"), and certain of its affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.

     Effective as of _____, 2019 Tenant's interest in the Lease has been assigned to **[PURCHASER]** ("**<u>Assignee</u>**"), and Assignee has assumed all of the tenant's obligations under the Lease.

     Any future inquiries regarding your Lease should be directed to the address below:

_____
_____
_____

With a copy (which shall not constitute notice to Assignee) to:

_____
_____
_____

Very truly yours,

[SELLER/TENANT],
[Seller entity type and state of organization]


By:_____
Name:_____
Its:_____

3