**Exhibit F**

## PARKING LOT LEASE AGREEMENT

THIS PARKING LOT LEASE AGREEMENT (hereinafter the "Lease") is made as of the 15th day of December, 1998, by and between 51ST STREET PARTNERSHIP, a California general partnership ("Landlord"), and SEARS LOGISTICS SERVICES, INC., a Delaware corporation ("Tenant"). In consideration of the mutual covenants contained herein, the parties agree as follows:

1. **Premises.** Landlord leases to Tenant and Tenant leases from Landlord that certain parcel of real estate consisting of approximately 2.33 acres as depicted on Exhibit "A" attached hereto and legally described on Exhibit "B" attached hereto, including the parking lot improvements located thereon (the "Demised Premises") owned by Landlord situated in the City of Vernon, County of Los Angeles, and State of California.

2. **Use.** The Demised Premises may be used by Tenant as an open-air ground level parking lot, on a 24 hours per day, 7 days per week basis, and all other lawful uses. In the event Tenant is prohibited from conducting its operations on the Demised Premises throughout the Term (as hereinafter defined) by the effect of any zoning or noise ordinances or other governmental use restrictions, or applicable rules or regulations thereunder, Tenant shall have the right to terminate this Lease by written notice to Landlord, effective upon the date on which continuing such operations would subject Tenant to prosecution or civil penalty. Tenant agrees to comply, at the Lease Commencement Date (as hereinafter defined) and during the Term, with all federal, state and local governmental laws, rules, regulations, and ordinances applicable to Tenant's use of the Demised Premises.

3. **Term.**

   (a)    The term of this Lease shall commence on December 15, 1998 (the "Commencement Date") and end on March 31, 2002 (the "Term").

   (b)    Landlord grants to Tenant six (6) consecutive options to extend this Lease for periods of five (5) years each. Each option can be exercised by Tenant giving Landlord written notice of the exercise thereof at least six (6) months prior to the expiration of the then existing Term, provided, however, that if Tenant shall fail to give any such notice within such six (6) months time limit, Tenant's right to exercise its option shall nevertheless continue until thirty (30) days after Landlord shall have given Tenant written notice of Landlord's election to terminate such option, and Tenant may exercise such option at any time until the expiration of said thirty (30) day period. It is the intention of the parties to avoid forfeiture of Tenant's rights to extend the Term of this Lease under any of the options set forth in this Section 3 through inadvertent failure to give notice thereof within the time limits prescribed. During any extension, all Sections of this Lease will be effective, and references to Term will incorporate the extensions.

CHIDOCS2/1146/448961 v3 11/18/1998 3:10 PM

(c)  Any holding over after the expiration of the Term of this Lease shall be construed to be a tenancy from month-to-month, at the same monthly rental as required to be paid by Tenant for the period immediately prior to the expiration of the Term hereof, and shall otherwise be on the terms and conditions herein specified, so far as applicable.

4.  **Rent**.  Rent for the Demised Premises shall be Seven Hundred Fifty and 00/100ths Dollars ($750.00) per month, payable on the first of each month during the Term (partial month to be prorated) commencing on the Commencement Date. Such rent shall be made payable to Landlord and mailed to Landlord's address as set forth in the "Notice" section of this Lease, until the payee or address is changed by written notice from Landlord to Tenant. Rent shall not be in default, however, until the fifteenth (15th) day after the date for payment.

5  **Utilities**.  Tenant shall be responsible for arranging for and paying directly to the applicable utility for any utility services Tenant desires in connection with Tenant's use of the Demised Premises.

6.  **Taxes**.

(a)  Landlord shall pay when due all real estate taxes, general and special assessments and any other charges, levies or impositions levied or assessed upon Landlord's land and buildings, including the Demised Premises. Upon request, Landlord will provide to Tenant paid receipts or other evidence of payment of such taxes, assessments and charges. In the event Landlord does not timely pay such taxes, assessments and charges, then Tenant may elect, but shall not be obligated, to pay such taxes, assessments and charges, in which event Landlord shall promptly refund to Tenant any such payments made by Tenant or, in the alternative, Tenant may set off any such payments against rent or other charges due under this Lease.

