Hearing Date and Time: August 22, 2019 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                                        :
                                                             :     **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,                    :
                                                             :     **Case No. 18-23538 (RDD)**
                                                             :
            Debtors.[1]                                      :     **(Jointly Administered)**
-------------------------------------------------------------x

## DEBTORS' REPLY IN SUPPORT OF MOTION OF
## DEBTORS FOR MODIFICATION OF RETIREE BENEFITS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully submit this response to the objections filed to the *Motion of Debtors for Modification of Retiree Benefits*, dated July 29, 2019 (ECF No. 4635) (the "**Motion**").[2]

### Debtors' Response

1.      In the Motion, the Debtors  seek entry of an order (the "**Proposed Order**") pursuant to section 1114(g) of the Bankruptcy Code authorizing the Debtors to modify retiree life insurance benefits in accordance with the terms of a proposal attached as Exhibit A to the Motion (the "**Initial Proposal")**.

2.      The Official Committee of Retirees with Life Insurance Benefits (the "**Retiree Committee**") filed an objection to the Motion (ECF No. 4768) (the "**Retiree Objection**").  The Secretary of the United States Department of Labor (the "**DOL**") filed a joinder to the Retiree Objection (ECF No. 4762) (the "**DOL Joinder,**" and collectively with the Retiree Objection, the "**Objections**").

### Negotiations With The Retiree Committee

3.      The exigency of having the retiree benefits modified prior to the confirmation of the Debtors' *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 4704) (the "**Plan**") meant that the Debtors were constrained to file the Motion after the Retiree Committee was appointed, but before the Retiree

---

[2] Capitalized terms used herein but not otherwise defined will have the meanings ascribed to them in the Motion.

WEIL:\97152351\6\73217.0004

Committee was in a position to have a meaningful negotiation with the Debtors regarding the Debtors' proposal.

4.      On the same day that the Debtors filed the Motion, the Retiree Committee submitted to the Debtors a document request for an extensive amount of information, all of which related to either information about the Retirees, or the events leading up to the Debtors' termination of the Retiree Plan.  The historical information requested is not pertinent to a determination of whether the Debtors have met the section 1114 standard, i.e., whether "such modification is necessary to permit the reorganization of the debtor[s] and assures that all creditors, the debtor[s], and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities."  Bankruptcy Code section 1114(g)(3).  Moreover, implicit in the Court's decision to appoint the Retiree Committee is the Court's view that the Retirees may have had a vested right in their death benefits arising from the Stipulation entered into in 2001.  Revisiting that issue at this time is not relevant to the standards for modification set forth in 1114 and would be a distraction from the issues at hand.

5.      Despite this, the Debtors have endeavored to provide most of the information requested by the Retiree Committee, to the extent the Debtors had access to such information.  Where the Debtors lacked access to requested information, they requested such information from third parties, including Securian and Transform.

6.      On August 1, 2019, after the Debtors filed the Motion, the Retiree Committee submitted to the Debtors a counterproposal, a copy of which is attached to the Retiree Objection as Exhibit F (the "**Counterproposal**").  The Debtors believe that the economic terms of the Counterproposal, including establishment of an administrative expense fund in the amount of unpaid premiums, are prohibitive, and would render the Plan unconfirmable.  Other economic

WEIL:\97152351\6\73217.0004

terms, including reimbursement of retirees that purchased replacement life insurance since termination of the Securian Policy, have not been quantified by the Retiree Committee; the Debtors have no way of assessing the impact of such requests on their ability to confirm the Plan.

7.      Since receiving the Counterproposal, the Debtors have worked to formulate a response and, importantly, to ensure that any response would have the support of the Official Committee of Unsecured Creditors (the "**Creditors' Committee**").  The Debtors' efforts involved an in-depth analysis, based upon information provided by Securian, of the benefits to which the Retirees were entitled under the Plan.  As a result of their efforts, the Debtors have improved and clarified the economic terms of the Initial Proposal.

8.      On August 15, 2019, the Debtors provided the Retiree Committee with a revised proposal, a copy of which is attached hereto as **Exhibit A** (the "**Revised Proposal,**" and together with the Initial Proposal, the "**Proposals**").  The Revised Proposal included the following improvements from the Original Proposal:

(a)      The Debtors agreed that the estate of any Retiree who passed away between the termination of the Retiree Plan on March 15, 2019 and the date of entry of an order granting the Motion would be granted an administrative expense claim, to the extent death benefits are not paid by Securian, in an amount equal to his or her death benefit, subject to an individual cap of $10,000 and an aggregate cap of $300,000;

(b)      The Debtors agreed that each Retiree who does not fit into the foregoing category would receive an unsecured claim in an amount equal to the lesser of (i) the death benefit to which he or she was entitled under the Retiree Plan, and (ii) $6,250;

(c)      The Debtors agreed to provide a similar general unsecured claim to 161 employees who are characterized as "grandfathered disableds," even though they are not within the class covered by the Stipulation;

(d)      The Debtors agreed to work with the Retiree Committee to facilitate, to the best of their ability, communications with the Retirees, and to establish a procedure for assertion of claims by the Retirees; and

WEIL:\97152351\6\73217.0004

(e)    The Debtors agreed to reimburse the Retirees who filed the motion for the appointment of a retiree committee for their reasonable attorneys' fees, to the extent that there are funds remaining from the $250,000 budget approved by the Court for the Retiree Committee.

9.      The Creditors' Committee supports the terms of the Revised Proposal.

10.     On August 16, 2019, the Debtors received a response to the Revised Proposal from the Retiree Committee, and discussions between the Debtors and the Retiree Committee are ongoing.

11.     A revised draft of the Proposed Order, a copy of which is attached hereto as **Exhibit B**, reflects the changes made to reflect the Revised Proposal.  A redlined copy of the comparing the Proposed Order against the version of the Proposed Order filed with the Motion is attached hereto as **Exhibit C**.

## The Retiree Objection

12.     In the Retiree Objection, rather than focusing on the requirements of section 1114 for modification of retiree benefits, the Retiree Committee focuses on the Stipulation, and the events and decisions leading up to the Debtors' termination of the Retiree Plan in March 2019. The Debtors believe that these issues are not germane to the Court's determination of the Motion.

13.     The Retiree Objection also asserts that the Debtors have not treated Retirees fairly and equitably, and that the Retirees were deprived of an opportunity to negotiate in good faith, as provided for in Bankruptcy Code section § 1114(f)(1)(B).  See Retiree Objection ¶ 31. The Retiree Committee, however, offers no explanation for its argument that the Debtors have not met the requirement that all parties be treated fairly and equitably.  On the contrary, the terms of both Proposals actually reduce funds that would otherwise be available to general unsecured creditors, because (i) funds will be set aside to pay the administrative expense claims of the

Retirees, and (ii) the general unsecured claims being provided to the Retirees will dilute the amount available to be distributed to other holders of general unsecured claims.

14.     The Retiree Committee purports to establish that it had "good cause" to reject the Initial Proposal because: the Debtors failed to make premium payments to Securian in the amount of $1.3 million per month since December 31, 2018, (b) the Debtors cannot meet the good faith requirement of section 1114, and (c) the Initial Proposal did not offer the Retirees the equivalent of what they lost. *See* Objection ¶34. Each of those arguments, however, should be rejected.

15.     The Retiree Committee asserts that the premium payments on the Securian Policy are effectively the Retirees' money and that the Debtors have impermissibly used those amounts for other purposes. Retiree Objection ¶ 34. The Retiree Committee ignores that fact that the Retirees were never entitled to the premium payments – those were owed to Securian prior to termination of the Securian Policy. Moreover, both Proposals effectively give those Retirees who died between March 15, 2019 and the date of entry of an order granting the Motion, the benefit of those premiums, by offering each of them an administrative expense claim for the benefits that would have been paid under the Securian Policy, albeit subject to the proposed caps.

