Hearing Date: August 22, 2019
Hearing Time: 10:00 a.m.

TARTER KRINSKY & DROGIN LLP
*Attorneys for Alpine Creations Ltd.*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Rocco A. Cavaliere, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
In re:                                                        :
                                                              :   Chapter 11
SEARS HOLDINGS CORPORATION, *et. al.*[1],                     :
                                                              :   Case No. 18-23538 (RDD)
                               Debtors.                       :   (Jointly Administered)
------------------------------------------------------------- x

**ALPINE CREATIONS LTD.'S REPLY (I) IN RESPONSE TO DEBTORS' OMNIBUS OBJECTION TO VENDORS' MOTIONS FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND (II) IN FURTHER SUPPORT OF MOTION OF ALPINE CREATIONS LTD TO ALLOW AND COMPEL PAYMENT OF <u>ADMINISTRATIVE EXPENSE CLAIMS UNDER 11 U.S.C. §§ 503(b)(1) AND 503(b)(9)</u>**

TO:   THE HONORABLE ROBERT D. DRAIN,
      UNITED STATES BANKRUPTCY JUDGE:

Alpine Creations Ltd. ("<u>Alpine</u>"), by and through its undersigned counsel, submits this

reply (the "<u>Reply</u>") (i) in response to the omnibus objection (the "<u>Debtors' Objection</u>") of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

{Client/085149/1/01895025.DOCX;1 }

above-captioned debtors and debtors and debtors in possession (the "<u>Debtors</u>") to various motions for allowance and payment of administrative expense claims, including Alpine's motion dated July 26, 2019 for allowance and payment of its administrative expense claims (the "<u>Motion</u>"), and (ii) in further support of the Motion.[2] In support of this Reply, Alpine respectfully states as follows:

### REPLY TO DEBTORS' OBJECTION

1.  While the Debtors now wish to dispute the appropriate time for payment of allowed administrative expense claims of vendors, there is no dispute that the Debtors' success in continuing as a going concern hinged on the support of vendors that were willing to work with the Debtors from the period leading to the Petition Date through a sale of their assets. Alpine, among many others, was one such creditor. As set forth in the Motion, in January 2019, Alpine shipped goods to the Debtors in accordance with four easy to read invoices totaling $202,286.89. Thus, notwithstanding that payment was due months ago on these invoices and over six months have passed since the sale closing, the Debtors continue to request that the Court deprive Alpine, who has been very patient to date, of immediate payment on account of its allowed administrative claims.

2.  Notably, the Debtors' Objection does not dispute the merits of the § 503(b)(1) Claim and § 503(b)(9) Claim asserted by Alpine and as detailed in the Motion. All of the invoices supporting the foregoing claims are attached to the Motion and were provided to the Debtors months ago with no objections as to delivery and quality of the goods or any other objection otherwise. Alpine has satisfied its burden of proving the allowance of its claims. The only issue and objection raised by the Debtors to the Motion is that Alpine needs to wait until

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

an unknown period of time for payment because there appears to be some question regarding the administrative solvency of these estates. The Debtors' Objection misses the mark.

3. Frankly, as an initial matter it is inappropriate for the Debtors to continue to "kick the can" down the road and refuse to engage in a review of pending motions for allowances of claims and requests for payment. The Motion was properly filed and served with all evidentiary support (i.e. the invoices) attached thereto. Rather than review such invoices and point to a factual dispute (to which there is none), the Debtors simply argue that they are entitled to wait until some undetermined period of time to respond to motions for allowance and payment of administrative claims. See e.g. Debtors' Objection, p. 5, fn. 4 (citing to their proposed Plan that includes a 180 day window after the Effective Date to object to claims). That is not the law. Indeed, if every time that the Debtors sought relief in this Court, a creditor's objection seeking more time to consider a debtor's requested relief was sustained, then nothing would get done. The Debtors have had plenty of time to review invoices attached to the Motion.

4. The Debtors' Objection hinges, in some respects, on prior statements from the Court at a hearing on May 21, 2019 to consider motions of other trade creditors seeking allowance and payment of their administrative claims. See Debtors' Objection, ¶ 2. The facts and circumstances of those prior motions, which dealt with "inducement" arguments pertaining to a prior order of the Court and/or a certain Debtors' letter to vendors, are not relevant to the Motion now before the Court. Nor was Alpine involved in those earlier proceedings. Further, the fact that the Court previously delayed, in May 2019, payment to holders of administrative claims "at this point", does not mean that the Court will now allow this unfairness and delay to continue. Indeed, in May 2019, the Debtors had not yet obtained approval of their disclosure

statement and had not filed their June 28, 2019 plan, which is set for confirmation a few weeks from now. Much more time has passed since the sale closing and the Court has also ruled on an important dispute between the Debtors and Transform.

5. Further, in an attempt to create the impression that the Debtors are concerned about fairness to other administrative creditors, the Debtors suggest that Alpine (and others that expended legal fees to file motions) should not be paid because it is unfair to many other administrative creditors that have not sought immediate payment, especially in light of a possible administrative insolvency. The circumstances surrounding why some creditors have pursued the filing of motions while others have not is simply not relevant to the relief requested by Alpine and all other vendors that have expended costs to file motions. It is not the law that the Court must deprive every movant of relief because other parties are sitting on the sidelines. The reasons for sitting on the sidelines are plentiful and could include, among other things, that some creditors do not have funds to fight or alternatively, the creditor is actually so large that payment now, as opposed to many months from now, makes no difference to them and their bottom line. The Bankruptcy Code and the case law interpreting such statute as well as the circumstances of each case and fundamental fairness will govern whether relief is granted or not. In this case, as it relates to Alpine, nothing has been presented in the Debtors' Objection which should deprive Alpine of immediate allowance and payment of its administrative expense claims.

