WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

------------------------------------------------------------ x

## DECLARATION OF WILLIAM GALLAGHER IN SUPPORT OF ASSIGNMENT OF UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

Pursuant to 28 U.S.C. § 1746, I, William "Bill" C. Gallagher, hereby declare as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Rover Brands Business Unit, LLC (f/k/a Sears Brands Management Corporation) (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1.      I submit this declaration in support of the *Notice of Assignment of Unexpired Leases of Nonresidential Real Property* (ECF No. 4763) (the "**Assignment Notice**").[2]

2.      I am a Managing Director of M-III Partners, LP ("**M-III**"), the financial advisor to Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**").

3.      I began my tenure at M-III in October 2018 and immediately thereafter began working for and on behalf of the Debtors.  Over the last ten months, I have gained an extensive knowledge of the companies' real-estate assets.  Specifically, I have worked to manage and monetize the companies' real estate assets in connection with these chapter 11 cases.  Inclusive of my time at M-III, I have almost forty years of experience in the financial industry, principally in the arenas of credit risk management, real-estate financing, mergers and acquisitions, and financial advisory services.  I have approximately ten years of experience in restructuring, having been retained by a large real-estate finance company in 2009 to manage the restructuring of the company's assets.  Furthermore, I was intimately involved with the negotiations and decision to assume and subsequently assign the Debtors' leased premises located at 5525 S. Soto Street, Vernon, CA 90058 (the "**Warehouse**," and such lease, the "**Warehouse Lease**") and 2700 Fruitland Ave, Vernon, CA 90058 (the "**Parking Lot Lease**", and together with the Warehouse Lease, the "**Vernon Leases**") to Henry Shahery (the "**Buyer**").

4.      Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gleaned during the course of my engagement with the Debtors, my discussions with the Debtors' senior management, other

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Motion of Debtors for Authority to Assume Unexpired Leases of Nonresidential Real Property* (ECF No. 3033) (the "**Assumption Motion**").

members of the M-III team, and the Debtors' other advisors, and my review of relevant documents and/or my opinion based upon my experience.  If called to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, and/or opinion.

### Adequate Assurance of Future Performance

5.      In accordance with chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and the *Order Pursuant to Sections 365(a) and 365(f) of the Bankruptcy Code Authorizing the Debtors to Assume Unexpired Leases of Nonresidential Real Property* (ECF No. 3314) (the "**Assumption Order**"), the Buyer provided to the Debtors information regarding adequate assurance of its future performance under the applicable Vernon Leases (such information, the "**Adequate Assurance Information**") for dissemination to the applicable counterparties to the Vernon Leases (the "**Vernon Counterparties**").  The Buyer's Adequate Assurance Information contained information supporting its ability to comply with the requirements of section 365(f)(2) of the Bankruptcy Code, including the Buyer's operational and/or financial wherewithal to comply with its obligations under the Vernon Leases.

6.      The Buyer currently subleases the properties from the Debtors under the Vernon Leases for aggregate rental payments of $1,920,000.00 per year.  If the Court approves the assignment of the Vernon Leases to the Buyer, the Buyer's annual monetary obligations under the Vernon Leases would be $300,000.00 in rent, $400,000.00 in real estate taxes, and $75,000.00 to $100,000.00 in insurance costs, or approximately $800,000.00 in the aggregate. As a result, the Buyer would have a net decrease in rent obligations under the Vernon Leases of approximately $1,100,000.00.  Accordingly, I believe that, in light of the Buyer's past track record with the Debtors in making timely payments of the significantly higher rent required

WEIL:\97156417\4\73217.0004

under the Subleases, the Buyer will be able to satisfy his obligations under the Vernon Leases upon assignment.

7.     The Adequate Assurance Information provided to the applicable Vernon Counterparty included the following:

i.     A bank letter from Comerica Wealth Management ("**Comerica**") showing that the Buyer has access to liquid funds in the amount of $25,000,000.00, including a $15,000,000.00 line of credit, a copy of which is attached hereto as **Exhibit A**;

ii.     A bank letter from Comerica showing the Buyer's liquidity in excess of $18,400,000.00 and access to a line of credit, "in the low 8 figures," a copy of which is attached hereto as **Exhibit B**;

iii.     A letter from Comerica offering to provide an irrevocable letter of credit covering the total amount of monthly rent due under the Warehouse Lease for one year, a copy of which is attached hereto as **Exhibit C**;

iv.     The Lease Sale Agreement between the Debtors and the Buyer, which sets forth the Buyer's responsibilities upon assignment, a copy of which is attached hereto as **Exhibit D**;

v.     Information regarding bids received for the roof replacement project and work already performed on the roof for the Warehouse, copies of which are attached hereto as **Exhibit E**;

vi.     Certificates of insurance procured by the Debtors and the Buyer, which name the Parking Lot Landlord as an additional insured, copies of which are attached hereto as **Exhibit F**; and

vii.     An offer by the Buyer to provide a security deposit of one year's rent to the Parking Lot Landlord, a copy of which is attached hereto as **Exhibit G**.

Furthermore, the Buyer has responded to numerous inquiries regarding his intentions with regard to the property and his ability to perform under the applicable Vernon Lease.  Copies of those emails are attached hereto as **Exhibit H**.  In Addition, the Buyer's payment history as sub-tenant under the Vernon Leases, is attached hereto as **Exhibit I**.  I believe that the Adequate Assurance

WEIL:\97156417\4\73217.0004

Information substantiates my opinion that the Buyer will be able to satisfy all of his obligations under the Vernon Leases.

8.     It has come to my attention that the cure amounts as set forth in the Assumption Motion and the Assumption Order were incorrect.   I have determined that the Debtors mistakenly included one month's rent under the Warehouse Lease and the Parking Lot Lease as the cure amount for the Parking Lot Lease.   All past due amounts due under the Vernon Leases have been paid.

### Conclusion

9.     For the reasons set forth herein and in the Adequate Assurance Information, I believe that assignment of the Vernon Leases should be approved.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  August 20, 2019
        New York, New York

*/s/ William C. Gallagher*
_____
William C. Gallagher
Managing Partner
M-III Advisory Partners, LP

-5-

## Exhibit A

**ComericA**

**Wealth Management**

August 1, 2019

Regarding:    Henry Shahery

This letter shall serve as verification that as of this date Mr. Henry Shahery currently has immediate access to liquid funds in the amount of $25,000,000 which includes a $15,000,000 line of credit with us. He has handled all of his credit transactions at Comerica Bank as agreed; keeping all of his obligations to Comerica Bank and making all payments promptly.  Mr. Shahery has been a valued client of Comerica Bank since July 2003 and has been a valued client of mine for over twenty years.

Please feel free to contact me at 310.712.6743 if you have any questions or require additional information.

Sincerely,

D. Gavin Perdue
Group Manager

## Exhibit B

**ComericA**

Wealth Management

August 15, 2019

Re:    Henry Shahery

To Whom It May Concern:

Based on a banking relationship that has spanned for more than twenty years, Mr. Shahery is an individual who meets all of his financial obligations in a timely manner.  We have verified statements and can confirm that Mr. Shahery $18,410,700 in liquidity Comerica Bank 8000xxx7448.  In addition, he has access to a line of credit with availability in the low 8 figures.

Mr. Shahery has been and remains to be a valued client of Comerica Bank. If you have any questions, please feel free to call me directly at 310-712-6751.

Sincerely,

Sonja Cochran
Vice President
Relationship Manager

**Comerica**

**Wealth Management**



August 15, 2019

Verified by: _____

Sonja Cochran, VP Relationship Manager

**<u>Exhibit C</u>**

**ComericA**

**Wealth Management**

August 15, 2019

Re:    LEASE 5525 S. Soto Street, Vernon, California

To Whom it May Concern:

Comerica Bank has had the opportunity to review the master lease between Sears and 5525 S. Soto St. Associates ("Landlord"), for the property located at 5525 S. Soto Street, Vernon, California (the "Lease"). Comerica Bank is willing to provide an irrevocable letter of credit for the total amount of the monthly rent due for twelve (12) months subject to language acceptable to Bank. The letter of credit will be renewed annually for the term of the lease and all option terms subject to the Bank's standard underwriting procedures as required by law.

If you have any questions regarding the above please do not hesitate to call me at 310-712-6751.

Sincerely,

Sonja Cochran
Vice President
Relationship Manager

**<u>Exhibit D</u>**

EXECUTION VERSION

## LEASE SALE AGREEMENT
*Vernon, CA , S #68738*

**THIS LEASE SALE AGREEMENT** ("**Contract**") is made as of July 25, 2019 (the "**Effective Date**"), by and between **SEARS, ROEBUCK AND CO.**, a New York corporation and INNOVEL SOLUTIONS, INC., a Delaware corporation (collectively "**Seller**" or "**Tenant**") and **Henry Shahery or his assignee**, ("**Purchaser**"; Seller and Purchaser are also collectively referred to in this Contract as the "**Parties**" and individually referred to in this Contract as a "**Party**"). Seller and Purchaser agree as follows:

1.    **PURCHASE AND SALE**

Seller is (i) the tenant under those certain leases for a warehouse and adjacent parking lot which is designated in Seller's accounting system as CA# S68738 more specifically described on the respective leases **Exhibits "A-1"** (the Warehouse) and "A-2" (the Parking Lot) attached hereto and made a part hereof (together with any amendments, modifications, extensions and renewals, the "**Primary Leases**"), with respect to all or a portion of certain real property (the "**Leased Premises**"), which real property is more particularly described in **Exhibits "B-1"** and B-2 attached hereto and made a part hereof (the "**Property**"); and (ii) sublandlords under those certain Subleasees, more specifically described on **Exhibits "C-1 and C-2"** attached hereto and made a part hereof (together with any amendments, modifications, extensions and renewals, the "**Subleases**", and together with the Primary Lease, collectively, the "**Leases**"). Subject to the terms and conditions set forth in this Contract, Seller agrees to sell, assign, convey and transfer all of its rights, title and interests as tenant under the Lease to Purchaser and Purchaser agrees to purchase and accept such assignment and assume all rights, title, interests and obligations of Tenant under the Lease at the Purchase Price set forth in Section 2 of this Contract.  On the Closing Date set forth in Section 9 of this Contract, Seller shall cause the Lease to be assigned to Purchaser.

2.    **PURCHASE PRICE**

(a)    **Purchase Price.**    The consideration for the assignment of the Lease shall be Five Million Two Hundred Fifty Thousand and No/100 Dollars ($5,250,000.00) (the "**Purchase Price**") and payable by Purchaser in United States dollars in good and certifiable funds at Closing.

(b)    **Options Consideration**.  Purchaser tenders to Seller and Seller acknowledges receipt of the sum of $100.00 as independent and non-refundable contract consideration for any options granted in this Contract.  This independent consideration is in addition to any other deposits made under this Contract, is earned by Seller upon its execution of this Contract, and will not be credited against the Purchase Price.

3.    **EARNEST MONEY DEPOSIT**

Within two (2) business days of the Effective Date, Purchaser shall deposit with Chicago Title Insurance Company, 10 South LaSalle Street, Suite 3100, Chicago, Illinois 60603

Attention: Cheri L. Sutton, Telephone: (312) 223-2958, Fax: (312) 223-5801, Email: Cheri.Sutton@ctt.com ("**Escrow Agent**") the sum of One Million and No/100 Dollars ($1,000,000.00) United States dollars (the "**Earnest Money Deposit**") by means of a certified check, cashier's check or wire transfer, to be held by the Escrow Agent in an interest bearing account in accordance with the terms of the strict joint order escrow instructions executed by the Parties attached hereto as **Exhibit "D"** and incorporated into this Contract by this reference (the "**Earnest Money Escrow Instructions**") and also the terms and conditions of this Contract.  Any escrow fees as set forth in the Earnest Money Escrow Instructions will be paid by Purchaser.  Purchaser may elect to direct the Escrow Agent to invest the Earnest Money Deposit on its behalf in compliance with the Escrow Agent's standard investment instructions, and Purchaser agrees that it shall be solely responsible for any investment fees charged by the Escrow Agent.  Subject to the terms and conditions as otherwise set forth in this Contract, any and all interest accrued on the Earnest Money Deposit shall be paid to Purchaser at Closing.  The Earnest Money Deposit shall be credited against the Purchase Price at the time of Closing, and Purchaser agrees to pay or satisfy the balance of the Purchase Price, plus or minus prorations, no later than 11:00 am (Chicago time) on the Closing Date, by wire transfer of immediately available funds.  If Purchaser shall fail to deposit the Earnest Money Deposit within the time period provided for above, Seller may at any time prior to the deposit of the Earnest Money Deposit, terminate this Contract, in which case this Contract shall be null and void <u>ab initio</u> and neither Party shall have any further rights or obligations to the other hereunder, except as otherwise expressly set forth in this Contract.

4.    **INTENTIONALLY OMITTED.**


5.    **PRORATIONS AND EXPENSES**

(a)    **Prorations.**    Rent payable under the Primary Leases and Rent received by Seller under the Subleases, any funds remaining in the construction escrow maintained by Seller, any security deposits paid to Seller under the Subleases and which are in the possession of Seller, and all taxes including state property taxes and City of Vernon Parcel Taxes shall be apportioned *pro rata* on a per diem basis as of the Closing Date.  Other than rent, there will be no prorations between Seller and Purchaser on the Closing Date, and no post-assignment reconciliations or adjustments of any kind shall occur.    Purchaser shall receive the benefits and burdens for all adjustments under the Lease that occur after the Closing Date (regardless of the period in question that is subject to the adjustment), including year-end adjustments for taxes, fees, any common area maintenance charges, and percentage rent for calendar year 2018 and thereafter and Purchaser shall fully indemnify and hold harmless Seller with respect thereto.

(b)    **Closing-related Costs.**  At Closing, Purchaser shall pay the cost of the Closing Escrow. Except as otherwise provided for in this Contract, the Parties shall each be solely responsible for the fees and disbursements of their respective counsel and

other professional advisors.  The obligations under this <u>Section 5</u> shall survive the Closing.

6.    <u>**ASSIGNMENT AND ASSUMPTION**</u>

As of the Closing Date, pursuant to sections 363 and 365 of the Bankruptcy Code and in accordance with the Approval Order, Tenant shall grant, transfer and assign to Purchaser, without representation or warranty of any kind, all of its right, title, and interest in and to the Leases.  On and after the Closing Date, Purchaser shall assume all of the covenants, agreements, and obligations of Tenant as tenant and Sub-Landlord under the Leases.  In further consideration of the above assignment, Purchaser hereby agrees that it shall, as of the Closing Date: (a) perform all of the covenants, conditions and agreements of the Leases (including making all payments) as if Purchaser were the original tenant under the Lease and (b) that the Leases shall remain in full force and effect.  As of the Closing Date, Seller shall have no further liabilities or obligations with respect to the Leases, including, but not limited to, obligations related to rents, utilities, taxes, insurance and common area maintenance, regardless of when due and payable, and Seller shall be released from all such obligations and Purchaser shall fully indemnify and hold harmless Seller with respect thereto. The provisions of this <u>Section 6</u> shall survive the Closing.

7.    <u>**FREE AND CLEAR OF ALL LIENS**</u>

Subject to and in accordance with the Approval Order, Seller shall convey its rights and interests under the Lease to Purchaser free and clear of all liens, claims, interests, or encumbrances (collectively, "<u>**Liens**</u>"), if any, with any such Liens attaching to the proceeds paid to Seller.

8.    <u>**CONDITIONS TO CLOSING**</u>

(a)    <u>**Conditions to Seller's Obligation to Close.**</u> In addition to any other conditions and/or contingencies set forth in this Contract, Seller's obligation to close the transactions contemplated by this Contract is subject to each and all of the following conditions precedent (or express written waiver thereof by Seller):

(i)    All of Purchaser's representations and warranties contained in this Contract shall be true and correct as of the Closing in all material respects; and

(ii)    All obligations of Purchaser that were to have been performed on or before the Closing Date have been timely and duly performed in all material respects.

(b)    <u>**Conditions to Purchaser's Obligation to Close**</u>.  In addition to any other conditions and/or contingencies set forth in this Contract, Purchaser's obligation to close the transactions contemplated by this Contract is subject to each and all of the following conditions precedent (or express written waiver thereof by Purchaser):

(i)     All of Seller's representations contained in this Contract shall be true and correct as of the Closing in all material respects; and

(ii)    All obligations of Seller that were to have been performed on or before the Closing Date have been timely and duly performed in all material respects including without limitation the payment of all amounts due under the Primary Leases and the payment of all taxes of any kind due up to and including the Closing Date.

(c)    **Conditions to Closing of Both Parties**:  In addition to any other conditions and/or contingencies set forth in this Contract, the Parties' obligation to close on the transactions contemplated by this Contract is subject to entry by the Bankruptcy Court of an order, in form and substance acceptable to Seller, in its sole discretion, that authorizes Seller to assume the Lease and assign it to the Purchaser in accordance with section 365 of the Bankruptcy Code (the "**Approval Order**"). The Approval Order shall provide that the provisions of the Leases are assigned to Purchaser, including without limitation, any options to renew the Leases.

9.    **CLOSING**

(a)    **Closing Date**. Provided all conditions and/or contingencies to Closing described in this Contract have been fulfilled or waived, the Closing (the "**Closing**") shall take place at the office of the Escrow Agent within two (2) business days of entry of the Approval Order, or such later date as reasonably requested by Seller (the "**Closing Date**").

(b)    **Seller Closing Deliverables**. On or before the Closing Date, Seller shall deliver or use commercially reasonable efforts to cause to be delivered to the Escrow Agent the following Closing documents:

(i)     An Assignment and Assumption of Lease (the "**Assignment and Assumption**") in the form attached hereto as **Exhibit "E"**;

(ii)    A FIRPTA Affidavit in customary form duly executed by Seller;

(iii)   A file-stamped copy of the Approval Order; and

(iv)    Notice to both landlords in the form attached hereto as **Exhibit "F"** (the "**Landlord Notice**").

(c)    **Purchaser Closing Deliverables.**  No later than 11:00 am (Chicago time) on the Closing Date, Purchaser shall deliver or cause to be delivered to the Escrow Agent the following for Closing:

(i)     The full amount of the Purchase Price, as adjusted by prorations and credits, in immediately available federal funds wire transferred to Escrow Agent's

account and deliver to Escrow Agent instructions to immediately release the full amount to Seller;

(ii)     A fully executed counterpart of the Assignment and Assumption; and

(iii)    An executed copy of all such other documents, certificates, instruments, affidavits and transfer tax returns as may be required in the State to record the Assignment and Assumption and effectuate the transactions contemplated herein.

(d)     On or before the Closing Date, Seller and Purchaser shall jointly execute and deliver or cause to be executed and delivered a closing proration statement and State, county and municipal transfer tax declarations, in each case duly approved by Seller and Purchaser, which approval by both parties shall not be unreasonably withheld or conditioned, and all other documents required by the Escrow Agent in order to consummate the Closing as contemplated in this Contract.

**10.    CLOSING ESCROW**

The Closing shall take place through a deed and money escrow at the Escrow Agent in accordance with the standard deed and money escrow agreement utilized by the Escrow Agent ("**Closing Escrow**") to be opened with the Escrow Agent on or before the Closing Date, with such special provisions inserted in the Closing Escrow as may be required to conform to this Contract; provided, however, in the event of a conflict between the terms of this Contract and the Closing Escrow, the terms of this Contract shall control.  All documents required to be provided by Purchaser and Seller pursuant to this Contract and otherwise appropriate to consummate the transactions contemplated by this Contract shall be delivered to the Escrow Agent, as closing agent, on or before Closing.  Notwithstanding the foregoing, the Parties agree that the Closing may be set up remotely and/or in a manner so that the Parties and their respective attorneys, or any of them, need not be physically present and may deliver all necessary documents by overnight mail or other means, in which event the Parties agree to complete all arrangements for Closing not later than the Closing Date so that all requirements, with the exception of the Purchase Price, for Closing are in place by the scheduled time for the Closing.

**11.    DUE DILIGENCE PERIOD**

(a)     **Access**.          Purchaser is presently in possession of the Property as the Subtenant under the Subleases.

(b)     **Due Diligence Period**. Purchaser shall not have a Due Diligence Period.

(c)     **Survival of Purchaser's Obligations**.  Notwithstanding anything to the contrary herein, any and all obligations, commitments, and indemnifications by Purchaser and the Purchaser Entities specified in this Section 11 and otherwise set forth in the Access Agreement shall survive the expiration or termination of this Contract (and

the Access Agreement) and the delivery of the Deed without the further need to document such agreement.

(d)     All of Seller's service contracts on the Property are national contracts and will not be assigned to or assumed by Purchaser, and Seller will cause the Property to be released from such service contracts on or prior to the Closing Date.

(e)     Purchaser acknowledges that, prior to the Effective Date, Seller has provided Purchaser with electronic access to the "Potential Purchaser Diligence Documents" in Seller's electronic online data room for the Property (as the same may be updated from time-to-time). Such electronic access to the "Potential Purchaser Diligence Documents" as provided herein shall be deemed to satisfy any and all notice requirements as set forth in <u>Section 16</u> hereof.

In the event this Contract is terminated, all materials provided by or on behalf of Seller to Purchaser (the "**Due Diligence Materials**") shall be promptly returned by Purchaser to Seller at no cost to Seller. SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, REGARDING (i) THE TRUTH, ACCURACY OR COMPLETENESS OF ANY OF THE DUE DILIGENCE MATERIALS, (ii) THE QUALIFICATIONS OF THE PERSONS PREPARING THE SAME, (iii) ANY DATA OR INFORMATION DELIVERED BY SELLER OR THE SOURCES THEREOF, (iv) WHETHER ANY OF THE DUE DILIGENCE MATERIALS REPRESENT ALL OF THE NECESSARY OR RELEVANT INFORMATION RELATING TO THE PROPERTY, OR (v) THE ENFORCEABILITY OR VALIDITY OF ANY OF THE DUE DILIGENCE MATERIALS. PURCHASER ACKNOWLEDGES AND AGREES THAT THE DUE DILIGENCE MATERIALS ARE PROVIDED TO PURCHASER AS A CONVENIENCE ONLY AND THAT ANY RELIANCE ON OR USE OF THE DUE DILIGENCE MATERIALS SHALL BE AT THE SOLE RISK OF PURCHASER AND WITHOUT ANY REPRESENTATIONS, WARRANTIES, OR GUARANTIES OF SELLER OR THE INDEMNIFIED PARTIES, AND PURCHASER SHALL NOT HAVE ANY RIGHT TO RELY ON ANY SUCH DUE DILIGENCE MATERIALS, BUT RATHER WILL RELY ON ITS OWN DUE DILIGENCE, INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AND ANY REPORTS COMMISSIONED BY PURCHASER WITH RESPECT THERETO. NEITHER SELLER, NOR ANY AFFILIATE OF SELLER, NOR THE PERSON OR ENTITY WHICH PREPARED ANY OF THE DUE DILIGENCE MATERIALS SHALL HAVE ANY LIABILITY TO PURCHASER FOR ANY INACCURACY, OR OMISSION, IN ANY OF THE DUE DILIGENCE MATERIALS. THE FAILURE TO DELIVER ANY REPORT, FINDINGS, RESULTS, FACTS, INFORMATION, OR DUE DILIGENCE MATERIALS SHALL NOT BE ACTIONABLE BY PURCHASER AND SELLER SHALL HAVE NO LIABILITY IN CONNECTION THEREWITH. PURCHASER ACKNOWLEDGES THAT THE DUE DILIGENCE MATERIALS PROVIDED BY SELLER MAY NOT NECESSARILY REPRESENT ALL OF THE DOCUMENTATION AND INFORMATION IN EXISTENCE (OR IN SELLER'S POSSESSION OR CONTROL) WITH

RESPECT TO THE PROPERTY, BUT, RATHER, REPRESENTS DOCUMENTATION MADE AVAILABLE BY SELLER AS A CONVENIENCE FOR PURCHASER. PURCHASER ACKNOWLEDGES AND AGREES THAT THE DUE DILIGENCE MATERIALS MAY HAVE BEEN OBTAINED BY SELLER FROM A VARIETY OF SOURCES, AND THAT SELLER HAS NOT MADE (AND IS UNDER NO DUTY TO MAKE) ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF ANY DUE DILIGENCE MATERIALS. PURCHASER WAIVES, RELEASES AND FORFEITS ANY AND ALL CLAIMS OF ANY KIND WHATSOEVER AGAINST SELLER, THE INDEMNIFIED PARTIES, OR THIRD PARTIES ARISING OUT OF PURCHASER'S USE OF THE DUE DILIGENCE MATERIALS. THIS SECTION 11(f) SHALL SURVIVE THE CLOSING OR EARLIER TERMINATION OF THIS CONTRACT.

12.    **REPRESENTATIONS AND WARRANTIES**

    (a)    **Seller Representations**.    Seller represents to Purchaser that as of the date hereof and as of the Closing Date:

        (i)    Subject to Section 8(c) of this Contract, Seller has, or will have by the Closing Date, full capacity, right, power and authority to execute, deliver and perform this Contract and all documents to be executed by Seller pursuant hereto, and all required action and approvals therefor have been duly taken and obtained. The individuals signing this Contract and all other documents executed or to be executed pursuant hereto on behalf of Seller are and shall be duly authorized to sign the same on Seller's behalf and to bind Seller thereto, subject to Section 8(c) of this Contract.

    (b)    **Purchaser Representations.** Purchaser represents and warrants to Seller that as of the date hereof and as of the Closing Date:

        (i)    Purchaser has full capacity, right, power and authority to execute, deliver and perform this Contract and all documents to be executed by Purchaser pursuant hereto, and all required action and approvals therefor have been duly taken and obtained.  Neither the execution of this Contract nor the performance of Purchaser's obligations hereunder will conflict with, or with or without notice or the passage of time or both, result in a breach of, violate any term or provision of, or constitute a default under any of Purchaser's organizational documents.  The individuals signing this Contract and all other documents executed or to be executed pursuant hereto on behalf of Purchaser are and shall be duly authorized to sign the same on Purchaser's behalf and to bind Purchaser thereto.

(ii)    Purchaser is not in default under any agreement or instrument where the liability thereunder might adversely affect Purchaser's ability to perform its obligations under this Contract.

(iii)   This Contract and all documents required hereby to be executed by Purchaser hereunder are and shall be valid, legally binding obligations of and enforceable against Purchaser in accordance with their terms.

(iv)    As of the Closing Date, Purchaser shall not have commenced, within the meaning of Title 11 of the United States Code, or any similar state law for the relief of debtors ("**Bankruptcy Law**") a voluntary case, nor shall there have been commenced against Purchaser an involuntary case, nor shall Purchaser have consented to the appointment of a receiver, trustee, assignee, liquidator or similar official under any Bankruptcy Law (a "**Custodian**") of it or for all or any part of its property, nor shall a court of competent jurisdiction have entered an order or decree under any Bankruptcy Law that is for relief against Purchaser in an involuntary case or appoints a Custodian of Purchaser for all or any part of its property.

The continued validity in all material respects of all representations and warranties of Seller and all representations and warranties of Purchaser set forth in this Contract shall be conditions precedent to the performance of Seller's and Purchaser's respective obligations hereunder. All representations and warranties of Seller and all representations and warranties of Purchaser set forth in this Contract shall be continuing and shall be true and correct on and as of the Closing Date in all material respects with the same force and effect as if made at that time. Further, all representations and warranties of Seller and all representations and warranties of Purchaser set forth in this Section 12 shall merge with the transfer of title and shall not survive Closing. If the Closing takes place, Seller shall have no liability with respect to any claim which Purchaser may have against Seller for a breach of any such representation or warranty, whether such breach is known or unknown.

## 13.    AS IS/NO WARRANTIES

(a)    **As-Is Condition.**       Purchaser acknowledges that it has fully inspected or waived the right to inspect the Leased Premises prior to the execution of this Contract and does hereby assume all of the risks, including, but not limited to, latent defects in the Leased Premises. Seller shall deliver the Leased Premises in "broom-clean" condition, but shall not be obligated to do any work or alter, restore, repair or develop the Leased Premises, and has no obligation to remove its exterior signs, inventory, trade fixtures, equipment and other personal property (the "**Personal Property**"). Any Personal Property left in the Leased Premises after the Closing Date shall be deemed abandoned by Seller and Seller shall have no liability with respect thereto and Purchaser may dispose of and/or demolish any such Personal Property, without compensation to Seller; in this regard, Seller hereby waives any statutory or common law rights that would prevent Purchaser from demolishing or removing any such Personal Property from the Leased Premises after the Closing

Date. Any work (including demolition) which may be necessary to adapt the Leased Premises for Purchaser's occupancy or for the operation of Purchaser's business therein shall be the sole responsibility of Purchaser and shall be performed by Purchaser at its sole cost and expense, in accordance with the terms of the Lease. Purchaser expressly acknowledges that Purchaser taking assignment of the Lease in an "AS IS" "WHERE IS" "WITH ALL FAULTS CONDITION" with regard to all aspects of the Property without warranty or representation of any kind by Seller or any of Seller's managers, members, officers, directors, employees, partners, agents, representatives, beneficiaries, attorneys, subsidiaries, Affiliates, contractors subcontractors, successors and assigns ( the "**Indemnified Parties**"), including specifically and without limitation, any warranty or representation as to the presence or absence of any Hazardous Materials. As used in this Contract, the term "**Hazardous Material(s)**" shall mean asbestos, petroleum, polychlorinated biphenyl and any other materials defined as a hazardous substance, hazardous waste, hazardous constituents or solid waste in (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9601 et seq., and any amendments thereto and regulations thereunder, (b) the Resource Conservation and Recovery Act, 42 U.S.C. §6901 et seq., and any amendments thereto and regulations thereunder, (c) Section 311 of the Federal Water Pollution Control Act, 33 U.S.C. §1251 et seq. (33 U.S.C. §1321), and (d) any federal, state or local law, statute, ordinance or regulation. Purchaser, hereby agrees to release, defend, hold harmless and indemnify Seller and the Indemnified Parties with regard to any demand, claim, liability, loss or damage, including reasonable attorneys' fees and costs, arising from (x) any Hazardous Materials currently located or which come to be located upon the Property or the release of any Hazardous Materials into, from or through the Property (except to the extent the presence or release thereof was directly caused by the affirmative acts of Seller, its employees, agents or contractors from and after the Effective Date) or (y) any Hazardous Materials which have migrated, leached, or traveled onto or off of the Property, from any source.

(b)    **No Warranties, Representations**.  Purchaser warrants, acknowledges to, and agrees with Seller that Purchaser is accepting assignment of the Lease in "AS IS" "WHERE IS" "WITH ALL FAULTS CONDITION", and specifically and expressly without any warranties, representations or guarantees, either express or implied, of any kind, nature, or type whatsoever from, or on behalf of, Seller. Purchaser acknowledges that Purchaser's agreement hereunder to accept assignment of the Lease in its "AS IS" "WHERE IS" "WITH ALL FAULTS CONDITION" was bargained for in the Purchase Price.  Without in any way limiting the generality of the immediately preceding sentences, Purchaser and Seller further acknowledge and agree that in entering into this Contract and closing the transactions hereunder, except as otherwise provided for in the representations and warranties in Section 12 of this Contract:

SELLER MAKES NO REPRESENTATIONS, WARRANTIES, OR GUARANTEES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT

TO: ANY MATTER RELATED TO THE LEASE OR THE LEASED PREMISES (INCLUDING, WITHOUT LIMITATION, INCOME TO BE DERIVED FROM OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE LEASED PREMISES; THE PHYSICAL CONDITION OF THE LEASED PREMISES; THE PRESENCE OR ABSENCE OF ANY HAZARDOUS MATERIALS IN, ON OR ABOUT THE LEASED PREMISES OR ANY OTHER MATTER RELATED TO THE ENVIRONMENTAL CONDITION OF THE LEASED PREMISES; THE ZONING OF THE LEASED PREMISES; THE POSSIBILITY OF DEVELOPING OR USING THE LEASED PREMISES IN THE MANNER CONTEMPLATED BY PURCHASER OR OBTAINING ANY CONSENTS, APPROVALS, PERMITS, AUTHORIZATIONS OR ENTITLEMENTS IN CONNECTION THEREWITH; THE VALUE OF THE LEASE OR THE LEASED PREMISES; THE FITNESS OF THE LEASED PREMISES, FOR ANY PARTICULAR PURPOSE OR USE; THE ACCURACY, COMPLETENESS, OWNERSHIP OR TRANSFERABILITY OF ANY DOCUMENTS OR OTHER MATERIALS FURNISHED TO PURCHASER WITH RESPECT TO THE LEASED PREMISES (OR ANY PORTION THEREOF); OR ANY OTHER MATTER OR THING RELATED TO THE LEASE OR THE LEASED PREMISES). PURCHASER ACKNOWLEDGES THAT PURCHASER HAS NOT RELIED, AND IS NOT RELYING, UPON ANY INFORMATION, DOCUMENT, SALES BROCHURES OR OTHER LITERATURE, MAPS OR SKETCHES, PROJECTIONS, PRO FORMAS, STATEMENTS, REPRESENTATIONS, GUARANTEES OR WARRANTIES (WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, OR MATERIAL OR IMMATERIAL) THAT MAY HAVE BEEN GIVEN BY OR MADE BY OR ON BEHALF OF SELLER. PURCHASER ALSO ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED OR WAIVED THE RIGHT TO CONDUCT AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL AND ENVIRONMENTAL CONDITION OF THE LEASED PREMISES AND ALL SUCH OTHER MATTERS RELATED TO OR AFFECTING THE LEASED PREMISES AND/OR THE LEASE, AS PURCHASER DEEMED NECESSARY OR APPROPRIATE AND PURCHASER IS ACQUIRING THE LEASE AND THE LEASED PREMISES, BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS OR PURCHASER'S INDEPENDENT JUDGMENT, AND PURCHASER IS NOT RELYING UPON ANY REPRESENTATIONS OF SELLER OR SELLER'S AGENTS. ACCORDINGLY, PURCHASER HEREBY ACCEPTS THE LEASED PREMISES IN ITS "AS IS, WHERE IS," "WITH ALL FAULTS," CONDITION AND ALL LATENT OR PATENT DEFECTS, INCLUDING WITHOUT LIMITATION, ANY DEFECTS OR DAMAGE TO THE ROOF OF THE LEASED PREMISES.

