**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:                                                                                    Chapter 11

**SEARS HOLDING CORPORATION, et al.,**                    Case No. 18-23538 (RDD)

Debtors.[1]                                                                       **(Jointly Administered)**

------------------------------------------------------------------------x

**STIPULATION AND AGREED ORDER REGARDING THE REPORT OF THE CONSUMER PRIVACY OMBUDSMAN (GLOBAL ASSET SALE TRANSACTION)**

---

This *Stipulation and Agreed Order Regarding the Report of the Consumer Privacy Ombudsman (Global Asset Sale Transaction)* (the "Stipulation"), by and among Sears Holdings Corporation ("Sears") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), Elise S. Frejka as the Consumer Privacy Ombudsman, and Buyer as of this 9th day of August, 2019.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Debtors also include SHC Licensed Business LLC (3718), filed as Case No. 18-23616 and SHC Promotions LLC (9626), filed as Case No. 18-23630 (the "**Additional Debtors**"). The Additional Debtors each filed a motion in their respective chapter 11 cases requesting joint administration with the Debtors for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

WHEREAS, on December 17, 2018, the Consumer Privacy Ombudsman[2] filed the *Report of the Consumer Privacy Ombudsman (Sale of Sears Home Improvement Business)* [ECF No. 1273] ("**SHIP Report**"), to assist the Bankruptcy Court in its consideration of the facts, circumstances and conditions of the proposed sale of the Sears Home Improvement Business to Service.com;

WHEREAS, the proposed sale of the Sears Home Improvement Business to Service.com was never completed;

WHEREAS, on February 4, 2019, the Ombudsman filed the *(Corrected) Report of the Consumer Privacy Ombudsman (Global Asset Sale Transaction)* (the "**CPO Report**"), to assist the Bankruptcy Court in in its consideration of the facts, circumstances, and conditions of the proposed sale (the "**Global Asset Sale**") of substantially all of the assets of the Debtors, to Buyer pursuant to the Asset Purchase Agreement dated as of January 17, 2019 (as amended from time to time);

WHEREAS, the CPO Report provided *inter alia* that "To the extent the Sears Home Improvement Business ("**SHIP**") is included among the assets subject to the Global Asset Sale, the Ombudsman adopts in full her report dated December 17, 2018 [ECF No. 1273]" (¶ 38);

WHEREAS, the CPO Report provided *inter alia* that "The Ombudsman proposes, and the Proposed Buyer has agreed, to work with the Ombudsman to implement [the procedures in the CPO Report] over the next six (6) months, subject to extension" (¶ 49);

WHEREAS, on February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances,*

---

[2] All capitalized terms used but not defined in this Motion shall have the meaning set forth in the Sale Order (as defined herein).

*(III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* [ECF No. 2507] (the "**Sale Order**");

WHEREAS, on February 11, 2019, the Global Asset Sale was successfully completed, and included the sale of the Sears Home Improvement Business to Buyer;

WHEREAS, the Parties have concluded that, given SHIP's relationship to other business units purchased by Buyer (including Sears Home Services, of which SHIP is a part), and given the overlap in the customers of SHIP and such business units, the application of the terms of the SHIP Report to Buyer's operation of SHIP would create inefficiencies and potentially confuse consumers;

WHEREAS, the Parties desire to extend the time, as contemplated under paragraph 49 of the CPO Report, for implementation of the procedures in the CPO Report;

WHEREAS, the Parties have identified several litigation holds applicable to Customer Data;

**NOW THEREFORE**, based upon the foregoing recitals, which are incorporated as though fully set forth herein, it is hereby Stipulated and Agreed, and upon Court approval it shall be ordered, as follows:

1. Paragraph 38 of the CPO Report shall be inapplicable to the Global Asset Sale to the Buyer and is superseded by the terms of this Stipulation;
2. The assets of the Sears Home Improvement Business shall be subject to the same recommendations as the Sears Home Services business, as described in paragraphs 25 to

27 of the CPO Report; provided that paragraphs 25 to 27 of the CPO Report shall be amended as shown in **Exhibit 1** hereto, to read as follows:

**Sears Home Services (including the Sears Home Improvement Business)**

25. Sears Home Services, a division of the Debtors, provides consumers with on demand appliance repair and appliance and home warranties, as well as home improvement services (which are provided by a unit of Sears Home Services known as the Sears Home Improvement Business). Like Sears Automotive, Sears Home Services maintains its own database to track warranties, warranty renewals, repairs, service contracts, and service orders and Sears Home Services has legacy records dating back decades.

