David W. Dykhouse (dwdykhouse@pbwt.com)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Tel:  (212) 336-2000
Fax:  9212) 336-2222

**Hearing Date and Time:**
**August 22, 2019, 10:00 a.m.**

Thomas J. Flynn (tflynn@larkinhoffman.com)
LARKIN HOFFMAN DALY & LINDGREN, LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437-1060
Tel:  (952) 835-3800
Fax:  (952) 896-3333

*Attorneys for MOAC Mall Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | Case No. 18-23538 (RDD) |
| | ) | |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors.[1] | ) | |

**MOAC MALL HOLDINGS LLC'S**
**REPLY OBJECTING TO TRANSFORM HOLDCO LLC'S MOTION TO**
**(A) STRIKE MOAC'S JULY 8 SUPPLEMENTAL OBJECTION AND**
**(B) PERMIT LATE RESPONSES TO REQUESTS FOR ADMISSIONS**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows:  Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## INTRODUCTION

Transform Holdco LLC ("Transform") belatedly asks the Court to strike the July 8, 2019
Objection of MOAC Mall Holding LLC's ("MOAC"), and undo Transform's admissions of
material facts that resulted from Transform's own failure to serve timely responses to MOAC's
Requests for Admissions. Transform's final-hour attempt should be denied.

Tranform's request to strike MOAC's July 8, 2019 Objection should be denied because
the objection was timely.  The objection was filed by MOAC  on July 8, 2019, 45 days prior to
the pending hearing scheduled on the relevant issues for August 22, 2019, and the objection does
not prejudice Transform in any way. Transform's admissions should remain conclusively
admitted because untimely amendment will not promote presentation of the merits, is highly
prejudicial to MOAC, and would require the requests to be deemed admitted anyways due to
Transform's insufficient responses.

Finally Transform's Motion should also be denied because it is inexcusably untimely,
filed only six days before the August 22, 2019 hearing.

## FACTS

1.      On April 19, 2019, the debtors filed a notice of assumption and assignment of
various leases, including the MOAC Lease.[2] (ECF No. 3298.)

2.      On May 2, 2019 MOAC filed an objection to the debtors' notice of assignment of
the Lease. MOAC specifically objected (a) on the basis that the debtors and Transform fail to
provide adequate assurance required under Section 365(b)(3)(A), (C), and (D); and (b) to
Transform's cure amount. (ECF No. 3501.) MOAC maintains these objections, which are now
scheduled for the requested evidentiary hearing on August 22, 2019.

---

[2] Except as otherwise defined, all definitions are used as defined in MOAC's July 8 Objection.
    (ECF No. 4450.)

3.      MOAC served the Debtors and Transform with interrogatories and requests for

admissions on May 17, 2019. (*See* 10-MOAC[3] (Requests for Admissions from Transform

("Transform RFA") at MOAC000067 (containing counsel for Transform's acknowledgment of

service).) The debtors, Transform, and MOAC agreed that all responses to the requested

discovery were due on or before July 2, 2019. (ECF No. 4354, ¶ 8.) While the debtors served

their discovery objections and responses on July 2, 2019 (6-MOAC at 11; 9-MOAC at 15),

Transform failed to respond by the deadline. (*See* 11-MOAC[4] ("Transform's Discovery

Responses") (acknowledging the missed deadline).)

4.      MOAC filed a supplemental objection, on July 8, 2019 (the "July 8 Objection"),

updating the Court on newly discovered facts, but maintaining the same objections stated in its

May 2, 2019 objection. (ECF No. 4450.)

5.      At 7:47 p.m. later that same day, Transform filed a second reply to MOAC's

objections ("Transform's Second Reply") (ECF No. 4454.)

6.      Eighteen days later, on July 26, 2019, Transform served its untimely responses to

MOAC's requests for admissions. (11-MOAC.)

7.      On August 16, 2019, another 21 days after serving its untimely responses,

Transform filed the present motion to strike the July 8 Objection—a mere six days before the

purported hearing on the motion ("Transform's Motion") (ECF No. 4867). Transform's Motion

also includes a reply to the July 8 Objection ("Transform's Third Reply").

---

[3] Exhibit 10-MOAC is a stipulated exhibit for the August 22, 2019 hearing regarding the
    assumption and assignment of the MOAC Lease. A copy of this exhibit is attached to this
    objection as a courtesy.

[4] Exhibit 11-MOAC is a stipulated exhibit for the August 22, 2019 hearing regarding the
    assumption and assignment of the MOAC Lease. A copy of this exhibit is attached to this
    objection as a courtesy.

8.      MOAC submits this objection to Transform's motion, reserving arguments regarding Transform's Third Reply for the evidentiary hearing scheduled for August 22, 2019 at 10:00 a.m. at which the issues are already scheduled to be considered.

## DISCUSSION

9.      Transform's motion should be denied in its entirety because none of its arguments have merit and Transform's motion is untimely. First, MOAC's July 8 Objection was timely and should not be struck because it was filed 45 days before the August 22, 2019 hearing and raises no new issues prejudicial to Transform. Second, Transform's request to withdraw or amend its admissions should be denied, because Transform wholesale failed to respond in a timely manner, and the responses it does provide warrant deeming them admitted anyways. Third, Transform's motion to strike and motion to amend or withdraw it admissions should be denied because it was filed six days before the August 22, 2019 hearing.

10.     As this objection was being finalized, Transform filed an amended motion adding MOAC Holding LLC's pre-hearing brief to the list of the filings that Transform wants struck from the record. (ECF No. 4903, with reference to ECF No. 4899.) As acknowledged by Transform, the pre-hearing brief adds no new objections for the upcoming hearing. The pre-hearing brief is not an objection and is not untimely or prohibited under the rules, it is merely provided to clarify and crystalize the issues before the Court at the August 22 hearing. To the degree that it is necessary, MOAC will otherwise respond to this addition to Transform's Motion at the hearing.

**I.      MOAC's July 8 Objection was filed 45 days before the assignment hearing.**

11.     Transform's motion to strike MOAC's July 8 Objection is easily resolved by simple math. The Court's amended case management order requires parties to file "Objections" at least seven days prior to the applicable hearing. (ECF No. 405, ¶ 29.) The objection that

Transform seeks to strike was filed on July 8, 2019. (ECF No. 4450.) The hearing regarding the contested assumption and assignment of the MOAC Lease, which is the subject of the July 8 Objection, is scheduled for August 22, 2019. Accordingly, the July 8 Objection was timely filed 45 days prior to the applicable hearing.

12.     The July 8 Objection does not prejudice Transform in any way because it merely updates the Court on newly discovered facts, which are already admissible at the August 22, 2016 hearing anyways, and raises no new objections. Transform readily concedes that the July 8 Objection raises no new objections. (ECF No. 4867 at 3.) Transform also had over a month to reply to *and did reply* to the July 8 Objection in Transform's Third Reply. (ECF No. 4867.) The newly discovered facts identified in the July 8 Objection will be raised in regards to the August 22, 2019 hearing anyways, and striking the July 8 Objection from the record cannot strike the underlying facts from existence. The July 8 Objection merely gave Transform advance notice of the facts in the objection, and alerted Transform to its failure to provide timely answers to request for admissions (which Transform is now attempting to amend in the motion currently before the Court).

