HUNTON ANDREWS KURTH LLP  
200 Park Avenue  
New York, New York 10166  
Telephone: (212) 309-1000  
Paul N. Silverstein (PS5098)  
Brian Clarke (BC2344)

HEARING DATE: August 22, 2019  
TIME: 10:00am (EST)

LAW OFFICES OF SAUL REISS  
A professional corporation  
2800 28th Street, Suite 328  
Santa Monica, California 90405-6201  
Telephone (310) 450-2888  
Facsimile (310) 450-2885

*Co-Counsel to Henry Shahery*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : |
| | : Case No. 18-23538 (RDD) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : |

------------------------------------------------------------x

**DECLARATION OF HENRY SHAHERY IN RESPONSE TO ORJECTIONS TO NOTICE OF ASSIGNMENT OF UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**

Pursuant to 28 U.S.C. §1796, I, Henry Shahery, hereby declare as follows:

1. I have personal knowledge of each of the facts set forth herein, and if called as a witness and duly sworn I could and would competently testify thereto.

2. I make this declaration in support of the Debtors' Notice of Assignment of Unexpired Leases of Nonresidential Real Property (the "Assignment Notice") (Docket No. 4763) and in response to the objections thereto filed by (A) 5525 S. Soto St. Associates (the "Warehouse

1

Lessor") as to the Warehouse Lease (defined below) (Docket No. 4829) and (B) 51st Street Fruitland Avenue, LLC (the "Parking Lot Lessor") as to the Parking Lot Lease (defined below) (Docket No. 4883).

3.  This matter relates to two leases that this Court authorized the Debtors to assume, which the Debtors are assigning to me personally: (A) a lease between the Debtors and the Warehouse Lessor for a warehouse located at 5525 S. Soto Street, Vernon, California (the "Warehouse Lease") and (B) a lease between the Debtors and the Parking Lot Lessor for a parking lot located at 2700 Fruitland Avenue, Vernon, California (the "Parking Lot Lease" and, together with the Warehouse Lease, the "Vernon Leases"). I presently sublease the Vernon Leases pursuant to sublease agreements between me and the Debtors. The Debtors have agreed to assign their Vernon Leases to me in exchange for my payment of $5,250,000 in cash. As discussed below and in the Debtors' submission in connection with their Assignment Notice, the Vernon Leases each have below market rents. The Debtors pay approximately $59,127.22 per month for the Warehouse Lease and approximately $750 per month for the Parking Lot Lease. Under my subleases under the Vernon Leases with the Debtors, I pay the Debtors approximately $160,650 per month for the Warehouse Lease and approximately $4,000 per month for the Parking Lot Lease. I have always made timely payments of rent and other obligations under my subleases for the Vernon Leases with the Debtors.

4.  By way of background, on April 3, 2019, Sears filed its Motion for Authority to Assume Unexpired Leases of Nonresidential Real Property (the "Assumption Motion") (Docket No. 3033), which sought this Court's authority for the Debtors to assume the Vernon Leases. On April 11, 2019, the Warehouse Lessor filed its Response to the Assumption Motion, wherein it stated: "Landlord is relying upon Debtors' representation(s) that they intend to promptly seek to

assign the Warehouse Lease." On April 23, 2019, this Court entered an Order Pursuant to Sections 365(a) and 365(f) of the Bankruptcy Code Authorizing the Debtors to Assume Unexpired Leases of Nonresidential Real Property (the "Lease Assumption Order") (Docket No. 3314) pursuant to which the Debtors were authorized to assume the Vernon Leases, and thereafter assign them pursuant to the terms and provisions of the Lease Assumption Order. The Lease Assumption Order provides: "Upon successful marketing of the Vernon Leases, the Debtors shall serve the Vernon Counterparties and file with the Court a notice of the assignment (the "Assignment Notice") to an assignee (the "Assignee")". On August 6, 2019, the Debtors filed the Assignment Notice

5.  Upon entry of the Lease Assumption Order, I undertook the due diligence process to make a bid to acquire the leases, which, if accepted, would be subject only to the requirements of "Adequate Assurance" pursuant to Bankruptcy Code Section 365(f). My due diligence efforts involved the following:

(i) Hiring economic experts to determine the net cash flow which would result from the payment of all monetary obligations under the Vernon Leases over their duration. This included having the experts calculate the net present value of the cash flow stream as well as the rate of return which were both necessary to establish a market value of the Leases.

