UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
In re                                                         :
                                                              :     Chapter 11
SEARS HOLDINGS CORPORATION *et al.*,                          :
                                                              :     Case No. 18-23538 (RDD)
          Debtors.[1]                                         :
                                                              :     (Jointly Administered)
------------------------------------------------------------- x

## DECLARATION OF ROBERT L. KING

I, Robert L. King, make the following Declaration pursuant to 28 U.S.C. § 1746:

1       I am a member of the law firm of Korein Tillery, LLC. Korein Tillery was counsel to Relator Carl Ireland, Administrator of the Estate of James Garbe, and his predecessor in interest, James Garbe, in the litigation captioned *United States ex rel. Garbe v. Kmart Corp.*, No. 12-cv-881, U.S. District Court, Southern District of Illinois (the "District Court Action"), which resulted in a $59 million settlement in favor of the plaintiffs secured by real property of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); Max Serv, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (19870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC ,Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None): SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).The location of the Debtors'corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

certain of the Debtors, as more fully described below.

2.     I submit this Declaration in support of the *Motion of Relator Carl Ireland, Administrator of the Estate of James Garbe, For An Order: (i) Determining the Value of Relator's Collateral as of the Sale of Such Collateral; (ii) Determining the Amount of Any Diminution in the Amount of the Sales Proceeds Allocable To Such Collateral After the Sale; (iii) Directing Payment of Relator's Secured and Superpriority Administrative Claims; and (iv) Granting Related Relief* (the "Motion"). Except where otherwise specifically indicated, I have personal knowledge of the following facts and, if called upon to testify, I could and would testify competently thereto.

3.     The District Court Action was a "whistleblower" (*qui tam*) action for multiple violations of the federal False Claims Act ("FCA") and analogous State laws. The damages alleged in the District Court Action exceeded $375 million in actual damages, before trebling, and $110 billion in statutory penalties. Defendant Kmart filed four motions for partial summary judgment in the case, all of which were denied, and Kmart subsequently appealed those ruling to the Seventh Circuit Court of Appeals. After losing before the Seventh Circuit, (*See United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 627 (2017), Kmart, Sears and their affiliates, engaged in settlement negotiations with the plaintiffs which resulted in a Settlement Agreement, a true and correct copy of which is attached to this Declaration as **Exhibit 1**. The Settlement Agreement was approved by Order of the District Court, and that Order was entered on January 19, 2018 [District Court Action, ECF D.N. 497].[2] (Court approval of settlement of claims under the FCA is required by statute.)

---

[2] The docket of the District Court Action is available on PACER (https://ecf.ilsd.uscourts.gov/cgi-bin/iquery.pl?942257962474472-L_1_0-1).

4. The Settlement Agreement provided for a payment of $59 million in three installments, with the first tranche due shortly after the effective date of the Settlement Agreement, and the second and third tranches due on the first and second year anniversaries of the effective date. Per the express terms of the Settlement Agreement, the second and third payments were to be secured by first mortgages on two pieces of real property and the proceeds of the same: (1) a distribution center in Florida; and (2) a distribution center and warehouse property in Puerto Rico (defined in the Motion as the "Puerto Rico Property"). The co-mortgagees on those two mortgages were Relator and the United States of America (together, the "Mortgagees").

5. The Settlement Agreement required that the mortgage liens be first monetary liens on the properties, and dictated how the face amounts of the mortgages would be determined. Sears was required to obtain an appraisal from one of three specified appraisal firms, Sears had obtained an appraisal of the Puerto Rico Property from one of those firms—Cushman & Wakefield—in 2017, and provided that appraisal report to Relator and the United States prior to settlement.

6. I reviewed that appraisal report, which determined the "as dark" value of the Puerto Rico Property to be $17.4 million and a hypothetical "as leased" operating value of the property to be $22.1 million as of January 24, 2017. The mortgaged property was being operated as a distribution center and warehouse at the time of the appraisal and thereafter, but per the negotiated terms of the Settlement Agreement, the "as dark" number was used to fix the face amount of the mortgage.

7. The copy of the initial appraisal report I received was marked "confidential," so I have not attached it to this Declaration. I note, however, that the report was signed by Stephen E. Saunders of Cushman & Wakefield Regional, Inc., whose office is in Orlando, Florida, and by

Pedro A. Pons and Esteban Lamadrid of Pons & Lamadrid Appraisers, whose office is in San Juan, Puerto Rico. As discussed below, we hired Pons & Lamadrid Appraisers to provide an updated appraisal earlier this year.

