SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice, the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), the Defense Health Agency (DHA), acting on behalf of the TRICARE Program; Defendant Kmart Corporation (Kmart); Sears Holding Corporation (SHC) as security provider; Relator Carl Ireland, as guardian of James Garbe and his estate, having previously been substituted as Relator (Relator)(hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.      Kmart Corporation, a Delaware Corporation, operates in-store pharmacies throughout the United States, Puerto Rico and the U.S. Virgin Islands.  Kmart Corporation is wholly owned and operated by Sears Holdings Corporation, a Delaware Corporation which is headquartered in Hoffman Estates, Illinois.

B.      James Garbe, a former Kmart pharmacist, filed a *qui tam* action against Kmart in the United States District Court for the Central District of California captioned *U.S., et al., ex rel. Garbe v. Kmart Corporation*, Case No. CV08-04669 (C.D. Cal.), pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §3730(b); state FCA statutes; and the California Insurance Fraud Prevention Act, Cal. Ins. Code § 1871, *et seq.*, and the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS § 92 (the "Civil Action").  After the United States elected not to intervene in the Civil Action, the case was transferred to the Southern District of Illinois and assigned the case number 3:12-cv-00881-MJR-PM (S.D. Ill.).  On August 8, 2017, Carl Ireland, as guardian of both Mr. Garbe and Mr. Garbe's estate, was substituted as Relator in the Civil Action.

*U.S. ex rel. Garbe v. Kmart*

C.     The United States and Relator contend that Kmart submitted or caused to be

submitted claims for payment to (i) the Medicare Program, Title XVIII of the Social Security

Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"); (ii) the Medicaid Program, 42 U.S.C. §§ 1396-

1396w-5 ("Medicaid"); and (iii) (the TRICARE Program, 10 U.S.C. §§ 1071-1110b

("TRICARE")(collectively, the "Government Healthcare Programs").

D.     The United States and Relator allege that Kmart submitted false prescription

reimbursement claims to the Government Healthcare Programs from September 1, 2004 to

December 31, 2016 in connection with discounted generic drug prices that were available to

enrolled members of Kmart's Retail Maintenance Program and other discount generic drug

programs.  Specifically, the United States and Relator allege that, to the extent the Government

Healthcare Programs (or, in the case of Medicare Part D, the Part D sponsors' contracts) defined

"usual and customary price" to include discounted generic drug prices offered to enrolled

members of Kmart's discount generic drug programs, Kmart failed to include those discounted

generic drug prices when billing the Government Healthcare Programs.  The United States and

Relator allege that, as a result of Kmart's actions, Kmart received reimbursement amounts that

were higher than it was entitled to receive.  Kmart's conduct is referred to below as the "Covered

Conduct."

E.     Relator, the Medicaid Participating States (as defined in separate state settlement

agreements), the California Insurance Commissioner, and the Illinois Attorney General contend

that Kmart submitted or caused to be submitted false prescription reimbursement claims to

Medicaid and certain private insurance companies ("CA/IL private insurance companies") from

September 1, 2004 to December 31, 2016 in connection with discounted generic drug prices that

were available to enrolled members as a part of Kmart's Retail Maintenance Program and other

discount generic drug programs.  The claims of Relator, Medicaid Participating States, California

*U.S. ex rel. Garbe v. Kmart*

2

Insurance Commissioner, and the Illinois Attorney General, under the state FCA statutes, the

California Insurance Fraud Prevention Act, Cal. Ins. Code § 1871, *et seq.*, and the Illinois

Insurance Claims Fraud Prevention Act, 740 ILCS § 92, as identified in Paragraph B above, are

addressed in separate state settlement agreements.

   F.  This Settlement Agreement is neither an admission of liability by Kmart nor a

concession by the United States that its claims are not well founded.

