---On the same date of its execution I issued a first partial certified copy of this Deed to be filed at the Third Section of San Juan of the Registry of Property and the second partial certified copy to be filed at the Fourth Section of San Juan of the Registry of Property both at the request of Carl Ireland Curtiss, as guardian of James Garbe and his estate.----------------------

---I ATTEST----------------



----------------- **NUMBER TWO (2)** -----------------

-------- **DEED OF CONSTITUTION OF MORTGAGE** ---------

---In the City of San Juan, Commonwealth of Puerto Rico, this twelfth (12th) day of January, two thousand eighteen (2018). ------------------------

------------------ **BEFORE ME** --------------------

---**MIGUEL AGUSTÍN BLANCO FUERTES**, Attorney at Law and Notary Public in and for the Commonwealth of Puerto Rico, with residence located in the Municipality of San Juan, Puerto Rico and offices located at Two Hundred Nine (209) Muñoz Rivera Avenue, Popular Center Building, Suite Fourteen Thirty-four (1434), in the Hato Rey Sector of the Municipality of San Juan, Puerto Rico. ------------

--------------------- **APPEAR** ----------------------

---**AS PARTY OF THE FIRST PART: SEARS ROEBUCK DE PUERTO RICO, INC.**, a corporation organized and existing under the laws of the State of Delaware, and duly authorized to do business in the Commonwealth of Puerto Rico (hereinafter referred to as the "Mortgagor"), represented herein by its Controller, Dilia María Peña Fontanes, also known as Dilia Peña, of legal age, married, executive, and resident of San Juan, Puerto Rico, a duly appointed officer of the Mortgagor, whose authority to appear herein is evidenced by a  Secretary's Certificate executed by Joe Jordan, as Vice President and Controller of the Mortgagor, on the second (2nd) day of January, two thousand eighteen (2018) before Notary Public Laura A. Novak, a Notary Public in and for the Cook County, State of Illinois, whose commission to act as Notary on the execution date of the aforesaid Secretary's Certificate is evidenced

1

by a Certificate issued by Jesse White, as the Secretary of State of the State Illinois. ---------
---**AS PARTY OF THE SECOND PART: THE UNITED STATES OF AMERICA**, acting through the United States Department of Justice, Civil Division, Commercial Litigation Branch (hereinafter referred to as the "Mortgagee I")in turn represented through Assistant United States District Attorney, Héctor E. Ramírez Carbó, who is of legal age, married, attorney-at-law and resident of Guayama, Puerto Rico who is empowered to appear herein pursuant to the terms of a redelegation letter issued on December four (4), two thousand seventeen (2017) under the purview of the United States Attorneys' Manual, Section Four Hyphen One Point Three Hundred (4-1.300); and **CARL IRELAND CURTISS**, of legal age, married, attorney-at-law and resident of the State of Ohio, as guardian for James Garbe and his estate as Relator under a *qui tam* action filed by James Garbe against Kmart Corporation in the United States District Court for the Central District of California captioned U.S., et al., ex rel. *Garbe v. Kmart Corporation*, Case Number CV zero, eight, hyphen, zero, four, six, six, nine (No. CV08-04669) (C.D.Cal.) and subsequently transferred to the United States District Court for the Southern District of Illinois, Case Number three, colon, one, two, hyphen, cv, hyphen, zero, zero, eight, eight, one, hyphen, MJR, hyphen, PM (3:12-cv-00881-MJR-PM) (S.D. Ill.) (hereinafter referred to as the "Mortgagee II, and together with the Mortgage I, hereinafter collectively referred to as the "Mortgagee"), in turn represented through his Attorney-in-Fact, Alexandra L. Pérez Pérez, who is



of legal age, married, attorney-at-law and resident of San Juan, Puerto Rico, whose authority to appear herein in representation of the aforesaid appearing party is evidenced by a Special Power of Attorney executed in Wood County, State of Ohio on the eighth(8th) day of December, two thousand seventeen (2017), acknowledged by Notary Shannon Joseph, whose commission to act as Notary on the execution date of the aforesaid Special Power of Attorney is evidenced by a Certificate of Official Character issued by Cindy A. Hofner, as Clerk of Courts, Wood County, State of Ohio. The aforesaid Special Power of Attorney was protocolized under the laws of the Commonwealth of Puerto Rico pursuant to Deed Number One (1) executed in San Juan, Puerto Rico on the twelfth (12th) day of January, two thousand eighteen (2018) before the undersigned Notary Public. ------ ---Pursuant to Article Ten (10) of the Registry of Property of the Commonwealth of Puerto Rico Act, Act Number Two Hundred Ten (210) of December eight (8), two thousand fifteen (2015) (the "Registry Act"), I, the Notary, certify that the Secretary's Certificate, aforesaid redelegation letter and the aforesaid Deed of Protocolization of Special Power of Attorney, as the case may be, which attest to the respective representative capacity of the natural persons appearing on behalf of the appearing parties, comply with the requirements of Puerto Rico law. ----------------------------------------- ---I, the Notary, do hereby certify that I personally know the natural persons appearing on behalf of the Mortgagor and the Mortgagee, and from their statements I also attest as to their age, civil



3

status, occupation and residence. They assure me that they have, and in my judgment they do have, the legal capacity and knowledge of the English language necessary for this act, and for that purpose, they freely and voluntarily: --------------------------

--------------------- **STATE**----------------------

---**FIRST**: <u>The Property</u>: The Mortgagor is the owner of record with valid, good, insurable and marketable fee simple title ("pleno dominio") of the real properties described in paragraph TWENTY-SECOND of this Deed (hereinafter collectively referred to as the "Property"). --------------------------------

---**SECOND**: <u>The Mortgage Note</u>: Simultaneously herewith Mortgagor has subscribed before the undersigned Notary a Mortgage Note (hereinafter referred to as the "Mortgage Note"), which is literally transcribed in paragraph THIRTEENTH hereof. ------------------------------------------

