

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 18-23538-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    SEARS HOLDINGS CORPORATION,

8

9          Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    300 Quarropas Street, Room 248

14                    White Plains, NY 10601

15

16                    February 7, 2019

17                    9:27 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  NAROTAM RAI



1    HEARING re Evidentiary Hearing

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

```
 1    A P P E A R A N C E S :

 2

 3    WEIL, GOTSHAL & MANGES LLP

 4         Attorneys for the Debtor

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8    BY:  SUNNY SINGH

 9         RAY S. SCHROCK

10

11    AKIN GUMP STRAUSS HAUER & FELD LLP

12         Attorneys for UCC

13         One Bryant Park

14         New York, NY 10036

15

16    BY:  ABID QURESHI

17

18    CLEARY GOTTLIEB STEEN & HAMILTON LLP

19         Attorneys for ESL

20         One Liberty Plaza

21         New York, NY 10006

22

23    BY:  JAMES L. BROMLEY

24

25
```

```
                                                        Page 4

 1    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

 2         Attorneys for Independent Restructuring Subcommittee

 3         601 Lexington Avenue

 4         New York, NY 10022

 5

 6    BY:  ROBERT A. BRITTON

 7         PAUL BASTA

 8

 9    COHEN WEISS AND SIMON LLP

10         Attorney for UAW, USW, Workers United, SEIU

11         900 Third Avenue

12         New York, NY 10022

13

14    BY:  RICHARD M. SELTZER

15

16    PENSION BENEFIT GUARANTY CORPORATION

17         1200 L Street MW

18         Washington, DC 20005

19

20    BY:  MICHAEL I. BAIRD

21         KELLY CUSICK

22         GARTH D. WILSON

23

24

25
```

18-23538-shl    Doc 4931-11    Filed 08/21/19    Entered 08/21/19 14:23:15    Exhibit B
18-23538-rdd    Doc 2886    Filed 02/11/19    Entered 03/19/19 10:50:26    Main Document
Pg 5 of 22
Pg 5 of 247

Page 5

```
 1   ALLEN MATKINS

 2         Attorney for LBA Realty, Weingarten Realty

 3         And other landlords

 4         3 Embarcadero Center, 12th Floor

 5         San Francisco, CA 94111-4074

 6

 7   BY:  IVAN GOLD

 8

 9   LOCKE LORD LLP

10         Attorney for PBGC

11         111 South Wacker Drive

12         Chicago, IL 60606

13

14   BY:  BRIAN A. RAYNOR

15

16   CHOATE

17         Attorneys for Wells Fargo

18         Two International Place

19         Boston, MA 02110

20

21   BY:  KEVIN J. SIMARD

22

23

24

25
```

