UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
In re                                        :        Chapter 11
                                             :
SEARS HOLDINGS CORPORATION, et al.,          :        Case No. 18-23538 (RDD)
                                             :
                                             :
                Debtors.¹                    :        (Jointly Administered)
-----------------------------------------------------------------x
```

### ORDER (I) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY AND (II) GRANTING RELATED RELIEF

Upon the motion, dated November 1, 2018 (Docket No. 429) (the "Sale Motion"),[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") seeking, among other things, the entry of an order, pursuant to sections 105, 363 and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 6004-1, 6005-

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2]  Capitalized terms used herein but not otherwise defined have the meanings given to them in the Asset Purchase Agreement (as defined below) or, if not defined in the Asset Purchase Agreement, the meanings given to them in the Sale Order (as defined below).

1 and 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), authorizing and approving the sale of the Acquired Assets and the assumption and assignment of certain executory contracts and unexpired leases of the Debtors in connection therewith; and the Court having entered this Court's prior order, dated November 19, 2018 (Docket No. 816) including the schedule as revised by the *Global Bidding Procedures Process Letter* filed with the Bankruptcy Court on November 21, 2018 (Docket No. 862) (together, the "Bidding Procedures Order"), approving competitive bidding procedures for the Acquired Assets and granting certain related relief; and Transform Holdco LLC (the "Buyer") having submitted the highest or otherwise best bid for the Acquired Assets, as reflected in the Asset Purchase Agreement (as defined below); and the Court having conducted a hearing on the Sale Motion, which commenced on February 4, 2019, at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief* (the "Sale Order") on February 8, 2019 (Docket No. 2507); the Court having entered the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (the "Assumption and Assignment Order") on April 2, 2019 (Docket No. 3008), pursuant to which the Debtors may assume and assign certain executory contracts or unexpired leases to Buyer or Buyer's Assignee in accordance with the Asset Purchase Agreement, dated as of January 17, 2019 by and among the Buyer and the Sellers party thereto (including each Debtor and certain other subsidiaries of Sears Holdings Corporation, the "Sellers") (as may be

2

amended, restated, amended and restated from time to time, including pursuant to that certain Amendment No. 1 to Asset Purchase Agreement, dated as of January 17, 2019 by and among the Buyer and the Sellers, the "Asset Purchase Agreement"); and the Buyer having filed the *Notice of Assumption and Assignment of Additional Designatable Leases* (Docket No. 3298) (the "Designated Lease Notice"), pursuant to which the Debtors seek to assume and assign the lease for (i) store number 7777 located at 770 Broadway, New York, New York (the "7777 Lease") and (ii) store number 7749 located at 250 West 34th Street, New York, New York (the "7749 Lease", each, a "Designated Lease", and together with the 7777 Lease, the "Designated Leases") to Transform Operating Stores ("Buyer's Assignee") in accordance with the Assumption and Assignment Order; and the counterparties to the Designated Leases having filed the *Objection of Vornado Realty L.P. and Certain of its Wholly-Owned and Controlled Subsidiaries, as Landlord, to Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Docket No. 2109), the *Joinder by Vornado Realty L.P. and Certain of its Wholly-Owned and Controlled Subsidiaries in the Objection of Various Landlords to Notices of Filings Revised Proposed Order (I) Authorizing the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (Docket No. 2422) and the *Supplemental Objection of Vornado Realty L.P. and Certain of its Wholly-Owned and Controlled Subsidiaries, as Landlord, to Transform Holdco LLC's Notice of Assumption and Assignment of Additional Designatable Leases* (Docket No. 3529) (collectively, the "Landlord Objections"); and the Buyer having filed *Transform Holdco LLC's Omnibus Reply in Support of Assumption and Assignment*

3

*of Designated Leases* on May 6, 2019 (Docket No. 3654) (the "Buyer's Reply"); and the Court

having entered the *Stipulation and Order by and Among Sellers, Buyer and Vornado Realty L.P.*

*Extending Time Under 11 U.S.C. 365(d)(4) for Assumption or Rejection of Leases of*

*Nonresidential Real Property* (Docket No. 4403) (the "Extension Stipulation"); and the Court

having conducted an evidentiary hearing on the assumption and assignment of certain unexpired

leases, but not the Designated Leases (the "Assumption and Assignment Hearing"), which

commenced on May 8, 2019, at which time all interested parties whose matters that were not

adjourned or otherwise not scheduled to be heard by the Court were offered an opportunity to be

heard with respect to the Assumption and Assignment Notices and their objections and responses

thereto; and the Court having entered the *Order (I) Authorizing Assumption and Assignment of*

*Certain Leases and (II) Granting Related Relief* (Docket No. 3850) (the "Revised Assumption and

Assignment Order"), pursuant to which the Debtors assumed and assigned certain unexpired leases

to the Buyer, but not the Designated Leases; and due notice of the Sale Motion, the Asset Purchase

Agreement, the Sale Order, the Assumption and Assignment Order, the Designated Lease Notice,

the Revised Assumption and Assignment Order, Assumption and Assignment Hearing and this

proposed order (the "Supplementary Assumption and Assignment Order") having been provided;

and, except as otherwise provided for herein, all objections with respect to the Designated Leases

having been withdrawn, resolved, adjourned or overruled as provided in this Supplementary

Assumption and Assignment Order; and it appearing that the relief granted herein is in the best

interests of the Debtors, their estates and creditors and all parties in interest in these chapter 11

cases; and upon the record of the Assumption and Assignment Hearing to the extent applicable

and these chapter 11 cases; and after due deliberation; and good cause appearing therefor, it is

hereby

4

## FOUND AND DETERMINED THAT:

A.      **<u>Fed. R. Bankr. P. 7052</u>**.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Assumption and Assignment Hearing.  This Supplementary Assumption and Assignment Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

B.      **<u>Jurisdiction and Venue</u>**.  This Court has jurisdiction over the Sale Motion, the Sale Transaction and the property of the Debtors' estates, including the Acquired Assets, pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This matter is a core proceeding pursuant to 28 U.S.C. § 157.  Venue of these chapter 11 cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The Debtors have demonstrated a good, sufficient, and sound business purpose and justification for the immediate assumption and assignment of the Designated Leases consistent with the Sale Order, the Assumption and Assignment Order, the Revised Assumption and Assignment Order and this Supplementary Assumption and Assignment Order.  Buyer, shall not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

D.     **Vested Title**.  The Designated Leases constitute property of the Debtors' estates, and title thereto is vested in the Debtors' estates within the meaning of 541(a) of the Bankruptcy Code.

