Allen G. Kadish
Lance A. Schildkraut
ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Email: akadish@archerlaw.com
         lschildkraut@archerlaw.com

    and

Kenneth M. Florey
M. Neal Smith
ROBBINS, SCHWARTZ, NICHOLAS,
LIFTON & TAYLOR, LTD.
631 E. Boughton Road, Suite 200
Bolingbrook, Illinois 60440
Tel: (630) 929-3639
Email: kflorey@robbins-schwartz.com
         nsmith@robbins-schwartz.com

    and

Matthew T. Gensburg
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Tel: (312) 263-2200
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

Hearing Date: September 18, 2019 at 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

### SUPPLEMENTAL OBJECTION OF COMMUNITY UNIT SCHOOL DISTRICT 300 TO CONFIRMATION OF THE MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS

COMMUNITY UNIT SCHOOL DISTRICT 300, an Illinois school district existing and

operating pursuant to the Illinois School Code, 150 Illinois Compiled Statutes ("**ILCS**") 5/1-1, *et*

*seq.* (the "**School District**"), and a creditor in the cases of Sears Holdings Corporation (0798), Sears, Roebuck and Co. (0680), and Sears Holdings Management Corporation (2148), by and through its undersigned counsel, hereby supplements its objection to [Doc. No. 4713] confirmation of the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors*, as further modified on August 2, 2019 [Doc. No. 4705]. The School District continues to reserve its right to object to confirmation on additional grounds. The basis for these supplemental objections is as follows:

## BACKGROUND

1. On April 17, 2019, the Debtors filed their *Joint Chapter 11 Plan* and *Disclosure Statement of Sears Holdings Corporation and its Affiliated Debtors* [Doc. Nos. 3275 and 3276].

2. On May 16, 2019, the Debtors filed their *Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [Doc. No. 3894]. On the same day, the Debtors also filed their *Disclosure Statement for Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [Doc. No. 3895].

3. On June 28, 2019, the Debtors filed their *Second Amended Joint Chapter 11 Plan* and *Disclosure Statement of Sears Holdings Corporation and its Affiliated Debtors* [Doc. Nos. 4389 and 4390].

4. On June 28, 2019, the Court entered the *Order (I) Approving Disclosure Statement, (II) Establishing Notice and Objection Procedures for Confirmation of the Plan ,(III) Approving Solicitation Packages and Procedures for Distribution Thereof, (IV) Approving the Form of Ballots and Establishing Procedures for Voting on the Plan, and (V) Granting Related Relief* (the "**Disclosure Statement Order**") [Doc. No. 4392]. Pursuant to this Order, parties-in-interest were given until August 2, 2019 to file objections to confirmation of the plan.

5. On July 9, 2019, the Debtors filed their *Modified Second Amended Joint Chapter 11 Plan* and *Disclosure Statement of Sears Holdings Corporation and its Affiliated Debtors* (the "**July Plan"**) [Doc Nos. 4476 and 4478].

6. On August 2, 2019, the School District filed its *Objection of Community Unit School District 300 to Confirmation of the Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors (the* "**School District Objection**") [Doc. No. 4713].

7. On August 2, 2019, the Debtors filed the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [Doc. No. 4705], which modified the July Plan (the "**Modified Plan**"). This supplemental objection addresses portions of the Modified Plan which the School District finds objectionable, and incorporates by reference the School District Objection.

8. As noted above, the School District has asserted claims against Sears Holdings Corporation, Sears, Roebuck and Co. and Sears Holdings Management Corporation pursuant to the Illinois Economic Development Area and Tax Increment Allocation Act, 20 ILCS 620/1, *et seq.* (the "**Illinois EDA Act**"), and that certain *Economic Development Agreement* entered into by and between the Village of Hoffman Estates, Illinois and the Debtors (the "**1990 Agreement**"), all as amended by the Illinois legislature in 2012. The School District has asserted that the Debtors failed to maintain the requisite number of full-time equivalent jobs at its corporate headquarters in the Village of Hoffman Estates for the tax years 2015 thru 2018, as required by the Illinois EDA Act and the 1990 Agreement. Further, given the Debtors' erroneous interpretation of how full-time equivalent jobs are determined under the Illinois EDA Act and 1990 Agreement, the School District believes it is likely that the Debtors have never been in compliance with the Illinois EDA

Act since its amendment in 2012.

