Paul J. Labov
Carly S. Everhardt
**FOLEY & LARDNER LLP**
90 Park Avenue
New York, New York 10016-1314
Telephone: (212) 682-7474
Facsimile: (212) 687-2329
E-mail: plabov@foley.com
E-mail: ceverhardt@foley.com

Erika L. Morabito (admitted *pro hac vice*)
**FOLEY & LARDNER LLP**
3000 K. Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: (202) 295-5300
E-mail: emorabito@foley.com

*Counsel to Whitebox Asymmetric Partners, LP;*
*Whitebox Multi-Strategy Partners, LP; Hain*
*Capital Investors Master Fund, Ltd. and; Cherokee*
*Debt Acquisition, LLC.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al.,*<br>Debtors.[1] | Chapter 11<br><br>Case No. 18-23538 (RDD)<br>(Jointly Administered) |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are as follows:  Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC (5554); Sears STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).

### JOINDER, OMNIBUS OBJECTION TO FEE APPLICATIONS FILED BY PROFESSIONALS AND REQUEST TO INCREASE HOLDBACK AMOUNT

Whitebox Asymmetric Partners, LP, Whitebox Multi-Strategy Partners, LP, Hain Capital Investors Master Fund, Ltd., and Cherokee Debt Acquisition, LLC (collectively, the "Priority Claimant Consortium"),[2] by and through their undersigned counsel, hereby submit this joinder (the "Joinder") to the *Limited Objection of Mien Co. Ltd., Helen Andrews, Strong Progress Garment Factor Company, Ltd., Samil Solutions, Shanghai Fochier, Purcell Murray, A&A HK Industrial, and Mingle Fashion to Fee Applications Filed by Professionals* (D.E. #4923) (the "Initial Objection") to the various first and second interim fee applications pending before this Court[3]

---

[2] The members of the Priority Claimant Consortium collectively hold a significant percentage of the total amount of estimated Administrative Expense Claims.

[3] The first and second interim fee applications include the following: *Second Interim Fee Application of Deloitte & Touche LLP for Services Rendered and Reimbursement of Expenses Incurred as Independent Auditor and Advisor from March 1, 2018 to June 30, 2019* (D.E. #4826), *Second Interim Fee Application of Deloitte Transactions and Business Analytics LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Bankruptcy Advisor from March 1, 2019, through June 30, 2019* (D.E. #4827), *Second Interim Fee Application of Alvarez & Marsal North America, LLC for Compensation Earned and Expenses Incurred for the Period from March 1, 2019 through and including June 30, 2019, Second Interim Fee Application of Paul, Weiss, Rifkind, Wharton & Garrison LLP, Attorneys for the Debtors and Debtors in Possession for the Period from March 1, 2019 Through and Including June 30, 2019* (D.E. #4834), *Second Interim Fee Application of Stout Risius Ross, LLC, Real Estate Consultant and Advisor for the Debtors, for the Period from March 1 2019 Through and Including June 30, 2019* (D.E. #4835), *Second Interim Fee Application of Evercore Group L.L.C. for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Investment Banker to the Debtors for the Period from March 15, 2019 Through and Including July 14, 2019* (D.E. #4837); *Second Application for Interim Professional Compensation of Prime Clerk LLC, as Administrative Agent of the Debtors, for Services Rendered and Reimbursement of Expenses for the Period from March 1, 2019 through June 30, 2019* (D.E. #4840), *Second Interim Application of FTI Consulting, Inc., Financial Advisor to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al., for Interim Allowance of Compensation and Reimbursement of Expenses for the Period from March 1, 2019 Through June 30, 2019* (D.E. #4841), *Second Interim Application of Houlihan Lokey Capital, Inc., Investment Banker to the Official Committee of Unsecured Creditors, for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from March 1, 2019 Through June 30, 2019* (D.E. #4842), *First Joint Application of Paul E. Harner, as Fee Examiner and Ballard Spahr LLP, as Counsel to the Fee Examiner for Interim Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from April 22, 2019 Through June 30, 2019 for Fee Examiner, Other Professionals* (D.E. #4844), *Second Application for Interim Professional Compensation of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of March 1, 2019 Through and Including June 30, 2019* (D.E. #4846), *Second Interim Fee Application of Deloitte Tax LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Tax Services Provider from March 1, 2019 through June 30, 2019* (D.E. #4848) *Second Application of Weil, Gotshal & Manges LLP, as Attorneys for the Debtors, for Interim Allowance of*

