**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
In re:                                                     :   Chapter 11
                                                           :
SEARS HOLDINGS CORPORATION, et. al.,[1]                    :   Case No.: 18-23538-RDD
                                                           :   Jointly Administered
        Debtors.                                           :
                                                           :
-----------------------------------------------------------x
                                                           :
-----------------------------------------------------------x
                                                           :
SAYVILLE MENLO, LLC                                        :   Adv. No.:
                                                           :
        Plaintiff,                                         :   Adversary Complaint
                                                           :
    v.                                                     :
                                                           :
TRANSFORM HOLDCO, LLC                                      :
                                                           :
        Defendant,                                         :
-----------------------------------------------------------x
```

Plaintiff, by and through its undersigned counsel, Ansell Grimm & Aaron, P.C., for their Verified Complaint against Defendant allege as follows:

**THE PARTIES**

1. Plaintiff Sayville Menlo, LLC ("Plaintiff") is a New Jersey limited liability company with an address of 1401 Broad Street, 2nd Floor, Clifton, New Jersey 07013.

2. Defendant Transform Holdco, LLC is a Delaware limited liability company with an address of 3333 Beverly Road, BC-128B, Hoffman Estates, Illinois 60179,

---

[1] The last four digits of Sears Holdings Corporation federal tax identification number are 0798. Debtors' mailing address is 3333 Beverly Road, Hoffman Estates, Illinois 60179. Due to the large number of Debtors in this jointly administered matter, a complete list of Debtors and the last four digits of their federal tax identified numbers are not provided herein.

1

3. Debtor Sears Holdings Management Corporation ("Debtor") is a Delaware Corporation with a former corporate address is 3333 Beverly Road, BC-128B, Hoffman Estates, Illinois 60179.

## JURISDICTION

4. This Adversary Proceeding is being brought in connection with the Debtor/Defendant's case under Chapter 11 of the United States Bankruptcy Code.

## FACTS

5. On or about January 1, 1969, Plaintiff's predecessor-in-interest, Rolian Realty Corp. ("Rolian"), as landlord and Defendant's predecessor-in-interest, Bohemia Center, Inc. ("Bohemia"), as tenant, entered into a lease agreement (the "Lease"). A true and correct copy of the Lease is annexed hereto as **Exhibit A**.

6. The Lease is for a property located at 5151 Sunrise Highway, Bohemia, New York 11716 (the "Property"). *See* **Exhibit A**.

7. The original Lease term ran from January 1, 1969 to December 31, 1993. *See* **Exhibit A**.

8. Section 3.04 of the Lease provides that:

All additional rent and other payments provided for under this Lease shall constitutes rent payable hereunder with the same effect as if the same were the Net Annual rental reserved and provided for herein and, in the event of non-payment by Tenant of any such additional rent or other payments when due according to the terms of this Lease, Landlord shall have the same rights and remedies in respect thereof as Landlord shall or may have in respect of the Net Annual Rental herein reserved and provided for.

*See* **Exhibit A**.

9. Section 6.01 of the Lease provides that:

Landlord shall not be required to furnish any services or facilities or to make any repairs or alterations in or to the Demised Premises throughout the term of this Lease, Tenant hereby assuming the full and sole responsibility for the condition, construction, operation, repair, replacement, maintenance and management of the Demises Premises.

*See* **Exhibit A**.

10. Similarly, Section 6.04 of the Lease provides that: "Tenant shall take good care of the Demised Premises, make all repairs thereto, interior and exterior, structural and non-structural, ordinary and extraordinary, foreseen and unforeseen, and shall maintain and keep the Demised Premises in good order, repair and condition." *See* **Exhibit A**.

11. Section 6.09 states that:

Tenant will indemnify, protect and save harmless Landlord from and against each and every claim, demand, fine, penalty, cause of action, liability, damage, judgment or loss, of whatsoever kind or nature, to which Landlord may be subject or which Landlord may sustain resulting from any violation by Tenant or any failure of Tenant in the performance of any covenants or agreements contained in this Article 6 or in any other Article of this Lease.

*See* **Exhibit A**.

12. Pursuant to Section 12.01(b) of the Lease, it shall be a default under the Lease:

whenever Tenant shall do, or permit anything to be done, whether by action or inaction, contrary to any covenant or agreement on the party of Tenant herein contained or contrary to any of the covenants, agreements, terms or provisions of this Lease, or shall fail in keeping or performance of any of the covenants, agreements, terms or provisions contained in this Lease, which on the part or behalf of Tenants are to be kept or performed…and Tenant shall face to commence (subject to Unavoidable Delays) to take steps to remedy the same within (30) days after Landlord shall have given to Tenant a written notice specifying the same, or having so commenced shall thereafter fail to proceed diligently to remedy the same.

