# EXHIBIT A

# MASTER SERVICES AGREEMENT

**THIS MASTER SERVICES AGREEMENT** ("**Agreement**") is made as of this 3rd day of July 2007 ("**Effective Date**") by and between ARS Ecommerce, a Tennessee corporation ("**Contractor**"), and Sears Holdings Management Corporation, a Delaware corporation ("**Company**"), on behalf of itself and for the benefit of its Affiliates. For purposes of this Agreement "**Affiliate(s)**" means any individual, entity (e.g., corporation, L.L.C., etc.) that, at the applicable time, directly or indirectly controls, is controlled with or by or is under common control with, a party. Notwithstanding the foregoing, only entities directly or indirectly controlled by Sears Holdings Corporation shall be deemed Affiliates of Company for purposes of this Agreement.

In consideration of the mutual terms and conditions contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **SERVICES AND STATEMENTS OF WORKS.**

    1.1. <u>General Description and Definitions</u>. This Agreement contains the terms upon which Company may procure Services from Contractor. Company makes no representations as to the amount of business Contractor can expect under this Agreement. Certain terms are defined below; while others are defined in <u>Appendix #1</u> (Glossary).

    1.2. <u>Statements of Work</u>. Contractor will provide professional services to Company and its Affiliates as the parties may agree upon from time to time (collectively, the "**Services**"). The parties intend that they will enter into a written SOW which must be signed by both parties to be effective (each a "**SOW**"), before Contractor provides any Services to Company or its Affiliates. All Services will be subject to the terms of this Agreement (regardless of whether a SOW is actually signed); <u>provided</u> that, in case of conflict, the terms of a SOW will control over this Agreement. Neither Company nor its Affiliates will be under any obligation to compensate Contractor for Services not described in a SOW.

    1.3. <u>Change Order Procedure</u>. Company may request changes to a SOW, at any time. Within four days after Company's request, Contractor will submit to Company a proposed amendment (each an "**Amendment**") to such SOW describing the impact of the change, if any, on the compensation, schedule and other terms of the applicable SOW and this Agreement. An Amendment must be signed by both parties in order to be effective. Contractor represents to Company that it has factored into Contractor's fees adequate contingencies for de minimis Amendments. An Amendment will prevail over any inconsistent terms of the SOW or this Agreement. Absent the execution of such an Amendment, the parties must proceed to fulfill their obligations under the SOW and this Agreement without change.

    1.4. <u>Ordering Affiliates</u>. Affiliates of Company may purchase Services from Contractor under the terms and conditions of this Agreement; <u>provided</u> that Contractor

and Affiliate enter into a SOW governing such purchase. Any Affiliate who executes such a SOW with Contractor will be deemed to be "**Company**" hereunder for purposes of such SOW; provided that Contractor will look solely to such Affiliate (and not to Company) for satisfaction of any liability arising under or relating to such SOW.

1.5.    Company Responsibilities. References to Company's responsibilities in a SOW (other than Company's promise to pay for the Services procured there under), are intended solely for purposes of indicating what is not Contractor's responsibility, and will not in any circumstance constitute grounds for a claim of breach of such SOW by Company. Company's failure to perform any responsibility assigned to Company may, however, to the extent such non-performance impedes Contractor's ability to perform, limit Contractor's responsibilities under the SOW and may affect the timelines for any Work Products; provided, in each such case, Contractor promptly notifies Company in writing of such non-performance. Any changes to a SOW necessitated by Company's non-performance will be subject to Section 1.3 (Change Order Procedure). If Contractor does not promptly notify Company in writing of any such non-performance, Contractor will be deemed to have waived such non-performance.

2.    **WORK PRODUCTS.**

2.1.    Company IP Rights. Contractor acknowledges and agrees that Company and its Affiliates has the exclusive right, title, and interest in and to all its trademarks, trade names, service marks, logos, program and event names, identifications, and other proprietary rights and privileges ("**Company Intellectual Property**"). This Agreement and its various provisions are not a license or assignment of any right, title, or interest in the Company Intellectual Property by Company to Contractor. Contractor must not, in any manner, represent that it has any ownership or other interest in the Company Intellectual Property. Contractor must not do or cause to be done anything that impairs Company's exclusive license in the Company Intellectual Property. Contractor must not use, print, or duplicate the Company Intellectual Property unless Contractor has obtained prior written approval from Company. Any permitted use by Contractor of the Company Intellectual Property is limited to the Term of this Agreement. Upon the expiration or termination of this Agreement, or upon request of company, Contractor must immediately cease all use of the Company Intellectual Property and shall promptly return all materials and Work Products to Company. Contractor must not assign or attempt to assign any rights with regard to the Company Intellectual Property that arise under this Agreement and any such attempted assignment is void.

