David W. Dykhouse (dwdykhouse@pbwt.com)
Daniel A. Lowenthal (dalowenthal@pbwt.com)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Tel:  (212) 336-2000
Fax:  9212) 336-2222

**Hearing Date and Time:**
**September 18, 2019 at 10:00 a.m.**

**Objection Deadline:**
**September 16, 2019 at 12:00 p.m.**

Thomas J. Flynn (tflynn@larkinhoffman.com)
LARKIN HOFFMAN DALY & LINDGREN, LTD.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437-1060
Tel:  (952) 835-3800
Fax:  (952) 896-3333

*Attorneys for MOAC Mall Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 18-23538 (RDD) |
| SEARS HOLDINGS CORPORATION, *et al.*, | |
| | (Jointly Administered) |
| Debtors.[1] | |

## MOTION OF MOAC MALL HOLDINGS LLC
### (I) FOR A STAY PENDING APPEAL; AND
### (II) TO EXPEDITE TRANSMITTAL OF RECORD ON APPEAL
### TO DISTRICT COURT

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows:  Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

MOAC Mall Holding LLC ("MOAC") respectfully seeks a stay pending appeal of the Court's order, filed as ECF No. 5074 on September 5, 2019 (the "Assignment Order"),[2] granting assignment of a lease (the "Lease") between MOAC and the above-captioned debtors to Transform Leaseco LLC ("Leaseco" or the "Assignee"), an affiliate and subsidiary of Transform Holdco LLC ("Holdco," collectively with Leaseco "Transform" or the "Buyer"), and to expedite the transmittal of the record on appeal. In the alternative, should the Court deny MOAC's request for a stay pending appeal, MOAC respectfully requests that the Court grant a brief extension of its mootness stay to permit MOAC to seek a stay pending appeal from the District Court.

## PRELIMINARY STATEMENT

MOAC has diligently objected to the assumption and assignment of the Lease to Transform—insisting upon MOAC's rights to adequate assurance required by the Bankruptcy Code. Throughout its objections, MOAC has maintained the position that 11 U.S.C. § 365(b)(3) does not require a lease to explicitly reserve the adequate protection explicitly required by that provision for shopping center leases. MOAC now asks this Court to prevent the possibility that, despite MOAC's diligence, MOAC may be improperly denied its right to appeal.

While the other parties face little to no harm from a stay of the Assignment Order, MOAC will be significantly prejudiced if MOAC is denied its appellate rights. As described below, the debtors will not be impacted by a stay of the assignment. In addition, Transform made no argument for exigent need and instead insists that it needs up to two years to fill the premises subject to the Lease (the "Premises") with tenants—its intended use of the Lease if assigned. On the other hand, denial of the stay may cause MOAC to permanently lose its right of appeal as

---

[2] For reference and in addition to other related filings, MOAC's objections and pre-evidentiary hearing brief on this matter were filed as ECF Nos. 2199, 3501, 3926, 4450, and 4889, and Transform's reply briefs were filed as ECF Nos. 4454, 4867, and 4903.

moot—not to mention the potentially devastating, irreversible effect on Mall of America® and its community.

The interpretation of Section 365(b)(3) is subject to *de novo* review. MOAC respectfully believes that, on appeal, there is a significant likelihood that a reviewing court would conclude that, based on the Court's findings of fact, the debtors and Transform failed to provide the adequate assurance required for assignment of shopping center leases by Section 365(b)(3). Among other things, Section 365(b)(3) explicitly requires debtors to provide adequate assurances (1) of the assignee's financial condition and operating performance, (2) that the lease and other contracts related to the shopping center will not be breached, and (3) that the assignment will not disrupt tenant mix or balance. Section 365(b)(3) does not cabin these requirements with language that the provision only applies when provided for by the lease to be assigned. Case law and legislative history discusses Section 365(b)(3)'s purpose of protecting shopping center landlords and tenants. In orally rendering its decision, the Court recognized the lack of binding precedent regarding the impact of lease terms on Section 365(b)(3)'s requirements and the dearth of cases construing Section 365(b)(3)(A)'s financial condition and operating performance requirements. The Court also acknowledged the possibility that MOAC might succeed on appeal by providing findings of fact in the event the Court's "legal determination is incorrect." [Hearing Transcript at 129:16–17.]

