**Hearing Date and Time: October 23, 2019 at 10:00 a.m. (Eastern Time)**
**Objection Deadline Date and Time: October 16, 2019 at 4:00 p.m. (Eastern Time)**

FERRAIUOLI LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001
Email: scolon@ferraiuoli.com
Email: gchico@ferraiuoli.com

Attorneys for *Santa Rosa Mall, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL MOTION FOR AN ORDER FINDING THE AUTOMATIC STAY**
**INAPPLICABLE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**
**AND MEMORANDUM IN SUPPORT THEREOF**

TO THE HONORABLE COURT:

COMES NOW Santa Rosa Mall, LLC ("Santa Rosa Mall"), by and through its undersigned counsel, and pursuant to 11 U.S.C. §§ 362(d)(1), Fed. R. Bankr. P. 4001(d) ("Rule 4001(d)"), Rule 4001-1 of the Local Bankruptcy Rules for the Southern District of New York ("LBR 4001-1"), and the *Amended Case Management Order* (Docket No. 405), hereby moves for relief from the automatic stay and/or that the automatic not be extended for cause as follows:

Preliminary Statement

As an introductory matter, Santa Rosa Mall notes and heeds this Honorable Court's statements at the June 20, 2019 hearing and does not seek relief from the automatic stay to commence an action against the Debtors or a third-party non-debtor whose identity or interests are so closely intertwined with that of the Debtors, nor that a suit against such third-party non-debtor is essentially a suit against the Debtors. Rather, Santa Rosa Mall seeks this Court to find that the automatic stay should not be extended to include third-party non-debtors as no unusual circumstances are present in this case. In fact, Santa Rosa Mall only wants to

pursue independent non-bankruptcy causes of action against Aon UK Limited, Aon Risk Services Central, Inc. d/b/a/ Aon Risk Insurance Services Central, Inc., Aon Benefield Puerto Rico, and/or Aon Property Risk Consulting, Inc. (collectively, "Aon"), who issued the *Certificate*(s) *of Insurance*, *infra*, provided them to Santa Rosa Mall and acted as an intermediary in the insurance claim transaction; and against Lex-London, a Division of AIG Europe Limited, AIG Europe Limited, Lexington UK, *among others* (collectively, the "Underwriters"), on account of Santa Rosa Mall's status as an additional named insured or loss payee.   As Santa Rosa Mall will establish herein the automatic stay does not extend to either Aon or the Underwriters. In the alternative, Santa Rosa seeks that the stay be lifted for the reasons established herein.

The relief sought by this motion is straightforward and will facilitate the most efficient and equitable result of an insurance claim that has already been adjusted and paid for.  Also, because the damages paid were caused by Hurricane Maria to a property located in Puerto Rico the action would be initiated under applicable non-bankruptcy law in a non-bankruptcy Court, specifically, the United States District Court for the District of Puerto Rico.  Santa Rosa Mall's claims against the Underwriters and Aon must be resolved in one forum or another, and the United States District Court for the District of Puerto Rico is an agreed forum in the *Contract of Insurance*[1], and the only forum where a direct action can be filed against the Underwriters, thus the most logical place for Santa Rosa Mall's claims to be adjudicated.

## Jurisdiction and Venue

This Honorable Court has jurisdiction over the present controversy pursuant to 28 U.S.C. § 157, 1334 and 11 U.S.C. § 362. Venue is proper under 28 U.S.C. § 1409.

## Factual and Procedural Background

1.      Sears Holding Corporation and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on October 15, 2018 (the "Petition Date").  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

---

[1] See *Contract of Insurance*, **Exhibit I**, § 28, p. 25.

2.      Sears, Roebuck de Puerto Rico, Inc., leased retail space from Santa Rosa Mall in Bayamón, Puerto Rico ("Store No. 1915" or the "Demised Premises") pursuant to a *Lease Agreement* executed on September 22, 1965. See *Lease Agreement*, **Exhibit II.**

3.      Section 6.01 of the *Lease Agreement* requires that the Debtors "maintain at [its] sole cost and expense, for the benefit of [Santa Rosa Mall] and [Sears], insurance with respect to the Demised Premises" for risks including "windstorm". Id. § 6.01(a), p. 26. Such insurance policy "shall be secured promptly and certificates thereof shall be furnished to [Santa Rosa Mall]" and "shall contain loss payable clause to [Santa Rosa Mall] and [Sears]". Id., § 6.02(a), pp. 26-27. Renewals of the insurance policies are also subject to the foregoing. Id., § 6.02(b), p. 27.

4.      In the event of damage by windstorm or any other casualty to the Demised Premises in an amount over $100,000, such as that caused by Hurricanes Irma and Maria, Section 6.03(b)(2) of the *Lease Agreement* requires that Sears "proceed with all reasonable expedition to restore or rebuild [] the building so destroyed or rendered untenantable, free from liens of any kind, in substantial accordance with the plans and specifications of the building so destroyed or rendered untenantable []". Id., § 6.03(b)(2), p. 28.  Section 6.03(b)(2) activates the requirements specified in Section 5.02 of the *Lease Agreement*, which requires that Sears "furnish to [Santa Rosa Mall] a duplicate set of the working plans, sketches and specifications for the proposed work", "at its own cost and expense obtain or cause to be obtained all the insurance coverage specified in Section 3.04", and that "[a]ny alteration or addition [] be carried out in such a way  as to interfere as little as is reasonably possible with the operations of the Shopping Center []".  Id., § 5.02(a), (c) and (d), p. 25.

5.      Section 6.03(b)(3) of the *Lease Agreement* further mandates as follows:

**The net sums recovered by [Santa Rosa Mall] and [Sears] on account of loss or damage whether under the policies taken out as aforesaid, or under other insurance policies taken out by [Sears] and indemnifying for physical loss** (as distinguished from the loss of use and occupancy. or profits), **shall by <u>deposited in a special account in the name of [Santa Rosa Mall]</u> separate and distinct from all other funds of [Santa Rosa Mall] <u>in a bank or trust company of the City of San Juan, Puerto Rico, approved by [Santa Rosa Mall] and [Sears]</u> to be applied on account of the cost of such restoration or rebuilding,** as the case may be, as the work of restoration or rebuilding progresses, and [Sears] shall pay any and all additional moneys required in such restoration or rebuilding in excess of said net sums recovered, and

> shall be entitled to receive any surplus, if any, remaining of said deposit after such restoration .. or rebuilding has been completed as aforesaid, provided, however, that should the aforesaid damage by fire or other casualty occur within the last three years of the initial term or any extended term this lease, [Sears] shall have the option to surrender the proceeds of any insurance to [Santa Rosa Mall] and vacate the premises.

Id., § 6.03(b)(3), pp. 28-29 (emphasis and underline added).

6.     The deposit of the insurance proceeds in a separate account is essential and Section 6.03(d) explains its importance:

> If [Sears] does not commence promptly to repair or restore the injury or destruction, or if, having commenced the repair or restoration, [Sears] does not proceed diligently to complete the same, [Santa Rosa Mall] shall be entitled (but shall be under no obligation) at any time thereafter to enter the Demised Premises and repair or restore the injury or destruction and to apply any insurance proceeds in the said special account to the payment of the cost thereof; but if the insurance proceeds are insufficient for the cost of the repair, restoration or reconstruction, [Sears] shall pay to [Santa Rosa Mall], upon demand and as additional rent as the work progresses; such amounts as shall be necessary to complete the repair, restoration or reconstruction.

Id., § 6.03(d), p. 29.

7.     In accordance with Section 6.02 of the *Lease Agreement*, the Debtors procured property insurance with respect to the Demised Premises with a loss payable clause in favor of Santa Rosa Mall.  See, e.g., *May 12, 2016 Email thread between CCM[2] and Aon* ("The certificate Holder and additional insured should be: Santa Rosa Mall, LLC, 3 Pals Caribe, LLC and Commercial Centers Management Realty S. en C."); *June 19, 2014 Email from CCM to Aon* ("all Insurance endorsements must include [CCM] as an additional insured. [] In accordance with your lease, [] [t]he landlord must be included as an additional insured, as follows[:] a. 3 Pals Caribe, LLC[,] b. Santa Rosa Mall, LLC[,] c. [CCM]"); *March 10, 2014 Letter from CCM to the Debtors* ("all Insurance endorsements must include [CCM] as an additional insured. [] In accordance with your lease, [] [t]he landlord must be included as an additional insured, as follows[:] a. 3 Pals Caribe, LLC[,] b. Santa Rosa Mall, LLC[,] c. [CCM]"); *April 17, 2008 Letter from CCM to the Debtors* ("We hereby request that you change your policy to include Santa Rosa Mall LLC, and [CCM] as an additional insured"), **Composite Exhibit III.**

---

[2] Commercial Centers Management Realty S. en C. ("CCM") is the managing and leasing agent for Santa Rosa Mall.

8.     On or about May 30, 2017, the Debtors obtained a *Contract of Insurance* with AIG for Aon

Policy No. PTNAM1701557 (the "*Contract of Insurance*") for the period of June 1, 2017 to June 1, 2018.

See *Contract of Insurance*, **Exhibit I.**

9.     Pursuant to the *Contract of Insurance*, Santa Rosa Mall is included among the insured.  Id.

at p. 3 ("Named Insured" is defined as "Sears Holdings Corporation and any subsidiary, affiliated, associated,

or allied company, corporation, firm, organization, partnership, joint venture, joint lease, or joint operating

agreement [], as their respective interest may appear; **and any other party for which the Insured has the**

**responsibility for providing insurance, as their respective interest may appear**.") (Emphasis added).

10.    Paragraph 39 of the *Contract of Insurance* further provides:

> It is agreed that Aon Risk Services, Inc. are authorized to issue Certificate(s) or Evidence(s) of
> Insurance… naming Additional Named Insured(s), Loss Payee(s) or Mortgagee(s), and others
> for their respective rights and interests, subject always to the terms, conditions and limits of
> endorsements in respect of such additional interests.

