# Contract of Insurance

**Insured:**      SEARS HOLDINGS CORPORATION

**Policy Number:**      PTNAM1701557

**Period:**      1st June 2017 to 1st June 2018

**Type:**      All Risk Of Direct Physical Loss Or Damage
Including Flood, Earthquake and Boiler &
Machinery Insurance.

**Limit:**      USD440,000,000 (Excess of USD10,000,000
Non Stock Deductible)

**Aon UK Limited**
Registered Office | The Aon Centre | The Leadenhall Building | 122 Leadenhall Street | London | EC3V 4AN
Registered in England & Wales No. 210725 | VAT Registration No. 480 8401 48
Aon UK Limited is authorised and regulated by the Financial Conduct Authority



# Information for Aon Clients

This document is the Insurer agreed Contract of Insurance which provides evidence of cover in accordance with the heading "Insurer Contract Documentation" in the Risk Details section.

The Contract Administration and Advisory Sections facilitate the administration of the placement between the Insurer and Broker.

**To ensure that the insurance coverage we have placed for you meets your needs, please review this document carefully (including but not limited to applicable limits, sub-limits, deductibles, terms and conditions).  In the event that this document contains errors or otherwise does not meet your needs, please advise us immediately as this will reduce the chance that you later sustain uninsured losses.  This also applies to any queries you may have about the document.  Unless we hear from you to the contrary within 30 days, we and you will deem the document provided to you fully conforms with your needs and instructions.**

### Remuneration

Aon may act as a Managing General Agent (MGA) on behalf of an Insurer for a single product, product line or their participation.  In addition to any commission earned by the Global Broking Centre (GBC), the MGA is remunerated for the work undertaken on behalf of the Insurer and this may include profit or contingent commission.

Any participation placed via such an arrangement can be clearly identified as Aon Underwriting Managers (AUM) or Maven Underwriters on behalf of the applicable Insurer within the Security Details Section.

Aon may earn other remuneration from Insurers in respect of administration and management activities it undertakes at the time of placement, or during the period of the Insurance, in relation to specific products and facilities which facilitate the Insurers' own activities. Insurers may also ask the GBC to place facultative reinsurance, and may independently remunerate the GBC for these services through the payment of commission.

Further details will be provided  by Aon on request.

### Taxes

Over the course of the placement of your Insurance Aon collect information relating to the underlying risks and the location of such risks. This information can assist in identifying premium allocations by country/territory and to produce tax schedules for inclusion in contract documentation. It is your obligation to ensure the accuracy of such information.

Where applicable, Aon will collect the tax amounts due and pass them to the Insurer(s) to settle with the relevant tax authorities. Insurers will be responsible for confirming that the taxes identified for collection in the tax schedule are correct. In certain circumstances, taxes may be payable by the Insured . Whilst we endeavour to identify such taxes, please note that Aon is not a tax adviser and it is your responsibility to ensure that such taxes are correctly identified and remitted. If you require independent advice on your tax liabilities, you should consult with your tax adviser.

It is important to note that where a tax schedule is completed this merely represents a proposed apportionment of premium calculated on a pro rata basis, and utilises rates that Aon has taken from tax calculation systems, as at the date the tax schedule was produced. The purpose of tax schedules is to provide information to Insurers which they may, if they wish, use in establishing an apportionment of premium for taxation and legislative reporting purposes.

This procedure in no way changes Insurers' responsibilities for making this calculation and/or ensuring that the correct tax rates are applied.

Policy Number:PTNAM1701557

# RISK DETAILS

**UNIQUE MARKET REFERENCE**     B1526PTNAM1701557

**NAMED INSURED**     The Sears Holdings Corporation and any subsidiary, affiliated, associated, or allied company, corporation, firm, organization, partnership, joint venture, joint lease, or joint operating agreement as now or hereafter constituted or acquired, as their respective interest may appear; and any other party for which the Insured has the responsibility for providing insurance, as their respective interest may appear.

but in no event shall this include the following entities or their subsidiaries:

Sears Canada Inc.
Sears Technology Services, Inc.
ST Holdings, Inc.

Whose mailing address is:

Sears Holdings Corporation
Risk Management Department
3333 Beverly Road E3-237A
Hoffman Estates, Illinois 60179

**all hereafter referred to as the "Insured."**

**POLICY TERM**     This policy attaches and insures from June 1, 2017 to June 1, 2018 beginning and ending at 12:01AM Local Standard Time at the location of the property involved.

**TERRITORY**     This policy insures worldwide; except as respects the following countries    Afghanistan, Angola, Bosnia-Herzegovina, Burma (Myanmar), Congo (The Democratic Republic Of Congo or formally known as Zaire), Croatia, Cuba, El Salvador, Guam, Haiti, Iran, Iraq, Laos, Lebanon, Liberia, Libya, Nicaragua, North Korea, Serbia-Montenegro, Slovenia, Sudan, Syria, Zimbabwe, Yugoslavia and/orterritories formerly known as Yugoslavia;, or any country where trade relations are unlawful as determined by the Government of the United States of America or it's agencies, unless the Insured has been granted a U.S. Treasury Department Foreign Assets Control license to do business in that country and then coverage is provided only to the extent legally permitted as a result of the issuance of the license, subject to all other terms and conditions found in this policy.

**PERILS INSURED (LOSS OR DAMAGE INSURED)**     All Risk of direct physical loss or damage including flood earthquake, Boiler and Machinery Insurance as defined in Contract Wording and Endorsements.

**LOSS OR DAMAGE EXCLUDED**     As fully detailed in Contract Wording and Endorsements.

**PROPERTY AND INTERESTS INSURED**     As fully detailed in Contract Wording and Endorsements.

---

CONFIDENTIAL                                        SEARS_SantaRosaMall 00000003

Policy Number:PTNAM1701557

| | |
|---|---|
| **SPECIAL CONDITIONS** | As fully detailed in Contract Wording and Endorsements. |
| **PROPERTY EXCLUDED** | As fully detailed in Contract Wording and Endorsements. |
| **VALUATION** | As fully detailed in Contract Wording and Endorsements. |

**LIMITS OF LIABILITY**

USD 440,000,000 per occurrence

In excess of:

USD 10,000,000 per occurrence Non-Stock Deductible

Which in turn to pay excess of Deductibles and limited by Program Sublimits as detailed below.

When a Program Sublimit is shown as applying in the Aggregate During Any Policy Year, the Limit of Liability detailed above shall also be applied in the Aggregate During Any Policy Year separately for each applicable Program Sublimit and shall not exceed such Program Sublimit during any policy year.

**PROGRAM SUBLIMITS**

| | |
|---|---|
| USD100,000,000 | per **Occurrence** and in the aggregate for the period in full as respects the peril of Earthquake |
| USD100,000,000 | per **Occurrence** and in the aggregate for the period in full as respects the peril of **Flood** |
| USD100,000,000 | per **Occurrence** as respects the peril of **Named Windstorm for the entire States of; Florida, Hawaii and Tier 1 counties** |
| USD200,000,000 | per **Occurrence** as respects Demolition and Increased Cost of Construction |
| USD200,000,000 | per **Occurrence** as respects Extra Expense |
| USD100,000,000 | per **Occurrence** as respects Automatic Coverage (120 Days), except: |
| USD100,000,000 | per **Occurrence** as respects Service Interruption / Off Premises Power |
| USD100,000,000 | per **Occurrence** as respects Errors and Omissions |
| USD50,000,000 | or 25% of the actual physical damage loss whichever is lesser, for Debris Removal |
| USD5,000,000 | per **Occurrence** as respects Fine Arts |
| USD100,000,000 | per **Occurrence** as respects **Miscellaneous Unnamed** Locations including Exhibition, Fair or Tradeshow; |
| USD3,000,000 | per **Occurrence** as respects Professional Fees; |

CONFIDENTIAL                                         SEARS_SantaRosaMall 00000004

Policy Number:PTNAM1701557

| | |
|---|---|
| USD2,500,000 | per **Occurrence** and in the aggregate for the period in full as respects Decontamination and Clean-up |
| USD50,000,000 | per **Occurrence** as respects Leasehold Interest |
| USD50,000,000 | per **Occurrence** as respects Rental Income and Rental Value |
| USD200,000,000 | per **Occurrence** as respects Transit |
| USD100,000,000 | per **Occurrence** as respects Property in the Course of Construction |
| USD100,000,000 | or 90 days, whichever is less, as respects Ingress/Egress – within 10 statute miles of an insured location. |
| USD100,000,000 | or 90 days, whichever is less, as respects Interruption by Civil or Military Authority – within 10 statute miles of an insured location. |
| USD5,000,000 | per **Occurrence** as respects Extended Increased Cost of Construction |

**BELOW SUBLIMITS ONLY APPLY TO HOFFMAN ESTATES, IL LOCATIONS:**

| | |
|---|---|
| USD5,300,000 | per **Occurrence** as respects Gross Earnings as respects Hoffman Estates, IL |
| USD1,000,000 | per Occurrence as respects Gross Earnings as respects 7615 Golden Triangle Drive, Eden Prairie, MN 55344 |
| USD10,000,000 | per **Occurrence** as respects Contingent Time Element |

**TIME LIMITS (Applicable to All Coverages)**:

| | |
|---|---|
| Ninety (90) consecutive days | as respects Civil or Military Authority. |
| Ninety (90) consecutive days | as respects Ingress/Egress. |
| One Hundred Twenty (120) | as respects the Automatic Coverage provision. |
| 180 days | per occurrence as respects Extended Period of Indemnity |

**DISTANCE LIMITS (Applicable to All Coverages):**

| | |
|---|---|
| 10 statute miles | as respects Civil or Military Authority |
| 10 statute miles | as respects Ingress/Egress. |

The total amount to be indemnified under this policy and/or any

CONFIDENTIAL                                        SEARS_SantaRosaMall 00000005

Policy Number:PTNAM1701557

admitted version of this policy issued by the insurer shall not exceed the overall limit or applicable sublimits stated in this policy

**PROGRAM DEDUCTIBLES**

In each case of loss covered by this policy, the Company will be liable only if the Insured sustains a loss in a single **Occurrence** greater than the applicable deductible(s) specified below, and only for its share of that greater amount.

Unless otherwise stated below, when this policy insures more than one location, the deductible will apply against the total loss covered by this policy in any one **Occurrence**.

All losses or damages arising out of any one **Occurrence** shall be adjusted as one loss, and from the amount of such adjusted loss shall be deducted the sum USD5,000,000 per **Occurrence**, except:

The following shall apply for losses arising from the specific critical catastrophic perils below:

A.   Five percent (5%) of the value per unit of insurance at the time when such loss occurs for insured property situated in a **Flood** zone A and V for **Flood**, subject to a minimum of USD5,000,000 in total for all units of insurance per **Occurrence**.   This deductible shall apply only to those units of insurance suffering a loss in the **Occurrence**.  However, this deductible shall not apply to insured property located outside of the above designated **Flood** zone.

B.   Five percent (5%) of the value per unit of insurance at the time when such loss occurs at locations within the state of California for the peril of Earthquake subject to a minimum of USD5,000,000 in total for all units of insurance per **Occurrence**.   This deductible shall apply only to those units of insurance suffering a loss in the **Occurrence.**

C.   Five percent (5%) of the value per unit of insurance at the time when such loss occurs at locations within the entire state of Florida and Tier 1 counties as more fully defined in the policy for the peril of **Named Windstorm** subject to a minimum of USD5,000,000 in total for all units of insurance per **Occurrence**. This deductible shall apply only to those units of insurance suffering a loss in the **Occurrence.**

D.   Three percent (3%) of the value per unit of insurance at the time when such loss occurs at locations within the entire state of Hawaii for the peril of **Named Windstorm** subject to a minimum of USD5,000,000 in total for all units of insurance per **Occurrence**. This deductible shall apply only to those units of insurance suffering a loss in the **Occurrence.**

The amount of the deductibles above shall be determined by applying the above percentages, separately to each of the following units of insurance:

(1)   Each building or structure, not including the value of its foundations, which has sustained loss or damage;

(2)   Personal property within each building or structure if that personal property sustains loss or damage;

(3)   Personal property in the open that sustains loss or damage;

CONFIDENTIAL                                            SEARS_SantaRosaMall 00000006

Policy Number:PTNAM1701557

As to the calculation of deductibles under Paragraphs 4A, 4B, 4C and 4D, above, the insured shall have the option to determine what unit(s) of insurance shall be included in its loss. Additionally, stock and/or inventory is not to be considered one of the units of insurance in Paragraphs 4A, 4B, 4C and 4D above, unless the underlying Stock Throughput limits have been exhausted.

