**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, *et al*,[1]<br><br>Debtor.<br><br>―――――――――――――――<br><br>TRANSFORM HOLDCO LLC,<br><br>Plaintiff,<br><br>-against-<br><br>SEARS HOLDINGS CORPORATION, *et al*,<br><br>Defendant. | Chapter 11<br><br>Case No. 18023528 (RDD)<br><br>Jointly Administered<br><br><br><br><br><br>Adv. Proc. No. 19-_____(RDD) |

**ADVERSARY COMPLAINT**

Plaintiff Transform Holdco LLC, (the "Buyer" or "Transform"), the buyer under that certain Asset Purchase Agreement, dated as of January 17, 2019, by and among Sears Holdings Corporation ("SHC" or "Sears"), each of SHC's subsidiaries party thereto (together

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

with SHC, the "Sellers," and all together with Transform, the "Parties"), and Transform (as may be amended, restated, supplemented or modified from time to time, the "APA"),[2] by and through its attorneys, Cleary Gottlieb Steen & Hamilton LLP, files this adversary complaint pursuant to 11 U.S.C. § 105, 28 U.S.C. § 2201, and Rule 7001 of the Federal Rules of Bankruptcy Procedure against the Sellers that are currently Debtors in this Chapter 11 proceeding (the "Defendants")[3] and alleges as follows:

## NATURE OF THE ACTION

1. Transform brings this adversary complaint against Defendants to address a breach of contract in contravention of the APA and this Court's *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief*, Docket No. 2507 (the "Sale Order"), authorizing the sale of substantially all of the Defendants' assets to Transform (the "Sale Transaction"). Specifically, the Defendants have failed to deliver title to an owned parcel of land in Fort Lauderdale, Florida that is related to and used in connection with an operating retail location that was assigned to Transform.

---

[2] The APA refers to the Asset Purchase Agreement filed as Ex. B to the *Order (I) Approving the Asset Purchase Agreement among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection therewith and (IV) Granting Related Relief*, Docket No. 2507, (the "Sale Order"), as amended by the Amendment No. 1 to Asset Purchase Agreement filed as Ex. E to the *Notice of Filing Executed (I) Employee Lease Agreement, (II) Services Agreement, and (III) Amendment No. 1 to the Asset Purchase Agreement*, Docket No. 2599,- (the "Notice of Filing of Amendment No. 1 to the APA"). All capitalized terms used but not defined herein shall have the meaning ascribed to them in the APA.

[3] The Defendants in this Adversary Proceeding are each of the Debtors in the Chapter 11 proceeding.

-2-

2.   The Defendants' course of conduct has violated the Court's Sale Order and deprived Transform of bargained-for assets.  Prompt resolution of the dispute raised in this Complaint is important not only to Transform and its ability to operate the assets it purchased, but also to the administration of the estates as the Defendants seek to confirm a Chapter 11 plan.[4]

3.   Transform's parent company, ESL Investments, Inc. ("ESL"), was Sears' largest shareholder and creditor prior to these bankruptcy proceedings, in large part due to its longstanding efforts to provide Sears with a path towards growth and success in a period of unprecedented upheaval for the retail sector in America.

4.   Consistent with its more than 15-year commitment to Sears and Kmart, ESL from the outset of these Chapter 11 proceedings was the only bidder to submit a viable going-concern bid for substantially all of the Defendants' assets.  Transform's final winning bid of $5.2 billion represented the only going-concern bid for substantially all of Sears' assets.  Defendants selected Transform's bid as the highest and best, and the Court ruled that this sale was in the best interests of all stakeholders, including the Defendants' estates and their creditors.

5.   Through much effort by all the Parties, the APA was structured to balance the Defendants' concerns about administrative solvency and certainty of meeting Closing conditions with Transform's need for assurances that Sears would continue operating in the ordinary course pending the sale and deliver a going concern with the necessary assets and liquidity.

---

[4] On May 25, 2019, Transform commenced an action, T*ransform Holdco LLC v. Sears Holdings Corp., et al.*, Adv. Pro. 19-08262, against Sears for numerous breaches of the APA. Those breaches are independent of that pled here. In any event, the Debtors have failed to respond to Transform's complaints. Accordingly, Transform is compelled to bring this action.

