JUDITH R. STARR
General Counsel
CHARLES L. FINKE
Deputy General Counsel
WILLIAM MCCARRON, JR.
GARTH D. WILSON
KELLY R. CUSICK
Assistant General Counsels
MICHAEL I. BAIRD
COURTNEY L. MORGAN
ERIN C. KIM
Attorneys
PENSION BENEFIT GUARANTY CORPORATION
Office of the General Counsel
1200 K Street, N.W., Suite 340
Washington, D.C. 20005-4026
Telephone: (202) 326-4020, ext. 6222
Facsimile: (202) 326-4112
Emails: baird.michael@pbgc.gov *and* efile@pbgc.gov

− and −

Brian A. Raynor (*admitted pro hac vice*)
LOCKE LORD LLP
111 S. Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
Email: braynor@lockelord.com

*Counsel to Pension Benefit Guaranty Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SEARS HOLDINGS CORPORATION, *et al.*, | ) Case No. 18-23538 (RDD) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |

**PENSION BENEFIT GUARANTY CORPORATION'S STATEMENT IN SUPPORT OF CONFIRMATION OF THE MODIFIED SECOND AMENDED CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS**

Pension Benefit Guaranty Corporation ("PBGC") submits this statement in support of confirming the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 4704] (the "Plan").[2]

## I.    PRELIMINARY STATEMENT

The Plan represents a nearly year-long effort to balance the interests of the bankruptcy stakeholders to achieve the best possible outcome. The Debtors' motion for confirmation of the Plan and brief in support describe in detail how the Plan satisfies all applicable legal standards. Consequently, this statement in support is limited to explaining the PBGC Settlement, which is

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); Service Live Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc.(7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co.(6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC(None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839);Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC(None); SOE, Inc. (9616); Star West, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC(None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2]   Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.

2

one component of the Plan Settlement. The PBGC Settlement balances competing interests and is in the best interest of the estates. Importantly, the PBGC Settlement minimizes litigation and execution risk as well as uncertainty, which benefits all parties.

PBGC has agreed to significantly reduce the total amount of its claims, to waive a large administrative claim, and to support the Plan Settlement. As discussed in detail below, PBGC worked towards compromise despite some evidence that it could have received a higher recovery in a chapter 7 liquidation. PBGC's treatment under the Plan was negotiated in good faith, is in the best interest of the estates, and otherwise fully satisfies the Bankruptcy Code. The Plan, inclusive of the PBGC Settlement and the Plan Settlement, should be confirmed.

## II.    BACKGROUND

1.    PBGC is the U.S. government agency that administers the nation's pension insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1301-1461 (2012 & Supp. V 2017). The program ensures that participants in covered plans will not suffer the "great personal tragedy" of losing their promised retirement income. *See Nachman Corp. v. PBGC*, 446 U.S. 359, 374 (1980).

2.    PBGC guarantees the payment of certain pension benefits upon the termination of a single-employer pension plan covered by Title IV of ERISA. When an underfunded plan terminates, PBGC generally becomes trustee of the plan and supplements any assets remaining in the plan with its insurance funds to pay to the retired employees their pension benefits, subject to statutory limits. *See* 29 U.S.C. §§ 1321-1322, 1342, 1361. PBGC's insurance funds are made up of, among other things, (i) the agency's recoveries of a terminated pension plan's underfunding, and (ii) premiums paid by pension plan sponsors.

3.    Sears Holdings Corporation ("Sears") was the contributing sponsor of two pension plans: Sears Holdings Pension Plan 1 ("Plan 1") and the Sears Holdings Pension Plan 2

("Plan 2") (together, the "Pension Plans"), each a single-employer defined benefit pension plan covered by Title IV of ERISA. *See* 29 U.S.C. §§1301(a)(1), (13), (15), 1321. Each Debtor is a member of the Sears controlled group, within the meaning of Title IV of ERISA. *See* 29 U.S.C. § 1301(a)(14).

4. On October 15, 2018, each of the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code. PBGC is a significant stakeholder in the Debtors' cases. It has filed five proofs of claim totaling more than $1.7 billion against each of the Debtors, each of which are jointly and severally liable to the Pension Plans and PBGC under 26 U.S.C. § 412; 29 U.S.C. §§ 1082, 1306, 1307, 1362 ("PBGC Claims").

