Hearing Date and Time: September 18, 2019 at 10:00 a.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

------------------------------------------------------------ x

## NOTICE OF FILING OF PROPOSED ORDER
## CONFIRMING MODIFIED SECOND AMENDED JOINT CHAPTER 11
## PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

PLEASE TAKE NOTICE that on October 15, 2018 and continuing thereafter, Sears and its debtor affiliates (collectively, the "**Debtors**"), each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.

PLEASE TAKE NOTICE that on September 13, 2019, the Debtors filed the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 5139) (the "**Modified Plan**").

PLEASE TAKE FURTHER NOTICE that annexed hereto as **Exhibit A** is the Debtors' proposed *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief* (the "**Proposed Confirmation Order**").

PLEASE TAKE FURTHER NOTICE that the hearing (the "**Confirmation Hearing**") to consider confirmation of the Modified Plan will be held on **September 18, 2019 at 10:00 a.m. (prevailing Eastern Time)**, before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140.

WEIL:\97182237\2\73217.0004

**PLEASE TAKE FURTHER NOTICE** that the Proposed Confirmation Order
may be revised or amended prior to or on the record at the Confirmation Hearing.

Dated: September 13, 2019
New York, New York

/s/ *Sunny Singh*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\97182237\2\73217.0004

## Exhibit A

**Proposed Confirmation Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                          :

In re                              :        **Chapter 11**

**SEARS HOLDINGS CORPORATION, *et al.*,**  :        **Case No. 18-23538 (RDD)**
                                           :

           Debtors.[1]           :        **(Jointly Administered)**
                                           :
----------------------------------------------------------------x

### ORDER (I) CONFIRMING MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS AND (II) GRANTING RELATED RELIEF

Upon the filing by Sears Holdings Corporation and its affiliated debtors (collectively, the "**Debtors**") of the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 4476) (as amended, supplemented, or modified in accordance with its terms, the "**Plan**") which is annexed hereto as **Exhibit A**,[2] and

---

[1] The Debtors in the Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used in this order (this "**Confirmation Order**") but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement. Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

the Court previously having approved the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated May 28, 2019 (ECF No. 4042) (as transmitted to parties in interest, and as modified by the *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated July 9, 2019 (ECF No. 4478), the "**Disclosure Statement**" and the Debtors having filed the *Notice of Filing of Exhibits to the Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, whereby the Plan Settlement Liquidation Analysis and the Toggle Plan Liquidation Analysis were annexed thereto, on May 28, 2019 (ECF No. 4060) (each, as further amended or modified)) and the solicitation procedures related to the Disclosure Statement and the solicitation of acceptances and rejections of the Plan, in each case pursuant to the *Order (I) Approving Disclosure Statement, (II) Establishing Notice and Objection Procedures for Confirmation of the Plan, (III) Approving Solicitation Packages and Procedures for Distribution Thereof, (IV) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan, and (V) Granting Related Relief* (ECF No. 4392) (the "**Disclosure Statement Order**"); and the Debtors having served the Disclosure Statement on the Holders of Claims and Interests pursuant to the Disclosure Statement Order, *see Affidavit of Service* (ECF No. 4443); and the Debtors having filed the documents comprising the Plan Supplement on July 26, 2019 and August 2, 2019 (ECF Nos. 4632, 4703) (as may be further amended or supplemented, the "**Plan Supplement**"); and this Court having considered the record in the Chapter 11 Cases, the stakeholder support for the Plan evinced on the record and in the *Declaration of Craig E. Johnson of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Plan of Sears Holdings Corporation and Its Affiliated Debtors*, filed on September 13, 2019

2

(ECF No. 5137) (the "**Voting Certification**"), the compromises and settlements embodied in and contemplated by the Plan, the briefs and arguments regarding confirmation of the Plan, the evidence regarding confirmation of the Plan, and a hearing on confirmation of the Plan having commenced on September 18, 2019 [and continued thereafter] (the "**Confirmation Hearing**"); and after due deliberation:

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and venue is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The Plan satisfies the requirements for confirmation of section 1129 of the Bankruptcy Code by a preponderance of evidence.

