AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of*
*Unsecured Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | Chapter 11 |
| **SEARS HOLDINGS CORPORATION, et al.,** | Case No. 18-23538 (RDD) |
| Debtors.[1] | (Jointly Administered) |

# STATEMENT OF THE OFFICIAL COMMITTEE
# OF UNSECURED CREDITORS IN SUPPORT OF CONFIRMATION
# OF THE MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF
# SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365) ); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through its undersigned counsel, hereby files this statement (the "Statement") in support of confirmation of the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 5139] (as amended, supplemented or otherwise modified, the "Plan").[2] In support of this Statement, the Creditors' Committee respectfully states as follows.

## PRELIMINARY STATEMENT

1.  Confirmation of the Plan represents the most viable path to maximize creditor recoveries. While the Debtors' current liquidity position will require a delay in consummation of the Plan, confirming the Plan now will serve the dual purpose of minimizing the Debtors' ongoing administrative expense accrual and facilitating the immediate prosecution of the Preserved Causes of Action for the benefit of creditors. The only available alternatives to confirmation of the Plan—maintaining the status quo or converting these cases to chapter 7—are not reasonably likely to increase creditor recoveries and, in fact, are more likely to result in many administrative and unsecured creditors receiving no recovery on their claims.

2.  The Debtors' resources are limited in large part because of ongoing, costly litigation with Transform Holdco, LLC ("Transform") and its failure to comply with its obligations under the Asset Purchase Agreement.[3] Compounding the Debtors' dire financial

---

[2] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.
[3] As of the date of this filing, Transform owes the Debtors approximately $40 million in cash and is liable for an additional approximately $108 million in assumed Administrative Expense Claims pursuant to this Court's rulings, and it is unclear whether Transform has the financial wherewithal to honor its obligations to the Debtors. *See Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* ("Griffith Decl.") ¶ 67; *Declaration of William Murphy in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* ¶ 60; *see also* Shoulberg, *Is This The Sears Endgame? 77 More Stores Closing And HQ Being*

2

circumstances is the continued accrual of administrative expenses attendant to these Chapter 11 Cases. As a result, the Debtors and the Creditors' Committee have established a framework to minimize the Debtors' administrative cash burn and maximize the proceeds from the Preserved Causes of Action for the benefit of creditors.

3.      Specifically, the Debtors and the Creditors' Committee have agreed that, pending the occurrence of the Effective Date and establishment of the Liquidating Trust, the Creditors' Committee will be granted joint standing with the Debtors to commence, prosecute, settle and/or otherwise dispose of certain of the Preserved Causes of Action (the "Jointly Asserted Causes of Action")[4] for the benefit of the Debtors' estates with the oversight and direction of the designees previously selected by the Debtors and the Creditors' Committee to serve on the Liquidating Trust Board (the "Litigation Designees").[5] The granting of joint standing to the Creditors' Committee to pursue the Jointly Asserted Causes of Action pending the Effective Date is designed to implement material portions of the Plan Settlement and Creditors' Committee Settlement now and maximize the likelihood of success in litigation. In addition to facilitating prosecution of the Jointly Asserted Causes of Action in accordance with the construct outlined

---

*Sold, Insiders Say*, Forbes (Sept. 11, 2019), available at https://www.forbes.com/sites/warrenshoulberg/2019/09/03/is-this-the-sears-endgame-reported-77-more-stores-closing-hq-being-sold/#6d4c64d64444. As a result, the Debtors have been forced to assume that Transform will neither pay the amounts it owes nor honor its obligations with respect to the assumed liabilities.

[4] The Jointly Asserted Causes of Action comprise: (i) the Specified Causes of Actions, (ii) other Preserved Causes of Action against the ESL Parties, (iii) all Claims and Causes of Action asserted in the pending Adversary Proceeding captioned *Sears Holdings Corp. v. Lampert*, Adv. Proc. No. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "Adversary Proceeding") and/or any other Claims or Causes of Action ancillary thereto, including, *inter alia*, additional Claims or Causes of Action related to the subject matter of the Adversary Proceeding (including Claims or Causes of Action asserted in an amended complaint and Claims and Causes of Action asserted in one or more separate proceedings) and (iv) Claims or Causes of Action against insurance carriers related to coverage for claims asserted in the Adversary Proceeding or a related proceeding.

