**DLA Piper LLP (US)**
Richard A. Chesley
R. Craig Martin
Rachel Ehrlich Albanese
Alana M. Friedberg
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501
*Attorneys for Transform Holdco LLC*

**Hearing Date and Time:**
**September 18, 2019 at 10 A.M.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

### TRANSFORM HOLDCO LLC'S OBJECTION TO MOTION OF MOAC MALL HOLDINGS LLC (I) FOR A STAY PENDING APPEAL; AND (II) TO EXPEDITE TRANSMITTAL OF RECORD ON APPEAL TO DISTRICT COURT

Transform Holdco LLC ("**Buyer**"), for itself and on behalf of its affiliate Transform Leaseco LLC ("**Transform Leaseco**"), as the buyer of substantially all of the above-captioned Debtors' assets under a sale order, submits this objection ("**Objection**") to MOAC Mall Holdings LLC's ("**MOAC**") *Motion of MOAC Mall Holdings LLC (I) for a Stay Pending Appeal; and (II) to Expedite Transmittal of Record on Appeal to District Court* (ECF Nos. 5083 and 5110) ("**Motion**") for a stay pending appeal of this Court's *Order (I) Authorizing Assumption and Assignment of Lease With MOAC Mall Holdings LLC And (II) Granting Related Relief* (ECF No. 5074) ("**Assumption and Assignment Order**"), to expedite the transmittal of the record on appeal, and, alternatively, for an extension of the mootness stay. As described below, the Buyer respectfully requests that the Court deny the Motion because MOAC has failed to meet its burden.

1

## PRELIMINARY STATEMENT

MOAC asks this Court to stay the effectiveness of the Assumption and Assignment Order, under which the Court authorized the Debtors to assume and then assign to Transform Leaseco a lease ("**Lease**") for space ("**Leased Space**") in the Mall of America, for which MOAC is the landlord and Sears, Roebuck and Co. ("**Sears**" or the "**Debtor**" and together with MOAC, the "**Parties**") is the tenant. On August 23, 2019, at the conclusion of a one-day evidentiary hearing ("**Assumption and Assignment Hearing**"),[1] the Court issued an oral bench ruling that allowed Sears to assume and assign the Lease to Transform Leaseco. On September 5, 2019, the Court entered the Assumption and Assignment Order. Among other important provisions to protect MOAC, the Assumption and Assignment Order required Transform Leaseco to place one year of leasehold costs into escrow, execute and deliver a guaranty agreement, and comply with all the terms of the Lease and the related Amended and Restated Reciprocal Easement and Operating Agreement Mall of America Bloomington, Minnesota ("**REA**").[2]

Distilled to its essence, the central issue at the Assumption and Assignment Hearing was whether the Lease, which afforded Sears broad rights, including virtually unfettered rights to assign the Lease, expansive use rights, and the ability to go and remain "dark," could be assigned to Transform Leaseco. While it was agreed that Transform Leaseco would not operate a Sears store in the Leased Space, it nonetheless had bargained for the substantial value inherent in the Lease through its purchase of substantially all of the Debtors' assets.

In determining whether the Debtor and the Buyer had met their obligations under the subsections of section 365(b)(3) of the Bankruptcy Code, adhering to the established law, the Court

---

[1]   Citations to the Assumption and Assignment Hearing transcript ("**Transcript**") will be cited as "Hr'g Tr. [page number:line number]." Attached as Exhibit A are the Transcript pages cited to throughout this Objection.

[2]   The REA was part of the record as the joint exhibit 3. The joint exhibits are set forth in the *List of Agreed Exhibits Regarding Assumption and Assignment of the MOAC Lease*. (ECF No. 4864.)

conducted a full review of the Parties' contractual undertakings. (*See* Hr'g Tr. 125:10-12.) MOAC argued that, notwithstanding all the provisions of the Lease and the REA that freely permitted the assignment by Sears, the Bankruptcy Code only allowed assignment to Transform Leaseco if it could prove that its financial and operating performance were the same as Sears when Sears signed the Lease in 1991 and would itself operate a department store in the Leased Space. When pressed by the Court, MOAC could not point to any authority, controlling or otherwise, that would override the Parties' clear intention regarding the expansive use and transfer rights following performance of the first 15 years of the Lease.

