Hearing Date and Time: October 23, 2019, 10:00 a.m.
(Telephonic appearance requested)
Response Deadline: September 19, 2019 at 4:00 p.m.

**Marilyn Cowhey Macron**
**(Marilyn@MarilynMacron.com)**
**Marilyn Macron, P.C.**
**211 Beach 134th Street, First Floor**
**Belle Harbor, NY 11694**
**Telephone: 718-404-7199**
**Facsimile: 718-945-7455**

*Counsel for CalAmp Wireless Networks Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
In re:

**SEARS HOLDING CORPORATION, et al.,**

                Debtor(s).

-------------------------------------------------------X

**Chapter 11**

**Case No. 18-23538 (RDD)**

**Jointly Administered**

**OPPOSITION OF CALAMP WIRELESS NETWORKS CORPORATION
TO DEBTORS' FIFTH OMNIBUS OBJECTION TO PROOFS OF CLAIM
(RECLASSIFICATION AS GENERAL UNSECURED CLAIMS);
REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE**

**TO THE HONORABLE ROBERT D. DRAIN,**

**UNITED STATES BANKRUPTCY JUDGE:**

      CalAmp Wireless Networks Corporation, by and through its counsel Marilyn Macron PC, hereby states as follows in support of its Opposition to the Debtors' Objection to CalAmp's Proof of Claim and Request for Payment of Administrative Expenses:

## SUMMARY

1.  Under a pre-petition contract, CalAmp Wireless Networks Corporation provided equipment, software, and integrated telecommunications to track vehicles, containers, and drivers in the Sears fleet.

2.  On January 21, 2019, CalAmp Wireless Networks Corporation filed *Proof of Claim* #7876 for $831,040.12. In its *Proof of Claim*, CalAmp Wireless Networks Corporation asserted a timely administrative claim of $148,476.19 under 11 U.S.C. § 503(b)(9). (CalAmp Wireless Networks Corporation's updated calculation, shown below, is $148,484.19.)

3.  On August 29, 2019, Sears Holding Corporation and affiliates ("Debtors") filed ***Debtors' Fifth Omnibus Objection To Proofs Of Claim (Reclassification As General Unsecured Claims)*** (Docket #5031, "Objection"). In the Objection (page six, item 27), Debtors assert that the $148,476.19 claim under 11 U.S.C. § 503(b)(9) "does not relate to the receipt of goods."

4.  For the reasons stated below, CalAmp Wireless Networks Corporation opposes the Debtors' terse Objection.

## BACKGROUND

### The Master Telecommunications Procurement Agreement

5.  On September 27, 2001, Sears, Roebuck & Co. and Wireless Matrix USA Inc. (the predecessor to CalAmp Wireless Networks Corporation) entered into a Master Telecommunications Procurement Agreement. Declaration of Arnel Melgarejo, Paragraph 7; Exhibit 1 (Master Telecommunications Procurement Agreement). Under the Master Telecommunications Procurement Agreement, Wireless Matrix USA Inc. agreed to provide

2

equipment, software, and telecommunications to Sears, Roebuck & Co. and its affiliates. Declaration of Arnel Melgarejo, Paragraph 7; Exhibit 1 (Master Telecommunications Procurement Agreement, second paragraph, Paragraph 1.5 defining "authorized user," Paragraph 1.28 defining "enhancements" to include equipment, Paragraph 1.29 defining "equipment" to be provided under the contract, Paragraph 1.60 defining "software" to be supplied to the customer, Paragraph 2.40 providing that Sears, Roebuck & Co. will issue purchase orders for "software, equipment and/or services," Paragraph 5.7 requiring Wireless Matrix USA Inc. to provide "telecommunications services.")

6. Sears, Roebuck & Co. and its affiliates maintained a large fleet to fill the shelves in its warehouses and retail stores. Under the Master Telecommunications Procurement Agreement, Sears, Roebuck & Co. was able to: optimize operations with real time vehicle tracking; maximize fleet efficiency with reporting and analytics; implement proactive vehicle maintenance; and improve safety with driver behavior monitoring. Declaration of Arnel Melgarejo, Paragraph 8.

