**Hearing Date and Time:** September 27, 2019 at 11:00 am (Prevailing Eastern Time)

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Thomas J. Moloney
Sean A. O'Neal
Luke A. Barefoot
Chelsey Rosenbloom
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for ESL Investments Inc. and certain of its affiliates and Transform Holdco LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, et al.,<br><br>　　　　　Debtors.¹ | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

---

1     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR-Rover De Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## SUPPLEMENTAL RESPONSE OF ESL INVESTMENTS, INC. AND TRANSFORM HOLDCO LLC TO JOINT CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS

ESL Investments, Inc. and certain of its affiliated entities (including JPP, LLC and JPP II, LLC) (collectively, "ESL") in their capacities as creditors of Sears Holdings Corporation and certain of its affiliates (collectively, "Sears" and with respect to its Chapter 11 affiliates, the "Debtors"), and Transform Holdco LLC ("Transform"), the buyer under the Asset Purchase Agreement (as defined in the Plan), by their undersigned counsel, hereby submit this supplemental response (the "Response") pursuant to section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") with respect to the confirmation of the Debtors' proposed *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 5139] (the "Modified Plan"). In support of this Response, ESL and Transform respectfully state as follows:

## BACKGROUND AND ARGUMENT

1. On July 9, 2019, the Debtors filed the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors (the "Plan") [Docket No. 4476] and an accompanying amended disclosure statement for the Plan (the "Disclosure Statement") [Docket No. 4478].[2] ESL timely filed limited objections to the Plan, the Plan Supplement and Disclosure Statement [Docket Nos. 4718, 4759, 4786] (collectively, the "Prior Responses") and reserved all rights to amend or supplement such Prior Responses.

2. In advance of the upcoming confirmation hearing, recently rescheduled for September 27, 2019, the Debtors filed the Modified Plan, a memorandum of law supporting

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Modified Plan or Disclosure Statement, as applicable.

confirmation of the Modified Plan [Docket No. 5144] (the "Confirmation Brief") and supporting declarations on September 13, 2019.[3] ESL and Transform submit this Response to supplement their Prior Responses and request modifications to the Modified Plan to preserve their rights with respect to issues that have not been fully adjudicated.

3.      First, as stated in the Prior Responses, Transform believes the Debtors are materially overstating the reimbursement claims they have against Transform under the Asset Purchase Agreement and that the Debtors are not accurately disclosing the set-off, recoupment and contractual claims Transform has against the Debtors under the Asset Purchase Agreement. More specifically, Transform disagrees with the Debtors' suggestion in the Confirmation Brief and Supporting Declarations that Transform has an obligation to reimburse the estates for $97 million in 503(b)(9) Claims. *See* Murphy Declaration, ¶ 33; Griffith Declaration, ¶ 61. To the contrary, Transform believes that because the Debtors failed to deliver $147 million in Prepaid Inventory and $255.2 million in Specified Receivables, Transform is entitled to a dollar-for-dollar reduction in the amount of 503(b)(9) Claims reimbursement that will eliminate any such reimbursement obligation completely.[4]

---

[3]    The supporting declarations include the following: *Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 5148] (the "Griffith Declaration"), *Declaration of William Murphy in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 5149] (the "Murphy Declaration") and the *Declaration of William L. Transier in Support of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 5146] (the "Transier Declaration," collectively with the Griffith Declaration and the Murphy Declaration, the "Supporting Declarations").

[4]    ESL, of course, also disputes any suggestion by the Debtors that the claims it has asserted against ESL and others in the pending adversary proceeding asserting fraudulent transfer and related claims (Adv. Pro. No. 19-ap-08250) have merit or value. There is no need or basis for a mini-trial on this question, however, in connection with Plan confirmation. The Debtors do not suggest that they are likely to obtain any proceeds from the adversary proceeding prior to the Effective Date that will enable them to pay administrative expense claims and satisfy the requirements for confirmation. To the contrary, they propose apparently to segregate $25 million as a war chest to pursue those claims, including following the Effective Date. *See* Confirmation Brief ¶¶ 175, 179.

