BRIAN COKE NG
40 Ann Street
New York, N.Y. 10038

**Mailing Address:**
Church Street Station
P.O. Box 2723
New York, N.Y 10008
Phone: (646) 820.9238
Fax:   (646) 820.9238

*Hearing Date: October 23, 2019*
*Hearing Time: 10:a.m.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                         :   Chapter 11
                                                              :
SEARS HOLDINGS CORPORATION, et al.,                           :   Case No. 18-23538 (RDD)
                                                              :
         Debtors.:                                            :   (Jointly Administered)
                                                              :
                                                              :   JUDGE:  Hon. Robert D. Drain
                                                              :
                                                              :
                                                              :
                                                              :
------------------------------------------------------------x

### NOTICE OF MOTION TO LIFT
### AUTOMATIC STAY

**PLEASE TAKE NOTICE,** that Plaintiff Brian Coke Ng, hereby respectfully move this Court, before the Honorable Robert D. Drain, United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601 on the 23th day of October, 2019 at 10:00 a.m., or as soon thereafter as can be heard an Order Dismissing the Chapter 11 Bankruptcy Case, and for an Order granting permission to file a "Request For Assistance By Injured Worker" and its accompanying complaint with the State Of New York, Workers' Compensation Board, and such other and further relief as the Court may deem just and proper under the circumstances.

1

**PLEASE TAKE FURTHER NOTICE,** that under Local Bankruptcy Rule 9006-1, any answering Affidavits shall be served to ensure actual receipt no later than three (3) days before the return date of this Motion.

**PLEASE TAKE FURTHER NOTICE,** that objection, if any, to the relief requested in this Motion must comply with the Federal Rule of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for Southern District of New York, must be made in writing describing the basis therefore and must be received in the Bankruptcy Judge's chambers and the undersigned not later than three (3) days before the return date. Unless objections are received by that time, the order may be signed.

**PLEASE TAKE FURTHER NOTICE,** that a hearing shall be held before the Honorable Judge Robert Drain. The moving and objecting parties are required to attend the hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

Dated: New York, New York
September 20, 2019

All Prepare for, upon request of
BRIAN COKE NG
40 Ann Street
New York, NY 10038
**Mailing Address For All Mails:**
Church Street Station, P.O.
Box 2723, New York,
New York, 10008
Tel: (646) 820-9238

_____
BRIAN COKE NG

2

BRIAN COKE NG
40 Ann Street
New York, N.Y. 10038

**Mailing Address:**
Church Street Station
P.O. Box 2723
New York, N.Y 10008
Phone: (646) 820.9238
Fax:   (646) 820.9238

*Hearing Date: October 23, 2019*
*Hearing Time: 10:a.m.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                      :    Chapter 11
                                                           :
SEARS HOLDINGS CORPORATION, et al.,                        :    Case No. 18-23538 (RDD)
                                                           :
    Debtors.:                                              :    (Jointly Administered)
                                                           :
                                                           :    JUDGE:  Hon. Robert D. Drain
                                                           :
------------------------------------------------------------x

STATE OF NEW YORK    )
                     ) SS.:
COUNTY OF NEW YORK   )

## AFFIDAVIT IN SUPPORT OF MOTION TO LIFT
## AUTOMATIC STAY

I BRIAN COKE NG, being duly sworn, deposes and says under penalty of perjury:

1. I am the creditor on the above-named debtors, Sears Holdings Corporation., et al (hereinafter "debtors").

2. This Court has subject matter jurisdiction over the proceeding pursuant to Title 28 of the United States Code Section 1334(b) and 157(a). Venue is proper pursuant to Title 28 of the United States Code Sections 1408 and 1409.

3. By provision of 11 U.S.C. §362 all persons are enjoined and stayed from commencing or continuing any actions or suit against debtor.

3

4. Under 11 U.S.C §362(d) and local rule 4001-1, derived from Former Local Bankruptcy Rule 44(a) Brian Coke Ng ("Movant") pro-se, moves this Court for relief from the automatic stay impose by §362(d) of Bankruptcy Code to proceed with the filing of a "Request For Assistance By Injured Worker" and its accompanying complaint with the State Of New York, Workers' Compensation Board. A Copy of the "Request For Assistance By Injured Worker" and its accompanying complaint with all its exhibits is attached as **Exhibit (A)**.

