WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                       :
                                                            :    **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,                   :
                                                            :    **Case No. 18-23538 (RDD)**
                                                            :
Debtors.[1]                                                 :    **(Jointly Administered)**
                                                            :
                                                            :
------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

WEIL:\97199828\5\73217.0004

**DEBTORS' OBJECTION TO BILTMORE COMMERCIAL PROPERTIES I, LLC'S MOTION FOR IMMEDIATE PAYMENT OF POST-PETITION, PRE-REJECTION LEASE OBLIGATIONS AS ADMINISTRATIVE EXPENSES**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby file this objection to *Biltmore Commercial Properties I, LLC's Motion for Immediate Payment of Post-Petition, Pre-Rejection Lease Obligations as Administrative Expenses* (ECF No. 4426) (the "**Motion**").

**Background**

1. Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

4. The Debtors and Transform Holdco LLC ("**Transform**") entered into that certain Asset Purchase Agreement, dated as of January 17, 2019 (as amended, the "**Asset Purchase Agreement**") for the sale of substantially all of the Debtors' assets.

2

5.    On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of* Certain *Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all their assets to Transform.

6.    On September 13, 2019, the Debtors filed the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 5139) (the "**Plan**").

7.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (the "**Riecker Declaration**") (ECF No. 3).

## The Lease

8.    The Asset Purchase Agreement established procedures for the assumption and assignment by the Debtors of executory contracts and unexpired leases (the "**Designation Procedures**"). *See* Asset Purchase Agreement, Article V. In accordance with the Asset Purchase Agreement and the Designation Procedures, the lease between Kmart Corporation ("**Kmart**") and Biltmore Commercial Properties I, LLC (f/k/a Biltmore Plaza Associates) (the "**Landlord**"), dated March 27, 1991 (the "**Lease**"), for the premises located at 980 Brevard Road, Asheville, NC (the "**Leased Premises**"), was categorized as both a "Designatable Lease" and a "GOB Lease," as each such term is defined in the Asset Purchase Agreement.

9.    Pursuant to section 5.2(b)(i) of the Asset Purchase Agreement, Transform agreed to pay or reimburse the Debtors for "all Expenses with respect to the Designatable Leases."

3

Through a series of interlocking definitions, the Asset Purchase Agreement ultimately provides that Transform would be liable for expenses such as base rent, percentage rent, property taxes, insurance, common area maintenance, and similar charges during the period from the completion of the GOB Period with respect to the Leased Premises and ending at the end of the Designation Rights Period relating to the Leased Premises. *See* Asset Purchase Agreement, definitions of Expenses, Buyer Occupancy Costs, Occupancy Expenses, Designation Rights Period, and GOB Period.

10. As noted in the Motion, the Debtors and Transform initially noticed the Lease for assumption and assignment to Transform in accordance with the Designation Procedures. See Motion, ¶ 9. The Landlord objected. When Transform and the Landlord were unable to reach an agreement on the terms of the assumption and assignment, Transform provided the Debtors with notice that the Lease would not be designated for assumption and assignment.

11. On May 8, 2019, the Debtors filed the *Notice of Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* (ECF No. 3763) seeking to reject the Lease, effective as of May 8, 2019. On May 23, 2019, the Court entered the *Order Approving the Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* (ECF No. 4005) approving the rejection of the Lease.

## The Motion

12. In the Motion, the Landlord seeks immediate payment of $381,161.22 that it categorizes as post-petition, pre-rejection obligations of the Debtors (the "**Alleged Administrative Expense Claim**"), pursuant to section 365(d)(3) or, in the alternative, section 503(b)(1)(A) of the Bankruptcy Code. Specifically, the Landlord seeks payment of $29,283.00 in

4

prorated common area maintenance ("**CAM**") charges, $22,739.13 in prorated real estate taxes, $236,271.00 in repair and maintenance costs, $13,637.00 in damages for "going dark", $12,502.00 for damages resulting from signage relating to the Debtors' going out of business sale, and $65,849.60 in attorneys' fees.

