UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re                                                       :    Chapter 11
:
SEARS HOLDINGS CORPORATION, *et al.*,                       :    Case No. 18-23538 (RDD)
:
Debtors.[1]                                                 :    (Jointly Administered)
:
------------------------------------------------------------x

**SUPPLEMENTAL DECLARATION OF BRIAN J. GRIFFITH IN SUPPORT
OF CONFIRMATION OF MODIFIED SECOND AMENDED JOINT CHAPTER 11
PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS**

I, Brian J. Griffith, make this declaration under 28 U.S.C. § 1746:

1.      On September 13, 2019, I submitted a declaration in support of confirmation (ECF No. 5148) of the Debtors' *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated October 1, 2019 (ECF No. 5293) (as may be amended, modified, or supplemented, the "**Plan**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

2. I submit this supplemental declaration (the "**Supplemental Declaration**") in further support of the Plan and, in particular, in support of the Administrative Expense Claims Consent Program.[2] I have reviewed, and I am generally familiar with, the terms and provisions of the Plan, the documents comprising the Plan Supplement, the *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated July 9, 2019 (ECF No. 4478) (the "**Disclosure Statement**"), the Administrative Expense Claims Consent Program, and the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code.

3. Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge, my review of relevant documents, information provided to me by the Debtors' management and advisors, including the employees of M-III who report to me, or my opinion based upon my experience and familiarity with the Debtors' business, operations, and financial condition and I am authorized by the Debtors to make this supplemental declaration in support of confirmation of the Plan. If I were called upon to testify, I could and would testify competently as to the facts set forth herein.

### Negotiations with Holders of Administrative Expense Claims

4. Starting in late August, 2019, the Debtors and the Creditors' Committee, through their advisors, began conducting good-faith, arm's length negotiations with the Ad Hoc Vendor Group on the terms of a proposed implementation mechanism for allowing the holders of Administrative Expense Claims to accept less than 100 cents on the dollar. The Debtors and

---

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Confirmation Brief, or the *Debtors' Memorandum of Law in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, or the *Debtors' Supplemental Memorandum of Law in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* filed contemporaneously herewith (the "**Supplemental Confirmation Brief**"), as applicable.

2

their advisors have engaged in numerous calls and two in-person meetings with the Ad Hoc Vendor Group and the Creditors' Committee, which I attended, and have exchanged multiple proposals and diligence materials. It is my understanding that the Ad Hoc Vendor Group represents a significant portion of the Administrative Expense Claims pool—approximately 18% of all Administrative Expense Claims estimated to be Allowed.

5. I was personally involved in the negotiations of the Administrative Expense Claim Consent Program, which were iterative over several weeks and, in my opinion, conducted in good faith by all parties, where extensive review and analysis was conducted of the Claims asserted by the members of the Ad Hoc Vendor Group. Over the course of these negotiations, the Debtors shared this analysis with the Ad Hoc Vendor Group and the Creditors' Committee and engaged in multiple diligence discussions in respect to such analysis. On September 13, 2019, the Debtors publicly filed the Debtors' initial proposal to the Ad Hoc Vendor Groups. *See* Confirmation Brief, Exhibit B. It is my understanding that in light of the progressing negotiations and understanding the benefits of an agreement with the administrative creditors, the Debtors agreed to adjourn the Confirmation Hearing by approximately two weeks to October 3, 2019, in order to give the Administrative Expense Claims Consent Program Parties additional time to negotiate and finalize an agreement. Following an in-person meeting on September 23, 2019, and additional exchanges of proposals and diligence materials, the Debtors, the Creditors' Committee, and the Ad Hoc Vendor Group agreed in part to the Administrative Expense Claims Consent Program, and additional negotiations continued. On October 1, 2019, the Debtors, the Creditors' Committee, and the Ad Hoc Vendor Group reached agreement and executed the term sheet setting forth the Administrative Expense Claims Consent Program (the "**Administrative Expense Claims Consent Program Term Sheet**"), which is attached as

Exhibit A to the Supplemental Confirmation Brief and incorporated by reference as if fully set forth.

6. The Administrative Expense Claims Consent Program also provides all holders of Administrative Expense Claims—except the members of the Ad Hoc Vendor Group—the ability to opt out of the Administrative Expense Claims Consent Program pursuant to the Opt-In/Opt-Out Procedures. The Opt-In/Opt-Out Procedures are also summarized in the Term Sheet.

7. Any party that does not affirmatively opt out, following the procedures approved by the Court, will be deemed to accept the Administrative Expense Claims Consent Program and will receive its pro rata share of the consideration contemplated thereby (to the extent there are no objections to the Claim). In my view, this is appropriate and necessary under the circumstances and is explicitly contemplated by the Administrative Expense Claims Consent Program Term Sheet.

**The Administrative Expense Claims Consent Program Was Proposed in Good Faith and Is in the Best Interests of the Debtors' Estates**

8. Based on the events that have occurred prior to and during the Debtors' Chapter 11 Cases, and discussions I have had with the Debtors' legal advisors regarding the requirements set forth in the Bankruptcy Code, the Administrative Expense Claims Consent Program is fair, equitable, in the Debtors' best interests, should be approved under the 9019 Standard and *Iridium* factors—should such standard be found to apply to the Administrative Expense Claim Consent Program—as I understand them.

9. The Administrative Expense Claims Consent Program provides for the compromise and settlement of all Administrative Expense Claims, where the claimants do not opt-out, for 75% of the allowed amount of such Claims, which the Debtors would otherwise be

required to pay in full. Accordingly, it is my understanding that the Administrative Expense Claims Consent Program resolves the objections filed by the Ad Hoc Vendor Group that collectively holds 18% of all estimated Administrative Expense Claims. The Debtors, Creditors' Committee, and Ad Hoc Vendor Group are represented by competent and experienced professionals, and it is my belief that the Administrative Expense Claims Consent Program is the product of good-faith arm's-length bargaining. As a result, I believe the Administrative Expense Claims Consent Program is fair, reasonable, and in the best interest of the Estates, and, to the extent applicable, satisfies both the 9019 Standard and the *Iridium* factors. Additionally, the Creditors' Committee has participated in and supports the Administrative Expense Claims Consent Program, which such participation and support provides additional evidence of the justification and fairness of the settlement. I believe that the Administrative Expense Claims Consent Program allows the Debtors to forego time-consuming litigation in connection with the Plan and the allowance of settled Administrative Expense Claims, which permits Estate resources to be better utilized and maximized. Further, I believe the Administrative Expense Claims Consent Program avoids fees which would otherwise be incurred on protracted litigation, and instead permits the Estate additional funds to be distributed to creditors.

10. Pursuant to the Administrative Expense Claims Consent Program, holders of Administrative Expense Claims have agreed to a 25% waiver on the satisfaction of the allowed claims, thereby reducing the Debtors' overall Administrative Expense Claims burden and resulting in greater recoveries for junior creditors pursuant to the Plan. Overall, I believe that the Administrative Expense Claims Consent Program allows the Debtors to satisfy obligations under the Plan and go effective on a faster timeline, to the benefit of all creditors.

11. Accordingly, I believe that the Plan and the Administrative Expense Claims Consent Program as reflected therein are fundamentally fair and reasonable.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: October 1, 2019
New York, New York

By: /s/ *Brian Griffith*
Brian J. Griffith
Managing Director
M-III Advisory Partners, LP