WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |

-------------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**NOTICE OF FILING OF REVISED**
**ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM TERM SHEET**
**WITH THE AD HOC VENDER GROUP AND CREDITORS' COMMITTEE**

  **PLEASE TAKE NOTICE** that on October 1, 2019, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), executed a term sheet with the Creditors' Committee and the ad hoc group of holders of Administrative Expense Claims (the "**Ad Hoc Vendor Group**", together with the Debtors and the Creditors' Committee, the "**Parties**") which sets forth a proposed consent program for holders of Administrative Expense Claims to accept "less favorable treatment" (the "**Administrative Expense Claims Consent Program**").

  **PLEASE TAKE FURTHER NOTICE** that on October 1, 2019 the Debtors filed the executed Administrative Expense Claims Consent Program Term Sheet (ECF No. 5292).

  **PLEASE TAKE FURTHER NOTICE** that the Administrative Expense Claims Consent Program Term Sheet with additional signature pages is attached hereto as **Exhibit A**.

  **PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Administrative Expense Claims Consent Program by the Bankruptcy Court at the hearing to consider confirmation of the Debtors' *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* scheduled to be held on **October 3, 2019 at 10:00 a.m. (prevailing Eastern Time)**, before the Honorable Robert D. Drain, United States

Bankruptcy Judge, United States Bankruptcy Judge, at the United States Bankruptcy Court for

the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New

York, 10601-4140.

Dated: October 2, 2019
        New York, New York

                                        /s/ Sunny Singh
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York  10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Ray C. Schrock, P.C.
                                        Sunny Singh

                                        *Attorneys for Debtors
                                        and Debtors in Possession*

**<u>Exhibit A</u>**

**Administrative Expense Claims Consent Program Term Sheet**

EXECUTION VERSION

## SEARS HOLDINGS CORPORATION, *ET AL.*
### ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM TERM SHEET

October 1, 2019

This Administrative Expense Claims Consent Program Term Sheet sets forth the material terms with respect to a proposed consent program for all Administrative Expense Claims by and amongst Sears Holdings Corporation and each of its debtor affiliates (collectively, the "**Debtors**")[1] and certain holders of Administrative Expense Claims (the "**Administrative Expense Claims Consent Program**"). Pursuant to the Creditors' Committee Settlement,[2] the Creditors' Committee maintains consent rights with regard to the treatment of Administrative Expense Claims under the Plan (as defined below), and are supportive of the terms provided by this Administrative Expense Claims Consent Program Term Sheet. The Administrative Expense Claims Consent Program is subject in all respects to the negotiation and execution of this Administrative Expense Claims Consent Program Term Sheet.

**THIS ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM TERM SHEET DOES NOT CONSTITUTE (NOR SHALL IT BE CONSTRUED AS) AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY PLAN, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, ONLY WILL BE MADE IN COMPLIANCE WITH APPLICABLE PROVISIONS OF ALL APPLICABLE LAW. THIS ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM TERM SHEET SHALL BE EFFECTIVE AND BINDING UPON EACH OF THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM PARTIES HERETO UPON THE FIRST BUSINESS DAY ON WHICH COUNTERPART SIGNATURE PAGES SHALL HAVE BEEN EXECUTED AND THE BANKRUPTCY COURT SHALL HAVE ENTERED THE CONFIRMATION ORDER CONFIRMING THE PLAN AND APPROVING THE ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM.**

---

[1]   The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).

[2]   Capitalized terms used herein shall have the meaning ascribed to such terms in the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 5139] (as may be further amended or supplemented, the "**Plan**").

