**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                           :
In re                                      :          **Chapter 11**
                                           :
**SEARS HOLDINGS CORPORATION,** *et al.*,  :          **Case No. 18-23538 (RDD)**
                                           :
        Debtors.[1]                        :          **(Jointly Administered)**
                                           :
----------------------------------------------------------------x

### ORDER (I) CONFIRMING MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS AND (II) GRANTING RELATED RELIEF

Upon the filing by Sears Holdings Corporation and its affiliated debtors (collectively, the "**Debtors**") of the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 4476) (as amended, supplemented, or modified in accordance with its terms, the "**Plan**");[2] and the Court previously

---

[1]   The Debtors in the Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2]   Capitalized terms used in this order (this "**Confirmation Order**") but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or Disclosure Statement. Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy

having approved the *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated May 28, 2019 (ECF No. 4042) (as transmitted to parties in interest, and as modified by the *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, dated July 9, 2019 (ECF No. 4478), the "**Disclosure Statement**"); and the Debtors having filed the *Notice of Filing of Exhibits to the Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors*, whereby the Plan Settlement Liquidation Analysis and the Toggle Plan Liquidation Analysis were annexed thereto, on May 28, 2019 (ECF No. 4060) (each, as further amended or modified)) and the solicitation procedures related to the Disclosure Statement and the solicitation of acceptances and rejections of the Plan, in each case pursuant to the *Order (I) Approving Disclosure Statement, (II) Establishing Notice and Objection Procedures for Confirmation of the Plan, (III) Approving Solicitation Packages and Procedures for Distribution Thereof, (IV) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan, and (V) Granting Related Relief* (ECF No. 4392) (the "**Disclosure Statement Order**"); and the Debtors having served the Disclosure Statement on the Holders of Claims and Interests pursuant to the Disclosure Statement Order, *see Affidavit of Service* (ECF No. 4443); and the Debtors having filed the documents comprising the Plan Supplement on July 26, 2019, August 2, 2019, October 1, 2019, and October 7, 2019 (ECF Nos. 4632, 4703, 5295, 5335) (as may be further amended or supplemented, the "**Plan Supplement**"); and upon the objections to confirmation of the Plan; and this Court having considered the record in the Chapter 11 Cases, the stakeholder support for

---

Code or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

WEIL:\97226399\1\73217.0004

the Plan evinced on the record and in the *Declaration of Craig E. Johnson of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Joint Plan of Sears Holdings Corporation and Its Affiliated Debtors*, filed on September 13, 2019 (ECF No. 5137) (the "**Voting Certification**"), the compromises and settlements embodied in and contemplated by the Plan, the briefs and arguments regarding confirmation of the Plan, the evidence regarding confirmation of the Plan, and the record of the hearing on confirmation of the Plan commenced on October 3, 2019 and concluding on October 7, 2019 (the "**Confirmation Hearing**"); and after due deliberation and including for the reasons stated by the Court in its rulings on confirmation of the Plan at the Confirmation Hearing:

## IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and venue is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The Plan satisfies the applicable requirements for confirmation set forth in section 1129 of the Bankruptcy Code by a preponderance of evidence.

C.    The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Disclosure Statement Order.  The Debtors participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered under the Plan, and therefore are entitled to the protections of section 1125(e) of the Bankruptcy Code.

---

[3]    All findings of fact and conclusions of law announced by this Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

3

D.    The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, this Court has considered the totality of the circumstances of these cases, the formulation and negotiation of the Plan and all modifications thereto, the Plan Settlement, the PBGC Settlement, the Creditors' Committee Settlement, and the Administrative Expense Claims Consent Program (as defined below).  The Plan is the result of extensive, good faith, arm's length negotiations among the Debtors and their principal constituencies.

E.    The Plan is "fair and equitable" with respect to the Classes that are impaired and are deemed to reject the Plan, because no Class senior to any rejecting Class is being paid more than in full and the Plan does not provide a recovery on account of any Claim or Interest that is junior to such rejecting Classes unless and until such rejecting Class is paid in full.

F.    The releases contained in Section 15.9 of the Plan are an essential component of the Plan and appropriate.  The Third Party Release contained in Section 15.9(b) of the Plan is consensual because all parties to be bound by such release were entitled to vote, given due and adequate notice of the release and sufficient opportunity and instruction to elect to opt out of such release if they rejected the Plan or abstained from voting on the Plan.  Good and valid justifications have been demonstrated in support of the Debtor Release and the PBGC Release. Accordingly, the releases contained in Section 15.9 of the Plan are: (a) in exchange for the good and valuable consideration provided by the Released Parties, (b) a good faith settlement and compromise of the Claims or Causes of Action released by Section 15.9 of the Plan, (c) in the best interests of the Debtors, their Estates, the Liquidating Trust, and all Holders of Claims and Interests, (d) fair, equitable, and reasonable, and (e) given and made after due notice and opportunity for hearing.

WEIL:\97226399\1\73217.0004

G.    The exculpation provided by Section 15.10 the Plan for the benefit of the Exculpated Parties is appropriately tailored to the circumstances of these cases.

H.    The Plan does not discriminate unfairly among the different classes of unsecured creditors because grounds and justifications exist for treating the classes differently in these cases, including implementation of the Global Settlement, including the Plan Settlement and the PBGC Settlement.

I.    The Plan is dependent upon and incorporates the terms of compromises and settlements, which include the Plan Settlement, the PBGC Settlement, and the Creditors' Committee Settlement, which settlements were negotiated in good faith and at arm's length and are each, individually essential elements of the Plan.  The Plan Settlement, the PBGC Settlement, and the Creditors' Committee Settlement are fair, equitable, reasonable, and in the best interests of the Debtors, the Debtors' Estates, the Debtors' creditors, and all parties in interest, and satisfy the standards for approval under Bankruptcy Rule 9019.

J.    The Administrative Expense Claims Consent Program was negotiated at arm's length and in good faith among the Administrative Expense Claims Consent Program Parties (as defined below), and is a proper exercise of the Debtors' business judgment.  Those parties who do not opt out or expressly opt in shall be deemed to have consented to the treatment set forth in the Administrative Expense Claims Consent Program for such parties, which is hereby made part of and incorporated into Section 2.1 of the Plan.  The Administrative Expense Claims Consent Program is fair, equitable, reasonable, and in the best interest of the Debtors, the Debtors' Estates, the Debtors' creditors, and all parties in interest, and, to the extent applicable, satisfies the standards for approval under Bankruptcy Rule 9019.  The Opt-In/Opt-Out Procedures, as described herein, provide adequate procedures to solicit opt-out and opt-in votes

WEIL:\97226399\1\73217.0004

from Holders of Administrative Expense Claims with respect to the Administrative Expense

Claims Consent Program and otherwise to inform holders of Administrative Expense Claims

regarding their rights and available choices with respect to such Program.

K.    The DIP Order has not been terminated and continues to govern.  The

Debtors have acted in good faith in funding the Carve-Out Account, and amounts held therein

shall be available only for the payment of Allowed Professional Fees in accordance with the

DIP Order.

L.    This Court may properly retain jurisdiction over the matters set forth in

Article XVI of the Plan and matters pertaining to the Administrative Expense Claims Consent

Program as more fully set forth herein.

M.    On October 7, 2019, the Debtors filed the *Notice of Filing of Fourth Plan*

*Supplement in Connection With the Modified Second Amended Joint Chapter 11 Plan of Sears*

*Holdings Corporation and Its Affiliated Debtors* (ECF No. 5335), disclosing the compensation

for the Litigation Designee (as defined below) and members of the Liquidating Trust Board.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDICATED, AND
DECREED THAT:**

**A.    Confirmation of the Plan**

1.    The Plan and each of its provisions is approved and the Plan is confirmed

pursuant to section 1129 of the Bankruptcy Code.

2.    Any and all objections to and reservations of rights in respect of the Plan

that have not been withdrawn, waived or resolved prior to the Confirmation Hearing are hereby

denied and overruled on the merits with prejudice.

3.    The documents contained in the Plan Supplement, and any amendments,

modifications and supplements thereto, are integral to the Plan and are approved by the Court,

WEIL:\97226399\1\73217.0004

the Debtors and the Liquidating Trust, as applicable, are authorized to take all actions required

under the Plan and the Plan Supplement to effectuate the Plan and the transactions contemplated

therein including, without limitation, the implementation of the Wind Down in connection with

the Plan.

