WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                                          :
                                                               :    **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,                      :
                                                               :    **Case No. 18-23538 (RDD)**
                                                               :
Debtors.[1]                                                    :    **(Jointly Administered)**
                                                               :
----------------------------------------------------------------x

# OBJECTION OF DEBTORS TO BRIAN COKE NG'S
# MOTION TO LIFT AUTOMATIC STAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection to the motion seeking relief from the automatic stay (the "**Motion**") (ECF No. 5230), filed by Brian Coke Ng (the "**Movant**"), and respectfully represent as follows:

**Preliminary Statement**

1. A movant seeking relief from the automatic stay must show cause warranting such relief. 11 U.S.C. § 362(d)(1). If the movant fails to satisfy this burden, then "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Here, Movant has failed to satisfy his burden to establish cause to lift the automatic stay.

2. Over the course of the Debtors' chapter 11 cases, Movant filed multiple documents asserting claims allegedly arising out of the events in 2010. Movant first filed a motion to lift the automatic stay to allow Movant both to litigate in a prepetition action pending in the United States District Court for the Southern District of New York (the "**District Court**"), and to pursue an unfiled action on a post-petition basis (ECF No. 1006) (the "**First Stay Motion**"). The First Stay Motion was denied with respect to the prepetition action, and adjourned to a date to be scheduled by Movant with respect to the unfiled action (ECF No. 2721)(the "**Stay Order**"). In the interim, Movant next filed a proof of claim (No. 9234) in the amount of $10,000,000 (the "**Proof of Claim**"). Movant also filed an adversary complaint (the "**Complaint**") (Case No. 19-0826) (the "**Adversary Proceeding**"). The Debtors have moved to dismiss the Complaint.

3. Now, in the Motion, Movant seeks to assert claims against the Debtors, based on the same facts asserted in the First Stay Motion, the Proof of Claim and the Adversary

Proceeding, under a variety of misguided theories, before the Workers' Compensation Board in the State of New York. *See* Motion at ¶ 4. The gravamen of the issues Movant seeks to resolve before the Worker's Compensation Board against the Debtors appears to be that Movant allegedly suffered harm in the form of emotional distress and exacerbated health issues after he requested medical records from a Kmart Pharmacy pre-petition. *See, e.g.*, Motion at ¶¶ 16 – 22, 32, 35; Exhibit A to Motion; Complaint ¶¶ 42, 43, 47.

4. Of course, the Workers' Compensation Board has no jurisdiction over claims against the Debtors in this matter. The Motion should be denied in its entirety with prejudice.

## Background

5. Beginning on October 15, 2018 and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

7. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

8. On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in*

*Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**"). The Sale Transaction closed on February 11, 2019.

9. On March 1, 2019, the Court entered the *Order Approving Procedures for Modification of the Automatic Stay Under Certain Circumstances* (ECF No. 2720) (the "**Stay Procedures Order**"). The Stay Procedures Order approved procedures for the Debtors to review requests to lift the automatic stay to proceed with prepetition actions with recovery limited to available insurance proceeds (the "**Stay Procedures**"). Stay Procedures Order ¶ 2(a). The Stay Procedures provide that a party seeking to lift the automatic stay submit a form inquiry that was annexed as Exhibit 1 to the Stay Order (an "**Inquiry**"). *Id.* ¶ 2(a). The Debtors are afforded 45 calendar days to review and respond to an Inquiry and parties may file a motion for relief from the automatic stay if the Debtors do not respond to an Inquiry after the expiration of the 45-day period. *Id.* ¶ 2(e).

10. On October 15, 2019, the Court entered the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors and (II) Granting Related Relief* (the "**Confirmation Order**"), confirming the Debtors' *Modified Second Amended Joint Chapter 11 Plain of Sears Holdings Corporation and Its affiliated Debtors* (ECF No. 4476) (the "**Plan**").

