Page 1

```
 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3   Case No. 18-23538-rdd
 4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
 5   In the Matter of:
 6
 7   SEARS HOLDINGS CORPORATION,
 8
 9            Debtor.
10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
11
12                    United States Bankruptcy Court
13                    300 Quarropas Street, Room 248
14                    White Plains, NY 10601
15
16                    September 18, 2019
17                    10:25 AM
18
19
20
21   B E F O R E :
22   HON ROBERT D. DRAIN
23   U.S. BANKRUPTCY JUDGE
24
25   ECRO:   NAROTAM RAI
```

Page 2

1  HEARING Re: Notice of Agenda of Matters Scheduled for
2  Hearing on September 18, 2019 at 10:00 a.m.
3
4  Motion to Shorten Time for MOACs Motion (i) for a Stay
5  Pending Appeal; and (ii) to Expedite Transmittal of Record
6  on Appeal to district Court (related document(s)5110)
7
8  Motion to Stay Pending Appeal and to Expedite Transmittal of
9  Record on Appeal to District Court
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25 Transcribed by: Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   DLA PIPER

 4        Attorney for Transform HoldCo

 5        1201 North Market Street

 6        Suite 1200

 7        Wilmington, DE 19801

 8

 9   BY:  R. CRAIG MARTIN

10        ALANA M. FRIEDBERG

11        RICHARD A. CHESLEY

12

13   PATTERSON BELKNAP WEBB & TYLER LLP

14        1133 Avenue of the Americas

15        New York, NY 10036

16

17   BY:  DANIEL A. LOWENTHAL

18

19   LARKIN HOFFMAN

20        Attorney for MOAC Mall Holdings

21        8300 Norman Center Dr #1000

22        Minneapolis, MN 55437

23

24   BY:  ALEXANDER J. BEEBY

25
```

```
 1   ALSO PRESENT TELEPHONICALLY:
 2
 3   ZACHARY D. LANIER
 4   JOSEPH H. LEMKIN
 5   JACQUELINE MARCUS
 6   CHRIS STAUBLE
 7   ARLENE R. ALVES
 8   ALIX BROZMAN
 9   CARLY EVERHARDT
10   KATHERINE E. MASSEY
11   LAREN M. WAGNER
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    P R O C E E D I N G S

2              THE COURT:  Good morning.

3              MR. BEEBY:  Good morning, Your Honor.

4              THE COURT:  In re Sears Holdings Corporation.  Let

5     me just -- I think everyone got the word on this, but the

6     confirmation hearing in Sears has been adjourned, and the

7     only matter on today's calendar is the motion by MOAC,

8     M-O-A-C, Mall Holdings LLC, for a stay pending appeal of my

9     September 5, 2019 order authorizing the assumption of

10    assignment of the MOAC mall lease to Transform.

11             So I've read the parties' pleadings in connection

12    with this matter.  I'm happy to hear oral argument.  So MOAC

13    have the burden, so you can go first.

14             MR. BEEBY:  Thank you, Your Honor.  My name is

15    Alex Beeby with Larkin Hoffman on behalf of MOAC Mall

16    Holdings.  I'm here with Daniel Lowenthal of Patterson,

17    Belknap, Webb & Tyler.  And I believe Tom Flynn may be

18    listening on the phone but not participating.

19             As a preliminary matter, there is also a related

20    motion to shorten time to have this expedited hearing, which

21    there's been no objections.

22             THE COURT:  That's correct.  I didn't see any

23    objection to that.  The parties agree to the matter, so --

24             MR. CHESLEY:  Richard Chesley on behalf of

25    Transform.  No, Your Honor.  No objection.

1            THE COURT:  All right.  So that motion is granted.

2            MR. BEEBY:  With regard to the stay motion,

3    essentially MOAC is looking to reserve its right for

4    appellate review of some very important legal issues, which

5    -- for which there are no yet binding decisions.

