Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 18-23538-rdd

5

6   - - - - - - - - - - - - - - - - - - - -x

7

8   In the Matter of:

9

10   SEARS HOLDINGS CORPORATION, et al.,

11

12            Debtors.

13

14   - - - - - - - - - - - - - - - - - - - -x

15

16            United States Bankruptcy Court

17            300 Quarropas Street, Room 248

18            White Plains, New York 10601

19

20            August 2, 2019

21            10:08 AM

22

23   B E F O R E:

24   HON. ROBERT D. DRAIN

25   U.S. BANKRUPTCY JUDGE

Page 2

1    18-23538-rdd Sears Holdings Corporation, et al.

2    Ch 11

3

4    HEARING re Statement/Notice of Assumption and Assignment of

5    Additional Designatable Leases [ECF No. 3298]

6

7    HEARING re Objection to Cure Amount for Store #1008 Filed by

8    Izek Shomof and Aline Shomof Irrevocable Children's Trust

9    Dated February 11, 1999, Vegas Group, LLC, and East River

10   Group, LLC [ECF No. 1837]

11

12   HEARING re Supplemental Cure Objection and Reservation of

13   Rights (Store #1008) Filed by Izek Shomof and Aline Shomof

14   Irrevocable Children's Trust Dated February 11, 1999, Vegas

15   Group, LLC, and East River Group, LLC [ECF No. 3477]

16

17   HEARING re Declaration of Izek Shomof in Support of

18   Supplemental Cure Objection and Reservation of Rights (Store

19   #1008) Filed by Izek Shomof and Aline Shomof Irrevocable

20   Children's Trust Dated February 11, 1999, Vegas Group, LLC,

21   and East River Group, LLC [ECF No. 3478]

22

23

24

25

Page 3

1   HEARING re So Ordered Stipulation and Order By and Among

2   Sellers, Buyer, and Landlord Izek Shomof and Aline Shomof

3   Irrevocable Children's Trust Dated February 11, 1999, Vegas

4   Group, LLC, and East River Group, LLC (I) Extending Time

5   Under 11 U.S.C. § 365(d)(4) for Assumption or Rejection of

6   Lease of Nonresidential Real Property [ECF No. 3817]

7

8   HEARING re So Ordered Stipulation and Order By and Among

9   Sellers, Buyer, and Landlord Izek Shomof and Aline Shomof

10  Irrevocable Children's Trust Dated February 11, 1999, Vegas

11  Group, LLC and East River Group, LLC (I) Extending Time for

12  Assumption or Rejection of Lease of Nonresidential Real

13  Property and Setting Briefing Schedule [ECF No. 4186]

14

15  HEARING re Transform Holdco LLC's Reply in Support of

16  Assumption and Assignment of Designated Lease for Store

17  Located at 2650 East Olympic Boulevard, Los Angeles,

18  California [ECF No. 4489]

19

20  HEARING re Landlord's Reply to Transform Holdco LLC's Reply

21  in Support of Assumption and Assignment of Designated Lease

22  for Store Located at 2650 East Olympic Boulevard, Los

23  Angeles, California" [ECF No. 4624]

24

25

1    HEARING re Declaration of Izek Shomof in Support of

2    Landlord's Reply to Transform Holdco LLC's Reply in Support

3    of Assumption and Assignment of Designated Lease for Store

4    Located at 2650 East Olympic Boulevard, Los Angeles,

5    California [ECF No. 4625]

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Beck, Jamie Gallagher and Pamela Skaw

```
 1   A P P E A R A N C E S :

 2   WEIL, GOTSHAL & MANGES LLP

 3        Attorneys for Debtors and Debtors in Possession

 4        767 Fifth Avenue

 5        New York, NY 10153

 6

 7   BY:  JACQUELINE MARCUS, ESQ. (TELEPHONICALLY)

 8

 9   SULMEYER KUPETZ P.C.

10        Attorneys for the Landlord

11        333 South Grand Avenue

12        Suite 3400

13        Los Angeles, CA 90071

14

15   BY:  DAVID S. KUPETZ, ESQ.

16

17   CLEARY GOTTLIEB STEEN & HAMILTON LLP

18        Attorneys for Transform Holdco LLC and Its Affiliates

19        One Liberty Plaza

20        New York, NY 10006

21

22   BY:  ANDREW WEAVER, ESQ.

23        KATE MASSEY, ESQ.

24

25
```

```
 1                    P R O C E E D I N G S

 2              THE COURT:  All right.  Good morning.  In re Sears

 3      Holdings Corp.

 4              MR. WEAVER:  Good morning, Your Honor.  Andrew

 5      Weaver, Cleary Gottlieb, on behalf of Transform.

 6              THE COURT:  Good morning.

 7              MR. WEAVER:  This morning we have a lease

 8      assumption cure objection matter before Your Honor.  The

 9      landlord does have a declarant who will be crossed in the

10      courtroom.  And then the parties will have argument.

11              There is a little evidentiary issue with some of

12      the exhibits.  We're happy to address now, Your Honor, or

13      after the cross of the witness, whatever your preference.

14              THE COURT:  Well, I have two binders, one of which

15      is the parties' joint exhibits.

16              MR. WEAVER:  Correct, Your Honor.

17              THE COURT:  So the admissibility of those is

18      agreed?

19              MR. WEAVER:  Correct, Your Honor.

20              THE COURT:  Okay.

21          (Joint Exhibits received in evidence)

22              MR. WEAVER:  And then I have a binder labeled

23      "Landlord's Exhibit List".  I don't know whether all of

24      these are objected to or just some of them?

25              MR. WEAVER:  They are.  They're buckets, Your
```

Page 7

1    Honor, which I can quickly summarize for you.

2              THE COURT:  Okay.

3              MR. WEAVER:  So, Your Honor, looking at Landlord's

4    Exhibits -- 1, in particular, is a summary document.  And

5    presumably, it's being submitted under Rule 1006.  Just by a

6    quick glance at the document, there are some errors in the

7    document based upon the evidence that the party -- landlord

8    had submitted.  And so, we just don't think the document is

9    necessarily reliable.

10             The second bucket, Your Honor, relates to --

11             THE COURT:  Well, on that point --

12             MR. WEAVER:  Yeah.

13             THE COURT:  -- if you correct the errors, is it

14   then reliable --

15             MR. WEAVER:  Well --

16             THE COURT:  -- or you just haven't had the chance

17   to do the due diligence and therefore it's --

18             MR. WEAVER:  You know, we got this on Friday, Your

19   Honor, so it's been a week.  But -- so we really haven't

20   done a thorough due diligence.  Look, obviously, Your Honor

21   can -- capable of looking at the evidence.  We appreciate

22   that and can disregard what you deem to be not liable.  But

23   we just found not having really -- it tied out to anything

24   in particular, we found to be a little bit problematic.

25             THE COURT:  Okay.

Page 8

1           MR. WEAVER:  That relates, Your Honor, to the

2    second bucket which is Landlord Exhibit 2, 3 and 4.  These

3    are invoices and checks which presumably are the backup for

4    number 1.  And these documents, Your Honor, were provided

5    for the first time on Friday as part of the surreply and

6    attached to the declaration.  We served discovery in May in

7    this case.  We deposed their declarant in June in this case.

8    And we just now, a week ago, received the materials.

9           Again, as a general matter, we find this to be

10   parol evidence that you don't need to get to because the

11   contracts, we think, are clear, Your Honor.  But we just

12   believe that, as a procedural matter, that's improper when

13   they were clearly called for in discovery.  We had a

14   deposition and then we get these documents at the eleventh

15   hour.

16           THE COURT:  Okay.

17           MR. WEAVER:  The next bucket, Your Honor, is

18   Landlord Exhibit 5, 6, 7, 8, 9 and 10.  These are e-mails,

19   Your Honor, that, if you look at them all, they are all

20   e-mails that were forwarded by the landlord to his counsel

21   that has a commentary at the beginning of each -- of the

22   forward chains.  But the timing is also the issue, Your

23   Honor.  The deposition took place on June 24th in L.A.  All

24   of these e-mail chains were sent either during the

25   deposition or after the deposition to counsel.  So we did

Page 9

1   receive them.  They were produced a couple days later to us.

2   But the point of the deposition, Your Honor, was to ask

3   questions about the evidence they're relying upon.  And a

4   significant portion of the evidence they want to rely upon

5   now are documents that they found during and after the

6   deposition and forwarded it along.  So we think, again,

7   procedurally, Your Honor, that is improper beyond the parol

8   evidence issue.  And the mere fact that there is commentary

9   at the start of many of these chains, Your Honor, would not

10  make these appropriate exhibits for evidence in this matter.

11          THE COURT:  Well, I can always disregard the

12  commentary.

13          MR. WEAVER:  Absolutely, Your Honor.  Your choice.

14          THE COURT:  Okay.

15          MR. WEAVER:  And then the next bucket, Your Honor,

16  is Exhibits -- Landlord's Exhibits 11, 12, 13, 14 and 15 --

17  I'm sorry -- through 14.  These are photographs that, again,

18  we were just given on Friday.  The only backup for these

19  photographs is that the declarant said they were taken at

20  his direction.  Again, these would be clearly responsive to

21  discovery.  We didn't get a chance to depose the witness on

22  this information.  Again, I don't think it's probative at

23  all in any way, Your Honor, but, again, this seems

24  procedurally improper.

25          THE COURT:  Okay.

Page 10

1              MR. WEAVER:  And I believe Landlord Exhibit 15 is

2      another summary document.  This relates to certain wire

3      transfers.  I don't think the wire transfers are in dispute

4      here, Your Honor.  We just don't know where this document

5      really is sourced from.  Frankly, if this were admitted, we

6      don't think we would have a serious concern but, again, it's

7      just from a procedural standpoint.

8              And then finally, Exhibit 16 is also a summary

9      document.  This was attached earlier to a supplemental cure

10     objection in May.  There was no backup.  Presumably this

11     ties to Exhibit 1 as well and presumably ties to the

12     invoices we've just received.  But again, I'm just not sure

13     without much more sourcing than that that it's reliable

14     under the rules, Your Honor.

15             THE COURT:  Okay.  All right.  Was there an

16     agreement on discovery just to when it would be provided?

17     When was the discovery request made?

18             MR. WEAVER:  Your Honor, the discovery request was

19     made on May 17th.  And there was an agreement to produce on

20     June 17th, a week before the deposition.  I can read you the

21     discovery request, Your Honor, but they are as you would

22     imagine, the documents they relied upon to support their

23     cure claim.

24             THE COURT:  Okay.

25             MR. KUPETZ:  Good morning, Your Honor.  David

Page 11

1   Kupetz with SulmeyerKupetz, appearing on behalf of landlord

2   which is the Shomof trust, Vegas Group and East River Group.

3            THE COURT:  Good morning.

4            MR. KUPETZ:  Your Honor, with respect to these

5   evidentiary objections, I'd like to first, if the Court will

6   allow, address Landlord's Exhibits 5 through 10 because that

7   has some carryover with respects to some of the other

8   issues.

9            Those requests were not covered in any way by

10  Transform's discovery documents and -- request document

11  which I have if the Court would like to look at it.  I have

12  copies of Transform's discovery requests.  It became only

13  apparent during Mr. Shomof's deposition on June 24th.  And,

14  of course, Mr. Shomof is present in the courtroom, Your

15  Honor, because he's the declarant and can be cross-examined.

16           It became only apparent for the first time that

17  these e-mails were relevant to show, of course, the

18  performance.  Certainly, that was never an issue raised by

19  Sears.  The landlord had been working with Sears.  Part of

20  the argument here is --

21           THE COURT:  Can I see the discovery request?

22           MR. KUPETZ:  Yes, Your Honor.  May I approach?

23           THE COURT:  Sure.

24      (Pause)

25           THE COURT:  Okay.  You can go ahead.

Page 12

```
 1              MR. KUPETZ:  So these e-mails were produced in
 2     real time, a good portion of them, actually during the
 3     deposition because during the deposition for the first time
 4     it became apparent to myself and to the landlord that
 5     Transform was taking a position different from Sears that
 6     this April 1st, 2017 completion deadline was the real
 7     deadline date that hadn't been modified by the course of
 8     performance by the parties.  And therefore, we had these
 9     messages forwarded immediately.  And we handed what we could
10     during the deposition.  Given the timing -- I think the
11     deposition ended at 3:15 p.m. or something like that.  A
12     number of these messages were located very quickly by my
13     client's representatives who weren't at the deposition.
14     There were several that were at the deposition besides Mr.
15     Shomof.  And there were then subsequent messages that were
16     discovered in the next couple of days were then uploaded to
17     ShareFile.  And they were used in the declaration as
18     exhibits in the same form as they were produced to
19     Transform.  And the Court can disregard the forwarding
20     message.  I'd ask the Court to disregard that forwarding
21     message.  There's no real substance there.  We're not
22     intending -- it's not like a jury or something where there's
23     going to be some influence.
24              Also, the parol evidence rule does not apply as
25     set forth in the reply, which is ECF number 4624 at page 5.
```

Page 13

1    Under California law, which the parties concede is the

2    governing law here, "Course of performance can supplement,

3    qualify or modify contrary terms in a contract."  And as the

4    district court said in the Facebook case, and that's cited

5    at page 5 of the reply:  "California case law recognizes

6    that course of performance evidence is allowed to explain or

7    supplement integrated contracts" --

8             THE COURT:  Right.  Not modify.

9             MR. KUPETZ:  No.  It does talk about modify as

10   well.  But it explains supplement or modified.  The quote

11   there, though, is "explain or supplement integrated

12   contracts" --

13            THE COURT:  Right.  Exactly.

14            MR. KUPETZ:  -- "even when the contract" --

15            THE COURT:  Listen, I will hear from the other

16   side where their course of performance issue as far as the

17   rights to the money and the deposit was raised at any time

18   before the June cut off --

19            MR. KUPETZ:  Understood.

20            THE COURT:  -- date.

21            MR. KUPETZ:  Understood, Your Honor.  Just in

22   terms of procedurally, how this worked, as the Court, I

23   think, is aware, all that -- when the landlord filed its

24   original cure objection and the supplemental cure objection,

25   all we saw was the amount set forth --

Page 14

1           THE COURT:  Which was zero.

2           MR. KUPETZ:  -- for the cure was zero.

3           THE COURT:  I understand.  But I don't know if

4    there were discussions about -- or if people just went right

5    to discovery.  So were there discussions about the escrow --

6    the deposit?  It's actually not held in escrow, right?  Is

7    there an escrow agent?

8           MR. KUPETZ:  There is not, Your Honor.

9           THE COURT:  So it's just a deposit.

10          MR. KUPETZ:  The agreement --

11          MR. WEAVER:  A deposit, Your Honor.

12          MR. KUPETZ:  -- contemplated an escrow agent but

13   then the parties between themselves agreed never to use an

14   escrow agent.

15          THE COURT:  All right.

16          MR. KUPETZ:  So the --

17          THE COURT:  So was there a discussion about the --

18   what happened to the escrow -- the timing issue, et cetera,

19   before the June 17 cutoff date?

20          MR. WEAVER:  Your Honor, there was not really

21   substantive discussions amongst the parties --

22          THE COURT:  Right.

23          MR. WEAVER:  -- as to the legal matters.  No,

24   there weren't.

25          THE COURT:  So I'll admit those documents over the

Page 15

1    objection that they were produced late.  As far as their use

2    and their admissibility, I'll wait to hear the rest of the

3    evidence --

4             MR. KUPETZ:  Okay.  Thank you, Your Honor.

5             THE COURT:  -- as far as how they might be used if

6    at all.

7             MR. KUPETZ:  Understood, Your Honor.

8             THE COURT:  Okay.

9             MR. KUPETZ:  With respect to Landlord's Exhibit 1,

10   it's really presented as an illustrative summary.  It's

11   referenced in paragraph 16 of the Shomof declaration, ECF

12   number 4625.  The invoices and checks are referenced in

13   paragraphs 30 and 31 of the declaration.

14            THE COURT:  All right.  But if it doesn't foot,

15   it's really not helpful.  It's actually not -- to the

16   opposite.  It's potentially prejudicial.  So you tell me

17   that the underlying documents are in evidence.  We'll just

18   rely on those.

19            MR. KUPETZ:  And with respect to Exhibits 2, 3 and

20   4, those are copies of the underlying documents that are

21   referenced in Exhibit 1 and are also referenced in paragraph

22   16 of the Shomof declaration, ECF 4625.

23            THE COURT:  Right.  But I think this was a post-

24   discovery cutoff date objection, too.  So were other

25   invoices produced and not these?

Page 16

1           MR. KUPETZ:  I think the other invoices were

2   produced.  It was not any intent to omit any.  There may

3   have been a couple that weren't produced previously.  It

4   wasn't by -- it certainly wasn't by design.

5           THE COURT:  Okay.  Well, I've not reviewed these

6   three exhibits.  If they are not admitted -- I mean, they're

7   part of the cure claim, right?  They serve a base for the

8   cure claim?  What is the --

9           MR. KUPETZ:  There are some underlying --

10          THE COURT:  What are the invoices for?

11          MR. KUPETZ:  They're underlying backup material

12   that shows -- may not be necessary but underlying backup

13   material that shows the work that was done and then billed

14   to the landlord for which the landlord seeks reimbursement

15   from --

16          THE COURT:  But work done in connection with what?

17          MR. WEAVER:  Your Honor, I think to that

18   question's very clear.  This is for work that was done,

19   invoiced and paid by the tenant.  That's what the

20   declaration says.  And if you want, Your Honor, we can cross

21   on this and you can decide whether or not they're

22   admissible.

23          THE COURT:  I'll decide when I hear --

24          MR. WEAVER:  Okay.  It's based --

25          MR. KUPETZ:  Your Honor, just --

1           THE COURT:  No.  I'm not going to rule on this

2    now.  I'll decide when we have the examination.

3           MR. WEAVER:  Thank you, Your Honor.

4           MR. KUPETZ:  I think the only additional ones --

5           THE COURT:  Photographs --

6           MR. KUPETZ:  Yeah.

7           THE COURT:  -- and the two charts.

8           MR. KUPETZ:  Right.  So the photographs are really

9    just -- they're illustrative of the testimony that appears

10   in paragraphs 33 and 34 of the declaration.  And just shows

11   the Court exactly what the declarant is speaking of there.

12   He had these photographs taken under his direction.

13          THE COURT:  I don't think I need them.  I think

14   they're irrelevant.

15          MR. KUPETZ:  Okay.

16          THE COURT:  So I'll exclude those.

17          MR. KUPETZ:  And then with respect -- I think the

18   remaining ones, Your Honor, Exhibit 15, I believe --

19          THE COURT:  Right.  To the extent it's relevant,

20   I'll admit this.

21          MR. KUPETZ:  I mean, I think I heard counsel they

22   didn't really have an objection but I may have misheard.

23          THE COURT:  Yeah.  Well --

24          MR. WEAVER:  There's no debate, I think, Your

25   Honor, that money came in, some money came out.  I don't

1    think --

2              THE COURT:  And there are no issues about

3    inaccuracy on this one, right?

4              MR. WEAVER:  Correct.

5              THE COURT:  All right.

6              MR. WEAVER:  Yeah.  I just don't know the source

7    of it, et cetera.  I just think to the extent the parties

8    are not debating the fact that money came in and some money

9    came out, I don't think it's necessarily --

10             THE COURT:  Well, this has a specific dollar

11   figure attached to it, right?

12             MR. WEAVER:  Correct, Your Honor.  I don't think

13   the dollar amount is in dispute.  I think --

14             THE COURT:  It's not.  Okay.

15             MR. WEAVER:  For what was deposited and what has

16   been paid to the landlord by the tenant, there's no debate

17   about that, Your Honor.

18             THE COURT:  All right.  So that's fine.  So this

19   is admitted now.

20             MR. KUPETZ:  And, Your Honor, the final one is

21   Exhibit 16 which is a document that came from the

22   supplemental cure objection which is ECF 3477.  And what it

23   does is it just provides a detail breakdown of the

24   supplemental cure amount of 5,696,000 which is set forth as

25   well in the declaration in less detail.  This provides a

1    breakdown of the various categories.

2              THE COURT:  But I don't have the actual invoices

3    or checks or anything like that.

4              MR. KUPETZ:  I'm not sure.  I think that's right

5    but I have to --

6              THE COURT:  So I can't admit a summary of

7    something that's not in the record.  So that one's out.

8              So just to summarize then, Exhibit 1 in this

9    landlord exhibit list is not admitted.  The Exhibits 2

10   through 4 I'll determine as far as how they'll be used, if

11   at all, but otherwise would be admitted.

12       (Landlord's Exhibits 2 through 4 conditionally received

13   in evidence)

14             THE COURT:  The e-mails in 5 through 9 are

15   admitted except for the commentary which I'll disregard.

16   I'm sorry.  5 through 10.  Excuse me.

17       (Landlord's Exhibits 5 through 10 received in evidence)

18             THE COURT:  And then 11 through 14 are not

19   admitted.  15 is admitted and 16 is not admitted.

20       (Landlord's Exhibit 15 received in evidence)

21             MR. KUPETZ:  Thank you, Your Honor.

22             THE COURT:  Okay.

23             MR. WEAVER:  Thank you, Your Honor.

24             MR. KUPETZ:  Your Honor, if the Court will allow,

25   I'm prepared to present Mr. Shomof and -- again, if the

1    Court will allow, have his declarations admitted as his --

2    or adopted as his direct testimony.

3                THE COURT:  Okay.  That's fine.  And just to be

4    clear, those are the May 1, 2019 declaration and the July

5    26, 2019 declaration?  Are those the two?  They're in my

6    binder.  It's not an exhibit binder but it's the hearing

7    binder.  They're tabs --

8                MR. KUPETZ:  Yes.

9                THE COURT:  -- 2 and 6.

10               MR. KUPETZ:  Definitely the July 26th.

11               THE COURT:  I'm sorry.  3 and 6.  Excuse me.  Not

12   2.  3 and 6.

13               MR. KUPETZ:  Yeah.  That's correct, Your Honor.

14               THE COURT:  Okay.  So do you want to cross-examine

15   Mr. Shomof?

16               MR. WEAVER:  I do, Your Honor.

17               THE COURT:  All right.  So can you take the stand?

18        (Pause)

19               THE COURT:  Would you raise your right hand,

20   please?

21                       IZEK SHOMOF, WITNESS, SWORN

22               THE COURT:  And would you please spell your name

23   for the record?

24               THE WITNESS:  Good morning, Your Honor.  My name

25   is Izek Shomof, I-Z-E-K, Shomof, S-H-O-M-O-F.

Page 21

1              THE COURT:  Okay.  Now, Mr. Shomof, you submitted

2    two declarations in support of what I'll refer to as the

3    landlord's objection.  It's the Izek Shomof/Aline Shomof

4    Irrevocable Children's Trust, Vegas Group, LLC and East

5    River Group, LLC but I'll refer to them as the landlord.

6              So you submitted two declarations in support of

7    the cure objection to -- in connection with the motion to

8    assume and assign the lease of the store in Los Angeles.

9              The first declaration is dated May 1, 2019 and the

10   second is dated July 26, 2019.  You recall both of those

11   declarations?

12             THE WITNESS:  I do.

13             THE COURT:  Sitting here today knowing that they

14   would constitute your direct testimony in this contested

15   matter, do you still want that to be your direct testimony?

16             THE WITNESS:  Yes.

17             THE COURT:  And is there anything that you would

18   change in them knowing that it would be your direct

19   testimony?

20             THE WITNESS:  Yes.

21             THE COURT:  Okay.  And what would that be?

22             THE WITNESS:  What --

23             THE COURT:  What would you change?

24             THE WITNESS:  No.  I do not need to change.

25             THE COURT:  There's nothing that you would --

Page 22

```
 1              THE WITNESS:  No change.

 2              THE COURT:  -- change --

 3              THE WITNESS:  No.

 4              THE COURT:  -- as your direct testimony.

 5              THE WITNESS:  So --

 6              THE COURT:  Okay.  All right. So I will admit each

 7    of them as Mr. Shomof's direct testimony.

 8         (Declaration of Izek Shomof dated May 1, 2019 received

 9    in evidence)

10         (Supplemental declaration of Izek Shomof dated July 26,

11    2019 received in evidence)

12              MR. WEAVER:  Your Honor, I have a cross binder for

13    the witness and Your Honor, if I may approach?

14              THE COURT:  Okay.

15              MR. WEAVER:  Thank you, Your Honor.

16              THE COURT:  Uh-huh.

17                        CROSS-EXAMINATION

18    BY MR. WEAVER:

19    Q    Good morning, Mr. Shomof.

20    A    Good morning.

21    Q    I want to start with the construction estimate deposit.

22    And so this is tab 6 in your binder.  This is the 2015

23    amendment.  And looking just in general on pages 3 and 4 and

24    5, under this amendment, you agreed, Mr. Shomof, to perform

25    work related to low voltage services, HVAC, plumbing,
```

Page 23

1    façade, signage and freight elevators.  Correct?

2    A    Now let's go back for a second.  You said page --

3    Q    I'm sorry, Mr. Shomof.  In tab 6, if you look -- you

4    know, it's a little easier if we use the ECF pages.  So at

5    the top of the page, you'll see page 16 of 135.  You see

6    that?

7    A    Page 16?

8    Q    Of 135 at the top.

9    A    Okay.

10   Q    And you'll see that there's page 17 of 135 at the top

11   and page 18 of 135 at the top.  Do you see that?

12             MR. WEAVER:  Your Honor, may I just --

13             THE COURT:  So it's paragraphs 3 through --

14             MR. WEAVER:  3 through 10.

15             THE WITNESS:  16 of 135.  Yeah, I do see it.

16             THE COURT:  3 through 10.

17             MR. WEAVER:  Okay.

18             THE COURT:  Okay.

19   BY MR. WEAVER:

20   Q    So under this 2015 amendment, Mr. Shomof, you as a

21   landlord agree to do work related to low voltage, HVAC,

22   plumbing, façade, signage, seismic work and freight

23   elevators.  Correct?

24   A    Correct.

25   Q    And under this agreement, you as a landlord agreed to

Page 24

1    complete this work by April 1st, 2017, correct?

2    A    Yes.

3    Q    And you did not complete all of that work by April 1st,

4    2017, correct?

5    A    We did not due to the agreement that we had with Sears

6    that it should continue.

7    Q    Mr. Shomof, my question is you did not complete the

8    work by April 1st, 2017.  Correct?

9    A    Correct.

10   Q    Now if you turn to paragraph 25, Mr. Shomof, and this

11   is found on page 28 of 135, again, still in tab 6, and under

12   this agreement, you as a landlord provided the tenant with a

13   $3.25 million construction estimate deposit.  Correct?

14   A    Yes.

15   Q    And that was to "partially secure Landlord's design,

16   repair, construction and completion obligations under [the]

17   amendment".  Correct?

18   A    Correct.

19   Q    Now if you turn the page to subparagraph (d), Mr.

20   Shomof, also under this agreement, you agreed, under Section

21   (d), "In the event Landlord does not complete the work

22   contemplated in Sections 3, 4, 6 and 7" -- so that relates

23   to low voltage, HVAC, façade and signage -- "by April 1,

24   2017, the remainder of [the] funds in the Construction Fund

25   Escrow shall be released to [the] Tenant, at Tenant's

Page 25

1   election, so that [the] Tenant [may] cause...work to be

2   completed and [that] Tenant [may] be entitled to payment[s]

3   by [the] Landlord [of] any additional amounts necessary to

4   complete the work."

5       You agreed to that.  Correct, Mr. Shomof?

6   A   We agreed to the tenant election but tenant did not

7   elect for me to stop work and they will continue the work.

8   Q   Mr. Shomof --

9   A   The tenant election was to ask to proceed with the work

10  after April 1st.

11  Q   My question is, Mr. Shomof, you agreed to this

12  provision, correct?

13  A   Yes.

14  Q   And also you agreed that, under this provision, to the

15  extent that you the landlord timely complete the work in a

16  manner that's acceptable to the tenant "any remaining

17  Construction Estimate Deposit[s]" will be dispersed to you

18  subject to review and approval.  Correct?

19  A   Correct.

20  Q   Now, Mr. Shomof, the parties -- that is, the landlord

21  and the tenant -- did not enter into a written agreement to

22  adjust the April 1st deadline, correct?

23  A   Not exactly correct, no.

24  Q   Is there a written agreement between the landlord and

25  the tenant to adjust the April 1st deadline?  Yes or no, Mr.

Page 26

1    Shomof?

2    A    It's not a yes or a no question.  There is an e-mail

3    from Delores allowing us to proceed with the work after

4    April 1.

5    Q    We're going to come to that e-mail.  I think it's in

6    May of 2017.  But what I'm asking, Mr. Shomof, is there a

7    document --

8    A    Yeah.  It's a month later.

9    Q    Is there a document signed by you the landlord or your

10   representative and the tenant that adjusts the April 1st

11   deadline?  Yes or no?

12   A    A signed agreement, no, but there is an e-mail that's

13   allowing us --

14   Q    Thank you, Mr. Shomof.

15        Now, Mr. Shomof, you attached to your declaration a

16   number of invoices that you claim that you as the landlord

17   sent to the tenant and that the tenant then subsequently

18   paid.  Is that correct?

19   A    Correct.

20   Q    Okay.  We'll look at a few of those if we could.  So if

21   you'd turn to tab 7, Mr. Shomof -- I'm sorry.  Not tab 7.

22   If you look to tab 8 -- I apologize.  Tab 8, Mr. Shomof.

23   This is Joint Exhibit number 4 which was the Exhibit number

24   2 to your declaration.  Now this, Mr. Shomof, is an invoice

25   dated August 16th, 2017, invoice number 08001PR, in an

Page 27

1   amount of just north of 1.5 million.  Correct?

2   A    Correct.

3   Q    Okay.  If you turn to tab 9, Mr. Shomof, this is Joint

4   Exhibit 5, number 3 to your declaration.  This here is

5   another invoice also dated April (sic) 16th, 2017.  It's

6   also invoice number 08001PR.  But this is in the amount of

7   478,000, correct?

8   A    Correct.

9   Q    And on this document is a paid stamp of 8/12/17,

10  correct?

11  A    Correct.

12  Q    If you turn the page, Mr. Shomof -- this is still

13  within that tab -- you'll see yet another invoice also dated

14  August 16th, 2017, also numbered 08001PR, again in the

15  amount of 478,000 but this has a paid stamp of 8/18/17.

16  Correct, Mr. Shomof?

17  A    Are we looking at the same invoice copied twice?

18  Q    Mr. Shomof, this is attached to your declaration.  I'm

19  just asking you if this is the evidence that you've

20  submitted to the Court.

21  A    Yes.  Yes.

22  Q    Now, Mr. Shomof, if you turn to tab 10, tab 10 is Joint

23  Exhibit 6, number 4 to your declaration.  This is another

24  invoice dated August 16th, 2017.  This one is invoice number

25  08002PR.  And this has a number -- amount just north of one

Page 28

1    million dollars.  Correct?

2    A    Correct.

3    Q    If you turn to tab 11, Mr. Shomof, this is Landlord

4    Exhibit number 2, another invoice dated August 16th, 2017.

5    Again, the number 08002PR, but this one's in the amount of

6    983,000.  Correct?

7    A    Correct.

8    Q    And finally, Mr. Shomof, if you look at tab 12, this is

9    Joint Exhibit 7, number 6 to your declaration, another

10   invoice from August 16th, 2017.  This one is numbered

11   08002A.  And this is in the amount of $18,853, correct?

12   A    Correct.

13   Q    Okay.  Now in addition to these invoices, Mr. Shomof,

14   you also attach to your declaration a set of backup invoices

15   and checks, correct?

16   A    Correct.

17   Q    And this is a backup, the invoices and checks, that

18   went to you or paid by you that were the backup for invoices

19   you sent to Sears that Sears then paid, correct?

20   A    Correct.

21   Q    Now, Mr. Shomof, they were Exhibits 5, 8 and 10 to your

22   declaration.  They're Landlord Exhibits 2, 3 and 4.  There's

23   approximately 300 pages here, Mr. Shomof.  You're familiar

24   with these documents, correct?

25   A    I am -- I have not reviewed every -- each of the

Page 29

1    document.

2    Q    You attached this to your declaration, did you, Mr.

3    Shomof?

4    A    Yes, but not in detail.  Yes.

5    Q    And you swore under oath that this was the backup for

6    those invoices, correct?

7    A    Correct, yes.

8    Q    Mr. Shomof, how many of these invoices and checks are

9    dated after April 1st, 2017?

10   A    I am not sure.

11   Q    You're not sure.

12   A    No.

13   Q    Well, I just received these on Friday but we've gone

14   through these, Mr. Shomof.  And I can represent to you that

15   only 14 of these invoices are dated after April 1st, 2017.

16   Do you have any reason to doubt that representation?

17   A    I just don't remember it but I shall review it again.

18   Q    And those 18 add up to less than $80,000.  Again, any

19   reason to doubt that representation?

20   A    Could very much be.

21   Q    Okay.  And some of these invoices, Mr. Shomof, date

22   back to 2014, correct?

23   A    Yes.

24   Q    And some of them date back to 2015, correct?

25   A    Correct.

Page 30

1   Q    And there are no invoices in the backup you provide to

2   this Court dated after 2017, correct?

3   A    There are.

4   Q    Invoices within these three exhibits, Mr. Shomof?

5   A    Invoices from my company to Sears.

6   Q    Understood.  I'm not asking about the single-page

7   invoices that you sent to Sears.  I'm talking about the

8   backup, the work that was actually done.  There are no

9   invoices submitted to this Court dated after 2017, correct?

10  A    The work that we have done and a third party that have

11  done work, but there is other work that we have done that

12  our labor worked and we billed Sears for it.

13  Q    Mr. Shomof, you testified -- in your declaration, you

14  wrote that this is the backup for the invoices that you

15  submitted to Sears that Sears has paid.  Correct?

16  A    Correct.

17  Q    Thank you.

18       Now let's look at that e-mail that we were talking

19  about.  It's tab 15 in your binder, Mr. Shomof.  Now this is

20  the e-mail you were referencing earlier, correct, with

21  Dolores from Sears?

22  A    Yes.

23  Q    Okay.  And if you go to the end of the e-mail chain --

24  just for reference, it begins in May of 2017.  Correct?

25  A    It's such a small print I cannot see it.

Page 31

```
 1    Q     I'm sorry, Mr. Shomof.  This is what was produced

 2    attached to your declaration.  So I apologize for that.  I

 3    can represent to you, Mr. Shomof, that the e-mail's dated

 4    May 11th, 2017.  Are you okay with that representation?

 5    A     Yes.

 6    Q     Okay.  So this e-mail that you've pointed to was after

 7    the April 1st, 2017, correct?

 8    A     Correct.

 9    Q     And in the e-mail on the first page -- right?  Again, I

10    apologize that the font is small.  It's May 11th at 2:17.

11    This is an e-mail from Dolores.  Dolores acknowledges in the

12    e-mail that you've missed the deadline of April 1st, 2017.

13    Correct?

14    A     Yes.

15    Q     And then she goes on to say, "With that being said" --

16    or "that being the case, I'm asking that the HVAC and the

17    seismic work be done at the same time.  The expense of

18    moving product and fixtures will be double if we need to do

19    it twice.  This is a great store for Sears and we do not

20    want to affect the customers or associates more than

21    needed."  Correct?

22    A     Yes.  But I think you missed the paragraph when she

23    said speak to legal and legal will -- and then she said

24    after -- legal will approve it.

25    Q     Well, let's look at her words, Mr. Shomof.  It says "I
```

Page 32

1   have spoken to legal" --

2   A    If you don't mind, yeah.  It sounds --

3   Q    -- "and here are my remarks."

4   A    -- like -- now what -- sorry.

5   Q    "I've spoken to legal and here are my remarks."  That's

6   what Dolores wrote, correct?

