**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                                      :    Chapter 11
                                                            :
SEARS HOLDINGS CORPORATION, *et al.*,                       :    Case No. 18-23538 (RDD)
                                                            :
                                                            :    (Jointly Administered)
                                                            :
                     Debtors.¹                              :
------------------------------------------------------------x

# BILTMORE COMMERCIAL PROPERTIES I, LLC'S REPLY TO DEBTORS' OBJECTION TO MOTION FOR IMMEDIATE PAYMENT OF POST-PETITION, PRE-REJECTION LEASE OBLIGATIONS AS ADMINISTRATIVE EXPENSES

Biltmore Commercial Properties I, LLC ("Landlord"), by and through its undersigned counsel, files this reply (the "Reply") to the *Debtors' Objection to Biltmore Commercial Properties I, LLC's Motion for Immediate Payment of Post-Petition, Pre-Rejection Lease Obligations as Administrative Expenses* [ECF No. 5233] (the "Objection"). In response to the Objection and in further support of Landlord's motion (the "Motion"),² Landlord states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Objection or Motion, as applicable.

40302659v2

I.   **Kmart's obligation to keep the premises in "first-class" condition was ongoing and triggered prior to the Debtors' rejection of the Lease.**

Landlord's claim for maintenance and repair costs, referred to in the Motion as "Other Property Damage," are recoverable pursuant to section 15 of the Lease—not solely section 31 as the Debtors maintain. In relevant part, section 15 of the Lease provides that:

> Tenant shall make and pay for all maintenance, replacement and repair, including heating, ventilating, and air conditioning systems and equipment, to keep the demised premises in a first-class state of repair and tenantable condition, consistent with first-class community shopping centers . . . .

Motion, Ex. A § 15.[3] Because the obligations in section 15 were not merely triggered upon termination of the Lease but, rather, existed throughout the Lease term, section 15 supports Landlord's entitlement to payment of the maintenance and repair costs pursuant to section 365(d)(3) or the Bankruptcy Code.

As stated in the Motion and supported by the exhibits thereto, these Other Property Damages total $236,271.00. The Debtors have not disputed the amount of the Other Property Damages, and Landlord is entitled to immediate payment of that entire amount.

II.  **The damages Landlord incurred when Store 3886 "went dark" are not increased rent or imposed as a penalty but, rather, actual damages for which Landlord may be compensated notwithstanding the "GOB Order."[4]**

In addition to violating the Lease, the Debtors allowing Store 3886 to go dark harmed Landlord in another way: It entitled a different tenant under another lease in the shopping center to discounted rent and relieved that tenant of paying CAM charges. So regardless of the Lease's

---

[3] Section 15 contains a few exceptions to this duty by making it Landlord's responsibility, for example, to: repair, maintain, and replace the roof, outer walls, and structural portion of the buildings; repair, maintain, and replace the utility services to the building and underground storm sewers and electrical lines under the parking areas and sidewalks; and undertake all repairs and replacement necessary to maintain all driveways in a safe and serviceable condition. But none of those exceptions are applicable here.

[4] The "GOB Order," is the shorthand for the *Final Order Approving (I) Procedures for Store Closing Sales and (ii) Assumption of Liquidation Consulting Agreement* [ECF No. 876].

use provision, a consequence of Store 3886 going dark was that Landlord lost money on one of its other leases. Pursuant to section D of the Lease Addendum, Kmart must indemnify Landlord for this loss, and such indemnification does not violate the GOB Order.

III. **The Debtors' position that they have been unable to confirm the amounts they owe for CAM expenses, real estate taxes, and signage is entirely disingenuous.**

Landlord filed the Motion on July 3, 2019. Landlord provided extensive documentation of the amount owed for CAM expenses, real estate taxes, and signage. Since that time, the Debtors repeatedly requested extensions of their deadline to object to the Motion. Landlord granted these extensions not only as a courtesy, but based on the understanding that the Debtors, having additional time, would review the documentation and inform Landlord if they believed there was a discrepancy as to the amounts claimed for, *inter alia*, CAM expenses, real estate taxes, and signage. However, rather than request additional documents from Landlord evidencing the claims or engaging Landlord in any discussion regarding these amounts, the Debtors did nothing for almost three months and now aver that they have been unable to confirm the amounts owed.

The Debtors have not set forth any factual basis in the Objection for questioning the amount owed. The Debtors' averment that they have been unable to confirm the amount owed has been made in bad faith and is no defense to Landlord's Motion. The Court should allow these administrative expenses in full and bar the Debtors from introducing any evidence to oppose the amount sought—and documented—by Landlord.

IV. **The Debtors' characterization of paragraph D of the Lease Addendum as an "indemnification provision" is irrelevant and does not change the fact that paragraph D obligates the Debtors to pay Landlord's reasonable legal fees as requested in the Motion.**

Paragraph D of the Lease Addendum is broad enough and was clearly intended to cover legal fees incurred by Landlord to enforce its rights under the Lease. That paragraph provides, in relevant part, as follows:

3

> **Tenant shall and does indemnify and save Landlord harmless against all costs**, liabilities, damages, **expenses**, penalties, claims, or demands **of whatsoever nature**, including all costs of defense **and reasonable counsel fees** for personal injury, death, or property damages occurring in Tenant's portion of Tenant's Building arising from Tenant, its subtenants, agents, employees, or contractor's use of the Tenant's Building or any improvements therein . . . or act or omission or negligence of Tenant. . . ."

