

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6

7   SEARS HOLDINGS CORPORATION,

8

9           Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

11

12                  United States Bankruptcy Court

13                  300 Quarropas Street, Room 248

14                  White Plains, NY 10601

15

16                  November 27, 2018

17                  1:30 PM

18

19

20

21  B E F O R E :

22  HON ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  JUSTIN

Page 2

1   HEARING RE: Notice of Agenda of Matters Scheduled for

2   Hearing on November 27,2018 at 1:30 p.m.

3

4   Motion to Approve Debtor in Possession Financing / Debtors

5   Motion for Authority to (A) Obtain Post-petition Financing,

6   (B) Use Cash Collateral, (C) Grant Certain Protections to

7   Prepetition Secured Parties, and (D) Schedule Second Interim

8   Hearing and Final Hearing (document #5)

9

10   Motion to Authorize/ Motion of Debtors For Authority to (I)

11   Continue Using Existing Cash Management System, Bank

12   Accounts, and Business Forms, (II) Implement Ordinary Course

13   Changes to Cash Management System, (III) Continue

14   Intercompany Transactions, and (IV) Provide Administrative

15   Expense Priority for Post-petition Intercompany Claims and

16   Related Relief (document #5)

17

18   Supplemental Motion to Approve Debtor in Possession

19   Financing / Debtors Supplemental Motion for Authority to (I)

20   Obtain Junior Post-petition Financing and (II) Schedule

21   Final Hearing filed by Sunny Singh on behalf of Sears

22   Holdings Corporation (document #872)

23

24

25

1    Statement: Notice of Filing of Superpriority Junior Lien

2    Secured Debtor-In-Possession Credit Agreement (related

3    document(s)7, 872) filed by Sunny Singh on

4    Behalf of Sears Holdings Corporation (document #881).

5

6    Statement: Notice of Filing of DIP Intercreditor Agreement

7    (related document(s)881, 7, 872, 885, 744) filed by Sunny

8    Singh on behalf of Sears Holdings Corporation(document#892)

9

10   Motion to Authorize /Motion of ESL Investments, Inc. for the

11   Entry of an Order Pursuant to Bankruptcy Code Section 105

12   and Federal Rules of Bankruptcy Procedure 2004, 9006 and

13   9016 Authorizing Expedited Discovery of the UCC and

14   the Subcommittee, dated November 21, 2018 (document #854)

15

16   Objection /Limited Objection of the Official Committee of

17   Unsecured Creditors of Sears Holdings Corporation, et al, to

18   ESL Investments, Inc. Motion Seeking Expedited Discovery

19   (related document(s)854)

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 4

1    A P P E A R A N C E S :

2

3    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4         Attorney for Restructuring Subcommittee of the Board

5         1285 Avenue of the Americas

6         New York, NY 10019-6064

7

8    BY:  ROBERT A. BRITTON

9

10   LAW OFFICES OF DOUGLAS T. TABACHNIK

11        Attorney for Certain Taxing Authorities

12        Woodhull House

13        63 West Main Street, Suite C

14        Freehold, New Jersey 07728

15

16   BY:  DOUGLAS TABACHNIK

17

18   CAHILL, GORDON & REINDEL LLP

19        Attorney for SHLD Lendco, LLC

20        80 Pine Street

21        New York, NY 1005

22

23   BY:  RICHARD STIEGLITZ, JR.

24

25

```
 1   AKIN GUMP STRAUSS HAUER & FELD LLP

 2        Proposed counsel for the Creditors Committee

 3        One Bryant Park

 4        Bank of America Tower

 5        New York, NY 10036

 6

 7   BY:  PHIL DUBLIN

 8        IRA DIZENGOFF

 9        PHILIP DUBLIN

10        ABID QUERSHI

11

12   SCHULTE ROTH & ZABEL LLP

13        Attorney for TPG Specialty Lending Group

14        919 Third Avenue

15        New York, NY 10022

16

17   BY:  ADAM C. HARRIS

18

19   Baker Hostetler

20        Attorney for American Greetings

21        127 Public Square, Suite 2000

22        Cleveland, OH 44114

23

24   BY:  ERIC GOODMAN

25
```

1    GENSBURG CALANDRIELLO & KANTER, PC

2         Attorneys for Community School District 300

3         200 West Adams Street, Suite 2425

4         Chicago, IL, 60606

5

6    BY:  MATTHEW GENSBURG

7

8    ARCHER

9         Attorney for Community School District 300

10        630 Third avenue

11        New York, NY 10017

12

13    BY:  ALLEN G. KADISH

14         KENNETH FLOREY

15

16    THOMPSON HINE LLP

17         Attorney for Luxottica

18         3900 Key Center

19         127 Public Square

20         Cleveland, OH 44114

21

22    BY:  JOHN C. ALLERDING

23

24

25

```
 1   ROPES & GRAY LLP

 2         Attorney for Apex

 3         920 N King St # 700

 4         Wilmington, DE 19801

 5

 6   BY:  PATRICIA I. CHEN

 7

 8   PAUL HASTINGS LLP

 9         200 Park Avenue

10         New York, NY 10166

11

12   BY:  SHLOMO MAZA

13         MICHAEL E. COMERFORD

14

15   WEIL, GOTSHAL & MANGES LLP

16         Attorneys for the Debtor

17         767 Fifth Avenue

18         New York, NY 10153

19

20   BY:  RAY SCHROCK

21         SUNNY SINGH

22         ARKADY GOLDINSTEIN

23         JARED R. FRIEDMAN

24

25
```

Page 8

```
 1  KATTEN MUCHIN ROSENMAN LLP

 2        Attorney for Gordon Brothers & Hilco

 3        575 Madison Avenue, #14

 4        New York, NY 10022

 5

 6  BY:  STEVEN J. REISMAN

 7

 8  MILBANK, TWEED, HADLEY & MCCLOY LLP

 9        Attorney for Cyrus Capital Partners, LP.

10        28 Liberty Street

11        New York, NY US 10005-1413

12

13  BY:  THOMAS KRELLER

14        ERIC R. REIMER

15

16  CLEARY GOTTLIEB STEEN & HAMILTON LLP

17        Attorney for ESL

18        One Liberty Plaza

19        New York, NY 10006

20

21  BY:  JAMES L. BROMLEY

22

23

24

25
```

```
 1   TRIAX CAPITAL ADVISORS

 2        75 Rockefeller Plaza #14

 3        New York, NY 10019

 4

 5   BY:  JOSEPH E. SARACHEK

 6

 7   HALPERIN BATTAGLIA BENZIJA, LLP

 8        Administrator of the Estate of James Clark

 9        40 Wall Street - 37th Floor

10        New York, NY 10005

11

12   BY:  LIGEE GU

13

14   SKADDEN, ARPS, LATE, MEAGHER & FLOM LLP

15        Attorneys for ABL DIP Agent - BAML

16        4 Times Square

17        New York, NY 10036

18

19   BY:  PAUL LEAKE

20        GEORGE R. HOWARD

21

22

23

24

25
```

1   FISHER BROYLES LLP

2        Attorney for Clover Technologies Group

3        445 Park Avenue

4        New York, NY 10022

5

6   BY:   CHRIS PEY

7

8   DUANE MORRIS LLP

9        Attorney for the Chubb Companies

10        30 South 17th Street

11        Philadelphia, PA 19103

12

13   BY:  CATHERINE BEIDEMAN HEITZENRATER

14

15   VEDDER PRICE

16        1633 Broadway, 31st Floor

17        New York, NY 10019

18

19   BY:  MICHAEL L. SCHIEN

20

21

22

23

24

25

Page 11

```
 1   CHOATE
 2        Attorney for Wells Fargo
 3        Two International Place
 4        Boston, MA 02110
 5
 6   BY:  KEVIN J. SIMARD
 7
 8   SEYFARTH SHAW LLP
 9        Attorney for Wilmington Trust
10        National Association as Indenture Trustee
11        And Collateral Agent
12        620 Eighth Avenue
13        New York, NY 10018
14
15   BY:  EDWARD M. FOX
16
17   BALLARD SPAHR LLP
18        1675 Broadway, 19th Floor
19        New York, NY 10019
20
21   BY:  DAVID L. POLLACK
22
23   APPEARING TELEPHONICALLY:
24   NICHOLAS ADZIMA
25   ARLENE R. ALVES
```

Page 12

1    RAPHAEL ANDREWS

2    JOHN R. ASHMEAD

3    NEGISA BALLUKU

4    TERESA M. BENNETT

5    KIMBERLY A. BLACK

6    JIM I. CHRISTIE

7    CARMEN CONTRERAS-MARTINEZ

8    JONATHAN COVIN

9    ANDREW DIAZ

10   JASON DIBATTISTA

11   WILLIAM P. FENNELL

12   ROBERT E. FITZGERALD

13   CHRISTOPHER GARTMAN

14   KIMBERLY B. GIANIS

15   CINDI M. GIGLIO

16   STEPHANIE J. GLEASON

17   RONALD E. GOLD

18   MARC HANKIN

19   ADAM HARRIS

20   TAYLOR B. HARRISON

21   MICHAEL HERZ

22   VLADIMIR JELISAVCIC

23   DANIELLE JUHLE

24   NICHOLAS KRISLOV

25   ZACHARY D. LANIER

1   ZACHARY D. LEVINE

2   DONNA LIEBERMAN

3   TERESA LII

4   MICHAEL G. LINN

5   CATHERIN LOTEMPIO

6   KATHERINE E. MASSEY

7   SHLOMO MAZA

8   MICHAEL MITTELMAN

9   THOMAS ONDER

10   LAWRENCE PARK

11   LESLIE PLASKON

12   CRAIG M. PRICE

13   JON PRUCHANSKY

14   LILLIAN A. RIZZO

15   JASON B. SANJANA

16   EDWARD L. SCHNITZER

17   CHRIS STAUBLE

18   BRAD SWEENEY

19   DOUGLAS T. TABACHNIK

20   ERICA S. WEISGERBER

21   MARC ZELINA

22   SCOTT A. ZUBER

23   DAVID R. ZYLBERBERG

24

25

Page 14

```
 1                    P R O C E E D I N G S

 2                    P R O C E E D I N G S

 3              THE COURT:  Please be seated.  Okay, good

 4      afternoon.  In RE:  Sears Holdings Corp.

 5              MR. SINGH:  Good afternoon, Your Honor.  Sunny

 6      Singh, Weil Gotshal, on behalf of the Debtors.

 7              Your Honor, thank you very much to you and your

 8      chambers for allowing the parties the additional time to

 9      finalize some of the negotiations.

10              We do have some updates here and I'm pleased to

11      report to the Court that we have a resolution with the

12      Unsecured Creditors Committee on its objection, and I'm

13      going to outline the terms of that resolution which has been

14      accepted by the key parties in interest and I will outline

15      as we go through this.

16              One key development that I would like Your Honor

17      to be aware of right up front is we had bidding for the

18      junior DIP, not surprisingly, literally outside in the

19      hallway for the last hour, so --

20              THE COURT:  Okay.

21              MR. SINGH:  And with both parties here active

22      bidding and getting real-time feedback from the Committee's

23      professionals.

24              So one thing I would like to update the Court and

25      the parties, is that we do have a new DIP lender on a junior
```

1    DIP basis.  It's going to be Cyrus and they have agreed to

2    modify certain key terms of the junior DIP financing package

3    that was proposed and filed with the Court.

4            And, Your Honor, I do apologize. I'm literally

5    scribbling together some notes here and on my iPad which I'm

6    grateful I was allowed to bring in.

7            THE COURT:  Okay.  Are they using the same

8    structure that had previously --

9            MR. SINGH:  Yes.

10           THE COURT:  -- been the one that was proposed?

11           MR. SINGH:  That's right, Your Honor.  What I'm

12   about to read are literally the only changes that we've

13   agreed, which are all favorable to the Debtors with respect

14   to the structure.  Everything else is the exact same

15   structure in terms of the sharing of liens with respect to

16   the specified collateral, where they fit into the collateral

17   stack on all of the other unencumbered -- previously

18   unencumbered property and previously encumbered property.

19           So in addition, Your Honor, we did file yesterday

20   -- and I believe Your Honor has a copy -- a copy of the

21   junior DIP credit agreement --

22           THE COURT:  Right.

23           MR. SINGH:  -- and that's at ECF Number 881, I

24   think.  Yes, 881.  And they have agreed that they will be

25   living by the terms of that particular document and have

Page 16

1    agreed to deliver signatures on that document, subject

2    obviously to conforming the deal points that I'm about to

3    read in here, changing names, and of course I think the UCC

4    just given where everything was getting filed, wants to make

5    sure and take a look that the deal's being implemented as

6    we're about to outline here today.

7              THE COURT:  Okay.

8              MR. SINGH:  So really, the only changes are the

9    ones I'm about to read that are of any substance.

10             So, Your Honor, the pricing has been reduced by

11   150 basis points from L plus 1150 to L plus 1000.  The

12   winddown account, which was originally at $200 million, has

13   been increased to $240 million to the benefit of the

14   Debtors.

15             There's language in the agreement with Great

16   American that requires their signoff to the retention of the

17   liquidator with respect to any remaining stores and the

18   reasonable consent of what was previously for Great

19   American.

20             Cyrus has agreed that that consent right will

21   instead be changed to simply consultation rights with the

22   estate.  The budget variance, Your Honor, as you may have

23   seen in the UCC's objection and under supplemental

24   objection, that was an open issue where the UCC was

25   requesting a fixed $42 million variance instead of a

Page 17

1    percentage variance, and Cyrus has agreed to the UCC's

2    construct, so that will need to be built in.

3             THE COURT:  So that would be a fixed $42 million?

4             MR. SINGH:  That's right, Your Honor.

5             THE COURT:  Okay.

6             MR. SINGH:  And then finally, there is an

7    agreement on adequate protection that Your Honor -- with

8    respect to the second liens -- and just to outline that

9    issue for the Court, the UCC in its supplemental objection

10   had raised the issue that -- I'm just going to focus for a

11   minute on the 2L adequate protection package because they've

12   raised this issue with others, but I think we're resolved

13   with the 1Ls and the DIP, on different terms.

14            So with respect to the 2Ls, the UCC wanted to

15   limit adequate protection claims to the prior obligors under

16   the prepetition debt instruments and not to extend that to

17   unencumbered collateral at those obligors but also any new

18   obligors that are debtors and providing adequate protection.

19            So the parties have agreed, and Cyrus is a

20   material holder with respect to the second lien notes, and

21   ESL holds a substantial majority of the second lien credit

22   agreement dollars that are -- the indebtedness there, so all

23   parties have agreed and willing to direct their Trustees to

24   the following, Your Honor, that the adequate protection

25   liens will be limited to the prior obligors and will not

Page 18

1    extend to new obligors or new debtors, I should say, but

2    they will get adequate protection liens on existing

3    collateral, so primarily inventory, but also previously

4    unencumbered collateral at those particular Debtor entities

5    that were previously --

6            THE COURT:  The obligor entities?

7            MR. SINGH:  That's right.  At the obligor

8    entities.  And they agreed that they will marshal so that

9    they will first look to recoveries from the prepetition

10   collateral so basically inventory and then only look to the

11   remaining collateral.

12           On the intercompany -- the UCC had also raised

13   that intercompany claims or intercompany transfers of value

14   that are going -- for example by Sears Roebuck to one of the

15   other entities -- those transfers will occur on a secured

16   basis.  They'll be junior in priority to the DIP ADL liens,

17   the junior DIP liens, and the first lien, adequate

18   protection liens but then they will sit right there on top

19   so that in the event of a meltdown, which we are hoping to

20   avoid, but that was a scenario that the Committee was

21   concerned about, you would have value in cash transferred

22   back to the lending entity so that all of the parties in

23   interest sort of maintain status quo and that value is

24   coming back.

25           You know, that was a key point for the second lien

Page 19

```
 1    parties to limit their claims to the adequate protection at

 2    their primary obligors -- their existing obligors, both

 3    primary and guarantors.

 4              THE COURT:  Right.

 5              MR. SINGH:  Your Honor, in addition, the Debtors

 6    and the UCC have agreed that we will undertake in good faith

 7    to allocate expenses including professional fees to the

 8    various boxes, to the various Debtor entities so that there

 9    is an accurate claim tracking going on, on an intercompany

10    basis and we're not just literally focused on money out the

11    door.  And so --

12              THE COURT:  So it's not just -- it's not limited

13    to professional fees, but --

14              MR. SINGH:  It's all expenses.

15              THE COURT:  -- track all the intercompany --

16              MR. SINGH:  -- activity.

17              THE COURT:  -- transfers and have an equitable

18    adjustment of them that would include professional fees?

19              MR. SINGH:  That's exactly right, Judge.

20              THE COURT:  Okay.

21              MR. SINGH:  And we have also agreed that we'll

22    make sure -- from a timing perspective, we don't need to do

23    that now.  It really becomes an issue --

24              THE COURT:  Well, you have to have the --

25              MR. SINGH:  The mechanics.
```

1           THE COURT:  The mechanics in place.

2           MR. SINGH:  That's exactly right.  So we've agreed

3    that we will put the mechanics in place so that we can do

4    that in good faith if and when we need to later in the case,

5    but we're not actually going to do the exercise today.  We

6    would only do it if -- but we're committing in good faith,

7    us and the Committee, that we will do it if it becomes

8    necessary.

9           THE COURT:  Right.

10          MR. SINGH:  You know, and wouldn't try to --

11          THE COURT:  And I'm assuming there's some

12   reporting mechanism on the mechanics, so that --

13          MR. SINGH:  Yes --

14          THE COURT:  -- everyone's comfortable that it's

15   being tracked?

16          MR. SINGH:  That's right, Judge.

17          THE COURT:  Okay.

18          MR. SINGH:  And the company does track it.  You

19   know, currently, there is an allocation of expenses, non-

20   professional fee expenses going on, so I think we have to

21   share that with all the parties to make sure they're

22   comfortable.  But that is a key part of the deal, so we

23   think we can do that.

24          The other couple of pieces that I would mention,

25   Your Honor, there was a -- the UCC had filed an objection to

Page 21

1    consideration of adequate protection to Cascade or for the

2    Cascade piece.  This is the real estate loans.  I don't know

3    if you have your chart, but this is the real estate loans

4    where Cascade held about $108 million on the 88 real estate

5    properties.

6              THE COURT:  Right.

7              MR. SINGH:  And so it's Note A and B there, so not

8    the $723 million that's primarily held by ESL.  There's no

9    adequate protection there.  What we're talking about,

10   really, is the sort of the senior piece of that instrument.

11   We've agreed to provide to pay professional fees of

12   Debevoise.  We've agreed to pay post-petition interest on a

13   current basis on the $108 million Cascade piece.  The number

14   may have changed on that particular piece.  And then we've

15   also agreed that we'll maintain insurance and maintain those

16   properties.

17             We're only seeking that relief today, Judge, on an

18   interim basis and we would come back at the final junior DIP

19   hearing to seek relief on a final basis with respect to that

20   piece, but we'll start making the payments, et cetera.  But

21   the UCC and other parties just wanted time to evaluate the

22   circumstances surrounding that loan.

