| | |
|---|---|
| Deborah J. Michelson, Esq.<br>MILLER GOLER FAEGES LAPINE LLP<br>1301 East 9th Street, Suite 2700<br>Cleveland, Ohio 44114-1835<br>Phone: (216) 696-3366<br>*Attorney for Creditor Arca Industrial (NJ), Inc.* | **Hearing Date and Time:**<br>November 20, 2019<br>at 10:00 a.m. (E.T.) |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                                                                    Chapter 11

SEARS HOLDING CORPORATION, *et al.*,                Case No. 18-23538 (RDD)

                                       Debtors.                 (Jointly Administered)
---------------------------------------------------------X


## ARCA INDUSTRIAL (NJ), INC.'S RESPONSE TO DEBTORS' TENTH OMNIBUS OBJECTION TO PROOFS OF CLAIM

Creditor Arca Industrial (NJ), Inc. ("Arca") hereby opposes the Debtors' Tenth Omnibus Objection to Proofs of Claims (to Reclassify Certain Claims),[1] requests that the Court overrule it, and responds as follows:

1.    As it pertains to Arca, Debtors' Tenth Omnibus Objection is conclusory, is unsupported, fails to defeat the *prima facie* validity of Arca's timely and well-supported proofs of claim, misapplies the law and clear language of section 503(b)(9) of the Bankruptcy Code, and miscalculates Arca's 503(b)(9) Administrative Priority amounts even using Debtors own improper calculation methodology.

2.    If the Court adopts Debtors' definition of the term "receipt" to mean the date that Arca delivered goods to Debtors' freight forwarder in Asia, then Arca's 503(b)(9) claims actually should be increased, not reduced.

---
[1] (Docket No. 5237; the "Tenth Omnibus Objection")

3. Arca's records reflect delivery of goods to Debtors' freight forwarder in Asia during the 20 days before Debtors' October 15, 2018 bankruptcy filing as follows:

| Date Delivered to Freight Forwarder | Customer PO | Customer Desc. | # of Pairs | Amount |
|---|---|---|---|---|
| 9/25/2018 | KMART D681R | 20213 KLINE 3 | 630 | $10,710.00 |
| 9/25/2018 | KMART D683Q | 20365 BENNING | 1596 | $22,583.40 |
| 9/25/2018 | KMART D688G | 20920 NEPTUNE | 792 | $6,296.40 |
| 9/25/2018 | KMART D681Q | 20210 KINGSLEY | 318 | $5,883.00 |
| 10/1/2018 | KMART D686Y | 30813 TYPER TAN | 396 | $5,900.40 |
| 10/1/2018 | KMART D686D | 30813 TYPER BLK | 1278 | $19,042.20 |
| 10/1/2018 | KMART D683R | 20365 BENNING | 2184 | $30,903.60 |
| 10/1/2018 | KMART D686F | 30813 TYPER GREY | 1140 | $16,986.00 |
| 10/4/2018 | KMART D686E | 30813 TYPER BLK | 1266 | $18,863.40 |
| 10/4/2018 | KMART D683R | 20365 BENNING | 1815 | $25,682.25 |
| 10/4/2018 | KMART D686G | 30813 TYPER GREY | 1266 | $18,863.40 |
| 10/4/2018 | KMART D686H | 30813 TYPER TAN | 1266 | $18,863.40 |
| 10/7/2018 | KMART D687A | 30821 WELLA | 1266 | $18,040.50 |
| | | | **TOTAL FOR DEBTOR KMART:** | **$218,617.95** |

| Date Delivered to Freight Forwarder | Customer PO | Customer Desc. | # of Pairs | Amount |
|---|---|---|---|---|
| 9/28/2018 | SEARS SK5177 | 28750 SILVY | 4500 | $52,875.00 |
| 9/28/2018 | SEARS SJ5179 | 28752 FLURRY BLK | 2244 | $35,455.20 |
| 9/28/2018 | SEARS SL5168 | 28753 FLURRY GREY | 1500 | $23,700.00 |
| 9/28/2018 | SEARS SK5164 | 28720 FIFI BLK | 3000 | $61,950.00 |
| 9/28/2018 | SEARS SJ5178 | 28721 FIFI BROWN | 2520 | $52,038.00 |
| 9/28/2018 | SEARS SH7077 | 98071 PAC BOOT | 5334 | $96,385.38 |
| | | | **TOTAL FOR DEBTOR SEARS:** | **$322,403.58** |

*See* Declaration of Jerry Huang attached hereto as Exhibit A.

