**Hearing Date and Time:  November 20, 2019 at 10:00 a.m. (Eastern Time)**

**Response Deadline:  October 23, 2019 at 4:00 p.m. (Eastern Time)**

STARFIELD & SMITH, P.C.
1300 Virginia Drive, Suite 325
Fort Washington, PA 19034
Telephone: (215) 542-7070
Facsimile: (215) 542-7073
Norman E. Greenspan
NGreenspan@StarfieldSmith.com

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |

------------------------------------------------------------

**RESPONSE IN OPPOSITION TO DEBTORS' TENTH OMNIBUS OBJECTION TO PROOFS OF CLAIM BY HAIN CAPITAL INVESTORS MASTER FUND, LTD. WITH REGARD TO CLAIM NO. 8878**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

Hain Capital Investors Master Fund, Ltd. ("Hain Capital"), by and through its undersigned counsel, hereby responds in opposition to the Debtors' Tenth Omnibus Objection to Proofs of Claim (to Reclassify Certain Claims) ("Tenth Omnibus Objection") with regard to the Administrative Claim filed by Hain Capital, Claim No. 8878, and avers in support hereof as follows:

## BACKGROUND

1. Rio Sul is a manufacturer of cotton and denim products. Its principal place of business is at Antiguo Camino a la Resurreccion 10610-A, Col. Santa Rosa, Puebla, C.P. 72228, Mexico.

2. Rio Sul was a supplier of jeans to Debtors for several years prior to the filing of the bankruptcy in this case. Rio Sul supplied jeans to the Debtors pursuant to purchase orders placed by Debtors with Rio Sul.

3. Debtors filed for bankruptcy on October 15, 2018.

4. At the time that Debtors filed for bankruptcy, Rio Sul was owed $1,978,319.72 by the Debtors. This amount remains unpaid.

5. On January 9, 2019, Rio Sul filed a claim in this bankruptcy case, Claim No. 7569, in the amount of $1,978,319.72, of which $447,350.52 was an administrative claim pursuant to 11 U.S.C. §503(b)(9), and $1,530,969.20 was a general unsecured claim.

6. Rio Sul subsequently sold and transferred its administrative claim to Hain Capital pursuant to an Assignment of Claim.

7. On February 26, 2019, Rio Sul amended and refiled its general unsecured claim as Claim No. 8877. The administrative claim on that was transferred to Hain Capital was filed at

2

Claim No. 8878. Claim No. 8878 is supported by invoices, bills of lading and other documents that establish the value of the goods, the common carriers used to pick-up and transport the goods from Rio Sul to Debtors, the dates that the goods were transported off of Rio Sul's premises by common carriers, and the dates that the common carriers arrived at the Debtors' warehouse in Wilmington, CA, where they were unloaded.

8. On September 26, 2019, Debtors filed Debtors' Tenth Omnibus Objection to Proofs of Claim (to Reclassify Certain Claims) ("Tenth Omnibus Objection"), ECF No. 5237, wherein Debtors seek to reclassify $373,976.92 of the subject administrative claim as a general unsecured claim. See, Ex. A, Ref # 33, to the Tenth Omnibus Objection.

9. Hain Capital hereby responds in opposition to the Tenth Omnibus Objection.

**THE PURCHASE, SHIPMENT AND DELIVERY OF GOODS SOLD BY RIO SUL TO DEBTORS**

10. Debtors purchased cotton based goods including jeans from Rio Sul for several years before the bankruptcy filing pursuant to purchase orders issued by Debtors.

11. There are four shipments of merchandise by Rio Sul to Debtors that are the subject of Claim No. 8878. They are identified on the following chart which is derived from various documents including invoices and bills of lading, and a similar summary chart contained in the Exhibits filed in support of Claim No. 8878:

