CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas, 30th Floor
New York, New York 10020-1708
Telephone: (212) 655-6000
Facsimile: (212) 655-2538
Email: joonhong@chapman.com
Joon P. Hong

*Attorneys for E-Land Apparel Ltd and*
*Thanh Cong Textile Garment Investment Trading Joint Stock Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
:
In re:                                                                      :    Chapter 11
:
SEARS HOLDINGS CORPORATION, *et al.*,        :    Case No. 18-23538 (RDD)
:
Debtors.[1]                                    :    (Jointly Administered)
:
------------------------------------------------------------X

**RESPONSE OF E-LAND APPAREL LTD AND THANH CONG TEXTILE GARMENT INVESTMENT TRADING JOINT STOCK COMPANY TO THE DEBTORS' TENTH OMNIBUS OBJECTION TO PROOFS OF CLAIM**
**(TO RECLASSIFY CERTAIN CLAIMS)**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); KmartCorporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp.(0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.). (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

E-Land Apparel Ltd (*"E-Land"*) and Thanh Cong Textile Garment Investment Trading Joint Stock Company (*"TCTEX"*), by and through their counsel, hereby respond to the Debtors' Tenth Omnibus Objection to Proofs of Claim (To Reclassify Certain Claims) (the *"Objection"*), and in support thereof, respectfully state as follows:[2]

## PRELIMINARY STATEMENT

1. The Objection misinterprets the plain meaning of the term "received" as it is used in section 503(b)(9) of title 11 of the United States Code (the *"Bankruptcy Code"*), and ignores the weight of authority which has held that receipt requires physical possession by the Debtors. In support of the Objection, the Debtors rely on an incorrectly decided bankruptcy court case that was overturned by the Third Circuit Court of Appeals. The majority of courts that have addressed the issue of when "receipt" occurs for purposes of section 503(b)(9) of the Bankruptcy Code, including other bankruptcy courts in the Second Circuit, have held that "receipt" occurs when a buyer takes physical possession of goods, not when goods are delivered by a seller to a port of origin to be transported to the buyer by a common carrier.

## BACKGROUND

2. On October 15, 2018 (the *"Petition Date"*), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3. On October 23, 2018, TCTEX timely filed (i) a proof of claim (Claim No. 1946) against Debtor, Sears, Roebuck and Co. (*"Sears"*), which asserted that a portion of the claim in the amount of $996,621.82 was entitled to administrative expense under section 503(b)(9) of the Bankruptcy Code for goods received by Sears within 20 days of the Petition Date, and (ii) a proof of claim (Claim No. 1890, and together with Claim No. 1946, the *"TCTEX Claims"*) against Debtor, Kmart Corporation (*"Kmart"*), which asserted that a portion of the claim in the amount of $527,952.57 was entitled to administrative expense for goods received by Kmart

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Objection.

within within 20 days of the Petition Date. Copies of Claim No. 1946 and Claim No. 1890 are attached hereto as Exhibits A and B, respectively.

4. On October 24, 2018, E-Land timely filed (i) a proof of claim (Claim No. 1765) against Sears asserting $162,269.10 in administrative expense claim for goods received by Sears within within 20 days of the Petition Date, and (ii) a proof of claim (Claim No. 2048, and together with Claim No. 1765, the "*E-Land Claims*") against Kmart asserting $69,690.70 in administrative expense claim for goods received by Kmart within within 20 days of the Petition Date. Copies of Claim No. 1765 and Claim No. 2048 are attached hereto as Exhibits C and D, respectively

5. In the Objection, the Debtors seek to reclassify portions of the TCTEX Claims and the E-Land Claims asserting administrative expense priority as general unsecured claims because the Debtors assert that the goods they relate to were "received" by the Debtors more than 20 days before the Petition Date.[3]

## ARGUMENT

**A.    Requirements for Administrative Expense Under Section 503(b)(9)**

6. Administrative expense claims under section 503(b)(9) of the Bankruptcy Code are allowed if: (a) a vendor sold goods to the debtor; (b) the goods were received by the debtor within 20 days before the bankruptcy filing; and (c) the goods were sold to the debtor in the ordinary course of business. 11. U.S.C. § 503(b)(9).

