DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200
David H. Wander, Esq. (dhw@dhclegal.com)
Brian Kochisarli, Esq. (gk@dhclegal.com)
*Attorneys for Orient Craft Ltd.*

**Hearing Date and Time:**
November 20, 2019 at 10:00 am

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

SEARS HOLDING CORPORATION, *et al.*,

        Debtor.
-------------------------------------------------------------X

Chapter 11

Case No. 18-23538 (RDD)

(Jointly Administered)

### DECLARATION BY DAVID H. WANDER, ESQ. IN SUPPORT OF ORIENT CRAFT LTD'S (I) OPPOSITION TO THE DEBTORS' TENTH OMNIBUS OBJECTION TO CLAIMS AND THE OBJECTION TO CLAIM NOS. 1135 AND 1142 FILED BY ORIENT CRAFT LTD AS AN ADMINISTRATIVE CLAIM UNDER § 503(b)(9) OF THE BANKRUPTCY CODE, AND (II) REQUEST FOR DISCOVERY

DAVID H. WANDER, declares under 28 U.S.C. §1746:

1.    I am counsel for Orient Craft Ltd ("Orient Craft")and I submit this declaration in Orient Craft's (i) opposition to the Debtors' tenth omnibus objection to claims and the objection to claim nos. 1135 and 1142 filed by Orient Craft, as administrative claims, under § 503(b)(9) of the Bankruptcy Code, and (ii) request for discovery.

2.    The sole basis for the Debtors' objection to Orient Craft's administrative claims is their argument that Sears and Kmart received the goods, in India, from where they were shipped, more than 20-days before the commencement of this case on October 15, 2018.

3.    However, upon information and belief, the Debtors took the opposite position, when this case was filed and before the Debtors were concerned about administrative insolvency.

669368v.1

Specifically, the Debtors considered the delivery of goods in the United States, from foreign vendors to Sears and Kmart, to be the dates the Debtors "received" those goods.

4. Annexed as **Exhibit A** is the Motion of Debtors For Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business [Doc 14] (the "Shipping Motion").

5. In the Shipping Motion, the Debtors sought to "(iii) grant[] administrative priority status to all undisputed obligations of the Debtors owing to third party vendors and suppliers arising from the postpetition delivery of goods ordered prior to the Commencement Date and authorizing the Debtors to pay such obligations in the ordinary course of business." *Shipping Motion, ¶5*.

6. According to the Debtors, "[p]rior to the Commencement Date, and in the ordinary course of business, the Debtors ordered approximately $162 million in Merchandise from suppliers and vendors that will not be delivered until on or after the Commencement Date (the "Prepetition Orders"). Id. at ¶19. Upon information and belief, this $162 million in Merchandise included goods from foreign vendors delivered to a common carrier at the port of origin during the 20-day period before the commencement of this cases.

7. According to the Debtors, "because the Debtors' obligations under the Prepetition Orders arose prior to the Commencement Date, such obligations will be treated as general unsecured claims in these Chapter 11 Cases." *Id.* However, had the Debtors taken the position then, regarding the date of "receipt" of goods, that they are now taking then much, if not most, of the $162 million in Merchandise should have been entitled to a §503(b)(9) administrative claim.

669368v.1

8. Assuming the shipment of goods by foreign vendors takes 30-days, and assuming that the same value of goods were delivered each day to a common carrier at the port of origin during the 30-day period before the Commencement Date, then $108 million out of the $162 million in Merchandise would have been entitled to a §503(b)(9) administrative claim.

9. Notably, the Debtors contrasted the need for an administrative expense for the $162 million in Merchandise ordered pre-petition and delivered post-petition, with the §503(b) administrative expense priority given to Merchandise delivered "within 20 days prior to" the Commencement Date. *Id.* at 20.

10. Six months later, when the Debtors were very concerned about administrative insolvency and a foreign vendor cited the Order entered by the Court on the Shipping Motion to support a motion for a § 503(b)(1) administrative claim for pre-petition goods delivered post-petition, the Debtor argued that the $162 million in Merchandise included none of the foreign vendor's goods:

> The purpose of the comfort language in paragraph eight of the Final Shipping Order was to give assurance to vendors operating under prepetition contracts *who had not completed performance as of the Petition Date* that they would be provide with an Administrative Claim for completing performance and delivering goods to the Debtors after the Petition Date. The Debtors wanted this comfort language placed into the Final Shipping Order to assure parties *who had not yet begun or not yet completed performance of their obligations*, that they would be compensated on a postpetition basis in the ordinary course of business. Paragraph eight was never intended to provide an Administrative Claim to Winners and other vendors *who had already completed performance* and satisfied their obligations to the Debtors.

*Debtors' Objection to Winners Industry Co., Ltd's Motion for Allowance and Payment of Administrative Claim [Doc 2839]* at ¶17 (emphasis added). See **Exhibit B**. Upon information

669368v.1

and belief, the sole reason the Debtors took this position is because they determined they could reduce the allowed administrative expenses by at least $30 million.

11. Because I had doubts about the veracity of this statement, I issued a subpoena *duces tecum* to the Debtors, on behalf of another client with the same issue, requesting the production of documents showing the goods intended to be included in the $162 million of Merchandise in the Shipping Motion. However, the Debtors refused to produce these documents.

12. Accordingly, discovery is needed for the Court to have a proper record in which to rule on the Debtors' objection to Orient Craft's administrative claims.

13. Annexed as **Exhibits C and D** are Claim Nos. 1135 and 1142, respectively, filed by Orient Craft.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23rd day of October, 2019.

/s/ David H. Wander
David Wander

669368v.1