# Exhibit B

Page 1

```
 1   UNITED STATES BANKRUPTCY COURT

 2   SOUTHERN DISTRICT OF NEW YORK

 3   CASE NO. 18-23538-rdd (Chapter 11)

 4   - - - - - - - - - - - - - - - x

 5   In re:

 6

 7   SEARS HOLDINGS CORPORATION, et al.

 8

 9          Debtors.

10   - - - - - - - - - - - - - - - x

11

12

13                  U.S. Bankruptcy Court

14                  300 Quarropas Street

15                  White Plains, New York 10601

16

17                  May 21, 2019

18                  10:27 AM

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  NAROTAM RAI
```

1   Notice of Agenda of Matters Scheduled for Hearing on May 21,

2   2019 at 10:00 a.m.

3

4   Application of Fee Examiner, Pursuant to Section 327(a) of

5   the Bankruptcy Code, Bankruptcy Rule 2014, and Local

6   Bankruptcy Rules 2014-1 and 2016-1, for the Entry of an

7   Order Authorizing the Retention and Employment of Ballard

8   Spahr LLP as Counsel to the Fee Examiner, Nunc Pro Tune to

9   the Appointment Date filed by Paul E. Hamer on behalf of Fee

10   Examiner(document #3682)

11

12   Motion of Debtors for Order Shortening Notice with Respect

13   to Debtors' Motion for Authorization and Approval of (I)

14   Settlement between Debtors and The Chubb Companies, (II)

15   Debtors' Entry into the Transaction Documents, and (III)

16   Related Relief (document #3615)

17

18   Debtors' Motion for Authorization and Approval of (I)

19   Settlement between Debtors and The Chubb Companies, (II)

20   Debtors' Entry into the Transaction Documents, and (III)

21   Related Relief (document #3614)

22

23

24

25

1   Notice of Presentment of Debtors Motion for Authority to

2   Assume Unexpired Leases of Nonresidential Real Property

3   (document #3376) Objection of 7200 Arlington Associates LLC

4   (document #3595)

5

6   Debtors Motion for Authority to Assume Unexpired Leases of

7   Nonresidential Real Property (related document(s)3376)

8

9   Objection of 7200 Arlington Associates LLC (document #3595)

10

11   Notice of Presentment of Order (I) Authorizing Assumption

12   and Assignment of Lease of Non-Residential Real Property and

13   (II) Granting Related Relief, with Exhibit A (related

14   document(s)3624, 3008, 3665, 3811)

15

16   Notice of Presentment of Stipulation among Buyer, Seller,

17   and Brookfield Property REIT Inc. filed by Ryan Zachary

18   Gelber on behalf of Transform Holdco LLC. (document #3913)

19

20

21

22

23

24

25

Page 4

1  Motion of FTI Consulting Canada Inc., for Relief From the

2  Automatic Stay for the Purpose of Joining Sears Holdings

3  Corporation as a Defendant in Existing Litigation Pending

4  Before the Ontario Superior Court of Justice (Commercial

5  List) and to Liquidate Certain Claims Against Sears Holdings

6  Corporation in Such Existing Litigation filed by Eric C.

7  Daucher on behalf of FTI Consulting Canada Inc. (document

8  #3237)

9

10  Motion of Liberty Insurance Corporation of Relief from the

11  Automatic Stay (document #3294)

12

13  Motion of Rosa Melgar for Relief from the Automatic Stay

14  (document #2960)

15

16  Motion of Apex Tool Group, LLC to Allow and Compel Immediate

17  Payment of Administrative Expense Claim Pursuant to 11

18  U.S.C. 503(b)(1)(a) and 11 U.S.C. 503(b)(9) filed by Gregg

19  M. Galardi on behalf of Apex Tool Group, LLC (document

20  #1491)

21

22  Debtors' Omnibus Objection (document #3883)

23

24

25

Page 5

1   Motion of Milton Manufacturing, LLC to Allow and Compel

2   Payment of Administrative Expense Claim Under 11 U.S.C.

3   §503(b) For Craftsman Branded Goods Delivered to the Debtor

4   Postpetition filed by Joel D. Applebaum on behalf of Milton

5   Manufacturing, LLC (document #1477)

6

7   Motion to Allow and Compel Payment of Administrative Expense

8   Claim Under 11 U.C. Sec. 503(b) for Jaclyn Smith Branded and

9   Private Label Goods Delivered to the Debtor Post-Petition

10   (ECF #3323)

11

12   Debtors' Omnibus Objection (document #3883)

13

14   Motion of Gokaldas Exports Ltd. to Allow and Compel Payment

15   of Administrative Expense Claims (document #3670)

16

17   Motion by Pearl Global Industries Ltd. to Allow and Compel

18   Payment of Administrative Expense Claim (document #3604)

19

20   Notice of Assumption and Assignment of Additional

21   Designatable Leases (related document(s)3008, 1731, 3097,

22   2753, 2314, 2995, 3152, 1774) filed by Luke A Barefoot on

23   behalf of Transform Holdco LLC. (document #3298)

24

25   Transcribed by:  Sherri L. Breach, Cert*D-397

Page 6

1    A P P E A R A N C E S :

2    CLEARY, GOTTLIEB, STEEN & HAMILTON, LLP

3        Attorneys for Transform Holdco LLC & its affiliates

4        One Liberty Plaza

5        New York, New York 10006

6

7    BY:   LUKE A. BAREFOOT, ESQ.

8

9    BALLARD SPAHR, LLP

10        Attorneys for Unspecified

11        919 North Market Street, 11th Floor

12        Wilmington, Delaware 19801

13

14    BY:   LAUREL D. ROGLEN, ESQ.

15

16    THE SARACHEK LAW FIRM

17        Attorneys for Mien Ltd.

18        101 Park Avenue, 27th Floor

19        New York, New York 10178

20

21    BY:   JOSEPH SARACHEK, ESQ.

22

23

24

25

```
1   PBGC

2        Attorneys for the Pension Benefit Guaranty Corporation

3        1200 K Street NW

4        Washington, D.C. 20005

5

6   BY:  MICHAEL BAIRD, ESQ.

7

8   CLARK HILL, PLLC

9        Attorneys for Milton Manufacturing, LLC

10       210 Carnegie Center, Suite 102

11       Princeton, New Jersey 08540

12

13  BY:  NOLA R. BENCZE, ESQ.

14

15  AKIN, GUMP, STRAUSS, HAUER & FELD, LLP

16       Attorneys for Unsecured Creditors' Committee

17       One Bryant Park

18       New York, New York 10036

19

20  BY:  SARA L. BRAUNER, ESQ.

21       ABID QURESHI, ESQ.

22

23

24

25
```

Page 8

```
 1   BUCHANAN, INGERSOLL & ROONEY, PC
 2        Attorneys for Gokolas Exports Ltd
 3        640 Fifth Avenue, 9th Floor
 4        New York, New York 10019
 5
 6   BY:  JACQUELINE M. WEYAND, ESQ.
 7
 8   SEYFARTH SHAW, LLP
 9        Attorneys for Wilmington Trust
10        620 Eighth Avenue
11        New York, New York 10018
12
13   BY:  EDWARD M. FOX, ESQ.
14
15   ROPES & GRAY, LLP
16        Attorneys for Apex Tools
17        1211 Avenue of the Americas
18        New York, New York 10036
19
20   BY:  GREGG M. GALARDI, ESQ.
21
22
23
24
25
```

Page 9

1    GELBER & SANTILLO

2         Attorneys for Unspecified

3         347 West 36th Street, Suite 805

4         New York, New York 10018

5

6    BY:  R. ZACHARY GELBER, ESQ.

7

8    MCKOOL SMITH, PC

9         Attorneys for Winners Industries Ltd

10        One Bryant Park, 47th Floor

11        New York, New York 10036

12

13   BY:  H. JEFFREY SCHWARTZ, ESQ.

14

15   HUGHES, HUBBARD & REED

16        Litigation Trustee for Sears Canada Inc. & Class Action

17        Representative

18        One Battery Park Plaza

19        New York, New York 10044

20

21   BY:  DUSTIN P. SMITH, ESQ.

22        NEIL J. OXFORD, ESQ.

23

24

25

Page 10

```
 1   ALLEN & OVERY, LLP
 2        Attorneys for Morneau Shepell Ltd
 3        1221 Avenue of the Americas
 4        New York, New York 10020
 5
 6   BY:  LAURA R. HALL, ESQ.
 7        JOSEPH BADTKE-BERKOW, ESQ.
 8
 9   WEIL, GOTSHAL & MANGES, LLP
10        Attorneys for Debtors
11        767 Fifth Avenue
12        New York, New York 10153
13
14   BY:  JACQUELINE MARCUS, ESQ.
15        MATTHEW SKRZYNSKI, ESQ.
16        OLGA F. PESHKO, ESQ.
17        GARRETT FAIL, ESQ.
18
19   NORTON ROSE FULBRIGHT US, LLP
20        Attorneys for FTI, Canadian Monitor
21        1301 Avenue of the Americas
22        New York, New York 10019
23
24   BY:  ERIC DAUCHER, ESQ.
25        FRANCISCO VAZQUEZ, ESQ.
```

Page 11

1    DAVIDOFF HUTCHER & CITRON, LLP

2        Attorneys for Pearl Global

3        605 Third Avenue

4        New York, New York 10158

5

6    BY:  DAVID H. WANDER, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      P R O C E E D I N G S

2              THE COURT:   I just want to make sure, is the

3      microphone on?  Is the green light on?

4              MS. MARCUS:  I think it -- the green light is

5      green.

6              THE COURT: Yes.  Okay.  All right.

7              MS. MARCUS:  The first item on the agenda this

8      morning is an uncontested matter.  It's the application of

9      the fee examiner for the entry of an order authorizing the

10     retention and employment of Ballard Spahr.

11             A certificate of no objection was filed by Ballard

12     Spahr and I understand that the order was submitted to the

13     Court on Thursday.  We left it on the agenda, Your Honor,

14     because it hadn't been signed yet.  I know --

15             THE COURT:  Okay.

16             MS. MARCUS:  -- you had a busy weekend, so --

17             THE COURT:  I think I may have set it in

18     yesterday.  In any event I'll grant it with the admonition

19     or hope that most of the work here will be done by the fee

20     examiner himself and that the law firm will be assisting him

21     only on matters such as will be appropriate under the

22     circumstances.  I think Mr. Harner is quite an experienced

23     lawyer and can do most of this work himself.

24             MS. MARCUS:  Your Honor, Ms. Roglen is here on

25     behalf of Ballard Spahr.  I don't know if she --

Page 13

1                THE COURT:  No.  I don't --

2                MS. MARCUS:  -- wants to add anything.

3                THE COURT:  I don't need anything else other --

4                MS. MARCUS:  Okay.

5                THE COURT:  -- than that.  So that order will get

6        entered shortly.

7                MS. MARCUS:  Okay.  Thank you, Your Honor.

8                Items 2 and 3 on the agenda, Your Honor, should be

9        taken together.  Item 3, going a little bit out of order, is

10       the debtors' motion for authorization and approval of a

11       settlement between the debtors and the Chubb Companies, and

12       the debtors' entry into certain transaction documents

13       related to that.

14               The Item Number 2 on the agenda is the most to

15       shorten time related to that motion.

16               THE COURT:  Right.

17               MS. MARCUS:  We haven't had any objections to

18       either the substantive motion or the request for the order

19       shortening time.

20               THE COURT:  Okay.  I will grant the motion to

21       shorten.  As most of you know my practice is not to grant

22       these ex parte unless I absolutely have to do, and to do

23       something in between which is -- if I think there's a

24       potential basis to shorten I'll schedule the hearing on the

25       motion to shorten with the same time as the underlying

1    relief, giving people a chance to say this should be heard

2    on longer notice.

3              But that wasn't the case here.  So I'll grant that

4    motion.

5              I've reviewed the underlying motion as well.  I

6    guess the only issue is the dollar amount, everyone is

7    agreed that's the potential exposure?  There's no more risk

8    for the debtor in any event?

9              MS. MARCUS:  That's correct, Your Honor.  The --

10             THE COURT:  And --

11             MS. MARCUS:  The arrangements basically replace

12   the insurance that the debtors had through Sears and through

13   a Chubb affiliate --

14             THE COURT:  Right.

15             MS. MARCUS:  -- with a new direct policy.  So the

16   total amount of coverage is the same and there's no cost to

17   the debtors.  It just stayed the same.

18             THE COURT:  Right.  It's just a pass through

19   transaction.

20             MS. MARCUS:  That's correct.

21             THE COURT:  So I will grant that motion.  You can

22   email both of those orders to chambers.

23             MS. MARCUS:  Thank you, Your Honor.

24             Item 4 on the agenda, Your Honor, is the debtors'

25   motion which was originally framed as a motion for authority

Page 15

1    to assume unexpired leases of non-residential real property,

2    ECF Number 3376.  It pertains to three leases relating to

3    property located in Riverside, California.

4          These leases were not sold to transform pursuant

5    to the asset purchase agreement.  At the time we filed the

6    motion we were cognizant of the impending 365(d)(4) deadline

7    and we didn't have a proposed transaction in hand that was

8    signed and ready to be filed with the Court.

9          You might recall, Your Honor, that at the hearing

10   on May 8th I mentioned that we might be amending the relief

11   sought in that motion.

12         After we filed the motion we were able to enter

13   into an agreement for the assignment of the lease with

14   Brixton Capital.  When the landlord for the property, which

15   had objected to the assumption motion, learned of the

16   proposed transaction it indicated that it was prepared to

17   outbid Brixton.

18         Last Thursday, May 16th, we had what I'll call a

19   mini-auction for the property, and after two rounds of

20   bidding the landlord emerged as the successful bidder.

21         As a result on Friday we filed a notice of hearing

22   together with a supplement to the motion changing the relief

23   requested to approval of the assumption and assignment of

24   the leases to the landlord's designee, and we also filed a

25   revised proposed order that provides the requested relief.

Page 16

1           I might add, Your Honor, that the professionals

2    for the creditors' committee were kept in the loop as this

3    process unfolded.  And I think they were supportive of the

4    debtors' approach.

5           THE COURT:  Okay.

6           MS. MARCUS:  As reflected in the supplement the

7    landlord has agreed to pay the debtors' $1,265,000 for the

8    leases and to waive any cure payments or adequate assurance

9    of future performance.

10          In addition to seeking the authorization to assume

11   and assign the leases, the debtors are seeking authorization

12   to pay Brixton Capital $30,000 in legal fees.  The debtors

13   had agreed to seek such authorization in order to persuade

14   Brixton to participate in the auction.

15          Brixton's interest in the property and its

16   participation in the auction clearly enhanced the value

17   provided to the debtors' estates.  Consequently, we believe

18   that payment of the fee is appropriate under Section 363 of

19   the Bankruptcy Code.

20          THE COURT:  Right.  And Brixton's bid was -- it

21   went up to a 1,130,000 and that enabled the auction to

22   happen.

23          MS. MARCUS:  That's correct, Your Honor.

24          THE COURT:  Okay.  Does anyone have anything to

25   say on this motion?

1          All right.  I will grant the modified relief

2   requested by the debtors approving the -- in essence the

3   sale of the lease to the landlord on the terms outlined and

4   the payment of the $30,000 to the -- to Brixton --

5          MS. MARCUS:  Thank you, Your Honor.

6          THE COURT:  -- that facilitated the auction.

7          MS. MARCUS:  Thank you.

8          Item Number 5 on the agenda will actually be

9   handled by Mr. Barefoot on behalf of Cleary.

10         THE COURT:  Okay.

11         MR. BAREFOOT:  Good morning, Your Honor.  Luke

12  Barefoot from Cleary Gottlieb Steed & Hamilton for Transform

13  Holdco and its affiliates.

14         THE COURT:  Right.

15         MR. BAREFOOT:  Your Honor, on Agenda Item Number

16  5, this concerns Store Number 26741 in Amherst, New York.

17  Your Honor may remember at the conclusion of the assumption

18  and assignment hearing on May 8th there was a brief

19  discussion about this property.  We had filed a -- what was

20  then a pending stipulation to extend the time under Section

21  365(d)(4).  The designee, Transform's designee needed to

22  take assignment of the lease objected to that extension.  It

23  was entered into with the current landlord.

24         I'm pleased to report that that objection was

25  subsequently resolved by a revised stipulation that provided

Page 18

1    for shorten time for the landlord to file its cure cost

2    objections.  Those cure costs have now been agreed to

3    between the designee and Transform.  And we submitted a

4    revised form of order that's substantially in the form that

5    Your Honor entered on May 8th, but that is tweaked to

6    address the specific circumstances of this lease.

7         That proposed order was submitted on notice of

8    presentment at Docket Item 3939.  Like some of our other

9    notices of presentment this was noticed for hearing today,

10   not in compliance with the time requirements that would

11   otherwise apply under the case management order.

12        THE COURT:  All right.  Let me just make -- what

13   is left then with regard to this lease?  Any -- are there

14   any -- there -- what open disputes, if any, are remaining?

15        MR. BAREFOOT:  There are none, Your Honor.

16        THE COURT:  There are none.

17        MR. BAREFOOT:  This is an entirely consensual one.

18        THE COURT:  So the landlord's -- put it

19   differently, the stipulation I thought provided deadlines

20   for certain things to happen and the hearing to happen in

21   case there were objections.  But, in fact, there are no

22   objections?

23        MR. BAREFOOT:  There was an objection from the

24   landlord that asserted approximately $9,000 in cure costs.

25   Transform has agreed to pay those cure costs --

Page 19

1          THE COURT:  Okay.

2          MR. BAREFOOT:  -- as part of the transaction with

3    the designee.

4          THE COURT:  All right.  Very well.

5          I just want to make sure, does anyone want to be

6    heard on this motion?

7          All right.  I'll grant the relief as modified

8    including the shortened notice given the context here.  So

9    you can submit that order to chambers.

10          MR. BAREFOOT:  Thank you, Your Honor.

11          THE COURT:  Okay.

12          MR. BAREFOOT:  With Your Honor's permission I

13   would like to take something that was on the contested

14   portion of the calendar out of order.

15          Item Number 17 on the contested portion, it

16   concerns Store Number 7471 in Placerville, California.  I'm

17   pleased to report that this is now an entirely consensual

18   assumption and assignment.

19          Your Honor, there was a stipulation entered by the

20   Court on May 13th at Docket Item 3852 that provided for an

21   extension of time to assume or reject and to address the

22   landlord's objections on a number of grounds, including cure

23   and adequate assurance.

24          That stipulation set the hearing on the assumption

25   and assignment of the Placerville lease for today.  I'm

Page 20

1    pleased to report that we have agreed on a form of order

2    that again substantively mirrors in all respects Your

3    Honor's order entered on May 13th with respect to the bulk

4    of the leases.

5              That was set down for hearing today, so it has not

6    been filed on notice of presentment, but it has been agreed

7    to by the landlord, the debtors and Transform.  And with

8    Your Honor's permission following the hearing we would

9    propose to submit it to chambers.

10             THE COURT:  Okay.  And that, again, is the matter

11   that appears on 17 on the agenda?

12             MR. BAREFOOT:  That's correct, Your Honor.

13             THE COURT:  The cure objection --

14             MR. BAREFOOT:  I would just like to --

15             THE COURT:  -- cure objection of Alan Robbins?

16             MR. BAREFOOT:  Correct, with respect to the --

17             THE COURT:  And so that's --

18             MR. BAREFOOT:  -- Placervile, California --

19             THE COURT:  All right.  So that's been resolved.

20             All right.  Very well.  So I'll look for that once

21   the notice period passes.

22             MR. BAREFOOT:  Thank you, Your Honor.

23             I would propose to turn the podium over to my

24   colleague, Zack Gelber, who will address Item Number 6.

25             THE COURT:  Okay.

1           MR. GELBER:  Good morning, Your Honor.  Zack

2   Gelber on --

3           THE COURT:  Good morning.

4           MR. GELBER:  -- behalf of Transform Co from Gelber

5   & Santillo as conflicts counsel.

6           We are here on a notice of presentment of a

7   stipulation between the debtor and Transform as buyer and

8   Brookfield REIT.

9           THE COURT:  Right.

10          MR. GELBER:  The parties have agreed consensually

11  and there have been no objections to two main points.  One

12  is to extend the hearing date from today, May 21st to May

13  29th with respect to any disputes.  And the second is that

14  Exhibit A to the May 13th order had erroneously designated

15  eight leases for assignment and assumption that the parties

16  all agree were designated erroneously.  We would like to

17  remove those consensually and set them down with the other

18  leases between Brookfield and the debtor for May 30 -- for

19  the May 31st deadline for the debtor to determine whether to

20  assume those leases.

21          THE COURT:  Okay.  Very well.

22          MR. GELBER:  I would note, Your Honor, this is

23  also on a less than the eight days required under the case

24  management order.

25          THE COURT:  Right, but essentially it's an

Page 22

1   adjournment and --

2           MR. GELBER:  Yes.

3           THE COURT:  -- you can email that order to

4   chambers.  I'll grant it.

5           MR. GELBER:  Thank you, Your Honor.

6           THE COURT:  Okay.

7           MS. MARCUS:  That brings us, Your Honor, to the

8   contested matters for today's hearing, and the first one is

9   the motion of FTI Consulting Canada.

10          THE COURT:  Can I -- I understood that the next

11  one that's Number 8 on the agenda was actually adjourned,

12  motion of William Juiris; is that --

13          MS. MARCUS:  That's correct --

14          THE COURT:  -- right?

15          MS. MARCUS:  -- Your Honor.

16          THE COURT:  All right.  So --

17          MS. MARCUS:  That happened late yesterday.

18          THE COURT:  Okay.  So then we should -- I just

19  want to make sure there's no one on the phone or no one here

20  on that matter.

21          Then let's go back to the FTI Consulting lift stay

22  motion.

23          MR. DAUCHER:  Good morning, Your Honor.  Eric

24  Daucher from Norton Rose Fulbright on behalf of FTI

25  Consulting Canada Inc. --

1              THE COURT:  Good morning.

2              MR. DAUCHER:  -- in its capacity as court-

3    appointed monitor for Sears Canada Inc. and a number of its

4    affiliates in proceedings under Canada's company's creditors

5    arrangement which is currently pending before the Ontario

6    Superior Court of Justice Commercial List.

7              With me in the courtroom today are U.S. Counsel

8    for the monitors co-movants.  We have Neil Oxford of Hughes,

9    Hubbard & Reed who is here on behalf of the litigation

10   trustee and also the class action representatives.  And we

11   have Laura Hall of Allen & Overy who is here on behalf of

12   the Pension Plan Administrator.

13             THE COURT:  Okay.

14             MR. DAUCHER:  We are before Your Honor today of

15   course on the Canadian plaintiffs', as we are calling

16   ourselves, motion for relief from the automatic stay.

17             That motion is supported by a declaration from Mr.

18   Steven Bissell (ph) of FTI Consulting Canada, again, in its

19   capacity as monitor of Sears Canada.  We would like to begin

20   by moving Mr. Bissell's declaration into evidence.  Mr.

21   Bissell is in the courtroom here today and is available for

22   cross-examination as necessary.

23             THE COURT:  Okay.  Does anyone have any objection

24   to that?

25             MS. MARCUS:  Your Honor, on behalf of the debtors

Page 24

1    Jacqueline Marcus again.  The debtors do take issue with

2    some of the statements in Mr. Bissell's declaration.  But

3    given that those statements are immaterial to the resolution

4    of the motion today we will forego our opportunity to cross-

5    examine.

6              THE COURT:  Okay.  I think you had pointed out

7    some of those already.  But in any event I'll -- I read the

8    declaration and I'll admit it.

9              MR. DAUCHER:  And we have extra hard copies

10   available if Your Honor would like a hard copy, otherwise we

11   can just proceed.

12             THE COURT:  That's okay.

13             MR. DAUCHER:  Okay.

14             And, Your Honor, as we set out in the motion the

15   Canadian plaintiffs are in the midst of a litigation before

16   the Canadian Court related to what we've termed the 2013

17   dividend.  And that was a transfer which was approved in

18   November 2013 of approximately $509 million Canadian dollars

19   from Sears Canada to its shareholders, including Sears

20   Holdings.

21             And although the Canadian plaintiffs each have

22   distinct claims related to that transfer, because the

23   Canadian Court has recognized the importance of efficiency

24   here, all of the claims are being jointly case managed

25   together.  That's currently set for a trial scheduled to

Page 25

1    kick off beginning on February 3rd of 2020.

2                Now the missing piece of that litigation, the one

3    thing that really prevents all of the Canadian plaintiffs'

4    claims from being definitively resolved in a single

5    proceeding in a single forum is the absence of Sears

6    Holdings as a defendant.

7                And the reason for that absence is the potential

8    application of the automatic stay which the Canadian

9    plaintiffs have been careful to respect.

10               THE COURT:  Can I interrupt you on that?

11               MR. DAUCHER:  Of course.

12               THE COURT:  It's clear to me that a fair amount

13   has already happened in these three actions.  In fact, one

14   of them has been pending for some -- well, for four years.

15   There's a discovery schedule with document production to be

16   complete by June 30th.  Depositions scheduled tentatively

17   for September 2019, and as you said a joint trial for

18   February.

19               That suggests to me perhaps that while taking

20   discovery from Sears Holdings may be important, the parties

21   -- it didn't jump out at the parties that having Sears

22   Holdings as a live defendant was important because it seems

23   like they proceeded without them for a while at least.

24               MR. DAUCHER:  On that, Your Honor, and I -- my

25   colleague will ultimately speak a little further on the

Page 26

1  current status of the Canadian litigation. But I can say a

2  few things, which is Sears Holdings wasn't initially named

3  as a defendant in three of the actions --

4              THE COURT: Right.

5              MR. DAUCHER: -- specifically because of the

6  automatic stay. In the fourth action, the one that has been

7  pending for a great deal of time, Sears Holdings was named

8  as a defendant and that was only voluntarily stayed as

9  against Sears Holdings.

10              In addition, Sears Holdings has been participating

11  in those proceedings, I won't say quite from the beginning,

12  but from the early stages. They've been on the service

13  list. Their lawyers have appeared. In fact --

14              THE COURT: But not since the start of the

15  bankruptcy -- of this Chapter 11 case?

16              MR. DAUCHER: Oh, no. Even since the start of

17  these Chapter 11 cases.

18              THE COURT: Okay.

19              MR. DAUCHER: In fact, if you look at Exhibit D to

20  our reply brief you'll see an order issued by Justice

21  McCughen (ph) holding in abeyance additional progress in the

22  litigation upon the motion of Sears Holdings pending

23  disposition of this motion.

24              So the parties were aware. Sears Holdings was

25  certainly aware that it could ultimately end up in this

Page 27

1    litigation.  The Canadian Court has taken steps to ensure

2    this is written down in black and white that Sears Holdings

3    is not prejudiced by the current advancement of the

4    litigation and that it's just being held up until this

5    motion is resolved.

6              THE COURT:  Okay.

7              MR. DAUCHER:  Frankly, Your Honor, we initially

8    hoped that this motion wouldn't be necessary.  We thought

9    that what we were proposing, that Canadian plaintiffs'

10   claims can be resolved in one trial, one proceeding, one

11   court.  It made so much sense that we could do this on

12   consent.  Unfortunately, after a couple of weeks of

13   consideration -- and we did give the debtors and the

14   committee weeks to consider this -- they turned us down.

15             So let's talk a little bit about why we believe

16   this makes so much sense.

17             First, we think that one litigation is better than

18   two.  Why would we want to expend limited estate resources,

19   not just of one estate, we have insolvent estates on both

20   sides of the border pursuing two litigations when you could

21   have one?  Why would we want to take up court time of two

22   busy courts rather than one running through two proceedings?

23   And why would we want to create a risk of inconsistent

24   judgments on the very same questions of fact and the very

25   same questions of law by heading into two proceedings?  We

Page 28

1    don't.

2           Second, we think it makes sense to defer to the

3    Court with the greater expertise in the particular claims at

4    issue in the Canadian litigation.  And we're already before

5    a specialized Canadian Court with enormous expertise in the

6    particular types of Canadian law causes of action that the

7    Canadian plaintiffs are pursuing.

8           Why would we put this Court in the position of

9    having to second guess the decisions of a Canadian Court?

10   Why would we put the parties in the position of potentially

11   having the decisions of the Canadian Court second guessed on

12   issues of Canadian law?  Again, we wouldn't.

13          Given that posture, we think that the SONOX

14   factors overwhelmingly favor relief from the automatic stay.

15   I know Your Honor is familiar with those factors and I'm not

16   going to rehash them.  We've set out in -- at length both in

17   our motion papers and our reply why we believe the factors

18   overwhelmingly favor granting relief from the stay for the

19   limited purposes that we've requested.

20          THE COURT:  Which is to liquidate the claim?

21          MR. DAUCHER:  Which is purely to liquidate the

22   claim.

23          THE COURT:  And as I understand it at this point

24   the claim is -- you've -- not all the plaintiffs, but a

25   claim has been filed in this case based on the facts or some

Page 29

1    of the facts that are asserted in the pending actions.  But

2    it's a general unsecured claim.  It's not for a specific

3    property, right?

4              MR. DAUCHER:  That's correct, Your Honor.

5              THE COURT:  Okay.

6              MR. DAUCHER:  And I will say I believe each of the

7    four plaintiffs have, in fact, submitted claims in these

8    cases.

9              The debtors and the committee apparently disagree

10   with our plan.  They don't seem to think that one litigation

11   is preferable for -- to two.  And yet when we read their

12   objection and then we -- when we read the committee's

13   joinder what we were really struck by is the number of our

14   core assertions that went entirely unanswered.

15             So, for example, with one narrow exception related

16   to a punitive damages claim the debtors and the committee

17   don't actually dispute that granting relief from the stay

18   would allow all of the Canadian plaintiffs' claims to be

19   resolved as against all parties.  That's factor one.

20             Now we concede that the debtors have raised a good

21   point on the punitive damages claim and it's for that reason

22   and to ensure that the Canadian Court can, in fact, resolve

23   the issue as against all of the parties fully without

24   further action before this Court that the Canadian

25   plaintiffs are willing to waive their punitive and exemplary

Page 30

1    damages claims as against Sears Holdings.

2            So with that I think the debtors' concerns on that

3    front are fully resolved.

4            Next, there's no suggestion that lifting the

5    automatic stay will delay distribution in these cases.  To

6    the contrary, waiting to resolve the Canadian plaintiffs'

7    claims until after the adversary proceeding is resolved,

8    that's a recipe for delaying creditor --

9            THE COURT:  Well --

10           MR. DAUCHER:  -- distributions

11           THE COURT:  -- when you say the adversary

12   proceeding you mean the ones that started here?

13           MR. DAUCHER:  Correct.  The adversary proceeding

14   as the debtors have defined in their objection.

15           THE COURT:  Okay.

16           MR. DAUCHER:  And that -- waiting until that is

17   resolved seems to be what they're driving at as they say

18   repeatedly, well, we need to determine what creditor

19   recoveries are before we can move forward (indiscernible).

20   Then we've got a very long sequence of events and it's going

21   to be an awfully long time before our claims are liquidated.

22   All the while we have a Canadian insolvency estate that has

23   completed virtually every task.  Resolving this asset is one

24   of the few remaining tasks that needs to be done in Canada

25   and it's just not right to hold that open for potentially

Page 31

1    years on end when the issue could be resolved in a timely

2    manner.

3            THE COURT:  Can I -- I just want to make sure, the

4    claims against Sears Holdings is -- I'm going to use

5    shorthand.  It's essentially a fraudulent transfer claim,

6    right?  I mean, that's not the term under Canadian law, but

7    it's essentially a fraudulent transfer claim?

8            MR. DAUCHER:  The monitor's claim I would say is

9    most similar to what we would call a constructive fraudulent

10   transfer claim.  That's --

11           THE COURT:  Right.

12           MR. DAUCHER:  That's correct.  There are

13   differences between Canadian law and U.S. law on that front

14   obviously.  But the monitor's claim at least is most like a

15   constructive fraudulent transfer claim.

16           The pension party's claims are substantially

17   different.  There you're talking about complex and evolving

18   breach of fiduciary duty claims.  There is a relatively

19   recent case from the Canadian Supreme Court that apparently

20   really started the wheels turning in this area of Canadian

21   law.  So I won't venture to say what that's most similar to,

22   but it's substantially different from a fraudulent transfer

23   claim.

24           And the litigation trustee and the class action

25   representative have different claims, too.

1              THE COURT:  So Holdings was a substantial

2     shareholder --

3              MR. DAUCHER:  That's correct.

4              THE COURT:  -- and received a substantial

5     dividend.

6              MR. DAUCHER:  That is correct.

7              THE COURT:  It's a fiduciary to whom or is that

8     what's evolving in Canada?

9              MS. HALL:  If I could address that?

10             MR. DAUCHER:  I'll cede the podium momentarily to

11    my colleague, Laura Hall.

12             MS. HALL:  Hi, Your Honor.  I'm Laura Hall for the

13    pension administrator.

14             THE COURT:  Right.

15             MS. HALL:  The theory there is Sears Canada itself

16    was administering its own pension plan.  And in connection

17    with issuing the distribute -- the dividend at issue it's

18    alleged that the shareholders of Sears Canada induced and

19    aided and abetted its breach of its fiduciary duties to the

20    plan.

21             THE COURT:  Who -- when you say its, who do you

22    mean?

23             MS. HALL:  So Sears --

24             THE COURT:  Sears --

25             MS. HALL:  -- Canada had fiduciary duties as

Page 33

1    administrators --

2            THE COURT:  Right.

3            MS. HALL:  -- of its own plan.  The directors of

4    Sears Canada and its shareholders who are in -- you know,

5    the ESL parties and the shareholder being Sears Hold Co. are

6    alleged to have induced Sears Canada --

7            THE COURT:  So it's like an aiding and --

8            MS. HALL:  -- to give the --

9            THE COURT:  It's an aiding and abetting --

10           MS. HALL:  Exactly.

11           THE COURT:  -- of breach of fiduciary duty.

12           MS. HALL:  Yeah.

13           THE COURT:  Okay.  And this is an evolving

14   concept under Canadian law?

15           MR. DAUCHER:  That's correct, Your Honor.

16           THE COURT:  Okay.

17           MR. DAUCHER:  So the delay in distributions,

18   that's, I think, factor two in our favor.

19           There's also no dispute that the Canadian

20   plaintiffs' claims are largely focused on the conduct of

21   third parties, although we apparently have a quibble around

22   how broad or narrow Factor 6 is.  But we think that's Factor

23   6 in our favor.

24           The debtors and the committee acknowledge that the

25   Canadian litigation will not result in a subordinated claim

1   and will not result in avoidable judicial lien.  That's

2   Factors 8 and 9 in our favor.

3            And perhaps most importantly the debtors admit

4   that granting relief from the stay would avoid needless and

5   duplicative litigation.  That's Factors 7 and 10.

6            Their only complaint on that front seems to be

7   that granting relief from the stay will not also resolve

8   their own adversary proceeding.  But the debtors admit that

9   adversary proceeding arises from --

10            THE COURT:  I --

11            MR. DAUCHER:  -- different facts.

12            THE COURT:  I actually don't think that's their

13   main issue.  I think their -- well, Ms. Marcus can tell me,

14   but I think their main issue is they think that the Sears

15   Holdings part of this litigation is not particularly

16   important in the Canadian context, but would cost a lot of

17   money at this point that may not be well spent by anybody on

18   either side given the uncertainty about the level of

19   distributions.

20            It's not really -- I don't see -- maybe I'm

21   missing it.  I don't see a tie in whereby issues in the

22   adversary proceeding in front of me will be determined in

23   the Canadian litigation.  So I don't think that's their

24   issue.  I think it's just a --

25            MR. DAUCHER:  But they actual --

Page 35

1          THE COURT:  -- a money issue.

2          MR. DAUCHER:  But they actually -- I agree that

3    they are separately raising a money issue.  But they

4    actually make the point repeatedly in their brief that, and

5    we're looking at paragraphs 27 and 70 in their brief where

6    they acknowledge that granting relief from the stay will

7    eliminate duplicative litigation for the Canadian

8    plaintiffs, but will not resolve it, will not eliminate

9    duplicative litigation for the debtors.  And they

10   specifically cite the existence of the adversary proceeding.

11          So that may not be convincing.  I agree it's not

12   convincing.  But it's what they put down on -- in their

13   papers.

14          THE COURT:  Okay.

15          MR. DAUCHER:  And I agree as well when you say

16   that it doesn't seem that resolving issues in Canada will

17   resolve issues in the adversary proceeding or vice versa.

18   That's right.  The debtors admit that the adversary

19   proceeding arises from different facts than does the

20   Canadian litigation.  We couldn't agree more.  They're

21   separate.

