Salene R.M. Kraemer, Esquire
NY ID No. 5228580
MAZURKRAEMER BUSINESS LAW
331 Jonquil Place,
Pittsburgh, PA 15228
Phone: (412) 427-7075
salene@mazurkraemer.com
**Counsel to Vir Ventures, Inc. and**
**AMI Ventures, Inc.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: SEARS HOLDING CORPORATION, et al., Debtors. | Bankruptcy No. 18-23538 (RDD) |
| VIR VENTURES, INC. AND AMI VENTURES, INC., Plaintiffs, v. SEARS HOLDING CORPORATION, et. al. Defendants. | Adv. Proc. No. Document No. 1 |

## COMPLAINT PURSUANT TO FED. R. BANKR. P. 7001(1) AND (7) FOR THE RECOVERY OF MONEY FROM THE DEFENDANTS, OR IN THE ALTERNATIVE THE IMPOSITION OF A CONSTRUCTIVE TRUST REGARDING SAME

Plaintiffs **VIR VENTURES, INC.** ("VIR") and **AMI VENTURES, INC.** ("AMI", collectively, the "Plaintiffs" or "Claimants" or "Sellers"), by and through their undersigned counsel, hereby files this complaint (the "Complaint") pursuant to Fed. R. Bankr. P. 7001(1) and (7) for the recovery of money from the Debtors, or in the alternative, the imposition of a constructive trust regarding same.  In support of this Complaint, the Plaintiffs allege as follows:

1

## JURISDICTION AND VENUE:

1.      This Court has jurisdiction over this matter under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), pursuant to 28 U.S.C. §§ 151, 157 (A)(E) (O), and 1334.

2.      This adversary proceeding is commenced pursuant to Rule 7001(1) and (7) of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.").

3.      The statutory predicates for the relief sought herein are Fed. R. Bankr. P. 7001(1) and (7) and Bankruptcy Code §§541 and 105.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises under and in connection with a case under Title 11 which is pending in this District.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O).

## FACTUAL BACKGROUND

6.      On October 15, 2018 (the "Petition Date"), the Sears Holdings Corporation ("Sears"), et al.[1] (collectively the "Defendants" or the "Debtors" or "Sears") filed voluntary cases

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); SHC Licensed Business LLC (3718); SHC Promotions LLC (9626); Sears Brands

2

under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") (Chapter 11 Cases) in the United States Bankruptcy Court for the Southern District of New York (this Honorable "Court").

7.    No trustee has been appointed.

8.    During the pendency of these Chapter 11 Cases, on or about February 19, 2019, in a global asset sale transaction, the Debtors sold 425+ of its stores to Transform Holdco, LLC ("Transform") for the sale price of $5.2B (cash and credit bid, plus assumption of certain seller liabilities, including cure costs with respect to certain Assigned Agreements).    Sears former Chairman and CEO Eddie Lampert bought the company through his hedge fund, ESL Investments, and regained control of these stores.

9.    Liability here could also be imposed on Transform under an alter ego or piercing the corporate veil theory of liability.    Piercing the corporate veil is not a separate cause of action, but instead it is the means for imposing liability in an underlying cause of action.  Plaintiffs reserve the right to add Transform as an additional defendant.

10.    Since substantially all of the Debtors' assets were sold, the Debtors proposed a Chapter 11 Plan that is essentially a liquidating Chapter 11 Plan.  On October 15, 2019, this Honorable Court confirmed the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors Plan (the "Plan", CM/ECF# 5293, filed on October 1, 2019).  See also Order Confirming (the "Confirmation Order", CM/ECF#5370, filed on October 15, 2019).

11.    VIR is a "creditor" in the above-captioned cases within the meaning of the Bankruptcy Code § 101(10) and also a party-in-interest for the purposes of Bankruptcy Code §

---

Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

365.

12.     AMI is a "creditor" in the above- captioned cases within the meaning of the Bankruptcy Code § 101(10) and also a party-in-interest for the purposes of Bankruptcy Code § 365.

*The Proofs of Claim*

13.     AMI and VIR are affiliate companies under the same management and ownership.

14.     Rupesh Sanghavi is the President of each of Movants.  Attached to this Complaint as **EXHIBIT A** (Verification) please find a Verification of Rupesh Sanghavi, President, in Support of this Complaint (the  "Sanghavi Verification").

15.     AMI filed (5) claims (Claim No. 8514, 8540, 8644, 8513, 8556) and VIR filed one (1) claim (Claim No. 8539) (the "Claims") with all Claims totaling an aggregate $790,534.35 which accrued pre-petition.

