Hearing Date and Time: November 20, 2019 at 10:00 a.m. (prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
In re                                          :
                                               :        Chapter 11
SEARS HOLDINGS CORPORATION, et al.,            :
                                               :        Case No. 18-23538 (RDD)
                                               :
         Debtors.¹                             :        (Jointly Administered)
                                               :
-----------------------------------------------------------------x
```

## FOURTH OMNIBUS OBJECTION OF DEBTORS TO
## MOTIONS FOR RELIEF FROM STAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, LLC (None); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection to the motions seeking relief from the automatic stay filed by Abel Santiago (ECF No. 4640) (the "**Santiago Motion**"), Wedy Antoine (ECF No. 4207) (the "**Antoine Motion**"), and Delia Torres Carrillo (ECF No. 4550) (the "**Carrillo Motion**") (collectively, the "**Stay Relief Motions**" and all of the movants, the "**Movants**"), and respectfully represent as follows:

### Preliminary Statement

1.      A movant seeking relief from the automatic stay must show cause warranting such relief. *See* 11 U.S.C. § 362(d)(1). If the movant fails to satisfy this burden, then "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Here, Movants have failed to satisfy their burden to establish cause to lift the automatic stay.

2.      Movants seek to proceed with their respective prepetition actions (collectively, the "**Actions**"). The Stay Relief Motions are premised on the purported availability of third-party insurance or other coverage for liability for Movants' claims and related defense costs. As the Debtors have explained to Movants, however, no such coverage is available with respect to the Actions. If the automatic stay is lifted, the Debtors will be forced to incur all administrative and defense costs associated with these claims and lawsuits. Moreover, Movants are only three of the tens of thousands of purported creditors asserting general unsecured claims against the Debtors. It would be premature, inefficient, and prejudicial to all of the Debtors' administrative, priority, and other general unsecured creditors to expend estate resources on any

2

of Movants' claims at this time. Accordingly, and for the reasons set forth below, the Stay Relief

Motions should be denied.

<b><u>Background</u></b>

3.     Beginning on October 15, 2018 and continuing thereafter, each of the

Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United

States Code (the "**Bankruptcy Code**").

4.     On October 24, 2018, the United States Trustee for Region 2 appointed an

official committee of unsecured creditors. No trustee or examiner has been appointed in these

chapter 11 cases.

5.     The Debtors' chapter 11 cases are being jointly administered for procedural

purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6.     On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving*

*the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of*

*the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances,*

*(III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in*

*Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the

Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**").

The Sale Transaction closed on February 11, 2019.

7.     On March 1, 2019, the Court entered the *Order Approving Procedures for*

*Modification of the Automatic Stay Under Certain Circumstances* (ECF No. 2720) (the "**Stay**

**Procedures Order**"). The Stay Procedures Order approved procedures for the Debtors to review

requests to lift the automatic stay to proceed with prepetition actions with recovery limited to

available insurance proceeds (the "**Stay Procedures**"). Stay Procedures Order ¶ 2(a). The Stay

Procedures provide that a party seeking to lift the automatic stay submit a form inquiry that was

3

annexed as Exhibit 1 to the Stay Order (an "**Inquiry**"). *Id.* ¶ 2(a). The Debtors are afforded 45 calendar days to review and respond to an Inquiry and parties may file a motion for relief from the automatic stay if the Debtors do not respond to an Inquiry after the expiration of the 45-day period. *Id.* ¶ 2(e).

8.    On October 15, 2019, the Bankruptcy Court entered the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors and (II) Granting Related Relief* (ECF No. 5370).

### Jurisdiction

9.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Actions Subject to Stay

A.    **The Santiago Action**

10.    On February 23, 2014, Mr. Santiago commenced an action in the Supreme Court of the State of New York, Bronx County against Debtor Kmart Corporation ("**Kmart**"), with the case caption *Abel Santiago v. Kmart Corporation et al.*, Index No. 20823/2014 (the "**Santiago Action**"), seeking damages arising out of alleged personal injuries sustained on December 10, 2013 in a Kmart store as a result of alleged employee negligence.

