**MORRISON & FOERSTER LLP**
Jennifer L. Marines
Benjamin W. Butterfield
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
jmarines@mofo.com
bbutterfield@mofo.com

*Counsel to Icon Health & Fitness, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                            :
                                                                 :     **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,[1]  :
                                                                 :     **Case No. 18-23538 (RDD)**
                                                                 :
              Debtors.                                       :     **(Jointly Administered)**
---------------------------------------------------------------x

**LIMITED STATEMENT OF ICON HEALTH & FITNESS, INC.
TO DEBTORS' TENTH OMNIBUS OBJECTION TO PROOFS OF
CLAIM (TO RECLASSIFY CERTAIN CLAIMS)**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR-Rover De Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

ny-1800822

**TO THE HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE:**

Icon Health & Fitness, Inc. ("Icon"), by its undersigned counsel, hereby submits this limited statement (the "Limited Statement") to the *Debtors' Tenth Omnibus Objection to Proofs of Claim (To Reclassify Certain Claims)* (the "Omnibus Objection")[2] [Docket No. 5237] dated as of September 26, 2019. In support of this Limited Statement, Icon respectfully states as follows:

### Background

1. On March 22, 2019, Icon filed proofs of claims against the Debtors in the aggregate amount of $10,258,878.08 (the "Icon Claims") on account of unpaid invoices for goods that were sold in the ordinary course of business and delivered into the physical possession of the Debtors within the 20 day period prior to the Petition Date. Because the term "receipt" as used in section 503(b)(9) of the Bankruptcy Code means physical possession by the Debtors, Icon believes that all of the Icon Claims are entitled to priority status. The Debtors have not objected to the Icon Claims, or the claims of many other similarly situated vendors; however, Icon is filing this protective statement because any determination by the Court regarding this Omnibus Objection will impact the priority status of the Icon Claim.[3]

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Omnibus Objection.

[3] Under the Omnibus Objection, the Debtors objected to 97 of approximately 2,500 asserted 503(b)(9) claims against the Debtors. The claims that are the subject of the Omnibus Objection average $300,000 in amount, with more than 90 percent under $1 million in amount. Given the anticipated 503(b)(9) recoveries in these cases, the cost of responding to the Omnibus Objection may outweigh the benefit for many of these holders. However, the outcome of this Omnibus Objection will no doubt have a very meaningful impact on Icon and other holders of more substantial 503(b)(9) claims. Icon did not receive notice of the Omnibus Objection and believes other similarly situated holders of substantial 503(b)(9) claims likewise did not receive notice. Nonetheless, the Omnibus Objection raises an important legal issue and Icon believes that all impacted parties should have received notice and an opportunity to be heard.

**Limited Statement**

2. The priority protections under section 503(b)(9) are triggered by a debtor's physical receipt of goods. In addition to the "plain meaning" of the statute and persuasive case law arguments made by other vendors,[4] the explicit statutory rights of vendors under the UCC and CISG also support the conclusion that "receipt" for the purposes of section 503(b)(9) of the Code means physical receipt by the debtor.

3. Specifically, both the UCC[5] and the CISG,[6] which govern conduct between buyers and sellers outside of bankruptcy—and often by reference or implication inside of bankruptcy—permit a seller of goods to stop a shipment of goods to an insolvent (real or perceived) buyer, unless the buyer is able to provide adequate assurance of payment for those goods. Notably, the United States District Court for the Southern District of New York held in *In re National Sugar Refining Company* that this right survives the filing of a chapter 11 petition—*i.e.*, notwithstanding the automatic stay, a vendor may recall goods so long as the debtor is not in physical receipt of them.[7]

---

[4] Icon incorporates the responses filed to the Omnibus Objection by other similarly situated vendors as if such responses were fully set forth herein. Icon reserves the right to raise additional arguments in response to the Omnibus Objection or any objection to the Icon Claim on any grounds, and to amend, modify and/or supplement this Limited Statement.

[5] *See* U.C.C. § 2-702(1) ("Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this Article (Section 2-705)."); U.C.C. § 2-705(1) ("The seller may stop delivery of goods in the possession of a carrier . . . when he discovers the buyer to be insolvent.").

[6] *See* Convention on Contracts for the International Sale of Goods, Art. 71 ("If the seller has already dispatched the goods before [the buyer's insolvency becomes] evident, he may prevent the handing over of the goods to the buyer even though the buyer holds a document which entitles him to obtain them.").

[7] *See, e.g.*, *In re Nat'l Sugar Ref. Co.*, 27 B.R. 565, 572 (S.D.N.Y. 1983) ("We are of the opinion, however, that [the vendor] was not required under Code § 362(a) to seek relief from the stay prior to exercising its right of stoppage."); *see also Cargill, Inc. v. Trico Steel Co. LLC* (*In re Trico Steel Co. LLC*), 282 B.R. 318, 325 (Bankr. D. Del. 2002), *affirmed by J.P. Morgan Chase Bank v. Cargill Inc.* (*In re Trico Steel Co. LLC*), 302 B.R. 489 (D. Del. 2003) (holding that a vendor's exercise of its stoppage rights was appropriate even though exercised postpetition).

