DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200
David H. Wander, Esq. (dhw@dhclegal.com)
Alexander R. Tiktin, Esq. (art@dhclegal.com)
*Attorneys for HK Sino-Thai Trading Company Ltd.*

**Hearing Date and Time:**
November 20, 2019 at 10:00 am

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                    Chapter 11

SEARS HOLDING CORPORATION, *et al*.,                      Case No. 18-23538 (RDD)

        Debtor.                                            (Jointly Administered)
-------------------------------------------------------------X

### RESPONSE OF HK SINO-THAI TRADING COMPANY LTD IN OPPOSITION TO DEBTORS' TENTH OMNIBUS OBJECTION TO PROOFS OF CLAIM (TO RECLASSIFY CLAIMS)

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

      HK Sino-Thai Trading Company Ltd. ("Sino-Thai Trading"), by its attorneys, submits this response in opposition to the Debtors' Tenth Omnibus Objection to Proofs of Claim (To Reclassify Claims) [Doc. 5237] (the "Objection")

### PRELIMINARY STATEMENT

      1.    In determining the date goods are "received" by the Debtors for purposes of §503(b)(9) claims, the Court should follow the seminal decision by the Third Circuit Court of Appeals in *In re World Imports*, 862 F.3d 338, 346 (3d Cir. 2017) which held that "receipt as used in 11 U.S.C. § 503(b)(9) requires physical possession by the buyer or his agent," and deny the Objection. Strong support for *World Imports* is found in a decision in this District, *In re National Sugar Refining Co.*, 27 B.R. 565 (S.D.N.Y. 1983) which held that the passage of title

does not affect a seller's right of stoppage in transit. Because Sino-Thai Trading could stop its goods in transit at any time before they were off-loaded after arriving in the United States, the goods could only have been "received" by the Debtors after that date.

2. While administrative claims of this administratively insolvent estate might be reduced by $30 million if the Court were to adopt the Debtors position that they "received" goods from foreign vendors at the port of origin, their position is unsupported by the facts or law.

## BACKGROUND

3. On October 15, 2018 (the "Petition Date"), Sears Holdings Corporation and several of its affiliates, including Kmart Corporation and Sears, Roebuck and Co. (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court. The Debtors have remained in possession of their property and managing their business as debtors-in-possession.

4. Sino-Thai Trading is located in China and it supplied apparel goods to the Debtors. See accompanying *Declaration of Zhaoyuan Yang* (the "Yang Declaration") at ¶2. These goods were manufactured in China and shipped by common carrier, FOB China, to the United States. *Id*. It took approximately 20-35 days for the goods to arrive in the United States, depending on the destination port. *Id.* at *¶3*. Upon information and belief, after the goods were unloaded, they were sent to a Sears or Kmart distribution center. *Id.* Until its goods were unloaded, Sino-Thai Trading could stop its goods in transit at any time. *Id. at ¶4*.

5. Sino-Thai Trading filed Claim No. 1060 against Sears Holding Corporation for goods believed to have been received by the Debtors within 20-days of the Petition Date, in the

amount of $318,718.62,[1] as an administrative claim under § 503(b)(9) of the Bankruptcy Code. *See accompanying Declaration of David H. Wander, Esq.* ("Wander Declaration") at **Exhibit A**.

6.    Sino-Thai Trading considers the date of receipt to be the date the goods were unloaded in the United States or, shortly thereafter, when the goods were delivered to a Sears distribution center or warehouse, and not the date the goods were delivered to a common carrier at the port of origin.[2] *Yang Declaration ¶4*.

## ARGUMENT

7.    Under § 503(b)(9), "there shall be allowed Administrative expenses … including … *the value of any goods **received** by the debtor within 20 days* before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of the debtors business." 11 U.S.C. § 503(b)(9) (emphasis added).

8.    Because the Bankruptcy Code does not define the term "received," *see* 11 U.S.C. § 101, courts have routinely looked to the Uniform Commercial Code (the "UCC") for interpreting "receipt," including matters involving reclamation rights. *See e.g., Montello Oil Corp. v. Martin Motor Oil Inc.* (*In re Martin Motor Oil, Inc.*) 740 F.2d 220, 223-26 (3d Cir. 1984) (holding that "receipt" under 11 U.S.C. § 546(c) has the same meaning as "receipt" in the U.C.C.); *In re Momenta, Inc.*, 455 B.R. 353, 359 (Bankr. D.N.H. 2011) (holding "the term 'received' in § 546(c) is the equivalent of 'received' in the UCC, and the term 'received' in § 503(b)(9) shall be interpreted identically.").

