DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200
David H. Wander, Esq. (dhw@dhclegal.com)
Alexander R. Tiktin, Esq. (art@dhclegal.com)
*Attorneys for HK Sino-Thai Trading Company Ltd.*

**Hearing Date and Time:**
November 20, 2019 at 10:00 am

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| ----------------------------------------------------------X | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDING CORPORATION, *et al*., | Case No. 18-23538 (RDD) |
| Debtor. | (Jointly Administered) |
| ----------------------------------------------------------X | |

**DECLARATION BY DAVID H. WANDER, ESQ. IN SUPPORT OF HK SINO-THAI TRADING COMPANY, LTD.'S (I) RESPONSE TO THE DEBTORS' CERTIFICATE OF NO OBJECTIONS, (II) OPPOSITION TO THE DEBTORS' TENTH OMNIBUS OBJECTION TO CLAIMS AND THE OBJECTION TO CLAIM NO. 1060 FILED BY HK SINO-THAI TRADING COMPANY, LTD. AS AN ADMINISTRATIVE CLAIM UNDER § 503(b)(9) OF THE BANKRUPTCY CODE, AND (III) REQUEST FOR DISCOVERY**

DAVID H. WANDER, declares under 28 U.S.C. §1746:

1. I am counsel for HK Sino-Thai Trading Company, Ltd. ("Sino-Thai Trading") and I submit this declaration in support of Sino-Thai Trading's (i) response to the Debtors' Certificate of No Objections, (ii) opposition to the Debtors' tenth omnibus objection to claims and the objection to Claim No. 1060 against Sears Holding Corporation filed by Sino-Thai Trading as an

administrative claim in the amount of $318,718.62,[1] under § 503(b)(9) of the Bankruptcy Code, and (ii) request for limited discovery.[2]

2. The sole basis for the Debtors' objection to Sino-Thai Trading's administrative claims is their argument that the Debtors did not receive the goods, within 20-days of the commencement of this case on October 15, 2018.

3. Apparently, the Debtors took the opposite position when this case was filed and before the Debtors were concerned about administrative insolvency. Specifically, the Debtors considered the delivery of goods in the United States, from foreign vendors to Sears and Kmart, to be the dates the Debtors "received" those goods.

4. Annexed as **Exhibit B** is the Motion of Debtors For Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business [Doc 14] (the "Shipping Motion").

5. In the Shipping Motion, the Debtors sought to "(iii) grant[] administrative priority status to all undisputed obligations of the Debtors owing to third party vendors and suppliers arising from the postpetition delivery of goods ordered prior to the Commencement Date and authorizing the Debtors to pay such obligations in the ordinary course of business." *Shipping Motion,* ¶*5*. According to the Debtors, "[p]rior to the Commencement Date, and in the ordinary course of business, the Debtors ordered approximately $162 million in Merchandise from

[1] After further review, Sino-Thai Trading believes that the amount of its § 503(b)(9) claim should be $180,147.16 based upon the invoices included in Claim No. 1060 that were for goods, upon information and belief, received by the Debtors during the 20 day § 503(b)(9) period.

[2] Sino-Thai Trading filed additional § 503(b)(9) claims against Sears, Roebuck and Co., Claim Nos. 506 and 812, in the amounts of $75,340.32 and $75,340.32, respectively. The Debtors have not objected to these claims. Annexed as **Exhibit A** is Claim 1060 against Sears Holding Corporation, filed by Sino-Thai Trading.

suppliers and vendors that will not be delivered until on or after the Commencement Date (the "Prepetition Orders"). *Id.* at ¶19.

6. According to the Debtors, "because the Debtors' obligations under the Prepetition Orders arose prior to the Commencement Date, such obligations will be treated as general unsecured claims in these Chapter 11 Cases." *Id.* Upon information and belief, this $162 million in Merchandise included goods from foreign vendors delivered to a common carrier at the port of origin during the 20-day period before the commencement of these cases. If the Debtors had taken the position in the Shipping Motion regarding the date of "receipt" of goods that they are taking now, then much, if not most, of the $162 million in Merchandise should have been entitled to a §503(b)(9) administrative claim.[3]

7. Notably, the Debtors contrasted the need for an administrative expense for the $162 million in Merchandise ordered pre-petition and delivered post-petition, with the §503(b) administrative expense priority given to Merchandise delivered "within 20 days prior to" the Commencement Date. *Id.* at 20.

8. Six months later, when the Debtors were very concerned about administrative insolvency and a foreign vendor cited the Order entered by the Court on the Shipping Motion to support a motion for a § 503(b)(1) administrative claim for pre-petition goods delivered post-petition, the Debtor argued that the $162 million in Merchandise included none of the foreign vendor's goods:

> The purpose of the comfort language in paragraph eight of the Final Shipping Order was to give assurance to vendors operating under prepetition contracts *who had not completed performance as of the Petition Date* that they would be provided

---

[3] Assuming the shipment of goods by foreign vendors takes 30-days, and assuming that the same value of goods were delivered each day to a common carrier at the port of origin during the 30-day period before the Commencement Date, then $108 million out of the $162 million in Merchandise would have been entitled to a §503(b)(9) administrative claim.

> with an Administrative Claim for completing performance and delivering goods to the Debtors after the Petition Date. The Debtors wanted this comfort language placed into the Final Shipping Order to assure parties *who had not yet begun or not yet completed performance of their obligations*, that they would be compensated on a postpetition basis in the ordinary course of business. Paragraph eight was never intended to provide an Administrative Claim to Winners and other vendors *who had already completed performance* and satisfied their obligations to the Debtors.

*Debtors' Objection to Winners Industry Co., Ltd's Motion for Allowance and Payment of Administrative Claim [Doc 2839]* at ¶17 (emphasis added). See **Exhibit C**. Upon information and belief, the sole reason the Debtors took this position is because they determined they could reduce the allowed administrative expenses by at least $30 million.

9. Because I had doubts about the veracity of this statement, I issued a subpoena *duces tecum* to the Debtors, on behalf of another client with the same issue, requesting the production of documents showing the goods intended to be included in the $162 million of Merchandise in the Shipping Motion. However, the Debtors refused to produce these documents.

10. Accordingly, discovery is needed for the Court to have a proper record in which to rule on the Debtors' objection to Orient Craft's administrative claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of November, 2019.

/s/ David Wander________
David Wander