# EXHIBIT - C

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                  :
                                       :       **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,  :
                                       :       **Case No. 18-23538 (RDD)**
                                       :
Debtors.[1]                            :       **(Jointly Administered)**
                                       :
                                       :
                                       :
------------------------------------------------------------x

**DEBTORS' OBJECTION TO WINNERS INDUSTRY CO., LTD'S**
**MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc.

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby file this objection (the "**Objection**") to the *Motion of Winners Industry Co., Ltd. for Allowance and Payment of Administrative Expense Claims* [ECF No. 1386] (the "**Motion**").[2]

## The Motion Should be Denied

**A.     Winners' Requested Relief is Premature.**

1.     Winners Industry Co., Ltd. ("**Winners**")  claims it is entitled to an administrative expense claim under section 503(b)(1) of the Bankruptcy Code (an "**Administrative Claim**") and a priority claim under section 503(b)(9) of the Bankruptcy Code (a "**503(b)(9) Claim**").  Pursuant to paragraph twenty (20) of the *Order (I) Establishing Deadline To File Proofs of Claim and Procedures Relating Thereto, (II) Approving the Form and Manner of Notice Thereof, (III) Approving Procedures for the Resolution of Claims Asserted Pursuant To 11 U.S.C. § 503(B)(9), and (IV) Prohibiting Vendors From Pursuing Such Claims Outside the Procedures* [ECF No. 2676] (the "**Bar Date Order**"), all motions seeking a determination and/or payment with respect to 503(b)(9) Claims are adjourned to at least sixty days following the April 10, 2019 general bar date (the "**Bar Date**").  Given that the Motion seeks a determination with respect to a 503(b)(9) Claim, the Debtors requested that Winners adjourn their Motion to the May or June omnibus hearing in accordance with the Bar Date Order.  An adjournment will allow the parties to consider the Motion, potentially negotiate a resolution, or more fully address the relief requested.  Winners refused to adjourn the Motion, and insisted on proceeding with respect to its request for an Administrative Claim to create a contested matter and allow it to serve discovery against the Debtors.

---

[2] Terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

2.      The request for a determination of allowance of claims so soon following the commencement of these Chapter 11 Cases is entirely premature and ignores the fundamental principle of chapter 11—to give the Debtors' a breathing spell to stabilize and operate their business and formulate a chapter 11 plan. Winners wishes to jump ahead of other creditors, ignore the Court's prior commentary on reconciliation and allowance of administrative and priority claims, and compel an immediate determination and payment of their claim.  As the Court is aware, upon the recent consummation of the Court-approved sale of the Debtors' businesses, the Debtors' liabilities to hundreds of thousands of customers for, among other things, protection agreements, home warranties, gift cards, and Shop Your Way-related liabilities were assumed by Transform Holdco LLC (the "**Buyer**") pursuant to that certain Asset Purchase Agreement, dated as of January 17, 2019 (the "**APA**").  Additional liabilities for general unsecured, priority, and administrative claims were assumed and are to be paid by the Buyer pursuant to the APA.  Certain of Winners' claims may be assumed by the Buyer.

B.      **The Debtors Have Not Validated Winners' Claims.**

3.      Since, the closing of the Debtors' sale to the Buyer, the Debtors have been focused on transitioning the businesses and employees to the Buyer, identifying the unexpired leases and executory contracts that will be transferred to the Buyer, establishing an orderly means of resolving the claims through the Bar Date Order, and preparing a chapter 11 plan to wind down the Debtors' estates and close the Chapter 11 Cases.

