Hearing Date and Time:  Friday, December 13, 2019 10:00 AM (Eastern Time)
Objection Date and Time:  Friday, December 6, 2019 4:00 PM (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
David Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                          :
In re                                     :          Chapter 11
                                          :
SEARS HOLDINGS CORPORATION, et al.,       :          Case No. 18-23538 (RDD)
                                          :
                Debtors.¹                  :          (Jointly Administered)
                                          :
------------------------------------------------------------------x
```

### NOTICE OF HEARING ON
### MOTION OF DEBTORS TO COMPEL TURNOVER OF ESTATE PROPERTY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "**Motion**"), of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order compelling turnover of estate funds, pursuant to sections 541 and 542 of chapter 11 of title 11 of the United States Code, and section 157 of chapter 6 of title 28 of the United States Code, and section 1334 of chapter 85 of title 28 of the United States Code, 28 U.S.C. §§ 157 and 1334, as more fully set forth in the Motion, will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "**Bankruptcy Court**") on **Friday, December 13, 2019 at 10:00 a.m. (Eastern Time)** (the "**Hearing**"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "**Objections**") to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405), so as to be filed and received no later than **Friday, December 6, 2019 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated:    November 22, 2019
          New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
David Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
David Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                                :
**In re**                                       :
                                                :         **Chapter 11**
**SEARS HOLDINGS CORPORATION, *et al.*,**       :
                                                :         **Case No. 18-23538 (RDD)**
                                                :
              **Debtors.**[1]                   :         **(Jointly Administered)**
                                                :
                                                :
                                                :
----------------------------------------------------------------x

## MOTION OF DEBTORS TO COMPEL TURNOVER OF ESTATE PROPERTY

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

# TABLE OF CONTENTS

Page

I.      Preliminary Statement........................................................................................1

II.     Background ........................................................................................................2

III.    Relief Requested ................................................................................................6

IV.     Argument and Authorities ................................................................................6

        A.    This Court Has the Authority to Compel Transform to Turn Over the
              Cook County Tax Refunds Belonging to the Debtors. ..............................6

        B.    The Cook County Tax Refunds Are Estate Property Subject to
              Turnover. ....................................................................................................7

              1.    Section 2.2(h) of the APA Plainly Provides That the Cook
                    County Tax Refunds Are Excluded Assets Not Transferred to
                    Transform in Connection with the Sale Transaction. .........................8

              2.    Transform Has Converted the Debtors' Property, and the
                    Court Should Not Permit Transform to Use the Court's Cash
                    Reconciliation Process as a Defense. ..................................................9

V.      Conclusion ......................................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Citizens Bank v. Strumpf,*
    516 U.S. 16 (1995)..................................................................................................7

*Geron v. Peebler (In re Pali Holdings, Inc.),*
    488 B.R. 841 (Bankr. S.D.N.Y. 2013)..................................................................5, 6

*In re Highland Fin. Corp.,*
    216 B.R. 109 (Bankr. S.D.N.Y. 1997)......................................................................7

*Kramer v. Mahia (In re Khan),*
    No. 10-46901-ESS, 2014 WL 10474969 (E.D.N.Y. Dec. 24, 2014)........................6

*NVF Co. v. New Castle Cty.,*
    276 B.R. 340 (D. Del. 2002) ...................................................................................9

*Resort Point Custom Homes, LLC v. Tait,*
    C.A. No. S08C-04-020-ESB, 2010..........................................................................8

**Statutes**

11 U.S.C. § 362.....................................................................................................5, 10

11 U.S.C. § 541(a) .....................................................................................................5

11 U.S.C. § 542...........................................................................................................5

11 U.S.C. § 542(a) and (2).....................................................................................5, 10

28 U.S.C. §§ 157 and 1334........................................................................................6

28 U.S.C. §§ 157(a)-(b) and 1334(b)........................................................................1

28 U.S.C. § 157(b) .....................................................................................................2

28 U.S.C. § 157(b)(2)(A)............................................................................................6

28 U.S.C. § 157(b)(2)(E) ...........................................................................................6

28 U.S.C. §§ 1408 and 1409..................................................................................6, 2

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), seek an order from this Court compelling turnover of more than $5.5 million in Estate funds currently held by Transform Holdco LLC ("**Transform**") in connection with property-tax refund checks issued by Cook County, Illinois relating to taxes paid during Pre-Assignment Tax Periods, and, in support of this motion to compel turnover of estate property (the "**Motion**"), respectfully represent as follows:[1]

## I.    Preliminary Statement

1.    Since late March 2019, Transform has received, at its Hoffman Estates, Illinois headquarters, a number of property-tax refund checks that plainly and undeniably belong to the Debtors.  The checks were directed to Debtor entities, paid to the order of Debtor entities, and indicated, on their face, that they represented refunds of property taxes paid by the Debtors in pre-Closing taxable periods (which the APA makes clear are property of the Debtors' Estate). Notwithstanding, Transform deposited the funds into its own bank accounts and, when asked to return the funds, refused—claiming that the funds needed to be "reconciled" as part of the cash-reconciliation process established by this Court at the July 11, 2019 hearing (the "**Cash Reconciliation Process**") on the Debtors' Supplemental Motion to Enforce the APA (ECF No. 4029).