(b)  As used herein, the term "Base Taxes" shall mean real estate taxes for the land only for the tax year July 1, 1998 to June 30, 1999. Tenant shall reimburse Landlord for Tenant's Pro Rata Share (as hereinafter defined) of real estate taxes applicable to the land only in excess of Base Taxes within thirty (30) days after receipt of the tax bill and receipt marked "paid in full". Tenant's "Pro Rata Share" shall be determined on the basis of the acreage of the Demised Premises divided by the acreage of the tax parcel which includes the Demised Premises. Notwithstanding the foregoing, Tenant shall not be responsible for any assessments, special or otherwise, levied or imposed upon the land as a result of any improvements to or for the balance of the tax parcel which includes the Demised Premises. Additionally, Tenant shall not be responsible for any estate, gift, inheritance, succession, franchise, income or excess profit taxes which may be payable by Landlord with respect to the Demised Premises or the tax parcel which includes the Demised Premises.

7. **Repairs and Maintenance.**

(a) Tenant shall, at its cost, during the Term keep the Demised Premises in a clean condition and sightly condition.

(b) Upon the expiration or earlier termination of the Term, Tenant shall redeliver the Demised Premises "broom clean" and in the same condition as on the Commencement Date, normal wear and tear and casualty loss excepted.

8. **Landlord Improvements.**

(a) Landlord shall, at Landlord's sole cost and expense, separate the Demised Premises from the balance of Landlord's land and buildings with a six (6) feet tall wrought iron fence or similar partition to be mutually agreed upon by Landlord and Tenant (hereinafter referred to as the "Improvements"). All of the Improvements shall be completed and acceptable to Tenant within sixty (60) days of the execution of this Lease in a good and workman-like manner, and cause no significant interference with Tenant's day to day business. If the Improvements have not been completed within the specified time period above, then at Tenant's election, Tenant may complete the Improvements and deduct the cost from rent or other charges due from Tenant hereunder. Landlord agrees to obtain and maintain, or cause Landlord's contractors to obtain and maintain, during the construction of the Improvements and until completion thereof, reasonable and customary insurance coverage, including workers' compensation, commercial general liability insurance, motor vehicle liability insurance, and builder's risk insurance. Landlord shall at its sole cost and expense guarantee all work done by or on behalf of Landlord in constructing the Improvements against defective design, workmanship, and materials. Notwithstanding the foregoing, during the period of time in which Landlord is remodeling and renovating the improvements located on the property immediately adjacent to the Demised Premises, Landlord may substitute a temporary chain link fence in place of the wrought iron fence or similar partition. Upon completion of Landlord's remodeling and renovation, the wrought iron fence or similar partition shall be completed within sixty (60) days.

(b) Tenant acknowledges that it was the prior owner of the Demised Premises and is familiar with the condition of the Demised Premises, applicable zoning and other laws, ordinances, regulations relating to the Demised Premises and its suitability for Tenant's intended use. Accordingly, except as provided in paragraph 8(a) above, Tenant accepts the Demised Premises in their "as is" condition.

9. **Indemnity.**

(a) Landlord agrees to indemnify, protect, defend and hold Tenant, its directors, officers, employees and agents, harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities (except those caused solely by the willful or negligent acts or

omissions of Tenant), arising out of the actual or alleged injury to or death of any person or loss of or damage to property in or upon the Demised Premises, including the person and property of Tenant, its directors, officers, employees, agents, invitees, licensees or others, arising out of or in connection with the willful or negligent acts or omissions of Landlord or Landlord's employees, agents, or contractors.

(b)  Tenant agrees to indemnify, protect, defend and hold Landlord, its directors, officers, employees and agents, harmless from and against all claims, actions, losses, damages, costs, expenses and liabilities (except those caused by the willful or negligent acts or omissions of Landlord), arising out of the actual or alleged injury to or death of any person or loss of or damage to property in or upon the Demised Premises, including the person and property of Landlord, its directors, officers, employees, agents, licensees, or others, arising out of or in connection with the willful or negligent acts or omissions of Tenant or Tenant's employees, agents, or contractors.

10.  **Insurance.** Tenant shall maintain, at Tenant's expense, during the Term, commercial general liability insurance for the Demised Premises, including, but not limited to, coverage for personal injury and contractual liabilities with combined single limits of not less than $2,000,000 per occurrence for bodily injury and/or property damage, which policy shall name Landlord as an additional insured. Tenant may meet its insurance obligations under this Lease through a blanket insurance policy, through any combination of primary or umbrella/excess coverage, or through a program of self-insurance.