16.     The Retiree Committee also contends that because the Debtors terminated the Retiree Plan in March 2019, before filing the Motion, the Debtors cannot meet section 1114's requirement for good faith negotiations. Retiree Objection ¶ 34. If it were true that the Debtors cannot meet the 1114 standard as a result of their past actions, then there would have been no purpose to be served by the Court's order directing the appointment of the Retiree Committee. *See*

WEIL:\97152351\6\73217.0004

Transcript of Record at 61, *In re In re Sears Holdings Corporation*, Case No. 18–23538 (RDD)

(Bankr. S.D.N.Y. June 20, 2019):[3]

> To me, the major issues here, and perhaps the only issues here for a committee to deal with, are less the rationale behind a rejection or termination of these policies which, unfortunately, given the fact that the debtors are liquidating, colloquially is kind of a no-brainer, unfortunately, but rather who is covered by the stipulation, how those people get notice, what can be done to work with them to get alternative coverage and/or perhaps some funding and the like.

17.      Moreover, the Debtors engaged in good faith negotiations prior to filing the Motion, by waiting to file the Motion until after the Retiree Committee was appointed and had chosen counsel, by making the Initial Proposal to the Retiree Committee before filing the Motion, and by waiting to file the Motion until after the Debtors had an initial discussion with counsel.[4] Furthermore, since filing the Motion the Debtors have continued to engage with the Retiree Committee, including by responding to the Retiree Committee's extensive document requests, making material modifications to the Initial Proposal, and conducting discussions with the Creditors' Committee that resulted in its support for the improved terms of the Revised Proposal.

18.      The Retiree Committee suggests that it was justified in rejecting the Initial Proposal because it does not provide for terms equivalent to the Retirees' death benefits.  Retiree Objection ¶ 34.  But that cannot possibly be the test, because if it were, a debtor would not be able to obtain meaningful relief by modifying retiree benefits.  Under the Revised Proposal more than 18,000 of the Retirees will get a general unsecured claim in an amount equal to the amount of their

---

[3] A copy of the relevant pages of the Transcript of Record is attached hereto as **Exhibit D**.

[4] Moreover, the claim that the Initial Proposal was provided to the Retiree Committee without any meaningful opportunity for discussion (Retiree Objection ¶ 32) is disingenuous.  In fact, shortly after the appointment of the attorneys for the Retiree Committee, the Debtors' counsel had a discussion with them to discuss the parameters of an acceptable proposal.  Through nobody's fault, the Debtors were advised that the Retiree Committee was not prepared to discuss specifics and that, in light of the time constraints, they would understand if the Debtors filed the Motion before the Retiree Committee had a meaningful opportunity to negotiate.

WEIL:\97152351\6\73217.0004

death benefits under the Retiree Plan and will receive the same treatment of those claims under the Plan as other holders of general unsecured claims.

19.    Furthermore, there can be no dispute that, if the Plan is confirmed, the treatment of the Retirees under the Revised Proposal is more favorable than the treatment they would get if the cases were converted to chapter 7 cases, because section 1114 is inapplicable in a chapter 7 case. *See* In *re Ionosphere Clubs, Inc*., 134 B.R. 515, 523 (Bankr. S.D.N.Y. 1991). Moreover, if the Court were to deny the Motion and the cases were converted to chapter 7 cases, recoveries to the holders of general unsecured claims would be substantially reduced. *See* Motion ¶ 24.

20.    Finally, the Retiree Committee contends that the Initial Proposal is unacceptable because most Retirees are getting general unsecured claims, rather than administrative expense claims. Retiree Objection ¶ 40. The Retiree Committee fails to appreciate that both Proposals effectively satisfy the requirements of section 1114(e)(2), because the estate of each Retiree that passed away between March 15, 2019 and the date of an order granting the Motion will be granted an administrative expense claim equal to the amount of its benefit, subject to the individual and aggregate caps. In this way, the Debtors have attempted to make the termination of the Retiree Plan effective March 15 virtually a "non-event" for those Retirees.

21.    Similarly, the Retiree Committee makes much of the fact that the Debtors propose to modify retiree benefits retroactive to March 15, 2019. Retiree Objection ¶¶ 3, 28. The retroactive effect was done as a matter of convenience, and does not adversely affect the treatment of the Retirees who died during this period. Furthermore, in correspondence regarding the Revised Proposal, the Debtors indicated that they were prepared to discuss the retroactive nature of the relief requested. *See* Revised Proposal.

WEIL:\97152351\6\73217.0004

22.     While the Retiree Committee expends a lot of energy complaining about the sequence of events that transpired here, it is notable that they have completely failed to address the most critical part of the standard for relief under section 1114 -- whether "such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities." Bankruptcy Code section 1114(g)(3).

23.     The Debtors' Plan provides for a liquidation of their assets.  Courts have held that "[n]ecessary to permit the reorganization of the debtor," in a chapter 11 liquidation case, is interpreted to mean "necessary to the Debtor's liquidation."  *In re Chicago Constr. Specialties, Inc.*, 510 B.R. 205, 216–18 (Bankr. N.D. Ill. 2014). *See also* Transcript of Record at 60 ("[W]hen applying the Court's discretion under the statute to consider a request to modify or terminate for retiree benefit [*sic*], one needs to take into account the fact that the debtor is, in fact, liquidating and not, in essence, present the debtor with a superpriority by employing a more constricted definition of the term "reorganization" in the statute."); Motion ¶¶ 31-34, and cases cited therein. Notably, the Retiree Committee has not asked for any information related to the Debtors' financial condition or their Liquidation Analysis.  The reason is obvious – they cannot reasonably dispute that the Debtors do not have the funds necessary to continue to fund the Retiree Plan.  As reflected in the Debtors' Administrative Solvency Tracker and Budget Update, dated July 31, 2019, a copy of which is annexed hereto as **Exhibit E**, the Debtors are projecting an estimated $5 million administrative surplus on the effective date of the Plan.  Compliance with the terms of the Retiree Committee's Counterproposal would consume the entire surplus – and then some – and jeopardize confirmation of the Plan.

**The DOL Joinder**

24.     Like the Retiree Objection, the DOL Objection is, for the most part,
dedicated to rehashing the issues already litigated before the Court. *See* DOJ Objection ¶¶ 1-6

25.     The DOL also objects to the retroactive termination of the Retiree Plan.
DOL Joinder ¶¶ 7, 11, 12.  As noted, *supra* at ¶ 17, the Debtors proposed the retroactive termination
as a matter of convenience, because that was when Securian terminated its coverage, and when
both Securian and the Debtors provided the Retirees with notice of termination of the Retiree Plan.
Being that the Securian Policy will not be reinstated, the Debtors believe it would be clearer to
keep the same date, rather than setting a new one, and potentially creating confusion for Retirees
on whether or not they have had benefits under the Securian Policy since March 2019.  As the
Debtors have advised the Retiree Committee, however, they are not opposed to reconsidering the
Termination Date, and believe that there will be no material impact to the Debtors' estates.

26.     The DOL also complains that the Debtors waited to file the Motion after the
Court entered an order appointing the Retiree Committee.  DOL Joinder ¶ 16.  Had the Debtors
filed the Motion before the Retiree Committee was appointed, or prior to making a proposal to the
Retiree Committee, however, they would have been in direct contravention of § 1114(f)(1), which
sets forth the timing for filing an application to modify retiree benefits.

**CONCLUSION**

27.     The Debtors are not happy with the circumstances in which they find
themselves and they terminated the Retiree Plan only after concluding that they had no other
option.  They have worked in good faith to be responsive to the issues raised by the Retiree
Committee and, as reflected in the Revised Proposal, have made material modifications which will
inure to the benefit of the Retirees.  The Revised Proposal treats the Retirees fairly and equitably.

WEIL:\97152351\6\73217.0004

And the concessions that the Debtors have proposed are essential to confirmation of the Debtors'

Plan.  For the reasons stated herein, in the Motion, and in the Murphy Declaration, the Debtors

respectfully request that the Court overrule the Objections and grant the Motion.