6. The Debtors' Plan itself, to which Alpine filed an objection dated August 2, 2019 (the "Alpine Objection") [Dkt. No. 4700] further evidences that the Debtors are not all concerned with the rights of silent administrative creditors, notwithstanding statements in the Debtors' Objection to the contrary. In the Plan, the Debtors are essentially seeking a ruling

from this Court that any administrative creditors that did not object to the Plan could essentially be deemed to impliedly consent to the treatment proposed under the Plan, which calls for delayed distributions to holders of allowed administrative claims. This construct under the Plan does "lip service" to section 1129(a)(9) and is not tailored in any way to protect the statutory rights of administrative creditors, who, in the Debtors' Objection to the Motion, the Debtors suggest they care so much about.

7. To make matters worse, and as further demonstration that the Debtors are actually not really concerned with the rights of silent administrative creditors, the Plan essentially calls for its own special administrative creditor class consisting of professionals that are required to be paid on the Effective Date, while administrative trade vendors that actually provided goods, which created revenue (used to pay such legal fees), are placed in a separate "class" and forced to wait an underdetermined period of time for payment. See e.g. Objection of Whitebox Asymmetric Partners, L.P. et al., ¶ 6 [Dkt. No. 4721] (noting a Plan cannot be confirmed that pays professionals in full, provides money to unsecured creditors and leaves administrative claimants "holding the bag"). It is frankly unconscionable and unprecedented for administrative trade creditors to be required to incur all the risk of future payment from a liquidating trust while certain administrative trade creditors (such as professionals) are paid in full at confirmation. This unfair treatment is actually taking place right now. By the Debtors' Objection, if sustained, Alpine and other creditors that filed motions will continue to be required to sit idly by and incur risk of non-payment while monies in the Debtors' estates are expended for the benefit of other administrative claim holders such as professionals.

8. Ironically, and adding insult to injury to Alpine and other similarly situated creditors, within just a few hours of filing the Debtors' Objection, which seeks to deny Alpine

the right to any payment of its legitimate invoices for goods delivered to the Debtors in accordance with section 503(b)(1) of the Code, Debtors' counsel diligently filed, among other things, its second quarterly fee application seeking over $14 million in legal fees for four months of work from March 1, 2019 through June 30, 2019. This fee request is on top of over $40 million awarded and paid to Debtors' general counsel (without any holdbacks) alone in the first interim period.[3] A quick review of the fee application reveals no less than 104 timekeepers. Will Debtors' counsel actually express to the Court at the upcoming hearing that they could not have diverted just one attorney to communicate with one Debtor representative to confirm the backup support to Alpine's Motion? There is no justification for the delay in confirming the allowance of Alpine's administrative expense claims.

9. In sum, if certain administrative claims can be timely paid on a monthly basis during a period in which the Debtors claim there are administrative insolvency concerns,[4] then the same Debtors must also pay the administrative claims of vendors that have presented motions in support of their rights under section 503(b) of the Bankruptcy Code. As stated, there has been no objection by the Debtors concerning the nature and quality of the goods provided to the Debtors by Alpine to support their going concern efforts. As the Debtors seem very keen on expanding the law on "implied consent" in other contexts, Alpine submits that the

---

[3] Alpine understands this is a difficult case and as a result, significant fees have been incurred. Debtors' counsel may ultimately show at a final fee hearing that its compensation is reasonable under section 330(a), justifying future awards and the retention of fees from prior awards. That is not the point. It is noted, by way of analogy only, that payment for Alpine's goods, which created revenue in these cases, is no less important than the payment of legal fees.

[4] It would certainly be unfortunate if the cases are administratively insolvent. However, the fact that the Debtors are expending considerable time, money and effort to advance the Plan process would suggest that they believe, in their business judgment, that they either are administratively solvent at this time or can confidently obtain enough consents from administrative claims to get to that point. Indeed, the Debtors have consistently stated in other pleadings, and in reliance on the famous Administrative Solvency Tracking Chart, that these cases are administratively solvent.

Debtors' silence with respect to the backup support in the Motion could itself be deemed their "implied consent" that Alpine's administrative expense claims are allowable at this time.

10. In sum, the Debtors cannot have it both ways. Notwithstanding their commitment to proceed with an expensive plan process, if the Debtors are truly concerned about administrative insolvency, the Debtors cannot deprive Alpine of its just payment on its § 503(b)(1) Claim and § 503(b)(9) Claim at this time, while, at the same time, timely paying other administrative expense claims, like professional fees. Colloquially speaking, something has to give.

## RESERVATION OF RIGHTS

11. Alpine reserves the right to supplement or amend this Reply and make additional arguments at the hearing to consider the Motion and, as preserved and requested in its Motion (¶ 17), present evidence at the upcoming hearing to the extent the Court deems it necessary.

**WHEREFORE**, Alpine respectfully requests that the Court approve the Motion and deny the Debtors' Objection and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 19, 2019

Respectfully submitted,

TARTER KRINSKY & DROGIN LLP
*Attorneys for Alpine Creations Ltd.*

By:  /s/Rocco A. Cavaliere
Rocco A. Cavaliere
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000