(c)     **WAIVER/RELEASE OF PURCHASER CLAIMS**.     WITHOUT IN ANY WAY LIMITING THE GENERALITY OF THE PRECEDING SUBSECTIONS 13(a) AND 13(b), PURCHASER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES, RELEASES AND DISCHARGES ANY

CLAIM IT HAS, MIGHT HAVE HAD, OR MAY HAVE, AGAINST THE SELLER AND THE INDEMNIFIED PARTIES, WHETHER KNOWN OR UNKNOWN, ACTUAL OR CONTINGENT, FORSEEN OR UNFORSEEN, RELATING TO, ARISING OUT OF OR WITH RESPECT TO (i) THE CONDITION OF THE LEASED PREMISES, EITHER PATENT OR LATENT, (ii) PURCHASER'S ABILITY, OR INABILITY, TO OBTAIN OR MAINTAIN TEMPORARY OR FINAL CERTIFICATES OF OCCUPANCY, PERMITS OR OTHER LICENSES FOR THE USE OR OPERATION OF THE LEASED PREMISES, AND/OR CERTIFICATES OF COMPLIANCE FOR THE LEASED PREMISES, (iii) THE ACTUAL OR POTENTIAL INCOME, OR PROFITS, TO BE DERIVED FROM THE LEASED PREMISES, (iv) THE REAL ESTATE, OR OTHER, TAXES OR SPECIAL ASSESSMENTS, NOW OR HEREAFTER PAYABLE ON ACCOUNT OF, OR WITH RESPECT TO, THE LEASED PREMISES, OR (v) ANY OTHER MATTER RELATING TO THE LEASED PREMISES.

(d)    **No Representations as to Condition/Full Investigation**.  Except as expressly set forth in this Contract, no representations or warranties have been made or are made and no responsibility has been or is assumed by Seller or any of the Indemnified Parties as to the condition or repair of the Leased Premises or the value, expense of operation, or income potential thereof or as to any other fact or condition which has or might affect the Leased Premises or the condition, repair, value, expense of operation or income potential of the Leased Premises or any portion thereof.  The Parties agree that all understandings and contracts heretofore made between them or their respective agents or representatives are merged in this Contract and the Exhibits hereto annexed, which alone fully and completely express their Contract, and that this Contract has been entered into after full investigation, or with the Parties satisfied with the opportunity afforded for investigation, neither Party relying upon any statement or representation by the other unless such statement or representation is specifically embodied in this Contract or the Exhibits annexed hereto.  Purchaser acknowledges that Seller has requested that Purchaser inspect the Leased Premises fully and carefully and investigate all matters relevant thereto and that Purchaser rely solely upon the results of Purchaser's own inspections or other information obtained or otherwise available to Purchaser, rather than any information that may have been provided by Seller to Purchaser.

## 14.    **NON-FOREIGN SELLER CERTIFICATION**

Seller represents that Seller is not a foreign person as defined in Section 1445 of the Internal Revenue Code of 1986, as amended (the "**Code**"), and the regulations promulgated thereunder, and is therefore exempt from the withholding requirements of said Section.  At Closing, Seller will deliver to Purchaser the certification set forth in Section 1445 of the Code and regulations.

15.    **DEFAULT AND REMEDIES**

(a)    **Termination Events:**

(i)    Termination by Either Party:  Notwithstanding anything to the contrary set forth herein, this Contract may be terminated at any time prior to the Closing Date by either Party if the Bankruptcy Court fails to issue the Approval Order by September 30, 2019,  provided, however, that the right to terminate this Contract pursuant to this Section 15(a) shall not be available to any party whose breach of any of its representations, warranties, covenants or agreements contained herein results in such ruling or order.

(ii)    Termination by Purchaser.  If Seller fails or refuses to comply with the terms of this Contract within fifteen (15) days of receipt by Seller of written notice of such default from Purchaser (excluding any default by Purchaser and Purchaser's failure to diligently complete or cure the same), Purchaser shall have as its sole and exclusive remedy the right to terminate the Contract, in which event Purchaser shall be entitled to the prompt return of the Earnest Money Deposit and all accrued interest thereon in full satisfaction of all damages suffered by Purchaser by reason of Seller's default and the Contract shall be terminated and of no further force or effect except as provided for in this Contract.  Notwithstanding the foregoing, in the event that Seller assigns the Leases to a party other than Purchaser as a result of its fiduciary obligation, within 10 business days after the Closing Date, Seller shall request the approval of the Bankruptcy Court for the payment of $100,000 to Purchaser as a break-up fee.

(iii)    Termination by Seller.  If Purchaser fails or refuses to comply with the terms of this Contract within fifteen (15) days of receipt by Purchaser of notice of such default from Seller (excluding any default by Seller of Seller's failure to diligently complete or cure the same), and Seller's sole remedy shall be to terminate this Contract, in which event Seller shall be entitled to receive the Earnest Money Deposit as liquidated damages in lieu of all other remedies available to Seller and this Contract shall terminate with neither Party having any further rights or liabilities hereunder, except as those specifically provided to survive the termination of this Contract; provided, however, that this Section 15(a)(iii) shall not limit Seller's claims pursuant to any of Purchaser's indemnification obligations in this Contract. Seller and Purchaser acknowledge and agree that: (i) it would be extremely difficult to accurately determine the amount of damages suffered by Seller as a result of Purchaser's default hereunder; (ii) the Earnest Money Deposit is a fair and reasonable amount to be retained by Seller as agreed and liquidated damages for Purchaser's default under this Contract; and (iii) retention by Seller of the Earnest Money Deposit upon Purchaser's default hereunder shall not constitute a penalty or forfeiture.

(b)    **Effect of Termination.**        In the event of a termination of this Contract pursuant to this Section 15 (other than a termination of this Contract pursuant to Section 15(a)(iii), Seller and Purchaser shall instruct the Escrow Agent to, and the Escrow

Agent shall, promptly (but in any event within two (2) Business Days of such instruction) return to Purchaser the Earnest Money Deposit by wire transfer of immediately available funds and the return thereof shall constitute the sole and exclusive remedy of Purchaser in the event of a termination hereunder.

## 16.  **NOTICES**

Any notice which either Party desires or is required to give hereunder shall be in writing and effective and deemed properly served when hand delivered, provided that the addressee of such notices signs an acknowledgement of receipt of such notice, or if deposited with the United States Postal Service, as registered or certified mail, return receipt requested, bearing adequate postage or being deposited with a reputable overnight courier service for guaranteed next day delivery with required signature acknowledgement of receipt to the Parties at the following addresses:

|  |  |
|---|---|
| **To Seller:** | **Sears, Roebuck & Co.**<br>3333 Beverly Road<br>Hoffman Estates, Illinois  60179<br>Attn: President, Real Estate<br>Department 824RE |
| **With copies to:** | **Weil, Gotshal & Manges LLP**<br>767 Fifth Avenue<br>New York, New York 10153<br>Attn:  W. Michael Bond, Esq.<br>Phone: (212) 310-8035<br>E-mail: Michael.Bond@weil.com |
| **To Purchaser:** | Mr. Henry Shahery<br>9777 Wilshire Blvd., Suite 470 Beverly Hills, Ca 90212<br>Tel. (424) 343-0371 Ext 220<br>Fax (424) 343-0379<br>E-Mail henry@hshmanagement.net |
| **With copies to:** | Law Offices of Saul Reiss<br>2800 28th Street, Suite 328<br>Santa Monica, CA 90405-6201<br>Phone:310-450-2888 _____<br>E-mail: saulreiss@verizon.net |

Notice of change of address for receipt of notices shall be sent in the manner set forth in this Section 16.

## 17.  **ENTIRE CONTRACT, AMENDMENTS AND WAIVERS**

This Contract contains the entire agreement and understanding of the Parties with respect to the subject matter hereof, and the same may not be amended, modified or discharged

nor may any of its terms be waived except by an instrument in writing signed by the Party to be bound thereby.

## 18.    FURTHER ASSURANCES

The Parties each agree to do, execute, acknowledge and deliver all such further acts, instruments and assurances and to take all such further action before or after the Closing as shall be necessary or desirable to fully carry out this Contract and to fully consummate and effect the transaction contemplated hereby.

## 19.    SURVIVAL AND BENEFIT

Except to the extent specifically stated to the contrary elsewhere in this Contract, all representations, warranties, agreements and obligations of the Parties contained in this Contract shall be merged with the Assignment and Assumption at Closing.  Wherever in this Contract there is a reference to termination of this Contract, such termination shall not be construed to terminate the obligations of the Parties with respect to any representations, warranties and obligations of the Parties contained in this Contract which by their terms to the extent specifically stated in this Contract shall survive termination of this Contract.

## 20.    CONFIDENTIALITY

Without limiting the terms of any other confidentiality agreements entered into by or between Purchaser and Seller (or any of Seller's Affiliates), if any, Purchaser agrees that (i) the results of all inspections, analyses, studies, and similar reports relating to the Leased Premises prepared by, for, or on behalf of Purchaser on, after or before the Effective Date, (ii) all terms of this Contract and any and all drafts of this Contract, if any, and all documents and instruments executed in connection therewith, (iii) all information or materials provided to or obtained (from whatever source) by Purchaser on, after or before the Effective Date, whether written or oral, in any way related to or pertaining to Seller, Seller's Affiliates, and/or the Leased Premises, (iv) any other electronic files and other documents in Seller's electronic online data room, and (v) all information regarding the Leased Premises of whatsoever nature, whether written or oral, and regardless of when obtained (collectively, the "**Confidential Information**") is strictly confidential, shall remain confidential and shall not be disclosed to any Person by Purchaser or the Purchaser Entities without the prior written consent of Seller, which consent may be withheld, conditioned, or delayed in Seller's sole and absolute discretion, including, but not limited to, any federal, state and/or local governmental entity, except that Purchaser may disclose the Confidential Information without Seller's prior written consent to Purchaser's respective officers, Affiliates, and advisors (including, without limitation, attorneys, accountants, consultants and financial advisors) (collectively, the "**Permitted Parties**") so long as Purchaser informs the Permitted Parties of the confidential nature of the Confidential Information and directs the Permitted Parties to treat the Confidential Information confidentially in accordance with the terms of this Section 20. Without limiting the foregoing, Purchaser agrees and acknowledges that no copies, summaries, abstracts or other reproductions of the Confidential Information, as applicable, shall be provided or disclosed by Purchaser, the Purchaser Entities, or the Permitted Parties to any

Person not subject to the same confidentiality obligation as Purchaser, the Purchaser Entities, or the Permitted Parties. If Purchaser, the Purchaser Entities, or the Permitted Parties breach (or threaten the breach of) the terms of this <u>Section 20</u>, Purchaser acknowledges and agrees that (a) Purchaser shall be liable and responsible for any breach of this Contract by any of the Purchaser Entities or Permitted Parties, and (b) Seller will be irreparably harmed, but that Seller's damages are difficult to calculate and, therefore, Seller shall be entitled to pursue an action for equitable relief, including, but not limited to, temporary or permanent injunctions, against any actual or threatened breach of the terms of this <u>Section 20</u>, in addition to all other rights and remedies available at law or in equity. Notwithstanding the foregoing, the Parties agree that the term "Confidential Information" shall not include any material or information that (1) is or becomes generally available to the public other than as a direct or indirect result of a disclosure of any such information by Purchaser, the Purchaser Entities, or the Permitted Parties, (2) becomes available to Purchaser, the Purchaser Entities, or the Permitted Parties on a non-confidential basis from a source other than Seller or any of the Indemnified Parties and the source of such information was not bound by any contractual or other obligation of confidentiality to Seller or to any other Person with respect to any of such information, or (3) any information that is developed by or on behalf of Purchaser independently of the disclosure of Confidential Information and without reference to or use of the Confidential Information. Purchaser acknowledges that Seller may file this Contract and any related matters with the Bankruptcy Court and thus make this Contract publicly available.  The terms of this <u>Section 20</u> shall survive termination of this Contract.

21.    **<u>BROKERAGE</u>**

Except for Jones Lang LaSalle Americas, Inc. ("**<u>JLL</u>**") representing the Seller ("**<u>Seller's Broker</u>**"), each party hereto represents and warrants to the other that it has dealt with no other brokers or finders in connection with this transaction.

Seller hereby indemnifies, protects and defends and holds Purchaser harmless from and against all losses, claims, costs, expenses, damages (including, but not limited to, attorneys' fees of counsel selected by the Purchaser) resulting from the claims of any broker (including the Seller's Broker), finder, or other such party claiming by, through or under the acts or agreements of Seller or Seller's Broker. Purchaser hereby indemnifies, protects and defends and holds Seller and JLL harmless from and against all losses, claims, costs, expenses, damages (including, but not limited to, attorneys' fees of counsel selected by the Seller) resulting from the claims of any broker, finder, or other such party claiming by, through or under the acts or agreements of Purchaser.

Any commission or other compensation due the Seller's Broker shall be the responsibility of the Seller and same shall be paid to the Seller's Broker at the Closing in accordance with separate agreements between Seller's Broker and Seller.

22.    **<u>ASSIGNMENT</u>**

Purchaser may not assign or transfer its rights or obligations under this Contract other than to a limited liability company as to which Henry Shahery has majority ownership and is

the Manager without Seller's prior written consent, the granting or denial of which consent shall be in the sole discretion of Seller; provided, however, that Purchaser shall have the right to assign this Contract without Seller's consent in connection with a tax-deferred exchange or to an entity in which Purchaser has sole ownership interest provided that (i) written notice of such assignment is delivered to Seller at least ten (10) business days prior to Closing and (ii) any such assignee executes an assumption of this Contract, if requested by and in form and substance reasonably acceptable to Seller.  No transfer or assignment by Purchaser shall relieve Purchaser of its obligations hereunder.  No such transfer or assignment in violation of the provisions hereof shall be valid or enforceable.

## 23.   NO THIRD PARTY BENEFITS

This Contract is for the sole and exclusive benefit of the Parties hereto and their respective successors and permitted assigns and, except for any of the Indemnified Parties, no third party is intended to or shall have any rights hereunder.  This Contract is binding upon and inures to the benefit of the successors and assigns of the Parties.

## 24.   LITIGATION COSTS

In the event of any legal action or other proceeding between the Parties regarding this Contract (an "**Action**"), the prevailing party shall be entitled to the payment by the losing party of its reasonable attorneys' fees, court costs and litigation expenses, as determined by the court.   The term "prevailing party" as used in this Section 24 includes, without limitation, a party: (i) who agrees to dismiss an Action on the other party's performance of the covenants allegedly breached, (ii) who obtains substantially the relief it has sought (which includes, without limitation, a party who has an Action voluntarily dismissed against it), or (iii) against whom an Action is dismissed (with or without prejudice) and cannot be refiled.   In addition, the prevailing party in any Action shall be entitled, in addition to and separately from the amounts recoverable under this Section, to the payment by the losing party of the prevailing party's reasonable attorneys' fees, court costs and litigation expenses incurred in connection with: (y) any appellate review of the judgment rendered in such Action or of any other ruling in such Action; and (z) any proceeding to enforce a judgment in such Action.   It is the intent of the Parties that the provisions of this Section be distinct and severable from the other rights of the Parties under this Contract, shall survive Closing, shall survive the entry of judgment in any Action and shall not be merged into such judgment.

## 25.   SEVERABILITY

In the event that any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision in this Contract, and this Contract shall be construed as if such invalid, illegal or unenforceable provision had never been contained in the Contract.

26.  **NO FURTHER MARKETING OR NEGOTIATIONS:** From the Effective Date until the Closing Date or termination of this Contract, JLL and M-III Partners shall cease any further marketing efforts and/or negotiations with respect to the sale of the Leases.

27.  **COUNTERPARTS**

This Contract may be executed in any number of counterparts, each of which shall constitute one and the same instrument, and any Party hereto may execute this Contract by signing any such counterpart delivery of an executed signature page of this Contract by any Party hereto by facsimile or .pdf transmission; and such facsimile or .pdf shall be binding on the delivering Party as if the original had been delivered.

28.  **SUCCESSORS AND ASSIGNS**

This Contract shall be binding upon and inure to the benefit of the respective successors and permitted assigns of the Parties to this Contract; provided, however, that Purchaser may only assign this Contract in accordance with the provisions of Section 22 of this Contract.

29.  **NO RECORDING**

Purchaser agrees not to record this Contract or any memorandum or short form of this Contract. Any such recording by Purchaser shall be a default under this Contract and shall entitle Seller to terminate this Contract and retain the Earnest Money Deposit.

30.  **TIME FOR PERFORMANCE**

All references in this Contract to "days" shall mean calendar days. Notwithstanding the foregoing, whenever any expiration of a time limit or specific date provided in this Contract falls on a Saturday, Sunday, or other day on which national banks in the State are authorized or required to be closed, then that date is extended to the next day that is not a Saturday, Sunday, or other day on which national banks in the State are authorized or required to be closed. The term "business day" as used in this Contract means any day that is not a Saturday, Sunday, or other day on which national banks in the State are authorized or required to be closed.

31.  **TIME OF THE ESSENCE**

Time is of the essence of this Contract.

32.  **RESERVED**

33.  **CONDEMNATION AND CASUALTY**

(a)  Seller agrees to give Purchaser prompt written notice of any fire, flood or similar casualty affecting any portion of the Leased Premises or of any taking or condemnation of all or any portion of any Leased Premises.

(b)    If prior to Closing there shall occur:  (i) damage to any Leased Premises caused by fire or other casualty; or (ii) the taking or condemnation of all or any portion of the Leased Premises; then, in each case, the Closing Date shall occur as provided in this Contract, and Purchaser shall be assigned at the Closing Date (A) all interest of Seller in and to any insurance proceeds actually received by Seller (including, but not limited to, any proceeds of business interruption insurance for the period after the date of the Closing Date) or (B) condemnation awards payable to Seller on account of that event, in the case of both (A) and (B), less sums which Seller incurs before the Closing Date for the direct cost of the repair of any of the damage or taking that Seller may elect, in its sole discretion, to undertake or in pursuing the collection of any such insurance proceeds or participating in any condemnation proceeding.

(c)    The Parties hereby waive the provisions of the Uniform Vendor and Purchaser Risk Act (to the extent the same is applicable to the Leased Premises) and of any other Law to the same or similar effect, and agree that the same shall not apply to this Contract.

## 34.    <u>SECTION HEADINGS</u>

The section headings contained in this Contract are for convenience only and shall in no way enlarge or limit the scope or meaning of the various and several sections hereof.

## 35.    <u>INTERPRETATION</u>

Whenever used in this Contract, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders.

## 36.    <u>GOVERNING LAW, JURISDICTION & VENUE</u>

This Contract will be exclusively governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of law principles thereof.   EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENTS TO SUBMIT TO THE JURISDICTION OF THE BANKRUPTCY COURT FOR ANY AND ALL DISPUTES ARISING OUT OF OR OTHERWISE RELATING TO THIS CONTRACT.   SHOULD THE BANKRUPTCY COURT ABSTAIN FROM EXERCISING ITS JURISDICTION OR BE FOUND NOT TO HAVE JURISDICTION OVER A MATTER RELATING TO THIS CONTRACT, SUCH MATTER SHALL BE ADJUDICATED IN EITHER A FEDERAL DISTRICT COURT IN THE STATE OF NEW YORK OR THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN NEW YORK COUNTY, NEW YORK.   Without limiting other means of service of process permissible under applicable law, the Parties hereby agree that service of any process, summons, notice or document by U.S. registered mail to the addresses set forth in <u>Section 16</u> of this Contract shall be effective service of process for any suit or proceeding in connection with this Contract.

37.    **AMENDMENTS**

No agreement, amendment, modification, understanding or waiver of or with respect to this Contract or any term, provision, covenant or condition hereof, nor any approval or consent given under or with respect to this Contract, shall be effective for any purpose unless contained in writing and executed by each Party hereto.  However, such amendments and/or supplements may be executed in counterparts, all of which shall be deemed to constitute one document.

38.    **ENTIRE CONTRACT**

The Parties acknowledge and agree that at all times they have intended that none of the preliminary negotiations concerning this transaction would be binding on either Party, and that they would be bound to each other only by a single, formal, comprehensive document containing this Section and all of the agreements of the Parties, in final form, which has been executed and delivered by Purchaser and Seller. The Parties acknowledge that none of the prior oral agreements between them (and none of the representations on which either of them has relied) relating to the subject matter of this Contract shall have any force or effect whatever, except as and to the extent that such agreements and representations have been incorporated in this Contract.

39.    **PATRIOT ACT**

Seller certifies that its name is SEARS, ROEBUCK AND CO., a New York corporation, and Seller is not (i) in violation of any laws relating to terrorism or money laundering, or (ii) among the individuals or entities identified on any list compiled pursuant to Executive Order 13224 for the purpose of identifying suspected terrorists or on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control.  Purchaser certifies that its name is [                    ,            ], and to Purchaser's knowledge, neither Purchaser or affiliated entities are (i) in violation of any laws relating to terrorism or money laundering, or (ii) among the individuals or entities identified on any list compiled pursuant to Executive Order 13224 for the purpose of identifying suspected terrorists or on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control.

40.    **EXCULPATION; LIMITATION OF LIABILITY**

Notwithstanding anything to the contrary contained in this Contract, no officer, director, shareholder, employee, agent, manager, member or partner of Seller or Purchaser shall have any personal liability with respect to any of the obligations contained in this Contract.  Under no circumstances shall Seller or Purchaser be responsible for consequential, special or punitive damages, and Seller and Purchaser hereby waive any and all such claims against the other for such consequential, special or punitive damages.   The provisions of this Section 40 shall survive the expiration of the term or any earlier termination of this Contract.

41.    **PRESS RELEASES**

Neither Purchaser nor any of Purchaser's Affiliates shall make any press release or other public announcement concerning the transaction(s) contemplated by this Contract without Seller's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. If Purchaser desires to make a press release or other public announcement respecting this Contract or the transaction(s) contemplated hereby, Purchaser shall wait at least five (5) business days after the Closing (the "**No Public Announcement Period**"), and after the expiration of the No Public Announcement Period, shall provide Seller with a draft of the press release or other public announcement for review at least ten (10) business days prior to the time that such press release or other public announcement is to be made. The Parties will attempt in good faith to expeditiously reach agreement on such press release or other public announcement and the contents thereof. Seller's failure to provide comments back to Purchaser within ten (10) business days of receipt of the draft release or announcement will be deemed consent to the public disclosure of such press release or other public announcement and the content thereof. Purchaser shall be liable for the compliance of its respective Affiliates with the terms of this Section 41. Notwithstanding anything to the contrary herein, any press release or other public announcement shall not reveal any Confidential Information and otherwise be in accordance with Section  20 hereof. This Section 41 shall survive the Closing.

42.    **LOCAL LAW PROVISIONS**

The parties agree to amend this Contract after the Effective Date but prior to Closing to address any applicable local law requirements in a manner reasonably satisfactory to Seller and Purchaser.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

**IN WITNESS WHEREOF**, the Parties have executed this Real Estate Sale Contract as of the date first above written.

**SELLER:**

**SEARS, ROEBUCK AND CO.,**
a New York corporation

By:_____
Name:_____
Its:_____

**INNOVEL SOLUTIONS, INC.,**
a Delaware corporation

By:_____
Name:_____
Its:_____

**PURCHASER:**

**Henry Shahery,**
[                    ]

By:_____
Name:_____
Its:_____

**EXHIBITS**

Exhibit "A-1":    Warehouse Primary Lease Description
Exhibit "A-2"     Parking Lot Primary Lease Description
Exhibit "B-1":    Warehouse Lease Property Description
Exhibit "B-2"     Parking Lot Lease Property Description
Exhibit "C-1":    Warehouse Sublease Description
Exhibit "C-2"     Parking Lot Sublease Description

**IN WITNESS WHEREOF**, the Parties have executed this Real Estate Sale Contract as of the date first above written.

**SELLER:**

**SEARS, ROEBUCK AND CO.,**
a New York corporation

By: _Jane S Borden_
Name: _Jane S. Borden_
Its: _President – Real Estate_

**INNOVEL SOLUTIONS, INC.,**
a Delaware corporation

By: _Jane S Borden_
Name: _Jane S Borden_
Its: _Vice President_

**PURCHASER:**

**Henry Shahery**

By:_____
Name:_____
Its:_____

**EXHIBITS**

Exhibit "A-1":    Warehouse Primary Lease Description
Exhibit "A-2"     Parking Lot Primary Lease Description
Exhibit "B-1":    Warehouse Lease Property Description
Exhibit "B-2"     Parking Lot Lease Property Description
Exhibit "C-1":    Warehouse Sublease Description
Exhibit "C-2"     Parking Lot Sublease Description

**IN WITNESS WHEREOF**, the Parties have executed this Real Estate Sale Contract as of the date first above written.

**SELLER:**

**SEARS, ROEBUCK AND CO.,**
a New York corporation

By:_____
Name:_____
Its:_____

**INNOVEL SOLUTIONS, INC.,**
a Delaware corporation

By:_____
Name:_____
Its:_____

**PURCHASER:**

**Henry Shahery,**
[]



By:_____
Name:_____
Its:_____

## EXHIBITS

Exhibit "A-1":   Warehouse Primary Lease Description
Exhibit "A-2"    Parking Lot Primary Lease Description
Exhibit "B-1":   Warehouse Lease Property Description
Exhibit "B-2"    Parking Lot Lease Property Description
Exhibit "C-1":   Warehouse Sublease Description
Exhibit "C-2"    Parking Lot Sublease Description

Exhibit "D":    Earnest Money Escrow Instructions
Exhibit "E":    Assignment and Assumption
Exhibit "F":    Landlord Notice

## EXHIBIT "A-1"

Warehouse Primary Lease Description

Indenture of Lease dated April 3, 1947 by and between Connecticut General Life Insurance Company, as landlord, and Sears, Roebuck and Co., as tenant.

# EXHIBIT "A-2"

Parking Lot Primary Lease Description

Parking Lot Lease Agreement dated December 15, 1998 by and between 51st Street Partnership, as landlord, and Sears Logistics Services, Inc., as tenant.

## **EXHIBIT "B-1"**

Warehouse Primary Lease Property Description

The description set forth in that certain Indenture of Lease dated April 3, 1947 by and between Connecticut General Life Insurance Company, as landlord, and Sears, Roebuck and Co., as tenant.

**EXHIBIT "B-2"**

Parking Lot Primary Lease Property Description

The description set forth in that certain Parking Lot Lease Agreement dated December 15, 1998 by and between 51st Street Partnership, as landlord, and Sears Logistics Services, Inc., as tenant.

**EXHIBIT "C-1"**

Warehouse Sublease Description

Sublease dated December 21, 2017 by and between Sears, Roebuck and Co., as sublandlord, and Mr. Henry Shahery, as subtenant.

## EXHIBIT "C-2"

Parking Lot Sublease Description

Sublease dated December 21, 2017 by and between Innovel Solutions, Inc., successor-in-interest to Sears Logistics Services, Inc., as sublessor, and Mr. Henry Shahery and Shason, Inc., collectively as sublesee.

**EXHIBIT "D"**

**EARNEST MONEY ESCROW INSTRUCTIONS**

(please see attached)

 **CHICAGO TITLE AND TRUST COMPANY:  ESCROW TRUSTEE**
**10 S. LASALLE, STE 3100, CHICAGO, IL 60603**

Refer to: Krystina Cozzie
Phone no.: 312-223-3366
Fax no: 312-223-2076

<u>STRICT JOINT ORDER #1 ESCROW TRUST INSTRUCTIONS (EARNEST MONEY)</u>

ESCROW TRUST NO:                              DATE:

To: Chicago Title and Trust Company, Escrow Trustee:

<u>Customer Identification:</u>

Seller:

Purchaser:

Property Address:

Project Reference:

Proposed Disbursement Date:

<u>Escrow Deposits:</u>

1. The sum of $            by      CHECK/WIRE           Representing:  INITIAL
EARNEST MONEY

2. The sum of $            by      CHECK/WIRE           Representing:  (Additional)

***PLEASE NOTE: Uncertified checks are held for ten business days after date of deposit. No funds can be dispensed before 10 business days limit expires. To avoid delays, use Cashier's or Certified checks or wire transfer.***

<u>Funds:</u>

(  ) WILL      (  ) WILL NOT BE INVESTED
NOTE: If funds are to be invested, an investment package will be sent.  Please complete and return to Escrow Trustee as soon as possible in order to begin accruing interest.

<u>Delivery of Deposits:</u>

The above-referenced escrow trust deposits ("deposits") are deposited with the escrow trustee to be delivered by it only upon the receipt of a joint order of the undersigned or their respective legal representatives or assigns.

In no case shall the above-mentioned deposits be surrendered except upon the receipt of an order signed by the parties hereto, their respective legal representatives or assigns, or in obedience to the court order described below.

Billing Instructions:

Escrow trust fee will be deducted as follows: $300 escrow fee. If the transaction closes in the Chicago Title Loop office, the escrow fee will be waived. Any overnight delivery or wire fee will be $35.
The parties acknowledge that beginning after a period of one year from the date of this agreement, Chicago Title and Trust Company will impose an administrative maintenance fee equivalent to the fee set forth on the Company's then current rate schedule.

This fee may be deducted from the outstanding escrow balance or billed.

PLEASE NOTE: The escrow trust fee for these joint order escrow trust instructions is due and payable within 30 days from the projected disbursement date (which may be amended by joint written direction of the parties hereto). In the event no projected disbursement date is ascertainable, said escrow trust fee is to be billed at acceptance and is due and payable within 30 days from the billing date. Chicago Title and Trust Company, at its sole discretion, may reduce or waive the escrow trust fee for these joint order escrow instructions in the event the funds on deposit herein are transferred to or disbursed in connection with sale escrow trust instructions or an agency closing transaction established at Chicago Title.

Standard Provisions:

Investment:

Deposits made pursuant to these instructions may be invested on behalf of any party or parties hereto; provided that any direction to escrow trustee for such investment shall be expressed in writing and contain the consent of all parties to this escrow, and also provided that escrow trustee is in receipt of the taxpayer's identification number and investment forms as required. Escrow trustee will, upon request, furnish information concerning its procedures and fee schedules for investment.

In the event the escrow trustee is requested to invest deposits hereunder, Chicago Title and Trust Company is not to be held responsible for any loss of principal or interest which may be incurred as a result of making the investments or redeeming said investment for the purposes of these escrow trust instructions.

Direction Not to Invest/Right to Commingle:

Except as to deposits of funds for which escrow trustee has received express written direction concerning investment or other handling, the parties hereto direct the escrow trustee NOT to invest any funds deposited by the parties under the terms of this escrow and waive any rights which they may have under Section 2-8 of the Corporate Fiduciary Act (205 ILCS 620/2-8) to receive interest on funds deposited hereunder. In the absence of an authorized direction to invest funds, the parties hereto agree that the escrow trustee shall be under no duty to invest or reinvest any such funds at any time held by it hereunder; and, further, that escrow trustee may commingle such funds with other deposits or with its own funds in the manner provided for the administration of funds under said Section 2-8 and may use any part or all of such funds for its own benefit without obligation to any party for interest or earnings derived thereby, if any. Further, even with appropriate instructions to invest Escrow Deposits, Escrow Trustee may commingle the Escrow Deposits with other funds in a trust account in order to facilitate placing the Escrow Deposits into a segregated interest bearing account and to disburse the Escrow Deposits once they have been removed from such segregated interest bearing account as required by the terms of this Agreement.  Provided, however, nothing herein shall diminish escrow trustee's obligation to apply the full amount of such funds in accordance with the terms of these escrow instructions.

Compliance With Court Order:

The undersigned authorize and direct the escrow trustee to disregard any and all notices, warnings or demands given or made by the undersigned (other than jointly) or by any other person. The said undersigned also hereby authorize and direct the escrow trustee to accept, comply with, and obey any and all writs, orders, judgments or decrees entered or issued by any court with or without jurisdiction; and in case the said escrow trustee obeys or complies with any such writ, order, judgment or decree of any court, it shall not be liable to any of the parties hereto or any other person, by reason of such compliance, notwithstanding any such writ, order, judgment or decree be entered without jurisdiction or be subsequently reversed, modified, annulled, set aside or vacated. In case the escrow trustee is made a party defendant to any suit or proceedings regarding this escrow trust, the  undersigned, for themselves, their heirs, personal representatives, successors, and assigns, jointly and severally, agree to pay to said escrow trustee, upon written demand, all costs, attorney's fees, and expenses incurred with respect thereto. The escrow trustee shall have a lien on the deposit(s) herein for any and all such costs, fees and expenses. If said costs, fees and expenses are not paid, then the escrow trustee shall have the right to reimburse itself out of the said deposit(s).