26. Sears Home Services has articulated to the Ombudsman strong business needs for Personally Identifiable Information that may have been collected under the Debtors' predecessor privacy policies related to delivering effective service, maintenance, and repair work to its customers. These reasons include the ability to service appliances purchased from the Debtors, the general lifespan of appliances, and recall and regulatory issues.

27. After discussions with the Debtors, the Ombudsman recommends that all Sears Home Services customer records be transferred to the Proposed Buyer except for consumer records related to products or services purchased on or before January 1, 2006; provided, however, that the Debtors may transfer to the Proposed Buyer Personally Identifiable Information and related customer files for products or services purchased earlier than December 31, 2006 if such product or service is (i) currently under warranty or a service

        contract; (ii) eligible to renew a service contract; (iii) subject to a lifetime warranty; or (iv) the consumer has an active subscription for parts or services. In addition, the Ombudsman recommends that consumers receive notification, via email, to the extent email addresses are available, that (i) the Global Asset Sale occurred; (ii) Personally Identifiable Information has been transferred to the Proposed Buyer as part of the Global Asset Sale; and (iii) the Proposed Buyer will adhere to the Privacy Policy or a privacy policy that is at least as protective of consumer privacy.

3. The time period during which Buyer will work the Ombudsman to implement the procedures in the CPO Report, including with respect to providing notifications to consumers, in accordance with paragraphs 21, 24, 27 and 33 of the CPO Report, that the Global Asset Sale has occurred and that Personally Identifiable Information has been transferred to the Buyer as part of the Global Asset Sale, shall be extended to February 10, 2020; therefore, paragraphs 49, 50 and 51 of the CPO Report shall be amended as shown in **Exhibit 2** hereto, to read as follows:

        49. The implementation of the recommendations contained in this Report will not be complete as of the date of the closing of the Global Asset Sale due to the volume of Personally Identifiable Information implicated and the multiple databases impacted. The Ombudsman proposes, and the Proposed Buyer has agreed, to work with the Ombudsman to implement these procedures over the next twelve (12) months, subject to extension, and file a certificate of completion with the Bankruptcy Court.

50. Notwithstanding anything to the contrary herein, to the extent any Customer Data is subject to litigation holds, such Customer Data (and any Customer Data that may not be separated from such Customer Data without undue burden) shall be retained through the conclusion of any such litigation, and to the extent any of the foregoing Customer Data is required to be purged pursuant to the provisions herein, such purge shall be deferred until such litigation holds are released; provided however, that with respect to any Customer Data that is required to be purged pursuant to the provisions herein, to the extent it is produced to a third party, the producing party shall use reasonable efforts to designate such production "Attorney's Eyes Only," and in no event shall the producing party designate such production anything less than "Confidential."

51. The Ombudsman anticipates that during the implementation process the Proposed Buyer will identify other areas where there is a legitimate business need to transfer previously excluded Personally Identifiable Information. The Ombudsman expects that the scope will be narrow and that the failure to explicitly include a particular category of information was inadvertent given the magnitude of customer data that has been collected, the need to coordinate among many business lines in a short period of time, and other operational realities. However, the Ombudsman respectfully requests that the Bankruptcy Court afford the parties an opportunity to address these issues in a consensual basis as they arise without the need for a further order of the court.