13.     Transform argues that the applicable hearing should be a July 11, 2019 hearing. Ironically, this would also render Transform's Second Reply untimely because it was filed at 7:47 p.m. on July 8, 2019 (ECF No. 4454), whereas the deadline was noon that day. (ECF No. 405, ¶ 30 (setting the "Reply" deadline as noon *at least* two business days before the applicable hearing).) A filing party's diligence and good cause are relevant factors when considering whether to strike untimely filings. *See In re Worldcom, Inc. Securities* Litigation, 456 F. Supp. 2d 508, 513 (S.D.N.Y. 2006) (considering these factors in considering an untimely filed motion). Accordingly, the factors for enlarging a timeline, including excusable neglect, newly discovered evidence, prejudice to other parties, or other reasons justifying relief, are relevant. *See In re U.S.*

*Lines, Inc.*, 1999 WL 225533 at \*4–5 (S.D.N.Y. April 19, 1999) (discussing these factors in considering a late-filed motion).

14.     The timeline advocated by Transform would have rendered it impossible for MOAC to notify the Court of the newly discovered facts, because Transform's failure to respond to requests for admissions could only be ascertained on July 3, 2019. The July 8 Objection was filed on the very next business day following the July 4 holiday weekend. Accordingly, even if the July 11 date is applicable to Transform's Motion, the July 8 Objection should be permitted under the excusable neglect rule because MOAC filed it at the first possible day and only one business day after the deadline. In contrast, Transform's Second Reply—also untimely filed if the July 11 hearing date was to apply—would be inexcusable because it responds to issues raised over a month before, on May 15, 2019. (ECF No. 4454 (replying to ECF No. 3926).) Accordingly, if the July 11 hearing date was to apply to the deadlines at issue, Transform's Second Reply should be struck as untimely.

**II.     Transform should not be allowed to withdraw or amend it admissions because its responses are both untimely and insufficient.**

**A.     Admissions Implicated**

15.     As an initial matter, it is important to identify which admissions are actually placed at issue by Transform's Motion. Transform's untimely responses actually admitted a majority of the Requests.  Transform directly admitted Request Nos. 1, 2, 3, 4, 8, 10, 11, and 12. Transform has not attempted to change those answers or otherwise withdraw its admissions to those requests.

16.     Instead, Transform's Motion relates to Request No. 13, to which it served an untimely denial, and Request Nos. 5, 6, 7, 9, 14, and 15, to which Transform provided untimely objections or otherwise equivocal answers.  The requests in question asked Transform to:

Admit that the financial condition of the Assignee is not similar to or better than the financial condition of Sears on or about May 30, 1991. (RFA No. 5)

Admit that that operating performance of the Assignee is not similar to or better than the operating performance of Sears on or about May 30, 1991. (RFA No. 6)

Admit that neither you nor, to the best of your knowledge, the Debtor have provided information regarding the financial condition or operating performance of Sears on or about May 30, 1991 to MOAC or the Court in support of the pending motion to assume and assign the Lease. (RFA No. 7).

Admit that you do not currently plan for Transform Leaseco LLC to operate as a retail distributor. (RFA No. 9).

Admit that you have not provided any assurance that all three floors of the Leased Space will be open to Mall of America customers for retail shopping within a reasonable period if the Court approves the pending motion to assume and assign the Lease. (RFA No. 13).

Admit that assumption and assignment of the Lease is not necessary to support Transform's retail operations for Transform to maintain its financial condition. (RFA No. 14)

Admit that Transform's retail operations are not sufficient to maintain Transform's financial condition, which is dependent upon assumption and assignment of the lease. (RFA No. 15).

**B.      Transform Should Not Be Permitted to Withdraw or amend its Deemed Admissions**

17.      Bankruptcy Rule 7036 incorporates Rule 36 of the Federal Rules of Civil Procedure into bankruptcy adversary proceedings. Fed. R. Bankr. P. 7036. Rule 36(a)(1) provides that a party may serve upon any other party a written request to admit the truth of any matters relating to facts, the application of law to fact, or opinions about either. A matter is automatically omitted unless the responding party serves an answer within 30 days, or such other time set by stipulation or court order.  Fed. R. Civ. P. 36(a)(3). A matter admitted under the terms of Rule 36 is "conclusively established unless the court, on motion, permits the admission

to be withdrawn or amended." Fed. R. Civ. P. 36(b). The rule is a tool for narrowing or

eliminating issues in a case. *Dubin v. E.F. Hutton Group, Inc.*, 125 F.R.D. 372, 375 (S.D.N.Y.

1989).

18.    In evaluating whether to permit or deny the amendment or withdrawal of an

admission, courts consider (a) whether the presentation of the merits will be aided **and** (b) no

prejudice will result to the party obtaining the admission. *Donovan v. Carls Drug Co., Inc.*, 703

F.2d 650, 652 (2d Cir. 1983).  The court is granted virtually unlimited discretion to deny the

amendment or withdrawal of an admission, and "[t]he court is not required to make an exception

to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception

to the rule." *Id.*[5]

### 1.    The untimely amendment will not promote the presentation of the merits of the action

19.    As to the first factor, Transform contends that withdrawing the admissions would

promote the presentation of the merits because "the admissions are contrary to the Lease and

thus not relevant."  Reply at p. 7 ¶ 4.  However, Transform fails to identify *how* the admissions

are contrary to the Lease.

20.    Certainly, whether Transform has similar financial condition and operating

performance to Sears in 1991 is not controlled by the Lease (*see* RFA Nos. 5 and 6).  Nor is the

---

[5] There is another line of cases holding that the "merits and prejudice" test of Rule 36(b) is only applicable if the party served a timely response to the request for admission.  Under this alternative test, a party must satisfy the more rigorous standard of Fed. R. Civ. P. 6(b)(1)(B) and demonstrate "excusable neglect" for the failure to serve a timely responses.  *See Weinberger v. Provident Life & Cas. Ins. Co.*, 97CIV.9262(JGK)(HBP), 1999 WL 225537, at *1 (S.D.N.Y. Apr. 19, 1999)("Granting relief pursuant to Rule 36(b) where a party has, without excusable neglect, failed to comply with Rule 36(a)'s requirement of a response within thirty days, virtually eliminates the thirty-day time limit in its entirety.") Other than claiming that its failure to respond was "inadvertent," Transform has not attempted to provide any evidence of excusable neglect necessary to satisfy Rule 6(b).  The court could, and MOAC submits should, apply this alternative standard and deny Transform's attempt to excuse its failure to serve timely responses.

issue of whether Transform Leaseco LLC will operate as a retail distributor controlled by the Lease (*see* RFA No. 9). A determination of whether all three floors will be open for retail shopping within a reasonable period is not controlled by the Lease (*see* RFA No. 13). A determination of whether the Lease is necessary to support Transform's retail operations or maintain its financial condition has nothing to do with the Lease (*see* RFA No. 14 and 15).

21.    Moreover, most of Transform's untimely responses do not deny the fact requested to be admitted, but rather consist of vague objections or equivocal references to other documents from which Transform claims the answer can be determined. If Transform truly intended to contest the accuracy of any of the facts MOAC requested to be admitted, it needed to do so specifically in accordance with the rules. Allowing the untimely, vague and equivocal responses to replace the clear admissions of the facts under Rule 36(a)(3) will not promote the presentation of the merits of this action, and Transform's request to withdraw its deemed admissions should be denied.

## 2.    MOAC will be prejudiced by an untimely amendment of the Admissions

22.    Turning to the second factor, the presence of prejudice to MOAC if Transform is allowed to amend or withdraw its admissions requires the motion to be denied.