(ii) Obtaining surveys and reports with respect to the physical condition of the leased premises in order to project the costs of maintenance and repairs in order to render premises useable for their agreed upon purpose.

(iii) Depositing $1,000,000 as an earnest money deposit within 24 hours of execution of the LSA and arranging for payment of the remaining $4,250,000 of the purchase price as soon as the Court provided approval, which was scheduled for August 22, 2019.

Having followed all of the procedures established by this Court, I became the Purchaser under the Lease Sale Agreement, dated July 25, 2019 ("LSA"), which is the subject of the Assignment Notice.

6. As indicated above, I am personally the subtenant under the subleases with the Debtors for the Vernon Leases, which are described in Exhibits C-1 and C-2 of the LSA, which are also being assigned to me by the Debtors. Thus, my entire personal net worth, which is significant and, in and of itself, can leave no doubt concerning adequate assurances of my future performance under the Vernon Leases, supports the payment of rents and other costs under the Vernon Leases.

7. The Warehouse Lessor filed a two-sentence objection (Docket No. 4829) to the Assignment wherein it stated that the "Debtors have failed to provide or establish adequate assurance of future performance by the proposed assignee and/or that adequate assurance of future performance by the proposed assignee is lacking." The Warehouse Lessor's second sentence was to "reserve all of its rights to specify the basis of its objections at a hearing. . . ." The Parking Lot Lessor - - the rent under whose lease is $700 per month - - also objected (Docket No. 4883) and alleged that no showing of adequate assurance of future performance had been provided. Both objections lack factual basis or support. I have provided, and there exists, more than adequate assurances of future performance under the Leases, which are described herein and in the Debtors' submissions. In fact, since entering into the Subleases in August 2018, I have complied with all of my obligations thereunder in a timely fashion. I have offered to provide the Warehouse Lessor with an irrevocable letter of credit in the amount of $700,000, which covers base rent and real estate taxes due under the Warehouse Lease for a one year period renewable annually. I have offered to provide the Parking Lot Lessor with a deposit in the amount of $8,400, which covers rent under the Parking Lot Lease for a one year period. Such financial commitment provides the Warehouse Lessor and the Parking Lot Lessor with more than adequate assurance of future performance for these below-market leases.

8. Furthermore, upon assignment to me, I am obligated to comply with all of the terms and conditions of the Vernon Leases and there has been no credible suggestion that I cannot or will not do so. I would be personally obligated to perform under the Vernon Leases as I am presently under my subleases with the Debtors.

9. The disclosure of my financial capabilities made to Debtor's counsel and to the Warehouse Lessor and Parking Lot Lessor included a letter from Comerica Bank confirming that I had on deposit with Comerica Bank cash in excess of $18.4 million and a credit line of at least $10 million with that bank that is fully available. In addition to Comerica Bank, Deutsche Bank National Trust Company, has provided a letter reflecting that I have $11,000,000 in cash deposit at Deutsche Bank National Trust Company and a line of credit of $10,000,000. I have total cash on deposit of not less than $29,400,000 in those two banks alone in my personal bank accounts. A copy of those letters, both of which are accurate, are collectively attached hereto as Exhibit "1".

10. In response to the Warehouse Lessor's and Parking Lot Lessor's request for additional financial information, I requested the basic level of confidentiality of my information that any businessman would request. The Objectors' counsel refused to agree to any confidentiality with respect to my financial information.

11. Significantly, I have no unsecured debt. My only secured debt is my home mortgage. I have no liabilities except for ordinary course payments of living and other family and business expenses, which I pay in full monthly. I own a substantial amount of real estate in various forms that I do not believe is necessary to describe in a publicly filed document, particularly given my other available assets.