8.  The parties had their professionals prepare the documents necessary to implement the Settlement Agreement and properly perfect the first mortgage granted under that agreement. I was involved in the drafting of the documents identified below, and I worked alongside Miguel A. Blanco Fuertes of Blanco Fuertes & Associates LLC, a real estate law firm based in San Juan, Puerto Rico, to ensure that the documents complied with the laws of the Commonwealth of Puerto Rico and the mortgage lien was properly recorded. True and correct copies of the executed mortgage documents relating to the Puerto Rico Property (the "Mortgage Documents") are attached to this Declaration as follows:

**Exhibit 2**:    Mortgage Note Pledge and Security Agreement, dated as of January 12, 2018;
**Exhibit 3**:    Mortgage Note, dated as of January 12, 2018; and
**Exhibit 4**:    Certified Deed of Constitution of Mortgage, dated as of January 12, 2018.

The mortgage lien attached to the Puerto Rico Property upon the execution of the Deed of Constitution of Mortgage on January 12, 2018.

9.  Pursuant to my directions, certified copies of the Deed of Constitution of Mortgage issued by the acting Notary Public, Mr. Blanco Fuertes were promptly submitted for recordation to the Registry of Property of Puerto Rico, Third Section of San Juan and Fourth Section of San Juan, in order to perfect the mortgage lien on the Puerto Rico Property in accordance with the laws of the Commonwealth of Puerto Rico. Two certified copies were necessary because the Puerto Rico Property is comprised of two improved parcels of land. The certified copies were filed/recorded in the public office (the Real Property Registry) as authorized by law, on January 16, 2018. I have compared the copy annexed to this Declaration with the original that was filed/recorded, and certify it is correct.

10. Mr. Blanco Fuertes received confirmation of the recordation of the notices—generally referred to as "recording slips"—via email from the Real Property Registry, and forwarded those emails to me for my records. The recording slips are issued only after the Registrar of Property has scrutinized the filed documents and determined that all legal requirements have been satisfied and that the Deed of Constitution of Mortgage is a legal, valid and enforceable lien under the laws of the Commonwealth of Puerto Rico.

11. Because the original recording slips were in Spanish, at my request, Mr. Blanco Fuertes, who authorized the Deed of Constitution of Mortgage, has executed a Notarial Act providing a translation of the recording slips, and attesting that the English translation is an exact and correct translation from the Spanish version. The Notarial Act, which is attached to this Declaration as **Exhibit 5**, includes a copy of the original of each recording slip in its original Spanish version, as well as the English translation. Upon the issuance of the recording slips, the date of the filing of the Deed of Constitution of Mortgage, January 16, 2018, became the effective date of recordation. I have compared the copies of the Spanish recording slips attached to the Notarial Act with the original that was forwarded to me, and certify it is correct. Upon the issuance of the recording slips, the date of the filing of the Deed of Constitution of Mortgage, January 16, 2018, became the effective date of recordation.

12. I also directed and authorized Mr. Blanco Fuertes to order title abstracts through a Puerto Rico-based title insurance agency, and title searches of the two parcels that comprise the Puerto Rico Property were done on August 1, 2019 by the Puerto Rico-based firm Professional Title Services. The title abstracts that were issued in connection with that search confirm that the mortgage recordation date is in fact January 16, 2018. The title abstracts also indicate that the lien of the Mortgagees is the only monetary lien of record on the Puerto Rico Property. (There is an easement in favor of the Puerto Rico Aqueduct and Sewer Authority and a right of way

{00292911.1 / 1274-001 }

easement.) Copies of the August 1, 2019 title abstracts (the "Title Abstracts") are attached to this Declaration as **Exhibit 6**. The abstracts summarize the official records searched and examined by the title insurance agency. The underlying records are publicly available for examination or copying or both.

13. The first payment due under the Settlement Agreement was paid in January 2018. In April 2018, however, I was contacted by representatives of Sears and Kmart about amending the Settlement Agreement. Their reason for the proposed amendment was that Sears and Kmart wished to sell the Florida property upon which Relator and the United States held a first mortgage.

14. The parties began discussing an amendment to the Settlement Agreement in April 2018, and entered into a letter amendment dated as of August 23, 2018 (the "Amendment"), which was approved by the District Court on August 24, 2018 [District Court ECF D.N. 517]. A true and correct copy of the Amendment is attached to this Declaration as **Exhibit 7.**

15. The Amendment permitted the sale of the Florida property, and required that Sears and Kmart (i) pay the Mortgagees $12.8 million from the proceeds of the property, upon the closing, (ii) pay the balance of the second installment payment – $7.2 million – by December 2018, and (iii) escrow $1.6 million by December 2018 so that, after the balance of the second installment payment was made, the escrowed amount and the remaining mortgage upon the Puerto Rico Property would together fully secure the third (and final) installment payment of $19 million.