   G.  Relator claims entitlement under 31 U.S.C. § 3730(d), and any and all applicable

analogous provisions in the state FCA statutes, the California Insurance Fraud Prevention Act, or

the Illinois Insurance Claim Fraud Prevention Act, to a share of the proceeds of this Settlement

Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

   To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the

above claims, and in consideration of the mutual promises and obligations of this Settlement

Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

   1.  Kmart agrees to pay a total of $59,000,000 (the "Settlement Amount") to settle

the Civil Action as follows: $39,056,891.41 (FCA share) to the United States and Medicaid

Participating States to resolve their FCA claims, $3,000,000 (State Insurance Share) to the

California Insurance Commissioner and the Illinois Attorney General to resolve the California

Insurance Fraud Prevention Act and Illinois Insurance Claim Fraud Prevention Act claims, and

$16,943,108.59 (Relator Fee Share) to Relator for his attorneys' fees and costs. Kmart agrees to

pay the Settlement Amount in three installments (the "Settlement Payments") as follows: Kmart

shall pay $20,000,000 no later than fourteen (14) days after Effective Date (defined in paragraph

31 below) of this Agreement; the second payment of $20,000,000 shall be due on the one year

anniversary of the Effective Date of this Agreement; the third and final payment of $19,000,000

*U.S. ex rel. Garbe v. Kmart*

3

shall be due on the two year anniversary of the Effective Date of this Agreement. The Parties agree that no interest will be paid on the Settlement Payments. Each of the Settlement Payments will be divided on a pro rata basis among the United States, the Medicaid Participating States, the California Insurance Commissioner, the Illinois Attorney General, and Relator (with said pro rata Settlement Payments amounts agreed to separately between the United States, the Medicaid Participating States, the California Insurance Commissioner, the Illinois Attorney General, and Relator). The United States, the Medicaid Participating States, the California Insurance Commissioner, the Illinois Attorney General, and Relator will provide Kmart with the wiring instructions as well as the amount of their pro rata Settlement Payments amounts at least ten (10) days prior to the date each of the three payments will become due.

2.     Kmart and SHC agree that the United States, Medicaid Participating States, the California Insurance Commissioner, the Illinois Attorney General, and Relator are not, without being granted security for the payment obligations set forth in Paragraph 1 above, adequately protected in the event of Kmart's default on any such obligations. Therefore, Kmart and SHC will secure the Settlement Payments by executing and recording mortgages and/or other necessary documentation required to create first priority liens, in favor of the United States and Relator, on real properties owned by Kmart and/or SHC that have "as dark" appraised values, as determined by Cushman & Wakefield, CBRE, or JLL, or by another reputable third-party commercial real estate appraiser deemed acceptable to the United States and Relator, in the aggregate of at least (i) $30,000,000 until Kmart makes the second Settlement Payment; and (ii) $19,000,000, until Kmart makes the third Settlement Payment. The procedures for creating and perfecting such first priority liens and releasing such first priority liens, including the responsibility for payment of all costs and expenses incurred therewith, shall be governed by this Agreement.

*U.S. ex rel. Garbe v. Kmart*

a.     The initial real properties that are subject to this Agreement, include but are not limited to:  (a) Sears Distribution Center #8975, Road #176 Km 0.5 Cupey Bajo, San Juan, Cupey Ward, PR 00926; and (b) Sears Distribution Center #8825, 3825 Forsyth Road, Winter Park, Orange County, FL 32792.  Kmart and SHC agree that in the event that Kmart or SHC were to file for bankruptcy, these assets are not essential to an effective reorganization of Kmart's or SHC's estate.  Kmart and SHC further agree that in the event Kmart or SHC were to file for bankruptcy, they waive any right to contest or oppose any motion by the United States or Relator to obtain relief from the automatic stay to pursue any and all rights and remedies under this Agreement and any mortgages or other real estate documents, including, but not limited to, foreclosing on the real properties encumbered by such mortgages.

b.     At any time after the Effective Date and prior to making the last installment payment, Kmart may request the consent of the United States and Relator to release the liens encumbering one or more of the real properties securing the Settlement Payments and to substitute other real estate appraised by Cushman & Wakefield, CBRE, JLL, or by another reputable third-party commercial real estate appraiser deemed acceptable to the United States and Relator, at an equal or greater value (valued on an "as dark" basis), as collateral for the Settlement Payments.  The United States and Relator shall not unreasonably withhold consent to Kmart's substitution request so long as the request complies with the terms of this Agreement.  Upon any release and substitution, the United States and Relator shall continue to maintain a first priority lien on real property with a total aggregate value, on an "as dark" basis, of not less than $30,000,000 until Kmart makes the second Settlement Payment, and of not less than $19,000,000 until Kmart makes the third Settlement Payment.