---**THIRD**: <u>Creation of the Mortgage</u>: In order to guarantee and secure: ----------------------------

-----(i) The full and complete payment of the principal of the Mortgage Note and the interest accruing thereon, as herein established. ----------

-----(ii) The performance and observance of the terms and conditions contained herein and in the Mortgage Note. ------------------------------------

---Mortgagor hereby constitutes and creates a voluntary mortgage (hereinafter referred to as the "Mortgage") and security interest in favor of the Mortgagee or any future holder or transferee of the Mortgage Note, or the person entitled to enforce the instrument, on the following properties (hereinafter collectively referred to as the "Mortgaged



4

Property"): -------------------------------------
-----(a) the Property, which is described in paragraph TWENTY-SECOND of this Deed; -------------
-----(b) all of Mortgagor's buildings, structures, additions, fixtures, improvements, appurtenances and facilities now located thereon and all new buildings and structures, additions, fixtures, and improvements hereafter erected or placed or constructed on the Property and all materials intended for the construction, reconstruction, alteration and repair of such buildings, structures, fixtures or improvements now or hereafter erected thereon or hereafter constructed, all of which materials shall be deemed to be included within the Mortgaged Property immediately upon the delivery thereof to the Property; -------------------------
-----(c) all of the rights, title and interest of the Mortgagor in and to all and singular the tenements, hereditaments, rights of way, easements, appendages and appurtenances, licenses, passages, waters, water rights, riparian rights, and other rights, liberties and privileges thereof or in any way or hereafter appertaining, including any other claim at law or in equity, franchise or license and the reversion and reversions, and remainder and remainders thereof and any other property belonging or appertaining to the Mortgaged Property, and all of the right, title and interest of the Mortgagor and/or the Property in and to any streets, ways, alleys, strips or gores of land adjoining the Mortgaged Property or any part thereof; -----------
-----(d) all indemnities to which Mortgagor and the Mortgagee may be entitled under any policy of



5

insurance covering the Mortgaged Property or any part thereof, subject to the terms of section five (5) of paragraph FOURTH hereof; --------------------------(e) all of the Mortgagor's rights, title and interest to all furniture, furnishings, fixtures, machinery, apparatus and equipment, now or hereafter located on the Property, or located in, or used, or procured for use, in connection with the operation, maintenance or protection of any of the buildings, structures, improvements or facilities located or to be located in the Property, including, without limitation, lighting, plumbing, sanitary, air conditioning equipment and fire protection systems, now owned or hereafter acquired by the Mortgagor, which under the Civil Code of Puerto Rico may properly be characterized or classified as real or immovable property either by nature or by destination; and ----------------------------------------(f) all renewals and replacements of, substitutions for and additions to the Property, and all other property, real, personal or mixed, now owned or hereafter acquired by Mortgagor or in any way appertaining to such Property or any part thereof, as well as all lands which may be consolidated or grouped with the Property. -----------**FOURTH**: <u>Obligations of Mortgagor</u>: The Mortgagor agrees as follows: ----------------------------------------One: To satisfy the debt as set forth in the Mortgage Note. ----------------------------------------Two: To pay prior to delinquency and without requiring any notice from Mortgagee, all Impositions (as defined below) and satisfy any claim, lien or encumbrance against the Mortgaged Property which may

be or become senior to this Mortgage, and to permit no default or delinquency on any other lien, encumbrance or charge against the Mortgaged Property, unless and to the extent only that any such item is being contested in good faith by appropriate proceedings and appropriate reserves have been set aside with respect thereto in conformity with generally accepted accounting principles in effect from time to time in the United States of America. -------------------------------

-----Three: To maintain the Mortgaged Property as required under any pledge agreement or other instrument under which the Mortgage Note is assigned or pledged. In the event the Mortgagor fails to care for and maintain in good condition the buildings existing upon or that may in the future be constructed on the Mortgaged Property or the improvements to the same, the Mortgagee, after giving reasonable prior written notice to Mortgagor and reasonable time to remedy, may make such repairs as in its judgment may be necessary for the preservation of the Mortgaged Property and its appurtenances, and the total sum thus invested shall be considered as due and payable and shall be secured by the Mortgage herein constituted. ---------------

-----Four: To pay all reasonable costs, expenses and disbursements, including a reasonable amount for attorneys' fees, as well as all reasonable expenses incurred or satisfied by the Mortgagee at any time for perfection of title of the Mortgaged Property, and all such costs, expenses and disbursements of Mortgagee, if satisfied by Mortgagee, shall be secured in their entirety by the Mortgage herein



7

constituted. ---------------------------------------
-----Five: To keep the Mortgaged Property insured against such hazards and with such coverage as may be required under any pledge agreement or other instrument under which the Mortgage Note is assigned or pledged Such insurance policies (including, without limitation, the corresponding flood insurance policy, as applicable) shall be in form and in amounts and with insurance companies acceptable to the Mortgagee. ----------------------
-----Six: To furnish Mortgagee within ten (10) business days after request in person, or within twenty (20) business days after request by mail, a written statement duly acknowledging the amount due on or secured by this Mortgage or the Mortgage Note, whether for principal or interest and whether any offsets or defenses exist against such debt. ------
-----Seven: To comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Mortgaged Property and the operation thereof. -------------------------------------------
-----Eight: To deliver to Mortgagee with reasonable promptness such information with respect to the Mortgaged Property as Mortgagee may reasonably request from time to time. -----------------------
---**FIFTH**: Condemnation: In the event of a taking of all or any part of the Mortgaged Property as a result of or in lieu of condemnation or eminent domain, Mortgagee shall be entitled to receive all awards and payments made on account of such taking up to the amount secured hereby or as provided in the pledge agreement or other instrument under which the Mortgage Note is assigned or pledged.   Mortgagor