1   HALPERIN BATTAGLIA BENZIJA, LLP

2        Attorneys for Relator Carl Ireland

3        40 Wall Street, 37th Floor

4        New York, NY 10005

5

6   BY:  DONNA H. LIEBERMAN

7

8   NIXON PEABODY LLP

9        Attorney for Cascade Water Service

10       Tower 46

11       55 West 46th Street

12       New York, NY 10036

13

14   BY:  CHRISTOPHER J. FONG

15

16   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

17       Attorneys for ABL Agent

18       4 Times Square

19       New York, NY 10036

20

21   BY:  SHANA A. ELBERG

22       PAUL D. LEAKE

23

24

25

Page 7

```
 1    BLANK ROME LLP

 2         Attorneys for Kim Properties

 3         1825 Eye Street NW

 4         Washington, DC 20006

 5

 6    BY:  JEFFREY RHODES

 7

 8    BROWN RUDNICK LLP

 9         Attorneys for Primark US Corp.

10         7 Times Square

11         New York, NY 10036

12

13    BY:  GERARD T. CICERO

14

15    BARCLAY DAMON LLP

16         Attorneys for Creditors in objections at dockets 2241,

17         2246, 2247, 2248, 2251, 2253, 2255, 2293 and 2294

18         Barclay Damon Tower

19         125 East Jefferson Street

20         Syracuse, NY 13202

21

22    BY:  KEVIN M. NEWMAN

23

24

25
```

```
 1      NORTON ROSE FULBRIGHT US LLP

 2           Attorney for Living Spaces Furniture

 3           1301 Avenue of the Americas

 4           New York, NY 10019

 5

 6      BY:  DAVID A. ROSENZWEIG

 7

 8      K&L GATES

 9           Attorneys for Amazon.com Services, Inc. and Affiliates

10           599 Lexington Avenue

11           New York, NY 10022

12

13      BY:  ROBERT T. HONEYWELL

14

15      SEYFARTH SHAW LLP

16           Attorneys for Wilmington Trust, NA as Indenture Trustee

17           and Collateral Agent

18           620 Eighth Avenue

19           New York, NY 10018

20

21      BY:  EDWARD M. FOX

22

23

24

25
```