E.     **Notice and Opportunity to Object**.  Actual written notice of, and a fair and reasonable opportunity to object to and to be heard with respect to the Designated Leases has been given, as required by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Asset Purchase Agreement, and the Amended Case Management Order.  Pursuant to the Sale Order, and Assumption and Assignment Order, the Designated Lease Notice was properly served and the counterparties thereto were afforded timely, good, appropriate and sufficient notice and an opportunity to object in accordance with the Sale Order and no further notice need be given with respect to the assumption and assignment of the Designated Leases.

F.     **Cure Notice**.  As evidenced by the certificate of service filed with the Court, the Debtors have served, prior to the Supplementary Assumption and Assignment Hearing, the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* (Docket No. 1731) (the "Cure Notice"), dated January 18, 2019, on each counterparty to the Designated Leases, which provided notice of the Debtors' intent to assume and assign such Designated Leases and notice of the related proposed Cure Costs upon each non-Debtor counterparty to the Designated Leases.  The service of the Cure Notice was timely, good, sufficient and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the assumption and assignment of the Designated Leases.  *See Affidavits of Service* (Docket Nos. 1969, 2132, 2162, 3649).  All non-Debtor parties to the Designated Leases have had a reasonable opportunity to object both to the Cure Costs listed on the Cure Notice and Designated Lease Notice and, to the assumption and assignment of the

6

Designated Leases to the Buyer's Assignee in accordance with the Bidding Procedures Order and the Assumption and Assignment Order.

G. **Assignment or Transfer Agreement**. Each applicable assignment agreement or any other agreement or instrument of assignment or transfer (an "Assignment or Transfer Agreement") with respect to the Designated Leases was negotiated and proposed in good faith, from arms'-length bargaining positions, and without collusion. Neither the Debtors nor the Buyer's Assignee have engaged in any conduct that would cause or permit the assumption, assignment or transfer to the Buyer's Assignee pursuant to the Assignment or Transfer Agreement and this Supplementary Assumption and Assignment Order, to be avoided under 363(n) of the Bankruptcy Code.

H. **Assumption and Assignment of Designated Leases**. The assumption and assignment of the Designated Leases is integral to the Asset Purchase Agreement, is in the best interests of the Debtors and their estates, and represents the valid and reasonable exercise of the Debtors' sound business judgment.

I. **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**. The assumption and assignment of the Designated Leases must be approved and consummated promptly in order to preserve the value of the Acquired Assets particularly given the July 31, 2019 deadline pursuant to the Extension Stipulation. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval of the assumption and assignment of the Designated Leases in connection with the Sale Transaction as contemplated by the Asset Purchase Agreement and approved pursuant to the Sale Order. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to this Supplementary Assumption and Assignment Order.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT**:

1.    **Motion is Granted**.  The Sale Motion and the relief requested therein with respect to the Designated Leases to the extent not previously granted by this Court pursuant to the Bidding Procedures Order, the Assumption and Assignment Order and/or the Revised Assumption and Assignment Order, is granted and approved solely to the extent set forth herein.

2.    **Findings of Fact and Conclusions**.  The Court's findings of fact and conclusions of law in the Sale Order, the Assumption and Assignment Order and the Revised Assumption and Assignment Order, and the record of the hearing with respect to the Sale Order and the Assumption and Assignment Hearing are incorporated herein by reference, solely with respect to the Designated Leases. The Designated Leases constitute Acquired Assets.  Accordingly, all findings of fact and conclusions of law in the Sale Order, the Assumption and Assignment Order and the Revised Assumption and Assignment Order with respect to the Acquired Assets, including any explicitly governing the Initial Assigned Agreements shall apply to the Designated Leases with full force and effect except as otherwise provided herein, and as the Buyer's Assignee of such Designated Leases, Buyer's Assignee is entitled to all of the protections set forth in the Sale Order and Revised Assumption and Assignment Order with respect to Acquired Assets.

3.    **Objections Overruled**.  All objections to the assumption and assignment or designation of the Designated Leases that have not been withdrawn, waived, settled, or otherwise resolved as announced to the Court at the Assumption and Assignment Hearing (if any) to consider entry of this Order or by stipulation filed with the Court, and all reservations of rights included therein, are hereby resolved on the terms of this Supplementary Assumption and Assignment Order.

4.    **Notice**. Notice of the proposed assumption and assignment of the Designated Leases was adequate, appropriate, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, and the Amended Case Management Order.

5.    **Assumption and Assignment**.    Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors, as well as their officers, employees and agents, are authorized to take any and all actions as may be (i) reasonably necessary or desirable to implement the assumption and assignment of the Designated Leases pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, the Sale Order, and this Supplementary Assumption and Assignment Order or (ii) reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying, conferring or reducing to the Buyer's Assignee possession the Designated Leases.

6.    **Transfer of the Designated Leases Free and Clear**.    Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Designated Leases in accordance with the terms of the Asset Purchase Agreement and the Sale Order and this Supplementary Assumption and Assignment Order.  The Designated Leases shall be transferred to the Buyer's Assignee in accordance with the terms of the Asset Purchase Agreement, the Sale Order, the Assumption and Assignment Order, the Revised Assumption and Assignment Order and this Supplementary Assumption and Assignment Order and such transfer shall: (i) be valid, legal, binding and effective; (ii) vest the Buyer's Assignee with all right, title and interest of the Debtors in the Designated Leases; and (iii) be free and clear of all Claims against the Debtors (including Claims of any Governmental Authority) in accordance with section 363(f) of the Bankruptcy Code.