9. Section 200/21-75 of Chapter 35 of the Illinois Compiled Statutes, 35 ILCS §200/21-75 (the "**Illinois Property Tax Code**") provides:

> [t]he taxes upon property, together with all penalties, interests and costs that may accrue thereon, shall be a prior and first lien on the property, superior to all other liens and encumbrances, from and including the first day of January in the year in which the taxes are levied until the taxes are paid or until the property is sold under this Code.

Based on Debtors' alleged misstatements of fact and violations of the Illinois EDA Act and 1990 Agreement, the School District believes that the Debtors were improperly rebated property taxes to which they were not entitled under the Illinois EDA Act. The School District has asserted that outstanding property taxes, along with all penalties, interests and costs that have and will accrue thereon, represent a prior and first lien on the assessed property, superior to all other liens and encumbrances and is now due the Cook County Collector and the School District. Further, any proceeds arising from a sale of the Debtors' corporate headquarters will be encumbered by the tax lien and should be used to satisfy the claims of the Cook County Collector and the School District.

### SUPPLEMENTAL OBJECTIONS

**I. The Modified Plan Improperly Vests Assets in the Liquidating Trust Free and Clear of Liens Without Priority for Secured Claims.**

10. Section 10.3 of the Modified Plan now provides, in pertinent part, as follows (underlined text represents insertions made on August 2, 2019):

> **10.3** *Liquidating Trust Assets.*
>
> On the Effective Date, and in accordance with sections 1123 and 1141 of the Bankruptcy Code, all title and interest in all of the Liquidating Trust Assets, <u>which constitute all assets of the Debtors that have not been distributed on or prior to the Effective Date, including without limitation all General Assets, Specified Causes of Action (including, but not limited to, all claims previously asserted in the adversary proceeding captioned *Sears Holdings Corp. v.*</u>

4

> *Lampert*, Adv. Proc. No. 19-08250 (RDD) (Bankr. S.D.N.Y.)), and the Credit Bid Release Consideration, as well as the rights and powers of each Debtor in such Liquidating Trust Assets, including, without limitation, all of the Debtors' rights under the Asset Purchase Agreement, shall irrevocably and automatically vest in the Liquidating Trust, free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Liquidating Trust Beneficiaries. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors shall have no interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

11. Section 8.2 of the Plan provides for the following treatment of Class 2 Secured Claims:

> ***Secured Claims (Class 2).***
>
> *Treatment*: Except to the extent that a holder of an Allowed Secured Claim agrees with the Debtors (subject to the Creditors' Committee Notice Procedures) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to different treatment, on the latest of (x) the Effective Date, (y) the date that is ten (10) Business Days after the date such Secured Claim becomes an Allowed Claim, or (z) the next Distribution Date after such Secured Claim becomes an Allowed Secured Claim, each holder of an Allowed Secured Claim will receive from the Debtor against which its Secured Claim is Allowed, on account and in full satisfaction of such Allowed Claim, at the option of the Debtors (subject to the Creditors' Committee Notice Procedures) or Liquidating Trustee, as applicable:
>
> (i) Cash in an amount equal to the Allowed amount of such Secured Claim;
>
> (ii) transfer of the collateral securing such Secured Claim or the proceeds thereof in satisfaction of the Allowed amount of such Secured Claim; or
>
> (iii) such other treatment sufficient to render such holder's Allowed Secured Claim Unimpaired.

12. Sections 1129(b)(2)(A)(i) and (iii) of the Bankruptcy Code state that a plan is fair and equitable with respect to a class of secured claims, if the plan provides either: "(i) (I) that the holder of such claim retains the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount

of such claim; and (II) each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; * * * or (iii) for the realization by such holders of the indubitable equivalent of such claims."[1]

13.     Under the Modified Plan, secured claims, including that of the School District, will be subject to possible deferment to the later of ten days after the claim becomes an Allowed Claim, or the next Distribution Date after such Secured Claim becomes an Allowed Secured Claim. As a result, absent consent and to the extent their secured claims are allowed, such creditors are entitled to the protection of section 1129(b)(2)(A)(i) or (iii).