2

(collectively, the "Fee Applications").  In furtherance of this Joinder, the Priority Claimant Consortium states as follows:

## PRELIMINARY STATEMENT

1.   This objection is about one thing – fundamental fairness.  It is not about punishing the professionals by objecting to the payment of their fees.  Instead, this objection is about recognizing that in the bankruptcy process, similarly situated creditors must be treated equally.  There is no doubt that the professionals have worked hard and contributed to these cases.  But, there is equally no doubt that the administrative vendors, partners to the Debtors in this process and the lifeblood of these cases, have contributed at least as much.  Indeed, without the support of administrative vendors during the critical 2018 holiday season, the Debtors' value as a going concern would have plummeted and thousands of jobs would have been lost.  Critically, without receiving the full value of their administrative claims, many of these vendors could face an uncertain future.

2.   Importantly, this objection is neither focused nor intended to register concern about professionals' individual fees or time entries.  Rather, this Objection seeks to temporarily suspend the relief requested in the Interim Fee Procedures Order allowing interim payment of fees, or in the alternative to sufficiently increase the 20% holdback to prevent further estate resources from being expended at a time when these estates are likely administratively insolvent.  We are confident that the United States Trustee, the Fee Examiner appointed in this case, and this Court will ensure that the substantial amount of fees and costs requested by the professionals to date (a number approaching $170 million) meet applicable Bankruptcy Code requirements.

---

*Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary expenses, Incurred from March 1, 2019 Through and Including June 30, 2019* (D.E. #4860), *Second Application for Interim Professional Compensation for Young Conaway Stargatt & Taylor LLP* (D.E. #4863), *First Interim Application for Compensation and Reimbursement of Expenses of Elise S. Frejka, Consumer Privacy Ombudsman, for the Period December 3, 2018 Through July 31, 2019* (D.E. #4910).

4835-9985-6802.5

3.    Sadly, the Debtors' ability to pay their administrative claims in full is in serious doubt. Indeed, the Debtors and the Committee have indicated that in order to confirm a plan (the "Plan"), trade vendors with administrative claims will likely have to agree to significant concessions.  These concessions, however, should not be limited to the trade claimants.  The professionals should have to share that burden as well.

4.    Given the complexity of these issues, the plethora of stakeholders, and the impending hearing on confirmation, the Priority Claimant Consortium urges this Court to temporarily pause the relief granted in the Interim Fee Procedures Order in order to protect the valuable and limited estate resources.  Alternatively, we request that the Court increase the minimal 20% holdback that now exists in the Interim Fee Compensation Order to a higher percentage that takes into account the current posture of this case.  By doing so it will help balance the harm to the professionals seeking to get paid in full with the harm to the other administrative creditors who may be staring down the barrel of significant impairment, especially if this case gets dismissed or converted to one under Chapter 7 due to the Debtors' administrative insolvency.

5.    Finally, while recognizing that it is not a motion currently pending before this Court, mediation may also be a viable alternative now to provide the Debtors and their administrative claimants a reasonable opportunity to reach an agreement that may in fact allow for a Chapter 11 Plan to be confirmed in this case.  This path seems preferable to one where the Debtors simply plow ahead toward a heavily contested confirmation, expending even more estate resources, with a Plan that cannot be confirmed, as a matter of law.

4

## BACKGROUND

6.    The Debtors commenced voluntary cases under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") beginning on October 15, 2018, in the United States Bankruptcy Court for the Southern District of New York (the "Court").[4]

7.    On November 1, 2018, the Debtors filed the *Motion of Debtors for Authority to Establish Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (D.E. #425).