*See* **Exhibit A**.

069429.000625.63000092

13. Furthermore, Section 13.01 of the Lease provides as follows:

If Tenant shall default in the observance or performance of any term or covenant on its part to observed or performed under or by virtue of any of the terms or provisions of any Article of this Lease, Landlord, without being under any obligation to do so and without thereby waiving such default, may remedy such default for the account to the expense of Tenant…only provided that Tenant shall fail to commence to remedy such default within thirty (30) days after Landlord shall have notified Tenant in writing of such default and proceeds diligently to remedy the default. If Landlord makes any expenditures or incurs any obligations for the payment of money in connection therewith including, but not limited to, reasonably attorney's fees in instituting, prosecuting or defendant any action or proceeding, such sums paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid to it by Tenant.

*See* **Exhibit A**.

14. On or about April 19, 1990, Plaintiff's predecessor-in-interest, Sunrise Realty Associates ("Sunrise"), as landlord and Defendant's predecessor-in-interest, Bohemia Property Investors ("BPI"), as tenant, entered into an Amendment to the Lease (the "Amendment"). A true and correct copy of the Amendment is annexed hereto as **Exhibit B**.

15. Pursuant to Section 2(b) of the Amendment, BIP extended the term of the Lease for 25 years, to December 31, 2018. *See* **Exhibit B**.

16. The Amendment did not change any of the above quoted provisions of the original Lease. *See* **Exhibit B**.

17. Sometime following the Amendment to the Lease, Plaintiff became the successor to Sunrise as landlord while Debtor became the successor to BPI as tenant.

18. Pursuant to the plain terms of the Lease, the tenant is clearly responsible for all maintenance and repairs at the Property.

069429.000625.63000092

19. Furthermore, in the event that the tenant does not adequately undertake maintenance or repairs to the Property, Plaintiff is permitted to undertake those repairs itself while charging back the cost of repairs to the tenant.

20. In or around April, 2016, Plaintiff engaged Nova Consulting ("Nova") to perform an inspection on the Property and issue a Property Condition Inspection Report (the "Report"). A copy of the Report dated April 25, 2016 is annexed hereto as **Exhibit C**.

21. Nova visited the Property on April 21, 2016, to conduct a physical inspection. *See* **Exhibit C**.

22. The Report found the following deficiencies in the Property which required immediate repairs:

   a. Several areas of damaged asphalt pavement located throughout the Property, including potholes and large cracks;
   b. Deteriorated concrete curbs along the building's perimeter;
   c. Deteriorated paintwork throughout CMU facades;
   d. Efflorescence at brick columns;
   e. Water infiltration at EIFS;
   f. Deteriorated entrance doors and deteriorated window gaskets at storefront systems;
   g. Defective concrete at loading docks; and
   h. An active roof leak and numerous instances of improper attachment through the EPDM roof.

*See* **Exhibit C**.

23. As part of the Report, Nova suggested that the following repairs should be immediately undertaken:

   a. Asphalt milling and overlaying of certain areas of the parking lot and service areas, including repairing the more severely deteriorated asphalt pavement;
   b. Asphalt resealing and restriping the parking lot and service areas;
   c. Replace or repair all of the defective curbs at the Property;

5

      d. Clean efflorescence from columns;

      e. Repaint the CMU facades through the Property exterior;

      f. Repair areas of water infiltration in the EIFS;

      g. Replace deteriorated doors and defective rubberized gaskets;

      h. Repair or replace defective concrete at several loading docks; and

      i. Replace the defective and leaking EPDM roof.

*See* **Exhibit C**.

24. Nova termed the above defects as "immediate" concerns, meaning Nova defined those defects as either:

> (i) existing or potentially material[ly] unsafe conditions, (ii) material adverse physical deficiencies impacting existing tenancy, (iii) material building code violations, (iv) poor or deteriorated condition of a critical element or system, [or] (v) a condition that if left "as-is", with an extensive delay in element or system failure within one (1) year or a significant escalation in remedial cost.

*See* **Exhibit C**.

25. Therefore, all of the defective conditions at the property represent ***dangers to the general public***, have a materially adverse impact on the physical use of the property, run the risk of compromising a critical element or system of the Property, or could substantially deteriorate to a greater degree causing material damage to the Property thereby substantially increasing remediation costs. *See* **Exhibit C**.

26. In all, Nova estimated in the Report that the immediate, necessary repairs would cost at least $769,500.00. *See* **Exhibit C**.