2.2.    Work Product. Any materials, ideas, concepts or know-how (including all work notes) developed, provided or produced by Contractor, its employees or any subcontractors, in connection with the provision of Services ("**Work Product**") shall be the exclusive property of Company. Contractor assigns, conveys and transfers all right, title and interest in and to the Work Product to Company. Contractor must not use the Work Product for the benefit of any party other than Company. Contractor warrants that all creators and/or contributors to the Work Product, including but not limited to, all

persons engaged by Contractor to make any contributions to the Work Product, were, at the time of the Work Product creation, bona-fide employees of Contractor who made their contributions to the Work Product within the scope of their employment as work for hire or that Contractor has obtained and possesses a written assignment of the copyright, title, and interest from all the creators or contributors not otherwise considered bona-fide employees. Contractor must maintain an agreement with each of its employees consistent with these obligations and is responsible for enforcing such agreements. Contractor must provide a copy of such agreement at the request of Company. Upon the expiration or termination of this Agreement, or upon request of Company, Contractor shall promptly return all materials to Company.

2.3.    Company Data. Contractor understands and acknowledges that Company and its Affiliates will have the right to, among other things: (a) manage, modify, maintain and update pre-existing data and information; and (b) generate, manage, modify, maintain and update additional data and information (collectively, "**Company Data**") using the Services. Company Data will be treated as Company's Confidential Information and Company will retain all right, title and interest in and to all Company Data.

2.4.    No Liens. No mechanics' or other lien, or notice creating such lien, or claim or action thereon will be filed or claimed by Contractor, or any person or entity acting through Contractor, for Services or Work Products under this Agreement.

3.    **COMPENSATION.**

3.1.    Fees and Expenses. The compensation for all Services will be set forth in the applicable SOW and will remain in effect for the term thereof and will not be changed except by mutual agreement of the parties. Contractor will only charge Company for time spent in the performance of the Services (e.g., travel time is not billable). All costs incurred by Contractor in performance of this Agreement will be borne by Contractor and Contractor will not be entitled to any compensation or reimbursement in connection with the Services unless such amounts are explicitly set forth in the applicable SOW. Reimbursable expenses, if any, must be reasonable and will be: (a) subject to Company's expense reimbursement policy, as delivered to Contractor from time to time; and (b) billed at Contractor's actual out of pocket cost.

3.2.    Method of Payment and Timing. Company will initiate payment on Contractor's properly submitted invoices 60 days after receipt of invoice. Company has no obligation to pay any fees or expenses invoiced more than six months after they accrue. Company is not required to pay any disputed charge until after the resolution of the dispute. All fees and expenses are payable in U.S. Dollars.

3.3.    Setoff. Company will have the right to set off any amounts due Company or its Affiliates against any amounts owed to Contractor.

3.4. <u>Invoice</u>. Contractor will provide to Company, in a form reasonably acceptable to Company, monthly invoices with reasonably detailed documentation of expenses. Invoices will be delivered to the location specified by Company.

3.5. <u>Taxes</u>. Contractor will timely calculate, assess, and remit all sales taxes, and Company will pay all sales and use taxes resulting from this Agreement. Taxes for each jurisdiction will be separately stated on the invoice by tax category (e.g., taxable and non-taxable Services will be separately stated).

3.6. <u>Most Favored Company</u>. Contractor agrees to treat Company as its most favored customer. Contractor represents that all of the prices, warranties, benefits and other terms being provided are equivalent to or better than the terms being offered by Contractor to its current customers. If, during the term of this Agreement, Contractor enters into an agreement with any other customer providing such customer with more favorable terms, then this Agreement shall be deemed appropriately amended to provide such terms to Company. Contractor shall promptly provide Company with any refund or credits hereby created.

4. **TERM AND TERMINATION.**

   4.1. <u>Term</u>.

   This Agreement will become effective on the Effective Date and will continue for a period of [_____] year(s) ("**Term**"), unless earlier terminated as provided for herein. UPON WRITTEN NOTICE, COMPANY MAY UNILATERALLY ELECT TO EXTEND THE TERM ON A MONTH TO MONTH BASIS FOR A PERIOD NOT TO EXCEED 12 MONTHS FROM THE EXPIRATION DATE PROVIDED SUCH EXTENDED TERM SHALL BE TERMINABLE UPON 30 DAYS PRIOR WRITTEN NOTICE. Upon expiration or termination of this Agreement pursuant to Section 4.2.1 (Termination for Convenience), the terms of this Agreement will survive for purposes of any SOW that are still in effect as of such date.

   4.2. <u>Termination</u>.

   4.2.1. <u>Termination For Convenience</u>. Company shall have the right to terminate this Agreement or any Statement of Work, in whole or in part, without cause or penalty by providing 30 days written notice to Contractor. Termination of this Agreement for convenience shall result in the immediate termination for convenience of all SOW's herein.