Thus MOAC respectfully asks this Court to grant a stay of the Assignment Order so that MOAC may have an opportunity for meaningful appellate review of this legal issue.

MOAC desires a speedy review of this legal issue, so it can achieve a final determination of what happens with the Premises and get the Premises filled as quickly as possible. Accordingly, MOAC also requests an order expediting the transmittal of the record on appeal.

3.

## JURISDICTION OVER THE MOTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 158(a)(1) and 1334. The statutory predicates for the requested relief are 28 U.S.C. § 158 and Federal Rules of Bankruptcy Procedure 8007, 8010, and 9006.

## DISCUSSION

### I.    The Assignment Order should be stayed pending appeal.

1.    The decision whether to issue a stay of an order pending appeal lies within the discretion of the Court. *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (citing cases). Four factors are considered in exercising that discretion: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Hirschfeld v. Bd. of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) (quotation marks omitted); *accord Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

2.    "[T]he Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." *Adelphia Commc'ns Corp.*, 361 B.R. at 347 (citing *Mohammed*, 309 F.3d at 101 (citing *Ofosu v. McElroy*, 98 F.3d 694, 703 (2d Cir. 1996)) ("weighing the four factors relevant to the grant of a stay")). Thus, "[t]he lack of any one factor is not dispositive to the success of the motion, rather the inquiry represents a balancing of the four factors." *Rally Auto Grp., Inc. v. Gen. Motors LLC (In re Motors Liquidation Co.)*, No. M-47 (RPP), 2010 WL 4449425, at *3 (S.D.N.Y. Oct. 29, 2010).

**A.    MOAC, Mall of America, and its tenants will suffer irreparable harm absent a stay.**

3.    MOAC, Mall of America, and its tenants face irreparable harm due to potential mootness of appeal as well as actual detrimental impacts of Transform's implementation of the Assignment Order.

4.    Without a stay, an appeal by MOAC would be potentially rendered moot. *See In re Rickel Home Centers, Inc.*, 209 F.3d 291 (3d Cir. 2000) (holding that a landlord's appeal of an order granting assignment of a lease was rendered moot in the absence of a stay of the order for assignment). While MOAC reserves the right to challenge the mootness issue if a stay is not granted, a "loss of appellate rights is a 'quintessential form of prejudice.'" *Adelphia Commc'ns Corp.*, 361 B.R. at 348 (quoting *In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996)). Dismissal of its appeal on grounds of mootness would, itself, constitute irreparable harm. *See, e.g., Adelphia Commc'ns Corp.*, 361 B.R. at 348 ("Thus, where the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied.") (emphasis in original); *In re Advanced Mining Sys., Inc.*, 173 B.R. 467, 469 (S.D.N.Y. 1994) (granting stay pending appeal and holding that "a denial of a stay would moot the appeal and deny the Affiliates any recovery. That is a quintessential form of prejudice to the Affiliates.").

5.    As the Second Circuit has explained, one of the key concerns warranting a stay pending appeal is whether, absent a stay, the appellant "can be restored to the *status quo ante* if the appeal should result in a reversal in his favor. The irreparability of the harm increases in proportion to its irreversibility." *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1153 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1987); *see also In re Agency for Deposit Ins., Rehab., Bankr. and Liquidation of Banks*, No. 03 Civ. 9320, 2004 WL 414831, at *3 (S.D.N.Y. Mar. 4,

5.

2004) (granting stay pending appeal because otherwise the party would be "severely, and quite possibly irretrievably, harmed, by a premature distribution . . . that will not readily be recompensable without substantial litigation, if at all").