Id. at p. 27, ¶ 39.

11.    On September 20, 2017, Store No. 1915 was substantially damaged by the passing of

Hurricane Maria.  Thereafter, Store No. 1915 closed its doors.  The Court may take judicial notice of the

passing of Hurricane Maria, as well as its trajectory and aftermath under Fed. R. Evid. 201.

12.    On October 2, 2017, the Debtors, via email, "acknowledge[d] its duty to insure and repair

the [Demised Premises] for damage caused by Hurricane Maria."  See *Email from the Debtors to CCM dated*

*October 2, 2017*, **Exhibit IV.**

13.    On or about October 23, 2017, CCM requested by letter to "be kept informed of the status of

the insurance claim [and] that any insurance proceeds [be] deposited as required by the Lease Agreement."

See *Letter from CCM to the Debtors dated October 23, 2017*, **Exhibit V.**

14.    On or about October 25, 2017, Aon Risk Services Central, Inc., d/b/a/ Aon Risk Insurance

Services Central, Inc., issued a *Certificate of Insurance* regarding Aon Policy No. PTNAM1701557 for the

period of June 1, 2017 to June 1, 2018, in accordance with the policy provisions of the *Contract of Insurance*

and similar to those received by Santa Rosa Mall in previous years.[3]  See *Certificate of Insurance*, **Exhibit VI.**

15.    On even date —that is, after the passing of Hurricane Maria— **the *Certificate of Insurance* was emailed to both Santa Rosa Mall and the Debtors by Aon Client Services a department of Aon Client Services Central, Inc. d/b/a/ Aon Risk insurance Services Central, Inc**.  See *Email from Aon to CCM and the Debtors dated October 25, 2017*, **Exhibit VII**.

16.    The "Additional Remarks Schedule" of said *Certificate of Insurance* states that,

Santa Rosa Mall, LLC… and Commercial Centers Management, LLC are included as Loss Payee in accordance with the policy provisions of the Property policy with respect to the property located at the above referenced Location.

Id. at p. 3.  The *Certificate of Insurance* refers to "Sears Store No. 1915 – Santa Rosa Mall, Bayamon, PR". Id.

17.    Pursuant to such *Certificate of Insurance,* Aon agreed to perform certain conflictive representative roles, to wit: as a "Producer" (top of the first page), as an "Authorized Representative" (bottom of the first page), and as an "Agency" (top of the second, third and fourth pages). Id.

18.    On October 26, 2017, the Debtors informed CCM that "[the Debtors] agree that the Lease Agreement [] requires [Sears] to repair the building for damage or destruction []. Sears has an insurance claim for this loss", referring to Santa Rosa Mall's damages, and that "**[o]nce the insurance payment [is] received arrangements will be made for it to be deposited with an agreed bank**".  *Letter from Debtors to CCM dated October 26, 2017*, **Exhibit VIII.**

19.    On October 30, 2017, CCM, wrote to AIG Insurance Company Puerto Rico requesting "to be informed as of the filing of any claim under [Policy No. PTNAM1701557] as well as the processing of the same, and that any insurance proceeds be deposited as required by the Lease Agreement".  *Letter from CCM to AIG dated October 30, 2017*, **Exhibit IX**.

---

[3] The "Additional Remarks Schedule" of said *Certificate of Insurance* contains a list of several insurance companies. See *Certificate of Insurance*, **Exhibit VI**, p. 4.  Pursuant to Article 11.220 of the Insurance Code of Puerto Rico, 26 L.P.R.A. §1122, they are each regarded as both jointly and severally responsible for the payment of any claim insured in connection with Store No. 1915.

20.     On June 1, 2018, the Debtors responded to CCM's *October 26, 2017 Letter* and incorrectly asserted that there was "no requirement" for the Debtors "to set up a special account in the landlord's name with insurance proceeds" though "this letter will serve as written confirmation that [the Debtors] will provide all monies required to restore and rebuild [Store No. 1915]". *Letter from the Debtors to CCM dated June 1, 2018*, **Exhibit X**.

21.     On June 6, 2018, Dale Menéndez, Director of Claims-Risk Management at Sears Holdings Management Corporation wrote to CCM confirming that "Sears Holding Corporation **will provide all monies** required to restore and rebuild [Store No. 1915] as required by the Lease."[4]  *Letter from the Debtors to CCM dated June 6, 2018*, **Exhibit XI** (emphasis and underline added).  The *June 6, 2018 Letter* further stated that the anticipated "Grand Reopening" date for Store No. 1915 was January 1, 2019.

22.     After the Petition Date, the Debtors suspended the limited initial reconstruction efforts in the Demised Premises.

23.     On November 19, 2018, the Court entered an *Order Approving Global Bidding Procedures [ ]* (the "*Global Bidding Procedures Order*", Docket No. 816) regarding the sale/disposition of certain assets, scheduling auctions and hearings for approval of proposed sale transactions and approving the procedures for the assumption and assignment of executory contracts and unexpired non-residential leases.

24.     On December 20, 2018, Santa Rosa Mall filed a *Motion for Entry of Order for the Debtor* to: *(i) Disclose Status of Insurance Claim; (ii) Deposit Any Insurance Proceed into Separate Account to be Used Exclusively to Repair the Insured Demised Premises; and (iii) Alternatively, Find the Automatic Stay Inapplicable to the Insurance Proceeds* (the "*Motion to Compel Insurance Proceeds*", Docket No. 1240).  We incorporate by reference the *Motion to Compel Insurance Proceeds* as if fully transcribed herein.  In short, Santa Rosa Mall sustained that pursuant to the obligations under the *Lease Agreement* (Docket No. 1240-1) and the evidence provided by the Debtors, Santa Rosa Mall was a "loss payee" under insurance policy no.

[4] ████████████████████████████████████████████████

PTNAM1701557.  Santa Rosa Mall sustained that the insurance proceeds were not part of the bankruptcy estate and must be exclusively applied to the restoration or rebuilding of the Demised Premises in accordance to the *Lease Agreement*.  Santa Rosa Mall was not then or now been privy to the insurance claims filed by the Debtors with AIG or the insurance settlement or negotiations, if any, despite its express request.

25.     A hearing to consider the *Motion to Compel Insurance Proceeds* was held on March 21, 2019, wherein Santa Rosa Mall proffered to the Court discovery material designated as "Confidential Material" by the Debtors in accordance with the *Amended Stipulated Protective Order* (Docket No. 1084), including the *Contract of Insurance*.

26.     Upon information and belief, on or about January 17, 2019, the Debtors, ███████████

████████████████████████████████████████████████████████████

████████████████████████ *Settlement and Release Agreement* (the "*Settlement Agreement*") with certain insurance Underwriters, ██████████████████████████████████, as further described therein.  See *Settlement Agreement,* **Exhibit XII.**

27.     On January 23, 2019, Santa Rosa Mall's undersigned counsel informed AIG Europe Limited that "any insurance proceeds recovered for loss or damage be issued jointly to the Debtor and Santa Rosa so that funds can be deposited in a segregated account to be used only for the repairs to Store 1915, in compliance with Section 6.03(b)(3) of the *Lease Agreement*".  See *Letter from CCM to AIG dated January 23, 2019,* **Exhibit XIII.**

28.     On January 26, 2019, Santa Rosa Mall filed a *Standing Objection to Global Asset Sale Transaction* (the "*Standing Objection*", Docket No. 2013).  Pursuant to the terms of the *Asset Purchase Agreement* (Docket No. 1730), specifically Section 2.1(q), Transform Holdco LLC (the "Buyer") acquired all proceeds relating to loss or damage occurring prior to the closing date of the Global Sale Transaction minus a cap of $13,000,000.00.[5]  In its *Standing Objection*, Santa Rosa Mall sustained that the insurance proceeds from the global settlement relative to Santa Rosa Mall's claim for damages should be used for the

---

[5] The $13,000,000.00 insurance cap language remained unchanged pursuant to the February 8, 2019 *Sale Order* (Docket No. 2507).

reconstruction of Store No. 1915 or be deposited in escrow with the Landlord, in accordance with the terms of the *Lease Agreement*. We incorporate by reference the *Standing Objection* (Docket No. 2013) as if fully transcribed herein.

29. On February 8, 2019, the Court entered an *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief* (the "*Sale Order*", Docket No. 2507). As part of the *Asset Purchase Agreement*, the Debtors transferred all title to the proceeds obtained from the *Settlement Agreement* to the Buyer, minus a cap of $13,000,000.00.[6] See Docket No. 2507-1, pp. 56-58, § 2.1(q); Docket No. 2507-1, Schedule 2.1(q), p. 1003.

30. On that same date, February 8, 2019, the Debtors filed an *Objection* to the *Motion to Compel Insurance Proceeds* (the "*Debtor's Objection*", Docket No. 2512) arguing, for the first time, that Santa Rosa Mall is not a loss payee under the *Contract of Insurance*, and that the *Certificate of Insurance* provided by the Debtor to Santa Rosa Mall is erroneous and "not determinative of the extent of coverage under the Insurance Policy", despite the Debtor's obligations under § 6.02(a)  the *Lease Agreement*. See Docket No. 2512, p. 10, ¶ 24.

31. On March 13, 2019, Santa Rosa Mall filed a *Reply* to the *Debtor's Objection* (Docket No. 2828) for the *Contract of Insurance* to be reformed to specifically include Santa Rosa Mall as a loss payee in accordance with property rights obtained under the *Lease Agreement* and, in the alternative, impose an equitable lien over the insurance proceeds in favor of Santa Rosa Mall.