**WAITING PERIOD**

Service Interruption                                   ( 24 ) hours

**Deductible Clarifications:**

(1) If two or more deductible amounts in this policy apply to a single **Occurrence**, the total to be deducted shall not exceed the largest deductible.

(2) The deductible amounts specified above shall not apply to general average contributions and salvage charges.

(3) If other insurance applies to the same property as insured hereunder, and to the extent recovery is made from such other insurance, the deductible under this policy shall be reduced by such recovery, but in no event shall the deductible under this policy be less than shown in the policy. If recovery from such other insurance is greater than the deductible in this policy, then the deductible under this policy shall not apply.

(4) Whenever mortgage or lease conditions require insurance protection without deductibles, or with deductibles less than are provided herein, **Insurers** agree to make payment without consideration of the applicable deductible. The Insured agrees to reimburse the **Insurers** for any payments so made within 30 days of such payment.

(5) This Policy recognises there are separate Stock Throughput Policies, with coverage no greater than this Policy, in effect for the Policy Term with a USD50,000,000 per Location, per Occurrence policy limit subject to annual aggregates for Flood, Earthquake and Named Windstorm.
a) In the event of a loss occurrence insured under both this Policy and the Stock Throughput Policy, the USD5,000,000 deductible within this Policy only applies, in the event the stock / inventory loss is less than USD5,000,000. The amount then applied is only for the difference between USD5,000,000 and the amount of the stock / inventory damage.

b) Deductibles 4A, 4B, 4C and 4D still apply but only for the difference between USD5,000,000 (or the amount of the stock/inventory loss if less than USD5,000,000) and the applicable percentage deductibles.

This clause will not apply, in the event the Stock Throughput Policies are completely exhausted.

**NON-STOCK DEDUCTIBLE**

This policy also recognises that the insured shall retain an additional non-stock deductible in the amount of USD10,000,000 per occurrence excess of the deductibles listed in the Deductibles section of the policy

CONFIDENTIAL                                   SEARS_SantaRosaMall 00000007

Policy Number:PTNAM1701557

above. This non-stock deductible applies on the non-stock portion of the loss and shall also be aggregated annually and separately, as respects the perils of Earthquake and Flood.

**LOSS ADJUSTORS**  Each and every loss expected to exceed the standard deductible will be adjusted by Vericlaim located at 1833 Centre Pointe Circle, Suite 139, Naperville, IL 60563-1484; unless otherwise agreed by the Insured and the Insurer.

**CONDITIONS**  Contract Wording and Endorsements as agreed by Lex-London a Division of AIG Europe Limited on Aon Policy Number PTNAM1701557, which contains the following endorsements:

Endorsement No.1 - Earthquake and Wind Zones
Endorsement No.2 - Participation Endorsement
Endorsement No.3 - Biological or Chemical Materials Exclusion – NMA 2962
Endorsement No.4 - Asbestos Endorsement – LMA 5019 (Modified) – Listed Perils: Fire; Explosion; Lightning; Windstorm; Hail; Flood; Collapse; Direct Impact of Vehicle; Aircraft or Vessel; Riot or Civil Commotion; Vandalism or Malicious Mischief; or Accidental Discharge of Fire Protective Equipment
Endorsement No.5 - Electronic Data Endorsement A- NMA 2914 (Modified): Sublimit: USD25,000,000 Listed Perils: Fire, Explosion, Lightning, Earthquake, Falling Aircraft, Flood, Smoke, Impact Damage, Windstorm or Tempest, Sprinkler Leakage, Collapse, Theft.
Endorsement No.6 - Mold, Mildew and Fungus Clause – Sublimit: USD2,500,000 per occurrence and in the aggregate for the period.
Endorsement No.7 - Application of Sublimits – LMA 5130 (Modified)
Endorsement No.8 - Extended Increased Cost Of Construction

**SUPPLEMENTAL CLAUSES**  The following endorsements are detailed in Supplemental Clauses:

Sanction Limitation and Exclusion Clause - LMA3100
Service of Suit Clause (USA) - NMA1998
Terrorism Exclusion Endorsement - NMA2920
U.S. Terrorism Risk Insurance Act of 2002 as amended - Not Purchased Clause - LMA5219
Illinois Surplus Lines Notice - LMA9046

Premium Payment Condition (Time on Risk basis) - PPC5 4/86. Date for the payment of premium: 30 Jul 2017

**CHOICE OF LAW AND JURISDICTION**  Choice of jurisdiction to be determined in court of competent jurisdiction as stated in the Service of Suit Clause in Supplemental Clauses.  Choice of law to be determined by same court.

**PREMIUM**  USD 5,900,000    (100%) Annual in respect of All Risks.

Split as follows:

USD 5,737,750    (100%) Annual In respect of USA Exposure
USD 141,010       (100%) Annual In respect of Puerto Rico Exposure

CONFIDENTIAL                                                    SEARS_SantaRosaMall 00000008

Policy Number:PTNAM1701557

|  |  |  |
|---|---|---|
| | USD 13,570 | (100%) Annual In respect of US Virgin Islands Exposure |
| | USD 7,670 | (100%) Annual In respect of Guam Exposure |

**PAYMENT TERMS**

Premium payment to underwriters to be effected by Aon Limited on behalf of the (Re)Insured in line with terms of trade as defined herein in respect of Lloyd's or XIS Underwriters or as per accounting procedures in operation with underwriters hereon.

**TAXES PAYABLE BY (RE)INSURED AND ADMINISTERED BY UNDERWRITERS**

Nil.

**RECORDING, TRANSMITTING & STORING INFORMATION**

All documentation and information to be recorded and/or transmitted electronically and stored electronically in Aon Limited repositories.

**INSURER CONTRACT DOCUMENTATION**

This document details the contract terms entered into by the (Re)Insurers and constitutes the contract document.

**NOTICES**

It is your Broker's responsibility to advise you of the full terms and conditions of your contract with the Underwriters and if any terms, clauses or conditions are unclear you are advised to contact your Broker immediately.

CONFIDENTIAL                                      SEARS_SantaRosaMall 00000009

# RISK DETAILS - WORDING

**Named Insured**

The Sears Holdings Corporation and as more fully detailed in Risk Details.

**1.    Policy Term**

As fully detailed in Risk Details.

**2.    Territory**

As fully detailed in Risk Details.

**3.    Limits of Liability**

In the event of direct physical loss or damage insured under this policy, this **Insurer** shall be liable for its proportional share of Limits of Liability as detailed in Risk Details, excess of the policy deductibles, except as respects the following:

**Program Sub-Limits:**    As fully detailed in Risk Details.

**Time Limits Applicable to All Coverages**: As fully detailed in Risk Details.

**Distance Limits Applicable to All Coverages**: As fully detailed in Risk Details.

The total amount to be indemnified under this policy and/or any admitted version of this policy issued by the **Insurer** shall not exceed the overall limit or applicable sublimits stated in this policy.

**4.    Deductibles:**

As fully detailed in Risk Details.

**5.    Loss or Damage Insured**

This policy insures against all risk of direct physical loss or damage to property insured by this policy including General Average, salvage, and all other charges on shipments insured hereunder except as hereinafter excluded.

**6.    Loss or Damage Excluded**

This policy does not insure the following:

A.    1.    Loss or damage caused by hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

(a)    by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;

(b)    or by military, naval, or air forces;

(c)    or by an agent of such government, power, authority, or forces;

2.    Indirect or remote loss or damage

3.    Mysterious disappearance, or loss or shortage disclosed on taking inventory or any unexplained loss.

CONFIDENTIAL                              SEARS_SantaRosaMall 00000010

4.  Loss or damage caused by any weapon employing atomic fission or fusion;

5.  Loss or damage caused by rebellion, revolution, civil war, usurped power; or action taken by governmental authority in hindering, combating, or defending against such **Occurrence**;

6.  Loss or damage caused by seizure or destruction by order of public authority, except destruction by order of public authority to prevent spread of, or to otherwise contain, control or minimize loss, damage, or destruction which occurs due to loss or damage insured under this policy;

7.  Risks of contraband or illegal trade.

8.  Any act of terrorism. For the purpose of this policy an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, (including the intention to influence any government and/or to put the public or any section of the public in fear), committed for political purposes by any person or group(s) of persons whether acting alone or on behalf of or in connection with any organization(s) or government(s). This policy also excludes loss, damage, cost or expense of whatsoever nature directly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

    If the Company alleges that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Insured.

    In the event any portion of this exclusion 8. is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

B.  Loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, attributed to, or aggravated by loss or damage insured herein except:

1.  The **Insurer** shall be liable for loss or damage caused by sudden or accidental radioactive contamination, including resultant radiation damage for each **Occurrence** from material used or stored or from processes conducted on insured premises, provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

2.  If an insured loss ensues, liability is specifically assumed by the **Insurer** for such ensuing direct loss or damage insured hereunder but not including any loss due to nuclear reaction, nuclear radiation or radioactive contamination.

C.  Loss or damage caused by **fraudulent or dishonest act or acts** committed by the Insured or any of the Insured's employees.   This exclusion does not apply to physical loss or damage resulting from the Insured voluntarily parting with title or possession of any property if induced to do so by any fraudulent scheme, trick, device or false pretense, nor shall this exclusion apply to willful acts of destruction committed by the Insured's employees.

D.  Wear and tear, or deterioration, defect, depletion, rust, corrosion, inherent vice or latent defect unless physical loss or damage not excluded in this policy ensues, and then this policy shall insure only the ensuing loss or damage.   This exclusion shall not apply if the ensuing loss or damage constitutes an Accident to an Object.

CONFIDENTIAL                                                    SEARS_SantaRosaMall 00000011

Policy Number PTNAM1701557

E.   The cost of making good defective design, faulty material, or faulty workmanship, except, if physical loss or damage not excluded in this policy ensues, then this policy shall insure only the ensuing physical loss or damage. This exclusion shall not apply if the ensuing loss or damage constitutes an Accident to an Object.

F.   Except as provided in Clause 16, Land and Water Decontamination and Clean Up Expense, loss or damage arising out of the dispersal, release or escape of contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but not excluding resultant loss or damage from contaminants or pollutants to insured property caused by or resulting from loss or damage not otherwise excluded.

If loss or damage not excluded in this policy causes the dispersal, release or escape of contaminants or pollutants, then the entire loss or damage is insured by this policy.

G.   Delay or loss of market.

H.   Settling, cracking, shrinking, bulging, or expansion of foundations, floors, walls or pavements.

I.   Insect or vermin damage

7.   **Coverage**

This policy insures the interest of the Insured in the following:

A.   **Real and Personal Property**

Real and personal property while such property is located anywhere within the territorial limits of this policy in which the insured has an insurable interest, including while in due course of **transit** which is owned, used, or contracted for use by the Insured, or acquired by the Insured, and property of others in the Insured's care, custody and control including the Insured's liability for such property and including the costs to defend any allegations of liability for loss or damage to such property, and any allegations under a lease as a result of such loss or damage; including the following:

1.   Improvements and betterments.   The **Insurer** agrees to accept and consider the Insured as sole and unconditional owner of the improvements and betterments, notwithstanding any contract or lease to the contrary.

2.   At the option of the Insured, personal property of the Insured's officials and employees, while in the Insured's care, custody or control, or while on the Insured's premises.

3.   Contractor's and/or subcontractor's (of any tier) and vendor's interests in property insured to the extent of the Insured's liability imposed by law or assumed by contract, whether written or oral.

4.   At the option of the Insured, the interest of the Insured's customers in property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan including property which is leased to customers under a lease/purchase agreement.

5.   Real and/or Personal Property of others, including that which the Insured leases or has agreed to insure prior to loss or damage whilst within the Insured's care, custody or control and at the Insured's option the interest of the owner of such property.

CONFIDENTIAL                                               SEARS_SantaRosaMall 00000012

6.   Property while in the course of construction and/or during erection, assembly and/or installation.

7.   This policy also insures, in accordance with the Automatic Coverage clause of this policy, property (including Time Element coverage as provided by this policy) at any location rented, leased, used, purchased, constructed, or acquired by the Insured after the inception date of this policy.

8.   All real and personal property at a Miscellaneous Unnamed Location.   A miscellaneous unnamed location as used herein shall be defined as a location at which the Insured has property of the type insured hereunder which has not been reported to the Company. Upon report to the Company of said location, the Policy Limit shall apply.