6. The Defendants have continuously violated the APA as set forth in the complaint in the adversary proceedings captioned *Transform Holdco LLC v. Sears Holdings Corp., et al.*, Adv. Pro. 19-08262 and *Transform Holdco LLC. v. Sears Holdings Corp., et al.*, Adv. Pro. 19-08276.

7. Defendants' latest violation is the subject of this action. Defendants have failed to deliver the deed to a parcel of land which, along with several other parcels – all of which have been transferred to Transform – are related to a Sears retail store located in Fort Lauderdale, Florida and which Transform is owed under the terms of the APA. The other relevant parcels were the subject of leases that were assumed and assigned to Transform. However, the Defendants have thus far refused to transfer title to a related and integrated parcel which was owned in fee.

8. The Defendants' misconduct has harmed Transform by depriving it of assets that it contracted to purchase under the APA. Transform has attempted in good faith to resolve this dispute with the Defendants. However, the Defendants have thus far remained intent on obstructing the performance under the APA to which Transform is entitled without articulating any grounds for their failure to comply with the agreement,.

9. Transform therefore brings this Adversary Complaint to obtain specific performance and to preserve and protect its operations in Fort Lauderdale, Florida.

## JURISDICTION AND VENUE

10. On October 15, 2018 (the "Petition Date"), the Defendants filed the above-captioned bankruptcy case under Chapter 11 of the United States Code (the "Bankruptcy Code"). This adversary proceeding arises from and is related to this Chapter 11 proceeding currently pending in this Court.

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

12. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

13. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14. This is an adversary proceeding brought pursuant to Rule 7001(1) and (9) of the Federal Rules of Bankruptcy Procedure.

## THE PARTIES

15. Transform is a limited liability company established under the laws of the State of Delaware for the purpose of purchasing and operating the go-forward Sears and Kmart businesses as purchased from the Defendants pursuant to the APA and the Sale Order.

16. Transform is a subsidiary of non-party ESL, which was Sears' largest shareholder and creditor as of the Petition Date. ESL was founded in 1988 by non-party Edward S. Lampert. ESL purchased a controlling stake in Kmart in 2003, and Kmart and Sears merged in March 2005 to form SHC. Following the merger, Lampert became Chairman of SHC's Board of Directors. In February 2013, SHC's Board asked Lampert to become CEO, a position in which Lampert remained until his resignation on the Petition Date. Lampert resigned as Chairman and Director of SHC on February 12, 2019, following the consummation of the Sale Transaction.

17. The Defendants are the Sellers under the APA that are currently Debtors in this Chapter 11 proceeding. The Defendants operated a large retail business throughout forty-nine states, Guam, Puerto Rico, and the U.S. Virgin Islands. Among other things, the Defendants sold products in the appliance, tool, lawn and garden, fitness equipment, and automotive repair and maintenance sectors. As of the Petition Date, the Defendants operated 687 department stores,

mainly based in shopping malls, as well as big-box discount stores, under the brand names Sears and Kmart.

## FACTUAL BACKGROUND

18. This dispute centers around a parcel of land (the "Fee Owned Parcel") that was used by Sears or one of its subsidiaries in connection with the operation of a Sears retail store in Fort Lauderdale, Florida (the "Fort Lauderdale Store" or the "Store").

19. The Fort Lauderdale Store property includes one large parcel with a department store building and several smaller parcels across the street from the department store that are used primarily, if not exclusively, as parking lots for the Store. The Fee Owned Parcel is one of the parcels located across the street and used as a parking lot for the Store. The parking lot parcels are mostly located together as one indivisible parking lot (the "Parking Lot"). Sears held a ground lease interest in all but one of the parking lot parcels. The lot that is the subject of this Adversary Complaint was held in fee by Sears.[5]

20. Attached as Exhibit A is an aerial map showing the Fort Lauderdale Store and related property, with the Fee Owned Parcel outlined in red, showing the lack of any visible divisions between the properties.

21. The leased properties related to the Fort Lauderdale Store were assumed and assigned to Transform pursuant to the *Order (I) Authorizing Assumption and Assignment of Certain Leases and (II) Granting Related Relief*, Docket No. 3850 (the "Assumption and Assignment Order"). Accordingly, to date, Defendants have transferred all of their rights in the

---

[5] The Fee Owned Parcel actually consists of two legal parcels. The first has the following legal description: lots 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45 in Block 254, of Resubdivision of Block 254, PROGRESSO, according to the plat thereof recorded in Plat Book 72, page 2, of the Public Records of Broward County, Florida. The second has the following legal description: lots 8, 9, 10 and 11 and lots 46, 47 and 48, less a portion of lot 48 for right-of-way, Block 254, of PROGRESSO, according to the plat thereof as recorded in Plate Book 2, page 18, of the Public Records of Miami – Dade County, Florida, said lands now lying in Broward Country, Florida.

parcels comprising the Fort Lauderdale Store property except they have failed to deliver the deed to the Fee Owned Parcel following the Closing.