5. The PBGC Claims consist of the following: (1) unfunded benefit liabilities for Plan 1 in the amount of $931,400,000; (2) unfunded benefit liabilities for Plan 2 in the amount of $462,000,000; (3) unpaid minimum funding contributions for Plan 2 in the amount of $8,760,985; (4) pension insurance premiums for Plan 1 in the approximate amount of $115,012,500; and (5) pension insurance premiums for Plan 2 in the approximate amount of $222,022,500. These claims are supported by certain statutory and contractual protections against the Debtors and their non-Debtor affiliates, including KCD IP, LLC ("KCD").

6. On January 17, 2019, the Debtors entered into an agreement to sell substantially all of Debtors' assets. The proposed sale undermined both statutory pension protections, and the contractual pension protections provided by the PBGC Agreements. On January 26, 2019, PBGC objected to the sale and to a related cure amount.[3]

---

[3] See *Objection and Reservation of Pension Benefit Guaranty Corporation Rights to the Sale Motion* [Docket No. 2002]; and *Objection and Reservation of Rights of Pension Benefit Guaranty Corporation to Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 2007].

4

7. On February 6, 2019, PBGC and the Debtors executed a term sheet that resolved PBGC's objections and provided a framework for PBGC to support the Debtors' Chapter 11 plan (Docket No. 2529, the "Term Sheet").

8. As set forth in the Term Sheet, under the terms of a chapter 11 plan proposed by the Debtors, PBGC agreed to accept two joint and several claims against the Debtors' estates – an $800 million general unsecured claim, and a separate, $80 million claim secured by a first priority lien against the net proceeds of the estates' causes of action.

9. In exchange for this agreed treatment under a contemplated plan, PBGC agreed to: (i) withdraw its objection to the proposed sale; (ii) support the waiver of any administrative expense claim potentially held by KCD; (iii) waive PBGC's claims for Plan termination premiums, (iv) waive any amounts of PBGC's UBL claims above the agreed upon $800 million; and (v) support confirmation of the Debtors' chapter 11 plan, provided that any such plan was consistent with the Term Sheet and did not contain additional terms that were adverse to the interests of PBGC, such as substantive consolidation. The parties further agreed to mutual releases and to terminate the Plans effective as of January 31, 2019.

10. Consistent with the Term Sheet, PBGC withdrew its objection to the proposed sale. And on February 11, 2019, Sears and PBGC executed an Agreement for Appointment of Trustee and Termination of the Plan, terminating the Pension Plans as of January 31, 2019, and appointing PBGC as trustee of the Pension Plans under 29 U.S.C. § 1342. As a result, PBGC will now be responsible for paying benefits to approximately 90,000 pension plan participants.

11. On August 2, 2019, the Debtors filed the Plan. The Plan incorporates the Term Sheet, as modified to account for the Plan Settlement, to provide PBGC with a PBGC Liquidating Trust Priority Interest in the amount of $97.5 million if the Plan Settlement is

5

approved and $80 million if the Plan Settlement is not approved. PBGC supports confirmation of the Plan, and respectfully submits that the PBGC Settlement, as a component of the Plan Settlement, is the best path forward.

### III.   ARGUMENT

#### A.   The PBGC Settlement Is Reasonable

12.   As set forth in the Plan and as summarized above, the PBGC Settlement contains significant compromises by both PBGC and the Debtors and represents a good-faith settlement in the best interest of the estate. These compromises include:

(i)   PBGC reduced its claims for unfunded benefit liabilities from approximately $1.4 billion to $800 million[4];

(ii)   PBGC agreed to forgo its termination premium claims of more than $337 million, and its missed contribution claims of $8 million, against each Debtor[5];

(iii)   In an interim step toward the PBGC Settlement, the Term Sheet provided for a smooth termination of the Pension Plans and transition to PBGC's trusteeship.[6] Without the compromises embedded in the Term Sheet, protracted litigation over termination of the Pension Plans loomed: On February 1, 2019, PBGC had sued in another jurisdiction to enforce its termination determination, but eleven days later voluntarily dismissed its lawsuit because of the settlement[7];

---

[4]   *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 4478] at section U.