C.    The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Disclosure Statement Order.  The Debtors participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered under the Plan, and therefore are entitled to the protections of section 1125(e) of the Bankruptcy Code.

D.    The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, this Court has considered the totality of the circumstances of these cases, the formulation and negotiation of the Plan and all modifications thereto, the Plan Settlement, the

---

[3] All findings of fact and conclusions of law announced by this Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

3

PBGC Settlement, and the Creditors' Committee Settlement. The Plan is the result of extensive, good faith, arm's length negotiations among the Debtors and their principal constituencies.

E.    The Plan is "fair and equitable" with respect to the Classes that are impaired and are deemed to reject the Plan, because no Class senior to any rejecting Class is being paid more in full and the Plan does not provide a recovery on account of any Claim or Interest that is junior to such rejecting Classes unless and until such rejecting Class is paid in full.

F.    The releases contained in Section 15.9 of the Plan are an essential component of the Plan and appropriate. The Third Party Release contained in Section 15.9(b) of the Plan is consensual because all parties to be bound by such release were entitled to vote, given due and adequate notice of the release and sufficient opportunity and instruction to elect to opt out of such release if they rejected the Plan or abstained from voting on the Plan. Good and valid justification have been demonstrated in support of the Debtor Release and the PBGC Release. Accordingly, the releases contained in Section 15.9 of the Plan are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims or Causes of Action released by Section 15.9 of the Plan; (c) in the best interests of the Debtors, their Estates, the Liquidating Trust, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; and (e) given and made after due notice and opportunity for hearing.

G.    The exculpation provided by Section 15.10 the Plan for the benefit of the Exculpated Parties is appropriately tailored to the circumstances of these cases.

H.    The Plan does not discriminate unfairly among the different classes of unsecured creditors because grounds and justifications exist for treating the classes differently in

4

these cases, including implementation of the Global Settlement, including the Plan Settlement and the PBGC Settlement.

I.    The Plan is dependent upon and incorporates the terms of compromises and settlements, which include the Plan Settlement, the PBGC Settlement, and the Creditors' Committee Settlement, which settlements were negotiated in good faith and at arm's length and are each, individually essential elements of the Plan. The Plan Settlement, the PBGC Settlement, and the Creditors' Committee Settlement are fair, equitable, reasonable, and in the best interests of the Debtors, the Debtors' Estates, the Debtors' creditors, and all parties in interest, and satisfy the standards for approval under Bankruptcy Rule 9019.

J.    The DIP Order has not been terminated and continues to govern. The Debtors have acted in good faith in funding the Carve-Out Account and amounts held therein shall be available only for the payment of Allowed Professional Fees in accordance with the DIP Order.

K.    This Court may properly retain jurisdiction over the matters set forth in Article XVI of the Plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDICATED, AND DECREED THAT:**

**A.    Confirmation of the Plan**

1.    The Plan and each of its provisions is approved and the Plan is confirmed pursuant to section 1129 of the Bankruptcy Code.

2.    Any and all objections to and reservations of rights in respect of the Plan that have not been withdrawn, waived or resolved prior to the Confirmation Hearing are hereby denied and overruled on the merits with prejudice.

5

3.      The documents contained in the Plan Supplement, and any amendments, modifications and supplements thereto, are integral to the Plan and are approved by the Court, the Debtors and the Liquidating Trust, as applicable, are authorized to take all actions required under the Plan and the Plan Supplement to effectuate the Plan and the transactions contemplated therein including, without limitation, the implementation of the Wind Down in connection with the Plan.

4.      The terms of the Plan including the Plan Supplement and the Liquidating Trust Agreement, and the exhibits thereto are incorporated herein by reference and are an integral part of the Plan and this Confirmation Order.   The terms of the Plan, the Plan Supplement, the Liquidating Trust Agreement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.   The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision; it being the intention of this Court that all such documents are approved in their entirety.