[5] As disclosed in the Plan Supplement, pursuant to the terms of the Creditors' Committee Settlement, the Creditors' Committee designees to the Liquidating Trust Board are Patrick J. Bartels, Eugene I. Davis and Raphael T. Wallander, and the Debtors' designees are Alan J. Carr and William L. Transier. The Litigation Designees will serve as fiduciaries for the purpose of overseeing the investigation, prosecution, settlement and/or otherwise disposal of the Jointly Asserted Causes of Action and, on the Effective Date, such designees will become the initial members of the Liquidating Trust Board pursuant to Section 10.7(a) of the Plan.

above, confirmation of the Plan combined with a delay in the Effective Date will allow additional time to pursue various additional sources of recovery, including, among others: (i) preference actions; (ii) proceeds from the Debtors' D&O Policies; and (iii) other remaining assets, including the Calder sculpture and real estate.  *See* Griffith Decl. ¶¶ 56-70.

4. The proceeds from litigation and the monetization of remaining assets will enable the Debtors to pay holders of Allowed Administrative Expense Claims (such holders, "Administrative Claimants") in a manner consistent with Bankruptcy Code section 1129(a)(9) upon the Effective Date or, potentially, earlier in the event Administrative Claimants agree to alternative treatment.  In that regard, the Debtors and the Creditors' Committee have begun discussions with certain Administrative Claimants in an effort to reach agreement on a construct to allow for the settlement and accelerated payment of Allowed Administrative Expense Claims.

5. Notwithstanding that confirming the Plan now and beginning the prosecution of the Jointly Asserted Causes of Action will maximize the likelihood of Administrative Claimants being paid in full in the most expeditious manner, numerous Administrative Claimants have opposed confirmation.  The objections generally assert that the Debtors cannot satisfy Bankruptcy Code sections 1129(a)(9) or 1129(a)(11) because of the speculative nature of litigation proceeds.  Absent Transform complying with its obligations under the Asset Purchase Agreement, however, these litigation proceeds will be the primary source for recoveries for the Debtors' Administrative Claimants regardless of whether the Plan is confirmed or the Debtors' cases convert to chapter 7.

6. Moreover, these Administrative Claimants fail to recognize that the conversion to chapter 7 will neither accelerate the timing of payment on Administrative Expense Claims nor increase Administrative Claimants' recoveries.  The grim reality of these cases is that

Administrative Expense Claims at virtually all Debtors other than Kmart Corporation ("Kmart") likely would receive little or no recovery in chapter 7. This result is due to sizeable postpetition intercompany claims that are senior to Administrative Expense Claims. The satisfaction of such postpetition intercompany claims will have the effect of reallocating substantially all of the Debtors' distributable value to Kmart pursuant to the terms of prior Court orders, thereby leaving nothing for most creditors. *See* Disclosure Statement, Ex. E-2, Liquidation Analysis (Toggle Plan – De-Consolidation); DIP Order ¶¶ 15, 39; *Final Junior DIP Order Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Grant Secured Priming Liens and Superpriority Administrative Expenses Claims; (II) Modifying the Automatic Stay; and Granting Related Relief* [ECF No. 1436] ¶¶ 14, 38; *Final Order Authorizing Debtors to (I) Continue Using Existing Cash Management System, Bank Accounts, and Business Forms, (II) Implement Ordinary Course Changes to Cash Management System, (III) Continue Intercompany Transactions, and (IV) Provide Administrative Expense Priority for Postpetition Intercompany Claims and Granting Related Relief* [ECF No. 1394] ¶ 9.