In contrast, the Buyer presented significant relevant case law that demonstrated the Court had the discretion to authorize assignment of the Lease to Transform Leaseco, especially where doing so would not modify the Lease terms and would leave MOAC, as landlord, with the benefit of its bargain under the Lease. The Court, thus, applied applicable case law and authorized the assignment of the Lease in a well-reasoned oral bench ruling in which the Court addressed all the various factual and legal issues. And, in so ruling, the Court imposed additional protection in favor of MOAC in its ruling and in the Assumption and Assignment Order, including the provision of a one-year escrow and the requirement that the Buyer must locate an initial sub-tenant for a material portion of the Leased Space within two years of entry of the Assumption and Assignment Order.

In short, the Court carefully applied the law to its factual findings, provided protection to MOAC, and properly entered the Assumption and Assignment Order. The existing case law demonstrates that MOAC, despite its protests, is not likely to succeed on appeal. And, while MOAC argues that it and its other tenants in the Mall of America will suffer irreparable harm if a stay is not put in place, based upon the record, the balance of the harms clearly favors the Buyer. As the record made clear, it will likely take the Buyer more than 12 months to find a replacement

tenant or tenants. (*See* Jerbich Decl. ¶ 27.)[3] Recognizing as much, the Assumption and Assignment Order afforded the Buyer two years to locate its first sub-tenant for a material portion of the Leased Space. Moreover, a stay will all but halt any ability of the Buyer to locate a replacement tenant for this Leased Space, once again depriving the Buyer of the benefit of its bargain, and ensuring that the Leased Space will continue to remain empty. Finally, even if the Buyer was able to locate a replacement tenant during the pendency of this appeal, MOAC retains its purchase rights under Article 6.3 of the Lease. As this latest litigation salvo makes clear, however, rather than protecting its bargained-for economic interests, MOAC continues in its attempt to extract the full economic value of the Leased Space for itself. For these reasons, and as discussed in more detail below, the Motion should be denied.

## ARGUMENT

### A.  Applicable Legal Standard.

1. Transform Leaseco agrees with MOAC that in deciding a stay pending appeal motion, the Court should apply four factors: (1) whether the movant "has made a strong showing that it is likely to succeed on the merits;" (2) whether the movant will be irreparably injured without a stay; "(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re 8 W. 58th St. Hosp., LLC*, No. 14-11524 (SHL), 2016 WL 856800, at *2 (Bankr. S.D.N.Y. Mar. 4, 2016) (internal quotation marks omitted) (quoting *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)). In exercising its discretion to grant or deny a stay pending appeal, "[t]he first two factors are the most

---

[3] Citations to the *Evidentiary Hearing Declaration of Michael Jerbich in Support of Transform Holdco LLC's Reply to MOAC Mall Holdings LLC's (I) Objection to Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Global Sale Transaction; (II) Second Supplemental and Amended: (A) Objections to Debtor's Notice of Assumption and Assignment of Additional Designatable Leases, and (B) Objection to Debtor's Stated Cure Amount; and (III) Third Supplemental and Amended Objections to Debtor's Notice of Assumption and Assignment of Additional Designatable Leases* (ECF No. 4880) will be cited as "Jerbich Decl. ¶ __."

4

critical." *In re 8 W. 58th St. Hosp., LLC*, 2016 WL 856800, at *2 (citing *Nken*, 556 U.S. 418, 434 (2009)). And a stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result." *Cordius Tr. v. Kummerfeld*, No. 99 CIV. 3200 (DLC), 2010 WL 234823, at *1 (S.D.N.Y. Jan. 21, 2010).

2. The movant bears the burden of showing that it is entitled to a stay pending appeal, and that burden "is a 'heavy' one." *In re 473 W. End Realty Corp.*, 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014). MOAC has not met this heavy burden to justify the Court's exercise of its discretion to grant a stay pending appeal of the Assumption and Assignment Order.

### B. MOAC Has Failed to Show That it is Likely to Succeed on the Merits.

3. MOAC has failed to show "the single most important factor," which is that it is likely to succeed on appeal to the district court, which will give "substantial deference" to this Court's Order. *See 29 Brooklyn, LLC v. Chesley*, No. 15-CV-5180 (ARR), 2015 WL 9255549, at *3 (E.D.N.Y. Dec. 16, 2015) (noting it "will review [the entire] appeal with substantial deference to the bankruptcy court and that appellant will bear the burden of demonstrating that the bankruptcy court's findings were clearly erroneous"). While MOAC argues that the appellate court will review the Assumption and Assignment Order *de novo*, Mot. at 3, it fails to recognize the limitations of this review articulated by the Supreme Court in *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S.Ct. 960 (2018). Under this decision, the historical facts found by this Court, such as the terms of the Lease and the REA, will be reviewed with deference. *See id.* at 966. Then, when applying the legal standards in section 365(b)(3) to those established historical facts found by this Court, the appellate court should determine if the exercise requires a largely factual review or legal work. *See id.* at 967-68.