7. On March 30, 2004, Sears, Roebuck & Co. advised Wireless Matrix USA, Inc. that Sears, Roebuck & Co. authorized Sears Procurement Services, Inc. to make purchases under the Master Telecommunications Procurement Agreement. Declaration of Arnel Melgarejo, Paragraph 9; Exhibit 2 ("Sears, Roebuck & Co. ('Sears') has created a wholly-owned subsidiary called Sears Procurement Services, Inc. ('SPS') for its purchasing activities for goods used by Sears and its affiliates ('Sears') ... SPS may make purchases under the existing contract ... As the parent company of this new entity, Sears will, of course, stand behind all obligations of SPS.").

3

8. From time to time, Sears, Roebuck & Co. and Sears Procurement Services, Inc. (on the one hand) and Wireless Matrix USA Inc. (on the other hand) negotiated statements of work (sometimes abbreviated "SOW") under the Master Telecommunications Procurement Agreement. Declaration of Arnel Melgarejo, Paragraph 10. By July 1, 2012, Sears, Roebuck & Co. assigned its rights under the Master Telecommunications Procurement Agreement to Sears Holding Management Corporation. Declaration of Arnel Melgarejo, Paragraph 10; Exhibit 3 (Amendment #2 to SOW #9, confirming that "Sears Holdings Management Corporation" was the "assignee of Sears, Roebuck and Co., on behalf of itself and for the benefit of its Affiliates")

9. CalAmp Wireless Networks Corporation never relieved Sears, Roebuck & Co. from its responsibilities under the Master Telecommunications Procurement Agreement. Declaration of Arnel Melgarejo, Paragraph 11.

10. On or before May 15, 2015, Wireless Matrix USA Inc. assigned its rights under the Master Telecommunications Procurement Agreement to CalAmp Wireless Data Systems, Inc. CalAmp Wireless **Networks Corporation** is the successor to CalAmp Wireless **Data Systems, Inc.** Declaration of Arnel Melgarejo, Paragraph 12; **Exhibit 4** (Clarification And Modification Amendment To Statement Of Work #4 To Master Telecommunications Procurement Agreement, executed by "Sears Holdings Management Corporation on behalf of itself and for the benefit of its Affiliates" and "CalAmp Wireless Networks Corporation (successor to CalAmp Wireless Data Systems, Inc.)."

11. From time to time, CalAmp Wireless Networks Corporation issued invoices and purchase orders to Sears, Roebuck & Co. or its accounts payable processor ("Sears – AP [accounts payable] ARIBA"). Declaration of Arnel Melgarejo, Paragraph 13.

4

## CalAmp Wireless Networks Corporation is a Leader in Telematics

12.     CalAmp Wireless Networks Corporation is a telematics pioneer.

Declaration of Arnel Melgarejo, Paragraph 6.  WikiPedia defines "telematics" (https://en.wikipedia.org/wiki/Telematics) as: Telematics is an interdisciplinary field that encompasses telecommunications, vehicular technologies, for instance, road transportation, road safety, electrical engineering (sensors, instrumentation, wireless communications, etc.), and computer science (multimedia, Internet, etc.). Telematics can involve any of the following:

- the technology of sending, receiving and storing information using telecommunication devices to control remote objects
- the integrated use of telecommunications and informatics for application in vehicles and to control vehicles on the move
- global navigation satellite system technology integrated with computers and mobile communications technology in automotive navigation systems
- ... the use of such systems within road vehicles, also called vehicle telematics.

13.     CalAmp integrates base station equipment, equipment in vehicles and containers, software, and telecommunications so that its customers can keep track of (and coordinate) their fleet vehicles, containers, drivers, and other assets. Declaration of Arnel Melgarejo, Paragraph 6. Telecommunications involves tangible gear (transmitters, receivers, antennas, wires) installed in Sears' vehicles and modulated radio waves. It involves the use of a complex network designed and maintained by CalAmp Wireless Networks Corporation for its customers. Declaration of Arnel Melgarejo, Paragraph 6.

14.     "Telecommunications refers to the exchange of information by electronic and electrical means over a significant distance. A complete telecommunication arrangement is made up of two or more stations equipped with transmitter and receiver devices. A single co-arrangement of transmitters and receivers, called a transceiver, may also be used in many telecommunication stations. ... In telecommunications, data is transmitted in the form of electrical signals known as carrier waves, which are modulated into analog or digital signals for transmitting information." See, e.g., https://www.techopedia.com/definition/5570/telecommunications.