4.   The alleged $97 million reimbursement obligation is based on erroneous assumptions that the total shortfall is only $55 million, which includes only a portion of the Prepaid Inventory Shortfall Amount and excludes entirely any Specified Receivables Shortfall Amount, despite the fact that the Debtors themselves have acknowledged that the Court rejected their argument that GAAP accounting should apply to determine the Prepaid Inventory Shortfall Amount and the Specified Receivables Shortfall Amount, and have represented that Transform has asserted an additional Specified Receivables shortfall in the amount of at least $77 million.[5] *See* Confirmation Brief, ¶ 12. As the Court is aware, the amount of the shortfalls will be the subject of an examination by an Examiner to be appointed by the Court.

5.   On a related point, Transform disagrees with the Debtors' suggestion in the Supporting Declarations that Transform owes the Debtors approximately $40 million in funds related to various cash reconciliation items. *See* Confirmation Brief, ¶ 4. Transform believes that at least $35 million of this amount is subject to offset, recoupment or contractual rights that would reduce any amounts owed to the estates. Again, this is a matter to be addressed by an Examiner to be appointed by the Court (or in any mediation that the Court may direct).

6.   As the Debtors acknowledge, these matters need not be resolved by the Court at this time in connection with confirmation (though, as discussed below, they are a reason for this Court to defer making any finding that the Debtors can satisfy the requirement for confirmation that they can pay all administrative expense claims in full, in cash, on the Effective Date), given that the "Debtors have not factored in any additional cash recoveries from Transform in the administrative insolvency analysis." Confirmation Brief, ¶ 169. Transform is raising these issues

---

[5] This amount does not reflect any review of approximately $70 million of alleged Specified Receivables. Transform believes that a substantial portion of the not-yet-reviewed Specified Receivables does not represent actual receivables and therefore anticipates that the total shortfall will exceed the amount of Transform's potential 503(b)(9) Claims reimbursements obligation once this review is completed.

-4-

in this pleading merely as a matter of disclosure and to minimize any risk of confusion among the creditors or the Court.

7. <u>Second</u>, because the Plan relies on receipt of various contingent recoveries in order to be able to pay the Debtors' Administrative Expense Claims, including claims that Transform or ESL may be entitled to assert, Transform and ESL respectfully submit that the Court cannot and should not find that the requirements of Section 1129(a)(9) have been met at this time. Such a finding is premature unless and until the Debtors can show that they *actually* and *currently* have the ability to pay their Administrative Expense Claims in full. Accordingly, in the event that the Court enters an order in connection with confirmation of the Plan, such order should not include a finding with respect to the Debtors' ability to satisfy Section 1129(a)(9) and should instead require the Debtors, following notice and further opportunity for parties in interest to be heard, to seek a ruling as to the administrative solvency of the Debtors and their estates at a later time when they are actually able to present evidence, and not mere speculation, on the question. This is consistent with the Court's prior direction that the Debtors make an evidentiary showing on Section 1129(a)(9) and that the record supporting such a showing be shared with and made available to all parties in interest in advance of the hearing. *See* Hr'g Tr. 112:15-20; 118:5-7, August 22, 2019 ("And as these debtors and the committee know, because they've done it hundreds, if not thousands of times, it's a good idea to develop that record well before, and if you need to, because it's important to reduce the number of objections and/or maybe build a consensus; share. . . . And if they don't have a proper record at that time and want to proceed, there will be a problem . . . .").

8. Without limiting the foregoing, Transform and ESL respectfully submit that the Court should in any event require that all parties in interest receive no less than twenty (20) days' notice prior to the occurrence of the Effective Date. Such notice is necessary in the interest of

transparency and to provide all interested parties a sufficient to opportunity to review and test the Debtors' assumptions and to preserve their rights, including seeking a stay of effectiveness of the Modified Plan.

9. <u>Third</u>, as the Court is aware, each of the Second Lien Parties has appealed this Court's July 31, 2019 decision regarding the Second Lien Parties' requests for a determination of their adequate protection claims. *See, e.g., Notice of Appeal* [Docket No. 4832] (the "<u>ESL 507(b) Appeal</u>"). The Modified Plan includes language that could be read to limit the ability of an appellate court to review this Court's determination and provide relief. To the extent that this is intentional, it would contravene the "good faith" requirement of section 1129(a)(3). As described below, the Modified Plan's language, if taken in isolation and without consideration of other provisions that (as discussed below) appear to say precisely the opposite, could be read to limit the effectiveness of the ESL 507(b) Appeal and restrict ESL's recoveries even if it prevails on that appeal. Rather than limit the definition of the ESL 507(b) Cap to an amount not to exceed $50 million in the aggregate, as is proposed by the Modified Plan, section 1.61 should revert to the prior language of the Plan to restore the reference to the Asset Purchase Agreement documenting the agreement as to the treatment of ESL's 507(b) claims between the relevant parties as follows:

> **"ESL 507(b) Cap"** means ~~Distributions from the Net Proceeds of Other Causes of Action and Other Assets, not to exceed~~ <u>the</u> $50 million ~~in the aggregate~~ <u>cap described in section 9.13(c)(ii) of the Asset Purchase Agreement.</u>

This language will preserve the rights of all parties to any appeal, including the Debtors. In the event that the Debtors prevail on appeal, they will be fully protected.

10. In addition, the first paragraph of section 2.4 of the Modified Plan should be restored to the version of the language that was included in the Plan and also make clear the timing of any distributions to the ESL 507(b) Priority Claims, as reflected below:

>Unless otherwise agreed by the holder of such Claims with the Debtors (subject to the consent of the Creditors' Committee, not to be unreasonably withheld) prior to the Effective Date, or the Liquidating Trust after the Effective Date, to the extent any ESL 507(b) Priority Claims are Allowed, ESL shall receive, from the Debtors or the Liquidating Trust, as applicable, and, in full and final satisfaction, settlement, release, and discharge of such Allowed ESL 507(b) Priority Claims, payment in Cash ~~from Net Proceeds of Other Causes of Action and Other Assets, subject to the ESL 507(b) Cap~~ subject to the limitations set forth in section 9.13(c)(ii) of the Asset Purchase Agreement on the latest of (i) the Effective Date, (ii) the first Business Day after the date that is thirty (30) calendar days after the date such ESL 507(b) Priority Claim becomes an Allowed ESL 507(b) Priority Claim, and (iii) the next Distribution Date after such ESL 507(b) Priority Claim becomes an Allowed ESL 507(b) Priority Claim.

11. Similarly, and as previously set forth in ESL and Transform's objection to the Plan Supplement [Docket No. 4786], the Modified Plan should not limit the recoveries ESL or Transform (or other administrative expense claimants) to only those assets held in a supposed Disputed Claims Reserve for them, especially when the Debtors propose to hold no such assets in any such reserve. Confirmation Brief, ¶ 240. For example, in the event that ESL prevails on the ESL 507(b) Appeal, it will have Allowed Claims that should be entitled to recover from whatever assets the Liquidating Trust may hold at the time (except as otherwise provided by the Asset Purchase Agreement and the Sale Order relating to Specified Causes of Action). To the extent the relevant provision in the Modified Plan is intended to limit recovery on account of an Allowed Claim only against a reserve funded in the amount of $0.00, it is blatantly unlawful as its only purpose is to attempt to vitiate legally protected appellate rights.

12. ESL and Transform's proposed modification to Section 11.4(b) of the Modified Plan (included below) would be consistent with other provisions in the Modified Plan and provide clarity to impacted claimants, including any non-ESL holder of an administrative claim that is disputed on the Effective Date. Various provisions of the Modified Plan contemplate that disputed claims may recover their pro rata share of relevant assets. Specifically, the Modified Plan allows

holders of various "Allowed" Claims to share in distributions on a "pro rata" basis with holders of other, similarly situated claims. *See, e.g.*, Modified Plan §§ 2.3, 2,4, 2.5. The definition of "Allowed" correctly acknowledges that certain claims may become Allowed at a later time than other similarly situated claims, including by reason of orders of appellate courts. *See* Modified Plan at 2 (defining "Allowed" to include "any objection has been determined in favor of the holder of the Claim by a Final Order"). Limiting the holders of disputed claims that may ultimately be Allowed by a Final Order on appeal to recover only from the amount set aside in the Disputed Claims Reserve would vitiate these provisions. The last sentence of Section 11.4(b) should therefore be revised as follows:

> Each holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse ~~only~~ to the Liquidating Trust ~~Interests, Cash and its proportionate share of the proceeds from the investment of Cash, if any, held in the Disputed Claims Reserve for satisfaction of the distributions to which holders of Allowed Claims are entitled under the Plan, and not to the Liquidating Trust or any assets previously distributed on account of any Allowed Claim~~ <u>and any assets it may hold at the time</u>, unless otherwise ordered by the Bankruptcy Court.