## MEMORANDUM IN SUPPORT

In support of this motion, I hereby states as follows:

### I. FACTUAL BACKGROUND AND ISSUES

5. The issues presented are out of pocket expenses and spending for prescription medications at Kmart Pharmacy, the developments of corruption, alteration and falsification of billing records and/or business records, and whether this matter should be returned to the calendar for a hearing on hardship, medical changes as a result of the circumstances, and on the issue of penalty for violations of Workers' Compensation Law Section 13(i) and Section 13(o).

6. My Workers' Compensation Case is established for work related conditions of Major Depression among other things. By a WCLJ decision and Order filed June 10, 2016, the WCLJ decision stated in separate part, on quote: " *Carrier is directed to pay for all causally relate medications.* ".

7. During my Workers' Compensation Case and prior to the work related conditions of Major Depression been established, I was established as a pharmacy customer of Kmart Corporation #7777/Kmart Holding Corporation/Sears Holding Corporation on May 15, 2010, in which I had became an individual member of the consuming public that purchases prescribed pharmaceutical drug products for work related conditions of Major Depression from Kmart Pharmacy. The Kmart Pharmacy in reference is located at 770 Broadway, New York, NY 10003.

8. On May 4, 2010, Doctor Rania Attia M.D issued me a prescription for Zoloft, I took the prescription for Zoloft to Kmart Pharmacy and specifically had advised the Kmart Pharmacist/ Kmart Pharmacy that I will pay for all my prescription medicines including the Zoloft by using my Medicaid card and pay any copayments by cash because these prescription medicines was pertaining to a work related matter pending at the Workers' Compensation Board, but the Workers' Compensation insurance carrier disputing my medical treatments and the medical bills. I had also provided the Kmart Pharmacist/Kmart Pharmacy with a copy of the insurance company's "Notice of Treatment Issue(s)/Disputed Bill Issue(s)" dated July 29, 2009.

9. Additionally, a copy of the insurance company's "Notice of Treatment Issue(s)/Disputed Bill Issue(s)" dated August 13, 2010, was also provided to Kmart Pharmacist/Kmart Pharmacy on September 17, 2010, during copayments totaling $33.63 on that day, and the Kmart Pharmacists and Kmart Pharmacy clearly understood my circumstances and the situation and sold me the correct generics prescription drugs instead of the Brand name prescription drug as required by New York Workers' Compensation Regulations: **"Section 440.6 Prescription Drugs or Medicines"**. See **Exhibit (A)**

10. Specifically, in compliance with the New York Workers' Compensation Regulations: **"Section 440.6 Prescription Drugs or Medicines"**, on 05/15/2010, 06/14/2010, 07/16/2010, and 08/16/2010, respectively, Kmart pharmacy sold me the generic drug named Sertraline HC instead of the brand name Zoloft, and on 09/17/2010, sold me the generic drug named Bupropn HCL instead of the brand name Wellbutrin XL. Kmart pharmacy, had provided receipts/information sheets with representation(s) in separate parts among other things, as following:

- *Prescription fill date: 05/15/2010; Pharmacist's name: John Hellyer, ("JEH"); Ins. Ref. No# ERX5761501992; Copay: $15.00, Retail Price: $83.79";*

5

- *Prescription fill date: 06/14/2010: "Pharmacist's name: Marc Speert, ("MLS"); Ins. Ref. No# ERX4601116158; Copay: $15.00, Retail Price: $83.79". Notably, the pharmacist written counseling was not completed on that information sheet;*

- *Prescription fill date: 07/16/2010: "Pharmacist's name: John Hellyer, ("JEH"); Ins. Ref. No# ERX3499824459; Copay: $15.00, Retail Price: $84.79". Notably, the pharmacist written counseling was not completed on that information sheet;*

- *Prescription fill date: 08/16/2010: "Pharmacist's name: Tania Li, ("TRL"); Ins. Ref. No# ERX11311793821; Copay: $15.00, Retail Price: $84.79".*

- *Prescription fill date: 09/17/2010: Pharmacist's name: Darshanie Sankar, ("DVS"); Ins. Ref. No# ERX00006845177701; Copay: $33.63, Retail Price: $159.97".*

See **Exhibit (A)**.