13. The vast majority of the Alleged Administrative Expense Claim represents prepetition obligations that the Debtors may owe to the Landlord under the terms of the Lease, which are not proper administrative expense claims under section 365(d)(3) or section 503(b)(1).[2] Moreover, Transform, not the Debtors is responsible for a substantial portion of the remaining claim, as such items are Expenses under the terms of the Asset Purchase Agreement. Finally, with respect to the small portion of the Alleged Administrative Expense Claim that may be proper, the Debtors submit that immediate payment at this time would be imprudent, given the status of the Debtors' chapter 11 cases. Consequently, the Debtors respectfully request that the Motion be denied.

**The Motion Should Be Denied**

I. **The Alleged Administrative Expense Claim Does Not Qualify Under Section 365(d)(3) or 503(b)(1)**

14. Section 365(d)(3) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

11 U.S.C. § 365(d)(3). The purpose of the section is to "fix the amount to be paid by debtor-tenants pending assumption or rejection at the amount provided in the lease; to require payments to be

---

[2] The Debtors reserve their right to contest, on other grounds, the amount of the individual components of the Alleged Administrative Expense Claim at a later date.

made at the time required under the lease; and to remove the bankruptcy court's power to review the amount to be paid as administrative rent for reasonableness." *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 69 (Bankr. S.D.N.Y. 2004).

15. Section 503(b)(1) of the Bankruptcy Code provides, in pertinent part, that a party shall be entitled to an administrative expense claim for the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). Allowances under section 503(b)(1) of the Bankruptcy Code are narrowly construed. *See In re Patient Educ. Media*, 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998) ("[T]he language of section 503(b)(1)(A) must be narrowly construed to promote the bankruptcy goal of equality of distribution." (quoting *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100-01 (2d Cir. 1986)); Collier on Bankruptcy ¶ 503.06 (16th ed. 2019) ("[S]ection 503(b) priorities should be narrowly construed to maximize the value of the estate for all creditors."). Courts in the Second Circuit have established a two part test to determine whether a claimant is entitled to an administrative expense. "First, the expense must arise out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession. Second, the expense's consideration must be both supplied to and beneficial to the debtor in possession in the operation of the business." *See In re Adelphia Bus. Solutions, Inc.*, 296 B.R. 656, 661–62 (Bankr. S.D.N.Y. 2003) (internal citations and quotation marks omitted).

### A. Maintenance and Repair Costs

16. By far the largest part of the Alleged Administrative Expense Claim is the Landlord's claim for $248,773.00 in repair and maintenance costs. *See* Motion, ¶¶ 16-20. If the claim is valid and can be substantiated, it arises under section 31 of the Lease, which is entitled "Condition of Premises at Termination." A copy of section 31 of the Lease is attached hereto as **Exhibit A**.

6

17. As the Court held in *Ames Dep't Stores*, obligations that arise at the termination of a lease are not continuing obligations, like the duty to pay rent and, therefore, are not required to be paid under section 365(d)(3). 306 B.R. at 59-61.[3] Because Kmart's obligation to return the premises in good order and repair arose upon rejection of the lease, the Landlord's claim is governed by section 365(g). Section 365(g)(1) of the Bankruptcy Code provides, in pertinent part, that the rejection of an unexpired lease constitutes a prepetition breach of the lease. 11 U.S.C. § 365(g)(1). Accordingly, any breach of an obligation that results from the rejection of a lease pursuant to section 365(g) is a rejection damages claim. *See id.* at 60.

B. **Indemnification and Attorneys' Fees**

18. The Landlord seeks payment of attorneys' fees of $65,849.00, which the Landlord admits were incurred "in the context of assumption and assignment." *See* Motion, ¶ 24. There are two fatal flaws in the Landlord's position.