| Administrative Expense Claims Consent Program Terms | |
|---|---|
| **Administrative Expense Claims Consent Program** | As soon as reasonably practicable, the Debtors, the Creditors' Committee, and the members of the ad hoc group of administrative expense claimants (the "**Ad Hoc Vendor Group**") shall execute this term sheet (the "**Administrative Expense Claims Consent Program Term Sheet**" and all parties thereto, the "**Administrative Expense Claims Consent Program Parties**") in connection with the treatment of their respective administrative expense claims ("**Settled Administrative Expense Claims**") and that provides for a construct for all Administrative Expense Claims (as defined below). |
| | "**Administrative Expense Claims**" shall be as defined in the Plan, but shall include 503(b)(1) and 503(b)(9) Claims, excluding any amounts paid by Transform on account thereof (including amounts that otherwise would have been 503(b)(9) Claims but were paid as part of cure obligations in connection with assumed and assigned contracts). |
| | The Administrative Expense Claims Consent Program, including the Opt-In/Opt-Out Procedures, the Opt-In Ballot and Opt-Out Ballot (each as defined below), shall be approved upon entry of the confirmation order (the "**Confirmation Order**"). The terms of this Administrative Expense Claims Consent Program shall be incorporated into the Confirmation Order. |
| | Any distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases. Further, upon entry of the Confirmation Order and approval of the Administrative Expense Claims Consent Program, all Settled Administrative Expense Claims shall be Allowed against the Debtors in these Chapter 11 Cases on a consolidated basis, or upon any conversion or dismissal of the Chapter 11 Cases. |
| **Notice of Administrative Expense Claims Consent Program and Allowed Administrative Expense Claims** | The *Notice of Allowed Administrative Expense Claims*, in the form reasonably acceptable to the Debtors, the Creditors' Committee, and the Ad Hoc Vendor Group, shall be filed by the Debtors on October 1, 2019, contemporaneously with the *Notice of Administrative Expense Claims Consent Program*, which shall include the executed Administrative Expense Claims Consent Program Term Sheet as an exhibit. |
| **Supplemental Brief ISO Confirmation** | A supplemental brief in support of confirmation ("**Supplemental Brief**") shall be filed in advance of the confirmation hearing. The Supplemental Brief shall describe the Administrative Expense Claims Consent Program and the Opt-In/Opt-Out Procedures (as defined below), including the Opt-In Ballot and Opt-Out Ballot. The Ad Hoc Vendor Group shall have a reasonable opportunity to review the Supplemental Brief and comment on the Confirmation Order with respect to any language relating to the Administrative Expense Claims Consent Program before it is filed to ensure that the Administrative Expense Claims Consent Program and the Opt-in/Opt-Out Procedures are consistent with this Administrative Expense Claims Consent Program Term Sheet. |

| | |
|---|---|
| **Litigation Funding/Cash Reserve** | Within three (3) business days of entry of the Confirmation Order and contemporaneously with funding of the Segregated Account and the Initial Cash Pool (each as defined below), the Debtors shall have set aside (i) $15 million in a segregated account (the "**Litigation Funding Account**") for the funding of litigation associated with the Jointly Asserted Causes of Action (as defined in the proposed Confirmation Order) (the "**Litigation Funding**") and (ii) $5 million of additional cash in a segregated account the ("**Cash Reserve Account**") for post-Confirmation estate costs including, without limitation, U.S. Trustee Fees, operating costs of the Debtors, and additional professional fees of the Debtors' and the Creditors' Committee not otherwise included in the Carve-Out Account as of the entry of the Confirmation Order (the "**Cash Reserve**"). |
| **Funding from the Carve-Out Account** | Within three (3) business days of entry of the Confirmation Order, the Debtors shall transfer a minimum of $2 million from the Carve-Out Account (the "**Carve-Out Contribution**") into a separately segregated account ("**Segregated Account**") to be used solely on account of the Initial Distribution (as defined below) and subsequent distributions to holders of Settled Administrative Expense Claims. |
| **Recovery** | Pursuant to the terms of the Administrative Expense Claims Consent Program, holders of Settled Administrative Expense Claims shall receive recoveries from Net Proceeds of Total Assets other than the Litigation Funding and the Cash Reserve (as more fully set forth herein) in the following manner and in the following order of priority until such time as the holders of Settled Administrative Expense Claims receive a recovery of 75% on account of their Settled Administrative Expense Claims: |
| | *First*, each holder of an Allowed Administrative Expense Claim against the Debtors that *affirmatively opts-in* (the "**Opt-In Settled Admin Claims**")[3] to the Administrative Expense Claims Consent Program, shall receive: |
| | • its pro rata share of the Initial Distribution[4] capped at 75% of the Allowed Administrative Expense Claim (the percentage recovery, the "**Initial Recovery**"); provided, that, the Initial Distribution shall only be available to holders of Opt-In Settled Admin Claims who consensually agree with the Debtors to the Allowed amount of the Opt-In Settled Admin Claims; provided, further, that, holders who do not agree with the Debtors on the Allowed amount of the Opt-In Settled Admin Claim shall be deemed to hold a Non Opt-Out Settled Admin Claim; and |
| | • consensual reconciliation of the Allowed amount of Opt-In |

---

[3]    For the avoidance of doubt, holders of Administrative Expense Claims who execute this Administrative Expense Claims Consent Program Term Sheet shall be deemed holders of Opt-In Settled Admin Claims.