4.     The terms of the Plan including the Plan Supplement and the Liquidating

Trust Agreement, and the exhibits thereto are incorporated herein by reference and are an

integral part of the Plan and this Confirmation Order.   The terms of the Plan, the Plan

Supplement, the Liquidating Trust Agreement, all exhibits thereto, and all other relevant and

necessary documents shall be effective and binding as of the Effective Date.   The failure to

specifically include or refer to any particular article, section, or provision of the Plan, the Plan

Supplement, or any related document in this Confirmation Order does not diminish or impair the

effectiveness or enforceability of such article, section, or provision; it being the intention of this

Court that all such documents are approved in their entirety.

5.     Notice of the Confirmation Hearing complied with the terms of the

Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the

Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code,

Bankruptcy Rules and Local Bankruptcy Rules.   The solicitation of votes on the Plan and the

Solicitation Packages complied with the solicitation procedures in the Disclosure Statement

Order, were appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and

was in compliance with the provisions of the Bankruptcy Code, Bankruptcy Rules and Local

Bankruptcy Rules.   The Debtors solicited acceptances of the Plan in good faith and in

compliance with the applicable provisions of the Bankruptcy Code, including, without limitation,

7

sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation.

6.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

7.    Subject to payment of any applicable filing fees under applicable non-bankruptcy law, each federal, state, commonwealth, local, foreign or other governmental agency is directed and authorized to accept for filing and/or recording any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

8.    The compromises and settlements set forth in the Plan are approved, including, but not limited to, the PBGC Settlement, the Plan Settlement, and the Creditors' Committee Settlement, and, on the Effective Date, will be effective and binding on all parties in interest, except that the Administrative Expense Claims Consent Program shall be effective and binding on all parties in interest on the Confirmation Date.

9.    The amendments and modifications to the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 4476) since the filing thereof and incorporated into the Plan, are approved, including ECF No. 5293 (attached hereto as **Exhibit A**), in accordance with section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules.    Pursuant to Bankruptcy Rule 3019, these Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that

8

the Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

10.    Pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by this Court, any of the parties to such release, or any other Entity: (a) Injunction (Section 15.8), (b) Debtor Release (Section 15.9(a)), (c) Third Party Release (Section 15.9(b)), (d) PBGC Release (Section 15.9(c)), and (e) Exculpation (Section 15.10), without limiting the effectiveness on the Effective Date of the Plan as a whole.

11.    In accordance with the Plan and pursuant to this Confirmation Order, confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code, because the Debtors and their Estates will be wound down in accordance with the Plan.

12.    On the Effective Date, all Liquidating Trust Assets of the Debtors shall be transferred to the Liquidating Trust in accordance with Article X of the Plan, and all Debtors shall be dissolved without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder(s) or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities.  All directors and officers of the dissolved Debtors shall be deemed to have resigned in their capacity as of the Effective Date.

13.    Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and, in the case of a Secured Claim, satisfaction in accordance with the Plan of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens,

WEIL:\97226399\1\73217.0004

pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidating Trust and its successors and assigns.  All Holders of Secured Claims are directed to cooperate with the Debtors or the Liquidating Trust, as the case may be, in implementing this paragraph and any administrative details relating thereto.

14.    The Debtors shall provide case updates on progress towards the Effective Date at duly noticed status conferences held no less frequently than on a quarterly basis, with additional case updates as the Debtors deem necessary, in consultation with the Creditors' Committee.

15.    The Debtors shall file on the docket a notice of the imminent occurrence of the Effective Date (the "**Notice of Imminent Effective Date**") no later than twenty (20) calendar days prior to such occurrence of the Effective Date, and the Debtors shall disclose in the Notice of Imminent Effective Date the amount of remaining Administrative Expense Claims, Priority Claims, and Secured Claims to be paid and the Debtors' available cash to pay such Claims in accordance with the Plan; for the avoidance of doubt, in no event shall the Plan go effective unless and until all Allowed Administrative Expense Claims are paid either in full as provided for in the Administrative Expense Claims Consent Program or, with respect to the Non-Settled Administrative Expense Claims (defined below), the Plan.  Parties in interest shall have ten (10) calendar days from the date of the Notice of Imminent Effective Date to object.

16.    The Debtors shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date (the "**Confirmation Notice**"), upon (a) all parties listed in the creditor matrix maintained by Prime Clerk LLC, and (b) such

WEIL:\97226399\1\73217.0004

additional persons and entities as deemed appropriate by the Debtors, no later than five (5) business days after the Effective Date, or as soon as reasonably practicable thereafter. The Debtors shall cause the Confirmation Notice to be published in *The New York Times* within seven (7) business days after the Effective Date, or as soon as practicable thereafter.

**B.      Immediate Designation of the Litigation Designees and the Granting of Standing for Prosecution of the Jointly Asserted Causes of Action**

17.      Pursuant to sections 105(a), 363(b), 1103(c) and 1109(b) of the Bankruptcy Code, effective upon the entry of this Confirmation Order the Creditors' Committee shall be granted joint standing with the Debtors and is hereby authorized to investigate, commence, prosecute, settle and otherwise dispose of (i) the Specified Causes of Actions, (ii) other Preserved Causes of Action against the ESL Parties, (iii) all Claims and Causes of Action asserted in the pending Adversary Proceeding captioned *Sears Holdings Corp. v. Lampert*, Adv. Proc. No. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "**Adversary Proceeding**") and/or any other Claims or Causes of Action ancillary thereto, including, *inter alia*, additional Claims or Causes of Action related to the subject matter of the Adversary Proceeding (including Claims or Causes of Action asserted in an amended complaint and Claims and Causes of Action asserted in one or more separate proceedings), and (iv) Claims or Causes of Action against insurance carriers related to coverage for claims asserted in the Adversary Proceeding or a related proceeding (all of the Claims and Causes of Action addressed in this paragraph, collectively, the "**Jointly Asserted Causes of Action**") jointly with the Debtors for the benefit of the Debtors' Estates and creditors in accordance with the terms of the Plan with the full rights and privileges attendant thereto.

18.      The investigation, prosecution and/or settlement or other disposal of the Jointly Asserted Causes of Action shall be subject to the oversight of designees selected by the

WEIL:\97226399\1\73217.0004

Debtors and the Creditors' Committee (the "**Litigation Designees**").  Specifically, the Litigation Designees shall comprise (a) Patrick J. Bartels, (b) Eugene I. Davis, and (c) Raphael T. Wallander, as the Creditors' Committee's designees, and (x) Alan J. Carr and (y) William L. Transier, as the Debtors' designees, which designees shall become the initial members of the Liquidating Trust Board upon the Effective Date pursuant to Section 10.6(a) of the Plan.  Any Litigation Designee who succeeds an initial Creditors' Committee designee shall be considered a Creditors' Committee designee and any Litigation Designee who succeeds an initial Debtor designee shall be considered a Debtor designee.  For the avoidance of doubt, the Litigation Designees shall have all rights and entitlements to be afforded to the Liquidation Trust Board on the Effective Date of the Plan in respect of the Jointly Asserted Causes of Action, including, *inter alia*, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Jointly Asserted Causes of Action pursuant to the terms of the Liquidating Trust Agreement applicable to the Liquidating Trust Board (including, for the avoidance of doubt, section 6.5(c) of the Liquidating Trust Agreement), which terms are incorporated herein by reference and shall govern the acts, conduct and rights of the Litigation Designees prior to the Effective Date.

19.    The Litigation Designees will have the sole and exclusive right to propose any settlement of the Jointly Asserted Causes of Action in accordance with the terms of the Liquidating Trust Agreement; *provided* that any such settlement shall be subject to approval by this Court after notice and hearing.

20.    The authority of the Litigation Designees shall be effective immediately upon entry of this Confirmation Order and shall remain and continue in full force and effect until the Effective Date.  The service of the Litigation Designees shall be governed by the conditions

WEIL:\97226399\1\73217.0004

to be applicable to the members of the Liquidating Trust Board set forth in Section 6.5(c)(i)-(v) of the Liquidating Trust Agreement.