### The Motion Should be Denied with Prejudice

**A.     Movants' Filings**

11. On December 3, 2018, Movant filed the First Stay Motion, requesting that the stay be lifted to allow Movant to (1) litigate a prepetition action filed against the Debtors in New York State Supreme Court and currently pending in the District Court (the "**Filed Action**") and (2) file and pursue an unfiled action (the "**Unfiled Action**"). Movant stated in the First Stay

Motion that he "is not seeking to recover anything directly from the Debtors or their bankruptcy estates, but instead will rely entirely on the proceeds from the Debtors' applicable insurance policies to satisfy any judgment obtained against them. Movant's sole recourse is against the insurer/insurance." First Stay Motion ¶ 8.

12. A hearing was held on the First Stay Motion on February 14, 2019 (the "**Stay Motion Hearing**"). The Court denied the First Stay Motion with respect to the Filed Action. *See* Stay Order. At the Stay Motion Hearing, Movant asserted that the Unfiled Action was for a post-petition claim. The Debtors disagreed.[2]

13. The Court directed the Movant with respect to the Unfiled Action to "[f]ile your claim, lay out what you think the claim is and when it arose and what it's for, and then we can decide what to do with this." Hr'g Tr. 68:23-25, *In re Sears Holdings Corp.*, Case No. 18–23538 (RDD) (Bankr. S.D.N.Y. Feb. 14, 2019).[3] The Court then adjourned the First Stay Motion with respect to the Unfiled Action until after the bar date. *Id*. 69:12-15.

14. On March 1, 2019, Movant filed the Proof of Claim.

15. Subsequently, the Debtors reached out to the Movant to schedule a continued hearing on the First Stay Motion for the May 2019 omnibus hearing date. Movant refused to agree to schedule a hearing.

16. Instead, Movant commenced the Adversary Proceeding.

---

[2] Movant asserts that on November 6, 2018, as well as on earlier pre-petition dates, the Debtors created misleading records. Motion ¶¶ 14-15; First Stay Motion, Ex. 2 ¶ 6; Compl. ¶ 4. As described in detail in the Debtors' Motion to Dismiss in the Adversary Proceeding, the Debtors believe that Movants' allegations have no merit or basis in fact. *See* Adv. Pr. ECF No. 7.

[3] A copy of the relevant excerpts from the transcript of the Feb. 14, 2019 hearing is attached to the Declaration of Jessie B. Mishkin, filed concurrently with the Motion to Dismiss, as Exhibit A. *See* Adv. Pr. ECF No. 8.

17. The first hearing in the Adversary Proceeding was scheduled to be held in August; however, Movant requested that the hearing be rescheduled to October.

18. Rather than waiting to have the Court to rule on the First Day Motion or on the Motion to Dismiss in the Adversary Proceeding at that hearing, Movant has filed the Motion, which seeks to have the Workers' Compensation Board resolve the claim pending in the District Court, the First Stay Motion, the Proof of Claim, and the Adversary Proceeding. Movant failed to comply with the Stay Order, and by filing the Motion, also failed to comply with the Stay Procedures Order.

## Argument

### A. The Motion Seeks Relief Previously Sought in These Chapter 11 Cases

19. As described herein, and as addressed in the Debtors' Motion to Dismiss in the Adversary Proceeding, Movant has previously sought the Bankruptcy Court's permission to pursue claims based on the facts asserted in the Motion and in the Adversary Proceeding against the Debtors with the First Stay Motion. The four counts asserted against the Debtors in the Adversary Proceeding were included in the Movant's unfiled draft complaint, attached to the Proof of Claim. *Compare* Adv. Compl. ¶¶ 83-122 and Proof of Claim attachment ¶¶ 63-102. The issues asserted in these filings are the same issues, and arising from the same events, that Movant seeks to assert before the Workers' Compensation Board.

20. For these threshold reasons, the Motion should be dismissed in its entirety, and Movants' claims should be addressed in the claims administration process.

### B. Movant has not Shown Cause for Lifting the Automatic Stay

21. Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause . . . ." 11 U.S.C.