6            The Mall -- MOAC is looking to protect Mall of

7    America and its tenants.  And respecting your decision, Your

8    Honor, we believe that there is a strong argument on appeal.

9    The decision -- your decision is based on legal

10   interpretations that have not yet been reviewed by binding

11   courts and extending some of those legal interpretations to

12   new circumstances.  Also note that there's no reason that a

13   tenant search cannot continue.  There's been one underway

14   for several months now.  And again, I want to reiterate that

15   there are some important legal issues here that do warrant

16   appellate review.  And foreclosing review of those issues at

17   that time would not be in the public interest either.

18           THE COURT:  Well, the irreparable harm here is not

19   based on a particular imminent transaction, right?  Are we

20   aware of any proposed sublease of the -- of any material

21   portion of the space?

22           MR. BEEBY:  No, Your Honor.  And that would be

23   dealing with equitable mootness.  Thea's both legal --

24           THE COURT:  Well, what is the harm then?

25           MR. BEEBY:  The harm is that if there is no stay,

1    the appeal itself would be rendered legally moot.

2             MR. CHESLEY:  By?

3             THE COURT:  By -- well, there's a case I refer the

4    Court to, a couple of cases.  I mentioned the In re

5    (indiscernible) in the -- in the dispute.

6             THE COURT:  But it would be rendered moot by the

7    subletting, right?

8             MR. BEEBY:   No. I mean --

9             THE COURT:  What else -- what else would render it

10   moot?

11            MR. BEEBY:  By virtue of 363.  So this lease was

12   assigned.  The assignment is a product of the 363 sale, and

13   363(m) comes into play.  Which in In re Gucci, which is a

14   Second Circuit case here, which is 105 F.3d 837.  In that

15   case, a sale appeal was rendered legally moot by a one-day

16   --

17            THE COURT:  But you're not -- you're not appealing

18   the whole sale.

19            MR. BEEBY:  No, we're not.

20            THE COURT:  You're appealing the assignment order.

21            MR. BEEBY:  Correct.

22            THE COURT:  So and if you were appealing the whole

23   sale, which is already closed, I understand your argument.

24   I would also require a bond equal to the sale consideration

25   price.  But we're just talking here about the --

```
 1              I really believe at this point, we're taking about
 2    just one of the roughly 600 -- well, I guess a few stores
 3    were -- oh, well, no.  It was all leased.  600 leases that
 4    we're talking about here.  In that context, I can't imagine
 5    363(m) as far as the sale is concerned applying here.  Are
 6    you going to rely on 363(m)?  I mean, if you were, I would
 7    think the sale would've closed already.
 8              MR. CHESLEY:  Correct, Your Honor.
 9              THE COURT:  So it -- so it would be moot already.
10              MR. CHESLEY:  Correct, Your Honor.
11              THE COURT:  So you're not relying on -- you
12    wouldn't -- you're not going to go to the district and say
13    363(m) applies here.  This is over.
14              MR. CHESLEY:  Well, we -- in effect, because we do
15    not have a transaction, I think we couldn't rely on 363(m)
16    for the purposes of arguing mootness because we have not
17    closed on a transaction to assume and assign this to a sub-
18    debtor.
19              THE COURT:  The specific assign.
20              MR. CHESLEY:  Correct, Your Honor.
21              THE COURT:  Okay.  All right.  So I think the
22    focus really is on the sublease, and there you have the
23    procedure under 6.3, which is a lengthy procedure.  It would
24    certainly give you plenty of time to seek to expedite an
25    appeal.  But the record before me, which hasn't been
```

1    contested, is that it's going to take months to sublease

2    this premises.

3             In fact, I believe that two years was fairly tight

4    and required a condition, which is that the landlord not

5    interfere with the process.  So I just -- it doesn't seem

6    like there's any -- no, obviously you want to generally have

7    appeals for -- promptly, and four district judges in this

8    courthouse are really quite good in ruling promptly on

9    appeals, but I don't see the urgency here.

10             MR. BEEBY:  Well, Your Honor.  Our argument is

11   based on looking at other cases in which there has been an

12   assignment of the lease that was rendered moot where -- and

13   they're across the country -- where there is no stay, that a

14   stay is required for assignment of a -- to protect the

15   appeal of an assignment of a lease.

16             THE COURT:  Well, we just went through that.

17   They're not going to rely on 363(m) because this transaction

18   was done -- you don't need a further closing, right?