7   A    Yeah.

8   Q    Okay.  And so she acknowledged in the e-mail that you

9   had missed the deadline.  Correct?

10  A    Yes.

11  Q    And she said, in light of that, they want you to do the

12  HVAC and the seismic together, correct?

13  A    Yes.

14  Q    Okay.  And her assumption, if you look down in the next

15  paragraph, was the seismic work -- the permits we pulled

16  later that year, 2017, and the work will begin in January

17  2018.  Correct?

18  A    Yes.

19  Q    Okay.  And above your associate, Leo, writes as it

20  relates to the seismic -- it's number 2 in the top e-mail:

21  We "anticipate having permits around September of this year

22  and the goal beginning early 2018."  Is that right?

23  A    Correct.

24  Q    Okay.  Now I want to turn to the latest invoice, Mr.

25  Shomof, that you had provided, which is tab 17 in your

Page 33

```
 1    binder.  Now this, Mr. Shomof, is Joint Exhibit number 10.

 2    It was attached as Exhibit 17 to your declaration.  But it's

 3    also the invoice that was attached in January in support of

 4    your original cure objection.  Do you see that?

 5    A    Yes.

 6    Q    And this is in the amount -- it's dated January 23rd,

 7    2019.  It's in the amount of just over 322,000, correct?

 8    A    Correct.

 9    Q    And this invoice has an assumption in it, doesn't it?

10    A    What do you mean by --

11    Q    If you look in the middle, there's an asterisk.  And

12    there's a note halfway down that says "Assuming Sears" --

13              THE COURT:  I'm sorry.  What exhibit is this?

14              MR. WEAVER:  I'm sorry.  We're in tab 17, Your

15    Honor --

16              THE COURT:  Of the witness binder?

17              MR. WEAVER:  -- of the cross binder but it's also

18    Joint Exhibit number 10.

19              THE COURT:  Okay.  Fine.

20              MR. WEAVER:  Apologize, Your Honor.

21              THE COURT:  Okay.

22    BY MR. WEAVER:

23    Q    So there's an assumption in the middle of this invoice,

24    correct?

25    A    Yes.  Correct.
```

Page 34

1   Q    And that assumption is that Sears did not pay for the

2   equipment, correct?

3   A    Yes.  We will bill that amount -- we had the invoices

4   sitting on the table and we were trying to clarify Sears

5   paid for it or not.  We have not gotten no answer.  So we

6   said assuming Sears did not pay that amount, 322,649 is

7   owed.

8   Q    You didn't know whether or not you'd been paid,

9   correct, Mr. Shomof?

10  A    We did not know if Sears paid it to the third party.

11  Q    Ahh.  So they could have paid it to the third party,

12  Mr. Shomof.  But you're seeking to recover it here, correct?

13  A    Assuming -- if you look at what it says in the middle,

14  assuming that Sears did not pay for it.  Yes.

15  Q    Mr. Shomof, you provided absolutely no backup for this

16  invoice, correct?

17  A    What -- the backup that we provided, that 75 percent --

18  the actual fact of the (indiscernible) that 75 percent of

19  the work is completed.  And we showed it in the pictures.

20  And the pictures -- you asked for the judge to basically

21  omit it.

22  Q    Mr. Shomof, you provided absolutely no backup to this

23  invoice, correct?

24  A    No backup for the $205,000 if it was paid or not, we

25  didn't know.

Page 35

```
 1   Q    No backup for the 322,000 you're claiming through this
 2   invoice.  Correct, Mr. Shomof?
 3   A    Backup to you or backup to Sears?
 4   Q    In this case.  Backup in this case.
 5   A    I have to look into it.  No, I'm not sure.
 6   Q    It's not attached to your declaration, correct, Mr.
 7   Shomof?
 8   A    If it's not then it's not --
 9   Q    It's not.
10        Now let's turn to the seismic retrofit, Mr. Shomof.
11   And for this, we'll probably go back to tab 6, which is the
12   2015 amendment.  And Mr. Shomof, under the 2015 amendment,
13   you as the landlord agreed to be responsible for all the
14   costs, correct?
15   A    Responsible of all the -- which costs?
16   Q    All the costs associated with the construction called
17   for in the amendment.  Correct?
18   A    Yes.
19   Q    Okay.  And if you look at paragraph 8, which is page 17
20   of 135.  We're still in tab 6.  This is Joint Exhibit number
21   2.
22   A    Yes.
23   Q    Under "Seismic Work", you agreed that you were
24   responsible for all necessary seismic repairs and
25   improvements, correct?
```

Page 36

1    A    Yes.

2    Q    And you also agreed that you would take best efforts to

3    pull the permits 12 months after the city of Los Angeles

4    approved, correct?

5    A    Correct.

6    Q    And then 12 months after that to complete the work.

7    Correct?

8    A    Correct.

9    Q    You also agreed that the plans and specifications,

10   schedules, authorized hours of construction activity and

11   remediation plan for the seismic work would be pre-approved

12   by the tenant pursuant to the demolition and construction

13   protocol attached to the amendment.  Correct?

14   A    Correct.

15   Q    And you also agreed that you would conduct this work in

16   a manner that creates the minimum possible visual and noise

17   inconvenience to the tenant and the customers.  Correct?

18   A    Correct.

19   Q    Now, Mr. Shomof, you pulled the permits for the seismic

20   retrofit in February of this year, correct?

21   A    Correct.

22   Q    Now your son, Jonathan, sent a letter to counsel for

23   Sears, for the tenant, in September of 2018, correct?

24   A    Correct.

25   Q    And this is tab number 18 in your binder.  It is Joint

Page 37

1      Exhibit number 3.  Let me know when you're there, Mr.

2      Shomof.

3      A    I'm here.  I've seen it.

4      Q    And in this letter, Jonathan says, "Hopefully, Sears

5      will agree to close from February 1st, 2019 to August 15,

6      2019."  Correct?

7      A    Correct.

8      Q    Now nowhere in this letter, that's tab 18, is there a

9      detailed scope of work or detailed set of construction

10     plans, correct?

11     A    Yes.  What scope of work there is attached.  If you

12     look at Exhibit 3 --

13     Q    Well --

14     A    -- it basically detail how we're going to -- how we're

15     going to be -- start the job and setting up what is --

16     Q    Is that the picture, Mr. Shomof?  I'm sorry.  This one

17     doesn't have page numbers.  I apologize.

18     A    Picture of detail of how will it be.  And with

19     timeline.  Again, on Exhibit 3, the page after that --

20     Q    And we'll come back to the timeline in a second.  But

21     there's no construction plans here, correct, Mr. Shomof?

22     A    Assuming Sears will want to proceed with continuing,

23     plans will be submitted.  The plan is the size of -- we have

24     plans this size of my stand where I'm sitting.

25     Q    So you were looking for a negotiation.  Correct, Mr.

1    Shomof?

2    A    I was not looking for negotiation.  I was looking to

3    agree on strategy how we're going to start construction.

4    Q    So this related to strategy, not the actual

5    construction plans.  Correct, Mr. Shomof?

6    A    Can you repeat it?

7    Q    This related to a strategy issue not the actual

8    construction specifics.  Correct, Mr. Shomof?

9    A    Actual construct -- we were planning to start

10   construction in February.

11   Q    But there's no plans in this letter, correct?

12   A    Well --

13   Q    Yes or no, Mr. Shomof?

14   A    Well, there is not, no.

15   Q    Okay.

16   A    There is not.

17   Q    Right.  And there is a timeline you said, Mr. Shomof,

18   in here.  And this timeline assumes, does it not, that Sears

19   would shut down for six months.  Correct?

20   A    Yes.

21   Q    There's no other timeline in this letter, correct?

22   A    In that letter, no.

23   Q    Okay.

24   A    But probably other ones, yes.

25   Q    But this is the only letter you've attached to your

1   declaration, correct, Mr. --

2   A     Yes.

3   Q     -- Shomof?

4   A     This is what we -- we have to seal.

5   Q     Okay.  And if you look at tab 19, Mr. Shomof, this is

6   the e-mail that Jonathan sent to counsel for tenant that

7   attached the letter at the top.  And below there's a

8   response from counsel for the tenant.  Correct?

9   A     Yes.

10   Q     And in that response, counsel says, "To be clear, this

11   letter does not appear to be offered in the spirit in which

12   we discussed it last week.  It comes across more as a

13   direction from you as opposed to offering a proposed

14   timeline and outlining some issues that remain to be

15   negotiated before the process begins."

16   A     Yes.

17   Q     "The history of this project is riddled with errors

18   that have put our employees and patrons at risk and reach

19   negotiated protocols, not to mention broken promises about

20   timing.  Just two months ago, you notified us that you would

21   likely not pursue this project."

22       This was the response you got from your letter,

23   correct?

24   A     Yes.

25   Q     And if you turn the page, Mr. Shomof, at the end of

Page 40

1    counsel's response to you, he states:  "I have offered to

2    meet with your lawyer so we can start to work through these

3    issues.  And I renew this offer."  That's what he told you.

4    Correct, Ms. Shomof?

5    A    Yes.

6    Q    And below that, your son forwards the letter to you and

7    said, "Just want to confirm that you saw this e-mail.  Let

8    me know if you want to respond."  Correct?

9    A    Yes.

10   Q    And there is no written response to that e-mail,

11   correct, Mr. Shomof?

12   A    It's probably written response from my attorney to him.

13   Q    You didn't attach any written response to your

14   declaration, correct, Mr. Shomof?

15   A    So you're asking me if I attached a written response or

16   you're asking me if there was a written response to --

17   Q    Well --

18   A    -- Steve?

19   Q    -- Mr. Shomof, all I can do is talk about the evidence

20   that you've tried to put before the Court.  And I'm asking,

21   is there any evidence in the record before this Court of a

22   written response to this e-mail.  Yes or no?

23   A    If you don't have it here then it's not.

24   Q    Mr. Shomof, the entitlements issued by the city of Los

25   Angeles, they have not expired yet, correct?

1   A    Not yet.  We have another probably a lifetime --

2           THE COURT:  I'm sorry?

3   A    -- or another month.

4           THE COURT:  How many --

5           THE WITNESS:  Maybe another 30 days before it

6   expiring.

7   BY MR. WEAVER:

8   Q    You testified in your declaration that September 16th

9   is the date you provided.  Correct, Mr. Shomof?

10  A    I testified to what?

11  Q    September 16th is in your declaration, correct?

12  A    Yes.

13  Q    Okay.

14  A    It's -- I think it's a little bit before September

15  16th.

16  Q    So your declaration isn't correct, Mr. Shomof?

17  A    I am not sure.  I think it's before.  It's -- my

18  deadline was six months from February 16th.  So whatever it

19  comes.

20  Q    Understood, Mr. Shomof.  And on June 24th, Mr. Shomof,

21  when I deposed you, you testified under oath that the

22  project that we're discussing was not dead, correct?

23  A    You asked me if the project is dead and I answered back

24  to you I put my lifetime into this project.  I want to

25  believe not to.  The reason is because I was negotiating

Page 42

1     with someone to JB and that negotiation fell through.

2     Q    Mr. Shomof, if you turn to tab 1 in your binder, that's

3     a copy of your deposition transcript.  You remember being

4     deposed on June 24th, Mr. Shomof?

5     A    I do, yes.

6     Q    Your counsel was there, correct?

7     A    Yes.

8     Q    Court reporter was there, correct?

9     A    Yes, I know.

10    Q    You swore to tell the truth at that time?

11    A    Absolutely.

12    Q    If you would turn with me, Mr. Shomof, to page 146 of

13    your deposition --

14    A    What page again?

15    Q    146, Mr. Shomof.  And starting on line 20, I'm going to

16    read the question and answer.  If you could read along with

17    me, please.

18    "Q    Mr. Shomof, is the development plan for Boyle Heights

19    that we've been discussing today dead?

20    "A    I hate to say, I literally hate to say even maybe.  I'm

21    trying.  This is something that is my flux sheet on my

22    projects.  I've done 25 other projects.  This is the biggest

23    one.  This is a -- I put my heart and soul into it.  I want

24    to get it to happen and developed.  I've been through hell

25    with the financing.  I've been through hell with a lot of

Page 43

1    getting permits.  It was hard.  The answer is I hope that it

2    is in some way I can maybe salvage it.

3    "Q   So the answer is no, it is not dead?

4    "A   Yes.  The answer is no, it is not dead."

5        Did I read that correctly, Mr. Shomof?

6    A    Yes, you did.

7    Q    Okay.  And in your declaration of July 26th, Mr.

8    Shomof, you testified the first time that during the

9    deposition, you were in discussion with investors for a

10   joint endeavor, correct?

11   A    Correct.

12   Q    And during the deposition when I asked you about

13   whether or not the project was dead, you didn't say a word

14   about those investors.  Correct?  Yes or no?

15   A    The answer that you -- you've received here I chose the

16   person with hope.

17   Q    Understood.

18   A    I hoped that the project would not die.

19   Q    But you didn't say anything about other investors.

20   Correct, Mr. Shomof?

21   A    I was not asked if I have other investors.  So I did

22   not say that.

23   Q    So you didn't say a single word about other investors

24   when we were talking about whether the project was dead.

25   Correct, Mr. Shomof?

1   A     Did you ask me if there was other investors?

2   Q     It's a yes or no question, Mr. Shomof.

3   A     No.  It doesn't say that -- it doesn't say at my

4   deposition what I conduct.

5              THE COURT:  I can read the deposition.

6              MR. WEAVER:  Understood, Your Honor.  I'll move

7   on.

8   BY MR. WEAVER:

9   Q     Mr. Shomof, to keep the entitlements valid, you need to

10  begin construction, correct?

11  A     Correct.

12  Q     And to begin construction, you need to call in an

13  inspector to show that you've started construction, correct?

14  A     Correct.

15             MR. WEAVER:  No further questions at this time,

16  Your Honor.

17             THE COURT:  Okay.

18       (Pause)

19             THE COURT:  Any redirect?

20             MR. KUPETZ:  Yes.  Thank you, Your Honor.

21             THE WITNESS:  Your Honor, if you don't mind, can

22  you give me a bottle of water?

23             THE COURT:  Sure.

24             THE WITNESS:  Thank you.

25             THE COURT:  That's fine.

1          THE WITNESS:  Thank you very much.

2                    REDIRECT EXAMINATION

3     BY MR. KUPETZ:

4     Q    Mr. Shomof, I'd like to ask you some questions first

5     with regard to the construction estimate deposit.  Prior to

6     the commencement of Sears' Chapter 11 case, what sort of

7     communications were going on with representatives at Sears

8     and the landlord with regard to construction estimate

9     deposit?

10    A    Rephrase your question.

11    Q    Well --

12    A    And if you can speak louder.

13    Q    Okay.  I'm sorry.  I'm sorry.  Let me rephrase it.

14    It's too broad a question, I think.

15         After April 1 of 2017 and prior to the commencement of

16    Sears' Chapter 11 case, with respect to the construction

17    estimate deposit, did the landlord and representatives of

18    Sears have ongoing regular communications?

19    A    Yes.

20    Q    And what was the substance of those communications?

21    A    On the continuous work that is happening way after

22    April 1.

23    Q    And was Sears' representatives asking the landlord to

24    do certain work covered by the construction estimate deposit

25    after April 1, 2017?

Page 46

1   A    We were doing what was agreed on to do.  It may not be

2   completed on April -- before April 1 of 2017.  So we were

3   continuing -- continue to finish what left to be done.

4   Q    And was --

5   A    As of now, it's not 100 percent completed.

6   Q    And after April 1st of 2017, was Sears asking you to do

7   that work?

8   A    Yes.

9   Q    And were the communications between landlord and Sears

10  to the effect that landlord would be reimbursed from the

11  construction estimate deposit for that work?

12          MR. WEAVER:  Objection, Your Honor.  It's leading,

13  that question, Your Honor.

14          THE COURT:  You should rephrase it.

15  BY MR. KUPETZ:

16  Q    That work that was being done after April 1, 2017, with

17  respect to the categories covered by the construction -- by

18  the construction estimate deposit --

19          THE COURT:  Who was to pay for it?  Or how was it

20  to be paid for?

21          THE WITNESS:  As agreed on the agreement, as

22  construction proceeding and completing, they would pay us.

23  And they continued paying us after April 1 of 2017.  They

24  paid us a year later in 2018, April of 2018.  They continued

25  paying us.

Page 47

1    BY MR. KUPETZ:

2    Q    And that payment came from the construction estimate

3    deposit as you understand it?

4    A    The payment was coming from the payment -- from the

5    deposits, yes.

6    Q    And that was for work done after April 1, 2017.

7    A    Correct.

8    Q    Now in doing work after April 1, 2017, was Landlord

9    relying on representations of Sears about getting paid?

10          MR. WEAVER:  Again, Your Honor.  He's testifying

11   here.

12          THE COURT:  You have to stop leading.

13          MR. KUPETZ:  I'll rephrase it.

14   BY MR. KUPETZ:

15   Q    Why did you -- why did Landlord do work after April 1,

16   2017?

17   A    Because we owed it as agreed.  Job needs to be

18   completed.  So we continued doing it after April 1 and -- of

19   2017 and we were getting paid, just like I said before.

20   Q    Now is it your understanding -- did Sears make any

21   requests to Landlord with regard to the timing of the work?

22   A    Repeat it again.

23   Q    With respect, for example, to the HVAC work, was there

24   a request made by Sears?

25   A    Yes.  They preferred to do it together with the seismic

Page 48

1    retrofit.  That's her recommendation.  Dolores -- we wanted

2    to do it before and get paid, the HVAC.  She said we rather

3    -- after she's basically specifying "I spoke to legal and we

4    prefer doing it together with the seismic."

5    Q    Now what is the status of the completion of the work

6    covered by the construction estimate deposit?

7    A    All the HVAC units which I have pictures -- and I would

8    love to share it with the judge -- Your Honor here, all the

9    HVAC, the compressor on the outside of Sears space, it's

10   already been installed and connected.  All the IT room, all

11   the electronics of their computers and everything has been

12   relocated into the Sears space.  HVA -- a big portion of the

13   HVAC was done in the IT room.  All the façade was completed.

14   All the signage were completed and installed.  The majority

15   of the work was done.  What got left to do is put the HVAC

16   condensers inside Sears' space.  And the condensers, it's

17   already been paid for, installed on Sears' property in a

18   containers which I attached pictures to show that the

19   condensers are there.  We were ready to do it.  But they

20   asked us to do it at the later time.  When I say they, I

21   mean Sears.  Dolores from Sears.

22   Q    Now after the commencement of Sears' Chapter 11 case,

23   did Landlord receive any substantive communications or

24   response from Sears with regard to any type of construction

25   at the property?

Page 49

1    A     After what date?

2    Q     The commencement of the Chapter 11 case which was mid-

3    October of last year.

4    A     When Sears went into bankruptcy and that was shocking

5    for us, no communication whatsoever with Sears.  Everything

6    just died.

7    Q     Now is it correct -- I know counsel for Transform asked

8    you about communications with Mr. Velkei.  Is it correct

9    that with respect to the renovation of the project that

10   Landlord was in communications with Sears' counsel, Mr.

11   Velkei?

12   A     I was continuously meeting with Steve Velkei and Alan

13   Shaw from Sears.  Steve Velkei is Sears' attorney.  Alan

14   Shaw is Sears' representative in regards to construction.

15   We met few times and we were talking about how we were going

16   to be proceeding with the construction of Sears.

17   Q     And what did Mr. Velkei tell you in terms of further

18   communications once Sears commenced its Chapter 11 case?

19   A     Again, Steve is the only contact that I had.  I tried

20   getting a hold of Alan Shaw.  Alan Shaw was either fired or

21   quit or laid off.  So there was no -- nowhere to be found.

22   Alan Shaw was nowhere to be found, no reply whatsoever from

23   Sears.  I kept on going back to Steve.  And up until I would

24   say a month through later when Steve says let me Izek, I'm

25   in limbo myself.  I don't know where he's going.  At one

Page 50

```
 1   time, Steve was get -- got laid off and rehired again.  So

 2   Steve says, Izek, the best thing for you I recommend you get

 3   yourself a bankruptcy attorney to help you here.

 4   Q    And is that what you did?

 5   A    And that's what exactly I did.

 6   Q    And then did you continue on behalf of the landlord to

 7   try to reach out to Sears?

 8   A    Repeatedly.

 9   Q    And did you get any substantive response from Sears?

10   A    Nothing.  Even Steve himself, attorney for Sears, could

11   -- couldn't get a hold of no one.

12   Q    With respect to the current status of the project and

13   whether or not it's dead and the questioning that you were

14   receiving, what is your view of the current status of the

15   project?

16   A    Can you repeat it again, please?  You were asking me a

17   question?

18   Q    Yes.  What is the current status of the project, the

19   renovation and rehabilitation of the property, the big

20   project, not --

21   A    For the overall project?

22   Q    Yes.

23   A    What is the status of it?  It just died out.  I mean,

24   the lender pulled away.  Once the lender pulled away, I have

25   no funds to basically start construction.  So died out.
```

1    Q     And why did that occur?

2    A     Because there was a condition -- one -- there was a

3    condition with the lender that they want to see an agreement

4    with Sears that they will allow us to go in and do the

5    seismic retrofit.  They were afraid -- they knew that Sears'

6    bankruptcy, it's an issue.  They were afraid to finalize the

7    loan and start funding.  And then I have no access to Sears

8    which I told them Sears are occupying 70 percent of the

9    ground floor.  I have another 30 percent of the ground floor

10   that I can start construction in the 70 per -- in the 30

11   percent.  And they said what happened if Sears would go in

12   bankrupt for another year and they're not going to give you

13   access to their space.  So that's why I was reaching out to

14   Sears repeatedly to try to some kind of an agreement from

15   them to give my lender to assure the loan or to fund the

16   loan but to know if they're back in April of 2019 -- March

17   or April.  They just send us a letter and say we are pulling

18   off, pulling away.

19              MR. KUPETZ:  Thank you.

20              THE COURT:  Any recross?

21              MR. WEAVER:  I'll be brief, Your Honor.

22                      RECROSS-EXAMINATION

23   BY MR. WEAVER:

24   Q    Mr. Shomof, the evidence that you've submitted in this

25   case in support of the work that you've done is contained in

1    the three exhibits that we've been talking about, the

2    invoices, correct?  That's the evidence you submitted.

3    A    I submitted more than that.  I don't know what you're

4    showing.  I submitted bunch of invoices here that were paid

5    after -- all the way up to April of 2018.  And it seems like

6    you're not talking about it.

7    Q    Well, Mr. Shomof --

8    A    And I'm wondering why.

9    Q    Mr. Shomof, you testified before that some of the

10   invoices are from 2014, correct?  That you incurred.  2014,

11   correct?

12   A    I testified because you mention.  I said could be, yes.

13   Q    And the first invoice from you to Sears is in 2017,

14   correct?

15   A    Wait a minute.  I am little confused.  The agreement

16   occurred with Sears on 2015.

17   Q    Correct.

18   A    And you're saying --

19   Q    The first invoice --

20   A    The amended -- hold on.

21   Q    -- that you sent --

22   A    Hold on.

23   Q    -- in to Sears --

24   A    I'm a little confused here.  If you don't mind, let me

25   ask you a question.  What you're saying here is work was

1   done prior to the amendment of the agreement with Sears?

2   Q   By looking at the calendar, that would seem to be the

3   case.  But that's not my question, Mr. Shomof.  My question

4   is, you've submitted evidence that says there was -- part of

5   the backup is from 2014/2015.  The first invoice that you

6   sent to Sears is dated August 16th, 2017.  Correct?

7   A   The first invoice?

8   Q   That you sent to Sears.

9   A   Was when?

10  Q   August 2017.  Correct?

11  A   Hold on.  I have it here.  Before I answer, let me just

12  see it and make sure.

13      Yes.  I have August 16 --

14  Q   2017.  Correct, Mr. Shomof?

15  A   Correct.

16  Q   Okay.  Now, Mr. Shomof, you also testified about having

17  possession of 30 percent of the ground floor of the

18  building, correct?

19  A   Correct.

20  Q   You could go tomorrow and begin construction on that 30

21  percent.  Correct, Mr. Shomof?

22  A   I cannot go tomorrow and start construction because I

23  have no financing.

24  Q   But for financing, Mr. Shomof, you could tomorrow -- on

25  Saturday, perhaps not -- on Monday to the 30 percent and

Page 54

1   begin construction.  Correct, Mr. Shomof?

2   A     Except for funding, yes.

3           MR. WEAVER:  No further questions, Your Honor.

4           THE COURT:  Okay.  Any redirect on that?

5           MR. KUPETZ:  No, Your Honor.

6           THE COURT:  Okay.  You can step down, sir.

7           THE WITNESS:  Step down?

8           THE COURT:  Yeah.

9       (Witness excused)

10          MR. WEAVER:  Your Honor, are you prepared to hear

11  argument at this time?

12          THE COURT:  Well, let me just make sure.  Is there

13  any other evidence other than what's in the record and the

14  testimony that I've just heard?

15          MR. WEAVER:  Nothing from Transform, Your Honor.

16          THE COURT:  Okay.

17          MR. KUPETZ:  Just the declarations.

18          THE COURT:  Right.  Those are already in evidence.

19  Okay.

20          Just going back to the evidentiary rulings at the

21  start of the hearing, I will admit the invoices in Landlord

22  2 through 4 in that evidence binder.

23      (Landlord's Exhibits 2 through 4 received in evidence)

24          THE COURT:  Okay.  So then I will hear brief oral

25  argument.

1           MR. WEAVER:  I will try to be brief, Your Honor.

2    Again, Andrew Weaver, Cleary Gottlieb, on behalf of

3    Transform.

4           Your Honor, as you know, on May 13, 2019, the

5    debtors assumed and assigned the vast majority of its leases

6    to Transform.  Since then, Transform has worked to resolve

7    any outstanding landlord objections and continues to make

8    good progress on that front.  Unfortunately, we were not

9    able to reach consensual resolution as to this property,

10   Your Honor, which is why we're here today.

11          The store at issue, Your Honor, occupied the

12   portion of the building on East Olympic Boulevard in Los

13   Angeles and was subject to a sale lease back in 2004.  The

14   building and the property are also the subject of certain

15   tax entitlements in favor of the landlord that are tied to

16   the redevelopment project.  Now this store is a key part of

17   Transform's go forward plan, Your Honor.  And it's actually

18   one of the best performing stores in the Sears portfolio.

19          There are two disputes at issue here before Your

20   Honor.  And both of them are improper attempts by the

21   landlord to benefit from the Sears bankruptcy and present no

22   actual contract of fault that would be the basis of a proper

23   cure objection.

24          The first, Your Honor, the landlord seeks the

25   return of a construction estimate deposit when there is no

Page 56

1    dispute to the fact that the landlord failed to meet an

2    unambiguous deadline.  And more importantly, Your Honor, the

3    work covered by that deposit is not yet complete.  So

4    there's nothing, in fact, for us to be deciding until that

5    work is done.

6              The second, Your Honor, the landlord invokes the

7    covenant of good faith and fair dealing in order to try and

8    collect speculative consequential damages due to the fact

9    the landlord has not moved forward with the project and is

10   at risk of losing those tax entitlements.

11             Just briefly in background, Your Honor, the

12   operative lease here is Joint Exhibit 1.  It's from 2011.

13   This is before the landlord had bought the building.  And

14   it's very clear in paragraph 2 that the parties acknowledge,

15   most critical, the successful operation of the business at

16   the premise that the tenant have access, use and enjoyment

17   of the building.

18             Now following the landlord's purchase of the

19   building, Your Honor, the parties entered into a 2015

20   amendment whereby the 2011 lease still controls the parties'

21   responsibilities and obligations except to the extent the

22   2015 amendment conflicts and the amendment would then, Your

23   Honor, control.

24             Now, Your Honor, we're here on a cure dispute.

25   And Your Honor, of course, is well familiar with U.S.C.

Page 57

1   365(b) which basically provides that if there's a default

2   under an unexpired lease, the trustee, or here that are in

3   possession are here Transform, must cure that default and

4   compensate for any actual pecuniary loss to such party

5   resulting from such default.  Now, Your Honor, there's no

6   dispute as to the effectiveness of the leases.  The leases

7   are in effect and have not expired.

8          There are two categories, Your Honor, of what we

9   call proper cure objections.  The first is for CAM charges.

10  In the original cure objection filed in January, the

11  landlord sought over $5,000 in CAM charges.  Those charges

12  weren't actually due until February.  In February, the

13  tenant did, in fact, pay those CAM charges with check number

14  183116.  For some reason, the landlord did not cash that

15  check, Your Honor.

16         Arguably, they're fair to cash a check with way

17  unique basis for claim there but Transform is prepared, Your

18  Honor, to resubmit a check for that CAM amount if they

19  assume and assign the lease.

20         THE COURT:  Okay.

21         MR. WEAVER:  The second, Your Honor, is for

22  property taxes, again, just south of $44,000.  There's no

23  dispute as to that amount and it's typical of all of our

24  orders, within five business days of entry of the order,

25  Transform will provide those funds to the landlord.

1          THE COURT:  Okay.

2          MR. WEAVER:  So those are proper cure objections,

3     Your Honor.  But what is happening -- what we're arguing

4     about today, Your Honor, is quite a big stretch from that.

5          First, let's talk about the construction estimate

6     deposit.  And here, Your Honor, of course, we have to start

7     with the agreement.  And this is, again, Joint Exhibit

8     number 2.  And this, Your Honor, provides clearly for a list

9     of construction projects that the landlord has to perform.

10    And, Your Honor, if we look to paragraph 25 -- I won't

11    belabor the point.  You just heard it read during cross.

12    But here is where the deposit is put in to 3.25 million.

13    There's a list that must be completed by April 1st.  And to

14    the extent that the landlord timely completes the work and

15    it's acceptable, they will get any that's left over.  But it

16    is clear that if they don't meet the deadline, the funds

17    "shall be released to the Tenant, at Tenant's election".  So

18    the tenant can cause the work to be completed and seek more

19    money for the landlord if necessary.

20         But, Your Honor, that's not the only relevant

21    portion of the contract.

22         THE COURT:  Well, can we just walk through this?

23         MR. WEAVER:  Sure.  Happily, Your Honor.

24         THE COURT:  First of all, the introductory

25    paragraph in paragraph 25 sets up the three and a quarter

1    million construction estimate deposit "to partially secure

2    Landlord's design, repair, construction and completion

3    obligations under this agreement".  We've already

4    established that those obligations are introduced by

5    paragraph 2 and they go through paragraph 10.

6              MR. WEAVER:  Correct, Your Honor.

7              THE COURT:  And it includes seismic work.

8              MR. WEAVER:  It does.

9              THE COURT:  But only -- but we'll go back to that

10   in a second.

11             The paragraph then says that "Tenant shall in turn

12   within a reasonable time thereafter, but in any event within

13   thirty (30) days of Landlord's written request, deposit the

14   Construction Estimate Deposit with either First American

15   Title Insurance Company or another title insurance company

16   acceptable to Tenant ('The Construction Fund Escrow') to

17   enable Landlord to be able to draw upon those funds in the

18   Construction Fund Escrow to pay for Landlord's design,

19   repair, construction and completion work as required per

20   this [Agreement] on terms acceptable to the Tenant upon

21   joint written instruction given to the escrowee".

22             The escrow wasn't done, right?

23             MR. WEAVER:  Correct, Your Honor.  The parties

24   agreed not to put it in the escrow.

25             THE COURT:  But that agreement didn't vary

Page 60

1    anything else about the payment of the construction -- of

2    the landlord's design, repair, construction and completion

3    work for this agreement?

4             MR. WEAVER:  Correct.

5             THE COURT:  You're clear on that, right?  There's

6    no agreement changing that paragraph in writing.

7             MR. KUPETZ:  Right.  Just as there was no

8    agreement with respect to the deposit not being held by a

9    third party.

10            THE COURT:  Well, I mean, it says within a

11   reasonable time.  I gather the parties decided there was no

12   reasonable time.  And there was no request by the landlord

13   to put it in.

14            MR. KUPETZ:  Correct.

15            THE COURT:  Okay.  So then paragraph (d) says:

16   "In the event Landlord does not complete the work

17   contemplated in Sections 3, 4, 6 and 7 by April 1, 2017".

18   Now, 3, 4, 6 and 7 deal with HVAC -- I'm actually going out

19   of order here.  Low voltage service, HVAC, plumbing --

20            MR. WEAVER:  Signage and façade, Your Honor.

21            THE COURT:  Right.

22            MR. WEAVER:  Not plumbing, technically.

23            THE COURT:  Not plumbing.

24            MR. WEAVER:  Technically, not plumbing.

25            THE COURT:  Façade and signage.  Okay.  "[B]y

Page 61

1    April 1, 2007 (sic), the remainder of funds in the

2    Construction Fund Escrow shall be released to Tenant, at

3    Tenant's election, so that Tenant can cause the work to be

4    completed and Tenant shall be entitled to payment by

5    Landlord [of] any additional amounts necessary to complete

6    the work" which is consistent with paragraph 2 which says

7    the landlord shall bill all the costs.

8              So I believe it's undisputed, but I just want to

9    confirm this, that the work covered by Sections 3, 4, 6 and

10   7, none of that work was completed by April 1?

11             MR. WEAVER:  I don't think it's none of the work,

12   Your Honor, but it was not completed.

13             THE COURT:  Some of it.  Some of it was completed.

14             MR. WEAVER:  Some of it was.  And --

15             THE COURT:  No.  But it's a different -- I didn't

16   ask that question correctly.

17             MR. WEAVER:  No one objected, Your Honor.

18             THE COURT:  Each one of those sections

19   contemplated a project.  Is it understood that none of those

20   four projects was completed by April 1?  It was worked on, I

21   understand that.  But none of them was completed by April 1?

22             MR. KUPETZ:  That's correct.

23             THE COURT:  Okay.  So the contract provides then

24   that if that work, the project, isn't done by April 1, 2007

25   (sic), "the remainder of funds shall be released to Tenant,

Page 62

1    at Tenant's election".  Now here, the tenant was still

2    holding it, right?

3              MR. WEAVER:  Correct, Your Honor.

4              THE COURT:  But it's also agreed that Tenant

5    didn't make any election so that it could cause the work to

6    be completed, right?

7              MR. WEAVER:  Well, Your Honor, I don't think there

8    is anything -- there's really nothing in the record about a

9    formal election.

10             THE COURT:  Right.

11             MR. WEAVER:  And I think part of this, Your Honor,

12   is that this dispute isn't ripe for a cure objection.  If

13   there was a dispute in the future, I believe Sears would be

14   able to put forward evidence that --

15             THE COURT:  Well, I'm just walking through this.

16             MR. WEAVER:  No.

17             THE COURT:  I'm just trying --

18             MR. WEAVER:  Understood.

19             THE COURT:  -- to get the facts down.

20             MR. WEAVER:  Fair.  My essential --

21             THE COURT:  I understand the argument.  I just --

22             MR. WEAVER:  Well, it's not the argument.  It's a

23   fact -- I don't want to testify, Your Honor, but I

24   understand Sears did spend money, Your Honor.  I just --

25             THE COURT:  Well, that's my question is, "at

Page 63

1   Tenant's election, so that Tenant could cause the work to be

2   completed".  So, you know, that clause seems to contemplate

3   the reasonable agreement between the parties that if the

4   landlord couldn't do it, at tenant's election, that tenant

5   would do it -- have someone do it for the tenant.  I mean,

6   Sears doesn't do its own work, I'm assuming --

7           MR. WEAVER:  Correct, Your Honor.

8           THE COURT:  -- for all of these things.

9           Now there is a little bit in evidence just based

10  on what I heard from the testimony that there was perhaps

11  some assumption that Sears might be paying for something

12  already.  That was the invoice that had the asterisk on it

13  for the 250 something thousand.