Motion, Ex. A, Addendum ¶ D. Pursuant to paragraph D of the Lease Addendum, the Debtors are obligated to indemnify landlord against all costs and expenses, which necessarily include legal fees.[5]

The obligation imposed under paragraph D on the tenant to pay legal fees is in no way limited by the fact that the Debtors refer to paragraph D as an indemnity provision. Black's Law Dictionary defines "indemnity" as "[a] duty to make good [on] any loss, damage, or liability incurred by another." BLACK'S LAW DICTIONARY (11th Ed. 2019). Here, the liability that Landlord incurred is the debt that it owes to its attorneys for legal services in connection with enforcement of the Lease. Accordingly, under the Lease, these legal fees must be paid by the tenant.

Although the motion practice from which most of the legal fees claimed by Landlord arise took place in a bankruptcy case, the objective of Landlord's filings has been enforcement of the Lease. For example, through its objections to assumption and assignment of the Lease, Landlord sought to enforce the Lease's use restrictions and Kmart's default on rent and other charges. Therefore, the legal fees requested in the Motion should be awarded.

---

[5] That Paragraph D provides for "reasonable counsel fees for personal injury, death, or property damage," in no way limits the scope of paragraph D and is merely illustrative. The phrase "including" is generally interpreted to mean including but not limited to.

**V.      The Debtors should be estopped from arguing that the estates are administratively insolvent.**

Again, the Motion was filed in the beginning of July, shortly after the Debtors filed the *Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* dated June 28, 2019 [ECF No. 4389] (the "Prior Plan"). In the Prior Plan, the Debtors proposed to pay Allowed Administrative Expense Claims, as defined therein, in full. *See* Prior Plan § 2.1. Indeed, the "Administrative Solvency Tracker" filed by the Debtors provides, "Under the closing estimates, the Company is projecting an ~$7mm administrative surplus; the Company has identified ~$34mm of potential mitigating items that provide additional cushion[.]"  Ex. C to *Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* dated July 9, 2019 [ECF No. 4478]. And while the Debtors alerted parties in interest of the risk that losing on certain issues being litigated against Transform Holdco LLC ("Transform") may impact the Debtors' administrative solvency, the Debtors stated that they believed that they were likely to succeed in that litigation. *See id.* § VII.A.10.

As stated above, the Debtors continually sought to adjourn the Motion while administrative expenses owed by the Debtors to other parties continued to accrue. Landlord should not be penalized when it timely asserted its rights, but the Debtors delayed resolution of Landlord's claims. Because the Debtors' undue delay in addressing Landlord's Motion (both formally and informally) seems to have increased the risk that the estates would become administrative insolvent before the Motion would be decided, the Debtors should be estopped from relying on possible administrative insolvency as grounds for denial of immediate payment of Landlord's claims.

**VI.    To the extent that any portion of claims for post-petition, pre-rejection Lease obligations asserted in the Motion are obligations of Transform pursuant to the Asset Purchase Agreement, Landlord submits that the Motion is sufficient to put Transform on notice of the claims and requests immediate payment from whichever entity or entities the Court determines or the parties agree are responsible.**

It is Landlord's understanding that Transform is responsible for a portion of the claims asserted in the Motion pursuant to the Asset Purchase Agreement. Landlord respectfully submits that it is entitled to immediate payment on its claims regardless of the source. Landlord further submits that service of the Motion on counsel for Transform was sufficient to place Transform on notice of Landlord's claims and hereby requests payment from Transform of any amounts it owes. Notwithstanding anything in the Motion and this Reply, Landlord reserves all its rights against the Debtors (and any Liquidating Trustee or Chapter 7 Trustee) and Transform, including any successors and assigns.

[Continued on the following page.]

For all the reasons stated in this Reply and the Motion, Landlord respectfully requests entry of an order (i) denying the Objection, (ii) directing the Debtors and Transform to pay Landlord immediately their respective shares of Landlord's $381,161.22 administrative expense claim, and (iii) granting any further relief that is just and proper.

Dated:  October 18, 2019
       New York, New York

TROUTMAN SANDERS LLP

By: */s/ Alissa K. Piccione*
    Brett D. Goodman
    Alissa K. Piccione
    875 Third Avenue
    New York, NY 10022
    Telephone: (212) 704-6000
    Facsimile: (212) 704-6288
    Brett.Goodman@troutman.com
    Alissa.Piccione@troutman.com

    Amy Pritchard Williams *(pro hac vice)*
    301 S. College Street, Suite 3400
    Charlotte, NC  28202
    Telephone: 704.998.4102
    amy.williams@troutman.com

*Attorneys for Landlord*

40302659v2