23             THE COURT:  Okay.  And the payments are subject to

24   reallocation if --

25             MR. SINGH:  Yes.

1          THE COURT:  -- they're not over secured?

2          MR. SINGH:  Exactly.  Of course.  It's still got

3     the same built-in mechanics that we've got for everybody

4     else, you know, consistent with the local rules and your

5     prior orders that would occur.

6          And Your Honor, the other issue is that the -- for

7     adequate protection, the second lien notes indentured

8     Trustee.  Their counsel fees represented by the Seyfarth

9     firm would be paid up to $250,000 total, you know, for the

10    case but they would also preserve any charging liens or

11    claims to come in and ask for more, but the Debtors are

12    agreeing today that they would pay those fees as part of the

13    adequate protection package, up to 250.

14          So, Judge, that outlines where we are with the

15    updated junior DIP part of the UCC's objection.

16          THE COURT:  Can I just interrupt you for a second?

17          MR. SINGH:  Yes.

18          THE COURT:  The 240 -- the increase of the

19    winddown account to $240 million, that's just -- that

20    applies to the ABL, too?

21          MR. SINGH:  It does, Judge, but I should say that

22    they are finalizing, conferring with their clients.  This

23    literally just happened, so we need to get their signoff to

24    that piece, but it would apply to both and we're just

25    waiting for their confirmation that that would be --

1              THE COURT:  Okay.

2              MR. SINGH:  -- estate as to both loans.

3              THE COURT:  All right.  So let me just pause for a

4     minute.  Obviously, there are multiple parties involved in

5     those discussions.  To each of you, is that a fair summary

6     of the resolution of your issues?

7              MR. DUBLIN:  Good afternoon, Your Honor.  Phil

8     Dublin, Akin Gump, proposed counsel to the Committee.

9              Everything Mr. Singh said is accurate.  As he

10    mentioned, we have not had a chance to go through all of the

11    different documents that have been filed overnight and

12    throughout the day today which, based on our discussions,

13    have incorporated resolution of other issues that we raised

14    in our original and supplemental objection, so we just need

15    time after the hearing, obviously, in order to go through

16    those documents and provide any additional comments --

17             THE COURT:  To put it differently, this deal

18    doesn't change any prior deals that the Debtor had made with

19    the Committee to resolve a number of Committee objections

20    beforehand.

21             MR. DUBLIN:  That's correct, Your Honor.

22             THE COURT:  Okay. And you just want to, obviously,

23    see the documents to confirm all that.

24             MR. DUBLIN:  Correct.

25             THE COURT:  Okay.

Page 24

1          MR. KRELLER:  Good afternoon, Your Honor.  Thomas

2     Kreller of Milbank, Tweed, Hadley, and McCloy on behalf of

3     Cyrus.

4          Your Honor, I will confirm Mr. Singh has

5     accurately summarized the terms of the junior DIP financing

6     that Cyrus has agreed to enter into as well as the

7     arrangements with respect to the adequate protection for the

8     second lien debt in connection with the other --

9          THE COURT:  Let me just -- one document that

10    wasn't mentioned, and I got it quite recently, although it

11    seemed to be pretty plain vanilla -- was the DIP

12    intercreditor agreement.  Does the Cyrus junior DIP also

13    just basically take over that intercreditor agreement?

14         MR. SINGH:  Yes, Your Honor.  That's the

15    intention.  I think there may be some adjustments --

16         THE COURT:  Got to change the names, but...

17         MR. SINGH:  Well, yeah, but they also hold some of

18    the prepetition debt, so we'll just need to work through

19    them to make sure that there's clean carveouts, but that

20    concept is supposed to be in.

21         THE COURT:  Right.

22         MR. SINGH:  And one of the most important changes

23    there is also in the final DIP order.  The UCC had raised

24    the objection that this marshaling concept where -- that the

25    ABL is going to look first to their inventory, cash, et

1   cetera and the primary collateral, that was really only in

2   the intercreditor agreement.  We've now built it into the

3   order in Paragraph 13 of the revised final DIP order, and we

4   have included in there that the Debtors and their estates

5   have the ability to actually enforce that provision which

6   was always intended.

7            THE COURT:  Okay.

8            MR. SINGH:  So it's going to be consistent with

9   that very important mechanic, and so that's part of, also,

10  the resolution with the UCC.

11           THE COURT:  Okay.  Can I -- let me just clarify

12  one other thing because you mentioned that Cyrus has

13  prepetition claims.  This was one of my questions about the

14  Great American DIP.  It had language in it about a release

15  acceptable to them and I'm assuming that that release goes

16  to the DIP --

17           MR. SINGH:  Right.

18           THE COURT:  -- not to prepetition --

19           MR. SINGH:  That's right, Judge.  And Cyrus -- you

20  know, they can confirm.  There is no file of 6(c) waiver,

21  552 marshaling --

22           THE COURT:  Right.

23           MR. SINGH:  -- waiver from the Debtors' estates

24  with respect to Cyrus or, frankly, anybody outside of the 1L

25  and none of those issues or releases are intended to pick up

Page 26

1    anybody other than in their capacity as a DIP lender.

2             THE COURT:  Okay.

3             MR. SINGH:  Right, so those issues are open on the

4    table and I'm excluding in this summary, obviously, the ABL

5    lenders --

6             THE COURT:  Right.

7             MR. SINGH:  -- who have different rights.  But as

8    to the prepetition, non-ABL term loan lenders, non-senior

9    lenders, I should say, it's all rights are reserved with

10   respect to that, and we do have some cleanup changes because

11   some parties did raise some issues there to make sure that

12   that's how we were handling it.

13            THE COURT:  Okay.

14            MR. SINGH:  So, Judge, just a couple of other

15   points that I do --

16            THE COURT:  Well, you have some people standing up

17   behind you.

18            MR. SINGH:  Sorry --

19            THE COURT:  I -- so far, this is just dealing with

20   the changed --

21            MR. SINGH:  Yeah.

22            THE COURT:  -- terms that are before me.  I know

23   there are probably still some people that want to speak on

24   their objections or --

25            MR. SINGH:  Yeah.

1           THE COURT:  -- resolution of their objections.

2      But let me just give you the chance to organize that aspect

3      of the hearing before we --

4           MR. SINGH: Yeah, Your Honor, I'm just --

5           THE COURT:  -- move to the rest of it.

6           MR. SINGH:  -- going to finish laying out a couple

7      terms for the resolution with the UCC.

8           THE COURT:  Okay.

9           MR. SINGH:  And then I'm happy to turn it over,

10     and I will note that we have not resolved every other

11     objection.  You know, people will have to stand up here.

12     We've tried.  I think we've done a good job -=-

13          THE COURT:  Okay.

14          MR. SINGH:  -- but I don't think we resolved

15     everybody.  So just a couple of the other pieces on the

16     Debtor settlement with the UCC, and this also addresses the

17     senior DIP loan.  So we talked about reverse marshaling, the

18     concept that they will (indiscernible) there, and we built

19     that into the order.  We talked about adequate protection

20     for the second liens.  The winddown account, we talked

21     about, is going to go to $240 million.  Post-petition

22     intercompany claims, we've talked about that they will be

23     secured.

24          There was also -- UCC had made a request that the

25     ESL, the definition, be consistent to include affiliates of

Page 28

1    ESL which were dealt with in the cleanup changes to the

2    order, that there's no -- they wanted confirmation that

3    there's no 506(c) waivers and 552 provisions and marshaling

4    which I've outlined for Your Honor with respect to anybody

5    other than the DIP lenders or the 1L lenders, the senior

6    prepetition lenders, that that's not occurring.  I think

7    we've said it probably four or five places now between the

8    two orders.

9           The syndication of the DIP, you know, there's

10   clearly a prohibition that ESL and its affiliates are not

11   going to participate in the DIP.  That includes the Cyrus

12   DIP, Your Honor.

13          THE COURT:  These are now provisions that I got a

14   black line of.

15          MR. SINGH:  That's right.

16          THE COURT:  Okay.

17          MR. SINGH:  I'm just reciting them so that you

18   know that that's still --

19          THE COURT:  So everyone is aware.

20          MR. SINGH:  Everyone is aware, that this was filed

21   this morning, but again, I'm reciting also the UCC wants to

22   make sure that this lines up just so you have the complete

23   record.

24          THE COURT:  Okay.

25          MR. SINGH:  We've cleaned up the priority and

Page 29

1    extent of the DIP ABL liens and adequate protection

2    consistent with all the changes that I've outlined.  The

3    carveout, Your Honor, it's going to be increased to account

4    for Houlihan Lokey's success fees at $7.5 million.  I think

5    the Committee's going to probably file their retention

6    applications and we'll see the engagement letter.  Senior

7    lenders do want to see that.

8           And then total expenses, nonlegal, not retention

9    of Committee members, but their out-of-pocket expenses will

10   be capped at $200,000 in the aggregate, and then I've

11   outlined for Your Honor also the change to the budgeting.

12   We're going to $42 million fixed, and that applies both to

13   the Cyrus junior DIP and it also applies to the senior DIP

14   with the ABL lenders, so there'll be consisting budget

15   testing and variance.

16          Okay.  I think that summarizes the terms of the

17   settlement unless I've forgotten anything, and I'll let

18   other parties speak to that issues, Your Honor, and then I

19   think once we're done with some of these key issues on the

20   UCC, I can stand up and address the landlord objections, the

21   vendor objections, you know, by category and where we are.

22   I think we're very far along with a lot of them.

23          THE COURT:  Okay.

24          MR. SINGH:  And maybe we'll do that.

25          THE COURT:  Well, what I suggest is that if there

1    -- as you just stated with the Creditors Committee, if there

2    are resolutions to objections that you want to put on the

3    record, do that and then just lay the foundation for the

4    motion otherwise which would be the two declarations --

5              MR. SINGH:  Yeah.

6              THE COURT:  -- and --

7              MR. SINGH:  Certainly.

8              THE COURT:  And the like.

9              MR. SINGH:  If you give me just one moment to

10   confer with my colleagues.

11             THE COURT:  Okay.

12             MR. SINGH:  Your Honor, there's just a few, other

13   than the ones that we outlined in the reply.  I think it's

14   safe to say that all of the landlord issues -- unless

15   there's any landlord here that corrects me -- have been

16   resolved by the language in both the senior DIP order and

17   the junior DIP order that deals with, you know, liens of

18   these proceeds unless permitted by the nonapplicable

19   bankruptcy law or the lease itself and the exercise of

20   remedies.

21             We had been sharing that with a number of

22   landlords and I have not heard, so I think that category of

23   objections, unless somebody stands up to correct me, has

24   been resolved.

25             THE COURT:  Okay, so let me just ask.  Are there

Page 31

```
 1    any landlords or landlord-like parties who filed objections
 2    that believe they're not resolved by the paragraphs dealing
 3    with clarifying that the liens are on -- proceeds are not on
 4    the leases unless permitted by the documents and also have
 5    the various ways or limitations on the lender's ability to
 6    exercise rights with respect to collateral in the leased
 7    property, or any other objections by the landlords?
 8             MS. BENNETT:  Your Honor, Teresa Bennett on
 9    telephone.
10             THE COURT:  Yes.
11             MS. BENNETT:  I --
12             THE COURT:  I'm sorry, could you just -- I didn't
13    catch who you were appearing on behalf of.
14             MS. BENNETT:  Sure.  It's Aviation Mall NewCo,
15    LLC; Holyoke Mall Company, LP, JPMG Manassas Mall Owner,
16    LLC; Poughkeepsie Galleria, LLC; Salmon Run Shopping Center,
17    LLC; S&R Company of West Seneca NewCo, LLC; DGI LS, LLC; and
18    (indiscernible) Plaza, LLC.
19             THE COURT:  Okay.
20             MS. BENNETT:  We agree that there was language
21    inserted into the proposed order that we're agreeable, but
22    the proposed orders that were filed this morning seem to be
23    inconsistent.
24             So first, it includes in the definition of
25    excluded property the leases of real property and includes
```

Page 32

1     only the proceeds of such leases.  But then if you go

2     further down that paragraph, it says that the included

3     property only includes those leases to the extent that the

4     creation of the lien on such properties -- only to the

5     extent that the lease expressly prohibits lease, so I think

6     that's inconsistent in both the senior and the junior order.

7              THE COURT:  I think it's usually phrased the other

8     way around, right, that unless under applicable non-

9     bankruptcy law a lender would have the right to a lien?

10             MR. SINGH:  Yeah, Your Honor, I just double

11    checked it because we actually did focus on this particular

12    issue.  In the senior DIP order, it's Paragraph 13.  It does

13    say, except as permitted in the lien and applicable and the

14    same language appears in the version filed of the junior DIP

15    order at ECF 891, again, at Paragraph 12.  They both say,

16    except as permitted.

17             THE COURT:  Except as permitted, as opposed to the

18    --

19             MR. SINGH:  The opposite --

20             THE COURT:  All right.  I'm not sure that where

21    you have -- I mean, that's the way it should be, unless

22    permitted under applicable law or by the parties'

23    agreements.

24             MR. SINGH:  Right, which is what we have in both

25    unless --

1          THE COURT:  Okay.

2          MR. SINGH:  If she can point us to --

3          THE COURT:  All right.

4          MS. BENNETT:  if you look at Page 164 of that

5   document, 891 --

6          MR. SINGH:  Okay.  That's the junior DIP order.

7          MS. BENNETT:  Correct.  And if you go two-thirds

8   of the way down the page, there's a provided provision and

9   it states that provided then in each case, the property

10   described in Clauses (i), it goes on to say such properties

11   shall constitute an excluded property only to the extent

12   that for so long as such contract lease license or other

13   applicable law prohibits the creation of a lien on such

14   property, which seems to be inconsistent with the permitted

15   language.

16          MR. SINGH:  Yeah, Your Honor, I think she's right.

17   I think that's probably clauses --

18          THE COURT:  So you just have to flip that.

19          MR. SINGH:  Well, only as to leases, right, I

20   think as to --

21          THE COURT:  Yeah.

22          MR. SINGH:  -- everything else.  So I think we can

23   probably just say -- described in Clauses 2 through 4.

24          THE COURT:  That's fine.

25          MR. SINGH:  Just take out the --

Page 34

1                THE COURT:  Exclude the reference to leases.

2                MR. SINGH:  To leases, because it's -- yeah.  And

3    we'll do that in both, if that appears.

4                THE COURT:  Okay.

5                MR. SINGH:  Okay.

6                MS. BENNETT:  Thank you, Your Honor.

7                THE COURT:  All right.

8                MR. SINGH:  Okay.

9                THE COURT:  Anyone else from the landlord group?

10   Okay.  It did seem to me that the changes highlighted in the

11   Debtors' brief -- and I appreciate these documents are long

12   and hopefully there's nothing inconsistent -- the intention

13   is clear and I think those do resolve the landlord

14   objections.

15               MR. SINGH:  Thank you, Your Honor.  Your Honor,

16   then moving -- we had a number of vendor objections and we

17   did include language in the proposed orders that dealt with

18   reservation of rights for reclamation vendors, reservations

19   of rights with respect to setoff and recoupment claims and

20   we did have a number of vendor objections that were

21   remaining outstanding.

22               I think I can report, Judge, that we've been

23   working on reservation of rights language as to particular

24   vendors who may not fit into one of those buckets, but want

25   to primarily preserve prepetition rights that to the extent

Page 35

1    they have the ability to trace collateral or make claims,

2    that we've got those reservations.

3           So we're working on a reservation but have not

4    quite finished with counsel for Luxottica who is the eye

5    glasses vendor at certain Sears stores, and then also we've

6    got a reservation of rights agreed language with American

7    Greetings that essentially preserves their ability, their

8    prepetition claims and our defenses.

9           I think what we would do is circulate that

10   language to the relevant parties, makes sure the UCC and the

11   lenders were okay with it, and then propose it to Your

12   Honor, but it's simply a reservation.

13          THE COURT:  Okay, so this category covers both

14   parties who allege they have consignment status and also

15   reclamation parties?

16          MR. SINGH:  Yes, Your Honor, and just a reminder,

17   we deal with the consignment vendors in the GLB order just

18   because of the -- sort of way things went in this case.

19          THE COURT:  Right.

20          MR. SINGH:  And so that covers the consignment

21   vendors' rights notwithstanding what's entered with respect

22   to the DIP orders.

23          THE COURT:  Okay.

24          MR. SINGH:  So I don't know if there's anybody

25   else that has an outstanding objection that's a vendor with

Page 36

1    respect to their --

2              THE COURT:  Okay.  Are there any parties either in

3    the courtroom or on the phone representing vendor,

4    consignors, or the like who filed objections that wish to

5    speak?

6              MR. GOODMAN:  Good afternoon, Your Honor.  Eric

7    Goodman, Baker Hostetler on behalf of American Greetings.

8              THE COURT:  Right.

9              MR. GOODMAN:  I just want to note that as of

10   approximately an hour-and-a-half ago, we had reached an

11   agreement with counsel for the Debtor and counsel for Bank

12   of America regarding reservation of rights language to be

13   included in the proposed DIP order, with that language -- I

14   hope it will be accepted by the UCC, that would be included,

15   that would resolve our issue.

16             THE COURT:  Okay.  Thank you.

17             MR. PEY:  Good afternoon, Your Honor.  My name is

18   Chris Pey from Fisher Broyles representing Clover

19   Technologies Group.  We raised some objections to the

20   preservation of rights and we liked the statement in

21   Debtors' reply, Document 864, Paragraph 37; but we didn't

22   see that language expressly expressed in the draft order.

23   It is somewhat duplicative of the previous order in this

24   case, but we would appreciate if the consignment vendors'

25   rights --

1          THE COURT:  In addition to being in the GLB order?

2          MR. PEY:  Yeah, because if -- there's --

3          THE COURT:  Well, let me just ask you, why -- I

4    mean, this DIP order gives the DIP lenders certain rights.

5    How is it clear that notwithstanding those rights, the GLB

6    order -- I'm looking at the Debtors' counsel --

7          MR. SINGH:  Yes.

8          THE COURT:  Why would -- the GLB order governs on

9    consignment?

10         MR. SINGH:  Your Honor, I think we need a sentence

11   in here --

12         THE COURT:  You can just say --

13         MR. SINGH:  -- their rights --

14         THE COURT:  -- that paragraph applies here?

15   That's fine.

16         MR. SINGH:  -- in the DIP order are subject to the

17   --

18         THE COURT:  That paragraph.

19         MR. SINGH:  -- the interim --

20         THE COURT:  Yeah.

21         MR. SINGH:  I've got it in the interim GLB not

22   withstanding anything in the DIP orders, but it's --

23         THE COURT:  I think you should put that in.

24         MR. SINGH:  Yeah --

25         THE COURT:  Just to make that clear.

1              MR. PEY:  I was looking at Paragraph 13, Subclause

2      B.

3              THE COURT:  Just incorporate the paragraph from

4      the GLB order into this one, as you've done --

5              MR. SINGH:  Yeah, so I think it was that sentence.

6              THE COURT:  Yeah.  Okay.

7              MR. PEY:  Okay.  And also that the DIP ABL liens

8      and collateral don't necessarily exclude liens on the

9      proceeds of prepetition consignment sales which may be

10     covered by the agreement that's going to be circulated, for

11     example, with American Greetings which we haven't seen yet.