4. Thus, under Debtors' definition of the term "received," Arca's 503(b)(9) claim against Debtor Kmart Corporation ("Debtor Kmart") should be increased from $190,557.75 to $218,617.95 and its claim against Debtor Sears, Roebuck and Co. ("Debtor Sears") should be increased from $66,186.90 to $322,403.58.

5. Thus, under no circumstances should Arca's administrative claim be reduced at this time, but rather Arca should be afforded full discovery on the issue of the freight forwarder's receipt of goods from Arca for delivery to Debtors within the twenty day period before the petition date pursuant to this Court's orders related to procedures for resolving administrative claim disputes.

**Background**

6. Debtor Kmart and Debtor Sears (collectively "Debtors") filed this Chapter 11 bankruptcy case on October 15, 2018.

7. Arca timely filed proof of claim no. 5167 against Debtor Kmart for goods provided in the total amount of $731,755.05. That claim amount consists of the following amounts: 503(b)(9) Administrative Priority amount of $190,557.75, Administrative Priority amount of $465,046.95; and General Unsecured amount of $76,150.35. *See* Exhibit B attached hereto.

8. Arca timely filed proof of claim no. 2957 against Debtor Sears for goods provided in the total amount of $534,795.48. That claim amount consists of the following amounts: 503(b)(9) Administrative Priority amount of $66,186.90, Administrative Priority amount of $439,028.58; and General Unsecured amount of $29,580.00. *See* Exhibit C attached hereto.

9. On September 26, 2019, Debtors filed their Tenth Omnibus Objection seeking—among other things—to reduce a portion of Arca's 503(b)(9) Administrative Priority claim against Debtor Kmart from $190,557.75 to $96,385.38, to reduce a portion of Arca's 503(b)(9) Administrative Priority claim against Debtor Sears from $66,186.90 to $58,521.60, and to reclassify the difference of each of those amounts as General Unsecured Claims.

3

**Law and Argument**

10.     There is no legitimate basis for reducing Arca's 503(b)(9) Administrative Priority claims and reclassifying those portions as General Unsecured Claims. Debtors have not met their initial burden of providing evidence to challenge Arca's properly submitted and supported proofs of claim. If this Court adopts Debtors' proposed definition of the term "received" to allow their conclusory objection, it would improperly create an unwise split of authority, go against this Court's very own method of interpreting bankruptcy code provisions, and undermine the goals that Congress sought to advance in adopting 503(b)(9) resulting in harm to debtors and creditors.

11.     Administrative Priority claims are claims that—pursuant to federal law—Congress determined should be entitled to priority in federal bankruptcy cases. The priority is a creature of federal law and a critical aspect to the Bankruptcy Code. See 11 U.S.C. §§ 507(a)(2), 503(b)(9).

12.     Section 503(b)(9) provides for the allowance of an Administrative Priority claim for the value of any goods "received" by the debtor within 20 days before the date of commencement of a case under [the Bankruptcy Code] in which the goods have been sold to the debtor in the ordinary course of such debtor's business. 11 U.S.C. § 503(b)(9).

13.     Pursuant to 11 U.S.C. 503(b)(9), any goods "received" by the debtors within twenty days prior to October 15, 2018 are to be accorded priority as an administrative expense.

14.     The Bankruptcy Code does not define the term "received" used in section 503(b)(9). Accordingly, it is incumbent on courts to discern Congress's intent in interpreting the term.

15. Although the ultimate burden of proof remains on the claimant, an objecting party—the Debtors here—must first produce sufficient evidence to overcome the presumption created by Fed. R. Bankr. P. 3001(f).

16. Arca has satisfied its burden of establishing entitlement to priority payment of the full amount of its Administrative Priority claim. Debtors have not satisfied their burden.