| Rio Sul Invoice Number | Invoice Amount | SEARS P.O. # | Mexican Common Carrier and B/L Number | Dispatch date from Rio Sul | American Transport Container # | Delivery date to Debtors' Warehouse, Wilmington, CA |
|---|---|---|---|---|---|---|
| 23943-A | USD 122,204.16 | SR1979 | TRANSPORT BRAGO RF-042631 | Sep 18 2018 | 5000 | Sep 28 2018 |
| 23944-A | | SR1980 | | Sep 18 2018 | | Sep 28 2018 |
| 23945-A | USD 53,741.76 | ZC48X | TRANSPORT GARVY MEX-164025 | Sep 18 2018 | T001 | Sep 27 2018 |
| 23946-A | | ZC48W | | Sep 18 2018 | | Sep 27 2018 |
| 24001-A | USD 198,031.00 | SR2019 | TRANSPORT TRATA M15954 | Sep 25 2018 | 532010 | Oct 01 2018 |
| 24002-A | | SR2020 | | Sep 25 2018 | | Oct 01 2018 |
| 24003-A | | SS2026 | | Sep 25 2018 | | Oct 01 2018 |
| 24004-A | | SR1990 | | Sep 25 2018 | | Oct 01 2018 |
| 24005-A | USD 73,373.60 | ZC48Y | TRANSPORT BRAGO RF-042684 | Sep 25 2018 | 171T | Oct 01 2018 |
| 24006-A | | ZC48Q | | Sep 25 2018 | | Oct 01 2018 |
| 24013-A | | ZC48Z | | Sep 25 2018 | | Oct 01 2018 |

12. The documents that were filed in support of Claim No. 8878 establish that two shipments of jeans with a value of $175,945.92 left Rio Sul's place of business on September 18, 2018, on trucks operated by two different Mexican common carriers. These goods were then transported by the Mexican common carriers to the Mexican border near Laredo, Texas. There, they were unloaded from the Mexican common carriers and re-loaded onto common carriers licensed to carry goods in the United States. These common carriers then transported the goods to Debtors' warehouse in Wilmington, California, where the goods were unloaded on September 27 and 28, 2018. The value of these goods are included as part of Claim No. 8878.

13. Debtors seek to reclassify the total value of these two shipments as general unsecured claims arguing that these goods were "received" by the Debtors when they left Rio

4

Sul's place of business in Puebla, Mexico, on common carriers, on September 18, 2018, and therefore not "received" within the 20 day period before bankruptcy required by Bankruptcy Code § 503(b)(9).  However, Debtors did not "possess" these goods, and therefore did not "receive" these goods, until they were unloaded from the common carrier at Debtors' warehouse on September 27 and 28, 2018, well within the 20 day period allowed for an administrative claim by the Bankruptcy Code § 503(b)(9).  *See*, *Haining Wansheng Soa Co., Ltd. v. World Imports, Ltd., (In re World Imports)*, 862 F. 3d 338 (3d Cir. 2017).

14.     Two additional shipments of jeans with a value of $271,404.60 left Rio Sul's place of business on September 25, 2018, on trucks operated by two different Mexican common carriers.  These goods were then transported by the Mexican common carriers to the Mexican border near Laredo, Texas, where they were unloaded from the Mexican common carriers and re-loaded onto common carriers licensed to carry goods in the United States.  These common carriers then transported the goods to Debtors' warehouse in Wilmington, California, where the goods were unloaded on October 1, 2018.   The value of these goods are included as part of Claim No. 8878.

15.     By their Tenth Omnibus Objection, Debtors seek to reclassify the value of one of these two shipments in the amount of $198,031.00.  It is not clear from the Tenth Omnibus Objection the reason for the objection to this shipment being an administrative claim.  It may be that because the bill of lading for this shipment states that the transporter's truck arrived at Rio Sul on September 24, 2018.  However, the bill of lading also states that at the instruction of the transport company the truck did not leave Rio Sul's place of business in Puebla, Mexico, until September 25, 2018, at 9:10 A.M.  Debtors did not obtain possession of these goods, and therefore did not "receive" these goods, until they were unloaded from the common carrier at

5

Debtors' warehouse on October 1, 2018, within the 20 day period allowed for an administrative claim by the Bankruptcy Code, 11 U.S.C. § 503(b)(9).

16. Debtors do not object to the portion of the Claim that is based on the shipment of $73,373.60 worth of goods that were loaded onto a common carrier and left Rio Sul's premises on September 25, 2018, apparently conceding that these goods were received by Debtors within 20 days of the bankruptcy filing.

17. Claim No. 8878 was timely filed and included documents that establish that the goods subject to the Claim were sold, delivered, and received in the ordinary course of business within twenty (20) days prior to the filing of Debtors' bankruptcy petition. The filed Section 503(b)(9) Claim contained a statement of account, invoices, shipping orders, purchase orders, bills of lading and related documents.