7. The Debtors do not dispute the fact that TCTEX and E-Land sold goods to the Debtors in the ordinary course of business. The only objection raised by the Debtors, and the only disputed issue in the Objection, is whether the goods were "received" by the Debtors within 20 days before the Petition Date.

---

[3] The Debtors provide no calculation or back-up information regarding how they determined which amounts of the asserted administrative claims should be reclassified as general unsecured claims and which amounts should survive as administrative expense claims.

B.    "Received" Means Physical Possession by the Debtors

8.    Although the term "received" is not defined in the Bankruptcy Code, a majority of courts interpreting section 503(b)(9) have examined its history and its relationship with section 546(c), which governs reclamation, and have concluded that the terms used in section 503(b)(9) – including "received" – should be given the same meaning they have in section 546(c). *In re World Imports, Ltd.*, 862 F.3d 338, 346 (3d Cir. 2017) ("*World Imports III*"); *In re Wezbra Dairy, LLC*, 493 B.R. 768, 770 (Bankr. N.D. Ind. 2013); *In re Momenta, Inc.*, 455 B.R. 353, 357-58 (Bankr. D.N.H. 2011), *aff'd Ningbo Chenglu Paper Products Mfg. Co., Ltd. V. Momenta, Inc.* 2012 WL 3765171 (D.N.H. 2012); *In re Circuit City Stores, Inc.*, 432 B.R. 225, 229 (Bankr. E.D. Va. 2010); *In re VPH Pharmacy, Inc.*, 578 B.R. 776, 780 (Bankr. E.D. Mich. 2017); *In re SRC Liquidation, LLC* 573 B.R. 537, 542 (Bankr. D. Del. 2017); *In re O.W. Bunker Holding North America Inc.*, 2019 WL 4025315, at *9 (Bankr. D. Conn., Aug. 26, 2019).

9.    These courts have noted that (a) both section 503(b)(9) and the amendments to section 546(c) were enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("*BAPCPA*") to enhance certain types of reclamation claims, (b) that the section of BAPCPA that created section 503(b)(9) was titled "Reclamation" and was the same section that amended section 546(c), and (c) that section 546(c) explicitly references section 503(b)(9) as an alternative remedy to the right of reclamation. *See World Imports III*, 862 F.3d at 342-43*; Circuit City*, 432 B.R. at 229; *Momenta*, 455 B.R. at 357; *SRC Liquidation* 573 B.R. at 541. Accordingly, the words "received" in both section 503(b)(9) and 546(c) are related and entitled to identical interpretation.[4]

10.    Courts interpreting "receipt" in section 546(c) have consistently looked to the definition of "receipt" as stated in the Uniform Commercial Code ("*UCC*"). *In re Marin Motor*

---

[4] Even the Bankruptcy Court in *In re World Imports, Ltd.*, 511 B.R. 738 (Bankr. E.D. Pa. 2014), the bankruptcy case relied upon by the Debtors for their argument regarding the meaning of the term "received," acknowledged that section 503(b)(9) "is intended to work in conjunction with § 546(c) for sellers who have valid reclamation claims." *Id.* at 740.

*Oil, Inc*. 740 F.2d 220, 223 (3d Cir. 1984) (section 546(c) was adopted by Congress in the Bankruptcy Reform Act of 1978 in order to resolve the question of whether the right of reclamation under section 2-702 of the UCC applies where the debtor files for bankruptcy); *World Imports III*, 862 F.3d at 343; *In re R.F. Cunningham & Co.*, No. 805-84105-511, 2006 WL 3791329, at *2 (Bankr. E.D.N.Y. Dec. 21, 2006); *Circuit City*, 432 B.R. at 228; *Momenta*, 455 B.R. at 358; *SRC Liquidation*, 573 B.R. at 540.

11. The term "received" is not defined in the UCC, but "receipt" is, and it has been defined as "taking physical possession" of the goods. UCC § 2-103(1)(c). Possession is deemed to occur when a seller can no longer stop delivery and is left only with the remedy of reclamation; accordingly, the key to determining when goods are received is not title, but possession (whether actual or through an agent). *Wezbra Dairy*, 493 B.R. at 770-71; *SRC Liquidation*, 573 B.R. at 542 (UCC does not rely on the concept of title for purposes of establishing rights of buyer and seller; possession is the key).