22          But we think those unanswered points alone are

23   sufficient to establish at least a prima facie case for

24   relief from the automatic stay.  But I think it's worth

25   looking in detail at what the debtors and the committee to

Page 36

1   some extent have raised in opposition.

2           First they suggest that the motion should be

3   denied because granting the Canadian plaintiffs relief from

4   the stay risks affording us some sort of improper

5   distributional advancement.  That's just not correct.  As

6   Your Honor observed at the outset, what we've done is

7   request relief from the stay, to add Sears Holdings as a

8   defendant, and to liquidate our claims.  Any claim that we

9   ultimately obtain against Sears Holdings is going to have to

10  ultimately be recovered through these Chapter 11 cases.

11          And there are any number of decisions from courts

12  in this district, from courts elsewhere in the Second

13  Circuit that make the point that prejudice to any other

14  creditors is managed or eliminated by limiting a request for

15  relief from the stay purely to liquidating that --

16  liquidating the claim in another forum.

17          THE COURT:  I think that overstates it, but that's

18  fine.

19          MR. DAUCHER:  I'm looking specifically at --

20          THE COURT:  No.  But you wouldn't spend $100 to

21  liquidate a claim that's only going to get five.  So it

22  depends.

23          MR. DAUCHER:  It does, Your Honor.  And I think

24  the math there is instructive.  We have $500 million

25  Canadian dollars on the table in these disputes, slightly

1    more than that.  Even at the two and a half percent

2    recoveries that the debtors are currently projecting, and

3    the debtors are projecting recoveries for unsecured

4    creditors, but even at that two and a half percent recovery

5    level, that's twelve and a half million dollars Canadian of

6    potential recoveries on these claims.

7            The entire litigation budget in Canada for not

8    just Sears Holdings, but the entire litigation as against

9    all the parties is publicly disclosed at 12 million Canadian

10   which includes incidentally the buffer for adverse costs.

11   So this piece of the claim alone, even if recoveries really

12   are as low as two and a half percent, stands to entirely

13   cover the cost of the entire litigation in Canada, not just

14   against Sears Holdings.

15           So if it's a cost benefit analysis this Court's

16   performing, we're clearly on the right side of that

17   analysis.

18           I've already discussed a little bit the debtors'

19   point or the debtors' suggestion that we need to somehow

20   eliminate all potential other litigation, whether we need to

21   solve the adversary proceeding for them by granting it

22   through relief from the stay.  Obviously we don't think

23   that's right.  But it's worth looking at just how very

24   different these transactions are, these litigations are,

25   excuse me.

Page 38

1          The Canadian litigation and the adversary

2    proceeding concern different events, arise under different

3    law, and have the debtors in opposite postures.  In the

4    adversary proceeding the debtors are attacking any number of

5    transactions.  They're not attacking the 2013 dividend.

6    That's why the debtors admit that "the claims in the

7    adversary proceeding and the dividend litigation" -- meaning

8    the Canadian litigation -- "arise from different events."

9    That's the debtors' objection at paragraph 29.

10          And again at paragraph 70, "The transactions at

11   issue in the dividend litigation and the adversary

12   proceeding differ."

13          The adversary proceeding also asserts causes of

14   action under the Bankruptcy Code, Delaware law, New York

15   law, Illinois law, but not Canadian.  The Canadian

16   litigation, by contrast, involves claims exclusively under

17   Canadian law.  So Canadian law isn't something this Court

18   would have to determine if relief from the stay is granted.

19          Then in the adversary proceeding, this is maybe

20   the most obvious point, the debtors are the plaintiffs.

21   They're asserting that various wrongdoing occurred to --

22   related to all of these different transactions and that

23   assets were stripped out of the U.S. debtors.

24          In the Canadian litigation, by contrast, Sears

25   Holdings would be a defendant who would presumably be

1   arguing that no such wrongdoing occurred with respect to the

2   2013 dividend in which assets were taken from Sears Canada

3   and transferred to Sears Holdings.

4           And as I began with, it's simply not our burden to

5   solve every piece of litigation the debtors are involved in.

6   We need to reduce duplicative litigation and the debtors

7   have admitted in black and white at paragraph 70 of their

8   objection that granting relief from the stay would eliminate

9   at least some duplicative litigation.  So I think that's

10  another point in our favor.

11          Now, third, they've claimed that the Canadian

12  Court is not the specialized tribunal and I've got to say I

13  found this one surprising.  In support of that assertion

14  they pointed to the website of the Ontario Superior Court of

15  Justice as a whole, which indicates --

16          THE COURT:  No.  The issue is  not the nature of

17  the court.  It's the application of Canadian law.

18          MR. DAUCHER:  Correct.  Specific types of -- so

19  specific types of Canadian law claims and whether that

20  particular court is the best suited to handle it.  And

21  there, you know, we could walk through it at length.  We've

22  laid it out in our reply brief.  But I think what's most

23  telling is you have a decision from the Ontario Court of

24  Appeals which says "The commercial list is a specialized

25  court."  And that it's entitled to "deference even from

1    Canadian Appellate Courts."  That's the Western Large case

2    that's attached as Exhibit A to our reply brief.

3         So the question is whether this litigation is

4    currently pending before a specialized tribunal with

5    expertise in these areas, complex questions of Canadian

6    commercial law, complex questions of Canadian insolvency

7    law.  The Canadian appellate courts themselves have said in

8    black and white, yes, the commercial list is that court, not

9    the Ontario Superior Court as a whole, but the commercial

10    list where this litigation is pending, unquestionably a

11    specialized court.

12         But we can go further than that, which is that the

13    debtors have acknowledged that the factor may weigh in our

14    favor if it doesn't just involve -- if the litigation

15    doesn't just involve garden variety causes of action under

16    Canadian law, but whether there's unsettled questions of

17    Canadian law.  And the monitor's publicly disclose, and this

18    was in its 27th report, it's also mentioned again in our

19    reply brief, that it's claim involves an important question

20    of Canadian law as to which there is very little precedent.

21    And that's whether a trans -- whether a dividend, such as

22    the 2013 dividend, can as a matter of law constitute a

23    transfer at an under value.

24         The pension administrator's claims as we discussed

25    a little bit earlier also involve awfully complex and

1   rapidly evolving questions of Canadian law.

2          And given that these are both complex questions,

3   unsettled questions, frankly, important questions of

4   Canadian law it would just be improper for any U.S. Court to

5   get out ahead of the Canadian courts on the issues or to

6   second guess what the Canadian courts are doing.

7          So to be clear, the Canadian plaintiffs don't

8   dispute that in the right circumstances it's appropriate for

9   this Court to decide issues of Canadian law.  We know Your

10  Honor is capable of doing that.  It's just that this isn't

11  the right context.  We have a specialized Canadian court.

12  We have evolving and complex questions of Canadian law.  And

13  we have a litigation on these very legal issues and these

14  very facts that's already going forward.  The right thing to

15  do is to make sure that the court with the greatest

16  expertise in these particular issues and facts is the one

17  that manages the whole litigation.  That's unquestionably

18  the Canadian court.

19         The debtors have fourth argued that somehow

20  granting our motion would open the flood gates to additional

21  motions for relief from the stay.  That's a general

22  assertion.  They could and do make it in support of any

23  number of oppositions to motions for relief from the stay.

24  It's not particularized our facts at all.  It should be

25  given no weight.

Page 42

1          It also ignores the fact that to the extent

2     there's a risk of flood gates being opened, I would say

3     those flood gates are opened.  Last I checked they've

4     already filed three omnibus objections to motions for relief

5     from the stay.  People aren't shy about filing those

6     motions, and granting our motion isn't going to encourage

7     them any further.

8          But it also just ignores the Canadian plaintiffs

9     are situated differently and, frankly, the debtors know this

10    which is why they're filing individual objections to our

11    motion whereas we're not -- and rather than lumping us into

12    the omnibus objections.

13         The Canadian plaintiffs are not individual self

14    interested as they termed us creditors looking to obtain an

15    advantage.  We're fiduciaries or court officers representing

16    very broad constituencies involved in the proceedings of

17    Sears Canada.  This Court, courts in this district, have

18    regularly recognized that Canadian monitors act with

19    fiduciary duties to all stakeholders.

20         We're here in furtherance of those duties, trying

21    to make sure that the Canadian plaintiffs' claims are

22    litigated in as efficient a manner as possible.  And we come

23    with orders from the Canadian court respectfully requesting

24    that this Court extend assistance to the monitor, to the

25    litigation trustee, in execution of those duties.

Page 43

1              So it's just simply not the case that there's this

2      potential avalanche I think was their term of similarly

3      situated parties waiting to file motions.  The Canadian

4      plaintiffs stand apart of it.

5              And, anyway, the debtors in this court are more

6      than capable of dealing with motions from non-similarly

7      situated parties who don't deserve relief from the stay.

8              And, finally, and I know I've taken up a fair

9      amount of time, the debtors and the committee have suggested

10     that the motion is premature, that the Court should give

11     them more time to determine creditor recoveries before

12     allowing us to proceed.

13             They've already at least projected that there will

14     be meaningful creditor recoveries as we discussed.  And

15     counsel for the monitor's co-movant, the litigation trustee,

16     can, if the Court is so inclined, provide some additional

17     detail on the current status of the Canadian litigation and

18     why it's very important that we receive relief at this time.

19             I'll simply say this.  The Canadian litigation

20     needs to move forward, and if it doesn't move forward now,

21     we risk losing this one narrow opportunity to capture cost

22     efficiencies by having everything resolved in one single

23     proceeding.

24             Unless Your Honor has any further questions.

25             THE COURT:  Well, I would like to hear the current

Page 44

1   projection of the schedule of this litigation if I granted

2   the motion.

3           MR. DAUCHER:  I'll cede the podium to my colleague

4   --

5           THE COURT:  I mean, it's --

6           MR. DAUCHER:  -- Neil Oxford.

7           THE COURT:  -- already the third week of May and

8   document discovery is kind of ready to be done by the end of

9   June.  So I just want to get a sense of how realistic that

10  is.

11          MR. DAUCHER:  Thank you.

12          MR. OXFORD:  Good morning, Your Honor.  Neil

13  Oxford of Hughes, Hubbard & Reed for the litigation trustee,

14  Douglas Cunningham, and for the class representative as

15  well.

16          Picking up on your last question to Mr. Daucher,

17  the time table will be unaffected if Your Honor were to lift

18  the stay and Sears Holding was to be joined as a defendant

19  in the litigation.  As Mr. Daucher mentioned there was a

20  hearing in front of Mr. -- Justice McCughen in April where

21  Sears Holding appeared and requested not an adjournment of

22  the whole proceedings, but an adjournment simply of certain

23  motions to strike pending the outcome of the motion that

24  this Court is hearing today.

25          Out of respect for judicial economy and principles

Page 45

1   of comity Justice McCughen granted that motion.  That did

2   not, I think, Mr. Daucher mentioned that the proceedings in

3   Canada are being held up.  I would say it differently.  I

4   think that's actually not correct.  Mr. -- Justice McCughen

5   made no adjustments to the overall timetable.  That overall

6   timetable remains in place.  As Your Honor has suggested

7   there's going to be discovery very shortly and the various

8   interim steps between now and trial --

9           THE COURT:  Have the parties taken discovery of

10   anyone else as -- to meet the June 30th deadline?

11           MR. OXFORD:  I don't believe so.

12           THE COURT:  Okay.  All right.

13           MR. OXFORD:  I don't believe so.  But just on that

14   point, Your Honor, as I understand it Justice McCughen at

15   that hearing has stated that if the timetable were to slip

16   for any reason, and we all agree it's a fairly aggressive

17   timetable, it would slip only by a matter of weeks.  So

18   we're still looking at a trial in the spring of 2020.

19           THE COURT:  Okay.  And why -- there's two months

20   in between close of document discovery and deposition.  Is

21   that customary or is that just because it's summertime or --

22       (Laughter)

23           MR. OXFORD:  Having (indiscernible) in Canada I

24   don't remember getting a summer off, Your Honor.

25           THE COURT:  Okay.

Page 46

1          MR. OXFORD:  The discovery works a little

2   differently than it does down here, so there's not -- there

3   are depositions as I understand it or examinations of a --

4   of representative witnesses and then there's a slightly

5   complicated and to me unfamiliar process of sorting out the

6   objections to that testimony and filling in blanks in that

7   testimony.

8          So I think that may be why there's that gap.

9          The other point I did just want to mention is that

10  Canadian counsel for the U.S. debtors when they appeared

11  before Justice McCughen repeatedly assured the Court that if

12  leave was granted to lift the stay and to join Holdings as

13  we urge the Court to do, they would try hard not to blow up

14  the schedule and would work to fit in within existing

15  timetables.

16          So as I understand it we are looking very fairly,

17  very squarely at a spring trial in Canada against the

18  (indiscernible) existing defendants.  And in our submission

19  it makes much more sense to do that against defendant number

20  15 as well.

21          THE COURT:  Okay.

22          MR. OXFORD:  Just to pick up on one other question

23  that the Court asked Mr. Daucher, which is why Holdings was

24  not joined kind of ab initio and whether there should be any

25  negative inferences from that, I think the Court was

Page 47

1    wondering whether that was indicative of their relative

2    importance, I would submit not.

3          The short answer to your -- Your Honor's question

4    is that at the time these claims were approved by the

5    Canadian Court which was late December of 2018 there was

6    still an ongoing sale process.  The bankruptcy in the United

7    States was still in a, really in its infancy.  And we

8    thought it was more appropriate to wait until the sale had

9    been confirmed and a plan was in place for -- to appear

10   before Your Honor and to request relief from the stay.

11         So it was really out of respect for the ongoing

12   Chapter 11 process.  And it's also really just a matter of

13   months.  We're talking less than three months between when

14   the Canadian claims were allowed to go forward against the

15   other 14 defendants and when we first started discussions

16   with the U.S. debtors and the UCC to add the 15 defendants.

17         So in my submission no negative inference can or

18   should be made.

19         THE COURT:  Okay.

20         MR. OXFORD:  Okay.  So I think I've probably

21   covered a lot of what I was intending to say already, so

22   I'll be as brief as I can.  I just have three points.

23         The first one is that despite their efforts to

24   suggest otherwise, the U.S. debtors are by no means a

25   stranger to the Canadian litigation.  They have been

Page 48

1      monitoring it since the get go.

2              In December 3, 2018 there was a hearing in front

3      of Justice Haney concerning the appointment of the

4      litigation trustee and permission for the monitor to proceed

5      with the transfer at undervalue claims.  And we were in

6      attendance at that hearing.

7              After the litigation was approved, as I think Mr.

8      Daucher mentioned, there was a request by Holdings canceling

9      Canada to be added to the service list, which happened.  As

10     I mentioned in mid-March we started discussions with the UCC

11     and with the debtors in the hope that they would agree to

12     this motion.

13             So in short answer what's been going on in Canada

14     is a process that has not been foreign by any means to the

15     U.S. debtors.  They've been very aware of what's been going

16     on really for the last six months.

17             THE COURT:  Okay.

18             MR. OXFORD:  That leads to my second point which

19     is there is no reason to delay a decision on the stay.  The

20     U.S. debtors and the UCC have had plenty of time to make up

21     their mind.  They've had six months, in fact.  They don't

22     need any more time.  They know exactly what those claims are

23     and they can take their position on that.

24             I would suggest, Your Honor, that that is of

25     particular importance here where a delay is essentially a

Page 49

1    denial of the motion.  We have a limited opportunity.  The

2    bankruptcy universe has aligned such that it is an

3    appropriate time to join Holdings to the existing litigation

4    without suffering any meaningful delay up there, if any

5    delay at all.

6            But that window is closing.  The train is leaving

7    the station.  The horse is about the leave the barn.  Pick

8    your metaphor, whatever you want.  It's a one-time

9    opportunity that the Court has here.

10           That brings me to my third point, that this motion

11   is a real opportunity for this Court to save a very

12   significant amount of judicial resources and of the parties'

13   resources.  We're off to the races in Canada.  It's set down

14   for an eight week trial, complicated issues, four claims,

15   many witnesses, probably a dozen or more witnesses.  We're

16   going to be doing that in Canada in February, certainly in

17   the spring of 2020.  And then if the stay isn't lifted,

18   we're going to come back down to White Plains and we're

19   going to do it all again.

20           THE COURT:  You won't have an eight week trial,

21   that's for sure.

22       (Laughter)

23           MR. OXFORD:  Something of a relief to me, Your

24   Honor.

25           So in my respectful submission it's hard to think

Page 50

1    of a more clear cut waste of the parties' resources.

2            The U.S. debtors admit that it's a waste of the

3    Canadian parties' resources and they say, in Canada that

4    doesn't matter.  Respectfully, we disagree.  As Mr. Daucher

5    says, it matters a great deal.  The parties who are before

6    you represent the creditors of the Sears Canada bankruptcy

7    estate.  These are the people who lost their pensions.

8    These are the people who lost their livelihood.  So I do not

9    think we should be so cavalier about these resources.

10           It's not, however, just our resources.  I think

11   it's the resources of the U.S. debtors as well.  There's

12   some fuzzy math going on here.  I -- it's clear that the

13   U.S. debtors have been monitoring what's going on in Canada,

14   as is appropriate.  Absolutely they should.  They're -- on

15   their theory of the case they're going to have the same

16   trial again before Your Honor at some point in the future.

17   So they're monitoring it.

18           Then they're going to have to try it again.  Under

19   no circumstances, I would submit, does common sense allow

20   anyone to conclude that monitoring one trial and doing it

21   again is cheaper than just doing it once over.

22           THE COURT:  Well, there is a natural alternative

23   which is that they continue to monitor the trial.  They see

24   how it turns out vis-à-vis the other parties and then they

25   resolve it with you all, depending on how it turns out, not

Page 51

1    in a trial, but as people usually do in a negotiation.

2            MR. OXFORD:  That is certainly one alternative.

3    But it's by no means guaranteed --

4            THE COURT:  No, it isn't.  That's true.

5            MR. OXFORD:  And I think we have the right to

6    press our point not only in Canada against the existing 14

7    defendants.  We have a right to press it against Holdings.

8    And if we can get a good settlement, you know, obviously

9    that would be something we would consider.  But --

10           THE COURT:  Well, they would resolve the claim in

11   the context of what already had happened in Canada.

12           MR. OXFORD:  They might resolve the claim.

13           THE COURT:  They might.  That's the issue.  They

14   wouldn't --

15           MR. OXFORD:  They might.

16           THE COURT:  -- be bound to.  And so there is a

17   risk that there would be further adjudication here.

18           MR. OXFORD:  Yeah.  There's a very significant

19   risk.  I mean, if they're participating in the Canadian

20   court proceedings, they don't have a voice.  They don't have

21   any objections to the evidence that comes in.  They might

22   totally disagree with it.  They might think that Your Honor

23   might make a different evidentiary ruling and that would

24   change the outcome of the case.  There's -- you know,

25   there's a lot of maybes and a lot of uncertainties.

1           THE COURT:  The law would be clear, though.

2           MR. OXFORD:  The law may very well be clear.

3    Again, that's -- that assumes that Holdings doesn't take

4    issue with any of those rulings as they apply to them.

5    Again, they're not the before the Court --

6           THE COURT:  It's hard for me to imagine --

7           MR. OXFORD:  -- in Canada.

8           THE COURT:  -- that after a Canadian court had

9    ruled on these issues that I would disagree with it as a

10   matter of -- as an interpretation of the law.

11          MR. OXFORD:  It's a fair point, Your Honor.  The

12   law may be more clear after we've been to trial in Canada.

13          THE COURT:  How much of the eight weeks do you

14   think would actually involve Holdings?

15          MR. OXFORD:  I think Holdings would have to be

16   there --

17          THE COURT:  It's in the middle of the whole thing.

18          MR. OXFORD:  -- for the whole part of it that

19   their claim includes joint and several liability claims by

20   the litigation trustee.  So I think they have to be there

21   for the whole piece of the trial.

22          THE COURT:  It doesn't sound like it was a

23   controlling shareholder just reading the facts.  I mean, if

24   you're talking about a fiduciary, maybe a different concept

25   in Canada, but there is a point where it held that the vast

Page 53

1    majority of the stock, but there were subsequent --

2                    MR. OXFORD:  Yeah.  As I --

3                    THE COURT:  -- transactions --

4                    MR. OXFORD:  -- understand they were the majority

5    shareholder, Your Honor.

6                    THE COURT:  The whole time?

7                    MR. OXFORD:  For the relevant period.

8                    THE COURT:  During the dividend?

9                    MR. OXFORD:  In 2013.  Yeah.

10                   THE COURT:  Okay.  All right.  Okay.

11                   All right.  Thank you.  I appreciate the --

12                   MR. OXFORD:  Thank you.  Those are my submissions

13   unless the --

14                   THE COURT:  Okay.

15                   MR. OXFORD:  -- Court has questions.  Thank you.

16                   MS. MARCUS:  Good morning, Your Honor.  Again --

17                   THE COURT:  Good morning.

18                   MS. MARCUS:  -- Jacqueline Marcus on behalf of the

19   debtors.

20                   Rather than belabor everything, all the arguments

21   that we made in our objection, Your Honor, which essentially

22   boil down to the fact that we don't believe the Canadian

23   plaintiffs have established that the SONOX factors justify

24   the relief requested.

25                   I just want to respond to a couple of the

Page 54

1    statements made by Mr. Daucher and Mr. Oxford.

2              First, Your Honor, I -- you hit the nail right on

3    the head when you asked your first question which was,

4    couldn't the Canadian plaintiffs have sought to sue Sears

5    Holdings Corporation back in December when they filed their

6    Canadian actions.  And of course those actions would have

7    been barred by the automatic stay.  But if they thought that

8    Sears Holdings was a critical defendant at that point, they

9    could have filed a motion for relief from the stay back

10   then.

11             Second, Your Honor, the statements that Sears

12   Holdings has been participating in Canada is really very

13   much of an overstatement.  Of course we have Canadian

14   counsel that is monitoring, I'll call it more like watching

15   what's going on in Canada.  And, in fact, some of our early

16   discussions were should we do anything or should we just let

17   that proceeding take its path without any participation at

18   all.  Obviously, the more prudent course was to make sure

19   that nothing happening there would be prejudicing the

20   defendants.

21             Third, with respect to the specialized court, we

22   have cited cases which indicate that a court like the

23   Canadian court, I think it's called the Commercial List, is

24   not the kind of specialized court that the SONOX factors

25   elude to.  The SONOX factors relate more to courts like the

Page 55

1    Patent Court or the Tax Court.

2            In addition, the fact that a Canadian court has

3    issued a ruling that says that the Commercial List is a

4    specialized court shouldn't really bear any weight in this

5    court for application of the SONOX factors.

6            THE COURT:  But isn't the question that -- I mean,

7    I look at this as fundamentally a situation where unlike my

8    interpretation of applicable Delaware law, for example, I

9    would have to take expert testimony of Canadian law and I

10   think that's a major difference.

11           MS. MARCUS:  We don't disagree with that, Your

12   Honor.

13           THE COURT:  Okay.

14           MS. MARCUS:  But I think your point that you made

15   at the end of the colloquy about the fact that if the

16   Canadian litigation proceeds and then we're back before the

17   Court liquidating the claims we may know the answer on the

18   Canadian law was very well taken and very important to the

19   Court's consideration here.

20           And in addition, Your Honor, as you well know,

21   liquidation of claims against the debtor is one of the core

22   matters before a bankruptcy court and we think you are the

23   specialized court for determining what claims should be

24   allowed against the debtors.

25           With respect to --

Page 56

1          THE COURT:  Well, how is this except maybe worse

2   for the debtors, different than a situation where the

3   recipient of an alleged avoidable transfer is a debtor in

4   say Florida and the transferor is a debtor say in New York?

5   I mean, it has to get liquidated somewhere.  They're both

6   bankruptcy estates.  The one difference here is that foreign

7   law would apply.

8          MS. MARCUS:  Right.  I mean, I don't think it's

9   very different, but I also don't think -- it shouldn't be

10  worse for the debtor than if that were the case of just

11  dueling U.S. bankruptcy cases.

12         THE COURT:  Well, all right.  But on the other

13  hand, both courts sort of have core jurisdiction over the

14  matter.

15         MS. MARCUS:  Uh-huh.

16         THE COURT:  And at that point I think you would

17  just look at the impact on the estate where the motion is

18  made.  And looking here I -- there's a statement in the

19  brief that the debtors submitted that if the dividend

20  litigation is stayed as against them, their obligation to

21  participate in discovery will be much more limited.

22         But, I mean, are we -- what is the magnitude we're

23  talking about here in terms of costs?  I don't really have a

24  sense of that, as to whether -- particularly, let me add one

25  more fact.

1          The trial here isn't slated to begin until next

2    February.  It's not going to be any earlier than next

3    February.

4          MS. MARCUS:  Uh-huh.

5          THE COURT:  By then it's clear to me that the

6    debtors will have a pretty good idea and/or a -- you know, a

7    liquidation trustee or a litigation trustee of their -- the

8    asset side of their estate and should be able to negotiate,

9    I would think.

10          MS. MARCUS:  Yes, Your Honor.  So let me start

11    with that one and then I want --

12          THE COURT:  And --

13          MS. MARCUS:  -- to go back --

14          THE COURT:  And a cost --

15          MS. MARCUS:  -- to the --

16          THE COURT:  -- of the trial seems to be the big

17    cost here, not the prep work.

18          MS. MARCUS:  Well, I think the cost of everything

19    leading up to February and, of course, because right now we

20    don't know what the exact recoveries of course are going to

21    be --

22          THE COURT:  Right.

23          MS. MARCUS:  -- hopefully we'll know that by

24    February.  But now is when we have to make the determination

25    as to allocation of resources in defending if you were to

1   grant relief --

2            THE COURT:  Right.

3            MS. MARCUS:  -- from the stay.

4            And so the point was made about, I think Mr.

5   Daucher gave the example of the $12 million, an estimated

6   potential recovery for the Canadian debtors of $12 million

7   and the cost -- Canadian maybe -- and the Canadian cost of

8   pursuing a litigation.

9            THE COURT:  Right.

10           MS. MARCUS:  But that's from the Canadian debtors

11  --

12           THE COURT:  No.  I --

13           MS. MARCUS:  -- point, not from --

14           THE COURT:  -- I understand.

15           MS. MARCUS:  -- our point.

16           THE COURT:  But I --

17           MS. MARCUS:  Right.

18           THE COURT:  It seems to me -- that's why I'm

19  asking the question.  It seems to me that if the debtors

20  would have to -- would -- I would think the debtors would --

21  I would lift the stay to have the debtors -- even if I

22  didn't lift the stay generally, I would lift the stay so

23  that discovery could be taken of the debtors as to the facts

24  on the transfer.

25           So at least between that and the point where

Page 59

1    you're gearing up for a trial in December and January, the

2    trial being in February, it wouldn't seem to me that there

3    would be a huge amount of money incurred.

4              I don't know, you tell me, I don't have any sense

5    of that.

6              MS. MARCUS:  I don't either, Your Honor.

7              THE COURT:  Okay.

8              MS. MARCUS:  Unfortunately, Canadian counsel isn't

9    here.

10             THE COURT:  All right.

11             MS. MARCUS:  I did want to go back to when you

12   were talking about the dueling better, you know, which court

13   should hear a case.

14             THE COURT:  Right.

15             MS. MARCUS:  The Canadian plaintiffs have said on

16   numerous occasions that Sears Holdings Corporation is not

17   the principal target of the Canadian litigation, that the

18   principal claims are not against Sears Holdings, they've

19   said it multiple times.  And if that's the case when the

20   Court applies the factors and balances the harms, I think

21   it's incumbent upon the Court to think about a fact that

22   they've said that Sears Holdings is not critical to their

23   case and that's something that the Court should take into

24   account.

25             With respect to the Sonax factors, I did want to

Page 60

1    respond with respect to --

2              THE COURT:  That would argue that some time

3    between now and well before February 3rd both parties would

4    have incentive to settle then, right?  I would think.

5              MS. MARCUS:  We're always interested in settling.

6              THE COURT:  Okay.

7              MS. MARCUS:  With respect to factor one under the

8    Sonax factors complete resolution of the issues --

9              THE COURT:  Oh, can I interrupt you one more time?

10             MS. MARCUS:  Sure.

11             THE COURT:  If I don't lift the stay, there's not

12   that same incentive, right, because Sears Holdings is just

13   sort of holding out there.

14             MS. MARCUS:  That same incentive right now for us,

15   but certainly either at the conclusion of the Canadian

16   litigation or any time between now and then the debtors

17   would want to avoid the expenses and the lay of litigation

18   of the claims.

19             THE COURT:  Am I right, I should have asked you

20   this question.  Sears Holdings is not in our U.S. terms, a

21   necessary party, right?  You could have this litigation

22   without Sears Holdings?

23             MR. DAUCHER:  Your Honor, not -- Eric Daucher on

24   behalf of the monitor.  Not being an expert in Canadian law,

25   but I would say the litigation is going forward or has been

Page 61

1    going forward without our participation.

2             THE COURT:  Okay.  And no one's argued it as far

3    as I can see that it's a necessary party.

4             MR. DAUCHER:  I think that's right, Your Honor.

5             THE COURT:  Okay.

6             MS. MARCUS:  Okay.  That's a factor one.

7             THE COURT:  Right.

8             MS. MARCUS:  So make a concession, so.  We have

9    conceded in our papers and I think it would be foolish for

10   us not to concede that if relief from the stay were granted

11   complete resolution of the issues might be possible, but we

12   note that the Court would be considering, I'll call it, some

13   of the same nucleus of facts in connection with the

14   adversary proceeding.

15            But in that regard and with respect to the

16   importance of factor one, Judge Bernstein in Breitburn

17   Energy has made some interesting comments about factor one,

18   and if you wouldn't mind, Your Honor, I'd like quote 571

19   Bankr. Reporter 59 at page 69, where Judge Bernstein said,

20   "If joining a debtor as a defendant in a multi-defendant

21   case meant that judicial economy always mandated stay

22   relief, this factor would subsume the other --"

23            THE COURT:  Right.

24            MS. MARCUS:  "-- Sonax factors in many cases and

25   force a debtor to defend against unsecured claims possibly

Page 62

1    in multiple venues."

2              THE COURT:  Clearly.

3              MS. MARCUS:  The other statement that Judge

4    Bernstein made in Breitburn, and in that case he granted

5    relief from the stay with respect to certain claims and

6    rejected relief from the stay, with respect to the assertion

7    of certain tort claims.

8              He noted as follows, "The movement remains free to

9    pursue its unstayed claims against the non-debtor

10   counterclaim defendants and file a proof of claim in this

11   court, while the debtors avoid the time and expense of

12   participating in a trial involving numerous parties, when

13   the ultimate distribution to the unsecured class may prove

14   that the value of the claim in bankruptcy dollars is not

15   worth the expense to either party of litigating it."  And

16   that's at 571 Bankr. Reporter at 69.

17             THE COURT:  Right.

18             MS. MARCUS:  The other statement that was made was

19   that resolution of the claim against Sears Holding is

20   holding up the completion of the Canadian insolvency

21   proceedings.  And given that the Canadian plaintiffs have

22   only sought relief to liquidate the claim, not to enforce

23   the claim, I can't imagine how that Canadian proceeding can

24   be wrapped up until we're really done with the Sears case

25   and know what the distribution on that claim would be.  So I

Page 63

1    don't think that that's a compelling factor.

2            Let's see if I had anything else.  I would also

3    note, Your Honor, that there were a couple of the Sonax

4    factors that weren't mentioned by the Canadian plaintiffs,

5    one of which is a claim covered by insurance.  And the

6    answer is that while the individual director defendants are

7    covered by the company's directors' and officers' insurance,

8    the actual entity, Sears Holdings Corporation is not, so the

9    debtors would have to pay the litigation expenses out of

10   pocket, as opposed to being able to look to insurance.

11           The other factor, factor 11 is whether parties are

12   ready for trial.  While trial may be eminent, being

13   scheduled for February, the parties are not ready for trial.

14   This is not a case or I should say with respect to three of

15   these actions, it's not a case where the debtor was a

16   defendant in litigation prior to the commencement of its

17   Chapter 11 case.  And the litigation had proceeded up to the

18   point of trial.  Many of the cases cited by the Canadian

19   plaintiffs have that fact pattern, that's not the case here.

20           And with that, Your Honor, we believe that the

21   stay relief should be denied --

22           THE COURT:  Okay.

23           MS. MARCUS:  -- and the Court should determine

24   that the Sonax factors don't justify the relief requested.

25           THE COURT:  I want to make sure I'm not missing

Page 64

1   something.  I -- there -- counsel for the Canadian

2   plaintiffs are right, there are references in the debtor's

3   objection to the adversary proceeding in front of me, that

4   asserts under U.S. law somewhat similar claims but related

5   to different transactions at different times.

6         I didn't get the sense that the debtors were

7   concerned about any preclusive effect on that litigation

8   that would stem from their participation in the Canadian

9   litigation, right.  That's not an issue?

10        MS. MARCUS:  That's not our argument, Your Honor.

11        THE COURT:  Okay.  So that adversary proceeding

12   would just go ahead and separately.

13        MS. MARCUS:  Yes, but the question is, you know,

14   could we spare the court getting embroiled in the nucleus of

15   facts related to whether and to what extent there was, you

16   know, a plan to divert assets from either Sears or from

17   Sears Canada for the benefit of certain shareholders.  That

18   general theme exists in both litigations.

19        THE COURT:  But it's really a pretty remote theme.

20   I mean, it's --

21        MS. MARCUS:  They are different claims, Your

22   Honor.

23        THE COURT:  Yeah.  I mean, it's not even, you

24   know, like --

25        MS. MARCUS:  The --

Page 65

```
 1              THE COURT:  -- my sweet, Lord, and one fine day,

 2    it's not the same -- it's not even the same tune really.

 3              MS. MARCUS:  Yeah, the adversary proceeding

 4    concerns a Sears Canada transaction in 2012.

 5              THE COURT:  Right.

 6              MS. MARCUS:  And the Canadian litigation involves

 7    the 2013 dividend.

 8              THE COURT:  Okay.

 9              MS. MARCUS:  Sears Canada is involved but it's a

10    different transaction.

11              THE COURT:  Right.  Does the -- but the 2012, is

12    that a Canadian transaction, Canadian law transaction or

13    U.S. transaction?

14              MS. MARCUS:  I think it was another dividend or

15    recap.

16              MS. HALL:  I thought it was the U.S. law spin-off

17    of the Canadian shares to the shareholders of Sears

18    Holdings, but --

19              UNIDENTIFIED:  It is, so it's U.S. law.

20              MS. MARCUS:  Thank you, Your Honor.

21              MS. HALL:  I think Mr. Qureshi or Ms. Brauner.

22              THE COURT:  Okay.

23              MS. BRAUNER:  Good morning, Your Honor, Sara

24    Brauner, Akin Gump on behalf of the committee.

25              Just very briefly, we rise to echo the points that
```

Page 66

1   Ms. Marcus made and to highlight only a couple of points

2   that were made in the Canadian plaintiffs reply that we

3   believe are either misguided or disingenuous or belied by

4   the specific facts here.

5           The first is, and this was said a number of times

6   in the Canadian plaintiff's papers that the debtor's

7   disclosure statement, namely the most recent disclosure

8   statement that was filed conclusively demonstrates that

9   there are material recoveries for unsecured creditors.

10           Respectfully as Your Honor is aware, and as the

11   debtors are certainly aware, the committee does not

12   necessarily share that view, and has very real concerns that

13   we are looking at administrative insolvency, not just on a

14   deep consolidated basis, but also on a consolidated basis.

15           So the assumption that there must be recoveries

16   here and therefore there's no issue at this juncture of

17   determining claims unfortunately may be incorrect.  And

18   there are a number of contingencies worth hundreds of

19   millions of dollars, both in the debtor's estimate and in

20   ours that could push one way or the other the availability

21   of such recoveries.

22           Similarly the point that the committee is somehow

23   disingenuous by believing there are potentially recoveries

24   here as a result of the litigation is inaccurate.  Just

25   because there may be valuable causes of action that would be

Page 67

1    pursued by the trust, by the debtors, by some combination

2    does not in turn mean that there are recoveries for

3    unsecured creditors at each debtor entity or overall.

4           The next point, there's a lot of focus on --

5           THE COURT:  Can I -- Holdings is Holdings, it's

6    above everything.

7           MS. BRAUNER:  Holdings is Holdings, that's right.

8           THE COURT:  Okay.

9           MS. BRAUNER:  The second point that permeates a

10   lot of these pleadings is back and forth on judicial economy

11   and is it more convenient as the Canadian plaintiffs say to

12   have one trial instead of two.  And Ms. Marcus touched on

13   this, there is no circumstance under which there will be one

14   trial, uncertain of the underlying facts here.  The real

15   question is will Holdings have to defend in two

16   jurisdictions.