16.     The Plaintiffs have asserted 503(b)(9) administrative priority for debts arising out of goods purchased on behalf of the Debtors' customers, which were delivered to the Debtors' customers 20 days prior to the Petition Date, but which were never paid for by the Debtors.

| DEBTOR | CLAIMANT | CLAIM NO. | Admin Claim Asserted |
|---|---|---|---|
| Sears Holding Corporation | AMI | 8514 | $108,015.38 |
| Sears Holding Corporation | AMI | 8540 | $161,118.57 |
| Sears Holding Corporation | AMI | 8644 | $159,391.29 |
| Sears Holding Corporation | AMI | 8513 | $92,635.11 |
| Sears Holding Corporation | AMI | 8556 | $83,798.00 |
| | | | **$604,958.35** |
| | | | |
| Sears Holding Corporation | VIR | 8539 | $185,576.00 |
| | | | **$185,576.00** |

| | | TOTAL: | $790,534.35 |
|---|---|---|---|

17.    The Debtors filed a Second Omnibus Claims Objection (Reclassification) (CM/ECF#4776) to claims, including the Plaintiff's Claims, alleging that the claims should be reclassified as general unsecured claims since the goods were not delivered directly to the Debtors.

18.    The Plaintiffs filed a JOINT RESPONSE OF VIR VENTURES, INC. AND AMI VENTURES, INC. IN OPPOSITION TO DEBTORS' SECOND OMNIBUS OBJECTION TO PROOFS OF CLAIMS (RECLASSIFICIATION AS GENERAL UNSECURED CLAIMS)([the "Joint Response", attached hereto as **EXHIBIT B**, CM/ECF# 5056, filed on September 3, 2019), a copy of which is incorporated herein in its entirety.

19.    The hearing on the Debtors' Second Claims Objection has been adjourned to November 20, 2019.

*The Admin Motion*

20.     For post-petition amounts that are owed, the Plaintiffs also filed a JOINT MOTION OF VIR VENTURES, INC. AND AMI VENTURES, INC. FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIMS PURSUANT TO 11 U.S.C. §§503(a), 503( b)(1) & 507(a)  (the "VIR-AMI Admin Motion" CM/ECF # 5242, filed on September 26, 2019) seeking the Allowance and payment of certain post-petition Straddle Payments that are due and owing from the Petition Date through and including February 15, 2019, in the amount of $95,362.30.   The payment is referred to as a "Straddle Payment" since the goods were purchased for customers by the Plaintiffs after the Petition Date but before Transform took over Debtors' operations.

*Parties' History*

21.     AMI and VIR have been long-standing third-party online e-marketplace sellers for Sears, providing goods that were sold to Sears' customers via www.sears.com online marketplace.

22.     AMI first began doing business with Sears on or about January 8, 2010 pursuant to that certain Sears Marketplace Agreement.

23.     Vir Ventures started to sell through Sears starting January 3, 2014.

24.     The Plaintiffs executed online its Sears Marketplace Agreement, which Sears required all of its e-marketplace sellers to sign.  Plaintiffs have an unsigned copy and will attach hereto under seal given the confidentiality provisions contained therein.  ("Sears Agreements") as **EXHIBIT C**.

25.     The Sears Agreements contain a choice of law provision which states that: "This Agreement will be construed and enforced in accordance with the internal laws of the State of Illinois, without regard to its conflict of law principles.".  Sears Agreement, Section F.

6

26.     Through third-party marketplace e-sellers, Sears wanted to expand their product selection for their customers beyond what they carried online and in-store. Sears provided the Plaintiffs with access to Sears' and its affiliate websites as a platform to post merchandise listings and facilitate the sale of Sellers' merchandise to users of the Sears websites.

27.     In turn, Sears would charge Claimants a monthly fee plus a commission on each sale going to Sears' customers, which varied depending upon the type of goods sold.

28.     AMI and VIR are likely one of Sears' top marketplace sellers that provide the largest selection and number of different products for Sears to sell. Together, they provide at least 1 million (1,000,000) unique SKU's representing products available to be purchased by Sears' customers.

29.     AMI and VIR uploads such product data, inventory and price details to the Sears.com portal.

30.     Sears controls the online marketing place and every aspect of selling including listing guidelines, price range of the listed items, sales promotions, shipping time, tracking # update window, collection of payment, etc.

31.     The Plaintiffs have worked with Sears manager to facilitate customer sales Brian Carr since August 15, 2014.

32.     Sears' customer service department addresses customer service issues.

33.     When a customer makes a purchase, Sears secures payment from customers and then sends detailed instructions to Plaintiffs as to which item to ship to customers, along with the shipping address.

34.     No orders are processed unless Sears first receives the payment from the customer.

35.     Plaintiffs ship items using a common carrier like United Parcel Service or Federal

Express or United State Postal Service.   A Tracking ID is generated for each shipment which is a

proof of delivery.

36.     Per the express terms of the Sears Agreement, in respect of shipping:

Seller is responsible for all aspects of shipping, including providing adequate packaging, tagging,
labeling and packing of the Merchandise in compliance with the Seller Specifications and
Applicable Law.
Sears Agreement, II.C., Shipping, p. 3.


With the written consent of Sears, Seller may provide more extensive shipping services, such as
delivery within the home or User premises.
Sears Agreement, C. Shipping, Paragraph 4. Additional Delivery Services; «White Glove»
Deliver, p. 3.