11.    Mr. Santiago filed the Santiago Motion (ECF No. 4640) on July 30, 2019, seeking relief from the automatic stay to "allow [the Santiago Action] to proceed in its original venue." Santiago Motion ¶ 15. Mr. Santiago filed a proof of claim asserting an unliquidated claim against Kmart. *See* Proof of Claim No. 19276.

4

### B.    The Antoine Action

12.    On June 1, 2018, Mr. Antoine filed a complaint in the United States District Court for the Eastern District of Pennsylvania against Debtor Sears, Roebuck and Co. ("**Sears Roebuck**") and Debtor Sears Holdings Corporation ("**Sears Holdings**"), with the case caption *Wedy Antoine v. Sears Roebuck & Co. et al.*, Case No. 2:18-cv-02308-GAM (the "**Antoine Action**"), seeking damages based upon allegations of discrimination and harassment arising from Sears Roebuck's termination of Mr. Antoine on February 23, 2017. *See* Antoine Motion ¶ 4. Mr. Antoine was employed by Sears from July 1, 2013 until his termination on February 23, 2017. *See* Exhibit A to the Antoine Motion, ¶ 18.

13.    On June 12, 2019, Mr. Antoine filed the Antoine Motion (ECF No. 4207) seeking relief from the automatic stay to "allow Plaintiff, Wedy Antoine to proceed to the extent of the insurance coverage available." Antoine Motion ¶ 16. Mr. Antoine filed two proofs of claim against Sears Roebuck relating to the claims asserted in the Antoine Motion, both of which assert unliquidated claims. *See* Proofs of Claim Nos. 6176 and 6293.

### C.    The Carrillo Action

14.    On April 1, 2019, Ms. Carrillo commenced an action in the Bayamon Superior Court of the Commonwealth of Puerto Rico (the "**Puerto Rico Court**") against Debtor Kmart Operations, LLC ("**Kmart Operations**"), styled as *Delia Torres Carrillo v. Kmart Operations, LLC et al.*, Case No. GB2019CV00355 (the "**Carrillo Action**"), seeking damages arising from an alleged slip and fall in a Kmart store on August 7, 2018.

15.    Ms. Carrillo filed the Carrillo Motion (ECF No. 4550) on July 1, 2019, seeking relief from the automatic stay to proceed with the Carrillo Action in the Puerto Rico Court.

5

*See* Carrillo Motion ¶ 7.  Ms. Carrillo filed a proof of claim asserting a $150,000.00 claim against

Kmart Operations.  *See* Proof of Claim No. 13578.

### The Debtors' Insurance Coverage

16.     The Debtors maintained various insurance policies in their history over the

prepetition period.  Among them were both general liability and umbrella policies that potentially

could have applied in the Movants' Actions.  Each of the Debtors' general liability policies had a

$5 million aggregate limit for each annual period beginning on August 1 and ending on August 1

the following year.  To date, paid losses under the Debtors' general liability policies have exceeded

the $5 million limit for the periods covering the Santiago and Antoine Actions—*i.e.*, from

(a) August 1, 2013 to August 1, 2014, and (b) August 1, 2016 to August 1, 2017.  Accordingly,

where a Movant's Action falls within the applicable period where coverage is exhausted, coverage

is not available under the respective general liability and umbrella policies.  In these instances, the

insurer has no duty to defend the Debtors or to pay for the Debtors' losses.  Copies of the notices of

exhaustion evidencing the foregoing are attached hereto as **Exhibit A** (2013 – 2014) and

**Exhibit B** (2016 – 2017), respectively

17.     With respect to the Carrillo Action, the Debtors are not able to provide an

exhaustion letter for the relevant coverage period (Aug. 1, 2018 – Jan 1, 2019), but have provided in

**Exhibit C** excerpts from the applicable general liability policy demonstrating that for the

relevant coverage period, the policy includes a $5,000,000 deductible.  This amount represents a

cost that would be borne by the Debtors' estates before any available insurance proceeds could be

provided to the movant in connection with the Carrillo Action.