4. The Debtors' suggestion that a vendor's section 503(b)(9) protections should be tied to a point in time before the Debtors' physical possession of goods dilutes the protections and purpose of section 503(b)(9). From the point of FOB shipment until the time of physical possession, a vendor is protected against an insolvent buyer under the stoppage rights afforded it under the UCC and CISG, regardless of whether or not a bankruptcy filing has occurred. For 503(b)(9) priority protections to be triggered at the point of shipment would render those protections redundant.

5. It is at the point when physical possession by an insolvent customer occurs—whether in or out of bankruptcy—that a vendor loses its right to self-help under non-bankruptcy law.[8] It is also at the point of physical possession that an all-asset lien of a secured lender will attach to the goods, making a vendor's right under section 546(c) to demand reclamation largely meaningless. Thus, it is at the point of physical possession—when a vendor's non-Bankruptcy remedies are exhausted—that a vendor most requires assurance of payment under the Bankruptcy Code to induce performance.

6. The Debtors' argument that a vendor makes its credit decision at the point of FOB shipment is therefore incorrect, or at least incomplete. A vendor's decision to initiate the shipment of goods to an insolvent customer is informed both by the customer's creditworthiness and also by the vendor's explicit right to recall those goods at any time before physical delivery. A vendor's decision to permit physical delivery of those goods is informed by the customer's creditworthiness at the time of delivery and also by the priority status afforded upon physical delivery under section 503(b)(9) of the Bankruptcy Code.

---

[8] The right to stop delivery of goods is cut off by "receipt of the goods by the buyer." U.C.C. § 2-705(2)(b). The UCC defines "receipt" of goods as taking physical possession of them. U.C.C. 2-103(1)(c).

7. While the Debtors believe it would be absurd for a vendor who ships 10 days before the petition date to receive an unsecured claim for goods delivered 15 days after the petition date, the reality is that such vendor could have recalled those goods at any time prior to physical delivery—in which case, the vendor could have negotiated assurance of payment with the debtor in possession.[9] And, it does not seem absurd that a vendor who ships goods 30 days before the petition date—when a restructuring does not seem imminent—should receive a priority claims for goods that vendor allowed to be delivered (*i.e.*, did not stop under the UCC or CISG) 5 days prior to the petition date, when the potential for a bankruptcy becomes significantly more evident.

8. The Debtors are not incorrect that two vendors can ship the same day and, due to differences in means of transportation, may receive different priority based on when their goods are physically received by a debtor. But again, both vendors are protected by self-help stoppage rights until the point of physical possession—they are equally responsible for monitoring customer credit risk and implementing non-bankruptcy protections when the need arises, including through postpetition discussions with the debtor-in-possession to release goods.

9. Finally, defining receipt as physical possession best aligns with the underlying purpose of section 503(b)(9), which is to encourage vendors to continue to permit delivery of essential goods that are necessary to keep a distressed company afloat until it can enter chapter 11 to pursue an orderly restructuring or sale.

---

[9] Icon agrees with this Court's ruling that "the mere fact of delivery post-petition . . . is insufficient" to give rise to administrative expense status. As observed by Debtors' counsel on its bankruptcy practice blog, debtors in possession regularly seek and are granted bankruptcy court authority to offer administrative expenses status to critical vendors to induce postpetition delivery of goods ordered prepetition. *See* Weil Bankruptcy Blog, *A Spoonful of Sugar Helps the [UCC] Remedy Go Down: Recognition of Stoppage Rights in the Early Years of the Bankruptcy Code*, available at https://business-finance-restructuring.weil.com/automatic-stay/a-spoonful-of-sugar-helps-the-ucc-remedy-go-down-recognition-of-stoppage-rights-in-the-early-years-of-the-bankruptcy-code/ ("The practice of entering a first day order assuring vendors that payments for goods delivered postpetition will be treated as administrative expenses is consistent with the principles of *National Sugar*.").

| | |
|---|---|
| Dated: November 13, 2019<br>New York, New York | Respectfully submitted,<br><br>**MORRISON & FOERSTER LLP**<br><br>By: /s/ Jennifer L. Marines<br>Jennifer L. Marines<br>Benjamin W. Butterfield<br>250 West 55th Street<br>New York, New York 10019-9601<br>Telephone:  (212) 468-8000<br>Facsimile:  (212) 468-7900<br>Email: jmarines@mofo.com<br>           bbutterfield@mofo.com<br><br>*Counsel to Icon Health & Fitness, Inc.* |