---

[1] After further review, Sino-Thai Trading believes that the amount of its § 503(b)(9) claim should be $180,147.16 based upon the invoices included in Claim No. 1060 that were for goods, that were, upon information and belief, received by the Debtors during the 20 day § 503(b)(9) period. *Yang Declaration ¶7*.

[2] The Objection provides no information about the dates the Debtors contend they received Sino-Thai Trading's goods. Because the Debtors have sole possession and control of documents that should show the exact dates Sino-Thai Trading's goods were delivered to the port of origin, as well as the dates those goods were unloaded in the United States, limited discovery should be afforded to Sino-Thai Trading on these factual issues.

671952v.1

9. Courts addressing the issue at bar have found that "receipt" requires possession and that "possession … occurs when the seller can no longer stop delivery and is left only with the remedy of reclamation." *In re ADI Liquidation, Inc.,* 572 B.R. 543, 548 (Bankr. D. Del. 2017); *see In re World Imports, Ltd.,* 862 F.3d at 346 ("receipt as used in 11 U.S.C. § 503(b)(9) requires physical possession by the buyer or his agent."); *In re O.W. Bunker Holdings N. Am. Inc.,* No. 14-51720, 2019 at WL 4025315 *3 (Bankr. D. Conn. Aug 26, 2019); *Ningbo Chenglu Paper Prod. Mfg. Co. v. Momenta, Inc.,* No. 11-CV 479-SM, 2012 WL 3765171, at *6 (D.N.H. Aug. 29, 2012) ("[T]he phrase 'received by the debtor' as used in Section 503(b)(9) means: possessed by the debtor….").

10. The Debtors, however, rely on the lower courts overturned position in *World Imports* to argue that the term "received" should be interpreted under the definitions used by the United Nations Convention on Contracts for the International Sale of Goods ("CISG") and, accordingly, the term "received" should be the date an import vendor delivers goods to the point of origin. *Objection,* ¶¶24-30. The Debtors position should be rejected.

11. There is no issue that "the fundamental purpose of § 503(b)(9) is to encourage vendors to extend credit to debtors and to continue doing business with the debtors during the ultra-critical twenty (20) day period leading up to a potential chapter 11 filing." *Objection,* ¶15 (citations omitted). The Debtors' position, if accepted by this Court, would undermine the purpose of the statute. Under the Debtor's position, foreign vendors would be making credit-risk decisions further out in time rather than closer to the date of a bankruptcy filing. Not only is the Debtors' position counter-intuitive, the Debtors' argument that a vendor makes its credit decision at the point of FOB shipment is unsupported by anything in the record.[3]

---

[3] Sino-Thai Trading supports and restates ¶¶ 2-9 of the Limited Statement of Icon Health & Fitness, Inc. to Debtors' Tenth Omnibus Objection to Proofs of Claim (to Reclassify Certain Claims). Doc. 6014.

12. Moreover, the proposition that a vendor's right to a claim under § 503(b)(9) is triggered at a point in time <u>prior</u> to the Debtors' actual physical possession of the goods contradicts the purpose of the rights offered under the UCC. From the time of FOB shipment until the time of actual physical possession, a vendor is protected against an insolvent buyer under the right of stoppage in transit (UCC § 2-705), regardless of whether the buyer has filed for bankruptcy protection. *In re Nat'l Sugar Ref. Co.*, 27 B.R. 565, 572 (S.D.N.Y. 1983) ("We are of the opinion, however, that [the vendor] was not required under Code § 362(a) to seek relief from the stay prior to exercising its right of stoppage."); *see also Cargill, Inc. v. Trico Steel Co. LLC* (*In re Trico Steel Co. LLC*), 282 B.R. 318, 325 (Bankr. D. Del. 2002), *affirmed by J.P. Morgan Chase Bank v. Cargill Inc.* (*In re Trico Steel Co. LLC*), 302 B.R. 489 (D. Del. 2003) (holding that a vendor's exercise of its stoppage rights was appropriate even though exercised postpetition). If § 503(b)(9) protections were triggered prior to actual physical possession, the right of stoppage in transit would be redundant and unnecessary.