4.      The Debtors have taken their cues from the Court at the December 20, 2018, hearing where the Court indicated its strong preference to have an orderly process for resolving 503(b)(9) Claims. *Hr'g Tr.* Dec. 20, 2018 at 45-46 ("I think it is important . . . on an orderly way to deal with [503(b)(9) Claims] so that no one is unduly rewarded for coming first or unduly prejudiced for not coming first."). The same principles of fairness and equality apply to alleged

3

unpaid Administrative Claims. Parties who believe they have Administrative Claims are entitled to file Administrative Claims, and the Debtors will be entitled to object to any such claim in accordance with the procedures to be approved by the Court. Claims that are filed and as to which no objection is asserted will be deemed allowed. *See* 11 U.S.C. § 502(a). Parties should not be encouraged to flood the Court with motions and attempt to set a timeframe for allowance of their particular claims. The Debtors and their professionals are charged with reconciling and administering all claims of all parties in these mega cases.

        5.      The Debtors have not had an opportunity to review the extensive material annexed to Winners' Motion. Notably, the Motion attached over 350 pages of supporting documentation covering twenty-one (21) different shipments, over 150 invoices, and dozens of ship date and delivery dates. As demonstrated by Winners' "summary spreadsheet" attached to the Motion, the information involves an extensive amount of detail that cannot be easily verified. Indeed, Winner's own position with respect to certain of its shipments still remains "undetermined."[3] Accordingly, given the complexity associated with confirming over 350 pages of documents and over 150 invoices, the Debtors submit it would prejudicial to all the Debtors' stakeholders to consider the Winners Motion at this time.

---

[3] Moreover the data is not nearly as simple as Winners implies—Winners suggests that the delivery of their goods by a common carrier to a port in the United States is somehow indicative of when the Debtors physically received the goods in their distribution centers. Even if this were relevant for purposes of an Administrative Claim, for each container or shipment listed by Winners there could be dozens of individual trucks delivering the goods to several of the Debtors' distribution centers—thereby multiplying the number of shipments to be reviewed. Notably, these data points are only relevant if the Court accepts Winners' unsupported position that a claim is triggered under section 503(b)(1) not when a claim actually arose, but rather when a debtor receives goods.

### C. Winners is Not Entitled to an Administrative Claim Under the Bankruptcy Code.

6. Winners' Motion (much like the motion of Milton Manufacturing LLC)[4] does not cite to a single case to support its theory of Administrative Claims. Winners' position suggests that although Winners completed all of its obligations *prepetition*, transferred title to the goods it delivered *prepetition* and invoiced the Debtors' *prepetition*—Winners claim should be transformed into a *postpetition* Administrative Expense Claim because a common carrier delivered goods to the Debtors after the Petition Date. The Bankruptcy Code and the case law does not support such a strained interpretation of section 503(b)(1).

7. The question this Court must determine is when a claim arises for purposes of determining administrative priority under section 503(b)(1). Consistent with longstanding bankruptcy law, the Debtors submit that Winners' claim arose when Winners completed its obligations under its purchase orders (the "**Purchase Orders**") and transferred title to the Debtors. Without citing to a single case,[5] Winners submits that that its claim arose—not when it had the right to invoice the Debtors—and not when its obligations were complete under the Purchase Orders—and not even when it transferred title of the goods to the Debtors. Winners instead asserts that its claim arose upon the Debtors' receipt of the goods from a common carrier long after Winners had any involvement with the goods. The weight of the case law does not support Winners' view.

---

[4] Winners' position is substantially similar to the position of Milton Manufacturing, LLC as set forth in the *Motion of Milton Manufacturing, LLC to Allow and Compel Payment of Administrative Expense Claim under 11 U.S.C. § 503(b) for Craftsman Branded Goods Delivered to the Debtor Postpetition* [ECF No 1477] (the "**Milton Motion**"). The Debtors hereby incorporate all of the arguments raised herein in further support of their objection to the Milton Motion and vice versa.

[5] *See* Motion ¶¶ 26-29.