2.    It goes without saying that, if one party buys another's house and a dispute arises in connection with the sale, the buyer cannot convert, or hold hostage, a paycheck belonging

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion to Enforce (as defined herein).

to the seller that was mistakenly sent to the seller's old (and buyer's new) address in an effort to recover on a purported sale-related debt. And, yet, that is exactly what Transform has done here.

3.    Transform attempts to justify its conversion of the Debtors' property by pointing to the Cash Reconciliation Process, but the Court should not permit such a ploy. The Cash Reconciliation Process was meant to *identify* difficult-to-identify Estate property that had been erroneously deposited into Transform's bank accounts and reconcile those amounts against any Transform funds that may have been erroneously withdrawn from Transform's bank accounts to satisfy the Estate's pre-Closing debts.[2] The Process was never meant to serve as a license for Transform to convert what is plainly and undeniably Estate property to its own ends.

4.    Transform has, without any justification, converted the Debtors' property in contravention of the APA and this Court's prior ruling and in willful violation of the automatic stay. Accordingly, the Debtors move for turnover.

## II.    Background

5.    In negotiating the terms of the agreement that would govern the rights and obligations of the Parties in connection with the sale of substantially all of the Debtors' assets and operations to Transform, the Parties included a specific provision that delineated which assets would *not* be transferred to Transform in connection with the Sale Transaction. Section 2.2 of the APA provides that nothing in the APA shall be deemed to sell, transfer, or convey to Transform any right, title, or interest of the Debtors in or to any one of a series of "Excluded Assets," including but not limited to "any interest in or right to any refund, rebate or credit of [Taxes imposed on the Acquired Properties for any Pre-Assignment Tax Period]."[3] APA §§ 2.2(h), 1.1 (defining

---

[2] *See, e.g., Transform Holdco LLC v. Sears Holdings Corp., et al.* July 11, 2019 Hr'g Tr. (ECF No. 4800) ("**July 11, 2019 Hr'g Tr.**") at 78:18-81:1, 179:7-181:7, 185:20-186:12, 189:4-8.

[3] The APA defines "Pre-Assignment Tax Period" as "any taxable period (or portion thereof) ending on or before the date on which [] the sale, transfer, assignment, conveyance or delivery of, or relating to, such . . . Acquired Property

"Excluded Asset-Reorganization Taxes"). Put simply, the Debtors retained their right to and interest in any and all property-tax refunds relating to taxes they paid during taxable periods prior to the Closing Date.

6.      The Bankruptcy Court considered Section 2.2(h) of the APA at the July 11, 2019 hearing on the Debtors' Motion to Enforce the APA (the "**July 11 Hearing**"), in connection with $9.6 million in tax rebates held by the Village of Hoffman Estates from property taxes levied and collected for the 2017 tax year on the Hoffman Estates properties (the "**EDA Funds**"). The Court made a preliminary ruling that any rights to these tax rebates belonged to the Debtors pursuant to Section 2.2(h), noting that the Parties could not have drafted a more specific provision. *See* July 11, 2019 Hr'g Tr. at 297:21-298:1 ("I frankly don't see how you could really write it any more specific than the applicable provisions that has the refund rebate, refers to the taxes, et cetera."). Transform subsequently agreed to accept the Court's preliminary ruling as final, *see Transform Holdco LLC v. Sears Holdings Corp., et al.* Sept. 12, 2019 Hr'g Tr. (Adv. Case No. 19-08262 ECF No. 9) ("**Sept. 12, 2019 Hr'g Tr.**") at 14:11-18, and that ruling became the law of the case.