11.  **Hazardous Substances.**

(a)  The term "Hazardous Substances" means any material amounts (i.e., amounts that could cause a violation of any environmental protection or control laws, rules or regulations) of toxic or hazardous wastes, pollutants, or substances, including, without limitation, (A) 4 PCB's (B) petroleum products or byproducts, (C) substances defined or listed as "hazardous substances" or "toxic substances" or similarly identified in or pursuant to (1) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C Sec. 9601 et seq., (2) the Hazardous Materials Transportation Act, 47 U.S.C. Sec. 1802, et seq., or (3) the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., (D) any chemical substance or mixture regulated under the Toxic Substance Control Act of 1976, as amended, 15 U.S.C. Sec. 2601 et seq., (E) any "toxic pollutant" under the Clean Water Act, 33 U.S.C. Sec. 466 et seq., as amended, (F) any hazardous air pollutant under the Clean Air Act, 42 U.S.C. Sec. 7401 et seq., and (G) any hazardous or toxic substance or pollutant regulated under any other applicable federal, state or local environmental, health or safety laws, regulations, and rules of common law.

(b)  Tenant shall not release any Hazardous Substances on the Demised Premises and Tenant shall indemnify and hold Landlord harmless from and against all liabilities, losses,

costs, fines, demands, claims, judgments, damages, expenses, actions or rights of action arising from such a release by it or its employees, agents, or contractors.

(c)   Landlord shall not release any Hazardous Substances on the Demised Premises. Landlord shall be responsible for all costs incurred in complying with any order, ruling, or other requirement of any court or governmental body or agency having jurisdiction over the Demised Premises requiring Landlord to comply with any laws which related to Hazardous Substances or which relate to Hazardous Substances created, handled, placed, stored, used, transported or disposed by Landlord, including without limitation the cost of any required or necessary repair, clean-up or detoxification and the preparation of any closure or other required plans, and Landlord shall diligently pursue to completion all such work in connection with same. In the event of any breach of any covenant contained herein by Landlord, or of the presence of Hazardous Substances (excluding Hazardous Substances established to have been brought on to the Demised Premises by Tenant or Tenant's employees, agents or contractors, unless released on to the Demised Premises by reason of the fault or negligence of Landlord), which breach or presence materially adversely affects Tenant's use of the Demised Premises, Tenant has the right either (i) to terminate the Lease by written notice to Landlord, to be effective as of the date of Tenant's notice, or (ii) to have its rent and any other charges payable by Tenant abated to the extent of interference with Tenant's business until such time as the Demised Premises comply with all laws and Landlord has cured its breach in a manner satisfactory to Tenant. Landlord shall indemnify, protect, defend and hold Tenant harmless from and against all liabilities, losses, costs, fines, demands, claims, judgments, damages, expenses, actions or rights of action arising from such a release by it or its employees, agents, contractors or invitees.

12.   **Landlord's Warranties.**   Landlord warrants and represents that presently, and during the Term:

(a)   Tenant, on paying the rent and performing Tenant's obligations hereunder, shall and may peaceably and quietly have, hold and enjoy the Demised Premises for the Term.

(b)   The execution and delivery of this Lease shall not be precluded by or cause a breach of any other agreement, mortgage, contract or other instrument or document to which Landlord is a party.

(c)   If the Demised Premises are, on the Commencement Date, subject to any mortgage or mortgages, Landlord will furnish Tenant a copy of such mortgage documents, together with Non-Disturbance Agreements executed by each of Landlord's mortgagees in the form attached hereto as Exhibit "C". If Landlord fails to provide Tenant with executed Non-Disturbance Agreements from all such mortgage holders within thirty (30) days of the date hereof, Tenant shall have the right to terminate this Lease upon written notice to Landlord.

13. **Default.** Landlord may either terminate the Lease or reenter the Demised Premises, recover possession and dispossess Tenant in the manner prescribed by statute if, after receiving prior written notice from Landlord, Tenant fails: (i) to make within fifteen (15) days thereafter any rental payment past due hereunder; or (ii) to start performance within thirty (30) days thereafter or within such additional time as may be necessary, of any other covenant or agreement to be performed by Tenant herein. If Tenant, after receiving notice, proceeds to cure the default, then no default shall be deemed continuing.