Dated: August 19, 2019
      New York, New York

                                          */s/ Jacqueline Marcus*
                                          WEIL, GOTSHAL & MANGES LLP
                                          767 Fifth Avenue
                                          New York, New York  10153
                                          Telephone:  (212) 310-8000
                                          Facsimile:  (212) 310-8007
                                          Ray C. Schrock, P.C.
                                          Jacqueline Marcus
                                          Garrett A. Fail
                                          Sunny Singh

                                          *Attorneys for Debtors*
                                          *and Debtors in Possession*

WEIL:\97152351\6\73217.0004

**<u>Exhibit A</u>**

**Revised Proposal**

## Peshko, Olga

| | |
|---|---|
| **From:** | Marcus, Jacqueline |
| **Sent:** | Thursday, August 15, 2019 12:24 PM |
| **To:** | Lawlor, James; Postighone, Cassandra; Michael M. Mulder |
| **Cc:** | Axelrod, Brad J.; Elena Liveris; Schrock, Ray; Margolis, Steven; Peshko, Olga; Dublin, Philip (pdublin@akingump.com); Dizengoff, Ira; Brauner, Sara; William Murphy |
| **Subject:** | RE: In re Sears Holdings Corporation, et. al, Case No. 18-23538 (RDD) - Retirees Committee |
| **Attachments:** | Sears - Retiree Claim Proposal 08-15-19.pdf |

Please see the Debtors' response to the Retiree Committee's 8/1/19 proposal below.



**Jacqueline Marcus**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Jacqueline.marcus@weil.com
+1 212 310 8130 Direct
+1 212 310 8007 Fax

**From:** Lawlor, James <JLawlor@WMD-LAW.com>
**Sent:** Thursday, August 1, 2019 9:26 AM
**To:** Peshko, Olga <Olga.Peshko@weil.com>; Marcus, Jacqueline <jacqueline.marcus@weil.com>
**Cc:** Axelrod, Brad J. <BAxelrod@wmd-law.com>; Michael M. Mulder <mmmulder@mmulderlaw.com>; Elena Liveris <eliveris@mmulderlaw.com>; Postighone, Cassandra <CPostighone@WMD-LAW.com>
**Subject:** RE: In re Sears Holdings Corporation, et. al, Case No. 18-23538 (RDD) - Retirees Committee

Olga,

I am available after 1 today, and I will let Mike advise if he is as well. Also the Committee met yesterday afternoon and has the following counterproposal: The Debtors' responses are in red below. The proposal set forth below has been approved by the Debtors' Restructuring Committee. While we have requested the approval of the Official Committee of Unsecured Creditors (the "Creditors' Committee"), we have been advised that we will not get a response until Friday afternoon. In the meantime, however, we have been advised that the Creditors' Committee's attorneys are recommending approval of the proposal.

Please note that all of the terms set forth below are contingent upon confirmation and consummation of a chapter 11 plan.

- Payment of the full benefit owed ($5,000 to $14,500) to any beneficiary of a retiree that passed away between December 2018 and the date of the entry of a final order approving the modification of the Retiree Plan (the "Breach Period") who was not previously paid by Securian, and an administrative reserve fund set aside to fund such claims. The Debtors will agree to provide the full benefit to any retiree who passed/passes away between March 15, 2019 and the date of the entry of a final order approving the modification of the Retiree Plan (the "Breach Period") who was not previously paid by Securian, subject to a cap of $10,000 per employee and an aggregate cap of $300K. In the event that the aggregate death benefit claims exceed the aggregate cap, then

payment would be pro rata. Note that the information we previously provided to you from Securian indicates that there are approximately 1,400 retirees whose benefit is less than $5K; the administrative expense claim for those retirees would not exceed the amount of the applicable benefit. We do not have access (nor does Securian) to the number of retirees who have died during the so-called Breach Period. We will work with the Retiree Committee to establish a procedure and an administrative reserve so that the distributions would not be made until the Retiree Committee can determine the total number of retirees that fit into this category.

- Reimbursement to any retiree that purchased replacement life insurance in the Breach Period, after Securian sent notice to retirees of the termination of their coverage. The Debtors cannot agree to this because the cost would be prohibitive. Moreover, given the termination of the Retiree Plan, the Debtors believe that the retirees likely would have purchased the coverage in any event.

- Establishment of an administrative expense fund in the amount of the unpaid premiums that should have been made during the Breach Period to be distributed pro rata to all remaining retirees on the basis of the amount of their life insurance policies owed ($5,000 to $14,500). The Debtors cannot agree to this; it would require an expenditure of $1.3 million per month and the Debtors do not have the liquidity to create such a fund. Moreover, as we discussed during our conference call, the allowance of an administrative claim for the estate of any retiree who died during the Breach Period as per point 1 above effectively gives each retiree the benefit of an administrative expense claim for benefits that accrued during that period, and your proposal would be a double dip for the retirees, since that amount is in respect of the past coverage period.

- For those retirees still alive after the Breach Period, general unsecured claims in the face amount of the lost insurance benefit ($5,000 to $14,500). The Debtors have reviewed this request. The Debtors propose to provide each Retiree with a general unsecured claim in an amount equal to the lesser of the amount of his or her death benefit under the Retiree Plan, and $6,250. Our analysis, as copy of which is attached, indicates that the aggregate unsecured claim would be approximately $165 million and that more than 18,000 of the Retirees would get a claim equal to the full amount of their death benefit. We would propose to provide similar treatment to the 161 people identified as "grandfathered disabled," which would generate additional general unsecured claims of approximately $1 million.

- Process to provide appropriate direct notice to all retirees of their claims and reasonable time period to file their claims, and a process for the retirees or beneficiaries to assert claims if they disagree with the amounts set forth in the notice. Agreed.

- Termination of the vested life insurance benefits upon the date, if any, the Court approves modification of the Retiree Plan. We provided that the termination would be as of March 15, the date the Debtors terminated the Plan. Given that the Securian policy terminated as of that date, we think it makes sense to include the retroactive feature, but we are prepared to discuss.

- Payment of the legal expenses for the retirees that successfully prosecuted the motion under a substantial contribution theory. We previously asked you to provide the amount of legal expenses incurred by the movants. We have also requested information regarding how much of the $250,000 the Court authorized to be spent by the Retiree Committee remains outstanding. To the extent that there are funds remaining, the Debtors have no objection to having the Retiree Committee use such funds to reimburse the movants.

- Identical treatment for the full benefit owed to any retiree under the Allstate plan, provided, however, that there is evidence that the plan for those 12 retirees is fully vested. The Committee has no such evidence, and would like a copy of the plan documents. To the best of the Committee's knowledge, the 12 employees were not part of the class in the 2001 settlement, which is the basis of the class's vested rights. We do not believe that the proposed treatment for the retirees covered by the Allstate plan is required by section 1114 and, therefore, the Debtors reject this element of your proposal.

Finally, we read that Sears estimates that 25 retirees have passed away following termination. Please advise how that information was obtained, for example, was it based on past experience or an actual head count. Moreover, please let us know if the Securian has the ability to estimate based on experience the likely total number of retirees that my pass away during the Breach Period. We based our estimate on information that was provided to us by the movants; our number was a multiple of the number we had been given. While Securian has provided us with information regarding the number of retirees who died from January 1 to March 15 (183) they do not have information for the period since

March 15. If the Retiree Committee or NARSE has any specific information, we would appreciate it if you would provide it to us.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

|  | Count | Capped at 5,000 Amount | Count | Capped at 6,250 Amount |
|---|---|---|---|---|
| GRANDFATHERED DISABLEDS |  |  |  |  |
| Grandfathered Disableds At Capped Amount | 161 | 804,000 | 161 | 1,002,500 |
| | | | | |
| RETIREES |  |  |  |  |
| Basic Life Benefits |  |  |  |  |
| Benefits at capped amt and lower | 8,072 | 37,962,615 | 18,036 | 95,097,735 |
| Benefits exceeding capped amt at capped amt | 21,147 | 105,735,000 | 11,183 | 69,893,750 |
| Total Basic Life Benefits at caped amt | 29,219 | 143,697,615 | 29,219 | 164,991,485 |
| | | | | |
| Supplemental Life (3 Retirees) at Capped Amount | | 13,000 | | 15,500 |
| | | | | |
| Total Proposed General Unsecured Claim | | 144,514,615 | | 166,009,485 |

**<u>Exhibit B</u>**

**Revised Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re                                              :
                                                   :        **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,          :
                                                   :        **Case No. 18-23538 (RDD)**
                                                   :
           Debtors.[1]                             :        **(Jointly Administered)**
-----------------------------------------------------------------x

## ORDER AUTHORIZING MODIFICATION OF RETIREE BENEFITS

Upon the motion, dated July 29, 2019 (ECF No. 4635) (the "**Motion**")[2] of Sears

Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a) and 363(b)

of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing

modification of retiree benefits, all as more fully set forth in the Motion; and the Court having

jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§

157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

2012 (Preska, C.J.); and consideration of the Motion and the Murphy Declaration and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and upon consideration of the objection filed by the Retiree Committee (ECF No. 4768) and joinder filed by the Secretary of the United States Department of Labor (ECF No. 4762), and the Debtors' Reply in support of the Motion (ECF No. __); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on August 22, 2019 (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that the relief requested is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, pursuant to section 1114 of the Bankruptcy Code, to terminate the Retiree Plan effective March 15, 2019.