Disputes/Circumstance not contemplated:

If any dispute arises with respect to the disbursement of any funds on deposit or if circumstances arise that were not contemplated or described in the original escrow agreement, and Escrow Trustee is unsure as to its duties as a result, Escrow Trustee may continue to hold said funds until either in receipt of a joint order from the parties or a court order directing payment. In such instance, Escrow Trustee may elect to commence an action in interpleader and in conjunction therewith remit the Escrow Deposit to a court of competent jurisdiction pending resolution of such dispute, and the parties hereto hereby indemnify and hold harmless Escrow Trustee for any action taken by it in good faith in the execution of its duties hereunder. The parties further agree that the cost of any such action shall be deducted from the Escrow Deposit prior to disbursement

to the parties. Notwithstanding the foregoing, where a party to this escrow agreement has been placed in default and the period to cure such default has lapsed, without cure, upon the delivery to Escrow Trustee of commercially reasonable documentation evidencing the same, Escrow Trustee shall, without delay, release the Escrow Deposit to the non-defaulting party entitled to receive such Escrow Deposit without direction from a court or delivery of a joint order from the parties to this escrow agreement.

Disclaimer Re: Validity of Documentation:

In its capacity as Escrow Trustee, Escrow Trustee shall not be responsible for the genuineness or validity of any security, instrument, document or item deposited with it and shall have no responsibility other than to faithfully follow the instructions contained herein, and shall not be responsible for the validity or enforceability of any security interest of any party and it is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto and reasonably believed by Escrow Trustee to have been signed by the proper person.  Escrow Trustee may assume that any person purporting to give any notice hereunder has been duly authorized to do so.

*[Signature Page to Follow]*

Execution:

These escrow trust instructions are governed by and are to be construed under the laws of the state of Illinois. The escrow trust instructions, amendments or supplemental instructions hereto, may be executed in counterparts, each of which shall be deemed an original and all such counterparts together shall constitute one and the same instrument.

For Seller:                                        For Purchaser:

Name:                                              Name:



By:_____          By:_____
Name:_____          Name:_____
Its:_____          Its:_____



Address:                                           Address:

Phone:                                             Phone:

Fax:                                               Fax:

Email:                                             Email:




Legal Representative:                              Legal Representative:

Name:                                              Name:

By:                                                By:

Address:                                           Address:


Phone:                                             Phone:

Fax:                                               Fax:
Email:                                             Email:

Signature:

Signature:

Accepted: Chicago Title and Trust Company, as Escrow Trustee

By:                                                    Date:

**\*Upon receipt of the funds, the escrow agreement becomes effective.**

**<u>EXHIBIT "E"</u>**

**<u>ASSIGNMENT AND ASSUMPTION</u>**

[See attached]

# ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is entered into and effective as of [_____], 2019, by and among **SEARS, ROEBUCK AND CO.**, a New York corporation and INNOVEL SOLUTIONS, INC., a Delaware corporation   (collectively "Seller" or "Assignor") and **Henry Shahery** or any of its permitted assignees ("Purchaser" or "Assignee"). Seller and Purchaser are referred to collectively herein as the "Parties."

WHEREAS, the Parties are parties to that certain **LEASE SALE AGREEMENT** , dated _____ (the "Purchase Agreement") (capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Purchase Agreement); and

WHEREAS, the execution and delivery of this Agreement is contemplated by Section 9(b)(i) and 9(c)(ii) of the Purchase Agreement.

NOW, THEREFORE, in consideration of the promises and mutual agreements set forth in the Purchase Agreement, the Parties hereby agree as follows:

1) <u>Assignment and Assumption</u>.  Effective as of the Closing, Seller hereby assigns, grants, conveys, and transfers Seller's estate, right, title and interest as tenant of the leasehold estate described under the Lease, and Purchaser hereby accepts the conveyance, transfer, assignment and delivery of Seller's rights, title and interest as tenant of the leasehold estate described under the Lease.  The Lease to be assigned to Purchaser under this Agreement is described in <u>Exhibit A</u> attached hereto.

2) <u>Conflict</u>.  The assignment and assumption of the Lease made hereunder are made in accordance with and subject to the Purchase Agreement (including, without limitation, the representations, warranties, covenants, and agreements contained therein), which is incorporated herein by reference.  In the event of a conflict between the terms and conditions of this Agreement and the terms and conditions of the Purchase Agreement, the terms and conditions of the Purchase Agreement shall govern, supersede, and prevail. Notwithstanding anything to the contrary in this Agreement, nothing herein is intended to, nor shall it, extend, amplify, or otherwise alter the representations, warranties, covenants, and obligations of the Parties contained in the Purchase Agreement or the survival thereof.

3)    <u>Notices</u>.  Any notice, request, or other document to be given hereunder to any Party shall be given in the manner specified in Section 16 of the Purchase Agreement.  Any Party may change its address for receiving notices, requests, and other documents by giving written notice of such change to the other Parties.

4)    <u>Severability</u>.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

5)    <u>Enforceability</u>.  If any provision of this Agreement or the application of any such provision to any person or circumstance shall be held invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other provision hereof.

6)    <u>Amendments; Waivers</u>.  This Agreement may not be amended or modified except by an instrument in writing signed by, or on behalf of, Purchaser and Seller.  Any waiver of rights hereunder must be set forth in writing.

7)    <u>Further Assurances</u>.  Each of the Parties shall execute and deliver all such further documents and do such other things as the other Party may reasonably request to give full effect to this Agreement.

8)    <u>Counterparts; Facsimile and Electronic Signatures</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.  This Agreement or any counterpart may be executed and delivered by facsimile copies or delivered by electronic communications by portable document format (.pdf), each of which shall be deemed an original.

9)    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York (without giving effect to the principles of conflicts of Laws thereof), except to the extent that the Laws of such state are superseded by the Bankruptcy Code.

10)    <u>Third Party Beneficiaries and Obligations</u>.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns.  Nothing in this Agreement, express or implied, is intended to or shall confer upon any Person other than the Parties or their respective successors and permitted assigns, any rights, remedies, or liabilities under or by reason of this Agreement.

11)    <u>Entire Agreement</u>.  This Agreement, together with the Purchase Agreement and the exhibits and the documents referred to in the Purchase Agreement, contain the entire understanding between the Parties with respect to the transactions contemplated hereby and supersede all prior agreements, understandings, representations and statements, oral or written, between the Parties on the subject matter hereof, which such prior agreements,

understandings, representations and statements, oral or written, shall be of no further force or effect.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of date first above written.

**SELLER / ASSIGNOR:**
**SELLER:**

**SEARS, ROEBUCK AND CO.,**
a New York corporation

By:_____
Name:_____
Its:_____

**INNOVEL SOLUTIONS, INC.,**
a Delaware corporation

By:_____
Name:_____
Its:_____

**PURCHASER / ASSIGNEE:**

**PURCHASER:**

**Henry Shahery,**
[                                        ]

**By:**_____
**Name:**_____
**Its:**_____

**<u>Exhibit A</u>**

**<u>The Lease</u>**

## **EXHIBIT "F"**

## **LANDLORD NOTICE**

[See attached]

## NOTICE TO LANDLORD


_____, 2019


**Via Federal Express**

_____
_____
_____


   Re:  Notice of assignment of lease at [**ADDRESS**] (the "**Lease**")

Ladies and Gentlemen:

   Please be advised that on October 21, 2018, [**SELLER/TENANT**] the tenant under the Lease ("**Tenant**"), and certain of its affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.

   Effective as of _____, 2019 Tenant's interest in the Lease has been assigned to [**PURCHASER**] ("**Assignee**"), and Assignee has assumed all of the tenant's obligations under the Lease.

   Any future inquiries regarding your Lease should be directed to the address below:

     _____
     _____
     _____


   With a copy (which shall not constitute notice to Assignee) to:

     _____
     _____
     _____

Very truly yours,

**[SELLER/TENANT]**,
**[Seller entity type and state of organization**]

By:_____
Name:_____
Its:_____

WEIL:\97124980\4\73217.0004

**<u>Exhibit E</u>**

**BID TABULATION**
**2019 ROOF REPLACEMENT**

*Project:*                                                                                                                         *Prepared for: Mr. Jeffery Smith*
*5525 South Soto Street*                                                                                                          *Jeff Smith Building & Development, Inc.*
*Vernon, CA 90058*

| CONTRACTORS | CABRAL ROOFING | HOWARD ROOFING | RED POINTE ROOFING | SAN MARINO ROOFING | TSP ROOF |
|---|---|---|---|---|---|
| *BASE BID : ROOF SECTIONS A & B* | | | | | |
| All preparation work to existing roof system (including removal of all wall flashing assemblies and sheet metal accessories, as well as removal and disposal of all flashings at penetrations and supports, etc.): | $11,830.00 | $49,375.00 | $25,591.00 | $11,200.00 | $56,220.00 |
| The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a mechanically-attached, 60-mil thick, white, 3-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation: | $642,222.00 | $707,874.00 | $740,373.00 | $738,862.00 | $741,460.00 |
| *Estimated Square Footage of Roof Section* | *269,100* | *259,960* | *259,960* | *267,300* | *259,960* |
| Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports): | $5,540.00 | $1,951.00 | $0.00 | $0.00 | $1,500.00 |
| The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications: | $0.00 | $47,350.00 | $251,656.00 | $149,490.00 | $51,000.00 |
| Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface: | $5,980.00 | $12,570.00 | $6,729.00 | $6,719.00 | $12,200.00 |
| **BASE BID TOTAL FOR ROOF SECTIONS A AND B:** | **$665,572.00** | **$819,120.00** | **$1,024,349.00** | **$906,271.00** | **$862,380.00** |
| *BASE BID : ROOF SECTION C  (LOWER ROOF)* | | | | | |
| Demolition of existing roof, including ballasted gravel, insulation boards, sheet metal accessories and required abatement work down to the concrete substrate: | $195,000.00 | $202,500.00 | $111,517.00 | $213,730.00 | $215,500.00 |
| The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a adhered, 60-mil thick, white, 9-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation: | $369,096.00 | $357,750.00 | $407,940.00 | $361,785.00 | $358,450.00 |
| Installation of a 1.5-inch polyisocyanurate insulation board and a 1/4-inch thick DensDeck Prime roof cover board over concrete Roof Section C (Lower Roof), with both layers adhered using a low rise foam insulation adhesive in a ribbon application, and adhering the specified PVC feltback membrane using a water-based adhesive: | $228,192.00 | $100,080.00 | $332,916.00 | $288,107.00 | $102,000.00 |
| *Estimated Square Footage of Roof Section:* | *105,800* | *98,741* | *98,741* | *98,800* | *98,741* |
| Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports): | $2,450.00 | $2,150.00 | $0.00 | $0.00 | $1,500.00 |
| The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications): | $0.00 | $38,950.00 | $141,665.00 | $74,690.00 | $42,700.00 |

**BID TABULATION**
**2019 ROOF REPLACEMENT**

Project:
*5525 South Soto Street*
*Vernon, CA 90058*

Prepared for: *Mr. Jeffery Smith*
*Jeff Smith Building & Development, Inc.*

| CONTRACTORS | CABRAL ROOFING | HOWARD ROOFING | RED POINTE ROOFING | SAN MARINO ROOFING | TSP ROOF |
|---|---|---|---|---|---|
| Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface: | $4,375.00 | $6,990.00 | $3,647.00 | $7,134.00 | $6,500.00 |
| **BASE BID TOTAL FOR ROOF SECTION C (LOWER ROOF):** | **$799,113.00** | **$708,420.00** | **$997,685.00** | **$945,446.00** | **$726,650.00** |
| *BASE BID : ROOF SECTIONS  C (UPPER ROOF)* | | | | | |
| Roof maintenance and repair actions, including the repair of membrane punctures, gouges, the resealing of tops of penetration flashings, the removal of miscellaneous debris accumulation from all drainage areas, waterways and bases | $2,241.00 | $3,800.00 | $3,340.00 | $9,500.00 | $3,500.00 |
| **BASE BID TOTAL FOR ROOF SECTION C (UPPER ROOF):** | **$2,241.00** | **$3,800.00** | **$3,340.00** | **$9,500.00** | **$3,500.00** |
| *BASE BID : TRUCK DOCK METAL CANOPIES (SECTION A,B &C)* | | | | | |
| Restoration of existing steep-sloped metal canopies over truck dock areas with new white reflective coating application applied at a minimum rate of 1-1/2 gallons per 100 square feet.  Work to include application of rust prohibitive primer | $119,386.00 | $90,315.00 | $78,524.00 | $90,068.00 | $105,120.00 |
| *Estimated Square Footage of Metal Canopies:* | 24,800 | 23,900 | 23,894 | 19,000 | 24,000 |
| Restoration of existing sheet metal rain gutters at the truck dock canopies, including resealing of lap joints with new urethane caulking applications: | $8,028.00 | $12,600.00 | $11,709.00 | $19,800.00 | $10,200.00 |
| **BASE BID TOTAL FOR TRUCK DOCK METAL CANOPIES:** | **$127,414.00** | **$102,915.00** | **$90,233.00** | **$109,868.00** | **$115,320.00** |
| **BASE BID A, B, C, METAL CANOPIES - SUB TOTAL:** | **$1,594,340.00** | **$1,634,255.00** | **$2,115,607.00** | **$1,971,085.00** | **$1,707,850.00** |
| *ALTERNATES* | | | | | |
| **Alternate #1:**  Provide a **total additive cost**, to the base bid price, for the fabrication and installation of new clerestory window wall assemblies at all clerestory window locations.  Work to include removal of existing window assemblies, inclusive all gaskets, waterproofing seals and glass panels.  Contractor to provide design details to Owner | NO BID | NO BID | NO BID | PRICING IF AWARDED | NO BID |
| **Guaranteed No. of Working Days to Complete Project:** | **65** | **110** | **80 - 90** | **75** | **115-150** |
| *BASE BID METAL BUILDING* | | | | | |
| All preparation work to existing metal roof system (including patching/repairing voids/gaps in existing metal roof system, providing new three-course applications of elastic cement and reinforcing fabric to metal laps, as well as | $98,570.00 | $44,240.00 | | $60,565.00 | $48,730.00 |
| Installation of new specified white-acrylic coating applications to existing metal roof system, including base coat of metal bonding primer per the projects specifications: | $435,192.00 | $118,966.00 | | $181,519.00 | $120,500.00 |
| *Estimated Square Footage of Roof Section:* | 152,000 | 102,400 | | 102,500 | 102,495 |

BID TABULATION
2019 ROOF REPLACEMENT

Project:                                                                              Prepared for: Mr. Jeffery Smith
5525 South Soto Street                                                                Jeff Smith Building & Development, Inc.
Vernon, CA 90058

| CONTRACTORS | CABRAL ROOFING | HOWARD ROOFING | RED POINTE ROOFING | SAN MARINO ROOFING | TSP ROOF |
|---|---|---|---|---|---|
| Restoration of internal sheet metal gutter assemblies with specified "major seal" liquid flashing: | $11,713.00 | $12,520.00 | PENDING SUBMITTAL | $16,500.00 | $10,500.00 |
| Restoration of existing sheet metal rain gutter assemblies along perimeter edges of building. Work to include resealing of lap joints with new urethane caulking applications and providing new wire mesh strainers at downspout openings: | $4,680.00 | $6,282.00 | | $18,680.00 | $8,000.00 |
| The removal and replacement of existing fiberglass skylight panels with new fiberglass panels. New skylight panels are to match size of existing openings and are to be secured with new fasteners through steel/neoprene washers: | $12,253.00 | $22,590.00 | | $18,216.00 | $26,300.00 |
| BASE BID METAL BUILDING - SUB TOTAL: | $562,408.00 | $204,598.00 | | $295,480.00 | $214,030.00 |
| | | | | | |
| BASE BID A, B, C, METAL CANOPIES & METAL BUILDING - GRAND TOTAL: | $0.00 | $204,598.00 | $0.00 | $1,971,085.00 | $0.00 |
| | | | | | |
| UNIT PRICING | | | | | |
| Provide a separate installed cost, per sheet, for the purchase and installation of additional DensDeck protection boards: | $65.00 per 4' x 8' sheet | $65.00 per 4' x 8' sheet | $140.00 per 4' x 8' sheet | $75.00 per 4' x 8' sheet | $40.00 per 4' x 8' sheet |
| Provide a separate installed cost, per sheet, for the purchase and installation of additional 1.5-inch polyisocyanurate insulation boards. | $56.00 per 4' x 8' sheet | $65.00 per 4' x 8' sheet | $135.00 per 4' x 8' sheet | $65.00 per 4' x 8' sheet | $42.00 per 4' x 8' sheet |
| Provide a separate installed cost, per lineal foot, for the purchase and installation of additional walkpad material: | $32.00 per lineal foot | $30.00 per lineal foot | $22.00 per lineal foot | $28.00 per lineal foot | $22.00 per lineal foot |
| Provide a separate installed cost, per lineal foot, for the fabrication and installation of new 22-gauge, rain gutter assemblies at truck dock canopy match size and dimensions of existing gutter assemblies: (ALLOWANCE OF 1,500 LF) | $28.50 | $45.00 | $32.00 | $15.00 | $45.00 |
| Metal Building - Provide a separate installed cost, per lineal foot, for the purchase and installation of additional sheet metal rain gutter assemblies: | $23.50 per lineal foot | $45.00 per lineal foot | | $60.00 per lineal foot | $46.00 per lineal foot |
| Guaranteed No. of Working Days to Complete Project: | 35 | 24 | | 35 | 25 |

# CHANGE ORDER

## SEARS HOLDINGS

| | |
|---|---|
| **CONTRACTOR:** | **DATE:** **August 3, 2018** |
| **JS Construction**<br>**9191 Santiago Drive**<br>**Huntington Beach, CA 92646** | **CONTRACT DATE:** **February 1, 2018** |
| | **C/O NUMBER:** 1 |
| **ATTN.: Jeffery Smith** | **JA NUMBER:** |
| | **UNIT #:** 8738 |
| **CONSULTANT: N/A** | **LOCATION:** **5525 S. Soto**<br>**Vernon, CA 90058** |
| | **PROJECT:** **Building Repairs** |
| | **SEARS HOLDINGS CONTACT:** **Danny Thomas** |

The Contractor is directed to make the following changes:

| **Description:** | **Cost:** |
|---|---|
| **See Project Cost Summary Attached** | **$505,249** |

Note: This Change Order will be effective only upon execution by SEARS HOLDINGS representative. This Change Order is approved by the parties and the terms and conditions of the Contract Documents govern all work to be done under this Change Order.

| | | | |
|---|---|---|---|
| Design and Engineering | $49,860.00 | Original Contract Sum | $1,200,000.00 |
| Material, Fabrication, Labor | $455,389.00 | Previous Changes | $0.00 |
| Taxes | $0.00 | Total Before Change Order | $1,200,000.00 |
| Freight | $0.00 | Cost This Change (increase, decrease) | $505,249.00 |
| Installation | $0.00 | Revised Contract Sum | $1,705,249.00 |
| Total | $505,249.00 | | |

This Change will add # of days to the work. The revised Date of Substantial Completion is Date. The revised Date of Final Completion is Date.

| | | | |
|---|---|---|---|
| Contractor: | JS Construction | Sears Holdings | |
| Signed By: | | Signed By: | |
| Title: | President | Title: | Jr Dre Construction |
| Date Signed: | 10/24/18 | Date Signed: | 18/24/18 |

I

# CHANGE ORDER

## SEARS HOLDINGS

| | |
|---|---|
| **CONTRACTOR:** | **DATE:** **August 3, 2018** |
| **JS Construction**<br>**9191 Santiago Drive**<br>**Huntington Beach, CA 92646** | **CONTRACT DATE:** **February 1, 2018** |
| | **C/O NUMBER:** **2** |
| **ATTN.: Jeffery Smith** | **JA NUMBER:** |
| | **UNIT #:** **8738** |
| **CONSULTANT: N/A** | **LOCATION:** **5525 S. Soto**<br>**Vernon, CA 90058** |
| | **PROJECT:** **Building Repairs** |
| | **SEARS HOLDINGS CONTACT:** **Danny Thomas** |

The Contractor is directed to make the following changes:

| **Description:** | **Cost:** |
|---|---|
| **See Project Cost Summary Attached** | **$310,296.** |

**Note:** This Change Order will be effective only upon execution by SEARS HOLDINGS representative. This Change Order is approved by the parties and the terms and conditions of the Contract Documents govern all work to be done under this Change Order.

| | | | |
|---|---|---|---|
| Design and Engineering | $48,000.00 | Original Contract Sum | $1,200,000.00 |
| Material, Fabrication, Labor | $262,296.00 | Previous Changes | $505,249.00 |
| Taxes | $0.00 | Total Before Change Order | $1,705,249.00 |
| Freight | $0.00 | Cost This Change (increase, decrease) | $310,296.00 |
| Installation | $0.00 | Revised Contract Sum | $2,015,545.00 |
| Total | $310,296.00 | | |

This Change will add # days to the work. The revised Date of Substantial Completion is Date. The revised Date of Final Completion is Date.

| | | | |
|---|---|---|---|
| Contractor: | JS Construction | Sears Holdings | |
| Signed By: | _(signature)_ | Signed By: | _(signature)_ |
| Title: | President | Title: | So Dir Construction |
| Date Signed: | 10/24/18 | Date Signed: | 10/24/18 |

## CHANGE ORDER

## SEARS HOLDINGS

| | |
|---|---|
| **CONTRACTOR:** | **DATE:** **October 19, 2018** |
|    **JS Construction** | |
|    **9191 Santiago Drive** | **CONTRACT DATE:** **February 1, 2018** |
|    **Huntington Beach, CA 92646** | |
| | **C/O NUMBER:** **3** |
| **ATTN.: Jeffery Smith** | |
| | **JA NUMBER:** |
| | **UNIT #:** 8738 |
| **CONSULTANT: N/A** | **LOCATION:** **5525 S. Soto** |
| | **Vernon, CA 90058** |
| | **PROJECT:** **Building Repairs** |
| | **SEARS HOLDINGS** **Danny Thomas** |
| | **CONTACT:** |

The Contractor is directed to make the following changes:

| **Description:** | **Cost:** |
|---|---|
| **Savings on buyout of Clearview materials.** | **<$10,296.>** |

Note: This Change Order will be effective only upon execution by SEARS HOLDINGS representative. This Change Order is approved by the parties and the terms and conditions of the Contract Documents govern all work to be done under this Change Order.

| | | | |
|---|---|---|---|
| Design and Engineering | $0.00 | Original Contract Sum | $1,200,000.00 |
| Material, Fabrication, Labor | ($10,296.00) | Previous Changes | $815,545.00 |
| Taxes | $0.00 | Total Before Change Order | $2,015,545.00 |
| Freight | $0.00 | Cost This Change (increase, decrease) | ($10,296.00) |
| Installation | $0.00 | Revised Contract Sum | $2,005,249.00 |
| Total | ($10,296.00) | | |

This Change will add # of days to the work. The revised Date of Substantial Completion is Date. The revised Date of Final Completion is Date.

| | | |
|---|---|---|
| Contractor: **JS Construction** | Sears Holdings | |
| Signed By: _____ | Signed By: _____ | |
| Title: President | Title: *Se DTP Construction* | |
| Date Signed: 10/24/18 | Date Signed: 10/24/18 | |

1

## SWORN STATEMENT OF CONTRACTOR AND SUBCONTRACTOR
## TO OWNER AND TO CHICAGO TITLE INSURANCE COMPANY

State of **Michigan**

} ss.                    Page    1    of    1    Pages

County of **Berrien**

The affiant, **Jeffery Smith** being first duly sworn, on oath deposes and says that he is **President** of **JS Construction** that **JS Construction** has a contract with **Sears Holdings Corporation**, owner for **Enclose Clearview Building** on the following premises in said County to wit **5525 S. Soto Vernon, CA 90058**

That, for the purposes of said contract, the following persons have been contracted with, and have furnished, or are furnishing and preparing materials for, and have done or are doing labor on said improvement. That there is due and to become due them, respectively, the amounts set opposite their names for materials or labor as stated. That this statement is a full, true and complete statement of all such persons, the amounts paid and the amount due or to become due to each.

| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|
| Name and Address | Kind of Work | Amount of Contract | Retention (Inc. Current) | Net of Previous Payments | Net Amount This Payment | Balance to Become Due (Inc. Retentions) |
| **Fuentes Design Group** 15252 Youngwood Drive Whittier, CA 90605 | Architectural | 43,750 | - | 43,750 | - | - |
| **City of Vernon - Permits** | City Permits | 3,125 | - | 3,125 | - | - |
| **G&W Builders, Inc.** 557 Mercury Lane Brea, CA 92621 | Structural Steel | 223,997 | - | 151,830 | 72,167 | - |
| **JS Construction** | General Construction | 29,128 | - | 29,128 | - | - |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| TOTALS | | $300,000 | $0 | $227,833 | $72,167 | $0 |

| | | | | |
|---|---|---|---|---|
| AMOUNT OF ORIGINAL CONTRACT | $ | 300,000 | WORK COMPLETED TO DATE | $          300,000 |
| EXTRAS TO CONTRACT | | - | LESS          % RETAINED | |
| TOTAL CONTRACT AND EXTRAS | | 300,000 | NET AMOUNT EARNED | $          72,167 |
| CREDITS TO CONTRACT | | - | NET PREVIOUSLY PAID | 227,833 |
| ADJUSTED TOTAL CONTRACT | $ | 300,000 | NET AMOUNT OF THIS PAYMENT | **$72,167** |
| | | | BALANCE TO BECOME DUE (Inc. Retention) | $          - |

It is understood that the total amount paid to date plus the amount requested in this application shall not exceed          100.00%          % of the cost of work completed to date.

I agree to furnish Waivers of Lien for all materials under my contract when demanded.

Signed

**JS Construction**

Subscribed and sworn to before me this    28    day of    MARCH                    2019

DAVID M. BALSIS
NOTARY PUBLIC, STATE OF MICHIGAN
COUNTY OF BERRIEN                                                    Notary Public
MY COMMISSION EXPIRES OCT 19, 2024
ACTING IN THE COUNTY OF    The above sworn statement should be obtained by the owner before each and every payment.

# *Jeff Smith Building & Development, Inc.*

9191 Santiago Drive
Huntington Beach, CA  92646

**ORIGINAL**

*Invoice*

| Date | Invoice # |
|------|-----------|
| 3/27/2019 | 2700-068 |

| Bill To: | Job Location: |
|----------|---------------|
| **Sears Holdings**<br>**3333 Beverly Road**<br>**Hoffman Estates, IL 60192** | **Soto Building**<br>**5525 S. Soto**<br>**Vernon, CA 90058** |

| Your Contract # | Terms | Representative | Job Number |
|-----------------|-------|----------------|------------|
|  | Net 5 | **Mr. Danny Thomas** | **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.1  Sears Soto Clean n Show** |

| CUSTOMER NAME | DESCRIPTION | AMOUNT |
|---------------|-------------|--------|
| **JS Construction** | **Final Billing - Clearview** | 72,167.00 |

|  |  |  |
|--|--|--|
| **Original Contract Amount:** |  | **$300,000** |
| **Change Request** |  | **0** |
| **Total Revised Contract Amount:** |  | **$300,000** |
| **Gross Earned to Date:** |  | **$300,000** |
| **Less Retention:** | 0.00% | **0** |
| **Less Previous Billings:** |  | **227,833** |
| **TOTAL AMOUNT DUE:** |  | **$72,167** |

| Thank you for the opportunity to be of service to you. | **Total** | **$72,167.00** |

## CONDITIONAL WAIVER AND RELEASE ON FINAL PAYMENT

NOTICE: THIS DOCUMENT WAIVES THE CLAIMANT'S LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS EFFECTIVE ON RECEIPT OF PAYMENT. A PERSON SHOULD NOT RELY ON THIS DOCUMENT UNLESS SATISFIED THAT THE CLAIMANT HAS RECEIVED PAYMENT

### Identifying Information

Name of Claimant: **JS Construction**
Name of Customer: **Sears Holdings Corporation**
Job Location: **5525 S. Soto Street, Vernon, CA  90058**
Owner: **Sears Holdings Corporation**

### Conditional Waiver and Release

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job.  Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. This document is effective only on the claimant's receipt of payment from the financial institution on which the following check is drawn.

Maker of Check: **Sears Holdings Corporation**
Amount of Check: **$72,167.00**
Check Payable To: **JS Construction**

### Exceptions

This document does not affect any of the following:

1. Extras for which the claimant has not received payment.
2. The following progress payments for which the claimant has previously given a conditional waiver and release but has not received payment:
    a. Date(s) of waiver and release: **N/A**
    b. Amount(s) of unpaid progress payment(s): **$-0-**
3. Contract rights, including (A) a right based on rescission, abandonment, or breach of contract, and, (B) the right to recover compensation for work not compensated by the payment.

Claimant's Signature: _____
Claimant's Title: **President**
Date of Signature: _____3/08/19_____

STATE OF: _Michigan_
COUNTY OF: _Berrin_

On the 8 day of _March 2019_, before me personally came **Jeffery Smith** to me known, who, being by me duly sworn, did depose and say he is the **President** of **JS Construction** the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; and the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board or directors of said corporation, and that he signed his name thereto by like order.

Notary Public _____

DAVID M. BALSIS
NOTARY PUBLIC, STATE OF MICHIGAN
COUNTY OF BERRIEN
MY COMMISSION EXPIRES OCT. 19, 2024
ACTING IN THE COUNTY OF _____

Page 1 of 2 Pages

# APPLICATION AND CERTIFICATE FOR PAYMENT

TO OWNER:
**Sears Holdings**
3333 Beverly Road
Hoffman Estates, IL 60192

PROJECT: **Soto - Facility**
5525 S. Soto Vernon, CA

| | | Distribution to: |
|---|---|---|
| APPLICATION NO.: | **2** | ☒ OWNER |
| PERIOD TO: | **27-Mar-19** | ☐ ARCHITECT |
| PROJECT NOS.: | **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** | ☐ CONTRACTOR |
| CONTRACT DATE: | **1-Feb-18** | |

FROM CONTRACTOR: **JS Construction**
9191 Santiago Drive
Huntington Beach, CA 92646

VIA ARCHITECT: N/A

CONTRACT #:

CONTRACT FOR: **Building Renovation**

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract.
Continuation Sheet is attached.

| | | |
|---|---|---|
| 1. **ORIGINAL CONTRACT SUM** | | $300,000 |
| 2. **Net Change By Change Orders** | | $0 |
| 3. **CONTRACT SUM TO DATE (Line 1 + 2)** | | $300,000 |
| 4. **TOTAL COMPLETED & STORED TO DATE** | | $300,000 |
| 5. **RETAINAGE** | | |
|     0% of Completed Work | $0 | |
|     0% of Stored Material | $0 | |
|       Total Retainage | | $0 |
| 6. **TOTAL EARNED LESS RETAINAGE** | | $300,000 |
| 7. **LESS PREVIOUS CERTIFICATES FOR PAYMENT** | | $227,833 |
| 8. **CURRENT PAYMENT DUE** | | $72,167 |
| 9. **BALANCE TO FINISH, INCLUDING RETAINAGE** | | $0 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous month by Owner | $  -  | $  -  |
| Total approved this Month | $  -  | $  -  |
| TOTALS | $  -  | $  -  |
| NET CHANGE by Change Order | $  -  | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By: _____ Date: 3/28/19

State of: **Michigan**
County of: **Berrien**

Subscribed and sworn to before me this day 28 of MARCH 2019

Notary Public: _Van Belen_

My Commission expires: 10-19-2024

## ARCHITECTS CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on the on-site observations and the data comprising this application, the Architect certifies to the Owner than to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the contractor is entitled to payment of the **AMOUNT CERTIFIED**

**AMOUNT CERTIFIED** ........................................$ N/A

(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this Application and on the Continuation Sheet that are changed to conform to the amount certified.) ARCHITECT:

By: _____ N/A _____ Date: _____

This certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

SMITH BUILDING & DEVELOPMENT, INC. ★ JEFF VINCENT CORPORATE SEAL 02/25/1997 CALIFORNIA

# CONTINUATION SHEET

Page 2 of 2 Pages

Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.

| APPLICATION NUMBER: | 2 |
| APPLICATION DATE: | 3/27/2019 |
| PERIOD TO: | 27-Mar-19 |
| ARCHITECT'S PROJECT NO: | N/A |
| CONTRACT NUMBER: | |

| A | B | C | D | E | F | G | % | H | I | |
|---|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. / Change Order # | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETED FROM PREVIOUS APPLICATIONS (D+E) | THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE 10% | NOTES |
| | **EXHIBIT B** | | | | | | | | | |
| 1 | Architectural | 43,750 | 43,750 | - | - | 43,750 | 100% | - | - | |
| 2 | Plan Check & Permit Fees | 3,125 | 3,125 | - | - | 3,125 | 100% | - | - | |
| 3 | Metal Building Construction | 223,997 | 151,830 | - | - | 151,830 | 68% | 72,167 | - | |
| 4 | JS Construction | 29,128 | 29,128 | - | - | 29,128 | 100% | - | - | |
| 5 | | - | - | - | - | - | 0% | - | - | |
| 6 | | - | - | - | - | - | 0% | - | - | |
| 7 | | - | - | - | - | - | 0% | - | - | |
| 8 | | - | - | - | - | - | 0% | - | - | |
| 9 | | - | - | - | - | - | 0% | - | - | |
| 10 | | - | - | - | - | - | 0% | - | - | |
| 11 | | - | - | - | - | - | 0% | - | - | |
| 12 | | - | - | - | - | - | 0% | - | - | |
| 13 | | - | - | - | - | - | 0% | - | - | |
| 14 | | - | - | - | - | - | 0% | - | - | |
| 15 | | - | - | - | - | - | 0% | - | - | |
| 16 | | - | - | - | - | - | 0% | - | - | |
| 17 | | - | - | - | - | - | 0% | - | - | |
| 18 | | - | - | - | - | - | 0% | - | - | |
| 19 | | - | - | - | - | - | 0% | - | - | |
| 20 | | - | - | - | - | - | 0% | - | - | |
| 21 | | - | - | - | - | - | 0% | - | - | |
| 22 | | - | - | - | - | - | 0% | - | - | |
| 23 | | - | - | - | - | - | 0% | - | - | |
| 24 | | - | - | - | - | - | 0% | - | - | |
| 25 | | - | - | - | - | - | 0% | - | - | |
| 26 | | - | - | - | - | - | 0% | - | - | |
| 27 | | - | - | - | - | - | 0% | - | - | |
| 28 | | - | - | - | - | - | 0% | - | - | |
| 29 | | - | - | - | - | - | 0% | - | - | |
| 30 | | - | - | - | - | - | 0% | - | - | |
| 31 | | - | - | - | - | - | 0% | - | - | |
| 32 | | - | - | - | - | - | 0% | - | - | |
| 33 | | - | - | - | - | - | 0% | - | - | |
| 34 | | - | - | - | - | - | 0% | - | - | |
| 35 | | - | - | - | - | - | 0% | - | - | |
| 36 | | - | - | - | - | - | 0% | - | - | |
| | **TOTAL** | 300,000 | 227,833 | - | - | 227,833 | | 72,167 | - | |

Soto Pay 2 Clearview  1.7.19 1147.xlsx

# *Jeff Smith Building & Development, Inc.*

*Invoice*

9191 Santiago Drive
Huntington Beach, CA 92646

ORIGINAL

| Date | Invoice # |
|------|-----------|
| 1/7/2019 | 2700-002 |

| Bill To: |
|----------|
| **Mr. Danny Thomas**<br>**Sears Holdings**<br>**3333 Beverly Road**<br>**Hoffman Estates, IL 60192** |

| Job Location: |
|---------------|
| **Soto Building**<br>**5525 S. Soto**<br>**Vernon, CA 90058** |

| Your Contract # | Terms | Representative | Job Number |
|-----------------|-------|----------------|------------|
| | **Net 5** | **Mr. Danny Thomas** | **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.1  Sears Soto Clean n Show** |

| CUSTOMER NAME | DESCRIPTION | AMOUNT |
|---------------|-------------|--------|
| **JS Construction** | **Final Billing** | 73,550.00 |

| | | |
|---|---|---|
| **Original Contract Amount:** | **$1,200,000** | |
| **Change Request** | **505,249** | |
| **Total Revised Contract Amount:** | **$1,705,249** | |
| **Gross Earned to Date:** | **$1,705,249** | |
| **Less Retention:** | 0.00% | **0** |
| **Less Previous Billings:** | **1,631,699** | |
| **TOTAL AMOUNT DUE:** | **$73,550** | |

| **Total** | **$73,550.00** |
|-----------|----------------|

## CONDITIONAL WAIVER AND RELEASE ON FINAL PAYMENT

NOTICE: THIS DOCUMENT WAIVES THE CLAIMANT'S LIEN, STOP PAYMENT NOTICE, AND PAYMENT BOND RIGHTS EFFECTIVE ON RECEIPT OF PAYMENT. A PERSON SHOULD NOT RELY ON THIS DOCUMENT UNLESS SATISFIED THAT THE CLAIMANT HAS RECEIVED PAYMENT

### Identifying Information

Name of Claimant: **JS Construction**
Name of Customer: **Sears Holdings Corporation**
Job Location: **5525 S. Soto Street, Vernon, CA  90058**
Owner: **Sears Holdings Corporation**

### Conditional Waiver and Release

This document waives and releases lien, stop payment notice, and payment bond rights the claimant has for labor and service provided, and equipment and material delivered, to the customer on this job. Rights based upon labor or service provided, or equipment or material delivered, pursuant to a written change order that has been fully executed by the parties prior to the date that this document is signed by the claimant, are waived and released by this document, unless listed as an Exception below. This document is effective only on the claimant's receipt of payment from the financial institution on which the following check is drawn.