|  |  |
|---|---|
| By: /s/ Elise S. Frejka<br>Elise S. Frejka CIPP/US<br>Frejka PLLC<br>*Consumer Privacy Ombudsman*<br>420 Lexington Avenue – Suite 310<br>New York, NY 10170<br>Direct Dial: (212) 641-0800<br>Direct Fax: (212) 641-0820<br>Email: Efrejka@frejka.com | WEIL, GOTSHAL & MANGES LLP<br><br>By: /s/ Sunny Singh<br>Ray C. Schrock, P.C.<br>Jacqueline Marcus<br>Garrett A. Fail<br>Sunny Singh<br>*Attorneys for Debtors and Debtors in Possession*<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br><br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>By: /s/ Luke Barefoot<br><br>Sean A. O'Neal, Esq.<br>Luke A. Barefoot, Esq.<br>*Attorneys for Transform Holdco LLC*<br>One Liberty Plaza<br>New York, NY 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999 |

**SO ORDERED:**

Dated:  August 20, 2019
       White Plains, New York

/s/Robert D. Drain
THE HONORABLE ROBERT D. DRAIN
UNITED STATED BANKRUPTCY JUDGE

## EXHIBIT 1

### Sears Home Services (including the Sears Home Improvement Business)

25. Sears Home Services, a division of the Debtors, provides consumers with on demand appliance repair and appliance and home warranties, as well as home improvement services (which are provided by a unit of Sears Home Services known as the Sears Home Improvement Business). Like Sears Automotive, Sears Home Services maintains its own database to track warranties, warranty renewals, repairs, service contracts, and service orders and Sears Home Services has legacy records dating back decades.

26. Sears Home Services has articulated to the Ombudsman strong business needs for Personally Identifiable Information that may have been collected under the Debtors' predecessor privacy policies related to delivering effective service, maintenance, and repair work to its customers. These reasons include the ability to service appliances purchased from the Debtors, the general lifespan of appliances, and recall and regulatory issues.

27. After discussions with the Debtors, the Ombudsman recommends that all Sears Home Services customer records be transferred to the Proposed Buyer except for consumer records related to products or services purchased on or before January 1, 2006; provided, however, that the Debtors may transfer to the Proposed Buyer Personally Identifiable Information and related customer files for products or services purchased earlier than December 31, 2006 if such product or service is (i) currently under warranty or a service contract; (ii) eligible to renew a service contract; (iii) subject to a lifetime warranty; or (iv) the consumer has an active subscription for parts or services. In addition, the Ombudsman recommends that consumers receive notification, via email, to the extent email addresses are available, that (i) the Global Asset Sale occurred; (ii) Personally Identifiable Information has been transferred to the Proposed Buyer as part of the Global Asset Sale; and (iii) the Proposed Buyer will adhere to the Privacy Policy or a privacy policy that is at least as protective of consumer privacy.

**EXHIBIT 2**

**IMPLEMENTATION**

49.  The implementation of the recommendations contained in this Report will not be complete as of the date of the closing of the Global Asset Sale due to the volume of Personally Identifiable Information implicated and the multiple databases impacted. The Ombudsman proposes, and the Proposed Buyer has agreed, to work with the Ombudsman to implement these procedures over the next ~~six~~ twelve (~~6~~12) months, subject to extension, and file a certificate of completion with the Bankruptcy Court.

50.  Notwithstanding anything to the contrary herein, to the extent any Customer Data is subject to litigation holds, such Customer Data (and any Customer Data that may not be separated from such Customer Data without undue burden) shall be retained through the conclusion of any such litigation, and to the extent any of the foregoing Customer Data is required to be purged pursuant to the provisions herein, such purge shall be deferred until such litigation holds are released; provided however, that with respect to any Customer Data that is required to be purged pursuant to the provisions herein, to the extent it is produced to a third party, the producing party shall use reasonable efforts to designate such production "Attorney's Eyes Only," and in no event shall the producing party designate such production anything less than "Confidential."

~~50.~~51.  The Ombudsman anticipates that during the implementation process the Proposed Buyer will identify other areas where there is a legitimate business need to transfer previously excluded Personally Identifiable Information. The Ombudsman expects that the scope will be narrow and that the failure to explicitly include a particular category of information was inadvertent given the magnitude of customer data that has been collected, the need to coordinate among many business lines in a short period of time, and other operational realities. However, the Ombudsman respectfully requests that the Bankruptcy Court afford the parties an opportunity to address these issues in a consensual basis as they arise without the need for a further order of the court.