### a.    Transform Failed to Answer Interrogatories Supporting Denials of Admissions

23.    Along with its requests for admissions, MOAC served interrogatories on Transform that required Transform to explain its response to each request for admission that it did not fully admit. Transform failed to answer this interrogatory, instead stating "the answer to this Interrogatory may be derived from inspection of business records produced to date and the Buyer's reply." In *Wienberger*, a virtually identical failure to provide complete answers to interrogatories concerning denials was held to constitute prejudice sufficient to deny a motion to

amend admissions.  *Weinberger v. Provident Life & Cas. Ins. Co.*, 97CIV.9262(JGK)(HBP),

1999 WL 225537, at *2 (S.D.N.Y. Apr. 19, 1999) (affirming denial of request to amend

admissions on the grounds that the party seeking amendment failed to fully answer

interrogatories calling for denials to be explained).

### b.    MOAC Prepared its Witness Testimony on Reliance on the Admissions

24.    Transform's responses to the Requests for Admissions were due on July 2, 2019.

The untimely responses were not served until July 26, 2019.  Transform did not bring a motion

to withdraw or amend its admissions until August 16, 2019.  By the time Transform served its

motion, MOAC had already prepared its witness declarations and selected the exhibits it planned

to use at the August 22, 2019 hearing.  The procedural posture is akin to if Transform waited

until the mid-point of a trial to seek to withdraw or amend its admissions.  Having relied on

Transform's admissions for its witness testimony and the decisions it made in the presentation of

its case, MOAC would be severely prejudiced if Transform was allowed to "pull the rug out" and

raise an untimely dispute over facts which were considered settled by operation of Rule 36(a)(3).

### C.    To the extent Transform's untimely Responses to the Requests for Admission are considered, Several are Insufficient and should be deemed admitted

25.    To the extent the court is inclined to allow Transform's untimely responses, it

should also evaluate whether any of the requests should be deemed admitted on grounds of

insufficiency.  Fed. R. Civ. P. 36(a)(6).  Because Transform did not bring a motion to amend or

withdraw its admissions until the eve of the hearing, MOAC had no reason or occasion to bring

an earlier motion regarding the sufficiency of Transform's admissions.  There are numerous

issues with transform's untimely responses that render them insufficient under Fed. R. Civ. P.

36.

26.    First, Transform relies extensively, and in some cases exclusively, on general objections which are prohibited by both the federal rules of civil procedure and the local rules. "[O]bjections must be directed and specifically related to a specific request. General objections without any reference to a specific request to admit are meritless." *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 78 (N.D.N.Y. 2003); *Hallmark Licensing LLC v. Dickens Inc.*, 17CV2149SJFAYS, 2018 WL 6573435, at *11 (E.D.N.Y. Dec. 13, 2018); *accord* Local Rule 7036-1.

27.    Second, as to those requests that were neither admitted nor denied, Transform has failed to "state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4).  For several requests, Transform states "the financial condition or operating performance of Sears on or about May 30, 1991 is within the public domain or is otherwise equally available to MOAC and Buyer, and MOAC can therefore draw its own conclusions." Response to RFA No. 5, 6, and 7.  But of course, MOAC is not interested in its own conclusions about the financial condition and operating performance of Sears. The entire point of a Request for Admission is to obtain Transform's opinion of whether the two are similar, something Transform fails to provide when it directs MOAC to draw its own conclusions.

28.    Third, Transform's failure to serve timely responses to MOAC's requests for admissions constituted a waiver of any available objections to such requests.  "The law is well settled that a failure to assert objections to a discovery request in a timely manner operates as a waiver." *Eldaghar v. City of New York Dept. of Citywide Admin. Services*, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003).  Thus, the court should deem admitted any requests to which Transform merely objected and did not also respond with an express denial or statement that it could not truthfully admit or deny the request.

29.     Given the lack of effort Transform has put into providing responses and objections that fairly meet the substance of the requests submitted by MOAC, the Court should declare Transform's responses and objections insufficient, and deem them admitted, particularly given Transform's failure to timely respond in the first instance.

**III.     Transform's Motion is untimely and should be denied.**

30.     Transform's Motion is, itself, untimely and should be denied and stricken as such. The Court's amended scheduling order requires motions to be filed "at least fourteen (14) calendar days before the applicable hearing date." (ECF No. 405, ¶ 26.) Transform's Motion was filed on August 16, 2019—six days before the hearing date of August 22, 2019, identified on the header of the motion. (ECF No. 4867.) Transform does not request expedited consideration of the motion, as permitted by the scheduling order. (ECF No. 405, ¶ 24.) It is not clear that Transform even requested a hearing date, as required by the scheduling order (*Id.*, ¶ 22). Instead, Transform appears to have just tacked its motion onto the existing August 22, 2019 hearing date for the merits of this dispute.

31.     Transform waited to file its motion for over a month after allegedly learning of the facts underlying its motion. Transform waited until it was too late for MOAC to adjust its pre-hearing submissions to take into account Transform's requested relief. MOAC is highly prejudiced by Transform's inexcusable, untimely filed motion.  As a result, Transform's motion should be denied.

## CONCLUSION

32.    Based on the foregoing, Transform's untimely filed motion should be **DENIED** in its entirety.


Dated:  August 20, 2019              Respectfully submitted,
         Minneapolis, Minnesota

                                    */e/Thomas J. Flynn*
                                    Thomas J. Flynn
                                    Admitted *pro hac vice* on December 26, 2018
                                    Alexander J. Beeby
                                    *Pro hac vice* pending
                                    Larkin Hoffman Daly & Lindgren, Ltd.
                                    8300 Norman Center Drive
                                    Suite 1000
                                    Minneapolis, Minnesota  55437-1060
                                    (952) 835-3800
                                    tflynn@larkinhoffman.com


Dated:  August 20, 2019              */e/David W. Dykhouse*
                                    David W. Dykhouse
                                    Patterson Belknap Webb & Tyler LLP
                                    1133 Avenue of the Americas
                                    New York, New York  10036-6710
                                    (212) 336-2000
                                    dwdykhouse@pbwt.com

                                    *Attorneys for MOAC Mall Holdings LLC*

4812-0409-2577, v. 2

David W. Dykhouse (dwdykhouse@pbwt.com)
PATTERSON BELKNAP WEBB & TYLER, LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Tel: (212) 336-2000
Fax: 9212) 336-2222

Thomas J. Flynn (tflynn@larkinhoffman.com)
LARKIN HOFFMAN DALY & LINDGREN, LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437-1060
Tel: (952) 835-3800
Fax: (952) 896-3333

*Attorneys for MOAC Mall Holding LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.*, | (Jointly Administered) |
| Debtors.[1] | |

**MOAC MALL HOLDINGS LLC'S REQUESTS FOR ADMISSION FROM**
**TRANSFORM HOLDCO LLC**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**Exhibit**
**10-MOAC**

MOAC000122

MOAC Mall Holdings LLC ("MOAC"), by and through its undersigned counsel, hereby requests and demands that Transform Holdco LLC (the "Buyer" or "Transform"), a party to the contested motion in the above-captioned case of the Debtor to assume and assign certain designatable leases (Doc. No. 3298), as evidenced by and acknowledged in Transform Holdco LLC's Omnibus Reply in Support of Assumption and Assignment of Designated Leases (Doc. No. 3654), admit or deny the following requests for admission within thirty days after service under Bankruptcy Rule 7036, incorporating Fed. R. Civ. P. 36, and permitted in this contested matter by Bankruptcy Rule 9014. MOAC will seek an award of expenses, including attorney fees, under Bankruptcy Rule 7036, incorporating Fed. R. Civ. P. 37, incurred in proving the truth of any of the requests that are denied.