12. It is fundamental that I be given fair notice of exactly what the objector claims is inadequate about my financial condition. As indicated above, the monthly rental, tax and insurance

5

obligations on the Warehouse Lease aggregate approximately $800,000 per month. For the last 12 months I have paid the aggregate amount of approximately $1,100,000 for rent, taxes and insurance to the Debtors under my sublease for the Warehouse, which was in addition to the $1,200,000 I paid to allow the Debtors to place the property, that had been vacant for nearly 2 years, into occupiable condition. The monthly rental obligation on the Parking Lot Lease is $750. I have been paying the Debtors $4,000.00 per month under my sublease for the Parking Lot.

13.     In addition to those payments, I have deposited $160,000 as a security deposit and $1,000,000 as an earnest money deposit on this transaction. To become the owner of the Leases I will be paying an additional $4,250,000. That payment history alone should satisfy the requirement for adequate assurance of future performance. Significantly, that the Leases are substantially below market - - and hence my payment of $5,250,000 to the Debtors to acquire same - - should likewise demonstrate adequate assurance of future performance under the Leases.

14.     As to the Parking Lot Lessor's suggestion that that empty property has environmental issues, I am aware of no such issue nor, to my knowledge, are the Debtors, their professionals and consultants aware of any such issues. There has not been a single incident of discharge of any hazardous material in the 21 years that Sears has leased the Parking Lot or in the 50 years prior to that when Sears owned the property before selling it to the Parking Lot Lessor in 1998. In fact, the suggestion that a $700 a month parking lot could be rife with environmental issues seems ridiculous. As to the Parking Lot Lessor's suggestion that I might not be able to pay real estate taxes on the property, such taxes amount to approximately $500 per year. Finally, as to insurance on the Parking Lot, Shason, Inc., which provided an insurance certificate, is an existing guarantor of the sublease with the Debtors. If this Court believes that I should have an insurance certificate personally, that can easily be accomplished in short order.

I declare under penalty of perjury that the forgoing declaration is true and correct.

*/s/ Henry Shahery*
Henry Shahery
August 21, 2019

<u>Exhibit 1</u>

Comerica and Deutsche Bank Letters

**Comerica**
Wealth Management

August 15, 2019

Re:   Henry Shahery

To Whom It May Concern:

Based on a banking relationship that has spanned for more than twenty years, Mr. Shahery is an individual who meets all of his financial obligations in a timely manner.  We have verified statements and can confirm that Mr. Shahery $18,410,700 in liquidity Comerica Bank 8000xxx7448.  In addition, he has access to a line of credit with availability in the low 8 figures.

Mr. Shahery has been and remains to be a valued client of Comerica Bank. If you have any questions, please feel free to call me directly at 310-712-6751.

Sincerely,

*Sonja Coch*

Sonja Cochran
Vice President
Relationship Manager



**Wealth Management**



August 15, 2019

Verified by: _Sonja Cochran_

Sonja Cochran, VP Relationship Manager

Deutsche Bank
Wealth Management

Deutsche Bank National Trust Company
Deutsche Bank Wealth Management
1999 Avenue of the Stars, Suite 3750
Los Angeles, CA 90067

August 19, 2019

PRIVATE & CONFIDENTIAL

To Whom It May Concern:

Pursuant to the request of Mr. Henry Shahery, this letter confirms that he has been a client of Deutsche Bank in the Los Angeles, California office since 2009. Mr. Shahery's accounts are in good standing and he presently maintains a diversified relationship with our institution. He has in excess of $11,000,000 available in assets as well as a Home Equity Line of Credit in the amount of $10,000,000. Should you have any questions, please do not hesitate to contact me.

Sincerely,

Daniel J. Gray
Managing Director

The information contained herein is furnished at the request of Henry Shahery as a matter of business courtesy with the understanding that: (i) it is to be treated as strictly confidential and that neither its source nor its contents will be divulged by you to any third-party; (ii) it will be used by you exclusively for the purposes stated in your request; and (iii) we assume no responsibility to update or correct any information stated herein; and (iv) we assume no responsibility for the accuracy or inaccuracy of any statement herein; and (v) no liability shall attach to this bank or any of its affiliates or its officers, directors or agents in relation to this document.