16. The payment of $12.8 million was made to the Mortgagees following the sale of the Florida property. The payment in the amount of $7.2 million that was due in December 2018, however, was not made and to my knowledge, no funds were ever escrowed. I have confirmed this information with counsel to the United States, Assistant U.S. Attorney Peter

Aronoff., who advises that no further payments were received nor had the time for such payment been extended. Sears, Kmart and their subsidiaries are therefore in breach of the Settlement Agreement, as amended.

17. Less than two months after the District Court approved the Amendment, the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code beginning on October 15, 2018 (defined in the Motion as the "Commencement Date"). As of the Commencement Date, the amount that was unpaid under the Settlement Agreement exceeded $26 million, and the Mortgagees held a perfected first mortgage on the Puerto Rico Property in the face amount of $17.4 million, (which was $1.6 million less than the $20 million amount of security the Mortgagees were entitled to hold during the second year of the settlement payout period). As set forth in the Mortgage Note, the mortgage also secured the payment of interest at an annual rate of 1.5% and the payment of attorneys' fees and expenses.

18. Relator objected to the proposed priming of the Mortgagees' lien during the bankruptcy cases, resulting in appropriate language being added to the DIP Orders entered by the Bankruptcy Court. As a result, the Mortgagees have continued to hold a first priority lien on the Puerto Rico Property and the proceeds thereof throughout these cases, and no party has liens that primed or were *pari passu* with that mortgage lien.

19. Relator also objected to the proposed sale of the Puerto Rico Property, as there was no provision for the satisfaction of the mortgage obligation after the sale. The Bankruptcy Court authorized the sale, but certain rights were granted to the Mortgagees in the Sale Order.

20. Once Korein Tillery was aware that the sale was going forward and was expected to close in February 2019, it was clear that a current appraisal of the Puerto Rico Property would be needed to address the property's value at the time of the sale. My firm thus contacted Pons & Lamadrid Appraisers, the same Puerto Rico-based appraisal firm that Cushman & Wakefield had

worked with in connection with the previous appraisal of the Puerto Rico Property. Another attorney at Korein Tillery, working under my supervision, Peter Rocque, engaged Pons & Lamadrid on behalf of Relator, asking the firm to prepare a current appraisal of the Puerto Rico Property.

21.     On April 5, 2019, Korein Tillery received the new appraisal, which appraised the Puerto Rico Property as of March 15, 2019, the date the appraiser inspected the property (the "Current Appraisal"). The Current Appraisal determined the "as is" market value of the Puerto Rico Property to be $22.1 million.

22.     I provided a copy of the Current Appraisal to Relator's counsel in the bankruptcy cases, and, after consulting with Relator, authorized them to share the Current Appraisal with counsel to the Debtors in April of this year.

23.     Finally, I note that the August 1, 2019 Title Abstracts indicate that deeds of transfer of the real property were submitted in May 2019 by Sears and the buyer, Transform Distribution Holdco, evidencing the sale and transfer of the property from Sears to Transform. Each of the Title Abstracts indicates the purchase price for that parcel, with a purchase price of $17,792,950 for the larger parcel and a purchase price of $2,977,050 for the smaller parcel, for a total purchase price of $20,770,000 for the Puerto Rico Property in the recent Sears/Transform sale transaction.

24.     After reviewing the Title Abstracts, I asked Puerto Rico counsel to obtain copies of the deeds of transfer themselves. Copies of the deeds of transfer, both of which are dated May 8, 2019 (the "Deeds of Transfer"), were obtained from the Puerto Rico Real Property Registrar and are attached to this Declaration as **Exhibit 8**. (The exhibit is voluminous because both Deeds of Transfer include certified copies of this Court's Sale Order.)

25. Each of the Deeds of Transfer acknowledges the Mortgagees' mortgage, and reflects that there are no other recorded mortgages or monetary liens on either of the parcels which comprise the Puerto Rico Property. *See* Exhibit 8, page 3 of each Deed of Transfer. The Deeds of Transfer also state as follows:

> Two: Purchase Price. The Property is sold for a purchase price equal to the amount of SEVENTEEN MILLION SEVEN HUNDRED NINETY-TWO THOUSAND NINE HUNDRED FIFTY DOLLARS ($17,792,950.00), the receipt of which is hereby acknowledged.

*See* Deed of Transfer, Distribution Center, page 4.

> Two: Purchase Price. The Property is sold for a purchase price equal to the amount of TWO MILLION NINE HUNDRED SEVENTY-SEVEN THOUSAND FIFTY DOLLARS ($2,977.050.00), the receipt of which is hereby acknowledged.

*See* Deed of Transfer, Outlet Store, page 4.

26. Thus, the Deeds of Transfer themselves provide "best evidence" of the market value of the parcels that constitute the Puerto Rico Property, as the parcels themselves were sold in the marketplace, with approval of this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 8/16/2019

_____
Robert L. King

{00292911.1 / 1274-001 }