c.     To initiate such a release and substitution, Kmart will give written notice, requesting that the United States and Relator consent to the release of the applicable real

*U.S. ex rel. Garbe v. Kmart*

property. The written notice shall be accompanied by an appraisal report, issued within 120 days of the written request for release and substitution, of the real property that will remain in place as security for the Settlement Payments, as well as, to the extent a lien must be granted on substitute real property to meet the minimum security amount, the real property to be substituted. Such appraisals must be issued by Cushman & Wakefield, CBRE, or JLL, or by another reputable third-party commercial real estate appraiser acceptable to the United States and Relator. If the United States or Relator seek to confirm any appraised value presented by Kmart, the United States and Relator shall agree to use one of the remaining two firms that Kmart did not use for the substitute appraisal work (or another reputable third-party commercial real estate appraiser approved by Kmart). Relator shall be responsible for cost of the second appraisal report if the second appraisal firm's valuation of the subject properties is over five (5) percent higher than the value reached by the first appraiser; otherwise Kmart will pay for the cost of the second appraisal report. If the necessary appraisals show that the substituted property is of an equal or greater value than the released property (valued on an "as dark" basis), and no dispute of property valuation exists, the United States and Relator shall complete the necessary documentation to release their security interests that encumber such real property and such documents as are necessary to encumber the replacement property and provide title insurance insuring the first lien position of Relator and the United States. In the event that a review of Kmart's initial appraisal is solicited by the United States or Relator and the second appraisal report generates a dispute about the value of the applicable real property that is five (5) percent or more lower than the value of Kmart's appraisal, then the Parties agree that the third appraisal firm listed above that has not yet been engaged (or another reputable third-party commercial real estate appraiser deemed acceptable to the United States, Relator, and Kmart) shall review all appraisal work and determine a value for the applicable real property. The Parties agree that the third appraisal

*U.S. ex rel. Garbe v. Kmart*

firm's value shall be final and binding if the third appraisal's valuation is between the first two.
If the third appraisal firm's valuation is lower than lowest the valuation from the two other firms
or higher than the highest valuation from the two other firms, then an average of the valuations
of the three appraisal firms will be used to determine value of the subject properties.  If a third
appraisal firm's work is necessary, the third appraisal firm's costs shall be paid by Kmart.

   d.  Kmart agrees to maintain the properties in substantially the same condition
that each property was in at the time of the appraisals that were produced to the Parties prior to
entering this Agreement.  If a property sustains damage at any time before the third Settlement
Payment is made, Kmart will evaluate such damage, and make any repairs necessary to restore
the condition of the property to substantially the same condition it was in at the time of the
appraisals performed and produced to the Parties prior to entering into this Agreement.  The
purpose of Kmart's obligation to repair damage is to ensure that the United States and Relator
maintain a first priority lien on real property with a total aggregate value, on an "as dark" basis,
of not less than $30,000,000 until Kmart makes the second Settlement Payment, and of not less
than $19,000,000 until Kmart makes the third Settlement Payment.  If, at any time before the
third Settlement Payment is made, the Relator or the United States provides reasonable notice
requesting access to inspect the condition of the properties, Kmart shall provide access within a
reasonable amount of time.

   e.  Except as otherwise specified above in Paragraph 2.c., describing the
limited circumstances wherein Relator may be responsible for the cost of the second appraisal
report, all expenses associated with recording first priority liens on the initial real properties and
expenses associated with any request by Kmart for release and substitution of properties,
including but not limited to all mortgage-related expenses, reasonable legal fees (for real estate

*U.S. ex rel. Garbe v. Kmart*

counsel only), stamp taxes, costs of title insurance, and appraisal costs shall be paid by Kmart and/or SHC.