8

will pay all costs and reasonable expenses (including, without limitation, reasonable attorneys' fees and expenses) of Mortgagee in connection with any such taking and seeking and obtaining any award or payment in respect thereof. All awards and payments collected by Mortgagee, after deducting therefrom all costs and reasonable expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred in the seeking and obtaining thereof, shall be applied by Mortgagee as set forth in the pledge agreement or other instrument under which the Mortgage Note is assigned or pledged. -----------------------------

---**SIXTH**: <u>Additional Advances</u>: If Mortgagor should fail to make punctual payment of any Impositions (as such term is defined below), or should fail to maintain insurance coverage on the Mortgaged Property, or any part thereof, as required from time to time by the Mortgagee, or should fail to discharge any mortgage, lien, encumbrance or charge upon the Mortgaged Property, or any part thereof, which is prohibited herein or by the terms of the pledge agreement or other instrument under which the Mortgage Note is assigned or pledged, or should fail to maintain the Mortgaged Property in good condition or should fail to clean the Mortgaged Property from any Lead Based Paint or remediate any environmental condition as required by any applicable laws and regulations, or should fail to perform any other term or covenant hereof or of such pledge agreement or other instrument under which the Mortgage Note is pledged or assigned, then Mortgagee, after giving prior notice to Mortgagor, but without consent of or



9

demand upon Mortgagor and without waiving or releasing any obligation or default, may (but shall be under no obligation to) advance such funds as may in Mortgagee's judgment be needed for the purpose of performing such terms or covenants and Mortgagee may, in such event, take such other and further action as it may consider necessary or appropriate for such purposes. All sums so advanced or paid by Mortgagee and all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) so incurred, together with interest thereon at the interest rate set forth in the Mortgage Note from the date of payment or incurring, shall constitute additional Indebtedness (as defined below) secured by this Mortgage and shall be paid by Mortgagor to Mortgagee on demand.

---**SEVENTH:** Further Assurances; Additional Security: Mortgagor, at its expense, will execute, acknowledge, deliver and record all such instruments and take all such action as Mortgagee from time to time may reasonably request for better assuring to Mortgagee the property and rights hereby mortgaged and assigned or intended so to be. Without notice to or consent of Mortgagor, and without impairment of the lien of, and rights under this Mortgage, Mortgagee may take (but Mortgagor shall not be obligated to furnish) from Mortgagor or from any other person or persons additional security for the Mortgage Note or for the obligations of the Mortgagor secured by the assignment or pledge of the Mortgage Note; and neither the giving of this Mortgage nor the acceptance of any such additional security shall prevent Mortgagee from resorting



10

first to such additional security, or to the security created by this Mortgage, in either case without affecting Mortgagee's lien and rights under this Mortgage. ------------------------------------

---**EIGHTH**: <u>Foreclosure Valuation</u>: In compliance with Article Eighty (80) of the Registry Act, Mortgagor hereby declares and agrees that the value of the Mortgaged Property is as set forth in Paragraph FOURTEENTH hereof under the title "Foreclosure Valuation". --------------------------------------

---**NINTH**: <u>Default; Remedies; Foreclosure</u>: The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder: -

-----(a) if default shall be made in the due and punctual payment of any principal of and/or interest on the Mortgage Note when and as the same shall become due and payable; or ------------------------

-----(b) if default shall be made by Mortgagor in the due performance of and/or compliance with any of the terms of this Mortgage; or --------------------

-----(c) if a default or an event of default shall exist under the Mortgage Note, or under any document or agreement pursuant to which the Mortgage Note is pledged, assigned, or otherwise encumbered; or ----

-----(d) if any material representation or warranty of Mortgagor made herein or in any document or agreement pursuant to which the Mortgage Note is pledged, assigned, or otherwise encumbered shall be false in any material respect on the date when made.

-----(e) If the Mortgagor defaults or breaches any of the terms of the Settlement Agreement entered into between Mortgagor and Mortgagee on December twenty-two (22), two thousand seventeen (2017). ---



---Upon the occurrence of any Event of Default (in addition to any other remedies for which the holder of the Mortgage Note or the person entitled to enforce the instrument may be entitled under this Mortgage, the Mortgage Note, or any document or agreement pursuant to which the Mortgage Note is pledged, assigned, or otherwise encumbered), then, upon expiration of any applicable notice, grace and/or cure period, the entire principal amount of the Mortgage Note at the time outstanding shall, at the option of the holder of the Mortgage Note or the person entitled to enforce the instrument, become immediately due and payable without notice or demand.  Failure to exercise this option shall not constitute a waiver of the right to exercise such option in the event of any subsequent default. Mortgagor will pay all costs and expenses incurred by or on behalf of the holder of the Mortgage Note or the person entitled to enforce the instrument (including, without limitation, reasonable attorneys' fees and expenses) in enforcing the Mortgage Note or this Mortgage, or occasioned by any default or Event of Default hereunder. ------------

---Mortgagee may, at its option, upon the occurrence of an Event of Default, proceed to enforce the payment of the Mortgage Note in accordance with the terms hereof and thereof and/or foreclose the lien of this Mortgage as against all or any part of the Mortgaged Property (by summary proceedings or otherwise) and have the same sold under the judgment or decree of a court of competent jurisdiction and/or exercise any other remedies provided by the laws of the Commonwealth of Puerto Rico. ----------



---**TENTH:** Expenses of Deed; Recording Fees; Cancellation of Mortgage: All costs and expenses relating to the drafting, preparation and execution of this Deed, its filing and recording in the corresponding section of the Registry of Property of Puerto Rico, the cancellation of any liens or encumbrances affecting the Property, and the eventual cancellation of this Mortgage shall be for the account of the Mortgagor.  Should the Mortgagor satisfy in full the Mortgage Note and the obligations for which the Mortgage Note is pledged or assigned as collateral security in the time and manner heretofore set forth, and comply with, and diligently execute, all agreements and stipulations herein set forth, then Mortgagee shall endorse the Mortgage Note without recourse, representations or warranties or shall endorse the same for cancellation purposes only, delivering the Mortgage Note so endorsed to the Mortgagor.  Mortgagor shall be responsible for all costs and expenses relating to the cancellation of this Mortgage. -------------