Page 9

 1    CRAVATH, SWAINE & MOORE LLP

 2         Attorneys for Stanley Black & Decker, Inc.

 3         825 Eighth Avenue

 4         New York, NY 10019

 5

 6    BY:  PAUL H. ZUMBRO

 7

 8    KELLEY DRYE & WARREN LLP

 9         Attorney for Trustees of the Estate of

10         Bernice Pauahi Bishop

11         101 Park Avenue

12         New York, NY 10178

13

14    BY:  ROBERT L. LEHANE

15

16    TRIAX CAPITAL ADVISORS

17         75 Rockefeller Plaza # 14

18         New York, NY 10019

19

20    BY:  JOSEPH E. SARACHEK

21

22

23

24

25

1    FREJKA PLLC

2        Consumer Privacy Ombudsman

3        420 Lexington Avenue, Suite 310

4        New York, NY 10170

5

6    BY:  ELISE S. FREJKA

7

8    APPEARING TELEPHONICALLY:

9    MATTHEW BREST

10   SONIA E. COLON

11   PAUL E. HARNER

12   COLLEEN MAKER

13   TYAN P. QUINN

14   PRASHANT RAI

15   RYAN P. QUINN

16   STEVEN SMITH

17   PENNY R. STARK

18   ARLENE R. ALVES

19   DEREK J. BAKER

20   NEGISA BALLUKU

21   ELIZABETH A. BELTER

22   LAUREN N. BESLOW

23   DUSTIN T. BRANCH

24   ALIX BROZMAN

25   JONATHAN D. CANFIELD

1    PATRICIA CHEN

2    STEVEN H. CHURCH

3    SARA COELHO

4    BRANDON J. CORY

5    ANNE D'INNOCENZIO

6    ANDREW DIAZ

7    JASON DIBATTISTA

8    KELLIE ELL

9    MARK E. FELGER

10    WILLIAM P. FENNELL

11    ADAM FLETCHER

12    DEBORAH L. FLETCHER

13    CHRISTOPHER GARTMAN

14    KIMBERLY B. GIANIS

15    KRISTOFFER GREDSTED

16    TAYLOR B. HARRISON

17    CATHERINE HEIZENRATER

18    ANA LUCIA HURTADO

19    CHRISTOPHER ISIDORE

20    VLADIMIR JESIAVCIC

21    WILLIAM J. JONES

22    KELLY E. KLEIST

23    MATTHEW KOCH

24    MATTHEW I. KRAMER

25    ZACHARY D. LANIER

1   BERNICE C. LEE

2   ZACHARY D. LEVINE

3   LAWRENCE A. LICHTMAN

4   MARK LIGHTNER

5   TERESA LII

6   CATHERINE LOTEMPIOR

7   KATHERINE E. MASSEY

8   MAEGHAN J. MCLOUGHLIN

9   STEPHEN MILLER

10  MICHAEL MITTELMAN

11  BRYANT OBERG

12  LINDA A. RIFKIN

13  RITA MARIE RITROVATO

14  LILLIAN A. RIZZO

15  JENNIFER RODBURG

16  CHRISTOPHER SAFAYA

17  JOSEPH E. SARACHEK

18  MICHAEL L. SCHEIN

19  RICHARD M. SELTZER

20  MICHAEL J. SMALL

21  NATASHA SONGONUGAN

22  FREDRICK SOSNICK

23  SEAN C. SOUTHARD

24  CHRIS STAUBLE

25  JOHN STOKKE

```
 1   BRAD SWEENEY

 2   MY CHI TO

 3   EMILY TOMLINSON

 4   DAVID WANDER

 5   RAFAEL ZAHRAIDDIN-ARAVE

 6   LAUREN E. ZUMBACH

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    those unsecured claims.

2            But to answer your question directly, I think it's

3    fair, Your Honor.  The credit bid is $1.3 billion.

4    Everything else here, Your Honor, payment of claims that are

5    senior to unsecured creditors.  Okay, those all have to be

6    paid regardless of whether or not we're here, we're in

7    winddown --

8            THE COURT:  So just to cut through it, just to do

9    the math, you're saying that basically it's the total value

10   of the ESL deal is $5.2 billion if you subtract a billion

11   three from that --

12           MR. SCHROCK:  That's right.

13           THE COURT:  -- there's $3.9 billion of value

14   provided for the unencumbered assets.

15           MR. SCHROCK:  That's right.

16           THE COURT:  Has anyone placed a value on the

17   unencumbered assets anywhere close to $3.9 billion?

18           MR. SCHROCK:  No, Your Honor.

19           THE COURT:  Okay.

20           MR. SCHROCK:  Your Honor, we think it's

21   unquestionable that the benefits of a sale transaction

22   outweigh --

23           THE COURT:  I'm sorry, can I interrupt you again?

24           MR. SCHROCK:  No, please.

25           THE COURT:  We went --

1          MR. SCHROCK:  That's why I'm here.

2          THE COURT:  You were going through the sale

3    process and the conduct of what people have referred to as

4    the auction here.  One of the provisions of the sale

5    procedures order, all of which are waivable in the exercise

6    of fiduciary duties, is to require qualified bidders to

7    provide an allocation of what they're -- what assets they're

8    paying what for.  It's uncontroverted that ESL did not do

9    that.  I have traditionally viewed --

10          MR. SCHROCK:  We waived it, Your Honor.

11          THE COURT:  You waived that condition?

12          MR. SCHROCK:  We did.

13          THE COURT:  I have viewed that condition which

14   appears in sale orders generally as serving the purpose of

15   letting a seller, the Debtor, and its constituents value a

16   global proposal as against piecemeal proposals so that you

17   can slice and dice the auction to see whether some

18   combination of bids will equal a global bid or a reduced

19   global bid.

20          It also, though, does have the benefit of giving

21   you the Debtors' -- giving you the buyer's viewpoint of what

22   the -- when the buyer's a credit bidder -- of what the