7.      This Supplementary Assumption and Assignment Order: (i) shall be effective as a determination that, all Claims against the Debtors have been unconditionally released, discharged and terminated as to the Designated Leases, and that the conveyances and transfers described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Buyer's Assignee is the assignee and owner of such Designated Leases free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers").  All Recording Officers are authorized and specifically directed to strike recorded Claims against the Designated Leases recorded prior to the date of this Supplementary Assumption and Assignment Order.  A certified copy of this Supplementary Assumption and Assignment Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded Claims against the Designated Leases recorded prior to the date of this Supplementary Assumption and Assignment Order.  All Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and this Supplementary Assumption and Assignment Order; provided, however, that nothing in this paragraph 7 or paragraph 9 shall authorize any Recording Officers to take any action with respect to Restrictive Covenants (as defined in the Revised Assumption and Assignment Order).

8.      No holder of any Claim against the Debtors or their estates shall interfere with the Buyer's Assignee's title to or use and enjoyment of the Designated Leases or the premises governed by such Designated Lease based on or related to any such Claim or based on any actions the Debtors have taken or may take in these chapter 11 cases.

9.      If any Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against the Debtors or the Designated Leases shall not have delivered to the Debtors as of the time of entry of this Supplementary Assumption and Assignment Order, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or, as appropriate, releases of all Claims the Person has with respect to the Debtors or such Designated Leases or otherwise, then with regard to such Designated Leases: (i) the Debtors are hereby authorized and directed to, and the Buyer or Buyer's Assignee is hereby authorized to, execute and file such statements, instruments, releases and other documents on behalf of the person with respect to such Designated Lease; (ii) the Buyer or Buyer's Assignee is hereby authorized to file, register or otherwise record a certified copy of this Supplementary Assumption and Assignment Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against such Designated Leases; and (iii) the Buyer or Buyer's Assignee may seek in this Court or any other court to compel appropriate persons to execute termination statements, instruments of satisfaction, and releases of all Claims with respect to such Designated Leases; provided that, notwithstanding anything in this Supplementary Assumption and Assignment Order, the Revised Assumption and Assignment Order, the Assumption and Assignment Order, the Sale Order or the Asset Purchase Agreement to the contrary, the provisions of this Supplementary Assumption and Assignment Order shall be self-executing, and neither the Sellers nor Buyer shall be required to

execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Supplementary Assumption and Assignment Order.  This Supplementary Assumption and Assignment Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county or local government agency, department or office.

10.    Subject to the terms of this Supplementary Assumption and Assignment Order, this Supplementary Assumption and Assignment Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer by the Debtors of the Designated Leases acquired under the Asset Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in all of the Debtors' right, title, and interest in and to such Designated Lease to the Buyer's Assignee.

11.    **<u>Assumption and Assignment of Designated Leases</u>**.  The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Designated Leases to the Buyer's Assignee free and clear of all Claims to the extent set forth in the Sale Order, the Assumption and Assignment Order, the Revised Assumption and Assignment Order and this Supplementary Assumption and Assignment Order, to execute and deliver to the Buyer's Assignee such documents or other instruments as may be necessary to assign and transfer the Designated Leases to the Buyer's Assignee as provided in the Asset Purchase Agreement, and to transfer all of the Debtors' rights, title, and interests in the Designated Leases to the Buyer's Assignee.  With respect to the Designated Leases, all Cure Costs listed on **Exhibit A** shall be paid in cash by the Buyer within five business days of entry of this Supplementary Assumption and Assignment Order; *provided* that if the Buyer and the counterparty to a Designated Lease agree in writing that the Cure Cost paid by the Buyer in

accordance with this Supplementary Assumption and Assignment Order was more than required to cure any defaults or outstanding amounts existing under such Designated Lease, then such additional amounts may be subject to setoff, recoupment or recovery by the Buyer so long as the Buyer and the counterparty to the Designated Lease agree in writing to such setoff, recoupment or recovery by the Buyer, or as may be otherwise ordered by the Court.  Except to the extent otherwise set forth in this Supplementary Assumption and Assignment Order, payment of such Cure Cost shall: (i) be in full satisfaction and cure of any and all defaults under the Designated Leases, whether monetary or non-monetary; (ii) compensate the non-Debtor counterparty for any actual pecuniary loss resulting from such defaults and (iii) shall be made solely by the Buyer and the Debtors shall have no liability therefor.

12.     With respect to the Designated Leases, the Buyer's Assignee, in accordance with the provisions of the Asset Purchase Agreement, has provided adequate assurance of future performance under the Designated Leases in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the non-Debtor counterparties to the Designated Leases.  Upon entry of this Supplementary Assumption and Assignment Order with respect to the Designated Leases, the  Buyer's Assignee shall be fully and irrevocably vested with all rights, title and interest of the Debtors under the Designated Leases and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to breach of the Designated Leases occurring after such assumption and assignment.  The Buyer shall be solely responsible for any liability arising and owed pursuant to the terms of the Designated Leases listed on **Exhibit A** after the Closing Date.  Buyer's Assignee acknowledges and agrees that from and after the entry of this Supplementary Assumption and Assignment Order, with respect to the Designated Leases, in accordance with this Supplementary

13

Assumption and Assignment Order, it shall comply with the terms of the Designated Leases in its entirety including any indemnification obligations expressly contained in such Designated Lease (including with respect to events that occurred prior to the entry of this Supplementary Assumption and Assignment Order, for which cure costs were not known, liquidated or due and owing as such date), as to which the Buyer continues to reserve its rights against the Debtors for indemnification to the extent provided in the Asset Purchase Agreement and the Debtors reserve their respective rights and defenses with respect to any claims therefor. The assumption by the Debtors and assignment to the Buyer's Assignee of the Designated Leases shall not be a default under the Designated Leases. Subject to the payment of the Cure Costs set forth on **Exhibit A** and full compliance with paragraph 28, including the curing of the Outstanding Cure Violations in accordance with paragraph 28, each non-Buyer party to a Designated Lease is forever barred, estopped and permanently enjoined from asserting against the Buyer, their affiliates, successors or assigns or the property of any of them, any default existing as of the date of entry of this Supplementary Assumption and Assignment Order or that any additional cure amounts are owed as a condition to assumption and assignment. Each non-Buyer party to a Designated Lease is forever barred, estopped and permanently enjoined from asserting against the Debtors or their affiliates, or the property of any of them, any default existing as of the date of entry of this Supplementary Assumption and Assignment Order or that any additional cure amounts are owed as a condition to assumption and assignment.