14.     Pursuant to Section 10.3 of the Modified Plan, as now modified, secured creditors, including the School District, will not retain their security interests after Plan confirmation. In that scenario, the Debtors must provide these secured creditors with the indubitable equivalent of their claims.

15.     *In re DBSD North America, Inc.*, 419 B.R. 179 (Bankr. S.D.N.Y. 2009), states that for "cramdown" purposes, in determining whether a plan provides a dissenting secured creditor with the "indubitable equivalent" of its claim, the court should consider whether the plan both protects the creditor's principal, based on the value of the collateral relative to the secured claim, and provides for the present value of the creditor's claim, based on an appropriate interest rate. *See also In re Bate Land & Timber LLC*, 877 F.3d 188 (4th Cir. 2017), and *In re Wiersma*, 227

---

[1] Section 1129(b)(2)(A)(ii) of the Bankruptcy Code which states, as an alternative, that the plan may provide for sale, subject to Section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph. In the context of the Plan, this Section is not relevant.

Fed.Appx. 603 (9th Cir. 2007) (indubitable equivalence has two components: (1) it must compensate for present value, and (2) insure the safety of the principal).

16.    The Modified Plan fails to comply with Sections 1129(b)(2)(A)(i) and (iii) by improperly stripping the School District of its secured claim without providing the School District with the indubitable equivalent of that secured claim.

## II.    The Modified Plan Fails to Provide a Proper Reserve for Disputed Claims.

17.    Section 11.4(a) of the Modified Plan now provides as follows (underlined text represents insertions made on August 2, 2019):

> **11.4(a) *Reserve on Account of Disputed Claims.***
>
> (a) From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the Allowed amount, or Allowed or disallowed by Final Order, the Liquidating Trust shall establish, for the benefit of each holder of a Disputed Claim, the Disputed Claims Reserve consisting of Cash or Liquidating Trust Interests, as applicable, and any dividends, gains or income attributable thereto, in an amount equal to the *Pro Rata* share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim has been estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code as constituting and representing the maximum amount in which such Claim may ultimately become an Allowed Claim or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Debtors (with the consent of the Creditors' Committee) or the Liquidating Trust, as applicable. For the avoidance of doubt, any Cash and Liquidating Trust Interests retained and held for the benefit of a holder of a Disputed Claim as part of the Disputed Claims Reserve shall be treated as a payment and reduction on account of such Dispute d Claim for purposes of computing any additional amounts to be paid in Cash or distributed in Liquidating Trust Interests in the event the Disputed Claim ultimately becomes an Allowed Claim. Cash and Liquidating Trust Interests held in the Disputed Claims Reserve (including, with respect to Cash, any earnings that have accrued on such Cash, net of any expenses,

7

<blockquote>including any taxes, relating thereto) shall be retained by the Liquidating Trust for the benefit of holders of Disputed Claims pending determination of their entitlement thereto under the terms of the Plan. Any Cash and proceeds of the Liquidating Trust Interests shall be either (x) held by the Liquidating Trust in an interest-bearing account or (y) invested in interest bearing obligations issued by the United States government and guaranteed by the United States government, and having (in either case) a maturity of not more than 30 days. No payments or distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order. For the avoidance of doubt, Cash held in the Disputed Claims Reserve will (i) be deposited in an interest-bearing account and held in trust, pending distribution by the Liquidating Trust, for the benefit of holders of Allowed Claims, (ii) be accounted for separately and (iii) not constitute property of the Liquidating Trust. Liquidating Trust Interests held in the Disputed Claims Reserve will (a) be held in trust, pending distribution by the Liquidating Trust, for the benefit of holders of Allowed Claims, (b) be accounted for separately and (iii) not constitute property of the Liquidating Trust.</blockquote>