8.    On November 16, 2018, the Court entered an *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "Interim Fee Compensation Order") (D.E. #796).

9.    The Interim Fee Compensation Order provides that professionals must file monthly fee statements (the "Monthly Statement") with the Court.  *See* Interim Fee Compensation Order ¶2.A(i)-(ii).  Parties then have 15 days after the receipt of the Monthly Statement to review the Monthly Statement and file an objection. *See id*. at ¶2.A(v).  After the time to object has passed, if no objections were filed, the Debtors shall pay 80% of the fees and 100% of the expenses identified in the Monthly Statement. *See id*. at ¶2.A(vi).

10.    The Monthly Statements do not replace the need to file interim or final fee applications. The Court requires professionals to file interim fee applications every four months. *See id*. at ¶2.B.

11.    Notwithstanding the Debtors' ability to make payments to professionals based on the Monthly Statements and interim fee applications, the professionals' fees are still subject to final approval of fees and expenses by the Court. *See id*. at ¶¶2.A(ii), 2.B(v).

---

[4]    On October 16, 2018, the Court entered an order administratively consolidating the Debtors' bankruptcy cases for procedural purposes only, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (D.E. #118).

4835-9985-6802.5

## JOINDER

12.  The Priority Claimant Consortium joins in the Initial Objection for the reasons set forth therein, and requests the relief sought in the Initial Objection, namely, that the Court should enter an order denying the Fee Applications to the extent that the professionals request immediate payment of their fees at this time.  Alternatively, the Priority Claimant Consortium requests that the Court increase the minimal 20% holdback that now exists in the Interim Fee Compensation Order to a significantly higher percentage that takes into account the current posture of these cases.

## FURTHER OBJECTION

13.  The Priority Claimant Consortium further objects to the monthly allowance and payment of compensation and reimbursement of expenses as set forth in the Interim Fee Procedures Order because these cases are likely administratively insolvent and the effect of the Interim Fee Procedures Order is to create two classes of administrative claims.

14.  To date, the professionals in these cases have billed $161,383,731.10 in fees and $6,395,295.66 in expenses.  The Court has already approved, on an interim basis, $130,076,561.59 in fees plus $3,809,041.33 in expenses (D.E. #4409).  The Interim Fee Applications filed in August request an additional $31,307,169.60 in fees and $2,586,254.33 in expenses. Therefore, the overall fees requested by the professionals make up a remarkable 25% of the total administrative expenses.

15.  Several administrative claim holders have filed motions for allowance and payment of their administrative expense claims (D.E. ##3404, 4001, 4176, 4306, 4631, 4689, 4706, 4728).   In their response to these requests, the Debtors have taken the position that the estates are likely administratively insolvent and to prevent a "first to the courthouse" mentality and to protect basic fairness, a protocol exists to ensure that all administrative claim holders are treated equally.  To that end, and upon information and belief, the Debtors have refused to make any payments to these

6

administrative creditors. *See Debtors' Omnibus Objection to Vendors' Motions for Allowance and Payment of Administrative Expense Claims* (D.E. #4854).

16. Yet, the Debtors and other estate professionals have continued to act pursuant to the Interim Fee Procedures Order and estate professionals have billed and, subject to approval of interim and final fee applications, have (or will) be paid approximately $167,779,026.85 in fees and expenses incurred through June 30, 2019. *See First Order Granting Applications of Professionals for Interim Allowance of Compensation and Reimbursement of Expenses* (D.E. #4409) (approving $130,076,561.59 in fees and $3,809,041.33 in expenses); *supra* n. 3 (detailing currently pending interim fee applications totaling $31,565,423.93 in fees and expenses). Through June 1, 2019, $134,826,596 in professionals' fees were already paid. *See Corporate Monthly Operating Report for the Reporting Period of May 5, 2019 – June 1, 2019* (D.E. #4590).