27. Shortly after the Report was issued, Plaintiff contacted Debtor seeking to compel it to abide by its Lease obligations and make the necessary repairs to the Property.

28. Unfortunately, Debtor did not respond to Plaintiff's requests.

6

29. Therefore, on or about May 9, 2017, Plaintiff sent an e-mail to Debtor seeking to compel it to make the needed repairs to the Property specifically the damage to the Greenbriar Drive access road. A true and correct copy of the May 9, 2017 e-mail with attached photograph exhibits is annexed hereto as **Exhibit D**.

30. Debtor did not commence any repairs following the May 9, 2017 e-mail correspondence.

31. On June 13, 2017, Plaintiff sent another correspondence to Debtor regarding the Report and the repairs which needed to be performed at the Property. A copy of the June 13, 2017 correspondence is annexed hereto as **Exhibit E**.

32. The June 13, 2017 correspondence outlined the repairs which needed to be performed and required Debtor to provide Plaintiff with a plan of action on or before June 21, 2017. *See* **Exhibit E**.

33. On June 23, 2017, Debtor responded to Plaintiff stating it was "unclear about [its] structural obligations to Landlord under the [Lease]," despite the clear terms of the Lease requiring Debtor to make all of the immediate repairs, including those to Greenbriar Drive.

34. Therefore, on June 26, 2017, Plaintiff once again sent correspondence to Debtor requesting that it fulfill its Lease obligations. A true and correct copy of the June 26, 2017 correspondence is annexed hereto as **Exhibit F**.

35. Furthermore, the June 26, 2017 correspondence provided notice to Debtor that if repairs were not commenced on the Property on or before July 13, 2017, it would be in default of the Lease. *See* **Exhibit F**.

36. Debtor, by a response letter dated July 10, 2017, indicated that it has "commenced the process to perform the repairs and is diligently prosecuting the same." A true and correct copy of the July 10, 2017 correspondence is annexed hereto as **Exhibit G**.

37. On August 1, 2017, Plaintiff sent correspondence to Debtor stating that Plaintiff's representative visited the Property and "confirmed that no repairs were, in fact, underway." A true and correct copy of the August 1, 2017 correspondence is annexed hereto as **Exhibit H**.

38. Furthermore, the August 1, 2017 correspondence confirmed that Debtor had not furnished any updates or plans to Plaintiff for the repair and remediation of the Property. *See* **Exhibit H**.

39. As a result, Debtor was placed in default under the lease as of August 1, 2017. *See* **Exhibit H**.

40. Plaintiff again requested that Defendant provide an update by August 8, 2017 as to the repairs allegedly in process or to be performed. *See* **Exhibit H**.

41. On August 8, 2017 Debtor sent to Plaintiff a correspondence which again stated that it has "commenced the process to perform the repairs and is diligently prosecuting the same." A true and correct copy of the August 8, 2017 correspondence is annexed hereto as **Exhibit I**.

42. Once again, Debtor did not actually commence repairs to the Property as represented in the August 8, 2017 correspondence.

43. On August 18, 2017, Debtor sent to Plaintiff correspondence regarding the alleged repairs to the Property. A true and correct copy of the August 18, 2017 correspondence is annexed hereto as **Exhibit J**.

44. In that correspondence, Debtor represented that "[t]he Greenbriar Road and parking lot repairs have been completed." *See* **Exhibit J**.

8

45. However, Debtor admits that it did not perform any milling on the Property. *See* **Exhibit J**.

46. Furthermore, Debtor refused to make any repairs to the roof of the Property, despite its obligation to do so. *See* **Exhibit J**.

47. On August 25, 2017, Debtor sent to Plaintiff another correspondence which alleged that repairs to various other issues raised in the Report were being "addressed." A true and correct copy of the August 25, 2017 correspondence is annexed hereto as **Exhibit K**.

48. Similarly, on September 14, 2017, Debtor sent to Plaintiff another correspondence which alleged that repairs to various other issues raised in the Report would be "addressed this week." A true and correct copy of the September 14, 2017 correspondence is annexed hereto as **Exhibit L**.

49. Despite Debtor's representations that repairs had been done or were in the process of being performed, Plaintiff confirmed through a visit to the Property that no repairs had been performed or commenced. A true and correct copy of photographs evidencing the decrepit condition of the Property and Debtor's misrepresentations is annexed hereto as **Exhibit M**.

50. Specifically, the parking and service areas of the Property were significantly damaged and riddled with potholes.

51. Therefore, on September 29, 2017, Plaintiff filed an action against Debtor in New York State Court bearing Index No. 65462/2017 (the "State Court Action") seeking to compel the Debtor to either make the necessary repairs to the Property or pay to Plaintiff the costs associated with making the necessary repairs.