   4.2.2. <u>Termination With Cause</u>. Any SOW or this Agreement may be terminated by either party in the event of: (i) a material breach of such SOW or this Agreement, as applicable, by the other party; (ii) the voluntary or involuntary insolvency of, or the institution of proceedings by or against, the other party under

any federal or state bankruptcy or insolvency law; (iii) an assignment by the other party for the benefit of all or substantially all of its creditors; (iv) a cessation of the operations of the other party; (v) refusal by the other party to furnish appropriate guaranties or assurances as may be requested by Company; or (vi) a failure by the other party to maintain or produce evidence of insurance required under this Agreement. Such termination shall be effective 30 days after written notice is provided by the non-breaching party that identifies the basis of the default or breach. The right of the non-breaching party to terminate is subject to the right of the breaching party to cure any default and provide evidence thereof to the non-breaching party before the effective date of termination. Termination of this Agreement for cause shall result in the immediate termination for cause of all SOW's herein.

4.3.    Obligations Upon Termination.

4.3.1. Upon termination of any SOW or this Agreement for convenience, Company will only be liable for any fees earned for Services actually performed, prior to the date of such termination. Further, unless otherwise expressly set forth in a SOW: (i) there shall be no termination charges under this Agreement; and (ii) if termination charges are set forth in an SOW, such termination charges shall not apply during any extension or renewal of the original term.

4.3.2. Within three days of any termination or expiration of a SOW, Contractor must: (i) remove all of its property from Company's premises, and (ii) deliver to Company all of Company's property, including all the then-current version of any Work Products or Intellectual Property, whether complete or in process, related to the terminated/expired activities.

5.    **REPRESENTATIONS, WARRANTIES AND COVENANTS.**

5.1.    **General**. Contractor represents, warrants to Company (as of the Effective Date of this Agreement and each SOW), and covenants to Company during the Term of this Agreement (including any SOW's) that:

5.1.1. Authority. (a) Contractor has full authority to enter into this Agreement, to carry out its obligations under this Agreement and to grant the rights and licenses granted to Company in this Agreement; (b) there are no outstanding obligations of Contractor (whether written, oral or implied) that are inconsistent with this Agreement; and (c) Contractor's performance of the Services and compliance with this Agreement will not violate any applicable federal, state or local laws, rules, regulations, ordinances or orders or any other agreements binding upon Contractor.

5.1.2. Quality. Contractor will: (a) perform all Services in a competent and workmanlike manner in accordance with industry standards; and (b) utilize

sufficient personnel possessing the skills, experience and abilities to perform the Services all in accordance with such additional requirements as may be reasonably imposed by Company from time to time.

5.1.3. Conflict of Interest. Contractor represents and warrants that: (i) its performance under this Agreement will at all times conform to the highest professional and ethical standards; (ii) due care and commercially reasonable efforts will be utilized by Contractor in the performance of this Agreement; and (iii) it is under no obligation or restriction that would conflict with Contractor's provision of Services. Contractor must immediately disclose to Company any actual or potential conflict of interest that may arise during the Contractor's performance of this Agreement.

5.1.4. Infringement. Company, its Affiliates and its/their Personnel's use of the Services and the Work Products provided hereunder will not infringe or misappropriate any intellectual proprietary rights of any third party. Further, that there is no action, suit, claim, investigation or proceeding pending, or to Contractor's knowledge threatened, against, by or affecting Contractor, the Services or the Work Products which, if adversely decided, might adversely affect: (a) Contractor's ability to enter into this Agreement; (b) Contractor's performance of its obligations herein; or (c) Company, its Affiliates and its/their Personnel's use of the Services and the Work Products; nor to Contractor's knowledge is there any basis for such an action.

5.1.5. Unauthorized Code. The Services and the Work Products will be free, at the time of receipt by Company, of any Unauthorized Code.

5.1.6. Third Party Licenses. That no additional third party licenses or license fees (other than those specifically stated in the applicable SOW), are required in order for Company, its Affiliates and its Personnel to use the Services and the Work Products.

5.2. Pass-Through. Contractor hereby assigns to Company all assignable representations, warranties, covenants and indemnities granted to Contractor by third parties in the Services, the Work Products and/or any components thereof, and all remedies for breach of such representations, warranties, covenants and indemnities. To the extent that Contractor is not permitted to assign any of such protections to Company, Contractor will enforce such protections on behalf of Company to the extent Contractor is permitted to do so under the terms of the applicable third party agreements.