6.      Here, assignment of the Lease to Transform would substantially alter the status quo by permitting Transform to sublet the Premises to one or more tenants. Transform has not been shy in confirming its plans to lease the Premises to one or more tenants to whom MOAC would not otherwise lease the Premises. [Transcript at 35:19–37:5.][3] MOAC would not otherwise lease the Premises to these tenants (for example non-department store tenants) because these tenants would be out of harmony with the operation of Mall of America as a first-class shopping center—as evident through the co-tenancy provisions requiring Mall of America to have at least three department-store anchors. [Transcript at 77:18–25.] In fact, Transform's plan to lease to tenants that would trigger these co-tenancy provisions would further disrupt the harmony of Mall of America by releasing other tenants from lease provisions essential to maintaining the occupancy and tenant balance critical to a first-class shopping center. [Transcript at 73:21–74:18.] Mall of America needs a tenant in the Premises as soon as possible, but it needs a tenant that is not going to disrupt the harmony of the first-class shopping center and threaten its continued viability.

7.      Here, assignment of the Lease would substantially alter the *status quo*: Transform would attempt to lease the Premises to one or more tenants who would expect MOAC to be bound by their sublease and who would potentially trigger a devastating cascade of irreversible effects resulting in the demise of Mall of America and the benefits it brings to its tenants and the community.

---

[3] The references to "Transcript" are to the transcript of the hearing on August 23, 2019 at which the Court rendered its oral decision on the issues subject to the Assignment Order.

6.

**B.      Other parties will not suffer substantial injury if a stay is issued.**

8.      A stay will not cause substantial injury to Transform, the debtors, or any other

party. Neither the debtors nor their estate or creditors will receive any less from the sale of assets

to Transform if the stay is issued—there is no impact on the debtors or their creditors. Transform

provided no argument or evidence at the evidentiary hearing of any exigent need for the order to

go into effect. To the contrary, Transform acknowledged that it does not have a tenant ready to

take over the Premises and argued that it needed two years to commence reletting the premises.

[Transcript at 107:18–108:14.]

**C.      MOAC has demonstrated a substantial possibility of success on appeal.**

9.      MOAC has a substantial possibility of success on appeal because a reviewing

court could easily reach a different and well-founded interpretation of the plain language of

Section 365(b)(3). The Court implicitly acknowledged that MOAC has a possibility of success

on appeal by issuing a finding of fact explicitly for such a situation:

> For the record, I also conclude that if that legal determination is
> incorrect, and that the case law is [sic.] cited and follow on the
> grounds of stare decisis is incorrect, then the financial condition
> and operating performance of Transform is not similar to Sears in
> 1991.

[Hearing Transcript at 129:16–20.]

10.      As already presented to the Court, the plain language of Section 365(b)(3) defines

several specific forms of adequate assurance which must be provided before a lease may be

assigned. These adequate assurances include assurances of rent and lease compliance. 11 U.S.C.

§ 365(b)(3)(A), (C). Congress also *added* requirements for adequate assurance relating to

financial condition and operating performance to protect the "operating and advertising benefits"

provided to landlords and other tenants. *Compare* 11 U.S.C. §365(b)(3)(A) (1982) *with* Pub.L.

98-353, Title III, §§ 362, 402-404, July 10, 1984, 98 Stat. 361, 367; 11 U.S.C. § 65(b)(3)(A)

7.

(2019); *see also* 130 Cong.Rec. S8889 (stating the purpose to "provide operating and advertising benefits") (*quoted in In re Casual Male Corp.*, 120 B.R. 256, 264 n.8 (Bankr. D. Mass. 1990)); S. Rep. No. 98-70 (1983) (discussing importance of "factors, including advertising aggressiveness"). Congress also defined *additional* requirements for adequate assurance, including assurance that tenant mix and balance will not be disrupted. 11 U.S.C. §365(b)(3)(D). Congress did not include any language providing that these protections explicitly defined in the statute only apply if explicitly provided for in the subject lease or other contracts already assured by 11 U.S.C. § 365(b)(3)(C).