32. On April 3, 2019, Aon Property Risk Consulting, Inc., filed *Proof of Claim No. 13460* for $95,635.25 on account of insurance claim and consulting services rendered to the Debtors following Hurricane Maria and consists of three invoices directed to the attention of Dale Menéndez, Director of Property Claims-Risk Management at Sears Holdings Management Corporation.

---

[6] *Declaration of Sunny Sigh* (Docket No. 2344 pp. 236-237, ¶¶ 9-9) ("In addition, the debtors… retain 13 million dollars in hurricane insurance proceeds").

33.    On April 30, 2019, the Debtors filed a *Notice of Rejection of Certain Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* (Docket No. 3449) rejecting the *Lease Agreement* for Store No. 1915, id. at p. 11, and consequently lost any leasehold or proprietary interest in Store No. 1915 as well as any insurable interest it may have had in Store No. 1915.

34.    On May 1, 2019, Santa Rosa Mall filed a *Motion for Relief from Stay and Memorandum in Support Thereof and/or to Declare that the Insurance Proceeds Are Not Part of the Bankruptcy Estate* (the "*Motion for Relief from Stay*", Docket No. 3475).  We incorporate by reference the *Motion for Relief from Stay* as if fully transcribed herein.

35.    On May 14, 2019, CCM sent a letter to Aon Risk Services Central, Inc., in an effort to discuss the *Certificate of Insurance* at issue.  See *Letter from CCM to Aon dated May 14, 2019*, **Exhibit XIV.**

36.    On June 13, 2019, the Debtors filed an *Objection* to the *Motion for Relief from Stay* ("*Objection to Motion for Relief from Stay*", Docket No. 4224).

37.    On June 14, 2019, Santa Rosa Mall filed *Amended Proof of Claim No. 19,755* in the amount of $44,344,475.58, on account of its *Contingent Claim for Insurance Proceeds*, *Contingent Claim for Aiding and Abetting Fraudulent Misrepresentation*, *Claim for Rejection Damages*, and *Claim for Store No. 4660*. See *Amended Proof of Claim No. 19,755*.  Santa Rosa Mall further reserved its rights to amend its claim to reflect a *Contingent Administrative Expense Claim for Cleanup of Hazardous Materials*.  Id.

38.    A hearing on the *Motion for Relief from Stay* and *Objection to Motion for Relief from Stay* was held on June 20, 2019.  Therein, this Court stated that the indemnity clause contained in the *Settlement Agreement*, pursuant to which the Debtors are obligated to indemnify Lexington UK, a division of AIG Europe Limited, bars Santa Rosa Mall from seeking relief from the automatic stay with respect to Debtors' insurance carrier.  Notwithstanding, "if [Santa Rosa Mall] can show me that [it] ha[s]a direct relationship with... Aon, the broker, where they owe [Santa Rosa Mall] a duty independent of the [D]ebtors' conduct, the Motion for Relief from Stay may be "put[]back on the calendar".  *June 20 Hearing Transcript*, 86:7-11.

39.    On July 2, 2019, Kelly M. Ross of Aon responded to CCM's *May 14, 2019 Letter*, stating that Aon had "no records of a certificate being issued with Santa Rosa Mall as the certificate holder" despite

the express wording of the *Certificate of Insurance*. See *Letter from Aon to CCM dated July 2*, 2019, **Exhibit XV.**

40.     On July 12, 2019, CCM provided Aon with the *Certificate of Insurance* issued by the latter, which asserts Santa Rosa Mall's status as a certificate holder.  See *Letter from CCM to Aon dated July 12, 2019*, attaching a copy of the *Certificate of Insurance*. **Exhibit XVI.**

41.     On July 23, 2019, Courtney E. Murphy, Esq., counsel for Lexington UK, a division for AIG, responded to CCM's *January 23, 2019 Letter*.  Therein, AIG stated the following:

> As final payment has been made in connection with all covered loss and damage to covered locations as provided for by the subject Policies and the January 17, 2019, Release, no further payments will be made under the subject Policies.  Having complied with the terms of the Policies and the Release with the Named Insured – SHC - it is Lexington's position that this matter is fully and finally resolved and no further discussions need be held to discuss any further or additional resolutions.

See *Letter from AIG to CCM dated July 23, 2019,* **Exhibit XVII**, p. 3.

42.     Pursuant to Section 105 and Section 362 of the Bankruptcy Code, and as explained below, Santa Rosa Mall moves this Court to find that the stay does not extend to Aon or the Underwriters and enter an order declaring the automatic stay is inapplicable.  In the alternative, Santa Rosa Mall moves for relief from the automatic stay for cause.

<u>Applicable Law and Discussion</u>

**A.    *The Automatic Stay Provisions of Section 362 Do Not Apply Automatically to Third-Party Non-Debtors***

43.     Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay of "the commencement or continuation … of a judicial, administrative, or other action or proceeding **against the debtor** that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1) (emphasis added).

44.     Generally, "the Automatic Stay applies only to the debtor and **does not stay proceedings brought against non-bankrupt co-defendants**."  <u>Millard v. Developmental Disabilities Institute, Inc.</u>, 266 B.R. 42, 44 (Bankr. E.D.N.Y. 2001) (emphasis added).  See *e.g.*, <u>Franco v. Ideal Mortgage Bankers, Ltd.</u>, 2017 WL 5195223, 2017 U.S. Dist. LEXIS 186194 (E.D.N.Y. 2017); <u>Demel v. Group Benefits Plan for</u>

Employees of Northern Telecom, Inc., 2010 WL 167947, at *1 (S.D.N.Y. 2010) ("Courts normally do not extend an automatic stay under 11 U.S.C. § 362(a)(1) to non-debtor co-defendants"); In re McCormick, 381 B.R. 594, 600 (S.D.N.Y. 2008) ("The Second Circuit has explained that the automatic stay pursuant to § 362(a) is generally limited to debtors and does not encompass non-bankrupt codefendants.") (citations omitted); Wynn v. AC Rochester General Motors, Corp., 155 Fed. App'x 528, 528 (2nd Cir. 2005) ("the stay [pursuant to Section 362] is not automatically applicable to the non-bankrupt co-defendants"); Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc., 235 F.3d 53, 58 (2nd Cir. 2000) ("stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); Teachers Ins. & Annuity Ass'n. v. Butler, 803 F.2d 61, 65 (2nd Cir.1986) ("It is well established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); Gray v. Hirsch, 230 B.R. 239, 241 (Bankr. S.D.N.Y. 1999) (same); In re Crazy Eddie Securities Litigation, 104 B.R. 582, 584 (Bankr. E.D.N.Y. 1989) (automatic stay did not preclude action against debtor's codefendants that are not so bound by statute or contract that the liability of the codefendants is automatically imputed to the debtor by operation of law).

## B.    *The Automatic Stay Is Inapplicable and Should Not be Extended*

45.    The Second Circuit has recognized a limited exception to this general rule and held that the automatic stay may be extended to non-debtors in "unusual circumstances" where "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate," Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2nd Cir. 2003), or where removing the stay would pose "a serious threat to the debtor's reorganization efforts." Demel, 2010 WL 167947, at *1. However, "extensions of the Automatic Stay **are the exception rather than the rule and are not favored absent some [un]usual circumstance**." Millard, 266 B.R. at 45 (citing CAE Indus. Ltd. v. Aerospace Holdings Co., 116 B.R. 31, 32 (S.D.N.Y. 1990)) (emphasis added).

46.    Although the protections of the automatic stay may be extended to third-party non-debtor entities under certain circumstances, it is an extraordinary exercise of Bankruptcy Court's equitable discretion.  The circumstances of a case must be sufficiently "unusual" to merit such and expansion.

47.     The debtor or non-debtor seeking protections of the automatic stay must make an affirmative act in the bankruptcy court demonstrating how the facts and the circumstances give rise to the exception.  In fact, the movant bears the burden of demonstrating that circumstances warrant extending the stay.  See In re FPSDA I, LLC, 2012 WL 6681794, at *8 (Bankr. E.D.N.Y. 2012) (Slip Copy) ("[T]he movant must show by 'clear and convincing evidence' that extension of the stay is warranted").

(i)     *The Automatic Stay Should Not be Extended to Protect Aon*

48.     While the automatic stay has been extended to non-debtors in certain rare and unusual circumstances, the automatic stay provisions of Section 362 do not extend to Aon.  Wherefore, Santa Rosa Mall asserts that the automatic stay is inapplicable and does not bar Santa Rosa Mall from asserting independent non-bankruptcy causes of action against Aon.  The Debtors are not bound by either statute or contract that the liability of Aon is automatically imputed to the Debtors by operation of law.  Aon is not entitled to indemnity from the Debtors, no unusual circumstances are present, and a claim against such non-debtor third-party will not have an immediate adverse economic consequence for the Debtors' estate.

49.     For the foregoing reasons, Santa Rosa Mall respectfully asserts that the automatic stay is inapplicable and should not be extended to protect Aon.  In the alternative, Santa Rosa Mall submits that cause exists to modify the automatic stay.  See *Subsection D.*

(ii)    *The Automatic Stay Should Not be Extended to Protect the Underwriters*

50.     With regards to the Underwriters, Santa Rosa Mall submits that the automatic stay does not extend to said third-party non-debtor either.  The Debtors have not demonstrated by "clear and convincing evidence" that "unusual circumstances" or "unity of interest" exists to warrant extending the protections of the automatic stay to the Underwriters.  The only matter to which the Debtors have alluded to in their *Objection to Motion for Relief from Stay* (Docket No. 4224) and at the June 20, 2019 hearing is the existence of an indemnity clause in the *Settlement Agreement* ██████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████  despite both the Underwriters and the Debtors having received previous notifications from Santa Rosa Mall and CCM to the contrary.  Minimal due

diligence would have confirmed that Santa Rosa Mall had a claim associated with Aon Policy No. PTNAM1701557.