**B.   Business Interruption - Gross Earnings (as respects Hoffman Estates, IL and 7615 Golden Triangle Drive, Eden Prairie, MN 55344)**

1.   Loss due to the necessary interruption of business conducted by the Insured, whether total or partial, including all interdependencies between or among companies owned or operated by the Insured resulting from physical loss or damage insured herein and occurring during the term of this policy to real and/or personal property described in Clause 7.A, Real and Personal Property.

2.   Such loss shall be adjusted on the basis of the actual loss sustained by the Insured, consisting of the net profit which is prevented from being earned including **ordinary payroll** and payroll;

**and**

all charges and other expenses (including **soft costs**) to the extent that these must necessarily continue during the interruption of business, but only to the extent to which such charges and expenses would have been incurred had no loss occurred.

3.   In determining the amount of net profit, charges, and expenses insured hereunder for the purposes of ascertaining the amount of the actual loss sustained, due consideration shall be given to the experience of the business before the date of the loss or damage and to the probable experience thereafter had no loss occurred.

4.   In the event of insured physical loss or damage to property as described in Clause 7.A. which results in an interruption of research and development activities, which in themselves would not have produced income during the recovery period, this policy shall insure the actual loss sustained of the continuing charges and expenses, including **ordinary payroll**, and payroll, directly attributable to such research and development activities.

5.   As respects coverage provided under Clause Business Interruption – Gross Earnings, the **Insurer** shall not be liable for any loss resulting from loss or damage to **finished stock or stock in process** nor for the time required to reproduce said **finished stock or stock in process**.

**C.   Extra Expense**

1.   Extra Expense incurred by the Insured in order to temporarily continue as nearly as practicable the normal operation of the Insured's business following loss or damage insured herein and occurring during the term of this policy to real and/or personal property as described in Clause 7.A, Real and Personal Property.

CONFIDENTIAL                      SEARS_SantaRosaMall 00000013

2.    The term Extra Expense, as used herein, is defined as the excess (if any) of the total cost chargeable to the operation of the Insured's business, over and above the total cost that would normally have been incurred to conduct the business had no loss or damage occurred, including **soft costs**.

3.    Notwithstanding any provision to the contrary, the term Extra Expense, as used herein, will include the expense incurred for no longer than 90 days from the date of loss for the payroll of salaried and hourly employees to retain the Insured's work force after a covered event.

4.    The term Extra Expense, as used herein, shall include the reasonable and necessary extra costs of temporarily using property or facilities of others.

5.    The term Extra Expense, as used herein, shall include the reasonable and necessary extra costs of temporary repair of physical damage to property insured by this Policy and the extra costs of expediting the permanent repair or replacement of such damaged property including in-house hourly labor for clean-up, restocking, redisplaying merchandise and fixtures, and the Insured's construction project management personnel.

**D.    Accounts Receivable**

In the event of insured physical loss or damage to records or accounts receivable from customers caused by loss or damage insured herein, this **Insurer** will indemnify the Insured as follows:

1.    All sums due the Insured (from customers), provided the Insured is unable to effect collection thereof as a result of loss or damage to records of accounts receivable by loss or damage insured by this policy.

2.    All sums due the Insured from factoring transactions, when the property of the debtor has been lost or damaged by loss or damage insured by this policy and the Insured has been unable to effect collection thereof.

3.    Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage.

4.    Collection expenses in excess of normal collection cost and made necessary because of such loss or damage.

5.    Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For purpose of this insurance, charges under a credit card company and maintained on **EDP Media** shall be deemed to represent sums due the Insured from customers.

When there is proof that a loss of records of accounts receivable has occurred by the Insured and the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

1.    The monthly average of accounts receivable during the last available twelve (12) months shall be adjusted in accordance with the percentage increased or decreased in the twelve (12) months average of monthly gross revenues which may have occurred in the interim;

2.    The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being

CONFIDENTIAL                                SEARS_SantaRosaMall 00000014

given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records, not lost or damaged, or otherwise established or collected by the Insured and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

**E.**     **Leasehold Interest**

1.   This policy provides coverage for the leasehold interest of the Insured.

    (a)  Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

        i.   The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

        ii.  Improvements and betterments to real property which are not covered under any other section of this policy;

        iii. The amount of advance rental paid by the Insured and not recoverable under the terms of the lease;

        when property is rendered wholly or partially untenantable by any covered loss during the term of this policy and the lease is canceled by the party not the Named Insured under this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located; and

2.

    (a)  "The Interest of the Insured as Lessee or Lessor" when property is rendered wholly or partially untenantable by any covered loss during the term of this policy and the lease is cancelled by the party not the Named Insured by this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged or destroyed property is located.

    (b)  "The Interest of the Insured as Lessee or Lessor" as referred to herein shall be paid for the first three months succeeding the date of the loss and the "Net Lease Interest" shall be paid for the remaining months of the unexpired lease.

3.   Definitions:

The following terms, wherever used in this section shall mean::

    (a)  "The Interest of the Insured as Lessee" is defined as:

        i.   the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

        ii.  the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

CONFIDENTIAL                    SEARS_SantaRosaMall 00000015

Policy Number PTNAM1701557

(b)  "The Interest of the Insured as Lessor" is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this policy.

(c)  "Net Lease Interest" is defined as that sum, which placed at 6% interest compounded annually will be equivalent to the "The Interest of the Insured as Lessee or Lessor."

4.  It is understood and agreed that in the event that an insured physical loss or damage results in both loss of Rental Income and/or Rental Value and loss of The Interest of the Insured as Lessor, the provisions and limit of liability of the Rental Income and Rental Value coverage will be applied first in accordance with the applicable period of recovery. The coverage provided by the Leasehold Interest provisions and limit of liability shall be applied and commence at the cessation of the Rental Income and Rental Value coverage and continue until the expiration of the lease.

This Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease. Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this clause and under the Rental Value and Rental Income clause.

**F.    Rental Value and Rental Income**

1.  This policy provides coverage for Loss of Rental Income and/or Loss of Rental Value of the Insured caused by physical loss or damage insured herein occurring during the term of this policy to property and/or premises rented, leased or occupied by the Insured and/or rented or leased by the Insured to others, including loss of use.

2.  Rental Income:

(a)  Rental Income shall mean the total anticipated gross rental income from tenant(s) of the Insured's building(s) and structure(s), and

(b)  The amount of all charges assumed by tenant(s) except those charges which do not continue, which would otherwise be obligations of the Insured, and

(c)  The fair rental reasonably expected from unrented portions of such property.

Rental Income Insurance also applies in those situations where the Insured is required under a lease or rental agreement to maintain such insurance on behalf of any landlord.

Furthermore, if the Insured leases premises and the premises becomes wholly or partially untenantable or unusable and the lease agreement requires continuation of the rent, this Policy shall indemnify the Insured for the actual rent payable for the unexpired term of the lease.

Rental Income Insurance shall include expenses incurred by the Insured in excess of the expenses which would have been incurred had a leased or rented premises not been damaged or destroyed by loss or damage insured herein.

CONFIDENTIAL                                                    SEARS_SantaRosaMall 00000016

Such coverage will apply for all additional expenses incurred during the period of untenantability or if the lease cannot be terminated until its expiration.

3.   Rental Value:

Rental Value shall mean the fair rental for that portion of the Insured Location occupied by the Insured, including the loss of use, without deduction for non-continuing expenses.

4.   Experience of the Business:

In determining the amount of Rental Income covered hereunder, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred to above said property.

5.   (Applicable to both Rental Income and Rental Value)

With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation, or assembly.

6.   (Applicable to both Rental Income and Rental Value)

Period of Recovery: the length of time for which a loss may be claimed under this provision shall be in accordance with the loss provisions applicable under the Period of Recovery clause 9.A of this policy.

**G.   Royalties**

1.   Loss of Royalties, Fees and Commissions which would have been earned under Royalties, Fees or Commission Agreements between the Insured and any concern(s), as a result of physical loss or damage to the property of a type not excluded in this Policy of such concern(s) caused by loss or damage insured herein occurring during the term of this policy.

2.   Such loss shall be adjusted on the basis of actual loss sustained of such income which would have been earned had no loss occurred.

**H.   Transit**

This insurance is extended to insure physical loss or damage to insured property in **transit** including resulting loss as afforded under the Business Interruption – Gross Earnings; Business Interruption – ; Extra Expense; Rental Value and Rental Income; and Royalties clauses of this policy.

1.   This insurance is also extended to insure physical loss or damage to property:

(a)   sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

(b)   at the Insured's option, which is incoming to the Insured.

2.   This policy also insures loss or damage:

(a)   arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for        shipment   or   to accept goods for delivery;

CONFIDENTIAL                                                SEARS_SantaRosaMall 00000017

(b)    occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

I.    **Automatic Coverage**

This Policy covers insured property at any location rented, leased, purchased, by the Insured after the inception date of this Policy. This coverage applies from the date of rental, lease, purchase.

This coverage will apply until whichever of the following occurs first:

1.    The location is reported to the Insurer; upon which the Policy Limit shall apply;

2.    Agreement is reached that the Location will not be insured under this Policy;

3.    The Time Limit shown in the LIMITS OF LIABILITY clause of this Policy has been reached.

8.    **Extensions of Coverage**

THIS CLAUSE EXTENDS THE FOLLOWING COVERAGES AS DESCRIBED ABOVE: Business Interruption and Extra Expense

A.    This policy insures loss resulting from or caused by physical loss or damage insured herein to the following:

1.    **Contingent Business Interruption** (applicable to Hoffman Estates **and 7615 Golden Triangle Drive, Eden Prairie, MN 55344 locations, only):**

Property of a type not excluded in this Policy, that directly prevents and/or hinders a direct supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents and/or hinders direct customers of goods and/or services from the Insured from accepting the Insured's goods and/or services.

There is no liability for any loss or damage as insured under the Service Interruption/Off Premises Power clause herein.

2.    **Contingent Extra Expense** (applicable to all Locations)

Property of a type not excluded in this Policy, that directly prevents and/or hinders a direct supplier of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents and/or hinders direct customers of goods and/or services from the Insured from accepting the Insured's goods and/or services.

3.    **Service Interruption/Off Premises Power:**  Any property of the following providers of services, including, but not limited to, electricity, water, gas, sewerage, steam, telephone, telecommunications or their respective transmission and distribution lines within 5 mile of the affected insured location or utility plants which directly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

4.    **Impounded Water:** Dams, reservoirs or equipment connected therewith when water used as a raw material or used for power or for other manufacturing purpose stored behind such dams or reservoirs is released from storage and causes an interruption of business as a result of lack of adequate water supply from such sources for up to        30 days.

CONFIDENTIAL                                              SEARS_SantaRosaMall 00000018

B.     **Interruption by Civil or Military Authority**

This policy is extended to cover, starting from the time of physical damage, for up to the number of consecutive days as stated in the Limits of Liability clause of this policy, the Business Interruption or Extra Expense loss sustained during the period of time when access to covered real or personal property of the Insured is impaired by order or action of civil or military authority issued as a direct result of physical damage of the type insured against to property of the type not excluded  which is within the number of statute miles as stated in the Limits of Liability clause of this policy.

C.     **Ingress/Egress**

This policy is extended to cover, starting from the time of physical damage, for up to the number of consecutive days as stated in the Limits of Liability clause of this policy, the Business Interruption or Extra Expense loss sustained during the period of time when, as a direct result of physical damage of the type insured against to property of the type not excluded is within the number of statute miles as stated in the Limits of Liability clause, ingress to or egress from real or personal property is impaired.

The provisions of this paragraph shall also extend to include the extensions of coverage described under the Service Interruption, Contingent Business Interruption, Contingent Extra Expense and Attraction Properties provisions described above.

**9.     Loss Provisions Applicable to Clauses 7.B, 7.C, 7.E, 7.F, 7.G, 7.H. and 8.**

A.     Period of Recovery

The length of time for which loss may be claimed is referred to as the period of recovery and:

1.     shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy;

2.     shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;

**and**

3.     such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

(a)     the date on which the liability of the **Insurer** for loss or damage would otherwise terminate; or

(b)     the date on which repair, replacement or rebuilding of the property that has been damaged is actually completed and the Insured has resumed normal operations.

but in no event for more than one hundred eighty (180) consecutive days as stated in the Limits of Liability clause of this policy thereafter from said later commencement date;

4.     with respect to alterations, additions, or property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the level of production or level of business operations that would

CONFIDENTIAL                                                        SEARS_SantaRosaMall 00000019

reasonably have been achieved after construction and start up would have been completed had no loss or damage occurred.