22. The process leading up to the Sale Transaction began in November 2018, and in December 2018 ESL submitted its first going concern bid. *See Debtors' Omnibus Reply in Support of the Going Concern Sale Transaction*, ECF No. 2328, ¶ 4, 24. At all times during the sale process, ESL sought to purchase, and the Defendants sought to sell, substantially all of the Defendants' assets as a part of a going-concern business. *See id.* at ¶ 3-4. While it was important to swiftly close the Sale Transaction, the diligence process was both extensive and thorough. *See id.* at ¶ 25, 58.

23. On February 8, 2019, the Court entered the Sale Order, which approved of the Sale Transaction and the APA. Among other things, the APA effectuates the transfer of the Seller's Operating Owned Property, which is real property listed on Schedule 1.1(p) thereof.[6] The Fee Owned Parcel was not included on this schedule, and Transform was not aware that a portion of the Fort Lauderdale Store property was fee-owned.

24. On information and belief, the Defendants were similarly unaware that a portion of the parking lot used in connection with the Fort Lauderdale Store was fee-owned. Therefore, the Fee Owned Parcel was unintentionally omitted from the APA despite the intention, agreement and understanding between the parties.

25. In addition, under the APA, the Defendants agreed to deliver "all assets, properties and rights Related to the Business," which necessarily included all the parcels comprising the Fort Lauderdale Store property.[7]

---

[6] APA § 1.

[7] APA § 2.1.

26. Section 2.1 of the APA provides that, on the Closing Date, the Defendants would "sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered" to Transform, and Transform would "purchase, all right, title and interest of Sellers, in, to or under all assets, properties and rights Related to the Business other than the Excluded Assets, and the following assets, properties and rights."[8]

27. Business is defined in the Recitals in the APA to include, among other things, "a national network of retail stores and pharmacies under the 'Sears' and 'Kmart' brands as conducted at the Operating Owned Properties and the Operating Lease Properties (as defined below) and the supporting general and administrative functions related to such retail stores."[9]

28. Operating Lease Properties is defined in Article I of the APA as the "real property demised pursuant to an Operating Lease," which in turn is defined in the APA, in relevant part, as "leases or lease agreements (including ground leases) related to the real properties identified on Schedule 1.1(o) (together with all amendments, modifications, supplements and renewals thereof)."[10]

29. The ground lease associated with the Fort Lauderdale Store is identified as Store Number 1195 in Schedule 1.1(o) (the "Operating Leases").[11] Accordingly, the Fort Lauderdale Store is a part of the "Business" as defined in the APA.

30. The Fee Owned Parcel is property "Related" to the Fort Lauderdale Store. "Related" is defined in Article I of the APA as "owned or held primarily by, required primarily for, or used, intended for use, leased or licensed, primarily in connection with, or (in the case of

---

[8] APA § 2.1.

[9] APA Recitals.

[10] APA § 1.

[11] APA Schedule 1.1(o).

-8-

Liabilities) to the extent accrued, reserved or incurred in connection with, such business, asset or Liability."[12]

31.  All of the parcels comprising the Fort Lauderdale Store property, except for the portions of land on which the Store building sits, serve as parking lots to facilitate the Fort Lauderdale Store's continued operation.

32.  The Fee Owned Parcel is used "primarily in connection" with the adjoining parcels as parking for commercial and customer vehicles servicing or visiting the Fort Lauderdale Store. It is equally plain that the parcel is and was "used" and "intended for use" in connection with the Fort Lauderdale Store. The Fee Owned Parcel is intermingled with, and indistinguishable from, the other parcels that together form two parking lots across the street from the Fort Lauderdale Store. The layout of the parcels makes clear that they were all intended to be "used" together for the same purpose.