[5]   *Id.*

[6]   *Id.*

[7]   *Id.*; *PBGC v. Sears Holdings Corp.*, Case No. 1:19-cv-00669 (N.D. Ill. filed Feb. 1, 2019).

6

(iv) As a significant creditor at non-Debtor KCD IP, LLC ("KCD"), PBGC argued to this Court that KCD had an Administrative Expense Claim for unpaid royalty payments that must be satisfied.[8] As part of the PBGC Settlement, PBGC agreed to support the waiver of KCD's potential $146 million Administrative Expense Claim[9];

(v) PBGC waived its rights as a Kmart creditor in the Debtors' Plan, thereby allowing general unsecured creditors of Kmart an increased recovery on their claims.[10]

13. In exchange for these significant concessions, PBGC was granted a Liquidating Trust Priority Interest in the amount of $97.5 million.[11] In short, the compromises between Sears and PBGC benefited both the Debtors' estate and PBGC, and protected 90,000 pension plan participants by eliminating what would likely have been protracted litigation, with its attendant costs and uncertainty.

---

[8] *Objection and Reservation of Rights of Pension Benefit Guaranty Corporation to Debtors' Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* [Docket No. 2007].

[9] *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 4478] at section U.

[10] *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 4704] at sections 1.121 and 1.70.

[11] *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 4478] at section U.

Pg 8 of 12

**B.      The PBGC Settlement Complies with the Bankruptcy Code**

14.     The PBGC Settlement satisfies all applicable provisions of the Bankruptcy Code. Contrary to arguments made in Wilmington Trust's objection to Plan confirmation,[12] the settlement complies with sections 1122 and 1123(a)(4) of the Code.

15.     Section 1122 of the Bankruptcy Code provides that claims or interests within each class must be "substantially similar" to other claims or interests. *See* 11 U.S.C. § 1122. Courts have clarified that separate classification of similar claims is permitted when a reasonable or rational basis exists. As stated in *In re Lightsquared Inc.*, 513 B.R. 56, 82-83 (Bankr. S.D.N.Y. 2014):

> Courts that have considered the issue [of classification], including the Court of Appeals for the Second Circuit as well as numerous courts in this District, have concluded that the separate classification of otherwise substantially similar claims and interests is appropriate so long as the plan proponent can articulate a 'reasonable' (or 'rational') justification for separate classification.

*see also Windels Marx Lane & Mittendorf, LLP v. Source Enters., Inc. (In re Source Enters., Inc.)*, 392 B.R. 541, 556 (S.D.N.Y. 2008) ("[A] plan proponent is afforded significant flexibility in classifying claims under § 1122(a) if there is a reasonable basis for the classification scheme and if all claims with a particular class are substantially similar.").

16.     PBGC's claims have been separately classified under the Plan.[13] Courts in this district have identified grounds that justify separate classification of claims, including where members of a class possess different legal rights and where the debtor has a good business reason for separate classifications. *See In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996); *In re*

---

[12] *Objection of Wilmington Trust, National Association, as Indenture Trustee to Confirmation Of Debtors' Joint Modified Second Amended Chapter 11 Plan of Liquidation* [Docket No. 4724].

[13] *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 4478] at sections U and V.

*Drexel Burnham Lambert Grp., Inc.* (*Drexel I*), 138 B.R. 714, 715 (Bankr. S.D.N.Y. 1992), *aff'd*, 140 B.R. 347 (S.D.N.Y. 1992). First, PBGC has different legal rights from other general unsecured creditors. As described in the Disclosure Statement, unlike other unsecured creditors, PBGC has both statutory claims against each Debtor and contractual rights under the PBGC Agreements that provide certain priority interests. Second, Debtors provided a good business reason for separately classifying PBGC's claims, which is explained in detail in the Disclosure Statement.[14] Consequently, PBGC's separate classification is reasonable and proper under the Bankruptcy Code.