5.      Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules.   The solicitation of votes on the Plan and the Solicitation Packages complied with the solicitation procedures in the Disclosure Statement Order, were appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules.   The Debtors solicited acceptances of the Plan in good faith and in

WEIL:\97095864\18\73217.0004

compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable nonbankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

6.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

7.    Subject to payment of any applicable filing fees under applicable non-bankruptcy law, each federal, state, commonwealth, local, foreign or other governmental agency is directed and authorized to accept for filing and/or recording any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

8.    The compromises and settlements set forth in the Plan are approved, including, but not limited to, the PBGC Settlement, the Plan Settlement, and the Creditors' Committee Settlement, and will be effective immediately and binding on all parties in interest on the Effective Date.

9.    The amendments and modifications to the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 4476) since the filing thereof and incorporated into the Plan, are approved, including ECF No. 5139, in accordance with section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules.  Pursuant to Bankruptcy Rule 3019, these Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section

7

1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

10.     Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by this Court, any of the parties to such release, or any other Entity: (a) Injunction (Section 15.8); (b) Debtor Release (Section 15.9(a)); (c) Third Party Release (Section 15.9(b)); (d) PBGC Release (Section 15.9(c)); and (e) Exculpation (Section 15.10).

11.     In accordance with the Plan and pursuant to this Confirmation Order, confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Debtors and their Estates will be wound down in accordance with the Plan.

12.     On the Effective Date, all Liquidating Trust Assets of the Debtors shall be transferred to the Liquidating Trust in accordance with Article X of the Plan and all Debtors shall be dissolved without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder(s) or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities. All directors and officers of the dissolved Debtors shall be deemed to have resigned in their capacity as of the Effective Date.

13.     Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and, in the case of a Secured Claim, satisfaction in accordance with the Plan of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and

discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidating Trust and its successors and assigns.  All Holders of Secured Claims are directed to cooperate with the Debtors or the Liquidating Trust, as the case may be, in implementing this paragraph and any administrative details relating thereto.

14.     The Debtors shall cause to be served a notice of the entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "**Confirmation Notice**"), upon (a) all parties listed in the creditor matrix maintained by Prime Clerk LLC, and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than five (5) business days after the entry of this Confirmation Order, or as soon as reasonably practicable thereafter.  The Debtors shall cause the Confirmation Notice to be published in *The New York Times* within seven (7) business days after the entry of this Confirmation Order, or as soon as practicable thereafter.

**B.     Immediate Designation of the Litigation Designees and the Granting of Standing for Prosecution of the Jointly Asserted Causes of Action**

15.     Pursuant to sections 105(a), 363(b), 1103(c) and 1109(b) of the Bankruptcy Code, the Creditors' Committee shall be granted joint standing with the Debtors and is hereby authorized to investigate, commence, prosecute, settle and otherwise dispose of (i) the Specified Causes of Actions, (ii) other Preserved Causes of Action against the ESL Parties, (iii) all Claims and Causes of Action asserted in the pending Adversary Proceeding captioned *Sears Holdings Corp. v. Lampert*, Adv. Proc. No. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "**Adversary Proceeding**") and/or any other Claims or Causes of Action ancillary thereto, including, *inter alia*, additional Claims or Causes of Action related to the subject matter of the Adversary Proceeding (including Claims or Causes of Action asserted in an amended complaint

9

and Claims and Causes of Action asserted in one or more separate proceedings) and (iv) Claims

or Causes of Action against insurance carriers related to coverage for claims asserted in the

Adversary Proceeding or a related proceeding (all of the Claims and Causes of Action addressed

in this paragraph, collectively, the "**Jointly Asserted Causes of Action**") jointly with the

Debtors for the benefit of the Debtors' Estates and creditors in accordance with the terms of the

Plan with the full rights and privileges attendant thereto.

   16. The investigation, prosecution and/or settlement or other disposal of the

Jointly Asserted Causes of Action shall be subject to the oversight of designees selected by the

Debtors and the Creditors' Committee (the "**Litigation Designees**").  Specifically, the Litigation

Designees shall comprise (a) Patrick J. Bartels, (b) Eugene I. Davis, and (c) Raphael T.