7. In addition to lodging objections based on administrative insolvency, parties have objected to, among other things: (i) the proposed substantive consolidation settlement underlying the Plan, even though it is unlikely that any plan could be confirmed in these cases absent substantive consolidation (again, because of the effect of the postpetition intercompany claims); (ii) the PBGC Settlement, notwithstanding that such settlement results in a material reduction in the amount of PBGC's claims, and the impact of such claims on other creditors' recoveries is further diminished as the proceeds of the Preserved Causes of Action increase; (iii) the releases contained in the Plan, which are narrowly-tailored as a result of the Creditors' Committee's efforts to ensure no potential defendant in the Preserved Causes of Action receives a release; (iv)

5

the failure of the Plan to establish a reserve for the exaggerated claims asserted by the Second Lien Parties (as defined below) under Bankruptcy Code section 507(b), which this Court conclusively determined to be zero; and (v) the reasonable and appropriate limitations imposed on the reimbursement of the professional fees incurred by the Indenture Trustees and the Second Lien Agent.  As further set forth in the Debtors' Memorandum[6] and herein, the Creditors' Committee submits that such objections are without merit and should be overruled.

8.     In sum, the Creditors' Committee believes that the Plan represents the most equitable and value maximizing alternative for the Debtors' estates and their creditors under the current circumstances of these Chapter 11 Cases and otherwise satisfies applicable confirmation requirements.  Accordingly, the Creditors' Committee respectfully requests that the Court overrule the outstanding objections and confirm the Plan.

## ARGUMENT

**A.     The Plan Currently Represents the Alternative Most Likely To Maximize Value for Creditors Under the Circumstances and Otherwise Satisfies Confirmation Requirements**

9.     The principal attacks on the Plan come from Administrative Claimants and focus on the Debtors' financial position.[7]  Specifically, the Administrative Claimants and certain other objecting parties argue that the Debtors are administratively insolvent and, due to the speculative nature of litigation recoveries, cannot satisfy the requirements of Bankruptcy Code section

---

[6] *Debtors' Memorandum of Law in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* filed contemporaneously herewith (the "Debtors' Memorandum").

[7] *See, e.g.*, *Objection to Modified Second Amended Joint Chapter 11 Plan of Sears Holding Corporation and Its Affiliated Debtors* [ECF No. 4721] filed by Whitebox Asymmetric Partners, LP, Whitebox Multi-Strategy Partners, LP, Hain Capital Investors Master Fund, Ltd. and Cherokee Debt Acquisition, LLC.  ESL and Transform also attack confirmation of the Plan on the grounds that the Debtors may be administratively insolvent despite the fact that ESL and Transform's conduct in the Chapter 11 Cases is one of the primary drivers of the Debtors' potential administrative insolvency and that confirmation of a plan was a necessary component of the Sale Transaction.  *See Limited Objection and Reservation of Rights of ESL Investments, Inc. and Transform Holdco, LLC to Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 4759] ¶¶ 5-13.

1129(a)(9) and/or meet their burden of showing that the Plan is feasible in accordance with Bankruptcy Code section 1129(a)(11). These objections should be overruled.

10. The Plan's treatment of Administrative Expense Claims is consistent with Bankruptcy Code section 1129(a)(9), which requires that holders of allowed administrative expense claims be paid in full in cash on the effective date of a plan—*i.e.*, not upon confirmation. 11 U.S.C. §1129(a)(9). As set forth in the proposed Confirmation Order, the Effective Date will occur once the Debtors have sufficient resources to pay all holders of Allowed Administrative Expense Claims in full, in cash or on such other terms as has been agreed to with the applicable Administrative Claimants, on the one hand, and the Debtors and the Creditors' Committee, on the other.

11. While some courts have refused to confirm a chapter 11 plan that provided for an indeterminate effective date, those cases are distinguishable, as the debtors in such cases were unlikely to ever have sufficient liquidity to satisfy their administrative expenses. *See, e.g.*, *In re Premiere Network Servs., Inc.*, No. 04-33402 (HDH), 2005 WL 6443624, at *5 (Bankr. N.D. Tex. July 1, 2005) (denying confirmation with a delayed effective date where the contingent funds from which the debtor would seek to pay administrative expense were from contracts that the debtors would be unlikely to assume); *In re Potomac Iron Works, Inc.*, 217 B.R. 170, 171 (Bankr. D. Md. 1997) (denying confirmation with a delayed effective date where only sources of value were seemingly uncollectable accounts receivable). By contrast, the Preserved Causes of Action and other residual assets are projected to generate sufficient proceeds to pay Administrative Claimants in full and provide recoveries to general unsecured creditors.

*Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for an Order (I) Approving Disclosure Statement; (II) Establishing Notice and Objection Procedures for*

*Confirmation of the Plan; (III) Approving Solicitation Packages and Procedures for Distribution Thereof; (IV) Approving Forms of Ballots and Establishing Procedures for Voting on the Plan; and (V) Granting Related Relief* [ECF No. 3995] (the "Disclosure Statement Objection") ¶ 26, n.14 ("The Creditors' Committee believes that the Debtors' estimate of $334 million in total distributable proceeds may be low and that the Preserved Causes of Action may have greater value than such estimate."); *see also Declaration of William L. Transier in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* ¶ 24 ("I believe that the facts and allegations asserted in the Subcommittee Adversary Complaint are well founded and viable.").[8]

12. Ultimately, the Administrative Claimants' objections amount to nothing more than an expression of their dissatisfaction with the timing of payment on their claims. While the Creditors' Committee is sympathetic to their plight, there is no available alternative to the Plan at this time that would result in the immediate payment in full of the Administrative Expense Claims. All parties recognize that the circumstances of these cases are far from ideal. But the Plan nevertheless currently represents the best available alternative to maximize the value of the estates and, therefore, the recoveries to all creditors, including the Administrative Claimants.

13. By contrast, if the Administrative Claimants' objections are sustained, the only viable alternative is conversion to chapter 7. Conversion to chapter 7, however, likely would

---

[8] To the extent that Bankruptcy Code section 1129(a)(11) is applicable to a liquidating plan, the Debtors have met their burden of showing a "reasonable prospect of success," based on the multiple specific and valuable sources for paying claims under the Plan. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed.") (citation omitted); *Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*, 354 B.R. 1, 9 (D. Conn. 2006) (citing *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003) (stating that a "relatively low threshold of proof" will satisfy the feasibility requirement) (citations omitted); *see also* Griffith Decl. ¶ 77 ("I believe that the Debtors will be able to continue to administer their assets as required by the Plan and make all payments and distributions as contemplated by the Plan. . . . In conclusion, I believe, the Plan is feasible and that confirmation of the Plan is in the best interests of these Estates.").

result in further delay in payment and impairment of Administrative Expense Claims and otherwise introduce greater risk into potential recoveries. Indeed, Administrative Claimants are primary beneficiaries of the proposed settlement of substantive consolidation set forth in the Plan. As the Creditors' Committee argued in its Disclosure Statement Objection, the Debtors' postpetition intercompany claims would have the effect of reallocating most of the estates' value to Kmart. Absent the Plan Settlement, Administrative Claimants at virtually all of the Debtors other than Kmart likely would receive no recovery at all, as there is no guarantee that a chapter 7 trustee would pursue or obtain approval of a similar settlement of substantive consolidation.[9] But that is the risk holders of Administrative Expense Claims would take if the Plan is not confirmed. Moreover, in a chapter 7, creditors might not have the benefit of the Creditors' Committee Settlement, which, among other things, ensures adequate funding and appropriate oversight for the prosecution of the Preserved Causes of Action. Under the circumstances, assuming these risks is not in the best interests of the Debtors' estates or creditors.

**B.      The Creditors' Committee Settlement Is in the Best Interests of Creditors**

14.     The Plan constitutes a request pursuant to Bankruptcy Rule 9019 for approval of, among other settlements incorporated therein, the Creditors' Committee Settlement. The Creditors' Committee submits that such settlement satisfies the applicable requirements under Bankruptcy Rule 9019 and should be approved.

15.     Approval of a settlement or compromise under Bankruptcy Rule 9019 is appropriate when the compromise is fair and equitable and is in the best interests of a debtor's estate. *Protective Comm. Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S.

---

[9] For example, in a deconsolidated chapter 7, the Debtors' Liquidation Analysis projects that Sears, Roebuck & Co. would have no assets and $42 million of unpaid claims under Bankruptcy Code section 503(b)(9). *See* Disclosure Statement, Ex. E-2, Liquidation Analysis (Toggle Plan – De-Consolidation), at 14.

9

414, 424 (1968) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)); *see also In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (a "settlement must fall 'within the reasonable range of litigation possibilities.'") (citation omitted).  Here, the Creditors' Committee Settlement is fair, reasonable and in the best interests of the Debtors' estates.