4. Here, far from misapplying the law, the bankruptcy court applied the law under section 365(b)(3) consistent with the standards established by existing case law. As such, there is

5

little doubt that the Court will be affirmed here, thus obviating any likelihood of success. *See Androse Assocs. of Allaire, LLC v. The Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, 472 B.R. 666, 678 (S.D.N.Y. 2012) ("Because [tenant] was legally allowed to go dark under the Lease—and thus tenant mix was affected outside of bankruptcy and because of circumstances other than the assumption of the lease . . . Judge Drain also did not err in his determination of the effect of the assumption on the tenant mix [under section 365(b)(3)(D)].").

5.      Even if the Court was to adopt MOAC's position that *de novo* review will apply, MOAC must still show that its likelihood of success on appeal is not just theoretical or negligible but it must show it is "between 'possible' and 'probable.'" *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 684 (Bankr. S.D.N.Y. 2016) (quoting *In re 473 West End Realty Corp.*, 507 B.R. at 501); *see also In re 8 W. 58th St. Hosp., LLC*, 2016 WL 856800, at *2 (stating that the chance of success on the merits must be better than "negligible"). "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Id.* at *2 (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002).

6.      MOAC argues that it is likely to succeed on appeal "because a reviewing court could easily reach a different and well-founded interpretation of the plain language of Section 365(b)(3)." Yet, both at the hearing and in the Motion, MOAC fails to cite a single case where a court reached that "different and well-founded interpretation" of section 365(b)(3) than that reached by the Court here. *See In re 8 W. 58th St. Hosp., LLC*, 2016 WL 856800, at *3 (noting court unpersuaded by movant's merits argument because it had no effect on "what was clearly set forth in the Order [Authorizing Assumption and Assignment of the Debtor's Commercial Lease]"); *see also Cordius Tr.*, 2010 WL 234823, at *2 (denying motion for stay pending appeal, and

6

reasoning, in part, that likelihood of success on appeal factor was not satisfied where movant "challenge[d] only one of the two bases" that formed the basis for the underlying decision that movant sought to stay). Indeed, the Court repeatedly asked MOAC at the hearing for any cases that supported its decision and none were given. (*See* Hr'g Tr. 50:24-52:24; 61:17-62:19; 65:25-68:1.) It is difficult to envision how any appeal could succeed based upon this paucity of legal support. Accordingly, a stay is inappropriate.

7.      Next, MOAC argues that it will likely prevail on appeal because a situation where assignment is to a "completely separate, third-party real-estate developer rather than a business that would substantially occupy the premises itself as tenant . . . directly undermines Congress's intent of protecting" a landlord's rights. (Mot. ¶ 13.). Taken to its logical conclusion, MOAC is claiming that it is likely to prevail on appeal because an appellate court will hold that in order to assign a lease, it can only be assigned to a party that will occupy the leased space. Putting aside the simple fact that the Lease provides Sears with expansive rights, MOAC's self-serving position again is supported neither by the law nor the legislative history underlying section 365(b)(3) of the Bankruptcy Code. In fact, Congress intended debtors to be able to sell leases to any party that would provide value to the estate so long as the assignee complies with the cure provisions and the lease terms. *See In re Ames Dep't Stores, Inc.*, 348 B.R. 91, 98 (Bankr. S.D.N.Y. 2006).[4] In

---

[4] In this decision, a sister court stated:

> In a legislative judgment built into the Code, Congress has determined that, subject only to certain statutory safeguards, ***the value of a debtor's leases should go to the debtor's creditors, and that leases can be sold to achieve that end—with or without landlord consent. Here, [the over-landlord] has shown no legally cognizable basis for interfering with the assumption and assignment of this lease—which is, after all, the norm in bankruptcy, to implement that Congressional policy in order to benefit the general body of the debtor's creditors, and not the single creditor landlord that would like to get a lease back.*** I fully understand why a landlord would like to terminate a 1973 lease under which it gets a below market rate, but Congress has determined that the economic value in below market leases is to go to creditor bodies generally, and not to a windfall for a single creditor.