### CalAmp's $148,484.19 Claim under 11 U.S.C. §503(b)(9) and $240,060.87 Administrative Claim for Post-Petition Invoices

15.     On October 15, 2018, Sears, Roebuck & Co. (18-23538), Sears Holdings Management Corporation (18-23553), and their affiliates filed chapter 11 petitions in this Court. On January 21, 2019, CalAmp Wireless Networks Corporation filed **Proof of Claim** #7876 for $831,040.12. Declaration of Arnel Melgarejo, Paragraph 14; Exhibit 5 (Proof of Claim). CalAmp Wireless Networks Corporation's pre-petition claim of $831,040.12 remains unpaid. Declaration of Arnel Melgarejo, Paragraph 14.

16.     The number, date, type, and amount of unpaid invoices follow:

I0208719 12/12/2016 DIRECT BILL $ 650.00

I0269136 4/30/2018 FO Order Type $ 606.88

I0279252  7/30/2018 IN DIRECT BILL $ 11,556.30

I0279253 7/30/2018 IN DIRECT BILL $ 228,760.77

I0279641 8/2/2018 FO Order Type $ 153.12

I0282278 8/24/2018 IN DIRECT BILL $ 11,497.50

6

I0282279 8/24/2018 IN DIRECT BILL $ 228,760.77

I0282627 8/28/2018 FO Order Type $ 401.87

I0286240 9/30/2018 IN DIRECT BILL $ 228,760.77

I0286241 9/30/2018 IN DIRECT BILL $ 11,451.30

I0288883 10/14/2018 IN DIRECT BILL $ 5,121.90

I0288884 10/14/2018 IN DIRECT BILL $ 103,318.94

Declaration of Arnel Melgarejo, Paragraph 15.

17.     CalAmp Wireless Networks Corporation calculates that $148,484.19 of the $831,040.12 Proof of Claim falls under 11 U.S.C. §503(b)(9). This includes 100% of invoice I0288883 ($5,121.90 for the first 15 days of October), 100% of invoice I0288884 ($103,318.94 for the first 15 days of October), 16.67% (five of the 30 days in September) of invoice I0286240 (16.67% of $228,760.77, or $38,134.42), and 16.67% (five of the 30 days in September) of invoice I0286241 (16.67% of $11,451.30, or $1,908.93). Declaration of Arnel Melgarejo, Paragraph 16.  Accordingly, CalAmp Wireless Networks Corporation asserts a claim under 11 U.S.C. §503(b)(9) for $148,484.19. Declaration of Arnel Melgarejo, Paragraph 16.  At the request of the Debtors, CalAmp Wireless Networks Corporation continued to provide equipment, software, and telecommunications to the Debtors under the Master Telecommunications Procurement Agreement during the bankruptcies (October 15, 2018 through December 31, 2018). Declaration of Arnel Melgarejo, Paragraph 17.

18.     Sears, Roebuck & Co. terminated the Master Telecommunications Procurement Agreement as of December 31, 2018. Declaration of Arnel Melgarejo, Paragraph 18.

19.      For the period from October 15, 2018 through December 31, 2018, Sears, Roebuck & Co. and Sears Holdings Management Corporation still owe $240,060.87 to CalAmp

7

Wireless Networks Corporation. Declaration of Arnel Melgarejo, Paragraph 19; Exhibit 5 (I0295508, dated December 26, 2018, for $228,760.77, under "C41218_v3_CW2320950_Data Pump Dec 2018"), Exhibit 5 (I0295509, dated December 26, 2018, for $11,300.10, under "C41127_v7_CW2300408_FO Dec 2018").

20.    CalAmp Wireless Networks Corporation asserts a classic, post-petition administrative claim for $240,060.87 for the unpaid post-petition invoices (I0295508, I0295509). Declaration of Arnel Melgarejo, Paragraph 20; Exhibit 5.

21.    In sum, CalAmp Wireless Networks Corporation seeks an order overruling the Debtors' Objection <u>and</u> allowing CalAmp Wireless Networks Corporation's combined administrative claim of $388,545.06 ($148,484.19 under 11 U.S.C. §503(b)(9) for pre-petition charges within 20 days of bankruptcy, plus $240,060.87 for post-petition invoices). Declaration of Arnel Melgarejo, Paragraph 21.