13. To be clear, in the interest of being constructive, ESL and Transform are not asking that this Court require the Debtors or the Liquidating Trust to establish a reserve at Plan confirmation for their claims that this Court has disallowed. ESL and Transform are simply asking that the Modified Plan provide that if, by reason of an appeal, those claims are ultimately allowed, ESL and Transform will have recourse to whatever assets the Liquidating Trust may have at the time. That would give ESL and Transform no greater rights than any plaintiff-appellant has—the right if it prevails on appeal to obtain recovery from whatever assets the defendant-appellee may then have.

14. <u>Finally</u>, the Modified Plan states that on the Effective Date, all of the Debtors' assets shall be vested in the Liquidating Trust free and clear of all liens and claims "for the benefit

of the Liquidating Trust Beneficiaries." Modified Plan, § 10.3. However, the definition of Liquidating Trust Beneficiaries currently includes only those who will receive Liquidating Trust Interests, which as currently drafted does not include holders of any Administrative Expense Claims or Priority Claims. Modified Plan at 11. Other parts of the Modified Plan explicitly state that holders of certain Administrative Expense Claims, including the ESL 507(b) Priority Claims, may receive distributions from the Liquidating Trust after the Effective Date. *See, e.g.*, Modified Plan § 2.4. Clearly, the intent of the Modified Plan is that holders of Administrative Expense Claims and Priority Claims are entitled to recovery from the Liquidating Trust. Accordingly, to avoid any confusion on whether holders of certain claims can recover from the Liquidating Trust if their claims are Allowed after the Effective Date, the definition of Liquidating Trust Beneficiaries should be revised as follows:[6]

> ***"Liquidating Trust Beneficiaries"*** means the holders of Liquidating Trust Interests and to the extent applicable, the holders of Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed ESL 507(b) Priority Claims and Allowed Other 507(b) Priority Claims.

15. For the avoidance of doubt, all of the requested changes herein should also be reflected in the Liquidating Trust Agreement as appropriate, given that the Modified Plan provides that in the event of a conflict between the Liquidating Trust Agreement and the Plan, the "Liquidating Trust Agreement shall govern and control in all respects relating to the Liquidating Trust." Modified Plan at 21.

---

[6] The Debtors have agreed to revise the *Proposed Order Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [Docket No. 5142] to preserve all parties' rights with respect to the property related to a store in Fort Lauderdale, Florida (the "Fort Lauderdale Property") that is the subject of an adversary proceeding captioned Transform Holdco LLC v. Sears Holdings Corp., et al., No. 19-8288 (the "Fort Lauderdale Complaint"), such that the Fort Lauderdale Property will not be transferred to the Liquidating Trust free and clear of all liens, claims, encumbrances and interests unless and until the Court so orders. Transform also continues to review the property interests purchased pursuant to the Asset Purchase Agreement and reserves all rights in the event that similar issues to those set forth in the Fort Lauderdale Complaint arise with respect to other property interests.

**RESERVATION OF RIGHTS**

16. ESL and Transform reserve all rights, including but not limited to, a) Transform and the Debtors' respective obligations under the Asset Purchase Agreement and b) all rights relating to the ESL 507(b) Priority Claims, including all rights relating to the ESL 507(b) Appeal. ESL and Transform further reserve the right to supplement this Response.

**CONCLUSION**

17. For the reasons stated above, ESL and Transform seek modifications to address the issues described herein, and for the Court to grant such other and further relief that it deems just and appropriate.

Dated: September 19, 2019
       New York, New York

                       CLEARY GOTTLIEB STEEN & HAMILTON LLP

                       By:   */s/ Sean A. O'Neal*
                            Thomas J. Moloney
                            Sean A. O'Neal
                            Luke A. Barefoot
                            Chelsey Rosenbloom
                            One Liberty Plaza
                            New York, NY 10006
                            Telephone: (212) 225-2000
                            Fax: (212) 225-3999

                            *Attorneys for ESL Investments, Inc. and certain of its affiliates and Transform Holdco LLC*