11.     The original receipts/information sheet had indicated that there was a process of adjudication pertaining to each prescription filed, that also involved insurance payments. On each of the original receipts/information sheet for each Prescription, had reflected insurance reference numbers. Since it is my right to submit a claim to the Workers' Compensation Insurance company for out of pocket medical expenses, I made contact with Kmart Pharmacy and requested a copy of all the billing records including the total costs/price of each prescription drug, to know the dispensing fee(s) and to further determine whether a proper calculation was done pursuant to 12 NYCRR 440.5 (a) (b) and (e) and Workers Compensation Law section 13.

12.     The term "Copay" and "Copayment" suggests that the patient and insurer are sharing the total cost of the prescription drug(s). Clearly, the patient pays the copayments, and the insurer pays the remaining cost of the prescription drug(s). I need accurate billing information especially in matters pertaining to Workers compensation benefits claims and reimbursement. I want to make sure that the total cost of my prescription drugs is not less than the copayments I had made.

6

13. On January 13, 2015, March 24, 2017, June 15, 2017, respectively, Kmart Pharmacy had provided me with a "medical expenses" document, to submit to the Workers' Compensation Insurance company for the reimbursements. Such "medical expenses" document did not include the national drug code number of the prescription drug as listed in the national drug code directory maintained by the Federal Food and Drug Administration, and did not state separately the total cost/price of the prescription drug, and did not state the dispensing fee. See **Exhibit (A)**.

14. On August 22, 2018, August 27, 2018, respectively, Kmart Pharmacy had provided me with a copy of a so-called "medical records", to submit to the Workers' Compensation Insurance company for the reimbursements. Such document did not specifically state any of the copayments made, but presented details of "Net Due" amounts. Furthermore, such document did not include anything about dispensing fees, and nothing about the copayments they had received. See **Exhibit (A)**.

15. On November 6, 2018, Kmart Pharmacy had provided me with a copy of a fictitious "billing records" to submit to the Workers' Compensation Insurance company for the reimbursements of my out of pocket expenses for all the prescription medicines. Such fictitious "billing records" documents, did not include the national drug code number of the prescription drug as listed in the national drug code directory maintained by the Federal Food and Drug Administration, and did not state separately the total cost/price of the prescription drug, did not state accurate and correct copayments amounts paid and received, and did not state the dispensing fee. See **Exhibit (A)**.

16. Base upon information and belief, the fictitious "billing records" were altered, falsified and created on November 6, 2018. It was sent to me via fax from Kmart Pharmacy.

7

17. As shown in the documents at Exhibit A here, the Kmart pharmacy "billing records" had indicated among other things pertaining to third party payers, and billing information, that, on the "05/15/2010" which is the date pertaining to prescription (Rx#6842949) transaction, the "total" was "$15.40"; the "Carrier: **RMP**"; "Group: **RMP**"; "Plan Name: **Retail Maintenance Program**"; "Cardholder ID: **COKEN7777**"; "Cardholder Information Name on Card: **COKE-NG, BRIAN**"; Card Eligible: "Y"; Workers' Comp: "N".

18. At all times relevant, I had provided my Medicaid card to Kmart pharmacy. I did not have any other card, and was not a member of any group, and was not a member of any Plan as indicated in the Kmart Pharmacy "billing records", and I did not signed up for any "Retail Maintenance Program", and, did not paid any $15.40 during any transaction(s). I did not gave anyone any consent or permission to be enrolled into any **RETAIL MAINTENANCE PROGRAM**. I gave my Medicaid card to the Kmart Pharmacy each time prescription was filled, and made the copayments. Therefore, any other information reflecting otherwise on such "billing records" document, is clearly false and fraudulent. These documents inappropriate for full reimbursements from Workers' Compensation insurance carrier, and the relevant items of information is not available for a proper calculation.

19. As shown in the documents at Exhibit A here, the Kmart pharmacy "billing records" had indicated among other things pertaining to third party payers, and billing information, that, on the "08/16/2010" which is the date pertaining to prescription (Rx#6845128) transaction, the "total" was "$15.40"; the "Carrier: **HTR**"; "Plan: **VRI**"; "Group: **UNA4167**"; "Plan Name: **PLEASE USE HTR-GOODRX**"; "Cardholder ID: **COKEN7777**"; "Cardholder Information Name on Card: **COKE-NG, BRIAN**"; Card Eligible: "Y"; Workers' Comp: "N".