19. First, paragraph D of the Addendum to the Lease, upon which the Landlord relies on for its alleged entitlement to legal fees, which is annexed hereto **Exhibit B**, is an *indemnification* provision, not a provision granting the Landlord a right to recover attorneys' fees in connection with enforcement of its rights. A landlord's entitlement to attorneys' fees under section 365(b) of the Bankruptcy Code is conditioned on the terms of the underlying lease. *In re Best Products Co., Inc.*, 148 B.R. 413, 414 (Bankr. S.D.N.Y. 1992) ("The lease which serves as the entire contract must be construed to determine the latitude and scope of the contractual right to such fees.") (citing *In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y.

---

[3] The *Ames* Court, likewise, cited cases that have held that section 503(b)(1) does not provide administrative treatment for such claims because the transaction between the parties, the lease, was entered into prepetition. 306 B.R. at 55 (providing a summary of cases).

1986)). The Lease does not obligate the Debtors to pay the Landlord's legal fees related to enforcing its rights under the Lease.

20. Second, to the extent the Court determines that paragraph D of the Addendum does cover attorneys' fees, the provision should not cover fees relating to the dispute over assumption of the Lease. Courts have faced this issue in the context of requests by landlords to have attorneys' fees paid as part of cure amounts when real property leases are assumed. For example, in *Best Products*, a landlord sought reimbursement of attorneys' fees incurred in seeking to compel assumption or rejection of its Lease. Unlike the Lease here, the lease at issue in that case specifically provided for reimbursement of attorneys' fees related to enforcement actions. 148 B.R. at 414-15. Nevertheless, the *Best Products* court held that "[w]here litigated issues involve not basic contract enforcement questions, but issues peculiar to bankruptcy law, attorneys' fees will not be awarded absent bad faith or harassment by the losing party." *Id.* at 414 (citing *In re Fobian*, 951 F.2d 1149 (9th Cir. 1991)); *see also In re M. Fine Lumber Co.*, 383 B.R. 565, 569 (Bankr. E.D.N.Y. 2008) (in context of determining cure amounts, court denied landlord's claim for reimbursement of legal fees incurred in connection with objection to assumption of lease).

21. Moreover, the *Best Products* Court noted the irony that, rather than seeking payment of prepetition amounts by assumption of the lease, the landlord in *Best Products* "fiercely objected [to assumption and assignment of the lease] and asked me to deny the debtor's request." *Id.* Ultimately, the *Best Products* Court found that the landlord had not sought to enforce the terms of the lease. Accordingly, the landlord was not entitled to recover its attorneys' fees as part of the cure amount. *Id.*

22. Similarly, the Landlord has made repeated attempts to thwart the Debtors' statutory right to assume and assign the Lease. The Landlord filed two pleadings — *Objection to*

8

*the Supplemental Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Global Sale Transaction* (ECF No. 2284) and *Biltmore Commercial Properties I, LLC's Omnibus (I) Designatable Contract Assumption and Assignment Objection, (II) Objection to the Assumption and Assignment of the Unexpired Lease for Store 3886 Free and Clear of Restrictive Covenants, and (III) Supplemental Cure Objection* (ECF No. 3413) — seeking to prevent the assumption and assignment of the Lease. It is simply not credible for the Landlord to argue that it was seeking to enforce the terms of the Lease. Further, given the narrow construction of administrative expenses noted by the Second Circuit in *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d at 101, the Landlord should not be granted priority over claims of other creditors for its attorneys' fees.

23. Accordingly, the Court should deny the Landlord's request for payment of attorneys' fees.

**C. "Going Dark"**

24. The Landlord seeks $13,637.00 in damages for the Debtors' alleged violation of the use provision in the Lease. *See* Motion, ¶¶ 22-23. The Lease provision upon which the Landlord relies for this portion of its claim is attached hereto as **Exhibit C**. Based on the plain language of the Lease, the Debtors did not violate the use provision in the Lease. In any event, the going out of business sale was conducted pursuant to the Court's *Final Order Approving (I) Procedures for Store Closing Sales and (II) Assumption of Liquidation Consulting Agreement* (ECF No. 876) (the "**GOB Order**"). Paragraph 13 of the GOB Order provides, as follows:

> The Closing Stores may "go-dark" during the Store Closing Sales and remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for "going dark") may not be enforced (and the "going dark" under such leases shall not be a basis to cancel or terminate the leases).