[4]    "**Initial Distribution**" shall mean Distributions made from a cash pool of $20 million inclusive of the Carve-Out Contribution ("**Initial Cash Pool**") to be held in the Segregated Account and made available on or about December 1, 2019 (the "**Initial Distribution Date**") for holders of Opt-In Settled Admin Claims. Within three (3) business days following entry of the Confirmation Order, $15 million inclusive of the Carve-Out Contribution shall be funded by the Debtors into the Initial Cash Pool, with an additional $5 million funded by the Debtors into the Initial Cash Pool on or before the Initial Distribution Date. The Cash Pool shall be placed in the Segregated Account and used solely for the purpose of funding the Settled Administrative Expense Claims as provided for in this Administrative Expense Claims Consent Program Term Sheet.

Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the date of receipt of the Opt-In Ballot; provided, that, to the extent the Debtors, the Creditors' Committee, and the holder of the Opt-In Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of an Opt-In Settled Admin Claim; provided, further, that, for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis.

After the Initial Distribution, a Second Distribution (as defined below) to Settled Administrative Expense Claims shall not occur until each of the following conditions is met: (i) a total of $25 million has been funded into the Litigation Funding Account in the aggregate,[5] (ii) there has been a funding of $10 million in the aggregate in the Cash Reserve Account, and (iii) the Segregated Account has an additional $10 million in cash (together, the "**Minimum Conditions**").[6]

**Second**, once the Minimum Conditions are satisfied, each holder of an Allowed Administrative Expense Claim against the Debtors that **does not opt-out** (the "**Non Opt-Out Settled Admin Claims**," together with the Opt-In Settled Admin Claims, shall be considered Settled Administrative Expense Claims (as defined above)) of the Administrative Expense Claims Consent Program shall then receive:

- its pro rata share of the Second Distribution[7] capped at 75% of the Allowed Administrative Expense Claim; and

- consensual reconciliation of the Allowed amount of Non Opt-Out Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the Opt-Out Deadline; provided, that, to the extent the Debtors, the Creditors' Committee, and the holder of the Non Opt-Out Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-

---

[5] For the avoidance of doubt, following the Effective Date, any additional funding for the Jointly Asserted Causes of Action and/or other Preserved Causes of Action shall be determined by the Liquidating Trust Board in accordance with the terms of the Plan and the Liquidating Trust Agreement.

[6] For the avoidance of doubt, following the Initial Distribution of $20 million in cash, it shall be a requirement that the Cash Reserve Account is funded by the Debtors with an additional $5 million, for a total of $10 million in the aggregate of available cash and the Segregated Account has at least an additional $10 million in cash prior to any further Distributions on account of Settled Administrative Expense Claims.

[7] "**Second Distribution**" shall mean Distributions made to holders of Non Opt-Out Settled Admin Claims up to a percentage recovery equal to the Initial Recovery; provided, that, for the avoidance of doubt, there shall be no Second Distribution until the Cash Reserve Account is funded by the Debtors with an additional $5 million, for a total of $10 million in the aggregate. For the avoidance of doubt, the Litigation Funding Account shall in no event be funded by more than $25 million up to and including the Effective Date.