21.     Sections 6.5(e), 6.5(f), 6.5(g), 6.5(h), and 6.5(i) of the Liquidating Trust Agreement shall be applicable to the Litigation Designees and govern the operation of the Litigation Designees in the same manner they are intended to govern operation of the Liquidating Trust Board.

22.     In accordance with the terms of the Plan and the Liquidating Trust Agreement, Akin Gump Strauss Hauer & Feld LLP ("**Akin Gump**") shall be retained as primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute, and otherwise litigate the Jointly Asserted Causes of Action.  In addition, without further order of this Court, the Litigation Designees may retain such additional professionals or consultants (including attorneys, accountants, appraisers, financial advisors, expert witnesses or other parties determined by the Initial Litigation Designees to have qualifications necessary or desirable to assist in the investigation, prosecution and/or settlement of the Jointly Asserted Causes of Action) (collectively with Akin Gump, the "**Litigation Professionals**").  The Litigation Professionals shall be required to submit reasonably detailed invoices on a monthly basis to the Debtors, the Creditors' Committee, the U.S. Trustee and the Litigation Designees, including in such invoices a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of such person, plus an itemized statement of expenses. In the event of any dispute concerning the entitlement to, or the reasonableness of any compensation and/or expenses of any Litigation Professionals, the Litigation Designees and/or the Litigation Professionals may request that this Court resolve the dispute.  Subject to the approval of the Litigation Designees, the Debtors shall pay compensation for services rendered

13

or reimbursement of expenses incurred by the Litigation Professionals in accordance with the procedures approved by the Court pursuant to the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (ECF No. 796), other applicable orders of the Court, and the applicable provisions of the Bankruptcy Code.

23.    The protections to be granted to members of the Liquidating Trust Board and the Trust Professionals under Article VIII of the Liquidating Trust Agreement (Reliance, Liability, and Indemnification) shall be equally applicable to the Litigation Designees and the Litigation Professionals for actions taken or not taken by the Litigation Designees and the Litigation Professionals in their capacities as such with respect to their administration and pursuit of the Jointly Asserted Causes of Action.

24.    Pursuant to Federal Rule of Evidence 502(d), any attorney client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) (the "**Privileges**" protecting "**Privileged Information**") in the possession of the Debtors (including the Restructuring Subcommittee, any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors, and the Debtors' appointees on the Litigation Designees) or any of their employees, representatives, attorneys or advisors (collectively, the "**Debtor Privilege Parties**") may be shared with Akin Gump, the Creditors' Committee, the Litigation Designees appointed by the Creditors' Committee or any of their respective representatives, attorneys or advisors (collectively, the "**Creditor Privilege Parties**," and together with the Debtor Privilege Parties, the "**Privilege Parties**") on either or both a joint representation or common interest privilege basis without waiver of the relevant underlying privilege; similarly, any Privileged Information in possession of the Creditor Privilege Parties

14

may be shared with the Debtor Privilege Parties on either or both a joint representation or common interest privilege basis without waiver of the relevant underlying privilege; *provided*, *however*, that the ability of the Debtor Privilege Parties to share information protected by any Privilege, if any, held by the Related Party Transaction Subcommittee of the Audit Committee of the Sears Holdings Board of Directors and/or the Special Committee of the Sears Holdings Board of Directors created on or about April 28, 2018 shall be subject to later determination.

26. Subject to the limitations of paragraph 24 above, the Litigation Designees shall have the exclusive authority and sole discretion to maintain the Privileges and keep the privileged material confidential, or waive the Privileges and/or disclose and/or use in litigation of the Jointly Asserted Causes of Action, or any proceeding Privileged Information.

26. Subject to the limitations of paragraph 24 above, the Privilege Parties shall take all necessary steps to effectuate the sharing of such Privileges and to provide to the Litigation Designees without the necessity of a subpoena all information subject to a Privilege in their respective possession, custody, or control. The Litigation Designees are further expressly authorized to formally or informally request or subpoena documents, testimony, or other information that would constitute Privileged Information from any persons, including attorneys, professionals, consultants, and experts, and no such person may object to the production to the Litigation Designees of such Privileged Information on the basis of a Privilege. Unless and until the Litigation Designees makes a determination to waive any Privilege, Privileged Information shall be produced solely to the Litigation Designees.

27. If a Privilege Party, the Litigation Designees, any of their respective employees, professionals, or representatives or any other person inadvertently produces or discloses Privileged Information to any third party, such production shall not be deemed to

15

destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Privileged Information. In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Litigation Designees of the production and shall demand of all recipients of the inadvertently disclosed Privileged Information that they return or confirm the destruction of such materials.

28.    To the maximum extent permitted by applicable law, the Litigation Designees will not have or incur, and shall be released and exculpated from, any claim, obligation, suit, judgment, damages, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Confirmation Date, in each Litigation Designee's limited capacity as such, in connection with or arising out of its responsibilities set forth herein, except for acts or omissions that constitute fraud, gross negligence, criminal misconduct or willful misconduct as determined by a Final Order.  Further, the Litigation Designees will be entitled to applicable insurance coverage provided and paid for by the Debtors.

## C.    The Liquidating Trust

29.    The formation, rights, powers, duties, structure, obligations and other matters pertaining to the Liquidating Trust shall be governed by Article X of the Plan and the Liquidating Trust Agreement.

30.    On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trust Assets shall be transferred by the Debtors (and deemed transferred) to the Liquidating Trust free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Liquidating Trust Beneficiaries, without the need for any Entity to take any further action or obtain any approval.  Thereupon, the Debtors shall have no interest in the Liquidating Trust Assets or the Liquidating Trust.  On the Effective Date,

WEIL:\97226399\1\73217.0004

the Liquidating Trust shall be authorized as the representative of the Estates to investigate, sue, settle and otherwise administer the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan.

31.    Upon the Effective Date, the Liquidating Trust is authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable or appropriate to implement the issuance of the Liquidating Trust Interests in accordance with the Plan and the Liquidating Trust Agreement, and to execute and deliver all agreements, documents, securities, instruments and certificates relating thereto.  All Liquidating Trust Interests issued by the Liquidating Trust pursuant to the provisions of the Plan and the Liquidating Trust Agreement shall be deemed to be duly authorized, validly issued, fully paid and non-assessable.

32.    On the Effective Date, pursuant to and as further provided in the Plan and the Liquidating Trust Agreement, all of the Debtors' respective rights, titles and interests in any Privileges (as defined in the Liquidating Trust Agreement) related in any way to the Liquidating Trust Assets and the purpose of the Liquidating Trust shall be treated as provided in the Plan and the Liquidating Trust Agreement.

33.    The Liquidating Trustee may, with the approval of, or at the direction of, the Liquidating Trust Board, invest Cash (including any earnings thereon or proceeds therefrom); provided, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings or other controlling authorities.  All monies and other assets received by the Liquidating Trustee as Liquidating Trust Assets (including the proceeds thereof as a result of investment in accordance with Section 6.9 of the

17

Liquidating Trust Agreement) shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Liquidating Trust Beneficiaries, and shall not be segregated from other Liquidating Trust Assets, unless and to the extent required by the Plan.

**D.    Certain Executory Contract and Unexpired Nonresidential Leases Matters**

34.    Notwithstanding anything to the contrary in the Plan, the Definitive Documents, the Plan Supplement, any other documents related to any of the foregoing, or this Confirmation Order, nothing shall modify the rights, if any, of any holder of Claims or any current or former party to an executory contract, whether currently or previously executory, or lease of non-residential real property to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease(s) with the Debtors, or any successors to the Debtors, under the Plan; (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors, the Liquidating Trust, or any successors of the Debtors.

35.    In accordance with the lease rejection notice filed on July 12, 2019 (ECF No. 4535), and the *Order Approving the Rejection of Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* entered on August 14, 2019 (ECF No. 4836), notwithstanding anything to the contrary in the Plan, the leases for stores located in Pembroke Pines, Florida, Staten Island, New York, and Willowbrook, Wayne, New Jersey (Store Nos. 1775, 1624, and 1434, respectively) will be deemed rejected as of September 30, 2019, and the lease for the store located in Northridge, California (Store No. 1508) will be deemed rejected as of January 31, 2020.