§ 362(d)(1). Courts have noted that the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *See, e.g.*, *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 502 (1986). The stay is "designed to give the debtor time to organize its affairs—which includes protection from having to defend claims brought against the estate." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *see also In re Congregation Birchos Yosef*, 535 B.R. 629, 633 (Bankr. S.D.N.Y. 2015) (The automatic stay "serves not only the debtor, but also the debtor's creditors in the collective context of the case by ensuring the orderly determination of the debtor's liabilities, realization on the estate's assets, and allocation of that value to creditors and interest holders according to the Bankruptcy Code's priority scheme and policy of equality of distribution. In a context where every dollar counts, the automatic stay prevents unilateral races to dismember the debtor and actions outside the bankruptcy court's supervision with their attendant diversion of resources and impairment of the debtor's value.") (citation omitted). One of the primary forms of protection that the stay provides is preventing a debtor from being forced to litigate multiple claims in multiple forums. *See In the Matter of the Bohack Corp.*, 599 F.2d 1160, 1167 (2d Cir. 1979); *In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983). Because "cause" is not defined by section 362(d), the decision whether to modify the stay is left to the discretion of the bankruptcy court. *Chimera Capital, L.P. v. Nisselson (In re MarketXT Holdings, Corp.)*, 428 B.R. 579, 584 (S.D.N.Y. 2010).

        22.     In the Second Circuit, courts weigh twelve factors, known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted. *See Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990). The *Sonnax* factors are:

    i.    whether relief would result in partial or complete issue resolution;

    ii.    lack of connection with or interference with bankruptcy case;

    iii.    whether the other proceeding involves debtor as fiduciary;

    iv.    whether a specialized tribunal with necessary expertise has been established to hear cause of action;

    v.    whether debtor's insurer has assumed full defense responsibility;

    vi.    whether the action primarily involves third parties;

    vii.    whether litigation in another forum would prejudice interests of other creditors;

    viii.    whether judgment claim arising from other action is subject to equitable subordination;

    ix.    whether movant's success in other proceeding would result in a judicial lien avoidable by debtor;

    x.    interests of judicial economy and expeditious and economical resolution of litigation;

    xi.    whether parties are ready for trial in other proceeding; and

    xii.    the impact of stay on parties and balance of harms.

*Id*.

23.    Not all of the factors will be relevant in a given case, and the Court may disregard irrelevant factors. *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). Additionally, courts need not assign equal weight to each factor, and have discretion to weigh the factors against one another. *See In re Artisanal 2015, LLC*, No. 17-12319, 2017 Bankr. LEXIS 3813, at *46 (Bankr. S.D.N.Y. Nov. 3, 2017); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

24.    In applying the *Sonnax* factors, "[t]he burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in property,' 11 U.S.C. § 362(g)(1). If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the

debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285; *see also In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *5-6 (S.D.N.Y. Dec. 18, 2018); *Abrantes Const. Corp. v. U.S. (In re Abrantes Const. Corp.)*, 132 B.R. 234, 247 (N.D.N.Y. 1991).

25.     Furthermore, "[t]he burden on the movant seeking relief from the automatic stay to prosecute an unsecured claim is especially heavy. "[T]he general rule is that *claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established* to justify such relief," lest the unsecured creditor receive a distributive advantage contrary to the principle of equality of distribution." *In re Breitburn Energy LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017) (emphasis added) (citing *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); *accord Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 8, 2010); *In re Residential Capital, LLC*, 501 B.R. 624, 643-44 (Bankr. S.D.N.Y. 2013)).

26.     Here, the Movant has not satisfied the burden of establishing "cause" under section 362(d)(1), and as a result, the Motion should be denied.

C.     **The First Factor Weighs Against Lifting the Automatic Stay**

27.     Movants argue that the first *Sonnax* factor—whether relief would result in a partial or complete resolution of the issues—weighs in favor of lifting the stay because Movant believes the Workers' Compensation Board will resolve the issues regarding the Movant's claim, including allegations of alteration and falsification of billing records. *See* Motion at ¶ 31. The Debtors do not believe Movant has the right to assert any claims against the Debtors before the Workers' Compensation Board, and do not believe the Workers' Compensation Board has any

jurisdiction over claims against the Debtors,[4] meaning that lifting the stay here will not result in any resolution of the issues asserted against the Debtors, but will result in costs to the Debtors' estates and creditors, because the Debtors will need to dispute this before the Workers' Compensation Board.