19             MR. BEEBY:  No, Your Honor.

20             THE COURT:  No.  There's no further closing.  This

21   is already done, so if you're really making that argument,

22   then it really is moot already because you should've

23   appealed the sale order.  This is not -- this is a 365

24   order.  It's an outgrowth of the sale.  It's not a 363(m),

25   and they're not going to rely on 363(m), which Mr. Chesley's

1   just reiterated for the second time.

2           MR. BEEBY:  And that's -- and I appreciate that.

3   My concern would be that a review in court would

4   independently --

5           THE COURT:  Well, but if --

6           MR. BEEBY:  -- look to the appeal as being moot.

7           THE COURT:  They're -- they would be judicially

8   estopped because one of the four factors that -- and one of

9   the two, by far, most important factors for a stay pending

10  appeal is the likelihood of irreparable harm.  So if I deny

11  your motion because there's no likelihood of irreparable

12  harm, then I can't see how they could then go --

13  notwithstanding the representation to me -- and go to the

14  district court and say that 363(m) applies because that's

15  the only irreparable harm you're saying exists is the

16  potential application of 363(m).

17          MR. BEEBY:  That is correct, Your Honor.

18          THE COURT:  Okay.

19          MR. BEEBY:  That is the court -- and if they're --

20  we would seek leave to seek a new stay should the

21  circumstances come about in which an equitable mootness

22  argument would become right.

23          THE COURT:  Okay.  But it just, to me, that -- at

24  this point, you really haven't carried your burden on that

25  -- on that score, as I think you just acknowledged because

1    you're basically saying you would seek the right -- we would

2    reserve the right to seek a stay if that was going to

3    happen.

4             MR. BEEBY:  That is -- that is absolutely --

5             THE COURT:  But that's going to be a whole other

6    set of facts.

7             MR. BEEBY:  Correct.

8             THE COURT:  Because they're under the lease, you

9    know.  6.3, there's a whole procedure for notice about

10   pending transactions.

11            MR. BEEBY:  Do you have any further questions,

12   Your Honor?  I believe that actually addresses --

13            THE COURT:  Okay.

14            MR. BEEBY:  -- pretty much all of the issues

15   before the Court, unless there are other issues that --

16            THE COURT:  Well, I mean, I -- just go -- for the

17   -- I mean, given that there is no real showing of

18   irreparable harm -- and, by the way, I do believe that,

19   generally speaking, risk of mootness standing alone doesn't

20   constitute irreparable injury, although there are times

21   when, again, the very fact of 363(m) might.  But then, of

22   course, you -- then you have the bond requirement, which I

23   think if 363(m) were in fact to be relied on by both sides,

24   the bond here would be enormous, as it was in Adelphia.

25   That's the second part of Judge Scheindlin's opinion or set

1    of opinions in the case, which is the case you're relying on

2    for the mootness point.

3              But I also -- because of the lack of irreparable

4    harm, I don't believe a stay is in the public interest given

5    the need under the two-year deadline that my order proposes

6    for Transform to market the property and the cloud that the

7    stay would have over the marketing process.

8              And finally, on the -- on the issue of the merits,

9    obviously it's always a bit awkward for an appellant to

10   argue that there's a substantial showing (indiscernible) on

11   the merits when it's making that argument to the judge that

12   issued the order, which is what you have to do under Rule

13   8007.

14             But I've always been of the belief that not only

15   is no judge perfect but also that there are issues where it

16   truly is a close call, and I would like to think that I

17   would know that when rendering an opinion on the stay

18   pending appeal or request for a stay pending appeal.

19             And of course, under the majority and, I believe,

20   controlling standard in the second circuit, which may also

21   be the controlling standard set by the Supreme Court,

22   evaluating the merits factor in conjunction with the

23   irreparable harm factor is basically a balance.  The more

24   irreparable harm, the less of a showing on the merits and

25   vice versa.