14          MR. WEAVER:  Correct, Your Honor.

15          THE COURT:  Is there any other evidence in the

16  record that Sears was doing some of this work or subcontract

17  -- contracting it out to someone else?

18          MR. WEAVER:  Your Honor, there's not.  There was

19  not evidence put in.  Again, well, to answer your question,

20  no, Your Honor.  I can explain if you'd like.  The answer is

21  no, Your Honor.

22          THE COURT:  Okay.

23          MR. KUPETZ:  Your Honor, as far as the landlord

24  knows, Sears hasn't paid for anything --

25          THE COURT:  Well, all right.  But that's neither

Page 64

1     here nor there.

2              MR. KUPETZ:  There's no evidence in the record

3     that Sears paid for anything.

4              THE COURT:  Except the disastrous bill.  But

5     that's -- there's no evidence that that actually was the

6     case, right?

7              MR. WEAVER:  Well, I'd note, Your Honor, there's

8     no evidence of anything about that bill.  But --

9              THE COURT:  No.  That's fine.  I agree with that.

10             MR. WEAVER:  But nothing about the actual --

11    correct, Your Honor.

12             THE COURT:  Okay.  So, in any event, it seems that

13    the agreement did provide that, you know, if the landlord

14    didn't meet its deadline then Sears could basically take

15    over the work how ever it wanted to --

16             MR. WEAVER:  Correct.

17             THE COURT:  -- subject to the landlord being

18    liable for it.

19             Then the next sentence says:  "Upon Landlord's

20    completion of the work described in Sections 3, 4, 5, 6 and

21    7 in a timely manner, and its inspection and acceptance by

22    Tenant, any remaining Construction Estimate Deposit funds

23    shall be dispersed to Landlord subject to review and

24    approval of the parties regarding the amount in question."

25             So we have some testimony from the witness that

Page 65

1    most of the work was completed.  And he also says that the

2    HVAC condensers -- well, it had been ready to be installed

3    but that "Sears asked to put that off".  Do we have -- is

4    there anything in the record that says that work hasn't been

5    completed?  I mean, there's testimony that says 75 -- I

6    mean, the declaration says 75 --

7              MR. WEAVER:  Declaration itself, Your Honor, says

8    the work isn't done.

9              THE COURT:  Right.  That's correct, right?  The

10   declaration says 50 percent, 75 percent --

11             MR. KUPETZ:  Well --

12             THE COURT:  -- parts of it --

13             MR. KUPETZ:  -- it says the work --

14             THE COURT:  It goes through -- let me turn to it.

15             MR. KUPETZ:  Yeah.  We should probably look --

16             MR. WEAVER:  Paragraph --

17             MR. KUPETZ:  -- at the declaration.

18             MR. WEAVER:  -- 33 --

19             THE COURT:  Right.

20             MR. WEAVER:  -- I think, or so, Your Honor.

21             THE COURT:  Right.  So I'm looking at Mr. Shomof's

22   declaration in support of the reply.

23             MR. WEAVER:  34, Your Honor.

24             THE COURT:  Paragraph 34?  "The HVAC work is

25   approximately 75% complete.  The remaining approximate 25%

Page 66

1    of the job includes labor to install condensers".  He

2    doesn't really refer -- well, I'm sorry.  Let me go back.

3              And then 35 says, "Other than the HVAC work, the

4    only remaining work to be done" is plumbing.  But that's not

5    -- that's a different time frame.

6              MR. WEAVER:  Correct, Your Honor.  Well, it's the

7    same time frame.  It's just not covered by the subsection --

8              THE COURT:  Right.

9              MR. WEAVER:  -- (d).

10             THE COURT:  Right.  Exactly.  So -- and obviously,

11   that work was not done -- based on the declaration and the

12   invoices, that work was not done by April 1, 2017.

13             MR. WEAVER:  It's not disputed, Your Honor.

14             THE COURT:  So, I guess, to me, and I'd like the

15   parties to address this, the dispute as to any right to get

16   the remainder of the tenant escrow depends on the meaning of

17   the word "timely" in that second sentence.  Right?  Because

18   that -- it doesn't say in the second sentence, "Upon

19   Landlord's completion of the work described in Sections 3,

20   4, 5 and 6 by April 1".  It says in a "timely manner" --

21             MR. WEAVER:  Correct, Your Honor.

22             THE COURT:  -- "and its inspection and acceptance

23   by Tenant".  Now you're saying that "timely" must refer back

24   to April 1.

25             MR. WEAVER:  I don't know how it wouldn't, Your

Page 67

1    Honor.  In addition to the acceptance by the landlord -- by

2    the tenant.  I'm sorry, Your Honor.

3              THE COURT:  Right.

4              MR. KUPETZ:  And, Your Honor, of course, the

5    landlord would say when we're in ongoing discussions with

6    Sears and among other -- prior to the bankruptcy and among

7    other things, they ask us to delay some of the work and

8    they're aware that we're doing the work and saying we're

9    going to get reimbursed, that "timely" was certainly after

10   April 1 is understood to still be outstanding 'cause they'd

11   finish the work if they had access to the premises right

12   now.  But Sears was nonresponsive.

13             MR. WEAVER:  Your Honor, if I --

14             THE COURT:  Well, so I think that frames the

15   issue.  So that's what I'd like you to address.  Those

16   arguments which you probably weren't going to address but I

17   wanted to go through the --

18             MR. WEAVER:  I'm going to cut right to the chase.

19             THE COURT:  -- facts first --

20             MR. WEAVER:  Fair enough.  No problem, Your Honor.

21             THE COURT:  -- to get to that area of

22   disagreement --

23             MR. WEAVER:  Right.

24             THE COURT:  -- on the return of the money in the

25   account.

1            MR. WEAVER:  Right.  Well, Your Honor, if I may, I

2     think -- first of all, the only evidence we have to talk

3     about, really, the true evidence, is this one e-mail.  I

4     want to talk about that e-mail, about what the request was.

5     I think it all relates, Your Honor, because when we go

6     through that e-mail, there was a discussion about doing --

7     the deadline had passed.  April 1st had passed and they had

8     not met their deadline.  But the tenant made a decision

9     under the assumption that the seismic work was about to get

10    started that they should do it together.  And the tenant can

11    keep that decision and optionality, Your Honor.  And it's

12    provided for specifically in the agreement.  This is

13    something I think we have to look at.  We can't look at this

14    provision in isolation.  We have to also look on the page

15    previous on paragraph 23 of the amendment, Your Honor.  And

16    that is the extension of time express waiver provision.

17            And that provides:  "The parties hereto may, only

18    by an instrument in writing, extend the time for or waive

19    the performance of any obligation of the parties hereto."

20            And I think the important language is:  "Failure

21    on the part of either of the parties to enforce any rights

22    which they may have against the other for the other's breach

23    of this [Agreement] shall not constitute a waiver of the

24    said right, nor shall any written waiver given by a party

25    pursuant [t]hereto be deemed to constitute a waiver of any

1    other right not expressly waived therein."

2            Your Honor, that language has to be read with this

3    provision.

4            Now, as a practical matter, Your Honor, as a

5    tenant and a landlord, do they have to work these things

6    out?  Does the tenant want this work to happen?  Absolutely,

7    Your Honor.  But we're here about a cure objection, about a

8    default under the agreement.  And when you take that

9    language with the provision, I think it, frankly, takes away

10   a lot of the factual discussion that we have to have.  It's

11   not in dispute that the work wasn't done.  It is in --

12   they've raised a course of conduct, Your Honor.  But the

13   California case law they cite is clear, course of conduct

14   cannot contradict the express terms and they can't get

15   around paragraph 23, Your Honor.  They just can't.

16           THE COURT:  Well, let me lay something out to you.

17           MR. WEAVER:  Sure, Your Honor.

18           THE COURT:  I understand that there's a deadline

19   in the first sentence.  And it talks about the funds being

20   released to the tenant at tenant's election.  There's no

21   formal election.  But the tenant had the funds already.

22           MR. WEAVER:  They wouldn't have to elect because

23   it wasn't with escrow, Your Honor.

24           THE COURT:  Right.  So the tenant then, it appears

25   to me, did, in fact, cause the work to be completed.  It

Page 70

```
 1    used --

 2              MR. WEAVER:  It -- I was coming to that point,

 3    Your Honor.

 4              THE COURT:  It used the landlord's subcontractors

 5    to do that through the landlord and perhaps argue --

 6    although the record is -- really doesn't support this --

 7    perhaps it spent of its own money, too.

 8              I believe what you're saying is that that's fine.

 9    That's why it did what it did.  And then -- but that doesn't

10    change the operation of the second sentence which says that

11    you got to complete it in a timely manner as a condition to

12    getting the money back.

13              MR. WEAVER:  If you rely upon that provision, yes,

14    Your Honor.

15              THE COURT:  Right.

16              MR. WEAVER:  As you --

17              THE COURT:  Well, that's the provision that says

18    the money comes back.

19              MR. WEAVER:  Correct, Your Honor.  But as you just

20    outlined --

21              THE COURT:  'Cause there was no formal election.

22              MR. WEAVER:  Correct.  But as you just outlined,

23    Your Honor, they had the option to use the landlord work.

24    They had that option.  And that wouldn't be -- they wouldn't

25    be entitled to return the funds if they elected to go that
```

Page 71

1    route.  The reason you have paragraph 23, Your Honor, is so

2    the tenant can make its decision that things are most

3    economical.  And it would be one thing, Your Honor, if they

4    had any backup for this one-page invoice that they've

5    submitted.  Then maybe we could even talk about it.  But we

6    have nothing.  Your Honor, we literally have nothing other

7    than one page.  And --

8              THE COURT:  Well, can we go to that?

9              MR. WEAVER:  We can.  And their deadline, Your

10   Honor, was May 1st.

11             THE COURT:  I guess this is -- I'm a little

12   confused about this.  Is the -- this is as much a question

13   for you as counsel for Transform.

14             Is the claim by the landlord for, you know, in

15   excess of a million dollars based on this deposit?  Is it

16   premised on work it did or that it paid for that hasn't yet

17   been paid?  That's one.

18             Or is it simply for the return of the remaining

19   amount of the deposit because it didn't actually have to pay

20   for the work beyond what it's already been paid for and

21   therefore, it's entitled to a refund?

22             Which one of those two is it?

23             MR. KUPETZ:  It's both.

24             THE COURT:  It's both.

25             MR. KUPETZ:  There's 322 --

Page 72

1           THE COURT:  You can stand up.  I know in

2    California they do it differently but in New York --

3           MR. KUPETZ:  I'm sorry.

4           THE COURT:  --  they stand up.

5           MR. KUPETZ:  I'm sorry, Your Honor.  Should I go

6    to the --

7           THE COURT:  No, no.  The microphone will pick you

8    up.  It's just that they (indiscernible).  Okay.

9           MR. KUPETZ:  The 322,000 is for work that's been

10   done and hasn't been paid for.

11          THE COURT:  Okay.

12          MR. KUPETZ:  There would then be additional work

13   that the landlord is prepared to do to finish completely

14   that the landlord estimates at 375,000.  Completely.  And

15   that would leave approximately 727,000.  The landlord's

16   view, as set forth in the declaration, is that the deposit

17   was always set up with an intended buffer --

18          THE COURT:  Right.

19          MR. KUPETZ:  -- in there.

20          THE COURT:  Okay.  So do you agree with that that

21   there's an amount that it's claimed 322,000 that's been done

22   and not paid -- for work that's been done and not paid for

23   and the rest is just for the return of the

24   overcollaterization?

25          MR. WEAVER:  I agree, Your Honor, that their --

1            THE COURT:  That's their claim.

2            MR. WEAVER:  -- their objection was --

3            THE COURT:  All right.

4            MR. WEAVER:  -- 322 for work done, return of the

5     rest.

6            THE COURT:  So as far as the 322 --

7            MR. WEAVER:  Yes.

8            THE COURT:  -- I believe you're contending that

9     the bill just doesn't support -- there's no backup for that

10    bill except for a relatively small amount?

11           MR. WEAVER:  Well, I have -- well, I have two

12    arguments.  As a fundamental evidentiary matter, yes, Your

13    Honor.  When they submitted their cure objection on May 1st,

14    they submitted a one-page invoice with nothing else.

15           THE COURT:  Right.

16           MR. WEAVER:  Today we're now a few months later.

17    There's still nothing else for that invoice.  Nothing.  So

18    that's what we have.

19           But it's a technical reading in the agreement,

20    Your Honor, but I think it's the correct reading, which is

21    to the extent the tenant decided to use -- to do this, how

22    did the landlord do this work.  It's no longer operating

23    under the provision of Section (d).  If they want to claim

24    they've done work and they haven't been paid for it, Your

25    Honor, it's not a breach of this provision, it's not a

1   breach of this agreement.  It's -- the tenant has elected to

2   complete the work itself.  And it may be using them.  But

3   it's not a breach of --

4           THE COURT:  But it would have to pay for it.

5           MR. WEAVER:  Correct, Your Honor.  And they could

6   bring a breach action.  But it's not a cure --

7           THE COURT:  All right.

8           MR. WEAVER:  -- under this lease, Your Honor.

9   That's what we're arguing.

10          THE COURT:  Okay.

11          MR. WEAVER:  This is not a proper --

12          THE COURT:  All right.

13          MR. WEAVER:  -- cure objection.

14          THE COURT:  I understand that point.

15          MR. WEAVER:  Okay.

16          THE COURT:  All right.

17          MR. WEAVER:  If there's nothing else on that, Your

18  Honor, I'll move on.

19          Again, though, emphasize -- well, I don't want to

20  move on, Your Honor.  I'm sorry.  I feel like I do have to

21  address it.

22          You know, the course of conduct that they want to

23  rely upon here, Your Honor, again, we really -- in the

24  record, we have one --

25          THE COURT:  Can --I'm sorry to interrupt you.

```
 1              MR. WEAVER:  No.  Of course.

 2              THE COURT:  But it actually -- and I don't want to

 3    get you in trouble with your client but I think this -- and

 4    I actually think what you said was the correct legal

 5    response.  But --

 6              MR. WEAVER:  Thank you, Your Honor.

 7              THE COURT:  -- I just want to point out to the

 8    landlord that if the 322,000 were a cure objection, it

 9    wouldn't be sustained on this record.  What counsel just

10    said is, it's not a cure objection.  It's a right either

11    under quantum meruit or based on the parties' actual

12    dealings with each other as to the work that was done post-

13    April 1.  So it preserves the right to get paid for that

14    which if it were a cure objection, you probably have --

15    well, you haven't sustained unless you can show me the

16    backup.  But go ahead.

17              MR. WEAVER:  Well, in that case, Your Honor, I'm

18    going to not deal with course of conduct unless --

19              THE COURT:  Right.

20              MR. WEAVER:  -- you want to hear more about it

21    later, Your Honor.  I -- for efficiency purposes, I'm happy

22    to move on to the seismic --

23              THE COURT:  Well, I mean -- why don't you cover

24    it?

25              MR. WEAVER:  Okay.
```

1           THE COURT:  I mean, the parties have addressed it

2      in their papers.  So --

3           MR. WEAVER:  They have, Your Honor.  I just think

4      that it's really important that the language of paragraph 23

5      -- because course of conduct -- first of all, I don't think

6      we have course of conduct here.  But even if there was a

7      course of conduct, you cannot go contrary to an express

8      provision.  You can't.  California law is clear on that.

9      The cases they cite are clear on that, Your Honor.  You

10     can't go against an express provision.  23 is express.

11          THE COURT:  Which is the no-waiver provision.

12          MR. WEAVER:  No-waiver provision.  The fact that

13     we don't enforce our right on April 2nd doesn't mean we've

14     waived it.  That's -- I should say the tenant's right, Your

15     Honor.

16          THE COURT:  It could go to explain the word

17     "timely".

18          MR. WEAVER:  It could, Your Honor.

19          THE COURT:  But --

20          MR. WEAVER:  It could, Your Honor.  And if we want

21     to limit it to that, Your Honor, I'm very happy to look at

22     the e-mail from May 11th.

23          THE COURT:  Right.

24          MR. WEAVER:  This is Landlord Exhibit 5.  And this

25     is the e-mail from Dolores -- and no one can pronounce her

1    last name, Your Honor so we keep calling her Dolores.  So I

2    apologize for that.

3                THE COURT:  Okay.

4                MR. WEAVER:  And in the discussion -- and again,

5    this is after the deadline has passed.  She acknowledges the

6    deadline has passed and says, in light of that, what we'd

7    like you to do, we're making the decision, we want you to do

8    this with the seismic work because that's more efficient for

9    us.  And there's an assumption belongs to that.  The

10   assumption is the seismic work's about to get started.

11   We're going to pull the permits that year; we're going to

12   start in January 2018.

13               The record's clear, Your Honor.  They didn't pull

14   the permits of this year.  So the idea of "timely", Your

15   Honor, the course of conduct there is irrelevant.  There was

16   a discussion about doing the work together.  But that --

17   even deciding to make that offer doesn't waive their rights

18   under the provision.

19               THE COURT:  And, in fact, it really wasn't done

20   together, right?

21               MR. WEAVER:  It hasn't been done.  The seismic

22   work hasn't been done at all.

23               THE COURT:  No, no.  The HVAC work was done

24   separately.  It wasn't timed to the seismic work.

25               MR. WEAVER:  Apparently.  Correct.  Correct, Your

Page 78

1    Honor.  Correct, Your Honor.

2              And then the other e-mails, Your Honor, just to

3    touch on them briefly, they're frankly all about having

4    meetings in Los Angeles amongst landlord and tenant.  If you

5    look at Landlord's Exhibit 6, there's this discussion we've

6    talked about.  There's talk about landscaping and building

7    security, pulling aside the permits.  Exhibit 7, Your Honor,

8    frankly, is the same communication that was in Exhibit 12 so

9    they've repeated themselves.

10             Exhibit 14 has to do more about meetings.  Exhibit

11   -- I'm sorry -- Exhibit 8.  Exhibit 9, more about meetings.

12             THE COURT:  I'm sorry.  When you're referring to

13   these exhibits, these are the exhibits in the witness

14   binder?

15             MR. WEAVER:  No, no.  The landlord exhibits.  I'm

16   sorry, Your Honor.  The landlord exhibits.  I can --

17             THE COURT:  Fine.

18             MR. WEAVER:  We didn't catch them all.

19             But the point is, Your Honor, the discussion in

20   the e-mails that's relevant here is this discussion about

21   doing the seismic work together.  That's the only discussion

22   that's relevant.  And I would argue, Your Honor, that the

23   only course of conduct that's been demonstrated today is

24   that the landlord took forever to bill the tenant.  They

25   submit -- they want to argue because the tenant paid them

Page 79

1    after the deadline that that somehow indicates their

2    acquiescence.  But they didn't even bill them until after

3    the deadline, Your Honor.  And we looked at the invoices

4    today.  Almost all of the invoices are before the deadline.

5    But the ultimate invoices to Sears came after the deadline.

6    So that's the course of conduct.  They bill late and they

7    were paid.

8            THE COURT:  Well, bill late for services when?

9            MR. WEAVER:  Before April 1st except for the 14

10   invoices that we've identified.  And many of them are from

11   the month of April 2017, Your Honor.  That's what the record

12   provides.

13       (Pause)

14           THE COURT:  Okay.

15           MR. WEAVER:  Then, Your Honor, turning then to the

16   seismic retrofit issue, Your Honor, here we look to first

17   Joint Exhibit number 1, which is the 2011 lease.  So at

18   paragraph 2(a)(3), Your Honor, it says that, "Without

19   tenant's prior approval, which may be withheld for any or no

20   reason in its sole discretion, Landlord shall not construct

21   or install any improvements or make any changes to Tenant's

22   Control Area or interfere with or obstruct Tenant's use

23   thereof in any manner whatsoever."

24           Now the point of that section, Your Honor, isn't

25   to argue that Sears can simply put their head in the sand

Page 80

1    and say you can't do any work.  But that's the starting

2    point.  That is where we start from.  And from there, we

3    then move to the 2015 amendment, Your Honor.

4           So if we go to Joint Exhibit 2, which is the 2015

5    amendment, Your Honor, you already identified yourself that

6    paragraph 2 lays out at the beginning that the landlord

7    shall be responsible for the costs and expense related to

8    these projects.  And if we go to paragraph 8, Your Honor,

9    which is the seismic work paragraph, again, it makes clear

10   the landlord's responsible for all of the seismic repairs.

11   They're to pull the permits within 12 months of when LA

12   approves.  They're then also to complete the work within 12

13   months after pulling the permits.

14          It also provides in that section, Your Honor, that

15   "The plans and specifications, schedule, authorized hour of

16   construction activity and remediation plan for said seismic

17   work shall be pre-approved by Tenant pursuant to Demolition

18   and Construction Protocol attached hereto as Exhibit C, and

19   conducted in a manner that creates the minimal possible

20   visual and noise inconvenience to Tenant and its customers."

21          So that's the work, Your Honor, that needs to be

22   done and how it needs to be done.

23          So to look at Exhibit C, Your Honor, to this

24   agreement which is --

25          THE COURT:  The construction protocol.

1          MR. WEAVER:  Yeah.  And that is found -- if you

2     look at the ECF pages at the top, I think it's page 48 of

3     135.

4          THE COURT:  Right.

5          MR. WEAVER:  And here, Your Honor, we're dealing

6     with paragraph 2(b) which is the non-hazardous materials.

7          THE COURT:  Right.

8          MR. WEAVER:  So it says, "Landlord shall provide

9     two weeks notice."  And it states that such notice "shall

10    include the scope of work contemplated, a detailed set of

11    plans and specifications for the same together with a

12    schedule, authorized hours of construction activity and

13    remediation plan for the same".  And this provides that if

14    the tenant doesn't respond in 10 days, that's considered to

15    be approval of those plans.

16         So, Your Honor, the landlord simply did not meet

17    their obligation under the agreement.  So there's nothing to

18    be arguing that there was any breach under the 2015

19    amendment, Your Honor.  The thing they point to is Joint

20    Exhibit number 3 which is September 25th letter.  And, Your

21    Honor, that letter does not have any detailed plans, no

22    floor plans, no specifications.  The testimony's been that

23    it was a negotiating document, Your Honor.  The idea was

24    there'd be a back-and-forth.  The only timeline included in

25    that was that Sears would shut down for six months.  And,

Page 82

1    Your Honor, I could point to all the provisions in the two

2    contracts that make very clear that it was important that

3    the store continue to operate.  And the idea that Sears

4    would shut down particularly on the eve of bankruptcy for

5    six months, there's no offer of compensation for that, Your

6    Honor, frankly, is absurd.  It may have been a condition of

7    the construction financing they were looking for but that's

8    not on the tenant, Your Honor.  The landlord assumed all the

9    risks for the costs for this project.

10            And importantly, Your Honor, the person to whom

11   that letter was addressed responded.  And this is Joint

12   Exhibit 11, Your Honor.  And I don't need to read the entire

13   paragraph to you again, Your Honor, but it's clear in that

14   response not only that this was not what the parties had

15   been talking about but that there were concerns on the side

16   of the tenant about missing deadlines and that they stated

17   just two months prior that they may not go forward with the

18   project, Your Honor.  That was the response.

19            And the response further was an offer from counsel

20   to meet with the lawyer.  Now we heard a lot on the stand

21   today about verbal conversations, Your Honor.  But to the

22   extent anyone thinks something in writing is inconsistent

23   with the facts, usually they respond in writing to keep the

24   record clear.  And there's no written response to counsel's

25   communication, Your Honor.  There's none.  And I think that

Page 83

1    speaks volumes, Your Honor.

2            So they want to invoke, Your Honor, the covenant

3    of good faith and fair dealing.  They don't want us to point

4    to any provision of the agreement that was in default.  They

5    want to apply an obligation onto the tenant.  But the law,

6    Your Honor, again, here in California and everywhere is

7    clear.  You cannot invoke the covenant of good faith and

8    fair dealing to contradict express terms of the contract.

9    And I think, Your Honor, just the case that we cite, the

10   Storek case -- Storek & Storek case in our papers, cites to

11   the California Supreme Court and says very clearly the scope

12   of conduct prohibited by the covenant of good faith is

13   circumscribed by the purpose and express terms of the

14   contract.

15           We're aware of no reported case in which a Court

16   has held that the covenant of good faith may be read to

17   prohibit a party from doing that which is expressly

18   permitted by an agreement.

19           On the contrary, the general matter implied terms

20   should have to be read "shall never be read to vary express

21   terms".  What are the express terms here, Your Honor?  The

22   tenant has complete autonomy over its space.  There's no

23   question about that.  And the landlord has an obligation to

24   develop the plan -- a plan -- that's minimally invasive.

25   That's on the landlord, Your Honor.  And there's a provision

Page 84

1     with the agreement that says how you do that.  It's the

2     construction protocol.  It's cited within Section 8.

3            The landlord's one and only proposal, Your Honor,

4     is the September letter which was an ask that Sears shut

5     down for six months.  Now even assuming that the landlord's

6     argument to be true that there was no formal response on

7     Sear's letterhead, Your Honor -- and I think the Sears'

8     counsel's response speaks volumes -- they didn't get

9     anywhere near to meet their obligations under the protocol.

10    And if they can't meet their obligations, they cannot then

11    somehow create an obligation not even in the contract for

12    the tenant.  Yes, Your Honor, Sears went into bankruptcy in

13    October.  No one in this room is more familiar with how busy

14    and crazy that was, Your Honor.  But that does not give them

15    a hook to try to argue that their failure to do anything

16    under the contract provides a burden on the tenant.

17           And more importantly, Your Honor, the idea that

18    they were ready, willing and able to do this, the contract,

19    the amendment, was signed at the end of 2015.  The testimony

20    in the deposition record, Your Honor, is that the landlord

21    didn't even begin to look for construction financing until

22    June of 2018.  They didn't pull the permits until February

23    2019.  Your Honor, if this project doesn't go forward, it's

24    not because they didn't get a letter back on Sears'

25    letterhead that says we're not shutting for six months, Your

Page 85

1    Honor.

2           The landlord can't use its lack of prosecuting the

3    program as a way to try to recover these costs because Sears

4    went into bankruptcy.

5           And I think overarching all of this, Your Honor,

6    is the idea that these are just speculative damages.  They

7    are.  They're speculative.  We've talked about the

8    construction advance.  And Your Honor's already said that --

9    I think made clear your view, but I would just state that

10   how can we argue about the return of a construction estimate

11   deposit and the work's not done?  We can't.  There's -- we

12   can't.  Who knows what may happen?  Maybe they do some more

13   work and there's a pipe burst and there's more dam -- we

14   don't know, Your Honor.  We can't return money until the

15   work is done.  And they admit the work is not done.  And as

16   you've already held, on the basis of the record, they

17   certainly have not supported their claim for $322,000.

18          But as it relates to the seismic retrofit, Your

19   Honor, the permits are active; they're valid.  They're

20   active today.  You heard testimony from the landlord that

21   they have control over 30 percent of the ground floor.  You

22   also heard testimony today that all they have to do is begin

23   construction and call an inspector.  That's all.  That was

24   in the deposition and it was repeated today.  That's what

25   they have to do to keep those entitlements going.  So if

Page 86

1   Your Honor, for example, will rule today in their favor and

2   provide for a ruling, and Transform then took the lease and

3   made that payment, nothing would stop them, Your Honor, from

4   beginning construction on the 30 percent that they own the

5   next day.  And then those entitlements would still be valid.

6            THE COURT:  Is there -- I saw easements from the

7   landlord to Sears in the lease.  Is there any issue as to

8   access to the 30 percent to start construction is more of

9   the question for -- no.  For counsel.

10           MR. WEAVER:  Certainly not in the record, Your

11   Honor.  I don't believe there is.  Actually, I did ask the

12   question on the stand, Your Honor, and the only issue was

13   financing.  That was the witness' testimony.

14           THE COURT:  That's true.

15           MR. WEAVER:  So, Your Honor, I don't see how you

16   can satisfy, I think, legal arguments which are very -- I

17   think, Your Honor, are very strong and I hope you agree.

18   But how in the world -- and particularly, Your Honor, their

19   deadline for cure objection was May 1st.  That was the

20   deadline of their cure objection.  And there's nothing in

21   their cure objection about the fact the project is dead.

22   They've lost a --

23           THE COURT:  Well, they reserved their rights to

24   supplement it.

25           MR. WEAVER:  They did, Your Honor.

Page 87

1              THE COURT:  And they supplemented it within two

2      days before the final deadline.  So --

3              MR. WEAVER:  Correct, Your Honor.  Fair enough.

4              So, Your Honor, happy to answer any more questions

5      you may have.  But that is the argument that I'm trying to

6      present to Your Honor this morning.

7              THE COURT:  Okay.

8              MR. SHOMOF:  Can I stand?

9              MR. KUPETZ:  Your Honor --

10             THE COURT:  No.  Only the lawyers get to speak.

11             MR. SHOMOF:  No?  Okay.

12             THE COURT:  You could whisper something to him now

13     if you want him to think about something.

14        (Pause)

15             MR. KUPETZ:  Your Honor, I would indicate that

16     while counsel said they had tried to resolve consensually

17     cure objections, we just didn't have any discussions in

18     terms of whether it was with Sears or Transform, there were

19     no substantive discussions once the filing occurred although

20     we reached out.

21             With respect to the construction estimate deposit,

22     Transform incorrectly contends that the landlord has

23     forfeited its right to that deposit.  The landlord deposited

24     $3,250,000 with Sears.  The understanding was and is that

25     that was strictly to be used for reimbursement of specified

Page 88

1    tenant improvement construction expenses.  So the evidence

2    shows --

3              THE COURT:  But where is that in the agreement?

4              MR. KUPETZ:  Well, even when you look at the

5    agreement, Your Honor, there's nothing that says --

6         (Pause)

7              MR. KUPETZ:  Even in Section 25(d), Your Honor, it

8    doesn't say what happens to the deposit if the work isn't

9    completed.  It doesn't say that it's forfeited to Sears.

10             THE COURT:  Well, it says that the -- the second

11   sentence says that any remaining construction estimate

12   deposit shall be dispersed to the landlord if the landlord

13   has done it.  But --

14             MR. KUPETZ:  Right.  I'm saying if it's done, they

15   have to disburse it to the landlord.

16             THE COURT:  Well --

17             MR. KUPETZ:  But it doesn't say that if it's not

18   done, Sears -- and Sears doesn't spend the money to do the

19   work, that they somehow get to keep the money and have some

20   kind of windfall.

21             THE COURT:  Well, they have the money.

22             MR. KUPETZ:  Right.  Of course, the agreement

23   didn't contemplate that specifically and the parties

24   modified that approach.  But it was --

25             THE COURT:  I mean, I can understand an argument,

Page 89

1    although this wouldn't be a cure argument, that keeping the

2    deposit and not using it to complete the construction might

3    be an unenforceable penalty, something like that, or

4    unenforceable liquidated damages.  But that's not really a

5    cure issue.  I mean, that's how you'd normally deal with

6    forfeit.

7            MR. KUPETZ:  Right.  But the agreement granted, in

8    terms of the way it's written, has some ambiguities is what

9    we would say.  But it doesn't -- it's not saying that this

10   deposit is forfeited --

11           THE COURT:  Well --

12           MR. KUPETZ:  -- if this work isn't done.

13   Certainly, as set forth in the witness' direct testimony,

14   the declaration, the understanding certainly of the landlord

15   was that these funds were to be strictly used for the

16   specified work.

17           THE COURT:  Well, it says that this is -- 25, the

18   introductory paragraph, describes the 3.25 million deposit

19   as "to partially secure Landlord's design, repair,

20   construction and completion obligations under this

21   Amendment" which includes not only the four paragraphs but

22   the whole thing including the seismic.  So --

23           MR. KUPETZ:  Well --

24           THE COURT:  You know, it's securing it, all that

25   work.  That work -- it's clear the seismic work hasn't been

Page 90

```
 1    done yet.  So --

 2              MR. KUPETZ:  Right.  But --

 3              THE COURT:  -- to say that he would go back

 4    because it's a forfeiture seems to be contradictory to its

 5    purpose which is to secure the deposit.

 6              MR. KUPETZ:  I don't think that's really what it

 7    says because --

 8              THE COURT:  I just read it to you.

 9              MR. KUPETZ:  No.  But --

10              THE COURT:  That's exactly what it says.  That's a

11    quote.  That's the purpose of the deposit.

12              MR. KUPETZ:  But then --

13              THE COURT:  It's a separate point you're making --

14              MR. KUPETZ:  Okay.

15              THE COURT:  -- I think, which is that it's unfair

16    for the landlord to say that because their work in 3, 4, 5,

17    6 and 7 isn't timely done that they get to keep the deposit

18    and they can do with it whatever they want to.  But that's

19    not a cure issue.  That's potentially a liquidated damages

20    issue.  But clearly, it seems to me if they apply it to the

21    work that should have been done and hasn't been done which

22    includes 8, then there's no forfeiture.  It secured all that

23    work.

24              MR. KUPETZ:  But 8 isn't covered by 25(d).

25              THE COURT:  No.  I know.  But you're saying that
```

1    the landlord has a claim to the deposit.  And we're not

2    talking about the 322,000.  We're talking about a claim to

3    the deposit.  And that's just not -- anyway, why would the

4    landlord be entitled to it unless there was some sort of

5    agreement that the deadline was waived.

6              MR. KUPETZ:  Well, and that's certainly the

7    landlord's --

8              THE COURT:  I understand that.

9              MR. KUPETZ:  And I can discuss that --

10             THE COURT:  That's a separate point.

11             MR. KUPETZ:  That's --

12             THE COURT:  But when you're talking about

13    forfeiture, it's a different issue.

14             MR. KUPETZ:  Yeah.  But that is the landlord's

15    position that --

16             THE COURT:  I understand.

17             MR. KUPETZ:  -- the deadline was waived.

18             THE COURT:  Right.

19             MR. KUPETZ:  And it's the landlord's position that

20    upon completion of the work, which the landlord is prepared

21    to do, the remainder of the deposit is to be returned to the

22    landlord.

23             THE COURT:  Right.

24             MR. KUPETZ:  Your Honor, in the direct testimony

25    of Mr. Shomof, it's stated that prior to the commencement of

Page 92

1    the case, Sears communicated with the landlord on a regular

2    and continual basis.  It wasn't just by e-mail.  It's

3    e-mail, telephone, in-person meetings -- to coordinate and

4    request that the landlord do construction work at the

5    premises for which the landlord was and/or would be

6    reimbursed from this deposit.  This occurred after the April

7    1 deadline.  The testimony shows that, and states, in

8    reliance on tenant's representations and the requests and

9    the conduct and the performance, the landlord performed this

10   work at the premises --

11            THE COURT:  So you're saying it is a cure

12   objection knowing what I've already told you that you don't

13   have proof of the 322,000?

14            MR. KUPETZ:  No.  Well, we're saying we have a

15   legitimate claim to get paid.

16            THE COURT:  But you haven't given me a backup for

17   the amount.

18            MR. KUPETZ:  Well, they're all -- there isn't

19   evidence that that amount wasn't incurred.  I mean, the

20   amount has been stated the landlord --

21            THE COURT:  That's not how you prove a claim.

22            MR. KUPETZ:  Well, the landlord's testified that

23   this was incurred.