12             THE COURT:  I'm not sure I understand that point.

13     As I understood the American Greetings one, it was basically

14     a reservation of rights as opposed to --

15             MR. PEY:  That's what we're looking for.

16             THE COURT:  Okay, not a statement that they don't

17     attach, it's just that the parties reserve their rights as

18     to whether they do or not attach.

19             MR. PEY:  You're right, Your Honor.

20             THE COURT:  Okay.  All right.

21             MR. PEY:  Thank you.

22             MR. ALLERDING:  Good afternoon, Your Honor.  John

23     Allerding, Thompson Hine on behalf of Luxottica.  As the

24     Debtors' counsel mentioned, our objection is still

25     outstanding but is -- we believe is very close to being

Page 39

1   resolved.  In fact, before today's hearing I had a

2   conversation with Debtors' counsel in which it was

3   represented to us that the language that we sent over

4   earlier this morning is acceptable to the Debtors and the

5   Debtors' counsel as far as the framework goes, the Debtors

6   and the DIP lenders.  The Debtors and the DIP lenders need

7   to work out some issues between themselves regarding

8   reporting.

9          That framework would generally, as the Debtors'

10  counsel said, preserve Luxottica's rights, whatever they may

11  be, with respect to prepetition funds that were provided to

12  the debtors under a license agreement would require the

13  segregation of post-petition amounts provided under that

14  license agreement and would clarify that the DIP liens do

15  not attach to the post-petition segregated accounts or

16  amounts, would require -- or would clarify that the DIP

17  liens nor the adequate protection liens apply to Luxottica's

18  inventory and goods which it sells at the Sears Optical

19  locations, and would require the Debtors to comply with the

20  terms of the license agreement pending assumption or

21  rejection of that agreement.

22          Those are the terms as I understood them, and

23  again, I think there was an agreement with respect to those

24  terms.  Perhaps some of the language still needs to be

25  worked out.

1          THE COURT:  Okay.  The only one I'm not so sure

2     about is the last point.  I mean, it's an agreement, but I'm

3     not sure what that agreement provides overall, so I think

4     the parties may have to look at that to see what it

5     provides, but certainly as far as making it clear the

6     Debtors cannot grant a lien on property that they don't --

7     it's not property of the estate, that's clear.

8          MR. ALLERDING:  Thank you, Your Honor.

9          THE COURT:  Okay.

10         MR. SINGH:  Yes, Your Honor, and we'll --

11         THE COURT:  I mean, remarkably, there are a couple

12    of published opinions that -- where Debtors actually tried

13    to do that, but --

14         MR. SINGH:  We know that --

15         THE COURT:  -- it didn't work.

16         MR. SINGH:  We don't have that issue.

17         THE COURT:  Right.  In re TMT Procurement Corp.,

18    764 F.3d 512 and in re Packer, 2018 Bankruptcy LEXIS 2143.

19         MR. SINGH:  So, Judge --

20         THE COURT:  But I don't think you were trying to

21    do that.

22         MR. SINGH:  No, no.

23         THE COURT:  Okay.

24         MR. SINGH:  And I think we'll -- I don't think

25    we'll have an issue finalizing reservation of rights like

1     these parties.

2              THE COURT:  Okay.

3              MR. SINGH:  If we do, you know, come back and let

4     the Court know.  But I think that's it on the -- unless I

5     speak too soon, I think that's it on the vendors.

6              THE COURT:  Okay.

7              MR. SINGH:  Your Honor, next we just have the

8     objection of the Texas taxing authorities, the review

9     objections.  We've basically incorporated the same language

10    that Your Honor approved in prior orders with, you know,

11    modifications to make sure we're referring to the right

12    orders.  I think that resolves their objections.

13             THE COURT:  Okay.  It did seem to me to be the

14    same language, the same mechanism for dealing with their ad

15    valorem, right?

16             MR. SINGH:  Yes, that's correct, Your Honor.  And

17    then finally I think there were just a few buckets including

18    the School District objection that we did.  Spent some time

19    on it in our reply brief.  I think the latest is that we are

20    in conversations to try to resolve that objection. We are

21    not resolved, but I think we are in conversations to try to

22    continue to resolve that objection.  And, you know, what I

23    would propose is that we continue to talk.  And if there is

24    an issue, you know, we can come back to the Court for a

25    determination there.  But we don't have an objection to them

Page 42

1    preserving rights to assert a constructive trust later as

2    long as people are allowed to object to that.  I think

3    that's their primary issue.  But I don't mean to speak for

4    them.  They're here, they can certainly address the Court.

5              MR. KADISH:  Your Honor, for the School District,

6    Allen Kadish --

7              THE COURT:  Yes.  This is the one in Chicago.

8              MR. KADISH:  In Illinois, yes.  Allen Kadish --

9              THE COURT:  Well, actually it's outside of

10   Chicago.

11             MR. KADISH:  -- Archer and Greiner.  I'm here with

12   Ken Fleury, who is the principal outside counsel for the

13   School District, and Matt Gensburg, who is going to address

14   the Court if you want to hear from us.  We are in

15   conversations.  We have tried to reach some reservation of

16   rights and, you know, maintenance of status quo language.

17   We're not there yet.  So let me ask Mr. Gensburg to speak.

18             THE COURT:  Okay.

19             MR. GENSBURG:  Thank you, Your Honor.  Matt

20   Gensburg on behalf of the School District.  We have had,

21   Your Honor, this morning and late last night some

22   conversations in reservational rights language.  And what's

23   been proposed is we're preserving the School Districts

24   rights to assert constructive trust or a senior lien if any.

25   And we appreciate that.  Where I was seeking clarity on the

Page 43

1    reservational rights language is that nothing in the

2    proposed DIP order would subordinate the interest or liens,

3    if it should be determined that they exist, or primers.  And

4    that's the only clarity that I was looking for in --

5          THE COURT:  Well, the definition of prior liens

6    says that they're not priming.  So I don't think you need

7    that.

8          MR. GENSBURG:  Well, so that's clear, Your Honor,

9    among the parties and the Debtors and the Court --

10          THE COURT:  Right.

11          MR. GENSBURG:  -- that with this reservation of

12   rights, the ability, if it should exist -- and that will be

13   determined.  We have a pending motion to modify the stay

14   with Your Honor set for December 20th.  Because this action

15   was actually brought in Illinois pre-petition.  But it's

16   understood by all the parties that if we have an ability to

17   and an interest in a constructive trust or if the real

18   estate taxes that are involved are priming taxes, which they

19   are in Illinois, that nothing in the court orders today or

20   whenever they're entered will subordinate or prime us, then

21   we're fine.

22          THE COURT:  All right.

23          MR. GENSBURG:  But when I read it, I just saw

24   ambiguity there and I wanted clarity.

25          MR. SINGH:  Your Honor, if I may.  We're happy to

1   stipulate, Your Honor.  They either are a permitted prior

2   lien or they're not.  Okay?

3            THE COURT:  Right.  If it's a prior lien, then

4   it's senior by definition.

5            MR. SINGH:  Right.

6            THE COURT:  So I don't think you need the other

7   language.

8            MR. SINGH:  Right.

9            THE COURT:  That just leads people to ask what

10  that other language adds.  And I think if it is a priming

11  lien, your lien is a priming lien, then it would be a prior

12  lien under the definition in the DIP agreement.  And if you

13  are able to establish a constructive trust, then by

14  definition it wouldn't property of the estate, and they

15  can't grant a lien on it under the cases I just cited. So I

16  think you're covered.

17           MR. GENSBURG:  Thank you, Your Honor.  And that's

18  where we are.  So I think with this record maybe it should

19  be pretty easy --

20           MR. SINGH:  I'm not even sure we need -- well, we

21  can have the language, but I think we're good.

22           THE COURT:  Well, you just want to say that the

23  grant of this lien doesn't -- that the School District's

24  right to allege a prior lien or a constructive trust is

25  fully preserved.

1          MR. SINGH:  Right, and the Debtor's rights to

2    object are preserved.

3          THE COURT:  To object are fully preserved.

4          MR. GENSBURG:  So we'll work on that language

5    together.

6          THE COURT:  Well, all parties rights to object are

7    fully preserved.

8          MR. SINGH:  Yes, right.

9          THE COURT:  Right.

10          MR. SINGH:  All right.  We can work on it.  I

11    think we just said we can work on it.  Thank you.

12          MR. TABACHNIK:  Your Honor, Douglas Tabachnik

13    here.

14          THE COURT: Yes.  You're here for the Texas ad

15    valorem group.

16          MR. TABACHNIK:  Yes, Your honor. One half of that

17    group.  Your Honor, I just wanted to point out one thing

18    that might help in all of this.  Because as I was going

19    through this, you can't help but notice in the tax order

20    that was entered at docket #116, there's a provision at #5

21    that says that the extent of any inconsistencies between the

22    DIP order and this order provided by the payment of taxes,

23    the DIP order is going to control.  And the DIP order is

24    fine as long as the taxes are provided for it in the budget.

25    But otherwise, there may be some inconsistencies.

1              THE COURT:  Well, it depends on what taxes you're

2     talking about. But I'm fine with the language as it is.

3              MR. TABACHNIK:  All right.  Thank you, Your Honor.

4              THE COURT:  And this language has -- this DIP

5     order has the language dealing with the Texas ad valorem

6     rights with the account and all --

7              MR. SINGH:  Right.

8              MR. TABACHNIK:  Well, they grafted from the going

9     out of business and --

10             THE COURT:  Right.

11             MAN 1:  -- the de minimis sales.

12             THE COURT:  Right.

13             MR. TABACHNIK:  And those cover store closings to

14    the extent that there are stores not closing.  And, you

15    know, prospective taxes that have to be paid, then that

16    would come under the tax order and the budget and the

17    preexisting liens.

18             THE COURT:  Okay.

19             MR. SINGH:  Okay, Judge, I think that's it on the

20    objections unless somebody stands up.  Because I think that

21    was a vendor's taxing -- sorry, never mind.

22             (Laughter in the Courtroom)

23             MR. TENZER:  Good afternoon, Your Honor.  Andrew

24    Tenzer of Paul Hastings on behalf of Great American.  I

25    actually don't have an objection, but I did want the

Page 47

1    opportunity to speak to the Court.  I will not speak to the

2    Court about the process that the Debtors engaged in today,

3    in which after negotiating with us around the clock for two

4    weeks, they went with another lender.  And I have too much

5    respect for the Court to burden the Court with what in all

6    likelihood be a fruitless objection based on the selection

7    that they made.  I just did want to make two things very

8    clear for the record.

9         One is for whatever reason the Debtors have chosen

10   to go with the Cyrus loan.  It was not because Cyrus offered

11   better terms.  Great American remained ready, willing, and

12   able to loan on the terms that we negotiated and the

13   documents that were presented to Your Honor and that were

14   read in the record today.  And I just want to make that

15   clear.  The Debtors made a different selection; Great

16   American did not walk from the deal.  And the other issue --

17        THE COURT:  All right.  The record's clear that

18   you didn't walk from the deal.

19        MR. TENZER: Right.  The other issue, Your Honor,

20   is obviously Your Honor has a large pile of papers, all with

21   Great American's name on them.  We have spent a lot of time

22   and effort and money negotiating those.  A lot of people,

23   both at my firm, a financial advisor, and my client have put

24   in a lot of work that really enabled the Debtors to get to

25   this point.  We hope we can have discussions with the

Page 48

1    Debtors and the other parties in the case about that issue.

2    But to the extent that issue doesn't get resolved, I just

3    wanted to reserve all of Great American's rights and those

4    who worked for it.  Thank you.

5              MR. STIEGLITZ:  Your Honor, for the record,

6    Richard Stieglitz from Cahill Gordon and Reindel.  I

7    represent an entity called SHLD Lendco, LLC, which holds

8    about $30 million of the Debtor's IP ground lease loan,

9    which is the group of loans that the Debtor calls pre-

10   petition, unencumbered collateral, which they purport not to

11   prime in connection with the DIP order.  We filed an

12   objection and we continue to object because we believe the

13   carve-out is priming our liens.

14             And of course they could do that with our content,

15   and we're not willing to consent to it.  Or they could

16   provide adequate protection.  I actually don't believe they

17   can provide adequate protection because of the way the loan

18   is structured.  We would suggest that the carve-out needs to

19   be junior to those liens.  It would still be senior to the

20   DIP liens, which is frankly the appropriate place for a

21   carve-out to go.  And we continue to have our objection

22   regarding that issue.

23             Your Honor, if it helps, I can show you

24   specifically in the DIP order where it comes up.

25             THE COURT:  Well, the carve-out -- I'm familiar

1    with your objection.

2              MR. STIEGLITZ:  Okay.  Thank you, Your Honor.

3              THE COURT:  Okay.  Why don't we deal with that

4    objection first?

5              MR. SINGH:  Yeah, I was just going to say.  We've

6    been trying to resolve this, but I'm just not sure we can or

7    we agree.  I mean, they are going to benefit from the carve-

8    out.

9              THE COURT:  Well, you know the way 506(c) or 552--

10             MR. SINGH:  Exactly.  So --

11             THE COURT:  So that's -- I mean, that's really to

12   me the answer.

13             MR. SINGH:  Where this is going to get addressed.

14             THE COURT:  I think that's where it will get

15   addressed.  It probably, you know -- I don't know what the

16   allusion to where we are -- I mean, one of my questions was

17   is this really a lien where there's actual value or it even

18   matters.  I don't know.

19             MR. SINGH:  Your Honor, again --

20             THE COURT:  to put it differently, the senior

21   lenders' carve-out is only for the benefit of those who

22   would get the carve-out.  It's not as if the value that they

23   have carved out would go to your clients.

24             MR. STIEGLITZ:  Agreed a hundred percent.  But

25   that doesn't get around what 364 says.

1              THE COURT:  No, I understand that.  I'm just

2    trying to figure out economically whether this really

3    affects the people who are the beneficiaries of the carve-

4    out.

5              MR. STIEGLITZ:  I don't think it does, Your Honor.

6    I mean, they're carving out from the ABL liens.

7              THE COURT:  Right, I understand.

8              MR. STIEGLITZ:  Those are the best liens.  I --

9              THE COURT:  It's kind of a rhetorical question.

10             MR. STIEGLITZ:  Okay, yeah.

11             (Laughter in the Courtroom)

12             THE COURT:  Okay.

13             MR. STIEGLITZ:  I mean, Your Honor, we're not

14   trying to improperly impose, you know, an allocation to --

15             THE COURT:  Right.

16             MR. STIEGLITZ:  -- their collateral and,  you

17   know, put all the fees in front of their collateral.  I

18   mean, I think if Your Honor would say look, we'll deal with

19   this in the context of a 506(c) issue --

20             THE COURT:  Right.  Which may be -- it struck me

21   that this might be an out-of-the-money secured creditor.

22             MR. STIEGLITZ:  Which I think --

23             THE COURT:  And if that's the case, it doesn't

24   really matter.  And if they're in the money, there's

25   probably a 506(c) that would cover the same thing as the

1    carve-out.

2              MR. STIEGLITZ:  Right.  I --

3              THE COURT:  So I think -- I don't know if you've

4    suggested language to fix this, but the fix should make it

5    clear that the carve-out is only for the benefit of the

6    carve-out parties at the same time to the extent of any

7    collateral that -- what's the abbreviation for your client?

8              MR. STIEGLITZ:  SHLD Lendco, LLC.

9              THE COURT:  SHLD Lendco is not -- the carve-out

10   isn't of their collateral.  It doesn't come from its

11   collateral.

12             MR. SINGH:  Right.  Right.  And our rights to deal

13   with that issue are --

14             THE COURT:  Right.

15             MR. SINGH:  So I think we can probably work out a

16   reservation.

17             MR. STIEGLITZ:  Your Honor, I just don't think

18   it's a reservation of rights.

19             THE COURT:  No, no.  I'm just saying you're just

20   reserving rights under 506(c) and 552.

21             MR. SINGH:  Yeah.  And --

22             THE COURT:  That's all. I think that's what Mr.

23   Singh was going to say as far as the reservation is

24   concerned.

25             MR. STIEGLITZ:  They have -- a hundred percent,

Page 52

1      they have.  But what I'm worried though is if this order

2      gets entered and my client's rights gets reserved, there's

3      still a carve-out in front of them.  So if I have to come

4      back to you in six months, there's going to be a carve-out

5      there.

6              THE COURT:  It's a carve-out from the senior

7      lender's collateral.

8              MR. STIEGLITZ:  Not with the way Paragraph 15

9      reads right now.  The carve-out is senior to my client's

10     liens and their priority.

11             THE COURT:  But that can be fixed.

12             MR. STIEGLITZ:  That's why I want to

13     (indiscernible).

14             THE COURT:  But it's not for the benefit of your

15     client, either.  If you move to combine those two things,

16     then I don't think there's a problem.  Plus the reservation

17     of rights under 506(c) and 552.

18             MR. SINGH:  Yeah.  I think I understand, Your

19     Honor, that we're not coming in senior to their particular

20     collateral in the carve-out.  Party's rights are reserved

21     under 506(c), but the carve-out is senior as to other

22     collateral.

23             THE COURT:  Correct, correct.  And if the ABL

24     lenders are going after this creditor's collateral, they're

25     free to.  There's no carve-out for the benefit of that

1    creditor.

2              MR. STIEGLITZ:  Not sure I understand that point,

3    but can I --

4              THE COURT:  Well, they haven't waived their lien

5    rights except as to the carve-out.  So they can still -- you

6    know, if you have shared collateral and they're first and

7    you're second, they can --

8              MR. STIEGLITZ:  We do not share collateral.

9              THE COURT:  Oh, okay.  Fine.  All right.

10             MR. STIEGLITZ:  We don't have that situation.  Now

11   I understand the point you're making.  This is what I'm

12   worried about is -- and Mr. Singh and I have had

13   conversations about this for a while.  And I think frankly

14   if -- and I completely appreciate you were working on bigger

15   issues.  I think if we had some more time we would have

16   resolved this.

17             But Paragraph 15 of the DIP order right now, if it

18   gets entered, is going to have a senior lien that didn't

19   exist pre-petition ahead of my client and other people's --

20   I believe the gentleman behind me -- clients.  And that's a

21   (indiscernible) by definition.

22             THE COURT:  That's fine.  I understand that.  That

23   shouldn't be the case.

24             MR. STIEGLITZ:  Okay.  So if we're in a situation

25   where that lien moves down, whether it's for my client or

1   for other people's, I don't particularly care there, that's

2   fine.  And yes, the Debtor's rights are reserved.  We're not

3   talking 506(c) here.  And my rights are reserved to object

4   if they try to charge, a hundred percent.  But I do think

5   that lien priority has to come down in that waterfall for

6   the Paragraph 16.