17. Debtors base their Tenth Omnibus Objection challenging portions of Arca's 503(b)(9) claims on an argument that the goods at issue were delivered by Arca from Asia through delivery to a "freight forwarder," that they were received by Debtors at the port of origin upon delivery to the "freight forwarder," that the Debtors received the goods then—rather than when Debtors obtained actual receipt from the transporter in the United States—and that claimed receipt by delivery to the freight forwarder should govern when the goods were "received" for purposes of calculating the 20-day window for 503(b)(9) Administrative Priority claims.

18. In pressing those positions, Debtors assert that the Court should ignore Third Circuit authority that directly analyzed the issue and rejected a similar argument as Debtors make here finding that actual receipt by the debtor is required, and should instead look to the international treaty The Convention on Contracts for the International Sale of Goods ("CISG") even though it admittedly does <u>not</u> directly define the word "received" and that treaty allows for the stoppage of goods prior to Debtors actual receipt. Debtors arguments fail for multiple reasons as more fully discussed below.

**Debtors have not Provided Admissible Evidence Sufficient to Rebut the *Prima Facie* Evidence of Arca's Claim and the Documents Attached Thereto.**

19. Pursuant to section 502(a) of the Bankruptcy Code, a filed proof of claim is deemed allowed unless a party in interest properly objects to it. See 11 U.S.C. § 502(a).

5

20. Bankruptcy Rule 3001(f) provides that a properly filed proof of claim is *prima facie* evidence of the validity and amount of the claim. In re Friedman, 184 B.R. 883, 887 (Bankr. N.D.N.Y. 1994), aff'd, 184 B.R. 890 (N.D.N.Y. 1995); In re The Medicine Shoppe, 210 B.R. 310, (Bankr. N.D. Ill. 1997) ("Rebuttable presumption of validity arises from properly filed claim.").

21. On objection, "[t]o overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." Sherman v. Novak (In re Reilly), 245 B.R. 768, 773 (2d Cir. BAP 2000) (*citing* In re Allegheny Int'l, Inc., 954 F.2d 167 (3d Cir. 1992)). A properly filed proof of claim provides some evidence as to the claim's validity and amount, and is "strong enough to carry over a mere formal objection, without more." Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035 (9th Cir. 2000) (*quoting* Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991)).

22. Debtors have the burden to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," In re Holm, 931 F.2d at 623, and a proof of claim "cannot be defeated by mere formal objection and the sworn proof is to be treated as some evidence even when it is denied." In re Minbatiwalla, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (*quoting* In re Sabre Shipping Corp., 299 F. Supp. 97, 99 (S.D.N.Y. 1969)).

23. If an objection refuting at least one of the claim's essential allegations is asserted, the claimant will then have the burden to demonstrate the validity of the claim to prove by a preponderance of the evidence that the claim should be allowed. *See* In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) aff'd, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (objecting party must produce "evidence equal in force to the prima facie case…."). However, "[i]f the

objector does not introduce[ ] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the validity and the amount of the claim." In re Minbatiwalla, 424 B.R. at 111 (internal citations omitted).

24. The entirety of the Debtors' objection rests on the unsupported statement of Debtors' counsel that Debtors "received" the goods more than twenty days before the petition date of October 15, 2019. (Docket No. 5237 at 18, ¶ 1.)

25. As part of the proofs of claims that Arca submitted, it included account summaries setting forth the date of Debtors' receipt–-all within 20 days of the petition date—as well as the supporting invoices attached hereto as Exhibit B and Exhibit C. Those items constitute *prima facie* evidence of the amount and validity of the Claim as well as Arca's entitlement to Administrative Priority status. The Debtors now, as the objecting party to the Claim, bear the initial burden of challenging such amounts, and have failed to sustain that burden.

26. Specifically, Debtors do not identify which goods were supposedly not received during the 20-day period, when those goods were actually received, or what goods Debtors records show were in fact received by them from Arca during the 20-day period.[2]

27. Debtors objection falls significantly short of the requirement to offer equivalent evidence as compared to what Arca offered to establish the *prima facie* validity of the Claim. *See* In re Minbatiwalla, 424 B.R. at 111 (Bankr. S.D.N.Y. 2010) (noting that a "mere formal objection" is insufficient to support a claim objection); In re Holm, 931 F.2d at 623.