18. Once a claim is filed, the burden shifts to the debtor to overcome the claim's *prima facie* evidence of validity. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. The burden then shifts to the claimant *if the objector produces evidence equal in force to the prima facie case* … which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.") (emphasis added); *In re Adelphia Communs. Corp.*, Case No. 02-41729, 2007 WL 601452, *5 (Bankr. S.D.N.Y. Feb. 20, 2007) ("Because a properly filed proof of claim is deemed allowed until objected to, such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's prima facie case."); *In re DJK Residential LLC*, 416 B.R. 100, 104 (Bankr. S.D.N.Y. 2009) (holding that the burden of proof rests with the objecting party until "the objector produces evidence equal in force to the prima facie

6

case … which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.") (citation omitted). Only when sufficient evidence is produced to negate the *prima facie* validity of a properly filed claim does the burden shift back to the creditor to establish, by a preponderance of the evidence, that the claim is valid. *In re Oneida Ltd.*, 400 B.R. at 389; *In re DJK Residential LLC*, 416 B.R. at 104.

### GOODS BOTH SHIPPED BY RIO SUL AND RECEIVED BY DEBTORS WITHIN 20 DAYS OF THE BANKRUPTCY FILING ARE NOT THE PROPER SUBJECT OF DEBTORS' TENTH OMNIBUS OBJECTION

19. Bankruptcy Code §503(b)(9) provides for the allowance of an administrative expense claim for "the value of any goods received by the debtor within 20 days before the date of commencement of a [bankruptcy] case…."

20. Debtors object to the portion of Claim No., 8878, that classifies the shipment of $198,031.00 of jeans from Rio Sul on September 25, 2018, as an administrative claim.

21. The only basis for Debtors' objection to this shipment being an administrative claim is that they were not "received" by the Debtors within 20 days before the date of commencement of this bankruptcy case.

22. The shipment of $198,031.00 of jeans left Rio Sul's place of business on September 25, 2018, which is in fact within the 20 day period before the date of the commencement of this bankruptcy case on October 15, 2018.

23. In their Tenth Omnibus Objection, Debtors argue that they "received" merchandise on the date of shipment by the vendor, and not the date on which Debtors took possession of the goods at their locations in the United States.

24. Assuming *arguendo* that Debtors are correct (which they are not), even by their own definition of "received" as used in Bankruptcy Code § 503(b)(9), the $198,031.00 of

7

merchandise that is a subject of Claim No. 8878 was "received" by the Debtors within 20 days of the beginning of this bankruptcy case.

25. Because these goods were shipped within the 20 day period permitted by the Bankruptcy Code, even under Debtors' interpretation of what constitutes "received" under Bankruptcy Code § 503(b)(9), these goods are properly classified as an administrative expense. Debtors" Objection should therefore be overruled with regard to this shipment of goods.

**GOODS ARE "RECEIVED" PURSUANT TO BANKRUPTCY CODE § 503(b)(9), WHEN THE DEBTOR OBTAINS POSSESSION OF THE GOODS, AND NOT THE DATE OF RECEIPT OF THE GOODS BY A COMMON CARRIER AT THE POINT OF ORIGIN**

26. With regard to the shipments of goods that were transported from Rio Sul's place of business by Mexican common carrier before the beginning of the 20 day pre-bankruptcy period, and delivered to Debtors within the 20 day pre-bankruptcy period, the issue is: When were the goods "received" by the Debtors as that term is used in §503(b)(9) of the Bankruptcy Code?

27. Debtors argue that the goods were received by Debtors at the original place of shipment because they were shipped FOB Port of Origin.

28. Hain Capital claims that Debtors did not receive the goods until they were in possession of the goods, and that Debtors did not come into possession of the goods until they were delivered to the Debtors' warehouse in Wilmington, California.

29. This issue was addressed by the United States Court of Appeals for the Third Circuit in its comprehensive, thoughtful and well reasoned opinion in *In re World Imps., Ltd.*, 862 F.3d 338 (3d Cir. 2017). In *In re World Imports*, the goods at issue were shipped from the manufacturers' places of business in China by common carrier more than 20 days before the buyer, World Imports, filed for bankruptcy. The goods were delivered to ports in China where

8

they were loaded onto ships and then transported to the United States and unloaded. The goods were then transported by common carrier from the delivery dock to World Imports. Less than 20 days before the goods were delivered to World Imports, World Imports filed for bankruptcy. The sellers filed Motions for Allowance and Payment of Administrative Expense Claims under 11 U.S.C. § 503(b)(9), which allows such claims if the vendor sold goods to the debtor that "were received by the debtor within twenty days [before the bankruptcy] filing." The Third Circuit described the "dispositive question" as whether World Imports received the goods within 20 days prior to the bankruptcy filing. *In re World Imports*, at 341.