12. Given the interrelationship between section 546(c) and 503(b)(9), and given the application of the terms used in the UCC to apply to the terms used in section 546(c), it follows that the the UCC definition for "receipt" should also apply to section 503(b)(9). *World Imports III*, 862 F.2d at 343-44; *O.W. Bunker*, 2019 WL 4025315, at *9 (post-BAPCPA courts have looked to *Marin* to conclude that "receipt" means the same thing in both sections 503(b)(9) and 546(c)); *Circuit City*, 432 B.R. at 229 (as "receipt" in Article 2 of the UCC and section 546(c) is defined as taking physical possession, "received" for purposes of section 503(b)(9) means having taken into physical possession).[5]

**C.  Authority Relied On By Debtors was Incorrectly Decided and has been Overturned**

13. The Debtors argue that receipt of the goods for purposes of section 503(b)(9) occurred when the goods were delivered to the port of origin by vendors for delivery to the

---

[5] Courts have also found this definition to be consistent with the definition of "receipt" in ordinary and common usage. *See World Imports III*, 862 F.3d at 342; *Circuit City*, 432 B.R. at 229.

- 5 -

Debtors.  The sole authority that the Debtors rely on in support of this assertion is *In re World Imports, Ltd.*, 511 B.R. 738 (Bankr. E.D. Pa. 2014) ("*World Imports I*"); *aff'd In re World Imports, Ltd.*, 549 B.R. 820 (E.D. Pa 2016) ("*World Imports II*"); *rev'd In re World Imports, Ltd.*, 862 F.3d 338 (3d Cir. 2017).[6]

14.    On further appeal, however, the Third Circuit Court of Appeals, after careful review and analysis the history and statutory provisions of section 503(b)(9), disagreed with the reasoning and analysis in *World Imports I* and *World Imports II* and overturned the earlier decisions.

15.    Although the Bankruptcy Court in *World Imports I* acknowledged that the term "received" is not defined in the Bankruptcy Code, it looked to the Convention on Contracts for the International Sale of Goods ("*CISG*") for guidance rather than to the UCC.[7]

16.    But as with the Bankruptcy Code, the CISG itself does not define the term "received".  The Bankruptcy Court in *World Imports I* then looked to international commercial terms ("*Incoterms*"), which are incorporated into the CISG, for further guidance, and even though the Incoterms similarly do not define "received", the Bankruptcy Court found it helpful that the Incoterm governing "FOB" contracts specified that the risk of loss of or damages to goods passed to the buyer when the seller delivers the goods to a common carrier's vessel at the port of origin.  Based on this description of "FOB", the Bankruptcy Court in *World Imports I*

---

[6] The District Court in *World Imports II* essentially adopted the reasoning of the Bankruptcy Court's decision in *World Imports I* in affirming the Bankruptcy Court's decision.

[7] As a preliminary matter, the Bankruptcy Court in *World Imports I* first noted that the U.S. (where the debtor was located) and China (where the sellers were located) were both signatories to the CISG.  Vietnam, where TCTEX is located, is a signatory to the CISG; but India, where E-Land is located, is not a signatory to the CISG.  *See https://treaties.un.org/Pages/ViewDetails.aspx?src=TREATY&mtdsg_no=X-10&chapter=10&clang=_en*.
Accordingly, to the extent the decision in *World Imports I* relies upon the seller's country being a signatory to the CISG, the reasoning in *World Imports I* may not be applicable to E-Land since India is not a signatory to the CISG.

then conflated "delivery" with "receipt" and incorrectly found that "[o]nce delivered, the goods are perforce constructively received by the Debtor." *World Imports I*, 511 B.R. at 745.[8]

17. Contrary to the conclusion reached in *World Imports I*, however, constructive possession by a buyer cannot occur upon delivery to a common carrier because common carriers are not agents of a buyer. *See World Imports III*, 862 F.3d at 344 (common carriers are not agents and constructive receipt does not include "FOB delivery" to a common carrier); *O.W. Bunker*, 2019 WL 4025315, at *9 (a common carrier does not qualify as an agent); *SRC Liquidation*, 573 B.R. at 542 (finding that UPS, as a carrier, does not qualify as an agent of buyer).