17          THE COURT:  That's what I don't -- that was the

18   question I asked Ms. Marcus.  I'm having a hard time seeing

19   that.  Why would there be --

20          MS. BRAUNER:  So it's --

21          THE COURT:  -- the same issues, why would there be

22   -- put it differently, why would there be -- why wouldn't

23   there -- why would that happen, I don't understand.  Is it

24   different transactions?

25          MS. BRAUNER:  Your Honor is correct and Canadian

Page 68

1    plaintiffs are correct that they are different causes of

2    action, primarily by way of the fact that we're dealing with

3    different laws.  The transactions certainly are not the same

4    transactions.  I think it does come down to, in some

5    respects, the theory of the cases.

6            You have a course of conduct of similar players,

7    you have as Ms. Marcus eluded to perhaps an argument of

8    asset stripping that pervaded a number of years and numerous

9    transactions.  And so while yes, there are certainly

10   distinct fact patterns and distinct transactions here, the

11   real question is, how convenient on balance or inconvenient

12   is it to resolve the Sears Holdings issues in connection

13   with a trial that necessarily regardless of what happens in

14   Canada will be proceeding in the U.S.

15           And the relative harm, balance, however you want

16   to frame it to Sears Holdings having the ability to litigate

17   the limited and probably removable from the remainder of the

18   Canadian action claims, in connection with similar

19   discoveries, similar facts before Your Honor or a U.S.

20   Court.

21           That's not to say the legal issues are the same

22   and we agree with Ms. Marcus that Your Honor is correct,

23   there will be a need for Canadian law declarations here of

24   some sort, to the extent this Court addresses Canadian law

25   issues.

Page 69

1             But I think the point that Your Honor made about

2     perhaps keeping Sears Holdings out of the Canadian

3     litigation, allowing the litigation to proceed and

4     reassessing at a time when perhaps there is a lot more

5     clarity on number of issues that could be gating items here

6     perhaps makes some sense --

7             THE COURT:  Although the issue is we don't --

8             MS. BRAUNER:  -- and potential to dual litigation.

9             THE COURT:  The problem is we don't have any

10    assurance that that would happen.

11            MS. BRAUNER:  That's correct.  But I think --

12            THE COURT:  You know, just as a matter of trial

13    strategy I'm not sure you'd want to be on offense or defense

14    in the same trial.

15            MS. BRAUNER:  Do you want to be on offense and

16    defense in two different jurisdictions on the same issue?  I

17    mean it's --

18            THE COURT:  Maybe so.  Maybe so actually.

19            MS. BRAUNER:  I mean I think the question really

20    comes down to when you look at the parties in the United

21    States, you look at the debtors whose financial position is,

22    you know, challenging at best, and you look at

23    understandably a financial position of parties in Canada

24    that perhaps does not fare much better, you're going to have

25    two trials.

Page 70

1          The question is, in how many different places does

2    Holdings, and frankly, do Holdings creditors have to

3    litigate.  And that's something that I think might be a

4    little bit lost.  To the extent that there are actions

5    proceeding in the United States whether they're commenced by

6    the debtors or a liquidating trust or some other party in

7    interest, there's a real opportunity for unsecured creditors

8    to participate in things that will directly impact creditor

9    recoveries.

10          And as Your Honor is aware, the committee and

11   unsecured creditors have strong views about the course of

12   conduct and the governance that took place prior to the

13   petition date, and basically precluding that participation

14   by conducting this in Canada for costs and other --

15          THE COURT:  But again --

16          MS. BRAUNER:  -- efficiency reasons is tricky.

17          THE COURT:  -- you're on defense --

18          MS. BRAUNER:  You are.

19          THE COURT:  -- and it's different law and

20   different procedures.

21          MS. BRAUNER:  That's right.  But in order for the

22   creditors to participate separately from the debtors which

23   may be something that ultimately the creditors need to do,

24   it would be yet another set of counsel to get up to speed

25   and to participate in presumably not so much discovery but

Page 71

1    in preparation for trial and participation in trial.

2             So it's just on balance, to the extent there is an

3    easy way to resolve or at least a convenient way to resolve

4    some of these issues here, we just believe it should be a

5    consideration.

6             THE COURT:  Okay.

7             MS. BRAUNER:  Thank you, Your Honor.

8             THE COURT:  All right.  Thanks.

9             Okay.  Anything else?

10            MR. OXFORD:  Your Honor, if I may just address a

11   couple of few points for the record.  Neil Oxford, Hughes

12   Hubbard Reed for the litigation trustee.

13            Just picking up on Ms. Brauner's point, I confess

14   I'm a little confused about participation of the creditor's

15   committee in the Canadian litigation.  As I understand the

16   plan, the committee is going to dissolved in a couple of

17   months anyway, so I don't think --

18            THE COURT:  Well, a representative of creditors.

19   Just like the -- I mean, we don't have the monitor, but you

20   have a litigation trustee, for example.

21            MR. OXFORD:  Who may be able to --

22            THE COURT:  One of the plaintiffs is a litigation

23   trustee in Canada.

24            MR. OXFORD:  Perhaps in consultation with the

25   debtor, Your Honor, I take the Court's point.

Page 72

1          Two quick points, we're happy to talk settlement

2   any time, any day.  I think the universal rule applies in

3   Canada just as it does here, nothing focuses parties' mind

4   on settlement like a trial date.  So we would respectfully

5   say yes to that, lifting the stay would be the best way to

6   focus the mind to get involved in the litigation, and it

7   also captures the proficiencies that we discussed earlier

8   with Your Honor.

9          If there's a partial lift of the stay just to

10  allow discovery, I'm -- then ultimately there is no

11  settlement, which we would all obviously hope there is, then

12  all of those efficiencies are lost, my horses left the barn

13  and is galloping around the field, and that opportunity is

14  for cost savings that has been lost.

15         THE COURT:  Okay.

16         MR. OXFORD:  And just one last thought.  If -- and

17  I'm not suggesting Your Honor should have any concerns about

18  the conduct of the case in Canada, Your Honor may consider

19  if it's appropriate to have a discussion with Justice

20  McKewen (ph) who is the case management judge up there.  I

21  raise it only for the Court's consideration.

22         THE COURT:  For litigation of this kind do you

23  know what professionals normally charge per hour in Canada?

24         UNIDENTIFIED:  We're consulting with one Canadian

25  lawyer in the court, Your Honor.

Page 73

1            MR. DAUCHER:  Your Honor, I'm informed that the

2    rate would typically at the higher end be between 750 and

3    1,000 Canadian per hour --

4            THE COURT:  Okay.

5            MR. DAUCHER:  -- so 70 percent of that and change

6    for U.S. purposes.

7            THE COURT:  Okay.  All right.  I have before me a

8    motion by the plaintiffs in four pending litigations that

9    are all being administered by one judge in the Canadian

10   commercial court in connection with the CCAA case of Sears

11   Canada for relief from the automatic stay, so that a debtor

12   in this case, Sears Holdings Corporation, can be joined as a

13   defendant in three of those pending litigations and that

14   litigation can proceed against it in the fourth which was a

15   prepetition litigation where Sears Holdings had already been

16   named as a defendant.

17           Normally the automatic stay remains in place in

18   Chapter 11 cases with respect to unsecured claims, which is

19   what these unliquidated claims are, as would be asserted

20   against Sears Holdings in Canada.

21           However, Section 362(d)(1) of the Bankruptcy Code

22   provides in part that upon request of a party in interest

23   and after notice of a hearing, the Court shall grant relief

24   from the stay quote for cause.  Cause is not defined in the

25   Code itself, but the 2nd Circuit has laid out various

Page 74

1    factors that a Court should consider when being asked to

2    lift the stay to permit an unsecured claim to be liquidated

3    in another forum.

4            See In Re Sonax Industries, Inc., 907 F2d 1280,

5    1286, 2nd Circuit 1990, "One, where the relief would result

6    in partial or complete issue resolution; two, lack of

7    connection with or interference with the bankruptcy case;

8    three, whether the other proceeding involves the debtor as a

9    fiduciary; four, whether a specialized tribunal with

10   necessary expertise has been established to hear the cause

11   of action; five, whether the debtor's insurer has assumed

12   full defense responsibility; six, where the action primarily

13   involves third parties; seven, whether litigation in another

14   forum would prejudice interest of other creditors; eight,

15   whether a judgment arising from the action is subject to

16   equitable subordination; nine, whether the movant's success

17   in the other proceeding would result in a judicial lien

18   avoidable by the debtor; ten, the interest of judicial

19   economy and expeditious and economical resolution of

20   litigation; eleven, whether parties are ready for trial in

21   the other proceeding; and twelve, the impact of the stay on

22   parties and the balance of the harms."

23           As with many multi-factor tests, one needn't apply

24   all of the factors, some of which will never -- will not be

25   present as is the case here.  And as a practical matter many

Page 75

1      of these factors all focus on the same set of issues, which

2      for purposes of this motion really come down to the impact

3      of lifting the stay on the debtor's estate and the conduct

4      of this Chapter 11 case and the effect of not lifting the

5      stay on the movants.

6             To my mind questions of judicial economy, partial

7      or complete resolution, and the like is a subset of those

8      types of issues because the administration of a bankruptcy

9      case is all about efficiency and resolving matters fairly,

10     but expeditiously and efficiently.

11            Having heard the parties and also reviewed their

12     lengthy and informative briefing, which includes also a

13     concession or agreement by the Canadian plaintiffs that they

14     will waive any claim for punitive or exemplary damages, thus

15     obviating the need for this Court to review those types of

16     damages, if in fact, awarded and to consider whether they

17     should be subordinated or not.

18            I conclude that the stay should be lifted to

19     permit the claim or claims to be liquidated in the Canadian

20     proceeding.  I say that primarily because I believe that

21     these claims although also asserted in this case in light of

22     the bar date established by the Court are primarily and in

23     fact I believe wholly Canadian law claims, and ultimately of

24     far greater importance to Canada than the U.S.

25            They involve issues of the corporate governance of

Page 76

1   Canadian companies and transfers that may or may not be

2   avoidable under Canadian law.  It appears clear to me and is

3   acknowledged by one of the plaintiffs that such claims at

4   this time at least are uncertain under Canadian law or that,

5   in other words, at least in some respects, the Canadian

6   court would be acting on a relatively blank slate in

7   deciding such issues.

8          Given that fact, I believe that I would

9   appropriately decline to adjudicate such a claim if there is

10  a parallel proceeding that also would not unduly disrupt or

11  impair the case before me.

12         See generally the discussion in In Re Picard, 917

13  F3d 85, 2nd Circuit 2019 at 103.  There, of course, the 2nd

14  Circuit determined that to the contrary the claims at issue

15  were in fact centered under U.S. law, but the Court's

16  thoughtful analysis of how U.S. courts should approach

17  issues that are fundamentally governed by and the primary

18  importance to a foreign country gives me guidance here.

19         I further conclude that lifting the stay would not

20  unduly affect the conduct in an adverse way of this Chapter

21  11 case.  The Canadian court has already laid out I think

22  more than a tentative schedule for the litigation which

23  contemplates the completion of document discovery at the end

24  of June, the completion of examinations, which are not

25  exactly like our depositions but close enough in September

1    of this year, and a trial in early February.

2              It's clear to me that the debtors would be at a

3    minimum monitoring that process.  Further, the debtors seem

4    to acknowledge in their objection that they also might

5    properly be subject to discovery in that process, even if

6    not named as a defendant.

7              Clearly, the costs of participating at that level

8    as opposed to a named defendant would be less for the

9    debtors, but I believe that one way or another, these claims

10   do need to be liquidated.  And the costs of liquidating such

11   claims if one went to trial would be at least as high I

12   believe here, if not higher.

13             It also appears to me that the opportunities to

14   reach a settlement of these claims, taking into account not

15   only the claims merits, but also the cost of litigation and

16   the ultimate likely cents on the dollar recovery of any

17   liquidated damages result are far from precluded, and in

18   fact, will be as likely if I lift the stay as if I do not.

19             It appears to me that most of the costs would take

20   place fairly soon before and during the trial which is

21   projected to be for several weeks.  At that point, discovery

22   will have been complete and the plaintiffs all but whom are

23   fiduciaries for a bankrupt estates and creditors would have

24   an incentive as would the debtor to negotiate at that point

25   to avoid additional costs.

1          It also does not appear to me that the conduct of

2     this litigation would have any preclusive effect on the

3     highly important to this case pending adversary proceedings

4     and any further adversary proceedings that are contemplated

5     by estate fiduciaries.

6          The result obviously I don't believe would be

7     entitled to any preclusive effect and even the application

8     of comity would be tenuous as to those other causes of

9     action since they appear to me to be governed by U.S. law

10    and involve totally different fact patterns.

11         I appreciate that at this particular time in these

12    cases the debtors are relatively cash poor.  And that is a

13    concern because lawyers always want to have assurance that

14    they will be paid.  On the other hand, again, it appears to

15    me that the early stages of the litigation here will not be

16    particularly costly to the debtors above the costs that they

17    would be incurring anyway if I did not lift the stay in

18    monitoring the litigation and/or and participating discovery

19    as a non-party to it.

20         Each one of these types of cases really involves a

21    detailed factual analysis as shown by my colleague Judge

22    Bernstein in not only the Breitburn case cited during oral

23    argument, 571 B.R. 59, Bankr. S.D.N.Y. 2018, but also In Re

24    Sun Edison, Inc., 557 B.R. 303, Bankr. S.D.N.Y. 2016.

25         In that case, for example, the debtors were highly

Page 79

1    focused on developing a plan, selling their assets, et

2    cetera and had a legitimate concern about opening the

3    floodgate for other litigation if a stay was lifted here.

4             In that case also, the litigant was seeking to

5    pursue litigation that was in many respects the crux of the

6    whole case, which clearly the bankruptcy court wanted to

7    keep a finger on.

8             In Breitburn, the issues really focused on

9    efficiency and the position of the various or the options on

10   how the various claims could be liquidated.  Here, I don't

11   believe that this ruling will open the floodgate, in fact, I

12   have not granted stay relief I believe in any of the other

13   instances where litigants have moved for relief from the

14   stay except where there's a clear light to insurance.  And I

15   frankly don't see any reason to deviate from that course at

16   this point.

17            However, given that this litigation is clearly

18   more important as a matter of Canadian law and while it is

19   not a case where discovery is completed, in fact, it really

20   hasn't started, it is fair to say that a trial will occur in

21   this matter I believe as soon as or faster than the trial

22   would occur in my case on these claims, and will not

23   interfere sufficiently with my case to prevent that from

24   happening or to sever Sears Holdings from the process.

25            So in light of all of that, I'll grant the motion

Page 80

1   as modified in the papers and lift the stay to let the

2   claims be liquidated.

3          So I'll ask counsel for the movants to submit the

4   order.  You don't need to formally settle the order, but you

5   should circulate it to counsel for the committee and the

6   debtors, so that they can make sure it's consistent with my

7   ruling.

8          MS. PESHKO:  Your Honor, for the record, Olga

9   Peshko, Weil Gotshal for the debtors.

10          THE COURT:  Good morning.

11          MS. PESHKO:  As stated earlier in the record, Your

12   Honor, the next item on the agenda is adjourned.

13          THE COURT:  Right.

14          MS. PESHKO:  That's the William Juiris motion for

15   relief from the stay.

16          So the next item we have is the motion of Liberty

17   Insurance Corporation for relief from the stay.  Its counsel

18   is appearing, I can see the floor.

19          THE COURT:  Okay.  Is anyone here on the phone for

20   Liberty Insurance?

21      (No response)

22          THE COURT:  All right.  Well, maybe they decided

23   not to speak given one of my remarks during the last hearing

24   with my ruling.  Let me just check to make sure they're not

25   on the call in list.  I don't believe they are and I think

Page 81

1    that's understandable because the motion is really couched

2    as a request to lift the stay so it'd go against insurance.

3              MS. PESHKO:  That's right.

4              THE COURT:  But there isn't any insurance.

5              MS. PESHKO:  No.

6              THE COURT:  As stated by the debtor's objection.

7    So I will deny the motion based on those facts.

8              MS. PESHKO:  Thank you, Your Honor, we'll submit

9    an order.

10             The next item is the motion of Rosa Melgar for

11   relief from the stay.

12             THE COURT:  Okay.  Is anyone here or on the phone

13   for Ms. Melgar?

14        (No response)

15             THE COURT:  All right.  I believe that's

16   understandable as well, this is the same type of motion.

17   The motion was made in the hopes that there would be

18   available insurance to cover this claim.  However, as stated

19   in the debtor's objection to the motion, there isn't.

20   That's clear from the attachment to the motion and in light

21   of that, and in light of the status of the litigation in

22   that, that the movant is requesting the stay be lifted to

23   let proceed, I'll deny the motion.

24             As noted in the two cases I cited in my ruling,

25   the Breitburn and Sun Edison case, it's the rare case where

Page 82

1   the stay is lifted to permit litigation to proceed and the

2   facts just don't warrant it here.

3          MS. PESHKO:  Thank you, Your Honor, we'll submit

4   an order.

5          THE COURT:  Okay.

6          MS. PESHKO:  The next motion is a motion of

7   Winters Industry for allowance and payment of administrative

8   expense claims, Your Honor.

9          THE COURT:  Okay.

10          MR. FAIL:  Good morning, Your Honor, Garrett Fail,

11   Weil Gotshal & Manges for the record.

12          Before we turn to the next item in isolation, the

13   next and final six items on the agenda are all related, Your

14   Honor.

15          THE COURT:  Right.

16          MR. FAIL:  They're agenda items 11 through 16.

17   Your Honor will note that the debtors filed an omnibus

18   objection to all of the motions, that's at Docket No. 3883.

19   There was a lot of paper already, we felt we would

20   consolidate the reply to synthesize the arguments that were

21   made and reduce the burden on the Court.

22          In the objection we summarized and responded to

23   the various requests.  There are essentially three points

24   that were made by various parties.  In general, the parties

25   sought the allowance of claims pursuant to 503(b)(1) of the

1   Bankruptcy Code.  They sought in the alternative allowance

2   of claims for the same claims under Section 503(b)(9).

3   These are for prepetition claims. And then they sought

4   payment, one party in one part of the motion, sought payment

5   for postpetition claims.

6           As the debtors set forth in their objections, none

7   of the parties is entitled to a claim pursuant to Section

8   503(b)(1) under the 2nd Circuit definition of administrative

9   expense claims.

10          With respect to the 503(b)(9) requests, the

11  debtors made clear their position that claimants can't use

12  an inappropriate motion practice to cut short the debtors',

13  and all parties in interests' time to reconcile and allow

14  claims or to avoid the automatic stay.

15          And third, with respect to one part of one

16  movant's motion we explained why a particular payment wasn't

17  made.

18          Your Honor, the UCC has joined with a qualified

19  joinder the debtors' position agreeing importantly with

20  respect to the 503(b)(1) analysis and with respect to the

21  process for 503(b)(9) claims to be reconciled and allowed.

22          I assume that the Court has reviewed the pleadings

23  and is familiar with the case law.  As the 2nd Circuit has

24  instructed, priority should be narrowly construed because

25  any priority given to one creditor is done to the detriment

Page 84

1     of all other creditors.

2           I'll defer to the Court as to the most efficient

3     means to proceed this morning, but didn't want to have one

4     party go without introducing them altogether.  I'm also

5     happy to answer any questions the Court may have of the

6     debtors at this point.

7           THE COURT:  Okay.  I have two orders dealing with

8     claim procedures in this case.  There's an order dated

9     February 22, 2019, the bar date order which in addition to

10    setting a bar date for claims generally sets it for claims

11    under Section 503(b)(9) of the Code, and sets out a

12    procedure for then dealing with those types of claims.

13          I also have an order dated March 28, 2019 that

14    lays out claim objection procedures, claims settlement

15    procedures and claims hearing procedures.  It's clear to me

16    that the first order applies to 503(b)(9) claims and I don't

17    think anyone's disputing that.

18          Are the debtors asserting that to the extent a

19    claim is a 503(b)(1) claim, the latter order, the March 28th

20    order should govern?

21          MR. FAIL:  Your Honor, these parties -- instead of

22    speaking in the abstract, with respect to these parties'

23    motions I believe they filed proofs of claim for each of

24    them.

25          THE COURT:  Okay.

Page 85

1              MR. FAIL:  They've asserted that they were

2      prepetition claims.  In those claims, they've asserted in

3      some instances probably 503(b)(9) priority, they're also

4      asking for 503(b)(1) priority for the same facts and

5      circumstances.

6              THE COURT:  Okay.

7              MR. FAIL:  We don't believe that they're 503(b)(1)

8      claims and we don't believe that creditors should add or

9      enhance a priority to get to the head of the line to then

10     reconcile a general unsecured.

11             THE COURT:  Well, maybe I wasn't clear in my

12     question.  It sounds like you want me to decide today -- the

13     others, the claimants clearly do -- whether they have

14     asserted a 503(b)(1) claim, and not to channel them into the

15     claims objection and settlement procedures in the March 28th

16     order.

17             MR. FAIL:  Your Honor, that's the debtors'

18     request.  We think the law is clear on the --

19             THE COURT:  So you'd like to get the issue done

20     with?

21             MR. FAIL:  To prevent additional motions or

22     requests.

23             THE COURT:  Okay.

24             MR. FAIL:  If Your Honor wants to defer them all,

25     the debtors' position would be that's fine too.

Page 86

1          THE COURT:  Well, it may not make a lot of sense

2    because there seems to be --

3          MR. FAIL:  Sought some certainty, we thought that

4    was an easier issue.

5          THE COURT:  The one point that I am hesitating

6    over is that outside of a common fact pattern, which is that

7    the transaction was entered into prepetition, I don't think

8    I should be deciding today anything else under 503(b)(1).

9    And there -- I mean, you may contend, for example, that a

10   claim didn't fall under 503(b)(1) for some other reason,

11   other than the fact that it was a prepetition transaction.

12   That's not really believed or dealt with in these claims, I

13   don't think, that are before me today.

14         MR. FAIL:  Right.  Your Honor, the debtors'

15   position is that the movant bears the burden to prove his

16   claim.  Each of the motions is pending requesting 503(b)(1);

17   we're simply saying those motions should be denied in part

18   with respect to that.

19         THE COURT:  In other words, just to be -- to get

20   down to the nitty gritty --

21         MR. FAIL:  Yeah.

22         THE COURT:  -- I don't think that what I should be

23   doing today is going through particular invoices and saying,

24   oh, yes, this is postpetition, oh, yes, this is prepetition.

25         MR. FAIL:  We agree.

Page 87

1          THE COURT:  That should be the claims procedures.

2          MR. FAIL:  We agree.

3          THE COURT:  What I should be going through today,

4    I gather both sides want me to do, is to deal with the legal

5    issue that the claimants have raised, which is that as long

6    as goods are received by the debtor postpetition,

7    notwithstanding when the transaction actually occurred or

8    the consideration was provided, they have a postpetition

9    claim.

10          MR. FAIL:  Your Honor used the word "received."

11    The word "received" is open to interpretation --

12          THE COURT:  It's not in the statute.

13          MR. FAIL:  That's our point, Your Honor.  And --

14          THE COURT:  It's not 503(b)(1).

15          MR. FAIL:  That's our point.

16          THE COURT:  But that's the only issue that I think

17    is before --

18          MR. FAIL:  So I would say the appearance --

19    they're saying --

20          THE COURT:  -- me today.

21          MR. FAIL:  I agree, Your Honor, and I think we

22    just heard -- I hope we've heard your answer on that.  The

23    appearance of goods in America doesn't determine 503(b)(1)

24    priority where we've taken title, ordered, and incurred an

25    obligation prepetition.

Page 88

1          And so the -- you know, a deviation from the clear

2    2nd Circuit Southern District precedent would add ten to a

3    hundred million dollars of additional claims that the

4    debtors can't afford in these cases.

5          THE COURT:  Okay.

6          MR. FAIL:  I'll cede the podium, Your Honor, but

7    I'm happy to answer any other questions.

8          THE COURT:  Okay.

9          MR. SCHWARTZ:  If I may, Your Honor, Jeffrey

10   Schwartz with Cole Smith on behalf of Winters Limited and to

11   be clear for the record, I've not asked you to look at an

12   invoice today.

13         THE COURT:  Okay.

14         MR. SCHWARTZ:  I had filed this motion on behalf

15   of my client in December.  I, at the debtors' request,

16   didn't press to have it heard because of the pending

17   matters.  And then a couple of months ago, the debtors told

18   me that they agreed with the amount of the claims to the

19   penny.

20         THE COURT:  I'm sorry?

21         MR. SCHWARTZ:  They agreed to the amount of the

22   claim to the penny, but they were applying as to the

23   administrative claim and obviously there are administrative

24   claims asserted and 503(b)(9) claims that we're asserting.

25   And I just filed the initial reply just to present to the

Page 89

1   Court that fundamental question, is the Court applying

2   constructive receipt. I'm talking about 503(b)(1) not

3   503(b)(9) --

4        THE COURT:  Right, because 503(b)(9) is governed

5   by my February order.

6        MR. SCHWARTZ:  Right.  So I'm not putting that

7   before the Court now.

8        THE COURT:  Okay.

9        MR. SCHWARTZ:  The interpretation of 503(b)(1)

10  under applicable Supreme Court and 2nd Circuit law does

11  require harmonization of two sections in the same section,

12  harmonization.

13       So you have under the 2005 Act, you have Congress

14  acting, Congress amended together in a separate subchapter

15  546(c) and added 503(b)(9).  (b)(9) then -- so Congress has

16  established a policy as to vendor claims.

17       Congress had determined, and I'm cutting to the

18  chase here, Congress had determined that vendor claims when

19  they're at least interpreted by the 3rd Circuit the actual

20  receipt rule that vendor claims prepetition-based agreements

21  when the goods are delivered actually received by the debtor

22  in 20 days preceding the petition date, those goods are

23  entitled to 503(b)(9) administrative priority.

24       So then what the debtors have posited to you, and

25  I understand, this estate currently is essentially

Page 90

1    administrative insolvent.  I understand that they don't have

2    the money to pay these claims, and we're not looking for

3    money today.  Winters is not asking you to order these

4    claims to be allowed and paid today.  I understand all of

5    that.  And I think most of my colleagues do.

6              THE COURT:  Most do, I think there are a couple of

7    requests for immediate payment.

8              MR. SCHWARTZ:  And I winced when I read that

9    because look at the disclosure statement, you'd know that

10   this is one of these --

11             THE COURT:  Right.

12             MR. SCHWARTZ:  -- novel situations where 139

13   million of 503(b)(9) money is to come from the buyer, as

14   well as 166 million of other payables money, as well as

15   there's 52 million of cash being withheld, cash inventory

16   being withheld by the buyer, and given the fact that the

17   estate has filed a claim for $2 billion accusing the buyer

18   controlling insiders of actual fraud, self-dealing, lack of

19   good faith, as appropriate fiduciary one can't really be

20   saying why that, that that's going to be resolved any time

21   soon, if past is prologue and we see in the disclosure

22   statement that's listed as an asset at face, and I don't

23   know, I haven't talked to any claims buyers, but it's hard

24   to imagine anyone would pay face for that.

25             So I get the distress --

1          THE COURT:  Okay.

2          MR. SCHWARTZ:  -- the administrative distress and

3     I think my colleagues do, but there's always hope, Your

4     Honor.

5          So I just want a couple -- for the record, I want

6     to make hyper abundantly clear that when the debtor says six

7     movants impermissibly seek to leap ahead of thousands of

8     other creditors in both priority of payment and priority of

9     the loss of the prepetition claims, that's false, it's just

10    untrue.

11         I'm just trying to get -- Your Honor referred to

12    fairness early.  Your Honor referred to clarity of law

13    earlier on today's docket.  And the point is, there are

14    plenty of administrative claimants who were they to have

15    this clarity, I mean, what would my client do if Your Honor

16    determines 503(b)(1) that it's still the constructive

17    receipt rule and then by implication under 503(b)(9) it's

18    constructive receipt rule.

19         Your Honor said last month that, oh, three to five

20    years out, maybe there will be a couple of cents or three

21    cents, some nominal amount.  So are they going to pay legal

22    fees to get these claims, you know, allowed an amount.  I

23    already know what the amount is anyway.

24         The only reason any party, any of the foreign

25    vendors is here is -- including -- I'm here on behalf of my

Page 92

1    client is simple.  503(b)(9) as interpreted by the 3rd

2    Circuit is clear, there is an absolute obligation in

3    interpreting the law per the Supreme Court and the 2nd

4    Circuit.  And all these cases they've cited are pre-2005.

5         THE COURT:  No, they're not.  Listen, I'm going to

6    cut through this.

7         MR. SCHWARTZ:  Yeah.

8         THE COURT:  The 2nd Circuit -- I'm sorry, the 2nd

9    Circuit has not ruled on the proper interpretation of the

10   word "received" in Section 503(b)(9).

11        MR. SCHWARTZ:  Yes, Your Honor.

12        THE COURT:  And right now, as far as the 3rd

13   Circuit is concerned two judges ruled one way, they happen

14   to be trial judges, and the 3rd Circuit ruled the other.

15        But one thing is clear, they were interpreting a

16   word.  The word was "received."  That's in the specific

17   provision, 503(b)(9), "received."  And the 3rd Circuit's

18   case, World Import was all about what Congress meant when it

19   used that word, the word "received" in 503(b)(9).

20        MR. SCHWARTZ:  Yes, Your Honor.

21        THE COURT:  It assumed, that is the 3rd Circuit

22   assumed, that it was incorporating UCC law as then known as

23   an implied meaning for the word "received," whereas the

24   trial courts said, well, since foreign vendors don't use the

25   UCC, that maybe you should apply the convention on

Page 93

1    contracts.  And the inco (ph) terms governing it, which are

2    incorporated in it.  But it's all geared to interpreting a

3    word in one statutory section, 503(b)(9).  That word doesn't

4    appear in 503(b)(1).  503(b)(1) as interpreted by the

5    Circuit and by the district and by others after 2005, has a

6    very different formulation, which says, "after notice and a

7    hearing, there shall be allowed administrative expenses, …

8    including the actual necessary costs and expenses of

9    preserving the estate."  And the 2nd Circuit has held that

10   that includes two things; actual and necessary, and estate.

11   So you have to have a transaction with the estate, with the

12   debtor in possession or the trustee.  It's a totally

13   different statutory framework.

14          Now, so I think your argument just comes down to,

15   well, there are illogical results because of how 503(b)(9)

16   is drafted and interpreted by the 3rd Circuit.  It's not the

17   first time Congress has done something like that, but they

18   certainly didn't rewrite 503(b)(9) notwithstanding that

19   there was extensive case law interpreting it just as I've

20   said, including against very sympathetic parties, including

21   pension beneficiaries and retirees, where notwithstanding

22   that the pension withdrawal claim occurs, arises post-

23   petition, their claims except for the work they did post-

24   petition are prepetition claims.

25          It would be totally illogical for me to assume

Page 94

1    that Congress somehow rewrote out of the Code all of that

2    case law and intended that provision to somehow now be

3    interpreted to include the word "received" in it, as

4    interpreted by the 3rd Circuit. It just doesn't make any

5    sense.

6             MR. SCHWARTZ:  May I respectfully submit to Your

7    Honor that when the goods are delivered postpetition that's

8    to a debtor in possession --

9             THE COURT:  But the transaction is prepetition.

10   When a --

11            MR. SCHWARTZ:  Performance is postpetition when

12   the goods are received by the debtor in possession.

13            THE COURT:  No, the transaction is a prepetition

14   transaction.  There are lots of times when things happen

15   postpetition.  Frenville, for example, McFarlands, but the

16   consideration was prepetition, there was a contract

17   prepetition.  There was a purchase order prepetition.  It

18   couldn't be clearer under the case law.

19            MR. SCHWARTZ:  I'm trying to put out the

20   consideration is provided postpetition to the debtors.

21            THE COURT:  If the goods had not been delivered,

22   the debtors would have had a prepetition lawsuit against the

23   client -- your client.

24            MR. SCHWARTZ:  Right.

25            THE COURT:  That was the transaction, the

Page 95

1    contract, the prepetition contract.  It was performing --

2    your client and all the other parties who have made this

3    argument were performing a prepetition agreement.  It wasn't

4    an agreement with the estate, it wasn't an agreement with

5    the debtor in possession.

6              MR. SCHWARTZ:  May I respectfully submit the

7    estate accepted the goods.

8              THE COURT:  But based on a prepetition contract.

9              MR. SCHWARTZ:  But they got the goods, they have

10   to receive the consideration.

11             THE COURT:  It doesn't matter.  It doesn't --

12             MR. SCHWARTZ:  So the estate said --

13             THE COURT:  Do you have any case that supports

14   this? You don't, right, because you haven't cited any?

15             MR. SCHWARTZ:  Well, the 3rd Circuit decision --

16             THE COURT:  That's under 503(b)(9).

17             MR. SCHWARTZ:  Correct.

18             THE COURT:  Interpreting -- and it's crystal clear

19   that they're trying to deal with a specific word under

20   503(b)(9), not with policy, just with the matter of

21   statutory construction --

22             MR. SCHWARTZ:  Well --

23             THE COURT:  -- trying to figure out what the word

24   "received" means.

25             MR. SCHWARTZ:  The 3rd Circuit did say it was

Page 96

1   dealing with policy that 2-702 of the UCC was incorporated

2   in 546(c) and that in 2005 the Congress enacted an amendment

3   to 546(c) and also enacted 503(b)(9) which did establish a

4   policy as to vendors.

5        THE COURT:  No, they don't say that.  In fact,

6   they do not say that, sir.  They say, in the context of

7   Section 503(b)(9) -- I'm sorry, the context of Section

8   503(b)(9) is clear, "It is an exception to the general

9   bankruptcy reclamation scheme established by Section 546(c).

10  Given the interrelationship between these two provisions and

11  our holding that Congress meant for terms used in Section

12  546(c) to bear the definition used in the Uniform Commercial

13  Code at the time of (indiscernible) enactment.  It follows

14  that the UCC definitions also apply to the Section 503(b)(9)

15  exception."

16        And then they have a footnote that says, "We note

17  we did not in Mirren (ph) --" I'm sorry, "We note as we did

18  in Mirren that our reliance on the UCC in determining the

19  time of receipt does not mean that the definition of receipt

20  under the Bankruptcy Code is a matter of state law and might

21  change were an individual state to alter its laws; rather,

22  Congress intended to use the UCC definition at that time;

23  i.e., when it enacted the statute, physical possession, and

24  it is not subject to change absent an amendment to the

25  Bankruptcy Code."

Page 97

1              It's all about 503(b)(9), it's just trying to

2    figure out what Congress meant by using that word.  It

3    doesn't have anything to do with 503(b)(1).  It's all in the

4    context of 503(b)(9).  Nothing about vendors generally.

5              And again, I'll go back, I guess vendors are

6    important like every other creditor is important, but I

7    doubt Congress views anyone more important than pensioners

8    and retirees.  It's enacted special statutes in certain

9    circumstances where they benefit, nevertheless, under the

10   case law even though the liability is crystallized when the

11   plan is terminated, the claim is postpetition only for their

12   postpetition work, that portion of it.  The rest is

13   prepetition.

14              MR. SCHWARTZ:  Right.  Yes, Your Honor.

15              THE COURT:  They didn't change the law, in other

16   words.  They didn't create a special vendor category other

17   than 503(b)(9).

18              MR. SCHWARTZ:  I don't mean to vex Your Honor --

19              THE COURT:  I'm not vexed, I just don't -- it

20   doesn't -- I don't see anything to this.  There's no special

21   vendor protection other than 503(b)(9) which is very

22   special, it created a whole new category of administrative

23   expenses, the only administrative expense that's

24   prepetition.

25              MR. SCHWARTZ:  There's a general statutory

Page 98

1  construction subsection should be harmonized, basically what

2  you're sanctioning here is that if Sears or KMart or any one

3  of the debtors had decided as New Co would, Transform,

4  whatever it's called now, they've sent out a letter to get

5  around 503(b)(9) for whatever Chapter 11 or whatever other

6  purpose they have, dealing with bills of lading so that they

7  establish an agent and so forth.

8          So the idea here is that if Sears had 19 days

9  before the petition date, said, okay, we're going to take

10  half of the common carrier's delivering goods, and we're

11  told, come back on October 16th that that would be then

12  those would just be general unsecured claims.

13          THE COURT:  Yeah.  I mean, that's -- Congress

14  drafted this exception, and it is an exception.  And there

15  are ways around it.  I doubt they really thought through all

16  the ways around it; in fact, I'm pretty sure they didn't.