37.     Sears must then release the customer funds to the Plaintiffs within 15 days after

proof of delivery to the customer, minus the applicable Sears commission. Seller Agreement, II.B.,

p. 3.   Sears must process User Orders (as defined in Section II.C.1) and collect all amounts due

from Users for Merchandise ordered from Seller through the Websites.

38.     The Sears Agreements states:

**Within fifteen (15) days thereafter**, Sears will remit such amounts, less any amounts owed
to Sears by Seller, by electronic funds transfer to the bank account identified by Seller in
the Portal. **Seller hereby appoints Sears as an agent of Seller for the sole and express
purpose of receiving payments from Users for Seller's Merchandise sold on the
Websites**. Seller acknowledges that, as between Seller and a User who purchases
Merchandise from Seller, **Sears' receipt of funds from the User is deemed the receipt of
funds by Seller**.

Sears Agreement, Part I, Section B, User Orders and Payment, p. 3.

39.     Sears generates a settlement report every week for the payments to be released for

delivered orders.

40.     This is not a typical creditor-debtor claim matter.   The Plaintiffs purchased the goods on behalf of Sears' customers, delivered them to a common carrier who then shipped directly to the customer.

41.     Sears, as an agent of the Plaintiffs, was contractually obligated to set aside monies to pay sales taxes and to reimburse the Plaintiffs for the goods purchased.

42.     The Sears Agreement states that Sears is an "agent" of the Plaintiffs for the purposes of holding the customer funds.

43.     The Sears Agreement also expressly states:

> Title to and risk of loss of and/or damage to the Requested Merchandise will remain with Seller until delivery to the User. Sears will not have title to, or deemed the legal owner of, any Merchandise at any time under the terms of this Agreement. Seller may not include any marketing, promotional materials, or any other solicitations with the Requested Merchandise shipped to Users.
> Sears Agreement, p. 3, Part II, Section C (Shipping), Paragraph 1.

44.     This Court cannot let Sears retain those customer funds when they duly belong to the Plaintiffs (minus the applicable commission).

45.     Prior to the Petition Date, once a customer ordered an item through the website, in addition to collecting the purchase price, Sears collected sales tax from the customers and then remitted them directly to the taxing authorities or to the Plaintiffs for submission.

46.     For Pennsylvania and Washington, Sears collected taxes and remitted them to the Plaintiffs for submission.

47.     For states like California, Texas, New York, Florida, and New Jersey, Plaintiffs uploaded a tax certificate and Sears remitted them directly to taxing authorities.

48.     The Sear Agreement expressly states:

9

<u>Permits and Licenses; Taxes</u>. Seller will, at its own expense, obtain all permits and licenses required to operate its business in accordance with Applicable Law, and will pay and discharge all applicable taxes and assessments which may be due for selling or offering of its Merchandise for sale on or through the Websites. It is Seller's responsibility to determine the states in which it has an obligation to collect and remit state and local sales and use taxes («Taxes»). Seller will promptly notify Sears of the states for which Sears should collect Taxes by affirmatively selecting the applicable states in the Seller's business account profile in the Portal. **<u>Sears will pay over the Taxes collected from the online purchaser directly to the Seller and Seller will be solely responsible for remitting the tax to the applicable taxing jurisdiction, except in states where Sears, as the marketplace platform provider, is either required by law or elects to remit taxes directly to the state on behalf of selle</u>**r. If a taxing authority requires Sears to pay any of Seller's taxes, Seller will promptly reimburse Sears for the amounts paid. Seller acknowledges and agrees that tax-related data is provided through Sears' third-party service provider(s) («Providers»). While Providers will use reasonable efforts to ensure that the tax data is current and accurate, Seller acknowledges and agrees that Sears and its Providers do not provide tax advice, and that Seller is solely responsible for determining the applicability and accuracy of any tax data. As a condition of receiving the tax data, Seller agrees to fully and forever waive any Liabilities against the Sears Parties and the Provider Parties arising from Seller's use of and reliance on such tax data and further agrees to defend, indemnify and hold the Sears Parties and the Provider Parties harmless from Liabilities arising from such use or reliance.

<u>Sears Agreement, Permits and Licenses; Taxes, B. Merchandise Listings, p. 2</u>.

49.     Sears <u>has not</u> taken any responsibility for remitting any taxes in 2018 in any states on behalf of customers transactions, by either remitting them directly to taxing authorities or to the Plaintiffs.

50.     Once Transform purchased in February of 2019, the 425 Sears stores, the Plaintiffs continued to sell goods to Sears.

51.     After the sale to Transform, the Plaintiffs continued to work with the same individuals on the Sears team, utilized the same Sears online marketplace portal, and essentially did business on exactly the same terms as with Sears.

52.     At all times, the Plaintiffs cooperated with Sears and/or Transform to ensure a seamless transition and business as usual.

53.     On the Petition date and for the several critical months thereafter, the Sears account manager Brian Carr, Manager Product Management, Marketplace, made several verbal and written (in email) misleading representations to the Plaintiffs about the unpaid pre-petition Claims, the unpaid Straddle payment, the sale to Transform, the status of the bankruptcy case and the likely legal outcome.