18.     The following table summarizes the Actions and the applicable notices of

exhaustion or policy information demonstrating lack of coverage:

6

| Cause of Action | Date of Incident | Claim No. | Asserted Claim | Applicable Dates of Insurance Policy | Applicable Letter of Exhaustion or Policy Information |
|---|---|---|---|---|---|
| Santiago Action | 12/10/2013 | 19276 | Unliquidated | 2013-2014 | Exhibit A |
| Antoine Action | 2/23/2017 | 6176, 6293 | Unliquidated | 2016-2017 | Exhibit B |
| Carrillo Action | 8/7/2018 | 13578 | Unliquidated | 2018-2019 | Exhibit C |

19.    Accordingly, the Debtors are without coverage to defend or satisfy claims arising out of the applicable Movants' Actions.

## Argument

### A.    Governing Legal Standards

20.    The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986).  The stay is "designed to give the debtor time to organize its affairs—which includes protection from having to defend claims brought against the estate . . . ." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).  One of the primary forms of protection that the stay provides is preventing a debtor from being forced to litigate multiple claims in multiple forums.  *See In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983).

21.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that upon a request of a party in interest and after notice and a hearing, the Court shall grant relief from the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  "Cause" is not defined, and the decision whether to modify the stay is left to the discretion of the bankruptcy court.  *In re Marketxt Holdings Corp.*, 428 B.R. 579, 584 (S.D.N.Y. 2010).  In the Second Circuit, courts weigh twelve factors, known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted.  *See Sonnax Indus., Inc. v. Tri-Component prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280,

WEIL:\97090844\7\73217.0004

1286 (2d Cir. 1990).[2] Not all of the factors will be relevant in a given case, and the Court may disregard irrelevant factors. *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). Additionally, courts need not assign equal weight to each factor, and have discretion is weighing the factors against one another. *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

22.    Movants bear the initial burden to show cause for lifting the automatic stay. *Sonnax*, 907 F.2d at 1285. "The burden on the movant seeking relief from the automatic stay to prosecute an unsecured claim is heavy," as "[t]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *3 (Bankr. S.D.N.Y. Feb. 28, 2018) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

23.    However, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990); *In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *5–6 (S.D.N.Y. Dec. 18, 2018).

---

[2] The *Sonnax* factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with bankruptcy case; (3) whether the other proceeding involves the debtor as fiduciary; (4) whether a specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether the debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*

24.     Here, none of the Movants have satisfied the burden of establishing "cause" under section 362(d)(1), and as a result, the Stay Relief Motions should be denied.

**B.     The Fifth _Sonnax_ Factor – Debtors' Insurance Coverage Applicable to the Actions is Exhausted or Unavailable**

25.     Two of the Stay Relief Motions are expressly conditioned on the availability of insurance coverage against liability for a Movant's claims or other assumption of litigation and judgment costs (_i.e._, the fifth _Sonnax_ factor).  _See, e.g._, Antoine Mot. ¶ 11 (stating that, should the stay be lifted, movant "will limit his monetary recovery to the limits of coverage provided for under any and all applicable insurance policies afforded to Defendants"); Santiago Mot. ¶ 13; ("Creditor/Plaintiff Abel Santiago's claim seeks proceeds from Debtor/Defendant K Mart Corporation's insurance policy or self-insurance reserves that cover premises liability").  The third Stay Relief Motion, the Carrillo Motion, does not mention seeking recovery against an applicable insurance policy, nor does it reference any of the _Sonnax_ factors as grounds for granting relief from the automatic stay.

26.     As discussed above, the Debtors have determined that applicable insurance is exhausted or unavailable for the each of the Stay Relief Motions.  As a result, there is little support for Movants' application of the _Sonnax_ factors, including—most obviously—the fifth factor, which considers whether the Debtors' insurer has assumed full defense responsibility.  If the automatic stay were to be lifted with respect to the Movants' Actions for which no insurance is available, the Debtors would be forced to directly incur the costs of all legal fees and expenses in connection with defending the claims asserted in the Actions, or otherwise risk default and potentially larger damages claims.  As additional administrative expense claims, those defense costs are "unquestionably a factor to be given serious consideration" in the cause inquiry.  _In re Terry_, 12 B.R. 578, 582 (Bankr. E.D. Wis. 1981).