13. It is at the point when physical possession by an insolvent customer occurs—whether in or out of bankruptcy—that a vendor loses its right to stop goods in transit under non-bankruptcy law.[4] It is also at the point of physical possession that an all-asset lien of a secured lender will attach to the goods, making a vendor's right under section 546(c) to demand reclamation largely meaningless. Thus, it is at the point of physical possession—when a vendor no longer has the legal right to stop goods in transit—that a vendor most requires assurance of payment under § 503(b)(9) to induce performance by the Debtors.

14. Apparently, the Debtors agreed with Sino-Thai Trading's position when this case was filed. Specifically, one of the first-day motions by the Debtors was the Motion for Debtors

---

[4] The right to stop delivery of goods is cut off by "receipt of the goods by the buyer." U.C.C. § 2-705(2)(b). The UCC defines "receipt" of goods as taking physical possession of them. U.C.C. 2-103(1)(c).

for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business [Doc. 14] (the "Shipping Motion"). *See Wander Dec., Exh. B.*

15. In the Shipping Motion, the Debtors sought to "(iii) grant[] administrative priority status to all undisputed obligations of the Debtors owing to third party vendors and suppliers arising from the postpetition delivery of goods ordered prior to the Commencement Date and authorizing the Debtors to pay such obligations in the ordinary course of business." *Shipping Motion,* ¶5. According to the Debtors, "[p]rior to the Commencement Date, and in the ordinary course of business, the Debtors ordered approximately $162 million in Merchandise from suppliers and vendors that will not be delivered until on or after the Commencement Date (the "Prepetition Orders")." *Id. at ¶19.*

16. This $162 million in Merchandise must have included all of the goods from foreign vendors delivered to a common carrier at the port of origin during the 20-day period before commencement of these cases (including Sino-Thai Trading's goods), assuming it took more than 21 days for those goods to be shipped to the United States. In other words, the goods the Debtors previously argued should receive a §503(b)(1) administrative claim should now be subject to a § 503(b)(9) analysis and, under the Debtors' skewed approach to §503(b)(9), these foreign vendors are out of the money, i.e. their goods were received outside of the 20-day

§503(b)(9) period.[5] *Wander Dec.,* ¶¶6-9. The reason for this change in position is simply to reduce the administrative claims against this insolvent estate.

## CONCLUSION

17. The desire for the Debtors' estates to be administratively solvent should not determine the results in the issues now before the Court. The plain meaning of the statute, the intent of the statute, the records before the Court, and the overwhelming weight of legal authorities addressing the issues now before the Court that relate to the Objection, all support the position by Sino-Thai Trading and the other foreign vendors opposition the Objection. This Court should look to the UCC for guidance and not the CISG.

18. Notably, the Debtor's position would create a conflict between the bankruptcy courts in the Third Circuit and those in the Southern District of New York, the two venues where most bankruptcy cases involving foreign vendors are filed. The Debtors would have this Court create a conflict with the Third Circuit simply to save $30 million in administrative claims in this case. While that may be a commendable goal, it would not be good law.

19. If, on the present record, the Court is not inclined to deny the Objection as a matter of law, then Sino-Thai Trading should be authorized to engage in limited discovery in order to be able to present a complete record on which the Court can rule after an evidentiary hearing.

---

[5] In other words, the Debtor impliedly acknowledged in the Shipping Motion that goods delivered post-petition did not qualify for priority treatment pursuant to § 503(b)(9) because if the goods were considered "received" upon the arrival FOB at the point of origin, within 20 days of the Petition Date, a separate § 503(b) motion confirming administrative priority would not have been necessary. Six months later, the Debtors tried to walk back the clear, unambiguous language in the Shipping Motion and resulting Court order. *See Wander Dec.,* ¶8 and Ex. C. Accordingly, Sino-Thai Trading submits that the Court should authorize limited discovery related to the Shipping Motion.

Dated: New York, New York
November 15, 2019

                                            DAVIDOFF HUTCHER & CITRON

                                            By: /s/ David H. Wander
                                                  David H. Wander
                                                  Alexander R. Tiktin
                                            605 Third Avenue
                                            New York, New York 10158
                                            (212)-557-7200
                                            dhw@dhclegal.com
                                            art@dhclegal.com
                                            *Attorneys for Sino-Thai Trading Company, Ltd.*