5

8. Section 503(b)(1) of the Bankruptcy Code provides that a party shall be entitled to an administrative expense claim for the "actual, necessary costs and expenses of preserving the estate . . ." 11 U.S.C. § 503(b)(1). The Court has established that "two elements must be satisfied. First, the expense must arise out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession. Second, the expense's consideration must be both supplied to and beneficial to the debtor in possession in the operation of the business." *See In re Adelphia Bus. Solutions, Inc.*, 296 B.R. 656, 661-62 (Bankr. S.D.N.Y. 2003) (internal citations and quotation marks omitted). Critically, to be entitled to an Administrative Claim, a creditor must transact with the debtor-in-possession "in the context of comparing and contrasting that to a transaction with a pre-petition debtor." *Id.* at 663. The purpose underlying this element "is to encourage vendors to deal with the post-petition estate." *Id.* Importantly, the burden is on the movant to establish their right to an Administrative Claim. *Id.* at 662.

9. Winners has not satisfied its burden and demonstrated that there was a transaction with the debtor-in-possession. Here, Winners alleges it transported goods prepetition to a distribution center in Asia that were later loaded onto a common carrier—and, at that time, title was transferred to the Debtors, Winners' contractual obligations were completed, and the Debtors were invoiced. Payment was due seventy four (74) days after the common carrier departed the port in Asia. Once Winners had dropped off its goods at port in Asia its contractual obligations were complete and no further performance was due from Winners.

10. Winners' sole basis for its alleged entitlement to an Administrative Claim is that the goods were delivered to the Debtors by a third party after the Petition Date. Critically, the transaction giving rise to the claim (*i.e.* the transfer of title of goods to the Debtors in exchange for the right to payment) occurred prior to the Petition Date. Indeed, Winners' own Motion

6

acknowledges payment to Winners was due seventy-four (74) days from the common carrier's sailing date and not the date of receipt. The Court should not conflate the prepetition delivery of the goods to the Debtors' distribution facilities in Asia with the postpetition delivery of goods from a common carrier to the Debtors' distribution center. Winners takes the disingenuous position that it is entitled to an Administrative Claim based on the final delivery by a common carrier to the Debtors' distribution center in the United States, when it had already transferred title to the Debtors, issued an invoice, and completed all of its obligations to the Debtors upon delivery of the goods in Asia, which was before the Petition Date.

11. As discussed by the Court in *In re Adelphia Business Solutions* and *In re Enron*, the purpose of an Administrative Claim is to "encourage third-parties to supply the debtor-in-possession with goods and services with the goal of achieving a reorganization to benefit all creditors" and "encourage the vendors to deal with the **post-petition estate**" *In re Enron Corp.*, 279 B.R. 79, 86 (Bankr. S.D.N.Y. 2002) (emphasis added); *see Adelphia Bus. Solutions*, 296 B.R. at 663. But the shipments giving rise to Winners' request for an Administrative Claim did not involve any dealings with the postpetition estate. The transfer of title occurred *prepetition*.[6] The delivery to the first common carrier (*i.e.* the ship from Asia to the United States) occurred *prepetition*. The invoices were dated *prepetition*, and the obligation of the Debtors to Winners arose *prepetition*. Whether the Debtors later received the goods from a common carrier after the Petition Date should be of no moment to the Court because Winners' had already completed its performance with the prepetition Debtors.

12. Courts both in and out of this Circuit have soundly rejected the Winners' theory under similar circumstances. In *In re K Chemical Corporation*, the vendor delivered

---

[6] The Motion and the Purchase Orders indicate that the goods were shipped FOB China.

chemicals to a carrier hired by the debtor prepetition who later delivered the chemicals to the debtors' warehouse postpetition. *In re K Chemical Corp.*, 188 B.R. 89, 95 (Bankr. D. Conn. 1995) ("It is stipulated that the sale of the Chemicals was procured by the Debtor, and the Chemicals were in fact delivered to an agent of the Debtor, prior to the actual time of filing of the voluntary petition in this case. Therefore, there is no issue as to the material fact of whether the subject sale was a transaction with the Debtor–in–Possession. It was not."). The *K Chemical* court rejected the vendor's request for an administrative expense claim because the delivery to the common carrier was not a transaction with a debtor in possession. *Id.* at 95 n.5. (noting that title to the goods transferred upon delivery to the carrier). Additionally, the *K Chemical* court highlighted that the sale transaction was completed and the claim arose when the vendor delivered goods to the agreed place of delivery. *Id.*