7.      On or about October 10, 2018, Sears Holdings Management Corporation entered into Stipulations of Property Tax Assessment(s) for tax years 2013, 2014, and 2015 ("**Property Tax Stipulation**") with the Illinois Property Tax Appeal Board. *See generally* Crozier Decl. Ex. A (Property Tax Stipulation). The Property Tax Stipulation shows the assessments to which the parties agreed and upon which Sears Holdings Management Corporation's 2013, 2014, and 2015 property-tax refunds would be based. *See id.* at 2, 4, and 6. Pursuant to the Property

---

to Buyer . . . is consummated, which date shall be the Closing Date . . . ." *Asset Purchase Agreement Dated as of January 17, 2019 by and among Transform Holdco LLC, Sears Holdings Corporation and Its Subsidiaries Party Hereto* (ECF No. 2507-1) ("**APA**") § 1.1.

Tax Stipulation, the Property Tax Appeal Board entered a final order concerning the 2013 assessment on January 15, 2019. *Id.* at 1. On March 21, 2019, the treasurer of Cook County, Chicago, Illinois issued a property-tax refund for tax year 2013 to Sears Holdings Management Corp. in the amount of $5,498,609.52 (the "**2013 Cook County Tax Refund**," or "**2013 Tax Refund**"). *See* Crozier Decl. Ex. B (Mar. 21, 2019 Check from Treasurer of Cook County, Chicago, Illinois to Sears Holding Management Corp. Re: Property Tax Appeal Board ("**2013 Tax Refund Check**")) at 2.

8.      On or about March 28, 2019, local tax counsel for the Debtors forwarded the 2013 Tax Refund Check to Debtor Sears Roebuck & Co. at 3333 Beverly Road in Hoffman Estates, Illinois. *See id.* at 1. Counsel plainly intended to send the check to the Debtors but, by March 2019, 3333 Beverly Road in Hoffman Estates, Illinois had become Transform's address.

9.      Counsel's letter was addressed to Sears Roebuck & Co., a Debtor entity. *Id.* The 2013 Tax Refund Check was paid to the order of "SEARS HOLDING MGT CRP.," a Debtor entity.[4] *Id.* at 2. Significantly, language on the face of the check directed those "not legally entitled to [the] check . . . to return [it] to [the] office" of the Treasurer of Cook County. *Id.* Nevertheless, Transform deposited the funds into its own coffers. *See generally* Crozier Decl. Ex. C (Nov. 11, 2019 Letter from S. O'Neal to J. Friedmann, et al. Re: *In re Sears Holdings Corp.* ("**O'Neal Letter**")).

10.     After months of requesting that Transform turn over the 2013 Tax Refund to the Debtors, on November 7, 2019, the Debtors formally demanded that Transform transfer the full amount of the 2013 Cook County Tax Refund to the Debtors by November 13, 2019. *See*

---

[4] Transform knows (and has known) that Sears Roebuck & Co. and Sears Holdings Management Corp. are Debtor entities. It has listed them as debtors in the first or second footnote of each of its substantive pleadings filed in these chapter 11 cases. *See, e.g., ESL Investments, Inc.'s Preliminary Response to the Motion of the Official Committee of Unsecured Creditors* dated Nov. 8, 2018 (ECF No. 575) at note 1.

Crozier Decl. Ex. D (Nov. 7, 2019 Letter from J. Friedmann to S. O'Neal, et al. Re: *In re Sears Holdings Corp.* ("**Friedmann Letter**")) at 1-2.  Transform refused, claiming disingenuously that the 2013 Tax Refund Check was one of those "estate checks deposited after March 31, 2019" whose amount would be allocated in connection with Cash Reconciliation Process.  *See* Crozier Decl. Ex. C (O'Neal Letter) at 1-2.  Transform made no attempt to argue that the 2013 Tax Refund was its property under the APA, *see generally id.*, and that silence spoke volumes.

11.    Since November 7, the Debtors have learned of other Cook County tax-refund checks that local counsel forwarded to Debtor Sears Roebuck & Co. at 3333 Beverly Road, specifically: a property-tax refund for tax year 2016 to Sears Roebuck & Co. in the amount of $13,089.56 and a property-tax refund for tax year 2015 to Sears Holdings Management Corp. in the amount of $2,310.15 (the "**Other Cook County Tax Refunds**").  *See* Crozier Decl. Ex. E (Other Cook County Tax Refund Checks).  For all of the reasons set forth above, these, too, belong to the Debtors.  Notwithstanding, Transform has not forwarded these checks to the Debtors; upon information and belief, Transform has deposited them into its own accounts.  Taken together, Transform is now holding $5,514,009.23 in respect of property-tax refund checks, all of which relate to taxes the Debtors paid during the Pre-Assignment Tax Period and, therefore, all of which belong to the Debtors under Section 2.2(h) of the APA.