14. **Notices.** All notices herein provided for shall be given by registered mail or certified mail, postage prepaid, return receipt requested, or sent by overnight express carrier (e.g., Federal Express or Express Mail) for guaranteed next business day delivery with a request that the addressee sign a receipt evidencing delivery to the following addresses:

| | |
|---|---|
| If to Landlord: | 51st Street Partnership<br>2369 E. 54th Street<br>Vernon, California 90058<br>Attn: Jose Gavina |
| If to Tenant: | Sears Logistics Services, Inc.<br>3333 Beverly Road, A-3<br>Hoffman Estates, IL 60179<br>Attn: Director, Logistics<br>Real Estate |
| copy to: | Sears Logistics Services, Inc.<br>3333 Beverly Road, A-3<br>Hoffman Estates, IL 60179<br>Attn: General Counsel |

Notice shall be deemed given when so mailed and addressed. Either party may change such address by written notice to the other party as provided for herein.

15. **Damage or Destruction.** If during the Term the Demised Premises are partially damaged or destroyed by fire or other casualty, or the Demised Premises are rendered unfit for Tenant's use, in Tenant's sole judgment, by fire or other casualty:

(a) Rent and all other charges payable by Tenant shall abate, from the date of the fire or casualty, until the Demised Premises have been restored as herein provided;

(b) Landlord shall promptly pay to Tenant any unearned rent or other charges paid by Tenant, or Tenant shall promptly pay to Landlord any rent earned and unpaid; and

(c)    Tenant shall have the right, within sixty (60) days thereafter, upon written notice to Landlord, to terminate this Lease as of the date of the fire or other casualty; and

16.    **Condemnation.**

(a)    Landlord shall promptly notify Tenant in writing of any proposed taking or condemnation which will affect the Demised Premises or any part thereof.

(b)    If any part or all of the Demised Premises are involved in a taking or condemnation, the rights of Landlord and Tenant to share in the proceeds of any award shall be determined as follows:

(i)    The court in the condemnation proceedings shall, if not prohibited by law, be requested by both Landlord and Tenant to make separate awards to Landlord and Tenant; and

(ii)    If the court is unwilling or unable to make separate awards, the award shall be divided between Landlord and Tenant in proportion to the fair market value of their respective interests. If Landlord and Tenant are unable to agree upon the division, it shall be resolved by appraisal conducted by a mutually acceptable neutral appraiser.

(c)    Tenant shall have, at its option, the right to terminate this Lease upon a taking or condemnation of any part or all of the Demised Premises.

(d)    If Tenant elects to terminate this Lease under this Section, Tenant shall notify Landlord in writing of this election within sixty (60) days after the taking effective on the date title vests in the condemnor. Tenant's rental obligation shall cease as of the date title vests in the condemnor, and Landlord shall promptly refund rent and other charges paid by Tenant for periods beyond that date.

(e)    If Tenant does not elect to terminate this Lease, Landlord shall, at its sole cost, promptly and diligently restore the remaining part of the Demised Premises, replace the parking area taken and/or replace the points of ingress and egress taken, so the Demised Premises, parking areas and points of ingress and egress are returned to, as nearly as reasonably possible, the condition existing prior to the taking or condemnation. Tenant shall not be obligated to make any payment or contribution toward the repair or restoration work, except, however, Tenant shall make the proceeds of any award made to Tenant in connection with such condemnation proceedings available for such repair or restoration work. Tenant's rental obligation shall be proportionately reduced by the percentage of the Demised Premises taken.

CHIDOCS2/1146/448961 v3 11/16/1998 3:10 PM                                    7

17. **Assignment or Subletting.** Tenant shall have the right, with Landlord's prior written approval, which approval shall not be unreasonably withheld or delayed, to assign this Lease or sublet all or part of the Demised Premises. In such event, Tenant shall remain responsible for the payment of rent and the performance of its other obligations hereunder, but not beyond the Term to which Tenant has agreed in writing and specifically excluding any option period not exercised by Tenant prior to such assignment or sublease. Notwithstanding the foregoing, Landlord's consent shall not be required for an assignment or sublease to any entity which is owned or controlled by Tenant, which owns and controls Tenant, which is owned or controlled by an entity which owns or controls Tenant or which results from the merger with or acquisition of Tenant.