3.      The Debtors are authorized to implement, and perform under, the terms of the revised Proposal attached hereto as **Exhibit 1**, and to take any and all actions that may be reasonably necessary or appropriate to effectuate the same, perform all obligations contemplated under the revised Proposal, and carry out this Order.

2

4.      Nothing contained in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an assumption under section 365 or any other section of the Bankruptcy Code of, or a post-petition re-affirmation of, the Retiree Plan, the Policies, or any other agreement.

5.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

6.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2019
           White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

WEIL:\97154896\2\73217.0004

**<u>Exhibit 1</u>**

WEIL:\97154896\2\73217.0004

**Proposed Terms for Modification of the Retiree Plan**
**Necessary to Permit Confirmation of the Debtors' Proposed Joint Chapter 11 Plan**

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession (the "**Debtors**"), propose that the Sears Retiree Group Life Insurance Plan (the "**Retiree Plan**") be modified, as follows:

1. **Effective Date of Termination**: The Retiree Plan shall be terminated effective March 15, 2019 (the "**Termination Date**").

2. **Relief for Class Members under the Stipulation of Settlement** (In Re: Sears Retiree Group Life Insurance Litigation Civil Action No. 97 C 7453) (the "**Stipulation**"). In the event of confirmation and consummation of a chapter 11 plan for the Debtors:

   a. The estate of any Class Member that dies between the Termination Date and the date of the entry of a final order approving the modification of the Retiree Plan, and whose benefits under the Securian Financial Group Life Insurance Policy (the "**Securian Policy**") have not been paid by Securian, will receive an allowed administrative expense claim in the chapter 11 case of Sears Roebuck & Co. ("**SCR**") in the amount of his or her full benefit (the "**Administrative Expense Claim**"), subject to a cap of $10,000 per Class Member and an aggregate cap of $300,000 (the "**Administrative Expense Claim Aggregate Cap**"). In the event the aggregate amount of Administrative Expense Claims exceeds the Administrative Expense Claim Aggregate Cap, then payment for such claims will be made pro rata. The Debtors will establish an administrative expense fund in the amount of the Administrative Expense Claim Aggregate Cap, and no distributions will be made to Retirees from such fund until such time as all Administrative Expense Claims and the amounts each claimant is entitled to have been determined.

   b. Each remaining Class Member will receive an allowed general unsecured claim in the chapter 11 case of SRC in the amount equal to the lesser of (i) the amount of the Class Member's benefit and (ii) $6,250 (the "**General Unsecured Claims**").

   c. The Debtors shall use commercially reasonable efforts to assist the Retiree Committee in determining which Class Members are entitled to Administrative Expense Claims and General Unsecured Claims, to the extent the Debtors have access to such information. The Debtors agree establish (1) a process providing for appropriate direct notice to all Class Members of their claims and a reasonable time period to file their claims (the "**Notice**"), and (2) a process for the Class Members or their beneficiaries to assert objections to the amount of their total benefit under the Securian Policy, as set forth in the Notice.

3. **Relief for Other Participants in the Plan**: In the event of confirmation and consummation of a chapter 11 plan for the Debtors, the Debtors will provide allowed General Unsecured Claims for those 161 employees who are characterized as

"grandfathered disableds," subject to the cap of $6,250 per employee, whether such employees are entitled to basic or supplemental life insurance.

4. **<u>Reimbursement</u>**: The Debtors agreed to reimburse the Retirees who filed the motion for the appointment of a retirement committee (ECF No. 4054) for their reasonable legal fees, to the extent that there are funds remaining from the $250,000 budget approved by the Court for the Retiree Committee.

WEIL:\97154899\4\73217.0004

**<u>Exhibit C</u>**

**Redline of Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re                                              :
                                                   :        **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,          :
                                                   :        **Case No. 18-23538 (RDD)**
                                                   :
          Debtors.[1]                              :        **(Jointly Administered)**
------------------------------------------------------------x

<u>**ORDER AUTHORIZING MODIFICATION OF RETIREE BENEFITS**</u>

Upon the motion, dated July 29, 2019 (ECF No. [——]4635) (the "**Motion**")[2] of

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a) and

363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing

modification of retiree benefits, all as more fully set forth in the Motion; and the Court having

jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the Murphy Declaration and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and upon consideration of the objection filed by the Retiree Committee (ECF No. 4768) and joinder filed by the Secretary of the United States Department of Labor (ECF No. 4762), and the Debtors' Reply in support of the Motion (ECF No. ___); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been provided in accordance with the Amended Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion on August 1222, 2019 (the "**Hearing**"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that the relief requested is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, pursuant to section 1114 of the Bankruptcy Code, to terminate the Retiree Plan effective March 15, 2019.

3.      The Debtors are authorized to implement, and perform under, the terms of the revised Proposal attached hereto as **Exhibit 1**, and to take any and all actions that may be

reasonably necessary or appropriate to effectuate the same, perform all obligations contemplated under the revised Proposal, and carry out this Order.

4.      Nothing contained in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an assumption under section 365 or any other section of the Bankruptcy Code of, or a post-petition re-affirmation of, the Retiree Plan, the Policies, or any other agreement.

5.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

6.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated:   August [   ]_____, 2019
          White Plains, New York

                                        _____
                                        THE HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

WEIL:\97154896\1\73217.0004 WEIL:\97154896\2\73217.0004

**Exhibit 1**

**Proposed Terms for Modification of the Retiree Plan**
**Necessary to Permit Confirmation of the Debtors' Proposed Joint Chapter 11 Plan**

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession (the "**Debtors**"), propose that the Sears Retiree Group Life Insurance Plan (the "**Retiree Plan**") be modified, as follows:

1. **Effective Date of Termination**: The Retiree Plan shall be terminated effective March 15, 2019 (the "**Termination Date**").

2. **Relief for Class Members under the Stipulation of Settlement** (In Re: Sears Retiree Group Life Insurance Litigation Civil Action No. 97 C 7453) (the "**Stipulation**"). In the event of confirmation and consummation of a chapter 11 plan for the Debtors:

   a. The estate of any Class Member that dies between the Termination Date and the date of the entry of a final order approving the modification of the Retiree Plan, and whose benefits under the Securian Financial Group Life Insurance Policy (the "**Securian Policy**") ~~are~~have not been paid by Securian, will receive an allowed administrative expense claim in the ~~Debtors'~~chapter 11 cases of Sears Roebuck & Co. ("**SCR**")~~.~~ in the amount of ~~$5,000~~his or her full benefit (the "**Administrative Expense Claim**")~~. The Retiree Committee shall file a single proof of claim in the Debtors' chapter 11 cases for all Class Members entitled to the Administrative Expense Claims, setting forth each Class Member, on or before September 30, 2019.~~, subject to a cap of $10,000 per Class Member and an aggregate cap of $300,000 (the "**Administrative Expense Claim Aggregate Cap**"). In the event the aggregate amount of Administrative Expense Claims exceeds the Administrative Expense Claim Aggregate Cap, then payment for such claims will be made pro rata. The Debtors will establish an administrative expense fund in the amount of the Administrative Expense Claim Aggregate Cap, and no distributions will be made to Retirees from such fund until such time as all Administrative Expense Claims and the amounts each claimant is entitled to have been determined.

   b. Each remaining Class Member will receive an allowed general unsecured claim in the ~~Debtors' cases~~chapter 11 case of SRC in the amount of ~~$5,000~~equal to the lesser of (i) the amount of the Class Member's benefit and (ii) $6,250 (the "**General Unsecured Claims**"). ~~The Retiree Committee shall file a single proof of claim in the Debtors' chapter 11 cases for all Class Members entitled to the General Unsecured Claims, setting forth each Class Member, on or before September 30, 2019.~~

   c. The Debtors shall use commercially reasonable efforts to assist the Retiree Committee in determining which Class Members are entitled to Administrative Expense Claims and General Unsecured Claims, to the extent the Debtors have access to such information. The Debtors agree establish (1) a process providing for appropriate direct notice to all Class Members of their claims and a reasonable

time period to file their claims (the "**Notice**"), and (2) a process for the Class Members or their beneficiaries to assert objections to the amount of their total benefit under the Securian Policy, as set forth in the Notice.