Maker of Check: **Sears Holdings Corporation**
Amount of Check: **$73,550.00**
Check Payable To: **JS Construction**

### Exceptions

This document does not affect any of the following:

1. Extras for which the claimant has not received payment.
2. The following progress payments for which the claimant has previously given a conditional waiver and release but has not received payment:
   a. Date(s) of waiver and release: **N/A**
   b. Amount(s) of unpaid progress payment(s): **$-0-**
3. Contract rights, including (A) a right based on rescission, abandonment, or breach of contract, and, (B) the right to recover compensation for work not compensated by the payment.

**Claimant's Signature:** _____
**Claimant's Title:  President**
**Date of Signature:** _____ 1/7/19

STATE OF: michigan
COUNTY OF: Berrien

On the 7th day of January, before me personally came **Jeffery Smith** to me known, who, being by me duly sworn, did depose and say he is the **President** of **JS Construction** the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; and the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board or directors of said corporation, and that he signed his name thereto by like order.

Notary Public Karrie L. Smith

KARRE L. SMITH
NOTARY PUBLIC - MICHIGAN
COUNTY OF BERRIEN
My Commission Expires November 9, 2022
Acting in the County of Berrien

# APPLICATION AND CERTIFICATE FOR PAYMENT

**ORIGINAL**

PROJECT: **Soto - Facility**
5525 S. Soto Vernon, CA

Page 1 of 2 Pages

Distribution to:
- [X] OWNER
- [ ] ARCHITECT
- [ ] CONTRACTOR

TO OWNER:
**Sears Holdings**
3333 Beverly Road
Hoffman Estates, IL 60192

FROM CONTRACTOR:    **JS Construction**
9191 Santiago Drive
Huntington Beach, CA 92646

VIA ARCHITECT: N/A

CONTRACT FOR:    **Building Renovation**

APPLICATION NO.: **2**
PERIOD TO: **31-Dec-18**
PROJECT NOS.: **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**

CONTRACT DATE : **1-Feb-18**

CONTRACT #:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the contract.
Continuation Sheet is attached.

| | | |
|---|---|---|
| 1. ORIGINAL CONTRACT SUM | | $1,200,000 |
| 2. Net Change By Change Orders | | $505,249 |
| 3. CONTRACT SUM TO DATE (Line 1 + 2) | | $1,705,249 |
| 4. TOTAL COMPLETED & STORED TO DATE | | $1,705,249 |
| 5. RETAINAGE | | |

    0%    of Completed Work    $0

    0%    of Stored Material    $0

Total Retainage    $0

| | |
|---|---|
| 6. TOTAL EARNED LESS RETAINAGE | $1,705,249 |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT | $1,631,699 |
| 8. CURRENT PAYMENT DUE | $73,550 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE | $0 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous month by Owner | $0 | - |
| Total approved this Month | $505,249 | - |
| TOTALS | $505,249 | - |
| NET CHANGE by Change Order | $505,249 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

CONTRACTOR:

By:

State of: **Michigan**
County of: **Berrien**

Subscribed and sworn to before me this day ____ 7th ____ of ____ January ____

Notary Public: KARRIE A. SMITH
My Commission expires: 11/9/2022

## ARCHITECTS CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on the on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the contractor is entitled to payment of the

**AMOUNT CERTIFIED**

AMOUNT CERTIFIED .................................................$ N/A
(Attach explanation if amount certified differs from the amount applied for. Initial all figures on this Application and on the Continuation Sheet that are changed to conform to the amount certified.) ARCHITECT:

By: _____ N/A _____    Date: _____

This certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

BUILDING & DEVELOPMENT INC.
H J JOHNSON
SEAL
02/25/1997

KARRE L. SMITH
NOTARY PUBLIC - MICHIGAN
COUNTY OF BERRIEN
My Commission Expires November 9, 2022
Acting in the County of Berrien

# CONTINUATION SHEET

Page 2 of 2 Pages

Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.

APPLICATION NUMBER: 2
APPLICATION DATE: 7-Jan-19
PERIOD TO: 31-Dec-18
ARCHITECTS PROJECT NO: N/A
CONTRACT NUMBER:

| A ITEM NO | Change Order # | B DESCRIPTION OF WORK | C SCHEDULED VALUE | D FROM PREVIOUS APPLICATIONS (D-E) | E THIS PERIOD | F MATERIALS PRESENTLY STORED (NOT IN D OR E) | G TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | H BALANCE TO FINISH (C-G) | I RETAINAGE 4.31% | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **EXHIBIT B** | | | | | | | | | |
| 1 | | **(50) Dock Bumpers** | 25,623 | - | 25,623 | - | 25,623 | 100% | - | 1,105 | |
| 1-a | 1 | Add - Install Metal Plates | 16,591 | - | 16,591 | - | 16,591 | 100% | - | 716 | |
| 2 | | **Replace (2) Overhead Doors** | 25,000 | - | 25,000 | - | 25,000 | 100% | - | 1,078 | |
| 2-a | 1 | Overhead Door Credit | (5,508) | - | (5,508) | - | (5,508) | 0% | - | (238) | |
| 3 | | **Replace Water Main** | 149,940 | - | 149,940 | - | 149,940 | 100% | - | 6,467 | |
| 3-a | 1 | Water Main - Material Increase | 29,430 | - | 29,430 | - | 29,430 | 100% | - | 1,269 | |
| 4 | | **Lighting** | 199,231 | - | 199,231 | - | 199,231 | 100% | - | 8,593 | |
| 4-a | 1 | Warehouse Lighting - Material Increase | 59,424 | - | 59,424 | - | 59,424 | 100% | - | 2,563 | |
| 4-b | 1 | Replace Ballast in Offices | 3,515 | - | 3,515 | - | 3,515 | 100% | - | 152 | |
| 5 | | **Replace Main Switchgear** | 382,500 | - | 382,500 | - | 382,500 | 100% | - | 16,498 | |
| 5-a | 1 | Switchgear Changes | 17,567 | - | 17,567 | - | 17,567 | 100% | - | 758 | |
| 6 | | **Fire Sprinklers - Title 19** | 74,100 | - | 74,100 | - | 74,100 | 100% | - | 3,196 | |
| 6-a | 1 | Title 19 - Credit on Buyout | (33,725) | - | (33,725) | - | (33,725) | 0% | - | (1,455) | |
| 7 | | **ADA Ramp** | 62,025 | - | 62,025 | - | 62,025 | 100% | - | 2,675 | |
| 7-a | 1 | ADA Increase | 11,775 | - | 11,775 | - | 11,775 | 100% | - | 508 | |
| 8 | | **Misc. Clean Up Around Site, (On Going)** | 31,105 | - | 31,105 | - | 31,105 | 100% | - | 1,342 | |
| 8-a | 1 | Clean Up - Increase | 4,651 | - | 4,651 | - | 4,651 | 100% | - | 201 | |
| 9 | | **Roof Repair** | 150,000 | - | 150,000 | - | 150,000 | 100% | - | 6,470 | |
| 9-a | | IRC Roof Survey, (2/24/17) - $8,714. | - | - | - | - | - | 0% | - | - | |
| 9-b | | Repairs over offices - $41,875. | - | - | - | - | - | 0% | - | - | |
| 9-c | | Repairs outside perimeter - $75,479. | - | - | - | - | - | 0% | - | - | |
| 10 | | **Contingency** | 100,476 | - | 100,476 | - | 100,476 | 100% | - | 4,334 | |
| 10-a | | Credit for adjustments above | (100,476) | - | (100,476) | - | (100,476) | 0% | - | (4,334) | |
| | | | - | - | - | - | - | 0% | - | - | |
| 11 | | **Building Systems** | - | - | - | - | - | | - | - | |
| 11-a | 2 | Fire Doors | 30,935 | - | 30,935 | - | 30,935 | 100% | - | 1,334 | |
| 11-b | 2 | Fire Alarm | 24,813 | - | 24,813 | - | 24,813 | 100% | - | 1,070 | |
| 11-b-1 | 2 | Fire Alarm - Monitoring To Date | 825 | - | 825 | - | 825 | 100% | - | 36 | |
| 11-c | 2 | HVAC & Exhaust Fans | 210,113 | - | 210,113 | - | 210,113 | 100% | - | 9,062 | |
| 11-d | 2 | Plumbing | 9,250 | - | 9,250 | - | 9,250 | 100% | - | 399 | |
| 11-e | 2 | Structural Damage | 31,563 | - | 31,563 | - | 31,563 | 100% | - | 1,361 | |

Soto Pay 2 Base Contract & Changes 1.7.19 1147.xlsx

# CONTINUATION SHEET

Contractor's signed Certification is attached
In tabulations below, amounts are stated to the nearest dollar.

Page 2 of 2 Pages

| APPLICATION NUMBER: | 2 |
| APPLICATION DATE: | 7-Jan-19 |
| PERIOD TO: | 31-Dec-18 |
| ARCHITECT'S PROJECT NO: | N/A |
| CONTRACT NUMBER: | |

| A | | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | Change Order # | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETED — FROM PREVIOUS APPLICATIONS (D=E) | THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | % (G/C) | BALANCE TO FINISH (C-G) | RETAINAGE 4.31% |
| 11f | 2 | Sewage Pump - Allowance | 6,250 | - | 6,250 | - | 6,250 | 100% | - | 270 |
| 11g | 2 | Parking Lot Sump Drain - Allowance | 10,625 | - | 10,625 | - | 10,625 | 100% | - | 458 |
| 12 | | **City of Vernon Requirements** | | | | | | | | |
| 12-a | 2 | Electrical Repairs | 53,019 | - | 53,019 | - | 53,019 | 100% | - | 2,287 |
| 12-b | 2 | Restroom & Warehouse Floor | 23,531 | - | 23,531 | - | 23,531 | 100% | - | 1,015 |
| 12-c | 2 | Building Address | 1,281 | - | 1,281 | - | 1,281 | 100% | - | 55 |
| 12-d | 2 | Drinking Water | 595 | - | 595 | - | 595 | 100% | - | 26 |
| 12-e | 2 | Fire Extinguishers | 3,902 | - | 3,902 | - | 3,902 | 100% | - | 168 |
| 12-f | 2 | Fire Department - Striping | 4,155 | - | 4,155 | - | 4,155 | 100% | - | 179 |
| 12-g | 2 | Office Modification Corrections | 19,355 | - | 19,355 | - | 19,355 | 100% | - | 835 |
| 13 | | **Architectural & Engineering** | | | | | | | | |
| 13-a | 2 | Electrical Engineering - Building Power Repair | 2,583 | - | 2,583 | - | 2,583 | 100% | - | 111 |
| 13-b | 2 | Architectural & Engineering - Electrical Room & Office Repairs | 22,501 | - | 22,501 | - | 22,501 | 100% | - | 971 |
| 13-c | 2 | Architectural - ADA Ramp | 13,545 | - | 13,545 | - | 13,545 | 100% | - | 584 |
| 13-d | 2 | Civil Engineer / Survey - ADA Ramp - Allowance | 11,231 | - | 11,231 | - | 11,231 | 100% | - | 484 |
| 14 | | **Permits** | | | | | | | | |
| 14-a | 2 | Restore Building Power Electrical | 2,929 | - | 2,929 | - | 2,929 | 100% | - | 126 |
| 14-b | 2 | Utility Company Charges | 13,367 | - | 13,367 | - | 13,367 | 100% | - | 577 |
| 14-c | 2 | Electrical Switchgear | 2,129 | - | 2,129 | - | 2,129 | 100% | - | 92 |
| 14-d | 2 | Office & Electrical Room | 2,320 | - | 2,320 | - | 2,320 | 100% | - | 100 |
| 14-e | 2 | Water Main, Warehouse Lighting | 1,188 | - | 1,188 | - | 1,188 | 100% | - | 51 |
| 15 | | - | - | - | - | - | - | 0% | - | - |
| 16 | | - | - | - | - | - | - | 0% | - | - |
| 17 | | - | - | - | - | - | - | 0% | - | - |
| 18 | | - | - | - | - | - | - | 0% | - | - |
| 19 | | - | - | - | - | - | - | 0% | - | - |
| 20 | | - | - | - | - | - | - | 0% | - | - |
| 21 | | - | - | - | - | - | - | 0% | - | - |
| 22 | | - | - | - | - | - | - | 0% | - | - |
| 23 | | - | - | - | - | - | - | 0% | - | - |
| 24 | | - | - | - | - | - | - | 0% | - | - |
| 25 | | - | - | - | - | - | - | 0% | - | - |
| 26 | | - | - | - | - | - | - | 0% | - | - |
| 27 | | - | - | - | - | - | - | 0% | - | - |
| 28 | | - | - | - | - | - | - | 0% | - | - |
| | | **TOTAL** | 1,705,249 | - | 1,705,249 | - | 1,705,249 | | - | 73,550 |

Soto Pay 2 Base Contract & Changes 1.7.19   1147.xlsx

**BID TABULATION**
**2019 ROOF REPLACEMENT**

*Project:*  
*647 Sears Street*  
*Vernon, CA 90058*

*Prepared for:  Mr. Jeffery Smith*  
*Jeff Smith Building & Development, Inc.*

| CONTRACTORS | CABRAL ROOFING | HOWARD ROOFING | RED POINTE ROOFING | SAN MARINO ROOFING | TSP ROOF |
|---|---|---|---|---|---|
| *BASE BID* | | | | | |
| All preparation work to existing metal roof system (including patching/repairing voids/gaps in existing metal roof system, providing new three-course applications of elastic cement and reinforcing fabric to metal laps, as well as providing new rust prohibitive primer applications to rusted/oxidized areas, etc.): | $98,570.00 | $44,240.00 | | $60,565.00 | $48,730.00 |
| Installation of new specified white-acrylic coating applications to existing metal roof system, including base coat of metal bonding primer per the projects specifications: | $435,192.00 | $118,966.00 | | $181,519.00 | $120,500.00 |
| *Estimated Square Footage of Roof Section:* | *152,000* | *102,400* | | *102,500* | *102,495* |
| Restoration of internal sheet metal gutter assemblies with specified "major seal" liquid flashing: | $11,713.00 | $12,520.00 | PENDING SUBMITTAL | $16,500.00 | $10,500.00 |
| Restoration of existing sheet metal rain gutter assemblies along perimeter edges of building.  Work to include resealing of lap joints with new urethane caulking applications and providing new wire mesh strainers at downspout openings: | $4,680.00 | $6,282.00 | | $18,680.00 | $8,000.00 |
| The removal and replacement of existing fiberglass skylight panels with new fiberglass panels.  New skylight panels are to match size of existing openings and are to be secured with new fasteners through steel/neoprene washers: | $12,253.00 | $22,590.00 | | $18,216.00 | $26,300.00 |
| **BASE BID  TOTAL:** | **$562,408.00** | **$204,598.00** | | **$295,480.00** | **$214,030.00** |
| *UNIT PRICING* | | | | | |
| Provide a separate installed cost, per lineal foot, for the purchase and installation of additional sheet metal rain gutter assemblies: | $23.50  *per lineal foot* | $45.00  *per lineal foot* | | $60.00  *per lineal foot* | $46.00  *per lineal foot* |
| **Guaranteed No. of Working Days to Complete Project:** | **35** | **24** | | **35** | **25** |

**BID TABULATION**
**2019 ROOF REPLACEMENT**

Project:
*5525 South Soto Street*
*Vernon, CA 90058*

Prepared for:  *Mr. Jeffery Smith*
*Jeff Smith Building & Development, Inc.*

| CONTRACTORS | CABRAL ROOFING | HOWARD ROOFING | RED POINTE ROOFING | SAN MARINO ROOFING | TSP ROOF |
|---|---|---|---|---|---|
| *BASE BID : ROOF SECTIONS A & B* | | | | | |
| All preparation work to existing roof system (including removal of all wall flashing assemblies and sheet metal accessories, as well as removal and disposal of all flashings at penetrations and supports, etc.): | $11,830.00 | $49,375.00 | $25,591.00 | $11,200.00 | $56,220.00 |
| The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a mechanically-attached, 60-mil thick, white, 3-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation: | $642,222.00 | $707,874.00 | $740,373.00 | $738,862.00 | $741,460.00 |
| *Estimated Square Footage of Roof Section* | 269,100 | 259,960 | 259,960 | 267,300 | 259,960 |
| Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports): | $5,540.00 | $1,951.00 | $0.00 | N/A | $1,500.00 |
| The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications: | NO BID | $47,350.00 | $251,656.00 | $149,490.00 | $51,000.00 |
| Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface: | $5,980.00 | $12,570.00 | $6,729.00 | $6,719.00 | $12,200.00 |
| **BASE BID TOTAL FOR ROOF SECTIONS A AND B:** | **$665,572.00** | **$819,120.00** | **$1,024,349.00** | **$906,271.00** | **$862,380.00** |
| *BASE BID : ROOF SECTION C  (LOWER ROOF)* | | | | | |
| Demolition of existing roof system, including ballasted gravel, insulation boards, sheet metal accessories and required abatement work down to the concrete substrate: | $195,000.00 | $202,500.00 | $111,517.00 | $213,730.00 | $215,500.00 |
| The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a adhered, 60-mil thick, white, 9-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation: | $369,096.00 | $357,750.00 | $407,940.00 | $361,785.00 | $358,450.00 |
| *Estimated Square Footage of Roof Section:* | 105,800 | 98,741 | 98,741 | 98,800 | 98,741 |
| Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports): | $2,450.00 | $2,150.00 | $0.00 | N/A | $1,500.00 |
| The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications): | NO BID | $38,950.00 | $141,665.00 | $74,690.00 | $42,700.00 |
| Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface: | $4,375.00 | $6,990.00 | $3,647.00 | $7,134.00 | $6,500.00 |
| **BASE BID TOTAL FOR ROOF SECTION C (LOWER ROOF):** | **$570,921.00** | **$608,340.00** | **$664,769.00** | **$657,339.00** | **$624,650.00** |

## BID TABULATION
## 2019 ROOF REPLACEMENT

*Project:*
*5525 South Soto Street*
*Vernon, CA 90058*

*Prepared for:  Mr. Jeffery Smith*
*Jeff Smith Building & Development, Inc.*

| CONTRACTORS | CABRAL ROOFING | HOWARD ROOFING | RED POINTE ROOFING | SAN MARINO ROOFING | TSP ROOF |
|---|---|---|---|---|---|
| ***BASE BID : ROOF SECTIONS  C (UPPER ROOF)*** | | | | | |
| Roof maintenance and repair actions, including the repair of membrane punctures, gouges, the resealing of tops of penetration flashings, the removal of miscellaneous debris accumulation from all drainage areas, waterways and bases of perimeter building walls, the retightening of all loose drain bolts, etc.: | $2,241.00 | $3,800.00 | $3,340.00 | $9,500.00 | $3,500.00 |
| **BASE BID TOTAL FOR ROOF SECTION C (UPPER ROOF):** | **$2,241.00** | **$3,800.00** | **$3,340.00** | **$9,500.00** | **$3,500.00** |
| ***BASE BID : TRUCK DOCK METAL CANOPIES (SECTION A,B &C)*** | | | | | |
| Restoration of existing steep-sloped metal canopies over truck dock areas with new white reflective coating application applied at a minimum rate of 1-1/2 gallons per 100 square feet.  Work to include application of rust prohibitive primer prior to application of new white reflective coating applications: | $119,386.00 | $90,315.00 | $78,524.00 | $90,068.00 | $105,120.00 |
| *Estimated Square Footage of Metal Canopies:* | 24,800 | 23,900 | 23,894 | 19,000 | 24,000 |
| Restoration of existing sheet metal rain gutters at the truck dock canopies, including resealing of lap joints with new urethane caulking applications: | $8,028.00 | $12,600.00 | $11,709.00 | $19,800.00 | $10,200.00 |
| **BASE BID TOTAL FOR TRUCK DOCK METAL CANOPIES:** | **$127,414.00** | **$102,915.00** | **$90,233.00** | **$109,868.00** | **$115,320.00** |
| **BASE BID GRAND TOTAL:** | **$1,366,148.00** | **$1,534,175.00** | **$1,786,031.00** | **$1,682,978.00** | **$1,605,850.00** |
| ***ALTERNATES*** | | | | | |
| **Alternate #1:**  Provide a **total additive cost**, to the base bid price, for the fabrication and installation of new clerestory window wall assemblies at all clerestory window locations.  Work to include removal of existing window assemblies, inclusive all gaskets, waterproofing seals and glass panels.  Contractor to provide design details to Owner Representative for approval: | NO BID | NO BID | NO BID | PRICING IF AWARDED | NO BID |
| **Alternate #2:** Provide a **total additive cost** to include the installation of a 1.5-inch polyisocyanurate insulation board and a 1/4-inch thick DensDeck Prime roof cover board over concrete Roof Section C (Lower Roof), with both layers adhered using a low rise foam insulation adhesive in a ribbon application, and adhering the specified PVC feltback membrane using a water-based adhesive: | $228,192.00 | $100,080.00 | $332,916.00 | $288,107.00 | $102,000.00 |
| ***UNIT PRICING*** | | | | | |
| Provide a separate installed cost, per sheet, for the purchase and installation of additional DensDeck protection boards: | $65.00  *per 4' x 8' sheet* | $65.00  *per 4' x 8' sheet* | $140.00  *per 4' x 8' sheet* | $75.00  *per 4' x 8' sheet* | $40.00  *per 4' x 8' sheet* |
| Provide a separate installed cost, per sheet, for the purchase and installation of additional 1.5-inch polyisocyanurate insulation boards. | $56.00  *per 4' x 8' sheet* | $65.00  *per 4' x 8' sheet* | $135.00  *per 4' x 8' sheet* | $65.00  *per 4' x 8' sheet* | $42.00  *per 4' x 8' sheet* |
| Provide a separate installed cost, per lineal foot, for the purchase and installation of additional walkpad material: | $32.00  *per lineal foot* | $30.00  *per lineal foot* | $22.00  *per lineal foot* | $28.00  *per lineal foot* | $22.00  *per lineal foot* |
| Provide a separate installed cost, per lineal foot, for the fabrication and installation of new 22-gauge, rain gutter assemblies at truck dock canopy match size and dimensions of existing gutter assemblies: | $28.50  *per lineal foot* | $45.00  *per lineal foot* | $32.00  *per lineal foot* | $15.00  *per lineal foot* | $45.00  *per lineal foot* |
| **Guaranteed No. of Working Days to Complete Project:** | **65** | **110** | **80 - 90** | **75** | **115-150** |

# BID PROPOSAL

NAME OF BIDDER HOWARD ROOFING COMPANY, INC.                    DATE        7-12-19

**ORIGINAL BID IS TO BE EMAILED TO:**

INDEPENDENT ROOFING CONSULTANTS

Attention:  Ms. Jessica Galicia-Valenzuela                jessica@irctech.com

The undersigned, in compliance with your invitation for bids for the:

### 2019 ROOF RESTORATION

#### 647 SEARS STREET

#### VERNON, CA 90058

having examined the Drawings and Specifications and related documents and the site of the proposed work and being familiar with all of the conditions surrounding the construction of the proposed project, including the availability of labor, hereby propose to furnish all labor, material and supplies as required for the work in accordance with the Contract Documents as specified and within the time set forth and at the price stated below. This price is to cover all expenses incurred in performing the work required under the contract documents of which this proposal is a part:

I/We acknowledge the receipt of the following addenda:

#        ONE (1)                Dated:        6-27-19        Received        6-28-19

#                                Dated:                        Received

Under the heading of base bid as described in this specification, the Undersigned proposes to furnish all labor and materials and assume all costs incurred to do the work of the contract including reroofing and all related work and subcontracts as located on the Owner's site, for the amounts listed as follows:

**647 SEARS STREET**
**VERNON, CA 90058**

**2019 ROOF RESTORATION**
**SPECIFICATION**

## *BASE BID*

**647 SEARS STREET**

All preparation work to existing metal roof system (including patching/repairing voids/gaps in existing metal roof system, providing new three-course applications of elastic cement and reinforcing fabric to metal laps, as well as providing new rust prohibitive primer applications to rusted/oxidized areas, etc.):

FORTY-FOUR THOUSAND TWO HUNDRED FORTY AND 00/100. DOLLARS ($    44,240.00                )

Installation of new specified white-acrylic coating applications to existing metal roof system, including base coat of metal bonding primer per the projects specifications:

ONE HUNDRED EIGHTEEN THOUSAND NINE HUNDRED    DOLLARS ($    118,966.00                )
SIXTY-SIX AND 00/100.
   *Estimated Square Footage of Roof Section:*    102,400 S.F.

Restoration of internal sheet metal gutter assemblies with specified "major seal" liquid flashing:

TWELVE THOUSAND FIVE HUNDRED TWENTY AND 00/100. DOLLARS ($   12,520.00                )

Restoration of existing sheet metal rain gutter assemblies along perimeter edges of building. Work to include resealing of lap joints with new urethane caulking applications and providing new wire mesh strainers at downspout openings:

SIX THOUSAND TWO HUNDRED EIGHTY-TWO AND 00/100. DOLLARS ($   6,282.00                )

The removal and replacement of existing fiberglass skylight panels with new fiberglass panels. New skylight panels are to match size of existing openings and are to be secured with new fasteners through steel/neoprene washers:

TWENTY-TWO THOUSAND FIVE HUNDRED NINETY    DOLLARS ($   22,590.00                )
AND 00/100.

*BASE BID TOTAL:*  TWO HUNDRED FOUR THOUSAND FIVE HUNDRED NINETY-EIGHT AND 00/100.

                        DOLLARS ($    204,598.00                )

647 SEARS STREET                                               2019 ROOF RESTORATION
VERNON, CA 90058                                                           SPECIFICATION

## UNIT PRICES:

Provide a separate installed cost, per lineal foot, for the purchase and installation of additional sheet metal rain gutter assemblies:

Add $ _45.00_____per lineal foot.

I/We guarantee to complete the work within___24_____working days should I/We be the successful bidder.

This bid shall be good for **60** days after bid opening.

## LICENSE:

The undersigned has, or will have, all licenses required by law authorizing him to bid upon and to perform the Contract if awarded him.

Respectfully Submitted,

_HOWARD ROOFING COMPANY, INC._____
Contractor

_Francisco Sanchez_____
Signature

_FRANCISCO SANCHEZ_____
Print Name

_GENERAL MANAGER_____
Title

_245 N. MOUNTAIN VIEW AVE._____
Address

_POMONA, CA 91767_____
City and State

_475568_____
Contractor's License Number

ATTACHMENT A

STATEMENT OF COORDINATION

The Undersigned acknowledges that, in the process of preparing a bid for the referenced category or work, he has examined the Contract Drawings; read and understands the requirements of the General and Supplementary Conditions; Addenda, if any; technical sections of the Specifications describing work categories for which the Undersigned is directly responsible, and those related sections which include additional requirements for cooperation, coordination, and compliance.

The Undersigned acknowledges his obligation to identify below any errors, omissions, conflicts, code violations, and improper use of materials discovered in the Contract Documents that could interfere with the timely completion, or increase the cost, of the category of work for which the Undersigned is responsible.

Except as noted below, the Undersigned has no objection to, or reservation about, the materials to be furnished or the conditions under which they will be installed, and is satisfied that he can complete his contractual responsibilities in a workman-like manner without extensive modifications or additional expense.

EXCEPTIONS:   1.   Owner / tenant to provide reasonable access adjacent to building.

2.   All roofing (except demo) performed during daytime hours (M-F).

3.   Not responsible for replacement of damaged or dislodged foil.

4.   Not responsible for any attachment to underside of decking, i.e. light fixtures, bulbs, sprinkler lines or conduits.

5.   Reasonable and professional care in removal and reinstallation of mechanical units. Howard Roofing Company, Inc. will not be responsible for damages incurred.

6.   Not responsible for realignment of satellite dishes.

7.   Not responsible for existing structural/framing damage or upgrades.

8.   Drawings / Engineering for smoke hatches if required by City of Fire Department.

9.   Not responsible for interior protection, i.e. covering computers, equipment, machinery, warehouse products or boxes.

Submitted by:      Howard Roofing Company, Inc.

Signed by:         Francisco Sanchez – General Manager        Date:   7-12-19

## ATTACHMENT B

### SUBCONTRACTOR LISTING

The Undersigned, in preparation of the project bid, declares the intent to use the following subcontractors:

**DEMOLITION:**

| | |
|---|---|
| Company Name: | L & M Roof Removal, Inc. |
| Company Address: | 17657 Potter Valley Road |
| | Corona California 92880 |
| License No.: | CSLB #949108 |

**SHEET METAL:**

| | |
|---|---|
| Company Name: | Diversifab |
| Company Address: | 15370 Fairfield Ranch Road, Unit G |
| | Chino Hills, California 91709 |
| License No.: | #740419 |

**MECHANICAL:**

| | |
|---|---|
| Company Name: | Kohler Mechanical, Inc. |
| Company Address: | 9780 Cinch Ring Lane |
| | Alta Loma, California 91737 |
| License No.: | #77034 |

**WATERPROOFING:**

| | |
|---|---|
| Company Name: | Howard Roofing Company, Inc. |
| Company Address: | 245 N. Mountain View Avenue |
| | Pomona, California 91767 |
| License No.: | #475568 |

**OTHERS:**

| | |
|---|---|
| Type of Work: | ELECTRICAL |
| Company Name: | AAA Service Electric |
| Company Address: | 3545 Woodard Road |
| | Phelan California 92371 |
| License No.: | #949024 |

| | |
|---|---|
| Type of Work: | |
| Company Name: | |
| Company Address: | |
| | |
| License No.: | |

# BID PROPOSAL

NAME OF BIDDER HOWARD ROOFING COMPANY, INC.          DATE_____7-12-19_____

**ORIGINAL BID IS TO BE EMAILED TO:**

INDEPENDENT ROOFING CONSULTANTS

Attention:  Ms. Jessica Galicia-Valenzuela          jessica@irctech.com

The undersigned, in compliance with your invitation for bids for the:

## 2019 ROOF REPLACEMENT

### 5525 SOUTH SOTO STREET

### VERNON, CA 90058

having examined the Drawings and Specifications and related documents and the site of the proposed work and being familiar with all of the conditions surrounding the construction of the proposed project, including the availability of labor, hereby propose to furnish all labor, material and supplies as required for the work in accordance with the Contract Documents as specified and within the time set forth and at the price stated below. This price is to cover all expenses incurred in performing the work required under the contract documents of which this proposal is a part:

I/We acknowledge the receipt of the following addenda:

#    ONE (1)_____Dated:____6-27-19_____Received____6-28-19_____

#_____Dated:_____Received_____

Under the heading of base bid as described in this specification, the Undersigned proposes to furnish all labor and materials and assume all costs incurred to do the work of the contract including reroofing and all related work and subcontracts as located on the Owner's site, for the amounts listed as follows:

5525 SOUTH SOTO STREET                               2019 Roof Replacement
VERNON, CA 90058

## *BASE BID*

**5525 SOUTH SOTO STREET
(ROOF SECTIONS A AND B):**

All preparation work to existing roof system (including removal of all wall flashing assemblies and sheet metal accessories, as well as removal and disposal of all flashings at penetrations and supports, etc.):

FORTY-NINE THOUSAND THREE HUNDRED SEVENTY-FIVE   DOLLARS ($_____49,375.00_____)
AND 00/100.