## DEFINITIONS

1. "And" and "or" refer to both their conjunctive and disjunctive meanings.

2. "All" and "any" mean "each and every" as well as "any one."

3. "Assignee" means Transform Leaseco LLC or any other intended assignee, pursuant to the Debtor's pending motion to assume and assign the Lease, and any other persons or entities acting on its behalf, including but not limited to its affiliates, parents, subsidiaries, successors, predecessors, current and former employees, representatives, independent contractors, associates, attorneys, accountants, consultants, advisors, agents, owners, officers, and directors.

4. "Communication" means any contact whatsoever and any transmission or exchange of words, numbers, graphic material, or other information, either orally, electronically, or in writing, whether made, received, or participated in, and includes without limitation any conversation, correspondence, letter, note, memorandum, inter- or intra-office correspondence, telephone call, telegraph, telegram, telex, telecopy, facsimile, electronic mail, text message,

MOAC000123

internet communication, telefax, cable, electronic message, tape recording, discussion, face-to-face meeting, or conference or meeting of any kind whether in person, by audio, video, telephone, or in any other form.

5.      "Buyer," "Transform," "you," or "your" means Transform Holdco LLC and any other persons or entities acting on its behalf, including but not limited to its affiliates, parents, subsidiaries, successors, predecessors, current and former employees, representatives, independent contractors, associates, attorneys, accountants, consultants, advisors, agents, owners, officers, and directors.

6.      "Debtor," "Debtors," or "Sears" means any of the debtors in any of the cases jointly administered with the above captioned Chapter 11 case or identified in footnote 1 of this document and any other persons or entities acting on its behalf, including but not limited to its affiliates, parents, subsidiaries, successors, predecessors, current and former employees, representatives, independent contractors, associates, attorneys, accountants, consultants, advisors, agents, owners, officers, and directors.

7.      "Mall of America" means the mall in Bloomington, Minnesota, popularly known as the Mall of America®.

8.      "MOAC" means MOAC Holdings LLC and any other persons or entities acting on its behalf, including but not limited to its affiliates, parents, subsidiaries, successors, predecessors, current and former employees, representatives, independent contractors, associates, attorneys, accountants, consultants, advisors, agents, owners, officers, and directors.

9.      The "Lease" means the lease between Sears and MOAC, identified with Store # 1722 on Doc. No. 3654-1 in the above captioned matter.

10.      The "Leased Space" means the space subject to the Lease.

MOAC000124

11.     "Relating to" means to have to do with, to be of importance to, to involve, or in some manner, direct or indirect, to evidence, define, describe, or explain. The phrase is intended broadly, but not in a way designed to seek information that is irrelevant, or beyond the scope authorized by Fed. R. Civ. P. 26. Any objection on the ground that the request is overbroad, based solely on the use of one or the other of these terms, is inappropriate because that meaning is not intended. The term should be understood and read in its common, dictionary-sense meaning.

### INSTRUCTIONS

The following instructions apply to each specific request for admission unless otherwise explicitly stated.

1.     You must specifically admit or deny each request; any request to which you do not respond will be deemed admitted.

2.     If you cannot admit or deny a request, you must set forth the reasons why you cannot do so.

3.     If you respond to a request with anything other than an unqualified admission, you must set forth any objections to the request.

4.     A denial shall fairly meet the substance of the requested admission.

5.     When good faith requires you to qualify your answer, or deny only part of a request, you must specify the part of the request that is admitted and qualify or deny the remainder.

6.     You may not give lack of information or knowledge as a reason for failing to admit or deny a request, unless you state that you have made a reasonable inquiry and the information known or readily obtainable by you is insufficient to enable you to admit or deny the request.

MOAC000125

7.    You may not object to a request solely on the grounds that the request presents a genuine issue of material fact for trial.

8.    The singular and masculine form of a noun or pronoun includes the plural, feminine, or neuter form, where appropriate.

9.    The past tense includes the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

10.    Unless specifically defined herein, all words and terms used herein shall be construed and interpreted according to ordinary custom, usage, and meaning.

11.    As set forth in Fed. R. Civ. P. 26(e), these requests are deemed to be continuing in nature and you are required to supplement your responses upon receipt or discovery of additional information or documents pertinent to any of the propounded requests.

## REQUESTS FOR ADMISSION

REQUEST NO. 1:

Admit that Mall of America is a mall and shopping center, as shopping center is understood to mean with regard to 11 U.S.C. § 365(b)(3).

REQUEST NO. 2:

Admit that Sears entered into the Lease with MOAC for the Leased Space in Mall of America on May 30, 1991.

REQUEST NO. 3:

Admit that Sears operated a retail store in all three floors of the Leased Space from the date Mall of America opened, on or about August 11, 1992, until the store discontinued operations in connection with the above captioned bankruptcy.

REQUEST NO. 4:

Admit that there is currently no retail or other tenant operating any service open to Mall of America customers in the Leased Space.

MOAC000126

REQUEST NO. 5:

      Admit that the financial condition of the Assignee is not similar to or better than the financial condition of Sears on or about May 30, 1991.

REQUEST NO. 6:

      Admit that the operating performance of the Assignee is not similar to or better than the operating performance of Sears on or about May 30, 1991.

REQUEST NO. 7:

      Admit that neither you nor, to the best of your knowledge, the Debtor have provided information regarding the financial condition or operating performance of Sears on or about May 30, 1991, to MOAC or the Court in support of the pending motion to assume and assign the Lease.

REQUEST NO. 8:

      Admit that the Assignee proposes to operate with a "smaller footprint" of fewer stores, as described in Doc. No. 3654, than the Debtor operated on or about May 30, 1991.

REQUEST NO. 9:

      Admit that you do not currently plan for Transform Leaseco LLC to operate as a retail distributor.

REQUEST NO. 10:

      Admit that any Assignee annual retail sales are less than the annual retail sales of Sears on or about May 30, 1991.

REQUEST NO. 11:

      Admit that neither you nor the Assignee propose to operate any retail store in the Leased Space without subletting or assigning the Lease to another entity.

REQUEST NO. 12:

      Admit that you have not provided to MOAC or the Court the identity, financial condition, or operating performance of any proposed tenant that would operate a retail store in the Leased Space in support of the pending motion to assume and assign the Lease.

REQUEST NO. 13:

      Admit that you have not provided any assurance that all three floors of the Leased Space will be open to Mall of America customers for retail shopping within a reasonable period if the Court approves the pending motion to assume and assign the Lease.

MOAC000127

REQUEST NO. 14:

    Admit that assumption and assignment of the Lease is not necessary to support Transform's retail operations for Transform to maintain its financial condition.

REQUEST NO. 15:

    Admit that Transform's retail operations are not sufficient to maintain Transform's financial condition, which is dependent upon assumption and assignment of the Lease.

Dated:  May 17, 2019         Respectfully submitted,

                    /e/ Thomas J. Flynn
                    Thomas J. Flynn (30570)
                    Larkin Hoffman Daly & Lindgren, Ltd.
                    8300 Norman Center Drive
                    Suite 1000
                    Minneapolis, Minnesota  55437-1060
                    (952) 835-3800
                    tflynn@larkinhoffman.com

                    Admitted *pro hac vice* on December 26, 2018

                    *Attorneys for MOAC Mall Holdings LLC*

MOAC000128

4847-0231-3111, v. 1

MOAC000129

**Beeby, Alexander J.**

| | |
|---|---|
| **From:** | Barefoot, Luke A. <lbarefoot@cgsh.com> |
| **Sent:** | Friday, May 17, 2019 4:00 PM |
| **To:** | Rice, Gina M.; O'Neal, Sean A. |
| **Cc:** | Flynn, Thomas J.; Beeby, Alexander J. |
| **Subject:** | RE: MOAC Mall Holdings LLC's Requests for Admission and Interrogatories  |  SDNY Bankr. Case No. 18-23538 (jointly administered) |

Thank you for the service copies.  I reached out to Tom directly about these untimely pleadings when they hit the docket and look forward to discussing with him.