Securities offered through Deutsche Bank Securities Inc.

# Deutsche Bank
## Wealth Management

**Account Positions**
As of August 19, 2019

**Brokerage Account** Base Currency USD
DB Securities Inc.

**1268  H & N SHAHERY REVOCABLE TRUST UAD**
**07/08/95 HENRY SHAHERY TTEE FBO H SHAHERY & N O**
**SHAHERY**

| | Product Type | Value Date | Market Value | Accrued Income |
|---|---|---|---|---|
| | Retail | 08/19/2019 | $11,214,837.27 | $64.86 |

**Grand Total For All Assets on 08/19/2019**
Data Last updated at end-of-day on 08/19/2019

| | | | | | Market Value | Accrued Income | Grand Total | Unrealized Gain/Loss |
|---|---|---|---|---|---|---|---|---|
| | | | | | $11,214,837.27 | $64.86 | $11,214,902.13 | $0.00 |

### Cash Equivalents(1)

| | | | | | Market Value | Accrued Income | Total | Unrealized Gain/Loss |
|---|---|---|---|---|---|---|---|---|
| | | | | | $9,900,000.00 | $0.00 | $9,900,000.00 | $0.00 |

#### Cash(1)

| Security Identifier | Security Description | Local CCY | Local Price | Price(USD) | Units | Market Value(USD) | Accrued Income (USD) | Total(USD) | Unrealized Gain/Loss |
|---|---|---|---|---|---|---|---|---|---|
| USD99997 | U.S.DOLLARS CURRENCY | USD | 1.00 | 1.00 | 9,900,000.00 | 9,900,000.00 | 0.00 | 9,900,000.00 | 0.00 |

Total Cash    9,900,000.00    0.00    9,900,000.00    0.00

### Other Brokerage Assets(1)

| | | | | | Market Value | Accrued Income | Total | Unrealized Gain/Loss |
|---|---|---|---|---|---|---|---|---|
| | | | | | $1,314,837.27 | $64.86 | $1,314,902.13 | $0.00 |

#### Mutual Funds(1)

| Security Identifier | Security Description | Local CCY | Local Price | Price(USD) | Units | Market Value | Accrued Income | Total(USD) | Unrealized Gain/Loss |
|---|---|---|---|---|---|---|---|---|---|
| FDIC DBDA | DBINSURDFUNDDBDA | USD | 1.00 | 1.00 | 1,314,837.27 | 1,314,837.27 | 64.86 | 1,314,902.13 | 0.00 |

Total Mutual Funds    1,314,837.27    64.86    1,314,902.13    0.00



# Deutsche Bank
# Wealth Management

**Account/List/Relationship/Client**
Account Number : 1268
**As of Date**
08/19/2019
**Currency**
Reporting Currency: USD

Account Positions
Selected Report Criteria

# Deutsche Bank
## Wealth Management

**Account Positions**
**Disclaimer**

**FX Rates** used for Currency Conversion corresponds to the date(s) of the activity within the selected reporting period.

Please note that the information presented is as of the most recent available value date for each account type. Total values appearing in each module may differ due to rounding variances. If you have selected a client relationship or an account list, please be advised that some of your accounts may not be applicable to this page.

The above information is made available at the client's request and for the client's convenience. This screen contains information regarding accounts held through various companies (which may include, without limitation) Deutsche Bank Trust Company Americas, U.S. commercial bank and/or Deutsche Bank Securities Inc., ("DBSI"), member FINRA, NYSE and SIPC and does not constitute an official account statement. Please refer to the "Legal" link for important information.

Some or all of the information on this page has been converted to your preferred currency using the most recent FX rate available.
To view the date of the FX rate used, click on "Tools" at the top of this page and see FX calculator.
The rate presented is for your information only and should not be used for reporting or transactional purposes.

*This information could not be converted to your preferred currency because an FX rate was not available.
If an "*U" (undetermined) appears for a majority of the data displayed, you may want to select another preferred currency from the "Settings" page or update your "Display currency as" at the top of the page.