3.      If Kmart fails to complete any of the Settlement Payments by the dates due, Kmart shall be in default of its payment obligations (Default).  The United States will provide written notice of the Default to Kmart and Kmart shall have the opportunity to cure such Default within seven (7) days from the date of receipt of the notice.  Notice of default will be delivered to:  General Counsel and SHC Legal Intake, Sears Holdings Corporation, 3333 Beverly Road Hoffman Estates, Illinois 60179, or to such other representative as Kmart shall designate in advance in writing.  If Kmart fails to cure such Default within seven (7) days of receiving the Notice of Default, the United States and Relator may bring a foreclosure action or any other appropriate action or proceeding to enable the United States and Relator to enforce and realize upon the security interests in the real property securing the Settlement Payments and will apply any proceeds received in connection with such actions to complete Kmart's payment obligations pursuant to this Agreement and to cover any costs incurred in connection with the foreclosure and sale of the property (or properties), up to the full Settlement Amount.

4.      Conditioned upon the United States receiving its share of each of the three Settlement Payments from Kmart, the United States agrees that it shall pay to Relator by electronic funds transfer, twenty-nine (29) percent of each such payment received under the Agreement, as soon as feasible after receipt of each payment.  Relator agrees that if any payment from Kmart to the United States is avoided in bankruptcy, Relator will return his share of the avoided payment to the United States within seven (7) days of receiving written notice from the United States that it has determined that the United States has a legal obligation to return any payments it has received from Kmart under this Agreement.

*U.S. ex rel. Garbe v. Kmart*

5.      Subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and conditioned upon Kmart's full payment of the Settlement Amount and subject to Paragraph 20 below, the United States releases Kmart and its corporate parents, subsidiaries, affiliates, predecessors, successors, current and former officers, directors, employees, and agents (collectively, "Kmart"), from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

6.      In consideration of the obligations of Kmart set forth in this Agreement, and conditioned upon Kmart's full payment of the Settlement Amount and subject to Paragraph 20 below, DHA agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against Kmart and its corporate parents, subsidiaries, affiliates, predecessors, successors, current and former officers, directors, employees, and agents under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 8 (concerning excluded claims), below.  DHA expressly reserves authority to exclude Kmart from the TRICARE Program under 32 C.F.R. §§199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion), based upon the Covered Conduct.  Nothing in this Paragraph precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 8, below.

7.      Subject to the exceptions in Paragraph 8 below, and conditioned upon Kmart's full payment of the Settlement Amount and Relator Fee Share and subject to Paragraph 20 below, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases

*U.S. ex rel. Garbe v. Kmart*

Kmart and its corporate parents, subsidiaries, affiliates, predecessors, successors, current and

former officers, directors, employees, and agents from any claim, liability or cause of action, at

law or in equity, that the Relator, on his own behalf or on behalf of any other party, has had,

currently has, or may in the future have, arising out of or in any way relating to the Civil Action,

the Covered Conduct or any other fact or matter regarding Relator's employment with Kmart,

including, but not limited to, any civil monetary claim the Relator has or may have on behalf of

the United States, the Medicaid Participating States, or California or Illinois, for the Covered

Conduct or the Civil Action under the False Claims Act, 31 U.S.C. §§ 3729-3733, any state FCA

statutes, or the California Insurance Fraud Prevention Act, Cal. Ins. Code §1871 et seq., or the

Illinois Insurance Claims Fraud Prevention Act, 740 Ill. Comp. Stat. §92, to include any claims

for expenses or attorney's fees and costs under those or other statutes or any other common law

or equitable cause of action.

8.    Notwithstanding the releases given in paragraphs 5 and 6 of this Agreement, or

any other term of this Agreement, the following claims of the United States are specifically

reserved and are not released:

       a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

       b.    Any criminal liability;

       c.    Except as explicitly stated in this Agreement, any administrative liability,
including mandatory and permissive exclusion from Federal health care
programs;

       d.    Any liability to the United States (or its agencies) for any conduct other
than the Covered Conduct;

       e.    Any liability based upon obligations created by this Agreement;

       f.    Any liability of individuals, except as expressly provided herein;

*U.S. ex rel. Garbe v. Kmart*

       g.     Any liability for express or implied warranty claims or other claims for

defective or deficient products or services, including quality of goods and

services; or

       h.     Any liability for failure to deliver goods or services due.