---**ELEVENTH:** Definitions: As used in this Mortgage, the following terms are defined as follows: (a) "Impositions" shall mean all real estate and other taxes, all assessments made (including, without limitation, all assessments for public improvements or benefits, whether or not commenced or completed prior to the date hereof or while this Mortgage is in force), water, sewer, electricity, utility and other rents, rates and charges, excises, levies, license fees, permit fees, inspection fees and other authorization fees and other charges, in each case whether general or special, ordinary or

13

extraordinary, or foreseen or unforeseen of every character (including all penalties or interest thereon) which at any time are assessed, levied, confirmed or imposed on or in respect of or be a lien upon (i) the Mortgaged Property or any part thereof or any rents, issues, income, profits or earnings therefrom or any estate, right or interest therein or (ii) any occupancy, use or possession of or sales from the Mortgaged Property or any part thereof or (iii) this Mortgage, any interest hereon or any other payments due from the Mortgagor under the terms of this Mortgage; excepting, however, the income taxes now or hereafter imposed by the United States of America under the Internal Revenue Code, as amended, and by the Commonwealth of Puerto Rico under the Internal Revenue Code of Puerto Rico, as amended, the Municipal License Tax Act, as amended, or under any other Act of Congress or Act of the Legislature of Puerto Rico of the same nature, modifying, amending, or substituting the statutes above mentioned, as long as they do not become a lien on the Mortgaged Property; (b) "Indebtedness" shall mean (i) the Impositions; (ii) principal and interest of the Mortgage Note; (iii) the Additional Credits referenced in paragraph FOURTEENTH of this Deed; and (iv) any and all payments which Mortgagor is or may be obliged to make under this Deed or under the pledge agreement or other instrument under which the Mortgage Note is pledged or assigned. ---------
---**TWELFTH**: Successors and Assigns: All the terms of this Mortgage shall apply to and be binding upon the successors and assigns of Mortgagor and all persons claiming under or through Mortgagor or any such



14

successor or assign, and shall inure to the benefit of Mortgagee and any transferee of the Mortgage Note. Neither this Mortgage nor any term hereof may be changed, waived, discharged or terminated verbally, but only by a public deed executed by the Mortgagee, notice of which is endorsed on the Mortgage Note. ------------------------------------

---**THIRTEENTH**: <u>The Mortgage Note</u>: The Mortgage Note referred to in paragraph SECOND of this Deed is literally transcribed herein as follows: ----------

----------------- "**<u>MORTGAGE NOTE</u>** -------------------

---**VALUE: $17,400,000** ----------------------------

---**DUE: December 22, 2019** -----------------------

---**FOR VALUE RECEIVED,** the undersigned promises to pay to the order of **THE UNITED STATES OF AMERICA** and **CARL IRELAND**, as guardian for James Garbe and his estate, as joint and several creditors (*acreedores solidarios*) the principal sum of **SEVENTEEN MILLION FOUR HUNDRED THOUSAND DOLLARS ($17,400,000.00)**, with interest on the unpaid balance at a rate equal to one point five percent (1.5%) per annum. Interest due under this Mortgage Note shall be computed on the basis of a three hundred sixty (360) day year for the actual number of days elapsed from the date of this Mortgage Note until full payment hereof (including the first day but excluding the last day). Payments of interest and principal hereunder shall be made at the office or domicile of the holder of this Mortgage Note or the person entitled to enforce the instrument within the Commonwealth of Puerto Rico, or at such other place as the holder of this Mortgage Note or the person entitled to enforce the instrument may from time to time designate in writing. -----------------------------------------

---Anything herein to the contrary notwithstanding, if the rate of interest required to be paid hereunder exceeds the maximum rate lawfully chargeable, the rate of interest to be paid shall be automatically reduced to the maximum rate lawfully chargeable so that no amounts shall be charged which are in excess thereof, and, in the event it should be determined that any excess over such highest lawful rate has been charged or received, the holder hereof or the person entitled to enforce the instrument shall promptly refund such excess to the undersigned. ---

---In the event the holder of this Mortgage Note or the person entitled to enforce the instrument resorts to any court (including any bankruptcy court) or initiates mortgage foreclosure proceedings, regardless of its nature, to collect in full or in part the principal amount hereof and/or



15

any interest accrued thereon, the undersigned shall pay to said holder or person entitled to enforce the instrument a sum of up to five percent (5%) of the principal balance hereof for the actual aggregate cost of the disbursements, expenses and reasonable attorneys' fees which may be incurred by the holder hereof or the person entitled to enforce the instrument, which amount shall immediately become liquid, due and payable upon the filing of the petition or complaint. ---------------------------

---The undersigned, and all others who may become liable for all or any part of this obligation, whether as maker, principal, surety, guarantor or endorser, shall be jointly and severally ("solidariamente") liable and jointly and severally ("solidariamente") waive demand, presentment, protest, notice of dishonor and non-payment and any and all lack of diligence or delays in collection or enforcement hereof, and expressly agree and consent (i) to any extension of time, modification of the terms of payment, release of any party liable for this obligation, release, substitution or exchange of any property, real or personal, tangible or intangible, guaranteeing payment of the mortgage securing this Mortgage Note, and (ii) that any other indulgence or forbearance may be made without notice to said party, and without in any way affecting the liability of any party obligated hereunder. -------

---Payments of both principal and interest are to be made in lawful money of the United States of America.