23   unencumbered assets are.  But maybe you can just tell me,

24   why did you waive it here?

25          MR. SCHROCK:  Your Honor, at the end of the day,

18-23538-shl Doc 4931-11 Filed 08/21/19 Entered 08/21/19 14:23:15 Exhibit R
18-23538-rdd Doc 2886 Filed 02/11/19 Entered 03/19/19 10:50:28 Main Document
Pg 16 of 22
Pg 48 of 247

Page 48

1    we didn't have qualified bids for even sections of the

2    business and when we looked at this in total, and given that

3    the structure of the auction was going to be comparison of

4    the Debtors looking at a going concern versus a winddown,

5    while we did have some indications from ESL around

6    allocations and a view, we had to take -- and I think it's

7    fair to take -- we took a global view as to what

8    consideration was being provided to the company and we

9    understood that the entire business would have to be valued

10   as a whole.

11          But given that we didn't have any particular bids

12   or qualified bids for particular divisions, that wasn't as

13   much of a concern for the company.

14          THE COURT:  Okay.

15          MR. SCHROCK:  So the benefits of the sale

16   transaction really do significantly outweigh an orderly

17   winddown.  And, Your Honor, I know there's been press around

18   the Debtors' severance obligations and what we were doing.

19   I do want to make clear for the record that under either

20   scenario, the Debtors were honoring severance obligations.

21   Those claims are administrative claims in these cases under

22   governing Second Circuit -- Second Circuit precedent.

23          We deliberately made sure that -- and it was one

24   of the primary purposes around having the winddown, to make

25   sure we could pay severance claims.  But we are entitled to

18-23538-shl    Doc 4931-11    Filed 08/21/19    Entered 08/21/19 14:23:15    Exhibit B
18-23538-rdd    Doc 2886    Filed 02/11/19    Entered 03/19/19 10:50:26    Main Document
Pg 17 of 22
Pg 167 of 247

Page 167

1          THE COURT:  Okay.  Is that the line going out the

2     door there?

3          MS. LIEBERMAN:  Hopefully not going out the door,

4     Your Honor.

5          THE COURT:  Okay.

6          MS. LIEBERMAN:  Good afternoon, Your Honor.  Donna

7     Lieberman from Halperin Battaglia Benzija.

8          Your Honor, we represent Paul Ireland, the

9     administrator of the estate of James Garbe.  The objection

10    that we filed as at Docket Number 1931, and it's a fairly

11    discrete objection, Your Honor.  Although, as you can

12    imagine, it's one that's very important to our client.

13         Your Honor, the objector as well as the United

14    States of America holds a mortgage against one piece of

15    Sears real estate.  That piece of real estate is identified

16    by the Debtors as 8975.  It is listed on APA Schedule

17    1.1(p), the operating owned property.  So it is presumably a

18    piece of real estate that the Debtors wish to convey to the

19    buyer.

20         The objection is very simple, Your Honor.  The

21    mortgagees have a perfected first lien mortgage on this

22    property.  The Court may recall that we actually filed a

23    limited objection to the DIP motions in connection with

24    this.  My colleague, Mr. Halperin, argued that -- and both

25    of the -- both the final DIP orders have specific language

18-23538-shl    Doc 4931-11    Filed 08/21/19    Entered 08/21/19 14:23:15    Exhibit B
18-23538-rdd    Doc 2886-1    Filed 02/11/19    Entered 03/19/19 10:50:28    Main Document
Pg 18 of 22
Pg 168 of 247

Page 168

1    about the fact that this mortgage is not primed.  Nobody is

2    pari passu with this mortgage lien.

3            Your Honor, the face amount of the mortgage note

4    is $17.4 million.  There is a provision in the mortgage note

5    and the related documents for a small amount of annual

6    interest as well as a provision for professional fees.  I'm

7    sure the Court will not be surprised, as we state in our

8    objection, we do not consent to the sale of our collateral.

9    We want to know that if this -- if this mortgage is not

10    going to be paid at closing that the amount -- that the

11    amount of the mortgage, which we've calculated and we've

12    given the Debtor the precise number, that that amount is

13    segregated and reserved.

14            THE COURT:  Okay.

15            MS. LIEBERMAN:  And obviously the second piece is

16    if we cannot reach agreement with the Debtor about the value

17    of the collateral that either party can bring that issue to

18    this Court on motion.

19            THE COURT:  Okay.  So what is the Debtor's

20    proposed treatment of this -- through the sale?  I mean,

21    obviously the Lender is entitled to adequate protection of

22    its interest in the property.