13.    All of the requirements of sections 365(b) and 365(f), including without limitation, the demonstration of adequate assurance of future performance and payment of Cure Costs required under the Bankruptcy Code have been, or will be, satisfied for the assumption by the

Debtors, and the assignment by the Debtors to the Buyer's Assignee, with respect to the Designated Leases.

14.     The Buyer's Assignee has satisfied its adequate assurance of future performance requirements with respect to the Designated Leases.  With respect to Designated Leases, the Buyer shall, as further adequate assurance, within fifteen days after entry of this Supplementary Assumption and Assignment Order, execute and deliver guaranty agreements substantially in the form annexed as Exhibit B to the Revised Assumption and Assignment Order (the "Form of Guaranty").

15.     The assumption of any liabilities under the Designated Leases shall constitute a legal, valid and effective delegation of all liabilities thereunder to the Buyer's Assignee identified on **Exhibit A** and, following payment of all Cure Costs, and except as expressly set forth in the Asset Purchase Agreement, the Sale Order or this Supplementary Assumption and Assignment Order, shall divest the Debtors of all liability with respect to such Designated Lease for any breach of such Designated Lease occurring after the Closing Date in accordance with Section 2.9 of the Asset Purchase Agreement.

16.     Pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code, the Buyer will pay all Cure Costs set forth in **Exhibit A** and other such undisputed amounts required with respect to such Designated Lease within five (5) days after entry of this Supplementary Assumption and Assignment Order.  For the avoidance of doubt, the Buyer's Assignee will perform under and in accordance with the terms of the Designated Leases from and after entry of this Supplementary Assumption and Assignment Order.

17.     Solely in connection with the Designated Leases and the proposed transfer set forth upon the entry of this Supplementary Assumption and Assignment Order, any provision in the

Designated Leases that purports to declare a breach or default as a result of a change or transfer of control or any interest in respect of the Debtors is unenforceable and the Designated Leases shall remain in full force and effect notwithstanding assignment thereof.  Solely in connection with the Designated Leases and the proposed transfer, no sections or provisions of the Designated Leases, that in any way purport to: (i) prohibit, restrict, or condition the Debtors' assignment of such Designated Lease (including, but not limited to, the conditioning of such assignment on the consent of any non-Debtor party to such Designated Lease); (ii) provide for the cancellation, or modification of the terms of the Designated Leases based on the filing of a bankruptcy case, the financial condition of the Debtors, or similar circumstances; (iii) provide for additional payments (e.g., so called "profit" sharing/splitting), penalties, fees, charges, or other financial accommodations in favor of the non-Debtor third party to such Designated Lease upon assignment thereof; or (iv) provide for any rights of first refusal on a contract counterparty's part, rights of first offer or any other purchase option or any recapture or termination rights in favor of a contract counterparty, or any right of a Landlord to take an assignment or sublease from a tenant, shall have any force or effect with respect to the grant and honoring of the Designation Rights or the rights under Section 2.9 of the Asset Purchase Agreement in accordance with the Sale Order, this Supplementary Assumption and Assignment Order, and the Asset Purchase Agreement and assignments of Designated Leases by the Debtors in accordance therewith and herewith, because they constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code.  Upon assumption and assignment of the Designated Lease pursuant hereto, the Buyer's Assignee shall enjoy all of the rights and benefits, under the Designated Leases as of the date of the entry of this

Supplementary Assumption and Assignment Order and shall assume all obligations as of, and that continue to accrue under the Designated Leases from and after the Closing Date.

18.     Solely in connection with the Designated Leases and notwithstanding anything to the contrary in paragraph 12 or 16 hereof, upon the applicable Assumption Effective Date, except as otherwise expressly agreed by the Buyer and the applicable Designated Lease counterparty, notwithstanding any provision in any Designated Lease that purports to prohibit, restrict or condition such action, (x) the Buyer's Assignee shall be authorized to exercise, utilize or take advantage of any renewal options and any other current or future rights, benefits, privileges, and options granted or provided to the Debtors under, and subject to the terms and conditions of, the Designated Leases (including all of the same which may be described or designated as, or purport to be, "personal" to the Debtors or to a named entity in such Designated Lease or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name)  and (y) to the extent otherwise provided in the Asset Purchase Agreement, as between the Debtors and the Buyer only, neither the Buyer nor the Buyer's Assignee shall have any responsibility or liability for any Excluded Asset-Sale Taxes and Excluded Asset-Reorganization Taxes.  For the avoidance of doubt, the non-Debtor parties to the Designated Leases shall not have any responsibility or liability for any Excluded Asset-Sale Taxes and Excluded Asset-Reorganization Taxes.

19.     ***Ipso Facto* Clauses Ineffective**.  Except as otherwise specifically provided for by order of this Court or in the Asset Purchase Agreement, the Designated Leases shall be transferred to, and remain in full force and effect for the benefit of, the Buyer's Assignee in accordance with their respective terms, including all obligations of the Buyer's Assignee as the assignee of the Designated Leases, notwithstanding any provision in any such Designated Lease (including,

without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.   There shall be no, and the non-Debtor parties to the Designated Leases are forever barred and permanently enjoined from raising or asserting against the Debtors, any other defaults, breaches, claims, pecuniary losses, rent accelerations, escalations, assignment fees, increases or any other fees charged to the Debtors as a condition to the assumption and assignment of the Designated Leases pursuant to this Supplementary Assumption and Assignment Order.   Except for the Cure Amounts and any other amounts listed herein, including the cure and satisfaction of all Outstanding Violations, there shall be no, and the non-Debtor parties to the Designated Leases are forever barred and permanently enjoined from raising or asserting against the Buyer or Buyer's Assignee, as applicable, any other defaults, breaches, claims, pecuniary losses, rent accelerations, escalations, assignment fees, increases or any other fees charged to the Buyer or Buyer's Assignee, as applicable, as a condition to the assumption and assignment of the Lease pursuant to this Supplementary Assumption and Assignment Order.