18.    Under Section 11.4(a) of the Plan, as now modified, the Liquidating Trust must establish for the benefit of each holder of a Disputed Claim, a Disputed Claim Reserve consisting of either (i) Cash, or (ii) Liquidating Trust Interests.  Section 1.107 defines "Liquidating Trust Interests" to means, as relevant here, "the General Unsecured Liquidating Trust Interest."  Section 1.76 defines "General Unsecured Liquidating Trust Interest" to mean "a non-certificated beneficial interest in the Liquidating Trust granted to holders of (a) Allowed General Unsecured Claims, (b) the Allowed PBGC Unsecured Claim, and (c) Allowed ESL Unsecured Claim (if any), which shall entitled such holder to share in the General Unsecured Trust Recovery in accordance with the Plan."

19.    The purpose of a disputed claim reserve is to protect the interests of holders of Disputed Claims when plan disbursements are made to other creditors prior to the resolution of the dispute.  It insures that should the Disputed Claim be allowed, there will be sufficient funds available to match prior disbursements made to other allowed claimants.  Disputed claim reserves

should be true "reserves," defined as a fund of money set aside by a bank or an insurance company to cover future liabilities. As a verb, "reserve" means "something retained or stored for use." BLACK'S LAW DICTIONARY 1564 (11th ed. 2019). In this way, a disputed claim reserve allows a plan to comply with Section 1123(a)(4) of the Bankruptcy Code, which requires all plans to "provide the same treatment of each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."

20. A disputed claim reserve comprised of cash equal to percentage disbursed to other claimants, in fact, protects holders of disputed claims. And Section 11.4(a) of the Modified Plan specifically provides that "Cash held in the Disputed Claims Reserve will (i) be deposited in an interest-bearing account and held in trust, pending distribution by the Liquidating Trust, for the benefit of holders of Allowed Claims, (ii) be accounted for separately and (iii) not constitute property of the Liquidating Trust." However, Section 11.4(a) also allows, as an alternative, the creation of a disputed claim reserve comprised of Liquidating Trust Interests. A reserve comprised of Liquidating Trust Interests, in lieu of cash, provides limited, if any, protection to holders of disputed claims, unless those liquidating trust interests themselves are supported by segregated cash equal to the percent paid in prior disbursements, a proposition not provided under the Modified Plan. Without more, funding the Disputed Claims Reserve with Liquidating Trust Interests improperly provides no or at best, limited, protection to holders of disputed claims which are subsequently allowed, in violation of Section 1123 of the Bankruptcy Code.

21. Finally, Section 11.4(c) of the Plan provides that "[i]f a Disputed Claim is disallowed, in whole or in part, the Liquidating Trustee shall cancel the reserve Liquidating Trust Interest, if applicable, and distribute the Cash held in the Disputed Claim Reserve with respect to such Claim to the holder of Allowed Claims." While the School District suspects that it is not the

intent of the Debtors to eliminate the entire Disputed Claim Reserve for a Disputed Claim if only part of the claim is disallowed, for purposes of clarity the aforementioned sentence should be modified to provide that the reserve shall be cancelled only in proportion to the amount in which a Disputed Claim is disallowed.

## CONCLUSION

WHEREFORE, Community United School District 300 asks that this Court deny confirmation of the Plan and grant such other and further relief as is just and proper.

Dated: New York, New York  
       August 28, 2019

ARCHER & GREINER, P.C.

By: /s/ Allen G. Kadish  
    Allen G. Kadish  
    Lance A. Schildkraut  
630 Third Avenue  
New York, New York 10017  
Tel: (212) 682-4940  
Email: akadish@archerlaw.com  
       lschildkraut@archerlaw.com

and

Kenneth M. Florey  
M. Neal Smith  
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.  
631 E. Boughton Road, Suite 200  
Bolingbrook, Illinois 60440  
Tel: (630) 929-3639  
Email: kflorey@robbins-schwartz.com  
       nsmith@robbins-schwartz.com

and

Matthew T. Gensburg  
Gensburg Calandriello & Kanter, P.C.  
200 West Adams Street, Suite 2425  
Chicago, Illinois 60606  
Tel: (312) 263-2200  
Email: mgensburg@gcklegal.com

*Attorneys for Community Unit School District 300*

217013797v1