17. At the hearing on August 22, 2019, this Court indicated it would be hesitant to reduce the estate professionals' fees due to their hard work in this case. To be clear, the Priority Claimant Consortium also believes the professionals in this case have worked hard, and therefore are not asking the Court to ultimately deny the professionals' request for fees in this case. Rather, given the current posture of this case, the Priority Claimant Consortium is simply asking this Court to balance the harm here and treat professionals in this case the same as other administrative creditors when it comes to their requests for immediate payment of their fees. Every dollar that continues to get paid to professionals is one less dollar available to pay administrative creditors, especially if this case is administratively insolvent and unsecured creditors stand to get nothing.

18. At the August 22, 2019 hearing, the Court cautioned the debtors that "this isn't a normal case … in part because the debtor may be administratively insolvent in which case, it needs to step back and look very carefully at all these claims as a group and decide how to proceed with them."

7

Tr. Of August 22, 2019 Hearing at p. 98:6-12.  This is a serious concern of the Priority Claimant

Consortium as well, along with other similarly situated administrative creditors.  As this court is

well aware, solvency has been at issue during the entirety of this case.  For example, Transform

has questioned the Debtors' assumptions and noted that it believes that once the assumptions are

corrected it "could render Debtors administratively insolvent."  *See Limited Objection and*

*Reservation of Rights of ESL Investments, Inc. and Transform Holdco LLC to Joint Chapter 11*

*Plan of Sears Holding Corp and its Affiliated Debtors* (D.E. #4759).  Even the Debtors admitted

to "delay[ing] certain vendor payments in order to pay down the Senior DIP…."  *See Supplemental*

*Memorandum of Law in Support of Debtors' Brief in Opposition to Transform Holdco LLC's*

*Adversary Complaint and in Further Support of Debtors' Supplemental Motion to Enforce the*

*Asset Purchase Agreemen*t (D.E. #4979).

19.   Treating professionals differently than vendors is patently unfair, and candidly alters the

Bankruptcy Code and what and who it is designed to protect.  Simply stated, professionals are not

(and should not be) accorded a higher priority than any other administrative expense claim holders

under the Bankruptcy Code.  *See* 11 U.S.C. § 726(b) ("Payment on claims of a kind specified in

paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507(a) of this title, or in paragraph (2),

(3), (4), or (5) of subsection (a) of this section, *shall be made pro rata* among claims of the kind

specified in each such particular paragraph" (emphasis added)); 11 U.S.C. § 507(a)(2) (listing

administrative expenses under 503(b), which includes compensation and reimbursement awarded

under section 330 of the Bankruptcy Code as an administrative expense of the estate).  Indeed, as

the Sixth Circuit has noted, "[c]ounsel is a gambler in [bankruptcy] proceedings like every other

administrative claimant."  *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 664 (6th Cir. 2004).

8

20. Moreover, in the context of debtor-in-possession financing and section 363 sales, other courts have found that a debtor's success or failure should not solely be balanced on the back of administrative trade claims. As Judge Bonapfel stated in *In re Altantis Plastics, Inc.*, Case No. 08-75473 (PWB) (Bankr. N.D.Ga.), Tr. of Aug. 11, 2008 Hr'g on First Day Motions (Dkt. No. 58), at p. 42:7-9, "I don't see that Congress says we can pay one administrative expense and not another."

21. While the claim issues in the *Atlantis* case dealt mostly with section 503(b)(9) claims, the Court's admonishment applies equally here. There is simply no legal or factual basis to treat administrative trade claims and professional claims any differently. To do so would be to pervert the intention and goal of the Bankruptcy Code, *i.e.*, to encourage vendors to continue to ship to debtors and to provide those debtors with a fresh start.

22. Finally, the request herein to pause the relief granted in the Interim Fee Procedures Order is not prejudicial to professionals. The ultimate allowance of those fees are not the subject of this objection, as all issues involving allowance and payment of fees will be taken up by the Office of the United States Trustee, this Court, and the duly appointed Fee Examiner. Instead, this objection concentrates only on the payment of those fees now when the Debtors and Committee have indicated that the estates are likely administratively insolvent. Indeed, if the requested relief is not granted, the prejudice will be to the administrative vendor claimants, and possibly others.