52. During the pendency of the State Court Action, Nova issued a second report dated July 12, 2018, which focused on the condition of the roof (the "Roof Report"). A true and correct copy of the Roof Report is annexed hereto as **Exhibit N**.

53. The Roof Report confirmed that the Property roof is approximately 20 years old. *See* **Exhibit N**.

54. Multiple leak locations were observed throughout the Property evidencing that the roof was leaking on a continuing basis, including into the substrate thus compromising the structural integrity of the roof. *See* **Exhibit N**.

55. The Roof Report confirmed that the Property's roof was in "poor condition" and required complete replacement. *See* **Exhibit N**.

56. Furthermore, the Roof Report noted that asbestos was discovered in multiple roof locations, again requiring immediate replacement of the roof to abate the substandard conditions. *See* **Exhibit N**.

57. As a result of the asbestos and continued deterioration of the roof, Nova estimated the cost to replace the Property's roof in excess of $1,000,000.00. *See* **Exhibit N**.

58. Debtor filed bankruptcy on October 15, 2018, staying the State Court Action.

59. At the time of Debtor's bankruptcy filing, paper discovery in the State Court Action had been completed, and party and expert depositions were scheduled to commence within the next month.

60. On May 13, 2019, the Bankruptcy Court entered an Order authorizing the assumption and assignment of certain leases from Debtor to Defendant, including the above described Lease. A true and correct copy of the May 13, 2019 Order is annexed hereto as **Exhibit O**.

61. Pursuant to Paragraph 11 of the May 13, 2019 Order, Plaintiff and Defendant "shall work in good faith to reconcile any disputes with respect to Cure Amounts, provided, however, that if either party believes, following good faith discussions, that an impasse has been reached with respect to any Cure Amounts, such party shall give written notice [to] the other, and within five days after such notice, in the absence of an agreement, such party may seek a hearing before the Bankruptcy Court…" *See* **Exhibit O**.

62. Following Defendant's assumption of the Lease, Plaintiff engaged in good faith efforts to resolve the dispute regarding needed repairs.

63. It quickly became apparent that Defendant did not intend to make the significant, necessary repairs to the Property, despite their obligations to do so under the Lease.

64. Instead, Defendant claimed the roof does not leak while paradoxically asserting that it repairs any leaks in lieu of replacement.

65. Defendant steadfastly refused to replace the roof.

66. Furthermore, despite the necessity to completely mill and repave the parking lot and access road, Defendant refused to make any repairs other than localized patching which is insufficient to address the significant defects.

67. Therefore, on June 4, 2019, Plaintiff sent a notice to Defendant pursuant to paragraph 11 of the May 13, 2019 Order advising that an impasse had been reached. A true and correct copy of the June 4, 2019 correspondence is annexed hereto as **Exhibit P**.

68. The roof, parking lot, and access road are in such disrepair that they present a risk to the health and safety of the public at large.

69. Customers driving the access road and parking lot have suffered damage to their vehicles as a result of the many pot holes and cracked areas.

069429.000625.63000092

70. Furthermore, continued water penetration in the roof risks compromising the structural integrity of the Property.

71. Recently Plaintiff has come to learn that the defective conditions at the Property are deteriorating at an accelerated rate, causing increased and additional safety hazards and greater, potentially irreversible, risk to integral systems.

72. Defendant's failure to remediate the defective conditions at the Property in contravention of its Lease obligations has caused substantial additional, continuing and irreparable damage and risk to the general public.

73. As a result, Defendant's persistent disregard of its Lease obligations risks physical injury to the general public, exposes Plaintiff to preventable litigation, and risks continuing, potentially irreversible degradation in value to the point of a total loss.

74. In that event that Defendant is not compelled to undertake the immediate and necessary repairs, Plaintiff will have no choice but to undertake to perform repairs itself to prevent a further diminution in the value of the Property.

75. Defendant is responsible for paying all costs which will be incurred by Plaintiff to remediate the defective conditions at the Property as outlined in the Report, including attorney's fees and costs in compelling Defendant to make the required repairs.

## FIRST CAUSE OF ACTION
(Breach of Contract)

76. Plaintiff repeats and re-alleges every allegations set forth in the previous sections, as if set forth at length herein.

77. The Lease between Plaintiff and Defendant is a contract.

78. The Lease requires that Defendant undertaken all necessary repairs to the Property.

069429.000625.63000092

79. As outlined in the Report and Roof Report, there are various repairs that must be immediately performed on the Property to remediate defective conditions.