6. **PERSONNEL.**

6.1. Independent Contractor. Contractor is an independent contractor in the performance of this Agreement, and nothing contained in this Agreement shall be construed to create or constitute a joint venture, partnership, agency, franchise, lease, or

any other arrangement other than as expressly granted in this Agreement. Contractor is responsible for its own operation. Contractor must exercise control over its employees, agents, representatives, subcontractors, and suppliers and is solely responsible for the verification of identity and employment eligibility, for the payment of any wages, salaries, benefits or other remuneration of its employees, agents, representatives, subcontractors, and suppliers, and for the payment of any payroll taxes, contributions for unemployment or workers compensation, social security, pensions, or annuities that are imposed as a result of the employment of Contractor's employees, agents, representatives, subcontractors, and suppliers. Contractor's Personnel are not employees of Company or its Affiliates and are not eligible to participate in any employment benefit plans or other conditions of employment available to Company or its Affiliates' employees. Contractor must not pledge, credit, incur any obligation or liability, hire any employee, nor purchase any merchandise or services in the name of Company. Unless otherwise provided in this Agreement, all costs, charges, and expenses incurred in connection with Contractor's performance of this Agreement must be borne by Contractor.

6.2. Subcontractors. Contractor will not use subcontractors without Company's prior written approval. Company reserves the right to require Contractor to immediately remove any Personnel objectionable to Company. Contractor will remain solely responsible to Company for the acts, errors and omissions of such Personnel or subcontractors. Such subcontractors shall maintain the same insurance as is required to be carried by Contractor. There shall be no additional costs incurred by Company for the use of subcontractors and Contractor shall be solely responsible for payments due to any subcontractors. Contractor shall remain fully responsible for the performance of its subcontractor's obligations under this Agreement to the same extent as if Contractor had performed the Services.

7. **CONFIDENTIALITY.**

7.1. Definition. Contractor agrees that all non-public information (including the terms of this Agreement) received by Contractor, its Affiliates and its/their Personnel relating to Company, its Affiliates, its/their customers, other Contractors and Personnel in connection with this Agreement, including all: business plans, strategies, forecasts, analyses financial information; employee information, information technology information, and other proprietary information (collectively, **"Confidential Information"**), regardless of the manner or medium in which it is furnished to or otherwise obtained by Contractor, its Affiliates and its/their Personnel will be held in confidence by Contractor. This Section(Confidentiality) also applies to any information exchanged between the parties regarding proposed business, regardless of whether the parties enter into a SOW or other contract regarding such proposed business.

7.2. Use of Confidential Information.

7.2.1. Restrictions. Contractor, its Affiliates and its/their Personnel will use all reasonable efforts to avoid disclosure, publication or dissemination of any

Confidential Information. Further, Contractor: (a) may use the Confidential Information only as necessary to perform the Services and its other obligations under this Agreement, (b) may not disclose the Confidential Information except to its Personnel who have a need to know such Confidential Information in connection with this Agreement, and (c) must restrict disclosure of Confidential Information to its Personnel who have executed a written agreement by which they agree to be bound by terms substantially similar to this Section. Contractor is liable for any unauthorized disclosure or use of Confidential Information by its Affiliates and its Personnel.

7.2.2. Exceptions. The obligations under this Section do not apply to any Confidential Information that Contractor can demonstrate: (i) Contractor possessed, without an obligation of confidentiality, prior to disclosure in connection with this Agreement; (ii) is or becomes public through no fault of Contractor, its Affiliates and its/their Personnel; (iii) is independently developed by Contractor without use of any Confidential Information; or (iv) is received by Contractor from a third party (other than Contractor's Personnel) that does not have an obligation of confidentiality to the Company or its Affiliates.

7.2.3. Disclosure. If, in the reasonable opinion of its legal counsel, Contractor is required by applicable laws or court orders to disclose any Confidential Information in connection with any legal proceeding, then Contractor may disclose such information to the arbitrator, court or other governmental authority, as the case may be; provided, in each case, Contractor notifies Company a reasonable time prior to such disclosure (in order to permit Company to seek appropriate protective measures); and Contractor requests and supports Company's efforts to seek appropriate protective measures.

7.2.4. Contractor Notification. Contractor must immediately notify Company upon the discovery of the loss, unauthorized disclosure or unauthorized use of any Confidential Information and cooperate with Company, at no additional charge, in the investigation of any such unauthorized disclosure.

7.2.5. Return or Destruction of Confidential Information. Within ten days following the earlier of: (a) termination or expiration of this Agreement, or (b) completion of a project for which the Confidential Personal Information has been provided, Contractor must, at Company's discretion, either return to Company all Confidential Information (including all copies/derivatives thereof); or certify in writing to Company that such Confidential Information (including all copies/derivatives thereof) have been destroyed in such a manner that it cannot be retrieved.

7.3. Special Rules for Confidential Personal Information.

7.3.1. <u>Definition</u>. The following information (which is a subset of Confidential Information) must be held in the strictest confidence by Contractor: all information regarding Company and its Affiliates' individual Companys and employees, including but not limited to names, addresses, telephone numbers, account numbers, social security numbers, Company lists, and demographic, financial and transaction information ("**Confidential Personal Information**").