11.    There are no binding decisions requiring Section 365(b)(3) to be cabined by the leases to which the section applies. The Court found only three cases addressing Section 365(b)(3)(A)'s requirements that the assignee's financial condition and operating performance must be similar to the financial condition and operating performance of the debtor when it entered into the subject lease. [Transcript 121:11–12.] None of these cases consider, much less limit the analysis of Section 365(b)(3)(A) to, the four corners of the subject lease. *See generally In re Ames Department Stores, Inc.*, No. M47(DAB), 2003 WL 749172 (S.D.N.Y. 2003) (rendering its decision without mentioning the subject lease's terms); *Ramsco-Gerchenson Properties, L.P. v. Service Merch. Co.*, 293 B.R. 169, 176–78 (M.D. Tenn. 2003) (same); *In re Casual Male Corp.*, 120 B.R. 256, 264–65 (Bankr. D. Mass. 1990) (same).

12.    The plain language of Section 365(b)(3) does not limit its adequate assurance protections to apply only to the extent provided for in the subject lease—something Congress could easily have stated if that was its intent. Instead, to reach its conclusion here, the Court cited to and relied upon the analysis of several non-binding cases. Those decisions rely upon implication, tradition, and inference to reach the conclusion that Section 365(b)(3) only requires adequate assurance explicitly provided for in the subject lease. *See, e.g., In re Ames Department*

8.

*Stores*, 127 B.R. 744 (Bankr. S.D.N.Y. 1991) (reading the lease intent into the adequate

assurance provisions by reference to traditional implications of 11 U.S.C. § 365(e) and (f) and

interpretation of legislative history). Accordingly, the Court's interpretation of Section 365(b)(3)

is not a required interpretation, and a reviewing court could easily reach a different, well-founded

conclusion.

13.     During the hearing underlying the Assignment Order, the Court inquired into, and

Transform acknowledged, another unprecedented aspect of the decision—permitting assignment

to a completely separate, third-party real-estate developer rather than a business that would

substantially occupy the premises itself as a tenant. [Transcript 100:23–101:14.] This situation

directly undermines Congress's intent of protecting the rights of lessors and a shopping center's

other tenants. *See In re Joshua Slocum,* 922 F.2d 1081, 1086 (3rd Cir. 1990) (discussing

Congressional intent).

14.     In any event, because MOAC has demonstrated that it may sustain significant

irreparable injury absent a stay pending appeal, the burden on MOAC to demonstrate potential

success on the merits is reduced. *See Mohammed*, 309 F.3d at 101 ("'The probability of success

that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff

will suffer absent the stay. Simply stated, more of one excuses less of the other.") (quotation and

brackets omitted); *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) ("[T]he necessary level

or degree of possibility of success will vary according to the court's assessment of the other stay

factors," and "the probability of success that must be demonstrated is inversely proportional to

the amount of irreparable injury [petitioner] will suffer absent the stay.") (internal quotation

marks and brackets omitted). Therefore, MOAC need "show only that its arguments raise a

substantial *possibility*, although less than a likelihood, of success . . . ." *Hayes v. City Univ. of*

9.

*N.Y.*, 503 F. Supp. 946, 963 (S.D.N.Y. 1980), *aff'd*, 648 F.2d 110 (2d Cir. 1981) (emphasis added).

**D.    A stay would be consistent with the public interest.**

15.    Congress repeatedly emphasized its intent of protecting shopping center landlords and tenants in adopting then amending Section 365(b)(3). *E.g.*, 130 Cong.Rec. S8889; S. Rep. No. 98-70 (1983). Without a stay, the viability of Mall of America is severely undermined and would have a residual effect on hundreds of other tenants, thousands of employees, millions of tourists, and the local and state economy. [Transcript at 73:21–74:18.]

16.    Failure to resolve this situation raises serious implications for future assignments of shopping center leases. All of the known cases considering Section 365(b)(3) deal with the assignment of a shopping center lease to a proposed tenant. The decision to permit assignment to a third-party real-estate development company without regard to the potential tenant(s) opens the door for future debtors to take this simpler, more expedient approach to selling their leases. Indeed, it is not a stretch to imagine real-estate development companies seeking out bankruptcies with shopping-center leases as a business strategy. Such a significant implication deserves appellate review.