51.     Santa Rosa Mall respectfully submits that both the *Settlement Agreement* and its indemnification clause are unenforceable on account of Debtors' failure to comply with Fed. R. Bankr. P. 9019.  If the Underwriters seek indemnification from the Debtor under the *Settlement Agreement*, it must be underscored that ███████████████████████████████████████████████████████████████ ███████████████ no notice was ever filed with this Court and no motions were made seeking its approval.[7]

52.     Fed. R. Bankr. P. 9019(a) states that the court *may approve* a settlement *on motion* by the trustee or debtor-in-possession.  See Fed. R. Bankr. P. 9019(a).  In the Second Circuit, "[b]efore pre-plan settlements can take effect, ... they must be approved by the bankruptcy court pursuant to [Fed. R. Bankr. P.] 9019."  Liberty Towers Realty, LLC v. Richmond Liberty, LLC, 569 B.R. 534, 538–39 (E.D.N.Y. 2017) (quoting In re Iridium Operating LLC), 478 F.3d 452, 455 (2nd Cir. 2007). "The purpose and effect of seeking court approval of a compromise under [Fed. R. Bankr. P.] 9019 is to bind the bankruptcy estate to the terms of any bargain struck by a ... debtor-in-possession that affects the bankruptcy estate."  Liberty Towers Realty, LLC, 569 B.R. at 39 (quoting In re Lexington Jewelers Exch. Inc., 2013 WL 2338243, at *5, n. 12 (Bankr. D. Mass. 2013)).

53.     Outside the Second Circuit, the overwhelming majority of courts to interpret Fed. R. Bankr. P. 9019(a) have determined that a compromise or settlement is enforceable **only** if it has been approved by the bankruptcy court.  See *e.g.*, In re Big Apple Volkswagen, LLC, 571 B.R. 43, 55 (S.D.N.Y. 2017) ("[R]eading Rule 9019(a) to give effect to all its provisions, the Court concludes that any compromise or settlement must be approved under the Rule to be deemed effective."); In re Leslie Fay Companies, 168 B.R. 294, 305 (Bankr. S.D.N.Y. 1994) ("Compromises may not be made in bankruptcy absent notice and a hearing and a court order."); In re Pugh, 167 B.R. 251, 253–54 (Bankr. M.D. Fla. 1994) ("[The compromise] could not have become a binding contract unless the Trustee complied with [Fed. R. Bankr. P.] 9019...."); In re

---

[7] ████████████████████████████████████████████████████████████████ ████████████████████████████████

Rothwell, 159 B.R. 374, 379 (Bankr. D. Mass. 1993) ("A settlement agreement is unenforceable without notice of the settlement to creditors or a court order approving it"); Reynolds v. Comm'r of Internal Revenue, 861 F.2d 469, 473 (6th Cir. 1988) ("In bankruptcy proceedings… any compromise between the debtor and his creditors must be approved by the court as fair and equitable."); In re Teknek, LLC, 563 F.3d 639, 651 (7th Cir. 2009) (recognizing a settlement agreement was null and void when the bankruptcy court lacked jurisdiction to approve the agreement, "because the trustee is required to get the bankruptcy court's approval before settling claims"); American Prairie Construction Co. v. Hoich, 594 F.3d 1015, 1024 (8th Cir. 2010) ("It is a recognized principle of bankruptcy law that a bankruptcy court is required to approve any compromise or settlement proposed in the course of a Chapter 11 reorganization before such compromise or settlement can be deemed effective." "[A] settlement agreement made in bankruptcy has no effect when the parties to the agreement fail to comply with Fed. R. Bank. P. 9019, which requires notice to creditors and court approval."); In re Blehm Land & Cattle Co., 859 F.2d 137, 141 (10th Cir. 1988) ("Under [ Fed. R. Bankr. P.] 9019, a settlement or compromise agreement between the trustee and a party must be approved by the court, after notice and hearing, to be enforceable.").

54.      It is without dispute that none of the requirements of Fed. R. Bankr. P. 9019 were met. Accordingly, to the extent that the *Settlement Agreement* was not executed "in whole or in part" in accordance with Fed. R. Bankr. P. 9019, it and its indemnity clause are unenforceable.

55.      Nonetheless, even if this Honorable Court were to uphold the *Settlement Agreement* and its indemnification clause, while an illustration of "unusual circumstances" warranting extension of the stay *may* arise where there is an entitlement to indemnification between the debtor and a third-party non-debtor, "[i]t is not enough for the movant to show some limited risk or that there is a theoretical threat to the reorganization, because it is always the case that a lawsuit against principals of the Debtor could and have effect on the reorganization. Rather, and in keeping with the principle that extending the stay to non-debtors is extraordinary relief, the party seeking extension of the stay must put forth real evidence demonstrating an actual impact upon, or threat to, the reorganization efforts if the stay is not extended." In re FPSDA I, LLC,

2012 WL 6681794, at *8 (citing Gray v. Hirsch, 230 B.R. 239, 243-244 (Bankr. S.D.N.Y. 1999)) (emphasis supplied).

56.    Debtors' mere indemnification obligation to a non-debtor is insufficient to justify extension of the automatic stay to non-debtors. See, e.g., In re Uni-Marts, LLC, 399 B.R. 400, 416-17 (Bankr. D. Del. 2009) (held that non-debtor's right to indemnification by debtor was insufficient to extend automatic stay protections to such non-debtor); Holland v. High Power Energy, 248 B.R. 53, 59 (Bankr. S.D.W.Va. 2000) ("Notwithstanding the indemnification agreement between the parties, it cannot be said that the interests of [the debtor and non-debtor third-party] are closely intertwined … merely by virtue of the agreement."). Indeed, "because the justification for extending the stay must be consistent with the purpose of the stay itself, [which is] to suspend actions that pose a serious threat to a corporate debtor's reorganization efforts", indemnification obligations alone are not enough. In re SDNY 19 Mad Park, LLC, 2014 WL 4473873, at *2 (Bankr. S.D.N.Y. 2014) (quoting In re FPSDA I, LLC, 2012 WL 6681794, at *11 and In re Uni-Marts, LLC, 399 B.R. at 400)) (quotations omitted).

57.    As such, the Debtors cannot effectively sustain that any indemnification obligation they might have in favor of the Underwriters would pose a serious threat to their reorganization efforts, especially because the Debtors are now in liquidations mode. Thus, there is no justification for extending the protection of the automatic stay to the Underwriters.

58.    While "a suit against a third-party who is entitled to absolute indemnity by the debtor" has been noted as an "unusual circumstances" warranting extension of the stay to non-debtors, see e.g., A. H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir.1986), in "very large complex reorganizations" where "the litigation sought to be stayed presented very formidable discovery and other demands, together with very large numbers of potential claimants," In re FPSDA I, LLC, 2012 WL 668794, at *15, such is not the case here.[8]

---

[8] Although in A. H. Robins, supra, the U.S. Court of Appeals for the Fourth Circuit found that in "unusual circumstances," the automatic stay could be extended to action against non-debtors, including debtors' insurance company, the circumstances that gave way to that holding are distinguishable from the case at bar. In A. H. Robins,

59.     Instead, none of the "unusual circumstances" that may justify extending the protections of the stay to non-debtors like those in A. H. Robins are present in this case, *inter alia* because A. H. Robins dealt with liability claims while the claim against the Underwriters relate to a property insurance claim. Plainly, this is not the type of bankruptcy case that justifies extending the protections of the automatic stay to non-debtor third parties, such as the Underwriters. See, *e.g.*, In re First Cent. Fin. Corp., 238 B.R. 9, 19 (Bankr. E.D.N.Y. 1999) (noting that cases extending protections of automatic stay involve numerous lawsuits that would have otherwise resulted in a "massive depletion of estate assets and inhibited key personnel from the important business of getting the corporate debtor back on its feet"). Here, the Debtors' only "going concern" assets have been sold, the Debtors are in the process of confirming a Chapter 11 Liquidation Plan and no reorganization is contemplated. A large or otherwise complex litigation is not contemplated, and Santa Rosa Mall has a direct and distinct action against the Underwriters.

60.     For the forgoing reasons, Santa Rosa Mall respectfully asserts that the automatic stay is inapplicable and should not be extended to protect the Underwriters. In the alternative, Santa Rosa Mall asserts that cause exists to modify the automatic stay. See *Subsection E.*

## C.     *Relief from the Automatic Stay for Cause, Generally*

61.     Pursuant to 11 U.S.C. § 362(d), the Court may terminate, modify, annul or condition the automatic stay. The first ground for obtaining relief from the automatic stay is for "for cause". 11 U.S.C. §362(d)(1).

---

thousands of actions were initiated against the debtor and its insurance provider, forcing the debtor to file for bankruptcy. The plaintiffs in various non-bankruptcy actions sought to sever their actions against the debtor in order to proceed against the debtor's co-defendants, which include the debtor's insurer. In affirming the District Court's decision, the U.S. Court of Appeals for the Fourth Circuit affirmed the injunction staying the plaintiffs' suits against debtor's co-defendants because there was such identity between the debtor and the third-party co-defendants that the debtor may be said to be the "real party defendant" and a judgment against such third-party co-defendants would in effect be a judgment or finding against the debtor. The continuation of such litigation threatened the property of A. H. Robins' estate, and burdened and impeded the debtor's reorganization efforts. On the other hand, in Franco, *supra*, the US District Court for the Eastern District of New York held: "A court should not extend the automatic stay where the non-debtor is independently liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of duty." Franco v. Ideal Mortgage Bankers, Ltd., 2017 WL 5195223, at *7, 2017 U.S. Dist. LEXIS 186194, at *4-5 (E.D.N.Y. 2017) (citations and internal quotations omitted) (emphasis supplied). In the instant case, Santa Rosa Mall sustains that unlike the liability insurance policies referred to in A. H. Robins, which involved multiple parties, Santa Rosa Mall is the only party of interest and an action against either Aon or the Underwriters will not threaten the bankruptcy estate or otherwise burden or imped the Debtors' reorganization efforts.