B.    Expense to Reduce Loss but not applicable to Extra Expense coverage

This policy also insures such expenses as are necessarily incurred for the purpose of reducing any loss under this policy. Such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

C.    Experience of the Business

In determining the amount of loss insured hereunder due consideration shall be given to the experience of the business before the date of loss or damage and to the probable experience thereafter had no loss or damage occurred.

**10.    Property Excluded**

This policy does not insure loss or damage to:

A.    Watercraft over forty (40) feet only while waterborne, aircraft and motor vehicles licensed for highway use when not on the Insured's premises, except this exclusion shall not apply to contractor's equipment, nor to such property which constitutes stock or which is on exhibit or being repaired.

B.    Land, except as insured under Clause 16, Land and Water Decontamination and Clean Up Expense. This exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements.  Land improvements as described hereunder include, but are not limited to, any alteration to the natural condition of the land by grading, excavating, landscaping, earthen dikes or dams, as well as additions to land such as pavements, roadways, ponds, golf courses, or similar works;

C.    Currency, money, gold bullion, evidence of debt, except accounts receivable as defined in the policy, notes or securities.

D.    Growing crops, standing timber to be used for industrial processes, and live animals not used for research.

E.    Water, except as insured under Clause 8.A.4. Impounded Water**,** Clause 16. Land and Water Decontamination and Clean Up Expense, or when contained in any form of piping system, processing system or holding tank or used in the manufacturing process.

F.    Export and import shipments after loading on board the oceangoing watercraft and during ocean **transit**, but coverage will attach after unloading at the destination port. However,  this exclusion will not apply to:

1.    ferry shipments to, from and between countries in Continental Europe, the United Kingdom and Ireland; and
2.    air or inland waterway shipments to, from and between countries in Continental Europe.

G.    Waterborne shipments via the Panama Canal.

H.    Waterborne shipments to and from Alaska, to and from Hawaii, and to and from Puerto Rico, Guam and the Virgin Islands.

I.    Bridges, roadways, dams and dikes other than coverage  as provided  in 10.B

**11.    Valuation**

CONFIDENTIAL                    SEARS_SantaRosaMall 00000020

Unless otherwise endorsed hereon, adjustment of property loss under this policy shall be:

(a)    on stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges;

(b)    on finished goods manufactured by the Assured, the regular selling price prior to all discounts and charges to which the merchandise would have been subject had no loss occurred;

(c)    on other merchandise not manufactured by the Assured, the regular selling price prior to all discounts and charges to which the merchandise would have been subject had no loss occurred;

(d)    on exposed film, records, manuscripts, and drawings, the value blank plus the cost of transcription, if copies are available, otherwise the full replacement value;

(e)    on media, data, and programs for electronic and elctromechanical data processing and production equipment, the cost of reproducing such media, data and programs;

(f)    on real property including machinery and equipment permanently installed and affixed thereto, and the Assured's improvements and betterments to real property of others not otherwise covered herein, the cost to repair or replace new with materials of like kind and quality However, as respects the Assured's improvements and betterments not replaced, the actual cash value;

(g)    on furniture, fixtures and equipment (including tools and dies) except such equipment as included under (f) above, the cost to repair or replace new with materials of like kind and quality ;

(h)    Fine arts owned by the Assured at the cost of reasonably restoring the property to its condition immediately prior to the loss, or in the event that the property cannot be restored at the appraised value prior to the loss. In absence of such appraisal, at the market value at the time of loss, plus the Assured's costs.

Fine Arts, which is the property of others, at the Assured's option, either at the cost of reasonably restoring the property to its condition immediately prior to loss, or the Assured's contractual or legal liability.

(i)    property of others at the amount agreed to prior to loss or for which the Assured is contractually or legally liable, not to exceed the cost to repair or replace new with materials of like kind and quality ;

(j)    All other property, not otherwise mentioned above, at the cost to repair or replacement cost new whichever is less; if not repaired or replaced within three years, then at the actual cash value

all to be computed at the time and place of loss

It is understood and agreed that as respects replacement cost new, the Insured shall have the option of replacing equipment having technological advantages and/or representing an improvement in function and/or forming part of a program of system enhancement provided that such replacement can be accomplished without increasing the **Insurer's** liability.

The Insured, using reasonable discretion, shall be the sole judge as to whether electrical and mechanical equipment are damaged and unusable. This **Insurer** shall be allowed to dispose of, as salvage, any non-proprietary property deemed unusable by the Insured.

As respects 11.F., 11.G. and 11.J., the Insured may elect not to replace the real and/or personal property lost, damaged, or destroyed and obtain loss settlement on a replacement cost basis if the proceeds of such loss settlement are expended in any other capital expenditures related to

CONFIDENTIAL                    SEARS_SantaRosaMall 00000021

the Insured's operations, provided such capital expenditure is unplanned prior to the occurrence.

Permission is granted for the Insured to replace the property with similar property at the same or another site within the territorial limits of the policy, but recovery is limited to no more than what it would cost to replace on same site.

**12.    Demolition and Increased Cost of Construction**

In the event of physical loss or damage insured under this policy that causes, at the time , the enforcement of any law, ordinance and/or governmental directive in force at time of such physical loss or damage regulating the construction, repair or use of the property, the **Insurer** shall be liable for:

A.    The cost of demolishing the undamaged property including the cost of clearing the site;

B.    The proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

C.    The increased cost of repair or reconstruction of the damaged and undamaged property on the same site and limited to the costs that would have been incurred in order to comply with the minimum requirements of such law, ordinance and/or governmental directive regulating the repair or reconstruction or use of the damaged property on the same site or another site.   However, the **Insurer** shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

D.    The increase in loss, including, but not limited to, Business Interruption, Extra Expense, Rental Value, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law, ordinance and/or governmental directive.

**13.    Contingent Exposures**

It is agreed that this Policy is extended to cover to the limit of the Insured's interest in personal property and inventory at dealer stores. When a claim of loss or damage as covered under this Policy results from the non-existence, inadequacy, or uncollectiblity, except for insolvency or failure of dealers insurance, in whole or in part ( by the Insured) of dealers' insurance, whether or not the loss or damage was required to be insured under the dealer agreement. In no event is coverage provided by this Clause deemed to be greater than otherwise recoverable under this Policy less any recoveries from other insurance.

**14.    Fire Brigade Charges and Extinguishing Expenses**

This policy insures the following expenses resulting from:

A.    fire brigade charges and other extinguishing expenses for which the Insured may be assessed;

B.    loss of fire extinguishing materials expended.

**15.    Debris Removal**

(1)    In the event of physical loss or damage to the property insured hereunder, this policy (subject otherwise to its terms, conditions and limitations, including but not limited to any applicable deductible) also insures:

(a)    expenses reasonably incurred in removal of debris of the property insured hereunder destroyed or damaged from an insured location;

CONFIDENTIAL                      SEARS_SantaRosaMall 00000022

(b)     expenses reasonably incurred in removal of debris of the property insured hereunder which is destroyed or damaged while in transit;

(c)     expenses reasonably incurred in removal of debris of property not insured under this policy blown onto the insured location by wind or deposited onto the insured location by **Flood;**

(d)     cost of cleanup at an insured location made necessary as a result of such physical loss or damage;

provided that this policy does not insure against the costs of decontamination or removal of land or water or the contaminant on or in land or water except as provided in the Land and Water Decontamination and Clean Up Expense clause of this policy.

(2)     It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder unless such payment is precluded solely by the operation of any deductible and that the Insured shall give notice to the Company of the intent to claim for the cost of removal of debris or cost of cleanup NO LATER THAN 12 MONTHS AFTER THE DATE OF SUCH PHYSICAL LOSS OR DAMAGE.

## 16.     Land and Water Decontamination and Clean Up Expense

This policy insures any cost or expense of decontamination or removal or disposal of water, soil or any similar substance on or under the premises of the Insured incurred during emergency measures undertaken in order to mitigate any circumstances pertaining to seepage, pollution and/or contamination, whether or not at the instruction of any government agency or other authority.

It is the condition precedent to recovery under this clause that the **Insurer** shall have paid, or agreed to pay for, loss or damage to the property insured hereunder unless such payment is precluded solely by the operation of any deductible.

It is also a condition precedent to recovery under this clause that the insured shall give written notice to the insurer of intent to claim for decontamination and cleanup expense not later than 180 days after the date of such loss or damage.

## 17.     Notice of Loss

The Insured shall report to the **Insurer** any loss or damage which may become a claim under this insurance policy as soon as may be practicable after it becomes known to the Director of the Risk Management Department (or the individual acting in a similar capacity) of the Insured.

## 18.     Knowledge of Occurrence

It is agreed that knowledge of an **Occurrence** by an agent, servant or employee of the Insured shall not in itself constitute knowledge by the Insured.   Knowledge is understood to occur only when the Director of the Risk Management Department (or the individual acting in a similar capacity) of the Insured shall have received notice from its agent, servant or employee.

## 19.     Proof and Payment of Loss

A detailed Proof of Loss shall be filed with the **Insurer** as soon as practicable.   Loss shall be adjusted with the Risk Management Department of the Insured or assigned representatives, and all adjusted claims, including partial claims, shall be paid to the Insured or its order within Thirty (30) days after reaching agreement on the value of the claim or any part thereof.

## 20.     Non-Reduction of Limits of Liability

Any loss hereunder shall not reduce the limit(s) of liability under this policy except for aggregate limits as described in the Limits clause of the policy.

**21.    Subrogation and Subrogation Waiver**

A.    It is agreed that upon payment of any loss, this **Insurer** is subrogated to all the rights of the Insured to the extent of such payment.

Any release or waiver of liability entered into by the Insured in the course of their business prior to loss (including but not limited to bills of lading and/or receipts from carriers, bailees, warehouseman, lighterman, processors, limiting or releasing their liability) hereunder shall not prejudice the Insured's rights of recovery under this policy.

B.    The right of subrogation against the Insured's subsidiary, affiliated, or associated corporations or companies, joint ventures, partnerships or individuals, or any other party required to be insured, or any other corporations or companies associated with the Insured through ownership or management is waived, and at the option of the Insured, subrogation is waived against any tenant or landlord of the Insured.

C.    In the event of any payment under this policy, except where subrogation rights have been waived, the **Insurer** shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore.   The Insured shall execute all papers required and shall take reasonable and necessary action to secure such subrogation rights. The **Insurer** will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery.   The Insured and the Insurer shall mutually agree upon subrogation counsel for the pursuit of their mutual subrogation interests.   Further, the Insured shall have the right to pursue any uninsured interest independently of the mutual subrogation interests.   If any amount is recovered, after deducting the costs of recovery, payment will first be made to the Insured to the full extent of the deductible applied to the loss.

**22.    Protection and Preservation of Property**

In case of actual or imminent physical loss or damage of the type insured against by this policy, the expenses incurred by the insured in taking reasonable and necessary actions for the temporary protection and preservation of property insured hereunder shall be added to the total physical loss or damage, if any, otherwise recoverable under the policy and be subject to the applicable deductible and without increase in the limit provisions contained in this Policy.

**23.    Appraisal**

In case the Insured and this **Insurer** shall fail to agree as to the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within Twenty (20) days of such demand.   The appraisers shall select a competent and disinterested umpire; and, failing for Fifteen (15) days to agree upon such umpire, then on request of the Insured or the **Insurer**, such umpire shall be selected by a judge of a district court of a judicial district in accordance with the Jurisdiction and Suit clause of this policy.   The appraisers shall then appraise the loss, separating the loss to each item; and, failing to agree, shall submit their differences only to the umpire.   An award in writing, so itemized of any two when filed with the **Insurer,** shall determine the amount of loss. Each appraiser shall be paid by the party selecting each respective appraiser and the expenses of appraisal and umpire shall be paid by the parties equally.

**24.    Brands and Labels**

In case of insured physical loss or damage to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or the Insured, the salvage value of such damaged property shall be determined after removal in the

customary manner, at the expense of the Insurer, of all such brands or trademarks or other identifying characteristics.

25.   **Control of Damaged Merchandise**

The Insured shall have full right to the possession of all merchandise manufactured, sold or distributed by the **Insured** involved in any loss under this policy and shall retain control of all damaged merchandise.   The Insured, exercising reasonable discretion, shall be the sole judge as to whether the merchandise involved in any loss under this policy are fit for consumption, sale or use and any merchandise so deemed by the Insured to be unfit for consumption, sale or use shall not be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this **Insurer** any salvage proceeds obtained by the Insured on any sale or other disposition of such merchandise.