33.  The APA does not contemplate, nor did any of the Parties ever intend to, divide the parcels of land that make up the Fort Lauderdale Store property or any properties Related to the transferred Business. The clear intent supporting Section 2.1 is to keep Business-Related properties together; nevertheless, Defendants' conduct to date suggests an intent to insist on a piecemeal division of the properties Related to the Fort Lauderdale Store, rendering the property and Defendants' performance obligations under the APA incomplete and jeopardizing Transform's use and operation of the Fort Lauderdale Store. But there is no basis in the APA to conclude that the Fee Owned Parcel should be severed from the remainder of the Fort Lauderdale Store property.

---

[12]   APA § 1.

34. The only exclusion from the broad language in Section 2.1 is for "<u>Excluded Assets</u>" defined to include, in relevant part "any real property interest of any kind or nature that is not Related to Owned real Property or the Assigned Leases." The lease associated with the Fort Lauderdale property was assigned and, therefore, the Fee Owned Parcel is Related to an Assigned Lease and not an "Excluded Asset" as that term is used in the APA.

35. Thus, under Section 2.1 of the APA, Transform acquired title to the Fee Owned Parcel as of the Closing Date as properties "Related to the Business."

36. Defendants understood the intention was that the APA transfer properties in whole. Indeed, their actions with respect to the Fort Lauderdale Store property have largely been consistent with that approach; Defendants have transferred all of their property rights in the parcels comprising the Fort Lauderdale Store property except the Fee Owned Parcel.

37. On September 6, 2019, Transform informed Defendants that they had not received the deed to the Fee Owned Parcel and requested that Defendants complete their performance and promptly transfer title to each parcel pursuant to the terms of the APA. On September 10, 2019, Transform provided the Defendants with further details on the Fee Owned Parcel, including its legal description.

38. On September 11, 2019, Transform and the Defendants had a phone call to discuss the Fort Lauderdale Store and the Fee Owned Parcel. The Defendants indicated they were still evaluating the claims relating to the Fee Owned Parcel but were not prepared to transfer title at this time.

39. Defendants' conduct is a material breach of their obligations under Section 2.1 of the APA, and the breach has caused Transform irreparable injury for which specific performance is the only adequate remedy.

40. Defendants have agreed that a breach of any provision of the APA constitutes irreparable harm to Transform warranting specific performance. Section 13.14 of the APA states:

> <u>Specific Performance</u>. The Parties acknowledge and agree that (a) irreparable injury, for which monetary damages, even if available, would not be an adequate remedy, will occur in the event that any of the provisions of this Agreement are not performed in accordance with the specific terms hereof or are otherwise breached, and (b) the non-breaching Party or Parties shall therefore be entitled, in addition to any other remedies that may be available, to obtain (without the posting of any bond) specific performance of the terms of this Agreement by the breaching Party or Parties. If any Proceeding is brought by the non-breaching Party or Parties to enforce this Agreement, the Party in breach shall waive the defense that there is an adequate remedy at Law.

41. The damages from the Defendants' failure to deliver the deed to the Fee Owned Parcel that is indivisible from the rest of the Fort Lauderdale Store property, which Transform purchased in its entirety at Closing, are material and difficult to calculate, and therefore Transform is entitled to specific performance in the delivery of the entirety of the parcels comprising the Fort Lauderdale Store property.

## GROUNDS FOR RELIEF

### COUNT ONE
(Breach of Contract)

42. Transform repeats and realleges each and every allegation contained in paragraphs 1 through 41 of this Complaint, as though fully set forth herein.

43. Defendants and Transform entered into the APA as of January 17, 2019. The APA is a valid, binding, and enforceable agreement between Defendants and Transform.

44. As established *supra*, Defendants' actions have breached Section 2.1 of the APA.

45. Pursuant to Section 2.1, Defendants were obligated to "sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered" "all right, title and interest of Sellers, in, to or under all assets, properties and rights Related to the Business," which includes the Fee Owned Parcel, to Transform.

46. Defendants failed to do so, and its breach has prevented Transform from enjoying the full benefit of its bargain.

47. Transform is therefore entitled to damages in an amount to be determined at trial, specific performance, or such other and further relief as the Court may deem just and proper.

## COUNT TWO
(Reformation of Contract for Mutual Mistake)

48. Transform repeats and realleges each and every allegation contained in paragraphs 1 through 47 of this Complaint, as though fully set forth herein.