17. In addition, the PBGC Settlement satisfies Bankruptcy Code section 1123(a)(4), which requires the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment. PBGC negotiated in good faith with the Debtors and compromised its claims. PBGC did precisely what section 1123(a)(4) permits, accepting less favorable treatment in order to reach a consensual resolution. As described above, PBGC even declined to pursue entire classes of claims to reach consensus.

18. Underscoring the good faith and reasonableness of the PBGC Settlement, PBGC may well have been able to recover more in Chapter 7 than under the PBGC Settlement. In the Committee's objection to an earlier version of the Disclosure Statement, the UCC offered

---

[14] *Id.*

evidence that PBGC could have recovered more in a Chapter 7.[15] Nevertheless, PBGC negotiated to achieve a broad-based settlement.

### C. The Plan Settlement Should be Approved

19. PBGC is the stakeholder most harmed by substantive consolidation of the Debtors' estates under the Plan Settlement because PBGC has joint and several claims against each Debtor. After the Debtors filed the Term Sheet, PBGC and the Debtors worked towards a Chapter 11 plan that would incorporate the provisions of the Term Sheet, including one prohibiting substantive consolidation. As the Debtors refined their analysis and sought alliances with other creditors, they informed PBGC that they concluded that substantive consolidation was the best path forward for the Debtors' estates. PBGC and the Debtors thereafter engaged in robust, good-faith, and arms-length negotiations to explore whether they could adjust the Term Sheet to accommodate other creditors.

20. Ultimately the Debtors and PBGC agreed to the PBGC Settlement, which adjusts the PBGC Liquidating Trust Priority Interest from $80 million to $97.5 million if the Plan Settlement is approved.[16] This adjustment does not fully compensate PBGC for the diminution of its recovery prospects due to substantive consolidation. However, insisting on a deconsolidated Plan seemed rife with litigation risk, execution risk, and uncertainty. A deconsolidated Plan would needlessly force all creditors to bear the administrative costs of

---

[15] *Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for an Order (I) Approving Disclosure Statement; (ii) Establishing Notice and Objection Procedures for Confirmation of the Plan; (III) Approving Solicitation Packages and Procedures for Distribution Thereof; (IV) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan; and (V) Granting Related Relief* [Docket No. 3995]. Chapter 7 recovery for PBGC is estimated by the UCC at 13.6% -- which is higher than PBGC's recovery under a Chapter 11 scenario. *See* pages 32 and 66 of that UCC Objection.

[16] *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holding Corporation and Its Affiliated Debtors* [Docket No. 4478] at section U.

untangling a sprawling company built up over 125 years, and the resulting intercompany claims. It would also pose an acute and unnecessary risk of pivoting these cases to dozens of Chapter 7 liquidations. The Plan Settlement mitigates these risks. It presents the most realistic chance of reaching finality for these cases on a reasonable timeline. The Plan Settlement is not perfect, but it is the most pragmatic path forward for all stakeholders in these cases. For these reasons, PBGC supports the Plan Settlement and requests that it be approved as part of confirmation.

## **CONCLUSION**

For the foregoing reasons, PBGC respectfully requests that the Court confirm the Plan, and approve the PBGC Settlement and the Plan Settlement contained therein.

September 13, 2019

Washington, D.C.

Respectfully submitted,

By: /s/ Michael I. Baird

JUDITH R. STARR
General Counsel
CHARLES L. FINKE
Deputy General Counsel
WILLIAM MCCARRON, JR.
GARTH D. WILSON
KELLY R. CUSICK
Assistant General Counsels
MICHAEL I. BAIRD
COURTNEY L. MORGAN
ERIN C. KIM
Attorneys
Office of the General Counsel
PENSION BENEFIT GUARANTY
CORPORATION
1200 K Street, N.W.
Washington, D.C.  20005
(202) 326-4020 ext. 6222
(202) 326-4112 (fax)
baird.michael@pbgc.gov and efile@pbgc.gov

− and −

Brian A. Raynor (*admitted pro hac vice*)
LOCKE LORD LLP
111 S. Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336
Email: braynor@lockelord.com

*Counsel to Pension Benefit Guaranty Corporation*