Wallander, as the Creditors' Committee's designees, and (x) Alan J. Carr and (y) William L.

Transier, as the Debtors' designees, which designees shall become the initial members of the

Liquidating Trust Board upon the Effective Date pursuant to Section 10.6(a) of the Plan.  Any

Litigation Designee who succeeds an initial Creditors' Committee designee shall be considered a

Creditors' Committee designee and any Litigation Designee who succeeds an initial Debtor

designee shall be considered a Debtor designee.  For the avoidance of doubt, the Litigation

Designees shall have all rights and entitlements to be afforded to the Liquidation Trust Board on

the Effective Date of the Plan in respect of the Jointly Asserted Causes of Action, including,

*inter alia*, the exclusive right, authority, and discretion to determine and to initiate, file,

prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any

Jointly Asserted Causes of Action pursuant to the terms of the Liquidating Trust Agreement

applicable to the Liquidating Trust Board (including, for the avoidance of doubt, section 6.5(c)

WEIL:\97095864\18\73217.0004

of the Liquidating Trust Agreement), which terms are incorporated herein by reference and shall govern the acts, conduct and rights of the Litigation Designees prior to the Effective Date.

17.    The Litigation Designees will have the sole and exclusive right to propose any settlement of the Jointly Asserted Causes of Action in accordance with the terms of the Liquidating Trust Agreement; *provided* that any such settlement shall be subject to approval by this Court after notice and hearing.

18.    The authority of the Litigation Designees shall be effective immediately upon entry of this Confirmation Order and shall remain and continue in full force and effect until the Effective Date.  The service of the Litigation Designees shall be governed by the conditions to be applicable to the members of the Liquidating Trust Board set forth in Section 6.5(c)(i)-(v) of the Liquidating Trust Agreement.

19.    Sections 6.5(e), 6.5(f), 6.5(g), 6.5(h), and 6.5(i) of the Liquidating Trust Agreement shall be applicable to the Litigation Designees and govern the operation of the Litigation Designees in the same manner they are intended to govern operation of the Liquidating Trust Board.

20.    [The Litigation Designees shall be compensated as follows: [_____].]

21.    In accordance with the terms of the Plan and the Liquidating Trust Agreement, Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**") shall be retained as primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute, and otherwise litigate the Jointly Asserted Causes of Action.  In addition, without further order of this Court, the Litigation Designees may retain such additional professionals or consultants (including attorneys, accountants, appraisers, financial advisors, expert witnesses or

WEIL:\97095864\18\73217.0004

other parties determined by the Initial Litigation Designees to have qualifications necessary or desirable to assist in the investigation, prosecution and/or settlement of the Jointly Asserted Causes of Action) (collectively with Akin Gump, the "**Litigation Professionals**"). The Litigation Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Debtors, the Creditors' Committee, the U.S. Trustee and the Litigation Designees, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of such person, plus an itemized statement of expenses. In the event of any dispute concerning the entitlement to, or the reasonableness of any compensation and/or expenses of any Litigation Professionals, the Litigation Designees and/or the Litigation Professionals may request that this Court resolve the dispute. The Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred by the Litigation Professionals immediately upon entry of this Confirmation Order in the ordinary course and without the need for approval of this Court, subject to the approval of the Litigation Designees.

22.    The protections to be granted to members of the Liquidating Trust Board and the Trust Professionals under Article VIII of the Liquidating Trust Agreement (Reliance, Liability, and Indemnification) shall be equally applicable to the Litigation Designees and the Litigation Professionals for actions taken or not taken by the Litigation Designees and the Litigation Professionals in their capacities as such with respect to their administration and pursuit of the Jointly Asserted Causes of Action.