16. Courts in this district have considered the following factors when determining whether a proposed settlement or compromise is in the best interests of a debtor's estate:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and [t]he experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (internal quotations and citations omitted).

17. The Creditors' Committee Settlement resolves all disputes between the Debtors and the Creditors' Committee related to the Plan.  These disputes would involve difficult legal and factual questions—particularly with respect to the proposed settlement of substantive consolidation and the good faith of the Debtors in proposing a plan that failed to provide appropriate representation for unsecured creditors on the Liquidating Trust Board or sufficient funding for the Liquidating Trust and released certain potentially culpable parties.  Absent the Creditors' Committee Settlement, resolution of these issues and others between the Debtors and

the Creditors' Committee would have involved protracted and costly litigation, which time and expense would have diluted creditor recoveries. By contrast, the Creditors' Committee Settlement clears the path for confirmation of the Plan and the maximization of value for the benefit of creditors. Importantly, confirmation of the Plan also provides creditors with assurance that there will be funding to prosecute the Preserved Causes of Action and that fiduciaries tasked with such prosecution, and thus maximizing unsecured creditor recoveries, include designees appointed by unsecured creditors via the Creditors' Committee.

18.     Accordingly, the Creditors' Committee submits that the Creditors' Committee Settlement is fair, reasonable and in the best interests of the Debtors' estates and their unsecured creditors.

C.      **The Remaining Objections to the Plan Should Be Overruled**

19.     The remaining objections to confirmation of the Plan should be overruled for the reasons set forth in the Debtors' Memorandum. As the objections filed by the Second Lien Parties implicate the Liquidating Trust and other post-Effective Date matters, the Creditors' Committee further responds to certain of the objections raised by such parties as follows.

1.      *No Reserve Is Required on Account of the 507(b) Claims*

20.     In their objections to confirmation, the Second Lien Parties seek a reserve on account of their asserted 507(b) Priority Claims and Other 507(b) Priority Claims and contend that the Disputed Claims Reserve is inadequate.[10] No reserve is required for the ESL 507(b)

---

[10] *See Limited Objection and Reservation of Rights of ESL Investments, Inc. and Transform Holdco LLC to Debtors' Plan Supplement* [ECF No. 4786] ¶¶ 6-7; *Supplemental Objection of Wilmington Trust, National Association, as Indenture Trustee to Confirmation of Debtors' Joint Modified Second amended Chapter 11 Plan of Liquidation* [ECF No. 4785] ¶ 9 (arguing the Plan could adversely affect the rights of holders of Disputed Claims if such claims only have recourse to the Disputed Claims Reserve); *Cyrus Capital Partners, L.P.'s Limited Objection to Confirmation of Modified Second Amended Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 4731] ¶¶ 7-9 (arguing that the Debtors must establish a separate Disputed Claims Reserve to provide for the payment in full of all claims under Bankruptcy Code section 507(b)).

11

Priority Claims or Second Lien Parties' Other 507(b) Priority Claims as this Court already has determined that the amount of any such claims is zero.[11] *See Order Determining the Amount of Second-Lien Holders' Section 507(b) Administrative Claims Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedures* [ECF No. 4740] (the "507(b) Order") ¶¶ 1-2.  The sheer absurdity of the Second Lien Parties' demands should not be lost on the Court.  The Second Lien Parties filed claims under Bankruptcy Code section 507(b) well in excess of $700 million.  Without any acknowledgement of the impact their requests would have on the feasibility of the Plan or the fairness or prejudice to the Debtors' estates, the Second Lien Parties would have the Court order the Debtors to reserve amounts that they simply do not have and to which the Second Lien Parties are not entitled, and thus all but ensure that the Plan is rendered unconfirmable.  Indeed, in contrast to an estimation motion or a circumstance in which a claim has been objected to but not yet adjudicated, the Court definitively determined the value of the collateral securing the Second Lien Debt and found that there was no diminution in the value of such collateral during the Chapter 11 Cases.  As such, no reserve is required for any claims under Bankruptcy Code section 507(b) asserted by the Second Lien Parties or other holders of Second Lien Debt, and the Second Lien Parties' objections in respect of the Disputed Claims Reserve should be overruled.