*Id.* at 98 (emphasis added).

7

short, MOAC's argument would disrupt the well-accepted practice of debtors selling "designation rights" with respect to leases. Without any additional support, it is more than a reach to contend that a stay is required because an appellate court *may be the first* to eliminate this time-honored, and statutorily permissible right. *See, e.g., In re Ames Dep't Stores, Inc.*, 287 B.R. 112, 117, n.7 (Bankr. S.D.N.Y. 2002) (noting that the sale of designation rights is "hardly novel" and has been approved in numerous instances from around the country and in all the reported decisions as of that time).

8.  Here, the Court ruled that the "when dealing with adequate assurance generally the Court should employ a pragmatic analysis as to whether sufficient assurance has been provided that the lease will be performed in the non-shopping-center context that focuses generally on the ability to pay rent on a going-forward basis, both the specific rent and other financial performance such as payment of taxes, common area maintenance charges, and" other payment amounts "either denominated as rent or a separate financial obligation under the lease." (Hr'g Tr. 115:19-116:3.) An absolute guarantee is not required "but rather [adequate assurance] focuses on whether performance is likely, i.e. more probable than not." (Hr'g Tr. 116:4-7.) In addition, the Court noted that it is typical to look "to some form or other of security deposit, either in the form of a letter of credit, escrow agreement, or deposit with the landlord," and that if necessary, courts can go "further to examine the assignee[']s financial condition." (Hr'g Tr. 116:16-20.) The Court then observed that courts "are perfectly willing to accept a newly formed entity as an assignee, particularly where there is a sufficient security deposit or escrow, and the newly formed assignee is run by a principal that has substantial experience in whatever business the assignee intends to conduct and has a financial stake in that business succeeding." (Hr'g Tr. 116:19-117:1; *see also*

*id.* 116:6-7 (citing *In re M. Fine Lumber Co., Inc.*, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008) and the cases cited therein).)

    9.    Based on this case law, the Court made the following findings of fact:

- The Lease "is a favorable lease" with a rent of only $10 per year. (*Id*. 117:2-4.).

- The aggregate monetary obligation of the tenant, including taxes and common charge and fees, is somewhere between $1.1 million and $1.2 million per year. (*Id*. 117:4-7.)

- Transform Leaseco has committed to fund an escrow for that amount. (*Id*. 117:8-11.)

- Transform Leaseco's "senior management has extensive experience in marketing and selling Sears' real property, including favorable leases." (*Id*. 117:12-17.)

- Transform Leaseco "has successfully completed substantial financings with respect to both its operating portfolio and its real estate portfolio." (*Id.* 117:18-23.)

- Transform Leaseco has substantial equity and it is highly likely that it exceeds the $50 million amount required in the Lease for assignment. (*Id*. 118:3-5.)

- Based on these findings, "the differences in financial condition and operating performance are not such as to preclude the assignment of th[e L]ease, which has its own limitations on assignment in it, which" the Court found Sears and Transform satisfied in this instance. (*Id*. 129:9-15.)

    10.    Finally, the Court ruled as follows regarding the standards on tenant mix and use restrictions:

> there's no specific provision in the lease, other than a broad provision in Section 22(c) as to Sears and its assignee's right to use and assign the property, limiting tenant mix. Such broad provisions are well-recognized as not precluding an assignment generally in the shopping center context. *See Ramco-Gershenson Properties L.P. v. Service Merchandise Company*, 293 B.R. 169, for example. The lease also has very broad rights pertaining to use restrictions after the major operating period, or the tenant operating period, which the parties agree has already expired. And I do not believe that given that Transform will be bound by those

9

>> broad use restrictions, and acknowledges it will be, that it's violating them as an assignee.

(*Id.* 130:5-18.) The Court also found that MOAC's main or perhaps only concern was to control the Leased Space for the aggregate benefit of itself, which does fit within Congress's concern when it enacted section 365(b)(3) to ensure that bankruptcy courts "take into account the overall effect of the assignment on the shopping center and the landlord's interest in it." (*Id.* 131:2-9.) Thus, the Court interpreted section 365(b)(3) in light of and limited by the parties' actual agreement in the Lease. And, since the Lease "in fact does protect the landlord, while preserving the fair market value for the Debtor through an assignment to Transform," the assignment from Sears to Transform Leasco was permissible. (*Id.* 133:9-14.)