## ARGUMENT
### CalAmp Wireless Networks Corporation's Pre-Petition Claim falls Under 11 U.S.C. §503(b)(9)

22.    Under 11 U.S.C. § 503(b)(9), "there shall be allowed Administrative expenses ... including ... ***the value of any goods received by the debtor within 20 days*** before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." Emphasis added.

The term "goods" is not defined in the Bankruptcy Code. Courts have interpreted "goods" broadly to include electricity and other less tangible items. Here, CalAmp Wireless Networks Corporation provided tangible goods (equipment used for tracking vehicles and trailers), software, telecommunication services (data pump satellite and terrestrial communications with the Sears fleet), access to its own hardware and network, and reports to the Debtors.

8

23. Debtors conclude that the CalAmp Wireless Networks Corporation package does not qualify as "goods." Debtors' Objection, page six. CalAmp Wireless Networks Corporation does not agree.

24. Since there is no definition of the term "goods" in the Bankruptcy Code, bankruptcy courts have looked to the Uniform Commercial Code for guidance. See, **Uniform Commercial Code § 2-105(1)** ("'Goods' means all things ... which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action."). One court noted, "Goods" may be invisible to the consumer. See, e.g., **In re Erving Industries, Inc.**, 432 B.R. 354, 374 (Bankr. D. Mass. 2010) ("electricity constitutes a good under § 503(b)(9)").

25. "In the absence of a Code definition, nearly every court to consider the issue, other than the bankruptcy court in this case, has concluded that the meaning of "goods" under § 503(b)(9) "is primarily informed by the meaning of goods under Article 2 of the UCC." In re Erving Indus., Inc., 432 B.R. at 365; see also In re NE Opco, Inc., 501 B.R. at 260; Hudson Energy Servs., LLC v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.), 498 B.R. 19, 25–26 (S.D.N.Y.2013); GFI Wis., Inc. v. Reedsburg Util. Comm'n, 440 B.R. 791, 798 (W.D.Wis.2010); In re Circuit City Stores, Inc., 416 B.R. 531, 535–36 (Bankr.E.D.Va.2009); In re Goody's Family Clothing, Inc., 401 B.R. at 134–36; In re Pilgrim's Pride Corp., 421 B.R. 231, 237 (Bankr.N.D.Tex.2009) ; In re Plastech Engineered Prods., Inc., 397 B.R. 828, 836 (Bankr.E.D.Mich.2008); see also In re Samaritan Alliance, LLC, No. 07–50735, 2008 WL 2520107, at *3 (Bankr.E.D.Ky. June 20, 2008)." Also see, **In re PMC Mktg. Corp.**, 517 B.R. 386, 391–392 (Bankr. App. 1st Cir. 2014).

9

26.  In part, CalAmp Wireless Networks Corporation provided, installed, and maintained tangible hardware in the Sears' fleet (vehicles, trailers, and base stations). Declaration of Arnel Melgarejo, Paragraph 6. Hardware would qualify as goods.

27.  Under the Master Telecommunications Procurement Agreement, CalAmp Wireless Networks Corporation also supplied software (including software embedded in the hardware) to operate and poll the vehicular hardware for information. Under Article 9 of the Uniform Commercial Code, embedded software in the CalAmp Wireless Networks Corporation hardware would be a "good." **Uniform Commercial Code §9-102(a)(4)** (""Goods" means all things that are movable when a security interest attaches. ... The term also includes a computer program embedded in goods and any supporting information provided in connection with a transaction relating to the program if (i) the program is associated with the goods in such a manner that it customarily is considered part of the goods, or (ii) by becoming the owner of the goods, a person acquires a right to use the program in connection with the goods. ...").

28.  Under the Master Telecommunications Procurement Agreement, CalAmp Wireless Networks Corporation also provided telecommunications. This required CalAmp Wireless Networks Corporation to provide a wired or wireless network communications link to every vehicle, trailer, and base station in the Sears' fleet. This arrangement (transmitting and receiving digitally modulated radio waves) resembles the transmission of electrical energy because it is invisible and involves the movement of electrons. Declaration of Arnel Melgarejo, Paragraph 6.  Also, telecommunications allowed Sears, Roebuck & Co. and Sears Holdings Management Corporation to access the tangible, complex infrastructure of equipment, lines, and gear assembled by CalAmp Wireless Networks Corporation. Declaration of Arnel Melgarejo, Paragraph 6.