20.    At all times relevant, I had provided my Medicaid card to Kmart pharmacy. I did not have any other card, and was not a member of any group, and was not a member of any Plan as indicated in the Kmart Pharmacy records, and I did not signed up for any " HTR-GOODRX", and, did not paid any $15.40 during any transaction(s). I did not gave anyone any consent or permission to be enrolled into any **"PLEASE USE HTR-GOODRX"**. I gave my Medicaid card to the Kmart Pharmacy each time prescription was filled, and made the copayments. Therefore, any other information reflecting otherwise on such document, is clearly false and fraudulent. These documents inappropriate for full reimbursements from Workers' Compensation insurance carrier, and the relevant items of information is not available for a proper calculation.

21.    As shown in the documents at Exhibit A here, the Kmart pharmacy "billing records" had indicated among other things pertaining to third party payers, and billing information, that, on the "09/22/2010" which is the date pertaining to prescription (Rx#6846142) transaction, the "total" was "$15.40"; the "Carrier: **RXE**"; "Plan: **7777**"; "Group: **FDCPPA**"; "Plan Name: **RXE-AMERICAN HEALTHCARE NTWK**"; "Cardholder ID: **8182807202**"; "Cardholder Information Name on Card: **COKE-NG, BRIAN**"; Card Eligible: "Y"; Workers' Comp: "N".

22.    At all times relevant, I had provided my Medicaid card to Kmart pharmacy. I did not have any other card, and was not a member of any group, and was not a member of any Plan as indicated in the Kmart Pharmacy records, and I did not signed up for any **"RXE-AMERICAN HEALTHCARE NTWK"**, and, did not paid any $15.40 during any transaction(s). I did not gave anyone any consent or permission to be enrolled into any " **RX-AMERICAN HEALTHCARE NTWK"**. I gave my Medicaid card to the Kmart Pharmacy each time prescription was filled and made the copayments. Therefore, any other information reflecting otherwise on such document, is clearly false and fraudulent. The documents inappropriate for full reimbursements from insurance carrier, and the relevant items of information is not available for a proper calculation.

9

## II. ARGUMENT

23. That based on the foregoing, I seeks relief from the automatic stay "for cause" under §362(d)(1) to proceed with submitting a "Request For Assistance By Injured Worker" and its accompanying complaint with the State Of New York, Workers' Compensation Board.

24. Under Section 362(d) of the Bankruptcy Code, a Court may grant relief from the automatic stay for cause upon request of a party in interest. See 11 U.S.C. § 362(d)(1). "Although cause is not defined… Congress did intend that the automatic stay be lifted to allow litigation involving the Debtor to continue in non bankruptcy forums…" In United Imports, Inc., 203 B.R. 162, 166 (Bankr. D. Neb. 1996) (citing legislative history); see also Robbins v. Robbins, 964 F.2d 342, 345 (4th Cir. 1992) (citing legislative history); see also In re Lamberjack, 149 B.R. 467,470 (Bankr. N.D. Ohio 1992) citing Senate report No., 989, 95th Cong., 2d Sess., 50) (emphasis added). As the legislative history of §362 shows: ("It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the Bankruptcy Court from any duties that may be handled elsewhere.").

25. *In re Mansfield Tire & Rubber Co.*, 660 F.2d 1108, 1113 (6th Cir. 1981) (Congress did not give bankruptcy courts jurisdiction to adjudicate state workers' compensation laws nor intend that bankruptcy proceedings be used to disrupt the orderly administration of the workers' compensation laws by the state).

26. The determination of whether cause exists to permit the Movant to proceed with a "Request For Assistance By Injured Worker" and its accompanying complaint with the State Of New York, Workers' Compensation Board is left to the Court's discretion and is to be made based on the facts of the case. Laguna Assocs. Ltd v. Aetna Cas. & Sur. Co., 30 F.3d 734,737 (6th Cir. 1994). The party opposing relief from the stay bears the burden of proof on all issues

except the Debtor's equity in real property. 11 U.S.C. §362(g)(2); In re Ramsey, 2011 Bankr. Lexis 2657 at *4 (Bankr. N.D. Ohio July 7, 2011) (memorandum opinion). In determining whether cause exists, most Courts "balance the hardship to the creditor, if he is not allowed to proceed with his lawsuit against potential prejudice to the debtor; debtor's estate and other creditors." In re R.J. Groover Constr. LLC, 411 B.R. 460, 463-64 (Bankr. N.D. Ga. 2008). In carrying out this balancing test, Court have considered numerous factors, including:

> (1) Whether relief would result in a partial or complete resolution of the issues;
> (2) The lack of any connection with or interference with the bankruptcy cases;
> (3) Whether the other proceeding involves the debtors as a fiduciary;
> (4) Whether a specialized tribunal with the necessary expertise has been established to ear the cause of action;
> (5) Whether the debtor's insurer has assumed full responsibility for defending it;
> (6) Whether the action primarily involves third parties;
> (7) Whether litigation in another forum would prejudice the interests of other creditors;
> (8) Whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) Whether movant's success in the other proceeding would result in a judicial lien available by the debtor;
> (10) The interests of judicial economy and the expeditious and economical resolution of the litigation;
> (11) Whether the parties are ready for trial in the other proceedings;
> (12) The impact of the stay on the parties and the balance of harm.