9

GOB Order, ¶ 13. Given that the Court previously approved the going out of business sale and ruled expressly that the Leased Premises may go dark and remain dark, this portion of the Alleged Administrative Claim should be denied.

### D. CAM Expenses and Real Estate Taxes

25. The Debtors do not dispute that the Landlord is entitled to an administrative expense claim for any CAM expenses and real estate taxes due for the postpetition, prerejection, period.[4] However, under the terms of the Asset Purchase Agreement, Transform is liable for the portion of such amounts attributable to the period from March 16, 2019 to May 8, 2019, and should be directed to pay such amounts. The portion of such amounts that is attributable to the period prior to March 16, 2019, for which the Debtors are responsible, is entitled to administrative priority, but should not be paid at this time.

### E. Signage

26. The Debtors have not been able to confirm whether the amounts incurred by the Landlord with respect to the signage for the going out of business sales are legitimate. Given that those expenses, in the aggregate amount of $12,502.00, were incurred postpetition and arguably did confer some benefit on the Debtors' estates, the Debtors concede that, after verification of the amounts, such amounts are entitled to administrative priority, but they should not be paid at this time.

---

[4] The Debtors have not been able to confirm the amounts remaining unpaid and will endeavor to do so prior to the hearing on the Motion.

10

## II. The Debtors Should Not Be Compelled to Immediately Pay Any Obligations Due Under Section 365(d)(3) of the Bankruptcy Code

27.     It is well established that the "determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court." *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (2002); *see also Baptist Medical Center*, 52 B.R. at 421. Courts in this Circuit look to a variety of factors in determining whether to order immediate payment, including: (i) bankruptcy's goal of orderly and equal distribution among creditors; (ii) the need to prevent a race to the courthouse; (iii) the particular needs of the administrative claimant; and (iv) the length and expense of the chapter 11 cases. *HQ Global Holdings*, Inc., 282 B.R. at 173; *see also Baptist Medical Center*, 52 B.R. at 421 (providing that it was properly within the court's discretion to delay payment of an administrative expense).

28.     As the Court has already done in exercising its discretion to deny immediate payment to other creditors seeking payment of administrative expense claims, the Court should also deny the Landlord's request. The Debtors' administrative solvency and ability to pay administrative claims in full have already been questioned by similarly situated creditors.[5] Where there is doubt regarding the debtor's ability to pay all administrative claims in full, courts usually disallow distributions prior to confirmation of the debtor's plan. *See HQ Global Holdings, Inc.*, 282 B.R. at 173 (providing that, "distributions prior to confirmation of a plan are usually

---

[5] *See Objection of Alpine Creations Ltd. to Confirmation of Debtors' Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 4700) ("if there is currently insufficient cash in the Debtors' estates, the Debtors need to seek out other sources to cover such administrative claim if they wish to confirm a plan"); *Limited Objection of Winners Industry Co., Ltd to Confirmation of the Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 4678) (arguing that "[t]he Debtors cannot show that they have sufficient cash to pay administrative expense claimants"); *Objection of Tannor Capital Advisors LLC to Confirmation of the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 4673) (same); *Objection of Mien Co. Ltd., et al to Confirmation of the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 4726) ("There is simply no basis for the Objecting Creditors to 'trust' that Administrative Expense Claims will be paid in full . . . .").

disallowed when the estate may not be able to pay all administrative expenses in full"); *see also Baptist Medical Center*, 52 B.R. at 421 (affirming Bankruptcy Court's decision denying immediate payment of certain administrative claims); *In re Korea Chosun Daily Times*, 337 B.R. 773, 784-85 (Bankr. E.D.N.Y. 2005); *In re Ames Dep't Stores, Inc.*, 306 B.R. at 53 n.22; *In re Standard Furniture*, 3 B.R. 527 (Bankr. S.D. Cal. 1980).