4

| | |
|---|---|
| | upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of a Non Opt-Out Settled Admin Claim; provided, further, that, for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis.<br><br>**Third**, after the Second Distribution, all Net Proceeds of Total Assets other than the Litigation Funding and the Cash Reserve (as more fully set forth herein) shall be made available for Distributions on account of all Settled Administrative Expense Claims up to 75% of the consensually agreed-upon Allowed Settled Administrative Expense Claim ("**Settled Administrative Expense Claims Payout**").[8]<br><br>**Fourth**, after the Settled Administrative Expense Claims Payout and upon the Effective Date of the Plan, holders of Administrative Expense Claims who opt-out of the Administrative Expense Claims Consent Program (the "**Non-Settled Administrative Expense Claims**") shall receive Distributions on account of their Non-Settled Administrative Expense Claims to the extent Allowed; provided, that, for the avoidance of doubt, (i) for all Settled Administrative Expense Claims (unless otherwise agreed among the Debtors, the Creditors' Committee and the holder of such Settled Administrative Expense Claim) and (ii) for all Non-Settled Administrative Expense Claims, the Debtors and/or the Liquidating Trust (a) shall prosecute all Claims and Causes of Action arising under chapter 5 to the fullest extent and (b) reserve all rights to object to any and all Non-Settled Administrative Expense Claims on any basis.<br><br>**Fifth,** upon the occurrence of the Effective Date and after the (i) Settled Administrative Expense Claims Payout, and (ii) Distributions on account of Allowed Non-Settled Administrative Expense Claims, all Net Proceeds of Total Assets shall be governed by the terms of the Plan and the Liquidating Trust Agreement. |
| **Minimum Cash Reserve** | Notwithstanding anything to the contrary contained herein, (a) prior to the Effective Date, and once the Cash Reserve Account has been funded with $10 million in the aggregate, the Debtors' Restructuring Committee, together with the Creditors' Committee and Admin Representative (as hereinafter defined) (collectively, the "**Pre-Effective Date Committee**"), and (b) after the Effective Date, the Liquidating Trust Board shall commence a telephonic meeting no less than every thirty (30) days to review, among other things, the status of the reconciliation of Administrative Expense Claims, as well as the latest budget and variance reporting of the Debtors; provided, that, in the interim, the Debtors shall provide, among other things, weekly budget and variance reporting, as well as an accounting of the Total Assets and any Net Proceeds derived therefrom to the Pre-Effective Date Committee on a confidential basis.    After the Initial Distribution Date, to the extent the Pre-Effective Date Committee deems it necessary to fund the Cash Reserve Account with additional funds beyond the |

---

[8]    Additional distributions shall be made to holders of Settled Administrative Expense Claims at all times when cash on hand (not including the Litigation Funding and the Cash Reserve) is $10 million, or if deemed earlier by the Pre-Effective Date Committee, and until such times as these claims have been paid in full (up to 75%) pursuant to the terms of this Administrative Expense Claims Consent Program Term Sheet.

|  | initial $10 million in the aggregate, and prior to additional Distributions being made to holders of Allowed Administrative Expense Claims, the Cash Reserve Account shall be funded by the Debtors in an amount agreed to by the Pre-Effective Date Committee; provided, that, should the Debtors' Restructuring Committee, together with the Creditors' Committee and Admin Representative, not agree to the amount of sufficient operating cash (to be funded into the Cash Reserve Account), after taking into account an amount to maintain the legal and fiduciary obligations of the Debtors, or Estate representatives, as applicable, any of the Debtors' Restructuring Committee, Creditors' Committee, or the Admin Representative may seek assistance (including on an emergency basis) from the Bankruptcy Court for a prompt resolution of the issue; provided, however, that, in no event, shall the Debtors' Restructuring Committee or the Creditors' Committee request or seek funding in excess of an amount that would cause the Cash Reserve Account to exceed (at any time) more than $10 million; provided, further, that, should the Debtors' Restructuring Committee, Creditors' Committee, or the Admin Representative seek Bankruptcy Court intervention as set forth above, no further funding of the Cash Reserve Account from Net Proceeds from Total Assets shall occur unless (i) all parties agree to a partial funding, or (ii) the Bankruptcy Court enters an order allowing for further funding. |
|---|---|
| **Maximum Recovery** | For the avoidance of doubt, Distributions in respect of a Settled Administrative Expense Claim shall not exceed 75% of the amount of the Allowed Settled Administrative Expense Claim; provided, that, in no scenario shall percentage recoveries on account of Allowed General Unsecured Claims exceed percentage recoveries on account of Settled Administrative Expense Claims. |
| **Opt-In/Opt-Out Procedures** | The Debtors propose the following procedures to solicit opt-ins and opt-outs:<br><br>1.    Upon entry of the Order, Prime Clerk LLC will: (a) send both an (i) opt-in ballot (the "**Opt-In Ballot**") and (ii) opt-out ballot (the "**Opt-Out Ballot**") to (x) all parties that have filed an Administrative Expense Claim or filed an application for administrative expense in the Debtors' Chapter 11 Cases and (y) any party that was exempted from filing an Administrative Expense Claim but the Debtors are aware of such claim; and (b) publish a notice of the Administrative Expense Claims Consent Program in the national edition of the *New York Times*. The Opt-In Ballot and Opt-Out Ballot will be sent to the address provided on such Administrative Expense Claim form or application for administrative expense or, if no such form exists, the address on the Debtors' books and records. The Opt-Out Ballot will clearly state that any party that exercises its right to opt out will not be entitled to any recovery from the Administrative Expense Claims Consent Program and that any party that does not opt out of the Administrative Expense Claims Consent Program will be bound by its terms, including to support a Plan.<br><br>2.    Unless otherwise agreed to in writing (including e-mail) by the Administrative Expense Claims Consent Program Parties, holders of Administrative Expense Claims will have 17 days from the date of service to submit an Opt-In Ballot in either electronic or paper |