18

36.    In accordance with the so-ordered stipulations extending the time under section 365(d)(4) of the Bankruptcy Code to assume and assign the leases pertaining to Store Nos. 3667, 8290, 1018, and 3127 (the "**Leases**"), entered on September 5, August 30, August 5, and September 5, 2019 respectively, (ECF Nos. 5072, 5038, 4747, and 5068), and the orders granting such relief (ECF Nos. 4580, 4581, and 4687), notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Leases shall not be deemed rejected as of the Effective Date.

37.    Nothing in the Plan alters any of the terms and provisions of the Construction, Operation, and Reciprocal Easement Agreement, recorded on April 2, 1974, and the Supplemental Agreement for the Hilltop Shopping Center, as referenced in the *LBG Hilltop LLC's Objection to Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliates; and Declaration of Carol Chow*, filed at ECF No. 4680.

38.    The Debtors have agreed to transfer the property that is the subject of the ongoing adversary proceeding captioned Transform Holdco LLC v. Sears Holdings Corporation, 19-08288 (the "**Fort Lauderdale Action**") seeking the transfer of deeds related to property in Fort Lauderdale, Florida, and the property interests located in Glendale, CA (Store No. 1088) which is the subject of similar issues to those set forth in the Fort Lauderdale Action (collectively, the "**Agreed Transferrable Property Interests**").  To the extent transfers of the Agreed Transferrable Property Interests to Transform Holdco LLC or its affiliates are not completed by the Effective Date, any transfer of such Agreed Transferrable Property Interests to the Liquidating Trust shall be subject to any and all rights asserted on such properties by Transform Holdco LLC or its affiliates.  In addition, the parties are in discussions relating to the transfer of additional parcels of real property relating the following locations: Bishop, CA (Store

19

No. 7756), Hialeah, FL (Store No. 31930), Memphis, TN (Store No. 30934), Palmdale, CA (Store No. 1068), Livonia, MI (Store No. 8830), Cook, IL (Store No. 1570), Appleton, WI (Store No. 2092), Spokane County, WA (Store No. 1029), Oakdale, CA (Store No. 3842), Atascadero, CA (Store No. 7619), Marlborough, MA (Store No. 1104), Springfield, MA (Store No. 1093), Palmer, MA (Store No. 9255), Holyoke, MA (Store No. 3433), and Shelby City, TN (Store No. 30934), Hackensack, NJ (Store No. 1094/6854), and South Lake Tahoe, CA (Store No. 9153) (collectively, the "**Potentially Transferrable Property Interests**"). The Asset Purchase Agreement provided for the transfer to Transform Holdco LLC or its affiliates of (x) the Acquired Foreign Assets (as defined in the Asset Purchase Agreement) pursuant to section 2.13 of the Asset Purchase Agreement and (y) the Acquired Intellectual Property (as defined in the Asset Purchase Agreement) pursuant to section 2.1(e).  The parties are working to finalize the transfer of certain Acquired Foreign Assets comprising (1) minority interests in certain Mexican entities held by Sears Mexico Holdings Corp., and (2) equity interests in the Debtors' non-Debtor Indian subsidiaries (1 and 2, collectively, the "**Specified Foreign Assets**") to Transform Holdco LLC or its affiliates, in accordance with the Asset Purchase Agreement.  Additionally, with respect to certain items of foreign Acquired Intellectual Property, certain local jurisdictions require filing of short-form ownership transfer documentation in their local intellectual property office to put in the record and perfect the transfer of ownership, which filing has not yet been completed.  Each of the parties' rights with respect to the aforementioned actions, properties and foreign assets are hereby fully preserved, including, without limitation that the transfer of each of (x) the Potentially Transferrable Property Interests, (y) the Acquired Intellectual Property (to the extent any right, title or interest therein is currently held by Debtors or their affiliates due to any incomplete filing of the short forms described above) and (z) the Specified Foreign Assets to the

WEIL:\97226399\1\73217.0004

Liquidating Trust shall be subject to any and all rights (including exclusive ownership rights pursuant to the Asset Purchase Agreement) that have been or may be asserted on such property interests or foreign assets, as applicable (or, in the case of Acquired Intellectual Property, that are held), by Transform Holdco LLC or its affiliates.

**E.      Certain Governmental Unit Matters**

39.     As to any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code), nothing in the Plan or this Confirmation Order shall limit or expand the scope of discharge, release or injunction to which the Debtors, their Estates, or the Liquidating Trust are entitled to under the Bankruptcy Code, if any.   The discharge, release, and injunction provisions contained in the Plan and this Confirmation Order are not intended and shall not be construed to bar any Governmental Unit from, subsequent to this Confirmation Order, pursuing any police or regulatory action.

40.     Accordingly, notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, nothing in the Plan or this Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to any Governmental Unit that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any Claim of any Governmental Unit arising on or after the Confirmation Date; (3) any valid right of setoff or recoupment of any Governmental Unit against any of the Debtors; or (4) any liability of the Debtors, their Estates, or the Liquidating Trust under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the Confirmation Date.   Nor shall anything in this Confirmation Order or the Plan:   (i) enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence; or (ii) divest any

WEIL:\97226399\1\73217.0004

court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by any Governmental Unit are discharged or otherwise barred by this Confirmation Order, the Plan, or the Bankruptcy Code.

41.    Moreover, nothing in this Confirmation Order or the Plan shall release or exculpate any non-debtor, including any Released Parties and/or Exculpated Parties, from any liability to any Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Released Parties and/or Exculpated Parties, nor shall anything in this Confirmation Order or the Plan enjoin any Governmental Unit from bringing any claim, suit, action or other proceeding against any non-debtor for any liability whatsoever; *provided*, *however*, that the foregoing sentence shall not (x) limit the scope of discharge, if any, granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code, or (y) diminish the scope of any exculpation to which any party is entitled under section 1125(e) of the Bankruptcy Code.

42.    Nothing contained in the Plan or this Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtors, their Estates, or the Liquidating Trust, nor shall the Plan or this Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of the Plan, nor shall anything in the Plan or this Confirmation Order be deemed to have conferred jurisdiction upon this Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

43.    Notwithstanding anything contained in the Plan, this Confirmation Order, and any implementing Plan documents, nothing shall (i) preclude the United States Securities and Exchange Commission (the "**SEC**") from enforcing its police or regulatory powers; or

22

(ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

### F.    Toggle Plan Reservation of Rights

44.    In the event this Court does not approve the Plan Settlement, the Debtors or the Liquidating Trustee, as applicable, shall provide notice to all parties in interest not less than thirty (30) days prior to allowing or making any distribution on account of any postpetition Intercompany Claims, and all parties rights are reserved with respect to (i) setoff of postpetition Intercompany Claims and (ii) the amount and allowance of all prepetition and postpetition Intercompany Claims.

### G.    Texas Taxing Authorities

45.    To the extent that the Texas Taxing Authorities[4] are entitled to interest under section 506(b) of the Bankruptcy Code, the Texas Taxing Authorities shall receive interest from the Commencement Date through the Effective Date, and from the Effective Date through payment in full at the state statutory rate, pursuant to sections 506(b), 511, and 1129 of the Bankruptcy Code.

### H.    Village of Hoffman Estates Reservation of Rights

46.    Notwithstanding Section 10.3 of the Plan or anything else to the contrary in the Plan or Plan Supplement, including the Liquidating Trust Agreement, the Village of Hoffman Estates Reserves the right to dispute that any property that the Village of Hoffman

---

[4]    The "**Texas Taxing Authorities**" are Anderson County, Bastrop County, Bell TAD, Bosque County, Bowie CAD, Brazos County, Brown CAD, Burnet CAD, Cherokee County, Cherokee CAD, City of Waco, *et al.*, Comal County, Coryell County, Denton County, Erath County, Guadalupe County, Harrison CAD, Harrison County, Hays County, Henderson County, Jasper County Tax Units, Mexia I.S.D., Midland CAD, Taylor CAD, Terry CAD, Wharton County, and Williamson County.

WEIL:\97226399\1\73217.0004

Estates has jurisdiction over does not benefit from section 1146(a) of the Bankruptcy Code and the Debtors or the Liquidating Trust, as applicable, reserves the right to dispute the same.