28. Furthermore, Courts in this District have ruled that satisfaction of the first *Sonnax* factor is insufficient when complete resolution of a matter would be at a substantial cost, or may take a long time. *See In re Chittur & Assocs., P.C.*, 2018 U.S. Dist. LEXIS 213968 at *7 (affirming a bankruptcy court decision denying relief from the stay, and finding that while modification of the automatic stay may well resolve the matter, it would do so at a substantial cost, and would be subject to a bankruptcy plan of distribution); *In re SunEdison, Inc.*, 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) (denying relief from the stay, and finding that "[t]he one factor weighing in favor of granting the *Motion* is that it will completely resolve the issues between the Debtors and Vivint (Factor # 1). But even then, final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan.").

D.  **The Second Factor Weighs Against Lifting the Automatic Stay**

29. The second *Sonnax* factor—whether there is a lack of connection or interference with the bankruptcy estate—does not weigh in favor of lifting the stay. Movant does not offer any reasons as to why he believes this factor weighs in favor of lifting the stay. *See* Motion at ¶ 32. Where there is a lack of insurance, or even a dispute over the availability of

---

[4] The statute cited by Movant, New York Workers' Compensation Law, governs the conduct of employees and employers and their carriers – not pharmacies. Movant has not been employed by the Debtors. The sections cited by Movant are sections N.Y. Workers' Comp. Law § 13 (i), titled "Treatment and care of injured employees," and section 13-O, titled "Pharmaceutical fee schedule," neither of which relates to pharmacies' practices with medical records, nor is relevant to the Movant's claims against the Debtors. Furthermore, the form Movant seeks to file with the Workers' Compensation Board explicitly states, "This form is not to be used to report an injury. To file a claim, use Form C-3."

insurance, the Debtors would inevitably be involved in such discussions, defense of actions, or, at the very least, monitoring of the cases, interfering with the administration of their estates. The automatic stay is meant to shield debtors from creditor harassment and from a multitude of litigation in a variety of forums at a time when the Debtors' personnel should be focused on the chapter 11 cases. Indeed, "[e]ven slight interference with the administration [of a chapter 11 case] may be enough to preclude relief in the absence of a commensurate benefit." *In re Curtis, 40 B.R. 795*, 806 (Bankr. D. Utah 1984); *see also SunEdison,* 557 B.R. at 308 ("Prosecution of the Merger Litigation at this time will interfere substantially with the progress of the bankruptcy case, (Factor # 2), and prejudice the interests of the other creditors, (Factor # 7), by diverting the Debtors' resources and personnel at a critical time in the case.").

30.    Moreover, lifting the automatic stay to allow the Movant to try to assert his claims in yet another forum in pursuit of a prepetition claim may open the floodgates for numerous other prepetition creditors to seek similar relief against the Debtors. *See, e.g.*, *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying a motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case"), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009); *see also SunEdison*, 557 B.R. at 308-09 (finding that granting relief from the stay "may encourage other claimants to file their own stay relief motions," and that "[t]he Debtors would then have to expend resources to object to those motions in this Court and, if unsuccessful, devote further resources to litigating those claims."); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3777, at *7 (Bankr. S.D.N.Y. Aug. 16, 2012); *In re Motors Liquidation Co.*, 10 Civ. 36 (RJH), 2010 WL 4630327, at *5 (S.D.N.Y. Nov. 8, 2010) (noting that potential for opening floodgates to "other litigants with garden variety claims" is "the very state of affairs the

automatic stay was enacted to prevent"); *In re Celotex Corp.*, 140 B.R. 912, 916 (Bankr. M.D. Fla. 1992) (maintaining stay imposed pursuant to sections 362 and 105 of the Bankruptcy Code where relief would result in an "avalanche of litigation").

31. For the reasons stated above, the second *Sonnax* factor weighs against granting the relief sought in the Motion.

E. **The Fifth Factor Weighs Against Lifting the Automatic Stay**

32. Movant asserts that the Debtors' insurer has assumed responsibility for defending the Claim. *See* Motion at ¶ 33. To the Debtors' knowledge, that is not true, and Movant has not stated why he thinks that is the case.