1            Here, I think you'd have to have a huge showing on
2    the merits because there's no irreparable harm.  It would be
3    more than substantial.  I think it would have to be quite
4    strong.
5            And while, at this point, we're dealing with
6    district court and bankruptcy court opinions, we're also
7    dealing with legislative history and a basic underlying
8    principle.  First, it appears to me that Judge
9    (indiscernible) opinion and the multiple opinions on Toys
10   "R" Us are well reasoned and consistent with the statute
11   which has an introductory clause that refers to adequate
12   assurance performance under the lease, referring to the
13   lease.
14           And as importantly, perhaps more importantly,
15   although Congress in the bankruptcy code at times varies the
16   contractual expectations of the parties -- most obviously
17   since bankruptcy permits satisfaction of a default with tiny
18   bankruptcy dollars under certain circumstances -- generally
19   speaking, the parties' rights under the non-bankruptcy law
20   govern their rights vis-à-vis each other.
21           And it's extremely unusual, perhaps only -- I can
22   think of perhaps only one instance, and there the courts are
23   in disagreement, where Congress in the bankruptcy code gave
24   a non-debtor party greater rights than under their contract.
25   That one instance that I can think of is under section 1114

Page 14

1  where Congress was under enormous pressure by the public in
2  light of the LTV case to prevent the termination of retiree
3  benefits.
4           And arguably, at least according to two out of
5  three judges of the Third Circuit, overrode provisions in
6  actual benefit agreements that permitted a debtor to
7  terminate those agreements and provided, at least for
8  permanent terminations, that the debtor could not do that
9  without going through the 1114 process.  Other courts,
10 including myself, have said that even there, Congress
11 couldn't have meant that it would write out a provision
12 beneficial to a debtor in a -- in a contract that governed
13 the parties' pre-bankruptcy relationship.
14          Of course, in that context, there's a bit of a
15 hook because Congress could've been aware that a decision to
16 enforce an agreement that would deprive retirees of ongoing
17 benefits is a decision that's reviewable by the court.  But
18 it appears to me truly inconceivable that where
19 sophisticated parties agreed to the terms of a lease,
20 particularly a lease that gave the parties a buyout
21 mechanism whereby a landlord -- namely MOAC -- could
22 preserve control, and 6.3 of this lease does, it would
23 confer on the landlord benefits that were not in the lease
24 itself.
25          Frankly, I don't -- I -- you know, bankruptcy has

1   been held to be consistent with the takings provision

2   because bankruptcy is also in the constitution.  But to say

3   that that extra right could be added for a non-bankrupt

4   party might raise serious constitutional issues, i.e.

5   rewriting the parties' agreement for the benefit of the non-

6   debtor.  In any event, I just don't see that Congress meant

7   to do that and the parties were bound by their arguments.

8            So, I don't think you've made the -- in this case

9   -- the necessary very strong showing, so really none of the

10  factors are met here.  But the real -- the key inquiry is on

11  the irreparable harm, for what its' worth.  So I'll deny

12  them option for a stay.

13           MR. BEEBY:  Thank you, Your Honor.

14           MR. CHESLEY:  Richard Chesley.  We will submit an

15  order.

16           THE COURT:  You don't have to formally settle

17  that, but you should run it by your counsel.  And you should

18  refer to the hearing, including the representations made on

19  the record of the hearing.

20           MR. CHESLEY:  That's what we'll do, Your Honor.

21  Thank you.

22           THE COURT:  There's no issue about that.

23           MR. BEEBY:  Thank you, Your Honor.

24           THE COURT:  Okay.  Thank you.

25           As far as the request for expedited treatment, I'm

1  not going to grant that because I don't see a need for
2  expedited treatment, and I don't like to give like friends
3  upstairs more work than they need to.  If you think you need
4  to speed this up, you can -- you're free to make that
5  request of them as time goes by.
6           MR. CHESLEY:  Thank you, Your Honor.
7           (Whereupon these proceedings were concluded at
8  10:45 AM)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                   C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    **Sonya Landanski Hyde**

Digitally signed by Sonya Landanski Hyde
DN: cn=Sonya Landanski Hyde, o, ou, email=digital1@veritext.com, c=US
Date: 2019.09.20 15:12:57 -04'00'

8    **Sonya Ledanski Hyde**

20   **Veritext Legal Solutions**

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:   September 20, 2019