24            THE COURT:  He hasn't reviewed any of the

25   underlying documents.  He doesn't know the invoices.  He

1   didn't attach the invoices to his declaration.

2           MR. KUPETZ:  Well, you're referring to the 322?

3           THE COURT:  Yeah.

4           MR. KUPETZ:  He attached the invoice presented to

5   Sears.

6           THE COURT:  But nothing to support it.  It may

7   well be that he could do that but he hasn't as far as a cure

8   claim to me today.

9           MR. KUPETZ:  No.  His testimony talks about the

10  point person at Sears, as counsel's referred to, or Dolores.

11  Obviously, her e-mails -- they went back and forth.  They

12  continued to be involved.  She was going to legal.  She did

13  talk to legal.  In our view, waived any deadline.  That was

14  the understanding.

15          THE COURT:  How is that a waiver, that e-mail?

16          MR. KUPETZ:  Well, it's not -- we're not trying to

17  rely just on that e-mail but that e-mail and other conduct

18  including other e-mails that showed that work was being done

19  and that she, on behalf of Sears, was in approval of that

20  work and ongoing work.  Shows a course of performance that,

21  under California law, does supplement and does qualify and

22  can modify contrary terms in a contract.  And that's what

23  occurred here.

24          In the legal discussion, they included it, pages 5

25  through 7 of the reply, if you go through that, there's the

Page 94

1   California Civil Code provision that talks about it and then

2   cites to the commercial code history.  And in there, it

3   talks -- in the quoted language that we have from the

4   California Court of Appeals decision is the lengthy block

5   quote that we put at page 6.  And there's a reference in the

6   last paragraph on that page that "Course of performance is

7   relevant in ascertaining the meaning of the parties'

8   Agreement and it may supplement or qualify the terms of the

9   Agreement or show a waiver or modification of any term

10  inconsistent with the course of performance."  And that's

11  what --

12          THE COURT:  But the parties have already stated in

13  their Agreement that there's a no-waiver -- spelled out how

14  you waive.  It just doesn't -- I don't see that.  I don't

15  see the basis of that point.

16          MR. KUPETZ:  Well, Your Honor, I won't belabor it

17  then but in our papers, and in our view, the parties did

18  modify by course of performance --

19          THE COURT:  Let me just go to the -- this

20  argument.

21      (Pause)

22          THE COURT:  The e-mail from Dolores acknowledges

23  or states the fact that the deadline was not met.  Right?

24          MR. KUPETZ:  Right.  And she continues on.

25          THE COURT:  Right.  So wouldn't that, at that

Page 95

1    point -- wouldn't that point which that's obvious and she

2    states it, be the point where there's a dispute as to what

3    happens next?

4            MR. KUPETZ:  No.  Because they were in agreement

5    as to what would happen next.

6            THE COURT:  But there's a dispute as to how to go

7    ahead because --

8            MR. KUPETZ:  Not with respect to the construction

9    estimate deposit, where it goes.  With respect to the

10   seismic work and other work, they didn't come to an

11   agreement.  But with --

12           THE COURT:  But she just said you missed the

13   deadline.

14           MR. KUPETZ:  Right.  But we -- but we're going to

15   continue to work with you.  And there's other e-mails.

16   Here's what -- that works looks good.  Keep doing it.  And

17   they came out and met in person after that, Dolores and

18   another representative of Sears both in June and November of

19   that year and, you know, continued to make payments

20   following that time and to request that work be done on

21   these elements.  It was -- they only didn't finish up the

22   ultimate work on the construction deposit portion when two

23   things happened.  First, Sears had asked to delay the HVAC.

24   And they did delay the HVAC --

25           THE COURT:  But --

Page 96

1           MR. KUPETZ:  -- work inside the store.  They --

2           THE COURT:  But she expresses that you've missed

3    the deadline.

4           MR. KUPETZ:  Right, but it's --

5           THE COURT:  And now she's --

6           MR. KUPETZ:  -- but she then says, "It's fine with

7    us" --

8           THE COURT:  I know, but --

9           MR. KUPETZ:  -- "to go forward and" --

10          THE COURT:  But that -- my understanding, at

11   least, of -- any application of this doctrine is precluded

12   if the parties are already in a dispute, because, in

13   essence, that would force a party who wants to make the best

14   of a bad situation to somehow have acquiesced in -- you

15   don't want to be deemed to have acquiesced in the breach.

16   It's antithetical to cover, in other words.

17          MR. KUPETZ:  Well, I hear what Your Honor is

18   saying, but I don't believe that's the way the parties were

19   dealing with it.  She never communicated to them that they

20   were in a dispute.

21          THE COURT:  Well, she just said you -- but she

22   says in that email, you missed the deadline.

23          MR. KUPETZ:  Right.  But that's fine.  We're going

24   to continue to work this way.

25          THE COURT:  Well, but that's what people do when

Page 97

1   there's cover.  You know, it doesn't mean that you've waived

2   a breach.  You could -- particularly with an agreement like

3   this that, in essence, gives the tenant a backup, which is

4   to direct the work yourself.  Why isn't that what she was

5   doing?

6            MR. KUPETZ:  Well, that wasn't how the landlord

7   understood it, but maybe that --

8            THE COURT:  Well --

9            MR. KUPETZ:  It could be what she was doing.

10           THE COURT:  All right.  So --

11           MR. KUPETZ:  The landlord understood we're not in

12  dispute.  We're continuing to work on this and --

13           THE COURT:  Well, I --

14           MR. KUPETZ:  -- that basically the terms had been

15  modified voluntarily by the parties.

16           THE COURT:  Okay.

17           MR. KUPETZ:  So it sounds like Your Honor has

18  heard as much as you're -- besides the papers, in

19  considering --

20           THE COURT:  Well, I mean, the papers laid this

21  out.

22           MR. KUPETZ:  Yeah.  So I think you've --

23           THE COURT:  I think it's clear under California

24  law that you can use course of dealing to explain or

25  construe a provision of an agreement beyond parol evidence.

1            MR. KUPETZ:  Right, and --

2            THE COURT:  And I've -- we've discussed that in

3     terms of the word timely.  But I think that the California

4     courts are actually quite careful in limiting course of

5     dealing where there are contradictory provisions in the

6     agreement, and where there's -- where those provisions have

7     been breached.  At that point, I just -- you know, to read

8     it to say that if the parties continue to try to work out of

9     a bad situation, the one party has waved its rights under

10    the agreement just doesn't -- I think you need more than

11    that.

12            And it -- let's go to the fundamental point, which

13    is the proposal that she made was to tie the HVAC work to

14    the seismic work, so they're all done together.  That

15    actually wasn't done.

16            MR. KUPETZ:  Well, it was, in part, because part

17    of the HVAC work didn't affect -- she was really concerned

18    with in-store interference.  Part of the HVAC work is on the

19    roof -- that rooftop, and that's been done.  That doesn't

20    affect the store.  That wasn't what she was concerned about.

21    She was concerned about in-store access and interference.

22    And that work hasn't been completed.  That's the remaining

23    portion --

24            THE COURT:  Right.

25            MR. KUPETZ:  -- because Sears hasn't allowed

1    access as of this point.

2              THE COURT:  But the agreement, if you're saying

3    there was a waiver, was to do it in connection with the

4    seismic work, so you wouldn't have to do it twice, right?

5    And --

6              MR. KUPETZ:  Well, it was beyond that --

7              THE COURT:  -- your argument is, "Well, Sears is

8    preventing us from finishing the HVAC work, and then we'll

9    do the seismic work."

10             MR. KUPETZ:  But the agreement, as the landlord

11   understood it, covered other work that was ongoing.  It

12   wasn't just that work, and there's even --

13             THE COURT:  We're really talking about two

14   different things.  We're talking about the right to get paid

15   for the work that was done.  Okay?

16             MR. KUPETZ:  Right.

17             THE COURT:  I think we have an acknowledgment from

18   the tenant that it's fair to get paid for the work that's

19   done.  It's just not under the terms of this contract, but

20   still work that was done.  On the other hand, to say that

21   one has a right to the return of the deposit, when the

22   remaining work hasn't been done, is a real stretch.  If

23   you're relying upon one email in May of 2017 that says,

24   "We'd like to have the HVAC work done with the seismic

25   work," and in fact, the HVAC work hasn't been done yet.

Page 100

1          MR. KUPETZ:  Well --

2          THE COURT:  And the seismic work, it doesn't look

3    like it's going to be done, ever, as far as I can tell.

4          MR. KUPETZ:  Right.

5          THE COURT:  Certainly not within the timeframes

6    contemplated by paragraph 8.  So her -- even if you take her

7    email as a waiver, which I don't, the conditions of the

8    waiver haven't been satisfied.

9          MR. KUPETZ:  Right.  But the landlord also isn't

10   saying, and as I read our papers and as we presented them,

11   isn't saying, "And return the full deposit to us that

12   remains right now."  It's saying --

13         THE COURT:  That's what their claim is, it's for

14   the full amount.

15         MR. KUPETZ:  Well, we're saying it has to be

16   maintained.  And when we finish the work, which if you give

17   -- if whoever is the tenant allows access, the landlord can

18   finish the work.

19         THE COURT:  Well, the -- one thing is crystal

20   clear, to me at least, under the language of 25(d), the

21   tenant has the right tomorrow to elect to take the deposit.

22   There's no time limit on the tenant's election.

23         MR. KUPETZ:  But it has to be devoted to doing the

24   work for the property.  I don't think they have the right to

25   just take the deposit --

Page 101

```
1              THE COURT:  Again, but that's not a cure issue.

2     That's not a cure issue.  They're not proposing to just keep

3     it?  Logically, they apply it to the property, but that's

4     not a cure issue.  But it doesn't say that they have to

5     segregate it.  It just says they take the money.  They can

6     have it.

7              You can argue in the future that it would be a

8     windfall, or an improper liquidated damages provision, or

9     putative damages if they don't apply it to the -- finishing

10    the work, but you know, a) you'd have to win that; and b)

11    it's not a cure objection today.

12             MR. KUPETZ:  And is it a claim against --

13             THE COURT:  No, it's not a claim.  There's no

14    claim.  They have -- look, I mean, paragraph 25, your

15    client's main point is that they didn't elect to keep the

16    money.  Well, but they can elect tomorrow.  There's no time

17    limit on it.

18             MR. KUPETZ:  But meanwhile, they had the client do

19    --

20             THE COURT:  Well, all right, but that's -- again,

21    that's not a -- I don't view that -- I view that as they

22    could've hired, I don't know, some other HVAC person to do

23    that work.  And in fact, the landlord hired an HVAC person,

24    right?  He didn't do the work himself.  So yes, you have to

25    pay for the work you do.  I have no idea whether -- what
```

Page 102

1    that amount is.  It may be considerably less than 322,000.

2    It may be 322,000.  We don't know.  But you know, it's hard

3    for me to imagine that some Court would dispute that if, in

4    fact, the landlord can show that it paid valid invoices by

5    people who did valid work, and after it's completed, and

6    specified, and approved, such approval not to be

7    unreasonably withheld, they wouldn't be paid for.

8              MR. KUPETZ:  But --

9              THE COURT:  But that's not a cure objection.

10             MR. KUPETZ:  But is that claim against old Sears?

11             THE COURT:  No.  No.  Because it's -- well, I

12   don't know.  That's a good question.  That's a very good

13   question.

14             MR. KUPETZ:  Because otherwise, we're allowing a

15   windfall.

16             THE COURT:  Yeah, well, all right.  But it may not

17   be a cure objection.  But again, I don't have any proof of

18   it today.  So I think you're better off having it be a cure

19   objection -- I mean, a quantum meruit claim for the work

20   that was done.

21             MR. KUPETZ:  Does Your Honor want to hear any

22   other arguments in terms of the failure of the project, or

23   does the Court want to just --

24             THE COURT:  Well, I mean, I don't -- I mean,

25   that's the step -- that's the other issue.  We've been

Page 103

1    talking about the deposits so far.  But as far as the

2    consequential damages claim for the apparent, or the

3    asserted inability to get the financing to do the work to

4    complete the project, it's agreed, right, that there's no

5    obligation -- express obligation under the contract to

6    comply with that, right?  To do that?

7            MR. KUPETZ:  That's correct, Your Honor.

8            THE COURT:  So when Mr. Shomof testified that the

9    financing was pulled because there was a condition that

10   there be an agreement with Sears, the agreement was the

11   lease, the 2015 lease.  There was an agreement.

12           MR. KUPETZ:  Not --

13           THE COURT:  Right?

14           MR. KUPETZ:  What he was talking about was there

15   need -- and I can run through this, if it's helpful.

16           THE COURT:  Okay.  But that's how I'm looking at

17   it.  I mean, it's hard to see --

18           MR. KUPETZ:  There needed to be --

19           THE COURT:  I'm getting -- I'm ultimately getting

20   to what I think a business person might understand, which is

21   I don't -- we could walk through all the terms of the

22   agreement, but ultimately, if those terms don't permit what

23   the landlord proposed, it's clear to me that when the bank

24   put a condition that there be an agreement with Sears, it

25   meant a new agreement, because the existing agreement didn't

1    provide for it.

2           MR. KUPETZ:  Right, they were --

3           THE COURT:  And there's no obligation on Sears'

4    part to provide a new agreement.  So I don't see how there

5    could be any damages for Sears in terms of pulling -- you

6    know, in terms of the bank financing being pulled.  So we

7    have to look at the agreement.

8           MR. KUPETZ:  Well, and we're seeing it's not --

9    it's really based on an implied covenant of good faith and

10   fair dealing.

11          THE COURT:  Well, I understand.  But if the

12   agreement itself -- the implied terms cannot vary the terms

13   of the agreement, of the contract.  So the part -- I mean,

14   this contract -- the 2015 contract is very clearly

15   contemplating this work to be done, and it has a whole

16   section, the construction protocol.  It lays it all out what

17   needs to be done, as well as the operative paragraphs that

18   incorporate the protocol.

19          MR. KUPETZ:  And in our papers, we tried to

20   address some of that.  I don't know if the Court wants me to

21   summarize that and go through it.

22          THE COURT:  Go ahead.  I mean, I don't see how

23   this letter from September of 2018 came close to satisfying

24   those conditions.

25          MR. KUPETZ:  Well, let me -- maybe -- if the Court

Page 105

1    will allow, I'll walk through it.

2                THE COURT:  Okay.

3                MR. KUPETZ:  And hopefully, it advances the cause.

4                THE COURT:  Okay.

5                MR. KUPETZ:  Prior to Sears entering Chapter 11,

6    the landlord was in the discussions with Sears regarding

7    plan rehabilitation and redevelopment of the building.

8                THE COURT:  Right.

9                MR. KUPETZ:  And that's set forth in paragraphs 39

10   through 50 of Ms. Shomof's declaration, ECF 4625.

11               THE COURT:  Right.

12               MR. KUPETZ:  There were communications with Mr.

13   Velkei, who was one contact, a lawyer out in California that

14   the landlord had for Sears.  There's the letter that the

15   Court referred to, the 9/25/2018 letter, which did propose

16   closing the store for six months.  That was in the

17   landlord's -- neither a requirement nor a demand.

18               They didn't get a substantive response refusing

19   it, and they just couldn't get any engagement from Sears at

20   all after the Chapter 11 filing.  Page 45 -- paragraph 45 in

21   the Velkei -- or in the Shomof declaration referred to --

22   talks about how Mr. Velkei advised him to contact Sears

23   bankruptcy counsel.  There was a letter actually from myself

24   to the Debtor's counsel, which was Joint Exhibit 12.

25               THE COURT:  But -- could I interrupt you?

Page 106

1          MR. KUPETZ:  Uh-huh.

2          THE COURT:  Because this goes through what's in

3    your pleadings.  And let's assume all of that is true, the

4    lease amendment has a specific section dealing with seismic

5    work.  It has certain deadlines in it.  And then it says,

6    "The plans and specifications schedule authorized hours of

7    construction activity and remediation plan for set seismic

8    work shall be preapproved by tenant, pursuant to the

9    demolition and construction protocol attached hereto as

10   Exhibit C, and conducted," that's the next step, "conducted

11   in a manner that creates the minimum possible visual and

12   noise inconvenience to tenant and its customers."

13          So then you go to Exhibit C, the demolition and

14   construction protocol, and 2(b) -- Section 2(b) states,

15   "Landlord shall provide two weeks' notice for any demolition

16   or construction work not involving remediation or removal of

17   hazardous materials of the building parcel, and shall

18   include in that notice the scope of work contemplated, a

19   detailed set of plans and specifications for the same,

20   together with the schedule of authorized hours of

21   construction activity and remediation plan for the same.

22   Tenant shall have ten business days from receipt of

23   landlord's both notice and complete detailed plans of

24   specifications to provide any comments and/or objections.

25   No reply from tenant within that period shall constitute

Page 107

```
 1    approval.  Landlord may proceed with the work in question

 2    after complying with the aforesaid procedures, provided the

 3    work in question is approved by tenant or deemed approved by

 4    tenant as aforesaid."

 5            And then (c) deals with if tenant lodges timely

 6    objections, "The parties hereto must agree upon the scope

 7    and course of the work, together with the schedule,

 8    authorized hours of construction activity, and remediation

 9    plan for the same before it may proceed.  Such consent by

10    tenant may not be unreasonably withheld."

11            So it appears quite clear to me that A) the

12    landlord did not provide the type of proposal -- details,

13    set of plans, specifications, et cetera, that would -- in

14    the September letter, that would start the ten day clock

15    ticking.  And it may have been, as a business person,

16    reasonable to assume that he could ignore that and just

17    discuss things, and try to work from a baseline, which he

18    knew was clearly unacceptable, to something that would be

19    acceptable.  But that didn't happen.

20            So I think it would then be incumbent upon him

21    when he wasn't getting any more response than the initial

22    response he got back, which was arguably a no, although it

23    was a no to something that didn't really need to be

24    responded to under this Section 2(b), because it was

25    responding to something other than a 2(b) type of proposal.
```

Page 108

1    But if he wanted to bind Sears in the face of silence, he

2    had a means to do so.  He could make that type of proposal.

3    And if there was no response within ten days, it's deemed

4    accepted.  The affidavit says that never happened, and it's

5    not really Sears' fault.

6             MR. KUPETZ:  It's correct that didn't happen.

7    Realistically, as the reply does discuss, it's really an

8    illusory kind of provision, because --

9             THE COURT:  It's a highly detailed provision.

10            MR. KUPETZ:  But without --

11            THE COURT:  The parties entered into a separate

12   multi-page -- I mean, a 36 page amendment to their lease,

13   contemplating all of these things, with then a lengthy

14   Exhibit C protocol.  It couldn't be more detailed.  And when

15   you compare it to the provision in a lease that basically

16   gives the landlord to terminate for any reason, including

17   its own financial gain, which the California courts say is

18   perfectly acceptable and rules out any breach of the implied

19   covenant of good faith and fair dealing, it's hard to see

20   how you could somehow say, "Oh, no.  The parties did specify

21   all of this, but we can just make a proposal and then

22   somehow bind the debtor to having to front all of our

23   financing and construction costs."  This just doesn't really

24   fly.

25            MR. KUPETZ:  But in the real world, as Mr. Velkei

Page 109

1    said in his response, the very last line of his response.

2    "In order for this project to move forward, there's got to

3    be collaboration."  And there's --

4            THE COURT:  In the real world, parties write

5    agreements that they live up to.  This agreement spelled out

6    what was to happen.  If there's a non-cooperating party, you

7    give it your best shot to comply with the requirements of

8    2(a).  And frankly, at that point, the non-responding party

9    is at real risk.  You know?

10           I mean, if there are details that they could have

11   negotiated, but the non-responding party, Sears, lets it go,

12   they're stuck with it.  There's an implementation feature.

13   You know, that's 2(c), but they're stuck.  Didn't happen.

14   You know, it's -- I appreciate business people think

15   differently sometimes than their agreements, but the

16   agreements governed, unless they're waived.  And there's no

17   waiver here, this issue.

18           MR. KUPETZ:  It sounds like the Court has seen the

19   papers and doesn't want to hear argument.

20           THE COURT:  Yeah.  Your papers are pretty clear on

21   this at this point.

22           MR. KUPETZ:  Any other questions, Your Honor?

23           THE COURT:  No, I don't think so.

24           MR. KUPETZ:  Thank you, Your Honor.

25           THE COURT:  Okay.

Page 110

1      MR. WEAVER:  Sorry, Your Honor.  I just need to

2   make clear, and forgive me -- indulge me for one moment.

3   Just so we're -- I know Your Honor wasn't ruling on this

4   point, and it's not before Your Honor, but to be clear that

5   my client, Transform, is responsible for the cure

6   obligations of any contract that it assumes and assigns --

7      THE COURT:  Right.

8      MR. KUPETZ:  -- there's not -- that was agreed to

9   as part of the APA, there's nothing before the Court today,

10  Your Honor, about any other type of damages that might be

11  owed to this landlord --

12     THE COURT:  No, I agree.

13     MR. WEAVER:  -- and who would be responsible for

14  that.

15     THE COURT:  Well, that's fair.  But I think, to be

16  clear, I'm also not authorizing in a ruling here that denies

17  the landlord's cure objection as to return of the deposit,

18  that shouldn't be taken to mean that Transform is authorized

19  to just take that deposit and put it to general uses.

20     MR. WEAVER:  Understood, Your Honor.  That was not

21  at all how I understood Your Honor to speak, but I just

22  wanted to make clear that that Transform's obligations are

23  limited here, Your Honor, to cure amounts that we're

24  discussing.

25     THE COURT:  That's right.

Page 111

1        MR. WEAVER:  Nothing further from Transform, Your

2    Honor.

3        THE COURT:  Okay.  All right.  Sears Roebuck was

4    party to a 2011 lease, which was amended and restated in a

5    December 30, 2015 lease of an interest in real property

6    located at 10309 Folsom Boulevard.  No, I'm sorry.  Is that

7    the location?  Well, let me just say in Los Angeles.

8        MR. WEAVER:  Olympic Boulevard, Your Honor.

9        THE COURT:  Olympic Boulevard.  In Los Angeles.

10   Consistent with prior orders that I have issued in this

11   case, Sears sent out a notice of proposed assumption and

12   assignment of the lease to Transform Holdco.  That notice --

13   that set of notice procedures gave the landlord the

14   opportunity to object to the assumption and assignment,

15   and/or to assert that there were outstanding obligations

16   under the lease, i.e. that there were defaults under the

17   lease, that created a monetary obligation on behalf of the

18   tenant to be cured under Section 365 of the Bankruptcy Code.

19        The agreement between Sears and Transform lays out

20   who's responsible for that cure.  But the key point for my

21   ruling today is that cure is only owed in respect of

22   monetary obligations for defaults before the assignment of

23   the lease, including prepetition defaults.

24        The landlord here asserted three sets of defaults,

25   two of which the assignee, Transform, has agreed are, in

Page 112

1   fact, properly owed cure amounts, or that will be properly

2   owed in the case of tax reimbursements, in the amounts

3   asserted.  So there's no remaining dispute between the

4   landlord and Transform, which under the agreement with

5   Sears, would be responsible to pay such cure with respect to

6   the common area maintenance or property tax reimbursement

7   cure amounts asserted in the landlord's objection.

8          In addition, the landlord's cure objection raised

9   two other cure issues.  And I find that both of the cure

10  claims or both of those cure claims, although one was

11  asserted in a supplemental cure claim, were timely made.

12         First, the landlord refers to the remaining

13  amounts in a so-called construction estimate deposit,

14  established under Section 25 of the 2015 amended and

15  restated lease, which was established originally in the

16  amount of $3,250,000.

17         And parties agree that substantial amount -- a

18  substantial amount of that sum has already been paid out of

19  such deposit.  The landlord contends that in respect of work

20  that it did, or its contractors or subcontractors did, in

21  the sum of $322,649.80 is due and owing to the tenant to be

22  paid from the remaining amount in the construction estimate

23  deposit.

24         Secondly, it contends that it would be a breach of

25  the lease if the landlord did not use the remaining amount

1    in the construction estimate -- I'm sorry, if the tenant did

2    not use the remaining amount in the construction estimate

3    deposit to reimburse landlord for construction expenses at

4    the premises, presumably in the future.

5        Secondly, the landlord stated in its original cure

6    objection that there was an immediate need to make extensive

7    renovations at the property as part of an overall

8    rehabilitation plan to develop the property, which is only

9    70 percent occupied by Sears.

10        And to conclude, work that under paragraph or

11    Section 8 of the 2015 lease, with respect to seismic work,

12    needed to be work in a supplemental -- a timely supplemental

13    objection.  The landlord asserted a multi-million dollar

14    claim based on the alleged breach by the debtor tenant of

15    its implied covenant of good faith and fair dealing under

16    the lease, allegedly because the tenant did not reasonably

17    respond to or cooperate with the landlord in permitting the

18    landlord to do such work.

19        That multi-million dollar figure was comprised of

20    cost that the landlord stated it had incurred to lay the

21    groundwork for that work, and/or the failure allegedly

22    attributable to the debtor of the landlord's financing to

23    commence such work.

24        The first set of issues depends upon, in the first

25    instance, a construction of the 2015 amended and restated

Page 114

1    lease, which was entered into, as stated in the recitals, in

2    part because additional work was contemplated on the

3    building and the -- I'm sorry, the parties "had a number of

4    issues to dispute," with respect to the terms of the 2011

5    lease.  That prompted the parties to enter into the amended

6    restatement.

7            The 2011 lease provides in Section 2(a)(3), "The

8    parties acknowledge that it is most critical to the

9    successful operation of tenant's business at the premises,

10   the tenant has access, use, and enjoyment of those portions

11   of the building parcel shown on the site plan as 'tenants

12   control the area,'" including such rights as are set forth

13   below.

14           "Without tenants' prior approval, which may be

15   withheld for any or no reason in its sole discretion,

16   landlords shall not construct or install any improvements,

17   or make any changes to tenants' control area, or interfere

18   with, or obstruct tenants' use thereof in any manner

19   whatsoever, including without limitation by reconfiguring

20   the parking spaces."

21           The 2015 amendment and restatement acknowledges

22   that additional work will be done and sets forth the

23   parties' agreement in connection with that work.  Section 2

24   of the document begins with an unlettered paragraph by

25   stating that, "Landlord at landlord's sole cost and expense

1      shall design, construct, and complete all work contained

2      within this agreement in compliance with the demolition and

3      construction protocols attached hereto, and made a part

4      hereof as Exhibit C, including without limitation, work

5      described below in Sections 3, 4, 5, 6, 7, 8, 10, and 11,

6      subject to the terms of Section 9 below, on or before April

7      1, 2017, unless a different completion date is explicitly

8      set forth below, in which case the different completion date

9      set forth below shall govern, or unless the date is

10     otherwise amended in writing by means of a further amendment

11     to this agreement.

12            "Final plans and specifications shall be reviewed

13     and approved by tenant pursuant to the demolition and

14     construction protocol, even if the work in question is

15     addressed in the exhibits attached hereto."

16            Paragraphs 3 through 8 and 10 all lay out work

17     with respect to specific projects.  In order: low voltage

18     service, HVAC, plumbing, façade, signage, seismic work, and

19     freight elevator work, which are all, as I noted, referenced

20     in this section that I quoted.

21            The agreement not only has an integration

22     provision in Section 19, but also has a no waiver provision,

23     Section 17, which states, "Unless expressly waived or

24     released in either the building lease, or in this amendment,

25     or in a separate writing signed by the waiving party, no

Page 116

1    provision of either the building lease or this amendment

2    shall be deemed to be a waiver by either party of any rights

3    or claims against the other, either arising out of the

4    building lease as amended, or out of any other agreement or

5    circumstances."

6            It is undisputed that the specific work to be done

7    or completed under paragraph 2 was not done -- to be done by

8    April 1st, 2017, was not in fact completed by April 1st,

9    2017.  This is relevant to the claim for the $322,000, as

10   well as to the assertion that the money currently being held

11   as part of the construction estimate deposit needs to remain

12   to be held in that deposit and paid to the landlord under

13   the terms of the agreement.

14           Paragraph 25, as I noted, provides for the

15   establishment of the construction estimate deposit.  It is

16   -- it was funded by the landlord as set forth in that

17   provision, "To partially secure landlord's design repair

18   construction and completion obligations under this

19   amendment," i.e. that landlord's obligation to complete the

20   work.

21           The agreement went on to establish -- to provide

22   that tenants shall, in turn, within a reasonable time

23   thereafter, but in any event within 30 days of landlord's

24   written request, deposit that money in escrow "to enable

25   able landlord to be able to draw upon those funds in the

1    construction fund escrow to pay for landlord's design repair

2    construction and completion work, as required per this

3    amendment."

4              However, the parties have agreed that the funds

5    would be held by the landlord.  In other words, the escrow

6    was never set up -- I'm sorry, held by the tenant.  In other

7    words, the escrow was never set up by the tenant and the

8    landlord never requested the establishment of an escrow.

9              And it is agreed that a substantial amount of

10   those funds were, in fact, used to pay or reimburse the

11   landlord for work that it did under Section 2 through 10.

12   Of particular relevance to the first remaining dispute is

13   Section 25(d) of the lease, which states, "In the event

14   landlord does not complete the work contemplated in Sections

15   3, 4, 6, and 7 by April 1, 2017, the remainder of the funds

16   in construction escrow shall be released to tenant at

17   tenant's election, so that tenant can cause the work to be

18   completed, and tenant shall be entitled to payment by

19   landlord any additional amounts necessary to complete the

20   work."

21             Paragraph 25(d) then goes on to state, "Upon

22   landlord's completion of the work described in Sections 3,

23   4, 5, 6, and 7 in a timely manner, and its inspection and

24   acceptance by tenant, any remaining construction and

25   estimate deposit fund shall be disbursed to landlord,

1    subject to the review and approval of the parties regarding

2    the amount in question."

3              As I noted, it's undisputed that the work required

4    by Sections 3, 4, 6, and 7 was not completed by April 1,

5    2017.

6              It's also disputed that, as of today, the landlord

7    has not made an election to have the remainder of the funds

8    released -- I'm sorry -- the tenant has not made an election

9    to have the remaining funds released to the tenant so that

10   the tenant can cause the work to be completed.

11       (Pause)

12             THE COURT:  There is no time limitation, in the

13   agreement, on when the tenant may make such an election,

14   however.  So, conceivably, the tenant could make the

15   election tomorrow given the landlord's failure to complete

16   the work in Section 346 and 7 by April 1, 2017.

17             The landlord contends, however, that the parties

18   modified the deadline set forth in the first sentence of

19   Section 25(d) by its course of dealing or their course of

20   dealing.

21             The facts to support that contention are two-fold.

22   First, there are some invoices with backup in the record

23   showing 14 payments for work done by the landlord after

24   April 1, 2017, apparently on these -- one or more of these

25   four projects. Those required to be completed by the

Page 119

1    landlord under Section 346 and 7 of the 2015 amended and

2    restated lease.

3            Secondly, there is a May 2017 e-mail from a Sears

4    real estate employee to the landlord which states or points

5    out to the landlord that the landlord has not met its

6    deadline to complete that work by April 1, 2017 and then

7    goes on to state that Sears would be prepared to have the

8    remaining A track work done later in tandem with the seismic

9    work required under paragraph -- or Section 8 of the

10   agreement to avoid two sets of disruption of Sears's

11   operations.

12       (Pause)

13           THE COURT:  It is reasonably clear to me that

14   Sears and the landlord were aware of -- that the landlord

15   continued work after April 1 and that Sears was aware of it.

16   What we do not have is a signed written waiver as required

17   by Section 17 of the 2015 amended and restated lease.

18       (Pause)

19           THE COURT:  The landlord contends that the cure

20   claim for the 322,000 and change is not a default under the

21   lease and it's not being paid out of the construction fund

22   escrow because of the release feature of the first sentence

23   of paragraph 25(d) and the fact that the landlord doesn't

24   have the right to the release of any remaining funds in the

25   construction fund escrow because there would not a

Page 120

1    construction fund escrow and/or because the work has not

2    been completed in a timely manner as required in the second

3    sentence of that section.

4            I construe the first sentence of Section 25(d) to

5    provide that the funds in the construction escrow fund could

6    be released to tenant upon the tenant's election given the

7    failure to complete the work.

8            The election, in fact, has not occurred but in

9    equal amount the work was not completed by the dates

10   required; not only in paragraph 2(d) but also in paragraph

11   25 and Section 2.

12       (Pause)

13           THE COURT:  Given the failure to complete the work

14   by the time required, I believe that there is no contract

15   right to its payment.

16           On the other hand, there may be a quantum meruit

17   right to its payment and there may be well a right as a

18   quantum meruit matter to be paid out of the construction

19   fund given paragraph 25's statement that the fund was

20   required to partially secure the landlord's completion of

21   the work albeit that it was to be completed under the terms

22   of the agreement.

23           But it is clear to me that there is no cure claim

24   per se for the 322,000 because the work was not, in fact,

25   completed by the time that Section 2(a) requires it to be

Page 121

1    completed.

2           Again, this doesn't preclude a quantum meruit

3    claim and it doesn't preclude a claim that the funds that

4    were held in escrow should be devoted to pay the amount.

5           But, as far as a cure objection is concerned,

6    there is not cure obligation.

7           There is no present monetary default under the

8    contract.

9           As pertains to Section 25(d) that leaves the

10   landlord's other contention which is that there is a breach

11   of the contract that needs to be cured if the tenant does

12   not apply the construction estimate deposit to the work, not

13   only done, but to be done by the landlord under the

14   agreement.

15        (Pause)

16           THE COURT:  I will note that the landlord does not

17   say that he's entitled to a refund of the remaining deposit

18   today nor could it because the work has not been completed

19   as required by the second sentence of paragraph -- or

20   Section 25(d).

21           The contention as a cure objection really doesn't

22   apply.  It assumes a hypothetical that clearly hasn't

23   occurred at this point.

24           The landlord must accept that, because it's a

25   premise of its own argument, that the tenant has not yet

Page 122

1    elected, under the first sentence of Section 25(d), to have

2    the construction fund released to it, to the tenant.  It is

3    still, therefore, being held and, as provided in that first

4    sentence, if such an election is made, it shall be made "so

5    the tenant can cause the work to be completed to whoever the

6    tenant chooses to have complete the work."

7         The dispute as to what happens to any residual

8    amount is not a cure dispute.  It's a dispute for the

9    future.  Consequently, that aspect of the landlord's cure

10   objections also should be denied.

11        (Pause)

12        THE COURT:  In summary, then, let me be clear.  In

13   addition to denying both of those aspects of the landlord's

14   cure objection, the record should be clear that I have not

15   decided what, if anything, the landlord's entitled to be

16   paid for work it has already done.  It has not set forth

17   sufficient evidence in the form of backup to support its

18   invoice of 322,000 for that work.  Moreover, it has not

19   completed the work by the deadlines stated.

20        (Pause)

21        THE COURT:  So, I could not, even if there were a

22   quantum meruit issue before which there isn't since that

23   would not be an issue under the contract, determine what on

24   a quantum meruit basis the landlord might be owed.

25        Secondly, I have not determined whether if such a

Page 123

1    claim is ever fixed the construction fund escrow can be a

2    source of payment for it.  I just noted the possibility as

3    it may exist either under the introductory paragraph to

4    Section 25 or the operation of the first sentence of

5    Section 25(d).

6              The landlord has contended that the May 2017

7    e-mail and the fact that a relatively small amount of money

8    was paid for work done after April 1, 2017 by it or its

9    subcontractors should, as a matter of course of performance

10   or course of dealing under California law, which the parties

11   agree controls this dispute as far as contract

12   interpretation is concerned, meaning that the tenant waived

13   its rights to completion by April 1 and, therefore, that it

14   has a cure claim.