7           THE COURT:  Okay.

8           MR. HALPERIN:  Good afternoon, Judge.

9           THE COURT:  Well -- I'm sorry -- it is carved out

10  of -- I mean, you don't have the same collateral, so it

11  doesn't matter.  But they still have the lien priority as to

12  stepping into the ABL lender's shoes.

13          MR. STIEGLITZ:  With consent of the ABL lenders.

14          MR. SINGH:  Your Honor, I think we can just work

15  out a specific paragraph with them --

16          THE COURT:  Okay.

17          MR. SINGH:  -- on their collateral.  I cut off

18  what Mr. Halperin was about to say on his collateral.

19  Right?

20          THE COURT:  Okay.

21          MR. SINGH:  So that on those two particular pieces

22  we understand they're not consenting, but we can come back

23  on 506(c) and deal with that issue.

24          MR. HALPERIN:  Yes.

25          THE COURT:  Okay.  But you'd better state who your

1    client is, just for the record.

2            MR. HALPERIN:  Yes, Your Honor.  Good Afternoon,

3    Your Honor, Alan Halperin on behalf of -- and I've got to

4    read it because I'll never get it right -- the relater Paul

5    Ireland, administrator of the Estate of James Garbe.

6            Two issues.  One was resolved, one I think was

7    just resolved now.  One was just confirming that we are a

8    senior permitted lien now under the definition subject to

9    the Debtor's right to challenge the liens.  If they have a

10    problem with it, that's fine.  We have an issue with the

11    fact that the carve-out was senior.  That's now been

12    resolved.  Their 503(c) rights are reserved.  We thought

13    that was the way they could go after it and we thought it

14    was appropriate.  As long as we change the language that the

15    carve-out isn't senior and they reserved their rights as

16    we're talking about, I think we're good, and I'll just sit

17    down.

18            THE COURT:  Okay.  And that's for Mr. Ireland.

19    Okay.

20            MR. HALPERIN:  Thank you.

21            MR. SINGH:  Your Honor, this hearing has gotten a

22    little unorthodox, but I think I'd like to now move into

23    evidence and the declarations.  I think that's it.

24    (indiscernible) the agenda.

25            So, Your Honor, we did file a few declarations.

Page 56

1    And just for purposes of completeness, I will include the

2    declarations that we had at the time of the interim DIP

3    hearing, because I think that those are still relevant.

4            THE COURT:  Okay.

5            MR. SINGH:  And so, Your Honor, that's the

6    declaration of Brandon Aebersold of Lazard, the Debtor's

7    investment banker, at ECF9 in his supplemental declaration

8    at ECF865.  We have the declaration of Mohsin Meghji at

9    ECF10, and we have the supplement -- we have the first day

10   declaration of Rob Ricker of the company, of the office of

11   the CEO, and Mr. Riecker's supplemental declaration at

12   ECF866.  So I would like to move all of those into evidence.

13   All three are here today and available for live cross-

14   examination.  And they did file those declarations with the

15   Court.

16           THE COURT:  Okay.  I skimmed, having read

17   originally the declarations for the interim hearing, and

18   skimmed them again.  And I've read the Aebersold declaration

19   and Mr. Riecker's declaration that were filed just a few

20   days ago.  Does anyone wish to cross-examine any of the

21   declarants?  Okay, I'll admit each of those declarations in

22   the order that you proffered them.

23       (Debtor's Declarations Admitted Into Evidence)

24           MR. SINGH:  Thank you, Judge.  Your Honor, I'm not

25   going to recite what's in all of the papers and the

Page 57

1    declarations.  I think we've made a couple of things

2    abundantly clear, is that the Debtors absolutely need, you

3    know, the cash that's coming in from the two DIP facilities.

4    We've run an extremely robust process.

5            The Lazard team has contacted probably over a

6    hundred people with respect to both facilities combined, and

7    we do think that the terms available, especially now after

8    the bidding that has gone outside -- gone on in the hallway,

9    made clear that we are getting the best reasonable and most

10   reasonable financing available, particularly now with the

11   UCC support.

12           We believe this is all in the Debtor's business

13   judgement and we've satisfied the obligations under Section

14   364 for approval of the financing.  It's a very complicated

15   package, but it did all come together, and we think the

16   Debtor's estates will benefit from the financing that's been

17   recited in the papers and as modified.

18           So unless, Judge, you have questions remaining,

19   you know, we would ask that you approve the Debtor's motion

20   on a final basis with respect to the senior DIP on an

21   interim basis with respect to the junior DIP.

22           The one piece that's in the senior DIP that's

23   interim is the cascade loan treatment, Paragraph 60, which

24   we'll make in the order.  That's interim.  But we would ask

25   that you authorize that as recited on the record and

Page 58

1    modified.  We have to get you revised orders of course to

2    incorporate all of the changes that have occurred here.  But

3    we would appreciate if Your Honor has any questions or if

4    Your Honor would approve the motion as modified.

5              THE COURT:  Okay.  Mr. Fox, did you have some...?

6              MR. FOX:  We didn't get back to the

7    clarifications.

8              MR. SINGH:  Oh, I'm sorry.

9              THE COURT:  Oh, okay.

10             MR. FOX:  Just briefly, Your Honor.  Edward Fox,

11   from Seyfarth Shaw, on behalf of Wilmington Trust National

12   Association as Indenture Trustee and Collateral Agent for

13   the 6.58 percent senior secured notes due 2018.

14             Your Honor,  first, I'd just asked Mr. Singh to

15   confirm on the record that the Debtors will provide

16   Wilmington Trust with the same reports and information

17   required, I believe, under Paragraph 22 of the order, which

18   is the variance reports, the budgets, et cetera; the ongoing

19   reporting that's being provided to the first lien UBL and to

20   the Creditors' Committee.

21             MR. SINGH:  Yes, Your Honor, we'll do that.

22             THE COURT:  Okay.

23             MR. FOX:  Okay.  And secondly, Your Honor, I just

24   wanted to clarify with respect to the payment of the current

25   fees of Wilmington Trust, it's the fees and expenses of

1    Wilmington Trust, including the fees and disbursements of

2    its counsel, up to $250,000.  But just to be clear, that's

3    not to be considered a limitation ultimately on Wilmington

4    Trust's rights, either under 506(c) as a secured creditor

5    with respect to any unsecured claim it may have under the

6    indenture, with respect to its charging lien, or in the

7    highly unlikely event that it seeks to make a substantial

8    contribution claim.

9            THE COURT:  Okay.  And there's a -- there's

10   obviously a mechanism, even with the capped amount as to

11   whether they're reasonable or not?  Everyone's free to

12   object and say they aren't reasonable for some reason.

13           MR. FOX:  Yes.

14           THE COURT:  Okay.

15           MR BROMLEY:  Good afternoon, Your Honor.

16           THE COURT:  Good afternoon.

17           MR. BROMLEY:  James Bromley, of Cleary Gottlieb,

18   on behalf of ESL.  Just a couple of minor things.

19           When Mr. Singh stood up at the beginning and

20   talked about the adequate protection for the second liens

21   and the package, I believe he mentioned liens.  But the

22   package will also include super priority claims.  So, I just

23   wanted to make that clear.

24           And with respect to the mechanics --

25           THE COURT:  Well, they're not super, super

Page 60

1    priority, though, right?  They're -- they fit in as

2    described in the papers.

3              MR. BROMLEY:  Absolutely.

4              THE COURT:  Okay.

5              MR. BROMLEY:  Absolutely, Your Honor.

6              THE COURT:  All right.

7              MR. BROMLEY:  And second is with respect to the

8    efforts that the Debtors and UCC will undertake with respect

9    to allocation of the fees and expenses, if necessary,

10   understanding that the mechanics will be put in place now,

11   but among those mechanics will be the tracing of the

12   proceeds of the inventory.

13             THE COURT:  Right.

14             MR. BROMLEY:  Thank you, Your Honor.

15             THE COURT:  Okay.

16             MR. LEAKE:  Good afternoon, Your Honor.

17             THE COURT:  Good afternoon.

18             MR. LEAKE:  Paul Leake, from Skadden, on behalf of

19   Bank of America and its ABL DIP agent.

20             First of all, I appreciated Mr. Singh's comments

21   at the very beginning of the hearing, saying that we needed

22   time to talk to our clients.  We have in the interim, and I

23   just wanted to report that as to the three current DIP

24   lenders under the interim, and that's going to be syndicated

25   on a final basis, they're all okay in principle with the

1    changes that have been described on the record by Mr. Singh

2    as to the settlement.  All subject, of course, to reading

3    the documents and making sure we're satisfied with the

4    words.

5              There is one thing that I would like to have

6    clarified on the record by counsel for Cyrus.  We've spent a

7    lot of time on the documents with respect to the Great

8    American DIP and the inter-creditor relationships, et

9    cetera.  So, I would ask the counsel to Cyrus confirm that

10   they will in fact be stepping into the documents, as they

11   have been negotiated, subject to the changes that we've

12   talked about.  In particular, I think with respect to the

13   inter-creditor agreement --

14             THE COURT:  Okay.

15             MR. LEAKE:  -- so we understand what our

16   relationship is going forward.

17             THE COURT:  All right.  I think we did that, but

18   if you could just reiterate that.

19             MR. KRELLER:  Your Honor, Thomas Kreller, of

20   Millbank, on behalf of Cyrus.  That's so confirmed.  I think

21   we did it earlier.  I'm happy to do so (indiscernible) --

22             THE COURT:  Okay.  Very well.  Thanks.

23             All right.  I had just one -- actually, I had a

24   number of questions.  These resolutions that have been set

25   forth on the record dealt with all of them but one.  And I'm

Page 62

1    just not sure what this means.

2            If you look at Paragraph 59 of the proposed senior

3    DIP order, which is the setoff and recoupment provision, it

4    has this introduction that I'm not quite sure what it's

5    meant to do.  It says, except as specifically set forth in

6    Paragraph 41(d) with respect to the prepetition ABL

7    obligations, setoff rights are preserved, and recoupment

8    rights.  I'm not sure what the "notwithstanding" is aimed

9    at, because when you look at 41(d), it basically just

10   preserves the right to challenge, and then if there's no

11   challenge, then it's an allowed claim.  So, I'm not quite

12   sure if there's anything else to that --

13            MR. SINGH:  Judge, I think that --

14            THE COURT:  -- reservation than that.

15            MR. SINGH:  -- that can just be struck, as long as

16   -- I've been getting nods from the Skadden team, so that may

17   just be a stray reference at this point.  But if you give me

18   a moment to just confer --

19            THE COURT:  Okay.

20            (Counsel Confers)

21            MR. SINGH:  Oh, oh, oh.  Oh, sorry.  Your Honor,

22   they just clarified.  41(d) says that the senior lender's

23   claim will not be subject to setoffs.  So, basically, that

24   the estates and anybody else is not preserving rights to

25   setoff the claims on the senior lenders.

```
 1                  THE COURT:  All right.

 2                  MR. SINGH:  Which is what it says there.

 3                  THE COURT:  All right.  So, that's not --

 4                  MR. SINGH:  It's not limiting --

 5                  THE COURT:  -- a right to setoff a claim against

 6      the Debtor?

 7                  MR. SINGH:  Yeah.

 8                  THE COURT:  All right.

 9                  MR. SINGH:  Right.

10                  THE COURT:  Okay.

11                  MR. SINGH:  And it's not limiting, you know, other

12      people as to -- exactly -- setoff rights against the Debtor.

13      So, actually, I do think we leave that in there.

14                  THE COURT:  That's fine.  I just wanted to make

15      sure I understood what that -- that wasn't intended to close

16      off someone's setoff rights against the Debtor, in other

17      words?

18                  MR. SINGH:  That's right.  No, it was just --

19                  THE COURT:  Okay.

20                  MR. SINGH:  -- intended to close off someone's

21      setoff right against the senior lenders.

22                  THE COURT:  The senior lenders.

23                  MR. SINGH:  That's exactly right.

24                  THE COURT:  Okay.

25                  MR. SINGH:  So, Your Honor, I think with that,
```

1    that's everything we have.

2              THE COURT:  Okay.

3              MR. SINGH:  I know that's a lot on the DIP order -

4    -

5              THE COURT:  All right.

6              MR. SINGH:  -- senior and junior.

7              THE COURT:  Well, I mean, I think actually the

8    record is quite clear on this.  The parties had laid out

9    their objections clearly, and they've been appropriately

10   addressed.

11             There were a couple of objections that had raised

12   a concern that the winddown count and the budget wouldn't --

13   would not sufficiently protect the Debtors against

14   administrative insolvency.  I'm pleased that the account has

15   been increased by $40 million.  I'm also pleased that no one

16   is pushing that issue at this point.  They are closer to it

17   than I am, and I gather that they're reasonably satisfied on

18   that basis that these loans are going to benefit everybody.

19             I also had some concern that there might be a

20   potential standalone non-obligor Debtor?  That's one of the

21   issues that the Committee had raised.  The declarations went

22   a long way to addressing that concern.  But again, I think

23   the way that this has been resolved with a sophisticated

24   Creditors' Committee with sophisticated advisors indicates

25   that that concern, while legitimate, is overshadowed by the

Page 65

1    need for the financing, as laid out, and that those

2    individual formerly non-obligor Debtors are not being unduly

3    burdened by this financing.

4           So, as I said, my questions have been resolved

5    based on what's been laid out on the record.  As far as the

6    process is concerned, clearly, it seems to me to have been a

7    thorough one where the Debtors and their advisors considered

8    available alternatives and sought out, through a wide group

9    of parties, superior financing.  And I'm fine with the

10   findings in the order as far as 364 is concerned.

11          So, after the necessary vetting of the documents

12   and the orders with the parties, which does not have to be a

13   settlement of order process, you can submit the orders to

14   chambers.  And in the meantime, I think the parties, the

15   lenders, can rely upon the record today in extending

16   funding, including my finding that I'm comfortable with the

17   good faith findings in (indiscernible).

18          MR. SINGH:  Thank you, Your Honor.  Your Honor,

19   the next motion on the agenda is the cash management motion

20   that's being considered on a final basis.  Your Honor --

21          THE COURT:  Right.

22          MR. SINGH:  --we've been speaking to the UCC about

23   it and we'd like to adjourn this motion, other than the

24   pieces about post-petition secured intercompany claims,

25   which we'll deal with in the DIP orders, right, because

1    that's important to that resolution.  But to ensure a couple

2    of things.  You know, reporting we're still working out with

3    the UCC, but also the UCC did raise a concern that, you

4    know, money going out from Debtors to non-debtors to ensure

5    that there's appropriate protection that that's going out,

6    you know, on a secured -- senior secured basis so that there

7    is an ability to get those dollars back, or that there's

8    comfort that those dollars are going to come back.

9           Your Honor, we don't have an objection to that.

10   We're going to work through that issue with them.  One of

11   them is -- you know, one of the entities is Sears.  We're

12   not sending money that way, so whatever the regular basis

13   that the company used to previously.  We just have to check,

14   you know, whether there's going to be a prohibition under

15   Bermuda law or something like that.  We'll work through

16   those issues with the UCC.  But we don't generally have an

17   objection to working this out.

18          And so, I think it would be helpful if we could

19   defer, you know, if Your Honor, we'll work with Ms. Lee, you

20   know, in a week or so we might even be able to settle the

21   order on your -- to Your Honor if we can resolve it with

22   them.

23          The one exception, Your Honor, we won't make any -

24   - you know, we will not make intercompany transfers out from

25   the Debtors' system -- intercompany loans, I should just

Page 67

1    say, payments out from the Debtors' system to non-debtors

2    without their consent, just in case there is an emergency.

3    We don't --

4              THE COURT:  In the interim?

5              MR. SINGH:  In the interim, you know, during this

6    period --

7              THE COURT:  Right.

8              MR. SINGH:  -- of a week or two, because we don't

9    want, for example, you know, some payroll to be missed in

10   one of the foreign jurisdictions and we have another

11   operational issue on our hands.

12             THE COURT:  All right.

13             MR. SINGH:  So, we think will be able to work that

14   out --

15             THE COURT:  So, you have a specific contact at the

16   Committee to talk to about that?

17             MR. SINGH:  Yeah, well, I think we'll work through

18   the Akin team, Mr. Dublin --

19             THE COURT:  Okay.

20             MR. SINGH:  -- has been volunteered, I think.

21             (Laughter in the Courtroom)

22             THE COURT:  All right.

23             WOMAN:  Okay.

24             THE COURT:  Okay.

25             MR. SINGH:  -- to deal with those issues.  So,

1    we'll be able to work through that, you know, hopefully,

2    pretty quickly --

3              THE COURT:  Is the entry of that order on a final

4    basis a milestone?  I don't think it is.

5              MR. SINGH:  No, not the cash management order --

6              THE COURT:  All right.

7              MR. SINGH:  -- Your Honor, so --

8              THE COURT:  Okay.

9              MR. SINGH:  -- that's -- we don't think that's an

10   issue.

11             THE COURT:  Okay.

12             MR. SINGH:  And so, we'll work it out and be able

13   to get back to Your Honor on that particular issue.

14             THE COURT:  Okay.

15             MR. SINGH:  I think other than that, Judge, it's

16   really just the one motion, the 2004 motion that's on the

17   agenda, and I'll --

18             THE COURT:  Right.

19             MR. SINGH:  -- turn it over to counsel for this.

20             THE COURT:  Okay.

21             MR. BROMLEY:  Good afternoon, Your Honor.

22             THE COURT:  Good afternoon.

23             MR. BROMLEY:  James Bromley, Clearly Gottlieb, on

24   behalf of ESL.  As Your Honor is aware, we had filed an

25   application for the issuance of Rule 2004 subpoenas, both to

1    the subcommittee of the Board charged with investigating

2    prepetition transactions, as well as to the UCC.  We have

3    been in conversations both with the UCC and the

4    subcommittee, and the subcommittee has filed a response, as

5    has the UCC.

6            Your Honor, I think we've come to an agreement as

7    to how to proceed --

8            THE COURT:  Okay.

9            MR. BROMLEY:  -- in that the materials that have

10   been produced thus far have been produced entirely to the

11   subcommittee, and that we will issue a subpoena to the

12   subcommittee and not to the UCC.

13           THE COURT:  Okay.

14           MR. BROMLEY:  So, we will submit an order --

15           THE COURT:  And the subcommittee is -- I didn't --

16   you said there were two responses.  I just saw the

17   Creditors' Committee response.  Was there another response?

18           MR. BROMLEY:  There was a response from the

19   subcommittee as well.

20           THE COURT:  But the subcommittee is comfortable

21   with that resolution?

22           MR. BROMLEY:  That's my understanding, Your Honor.

23           THE COURT:  Okay.  All right.

24           MR. BROMLEY:  We would submit an order after

25   consulting with those parties.