28. Debtors' conclusory objection falls well short of being sufficient to shift the burden to Arca to further establish its claim.

---

[2] Debtors reference contracts between the parties, but failed to submit any such alleged contracts. Likewise, Debtors failed to provide any contracts between them and any freight forwarders.

**The Court Should Find that "Receipt" Requires Actual Physical Possession by the Debtor, Not Delivery to a Freight Forwarder.**

29.  This Court should rule that the term "receipt" under 503(b)(9) requires actual physical possession by the Debtors. Prior cases that directly analyzed the issue have, for very sound reasons, repeatedly applied that definition. For example, in the case In re R.F. Cunningham & Co., 2006 Bankr. LEXIS 3650 (Bankr. E.D.N.Y. Dec. 21, 2006), the United States Bankruptcy Court for the Eastern District of New York held:

> The focus of the Bankruptcy Code is upon the "receipt" of goods, and not "delivery." "Receipt" is defined as taking physical possession of goods. U.C.C. § 2-103(1)(c). Delivery to a common carrier does not constitute "receipt" by a buyer of goods.

Id. at *6.

30.  Similarly, the Third Circuit Court of Appeals recently held that "received" under 503(b)(9) means taking actual physical possession. In the case In re World Imports, Ltd., 862 F.3d 338 (3d Cir. 2017) ("In re World Imports III"), sellers shipped goods to the Debtor "free on board" through a common carrier, so that risk of loss or damage passed to the Debtor upon shipment. Although shipment was made within 20 days of the bankruptcy filing, the Debtor received the goods after the bankruptcy filing. The court held that "received" under 503(b)(9) requires physical possession because (a) the legal, dictionary, and UCC definitions of "received" require physical possession,[3] and (b) a previous Third Circuit decision, In re Marin Motor Oil, Inc., 740 F.2d 220, 224–25 (3d Cir. 1984), held that the definition of "received" in 546(c) is the same as the UCC "physical possession" definition, and "the interrelationship between 546(c) and 503(b)(9) is explicit in the Bankruptcy Code." Id.; *see also* In re SRC Liquidation, LLC, 2017 WL 2992718 (Bankr. D. Del. July 13, 2017) (relying on the same reasoning and holding that a vendor is not entitled to a section 503(b)(9) claim for the goods shipped directly to the Debtors'

---

[3] The UCC defines "receipt" with respect to goods as "taking physical possession of them" UCC § 2-103(1)(c).

8

customers because the Debtor never had actual physical or constructive possession of the goods); Jill B. Bienstock, *Section 503(b)(9) Claims – What Does "Receipt" Really Mean*, Bankruptcy & Restructuring Law, https://www.jdsupra.com/legalnews/section-503-b-9-claims-what-does-84101, July 17, 2017.

31. The Court in Ningbo Chenglu Paper Prod. Mfg. Co. v. Momenta, Inc., 2012 WL 3765171 (D.N.H. Aug. 29, 2012), arrived at the same conclusion after holding that congress intended for the definition of "received" in section 503(b)(9) to be consistent with "receipt" under section 546(c).

32. This Court itself has in the past looked to the UCC when defining Bankruptcy Code terms. *See*, *e.g.*, In the Matter of The Great Atlantic & Pacific Tea Company, Inc., Case No. 10-24549-rdd, Docket No. 4017, at 4-5 (Bankr. S.D.N.Y. Oct. 25, 2012) (looking to the UCC in connection with defining the term "goods" as used in Section 503(b)(9) of the Bankruptcy Code).