> At issue in this appeal is the definition of the term "received" as used in 11 U.S.C. § 503(b)(9). If World Imports received the goods when they were loaded onto the common carrier in China, then Appellants' claims for administrative priority fail. But if the goods were received only when World Imports took physical possession of them, then Appellants' claims are entitled to "the highest priority." **Based on the ordinary meaning of "received," the legislative context of the Bankruptcy Code, and persuasive decisions finding that Congress meant to use the UCC definitions for this particular amendment to the Bankruptcy Code, we hold that goods are "received" when the debtor or its agent takes physical possession of them.** (Citations omitted).

*Id*., at 341-342. (Emphasis added).

> [W]e now hold that receipt as used in 11 U.S.C. § 503(b)(9) requires physical possession by the buyer or his agent.

*Id.,* at 344.

30. Additionally, the Third Circuit held that:

> While actual possession by an agent on behalf of a buyer constitutes constructive receipt, our caselaw is clear that common carriers do not qualify as agents. When a buyer "arrange[s] for a commercial barge operated by a common carrier to pick up the" goods from the seller… the carrier does not act as an agent for purposes of receipt. (Citations omitted).

*Id*., at 345.

31. Hain Capital relies on the opinion in *In re World Imports* in support of its

9

position that the goods that are the subject of Claim No. 8878 were received by Debtors when Debtors first possessed the goods after they were unloaded from a common carrier at Debtors' warehouse in California.

32. Since *In re World Imports*, every court that has addressed this issue has agreed with and applied the definition of "received" consistent with the *In re World Imports* decision. *See*, *In re ADI Liquidation, Inc.*, 2019 WL 211528 (D. Del. 2019); *In re O.W. Bunker Holdings N. Am. Inc.*, No. 14-51720, 2019 WL 4025315 (Bankr. D. Conn. Aug. 26, 2019); *In re VPH Pharmacy*, 578 B.R. 776 (Bankr. E.D. Mi., December 8, 2017); *In re SRC Liquidation, LLC*, 573 B.R. 537 (Bankr. D. Del. July 13, 2017).

33. As did the Third Circuit in *In re World Imports*, this Court has relied on the UCC when defining Bankruptcy Code terms. *See*, *e.g.*, *In the Matter of The Great Atlantic & Pacific Tea Company, Inc.*, Case No. 10-24549-rdd, Docket No. 4017, at 4-5 (Bankr. S.D.N.Y. Oct. 25, 2012).

34. Debtors argue that the *In re World Imports* decision is not persuasive, despite the fact that every single court that has addressed this issue since the decision in *In re World Imports* has agreed with the decision. Debtors do not cite a single case that criticizes the analysis or conclusion of the Third Circuit in *In re World Imports*.

35. As Debtors concede, should this Court apply the holdings of *In re World Imports* to Claim No. 8878, Debtors' objection to this Claim should be overruled.

36. Undersigned counsel presently has the authority to settle or otherwise resolve the Claim on Claimant's behalf, with Claimant's knowledge and consent.

WHEREFORE, for the reasons stated in this Response in opposition to the Tenth Omnibus Objection, Debtors objection to Claim No. 8878 should be overruled.

Dated:  October 23, 2019

*Norman E. Greenspan*
Starfield & Smith, P.C.
1300 Virginia Drive, Suite 325
Fort Washington, PA  19034
Email address:
NGreenspan@starfieldsmith.com

Counsel for Hain Capital

**UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

| | | |
|---|---|---|
| **In re** | : | Chapter 11 |
| | : | |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------

## CERTIFICATE OF SERVICE

It is hereby certified that the Response in Opposition to Debtors' Tenth Omnibus Objection to Proofs of Claim by Hain Capital Investors Master Fund, Ltd. With Regard to Claim No. 8878 was served on Weil, Gotschal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn. Ray C. Schrock, Esq., Jacqueline Marcus, Esq., Garrett A. Fail, Esq., and Sunny Singh, Esq.), attorneys for the Debtors, and Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Philip C. Dublin, Esq., Ira Dizengoff, Esq., and Sara Lynne Barauner, Esq.) attorneys for the Official Committee of Unsecured Creditors, by electronic mail through the Bankruptcy Court's ECF System.

Dated: October 23, 2019

*/s/ Norman E. Greenspan*
NORMAN E. GREENSPAN
Starfield & Smith, P.C.
1300 Virginia Drive, Suite 325
Fort Washington, PA  19034
(215) 542-7070
NGreenspan@starfieldsmith.com