18. As the Third Circuit Court of Appeals has held, there is no support in the Bankruptcy Code or the legislative history behind section 503(b)(9) or in common law for the idea that a buyer receives goods (constructively or otherwise) when they are delivered to a common carrier, even if title and risk of loss pass to the buyer at that time. *World Imports III*, 862 F.3d at 346.

### D.    Debtors' Remaining Arguments Are Not Persuasive

19. The Debtors also argue that using the date of receipt at the port of origin, rather than the date of physical possession by the Debtors, is consistent with the intent of the Bankruptcy Code's priority scheme because it would encourage vendors to conduct business with a debtor. This assertion, however, ignores the reality that if "receipt" was interpreted in this manner for purposes of determining administrative expense under section 503(b)(9), then vendors who had delivered goods to a port of origin more than 20 days before the Petition Date would seek to exercise their right to stop goods in transit. *See World Imports III*, 862 F.3d at 345 (a seller has the right to stop delivery of goods while they are in possession of a common

---

[8] The cases cited by the Bankruptcy Court in *World Imports I* in support of this conclusion, however, do not support this conclusion; rather, the cited cases all stand for the opposite proposition – that receipt means physical possession of the goods by the debtor or its agent. *See World Imports I*, 511 B.R. at 745.

carrier and receipt of goods does not occur until after the seller's ability to stop delivery ends). Accordingly, rather than encouraging vendors to conduct business with a debtor, such an interpretation of "receipt" would likely result in shipment of goods being stopped by the sellers, thereby causing greater disruption to a debtor's business.

20. The Debtors' arguments that this Court should not follow *World Imports III* are not persuasive. The Third Circuit Court of Appeals noted that the Bankruptcy Code itself provided the relevant substantive law in the case and that there was no reason to look to the CISG and Incoterms for defining "received" in section 503(b)(9) of the Bankruptcy Code. *World Imports III*, 862 F.3d at 345 n.4; *see also*, *Circuit City*, 432 B.R. at 230 (holding that the definition of "received" means "having taken into physical possession," and that this definition should be applied as the federal definition of the term "received" for purposes of interpreting section 503(b)(9) of the Bankruptcy Code).

21. The Debtors also incorrectly argue that the distinction between sections 546(c) and 503(b)(9) requires that the same term "received" that is found in both sections should be interpreted differently. Contrary to what the Debtors argue, and as discussed above in Section B, sections 546(c) and 503(b)(9) have consistently been linked together. *See SRC Liquidation*, 573 B.R. at 541 (despite the different remedies provided under sections 546(c) and 503(b)(9), the word "received" in both provisions should and does hold the same meaning); *O.W. Bunker*, 2019 WL 4025315, at *9 ("receipt" means the same thing in both sections 503(b)(9) and 546(c)); *Ningbo Chenglu*, 2012 WL 3765171, at *4 (it appears that Congress intended that the term "received" in section 503(b)(9) should be construed consistently with the reclamation section of Bankruptcy Code in section 546(c)).

22. The Debtors also argue that the *World Imports III* court did not consider the statutory interpretation and policy arguments related to the definition of "received" for purposes of section 503(b)(9) or the context within which Congress drafted section 503(b)(9). As discussed previously, the *World Imports III* court did consider both the statutory interpretation of section 503(b)(9) and the context within which this section was enacted as part of BAPCPA.

With respect to policy arguments, the issue before the Third Circuit Court of Appeals was purely a legal one, not a policy issue. In fact, neither of the courts below in *World Imports I* or *World Imports II* addressed any policy issues related to 503(b)(9).

## CONCLUSION

For the reasons stated above, the Debtors' Objection should be denied as it relates to TCTEX's Claim Numbers 1890 and 1946 and E-Land's Claim Numbers 1765 and 2048, and the Court should grant TCTEX and E-Land such other and further relief as the Court deems just and proper.

DATED:   October 23, 2019
         New York, New York

CHAPMAN AND CUTLER LLP

By: /s/ Joon P. Hong
Joon P. Hong
1270 Avenue of the Americas, 30th Floor
New York, New York 10020-1708
T: (212) 655-6000
F: (212) 655-2538
Email: joonhong@chapman.com

*Attorneys for E-Land Apparel Ltd and Thanh Cong Textile Garment Investment Trading Joint Stock Company*