17  And probably the people that were trying to get this in said

18  to themselves, we better get as good as we can get.

19          MR. SCHWARTZ:  For the record, when there's a

20  position that it's an anomalous result I would assume

21  plausible result, it could never be imputed to Congress,

22  just stating it for the record.

23          THE COURT:  Well, okay.  But I will respond that

24  special purpose legislation often has this effect.  It does

25  create anomalous results, but it's special purpose

1    legislation, it itself is anomalous, it doesn't mean that

2    the whole rest of the structure of the Bankruptcy Code has

3    to be turned on its axis to accommodate it.  It's a special

4    purpose exception, it doesn't go beyond that.

5            MR. SCHWARTZ:  Thank you, Your Honor.

6            THE COURT:  Okay.  Thank you.

7            MR. GALARDI:  Your Honor, for the record, Greg

8    Galardi of Ropes and Gray on behalf of Apex.

9            I've heard Your Honor and I'm not going to try to

10   vex you.  What I'm really going to do is -- and I understand

11   that when Congress does special legislation it has anomalous

12   results. We did argue and we believe there is a 503(b)(1)

13   basis based on 2nd Circuit law.

14           And I want to point to Your Honor cases we did

15   cite, and a case that actually does support the proposition

16   from the 9th Circuit with respect to 503(b)(1).

17           First, Your Honor, if you go to Chattooga 296

18   B.R. at 656, though the court didn't conclude that there was

19   a claim and instead had an evidentiary hearing, it

20   specifically took on Verizon and it says, "The Court can

21   nevertheless find that ACC used the service in question that

22   it wanted them and it needed them and it did so post-

23   petition knowingly and willingly.

24           You have Judge Bernstein's decision that's cited

25   in that case, Patient Education Media, that also looked to

Page 100

1  whether the postpetition conduct induced the performance

2  postpetition.

3         THE COURT:  But Patient Education Media was the

4  sound stage case, where they just left the sound stage there

5  and they used it.

6         MR. GALARDI:  I understand, Your Honor.  But here

7  we have the following difference.  First, in the cases that

8  they were cited, Your Honor could look at the 9th Circuit

9  case, Coastal Trading case, 744 F.2d 686 where the 9th

10 Circuit actually said that UCC acceptance that occurred

11 after the petition date constituted an event and a

12 transaction that could give rise to the 503(b)(1) claim.

13        So that -- you may not agree with that case --

14        THE COURT:  Well, the 2nd Circuit doesn't agree

15 with it, it's the --

16        MR. GALARDI:  The 2nd Circuit hasn't ruled on

17 exactly that point, Your Honor.

18        THE COURT:  But it's the -- if you have a

19 prepetition transaction it's not with the "estate."

20        MR. GALARDI:  Your Honor, what you said is a

21 prepetition transaction and I hate to say this, but you put

22 the rabbit in the hat.  Because what Chattooga says, which

23 is again, 296 B.R. 656, it's not whether you had a contract

24 or transaction, but it is to go beyond that and to say, what

25 would a postpetition event and could they constitute a

Page 101

1    transaction not in the sense of the contract.  That is

2    significant.  The underlying theory is to encourage vendors

3    to deal with the postpetition estate, going on achieving

4    those goals requires satisfying the legitimate expectations

5    of those who supply postpetition goods and services.  For

6    those reasons, it is circumstances surrounding the

7    postpetition delivery and receipt of goods, rather than

8    either the presence or absence of a contract for the

9    delivery of contractual privity that is determinative.

10   That's what we have argued.

11             THE COURT:  How are they being induced?

12             MR. GALARDI:  Your Honor, there's a first day

13   order that Your Honor I came before you and you said --

14             THE COURT:  The first day order is a separate

15   issue.

16             MR. GALARDI:  No.

17             THE COURT:  But you argue the pre- and post point,

18   that's really -- they have to deliver.

19             MR. GALARDI:  Actually you don't have to deliver,

20   Your Honor.

21             THE COURT:  They have the -- and otherwise, they

22   have a reclamation order.

23             MR. GALARDI:  No, they also have a right to stop

24   shipment when the goods haven't had the title passed.  Those

25   are two valuable legal rights the vendors gave up.

Page 102

1          The debtor instead says, we don't want to go

2     through that disruption, we don't want to go through that

3     litigation, we don't need thousands, and on the other side,

4     where you have the thousands of lift-stays, we want to

5     resolve this and we're going to say if you ship or deliver

6     postpetition you'll be paid in the ordinary course of

7     business.

8          THE COURT:  Okay.  That's the November 20th order.

9          MR. GALARDI:  That's the November 20th order, it's

10    also when I came -- no, actually I think it's -- Your Honor,

11    I came back on the shipping, we qualified it, it was the

12    second day, yes, November 20th.

13         THE COURT:  Right.

14         MR. GALARDI:  We had this discussion in the

15    transcript --

16         THE COURT:  That order I didn't think we were

17    going to be dealing with today.  That needs to be dealt with

18    in a separate context.

19         MR. GALARDI:  Well, but, Your Honor, that exactly

20    is the context because our position is, with that order,

21    with us coming in and saying exactly what we said, Your

22    Honor said --

23         THE COURT:  Well, I'm sorry, Mr. Galardi, the main

24    thrust of -- maybe everyone else's of your colleagues, on

25    your side of the table this time was not really based on

1   that.  It's based on this theory that receipt has somehow

2   been elevated now into delivery.

3         I appreciate the issues raised by the November

4   20th order.  There are two conflicting paragraphs in that

5   order, for example.  The debtors assert that there were

6   discussions back and forth on the record; that's really not

7   in front of me today.  I'm going to deal with that another

8   day.

9         MR. GALARDI:  But, Your Honor, here's the issue.

10  You're being asked to rule today.  And maybe I am excluded

11  from this, but you're being asked to rule today that there

12  was no, and I want to understand a final order, there is no

13  503(b)(1) for any vendor who delivered.  What I am

14  suggesting --

15        THE COURT:  I'm not saying that.

16        MR. GALARDI:  Okay.

17        THE COURT:  What I'm saying is, there is no

18  503(b)(1) based on a theory that if you -- separate and

19  apart from this order, separate and apart from the November

20  20th order -- on the theory that you are entitled to an

21  administrative claim because you delivered postpetition as a

22  matter of law.

23        MR. GALARDI:  That somehow receipt, so somehow

24  there has to be consistency, I understanding that, and

25  that's why we said we're not going to fight it, and it's 3rd

Page 104

1    Circuit and everything else.

2            THE COURT:  But the separate issue, the effect of

3    the order, that's for another day.  To me, that's a more

4    complicated issue and, you know, I had like seven of these,

5    I think you might have been the only one that raised that

6    point, and I'd rather deal with that separately.

7            MR. GALARDI:  And I think -- so then we would ask

8    if Your Honor just to move forward with that at some point

9    in the not too distant future because I did --

10           THE COURT:  That's fine.

11           MR. GALARDI:  -- raise it back in November ---

12           THE COURT:  That's fine.

13           MR. GALARDI:  -- and our motion has been pending.

14           THE COURT:  But there are a lot of other issues

15   related to that, like --

16           MR. GALARDI:  Understood.

17           THE COURT:  -- what were the discussions, who did

18   what, that's the type of thing that I think people should be

19   talking about.

20           MR. GALARDI:  Your Honor --

21           THE COURT:  You know, the Indian company, Pearl,

22   says we were told X, Y and Z. I don't know if that's true or

23   not; I think it depends, because the order itself is just a

24   starting point.  The order has two conflicting provisions.

25   So it may be a case-by-case determination.

Page 105

1          MR. GALARDI: Your Honor, again as we've said in

2     our papers and I'll leave it for another day, we actually

3     don't think when you make a public statement of the sort,

4     and I'm not sure what two inconsistent remarks you're saying

5     --

6          THE COURT:  Well, I'll read them. Paragraph 8

7     says, "All undisputed obligations of the debtors arising

8     from the postpetition delivery or shipment," so it has the

9     word "delivery," there's a typo, "by, of goods under the

10    Prepetition Orders, are granted administrative expense

11    priority status pursuant to Section 503(b)(1)(A) of the

12    Bankruptcy Code."

13          And then it goes on to say, "and the Debtors are

14    authorized, but not directed to pay such obligations in the

15    ordinary course of business, consistent with the parties'

16    customary practices in effect prior to the commencement

17    date."

18          Now, "Prepetition Orders" itself, that term isn't

19    defined in this order.

20          MR. GALARDI:  Correct.

21          THE COURT:  Second, though, paragraph 12 says,

22    "Notwithstanding entry of this order, nothing herein shall

23    create, nor is intended to create any rights in favor of or

24    enhance the status of any claim held by any party."

25          MR. GALARDI:  Your Honor, I guess we'll have the

Page 106

1    dispute later, but if the debtor is going to take the

2    position a reservation of rights, when you have that

3    specific undefined.

4              THE COURT:  They have taken the position.

5              MR. GALARDI:  I understand, but it's your order,

6    Your Honor, that's why I was here in November to ask for

7    exactly that clarification, knowing exactly that this would

8    be the debtors' change of position, and that's why we think

9    judicial estoppel applies --

10             THE COURT:  Well --

11             MR. GALARDI:  -- and we don't need an evidentiary

12   hearing on this.

13             THE COURT:  Well, I would need to go through the

14   transcript of that hearing.  But in addition to that, I

15   think that there may be issues with individual creditors.  I

16   don't know what they were actually told.  I don't know if

17   they were told, oh, forget about that order, for example, or

18   forget about paragraph 12, so.

19             MR. GALARDI:  Yes, Your Honor, I mean, I guess

20   we'll do that but then we're going to be having, for

21   example, my client probably has $7 million in administrative

22   claims, whether they're 503(b)(1) or (9) this will come up

23   again in the not too distant future --

24             THE COURT:  Well, perhaps but they'll -- it's not

25   a blanket ruling in other words.

Page 107

1           MR. GALARDI:  It should be a blanket rule, Your

2    Honor, with all due respect when a debtor publishes an order

3    to all of the vendors an intention to give them, and Your

4    Honor and I have practiced where it's out of an abundance of

5    caution, to give them an order so we can shove it -- give it

6    to the vendors and let it --

7           THE COURT:  It's a five page order, it's not that

8    hard to read.

9           MR. GALARDI:  Exactly and it's not that hard to

10   convince shippers and vendors to ship based on that order,

11   which is exactly what the practice the debtors do.

12          THE COURT:  Well, I don't know.

13          MR. GALARDI:  Okay.

14          THE COURT:  I mean, it depends, I think.  Some

15   vendors might be delighted to ship because they're going to

16   get paid at least for what they have in their inventory.

17          MR. GALARDI:  That's fine, Your Honor, we'll --

18          THE COURT:  And then they keep doing it, and they

19   get a new order, the Indian company for example, got an

20   order that three times as large as what they shipped.

21          MR. GALARDI:  Yes, Your Honor.

22          THE COURT:  Really, I mean, I think at that point

23   people should be going through the claims resolution process

24   --

25          MR. GALARDI:  But this is --

```
                                                    Page 108

 1              THE COURT:  -- and this is a point to raise as

 2       part of that process.

 3              MR. GALARDI:  Well, but the claims resolution

 4       process is addressed to prepetition claims.

 5              THE COURT:  Well --

 6              MR. GALARDI:  This goes to administrative claims.

 7       It's not a 503(b)(1), this goes directly to what should have

 8       been paid in the ordinary course.

 9              THE COURT:  But I don't think it's a case where

10       you can do it as it's teed up before me today.  I don't have

11       any witnesses. I think you would want to talk to the debtors

12       first about it -- you say you have either 503(b)(9) or

13       503(b)(1) you want to liquidate -- and decide which is which

14       and see what your area is. I mean it's --

15              MR. GALARDI:  Well, Your Honor, I think we'd be

16       prepared to put up witnesses at the next hearing very

17       rapidly on the (b)(1).  It's not a simple overlap issue.

18       There is no dispute over the --

19              THE COURT:  Well, there may not be, there may not

20       be, but at least normally people try to quantify what

21       they're fighting over in bankruptcy and --

22              MR. GALARDI:  Our first motion did, it said $5.4

23       million in 503(b)(1) and $1.7 million; this issue has been

24       out there.  We were prepared again, Your Honor had the sale

25       hearing, you had all these hearings --
```

Page 109

```
 1                 THE COURT:  Right.

 2                 MR. GALARDI:  -- we're prepared to come back in

 3      very short order and put on evidence with respect to the

 4      claims.

 5                 THE COURT:  Okay.  That's fine.

 6                 MR. FAIL:  Your Honor --

 7                 THE COURT:  I just suggest that maybe you go

 8      through it with the debtors first.

 9                 MR. GALARDI:  We have tried.

10                 THE COURT:  Okay.  All right.  And are these

11      potential claims that Transform's picking up?

12                 MR. GALARDI:  No.

13                 THE COURT:  No, they're not, okay.

14                 MR. FAIL:  Your Honor, just so they don't pile up,

15      I'll just add a couple of rebuttal points.

16                 First in terms of the process, the debtors don't

17      believe that admin claimants can properly file motions and

18      appear at their discretion on 14 days' notice.  If people

19      aren't paid there's contested matters that need to be

20      commenced, but the debtors aren't inviting that, the debtors

21      will work and review issues.

22                 Mr. Galardi and his clients, all of these parties

23      and movants, and understand the complexity of the issue, and

24      the way that they've interrelated 503(b)(1) to 503(b)(9) we

25      sought to provide them the clarity for 503(b)(1), and I
```

1    think Your Honor's ruling today has gone very far to that

2    end.

3            With respect to the allegation that the final

4    order could have influenced any party, but that point in

5    time I believe the allegations in the -- in Apex's motion

6    were that the goods were delivered, so I mean the parties --

7            THE COURT:  But those were the factual issues that

8    --

9            MR. FAIL:  -- before they move going -- I agree --

10           THE COURT:  -- depend on each vendor.

11           MR. FAIL:  -- factual issues, I'm just saying the

12   parties should be cautioned about making statements about

13   reliance that occurred after the fact.  Our position on that

14   has been very clear from the very first minute it was

15   raised.  Any party that would have asked us would have been

16   directed to the paragraph that said you're not going to get

17   an increased priority.

18           There was reference to the Chattooga case, but the

19   citation that was given referred -- it was familiar, because

20   I read all the 50 cases that were cited last night; again,

21   it was the Adelphia Business Solutions case.  And the issue

22   in that case that was being determined had nothing to do

23   with delivery or shipment.  It had to do with two different

24   debtors and Verizon saying one of them owed me money, and

25   there were defenses, one saying was the other, it was a

Page 111

```
 1    contract with the other, has nothing to do with this
 2    whatsoever.  Whatsoever.
 3            And then there was also reference to the Coastal
 4    Trading case, which other courts have distinguished and said
 5    isn't binding and isn't definitive.
 6            So for another day, for another time for
 7    503(b)(9), but I don't want to leave the record mistaken
 8    that the debtors accept any of the statements that were
 9    made.
10            THE COURT:  Okay.
11            MS. BENCZE:  I've sort of been going out of turn,
12    Your Honor.  Nola Bencze with Clark Hill, and I represent
13    Milton Manufacturing.
14            I heard you loud and clear, Your Honor.  We
15    reserve any rights as to our 503(b)(9), and that obviously
16    will be decided in accordance with your Judge's order.
17            I've heard the arguments. In our papers we did
18    point to that order, the November 20th order as part of the
19    inducement.  The use of the term of "inducement," actually,
20    Your Honor, is coming from the Adelphia Business Solutions
21    case which debtors' counsel just mentioned, as well as
22    Jartran, and perhaps Jartran is a case you may recall
23    because it dealt with the Yellow Pages, a prepetition
24    contract.
25            And the Yellow Page vendor, you know, ran the ads
```

Page 112

1    postpetition and it turned out the debtors didn't want them,

2    and said we never wanted them.  And the significance about

3    that, Your Honor, is that the transaction with the debtor in

4    possession is satisfied by either inducement to do the

5    postpetition transaction, or where the benefit is knowingly

6    accepted, and I'm quoting Adelphia Business Solutions, as

7    well as Jartran.

8            I think that's significant here because the debtor

9    surely accepted the goods when it arrived at its facilities,

10   sold them, and used them to carry on whatever was necessary

11   to operate the Chapter 11.

12           THE COURT:  The debtor borrowed money that it had

13   in its bank account prepetition that it used postpetition.

14   Your logic would suggest that is also an administrative

15   expense.

16           MS. BENCZE:  Well, I don't know that I would agree

17   with you on that, because the borrowed money is in their

18   bank account based on a whole set of different

19   relationships.

20           THE COURT:  But it used it postpetition, so it

21   can't be the post-petition use.

22           MS. BENCZE:  No, it's not the postpetition use,

23   Your Honor, perhaps I misexplained that.  It's the fact that

24   it was welcomed and wanted.

25           THE COURT:  I'm sure they wanted the money too.

Page 113

1          MS. BENCZE:  I do, Your Honor, I see what you're

2     asking me, I really don't agree with the analogy.

3          THE COURT:  Okay.

4          MS. BENCZE:  Because to me the money in the bank

5     account, maybe at this point, my life (indiscernible) so,

6     you know, how that money got there and so on and so forth,

7     but I don't see it, so I apologize.

8          But that's the cases we were relying on, they were

9     not -- I mean, I definitely see the end world in Ports (ph)

10    case, but that was not what we relied upon.  We were relying

11    upon what had been previously held in the 2nd Circuit.

12         So I wanted to bring that to your attention.

13         THE COURT:  Okay.

14         MS. BENCZE:  And I guess ask a question, Your

15    Honor.  What -- I hear our discussion here, I hear you feel

16    there needs to be another day in regard to determination as

17    to the November 20th motion.

18         THE COURT:  Order.

19         MS. BENCZE:  I'm sorry, order.

20         THE COURT:  Right.

21         MS. BENCZE:  What is happening today with the

22    503(b)(1)?  I mean, what are -- is this being put off for

23    another day?

24         THE COURT:  Well, I mean, no one -- I don't know

25    what you're expecting.  Every vendor as far as its reliance

Page 114

1    on this order is different.  So clearly I wasn't going to

2    decide that today.  I did have this one legal issue which

3    was posited to me, which is simply based upon when a debtor

4    actually gets physical possession of goods decides whether

5    it's a pre- or postpetition claim and I'm happy to have

6    ruled on that, because I think that's just not correct as a

7    matter of law.

8              Other than that, I don't know what -- you know,

9    it's just not -- it's not teed up properly before me at this

10   point.

11             MS. BENCZE:  Well, we have other counsel, Your

12   Honor, thank you, Your Honor.

13             MR. FAIL:  Your Honor, just on the process point,

14   the debtors haven't objected to the claim so if the debtors

15   will review the claim --

16             THE COURT:  I mean they're filed administrative

17   claims.

18             MR. FAIL:  If they were, they were; if they

19   weren't, a motion doesn't give it an ability to file or an

20   amendment to a claim, but we'll review them.  Although

21   Milton did not make the argument for Alliance, I'm not sure

22   why it's being brought up if it was supposed to be today.

23             THE COURT:  Okay.

24             MR. FAIL:  Milton raised that point; there are

25   2,000 claims asserting 503(b)(9) that we're processing.

Page 115

1   We'll evaluate and we'll object or we'll allow or we'll

2   negotiate in due course.

3          THE COURT:  Well, these are not -- I mean, the

4   503(b)(9)'s will be dealt with separately.  There's, no

5   one's here pushing the 503(b)(9) claim today.  It's the

6   503(b)(1) claims.  They do -- I mean, there's no

7   administrative expense bar date.

8          MR. FAIL:  Right, so there were two -- there were

9   only two parties, Pearl and Apex that were asserting it, and

10  we could figure out if we need to schedule a hearing --

11         THE COURT:  Right.

12         MR. FAIL:  -- or agree to wait and see.

13         THE COURT:  And you're --

14         MR. FAIL:  It may be moot if we agree that they

15  have a 503(b)(9) in certain circumstances.

16         THE COURT:  Well, I think Apex says it's not moot

17  because there's a difference, like one's 5 and one's 2

18  million.

19         You're Pearl, right?

20         MR. WANDER:  Well, I'm David Wander.

21         THE COURT:  Well, I know, but you're representing

22  Pearl, I'm sorry.

23         MR. WANDER:  Yes, Your Honor, David Wander of

24  Davidoff Hutcher & Citron, counsel for Pearl Global

25  Industries.  I will be very brief, Your Honor.

```
                                                        Page 116
 1              THE COURT:  Okay.

 2              MR. WANDER:  First, I want the record to be clear,

 3   whatever we put in our motion, the relief we were seeking,

 4   we're not -- we did not come to court today to ask Your

 5   Honor for a ruling to pay our client, even if you ruled in

 6   our favor on the legal issue.

 7              THE COURT:  Right.

 8              MR. WANDER:  The time to go over the invoices is

 9   for another day.

10              THE COURT:  Okay.

11              MR. WANDER:  I put in my reply, I only disagree

12   with Your Honor on one item so to speak, which is I do

13   believe that in order for the case to move forward and

14   confirmation of the plan that has been filed and amended

15   that there needs to be a ruling on both the 503(b)(9) issue

16   and World Imports and "receive," that issue, as well as the

17   503(b)(1).  I recognize that that's not going to happen

18   today, but that's what we had said we needed today.

19              THE COURT:  Well, clearly I will at a minimum have

20   to estimate the allowed administrative expenses for

21   confirmation purposes.

22              MR. WANDER:  Correct, correct.  So we did make the

23   inducement claim; we're the Indian company that Your Honor

24   referred to.

25              THE COURT:  Right.
```

1    MR. WANDER:  And I'm going to be very brief

2    because I do agree that this is not for today.  I just want

3    to be clear that my client's inducement claim is not based

4    on the order of the Court.  Okay.  And I wasn't representing

5    my client at that time, I don't believe they had counsel.

6    My client's inducement claim is based on the e-

7    mail that was sent to my client and all the foreign buyers

8    and I just want that to be understood, and I believe that

9    may be a difference in our papers, but not necessarily a

10   difference in the positions of the claimants because that e-

11   mail was addressed to I believe all foreign vendors.

12   So I just want that to be -- the record to be

13   clear as we go forward with the discovery, in discovery or

14   whatever procedure they propose, that our reliance was based

15   on the e-mail that was sent to our client, and we believe

16   the other foreign vendors.

17   I do believe we should have some order on the

18   503(b)(1) issue, just as a matter of the record, but as far

19   as our motion I'll continue with the debtors' counsel with

20   regard to the inducement claim and wait for the 503(b)(9) to

21   be teed up whenever Your Honor does it.

22   THE COURT:  Okay.  I mean, I think -- I mean,

23   obviously the debtors have filed a plan, you're in plan

24   discussions, contemplating a confirmation hearing.  You

25   should give some thought with the Committee on how to deal

Page 118

1   with these issues in sort of a global context as part of

2   confirmation.

3         MR. FAIL:  Thank you, Your Honor, we will and

4   we're looking at the claims as they were asserted, parties

5   asserted claims in ways that are favorable and we're going

6   to address those that were asserted, not hypotheticals.

7   Obviously Mr. Wander referred to a record, I assume, and the

8   Court should only take that to mean his statement.  There

9   are no facts in evidence with respect to any correspondence.

10        THE COURT:  Absolutely.  But people should be

11  turning to facts, I mean, it takes two for example, not just

12  one party.

13        MR. SARACHEK:  Your Honor, Joe Sarachek on behalf

14  of Mien.  Really two points and I won't repeat, and we are

15  all talking the 503(b)(9) creditors and, you know, with

16  respect to Mien in particular, just so it's clear, the order

17  of Mien and it's a small order, but it had -- it

18  reverberates throughout like China I'd say, and I have a

19  bunch of Chinese clients, their order was prepetition.  The

20  goods were delivered postpetition, they were at the freight

21  forwarder.  The freight forwarder was not going to release

22  those goods to Sears absent, my understanding is, receiving

23  your November 20th order.

24        Sears subsequently recognized that the goods came

25  postpetition, and they, Sears, believed that they were only

Page 119

1   obligated to pay Mien postpetition some time in February.

2   They at one point said, we're going to pay you and then they

3   got into this whole --

4          MR. FAIL:  Your Honor, I'm going to --

5          MR. SARACHEK:  Wait, wait one second.  Well, the

6   point is, Sears acknowledged that they did not have receipt

7   of the goods.  And Sears, in fact, said, oh, no, this is

8   ESL's obligation, Your Honor.

9          THE COURT:  Look, it's -- I know you're an officer

10  of the court but this isn't evidence.

11         MR. SARACHEK:  Well, it's in an affidavit, Your

12  Honor.

13         THE COURT:  Well, but it's still not evidence.  I

14  don't have that person here.

15         MR. SARACHEK:  I understand.  I want -- I need to

16  emphasize to the Court that --

17         THE COURT:  And they'd be happy to have ESL pay

18  for it, that doesn't mean that they accept that it's a post-

19  petition claim, they're happy to have ESL pay for it.  I

20  don't think that matters.

21         MR. SARACHEK:  Your Honor, I need to emphasize to

22  the Court --

23         THE COURT:  I'm happy to have ESL pay for it, too,

24  I mean, you know.

25         MR. SARACHEK:  Well, so would we and June 1st

Page 120

1    according to the Court's previous order they're obligated to

2    pay $139 million --

3              THE COURT:  Right.

4              MR. SARACHEK:  -- and candidly we have been

5    reaching out to Weil throughout this process.  We have not

6    gotten any satisfaction of assurance of payment, and quite

7    frankly we're really quite all of us uncertain where the

8    claims resolution process is.  And the reverberations are

9    that many of our clients are facing insolvency themselves.

10   And that's a real fact.

11             So if they're not paid, whether it's on the small

12   amount or on the larger amount, there are consequences, Your

13   Honor.

14             THE COURT:  Okay.

15             MR. SARACHEK:  And we're not getting any

16   satisfaction from dealing with debtors' counsel because

17   we're not getting any clarity, notwithstanding and you've

18   referred to that you have these two orders on 503(b)(9);

19   well, we've called them umpteen times to discuss resolution

20   and some certainty, and we have no certainty.

21             And so, you know, cutting through all the red

22   tape, we're all here because we do need certainty on behalf

23   of our clients.  We weren't expecting you to order that they

24   pay us today, but we do need some certainty.

25             THE COURT:  Okay.

Page 121

1          MR. SARACHEK:  Thank you.

2          THE COURT:  Okay.

3          MS. WEYAND:  Thank you, Your Honor, Jacqueline

4   Weyand from Buchanan Ingersoll and Rooney, on behalf of

5   Gokoldas.

6          I think the arguments have been set forth by my

7   colleagues here today.  The one distinct fact to that is

8   different from us is that we do have a postpetition claim.

9   In December of 2018 we were called to ship approximately

10  $850,000 worth of goods to the debtor, and it's very clear

11  that's after the petition date, so these amounts are

12  entitled to administrative expense priority, because they

13  constitute postpetition transactions.

14         THE COURT:  Has the debtor objected to that?

15         MS. WEYAND:  At this time, we have not been paid

16  and --

17         THE COURT:  No, payment is another story.

18         MS. WEYAND:  I don't have an objection in writing,

19  no.

20         THE COURT:  Okay.

21         MR. FAIL:  Your Honor, Garrett Fail for the

22  record.  I think we said in our pleadings to the extent that

23  the invoices match books and records we believe it would be

24  entitled to administrative expense priority.  We haven't

25  done the reconciliation, there were thousands of vendors,

Page 122

1    and as Your Honor knows, the debtors have transferred their

2    employees to the buyer who have other responsibilities, and

3    we're working the best we can to do reconciliation.  But the

4    best use of -- and the best efficiency is not going to be

5    obtained by responding to one-off inquiries.

6              So we don't dispute that this is a postpetition

7    payment, and we said in our reply that this is tied up with

8    our dispute with the buyer in terms of the postpetition

9    liabilities that we believe the buyer has assumed.

10             MS. WEYAND:  And, Your Honor, may we just ask for

11   some clarity on this issue as soon as possible.

12             THE COURT:  Okay.

13             MS. WEYAND:  Thank you.

14             THE COURT:  So is anyone looking for payment,

15   immediate payment?  Are you looking for immediate payment?

16   I'm trying to figure --

17             MS. WEYAND:  If Your Honor is inclined to grant

18   it, then yes.

19             THE COURT:  Okay.  All right.

20             MR. FAIL:  Your Honor, and so then we would oppose

21   that request --

22             THE COURT:  Right.

23             MR. FAIL:  -- for the reasons set forth in our

24   pleading --

25             THE COURT:  Any objection.

Page 123

1          MR. FAIL:  -- and the obvious facts.

2          THE COURT:  Okay.

3          MR. SARACHEK:  We were, Your Honor.

4          THE COURT:  Okay.

5          MR. SARACHEK:  Mien was.

6          THE COURT:  Okay.

7          MR. SARACHEK:  Of $14,000.

8          THE COURT:  Okay.  Well, all right, anyone else?

9      (No response)

10         THE COURT:  Okay.  I have before me a number of

11   motions by trade creditors, vendors of the debtors, for the

12   allowance and payment of an administrative expense under

13   Section 503(b)(1) of the Bankruptcy Code.

14         As I noted during oral argument, a couple of those

15   motions seek also immediate payment of the administrative

16   expense, to the extent that it is allowed.

17     There are three orders in place in this case that are

18   relevant to these motions.  There's a final order

19   authorizing the debtors to pay prepetition claims and

20   confirm administrative expense priority for prepetition

21   orders, to move into the debtors' postpetition and satisfy

22   such obligations in the ordinary course of business, that's

23   dated November 20th, 2018.

24         There is an order dated February 22nd, 2019 that

25   in part has procedures for resolving claims under Section

Page 124

1   503(b)(9) of the Bankruptcy Code as well as asserting --

2   requiring that those claims be asserted by the bar date.

3           And then finally there's an order dated March

4   28th, 2019 dealing with claim objection procedures

5   generally.

6           One common issue has been raised in the motions

7   that I read as an attempt to move certain claims that may or

8   may not be 503(b)(9) claims (which if allowed are, in fact,

9   accorded an administrative expense priority on the same

10  level as 503(b)(1) claims, but under my February order, need

11  to be resolved pursuant to the procedures in that order).

12          One aspect again of the motions before me seeks to

13  take claims that might fall under 503(b)(9), because the

14  agreement under which the claim, the goods were provided was

15  a prepetition agreement, into the 503(b)(1) category.

16          In addition to that, and in addition to the couple

17  of motions that seek immediate payment of any allowed

18  administrative expense claim, certain of the motions state

19  that notwithstanding the prepetition nature of the

20  transaction between the vendor and the debtor, the debtor

21  engaged in certain conduct that turned that prepetition

22  transaction into a postpetition administrative expense

23  transaction under 503(b)(1), either based on the November

24  20th, 2018 order or other postpetition representations that

25  were made to the particular vendor.

Page 125

1           I have determined that that latter category of

2    administrative expense claim cannot be decided today, but

3    requires case-by-case determination based on the evidence

4    applicable to the particular transaction or the particular

5    vendor.

6           No claimant has the ability today to get that

7    evidence before me, and I should therefore not consider that

8    aspect of its argument today.

9           I can decide today the issue of whether any

10   allowed administrative expense should be paid now and I will

11   lay that out on the record, since there are a couple of

12   requests for that.  And the debtors have acknowledged that

13   they will pay undisputed administrative expenses at some

14   point, they just object to them being paid now.

15          It's well established that the timing of

16   distributions for administrative expense payments other than

17   at the close of the case under Section 1129(a)(9) of the

18   Bankruptcy Code which requires unless agreed to a different

19   treatment by the administrative expense creditor to be paid

20   at the earlier -- I'm sorry, at the later of the effective

21   date of the plan or the allowance of the claim, is within

22   the discretion of the Court.

23          As the leading treatise on bankruptcy states,

24   generally courts have held that the timing for payment of

25   administrative claims is a matter to be determined within

Page 126

1    the discretion of the bankruptcy court.  Factors influencing

2    the exercise of this discretion may include the status of

3    the case, the ability of the debtor to pay such claims, and

4    the particular needs of the administrative claimants, and

5    the probability that future administrative claims may not be

6    paid in full.  The latter point is especially important.

7    Courts generally recognize that the timing of an

8    administrative expense payment should be used to ensure the

9    orderly and equal distribution among creditors similarly

10   situated, and the need to prevent a race to a debtor's

11   assets, if there is a doubt as to the administrative

12   solvency of the debtor overall. See generally In re Korea

13   Cho Sun Daily Times, 337 B.R. 773, 784 (Bankr. E.D.N.Y

14   2005), and In re Shihai, 392 B.R. 62, 67 through 68 (Bankr.

15   S.D.N.Y. 2008).  See also In re Baptist Medical Center of

16   New York, Inc., 52 B.R. 417, 421 (E.D.N.Y. 1985), aff'd, 781

17   F2d 973 (2d Cir. 1986).

18           In this case there is a serious question on a

19   debtor-by-debtor level as to the debtors' administrative

20   solvency, was readily -- particularly at this time where the

21   purchaser of substantially all of the debtor's assets,

22   Transform, has not made the payments under the asset

23   purchase agreement. And, in addition, certain creditors have

24   asserted very large administrative expenses under 507(b) of

25   the Bankruptcy Code, which under the plain terms of that

Page 127

1    section take priority over other administrative expenses

2    under Section 507.

3            So in the exercise of my discretion I believe that

4    it would be improper to direct the payment of any particular

5    administrative expense at this point, even where, as is

6    asserted, by Mien, M-I-E-N, one of the movants, that non-

7    payment will have a material adverse effect on it.  That is

8    one of the factors a court should consider, but given the

9    number of administrative expense creditors and the fact that

10   non-payment will adversely affect any administrative expense

11   creditor, I don't believe it is dispositive here.

12           I will also rule on the one remaining issue that

13   was raised I believe in all of the pending motions, which is

14   whether under the Bankruptcy Code a vendor who enters into a

15   prepetition agreement with a debtor but delivers the goods

16   so that they are actually received in the possession or

17   constructive possession of the debtor postpetition, as a

18   matter of law has a postpetition administrative expense

19   claim under Section 503(b)(1) of the Bankruptcy Code.

20           The burden of proving entitlement to a priority

21   payment as an administrative expense rests with the party

22   requesting it. In re Bethlehem Steel Corp., 479 F3d 161, 172

23   (2d Cir. 2007).  And unless there is a contrary policy under

24   the Bankruptcy Code, a specific policy that is, specifically

25   enunciated, the application of Section 503(b)(1) to a

Page 128

1    particular set of facts should be narrowly construed because

2    of the overriding policy that the debtors' limited resources

3    will be equally distributed among the creditors and a

4    hundred percent statutory priority violates that policy and

5    takes money out of the general creditor body's pocket. See

6    Trustees of Amalgamated Insurance Fund v McFarlin's, Inc.,

7    789 F2d 98, 101 (2d Cir. 1986) -- I'm sorry at 100, (2d Cir.

8    1986) and In re Ace Elevator Company, Inc., 347 B.R. 473

9    (Bankr. S.D.N.Y. 2006).

10         As stated by the district court in In Re Hostess

11   Brands, Inc., 498 B.R. 406 (S.D.N.Y. 2013), "The case law

12   governing the grant of administrative expenses is well

13   established in the Second Circuit.  Section 507 of the

14   Bankruptcy Code gives first priority to administrative

15   expenses allowed under 11 U.S.C. Section 503(b) defined as

16   including 'the actual necessary costs and expenses of

17   preserving the estate including wages, salaries or

18   commissions for services rendered after commencement of the

19   case.' "An expense is administrative only if it arises out

20   of a transaction between the creditor and the bankrupt's

21   trustee or debtor in possession, and only to the extent that

22   the consideration supporting the claimant's right to payment

23   was both supplied to and beneficial to the debtor in

24   possession in the operation of the business."  Hostess, 499

25   B.R. at 411, quoting from McFarlin's, 789 F.2d at 101.

Page 129

1           McFarlin's and Judge Ramos go on to say at the

2      same page of Hostess, "A debt is not entitled to priority

3      simply because the right to payment arises after the debtor

4      in possession has begun managing the estate.  Rather it must

5      be a postpetition transaction between the claimant and the

6      debtor in possession, and the considerations supporting the

7      right to payment must have been both supplied to and

8      beneficial to the debtor in possession in the operation of

9      the business postpetition."