54.     Plaintiffs trusted Brian Carr.  Brian Carr was the Plaintiffs' main contact with Sears and had been for at least five years.

55.     On the Petition date of October 15, 2018, at 7:10 am, Brian Carr, sent an email to Rupesh Sanghavi expressly stating, "[t]he messages I have received indicated business as usual and payments restarting."

56.     Brian Carr on the same day, sent another email at 9:03 a.m. to Rupesh Sanghavi expressly stating, *inter alia,* in respect of the bankruptcy:

"**We do not anticipate any impact to vendor payment**:  We intend to pay our vendors in the ordinary course for all goods and services provided on or after the filing date.  We are committed to working with our vendors and other contracted services to help maintain inventory levels, ensure timely product delivery and continued contracted services.

Email from Brian Car, Sears Manager Product Management, Marketplace to Rupesh Sanghavi, President AMI and VIR, October 15, 2018.

57.     Brian Carr continued to make several false, negligent, and/or fraudulent statements in emails to the Plaintiffs about the legal status of the bankruptcy case and the claims that the Plaintiff have against the Debtors.    See emails attached hereto as **EXHIBIT D.**

58.     Tuesday, October 16, 2018 at 8:54 a.m. –" I was just informed that payment for orders shipped from Sunday midnight forward will be paid as per the usual terms … without delay. AP has confirmed the payments should arrive 13-15 business days after shipping.  Per the contract --- this is lawfully obligated and cannot be sped up or slowed down and is guaranteed."

59.     The post-petition Straddle payments were never paid.

60.    Tuesday, October 23, 2018, at 10:31 am. " We finally have clarity on the designation of your accounts. MKP sellers are "sellers" not vendors – which allows you to be in a distinct class. I am reaching out early before our phone call to provide the documentation to allow for submitting the PRE-OCTOBER 15 amounts due ahead of other sellers. You should start receiving regular POST OCT 15 payments by next week. ☺" (attaching claims forms).

61.    Contrary to Carr's statements, the Debtors have objected to the Plaintiffs' status as Allowed Claims holders in the Administrative Claim class for the pre-petition Claims.

62.    The Plaintiffs relied on these statements to their detriment, continuing to sell goods to Sears even after the Petition Date. The Plaintiffs still have not been paid for the post-petition Straddle Payments.

63.    Wednesday, January 16, 2019, at 8:18 a.m.- "Rupesh- thought this might brighten your day ☺. … (regarding Lampert winning bankruptcy auction)".

64.    Tuesday, January 22, 2019, at 10:38 a.m.- "RE: Outstanding Remittance Payment-AMI Ventures, Inc. " "Pankaj- Thank you for reaching out- allow me to clarify current position. The January 14 bidding process is complete and Eddie Lampert retains control of Sears as a whole entity going forward. The court must give final approval on or about Feb. 4-8. *At that point .we will official emerge from bankruptcy after a relatively short 3 months*! My understanding is that the bid includes a "lockbox" of funds for debt claims- so everything is working as it should as this moves forward. …. My guess would be that we should hear a close of claims at which point the disbursement date should be made public. As of today, the claims process is still technically open. That should end close to the time of the final sale next month. Let me know if you need additional information. (link to press release)." (emphasis added)

65.    In reality, the Plaintiffs' pre-petition and post-petition claims still remain unpaid even at this juncture.

66.    Plaintiffs relied on these statements to make decision to continue to sell goods to Sears' customers.

67.    Tuesday, February 12, 2019, at 11:05 a.m.- "RE: accounting updates." "Good morning, Rupesh. A quick (good news) update on state of the union and accounts. As of yesterday, it appears we are officially out of Chapter 11! As a result, over 7,500k individual Sears/Kmart bank accounts have been in the process of transferring to the "new" owner and private company. Any holds or delays on processing EFTS should be cleared by Wednesday--- pending amounts should hit your account by then. Let me know if you experience any issues. Also—some

of my sellers are getting increased offers from third- party companies – so a good sign in the claims process—they are paying 81 cents to the dollar and must expecting a 100% payout from Sears."

68.     These statements are simply false.  Sears was not "out of Chapter 11" at that time. Pending amounts never hit the Plaintiffs' bank account.    The Distribution to administrative claimants who opt-in to the consent program are not getting a 100% payout.   Plaintiffs relied on these statements to make decision to continue to sell goods to Sears' customers.

69.     AMI was asked to execute new agreements with Transform and duly did so on May 21, 2019, without legal representation, unaware of its right in bankruptcy to obtain cure payments if an executory contract is assumed and assigned.  See Riders to Sears Agreement, executed by and between Transform and AMI Ventures, Inc. **EXHIBIT E** ("Transform Agreements") [attached hereto under seal due to confidentiality].

70.     In these Chapter 11 Cases, counsel for Transform takes the position that the Sears Marketplace Agreements were not executory and the Debtors had no obligation to assign them to Transform.   Counsel for Transform indicated that the original Sears Agreements have been terminated and new agreements were executed with Transform, thus the Plaintiffs have no right to a cure payment from the Debtors or Transform.