27.     The Debtors can identify no third parties that will absorb the full costs of litigation or potential judgment(s) in Movants' favor, if any.   Therefore, the fifth—and most relevant—*Sonnax* factor weighs against granting the Stay Relief Motions.

## C.     Additional *Sonnax* Factors Weigh Against Lifting the Automatic Stay

28.     The first *Sonnax* factor—whether relief would result in a partial or complete resolution of the issues—does not weigh in favor of lifting the stay in these circumstances.   As the Second Circuit has previously held, lifting the stay merely for this purpose is not necessarily a guarantee of finality or resolution.   *See, e.g.*, *E. Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 171 (2d Cir. 1998) (creditor filing multiple lawsuits against debtors spent the "better part of three years in a fruitless effort" to obtain agreement or judgment for coverage from asserted third party).   Lingering issues would necessitate Debtor involvement and be a further drain on estate assets.

29.     Furthermore, courts in this District have ruled that satisfaction of the first *Sonnax* factor is insufficient when complete resolution of a matter would be at a substantial cost, or may take a long time.   *See In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *7 (S.D.N.Y. Dec. 18, 2018) (affirming a bankruptcy court decision denying relief from the stay, and finding that while modification of the automatic stay may well resolve the matter, it would do so at a substantial cost, and would be subject to a bankruptcy plan of distribution); *In re SunEdison, Inc.*, 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) (denying relief from the stay, and finding that "[t]he one factor weighing in favor of granting the *Motion* is that it will completely resolve the issues between the Debtors and Vivint (Factor # 1). But even then, final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan.").

30.     The second *Sonnax* factor—whether there is a lack of connection or interference with the bankruptcy estate—does not weigh in favor of lifting the stay.  Where there is a lack of insurance, or even a dispute over the availability of insurance, the Debtors would inevitably be involved in such discussions, defense of actions, or, at the very least, monitoring of the cases, interfering with the administration of their estates. The automatic stay is meant to shield debtors from creditor harassment and from a multitude of litigation in a variety of forums at a time when the Debtors' personnel should be focused on the chapter 11 cases.

31.     The fourth *Sonnax* factor, whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, does not support lifting the stay.  The Actions here do not present specialized issues that require a specialized tribunal.  The state courts are not required to be uniquely equipped in order to deal with the straightforward factual issues in the underlying disputes.  Moreover, for those Movants' Actions are that are in their early stages, the state courts have had little opportunity to analyze and understand the facts and legal issues of the cases to the extent that would make them "specialized".  Accordingly, the fourth *Sonnax* factor does not support granting relief in these circumstances.

32.     The seventh *Sonnax* factor, which considers whether litigation in another forum would prejudice the interests of other creditors, similarly weighs against granting the Stay Relief Motions.  Lifting the stay where there is no insurance coverage would result in the Debtors incurring unnecessary administrative costs to litigate the Movants' Actions before recoveries to general unsecured creditors become available to them.  Should the Lift Stay Motions be granted, given the scale of the Debtors' prepetition business, an increase in filings of motions to lift the automatic stay is likely to occur.  Simply negotiating and responding to such motions by itself creates administrative costs that consume estate assets that would otherwise be available for

11

unsecured creditors.  This result would be particularly impactful at this time when the Debtors are nearing the final stages of their chapter 11 plan proposal process, and where administrative costs will have a meaningful impact on creditor recoveries.  Absent "extraordinary circumstances" the Movants should be treated in the same manner and on the same timeline as other unsecured creditors.  *See Leibowitz*, 147 B.R. at 345.

33.    The tenth *Sonnax* factor, whether relief would serve the interests of judicial economy and expeditious and economical resolution of litigation, also does not weigh in favor of lifting the automatic stay.  The Debtors are party to numerous prepetition actions.  If the Court were to lift the stay with respect to the Movants' Actions, the Debtors and the Court would continue to be inundated with similar requests for stay relief.  Indeed, dozens of motions lifting the automatic stay have already been filed in these chapter 11 cases and, in addition, the Debtors are assessing multiple Inquiries being submitted to the Debtors under the Stay Procedures.