    13. Similarly, in *In re Mayers Pollock Steel Corporation* the court determined that the key delivery with respect to an Administrative Claim is when the vendor delivers the goods to the common carrier. *In re Mayer Pollock Steel Corp.*, 157 B.R. 952, 963 (Bankr. E.D. Penn. 1993) ("Although [Vendor] argues that delivery was not complete until the scrap reached [the Debtor], we believe that this argument is factually inaccurate. [Vendor] completed *its* performance with respect to delivery as soon as it loaded [the common carrier's] cars . . . . Therefore, the sales of the scrap in issue in these five shipments occurred pre-petition.") (modifications supplied). In rejecting the vendors' claim, the court clarified that a vendor cannot have an Administrative Claim so long as performance was completed by the vendor when it delivered to the common carrier. *Id.* Indeed, the *Mayer Pollock* court specifically noted in denying the movant an Administrative Claim that its performance was completed as soon as it loaded the goods onto the common carrier. *Id.*

8

18-23538-shl Doc 2899 Filed 03/15/19 Entered 03/15/19 00:14:57 Main Document Pg 9 of 13

14. Winners is no different than the vendors in *K Chemical* and *Mayer Pollock* who tried to piggyback off of subsequent deliveries by a common carrier to manufacture an Administrative Claim.[7] *See Mayer Pollock Steel Corp.*, 157 B.R. at 963 (holding no administrative claim existed when vendor "completed its performance" prepetition). Winners delivered goods to a common carrier, completed all of its performance prepetition, and invoiced the Debtors during the prepetition period. Winners had no involvement in the shipment of goods on the container ship from Asia to the United States and Winners had no involvement in the shipment of goods on the truck from the port in the United States to the Debtors' distribution center. Given that Winners never actually transacted with the debtor-in-possession, it should not be rewarded with an Administrative Claim. *See Adelphia Bus. Solutions*, 296 B.R. at 663 (purpose of an Administrative Claim "is to encourage third parties to supply goods and services on credit to the estate."). Winners does not claim it insured the goods or assumed the risk of loss for the goods after the drop-off in Asia, or transacted with the postpetition estate; instead, Winners' admits it simply left the goods at the port in China for the prepetition Debtors. The Motion contains no other allegations that Winners did anything more and Winners cannot satisfy its burden for entitlement to an Administrative Claim.

**D.  Winners is Not Entitled to an Administrative Claim under the Final Shipping Order.**

15. Instead of case law, Winners relies on the *Final Order Authorizing Debtors to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders Of PACA/PASA Claims, and (II) Confirm Administrative Expense*

---

[7] *See also In re Nevins Ammunition Inc.*, 79 B.R. 11, 15 (Bankr. D. Idaho 1987) (finding no administrative claim when vendor delivered goods to a common carrier prepetition under a prepetition shipment contract); *In re John Clay & Co., Inc.*, 43 B.R. 797, 810-11 (Bankr. D. Utah 1984) (claim arises when seller completes performance and the right to payment is reduced to a dollar amount).

9

*Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course Of Business* [ECF No. 843] (the "**Final Shipping Order**"). Specifically, Winners argues that routine comfort language in paragraph eight of the Final Shipping Order approved many weeks (or even months) after Winners dropped off the Debtors' goods in Asia, supports its argument for an Administrative Claim.

16. Paragraph eight of the Final Shipping Order provides that:

> All undisputed obligations of the Debtors arising from the postpetition delivery or shipment by of goods under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code, and the Debtors are authorized, but not directed, to pay such obligations in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

Final Shipping Order ¶ 8. Paragraph twelve thereof clarifies that:

> Notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any party.

Final Shipping Order ¶ 12.