12.    Transform's attempt to justify its conversion of the Debtors' property is as baseless as it is disingenuous.  Section 2.2(h) of the APA makes clear that tax refunds like the 2013 Cook County Tax Refund and Other Cook County Tax Refunds (together, the "**Cook County Tax Refunds**") are Excluded Assets not transferred to Transform in connection with the Sale Transaction—in short, ***the Debtors' property***.  And Transform cannot credibly argue that it is properly exercising a right of setoff against the Cook County Tax Refunds, invoking this Court's

Cash Reconciliation Process as its purported authority for doing so.  As stated above, the Cash Reconciliation Process was never meant to serve as a license for Transform to convert what is plainly and undeniably Estate property to its own ends.

13.    The Debtors did not forfeit their right to recover property that plainly belongs to them—or, for that matter, give Transform the right to withhold (and profit from) that property—when the Court ordered them to submit to the Cash Reconciliation Process.  They did not forfeit the protections of the Bankruptcy Code.

## III.    Relief Requested

14.    The Cook County Tax Refunds are Estate property subject to turnover and to the automatic stay.  Transform continues to fail and refuse to transfer the Cook County Tax Refunds to the Debtors.  Accordingly, the Debtors seek an order form this Court directing Transform to turn over the Cook County Tax Refunds to the Debtors pursuant to 11 U.S.C. § 542(a).[5]

## IV.    Argument and Authorities

### A.    This Court Has the Authority to Compel Transform to Turn Over the Cook County Tax Refunds Belonging to the Debtors.

15.    Section 541 of the Bankruptcy Code defines "property of the estate" broadly, including all "interests of the debtor in property" "wherever located and by whomever held." 11 U.S.C. § 541(a).  The Bankruptcy Code provides various tools to marshal the assets of an estate for the benefit of the estate's creditors.  One such tool is turnover, pursuant to 11 U.S.C. § 542. *See Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 851 (Bankr. S.D.N.Y. 2013).  "A

---

[5] The Debtors expressly reserve any and all rights to move for sanctions, including but not limited to costs and attorneys' fees, in connection with and in the event of Transform's continued willful violation of the automatic stay as it relates to any failure to turn over the Cook County Tax Refunds to the Debtors.

turnover action's essence is in bringing the estate's property into its custody" by invoking "the court's most basic equitable powers to gather and manage property of the estate." *Id.*

16.    Section 542(a) provides that an entity in possession, custody, or control of estate property "shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  The party seeking turnover of estate property must therefore show: "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of [11 U.S.C. §] 363; and (3) the property has more than inconsequential value to the debtor's estate." *Kramer v. Mahia (In re Khan)*, No. 10-46901-ESS, 2014 WL 10474969, at *26 (E.D.N.Y. Dec. 24, 2014) (quoting *Zazzali v. Minert (In re DBSI, Inc.),* 468 B.R. 663, 669 (Bankr. D. Del. 2011)).

17.    The Court has jurisdiction over turnover of estate property pursuant to 28 U.S.C. §§ 157 and 1334; this is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and 28 U.S.C. § 157(b)(2)(E) (orders to turn over property of the estate).[6]  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.    The Cook County Tax Refunds Are Estate Property Subject to Turnover.**

18.    The Debtors satisfy the three requirements for turnover set forth in Section 542: (1) the Cook County Tax Refunds are in the possession, custody, and control of Transform; (2) the Cook County Tax Refunds can be used in accordance with the provisions of Section 363; and (3) the Cook County Tax Refunds have substantial value to the Debtors' Estate. Notwithstanding, Transform persists in failing and refusing to transfer the Cook County Tax

---

[6] "After *Stern* [*v. Marshall*, 564 U.S. 462, 468 (2011)], it now is clear that whether a matter is 'core' as a statutory matter is not dispositive of the bankruptcy judge's power, as a constitutional matter, to issue a final judgment in it. But the reported post-*Stern* decisions have overwhelmingly held that bankruptcy judges can constitutionally enter final judgments in turnover actions." *In re Pali Holdings*, 488 B.R. at 849–50

Refunds to the Debtors.  Transform, however, cannot colorably argue that the Cook County Tax Refunds are not property of the Debtors' Estate, and it cannot invoke the Cash Reconciliation Process established by this Court in a misguided effort to justify its conversion of the Estate's property.  Accordingly, the Court should order Transform to immediately turn over the Cook County Tax Refunds to the Debtors.