18. **Attorneys' Fees.** Should either party hereto institute any action or proceeding in court to enforce any provision hereof or for damages, or declaratory or other relief hereunder, the prevailing party shall be entitled to receive from the losing party, in addition to court costs, such amount as the court may adjudge to be reasonable as attorneys' fees for services rendered to said prevailing party and said amount may be made a part of the judgment against the losing party.

19. **Choice of Law.** This Lease shall be construed in accordance with and governed by the laws of the state in which the Demised Premises are located.

20. **Independent Status.** Nothing contained in this Lease shall be construed to make Landlord and Tenant partners or joint venturers or to render either party liable for the debts or obligations of the other.

21. **Broker's Commission.** Landlord agrees to pay any commission or fee due to or claimed by any real estate broker in connection with this Lease.

22. **Time of The Essence.** Time is of the essence of this Lease, and of each and every covenant, term, condition and provision hereof.

23. **Waiver.** The waiver by either party of, or the failure of either party to take action with respect to any breach of any term, covenant or condition herein contained, shall not be deemed to be a waiver of such term, covenant or condition, or subsequent breach of the same, or any other term, covenant or condition therein contained.

24. **Remedies Cumulative.** All remedies hereinbefore and hereafter conferred on Landlord and Tenant shall be deemed cumulative and no one exclusive of the other, or of any other remedy conferred by law.

25. **Severability.** Any provision or provisions of this Lease which are or become illegal or legally void shall in no way affect, impair or invalidate any other provision hereof, and the remaining provisions of this Lease shall nevertheless remain in full force and effect.

26. <u>Headings</u>. The Section headings are for convenience and are not a part of this Lease.

27. <u>Counterparts</u>. This Lease may be executed in counterparts, which when taken together shall be interpreted as a single document.

28. **Entire Agreement and Binding Effect.** This Lease covers in full every obligation between the parties hereto concerning the Demised Premises, and the provisions of this Lease shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns, as the case may be, subject at all times to all provisions and restrictions regarding the assignment, transfer and encumbrance of any interest hereunder.

IN WITNESS WHEREOF, Landlord and Tenant have caused this Lease to be executed as of the date and year first above written.

LANDLORD:

51ST STREET PARTNERSHIP

By: _____
Name: Jose A. Gavilla
Title: General Partner

TENANT:

SEARS LOGISTICS SERVICES, INC.

By: _____
Name: James E. Comerford
Title: President and CEO

Schedule of Exhibits:

Exhibit "A" - Site Plan
Exhibit "B" - Legal Description
Exhibit "C" - Subordination, Non-Disturbance and Attornment Agreement

# EXHIBIT "A"

## SITE PLAN

SEE ATTACHED

EXHIBIT _A_

# Plat Map



## EXHIBIT "B"

## LEGAL DESCRIPTION

That portion of the following legally described property depicted on Exhibit A as the Demised Premises:

The land referred to in this Commitment is in the State of California, County of Los Angeles, and is described as follows:

That portion of Lot 2 of Tract 2836, in the city of Vernon, as per map recorded in Book 35 Pages 88 and 89 of Maps, in the office of the county recorder of said county, described as follows:

Beginning at the Northwesterly corner of said Lot 2; thence South 0° 09' East along the Westerly line of said Lot, 891.50 feet to the center line of 94th Street, (60 feet wide) extending Westerly from said Lot 2; thence parallel with the Northerly line of said lot, North 88° 29' East 750 feet; thence North 0° 09' West parallel with the Westerly line of said Lot 2, a distance of 334 feet to a point distant South 0° 09' West 557.50 feet from the North line of said Lot; thence South 89° 51' West 300 feet; thence North 0° 09' West 550 feet, more or less, to the Northerly line of said Lot 2; thence South 88° 25' West along said Northerly line, 450 feet, more or less, to the point of beginning.

EXCEPT therefrom all oil, gas, mineral and other hydrocarbon substances in and under a plane 500 feet below the surface of said land, but without any right of surface entry above said 500 foot plane, as reserved in the deed from Malmo Inc., recorded in Book 4 Page 24, of Deeds.

CHIDOCS2/1146/448961.v3 11/18/1998 3:10 PM