3. **Relief for Other Participants in the Plan**:   In the event of confirmation and consummation of a chapter 11 plan for the Debtors, the Debtors will provide allowed General Unsecured Claims for those 161 employees who are characterized as "grandfathered disableds," subject to the cap of $6,250 per employee, whether such employees are entitled to basic or supplemental life insurance.

4. **Reimbursement**: The Debtors agreed to reimburse the Retirees who filed the motion for the appointment of a retirement committee (ECF No. 4054) for their reasonable legal fees, to the extent that there are funds remaining from the $250,000 budget approved by the Court for the Retiree Committee.

WEIL:\97154899\1\73217.0004WEIL:\97154899\4\73217.0004

## Exhibit D

**Transcript of Record**

Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 18-23538-rdd

5

6  - - - - - - - - - - - - - - - - - - - - -x

7

8  In the Matter of:

9

10  SEARS HOLDINGS CORPORATION, et al.,

11

12          Debtors.

13

14  - - - - - - - - - - - - - - - - - - - - -x

15

16          United States Bankruptcy Court

17          300 Quarropas Street, Room 248

18          White Plains, New York

19

20          June 20, 2019

21          10:06 AM

22

23  B E F O R E :

24  HON. ROBERT D. DRAIN

25  U.S. BANKRUPTCY JUDGE

Page 59

1    terminate it as to the class, the appointment of a

2    committee, as I did in Delphi, would be warranted rather

3    than leave that issue hanging and subject the debtors to the

4    risk of violating Section 1114(e) and/or Section 1129(a)(13)

5    when their plan comes up for confirmation.

6         The debtors have also argued that because this is

7    clearly a liquidating case, the debtors have sold

8    substantially all of their assets and they propose a

9    liquidating Chapter 11 plan, Section 1114 shouldn't be read

10   to apply.  There is some logic to that argument given the

11   reference in Section 1114 to reorganization not liquidation

12   and to some of the legislative history especially

13   Congressman's Fish's floor remarks where he seemed to think

14   that there was a distinction between liquidation and

15   reorganization although one could also read those remarks to

16   view this is a distinction between Chapter 7 and Chapter 11.

17        But although the argument has been acknowledged in

18   a number of bankruptcy cases, I'm not aware of any case,

19   except arguably one, that holds that a Court should not

20   appoint a committee or has the discretion not to appoint a

21   committee where it appears one would otherwise be warranted

22   simply because the debtor is in liquidation mode or has

23   liquidated but is still in Chapter 11.

24        I think the best analysis of this actually is in

25   In re SAI Holdings Ltd., 2007 Bank. LEXIS 1051 (N.D. Oh.,

Page 60

1    March 26, 2007) at pages 16 -- I'm sorry -- excuse me -- at

2    pages 12 through 16.  And I adopt that analysis.

3            I also agree with former Chief Judge Lifland's

4    view in In re Ionosphere Clubs Inc., 134 B.R. 515 (Bank.

5    S.D.N.Y. 1991), that Section 1114 applies in liquidating

6    cases.  But when applying the Court's discretion under the

7    statute to consider a request to modify or terminate for

8    retiree benefit, one needs to take into account the fact

9    that the debtor is, in fact, liquidating and not, in

10   essence, present the debtor with a superpriority by

11   employing a more constricted definition of the term

12   "reorganization" in the statute.

13           So I believe a committee should be formed here.

14   There's enough of a serious issue as to the class members

15   that the debtor does not have the right, under the plan

16   itself, to terminate the plan for me to reach that

17   conclusion.  I say that notwithstanding that there's no

18   evidence that the plan itself was ever amended.  And it may

19   be that the debtors would actually be able to convince the

20   Court that the plan itself is still modifiable under

21   applicable law or terminatable at will under applicable law,

22   but given the settlement stipulation and my limited

23   knowledge of ERISA, that's not necessarily an easy argument

24   to win.

25           That leaves the issue as to whether the committee

Page 61

1     should have a budget and/or a limited function here.  I am

2     somewhat reluctant to prescribe the function of the

3     committee definitionally other than saying who it's

4     representing which I think I've already done.  But I do

5     think a budget is warranted here as a reality check subject

6     to, as was the case in Delphi, the right to come back and

7     show the Court that really additional work beyond the budget

8     was warranted.  To me, the major issues here, and perhaps

9     the only issues here for a committee to deal with, are less

10    the rationale behind a rejection or termination of these

11    policies which, unfortunately, given the fact that the

12    debtors are liquidating, colloquially is kind of a no-

13    brainer, unfortunately, but rather who is covered by the

14    stipulation, how those people get notice, what can be done

15    to work with them to get alternative coverage and/or perhaps

16    some funding and the like.

17              Given my sense that many of the beneficiaries of

18    the plan are seniors who would benefit from counsel on those

19    types of issues alone, I think that's certainly well spent

20    time.

21              So I will set a budget of $250,000.  It doesn't

22    mean that it needs to be spent, obviously.  On the other

23    hand, as I said before, if legitimate good faith work led to

24    the incurrence of another 50,000 or something, professional

25    counsel could come back and ask for an increase.

Page 62

```
 1                    I don't think that tilts the playing field here.
 2        I don't believe the debtors are in any position to overwhelm
 3        counsel with their resources given the financial picture of
 4        these estates either.  So while the U.S. trustee's concern
 5        may be realistic in other cases, I don't think it is here.
 6                    So I will ask counsel for the movants to e-mail an
 7        order granting the motion as I've provided it.  You don't
 8        need to formally settle that order but you should provide a
 9        copy to counsel for the debtors, to the DOL and to the
10        committee just to make sure it's consistent with my ruling,
11        and the U.S. trustee.
12                    MR. LAWLOR:  Thank you, Your Honor.
13                    THE COURT:  Thank you.  And I expect the U.S.
14        trustee will promptly form a committee.
15                    Okay.
16                    MR. SCHROCK:  Thanks very much, Your Honor.
17        Again, Ray Schrock for Weil Gotshal for the debtors.
18                    I thank the Court for a quick ruling on this and
19        we'll look forward to sitting down with the retiree
20        committee.  I just want to echo your sentiments.  We
21        certainly will not overwhelm the retiree committee.  We want
22        to approach this issue fairly practically.  We will file an
23        1114 motion just to make sure that we get that relief in
24        front of the Court.  We'll sit down with the retiree
25        committee and address issues including notice, talk to them,
```

**<u>Exhibit E</u>**

**Administrative Solvency Tracker**

WEIL:\97152351\6\73217.0004

PRIVILEGED AND HIGHLY CONFIDENTIAL - SUBJECT TO FRE 408; DRAFT MATERIALS FOR DISCUSSION PURPOSES

# SEARS HOLDINGS

## ADMIN SOLVENCY TRACKER AND BUDGET UPDATE

**July 31, 2019**




18-23538-shl   Doc 4885   Filed 08/19/19   Entered 08/19/19 14:54:18   Main Document
PRIVILEGED AND HIGHLY CONFIDENTIAL — SUBJECT TO FRE 408; DRAFT MATERIALS FOR DISCUSSION PURPOSES

# Admin Solvency Tracker

*Under the closing estimates, the Company is projecting a ~$5mm administrative surplus; the Company has identified ~$15mm of potential mitigating items that provide additional cushion*