The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a mechanically-attached, 60-mil thick, white, 3-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation:

SEVEN HUNDRED SEVEN THOUSAND EIGHT HUNDRED   DOLLARS ($___707,874.00_____)
SEVENTY-FOUR AND 00/100.

  *Estimated Square Footage of Roof Section: _____259,960 S.F._____*

Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports):

ONE THOUSAND NINE HUNDRED FIFTY-ONE AND 00/100.   DOLLARS ($___1,951.00_____)

The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications):

FORTY-SEVEN THOUSAND THREE HUNDRED FIFTY   DOLLARS ($___47,350.00_____)
AND 00/100.

Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface:

TWELVE THOUSAND FIVE HUNDRED SEVENTY AND 00/100. DOLLARS ($___12,570.00_____)

***BASE BID TOTAL FOR ROOF SECTIONS A AND B:*** EIGHT HUNDRED NINETEEN THOUSAND ONE

HUNDRED TWENTY AND 00/100.          DOLLARS ($_____819,120.00_____)

**5525 SOUTH SOTO STREET**
**VERNON, CA 90058**                                    **2019 Roof Replacement**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(ROOF SECTION C (LOWER ROOF):**

Demolition of existing roof system, including ballasted gravel, insulation boards, sheet metal accessories and required abatement work down to the concrete substrate:

TWO HUNDRED TWO THOUSAND FIVE HUNDRED AND 00/100.DOLLARS ($____202,500.00_____)

The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a adhered, 60-mil thick, white, 9-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation:

THREE HUNDRED FIFTY-SEVEN THOUSAND SEVEN HUNDREDDOLLARS ($___357,750.00_____)
FIFTY AND 00/100.
   *Estimated Square Footage of Roof Section:* _____98,741 S.F._____

Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports):

TWO THOUSAND ONE HUNDRED FIFTY AND 00/100._____DOLLARS ($___2,150.00_____)

The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications):

THIRTY-EIGHT THOUSAND NINE HUNDRED FIFTY_____DOLLARS ($___38,950.00_____)
AND 00/100.

Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface:

SIX THOUSAND NINE HUNDRED NINETY AND 00/100._____DOLLARS ($___6,990.00_____)

*BASE BID TOTAL FOR ROOF SECTION C (LOWER ROOF):* SIX HUNDRED EIGHT THOUSAND THREE

HUNDRED FORTY AND 00/100_____DOLLARS ($___608,340.00_____)

**5525 SOUTH SOTO STREET**                                    **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(ROOF SECTION C (UPPER ROOF):**

Roof maintenance and repair actions, including the repair of membrane punctures, gouges, the resealing of tops of penetration flashings, the removal of miscellaneous debris accumulation from all drainage areas, waterways and bases of perimeter building walls, the retightening of all loose drain bolts, etc.:

THREE THOUSAND EIGHT HUNDRED AND 00/100.          DOLLARS ($    3,800.00                )

*BASE BID TOTAL FOR ROOF SECTION C (UPPER ROOF):* THREE THOUSAND EIGHT HUNDRED

AND 00/100.                              DOLLARS ($    3,800.00                )

**5525 SOUTH SOTO STREET**                                      **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(Truck Dock Metal Canopies (SECTIONS A, B AND C):**

Restoration of existing steep-sloped metal canopies over truck dock areas with new white reflective coating application applied at a minimum rate of 1-1/2 gallons per 100 square feet. Work to include application of rust prohibitive primer prior to application of new white reflective coating applications:

NINETY THOUSAND THREE HUNDRED FIFTEEN AND 00/100 DOLLARS ($  90,315.00          )

*Estimated Square Footage of Metal Canopies:*     23,900 S.F.

Restoration of existing sheet metal rain gutters at the truck dock canopies, including resealing of lap joints with new urethane caulking applications:

TWELVE THOUSAND SIX HUNDRED AND 00/100.           DOLLARS ($  12,600.00          )

*BASE BID TOTAL FOR TRUCK DOCK METAL CANOPIES:* ONE HUNDRED TWO THOUSAND NINE

HUNDRED FIFTEEN AND 00/100.               *DOLLARS ($*          102,915.00          )

*BASE BID GRAND TOTAL :* ONE MILLION FIVE HUNDRED THIRTY-FOUR THOUSAND ONE HUNDRED

SEVENTY-FIVE AND 00/100.               *DOLLARS ($*  1,534,175.00          )

5525 SOUTH SOTO STREET                                    2019 Roof Replacement
VERNON, CA 90058

## *ALTERNATES:*

**Alternate #1:** Provide a **total additive cost**, to the base bid price, for the fabrication and installation of new clerestory window wall assemblies at all clerestory window locations. Work to include removal of existing window assemblies, inclusive all gaskets, waterproofing seals and glass panels. Contractor to provide design details to Owner Representative for approval:

   (NO BID)                            DOLLARS ($    0.00                     )

**Alternate #2:** Provide a **total additive cost** to include the installation of a 1.5-inch polyisocyanurate insulation board and a 1/4-inch thick DensDeck Prime roof cover board over concrete Roof Section C (Lower Roof), with both layers adhered using a low rise foam insulation adhesive in a ribbon application, and adhering the specified PVC feltback membrane using a water-based adhesive:

   ONE HUNDRED THOUSAND EIGHTY AND 00/100.  DOLLARS ($        100,080.00          )

## *UNIT PRICES:*

Provide a separate installed cost, per board, for the purchase and installation of additional DensDeck protection boards:

Add $ 65.00                                                        per 4' x 8' sheet.

Provide a separate installed cost, per board, for the purchase and installation of additional 1.5-inch polyisocyanurate insulation boards.

Add $ 65.00                                                        per 4' x 8' sheet.

Provide a separate installed cost, per lineal foot, for the purchase and installation of additional walkpad material:

Add $ 30.00                                                        per lineal foot.

Provide a separate installed cost, per lineal foot, for the fabrication and installation of new 22-gauge, rain gutter assemblies at truck dock canopy match size and dimensions of existing gutter assemblies:

Add $ 45.00                                                        per lineal foot.

**5525 SOUTH SOTO STREET**                      2019 Roof Replacement
**VERNON, CA 90058**

I/We guarantee to complete the work within___110_____working days should I/We be the successful bidder.

This bid shall be good for **60** days after bid opening.

## LICENSE:

The undersigned has, or will have, all licenses required by law authorizing him to bid upon and to perform the Contract if awarded him.

Respectfully Submitted,

_HOWARD ROOFING COMPANY, INC._____
Contractor

_____
Signature

_FRANCISCO SANCHEZ_____
Print Name

_GENERAL MANAGER_____
Title

_245 N. MOUNTAIN VIEW AVE._____
Address

_POMONA, CA 91767_____
City and State

_475568_____
Contractor's License Number

ATTACHMENT A

STATEMENT OF COORDINATION

The Undersigned acknowledges that, in the process of preparing a bid for the referenced category or work, he has examined the Contract Drawings; read and understands the requirements of the General and Supplementary Conditions; Addenda, if any; technical sections of the Specifications describing work categories for which the Undersigned is directly responsible, and those related sections which include additional requirements for cooperation, coordination, and compliance.

The Undersigned acknowledges his obligation to identify below any errors, omissions, conflicts, code violations, and improper use of materials discovered in the Contract Documents that could interfere with the timely completion, or increase the cost, of the category of work for which the Undersigned is responsible.

Except as noted below, the Undersigned has no objection to, or reservation about, the materials to be furnished or the conditions under which they will be installed, and is satisfied that he can complete his contractual responsibilities in a workman-like manner without extensive modifications or additional expense.

EXCEPTIONS:
1. Owner / tenant to provide reasonable access adjacent to building.

2. All roofing (except demo) performed during daytime hours (M-F).

3. Not responsible for replacement of damaged or dislodged foil.

4. Not responsible for any attachment to underside of decking, i.e. light fixtures, bulbs, sprinkler lines or conduits.

5. Reasonable and professional care in removal and reinstallation of mechanical units. Howard Roofing Company, Inc. will not be responsible for damages incurred.

6. Not responsible for realignment of satellite dishes.

7. Not responsible for existing structural/framing damage or upgrades.

8. Drawings / Engineering for smoke hatches if required by City of Fire Department.

9. Not responsible for interior protection, i.e. covering computers, equipment, machinery, warehouse products or boxes.

Submitted by:    Howard Roofing Company, Inc.

Signed by:    _Francisco Sanchez – General Manager_    Date: 7-12-2019

ATTACHMENT B

SUBCONTRACTOR LISTING

The Undersigned, in preparation of the project bid, declares the intent to use the following
subcontractors:

DEMOLITION:

Company Name:  L & M Roof Removal, Inc.

Company Address:  17657 Potter Valley Road

Corona California 92880

License No.:  CSLB #949108

SHEET METAL:

Company Name:  Diversifab

Company Address:  15370 Fairfield Ranch Road, Unit G

Chino Hills, California 91709

License No.:  #740419

MECHANICAL:

Company Name:  Kohler Mechanical, Inc.

Company Address:  9780 Cinch Ring Lane

Alta Loma, California 91737

License No.:  #77034

WATERPROOFING:

Company Name:  Howard Roofing Company, Inc.

Company Address:  245 N. Mountain View Avenue

Pomona, California 91767

License No.:  #475568

OTHERS:

Type of Work:  ELECTRICAL

Company Name:  AAA Service Electric

Company Address:  3545 Woodard Road

Phelan California 92371

License No.:  #949024

Type of Work:

Company Name:

Company Address:

License No.:

# <u>BID PROPOSAL</u>

**NAME OF BIDDER   Red Pointe Roofing                        DATE       07-16-2019      **

**ORIGINAL BID IS TO BE EMAILED TO:**

INDEPENDENT ROOFING CONSULTANTS

Attention:  Ms. Jessica Galicia-Valenzuela            jessica@irctech.com

The undersigned, in compliance with your invitation for bids for the:

## **2019 ROOF REPLACEMENT**

### **5525 SOUTH SOTO STREET**

### **VERNON, CA 90058**

having examined the Drawings and Specifications and related documents and the site of the proposed work and being familiar with all of the conditions surrounding the construction of the proposed project, including the availability of labor, hereby propose to furnish all labor, material and supplies as required for the work in accordance with the Contract Documents as specified and within the time set forth and at the price stated below. This price is to cover all expenses incurred in performing the work required under the contract documents of which this proposal is a part:

I/We acknowledge the receipt of the following addenda:

#              1              Dated:      June 27, 2019      Received      June 28, 2019      

#            ---              Dated:            ---            Received          ---          

Under the heading of base bid as described in this specification, the Undersigned proposes to furnish all labor and materials and assume all costs incurred to do the work of the contract including reroofing and all related work and subcontracts as located on the Owner's site, for the amounts listed as follows:

**5525 SOUTH SOTO STREET**                                    **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(ROOF SECTIONS A AND B):**

All preparation work to existing roof system (including removal of all wall flashing assemblies and sheet metal accessories, as well as removal and disposal of all flashings at penetrations and supports, etc.)**:**
   Twenty Five Thousand
   Five Hundred Ninety One                    DOLLARS ($            25,591.00            )

The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a mechanically-attached, 60-mil thick, white, 3-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation:
   Seven Hundred Forty Thousand
   Three Hundred Seventy Three                DOLLARS ($            740,373.00            )

   *Estimated Square Footage of Roof Section:* _____ *259,960* _____

Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports):

   Zero                                       DOLLARS ($            0.00            )

The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications):
   Two Hundred Fifty One Thousand
   Six Hundred Fifty Six                      DOLLARS ($            251,656.00            )

Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface**:**

   Six Thousand Seven Hundred Twenty Nine     DOLLARS ($            6,729.00            )

*BASE BID TOTAL FOR ROOF SECTIONS A AND B*:____ *One Million Twenty Four* ____

  *Thousand Three Hundred Forty Nine*    DOLLARS ($            *1,024,349.00*            )

**5525 SOUTH SOTO STREET**                                    **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(ROOF SECTION C (LOWER ROOF):**

Demolition of existing roof system, including ballasted gravel, insulation boards, sheet metal accessories and required abatement work down to the concrete substrate:
One Hundred Eleven Thousand
Five Hundred Seventeen _____ DOLLARS ($_____111,517.00_____)

The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a adhered, 60-mil thick, white, 9-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation:
Four Hundred Seven Thousand
Nine Hundred Forty _____ DOLLARS ($_____407,940.00_____)

*Estimated Square Footage of Roof Section:* _____*98,741*_____

Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports):

Zero _____ DOLLARS ($_____0.00_____)

The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications):
One Hundred Forty One Thousand
Six Hundred Sixty Five _____ DOLLARS ($_____141,665.00_____)

Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface**:**

Three Thousand Six Hundred Forty Seven _____ DOLLARS ($_____3,647.00_____)

***BASE BID TOTAL FOR ROOF SECTION C (LOWER ROOF)****:_____Six Hundred Sixty Four_____*

*Thousand Seven Hundred Sixty Nine_____* DOLLARS *($_____664,769.00_____)*

**5525 SOUTH SOTO STREET**                                    **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(ROOF SECTION C (UPPER ROOF):**

Roof maintenance and repair actions, including the repair of membrane punctures, gouges, the resealing of tops of penetration flashings, the removal of miscellaneous debris accumulation from all drainage areas, waterways and bases of perimeter building walls, the retightening of all loose drain bolts, etc.:

  Three Thousand Three Hundred Forty          DOLLARS ($          3,340.00          )

*BASE BID TOTAL FOR ROOF SECTION C (UPPER ROOF)*:    *Three Thousand Three*

 *Hundred Forty*                          DOLLARS *($                3,340.00          )*

**5525 SOUTH SOTO STREET**                                      **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(Truck Dock Metal Canopies (SECTIONS A, B AND C):**

Restoration of existing steep-sloped metal canopies over truck dock areas with new white reflective coating application applied at a minimum rate of 1-1/2 gallons per 100 square feet. Work to include application of rust prohibitive primer prior to application of new white reflective coating applications:

   Seventy Eight Thousand
   Five Hundred Twenty Four_____DOLLARS ($_____78,524.00_____)

   *Estimated Square Footage of Metal Canopies:_____23,894_____*

Restoration of existing sheet metal rain gutters at the truck dock canopies, including resealing of lap joints with new urethane caulking applications:

   Eleven Thousand Seven Hundred Nine_____DOLLARS ($_____11,709.00_____)

***BASE BID TOTAL FOR TRUCK DOCK METAL CANOPIES:___Ninety Thousand Two___***

   Hundred Thirty Three_____DOLLARS ($_____90,233.00_____)

***BASE BID GRAND TOTAL :___One Million Seven Hundred Eighty Six Thousand___***

   *Thirty One_____DOLLARS ($_____1,786,031.00_____)*

**5525 SOUTH SOTO STREET**                                    **2019 Roof Replacement**
<u>**VERNON, CA 90058**</u>

## *ALTERNATES:*

**Alternate #1**:  Provide a <u>**total additive cost**</u>, to the base bid price, for the fabrication and installation of new clerestory window wall assemblies at all clerestory window locations. Work to include removal of existing window assemblies, inclusive all gaskets, waterproofing seals and glass panels.  Contractor to provide design details to Owner Representative for approval:

  NO BID                                  DOLLARS ($          NO BID            )


**Alternate #2:** Provide a <u>**total additive cost**</u> to include the installation of a 1.5-inch polyisocyanurate insulation board and a 1/4-inch thick DensDeck Prime roof cover board over concrete Roof Section C (Lower Roof), with both layers adhered using a low rise foam insulation adhesive in a ribbon application, and adhering the specified PVC feltback membrane using a water-based adhesive:
   Three Hundred Thirty Two
   Thousand Nine Hundred Sixteen      DOLLARS ($            332,916.00        )


## *UNIT PRICES:*

Provide a separate installed cost, per board, for the purchase and installation of additional DensDeck protection boards:

Add $                            140.00                          per 4' x 8' sheet.


Provide a separate installed cost, per board, for the purchase and installation of additional 1.5-inch polyisocyanurate insulation boards.

Add $                            135.00                          per 4' x 8' sheet.

Provide a separate installed cost, per lineal foot, for the purchase and installation of additional walkpad material:

Add $                            22.00                           per lineal foot.

Provide a separate installed cost, per lineal foot, for the fabrication and installation of new 22-gauge, rain gutter assemblies at truck dock canopy match size and dimensions of existing gutter assemblies:

Add $                            32.00                           per lineal foot.

**5525 SOUTH SOTO STREET**                                    **2019 Roof Replacement**
**VERNON, CA 90058**

I/We guarantee to complete the work within  80-90  working days should I/We be the successful bidder.

This bid shall be good for **60** days after bid opening.

## *LICENSE:*

The undersigned has, or will have, all licenses required by law authorizing him to bid upon and to perform the Contract if awarded him.

Respectfully Submitted,

　　　　　　　　　　　　　 Red Pointe Roofing
　　　　　　　　　　　　　Contractor

　　　　　　　　　　　　　Signature

　　　　　　　　　　　　　 Tod Fritts
　　　　　　　　　　　　　Print Name

　　　　　　　　　　　　　 Sr. Project Manager
　　　　　　　　　　　　　Title

　　　　　　　　　　　　　 1814 N. Neville Street
　　　　　　　　　　　　　Address

　　　　　　　　　　　　　 Orange, CA 92865
　　　　　　　　　　　　　City and State

　　　　　　　　　　　　　 983705
　　　　　　　　　　　　　Contractor's License Number

*ATTACHMENT A*

## STATEMENT OF COORDINATION

The Undersigned acknowledges that, in the process of preparing a bid for the referenced category of work, he has examined the Contract Drawings, read and understands the requirements of the General and Supplementary Conditions, Addenda (if any), technical sections of the Specifications describing work categories for which the Undersigned is directly responsible, and those related sections which include additional requirements for cooperation, coordination, and compliance.

The Undersigned acknowledges his obligation to identify below any errors, omissions, conflicts, code violations, and improper use of materials discovered in the Contract Documents that could interfere with the timely completion, or increase the cost, of the category of work for which the Undersigned is responsible.

Except as noted below, the Undersigned has no objection to, or reservation about, the materials to be furnished or the conditions under which they will be installed, and is satisfied that he can complete his contractual responsibilities in a workmanlike manner without extensive modifications or additional expense.

EXCEPTIONS:   Proposal is based on utilizing areas adjacent to the building for loading and off-loading
materials as well as during the project for staging of equipment.
Proposal is based on work items being performed during normal working hours,
Reattachment of items on the underside of the deck that may become dis-lodged
during normal reroofing operations.

Submitted By:   Red Pointe Roofing

Signed By:   _____   Date:   07-16-2019
Tod Fritts, Sr. Project Manager

ATTACHMENT B

SUBCONTRACTOR LISTING

The Undersigned, in preparation of the project bid, declares the intent to use the following subcontractors:

DEMOLITION:
    Company Name:    Jeff Penn Services
    Company Address:   PO Box 11376
                             Westminster, CA 92685
    License No.:       838841

SHEET METAL:
    Company Name:    None
    Company Address:
    License No.:

MECHANICAL:
    Company Name:    None
    Company Address:
    License No.:

WATERPROOFING:
    Company Name:    Mark Beamish Waterproofing, Inc.
    Company Address:   1732 Reynolds Ave.
                             Irvine, CA 92614
    License No.:       650346

OTHERS:
    Type of Work:     Asbestos Abatement
    Company Name:    Gama Contracting Services, Inc.
    Company Address:   1835 Floradale Ave.
                             El Monte, CA 91733
    License No.:       780316

    Type of Work:
    Company Name:
    Company Address:
    License No.:

# BID PROPOSAL

**NAME OF BIDDER** TSP Roof Systems, Inc.                                    **DATE** 7-12-2019

**ORIGINAL BID IS TO BE EMAILED TO:**

INDEPENDENT ROOFING CONSULTANTS

Attention:  Ms. Jessica Galicia-Valenzuela                    jessica@irctech.com

The undersigned, in compliance with your invitation for bids for the:

### 2019 ROOF RESTORATION

### 647 SEARS STREET

### VERNON, CA 90058

having examined the Drawings and Specifications and related documents and the site of the proposed work and being familiar with all of the conditions surrounding the construction of the proposed project, including the availability of labor, hereby propose to furnish all labor, material and supplies as required for the work in accordance with the Contract Documents as specified and within the time set forth and at the price stated below. This price is to cover all expenses incurred in performing the work required under the contract documents of which this proposal is a part:

I/We acknowledge the receipt of the following addenda:

# 1                                    Dated: 6-27-2019                    Received

#                                    Dated:                                    Received

Under the heading of base bid as described in this specification, the Undersigned proposes to furnish all labor and materials and assume all costs incurred to do the work of the contract including reroofing and all related work and subcontracts as located on the Owner's site, for the amounts listed as follows:

| 647 SEARS STREET | 2019 ROOF RESTORATION |
|---|---|
| VERNON, CA 90058 | SPECIFICATION |

## *BASE BID*

### 647 SEARS STREET

All preparation work to existing metal roof system (including patching/repairing voids/gaps in existing metal roof system, providing new three-course applications of elastic cement and reinforcing fabric to metal laps, as well as providing new rust prohibitive primer applications to rusted/oxidized areas, etc.)**:**

Forty eight thousand seven hundred thirty _____ DOLLARS ($48,730.00 _____)

Installation of new specified white-acrylic coating applications to existing metal roof system, including base coat of metal bonding primer per the projects specifications:

One hundred twenty thousand five hundred _____ DOLLARS ($120,500.00 _____)

*Estimated Square Footage of Roof Section: 102,495 _____*

Restoration of internal sheet metal gutter assemblies with specified "major seal" liquid flashing:

Ten thousand five hundred _____ DOLLARS ($10,500.00 _____)

Restoration of existing sheet metal rain gutter assemblies along perimeter edges of building. Work to include resealing of lap joints with new urethane caulking applications and providing new wire mesh strainers at downspout openings:

Eight thousand _____ DOLLARS ($8,000.00 _____)

The removal and replacement of existing fiberglass skylight panels with new fiberglass panels.  New skylight panels are to match size of existing openings and are to be secured with new fasteners through steel/neoprene washers:

Twenty six thousand three hundred _____ DOLLARS ($26,300.00 _____)

*BASE BID TOTAL: two hundred fourteen thousand thirty _____*

_____ DOLLARS ($214,030.00 _____)

## UNIT PRICES:

Provide a separate installed cost, per lineal foot, for the purchase and installation of additional sheet metal rain gutter assemblies:

Add $46.00 _____ per lineal foot.

I/We guarantee to complete the work within _____ 25 _____ working days should I/We be the successful bidder.

This bid shall be good for **60** days after bid opening.

## LICENSE:

The undersigned has, or will have, all licenses required by law authorizing him to bid upon and to perform the Contract if awarded him.

Respectfully Submitted,

TSP Roof Systems, Inc.
Contractor

*Michael Lindstrom*
Signature

Michael Lindstrom
Print Name

President
Title

34 Mauchly Dr. Unit A
Address

Irvine, Ca. 92618
City and State

B/C-39-971765
Contractor's License Number

**647 SEARS STREET**                                        **2019 ROOF RESTORATION**
**VERNON, CA 90058**                                                    **SPECIFICATION**

ATTACHMENT A

STATEMENT OF COORDINATION

The Undersigned acknowledges that, in the process of preparing a bid for the referenced category of work, he has examined the Contract Drawings; read and understands the requirements of the General and Supplementary Conditions; Addenda, if any; technical sections of the Specifications describing work categories for which the Undersigned is directly responsible, and those related sections which include additional requirements for cooperation, coordination, and compliance.

The Undersigned acknowledges his obligation to identify below any errors, omissions, conflicts, code violations, and improper use of materials discovered in the Contract Documents that could interfere with the timely completion, or increase the cost, of the category of work for which the Undersigned is responsible.

Except as noted below, the Undersigned has no objection to, or reservation about, the materials to be furnished or the conditions under which they will be installed, and is satisfied that he can complete his contractual responsibilities in a workman-like manner without extensive modifications or additional expense.

EXCEPTIONS: Damage caused to existing mechanical units and equipment due to rusted or corroded electrical, gas or plumbing connections. Application of roof system to any roof mounted curb or mechanical equipment not existing at time of inspection for estimate. Damaged and/or dry rot conditions found in roof sheathing or structural members. Protection of completed roof system from other trades. Tree Trimming. Structural analysis, surveys of equipment and conditions, stucco walls, realignment of existing antennas and/or satellite dishes. Monitoring and / or abatement of asbestos and / any materials determined by the State or Federal government to be hazardous. TSP Roof Systems is not responsible for structural defects due to construction design or undetected roof deck deflection resulting in areas of ponding water discovered after new roof system has been installed. Painting. Lighting, foil and equipment attached to underside of roof on deck.

Submitted by:   TSP Roof Systems Inc.

Signed by: *Michael Lindstrom*                                        Date: 7-12-2019

Page 4 of 6

**647 SEARS STREET**
**VERNON, CA 90058**

**2019 ROOF RESTORATION**
**SPECIFICATION**

ATTACHMENT B

SUBCONTRACTOR LISTING

The Undersigned, in preparation of the project bid, declares the intent to use the following subcontractors:

DEMOLITION:

Company Name:     L & M Roof Removal, Inc.

Company Address:     P.O. BOX 1709

                                 Rancho Cucamonga, CA 91729 US

License No.:

SHEET METAL:

Company Name:     BT Sheet Metal

Company Address:     1031 Calle Trepadora Suite D

                                 San             Clemente, CA 92673

License No.:     761893

MECHANICAL:

Company Name:

Company Address:

License No.:

WATERPROOFING:

Company Name:

Company Address:

License No.:

OTHERS:

Type of Work:     Abatement

Company Name:     Brickley Environmental

Company Address:     957 Reece St, San Bernardino, CA

License No.:

Page 5 of 6

**647 SEARS STREET**                                                **2019 ROOF RESTORATION**
**VERNON, CA 90058**                                                        **SPECIFICATION**

# BID PROPOSAL

**NAME OF BIDDER** TSP Roof Systems, Inc.                                      **DATE** 7-12-2019

**ORIGINAL BID IS TO BE EMAILED TO:**

    INDEPENDENT ROOFING CONSULTANTS

    Attention:  Ms. Jessica Galicia-Valenzuela                jessica@irctech.com

The undersigned, in compliance with your invitation for bids for the:

## 2019 ROOF REPLACEMENT

### 5525 SOUTH SOTO STREET

### VERNON, CA 90058

having examined the Drawings and Specifications and related documents and the site of the proposed work and being familiar with all of the conditions surrounding the construction of the proposed project, including the availability of labor, hereby propose to furnish all labor, material and supplies as required for the work in accordance with the Contract Documents as specified and within the time set forth and at the price stated below. This price is to cover all expenses incurred in performing the work required under the contract documents of which this proposal is a part:

I/We acknowledge the receipt of the following addenda:

# 1                                    Dated: 6-26-2019                Received

#                                        Dated:                            Received

Under the heading of base bid as described in this specification, the Undersigned proposes to furnish all labor and materials and assume all costs incurred to do the work of the contract including reroofing and all related work and subcontracts as located on the Owner's site, for the amounts listed as follows:

**5525 SOUTH SOTO STREET**                                                      **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(ROOF SECTIONS A AND B):**

All preparation work to existing roof system (including removal of all wall flashing assemblies and sheet metal accessories, as well as removal and disposal of all flashings at penetrations and supports, etc.**):**

Fifty six thousand two hundred twenty            DOLLARS ($56,220.00                  )

The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a mechanically-attached, 60-mil thick, white, 3-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation:

Seven hundred forty one thousand four hundred sixty DOLLARS ($741,460.00            )

*Estimated Square Footage of Roof Section: 259,960*

Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports):

One thousand five hundred            DOLLARS ($1,500.00                  )

The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications):

Fifty one thousand            DOLLARS ($51,000.00                  )

Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface**:**

Twelve thousand two hundred            DOLLARS ($12,200.00                  )

*BASE BID TOTAL FOR ROOF SECTIONS A AND B:*Eight hundred sixty two thousand three

hundred eighty            DOLLARS (*$862,380.00                  )

**5525 SOUTH SOTO STREET**                                               **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(ROOF SECTION C (LOWER ROOF):**

Demolition of existing roof system, including ballasted gravel, insulation boards, sheet metal accessories and required abatement work down to the concrete substrate:

Two hundred fifteen thousand five hundred          DOLLARS ($215,500.00                    )

The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a adhered, 60-mil thick, white, 9-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation:

Three hundred fifty eight thousand four hundred fifty DOLLARS ($358,450.00                )

   *Estimated Square Footage of Roof Section: 98,741*

Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports):

One thousand five hundred                    DOLLARS ($1,500.00                    )

The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications):

Forty two thousand seven hundred               DOLLARS ($42,700.00                )

Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface**:**

Six thousand five hundred                    DOLLARS ($6,500.00                    )

*BASE BID TOTAL FOR ROOF SECTION C (LOWER ROOF)*: Six hundred twenty four

thousand six hundred fifty                    DOLLARS ($ 624,650.00                )

**5525 SOUTH SOTO STREET**                                              **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(ROOF SECTION C (UPPER ROOF):**

Roof maintenance and repair actions, including the repair of membrane punctures, gouges, the resealing of tops of penetration flashings, the removal of miscellaneous debris accumulation from all drainage areas, waterways and bases of perimeter building walls, the retightening of all loose drain bolts, etc.:

Three thousand five hundred                          DOLLARS ($3,500.00                          )

*BASE BID TOTAL FOR ROOF SECTION C (UPPER ROOF)*: One million four hundred

Ninety thousand five hundred thirty          DOLLARS *($1,490,530.00                          )*

**5525 SOUTH SOTO STREET**                                    **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(Truck Dock Metal Canopies (SECTIONS A, B AND C):**

Restoration of existing steep-sloped metal canopies over truck dock areas with new white reflective coating application applied at a minimum rate of 1-1/2 gallons per 100 square feet. Work to include application of rust prohibitive primer prior to application of new white reflective coating applications:

One hundred five thousand one hundred twenty DOLLARS ($105,120.00                    )

  *Estimated Square Footage of Metal Canopies:* 2,400

Restoration of existing sheet metal rain gutters at the truck dock canopies, including resealing of lap joints with new urethane caulking applications:

Ten thousand two hundred                    DOLLARS ($10,200.00                    )

***BASE BID TOTAL FOR TRUCK DOCK METAL CANOPIES:*** One hundred fifteen thousand

three hundred twenty                    DOLLARS *($115,320.00                    )*

***BASE BID GRAND TOTAL :*** One million six hundred five thousand eight hundred fifty

                    DOLLARS ($1,605,850.00                    )

**5525 SOUTH SOTO STREET**                                    **2019 Roof Replacement**
**VERNON, CA 90058**

## *ALTERNATES:*

**Alternate #1**:  Provide a **total additive cost**, to the base bid price, for the fabrication and installation of new clerestory window wall assemblies at all clerestory window locations. Work to include removal of existing window assemblies, inclusive all gaskets, waterproofing seals and glass panels.  Contractor to provide design details to Owner Representative for approval:

_____DOLLARS ($No Bid_____)


**Alternate #2:** Provide a **total additive cost** to include the installation of a 1.5-inch polyisocyanurate insulation board and a 1/4-inch thick DensDeck Prime roof cover board over concrete Roof Section C (Lower Roof), with both layers adhered using a low rise foam insulation adhesive in a ribbon application, and adhering the specified PVC feltback membrane using a water-based adhesive:

One hundred two thousand_____DOLLARS ($102,000.00_____)


## *UNIT PRICES:*

Provide a separate installed cost, per board, for the purchase and installation of additional DensDeck protection boards:

Add $ 40.00_____per 4' x 8' sheet.


Provide a separate installed cost, per board, for the purchase and installation of additional 1.5-inch polyisocyanurate insulation boards.

Add $42.00_____per 4' x 8' sheet.


Provide a separate installed cost, per lineal foot, for the purchase and installation of additional walkpad material:

Add $ 22.00_____per lineal foot.


Provide a separate installed cost, per lineal foot, for the fabrication and installation of new 22-gauge, rain gutter assemblies at truck dock canopy match size and dimensions of existing gutter assemblies:

Add $45.00_____per lineal foot.

**5525 SOUTH SOTO STREET**                                              **2019 Roof Replacement**
**VERNON, CA 90058**

I/We guarantee to complete the work within 115-120 working days should I/We be the successful bidder.

This bid shall be good for **60** days after bid opening.

## *LICENSE:*

The undersigned has, or will have, all licenses required by law authorizing him to bid upon and to perform the Contract if awarded him.