—

**Luke A. Barefoot**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: jdwulet@cgsh.com
One Liberty Plaza, New York NY 10006
T: +1 212 225 2829
lbarefoot@cgsh.com  | clearygottlieb.com

**From:** Rice, Gina M. [mailto:grice@larkinhoffman.com]
**Sent:** Friday, May 17, 2019 4:56 PM
**To:** Barefoot, Luke A. <lbarefoot@cgsh.com>; O'Neal, Sean A. <soneal@cgsh.com>
**Cc:** Flynn, Thomas J. <tflynn@larkinhoffman.com>; Beeby, Alexander J. <abeeby@larkinhoffman.com>
**Subject:** MOAC Mall Holdings LLC's Requests for Admission and Interrogatories | SDNY Bankr. Case No. 18-23538 (jointly administered)

Dear Messrs. Barefoot and O'Neal,

On behalf of Tom Flynn, attorney for MOAC Mall Holdings LLC, please find attached and served upon you the following:

1.  MOAC Mall Holdings LLC's Requests for Admission from Transform Holdco LLC and
2.  MOAC Mall Holdings LLC's Interrogatories to Transform Holdco LLC.

Thank you,
Gina

**Gina M. Rice**
**Legal Administrative Assistant**
direct | 952-896-3382
fax    | 952-896-3333

8300 Norman Center Drive
Suite 1000
Minneapolis, MN 55437-1060

**Larkin Hoffman**
ATTORNEYS

www.larkinhoffman.com

1

**CONFIDENTIALITY NOTICE:**

INFORMATION IN THIS MESSAGE, INCLUDING ANY ATTACHMENTS, IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE RECIPIENT(S) NAMED ABOVE.  This message may be an Attorney-Client communication from the law firm of Larkin Hoffman Daly & Lindgren Ltd., and as such is privileged and confidential.  If you are not an intended recipient of this message, or an agent responsible for delivering it to an intended recipient, you are hereby notified that you have received this message in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you received this message in error, please notify the sender immediately, delete the message, and return any hard copy print-outs.  No legal advice is being provided or implied via this communication unless you are (1) a client of Larkin Hoffman Daly & Lindgren Ltd., and (2) an intended recipient of this message.

This message may have been sent to you using encrypted delivery. If you reply to an encrypted email, your email provider may deliver the response with encryption. [Forwarding this message may not provide the same encryption safeguards, depending on the email services being used. By doing so, you may unknowingly expose the sensitive content to others via the Internet.]

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities.

MOAC000068



**DLA Piper LLP (US)**
444 West Lake Street
Suite 900
Chicago, Illinois 60606-0089
www.dlapiper.com

Richard A. Chesley
Richard.Chesley@dlapiper.com
T  312.368.3430
F  312.630.5330

July 26, 2019
*VIA UPS*

Thomas J. Flynn
Larkin Hoffman Daly & Lindgren, Ltd.
8300 Norman Center Drive
Suite 1000
Minneapolis, Minnesota  55437-1060

            Re:    **Mall of America / Transform Holdco LLC**

Dear Tom:

It was nice seeing you earlier this week at the settlement meeting. Although it did not end with a deal, we feel significant progress was made, and we look forward to continuing our discussions.

In that vein, we have prepared the enclosed responses to the discovery requests originally served on Transform Holdco LLC.  We did not receive the request until you noted this in your latest Objection, and wanted to provide these to you as soon as possible.  Please let us know if you have any questions.

                            Sincerely,

                            Richard A. Chesley

Enclosures

cc:    Rachel Ehrlich Albanese, Esq.

**Exhibit
11-MOAC**

DLA PIPER LLP (US)
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Telephone: (212) 335-4500
Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese

*Attorneys for Transform Holdco LLC*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

| | |
|---|---|
| In re | : |
| | : **Chapter 11** |
| SEARS HOLDINGS CORPORATION, *et al.*, | : |
| | : **Case No. 18-23538 (RDD)** |
| | : |
| Debtors.[1] | : **(Jointly Administered)** |

-------------------------------------------------------- x

## TRANSFORM HOLDCO'S OBJECTIONS AND RESPONSES TO
## MOAC MALL HOLDINGS LLC'S INTERROGATORIES TO THE BUYER

Pursuant to Federal Rule of Civil Procedure 33 and Federal Rule of Bankruptcy Procedure

7033, Transform Holdco LLC (the "Buyer") respectfully responds and objects as follows to the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

MOAC000070

Interrogatories issued by MOAC Mall Holdings LLC ("MOAC") to the Buyer on May 17, 2019 (the "Interrogatories").

## RESERVATION OF RIGHTS

1.      The Buyer submits these responses and objections subject to, without intending to waive, and expressly preserving: (a) any objections as to the competence, relevance, materiality, privilege, and/or admissibility into evidence of any response herein; (b) the right to object to other discovery procedures involving or relating to the subject matter of the Interrogatories; and (c) the right to revise, correct, supplement or clarify the responses or any of the objections herein at any time.

2.      The Buyer does not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained in the Interrogatories. By responding to the Interrogatories, the Buyer does not intend to waive, and does not waive, any defenses to the Interrogatories or any other demand or subpoena, or any case brought by MOAC or any other party.

3.      Buyer intends no incidental or implied admissions by its responses to the Interrogatories.  Whether the Buyer has answered or objected to any particular Interrogatory should not be interpreted as an admission that the Buyer accepts or admits the existence of any fact(s) set out or assumed by such Interrogatory, that such answer or objection constitutes admissible evidence or that requests for similar information will be treated in a similar fashion.

## GENERAL OBJECTIONS

These General Objections are incorporation into each specific response below as if they were fully repeated therein.

1.      The Buyer objects to the Interrogatories, including without limitation, the

2

MOAC000071

"Definitions" and "Instructions" therein, to the extent they purport to impose on the Buyer obligations different from, broader than, or otherwise inconsistent with those imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the local rules of the United States Bankruptcy Court for the Southern District of New York, and/or any other rules, applicable case law, or other court orders governing the proper scope, timing, and extent of discovery in this proceeding.   The Buyer further objects to the extent that such definitions or instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific Interrogatory where such enlargement, expansion, or alteration renders the Interrogatory vague, ambiguous, overbroad, unduly burdensome, harassing, or incomprehensible, or where such enlarged, expanded, or altered Interrogatory seeks information that is not relevant to the claim or defense of any party.

2.      The Buyer objects to the Interrogatories to the extent they seek information not in the Buyer's possession, custody, or control and/or not obtainable by means of a reasonably diligent search, including, without limitation, information from documents or things that are not maintained by the Buyers in the ordinary course of business, or that are not reasonably accessible due to undue burden or cost.

3.      The Buyer objects to the Interrogatories to the extent they seek legal conclusions or require the Buyer to form a legal conclusion in order to provide a response.

4.      The Buyer objects to the Interrogatories to the extent they seek information not relevant to the subject matter of this pending matter or to the claims or defenses of any party, not proportional to the needs of the pending matter, or otherwise outside the proper scope of discovery, and/or constitute an improper "fishing expedition."