9.     Relator and his heirs, successors, attorneys, agents, and assigns shall not object to

this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under

all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt

of the payments described in Paragraph 4, Relator and his heirs, successors, attorneys, agents,

and assigns fully and finally release, waive, and forever discharge the United States, its agencies,

officers, agents, employees, and servants, from any claims arising from the filing of the Civil

Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this

Agreement and/or the Civil Action.

10.     Beyond the public financial disclosures of its corporate parent Sears Holdings

Corporation (Public Disclosures), Kmart has provided sworn financial disclosure statements

(Financial Statements) and Public Disclosures to the United States and the United States has

relied on the accuracy and completeness of those Financial Statements and Public Disclosures in

reaching this Agreement. Kmart warrants that the Financial Statements and Public Disclosures

are complete, accurate, and current, as of their date of submission, consistent with any

clarifications and/or exceptions contained therein or otherwise documented between Kmart and

the United States at the time. If the United States learns of asset(s) in which Kmart had an

interest at the time of this Agreement that were not disclosed in the Financial Statements or

Public Disclosures, or if the United States learns of any misrepresentation by Kmart on, or in

connection with, the Financial Statements or Public Disclosures, and if such nondisclosure or

misrepresentation changes the estimated net worth set forth in the Financial Statements or Public

*U.S. ex rel. Garbe v. Kmart*

Disclosures by $4,000,000 or more, the United States may at its option: (a) rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Kmart previously undisclosed. Kmart agrees not to contest any collection action undertaken by the United States pursuant to this provision if instituted before the last Settlement Payment is made, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

11.    In the event that the United States, pursuant to Paragraph 10 (concerning disclosure of assets), above, opts to rescind this Agreement, Kmart agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 60 (sixty) calendar days of written notification to Kmart that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of this Agreement. Any such rescission shall also constitute a rescission of its Agreement between Relator and Kmart.

12.    Kmart waives and shall not assert any defenses Kmart may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

*U.S. ex rel. Garbe v. Kmart*

13.    Kmart fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Kmart has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

14.    Kmart fully and finally releases the Relator and his heirs, successors, assigns, attorneys, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Kmart has asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

15.    The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier), TRICARE contractor, or any state payer, related to the Covered Conduct; and Kmart agrees not to resubmit to any Medicare contractor, TRICARE contractor, or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

16.    Kmart agrees to the following:

a.    Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Kmart, its present or former officers, directors, employees, shareholders, and agents in connection with:

*U.S. ex rel. Garbe v. Kmart*

13

(1)     the matters covered by this Agreement;

(2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     Kmart's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payments Kmart makes to the United States or Participating States pursuant to this Agreement and any payments that Kmart may make to Relator, including costs and attorneys' fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b.     <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for by Kmart, and Kmart shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Kmart or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.     <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Kmart further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph)

*U.S. ex rel. Garbe v. Kmart*

14

included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Kmart or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Kmart agrees that the United States, at a minimum, shall be entitled to recoup from Kmart any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Kmart or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Kmart or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

      d.     Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Kmart's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraphs 5, 6, 7, 9, 13, and 14 or Paragraph 18 (waiver for beneficiaries paragraph), below.

18.     Kmart agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors,

*U.S. ex rel. Garbe v. Kmart*

legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

19.    Kmart warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent notwithstanding payment of the initial Settlement Payment. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Kmart, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Kmart was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

20.    If Kmart commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Kmart's debts, or seeking to adjudicate Kmart as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Kmart or for all or any substantial part of Kmart's assets, Kmart agrees as follows:

a.    Kmart's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Kmart shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Kmart's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Kmart was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States or Relator; or (iii) the

*U.S. ex rel. Garbe v. Kmart*

mutual promises, covenants, and obligations set forth in this Agreement do not constitute a

contemporaneous exchange for new value given to Kmart.

       b.     If Kmart's obligations under this Agreement are avoided for any reason,

including, but not limited to, through the exercise of a trustee's avoidance powers under the

Bankruptcy Code, the United States, at its sole option, may rescind the releases in this