---This Mortgage Note is secured by a mortgage constituted pursuant to Deed Number Two(2) of Constitution of Mortgage executed on the date hereof before Notary Public Miguel Agustín Blanco Fuertes(the "Deed of Mortgage"), and the holder of this Mortgage Note or the person entitled to enforce the instrument is entitled to the rights, benefits and security of all of the provisions and conditions set forth in the Deed of Mortgage and in any pledge agreement or other instrument executed by the undersigned assigning, pledging, or otherwise encumbering this Mortgage Note as security for the obligations described therein, and may enforce the agreements of the undersigned contained in the Deed of Mortgage and in each of said agreements or instruments, and may exercise the remedies provided thereby or otherwise in respect thereof without being required first to foreclosure on the pledge or other lien or encumbrances so constituted upon this Mortgage Note, all in accordance with the terms of the Deed of Mortgage and said agreements or instruments. No reference herein to the Deed of Mortgage and said agreements or instruments and no provision of this Mortgage Note or of said agreements or instruments shall alter or impair the obligations of the undersigned hereunder, which are continuing, absolute and unconditional, nor shall such reference affect the negotiability hereof under the Commercial Transactions Act of Puerto Rico, or any other applicable law. ------------------------

---The occurrence of any one or more of the following events shall constitute an "Event of Default"



hereunder: -------------------------------------

-----(a) if default shall be made in the due and punctual payment of any principal of and/or interest on this Mortgage Note when and as the same shall become due and payable; or -----------------------

-----(b) if default shall be made by the undersigned in the due performance of and/or compliance with any of the terms of the Deed of Mortgage; or ----------

-----(c) if a default or an event of default shall exist under this Mortgage Note, or under any document or agreement pursuant to which this Mortgage Note is pledged, assigned, or otherwise encumbered; or -----------------------------------

-----(d) if any material representation or warranty of the undersigned made herein or in any document or agreement pursuant to which this Mortgage Note is pledged, assigned, or otherwise encumbered shall be false in any material respect on the date when made.

-----(e) If the Mortgagor defaults or breaches any of the terms of the Settlement Agreement entered into between Mortgagor and Mortgagee on December twenty-two (22), two thousand seventeen (2017). ---

---Upon the occurrence of any Event of Default (in addition to any other remedies for which the holder of this Mortgage Note or the person entitled to enforce the instrument may be entitled under this Mortgage Note, the Deed of Mortgage, or any document or agreement pursuant to which this Mortgage Note is pledged, assigned, or otherwise encumbered), then, upon expiration of any applicable notice, grace and/or cure period, the entire principal amount of this Mortgage Note at the time outstanding shall, at the option of the holder of this Mortgage Note or the person entitled to enforce the instrument, become immediately due and payable without notice or demand.  Failure to exercise this option shall not constitute a waiver of the right to exercise such option in the event of any subsequent default.  The undersigned will pay all costs and expenses incurred by or on behalf of the holder of this Mortgage Note or the person entitled to enforce the instrument (including, without limitation, reasonable attorneys' fees and expenses) in enforcing this Mortgage Note or the Deed of Mortgage, or occasioned by any default or Event of Default hereunder. -----

---The undersigned hereby waives presentment for payment, demand, protest, notice of dishonor hereof, and further hereby waives all benefit of valuation, appraisement, and execution laws. The holder hereof or the person entitled to enforce the instrument may extend the time of payment of this Mortgage Note, postpone the enforcement hereof, grant any other indulgence and add or release any party primarily or secondarily liable hereon, without affecting or diminishing the right or recourse of the holder hereof or the person entitled to enforce the instrument against the makers, endorsers and all parties to this Mortgage Note, which right is hereby expressly reserved. ------------------------------



---In San Juan, Puerto Rico, this twelfth (12th) day of January, two thousand eighteen (2018). ---------

-----**SEARS ROEBUCK DE PUERTO RICO, INC.** -----------
-----By: (Signed) Dilia María Peña Fontanes -------
-----Name: Dilia María Peña Fontanes --------------
-----Title: Controller --------------------------

---Affidavit Number: -2888- ---------------------

---Acknowledged and subscribed before me by Dilia María Peña Fontanes, of legal age, married, executive, and resident of San Juan, Puerto Rico, as Controller of **SEARS ROEBUCK DE PUERTO RICO, INC.**, personally known to me.  In San Juan, Puerto Rico, this twelfth (12th) day of January, two thousand eighteen (2018). -------------------------------

-------(Signed) Miguel Agustín Blanco Fuertes -----
---------------NOTARY PUBLIC --------------------
---------------(Notarial Seal)" -------------------

---**FOURTEENTH:** <u>Mortgage Sums:</u> --------------------

-----(i) The amount of the mortgage credit constituted and created to secure payment of the Mortgage Note is SEVENTEEN MILLION FOUR HUNDRED THOUSAND DOLLARS ($17,400,000.00), which is the foreclosure valuation for the first auction in the event of foreclosure. Property I (as such term is defined in the TWENTY SECOND PARAGRAPH of this Deed) responds for FIFTEEN MILLION FOUR HUNDRED EIGHTY THOUSAND DOLLARS ($15,480,000.00) and Property II (as such term is defined in the TWENTY SECOND PARAGRAPH of this Deed) responds for ONE MILLION NINE HUNDRED TWENTY THOUSAND DOLLARS ($1,920,000.00). -------------------------------

-----(ii) As permitted under Article Sixty-six (66) of the Registry Act, the mortgaged lien constituted hereunder shall secure five (5) annuities of interest of the Mortgage Note. -------------------

-----(iii) Pursuant to Article Ninety-four (94) of the Registry Act, the Mortgagor covenants and agrees that the Mortgaged Property shall secure the attorney's fees and costs incurred by the Mortgagee



18

in any judicial action filed to foreclose this Mortgage or collect any amounts owed under the Mortgage Note up to the amount of EIGHT HUNDRED SEVENTY THOUSAND DOLLARS ($870,000.00). Property I (as such term is defined in the TWENTY SECOND PARAGRAPH of this Deed) responds for SEVEN HUNDRED SEVENTY THREE THOUSAND NINE HUNDRED FIFTY TWO DOLLARS ($773,952.00) and Property II (as such term is defined in the TWENTY SECOND PARAGRAPH of this Deed) responds for NINETY SIX THOUSAND FORTY EIGHT DOLLARS ($96,048.00). ----------------------------