23            MR. SINGH:  That's right, Your Honor.  We have --

24            THE COURT:  State your name, please.

25            MR. SINGH:  Sorry.  Sonny Singh, Weil, Gotshal on

18-23538-shl    Doc 4931-11    Filed 08/21/19    Entered 08/21/19 14:23:15    Exhibit B
18-23538-rdd    Doc 2886    Filed 02/13/19    Entered 03/19/19 10:50:26    Main Document
Pg 169 of 247
Pg 19 of 22

Page 169

1    behalf of the Debtors, Your Honor.

2         I think we've got a very narrow issue here.  The

3    valuation reservation of rights, I think we have no problem

4    with that.  If we have to come back later and deal with

5    that, we can.  And our position simply is that under 363(f),

6    their liens get to attach to the proceeds of sale, excuse

7    me, which -- right here, as Your Honor knows, the

8    transaction is primarily assumptions of liabilities, which

9    are the proceeds that are coming in.  There're no other

10   liens on this asset, so whatever those proceeds may be we'll

11   have to fight about another day with the objecting party,

12   but there's no basis to -- they haven't traced -- There's no

13   basis to say we set aside $17.8 million of cash that's just

14   sitting aside in the company's --

15        THE COURT:  Well, I think you need to give them an

16   adequate protection lien on assets then.  I mean, I don't

17   know how -- they're actually protected otherwise.

18        MR. SINGH:  I believe under the DIP order -- so,

19   Your Honor, as long as it's not against a particular asset,

20   right, and we don't have to --

21        THE COURT:  But they have a super priority that --

22   where they're actually covered then.  I think that's --

23        MR. SINGH:  Right, which --

24        THE COURT:  And then you can litigate what the

25   actual value was and what you're entitled to be paid.

18-23538-shl    Doc 4931-11    Filed 08/21/19    Entered 08/21/19 14:23:15    Exhibit B
18-23538-rdd    Doc 2886    Filed 02/11/19    Entered 03/19/19 10:50:26    Main Document
Pg 20 of 22
Pg 170 of 247

Page 170

1              MR. SINGH:  And, Your Honor, I think we would be

2      fine with that because that doesn't require any segregation

3      of whatever funds they're asserting.

4              THE COURT:  Okay.

5              MR. SINGH:  We have no problem with that.

6              THE COURT:  All right.

7              MS. LIEBERMAN:  Your Honor, as you can imagine,

8      our only concern is that once the value is set that we know

9      that the money is there and available --

10             THE COURT:  Right.

11             MS. LIEBERMAN:  -- for our client.

12             THE COURT:  Okay.

13             MS. LIEBERMAN:  Because we have been hearing a

14     great deal about competing claims --

15             THE COURT:  Right.

16             MS. LIEBERMAN:  And whether this is an

17     administratively solvent estate.

18             THE COURT:  All right.  So I vaguely remember the

19     carveout in the DIP order.  But, I mean, this is a first

20     lien on this property.  It's worth what it's worth, and it

21     can't be paid just by a, you know, just saying we're going

22     to pay you someday.  They need to have a -- indubitable

23     equivalent in something.  So --

24             MR. SINGH:  Yes, Your Honor.

25             THE COURT:  -- you need to give them that to them.

1        MR. SINGH:  I think we could probably add a short

2   paragraph to specifically give the adequate protection lien

3   that Your Honor outlined --

4        THE COURT:  Okay.

5        MR. SINGH:  -- relating to -- with everybody's

6   rights reserved as to the underlying claim.

7        THE COURT:  As to the value and either party's

8   right to --

9        MR. SINGH:  And value.

10       THE COURT:  -- bring the -- bring that issue to

11  the Court.

12       MS. LIEBERMAN:  Thank you, Your Honor.

13       MR. SINGH:  Exactly.  Thank you, Your Honor.

14       THE COURT:  Okay.

15       MR. FONG:  Good afternoon, Your Honor.  Chris Fong

16  from Nixon Peabody on behalf of US Bank in its capacity as

17  the KCD indenture trustee.

18       THE COURT:  Yes.

19       MR. FONG:  We don't have any objection to the

20  sale.  I just rise with respect to a discrete issue that we

21  have with the sale documents with which we would like to

22  reserve our rights.

23       I think, as you know, US Bank is the indenture

24  trustee under indenture with KCDIP, a non-debtor subsidiary.

25       THE COURT:  Right.

1          C E R T I F I C A T I O N

2

3          I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5     **Sonya**

6     **Ledanski Hyde**
      Digitally signed by Sonya Ledanski
      Hyde
      DN: cn=Sonya Ledanski Hyde, o, ou,
7     email=digital@veritext.com, c=US
      Date: 2019.02.11 10:13:05 -05'00'

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 9, 2019