20.    Except as set forth in this Supplementary Assumption and Assignment Order or as otherwise specifically provided for by order of this Court, upon the Debtors' assignment of the Designated Leases to the Buyer's Assignee under the provisions of this Supplementary Assumption and Assignment Order and full payment of all Cure Costs as required under section 365(b) of the Bankruptcy Code, no default shall exist under the Designated Leases, and no counterparty to the Designated Leases shall be permitted to declare a default by any Debtor, the Buyer or the Buyer's Assignee, or otherwise take action against the Buyer's Assignee as a result of any Debtor's financial condition, bankruptcy or failure to perform any of the Debtors' obligations under the Designated Leases.   Any provision in the Designated Leases that prohibits

or conditions the assignment of such Designated Lease or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, refuse to renew, or modify any term or condition upon such assignment, constitutes an unenforceable anti-assignment provision that is void and of no force and effect solely in connection with the transfer thereof pursuant to this Supplementary Assumption and Assignment Order.  The failure of the Debtors or the Buyer's Assignee to enforce at any time one or more terms or conditions of any Designated Lease shall not be a waiver of such terms or conditions, or of the Debtors' or the Buyer's Assignee's rights to enforce every term and condition of the Designated Leases.

21.    **<u>Waiver of Bankruptcy Rules 6004(h), 6006(d) and 7062</u>**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), or 7062 or any applicable provisions of the Local Rules, this Supplementary Assumption and Assignment Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in assuming and assigning the Designated Leases in connection with the Court approved Sale Transaction.  Any party objecting to this Supplementary Assumption and Assignment Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law, or risk its appeal will be foreclosed as moot.  This Supplementary Assumption and Assignment Order constitutes a final order upon which the Debtors, the Buyer, the Buyer's Assignee and the counterparty to the Designated Leases are entitled to rely.

22.    **<u>Conflicts; Precedence</u>**.  In the event that there is a direct conflict between the terms of this Supplementary Assumption and Assignment Order, the Assumption and Assignment Order, the Sale Order, the Asset Purchase Agreement, or any documents executed in connection therewith, the provisions contained in this Supplementary Assumption and Assignment Order,

Sale Order, the Asset Purchase Agreement, and the Assumption and Assignment Order and any documents executed in connection therewith shall govern, in that order.  Nothing contained in any chapter 11 plan hereafter confirmed in these chapter 11 cases, any order confirming such plan, or in any other order of any type or kind entered in these chapter 11 cases (including, without limitation, any order entered after any conversion of any or all of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with or derogate from the provisions of the Asset Purchase Agreement, the Assumption and Assignment Order, the Sale Order or the terms of this Supplementary Assumption and Assignment Order.

23.    **Lease Deposits and Security**.  The Buyer's Assignee shall not be required, pursuant to section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to the Designated Lease to the extent not previously provided by the Debtors or to the extent that such deposit or security required under the Designated Lease has already been deposited by Debtors.

24.    **Automatic Stay**.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Supplementary Assumption and Assignment Order.

25.    **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Supplementary Assumption and Assignment Order, the Sale Order and the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith), to adjudicate disputes related to the Sale Order, this Supplementary Assumption and Assignment Order or the Asset Purchase Agreement (and such other related agreements, documents or other instruments) and to enforce the injunctions set forth herein.

26.    **Insurance Obligations**.  The Buyer's Assignee shall have in place and maintain insurance in a manner required under the Designated Leases, and within thirty days hereof, the Buyer or Buyer's Assignee shall provide the counterparty to such Designated Lease with any evidence or certificates of insurance that may be required under the Designated Lease. Nothing in this Supplementary Assumption and Assignment Order shall waive, withdraw, limit or impair any claims that such Designated Lease counterparty may have against the Buyer or the Buyers' Assignee with respect to claims for indemnification for third parties' claims arising from or related to the use and occupancy of the Designated Leases prior to entry of this Supplementary Assumption and Assignment Order (except with respect to amounts that are presently known, liquidated and due and owing, which shall be treated as cure costs in accordance paragraph 11 hereof).

27.    **Designated Lease Provisions**. Notwithstanding anything to the contrary in this Supplementary Assumption and Assignment Order (other than paragraphs 17, 18 and 19), nothing in this Supplementary Assumption and Assignment Order shall modify the express terms of the Designated Leases, and Buyer's Assignee shall comply with all terms of the Designated Leases, including, without limitation, any covenants and restrictions regarding use and occupancy of the premises, as it currently stands without modification.

28.    **Additional Cure Obligations**.  The  Buyer and Buyer's Assignee acknowledge and agree that certain violations exist and remain outstanding at the properties that are subject to the Designatable Leases, which are set forth on **Exhibit C**  (the "Liquidated Violations"). The Buyer and Buyer's Assignee also acknowledge receipt of and confirm that they have read and understood the contents of the letter from 770 Broadway Owner LLC, as landlord, to Kmart Corporation, as tenant, dated September 19, 2013 (the "Default Letter"), pursuant to which 770

Broadway Owner LLC issued a written notice of default against the tenant based upon the tenant's failure to take care of, maintain and repair certain elevators at the subject premises, among other things (the "Elevator Violation", and together with the Liquidated Violations, the "Outstanding Violations"). While the Cure Costs listed on **Exhibit A** include the monetary penalties associated with the Liquidated Violations, additional monetary and non-monetary obligations may be required to cure and fully and finally resolve each of the Outstanding Violations; *provided, however, that in no event shall the Debtors or the Sellers be liable for any such monetary or non-monetary obligations.*

(a)    Notwithstanding anything to the contrary set forth in this Supplementary Assumption and Assignment Order, including but not limited to paragraph 12, Buyer or Buyer's Assignee shall, within 30 days after entry of this Supplementary Assumption and Assignment Order, take or cause to be taken any and all actions necessary to ensure that the Outstanding Violations have been remedied, cured, lifted and are no longer recorded as open violations against the subject property, and, with respect to the Elevator Violation, Buyer or Buyer's Assignee shall implement each of the seven recommended courses of action set forth in the Default Letter (to the extent not already taken).