23. Accordingly, the Court should at least temporarily "pause" the relief granted in the Interim Fee Compensation Order, and deny the Interim Fee Applications without prejudice until such time as it is clear how all administrative claims will be treated and paid in this case.

4835-9985-6802.5

## INCREASE HOLDBACK

24. Alternatively, the Court should consider increasing the 20% holdback percentage in paragraph 2.A(vi) of the Interim Fee Compensation Order to a much higher percentage that reflects the serious concerns in this case, including the high likelihood of administrative insolvency of the Debtors.  Paragraph 4 of the Interim Fee Compensation Order states that "[a]ny party may object to requests for payments made pursuant to this Order on the grounds that the Debtors have not . . . remained current on their administrative expenses … or a manifest exigency exists by seeking a further order of this Court…"  Therefore, the Interim Fee Compensation Order expressly contemplates its alteration especially here when there is a real concern that this estate is administratively insolvent.  So, while the Interim Compensation Order, at the time it was entered, may have been "essential, appropriate, and in the best interest of the Debtors, their creditors, and all other parties in interest," the posture of this case has changed.  What is now in the "best interest" of the Debtors, their creditors, and all parties in interest would be to carefully protect the remaining assets of the estate, even if it means limiting or capping the immediate payment of fees to estate professionals.

25. Holdbacks allow parties to review the reasonableness of aggregate fees and disbursements and "are commonly used by courts to moderate potentially excessive interim allowances and to offer an incentive for timely resolution of the case….[i]n the end, holdbacks are either directed by the court to be paid in full, in part or denied altogether (with the potential for additional disgorgement) depending upon an array of factors including: the total interim fees paid the applicant, the total and priority of the final fees awarded and the level of solvency of the estate." *See In re Child World*, 185 B.R. 14, 18 (Bankr. S.D.N.Y 1995).  Increasing the holdback is not unwarranted where there are concerns about the effect of the fees on the estate. *See In re Brooke*

10

*Corp.*, 2013 Bankr. LEXIS 5382 (Bankr. Kan. 2013) (increasing attorney's holdback).  Further, increasing the holdback still allows professionals to receive some interim compensation while quelling other concerns highlighted in the Initial Objection.

26. Therefore, the Court should alternatively consider modifying the Interim Fee Compensation Order to significantly increase the holdback percentage to reflect the uncertainties in this case and the high likelihood of administrative insolvency.

## REQUEST FOR MEDIATION

27.  Although the Priority Claimant Consortium and several other administrative claim holders have requested information from the Debtors for several weeks now relating to both the administrative claims pool and assets of the Debtors that may be used to satisfy and/or reserve for all of the administrative claims at Confirmation, to date the Debtors have not provided any of this information or documentation to the Priority Claimant Consortium.  Such disregard for its administrative creditors so close to the date for Confirmation of the Plan leaves the Priority Claimant Consortium (and other similarly situated administrative creditors) deeply concerned about the continued use of estate assets to pay professionals to keep this case alive in a very expensive Chapter 11.  This is especially true when we have seen no evidence that the Debtors are solvent and that there is a high likelihood of getting a Plan Confirmed.  In reality, the fear is that the Debtors expend estate resources pursuing an unconformable Plan, and sadly this case may get converted or dismissed due to the Debtors being administratively insolvent.  Unfortunately, and despite the Court's urging for the Debtors to work constructively with its administrative creditors, to date we have not seen any progress.

28. The Debtors are responsible and carry the burden of establishing the ability to pay administrative claims in full (or to reserve for same) on the Effective Date.  But given the size and

11

complexity of the issues that have occurred in these cases, including the many uncertainties that still exist, one can reasonably conclude that the Debtors either do not have the information necessary to have productive discussions on these issues with the Priority Claimant Consortium, or are simply refusing to do so.  We believe it's the former.  Upon information and belief, much of the information requested from the Debtors likely resides on servers and in accounting records held by Transform.  And, given the very public adverse relationship between the Debtors and Transform, this issue is not likely to get resolved any time soon. This again leaves the Priority Claimant Consortium with few options.  We can either just sit back and wait, while precious estate resources continue to be consumed by professionals to the detriment of all of the Debtors' creditors, or we can seek the narrow relief requested herein.  Regardless, the hearing on Plan Confirmation is scheduled for September 18, 2019, just three weeks away.  The time to act is now.