80. Defendant breached and continues to breach the Lease by failing to make the required repairs.

81. Plaintiff has been and continues to be harmed by Defendant's breach of the Lease.

**WHEREFORE,** Plaintiff demands judgment:

1) For an order compelling Defendant to make all repairs identified in the Report and Roof Report by date certain;

2) Awarding the following damages in amount to be determined at trial:

    a. Actual damages;

    b. Punitive damages;

    c. Interest;

    d. Costs of suit;

    e. Attorneys' fees; and

3) For such other and further relief the Court deems just and proper.

## SECOND CAUSE OF ACTION
(Breach of Implied Covenant of Good Faith and Fair Dealing)

82. Plaintiff repeats and re-alleges every allegations set forth in the previous sections, as if set forth at length herein.

83. Implied within the Lease agreement between Plaintiff and Defendant is a covenant of good faith and fair dealing.

84. Defendant breached the covenant of good faith and fair dealing by failing to undertake necessary repairs to the Property as required by the Lease.

85. Defendant breached the covenant of good faith and fair dealing by refusing to perform certain needed repairs on the Property as required by the Lease.

86. Defendant further breached the covenant of good faith and fair dealing by falsely representing the condition of the Property and the extent of the defective conditions at the Property to avoid and delay its Lease obligations.

87. Plaintiff has been and continues to be harmed by Defendant's breaches.

**WHEREFORE,** Plaintiff demands judgment:

1) For an order compelling Defendant to make all repairs identified in the Report and Roof Report by date certain;

2) Awarding the following damages in amount to be determined at trial:

    a. Actual damages;

    b. Punitive damages;

    c. Interest;

    d. Costs of suit;

    e. Attorneys' fees; and

3) For such other and further relief the Court deems just and proper.

### **THIRD CAUSE OF ACTION**
(Unjust Enrichment)

88. Plaintiff repeats and re-alleges every allegations set forth in the previous sections, as if set forth at length herein.

89. Defendant is required to make repairs to the Property pursuant to the Lease.

90. Defendant unjustly benefits from continued use of the Property without making the necessary repairs to the Property.

14

**WHEREFORE,** Plaintiff demands judgment:

1) For an order compelling Defendant to make all repairs identified in the Report and Roof Report by date certain;

2) Awarding the following damages in amount to be determined at trial:

   a. Actual damages;

   b. Punitive damages;

   c. Interest;

   d. Costs of suit;

   e. Attorneys' fees; and

4) For such other and further relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION
(Negligence)

91. Plaintiff repeats and re-alleges every allegations set forth in the previous sections, as if set forth at length herein.

92. Defendant has a duty to maintain the Property in a safe and habitable condition, consistent with a first-class shopping destination.

93. Defendant breached that duty by refusing to make necessary repairs to the Property, including replacing the constantly leaking roof and repaving the parking lot and access road.

94. The parking lot and access road in their present condition present a danger to the public at large, including damaging patron vehicles as they access the Property.

95. The roof in its present condition permits water to intrude into the Property potentially compromising the structural integrity of the Property.

96. Defendant's breaches have and continue to proximately cause damage to Plaintiff.

069429.000625.63000092

**WHEREFORE,** Plaintiff demands judgment:

1) For an order compelling Defendant to make all repairs identified in the Report and Roof Report by date certain;

2) Awarding the following damages in amount to be determined at trial:

   a. Actual damages;

   b. Punitive damages;

   c. Interest;

   d. Costs of suit;

   e. Attorneys' fees; and

3) For such other and further relief the Court deems just and proper.

### FIFTH CAUSE OF ACTION
(Injunctive Relief)

97. Plaintiff repeats and re-alleges every allegations set forth in the previous sections, as if set forth at length herein.

98. Defendant is obligated to make all necessary repairs for the Property pursuant to the Lease.

99. Defendant refuses to make required repairs to the Property, including replacing the constantly leaking roof and repaving the entire parking lot and access road.

100. Defendant should be required to comply with its Lease obligations and make the needed repairs to the Property.

**WHEREFORE,** Plaintiff demands judgment:

1) For an order compelling Defendant to make all repairs identified in the Report and Roof Report by date certain; and

069429.000625.63000092

2) For such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

Dated: Woodland Park, New Jersey
August 29, 2019

ANSELL GRIMM & AARON, P.C.

By: *s/Anthony J. D'Artiglio*
Joshua S. Bauchner, Esq.
Anthony J. D'Artiglio, Esq.
365 Rifle Camp Road
Woodland Park, New Jersey 07424
(973) 247-9000 Phone

*Attorneys for Plaintiff*