7.3.2. <u>Additional Restrictions</u>. In addition to the restrictions set forth above, Contractor may not: (x) disclose Confidential Personal Information to any third parties (including Affiliates) without Company's prior written permission, nor (y) duplicate or incorporate the Confidential Personal Information into its own records or databases. In addition, Contractor must establish and maintain written policies and procedures and conduct its operations to ensure: (i) the security, confidentiality and proper disposal of the Confidential Personal Information; (ii) protect against any anticipated threats or hazards to the security or integrity of such information; and (iii) protect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to any Company. Copies of such policies and procedures will be provided by Contractor to Company upon Company's request.

7.3.3. <u>CPI Exceptions</u>. The exceptions to Contractors obligations set forth in Section 7.2(b) (Exceptions) shall not apply to Confidential Personal Information. However, the restrictions on Confidential Personal Information do not apply to information independently developed by Contractor without the use of Confidential Personal Information; <u>provided</u> that Contractor is not using such information on Company or its Affiliates' behalf.

7.3.4. <u>Company Audit Rights</u>. Contractor must permit Company to audit Contractor's compliance with the provisions of this Section 7.3 at any time during Contractor's regular business hours.

7.3.5. <u>Contractor Breach</u>. A breach of this Section 7.3 is grounds for immediate termination of this Agreement. In addition, Company is entitled to the recovery of any pecuniary gain realized by Contractor from the unauthorized use or disclosure of Confidential Personal Information.

8. **INDEMNIFICATION.**

8.1. <u>Indemnification</u>. To the fullest extent permitted by law, Contractor must defend, indemnify and hold harmless Company, its Affiliates and their respective present, former, and future shareholders, Personnel, successors and assigns (collectively, "**Indemnified Parties**") against all damages, losses, costs, expenses (including attorneys' fees, costs and expenses) and other liabilities arising out of any claims, demands, suits, or causes of action by third parties (collectively, "**Claims**"), arising out of or in connection with this Agreement (including claims of negligence by the Personnel of either party) which result

or are claimed to result in whole or in part from: (i) any act or omission of Contractor, its Affiliates or their Personnel; (ii) any breach of this Agreement by Contractor, its Affiliates or their Personnel; (iii) the violation of any intellectual property rights of third parties caused by Contractor, its Affiliates or their Personnel or resulting from Company, its Affiliates' or their Personnel's use of the Services or deliverables; (iv) the performance of Services under the Agreement; or (v) the violation by Contractor, its Affiliates or their Personnel of any law or regulation. Contractor will not be relieved of its foregoing obligations by any allegation of negligence or willful misconduct by Company, its Affiliates and their Personnel; however, Contractor will not be liable for Claims of third parties to the extent such Claim was solely and proximately caused by the negligence or willful misconduct of Company or its Affiliates as determined in a final, non-appealable order of a court of competent jurisdiction.

Contractor has the right to control the defense of any Claim; provided however, that Company may, at its election and at any time, take control of the defense and investigation of any Claim at the cost and expense of Contractor. Upon Contractor's request, Company will reasonably cooperate in such defense and Contractor must reimburse Company for its reasonable out-of-pocket expenses in providing such cooperation. Company will provide prompt notification of any Claim; provided however, that any delay by Company in giving such notice will not relieve Contractor of its obligations pursuant to this Section 8.1, except to the extent that Contractor demonstrates actual damage caused by such delay.

The obligations of Contractor to defend, indemnify and hold harmless, the Indemnified Parties under this Section 8.1 are independent of each other and any other obligation of the parties under this Agreement.

9. **INSURANCE.**

   9.1. Required Insurance. Contractor will, at its own expense, obtain and maintain the following insurance:

   9.1.1. Commercial General Liability, with coverage including, but not limited to, premises/operations, contractual, personal and advertising injury, and products/completed operations liabilities, with limits of at least $5,000,000 per occurrence for bodily injury and property damage combined. Company shall be named as an additional insured, with the standard "separation of Insureds" provision or an endorsement for cross-liability coverage. The policy shall be endorsed to state that coverage is primary, and non-contributory with other available coverage. Except where prohibited by law, the insurance carrier shall waive all rights of subrogation that the insurer may have against Company and the Indemnified Parties. Contractor warrants that its subcontractors will maintain Commercial General Liability insurance, and Contractor shall indemnify Company for any loss, cost, liability, expense and/or damage suffered by Company as a result of failure of its subcontractors to maintain such insurance.

Contractor further warrants that, if a subcontractor does not maintain Commercial General Liability insurance, Contractor's Commercial General Liability insurance shall insure the subcontractor. Limits of liability requirements may be satisfied by a combination of Commercial General Liability and Umbrella Excess Liability policies.