**E.    No bond should be required.**

17.    A bond is not a requirement to obtain a stay pending appeal and is not warranted here. Bankruptcy Rule 8005 provides in relevant part that "[t]he district court . . . may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court." Fed. R. Bankr. P. 8005 (emphasis added); *see also In re Suprema Specialites, Inc.*, 330 B.R. 93, 96 (S.D.N.Y. 2005) ("The posting of a bond, however, is discretionary and is not a prerequisite to obtain a stay pending appeal.").

10.

18.    The purpose of a bond is to protect appellees against loss that may occur because of the appeal. *See, e.g., In re Sphere Holding Corp.*, 162 B.R. 639, 644 (E.D.N.Y. 1994). MOAC should not be required to post a bond because no party will be harmed by the stay being sought. As described above, Transform does not expect to lease the Premises immediately. Transform also argues that it is financially sound and not on the verge of financial collapse.

19.    Moreover, requiring MOAC to post a bond in light of its diligent efforts to have the issues underlying this appeal fully and completely adjudicated would be inequitable.

**II.    Expediting of the transmittal process is warranted.**

20.    While Transform claims that it needs two years to even begin filling the Premises, it is critical to Mall of America and its tenants that the Premises be filled as soon as possible. The Court also conveyed its position that "time is of the essence in assuming and assigning the Designated Lease" and that MOAC "must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law." [ECF No. 5074, ¶ 20.] An expedited appellate process to review the assignment at issue is warranted. Accordingly, MOAC requests that the Court instruct the Clerk of the Bankruptcy Court to transmit a copy of the record on appeal to the Clerk of the District Court immediately upon the expiration of the deadline for appellees' designation of additional items to be included in the record on appeal.

## NOTICE

21.    Notice of this Motion will be given to: (1) counsel for Transform; (2) counsel for the debtors; (3) counsel for the Official Committee of Unsecured Creditors; (4) the Office of the United States Trustee; and (5) those parties who have filed a notice of appearance in these cases. MOAC submits that, under the circumstances, no other or further notice is required.

22.    No previous request for the relief sought herein has been made to this or any other court.

11297680v.1

## CONCLUSION

23.    Based on the foregoing, MOAC respectfully requests that this Court enter an order substantially in the form attached hereto (a) staying the Assignment Order pending appeal, (b) ordering the Clerk of the Bankruptcy Court to transmit a copy of the record on appeal to the Clerk of the District Court immediately upon the expiration of the deadline for appellees' designation of additional items to be included in the record on appeal, and (c) granting MOAC such other and further relief as is just and equitable.

24.    In the alternative, should this Court deny MOAC's request for a stay of the Assignment Order pending appeal, MOAC respectfully requests that the Court briefly extend its stay of the Assignment Order for purposes of mootness to permit MOAC to request a stay from the District Court. MOAC requests that this mootness stay extend until the District Court can hear a stay motion from MOAC, for which MOAC will seek expedited consideration as soon as reasonably possible after this Court's decision on this Motion.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

11297680v.1

Dated:  September 10, 2019                    Respectfully submitted,
        Minneapolis, Minnesota

                                                    */e/Thomas J. Flynn*
                                                    Thomas J. Flynn
Admitted *pro hac vice* on December 26, 2018
Alexander J. Beeby
Admitted *pro hac vice* on August 28, 2019
Larkin Hoffman Daly & Lindgren, Ltd.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota  55437-1060
(952) 835-3800
tflynn@larkinhoffman.com


Dated:  September 10, 2019                    */e/David W. Dykhouse*
                                                    David W. Dykhouse
Daniel A. Lowenthal
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York  10036-6710
(212) 336-2000
dwdykhouse@pbwt.com
dalowenthal@pbwt.com

*Attorneys for MOAC Mall Holdings LLC*

13.

11297680v.1