62.     The Bankruptcy Code does not define 'cause', nonetheless, generally speaking, 'cause' is said to exist when the harm that would result from a continuation of the stay would outweigh any harm that might be suffered by the debtor or the debtor's estate if the stay is lifted.  See In re Sonnax Industries, Inc., 907 F.2d 1280, 1285 (2nd Cir. 1990).

63.     Determining whether 'cause' exists requires a fact intensive inquiry that must be made on a case by case basis.  See Peerless Ins. Co. v. Rivera, 208 B.R. 313, 315 (D.R.I. 1997), citing In re Turner, 161 B.R. 1, 3 (Bankr. D. Me. 1993); Assocs. Ltd. v. Aetna Cas. & Sur. Co., 30 F.3d 734, 737 (6th Cir. 1994); In re Balco Equities Ltd., 312 B.R. 734, 738 (Bankr. S.D.N.Y. 2004).  Courts make this determination through a balancing test, where they weigh the hardship to the creditor, if he or she is not allowed to proceed with his or her lawsuit, against the potential prejudice to the debtor and debtor's other creditors.  See In re R.J. Groover Constr. LLC, 411 B.R. 460, 463-64 (Bankr. N.D. Ga. 2008).

64.     Thus the "facts of each request will determine whether relief is appropriate under the circumstances."  In re Sonnax Industries, Inc., 907 F.2d at 1286, quoting H.R.Rep. No. 95–595, at 343–44 (1977), reprinted in 1978 U.S.C.C.A.N. 6300).  "The burden is on the moving party to make an initial showing of 'cause' for relief from the stay."  In re Mazzeo, 167 F.3d 139, 142 (2nd Cir. 1999). Only if the movant makes such a showing does any burden shift to the debtor; absent a showing of cause, the court should simply deny relief from the stay.  See In re Boodrow, 126 F.3d 43, 48 (2nd Cir. 1997).

65.     In Sonnax, the U.S. Court of Appeals for the Second Circuit established a set of twelve factors that have become the standard by which courts in this Circuit consider whether to modify the automatic stay[9].

---

[9] The Sonnax factors are the following:

  (1) whether relief would result in a partial or complete resolution of the issues;  (2) lack of any connection with or interference with the bankruptcy case;  (3) whether the other proceeding involves the debtor as a fiduciary;  (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;  (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties;  (7) whether litigation in another forum would prejudice the interests of other creditors;  (8) whether the judgment claim arising from the other action is subject to equitable subordination;  (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;  (10) the interests of judicial economy and the expeditious and economical resolution of litigation;  (11) whether the parties are ready for trial in the other proceeding; and  (12) impact of the stay on the parties and the balance of harms.

See In re Lehman Bros. Holdings, Inc., 435 B.R. 122, 138 (S.D.N.Y. 2010) ("Sonnax routinely referenced as the leading relief from stay precedent in this Circuit."), aff'd Sub. Nom. Suncal Communities I LLC v. Lehman Commercial Paper, Inc., 402 F. Appx 634 (2nd Vir. 2010).  Although the court in Sonnax outlined twelve factors, courts need not consider each factor, but may consider only the factors that are relevant to the particular case.   See In re RCM Global Long Term, Capital Appreciation Fund, Ltd., 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996) ("A court should…use only the factors that are deemed relevant, assigning to each factor whatever weight the court feels is appropriate.").  The Sonnax Court itself considered only four of the twelve factors as relevant, 907 F. 2d. at 1286.

66.    Assuming *arguendo* that the automatic stay extends to Aon and the Underwriters, Santa Rosa Mall respectfully submits that cause exists to modify the stay so as to allow Santa Rosa Mall to pursue claims against them, each a third-party non-debtor, on account of, *inter alia,* willful misrepresentation and breach of contact.  The remaining Sonnax factors are either inapplicable or neutral.  No factors weigh against modifying the stay.

*D.    Relief to Pursue Claims Against Aon*

67.     No less than ten of the Sonnax factors weigh in favor of modifying the automatic stay with regard to Aon.  Santa Rosa Mall submits the following causes:

   *(i)    Factor 1: Relief Would Result in a Partial or Complete Resolution of Santa Rosa Mall's Independent Non-Bankruptcy Causes of Action Against Aon.*

68.    Santa Rosa Mall seeks relief to pursue independent non-bankruptcy causes of action against Aon on account of the misrepresentations made by Aon under the *Certificate of Insurance* and the damages sustained on account of its actions—including breach of contract, willful misconduct or omissions, negligence, or delay in executing its obligations—in detriment of Santa Rosa Mall who is an additional named insured or loss payee and which retains an insurable interest over the property and consequently over the *Contract of Insurance* and the proceeds thereunder.

---

In re Sonnax Industries, Inc., 907 F.2d at 1286.  See also In re N.Y. Med. Grp., P.C., 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

69.    Aon's liability is not susceptible to determination by this Court through the claims allowance process or through an adversary proceeding because such liability is a non-core proceeding that hinges strictly on non-bankruptcy law, specifically the Puerto Rico Civil Code and the Puerto Rico Insurance Code, *infra*.

70.    Relief to allow Santa Rosa Mall to litigate its claims against Aon would result in *complete or partial relief* against said party.  Wherefore, the first <u>Sonnax</u> factor weighs in favor of granting Santa Rosa Mall relief from the stay to pursue its claims, whether known or unknown, against Aon.

(ii)    *Factor 2: Relief Would Not Interfere with the Debtors' Bankruptcy Case*

71.    At this stage of the proceedings, the Debtors' only "going concern" assets have been sold and the Debtors contemplate a Chapter 11 Liquidation Plan.  Relief to pursue non-bankruptcy claims against non-debtors (i.e., Aon) under non-bankruptcy law would not interfere with the Debtors' reorganization as no reorganization is contemplated with which to interfere.

72.    Moreover, in this instance, Aon is a third-party non-debtor whose identity or interests are not closely intertwined or related with the Debtors such that a suit against Aon would be construed essentially as a suit against the Debtors.  Aon is not a party to the *Settlement Agreement* and there is no indemnity clause against the Debtors in favor of Aon.  As such, there is no reasonable likelihood that granting the requested relief would delay distributions to creditors or cause a great harm to the estate. On the other hand, Santa Rosa Mall would continue to suffer losses if it is further delayed from seeking its claims against the Aon.

73.    Accordingly, the second <u>Sonnax</u> factor weighs in favor of Santa Rosa Mall.

(iii)    *Factor 4: A Specialized Tribunal Has Been Established*

74.    It is Santa Rosa Mall's position that Puerto Rico Courts are the proper forum with the necessary expertise to adequately pursue all causes of action against Aon.  In the present case, Santa Rosa Mall has a distinct, direct and separate cause of action against Aon based exclusively on Puerto Rico law and premised on uniquely Puerto Rico law causes of action under the Puerto Rico Civil Code and the Puerto Rico Insurance Code.

75.    Art. 3.290 of the Insurance Code of Puerto Rico provides that "[n]o insurer shall effectuate any direct insurance upon or relative to any… property or other material object of insurance that resides, is

located in or in intended to be carried out in Puerto Rico, nor any insurance related thereto, **except <u>through an authorized representative of said insurer residing in Puerto Rico</u>**, said insurance shall be executed through the manager, general agent or authorized representative of the insurer residing in Puerto Rico." 26 L.P.R.A. § 329 (emphasis and underline added).

76.     Pursuant to the *Certificate of Insurance,* Aon performed conflictive representative roles, to wit: as a "Producer" (top the first page), as an "Authorized Representative" (bottom of the first page), and as an "Agency" (top of the second, third and fourth page). <u>See</u> *Certificate of Insurance,* **Exhibit VI**.

77.     In light of the above, Santa Rosa Mall submits to this Honorable Court that the District Court for the District of Puerto Rico is a specialized tribunal with the necessary expertise to hear all causes of action arising under Puerto Rico law, most particularly in accordance with the various laws and regulations which have been approved to address the complex insurance damages issues that have arisen after Hurricanes Irma and Maria. Accordingly, the fourth <u>Sonnax</u> factor weighs also in favor of Santa Rosa Mall.

*(iv)     Factor 5: Debtors' Insurance Carrier Has Assumed Full Responsibility*

78.     The fifth <u>Sonnax</u> factor—whether the debtors' insurance carrier has assumed full financial responsibility for defending the Debtors—weighs also in favor of Santa Rosa Mall. Pursuant to the *Contract of Insurance*, Aon Policy No. PTNAM1701557 insures all liability incurred by the Debtors' as tenant or occupant under the articles of any civil code, because of damage to real and personal property by loss or damage. <u>See</u> *Contact of Insurance*, ¶ 50, p. 30. The relief requested does not affect the Debtors' rights to seek defense costs from an ensuing litigation filed by third parties. Since the present case involves a direct action by Santa Rosa Mall for damages caused to Santa Rosa Mall's insurable interest in the property insured, the present relief does not affect the Debtors' right to seek defense costs against any ensuing litigation filed by third parties, including tenants, occupants and/or visitors to the Mall.