26.   **Salvage and Recoveries**

Except as described in Clause 23, after expenses incurred in salvage or recovery are deducted, any salvage or other recovery, except recovery through subrogation proceedings and/or from underlying and/or excess insurance as described herein, shall accrue entirely to the benefit of this **Insurer** until the sum paid by the **Insurer** has been recovered.

27.   **Expediting Expense**

This policy insures the reasonable extra cost of temporary repair or replacement and of expediting the repair or replacement of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

28.   **Jurisdiction and Suit**

It is hereby understood and agreed that:

A.   In the event of the failure of the **Insurer** to pay an amount claimed to be due hereunder, at the direction of the Insured, the **Insurer** will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction.   All matters arising hereunder shall be determined in accordance with the law and practice of such court.

B.   In any suit instituted against it under this policy, the **Insurer** will abide by the final decision of such court or any appellate court in the event of an appeal.

29.   **Pair and Set/Consequential Reduction in Value**

In the event of insured loss or damage to personal property, this policy shall insure the resulting reduction in value of the remaining undamaged components or parts of products customarily sold as individual units or sold as pairs, sets or lots or ranges of sizes or colors.

30.   **Consequential/Sequential Damage**

This policy insures consequential/sequential loss or damage caused by or resulting from the change in temperature or humidity caused by, but not limited to, interruption of power, heat, light, air conditioning, refrigeration, telephone or telegraphs, supply water or telecommunications to property/equipment or plants used to provide refrigeration, cooling, humidifying, dehumidifying, air conditioning, heating, generating, converting power, or telephone or telegraphs, or telecommunications, including all connections and supply from transmission lines and pipes within one mile, power generating equipment, utility plants or sources, whether or not such equipment is on or off the premises of the Insured.

31.   **Permits**

CONFIDENTIAL                                                       SEARS_SantaRosaMall 00000025

Policy Number PTNAM1701557

Permission is hereby granted for any building(s) to be and remain vacant and unoccupied without limit of time and without prejudice to the Insured's right of recovery for claim under this policy.

**32.    Contributing Insurance**

Permission is granted for other policies written upon the same terms, conditions, and provisions irrespective of limit or attachment point as those contained in this policy.  This policy shall contribute to the total of each loss otherwise payable herein to the extent of the participation of this policy in the total limit of liability stated herein.

**33.    Excess Insurance**

Permission is granted for the Insured to have excess insurance over the limit of liability in this policy without prejudice to this policy and the existence of such insurance, if any, shall not reduce any liability under this policy.

**34.    Underlying Insurance**

Permission is granted for the Insured to purchase insurance on all or any part of the deductible and against all or any of the coverage provided by this policy.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.  This includes all Stock Throughput Policies, which cover stock and/or inventory.

Notwithstanding the above, it is a condition precedent that the Policy and Limit(s) of the Stock Throughput Policies shall be maintained in full force and effect, except for any reduction or exhaustion of the separate annual aggregates for Flood, Earthquake and Named Windstorm solely by the amount of loss(es) paid or admitted during the Policy Term.

**35.    Other Insurance**

Except as referred to in Clauses 32, 33 and 34, if any property included in the terms of this policy shall, at the time of any loss, be insured with other valid and collectible insurance, the Insured shall have the option of choosing which policy to utilise to respond first to loss or damage, unless otherwise agreed.   If the Insured elects for such other insurance to be applied first, then this insurance shall be excess of and/or supplementary to such other insurance.

Notwithstanding the above, the insurance provided by this Policy shall always be excess of USD50,000,000 (reduced only by reduction of the separate annual aggregates for Flood, Earthquake and Named Windstorm) regardless of the uncollectibility (in whole or in part) under the Stock Throughput Policy for any reason, including but not limited to the financial impairment or insolvency of the Stock Throughput Insurer.

**36.    Coinsurance Waiver**

This policy is not subject to Coinsurance or Average Clause.

**37.    Errors & Omissions**

No inadvertent error, omission or failure in making reports or other data hereunder shall prejudice the Insured's right of recovery, but shall be corrected when discovered.   It is further understood and agreed that any error in description of locations, or values of projects insured or to be insured by this policy shall not invalidate or reduce the policy limit of liability, or otherwise prejudice any recovery under this policy.

**38.    Titles of Paragraphs**

The several titles of the various paragraphs of this policy (and of Endorsements and Supplemental Policies, if any, which are attached to this policy) are inserted solely for

CONFIDENTIAL                                                    SEARS_SantaRosaMall 00000026

convenience or reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

**39.   Certificates of Insurance**

It is agreed that Aon Risk Services, Inc. are authorized to issue Certificate(s) or Evidence(s) of Insurance being the Acord Certificate of Property Insurance 24 (1/95), naming Additional Named Insured(s), Loss Payee(s) or Mortgagee(s), and others for their respective rights and interests, subject always to the terms, conditions and limits of endorsements in respect of such additional interests. The Certificate(s) or Evidence(s) of Insurance may show a deductible amount less that the policy deductible, but the Insured agrees to reimburse The Company immediately after The Company has mad a loss payment to the extent this agreement results in a larger loss payment or a payment with the policy deductible.

**40.   Partial Payment of Loss**

It is understood and agreed that this **Insurer** will make partial payments of claims subject to the policy provisions and the normal policy adjustment provisions.

**41.   Mortgage Interests and Obligations**

If loss hereunder is made payable in whole or in part, to a designated mortgagee not named herein as the Insured, such interest in this Policy may be cancelled by giving to such mortgagee ten (10) days written notice of cancellation.

If the Insured fails to render proof of loss, such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If The Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's right to sue, or it may pay off the mortgage debt and require as assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing.

**42.   Special Mortgage Clause**

The following mortgage clause applies in favor of any mortgagee named in the Certificate or Evidence of Insurance to the location under which the mortgagee is named:

Loss, if any, under this Policy to Real Property only, unless otherwise indicated, shall be payable to the indicated Mortgagee [or Trustee] (hereafter referred to as Mortgagee) as its interest may appear under all present or future mortgages upon the described property in which the aforesaid may have an interest as Mortgagee, in order of precedence of said mortgages; and this insurance, as to the interest of the Mortgagee therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to said property, nor by any change in the title or ownership of said property, nor by the occupation of the location for the purposes more hazardous than are permitted by this Policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this Policy, the Mortgagee shall, on demand, pay the same.

Provided, also that the Mortgagee shall notify The Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the Mortgagee and, unless permitted by this Policy, it shall be noted hereon and the Mortgagee shall, on demand, pay the premium for such increase hazard for the term of the use thereof; otherwise this agreement shall be null, and void.

The Company reserves the right to cancel this Policy at any time as provided by its terms, but in such case this Policy shall continue in force for the benefit only of the Mortgagee for ten (10)

days after written notice to the Mortgagee of such cancellation and shall then cease, and The Company shall have the right, on like notice, to cancel this agreement.

**43.    Cancellation**

A.    This policy may be cancelled at any time at the request of the first named Insured, or it may be cancelled by the **Insurer** by mailing via registered or certified mail to

Sears Holdings Corporation
Risk Management Department
3333 Beverly Road E3-237A
Hoffman Estates, Illinois 60179

and with copies provided to

Aon Risk Services
200 E Randolph St
Chicago, Illinois 60601

during the term of this policy, written notice stating when no less than Ninety   (90) days thereafter,    such cancellation shall be effective.

This insurance may be canceled at any time by the Insured by surrender of this policy to the **Insurer** or by mailing or delivery to the **Insurer** written notice stating when thereafter such cancellation shall take effect.   Return premium shall be allowed the Insured on a pro rata basis if the **Insurer** or Insured cancels.

Payments or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

B.    The mailing of notice as described in A. above shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period.   Delivery of such written notice either by the Insured or by this **Insurer** shall be equivalent to mailing.

C.    Cancellation shall not affect coverage on any shipment in **transit** on the date of cancellation.   Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

**44.    Inspection and Audit**

This **Insurer** shall be permitted, but not obligated, to inspect the Insured's property at any reasonable time.   Neither the **Insurer's** right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe.

**45.    Loss Adjustment Expenses**

This policy is extended to insure the expenses incurred by the Insured, or by the Insured's representatives for assessing, preparing and/or certifying details of a claim resulting from a loss which would be payable under this policy.   However, this policy does not insure the expenses of Public Adjustors.

**46.    Currency**

CONFIDENTIAL                                SEARS_SantaRosaMall 00000028

Policy Number PTNAM1701557

It is hereby understood and agreed that all amounts used herein are in United States currency and that premiums shall be paid and all losses shall be adjusted and paid in United States currency. In the event of a loss adjustment involving foreign currency, conversion into the currency of the United States of America shall be calculated as follows:

A.    As respects real and personal property, the cost of repair, replacement or reconditioning shall be converted, at the option of the Insured, based on any of the following:

1.    date of loss;

2.    date of repair, replacement or reconditioning;

3.    date of acceptance or proof of loss or settlement.

Options A.1. - A.3. shall be based on the rate of exchange quoted in the Wall Street Journal.

If the property is not replaced or repaired, the conversion into the currency of the United States of America shall be at the rate of exchange quoted in the Wall Street Journal as of the date of loss.

B.    As respects all other coverages, currency shall be converted at the rate of exchange quoted in the Wall Street Journal and such rate of exchange shall be based on the average of the daily rate of exchange quoted in the Wall Street Journal for the period of loss.

## 47.    Tax Liability

A.    In the event that a loss insured hereunder cannot be paid in the country where the loss insured under this policy has occurred, this **Insurer** shall be liable for an additional loss payment in accordance with the following formula:

Loss payment due under this section =    [a (1 - c) / (1-b)] -a

Where:
a    =    Loss otherwise payable under this Policy except for operation of this coverage, after due consideration for any applicable deductible(s).
b    =    The net effective rate of the sum of: any taxation (a positive number) plus tax any relief/credit (a negative number) that accrues in the country where loss payments are received.
c    =    The net effective rate of the sum of: any taxation (a positive number) plus tax any relief/credit (a negative number) that accrues in the country where the loss occurred.

2.    The formula herein will not apply if the calculation of additional payment results in an amount less than zero.  The rates referred to herein will be the respective corporate income tax rates in effect on the date of the loss.

3.    The Insured will cooperate with the Insurer in making every reasonable effort to pay the loss or portion thereof locally in the country in which the loss occurred.

4.    Any payment under this coverage will be made only after completion and acceptance by the Insurer of audited tax returns for the period in question for both the country where a payment hereunder is made and the country where the loss occurred.  The actual payment under this coverage will be adjusted and reduced by all appropriate tax credits and/or tax relief entitled and/or received by the Insured and/or the local entity where the loss occurred provided that an income tax liability is incurred.

## 48.    Difference in Conditions

CONFIDENTIAL                                    SEARS_SantaRosaMall 00000029

Policy Number PTNAM1701557

Subject to all other terms and conditions set forth herein, coverage under this policy is to apply only when coverage and/or definitions and/or conditions set forth herein are broader in meaning or scope than those of specific underlying or primary policies except for Stock Throughput Policies. The insurance provided by this policy will apply as contributing or excess insurance as respects loss arising from loss or damage insured under such other policies. In the absence of any other valid and collectible insurance, this policy shall become primary, subject to the terms and conditions of this policy.

**49.     Tax Treatment of Profits**

This policy is extended to insure the additional loss sustained by the Insured resulting from loss or damage insured by this policy in the event the tax treatment of:

A.     the profit portion of a loss recovery involving finished stock manufactured or purchased by the Insured; and/or

B.     the profit portion of business interruption loss proceeds;

differs from the tax treatment of profits that would have been incurred had no loss occurred.

**50.     Tenants and Neighbors Liability**

This policy insures:

A.     1.     The liability, which the Insured incurs as tenant or occupant under the articles of any civil or commercial code, because of damage to real and personal property by loss or damage insured by this policy;

2.     The liability, which the Insured incurs under articles of any civil or commercial code, for damage to real or personal property from loss or damage spreading from the Insured's premises to the premises of neighbors, cotenants and other third parties;

3.     The liability, which the Insured as landlord incurs under articles of any civil or commercial code, for loss or damage to the personal property of tenants insured by this policy as a result of constructional defects or lack of maintenance;

B.     This extension applies only to liability incurred in those countries or jurisdictions in which a Napoleonic or other civil or commercial code applies due to loss or damage as defined by such code and as insured hereunder.