49. As established *supra*, the APA memorializes the Defendants' agreement to sell, and Transform's agreement to buy, all of the Fort Lauderdale Store property, including the Fee Owned Parcel, as part of a going concern business.

50. Prior to executing the APA, Transform and the Defendants engaged in a thorough and extensive diligence process. Notwithstanding this diligence process, neither Transform nor—on information and belief—the Defendants were aware that a portion of the Fort Lauderdale Store property was fee owned.

51. As a result of this mutual mistake, the APA failed to explicitly include the Fee Owned Parcel on Schedule 1.1(p) despite the agreement of the parties to include the Fort Lauderdale Store and all assets Related to the Business in the Sale Transaction.

52. In order effectuate the transfer of title of the Fee Owned Parcel, the APA should be reformed to specifically include the Fee Owned Parcel on Schedule 1.1(p).

## COUNT THREE
(Specific Performance)

53. Transform repeats and realleges each and every allegation contained in paragraphs 1 through 52 of this Complaint, as though fully set forth herein.

54. Defendants and Transform entered into the APA as of January 17, 2019. The APA is a valid, binding, and enforceable agreement between Defendants and Transform.

55. Pursuant to Section 2.1 of the APA, on the Closing Date, the Defendants were obligated to "sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered . . ." to Transform, and Transform would "purchase, all right, title and interest of Sellers, in, to or under all assets, properties and rights Related to the Business other than the Excluded Assets, and the following assets, properties and rights."

56. The Recitals in the APA define Business to include, in relevant part, "a national network of retail stores and pharmacies under the 'Sears' and 'Kmart' brands as conducted at the Operating Owned Properties and the Operating Lease Properties . . . and the supporting general and administrative functions related to such retail stores."

57. Operating Lease Properties is defined in Article I of the APA as the "real property demised pursuant to an Operating Lease," which in turn is defined in the APA, in relevant part, as "leases or lease agreements (including ground leases) related to the real properties identified on Schedule 1.1(o) (together with all amendments, modifications, supplements and renewals thereof)."

58. The Fort Lauderdale Store is an operating Sears retail store, and the lease associated with the Store is identified as Store Number 1195 in Schedule 1.1(o).

59. The Fee Owned Parcel falls within the category of assets, properties and rights Related to Business which Defendants were required to sell, and Transform was required to purchase, on the Closing Date.

60. Transform has performed its obligations under Section 2.1 of the APA, thereby acquiring title to the Fee Owned Parcel at the Closing.

61. However, the Defendants have breached their contractual obligations to deliver the deed to this parcel.

62. The Defendants' breach of Section 2.1 of the APA has caused Transform irreparable injury and damages are difficult to calculate based on the Defendants' failure to deliver full title.

63. Specific performance is the only adequate remedy for the Defendants' refusal to comply with their obligations to transfer title to the Fee Owned Parcel.

64. Transform has a contractual remedy to specific performance pursuant to Section 13.14 of the APA. Pursuant to the plain terms of the APA, there is no adequate remedy at law for the Defendants' breach of Section 2.1 of the APA.

65. Accordingly, Transform seeks an order of specific performance requiring the Defendants to transfer title to the Fee Owned Parcel that abut the leased Fort Lauderdale Store property pursuant to the terms of the APA.

**PRAYER FOR RELIEF**

WHEREFORE, Transform Respectfully demands judgment against the Defendants, jointly and severally, as follows:

(a) Reforming the APA Schedule 1.1(p) to include the Fee Owned Parcel;

  (b)  Awarding Transform specific performance requiring the Defendants to transfer title to the Fee Owned Parcel that has not been previously transferred to Transform;

  (c)  Awarding Transform compensatory damages in an amount to be determined at trial;

  (d)  Awarding Transform the legal fees and costs it has incurred in this action and otherwise enforcing its rights under the APA;

  (e)  Awarding Transform pre-judgment interest; and such other and further relief as this Court may deemed just and proper.

| | |
|---|---|
| Dated:  September 11, 2019<br>     New York, New York | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>  */s/ Lewis Liman*_____<br>Lewis J. Liman<br>Sean A. O'Neal<br>Luke A. Barefoot<br>Andrew Weaver<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>*Counsel for Transform Holdco LLC* |

**Exhibit A**

18-23538-rdd    Doc 5131    Filed 09/11/19    Entered 09/11/19 17:58:16    Main Document
Pg 16 of 17