23.    Pursuant to Federal Rule of Evidence 502(d), any attorney client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) (the "**Privileges**" protecting "**Privileged**

WEIL:\97095864\18\73217.0004

**Information**") in the possession of the Debtors (including the Restructuring Subcommittee, any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors, and the Debtors' appointees on the Litigation Designees) or any of their employees, representatives, attorneys or advisors (collectively, the "**Debtor Privilege Parties**") may be shared with Akin Gump, the Creditors' Committee, the Litigation Designees appointed by the Creditors' Committee or any of their respective representatives, attorneys or advisors (collectively, the "**Creditor Privilege Parties**," and together with the Debtor Privilege Parties, the "**Privilege Parties**") on either or both a joint representation or common interest privilege basis without waiver of the relevant underlying privilege; similarly, any Privileged Information in possession of the Creditor Privilege Parties may be shared with the Debtor Privilege Parties on either or both a joint representation or common interest privilege basis without waiver of the relevant underlying privilege; *provided*, *however*, that the ability of the Debtor Privilege Parties to share information protected by any Privilege, if any, held by the Related Party Transaction Subcommittee of the Restructuring Committee of the Sears Holdings Board of Directors and/or the Special Committee of the Sears Holdings Board of Directors created on or about April 28, 2018 shall be subject to later determination.

24.    Subject to the limitations of paragraph 23 above, the Litigation Designees shall have the exclusive authority and sole discretion to maintain the Privileges and keep the privileged material confidential, or waive the Privileges and/or disclose and/or use in litigation of the Jointly Asserted Causes of Action, or any proceeding Privileged Information.

25.    Subject to the limitations of paragraph 23 above, the Privilege Parties shall take all necessary steps to effectuate the sharing of such Privileges and to provide to the

WEIL:\97095864\18\73217.0004

Litigation Designees without the necessity of a subpoena all information subject to a Privilege in their respective possession, custody, or control. The Litigation Designees are further expressly authorized to formally or informally request or subpoena documents, testimony, or other information that would constitute Privileged Information from any persons, including attorneys, professionals, consultants, and experts, and no such person may object to the production to the Litigation Designees of such Privileged Information on the basis of a Privilege. Unless and until the Litigation Designees makes a determination to waive any Privilege, Privileged Information shall be produced solely to the Litigation Designees.

26.    If a Privilege Party, the Litigation Designees, any of their respective employees, professionals, or representatives or any other person inadvertently produces or discloses Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Privileged Information. In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Litigation Designees of the production and shall demand of all recipients of the inadvertently disclosed Privileged Information that they return or confirm the destruction of such materials.

## C.    The Liquidating Trust

27.    The formation, rights, powers, duties, structure, obligations and other matters pertaining to the Liquidating Trust shall be governed by Article X of the Plan and the Liquidating Trust Agreement.

28.    On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trust Assets shall be transferred by the Debtors (and deemed transferred) to the Liquidating Trust free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Liquidating Trust Beneficiaries, without the need

14

for any Entity to take any further action or obtain any approval. Thereupon, the Debtors shall

have no interest in the Liquidating Trust Assets or the Liquidating Trust. On the Effective Date,

the Liquidating Trust shall be authorized as the representative of the Estates to investigate, sue,

settle and otherwise administer the Liquidating Trust in accordance with the terms of the

Liquidating Trust Agreement and the Plan.

29.     Upon the Effective Date, the Liquidating Trust is authorized and

empowered, without further approval of this Court or any other party, to take such actions and to

perform such acts as may be necessary, desirable or appropriate to implement the issuance of the

Liquidating Trust Interests in accordance with the Plan and the Liquidating Trust Agreement,

and to execute and deliver all agreements, documents, securities, instruments and certificates

relating thereto. All Liquidating Trust Interests issued by the Liquidating Trust pursuant to the

provisions of the Plan and the Liquidating Trust Agreement shall be deemed to be duly

authorized, validly issued, fully paid and non-assessable.

30.     On the Effective Date, pursuant to and as further provided in the Plan and

the Liquidating Trust Agreement, all of the Debtors' respective rights, titles and interests in any

Privileges (as defined in the Liquidating Trust Agreement) related in any way to the Liquidating

Trust Assets and the purpose of the Liquidating Trust shall be treated as provided in the Plan and

the Liquidating Trust Agreement.