        **2.**     *Payment of Indenture Trustee Fees May Be Limited Appropriately*

21. In consideration of (and an incentive to) the Indenture Trustees and the Second Lien Agent acting as Disbursing Agents under the Plan, the Plan provides for the reimbursement

---

[11] ESL conveniently ignores that it agreed, pursuant to the Asset Purchase Agreement, that payment in full or in part of ESL 507(b) Priority Claims would not be a condition to confirmation of any chapter 11 plan. *See* Sale Order ¶ 7(c). To the extent it is not a requirement for confirmation to pay any ESL 507(b) Priority Claims, the Asset Purchase Agreement and Sale Order certainly should not be interpreted to require the Debtors and Liquidating Trust reserve for such claims.

of reasonable fees and expenses incurred by such parties during the Chapter 11 Cases after payment of Allowed Administrative Expense Claims from the proceeds of Preserved Causes of Action.  *See* Plan § 11.6; Liquidating Trust Agreement § 4.2(c).  This contemplated reimbursement, however, is subject to the proviso that no fees and expenses will be paid to the extent that those fees and expenses were incurred objecting to, or otherwise challenging, the Disclosure Statement, the Plan, the Sale Transaction, the Debtors' post-petition financing, the Debtors' use of cash collateral or asserting Administrative Expense Claims (the "Non-Reimbursable Expenses").  *Id.*

22. By its objection, Wilmington Trust contends, without any relevant support, that this provision "violates public policy" by "encourag[ing]" indenture trustees to abandon their fiduciary duties in exchange for the payment of fees.  *Objection of Wilmington Trust, National Association, as Indenture Trustee to Confirmation of Debtors' Joint Modified Second amended Chapter 11 Plan of Liquidation* [ECF No. 4724] ¶ 90.  In so arguing, Wilmington Trust ignores that this Court has found the Second Lien Debt to be wholly unsecured.  *See* 507(b) Order ¶¶ 1-2.  As the trustee for unsecured debt, Wilmington Trust has no legal entitlement under the Bankruptcy Code for the payment of its fees and expenses.  Nonetheless, the Plan provides for the reimbursement of the fees and expenses incurred by Indenture Trustees and the Second Lien Agent in respect of the administrative and other non-positional efforts undertaken during the pendency of the Chapter 11 Cases prior to the distributions to unsecured creditors as consideration for such parties to facilitate distributions to creditors when sufficient proceeds are realized from the Preserved Causes of Action.  *See, e.g., U.S. Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, No. 02-CV-2854, 2003 WL 21738964, at *11 (Bankr. S.D.N.Y. July 28, 2003) (holding that Bankruptcy Code section 503(b) does not bar a bankruptcy court

from allowing a debtor to reimburse a creditor for professional fees, provided that the standard for allowing transactions under Bankruptcy Code section 363 has been met). There simply is no basis for Wilmington Trust to receive reimbursement from the estates for the Non-Reimbursable Expenses it has incurred, and it cites no authority to the contrary, relying instead on a nebulous invocation of public policy or a lack of good faith. To the extent Wilmington Trust seeks payment of the Non-Reimbursable Expenses, it is free to assert its charging lien against the distributions on account of the Second Lien Debt pursuant to terms of the Second Lien Notes Indenture. Accordingly, Wilmington Trust's objection should be overruled.

## CONCLUSION

23. The Creditors' Committee believes that the Plan is in the best interests of the Debtors' estates and creditors and otherwise complies with all applicable requirements under Bankruptcy Code section 1129. Accordingly, the Creditors' Committee respectfully requests that the Court overrule the objections to and confirm the Plan.

New York, New York  
Dated: September 13, 2019

AKIN GUMP STRAUSS HAUER & FELD LLP

/s/ *Ira S. Dizengoff*  
Ira S. Dizengoff  
Philip C. Dublin  
Sara L. Brauner  
Zachary D. Lanier  
One Bryant Park  
New York, New York 10036  
Telephone: (212) 872-1000  
Facsimile: (212) 872-1002  
E-mail: idizengoff@akingump.com  
       pdublin@akingump.com  
       sbrauner@akingump.com  
       zlanier@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.*