11. In support of its findings, the Court relied on *In re Ames Dep't Stores*, *Inc.*, 127 B.R. 744, 753 (Bankr. S.D.N.Y. 1991), *In re Great Atl. & Pac. Tea Co.*, 472 B.R. at 678-79, and *In re Toys R Us Prop. Co.*, 2019 Bankr. LEXIS 440, at *13 (Bankr. E.D. Va. Feb. 11, 2019). (Hr'g Tr. 126:23-127:6.) Additionally, the Court made clear that the two cases relied on by MOAC were simply inapposite. (*See Id.* 127:7-129:1 (citing *In re Rickel Home Ctrs.*, 240 B.R. 826 (Bankr. D. Del 1998) *appeal dismissed*, 209 F.3d 291 (3d Cir. 2000); *In re Casual Male Corp.*, 120 B.R. 256 (Bankr. D. Mass 1990)).) In fact, MOAC acknowledges in its Motion that these cases do support the conclusion that the Court reached based on "implication, tradition, and inference," but contends it is not a "required interpretation" and that an appellate court could reach a different conclusion. (Mot. ¶ 12.) Of course, there were no cases cited to the Court during the Assumption and Assignment Hearing to justify a contrary ruling and none are cited to in the Motion. In short, based on the facts and the case law, the Court's decision was correct but an appellate court might disagree, according to MOAC. This does not satisfy the likelihood of success factor necessary to justify a stay pending appeal.

10

12. Essentially, MOAC recognizes that it does not have a "substantial likelihood of success on appeal" and instead hangs its "likelihood of success" argument on a mere "possibility" of success on appeal standard, contending that the Court has already "implicitly acknowledged that MOAC has a *possibility* of success on appeal" by making a factual finding that Transform Leaseco's financial condition and operating performance is not similar to Sears in 1991 when the Lease was signed. (Mot. ¶ 9.) First, the mere possibility of success on appeal is not the standard for the issuance of a stay. *See In re 8 W. 58th St. Hosp., LLC*, 2016 WL 856800, at *2. Moreover, this factual finding does not demonstrate this Court's acknowledgment that MOAC will prevail on appeal; indeed, the Court found the fact was not relevant, since based on the case law cited and followed on the grounds of *stare decisis*, it had no bearing on the adequate assurance issue. (*See* Hr'g Tr. 129:16-20.)

13. For these reasons, MOAC has not, and cannot meet the single most important factor that would entitle it to a stay pending appeal, namely a ***substantial*** likelihood of success on appeal.

### C. MOAC Will Not be Irreparably Injured Without a Stay Pending Appeal.

14. The second factor, whether the movant will be irreparably injured without a stay pending appeal, "is the 'principal prerequisite'" for issuing a stay. *In re Sabine Oil & Gas Corp.*, 548 B.R. at 681 (quoting *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 347 (S.D.N.Y. 2007)). This factor will not be satisfied by merely "showing some 'possibility of irreparable injury.'" *In re 8 W. 58th St. Hosp., LLC*, 2016 WL 856800, at *2 (citing *Nken*, 556 U.S. 418, 434-35 (2009)). Irreparable injury "must be 'neither remote nor speculative, but actual and imminent.'" *In re 473 W. End Realty Corp.*, 507 B.R. at 507 (quoting *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. at 347).

15. None of the three reasons on which MOAC relies support its claim that it will be irreparably injured without a stay pending appeal.

16. First, MOAC argues it will be irreparably injured without a stay because its appeal would "potentially" be rendered moot. At the outset, an injury that is "potential," is not actual and imminent, and thus this reason blatantly fails to satisfy the second factor. (*See* Mot. ¶ 3.) Putting this aside for the moment, "[a] majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable [injury]." *In re Sabine Oil & Gas Corp.*, 548 B.R. at 682 (citing *In re General Motors*, 409 B.R. 24, 31 (Bankr. S.D.N.Y. 2009)). And, even if it the risk of mootness did constitute irreparable injury, courts in this district have deemed it "insignificant when weighed against the injury that the [non-moving parties] would suffer if the stay . . . w[as] granted." *See In re Sabine Oil & Gas Corp.*, 548 B.R. at 682. In addition, even if the movant is deemed to be irreparably injured if its appeal is moot, courts in this district have denied a stay pending appeal where the three other factors weigh against issuing a stay. *See In re 473 W. End Realty Corp.*, 507 B.R. at 508 (denying motion for stay pending appeal where even though movant may be harmed if its appeal is moot (i) movant failed to show that it is likely to succeed on the merits, (ii) movant failed to show injury to the public interest, and (iii) issuing the stay will substantially injure the opposing party); *see also In re Republic Airways Holdings Inc.*, No. 16-CV-3315 (KBF), 2016 WL 2621990, at *7 (S.D.N.Y. May 6, 2016) (noting that a stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result") (quoting *In re New York Skyline, Inc.*, 520 B.R. 1, 5 (Bankr. S.D.N.Y. 2014)).