29. Under the Master Telecommunications Procurement Agreement, CalAmp Wireless Networks Corporation also provided detailed reports. These reports were usually delivered electronically. Declaration of Arnel Melgarejo, Paragraph 13. Such reports would also qualify as goods (produced and delivered during the 20 day window before bankruptcy on demand).

### CalAmp Wireless Networks Corporation Will Deliver This Opposition to the Proper Parties

30. Debtors' Objection states that CalAmp Wireless Networks Corporation should deliver a courtesy copy of its opposition to chambers of the Court. CalAmp Wireless Networks Corporation will do so.

31. Debtors' Objection states that CalAmp Wireless Networks Corporation should deliver the opposition to Debtors' attorneys at Weil, Gotshal, & Manges LLP (Ray C. Schrock, Jacqueline Marcus, Garrett A. Fail, and Sunny Singh.). The attorneys at Weil, Gotshal, & Manges LLP will automatically receive copies of the opposition through the Court's filing system and from Prime Clerk (the Debtors' claims and noticing agent). In addition, CalAmp Wireless Networks Corporation will send this opposition as an attachment to e-mails to attorneys Ray C. Schrock, Jacqueline Marcus, Garrett A. Fail, and Sunny Singh.

32. Debtors' Objection states that CalAmp Wireless Networks Corporation should deliver the opposition to the attorneys for the Official Committee of Unsecured Creditors at Akin Gump Strauss Hauer & Feld LLP (Philip C. Dublin, Ira Dizengoff, and Sara Lynne Brauner). The attorneys at Akin Gump Strauss Hauer & Feld LLP will automatically receive copies of the opposition through the Court's filing system and from Prime Clerk. In addition, CalAmp Wireless Networks Corporation will send the opposition as an attachment to e-mails to attorneys Philip C. Dublin, Ira Dizengoff, and Sara Lynne Brauner.

**With the Permission of this Court, CalAmp Wireless Networks Corporation's Attorney Will Appear Telephonically
at the October 23, 2019 Hearing**

33.     Debtors' Objection states (on page 3) that CalAmp Wireless Networks Corporation "may participate in the [October 23, 2019] Hearing telephonically, provided [CalAmp Wireless Networks Corporation] complies with the Bankruptcy Court's instructions (including, without limitation, providing prior written notice to counsel for the Debtors and any statutory committee), which can be found on the Bankruptcy Court's website at www.nysb.uscourts.gov."  Counsel for CalAmp Wireless Networks Corporation will make arrangements to appear telephonically at the hearing on October 23, 2019.

**Request for a Hearing**

34.     ***Court-Ordered Claims Hearing Procedures*** were attached to the Debtors' Objection.  Objection, pp. 15-16. If the Court desires an evidentiary hearing, CalAmp Wireless Networks Corporation requests that this Court set a date and time for that contested evidentiary hearing on the merits of the CalAmp Wireless Networks Corporation $148,484.19 claim under 11 U.S.C. § 503(b)(9).

35.     Soon, CalAmp Wireless Networks Corporation will be filing a motion under 11 U.S.C. §503(b)(1)(A) for allowance and payment of its classic post-petition administrative expense claim of $240,060.87. The $240,060.87 claim is based on post-petition invoices I0295508 and I0295509 (both dated December 26, 2018). The Court may wish to set a single evidentiary hearing on both CalAmp Wireless Networks Corporation administrative claims (the $148,484.19 pre-petition claim under 11 U.S.C. § 503(b)(9) and the $240,060.87 post-petition claim).

## **CONCLUSION**

Under these facts and circumstances, the Debtors' Objection should be denied. CalAmp Wireless Networks Corporation prays for an order overruling the Debtors' Objection and allowing CalAmp Wireless Networks Corporation's combined administrative claim of $388,545.06 ($148,484.19 under 11 U.S.C. §503(b)(9), plus $240,060.87 for unpaid post-petition invoices).

Dated: September 18, 2019
Belle Harbor, NY

By: **/s/ Marilyn Cowhey Macron**
**Marilyn Cowhey Macron (MM-8311)**
**211 Beach 134th Street, 1st Floor**
**Belle Harbor, NY 11694**
**Tel. 718-404-7199**
**Fax. 718-945-7455**
**marilyn@marilynmacron.com**
**Counsel for CalAmp Wireless Networks Corporation**