27.    In re New York Medical Group, P.C., 265 B.R. 408, 413 (Bankr. S.D. N.Y. 2001); see also Sonnax Industries Inc. v. Tri Component Production Corp. (In re Sonnax Industries Inc.) 907 F.2d 1280, 1286 (2d. Cir. 1990); Goya foods, Inc. v. Unanue-Casal (In re Unanue-Casal) 159 B.R. 90, 96 (D.P.R. 1993) aff'd 23 F.3d 395 (1st Cir. 1994); In re Busch, 294 B.R. 137, 141 n.4 (10th Cir. B.A.P. 2003); In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). In

weighing these factors, Courts only consider those factors that are relevant to the particular case at hand and do not assign equal weight to each factor. In re Mazzeo, 167 F.3d 139, 143 (2d Cir. 1999). In this case, several of the factors are relevant and all weigh heavily in favor of lifting the stay so that the Movant can proceed with submitting a "Request For Assistance By Injured Worker" and its accompanying complaint to the New York State Workers' Compensation Board.

## OBTAINING RELIEF FROM THE STAY

28.  To obtain relief from the automatic stay, the movant must first establish a prima facie case that "cause" exists for the relief under Section 362(d)(1). See In re Duvar Apt., Inc., 205 B.R. 196, 200 (9th Cir. BAP 1996). Once a prima facie case has been established, the burden shifts to the debtors to show that relief from the stay is unwarranted. See 11 U.S.C. §362(g)(2); In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir. 1990).

### A. APPLICATION OF THE TWELVE FACTORS

29.  All twelve factors are not relevant or applicable in every case. Id. At 1286. Nor is a court required to give each factor equal weight when making its determination. In re Burger Boys, Inc., 183 B.R. 682, 688 (S.D.N.Y. 1994).

30.  As an initial matter, the third, sixth, eighth, ninth, tenth, and eleventh factors do not apply here. The remaining factors weigh heavily in favor of granting the Movant relief from the stay.

31.  Under the first factor, allowing the Movant to proceed in submitting a "Request For Assistance By Injured Worker" and its accompanying complaint to the State Of New York, Workers' Compensation Board will likely result in a complete resolution of the issues regarding the Movant's claim of out of pocket expenses and spending for prescription medications at Kmart Pharmacy, issues of the alleged corruption, alteration and falsification of billing records and/or

business records, and whether this matter should be returned to the calendar for a hearing on hardship, medical changes as a result of the circumstances, and the issue of penalty for violations of Workers' Compensation Law Section 13(i) and Section 13(o).

32. Under the second factor, it does not appear that the Workers' Compensation Board matters would interfere with or prolong the Debtors Chapter 11 case. The "Request For Assistance By Injured Worker" and its accompanying complaint to the State Of New York, Workers' Compensation Board involves reimbursements of pocket expenses and spending for prescription medications at Kmart Pharmacy, issues of the alleged corruption, alteration and falsification of billing records and/or business records, and whether this matter should be returned to the calendar for a hearing on hardship, medical changes as a result of the circumstances, and the issue of penalty for violations of Workers' Compensation Law Section 13(i) and Section 13(o).

33. The fifth factor is particularly relevant, because it appears that the Debtor's insurance carrier has already assumed financial responsibility for defending the issues of the alleged corruption, alteration and falsification of billing records, medical records and business records. The Debtor's estate would incur little or no expense to defend or corporate with these matters forwarding to the Workers' Compensation Board.

34. The seventh factor is also favorable to lifting the stay because doing so would not prejudice the interests of other creditors or interested parties. Allowing the Workers' Compensation Board matters to move forward to its conclusion will likely resolve the Movant's claims to the Debtor's estate, either by settlement or by reducing said claims to judgment, possibly eliminating the need to enforce the claims in bankruptcy if the insurance carrier pays the claims.