29. Moreover, the Debtors are engaged in ongoing negotiations with an ad hoc group of administrative expense claimants regarding a framework to expedite the effective date of the Plan. Any allowable administrative expense claims should be subject to any settlement that is reached and that is approved by the Court.

30. Under the circumstances of these chapter 11 cases, the Court should deny the Landlord's request for immediate payment of any administrative expenses the Court determines are allowable.

## Conclusion

31. For the reasons set forth herein, the Motion should be denied in its entirety.

Dated: September 26, 2019
      New York, New York

                              */s/* Jacqueline Marcus
                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York 10153
                              Telephone: (212) 310-8000
                              Facsimile: (212) 310-8007
                              Ray C. Schrock, P.C.
                              Jacqueline Marcus
                              Garrett A. Fail
                              Sunny Singh

                              *Attorneys for Debtors*
                              *and Debtors in Possession*

## Exhibit A

## Lease Paragraph 31

## Condition of Premises at Termination

"Cure Period" shall mean, for any default in the payment of money, seven (7) days after notice from Tenant. For any ~~other~~ default, "Cure Period" shall mean thirty (30) days after notice from Tenant; provided, in all instances, Landlord shall commence to remedy such default in ten (10) business days after receipt of notice from Tenant and provided further that if such default cannot be reasonably remedied within such thirty (30) day period, "Cure Period" shall mean such time as shall be reasonably necessary to remedy such default.

shall breach any of the provisions hereof and this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.

Mortgage Subordination

28. Upon written request by Landlord, Tenant shall execute and deliver an agreement subordinating this lease to any first mortgage upon demised premises; provided, however, such subordination shall be upon the express condition that the validity of this lease shall be recognized by the mortgagee, and that, notwithstanding any default by the mortgagor with respect to said mortgage or any foreclosure thereof, Tenant's possession and right of use under this lease in and to the demised premises shall not be disturbed by such mortgagee unless and until Tenant shall breach any of the provisions hereof and this lease or Tenant's right to possession hereunder shall have been terminated in accordance with the provisions of this lease.


INITIALED

[D] INSERT PARAGRAPH # OF ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF.

Tenant Indemnifies Landlord

29. ~~During the lease term Tenant shall indemnify and save Landlord and~~ Landlord's ground lessor, if any, harmless against all penalties, or demands of whatsoever nature arising from ~~Tenant's use of~~ the Tenant's buildings except those which shall result, in whole or in part, directly or indirectly, from the default or negligence of Landlord or Landlord's ground lessor, if ~~any~~.

Tenant's Right to Cure Landlord's Defaults

[and for which Tenant and such mortgagee have not previously executed a non-disturbance agreement]

30. In the event Landlord shall [be in default in any obligation] ~~neglect~~ to pay [any sum under] ~~when due any obligations on~~ any mortgage or encumbrance affecting title to the demised premises and to which this lease shall be subordinate, or shall fail to perform any obligation specified in this lease, then Tenant may, after the continuance of any such default for [the applicable "Cure Period" defined above] ~~seven (7) days after notice thereof by Tenant~~, pay said principal, interest or other charges or cure such default, all on behalf of and at the expense of Landlord, and do all necessary work and make all necessary payments in connection therewith, and Landlord shall on demand, pay Tenant forthwith the amount so paid by Tenant together with interest thereon at the lower rate of eighteen percent (18%) per annum or the highest rate not prohibited by law, and Tenant may to the extent necessary withhold any and all rental payments and other payments thereafter due to Landlord and apply the same to the payment of such indebtedness.

Provided the holder of a properly recorded first mortgage shall have notified Tenant in writing that it is the holder of such lien on the demised premises and shall so request, Tenant shall provide such holder with a duplicate copy of any notice sent to Landlord covering a default hereunder, and such holder shall be granted sixty (60) days after receipt thereof to correct or remedy such default.