| | |
|---|---|
| | form, in each case following the procedures set forth on the Opt-In Ballot. |
| | 3.      Unless otherwise agreed to in writing (including e-mail) by the Administrative Expense Claims Consent Program Parties, holders of Administrative Expense Claims will have 33 days from the date of service (the "**Opt-Out Deadline**") to submit an Opt-Out Ballot in either electronic or paper form, in each case following the procedures set forth on the Opt-Out Ballot. |
| | 4.      The Opt-Out Procedures may be modified with the written consent, including e-mail (such consent not to unreasonably be withheld), of all of the Administrative Expense Claims Consent Program Parties to facilitate the opt-out process. |
| **Admin Representative on the Debtors' Restructuring Committee** | Pursuant to the Administrative Expense Claims Consent Program and upon entry of the Confirmation Order, a representative of holders of Administrative Expense Claims (the "**Admin Representative**") (selected solely by the holders of Administrative Expense Claims, including the Ad Hoc Vendor Group) shall serve alongside the Debtors' Restructuring Committee and the Creditors' Committee to work through 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions and to ensure an expedient and fair process to claims resolution and emergence.  The Admin Representative shall also serve on the Pre-Effective Date Committee as set forth above in the Minimum Cash Reserve description and will be entitled to applicable insurance coverage provided and paid for by the Debtors, as well as protections from appropriate exculpation to the extent allowed for by law.  The Admin Representative shall also receive reasonable compensation as determined by the Debtors, Creditors' Committee, and Ad Hoc Vendor Group. |
| **Support of the Debtors' Plan** | Pursuant to the Administrative Expense Claims Consent Program, the non-Debtor Administrative Expense Claims Consent Program Parties shall, at no further cost to the Administrative Expense Claims Consent Program Parties (severally and not jointly): |
| | 1.   use good faith efforts to implement this Administrative Expense Claims Consent Program; |
| | 2.   support and take all commercially reasonable actions necessary or reasonably requested by the Debtors to facilitate confirmation of the Plan, including withdrawing any applicable objections and any other pleading inconsistent with the Administrative Expense Claims Consent Program and/or confirmation of the Plan; provided, that, to the extent the Bankruptcy Court does not approve the Administrative Expense Claims Consent Program, the Debtors shall cause the confirmation hearing to be adjourned to a date and time that is reasonably acceptable to the Debtors, Creditors' Committee, and counsel for the Ad Hoc Vendor Group, and the rights of all Administrative Expense Claims Consent Program Parties are reserved, including the rights of the non-Debtor Administrative Expense Claims Consent Program Parties to contest Confirmation; |

<table>
<tr><td></td><td>

3.  support the confirmation of the Plan and not object to, delay, interfere, impede, or take any other action to delay, interfere, or impede, directly or indirectly, with the confirmation of the Plan; <u>provided</u>, <u>that</u>, the same proviso in paragraph 2 shall apply;

4.  vote all Claims to Accept the Plan if applicable;

5.  not use, assign, convey, grant, transfer, hypothecate, or otherwise dispose of, in whole or in part, any Settled Administrative Expense Claims, <u>provided</u> <u>that</u>, once the Confirmation Order is entered, holders of Settled Administrative Expense Claim may transfer Settled Administrative Expense Claims (i) to any holder of Settled Administrative Expense Claims or (ii) to a party that delivers a joinder, in the form attached hereto as <u>Exhibit 1</u>, to the Debtors, Weil Gotshal & Manges LLP and Akin Gump Strauss Hauer & Feld LLP (in accordance with the notice provisions in the Plan) at least two (2) business days prior to the settlement of the relevant transfer; with respect to any transfers effectuated in accordance with clause (ii) above, such transferee shall be deemed a holder of a Settled Administrative Expense Claim; for the avoidance of doubt, any Administrative Expense Claims purchased by a holder of Settled Administrative Expense Claims shall be deemed subject to the terms of this Administrative Expense Claims Consent Program; and

6.  not object to or opt out of any release included in this Administrative Expense Claims Consent Program.