**I.       Team Worldwide Reservation of Rights**

47.    Notwithstanding anything else herein, nothing in the Plan or this Confirmation Order shall be deemed or construed to impact, impair, affect, determine, release, waive, modify, limit or expand: (i) the terms and conditions of any supply agreement (collectively, the "**Supply Agreements**") between a party (an "**Indemnifying Party**") and a Debtor containing a provision or clause that purports to create an obligation of the Indemnifying Party to indemnify, defend against, reimburse, fund, or otherwise be responsible for any liabilities, damages, losses, or costs associated with any potential claims, suits, actions, or other proceedings seeking judgment against the Debtor or its affiliates (the "**Indemnity Obligations**"); (ii) any of the rights, remedies, defenses to coverage and other defenses of any party under or in respect of any Supply Agreements; (iii) subject to the proviso set forth in the next paragraph, any claims, actions, rights to payment or other similar claims held by Team Worldwide Corporation ("**Team Worldwide**") against any Debtor if covered by the Indemnity Obligations (the "**Covered Claims**"), and (iv) any claims, actions, rights to payment or other similar claims held by Team Worldwide against the Buyer, as a result of post-closing infringement claims. All such rights, remedies, and defenses are expressly reserved and preserved.

48.    Notwithstanding anything in the Plan or this Confirmation Order, Team Worldwide is authorized to pursue, in any court of competent jurisdiction, a determination of liability (the "**Infringement Liability**") of the Covered Claims against the Debtors to final judgment and to enforce any resulting judgment against the Indemnifying Parties (the "**Coverage Lawsuit**"); provided, however, that Team Worldwide shall not pursue payment of any Covered

24

Claims from the Debtors or their estates or the Liquidating Trust and shall waive collection of any and all amounts owed to Team Worldwide not satisfied by any Indemnifying Party resulting from all claims filed against the Debtors relating thereto.

49.     Following the commencement of the Coverage Lawsuit, the Debtors and/or the Liquidating Trustee shall provide notice to the Indemnifying Parties of the Covered Claims and take such further action reasonably required under the Supply Agreements to have the Indemnifying Parties perform their Indemnity Obligations; provided, however, that (i) neither the Debtors nor the Liquidating Trust  shall be obligated to pay or be liable for any out-of-pocket costs or expenses in connection with such action, and/or (ii) neither the Debtors nor the Liquidating Trust shall be obligated to participate in the Coverage Lawsuit.  For the avoidance of doubt, and subject in all respects to (i) and (ii) in the preceding sentence, the Debtors or the Liquidation Trust, as applicable, may be named as a nominal defendant in the Coverage Lawsuit.

**J.      233 S. Wacker, LLC**

50.     Except as provided by the Stipulation, Agreement, and Order Granting Limited Relief from the Automatic Stay (233 S. Wacker, LLC) (ECF No. 2849), notwithstanding any provision of the Plan or this Confirmation Order to the contrary, 233 S. Wacker, LLC is permitted to continue to assert, prosecute, litigate, liquidate, and/or settle its counterclaim and its claims against the Debtors, their estates, and any successors thereto in Case No. 2016-CH-10308 pending in the Circuit Court of Cook County, Illinois, Chancery Division and reserves all rights in connection with such proceeding and any payment obligated to be made in connection therewith.  For the avoidance of doubt, the Debtors, their estates and any successor in interest, including, without limitation, the Liquidating Trust, reserve all rights with respect to any claims

WEIL:\97226399\1\73217.0004

or counterclaims asserted in connection with the action referenced in the preceding sentence and any and all obligations in connection therewith.

### K.    Administrative Expense Claims

51.    Any motion for allowance or payment of an Administrative Expense Claim that is pending or filed after the date of the entry of this Confirmation Order (i) shall be adjourned until a date as determined by the Debtors (in consultation with the Creditors' Committee) or the Liquidating Trust (as applicable) and in consultation with the applicable claimant and subject to this Court's availability, and (ii) shall be treated as a proof of an Administrative Expense Claim.  Any discovery requests in connection with any Administrative Expense Claim shall be adjourned indefinitely, unless the Debtors have objected to the allowance of such Administrative Expense Claim.  Notwithstanding anything in the Bar Date Order, any scheduled or requested hearings pursuant to the 503(b)(9) Claim Procedures (as defined in the Bar Date Order) are hereby cancelled.

### L.    Administrative Expense Claims Consent Program

52.    The compromise and settlement of Administrative Expense Claims (as defined in the Plan, including 503(b)(1) and 503(b)(9) Claims, but excluding any amounts paid by or to be paid by Transform on account thereof -- including any amounts that otherwise would have been 503(b)(9) Claims but were paid as part of cure obligations in connection with assumed and assigned contracts) and the treatment thereof (the "**Administrative Expense Claims Consent Program**") by and amongst Debtors and their estates, the Creditors' Committee, a certain ad hoc group of holders of Administrative Expense Claims (the "**Ad Hoc Vendor Group**") (together the "**Administrative Expense Claims Consent Program Parties**"), as described herein, is hereby approved:

26

a.    ***Settled Administrative Expense Claims Recovery.***  Pursuant to the terms of the Administrative Expense Claims Consent Program, holders of Settled Administrative Expense Claims (defined below) shall receive recoveries from Net Proceeds of Total Assets other than the Litigation Funding and the Cash Reserve (as more fully set forth herein) in the following manner and in the following order of priority until such time as (a) the holders of Opt-In Settled Admin Claims receive a recovery of 75% of the applicable Allowed Administrative Expense Claims on account of Opt-In Settled Admin Claims and (b) the holders of Non Opt-Out Settled Admin Claims receive a recovery of 80% of the applicable Allowed Administrative Expense Claim on account of Non Opt-Out Settled Admin Claims (together, the "**Settled Administrative Expense Claims Recovery**"):

(1)    ***First***, each holder of an Allowed Administrative Expense Claim against the Debtors that ***affirmatively opts-in*** (the "**Opt-In Settled Admin Claims**")[5] to the Administrative Expense Claims Consent Program shall receive: (i) its pro rata share of the Initial Distribution[6] capped at 75% of the Allowed Administrative Expense Claim (the percentage recovery, the "**Initial Recovery**"); provided, that, the Initial Distribution shall only be available to holders of Opt-In Settled Admin Claims who consensually agree with the Debtors and the Creditors' Committee to the Allowed amount of the Opt-In Settled Admin Claims; provided, further, that, holders who do not agree with the Debtors and the Creditors' Committee on the Allowed amount of the Opt-In Settled Admin Claim shall be deemed to hold a Non Opt-Out Settled Admin Claim; and (ii) consensual reconciliation of the Allowed amount of Opt-In Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the date of receipt of the Opt-In Ballot; provided, that, to the extent the Debtors, the Creditors' Committee, and the holder of the Opt-In Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be

---

[5]    For the avoidance of doubt, holders of Administrative Expense Claims who execute the Administrative Expense Claims Consent Program Term Sheet, filed at ECF No. 5292, shall be deemed holders of Opt-In Settled Admin Claims.

[6]    "**Initial Distribution**" shall mean Distributions made from a cash pool of $21 million inclusive of the Carve-Out Contribution ("**Initial Cash Pool**") to be held in the Segregated Account and made available on or about December 1, 2019 (the "**Initial Distribution Date**") for holders of Opt-In Settled Admin Claims.  Within three (3) business days following entry of the Confirmation Order, $16 million inclusive of the Carve-Out Contribution shall be funded by the Debtors into the Initial Cash Pool, with an additional $5 million funded by the Debtors into the Initial Cash Pool on or before the Initial Distribution Date.  The Cash Pool shall be placed in the Segregated Account and used solely for the purpose of funding the Settled Administrative Expense Claims as provided for in the Administrative Expense Claims Consent Program Term Sheet.

WEIL:\97226399\1\73217.0004

subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of an Opt-In Settled Admin Claim; provided, further, that, for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis.

(2)    After the Initial Distribution, a Second Distribution (as defined below) to Settled Administrative Expense Claims shall not occur until each of the following conditions is met: (i) a total of $25 million has been funded into the Litigation Funding Account in the aggregate,[7] (ii) there has been a funding of $10 million in the aggregate in the Cash Reserve Account, and (iii) the Segregated Account has an additional $10 million in cash (together, the "**Minimum Conditions**").[8]

(3)    *Second*, once the Minimum Conditions are satisfied, each holder of an Allowed Administrative Expense Claim against the Debtors that *does not opt-out* (the "**Non Opt-Out Settled Admin Claims**," together with the Opt-In Settled Admin Claims, shall be considered "**Settled Administrative Expense Claims**") of the Administrative Expense Claims Consent Program shall then receive (i) its pro rata share of the Second Distribution[9] capped at 80% of the Allowed Administrative Expense Claim; and (ii) consensual reconciliation of the Allowed amount of Non Opt-Out Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the Opt-In/Opt-Out Deadline; provided, that, to the extent the Debtors, the Creditors' Committee, and the holder of the Non Opt-Out Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the

---

[7]    For the avoidance of doubt, following the Effective Date, any additional funding for the Jointly Asserted Causes of Action and/or other Preserved Causes of Action shall be determined by the Liquidating Trust Board in accordance with the terms of the Plan and the Liquidating Trust Agreement.

[8]    For the avoidance of doubt, following the Initial Distribution, it shall be a requirement that the Cash Reserve Account have $10 million in the aggregate in available cash and the Segregated Account has at least an additional $10 million in cash prior to any further distributions on account of Settled Administrative Expense Claims.

[9]    "**Second Distribution**" shall mean Distributions made to holders of Non Opt-Out Settled Admin Claims up to a percentage recovery equal to the Initial Recovery; provided, that, for the avoidance of doubt, there shall be no Second Distribution until the Cash Reserve Account has been funded with the $10 million in the aggregate. For the avoidance of doubt, the Litigation Funding Account shall in no event be funded by more than $25 million up to and including the Effective Date.

28

Creditors' Committee, and the applicable holder of a Non Opt-Out Settled Admin Claim; provided, further, that, for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis.

(4)    *Third*, after the Second Distribution, all Net Proceeds of Total Assets other than the Litigation Funding and the Cash Reserve (as more fully set forth herein) shall be made available for Distributions on account of Settled Administrative Expense Claims up to the Settled Administrative Expense Claims Recovery (as applicable) of the consensually agreed-upon Allowed Settled Administrative Expense Claim ("**Settled Administrative Expense Claims Payout**").[10]

(5)    *Fourth*, after the Settled Administrative Expense Claims Payout and upon the Effective Date of the Plan, holders of Administrative Expense Claims who opt-out of the Settlement Agreement (the "**Non-Settled Administrative Expense Claims**") shall receive Distributions on account of their Non-Settled Administrative Expense Claims to the extent Allowed; provided, that, for the avoidance of doubt, (i) for all Settled Administrative Expense Claims (unless otherwise agreed among the Debtors, the Creditors' Committee and the holder of such Settled Administrative Expense Claim) and (ii) for all Non-Settled Administrative Expense Claims, the Debtors and/or the Liquidating Trust (a) shall prosecute all Claims and Causes of Action arising under chapter 5 to the fullest extent and (b) reserve all rights to object to any and all Non-Settled Administrative Expense Claims on any basis.

(6)    *Fifth*, upon the occurrence of the Effective Date and after the (i) Settled Administrative Expense Claims Payout, and (ii) Distributions on account of Allowed Non-Settled Administrative Expense Claims, all Net Proceeds of Total Assets shall be governed by the terms of the Plan and the Liquidating Trust Agreement.

(7)    Notwithstanding anything to the contrary contained herein, (a) prior to the Effective Date, and once the Cash Reserve Account has been funded with $10 million in the aggregate,

---

[10]    Additional distributions shall be made to holders of Settled Administrative Expense Claims at all times when cash on hand (not including the Litigation Funding and the Cash Reserve) is $10 million, or may be made earlier if so determined by the Pre-Effective Date Committee (as defined herein), and until such times as these claims have been paid in full (up to the Settled Administrative Expense Claims Recovery) pursuant to the terms of the Administrative Expense Consent Program Term Sheet. For the avoidance of doubt, no such additional distributions shall be made unless and until $25 million in the aggregate has been set aside in the Litigation Funding Account and $10 million in the aggregate has been set aside in the Cash Reserve.

WEIL:\97226399\1\73217.0004

the Debtors' Restructuring Committee, together with the Creditors' Committee and Admin Representative (as hereinafter defined) (collectively, the "**Pre-Effective Date Committee**"), and (b) after the Effective Date, the Liquidating Trust Board shall commence a telephonic meeting no less than every thirty (30) days to review, among other things, the status of the reconciliation of Administrative Expense Claims, as well as the latest budget and variance reporting of the Debtors; provided, that, in the interim, the Debtors shall provide, among other things, weekly budget and variance reporting, as well as an accounting of the Total Assets and any Net Proceeds derived therefrom to the Pre-Effective Date Committee on a confidential basis. After the Initial Distribution Date, to the extent the Pre-Effective Date Committee deems it necessary to fund the Cash Reserve Account with additional funds beyond the initial $10 million in the aggregate, and prior to additional Distributions being made to holders of Allowed Administrative Expense Claims, the Cash Reserve Account shall be funded by the Debtors in an amount agreed to by the Pre-Effective Date Committee; provided, that, should the Debtors' Restructuring Committee, together with the Creditors' Committee and Admin Representative, not agree to the amount of sufficient operating cash (to be funded into the Cash Reserve Account), after taking into account an amount to maintain the legal and fiduciary obligations of the Debtors, or Estate representatives, as applicable, any of the Debtors' Restructuring Committee, Creditors' Committee, or the Admin Representative may seek assistance (including on an emergency basis) from the Bankruptcy Court for a prompt resolution of the issue; provided, however, that, in no event, shall the Debtors' Restructuring Committee or the Creditors' Committee request or seek funding in excess of an amount that would cause the Cash Reserve Account to exceed (at any time) more than $10 million; provided, further, that, should the Debtors' Restructuring Committee, Creditors' Committee, or the Admin Representative seek Bankruptcy Court intervention as set forth above, no further funding of the Cash Reserve Account from Net Proceeds from Total Assets shall occur unless (i) all parties agree to a partial funding, or (ii) the Bankruptcy Court enters an order allowing for further funding.

(8)    For the avoidance of doubt, Distributions in respect of a Settled Administrative Expense Claim shall not exceed the Settled Administrative Expense Claims Recovery; provided, that, in no scenario shall percentage recoveries on account of Allowed General Unsecured Claims exceed percentage recoveries on account of Settled Administrative Expense Claims.

b.    ***Administrative Expense Claims Representative***. Pursuant to the Administrative Expense Claims Consent Program and upon entry

WEIL:\97226399\1\73217.0004

of the Confirmation Order, a representative of holders of Administrative Expense Claims (the "**Admin Representative**") (selected solely by the holders of Administrative Expense Claims, including the Ad Hoc Vendor Group) shall serve alongside the Debtors' Restructuring Committee and the Creditors' Committee to work through 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions and to ensure an expedient and fair process to claims resolution and emergence (the "**Scope of Mandate**").  The Admin Representative shall also serve on the Pre-Effective Date Committee as set forth above with such Scope of Mandate, and will be entitled to applicable insurance coverage provided and paid for by the Debtors.  To the maximum extent permitted by applicable law, the Admin Representative will not have or incur, and shall be released and exculpated from any claim, obligation, suit, judgment, damages, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the date the Admin Representative joins the Debtors' Restructuring Committee or Pre-Effective Date Committee, as applicable, in its limited capacity, in connection with or arising out of its Scope of Mandate, solely to the extent occurring in its capacity as the Admin Representative, except for acts or omissions of the Admin Representative that constitute fraud, gross negligence, criminal misconduct or willful misconduct as determined by a Final Order. The Admin Representative shall also receive reasonable compensation as determined by the Debtors, Creditors' Committee, and the Ad Hoc Vendor Group.

c.   ***Funding from the Carve-Out Account.***  Within three (3) business days of entry of the Confirmation Order, the Debtors shall transfer a minimum of $3 million from the Carve-Out Account (the "**Carve-Out Contribution**") into a separately segregated account ("**Segregated Account**") to be used solely on account of the Initial Distribution (as defined below) and subsequent distributions to holders of Settled Administrative Expense Claims.

d.   ***Litigation Funding / Cash Reserve.***  Within three (3) business days of entry of the Confirmation Order and contemporaneously with funding of the Segregated Account and the Initial Cash Pool (each as defined below), the Debtors shall have set aside (i) $15 million in a segregated account (the "**Litigation Funding Account**") for the funding of litigation associated with the Jointly Asserted Causes of Action (as defined in the proposed Confirmation Order) (the "**Litigation Funding**") and (ii) $5 million of additional cash in a segregated account the ("**Cash Reserve Account**") for post-Confirmation estate costs including, without limitation, U.S. Trustee Fees, operating costs of the Debtors, and additional professional fees of the Debtors' and the Creditors' Committee not included in the Carve-Out Account as of the entry of the Confirmation Order (the "**Cash Reserve**").

e.   ***Agreements of the Holders of Settled Administrative Expense Claims***.  Holders of Settled Administrative Expense Claims shall at no further cost (severally and not jointly): (1) use good faith efforts

WEIL:\97226399\1\73217.0004

to implement the Administrative Expense Claims Consent Program; (2) support and take all commercially reasonable actions necessary or reasonably requested by the Debtors to facilitate confirmation of the Plan, including withdrawing any applicable objections and any other pleading inconsistent with the Administrative Expense Claims Consent Program and/or confirmation of the Plan; provided, that, to the extent the Bankruptcy Court does not approve the Administrative Expense Claims Consent Program, the Debtors shall cause the confirmation hearing to be adjourned to a date and time that is reasonably acceptable to the Debtors, Creditors' Committee, and counsel for the Ad Hoc Vendor Group, and the rights of all Settlement Parties are reserved, including the rights of the non-Debtor Settlement Parties to contest Confirmation; (3) support the confirmation of the Plan and not object to, delay, interfere, impede, or take any other action to delay, interfere, or impede, directly or indirectly, with the confirmation of the Plan; provided, that, the same proviso in paragraph 2 shall apply; (4) vote all Claims to Accept the Plan if applicable; (5) not use, assign, convey, grant, transfer, hypothecate, or otherwise dispose of, in whole or in part, any Settled Administrative Expense Claims, provided that, once the Confirmation Order is entered, holders of Settled Administrative Expense Claim may transfer Settled Administrative Expense Claims (i) to any holder of Settled Administrative Expense Claims or (ii) to a party that delivers a joinder, in the form attached hereto as Exhibit 1, to the Debtors, Weil Gotshal & Manges LLP and Akin Gump Strauss Hauer & Feld LLP (in accordance with the notice provisions in the Plan) at least two (2) business days prior to the settlement of the relevant transfer; with respect to any transfers effectuated in accordance with clause (ii) above, such transferee shall be deemed a holder of a Settled Administrative Expense Claim; for the avoidance of doubt, any Administrative Expense Claims purchased by a holder of Settled Administrative Expense Claims shall be deemed subject to the terms of the Administrative Expense Claims Consent Program; and (6) not object to or opt out of any release included in the Administrative Expense Claims Consent Program.

    f.    ***Releases***.  The Administrative Expense Claims Consent Program shall include certain consensual releases of Claims and Causes of Action amongst the Settlement Parties; for the avoidance of doubt, the Administrative Expense Claims Consent Program shall not release any Specified Causes of Action.

53.    The Opt-In/Opt-Out Procedures, as described below, are approved.  The Opt-In/Opt-Out Procedures may be modified with the written consent (such consent not to unreasonably be withheld) of all of the Administrative Expense Claims Consent Program Parties to facilitate the opt-in and opt-out processes.

WEIL:\97226399\1\73217.0004

      a.      Upon entry of the Order, Prime Clerk LLC will: send both an (i) opt-in ballot (the "**Opt-In Ballot**") and (ii) opt-out ballot (the "**Opt-Out Ballot**") to (x) all parties that have filed an Administrative Expense Claim or filed an application for administrative expense in the Debtors' Chapter 11 Cases and (y) any party that was exempted from filing an Administrative Expense Claim but the Debtors are aware of such Claim; the Opt-In Ballot and Opt-Out Ballot will be sent to the address provided on such Administrative Expense Claim form or application for administrative expense or, if no such form exists, the address on the Debtors' books and records;

      b.      Upon entry of the Confirmation Order, Prime Clerk LLC shall cause the notice of the Administrative Expense Claims Consent Program (the "**Administrative Expense Claims Consent Program Notice**"), substantially in the form attached hereto as **Exhibit B**, to be published in *The New York Times*; and

            Unless otherwise agreed to in writing (including e-mail) by the Administrative Expense Claims Consent Program Parties, holders of Administrative Expense Claims will have 33 days from the date of service (the "**Opt-In/Opt-Out Deadline**") to submit an Opt-In Ballot or Opt-Out Ballot in either electronic or paper form, in each case following the procedures set forth on the Opt-In Ballot or Opt-Out Ballot, as applicable (together, the "**Opt-In/Opt-Out Procedures**").

54.      The Opt-In Ballot and the Opt-Out Ballot, substantially in the form attached hereto as **Exhibit C**, are hereby approved. The Opt-Out Ballot clearly states that any party that exercises its right to opt out will not be entitled to any recovery from the Administrative Expense Claims Consent Program and that any party that does not opt out of the Administrative Expense Claims Consent Program will be bound by its terms, including to support a Plan.

55.      To the extent a holder of an Allowed Administrative Expense Claim **does not properly opt out** of the Administrative Expense Claims Consent Program, such holder shall be deemed to have agreed (a) to be bound by the terms of the Administrative Expense Claims Consent Program, (b) to support the Plan, and (c) that such holder's acceptance of and consent to the Administrative Expense Claims Consent Program will be deemed consent to the Plan and

33

acceptance of the treatment under the Plan in satisfaction of section 1129(a)(9) of the Bankruptcy Code.

56.    The terms of the Administrative Expense Claims Consent Program, including all exhibits thereto, and all other relevant and necessary documents shall be effective immediately and binding on all parties in interest upon the entry of this Confirmation Order.  The failure to specifically include or refer to any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such document; it being the intention of this Court that all such documents are approved in their entirety.

57.    For the avoidance of doubt, (x) the funds in the Litigation Funding Account and the Cash Reserve Account shall remain property of the Estates and are not being held in trust, and, after the Effective Date, Liquidating Trust Assets; provided that, use of such funds shall be subject to the Plan and/or Liquidating Trust Agreement and (y) the funds in the Cash Reserve Account shall be subject to the Administrative Expense Claims Consent Program.

58.    Any Distributions made on account of Settled Administrative Expense Claims shall not be subject to disgorgement, including without limitation, upon any conversion or dismissal of the Chapter 11 Cases.  Further, upon entry of this Confirmation Order, all Settled Administrative Expense Claims shall be Allowed against the Debtors in these Chapter 11 Cases on a consolidated basis, or upon any conversion or dismissal of the Chapter 11 Cases.

## M.    Insurance Policy Matters

59.    For the avoidance of doubt, pursuant to Section 13.4 of the Plan, notwithstanding anything to the contrary in the Plan, the Definitive Documents, the Plan Supplement, any other documents related to any of the foregoing, and this Confirmation Order, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in the

34

Plan, to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit former directors and officers of Sears Canada to make claims under any D&O Policy and any insurers to make related payments under such policies with respect to such claims.

60.    For the avoidance of doubt, Insurance Contracts assumed by the Debtors and assigned to Transform as authorized by order of the Bankruptcy Court pursuant to the Asset Purchase Agreement are not subject to section 13.4 of the Plan.

**N.    Feasibility and Carve-Out**

61.    For the reasons stated by the Court on the record of the Confirmation Hearing, the Court finds that the Plan is feasible and satisfies section 1129(a)(11) of the Bankruptcy Code.  In connection with this finding, Professional Persons (as defined in the DIP Order) have voluntarily agreed to set aside $9 million from the Carve-Out Account to the Wind Down Account, which shall become the property of the Estates (the "**Voluntary Carve-Out Contribution**").  To the extent the Carve-Out is insufficient to pay Allowed Professional Fees of Professional Persons at the time of consideration of the final fee applications in this matter, the Voluntary Carve-Out Contribution shall be applied on a pro rata basis to all Professional Persons, determined by calculating each Professional Person's unpaid fees and expenses as of the Confirmation Date, as compared to all unpaid fees and expenses of all Professional Persons.

62.    Except as otherwise provided in Paragraph **Error! Reference source not found.** above, the continued payment of Allowed Professional Fees from the Carve-Out Account in accordance with the DIP Order and the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (ECF No. 796) is hereby approved.  Any and all objections to confirmation of the Plan on the basis of the DIP Order or the Carve-Out provisions are expressly overruled, and the Carve-Out contained in the DIP Order

35

is in full force and effect as of the date hereof and shall remain in full force and effect until the

Effective Date of the Plan.

**O.      Modifications to the Plan and Liquidating Trust Agreement**

63.      The following language in the Plan and the Liquidating Trust Agreement

are hereby stricken:

Section 11.6 of the Plan:

"*Disbursing Agent.*

The Liquidating Trustee shall have the authority, with the approval and/or at the direction of the Liquidating Trust Board, to enter into agreements with one or more Disbursing Agents to facilitate the distribution required under the Plan, the Confirmation Order and the Liquidating Trust Agreement.  The Liquidating Trustee, subject to the approval and/or at the direction of the Liquidating Trust Board, may pay to the Disbursing Agent all reasonable and documented fees and expenses of the Disbursing Agent without the need for other approvals, authorizations, actions or consents.  For the avoidance of doubt, the reasonable and documented fees of the Disbursing Agent will be paid by the Liquidating Trustee, subject to the approval and/or at the direction of the Liquidating Trust Board, and will not be deducted from distributions to be made under the Plan to holders of Allowed Claims receiving distributions from the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  The Liquidating Trustee shall use all commercially reasonable efforts to provide the Disbursing Agent (if other than the Debtors or Liquidating Trustee) with the amounts of Claims and the identities and addresses of holders of Claims, in each case, as set forth in the Debtors' books and records.  The Liquidating Trustee shall cooperate in good faith with the applicable Disbursing Agent (if other than the Liquidating Trustee) to comply with the reporting and withholding requirements outlined in Section 11.21 of the Plan.

The Debtors and the Creditors' Committee agree to negotiate in good faith the payment of fees and expenses incurred by the Indenture Trustees and Second Lien Agent during the pendency of the Chapter 11 Cases; provided that, such parties shall not be entitled to reimbursement of any fees and expenses incurred during the Chapter 11 Cases related to objecting to or otherwise

36

<span style="color:red">challenging the Disclosure Statement, the Plan, the Sale, the Debtors' post-petition financing, the Debtors' use of cash collateral or asserting administrative expense claims (including under section 507(b) of the Bankruptcy Code)</span>."

<u>Section 4.2(c) of the Liquidating Trust Agreement</u>:

"(c) <u>Holders of Notes</u>.  Notwithstanding any provision in the Plan to the contrary, distribution to holders of any Notes shall be made to or at the direction of each of the applicable Indenture Trustees, each of which will act as Disbursing Agent for distributions to the respective holders of the Notes, as applicable.   The Indenture Trustees shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.   The Indenture Trustees may transfer or direct the transfer of such distributions directly through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise), and will be entitled to recognize and deal for all purposes under the Plan with the holders of their respective series of Notes, to the extent consistent with the customary practices of DTC.   Such distributions shall be subject in all respects to the rights of each Indenture Trustee to assert its charging lien against distributions.  All distributions to be made to holders of the Notes shall be distributed through the facilities of DTC, to the extent the distributions are "DTC-eligible," and as provided for under the Indentures, as applicable.   Any distributions that are not "DTC-eligible" shall be made by, or at the direction of, the applicable Indenture Trustee.  <span style="color:red">As consideration for acting as a Disbursing Agent for the Liquidating Trust, upon receipt of sufficient proceeds from the Preserved Causes of Action for distributions to be made to the holders of General Unsecured Claims, the Indenture Trustees and the Second Lien Agent shall be reimbursed for the fees and expenses incurred by such parties during the pendency of the Chapter 11 Cases; provided,</span> <u>however</u>, <span style="color:red">that such parties shall not be entitled to reimbursement of any fees and expenses incurred during the Chapter 11 Cases related to objecting to or otherwise challenging the Disclosure Statement, the Plan, the Sale, the Debtors' post-petition financing, the Debtors' use of cash collateral or asserting administrative expense claims (including under section 507(b) of the Bankruptcy Code."</span>

and replaced with the following:

"Without regard to whether an Indenture Trustee objected to any action or inaction during the pendency of these Chapter 11 Cases, the Debtors (prior to the Effective Date) or the Liquidating Trust

WEIL:\97226399\1\73217.0004

(after the Effective Date), as applicable, shall pay or reimburse the reasonable fees and reasonable and necessary expenses of any Indenture Trustee incurred in connection with such Trustee's actions during the pendency of these Chapter 11 Cases relating to ordinary course administration in a chapter 11 case, such as facilitating distributions, responding to inquiries, serving on the Creditors' Committee, etc.; provided, that such expenses shall not include the fees and expenses of outside counsel in connection with service on the Creditors' Committee."

**P.    Miscellaneous**

64.    In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than this Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Plan shall govern and control; provided that, in the event of a conflict between the Liquidating Trust Agreement, on the one hand, and any of the Plan, the Plan Supplement or the Definitive Documents, on the other hand, the Liquidating Trust Agreement shall govern and control in all respects relating to the Liquidating Trust; provided further, that in the event of a conflict between the Administrative Expense Claims Consent Program Term Sheet, on the one hand, and any of the Plan, the Plan Supplement, and this Confirmation Order, on the other hand, the terms of this Confirmation Order shall govern and control in all respects; provided further that, in the event of a conflict between this Confirmation Order, on the one hand, and any of the Plan, the Plan Supplement (other than as set forth herein with respect to the Liquidating Trust Agreement), the Definitive Documents, on the other hand, this Confirmation Order shall govern and control in all respects.

65.    Relator Carl Ireland, as Administrator of the Estate of James Garbe, and the United States ("**Mortgagees**") as holders of liens on the real property known as Location #8975, Cupey Bajo, San Juan, Puerto Rico (the "**Property**") shall continue to have (i) a lien

38

against the sale proceeds of the Property and (ii) a superpriority administrative expense claim against the Debtors as adequate protection arising from the sale of such Property to satisfy any diminution of value of such replacement lien post-Closing, on the terms and conditions set forth in the Sale Order (the "**Sale Order Grants**").  In addition to the Sale Order Grants, Mortgagees shall also have a replacement lien against Total Assets as additional adequate protection ("**Additional Adequate Protection Replacement Lien**").  The Additional Adequate Protection Replacement Lien shall be subject to the Carve-Out, other than as provided for pursuant to the Sale Order Grants. The Debtors' rights to object to the priority, validity, amount, and extent of Mortgagees' initial liens on the Property are preserved, as are the Mortgagees' rights to assert additional amounts due.  The Additional Adequate Protection Replacement Lien granted by this Confirmation Order shall be senior to all other liens against the Total Assets and shall not supersede or otherwise modify or diminish the Sale Order Grants.  Mortgagees reserve their rights to request that the Court require the Debtors to establish a cash reserve prior to the Effective Date based upon changes in facts and circumstances.  The Debtors' and the Creditors' Committee's rights to object to any such request are also reserved.

66.    Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.

67.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XVI of the Plan.

WEIL:\97226399\1\73217.0004

68.     Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in these cases after the Effective Date shall be limited to the following parties: (i) the Liquidating Trust and its counsel; (ii) the U.S. Trustee; and (iii) any party known to be directly affected by the relief sought.

Dated: October 15, 2019
       White Plains, New York

          /s/Robert D. Drain                
          THE HONORABLE ROBERT D. DRAIN
          UNITED STATES BANKRUPTCY JUDGE

WEIL:\97226399\1\73217.0004

## Exhibit A

**Plan**

**<u>Exhibit B</u>**

**Administrative Expense Claims Consent Program Notice**

**<u>Exhibit C</u>**

**Opt-In/Opt-Out Ballots**

WEIL:\97226399\1\73217.0004