33. As already addressed in the Debtors' objection to the First Stay Motion (ECF No. 1547), the Debtors do not have insurance coverage available for Movant's action – which the Debtors believe is wholly prepetition. The Debtors maintained various insurance policies in their history over the prepetition period. As to the Ng Actions, each of the general liability policies applicable to incidents that occurred between August 1, 2010 and August 1, 2011, and between August 1, 2012 and August 1, 2017 had a $5 million aggregate limit. Paid losses to date have exceeded the $5 million limit on each of those policies respectively. Accordingly, there is no available coverage under any policy with respect to the Claim; the insurer has no duty to defend the Debtors or pay for the Debtors' losses. Copies of the notices of exhaustion evidencing the foregoing are attached to the objection to First Stay Motion. Accordingly, the Debtors are without coverage to defend or satisfy Movant's claims.

34. In similar circumstances, as well as previously in these Chapter 11 Cases, courts have consistently found that the fifth *Sonnax* factor supports denial of relief from the stay. *See SquareTwo Fin. Servs.*, 2017 Bankr. LEXIS 2570, at *18 ("Because no insurer has assumed

responsibility for defending [the action], application of the fifth *Sonnax* Factor cuts against granting [relief from the automatic stay]."); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3624, at *16 (Bankr. S.D.N.Y. Aug. 7, 2012) ("The fifth *Sonnax* Factor weighs in favor of denying relief from the automatic stay because any damages awarded . . . would be paid directly by the Debtor Defendants."); *see also DePippo v. Kmart Corp.*, 335 B.R. 290, 298 (S.D.N.Y. Nov. 14, 2005) (noting the general rule that a reorganized debtor paying for litigation costs "is contrary to the fresh start policy of the Bankruptcy Code").

35. If the automatic stay were to be lifted with respect to claims for which no insurance is available, the Debtors would be forced to directly incur the costs of all legal fees and expenses to defend their interests or otherwise default and risk unjustified, larger damages claims. The Debtors can identify no third parties that will absorb the full costs of litigation or of a potential judgment in the Movant's favor. Therefore, the fifth *Sonnax* factor weighs against granting the Motion.

F.  **The Seventh Factor Weighs Against Lifting the Automatic Stay**

36. The seventh *Sonnax* factor, which weighs whether litigation in another forum would prejudice interests of other creditors, weighs against lifting the automatic stay. Movant argues that the seventh factor weighs in favor of lifting the stay because resolution of the Claim before the Workers' Compensation Board will eliminate the need to "enforce" the claim in bankruptcy. *See* Motion at ¶ 35. As already stated, the Debtors do not believe the Workers' Compensation Board would have the ability to adjudicate the claim. In addition, even if it could, Movant would have to come back to the Bankruptcy Court to get any recovery on any judgment.

### G.  **Twelfth Additional *Sonnax* Factors Weigh Against Lifting the Automatic Stay**

37. The twelfth *Sonnax* factor, which weighs the impact of the stay on the parties and the balance of the harms, does not support lifting the automatic stay. Movant argues that there is little harm to the Debtors because an insurer is defending the Claim. *See* Motion at ¶ 35. As already stated herein, that is not the case. Movant also argues that the denial of this Motion will prevent Movant from submitting a proper claim to the Workers' Compensation Board - the Debtors disagree with this statement, and do not believe their involvement is relevant to the Movant's ability to assert a claim against an employer.

38. Furthermore, the Debtors are party to numerous lawsuits. Taken together, such lawsuits constitute a meaningful unsecured creditor constituency that the Debtors have an obligation to maximize value for as a whole. Although creditor recoveries are yet to be determined, the administrative costs expended on defending prepetition actions have a disproportionate negative impact on any constituency receiving less than full recovery. At this time, lifting the automatic stay would not expedite any potential recovery on account of these unsecured claims nor would it help to identify recovery amounts.

### Conclusion

39. For the foregoing reasons, Movant has failed to satisfy its burden to establish cause to lift the automatic stay. Accordingly, the Motion should be denied.

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that the Court deny the Motion.

Dated: October 16, 2019
      New York, New York

    /s/ *Garrett A. Fail*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*