15             California generally follows the plain meaning

16   rule and excludes the admission of parole evidence

17   particularly for only -- excuse me, but that is the case

18   here, where there is an integrated written agreement which,

19   as I noted before, this agreement is.

20             And the parol evidence rule itself can be used

21   only to resolve an ambiguity in an agreement and this

22   agreement is not ambiguous as far as the deadlines that it

23   sets for performance.

24        (Pause)

25             THE COURT:  The California courts, however, will,

Page 124

1    under certain circumstances, permit consideration of the

2    parties' course of performance of an agreement which is with

3    respect to a transaction that involves repeated occasions

4    for performance by a party and the other party with

5    knowledge of the nature of the performance and an

6    opportunity for objection to it accepts the performance or

7    acquiesces in it without objection.

8         Clearly, evidence of a course of performance is

9    admissible if it does not directly contradict the terms of a

10   written agreement but merely explains or supplements them.

11        (Pause)

12        THE COURT:  A more difficult issue is whether the

13   course of performance actually permits modification or

14   alteration of the plain terms of agreement, of an agreement,

15   if an actual waiver is not shown.

16        And, here, no waiver would be shown given the

17   express no waiver provision term or the express term

18   limiting the nature of a waiver in paragraph 17 of the

19   agreement.

20        (Pause)

21        THE COURT:  As far as the deadlines are concerned,

22   I do not believe that the parties' course of -- the evidence

23   of the parties' course of performance is sufficient to

24   overcome the plain terms of the agreement as to when the

25   work was to be completed.

Page 125

1          The payment of a relatively small number of post-

2     April 1 work invoices, or invoices for work done

3     post-April 1, to me also does not reflect more conceivably

4     then the tenant causing work to be completed after the

5     deadline passed which Section 25(d) specifically permits the

6     tenant to choose any party to use to complete such work,

7     including, without limitation, the landlord.

8          That leaves the May e-mail which acknowledged the

9     default to not acquiesce in it but did request, in the light

10    of the default, completion of the HVAC work in connection

11    with the seismic work to avoid additional disruption.   That

12    was in May of 2017.

13         The seismic work has yet to start.  To me, that is

14    not sufficient evidence of the course of performance to show

15    that the parties agreed to waive the April 1 deadline.

16        (Pause)

17         THE COURT:  The second dispute, as I noted,

18    pertains to the landlord's contention that the tenant

19    breached the implied covenant of good faith and fair dealing

20    that exists in every contract governed by California law,

21    including lease agreements.

22         I guess before I go to that, let me cite Lennar

23    Mare, M-A-R-E, Island v. Steadfast Insurance Company, 176

24    F.Supp 3d. 949, Ed. CA 2016, as the source for my summary of

25    California law on contract interpretation, use of parol

Page 126

1   evidence, resolution of ambiguities and course of

2   performance.

3           That case has an extensive discussion of all of

4   those issues citing substantial California law opinion.

5       (Pause)

6           THE COURT:  So, the implied covenant of good faith

7   and fair dealing clearly exists in all contracts governed by

8   California law including leases, Wolf v. Walt Disney

9   Pictures and Television, 162 Cal App 4th, 1107, Cal App

10  2008.

11          There are serious limitations on it, however, as

12  noted by the Wolf Court "the implied covenant will only be

13  recognized to further the contract's purpose.  It will not

14  be read into a contract to prohibit a party from doing that

15  which is expressly permitted by the agreement itself."

16          The general rule regarding the covenant of good

17  faith is plainly subject to the exception that the parties

18  made by express provisions of the contract, grant the right

19  to engage in the very acts and conduct which would otherwise

20  have been forbidden by an implied covenant of good faith and

21  fair dealing.

22          This principle is consistent with the general rule

23  that implied terms cannot vary the express terms of a

24  contract.

25          If the defendant did what it was expressly given

Page 127

1    the right to do, there could be no breach.

2            Thus, although it has been said, the implied

3    covenant finds particular application in situations where

4    one party is invested with a discretionary power affecting

5    the rights of another if the express purpose of the contract

6    is to grant unfettered discretion and the contract is

7    otherwise supported by adequate consideration that the

8    conduct is, by definition, within the reasonable expectation

9    of the parties and can never violate an implied covenant of

10   good faith and fair dealing.

11           The reference to reasonable expectations is

12   important.  I'm sorry.  See, also, Storek & Storek v. Citi

13   Corp Real Estate, Inc., 100 Cal App 4th 44, Court of Appeals

14   Cal 2002.

15           The requirement of reasonableness or reasonable

16   expectations is important to the implication of the implied

17   covenant in the context where there is no express agreement

18   governing the parties' expectations.

19           Even there, the burden that the implied covenant

20   would place on the party against which it is being asserted

21   must be reasonable.  See Sachs v. Exxon Co., U.S.A., 9 Cal

22   App 4th 1491, Cal App 1992.

23           Here, as I noted, the 2015 amended and restated

24   lease was entered into by the parties in light of

25   anticipated substantial work to be done on the building

Page 128

1    including, without limitation, as set forth in paragraph 8

2    of the agreement, seismic work.

3            That paragraph says landlord is responsible for

4    all necessary seismic repairs and improvements within and in

5    the vicinity of the premises and the overall building.

6            The landlord shall use best efforts to obtain

7    necessary government approvals to perform such seismic

8    repairs and improvements within 12 months after the City of

9    Los Angeles's approval of administrator's determination of

10   the city applications described in Recital D of this

11   amendment and complete such seismic repairs and improvements

12   within 12 months of when said permits are issued subject to

13   the terms of Section 9 below.

14           As an aside, that Section 9 prohibits work over

15   the specifically laid out Christmas sale season.

16           Section 8 then continues; notwithstanding anything

17   contained herein to the contrary, all seismic permits and

18   seismic repairs and replacements shall be applied for,

19   installed and completed within such time as required by law

20   of by governmental authorities.

21           The plans and specification schedule, authorized

22   hours of construction activity and remediation plan for such

23   seismic work shall be pre-approved by tenant pursuant to the

24   demolition and construction protocol attached hereto as

25   Exhibit C; which also, of course, was referred to in

Page 129

1    Section 2 of the agreement.

2             And, then, Section 8 continues; and conducted in a

3    manner that creates the minimum possible visual and noise

4    inconvenience to tenant and its customers.

5             Turning to Exhibit P -- C, excuse me, the

6    demolition and construction control protocol.  It provides,

7    in Section 2(b), a mechanism for the landlord to make its

8    proposal and contemplated by Section 8, that I just quoted.

9             Section 2(b) of Exhibit C states landlord shall

10   provide two weeks' notice for any demolition or construction

11   work not involving remediation or removal of hazardous

12   materials at the building parcel and shall include in that

13   notice the scope of work contemplated, a detailed set of

14   plans and specifications for the same, together with the

15   schedule, authorized hours of construction activity and

16   remediation plan for the same.

17            Tenant shall have ten business days from receipt

18   of landlord's both notice and complete detailed plans and

19   specifications to provide any comments and/or objections.

20            No reply from tenant within that period shall

21   constitute approval.

22            Landlord may proceed with the work in question

23   after complying with the aforesaid procedures provided the

24   work in question is approved by tenant or deemed approved by

25   tenant as aforesaid.

Page 130

1          The landlord, I believe, acknowledges that the one

2     written communication that is in the record, the September

3     28, 2018 email to Sears in-house counsel working on

4     building-related matters with respect to this real property,

5     did not comply with Section 2(b) that I've just quoted.

6          Even if that wasn't conceded, it's clear from

7     reading the email and the attachments that it does not

8     include a detailed set of plans and specifications together

9     with a scheduled authorized hours of construction activity

10    and remediation plan as required by Section 2(b) of

11    Exhibit C.

12         There's nothing in the record to suggest that such

13    a proposal was ever made.

14         What the landlord contends instead is that it was

15    understood by the parties that the September 28 e-mail was a

16    negotiating start and that Sears did not thereafter

17    negotiate with the landlord or even after the -- even after

18    the start of the bankruptcy case respond to the landlord

19    when it sought to negotiate.  That, the landlord contends,

20    constitutes a breach of the implied covenant of good faith

21    and fair dealing.  I conclude to the contrary that it does

22    not constitute such a breach.  The parties have very

23    carefully laid out, as was evidently reasonable for them to

24    do given the nature of the 2015 amended and restated lease,

25    how such a proposal would be made, when it would be deemed

Page 131

1    accepted, when it would be treated as rejected and what the

2    parties were supposed to do thereafter.

3            Here, there was no such proposal made in the first

4    place.  If, when faced with no response from the tenant, the

5    landlord wished to proceed, the agreement actually gave the

6    landlord a mechanism in which to do so and spelled out the

7    tenant's rights and duties with respect to such a mechanism.

8            The landlord would make a proposal compliant with

9    Section 2(a).  The tenant would have ten days to object.

10   And if no reply from the tenant within that period was

11   received, the tenant would be deemed to have approved and

12   the landlord could proceed with the work in question.

13           The landlord did not follow that protocol.

14           It's clear, further, although unnecessary for my

15   ruling, that in response to the September 28 proposal, which

16   clearly was not in compliance with Section 2(b) of

17   Exhibit C, Sears responded negatively as set forth in

18   Mr. Velkei's e-mail in the email chain.

19       (Pause)

20           THE COURT:  It should be clear though, but I'll

21   state that, that negative response did not trigger an

22   obligation by Sears under Section 2(c) of Exhibit C which

23   states, if tenant lodges timely objections to any notice

24   hereunder, the parties hereto must agree upon the scope and

25   course of the work together with the schedule authorized

Page 132

1    hours of construction activity and remediation plan for the

2    same before it may proceed.

3            Such consent by tenant may not be unreasonably

4    withheld.

5            But, again, since no such proposal was made in the

6    first place, the rejection by Sears indicates that merely

7    the non-compliant proposal was unacceptable.  It doesn't

8    trigger an obligation, on the tenant's part, to proceed to

9    work on a proposal with the consent not to be unreasonably

10   withheld.

11           Indeed, the rejection beyond rejecting something

12   that was non-compliant itself refers to the fact that the

13   proposal had significant holes in it as far as laying out a

14   detailed set of plans and specifications and timing.

15           So, given that fact or set of facts as laid out in

16   the agreement between the parties, there is no implied

17   covenant that could be breached given that the parties

18   actually specified how to deal with this set of potential

19   facts.

20           I'll also note that the contention that the tenant

21   was responsible for the termination of prospective financing

22   for the renovation or remediation, by the terms of the

23   landlord's own argument, is not tenable.

24           The testimony was to the effect that the bank's

25   condition was that there be an agreement with Sears as far

Page 133

1    as the access for the seismic work and remediation.

2            The parties, indeed, had an agreement.  The

3    landlord didn't follow it.  Consequently, what the condition

4    required was a new agreement which Sears was under no

5    obligation to provide either under the plain terms of the

6    parties' existing agreements or any sort of implied covenant

7    of good faith and fair dealing.

8            So, I will deny that aspect of the cure objection

9    as well.  So, I'll enter an order granting the objection as

10   far as the first two points, CAM and tax reimbursement and

11   deny it in all other respects.

12           You don't need to refer --

13           MS. MARCUS:  Your Honor --

14           THE COURT:  I'm sorry.  I don't -- let me just

15   finish.

16           You don't need to do anything more than refer to

17   my bench ruling.

18           Okay.  That's someone on the phone?

19           MS. MARCUS:  Yes.  Sorry, Your Honor.  This is

20   Jacqueline Marcus on behalf of Sears Holdings Corporation.

21           THE COURT:  Yes.

22           MS. MARCUS:  I'm reluctant to venture into this

23   after you've spent so much time on it this morning.  But I

24   just wanted one clarification.

25           THE COURT:  Okay.

Page 134

1          MS. MARCUS:  You said a little bit earlier that

2     you haven't decided whether the landlord is entitled to be

3     paid for the work it had already done and that there might

4     be a claim for quantum meruit.

5          THE COURT:  Right.

6          MS. MARCUS:  On behalf of Sears, what I want to

7     make sure of is that there's nothing in your order today

8     that basically transfers what might have been an unsecured

9     claim against Sears into a post-petition administrative

10    claim because the lease is being assumed and assigned.  But,

11    from our perspective, any amounts that would be owed to the

12    landlord would really be attributable to Transform not to

13    the debtors.

14         THE COURT:  Well, that issue isn't really before

15    me.  The benefit obviously has to be for the debtor, for the

16    estate, as far as the administrative claim is concerned.

17    So, you know -- but that issue really isn't before me.  I'm

18    not allowing any claim.  In fact, I don't have any real

19    evidence to support a claim.

20         And, again, although I'm not ruling on this, it

21    does appear to me that the purpose of the agreement is to

22    secure whatever amounts are owing.  I'm not talking about

23    the 3.25 million agreement.  It's to secure whatever amounts

24    are owing in respect to the construction.  So, all of the

25    issues would have to be sorted out.

Page 135

1              MR. MARCUS:  I -- yes.  I guess from the debtor's

2    point of view if it -- if it were going to be in a worse

3    position as a result of the assumption than it would have

4    been as a result of rejection --

5              THE COURT:  Right.

6              MS. MARCUS:  -- that would obviously be of concern

7    to us.

8              THE COURT:  Well, I find that -- I understand it

9    would be a concern but I find it -- that that state of

10   affairs would be highly unlikely given (a) the purpose of

11   the construction fund and (b) the requirement for any

12   administrative expense that it be for the benefit of the

13   debtor's estate.

14             MS. MARCUS:  Okay.  Thank you.

15             THE COURT:  You know, here this is --

16             MS. MARCUS:  That --

17             THE COURT:  It's construction work that benefits

18   the building but not really Sears except, you know, to the

19   extent that the -- it's new Sears, the landlord -- the

20   landlord's new tenant, Transform.

21             MS. MARCUS:  Okay.  Thank you, Your Honor.

22             THE COURT:  But I'm not ruling on that either.  I

23   mean, that's really not before me.

24             MS. MARCUS:  I know.  I know.

25             THE COURT:  What's before me now is a cure

Page 136

1    objection and that requires defaults under a contract given

2    the default by the tenant in providing the services under

3    the contract -- I'm sorry, given the default by the landlord

4    to provide the services under the contract, I don't see a

5    default under the contract to be paid for.  Although, you

6    know, again, that --

7            MS. MARCUS:  Okay.

8            THE COURT:  -- doesn't necessary mean that there

9    isn't some other right to payment from some source.

10           Okay.  So, you don't have to --

11           MS. MARCUS:  Thank you.

12           THE COURT:  -- settle that order formally but you

13   should circulate it to counsel for the landlord as well as

14   counsel for the debtor.

15           MR. WEAVER:  We'll do that, Your Honor.  We'll get

16   that e-mail to you as soon as we can.

17           THE COURT:  Okay.

18           MR. WEAVER:  And Your Honor should note our

19   deadline, I believe, is a week from today.  So, we'll work

20   to get the order to you --

21           THE COURT:  Okay.

22           MR. WEAVER:  -- before then.

23           THE COURT:  That's fine.  I -- you know, frankly,

24   I don't know if there's any hope in doing this but I still

25   urge the parties to try to work with each other to get the

Page 137

1    construction going.  That might be a no brainer for each

2    side.

3              MR. WEAVER:  Your Honor, my understanding is that

4    the parties have reached -- Transform has reached out, Your

5    Honor.

6              THE COURT:  All right.  Okay.

7              MR. WEAVER:  Thank you, Your Honor.

8              THE COURT:  Thank you.

9              MR. KUPETZ:  Thank you.

10        (Whereupon, these proceedings were concluded at 1:36

11    p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 138

```
 1                        I N D E X

 2

 3                     R U L I N G S

 4

 5   DESCRIPTION                              PAGE      LINE

 6   Court will enter an order granting       133        9

 7    Landlord's cure objection as far as CAM

 8    and tax reimbursement are concerned but

 9    denied as to all other aspects

10

11                   E X H I B I T S

12   NO.       DESCRIPTION                    ID.     EVID.

13   JOINT EXHIBITS:

14   ---                                      ---        6

15   FOR THE LANDLORD:

16   5-10      Various e-mail exchanges between

17             Landlord and his counsel       ---       19

18   15        Summary document relating to wire ---    19

19             transfers

20   2-4       Various invoices and checks     ---      54

21   ---       Declaration of Izek Shomof dated  ---    22

22             May 1, 2019

23   ---       Supplemental declaration of Izek ---     22

24             Shomof dated July 26, 2019

25
```

1                  C E R T I F I C A T I O N

2

3    We, Lisa Beck, Jamie Gallagher and Pamela Skaw certify that

4    the foregoing transcript is a true and accurate record of

5    the proceedings.

6    **Lisa Beck**  Digitally signed by Lisa Beck
                     DN: cn=Lisa Beck, o, ou,
                     email=digital@veritext.com, c=US
7    _____  Date: 2019.08.05 12:00:54 -04'00'

8    Lisa Beck

9    **Jamie Gallagher**  Digitally signed by Jamie Gallagher
                          DN: cn=Jamie Gallagher, o, ou,
                          email=digital@veritext.com, c=US
10   _____  Date: 2019.08.05 12:01:08 -04'00'

11   Jamie Gallagher

12   **Pamela Skaw**  Digitally signed by Pamela Skaw
                      DN: cn=Pamela Skaw, o, ou,
                      email=digital@veritext.com, c=US
13   _____  Date: 2019.08.05 12:01:22 -04'00'

14   Pamela Skaw

15

16

17

18   Date:  August 5, 2019

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25

| **&** | 48:22 49:2,18 | **183116** 57:14 | 52:16 56:19,22 |
|---|---|---|---|
| **&** 5:2,17 83:10 27:12 | 82:12 105:5,20 115:5 | **1837** 2:10 | 80:3,4 81:18 |
| | **1107** 126:9 | **19** 39:5 115:22 | 84:19 103:11 |
| **0** | **11501** 139:23 | 138:17,18 | 104:14 111:5 |
| **08001pr** 26:25 | **11th** 31:4,10 | **1992** 127:22 | 112:14 113:11,25 |
| 27:6,14 | 76:22 | **1999** 2:9,14,20 3:3 | 114:21 119:1,17 |
| **08002a** 28:11 | **12** 9:16 28:8 36:3 | 3:10 | 127:23 130:24 |
| **08002pr** 27:25 | 36:6 78:8 80:11 | **1st** 12:6 24:1,3,8 | **2016** 125:24 |
| 28:5 | 80:12 105:24 | 25:10,22,25 26:10 | **2017** 12:6 24:1,4,8 |
| | 128:8,12 | 29:9,15 31:7,12 | 24:24 26:6,25 |
| **1** | **13** 9:16 55:4 | 37:5 46:6 58:13 | 27:5,14,24 28:4 |
| **1** 7:4 8:4 10:11 | **133** 138:6 | 68:7 71:10 73:13 | 28:10 29:9,15 |
| 15:9,21 19:8 20:4 | **135** 23:5,8,10,11 | 79:9 86:19 116:8 | 30:2,9,24 31:4,7 |
| 21:9 22:8 24:23 | 23:15 24:11 35:20 | 116:8 | 31:12 32:16 45:15 |
| 26:4 42:2 45:15 | 81:3 | | 45:25 46:2,6,16 |
| 45:22,25 46:2,16 | **14** 9:16,17 19:18 | **2** | 46:23 47:6,8,16 |
| 46:23 47:6,8,15 | 29:15 78:10 79:9 | **2** 1:20 8:2 15:19 | 47:19 52:13 53:6 |
| 47:18 56:12 60:17 | 118:23 | 19:9,12 20:9,12 | 53:10,14 60:17 |
| 61:1,10,20,21,24 | **146** 42:12,15 | 26:24 28:4,22 | 66:12 79:11 99:23 |
| 66:12,20,24 67:10 | **1491** 127:22 | 32:20 35:21 54:22 | 115:7 116:8,9 |
| 75:13 79:17 92:7 | **15** 9:16 10:1 17:18 | 54:23 56:14 58:8 | 117:15 118:5,16 |
| 115:7 117:15 | 19:19,20 30:19 | 59:5 61:6 79:18 | 118:24 119:3,6 |
| 118:4,16,24 119:6 | 37:5 138:18 | 80:4,6 81:6 | 123:6,8 125:12 |
| 119:15 123:8,13 | **16** 10:8 15:11,22 | 106:14,14 107:24 | **2018** 32:17,22 |
| 125:2,3,15 138:22 | 18:21 19:19 23:5 | 107:25 109:8,13 | 36:23 46:24,24 |
| **1.5** 27:1 | 23:7,15 53:13 | 114:7,23 116:7 | 52:5 77:12 84:22 |
| **10** 8:18 11:6 19:16 | **162** 126:9 | 117:11 120:10,11 | 104:23 130:3 |
| 19:17 23:14,16 | **16th** 26:25 27:5 | 120:25 129:1,7,9 | **2019** 1:20 20:4,5 |
| 27:22,22 28:21 | 27:14,24 28:4,10 | 130:5,10 131:9,16 | 21:9,10 22:8,11 |
| 33:1,18 59:5 | 41:8,11,15,18 | 131:22 | 33:7 37:5,6 51:16 |
| 81:14 115:5,16 | 53:6 | **2-4** 138:20 | 55:4 84:23 138:22 |
| 117:11 | **17** 14:19 23:10 | **20** 42:15 | 138:24 139:18 |
| **100** 46:5 127:13 | 32:25 33:2,14 | **2002** 127:14 | **205,000** 34:24 |
| **10006** 5:20 | 35:19 115:23 | **2004** 55:13 | **22** 138:21,23 |
| **1006** 7:5 | 119:17 124:18 | **2007** 61:1,24 | **23** 68:15 69:15 |
| **1008** 2:7,13,19 | **176** 125:23 | **2008** 126:10 | 71:1 76:4,10 |
| **10153** 5:5 | **17th** 10:19,20 | **2011** 56:12,20 | **23rd** 33:6 |
| **10309** 111:6 | **18** 23:11 29:18 | 79:17 111:4 114:4 | **248** 1:17 |
| **10601** 1:18 | 36:25 37:8 | 114:7 | **24th** 8:23 11:13 |
| **10:08** 1:21 | **18,853** 28:11 | **2014** 29:22 52:10 | 41:20 42:4 |
| **11** 2:2,9,14,20 3:3 | **18-23538** 1:4 2:1 | 52:10 | **25** 24:10 42:22 |
| 3:5,10 9:16 19:18 | | **2014/2015** 53:5 | 58:10,25 65:25 |
| 28:3 45:6,16 | | **2015** 22:22 23:20 | 88:7 89:17 90:24 |
| | | 29:24 35:12,12 | |

100:20 101:14
112:14 116:14
117:13,21 118:19
119:23 120:4,11
121:9,20 122:1
123:4,5 125:5
**25's**   120:19
**250**   63:13
**25th**   81:20
**26**   20:5 21:10
22:10 138:24
**2650**   3:17,22 4:4
**26th**   20:10 43:7
**28**   24:11 130:3,15
131:15
**2:17**   31:10
**2nd**   76:13

**3**

**3**   8:2 15:19 20:11
20:12 22:23 23:13
23:14,16 24:22
27:4 28:22 37:1
37:12,19 60:17,18
61:9 64:20 66:19
79:18 81:20 90:16
114:7 115:5,16
117:15,22 118:4
**3,250,000**   87:24
112:16
**3.25**   24:13 58:12
89:18 134:23
**30**   15:13 41:5 51:9
51:10 53:17,20,25
59:13 85:21 86:4
86:8 111:5 116:23
**300**   1:17 28:23
139:22
**31**   15:13
**322**   71:25 73:4,6
93:2
**322,000**   33:7 35:1
72:9,21 75:8
85:17 91:2 92:13

102:1,2 116:9
119:20 120:24
122:18
**322,649**   34:6
**322,649.80**   112:21
**3298**   2:5
**33**   17:10 65:18
**330**   139:21
**333**   5:11
**34**   17:10 65:23,24
**3400**   5:12
**346**   118:16 119:1
**3477**   2:15 18:22
**3478**   2:21
**35**   66:3
**36**   108:12
**365**   3:5 57:1
111:18
**375,000**   72:14
**3817**   3:6
**39**   105:9
**3:15**   12:11
**3d**   125:24

**4**

**4**   3:5 8:2 15:20
19:10,12 22:23
24:22 26:23 27:23
28:22 54:22,23
60:17,18 61:9
64:20 66:20 90:16
115:5 117:15,23
118:4
**4186**   3:13
**44**   127:13
**44,000**   57:22
**4489**   3:18
**45**   105:20,20
**4624**   3:23 12:25
**4625**   4:5 15:12,22
105:10
**478,000**   27:7,15
**48**   81:2

**4th**   126:9 127:13
127:22

**5**

**5**   8:18 11:6 12:25
13:5 19:14,16,17
22:24 27:4 28:21
64:20 66:20 76:24
90:16 93:24 115:5
117:23 139:18
**5,000**   57:11
**5,696,000**   18:24
**5-10**   138:16
**50**   65:10 105:10
**54**   138:20

**6**

**6**   8:18 20:9,11,12
22:22 23:3 24:11
24:22 27:23 28:9
35:11,20 60:17,18
61:9 64:20 66:20
78:5 90:17 94:5
115:5 117:15,23
118:4 138:14

**7**

**7**   8:18 24:22 26:21
26:21 28:9 60:17
60:18 61:10 64:21
78:7 90:17 93:25
115:5 117:15,23
118:4,16 119:1
**70**   51:8,10 113:9
**727,000**   72:15
**75**   34:17,18 65:5,6
65:10,25
**767**   5:4

**8**

**8**   8:18 26:22,22
28:21 35:19 78:11
80:8 84:2 90:22
90:24 100:6
113:11 115:5,16
119:9 128:1,16

129:2,8
**8/12/17**   27:9
**8/18/17**   27:15
**80,000**   29:18

**9**

**9**   8:18 19:14 27:3
78:11 115:6
127:21 128:13,14
138:6
**9/25/2018**   105:15
**90071**   5:13
**949**   125:24
**983,000**   28:6

**a**

**able**   55:9 59:17
62:14 84:18
116:25,25
**absolutely**   9:13
34:15,22 42:11
69:6
**absurd**   82:6
**accept**   121:24
**acceptable**   25:16
58:15 59:16,20
107:19 108:18
**acceptance**   64:21
66:22 67:1 117:24
**accepted**   108:4
131:1
**accepts**   124:6
**access**   51:7,13
56:16 67:11 86:8
98:21 99:1 100:17
114:10 133:1
**account**   67:25
**accurate**   139:4
**acknowledge**
56:14 114:8
**acknowledged**
32:8 125:8
**acknowledges**
31:11 77:5 94:22
114:21 130:1

**acknowledgment** 99:17

**acquiesce** 125:9

**acquiesced** 96:14 96:15

**acquiescence** 79:2

**acquiesces** 124:7

**action** 74:6

**active** 85:19,20

**activity** 36:10 80:16 81:12 106:7 106:21 107:8 128:22 129:15 130:9 132:1

**acts** 126:19

**actual** 19:2 34:18 38:4,7,9 55:22 57:4 64:10 75:11 124:15

**add** 29:18

**addition** 28:13 67:1 112:8 122:13

**additional** 2:5 17:4 25:3 61:5 72:12 114:2,22 117:19 125:11

**address** 6:12 11:6 66:15 67:15,16 74:21 104:20

**addressed** 76:1 82:11 115:15

**adequate** 127:7

**adjust** 25:22,25

**adjusts** 26:10

**administrative** 134:9,16 135:12

**administrator's** 128:9

**admissibility** 6:17 15:2

**admissible** 16:22 124:9

**admission** 123:16

**admit** 14:25 17:20 19:6 22:6 54:21 85:15

**admitted** 10:5 16:6 18:19 19:9 19:11,15,19,19,19 20:1

**adopted** 20:2

**advance** 85:8

**advances** 105:3

**advised** 105:22

**affairs** 135:10

**affect** 31:20 98:17 98:20

**affidavit** 108:4

**affiliates** 5:18

**aforesaid** 107:2,4 129:23,25

**afraid** 51:5,6

**agent** 14:7,12,14

**ago** 8:8 39:20

**agree** 23:21 37:5 38:3 64:9 72:20 72:25 86:17 107:6 110:12 112:17 123:11 131:24

**agreed** 6:18 14:13 22:24 23:25 24:20 25:5,6,11,14 35:13,23 36:2,9 36:15 46:1,21 47:17 59:24 62:4 103:4 110:8 111:25 117:4,9 125:15

**agreement** 10:16 10:19 14:10 23:25 24:5,12,20 25:21 25:24 26:12 46:21 51:3,14 52:15 53:1 58:7 59:3,20 59:25 60:3,6,8

**admission** 123:16

63:3 64:13 68:12 68:23 69:8 73:19 74:1 80:24 81:17 83:4,18 84:1 88:3 88:5,22 89:7 91:5 94:8,9,13 95:4,11 97:2,25 98:6,10 99:2,10 103:10,10 103:11,22,24,25 103:25 104:4,7,12 104:13 109:5 111:19 112:4 114:23 115:2,11 115:21 116:4,13 116:21 118:13 119:10 120:22 121:14 123:18,19 123:21,22 124:2 124:10,14,14,19 124:24 126:15 127:17 128:2 129:1 131:5 132:16,25 133:2,4 134:21,23

**agreements** 109:5 109:15,16 125:21 133:6

**ahead** 11:25 75:16 95:7 104:22

**ahh** 34:11

**al** 1:10 2:1

**alan** 49:12,13,20 49:20,22

**albeit** 120:21

**aline** 2:8,13,19 3:2 3:9 21:3

**alleged** 113:14

**allegedly** 113:16 113:21

**allow** 11:6 19:24 20:1 51:4 105:1

**allowed** 13:6 98:25

**allowing** 26:3,13 102:14 134:18

**allows** 100:17

**alteration** 124:14

**ambiguities** 89:8 126:1

**ambiguity** 123:21

**ambiguous** 123:22

**amended** 52:20 111:4 112:14 113:25 114:5 115:10 116:4 119:1,17 127:23 130:24

**amendment** 22:23 22:24 23:20 24:17 35:12,12,17 36:13 53:1 56:20,22,22 68:15 80:3,5 81:19 84:19 89:21 106:4 108:12 114:21 115:10,24 116:1,19 117:3 128:11

**american** 59:14

**amount** 2:7 13:25 18:13,24 27:1,6 27:15,25 28:5,11 33:6,7 34:3,6 57:18,23 64:24 71:19 72:21 73:10 92:17,19,20 100:14 102:1 112:16,17,18,22 112:25 113:2 117:9 118:2 120:9 121:4 122:8 123:7

**amounts** 25:3 61:5 110:23 112:1 112:2,7,13 117:19 134:11,22,23

andrew   5:22 6:4
55:2
angeles   3:17,23
4:4 5:13 21:8 36:3
40:25 55:13 78:4
111:7,9
angeles's   128:9
answer   34:5 42:16
43:1,3,4,15 53:11
63:19,20 87:4
answered   41:23
anticipate   32:21
anticipated
127:25
antithetical   96:16
anyway   91:3
apa   110:9
apologize   26:22
31:2,10 33:20
37:17 77:2
app   126:9,9
127:13,22,22
apparent   11:13
11:16 12:4 103:2
apparently   77:25
118:24
appeals   94:4
127:13
appear   39:11
134:21
appearing   11:1
appears   17:9
69:24 107:11
application   96:11
127:3
applications
128:10
applied   128:18
apply   12:24 83:5
90:20 101:3,9
121:12,22
appreciate   7:21
109:14

approach   11:22
22:13 88:24
appropriate   9:10
approval   25:18
64:24 79:19 81:15
93:19 102:6 107:1
114:14 118:1
128:9 129:21
approvals   128:7
approve   31:24
approved   36:4,11
80:17 102:6 107:3
107:3 115:13
128:23 129:24,24
131:11
approves   80:12
approximate
65:25
approximately
28:23 65:25 72:15
april   12:6 24:1,3,8
24:23 25:10,22,25
26:4,10 27:5 29:9
29:15 31:7,12
45:15,22,25 46:2
46:2,6,16,23,24
47:6,8,15,18
51:16,17 52:5
58:13 60:17 61:1
61:10,20,21,24
66:12,20,24 67:10
68:7 75:13 76:13
79:9,11 92:6
115:6 116:8,8
117:15 118:4,16
118:24 119:6,15
123:8,13 125:2,3
125:15
area   67:21 79:22
112:6 114:12,17
arguably   57:16
107:22

argue   70:5 78:22
78:25 79:25 84:15
85:10 101:7
arguing   58:3 74:9
81:18
argument   6:10
11:20 54:11,25
62:21,22 84:6
87:5 88:25 89:1
94:20 99:7 109:19
121:25 132:23
arguments   67:16
73:12 86:16
102:22
arising   116:3
ascertaining   94:7
aside   78:7 128:14
asked   34:20 41:23
43:12,21 48:20
49:7 65:3 95:23
asking   26:6 27:19
30:6 31:16 40:15
40:16,20 45:23
46:6 50:16
aspect   122:9
133:8
aspects   122:13
138:9
assert   111:15
asserted   103:3
111:24 112:3,7,11
113:13 127:20
assertion   116:10
assign   21:8 57:19
assigned   55:5
134:10
assignee   111:25
assignment   2:4
3:16,21 4:3
111:12,14,22
assigns   110:6
associate   32:19

associated   35:16
associates   31:20
assume   21:8
57:19 106:3
107:16
assumed   55:5
82:8 134:10
assumes   38:18
110:6 121:22
assuming   33:12
34:6,13,14 37:22
63:6 84:5
assumption   2:4
3:5,12,16,21 4:3
6:8 32:14 33:9,23
34:1 63:11 68:9
77:9,10 111:11,14
135:3
assure   51:15
asterisk   33:11
63:12
attach   28:14
40:13 93:1
attached   8:6 10:9
18:11 26:15 27:18
29:2 31:2 33:2,3
35:6 36:13 37:11
38:25 39:7 40:15
48:18 80:18 93:4
106:9 115:3,15
128:24
attachments
130:7
attempts   55:20
attorney   40:12
49:13 50:3,10
attorneys   5:3,10
5:18
attributable
113:22 134:12
august   1:20 26:25
27:14,24 28:4,10
37:5 53:6,10,13

139:18
**authorities**
  128:20
**authorized** 36:10
  80:15 81:12 106:6
  106:20 107:8
  110:18 128:21
  129:15 130:9
  131:25
**authorizing**
  110:16
**autonomy** 83:22
**avenue** 5:4,11
**avoid** 119:10
  125:11
**aware** 13:23 67:8
  83:15 119:14,15

**b**

**b** 1:23 57:1 60:25
  81:6 101:10
  106:14,14 107:24
  107:25 129:7,9
  130:5,10 131:16
  135:11 138:11
**back** 23:2 29:22
  29:24 35:11 37:20
  41:23 49:23 51:16
  54:20 55:13 59:9
  66:2,23 70:12,18
  81:24 84:24 90:3
  93:11 107:22
**background**
  56:11
**backup** 8:3 9:18
  10:10 16:11,12
  28:14,17,18 29:5
  30:1,8,14 34:15
  34:17,22,24 35:1
  35:3,3,4 53:5 71:4
  73:9 75:16 92:16
  97:3 118:22
  122:17

**bad** 96:14 98:9
**bank** 103:23
  104:6
**bank's** 132:24
**bankrupt** 51:12
**bankruptcy** 1:2
  1:16,25 49:4 50:3
  51:6 55:21 67:6
  82:4 84:12 85:4
  105:23 111:18
  130:18
**base** 16:7
**based** 7:7 16:24
  63:9 66:11 71:15
  75:11 104:9
  113:14
**baseline** 107:17
**basically** 34:20
  37:14 48:3 50:25
  57:1 64:14 97:14
  108:15 134:8
**basis** 55:22 57:17
  85:16 92:2 94:15
  122:24
**beck** 4:25 139:3,8
**beginning** 8:21
  32:22 80:6 86:4
**begins** 30:24
  39:15 114:24
**behalf** 6:5 11:1
  50:6 55:2 93:19
  111:17 133:20
  134:6
**belabor** 58:11
  94:16
**believe** 8:12 10:1
  17:18 41:25 61:8
  62:13 70:8 73:8
  86:11 96:18
  120:14 124:22
  130:1 136:19
**belongs** 77:9

**bench** 133:17
**benefit** 55:21
  134:15 135:12
**benefits** 135:17
**best** 36:2 50:2
  55:18 96:13 109:7
  128:6
**better** 102:18
**beyond** 9:7 71:20
  97:25 99:6 132:11
**big** 48:12 50:19
  58:4
**biggest** 42:22
**bill** 34:3 61:7 64:4
  64:8 73:9,10
  78:24 79:2,6,8
**billed** 16:13 30:12
**bind** 108:1,22
**binder** 6:22 20:6
  20:6,7 22:12,22
  30:19 33:1,16,17
  36:25 42:2 54:22
  78:14
**binders** 6:14
**bit** 7:24 41:14
  63:9 134:1
**block** 94:4
**bottle** 44:22
**bought** 56:13
**boulevard** 3:17,22
  4:4 55:12 111:6,8
  111:9
**boyle** 42:18
**brainer** 137:1
**breach** 68:22
  73:25 74:1,3,6
  81:18 96:15 97:2
  108:18 112:24
  113:14 121:10
  127:1 130:20,22
**breached** 98:7
  125:19 132:17

**breakdown** 18:23
  19:1
**brief** 51:21 54:24
  55:1
**briefing** 3:13
**briefly** 56:11 78:3
**bring** 74:6
**broad** 45:14
**broken** 39:19
**bucket** 7:10 8:2
  8:17 9:15
**buckets** 6:25
**buffer** 72:17
**building** 53:18
  55:12,14 56:13,17
  56:19 78:6 105:7
  106:17 114:3,11
  115:24 116:1,4
  127:25 128:5
  129:12 130:4
  135:18
**bunch** 52:4
**burden** 84:16
  127:19
**burst** 85:13
**business** 56:15
  57:24 103:20
  106:22 107:15
  109:14 114:9
  129:17
**busy** 84:13
**buyer** 3:2,9

**c**

**c** 5:1 6:1 80:18,23
  106:10,13 107:5
  108:14 109:13
  115:4 128:25
  129:5,9 130:11
  131:17,22,22
  139:1,1
**ca** 5:13 125:24
**cal** 126:9,9 127:13
  127:14,21,22

[calendar - communications]

Page 6

calendar 53:2
california 3:18,23
  4:5 13:1,5 69:13
  72:2 76:8 83:6,11
  93:21 94:1,4
  97:23 98:3 105:13
  108:17 123:10,15
  123:25 125:20,25
  126:4,8
call 44:12 57:9
  85:23
called 8:13 35:16
  112:13
calling 77:1
cam 57:9,11,13,18
  133:10 138:7
capable 7:21
careful 98:4
carefully 130:23
carryover 11:7
case 1:4 8:7,7 13:4
  13:5 31:16 35:4,4
  45:6,16 48:22
  49:2,18 51:25
  53:3 64:6 69:13
  75:17 83:9,10,10
  83:15 92:1 111:11
  112:2 115:8
  123:17 126:3
  130:18
cases 76:9
cash 57:14,16
catch 78:18
categories 19:1
  46:17 57:8
cause 25:1 58:18
  61:3 62:5 63:1
  67:10 69:25 70:21
  105:3 117:17
  118:10 122:5
causing 125:4
certain 10:2 45:24
  55:14 106:5 124:1

certainly 11:18
  16:4 67:9 85:17
  86:10 89:13,14
  91:6 100:5
certify 139:3
cetera 14:18 18:7
  107:13
ch 2:2
chain 30:23
  131:18
chains 8:22,24 9:9
chance 7:16 9:21
change 21:18,23
  21:24 22:1,2
  70:10 119:20
changes 79:21
  114:17
changing 60:6
chapter 45:6,16
  48:22 49:2,18
  105:5,20
charges 57:9,11
  57:11,13
charts 17:7
chase 67:18
check 57:13,15,16
  57:18
checks 8:3 15:12
  19:3 28:15,17
  29:8 138:20
children's 21:4
children's 2:8,14
  2:20 3:3,10
choice 9:13
choose 125:6
chooses 122:6
chose 43:15
christmas 128:15
circulate 136:13
circumscribed
  83:13
circumstances
  116:5 124:1

cite 69:13 76:9
  83:9 125:22
cited 13:4 84:2
cites 83:10 94:2
citi 127:12
citing 126:4
city 36:3 40:24
  128:8,10
civil 94:1
claim 10:23 16:7,8
  26:16 57:17 71:14
  73:1,23 85:17
  91:1,2 92:15,21
  93:8 100:13
  101:12,13,14
  102:10,19 103:2
  112:11 113:14
  116:9 119:20
  120:23 121:3,3
  123:1,14 134:4,9
  134:10,16,18,19
claimed 72:21
claiming 35:1
claims 112:10,10
  116:3
clarification
  133:24
clarify 34:4
clause 63:2
clear 8:11 16:18
  20:4 39:10 56:14
  58:16 60:5 69:13
  76:8,9 77:13 80:9
  82:2,13,24 83:7
  85:9 89:25 97:23
  100:20 103:23
  107:11 109:20
  110:2,4,16,22
  119:13 120:23
  122:12,14 130:6
  131:14,20
clearly 8:13 9:20
  58:8 83:11 90:20

104:14 107:18
  121:22 124:8
  126:7 131:16
cleary 5:17 6:5
  55:2
client 75:3 101:18
  110:5
client's 12:13
  101:15
clock 107:14
close 37:5 104:23
closing 105:16
code 94:1,2
  111:18
collaboration
  109:3
collect 56:8
come 26:5 37:20
  95:10
comes 39:12
  41:19 70:18
coming 47:4 70:2
commence 113:23
commenced 49:18
commencement
  45:6,15 48:22
  49:2 91:25
commentary 8:21
  9:8,12 19:15
comments 106:24
  129:19
commercial 94:2
common 112:6
communicated
  92:1 96:19
communication
  49:5 78:8 82:25
  130:2
communications
  45:7,18,20 46:9
  48:23 49:8,10,18
  105:12

| | | | |
|---|---|---|---|
| **company** 30:5 | **compliant** 131:8 | **confirm** 40:7 61:9 | 58:5,9 59:1,2,14 |
| 59:15,15 125:23 | 132:7,12 | **conflicts** 56:22 | 59:16,18,19 60:1 |
| **compare** 108:15 | **comply** 103:6 | **confused** 52:15,24 | 60:2 61:2 64:22 |
| **compensate** 57:4 | 109:7 130:5 | 71:12 | 80:16,18,25 81:12 |
| **compensation** | **complying** 107:2 | **connected** 48:10 | 82:7 84:2,21 85:8 |
| 82:5 | 129:23 | **connection** 16:16 | 85:10,23 86:4,8 |
| **complete** 24:1,3,7 | **compressor** 48:9 | 21:7 99:3 114:23 | 87:21 88:1,11 |
| 24:21 25:4,15 | **comprised** 113:19 | 125:10 | 89:2,20 92:4 95:8 |
| 36:6 56:3 60:16 | **computers** 48:11 | **consensual** 55:9 | 95:22 104:16 |
| 61:5 65:25 70:11 | **concede** 13:1 | **consensually** | 106:7,9,14,16,21 |
| 74:2 80:12 83:22 | **conceded** 130:6 | 87:16 | 107:8 108:23 |
| 89:2 103:4 106:23 | **conceivably** | **consent** 107:9 | 112:13,22 113:1,2 |
| 115:1 116:19 | 118:14 125:3 | 132:3,9 | 113:3,25 115:3,14 |
| 117:14,19 118:15 | **concern** 10:6 | **consequential** | 116:11,15,18 |
| 119:6 120:7,13 | 135:6,9 | 56:8 103:2 | 117:1,2,16,24 |
| 122:6 125:6 | **concerned** 98:17 | **consequently** | 119:21,25 120:1,5 |
| 128:11 129:18 | 98:20,21 121:5 | 122:9 133:3 | 120:18 121:12 |
| **completed** 25:2 | 123:12 124:21 | **considerably** | 122:2 123:1 |
| 34:19 46:2,5 | 134:16 138:8 | 102:1 | 128:22,24 129:6 |
| 47:18 48:13,14 | **concerns** 82:15 | **consideration** | 129:10,15 130:9 |
| 58:13,18 61:4,10 | **conclude** 113:10 | 124:1 127:7 | 132:1 134:24 |
| 61:12,13,20,21 | 130:21 | **considered** 81:14 | 135:11,17 137:1 |
| 62:6 63:2 65:1,5 | **concluded** 137:10 | **considering** 97:19 | **construe** 97:25 |
| 69:25 88:9 98:22 | **condensers** 48:16 | **consistent** 61:6 | 120:4 |
| 102:5 116:7,8 | 48:16,19 65:2 | 111:10 126:22 | **contact** 49:19 |
| 117:18 118:4,10 | 66:1 | **constitute** 21:14 | 105:13,22 |
| 118:25 120:2,9,21 | **condition** 51:2,3 | 68:23,25 106:25 | **contained** 51:25 |
| 120:25 121:1,18 | 70:11 82:6 103:9 | 129:21 130:22 | 115:1 128:17 |
| 122:5,19 124:25 | 103:24 132:25 | **constitutes** 130:20 | **containers** 48:18 |
| 125:4 128:19 | 133:3 | **construct** 38:9 | **contemplate** 63:2 |
| **completely** 72:13 | **conditionally** | 79:20 114:16 | 88:23 |
| 72:14 | 19:12 | 115:1 | **contemplated** |
| **completes** 58:14 | **conditions** 100:7 | **construction** | 14:12 24:22 60:17 |
| **completing** 46:22 | 104:24 | 22:21 24:13,16,24 | 61:19 81:10 100:6 |
| **completion** 12:6 | **conduct** 36:15 | 25:17 35:16 36:10 | 106:18 114:2 |
| 24:16 48:5 59:2 | 44:4 69:12,13 | 36:12 37:9,21 | 117:14 129:8,13 |
| 59:19 60:2 64:20 | 74:22 75:18 76:5 | 38:3,5,8,10 44:10 | **contemplating** |
| 66:19 89:20 91:20 | 76:6,7 77:15 | 44:12,13 45:5,8 | 104:15 108:13 |
| 115:7,8 116:18 | 78:23 79:6 83:12 | 45:16,24 46:11,17 | **contended** 123:6 |
| 117:2,22 120:20 | 92:9 93:17 126:19 | 46:18,22 47:2 | **contending** 73:8 |
| 123:13 125:10 | 127:8 | 48:6,24 49:14,16 | **contends** 87:22 |
| **compliance** 115:2 | **conducted** 80:19 | 50:25 51:10 53:20 | 112:19,24 118:17 |
| 131:16 | 106:10,10 129:2 | 53:22 54:1 55:25 | 119:19 130:14,19 |

[contention - court]                                                    Page 8

**contention** 118:21
121:10,21 125:18
132:20
**contested** 21:14
**context** 127:17
**continual** 92:2
**continue** 24:6
25:7 46:3 50:6
82:3 95:15 96:24
98:8
**continued** 46:23
46:24 47:18 93:12
95:19 119:15
**continues** 55:7
94:24 128:16
129:2
**continuing** 37:22
46:3 97:12
**continuous** 45:21
**continuously**
49:12
**contract** 13:3,14
55:22 58:21 61:23
83:8,14 84:11,16
84:18 93:22 99:19
103:5 104:13,14
104:14 110:6
120:14 121:8,11
122:23 123:11
125:20,25 126:14
126:18,24 127:5,6
136:1,3,4,5
**contract's** 126:13
**contracting** 63:17
**contractors**
112:20
**contracts** 8:11
13:7,12 82:2
126:7
**contradict** 69:14
83:8 124:9
**contradictory**
90:4 98:5

**contrary** 13:3
76:7 83:19 93:22
128:17 130:21
**control** 56:23
79:22 85:21
114:12,17 129:6
**controls** 56:20
123:11
**conversations**
82:21
**cooperate** 113:17
**cooperating** 109:6
**coordinate** 92:3
**copied** 27:17
**copies** 11:12
15:20
**copy** 42:3
**corp** 6:3 127:13
**corporation** 1:10
2:1 133:20
**correct** 6:16,19
7:13 18:4,12
20:13 23:1,23,24
24:1,4,8,9,13,17
24:18 25:5,12,18
25:19,22,23 26:18
26:19 27:1,2,7,8
27:10,11,16 28:1
28:2,6,7,11,12,15
28:16,19,20,24
29:6,7,22,24,25
30:2,9,15,16,20
30:24 31:7,8,13
31:21 32:6,9,12
32:17,23 33:7,8
33:24,25 34:2,9
34:12,16,23 35:2
35:6,14,17,25
36:4,5,7,8,13,14
36:17,18,20,21,23
36:24 37:6,7,10
37:21,25 38:5,8
38:11,19,21 39:1

39:8,23 40:4,8,11
40:14,25 41:9,11
41:16,22 42:6,8
43:10,11,14,20,25
44:10,11,13,14
47:7 49:7,8 52:2
52:10,11,14,17
53:6,10,14,15,18
53:19,21 54:1
59:6,23 60:4,14
61:22 62:3 63:7
63:14 64:11,16
65:9 66:6,21
70:19,22 73:20
74:5 75:4 77:25
77:25 78:1 87:3
103:7 108:6
**correctly** 43:5
61:16
**cost** 113:20
114:25
**costs** 35:14,15,16
61:7 80:7 82:9
85:3 108:23
**could've** 101:22
**counsel** 8:20,25
17:21 36:22 39:6
39:8,10 42:6 49:7
49:10 71:13 75:9
82:19 86:9 87:16
105:23,24 130:3
136:13,14 138:17
**counsel's** 40:1
82:24 84:8 93:10
**country** 139:21
**couple** 9:1 12:16
16:3
**course** 11:14,17
12:7 13:2,6,16
56:25 58:6 67:4
69:12,13 74:22
75:1,18 76:5,6,7
77:15 78:23 79:6

88:22 93:20 94:6
94:10,18 97:24
98:4 107:7 118:19
118:19 123:9,10
124:2,8,13,22,23
125:14 126:1
128:25 131:25
**court** 1:2,16 6:2,6
6:14,17,20 7:2,11
7:13,16,25 8:16
9:11,14,25 10:15
10:24 11:3,5,11
11:21,23,25 12:19
12:20 13:4,8,13
13:15,20,22 14:1
14:3,9,15,17,22
14:25 15:5,8,14
15:23 16:5,10,16
16:23 17:1,5,7,11
17:13,16,19,23
18:2,5,10,14,18
19:2,6,14,18,22
19:24 20:1,3,9,11
20:14,17,19,22
21:1,13,17,21,23
21:25 22:2,4,6,14
22:16 23:13,16,18
27:20 30:2,9
33:13,16,19,21
40:20,21 41:2,4
42:8 44:5,17,19
44:23,25 46:14,19
47:12 51:20 54:4
54:6,8,12,16,18
54:24 57:20 58:1
58:22,24 59:7,9
59:25 60:5,10,15
60:21,23,25 61:13
61:15,18,23 62:4
62:10,15,17,19,21
62:25 63:8,15,22
63:25 64:4,9,12
64:17 65:9,12,14

65:19,21,24 66:8
66:10,14,22 67:3
67:14,19,21,24
69:16,18,24 70:4
70:15,17,21 71:8
71:11,24 72:1,4,7
72:11,18,20 73:1
73:3,6,8,15 74:4,7
74:10,12,14,16,25
75:2,7,19,23 76:1
76:11,16,19,23
77:3,19,23 78:12
78:17 79:8,14
80:25 81:4,7
83:11,15 86:6,14
86:23 87:1,7,10
87:12 88:3,10,16
88:21,25 89:11,17
89:24 90:3,8,10
90:13,15,25 91:8
91:10,12,16,18,23
92:11,16,21,24
93:3,6,15 94:4,12
94:19,22,25 95:6
95:12,25 96:2,5,8
96:10,21,25 97:8
97:10,13,16,20,23
98:2,24 99:2,7,13
99:17 100:2,5,13
100:19 101:1,13
101:20 102:3,9,11
102:16,23,24
103:8,13,16,19
104:3,11,20,22,25
105:2,4,8,11,15
105:25 106:2
108:9,11 109:4,18
109:20,23,25
110:7,9,12,15,25
111:3,9 118:12
119:13,19 120:13
121:16 122:12,21
123:25 124:12,21

125:17 126:6,12
127:13 131:20
133:14,21,25
134:5,14 135:5,8
135:15,17,22,25
136:8,12,17,21,23
137:6,8 138:6
**courtroom**  6:10
11:14
**courts**  98:4
108:17 123:25
**covenant**  56:7
83:2,7,12,16
104:9 108:19
113:15 125:19
126:6,12,16,20
127:3,9,17,19
130:20 132:17
133:6
**cover**  75:23 96:16
97:1
**covered**  11:9
45:24 46:17 48:6
56:3 61:9 66:7
90:24 99:11
**crazy**  84:14
**create**  84:11
**created**  111:17
**creates**  36:16
80:19 106:11
129:3
**critical**  56:15
114:8
**cross**  6:13 11:15
16:20 20:14 22:12
22:17 33:17 58:11
**crossed**  6:9
**crystal**  100:19
**cure**  2:7,12,18 6:8
10:9,23 13:24,24
14:2 16:7,8 18:22
18:24 21:7 33:4
55:23 56:24 57:3

57:9,10 58:2
62:12 69:7 73:13
74:6,13 75:8,10
75:14 86:19,20,21
87:17 89:1,5
90:19 92:11 93:7
101:1,2,4,11
102:9,17,18 110:5
110:17,23 111:20
111:21 112:1,5,7
112:8,9,9,10,11
113:5 119:19
120:23 121:5,6,21
122:8,9,14 123:14
133:8 135:25
138:7
**cured**  111:18
121:11
**current**  50:12,14
50:18
**currently**  116:10
**customers**  31:20
36:17 80:20
106:12 129:4
**cut**  13:18 67:18
**cutoff**  14:19 15:24

**d**

**d**  1:24 3:5 6:1
24:19,21 60:15
66:9 73:23 88:7
90:24 100:20
117:13,21 118:19
119:23 120:4,10
121:9,20 122:1
123:5 125:5
128:10 138:1
**dam**  85:13
**damages**  56:8
85:6 89:4 90:19
101:8,9 103:2
104:5 110:10
**date**  12:7 13:20
14:19 15:24 29:21

29:24 41:9 49:1
115:7,8,9 139:18
**dated**  2:9,14,20
3:3,10 21:9,10
22:8,10 26:25
27:5,13,24 28:4
29:9,15 30:2,9
31:3 33:6 53:6
138:21,24
**dates**  120:9
**david**  5:15 10:25
**day**  86:5 107:14
**days**  9:1 12:16
41:5 57:24 59:13
81:14 87:2 106:22
108:3 116:23
129:17 131:9
**dead**  41:22,23
42:19 43:3,4,13
43:24 50:13 86:21
**deadline**  12:6,7
25:22,25 26:11
31:12 32:9 41:18
56:2 58:16 64:14
68:7,8 69:18 71:9
77:5,6 79:1,3,4,5
86:19,20 87:2
91:5,17 92:7
93:13 94:23 95:13
96:3,22 118:18
119:6 125:5,15
136:19
**deadlines**  82:16
106:5 122:19
123:22 124:21
**deal**  60:18 75:18
89:5 132:18
**dealing**  56:7 81:5
83:3,8 96:19
97:24 98:5 104:10
106:4 108:19
113:15 118:19,20
123:10 125:19

126:7,21 127:10
130:21 133:7
**dealings** 75:12
**deals** 107:5
**debate** 17:24
18:16
**debating** 18:8
**debtor** 108:22
113:14,22 134:15
136:14
**debtor's** 105:24
135:1,13
**debtors** 1:12 5:3,3
55:5 134:13
**december** 111:5
**decide** 16:21,23
17:2
**decided** 60:11
73:21 122:15
134:2
**deciding** 56:4
77:17
**decision** 68:8,11
71:2 77:7 94:4
**declarant** 6:9 8:7
9:19 11:15 17:11
**declaration** 2:17
4:1 8:6 12:17
15:11,13,22 16:20
17:10 18:25 20:4
20:5 21:9 22:8,10
26:15,24 27:4,18
27:23 28:9,14,22
29:2 30:13 31:2
33:2 35:6 39:1
40:14 41:8,11,16
43:7 65:6,7,10,17
65:22 66:11 72:16
89:14 93:1 105:10
105:21 138:21,23
**declarations** 20:1
21:2,6,11 54:17

**deem** 7:22
**deemed** 68:25
96:15 107:3 108:3
116:2 129:24
130:25 131:11
**default** 57:1,3,5
69:8 83:4 119:20
121:7 125:9,10
136:2,3,5
**defaults** 111:16
111:22,23,24
136:1
**defendant** 126:25
**definitely** 20:10
**definition** 127:8
**delay** 67:7 95:23
95:24
**delores** 26:3
**demand** 105:17
**demolition** 36:12
80:17 106:9,13,15
115:2,13 128:24
129:6,10
**demonstrated**
78:23
**denied** 122:10
138:9
**denies** 110:16
**deny** 133:8,11
**denying** 122:13
**depends** 66:16
113:24
**depose** 9:21
**deposed** 8:7 41:21
42:4
**deposit** 13:17 14:6
14:9,11 22:21
24:13 25:17 45:5
45:9,17,24 46:11
46:18 47:3 48:6
55:25 56:3 58:6
58:12 59:1,13,14
60:8 64:22 71:15

71:19 72:16 85:11
87:21,23 88:8,12
89:2,10,18 90:5
90:11,17 91:1,3
91:21 92:6 95:9
95:22 99:21
100:11,21,25
110:17,19 112:13
112:19,23 113:3
116:11,12,15,24
117:25 121:12,17
**deposited** 18:15
87:23
**deposition** 8:14
8:23,25,25 9:2,6
10:20 11:13 12:3
12:3,10,11,13,14
42:3,13 43:9,12
44:4,5 84:20
85:24
**deposits** 47:5
103:1
**described** 64:20
66:19 115:5
117:22 128:10
**describes** 89:18
**description** 138:5
138:12
**design** 16:4 24:15
59:2,18 60:2
89:19 115:1
116:17 117:1
**designatable** 2:5
**designated** 3:16
3:21 4:3
**detail** 18:23,25
29:4 37:14,18
**detailed** 37:9,9
81:10,21 106:19
106:23 108:9,14
129:13,18 130:8
132:14

**details** 107:12
109:10
**determination**
128:9
**determine** 19:10
122:23
**determined**
122:25
**develop** 83:24
113:8
**developed** 42:24
**development**
42:18
**devoted** 100:23
121:4
**die** 43:18
**died** 49:6 50:23
50:25
**different** 12:5
61:15 66:5 91:13
99:14 115:7,8
**differently** 72:2
109:15
**difficult** 124:12
**diligence** 7:17,20
**direct** 20:2 21:14
21:15,18 22:4,7
89:13 91:24 97:4
**direction** 9:20
17:12 39:13
**directly** 124:9
**disagreement**
67:22
**disastrous** 64:4
**disburse** 88:15
**disbursed** 117:25
**discovered** 12:16
**discovery** 8:6,13
9:21 10:16,17,18
10:21 11:10,12,21
14:5 15:24
**discretion** 79:20
114:15 127:6

**discretionary**
127:4
**discuss** 91:9
107:17 108:7
**discussed** 39:12
98:2
**discussing** 41:22
42:19 110:24
**discussion** 14:17
43:9 68:6 69:10
77:4,16 78:5,19
78:20,21 93:24
126:3
**discussions** 14:4,5
14:21 67:5 87:17
87:19 105:6
**disney** 126:8
**dispersed** 25:17
64:23 88:12
**dispute** 10:3
18:13 56:1,24
57:6,23 62:12,13
66:15 69:11 95:2
95:6 96:12,20
97:12 102:3 112:3
114:4 117:12
122:7,8,8 123:11
125:17
**disputed** 66:13
118:6
**disputes** 55:19
**disregard** 7:22
9:11 12:19,20
19:15
**disruption** 119:10
125:11
**district** 1:3 13:4
**doctrine** 96:11
**document** 7:4,6,7
7:8 10:2,4,9 11:10
18:21 26:7,9 27:9
29:1 81:23 114:24
138:18

**documents** 8:4,14
9:5 10:22 11:10
14:25 15:17,20
28:24 92:25
**doesn't** 119:23
**doing** 46:1 47:8
47:18 48:4 63:16
67:8 68:6 77:16
78:21 83:17 95:16
97:5,9 100:23
126:14 136:24
**dollar** 18:10,13
113:13,19
**dollars** 28:1 71:15
**dolores** 30:21
31:11,11 32:6
48:1,21 76:25
77:1 93:10 94:22
95:17
**double** 31:18
**doubt** 29:16,19
**drain** 1:24
**draw** 59:17
116:25
**due** 7:17,20 24:5
56:8 57:12 112:21
**duties** 131:7

**e**

**e** 1:23,23 5:1,1 6:1
6:1 8:18,20,24
11:17 12:1 19:14
20:25 26:2,5,12
30:18,20,23 31:3
31:6,9,11,12 32:8
32:20 39:6 40:7
40:10,22 68:3,4,6
76:22,25 78:2,20
92:2,3 93:11,15
93:17,17,18 94:22
95:15 119:3 123:7
125:8,23 130:15
131:18 136:16
138:1,11,16 139:1

**earlier** 10:9 30:20
134:1
**early** 32:22
**easements** 86:6
**easier** 23:4
**east** 2:9,15,21 3:4
3:11,17,22 4:4
11:2 21:4 55:12
**ecf** 2:5,10,15,21
3:6,13,18,23 4:5
12:25 15:11,22
18:22 23:4 81:2
105:10
**economical** 71:3
**ed** 125:24
**effect** 46:10 57:7
132:24
**effectiveness** 57:6
**efficiency** 75:21
**efficient** 77:8
**efforts** 36:2 128:6
**either** 8:24 49:20
59:14 68:21 75:10
115:24 116:1,2,3
123:3 133:5
135:22
**elect** 25:7 69:22
100:21 101:15,16
**elected** 70:25 74:1
122:1
**election** 25:1,6,9
58:17 61:3 62:1,5
62:9 63:1,4 69:20
69:21 70:21
100:22 117:17
118:7,8,13,15
120:6,8 122:4
**electronics** 48:11
**elements** 95:21
**elevator** 115:19
**elevators** 23:1,23
**eleventh** 8:14

**email** 96:22 99:23
100:7 130:3,7
131:18
**emphasize** 74:19
**employee** 119:4
**employees** 39:18
**enable** 59:17
116:24
**endeavor** 43:10
**ended** 12:11
**enforce** 68:21
76:13
**engage** 126:19
**engagement**
105:19
**enjoyment** 56:16
114:10
**enter** 25:21 114:5
133:9 138:6
**entered** 56:19
108:11 114:1
127:24
**entering** 105:5
**entire** 82:12
**entitled** 25:2 61:4
70:25 71:21 91:4
117:18 121:17
122:15 134:2
**entitlements**
40:24 44:9 55:15
56:10 85:25 86:5
**entry** 57:24
**equal** 120:9
**equipment** 34:2
**errors** 7:6,13
39:17
**escrow** 14:5,6,7
14:12,14,18 24:25
59:16,18,22,24
61:2 66:16 69:23
116:24 117:1,5,7
117:8,16 119:22
119:25 120:1,5

121:4 123:1
**escrowee** 59:21
**esq** 5:7,15,22,23
**essence** 96:13
97:3
**essential** 62:20
**establish** 116:21
**established** 59:4
112:14,15
**establishment**
116:15 117:8
**estate** 119:4
127:13 134:16
135:13
**estimate** 22:21
24:13 25:17 45:5
45:8,17,24 46:11
46:18 47:2 48:6
55:25 58:5 59:1
59:14 64:22 85:10
87:21 88:11 95:9
112:13,22 113:1,2
116:11,15 117:25
121:12
**estimates** 72:14
**et** 1:10 2:1 14:18
18:7 107:13
**eve** 82:4
**event** 24:21 59:12
60:16 64:12
116:23 117:13
**evid** 138:12
**evidence** 6:21 7:7
7:21 8:10 9:3,4,8
9:10 12:24 13:6
15:3,17 19:13,17
19:20 22:9,11
27:19 40:19,21
51:24 52:2 53:4
54:13,18,22,23
62:14 63:9,15,19
64:2,5,8 68:2,3
88:1 92:19 97:25

122:17 123:16,20
124:8,22 125:14
126:1 134:19
**evidentiary** 6:11
11:5 54:20 73:12
**evidently** 130:23
**exactly** 13:13
17:11 25:23 50:5
66:10 90:10
**examination** 17:2
22:17 45:2 51:22
**examine** 20:14
**examined** 11:15
**example** 47:23
86:1
**exception** 126:17
**excess** 71:15
**exchanges** 138:16
**exclude** 17:16
**excludes** 123:16
**excuse** 19:16
20:11 123:17
129:5
**excused** 54:9
**exhibit** 6:23 8:2
8:18 10:1,8,11
15:9,21 17:18
18:21 19:8,9,20
20:6 26:23,23
27:4,23 28:4,9
33:1,2,13,18
35:20 37:1,12,19
56:12 58:7 76:24
78:5,7,8,10,11
78:11 79:17 80:4
80:18,23 81:20
82:12 105:24
106:10,13 108:14
115:4 128:25
129:5,9 130:11
131:17,22
**exhibits** 6:12,15
6:21 7:4 9:10,16

9:16 11:6 12:18
15:19 16:6 19:9
19:12,17 28:21,22
30:4 52:1 54:23
78:13,13,15,16
115:15 138:13
**exist** 123:3
**existing** 103:25
133:6
**exists** 125:20
126:7
**expectation** 127:8
**expectations**
127:11,16,18
**expense** 31:17
80:7 114:25
135:12
**expenses** 88:1
113:3
**expired** 40:25
57:7
**expiring** 41:6
**explain** 13:6,11
63:20 76:16 97:24
**explains** 13:10
124:10
**explicitly** 115:7
**express** 68:16
69:14 76:7,10,10
83:8,13,20,21
103:5 124:17,17
126:18,23 127:5
127:17
**expresses** 96:2
**expressly** 69:1
83:17 115:23
126:15,25
**extend** 68:18
**extending** 3:4,11
**extension** 68:16
**extensive** 113:6
126:3

**extent** 17:19 18:7
25:15 56:21 58:14
73:21 82:22
135:19
**exxon** 127:21

**f**

**f** 1:23 20:25 139:1
**f.supp** 125:24
**face** 108:1
**facebook** 13:4
**faced** 131:4
**fact** 9:8 18:8
34:18 56:1,4,8
57:13 62:23 69:25
76:12 77:19 86:21
94:23 99:25
101:23 102:4
112:1 116:8
117:10 119:23
120:8,24 123:7
132:12,15 134:18
**facts** 62:19 67:19
82:23 118:21
132:15,19
**factual** 69:10
**failed** 56:1
**failure** 68:20
84:15 102:22
113:21 118:15
120:7,13
**fair** 56:7 57:16
62:20 67:20 83:3
83:8 87:3 99:18
104:10 108:19
110:15 113:15
125:19 126:7,21
127:10 130:21
133:7
**faith** 56:7 83:3,7
83:12,16 104:9
108:19 113:15
125:19 126:6,17
126:20 127:10

130:20 133:7
**familiar** 28:23
56:25 84:13
**far** 13:16 15:1,5
19:10 63:23 73:6
93:7 100:3 103:1
103:1 121:5
123:11,22 124:21
132:13,25 133:10
134:16 138:7
**fault** 55:22 108:5
**favor** 55:15 86:1
**façade** 23:1,22
24:23 48:13 60:20
60:25 115:18
**feature** 109:12
119:22
**february** 2:9,14
2:20 3:3,10 36:20
37:5 38:10 41:18
57:12,12 84:22
**feel** 74:20
**fell** 42:1
**fifth** 5:4
**figure** 18:11
113:19
**filed** 2:7,13,19
13:23 57:10
**filing** 87:19
105:20
**final** 18:20 87:2
115:12
**finalize** 51:6
**finally** 10:8 28:8
**financial** 108:17
**financing** 42:25
53:23,24 82:7
84:21 86:13 103:3
103:9 104:6
108:23 113:22
132:21
**find** 8:9 112:9
135:8,9

**finds** 127:3
**fine** 18:18 20:3
33:19 44:25 64:9
70:8 78:17 96:6
96:23 136:23
**finish** 46:3 67:11
72:13 95:21
100:16,18 133:15
**finishing** 99:8
101:9
**fired** 49:20
**first** 8:5 11:5,16
12:3 21:9 31:9
43:8 45:4 52:13
52:19 53:5,7
55:24 57:9 58:5
58:24 59:14 67:19
68:2 69:19 76:5
79:16 95:23
112:12 113:24,24
117:12 118:18,22
119:22 120:4
122:1,3 123:4
131:3 132:6
133:10
**five** 57:24
**fixed** 123:1
**fixtures** 31:18
**floor** 51:9,9 53:17
81:22 85:21
**flux** 42:21
**fly** 108:24
**fold** 118:21
**follow** 131:13
133:3
**following** 56:18
95:20
**follows** 123:15
**folsom** 111:6
**font** 31:10
**foot** 15:14
**forbidden** 126:20

**force** 96:13
**foregoing** 139:4
**forever** 78:24
**forfeit** 89:6
**forfeited** 87:23
88:9 89:10
**forfeiture** 90:4,22
91:13
**forgive** 110:2
**form** 12:18
122:17
**formal** 62:9 69:21
70:21 84:6
**formally** 136:12
**forth** 12:25 13:25
18:24 72:16 81:24
89:13 93:11 105:9
114:12,22 115:8,9
116:16 118:18
122:16 128:1
131:17
**forward** 8:22
55:17 56:9 62:14
82:17 84:23 96:9
109:2
**forwarded** 8:20
9:6 12:9
**forwarding** 12:19
12:20
**forwards** 40:6
**found** 7:23,24 9:5
24:11 49:21,22
81:1
**four** 61:20 89:21
118:25
**frame** 66:5,7
**frames** 67:14
**frankly** 10:5 69:9
78:3,8 82:6 109:8
136:23
**freight** 23:1,22
115:19

**friday** 7:18 8:5
9:18 29:13
**front** 55:8 108:22
**full** 100:11,14
**fund** 24:24 51:15
59:16,18 61:2
117:1,25 119:21
119:25 120:1,5,19
120:19 122:2
123:1 135:11
**fundamental**
73:12 98:12
**funded** 116:16
**funding** 51:7 54:2
**funds** 24:24 50:25
57:25 58:16 59:17
61:1,25 64:22
69:19,21 70:25
89:15 116:25
117:4,10,15 118:7
118:9 119:24
120:5 121:3
**further** 44:15
49:17 54:3 82:19
111:1 115:10
126:13 131:14
**future** 62:13
101:7 113:4 122:9

**g**

**g** 6:1 138:3
**gain** 108:17
**gallagher** 4:25
139:3,11
**gather** 60:11
**general** 8:9 22:23
83:19 110:19
126:16,22
**generally** 123:15
**getting** 43:1 47:9
47:19 49:20 70:12
103:19,19 107:21
**give** 44:22 51:12
51:15 84:14

100:16 109:7
**given** 9:18 12:10
59:21 68:24 92:16
118:15 120:6,13
120:19 124:16
126:25 130:24
132:15,17 135:10
136:1,3
**gives** 97:3 108:16
**glance** 7:6
**go** 11:25 23:2
30:23 35:11 51:4
51:11 53:20,22
55:17 59:5,9 66:2
67:17 68:5 70:25
71:8 72:5 75:16
76:7,10,16 80:4,8
82:17 84:23 90:3
93:25 94:19 95:6
96:9 98:12 104:21
104:22 106:13
109:11 125:22
**goal** 32:22
**goes** 31:15 65:14
95:9 106:2 117:21
119:7
**going** 12:23 17:1
26:5 37:14,15
38:3 42:15 45:7
49:15,23,25 51:12
54:20 60:18 67:9
67:16,18 75:18
77:11,11 85:25
93:12 95:14 96:23
100:3 135:2 137:1
**good** 6:2,4,6 10:25
11:3 12:2 20:24
22:19,20 55:8
56:7 83:3,7,12,16
95:16 102:12,12
104:9 108:19
113:15 125:19
126:6,16,20

127:10 130:20
133:7
**gotshal** 5:2
**gotten** 34:5
**gottlieb** 5:17 6:5
55:2
**govern** 115:9
**governed** 109:16
125:20 126:7
**governing** 13:2
127:18
**government** 128:7
**governmental**
128:20
**grand** 5:11
**grant** 126:18
127:6
**granted** 89:7
**granting** 133:9
138:6
**great** 31:19
**ground** 51:9,9
53:17 85:21
**groundwork**
113:21
**group** 2:9,10,15
2:15,20,21 3:4,4
3:11,11 11:2,2
21:4,5
**guess** 66:14 71:11
125:22 135:1

### h

**h** 20:25 138:11
**halfway** 33:12
**hamilton** 5:17
**hand** 20:19 99:20
120:16
**handed** 12:9
**happen** 42:24
69:6 85:12 95:5
107:19 108:6
109:6,13

**happened** 14:18
51:11 95:23 108:4
**happening** 45:21
58:3
**happens** 88:8 95:3
122:7
**happily** 58:23
**happy** 6:12 75:21
76:21 87:4
**hard** 43:1 102:2
103:17 108:19
**hate** 42:20,20
**hazardous** 81:6
106:17 129:11
**head** 79:25
**hear** 13:15 15:2
16:23 54:10,24
75:20 96:17
102:21 109:19
**heard** 17:21 54:14
58:11 63:10 82:20
85:20,22 97:18
**hearing** 2:4,7,12
2:17 3:1,8,15,20
4:1 20:6 54:21
**heart** 42:23
**heights** 42:18
**held** 14:6 60:8
83:16 85:16
116:10,12 117:5,6
121:4 122:3
**hell** 42:24,25
**help** 50:3
**helpful** 15:15
103:15
**hereof** 115:4
**hereto** 68:17,19
68:25 80:18 106:9
107:6 115:3,15
128:24 131:24
**hereunder** 131:24
**highly** 108:9
135:10

**hired** 101:22,23
**history** 39:17 94:2
**hold** 49:20 50:11
52:20,22 53:11
**holdco** 3:15,20
4:2 5:18 111:12
**holding** 62:2
**holdings** 1:10 2:1
6:3 133:20
**holes** 132:13
**hon** 1:24
**honor** 6:4,8,12,16
6:19 7:1,3,10,19
7:20 8:1,4,11,17
8:19,23 9:2,7,9,13
9:15,23 10:4,14
10:18,21,25 11:4
11:15,22 13:21
14:8,11,20 15:4,7
16:17,20,25 17:3
17:18,25 18:12,17
18:20 19:21,23,24
20:13,16,24 22:12
22:13,15 23:12
33:15,20 44:6,16
44:20,21 46:12,13
47:10 48:8 51:21
54:3,5,10,15 55:1
55:4,10,11,17,20
55:24 56:2,6,11
56:19,23,24,25
57:5,8,15,18,21
58:3,4,6,8,10,20
58:23 59:6,23
60:20 61:12,17
62:3,7,11,23,24
63:7,14,18,20,21
63:23 64:7,11
65:7,20,23 66:6
66:13,21 67:1,2,4
67:13,20 68:1,5
68:11,15 69:2,4,7
69:12,15,17,23

70:3,14,19,23
71:1,3,6,10 72:5
72:25 73:13,20,25
74:5,8,18,20,23
75:6,17,21 76:3,9
76:15,18,20,21
77:1,13,15 78:1,1
78:2,7,16,19,22
79:3,11,15,16,18
79:24 80:3,5,8,14
80:21,23 81:5,16
81:19,21,23 82:1
82:6,8,10,12,13
82:18,21,25 83:1
83:2,6,9,21,25
84:3,7,12,14,17
84:20,23 85:1,5
85:14,19 86:1,3
86:11,12,15,17,18
86:25 87:3,4,6,9
87:15 88:5,7
91:24 94:16 96:17
97:17 102:21
103:7 109:22,24
110:1,3,4,10,20
110:21,23 111:2,8
133:13,19 135:21
136:15,18 137:3,5
137:7
**honor's** 85:8
**hook** 84:15
**hope** 43:1,16
86:17 136:24
**hoped** 43:18
**hopefully** 37:4
105:3
**hour** 8:15 80:15
**hours** 36:10 81:12
106:6,20 107:8
128:22 129:15
130:9 132:1
**house** 130:3

**huh** 22:16 106:1
**hva** 48:12
**hvac** 22:25 23:21
24:23 31:16 32:12
47:23 48:2,7,9,13
48:15 60:18,19
65:2,24 66:3
77:23 95:23,24
98:13,17,18 99:8
99:24,25 101:22
101:23 115:18
125:10
**hypothetical**
121:22

**i**

**i.e.** 111:16 116:19
**idea** 77:14 81:23
82:3 84:17 85:6
101:25
**identified** 79:10
80:5
**ignore** 107:16
**illusory** 108:8
**illustrative** 15:10
17:9
**imagine** 10:22
102:3
**immediate** 113:6
**immediately** 12:9
**implementation**
109:12
**implication**
127:16
**implied** 83:19
104:9,12 108:18
113:15 125:19
126:6,12,20,23
127:2,9,16,19
130:20 132:16
133:6
**important** 68:20
76:4 82:2 127:12
127:16

**importantly** 56:2
82:10 84:17
**improper** 8:12 9:7
9:24 55:20 101:8
**improvement**
88:1
**improvements**
35:25 79:21
114:16 128:4,8,11
**inability** 103:3
**inaccuracy** 18:3
**include** 81:10
106:18 129:12
130:8
**included** 81:24
93:24
**includes** 59:7 66:1
89:21 90:22
**including** 89:22
93:18 108:16
111:23 114:12,19
115:4 125:7,21
126:8 128:1
**inconsistent** 82:22
94:10
**inconvenience**
36:17 80:20
106:12 129:4
**incorporate**
104:18
**incorrectly** 87:22
**incumbent** 107:20
**incurred** 52:10
92:19,23 113:20
**indicate** 87:15
**indicates** 79:1
132:6
**indiscernible**
34:18 72:8
**indulge** 110:2
**influence** 12:23
**information** 9:22

**initial** 107:21
**inside** 48:16 96:1
**inspection** 64:21
66:22 117:23
**inspector** 44:13
85:23
**install** 66:1 79:21
114:16
**installed** 48:10,14
48:17 65:2 128:19
**instance** 113:25
**instruction** 59:21
**instrument** 68:18
**insurance** 59:15
59:15 125:23
**integrated** 13:7
13:11 123:18
**integration**
115:21
**intended** 72:17
**intending** 12:22
**intent** 16:2
**interest** 111:5
**interfere** 79:22
114:17
**interference**
98:18,21
**interpretation**
123:12 125:25
**interrupt** 74:25
105:25
**introduced** 59:4
**introductory**
58:24 89:18 123:3
**invasive** 83:24
**invested** 127:4
**investors** 43:9,14
43:19,21,23 44:1
**invoice** 26:24,25
27:5,6,13,17,24
27:24 28:4,10
32:24 33:3,9,23
34:16,23 35:2

52:13,19 53:5,7
63:12 71:4 73:14
73:17 93:4 122:18
**invoiced** 16:19
**invoices** 8:3 10:12
15:12,25 16:1,10
19:2 26:16 28:13
28:14,17,18 29:6
29:8,15,21 30:1,4
30:5,7,9,14 34:3
52:2,4,10 54:21
66:12 79:3,4,5,10
92:25 93:1 102:4
118:22 125:2,2
138:20
**invoke** 83:2,7
**invokes** 56:6
**involved** 93:12
**involves** 124:3
**involving** 106:16
129:11
**irrelevant** 17:14
77:15
**irrevocable** 2:8,14
2:19 3:3,10 21:4
**island** 125:23
**isolation** 68:14
**issue** 6:11 8:22
9:8 11:18 13:16
14:18 38:7 51:6
55:11,19 67:15
79:16 86:7,12
89:5 90:19,20
91:13 101:1,2,4
102:25 109:17
122:22,23 124:12
134:14,17
**issued** 40:24
111:10 128:12
**issues** 11:8 18:2
39:14 40:3 112:9
113:24 114:4
126:4 134:25

**izek** 2:8,13,17,19
3:2,9 4:1 20:21,25
21:3 22:8,10
49:24 50:2 138:21
138:23

**j**

**jacqueline** 5:7
133:20
**jamie** 4:25 139:3
139:11
**january** 32:16
33:3,6 57:10
77:12
**jb** 42:1
**job** 37:15 47:17
66:1
**joint** 6:15,21
26:23 27:3,22
28:9 33:1,18
35:20 36:25 43:10
56:12 58:7 59:21
79:17 80:4 81:19
82:11 105:24
138:13
**jonathan** 36:22
37:4 39:6
**judge** 1:25 34:20
48:8
**july** 20:4,10 21:10
22:10 43:7 138:24
**june** 8:7,23 10:20
11:13 13:18 14:19
41:20 42:4 84:22
95:18
**jury** 12:22

**k**

**k** 20:25
**kate** 5:23
**keep** 44:9 68:11
77:1 82:23 85:25
88:19 90:17 95:16
101:2,15

**keeping** 89:1
**kept** 49:23
**key** 55:16 111:20
**kind** 51:14 88:20
108:8
**knew** 51:5 107:18
**know** 6:23 7:18
10:4 14:3 18:6
23:4 34:8,10,25
37:1 40:8 42:9
49:7,25 51:16
52:3 55:4 63:2
64:13 66:25 71:14
72:1 74:22 85:14
89:24 90:25 92:25
95:19 96:8 97:1
98:7 101:10,22
102:2,2,12 104:6
104:20 109:9,13
109:14 110:3
134:17 135:15,18
135:24,24 136:6
136:23,24
**knowing** 21:13,18
92:12
**knowledge** 124:5
**knows** 63:24
85:12
**kupetz** 5:9,15
10:25 11:1,4,22
12:1 13:9,14,19
13:21 14:2,8,10
14:12,16 15:4,7,9
15:19 16:1,9,11
16:25 17:4,6,8,15
17:17,21 18:20
19:4,21,24 20:8
20:10,13 44:20
45:3 46:15 47:1
47:13,14 51:19
54:5,17 60:7,14
61:22 63:23 64:2
65:11,13,15,17

67:4 71:23,25
72:3,5,9,12,19
87:9,15 88:4,7,14
88:17,22 89:7,12
89:23 90:2,6,9,12
90:14,24 91:6,9
91:11,14,17,19,24
92:14,18,22 93:2
93:4,9,16 94:16
94:24 95:4,8,14
96:1,4,6,9,17,23
97:6,9,11,14,17
97:22 98:1,16,25
99:6,10,16 100:1
100:4,9,15,23
101:12,18 102:8
102:10,14,21
103:7,12,14,18
104:2,8,19,25
105:3,5,9,12
106:1 108:6,10,25
109:18,22,24
110:8 137:9

**l**

**l** 138:3
**l.a.** 8:23
**la** 80:11
**labeled** 6:22
**labor** 30:12 66:1
**lack** 85:2
**laid** 49:21 50:1
97:20 128:15
130:23 132:15
**landlord** 3:2,9
5:10 6:9 7:7 8:2
8:18,20 10:1 11:1
11:19 12:4 13:23
16:14,14 18:16
19:9 21:5 23:21
23:25 24:12,21
25:3,15,20,24
26:9,16 28:3,22
35:13 45:8,17,23

46:9,10 47:8,15
47:21 48:23 49:10
50:6 54:21 55:7
55:15,21,24 56:1
56:6,9,13 57:11
57:14,25 58:9,14
58:19 59:17 60:12
60:16 61:5,7 63:4
63:23 64:13,17,23
67:1,5 69:5 70:5
70:23 71:14 72:13
72:14 73:22 75:8
76:24 78:4,15,16
78:24 79:20 80:6
81:8,16 82:8
83:23,25 84:20
85:2,20 86:7
87:22,23 88:12,12
88:15 89:14 90:16
91:1,4,20,22 92:1
92:4,5,9,20 97:6
97:11 99:10 100:9
100:17 101:23
102:4 103:23
105:6,14 106:15
107:1,12 108:16
110:11 111:13,24
112:4,12,19,25
113:3,5,13,17,18
113:20 114:25
116:12,16,25
117:5,8,11,14,19
117:25 118:6,17
118:23 119:1,4,5
119:5,14,14,19,23
121:13,16,24
122:24 123:6
125:7 128:3,6
129:7,9,22 130:1
130:14,17,18,19
131:5,6,8,12,13
133:3 134:2,12
135:19 136:3,13

138:15,17
**landlord's** 6:23
7:3 9:16 11:6 15:9
19:12,17,20 21:3
24:15 54:23 56:18
59:2,13,18 60:2
64:19 66:19 70:4
72:15 78:5 80:10
84:3,5 89:19 91:7
91:14,19 92:22
105:17 106:23
110:17 112:7,8
113:22 114:25
116:17,19,23
117:1,22 118:15
120:20 121:10
122:9,13,15
125:18 129:18
132:23 135:20
138:7
**landlords** 114:16
**landlord's** 3:20
4:2
**landscaping** 78:6
**language** 68:20
69:2,9 76:4 94:3
100:20
**late** 15:1 79:6,8
**latest** 32:24
**law** 13:1,2,5 69:13
76:8 83:5 93:21
97:24 123:10
125:20,25 126:4,8
128:19
**lawyer** 40:2 82:20
105:13
**lawyers** 87:10
**lay** 69:16 113:20
115:16
**laying** 132:13
**lays** 80:6 104:16
111:19

**leading** 46:12
47:12
**lease** 3:6,12,16,21
4:3 6:7 21:8 55:13
56:12,20 57:2,19
74:8 79:17 86:2,7
103:11,11 106:4
108:12,15 111:4,5
111:12,16,17,23
112:15,25 113:11
113:16 114:1,5,7
115:24 116:1,4
117:13 119:2,17
119:21 125:21
127:24 130:24
134:10
**leases** 2:5 55:5
57:6,6 126:8
**leave** 72:15
**leaves** 121:9 125:8
**left** 46:3 48:15
58:15
**legal** 14:23 31:23
31:23,24 32:1,5
48:3 75:4 86:16
93:12,13,24
139:20
**legitimate** 92:15
**lender** 50:24,24
51:3,15
**lengthy** 94:4
108:13
**lennar** 125:22
**leo** 32:19
**letter** 36:22 37:4,8
38:11,21,22,25
39:7,11,22 40:6
51:17 81:20,21
82:11 84:4,24
104:23 105:14,15
105:23 107:14
**letterhead** 84:7,25

**liable** 7:22 64:18
**liberty** 5:19
**lifetime** 41:1,24
**light** 32:11 77:6
125:9 127:24
**limbo** 49:25
**limit** 76:21 100:22
101:17
**limitation** 114:19
115:4 118:12
125:7 128:1
**limitations** 126:11
**limited** 110:23
**limiting** 98:4
124:18
**line** 42:15 109:1
138:5
**liquidated** 89:4
90:19 101:8
**lisa** 4:25 139:3,8
**list** 6:23 19:9 58:8
58:13
**listen** 13:15
**literally** 42:20
71:6
**little** 6:11 7:24
23:4 41:14 52:15
52:24 63:9 71:11
134:1
**live** 109:5
**llc** 2:9,10,15,15,20
2:21 3:4,4,11,11
5:18 21:4,5
**llc's** 3:15,20 4:2
**llp** 5:2,17
**loan** 51:7,15,16
**located** 3:17,22
4:4 12:12 111:6
**location** 111:7
**lodges** 107:5
131:23
**logically** 101:3

[longer - morning]                                                                      Page 18

**longer** 73:22
**look** 7:20 8:19
  11:11 23:3 26:20
  26:22 28:8 30:18
  31:25 32:14 33:11
  34:13 35:5,19
  37:12 39:5 58:10
  65:15 68:13,13,14
  76:21 78:5 79:16
  80:23 81:2 84:21
  88:4 100:2 101:14
  104:7
**looked** 79:3
**looking** 7:3,21
  22:23 27:17 37:25
  38:2,2 53:2 65:21
  82:7 103:16
**looks** 95:16
**los** 3:17,22 4:4
  5:13 21:8 36:3
  40:24 55:12 78:4
  111:7,9 128:9
**losing** 56:10
**loss** 57:4
**lost** 86:22
**lot** 42:25 69:10
  82:20
**louder** 45:12
**love** 48:8
**low** 22:25 23:21
  24:23 60:19
  115:17

        **m**

**m** 20:25 125:23
**mail** 8:24 26:2,5
  26:12 30:18,20,23
  31:6,9,11,12 32:8
  32:20 39:6 40:7
  40:10,22 68:3,4,6
  76:22,25 92:2,3
  93:15,17,17 94:22
  119:3 123:7 125:8
  130:15 131:18

**mail's** 31:3
**mails** 8:18,20
  11:17 12:1 19:14
  78:2,20 93:11,18
  95:15
**main** 101:15
**maintained**
  100:16
**maintenance**
  112:6
**majority** 48:14
  55:5
**making** 77:7
  90:13
**manges** 5:2
**manner** 25:16
  36:16 64:21 66:20
  70:11 79:23 80:19
  106:11 114:18
  117:23 120:2
  129:3
**march** 51:16
**marcus** 5:7
  133:13,19,20,22
  134:1,6 135:1,6
  135:14,16,21,24
  136:7,11
**mare** 125:23
**massey** 5:23
**material** 16:11,13
**materials** 8:8 81:6
  106:17 129:12
**matter** 1:8 6:8 8:9
  8:12 9:10 21:15
  69:4 73:12 83:19
  120:18 123:9
**matters** 14:23
  130:4
**mean** 16:6 17:21
  33:10 48:21 50:23
  60:10 63:5 65:5,6
  75:23 76:1,13

  88:25 89:5 92:19
  97:1,20 101:14
  102:19,24,24
  103:17 104:13,22
  108:12 109:10
  110:18 135:23
  136:8
**meaning** 66:16
  94:7 123:12,15
**means** 108:2
  115:10
**meant** 103:25
**mechanism** 129:7
  131:6,7
**meet** 40:2 56:1
  58:16 64:14 81:16
  82:20 84:9,10
**meeting** 49:12
**meetings** 78:4,10
  78:11 92:3
**mention** 39:19
  52:12
**mere** 9:8
**merely** 124:10
  132:6
**meruit** 75:11
  102:19 120:16,18
  121:2 122:22,24
  134:4
**message** 12:20,21
**messages** 12:9,12
  12:15
**met** 49:15 68:8
  94:23 95:17 119:5
**microphone** 72:7
**mid** 49:2
**middle** 33:11,23
  34:13
**million** 24:13 27:1
  28:1 58:12 59:1
  71:15 89:18
  113:13,19 134:23

**mind** 32:2 44:21
  52:24
**mineola** 139:23
**minimal** 80:19
**minimally** 83:24
**minimum** 36:16
  106:11 129:3
**minute** 52:15
**misheard** 17:22
**missed** 31:12,22
  32:9 95:12 96:2
  96:22
**missing** 82:16
**modification** 94:2
  124:13
**modified** 12:7
  13:10 88:24 97:15
  118:18
**modify** 13:3,8,9
  93:22 94:18
**moment** 110:2
**monday** 53:25
**monetary** 111:17
  111:22 121:7
**money** 13:17
  17:25,25 18:8,8
  58:19 62:24 67:24
  70:7,12,18 85:14
  88:18,19,21 101:5
  101:16 116:10,24
  123:7
**month** 26:8 41:3
  49:24 79:11
**months** 36:3,6
  38:19 39:20 41:18
  73:16 80:11,13
  81:25 82:5,17
  84:5,25 105:16
  128:8,12
**morning** 6:2,4,6,7
  10:25 11:3 20:24
  22:19,20 87:6
  133:23

motion   21:7
move   44:6 74:18
   74:20 75:22 80:3
   109:2
moved   56:9
moving   31:18
multi   108:12
   113:13,19

**n**

n   5:1 6:1 138:1,3
   139:1
name   20:22,24
   77:1
nature   124:5,18
   130:24
near   84:9
necessarily   7:9
   18:9
necessary   16:12
   25:3 35:24 58:19
   61:5 117:19 128:4
   128:7 136:8
need   8:10 17:13
   21:24 31:18 44:9
   44:12 82:12 98:10
   103:15 107:23
   110:1 113:6
   133:12,16
needed   31:21
   103:18 113:12
needs   47:17 80:21
   80:22 104:17
   116:11 121:11
negative   131:21
negatively   131:17
negotiate   130:17
   130:19
negotiated   39:15
   39:19 109:11
negotiating   41:25
   81:23 130:16
negotiation   37:25
   38:2 42:1

neither   63:25
   105:17
never   11:18 14:13
   83:20 96:19 108:4
   117:6,7,8 127:9
new   1:3,18 5:5,20
   72:2 103:25 104:4
   133:4 135:19,20
noise   36:16 80:20
   106:12 129:3
non   81:6 109:6,8
   109:11 132:7,12
nonresidential
   3:6,12
nonresponsive
   67:12
normally   89:5
north   27:1,25
note   33:12 64:7
   121:16 132:20
   136:18
noted   115:19
   116:14 118:3
   123:2,19 125:17
   126:12 127:23
notice   2:4 81:9,9
   106:15,18,23
   111:11,12,13
   129:10,13,18
   131:23
notified   39:20
notwithstanding
   128:16
november   95:18
number   8:4 12:12
   12:25 15:12 26:16
   26:23,23,25 27:4
   27:6,23,24,25
   28:4,5,9 32:20
   33:1,18 35:20
   36:25 37:1 57:13
   58:8 79:17 81:20
   114:3 125:1

numbered   27:14
   28:10
numbers   37:17
ny   5:5,20 139:23

**o**

o   1:23 6:1 20:25
   20:25 139:1
oath   29:5 41:21
object   111:14
   131:9
objected   6:24
   61:17
objection   2:7,12
   2:18 6:8 10:10
   13:24,24 15:1,24
   17:22 18:22 21:3
   21:7 33:4 46:12
   55:23 57:10 62:12
   69:7 73:2,13
   74:13 75:8,10,14
   86:19,20,21 92:12
   101:11 102:9,17
   102:19 110:17
   112:7,8 113:6,13
   121:5,21 122:14
   124:6,7 133:8,9
   136:1 138:7
objections   11:5
   55:7 57:9 58:2
   87:17 106:24
   107:6 122:10
   129:19 131:23
obligation   68:19
   81:17 83:5,23
   84:11 103:5,5
   104:3 111:17
   116:19 121:6
   131:22 132:8
   133:5
obligations   24:16
   56:21 59:3,4 84:9
   84:10 89:20 110:6
   110:22 111:15,22

116:18
obstruct   79:22
   114:18
obtain   128:6
obvious   95:1
obviously   7:20
   66:10 93:11
   134:15 135:6
occasions   124:3
occupied   55:11
   113:9
occupying   51:8
occur   51:1
occurred   52:16
   87:19 92:6 93:23
   120:8 121:23
october   49:3
   84:13
offer   40:3 77:17
   82:5,19
offered   39:11 40:1
offering   39:13
oh   108:20
okay   6:20 7:2,25
   8:16 9:14,25
   10:15,24 11:25
   15:4,8 16:5,24
   17:15 18:14 19:22
   20:3,14 21:1,21
   22:6,14 23:9,17
   23:18 26:20 27:3
   28:13 29:21 30:23
   31:4,6 32:8,14,19
   32:24 33:19,21
   35:19 38:15,23
   39:5 41:13 43:7
   44:17 45:13 53:16
   54:4,6,16,19,24
   57:20 58:1 60:15
   60:25 61:23 63:22
   64:12 72:8,11,20
   74:10,15 75:25
   77:3 79:14 87:7

[okay - passed]                                                                    Page 20

87:11 90:14 97:16
99:15 103:16
105:2,4 109:25
111:3 133:18,25
135:14,21 136:7
136:10,17,21
137:6
**old** 102:10 139:21
**olympic** 3:17,22
4:4 55:12 111:8,9
**omit** 16:2 34:21
**once** 49:18 50:24
87:19
**one's** 19:7 28:5
**ones** 17:4,18
38:24
**ongoing** 45:18
67:5 93:20 99:11
**operate** 82:3
**operating** 73:22
**operation** 56:15
70:10 114:9 123:4
**operations** 119:11
**operative** 56:12
104:17
**opinion** 126:4
**opportunity**
111:14 124:6
**opposed** 39:13
**opposite** 15:16
**option** 70:23,24
**optionality** 68:11
**oral** 54:24
**order** 3:1,8 56:7
57:24 60:19 109:2
115:17 133:9
134:7 136:12,20
138:6
**ordered** 3:1,8
**orders** 57:24
111:10
**original** 13:24
33:4 57:10 113:5

**originally** 112:15
**outlined** 70:20,22
**outlining** 39:14
**outside** 48:9
**outstanding** 55:7
67:10 111:15
**overall** 50:21
113:7 128:5
**overarching** 85:5
**overcollaterizati...**
72:24
**overcome** 124:24
**owed** 34:7 47:17
110:11 111:21
112:1,2 122:24
134:11
**owing** 112:21
134:22,24

**p**

**p** 5:1,1 6:1 129:5
**p.c.** 5:9
**p.m.** 12:11 137:11
**page** 12:25 13:5
23:2,5,5,7,10,11
24:11,19 27:12
30:6 31:9 35:19
37:17,19 39:25
42:12,14 68:14
71:4,7 73:14 81:2
94:5,6 105:20
108:12,12 138:5
**pages** 22:23 23:4
28:23 81:2 93:24
**paid** 16:19 18:16
26:18 27:9,15
28:18,19 30:15
34:5,8,10,11,24
46:20,24 47:9,19
48:2,17 52:4
63:24 64:3 71:16
71:17,20 72:10,22
72:22 73:24 75:13
78:25 79:7 92:15

99:14,18 102:4,7
112:18,22 116:12
119:21 120:18
122:16 123:8
134:3 136:5
**pamela** 4:25
139:3,14
**papers** 76:2 83:10
94:17 97:18,20
100:10 104:19
109:19,20
**paragraph** 15:11
15:21 24:10 31:22
32:15 35:19 56:14
58:10,25,25 59:5
59:5,11 60:6,15
61:6 65:16,24
68:15 69:15 71:1
76:4 79:18 80:6,8
80:9 81:6 82:13
89:18 94:6 100:6
101:14 105:20
113:10 114:24
116:7,14 117:21
119:9,23 120:10
120:10,19 121:19
123:3 124:18
128:1,3
**paragraphs** 15:13
17:10 23:13 89:21
104:17 105:9
115:16
**parcel** 106:17
114:11 129:12
**parking** 114:20
**parol** 8:10 9:7
12:24 97:25
123:20 125:25
**parole** 123:16
**part** 8:5 11:19
16:7 53:4 55:16
62:11 68:21 98:16
98:16,18 104:4,13

110:9 113:7 114:2
115:3 116:11
132:8
**partially** 24:15
59:1 89:19 116:17
120:20
**particular** 7:4,24
117:12 127:3
**particularly** 82:4
86:18 97:2 123:17
**parties** 6:10,15
12:8 13:1 14:13
14:21 18:7 25:20
56:14,19,20 59:23
60:11 63:3 64:24
66:15 68:17,19,21
75:11 76:1 82:14
88:23 94:7,12,17
96:12,18 97:15
98:8 107:6 108:11
108:20 109:4
112:17 114:3,5,8
114:23 117:4
118:1,17 123:10
124:2,22,23
125:15 126:17
127:9,18,24
130:15,22 131:2
131:24 132:16,17
133:2,6 136:25
137:4
**parts** 65:12
**party** 7:7 30:10
34:10,11 57:4
60:9 68:24 83:17
96:13 98:9 109:6
109:8,11 111:4
115:25 116:2
124:4,4 125:6
126:14 127:4,20
**passed** 68:7,7
77:5,6 125:5

patrons  39:18
pause  11:24 20:18
  44:18 79:13 87:14
  88:6 94:21 118:11
  119:12,18 120:12
  121:15 122:11,20
  123:24 124:11,20
  125:16 126:5
  131:19
pay  34:1,6,14
  46:19,22 57:13
  59:18 71:19 74:4
  101:25 112:5
  117:1,10 121:4
paying  46:23,25
  63:11
payment  25:2
  47:2,4,4 60:1 61:4
  86:3 117:18
  120:15,17 123:2
  125:1 136:9
payments  95:19
  118:23
pecuniary  57:4
penalty  89:3
people  14:4 96:25
  102:5 109:14
percent  34:17,18
  46:5 51:8,9,11
  53:17,21,25 65:10
  65:10 85:21 86:4
  86:8 113:9
perfectly  108:18
perform  22:24
  58:9 128:7
performance
  11:18 12:8 13:2,6
  13:16 68:19 92:9
  93:20 94:6,10,18
  123:9,23 124:2,4
  124:5,6,8,13,23
  125:14 126:2

performed  92:9
performing  55:18
period  106:25
  129:20 131:10
permit  103:22
  124:1
permits  32:15,21
  36:3,19 43:1
  77:11,14 78:7
  80:11,13 84:22
  85:19 124:13
  125:5 128:12,17
permitted  83:18
  126:15
permitting  113:17
person  43:16
  82:10 92:3 93:10
  95:17 101:22,23
  103:20 107:15
perspective
  134:11
pertains  121:9
  125:18
petition  134:9
phone  133:18
photographs  9:17
  9:19 17:5,8,12
pick  72:7
picture  37:16,18
pictures  34:19,20
  48:7,18 126:9
pipe  85:13
place  8:23 127:20
  131:4 132:6
plain  123:15
  124:14,24 133:5
plainly  126:17
plains  1:18
plan  36:11 37:23
  42:18 55:17 80:16
  81:13 83:24,24
  105:7 106:7,21
  107:9 113:8

114:11 128:22
  129:16 130:10
  132:1
planning  38:9
plans  36:9 37:10
  37:21,23,24 38:5
  38:11 80:15 81:11
  81:15,21,22 106:6
  106:19,23 107:13
  115:12 128:21
  129:14,18 130:8
  132:14
plaza  5:19
pleadings  106:3
please  20:20,22
  42:17 50:16
plumbing  22:25
  23:22 60:19,22,23
  60:24 66:4 115:18
point  7:11 9:2
  58:11 70:2 74:14
  75:7 78:19 79:24
  80:2 81:19 82:1
  83:3 90:13 91:10
  93:10 94:15 95:1
  95:1,2 98:7,12
  99:1 101:15 109:8
  109:21 110:4
  111:20 121:23
  135:2
pointed  31:6
points  119:4
  133:10
portfolio  55:18
portion  9:4 12:2
  48:12 55:12 58:21
  95:22 98:23
portions  114:10
position  12:5
  91:15,19 135:3
possession  5:3
  53:17 57:3

possibility  123:2
possible  36:16
  80:19 106:11
  129:3
post  15:23 75:12
  125:1,3 134:9
potential  132:18
potentially  15:16
  90:19
power  127:4
practical  69:4
pre  36:11 80:17
  128:23
preapproved
  106:8
preclude  121:2,3
precluded  96:11
prefer  48:4
preference  6:13
preferred  47:25
prejudicial  15:16
premise  56:16
  121:25
premised  71:16
premises  67:11
  92:5,10 113:4
  114:9 128:5
prepared  19:25
  54:10 57:17 72:13
  91:20 119:7
prepetition
  111:23
present  11:14
  19:25 55:21 87:6
  121:7
presented  15:10
  93:4 100:10
preserves  75:13
presumably  7:5
  8:3 10:10,11
  113:4
pretty  109:20

**preventing** 99:8
**previous** 68:15
**previously** 16:3
**principle** 126:22
**print** 30:25
**prior** 45:5,15 53:1
  67:6 79:19 82:17
  91:25 105:5
  111:10 114:14
**probably** 35:11
  38:24 40:12 41:1
  65:15 67:16 75:14
**probative** 9:22
**problem** 67:20
**problematic** 7:24
**procedural** 8:12
  10:7
**procedurally** 9:7
  9:24 13:22
**procedures** 107:2
  111:13 129:23
**proceed** 25:9 26:3
  37:22 107:1,9
  129:22 131:5,12
  132:2,8
**proceeding** 46:22
  49:16
**proceedings**
  137:10 139:5
**process** 39:15
**produce** 10:19
**produced** 9:1 12:1
  12:18 15:1,25
  16:2,3 31:1
**product** 31:18
**program** 85:3
**progress** 55:8
**prohibit** 83:17
  126:14
**prohibited** 83:12
**prohibits** 128:14
**project** 39:17,21
  41:22,23,24 43:13

43:18,24 49:9
  50:12,15,18,20,21
  55:16 56:9 61:19
  61:24 82:9,18
  84:23 86:21
  102:22 103:4
  109:2
**projects** 42:22,22
  58:9 61:20 80:8
  115:17 118:25
**promises** 39:19
**prompted** 114:5
**pronounce** 76:25
**proof** 92:13
  102:17
**proper** 55:22 57:9
  58:2 74:11
**properly** 112:1,1
**property** 3:6,13
  48:17,25 50:19
  55:9,14 57:22
  100:24 101:3
  111:5 112:6 113:7
  113:8 130:4
**proposal** 84:3
  98:13 107:12,25
  108:2,21 129:8
  130:13,25 131:3,8
  131:15 132:5,7,9
  132:13
**propose** 105:15
**proposed** 39:13
  103:23 111:11
**proposing** 101:2
**prosecuting** 85:2
**prospective**
  132:21
**protocol** 36:13
  80:18,25 84:2,9
  104:16,18 106:9
  106:14 108:14
  115:14 128:24
  129:6 131:13

**protocols** 39:19
  115:3
**prove** 92:21
**provide** 30:1
  57:25 64:13 81:8
  86:2 104:1,4
  106:15,24 107:12
  116:21 120:5
  129:10,19 133:5
  136:4
**provided** 8:4
  10:16 24:12 32:25
  34:15,17,22 41:9
  68:12 107:2 122:3
  129:23
**provides** 18:23,25
  57:1 58:8 61:23
  68:17 79:12 80:14
  81:13 84:16 114:7
  116:14 129:6
**providing** 136:2
**provision** 25:12
  25:14 68:14,16
  69:3,9 70:13,17
  73:23,25 76:8,10
  76:11,12 77:18
  83:4,25 94:1
  97:25 101:8 108:8
  108:9,15 115:22
  115:22 116:1,17
  124:17
**provisions** 82:1
  98:5,6 126:18
**pull** 36:3 77:11,13
  80:11 84:22
**pulled** 32:15
  36:19 50:24,24
  103:9 104:6
**pulling** 51:17,18
  78:7 80:13 104:5
**purchase** 56:18
**purpose** 83:13
  90:5,11 126:13

127:5 134:21
  135:10
**purposes** 75:21
**pursuant** 36:12
  68:25 80:17 106:8
  115:13 128:23
**pursue** 39:21
**put** 39:18 40:20
  41:24 42:23 48:15
  58:12 59:24 60:13
  62:14 63:19 65:3
  79:25 94:5 103:24
  110:19
**putative** 101:9

**q**

**qualify** 13:3 93:21
  94:8
**quantum** 75:11
  102:19 120:16,18
  121:2 122:22,24
  134:4
**quarropas** 1:17
**quarter** 58:25
**question** 24:7
  25:11 26:2 42:16
  44:2 45:10,14
  46:13 50:17 52:25
  53:3,3 61:16
  62:25 63:19 64:24
  71:12 83:23 86:9
  86:12 102:12,13
  107:1,3 115:14
  118:2 129:22,24
  131:12
**question's** 16:18
**questioning** 50:13
**questions** 9:3
  44:15 45:4 54:3
  87:4 109:22
**quick** 7:6
**quickly** 7:1 12:12
**quit** 49:21

quite 58:4 98:4
107:11
quote 13:10 90:11
94:5
quoted 94:3
115:20 129:8
130:5

**r**

r 1:23 5:1 6:1
125:23 138:3
139:1
raise 20:19
raised 11:18
13:17 69:12 112:8
rdd 1:4 2:1
reach 39:18 50:7
55:9
reached 87:20
137:4,4
reaching 51:13
read 10:20 42:16
42:16 43:5 44:5
58:11 69:2 82:12
83:16,20,20 90:8
98:7 100:10
126:14
reading 73:19,20
130:7
ready 48:19 65:2
84:18
real 3:6,12 12:2,6
12:21 99:22
108:25 109:4,9
111:5 119:4
127:13 130:4
134:18
realistically 108:7
really 7:19,23
10:5 14:20 15:10
15:15 17:8,22
62:8 66:2 68:3
70:6 74:23 76:4
77:19 89:4 90:6

98:17 99:13 104:9
107:23 108:5,7,23
121:21 134:12,14
134:17 135:18,23
reason 29:16,19
41:25 57:14 71:1
79:20 108:16
114:15
reasonable 59:12
60:11,12 63:3
107:16 116:22
127:8,11,15,21
130:23
reasonableness
127:15
reasonably
113:16 119:13
recall 21:10
receipt 106:22
129:17
receive 9:1 48:23
received 6:21 8:8
10:12 19:12,17,20
22:8,11 29:13
43:15 54:23
131:11
receiving 50:14
recital 128:10
recitals 114:1
recognized
126:13
recognizes 13:5
recommend 50:2
recommendation
48:1
reconfiguring
114:19
record 19:7 20:23
40:21 54:13 62:8
63:16 64:2 65:4
70:6 74:24 75:9
79:11 82:24 84:20
85:16 86:10

118:22 122:14
130:2,12 139:4
record's 77:13
recover 34:12
85:3
recross 51:20,22
redevelopment
55:16 105:7
redirect 44:19
45:2 54:4
refer 21:2,5 66:2
66:23 133:12,16
reference 30:24
94:5 127:11
referenced 15:11
15:12,21,21
115:19
referencing 30:20
referred 93:10
105:15,21 128:25
referring 78:12
93:2
refers 112:12
132:12
reflect 125:3
refund 71:21
121:17
refusing 105:18
regard 45:5,8
47:21 48:24
regarding 64:24
105:6 118:1
126:16
regards 49:14
regular 45:18
92:1
rehabilitation
50:19 105:7 113:8
rehired 50:1
reimburse 113:3
117:10
reimbursed 46:10
67:9 92:6

reimbursement
16:14 87:25 112:6
133:10 138:8
reimbursements
112:2
rejected 131:1
rejecting 132:11
rejection 3:5,12
132:6,11 135:4
related 22:25
23:21 38:4,7 80:7
130:4
relates 7:10 8:1
10:2 24:22 32:20
68:5 85:18
relating 138:18
relatively 73:10
123:7 125:1
release 119:22,24
released 24:25
58:17 61:2,25
69:20 115:24
117:16 118:8,9
120:6 122:2
relevance 117:12
relevant 11:17
17:19 58:20 78:20
78:22 94:7 116:9
reliable 7:9,14
10:13
reliance 92:8
relied 10:22
relocated 48:12
reluctant 133:22
rely 9:4 15:18
70:13 74:23 93:17
relying 9:3 47:9
99:23
remain 39:14
116:11
remainder 24:24
61:1,25 66:16
91:21 117:15

118:7
**remaining**  17:18
25:16 64:22 65:25
66:4 71:18 88:11
98:22 99:22 112:3
112:12,22,25
113:2 117:12,24
118:9 119:8,24
121:17
**remains**  100:12
**remarks**  32:3,5
**remediation**
36:11 80:16 81:13
106:7,16,21 107:8
128:22 129:11,16
130:10 132:1,22
133:1
**remember**  29:17
42:3
**removal**  106:16
129:11
**renew**  40:3
**renovation**  49:9
50:19 132:22
**renovations**  113:7
**repair**  24:16 59:2
59:19 60:2 89:19
116:17 117:1
**repairs**  35:24
80:10 128:4,8,11
128:18
**repeat**  38:6 47:22
50:16
**repeated**  78:9
85:24 124:3
**repeatedly**  50:8
51:14
**rephrase**  45:10,13
46:14 47:13
**replacements**
128:18
**reply**  3:15,20,20
4:2,2 12:25 13:5

49:22 65:22 93:25
106:25 108:7
129:20 131:10
**reported**  83:15
**reporter**  42:8
**represent**  29:14
31:3
**representation**
29:16,19 31:4
**representations**
47:9 92:8
**representative**
26:10 49:14 95:18
**representatives**
12:13 45:7,17,23
**request**  10:17,18
10:21 11:10,21
47:24 59:13 60:12
68:4 92:4 95:20
116:24 125:9
**requested**  117:8
**requests**  11:9,12
47:21 92:8
**required**  59:19
117:2 118:3,25
119:9,16 120:2,10
120:14,20 121:19
128:19 130:10
133:4
**requirement**
105:17 127:15
135:11
**requirements**
109:7
**requires**  120:25
136:1
**reservation**  2:12
2:18
**reserved**  86:23
**residual**  122:7
**resolution**  55:9
126:1

**resolve**  55:6 87:16
123:21
**respect**  11:4 15:9
15:19 17:17 45:16
46:17 47:23 49:9
50:12 60:8 87:21
95:8,9 111:21
112:5,19 113:11
114:4 115:17
124:3 130:4 131:7
134:24
**respects**  11:7
133:11
**respond**  40:8
81:14 82:23
113:17 130:18
**responded**  82:11
107:24 131:17
**responding**
107:25 109:8,11
**response**  39:8,10
39:22 40:1,10,12
40:13,15,16,22
48:24 50:9 75:5
82:14,18,19,24
84:6,8 105:18
107:21,22 108:3
109:1,1 131:4,15
131:21
**responsibilities**
56:21
**responsible**  35:13
35:15,24 80:7,10
110:5,13 111:20
112:5 128:3
132:21
**responsive**  9:20
**rest**  15:2 72:23
73:5
**restated**  111:4
112:15 113:25
119:2,17 127:23
130:24

**restatement**  114:6
114:21
**resubmit**  57:18
**result**  135:3,4
**resulting**  57:5
**retrofit**  35:10
36:20 48:1 51:5
79:16 85:18
**return**  55:25
67:24 70:25 71:18
72:23 73:4 85:10
85:14 99:21
100:11 110:17
**returned**  91:21
**review**  25:18
29:17 64:23 118:1
**reviewed**  16:5
28:25 92:24
115:12
**riddled**  39:17
**right**  6:2 10:15
13:8,13 14:4,6,15
14:22 15:14,23
16:7 17:8,19 18:3
18:5,11,18 19:4
20:17,19 22:6
31:9 32:22 38:17
54:18 59:22 60:5
60:7,21 62:2,6,10
63:25 64:6 65:9,9
65:19,21 66:8,10
66:15,17 67:3,11
67:18,23 68:1,24
69:1,24 70:15
72:18 73:3,15
74:7,12,16 75:10
75:13,19 76:13,14
76:23 77:20 81:4
81:7 87:23 88:14
88:22 89:7 90:2
91:18,23 94:23,24
94:25 95:14 96:4
96:23 97:10 98:1

98:24 99:4,14,16
99:21 100:4,9,12
100:21,24 101:20
101:24 102:16
103:4,6,13 104:2
105:8,11 110:7,25
111:3 119:24
120:15,17,17
126:18 127:1
134:5 135:5 136:9
137:6
**rights**  2:13,18
13:17 68:21 77:17
86:23 98:9 114:12
116:2 123:13
127:5 131:7
**ripe**  62:12
**risk**  39:18 56:10
109:9
**risks**  82:9
**river**  2:9,15,21
3:4,11 11:2 21:5
**road**  139:21
**robert**  1:24
**roebuck**  111:3
**roof**  98:19
**rooftop**  98:19
**room**  1:17 48:10
48:13 84:13
**route**  71:1
**rule**  7:5 12:24
17:1 86:1 123:16
123:20 126:16,22
**rules**  10:14
108:18
**ruling**  86:2 110:3
110:16 111:21
131:15 133:17
134:20 135:22
**rulings**  54:20
**run**  103:15

**s**

**s**  5:1,15 6:1 20:25
25:2,17 138:3,11
**sachs**  127:21
**sale**  55:13 128:15
**salvage**  43:2
**sand**  79:25
**satisfied**  100:8
**satisfy**  86:16
**satisfying**  104:23
**saturday**  53:25
**saw**  13:25 40:7
86:6
**saying**  52:18,25
66:23 67:8 70:8
88:14 89:9 90:25
92:11,14 96:18
99:2 100:10,11,12
100:15
**says**  16:20 31:25
33:12 34:13 37:4
39:10 49:24 50:2
53:4 59:11 60:10
60:15 61:6 64:19
65:1,4,5,6,7,10,13
66:3,20 70:10,17
77:6 79:18 81:8
83:11 84:1,25
88:5,10,11 89:17
90:7,10 96:6,22
99:23 101:5 106:5
108:4 128:3
**schedule**  3:13
80:15 81:12 106:6
106:20 107:7
128:21 129:15
131:25
**scheduled**  130:9
**schedules**  36:10
**scope**  37:9,11
81:10 83:11
106:18 107:6
129:13 131:24

**se**  120:24
**seal**  39:4
**sear's**  84:7
**sears**  1:10 2:1 6:2
11:19,19 12:5
24:5 28:19,19
30:5,7,12,15,15
30:21 31:19 33:12
34:1,4,6,10,14
35:3 36:23 37:4
37:22 38:18 45:6
45:7,16,18,23
46:6,9 47:9,20,24
48:9,12,16,17,21
48:21,22,24 49:4
49:5,10,13,13,14
49:16,18,23 50:7
50:9,10 51:4,5,7,8
51:11,14 52:13,16
52:23 53:1,6,8
55:18,21 62:13,24
63:6,11,16,24
64:3,14 65:3 67:6
67:12 79:5,25
81:25 82:3 84:4,7
84:12,24 85:3
86:7 87:18,24
88:9,18,18 92:1
93:5,10,19 95:18
95:23 98:25 99:7
102:10 103:10,24
104:3,5 105:5,6
105:14,19,22
108:1,5 109:11
111:3,11,19 112:5
113:9 119:3,7,14
119:15 130:3,16
131:17,22 132:6
132:25 133:4,20
134:6,9 135:18,19
**sears's**  119:10
**season**  128:15

**second**  7:10 8:2
21:10 23:2 37:20
56:6 57:21 59:10
66:17,18 70:10
88:10 120:2
121:19 125:17
**secondly**  112:24
113:5 119:3
122:25
**section**  24:20
73:23 79:24 80:14
84:2 88:7 104:16
106:4,14 107:24
111:18 112:14
113:11 114:7,23
115:6,20,22,23
117:11,13 118:16
118:19 119:1,9,17
120:3,4,11,25
121:9,20 122:1
123:4,5 125:5
128:13,14,16
129:1,2,7,8,9
130:5,10 131:9,16
131:22
**sections**  24:22
60:17 61:9,18
64:20 66:19 115:5
117:14,22 118:4
**secure**  24:15 59:1
89:19 90:5 116:17
120:20 134:22,23
**secured**  90:22
**securing**  89:24
**security**  78:7
**see**  11:21 23:5,5
23:10,11,15 27:13
30:25 33:4 51:3
53:12 86:15 94:14
94:15 103:17
104:4,22 108:19
127:12,21 136:4

**seeing** 104:8
**seek** 58:18
**seeking** 34:12
**seeks** 16:14 55:24
**seen** 37:3 109:18
**segregate** 101:5
**seismic** 23:22
  31:17 32:12,15,20
  35:10,23,24 36:11
  36:19 47:25 48:4
  51:5 59:7 68:9
  75:22 77:8,10,21
  77:24 78:21 79:16
  80:9,10,16 85:18
  89:22,25 95:10
  98:14 99:4,9,24
  100:2 106:4,7
  113:11 115:18
  119:8 125:11,13
  128:2,4,7,11,17
  128:18,23 133:1
**sellers** 3:2,9
**send** 51:17
**sent** 8:24 26:17
  28:19 30:7 36:22
  39:6 52:21 53:6,8
  111:11
**sentence** 64:19
  66:17,18 69:19
  70:10 88:11
  118:18 119:22
  120:3,4 121:19
  122:1,4 123:4
**separate** 90:13
  91:10 108:11
  115:25
**separately** 77:24
**september** 32:21
  36:23 41:8,11,14
  81:20 84:4 104:23
  107:14 130:2,15
  131:15

**serious** 10:6
  126:11
**serve** 16:7
**served** 8:6
**service** 60:19
  115:18
**services** 22:25
  79:8 136:2,4
**set** 12:25 13:25
  18:24 28:14 37:9
  72:16,17 81:10
  89:13 105:9 106:7
  106:19 107:13
  111:13 113:24
  114:12 115:8,9
  116:16 117:6,7
  118:18 122:16
  128:1 129:13
  130:8 131:17
  132:14,15,18
**sets** 58:25 111:24
  114:22 119:10
  123:23
**setting** 3:13 37:15
**settle** 136:12
**share** 48:8
**sharefile** 12:17
**shaw** 49:13,14,20
  49:20,22
**sheet** 42:21
**shocking** 49:4
**shomof** 2:8,8,13
  2:13,17,19,19 3:2
  3:2,9,9 4:1 11:2
  11:14 12:15 15:11
  15:22 19:25 20:15
  20:21,25,25 21:1
  21:3,3 22:8,10,19
  22:24 23:3,20
  24:7,10,20 25:5,8
  25:11,20 26:1,6
  26:14,15,21,22,24
  27:3,12,16,18,22

28:3,8,13,21,23
  29:3,8,14,21 30:4
  30:13,19 31:1,3
  31:25 32:25 33:1
  34:9,12,15,22
  35:2,7,10,12
  36:19 37:2,16,21
  38:1,5,8,13,17
  39:3,5,25 40:4,11
  40:14,19,24 41:9
  41:16,20,20 42:2
  42:4,12,15,18
  43:5,8,20,25 44:2
  44:9 45:4 51:24
  52:7,9 53:3,14,16
  53:21,24 54:1
  87:8,11 91:25
  103:8 105:21
  138:21,24
**shomof's** 11:13
  22:7 65:21 105:10
**shot** 109:7
**show** 11:17 44:13
  48:18 75:15 94:9
  102:4 125:14
**showed** 34:19
  93:18
**showing** 52:4
  118:23
**shown** 114:11
  124:15,16
**shows** 16:12,13
  17:10 88:2 92:7
  93:20
**shut** 38:19 81:25
  82:4 84:4
**shutting** 84:25
**sic** 27:5 61:1,25
**side** 13:16 82:15
  137:2
**signage** 23:1,22
  24:23 48:14 60:20
  60:25 115:18

**signed** 26:9,12
  84:19 115:25
  119:16
**significant** 9:4
  132:13
**silence** 108:1
**simply** 71:18
  79:25 81:16
**single** 30:6 43:23
**sir** 54:6
**site** 114:11
**sitting** 21:13 34:4
  37:24
**situation** 96:14
  98:9
**situations** 127:3
**six** 38:19 41:18
  81:25 82:5 84:5
  84:25 105:16
**size** 37:23,24
**skaw** 4:25 139:3
  139:14
**small** 30:25 31:10
  73:10 123:7 125:1
**sole** 79:20 114:15
  114:25
**solutions** 139:20
**son** 36:22 40:6
**soon** 136:16
**sorry** 9:17 19:16
  20:11 23:3 26:21
  31:1 32:4 33:13
  33:14 37:16 41:2
  45:13,13 66:2
  67:2 72:3,5 74:20
  74:25 78:11,12,16
  110:1 111:6 113:1
  114:3 117:6 118:8
  127:12 133:14,19
  136:3
**sort** 45:6 91:4
  133:6

sorted  134:25

sought  57:11
130:19

soul  42:23

sounds  32:2 97:17
109:18

source  18:6 123:2
125:24 136:9

sourced  10:5

sourcing  10:13

south  5:11 57:22

southern  1:3

space  48:9,12,16
51:13 83:22

spaces  114:20

speak  31:23 45:12
87:10 110:21

speaking  17:11

speaks  83:1 84:8

specific  18:10
106:4 115:17
116:6

specifically  68:12
88:23 125:5
128:15

specification
128:21

specifications
36:9 80:15 81:11
81:22 106:6,19,24
107:13 115:12
129:14,19 130:8
132:14

specifics  38:8

specified  87:25
89:16 102:6
132:18

specify  108:20

specifying  48:3

speculative  56:8
85:6,7

spell  20:22

spelled  94:13
109:5 131:6

spend  62:24 88:18

spent  70:7 133:23

spirit  39:11

spoke  48:3

spoken  32:1,5

stamp  27:9,15

stand  20:17 37:24
72:1,4 82:20
86:12 87:8

standpoint  10:7

start  9:9 22:21
37:15 38:3,9 40:2
50:25 51:7,10
53:22 54:21 58:6
77:12 80:2 86:8
107:14 125:13
130:16,18

started  44:13
68:10 77:10

starting  42:15
80:1

state  85:9 117:21
119:7 131:21
135:9

stated  82:16 91:25
92:20 94:12 113:5
113:20 114:1
122:19

statement  2:4
120:19

states  1:2,16 40:1
81:9 92:7 94:23
95:2 106:14
115:23 117:13
119:4 129:9
131:23

stating  114:25

status  48:5 50:12
50:14,18,23

steadfast  125:23

steen  5:17

step  54:6,7 102:25
106:10

steve  40:18 49:12
49:13,19,23,24
50:1,2,10

stipulation  3:1,8

stop  25:7 47:12
86:3

store  2:7,13,18
3:16,22 4:3 21:8
31:19 55:11,16
82:3 96:1 98:18
98:20,21 105:16

storek  83:10,10
83:10 127:12,12

stores  55:18

strategy  38:3,4,7

street  1:17

stretch  58:4 99:22

strictly  87:25
89:15

strong  86:17

stuck  109:12,13

subcontract  63:16

subcontractors
70:4 112:20 123:9

subject  25:18
55:13,14 64:17,23
115:6 118:1
126:17 128:12

submit  78:25

submitted  7:5,8
21:1,6 27:20 30:9
30:15 37:23 51:24
52:2,3,4 53:4 71:5
73:13,14

subparagraph
24:19

subsection  66:7

subsequent  12:15

subsequently
26:17

substance  12:21
45:20

substantial
112:17,18 117:9
126:4 127:25

substantive  14:21
48:23 50:9 87:19
105:18

successful  56:15
114:9

sufficient  122:17
124:23 125:14

suggest  130:12

suite  5:12 139:22

sulmeyer  5:9

sulmeyerkupetz
11:1

sum  112:18,21

summarize  7:1
19:8 104:21

summary  7:4 10:2
10:8 15:10 19:6
122:12 125:24
138:18

supplement  13:2
13:7,10,11 86:24
93:21 94:8

supplemental
2:12,18 10:9
13:24 18:22,24
22:10 112:11
113:12,12 138:23

supplemented
87:1

supplements
124:10

support  2:17 3:15
3:21 4:1,2 10:22
21:2,6 33:3 51:25
65:22 70:6 73:9
93:6 118:21
122:17 134:19

**supported** 85:17
127:7
**supposed** 131:2
**supreme** 83:11
**sure** 10:12 11:23
19:4 29:10,11
35:5 41:17 44:23
53:12 54:12 58:23
69:17 134:7
**surreply** 8:5
**sustained** 75:9,15
**swore** 29:5 42:10
**sworn** 20:21

**t**

**t** 68:25 138:11
139:1,1
**tab** 22:22 23:3
24:11 26:21,21,22
26:22 27:3,13,22
27:22 28:3,8
30:19 32:25 33:14
35:11,20 36:25
37:8 39:5 42:2
**table** 34:4
**tabs** 20:7
**take** 20:17 36:2
64:14 69:8 100:6
100:21,25 101:5
110:19
**taken** 9:19 17:12
110:18
**takes** 69:9
**talk** 13:9 40:19
58:5 68:2,4 71:5
78:6 93:13
**talked** 78:6 85:7
**talking** 30:7,18
43:24 49:15 52:1
52:6 82:15 91:2,2
91:12 99:13,14
103:1,14 134:22
**talks** 69:19 93:9
94:1,3 105:22

**tandem** 119:8
**tax** 55:15 56:10
112:2,6 133:10
138:8
**taxes** 57:22
**technical** 73:19
**technically** 60:22
60:24
**telephone** 92:3
**telephonically** 5:7
**television** 126:9
**tell** 15:16 42:10
49:17 100:3
**ten** 106:22 107:14
108:3 129:17
131:9
**tenable** 132:23
**tenant** 16:19
18:16 24:12,25
25:1,2,6,6,9,16,21
25:25 26:10,17,17
36:12,17,23 39:6
39:8 56:16 57:13
58:17,18 59:11,16
59:20 61:2,3,4,25
62:1,4 63:1,4,5
64:22 66:16,23
67:2 68:8,10 69:5
69:6,20,21,24
71:2 73:21 74:1
78:4,24,25 80:17
80:20 81:14 82:8
82:16 83:5,22
84:12,16 88:1
97:3 99:18 100:17
100:21 106:8,12
106:22,25 107:3,4
107:5,10 111:18
112:21 113:1,14
113:16 114:10
115:13 117:6,7,16
117:17,18,24
118:8,9,10,13,14

120:6 121:11,25
122:2,5,6 123:12
125:4,6,18 128:23
129:4,17,20,24,25
131:4,9,10,11,23
132:3,20 135:20
136:2
**tenant's** 24:25
58:17 61:3 62:1
63:1,4 69:20
76:14 79:19,21,22
92:8 100:22 114:9
117:17 120:6
131:7 132:8
**tenants** 114:11,14
114:17,18 116:22
**term** 94:9 124:17
124:17
**terminate** 108:16
**termination**
132:21
**terms** 13:3,22
49:17 59:20 69:14
83:8,13,19,21,21
87:18 89:8 93:22
94:8 97:14 98:3
99:19 102:22
103:21,22 104:5,6
104:12,12 114:4
115:6 116:13
120:21 124:9,14
124:24 126:23,23
128:13 132:22
133:5
**testified** 30:13
41:8,10,21 43:8
52:9,12 53:16
92:22 103:8
**testify** 62:23
**testifying** 47:10
**testimony** 17:9
20:2 21:14,15,19
22:4,7 54:14

63:10 64:25 65:5
84:19 85:20,22
86:13 89:13 91:24
92:7 93:9 132:24
**testimony's** 81:22
**thank** 15:4 17:3
19:21,23 22:15
26:14 30:17 44:20
44:24 45:1 51:19
75:6 109:24
135:14,21 136:11
137:7,8,9
**thereof** 79:23
114:18
**thing** 50:2 71:3
81:19 89:22
100:19
**things** 63:8 67:7
69:5 71:2 95:23
99:14 107:17
108:13
**think** 7:8 8:11 9:6
9:22 10:3,6 12:10
13:23 15:23 16:1
16:17 17:4,13,13
17:17,21,24 18:1
18:7,9,12,13 19:4
26:5 31:22 41:14
41:17 45:14 61:11
62:7,11 65:20
67:14 68:2,5,13
68:20 69:9 73:20
75:3,4 76:3,5 81:2
82:25 83:9 84:7
85:5,9 86:16,17
87:13 90:6,15
97:22,23 98:3,10
99:17 100:24
102:18 103:20
107:20 109:14,23
110:15
**thinks** 82:22

[third - use]                                                                                                    Page 29

**third** 30:10 34:10 34:11 60:9
**thirty** 59:13
**thorough** 7:20
**thousand** 63:13
**three** 16:6 30:4 52:1 58:25 111:24
**ticking** 107:15
**tie** 98:13
**tied** 7:23 55:15
**ties** 10:11,11
**time** 3:4,11 8:5 11:16 12:2,3 13:17 31:17 42:10 43:8 44:15 48:20 50:1 54:11 59:12 60:11,12 66:5,7 68:16,18 95:20 100:22 101:16 116:22 118:12 120:14,25 128:19 133:23
**timed** 77:24
**timeframes** 100:5
**timeline** 37:19,20 38:17,18,21 39:14 81:24
**timely** 25:15 58:14 64:21 66:17 66:20,23 67:9 70:11 76:17 77:14 90:17 98:3 107:5 112:11 113:12 117:23 120:2 131:23
**times** 49:15
**timing** 8:22 12:10 14:18 39:20 47:21 132:14
**title** 59:15,15
**today** 21:13 42:19 55:10 58:4 73:16 78:23 79:4 82:21

85:20,22,24 86:1 93:8 101:11 102:18 110:9 111:21 118:6 121:18 134:7 136:19
**told** 40:3 51:8 92:12
**tomorrow** 53:20 53:22,24 100:21 101:16 118:15
**top** 23:5,8,10,11 32:20 39:7 81:2
**touch** 78:3
**track** 119:8
**transaction** 124:3
**transcribed** 4:25
**transcript** 42:3 139:4
**transfers** 10:3,3 134:8 138:19
**transform** 3:15,20 4:2 5:18 6:5 12:5 12:19 49:7 54:15 55:3,6,6 57:3,17 57:25 71:13 86:2 87:18,22 110:5,18 111:1,12,19,25 112:4 134:12 135:20 137:4
**transform's** 11:10 11:12 55:17 110:22
**treated** 131:1
**tried** 40:20 49:19 87:16 104:19
**trigger** 131:21 132:8
**trouble** 75:3
**true** 68:3 84:6 86:14 106:3 139:4
**trust** 2:8,14,20 3:3 3:10 11:2 21:4

**trustee** 57:2
**truth** 42:10
**try** 50:7 51:14 55:1 56:7 84:15 85:3 98:8 107:17 136:25
**trying** 34:4 42:21 62:17 87:5 93:16
**turn** 24:10,19 26:21 27:3,12,22 28:3 32:24 35:10 39:25 42:2,12 59:11 65:14 116:22
**turning** 79:15 129:5
**twice** 27:17 31:19 99:4
**two** 6:14 17:7 20:5 21:2,6 39:20 55:19 57:8 71:22 73:11 81:9 82:1 82:17 87:1 95:22 99:13 106:15 111:25 112:9 118:21 119:10 129:10 133:10
**type** 48:24 107:12 107:25 108:2 110:10
**typical** 57:23

**u**

**u** 138:3
**u.s.** 1:25
**u.s.a.** 127:21
**u.s.c.** 3:5 56:25
**uh** 22:16 106:1
**ultimate** 79:5 95:22
**ultimately** 103:19 103:22
**unacceptable** 107:18 132:7

**unambiguous** 56:2
**underlying** 15:17 15:20 16:9,11,12 92:25
**understand** 14:3 47:3 61:21 62:21 62:24 69:18 74:14 88:25 91:8,16 103:20 104:11 135:8
**understanding** 47:20 87:24 89:14 93:14 96:10 137:3
**understood** 13:19 13:21 15:7 30:6 41:20 43:17 44:6 61:19 62:18 67:10 97:7,11 99:11 110:20,21 130:15
**undisputed** 61:8 116:6 118:3
**unenforceable** 89:3,4
**unexpired** 57:2
**unfair** 90:15
**unfettered** 127:6
**unfortunately** 55:8
**unique** 57:17
**united** 1:2,16
**units** 48:7
**unlettered** 114:24
**unnecessary** 131:14
**unreasonably** 102:7 107:10 132:3,9
**unsecured** 134:8
**uploaded** 12:16
**urge** 136:25
**use** 14:13 15:1 23:4 56:16 70:23

73:21 79:22 85:2
97:24 112:25
113:2 114:10,18
125:6,25 128:6
**uses**   110:19
**usually**   82:23

**v**

**v**   125:23 126:8
127:12,21
**valid**   44:9 85:19
86:5 102:4,5
**various**   19:1
138:16,20
**vary**   59:25 83:20
104:12 126:23
**vast**   55:5
**vegas**   2:9,14,20
3:3,10 11:2 21:4
**velkei**   49:8,11,12
49:13,17 105:13
105:21,22 108:25
**velkei's**   131:18
**venture**   133:22
**verbal**   82:21
**veritext**   139:20
**vicinity**   128:5
**view**   50:14 72:16
85:9 93:13 94:17
101:21,21 135:2
**violate**   127:9
**visual**   36:16 80:20
106:11 129:3
**voltage**   22:25
23:21 24:23 60:19
115:17
**volumes**   83:1 84:8
**voluntarily**   97:15

**w**

**wait**   15:2 52:15
**waive**   68:18 77:17
94:14 125:15
**waived**   69:1 76:14
91:5,17 93:13

97:1 109:16
115:23 123:12
**waiver**   68:16,23
68:24,25 76:11,12
93:15 94:9,13
99:3 100:7,8
109:17 115:22
116:2 119:16
124:15,16,17,18
**waiving**   115:25
**walk**   58:22 103:21
105:1
**walking**   62:15
**walt**   126:8
**want**   9:4 16:20
20:14 21:15 22:21
31:20 32:11,24
37:22 40:7,8
41:24 42:23 51:3
61:8 62:23 68:4
69:6 73:23 74:19
74:22 75:2,7,20
76:20 77:7 78:25
83:2,3,5 87:13
90:18 96:15
102:21,23 109:19
134:6
**wanted**   48:1
64:15 67:17 108:1
110:22 133:24
**wants**   96:13
104:20
**water**   44:22
**waved**   98:9
**way**   9:23 11:9
43:2 45:21 52:5
57:16 85:3 89:8
96:18,24
**we've**   10:12 29:13
42:19 52:1 59:3
76:13 78:5 79:10
85:7 98:2 102:25

**weaver**   5:22 6:4,5
6:7,16,19,22,25
7:3,12,15,18 8:1
8:17 9:13,15 10:1
10:18 14:11,20,23
16:17,24 17:3,24
18:4,6,12,15
19:23 20:16 22:12
22:15,18 23:12,14
23:17,19 33:14,17
33:20,22 41:7
44:6,8,15 46:12
47:10 51:21,23
54:3,10,15 55:1,2
57:21 58:2,23
59:6,8,23 60:4,20
60:22,24 61:11,14
61:17 62:3,7,11
62:16,18,20,22
63:7,14,18 64:7
64:10,16 65:7,16
65:18,20,23 66:6
66:9,13,21,25
67:13,18,20,23
68:1 69:17,22
70:2,13,16,19,22
71:9 72:25 73:2,4
73:7,11,16 74:5,8
74:11,13,15,17
75:1,6,17,20,25
76:3,12,18,20,24
77:4,21,25 78:15
78:18 79:9,15
81:1,5,8 86:10,15
86:25 87:3 110:1
110:13,20 111:1,8
136:15,18,22
137:3,7
**week**   7:19 8:8
10:20 39:12
136:19
**weeks**   81:9 106:15
129:10

**weil**   5:2
**went**   14:4 28:18
49:4 84:12 85:4
93:11 116:21
**whatsoever**   49:5
49:22 79:23
114:19
**whisper**   87:12
**white**   1:18
**willing**   84:18
**win**   101:10
**windfall**   88:20
101:8 102:15
**wire**   10:2,3
138:18
**wished**   131:5
**withheld**   79:19
102:7 107:10
114:15 132:4,10
**witness**   6:13 9:21
20:21,24 21:12,16
21:20,22,24 22:1
22:3,5,13 23:15
33:16 41:5 44:21
44:24 45:1 46:21
54:7,9 64:25
78:13 86:13 89:13
**wolf**   126:8,12
**wondering**   52:8
**word**   43:13,23
66:17 76:16 98:3
**words**   31:25
96:16 117:5,7
**work**   16:13,16,18
22:25 23:21,22
24:1,3,8,21 25:1,4
25:7,7,9,15 26:3
30:8,10,11,11
31:17 32:15,16
34:19 35:23 36:6
36:11,15 37:9,11
40:2 45:21,24
46:7,11,16 47:6,8

47:15,21,23 48:5
48:15 51:25 52:25
56:3,5 58:14,18
59:7,19 60:3,16
61:3,6,9,10,11,24
62:5 63:1,6,16
64:15,20 65:1,4,8
65:13,24 66:3,4
66:11,12,19 67:7
67:8,11 68:9 69:5
69:6,11,25 70:23
71:16,20 72:9,12
72:22 73:4,22,24
74:2 75:12 77:8
77:16,22,23,24
78:21 80:1,9,12
80:17,21 81:10
85:13,15,15 88:8
88:19 89:12,16,25
89:25,25 90:16,21
90:23 91:20 92:4
92:10 93:18,20,20
95:10,10,15,20,22
96:1,24 97:4,12
98:8,13,14,17,18
98:22 99:4,8,9,11
99:12,15,18,20,22
99:24,25,25 100:2
100:16,18,24
101:10,23,24,25
102:5,19 103:3
104:15 106:5,8,16
106:18 107:1,3,7
107:17 112:19
113:10,11,12,18
113:21,23 114:2
114:22,23 115:1,4
115:14,16,18,19
116:6,20 117:2,11
117:14,17,20,22
118:3,10,16,23
119:6,8,9,15
120:1,7,9,13,21

120:24 121:12,18
122:5,6,16,18,19
123:8 124:25
125:2,2,4,6,10,11
125:13 127:25
128:2,14,23
129:11,13,22,24
131:12,25 132:9
133:1 134:3
135:17 136:19,25
**work's** 77:10
85:11
**worked** 13:22
30:12 55:6 61:20
**working** 11:19
130:3
**works** 95:16
**world** 86:18
108:25 109:4
**worse** 135:2
**write** 109:4
**writes** 32:19
**writing** 60:6
68:18 82:22,23
115:10,25
**written** 25:21,24
40:10,12,13,15,16
40:22 59:13,21
68:24 82:24 89:8
116:24 119:16
123:18 124:10
130:2
**wrote** 30:14 32:6

**x**

**x** 1:6,14 138:1,11

**y**

**y** 60:25
**yeah** 7:12 17:6,23
18:6 20:13 23:15
26:8 32:2,7 54:8
65:15 81:1 91:14
93:3 97:22 102:16
109:20

**year** 32:16,21
36:20 46:24 49:3
51:12 77:11,14
95:19
**york** 1:3,18 5:5,20
72:2

**z**

**z** 20:25
**zero** 14:1,2