Page 70

1                THE COURT:  Okay.  That's fine.

2                MR. BRITTON:  Good afternoon, Your Honor.  Bob

3        Britton, of Paul, Weiss, Rifkind, Wharton & Garrison, on

4        behalf of the restructuring subcommittee.

5                That's accurate, Your Honor.  You know, to date we

6        have shared most of the nonprivileged documents we received

7        through a data site with the committee.  And what we've

8        effectively agreed is that we'll provide the same documents

9        to ESL, subject to an appropriate confidentiality agreement,

10       and ensuring that they've entered into appropriate

11       confidentiality agreements with third parties whose

12       documents are in those rooms -- are in the data room as

13       well.

14               THE COURT:  And nonprivileged?

15               MR. BRITTON:  And the -- we only placed

16       nonprivileged documents into that room, unless we, the

17       subcommittee, exercise our right to waive the privilege and

18       share it with the committee or other parties.

19               THE COURT:  Okay.

20               MR. BRITTON:  Thank you, Your Honor.

21               THE COURT:  All right.  I -- that's pretty much

22       where I was coming out on this.  So, I'm fine with that

23       resolution.  It may be as a couple of cases that have dealt

24       with this scenario, I've also said that as you get deeper

25       into this, there may need to be a further iteration of your

Page 71

1    orders or your stipulations.  But for present purposes, that

2    resolution is fine.

3            MR. BRITTON:  Thank you, Your Honor.  We'll submit

4    an order.

5            THE COURT:  Okay.

6            MR. SINGH:  Thank you, Judge.  I think that's it

7    for today's agenda.  Again, thank you and your chambers for

8    your patience in allowing us to get this done consensually.

9            THE COURT:  Okay.  Very well.  Thank you.

10           (Whereupon these proceedings were concluded at

11    2:41 PM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 72

1              C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sonya

6    Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2018.11.30 11:22:35 -05'00'

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 30, 2018

[& - accounts]                                                                                          Page 1

**&**

**&**   4:3,18 5:1,12
6:1 7:1,15 8:2,8
8:16 9:14 70:3

**0**

**02110**   11:4
**07728**   4:14

**1**

**1**   46:11
**1000**   16:11
**10005**   9:10
**10005-1413**   8:11
**10006**   8:19
**10017**   6:11
**10018**   11:13
**10019**   9:3 10:17
11:19
**10019-6064**   4:6
**10022**   5:15 8:4
10:4
**10036**   5:5 9:17
**1005**   4:21
**10153**   7:18
**10166**   7:10
**105**   3:11
**10601**   1:14
**108**   21:4,13
**1150**   16:11
**11501**   72:23
**116**   45:20
**12**   32:15
**127**   5:21 6:19
**1285**   4:5
**13**   25:3 32:12 38:1
**14**   8:3 9:2
**15**   52:8 53:17
**150**   16:11
**16**   54:6
**1633**   10:16
**164**   33:4
**1675**   11:18

**17th**   10:10
**18-23538**   1:3
**19103**   10:11
**19801**   7:4
**19th**   11:18
**1:30**   1:17 2:2
**1l**   25:24 28:5
**1ls**   17:13

**2**

**2**   33:23
**200**   6:3 7:9 16:12
**200,000**   29:10
**2000**   5:21
**2004**   3:12 68:16
68:25
**2018**   1:16 3:14
40:18 58:13 72:25
**20th**   43:14
**21**   3:14
**2143**   40:18
**22**   58:17
**240**   16:13 22:18
22:19 27:21
**2425**   6:3
**248**   1:13
**250**   22:13
**250,000**   22:9 59:2
**27**   1:16
**27,2018**   2:2
**28**   8:10
**2:41**   71:11
**2l**   17:11
**2ls**   17:14

**3**

**30**   10:10 48:8
72:25
**300**   1:13 6:2,9
72:22
**31st**   10:16
**330**   72:21
**364**   49:25 57:14
65:10

**37**   36:21
**37th**   9:9
**3900**   6:18

**4**

**4**   9:16 33:23
**40**   9:9 64:15
**41**   62:6,9,22
**42**   16:25 17:3
29:12
**44114**   5:22 6:20
**445**   10:3

**5**

**5**   2:8,16 45:20
**503**   55:12
**506**   28:3 49:9
50:19,25 51:20
52:17,21 54:3,23
59:4
**512**   40:18
**552**   25:21 28:3
49:9 51:20 52:17
**575**   8:3
**59**   62:2

**6**

**6**   25:20
**6.58**   58:13
**60**   57:23
**60606**   6:4
**620**   11:12
**63**   4:13
**630**   6:10

**7**

**7**   3:3,7
**7.5**   29:4
**700**   7:3
**723**   21:8
**744**   3:7
**75**   9:2
**764**   40:18
**767**   7:17

**8**

**80**   4:20
**854**   3:14,19
**864**   36:21
**872**   2:22 3:3,7
**88**   21:4
**881**   3:4,7 15:23,24
**885**   3:7
**891**   32:15 33:5
**892**   3:8

**9**

**9006**   3:12
**9016**   3:13
**919**   5:14
**920**   7:3

**a**

**abbreviation**   51:7
**abid**   5:10
**ability**   25:5 31:5
35:1,7 43:12,16
66:7
**abl**   9:15 22:20
24:25 26:4,8 29:1
29:14 38:7 50:6
52:23 54:12,13
60:19 62:6
**able**   44:13 47:12
66:20 67:13 68:1
68:12
**absolutely**   57:2
60:3,5
**abundantly**   57:2
**acceptable**   25:15
39:4
**accepted**   14:14
36:14
**account**   16:12
22:19 27:20 29:3
46:6 64:14
**accounts**   2:12
39:15

**accurate** 19:9
  23:9 70:5 72:4
**accurately** 24:5
**action** 43:14
**active** 14:21
**activity** 19:16
**actual** 49:17
**ad** 41:14 45:14
  46:5
**adam** 5:17 12:19
**adams** 6:3
**addition** 15:19
  19:5 37:1
**additional** 14:8
  23:16
**address** 29:20
  42:4,13
**addressed** 49:13
  49:15 64:10
**addresses** 27:16
**addressing** 64:22
**adds** 44:10
**adequate** 17:7,11
  17:15,18,24 18:2
  18:17 19:1 21:1,9
  22:7,13 24:7
  27:19 29:1 39:17
  48:16,17 59:20
**adjourn** 65:23
**adjustment** 19:18
**adjustments**
  24:15
**adl** 18:16
**administrative**
  2:14 64:14
**administrator** 9:8
  55:5
**admit** 56:21
**admitted** 56:23
**advisor** 47:23
**advisors** 9:1 64:24
  65:7

**adzima** 11:24
**aebersold** 56:6,18
**affiliates** 27:25
  28:10
**afternoon** 14:4,5
  23:7 24:1 36:6,17
  38:22 46:23 54:8
  55:2 59:15,16
  60:16,17 68:21,22
  70:2
**agenda** 2:1 55:24
  65:19 68:17 71:7
**agent** 9:15 11:11
  58:12 60:19
**aggregate** 29:10
**ago** 36:10 56:20
**agree** 31:20 49:7
**agreeable** 31:21
**agreed** 15:1,13,24
  16:1,20 17:1,19
  17:23 18:8 19:6
  19:21 20:2 21:11
  21:12,15 24:6
  35:6 49:24 70:8
**agreeing** 22:12
**agreement** 3:2,6
  15:21 16:15 17:7
  17:22 24:12,13
  25:2 36:11 38:10
  39:12,14,20,21,23
  40:2,3 44:12
  61:13 69:6 70:9
**agreements** 32:23
  70:11
**ahead** 53:19
**aimed** 62:8
**akin** 5:1 23:8
  67:18
**al** 3:17
**alan** 55:3
**allege** 35:14 44:24
**allen** 6:13 42:6,8

**allerding** 6:22
  38:22,23 40:8
**allocate** 19:7
**allocation** 20:19
  50:14 60:9
**allowed** 15:6 42:2
  62:11
**allowing** 14:8
  71:8
**allusion** 49:16
**alternatives** 65:8
**alves** 11:25
**ambiguity** 43:24
**america** 5:4 36:12
  60:19
**american** 5:20
  16:16,19 25:14
  35:6 36:7 38:11
  38:13 46:24 47:11
  47:16 61:8
**american's** 47:21
  48:3
**americas** 4:5
**amount** 59:10
**amounts** 39:13,16
**andrew** 12:9
  46:23
**andrews** 12:1
**answer** 49:12
**anybody** 25:24
  26:1 28:4 35:24
  62:24
**apex** 7:2
**apologize** 15:4
**appearing** 11:23
  31:13
**appears** 32:14
  34:3
**applicable** 32:8
  32:13,22 33:13
**application** 68:25
**applications** 29:6

**applies** 22:20
  29:12,13 37:14
**apply** 22:24 39:17
**appreciate** 34:11
  36:24 42:25 53:14
  58:3
**appreciated** 60:20
**appropriate**
  48:20 55:14 66:5
  70:9,10
**appropriately**
  64:9
**approval** 57:14
**approve** 2:4,18
  57:19 58:4
**approved** 41:10
**approximately**
  36:10
**archer** 6:8 42:11
**arkady** 7:22
**arlene** 11:25
**arps** 9:14
**arrangements**
  24:7
**ashmead** 12:2
**asked** 58:14
**aspect** 27:2
**assert** 42:1,24
**association** 11:10
  58:12
**assuming** 20:11
  25:15
**assumption** 39:20
**attach** 38:17,18
  39:15
**attorney** 4:4,11
  4:19 5:13,20 6:9
  6:17 7:2 8:2,9,17
  10:2,9 11:2,9
**attorneys** 6:2 7:16
  9:15
**authorities** 4:11
  41:8

**authority**  2:5,10
  2:19
**authorize**  2:10
  3:10 57:25
**authorizing**  3:13
**available**  56:13
  57:7,10 65:8
**avenue**  4:5 5:14
  6:10 7:9,17 8:3
  10:3 11:12
**aviation**  31:14
**avoid**  18:20
**aware**  14:17
  28:19,20 68:24

**b**

**b**  1:21 2:6 12:14
  12:20 13:15 21:7
  38:2
**back**  18:22,24
  21:18 41:3,24
  52:4 54:22 58:6
  66:7,8 68:13
**baker**  5:19 36:7
**ballard**  11:17
**balluku**  12:3
**baml**  9:15
**bank**  2:11 5:4
  36:11 60:19
**banker**  56:7
**bankruptcy**  1:1
  1:12,23 3:11,12
  30:19 32:9 40:18
**based**  23:12 47:6
  65:5
**basically**  18:10
  24:13 38:13 41:9
  62:9,23
**basis**  15:1 16:11
  18:16 19:10 21:13
  21:18,19 57:20,21
  60:25 64:18 65:20
  66:6,12 68:4

**battaglia**  9:7
**beginning**  59:19
  60:21
**behalf**  2:21 3:4,8
  14:6 24:2 31:13
  36:7 38:23 42:20
  46:24 55:3 58:11
  59:18 60:18 61:20
  68:24 70:4
**beideman**  10:13
**believe**  15:20 31:2
  38:25 48:12,16
  53:20 57:12 58:17
  59:21
**beneficiaries**  50:3
**benefit**  16:13 49:7
  49:21 51:5 52:14
  52:25 57:16 64:18
**bennett**  12:4 31:8
  31:8,11,14,20
  33:4,7 34:6
**benzija**  9:7
**bermuda**  66:15
**best**  50:8 57:9
**better**  47:11 54:25
**bidding**  14:17,22
  57:8
**bigger**  53:14
**black**  12:5 28:14
**board**  4:4 69:1
**bob**  70:2
**boston**  11:4
**boxes**  19:8
**brad**  13:18
**brandon**  56:6
**brief**  34:11 41:19
**briefly**  58:10
**bring**  15:6
**britton**  4:8 70:2,3
  70:15,20 71:3
**broadway**  10:16
  11:18

**bromley**  8:21
  59:15,17,17 60:3
  60:5,7,14 68:21
  68:23,23 69:9,14
  69:18,22,24
**brothers**  8:2
**brought**  43:15
**broyles**  10:1
  36:18
**bryant**  5:3
**buckets**  34:24
  41:17
**budget**  16:22
  29:14 45:24 46:16
  64:12
**budgeting**  29:11
**budgets**  58:18
**built**  17:2 22:3
  25:2 27:18
**burden**  47:5
**burdened**  65:3
**business**  2:12 46:9
  57:12

**c**

**c**  2:6 4:1,13 5:17
  6:22 14:1,2 25:20
  28:3 49:9 50:19
  50:25 51:20 52:17
  52:21 54:3,23
  55:12 59:4 72:1,1
**cahill**  4:18 48:6
**calandriello**  6:1
**called**  48:7
**calls**  48:9
**capacity**  26:1
**capital**  8:9 9:1
**capped**  29:10
  59:10
**care**  54:1
**carmen**  12:7
**carve**  48:13,18,21
  48:25 49:7,21,22
  50:3 51:1,5,6,9

  52:3,4,6,9,20,21
  52:25 53:5 55:11
  55:15
**carved**  49:23 54:9
**carveout**  29:3
**carveouts**  24:19
**carving**  50:6
**cascade**  21:1,2,4
  21:13 57:23
**case**  1:3 20:4
  22:10 33:9 35:18
  36:24 48:1 50:23
  53:23 67:2
**cases**  44:15 70:23
**cash**  2:6,11,13
  18:21 24:25 57:23
  65:19 68:5
**catch**  31:13
**category**  29:21
  30:22 35:13
**catherin**  13:5
**catherine**  10:13
**center**  6:18 31:16
**ceo**  56:11
**certain**  2:6 4:11
  15:2 35:5 37:4
**certainly**  30:7
  40:5 42:4
**certified**  72:3
**cetera**  21:20 25:1
  58:18 61:9
**challenge**  55:9
  62:10,11
**chambers**  14:8
  65:14 71:7
**chance**  23:10 27:2
**change**  23:18
  24:16 29:11 55:14
**changed**  16:21
  21:14 26:20
**changes**  2:13
  15:12 16:8 24:22
  26:10 28:1 29:2

34:10 58:2 61:1
61:11
**changing** 16:3
**charge** 54:4
**charged** 69:1
**charging** 22:10
59:6
**chart** 21:3
**check** 66:13
**checked** 32:11
**chen** 7:6
**chicago** 6:4 42:7
42:10
**choate** 11:1
**chosen** 47:9
**chris** 10:6 13:17
36:18
**christie** 12:6
**christopher** 12:13
**chubb** 10:9
**cindi** 12:15
**circulate** 35:9
**circulated** 38:10
**circumstances**
21:22
**cited** 44:15
**claim** 19:9 59:5,8
62:11,23 63:5
**claims** 2:15 17:15
18:13 19:1 22:11
25:13 27:22 34:19
35:1,8 59:22
62:25 65:24
**clarifications** 58:7
**clarified** 61:6
62:22
**clarify** 25:11
39:14,16 58:24
**clarifying** 31:3
**clarity** 42:25 43:4
43:24
**clark** 9:8

**clauses** 33:10,17
33:23
**clean** 24:19
**cleaned** 28:25
**cleanup** 26:10
28:1
**clear** 34:13 37:5
37:25 40:5,7 43:8
47:8,15,17 51:5
57:2,9 59:2,23
64:8
**clearly** 28:10 64:9
65:6 68:23
**cleary** 8:16 59:17
**cleveland** 5:22
6:20
**client** 47:23 51:7
52:15 53:19,25
55:1
**client's** 52:2,9
**clients** 22:22
49:23 53:20 60:22
**clock** 47:3
**close** 38:25 63:15
63:20
**closer** 64:16
**closing** 46:14
**closings** 46:13
**clover** 10:2 36:18
**code** 3:11
**collateral** 2:6
11:11 15:16,16
17:17 18:3,4,10
18:11 25:1 31:6
35:1 38:8 48:10
50:16,17 51:7,10
51:11 52:7,20,22
52:24 53:6,8
54:10,17,18 58:12
**colleagues** 30:10
**combine** 52:15
**combined** 57:6

**come** 21:18 22:11
41:3,24 46:16
51:10 52:3 54:5
54:22 57:15 66:8
69:6
**comerford** 7:13
**comes** 48:24
**comfort** 66:8
**comfortable**
20:14,22 65:16
69:20
**coming** 18:24
52:19 57:3 70:22
**comments** 23:16
60:20
**committee** 3:16
5:2 14:12 18:20
20:7 23:8,19,19
29:9 30:1 58:20
64:21,24 67:16
69:17 70:7,18
**committee's**
14:22 29:5
**committing** 20:6
**community** 6:2,9
**companies** 10:9
**company** 20:18
31:15,17 56:10
66:13
**complete** 28:22
**completely** 53:14
**completeness** 56:1
**complicated**
57:14
**comply** 39:19
**concept** 24:20,24
27:18
**concern** 64:12,19
64:22,25 66:3
**concerned** 18:21
51:24 65:6,10
**concluded** 71:10

**confer** 30:10
62:18
**conferring** 22:22
**confers** 62:20
**confidentiality**
70:9,11
**confirm** 23:23
24:4 25:20 58:15
61:9
**confirmation**
22:25 28:2
**confirmed** 61:20
**confirming** 55:7
**conforming** 16:2
**connection** 24:8
48:11
**consensually** 71:8
**consent** 16:18,20
48:15 54:13 67:2
**consenting** 54:22
**consideration**
21:1
**considered** 59:3
65:7,20
**consignment**
35:14,17,20 36:24
37:9 38:9
**consignors** 36:4
**consistent** 22:4
25:8 27:25 29:2
**consisting** 29:14
**constitute** 33:11
**construct** 17:2
**constructive** 42:1
42:24 43:17 44:13
44:24
**consultation**
16:21
**consulting** 69:25
**contact** 67:15
**contacted** 57:5
**content** 48:14

[context - declarations]                                                          Page 5

**context** 50:19
**continue** 2:11,13
  41:22,23 48:12,21
**contract** 33:12
**contreras** 12:7
**contribution** 59:8
**control** 45:23
**conversation** 39:2
**conversations**
  41:20,21 42:15,22
  53:13 69:3
**copy** 15:20,20
**corp** 14:4 40:17
**corporation** 1:7
  2:22 3:4,8,17
**correct** 23:21,24
  30:23 33:7 41:16
  52:23,23
**corrects** 30:15
**counsel** 5:2 22:8
  23:8 35:4 36:11
  36:11 37:6 38:24
  39:2,5,10 42:12
  59:2 61:6,9 62:20
  68:19
**count** 64:12
**country** 72:21
**couple** 20:24
  26:14 27:6,15
  40:11 57:1 59:18
  64:11 66:1 70:23
**course** 2:12 16:3
  22:2 48:14 58:1
  61:2
**court** 1:1,12 14:3
  14:11,20,24 15:3
  15:7,10,22 16:7
  17:3,5,9 18:6 19:4
  19:12,15,17,20,24
  20:1,9,11,14,17
  21:6,23 22:1,16
  22:18 23:1,3,17
  23:22,25 24:9,16

24:21 25:7,11,18
25:22 26:2,6,13
26:16,19,22 27:1
27:5,8,13 28:13
28:16,19,24 29:23
29:25 30:6,8,11
30:25 31:10,12,19
32:7,17,20 33:1,3
33:18,21,24 34:1
34:4,7,9 35:13,19
35:23 36:2,8,16
37:1,3,8,12,14,18
37:20,23,25 38:3
38:6,12,16,20
40:1,9,11,15,17
40:20,23 41:2,4,6
41:13,24 42:4,7,9
42:14,18 43:5,9
43:10,19,22 44:3
44:6,9,22 45:3,6,9
45:14 46:1,4,10
46:12,18 47:1,2,5
47:5,17 48:25
49:3,9,11,14,20
50:1,7,9,12,15,20
50:23 51:3,9,14
51:19,22 52:6,11
52:14,23 53:4,9
53:22 54:7,9,16
54:20,25 55:18
56:4,15,16 58:5,9
58:22 59:9,14,16
59:25 60:4,6,13
60:15,17 61:14,17
61:22 62:14,19
63:1,3,5,8,10,14
63:19,22,24 64:2
64:5,7 65:21 67:4
67:7,12,15,19,22
67:24 68:3,6,8,11
68:14,18,20,22
69:8,13,15,20,23
70:1,14,19,21

71:5,9
**courtroom** 36:3
  46:22 50:11 67:21
**cover** 46:13 50:25
**covered** 38:10
  44:16
**covers** 35:13,20
**covin** 12:8
**craig** 13:12
**creation** 32:4
  33:13
**credit** 3:2 15:21
  17:21
**creditor** 50:21
  53:1 59:4 61:8,13
**creditor's** 52:24
**creditors** 3:17 5:2
  14:12 30:1 58:20
  64:24 69:17
**cross** 56:13,20
**current** 21:13
  58:24 60:23
**currently** 20:19
**cut** 54:17
**cyrus** 8:9 15:1
  16:20 17:1,19
  24:3,6,12 25:12
  25:19,24 28:11
  29:13 47:10,10
  61:6,9,20

**d**

**d** 1:22 2:7 12:25
  13:1 14:1,2 62:6,9
  62:22
**danielle** 12:23
**data** 70:7,12
**date** 70:5 72:25
**dated** 3:14
**david** 11:21 13:23
**day** 23:12 56:9
**days** 56:20
**de** 7:4 46:11

**deal** 16:2 20:22
  23:17 35:17 47:16
  47:18 49:3 50:18
  51:12 54:23 65:25
  67:25
**dealing** 26:19
  31:2 41:14 46:5
**deals** 23:18 30:17
**dealt** 28:1 34:14
  61:25 70:23
**deal's** 16:5
**debevoise** 21:12
**debt** 17:16 24:8
  24:18
**debtor** 1:9 2:4,18
  3:2 7:16 18:4 19:8
  23:18 27:16 36:11
  48:9 63:6,12,16
  64:20
**debtor's** 45:1 48:8
  54:2 55:9 56:6
  57:12,16,19
**debtors** 2:4,10,19
  14:6 15:13 16:14
  17:18 18:1 19:5
  22:11 25:4 39:4,5
  39:6,12,19 40:6
  40:12 43:9 47:2,9
  47:15,24 48:1
  57:2 58:15 60:8
  64:13 65:2,7 66:4
  66:4,25 67:1,1
**debtors'** 25:23
  34:11 36:21 37:6
  38:24 39:2,5,9
**debtor's** 56:23
**december** 43:14
**declarants** 56:21
**declaration** 56:6,7
  56:8,10,11,18,19
**declarations** 30:4
  55:23,25 56:2,14
  56:17,21,23 57:1

[declarations - existing]                                                                    Page 6

64:21
**deeper** 70:24
**defenses** 35:8
**defer** 66:19
**definition** 27:25
  31:24 43:5 44:4
  44:12,14 53:21
  55:8
**deliver** 16:1
**depends** 46:1
**described** 33:10
  33:23 60:2 61:1
**determination**
  41:25
**determined** 43:3
  43:13
**development**
  14:16
**dgi** 31:17
**diaz** 12:9
**dibattista** 12:10
**didn't** 31:12
  36:21 40:15
**different** 17:13
  23:11 26:7 47:15
**differently** 23:17
  49:20
**dip** 3:6 9:15 14:18
  14:25 15:1,2,21
  17:13 18:16,17
  21:18 22:15 24:5
  24:11,12,23 25:3
  25:14,16 26:1
  27:17 28:5,9,11
  28:12 29:1,13,13
  30:16,17 32:12,14
  33:6 35:22 36:13
  37:4,4,16,22 38:7
  39:6,6,14,16 43:2
  44:12 45:22,23,23
  46:4 48:11,20,24
  53:17 56:2 57:3
  57:20,21,22 60:19

60:23 61:8 62:3
  64:3 65:25
**direct** 17:23
**disbursements**
  59:1
**discovery** 3:13,18
**discussions** 23:5
  23:12 47:25
**district** 1:2 6:2,9
  41:18 42:5,13,20
**district's** 44:23
**districts** 42:23
**dizengoff** 5:8
**docket** 45:20
**document** 2:8,16
  2:22 3:3,4,7,8,14
  3:19 15:25 16:1
  24:9 33:5 36:21
**documents** 23:11
  23:16,23 31:4
  34:11 47:13 61:3
  61:7,10 65:11
  70:6,8,12,16
**doesn't** 23:18
**dollars** 17:22 66:7
  66:8
**donna** 13:2
**don't** 19:22 27:14
  38:8,16 40:6,16
**door** 19:11
**double** 32:10
**douglas** 4:10,16
  13:19 45:12
**draft** 36:22
**drain** 1:22
**duane** 10:8
**dublin** 5:7,9 23:7
  23:8,21,24 67:18
**due** 58:13
**duplicative** 36:23

**e**

**e** 1:21,21 4:1,1
  7:13 9:5 12:12,17
  13:6 14:1,1,2,2
  72:1
**earlier** 39:4 61:21
**easy** 44:19
**ecf** 15:23 32:15
**ecf10** 56:9
**ecf865** 56:8
**ecf866** 56:12
**ecf9** 56:7
**economically** 50:2
**ecro** 1:25
**edward** 11:15
  13:16 58:10
**effectively** 70:8
**effort** 47:22
**efforts** 60:8
**eighth** 11:12
**either** 36:2 44:1
  52:15 59:4
**emergency** 67:2
**enabled** 47:24
**encumbered**
  15:18
**enforce** 25:5
**engaged** 47:2
**engagement** 29:6
**ensure** 66:1,4
**ensuring** 70:10
**enter** 24:6
**entered** 35:21
  43:20 45:20 52:2
  53:18 70:10
**entirely** 69:10
**entities** 18:4,6,8
  18:15 19:8 66:11
**entity** 18:22 48:7
**entry** 3:11 68:3
**equitable** 19:17
**eric** 5:24 8:14
  36:6

**erica** 13:20
**esl** 3:10,18 8:17
  17:21 21:8 27:25
  28:1,10 59:18
  68:24 70:9
**especially** 57:7
**essentially** 35:7
**establish** 44:13
**estate** 9:8 16:22
  21:2,3,4 23:2 40:7
  43:18 44:14 55:5
**estates** 25:4,23
  57:16 62:24
**et** 3:17 21:20
  24:25 58:18 61:8
**evaluate** 21:21
**event** 18:19 59:7
**everybody** 22:3
  27:15 64:18
**everyone's** 59:11
**everyone's** 20:14
**evidence** 55:23
  56:12,23
**exact** 15:14
**exactly** 19:19 20:2
  22:2 49:10 63:12
  63:23
**examination**
  56:14
**examine** 56:20
**example** 18:14
  38:11 67:9
**exception** 66:23
**exclude** 34:1 38:8
**excluded** 31:25
  33:11
**excluding** 26:4
**exercise** 20:5
  30:19 31:6 70:17
**exist** 43:3,12
  53:19
**existing** 2:11 18:2
  19:2

**expedited** 3:13,18
**expense** 2:15
**expenses** 19:7,14
　20:19,20 29:8,9
　58:25 60:9
**expressed** 36:22
**expressly** 32:5
　36:22
**extend** 17:16 18:1
**extending** 65:15
**extent** 29:1 32:3,5
　33:11 34:25 45:21
　46:14 48:2 51:6
**extremely** 57:4
**eye** 35:4

**f**

**f** 1:21 72:1
**f.3d** 40:18
**facilities** 57:3,6
**fact** 39:1 55:11
　61:10
**fair** 23:5
**faith** 19:6 20:4,6
　65:17
**familiar** 48:25
**far** 26:19 29:22
　39:5 40:5 51:23
　65:5,10 69:10
**fargo** 11:2
**favorable** 15:13
**federal** 3:12
**fee** 20:20
**feedback** 14:22
**fees** 19:7,13,18
　21:11 22:8,12
　29:4 50:17 58:25
　58:25 59:1 60:9
**feld** 5:1
**fennell** 12:11
**fifth** 7:17
**figure** 50:2
**file** 15:19 25:20
　29:5 55:25 56:14

**filed** 2:21 3:3,7
　15:3 16:4 20:25
　23:11 28:20 31:1
　31:22 32:14 36:4
　48:11 56:19 68:24
　69:4
**filing** 3:1,6
**final** 2:8,21 21:18
　21:19 24:23 25:3
　57:20 60:25 65:20
　68:3
**finalize** 14:9
**finalizing** 22:22
　40:25
**finally** 17:6 41:17
**financial** 47:23
**financing** 2:4,5,19
　2:20 15:2 24:5
　57:10,14,16 65:1
　65:3,9
**finding** 65:16
**findings** 65:10,17
**fine** 33:24 37:15
　43:21 45:24 46:2
　53:9,22 54:2
　55:10 63:14 65:9
　70:1,22 71:2
**finish** 27:6
**finished** 35:4
**firm** 22:9 47:23
**first** 18:9,17 24:25
　31:24 49:4 53:6
　56:9 58:14,19
　60:20
**fisher** 10:1 36:18
**fit** 15:16 34:24
　60:1
**fitzgerald** 12:12
**five** 28:7
**fix** 51:4,4
**fixed** 16:25 17:3
　29:12 52:11

**fleury** 42:12
**flip** 33:18
**flom** 9:14
**floor** 9:9 10:16
　11:18
**florey** 6:14
**focus** 17:10 32:11
**focused** 19:10
**following** 17:24
**foregoing** 72:3
**foreign** 67:10
**forgotten** 29:17
**formerly** 65:2
**forms** 2:12
**forth** 61:25 62:5
**forward** 61:16
**foundation** 30:3
**four** 28:7
**fox** 11:15 58:5,6
　58:10,10,23 59:13
**framework** 39:5,9
**frankly** 25:24
　48:20 53:13
**free** 52:25 59:11
**freehold** 4:14
**friedman** 7:23
**front** 14:17 50:17
　52:3
**fruitless** 47:6
**fully** 44:25 45:3,7
**funding** 65:16
**funds** 39:11
**further** 32:2
　70:25

**g**

**g** 6:13 13:4 14:1,2
**galleria** 31:16
**garbe** 55:5
**garrison** 4:3 70:3
**gartman** 12:13
**gather** 64:17
**generally** 39:9
　66:16

**gensburg** 6:1,6
　42:13,17,19,20
　43:8,11,23 44:17
　45:4
**gentleman** 53:20
**george** 9:20
**getting** 14:22 16:4
　57:9 62:16
**gianis** 12:14
**giglio** 12:15
**give** 27:2 30:9
　62:17
**given** 16:4
**gives** 37:4
**glasses** 35:5
**glb** 35:17 37:1,5,8
　37:21 38:4
**gleason** 12:16
**go** 14:15 23:10,15
　27:21 32:1 33:7
　47:10 48:21 49:23
　55:13
**goes** 25:15 33:10
　39:5
**going** 14:13 15:1
　17:10 18:14 19:9
　20:5,20 24:25
　25:8 27:6,21
　28:11 29:3,5,12
　38:10 42:13 45:18
　45:23 46:8 49:5,7
　49:13 51:23 52:4
　52:24 53:18 56:25
　60:24 61:16 64:18
　66:4,5,8,10,14
**gold** 12:17
**goldinstein** 7:22
**good** 14:3,5 19:6
　20:4,6 23:7 24:1
　27:12 36:6,17
　38:22 44:21 46:23
　54:8 55:2,16
　59:15,16 60:16,17

65:17 68:21,22
70:2
**goodman**  5:24
36:6,7,9
**goods**  39:18
**gordon**  4:18 8:2
48:6
**gotshal**  7:15 14:6
**gotten**  55:21
**gottlieb**  8:16
59:17 68:23
**governs**  37:8
**grafted**  46:8
**grant**  2:6 40:6
44:15,23
**grateful**  15:6
**gray**  7:1
**great**  16:15,18
25:14 46:24 47:11
47:15,21 48:3
61:7
**greetings**  5:20
35:7 36:7 38:11
38:13
**greiner**  42:11
**ground**  48:8
**group**  5:13 10:2
34:9 36:19 45:15
45:17 48:9 65:8
**gu**  9:12
**guarantors**  19:3
**gump**  5:1 23:8

**h**

**hadley**  8:8 24:2
**half**  36:10 45:16
**hallway**  14:19
57:8
**halperin**  9:7 54:8
54:18,24 55:2,3
55:20
**hamilton**  8:16
**handling**  26:12

**hands**  67:11
**hankin**  12:18
**happened**  22:23
**happy**  27:9 43:25
61:21
**harris**  5:17 12:19
**harrison**  12:20
**hastings**  7:8 46:24
**hauer**  5:1
**haven't**  38:11
**hear**  42:14
**heard**  30:22
**hearing**  2:1,2,8,8
2:21 21:19 23:15
27:3 39:1 55:21
56:3,17 60:21
**heitzenrater**
10:13
**held**  21:4,8
**help**  45:18,19
**helpful**  66:18
**helps**  48:23
**herz**  12:21
**highlighted**  34:10
**highly**  59:7
**hilco**  8:2
**hine**  6:16 38:23
**hold**  24:17
**holder**  17:20
**holdings**  1:7 2:22
3:4,8,17 14:4
**holds**  17:21 48:7
**holyoke**  31:15
**hon**  1:22
**honor**  14:5,7,16
15:4,11,19,20
16:10,22 17:4,7
17:24 19:5 20:25
22:6 23:7,21 24:1
24:4,14 27:4 28:4
28:12 29:3,11,18
30:12 31:8 32:10
33:16 34:6,15,15

35:12,16 36:6,17
37:10 38:19,22
40:8,10 41:7,10
41:16 42:5,19,21
43:8,14,25 44:1
44:17 45:12,16,17
46:3,23 47:13,19
47:20 48:5,23
49:2,19 50:5,13
50:18 51:17 52:19
54:14 55:2,3,21
55:25 56:5,24
58:3,4,10,14,21
58:23 59:15 60:5
60:14,16 61:19
62:21 63:25 65:18
65:18,20 66:9,19
66:21,23 68:7,13
68:21,24 69:6,22
70:2,5,20 71:3
**hope**  36:14 47:25
**hopefully**  34:12
68:1
**hoping**  18:19
**hostetler**  5:19
36:7
**houlihan**  29:4
**hour**  14:19 36:10
**house**  4:12
**howard**  9:20
**hundred**  49:24
51:25 54:4 57:6
**hyde**  3:25 72:3,8

**i**

**ii**  2:12,20
**iii**  2:13
**il**  6:4
**illinois**  42:8 43:15
43:19
**implement**  2:12
**implemented**  16:5
**important**  24:22
25:9 66:1

**impose**  50:14
**improperly**  50:14
**include**  19:18
27:25 34:17 56:1
59:22
**included**  25:4
32:2 36:13,14
**includes**  28:11
31:24,25 32:3
**including**  19:7
41:17 59:1 65:16
**inconsistencies**
45:21,25
**inconsistent**  31:23
32:6 33:14 34:12
**incorporate**  38:3
58:2
**incorporated**
23:13 41:9
**increase**  22:18
**increased**  16:13
29:3 64:15
**indebtedness**
17:22
**indenture**  11:10
58:12 59:6
**indentured**  22:7
**indicates**  64:24
**indiscernible**
27:18 31:18 52:13
53:21 55:24 61:21
65:17
**individual**  65:2
**information**  58:16
**inserted**  31:21
**insolvency**  64:14
**instrument**  21:10
**instruments**  17:16
**insurance**  21:15
**intended**  25:6,25
63:15,20
**intention**  24:15
34:12

[inter - leases]                                                          Page 9

**inter** 61:8,13
**intercompany**
2:14,15 18:12,13
18:13 19:9,15
27:22 65:24 66:24
66:25
**intercreditor** 3:6
24:12,13 25:2
**interest** 14:14
18:23 21:12 43:2
43:17
**interim** 2:7 21:18
37:19,21 56:2,17
57:21,23,24 60:22
60:24 67:4,5
**international** 11:3
**interrupt** 22:16
**introduction** 62:4
**inventory** 18:3,10
24:25 39:18 60:12
**investigating** 69:1
**investment** 56:7
**investments** 3:10
3:18
**involved** 23:4
43:18
**ip** 48:8
**ipad** 15:5
**ira** 5:8
**ireland** 55:5,18
**issuance** 68:25
**issue** 16:24 17:9
17:10,12 19:23
22:6 32:12 36:15
40:16,25 41:24
42:3 47:16,19
48:1,2,22 50:19
51:13 54:23 55:10
64:16 66:10 67:11
68:10,13 69:11
**issues** 23:6,13
25:25 26:3,11
29:18,19 30:14

39:7 53:15 55:6
64:21 66:16 67:25
**iteration** 70:25
**it's** 15:1 19:12,12
19:14 20:14 21:7
22:2 25:8 26:9
29:3 30:13 31:14
32:7,12 34:2
35:12 37:22 38:17
40:2,7
**iv** 2:14
**i'll** 29:17
**i'm** 14:10,12 15:4
15:5,11 16:2,9
17:10 20:11 25:15
26:4 27:4,9 28:17
28:21 31:12 32:20
37:6 38:12 40:1,2
44:20
**i've** 28:4 29:2,10
29:17 37:21

**j**

**j** 8:6 11:6 12:16
**james** 8:21 9:8
55:5 59:17 68:23
**jared** 7:23
**jason** 12:10 13:15
**jelisavcic** 12:22
**jersey** 4:14
**jim** 12:6
**job** 27:12
**john** 6:22 12:2
38:22
**jon** 13:13
**jonathan** 12:8
**joseph** 9:5
**jpmg** 31:15
**jr** 4:23
**judge** 1:23 19:19
20:16 21:17 22:14
22:21 25:19 26:14
34:22 40:19 46:19
54:8 56:24 57:18

62:13 68:15 71:6
**judgement** 57:13
**juhle** 12:23
**junior** 2:20 3:1
14:18,25 15:2,21
18:16,17 21:18
22:15 24:5,12
29:13 30:17 32:6
32:14 33:6 48:19
57:21 64:6
**jurisdictions**
67:10
**justin** 1:25

**k**

**kadish** 6:13 42:5
42:6,8,8,11
**kanter** 6:1
**katherine** 13:6
**katten** 8:1
**ken** 42:12
**kenneth** 6:14
**kevin** 11:6
**key** 6:18 14:14,16
15:2 18:25 20:22
29:19
**kimberly** 12:5,14
**kind** 50:9
**king** 7:3
**know** 18:25 20:10
20:19 21:2 22:4,9
25:20 26:22 27:11
28:9,18 29:21
30:17 35:24 40:14
41:3,4,10,22,24
42:16 46:15 49:9
49:15,15,18 50:14
50:17 51:3 53:6
57:3,19 63:11
64:3 66:2,4,6,11
66:14,19,20,24
67:5,9 68:1 70:5
**kreller** 8:13 24:1
24:2 61:19,19

**krislov** 12:24

**l**

**l** 8:21 10:19 11:21
13:16 16:11,11
**laid** 64:8 65:1,5
**landlord** 29:20
30:14,15 31:1
34:9,13
**landlords** 30:22
31:1,7
**language** 16:15
25:14 30:16 31:20
32:14 33:15 34:17
34:23 35:6,10
36:12,13,22 39:3
39:24 41:9,14
42:16,22 43:1
44:7,10,21 45:4
46:2,4,5 51:4
55:14
**lanier** 12:25
**large** 47:20
**late** 9:14 42:21
**latest** 41:19
**laughter** 46:22
50:11 67:21
**law** 4:10 30:19
32:9,22 33:13
66:15
**lawrence** 13:10
**lay** 30:3
**laying** 27:6
**lazard** 56:6 57:5
**leads** 44:9
**leake** 9:19 60:16
60:18,18 61:15
**lease** 30:19 32:5,5
33:12 48:8
**leased** 31:6
**leases** 31:4,25
32:1,3 33:19 34:1
34:2

**leave** 63:13
**ledanski** 3:25 72:3
  72:8
**lee** 66:19
**legal** 72:20
**legitimate** 64:25
**lendco** 4:19 48:7
  51:8,9
**lender** 14:25 26:1
  32:9 47:4
**lender's** 52:7
  62:22
**lenders** 26:5,8,9
  28:5,5,6 29:7,14
  35:11 37:4 39:6,6
  49:21 52:24 54:13
  60:24 62:25 63:21
  63:22 65:15
**lender's** 31:5
  54:12
**lending** 5:13
  18:22
**leslie** 13:11
**letter** 29:6
**levine** 13:1
**lexis** 40:18
**liberty** 8:10,18
**license** 33:12
  39:12,14,20
**lieberman** 13:2
**lien** 3:1 17:20,21
  18:17,25 22:7
  24:8 32:4,9,13
  33:13 40:6 42:24
  44:2,3,11,11,11
  44:12,15,23,24
  49:17 53:4,18,25
  54:5,11 55:8
  58:19 59:6
**liens** 15:15 17:8
  17:25 18:2,16,17
  18:18 22:10 27:20
  29:1 30:17 31:3

38:7,8 39:14,17
  39:17 43:2,5
  46:17 48:13,19,20
  50:6,8 52:10 55:9
  59:20,21
**ligee** 9:12
**lii** 13:3
**liked** 36:20
**likelihood** 47:6
**lillian** 13:14
**limit** 17:15 19:1
**limitation** 59:3
**limitations** 31:5
  19:12
**limited** 3:16 17:25
  19:12
**limiting** 63:4,11
**line** 28:14
**lines** 28:22
**linn** 13:4
**liquidator** 16:17
**literally** 14:18
  15:4,12 19:10
  22:23
**little** 55:22
**live** 56:13
**living** 15:25
**llc** 4:19 31:15,16
  31:16,17,17,17,18
  48:7 51:8
**llp** 4:3,18 5:1,12
  6:16 7:1,8,15 8:1
  8:8,16 9:7,14 10:1
  10:8 11:8,17
**loan** 21:22 26:8
  27:17 47:10,12
  48:8,17 57:23
**loans** 21:2,3 23:2
  48:9 64:18 66:25
**local** 22:4
**locations** 39:19
**lokey's** 29:4
**long** 33:12 34:11
  42:2 45:24 55:14

62:15 64:22
**look** 16:5 18:9,10
  24:25 33:4 40:4
  50:18 62:2,9
**looking** 37:6 38:1
  38:15 43:4
**lot** 29:22 47:21,22
  47:24 61:7 64:3
**lotempio** 13:5
**lp** 8:9 31:15
**ls** 31:17
**luxottica** 6:17
  35:4 38:23
**luxottica's** 39:10
  39:17

## m

**m** 11:15 12:4,15
  13:12
**ma** 11:4
**madison** 8:3
**main** 4:13
**maintain** 18:23
  21:15,15
**maintenance**
  42:16
**majority** 17:21
**making** 21:20
  40:5 53:11 61:3
**mall** 31:14,15,15
**man** 46:11
**management** 2:11
  2:13 65:19 68:5
**manassas** 31:15
**manges** 7:15
**marc** 12:18 13:21
**marshal** 18:8
**marshaling** 24:24
  25:21 27:17 28:3
**martinez** 12:7
**massey** 13:6
**material** 17:20
**materials** 69:9

**matt** 42:13,19
**matter** 1:5 50:24
  54:11
**matters** 2:1 49:18
**matthew** 6:6
**maza** 7:12 13:7
**mccloy** 8:8 24:2
**meagher** 9:14
**mean** 32:21 37:4
  40:2,11 42:3 49:7
  49:11,16 50:6,13
  50:18 54:10 64:7
**means** 62:1
**meant** 62:5
**mechanic** 25:9
**mechanics** 19:25
  20:1,3,12 22:3
  59:24 60:10,11
**mechanism** 20:12
  41:14 59:10
**meghji** 56:8
**meltdown** 18:19
**members** 29:9
**mention** 20:24
**mentioned** 23:10
  24:10 25:12 38:24
  59:21
**michael** 7:13
  10:19 12:21 13:4
  13:8
**milbank** 8:8 24:2
**milestone** 68:4
**millbank** 61:20
**million** 16:12,13
  16:25 17:3 21:4,8
  21:13 22:19 27:21
  29:4,12 48:8
  64:15
**mind** 46:21
**mineola** 72:23
**minimis** 46:11
**minor** 59:18

**minute** 17:11 23:4

**missed** 67:9

**mittelman** 13:8

**modifications** 41:11

**modified** 57:17 58:1,4

**modify** 15:2 43:13

**mohsin** 56:8

**moment** 30:9 62:18

**money** 19:10 47:22 50:21,24 66:4,12

**months** 52:4

**morning** 28:21 31:22 39:4 42:21

**morris** 10:8

**motion** 2:4,5,10 2:10,18,19 3:10 3:10,18 30:4 43:13 57:19 58:4 65:19,19,23 68:16 68:16

**move** 27:5 52:15 55:22 56:12

**moves** 53:25

**moving** 34:16

**muchin** 8:1

**multiple** 23:4

**n**

**n** 4:1 7:3 14:1,2 72:1

**name** 36:17 47:21

**names** 16:3 24:16

**national** 11:10 58:11

**necessarily** 38:8

**necessary** 20:8 60:9 65:11

**need** 17:2 19:22 20:4 22:23 23:14 24:18 37:10 39:6

43:6 44:6,20 57:2 65:1 70:25

**needed** 60:21

**needs** 39:24 48:18

**negisa** 12:3

**negotiated** 47:12 61:11

**negotiating** 47:3 47:22

**negotiations** 14:9

**never** 46:21 55:4

**new** 1:2 4:6,14,21 5:5,15 6:11 7:10 7:18 8:4,11,19 9:3 9:10,17 10:4,17 11:13,19 14:25 17:17 18:1,1

**newco** 31:14,17

**nicholas** 11:24 12:24

**night** 42:21

**nods** 62:16

**non** 20:19 26:8,8 32:8 64:20 65:2 66:4 67:1

**nonapplicable** 30:18

**nonlegal** 29:8

**nonprivileged** 70:6,14,16

**note** 21:7 27:10 36:9

**notes** 15:5 17:20 22:7 58:13

**notice** 2:1 3:1,6 45:19

**notwithstanding** 35:21 37:5 62:8

**november** 1:16 2:2 3:14 72:25

**number** 15:23 21:13 23:19 30:21 34:16,20 61:24

**ny** 1:14 4:6,21 5:5 5:15 6:11 7:10,18 8:4,11,19 9:3,10 9:17 10:4,17 11:13,19 72:23

**o**

**o** 1:21 14:1,2 72:1

**object** 42:2 45:2,3 45:6 48:12 54:3 59:12

**objection** 3:16,16 14:12 16:23,24 17:9 20:25 22:15 23:14 24:24 27:11 35:25 38:24 41:8 41:18,20,22,25 46:25 47:6 48:12 48:21 49:1,4 66:9 66:17

**objections** 23:19 26:24 27:1 29:20 29:21 30:2,23 31:1,7 34:14,16 34:20 36:4,19 41:9,12 46:20 64:9,11

**obligations** 57:13 62:7

**obligor** 18:6,7 64:20 65:2

**obligors** 17:15,17 17:18,25 18:1 19:2,2

**obtain** 2:5,20

**obviously** 16:2 23:4,15,22 26:4 47:20 59:10

**occur** 18:15 22:5

**occurred** 58:2

**occurring** 28:6

**offered** 47:10

**office** 56:10

**offices** 4:10

**official** 3:16

**oh** 5:22 6:20 53:9 58:8,9 62:21,21 62:21,21

**okay** 14:3,20 15:7 16:7 17:5 19:20 20:17 21:23 23:1 23:22,25 25:7,11 26:2,13 27:8,13 28:16,24 29:16,23 30:11,25 31:19 33:1,6 34:4,5,8,10 35:11,13,23 36:2 36:16 38:6,7,16 38:20 40:1,9,23 41:2,6,13 42:18 44:2 46:18,19 49:2,3 50:10,12 53:9,24 54:7,16 54:20,25 55:18,19 56:4,16,21 58:5,9 58:22,23 59:9,14 60:4,15,25 61:14 61:22 62:19 63:10 63:19,24 64:2 67:19,23,24 68:8 68:11,14,20 69:8 69:13,23 70:1,19 71:5,9

**old** 72:21

**once** 29:19

**onder** 13:9

**ones** 16:9 30:13

**ongoing** 58:18

**open** 16:24 26:3

**operational** 67:11

**opinions** 40:12

**opportunity** 47:1

**opposed** 32:17 38:14

**opposite** 32:19

**optical** 39:18
**order** 3:11 23:15
  24:23 25:3,3
  27:19 28:2 30:16
  30:17 31:21 32:6
  32:12,15 33:6
  35:17 36:13,22,23
  37:1,4,6,8,16 38:4
  43:2 45:19,22,22
  45:23,23 46:5,16
  48:11,24 52:1
  53:17 56:22 57:24
  58:17 62:3 64:3
  65:10,13 66:21
  68:3,5 69:14,24
  71:4
**orders** 22:5 28:8
  31:22 34:17 35:22
  37:22 41:10,12
  43:19 58:1 65:12
  65:13,25 71:1
**ordinary** 2:12
**organize** 27:2
**original** 23:14
**originally** 16:12
  56:17
**outline** 14:13,14
  16:6 17:8
**outlined** 28:4 29:2
  29:11 30:13
**outlines** 22:14
**outside** 14:18
  25:24 42:9,12
  57:8
**outstanding** 34:21
  35:25 38:25
**overall** 40:3
**overnight** 23:11
**overshadowed**
  64:25
**owner** 31:15

## p

**p** 4:1,1 12:11 14:1
  14:2
**p.m.** 2:2
**pa** 10:11
**package** 15:2
  17:11 22:13 57:15
  59:21,22
**packer** 40:18
**page** 33:4,8
**paid** 22:9 46:15
**papers** 47:20
  56:25 57:17 60:2
**paragraph** 25:3
  32:2,12,15 36:21
  37:14,18 38:1,3
  52:8 53:17 54:6
  54:15 57:23 58:17
  62:2,6
**paragraphs** 31:2
**park** 5:3 7:9 10:3
  13:10
**part** 20:22 22:12
  22:15 25:9
**participate** 28:11
**particular** 15:25
  18:4 21:14 32:11
  34:23 52:19 54:21
  61:12 68:13
**particularly** 54:1
  57:10
**parties** 2:7 14:8
  14:14,21,25 17:19
  17:23 18:22 19:1
  20:21 21:21 23:4
  26:11 29:18 31:1
  35:10,14,15 36:2
  38:17 40:4 41:1
  43:9,16 45:6 48:1
  51:6 64:8 65:9,12
  65:14 69:25 70:11
  70:18

**parties'** 32:22
**partners** 8:9
**party's** 52:20
**patience** 71:8
**patricia** 7:6
**paul** 4:3 7:8 9:19
  46:24 55:4 60:18
  70:3
**pause** 23:3
**pay** 21:11,12
  22:12
**payment** 45:22
  58:24
**payments** 21:20
  21:23 67:1
**payroll** 67:9
**pc** 6:1
**pending** 39:20
  43:13
**people** 26:16,23
  27:11 42:2 44:9
  47:22 50:3 57:6
  63:12
**people's** 53:19
  54:1
**percent** 49:24
  51:25 54:4 58:13
**percentage** 17:1
**period** 67:6
**permitted** 30:18
  31:4 32:13,16,17
  32:22 33:14 44:1
  55:8
**perspective** 19:22
**petition** 2:5,15,20
  21:12 27:21 39:13
  39:15 43:15 48:10
  53:19 65:24
**pey** 10:6 36:17,18
  37:2 38:1,7,15,19
  38:21
**phil** 5:7 23:7

**philadelphia**
  10:11
**philip** 5:9
**phone** 36:3
**phrased** 32:7
**pick** 25:25
**piece** 21:2,10,13
  21:14,20 22:24
  57:22
**pieces** 20:24 27:15
  54:21 65:24
**pile** 47:20
**pine** 4:20
**place** 11:3 20:1,3
  48:20 60:10
**placed** 70:15
**places** 28:7
**plain** 24:11
**plains** 1:14
**plaskon** 13:11
**plaza** 8:18 9:2
  31:18
**please** 14:3
**pleased** 14:10
  64:14,15
**plus** 16:11,11
  52:16
**pm** 1:17 71:11
**pocket** 29:9
**point** 18:25 33:2
  38:12 40:2 45:17
  47:25 53:2,11
  62:17 64:16
**points** 16:2,11
  26:15
**pollack** 11:21
**possession** 2:4,18
  3:2
**post** 2:5,15,20
  21:12 27:21 39:13
  39:15 65:24
**potential** 64:20

poughkeepsie
  31:16
pre  43:15 48:9
  53:19
preexisting  46:17
prepetition  2:7
  17:16 18:9 24:18
  25:13,18 26:8
  28:6 34:25 35:8
  38:9 39:11 62:6
  69:2
present  71:1
presented  47:13
preservation
  36:20
preserve  22:10
  34:25 39:10
preserved  44:25
  45:2,3,7 62:7
preserves  35:7
  62:10
preserving  42:1
  42:23 62:24
pretty  24:11
  44:19 68:2 70:21
previous  36:23
previously  15:8
  15:17,18 16:18
  18:3,5 66:13
price  10:15 13:12
pricing  16:10
primarily  18:3
  21:8 34:25
primary  19:2,3
  25:1 42:3
prime  43:20 48:11
primers  43:3
priming  43:6,18
  44:10,11 48:13
principal  42:12
principle  60:25
prior  17:15,25
  22:5 23:18 41:10

43:5 44:1,3,11,24
priority  2:15
  18:16 28:25 52:10
  54:5,11 59:22
  60:1
privilege  70:17
probably  26:23
  28:7 29:5 33:17
  33:23 49:15 50:25
  51:15 57:5
problem  52:16
  55:10
procedure  3:12
proceed  69:7
proceedings
  71:10 72:4
proceeds  30:18
  31:3 32:1 38:9
  60:12
process  47:2 57:4
  65:6,13
procurement
  40:17
produced  69:10
  69:10
professional  19:7
  19:13,18 20:20
  21:11
professionals
  14:23
proffered  56:22
prohibition  28:10
  66:14
prohibits  32:5
  33:13
properties  21:5
  21:16 32:4 33:10
property  15:18,18
  31:7,25,25 32:3
  33:9,11,14 40:6,7
  44:14
propose  35:11
  41:23

proposed  5:2 15:3
  15:10 23:8 31:21
  31:22 34:17 36:13
  42:23 43:2 62:2
prospective  46:15
protect  64:13
protection  17:7
  17:11,15,18,24
  18:2,18 19:1 21:1
  21:9 22:7,13 24:7
  27:19 29:1 39:17
  48:16,17 59:20
  66:5
protections  2:6
provide  2:14
  21:11 23:16 48:16
  48:17 58:15 70:8
provided  33:8,9
  39:11,13 45:22,24
  58:19
provides  40:3,5
providing  17:18
provision  25:5
  33:8 45:20 62:3
provisions  28:3
  28:13
pruchansky  13:13
public  5:21 6:19
published  40:12
purport  48:10
purposes  56:1
  71:1
pursuant  3:11
pushing  64:16
put  20:3 23:17
  30:2 37:23 47:23
  49:20 50:17 60:10

q

quarropas  1:13
quershi  5:10
question  50:9
questions  25:13
  49:16 57:18 58:3

61:24 65:4
quickly  68:2
quite  24:10 35:4
  62:4,11 64:8
quo  18:23 42:16

r

r  1:21 4:1 7:23
  8:14 9:20 11:25
  12:2 13:23 14:1,2
  72:1
raise  26:11 66:3
raised  17:10,12
  18:12 23:13 24:23
  36:19 64:11,21
raphael  12:1
ray  7:20
rdd  1:3
reach  42:15
reached  36:10
read  15:12 16:3,9
  43:23 47:14 55:4
  56:16,18
reading  61:2
reads  52:9
ready  47:11
real  14:22 21:2,3
  21:4 31:25 43:17
reallocation  21:24
really  16:8 19:23
  21:10 25:1 47:24
  49:11,17 50:2,24
  68:16
reason  47:9 59:12
reasonable  16:18
  57:9,10 59:11,12
reasonably  64:17
received  70:6
recite  56:25
recited  57:17,25
reciting  28:17,21
reclamation  34:18
  35:15

**record** 28:23 30:3
  44:18 47:8,14
  48:5 55:1 57:25
  58:15 61:1,6,25
  64:8 65:5,15 72:4
**record's** 47:17
**recoupment** 34:19
  62:3,7
**recoveries** 18:9
**reduced** 16:10
**reference** 34:1
  62:17
**referring** 41:11
**regarding** 36:12
  39:7 48:22
**regular** 66:12
**reimer** 8:14
**reindel** 4:18 48:6
**reisman** 8:6
**reiterate** 61:18
**rejection** 39:21
**related** 2:16 3:2,7
  3:19
**relater** 55:4
**relationship**
  61:16
**relationships** 61:8
**release** 25:14,15
**releases** 25:25
**relevant** 35:10
  56:3
**relief** 2:16 21:17
  21:19
**rely** 65:15
**remained** 47:11
**remaining** 16:17
  18:11 34:21 57:18
**remarkably** 40:11
**remedies** 30:20
**reminder** 35:16
**reply** 30:13 36:21
  41:19

**report** 14:11
  34:22 60:23
**reporting** 20:12
  39:8 58:19 66:2
**reports** 58:16,18
**represent** 48:7
**represented** 22:8
  39:3
**representing** 36:3
  36:18
**request** 27:24
**requesting** 16:25
**require** 39:12,16
  39:19
**required** 58:17
**requires** 16:16
**reservation** 34:18
  34:23 35:3,6,12
  36:12 38:14 40:25
  42:15 43:11 51:16
  51:18,23 52:16
  62:14
**reservational**
  42:22 43:1
**reservations**
  34:18 35:2
**reserve** 38:17
  48:3
**reserved** 26:9
  52:2,20 54:2,3
  55:12,15
**reserving** 51:20
**resolution** 14:11
  14:13 23:6,13
  25:10 27:1,7 66:1
  69:21 70:23 71:2
**resolutions** 30:2
  61:24
**resolve** 23:19
  34:13 36:15 41:20
  41:22 49:6 66:21
**resolved** 17:12
  27:10,14 30:16,24

31:2 39:1 41:21
  48:2 53:16 55:6,7
  55:12 64:23 65:4
**resolves** 41:12
**respect** 15:13,15
  16:17 17:8,14,20
  21:19 24:7 25:24
  26:10 28:4 31:6
  34:19 35:21 36:1
  39:11,23 47:5
  57:6,20,21 58:24
  59:5,6,24 60:7,8
  61:7,12 62:6
**response** 69:4,17
  69:17,18
**responses** 69:16
**rest** 27:5
**restructuring** 4:4
  70:4
**retention** 16:16
  29:5,8
**reverse** 27:17
**review** 41:8
**revised** 25:3 58:1
**rhetorical** 50:9
**richard** 4:23 48:6
**ricker** 56:10
**riecker's** 56:11,19
**rifkind** 4:3 70:3
**right** 14:17 15:11
  15:22 16:20 17:4
  18:7,18 19:4,19
  20:2,9,16 21:6
  23:3 24:21 25:17
  25:19,22 26:3,6
  28:15 32:8,9,20
  32:24 33:3,16,19
  34:7 35:19 36:8
  38:19,20 40:17
  41:11,15 43:10,22
  44:3,5,8,24 45:1,8
  45:9,10 46:3,7,10
  46:12 47:17,19

50:7,15,20 51:2
  51:12,12,14 52:9
  53:9,17 54:19
  55:4,9 60:1,6,13
  61:17,23 62:10
  63:1,3,5,8,9,18,21
  63:23 64:5 65:21
  65:25 67:7,12,22
  68:6,18 69:23
  70:17,21
**rights** 16:21 26:7
  26:9 31:6 34:18
  34:19,23,25 35:6
  35:21 36:12,20,25
  37:4,5,13 38:14
  38:17 39:10 40:25
  42:1,16,22,24
  43:1,12 45:1,6
  46:6 48:3 51:12
  51:18,20 52:2,17
  52:20 53:5 54:2,3
  55:12,15 59:4
  62:7,8,24 63:12
  63:16
**rizzo** 13:14
**road** 72:21
**rob** 56:10
**robert** 1:22 4:8
  12:12
**robust** 57:4
**rockefeller** 9:2
**roebuck** 18:14
**ronald** 12:17
**room** 1:13 70:12
  70:16
**rooms** 70:12
**ropes** 7:1
**rosenman** 8:1
**roth** 5:12
**rule** 68:25
**rules** 3:12 22:4
**run** 31:16 57:4

| **s** | | | |
| --- | --- | --- | --- |

**s** 3:3,7,19 4:1 13:20 14:1,2
**s&r** 31:17
**safe** 30:14
**sales** 38:9 46:11
**salmon** 31:16
**sanjana** 13:15
**sarachek** 9:5
**satisfied** 57:13 61:3 64:17
**saw** 43:23 69:16
**saying** 51:19 60:21
**says** 32:2 43:6 45:21 49:25 62:5 62:22 63:2
**scenario** 18:20 70:24
**schedule** 2:7,20
**scheduled** 2:1
**schien** 10:19
**schnitzer** 13:16
**school** 6:2,9 41:18 42:5,13,20,23 44:23
**schrock** 7:20
**schulte** 5:12
**scott** 13:22
**scribbling** 15:5
**sears** 1:7 2:21 3:4 3:8,17 14:4 18:14 35:5 39:18 66:11
**seated** 14:3
**second** 2:7 17:8 17:20,21 18:25 22:7,16 24:8 27:20 53:7 59:20 60:7
**secondly** 58:23
**section** 3:11 57:13
**secured** 2:7 3:2 18:15 22:1 27:23

50:21 58:13 59:4 65:24 66:6,6
**see** 23:23 29:6,7 36:22 40:4
**seek** 21:19
**seeking** 3:18 21:17 42:25
**seeks** 59:7
**seen** 16:23 38:11
**segregated** 39:15
**segregation** 39:13
**selection** 47:6,15
**sells** 39:18
**sending** 66:12
**seneca** 31:17
**senior** 21:10 26:8 27:17 28:5 29:6 29:13 30:16 32:6 32:12 42:24 44:4 48:19 49:20 52:6 52:9,19,21 53:18 55:8,11,15 57:20 57:22 58:13 62:2 62:22,25 63:21,22 64:6 66:6
**sent** 39:3
**sentence** 37:10 38:5
**set** 43:14 61:24 62:5
**setoff** 34:19 62:3 62:7,25 63:5,12 63:16,21
**setoffs** 62:23
**settle** 66:20
**settlement** 27:16 29:17 61:2 65:13
**seyfarth** 11:8 22:8 58:11
**share** 20:21 53:8 70:18
**shared** 53:6 70:6

**sharing** 15:15 30:21
**shaw** 11:8 58:11
**she's** 33:16
**shld** 4:19 48:7 51:8,9
**shlomo** 7:12 13:7
**shoes** 54:12
**shopping** 31:16
**show** 48:23
**signatures** 16:1
**signoff** 16:16 22:23
**simard** 11:6
**simply** 16:21 35:12
**singh** 2:21 3:3,8 7:21 14:5,6,21 15:9,11,23 16:8 17:4,6 18:7 19:5 19:14,16,19,21,25 20:2,10,13,16,18 21:7,25 22:2,17 22:21 23:2,9 24:4 24:14,17,22 25:8 25:17,19,23 26:3 26:7,14,18,21,25 27:4,6,9,14 28:15 28:17,20,25 29:24 30:5,7,9,12 32:10 32:19,24 33:2,6 33:16,19,22,25 34:2,5,8,15 35:16 35:20,24 37:7,10 37:13,16,19,21,24 38:5 40:10,14,16 40:19,22,24 41:3 41:7,16 43:25 44:5,8,20 45:1,8 45:10 46:7,19 49:5,10,13,19 51:12,15,21,23 52:18 53:12 54:14

54:17,21 55:21 56:5,24 58:8,14 58:21 59:19 61:1 62:13,15,21 63:2 63:4,7,9,11,18,20 63:23,25 64:3,6 65:18,22 67:5,8 67:13,17,20,25 68:5,7,9,12,15,19 71:6
**singh's** 60:20
**sit** 18:18 55:16
**site** 70:7
**situation** 53:10,24
**six** 52:4
**skadden** 9:14 60:18 62:16
**skimmed** 56:16 56:18
**solutions** 72:20
**somebody** 30:23 46:20
**someone's** 63:16 63:20
**somewhat** 36:23
**sonya** 3:25 72:3,8
**soon** 41:5
**sophisticated** 64:23,24
**sorry** 26:18 31:12 46:21 54:9 58:8 62:21
**sort** 18:23 21:10 35:18
**sought** 65:8
**south** 10:10
**southern** 1:2
**spahr** 11:17
**speak** 26:23 29:18 36:5 41:5 42:3,17 47:1,1
**speaking** 65:22

**specialty** 5:13
**specific** 54:15
  67:15
**specifically** 48:24
  62:5
**specified** 15:16
**spent** 41:18 47:21
  61:6
**square** 5:21 6:19
  9:16
**st** 7:3
**stack** 15:17
**stand** 27:11 29:20
**standalone** 64:20
**standing** 26:16
**stands** 30:23
  46:20
**start** 21:20
**state** 54:25
**stated** 30:1
**statement** 3:1,6
  36:20 38:16
**states** 1:1,12 33:9
**status** 18:23 35:14
  42:16
**stauble** 13:17
**stay** 43:13
**steen** 8:16
**stephanie** 12:16
**stepping** 54:12
  61:10
**steven** 8:6
**stieglitz** 4:23 48:5
  48:6 49:2,24 50:5
  50:8,10,13,16,22
  51:2,8,17,25 52:8
  52:12 53:2,8,10
  53:24 54:13
**stipulate** 44:1
**stipulations** 71:1
**stood** 59:19
**store** 46:13

**stores** 16:17 35:5
  46:14
**strauss** 5:1
**stray** 62:17
**street** 1:13 4:13
  4:20 6:3 8:10 9:9
  10:10
**struck** 50:20
  62:15
**structure** 15:8,14
  15:15
**structured** 48:18
**subclause** 38:1
**subcommittee**
  3:14 4:4 69:1,4,4
  69:11,12,15,19,20
  70:4,17
**subject** 16:1 21:23
  37:16 55:8 61:2
  61:11 62:23 70:9
**submit** 65:13
  69:14,24 71:3
**subordinate** 43:2
  43:20
**subpoena** 69:11
**subpoenas** 68:25
**substance** 16:9
**substantial** 17:21
  59:7
**success** 29:4
**sufficiently** 64:13
**suggest** 29:25
  48:18
**suggested** 51:4
**suite** 4:13 5:21 6:3
  72:22
**summarized** 24:5
**summarizes** 29:16
**summary** 23:5
  26:4
**sunny** 2:21 3:3,7
  7:21 14:5

**super** 59:22,25,25
**superior** 65:9
**superpriority** 3:1
**supplement** 56:9
**supplemental**
  2:18,19 16:23
  17:9 23:14 56:7
  56:11
**support** 57:11
**supposed** 24:20
**sure** 16:5 19:22
  20:21 24:19 26:11
  28:22 31:14 32:20
  35:10 38:12 40:1
  40:3 41:11 44:20
  49:6 53:2 61:3
  62:1,4,8,12 63:15
**surprisingly**
  14:18
**surrounding**
  21:22
**sweeney** 13:18
**syndicated** 60:24
**syndication** 28:9
**system** 2:11,13
  66:25 67:1

### t

**t** 4:10 13:19 72:1
  72:1
**tabachnik** 4:10,16
  13:19 45:12,12,16
  46:3,8,13
**table** 26:4
**take** 16:5 24:13
  33:25
**talk** 41:23 60:22
  67:16
**talked** 27:17,19
  27:20,22 59:20
  61:12
**talking** 21:9 46:2
  54:3 55:16

**tax** 45:19 46:16
**taxes** 43:18,18
  45:22,24 46:1,15
**taxing** 4:11 41:8
  46:21
**taylor** 12:20
**team** 57:5 62:16
  67:18
**technologies** 10:2
  36:19
**telephone** 31:9
**telephonically**
  11:23
**tenzer** 46:23,24
  47:19
**teresa** 12:4 13:3
  31:8
**term** 26:8
**terms** 14:13 15:2
  15:15,25 17:13
  24:5 26:22 27:7
  29:16 39:20,22,24
  47:11,12 57:7
**testing** 29:15
**texas** 41:8 45:14
  46:5
**thank** 14:7 34:6
  34:15 36:16 38:21
  40:8 42:19 44:17
  45:11 46:3 48:4
  49:2 55:20 56:24
  60:14 65:18 70:20
  71:3,6,7,9
**thanks** 61:22
**that's** 15:11,23
  17:4 18:7 19:19
  20:2,16 21:8
  22:19 23:21 24:14
  25:9,19 26:12
  28:6,15,18 32:6
  32:21 33:6,17,24
  35:25 37:15 38:10
  38:15 40:7 52:12

there'll 29:14
there's 16:15
  20:11 21:8 24:19
  28:2,3,9 30:12,15
  33:8 34:12 35:24
  37:2 45:20
they'll 18:16
they're 20:21 22:1
  31:2
they've 17:11
thing 14:24 25:12
  45:17 50:25 61:5
things 35:18 47:7
  52:15 57:1 59:18
  66:2
think 15:24 16:3
  17:12 20:20,23
  24:15 27:12,14
  28:6 29:4,16,19
  29:22 30:13,22
  32:5,7 33:16,17
  33:20,22 34:13,22
  35:9 37:10,23
  38:5 39:23 40:3
  40:20,24,24 41:4
  41:5,12,17,19,21
  42:2 43:6 44:6,10
  44:16,18,21 45:11
  46:19,20 49:14
  50:5,18,22 51:3
  51:15,17,22 52:16
  52:18 53:13,15
  54:4,14 55:6,16
  55:22,23 56:3
  57:1,7,15 61:12
  61:17,20 62:13
  63:13,25 64:7,22
  65:14 66:18 67:13
  67:17,20 68:4,9
  68:15 69:6 71:6
third 5:14 6:10
  70:11

thirds 33:7
thomas 8:13 13:9
  24:1 61:19
thompson 6:16
  38:23
thorough 65:7
thought 55:12,13
three 56:13 60:23
time 14:8,22
  21:21 23:15 41:18
  47:21 51:6 53:15
  56:2 60:22 61:7
times 9:16
timing 19:22
tmt 40:17
today 16:6 20:5
  21:17 22:12 23:12
  43:19 47:2,14
  56:13 65:15
today's 71:7
today's 39:1
top 18:18
total 22:9 29:8
tower 5:4
tpg 5:13
trace 35:1
tracing 60:11
track 19:15 20:18
tracked 20:15
tracking 19:9
transactions 2:14
  69:2
transcribed 3:25
transcript 72:4
transferred 18:21
transfers 18:13,15
  19:17 66:24
treatment 57:23
triax 9:1
tried 27:12 40:12
  42:15
true 72:4

trust 11:9 42:1,24
  43:17 44:13,24
  58:11,16,25 59:1
trust's 59:4
trustee 11:10 22:8
  58:12
trustees 17:23
try 20:10 41:20,21
  54:4
trying 40:20 49:6
  50:2,14
turn 27:9 68:19
tweed 8:8 24:2
two 11:3 28:8
  30:4 33:7 47:3,7
  52:15 54:21 55:6
  57:3 67:8 69:16

u

u.s. 1:23
ubl 58:19
ucc 3:13 16:3,24
  17:9,14 18:12
  19:6 20:25 21:21
  24:23 25:10 27:7
  27:16,24 28:21
  29:20 35:10 36:14
  57:11 60:8 65:22
  66:3,3,16 69:2,3,5
  69:12
ucc's 16:23 17:1
  22:15
ultimately 59:3
understand 38:12
  50:1,7 52:18 53:2
  53:11,22 54:22
  61:15
understanding
  60:10 69:22
understood 38:13
  39:22 43:16 63:15
undertake 19:6
  60:8

unduly 65:2
unencumbered
  15:17,18 17:17
  18:4 48:10
united 1:1,12
unorthodox 55:22
unsecured 3:17
  14:12 59:5
update 14:24
updated 22:15
updates 14:10
use 2:6
usually 32:7

v

valorem 41:15
  45:15 46:5
value 18:13,21,23
  49:17,22
vanilla 24:11
variance 16:22,25
  17:1 29:15 58:18
various 19:8,8
  31:5
vedder 10:15
vendor 29:21
  34:16,20 35:5,25
  36:3
vendor's 46:21
vendors 34:18,24
  35:17 41:5
vendors' 35:21
  36:24
veritext 72:20
version 32:14
vetting 65:11
vladimir 12:22
volunteered 67:20

w

waiting 22:25
waive 70:17
waived 53:4
waiver 25:20,23

[waivers - zylberberg]                                                                                                  Page 18

**waivers** 28:3
**walk** 47:16,18
**wall** 9:9
**want** 23:22 26:23
  29:7 30:2 34:24
  36:9 42:14 44:22
  46:25 47:7,14
  52:12 67:9
**wanted** 17:14
  21:21 28:2 43:24
  45:17 48:3 58:24
  59:23 60:23 63:14
**wants** 16:4 28:21
**wasn't** 24:10
**waterfall** 54:5
**way** 32:8,21 33:8
  35:18 48:17 49:9
  52:8 55:13 64:22
  64:23 66:12
**ways** 31:5
**we've** 41:9 49:5
  57:1,4,13 61:6,11
  65:22 69:6 70:7
**week** 66:20 67:8
**weeks** 47:4
**weil** 7:15 14:6
**weisgerber** 13:20
**weiss** 4:3 70:3
**wells** 11:2
**went** 35:18 47:4
  64:21
**west** 4:13 6:3
  31:17
**we'll** 19:21 21:15
  21:20 24:18 29:6
  29:24 34:3 40:10
**we're** 16:6 17:12
  19:10 20:5,6 21:9
  21:17 22:24 29:12
  29:19,22 31:21
  35:3 38:15
**we've** 15:12 20:2
  21:11,12,14 22:3

  25:2 27:12,12,22
  28:7,25 34:22
  35:2,5
**wharton** 4:3 70:3
**what's** 35:21
**white** 1:14
**wide** 65:8
**william** 12:11
**willing** 17:23
  47:11 48:15
**wilmington** 7:4
  11:9 58:11,16,25
  59:1,3
**winddown** 16:12
  22:19 27:20 64:12
**wish** 36:4 56:20
**withstanding**
  37:22
**woman** 67:23
**woodhull** 4:12
**words** 61:4 63:17
**work** 24:18 39:7
  40:15 45:4,10,11
  47:24 51:15 54:14
  66:10,15,19 67:13
  67:17 68:1,12
**worked** 39:25
  48:4
**working** 34:23
  35:3 53:14 66:2
  66:17
**worried** 52:1
  53:12
**wouldn't** 20:10

**x**

**x** 1:4,10

**y**

**yeah** 24:17 26:21
  26:25 27:4 30:5
  32:10 33:16,21
  34:2 37:2,20,24
  38:5,6 49:5 50:10
  51:21 52:18 63:7

  67:17
**yesterday** 15:19
**york** 1:2 4:6,21
  5:5,15 6:11 7:10
  7:18 8:4,11,19 9:3
  9:10,17 10:4,17
  11:13,19
**you're** 38:19
**you've** 38:4

**z**

**zabel** 5:12
**zachary** 12:25
  13:1
**zelina** 13:21
**zuber** 13:22
**zylberberg** 13:23