33. And very recently, the Bankruptcy Court for Connecticut looked to the UCC to define the term "receipt" in connection with a 503(b)(9) claim determining that it was the point where the debtor actually received physical possession or the point where the seller can no longer stop delivery resulting in a constructive actual possession by the debtor. In re O.W. Bunker Holding N. Am. Inc. 2019 Bankr. LEXIS 2728, at *12 (Bankr. Conn. Aug. 26, 2019.)[4]

34. The World Imports III and Ningbo Chenglu cases and the reasoning behind those decisions, as well as the reasoning behind this Court's reference to the UCC in interpreting other

---

[4] Debtors are not presently arguing that the freight forwarders are bailees of Debtors such that there was a constructive receipt of the goods. *See* Docket No. 5237 ¶ 41, 43. Debtors could never successfully do so because they have previously admitted in filings in this case that sellers such as Arca retrained the right to stop shipments before Debtors' actual receipt in the United States, which is consistent with CIGA Article 71. *See*, *e.g.*, Docket No. 14, ¶¶ 9, 19-20.

bankruptcy code provisions, is highly persuasive. In particular, there is a need for consistency in what the Court looks to when defining bankruptcy code provisions, and consistency should be maintained between the definition of "receipt" under section 546(c) and "received" under section 503(b)(9)—this Court has already held that "receipt" under section 546(c) means physical possession. *See*, *e.g.*, In re Flagstaff Foodservice Corp., 56 B.R. 910, 914 (Bankr. S.D.N.Y. 1986).

35. The World Imports III court considered the context within which Congress drafted section 503(b)(9) of the Bankruptcy Code—namely, the fact that Congress did not legislate exclusively against the backdrop of domestic vendor sales and the UCC when it enacted section 503(b)(9). Congress enacted section 503(b)(9) knowing that physical receipts were critical commercial terms in use in the United States and around the globe.

36. This Court should follow the Third Circuit and hold that actual receipt of goods by the debtors within twenty days prior to filing the bankruptcy petition should be accorded priority as an Administrative Priority and be paid in full.

**The CISG Does Not Support Debtors' Proposed Interpretation of the Term "Received" in 503(b)(9)**

37. As they must, Debtors admit that the CISG does not directly define the word "receive."

38. Nonetheless, in pressing their argument that the CISG indirectly supports a finding that "received" means delivery to a freight forwarder at the port of origin, Debtors ignore that Article 71 of the CISG provides that a vendor may prevent the handing over to the Debtor of goods delivered to a freight forwarder:

> (1) A party may suspend the performance of his obligations if, after the conclusion of the contract, it becomes apparent that the other party will not perform a substantial part of his obligations as a result of:

(a) a serious deficiency in his ability to perform or in his creditworthiness; or

(b) his conduct in preparing to perform or in performing the contract.

(2) *__If the seller has already dispatched the goods before the grounds described in the preceding paragraph become evident, he may prevent the handing over of the goods to the buyer even though the buyer holds a document which entitles him to obtain them__*. The present paragraph relates only to the rights in the goods as between the buyer and the seller.

(3) A party suspending performance, whether before or after dispatch of the goods, must immediately give notice of the suspension to the other party and must continue with performance if the other party provides adequate assurance of his performance.

(Emphasis added.)

39. Given that Arca retained the right to stop the goods in transit from being delivered to Debtors under Article 71 of the CISG, it would be an absurd result to define the word "received" under the Bankruptcy code to mean any point prior to actual receipt by Debtors in the United States when Arca's right to hold up the goods ceased.

### Even Applying Debtors' "Receipt" Definition, there is No Valid Basis for Reducing Arca's 503(B)(9) Administrative Priority Claims.

40. Under 11 USC 503(b)(9) the twenty day-time period would be September 25, 2018 to October 14, 2018 and any goods sold by Arca to the Debtors and received by the Debtors during that period should be accorded Administrative Priority and be paid in full.

41. As set forth in Paragraphs 3-5 above, if Debtors' definition of the term "received" is utilized, Arca's 503(b)(9) claim against Debtor Kmart Corporation ("Debtor Kmart") should be increased from $190,557.75 to $218,617.95 and its 503(b)(9) claim against Debtor Sears, Roebuck and Co. ("Debtor Sears") should be increased from $66,186.90 to $322,403.58.

42. This Court should reject Debtors' request to reduce Arca's 503(b)(9) claims, which is entirely unsupported with any evidentiary material whatsoever.

**CONCLUSION**

There is no basis for reducing Arca's 503(b)(9) Administrative Priority claims. Debtor has not properly set forth any valid objection to the claim. The Court should rule that "received" under section 503(b)(9) means actual physical possession by the Debtor, not delivery to a freight forwarder at the port of origin. Regardless, even if Debtors definition of the word "received" is applied, it would result in an increase in Arca's 503(b)(9) Administrative Priority claims, not a reduction of them. Thus, this Court should deny the Debtors' Tenth Omnibus Objection regarding Arca's claim no. 5167 and claim no. 2957.

Dated: Cleveland, Ohio.
October 23, 2019

                                              MILLER GOLER FAEGES LAPINE LLP

                                              By: */s/ Deborah J. Michelson*
                                                    Deborah J. Michelson, Esq.
                                                    1301 East 9th Street, Suite 2700
                                                    Cleveland, Ohio 44114-1835
                                                    Phone: (216) 696-3366
                                                    Michelson@MGFL-law.com

                                                   *Attorney for Creditor Arca Industrial (NJ), Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                                                    Chapter 11

SEARS HOLDING CORPORATION, *et al.*,           Case No. 18-23538 (RDD)

                           Debtors.                        (Jointly Administered)
-------------------------------------------------------X

      I, Deborah J. Michelson, an attorney admitted to practice in the State of New York, hereby certify that, on October 23, 2019, I caused true and complete copies of ARCA INDUSTRIAL (NJ), INC.'S RESPONSE TO DEBTORS' TENTH OMNIBUS OBJECTION TO PROOFS OF CLAIM to be served upon each of the parties listed below via pre-paid properly addressed U.S. mail:

The Honorable Robert D. Drain
United States Bankruptcy Judge
United States Bankruptcy Court, S.D.N.Y.
300 Quarropas Street, Room 248
White Plains, NY 10601

Sears Holdings Corporation
3333 Beverly Road
Hoffman Estates, IL 60179
Attn: Stephen Sitley

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
    Attn: Ray C. Schrock
        Jacqueline Marcus
        Garret A. Fail
        Sunny Singh

Skadden, Arps, Slate, Meagher & Flom LLP
Attorneys for Bank of America, N.A.
4 Times Square
New York, NY 10036
Attn: Paul D. Leake

Kelley Drye & Warren LLP
Attorneys for Computershare Trust Co., N.A.
101 Park Avenue
New York, NY 10178
Attn: Eric R. Wilson

Cleary Gottlieb Steen & Hamilton
Attorneys for JPP, LLC, JPP II, LLC, and ESL Investments, Inc.
One Liberty Plaza
New York, NY, 10006
Attn: Sean A. O'Neal

Office of United States Trustee
201 Varick Street, Suite 1006
New York, New York 10014
Attn: Paul Schwartzberg

Seyfarth Shaw LLP
Attorneys for Wilmington Trust, N.A.
620 Eighth Avenue
New York, NY 10018
Attn: Edward M. Fox

13

| | |
|---|---|
| Davis Polk & Wardell LLP<br>Attorneys for Citibank, N.A.<br>450 Lexington Avenue<br>New York, NY, 10017<br>Attn: Eli J. Vonnegut | Carter Ledyard & Milburn LLP<br>Attorneys for Bank of New York Mellon<br>Trust Co.<br>2 Wall Street<br>New York, NY 10005<br>Attn: James Gadsden |
| Locke Lord LLP<br>Attorneys for the Pension Benefit Guaranty Corp.<br>111 South Wacker Drive<br>Chicago, IL 60606<br>Attn: Aaron C. Smith | Akin Gump Strauss Hauer & Feld LLP<br>Attorneys for the Official Committee of<br>Unsecured Creditors<br>One Bryant Park<br>New York, NY 10036<br>Attn: Ira S. Dizengoff |

Dated: Cleveland, Ohio.
       October 1, 2019

                                    MILLER GOLER FAEGES LAPINE LLP

                                    By: */s/ Deborah J. Michelson*
                                         Deborah J. Michelson, Esq.
                                         1301 East 9th Street, Suite 2700
                                         Cleveland, Ohio 44114-1835
                                         Phone: (216) 696-3366
                                         Michelson@MGFL-law.com

                                         *Attorney for Creditor Arca Industrial (NJ), Inc.*