10          Here it was argued that Congress somehow changed

11     that general rule supported by the plain language of Section

12     503(b), or derived from the plain language of Section

13     503(b)(1), when in 2005 it enacted Sections -- revised

14     Sections 546 and 503(b)(9) of the Bankruptcy Code.

15          The movants contend that because it has been

16     interpreted that a claim entitled to administrative expense

17     under Section 503(b)(9) arises when the debtor or its agent

18     takes physical possession of the goods, that physical

19     possession of the goods being obtained postpetition also

20     gives rise to an administrative expense under Section

21     503(b)(1) of the Code.

22          This argument is misguided.  Section 503(b)(9) was

23     special purpose, special interest legislation adopted

24     specifically to favor dealers of goods as an exception to

25     the general requirement under Section 503(b)(1), as

Page 130

1    previously articulated by the McFarlin's and Hostess courts,

2    that the transaction and the consideration both be with the

3    debtor or debtor in possession postpetition.

4         503(b)(9) gives a priority based on prepetition

5    conduct.  And it is narrowly drafted and differently drafted

6    than Section 503(b)(1).  It uses a term which was the term

7    construed by the 3rd Circuit upon which the movants rely on.

8    In re World Imports Limited, 862 F3d 338 (3d Cir. 2017), to

9    be focused on a specific word in that section, which does

10   not appear in Section 503(b)(1).  Section 503(b)(9) gives an

11   administrative expense priority to the value -- "the value

12   of any goods RECEIVED by the debtor within 20 days before

13   the date of the commencement of the case under this title,

14   in which goods have been sold to the debtor in the ordinary

15   course of such debtor's business."

16        As was entirely appropriate, the Court in World

17   Imports Limited interpreted the meaning of the word

18   "received" in Section 503(b)(9), which was open to different

19   interpretations because it's not defined in the Bankruptcy

20   Code.

21        It determined, overruling the bankruptcy court and

22   the district court, that "received" in Congress' mind must

23   have meant the general use of that term in the then existing

24   form of the Uniform Commercial Code.  Therefore, it means

25   taking physical possession of the goods either by the debtor

Page 131

1    or its agent. Id. at Section -- at pages 343 through 344.

2              That section of the Code and that interpretation

3    are entirely separate from what is the issue here, which is

4    whether a claim arises under Section 503(b)(1) of the Code,

5    and, therefore, it would not apply here under these facts.

6              (It's not clear to me whether the 2nd Circuit

7    would adopt that interpretation, either, but that's in fact

8    irrelevant for purposes of the matter before me today since

9    no 503(b)(9) issues are before me.)

10             It's argued by the movants that interpreting

11   Section 503(b)(9) according to its plain terms as would be

12   based on the 3rd Circuit's interpretation of Section

13   503(b)(9) would lead to anomalous results where certain

14   assets, certain goods, excuse me, delivered outside of

15   either the applicable petition date or the 20-day window

16   would not be entitled to a priority, or would be entitled to

17   a priority.

18             Whether there was an anomalous result is

19   insufficient, however, for me to conclude that Congress

20   decided to change a long established interpretation of

21   Section 503(b)(1), which it was obviously fully aware of

22   when it enacted BAPCPA in 2005, to develop a special general

23   rule under (b)(1) as opposed to (b)(9) for vendor claims.

24   And, indeed, the courts have continued to apply the

25   McFarlands' definition after 2005 including District Judge

Page 132

1    Ramos in the Hostess case I quoted from, from 2013. It

2    continues to be the case that a debtor in possession or

3    trustee needs to engage in a postpetition transaction or

4    postpetition conduct that then is, in addition, beneficial

5    to the estate, to give rise to an administrative expense

6    under Section 503(b)(1).

7              The mere fact of delivery postpetition where the

8    transaction was entered into prepetition is insufficient to

9    give rise to such a claim.

10        So I will deny that aspect of the motions without

11   ruling on the others that I've reserved decision on.  And

12   the debtors can submit an order consistent with that.  You

13   don't need to formally settle an order, but you should

14   circulate it to the movants.

15             MR. FAIL:  Thank you very much, Your Honor.

16             THE COURT:  Okay.  That's the end of the agenda,

17   correct?

18             MR. FAIL:  That is the end of today's agenda.

19             THE COURT:  Okay.  Very well, thank you.

20   (Proceedings concluded at 1:27 p.m.)

21                         * * * * *

22

23

24

25

Page 133

1                    I N D E X

2

3                         RULINGS

4                                                      Page

5   Application of Fee Examiner, Pursuant to Section      12

6   327(a) of the Bankruptcy Code, Bankruptcy Rule 2014,

7   and Local Bankruptcy Rules 2014-1 and 2016-1, for

8   the Entry of an Order Authorizing the Retention and

9   Employment of Ballard Spahr LLP as Counsel to the

10  Fee Examiner, Nunc Pro Tune to the Appointment Date

11  filed by Paul E. Hamer on behalf of Fee Examiner

12  (document #3682)

13

14  Motion of Debtors for Order Shortening Notice with     14

15  Respect to Debtors' Motion for Authorization and

16  Approval of (I) Settlement between Debtors and

17  The Chubb Companies, (II) Debtors' Entry into the

18  Transaction Documents, and (III) Related Relief

19  (document #3615)

20

21  Debtors' Motion for Authorization and Approval         14

22  of (I) Settlement between Debtors and The Chubb

23  Companies, (II) Debtors' Entry into the

24  Transaction Documents, and (III) Related Relief

25  (document #3614)

Page 134

1                           I N D E X

2

3                           RULINGS

4                                                           Page

5    Notice of Presentment of Debtors Motion for Authority    17

6    to Assume Unexpired Leases of Nonresidential Real

7    Property (document #3376)

8

9    Debtors Motion for Authority to Assume Unexpired        17

10   Leases of Nonresidential Real Property (related

11   document(s)3376)

12

13   Notice of Presentment of Order (I) Authorizing          19

14   Assumption and Assignment of Lease of Non-Residential

15   Real Property and (II) Granting Related Relief,

16   with Exhibit A (related document(s)3624, 3008, 3665,

17   3811)

18

19   Notice of Presentment of Stipulation among Buyer,       22

20   Seller, and Brookfield Property REIT Inc. filed by

21   Ryan Zachary Gelber on behalf of Transform Holdco

22   LLC. (document #3913)

23

24

25

Page 135

1                          I N D E X

2

3                          RULINGS

4                                                      Page

5    Motion of FTI Consulting Canada Inc., for Relief      73

6    From the Automatic Stay for the Purpose of Joining

7    Sears Holdings Corporation as a Defendant in

8    Existing Litigation Pending Before the Ontario

9    Superior Court of Justice (Commercial List) and

10   to Liquidate Certain Claims Against Sears Holdings

11   Corporation in Such Existing Litigation filed by

12   Eric C. Daucher on behalf of FTI Consulting Canada

13   Inc. (document #3237)

14

15   Motion of Liberty Insurance Corporation of Relief     81

16   from the Automatic Stay (document #3294)

17

18   Motion of Rosa Melgar for Relief from the             81

19   Automatic Stay (document #2960)

20

21   Motion of Apex Tool Group, LLC to Allow and          123

22   Compel Immediate Payment of Administrative Expense

23   Claim Pursuant to 11 U.S.C. 503(b)(1)(a) and 11

24   U.S.C. 503(b)(9) filed by Gregg M. Galardi on behalf

25   of Apex Tool Group, LLC (document #1491)

Page 136

1                          I N D E X

2

3                          RULINGS

4                                                    Page

5    Debtors' Omnibus Objection (document #3883)        123

6

7    Motion of Milton Manufacturing, LLC to Allow and     123

8    Compel Payment of Administrative Expense Claim Under

9    11 U.S.C. §503(b) For Craftsman Branded Goods Delivered

10   to the Debtor Postpetition filed by Joel D. Applebaum

11   on behalf of Milton Manufacturing, LLC (document

12   #1477)

13

14   Motion to Allow and Compel Payment of Administrative   123

15   Expense Claim Under 11 U.C. Sec. 503(b) for Jaclyn

16   Smith Branded and Private Label Goods Delivered to

17   the Debtor Post-Petition (ECF #3323)

18

19   Debtors' Omnibus Objection (document #3883)        123

20

21   Motion of Gokaldas Exports Ltd. to Allow and Compel    123

22   Payment of Administrative Expense Claims (document

23   #3670)

24

25

1                          I N D E X

2

3                          RULINGS

4                                                     Page

5    Motion by Pearl Global Industries Ltd. to Allow and     123

6    Compel Payment of Administrative Expense Claim

7    (document #3604)

8

9    Notice of Assumption and Assignment of Additional        20

10   Designatable Leases (related document(s)3008, 1731,

11   3097, 2753, 2314, 2995, 3152, 1774) filed by Luke A

12   Barefoot on behalf of Transform Holdco LLC. (document

13   #3298)

14

15

16

17

18

19

20

21

22

23

24

25

Page 138

1                C E R T I F I C A T I O N

2

3       We, Sherri Lynn Breach and Sheila Orms, certify that

4   the foregoing transcript is a true and accurate record of

5   the proceedings.

6
    Sherri L.           Digitally signed by Sherri L. Breach
7   Breach              DN: cn=Sherri L. Breach, o, ou,
                        email=digital@veritext.com, c=US
8                       Date: 2019.10.24 11:45:44 -04'00'
    _____

9   Sherri L. Breach

10  AAERT Certified Electronic Reporter & Transcriber CERT*D-397

11
    Shelia             Digitally signed by Shelia Orms
                       DN: cn=Shelia Orms, o, ou,
12  Orms               email=digital@veritedt.com,
                       c=US
13                     Date: 2019.10.24 11:45:58 -04'00'
    _____

14  Sheila Orms

15

16  Date:  May 23, 2019

17

18

19

20

21

22  Veritext Legal Solutions

23  330 Old Country Road

24  Suite 300

25  Mineola, NY 11501

**[& - 2nd]**

Page 1

| & |
| --- |
| **&** 6:2,3 7:15 8:1
8:15 9:1,15,16
10:1,9 11:1 17:12
21:5 23:9,11
44:13 82:11
115:24 138:10 |

| 0 |
| --- |
| **08540** 7:11 |

| 1 |
| --- |
| **1** 4:18 73:21 82:25
83:8,20 84:19
85:4,7,14 86:8,10
86:16 87:14,23
89:2,9 91:16 93:4
93:4 97:3 99:12
99:16 100:12
103:13,18 105:11
106:22 108:7,13
108:17,23 109:24
109:25 113:22
115:6 116:17
117:18 123:13
124:10,15,23
127:19,25 129:13
129:21,25 130:6
130:10 131:4,21
131:23 132:6
135:23 |
| **1,000** 73:3 |
| **1,130,000** 16:21 |
| **1,265,000** 16:7 |
| **1.7** 108:23 |
| **10** 34:5 |
| **100** 36:20 128:7 |
| **10006** 6:5 |
| **10018** 8:11 9:4 |
| **10019** 8:4 10:22 |
| **10020** 10:4 |
| **10036** 7:18 8:18
9:11 |

**10044** 9:19
**101** 6:18 128:7,25
**10153** 10:12
**10158** 11:4
**10178** 6:19
**102** 7:10
**103** 76:13
**10601** 1:15
**10:00** 2:2
**10:27** 1:18
**11** 1:3 4:17,18 5:2
5:8 26:15,17
36:10 47:12 63:11
63:17 73:18 75:4
76:21 82:16 98:5
112:11 128:15
135:23,23 136:9
136:15
**1129** 125:17
**11501** 138:25
**11th** 6:11
**12** 37:9 58:5,6
105:21 106:18
133:5
**1200** 7:3
**1211** 8:17
**1221** 10:3
**123** 135:21 136:5
136:7,14,19,21
137:5
**1280** 74:4
**1286** 74:5
**1301** 10:21
**139** 90:12 120:2
**13th** 19:20 20:3
21:14
**14** 47:15 51:6
109:18 133:14,21
**14,000** 123:7
**1477** 5:5 136:12
**1491** 4:20 135:25
**15** 46:20 47:16

**16** 82:16
**161** 127:22
**166** 90:14
**16th** 15:18 98:11
**17** 19:15 20:11
134:5,9
**172** 127:22
**1731** 5:21 137:10
**1774** 5:22 137:11
**18-23538** 1:3
**19** 98:8 134:13
**19801** 6:12
**1985** 126:16
**1986** 126:17 128:7
128:8
**1990** 74:5
**1:27** 132:20
**1st** 119:25

| 2 |
| --- |
| **2** 13:8,14 90:17
115:17 |
| **2,000** 114:25 |
| **2-702** 96:1 |
| **20** 89:22 130:12
131:15 137:9 |
| **20005** 7:4 |
| **2005** 89:13 92:4
93:5 96:2 126:14
129:13 131:22,25 |
| **2006** 128:9 |
| **2007** 127:23 |
| **2008** 126:15 |
| **2012** 65:4,11 |
| **2013** 24:16,18
38:5 39:2 40:22
53:9 65:7 128:11
132:1 |
| **2014** 2:5 133:6 |
| **2014-1** 2:6 133:7 |
| **2016** 78:24 |
| **2016-1** 2:6 133:7 |
| **2017** 130:8 |

**2018** 47:5 48:2
78:23 121:9
123:23 124:24
**2019** 1:17 2:2
25:17 76:13 84:9
84:13 123:24
124:4 138:16
**2020** 25:1 45:18
49:17
**20th** 102:8,9,12
103:4,20 111:18
113:17 118:23
123:23 124:24
**21** 1:17 2:1
**210** 7:10
**21st** 21:12
**22** 84:9 134:19
**22nd** 123:24
**23** 138:16
**2314** 5:22 137:11
**26741** 17:16
**27** 35:5
**2753** 5:22 137:11
**27th** 6:18 40:18
**28** 84:13
**28th** 84:19 85:15
124:4
**29** 38:9
**296** 99:17 100:23
**2960** 4:14 135:19
**2995** 5:22 137:11
**29th** 21:13
**2d** 126:17 127:23
128:7,7
**2nd** 73:25 74:5
76:13,13 83:8,23
88:2 89:10 92:3,8
92:8 93:9 99:13
100:14,16 113:11
131:6

**3**

**3**   13:8,9 48:2
**30**   21:18
**30,000**   16:12 17:4
**300**   1:14 138:24
**3008**   3:14 5:21
134:16 137:10
**303**   78:24
**3097**   5:21 137:11
**30th**   25:16 45:10
**3152**   5:22 137:11
**31st**   21:19
**3237**   4:8 135:13
**327**   2:4 133:6
**3294**   4:11 135:16
**3298**   5:23 137:13
**330**   138:23
**3323**   5:10 136:17
**337**   126:13
**3376**   3:3,7 15:2
134:7,11
**338**   130:8
**343**   131:1
**344**   131:1
**347**   9:3 128:8
**3595**   3:4,9
**3604**   5:18 137:7
**3614**   2:21 133:25
**3615**   2:16 133:19
**362**   73:21
**3624**   3:14 134:16
**363**   16:18
**365**   15:6 17:21
**3665**   3:14 134:16
**3670**   5:15 136:23
**3682**   2:10 133:12
**36th**   9:3
**3811**   3:14 134:17
**3852**   19:20
**3883**   4:22 5:12
82:18 136:5,19
**3913**   3:18 134:22

**392**   126:14
**3939**   18:8
**397**   5:25 138:10
**3d**   130:8
**3rd**   25:1 60:3
89:19 92:1,12,14
92:17,21 93:16
94:4 95:15,25
103:25 130:7
131:12

**4**

**4**   14:24 15:6 17:21
**406**   128:11
**411**   128:25
**417**   126:16
**421**   126:16
**473**   128:8
**479**   127:22
**47th**   9:10
**498**   128:11
**499**   128:24

**5**

**5**   17:8,16 115:17
**5.4**   108:22
**50**   110:20
**500**   36:24
**503**   4:18,18 5:3,8
82:25 83:2,8,10
83:20,21 84:11,16
84:19 85:3,4,7,14
86:8,10,16 87:14
87:23 88:24 89:2
89:3,4,9,15,23
90:13 91:16,17
92:1,10,17,19
93:3,4,4,15,18
95:16,20 96:3,7,8
96:14 97:1,3,4,17
97:21 98:5 99:12
99:16 100:12
103:13,18 105:11
106:22 108:7,12
108:13,23 109:24

**109**:24,25 111:7
111:15 113:22
114:25 115:4,5,6
115:15 116:15,17
117:18,20 118:15
120:18 123:13
124:1,8,10,13,15
124:23 127:19,25
128:15 129:12,13
129:14,17,21,22
129:25 130:4,6,10
130:10,18 131:4,9
131:11,13,21
132:6 135:23,24
136:9,15
**507**   126:24 127:2
128:13
**509**   24:18
**52**   90:15 126:16
**546**   89:15 96:2,3,9
96:12 129:14
**557**   78:24
**571**   61:18 62:16
78:23
**59**   61:19 78:23

**6**

**6**   20:24 33:22,23
**605**   11:3
**62**   126:14
**620**   8:10
**640**   8:3
**656**   99:18 100:23
**67**   126:14
**68**   126:14
**686**   100:9
**69**   61:19 62:16

**7**

**7**   34:5 106:21
**70**   35:5 38:10 39:7
73:5
**7200**   3:3,9
**73**   135:5

**744**   100:9
**7471**   19:16
**750**   73:2
**767**   10:11
**773**   126:13
**781**   126:16
**784**   126:13
**789**   128:7,25

**8**

**8**   22:11 34:2 105:6
**805**   9:3
**81**   135:15,18
**85**   76:13
**850,000**   121:10
**862**   130:8
**8th**   15:10 17:18
18:5

**9**

**9**   4:18 34:2 83:2
83:10,21 84:11,16
85:3 88:24 89:3,4
89:15,15,23 90:13
91:17 92:1,10,17
92:19 93:3,15,18
95:16,20 96:3,7,8
96:14 97:1,4,17
97:21 98:5 106:22
108:12 109:24
111:7,15 114:25
115:4,5,15 116:15
117:20 118:15
120:18 124:1,8,13
125:17 129:14,17
129:22 130:4,10
130:18 131:9,11
131:13,23 135:24
**9,000**   18:24
**907**   74:4
**917**   76:12
**919**   6:11
**973**   126:17
**98**   128:7

**9th**  8:3 99:16
100:8,9

**a**

**a.m.**  2:2
**aaert**  138:10
**ab**  46:24
**abetted**  32:19
**abetting**  33:9
**abeyance**  26:21
**abid**  7:21
**ability**  68:16
114:19 125:6
126:3
**able**  15:12 57:8
63:10 71:21
**absence**  25:5,7
101:8
**absent**  96:24
118:22
**absolute**  92:2
**absolutely**  13:22
50:14 118:10
**abstract**  84:22
**abundance**  107:4
**abundantly**  91:6
**acc**  99:21
**accept**  111:8
119:18
**acceptance**
100:10
**accepted**  95:7
112:6,9
**accommodate**
99:3
**accorded**  124:9
**account**  59:24
77:14 112:13,18
113:5
**accurate**  138:4
**accusing**  90:17
**ace**  128:8
**achieving**  101:3

**acknowledge**
33:24 35:6 77:4
**acknowledged**
40:13 76:3 119:6
125:12
**act**  42:18 89:13
**acting**  76:6 89:14
**action**  9:16 23:10
26:6 28:6 29:24
31:24 38:14 40:15
66:25 68:2,18
74:11,12,15 78:9
**actions**  25:13 26:3
29:1 54:6,6 63:15
70:4
**actual**  34:25 63:8
89:19 90:18 93:8
93:10 128:16
**add**  13:2 16:1
36:7 47:16 56:24
85:8 88:2 109:15
**added**  48:9 89:15
**addition**  16:10
26:10 55:2,20
84:9 106:14
124:16,16 126:23
132:4
**additional**  5:20
26:21 41:20 43:16
77:25 85:21 88:3
137:9
**address**  18:6
19:21 20:24 32:9
71:10 118:6
**addressed**  108:4
117:11
**addresses**  68:24
**adelphia**  110:21
111:20 112:6
**adequate**  16:8
19:23
**adjourned**  22:11
80:12

**adjournment**  22:1
44:21,22
**adjudicate**  76:9
**adjudication**
51:17
**adjustments**  45:5
**admin**  109:17
**administered**  73:9
**administering**
32:16
**administration**
75:8
**administrative**
4:17 5:2,7,15,18
66:13 82:7 83:8
88:23,23 89:23
90:1 91:2,14 93:7
97:22,23 103:21
105:10 106:21
108:6 112:14
114:16 115:7
116:20 121:12,24
123:12,15,20
124:9,18,22 125:2
125:10,13,16,19
125:25 126:4,5,8
126:11,19,24
127:1,5,9,10,18
127:21 128:12,14
128:19 129:16,20
130:11 132:5
135:22 136:8,14
136:22 137:6
**administrator**
23:12 32:13
**administrator's**
40:24
**administrators**
33:1
**admit**  24:8 34:3,8
35:18 38:6 50:2
**admitted**  39:7

**admonition**  12:18
**adopt**  131:7
**adopted**  129:23
**ads**  111:25
**advancement**
27:3 36:5
**advantage**  42:15
**adversary**  30:7,11
30:13 34:8,9,22
35:10,17,18 37:21
38:1,4,7,11,13,19
61:14 64:3,11
65:3 78:3,4
**adverse**  37:10
76:20 127:7
**adversely**  127:10
**affect**  76:20
127:10
**affidavit**  119:11
**affiliate**  14:13
**affiliates**  6:3
17:13 23:4
**afford**  88:4
**affording**  36:4
**aff'd**  126:16
**agenda**  2:1 12:7
12:13 13:8,14
14:24 17:8,15
20:11 22:11 80:12
82:13,16 132:16
132:18
**agent**  98:7 129:17
131:1
**aggressive**  45:16
**ago**  88:17
**agree**  21:16 35:2
35:11,15,20 45:16
48:11 68:22 86:25
87:2,21 100:13,14
110:9 112:16
113:2 115:12,14
117:2

agreed  14:7 16:7
  16:13 18:2,25
  20:1,6 21:10
  88:18,21 125:18
agreeing  83:19
agreement  15:5
  15:13 75:13 95:3
  95:4,4 124:14,15
  126:23 127:15
agreements  89:20
ahead  41:5 64:12
  91:7
aided  32:19
aiding  33:7,9
akin  7:15 65:24
al  1:7
alan  20:15
aligned  49:2
allegation  110:3
allegations  110:5
alleged  32:18 33:6
  56:3
allen  10:1 23:11
alliance  114:21
allocation  57:25
allow  4:16 5:1,7
  5:14,17 29:18
  50:19 72:10 83:13
  115:1 135:21
  136:7,14,21 137:5
allowance  82:7,25
  83:1 123:12
  125:21
allowed  47:14
  55:24 83:21 90:4
  91:22 93:7 116:20
  123:16 124:8,17
  125:10 128:15
allowing  43:12
  69:3
alter  96:21
alternative  50:22
  51:2 83:1

altogether  84:4
amalgamated
  128:6
amended  89:14
  116:14
amending  15:10
amendment  96:2
  96:24 114:20
america  87:23
americas  8:17
  10:3,21
amherst  17:16
amount  14:6,16
  25:12 43:9 49:12
  59:3 88:18,21
  91:21,22,23
  120:12,12
amounts  121:11
analogy  113:2
analysis  37:15,17
  76:16 78:21 83:20
anomalous  98:20
  98:25 99:1,11
  131:13,18
answer  47:3 48:13
  55:17 63:6 84:5
  87:22 88:7
anybody  34:17
anyone's  84:17
anyway  43:5
  71:17 78:17 91:23
apart  43:4 103:19
  103:19
apex  4:16,19 8:16
  99:8 115:9,16
  135:21,25
apex's  110:5
apologize  113:7
apparently  29:9
  31:19 33:21
appeals  39:24
appear  47:9 78:1
  78:9 93:4 109:18

130:10
appearance  87:18
  87:23
appeared  26:13
  44:21 46:10
appearing  80:18
appears  20:11
  76:2 77:13,19
  78:14
appellate  40:1,7
applebaum  5:4
  136:10
applicable  55:8
  89:10 125:4
  131:15
application  2:4
  12:8 25:8 39:17
  55:5 78:7 127:25
  133:5
applies  59:20 72:2
  84:16 106:9
apply  18:11 52:4
  56:7 74:23 92:25
  96:14 131:5,24
applying  88:22
  89:1
appointed  23:3
appointment  2:9
  48:3 133:10
appreciate  53:11
  78:11 103:3
approach  16:4
  76:16
appropriate
  12:21 16:18 41:8
  47:8 49:3 50:14
  72:19 90:19
  130:16
appropriately
  76:9
approval  2:13,18
  13:10 15:23
  133:16,21

approved  24:17
  47:4 48:7
approving  17:2
approximately
  18:24 24:18 121:9
april  44:20
area  31:20 108:14
areas  40:5
argue  60:2 99:12
  101:17
argued  41:19 61:2
  101:10 129:10
  131:10
arguing  39:1
argument  64:10
  68:7 78:23 93:14
  95:3 114:21
  123:14 125:8
  129:22
arguments  53:20
  82:20 111:17
  121:6
arises  34:9 35:19
  93:22 128:19
  129:3,17 131:4
arising  74:15
  105:7
arlington  3:3,9
arrangement  23:5
arrangements
  14:11
arrived  112:9
articulated  130:1
asked  46:23 54:1
  60:19 67:18 74:1
  88:11 103:10,11
  110:15
asking  58:19 85:4
  90:3 113:2
aspect  124:12
  125:8 132:10
assert  103:5

**asserted** 18:24
29:1 73:19 75:21
85:1,2,14 88:24
118:4,5,6 124:2
126:24 127:6
**asserting** 38:21
84:18 88:24
114:25 115:9
124:1
**assertion** 39:13
41:22 62:6
**assertions** 29:14
**asserts** 38:13 64:4
**asset** 15:5 30:23
57:8 68:8 90:22
126:22
**assets** 38:23 39:2
64:16 79:1 126:11
126:21 131:14
**assign** 16:11
**assignment** 3:12
5:20 15:13,23
17:18,22 19:18,25
21:15 134:14
137:9
**assistance** 42:24
**assisting** 12:20
**associates** 3:3,9
**assume** 3:2,6 15:1
16:10 19:21 21:20
83:22 93:25 98:20
118:7 134:6,9
**assumed** 74:11
92:21,22 122:9
**assumes** 52:3
**assumption** 3:11
5:20 15:15,23
17:17 19:18,24
21:15 66:15
134:14 137:9
**assurance** 16:8
19:23 69:10 78:13
120:6

**assured** 46:11
**attached** 40:2
**attachment** 81:20
**attacking** 38:4,5
**attempt** 124:7
**attendance** 48:6
**attention** 113:12
**attorneys** 6:3,10
6:17 7:2,9,16 8:2
8:9,16 9:2,9 10:2
10:10,20 11:2
**auction** 15:19
16:14,16,21 17:6
**authority** 3:1,6
14:25 134:5,9
**authorization**
2:13,18 13:10
16:10,11,13
133:15,21
**authorized**
105:14
**authorizing** 2:7
3:11 12:9 123:19
133:8 134:13
**automatic** 4:2,11
4:13 23:16 25:8
26:6 28:14 30:5
35:24 54:7 73:11
73:17 83:14 135:6
135:16,19
**availability** 66:20
**available** 23:21
24:10 81:18
**avalanche** 43:2
**avenue** 6:18 8:3
8:10,17 10:3,11
10:21 11:3
**avoid** 34:4 60:17
62:11 77:25 83:14
**avoidable** 34:1
56:3 74:18 76:2
**awarded** 75:16

**aware** 26:24,25
48:15 66:10,11
70:10 131:21
**awfully** 30:21
40:25
**axis** 99:3

**b**

**b** 1:21 4:18,18 5:3
5:8 82:25 83:2,8
83:10,20,21 84:11
84:16,19 85:3,4,7
85:14 86:8,10,16
87:14,23 88:24
89:2,3,4,9,15,15
89:23 90:13 91:16
91:17 92:1,10,17
92:19 93:3,4,4,15
93:18 95:16,20
96:3,7,8,14 97:1,3
97:4,17,21 98:5
99:12,16 100:12
103:13,18 105:11
106:22 108:7,12
108:13,17,23
109:24,24,25
111:7,15 113:22
114:25 115:4,5,6
115:15 116:15,17
117:18,20 118:15
120:18 123:13
124:1,8,10,13,15
124:23 126:24
127:19,25 128:15
129:12,13,14,17
129:21,22,25
130:4,6,10,10,18
131:4,9,11,13,21
131:23,23 132:6
135:23,24 136:9
136:15
**b.r.** 78:23,24
99:18 100:23
126:13,14,16

128:8,11,25
**back** 22:21 49:18
54:5,9 55:16
57:13 59:11 67:10
97:5 98:11 102:11
103:6 104:11
109:2
**badtke** 10:7
**baird** 7:6
**balance** 68:11,15
71:2 74:22
**balances** 59:20
**ballard** 2:7 6:9
12:10,11,25 133:9
**bank** 112:13,18
113:4
**bankr** 61:19
62:16 78:23,24
126:13,14 128:9
**bankrupt** 77:23
**bankrupt's**
128:20
**bankruptcy** 1:1
1:13,23 2:5,5,6
16:19 26:15 38:14
47:6 49:2 50:6
55:22 56:6,11
62:14 73:21 74:7
75:8 79:6 83:1
96:9,20,25 99:2
105:12 108:21
123:13 124:1
125:18,23 126:1
126:25 127:14,19
127:24 128:14
129:14 130:19,21
133:6,6,7
**bapcpa** 131:22
**baptist** 126:15
**bar** 75:22 84:9,10
115:7 124:2
**barefoot** 5:22 6:7
17:9,11,12,15

18:15,17,23 19:2
19:10,12 20:12,14
20:16,18,22
137:12
**barn** 49:7 72:12
**barred** 54:7
**based** 28:25 81:7
89:20 95:8 99:13
102:25 103:1,18
107:10 112:18
114:3 117:3,6,14
124:23 125:3
130:4 131:12
**basically** 14:11
70:13 98:1
**basis** 13:24 66:14
66:14 99:13
**battery** 9:18
**bear** 55:4 96:12
**bears** 86:15
**began** 39:4
**beginning** 25:1
26:11
**begun** 129:4
**behalf** 2:9 3:18
4:7,19 5:4,23
12:25 17:9 21:4
22:24 23:9,11,25
53:18 60:24 65:24
88:10,14 91:25
99:8 118:13
120:22 121:4
133:11 134:21
135:12,24 136:11
137:12
**belabor** 53:20
**belied** 66:3
**believe** 16:17
27:15 28:17 29:6
45:11,13 53:22
63:20 66:3 71:4
75:20,23 76:8
77:9,12 78:6

79:11,12,21 80:25
81:15 84:23 85:7
85:8 99:12 109:17
110:5 116:13
117:5,8,11,15,17
121:23 122:9
127:3,11,13
**believed** 86:12
118:25
**believing** 66:23
**bencze** 7:13
111:11,12 112:16
112:22 113:1,4,14
113:19,21 114:11
**beneficial** 128:23
129:8 132:4
**beneficiaries**
93:21
**benefit** 7:2 37:15
64:17 97:9 112:5
**berkow** 10:7
**bernstein** 61:16
61:19 62:4 78:22
**bernstein's** 99:24
**best** 39:20 69:22
72:5 122:3,4,4
**bethlehem** 127:22
**better** 27:17 59:12
69:24 98:18
**beyond** 99:4
100:24
**bid** 16:20
**bidder** 15:20
**bidding** 15:20
**big** 57:16
**billion** 90:17
**bills** 98:6
**binding** 111:5
**bissell** 23:18,21
**bissell's** 23:20
24:2
**bit** 13:9 27:15
37:18 40:25 70:4

**black** 27:2 39:7
40:8
**blank** 76:6
**blanket** 106:25
107:1
**blanks** 46:6
**blow** 46:13
**body's** 128:5
**boil** 53:22
**books** 121:23
**border** 27:20
**borrowed** 112:12
112:17
**bound** 51:16
**branded** 5:3,8
136:9,16
**brands** 128:11
**brauner** 7:20
65:21,23,24 67:7
67:9,20,25 69:8
69:11,15,19 70:16
70:18,21 71:7
**brauner's** 71:13
**breach** 5:25 31:18
32:19 33:11 138:3
138:9
**breitburn** 61:16
62:4 78:22 79:8
81:25
**brief** 17:18 26:20
35:4,5 39:22 40:2
40:19 47:22 56:19
115:25 117:1
**briefing** 75:12
**briefly** 65:25
**bring** 113:12
**brings** 22:7 49:10
**brixton** 15:14,17
16:12,14 17:4
**brixton's** 16:15,20
**broad** 33:22 42:16
**brookfield** 3:17
21:8,18 134:20

**brought** 114:22
**bryant** 7:17 9:10
**buchanan** 8:1
121:4
**budget** 37:7
**buffer** 37:10
**bulk** 20:3
**bunch** 118:19
**burden** 39:4
82:21 86:15
127:20
**business** 102:7
105:15 110:21
111:20 112:6
123:22 128:24
129:9 130:15
**busy** 12:16 27:22
**buyer** 3:16 21:7
90:13,16,17 122:2
122:8,9 134:19
**buyers** 90:23
117:7

|  c  |
|---|

**c** 4:6 6:1 12:1
89:15 96:2,3,9,12
135:12 138:1,1
**calendar** 19:14
**california** 15:3
19:16 20:18
**call** 15:18 31:9
54:14 61:12 80:25
**called** 54:23 98:4
120:19 121:9
**calling** 23:15
**canada** 4:1,7 9:16
22:9,25 23:3,18
23:19 24:19 30:24
32:8,15,18,25
33:4,6 35:16 37:7
37:13 39:2 42:17
45:3,23 46:17
48:9,13 49:13,16
50:3,6,13 51:6,11

52:7,12,25 54:12
54:15 64:17 65:4
65:9 68:14 69:23
70:14 71:23 72:3
72:18,23 73:11,20
75:24 135:5,12
**canada's** 23:4
**canadian** 10:20
23:15 24:15,16,18
24:21,23 25:3,8
26:1 27:1,9 28:4,5
28:6,7,9,11,12
29:18,22,24 30:6
30:22 31:6,13,19
31:20 33:14,19,25
34:16,23 35:7,20
36:3,25 37:5,9
38:1,8,15,15,17
38:17,24 39:11,17
39:19 40:1,5,6,7
40:16,17,20 41:1
41:4,5,6,7,9,11,12
41:18 42:8,13,18
42:21,23 43:3,17
43:19 46:10 47:5
47:14,25 50:3
51:19 52:8 53:22
54:4,6,13,23 55:2
55:9,16,18 58:6,7
58:7,10 59:8,15
59:17 60:15,24
62:20,21,23 63:4
63:18 64:1,8 65:6
65:12,12,17 66:2
66:6 67:11,25
68:18,23,24 69:2
71:15 72:24 73:3
73:9 75:13,19,23
76:1,2,4,5,21
79:18
**canceling** 48:8
**candidly** 120:4

**capable** 41:10
43:6
**capacity** 23:2,19
**capital** 15:14
16:12
**capture** 43:21
**captures** 72:7
**careful** 25:9
**carnegie** 7:10
**carrier's** 98:10
**carry** 112:10
**case** 1:3 14:3
18:11,21 21:23
24:24 26:15 28:25
31:19 35:23 40:1
43:1 50:15 51:24
56:10 59:13,19,23
61:21 62:4,24
63:14,15,17,19
72:18,20 73:10,12
74:7,25 75:4,9,21
76:11,21 78:3,22
78:25 79:4,6,19
79:22,23 81:25,25
83:23 84:8 92:18
93:19 94:2,18
95:13 97:10 99:15
99:25 100:4,9,9
100:13 104:25,25
108:9 110:18,21
110:22 111:4,21
111:22 113:10
116:13 123:17
125:3,3,17 126:3
126:18 128:11,19
130:13 132:1,2
**cases** 26:17 29:8
30:5 36:10 54:22
56:11 61:24 63:18
68:5 73:18 78:12
78:20 81:24 88:4
92:4 99:14 100:7
110:20 113:8

**cash** 78:12 90:15
90:15
**category** 97:16,22
124:15 125:1
**cause** 73:24,24
74:10
**causes** 28:6 38:13
40:15 66:25 68:1
78:8
**caution** 107:5
**cautioned** 110:12
**cavalier** 50:9
**ccaa** 73:10
**cede** 32:10 44:3
88:6
**center** 7:10
126:15
**centered** 76:15
**cents** 77:16 91:20
91:21
**cert** 5:25 138:10
**certain** 4:5 13:12
18:20 44:22 62:5
62:7 64:17 97:8
115:15 124:7,18
124:21 126:23
131:13,14 135:10
**certainly** 26:25
49:16 51:2 60:15
66:11 68:3,9
93:18
**certainty** 86:3
120:20,20,22,24
**certificate** 12:11
**certified** 138:10
**certify** 138:3
**cetera** 79:2
**challenging** 69:22
**chambers** 14:22
19:9 20:9 22:4
**chance** 14:1
**change** 51:24 73:5
96:21,24 97:15

106:8 131:20
**changed** 129:10
**changing** 15:22
**channel** 85:14
**chapter** 1:3 26:15
26:17 36:10 47:12
63:17 73:18 75:4
76:20 98:5 112:11
**charge** 72:23
**chase** 89:18
**chattooga** 99:17
100:22 110:18
**cheaper** 50:21
**check** 80:24
**checked** 42:3
**china** 118:18
**chinese** 118:19
**cho** 126:13
**chubb** 2:14,19
13:11 14:13
133:17,22
**cir** 126:17 127:23
128:7,7 130:8
**circuit** 36:13
73:25 74:5 76:13
76:14 83:8,23
88:2 89:10,19
92:2,4,8,9,13,14
92:21 93:5,9,16
94:4 95:15,25
99:13,16 100:8,10
100:14,16 104:1
113:11 128:13
130:7 131:6
**circuit's** 92:17
131:12
**circulate** 80:5
132:14
**circumstance**
67:13
**circumstances**
12:22 18:6 41:8
50:19 85:5 97:9

101:6 115:15
**citation** 110:19
**cite** 35:10 99:15
**cited** 54:22 63:18
  78:22 81:24 92:4
  95:14 99:24 100:8
  110:20
**citron** 11:1 115:24
**claim** 4:17 5:2,8
  5:18 28:20,22,24
  28:25 29:2,16,21
  31:5,7,8,10,14,15
  31:23 33:25 36:8
  36:16,21 37:11
  40:19 51:10,12
  52:19 62:10,14,19
  62:22,23,25 63:5
  74:2 75:14,19
  76:9 81:18 83:7
  84:8,14,19,19,23
  85:14 86:10,16
  87:9 88:22,23
  90:17 93:22 97:11
  99:19 100:12
  103:21 105:24
  114:5,14,15,20
  115:5 116:23
  117:3,6,20 119:19
  121:8 124:4,14,18
  125:2,21 127:19
  129:16 131:4
  132:9 135:23
  136:8,15 137:6
**claimant** 125:6
  129:5
**claimant's** 128:22
**claimants** 83:11
  85:13 87:5 91:14
  109:17 117:10
  126:4
**claimed** 39:11
**claims** 4:5 5:15
  24:22,24 25:4

27:10 28:3 29:7
  29:18 30:1,7,21
  31:4,16,18,25
  33:20 36:8 37:6
  38:6,16 39:19
  40:24 42:21 47:4
  47:14 48:5,22
  49:14 52:19 55:17
  55:21,23 59:18
  60:18 61:25 62:5
  62:7,9 64:4,21
  66:17 68:18 73:18
  73:19 75:19,21,23
  76:3,14 77:9,11
  77:14,15 79:10,22
  80:2 82:8,25 83:2
  83:2,3,5,9,14,21
  84:10,10,12,14,15
  84:16 85:2,2,8,15
  86:12 87:1 88:3
  88:18,24,24 89:16
  89:18,20 90:2,4
  90:23 91:9,22
  93:23,24 98:12
  106:22 107:23
  108:3,4,6 109:4
  109:11 114:17,25
  115:6 118:4,5
  120:8 123:19,25
  124:2,7,8,10,13
  125:25 126:3,5
  131:23 135:10
  136:22
**clarification**
  106:7
**clarity** 69:5 91:12
  91:15 109:25
  120:17 122:11
**clark** 7:8 111:12
**class** 9:16 23:10
  31:24 44:14 62:13
**clear** 25:12 41:7
  50:1,12 52:1,2,12

57:5 76:2 77:2
  79:14 81:20 83:11
  84:15 85:11,18
  88:1,11 91:6 92:2
  92:15 95:18 96:8
  110:14 111:14
  116:2 117:3,13
  118:16 121:10
  131:6
**clearer** 94:18
**clearly** 16:16
  37:16 62:2 77:7
  79:6,17 85:13
  114:1 116:19
**cleary** 6:2 17:9,12
**client** 88:15 91:15
  92:1 94:23,23
  95:2 106:21 116:5
  117:5,7,15
**client's** 117:3,6
**clients** 109:22
  118:19 120:9,23
**close** 45:20 76:25
  125:17
**closing** 49:6
**coastal** 100:9
  111:3
**code** 2:5 16:19
  38:14 73:21,25
  83:1 84:11 94:1
  96:13,20,25 99:2
  105:12 123:13
  124:1 125:18
  126:25 127:14,19
  127:24 128:14
  129:14,21 130:20
  130:24 131:2,4
  133:6
**cognizant** 15:6
**cole** 88:10
**colleague** 20:24
  25:25 32:11 44:3
  78:21

**colleagues** 90:5
  91:3 102:24 121:7
**colloquy** 55:15
**combination** 67:1
**come** 42:22 49:18
  68:4 75:2 90:13
  98:11 106:22
  109:2 116:4
**comes** 51:21
  69:20 93:14
**coming** 102:21
  111:20
**comity** 45:1 78:8
**commenced** 70:5
  109:20
**commencement**
  63:16 105:16
  128:18 130:13
**comments** 61:17
**commercial** 4:4
  23:6 39:24 40:6,8
  40:9 54:23 55:3
  73:10 96:12
  130:24 135:9
**commissions**
  128:18
**committee** 7:16
  16:2 27:14 29:9
  29:16 33:24 35:25
  43:9 65:24 66:11
  66:22 70:10 71:15
  71:16 80:5 117:25
**committee's** 29:12
**common** 50:19
  86:6 98:10 124:6
**companies** 2:14
  2:19 13:11 76:1
  133:17,23
**company** 104:21
  107:19 116:23
  128:8
**company's** 23:4
  63:7

compel 4:16 5:1,7
5:14,17 135:22
136:8,14,21 137:6
compelling 63:1
complaint 34:6
complete 25:16
60:8 61:11 74:6
75:7 77:22
completed 30:23
79:19
completion 62:20
76:23,24
complex 31:17
40:5,6,25 41:2,12
complexity
109:23
compliance 18:10
complicated 46:5
49:14 104:4
concede 29:20
61:10
conceded 61:9
concept 33:14
52:24
concern 38:2
78:13 79:2
concerned 64:7
92:13
concerning 48:3
concerns 17:16
19:16 30:2 65:4
66:12 72:17
concession 61:8
75:13
conclude 50:20
75:18 76:19 99:18
131:19
concluded 132:20
conclusion 17:17
60:15
conclusively 66:8
conduct 33:20
68:6 70:12 72:18

75:3 76:20 78:1
100:1 124:21
130:5 132:4
conducting 70:14
confess 71:13
confirm 123:20
confirmation
116:14,21 117:24
118:2
confirmed 47:9
conflicting 103:4
104:24
conflicts 21:5
confused 71:14
congress 89:13,14
89:15,17,18 92:18
93:17 94:1 96:2
96:11,22 97:2,7
98:13,21 99:11
129:10 130:22
131:19
connection 32:16
61:13 68:12,18
73:10 74:7
consensual 18:17
19:17
consensually
21:10,17
consent 27:12
consequences
120:12
consequently
16:17
consider 27:14
51:9 72:18 74:1
75:16 125:7 127:8
consideration
27:13 55:19 71:5
72:21 87:8 94:16
94:20 95:10
128:22 130:2
considerations
129:6

considering 61:12
consistency
103:24
consistent 80:6
105:15 132:12
consolidate 82:20
consolidated
66:14,14
constituencies
42:16
constitute 40:22
100:25 121:13
constituted
100:11
construction
95:21 98:1
constructive 31:9
31:15 89:2 91:16
91:18 127:17
construed 83:24
128:1 130:7
consultation
71:24
consulting 4:1,7
22:9,21,25 23:18
72:24 135:5,12
contemplated
78:4
contemplates
76:23
contemplating
117:24
contend 86:9
129:15
contested 19:13
19:15 22:8 109:19
context 19:8
34:16 41:11 51:11
96:6,7 97:4
102:18,20 118:1
contingencies
66:18

continue 50:23
117:19
continued 131:24
continues 132:2
contract 94:16
95:1,1,8 100:23
101:1,8 111:1,24
contracts 93:1
contractual 101:9
contrary 30:6
76:14 127:23
contrast 38:16,24
controlling 52:23
90:18
convenient 67:11
68:11 71:3
convention 92:25
convince 107:10
convincing 35:11
35:12
copies 24:9
copy 24:10
core 29:14 55:21
56:13
corp 127:22
corporate 75:25
corporation 1:7
4:3,6,10 7:2 54:5
59:16 63:8 73:12
80:17 135:7,11,15
correct 14:9,20
16:23 20:12,16
22:13 29:4 30:13
31:12 32:3,6
33:15 36:5 39:18
45:4 67:25 68:1
68:22 69:11 95:17
105:20 114:6
116:22,22 132:17
correspondence
118:9
cost 14:16 18:1
34:16 37:13,15

43:21 57:14,17,18
58:7,7 72:14
77:15
**costly** 78:16
**costs** 18:2,24,25
37:10 56:23 70:14
77:7,10,19,25
78:16 93:8 128:16
**couched** 81:1
**couldn't** 54:4
**counsel** 2:8 21:5
23:7 43:15 46:10
54:14 59:8 64:1
70:24 80:3,5,17
111:21 114:11
115:24 117:5,19
120:16 133:9
**counterclaim**
62:10
**country** 76:18
138:23
**couple** 27:12
53:25 63:3 66:1
71:11,16 88:17
90:6 91:5,20
109:15 123:14
124:16 125:11
**course** 23:15
25:11 54:6,13,18
57:19,20 68:6
70:11 76:13 79:15
102:6 105:15
108:8 115:2
123:22 130:15
**court** 1:1,13 4:4
12:2,6,13,15,17
13:1,3,5,16,20
14:10,14,18,21
15:8 16:5,20,24
17:6,10,14 18:12
18:16,18 19:1,4
19:11,20 20:10,13
20:15,17,19,25

21:3,9,21,25 22:3
22:6,10,14,16,18
23:1,2,6,13,23
24:6,12,16,23
25:10,12 26:4,14
26:18 27:1,6,11
27:21 28:3,5,8,9
28:11,20,23 29:5
29:22,24 30:9,11
30:15 31:3,11,19
32:1,4,7,14,21,24
33:2,7,9,11,13,16
34:10,12 35:1,14
36:17,20 38:17
39:12,14,16,17,20
39:23,25 40:8,9
40:11 41:4,9,11
41:15,18 42:15,17
42:23,24 43:5,10
43:16,25 44:5,7
44:24 45:9,12,19
45:25 46:11,13,21
46:23,25 47:5,19
48:17 49:9,11,20
50:22 51:4,10,13
51:16,20 52:1,5,6
52:8,8,13,17,22
53:3,6,8,10,14,15
53:17 54:21,22,23
54:24 55:1,1,2,4,5
55:6,13,17,22,23
56:1,12,16 57:5
57:12,14,16,22
58:2,9,12,14,16
58:18 59:7,10,12
59:14,20,21,23
60:2,6,9,11,19
61:2,5,7,12,23
62:2,11,17 63:22
63:23,25 64:11,14
64:19,23 65:1,5,8
65:11,22 67:5,8
67:17,21 68:20,24

69:7,9,12,18
70:15,17,19 71:6
71:8,18,22 72:15
72:22,25 73:4,7
73:10,23 74:1
75:15,22 76:6,21
79:6 80:10,13,19
80:22 81:4,6,12
81:15 82:5,9,15
82:21 83:22 84:2
84:5,7,25 85:6,11
85:19,23 86:1,5
86:19,22 87:1,3
87:12,14,16,20
88:5,8,13,20 89:1
89:1,4,7,8,10 90:6
90:11 91:1 92:3,5
92:8,12,21 94:9
94:13,21,25 95:8
95:11,13,16,18,23
96:5 97:15,19
98:13,23 99:6,18
99:20 100:3,14,18
101:11,14,17,21
102:8,13,16,23
103:15,17 104:2
104:10,12,14,17
104:21 105:6,21
106:4,10,13,24
107:7,12,14,18,22
108:1,5,9,19
109:1,5,7,10,13
110:7,10 111:10
112:12,20,25
113:3,13,18,20,24
114:16,23 115:3
115:11,13,16,21
116:1,4,7,10,19
116:25 117:4,22
118:8,10 119:9,10
119:13,16,17,22
119:23 120:3,14
120:25 121:2,14

121:17,20 122:12
122:14,19,22,25
123:2,4,6,8,10
125:22 126:1
127:8 128:10
130:16,21,22
132:16,19 135:9
**court's** 37:15
55:19 71:25 72:2
76:15 120:1
**courtroom** 23:7
23:21
**courts** 27:22
36:11,12 40:1,7
41:5,6 42:17
54:25 56:13 76:16
92:24 111:4
125:24 126:7
130:1 131:24
**cover** 37:13 81:18
**coverage** 14:16
**covered** 47:21
63:5,7
**craftsman** 5:3
136:9
**create** 27:23
97:16 98:25
105:23,23
**created** 97:22
**creditor** 30:8,18
43:11,14 70:8
83:25 97:6 125:19
127:11 128:5,20
**creditor's** 71:14
**creditors** 7:16
16:2 23:4 36:14
37:4 42:14 50:6
66:9 67:3 70:2,7
70:11,22,23 71:18
74:14 77:23 84:1
85:8 91:8 106:15
118:15 123:11
126:9,23 127:9

[creditors - decision]

128:3
critical  54:8 59:22
cross  23:22 24:4
crux  79:5
crystal  95:18
crystallized  97:10
cunningham
  44:14
cure  16:8 18:1,2
  18:24,25 19:22
  20:13,15
current  17:23
  26:1 27:3 43:17
  43:25
currently  23:5
  24:25 37:2 40:4
  89:25
customary  45:21
  105:16
cut  50:1 83:12
  92:6
cutting  89:17
  120:21

**d**

d  1:22 5:4,25 6:14
  12:1 15:6 17:21
  26:19 73:21 133:1
  134:1 135:1 136:1
  136:10 137:1
  138:10
d.c.  7:4
daily  126:13
damages  29:16,21
  30:1 75:14,16
  77:17
date  2:9 21:12
  70:13 72:4 75:22
  84:9,10 89:22
  98:9 100:11
  105:17 115:7
  121:11 124:2
  125:21 130:13
  131:15 133:10

138:16
dated  84:8,13
  123:23,24 124:3
daucher  4:7 10:24
  22:23,24 23:2,14
  24:9,13 25:11,24
  26:5,16,19 27:7
  28:21 29:4,6
  30:10,13,16 31:8
  31:12 32:3,6,10
  33:15,17 34:11,25
  35:2,15 36:19,23
  39:18 44:3,6,11
  44:16,19 45:2
  46:23 48:8 50:4
  54:1 58:5 60:23
  60:23 61:4 73:1,5
  135:12
david  11:6 115:20
  115:23
davidoff  11:1
  115:24
day  65:1 72:2
  101:12,14 102:12
  103:8 104:3 105:2
  111:6 113:16,23
  116:9 131:15
days  21:23 89:22
  98:8 109:18
  130:12
deadline  15:6
  21:19 45:10
deadlines  18:19
deal  26:7 50:5
  87:4 95:19 101:3
  103:7 104:6
  117:25
dealers  129:24
dealing  43:6 68:2
  84:7,12 90:18
  96:1 98:6 102:17
  120:16 124:4

dealt  86:12
  102:17 111:23
  115:4
debt  129:2
debtor  5:3,9 14:8
  21:7,18,19 55:21
  56:3,4,10 61:20
  61:25 62:9 63:15
  67:3 71:25 73:11
  74:8,18 77:24
  87:6 89:21 91:6
  93:12 94:8,12
  95:5 102:1 106:1
  107:2 112:3,8,12
  114:3 121:10,14
  124:20,20 126:3
  126:12,19,19
  127:15,17 128:21
  128:23 129:3,6,8
  129:17 130:3,3,12
  130:14,25 132:2
  136:10,17
debtor's  64:2 66:6
  66:19 74:11 75:3
  81:6,19 126:10,21
  130:15
debtors  1:9 2:12
  2:13,14,15,18,19
  2:20 3:1,6 4:22
  5:12 10:10 13:10
  13:11,12 14:12,17
  14:24 16:4,7,11
  16:12,17 17:2
  20:7 23:25 24:1
  27:13 29:9,16,20
  30:2,14 33:24
  34:3,8 35:9,18,25
  37:2,3,18,19 38:3
  38:4,6,9,20,23
  39:5,6 40:13
  41:19 42:9 43:5,9
  46:10 47:16,24
  48:11,15,20 50:2

50:11,13 53:19
  55:24 56:2,19
  57:6 58:6,10,19
  58:20,21,23 60:16
  62:11 63:9 64:6
  66:11 67:1 69:21
  70:6,22 77:2,3,9
  78:12,16,25 80:6
  80:9 82:17 83:6
  83:11 84:6,18
  88:4,17 89:24
  94:20,22 98:3
  103:5 105:7,13
  107:11 108:11
  109:8,16,20,20
  110:24 111:8
  112:1 114:14,14
  117:23 122:1
  123:11,19 125:12
  132:12 133:14,15
  133:16,17,21,22
  133:23 134:5,9
  136:5,19
debtors'  83:12,19
  85:17,25 86:14
  88:15 106:8
  111:21 117:19
  120:16 123:21
  126:19 128:2
december  47:5
  48:2 54:5 59:1
  88:15 121:9
decide  41:9 85:12
  108:13 114:2
  125:9
decided  80:22
  98:3 111:16 125:2
  131:20
decides  114:4
deciding  76:7
  86:8
decision  39:23
  48:19 95:15 99:24

132:11
**decisions** 28:9,11
  36:11
**declaration** 23:17
  23:20 24:2,8
**declarations**
  68:23
**decline** 76:9
**deep** 66:14
**defend** 61:25
  67:15
**defendant** 4:3
  25:6,22 26:3,8
  36:8 38:25 44:18
  46:19 54:8 61:20
  61:20 63:16 73:13
  73:16 77:6,8
  135:7
**defendants** 46:18
  47:15,16 51:7
  54:20 62:10 63:6
**defending** 57:25
**defense** 69:13,16
  70:17 74:12
**defenses** 110:25
**defer** 28:2 84:2
  85:24
**deference** 39:25
**defined** 30:14
  73:24 105:19
  128:15 130:19
**definitely** 113:9
**definition** 83:8
  96:12,19,22
  131:25
**definitions** 96:14
**definitive** 111:5
**definitively** 25:4
**delaware** 6:12
  38:14 55:8
**delay** 30:5 33:17
  48:19,25 49:4,5

**delaying** 30:8
**delighted** 107:15
**deliver** 101:18,19
  102:5
**delivered** 5:3,9
  89:21 94:7,21
  103:13,21 110:6
  118:20 131:14
  136:9,16
**delivering** 98:10
**delivers** 127:15
**delivery** 101:7,9
  103:2 105:8,9
  110:23 132:7
**demonstrates**
  66:8
**denial** 49:1
**denied** 36:3 63:21
  86:17
**deny** 81:7,23
  132:10
**depend** 110:10
**depending** 50:25
**depends** 36:22
  104:23 107:14
**deposition** 45:20
**depositions** 25:16
  46:3 76:25
**derived** 129:12
**deserve** 43:7
**designatable** 5:21
  137:10
**designated** 21:14
  21:16
**designee** 15:24
  17:21,21 18:3
  19:3
**despite** 47:23
**detail** 35:25 43:17
**detailed** 78:21
**determination**
  57:24 104:25
  113:16 125:3

**determinative**
  101:9
**determine** 21:19
  30:18 38:18 43:11
  63:23 87:23
**determined** 34:22
  76:14 89:17,18
  110:22 125:1,25
  130:21
**determines** 91:16
**determining**
  55:23 66:17 96:18
**detriment** 83:25
**develop** 131:22
**developing** 79:1
**deviate** 79:15
**deviation** 88:1
**differ** 38:12
**difference** 55:10
  56:6 100:7 115:17
  117:9,10
**differences** 31:13
**different** 31:17,22
  31:25 34:11 35:19
  37:24 38:2,2,8,22
  51:23 52:24 56:2
  56:9 64:5,5,21
  65:10 67:24 68:1
  68:3 69:16 70:1
  70:19,20 78:10
  93:6,13 110:23
  112:18 114:1
  121:8 125:18
  130:18
**differently** 18:19
  42:9 45:3 46:2
  67:22 130:5
**direct** 14:15 127:4
**directed** 105:14
  110:16
**directly** 70:8
  108:7

**director** 63:6
**directors** 33:3
  63:7
**disagree** 29:9 50:4
  51:22 52:9 55:11
  116:11
**disclose** 40:17
**disclosed** 37:9
**disclosure** 66:7,7
  90:9,21
**discoveries** 68:19
**discovery** 25:15
  25:20 44:8 45:7,9
  45:20 46:1 56:21
  58:23 70:25 72:10
  76:23 77:5,21
  78:18 79:19
  117:13,13
**discretion** 109:18
  125:22 126:1,2
  127:3
**discuss** 120:19
**discussed** 37:18
  40:24 43:14 72:7
**discussion** 17:19
  72:19 76:12
  102:14 113:15
**discussions** 47:15
  48:10 54:16 103:6
  104:17 117:24
**disingenuous** 66:3
  66:23
**disposition** 26:23
**dispositive** 127:11
**dispute** 29:17
  33:19 41:8 106:1
  108:18 122:6,8
**disputes** 18:14
  21:13 36:25
**disputing** 84:17
**disrupt** 76:10
**disruption** 102:2

**dissolved** 71:16
**distant** 104:9
106:23
**distinct** 24:22
68:10,10 121:7
**distinguished**
111:4
**distress** 90:25
91:2
**distribute** 32:17
**distributed** 128:3
**distribution** 30:5
62:13,25 126:9
**distributional**
36:5
**distributions**
30:10 33:17 34:19
125:16
**district** 1:2 36:12
42:17 88:2 93:5
128:10 130:22
131:25
**divert** 64:16
**dividend** 24:17
32:5,17 38:5,7,11
39:2 40:21,22
53:8 56:19 65:7
65:14
**docket** 18:8 19:20
82:18 91:13
**document** 2:10,16
2:21 3:3,4,7,9,14
3:18 4:7,11,14,19
4:22 5:5,12,15,18
5:21,23 25:15
44:8 45:20 76:23
133:12,19,25
134:7,11,16,22
135:13,16,19,25
136:5,11,19,22
137:7,10,12
**documents** 2:15
2:20 13:12 133:18

133:24
**doing** 41:6,10
49:16 50:20,21
86:23 107:18
**dollar** 14:6 77:16
**dollars** 24:18
36:25 37:5 62:14
66:19 88:3
**don't** 34:21
**doubt** 97:7 98:15
126:11
**douglas** 44:14
**dozen** 49:15
**drafted** 93:16
98:14 130:5,5
**drain** 1:22
**driving** 30:17
**dual** 69:8
**due** 107:2 115:2
**dueling** 56:11
59:12
**duplicative** 34:5
35:7,9 39:6,9
**dustin** 9:21
**duties** 32:19,25
42:19,20,25
**duty** 31:18 33:11

**e**

**e** 1:21,21 2:9 6:1,1
12:1,1 117:6,10
117:15 127:6
133:1,11 134:1
135:1 136:1 137:1
138:1
**e.d.n.y** 126:13
**e.d.n.y.** 126:16
**earlier** 40:25 57:2
72:7 80:11 91:13
125:20
**early** 26:12 54:15
77:1 78:15 91:12
**easier** 86:4

**easy** 71:3
**ecf** 5:10 15:2
136:17
**echo** 65:25
**economical** 74:19
**economy** 44:25
61:21 67:10 74:19
75:6
**ecro** 1:25
**edison** 78:24
81:25
**education** 99:25
100:3
**edward** 8:13
**effect** 64:7 75:4
78:2,7 98:24
104:2 105:16
127:7
**effective** 125:20
**efficiencies** 43:22
72:12
**efficiency** 24:23
70:16 75:9 79:9
122:4
**efficient** 42:22
84:2
**efficiently** 75:10
**efforts** 47:23
**eight** 21:15,23
49:14,20 52:13
74:14
**eighth** 8:10
**either** 13:18 34:18
59:6 60:15 62:15
64:16 66:3 101:8
108:12 112:4
124:23 130:25
131:7,15
**electronic** 138:10
**elevated** 103:2
**elevator** 128:8
**eleven** 74:20

**eliminate** 35:7,8
37:20 39:8
**eliminated** 36:14
**else's** 102:24
**elude** 54:25
**eluded** 68:7
**email** 14:22 22:3
**embroiled** 64:14
**emerged** 15:20
**eminent** 63:12
**emphasize** 119:16
119:21
**employees** 122:2
**employment** 2:7
12:10 133:9
**enabled** 16:21
**enacted** 96:2,3,23
97:8 129:13
131:22
**enactment** 96:13
**encourage** 42:6
101:2
**energy** 61:17
**enforce** 62:22
**engage** 132:3
**engaged** 124:21
**enhance** 85:9
105:24
**enhanced** 16:16
**enormous** 28:5
**ensure** 27:1 29:22
126:8
**enter** 15:12
**entered** 13:6
17:23 18:5 19:19
20:3 86:7 132:8
**enters** 127:14
**entire** 37:7,8,13
**entirely** 18:17
19:17 29:14 37:12
130:16 131:3
**entitled** 39:25
78:7 83:7 89:23

103:20 121:12,24
129:2,16 131:16
131:16
**entitlement**
127:20
**entity** 63:8 67:3
**entry** 2:6,15,20
12:9 13:12 105:22
133:8,17,23
**enunciated**
127:25
**equal** 126:9
**equally** 128:3
**equitable** 74:16
**eric** 4:6 10:24
22:23 60:23
135:12
**erroneously** 21:14
21:16
**esl** 33:5 119:17,19
119:23
**esl's** 119:8
**especially** 126:6
**esq** 6:7,14,21 7:6
7:13,20,21 8:6,13
8:20 9:6,13,21,22
10:6,7,14,15,16
10:17,24,25 11:6
**essence** 17:2
**essentially** 21:25
31:5,7 48:25
53:21 82:23 89:25
**establish** 35:23
96:3 98:7
**established** 53:23
74:10 75:22 89:16
96:9 125:15
128:13 131:20
**estate** 27:18,19
30:22 50:7 56:17
57:8 75:3 78:5
89:25 90:17 93:9
93:10,11 95:4,7

95:12 100:19
101:3 128:17
129:4 132:5
**estates** 16:17
27:19 56:6 77:23
**estimate** 66:19
116:20
**estimated** 58:5
**estoppel** 106:9
**et** 1:7 79:1
**evaluate** 115:1
**event** 12:18 14:8
24:7 100:11,25
**events** 30:20 38:2
38:8
**evidence** 23:20
51:21 109:3 118:9
119:10,13 125:3,7
**evidentiary** 51:23
99:19 106:11
**evolving** 31:17
32:8 33:13 41:1
41:12
**ex** 13:22
**exact** 57:20
**exactly** 33:10
48:22 76:25
100:17 102:19,21
106:7,7 107:9,11
**examination**
23:22
**examinations**
46:3 76:24
**examine** 24:5
**examiner** 2:4,8,10
12:9,20 133:5,10
133:11
**example** 29:15
55:8 58:5 71:20
78:25 86:9 94:15
103:5 106:17,21
107:19 118:11

**exception** 29:15
96:8,15 98:14,14
99:4 129:24
**excluded** 103:10
**exclusively** 38:16
**excuse** 37:25
131:14
**execution** 42:25
**exemplary** 29:25
75:14
**exercise** 126:2
127:3
**exhibit** 3:13 21:14
26:19 40:2 134:16
**existence** 35:10
**existing** 4:3,6
46:14,18 49:3
51:6 130:23 135:8
135:11
**exists** 64:18
**expectations**
101:4
**expecting** 113:25
120:23
**expeditious** 74:19
**expeditiously**
75:10
**expend** 27:18
**expense** 4:17 5:2
5:7,15,18 62:11
62:15 82:8 83:9
97:23 105:10
112:15 115:7
121:12,24 123:12
123:16,20 124:9
124:18,22 125:2
125:10,16,19
126:8 127:5,9,10
127:18,21 128:19
129:16,20 130:11
132:5 135:22
136:8,15,22 137:6

**expenses** 60:17
63:9 93:7,8 97:23
116:20 125:13
126:24 127:1
128:12,15,16
**experienced**
12:22
**expert** 55:9 60:24
**expertise** 28:3,5
40:5 41:16 74:10
**explained** 83:16
**exports** 5:14 8:2
136:21
**exposure** 14:7
**extend** 17:20
21:12 42:24
**extension** 17:22
19:21
**extensive** 93:19
**extent** 36:1 42:1
64:15 68:24 70:4
71:2 84:18 121:22
123:16 128:21
**extra** 24:9

---

**f**

**f** 1:21 10:16 138:1
**f.2d** 100:9 128:25
**f2d** 74:4 126:17
128:7
**f3d** 76:13 127:22
130:8
**face** 90:22,24
**facie** 35:23
**facilitated** 17:6
**facilities** 112:9
**facing** 120:9
**fact** 18:21 25:13
26:13,19 27:24
29:7,22 42:1
48:21 53:22 54:15
55:2,15 56:25
59:21 63:19 68:2
68:10 75:16,23

76:8,15 77:18
78:10 79:11,19
86:6,11 90:16
96:5 98:16 110:13
112:23 119:7
120:10 121:7
124:8 127:9 131:7
132:7
**factor** 29:19 33:18
33:22,22 40:13
60:7 61:6,16,17
61:22 63:1,11,11
74:23
**factors** 28:14,15
28:17 34:2,5
53:23 54:24,25
55:5 59:20,25
60:8 61:24 63:4
63:24 74:1,24
75:1 126:1 127:8
**facts** 28:25 29:1
34:11 35:19 41:14
41:16,24 52:23
58:23 61:13 64:15
66:4 67:14 68:19
81:7 82:2 85:4
118:9,11 123:1
128:1 131:5
**factual** 78:21
110:7,11
**fail** 10:17 82:10
82:10,16 84:21
85:1,7,17,21,24
86:3,14,21,25
87:2,10,13,15,18
87:21 88:6 109:6
109:14 110:9,11
114:13,18,24
115:8,12,14 118:3
119:4 121:21,21
122:20,23 123:1
132:15,18

**fair** 25:12 43:8
52:11 79:20
**fairly** 45:16 46:16
75:9 77:20
**fairness** 91:12
**faith** 90:19
**fall** 86:10 124:13
**false** 91:9
**familiar** 28:15
83:23 110:19
**far** 61:2 75:24
77:17 92:12 110:1
113:25 117:18
**fare** 69:24
**faster** 79:21
**favor** 28:14,18
33:18,23 34:2
39:10 40:14
105:23 116:6
129:24
**favorable** 118:5
**february** 25:1,18
49:16 57:2,3,19
57:24 59:2 60:3
63:13 77:1 84:9
89:5 119:1 123:24
124:10
**fee** 2:4,8,9 12:9,19
16:18 133:5,10,11
**feel** 113:15
**fees** 16:12 91:22
**feld** 7:15
**felt** 82:19
**fiduciaries** 42:15
77:23 78:5
**fiduciary** 31:18
32:7,19,25 33:11
42:19 52:24 74:9
90:19
**field** 72:13
**fifth** 8:3 10:11
**fight** 103:25

**fighting** 108:21
**figure** 95:23 97:2
115:10 122:16
**file** 18:1 43:3
62:10 109:17
114:19
**filed** 2:9 3:17 4:6
4:18 5:4,22 12:11
15:5,8,12,21,24
17:19 20:6 28:25
42:4 54:5,9 66:8
82:17 84:23 88:14
88:25 90:17
114:16 116:14
117:23 133:11
134:20 135:11,24
136:10 137:11
**filing** 42:5,10
**filling** 46:6
**final** 82:13 103:12
110:3 123:18
**finally** 43:8 124:3
**financial** 69:21,23
**find** 99:21
**fine** 36:18 65:1
85:25 104:10,12
107:17 109:5
**finger** 79:7
**firm** 6:16 12:20
**first** 12:7 22:8
27:17 36:2 47:15
47:23 54:2,3 66:5
84:16 93:17 99:17
100:7 101:12,14
108:12,22 109:8
109:16 110:14
116:2 128:14
**fit** 46:14
**five** 36:21 74:11
91:19 107:7
**flood** 41:20 42:2,3
**floodgate** 79:3,11

**floor** 6:11,18 8:3
9:10 80:18
**florida** 56:4
**focus** 67:4 72:6
75:1
**focused** 33:20
79:1,8 130:9
**focuses** 72:3
**following** 20:8
100:7
**follows** 62:8 96:13
**foolish** 61:9
**footnote** 96:16
**force** 61:25
**forego** 24:4
**foregoing** 138:4
**foreign** 48:14 56:6
76:18 91:24 92:24
117:7,11,16
**forget** 106:17,18
**form** 18:4,4 20:1
130:24
**formally** 80:4
132:13
**formulation** 93:6
**forth** 67:10 83:6
98:7 103:6 113:6
121:6 122:23
**forum** 25:5 36:16
74:3,14
**forward** 30:19
41:14 43:20,20
47:14 60:25 61:1
104:8 116:13
117:13
**forwarder** 118:21
118:21
**found** 39:13
**four** 25:14 29:7
49:14 73:8 74:9
**fourth** 26:6 41:19
73:14

**fox** 8:13
**frame** 68:16
**framed** 14:25
**framework** 93:13
**francisco** 10:25
**frankly** 27:7 41:3
  42:9 70:2 79:15
  120:7
**fraud** 90:18
**fraudulent** 31:5,7
  31:9,15,22
**free** 62:8
**freight** 118:20,21
**frenville** 94:15
**friday** 15:21
**front** 30:3 31:13
  34:6,22 44:20
  48:2 64:3 103:7
**fti** 4:1,7 10:20
  22:9,21,24 23:18
  135:5,12
**fulbright** 10:19
  22:24
**full** 74:12 126:6
**fully** 29:23 30:3
  131:21
**fund** 128:6
**fundamental** 89:1
**fundamentally**
  55:7 76:17
**further** 25:25
  29:24 40:12 42:7
  43:24 51:17 76:19
  77:3 78:4
**furtherance** 42:20
**future** 16:9 50:16
  104:9 106:23
  126:5
**fuzzy** 50:12

**g**

**g** 12:1
**galardi** 4:19 8:20
  99:7,8 100:6,16

100:20 101:12,16
101:19,23 102:9
102:14,19,23
103:9,16,23 104:7
104:11,13,16,20
105:1,20,25 106:5
106:11,19 107:1,9
107:13,17,21,25
108:3,6,15,22
109:2,9,12,22
135:24
**galloping** 72:13
**gap** 46:8
**garden** 40:15
**garrett** 10:17
  82:10 121:21
**gates** 41:20 42:2,3
**gather** 87:4
**gating** 69:5
**geared** 93:2
**gearing** 59:1
**gelber** 3:18 9:1,6
  20:24 21:1,2,4,4
  21:10,22 22:2,5
  134:21
**general** 29:2
  41:21 64:18 82:24
  85:10 96:8 97:25
  98:12 128:5
  129:11,25 130:23
  131:22
**generally** 58:22
  76:12 84:10 97:4
  124:5 125:24
  126:7,12
**getting** 45:24
  64:14 120:15,17
**give** 27:13 33:8
  43:10 100:12
  107:3,5,5 114:19
  117:25 132:5,9
**given** 19:8 24:3
  28:13 34:18 41:2

41:25 62:21 76:8
79:17 80:23 83:25
90:16 96:10
110:19 127:8
**gives** 76:18
  128:14 129:20
  130:4,10
**giving** 14:1
**global** 5:17 11:2
  115:24 118:1
  137:5
**go** 22:21 40:12
  47:14 48:1 57:13
  59:11 64:12 81:2
  84:4 97:5 99:4,17
  100:24 102:1,2
  106:13 109:7
  116:8 117:13
  129:1
**goals** 101:4
**goes** 105:13 108:6
  108:7
**going** 13:9 28:16
  30:20 31:4 36:9
  36:21 41:14 42:6
  45:7 48:13,15
  49:16,18,19 50:12
  50:13,15,18 54:15
  57:2,20 60:25
  61:1 69:24 71:16
  86:23 87:3 90:20
  91:21 92:5 98:9
  99:9,10 101:3
  102:5,17 103:7,25
  106:1,20 107:15
  107:23 110:9,16
  111:11 114:1
  116:17 117:1
  118:5,21 119:2,4
  122:4
**gokaldas** 5:14
  136:21

**gokolas** 8:2
**gokoldas** 121:5
**good** 17:11 21:1,3
  22:23 23:1 29:20
  44:12 51:8 53:16
  53:17 57:6 65:23
  80:10 82:10 90:19
  98:18
**goods** 5:3,9 87:6
  87:23 89:21,22
  94:7,12,21 95:7,9
  98:10 101:5,7,24
  105:9 110:6 112:9
  114:4 118:20,22
  118:24 119:7
  121:10 124:14
  127:15 129:18,19
  129:24 130:12,14
  130:25 131:14
  136:9,16
**gotshal** 10:9 80:9
  82:11
**gotten** 120:6
**gottlieb** 6:2 17:12
**govern** 84:20
**governance** 70:12
  75:25
**governed** 76:17
  78:9 89:4
**governing** 93:1
  128:12
**grant** 12:18 13:20
  13:21 14:3,21
  17:1 19:7 22:4
  58:1 73:23 79:25
  122:17 128:12
**granted** 38:18
  44:1 45:1 46:12
  61:10 62:4 79:12
  105:10
**granting** 3:13
  28:18 29:17 34:4
  34:7 35:6 36:3

37:21 39:8 41:20
42:6 134:15
gray 8:15 99:8
great 26:7 50:5
greater 28:3
75:24
greatest 41:15
green 12:3,4,5
greg 99:7
gregg 4:18 8:20
135:24
gritty 86:20
grounds 19:22
group 4:16,19
135:21,25
guaranteed 51:3
guaranty 7:2
guess 14:6 28:9
41:6 97:5 105:25
106:19 113:14
guessed 28:11
guidance 76:18
gump 7:15 65:24

**h**

h 9:13 11:6
half 37:1,4,5,12
98:10
hall 10:6 23:11
32:9,11,12,12,15
32:23,25 33:3,8
33:10,12 65:16,21
hamer 2:9 133:11
hamilton 6:2
17:12
hand 15:7 56:13
78:14
handle 39:20
handled 17:9
haney 48:3
happen 16:22
18:20,20 67:23
69:10 92:13 94:14
116:17

happened 22:17
25:13 48:9 51:11
happening 54:19
79:24 113:21
happens 68:13
happy 72:1 84:5
88:7 114:5 119:17
119:19,23
hard 24:9,10
46:13 49:25 52:6
67:18 90:23 107:8
107:9
harm 68:15
harmonization
89:11,12
harmonized 98:1
harms 59:20
74:22
harner 12:22
hat 100:22
hate 100:21
hauer 7:15
head 54:3 85:9
heading 27:25
hear 43:25 59:13
74:10 113:15,15
heard 14:1 19:6
75:11 87:22,22
88:16 99:9 111:14
111:17
hearing 2:1 13:24
15:9,21 17:18
18:9,20 19:24
20:5,8 21:12 22:8
44:20,24 45:15
48:2,6 73:23
80:23 84:15 93:7
99:19 106:12,14
108:16,25 115:10
117:24
hearings 108:25
held 27:4 45:3
52:25 93:9 105:24

113:11 125:24
hesitating 86:5
hi 32:12
high 77:11
higher 73:2 77:12
highlight 66:1
highly 78:3,25
hill 7:8 111:12
hit 54:2
hold 30:25 33:5
holdco 3:18 5:23
6:3 17:13 134:21
137:12
holding 26:21
44:18,21 60:13
62:19,20 96:11
holdings 1:7 4:2,5
24:20 25:6,20,22
26:2,7,9,10,22,24
27:2 30:1 31:4
32:1 34:15 36:7,9
37:8,14 38:25
39:3 46:12,23
48:8 49:3 51:7
52:3,14,15 54:5,8
54:12 59:16,18,22
60:12,20,22 63:8
65:18 67:5,5,7,7
67:15 68:12,16
69:2 70:2,2 73:12
73:15,20 79:24
135:7,10
hon 1:22
honor 12:13,24
13:7,8 14:9,23,24
15:9 16:1,23 17:5
17:11,15,17 18:5
18:15 19:10,19
20:12,22 21:1,22
22:5,7,15,23
23:14,25 24:10,14
25:24 27:7 28:15
29:4 32:12 33:15

36:6,23 41:10
43:24 44:12,17
45:6,14,24 47:10
48:24 49:24 50:16
51:22 52:11 53:5
53:16,21 54:2,11
55:12,20 57:10
59:6 60:23 61:4
61:18 63:3,20
64:10,22 65:20,23
66:10 67:25 68:19
68:22 69:1 70:10
71:7,10,25 72:8
72:17,18,25 73:1
80:8,12 81:8 82:3
82:8,10,14,17
83:18 84:21 85:17
85:24 86:14 87:10
87:13,21 88:6,9
91:4,11,12,15,19
92:11,20 94:7
97:14,18 99:5,7,9
99:14,17 100:6,8
100:17,20 101:12
101:13,20 102:10
102:19,22 103:9
104:8,20 105:1,25
106:6,19 107:2,4
107:17,21 108:15
108:24 109:6,14
111:12,14,20
112:3,23 113:1,15
114:12,12,13
115:23,25 116:5
116:12,23 117:21
118:3,13 119:4,8
119:12,21 120:13
121:3,21 122:1,10
122:17,20 123:3
132:15
honor's 19:12
20:3,8 47:3 110:1

**hope** 12:19 48:11
72:11 87:22 91:3
**hoped** 27:8
**hopefully** 57:23
**hopes** 81:17
**horse** 49:7
**horses** 72:12
**hostess** 128:10,24
129:2 130:1 132:1
**hour** 72:23 73:3
**hubbard** 9:15
23:9 44:13 71:12
**huge** 59:3
**hughes** 9:15 23:8
44:13 71:11
**huh** 56:15 57:4
**hundred** 88:3
128:4
**hundreds** 66:18
**hutcher** 11:1
115:24
**hyper** 91:6
**hypotheticals**
118:6

**i**

**i.e.** 96:23
**idea** 57:6 98:8
**ignores** 42:1,8
**ii** 2:14,19 3:13
133:17,23 134:15
**iii** 2:15,20 133:18
133:24
**illinois** 38:15
**illogical** 93:15,25
**imagine** 52:6
62:23 90:24
**immaterial** 24:3
**immediate** 4:16
90:7 122:15,15
123:15 124:17
135:22
**impact** 56:17 70:8
74:21 75:2

**impair** 76:11
**impending** 15:6
**impermissibly**
91:7
**implication** 91:17
**implied** 92:23
**import** 92:18
**importance** 24:23
47:2 48:25 61:16
75:24 76:18
**important** 25:20
25:22 34:16 40:19
41:3 43:18 55:18
78:3 79:18 97:6,6
97:7 126:6
**importantly** 34:3
83:19
**imports** 116:16
130:8,17
**improper** 36:4
41:4 127:4
**imputed** 98:21
**inaccurate** 66:24
**inappropriate**
83:12
**incentive** 60:4,12
60:14 77:24
**incidentally** 37:10
**inclined** 43:16
122:17
**include** 94:3
126:2
**includes** 37:10
52:19 75:12 93:10
**including** 19:8,22
24:19 91:25 93:8
93:20,20 128:16
128:17 131:25
**inco** 93:1
**inconsistent** 27:23
105:4
**inconvenient**
68:11

**incorporated** 93:2
96:1
**incorporating**
92:22
**incorrect** 66:17
**increased** 110:17
**incumbent** 59:21
**incurred** 59:3
87:24
**incurring** 78:17
**indian** 104:21
107:19 116:23
**indicate** 54:22
**indicated** 15:16
39:15
**indicates** 39:15
**indicative** 47:1
**indiscernible**
30:19 45:23 46:18
96:13 113:5
**individual** 42:10
42:13 63:6 96:21
106:15
**induced** 32:18
33:6 100:1 101:11
**inducement**
111:19,19 112:4
116:23 117:3,6,20
**industries** 5:17
9:9 74:4 115:25
137:5
**industry** 82:7
**infancy** 47:7
**inference** 47:17
**inferences** 46:25
**influenced** 110:4
**influencing** 126:1
**informative** 75:12
**informed** 73:1
**ingersoll** 8:1
121:4
**initial** 88:25
**initially** 26:2 27:7

**initio** 46:24
**inquiries** 122:5
**insiders** 90:18
**insolvency** 30:22
40:6 62:20 66:13
120:9
**insolvent** 27:19
90:1
**instances** 79:13
85:3
**instructed** 83:24
**instructive** 36:24
**insufficient**
131:19 132:8
**insurance** 4:10
14:12 63:5,7,10
79:14 80:17,20
81:2,4,18 128:6
135:15
**insurer** 74:11
**intended** 94:2
96:22 105:23
**intending** 47:21
**intention** 107:3
**interest** 16:15
70:7 73:22 74:14
74:18 129:23
**interested** 42:14
60:5
**interesting** 61:17
**interests'** 83:13
**interfere** 79:23
**interference** 74:7
**interim** 45:8
**interpretation**
52:10 55:8 87:11
89:9 92:9 131:2,7
131:12,20
**interpretations**
130:19
**interpreted** 89:19
92:1 93:4,16 94:3
94:4 129:16

130:17
interpreting 92:3
92:15 93:2,19
95:18 131:10
interrelated
109:24
interrelationship
96:10
interrupt 25:10
60:9
introducing 84:4
inventory 90:15
107:16
inviting 109:20
invoice 88:12
invoices 86:23
116:8 121:23
involve 40:14,15
40:25 52:14 75:25
78:10
involved 39:5
42:16 65:9 72:6
involves 38:16
40:19 65:6 74:8
74:13 78:20
involving 62:12
irrelevant 131:8
isolation 82:12
issue 14:6 24:1
28:4 29:23 31:1
32:17 34:13,14,24
35:1,3 38:11
39:16 51:13 52:4
64:9 66:16 69:7
69:16 74:6 76:14
85:19 86:4 87:5
87:16 101:15
103:9 104:2,4
108:17,23 109:23
110:21 114:2
116:6,15,16
117:18 122:11
124:6 125:9

127:12 131:3
issued 26:20 55:3
issues 28:12 34:21
35:16,17 41:5,9
41:13,16 49:14
52:9 60:8 61:11
67:21 68:12,21,25
69:5 71:4 75:1,8
75:25 76:7,17
79:8 103:3 104:14
106:15 109:21
110:7,11 118:1
131:9
issuing 32:17
it'd 81:2
item 12:7 13:9,14
14:24 17:8,15
18:8 19:15,20
20:24 80:12,16
81:10 82:12
116:12
items 13:8 69:5
82:13,16
it's 91:17
i'm 98:16

j

j 9:22
jaclyn 5:8 136:15
jacqueline 8:6
10:14 24:1 53:18
121:3
january 59:1
jartran 111:22,22
112:7
jeffrey 9:13 88:9
jersey 7:11
joe 118:13
joel 5:4 136:10
join 46:12 49:3
joinder 29:13
83:19
joined 44:18
46:24 73:12 83:18

joining 4:2 61:20
135:6
joint 25:17 52:19
jointly 24:24
joseph 6:21 10:7
judge 1:23 61:16
61:19 62:3 72:20
73:9 78:21 99:24
129:1 131:25
judge's 111:16
judges 92:13,14
judgment 74:15
judgments 27:24
judicial 34:1
44:25 49:12 61:21
67:10 74:17,18
75:6 106:9
juiris 22:12 80:14
jump 25:21
juncture 66:16
june 25:16 44:9
45:10 76:24
119:25
jurisdiction 56:13
jurisdictions
67:16 69:16
justice 4:4 23:6
26:20 39:15 44:20
45:1,4,14 46:11
48:3 72:19 135:9
justify 53:23
63:24

k

k 7:3
keep 79:7 107:18
keeping 69:2
kept 16:2
kick 25:1
kind 44:8 46:24
54:24 72:22
kmart 98:2
know 12:14,25
13:21 28:15 33:4

39:21 41:9 42:9
43:8 48:22 51:8
51:24 55:17,20
57:6,20,23 59:4
59:12 62:25 64:13
64:16,24 69:12,22
72:23 88:1 90:9
90:23 91:22,23
104:4,21,22
106:16,16 107:12
111:25 112:16
113:6,24 114:8,8
115:21 118:15
119:9,24 120:21
knowing 106:7
knowingly 99:23
112:5
known 92:22
knows 122:1
korea 126:12

l

l 5:25 7:20 138:9
label 5:9 136:16
lack 74:6 90:18
lading 98:6
laid 39:22 73:25
76:21
landlord 15:14,20
16:7 17:3,23 18:1
18:24 20:7
landlord's 15:24
18:18 19:22
language 129:11
129:12
large 40:1 107:20
126:24
largely 33:20
larger 120:12
late 22:17 47:5
laughter 45:22
49:22
laura 10:6 23:11
32:11,12

laurel 6:14
law 6:16 12:20
  27:25 28:6,12
  31:6,13,13,21
  33:14 38:3,14,15
  38:15,17,17 39:17
  39:19 40:6,7,16
  40:17,20,22 41:1
  41:4,9,12 52:1,2
  52:10,12 55:8,9
  55:18 56:7 60:24
  64:4 65:12,16,19
  68:23,24 70:19
  75:23 76:2,4,15
  78:9 79:18 83:23
  85:18 89:10 91:12
  92:3,22 93:19
  94:2,18 96:20
  97:10,15 99:13
  103:22 114:7
  127:18 128:11
laws 68:3 96:21
lawsuit 94:22
lawyer 12:23
  72:25
lawyers 26:13
  78:13
lay 60:17 125:11
lays 84:14
lead 131:13
leading 57:19
  125:23
leads 48:18
leap 91:7
learned 15:15
lease 3:12 15:13
  17:3,22 18:6,13
  19:25 134:14
leases 3:2,6 5:21
  15:1,2,4,24 16:8
  16:11 20:4 21:15
  21:18,20 134:6,10
  137:10

leave 46:12 49:7
  105:2 111:7
leaving 49:6
left 12:13 18:13
  72:12 100:4
legal 16:12 41:13
  68:21 87:4 91:21
  101:25 114:2
  116:6 138:22
legislation 98:24
  99:1,11 129:23
legitimate 79:2
  101:4
length 28:16
  39:21
lengthy 75:12
letter 98:4
level 34:18 37:5
  77:7 124:10
  126:19
liabilities 122:9
liability 52:19
  97:10
liberty 4:10 6:4
  80:16,20 135:15
lien 34:1 74:17
life 113:5
lift 22:21 44:17
  46:12 58:21,22,22
  60:11 72:9 74:2
  77:18 78:17 80:1
  81:2 102:4
lifted 49:17 75:18
  79:3 81:22 82:1
lifting 30:4 72:5
  75:3,4 76:19
light 12:3,4 75:21
  79:14,25 81:20,21
limited 27:18
  28:19 49:1 56:21
  68:17 88:10 128:2
  130:8,17

limiting 36:14
line 85:9
liquidate 4:5
  28:20,21 36:8,21
  62:22 108:13
  135:10
liquidated 30:21
  56:5 74:2 75:19
  77:10,17 79:10
  80:2
liquidating 36:15
  36:16 55:17 70:6
  77:10
liquidation 55:21
  57:7
list 4:5 23:6 26:13
  39:24 40:8,10
  48:9 54:23 55:3
  80:25 135:9
listed 90:22
listen 92:5
litigant 79:4
litigants 79:13
litigate 68:16 70:3
litigated 42:22
litigating 62:15
litigation 4:3,6
  9:16 23:9 24:15
  25:2 26:1,22 27:1
  27:4,17 28:4
  29:10 31:24 33:25
  34:5,15,23 35:7,9
  35:20 37:7,8,13
  37:20 38:1,7,8,11
  38:16,24 39:5,6,9
  40:3,10,14 41:13
  41:17 42:25 43:15
  43:17,19 44:1,13
  44:19 47:25 48:4
  48:7 49:3 52:20
  55:16 56:20 57:7
  58:8 59:17 60:16
  60:17,21,25 63:9

63:16,17 64:7,9
  65:6 66:24 69:3,3
  69:8 71:12,15,20
  71:22 72:6,22
  73:14,15 74:13,20
  76:22 77:15 78:2
  78:15,18 79:3,5
  79:17 81:21 82:1
  102:3 135:8,11
litigations 27:20
  37:24 64:18 73:8
  73:13
little 13:9 25:25
  27:15 37:18 40:20
  40:25 46:1 70:4
  71:14
live 25:22
livelihood 50:8
llc 3:3,9,18 4:16
  4:19 5:1,5,23 6:3
  7:9 134:22 135:21
  135:25 136:7,11
  137:12
llp 2:8 6:2,9 7:15
  8:8,15 10:1,9,19
  11:1 133:9
local 2:5 133:7
located 15:3
logic 112:14
long 30:20,21
  87:5 131:20
longer 14:2
look 20:20 26:19
  55:7 56:17 63:10
  69:20,21,22 88:11
  90:9 100:8 119:9
looked 99:25
looking 35:5,25
  36:19 37:23 42:14
  45:18 46:16 56:18
  66:13 90:2 118:4
  122:14,15

loop 16:2
lord 65:1
losing 43:21
loss 91:9
lost 50:7,8 70:4
  72:12,14
lot 34:16 47:21
  51:25,25 67:4,10
  69:4 82:19 86:1
  104:14
lots 94:14
loud 111:14
low 37:12
luke 5:22 6:7
  17:11 137:11
lumping 42:11
lynn 138:3

**m**

m 4:19 8:6,13,20
  127:6 135:24
magnitude 56:22
mail 117:7,11,15
main 21:11 34:13
  34:14 102:23
major 55:10
majority 53:1,4
making 110:12
managed 24:24
  36:14
management
  18:11 21:24 72:20
manages 41:17
managing 129:4
mandated 61:21
manges 10:9
  82:11
manner 31:2
  42:22
manufacturing
  5:1,5 7:9 111:13
  136:7,11
march 48:10
  84:13,19 85:15

124:3
marcus 10:14
  12:4,7,16,24 13:2
  13:4,7,17 14:9,11
  14:15,20,23 16:6
  16:23 17:5,7 22:7
  22:13,15,17 23:25
  24:1 34:13 53:16
  53:18,18 55:11,14
  56:8,15 57:4,10
  57:13,15,18,23
  58:3,10,13,15,17
  59:6,8,11,15 60:5
  60:7,10,14 61:6,8
  61:24 62:3,18
  63:23 64:10,13,21
  64:25 65:3,6,9,14
  65:20 66:1 67:12
  67:18 68:7,22
market 6:11
match 121:23
material 66:9
  127:7
math 36:24 50:12
matter 12:8 20:10
  22:20 40:22 45:17
  47:12 50:4 52:10
  56:14 69:12 74:25
  79:18,21 95:11,20
  96:20 103:22
  114:7 117:18
  125:25 127:18
  131:8
matters 2:1 12:21
  22:8 50:5 55:22
  75:9 88:17 109:19
  119:20
matthew 10:15
maybes 10:17
mccughen 26:21
  44:20 45:1,4,14
  46:11

mcfarlands 94:15
  131:25
mcfarlin's 129:1
mcfarlin's 128:6
  128:25 130:1
mckewen 72:20
mckool 9:8
mean 30:12 31:6
  32:22 44:5 51:19
  52:23 55:6 56:5,8
  56:22 64:20,23
  67:2 69:17,19
  71:19 86:9 91:15
  96:19 97:18 98:13
  99:1 106:19
  107:14,22 108:14
  110:6 113:9,22,24
  114:16 115:3,6
  117:22,22 118:8
  118:11 119:18,24
meaning 38:7
  92:23 130:17
meaningful 43:14
  49:4
means 47:24
  48:14 51:3 84:3
  95:24 130:24
meant 61:21
  92:18 96:11 97:2
  130:23
media 99:25
  100:3
medical 126:15
meet 45:10
melgar 4:13 81:10
  81:13 135:18
mention 46:9
mentioned 15:10
  40:18 44:19 45:2
  48:8,10 63:4
  111:21
mere 132:7

merits 77:15
metaphor 49:8
michael 7:6
microphone 12:3
mid 48:10
middle 52:17
midst 24:15
mien 6:17 118:14
  118:16,17 119:1
  123:5 127:6
million 24:18
  36:24 37:5,9 58:5
  58:6 88:3 90:13
  90:14,15 106:21
  108:23,23 115:18
  120:2
millions 66:19
milton 5:1,4 7:9
  111:13 114:21,24
  136:7,11
mind 48:21 61:18
  72:3,6 75:6
  130:22
mineola 138:25
mini 15:19
minimum 77:3
  116:19
minute 110:14
mirren 96:17,18
mirrors 20:2
misexplained
  112:23
misguided 66:3
  129:22
missing 25:2
  34:21 63:25
mistaken 111:7
modified 17:1
  19:7 80:1
momentarily
  32:10
money 34:17 35:1
  35:3 59:3 90:2,3

90:13,14 110:24
112:12,17,25
113:4,6 128:5
**monitor** 10:20
23:3,19 42:24
48:4 50:23 60:24
71:19
**monitor's** 31:8,14
40:17 43:15
**monitoring** 48:1
50:13,17,20 54:14
77:3 78:18
**monitors** 23:8
42:18
**month** 91:19
**months** 45:19
47:13,13 48:16,21
71:17 88:17
**moot** 115:14,16
**morneau** 10:2
**morning** 12:8
17:11 21:1,3
22:23 23:1 44:12
53:16,17 65:23
80:10 82:10 84:3
**motion** 2:12,13,18
3:1,6 4:1,10,13,16
5:1,7,14,17 13:10
13:15,18,20,25
14:4,5,21,25,25
15:6,11,12,15,22
16:25 19:6 22:9
22:12,22 23:16,17
24:4,14 26:22,23
27:5,8 28:17 36:2
41:20 42:6,11
43:10 44:2,23
45:1 48:12 49:1
49:10 54:9 56:17
73:8 75:2 79:25
80:14,16 81:1,7
81:10,16,17,19,20
81:23 82:6,6 83:4

83:12,16 88:14
104:13 108:22
110:5 113:17
114:19 116:3
117:19 133:14,15
133:21 134:5,9
135:5,15,18,21
136:7,14,21 137:5
**motions** 41:21,23
42:4,6 43:3,6
44:23 82:18 84:23
85:21 86:16,17
109:17 123:11,15
123:18 124:6,12
124:17,18 127:13
132:10
**movant** 43:15
81:22 86:15
**movant's** 74:16
83:16
**movants** 23:8
75:5 80:3 91:7
109:23 127:6
129:15 130:7
131:10 132:14
**move** 30:19 43:20
43:20 104:8 110:9
116:13 123:21
124:7
**moved** 79:13
**movement** 62:8
**moving** 23:20
**multi** 61:20 74:23
**multiple** 59:19
62:1

| n |
| --- |

**n** 6:1 12:1 127:6
133:1 134:1 135:1
136:1 137:1 138:1
**nail** 54:2
**named** 26:2,7
73:16 77:6,8

**narotam** 1:25
**narrow** 29:15
33:22 43:21
**narrowly** 83:24
128:1 130:5
**natural** 50:22
**nature** 39:16
124:19
**necessarily** 66:12
68:13 117:9
**necessary** 23:22
27:8 60:21 61:3
74:10 93:8,10
112:10 128:16
**need** 13:3 30:18
37:19,20 39:6
48:22 68:23 70:23
75:15 77:10 80:4
102:3 106:11,13
109:19 115:10
119:15,21 120:22
120:24 124:10
126:10 132:13
**needed** 17:21
99:22 116:18
**needless** 34:4
**needn't** 74:23
**needs** 30:24 43:20
102:17 113:16
116:15 126:4
132:3
**negative** 46:25
47:17
**negotiate** 57:8
77:24 115:2
**negotiation** 51:1
**neil** 9:22 23:8
44:6,12 71:11
**never** 74:24 98:21
112:2
**nevertheless** 97:9
99:21

**new** 1:2,15 6:5,5
6:19,19 7:11,18
7:18 8:4,4,11,11
8:18,18 9:4,4,11
9:11,19,19 10:4,4
10:12,12,22,22
11:4,4 14:15
17:16 38:14 56:4
97:22 98:3 107:19
126:16
**night** 110:20
**nine** 74:16
**nitty** 86:20
**nola** 7:13 111:12
**nominal** 91:21
**non** 3:12 15:1
43:6 62:9 78:19
127:6,10 134:14
**nonresidential**
3:2,7 134:6,10
**normally** 72:23
73:17 108:20
**north** 6:11
**norton** 10:19
22:24
**note** 21:22 61:12
63:3 82:17 96:16
96:17
**noted** 62:8 81:24
123:14
**notice** 2:1,12 3:1
3:11,16 5:20 14:2
15:21 18:7 19:8
20:6,21 21:6
73:23 93:6 109:18
133:14 134:5,13
134:19 137:9
**noticed** 18:9
**notices** 18:9
**notwithstanding**
87:7 93:18,21
105:22 120:17
124:19

novel 90:12
november 24:18
  102:8,9,12 103:3
  103:19 104:11
  106:6 111:18
  113:17 118:23
  123:23 124:23
nucleus 61:13
  64:14
number 13:14
  15:2 17:8,15,16
  19:15,16,22 20:24
  22:11 23:3 29:13
  36:11 38:4 41:23
  46:19 66:5,18
  68:8 69:5 123:10
  127:9
numerous 59:16
  62:12 68:8
nunc 2:8 133:10
nw 7:3
ny 138:25

**o**

o 1:21 12:1 138:1
object 115:1
  125:14
objected 15:15
  17:22 114:14
  121:14
objection 3:3,9
  4:22 5:12 12:11
  17:24 18:23 20:13
  20:15 23:23 29:12
  30:14 38:9 39:8
  53:21 64:3 77:4
  81:6,19 82:18,22
  84:14 85:15
  121:18 122:25
  124:4 136:5,19
objections 13:17
  18:2,21,22 19:22
  21:11 42:4,10,12
  46:6 51:21 83:6

obligated 119:1
  120:1
obligation 56:20
  87:25 92:2 119:8
obligations 105:7
  105:14 123:22
observed 36:6
obtain 36:9 42:14
obtained 122:5
  129:19
obviating 75:15
obvious 38:20
  123:1
obviously 31:14
  37:22 51:8 54:14
  72:11 78:6 88:23
  111:15 117:23
  118:7 131:21
occasions 59:16
occur 79:20,22
occurred 38:21
  39:1 87:7 100:10
  110:13
occurs 93:22
october 98:11
offense 69:13,15
officer 119:9
officers 42:15
  63:7
oh 26:16 60:9
  86:24,24 91:19
  106:17 119:7
okay 12:6,15 13:4
  13:7,20 16:5,24
  17:10 19:1,11
  20:10,25 21:21
  22:6,18 23:13,23
  24:6,12,13 26:18
  27:6 29:5 30:15
  33:13,16 35:14
  45:12,19,25 46:21
  47:19,20 48:17
  53:10,10,14 55:13

59:7 60:6 61:2,5,6
  63:22 64:11 65:8
  65:22 67:8 71:6,9
  72:15 73:4,7
  80:19 81:12 82:5
  82:9 84:7,25 85:6
  85:23 88:5,8,13
  89:8 91:1 98:9,23
  99:6 102:8 103:16
  107:13 109:5,10
  109:13 111:10
  113:3,13 114:23
  116:1,10 117:4,22
  120:14,25 121:2
  121:20 122:12,19
  123:2,4,6,8,10
  132:16,19
old 138:23
olga 10:16 80:8
omnibus 4:22
  5:12 42:4,12
  82:17 136:5,19
once 20:20 50:21
one's 61:2 115:5
  115:17,17
ones 30:12
ongoing 47:6,11
ontario 4:4 23:5
  39:14,23 40:9
  135:8
open 18:14 30:25
  41:20 79:11 87:11
  130:18
opened 42:2,3
opening 79:2
operate 112:11
operation 128:24
  129:8
opportunities
  77:13
opportunity 24:4
  43:21 49:1,9,11
  70:7 72:13

oppose 122:20
opposed 63:10
  77:8 131:23
opposite 38:3
opposition 36:1
oppositions 41:23
options 79:9
oral 78:22 123:11
order 2:7,12 3:11
  12:9,12 13:5,9,18
  15:25 16:13 18:4
  18:7,11 19:9,14
  20:1,3 21:14,24
  22:3 26:20 70:21
  80:4,4 81:9 82:4
  84:8,9,13,16,19
  84:20 85:16 89:5
  90:3 94:17 101:13
  101:14,22 102:8,9
  102:16,20 103:4,5
  103:12,19,20
  104:3,23,24
  105:19,22 106:5
  106:17 107:2,5,7
  107:10,19,20
  109:3 110:4
  111:16,18,18
  113:18,19 114:1
  116:13 117:4,17
  118:16,17,19,23
  120:1,23 123:18
  123:24 124:3,10
  124:11,24 132:12
  132:13 133:8,14
  134:13
ordered 87:24
orderly 126:9
orders 14:22
  42:23 84:7 105:10
  105:18 120:18
  123:17,21
ordinary 102:6
  105:15 108:8

123:22 130:14
**originally**  14:25
**orms**  138:3,14
**outbid**  15:17
**outcome**  44:23
  51:24
**outlined**  17:3
**outset**  36:6
**outside**  86:6
  131:14
**overall**  45:5,5
  67:3 126:12
**overlap**  108:17
**overriding**  128:2
**overruling**  130:21
**overstatement**
  54:13
**overstates**  36:17
**overwhelmingly**
  28:14,18
**overy**  10:1 23:11
**owed**  110:24
**oxford**  9:22 23:8
  44:6,12,13 45:11
  45:13,23 46:1,22
  47:20 48:18 49:23
  51:2,5,12,15,18
  52:2,7,11,15,18
  53:2,4,7,9,12,15
  54:1 71:10,11,21
  71:24 72:16

**p**

**p**  6:1,1 9:21 12:1
**p.m.**  132:20
**page**  61:19 107:7
  111:25 129:2
  133:4 134:4 135:4
  136:4 137:4
**pages**  111:23
  131:1
**paid**  78:14 90:4
  102:6 107:16
  108:8 109:19

120:11 121:15
  125:10,14,19
  126:6
**paper**  82:19
**papers**  28:17
  35:13 61:9 66:6
  80:1 105:2 111:17
  117:9
**paragraph**  38:9
  38:10 39:7 105:6
  105:21 106:18
  110:16
**paragraphs**  35:5
  103:4
**parallel**  76:10
**park**  6:18 7:17
  9:10,18
**part**  19:2 34:15
  52:18 73:22 83:4
  83:15 86:17 108:2
  111:18 118:1
  123:25
**parte**  13:22
**partial**  72:9 74:6
  75:6
**participate**  16:14
  56:21 70:8,22,25
**participating**
  26:10 51:19 54:12
  62:12 77:7 78:18
**participation**
  16:16 54:17 61:1
  64:8 70:13 71:1
  71:14
**particular**  28:3,6
  39:20 41:16 48:25
  78:11 83:16 86:23
  118:16 124:25
  125:4,4 126:4
  127:4 128:1
**particularized**
  41:24

**particularly**
  34:15 56:24 78:16
  126:20
**parties**  21:10,15
  25:20,21 26:24
  28:10 29:19,23
  33:5,21 37:9 43:3
  43:7 45:9 49:12
  50:1,3,5,24 60:3
  62:12 63:11,13
  69:20,23 72:3
  74:13,20,22 75:11
  82:24,24 83:7,13
  84:21,22 93:20
  95:2 109:22 110:6
  110:12 115:9
  118:4
**parties'**  105:15
**party**  60:21 61:3
  62:15 70:6 73:22
  78:19 83:4 84:4
  91:24 105:24
  110:4,15 118:12
  127:21
**party's**  31:16
**pass**  14:18
**passed**  101:24
**passes**  20:21
**patent**  55:1
**path**  54:17
**patient**  99:25
  100:3
**pattern**  63:19
  86:6
**patterns**  68:10
  78:10
**paul**  2:9 133:11
**pay**  16:7,12 18:25
  63:9 90:2,24
  91:21 105:14
  116:5 119:1,2,17
  119:19,23 120:2
  120:24 123:19

125:13 126:3
**payables**  90:14
**payment**  4:17 5:2
  5:7,14,18 16:18
  17:4 82:7 83:4,4
  83:16 90:7 91:8
  120:6 121:17
  122:7,14,15,15
  123:12,15 124:17
  125:24 126:8
  127:4,7,10,21
  128:22 129:3,7
  135:22 136:8,14
  136:22 137:6
**payments**  16:8
  125:16 126:22
**pbgc**  7:1
**pc**  8:1 9:8
**pearl**  5:17 11:2
  104:21 115:9,19
  115:22,24 137:5
**pending**  4:3 17:20
  23:5 25:14 26:7
  26:22 29:1 40:4
  40:10 44:23 73:8
  73:13 78:3 86:16
  88:16 104:13
  127:13 135:8
**penny**  88:19,22
**pension**  7:2 23:12
  31:16 32:13,16
  40:24 93:21,22
**pensioners**  97:7
**pensions**  50:7
**people**  14:1 42:5
  50:7,8 51:1 98:17
  104:18 107:23
  108:20 109:18
  118:10
**percent**  37:1,4,12
  73:5 128:4
**performance**  16:9
  94:11 100:1

**performing** 37:16 95:1,3
**period** 20:21 53:7
**permeates** 67:9
**permission** 19:12 20:8 48:4
**permit** 74:2 75:19 82:1
**person** 119:14
**persuade** 16:13
**pertains** 15:2
**pervaded** 68:8
**peshko** 10:16 80:8 80:9,11,14 81:3,5 81:8 82:3,6
**petition** 5:9 70:13 89:22 93:23,24 98:9 99:23 100:11 112:21 119:19 121:11 131:15 136:17
**ph** 23:18 26:21 72:20 93:1 96:17 113:9
**phone** 22:19 80:19 81:12
**physical** 96:23 114:4 129:18,18 130:25
**picard** 76:12
**pick** 46:22 49:7
**picking** 44:16 71:13 109:11
**piece** 25:2 37:11 39:5 52:21
**pile** 109:14
**place** 45:6 47:9 70:12 73:17 77:20 123:17
**placervile** 20:18
**placerville** 19:16 19:25

**places** 70:1
**plain** 126:25 129:11,12 131:11
**plains** 1:15 49:18
**plaintiff's** 66:6
**plaintiffs** 23:15 24:15,21 25:3,9 27:9 28:7,24 29:7 29:18,25 30:6 33:20 35:8 36:3 38:20 41:7 42:8 42:13,21 43:4 53:23 54:4 59:15 62:21 63:4,19 64:2 66:2 67:11 68:1 71:22 73:8 75:13 76:3 77:22
**plan** 23:12 29:10 32:16,20 33:3 47:9 64:16 71:16 79:1 97:11 116:14 117:23,23 125:21
**plausible** 98:21
**players** 68:6
**plaza** 6:4 9:18
**pleading** 122:24
**pleadings** 67:10 83:22 121:22
**pleased** 17:24 19:17 20:1
**plenty** 48:20 91:14
**pllc** 7:8
**pocket** 63:10 128:5
**podium** 20:23 32:10 44:3 88:6
**point** 28:23 29:21 34:17 35:4 36:13 37:19 38:20 39:10 45:14 46:9 48:18 49:10 50:16 51:6 52:11,25 54:8

55:14 56:16 58:4 58:13,15,25 63:18 66:22 67:4,9 69:1 71:13,25 77:21,24 79:16 84:6 86:5 87:13,15 91:13 99:14 100:17 101:17 104:6,8,24 107:22 108:1 110:4 111:18 113:5 114:10,13 114:24 119:2,6 125:14 126:6 127:5
**pointed** 24:6 39:14
**points** 21:11 35:22 47:22 65:25 66:1 71:11 72:1 82:23 109:15 118:14
**policy** 14:15 89:16 95:20 96:1,4 127:23,24 128:2,4
**poor** 78:12
**portion** 19:14,15 97:12
**ports** 113:9
**posited** 89:24 114:3
**position** 28:8,10 48:23 69:21,23 79:9 83:11,19 85:25 86:15 98:20 102:20 106:2,4,8 110:13
**positions** 117:10
**possession** 93:12 94:8,12 95:5 96:23 112:4 114:4 127:16,17 128:21 128:24 129:4,6,8 129:18,19 130:3

130:25 132:2
**possible** 42:22 61:11 122:11
**possibly** 61:25
**post** 5:9 93:22,23 99:22 101:17 112:21 119:18 136:17
**postpetition** 5:4 83:5 86:24 87:6,8 94:7,11,15,20 97:11,12 100:1,2 100:25 101:3,5,7 102:6 103:21 105:8 112:1,5,13 112:20,22 114:5 118:20,25 119:1 121:8,13 122:6,8 123:21 124:22,24 127:17,18 129:5,9 129:19 130:3 132:3,4,7 136:10
**posture** 28:13
**postures** 38:3
**potential** 13:24 14:7 25:7 37:6,20 43:2 58:6 69:8 109:11
**potentially** 28:10 30:25 66:23
**practical** 74:25
**practice** 13:21 83:12 107:11
**practiced** 107:4
**practices** 105:16
**pre** 92:4 101:17 114:5
**precedent** 40:20 88:2
**preceding** 89:22
**precluded** 77:17
**precluding** 70:13

preclusive 64:7
78:2,7
preferable 29:11
prejudice 36:13
74:14
prejudiced 27:3
prejudicing 54:19
premature 43:10
prep 57:17
preparation 71:1
prepared 15:16
108:16,24 109:2
prepetition 73:15
83:3 85:2 86:7,11
86:24 87:25 89:20
91:9 93:24 94:9
94:13,16,17,17,22
95:1,3,8 97:13,24
100:19,21 105:10
105:18 108:4
111:23 112:13
118:19 123:19,20
124:15,19,21
127:15 130:4
132:8
presence 101:8
present 74:25
88:25
presentment 3:1
3:11,16 18:8,9
20:6 21:6 134:5
134:13,19
preserving 93:9
128:17
press 51:6,7 88:16
presumably 38:25
70:25
pretty 57:6 64:19
98:16
prevent 79:23
85:21 126:10
prevents 25:3

previous 120:1
previously 113:11
130:1
prima 35:23
primarily 68:2
74:12 75:20,22
primary 76:17
princeton 7:11
principal 59:17
59:18
principles 44:25
prior 63:16 70:12
105:16
priority 83:24,25
85:3,4,9 87:24
89:23 91:8,8
105:11 110:17
121:12,24 123:20
124:9 127:1,20
128:4,14 129:2
130:4,11 131:16
131:17
private 5:9 136:16
privity 101:9
pro 2:8 133:10
probability 126:5
probably 47:20
49:15 68:17 85:3
98:17 106:21
problem 69:9
procedure 84:12
117:14
procedures 70:20
84:8,14,15,15
85:15 87:1 123:25
124:4,11
proceed 24:11
43:12 48:4 69:3
73:14 81:23 82:1
84:3
proceeded 25:23
63:17

proceeding 25:5
27:10 30:7,12,13
34:8,9,22 35:10
35:17,19 37:21
38:2,4,7,12,13,19
43:23 54:17 61:14
62:23 64:3,11
65:3 68:14 70:5
74:8,17,21 75:20
76:10
proceedings 23:4
26:11 27:22,25
42:16 44:22 45:2
51:20 62:21 78:3
78:4 132:20 138:5
proceeds 55:16
process 16:3 46:5
47:6,12 48:14
77:3,5 79:24
83:21 107:23
108:2,4 109:16
114:13 120:5,8
processing 114:25
production 25:15
professionals 16:1
72:23
proficiencies 72:7
progress 26:21
projected 43:13
77:21
projecting 37:2,3
projection 44:1
prologue 90:21
proof 62:10
proofs 84:23
proper 92:9
properly 77:5
109:17 114:9
property 3:2,7,12
3:17 15:1,3,14,19
16:15 17:19 29:3
134:7,10,15,20

propose 20:9,23
117:14
proposed 15:7,16
15:25 18:7
proposing 27:9
proposition 99:15
protection 97:21
prove 62:13 86:15
provide 43:16
109:25
provided 16:17
17:25 18:19 19:20
87:8 94:20 124:14
provides 15:25
73:22
proving 127:20
provision 92:17
94:2
provisions 96:10
104:24
prudent 54:18
public 105:3
publicly 37:9
40:17
publishes 107:2
punitive 29:16,21
29:25 75:14
purchase 15:5
94:17 126:23
purchaser 126:21
purely 28:21
36:15
purpose 4:2 98:6
98:24,25 99:4
129:23 135:6
purposes 28:19
73:6 75:2 116:21
131:8
pursuant 2:4 4:17
15:4 82:25 83:7
105:11 124:11
133:5 135:23

**pursue** 62:9 79:5
**pursued** 67:1
**pursuing** 27:20
  28:7 58:8
**push** 66:20
**pushing** 115:5
**put** 18:18 28:8,10
  35:12 67:22 94:19
  100:21 108:16
  109:3 113:22
  116:3,11
**putting** 89:6

**q**

**qualified** 83:18
  102:11
**quantify** 108:20
**quarropas** 1:14
**question** 40:3,19
  44:16 46:22 47:3
  54:3 55:6 58:19
  60:20 64:13 67:15
  67:18 68:11 69:19
  70:1 85:12 89:1
  99:21 113:14
  126:18
**questions** 27:24
  27:25 40:5,6,16
  41:1,2,3,3,12
  43:24 53:15 75:6
  84:5 88:7
**quibble** 33:21
**quick** 72:1
**quite** 12:22 26:11
  120:6,7
**quote** 61:18 73:24
**quoted** 132:1
**quoting** 112:6
  128:25
**qureshi** 7:21
  65:21

**r**

**r** 1:21 6:1 7:13 9:6
  10:6 12:1 138:1
**rabbit** 100:22
**race** 126:10
**races** 49:13
**rai** 1:25
**raise** 72:21 104:11
  108:1
**raised** 29:20 36:1
  87:5 103:3 104:5
  110:15 114:24
  124:6 127:13
**raising** 35:3
**ramos** 129:1
  132:1
**ran** 111:25
**rapidly** 41:1
  108:17
**rare** 81:25
**rate** 73:2
**rdd** 1:3
**reach** 77:14
**reaching** 120:5
**read** 24:7 29:11
  29:12 90:8 105:6
  107:8 110:20
  124:7
**readily** 126:20
**reading** 52:23
**ready** 15:8 44:8
  63:12,13 74:20
**real** 3:2,7,12 15:1
  49:11 66:12 67:14
  68:11 70:7 120:10
  134:6,10,15
**realistic** 44:9
**really** 25:3 29:13
  31:20 34:20 37:11
  47:7,11,12 48:16
  54:12 55:4 56:23
  62:24 64:19 65:2
  69:19 75:2 78:20

79:8,19 81:1
  86:12 90:19 98:15
  99:10 101:18
  102:25 103:6
  107:22 113:2
  118:14 120:7
**reason** 25:7 29:21
  45:16 48:19 79:15
  86:10 91:24
**reasons** 70:16
  101:6 122:23
**reassessing** 69:4
**rebuttal** 109:15
**recall** 15:9 111:22
**recap** 65:15
**receipt** 89:2,20
  91:17,18 96:19,19
  101:7 103:1,23
  119:6
**receive** 43:18
  95:10 116:16
**received** 32:4 87:6
  87:10,11 89:21
  92:10,16,17,19,23
  94:3,12 95:24
  127:16 130:12,18
  130:22
**receiving** 118:22
**recipe** 30:8
**recipient** 56:3
**reclamation** 96:9
  101:22
**recognize** 116:17
  126:7
**recognized** 24:23
  42:18 118:24
**reconcile** 83:13
  85:10
**reconciled** 83:21
**reconciliation**
  121:25 122:3
**record** 71:11 80:8
  80:11 82:11 88:11

91:5 98:19,22
  99:7 103:6 111:7
  116:2 117:12,18
  118:7 121:22
  125:11 138:4
**records** 121:23
**recovered** 36:10
**recoveries** 30:19
  37:2,3,6,11 43:11
  43:14 57:20 66:9
  66:15,21,23 67:2
  70:9
**recovery** 37:4
  58:6 77:16
**red** 120:21
**reduce** 39:6 82:21
**reed** 9:15 23:9
  44:13 71:12
**reference** 110:18
  111:3
**references** 64:2
**referred** 91:11,12
  110:19 116:24
  118:7 120:18
**reflected** 16:6
**regard** 18:13
  61:15 113:16
  117:20
**regardless** 68:13
**regularly** 42:18
**rehash** 28:16
**reit** 3:17 21:8
  134:20
**reject** 19:21
**rejected** 62:6
**relate** 54:25
**related** 2:16,21
  3:7,13,13 5:21
  13:13,15 24:16,22
  29:15 38:22 64:4
  64:15 82:13
  104:15 133:18,24
  134:10,15,16

137:10
relating  15:2
relationships
  112:19
relative  47:1
  68:15
relatively  31:18
  76:6 78:12
release  118:21
relevant  53:7
  123:18
reliance  96:18
  110:13 113:25
  117:14
relied  113:10
relief  2:16,21 3:13
  4:1,10,13 14:1
  15:10,22,25 17:1
  19:7 23:16 28:14
  28:18 29:17 34:4
  34:7 35:6,24 36:3
  36:7,15 37:22
  38:18 39:8 41:21
  41:23 42:4 43:7
  43:18 47:10 49:23
  53:24 54:9 58:1
  61:10,22 62:5,6
  62:22 63:21,24
  73:11,23 74:5
  79:12,13 80:15,17
  81:11 116:3
  133:18,24 134:15
  135:5,15,18
rely  130:7
relying  113:8,10
remainder  68:17
remaining  118:14
  30:24 127:12
remains  45:6 62:8
  73:17
remarks  80:23
  105:4

remember  17:17
  45:24
remote  64:19
removable  68:17
remove  21:17
rendered  128:18
repeat  118:14
repeatedly  30:18
  35:4 46:11
replace  14:11
reply  26:20 28:17
  39:22 40:2,19
  66:2 82:20 88:25
  116:11 122:7
report  17:24
  19:17 20:1 40:18
reporter  61:19
  62:16 138:10
represent  50:6
  111:12
representations
  124:24
representative
  9:17 31:25 44:14
  46:4 71:18
representatives
  23:10
representing
  42:15 115:21
  117:4
request  13:18
  36:7,14 47:10
  48:8 73:22 81:2
  85:18 88:15
  122:21
requested  15:23
  15:25 17:2 28:19
  44:21 53:24 63:24
requesting  42:23
  81:22 86:16
  127:22
requests  82:23
  83:10 85:22 90:7

125:12
require  89:11
required  21:23
requirement
  129:25
requirements
  18:10
requires  101:4
  125:3,18
requiring  124:2
reservation  106:2
reserve  111:15
reserved  132:11
residential  3:12
  15:1 134:14
resolution  24:3
  60:8 61:11 62:19
  74:6,19 75:7
  107:23 108:3
  120:8,19
resolve  29:22 30:6
  34:7 35:8,17
  50:25 51:10,12
  68:12 71:3,3
  102:5
resolved  17:25
  20:19 25:4 27:5
  27:10 29:19 30:3
  30:7,17 31:1
  43:22 90:20
  124:11
resolving  30:23
  35:16 75:9 123:25
resources  27:18
  49:12,13 50:1,3,9
  50:10,11 57:25
  128:2
respect  2:12 20:3
  20:16 21:13 25:9
  39:1 44:25 47:11
  54:21 55:25 59:25
  60:1,7 61:15 62:5
  62:6 63:14 73:18

83:10,15,20,20
  84:22 86:18 99:16
  107:2 109:3 110:3
  118:9,16 133:15
respectful  49:25
respectfully  42:23
  50:4 66:10 72:4
  94:6 95:6
respects  20:2 68:5
  76:5 79:5
respond  53:25
  60:1 98:23
responded  82:22
responding  122:5
response  80:21
  81:14 123:9
responsibilities
  122:2
responsibility
  74:12
rest  97:12 99:2
rests  127:21
result  15:21 33:25
  34:1 66:24 74:5
  74:17 77:17 78:6
  98:20,21 131:18
results  93:15
  98:25 99:12
  131:13
retention  2:7
  12:10 133:8
retirees  93:21
  97:8
reverberates
  118:18
reverberations
  120:8
review  75:15
  109:21 114:15,20
reviewed  14:5
  75:11 83:22
revised  15:25
  17:25 18:4 129:13

rewrite 93:18
rewrote 94:1
right 12:6 13:16
  14:14,18 16:20
  17:1,14 18:12
  19:4,7 20:19,20
  21:9,25 22:14,16
  26:4 29:3 30:25
  31:6,11 32:14
  33:2 35:18 37:16
  37:23 41:8,11,14
  45:12 51:5,7
  53:10,11 54:2
  56:8,12 57:19,22
  58:2,9,17 59:10
  59:14 60:4,12,14
  60:19,21 61:4,7
  61:23 62:17 64:2
  64:9 65:5,11 67:7
  70:21 71:8 73:7
  80:13,22 81:3,15
  82:15 86:14 89:4
  89:6 90:11 92:12
  94:24 95:14 97:14
  101:23 102:13
  109:1,10 113:20
  115:8,11,19 116:7
  116:25 120:3
  122:19,22 123:8
  128:22 129:3,7
rights 101:25
  105:23 106:2
  111:15
rise 65:25 100:12
  129:20 132:5,9
risk 14:7 27:23
  42:2 43:21 51:17
  51:19
risks 36:4
riverside 15:3
road 138:23
robbins 20:15

robert 1:22
roglen 6:14 12:24
rooney 8:1 121:4
ropes 8:15 99:8
rosa 4:13 81:10
  135:18
rose 10:19 22:24
rounds 15:19
rule 2:5 72:2
  89:20 91:17,18
  103:10,11 107:1
  127:12 129:11
  131:23 133:6
ruled 52:9 92:9,13
  92:14 100:16
  114:6 116:5
rules 2:6 133:7
ruling 51:23 55:3
  79:11 80:7,24
  81:24 106:25
  110:1 116:5,15
  132:11
rulings 52:4 133:3
  134:3 135:3 136:3
  137:3
running 27:22
ryan 3:17 134:21

s

s 3:7,14 5:21 6:1
  12:1 115:4 134:11
  134:16 137:10
s.d.n.y. 78:23,24
  126:15 128:9,11
salaries 128:17
sale 17:3 47:6,8
  108:24
sanctioning 98:2
santillo 9:1 21:5
sara 7:20 65:23
sarachek 6:16,21
  118:13,13 119:5
  119:11,15,21,25
  120:4,15 121:1

123:3,5,7
satisfaction 120:6
  120:16
satisfied 112:4
satisfy 123:21
satisfying 101:4
save 49:11
savings 72:14
saying 86:17,23
  87:19 90:20
  102:21 103:15,17
  105:4 110:11,24
  110:25
says 39:24 50:5
  55:3 91:6 93:6
  96:16 99:20
  100:22 102:1
  104:22 105:7,21
  115:16
schedule 13:24
  25:15 44:1 46:14
  76:22 115:10
scheduled 2:1
  24:25 25:16 63:13
scheme 96:9
schwartz 9:13
  88:9,10,14,21
  89:6,9 90:8,12
  91:2 92:7,11,20
  94:6,11,19,24
  95:6,9,12,15,17
  95:22,25 97:14,18
  97:25 98:19 99:5
sears 1:7 4:2,5
  9:16 14:12 23:3
  23:19 24:19,19
  25:5,20,21 26:2,7
  26:9,10,22,24
  27:2 30:1 31:4
  32:15,18,23,24
  33:4,5,6 34:14
  36:7,9 37:8,14
  38:24 39:2,3

42:17 44:18,21
  50:6 54:4,8,11
  59:16,18,22 60:12
  60:20,22 62:19,24
  63:8 64:16,17
  65:4,9,17 68:12
  68:16 69:2 73:10
  73:12,15,20 79:24
  98:2,8 118:22,24
  118:25 119:6,7
  135:7,10
sec 5:8 136:15
second 21:13 28:2
  28:9,11 36:12
  41:6 48:18 54:11
  67:9 102:12
  105:21 119:5
  128:13
section 2:4 16:18
  17:20 73:21 83:2
  83:7 84:11 89:11
  92:10 93:3 96:7,7
  96:9,11,14 105:11
  123:13,25 125:17
  127:1,2,19,25
  128:13,15 129:11
  129:12,17,20,22
  129:25 130:6,9,10
  130:10,18 131:1,2
  131:4,11,12,21
  132:6 133:5
sections 89:11
  129:13,14
see 26:20 34:20,21
  50:23 61:3 63:2
  74:4 76:12 79:15
  80:18 90:21 97:20
  108:14 113:1,7,9
  115:12 126:12,15
  128:5
seeing 67:18
seek 16:13 91:7
  123:15 124:17

**seeking** 16:10,11
  79:4 116:3
**seeks** 124:12
**self** 42:13 90:18
**seller** 3:16 134:20
**selling** 79:1
**sense** 27:11,16
  28:2 44:9 46:19
  50:19 56:24 59:4
  64:6 69:6 86:1
  94:5 101:1
**sent** 98:4 117:7,15
**separate** 35:21
  89:14 101:14
  102:18 103:18,19
  104:2 131:3
**separately** 35:3
  64:12 70:22 104:6
  115:4
**september** 25:17
  76:25
**sequence** 30:20
**serious** 126:18
**service** 26:12 48:9
  99:21
**services** 101:5
  128:18
**set** 12:17 19:24
  20:5 21:17 24:14
  24:25 28:16 49:13
  70:24 75:1 83:6
  112:18 121:6
  122:23 128:1
**sets** 84:10,11
**setting** 84:10
**settle** 60:4 80:4
  132:13
**settlement** 2:14
  2:19 13:11 51:8
  72:1,4,11 77:14
  84:14 85:15
  133:16,22

**settling** 60:5
**seven** 74:13 104:4
**sever** 79:24
**seyfarth** 8:8
**share** 66:12
**shareholder** 32:2
  33:5 52:23 53:5
**shareholders**
  24:19 32:18 33:4
  64:17 65:17
**shares** 65:17
**shaw** 8:8
**sheila** 138:3,14
**shepell** 10:2
**sherri** 5:25 138:3
  138:9
**shihai** 126:14
**ship** 102:5 107:10
  107:15 121:9
**shipment** 101:24
  105:8 110:23
**shipped** 107:20
**shippers** 107:10
**shipping** 102:11
**short** 47:3 48:13
  83:12 109:3
**shorten** 13:15,21
  13:24,25 18:1
**shortened** 19:8
**shortening** 2:12
  13:19 133:14
**shorthand** 31:5
**shortly** 13:6 45:7
**shove** 107:5
**shown** 78:21
**shy** 42:5
**side** 34:18 37:16
  57:8 102:3,25
**sides** 27:20 87:4
**signed** 12:14 15:8
**significance** 112:2
**significant** 49:12
  51:18 101:2 112:8

**similar** 31:9,21
  64:4 68:6,18,19
**similarly** 43:2,6
  66:22 126:9
**simple** 92:1
  108:17
**simply** 39:4 43:1
  43:19 44:22 86:17
  114:3 129:3
**single** 25:4,5
  43:22
**sir** 96:6
**situated** 42:9 43:3
  43:7 126:10
**situation** 55:7
  56:2
**situations** 90:12
**six** 48:16,21 74:12
  82:13 91:6
**skrzynski** 10:15
**slate** 76:6
**slated** 57:1
**slightly** 36:25
  46:4
**slip** 45:15,17
**small** 118:17
  120:11
**smith** 5:8 9:8,21
  88:10 136:16
**sold** 15:4 112:10
  130:14
**solutions** 110:21
  111:20 112:6
  138:22
**solve** 37:21 39:5
**solvency** 126:12
  126:20
**somewhat** 64:4
**sonax** 59:25 60:8
  61:24 63:3,24
  74:4
**sonox** 28:13 53:23
  54:24,25 55:5

**soon** 77:20 79:21
  90:21 122:11
**sorry** 88:20 92:8
  96:7,17 102:23
  113:19 115:22
  125:20 128:7
**sort** 36:4 56:13
  60:13 68:24 105:3
  111:11 118:1
**sorting** 46:5
**sought** 15:11 54:4
  62:22 82:25 83:1
  83:3,4 86:3
  109:25
**sound** 52:22 100:4
  100:4
**sounds** 85:12
**southern** 1:2 88:2
**spahr** 2:8 6:9
  12:10,12,25 133:9
**spare** 64:14
**speak** 25:25 80:23
  116:12
**speaking** 84:22
**special** 97:8,16,20
  97:22 98:24,25
  99:3,11 129:23,23
  131:22
**specialized** 28:5
  39:12,24 40:4,11
  41:11 54:21,24
  55:4,23 74:9
**specific** 18:6 29:2
  39:18,19 66:4
  92:16 95:19 106:3
  127:24 130:9
**specifically** 26:5
  35:10 36:19 99:20
  127:24 129:24
**speed** 70:24
**spend** 36:20
**spent** 34:17

spin  65:16
spring  45:18
  46:17 49:17
squarely  46:17
stage  100:4,4
stages  26:12 78:15
stakeholders
  42:19
stand  43:4
stands  37:12
start  26:14,16
  57:10
started  30:12
  31:20 47:15 48:10
  79:20
starting  104:24
state  96:20,21
  124:18
stated  45:15 80:11
  81:6,18 128:10
statement  56:18
  62:3,18 66:7,8
  90:9,22 105:3
  118:8
statements  24:2,3
  54:1,11 110:12
  111:8
states  1:1 47:7
  69:21 70:5 125:23
stating  98:22
station  49:7
status  26:1 43:17
  81:21 105:11,24
  126:2
statute  87:12
  96:23
statutes  97:8
statutory  93:3,13
  95:21 97:25 128:4
stay  4:2,11,13
  22:21 23:16 25:8
  26:6 28:14,18
  29:17 30:5 34:4,7

35:6,24 36:4,7,15
  37:22 38:18 39:8
  41:21,23 42:5
  43:7 44:18 46:12
  47:10 48:19 49:17
  54:7,9 58:3,21,22
  58:22 60:11 61:10
  61:21 62:5,6
  63:21 72:5,9
  73:11,17,24 74:2
  74:21 75:3,5,18
  76:19 77:18 78:17
  79:3,12,14 80:1
  80:15,17 81:2,11
  81:22 82:1 83:14
  135:6,16,19
stayed  14:17 26:8
  56:20
stays  102:4
steed  17:12
steel  127:22
steen  6:2
stem  64:8
steps  27:1 45:8
steven  23:18
stipulation  3:16
  17:20,25 18:19
  19:19,24 21:7
  134:19
stock  53:1
stop  101:23
store  17:16 19:16
story  121:17
stranger  47:25
strategy  69:13
strauss  7:15
street  1:14 6:11
  7:3 9:3
strike  44:23
stripped  38:23
stripping  68:8
strong  70:11

struck  29:13
structure  99:2
subchapter  89:14
subject  74:15 77:5
  96:24
submission  46:18
  47:17 49:25
submissions  53:12
submit  19:9 20:9
  47:2 50:19 80:3
  81:8 82:3 94:6
  95:6 132:12
submitted  12:12
  18:3,7 29:7 56:19
subordinated
  33:25 75:17
subordination
  74:16
subsection  98:1
subsequent  53:1
subsequently
  17:25 118:24
subset  75:7
substantial  32:1,4
substantially  18:4
  31:16,22 126:21
substantive  13:18
substantively
  20:2
subsume  61:22
success  74:16
successful  15:20
sue  54:4
suffering  49:4
sufficient  35:23
sufficiently  79:23
suggest  36:2
  47:24 48:24 109:7
  112:14
suggested  43:9
  45:6
suggesting  72:17
  103:14

suggestion  30:4
  37:19
suggests  25:19
suite  7:10 9:3
  138:24
suited  39:20
summarized
  82:22
summer  45:24
summertime
  45:21
sun  78:24 81:25
  126:13
superior  4:4 23:6
  39:14 40:9 135:9
supplement  15:22
  16:6
supplied  128:23
  129:7
supply  101:5
support  39:13
  41:22 99:15
supported  23:17
  129:11
supporting
  128:22 129:6
supportive  16:3
supports  95:13
supposed  114:22
supreme  31:19
  89:10 92:3
sure  12:2 19:5
  22:19 31:3 41:15
  42:21 49:21 54:18
  60:10 63:25 69:13
  80:6,24 98:16
  105:4 112:25
  114:21
surely  112:9
surprising  39:13
surrounding
  101:6

**[sweet - total]**

sweet  65:1
sympathetic
 93:20
synthesize  82:20

**t**

t  138:1,1
table  36:25 44:17
 102:25
take  17:22 19:13
 24:1 27:21 48:23
 52:3 54:17 55:9
 59:23 71:25 77:19
 98:9 106:1 118:8
 124:13 127:1
taken  13:9 27:1
 39:2 43:8 45:9
 55:18 58:23 87:24
 106:4
takes  118:11
 128:5 129:18
talk  27:15 72:1
 108:11
talked  90:23
talking  31:17
 47:13 52:24 56:23
 59:12 89:2 104:19
 118:15
tape  120:22
target  59:17
task  30:23
tasks  30:24
tax  55:1
teed  108:10 114:9
 117:21
tell  34:13 59:4
telling  39:23
ten  74:18 88:2
tentative  76:22
tentatively  25:16
tenuous  78:8
term  31:6 43:2
 105:18 111:19
 130:6,6,23

termed  24:16
 42:14
terminated  97:11
terms  17:3 56:23
 60:20 93:1 96:11
 109:16 122:8
 126:25 131:11
testimony  46:6,7
 55:9
tests  74:23
thank  13:7 14:23
 17:5,7 19:10
 20:22 22:5 44:11
 53:11,12,15 65:20
 71:7 81:8 82:3
 99:5,6 114:12
 118:3 121:1,3
 122:13 132:15,19
thanks  71:8
theme  64:18,19
theory  32:15
 50:15 68:5 101:2
 103:1,18,20
thing  25:3 41:14
 52:17 92:15
 104:18
things  18:20 26:2
 70:8 93:10 94:14
think  12:4,17,22
 13:23 16:3 24:6
 27:17 28:2,13
 29:10 30:2 33:18
 33:22 34:12,13,14
 34:14,23,24 35:22
 35:24 36:17,23
 37:22 39:9,22
 43:2 45:2,4 46:8
 46:25 47:20 48:7
 49:25 50:9,10
 51:5,22 52:14,15
 52:20 54:23 55:10
 55:14,22 56:8,9
 56:16 57:9,18

58:4,20 59:20,21
 60:4 61:4,9 63:1
 65:14,21 68:4
 69:1,11,19 70:3
 71:17 72:2 76:21
 80:25 84:17 85:18
 86:7,13,22 87:16
 87:21 90:5,6 91:3
 93:14 102:10,16
 104:5,7,18,23
 105:3 106:8,15
 107:14,22 108:9
 108:11,15 110:1
 112:8 114:6
 115:16 117:22
 119:20 121:6,22
third  11:3 33:21
 39:11 44:7 49:10
 54:21 74:13 83:15
thought  18:19
 27:8 47:8 54:7
 65:16 72:16 86:3
 98:15 117:25
thoughtful  76:16
thousands  91:7
 102:3,4 121:25
three  15:2 25:13
 26:3 42:4 47:13
 47:22 63:14 73:13
 74:8 82:23 91:19
 91:20 107:20
 123:17
thrust  102:24
thursday  12:13
 15:18
tie  34:21
tied  122:7
time  13:15,19,25
 15:5 17:20 18:1
 18:10 19:21 26:7
 27:21 30:21 43:9
 43:11,18 44:17
 47:4 48:20,22

49:3,8 53:6 60:2,9
 60:16 62:11 67:18
 69:4 72:2 76:4
 78:11 83:13 90:20
 93:17 96:13,19,22
 102:25 110:5
 111:6 116:8 117:5
 119:1 121:15
 126:20
timely  31:1
times  59:19 64:5
 66:5 94:14 107:20
 120:19 126:13
timetable  45:5,6
 45:15,17
timetables  46:15
timing  125:15,24
 126:7
title  87:24 101:24
 130:13
today  18:9 19:25
 20:5 21:12 23:7
 23:14,21 24:4
 44:24 85:12 86:8
 86:13,23 87:3,20
 88:12 90:3,4
 102:17 103:7,10
 103:11 108:10
 110:1 113:21
 114:2,22 115:5
 116:4,18,18 117:2
 120:24 121:7
 125:2,6,8,9 131:8
today's  22:8 91:13
 132:18
told  88:17 98:11
 104:22 106:16,17
tool  4:16,19
 135:21,25
tools  8:16
tort  62:7
total  14:16

**totally** 51:22
78:10 93:12,25
**touched** 67:12
**trade** 123:11
**trading** 100:9
111:4
**train** 49:6
**trans** 40:21
**transaction** 2:15
2:20 13:12 14:19
15:7,16 19:2 65:4
65:10,12,12,13
86:7,11 87:7
93:11 94:9,13,14
94:25 100:12,19
100:21,24 101:1
112:3,5 124:20,22
124:23 125:4
128:20 129:5
130:2 132:3,8
133:18,24
**transactions**
37:24 38:5,10,22
53:3 64:5 67:24
68:3,4,9,10
121:13
**transcribed** 5:25
**transcriber**
138:10
**transcript** 102:15
106:14 138:4
**transfer** 24:17,22
31:5,7,10,15,22
40:23 48:5 56:3
58:24
**transferor** 56:4
**transferred** 39:3
122:1
**transfers** 76:1
**transform** 3:18
5:23 6:3 15:4
17:12 18:3,25
20:7 21:4,7 98:3

126:22 134:21
137:12
**transform's** 17:21
109:11
**treatise** 125:23
**treatment** 125:19
**trial** 24:25 25:17
27:10 45:8,18
46:17 49:14,20
50:16,20,23 51:1
52:12,21 57:1,16
59:1,2 62:12
63:12,12,13,18
67:12,14 68:13
69:12,14 71:1,1
72:4 74:20 77:1
77:11,20 79:20,21
92:14,24
**trials** 69:25
**tribunal** 39:12
40:4 74:9
**tricky** 70:16
**tried** 109:9
**true** 51:4 104:22
138:4
**trust** 8:9 67:1
70:6
**trustee** 9:16 23:11
31:24 42:25 43:15
44:13 48:4 52:20
57:7,7 71:12,20
71:23 93:12
128:21 132:3
**trustees** 128:6
**try** 46:13 50:18
99:9 108:20
**trying** 42:20
91:11 94:19 95:19
95:23 97:1 98:17
122:16
**tune** 2:8 65:2
133:10

**turn** 20:23 67:2
82:12 111:11
**turned** 27:14 99:3
112:1 124:21
**turning** 31:20
118:11
**turns** 50:24,25
**tweaked** 18:5
**twelve** 37:5 74:21
**two** 15:19 21:11
27:18,20,21,22,25
29:11 33:18 37:1
37:4,12 45:19
67:12,15 69:16,25
72:1 74:6 81:24
84:7 89:11 92:13
93:10 96:10
101:25 103:4
104:24 105:4
110:23 115:8,9
118:11,14 120:18
**type** 81:16 104:18
**types** 28:6 39:18
39:19 75:8,15
78:20 84:12
**typically** 73:2
**typo** 105:9

| u |
| :---: |

**u.c.** 5:8 136:15
**u.s.** 1:13,23 23:7
31:13 38:23 41:4
46:10 47:16,24
48:15,20 50:2,11
50:13 56:11 60:20
64:4 65:13,16,19
68:14,19 73:6
75:24 76:15,16
78:9
**u.s.c.** 4:18,18 5:2
128:15 135:23,24
136:9
**ucc** 47:16 48:10
48:20 83:18 92:22

92:25 96:1,14,18
96:22 100:10
**uh** 56:15 57:4
**ultimate** 62:13
77:16
**ultimately** 25:25
26:25 36:9,10
70:23 72:10 75:23
**umpteen** 120:19
**unaffected** 44:17
**unanswered**
29:14 35:22
**uncertain** 67:14
76:4 120:7
**uncertainties**
51:25
**uncertainty** 34:18
**uncontested** 12:8
**undefined** 106:3
**underlying** 13:25
14:5 67:14 101:2
**understand** 12:12
28:23 45:14 46:3
46:16 53:4 58:14
67:23 71:15 89:25
90:1,4 99:10
100:6 103:12
106:5 109:23
119:15
**understandable**
81:1,16
**understandably**
69:23
**understanding**
103:24 118:22
**understood** 22:10
104:16 117:8
**undervalue** 48:5
**undisputed** 105:7
125:13
**unduly** 76:10,20
**unexpired** 3:2,6
15:1 134:6,9

unfamiliar  46:5
unfolded  16:3
unfortunately
  27:12 59:8 66:17
unidentified
  65:19 72:24
uniform  96:12
  130:24
united  1:1 47:6
  69:20 70:5
universal  72:2
universe  49:2
unliquidated
  73:19
unquestionably
  40:10 41:17
unsecured  7:16
  29:2 37:3 61:25
  62:13 66:9 67:3
  70:7,11 73:18
  74:2 85:10 98:12
unsettled  40:16
  41:3
unspecified  6:10
  9:2
unstayed  62:9
untrue  91:10
urge  46:13
use  31:4 83:11
  92:24 96:22
  111:19 112:21,22
  122:4 130:23
uses  130:6
usually  51:1

v

v  128:6
valuable  66:25
  101:25
value  16:16 40:23
  62:14 130:11,11
variety  40:15
various  38:21
  45:7 73:25 79:9

79:10 82:23,24
vast  52:25
vazquez  10:25
vendor  89:16,18
  89:20 97:16,21
  103:13 110:10
  111:25 113:25
  124:20,25 125:5
  127:14 131:23
vendors  91:25
  92:24 96:4 97:4,5
  101:2,25 107:3,6
  107:10,15 117:11
  117:16 121:25
  123:11
venture  31:21
venues  62:1
veritext  138:22
verizon  99:20
  110:24
versa  35:17
vex  97:18 99:10
vexed  97:19
vice  35:17
view  66:12
views  70:11 97:7
violates  128:4
virtually  30:23
vis  50:24,24
voice  51:20
voluntarily  26:8

w

wages  128:17
wait  47:8 115:12
  117:20 119:5,5
waiting  30:6,16
  43:3
waive  16:8 29:25
  75:14
walk  39:21
wander  11:6
  115:20,20,23,23
  116:2,8,11,22

117:1 118:7
want  12:2 19:5,5
  22:19 27:18,21,23
  31:3 44:9 46:9
  49:8 53:25 57:11
  59:11,25 60:17
  63:25 68:15 69:13
  69:15 78:13 84:3
  85:12 87:4 91:5,5
  99:14 102:1,2,4
  103:12 108:11,13
  111:7 112:1 116:2
  117:2,8,12 119:15
wanted  79:6
  99:22 112:2,24,25
  113:12
wants  13:2 85:24
warrant  82:2
washington  7:4
waste  50:1,2
watching  54:14
way  66:20 68:2
  71:3,3 72:5 76:20
  77:9 92:13 109:24
ways  98:15,16
  118:5
we've  24:16 28:16
  28:19 30:20 36:6
  39:21 52:12 87:22
  87:24 105:1
  120:19
website  39:14
week  44:7 49:14
  49:20
weekend  12:16
weeks  27:12,14
  45:17 52:13 77:21
weigh  40:13
weight  41:25 55:4
weil  10:9 80:9
  82:11 120:5
welcomed  112:24

went  16:21 29:14
  77:11
west  9:3
western  40:1
weyand  8:6 121:3
  121:4,15,18
  122:10,13,17
we're  116:23
whatsoever  111:2
  111:2
wheels  31:20
white  1:15 27:2
  39:7 40:8 49:18
wholly  75:23
william  22:12
  80:14
willing  29:25
willingly  99:23
wilmington  6:12
  8:9
winced  90:8
window  49:6
  131:15
winners  9:9
winters  82:7
  88:10 90:3
withdrawal  93:22
withheld  90:15,16
witnesses  46:4
  49:15,15 108:11
  108:16
wondering  47:1
word  87:10,11
  92:10,16,16,19,19
  92:23 93:3,3 94:3
  95:19,23 97:2
  105:9 130:9,17
words  76:5 86:19
  97:16 106:25
work  12:19,23
  46:14 57:17 93:23
  97:12 109:21

**[working - à]**

| working 122:3 | à |
|---|---|
| works 46:1 | à 50:24 |
| world 92:18 113:9 | |
| 116:16 130:8,16 | |
| worse 56:1,10 | |
| worth 35:24 37:23 | |
| 62:15 66:18 | |
| 121:10 | |
| wrapped 62:24 | |
| writing 121:18 | |
| written 27:2 | |
| wrongdoing | |
| 38:21 39:1 | |

**x**

x 1:4,10 104:22
133:1 134:1 135:1
136:1 137:1

**y**

y 104:22
yeah 33:12 51:18
53:2,9 64:23 65:3
86:21 92:7 98:13
year 77:1
years 25:14 31:1
68:8 91:20
yellow 111:23,25
yesterday 12:18
22:17
york 1:2,15 6:5,5
6:19,19 7:18,18
8:4,4,11,11,18,18
9:4,4,11,11,19,19
10:4,4,12,12,22
10:22 11:4,4
17:16 38:14 56:4
126:16

**z**

z 104:22
zachary 3:17 9:6
134:21
zack 20:24 21:1