71.     By filing this Complaint, the Plaintiffs seek an order for the recovery of money from the Debtors aggregating $885,896.65 ($95,362.30 + $790,534.35) plus attorneys' fees, or in the alternative, the imposition of a constructive trust regarding same.

72.     Plaintiffs reserve any and all rights to continue assert Allowed Administrative Claim status for the $885,896.65 ($95,362.30 + $790,534.35) that is owed by the Debtors and/or Transform.

## COUNT I-BREACH OF CONTRACT
## (AGAINST SEARS)
## FED. R. BANKR. P. 7001(1) AND (7) AND 11 U.S.C. § § 105(A)

73.     Plaintiffs repeat and make a part hereof every allegation contained in the paragraphs set forth above.

74.     Federal Rule of Bankruptcy Procedure 7001(1) provides that a plaintiff may initiate an adversary proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002.  Fed. R.Bankr. P. 7001(1).

75.     Bankruptcy Code § 105 authorizes this Court to "issue any order . . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

76.     Under Illinois law, there are four elements to a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff.  Gallagher Corp. v. Russ, 309 Ill. App. 3d 192, 199, 741 N.E.2d 605, 611 (Ill. App. 1999).

77.     "In determining damages, it is fundamental that a monetary award should, to the extent possible, put the nonbreaching party in the position he would have been in had the contract been performed." Ollivier v. Alden, 262 Ill. App. 3d 190, 634 N.E.2d 418 (Ill. App. 1994).

78.     The Sears Agreements were duly executed by both parties and are valid and enforceable contracts.

79.     The Plaintiffs duly delivered the unpaid goods in question to the common carriers who then delivered the same to Sears' customers.

80.     Sears breached the Sears Agreements by not timely remitting customer funds to the Plaintiffs, in violation of Sears Agreement I.B., p. 2.

81.     Sears breached the Sears Agreements by collecting customer funds as an agent for Plaintiffs but then using such funds for its own purposes.

82.     Sears <u>has not</u> taken any responsibility for remitting any taxes in 2018 in any states on behalf of customers transactions, by either remitting them directly to taxing authorities or to the Plaintiffs, thus breaching its duty to  pay over the Taxes collected from the online purchaser directly to the Plaintiffs or directly to the state on behalf of Plaintiffs.

83.     Sears breached the Sears Agreements by not timely remitting taxes to the Plaintiffs, in violation of Sears Agreement II.B.III, p. 2.

84.     The Plaintiffs are now experiencing a resultant monetary loss of $790,534.35 for pre-petition unpaid sums and $95,362.30 for post-petition unpaid sums.

WHEREFORE, the Plaintiffs pray for (1) an order for the recovery of money from the Debtors aggregating $885,896.65 ($95,362.30 + $790,534.35) plus attorneys' fees (2), or in the alternative, the imposition of a constructive trust regarding same; or (2) such other and further relief as this Court shall deem just.

**COUNT I-BREACH OF EXPRESS TRUST**
**(AGAINST SEARS)**
**<u>FED. R. BANKR. P. 7001(1) AND (7) AND 11 U.S.C. § § 105(A)</u>**

85.     Plaintiffs repeat and make a part hereof every allegation contained in the paragraphs set forth above.

86.     Federal Rule of Bankruptcy Procedure 7001(1) provides that a plaintiff may initiate an adversary proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002.  Fed. R. Bankr. P. 7001(1).

87.     Bankruptcy Code § 105 authorizes this Court to "issue any order . . . . that is

necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

88.    Per the terms of the  Agreement, an express trust existed between Sears and the Plaintiffs.

89.    In Illinois, an express trust is typically created by an settlor transferring legal title to property to an individual or company (the "trustee") subject to the duties and obligations set forth in a written agreement (the "trust agreement") for the benefit of another (the "beneficiary").

90.    The usual elements of a trust are: (i) Intent to create a trust; (ii)  Specific trust "res" (trust property); (iii) Designation of the parties (settlor, trustee and beneficiary); and (iv) a valid trust purpose; and (v) Intent.

91.    Per the terms of the Sears Agreement, Sears was appointed as an agent of or trustee for the Plaintiffs for the sole and express purpose of receiving payments (the trust res) from customer/Users for Plaintiffs' Merchandise sold on the Websites.

92.    The parties are designated as such in the Sears Agreement as follows:

> i.    **Seller hereby appoints Sears as an agent of Seller for the sole and express purpose of receiving payments from Users for Seller's Merchandise sold on the Websites**. As between Plaintiff Sellers and a User who purchases Merchandise from Plaintiffs, **Sears' receipt of funds from the User is deemed the receipt of funds by Seller**.
> Sears Agreement, Part I, Section B, User Orders and Payment, p. 3.

> ii.    **Title to and risk of loss of and/or damage to the Requested Merchandise will remain with Seller until delivery to the User**. **Sears will not have title to, or deemed the legal owner of, any Merchandise at any time under the terms of this Agreement.** Seller may not include any marketing, promotional materials, or any other solicitations with the Requested Merchandise shipped to Users.
>  Sears Agreement, p. 3, Part II, Section C (Shipping), Paragraph 1.

93.    Sears breached its duty of loyalty as a trustee of such funds by not remitting customer funds to the Plaintiffs, in violation of Sears Agreement I.B., p. 2, and converting such

funds to its own to be used for its own purposes.

94.     As an agent of the Plaintiffs, Sears breached its duty of loyalty as a trustee of such funds by failing to remit taxes to the Plaintiffs and converting such funds to its own to be used for its own purposes, which is in violation of Sears Agreement, Permits and Licenses; Taxes, B. Merchandise Listings, p. 2.

95.     The Plaintiffs are now experiencing a resultant monetary loss of $790,534.35 for pre-petition unpaid sums and $95,362.30 for post-petition unpaid sums.

WHEREFORE, the Plaintiffs pray for (1) an order for the recovery of money from the Debtors aggregating $885,896.65 ($95,362.30 + $790,534.35) plus attorneys' fees (2), or in the alternative, the imposition of a constructive trust regarding same; or (2) such other and further relief as this Court shall deem just.

### COUNT III-
### UNJUST ENRICHMENT (IMPLIED CONTRACT)
### (AGAINST SEARS)

96.     Plaintiffs repeat and make a part hereof every allegation contained in the paragraphs set forth above.

97.     Plaintiffs present this Count in the alternative to Count I- Breach of Contract.

98.     To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 160, 545 N.E.2d 672, 679 ((Ill.) 1989).

99.     Unjust enrichment is not an independent cause of action. Martis v. Grinnell Mutual Reinsurance Co., 905 N.E.2d 920, 928 (Ill. App. 2009) (citing Mulligan v. QVC, Inc., 888 N.E.2d 1190, 1200 ((Ill.) 1989)). Rather, "it is a condition that may be brought about by unlawful or

improper conduct as defined by law, such as fraud, duress, or undue influence" (internal quotation

marks omitted) (Alliance Acceptance Co. v. Yale Insurance Agency, Inc., 648 N.E.2d 971, 977

(Ill. App.) 1995)), or, alternatively, it may be based on contracts which are implied in law (Perez

v. Citicorp Mortgage, Inc., 703 N.E.2d 518, 526 ((Ill. App. 1998)).

100.    Sears collected funds from its customers for goods which the Plaintiffs purchased,

but Sears never remitted these funds, including sales tax, to the Plaintiffs.

101.    Sears unjustly retained these funds to the Plaintiffs' detriment.  The profit margin

pursuant to the Sales Agreement is slim.  The non-remittance of these funds, including sales tax,

significantly impacts the Plaintiffs' bottom line.

102.    Brian Carr's actions were improper, unduly influencing the Plaintiffs to continue

to purchase goods for Sears's customers through Sears and/or Transform.

103.    In February of 2019, Plaintiffs were owed such significant pre-petition sums, they

felt that they were under commercial duress to cooperate with Sears and Transform, to the

Plaintiffs' detriment, since both pre-petition and post-petition sums are still outstanding.

WHEREFORE, the Plaintiffs pray for (1) an order for the recovery of money from the

Debtors aggregating $885,896.65 ($95,362.30 + $790,534.35) plus attorneys' fees (2), or in the

alternative, the imposition of a constructive trust regarding same; or (2) such other and further

relief as this Court shall deem just.

### COUNT IV-
### TO OBTAIN THE IMPOSITION OF A CONSTRUCTIVE TRUST PURSUANT FED. R.
### BANKR. P. 7001(7) AND 11 U.S.C. § § 105(A)
### (AGAINST SEARS)

104.    Plaintiffs repeat and make a part hereof every allegation contained in the paragraphs

set forth above.

105.    Federal Rule of Bankruptcy Procedure 7001(7) provides that a plaintiff may initiate

an adversary proceeding to (7) a proceeding to obtain an injunction or other equitable relief, except

when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief.   Fed. R.Bankr.

P. 7001(7).

106.    Bankruptcy Code § 105 authorizes this Court to "issue any order . . . . that is

necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

107.    Section 541(d) provides that "[p]roperty in which the debtor holds, as of the

commencement of the case, only legal title and not an equitable interest . . . becomes property of

the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of

any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

108.    "[W]hile the outer boundaries of the bankruptcy estate may be uncertain, 'Congress

plainly excluded property of others held by the debtor in trust at the time of the filing of the

petition.'" In re Howard's Appliance Corp., 874 F.2d 88, 93 (2d Cir. 1989) (quoting United States

v. Whiting Pools, Inc., 462 U.S. 198, 205 n.10, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1983)).

109.    When property in the possession of a debtor is alleged to be held in trust by the

debtor for a nondebtor, and therefore not estate property under section 541(a)(1) or (2), the burden

rests upon the entity seeking to exclude the property from the estate to establish the existence of

the claimed fiduciary relationship. That entity must prove title and identify the trust fund or

property.

110.    A constructive trust is the formula through which the conscience of equity finds

expression. When property has been acquired in such circumstances that the holder of the legal

title may not in good conscience retain the beneficial interest equity converts him into a trustee.

111.    The right to impose a constructive trust is determined by state law.

112.     "A constructive trust is an equitable remedy imposed against one who, by some

form of wrongdoing such as actual or constructive fraud, breach of a fiduciary duty, duress, coercion, or mistake, has been unjustly enriched." <u>Schultz v. Schultz</u>, 297 Ill. App. 3d 102, 106-07 (1998).

113.    "[W]here by reason of friendship, agency, business association and experience, a high degree of trust is reposed, a confidential relationship may be said to exist; and the mere existence of such a connection prohibits the one trusted from seeking or obtaining any selfish benefit for himself [or herself] during the course of the relationship and affords a basis for fastening a constructive trust upon the property." <u>Steinmetz v. Kern</u>, 375 Ill. 616, 620 ((Ill.) 1941).

114.    "To establish a constructive trust based on the existence of a confidential or fiduciary relationship, the party seeking the constructive trust must prove such a relationship by clear and convincing evidence. <u>Martin v. Heinold Commodities, Inc.</u>, 163 Ill. 2d 33, 46 (1994).

115.    The following factors must be taken into consideration: (1) the degree of kinship; (2) the disparity in age, health, mental condition, education, and business experience between the parties; and (3) the extent to which the allegedly servient party entrusted the handling of [his or] her business and financial affairs to the 'dominant' party and placed trust and confidence in him [or her]. <u>Ransom v. A.B. Dick Co.</u>, 289 Ill. App. 3d 663, 673 (1997)." (Emphasis added.) <u>Kaiser v. Fleming</u>, 315 Ill. App. 3d 921, 926 (2000).

116.    To sustain a finding of a fiduciary relationship, a special finding of confidence and trust on the one side and domination and influence on the other must be proved." <u>Maley v. Burns</u>, 6 Ill. 2d 11, 17 (1955). The undue influence "must be directly connected with the execution of the instrument, operate at the time it was made, and be directed toward procuring the will of a particular party or parties." <u>In re Estate of DiMatteo</u>, 2013 IL App (1st) 122948, ¶ 62. "To sustain a finding that a fiduciary relation exists[,] special confidence and trust on one effect and meaning, it will not

20

be set aside." <u>McCrillis v. Utterback</u>, 397 Ill. 550, 554 (1947); see also Campbell v. Freeman, 296 Ill. 536, 539 (1921).  Where a confidential relationship exists, there is a presumption that the challenged transaction resulted from undue influence, thus, shifting the burden to the other party to establish the fairness of the transaction. <u>In re Estate of Kaminski</u>, 200 Ill. App. 3d 309, 313 (1990).

117.    Sears cannot in good conscience retain the pre-petition and post-petition customer funds that should have been remitted to the Plaintiffs.

118.    The aforementioned Brian Carr statements were wrong and misleading and tantamount to actual or constructive fraud, breach of fiduciary duty, duress, coercion or mistake, resulting in Sears becoming unjustly enriched.

119.    Basic agency law dictates that Sears had a fiduciary duty to segregate the customer funds for ultimate remittance to the Plaintiffs.   Instead, Sears commingled the funds with its estate and used such cash as it wished, thus breaching its fiduciary duties.

120.    Sears, a major retail powerhouse, exerted power and dominion over Plaintiffs as well as the other e-market place sellers.

121.    There was a long standing relationship between the Plaintiffs and Sears and a high degree of trust between Rupesh Sanghavi and Pankaj Rathi and Sears manager Brian Carr, akin to a confidential relationship.

122.    Certain of the statements made by Carr to Plaintiffs were mistaken if not outright false.

123.    There was a marked disparity in business experience between the Plaintiffs, who were not represented by counsel, and Sears.

124.    The Plaintiffs trusted Carr.

21

125.    The Plaintiffs were under commercial duress after the Petition Date because of the large unpaid pre-petition sums.

126.    These compelling facts afford a basis for fastening a constructive trust upon the property in question and fairness dictates the same.

WHEREFORE, the Plaintiffs pray for (1) an order for the recovery of money from the Debtors aggregating $885,896.65 ($95,362.30 + $790,534.35) plus attorneys' fees (2), or in the alternative, the imposition of a constructive trust regarding same; or (2) such other and further relief as this Court shall deem just.


## COUNT V-CONVERSION
## FED. R. BANKR. P. 7001(1) AND (7) AND 11 U.S.C. § § 105(A)
## (AGAINST SEARS)

127.    Plaintiffs repeat and make a part hereof every allegation contained in the paragraphs set forth above.

128.    Federal Rule of Bankruptcy Procedure 7001(1) provides that a plaintiff may initiate an adversary proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under §554(b) or §725 of the Code, Rule 2017, or Rule 6002.  Fed. R.Bankr. P. 7001(1).

129.    Bankruptcy Code § 105 authorizes this Court to "issue any order . . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

130.    Under Illinois law, to prove conversion, plaintiff is required to demonstrate the following by a preponderance of the evidence: (1) defendant's unauthorized and wrongful assumption of control, dominion, or ownership over plaintiff's personal property; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property, absolutely and

unconditionally; and (4) plaintiff's demand for possession of the property. Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc., 346 Ill. App. 3d 996, 1003 (2004).

131.    The victim of a conversion may bring a damage action, Dan B. Dobbs, Law of Remedies: Damages-Equity-Restitution § 5.13(1), at 545 (2d ed. 1993)("Dobbs"), or under appropriate circumstances, seek equitable relief, such as the imposition of a constructive trust. Id. § 5.18, at 592; see Fur & Wool Trading Co. v. George I. Fox, Inc., 245 N.Y. 215, 156 N.E. 670, 671 (N.Y. 1927)(a thief may be treated as a trustee of the proceeds of the stolen property); Provisional Government of French Republic v. Cabot, 53 N.Y.S.2d 293, 294 (N.Y. Sup. Ct.)("[e]ven a thief may be treated as a constructive trustee of the proceeds of his theft"), aff'd, 269 A.D. 745, 55 N.Y.S.2d 121 (N.Y. App. Div. 1945).

132.    Sears exerted wrongful control, dominion and ownership over customers' funds that should have been remitted to Plaintiffs.

133.    The Sears Agreements expressly states that the customer funds are the right of the Plaintiffs.

134.    Plaintiffs performed under the Sears Agreements and they have an immediate, absolute, unconditional, right to possession of the customer funds.

135.    The Plaintiffs have made several demands pre- and post-Petition for the remittance of these customer funds, yet Sears fails to remit the same.

136.    Thus, the Plaintiffs are a victim of Sears' conversion of such funds and should be compensated accordingly.

WHEREFORE, the Plaintiffs pray for (1) an order for the recovery of money from the Debtors aggregating $885,896.65 ($95,362.30 + $790,534.35) plus attorneys' fees (2), or in the

alternative, the imposition of a constructive trust regarding same; or (2) such other and further relief as this Court shall deem just.

## COUNT VI: FRAUDULENT OR NEGIGLIENT MISREPRESENTATION

## (AGAINST SEARS)

137.    Plaintiffs repeat and make a part hereof every allegation contained in the paragraphs set forth above.

138.    In Illinois, the elements of fraudulent misrepresentation are: (1) a false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act or refrain from acting; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from the plaintiff's reliance on the statement. Ringgold Capital IV, LLC v. Finley, 2013 IL App (1st) 121702, ¶ 37; Enterprise Recovery Systems, Inc. v. Salmeron, 401 Ill. App. 3d 65, 72 (2010).

139.    Negligent misrepresentation has essentially the same elements as fraudulent misrepresentation, except that the defendant need not know that the statement is false. Doe v. Dilling, 371 Ill. App. 3d 151, 180 (2006).

140.    Illinois imposes heightened specificity requirements for pleading fraud. Aasonn, LLC v. Delaney, 2011 IL App. (2d) 101125, ¶ 27.

141.    Brian Carr's statements to Plaintiffs were false, mistaken, and/or negligent.

142.    Brian Carr had the intent to induce the Plaintiffs  to continue to do business with Sears despite the bankruptcy.

143.    Plaintiffs trusted Brian Carr and justifiably relied on his numerous statements.

144.    Plaintiffs have suffered significant monetary damages as a result of his

24

misrepresentations.

WHEREFORE, the Plaintiffs pray for (1) an order for the recovery of money from the Debtors aggregating $885,896.65 ($95,362.30 + $790,534.35), plus attorneys' fees (2), or in the alternative, the imposition of a constructive trust regarding same; or (2) such other and further relief as this Court shall deem just.

Dated: November 12, 2019

Respectfully submitted,
**MAZURKRAEMER BUSINESS LAW**

By: */s/ Salene R.M. Kraemer*

Salene R.M. Kraemer, Esquire
NY ID No. 5228580
331 Jonquil Place,
Pittsburgh, PA 15228
Phone: (412) 427-7075
salene@mazurkraemer.com
Counsel to Plaintiffs Vir Ventures, Inc. and
AMI Ventures, Inc.

**EXHIBIT A –**
Verification of Rupesh Sanghavi, President, in Support of this Complaint

**EXHIBIT B –**
JOINT RESPONSE OF VIR VENTURES, INC. AND AMI VENTURES, INC. IN OPPOSITION TO DEBTORS' SECOND OMNIBUS OBJECTION TO  PROOFS OF CLAIMS (RECLASSIFICIATION AS GENERAL UNSECURED CLAIMS)([the "Joint Response", CM/ECF# 5056, filed on September 3, 2019)

**EXHIBIT C-**
Sears Agreements- Template of Online E-Marketplace Seller Agreement executed by and between Plaintiffs and Sears (FILED UNDER SEAL)

**EXHIBIT D-**
Emails to and from Brian Carr to Plaintiff's representatives (FILED UNDER SEAL)

**EXHIBIT E –**
See Riders to Sears Agreement, executed by and between Transform and AMI Ventures, Inc. ("Transform Agreements") (FILED UNDER SEAL)