34.    The eleventh *Sonnax* factor, whether the parties are ready for trial in the other proceedings, also weighs against lifting the automatic stay in certain circumstances.  The Santiago Action, for example, is still in the discovery phase, and would require additional expenses to be borne by the Debtors prior to proceeding to trial.  Accordingly, this Movants' Action is not 'ready for trial' as contemplated by the eleventh *Sonnax* factor.

35.    The twelfth *Sonnax* factor, which weighs the impact of the stay on the parties and the balance of the harms, does not support lifting the automatic stay.  Movants might argue, for example, that the claims are small compared to the Debtors' overall obligations.  As explained above, however, the Debtors are party to numerous lawsuits.  Indeed, this response addresses only a handful of the stay relief motions filed against the Debtors in these cases, demonstrating only a small portion of the volume of actions pending.  Taken together, such

WEIL:\97090844\7\73217.0004

lawsuits constitute a meaningful unsecured creditor constituency that the Debtors have an obligation to maximize value for as a whole. Although creditor recoveries are yet to be determined, the administrative costs expended on defending prepetition actions have a disproportionate negative impact on any constituency receiving less than full recovery. At this time, lifting the automatic stay would not expedite any potential recovery on account of these unsecured claims nor would it help to identify recovery amounts.

### Conclusion

36.    For the foregoing reasons, Movants have failed to satisfy their burden to establish cause to lift the automatic stay. Accordingly, the Stay Relief Motions should be denied.

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that the Court deny the Stay Relief Motions.

Dated: November 13, 2019
       New York, New York

            /s/ Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

**<u>Exhibit A</u>**

**Exhaustion Letter (2013-2014)**



ACE North American
Claims
P.O. Box 5113
Scranton, PA 18505
USA

818-428-3763 *tel*

keri.lefferts@acegroup.com
www.acegroup.com

**Keri Lefferts**
*Claims Director*

August 21, 2014

## <u>VIA CERTIFIED MAIL & EMAIL</u>

Mr. David Halffield
Vice President – Risk Management
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179

|       |                |                                            |
|-------|----------------|--------------------------------------------|
| Re:   | Policy #:      | HDOG27022327                               |
|       | Policy Period: | 8/1/13 to 8/1/14                           |
|       | Insurer:       | ACE American Insurance Company ("ACE")     |

Dear Mr. Halffield:

ACE American Insurance Company ("ACE") insured Sears Holding Corp. under policy # HDOG27022327, for the period of 8-1-13 to 8-1-14. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|----------------|---------------------|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights,



duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1.   **Insuring Agreement**

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)   The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the  COMBINED POLICY AGGREGATE endorsement. The endorsement states:

**Section III – LIMITS OF INSURANCE**

2.   The General Aggregate Limit is the most we will pay for the sum of:

    a.   Medical expenses under Coverage C.

    b.   Damages under Coverage A, and

    c.   Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.



ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

If you have any questions or would like to discuss, please feel free to contact me at (818) 428-3763.

Sincerely,

*Keri Lefferts*
Keri Lefferts

cc:  AON:      Tim Routhieaux, Tim.Routhieaux@aon.com

            Carol Murphy, Carol.Murphy@aon.com

     ACE:      Ruth Ahlman, Ruth.Ahlman@acegroup.com

## Exhibit B

**Exhaustion Letter (2016-2017)**

Will Elkner                                    O  +213.612.5365
Pacific Region                               F  +818.428.3588
555 S. Flowers Street, 5th Floor, Los        will.elkner@chubb.com
Angeles, CA 90017
USA

July 24, 2017

## <u>VIA CERTIFIED MAIL & EMAIL</u>

Robin C. Fanning
Managing Litigation Counsel
Risk Management Department
Sears Holdings Management Corporation
3333 Beverly Road
Hoffman Estates, IL 60179



| | | |
|---|---|---|
| Re: | Policy #: | HDO G27853717 |
| | Policy Period: | 08/01/2016 -08/01/2017 |
| | Insurer: | ACE American Insurance Company ("ACE") |

Dear Ms. Fanning:

Chubb North American Claims ("Chubb") is now responsible for handling claims previously handled by ACE American Insurance Company ("ACE"). ACE insured Sears Holding Corp. under policy # HDOG27853717, for the period of 8-1-16 to 08/01/2017. The policy was written with a Combined General Aggregate Limit of $5 million. It has been determined that paid losses falling within this Aggregate are in excess of the $5 million limit.

ACE writes this letter to inform you that with the exhaustion of the Combined General Aggregate limit, no coverage exists under this policy. Any additional loss in this policy period falls outside the scope of coverage granted under this policy. ACE has no obligation to pay for any loss within this policy period in excess of the Combined Aggregate Limit. We hope the references below will more fully illustrate ACE's position.

The Declarations of the above cited policy states:

In return for the payment of the premium indicated above, we agree with you to provide the following coverage(s) at the limits shown, subject to all the terms and conditions of this policy.

| Coverage Form: | Limits of Insurance |
|---|---|
| COMMERCIAL GENERAL LIABILITY | |
| General Aggregate Limit (other than Products/Completed/Operations) | $5,000,000 |
| Products/Completed/Operations Aggregate Limit | $5,000,000 |

The Insuring Agreement within the COMMERCIAL GENERAL LIABILITY COVERAGE FORM states that there is no duty to defend or indemnify an Insured once the limits have been paid in settlement or judgment of claims. With the payment of losses in excess of $5 million, there is no longer a duty for ACE to provide coverage under this policy.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**Section I – COVERAGES**

1. **Insuring Agreement**

   a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

Additionally, the policy contains the COMBINED POLICY AGGREGATE endorsement. The endorsement states:

   **Section III – LIMITS OF INSURANCE**

   2.    The General Aggregate Limit is the most we will pay for the sum of:

   a.    Medical expenses under Coverage C.

   b.    Damages under Coverage A, and

   c.    Damages under Coverage B

With the payment of losses in excess of the Combined General Aggregate Limit, the policy is exhausted and Coverage is no longer available to you under this policy.

Should you have questions, please contact this writer. The above recitation of ACE's position regarding coverage is neither expected nor intended to be a waiver of ACE's right to assert any other rights or defenses it may have under the Policy, legally, equitably or otherwise, and ACE shall not be estopped from asserting said rights.

The language of the policies quoted herein is provided for ease of reference only and is not intended to change, alter or amend the Policy in any way.

ACE expressly reserves its rights and defenses at law, in equity and under the Policy at issue. ACE reserves its right to assert new, additional or different coverage defenses should new, additional or different information and/or documents be received that warrant such action. ACE reserves its right to supplement this letter. ACE also reserves its right to assert additional terms and conditions of the Policy at issue to its current coverage determination should new, additional or different information and/or documents warrant such action.

Rule 9.19 of the Rules and Regulations of the Illinois Department of Insurance requires that our company advise you that, if you wish to take this matter up with the Illinois Insurance Department, it maintains a Public Services Division to investigate complaints at 100 West Randolph, Chicago, IL, 60601 and at 320 West Washington Street, Springfield, IL 62767.

If you have any questions or would like to discuss, please feel free to contact me at 213.612.5365.

Sincerely,

ACE American Insurance Company

2

Will Elkner
Senior Claims Specialist
.

cc:    AON:        Carol Murphy, Carol.Murphy@aon.com

        Sears:      Laurence Jenchel, Laurence.Jenchel@searshc.com
                     David Halffield, David.Halffield@searshc.com

        Chubb :     Christine Kloss
                     John Edmonds
                     Neal Bhatnagar
                     Steve Naylor
                     Roland Banini

**<u>Exhibit C</u>**

**Relevant Pages from 2018-2019 Policy**

# CHUBB®

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

# Commercial General Liability Declarations

**POLICY NUMBER:** HDO G71097614          **EXPIRING POLICY NUMBER:** HDO G27868988

**RENEWAL**

## ITEM 0NE

**Named Insured:** Sears Holdings Corporation

**Address:**  3333 Beverly Road
Risk Management Dept E-3262B
Hoffman Estates IL 60179

**Producer Number:** 174016

**Producer Name:**  AON RISK SERVICES CENTRAL INC

**Producer Address:**  200 EAST RANDOLPH ST 13TH FL
CHICAGO IL 60601

**Form of Business:**     [X] Corporation          [ ] Limited Liability Company

[ ] Other  _

**Named Insured's business:**  Retail Trade

**Policy Period:**  Policy covers from 08/01/2018 to 01/01/2019 12:01 am standard time at the named insured's address stated above.

**Audit Period:  Annual, unless otherwise stated:**     [ ] Semi-Annual [ ] Quarterly [ ] _
**Total Advance Premium (including surcharges):** $124,886.00
**Refer to Surcharge Endorsement for surcharge amounts and rates. (Does Not Apply in Puerto Rico)**

# CHUBB®

**Commercial General Liability Declarations**

ACE American Insurance Company
436 Walnut Street
Philadelphia PA

**POLICY NUMBER:** HDO G71097614

| COVERAGES AND LIMITS OF INSURANCE | | | |
|---|---|---|---|
| **EACH OCCURRENCE LIMIT** | $ | 5,000,000 | |
| **DAMAGE TO PREMISES RENTED TO YOU LIMIT** | $ | 5,000,000 | Any one premises |
| **MEDICAL EXPENSE LIMIT** | $ | Excluded | Any one person |
| **PERSONAL & ADVERTISING INJURY LIMIT** | $ | 5,000,000 | Any one person or organization |
| **GENERAL AGGREGATE LIMIT** | | $ | 5,000,000 |
| **PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT** | | $ | 5,000,000 |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

| RETROACTIVE DATE (CLAIMS MADE POLICIES ONLY) |
|---|
| THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW. RETROACTIVE DATE: _____ (ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES) |

| SCHEDULE OF LOCATIONS | |
|---|---|
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| | |

| LOCATION NUMBER | COVERAGE | CLASS CODE/ DESCRIPTION |
|---|---|---|
| All | All | 52050/Retail Trade |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT INDEMNITY - ONLY REIMBURSEMENT**

| Named Insured Sears Holdings Corporation | | | Endorsement Number 78 |
|---|---|---|---|
| Policy Symbol HDO | Policy Number G71097614 | Policy Period 08/01/2018 TO 01/01/2019 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) ACE American Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

## I)  DEDUCTIBLE AMOUNT

1) Indemnity:      $5,000,000

2) The Deductible Amount applies separately to:

(a) The sum of:

(i)  damages per "occurrence" under Coverage A; and

(ii)  medical expenses per accident under Coverage C.

(b) Damages sustained by any one person or organization under Coverage B.

## II)  ADDITIONAL PROVISIONS

1) "We" will pay all sums that "we" become legally obligated to pay up to the Limits of Insurance under this policy.

2) "You" must reimburse us up to the Deductible Amount for any amounts we have paid under this policy.

3) The Deductible Amount will apply as shown in Section I of this endorsement regardless of the number of claimants, Insureds, claims made or "suits" brought, or persons or organizations making claims or bringing "suits".

4) If "you" fail to reimburse "us" for any amount due under this endorsement, "you" will be in default of "your" obligations to "us", and "we" may take any steps "we" deem necessary to enforce our rights against "you", including but not limited to canceling this policy, if permitted by law.

5) If "we" recover any payment "we" make under this policy from anyone liable for damages the amount "we" recover will first be applied to any payments "we" made excess of the Deductible Amount and to "our" expenses in  obtaining the recovery. The remainder of the recovery, if any, will reduce the amount that is reimbursable by   "you".

## III) NO OTHER CHANGES

All other terms of this policy, including those with respect to:

(a) Our right to defend any "insured" against a "suit" asking for damages to which this insurance applies, and

                          ©Chubb. 2016. All rights reserved.

**REIMBURSEMENT OF DEDUCTIBLE ENDORSEMENT INDEMNITY - ONLY REIMBURSEMENT**

(b)  Limits of Insurance, and

(c)  Your duties in the event of an "occurrence," claim, "suit" or loss

remain unchanged.

©Chubb. 2016. All rights reserved.