17. The purpose of the comfort language in paragraph eight of the Final Shipping Order was to give assurance to vendors operating under prepetition contracts who had not completed performance as of the Petition Date that they would be provided with an Administrative Claim for completing performance and delivering goods to the Debtors after the Petition Date. The Debtors wanted this comfort language placed into the Final Shipping Order to assure parties who had not yet begun or not yet completed performance of their obligations, that they would be compensated on a postpetition basis in the ordinary course of business. Paragraph eight was never intended to provide an Administrative Claim to Winners and other vendors who had already completed performance and satisfied their obligations to the Debtors. Furthermore,

10

nothing in the Final Shipping order *compels* the Debtors to pay any holder of an Administrative Claimant in the ordinary course of business, the Final Shipping Order merely *authorizes* the Debtors to do so.

18. One party objected to the entry of the Final Shipping Order in an attempt to install more favorable language into the order. At the hearing to approve the entry of the Final Shipping Order, the Court was clear with all parties that it was not deciding any issue with respect to the status of claims. *See Hr'g Tr.* Nov. 15, 2018 at 120-21. Further, in response to a request from a vendor's counsel to clarify the definition of "delivered" in the Final Shipping Order, the Court expressly declined. *Id.* at 121-22. The Court was clear to all parties that it was not making a determination with respect to any claims; nevertheless, despite the Court's clear statements to the contrary, Winners still attempts to argue the Final Shipping Order elevates its general unsecured claim to an Administrative Claim. As the Court has already made clear, the Final Shipping Order was never meant to transform ordinary prepetition claims into Administrative Claims, and Winners cites no other case law to support its position.

19. While the Debtors had expected to begin the reconciliation of certain Administrative Claims and 503(b)(9) Claims shortly, the Buyer's failure to comply with the terms of the APA have dramatically slowed this process. The Debtors believe that the majority of Winners' alleged Administrative Claims are properly classified as general unsecured claims; however, given that certain of Winners' claims could be assumed by Buyer, it would be a waste of the estate's limited resources and the Court's time to litigate over claims that may very well be assumed and paid by the Buyer.

20. Winners asks the Court to determine its claims without full clarity as to how the relief would impact other recoveries to stakeholders. The Bar Date has not yet passed for the

11

Debtors and the universe of potential claims against the Debtors is unknown. If the Court were to adopt Winners' incorrect view of Administrative Claims and compel immediate payment of the same, it would inevitably create an unknown amount of additional Administrative Claims that has not been accounted for in the Debtors' liquidity forecast and deprive the Debtors of the benefit of their bargain with Buyer, which already has agreed to assume certain of these liabilities. All parties in interest will benefit from an orderly administration of the Debtors' estates rather than a free-for-all race to the Courthouse. The Debtors should not be forced to respond to demands for allowance of each and every claim at this juncture.

E.   **Winners Request for a 503(b)(9) Claim has Been Adjourned.**

21. The Bar Date Order adjourned the Winners' request for a 503(b)(9) Claim until no later than sixty (60) days following the Bar Date. Accordingly, the Debtors reserve all of their rights with respect to Winners' request for a 503(b)(9) Claim.

F.   **Reservation of Rights.**

22. The Debtors reserve all their rights, including but not limited to the right to supplement this Objection as necessary and to take discovery of Winners. While Winners has not requested an evidentiary hearing pursuant to the *Order Implementing Certain Notice and Case Management Procedures* [ECF No. 139], the Debtors' reserve all their rights to object to any request.

WEIL:\96957001\1\73217.0004

**Conclusion**

For all of the foregoing reasons, the Debtors respectfully request that the Court deny the Motion.

Dated: March 15, 2019
       New York, New York

                                  /s/ Garrett Fail
                                  WEIL, GOTSHAL & MANGES LLP
                                  767 Fifth Avenue
                                  New York, New York  10153
                                  Telephone:  (212) 310-8000
                                  Facsimile:  (212) 310-8007
                                  Ray C. Schrock, P.C.
                                  Jacqueline Marcus
                                  Garrett A. Fail
                                  Sunny Singh

                                  *Attorneys for Debtors*
                                  *and Debtors in Possession*