      1.       **Section 2.2(h) of the APA Plainly Provides That the Cook County Tax Refunds Are Excluded Assets Not Transferred to Transform in Connection with the Sale Transaction.**

19.      Section 2.2(h) of the APA makes clear that the Debtors shall retain "any interest in or right to any refund, rebate or credit of Excluded Asset-Reorganization Taxes," which includes "Taxes imposed on or with respect to the Acquired Assets, the Acquired Properties, the Business or the Assumed Liabilities for any Pre-Assignment Tax Period."  APA § 2.2(h).  As discussed above, the Cook County Tax Refunds were paid to the order of Debtor entities and, on their face, indicated that they represented refunds of taxes imposed on Acquired Properties for Pre-Assignment Tax Periods.  Accordingly, pursuant to the plain and unambiguous language of the APA and now the law of the case, the Cook County Tax Refunds plainly fall within the definition of Excluded Asset-Reorganization Taxes, are Estate property pursuant to Section 2.2(h), and are, therefore, property of the Estate.  *See* APA §§ 2.2(h), 1.1 (defining "Excluded Asset-Reorganization Taxes"); *see also* July 11, 2019 Hr'g Tr. 297:21-298:1; *In re Highland Fin. Corp.*, 216 B.R. 109, 113 (Bankr. S.D.N.Y. 1997) ("Under the law of the case doctrine, a court may not address issues that have been litigated and decided in earlier proceedings in the same case.").

20.      In its November 11, 2019 refusal to return the 2013 Cook County Tax Refund to the Debtors, Transform does not even attempt to argue that the 2013 Tax Refund is, in fact, its property, *see generally* Crozier Decl. Ex. C (O'Neal Letter)—undoubtedly recognizing that no legal basis exists for such an argument.  Instead, Transform claims that it is entitled to hold

on to what it does not (and, indeed, cannot) deny is the Debtors' property until the Cash Reconciliation Process is complete. *See id.* This argument is entirely without merit.

> **2.     Transform Has Converted the Debtors' Property, and the Court Should Not Permit Transform to Use the Court's Cash Reconciliation Process as a Defense.**

21.     The Cook County Tax Refund Checks were plainly and undeniably the Debtors' property. Counsel's letters were addressed to Debtor entities, the checks were paid to the order of Debtor entities, and the faces of the checks clearly indicated that they represented refunds of taxes that the Debtors paid in Pre-Assignment Tax Periods. Instead of forwarding the checks to the Debtors, however, or returning them to the Cook County Treasurer (as the checks directed Transform to do), Transform deposited the funds into its own bank accounts. When the Debtors asked Transform to return the funds it had taken, Transform refused, pointing to this Court's Cash Reconciliation Process as its basis for withholding the funds. Transform, however, cannot invoke the Cash Reconciliation Process established by this Court in an effort justify the improper setoff it is attempting to exercise against the Debtors' property.

22.     First, "the right of setoff . . . allows entities that owe each other money to apply their ***mutual debts*** against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995) (emphasis added) (internal quotations omitted). While it is true that a setoff claim may be "unrelated to the opponent's claim," *NVF Co. v. New Castle Cty.*, 276 B.R. 340, 353 (D. Del. 2002), the debts must still be "***mutual***," "***due***," and for a "***sum [certain]***," *Resort Point Custom Homes, LLC v. Tait*, C.A. No. S08C-04-020-ESB, 2010 LEXIS 144, at *6 (Del. Super. Ct. Apr. 7, 2010) (emphasis added) (quoting *Wooley on Delaware Practice* § 492 (1906)). Setoff applies where A owes B $10,000 for widgets supplied pursuant to a contract and B owes A $5,000 in credits granted pursuant to the contract. Rather than making A pay B $10,000 and B pay A $5,000, A may simply pay B $5,000. Those are not

the circumstances here.  The Cook County Tax Refunds do not represent a debt between the Debtors and Transform—that is, they are not ***mutual debts***.  It is absurd to suggest that, if one party believes that another owes it money, it may convert the other party's property in a purported effort to recover on the contingent debt or hold the other party's property hostage until the contingent debt is paid—and, yet, that is exactly what Transform has done here.  Accordingly, there is no basis in the law upon which Transform can exercise a right of setoff against the Cook County Tax Refunds.

23.     Second, there is no need for an examiner here.  The Cook County Tax Refunds are not three nondescript checks among thousands sent to the company in the weeks and months after Closing.  This is not a situation in which a vendor sent the company a rebate check and it is unclear on the face of the check what it relates to or for what time period, i.e., pre- or post-Sale.[7]  Here, the checks for the Cook County Tax Refunds say, on their face, that they are tax refunds related to taxes paid by a Debtor entity in Pre-Assignment Tax Periods.  The Parties do not need to retain an examiner to make a determination that is readily and immediately apparent and, indeed, one that has already been made by this Court.

24.     To hold that the Cook County Tax Refunds should be allocated in connection with the Cash Reconciliation Process would be to give Transform a license to, on a going-forward basis, convert what is plainly and undeniably Estate property (like the Tax Refunds) to its own ends.[8]  That cannot be the result here.

---

[7]  Transform's financial advisor, Andrew Hede, pointed out that "[t]ypically the challenge with [checks] is that unfortunately the person doesn't write on the check memo what it relates to[, s]o it's a fairly . . . manual and time-consuming process to go back and find out the nature of those checks."  July 11, 2019 Hr'g Tr. at 84:12-21.

[8]  "[MR FRIEDMANN:] [T]his can't go on forever . . . .  [F]or the last five months, [Transform has] basically had an interest-free loan at the expense of the Debtors, holding onto this money while they have taken their time to try to reconcile this, with obviously no incentive to do so, because the longer it takes, the longer they hold onto that money.  And what we're asking for today, Your Honor, is for you to shift that balance, to have them immediately pay the outstanding $28.4 million dollars that they agree are owed the Estate, and the Estate will agree, once the reconciliation

## V.    **Conclusion**

25.    For the foregoing reasons, Debtors respectfully request that the Court issue an order compelling Transform to turn over $5,514,009.23, an amount representing the Cook County Tax Refunds, to the Debtors pursuant to 11 U.S.C. § 542(a) and granting such other and further relief as is just.

## **NOTICE**

26.    Notice of this Motion will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures*, entered on November 1, 2018 (ECF No. 405) (the "**Amended Case Management Order**"). Notice has been provided to Transform.  The Debtors respectfully submit that no further notice is required.

27.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just.

---

is completed, to pay back to Transform any amounts of that re due in light of any proper reconciliations.  But that money should not . . . continue to sit with Transform indefinitely."  *Id.* at 185:23-186:12.

Dated: November 22, 2019
      New York, New York

/s/ Sunny Singh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Ray C. Schrock, P.C.
David Lender
Paul R. Genender
Jared R. Friedmann
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**Exhibit A**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                :

In re                             :         **Chapter 11**

SEARS HOLDINGS CORPORATION, *et al.*,   :         **Case No. 18-23538 (RDD)**

                         :

           Debtors.[1]          :         **(Jointly Administered)**

                         :

-------------------------------------------------------------x

## ORDER COMPELLING TURNOVER OF ESTATE PROPERTY

Upon the motion, dated [____] (ECF No. [____]) (the "Motion")[2] of Sears Holdings

Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "Debtors"), for entry of an order compelling turnover of estate

funds, pursuant to sections 541 and 542 of chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"); and the Court having jurisdiction to decide the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion

and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

relief sought in the Motion and the opportunity for a hearing thereon having been provided in

accordance with the Amended Case Management Order; such notice having been adequate and

appropriate under the circumstances, and it appearing that no other or further notice need be

provided; and the Court having held a hearing to consider the relief requested in the Motion on

_____, 2019 (the "Hearing"); and upon the record of the Hearing, and upon all of the

proceedings had before the Court; and the Court having determined that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein and that such relief is in the

best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due

deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Motion is granted to the extent set forth herein.

2.      Pursuant to sections 541 and 542 of the Bankruptcy Code, Transform

Holdco LLC is hereby ordered and directed to turn over to the Debtors the Cook County Tax

Refund Funds due to Sears for the year 2013 currently being held by it within two (2) business

days.

3.      The Debtors and Transform are each authorized to take all actions necessary

to effectuate the relief granted in this Order.

4.      The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Order.


Dated: _____, 2019
          White Plains, New York

                                    _____
                                    THE HONORABLE ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY JUDGE