**Sears Holdings Corporation**
**Administrative Solvency Tracker**
*Dated: 7/29/2019*

| | Actual | Forecast | Total | Transform Liabilities | Base Case | Mitigating Items | Mitigated Scenario |
|---|---|---|---|---|---|---|---|
| **Admin Claims** | | | | | | | |
| (1) 503(b)9 | $ - | $ 181 | $ 181 | $ (139) | $ (42) | $ 5 | $ (37) |
| (2) Accounts Payable | - | 166 | 166 | (166) | - | - | - |
| (3) Accrued Payroll | 42 | - | 42 | - | (42) | - | (42) |
| (4) GOB Expense | 26 | - | 26 | - | (26) | - | (26) |
| (5) Accrued Sales Tax | 20 | - | 20 | - | (20) | - | (20) |
| (6) Severance, WARN, and EE Claims | 11 | 1 | 13 | (13) | - | - | - |
| (7) Franchise Taxes | 1 | 2 | 3 | - | (3) | - | (3) |
| (8) Net TSA | - | 1 | 1 | - | (1) | - | (1) |
| (9) US Trustee Fees | 2 | 1 | 3 | - | (3) | - | (3) |
| (10) Board Fees | 1 | 1 | 2 | - | (2) | - | (2) |
| (11) RemainCo Winddown Costs | 91 | 28 | 119 | - | (119) | - | (119) |
| (12) Professional Fees | 46 | - | 46 | - | (46) | - | (46) |
| (13) Net Prepaid Inventory Shortfall | - | - | - | 55 | (55) | - | (55) |
| (14) Disputed Items | - | - | - | - | - | - | - |
| (15) Other Potential Liabilities | - | 10 | 10 | - | (10) | - | (10) |
| **Total** | **241** | **390** | **631** | **(263)** | **(368)** | **5** | **(364)** |
| **Assets** | | | | | | | |
| (16) Professional Fee Carve-Out Account | $ 46 | $ - | $ 46 | $ - | $ 46 | $ - | $ 46 |
| (17) MTN Notes | 81 | - | 81 | - | 81 | - | 81 |
| (18) U-HAUL | 7 | - | 7 | - | 7 | - | 7 |
| (19) SHIP Security Deposit | 5 | - | 5 | - | 5 | - | 5 |
| (20) GOB Inventory Gross | 59 | 4 | 64 | - | 64 | - | 64 |
| (21) ESL Payment at Close | 35 | - | 35 | - | 35 | - | 35 |
| (22) Cash in Stores | 9 | - | 9 | - | 9 | - | 9 |
| (23) Utility Deposit | - | 5 | 5 | - | 5 | - | 5 |
| (24) Cash in Transit at Close | 12 | 20 | 32 | - | 32 | - | 32 |
| (25) Credit Card Receivables | 15 | 0 | 15 | - | 15 | - | 15 |
| (26) Israel Cash | 3 | - | 3 | - | 3 | - | 3 |
| (27) Pro-Rated Rent | 13 | - | 13 | - | 13 | - | 13 |
| (28) Specified Receivables | - | - | - | - | - | - | - |
| (29) Residual Real Estate | 17 | 15 | 32 | - | 32 | - | 32 |
| (30) Excess Inventory Proceeds | - | 6 | 6 | - | 6 | - | 6 |
| (31) Calder Sculpture | - | 4 | 4 | - | 4 | 6 | 10 |
| (32) Hoffman Estates Tax Credit | 3 | 3 | 6 | - | 6 | 4 | 10 |
| (33) Other Cash Accounts | 4 | - | 4 | - | 4 | - | 4 |
| (34) Other Proceeds | 2 | 5 | 7 | - | 7 | - | 7 |
| (35) Avoidance Actions | - | - | - | - | - | - | - |
| **Total** | **309** | **64** | **373** | **-** | **373** | **10** | **383** |
| **Solvency / (Gap)** | $ 69 | | | | $ 5 | $ 15 | $ 19 |

Base Case w/ Mitigating Items



PRIVILEGED AND HIGHLY CONFIDENTIAL OR SUBJECT TO FRE 408, DRAFT MATERIALS FOR DISCUSSION PURPOSES

# Admin Solvency Tracker (cont'd)

**Notes:**

(1)  Reflects maximum estimate of $181mm of 503(b)(9) claims with potential for reduction of $5mm through claims reconciliation

(2)  Previous estimate of $180mm from 2/10/19 has been revised to reflect the court's ruling at the APA hearing on 7/11 to exclude accounting adjustments; it is estimated that the total number will be below the $166mm Transform is assuming leaving no liability to the estate

(3)  All accrued payroll liabilities have been satisfied

(4)  GOB Expense reflects GOB Payroll and GOB Rent; all GOB expenses from week 9 – week 11 assumed to be severance

(5)  All accrued sales tax liabilities as of close have been satisfied, however the estate will still owe residual sales taxes on GOB activity post-close

(6)  Assumes Transform will pay severance per APA; all GOB expenses from week 9 – week 11 assumed to be severance

(7)  Franchise tax estimates provided by Company and reflect franchise tax payments in jurisdictions that assess franchise taxes

(8)  Net cost of transition service agreements

(9)  Reflects fees payable to the U.S. Trustee

(10)  Fees payable to board members in consideration for services

(11)  Costs to wind down remainder of estate

(12)  Updated to reflect latest professional fee carveout estimate

(13)  Prepaid Inventory Shortfall estimated at $63mm, offset by $8mm of excess Warranty Receivables

(14)  Disputed items reflect $50mm placeholder to account for risk of specified receivables shortfall and $4.5mm reflecting 50% of the difference between the estate's estimate of the Prepaid Inventory Shortfall amount and Transform's estimate of the Prepaid Inventory Shortfall amount

(15)  $10mm of estimated Other Potential Liabilities subject to continued review and analysis by counsel

(16)  Updated to reflect latest professional fee carveout estimate

(17)  Net proceeds from MTN note sale, cash held in wind down account

(18)  Net proceeds earmarked for wind down account from sale of unencumbered properties to U-HAUL, cash held in wind down account

(19)  Refund of SHIP deposit by Service.com, cash held in wind down account

(20)  The estate has realized $59mm of gross recovery and expect an additional $4.4mm as part of cash reconciliation

(21)  Credit bid release payment by ESL of $35mm

(22)  Post-close payment by ESL of $9mm for cash in stores which was paid the week of close

(23)  Revised to reflect the court's ruling at the APA hearing on 7/11; estimated that $4.7mm out of the $10mm deposit account stays with the estate

(24)  Includes $12mm of cash in regional banks and $20mm of cash in transit currently being withheld by Transform

(25)  Received $13.3mm from First Data on 6/7/19 and $1.3mm from Amex on 6/26; Remaining $0.4mm represents excess credit card receivables from pre-close activity being withheld by Transform

(26)  Cash in transit payment of $3mm from Transform related to transfer of cash from Israeli subsidiary

(27)  Rent proration payment as a result of occupancy expense proration; settled with Transform for $8mm.

(28)  Assumes 0% collection of excess book value of Specified Receivables

(29)  Reflects estimated sale value of residual real estate not acquired by Transform; reduced by $8mm for the Hoffman Estates property from court's ruling at the APA hearing on 7/11

(30)  Reflects 90% recovery on excess inventory delivered at close, stemming from delivery of $1.664bn of collateral vs. $1.657bn requirement

(31)  Includes $4mm estimate for $15mm -$25mm Calder sculpture (subject to ongoing litigation)

(32)  Represents $6mm Hoffman estates tax credit refund

(33)  Includes cash in Luxottica account, consignment reserve account, and Sparrow Holding account

(34)  Proceeds primarily related to estate checks held by Transform and owed to the estate as part of the cash reconciliation

(35)  Preference firms still conducting diligence related to potential preference recoveries




2

PRIVILEGED AND HIGHLY CONFIDENTIAL - SUBJECT TO FRE 408; DRAFT MATERIALS FOR DISCUSSION PURPOSES

# Weekly Cash Flow Budget – Base Case

| Retail Month | February | | | | March | | | | April | | | | May | | | | June | | | | July | | | | August | | | | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Budget Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | | | | | |
| Forecast / Actual | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | ACT | FCST | FCST | FCST | FCST | FCST | FCST | | | | | |
| Week Ending | 2/16 | 2/23 | 3/2 | 3/9 | 3/16 | 3/23 | 3/30 | 4/6 | 4/13 | 4/20 | 4/27 | 5/4 | 5/11 | 5/18 | 5/25 | 6/1 | 6/8 | 6/15 | 6/22 | 6/29 | 7/6 | 7/13 | 7/20 | 7/27 | 8/3 | 8/10 | 8/17 | 8/24 | 8/31 | | | | | |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Wave 3 GOB Inflows | $5 | $17 | $14 | $11 | $9 | $2 | $0 | ($0) | $0 | $0 | ($0) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $4 | $- | $- | $- | $- | $- | | | | | $64 |
| Cash in Transit Proceeds | 9 | - | - | - | - | - | 3 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 20 | - | - | - | - | - | - | | | | | 32 |
| Cash from Israel | - | - | 3 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | | | | 3 |
| Credit Card Receivables | - | - | - | - | - | - | - | - | - | - | - | - | 13 | - | - | 1 | - | - | - | - | - | - | 0 | - | - | - | - | - | - | | | | | 15 |
| Cash in Stores | 9 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | | | | 9 |
| Real Estate Asset Sales | - | 4 | 5 | - | - | - | 3 | - | 2 | 2 | - | - | - | 1 | - | 0 | - | - | - | - | - | - | 0 | - | - | 15 | - | - | - | | | | | 32 |
| Excess Inventory Proceeds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 6 | - | - | - | - | - | - | | | | | 6 |
| ESL Closing Proceeds | 35 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | | | | 35 |
| TSA Proceeds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | - | - | - | - | - | - | | | | | 1 |
| SHIP Deposit | - | - | 5 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 5 | - | - | - | - | - | - | | | | | 5 |
| Utility Deposit | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 5 | - | - | - | - | - | - | | | | | 5 |
| Hoffman Estates Tax Credit | - | - | - | - | - | - | - | - | - | - | - | - | 3 | - | - | - | - | - | - | - | - | - | 3 | - | - | - | - | - | - | | | | | 6 |
| Calder Statue | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 4 | - | - | - | - | | | | | 4 |
| Pro-Rated Rent | - | - | - | - | - | - | - | 5 | - | - | - | - | - | - | - | - | - | - | - | - | 8 | - | - | - | - | - | - | - | - | | | | | 13 |
| ESL Severance Assumption[1] | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 13 | - | - | | | | | 13 |
| ESL 503b9 Assumption | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | - | - | - | - | - | - | - | - | - | - | 139 | - | - | | | | | 139 |
| Other Proceeds | - | - | - | - | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | - | 5 | - | - | - | - | | | | | 7 |
| **Total Oldco Receipts** | **$58** | **$22** | **$19** | **$15** | **$13** | **$2** | **$8** | **$0** | **$3** | **$0** | **$2** | **$2** | **$0** | **$3** | **$1** | **$0** | **$15** | **$0** | **$0** | **$1** | **$0** | **$0** | **$8** | **$0** | **$45** | **$-** | **$-** | **$19** | **$-** | | | | | **$388** |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| OldCo Accrued Payroll & Benefits | ($29) | ($14) | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | $- | | | | | ($42) |
| Taxes | - | (5) | (7) | - | (0) | (4) | - | (0) | (0) | (0) | (2) | - | (0) | (0) | (0) | - | (1) | - | - | (1) | - | - | - | - | - | - | - | - | - | | | | | (20) |
| GOB Operating Costs[1] | - | - | (6) | (6) | (3) | (1) | (3) | (4) | - | - | (3) | - | - | - | - | - | - | - | (0) | - | - | (0) | - | - | - | - | - | - | - | | | | | (26) |
| Professional Fee Carve Out Funding[2] | - | - | (20) | - | (15) | - | (7) | - | - | - | - | - | (19) | (1) | (9) | - | (2) | (2) | - | (2) | (4) | (2) | (2) | (9) | (2) | (2) | (2) | (6) | (5) | | | | | (109) |
| Post-Petition Payables | - | - | - | - | - | (1) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (1) | - | - | | | | | (1) |
| 503(b)(9) Claims | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (181) | - | - | - | | | | | (181) |
| TSA Disbursements | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (1) | - | - | - | - | - | - | | | | | (1) |
| Franchise Tax | - | - | (0) | - | - | - | - | - | - | - | - | - | - | - | - | - | (1) | - | - | - | - | - | (2) | - | - | - | - | - | - | | | | | (3) |
| Severance & WARN | - | - | - | - | (1) | - | - | (1) | (1) | (8) | - | - | - | - | - | - | (0) | (0) | - | (1) | - | - | (2) | - | - | - | - | - | - | | | | | (13) |
| US Trustee Fees | - | - | - | - | - | - | - | - | - | (0) | (2) | - | - | - | - | - | - | - | - | - | - | - | (1) | - | - | - | (1) | - | - | | | | | (2) |
| Board Fees | - | - | (0) | - | (0) | - | (1) | - | (0) | - | - | - | - | - | - | (0) | - | - | - | - | (0) | - | (1) | - | - | (55) | - | (0) | (0) | | | | | (55) |
| Net Prepaid Inventory Shortfall | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (10) | - | - | - | - | - | - | | | | | (10) |
| Other Potential Liabilities | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | | | | (10) |
| Other Liabilities and Expenses | (1) | (0) | (0) | - | (0) | - | - | (0) | (3) | (1) | (1) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (1) | (0) | - | - | | | | | (10) |
| **Total OldCo Disbursements** | **($29)** | **($19)** | **($33)** | **($6)** | **($18)** | **($7)** | **($`)** | **($4)** | **($4)** | **($2)** | **($9)** | **($6)** | **($2)** | **($20)** | **($2)** | **($8)** | **($0)** | **($3)** | **($3)** | **($0)** | **($5)** | **($2)** | **($3)** | **($0)** | **($24)** | **($2)** | **($2)** | **($2)** | **($2)** | **($6)** | **($241)** | **($0)** | **($0)** | **($475)** |
| **PASS-THROUGH RECEIPTS** | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| New Co Payroll Remittance | $5 | $11 | $26 | $23 | $28 | $24 | $27 | $23 | $23 | $29 | $25 | $33 | - | $3 | - | - | $3 | $4 | $5 | $4 | - | $4 | $3 | $3 | $3 | $3 | $3 | $3 | $3 | | | | | $276 |
| New Co Licensing Remittance | 5 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 5 | 4 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | | | | | 105 |
| **Total Pass-Through Receipts** | **$10** | **$14** | **$29** | **$26** | **$31** | **$27** | **$31** | **$26** | **$26** | **$32** | **$29** | **$37** | **$3** | **$4** | **$5** | **$3** | **$4** | **$3** | **$3** | **$4** | **$3** | **$3** | **$3** | **$3** | **$3** | **$3** | **$3** | **$3** | **$3** | | | | | **$381** |
| **PASS-THROUGH DISBURSEMENTS** | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| New Co Payroll | ($5) | ($11) | ($26) | ($23) | ($28) | ($24) | ($27) | ($23) | ($23) | ($29) | ($25) | ($33) | - | ($3) | - | - | ($3) | ($4) | ($5) | ($4) | - | ($4) | ($3) | ($3) | ($3) | ($3) | ($3) | ($3) | ($3) | | | | | ($276) |
| Licensing Payments For New Co | (5) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (5) | (4) | (4) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | | | | | (105) |
| **Total Pass-Through Disbursements** | **($10)** | **($14)** | **($29)** | **($26)** | **($31)** | **($27)** | **($31)** | **($26)** | **($26)** | **($32)** | **($29)** | **($37)** | **($3)** | **($4)** | **($5)** | **($3)** | **($4)** | **($3)** | **($3)** | **($5)** | **($4)** | **($4)** | **($3)** | **($3)** | **($3)** | **($3)** | **($3)** | **($3)** | **($3)** | | | | | **($381)** |
| **Net Cash Flow** | **28** | **2** | **(14)** | **9** | **(5)** | **(5)** | **(2)** | **(4)** | **(1)** | **(2)** | **(6)** | **(5)** | **(2)** | **(17)** | **(1)** | **(8)** | **15** | **(3)** | **(3)** | **1** | **(4)** | **(2)** | **5** | **(0)** | **(24)** | **43** | **(2)** | **(2)** | **17** | **(6)** | **(88)** | **(0)** | **(0)** | **(88)** |
| Beginning Available Cash | $92 | $120 | $123 | $108 | $117 | $112 | $107 | $105 | $101 | $100 | $98 | $92 | $87 | $85 | $68 | $67 | $59 | $74 | $71 | $68 | $69 | $65 | $63 | $68 | $68 | $44 | $86 | $84 | $82 | $100 | $93 | $5 | $5 | $92 |
| Change in Available Cash | 28 | 2 | (14) | 9 | (5) | (5) | (2) | (4) | (1) | (2) | (6) | (5) | (2) | (17) | (1) | (8) | 15 | (3) | (3) | 1 | (4) | (2) | 5 | (0) | (24) | 43 | (2) | (2) | 17 | (6) | (88) | (0) | (0) | (87) |
| Ending Available Cash | $120 | $123 | $108 | $117 | $112 | $107 | $105 | $101 | $100 | $98 | $92 | $87 | $85 | $68 | $67 | $59 | $74 | $71 | $68 | $69 | $65 | $63 | $68 | $68 | $44 | $86 | $84 | $82 | $100 | $93 | $5 | $5 | $5 | $5 |
| **ENDING CASH BALANCES** | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| OldCo Operating Accounts | $28 | $31 | $16 | $21 | $15 | $11 | $9 | $5 | $11 | $9 | $0 | $9 | $7 | $5 | $4 | $3 | $17 | $14 | $11 | $13 | $8 | $6 | $11 | $11 | $4 | $43 | $41 | $39 | $41 | $34 | $- | $- | $- | $- |
| Consignment Accounts | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | - | - | - | - | 4 |
| Wind-Down Account | 88 | 88 | 88 | 93 | 93 | 93 | 93 | 86 | 86 | 88 | 74 | 74 | 59 | 59 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 55 | 55 | 55 | 1 | 1 | 1 | 1 | | |
| Professional Fee Carve Out Account | 111 | 105 | 109 | 105 | 114 | 100 | 96 | 92 | 89 | 84 | 66 | 61 | 54 | 67 | 68 | 73 | 72 | 73 | 69 | 68 | 72 | 49 | 49 | 46 | 52 | 51 | 50 | 48 | 47 | 42 | - | - | - | |
| **Total Cash** | **$231** | **$227** | **$217** | **$222** | **$226** | **$208** | **$201** | **$194** | **$190** | **$183** | **$158** | **$149** | **$139** | **$136** | **$136** | **$132** | **$147** | **$144** | **$138** | **$137** | **$137** | **$112** | **$117** | **$114** | **$95** | **$137** | **$134** | **$131** | **$147** | **$135** | **$5** | **$5** | **$5** | **$5** |

(1)   All GOB expenses from week 9 – week 11 are assumed to be severance (2 weeks after the final store closure)
(2)   $108mm of total funding represents ~$112mm of total accrual from February 2019 to October 2019 less ~$10mm of accruals for the 1st week of February less
       ~$2mm Lazard accrual plus ~$9mm of under funded balance for week ending 2/9




3

PRIVILEGED AND HIGHLY CONFIDENTIAL OR/15/19 NO FEE (48) DRAFT MATERIALS FOR DISCUSSION PURPOSES

# Professional Fee Details

| Period: | Feb-19 Total | Mar-19 Total | Apr-19 Total | May-19 Total (a) | Jun-19 Total | Jul-19 Total | Aug-19 Total | Sep-19 Total | Oct-19 Total | Feb - Oct Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Estate Professionals** | | | | | | | | | | |
| Weil, Gotshal & Manges | $8,650,000 | $4,300,000 | $5,150,000 | $5,300,000 | $3,800,000 | $5,100,000 | $3,000,000 | $1,250,000 | $1,250,000 | $37,800,000 |
| M-III Advisory Partners | 2,666,667 | 2,500,000 | 3,000,000 | (1,250,000) | 1,200,000 | 1,200,000 | 1,000,000 | 750,000 | 750,000 | 11,816,667 |
| Lazard | 200,000 | 200,000 | 200,000 | (1,713,605) | - | 100,000 | 100,000 | - | - | (913,605) |
| Wachtell | 137,500 | 150,000 | - | (1,676,482) | - | - | - | - | - | (1,388,982) |
| McAndrews | - | - | 5,000 | - | - | - | - | - | - | 5,000 |
| A&G Realty Partners | 100,000 | - | - | - | - | - | - | - | - | 100,000 |
| JLL | 1,375,750 | 30,000 | 30,000 | 299,655 | - | - | - | - | - | 1,735,405 |
| D&T (BK) | 1,195,820 | 516,041 | 609,099 | 870,670 | 448,904 | 398,552 | 150,000 | - | - | 4,189,086 |
| D&T (Audit) | 315,000 | 2,270,201 | - | - | - | - | - | - | - | 2,585,201 |
| D&T (Tax) | 321,477 | 3,813,855 | 546,754 | 272,500 | 62,171 | 68,456 | - | - | - | 5,085,213 |
| Prime Clerk | 3,033,393 | 709,487 | 4,113,861 | 2,585,755 | 1,548,769 | 1,315,703 | 200,000 | 1,640,000 | 510,000 | 15,656,967 |
| Public Relations | 15,000 | - | - | - | - | - | - | - | - | 15,000 |
| Ballard Spahr | - | - | - | 400,000 | 200,000 | 160,000 | 400,000 | 400,000 | - | 1,560,000 |
| Litigation Legal Fees | - | - | - | - | - | - | - | 2,200,000 | 2,200,000 | 4,400,000 |
| Total Estate Professionals | 18,010,606 | 14,489,584 | 13,654,714 | 5,088,493 | 7,259,844 | 8,342,711 | 4,850,000 | 6,240,000 | 4,710,000 | 82,645,952 |
| **Restructuring Comm. Prof.** | | | | | | | | | | |
| Paul Weiss | 2,097,977 | 1,046,554 | 1,184,859 | 1,297,306 | 1,517,891 | 797,503 | 1,250,000 | - | - | 9,192,091 |
| Evercore | 216,667 | 200,000 | 200,000 | 200,000 | 162,500 | 50,000 | 50,000 | - | - | 1,079,167 |
| Alvarez & Marsal | 190,000 | 3,000 | 504,000 | 76,000 | 75,000 | 75,000 | 75,000 | - | - | 998,000 |
| Young Conaway | 16,500 | 5,500 | 30,000 | 139,934 | 8,600 | 7,000 | - | - | - | 207,534 |
| Stout Risius Ross | 2,056 | 2,000 | 10,500 | 178,915 | 10,828 | - | - | - | - | 204,298 |
| Total Restr. Comm. Prof. | 2,523,200 | 1,257,054 | 1,929,359 | 1,892,155 | 1,774,819 | 929,503 | 1,375,000 | - | - | 11,681,090 |
| **Creditor Committee Prof.** | | | | | | | | | | |
| Akin Gump | 3,250,000 | 1,450,000 | 1,400,000 | 3,002,845 | 1,475,000 | 1,715,000 | 1,250,000 | - | - | 13,542,845 |
| Houlihan Lokey | 500,000 | 500,000 | 275,000 | 275,000 | (423,381) | 125,500 | 125,500 | - | - | 1,377,619 |
| FTI Consulting | 461,667 | 561,000 | 284,000 | 584,000 | 136,000 | 164,100 | 275,000 | - | - | 2,465,767 |
| Herrick, Feinstein | - | - | - | - | 384,401 | 32,582 | - | - | - | 416,983 |
| Total Creditor Comm. Prof. | 4,211,667 | 2,511,000 | 1,959,000 | 3,861,845 | 1,572,020 | 2,037,182 | 1,650,500 | - | - | 17,803,214 |
| **Prof. Accrual Bef. Success Fees** | **24,745,472** | **18,257,638** | **17,543,073** | **10,842,493** | **10,606,683** | **11,309,396** | **7,875,500** | **6,240,000** | **4,710,000** | **112,130,255** |
| Success Fee Accrual | 29,000,000 | - | - | (1,650,000) | - | - | - | - | - | 27,350,000 |
| **Prof. Accrual Incl. Success Fees** | **$53,745,472** | **$18,257,638** | **$17,543,073** | **$9,192,493** | **$10,606,683** | **$11,309,396** | **$7,875,500** | **$6,240,000** | **$4,710,000** | **$139,480,255** |

(a) May 2019 Total column is net of overaccrual releases

 

(1) Feb 2019 represents total accruals for February 2019
(2) Professional Accrual Before Success Fees – see bridge to budget cash flow on page 3

4