Respectfully Submitted,

TSP Roof Systems, Inc.
Contractor
*Michael Lindstrom*
Signature
Michael Lindstrom
Print Name
President
Title
34 Mauchly Dr. Unit A
Address
Irvine, Ca. 92618
City and State
B/C-39-971765
Contractor's License Number

**5525 SOUTH SOTO STREET**                                        **2019 Roof Replacement**
**VERNON, CA 90058**

ATTACHMENT A

STATEMENT OF COORDINATION

The Undersigned acknowledges that, in the process of preparing a bid for the referenced category of work, he has examined the Contract Drawings; read and understands the requirements of the General and Supplementary Conditions; Addenda, if any; technical sections of the Specifications describing work categories for which the Undersigned is directly responsible, and those related sections which include additional requirements for cooperation, coordination, and compliance.

The Undersigned acknowledges his obligation to identify below any errors, omissions, conflicts, code violations, and improper use of materials discovered in the Contract Documents that could interfere with the timely completion, or increase the cost, of the category of work for which the Undersigned is responsible.

Except as noted below, the Undersigned has no objection to, or reservation about, the materials to be furnished or the conditions under which they will be installed, and is satisfied that he can complete his contractual responsibilities in a workman-like manner without extensive modifications or additional expense.

EXCEPTIONS: Damage caused to existing mechanical units and equipment due to rusted or corroded electrical, gas or plumbing connections. Application of roof system to any roof mounted curb or mechanical equipment not existing at time of inspection for estimate. Damaged and/or dry rot conditions found in roof sheathing or structural members. Protection of completed roof system from other trades. Tree Trimming. Structural analysis, surveys of equipment and conditions, stucco walls, realignment of existing antennas and/or satellite dishes. Monitoring and / or abatement of asbestos and / or any materials determined by the State or Federal government to be hazardous. TSP Roof Systems is not responsible for structural defects due to construction design or undetected roof deck deflection resulting in areas of ponding water discovered after new roof system has been installed. Painting. Lighting, foil and equipment attached to underside of roof on deck.

Submitted by:  TSP Roof Systems Inc.

Signed by: *Michael Lindstrom*                                  Date: 7-12-2019

**5525 SOUTH SOTO STREET**                                                    **2019 Roof Replacement**
**VERNON, CA 90058**

ATTACHMENT B

SUBCONTRACTOR LISTING

The Undersigned, in preparation of the project bid, declares the intent to use the following subcontractors:

DEMOLITION:

    Company Name:    L & M Roof Removal, Inc.

    Company Address:    P.O. BOX 1709

        Rancho Cucamonga, CA 91729 US

    License No.:

SHEET METAL:

    Company Name:    BT Sheet Metal

    Company Address:    1031 Calle Trepadora Suite D

        San    Clemente, CA 92673

    License No.:    761893

MECHANICAL:

    Company Name:

    Company Address:

    License No.:

WATERPROOFING:

    Company Name:

    Company Address:

    License No.:

OTHERS:

    Type of Work:    Abatement

    Company Name:    Brickley Environmental

    Company Address:    957 Reece St, San Bernardino, CA

    License No.:

# BID PROPOSAL

NAME OF BIDDER  Cabral Roofing & Waterproofing Corporation  DATE  July 12, 2019

## ORIGINAL BID IS TO BE EMAILED TO:

INDEPENDENT ROOFING CONSULTANTS

Attention:  Ms. Jessica Galicia-Valenzuela          jessica@irctech.com

The undersigned, in compliance with your invitation for bids for the:

## 2019 ROOF RESTORATION

### 647 SEARS STREET

### VERNON, CA 90058

having examined the Drawings and Specifications and related documents and the site of the proposed work and being familiar with all of the conditions surrounding the construction of the proposed project, including the availability of labor, hereby propose to furnish all labor, material and supplies as required for the work in accordance with the Contract Documents as specified and within the time set forth and at the price stated below. This price is to cover all expenses incurred in performing the work required under the contract documents of which this proposal is a part:

I/We acknowledge the receipt of the following addenda:

#_____1_____        Dated:____6/27/19____   Received___6/28/19_____

#_____        Dated:_____   Received_____

Under the heading of base bid as described in this specification, the Undersigned proposes to furnish all labor and materials and assume all costs incurred to do the work of the contract including reroofing and all related work and subcontracts as located on the Owner's site, for the amounts listed as follows:

647 SEARS STREET                                                    2019 ROOF RESTORATION
VERNON, CA 90058                                                               SPECIFICATION

## *BASE BID*

**647 SEARS STREET**

All preparation work to existing metal roof system (including patching/repairing voids/gaps in existing metal roof system, providing new three-course applications of elastic cement and reinforcing fabric to metal laps, as well as providing new rust prohibitive primer applications to rusted/oxidized areas, etc.):

Ninety Eight Thousand Five Hundred Seventy and 00/100 DOLLARS ($    $98,570.00    )

Installation of new specified white-acrylic coating applications to existing metal roof system, including base coat of metal bonding primer per the projects specifications:

Four Hundred Thirty Five Thousand
One Hundred Ninety-Two and 00/100            DOLLARS ($    $435,192.00    )

*Estimated Square Footage of Roof Section:*     152,000 SF

Restoration of internal sheet metal gutter assemblies with specified "major seal" liquid flashing:

Eleven Thousand Seven Hundred Thirteen and 00/100   DOLLARS ($    $11,713.00    )

Restoration of existing sheet metal rain gutter assemblies along perimeter edges of building. Work to include resealing of lap joints with new urethane caulking applications and providing new wire mesh strainers at downspout openings:

Four Thousand Six Hundred Eighty and 00/100        DOLLARS ($    $4,680.00    )

The removal and replacement of existing fiberglass skylight panels with new fiberglass panels. New skylight panels are to match size of existing openings and are to be secured with new fasteners through steel/neoprene washers:

Twelve Thousand Two Hundred Fifty-Three and 00/100   DOLLARS ($    $12,253.00    )

*BASE BID TOTAL:* Five Hundred Sixty Two thousand Four Hundred-Eight and 00/100

                                    DOLLARS ($    $562,408.00    )

647 SEARS STREET                                                    2019 ROOF RESTORATION
VERNON, CA 90058                                                                    SPECIFICATION

## UNIT PRICES:

Provide a separate installed cost, per lineal foot, for the purchase and installation of additional
sheet metal rain gutter assemblies:

Add $_____$23.50_____per lineal foot.

I/We guarantee to complete the work within ___35___ working days should I/We be the successful
bidder.

This bid shall be good for **60** days after bid opening.

## LICENSE:

The undersigned has, or will have, all licenses required by law authorizing him to bid upon
and to perform the Contract if awarded him.

Respectfully Submitted,

Cabral Roofing & Waterproofing Corporation
Contractor

_____
Signature

Deciderio Cabral
Print Name

Vice President
Title

675 W. Terrace Drive
Address

San Dimas, CA 91773
City and State

746649
Contractor's License Number

ATTACHMENT A

STATEMENT OF COORDINATION

The Undersigned acknowledges that, in the process of preparing a bid for the referenced category of work, he has examined the Contract Drawings; read and understands the requirements of the General and Supplementary Conditions; Addenda, if any; technical sections of the Specifications describing work categories for which the Undersigned is directly responsible, and those related sections which include additional requirements for cooperation, coordination, and compliance.

The Undersigned acknowledges his obligation to identify below any errors, omissions, conflicts, code violations, and improper use of materials discovered in the Contract Documents that could interfere with the timely completion, or increase the cost, of the category of work for which the Undersigned is responsible.

Except as noted below, the Undersigned has no objection to, or reservation about, the materials to be furnished or the conditions under which they will be installed, and is satisfied that he can complete his contractual responsibilities in a workman-like manner without extensive modifications or additional expense.

EXCEPTIONS:        Asbestos & Lead abatement, interior protection, ponding water

downtime caused by tenant/owner, working off hours, holidays,

and/or weekends, work to commence on or after the 1st week of

November 2019 weather permitting


Submitted by:    Cabral Roofing & Waterproofing Corporation

Signed by:    _____    Date:    July 12, 2019

ATTACHMENT B

SUBCONTRACTOR LISTING

The Undersigned, in preparation of the project bid, declares the intent to use the following subcontractors:

DEMOLITION:

Company Name:     NONE

Company Address: _____

_____

License No.: _____

SHEET METAL:

Company Name:     NONE

Company Address: _____

_____

License No.: _____

MECHANICAL:

Company Name:     NONE

Company Address: _____

_____

License No.: _____

WATERPROOFING:

Company Name:     NONE

Company Address: _____

_____

License No.: _____

OTHERS:

Type of Work:     NONE

Company Name: _____

Company Address: _____

_____

License No.: _____

Type of Work:     NONE

Company Name: _____

Company Address: _____

_____

License No.: _____

# Past Performance

## Cabral Roofing & Waterproofing Corp.

### Private

| | | |
|---|---|---|
| Aerospace Corp. | Fox Cable Network | Lockheed Martin Corp. |
| Alere Property Group | Frito Lay | Loma Linda University |
| American Airlines | Gardena Memorial Hospital | Loma Linda University Medical Center |
| American Honda Motor Co | SoCal Gas Company | Loomis USA |
| Anaheim Marriott Hotel | General Atomics Aeronautical Systems | Macerich Co. |
| Automobile Club of So Cal | GLP | Majestic Realty |
| Azusa Pacific | Harbor Freight | McKenna College |
| B/Braun McGaw | Honeywell Solutions Inc. | Miller Coors |
| Bank of the West | HR Textron | Mission Hospital |
| Bed Bath & Beyond | Hudson Properties | Mongram Aerospace Fasteners |
| Black Rock Realty | IAC | Neiman Marcus |
| Bloomingdales | IDS Realty Group | Nestle |
| Boeing | IndCor Properties | Norris Industries |
| Cal Institute of Technology | International Paper | Northrup Grumman Corp. |
| California Hospital | Jones Lang Lasalle | Office Depot |
| CBRE | JC Penny | Paramount Pictures |
| CBS Inc | JPL NASA | Pepsi Co. |
| Centerpoint Properties | Kimberly-Clark Corp. | Philip Moris USA |
| Chevron | Kindred Hospital | Pitzer College |
| Claremont College | Kroger/Ralphs | Pomona College |
| Cytec Engineered Materials | L3 Communications Corp | Prat & Whitney Rocketdyne |
| Dryers Grand Ice Cream | LBA Realty | Presbyterian Inter-Community Hospital (PIH) |
| Exxon Mobile | LNR | Prologis California |

| | |
|---|---|
| Raytheon | San Bernardino International Airport |
| Remo Inc. | San Marino USD |
| RiverRock Real Estate Group | Santa Monica Malibu USD |
| RREEF Co. | Seal Beach Naval Weapons Station |
| Scripps College | Simi Valley USD |
| Scripps Hospital | Torrance USD |
| Scripps Hospital East County | UCLA |
| Segerstrom Center for the Arts | UCLA Medical Center |
| Southern California Edison | United States Postal Service |
| Sprint SC | Ventura County Naval Base |
| Stag Industrial Inc. | |
| TechniColor - Thomson Co. | |
| Texaco | |
| Torrance Memorial Medical Center | |
| Toyota Motor Corp. | |
| UBS Realty | |
| Union Pacific Railroad Co. | |
| US Growers | |
| USC | |
| Watson Land Corp. | |
| Westfield | |
| WW Grainger | |
| YKK Inc. | |

### Public

| | |
|---|---|
| Alta Loma USD | El Rancho USD |
| Cal State Chanel Islands | Glendale USD |
| Cal State Long Beach | Hueneme USD |
| Cal State San Bernardino | Los Angeles Community College District |
| Cal State University Northridge | Los Angeles USD |
| Capistrano USD | Metropolitan State Hospital |
| College of the Canyons | Metropolitan Transportation Authority |
| Corona Norco USD | Montebello USD |
| Department of Veteran's Affairs | Moreno Valley USD |
| Downey USD | Orange Coast Community College District |

| | |
|---|---|
| Perris USD | San Bernardino Community College District |
| Pasadena Unified School District | |
| Patton State Hospital | |
| Pomona USD | |
| Redlands USD | |
| Rim of the World USD | |
| Rio Hondo Community College District | |
| Riverside Community College District | |
| Riverside USD | |



**CONTRACTORS
STATE LICENSE BOARD
ACTIVE LICENSE**



License Number **746649**                    Entity CORP

Business Name CABRAL ROOFING &
WATERPROOFING CORPORATION

Classification(s) C39

Expiration Date 03/31/2020        www.cslb.ca.gov

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)** 04/01/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Lisa Anderson |
|---|---|
| Shaw Moses Mendenhall & Associates Ins. Agency | PHONE (A/C, No, Ext): (626) 799-7813    FAX (A/C, No): (626) 799-8784 |
| License #0D94511 | E-MAIL ADDRESS: lisa@smmainsurance.com |
| 625 Fair Oaks, Suite 158 | |

| | | | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|---|---|
| South Pasadena | CA 91030 | INSURER A : | Gemini Insurance Company | 10833 |
| INSURED | | INSURER B : | American Fire and Casualty Company | 24066 |
| Cabral Roofing & Waterproofing Co | | INSURER C : | American Guarantee & Liability | 26247 |
| 675 W Terrace Dr | | INSURER D : | Crum & Forster Specialty | 44520 |
| | | INSURER E : | | |
| San Dimas | CA 91773 | INSURER F : | | |

**COVERAGES    CERTIFICATE NUMBER:** 2019-2020    **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS-MADE [X] OCCUR | | | VCGP024491 | 04/01/2019 | 04/01/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [ ] POLICY [X] PRO-JECT [ ] LOC [ ] OTHER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| B | AUTOMOBILE LIABILITY [X] ANY AUTO [ ] OWNED AUTOS ONLY [ ] SCHEDULED AUTOS [X] HIRED AUTOS ONLY [X] NON-OWNED AUTOS ONLY | | | BAA58625326 | 04/01/2019 | 04/01/2020 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | Medical payments | $ 5,000 |
| C | [X] UMBRELLA LIAB [X] OCCUR [ ] EXCESS LIAB [ ] CLAIMS-MADE | | | SXS915566705 | 04/01/2019 | 04/01/2020 | EACH OCCURRENCE | $ 10,000,000 |
| | | | | | | | AGGREGATE | $ 10,000,000 |
| | [ ] DED [ ] RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | [ ] PER STATUTE [ ] OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| D | Pollution Liability Transportation Pollution | | | CPL108791 | 04/02/2019 | 04/01/2020 | | $1,000,000 $1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Proof of Coverage | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE  *Lisa Anderson* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
04/01/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: Deanna Franzen | | |
|---|---|---|---|---|
| Brittain Insurance Services | | PHONE (A/C, No, Ext): (626) 967-7985 | | FAX (A/C, No): (626) 967-7980 |
| 122 N Citrus Ave Ste 210 | | E-MAIL ADDRESS: Deanna@BrittainInsurance.com | | |
| | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Covina | CA 91723 | INSURER A : Redwood Fire and Casualty Insurance Co. (A++ XIV) | | 11673 |
| INSURED | | INSURER B : | | |
| Cabral Roofing & Waterproofing Co. | | INSURER C : | | |
| 675 W. Terrace Drive | | INSURER D : | | |
| | | INSURER E : | | |
| San Dimas | CA 91773 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: CL194106428 | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ Y (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N / A | CEWC033720 | 04/01/2019 | 04/01/2020 | ☒ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

*30 day notice of cancellation, 10 days for nonpayment.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| VERIFICATION OF INSURANCE COVERAGE | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)     The ACORD name and logo are registered marks of ACORD

# BID PROPOSAL

NAME OF BIDDER  Cabral Roofing & Waterproofing Corporation  DATE  July 12, 2019

**ORIGINAL BID IS TO BE EMAILED TO:**

INDEPENDENT ROOFING CONSULTANTS

Attention:  Ms. Jessica Galicia-Valenzuela          jessica@irctech.com

The undersigned, in compliance with your invitation for bids for the:

## 2019 ROOF REPLACEMENT

### 5525 SOUTH SOTO STREET

### VERNON, CA 90058

having examined the Drawings and Specifications and related documents and the site of the proposed work and being familiar with all of the conditions surrounding the construction of the proposed project, including the availability of labor, hereby propose to furnish all labor, material and supplies as required for the work in accordance with the Contract Documents as specified and within the time set forth and at the price stated below. This price is to cover all expenses incurred in performing the work required under the contract documents of which this proposal is a part:

I/We acknowledge the receipt of the following addenda:

#_____1_____Dated:____6/27/19____Received____6/28/19_____

#_____Dated:_____Received_____

Under the heading of base bid as described in this specification, the Undersigned proposes to furnish all labor and materials and assume all costs incurred to do the work of the contract including reroofing and all related work and subcontracts as located on the Owner's site, for the amounts listed as follows:

5525 SOUTH SOTO STREET                                    2019 Roof Replacement
VERNON, CA 90058

## *BASE BID*

5525 SOUTH SOTO STREET
(ROOF SECTIONS A AND B):

All preparation work to existing roof system (including removal of all wall flashing assemblies and sheet metal accessories, as well as removal and disposal of all flashings at penetrations and supports, etc.):

Eleven Thousand Eight Hundred Thirty and 00/100 _____ DOLLARS ($_____ $11,830.00 _____)

The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a mechanically-attached, 60-mil thick, white, 3-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation:

Six Hundred Forty Two Thousand
Two Hundred Twenty-Two and 00/100 _____ DOLLARS ($_____ $642,222.00 _____)

   *Estimated Square Footage of Roof Section:* _____ 269,100 SF. Including Walls _____

Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports):

Five Thousand Five Hundred Forty and 00/100 _____ DOLLARS ($_____ $5,540.00 _____)

The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications):

NO BID _____ DOLLARS ($_____ NO BID _____)

Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface:

Five Thousand Nine Hundred Eighty and 00/100 _____ DOLLARS ($_____ $5,980.00 _____)

*BASE BID TOTAL FOR ROOF SECTIONS A AND B:* _____

Six Hundred Sixty Five Thousand
Five Hundred Seventy Two and 00/100 _____ DOLLARS ($_____ $665,572.00 _____)

5525 SOUTH SOTO STREET                                    2019 Roof Replacement
VERNON, CA 90058

## *BASE BID*

### 5525 SOUTH SOTO STREET
### (ROOF SECTION C (LOWER ROOF):

Demolition of existing roof system, including ballasted gravel, insulation boards, sheet metal accessories and required abatement work down to the concrete substrate:

One Hundred Ninety Five Thousand and 00/100        DOLLARS ($        $195,000.00        )

The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a adhered, 60-mil thick, white, 9-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation:

Three Hundred Sixty Nine Thousand Ninety Six and 00/100 DOLLARS ($        $369,096.00        )

    *Estimated Square Footage of Roof Section:*        105,800 Including Walls

Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports):

Two Thousand Four Fifty and 00/100        DOLLARS ($        $2,450.00        )

The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications):

NO BID        DOLLARS ($        NO BID        )

Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface:

Four Thousand Three Thousand Seventy Five and 00/100 DOLLARS ($        $4,375.00        )

### *BASE BID TOTAL FOR ROOF SECTION C (LOWER ROOF):*

Five Hundred Seventy Thousand
Nine Hundred Twenty-One and 00/100        DOLLARS ($        $570,921.00        )

**5525 SOUTH SOTO STREET**
**VERNON, CA 90058**                                      **2019 Roof Replacement**

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(ROOF SECTION C (UPPER ROOF):**

Roof maintenance and repair actions, including the repair of membrane punctures, gouges, the resealing of tops of penetration flashings, the removal of miscellaneous debris accumulation from all drainage areas, waterways and bases of perimeter building walls, the retightening of all loose drain bolts, etc.:

Two thousand Two Hundred Forty-One and 00/100    DOLLARS ($    $2,241.00    )

*BASE BID TOTAL FOR ROOF SECTION C (UPPER ROOF):*_____

Two Thousand Two Hundred Forty-One and 00/100 DOLLARS ($    $2,241.00    )

5525 SOUTH SOTO STREET                           2019 Roof Replacement
VERNON, CA 90058

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(Truck Dock Metal Canopies (SECTIONS A, B AND C):**

Restoration of existing steep-sloped metal canopies over truck dock areas with new white reflective coating application applied at a minimum rate of 1-1/2 gallons per 100 square feet. Work to include application of rust prohibitive primer prior to application of new white reflective coating applications:

One Hundred Nineteen Thousand
Three hundred Eighty Six and 00/100 _____DOLLARS ($____ $119,386.00 _____)

*Estimated Square Footage of Metal Canopies:* _____ 24,800 SF _____ ___

Restoration of existing sheet metal rain gutters at the truck dock canopies, including resealing of lap joints with new urethane caulking applications:

Eight Thousand Twenty-Eight and 00/100 _____DOLLARS ($_____ $8,028.00 _____)

*BASE BID TOTAL FOR TRUCK DOCK METAL CANOPIES:*_____ _____ ____

One Hundred Twenty Seven Thousand
Four Hundred-Fourteen and 00/100 _____DOLLARS ($_____ $127,414.00 _____)

*BASE BID GRAND TOTAL :*_____ _____ _____ _____
One Million Three Hundred Sixty Six
Thousand One Hundred Forty Eight and 00/100 ___DOLLARS ($_____ $1,366,148.00 _____)

**5525 SOUTH SOTO STREET**                                    **2019 Roof Replacement**
**VERNON, CA 90058**

## ALTERNATES:

**Alternate #1:**  Provide a **total additive cost**, to the base bid price, for the fabrication and installation of new clerestory window wall assemblies at all clerestory window locations. Work to include removal of existing window assemblies, inclusive all gaskets, waterproofing seals and glass panels.  Contractor to provide design details to Owner Representative for approval:

    NO BID    DOLLARS ($    NO BID    )

**Alternate #2:** Provide a **total additive cost** to include the installation of a 1.5-inch polyisocyanurate insulation board and a 1/4-inch thick DensDeck Prime roof cover board over concrete Roof Section C (Lower Roof), with both layers adhered using a low rise foam insulation adhesive in a ribbon application, and adhering the specified PVC feltback membrane using a water-based adhesive:

Two Hundred Twenty Eight Thousand
One Hundred Ninety-Two and 00/100    DOLLARS ($    $228,192.00    )

## UNIT PRICES:

Provide a separate installed cost, per board, for the purchase and installation of additional DensDeck protection boards:

Add $    $65.00    per 4' x 8' sheet.

Provide a separate installed cost, per board, for the purchase and installation of additional 1.5-inch polyisocyanurate insulation boards.

Add $    $56.00    per 4' x 8' sheet.

Provide a separate installed cost, per lineal foot, for the purchase and installation of additional walkpad material:

Add $    $32.00    per lineal foot.

Provide a separate installed cost, per lineal foot, for the fabrication and installation of new 22-gauge, rain gutter assemblies at truck dock canopy match size and dimensions of existing gutter assemblies:

Add $    $28.50    per lineal foot.

**5525 SOUTH SOTO STREET**                                        **2019 Roof Replacement**
**VERNON, CA 90058**

I/We guarantee to complete the work within ___65___ working days should I/We be the successful bidder.

This bid shall be good for **60** days after bid opening.

## LICENSE:

The undersigned has, or will have, all licenses required by law authorizing him to bid upon and to perform the Contract if awarded him.

Respectfully Submitted,

Cabral Roofing & Waterproofing Corporation
Contractor

Signature

Deciderio Cabral
Print Name

Vice President
Title

675 W. Terrace Drive
Address

San Dimas, CA 91773
City and State

91773
Contractor's License Number

ATTACHMENT A

STATEMENT OF COORDINATION

The Undersigned acknowledges that, in the process of preparing a bid for the referenced category of work, he has examined the Contract Drawings; read and understands the requirements of the General and Supplementary Conditions; Addenda, if any; technical sections of the Specifications describing work categories for which the Undersigned is directly responsible, and those related sections which include additional requirements for cooperation, coordination, and compliance.

The Undersigned acknowledges his obligation to identify below any errors, omissions, conflicts, code violations, and improper use of materials discovered in the Contract Documents that could interfere with the timely completion, or increase the cost, of the category of work for which the Undersigned is responsible.

Except as noted below, the Undersigned has no objection to, or reservation about, the materials to be furnished or the conditions under which they will be installed, and is satisfied that he can complete his contractual responsibilities in a workman-like manner without extensive modifications or additional expense.


EXCEPTIONS:        Lead & asbestos abatement, interior protection, ponding water, electrical

mechanical, downtime caused by tenant/owner, working off hours, holidays

and/or weekends, structural engineering if required by local building department

repairs or replacement of any clearstory windows,
Work to commence on/after the 3rd week of September weather permitting.


Submitted by:        Cabral Roofing & Waterproofing Corporation

Signed by:        _____        Date:    July 12, 2019

ATTACHMENT B

SUBCONTRACTOR LISTING

The Undersigned, in preparation of the project bid, declares the intent to use the following subcontractors:

DEMOLITION:

    Company Name:        L & M Roof Removal, Inc.

    Company Address:     7657 Potter Valley Road

                         Corona, CA 92880

    License No.:         994108

SHEET METAL:

    Company Name:        NONE

    Company Address:

    License No.:

MECHANICAL:

    Company Name:        NONE

    Company Address:

    License No.:

WATERPROOFING:

    Company Name:        NONE

    Company Address:

    License No.:

OTHERS:

    Type of Work:        NONE

    Company Name:

    Company Address:

    License No.:


    Type of Work:        NONE

    Company Name:

    Company Address:

    License No.:

# Past Performance

## Cabral Roofing & Waterproofing Corp.

### Private

| | | | |
|---|---|---|---|
| Aerospace Corp. | Fox Cable Network | Lockheed Martin Corp. | Raytheon |
| Alere Property Group | Frito Lay | Loma Linda University | Remo Inc. |
| American Airlines | Gardena Memorial Hospital | Loma Linda University Medical Center | RiverRock Real Estate Group |
| American Honda Motor Co | SoCal Gas Company | Loomis USA | RREEF Co. |
| Anaheim Marriott Hotel | General Atomics Aeronautical Systems | Macerich Co. | Scripps College |
| Automobile Club of So Cal | GLP | Majestic Realty | Scripps Hospital East County |
| Azusa Pacific | Harbor Freight | McKenna College | Segerstrom Center for the Arts |
| B/Braun McGaw | Honeywell Solutions Inc. | Miller Coors | Southern California Edison |
| Bank of the West | HR Textron | Mission Hospital | Sprint SC |
| Bed Bath & Beyond | Hudson Properties | Mongram Aerospace Fasteners | Stag Industrial Inc. |
| Black Rock Realty | IAC | Neiman Marcus | TechniColor - Thomson Co. |
| Bloomingdales | IDS Realty Group | Nestle | Texaco |
| Boeing | IndCor Properties | Norris Industries | Torrance Memorial Medical Center |
| Cal Institute of Technology | International Paper | Northrup Grumman Corp. | Toyota Motor Corp. |
| California Hospital | Jones Lang Lasalle | Office Depot | UBS Realty |
| CBRE | JC Penny | Paramount Pictures | Union Pacific Railroad Co. |
| CBS Inc | JPL NASA | Pepsi Co. | US Growers |
| Centerpoint Properties | Kimberly-Clark Corp. | Philip Moris USA | USC |
| Chevron | Kindred Hospital | Pitzer College | Watson Land Corp. |
| Claremont College | Kroger/Ralphs | Pomona College | Westfield |
| Cytec Engineered Materials | L3 Communications Corp | Prat & Whitney Rocketdyne | WW Grainger |
| Dryers Grand Ice Cream | LBA Realty | Presbyterian Inter-Community Hospital (PIH) | YKK Inc. |
| Exxon Mobile | LNR | Prologis California | |

### Public

| | | | |
|---|---|---|---|
| Alta Loma USD | El Rancho USD | Perris USD | San Bernardino International Airport |
| Cal State Chanel Islands | Glendale USD | Pasadena Unified School District | San Marino USD |
| Cal State Long Beach | Hueneme USD | Patton State Hospital | Santa Monica Malibu USD |
| Cal State San Bernardino | Los Angeles Community College District | Pomona USD | Seal Beach Naval Weapons Station |
| Cal State University Northridge | Los Angeles USD | Redlands USD | Simi Valley USD |
| Capistrano USD | Metropolitan State Hospital | Rim of the World USD | Torrance USD |
| College of the Canyons | Metropolitan Transportation Authority | Rio Hondo Community College District | UCLA |
| Corona Norco USD | Monetbello USD | Riverside Community College District | UCLA Medical Center |
| Department of Veteran's Affairs | Moreno Valley USD | Riverside USD | United States Postal Service |
| Downey USD | Orange Coast Community College District | San Bernardino Community College District | Ventura County Naval Base |



STATE OF CALIFORNIA

dca

DEPARTMENT OF CONSUMER AFFAIRS

**CONTRACTORS
STATE LICENSE BOARD
ACTIVE LICENSE**



License Number **746649**                    Entity CORP

Business Name CABRAL ROOFING &
WATERPROOFING CORPORATION

Classification(s) C39



Expiration Date 03/31/2020          www.cslb.ca.gov

**ACORD**®

# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
04/1/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Lisa Anderson | | |
|---|---|---|---|---|
| Shaw Moses Mendenhall & Associates Ins. Agency | PHONE (A/C, No, Ext): | (626) 799-7813 | FAX (A/C, No): | (626) 799-8784 |
| License #0D94511 | E-MAIL ADDRESS: | lisa@smmainsurance.com | | |
| 825 Fair Oaks, Suite 158 | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| South Pasadena          CA 91030 | INSURER A : | Gemini Insurance Company | | 10833 |
| INSURED | INSURER B : | American Fire and Casualty Company | | 24066 |
| Cabral Roofing & Waterproofing Co | INSURER C : | American Guarantee & Liability | | 26247 |
| 675 W Terrace Dr | INSURER D : | Crum & Forster Specialty | | 44520 |
| | INSURER E : | | | |
| San Dimas          CA 91773 | INSURER F : | | | |

COVERAGES          CERTIFICATE NUMBER: 2019-2020          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | COMMERCIAL GENERAL LIABILITY [X] | | | VCGP024491 | 04/01/2019 | 04/01/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE [ ]  OCCUR [X] | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY [X]  PRO-JECT [X]  LOC [ ] | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| B | AUTOMOBILE LIABILITY | | | BAA56625326 | 04/01/2019 | 04/01/2020 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ANY AUTO [X] | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY [ ]  SCHEDULED AUTOS [ ] | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY [X]  NON-OWNED AUTOS ONLY [X] | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | Medical payments | $ 5,000 |
| C | UMBRELLA LIAB [X]  OCCUR [X] | | | SXS915566705 | 04/01/2019 | 04/01/2020 | EACH OCCURRENCE | $ 10,000,000 |
| | EXCESS LIAB [ ]  CLAIMS-MADE [ ] | | | | | | AGGREGATE | $ 10,000,000 |
| | DED [ ]  RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y / N | | | | / | | PER STATUTE [ ]  OTHER [ ] | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [ ] (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| D | Pollution Liability Transportation Pollution | | | CPL108791 | 04/02/2019 | 04/01/2020 | | $1,000,000 |
| | | | | | | | | $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Proof of Coverage | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE  *Lisa Anderson* |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
04/01/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Deanna Franzen | | |
|---|---|---|---|
| Brittain Insurance Services | PHONE (A/C, No, Ext): (626) 967-7985 | | FAX (A/C, No): (626) 967-7980 |
| 122 N Citrus Ave Ste 210 | E-MAIL ADDRESS: Deanna@Brittaininsurance.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Covina   CA 91723 | INSURER A : Redwood Fire and Casualty Insurance Co. (A++ XIV) | | 11673 |
| INSURED | INSURER B : | | |
| Cabral Roofing & Waterproofing Co. | INSURER C : | | |
| 675 W. Terrace Drive | INSURER D : | | |
| | INSURER E : | | |
| San Dimas   CA 91773 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: CL194106428 | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [Y] (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | CEWC033720 | 04/01/2019 | 04/01/2020 | ☒ PER STATUTE  ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
*30 day notice of cancellation, 10 days for nonpayment.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| VERIFICATION OF INSURANCE COVERAGE | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.
ACORD 25 (2016/03)   The ACORD name and logo are registered marks of ACORD

# BID PROPOSAL

**NAME OF BIDDER** San Marino Roof Co., Inc.                    **DATE** July 12, 2019

## ORIGINAL BID IS TO BE EMAILED TO:

INDEPENDENT ROOFING CONSULTANTS

Attention:  Ms. Jessica Galicia-Valenzuela          jessica@irctech.com

The undersigned, in compliance with your invitation for bids for the:

### 2019 ROOF REPLACEMENT

### 5525 SOUTH SOTO STREET

### VERNON, CA 90058

having examined the Drawings and Specifications and related documents and the site of the proposed work and being familiar with all of the conditions surrounding the construction of the proposed project, including the availability of labor, hereby propose to furnish all labor, material and supplies as required for the work in accordance with the Contract Documents as specified and within the time set forth and at the price stated below. This price is to cover all expenses incurred in performing the work required under the contract documents of which this proposal is a part:

I/We acknowledge the receipt of the following addenda:

#1_____Dated: 06/27/19_____Received A.T._____

#_____Dated:_____Received_____

Under the heading of base bid as described in this specification, the Undersigned proposes to furnish all labor and materials and assume all costs incurred to do the work of the contract including reroofing and all related work and subcontracts as located on the Owner's site, for the amounts listed as follows:

**5525 SOUTH SOTO STREET**                                                        **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

### 5525 SOUTH SOTO STREET
### (ROOF SECTIONS A AND B):

All preparation work to existing roof system (including removal of all wall flashing assemblies and sheet metal accessories, as well as removal and disposal of all flashings at penetrations and supports, etc.)**:**

Eleven Thousand Two Hundred and no/100 DOLLARS ($ 11,200.00                          )

The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a mechanically-attached, 60-mil thick, white, 3-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation:

Seven Hundred Thirty-eight Thousand Eight Hundred Sixty-two and no/100 DOLLARS ($ 738,862.00)

*Estimated Square Footage of Roof Section:* 267,300 Sq. Ft.

Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports):

N/A                                                DOLLARS ($ N/A                          )

The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications):

One Hundred Forty-nine Thousand Four Hundred Ninety and no/100 DOLLARS ($149,490.00)

Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface:

Six Thousand Seven Hundred Nineteen and no/100 DOLLARS ($ 6,719.00                          )

*BASE BID TOTAL FOR ROOF SECTIONS A AND B:* NINE HUNDRED SIX THOUSAND

*TWO HUNDRED SEVENTY-ONE & NO/100* DOLLARS *($ 906,271.00                          )*

**5525 SOUTH SOTO STREET**                                                    **2019 Roof Replacement**
**VERNON, CA 90058**

## *BASE BID*

### 5525 SOUTH SOTO STREET
### (ROOF SECTION C (LOWER ROOF):

Demolition of existing roof system, including ballasted gravel, insulation boards, sheet metal accessories and required abatement work down to the concrete substrate:

Two Hundred Thirteen Thousand Seven Hundred Thirty & no/100 DOLLARS ($213,730.00)

The installation of the new Specified Underwriters Laboratory Class "A" fire rated roof system consisting of a adhered, 60-mil thick, white, 9-ounce felt-back PVC single-ply roof system, inclusive all underlayment boards, flashings, sheet metal accessories and miscellaneous mechanical, electrical, plumbing and sheet metal work required to provide a complete system installation:

Three Hundred Sixty-one Thousand Seven Hundred Eighty-five & no/100 DOLLARS ($ 361,785.00)

*Estimated Square Footage of Roof Section:  98,800 Sq. Ft.*

Miscellaneous work items (Including restoration of gas lines and the installation of new rubber block supports):

N/A_____DOLLARS ($ N/A_____)

The preparation and restoration of existing clerestory window assemblies with new specified "wet seal" applications per the project specifications):

Seventy-four Thousand Six Hundred Ninety & no/100 DOLLARS ($74,690.00_____)

Provide a new 4-inch wide hot-air welded PVC safety yellow warning line on the completed membrane surface:

Seven Thousand One Hundred Thirty-four & no/100 DOLLARS ($ 7,134.00_____)

*BASE BID TOTAL FOR ROOF SECTION C (LOWER ROOF): Six Hundred Fifty-seven*

*Thousand Three Hundred Thirty-nine & no/100 DOLLARS ($657,339.00_____)*

## *BASE BID*

### 5525 SOUTH SOTO STREET
### (ROOF SECTION C (UPPER ROOF):

Roof maintenance and repair actions, including the repair of membrane punctures, gouges, the resealing of tops of penetration flashings, the removal of miscellaneous debris accumulation from all drainage areas, waterways and bases of perimeter building walls, the retightening of all loose drain bolts, etc.:

Nine Thousand Five Hundred & no/100          DOLLARS ($9,500.00                    )

*BASE BID TOTAL FOR ROOF SECTION C (UPPER ROOF):Nine Thousand Five Hundred*

*& no/100------------------------------------------* DOLLARS *($ 9,500.00                    )*

## *BASE BID*

**5525 SOUTH SOTO STREET**
**(Truck Dock Metal Canopies (SECTIONS A, B AND C):**

Restoration of existing steep-sloped metal canopies over truck dock areas with new white reflective coating application applied at a minimum rate of 1-1/2 gallons per 100 square feet. Work to include application of rust prohibitive primer prior to application of new white reflective coating applications:

Ninety Thousand Sixty-eight & no/100 DOLLARS ($ 90,068.00                    )

*Estimated Square Footage of Metal Canopies: 19,000 Sq. Ft.*

Restoration of existing sheet metal rain gutters at the truck dock canopies, including resealing of lap joints with new urethane caulking applications:

Nineteen Thousand Eight Hundred & no/100    DOLLARS ($19,800.00                )

*BASE BID TOTAL FOR TRUCK DOCK METAL CANOPIES: One Hundred Nine Thousand*

*Eight Hundred Sixty-eight & no/100*        DOLLARS ($ 109,868.00              )

*BASE BID GRAND TOTAL : One Million Six Hundred Eighty-two Thousand Nine Hundred*

*Seventy-eight & no/100*                DOLLARS ($ 1,682,978.00              )

# *ALTERNATES:*

**5525 SOUTH SOTO STREET**                                      **2019 Roof Replacement**
**VERNON, CA 90058**

**Alternate #1**: Provide a **total additive cost**, to the base bid price, for the fabrication and installation of new clerestory window wall assemblies at all clerestory window locations. Work to include removal of existing window assemblies, inclusive all gaskets, waterproofing seals and glass panels. Contractor to provide design details to Owner Representative for approval:

_____DOLLARS ($ PRICING IF AWARED_____)

**Alternate #2:** Provide a **total additive cost** to include the installation of a 1.5-inch polyisocyanurate insulation board and a 1/4-inch thick DensDeck Prime roof cover board over concrete Roof Section C (Lower Roof), with both layers adhered using a low rise foam insulation adhesive in a ribbon application, and adhering the specified PVC feltback membrane using a water-based adhesive:

Two Hundred Eighty-eight Thousand One Hundred Seven & no/100 DOLLARS ($288,107.00)

## *UNIT PRICES:*

Provide a separate installed cost, per board, for the purchase and installation of additional DensDeck protection boards:

Add $ 75.00/Seventy-five & no/100 Dollars  per 4' x 8' sheet.

Provide a separate installed cost, per board, for the purchase and installation of additional 1.5-inch polyisocyanurate insulation boards.

Add $ 65.00/ Sixty-five & no/100 Dollars per 4' x 8' sheet.

Provide a separate installed cost, per lineal foot, for the purchase and installation of additional walkpad material:

Add $ 28.00/ Twenty-eight & no/100 Dollars  per lineal foot.

Provide a separate installed cost, per lineal foot, for the fabrication and installation of new 22-gauge, rain gutter assemblies at truck dock canopy match size and dimensions of existing gutter assemblies:

Add $ 15.00 / Fifteen & no/Dollars_____per lineal foot.

**5525 SOUTH SOTO STREET**                                           **2019 Roof Replacement**
**VERNON, CA 90058**

I/We guarantee to complete the work within 75____ working days should I/We be the successful
bidder.

This bid shall be good for **60** days after bid opening.

## *LICENSE:*

The undersigned has, or will have, all licenses required by law authorizing him to bid upon
and to perform the Contract if awarded him.

Respectfully Submitted,

<u>San Marino Roof Co., Inc.</u>
Contractor

Signature

<u>Andy Tovey</u>
Print Name

<u>Project Manager</u>
Title

<u>2187 N. Batavia St.</u>
Address

<u>Orange  CA  92865</u>
City and State

<u>249559  C-39</u>
Contractor's License Number

# ATTACHMENT A

## STATEMENT OF COORDINATION

The Undersigned acknowledges that, in the process of preparing a bid for the referenced category of work, he has examined the Contract Drawings; read and understands the requirements of the General and Supplementary Conditions; Addenda, if any; technical sections of the Specifications describing work categories for which the Undersigned is directly responsible, and those related sections which include additional requirements for cooperation, coordination, and compliance.

The Undersigned acknowledges his obligation to identify below any errors, omissions, conflicts, coed violations, and improper use of material discovered in the Contract Documents that could interferes with the timely completion, or increase the cost, of the category of work for which the Undersigned is responsible.

Except as noted below, the Undersigned has no objection to, or reservation about, the materials to be furnished or the conditions under which they will be installed, and is satisfied that he can complete his contractual responsibilities in a workman-like manner without extensive modifications or additional expense.

EXCEPTIONS:     Ceiling tile/foil, sprinkler lines, hanging lights, anything attached to underside of deck; inside cover-up; HVAC mechanical units and surveys; electrical; plumbing; carpentry; stucco; windows; outside panel joints; gas; and waterlines; Drain bowls and drain lines; antennas; satellite dishes and calibrations;  Off hours work schedule; mold/asbestos abatement; environmental check; structural upgrades; waterproofing; existing rotary vents,  Existing HVAC duct plenums; condensate lines; manufacturers guarantees; tree trimming; upgrades requested by the City or governmental agency; existing skylights.

Submitted by:      San Marino Roof Co., Inc.

Signed by:      Date: 07/12/2019

Andy Tovey, Project Manager

ATTACHMENT B

## SUBCONTRACTOR LISTING

The Undersigned, in preparation of the project bid, declares the intent to use the following subcontractors:

DEMOLITION:

| | |
|---|---|
| Company Name: | Klondike Construction |
| Company Address: | 592 E. State St. |
| | Ontario  CA  91761 |
| License No.: | 990645 |

SHEET METAL:

| | |
|---|---|
| Company Name: | B T Sheet Metal, Inc. |
| Company Address: | 1031 Calle Trepadora, Ste. D |
| | San Clemente  CA  92673 |
| License No.: | 761893 |

MECHANICAL:

| | |
|---|---|
| Company Name: | N/A |
| Company Address: | |
| | |
| License No.: | |

WATERPROOFING:

| | |
|---|---|
| Company Name: | N/A |
| Company Address: | |
| | |
| License No.: | |

OTHERS:

| | |
|---|---|
| Type of Work: | Seal Windows |
| Company Name: | Jacob's Caulking & Waterproofing Inc. |
| Company Address: | 100 Oldenburg Lane |
| | Norco  CA  92860 |
| License No.: | 924934 |

**Exhibit F**

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 8/13/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: Elizabeth Stackowitz | |
|---|---|---|---|
| JLT Specialty USA 350 Madison Avenue, 7th Floor New York, NY 10017 | | PHONE (A/C, No, Ext): | FAX (A/C, No): |
| | | E-MAIL ADDRESS: elizabeth.stackowitz@jltus.com | |
| www.jltus.com | | INSURER(S) AFFORDING COVERAGE | NAIC # |
| | | INSURER A: ACE American Insurance Company | 22667 |
| INSURED Sears Holdings Corporation including all subsidiaries Attn: Risk Management E3-219A 3333 Beverly Road Hoffman Estates IL 60179 | | INSURER B: ACE Fire Underwriters Insurance Company | 20702 |
| | | INSURER C: | |
| | | INSURER D: | |
| | | INSURER E: | |
| | | INSURER F: | |

## COVERAGES  CERTIFICATE NUMBER: 50541814  REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | COMMERCIAL GENERAL LIABILITY ☐CLAIMS-MADE ✓OCCUR | ✓ | | HDOG27868988 | 8/1/2017 | 8/1/2018 | EACH OCCURRENCE | $5,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $5,000,000 |
| | | | | | | | MED EXP (Any one person) | $ Excluded |
| | | | | | | | PERSONAL & ADV INJURY | $5,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ✓POLICY ☐PROJECT ☐LOC ☐OTHER: | | | | | | GENERAL AGGREGATE | $5,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $5,000,000 |
| | | | | | | | | $ |
| A A A | AUTOMOBILE LIABILITY ☐ANY AUTO ✓OWNED AUTOS ONLY ☐SCHEDULED AUTOS ✓HIRED AUTOS ONLY ✓NON-OWNED AUTOS ONLY | | | ISA H09060960 ISA H09060959 ISA H09060972 | 8/1/2017 8/1/2017 8/1/2017 | 8/1/2018 8/1/2018 8/1/2018 | COMBINED SINGLE LIMIT (Ea accident) | $5,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐UMBRELLA LIAB ☐OCCUR ☐EXCESS LIAB ☐CLAIMS-MADE | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | ☐DED ☐RETENTION $ | | | | | | | $ |
| A A B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANYPROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below  Y/N  N  N/A | | | WLRC64413302 WCUC64413314 SCFC64413326 | 8/1/2017 8/1/2017 8/1/2017 | 8/1/2018 8/1/2018 8/1/2018 | ✓PER STATUTE ☐OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $2,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $2,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $2,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Certificate holder is an additional insured.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| 51st Street Fruitland Ave., LLC c/o Manatt, Phelps & Phillips, LLP Attn: Robert Duran 11355 W. Olympic Blvd Los Angeles CA 90064 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE  *JLT Specialty Insurance Services Inc.* JLT Specialty Insurance Services Inc. |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

50541814 | 17-18 Master AON | Elizabeth Stackowitz | 8/13/2019 9:14:12 AM (EDT) | Page 1 of 1

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 8/13/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | JLT Specialty USA<br>350 Madison Avenue, 7th Floor<br>New York, NY 10017<br><br>www.jltus.com | CONTACT NAME: | Elizabeth Stackowitz | | |
|---|---|---|---|---|---|
| | | PHONE (A/C, No, Ext): | | FAX (A/C, No): | |
| | | E-MAIL ADDRESS: | elizabeth.stackowitz@jltus.com | | |
| | | **INSURER(S) AFFORDING COVERAGE** | | | NAIC # |
| | | INSURER A : | ACE American Insurance Company | | 22667 |
| INSURED | Sears Holdings Corporation<br>including all subsidiaries<br>Attn: Risk Management E3-219A<br>3333 Beverly Road<br>Hoffman Estates IL  60179 | INSURER B : | ACE Fire Underwriters Insurance Company | | 20702 |
| | | INSURER C : | ACE Property and Casualty Insurance Co | | 20699 |
| | | INSURER D : | | | |
| | | INSURER E : | | | |
| | | INSURER F : | | | |

## COVERAGES
**CERTIFICATE NUMBER:** 50542999     **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | ✓ **COMMERCIAL GENERAL LIABILITY** | ✓ | | HDOG71097614 | 8/1/2018 | 12/31/2018 | EACH OCCURRENCE | $5,000,000 |
| | ☐ CLAIMS-MADE  ✓ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $5,000,000 |
| | | | | | | | MED EXP (Any one person) | $ Excluded |
| | | | | | | | PERSONAL & ADV INJURY | $5,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $5,000,000 |
| | ✓ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $5,000,000 |
| | OTHER: | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | | | ISA H25159871 | 8/1/2018 | 12/31/2018 | COMBINED SINGLE LIMIT (Ea accident) | $5,000,000 |
| A | ☐ ANY AUTO | | | ISA H25159895 | 8/1/2018 | 12/31/2018 | BODILY INJURY (Per person) | $ |
| A | ✓ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | ISA H25159883 | 8/1/2018 | 12/31/2018 | BODILY INJURY (Per accident) | $ |
| | ✓ HIRED AUTOS ONLY ✓ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| C | ✓ **UMBRELLA LIAB**  ✓ OCCUR | | | XOOG28144799003 | 8/1/2018 | 8/1/2019 | EACH OCCURRENCE | $5,000,000 |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y/N | | | WLRC65226236 | 8/1/2018 | 12/31/2018 | ✓ PER STATUTE ☐ OTH-ER | |
| A | ANYPROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N N/A | | | WCUC65226273 | 8/1/2018 | 12/31/2018 | E.L. EACH ACCIDENT | $2,000,000 |
| B | (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | | SCFC65226315 | 8/1/2018 | 12/31/2018 | E.L. DISEASE - EA EMPLOYEE | $2,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $2,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Certificate holder is an additional insured.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| 51st Street Fruitland Ave., LLC<br>c/o Manatt, Phelps & Phillips, LLP<br>Attn: Robert Duran<br>11355 W. Olympic Blvd<br>Los Angeles CA  90064 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE    *JLT Specialty Insurance Services Inc.*<br><br>JLT Specialty Insurance Services Inc. |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 25 (2016/03)**        The ACORD name and logo are registered marks of ACORD

50542999 | 18-19 Master AON | Elizabeth Stackowitz | 8/13/2019 10:18:45 AM (EDT) | Page 1 of 1

# CERTIFICATE OF LIABILITY INSURANCE

**ACORD**®

| DATE (MM/DD/YYYY) |
|---|
| 1/14/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Elizabeth Stackowitz | | |
|---|---|---|---|---|
| JLT Specialty USA<br>350 Madison Avenue, 7th Floor<br>New York, NY 10017 | PHONE (A/C, No, Ext): | | FAX (A/C, No): | |
| | E-MAIL ADDRESS: | elizabeth.stackowitz@jltus.com | | |
| | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| www.jltus.com | INSURER A : National Union Fire Ins Co Pittsburgh PA | | | 19445 |
| INSURED | INSURER B : New Hampshire Insurance Company | | | 23841 |
| Sears Holdings Corporation<br>including all subsidiaries<br>Attn: Risk Management E3-219A<br>3333 Beverly Road<br>Hoffman Estates IL 60179 | INSURER C : | | | |
| | INSURER D : | | | |
| | INSURER E : | | | |
| | INSURER F : | | | |

## COVERAGES    CERTIFICATE NUMBER: 46553273    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | ✓ COMMERCIAL GENERAL LIABILITY | | | 5425885 | 1/1/2019 | 1/1/2020 | EACH OCCURRENCE | $5,000,000 |
| | ☐ CLAIMS-MADE ✓ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $5,000,000 |
| | | | | | | | MED EXP (Any one person) | $0 |
| | | | | | | | PERSONAL & ADV INJURY | $5,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $5,000,000 |
| | POLICY ✓ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $5,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | | | 9767459 | 1/1/2019 | 4/1/2019 | COMBINED SINGLE LIMIT (Ea accident) | $5,000,000 |
| A | ✓ ANY AUTO | | | 9767458 | 1/1/2019 | 4/1/2019 | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | Medical Payment | $10,000 |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N | | | 012717073 | 1/1/2019 | 4/1/2019 | ✓ PER STATUTE ☐ OTHER | |
| | ANYPROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $2,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $2,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $2,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Certificate holder is an additional insured.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| 51st Street Fruitland Ave., LLC<br>c/o Manatt, Phelps & Phillips, LLP<br>Attn: Robert Duran<br>11355 W. Olympic Blvd<br>Los Angeles CA 90064 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br>*André Eichenholtz*<br>Andre Eichenholtz |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

46553273 | 18-19 GLALWC - Florida Builder Appl | Elizabeth Stackowitz | 1/14/2019 1:51:52 PM (EST) | Page 1 of 1

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| | |
|---|---|
| **DATE (MM/DD/YYYY)** | 8/13/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | | |
|---|---|---|---|
| JLT Specialty USA 350 Madison Avenue, 7th Floor New York, NY 10017 www.jltus.com | **CONTACT NAME:** Elizabeth Stackowitz | | |
| | **PHONE (A/C, No, Ext):** | | **FAX (A/C, No):** |
| | **E-MAIL ADDRESS:** elizabeth.stackowitz@jltus.com | | |

| | **INSURER(S) AFFORDING COVERAGE** | **NAIC #** |
|---|---|---|
| | **INSURER A :** National Union Fire Ins Co Pittsburgh PA | 19445 |
| INSURED Sears Holdings Corporation including all subsidiaries Attn: Risk Management E3-219A 3333 Beverly Road Hoffman Estates IL  60179 | **INSURER B :** New Hampshire Insurance Company | 23841 |
| | **INSURER C :** Navigators Specialty Insurance Company | 36056 |
| | **INSURER D :** American Home Assurance Company | 19380 |
| | **INSURER E :** Landmark American Insurance Company | 33138 |
| | **INSURER F :** | |

## COVERAGES          CERTIFICATE NUMBER: 50541627          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| E | ✓ COMMERCIAL GENERAL LIABILITY CLAIMS-MADE ✓ OCCUR | ✓ | | LHA140685 | 8/1/2019 | 8/1/2020 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $1,000,000 |
| | | | | | | | MED EXP (Any one person) | $0 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ✓ POLICY  PRO-JECT  LOC OTHER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | | | | | | | $ |
| A A | AUTOMOBILE LIABILITY ✓ ANY AUTO  OWNED AUTOS ONLY  SCHEDULED AUTOS  HIRED AUTOS ONLY  NON-OWNED AUTOS ONLY | | | 4993160 4993161 | 4/1/2019 4/1/2019 | 1/1/2020 1/1/2020 | COMBINED SINGLE LIMIT (Ea accident) | $5,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | Medical Payment | $10,000 |
| C | ✓ UMBRELLA LIAB ✓ OCCUR  EXCESS LIAB  CLAIMS-MADE  DED  RETENTION $ | | | LA19EXCZ02S8FIC | 8/1/2019 | 8/1/2020 | EACH OCCURRENCE | $5,000,000 |
| | | | | | | | AGGREGATE | $5,000,000 |
| | | | | | | | | $ |
| D D B B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANYPROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y / N N/A | | 014649094 014649095 014649096/014649097 014649098/014649099 | 4/1/2019 4/1/2019 4/1/2019 4/1/2019 | 1/1/2020 1/1/2020 1/1/2020 1/1/2020 | ✓ PER STATUTE  OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $2,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $2,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $2,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Certificate holder is an additional insured.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| 51st Street Fruitland Ave., LLC c/o Manatt, Phelps & Phillips, LLP Attn: Robert Duran 11355 W. Olympic Blvd Los Angeles CA  90064 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | **AUTHORIZED REPRESENTATIVE** André Eichenholtz *Andre Eichenholtz* |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
08/13/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER  310-282-0900
Nahai Insurance Services, Inc.
465 S. Beverly Drive, #200
Beverly Hills, CA 90212
Bijan Nahai | CONTACT NAME: Bijan Nahai | | |
|---|---|---|---|
| | PHONE (A/C, No, Ext): 310-282-0900 | | FAX (A/C, No): 310-282-0976 |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED
Shason Inc.
5525 S. Soto St
Vernon, CA 90058 | INSURER A : Ohio Casualty Insurance Co | | 24074 |
| | INSURER B : Allied World Insurance Company | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES                CERTIFICATE NUMBER:                REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | X | BKO56610094 | 07/23/2019 | 07/23/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 500,000 |
| | | | | | | | MED EXP (Any one person) | $ 15,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB X OCCUR | | | 03115248117042 | 07/23/2019 | 07/23/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 1,000,000 |
| | DED X RETENTION $ 10000 | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY    Y / N
ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N/A
(Mandatory in NH)
If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | PER STATUTE    OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Cerhtificate Holder/Landlord as additinal insrued with respects liability
arising out of Named Insured's operations.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| 51st Street Fruitland Ave.LLC
a California limited liability
Vernon/Sears Assignment
Vernon, CA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE
Nahai |

ACORD 25 (2016/03)                © 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

**<u>Exhibit G</u>**

**Offer of Security Deposit**

**From:** saulreiss@verizon.net <saulreiss@verizon.net>
**Sent:** Thursday, August 15, 2019 4:48 PM
**To:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; 'Duran, Robert' <RDuran@manatt.com>;
'Grumer, Carl' <cgrumer@manatt.com>; henry@hshmanagement.net; 'Gigi'
<gigi@hshmanagement.net>
**Cc:** Hwang, Angeline <Angeline.Hwang@weil.com>; Seales, Jannelle <jannelle.seales@weil.com>;
Barron, Shira <Shira.Barron@weil.com>; wgallagher@miiipartners.com; nzatzkin@miiipartners.com>;
Lewitt, Alex <Alexander.Lewitt@weil.com>
**Subject:** RE: In Re Sears Holding

Dear All,
          Please see my additional responses on behalf of Mr. Shahery.
Thank you for the copy of the LSA. However, as discussed on the phone yesterday, we require
additional information about Mr. Shahery's financial status. The one page Comerica letter implies
that Mr. Shahery has substantial assets on hand at the bank, but he also has substantial liabilities to
the bank. We cannot learn anything more about Mr. Shahery's financial condition from the letter
alone. Accordingly, please provide personal financial statements showing Mr. Shahery's general
financial condition for the past two years.  As you know, the rent under the lease is $700 per month.
Rather than provide additional financial information, Mr. Shahery has offered to provide 51st Street
Fruitland Avenue LLC (the "Landlord") with a deposit in the amount of one year's rent, or $8,400.
We believe that the proposed deposit should be more than enough to provide comfort to the
Landlord.

Also, we note that under the LSA Mr. Shahery is permitted to assign the LSA, in some cases without
"seller's" consent. Please advise whether Mr. Shahery intends to assign the LSA at or prior to the
closing and, if so, provide the name and address of the proposed assignee(s) and state the
relationship of the assignee(s) to Mr. Shahery. Please provide financial statements for any proposed
assignee(s) for the past two years.  We do not know of any plans by Mr. Shahery to assign the LSA to
any other entity.  Saul Reiss, Mr. Shahery's attorney, can comment further.  **There is no
intention to assign the LSA to any other person or entity.**

Thank you also for the certificates of insurance. We note that the certificates evidence the debtor's
insurance, not Mr. Shahery's. Please provide a certificate of insurance evidencing Mr. Shahery's

compliance with the insurance provision of the parking lot lease.  I believe that we have Mr. Shahery's certificate of insurance; we will send it under separate cover.

Please describe Mr. Shahery's intended use of the premises and state whether Mr. Shahery will use or store any Hazardous Substances (as defined in the Parking Lot Lease) on the premises.  I defer to Mr. Reiss on this question. **There will be no storage of any Hazardous Materials on the property.  It will be used only for purposes permitted in the Parking Lot Lease.  Obviously, petroleum products contained in vehicles parked on the lot will remain.**

Finally, please advise whether and when payment was made of the undisputed cure amount (as specified in Exhibit 1 to the proposed order re assumption of the Vernon leases). As I mentioned, 51st Street Fruitland Ave., LLC does not have a record of receipt.  We did make arrangements to resend the August rent to the correct address.  Please confirm that the Landlord has received it.  We are looking into the undisputed cure amount listed on the notice of assumption.  We believe that there may have been an error on the amount because, given that the lease payment is only $700 per month, we can't imagine how the prepetition defaults could have been $24,000.  Of course, if we determine that the amount is less, the Landlord would have the right to dispute the amount.  We hope to have an answer for you in the next day or so.


*Saul Reiss*

**Law Offices of Saul Reiss**
**A professional corporation**
2800 28th Street, Suite 328
Santa Monica, California 90405-6201
Telephone (310) 450-2888
Facsimile (310) 450-2885
E-Mail reisslaw@verizon.net
**Saul Reiss**
saulreiss@verizon.net
Cellular 310-709-2841

---

**From:** Marcus, Jacqueline <jacqueline.marcus@weil.com>
**Sent:** Thursday, August 15, 2019 4:10 AM
**To:** Duran, Robert <RDuran@manatt.com>; Grumer, Carl <cgrumer@manatt.com>
**Cc:** Hwang, Angeline <Angeline.Hwang@weil.com>; Seales, Jannelle <jannelle.seales@weil.com>; Barron, Shira <Shira.Barron@weil.com>; wgallagher@miiipartners.com; nzatzkin@miiipartners.com; saulreiss@verizon.net; Lewitt, Alex <Alexander.Lewitt@weil.com>
**Subject:** RE: In Re Sears Holding

See our responses to your inquiries in red below.

**<u>Exhibit H</u>**

**Email correspondence with Warehouse Landlord**

| | |
|---|---|
| **From:** | Marcus, Jacqueline |
| **To:** | David Taxin |
| **Cc:** | Seales, Jannelle; Hwang, Angeline; saulreiss@verizon.net; paulsilverstein@HuntonAK.com; wgallagher@miiipartners.com; nzatzkin@miiipartners.com; Lewitt, Alex |
| **Subject:** | RE: Sears | Vernon Lease Assignment |
| **Date:** | Monday, August 19, 2019 10:30:15 PM |

Thanks for your e-mail.  We have spent a good part of the day working through the issues you raised with Mr. Shahery and his attorneys and we think you will be pleased with the responses to the issues you have raised.  We have interlineated the responses in red, below.  I have also copied Mr. Shahery's counsel, so they can provide any additional information or clarification that they believe is necessary.



**Jacqueline Marcus**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Jacqueline.marcus@weil.com
+1 212 310 8130 Direct
+1 212 310 8007 Fax

**From:** David Taxin <davidtaxin@dahannowick.com>
**Sent:** Monday, August 19, 2019 10:38 AM
**To:** Marcus, Jacqueline <jacqueline.marcus@weil.com>
**Cc:** Seales, Jannelle <jannelle.seales@weil.com>; Hwang, Angeline <Angeline.Hwang@weil.com>; saulreiss@verizon.net; paulsilverstein@HuntonAK.com; wgallagher@miiipartners.com; nzatzkin@miiipartners.com; Lewitt, Alex <Alexander.Lewitt@weil.com>
**Subject:** RE: Sears | Vernon Lease Assignment

Counsel, thank you for your further email with documents on Friday concerning Sears' proposed assignment to Henry Shahery (which I find somewhat curious in view of advice received by my client that Mr. Shahery's bid was more than $2 Million less than a bid made by a large investment company- whose financial capability, in our view, substantially exceeds that of Mr. Shahery).

Below are comments on the proposed transaction (which I had hoped we might discuss in advance of your precipitously placing the matter on the court calendar on less than a week's notice). The context of my client's comments is not unimportant- my client is a family owned business; the family has been engaged in ground leasing properties around the country since prior to the date of Sears' lease 1947. The ground leases generally are to public companies or "big box" wholesalers or retailers such as Sears. In 1947, and upon amendment of the lease in 1982 Sears was among the largest, if not the largest retail company in the United States. Mr. Shahery and his business(es) are not public and are of course much smaller (in contrast to the large company which we understand significantly outbid him).

The financials which you provided- although showing a large deposit in a bank account- are very sketchy; no financial statements are provided for Mr. Shahery or his company operating at the premises, and there is no information provided as to his/their current and continuing obligations- such information would permit us to better determine his financial ability to comply with the terms of the lease. Mr. Shahery of course did deposit $1.2 Million under his sublease with Sears and he did, according to Sears, timely pay his rent (which is well over my client's rent to Sears)- however only for the past one year (commencement date August 15, 2018). We calculate the amount of his "base" obligations upon an assignment from Sears to currently be approximately $671,000 per year- current rent (approx.. $281,000), current real estate taxes approximately $390,000 (which we assume will only increase further).

Some of our specific concerns, some of which you contemplated by the offer of providing an L/C, are as follows. We are providing these while reserving all rights and remedies of our client who is continuing to review this matter.

1- While you have advised the Court that the purchaser was Henry Shahery, the actual named purchaser is Henry Shahery or assignee (which may be a company in which Mr. Shahery owns not less than a majority interest) (there is also a reference to a tax-deferred exchange but we do not believe that that would be legally possible due to the short period currently remaining on the lease, even with the option periods). In the event that the assignment would be taken in the name of an entity owned at least majority interest by Mr. Shahery, both he and his company operating at the premises should be required to execute and deliver to landlord a guaranty of all of the obligations of the "purchaser"; otherwise, Mr. Shahery should be the tenant/purchaser.. Thereafter, the lease should not be permitted to be further assigned or sublet. <span style="color:red">Mr. Shahery has confirmed and I'm sure will confirm on the record at the hearing, that he will be the purchaser and that he will forego his right under the LSA to assign it to a designee.</span>

2- Landlord has no repair obligations under the lease, tenant is required to make all repairs and deliver the premises in good condition to landlord upon the expiration of the lease. We know that Sears and Mr. Shahery have each acknowledged that a new roof is required on both buildings at the premises; you furnished us with estimates showing a minimum expenditure of $2.5 Million (without any asbestos abatement) required to replace the roof. We believe that tenant's obligation to replace the roof should be codified in a modified lease, and that tenant should "put up" the money  at the outset into a construction escrow fund (or at least an L/C which would include the amount necessary to replace the roof- the L/C could then be reduced (the $2.5 Million eliminated therefrom) upon tenant's completion of the project. Landlord has no intention of being involved in that project; its only intent is to have funds in the event that tenant fails to undertake and complete the project. Presumably tenant will be operating at the premises and therefore will want to replace the roof, however, we note tenant's expenditure of $5.25 Million to purchase the lease, hence we have no assurance as to whether and when tenant would intend to act. <span style="color:red">Mr. Shahery has confirmed that he will comply with all of the obligations under paragraph 8 of the warehouse lease, including by making all required repairs.  Mr. Shahery has spent nearly $2 million on capital improvements since the inception of the sublease.  He is not prepared to</span>

"prefund" the costs of such repairs.

3-  We were going to suggest a security deposit in the form of an L/C, which you did offer- however we believe that the amount should be $700,000 (to cover base rent and real estate taxes), with the right of landlord to increase it if tenant exercises an option to extend the lease in 2022 and then in 2027- amount would be increased to the then current base rent plus taxes).  Mr. Shahery has agreed to increase the amount of the L/C to be posted to $700,000 and to increase such amount (to cover base rend plus taxes) if he exercises the options to extend the lease in 2022 and 2027.

Form of the assignment- while we do see conflict provisions concerning the "Assignment" vis a vis the contract to assign, the language in the Assignment should provide that assignee "assumes" all of the obligations of the lease. This word seemed to be missing. I was also unclear as to what was being assigned in the actual assignment- is sears' interest as sublandlord of my client's lease and the parking lot lease also being assigned; presumably they are based upon the contract but I didn't read the document that way. Is the sublease disappearing? We do not want the current sublease being assigned or the premises sub-sublet.  With respect to assumption, paragraph 6 of the LSA provides, in pertinent part, that "Purchaser shall assume all of the covenants, agreements, and obligations of Tenant as tenant and Sub-Landlord under the Leases." We think that covers your point, but we are prepared to make the point more clearly, if necessary.  The subleases of the warehouse and the parking lot would remain intact.

Please review these comments (including the offer process) and advise.

This email should however not be construed as an offer of settlement by my client. My client and I are continuing to review the matter and reserve all rights to amend and or supplement the foregoing. In the event that we are able to reach an agreement in principle or are, at least, making progress towards achieving a resolution, I assume that the hearing date could be adjourned so that documents could be prepared and an agreement could be finalized and executed.  While this point hasn't been discussed, if we reach an agreement with your client as well as the landlord for the parking lot, I assume that we could adjourn the hearing for a short while we finalize any necessary documentation.

Further with regard to the "hearing" which you noticed for this Thursday, we do not understand this to be an "evidentiary hearing" or "trial" but rather a "return date" for counsel to appear. I would appreciate your confirmation of the nature of the "hearing" which you set (presumably with court approval) for the 22nd. Thank you.  Under the Case Management Order, the first hearing on a matter is not an evidentiary hearing, unless the Court so orders or the parties consent.  Given that we don't expect you to consent, we expect that the hearing will consist of arguments of counsel.

David R. Taxin
Dahan & Nowick LLP
123 Main Street, 9th Floor
White Plains, New York 10601
Main Tel: (914) 461-1650

Direct Line: (914) 461-1643

Fax: (914) 761-2196

email: davidtaxin@dahannowick.com

---

**From:** Marcus, Jacqueline [mailto:jacqueline.marcus@weil.com]
**Sent:** Friday, August 16, 2019 1:45 PM
**To:** David Taxin
**Cc:** Seales, Jannelle; Hwang, Angeline; saulreiss@verizon.net; paulsilverstein@HuntonAK.com; wgallagher@miiipartners.com; nzatzkin@miiipartners.com; Lewitt, Alex
**Subject:** RE: Sears | Vernon Lease Assignment

As you know, we have noticed the assignment of the Vernon leases for the hearing that will be held on Thursday, August 22nd.  In an effort to resolve your client's objection to the proposed assignment, and to address any concerns about his wherewithal to meet the obligations under the master lease, Mr. Shahery has obtained a commitment from Comerica Bank, a copy of which is attached, to provide a letter of credit in the amount of twelve months' rent under the lease, for the benefit of the landlord.  In addition, and also attached, is a letter from Comerica Bank that indicates that Mr. Shahery has liquidity in excess of $18.4 million, together with a screen shot that reflects the funds in the account.

We trust that the attached communications, together with the answers to your prior questions and the additional documents provided, amply demonstrate that Mr. Shahery is more than capable of meeting his obligations under the lease.

Please let us know if you would like us to begin documenting the proposed letter of credit so that we can be ready by August 22nd.  Thanks.



**Jacqueline Marcus**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
jacqueline.marcus@weil.com
+1 212 310 8130 Direct
+1 917 658 6209 Mobile
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

**Email correspondence with Parking Lot Landlord**

| | |
|---|---|
| **From:** | saulreiss@verizon.net |
| **To:** | Marcus, Jacqueline; "Duran, Robert"; "Grumer, Carl"; henry@hshmanagement.net; "Gigi" |
| **Cc:** | Hwang, Angeline; Seales, Jannelle; Barron, Shira; wgallagher@miiipartners.com; nzatzkin@miiipartners.com; Lewitt, Alex |
| **Subject:** | RE: In Re Sears Holding |
| **Date:** | Thursday, August 15, 2019 4:48:12 PM |

Dear All,

        Please see my additional responses on behalf of Mr. Shahery.

Thank you for the copy of the LSA. However, as discussed on the phone yesterday, we require additional information about Mr. Shahery's financial status. The one page Comerica letter implies that Mr. Shahery has substantial assets on hand at the bank, but he also has substantial liabilities to the bank. We cannot learn anything more about Mr. Shahery's financial condition from the letter alone. Accordingly, please provide personal financial statements showing Mr. Shahery's general financial condition for the past two years.  As you know, the rent under the lease is $700 per month. Rather than provide additional financial information, Mr. Shahery has offered to provide 51st Street Fruitland Avenue LLC (the "Landlord") with a deposit in the amount of one year's rent, or $8,400. We believe that the proposed deposit should be more than enough to provide comfort to the Landlord.

Also, we note that under the LSA Mr. Shahery is permitted to assign the LSA, in some cases without "seller's" consent. Please advise whether Mr. Shahery intends to assign the LSA at or prior to the closing and, if so, provide the name and address of the proposed assignee(s) and state the relationship of the assignee(s) to Mr. Shahery. Please provide financial statements for any proposed assignee(s) for the past two years.  We do not know of any plans by Mr. Shahery to assign the LSA to any other entity.  Saul Reiss, Mr. Shahery's attorney, can comment further. **There is no intention to assign the LSA to any other person or entity.**

Thank you also for the certificates of insurance. We note that the certificates evidence the debtor's insurance, not Mr. Shahery's. Please provide a certificate of insurance evidencing Mr. Shahery's compliance with the insurance provision of the parking lot lease.  I believe that we have Mr. Shahery's certificate of insurance; we will send it under separate cover.

Please describe Mr. Shahery's intended use of the premises and state whether Mr. Shahery will use or store any Hazardous Substances (as defined in the Parking Lot Lease) on the premises.  I defer to Mr. Reiss on this question. **There will be no storage of any Hazardous Materials on the property.  It will be used only for purposes permitted in the Parking Lot Lease.  Obviously, petroleum products contained in vehicles parked on the lot will remain.**

Finally, please advise whether and when payment was made of the undisputed cure amount (as specified in Exhibit 1 to the proposed order re assumption of the Vernon leases). As I mentioned, 51st Street Fruitland Ave., LLC does not have a record of receipt.  We did make arrangements to resend the August rent to the correct address.  Please confirm that the Landlord has received it.  We are looking into the undisputed cure amount listed on the notice of assumption.  We believe that

<span style="color:red">there may have been an error on the amount because, given that the lease payment is only $700 per month, we can't imagine how the prepetition defaults could have been $24,000.  Of course, if we determine that the amount is less, the Landlord would have the right to dispute the amount.  We hope to have an answer for you in the next day or so.</span>



**Law Offices of Saul Reiss**
**A professional corporation**

2800 28th Street, Suite 328
Santa Monica, California 90405-6201
Telephone (310) 450-2888
Facsimile (310) 450-2885
E-Mail reisslaw@verizon.net
**Saul Reiss**
saulreiss@verizon.net
Cellular 310-709-2841

---

**From:** Marcus, Jacqueline <jacqueline.marcus@weil.com>
**Sent:** Thursday, August 15, 2019 4:10 AM
**To:** Duran, Robert <RDuran@manatt.com>; Grumer, Carl <cgrumer@manatt.com>
**Cc:** Hwang, Angeline <Angeline.Hwang@weil.com>; Seales, Jannelle <jannelle.seales@weil.com>; Barron, Shira <Shira.Barron@weil.com>; wgallagher@miiipartners.com; nzatzkin@miiipartners.com; saulreiss@verizon.net; Lewitt, Alex <Alexander.Lewitt@weil.com>
**Subject:** RE: In Re Sears Holding

See our responses to your inquiries in red below.

**Weil**

**Jacqueline Marcus**

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
jacqueline.marcus@weil.com
+1 212 310 8130 Direct
+1 917 658 6209 Mobile
+1 212 310 8007 Fax

---

**From:** Duran, Robert <RDuran@manatt.com>
**Sent:** Wednesday, August 14, 2019 9:14 PM
**To:** Lewitt, Alex <Alexander.Lewitt@weil.com>; Grumer, Carl <cgrumer@manatt.com>

**Cc:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; Hwang, Angeline <Angeline.Hwang@weil.com>; Seales, Jannelle <jannelle.seales@weil.com>; Barron, Shira <Shira.Barron@weil.com>; wgallagher@miiipartners.com; nzatzkin@miiipartners.com; saulreiss@verizon.net
**Subject:** RE: In Re Sears Holding

Jacqueline, Alexander,

Thank you for the copy of the LSA. However, as discussed on the phone yesterday, we require additional information about Mr. Shahery's financial status. The one page Comerica letter implies that Mr. Shahery has substantial assets on hand at the bank, but he also has substantial liabilities to the bank. We cannot learn anything more about Mr. Shahery's financial condition from the letter alone. Accordingly, please provide personal financial statements showing Mr. Shahery's general financial condition for the past two years.  As you know, the rent under the lease is $700 per month. Rather than provide additional financial information, Mr. Shahery has offered to provide 51st Street Fruitland Avenue LLC (the "Landlord") with a deposit in the amount of one year's rent, or $8,400. We believe that the proposed deposit should be more than enough to provide comfort to the Landlord.

Also, we note that under the LSA Mr. Shahery is permitted to assign the LSA, in some cases without "seller's" consent. Please advise whether Mr. Shahery intends to assign the LSA at or prior to the closing and, if so, provide the name and address of the proposed assignee(s) and state the relationship of the assignee(s) to Mr. Shahery. Please provide financial statements for any proposed assignee(s) for the past two years.  We do not know of any plans by Mr. Shahery to assign the LSA to any other entity.  Saul Reiss, Mr. Shahery's attorney, can comment further.

Thank you also for the certificates of insurance. We note that the certificates evidence the debtor's insurance, not Mr. Shahery's. Please provide a certificate of insurance evidencing Mr. Shahery's compliance with the insurance provision of the parking lot lease.  I believe that we have Mr. Shahery's certificate of insurance; we will send it under separate cover.

Please describe Mr. Shahery's intended use of the premises and state whether Mr. Shahery will use or store any Hazardous Substances (as defined in the Parking Lot Lease) on the premises.  I defer to Mr. Reiss on this question.

Finally, please advise whether and when payment was made of the undisputed cure amount (as specified in Exhibit 1 to the proposed order re assumption of the Vernon leases). As I mentioned, 51st Street Fruitland Ave., LLC does not have a record of receipt.  We did make arrangements to resend the August rent to the correct address.  Please confirm that the Landlord has received it.  We are looking into the undisputed cure amount listed on the notice of assumption.  We believe that there may have been an error on the amount because, given that the lease payment is only $700 per month, we can't imagine how the prepetition defaults could have been $24,000.  Of course, if we determine that the amount is less, the Landlord would have the right to dispute the amount.  We hope to have an answer for you in the next day or so.

Thank you in advance for your attention to this matter.

Regards,

**Robert Duran**
Partner

---

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd
Los Angeles, CA  90064
**D** (310) 312-4274  **F** (310) 914-5894

RDuran@manatt.com
manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** Lewitt, Alex [mailto:Alexander.Lewitt@weil.com]
**Sent:** Wednesday, August 14, 2019 7:55 AM
**To:** Duran, Robert; Grumer, Carl
**Cc:** Marcus, Jacqueline; Hwang, Angeline; Seales, Jannelle; Barron, Shira; wgallagher@miiipartners.com; nzatzkin@miiipartners.com; saulreiss@verizon.net
**Subject:** RE: In Re Sears Holding

Bob, Carl,

Under the Lease Sale Agreement, Mr. Shahery will be responsible for paying taxes owed on the property. The relevant provision dictating such responsibility can be found under Section 6.

Best regards,



**Alexander Lewitt***
Associate

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Alexander.Lewitt@weil.com
+1 212 310 8608 Direct
+1 917 703 0763 Mobile
+1 212 310 8007 Fax

*Not yet admitted to practice

---

**From:** Lewitt, Alex
**Sent:** Tuesday, August 13, 2019 8:28 PM

**To:** 'RDuran@manatt.com' <RDuran@manatt.com>; 'cgrumer@manatt.com' <cgrumer@manatt.com>
**Cc:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; Hwang, Angeline <Angeline.Hwang@weil.com>; Seales, Jannelle <jannelle.seales@weil.com>; Barron, Shira <Shira.Barron@weil.com>; wgallagher@miiipartners.com; nzatzkin@miiipartners.com; 'saulreiss@verizon.net' <saulreiss@verizon.net>
**Subject:** RE: In Re Sears Holding

Bob, Carl,

As discussed, attached please find a copy of the Lease Sale Agreement. Also, we misspoke earlier, an order will have to be entered for the assignment of the Vernon Leases . A copy of the proposed order is attached as **Exhibit 1** to the Vernon Notice of Assignment (attached).

Best regards,



**Alexander Lewitt\***
Associate

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Alexander.Lewitt@weil.com
+1 212 310 8608 Direct
+1 917 703 0763 Mobile
+1 212 310 8007 Fax

\*Not yet admitted to practice

---

**From:** Lewitt, Alex
**Sent:** Tuesday, August 13, 2019 2:08 PM
**To:** 'RDuran@manatt.com' <RDuran@manatt.com>
**Cc:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; Hwang, Angeline <Angeline.Hwang@weil.com>; Seales, Jannelle <jannelle.seales@weil.com>; Barron, Shira <Shira.Barron@weil.com>; wgallagher@miiipartners.com; nzatzkin@miiipartners.com; 'saulreiss@verizon.net' <saulreiss@verizon.net>
**Subject:** RE: In Re Sears Holding

Bob,

Attached please find a copy of additional adequate assurance information.

Best regards,



**Alexander Lewitt***
Associate

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Alexander.Lewitt@weil.com
+1 212 310 8608 Direct
+1 917 703 0763 Mobile
+1 212 310 8007 Fax

*Not yet admitted to practice

---

**From:** Lewitt, Alex
**Sent:** Monday, August 12, 2019 5:54 PM
**To:** 'RDuran@manatt.com' <RDuran@manatt.com>
**Cc:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; Hwang, Angeline
<Angeline.Hwang@weil.com>; Seales, Jannelle <jannelle.seales@weil.com>; Barron, Shira
<Shira.Barron@weil.com>; wgallagher@miiipartners.com; nzatzkin@miiipartners.com;
'saulreiss@verizon.net' <saulreiss@verizon.net>
**Subject:** RE: In Re Sears Holding

Bob,

Attached please find a copy of the adequate assurance information.  Please note that by receipt of
the adequate assurance information your objection deadline will be August 20, 2019.

Following our phone call today, what times are you available tomorrow to discuss your concerns?

Best regards,



**Alexander Lewitt***
Associate

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Alexander.Lewitt@weil.com
+1 212 310 8608 Direct
+1 917 703 0763 Mobile
+1 212 310 8007 Fax

*Not yet admitted to practice

---

**From:** Lewitt, Alex

**Sent:** Monday, August 12, 2019 1:55 PM
**To:** 'RDuran@manatt.com' <RDuran@manatt.com>
**Cc:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; Hwang, Angeline
<Angeline.Hwang@weil.com>; Seales, Jannelle <jannelle.seales@weil.com>; Barron, Shira
<Shira.Barron@weil.com>; wgallagher@miiipartners.com; nzatzkin@miiipartners.com
**Subject:** RE: In Re Sears Holding

Robert,

We will send over the adequate assurance information shortly. In regards to the rent payment, the
Debtors mailed a check for rent to 2700 Fruitland Ave, Vernon, CA 90058 but the check was
returned to the Debtors. Could you provide us with the address the Debtors should send the rent
payment to?

Best regards,



**Alexander Lewitt\***
Associate

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Alexander.Lewitt@weil.com
+1 212 310 8608 Direct
+1 917 703 0763 Mobile
+1 212 310 8007 Fax

*\*Not yet admitted to practice*

---

**From:** Duran, Robert <RDuran@manatt.com>
**Sent:** Thursday, August 8, 2019 4:09 PM
**To:** Marcus, Jacqueline <jacqueline.marcus@weil.com>
**Subject:** In Re Sears Holding

Attorney Marcus:

We act for 51st Street Fruitland Ave., LLC, (fka 51st Street Partnership), the landlord under one of the
Vernon Leases described in the attached Notice of Assignment of Unexpired Leases of
Nonresidential Real Property.  We are evaluating whether to file an objection to the proposed
assignment. In that connection, please provide us with the adequate assurance information for the
buyer referenced in the attached pleading.

It is also my understanding that debtor has not paid the undisputed cure amount specified in the
court's April order, which amount does not include rent and prorations payable since then. Please
provide any information you have about the debtor's payment of sums payable under the subject

lease.

Thank you in advance for your prompt attention to this request.

Regards,

**Robert Duran**
Partner

_____

**Manatt, Phelps & Phillips, LLP**

11355 W. Olympic Blvd
Los Angeles, CA  90064
**D** (310) 312-4274  **F** (310) 914-5894

RDuran@manatt.com
**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

## **Exhibit I**

**68738 08B& 68738 08D CHECK RECEIPT DETAILS BEGINNING FOR FEB'19 THRU CURRENT**
**592,536.40**

| Lease Key | Tenant Name | Check Amount | Doc Nbr /Check# | Check Date | Month Of applied | Lease Key | Check received Date |
|---|---|---|---|---|---|---|---|
| 68738 08B | HENRY SHAHERY | 156,000.00 | 1410 | 1/30/2019 | FEB'19_INC_MONTHLY | 0068738 08B I 01 | 2/5/2019 |
| 68738 08D | HENRY SHAHERY | 4,000.00 | 1408 | 1/30/2019 | FEB'19_INC_MONTHLY | 0068738 08D I 01 | 2/5/2019 |
| 68738 08B | HENRY SHAHERY | 156,000.00 | 1428 | 2/27/2019 | MARCH'19_INC_MONTHLY | 0068738 08B I 01 | 3/5/2019 |
| 68738 08D | HENRY SHAHERY | 4,000.00 | 1429 | 2/27/2019 | MARCH'19_INC_MONTHLY | 0068738 08D I 01 | 3/5/2019 |
| 68738 08B | HENRY SHAHERY | 108,536.40 | 1446 | 3/27/2019 | Not applied yet as the tenant short paid us by adjusting the utility bills | 0068738 08B I 01 | 4/2/2019 |
| 68738 08D | HENRY SHAHERY | 4,000.00 | 1444 | 3/27/2019 | APR'19_INC_MONTHLY | 0068738 08D I 01 | 4/1/2019 |
| 68738 08B | HENRY SHAHERY | 156,000.00 | 1461 | 4/29/2019 | MAY'19_INC_MONTHLY | 0068738 08B I 01 | 5/3/2019 |
| 68738 08D | HENRY SHAHERY | 4,000.00 | 1460 | 4/29/2019 | MAY'19_INC_MONTHLY | 0068738 08D I 01 | 5/3/2019 |

| Check # | Check date | Check Amt |
|---------|-----------|-----------|
| 1408 | 1/30/2019 | $4,000 |



| Check # | Check date | Check Amt |
|---------|-----------|-----------|
| 1408 | 1/30/2019 | $4,000 |



| Check # | Check date | Check Amt |
|---------|-----------|-----------|
| 1428 | 2/27/2019 | $156,000 |



| Check # | Check date | Check Amt |
|---------|-----------|-----------|
| 1429 | 2/27/2019 | $4,000 |

| Check # | Check date | Check Amt |
|---------|-----------|-----------|
| 1446 | 3/27/2019 | $108,536.40 |



| Check # | Check date | Check Amt |
|---------|-----------|-----------|
| 1444 | 3/27/2019 | $4,000 |



| Check # | Check date | Check Amt |
|---------|-----------|-----------|
| 1461 | 4/29/2019 | $156,000 |



| Check # | Check date | Check Amt |
|---------|-----------|-----------|
| 1460 | 4/29/2019 | $4,000 |

![check 1460]



Accounts Receivable Department

April 3, 2019

HENRY SHAHERY
9777 WILSHIRE BLVD  SUITE 470
 BEVERLY HILLS, CA  90212

Dear Sir/Madam:

Please be advised that the following items are open on your account:

**Leases: Lease Key-  _HENRY SHAHERY _ Statement of Account  08/15/2018 - 04/30/2019**

| | | | | | | | | | OPEN AMT Due Sears | 426,378.85 | |

| Store#/Lease | Date Posted | OPEN | Applied to: | Description | | Amt Billed | PMT / CREDIT | | Check # | | Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 68738 08B | 2/4/2019 | CLR | SEC DEP | SEC DEPOSIT | | 160,000.00 | | | 1393 | $ | 160,000.00 |
| 68738 08B | 1/25/2019 | CLR | SEC DEP | Payment-SEC DEP | Check #1393 | | (160,000.00) | | 1393 | $ | - |
| 68738 08B | 2/4/2019 | CLR | Rent | 0068738 08B I 01 AA | 2018.AUG'18_16Dys_Catchp | 80,516.13 | (80,516.13) | | Construction Escrow | $ | - |
| 68738 08B | 2/4/2019 | CLR | Rent | 0068738 08B I 01 AA | 2018.09_SEP'18_INC_MONTHLY | 156,000.00 | (156,000.00) | | Construction Escrow | $ | - |
| 68738 08B | 2/4/2019 | CLR | Rent | 0068738 08B I 01 AA | 2018.10_OCT'18_INC_MONTHLY | 156,000.00 | (156,000.00) | | Construction Escrow | $ | - |
| 68738 08B | 2/4/2019 | CLR | Rent | 0068738 08B I 01 AA | 2018.11_NOV'18_INC_MONTHLY | 156,000.00 | (156,000.00) | | Construction Escrow | $ | - |
| 68738 08B | 2/4/2019 | CLR | Rent | 0068738 08B I 01 AA | 2018.12_DEC'18_INC_MONTHLY | 156,000.00 | (156,000.00) | | Construction Escrow | $ | - |
| 68738 08B | 2/4/2019 | CLR | Rent | 0068738 08B I 01 AA | 2019.01_JAN'19_INC_MONTHLY | 100,732.70 | (100,732.70) | | Construction Escrow | $ | - |
| 68738 08B | 1/28/2019 | CLR | Rent | 0068738 08B I 01 AA | FEB'19_INC_MONTHLY | 156,000.00 | | | 1410 | $ | 156,000.00 |
| 68738 08B | 2/5/2019 | CLR | PMT | Payment - FEB 2019 | Check #1410 | | (156,000.00) | | 1410 | $ | - |
| 68738 08B | 2/25/2019 | CLR | Rent | 0068738 08B I 01 AA | MAR'19_INC_MONTHLY | 156,000.00 | | | 1428 | $ | 156,000.00 |
| 68738 08B | 3/5/2019 | CLR | PMT | Payment - MAR 2019 | Check #1428 | | (156,000.00) | | 1428 | $ | - |
| | | | | | | | | | | | |
| 68738 08B | 11/8/2018 | OPEN | PMT | Payment -Partial | Check #1357 | | (43,267.13) | | 1357 | $ | (43,267.13) |
| 68738 08B | 2/4/2019 | OPEN | Tax Escrow | 0068738 08B I 01 TA | 2018.AUG'18_16Dys_Catchp | 15,659.32 | | | 1357 | $ | (27,607.81) |
| 68738 08B | 2/4/2019 | OPEN | Tax Escrow | 0068738 08B I 01 TA | 2018.09_SEP'18_INC_MONTHLY | 30,339.92 | | | | $ | 2,732.11 |
| 68738 08B | 2/4/2019 | OPEN | Tax Escrow | 0068738 08B I 01 TA | 2018.10_OCT'18_INC_MONTHLY | 30,339.92 | | | | $ | 33,072.03 |
| 68738 08B | 2/4/2019 | OPEN | Tax Escrow | 0068738 08B I 01 TA | 2018.11_NOV'18_INC_MONTHLY | 30,339.92 | | | | $ | 63,411.95 |
| 68738 08B | 2/4/2019 | OPEN | Tax Escrow | 0068738 08B I 01 TA | 2018.12_DEC'18_INC_MONTHLY | 30,339.92 | | | | $ | 93,751.87 |
| 68738 08B | 2/4/2019 | OPEN | Rent(Partial) | 0068738 08B I 01 AA | 2019.01_JAN'19_INC_MONTHLY | 55,267.30 | | | | $ | 149,019.17 |
| 68738 08B | 2/4/2019 | OPEN | Tax Escrow | 0068738 08B I 01 TA | 2019.01_JAN'19_INC_MONTHLY | 30,339.92 | | | | $ | 179,359.09 |
| 68738 08B | 1/28/2019 | OPEN | Tax Escrow | 0068738 08B I 01 TA | 2019.02_FEB'19_INC_MONTHLY | 30,339.92 | | | | $ | 209,699.01 |
| 68738 08B | 2/25/2019 | OPEN | Tax Escrow | 0068738 08B I 01 TA | 2019.03_MAR'19_INC_MONTHLY | 30,339.92 | | | | $ | 240,038.93 |
| 68738 08B | 2/4/2019 | OPEN | Rent | 0068738 08B I 01 AA | 2019.04_APR'19_INC_MONTHLY | 156,000.00 | | | | $ | 396,038.93 |
| 68738 08B | 2/25/2019 | OPEN | Tax Escrow | 0068738 08B I 01 TA | 2019.04_APR'19_INC_MONTHLY | 30,339.92 | | | | $ | 426,378.85 |
| | | | | | | | | | | $ | 426,378.85 |
| | | | | | | | | | | $ | 426,378.85 |

| | | | | | | | | Due Sears | $ | 426,378.85 |

Please remit Total Amt Due Sears as shown above to the following address:

Sears, Roebuck & Co.
12670 Collections Drive
Chicago, IL  60693

**Please include the  following information on your remittance:**                    **Leases: Lease Key-  _HENRY SHAHERY _ Statement of Account**

Should you have any questions, please contact Rohini Balu at (855) 646-0520 Extn 551-1116
or email lasleasear@searshc.com.



**Accounts Receivable Department**

April 3, 2019

HENRY SHAHERY
9777 WILSHIRE BLVD  SUITE 470
BEVERLY HILLS, CA  90212

Dear Sir/Madam:

Please be advised that the following items are open on your account:

**Leases: Lease Key- _HENRY SHAHERY _ Statement of Account  12/21/2017 - 04/30/2019**

| | | | | | | OPEN AMT Due Sears | $ | 23,225.80 |

| Store#/Lease | Date Posted | OPEN | Applied to: | Description | Amt Billed | PMT / CREDIT | Check # | Amount Due |
|---|---|---|---|---|---|---|---|---|
| 68738 08D | | | | (No Security Deposit) | 0.00 | | | $         - |
| | | | | | | | | $         - |
| 68738 08D | 2/4/2019 | CLR | Billing | 0068738 08D I 01 AA | 2018.09_SEP'18_INC_MONTHLY | 4,000.00 | | 1380 | $      4,000.00 |
| 68738 08D | 12/26/2018 | CLR | PMT | APPLIED to: SEP 2019 | Parking Lot Lease | (4,000.00) | 1380 | $         - |
| 68738 08D | 2/4/2019 | CLR | Billing | 0068738 08D I 01 AA | 2018.10_OCT'18_INC_MONTHLY | 4,000.00 | | 1387 | $      4,000.00 |
| 68738 08D | 2/4/2019 | CLR | Billing | 0068738 08D I 01 AA | 2018.11_NOV'18_INC_MONTHLY | 4,000.00 | | 1387 | $      8,000.00 |
| 68738 08D | 2/4/2019 | CLR | Billing | 0068738 08D I 01 AA | 2018.12_DEC'18_INC_MONTHLY | 4,000.00 | | 1387 | $     12,000.00 |
| 68738 08D | 1/4/2019 | CLR | PMT | APPLIED to: OCT NOV DEC 2018 | Parking Lot Lease | (12,000.00) | 1387 | $         - |
| 68738 08D | 2/4/2019 | CLR | Billing | 0068738 08D I 01 AA | 2019.01_JAN'19_INC_MONTHLY | 4,000.00 | | 1394 | $      4,000.00 |
| 68738 08D | 1/8/2019 | CLR | PMT | APPLIED to: JAN 2019 | Parking Lot Lease | (4,000.00) | 1394 | $         - |
| 68738 08D | 1/28/2019 | CLR | Billing | 0068738 08D I 01 AA | FEB'19_INC_MONTHLY | 4,000.00 | | | $      4,000.00 |
| 68738 08D | 2/5/2019 | CLR | PMT | APPLIED to: FEB 2019 | Parking Lot Lease | (4,000.00) | 1408 | $         - |
| 68738 08D | 2/25/2019 | CLR | Billing | 0068738 08D I 01 AA | MAR'19_INC_MONTHLY | 4,000.00 | | | $      4,000.00 |
| 68738 08D | 3/5/2019 | CLR | PMT | APPLIED to: MAR 2019 | Parking Lot Lease | (4,000.00) | 1429 | $         - |
| | | | | | | | | |
| 68738 08D | 11/8/2018 | OPEN | PMT | | 2018.11_Parking Lot Lease - 08/15/2018-11/30/2018 | (14,064.52) | 1358 | $    (14,064.52) |
| 68738 08D | 2/4/2019 | OPEN | Billing | 0068738 08D I 01 AA | 2017.12_DEC'17_10Dys_Catchp | 1,290.32 | | | $    (12,774.20) |
| 68738 08D | 2/4/2019 | OPEN | Billing | 0068738 08D I 01 AA | 2018.01_JAN'18_INC_MONTHLY | 4,000.00 | | | $     (8,774.20) |
| 68738 08D | 2/4/2019 | OPEN | Billing | 0068738 08D I 01 AA | 2018.02_FEB'18_INC_MONTHLY | 4,000.00 | | | $     (4,774.20) |
| 68738 08D | 2/4/2019 | OPEN | Billing | 0068738 08D I 01 AA | 2018.03_MAR'18_INC_MONTHLY | 4,000.00 | | | $       (774.20) |
| 68738 08D | 2/4/2019 | OPEN | Billing | 0068738 08D I 01 AA | 2018.04_APR'18_INC_MONTHLY | 4,000.00 | | | $      3,225.80 |
| 68738 08D | 2/4/2019 | OPEN | Billing | 0068738 08D I 01 AA | 2018.05_MAY'18_INC_MONTHLY | 4,000.00 | | | $      7,225.80 |
| 68738 08D | 2/4/2019 | OPEN | Billing | 0068738 08D I 01 AA | 2018.06_JUN'18_INC_MONTHLY | 4,000.00 | | | $     11,225.80 |
| 68738 08D | 2/4/2019 | OPEN | Billing | 0068738 08D I 01 AA | 2018.07_JUL'18_INC_MONTHLY | 4,000.00 | | | $     15,225.80 |
| 68738 08D | 2/4/2019 | OPEN | Billing | 0068738 08D I 01 AA | 2018.08_AUG'18_INC_MONTHLY | 4,000.00 | | | $     19,225.80 |
| 68738 08D | 4/1/2019 | OPEN | Billing | 0068738 08D I 01 AA | 2019.04_APR'19_inc_MONTHLY | 4,000.00 | | | $     23,225.80 |
| | | | | | | | | $     23,225.80 |
| | | | | | | | | $     23,225.80 |
| | | | | | | | | $     23,225.80 |
| | | | | | | | | $     23,225.80 |
| | | | | | | | | $     23,225.80 |
| | | | | | | | | $     23,225.80 |

| | | | | | | Due Sears | $ | 23,225.80 |

**Please remit Total Amt Due Sears as shown above to the following address:**

Sears, Roebuck & Co.
12670 Collections Drive
Chicago, IL  60693

**Please include the  following information on your remittance:**      Leases: Lease Key- _HENRY SHAHERY _ Statement of Account

Should you have any questions, please contact Rohini Balu at (855) 646-0520 Extn 551-1116
or email lasleasear@searshc.com.

| Rent and Opex Schedule Per Lease | | |
|---|---|---|
| Month | Lease Rent | Op Ex Escrow |
| Jan-18 | | |
| Feb-18 | | |
| Mar-18 | | |
| Apr-18 | | |
| May-18 | | |
| Jun-18 | | |
| Jul-18 | | |
| Aug-18 | $ 80,516.30 | $ 15,659.32 |
| Sep-18 | $ 156,000.00 | $ 30,339.92 |
| Oct-18 | $ 156,000.00 | $ 30,339.92 |
| Nov-18 | $ 156,000.00 | $ 30,339.92 |
| Dec-18 | $ 156,000.00 | $ 30,339.92 |
| Jan-19 | $ 156,000.00 | $ 30,339.92 |
| Feb-19 | $ 156,000.00 | $ 30,339.92 |
| TOTAL | $ 1,016,516.30 | $ 197,698.84 |

| Tenant Escrow Deposits | | |
|---|---|---|
| Tenant Escrow Money Deposited | Comments | |
| $ 1,200,000.00 | Tenant escrow for construction work not subject to rent offset | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| $ 505,249.00 | Tenant escrow deposit for change order to original scope (subject to rent offset) | |
| | | |
| $ (1,631,699.00) | Payment made from escrow to JS Construction | |
| $ 300,000.00 | Escrow Deposit for inclosure work | |
| | | |
| | | |
| $ 373,550.00 | Current Escrow Balance | |

| JS Construction Work | | |
|---|---|---|
| Month | Amount Billed | Comments |
| Jan-18 | $ 1,200,000.00 | (original work, not subject to rent offset) |
| Feb-18 | | |
| Mar-18 | | |
| Apr-18 | | |
| May-18 | | |
| Jun-18 | | |
| Jul-18 | | |
| Aug-18 | $ 505,249.00 | (change order, subject to rent offset) |
| Sep-18 | | |
| Oct-18 | $ (1,631,699.00) | (disbursement) |
| Nov-18 | $ 300,000.00 | (inclosure work, subject to rent offset) |
| Dec-18 | | |
| Jan-19 | | |
| Feb-19 | | |
| TOTAL | $ 373,550.00 | |

| Rent Offset | | |
|---|---|---|
| Month | Rent Offset | Comments |
| STARTING BALANCE | $ 805,249.00 | (starting balance is change order and inclosure work) |
| Aug-18 | $ (80,516.30) | |
| Sep-18 | $ (156,000.00) | |
| Oct-18 | $ (156,000.00) | |
| Nov-18 | $ (156,000.00) | |
| Dec-18 | $ (156,000.00) | |
| Jan-19 | $ - | |
| Feb-19 | $ - | |
| TOTAL | $ 100,732.70 | *Total to be deducted from January 2019 rent |

| January Rent Owed | |
|---|---|
| January 2019 Rent | $ 156,000.00 |
| Minus Rent Offset | $ (100,732.70) |
| Total Due | $ 55,267.30 |

Tenant did not pay rent for the month of January 2019. Our analysis shows that tenant was entitled to receive a $100,732.70 January rent credit, making their total due $55,267,30 as shown in the January Rent Owed Box. Full rent has been received for February 2019.