5.      The Buyer objects to the Interrogatories to the extent they seek the disclosure of

3

MOAC000072

information that was prepared in anticipation of litigation; constitutes attorney work product; discloses the mental impressions, conclusions, opinions, or legal theories of any attorneys for the Buyer; contains confidential attorney-client communications; is subject to a common interest privilege; and/or is otherwise privileged, protected, or subject to exemption from disclosure under any applicable privileges, laws, or rules. If any privileged information is disclosed pursuant to the Interrogatories, the disclosure is inadvertent and the privilege is not waived.

6.     The Buyer objects to the Interrogatories to the extent they seek information beyond the scope of what was maintained in the ordinary course of business, as irrelevant and disproportionate to the needs of the pending matter. The above-captioned matter relates to a 1991 lease regarding the property located at 2000 NE Court, Bloomington Minnesota.

7.     The Buyer objects to the Interrogatories as unduly burdensome to the extent that the information requested is within the knowledge of MOAC or is within the public domain or otherwise equally available to MOAC and the Buyer and thus more conveniently obtained from MOAC's own files or other sources.

8.     The Buyer objects to the Interrogatories to the extent they seek the production of documents in violation of Rule 33 of the Federal Rules of Civil Procedure and Bankruptcy Rule 7033. Further, the Buyer objects to the definition of "document" as overbroad, unduly burdensome and irrelevant as the definition of "document" does not apply to any of MOAC's Interrogatories. The Buyer's responses will comply with the requirements of the Federal Rules of Civil Procedure.

9.     The Buyer objects to the definition of "and" and "or" as vague, ambiguous, overbroad and unduly burdensome.

10.     The Buyer objects to the Interrogatories insofar as they seek the production of "all" or "any" information concerning any given subject, on the ground that it is impracticable and

4

EAST\167943027.3

MOAC000073

otherwise unduly burdensome for the Buyer to locate and review every conceivable responsive document, even documents stored electronically.  The Buyer's responses will comply with the requirements of the Federal Rules of Civil Procedure.

11.    The Buyer objects to the definition of "assignee" as vague, ambiguous, overbroad and unduly burdensome.

12.    The Buyer objects to the definition of "communication" as overbroad and unduly burdensome to the extent it requires the Buyer to search for and produce information conveyed by, *inter alia*, direct conversations, dialogues, discussions, interviews, telegrams, telexes, and cables.

13.    The Buyer objects to the definition of "Buyer," "Sears," "you," or "your" as vague, ambiguous, overbroad and unduly burdensome.

14.    The Buyer objects to the definition of "describe" as vague, ambiguous, overbroad and unduly burdensome.

15.    The Buyer objects to the numerous definitions of "identify" as duplicative, overbroad and unduly burdensome to the extent these definitions impose a burden not required under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, and/or any other rules, applicable case law, or other court orders. The Buyer further objects to the numerous definitions of "identify" as irrelevant and incomprehensible to the extent that they do not pertain to any of MOAC's Interrogatories.  The Buyer's responses will comply with the requirements of the Federal Rules of Civil Procedure.

16.    The Buyer objects to the definition of "lease" as vague, ambiguous, overbroad and unduly burdensome. As relates to the above-captioned matter, the Buyer defines "lease" to refer to the ground lease for the property located at 2000 NE Court, Bloomington Minnesota.

17.    The Buyer objects to the definition of "MOAC" as overbroad and unduly

EAST\167943027.3

MOAC000074

burdensome.  The Buyer further objects to the extent that the definition calls for a legal conclusion.

18.    The Buyer objects to the definition of "person" as vague, ambiguous, overbroad and unduly burdensome.

19.    The Buyer objects to the definition of "relating to" as vague, ambiguous, overbroad, unduly burdensome and irrelevant and incomprehensible to the extent that they do not pertain to any of MOAC's Interrogatories.

20.    The Buyer objects to Instruction number 2 to the extent it imposes a burden not required under the Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, and/or any other rules, applicable case law, or other court orders.  The Buyer's responses will comply with the requirements of the Federal Rules of Civil Procedure.

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

Subject to and without waiving the above General Objections, the Buyer objects and/or responds to each specific Interrogatory as follows:

## INTERROGATORY NO. 1

Identify all persons answering or assisting in answering these interrogatories.

## RESPONSE TO INTERROGATORY NO. 1

Subject to and without waiving the General Objections, Jane Borden answered these Interrogatories with the assistance of Buyer's counsel, [and the responses to the Interrogatories are based upon her personal knowledge and her review of relevant documents provided by the Buyer's agents].

## INTERROGATORY NO. 2

For each request for admission not fully admitted in response to MOAC Mall Holdings LLC's Requests for Admission from Transform Holdco LLC, served with these interrogatories,

6

MOAC000075

please describe the explanation for your response.

**RESPONSE TO INTERROGATORY NO. 2**

In addition to the foregoing General Objections, the Buyer objects to this Interrogatory as irrelevant, vague and ambiguous, unduly burdensome, and disproportionate to the needs of the pending matter.  In accordance with Federal Rule of Civil Procedure 33(d), the answer to this Interrogatory may be derived from inspection of business records produced to date and the Buyer's Reply.

**INTERROGATORY NO. 3**

Describe the financial condition of Sears on or about May 30, 1991.

**RESPONSE TO INTERROGATORY NO. 3**

In addition to the foregoing General Objections, Buyer objects to the extent that the information sought by this Interrogatory regarding the financial condition of Sears on or about May 30, 1991 is within the public domain or otherwise equally available to MOAC and Buyer. *See* Sears, Roebuck & Co., Annual Report (Form 10-K) (Mar. 31, 1992); Sears, Roebuck & Co., Quarterly Report for the Quarterly Period Ended June 30, 1991 (Form 10-Q) (Aug. 16, 1991).

**INTERROGATORY NO. 4**

Describe the operating performance of Sears on or about May 30, 1991.

**RESPONSE TO INTERROGATORY NO. 4**

In addition to the foregoing General Objections, the Buyer objects to the extent that the information sought by this Interrogatory regarding the financial condition of Sears on or about May 30, 1991 is within the public domain or otherwise equally available to MOAC and the Buyer. *See* Sears, Roebuck & Co., Annual Report (Form 10-K) (Mar. 31, 1992); Sears, Roebuck & Co., Quarterly Report for the Quarterly Period Ended June 30, 1991 (Form 10-Q) (Aug. 16, 1991).

EAST\167943027.3

MOAC000076

**INTERROGATORY NO. 5**

Describe the current financial condition of the Assignee.

**RESPONSE TO INTERROGATORY NO. 5**

Subject to and without waiving the foregoing General Objections and in accordance with Federal Rule of Civil Procedure 33(d), the answer to this Interrogatory may be derived from inspection of the consolidated business records and agreements produced to date and the Buyer's Reply.

**INTERROGATORY NO. 6**

Describe the current operating performance of the Assignee.

**RESPONSE TO INTERROGATORY NO. 6**

Subject to and without waiving the foregoing General Objections and in accordance with Federal Rule of Civil Procedure 33(d), the answer to this Interrogatory may be derived from inspection of business records produced to date and the Buyer's Reply.

**INTERROGATORY NO. 7**

Describe Assignee's proposed use for the Leased Space, including, but not limited to the identification of proposed tenant or tenants, which portion, if not all, of the Lease Space each tenant would use, and when that portion would be occupied by the proposed tenant and open to Mall of America customers.

**RESPONSE TO INTERROGATORY NO. 7**

Subject to and without waiving the foregoing General Objections, the Buyer intends to take the assignment of the Lease subject to all of its terms and sublease all three floors of Sears' space at the Mall.

*[Remainder of page left intentionally blank.]*

8

MOAC000077

Dated: July 26, 2019

New York, New York

*/s/ Richard A. Chesley*
DLA PIPER LLP (US)
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Telephone (212) 335-4500
Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese

*Attorneys for Transform Holdco LLC*

9

MOAC000078

DLA PIPER LLP (US)
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Telephone: (212) 335-4500
Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese

*Attorneys for Transform Holdco LLC*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------- x
In re                                                  :
                                                       :    Chapter 11
SEARS HOLDINGS CORPORATION, et al.,                    :
                                                       :    Case No. 18-23538 (RDD)
                                                       :
                    Debtors.¹                          :    (Jointly Administered)
----------------------------------------------------- x
```

## TRANSFORM HOLDCO'S OBJECTIONS AND RESPONSES TO
## MOAC MALL HOLDINGS LLC'S REQUESTS FOR ADMISSION FROM THE BUYER

Pursuant to Federal Rule of Civil Procedure 36 and Federal Rule of Bankruptcy Procedure

7036, Transform Holdco LLC (the "Buyer") respectfully responds and objects as follows to the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

EAST\167863267.4

MOAC000079

Requests for Admissions (the "RFAs") issued by MOAC Mall Holdings LLC ("MOAC") to Debtors on May 17, 2019.

## RESERVATION OF RIGHTS

1.      The Buyer submits these responses and objections subject to, without intending to waive, and expressly preserving: (a) any objections as to the competence, relevance, materiality, privilege, and/or admissibility into evidence of any response herein; (b) the right to object to other discovery procedures involving or relating to the subject matter of the RFAs; and (c) the right to revise, correct, supplement or clarify the responses or any of the objections herein at any time.

2.      The Buyer does not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained in the RFAs. By responding to the RFAs, the Buyer does not intend to waive, and does not waive, any defenses to the RFAs or any other demand or subpoena, or any case brought by MOAC or any other party.

3.      Buyer intends no incidental or implied admissions by its responses to the RFAs. Whether the Buyer has answered or objected to any particular RFA should not be interpreted as an admission that the Buyer accepts or admits the existence of any fact(s) set out or assumed by such RFA, that such answer or objection constitutes admissible evidence or that requests for similar information will be treated in a similar fashion.

## GENERAL OBJECTIONS

These General Objections are incorporated into each specific response below as if they were fully repeated therein.

1.      The Buyer objects to the RFAs, including without limitation, the "Definitions" and "Instructions" therein, to the extent they purport to impose on the Buyer obligations different from, broader than, or otherwise inconsistent with those imposed by the Federal Rules of Civil

MOAC000080

Procedure, the Federal Rules of Bankruptcy Procedure, the local rules of the United States
Bankruptcy Court for the Southern District of New York, and/or any other rules, applicable case
law, or other court orders governing the proper scope, timing, and extent of discovery in this
proceeding. The Buyer further objects to the extent that such definitions or instructions purport to
enlarge, expand, or alter in any way the plain meaning and scope of any specific RFA where such
enlargement, expansion, or alteration renders the RFA vague, ambiguous, overbroad, unduly
burdensome, harassing, or incomprehensible, or where such enlarged, expanded, or altered RFA
seeks information that is not relevant to the claim or defense of any party.

2.      The Buyer objects to the RFAs to the extent they seek information not in the
Buyer's possession, custody, or control and/or not obtainable by means of a reasonably diligent
search, including, without limitation, information from documents or things that are not maintained
by the Buyers in the ordinary course of business, or that are not reasonably accessible due to undue
burden or cost.

3.      The Buyer objects to the RFAs to the extent they seek legal conclusions or require
the Buyer to form a legal conclusion in order to provide a response.

4.      The Buyer objects to the RFAs to the extent they seek information not relevant to
the subject matter of this pending matter or to the claims or defenses of any party, not proportional
to the needs of the pending matter, or otherwise outside the proper scope of discovery, and/or
constitute an improper "fishing expedition."

5.      The Buyer objects to the RFAs to the extent they seek the disclosure of information
that was prepared in anticipation of litigation; constitutes attorney work product; discloses the
mental impressions, conclusions, opinions, or legal theories of any attorneys for the Buyer;
contains confidential attorney-client communications; is subject to a common interest privilege;

MOAC000081

and/or is otherwise privileged, protected, or subject to exemption from disclosure under any applicable privileges, laws, or rules. If any privileged information is disclosed pursuant to the RFAs, the disclosure is inadvertent and the privilege is not waived.

6.     The Buyer objects to the RFAs to the extent they seek information beyond the scope of what was maintained in the ordinary course of business, as irrelevant and disproportionate to the needs of the pending matter. The above-captioned matter relates to a 1991 lease regarding the property located at 2000 NE Court, Bloomington Minnesota.

7.     The Buyer objects to the RFAs as unduly burdensome to the extent that the information requested is within the knowledge of MOAC or is within the public domain or otherwise equally available to MOAC and the Buyer and thus more conveniently obtained from MOAC's own files or other sources.

8.     The Buyer objects to the definition of "and" and "or" as vague, ambiguous, overbroad and unduly burdensome.

9.     The Buyer objects to the RFAs insofar as they seek the production of "all" or "any" information concerning any given subject, on the ground that it is impracticable and otherwise unduly burdensome for the Buyer to locate and review every conceivable responsive document, even documents stored electronically. The Buyer's responses will comply with the requirements of the Federal Rules of Civil Procedure.

10.     The Buyer objects to the definition of "assignee" as vague, ambiguous, overbroad and unduly burdensome.

11.     The Buyer objects to the definition of "communication" as overbroad and unduly burdensome and irrelevant as it fails to relate to any RFA.

12.     The Buyer objects to the definition of "lease" as vague, ambiguous, overbroad and

MOAC000082

unduly burdensome.  As relates to the above-captioned matter, the Buyer defines "lease" to refer to the ground lease for the property located at 2000 NE Court, Bloomington Minnesota.

13.   The Buyer objects to the definition of "relating to" as vague, ambiguous, overbroad, unduly burdensome and irrelevant and incomprehensible to the extent that they do not pertain to any of MOAC's RFAs.

## OBJECTIONS AND RESPONSES TO SPECIFIC RFAS

Subject to and without waiving the above General Objections, the Buyer objects and/or responds to each specific RFA as follows:

## RFA NO. 1

Admit that Mall of America is a mall and shopping center, as shopping center is understood to mean with regard to 11 U.S.C. § 365(b)(3).

## RESPONSE TO RFA NO. 1

Subject to and without waiving the General Objections, the Buyer admits that Mall of America is a mall and shopping center, as shopping center is understood to mean with regard to 11 U.S.C. § 365(b)(3).

## RFA NO. 2

Admit that Sears entered into the Lease with MOAC for the Leased Space in Mall of America on May 30, 1991.

## RESPONSE TO RFA NO. 2

Subject to and without waiving the General Objections, the Buyer admits that, based upon reasonable inquiry, Sears entered into the Lease with MOAC for the Leased Space in Mall of America on May 30, 1991.

MOAC000083

## RFA NO. 3

Admit that Sears operated a retail store in all three floors of the Leased Space from the date Mall of America opened, on or about August 11, 1992, until the store discontinued operations in connection with the above captioned bankruptcy.

## RESPONSE TO RFA NO. 3

In addition to the foregoing General Objections, the Buyer objects to this RFA because it is irrelevant and fails to relate to the inquiry. Notwithstanding the foregoing, subject to and without waiving the General Objections, the Buyer admits that Sears operated a retail store in all three floors of the Leased Space from the date Mall of America opened, on or about August 11, 1992, until the store discontinued operations in connection with the above captioned bankruptcy. The Buyer's response is based on publicly available information and the Buyer reserves its rights to supplement or amend this response.

## RFA NO. 4

Admit that there is currently no retail or other tenant operating any service open to Mall of America customers in the Leased Space.

## RESPONSE TO RFA NO. 4

Subject to and without waiving the General Objections, the Buyer admits that there is currently no retail or other tenant operating any service open to Mall of America customers in the Leased Space.

## RFA NO. 5

Admit that the financial condition of the Assignee is not similar to or better than the financial condition of Sears on or about May 30, 1991.

MOAC000084

**RESPONSE TO RFA NO. 5**

In addition to the foregoing General Objections, the Buyer objects to the use of "similar to or better" in this RFA because it is vague and ambiguous, not defined anywhere in the RFA, and seeking a legal conclusion regarding an ultimate issue in the case. Buyer further objects to this RFA as the financial condition or operating performance of Sears on or about May 30, 1991 is within the public domain or is otherwise equally available to MOAC and Buyer, and MOAC can therefore draw its own conclusions. *See* Sears, Roebuck & Co., Annual Report (Form 10-K) (Mar. 31, 1992); Sears, Roebuck & Co., Quarterly Report for the Quarterly Period Ended June 30, 1991 (Form 10-Q) (Aug. 16, 1991).

**RFA NO. 6**

Admit that the operating performance of the Assignee is not similar to or better than the operating performance of Sears on or about May 30, 1991.

**RESPONSE TO RFA NO. 6**

In addition to the foregoing General Objections, the Buyer objects to the use of "similar to or better" because it is vague and ambiguous, , and seeks a legal conclusion regarding an ultimate issue in the case. Buyer further objects to this RFA as the financial condition or operating performance of Sears on or about May 30, 1991 is within the public domain or is otherwise equally available to MOAC and Buyer, and MOAC can therefore draw its own conclusions. *See* Sears, Roebuck & Co., Annual Report (Form 10-K) (Mar. 31, 1992); Sears, Roebuck & Co., Quarterly Report for the Quarterly Period Ended June 30, 1991 (Form 10-Q) (Aug. 16, 1991).

**RFA NO. 7**

Admit that neither you nor, to the best of your knowledge, the Debtor have provided information regarding the financial condition or operating performance of Sears on or about May

EAST\167863267.4

MOAC000085

30, 1991, to MOAC or the Court in support of the pending motion to assume and assign the Lease.

## RESPONSE TO RFA NO. 7

The Buyer lacks sufficient information to admit or deny this request. In addition to the foregoing General Objections, the Buyer objects to this RFA as the financial condition or operating performance of Sears on or about May 30, 1991 is within the public domain, and MOAC can therefore draw its own conclusions. *See* Sears, Roebuck & Co., Annual Report (Form 10-K) (Mar. 31, 1992); Sears, Roebuck & Co., Quarterly Report for the Quarterly Period Ended June 30, 1991 (Form 10-Q) (Aug. 16, 1991).

## RFA NO. 8

Admit that the Assignee proposes to operate with a "smaller footprint" of fewer stores, as described in Doc. No. 3654, than the Debtor operated on or about May 30, 1991.

## RESPONSE TO RFA NO. 8

Subject to and without waiving the General Objections, the Buyer admits that the Assignee proposes to operate with a "smaller footprint" of fewer stores, as described in Doc. No. 3654, than the Debtor operated on or about May 30, 1991.

## RFA NO. 9

Admit that you do not currently plan for Transform Leaseco LLC to operate as a retail distributor.

## RESPONSE TO RFA NO. 9

In addition to the foregoing General Objections, the Buyer objects to the definition of "distributor" as vague, ambiguous, overbroad and unduly burdensome. Buyer further objects to this RFA to the extent that it fails to distinguish Transform Leaseco LLC from other affiliates of the Buyer.

EAST\167863267.4

MOAC000086

**RFA NO. 10**

Admit that any Assignee annual retail sales are less than the annual retail sales of Sears on or about May 30, 1991.

**RESPONSE TO RFA NO. 10**

In addition to the foregoing General Objections, the Buyer objects to this RFA as irrelevant, vague and ambiguous, unduly burdensome, and disproportionate to the needs of the pending matter. Buyer further objects to this RFA to the extent that it fails to distinguish Transform Leaseco LLC from other affiliates of the Buyer. Notwithstanding the foregoing, subject to and without waiving the General Objections, the Buyer admits that any Assignee annual retail sales are less than the annual retail sales of Sears on or about May 30, 1991.

**RFA NO. 11**

Admit that neither you nor the Assignee propose to operate any retail store in the Leased Space without subletting or assigning the Lease to another entity.

**RESPONSE TO RFA NO. 11**

Subject to and without waiving the General Objections, the Buyer admits that the Buyer intends to adhere to the provision of the Lease and sublet and/or assign the Lease or portions thereof.

**RFA NO. 12**

Admit that you have not provided to MOAC or the Court the identity, financial condition, or operating performance of any proposed tenant that would operate a retail store in the Leased Space in support of the pending motion to assume and assign the Lease.

EAST\167863267.4

MOAC000087

**RESPONSE TO RFA NO. 12**

In addition to the foregoing General Objections, the Buyer objects to this RFA as irrelevant, vague and ambiguous, unduly burdensome, and disproportionate to the needs of the pending matter. Buyer also objects to the definition of "tenant" as vague, ambiguous, overbroad and unduly burdensome.  Notwithstanding the foregoing, subject to and without waiving the General Objections, the Buyer admits that due to the circumstances of the Objections and the efforts of MOAC to hinder the efforts to sublease or assign the Lease, at the present time no proposed tenant(s) has been selected.

**RFA NO. 13**

Admit that you have not provided any assurance that all three floors of the Leased Space will be open to Mall of America customers for retail shopping within a reasonable period if the Court approves the pending motion to assume and assign the Lease.

**RESPONSE TO RFA NO. 13**

Subject to and without waiving the General Objections, the Buyer denies that the Buyer has not provided any assurance that all three floors of the Leased Space will be open to Mall of America customers for retail shopping within a reasonable period if the Court approves the pending motion to assume and assign the Lease.

**RFA NO. 14**

Admit that assumption and assignment of the Lease is not necessary to support Transform's retail operations for Transform to maintain its financial condition.

MOAC000088

**RESPONSE TO RFA NO. 14**

In addition to the foregoing General Objections, the Buyer objects to this RFA as irrelevant, vague and ambiguous in its use of the term "necessary", unduly burdensome, and disproportionate to the needs of the pending matter.

**RFA NO. 15**

Admit that Transform's retail operations are not sufficient to maintain Transform's financial condition, which is dependent upon assumption and assignment of the Lease.

**RESPONSE TO RFA NO. 15**

In addition to the foregoing General Objections, the Buyer objects to this RFA as irrelevant, vague and ambiguous in its use of the term "sufficient", unduly burdensome, and disproportionate to the needs of the pending matter.

Dated: July 26, 2019
New York, New York

/s/ *Richard A. Chesley*
DLA PIPER LLP (US)
1251 Avenue of the Americas
27th Floor
New York, NY 10020
Telephone (212) 335-4500
Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese

*Attorneys for Transform Holdco LLC*

MOAC000089