Agreement and bring any civil and/or administrative claim, action, or proceeding against Kmart

for the claims that would otherwise be covered by the releases provided in Paragraphs 5 and 6

above.  Kmart agrees that (i) any such claims, actions, or proceedings brought by the United

States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the

action, case, or proceedings described in the first clause of this Paragraph because it would be an

exercise of the United States' police and regulatory power to protect public policy and public

health, safety and welfare, Kmart shall not argue or otherwise contend that the United States'

claims, actions, or proceedings are subject to an automatic stay; (ii) Kmart shall not plead, argue,

or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or

similar theories, to any such civil or administrative claims, actions, or proceeding that are

brought by the United States within sixty (60) calendar days of written notification to Kmart that

the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses

were available on the Effective Date of the Agreement; and (iii) the United States has a valid

claim against Kmart in the amount of $111,000,000 and Relator has a valid claim against Kmart

in the amount of $16,943,108.59 for attorneys' fees and costs and $3,000,000 for state insurance

claims, and the United States and Relator may pursue their claims in the case, action, or

proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or

proceeding.

*U.S. ex rel. Garbe v. Kmart*

    c.    Kmart acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

21.    Upon receipt of the initial Settlement Payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1), subject to the terms of this Agreement. The Court, however, will retain jurisdiction to enforce this Agreement. The release by the United States shall be with prejudice as to the Covered Conduct and without prejudice as to any other claims. The release by Relator shall be with prejudice as to all claims.

22.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

23.    Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

24.    This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Illinois. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

25.    This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties. Additionally, as noted above, separate settlement agreements have been executed with the Medicaid Participating States, the California Insurance Commissioner, and the Illinois Attorney General.

26.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

*U.S. ex rel. Garbe v. Kmart*

27.    This Agreement may be executed in counterparts, each of which constitutes an

original and all of which constitute one and the same Agreement.

28.    This Agreement is binding on Kmart's successors, transferees, heirs, and assigns.

29.    This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

30.    All parties consent to the United States' disclosure of this Agreement, and

information about this Agreement, to the public.

31.    This Agreement is effective on the date of signature of the last signatory to this

Agreement and the execution of the separate settlement agreements entered into by the Medicaid

Participating States, the California Insurance Commissioner, and the Illinois Attorney General,

whichever comes latest (Effective Date of this Agreement).  Facsimiles and electronic

transmissions of signatures shall constitute acceptable, binding signatures for purposes of this

Agreement.

### THE UNITED STATES OF AMERICA

DATED: 12/18/17    BY: _____

Allie Pang
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: 12/20/17    BY: _____

Gerald Burke
Assistant United States Attorney
Southern District of Illinois

*U.S. ex rel. Garbe v. Kmart*

19

DATED: 11/27/2017    BY:

BLEY.PAUL.NICHOL
AS.1099873821

Digitally signed by
BLEY.PAUL.NICHOLAS.1099873821
DN: c=US, o=U.S. Government, ou=DoD, ou=PKI,
ou=DHA, cn=BLEY.PAUL.NICHOLAS.1099873821
Date: 2017.11.27 13:19:07 -05'00'

LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense

*U.S. ex rel. Garbe v. Kmart*

KMART CORPORATION - DEFENDANT

DATED: 12/22/17          BY: _____

~~Mark Semisch~~          DEPUTY GENERAL COUNSEL
~~General Counsel~~       AND ASSISTANT SECRETARY
Sears Holding Corporation

DATED: 12/15/17          BY: _____

Catherine M. O'Neil
William F. Johnson
Christopher C. Burris
King & Spalding LLP
Counsel for Defendant

*U.S. ex rel. Garbe v. Kmart*

21

JAMES GARBE - RELATOR

DATED: 11-27-17    BY: _____ as Guardian
Carl Ireland
Guardian for James Garbe and his estate
Relator

DATED: 12-8-2017 BY: _____
Stephen Tillery
Robert L. King
Aaron M. Zigler
Peter O. Rocque
Korein Tillery, LLC
Counsel for Relator

*U.S. ex rel. Garbe v. Kmart*

22