---**FIFTEENTH**:     Mortgagor     Warranties     and Representations: Mortgagor represents and warrants that: ----------------------------------------------

-----(i) It is the owner with valid, good, insurable and marketable fee simple title ("pleno dominio") to the Mortgaged Property and to all rights and titles appertaining thereto. ----------------------------

-----(ii) It has good and lawful authority to mortgage the Mortgaged Property and all rights appertaining thereto, in the manner and form hereby mortgaged. ----------------------------------------

-----(iii) The Mortgaged Property is free and clear of all liens and encumbrances whatsoever on a parity with or superior to the liens of this Mortgage, except for those set forth in paragraph TWENTY-SECOND of this Deed, if any and the Permitted Encumbrances as defined in the pledge agreement under which the Mortgage Note is assigned or pledged as security. --------------------------------------

-----(iv) The Mortgaged Property is free from unpaid taxes and assessments. --------------------------

-----(v) It will warrant and defend said Mortgaged



19

Property and the validity and priority of this Mortgage against all and every person or persons claiming the same or any part thereof. ------------ -----(vi) It will execute whatever additional documents or instruments may be necessary to record this Deed as a mortgage lien on the Mortgaged Property in the Registry of Property of Puerto Rico as required by Mortgagee. ------------------------ ---**SIXTEENTH**: Notice: All notices or demands in writing sent by registered or certified mail, return receipt requested, through the United States mail, addressed to the owner of record of the Mortgaged Property shall constitute sufficient notice and demand upon the Mortgagor in any of the cases required by this instrument or by the relevant provisions of law.  The Mortgagor will give immediate notice by mail to the Mortgagee of any proposed condemnation proceedings and of any fire, damage, or other casualty to the Mortgaged Property or of any conveyance transfer or change of ownership of the fee.  The holder of the Mortgage Note or the person entitled to enforce the instrument, its agents or servants shall have the right to inspect the Mortgaged Property from time to time during normal business hours and as often as the Mortgagee may reasonably request. -------------------------- ---**SEVENTEENTH**: Waiver of Moratorium and Redemption: The Mortgagor, to the full extent that it may lawfully do so, agrees that it will not at any time insist upon or plead or in any way take advantage of, and hereby waives, any redemption or moratorium law now or hereafter in force and effect which would prevent or hinder the enforcement of the provisions



20

of this Deed or any rights or remedies the Mortgagee may have hereunder or by law. --------------------

---**EIGHTEENTH**: <u>Rights of Way, Easements and Similar Entitlements</u>: The Mortgagor will maintain, preserve and renew all rights of way, easements, apparent signs, grants, privileges, licenses and franchises reasonably necessary for the use of the Mortgaged Property from time to time and will not, without the prior written consent of the Mortgagee, initiate, join in or consent to any private restrictive covenant, zoning ordinance, or other public or private restriction as to the use of the Mortgaged Property which could have a material adverse effect on the Mortgaged Property. -----------------------

---**NINETEENTH**: <u>Mortgage Interest Not Usurious</u>: ----

---Anything herein to the contrary notwithstanding, the obligations of the Mortgagor under this Mortgage shall be subject to the limitation that payments of interest shall not be required to the extent that receipt of any such payment by the Mortgagee would be contrary to provisions of law applicable to the Mortgagee limiting the maximum rate of interest which may be charged or collected by the Mortgagee.

---**TWENTY**: <u>Indemnification</u>: Mortgagor will protect, indemnify and save harmless Mortgagee, its officers, directors and employees from and against any liabilities, obligations, damages, penalties, claims, causes of action, costs, charges and expenses (including, without limitation, attorneys' fees and expenses) which may be imposed upon or incurred by or asserted against Mortgagee, except those caused by Mortgagee, its agents or employees, by reason of (a) any accident, injury or damage to



21

any person or property occurring on or about the Mortgaged Property or any part thereof; (b) any use or condition of the Mortgaged Property or any part thereof; (c) any failure of the Mortgagor to perform or comply with any of the provisions hereof, including, without limitation, the provisions of paragraph TWENTY-FOURTH of this Deed; or (d) any necessity to defend any of the rights, title or interest conveyed or created by this Mortgage. ----

---Upon receipt by Mortgagee of a notice of any claim or of the commencement of any action against Mortgagee in respect to the above indemnity or to any indemnity or contribution agreement contained herein, Mortgagee will promptly give written notice of the claim or commencement of action to Mortgagor. In case such notice or any such claim or action shall be given, Mortgagor may assume the defense of such claim or action, including the employment of counsel and payment of expenses.  Mortgagee shall have the right to employ its own counsel in any such case, but the fees and expenses of such counsel shall be at the expense of Mortgagee unless the employment of such counsel shall have been authorized in writing by the Mortgagor or if Mortgagor shall not promptly have employed counsel to take charge of the defense of such claim or action or Mortgagee shall have reasonably concluded that there may be defenses available to it which are different from or additional to those available to Mortgagor (in which case Mortgagor shall not have the right to direct the defense of such claim or action on behalf of the Mortgagee), in any of which events such fees and expenses shall be borne by the Mortgagor. ---------



22

---Any amounts payable to Mortgagee under this paragraph TWENTY which are not paid within ten (10) days after written demand therefor by Mortgagee shall bear interest at the rate set forth in the Mortgage Note, from the date of such demand, and such amounts, together with interest, shall be deemed indebtedness secured by this Mortgage. The rights granted to Mortgagee under this paragraph shall survive payment of the Mortgage Note. -------

---**TWENTY-FIRST**: <u>Limitations on Liens</u>: Except with the prior written consent of Mortgagee, Mortgagor shall not create, assume, incur or suffer to exist any mortgage, pledge, lien, charge or other security interest or encumbrance on the Mortgaged Property or any part thereof other than the following: --------

-----(a) the lien of the mortgage constituted pursuant to the terms of this Deed; ---------------

-----(b) those set forth in paragraph TWENTY-SECOND of this Deed; ------------------------------------

-----(c) those permitted under any pledge agreement or other instrument under which the Mortgage Note is pledged or assigned and under any trust agreement, credit agreement or loan agreement secured thereby.

---**TWENTY-SECOND**: <u>Description of the Property</u>: The Property is described in the Registry of Property of Puerto Rico, in the Spanish language as follows: --

-----A. "**RUSTICA**: Predio de terreno radicado en el Barrio Monacillos del término municipal de Río Piedras, compuesto de 7.6575 cuerdas equivalentes a 30,096.9387 metros cuadrados, marcada como Parcela "A" en el plano de inscripción aprobado y certificado por la Junta de Planificación caso No.60-1820. En colindancia, por el Norte con la Parcela "C" y "E" de la finca principal de la cual se segrega; por el Sur, con franja de terreno del Estado Libre Asociado de Puerto Rico y por la Carretera Estatal No.176; por el Este, colinda con una franja libre a dedicarse al Gobierno del Estado Libre Asociado de Puerto Rico, cuya franja se denomina parcela "B" en el plano de inscripción la



cual colinda con la orilla Oeste del Río Piedras ye s de 10.00 metros de ancho; y por el Oeste, con la Carretera Estatal No.176 y la parcela "E" de la finca principal de la cual se hace segregación." --------

-----Recorded at 221 of volume 466 of Monacillos, property number 17,328, Registry of Property of Puerto Rico, Third Section of San Juan (hereinafter referred to as "Property I"). --------------------

---Mortgagor acquired title to Property I pursuant to Deed Number Six (6) executed in San Juan, Puerto Rico on June seven (7), nineteen hundred sixty-one (1961), before Notary Public William Beverly, recorded in the Registry of Property of Puerto Rico, Third (3rd) Section of San Juan at the overleaf of page 221 of volume 466 of Monacillos, property number 17,328, second(2nd) inscription. -------------------------------------

-----Property I is free and clear of liens and encumbrances. ------------------------------------

-----B. "**RUSTICA:** Parcela de terreno sita en el Barrio Cupey del término de Río Piedras, compuesta de 28,831.70 metros cuadrados, equivalentes a 7.3354 cuerdas, en colindancias, por el Norte, en una línea quebrada de 128.29 metros de longitud, con el Río Piedras y en otra distancia recta de 220.24 metros de longitud, siguiendo el eje de la Quebrada Guaracanal ya canalizada con la finca Mariana de la Universidad de Puerto Rico; por el Este, en una línea quebrada de 194.37 metros de longitud, con el remanente de la finca principal propiedad de la Sucesión de Guillermo S. Pierluisi; por el Sur, en una distancia de 68.39 metros, con una franja de terreno que se segregó de la misma Finca principal y de dedicó a uso público para el Ensanche de la Carretera Estatal No.176; y por el Oeste, en una distancia quebrada de 323.62 metros, con el Río Piedras." ----------------------------------------

-----Recorded at page 181 of volumen 302 of Río Piedras Sur, property number 9,717, Registry of Property of Puerto Rico, Fourth Section of San Juan (hereinafter referred to as "Property II"). -------

---Mortgagor acquired title to Property II pursuant to a consolidation of parcels effected by Deed Number Five (5) executed in San Juan, Puerto Rico on March twenty-one (21), nineteen hundred seventy-nine (1979), before Notary Public Juan M. Casse



24

Ballesteros, recorded in the Registry of Property of Puerto Rico, Fourth (4th) Section of San Juan at page 181 of volume 302 of Río Piedras Sur, property number 9,717, first (1st) inscription. ------------

---Property II is subject to the following liens and encumbrances: -------------------------------------

-----(a) By its origin Property II is subject to an easement in favor of the Puerto Rico Aqueduct and Sewer Authority and to a right of way easement. ---

-----(b) By itself Property II is free and clear of liens and encumbrances. --------------------------

---**TWENTY-THIRD**: <u>Miscellaneous</u>: -------------------

-----(a) The headings of the paragraphs of this Deed have been inserted for convenience or reference only and shall in no way define, modify or restrict any of the provisions hereof. ------------------------

-----(b) If any one or more of the provisions contained herein or in the Mortgage Note shall be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof or thereof, but each shall be considered as if such illegal, invalid or unenforceable provision had never been included. --

-----(c) No failure or delay on the part of the Mortgagee in exercising any power or right hereunder shall operate as a waiver thereof or a waiver of any other term, provision or condition hereof (no single or partial exercise of any such right or power shall preclude any other or further exercise thereof or the exercise of any other right or power hereunder) and all rights and remedies of the Mortgagee hereunder are cumulative and shall not be deemed



25

exclusive of any rights or remedies provided by law.

-----(d) No change, amendment, modification, cancellation or discharge of this Deed, or any part hereof shall be valid unless contained in a public instrument executed by Mortgagor and Mortgagee hereto or their respective successors and assigns.

-----(e) Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Deed and the Mortgage Note. --

---**TWENTY-FOURTH**: Environmental Matters: ----------

-----(a) Hazardous Substances. The Mortgagor shall:

-------(i) not store (except in strict compliance with all laws, ordinances, and regulations pertaining thereto), dispose of, release or allow the release of any hazardous substance, solid waste or oil, as defined in forty-two (42) United States Code ("USC") Sections nine six zero one (9601) et sequitur, forty-two (42) USC Sections six nine zero one (6901) et sequitur, fifteen (15) USC sections two six zero one (2601) et sequitur, and the regulations promulgated thereunder, and all applicable federal, state and local laws, rules and regulations, on the Mortgaged Property; ----------

-------(ii) neither directly nor indirectly transport or arrange for the transport of any hazardous substance or oil (except in strict compliance with all laws, ordinances and regulations pertaining thereto); ----------------------------

-------(iii) in the event of any change in the laws governing the assessment, release or removal of hazardous substances, which change would lead a prudent lender to require additional testing to avail itself of any statutory insurance or limited



26

liability, take all such action (including, without limitation, the conducting of engineering tests at the sole expense of the Mortgagor) to confirm that no hazardous substance or oil is or ever was stored, released or disposed of on the Mortgaged Property; and ----------------------------------------------------(iv) provide the Mortgagee with written notice: (aa) upon the Mortgagor obtaining knowledge of the release of any hazardous substance or oil at or from the Mortgaged Property; (bb) upon the Mortgagor's receipt of any notice to such effect from any federal, state, or other governmental authority making an assessment of any expense incurred in connection with the containment, removal or remediation of any hazardous substance or oil at or from the Mortgaged Property for which the Mortgagor may be liable or for which expense a lien may be imposed on the Mortgaged Property. ------------For purposes of this paragraph TWENTY-FOURTH, the terms "hazardous substance" and "release" shall have the meanings specified in the Comprehensive Environmental Response, Compensation and Liability Act of nineteen hundred eighty (1980), forty two (42) USC Sections nine six zero one (9601) <u>et sequitur</u> (hereinafter referred to as "CERCLA"), and the terms "solid waste" and "disposal" (or "disposed") shall have the meanings specified in the Resource Conservation and Recovery Act of nineteen hundred seventy six (1976), forty two (42) USC Sections six nine zero one (6901) <u>et sequitur</u> (hereinafter referred to as "RCRA"), and regulations promulgated thereunder; provided, in the event either CERCLA or RCRA is amended so as to broaden



27

the meaning of any term defined thereby, such broader meaning shall apply as of the effective date of such amendment and provided further, to the extent that the laws of the jurisdiction where the Mortgaged Property is located establish a meaning for "hazardous substance", "release", "solid waste", or "disposal" which is broader than specified in either CERCLA and RCRA, such broader meaning shall apply. -------------------------------------------------(b) <u>Environmental Assessment</u>.  In addition to the Mortgagee's rights under Section (a) (iii) of this paragraph TWENTY-FOURTH, the Mortgagee may, if it has reasonable basis for such request, without regard to whether Mortgagor is in default hereunder or under the Mortgage Note, require that Mortgagor obtain one or more environmental assessments of the Mortgaged Property prepared by a geohydrologist, an independent engineer or other qualified consultant or expert approved by the Mortgagee evaluating or confirming (i) whether any hazardous substances or other toxic substances are present in the soil or water at or adjacent to the Mortgaged Property and (ii) whether the use and operation of the Mortgaged Property comply with all applicable federal, state and local laws, rules and regulations (herein called "Environmental Laws") relating to air quality, environmental control, release of oil, hazardous material, hazardous wastes and hazardous substances, and any and all other applicable environmental laws. Environmental assessments may include detailed visual inspections of the Mortgaged Property, including, without limitation, any and all storage area, and the taking of soil samples, surface water



samples and ground water samples, as well as such other investigations or analyses as are necessary or appropriate for a complete determination of the compliance of the Mortgaged Property and the use and operation thereof with all applicable Environmental Laws. -------------------------------------------

---**TWENTY-FIFTH**: <u>Insurance</u>: Pursuant to Article Sixty One (61) of the Registry Act, this Mortgage shall be extensive to, and shall cover, all indemnities to which the Mortgagor may be entitled under any policy or policies of insurance covering the Mortgaged Property or any part thereof, and Mortgagee shall be entitled to receive directly from the underwriter(s) all payments which become due under any such policy(ies) of insurance. Such payments after deducting therefrom all costs and expenses (including, without limitation, attorneys' fees and expenses) incurred in the collection thereof, shall be applied as set forth in the pledge agreement or other instrument under which the Mortgage Note is pledged or assigned. -------------

------------------- **ACCEPTANCE** --------------------
---The appearing parties ratify, confirm and accept this Deed because the same has been drawn in accordance with their instructions. ---------------
---I, the Notary, do hereby certify that this document was read by the appearing parties; that I, the Notary, and the said appearing parties can read and understand the English language; that I, the Notary, advised the appearing parties of the legal effects of this document, and in particular to the following: (a) that title reports were prepared by an independent third party and not by the



29

undersigned Notary; (b) that a certified copy of this Deed must be filed for recordation in the Registry; (c) of the possibility that other documents affecting the rights herein created are filed for recordation prior to the execution and/or filing of a certified copy of this Deed and of the preference or seniority that said intervening liens, encumbrances and/or rights may gain by such prior execution or earlier filing in the Registry; (d) of the desirability of verifying the status of liens and encumbrances on the Property as may appear from the Registry on this date and of the adverse consequences which may result from the failure to do so; (e) of the possible existence and pendency of additional unrecorded statutory liens and real property taxes (including the statutory legal mortgage in favor of the Commonwealth of Puerto Rico); (f) of the Lead Based Paint Hazard Act disclosure requirements and implications, including the fact that the existence of lead based painting on the Property might increase the costs of performing improvements on the Property; and (g) that if the Property is located in a flood prone area, the owner and any occupant thereof shall observe and comply with the requirements and provisions of the Flood Zone Regulations. ---------
---I, the Notary, do hereby certify that the appearing parties after reading this Deed, signed the same, and initialed every page hereof in my presence; that this document was executed by the appearing parties before me, the Notary, after waiving their right to request the presence of witnesses of which right I apprised them. ---------



30

---I further certify as to everything stated or contained herein. --------------------------------
---TO ALL OF WHICH, under my signature, seal, mark and flourish, I, the Notary, do hereby ATTEST. ----