(b)    With respect to the Outstanding Violations, the Buyer or Buyer's Assignee shall actually complete all necessary actions to ensure that the Outstanding Violations have been remedied, cured, lifted and are no longer recorded as open violations against the subject property (i) for the premises associated with the 7777 Lease, within 30 days of entry of this Supplementary Assumption and Assignment Order, and (ii) for the premises associated with the 7749 Lease, within 60 days of entry of this Supplementary Assumption and Assignment Order (the "Outstanding Violation Cure Deadline").  No later than three days after the

Outstanding Violation Cure Deadline, Buyer or Buyer's Assignee shall deliver to the counterparty to such Designatable Lease a written certification certifying Buyer's or Buyer's Assignee's compliance with the foregoing (the "Written Certification").

         (c)     To the extent that Buyer or Buyer's Assignee fails to timely cure each Outstanding Violation, including resolving the Elevator Violation, and deliver a Written Certification, in each case, consistent with this paragraph 28, then nothing in this Supplementary Assumption and Assignment Order, nor the assumption and assignment of the Designatable Leases, shall constitute a waiver, cure or satisfaction of any default under the Designatable Leases that was caused by or related to any Outstanding Violation and the counterparty to such Designatable Lease (i.e., One Penn Plaza LLC or 770 Broadway Owner LLC) shall be entitled to exercise any and all remedies arising under the Designatable Lease and applicable law for the Outstanding Violations; *provided* that (i) in the event that cure cannot be completed by the Outstanding Violation Cure Deadline due to delay from state or local government agencies including, but not limited to, any municipal agencies responsible for inspecting the cure of the Liquidated Violations, so long as the Buyer or Buyer's Assignee has undertaken commercially reasonable efforts to cure the Liquidated Violations in a timely manner and prior to the Outstanding Violation Cure Deadline, then solely with respect to the Liquidated Violations, the Outstanding Violation Cure Deadline shall be extended for (A) an additional 30 days or (B) to such later date that One Penn Plaza LLC or 770 Broadway Owner LLC, as applicable, consents and agrees to in writing (with such consent not to be unreasonably withheld), and (ii) so long as Buyer or Buyer's Assignee has undertaken commercially reasonable efforts to cure the Elevator Violation in a timely manner and prior to the Outstanding Violation Cure Deadline, then solely with respect to the Elevator Violation, the Outstanding Violation Cure Deadline shall be

extended to such later date that 770 Broadway Owner LLC consents and agrees to in writing (with such consent not to be unreasonably withheld).  For the avoidance of doubt, to the extent this paragraph conflicts with any other provisions contained in this Supplementary Assumption and Assignment Order, this paragraph 28 shall control.

(d)     The parties agree and acknowledge that, in addition to the Outstanding Violations, certain similar violations may arise under the Designated Leases after entry of this Supplementary Assumption and Assignment Order (such violations, if any, the "Future Violations").  If the non-Debtor counterparty to such Designated Lease receives notification of any Future Violations, the non-Debtor counterparty shall promptly forward such notification and all related documentation to the Buyer's Assignee promptly upon receipt thereof; *provided*, that notwithstanding the foregoing, the failure to promptly deliver such notification and all related documentation by the non-Debtor counterparty to such Designated Lease shall not constitute a waiver, cure or satisfaction of such Future Violation and the non-Debtor counterparty to such Designated Lease shall be entitled to exercise any and all remedies with respect to the Future Violations as provided for under the applicable Designated Lease.

29.     **Assumption Effective Date**.  Unless otherwise agreed to in writing by each of the Debtors, the Buyer, the Buyer's Assignee and the counterparty to such Designated Lease, the Assumption Effective Date of the Designated Leases shall be the date of entry of this Order.

Dated:  August 22, 2019
          White Plains, New York

/s/Robert D. Drain
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**
**Designated Leases**[3]

| Store # | RE ID | Address | Contract Title | Counterparty | Cure | Buyer's Assignee |
|---------|-------|---------|----------------|--------------|------|------------------|
| 7749 | 774900 | 250 W 34th St, New York, NY | Lease | One Penn Plaza LLC | $112,414.26[4] | Transform Operating Stores |
| 7777 | 77700 | 770 Broadway, New York, NY | Lease | 770 Broadway Owner LLC | $419,445.87[5] | Transform Operating Stores |

---

[3] All Designated Leases listed in Exhibit A shall be deemed to include any and all applicable supplements, amendments, and/or addenda.

[4] Prior to the date hereof, Buyer has paid or caused to be paid cure costs in the amount of $1,613,832.07, leaving an outstanding cure cost balance of $112,414.26.

[5] Prior to the date hereof, Buyer has paid or caused to be paid cure costs in the amount of $1,187,886.59, leaving an outstanding cure cost balance of $419,445.87.

**Exhibit B**
**Form of Guaranty**

FORM

## LEASE GUARANTY AGREEMENT

**THIS LEASE GUARANTY AGREEMENT** dated as of May [_], 2019 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the provisions hereof, this "Agreement"), by TRANSFORM MIDCO LLC, a Delaware limited liability company ("Guarantor").

## W I T N E S S E T H:

[ENTER LANDLORD NAME] ("Landlord") entered into a certain [ENTER TITLE OF DOCUMENT], dated as of [ENTER DATE OF LEASE], with [ENTER DEBTOR NAME] (the "Debtor Tenant") (as amended, restated, amended and restated, extended, supplemented or otherwise modified, the "Lease").

Sears Holdings Corporation and its debtor affiliates, including the Debtor Tenant, as debtors and debtors in possession (collectively, the "Debtors"), filed a motion, dated November 1, 2018 (ECF No. 429) seeking, among other things, the entry of an order pursuant to sections 105, 363 and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq., Rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure, and Rules 6004-1, 6005-1 and 6006-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, authorizing and approving the sale of the Acquired Assets (as defined therein) and the assumption and assignment of certain executory contracts and unexpired leases of the Debtors in connection therewith.

On February 8, 2019, the Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief (the "Sale Order") (ECF No. 2507) was entered by the United States Bankruptcy Court Southern District of New York (the "Court").

On April 2, 2019, the Court entered its the Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief (the "Assumption and Assignment Order") (ECF No. 3008).

On [_], 2019 and pursuant to the terms of the Sale Order and the Assumption and Assignment Order, Buyer filed notice with the Court designating the Lease for assumption and assignment (the "Assignment") to [INSERT ASSIGNEE] (the "Tenant").

Guarantor is an affiliate of Tenant, will derive direct or indirect benefit from the Lease and is executing this Agreement in connection with the Assignment.

**NOW, THEREFORE,** in consideration of the premises, Guarantor agrees as follows:

1.      Guarantor hereby absolutely and unconditionally guarantees to the Landlord (i) the full and punctual payment of all monetary obligations (including, without limitation, the payment of all rent, maintenance charges and any and all other charges or assessments) payable under the Lease by Tenant and (ii) the full and punctual performance by Tenant of all the terms, conditions, covenants and obligations to be performed by Tenant under the Lease, in the case of each of (i) and (ii), from and after the effective date of the Assignment (the "Obligations").

2.      Guarantor hereby waives demand, protest, notice of any indulgences or extensions granted to the Tenant, any requirement of diligence or promptness on the part of the Landlord in the enforcement of the Lease and any notice thereof and any other notice whereby to charge Guarantor.  Any payment or performance of the Obligations required to be made by Guarantor may be required by the Landlord on any number of occasions.  Guarantor hereby waives any right to require Landlord to proceed against Tenant or any other person or pursue any other right or remedy for Guarantor' benefit.  Guarantor agrees that Landlord may proceed against Guarantor with respect to the Obligations without taking any action against Tenant or any other person. Guarantor agrees that Landlord may unqualifiedly exercise, in its sole discretion, any or all rights and remedies available to it against Tenant or any other person, at any time either before, after, in conjunction with or independently of Landlord's assertion against Guarantor of any remedies. Such exercise of Landlord's rights and remedies against Tenant or any other person shall not impair any of Landlord's rights and remedies in enforcing this Agreement, under which the liabilities of Guarantor shall remain independent and unconditional.

3.      The liability and obligations of Guarantor hereunder shall remain in full force and effect without regard to, and shall in no way be impaired or affected by, (a) the release or discharge of Tenant in any creditors', receivership or bankruptcy proceeding, including, without limitation rejection of some or all of the Obligations in a bankruptcy of Tenant; (b) any rescission, waiver, amendment, extension or modification of, or any release from, any of the terms or provisions of the Lease (whether or not separately consented to, acknowledged or confirmed by Guarantor); (c) any permitted sale, assignment, or sublease, pledge or mortgage of the rights of Tenant or Landlord under the Lease or any other agreement delivered or given in connection herewith or therewith; (d) the compromise, release or discharge of Tenant, consent, extension, indulgence or other action or inaction by Landlord in respect to any of the terms, conditions or provisions of the Lease; or (e) any application or release of any security or other guaranty given for the performance and observance of the covenants and conditions in the Lease on Tenant's part to be performed and observed.

4.      The obligations of Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason (other than the payment and performance in full of the Obligations), including any claim of waiver, release, surrender, alteration or compromise of any of the Obligations, and shall not be subject to any defense or set-off, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Obligations or otherwise (other than the defense of payment and performance in full of the Obligations). Without limiting the generality of the foregoing, the obligations of Guarantor shall not be discharged or impaired or otherwise affected by the failure of the Landlord to assert any claim or demand or to enforce any remedy under this Agreement, the Lease or any other agreement delivered or given in connection herewith or therewith, by any

waiver or modification of any provision of the Lease or any other agreement delivered or given in connection therewith, by any default, failure or delay, willful or otherwise, in the performance of the Obligations, or by any other act or omission that may or might in any manner or to any extent vary the risk of any Guarantor or that would otherwise operate as a discharge of any Guarantor as a matter of law or equity (other than a written release of Guarantor from the Landlord in accordance with the terms of the Lease or the payment and performance in full of the Obligations).

5.       Notwithstanding the provisions of Section 7, Guarantor agrees that its guarantee hereunder shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any Obligation is rescinded or must otherwise be restored or returned by the Landlord upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of either Tenant or Guarantor, or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, either Tenant or Guarantor or any substantial part of its property, or otherwise, all as though such payment had not been made.

6.       Guarantor assumes all responsibility for being and keeping itself informed of Tenant's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment or nonperformance of the Obligations and the nature, scope and extent of the risks that Guarantor assumes and incurs hereunder, and agrees Landlord will have no duty to advise any of Guarantor of information known to it regarding such circumstances or risks.

7.       This Agreement shall survive the expiration or termination of the term of the Lease (including all option periods or extensions) and shall not terminate until indefeasible payment and performance in full of all Obligations.  Notwithstanding anything to the contrary contained herein, Guarantor hereby unconditionally and irrevocably waives, releases and abrogates, until such time as the Obligations shall have been indefeasibly paid and performed in full, any and all rights it may now or hereafter have under any agreement, at law or in equity (including any law subrogating Guarantor to the rights of Landlord), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Tenant or any other Person liable for payment or performance of any or all of the Obligations for any payment or performance made or undertaken by Guarantor under or in connection with this Agreement or otherwise.

8.       Guarantor represents, as to itself, that it has the full legal right, power and authority to enter into this Agreement and perform the transactions contemplated hereby. This Agreement has been duly authorized and delivered by Guarantor and constitutes the legal, valid and binding agreement of Guarantor, enforceable against Guarantor in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application relating to or affecting the enforcement of creditors' right and the application of equitable principles relating to the availability of remedies.  Guarantor represents that its entry into and performance of this Agreement will not (i) violate or conflict with any provision of its formation and governance documents, (ii) violate any material legal requirement, regulation, order, writ, judgment, injunction, decree or permit applicable to it or (iii) except as would not reasonably be expected to result in a material adverse effect on Guarantor, violate or conflict with any contract to which it is bound.   Guarantor represents, as to itself, that no consent, approval, authorization, order or filings of or with any court or

Governmental Authority (as defined in the Lease) is required for the execution, delivery and performance by such Guarantor of, or compliance by Guarantor with, this Agreement or the consummation of the transactions contemplated hereunder, other than those that have been obtained by Guarantor.

9.      By accepting delivery of this Agreement, Landlord agrees that this Agreement is for its confidential use only and that neither its existence nor the terms hereof will be disclosed by it to any person.  Notwithstanding the foregoing, (i) Landlord may disclose this Agreement to its officers, directors, employees, affiliates, independent auditors, legal counsel and other advisors on a confidential and "need to know" basis in connection with the transactions contemplated hereby. (ii) Landlord may make such other public disclosures of the terms and conditions hereof as (and solely to the extent) Landlord is required by law to make and (iii) Landlord may disclose this Agreement in a lawsuit, action or proceeding commenced to enforce the terms of this Agreement against Guarantor.

10.      This Agreement shall inure to the benefit of the Landlord and its successors and assigns and any assignee of the Landlord's interest in the Lease, and shall be binding upon Guarantor and its successors and assigns.

11.      The whole of this Agreement is herein set forth and there is no verbal or other written agreement, and no understanding or custom affecting the terms hereof.  Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

12.      This Agreement may not be changed or terminated orally, but only by a written amendment hereto signed by Guarantor and Landlord.

13.      This Agreement is a guarantee of payment and performance (not of mere collection). All remedies afforded to Landlord, or its successors or assigns, by reason of this Agreement are separate and cumulative remedies, and no one of such remedies, whether exercised by the Landlord or not, shall be deemed to be an exclusion of any other of the remedies available to the Landlord and shall in no way limit or prejudice any other legal or equitable remedies which the Landlord may have.

14.      This Agreement and the rights and obligations of the parties hereunder shall be governed by and construed and enforced in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within such State, without giving effect to the principles of conflicts of law. Guarantor hereby irrevocably consents to and submits to the exclusive jurisdiction over Guarantor's person by any of the state or federal courts in the County of New York, State of New York.

15.      This Agreement shall be binding upon Guarantor and Guarantor's legal representatives, the legal representatives of Guarantor's estate and Guarantor's heirs, successors

and assigns. Guarantor may not assign its obligations hereunder without the prior written consent of the Landlord.

16.    TO THE EXTENT PERMITTED BY LAW, GUARANTOR AND, BY ITS ACCEPTANCE HEREOF, LANDLORD, HEREBY IRREVOCABLY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM IN ANY WAY INVOLVING OR CONNECTED WITH THE LEASE OR THIS AGREEMENT.

17.    This Agreement may be executed in any number of counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or other electronic imaging (including in .pdf format) means shall be effective as delivery of a manually executed counterpart of this Agreement.

18.    Guarantor, and by its acceptance of this Agreement, the Landlord, hereby confirms that it is the intention of all such persons that this Agreement and the Obligations guaranteed by Guarantor hereunder not constitute a fraudulent transfer or conveyance for purposes of the United States Bankruptcy Code or any other federal, state or foreign bankruptcy, insolvency, receivership or similar law, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act or any similar foreign, federal or state law to the extent applicable to this Agreement and the obligations of Guarantor hereunder. To effectuate the foregoing intention, the Landlord and Guarantor hereby irrevocably agree that the Obligations for which Guarantor shall be liable under this Agreement at any time shall be limited to the maximum amount as will result in the obligations of Guarantor under this Agreement not constituting a fraudulent transfer or conveyance.

19.    Any notice required hereunder to be sent to any Guarantor shall be sufficiently given by mailing certified or registered mail, postage prepaid, addressed as follows:

> c/o ESL Investments, Inc.
> 1170 Kane Concourse, Suite 200
> Bay Harbor Islands, FL 33154
> Attention:  Kunal Kamlani
>
> With a copy to:
>
> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York 10006
> Attention:  Joseph Lanzkron, Esq.
>
> [REMAINDER OF PAGE INTENTIONALLY BLANK]

**IN WITNESS WHEREOF,** Guarantor has duly executed this Agreement as of the day and year first above written.

**TRANSFORM MIDCO LLC**

By: _____
      Name:
      Title:

**Exhibit C**
**Liquidated Violations**

| | 7777 Lease |
|---|---|
| **1.** | Dept. of Sanitation Violation Number: E044174447K |
| **2.** | Dept. of Sanitation Violation Number: E044174448M |
| **3.** | Dept. of Sanitation Violation Number: E044174449Y |
| **4.** | Dept. of Sanitation Violation Number: E044174450L |
| **5.** | Dept. of Sanitation Violation Number: E044174451N |
| **6.** | ECB Violation Number: 3826945Z |
| **7.** | DOB Violation Number: 012618ACC100740 |
| **8.** | DOB Violation Number: 012618ACC100741 |
| **9.** | DOB Violation Number: 012618ACC100742 |
| **10.** | DOB Violation Number: 012618ACC100743 |
| **11.** | DOB Violation Number: 012618ACC100752 |
| **12.** | DOB Violation Number: 012618ACC100753 |
| **13.** | DOB Violation Number: 051019E9027/652625 |
| **14.** | DOB Violation Number: 051019E9027/652626 |
| **15.** | DOB Violation Number: 051019E90247/652627 |
| **16.** | DOB Violation Number: 051019E9027/652629 |
| **17.** | Summons Number 0880991679 |
| **18.** | Summons Number 0880991715 |
| **19.** | Summons Number 0880991724 |
| **20.** | Summons Number 0880991697 |
| **21.** | Summons Number 0880991706 |
| **22.** | Summons Number 0880991688 |

| | **7749 Lease** |
|---|---|
| **23.** | ECB Violation Number: 0193672573 |
| **24.** | ECB Violation Number: 0193672582 |
| **25.** | ECB Violation Number: 38266473P |
| **26.** | ECB Violation Number: 38266472N |
| **27.** | ECB Violation Number: 38267101Z |
| **28.** | ECB Violation Number: 38267102K |
| **29.** | ECB Violation Number: 38267155Y |
| **30.** | ECB Violation Number: 38267156X |