29.  At the hearing on August 22, 2019 the Court stated that it expected the Debtors to establish an evidentiary record prior to the confirmation hearing on their ability to pay administrative claims in full on the Effective Date.  When pressed, however, Debtors' counsel did not affirmatively state that they would be able to do this.  Instead, the Debtors stated that they believed they would be able to comply with section 1129 of the Bankruptcy Code. *See* Tr. of August 18, 2019 Hearing at 84:12-23.

30.  As previously set forth in the Priority Claimant Consortium's Objection to Confirmation, administrative creditors remain concerned that the Debtors will simply rely on a sleight of hand Objection to all claims, thereby making them "disputed" in order to confirm a Plan that only pays lip service to the requirements of the Bankruptcy Code. *See Objection to Modified Second Amended Joint Chapter 11 Plan of Sears Holding Corporation and Its Affiliated Debtors* (D.E.

12

4835-9985-6802.5

#4721, § 1). Then, post-confirmation, the administrative trade creditors will be left with the consequences of the Debtors' inability to pay their administrative claims.

31. The Court itself recognized the potential for issues regarding a sufficient record regarding the amount of administrative claims, concluding that if the Debtors "don't have a proper record at [the Confirmation hearing] and want to proceed, there will be a problem, or, if they don't have a proper record and they want some more time to develop one, including in culmination with groups of administrative expense creditors, they'll probably get such an adjournment." Tr. of August 22 Hearing at p. 118:5-10.

32. Thus, given the Court's rulings at the August 22, 2019 hearing, the Priority Claimant Consortium respectfully requests, and in fact urges, this Court to order mediation so that the Debtors, Transform, administrative trade claimants (through a chosen representative), and even retirees, may better understand the issues surrounding the ability of the Debtors to confirm a Plan. By doing so, significant estate resources can be preserved by not heading down a path toward confirmation with no conceivable confirmation of a Plan in sight.

33. The goal of mediation at this juncture would be to ensure that all parties are appropriately informed of the economic realities facing these Debtors and to collectively come up with a construct for administrative claims that would obviate the need for a costly mini-trial on estimation, and ultimately allow the Debtors to confirm a Plan.

## RESERVATION OF RIGHTS

34. The Priority Claimant Consortium reserves their rights to amend and/or supplement this objection, as well as their rights to object to final fee applications and to assert any other rights under applicable law.

13

## CONCLUSION

WHEREFORE, the Priority Claimant Consortium requests that the Court (i) deny the Interim Fee Applications to the extent that the professionals request immediate payment of their fees; (ii) "pause" the professionals' monthly compensation and reimbursement procedures pursuant to the Interim Fee Procedures Order and/or significantly increase the amount of the Holdback; (iii) order mediation; and/or (iv) grant any further relief that the Court deems just and appropriate.

Date:    August 28, 2019
         New York, New York

                                            */s/    Paul J. Labov*
                                            Paul J. Labov
                                            Carly S. Everhardt
                                            **FOLEY & LARDNER LLP**
     90 Park Avenue
     New York, New York 10016-1314
     Telephone: (212) 682-7474
     Facsimile: (212) 687-2329
     E-mail: plabov@foley.com

     -and-

     Erika L. Morabito (*pro hac vice*)
     **FOLEY & LARDNER LLP**
     3000 K. Street, N.W., Suite 600
     Washington, D.C. 20007-5109
     Telephone: (202) 295-5300
     E-mail:  emorabito@foley.com

     *Counsel to Whitebox Asymmetric Partners, LP; Whitebox Multi-Strategy Partners, LP; Hain Capital Investors Master Fund, Ltd. and; Cherokee Debt Acquisition, LLC.*

14