9.1.2. If any persons are employed or uninsured independent contractors are hired by Contractor at any time during the term of this Agreement, Workers' Compensation insurance, including coverage for all costs, benefits, and liabilities under Workers' Compensation and similar laws which may accrue in favor of any person employed by Contractor, for all states in which the Contractor will perform services for Company, and Employer's Liability insurance with limits of liability of at least $100,000 per accident or disease and $500,000 aggregate by disease. Except where prohibited by law, the insurance carrier shall waive all rights of subrogation that the insurer may have against Company and the Indemnified Parties. Such insurance shall contain an Alternate Employer Endorsement naming Company as the alternate employer. Contractor warrants that its subcontractors will maintain Workers' Compensation and Employer's Liability insurance, and Contractor shall indemnify Company for any loss, cost, liability, expense and/or damage suffered by Company as a result of failure of its subcontractors to maintain such insurance. Contractor further warrants that, if a subcontractor does not maintain Workers' Compensation insurance, Contractor's Workers' Compensation insurance shall insure the subcontractor. Contractors may self-insure Workers' Compensation only in states where the governing state bureau has issued to the Contractor a qualified self-insurance license for Workers' Compensation.

9.1.3. Automobile Liability insurance for owned, non-owned and hired vehicles, with limits of at least $1,000,000 per occurrence for bodily injury and property damage combined. If no vehicles are owned or leased, the Commercial General Liability insurance shall be extended to provide insurance for non-owned and hired automobiles in lieu of separate Automobile Liability insurance. Limits of liability requirements may be satisfied by a combination of Automobile Liability and Umbrella Excess Liability policies.

9.1.4. Professional Liability or Errors & Omissions Insurance with limits of not less than $3,000,000 per claim.

9.1.5. Employee dishonest insure or Employee Dishonesty covering employee dishonesty in the amount of $50,000 per loss.

9.2.    Policies. Insurance shall be purchased from companies having a rating of A- VII or better in the current Best's Insurance Reports published by A.M. Best Company. Insurance policies shall not be cancelled or materially changed without at least 30 days prior written notice to Company. Evidence of insurance, naming Company and its

Affiliates as additional insureds, shall be submitted in advance of or concurrent with the execution of this Agreement, on each insurance policy renewal thereafter, and annually for two years after this Agreement ends.

9.3. Coverage. If Contractor does not provide Company with such evidence of insurance or such policies do not afford adequate protection for Company, Company will so advise Contractor, but Company failure to do so is not a waiver of these insurance requirements. If Contractor does not furnish evidence of acceptable coverage within 15 days, Company shall have the right, in its sole discretion, to (a) withhold payments from the Contractor until evidence of adequate coverage is provided, or (b) immediately terminate this Agreement.

9.4. Failure to obtain and maintain required insurance or failure by Company to notify Contractor shall not relieve Contractor of any obligation contained in this Agreement. Additionally, any approval by Company of any of Contractor's insurance policies shall not relieve Contractor of any obligation contained in this Agreement, including liability for claims in excess of described limits.

10. **LIMITATION OF LIABILITY.**

10.1. **Limitation of Damages**. EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, NEITHER PARTY (NOR SUCH PARTY'S AFFILIATES NOR THEIR SHAREHOLDERS OR PERSONNEL) WILL BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, EXEMPLARY, OR PUNITIVE DAMAGES (INCLUDING LOST PROFITS) ARISING IN CONNECTION WITH THIS AGREEMENT OR THE PERFORMANCE, OMISSION OF PERFORMANCE, OR TERMINATION HEREOF WITHOUT REGARD TO THE NATURE OF THE CLAIM (E.G., BREACH OF CONTRACT, NEGLIGENCE OR OTHERWISE), EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

10.2. Exclusions From Limitations of Liability. Notwithstanding anything contained herein to the contrary, the limitations of liability contained in this **Section 10** (Limitation of Liability) will not apply to: (a) Contractor's obligations under **Section 2** (Work Product), **Section 7** (Confidentiality) and **Section 8** (Indemnification); nor (b) personal injury, including death, and damage to tangible property caused by the negligent or intentional acts of a party, its Affiliates or its/their Personnel.

10.3. Disclaimer. EXCEPT AS OTHERWISE PROVIDED FOR IN THIS AGREEMENT EACH PARTY DISCLAIMS ALL OTHER EXPRESS OR IMPLIED REPRESENTATIONS, WARRANTIES AND COVENANTS. FURTHER, COMPANY AND CONTRACTOR EACH AGREE THAT RELIANCE ON ANY REPRESENTATION, WARRANTY OR COVENANT NOT CONTAINED IN THIS AGREEMENT (OR ANY SOWS HERETO) WOULD NOT BE REASONABLE.

11.     **GENERAL.**

11.1.   Agreement Binding; Assignment.  The rights and obligations under this Agreement may not be assigned by either party without the prior written consent of the other party. This Agreement will be binding upon and inure to the benefit of the parties and their respective heirs, permitted successors and assigns. Any attempted assignment or transfer in violation of this section will be null and void, and will entitle Company to terminate this Agreement, at its option.

Any Change in Control of Contractor shall constitute an assignment of this Agreement, for which Company's prior written consent is required. For purposes of this Agreement, a "**Change in Control**" means a sale of all or substantially all of the assets of Seller, whether in a single transaction or a series of transactions,a, merger, consolidation, or any other transaction or arrangement the effect of which is that 50% or more of the total voting power entitled to vote in the election of Contractor's board of directors is held by a person or persons other than the shareholders of Contractor, who, individually or as a group, held 50% or more of such voting power immediately prior to such event.

11.2.   Governing Law. This Agreement, and all other aspects of the business relationship between the parties, is construed, interpreted, and enforced under and in accordance with the laws of Illinois without regard to conflict of law provisions.

Contractor agrees, with respect to any litigation arising directly or indirectly out of, or that in any way relates to, this agreement, the business relationship or any other transaction, matter, or issue between the parties, to commence it exclusively in the State of Illinois Courts of Cook County, Illinois or the United States District Court, and Contractor by this Agreement consents to the jurisdiction of these courts.

11.3.   Notices.   All notices given by one party to the other under this Agreement must be:  (a) hand delivery; (b) certified mail, return receipt requested; (c) nationally recognized overnight courier service; or (d) facsimile, to:

|  |  |
|---|---|
| If to Company: | Sears Holdings Management Corporation<br>3333 Beverly Road, Mail Station: B6-157B<br>Hoffman Estates, Illinois 60179<br>Attn.: EVP and CIO<br>Facsimile: (847) 286-7574 |
| with a copy to: | Sears Holdings Management Corporation<br>3333 Beverly Road, Mail Station: B6-210B<br>Hoffman Estates, Illinois 60179<br>Attn.: General Counsel<br>Facsimile: (847) 286-2471 |

        If to Contractor:      ARS Ecommerce
                                       1001 Reeds Lake Road
                                       Chatanooga, Tennessee 37415
                                       Facsimile: (423)875-5346

All notices will be effective: (i) upon actual receipt; (ii) three business days after being sent by certified mail; (iii) the next business day after being sent by a nationally recognized courier; or (iv) on the same business day on which it is sent by facsimile (or the next business day if transmission is completed after 5:00 p.m., recipient's time). Facsimile notice must be followed by notice under subsection (i), (ii) or (iii) above. A party may change its notice information set forth above by giving the other party written notice.

11.4. <u>Audits</u>. Contractor shall permit Company Personnel to inspect Contractor's premises and methods of operation in connection with Services at any time during normal business hours. Contractor shall keep and maintain books and records which accurately reflect its operations according to industry standards, generally accepted accounting practices, and all applicable terms of the Agreement. Company may review and make copies of such books and records at any reasonable time. Contractor shall retain such books and records for at least five years plus the current year from the date of creation or until any on-going audits have been settled, if longer. At Company's sole option, audits may be conducted (i) by Company or its third party designee, or (ii) at Contractor's offices or at a different location specified by Company, in which latter case Contractor must deliver, at its sole cost and expense, copies of all applicable books and records to that location. Company and Contractor will each bear their own costs associated with the audits.

11.5. <u>Access to Electronic Systems</u>. If Contractor has access, whether on-site or through remote facilities, to any of Company or its Affiliates' hardware, software, electronic data storage systems or other electronic systems (each an "**Electronic System**"), in connection with this Agreement, Contractor will limit its access and use solely to: (a) the Contractor Personnel who have a need to access such systems to perform the Services, (b) those Electronic Systems that Company has authorized Contractor to access and (c) the performance of its obligations under this Agreement. Contractor will immediately cease using such Electronic Systems upon termination or expiration of the applicable SOW. Upon Company's request, Contractor will notify Company in writing of the names of its Personnel who have accessed such systems. Contractor is responsible for any unauthorized access or unauthorized use by its Personnel. All user identification numbers and passwords disclosed to Contractor and any information obtained from use of Company Electronic Systems will be Company's Confidential Information and Contractor will cooperate with Company in investigating any apparent unauthorized access by Contractor or its Personnel of Company's computer or Electronic Systems.

11.6.  Security Policies. Contractor will (and will require its Personnel) to follow Company's facility safety and security rules.

11.7.  Severability. If any provision of this Agreement is held to be invalid, illegal or unenforceable by a court of competent jurisdiction, then such provision shall be deemed modified to the extent necessary to make such provision enforceable by such court, and the invalidity in whole or in part of any portion of this Agreement shall not impair or affect the validity or enforceability of the remaining provisions of this Agreement.

11.8.  Publicity. Contractor will not reveal the existence of this Agreement or disclose that Company is client of Contractor's in any advertising, promotional activities, sales presentations or publicity releases without the Company's prior written consent.

11.9.  No Waiver. No waiver by either party shall be effective unless in writing. Any waiver by either party of any default, delinquency or other breach by the other party shall not be deemed to be a waiver of any other or subsequent default, delinquency or breach. "Approval" or "acceptance" by Company of any Services or Work Products shall neither be construed as an endorsement by Company as to the technical means Contractor has selected to achieve the required results, nor as a waiver of any of Company's rights or Contractor's obligations under this Agreement. Contractor acknowledges that Company is relying upon Contractor's technical expertise in providing such Services and Deliverables.

11.10.  Cumulative Remedies. In the event Contractor breaches any of the representations, warranties or covenants in this Agreement, Company may exercise all rights and remedies available under this Agreement (including any SOW's hereto), at law or in equity. All rights and remedies are cumulative, and the exercise of any right or remedy shall be without prejudice to the right to exercise any other right or remedy provided herein, at law or in equity.

11.11.  Entire Agreement. This Agreement, together with all exhibits, schedules and statements of work or other attachments to this Agreement ("Attachments") constitutes the complete and final agreement of the parties and supersedes all prior agreements, understandings, negotiations and discussions. No modification or rescission of this Agreement shall be binding unless executed in writing by the parties. In the event of any conflict between the terms and conditions of this Agreement and any Attachment, the terms and conditions of the Attachment shall prevail. Notwithstanding the foregoing, if the parties have executed an agreement of confidentiality or nondisclosure prior to or contemporaneously with this Agreement, the provisions of non-disclosure agreement shall remain in force, except to the extent that the terms and conditions of this Agreement shall impose stricter requirements or standards, in which case the stricter terms and conditions of this Agreement shall control the Contractor's duties and obligations. This Agreement also supersedes, and Company, its Affiliates and its/their Personnel will not be bound by, any "shrink wrap license" which is bundled with the Services or the Work Products or any "disclaimers" or "click to approve" terms or conditions contained in the

Work Products or any web site which Company, its Affiliates or its/their Personnel use in connection with Contractor's Services or Work Products now or in the future.

11.12. Interpretation. The term this "Agreement" includes any SOWs or Appendixes to this Agreement. In this Agreement: (a) section headings are for reference only and do not affect the interpretation of this Agreement, (b) defined terms include the plural as well as the singular, and (c) "include" and its derivatives ("including," "e.g." and others) mean "including but not limited to."

11.13. Third Party Beneficiaries. Other than Company's Affiliates, there are no third party beneficiaries to this Agreement.

11.14. Survival. Any terms of this Agreement that would, by their nature, survive the termination of this Agreement will so survive including Section 2(Work Product), Section 3(Compensation),Section 4 (Term and Termination), Section 5 (Representations, Warranties and Covenants), Section 6(Personnel), Section 7 (Confidentiality), Section 8(Indemnification), Section 9 (Insurance), Section 10 (Limitation of Liability), and Section 11(General).

11.15. Signatures. This Agreement (including any SOW) may be executed in counterparts, which together constitute one and the same agreement. Each party may rely on a facsimile signature on this Agreement. If a party sends a signed copy of this Agreement (or any SOW hereto) via facsimile, such party will, upon request by the other party, provide an originally signed copy of this Agreement.

*Signature Page Follows*

**IN WITNESS WHEREOF,** the parties warrant and represent that they have the full power and authority to execute this Agreement on behalf of their respective parties and have caused this Agreement to be executed by persons authorized as of the Effective Date.

| Sears Holdings Management Corporation | ARS Ecommerce |
|---|---|
| By: *(signature)* | By: *(signature)* |
| Name: PAUL MILLER | Name: Jay Heavilon |
| Title: SVP DIRECT COMMERCE | Title: President |
| Dated 7-3-07 | Dated 7-3-07 |

# APPENDIX #1

## GLOSSARY

"**Personnel**" mean the directors, officers, employees, partners, agents, advisers, independent contractors and subcontractors of a party (and its Affiliates) or another entity, as applicable; provided that the Personnel of Contractor and its Affiliates will not be deemed to be Personnel of Customer or its Affiliates.

"**Unauthorized Code**" will mean any feature, routine or device that is intended or designed, either automatically, upon the occurrence of a certain event, upon the taking of or failure to take a certain action or under the control of a third person to disrupt the operation of, destroy, erase, damage or otherwise render inoperable the Services, a Work Product or any other Company Electronic System (e.g., malicious programs, viruses, worms, password checking, CPU serial number checking, time dependencies, etc.).

*End of Appendix*