*(v)     Factor 6: Relief Would Allow Santa Rosa Mall to Pursue Claims Exclusively Against Third Party Non-Debtors*

79.     As outlined in Factor 1 above, Santa Rosa Mall seeks relief from the automatic stay to pursue independent non-bankruptcy causes of action against Aon on account of misrepresentations allegedly made

by the latter under the *Certificate of Insurance* and the damages sustained on account of its actions—including breach of contract, willful misconduct or omissions, negligence, or deliberate delay (*mora ex lege* or *moratur in lege*[10]) in executing its obligations—in detriment of Santa Rosa Mall.

80.     Pursuant to Paragraph 39 of the *Contract of Insurance,* Aon was authorized to issue certificate(s) or evidence(s) of insurance naming additional named insured(s) or loss payee(s) for their respective rights and interests, subject always to the terms, conditions and limits of endorsements in respect of such additional interests.  See *Contract of Insurance*, p. 27, ¶ 39.

81.     On or about October 25, 2017 —that is, after the passing of Hurricane Maria— Aon emailed the *Certificate of Insurance* for Aon Policy No. PTNAM1701557 **to both Santa Rosa Mall and the Debtors**. See *Email from Aon to CCM and the Debtors dated October 25, 2017,* **Exhibit VII**.  Under the "Additional Remarks Schedule" of such *Certificate of Insurance*, Santa Rosa Mall, LLC and CCM are specifically described as loss payees to Aon Policy No. PTNAM1701557 "in accordance with the policy provisions of the Property policy with respect to" "Sears Store No. 1915 – Santa Rosa Mall, Bayamon, PR".  Id. at p. 3.

82.     Upon information and belief, ████████████████ the Debtors, ████████ ████████████████████████████████████████████████████████████████ executed a *Settlement Agreement* ████████████████████████████████████.  See *Settlement Agreement,* **Exhibit XII.**

83.     Upon information and belief, Aon provided certain insurance claim and consulting services to the Debtors following Hurricane Maria, specifically, during the period of July and November 2018, that is, **prior to the execution of the _Settlement Agreement_.**  See *Proof of Claim No. 13460.*  Specifically, and in accordance with the invoices attached to said *Proof of Claim,* Aon worked directly with Dale Menéndez, Director of Property Claims at Sears Holdings Management Corporation, ████████████████ ████████████████████████████████████████████████.  The amount involved, $95,635.25, is not an insignificant amount for consulting services provided by Aon within such a short period.

---

[10] See Art. 1054 of the Puerto Rico Civil Code, 31 LPRA § 3018.

84.    The *Proof of Claim* directly implicates that Aon was involved in the adjustment of Debtors' claim on account of the Hurricane Irma and Hurricane Maria Loss, prior to the execution of the *Settlement Agreement* and after being made aware of Santa Rosa Mall's rights under the *Lease Agreement*.   See **Exhibit III, IX**

85.    Pursuant to Art. 1210 of the Puerto Rico Civil Code, "[c]ontracts are … binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law**.**" 31 L.P.R.A. § 3375 (emphasis added).   Art. 1054 of the Puerto Rico Civil Code further states that "[t]hose who in fulfilling their obligations are **guilty of fraud, negligence, or delay**, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby." Id. (Emphasis added).

86.    Aon willfully, knowingly or recklessly participated in the misrepresentations made to Santa Rosa Mall.  In the alternative, Aon—at minimum—incurred in gross negligence by issuing and providing a false or misleading *Certificate of Insurance* naming Santa Rosa Mall as a loss payee, or by misrepresenting Santa Rosa Mall's rights under both the *Lease Agreement* and/or the *Contract of Insurance* to the Debtors and the Underwriters.  Minimal due diligence would have confirmed that Santa Rosa Mall had a claim associated with Aon Policy No. PTNAM1701557.

87.    The Debtors have not alleged that they have an obligation to indemnify Aon and no great harm would befall the estate if the stay is not extended.  On the contrary, it would be a travesty of justice if Santa Rosa Mall is not allowed to file an action against Aon because it will be tantamount to protecting Debtors' wrongdoing or mischievous post-petition acts.  On the other hand, Santa Rosa Mall would continue to suffer losses if the stay remains in place.  Accordingly, the sixth Sonnax factor favors granting Santa Rosa Mall relief.

*(vi)      Factor 7: Relief Would Not Prejudice the Interests of Other Creditors.*

88.     The Debtors' have not alleged that they have an obligation to indemnify Aon and no unusual circumstances are present to conclude that there is such identity between the Debtors and Aon that a judgment against Aon will constitute a judgment against the Debtors.

89.     Thus, the seventh Sonnax factor weighs in favor of granting relief from the stay because relief would not harm the interest of other creditors.

*(vii)     Factor 8: Relief would Not Result in a Subordinated Claim*

90.     The eighth Sonnax factor also weighs in favor of granting relief from the stay.  Santa Rosa Mall seeks relief solely to pursue independent non-bankruptcy causes of action against third-party non-debtors.  No equitable subordination would result from granting the requested relief.

*(viii)     Factor 9: The Puerto Rico Litigation Would Not Result in an Avoidable Judicial Lien*

91.     The ninth Sonnax factor, if applicable, likewise weighs in favor of granting relief from the stay.  Granting relief solely to pursue independent non-bankruptcy causes of action against third-party non-debtors would not result in a judicial lien—avoidable or otherwise—against the Debtors.

*(ix)     Factor 10: Relief will Enhance Judicial Economy and the Expeditious and Economical Resolution of Litigation*

92.     The tenth factor militates strongly in favor of relief because granting the requested relief will enhance judicial economy by facilitating the resolution of all of Santa Rosa Mall's claims under non-bankruptcy law in a single proceeding against Aon and eliminates the need for further action before this Court. See In re Cicale, 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. 2007) (noting that "in the interests of judicial economy, [] allowing [the Movant] to proceed with the Third–Party Action will not result in any unreasonable or unforeseeable delay.  Furthermore, the Court finds that allowing [the Movant] proceed with the Third–Party Action **will provide the most efficient and economical resolution of the litigation because the Third–Party Action <u>may alleviate the need for any further proceedings in the bankruptcy court</u>**.  Thus, this Sonnax Factor weighs in favor of [the Movant].") (Emphasis ours).

*(x)     Factor 12: The Balance of Harms Weighs in Favor of Santa Rosa Mall*

93.      The above-delineated factors favor the granting of Santa Rosa Mall's motion for relief as the relief requested herein will not prejudice the interests of other creditors.  By contrast, continuing the automatic stay will impose substantial hardship on Santa Rosa Mall that outweighs the potential hardships to the Debtors, if any.

94.      As previously discussed, the Debtors operated Store No. 1915 at Santa Rosa Mall since shortly after September 22, 1965 until the passing of Hurricane Maria on September 20, 2017, when it closed its doors. Store No. 1915 has remained closed and in ill-repair ever since.

95.      Critically, Store No. 1915 is, and continued to be, the "anchor store space" and the largest store at Santa Rosa Mall, acting as the main driver of customers for other tenants.  Moreover, two (2) of the four (4) main entrances to Santa Rosa Mall are through Sears, which directly impedes traffic flow.  Store No. 1915's presence in Santa Rosa Mall is so essential that lease agreements for other tenants include co-tenancy clauses directly related to Sears' operations, meaning that the longer the Demised Premises remain closed, the likelihood that other tenants will exercise their right to terminate their leases or ask to have their rents significantly reduced.  See Docket No. 2828, *Declaration of Yvette Melendez*, Exhibit "I" thereto at ¶ 6.  The damages to Santa Rosa Mall will only increase the longer Store No. 1915 remains closed and in ill repair. Moreover, because the Debtors rejected the *Lease Agreement,* Santa Rosa Mall must seek a compatible retailer to bring additional business and benefit its' remaining tenants.  The need for relief becomes an urgent matter to reduce the growing damages suffered by Santa Rosa Mall.

96.      Furthermore, Aon provided certificates of insurance to Santa Rosa Mall whose reliance on those representations have had a serious and direct impact on Santa Rosa Mall.  First, because upon the rejection of the *Lease Agreement*, the restorations of the Demised Property are now vested on Santa Rosa Mall.  See *Lease Agreement*, § 15.01, p. 44. This is the essence and main reason of the "loss payee" requirement in Section 6.02(a) of the *Lease Agreement* and the other insurance provisions in Sections 6.01-6.05, which limit the insurance proceeds to be used only to fix the Demised Premises after the substantial physical damages caused by Hurricane Maria back in September 20, 2017.

97.    The Debtors initially commenced repairs to Store No. 1915 but as of the filing of the bankruptcy petition, they were completely halted. The damages to Store No. 1915 by Hurricane Maria are substantial, and Santa Rosa Mall's most profitable seasons' sales continue to be affected.

98.    Moreover, Santa Rosa Mall stresses that the actions of Aon have directly harmed Santa Rosa Mall by outright ignoring and willfully or grossly misrepresenting Santa Rosa Mall's insurable interest rights under the *Lease Agreement* and/or the *Contract of Insurance* despite the numerous communications exchanged concerning this matter. In a balance of harms, the impact of denying relief causes substantially more harm to Santa Rosa Mall than any benefit that may be derived by the Debtors.  Thus, the final <u>Sonnax</u> factor similarly favors granting Santa Rosa Mall the limited relief requested.

### E.    *Relief to Pursue Claims Against <u>the Underwriters</u>*

99.    Likewise, no less than ten of, the <u>Sonnax</u> factors discussed above weigh in favor of annulling and/or modifying the automatic stay with regard to Underwriters.  Accordingly, Santa Rosa Mall submits that cause exists, as follows:

(i)    *Factor 1: Relief Would Result in a Partial or Complete Resolution of the Issue*

100.    Puerto Rico Courts are the only forum where the liability of the parties can be completely determined.  Allowing Santa Rosa Mall to proceed against the Underwriters provides the only opportunity for *complete or partial relief* against <u>all parties</u> in <u>one forum</u>, thus the first <u>Sonnax</u> factor militates granting relief from the stay.

101.    Courts in this District have regularly recognized that relief from the stay may be appropriate where a non-bankruptcy court is the only forum in which the rights of all parties to a dispute can be collectively and properly adjudicated.  See *e.g.* <u>In re N.Y. Med. Grp., P.C.</u>, 265 B.R. at 413 (finding that the state court's ability to grant complete relief to all parties, including third parties, weighed in favor of lifting the stay).

102.    Santa Rosa Mall has submitted *Amended Proof of Claim No. 19,755* on account of its *Contingent Claim for Insurance Proceeds*, which is premised on the same underlying facts as its claims against the Underwriters.  See *Amended Proof of Claim No. 19,755*.  Assuming the Debtors' intend to contest

*Amended Proof of Claim No. 19,755*, Santa Rosa Mall's claims will be liquidated in the proof-of-claim adjudication process. By contrast, the liability of the Underwriters is not susceptible to determination by this Court through the proof-of-claim adjudication process or through an adversary proceeding because such liability vests strictly on Puerto Rico law, specifically the Puerto Rico Civil Code and the Puerto Rico Insurance Code, as discussed below.

103. If the stay is not modified with regard to the Underwriters, Santa Rosa Mall will be forced to litigate essentially identical claims against Aon, then again against the Underwriters upon the effective date of Debtors' *Modified Second Amended Joint Chapter 11 Plan []* (the "*Plan*", Docket No. 4704). By contrast, if the stay is modified, the U.S. District Court for the District of Puerto Rico will be able to jointly resolve the issue as to both the Underwriters and Aon in a single proceeding.

104. Accordingly, the first <u>Sonnax</u> factor weighs heavily in favor of Santa Rosa Mall.

*(ii)   Factor 2: Relief Would Not Interference with the Debtors' Business or Reorganization*

105. At this stage in the proceedings, the Debtors' only "going concern" assets have been sold and the Debtors contemplate a Chapter 11 Liquidation Plan. Relief to pursue non-bankruptcy claims against the Underwriters under applicable non-bankruptcy law would not interfere with the Debtors' reorganization as no reorganization is contemplated with which to interfere.

106. It is the Debtors' contention that relief to pursue direct action claims against the Underwriters under non-bankruptcy law would directly impact and/or harm the Debtor on account of the *Settlement Agreement's* indemnity clause which purports to hold harmless, indemnify, and defend the Underwriters from any and all actions, demands and claims arising under Aon Policy No. PTNAM1701557. Santa Rosa Mall submits that it will not pursue claims directly against the Debtors, moreover, the mere fact that the Debtors *may* or *may not* incur costs in connection with a "potential" litigation initiated by the Underwriter does not constitute "interference". Additionally, should the Debtors incur costs it will be on account of their own misdeeds, negligence, and/or reckless omissions regardless of the forum in which those claims are pursued and determined. By way of example, the Debtors will not incur costs in the Adversary Proceeding no longer

pending before this Court, which has been dismissed by stipulation.  See Adv. Proc. No. 19-ap-08266, Docket No. 11.

107.    Moreover, as held in Riggs v. Palmer, 115 N.Y. 506, 506 (1889), "[n]o one shall be permitted to profit by his own fraud, to take advantage of his own wrong, to [fund] any claim upon his own inequity or to acquire property by his own crime."  For "[i]t is a principle of the widest application that equity will not permit one to rely on his own wrongful act, as against those affected by it but who have not participated in it, to support his own asserted legal title or to defeat a remedy which except for his misconduct would not be available." Deitrick v. Greaney, 309 U.S. 190, 196 (1940), citing United States v. Dunn, 268 U.S. 121, 133 (1925) and Independent Coal & Coke Co. v. United States, 274 U.S. 640, 648 (1927).

108.    In this instance, no great harm would befall the estate if the stay is lifted; the only potential prejudice being an increase in litigation costs which does not rise to the level of great prejudice.  On the other hand, in the balance of equities, the harm borne by Santa Rosa Mall would be greater if the stay remains in place, especially considering the present state of Store No. 1915.

109.    Ultimately, as expressly stated in Section 13.4(iii) of the *Plan*, relief to pursue claims directly against the Underwriters is contemplated.  In its pertinent part, Section 13.4(iii) reads:

> [O]n the Effective Date [of the *Plan*] … (iii) **the automatic stay**… and the injunctions set forth in the Plan, if and to the extent applicable, **shall be deemed lifted without further order of this Court**, **solely to permit**: (a) claimants with … direct action claims against an insurer under applicable non-bankruptcy law to proceed with their claims; (b) insurers to administer, handle, defend, settle, and/or pay … (II) **claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law**, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing…

Docket No. 4704, § 13.4(iii), pp. 77-78 (emphasis added).  For the sake of clarity, "Insurer" is defined as "any company or other entity that issued an Insurance Contract, any third party administrator, and any respective predecessors and/or affiliates thereof." Id. at § 1.82, p. 14.  "Insurance Contract" is defined as "all insurance policies that have been issued at any time to or provide coverage to any of the Debtors (including, but not limited to, any D&O Policies) and all agreements, documents or instruments relating thereto..." Id. at § 1.81, p. 14.

110.    Further, Santa Rosa Mall highlights Section 13.4(iii)(c) of the *Plan* which specifically states that, on the effective date of the *Plan,* "the automatic stay… shall be deemed lifted … to permit … **Insurers to draw against any or all of the collateral or security provided by or on  behalf of the Debtors** at any time and to hold the proceeds thereof as security for the obligations of the Debtors … **and/or apply such proceeds to the obligations of the Debtors** … **under the applicable Insurance Contracts, in such order as the applicable Insurer may determine** …". Docket No. 4704, § 13.4(iii)(c), p. 78 (emphasis added).

111.    In summary, the relief requested would not interfere with the Debtors' reorganization as no reorganization is contemplated with which to interfere; any potential litigation costs to be incurred by the Debtors on account of their own misdeeds do not constitute interference; and relief would only expedite what the Debtors' already contemplate in Section 13.4(iii)(c) of the *Plan*.  Consequently, the second <u>Sonnax</u> factor weighs heavily in of the relief requested.

<i>(iii)    Factor 4: A Specialized Tribunal Has Been Established</i>

112.    It is Santa Rosa Mall's position, as aforestated, that Puerto Rico Courts are the proper forum with the necessary expertise wherein Santa Rosa Mall may adequately pursue <u>all of the causes of action it has at law against the Underwriters</u>.  Without exception, the claims to be asserted by Santa Rosa Mall against them hinge exclusively on Puerto Rico law and are premised on uniquely Puerto Rico law causes of action under both the Civil Code of Puerto Rico and the Insurance Code of Puerto Rico.

113.    The fact that the causes of action at issue are governed by foreign law weighs in favor of granting the relief requested.  While a close or novel question of law is not presented here, except for the gravity of Hurricanes Irma and María's severity that demanded special legislation and regulations, the cause of action at issue arises under the Insurance Code of Puerto Rico and **may only be exercised in Puerto Rico**, thus, weighing heavily in favor of granting relief.

114.    Under Puerto Rico law, an injured party has the right to bring a suit against the insurer in addition to or in place of a suit solely against the insured.  Specifically, Art. 20.030(1) of the PR Insurance Code, commonly referred to as the "direct action statute", provides that:

> **Any individual sustaining damages and losses shall have**, at his option, **a direct action against the insurer under the terms and limitations of the policy**, which action he may exercise against the insurer only or against the insurer and the insured jointly. **<u>The direct action against the insurer may only be exercised in Puerto Rico</u>**. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured.

26 L.P.R.A. § 2003(1) (official translation, emphasis and underline added). <u>See also</u> <u>Marina Aguila v. Den Caribbean, Inc.</u>, 490 F. Supp. 2d 244, 245 (D.P.R. 2007).

115.    In the present case, Santa Rosa Mall has a distinct and separate cause of action against the Underwriters under Art. 20.030 of the Insurance Code of Puerto Rico, which may only be exercised in Puerto Rico.  Similarly, since there is privity of contract between Santa Rosa Mall and the Underwriters, Santa Rosa Mall has a right to bring a direct action against the Underwriters under Art. 1209 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3374, which states in pertinent part that "[s]hould the contract contain any stipulation in favor of a third [party], he may demand its fulfilment, provided he has given notice of his acceptance to the person bound before it may have been revoked."  31 L.P.R.A. § 3374 (West translation). Accordingly, Puerto Rico Courts are vested with the necessary expertise for Santa Rosa Mall to pursue <u>all the causes of action it has at law against the Underwriters</u>.  <u>See</u> *e.g.* <u>Santiago v. United States Fidelity & Guaranty Co.</u>, 183 F. Supp. 676 (D.P.R. 1960) (recognizing action brought against an insurer under Puerto Rico's direct-action statute); <u>M.R. (Vega Alta), Inc. v. Caribe General Elec.</u> Products, Inc., 31 F. Supp. 2d 226, 238 (D.P.R. 1998) (recognizing a cause of action in favor of third-party beneficiaries to a contract under Art. 1209 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3374);  <u>Real Legacy Assurance Co. v. Santori Trucking, Inc.</u>, 2008 WL 11357822, at *3 (D.P.R. 2008) (same).

116.    Santa Rosa Mall submits that a Puerto Rico non-bankruptcy tribunal should be considered as the optimal forum to hear causes of action arising under the Insurance Code of Puerto Rico.  Accordingly, the fourth <u>Sonnax</u> factor weighs heavily in favor of Santa Rosa Mall's request for relief.

    *(xi)    Factor 5: The Underwriters have Assumed Full Responsibility*

117.    Pursuant to the *Contract of Insurance*, Aon Policy No. PTNAM1701557 insures all liability incurred by the Debtors' as tenant or occupant under the civil code, because of damage to real and personal property by loss or damage.  <u>See</u> *Contact of Insurance*, ¶ 50, p. 30.  Further, in the event the Underwrites fail to pay an amount claimed to be due, the Underwrites agreed to submit to the jurisdiction of any court of competent jurisdiction within the United States and agreed to comply with all requirements necessary to give such jurisdiction.  <u>See</u> *Contact of Insurance*, ¶ 28, p. 25.  As such, the Underwriters have assumed full responsibility for the Debtors' actions and, as further disclosed below, are personally liable under the Insurance Code of Puerto Rico.  Accordingly, the fifth Sonnax factor—whether the debtors' insurance carrier has assumed full financial responsibility for defending any litigation in the event the Debtors are sued under the liability coverage— weighs also in favor of Santa Rosa Mall.  Also, as stated above, since the present case involves a direct action by Santa Rosa Mall for damages caused to Santa Rosa Mall's insurable interest in the property insured, the present relief does not affect the Debtors' right to seek defense costs against any ensuing litigation filed by third parties, including tenants, occupants and/or visitors to the Mall.

(iv)    *Factor 6: Relief Would Allow Santa Rosa Mall to Pursue Claims Exclusively Against Third Party Non-Debtors*

118.    Santa Rosa Mall seeks relief to pursue independent non-bankruptcy causes of action against the Underwriters on account of, *inter alia*, loss or damage to an insured property and breach of contract.

119.    Upon information and belief, ███████████████████ the Debtors executed a *Settlement Agreement* with certain insurance Underwriters, ██████████████████████████████████████ The *Settlement Agreement* was executed without Santa Rosa Malls' knowledge, authority, consent or input, despite Santa Rosa Malls' multiple requests and communications to that effect.  We bring to the Court's attention that the *Settlement Agreement* was executed ████████████████████████████ ████████████████████████████████████████████████████████ received and responded to letters from and to Santa Rosa Mall that confirmed Santa Rosa Mall's rights under the *Contract of Insurance*, the *Lease Agreement,* and the *Certificate of Insurance*.  <u>See</u> **Exhibit XII.**  The

Debtors' knowledge that Santa Rosa Mall is an additional insured and/or loss payee and/or has an insurable interest over the insurance proceeds from Store No. 1915 is therefore unquestionable.

120.    Under Puerto Rico Law, an obligation may be extinguished, *inter alia*, by payment.  See 31 L.P.R.A § 3151.  "A debt shall not be considered as paid until the full amount of the thing has been delivered…" 31 L.P.R.A. § 3161.  To that effect, "[a]ny person, whether he has an interest or not in the fulfillment of the obligation... can make the payment." 31 L.P.R.A. § 3162.  Notwithstanding, "[p]ayment must be made to the person in whose favor the obligation is constituted, or to another authorized to receive it in his name."  Art. 1116 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3166.  Ergo, while "payment made in good faith to the person who is in possession of the credit shall release the debtor," 31 L.P.R.A. § 3168, payment otherwise made to a third person is deemed invalid *unless* "**it may have been beneficial to the creditor**." 31 L.P.R.A. § 3167 (emphasis added).  See also CMI Capital Market Investment, LLC v. Municipality of Bayamon, 410 F.Supp.2d 61, 74 (D.P.R. 2006) (recognizing the "improper payment" doctrine of Art. 1116 of the Puerto Rico Civil Code.  "[T]he only legal effect of such "improper payment" would be that the contractual obligation set forth in the [agreement] remains in full force and effect and that payment remains due.").  Santa Rosa Mall submits that payment made under Aon Policy No. PTNAM1701557 was improper, despite the Underwriters statements to the contrary.  See *Letter from AIG to CCM dated July 23, 2019,* **Exhibit XVII**, p. 3.

121.    The Underwriters willfully, knowingly or recklessly participated in the misrepresentations made by the Debtors to Santa Rosa Mall, as they were timely informed by Santa Rosa Mall of its claim concerning the insurance proceeds.  See **Exhibit IX.**  In the alternative, the Underwriters incurred in gross negligence by executing the *Settlement Agreement,* blatantly disregarding Santa Rosa Mall's rights as additional named insured or loss payee.

122.    The Underwriters have a statutory obligation to indemnify Santa Rosa Mall under the Insurance Code of Puerto Rico and under the Civil Code of Puerto Rico on account of the harm and damage caused by the Underwriters for knowingly breaching and/or violating Santa Rosa Mall's subjective rights under both the *Contract of Insurance* and the *Lease Agreement.*  Accordingly, the sixth Sonnax factor favors

granting Santa Rosa Mall relief to pursue independent non-bankruptcy causes of action against the Underwriters.

> (v)    *Factor 7: Relief Would Not Prejudice the Interests of Other Creditors.*

123.    The seventh <u>Sonnax</u> factor supports relief as creditors will modestly benefit rather than be harmed.

124.    Santa Rosa Mall's claims against the Underwriters will need to be resolved in one forum or another, with or without the relief sought and the Debtors may incur costs regardless of the forum in which Santa Rosa Mall's claims are pursued and determined.  As stated above, the mere fact that the Debtors may or may not incur litigation costs <u>on account of their own misdeeds and misrepresentations</u> does not alone constitute prejudice.  Notwithstanding, even if litigation costs were to constitute prejudice, the mere fact that such cost would arise *regardless* confirms that litigation costs alone cannot serve as a basis for prejudice.  On the same vein, relief would benefit other creditors by avoiding the costs of duplicative litigation.  Wherefore, if relief is granted the litigation costs to be borne by the Debtors will either—*at most*—be lower or—at *minimum*—remain neutral to those already projected.

> (vi)    *Factor 8: Relief from the Stay would Not Result in a Subordinated Claim.*

125.    The eighth <u>Sonnax</u> factor also weighs in favor of granting relief. Santa Rosa Mall seeks relief solely to pursue independent non-bankruptcy causes of action against third-party non-debtors.  No equitable subordination would result from granting the requested relief.

> (vii)    *Factor 9: The Puerto Rican Litigation would Not Result in an Avoidable Judicial Lien*

126.    The ninth <u>Sonnax</u> factor, if at all relevant, likewise weighs in favor of granting relief as by doing so solely to pursue independent non-bankruptcy causes of action against third-party non-debtors would not result in a judicial lien—avoidable or otherwise—against the Debtors.

> (viii)    *Factor 10: Relief from the Stay will Enhance Judicial Economy and the Expeditious and Economical Resolution of Litigation*

127.    The tenth factor militates strongly in favor of Santa Rosa Mall in order to avoid costly duplicative litigation.

128.    The Debtors are liquidating. Therefore, for Santa Rosa Mall to continue its claims against the Debtors is a waste of both parties' judicial resources, allowance of *Amended Proof of Claim No. 19,755* aside.

129.    Judicial economy is best served by allowing Santa Rosa Mall to pursue independent non-bankruptcy causes of action against both the Underwriters and Aon *jointly* in a single forum.  See In re Cicale, 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. 2007) (noting that "in the interests of judicial economy, [] allowing [the Movant] to proceed with the Third–Party Action will not result in any unreasonable or unforeseeable delay.  Furthermore, the Court finds that allowing [the Movant to] proceed with the Third–Party Action **will provide the most efficient and economical resolution of the litigation because the Third–Party Action <u>may alleviate the need for any further proceedings in the bankruptcy court</u>**.  Thus, this Sonnax Factor weighs in favor of [the Movant]."

130.    Absent relief, Santa Rosa Mall will be compelled to try the same law and facts twice, first against Aon and again (following the effective date of Debtors' *Plan*) against the Underwriters, a circumstance that should be avoided.  Declining to grant relief could result in inconsistent judgments concerning the same law applied to the same facts. Thus, the relief requested by Santa Rosa Mall would eliminate that risk and enhance judicial economy.

131.    For the forgoing reasons, the tenth <u>Sonnax</u> factor militates strongly in favor of relief from the stay because granting the requested relief is the only viable avenue for avoiding costly duplicative litigation.

*(ix)    Factor 12: The Balance of Harms Weighs in Favor of* Santa Rosa Mall

132.    We incorporate by reference the arguments presented in *Subsection D (ix)* ("Factor 12") above as if fully transcribed herein.  Any further delay in allowing Santa Rosa Mall to file its claims against the Underwriters is damaging to all parties. It would be a travesty of justice not to allow Santa Rosa Mall relief so it may pursue some semblance of justice.

<u>Prayer for Relief</u>

WHEREFORE, Santa Rosa respectfully requests that the Court grant the relief requested herein and declare the automatic stay inapplicable and/or modify the automatic stay so that Santa Rosa Mall may seek non-bankruptcy relief against Aon and the Underwriters.

Respectfully submitted.
Dated: September 11, 2019.

**Ferraiuoli** LLC

390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001

-and-

221 Ponce de León Avenue
5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001

*/s/ Sonia E. Colón Colón*
Sonia E. Colón Colón
Admitted *Pro Hac Vice*
USDC-PR No. 213809
scolon@ferraiuoli.com

*/s/ Gustavo A. Chico-Barris*
Gustavo A. Chico-Barris
NY State Bar No. 929147
USDC-PR No. 224205
gchico@ferraiuoli.com

-and-

Ríos Gautier & Cestero C.S.P.
27 González Giusti Street, Suite 300
Guaynabo, PR 00968-3076
Telephone: (787) 753-7750
Facsimile: (787) 759-6768

/s/Carlos Ríos Gautier
Carlos Ríos Gautier
USDC-PR No. 112606
Pending *Pro Hac Vice*
riosgautierlaw@yahoo.com

Attorneys for
*Santa Rosa Mall, LLC*