**51.     Severability of Interest**

Each of the Insureds insured by this policy will have the same protection and obligations as if the policy has been issued individually to each of them, except as respects the obligations associated with the **Cancellation** clause. However, the inclusion of more than one Insured will not operate to increase the limit of liability of the **Insurer** beyond the limit of liability stated in this policy.

**52.     Loss Adjustors**

As fully detailed in Risk Details.

**53.     Loss Payable**

Loss, if any, shall be adjusted with and payable to Sears Holdings Corporation or as directed by it.

CONFIDENTIAL                                                                     SEARS_SantaRosaMall 00000030

**54.    Priority of Payments (applicable to primary or underlying policy(ies) only)**

Any recoveries made under this policy shall first apply to loss or damage not insured by the excess policy(ies). Upon exhauston of this policy's limit, the excess policy(ies) shall step down and be liable for the loss in excess of the amount attributed to this policy as respects loss or damage insured thereunder subject to the excess policy(ies) limits.

It is further herby understood and agreed that this policy provides secondary and excess coverage to that provided by the Named Insured's stock throughput policies for physical loss or damage covered under this policy to any and all stock and/or inventory values. The Named Insured's stock throughput policies are deemed primary and more specific for purposes of payment of physical loss or damage to any and all stock and/or inventory values. This policy will pay to the full extent of coverage afforded hereunder for the physical loss or damage to any and all stock and/or inventory values in excess of the limits of liability provided by the Named Insured's stock throughput policies.

**55.    Step Down / Drop Down (applicable to excess policies only)**

In determining the amount of any loss or damage for which this policy is excess, the total loss caused by any combination of loss or damage, all of which are insured against under the primary policy or **underlying policy**, shall be used even though such loss or damage is not insured against under this excess policy.

A.    Any recoveries made under the primary or **underlying policy** shall first apply to loss or damage not insured against by this policy. Upon exhaustion of the primary or **underlying policy** limits, this policy shall apply in excess of the amount attributed to the primary or **underlying policy** as respects loss or damage insured hereunder subject to the limit of this policy.

B.    If there is any other excess insurance insuring the property insured hereunder for loss or damage insured against in the primary or **underlying policy** but not insured by this policy, this policy shall then allocate any loss recoveries made under the primary or **underlying policy** in the same proportion as the amount of loss or damage insured against by this policy bears to the combined total loss.

Upon exhaustion of the primary or **underlying policy** limits, this policy shall apply in excess of the amount attributed to the primary or **underlying policy** as respects loss or damage insured hereunder subject to the limit of this policy.

C.    Sub-Paragraph B. above shall not apply, however, when the amount of loss attributed to loss or damage insured under the primary or **underlying policy**, but not insured under this policy, exceed the total amount of insurance provided by the primary and excess coverages with respect to said loss or damage. In this situation, any recoveries made under the primary or **underlying policy** shall first apply to loss or damage not insured by this policy. Upon exhaustion of the primary or **underlying policy** limits, this policy shall apply in excess of the amount attributed to the primary or **underlying policy** as respects loss or damage insured hereunder subject to the limit of this policy.

D.    It is further agreed, in the event the **Flood** and/or **Earthquake** annual aggregate limits of any primary or **underlying policy** and/or the **Named Windstorm** aggregate limit of the stock throughput policy are diminished or exhausted in any one policy year, any loss or damage insured under this policy for **Flood** and/or **Earthquake** and/or **Named Windstorm** as respects stock and/or inventory, shall apply as excess of any undiminished or unexhausted limits subject to the policy deductibles herein.

**56.    Statement of Values**

The Statement of Values is for informational purposes only and does not bear on the coverages provided by this Policy.

CONFIDENTIAL                                    SEARS_SantaRosaMall 00000031

Policy Number PTNAM1701557

### 57.    Definitions

The following terms whenever used in this policy shall mean:

### A.    Accident to an Object (Boiler and Machinery Coverage)

The term "Accident to an Object", if used herein, is defined solely for the determination of the limits of liability and/or deductible(s) and application of the           suspension  section  only. The term "accident" shall not limit or define the perils or  coverages provided elsewhere in this policy.

The term "accident to an object" shall mean: Any condition or **Occurrence** within boilers or fired or unfired vessels owned by, operated by, or under the control of the Insured and subject to pressure or vacuum including piping or apparatus attached to and forming a part thereof, except that the words "any condition or **Occurrence**" shall not include explosion, other than explosion of the parts of a steam boiler containing steam or water, steam pi ping, steam turbines, or steam engines;

    (1)    mechanical breakdown of any machine or apparatus arising out of any condition or **Occurrence** within such machine or apparatus;

    (2)    electrical injury or disturbance to electrical appliances, devices, fixtures, wiring, or other electrical or electronic equipment caused by electrical currents artificially generated.

However, the term "accident" does not include:

    (1)    loss or damage from fire or from the use of water or other means to extinguish fire; and

    (2)    the normal operation of any safety or protective device;

The term "accident" shall not apply to the following property:

(1)    property in transit;

(2)    property while in the course of construction, erection, installation, or assembly;

(3)    electronic data processing systems used for administrative, statistical, or accounting purposes;

(4)    any sewer piping, any piping forming a part of a fire protective system, or any water piping other than:

    (a)    boiler feed water piping;

    (b)    boiler condensate return piping;

    (c)    water piping used in a heat transfer system for cooling, humidifying, or space heating purposes;

(5)    any vehicle, aircraft, or self-propelled equipment or floating vessel;

(6)    any elevator, crane, ladle or bucket, hoist, power shovel, drag line, excavator, scale, or conveyor, but not excluding any pressure vessel, gears, engines or electrical equipment used with a machine.

### B.    Architect Fees and Engineering Fees

Any cost associated with the preparation of plans for the repair or reconstruction of the damaged property.

CONFIDENTIAL                     SEARS_SantaRosaMall 00000032

Policy Number PTNAM1701557

C. **Earthquake**

Quaking, vibratory or undulating movement of a portion of the earth's crust, produced by underground volcanic forces or by breaking and shifting of rock beneath the earth's crust.

It is understood and agreed that, wherever used in this policy, the term "loss caused by" or "loss arising from" Earthquake shall be restricted exclusively to the actual, specific cracking, rupturing, shifting or toppling of property and shall not include ensuing loss or damage, not otherwise excluded, resulting from other loss or damage insured. However, Earthquake shall include loss arising from tsunami, tide or tidal water, that result from an Earthquake.

D. **EDP Systems**

Electronic Data Processing Systems shall include, but not be limited to, transferring equipment, computer systems, telecommunications systems or electronic control equipment and component parts.

E. **EDP Media**

All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles employed.

F. **Fine Arts**

Fine Arts shall include, but not be limited to, bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs, (positives and negatives) lithographs, illustrations, galley proofs, original records.

G. **Finished Stock**

Stock manufactured by the Insured which, in the ordinary course of the Insured's business, is ready for packing, shipment or sale.

H. **Fire Brigade Charges/Fire Extinguishing Materials and Expenses**

Fire fighting and/or containment charges and/or fire department service charges and other extinguishing expenses.

I. **Flood**

Waves, tide or tidal water, rapid accumulation of surface waters, or the rising (including overflowing or breaking of boundaries) of lakes, reservoirs, rivers, streams or other bodies of water. It is understood and agreed that, whenever used in this policy, the term "loss caused by" or "loss arising from" flood shall not include ensuing loss or damage, not otherwise excluded, resulting from other loss or damage insured.

J. **Fraudulent or Dishonest Acts**

Fraudulent or dishonest acts committed by the Insured or the Insured's employees with the manifest intent to:

1. cause the Insured to sustain such loss; and

2. obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the Insured or the employee to receive such benefit for such fraudulent or dishonest act or acts.

K. **Miscellaneous Unnamed Location**

CONFIDENTIAL                                SEARS_SantaRosaMall 00000033

A Miscellaneous Unnamed Location as used herein shall be defined as a location at which the Insured has property of the type insured hereunder which has not been reported to the Company. Upon report to the Company of said location, the Policy Limit shall apply.

L.    **Named Windstorm**

A Named Windstorm is a storm cell and/or weather condition that is declared by the National Weather Bureau and/or National Hurricane Center and/or any other similar weather center in foreign countries as a Named Hurricane or Storm.

It is understood and agreed that, whenever used in this policy, the term "loss caused by" or "loss arising from" Named Windstorm shall not include ensuing loss or damage, not otherwise excluded, resulting from other loss or damage insured. However, such Named Windstorm shall include loss arising from rain, flood, storm surge or any other water damage that results from the Named Windstorm.

M.    **Object**

Means any boiler, fired or unfired vessel subject to pressure or vacuum, including piping or apparatus attached thereto and forming a part thereof, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

N.    **Occurrence**

Loss, or a series of losses or several losses, which are attributable directly to one cause or disaster or to one series of causes or disasters arising from a single event.   All such losses shall be added together and the total amount of such losses shall be treated as one **Occurrence** irrespective of the period of time or area over which such losses occur.

When the term applies to windstorms, it shall be defined as the sum total of all losses arising directly out of or caused by the same atmospheric disturbance during any period of 72 consecutive hours.   The Insured shall have the right to elect the moment from which the 72 hour period shall be deemed to have commenced, provided always that no elected period of 72 hours shall commence within the period of any previous  **Occurrence**.

When the term applies to **earthquake** , it shall be defined as the sum total of all the Insured's losses arising directly out of or caused by **earthquake** during any period of 168 consecutive hours by reason of one **earthquake** or a series of **earthquake shocks**.   The Insured may elect the moment from which the 168 hour period shall be deemed to have commenced, provided always that no elected period of 168 hours shall commence within the period of any previous  **Occurrence**.

When the term applies to **flood**, it shall be defined as the sum total of all losses arising directly out of or caused by reason of one **flood** or a series of **floods**.

O.    **Ordinary Payroll**

Ordinary Payroll is the entire payroll expense for all employees of the Insured except officers, executives, employees under contract, and other critical employees.

P.    **Soft Costs**

Expenses related to the delay of completion of a project over and above those costs which would have been incurred, including, but not limited to, attorneys fees, fines, interest payments on financing under loan agreements and real estate taxes accruing during the period of delay.

CONFIDENTIAL                                               SEARS_SantaRosaMall 00000034

Q.  **Transit**

Shipments within and between the territorial limits of this policy, including the coastal
waters thereof, by any means of conveyance, from the time the property is moved for
purpose of loading and continuously thereafter while awaiting and during loading and
unloading and in temporary storage including temporary storage on any conveyance
intended for use for any outbound or used for inbound shipment, including during
deviation and delay, until safely delivered and accepted at place of final destination.

R.  **Underlying Policy**

An insurance policy issued to the Insured which is similar as respects the terms and
conditions of this policy and issued for limits below the attachment point or deductible of
this policy.

S.  **Valuable Papers & Records**

Written, printed or otherwise inscribed documents, and records including but not limited
to books, maps, films, drawings, abstracts, deeds, mortgages, mortgage files,
manuscripts and micro or electronically/magnetically inscribed documents, but not
including the monetary value of monies and/or securities.

CONFIDENTIAL                                    SEARS_SantaRosaMall 00000035

Policy Number PTNAM1701557

## ENDORSEMENT  1

## EARTHQUAKE  AND WIND ZONES

**TIER 1 WIND COUNTIES**

Tier One counties are outlined below and include any county bordering the Gulf of Mexico and/or Atlantic Ocean.

| | |
|---|---|
| Virginia   - | Accomack, Northhampton, Gloucester, Isle of Wright, James City, Lancaster, Mathews, Middlesex, Newport News Northumberland, Suffold, Surry, Westmoreland York.<br>Independent  Cities: Chesapeake, Norfolk, Virginia Beach. |
| North Carolina - | Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Duplin, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington. |
| South Carolina - | Beaufort, Berkley, Charleston, Colleton, Dorchester, Florence, Georgetown, Hampton, Horry, Jasper, Marion, Williamsburg Georgia – Brantley, Bryan, Chatham, Camden, Effingham, Glynn, Liberty, Long, McIntosh |
| Florida - | The entire state |
| Alabama - | Baldwin, Mobile |
| Mississippi - | George, Hancock, Harrison, Jackson, Pearl River |
| Louisiana - | Assumption, Calcasieu, Cameron, Jefferson Davis, Vermilion, Iberia, St. Mary, Terrebonne, La Fourch, Plaque Mines, St. Martin, St. Bernard, St. Tammany, Jefferson, Orleans |
| Texas - | Jefferson, Chambers, Harris, Bazoria, Galveston, Matagorda, Jackson, Calhoun, Refugio, Nueces, Aransas, Liberty, Orange, San Patricio, Kenedy, Kleberg, Wilacy, Cameron |
| Guam | |
| Puerto Rico | |
| U.S. Virgin Islands | |

CONFIDENTIAL                                                    SEARS_SantaRosaMall 00000036

Policy Number PTNAM1701557

**NEW MADRID EARTHQUAKE  COUNTIES**

| ARKANSAS | Arkansas | Ashley | Chicot | Desha |
| | Drew | Fulton | Grant | Izard |
| | Jefferson | Lincoln | Lonoke | Monroe |
| | Prairie | Pulaski | Saline | White |
| | Woodruff | | | |

| ILLINOIS | Bond | Calhoun | Christian | Clark |
| | Clay | Clinton | Coles | Crawford |
| | Cumberland | Edwards | Effingham | Fayette |
| | Greene | Jasper | Jersey | Lawrence |
| | Macoupin | Madison | Marion | Monroe |
| | Montgomery | Morgan | Pike | Randolph |
| | Richland | Sangamon | Scott | Shelby |
| | St. Clair | Wabash | Washington | Wayne |

| INDIANA | Crawford | Daviess | Dubois | Gibson |
| | Greene | Knox | Lawrence | Martin |
| | Orange | Perry | Pike | Posey |
| | Spencer | Sullivan | Vanderburgh | Warrick |

| KENTUCKY | Breckinridge | Butler | Christian | Daviess |
| | Hancock | Logan | Ohio | Simpson |
| | Todd | Trigg | Warren | |

| MISSISSIPPI | Alcorn | Benton | Bolivar | Calhoun |
| | Carroll | Chickasaw | Choctaw | Clay |
| | Grenada | Holmes | Humphreys | Issaquena |
| | Itawamba | Lafayette | Lee | Leflore |
| | Lowndes | Marshall | Monroe | Montgomery |
| | Oktibbeha | Pontotoc | Prentiss | Sharkey |
| | Sunflower | Tippah | Tishomingo | Union |
| | Warren | Washington | Webster | Yalobusha |
| | Yazoo | | | |

| MISSOURI | Audrain | Callaway | Cole | Crawford |
| | Dent | Franklin | Gasconade | Howell |
| | Iron | Jefferson | Lincoln | Maries |
| | Marion | Miller | Montgomery | Oregon |
| | Osage | Phelps | Pike | Pulaski |
| | Ralls | Reynolds | Shannon | St. Charles |
| | St. Francois | St. Louis | St. Louis City | |
| | Ste. Genevieve | Texas | Warren | Washington |

| TENNESSEE | Cheatham | Decatur | Dickson | Hardin |
| | Hickman | Houston | Lawrence | Lewis |
| | McNairy | Mongomery | Perry | Robertson |
| | Stewart | Wayne | | |

CONFIDENTIAL                                        SEARS_SantaRosaMall 00000037

Policy Number PTNAM1701557

**PACIFIC NORTHWEST  EARTHQUAKE  COUNTIES**

| WASHINGTON | Clallam | Clark | Cowlitz |
|---|---|---|---|
| | Grays Harbor | Island | Jefferson |
| | King | Kitsap | Lewis |
| | Mason | Pacific | Pierce |
| | San Juan | Skagit | Thurston |
| | Wahkiakum | | |

| OREGON | Benton | Clackamas | Clatsop |
|---|---|---|---|
| | Columba | Lane | Lincoln |
| | Marion | Multnomah | Polk |
| | Tillamook | Washington | Yamhill |

CONFIDENTIAL                                        SEARS_SantaRosaMall 00000038

## ENDORSEMENT 2

## PARTICIPATION ENDORSEMENT

Notwithstanding anything contained in the policy to the contrary the total amount to be indemnified under this policy shall not exceed USD450,000,000 in respect of any limits of liability shown in Clause 3 of the policy – Limits of Liability nor USD450,000,000 of the recoverable loss in any one Occurrence.

**INSURER PARTICIPATION**

Subject to the terms and conditions contained herein and in consideration of the Insured, named herein or named in endorsements or amendments attached hereto, having paid or agreed to pay an annual Net premium, in the amount indicated in the table below, to the Insurer who has hereto subscribed it's name, the Insurer agrees to pay the Insured or the Insured's successors and assigns for loss or damage, all as more fully set forth herein, during the period of this insurance stated herein for an amount not to exceed the Limits stated herein and limited to the Insurer's participation as described below.

CONFIDENTIAL                                                        SEARS_SantaRosaMall 00000039

Policy Number PTNAM1701557

## ENDORSEMENT 3

It is hereby understood and agreed that with effect from inception, the following Clause is included in this insurance:

### Biological or Chemical Materials Exclusion

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

Malicious use of chemical materials does not include Arson or any materials used in connection with same.

**NMA2962 (Modified)**
**06/02/03**

All other terms, conditions and limitations of this policy remain unaltered.

CONFIDENTIAL                                                SEARS_SantaRosaMall 00000040

## ENDORSEMENT 4

It is hereby understood and agreed that with effect from inception, the following endorsement is included in this insurance:

## ASBESTOS ENDORSEMENT

A.  This Policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the period of insurance by one of these Listed Perils:

As defined in Part I – Risk Details

This coverage is subject to each of the following specific limitations:

1.  The said building or structure must be insured under this Policy for damage by that Listed Peril.

2.  The Listed Peril must be the immediate, sole cause of the damage of the asbestos.

3.  The Assured must report to Underwriters the existence and cost of the damage as soon as practicable after the Listed Peril first damaged the asbestos.  However, this Policy does not insure any such damage first reported to the Underwriters more than 12 (twelve) months after the expiration, or termination, of the period of insurance.

4.  Insurance under this Policy in respect of asbestos shall not include any sum relating to:

(i)  any faults in the design, manufacture or installation of the asbestos;

(ii)  asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

B.  Except as set forth in the foregoing Section A, this Policy does not insure asbestos or any sum relating thereto.

**LMA5019 (Modified)**
**14/09/2005**
All other terms, conditions and limitations of this policy remain unaltered.

CONFIDENTIAL                                                    SEARS_SantaRosaMall 00000041

## ENDORSEMENT 5

It is hereby understood and agreed that with effect from inception, the following endorsement is included in this insurance:

### ELECTRONIC DATA ENDORSEMENT A

**1.   Electronic Data Exclusion**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

(a)   This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

(b)   However, in the event that a peril listed below results from any of the matters described in paragraph (a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils – As detailed in Risk Details.

CONFIDENTIAL                    SEARS_SantaRosaMall 00000042

Policy Number PTNAM1701557

2. **Electronic Data Processing Media Valuation**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed sublimit as detailed in Risk Details any one loss, incurred by the assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

25/01/01
NMA2914

All other terms, conditions and limitations of this policy remain unaltered.

CONFIDENTIAL                                           SEARS_SantaRosaMall 00000043

Policy Number PTNAM1701557

## ENDORSEMENT  6

It is hereby understood and agreed that the following clause is added hereon:

**MOLD, MILDEW AND FUNGUS CLAUSE**

It is understood and agreed that:-

A.      This policy only insures physical loss or damage to insured property by mold, mildew or fungus that directly results from physical loss or damage to property insured by this policy during the policy period by one of the following listed perils:

> Fire; Explosion; Lightning; Windstorm; Hail; Direct Impact of Vehicle; Aircraft or Vessel; Riot or Civil Commotion; Vandalism or Malicious Mischief; Accidental Discharge of Fire Protection Equipment; Water Damage or Flood.

This coverage is subject to all limitations in the policy to which this endorsement is attached and, in addition, to each of the following specific limitations:

1.      The said property must otherwise be insured under this policy for physical loss or damage by that Listed Peril.

2.      The Insured must report to the Insurers the existence and cost of the physical loss or damage by mold, mildew or fungus as soon as practicable, but no later than six (6) months after the Listed Peril first caused any physical loss or damage to insured property during the policy period. This policy does not insure any physical loss or damage by mold, mildew or fungus first reported to underwriters after that six (6) month period.

3.      Regardless of circumstances or other policy provisions, the maximum amount insured and payable under this policy for all mold, mildew or fungus caused by or resulting from any Listed Peril is as detailed in Risk Details.

B.      Except as set forth in the foregoing Section A., this policy does not insure any loss, damage, claim, cost, expense, or other sum directly or indirectly arising out of or relating to mold, mildew or fungus of any type, nature or description.

All other terms, conditions and limitations of this Policy remain unaltered.

CONFIDENTIAL                                    SEARS_SantaRosaMall 00000044

Policy Number PTNAM1701557

**ENDORSEMENT  7**

**APPLICATION  OF  SUBLIMITS  ENDORSEMENT**

It is hereby understood and agreed that the Application of Sublimits Endorsement is deleted and replaced with the following:

1.    **Application To Insured Interests**.    Each sublimit stated in this policy applies as part of, and not in addition to, the overall policy limit for an occurrence insured hereunder. Each sublimit is the maximum amount potentially recoverable from all insurance layers combined for all insured loss, damage, expense, time element or other insured interest arising from or relating to that aspect of the occurrence, including but not limited to type of property, construction, geographic area, zone, location, or peril.

2.    **Application Within Perils**.    If insured under this policy, any sublimit for earthquake, earth movement, flood, named storm, or named windstorm is the maximum amount potentially recoverable from all insurance layers combined for all insured loss, damage, expense, time element or other insured interest arising from or relating to such an occurrence.    If flood occurs in conjunction with a named storm, named windstorm, earthquake or earth movement, the flood sublimit applies within and erodes the sublimit for that named storm, named windstorm, earthquake or earth movement.

This endorsement takes precedence over and, if in conflict with any other wording in the contract bearing on the application of sublimits, replaces that wording.

All other terms, conditions and limitations of this Policy remain unaltered.

**LMA5130 (Modified)**

CONFIDENTIAL                                        SEARS_SantaRosaMall 00000045

Policy Number PTNAM1701557

### ENDORSEMENT  8

### EXTENDED  INCREASED  COST OF CONSTRUCTION

This policy also provides coverage for increased cost of construction due to the enforcement of any law, ordinance and/or governmental directive regulating the construction, repair or use of property that comes into force and effect within 12 months after the date of loss.

All other terms, conditions and limitations of this Policy remain unaltered

CONFIDENTIAL                                    SEARS_SantaRosaMall 00000046

Policy Number PTNAM1701557

### SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

15/09/10
LMA3100

# SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United Stat es District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon Messrs Mendes & Mount, 750 Seventh Avenue, New York, New York 10019-6829, U.S.A. and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficia ry hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

24/4/86
NMA1998

### TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or

CONFIDENTIAL                                                    SEARS_SantaRosaMall 00000047

Policy Number PTNAM1701557

indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.


08/10/01
NMA2920


## U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
### Not Purchased Clause


*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.


LMA5219
12 January 2015


## ILLINOIS SURPLUS LINES NOTICE


**Notice to Policyholder:   This contract is issued, pursuant to Section 445 of the Illinois Insurance Code, by a company not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guaranty Fund.**

CONFIDENTIAL                                SEARS_SantaRosaMall 00000048

Policy Number PTNAM1701557

01/09/13
LMA9046

## PREMIUM PAYMENT CONDITION (TIME ON RISK)

It is a condition of this contract of Insurance that the premium due at inception must be paid to and received by Insurers on or before midnight on the date specified under Risk Details.

If this condition is not complied with, then this contract of Insurance shall terminate on the above date with the Insured hereby agreeing to pay premium calculated at not less than pro rata temporis.

**PPC5 (TOR) 4/86**

CONFIDENTIAL                                SEARS_SantaRosaMall 00000049

Policy Number PTNAM1701557

## INFORMATION

Total Insured Values:

USD 22,765,315,021

Submissions provided to (Re)insurer(s) and, for those markets that use EbixExchange, added to the Data Pack

CONFIDENTIAL                                              SEARS_SantaRosaMall 00000050

## CONTRACT ADMINISTRATION AND ADVISORY SECTIONS

## SUBSCRIPTION AGREEMENT

**SLIP LEADER**

The Slip Leader is Lex-London a Division of AIG Europe Limited

In respect of electronic lines, the Slip Leader is as defined in Security Details herein.

**BUREAU(X) LEADER(S)**

The Bureau(x) Leader(s) (where applicable) is Lex-London a Division of AIG Europe Limited

**BASIS OF AGREEMENT TO CONTRACT CHANGES**

General Underwriting Agreement (February 2014) with:

Non-Marine Schedule (October 2001) except as below:

- Agree extend for up to one calendar month at pro rata additional premium as agreed by Slip Leader only;

- Extensions to any Premium Payment Warranty (PPW), Premium Payment Condition (PPC), Prompt Payment Discount (PPD) or Settlement Due Date (SDD) are to be agreed by the Slip Leader only;

- When details of agreed endorsements are required to be provided to following (re)insurer(s), email and/or other electronic means may be used by Aon UK Limited.

Wherever practicable, between the broker and each (re)insurer which have at any time the ability to send and receive ACORD messages:

1. the broker agrees that any proposed contract change will be requested via an 'ACORD message' or using an ACORD enabled electronic trading platform;

2. whilst the parties may negotiate and agree any contract change in any legally effective manner, each relevant (re)insurer agrees to respond via an appropriate 'ACORD message' or using an ACORD enabled electronic trading platform;

3. where a (re)insurer has requested to receive notification of any contract change the broker agrees to send the notification via an 'ACORD message' or using an ACORD enabled electronic trading platform.

**OTHER AGREEMENT PARTIES FOR CONTRACT CHANGES, FOR PART TWO GUA CHANGES ONLY**

Where no Other Agreement Parties for contract changes are stated herein, the Agreement Parties will be the Slip Leader only.

**AGREEMENT PARTIES FOR CONTRACT CHANGES, FOR THEIR PROPORTION ONLY**

None.

**BASIS OF CLAIMS AGREEMENT**

Claims to be managed in accordance with:

- The Lloyd's Claims Scheme (Combined), or as amended or any successor thereto. The applicable Scheme/part will be determined by the rules and scope of the Scheme(s);

- IUA claims agreement practices;

CONFIDENTIAL                                                SEARS_SantaRosaMall 00000051

Policy Number PTNAM1701557

- The practices of any (re)insurer(s) electing to agree claims in respect of their own participation.

Unless otherwise detailed in the Risk Details, the Slip Leader may instruct any third party expert to investigate and adjust any claim or circumstance notified to the contract.

**CLAIMS AGREEMENT PARTIES**

The Lead Claims Agreement Party is deemed to be the Slip Leader unless otherwise specified here.

For Lloyd's syndicates, the leading Lloyd's syndicate and, where required by the applicable Lloyd's Claims Scheme, the second Lloyd's syndicate. The second Lloyd's syndicate is ACT 9536.

For company (re)insurers, all IUA subscribing companies agree to follow the IUA claims agreement practices

All other subscribing (re)insurers, each in respect of their own participation, that are not party to the Lloyd's or IUA claims agreement practices, agree to follow the decisions of the Lloyd's and IUA claims agreement parties or the lead Claims Agreement Party where such is not otherwise the Lloyd's or IUA lead, excepting those that may have opted out below.

**CLAIMS ADMINISTRATION**

Aon UK Limited will notify claims agreement parties, and where applicable following (re)insurer(s) that do not participate in the Lloyd's and IUA claims schemes, of claims submitted to the contract, and provide material updates. Wherever possible such notifications and updates will be given and administered via ECF or other electronic platform at Aon UK Limited's election.

**RULES AND EXTENT OF ANY OTHER DELEGATED CLAIMS AUTHORITY**

None, unless otherwise specified here by any of the claim agreement parties shown above.

**EXPERT(S) FEES COLLECTION**

Aon UK Limited will not undertake the collection of any fee invoices rendered by third parties unless the fees form part of the (re)insured's claim or the work is for the exclusive benefit of the (re)insured.

In the event of Aon UK Limited not collecting third party fees the following applies:

Xchanging Claims Services Limited to collect fees for all slip security, including overseas (re)insurers unless the leading claims agreement party elects an alternate on a case by case basis.

**SETTLEMENT DUE DATE**

30th July 2017
Unless otherwise stated by (re)insurer(s), the Settlement Due Date is 90 days from inception in respect of direct business and 120 days from inception in respect of reinsurance business.

In respect of electronic lines, please refer to the Settlement Information shown under Security Details herein which is deemed to supersede the above.

**NOTICE OF CANCELLATION DELIVERY PROVISIONS**

Where the terms and conditions of this Contract allow for notice of cancellation to be issued, such notice of cancellation shall be provided to Aon UK Limited by email to aon.gbc.noc@aon.co.uk.

Failure to comply with this delivery requirement will make the notice null and void.

CONFIDENTIAL                                                 SEARS_SantaRosaMall 00000052

Delivery of the notice in accordance with this requirement will cause it to be effective irrespective of whether Aon UK Limited has acknowledged receipt.

**BUREAUX ARRANGEMENTS**

Aon UK Limited will submit de-linked accounts to Xchanging Ins-Sure Services Ltd (XIS) where possible.

In respect of any PPW, PPC, PPD or SDD the following apply:

- Premium payment requirements are deemed met by presentation of premium/accounts to XIS on or before the SDD and will not be recorded as a late signing or payment;

- The SDD is deemed in all instances to be the same as the PPW, PPC or PPD due date;

- Where the PPW, PPC or PPD has been updated then the SDD shall be deemed to be updated in parallel, unless otherwise stated to the contrary;

- The PPW, PPC, PPD or SDD shall not be deemed to be breached if the original presentation of the electronic submission to XIS is in time, but subsequently amendments to the electronic submission are notified as being required to enable the premium signing to be completed.  In such event Aon UK Limited shall have an additional period of seven days from such notification to complete the amendments and resubmit the electronic submission to XIS;

- Where a PPW, PPC, PPD or SDD falls on a weekend or public holiday, presentation to XIS on the next working day will be deemed in compliance with the PPW,PPC, PPD or SDD.

(Re)insurer(s) hereby agree that any premium payable in instalments under this contract will be processed as delinked Additional Premium entries other than when submitted under the Deferred Account Scheme. However any annual instalments to be allocated to respective year of account.

(Re)insurer(s) authorise XIS to issue separate signing numbers and dates for their participations only and issue a single claims FDO signing where applicable.

Where payments are received by Aon UK Limited in convertible currencies, (re)insurer(s) agree to accept/settle accounts at rate(s) of exchange obtained by Aon UK Limited.

In respect of convertible currencies, (re)insurer(s) instruct XIS to accept settlement in any valid settlement currency as determined by Aon UK Limited.

In the event of this contract stating multiple insurance and/or reinsurance premiums (each to be paid from a different source); and/or separate entries/sections for taxation/regulation reporting purposes, XIS are instructed to leave the premium advice notes ungrouped so that each can be released separately once paid by the respective client.

In the event of partial premium received by Aon UK Limited, (re)insurer(s) agree to accept premium as paid to and endorsed by Aon UK Limited.

XIS are authorised to sign premium from individual Insureds / territories / sections separately as and when received by Aon UK Limited.

(Re)insurers agree that Aon UK Limited may settle premiums for

CONFIDENTIAL                                        SEARS_SantaRosaMall 00000053

Policy Number PTNAM1701557

this contract/release de-linked premium for this contract into settlement at different times.

**NON BUREAUX ARRANGEMENTS**

Where a PPW, PPC, PPD or SDD falls on a weekend or public holiday, presentation to (re)insurer(s) hereon as applicable on the next working day will be deemed in compliance with the PPW, PPC, PPD or SDD.

Where payments are received by Aon UK Limited in convertible currencies, (re)insurer(s) agree to accept/settle accounts at rate(s) of exchange obtained by Aon UK Limited.

In respect of convertible currencies, (re)insurer(s) agree to accept settlement in any valid settlement currency as determined by Aon UK Limited.

In the event of partial premium received by Aon UK Limited, (re)insurer(s) agree to accept premium as paid to and endorsed by Aon UK Limited.

CONFIDENTIAL                                        SEARS_SantaRosaMall 00000054

Policy Number PTNAM1701557

# FISCAL AND REGULATORY

**TAX PAYABLE BY (RE)INSURER(S):** 5.00% Premium Tax in respect of US Virgin Islands

**COUNTRY OF ORIGIN:** United States of America

**OVERSEAS BROKER:** Aon Risk Services Central Inc (Formerly Known As Aon Risk Services Inc Of Illinois)
Aon Center
200 East Randolph Street
Chicago
Illinois 60601
United States of America

**SURPLUS LINE BROKER:** Aon Center
200 East Randolph Street
Chicago
Illinois
United States of America
60601Licence Number:- 2122152

**STATE OF FILING** Illinois

**US CLASSIFICATION:** **Surplus Lines**

| | | |
|---|---|---|
| USClassification | | 100.0000% |
| | **Total:** | **100.0000%** |

**In respect of International Premium only:**

| | | |
|---|---|---|
| Puerto Rico | | 86.81% |
| US Virgin Islands | | 8.44% |
| Guam | | 4.75% |
| | **Total:** | **100.0000%** |

**NAIC CODES:** Not applicable

**ALLOCATION OF PREMIUM TO CODING:** P2 for 100%

In respect of electronic lines, please refer to the Settlement Information shown under Security Details herein.

**REGULATORY CLIENT CLASSIFICATION:** Large Risk

| State of Exposure | Licensee | Location | License |
|---|---|---|---|
| IL | William M Murphy | Chicago, IL | 2122152 |

CONFIDENTIAL                                           SEARS_SantaRosaMall 00000055

Policy Number PTNAM1701557

# BROKER REMUNERATION AND DEDUCTIONS

**TOTAL BROKERAGE:**          10.00%

**OTHER DEDUCTIONS
FROM PREMIUM:**          Nil.

CONFIDENTIAL                              SEARS_SantaRosaMall 00000056

# SECURITY DETAILS

**(RE)INSURER'S  LIABILITY:**

**(Re)insurer's  liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

LMA3333 (amended)

CONFIDENTIAL                    SEARS_SantaRosaMall 00000057

Policy Number PTNAM1701557

**ORDER HEREON:**          As per total signed lines as detailed in Security Details

**BASIS OF WRITTEN
LINES:**          ☒   Percentage of Whole
                 ☐   Percentage of Order
                 ☐   Part of Whole
                 ☐   Part of Order

**BASIS OF SIGNED LINES:**   ☒   Percentage of Whole
                 ☐   Percentage of Order
                 ☐   Part of Whole
                 ☐   Part of Order

**SIGNING PROVISIONS:**

In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the (re)insurers.

However:

   a)   in the event that the placement of the order is not completed by the commencement date of the period of insurance then all lines written by that date will be signed in full;

   b)   the (re)insured may elect for the disproportionate signing of (re)insurers' lines, without further specific agreement of (re)insurers, providing that any such variation is made prior to the commencement date of the period of insurance, and that lines written "to stand" may not be varied without the documented agreement of those (re)insurers.

The signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the documented agreement of the (re)insured and all (re)insurers whose lines are to be varied. The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.

**WRITTEN LINES:**       As per attached

In a co-insurance placement, following (re)insurers may, but are not obliged to, follow the premium charged by the lead (re)insurer.

(Re)insurers may not seek to guarantee for themselves terms as favourable as those which others subsequently achieve during the placement.

CONFIDENTIAL                                        SEARS_SantaRosaMall 00000058

**Policy Number:** (UMR) B1526PTNAM1701557

## SECURITY DETAILS

### REFERENCES

Policy No: PTNAM1701557
Market Submission Version: 30/5/2017 2
EbixExchange Version: 1.0
Date contract published to EbixExchange Marketplace: 12:00PM 30 May 2017 (GMT)
UMR (Unique Market Reference): B1526PTNAM1701557

## SIGNED UNDERWRITERS

**Lex-London a Division of AIG Europe Limited**

Jonathan McCombie

| **Written Line** | 8.50 % | **Signed Line** | 8.50 % |
|---|---|---|---|
| **Agreed on** | 11:42AM 31 May 2017 Greenwich Mean Time | **Effective from** | Inception |

| For and on behalf of: | % of Written Line | Written Line | Signed Line |
|---|---|---|---|
| **Lex-London a Division of AIG Europe Limited** | 100.00 % | 8.50 % | 8.50 % |
| Bound as Slip Leader | | | |
| *Reference:* | 87076781_2017 | | |

**Line Conditions**

Line to Stand
All contract amendments to be agreed.

CONFIDENTIAL        SEARS_SantaRosaMall 00000059