31.     The Liquidating Trustee may, with the approval of, or at the direction of,

the Liquidating Trust Board, invest Cash (including any earnings thereon or proceeds therefrom);

provided, that such investments are investments permitted to be made by a "liquidating trust"

within the meaning of Treasury Regulations section 301.7701-4(d), as reflected therein, or under

applicable Internal Revenue Service guidelines, rulings or other controlling authorities. All

15

monies and other assets received by the Liquidating Trustee as Liquidating Trust Assets (including the proceeds thereof as a result of investment in accordance with Section 6.9 of the Liquidating Trust Agreement) shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Liquidating Trust Beneficiaries, and shall not be segregated from other Liquidating Trust Assets, unless and to the extent required by the Plan.

**D.     Certain Executory Contract and Unexpired Nonresidential Leases Matters**

32.     Notwithstanding anything to the contrary in the Plan, the Definitive Documents, the Plan Supplement, any other documents related to any of the foregoing, or this Confirmation Order, nothing shall modify the rights, if any, of any holder of Claims or any current or former party to an executory contract, whether currently or previously executory, or lease of non-residential real property to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease(s) with the Debtors, or any successors to the Debtors, under the Plan; (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors, the Liquidating Trust, or any successors of the Debtors.

33.     In accordance with the lease rejection notice filed on July 12, 2019 (ECF No. 4535), and the *Order Approving the Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* entered on August 14, 2019 (ECF No. 4836), notwithstanding anything to the contrary in the Plan, the leases for stores located in Pembroke Pines, Florida, Staten Island, New York, and Willowbrook Wayne, New Jersey (Store Nos. 1775, 1624, and 1434, respectively) will be deemed rejected as of September

16

30, 2019, and the lease for the store located in Northridge, California (Store No. 1508) will be deemed rejected as of January 15, 2020.

34.    In accordance with the stipulations seeking to extend the time under section 365(d)(4) of the Bankruptcy Code to assume and assign the leases pertaining to Store Nos. 3667, 8290, 1018, and 3127 (the "**Leases**"), filed on July 9, 2019 and July 23, 2019, respectively, (ECF Nos. 4498, 4499, and 4607), and the orders granting such relief (ECF Nos. 4580, 4581, and 4687), notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Leases shall not be deemed rejected as of the Effective Date.

E.    **Certain Governmental Unit Matters**

35.    As to any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code), nothing in the Plan or this Confirmation Order shall limit or expand the scope of discharge, release or injunction to which the Debtors, their Estates, or the Liquidating Trust are entitled to under the Bankruptcy Code, if any.  The discharge, release, and injunction provisions contained in the Plan and this Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, subsequent to this Confirmation Order, pursuing any police or regulatory action.

36.    Accordingly, notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, nothing in the Plan or this Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to any Governmental Unit that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any Claim of any Governmental Unit arising on or after the Confirmation Date; (3) any valid right of setoff or recoupment of any Governmental Unit against any of the Debtors; or (4) any liability of the Debtors, their Estates, or the Liquidating Trust under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee or operator of property that such entity

17

owns, operates or leases after the Confirmation Date.  Nor shall anything in this Confirmation Order or the Plan:  (i) enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by any Governmental Unit are discharged or otherwise barred by this Confirmation Order, the Plan, or the Bankruptcy Code.

37.    Moreover, nothing in this Confirmation Order or the Plan shall release or exculpate any non-debtor, including any Released Parties and/or Exculpated Parties, from any liability to any Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Released Parties and/or Exculpated Parties, nor shall anything in this Confirmation Order or the Plan enjoin any Governmental Unit from bringing any claim, suit, action or other proceeding against any non-debtor for any liability whatsoever; *provided*, *however*, that the foregoing sentence shall not (x) limit the scope of discharge, if any, granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code, or (y) diminish the scope of any exculpation to which any party is entitled under section 1125(e) of the Bankruptcy Code.

38.    Nothing contained in the Plan or this Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtors, their Estates, or the Liquidating Trust, nor shall the Plan or this Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in this Plan or this Confirmation Order be deemed to have conferred jurisdiction upon this Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

18

39.    Notwithstanding anything contained in the Plan, this Confirmation Order, and any implementing Plan documents, nothing shall (i) preclude the United States Securities and Exchange Commission (the "**SEC**") from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

## F.    Toggle Plan Reservation of Rights

40.    In the event this Court does not approve the Plan Settlement, the Debtors or the Liquidating Trustee, as applicable, shall provide notice to all parties in interest not less than thirty (30) days prior to allowing or making any distribution on account of any postpetition Intercompany Claims, and all parties rights are reserved with respect to (i) setoff of postpetition Intercompany Claims and (ii) the amount and allowance of all prepetition and postpetition Intercompany Claims.

## G.    Texas Taxing Authorities

41.    To the extent that the Texas Taxing Authorities[4] are entitled to interest under section 506(b) of the Bankruptcy Code, the Texas Taxing Authorities shall receive interest from the Commencement Date through the Effective Date, and from the Effective Date through payment in full at the state statutory rate, pursuant to sections 506(b), 511, and 1129 of the Bankruptcy Code.

---

[4] The "**Texas Taxing Authorities**" are Anderson County, Bastrop County, Bell TAD, Bosque County, Bowie CAD, Brazos County, Brown CAD, Burnet CAD, Cherokee County, Cherokee CAD, City of Waco, *et al.*, Comal County, Coryell County, Denton County, Erath County, Guadalupe County, Harrison CAD, Harrison County, Hays County, Henderson County, Jasper County Tax Units, Mexia I.S.D., Midland CAD, Taylor CAD, Terry CAD, Wharton County, and Williamson County.

19

**H.      Village of Hoffman Estates Reservation of Rights**

42.      Notwithstanding Section 10.3 of the Plan or anything else to the contrary in the Plan or Plan Supplement, including the Liquidating Trust Agreement, the Village of Hoffman Estates Reserves the right to dispute that any property that the Village of Hoffman Estates has jurisdiction over does not benefit from section 1146(a) of the Bankruptcy Code and the Debtors or the Liquidating Trust, as applicable, reserves the right to dispute the same.

**I.      Team Worldwide Reservation of Rights**

43.      Notwithstanding anything else herein, nothing in the Plan or this Confirmation Order shall be deemed or construed to impact, impair, affect, determine, release, waive, modify, limit or expand: (i) the terms and conditions of any supply agreement (collectively, the "**Supply Agreements**") between a party (an "**Indemnifying Party**") and a Debtor containing a provision or clause that purports to create an obligation of the Indemnifying Party to indemnify, defend against, reimburse, fund, or otherwise be responsible for any liabilities, damages, losses, or costs associated with any potential claims, suits, actions, or other proceedings seeking judgment against the Debtor or its affiliates (the "**Indemnity Obligations**"); (ii) any of the rights, remedies, defenses to coverage and other defenses of any party under or in respect of any Supply Agreements; (iii) subject to the proviso set forth in the next paragraph, any claims, actions, rights to payment or other similar claims held by Team Worldwide Corporation ("**Team Worldwide**") against any Debtor if covered by the Indemnity Obligations (the "**Covered Claims**"), and (iv) any claims, actions, rights to payment or other similar claims held by Team Worldwide against the Buyer, as a result of post-closing infringement claims. All such rights, remedies, and defenses are expressly reserved and preserved.

44.      Notwithstanding anything in the Plan or this Confirmation Order, Team Worldwide is authorized to pursue, in any court of competent jurisdiction, a determination of

20

liability (the "**Infringement Liability**") of the Covered Claims against the Debtors to final judgment and to enforce any resulting judgment against the Indemnifying Parties (the "**Coverage Lawsuit**"); provided, however, that Team Worldwide shall not pursue payment of any Covered Claims from the Debtors or their estates or the Liquidating Trust and shall waive collection of any and all amounts owed to Team Worldwide not satisfied by any Indemnifying Party resulting from all claims filed against the Debtors relating thereto.

45.     Following the commencement of the Coverage Lawsuit, the Debtors and/or the Liquidating Trustee shall provide notice to the Indemnifying Parties of the Covered Claims and take such further action reasonably required under the Supply Agreements to have the Indemnifying Parties perform their Indemnity Obligations; provided, however, that (i) neither the Debtors nor the Liquidating Trust shall be obligated to pay or be liable for any out-of-pocket costs or expenses in connection with such action, and/or (ii) neither the Debtors nor the Liquidating Trust shall be obligated to participate in the Coverage Lawsuit. For the avoidance of doubt, and subject in all respects to (i) and (ii) in the preceding sentence, the Debtors or the Liquidation Trust, as applicable, may be named as a nominal defendant in the Coverage Lawsuit.

**J.      233 S. Wacker, LLC**

46.     Except as provided by the Stipulation, Agreement, and Order Granting Limited Relief from the Automatic Stay (233 S. Wacker, LLC) (ECF No. 2849), notwithstanding any provision of the Plan or this Confirmation Order to the contrary, 233 S. Wacker, LLC is permitted to continue to assert, prosecute, litigate, liquidate, and/or settle its counterclaim and its claims against the Debtors, their estates, and any successors thereto in Case No. 2016-CH-10308 pending in the Circuit Court of Cook County, Illinois, Chancery Division and reserves all rights in connection with such proceeding and any payment obligated to be made in connection therewith. For the avoidance of doubt, the Debtors, their estates and any successor in interest,

21

including, without limitation, the Liquidating Trust, reserve all rights with respect to any claims or counterclaims asserted in connection with the action referenced in the preceding sentence and any and all obligations in connection therewith.

## K.     Administrative Expense Claims

47.     Any motion for allowance or payment of an Administrative Expense Claim that is pending or filed after the date of the entry of this Confirmation Order (i) shall be adjourned until a date as determined by the Debtors (in consultation with the Creditors' Committee) or the Liquidating Trust (as applicable) and in consultation with the applicable claimant and subject to this Court's availability, and (ii) shall be treated as a proof of an Administrative Expense Claim.  Any discovery requests in connection with any Administrative Expense Claim shall be adjourned indefinitely, unless the Debtors have objected to the allowance of such Administrative Expense Claim.  Notwithstanding anything in the Bar Date Order, any scheduled or requested hearings pursuant to the 503(b)(9) Claim Procedures (as defined in the Bar Date Order) are hereby cancelled.

## L.     Insurance Policy Matters

48.     For the avoidance of doubt, pursuant to Section 13.4 of the Plan, notwithstanding anything to the contrary in the Plan, the Definitive Documents, the Plan Supplement, any other documents related to any of the foregoing, and this Confirmation Order, the automatic stay of section 362(e) of the Bankruptcy Code and the injunctions set forth in the Plan, to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit former directors and officers of Sears Canada to make claims under any D&O Policy and any insurers to make related payments under such policies with respect to such claims.

22

49.     For the avoidance of doubt, Insurance Contracts assumed by the Debtors and assigned to Transform as authorized by order of the Bankruptcy Court pursuant to the Asset Purchase Agreement are not subject to section 13.4 of the Plan.

## M.     Miscellaneous

50.     In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than this Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Plan shall govern and control; *provided* that, in the event of a conflict between the Liquidating Trust Agreement, on the one hand, and any of the Plan, the Plan Supplement or the Definitive Documents, on the other hand, the Liquidating Trust Agreement shall govern and control in all respects relating to the Liquidating Trust; *provided further* that, in the event of a conflict between this Confirmation Order, on the one hand, and any of the Plan, the Plan Supplement (other than as set forth herein with respect to the Liquidating Trust Agreement), the Definitive Documents, on the other hand, this Confirmation Order shall govern and control in all respects.

51.     The continued payment of Allowed Professional Fees from the Carve-Out Account in accordance with the DIP Order and the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (ECF No. 796) is hereby approved.

52.     Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.

53.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this

23

Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XVI of the Plan.

54.     Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in these cases after the Effective Date shall be limited to the following parties: (i) the Liquidating Trust and its counsel; (ii) the U.S. Trustee; and (iii) any party known to be directly affected by the relief sought.

Dated: _____, 2019
       White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

WEIL:\97095864\18\73217.0004