17. Second, MOAC argues it will be irreparably injured without a stay because assigning the Lease to the Buyer would permit the Buyer to sublet the premises to one or more tenants, and that the Buyer "has not been shy in confirming its plans to lease the Premises to one

12

or more tenants to whom MOAC would not otherwise lease the Premises." (Mot. ¶ 6.) Thus, MOAC's argument seems to be that it will be irreparably harmed if Transform Leaseco sub-leases the Leased Space in accordance with the terms of the Lease. This argument should not withstand scrutiny, as landlords should not be permitted to improve the position they have under the existing lease. *See In re Ames Dep't Stores, Inc.*, 348 B.R. at 98.

18. Of equal importance is that there is no "actual and imminent" irreparable injury regarding potential future tenants because as noted throughout the record, it was plain that it will take time to find sub-tenants and that as a result there is not a likelihood of actual and imminent harm to MOAC as it has conceded. (*See* Mot. ¶ 18 ("Transform does not expect to lease the Premises immediately."); *see also* Hr'g Tr. 34:9-35:3; *see also* Jerbich Decl. ¶ 27.) In fact, while the Lease has no restriction on the time the store can remain dark and no requirement that the tenant sub-lease the Leased Space within any specific time, the Court imposed a two-year "outside date" by which the Buyer must sub-let at least a portion of the Leased Space. (Assumption and Assignment Order ¶ 17; *see also* Hr'g Tr. 107:18-108:11, 133:15-23.) In addition, the Assumption and Assignment Order provided that Article 6.3 of the Lease provides MOAC with a right of first offer, a right that remains "fully enforceable against Buyer and any assignee" under the Order. (Assumption and Assignment Order ¶ 16.) The Court included these provisions in the Assumption and Assignment Order to provide protection to MOAC as a form of adequate assurance under section 365(b)(3)(D), which was well within its discretion. These protections are likely to be viewed by an appellate court as a sensible way in which the Court exercised its discretion to ensure the assignment of the Lease to Transform Leaseco complied with the Bankruptcy Code. Since the Court exercised its discretion in a wise, just, and reasonable fashion, it is likely an appellate Court will defer to it. *In re Great Atl. & Pac. Tea Co.*, 472 B.R. at 678.

19. Third, MOAC argues it will be irreparably injured without a stay because it would not otherwise lease the Premises to "these tenants" who "would be out of harmony with the operation of Mall of America as a first-class shopping center." (Mot. ¶ 6). Once again, this position seems to ignore the clear and unequivocal right of Sears to assign the Lease to virtually any party, and that the Leased Space can be used for nearly any lawful purpose. MOAC's efforts to re-write the Lease and REA to provide it protections that it did not bargain for in 1991 surely cannot create any prejudice to MOAC.

20. Based upon this extensive record, MOAC has failed to satisfy the principal prerequisite for issuing a stay pending appeal, and the Motion should therefore be denied.

### D.   Buyer Will Be Substantially Injured by a Stay Pending Appeal.

21. If the Court stays the Assumption and Assignment Order pending appeal, the Buyer will be substantially injured because it will be extremely difficult for the Buyer to obtain tenants for the premises because when the appeal will be decided is unknown. This lack of finality will put the Buyer's ability to obtain a tenant on ice, which is clearly MOAC's goal.

22. This factor therefore weighs against issuing a stay pending appeal of the Assumption and Assignment Order.

### E.   The Public Interest Weighs Against Issuing a Stay Pending Appeal.

23. The public interest weighs against this Court staying Assumption and Assignment Order pending appeal. The public has an interest in ensuring that the rule of law is applied to a private contract. MOAC's position would make an existing private contract irrelevant and would require the interpretation of a private contract, the Lease, in a manner inconsistent with its terms. This is especially problematic where, as here, the sophisticated Parties to the Lease should have known that in a bankruptcy case the contract could be assigned to another party. The Court's decision gives effect to the normal understanding of the Parties regarding assignment, which is an

important public interest that will be subordinated if MOAC's argument were to be adopted. MOAC argues that the viability of the Mall of America will be impacted without a stay; however, the alleged impact is that the various contracts that MOAC entered into with tenants could be applied in accordance with their terms. (*See* Mot. ¶ 15.) According to MOAC, the other public interest that the stay is necessary to vindicate is to ensure that designation rights sales for leases do not occur. As noted above, however, bankruptcy courts in this district have approved designation lease rights in cases involving shopping center leases. *See In re Ames Dept. Stores, Inc.*, 287 B.R. at 117, n.7.

### F. Alternatively, MOAC Should be Required to Post a Bond.

24. Alternatively, if the Assumption and Assignment Order is stayed pending appeal, MOAC should be required to post a bond. The risks to the Buyer are substantial if a stay is granted and the appeal is ultimately denied. Putting aside the substantial sums that the Buyer has paid (cure) and posted (escrow), it is highly likely that the stay will effectively halt the ability of the Buyer to find quality replacement tenants within the two-year period established in the Assumption and Assignment Order, thus depriving the Buyer of the benefit of its bargain. Thus, it is more than likely that the stay will give MOAC exactly what it has wanted from the outset, which is control of the Leased Space for no consideration. In order to protect the Buyer from this material risk, a bond of $20 million should be ordered if the Court is willing to issue a stay. This amount will adequately protect the Buyer if MOAC is able to accomplish through the stay, what it has not been permitted to achieve through the assumption and assignment process.

25. MOAC moves to have this bond waived, yet fails to meet its burden as to why the Court should waive it. Where a movant seeks a stay pending appeal without a bond, the movant has the burden of showing "why the court should deviate from the ordinary full security requirement." *In re Sabine Oil & Gas Corp.*, 548 B.R. at 681 (quoting *Triple Net Invs. IX, LP v.*

15

*DJK Residential (In re DJK Residential, LLC)*, No. 08–10375, 2008 WL 650389, at *2 (S.D.N.Y. Mar. 7, 2008)).

26. Here, MOAC has failed to make any showing as to why the court should deviate from the ordinary full security requirement. Instead, MOAC invokes vague equitable principles to assert in a conclusory fashion that "[a] bond is not a requirement to obtain a stay pending appeal and is not warranted here." (Mot. ¶ 17.) While MOAC claims it "should not be required to post a bond because no party will be harmed by the stay being sought," this is incorrect. The Buyer has already paid the cure amount, established an escrow account, and will have to continue to pay rent, while at the same time would have difficulty finding a tenant due to the stay. In light of all of this, the bond amount proposed in the prior paragraph is reasonable and should be imposed under Federal Rule of Bankruptcy Procedure 8007(c).

### G. MOAC's Request to Extend the Mootness Stay Should Be Denied.

27. MOAC's request to extend what it refers to as the "mootness stay" should be denied.[5] Presumably MOAC is referring to the following language in the Assumption and Assignment Order: "that any appeal filed within 14 days after the entry of this Order shall not be rendered moot by the waiver contained in this paragraph." (Assumption and Assignment Order ¶ 20). MOAC already filed its notice of appeal, so this requested extension is no longer relevant. Therefore, MOAC's request to extend the "mootness stay" should be denied.

---

[5] MOAC filed the Motion twice, yet only included this request in the second iteration of the Motion it filed. *Compare* ECF No. 5110 at 2, ¶ 24 (adding request for extension of "mootness stay"), *with* ECF No. 5083 (excluding request for extension of "mootness stay").

## CONCLUSION

For the reasons set forth above, the Buyer respectfully requests that this Court (i) deny MOAC's Motion; (ii) in the alternative, require MOAC to post a bond, in the event that the Motion is granted; and (iii) grant the Buyer such other and further relief that is just and appropriate.

Dated: New York, NY
September 16, 2019

Respectfully submitted,

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501


By: */s/* R. Craig Martin
    Richard A. Chesley
    R. Craig Martin
    Rachel Ehrlich Albanese
    Alana M. Friedberg

*Attorneys for Transform Holdco LLC*