35. Under the twelfth factor, the "balance of hurt" weighs heavily in favor of lifting the stay for the Movant. Lifting the stay would do little to no harm to the debtors as it appears its insurance carrier is defending the issues of the alleged corruption, alteration and falsification of billing records, medical records and business records and covering any monetary damages that may flow there from. Continuing the stay would mean a denial of my rights to reimbursements for all my out of pocket medical expenses, and the denial of right to submit a proper claim to the Workers' Compensation Insurance company, and the denial of right to submit the "Request For Assistance By Injured Worker" and its accompanying complaint to the New York State Workers' Compensation Board. The creditor would be substantially prejudiced if he was no accountability for the Kmart Pharmacy willful and malicious conduct.

36. Based on the factors noted above, the Movant has established sufficient cause for relief from the stay. Failure to lift the stay in this case would result in a greatly unjust and unduly burden on the Movant and would be an inefficient use of judicial resources.

37. Section 362(a)(3) of the Bankruptcy Code "operates as a stay, applicable to all entities of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). However, The Bankruptcy Code also provides for exceptions to enforcement of the automatic stay.

38. Clearly, section 362(b)(4) excepts from the automatic stay the commencement or continuation of any action or proceeding by a governmental unit "to enforce such governmental unit's or organization's police and regulatory power . . . ." 11 U.S.C. § 362(b)(4).

39. As explained by the Second Circuit, "the purpose of this exception is to prevent a debtor from frustrating necessary governmental functions by seeking refuge in bankruptcy court." *Solis v. SCA Rest. Corp.*, 463 B.R. 248, 251 (E.D.N.Y. 2011) (quoting *SEC v. Brennan*, 230 F.3d 65, 74 (2d Cir. 2000)).

14

40.     Courts apply two tests to determine whether a state's actions fall within the scope of the section 362(b)(4) exception to the automatic stay: the "pecuniary purpose" test and the "public policy" test. *See e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. ("MTBE Litig.")*, 488 F.3d 112, 133 (2d. Cir. 2007); *Universal Life Church, Inc. v. United States*, 128 F.3d 1294 (9th Cir. 1997); *Eddleman v. U.S. Dep't of Labor*, 923 F.2d 782, 791 (10th Cir. 1991), *overruled in part on other grounds by Temex Energy, Inc. v. Underwood*, 968, F.2d 1003, 1005 n.3 (10th Cir. 1992)).

41.     "Under the pecuniary purpose test, a court looks to whether a governmental proceeding relates to public safety and welfare, which favors application of the stay exception, or to the government's interest in the debtor's property, which does not." *Solis*, 463 B.R. at 251 (citing *MTBE Litig.*, 488 F.3d at 133). In contrast, the "public policy" test distinguishes "between proceedings that adjudicate private rights and those that effectuate public policy." *Solis*, 463 B.R. at 525 (quoting *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385- 86 (6th Cir. 2001)).

42.     The provisions under the Workers' Compensation Law, and the related Regulations are designed to ensure that injured workers will receive reimbursements for medical care and treatments as a result of legitimate work-related injuries.

### B. REQUEST FOR WAIVER OF TEN-DAY PERIOD

43.     Rule 4001(a)(3) of the Federal Rules of Bankruptcy provides: "An order granting motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). The Movant respectfully requests that any order granting the Movant relief from the automatic stay be effective immediately.

## **CONCLUSION**

For the foregoing reasons, the Movant respectfully requests entry of an order as annexed hereto, or similar order granting this Motion, providing the Movant relief from the automatic stay to submit a "Request For Assistance By Injured Worker" and its accompanying complaint to the State Of New York Workers' Compensation Board, and such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully Submitted,

Dated New York, New York
September 20, 2019

All Prepare for, upon request of
BRIAN COKE NG, *Pro Se*
40 Ann Street
New York, NY 10038
**Mailing Address For All Mails:**
Church Street Station, P.O. Box 2723, New York, New York, 10008
Tel: (646) 820-9238

Sworn to before me on this 20th day of September, 2019

_____
Notary Public

PAULINE A WOODLEY BERNIRE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01WO6108331
Qualified in Kings County
Commission Expires April 12, 2020

_____
BRIAN COKE NG

16

PAULINE A WOODLEY BERNIRE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01WO6108331
Qualified in Kings County
Commission Expires April 12, 2029