Condition of Premises at Termination

[Tenant's]

31. At the expiration or earlier termination of the lease term Tenant shall surrender the demised premises, together with alterations, additions and improvements then a part thereof, in good order and condition except for the following: ordinary wear and tear, repairs required to be made by Landlord, and loss or damage by fire, the elements and other casualty. All furniture and trade fixtures installed in ~~said~~ buildings at the expense of Tenant or other occupant shall remain the property of Tenant or such other occupant; provided, however, Tenant shall, at any time and from time to time during the lease term, have the option to relinquish its property rights with respect to such trade fixtures ~~(including, but not limited to, air conditioning machinery and lighting fixtures)~~, which option shall be exercised by notice of such relinquishment to Landlord, and from and after the exercise of said option the property specified in said notice shall be the property of Landlord.

INSERT PARAGRAPH 31, PAGE 18A

Holding Over

(and subsequent to receipt by Landlord of notice by Tenant of its intent to remain as tenant).

32. In the absence of any written agreement to the contrary, if Tenant should remain in occupancy of the demised premises after the expiration of the lease term, it shall so remain as a tenant, from month-to-month and all provisions of this lease applicable to such tenancy shall remain in full force and effect during the term of such month-to-month tenancy except (i) Tenant may not exercise any unexercised option rights and (ii) Tenant shall be obligated to pay Landlord a monthly minimum rental of one and one-quarter (1 1/4) times the amount of monthly annual minimal rental due under Article 3 of this Lease.

Semi-Gross 11/30/89

-18-

0373:10/02/90(2)
8DP22/7240E

31. Upon Landlord's written request to Tenant prior to the expiration of the Lease Term, Tenant shall remove Tenant's improvements, trade fixtures, equipment and apparatus from the Demised Premises at the earlier of the expiration or termination of the Lease Term. Tenant shall be responsible for any and all repairs required to the Demised Premises resulting from the removal of the improvements, trade fixtures, equipment and apparatus.

- 18A -

# Exhibit B

**Addendum Paragraph D**

**Indemnification Provision**

WEIL:\97199828\5\73217.0004

0373:02/26/91
BDP20/7239E

"Term", "Lease Term" and "lease term" shall have the meaning as defined in Article 2 hereof.

B. **UTILITIES.** The following language shall be added to and made a part of Article 17:

Tenant shall pay for all utilities ordered or consumed by it for use within Tenant's Building, including gas, electricity, water, sewer and telephone.

C. **USE, ASSIGNMENT AND SUBLETTING.** The following language shall be added and made a part of Article 22:

The Demised Premises shall only be used by Tenant, its successors, assigns and subtenants, for retail purposes and will not be used for any purpose that is incompatible with the operation of a community shopping center or for any of the following purposes: (a) any public or private nuisance; (b) any use producing noise or sound that is reasonably objectionable due to excessive intermittence, bet frequency, shrillness or loudness; (c) any use producing an obnoxious odor; (d) any use involving noxious, toxic, caustic or corrosive fuel or gas; (e) any use producing dust, dirt or fly ash in excessive quantities; (f) any use involving an unusual fire, explosion or other damaging or dangerous hazard (including the storage, display or sale of explosives or fireworks); (g) any primary use as a warehouse, except storage of merchandise, materials and fixtures incidental to the operation of any other permitted use shall not be deemed a warehouse use; (h) any assembling, manufacturing, distilling, refining, smelting, agricultural or mining operation; (i) any establishment selling or exhibiting pornographic materials; (j) any primary use as a video arcade or gaming or amusement center; or (k) any mortuary. Tenant shall not use any part of the Common Areas to make sales from trucks, trailers, vans, booths or other temporary facilities or for any entertainment, carnival or other show. Nothwithstanding the foregoing, Tenant shall have the right to conduct sales from and on the sidewalk in front of the building. Tenant agrees that during the periods in which it conducts such sales, it will maintain the portion of the sidewalk which it is using in a manner which is consistent with a first-class shopping center and in a neat, clean and safe condition.

Tenant may assign this Lease or sublet the whole or any part of the Demised Premises, but if it does so, it shall remain liable and responsible under this Lease.

D. **TENANT INDEMNIFIES LANDLORD.** The following language shall be added and made a part of Article 29:

During the Lease Term, Tenant shall and does indemnify and save Landlord harmless against all costs, liabilities, damages, expenses, penalties, claims or demands of whatsoever nature, including all costs of defense and reasonable counsel fees for personal injury, death or property damage occurring in Tenant's portion of Tenant's Building arising from Tenant, its subtenants'; agents'; employees' or contractors' use of the Tenant's Building or any improvements therein or appurtenances thereto or by act or omission or negligence of Tenant, any subtenant, concessionaire or licensee of Tenant or their respective employees, agents, or contractors in Tenant's Building or its appurtenances except those which shall result, in whole or in part, directly or indirectly, from the default or negligence of Landlord.

- 2 -

## Exhibit C

**Addendum Paragraph C**

**Use, Assignment and Subletting Provision**

0373:02/26/91
BDP20/7239E

"Term", "Lease Term" and "lease term" shall have the meaning as defined in Article 2 hereof.

B. **UTILITIES.** The following language shall be added to and made a part of Article 17:

Tenant shall pay for all utilities ordered or consumed by it for use within Tenant's Building, including gas, electricity, water, sewer and telephone.

C. **USE, ASSIGNMENT AND SUBLETTING.** The following language shall be added and made a part of Article 22:

The Demised Premises shall only be used by Tenant, its successors, assigns and subtenants, for retail purposes and will not be used for any purpose that is incompatible with the operation of a community shopping center or for any of the following purposes: (a) any public or private nuisance; (b) any use producing noise or sound that is reasonably objectionable due to excessive intermittence, bet frequency, shrillness or loudness; (c) any use producing an obnoxious odor; (d) any use involving noxious, toxic, caustic or corrosive fuel or gas; (e) any use producing dust, dirt or fly ash in excessive quantities; (f) any use involving an unusual fire, explosion or other damaging or dangerous hazard (including the storage, display or sale of explosives or fireworks); (g) any primary use as a warehouse, except storage of merchandise, materials and fixtures incidental to the operation of any other permitted use shall not be deemed a warehouse use; (h) any assembling, manufacturing, distilling, refining, smelting, agricultural or mining operation; (i) any establishment selling or exhibiting pornographic materials; (j) any primary use as a video arcade or gaming or amusement center; or (k) any mortuary. Tenant shall not use any part of the Common Areas to make sales from trucks, trailers, vans, booths or other temporary facilities or for any entertainment, carnival or other show. Nothwithstanding the foregoing, Tenant shall have the right to conduct sales from and on the sidewalk in front of the building. Tenant agrees that during the periods in which it conducts such sales, it will maintain the portion of the sidewalk which it is using in a manner which is consistent with a first-class shopping center and in a neat, clean and safe condition.

Tenant may assign this Lease or sublet the whole or any part of the Demised Premises, but if it does so, it shall remain liable and responsible under this Lease.

D. **TENANT INDEMNIFIES LANDLORD.** The following language shall be added and made a part of Article 29:

During the Lease Term, Tenant shall and does indemnify and save Landlord harmless against all costs, liabilities, damages, expenses, penalties, claims or demands of whatsoever nature, including all costs of defense and reasonable counsel fees for personal injury, death or property damage occurring in Tenant's portion of Tenant's Building arising from Tenant, its subtenants'; agents'; employees' or contractors' use of the Tenant's Building or any improvements therein or appurtenances thereto or by act or omission or negligence of Tenant, any subtenant, concessionaire or licensee of Tenant or their respective employees, agents, or contractors in Tenant's Building or its appurtenances except those which shall result, in whole or in part, directly or indirectly, from the default or negligence of Landlord.

- 2 -