</td></tr>
<tr><td>**Releases**</td><td>The Administrative Expense Claims Consent Program shall include certain consensual releases of Claims and Causes of Action amongst the Administrative Expense Claims Consent Program Parties; for the avoidance of doubt, the Administrative Expense Claims Consent Program shall not release any Specified Causes of Action.</td></tr>
</table>

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the Parties execute this Settlement Term Sheet as of the date first written above.

**SEARS HOLDINGS CORP. on behalf of itself
and its co-debtors and debtors-in-possession**

By: _____

*Its duly authorized representative*

Name: Mohsin Meghji
Title: Chief Restructuring Officer

IN WITNESS WHEREOF, the Parties execute this Settlement Term Sheet as of the date first written above.

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF SEARS
HOLDINGS CORP. AND ITS CO-DEBTORS
AND DEBTORS-IN-POSSESSION**

By: _____

*Its duly authorized representative*

Name: Philip Dublin
Title: Partner, Akin Gump Strauss Hauer & Feld LLP
Counsel to the Official Committee of
Unsecured Creditors

IN WITNESS WHEREOF, the Parties execute this Administrative Expense Claims Consent Program Term Sheet as of the date first written above.

**ADMINISTRATIVE EXPENSE CLAIM HOLDER**

By: _____

*Its duly authorized representative*

Firm / Vendor: Whitebox Asymmetric Partners, LP
Name: Mark Strefling
Title: Partner & CEO

DocuSign Envelope ID: 339BF60-575A-4484-BD8C-62FCA7485948

IN WITNESS WHEREOF, the Parties execute this Administrative Expense Claims Consent Program Term Sheet as of the date first written above.

**ADMINISTRATIVE EXPENSE CLAIM HOLDER**

By: _____
*Its duly authorized representative*

Firm / Vendor: Whitebox Multi-Strategy Partners, LP
Name: Mark Strefling
Title: Partner & CEO

IN WITNESS WHEREOF, the Parties execute this Administrative Expense Claims Consent Program Term Sheet as of the date first written above.

**ADMINISTRATIVE EXPENSE CLAIM HOLDER**

By: _Robert J Koltai_

*Its duly authorized representative*

Firm / Vendor:  Hain Capital Investors Master Fund, Ltd.
            By:  Koltai Company Advisors, LLC
Name:   Robert J Koltai

Title:    Managing Member

IN WITNESS WHEREOF, the Parties execute this Administrative Expense Claims Consent Program Term Sheet as of the date first written above.

**ADMINISTRATIVE EXPENSE CLAIM HOLDER**

By: *Vladimir Jelisavcic*

*Its duly authorized representative*

Firm / Vendor: Cherokee Debt Acquisition, LLC
Name: Vladimir Jelisavcic
Title: Manager

**<u>Exhibit 1</u>**

JOINDER

[Attached.]

## JOINDER TO ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM

The undersigned ("**Transferee**") hereby acknowledges that it has read and understands the Administrative Expense Claims Consent Program Term Sheet, dated as of [●], 2019, by and among the Debtors with the consent of the Creditors' Committee, and the members of the Ad Hoc Vendor Group, and agrees to be bound by the terms and conditions of the Administrative Expense Claims Consent Program, and shall be deemed a "holder of a Settled Administrative Expense Claim" under the terms of the Administrative Expense Claims Consent Program Term Sheet.

The Transferee hereby agrees to be bound by the terms and conditions of the Administrative Expense Claims Consent Program to the same extent a transferor was thereby bound. This Joinder shall be governed by, and construed in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflict of laws that would require the application of the law of any other jurisdiction. Capitalized terms not otherwise defined in this Joinder shall have the meanings assigned to such terms in the Administrative Expense Claims Consent Program Term Sheet.

**Amount of Administrative Expense Claim(s).**

$_____

**TRANSFEREE**

_____
Name

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed