UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                       :    Chapter 11
                                                            :
SEARS HOLDINGS CORPORATION, *et al.*,                       :    Case No. 18-23538 (RDD)
                                                            :
            Debtors.[1]                                     :    (Jointly Administered)
------------------------------------------------------------x

### STIPULATION AND ORDER BY AND AMONG SELLERS, BUYER, B.H. 5665 ROSEMEAD BLVD., LLC, AND GRAZIADIO INVESTMENT COMPANY REGARDING DESIGNATION AND ASSIGNMENT OF <u>CERTAIN LEASE OF NONRESIDENTIAL REAL PROPERTY</u>

This Stipulation and Order ("**Stipulation and Order**") is made as of November 20, 2019, by and among (a) Sears Holdings Corporation and its affiliated debtors, including Kmart Corporation, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), (b) Transform Holdco LLC, as buyer (the "**Buyer**" or "**Transform**"), (c) Buyer's designee, B.H. 5665 Rosemead Blvd., LLC ("**BH**"), and (d) Graziadio Investment Company, as landlord (the "**Landlord**" and, together with the Debtors, the Buyer and BH, the "**Parties**"),

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

through their respective and duly authorized counsel of record.

### Recitals

A. Graziadio Investment Company and Kmart Corporation, a Michigan corporation ("**Tenant**"), are parties to that certain lease dated as of December 15, 1977 (as amended and/or modified, the "**Lease**") of nonresidential real property at 5665 N Rosemead Blvd, Temple City, California (Store # 3127) (the "**Demised Premises**").[2]

B. On October 15, 2018, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York.

C. On January 18, 2019, the Debtors filed and served on the applicable counterparties the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection With Global Sale Transaction* (ECF No. 1731) (the "**Initial Notice**"). The Lease was among the leases identified in the Initial Notice.

D. On February 8, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets*

---

[2] The Demised Premises are subject to that certain sublease dated as of September 18, 2014 (the "**Sublease**") by and between Tenant, as sub-landlord, and H. Demirjian, Inc. d/b/a Crown City Automotive, as subtenant (the "**Subtenant**"), and pursuant to the Sublease, Subtenant subleases a portion of the Demised Premises. The Demised Premises are further subject to that certain (i) Construction, Operation and Reciprocal Easement Agreement, dated as of August 1, 1974, between Eltinge, Graziadio & Sampson Development Co. and A.D. Clark, Inc., as recorded in the Office of the Los Angeles County Recorder on December 31, 1975 as Instrument No. 5877 in Book D6923 page 603, as amended by First Modification dated as of October 8, 1975, recorded concurrent with the Construction, Operation and Reciprocal Easement Agreement, as further amended by the Second Modification dated as of February 25, 1977, among the same parties and Colonial Properties Company, Albertson's Inc., T.C. Associates, Temple City Holding Corporation and Vornado, Inc., as recorded in the Office of the Los Angeles County Recorder on December 29, 1977 as Document No. 77-1438041 (as the same may have been heretofore assigned, amended or otherwise modified, the "**REA**"); (ii) Option, Maintenance and Management Agreement, dated October 1, 1975, as subsequently amended (the "**OMM Agreement**"); and (iii) Agreement For Operation and Maintenance of Parking Facilities, dated November 1, 1975, as subsequently amended (the "**Parking Agreement**" and, together with the REA and the OMM Agreement, the "**Lease Documents**"). The parties have recently discovered that the Sublease fails to conform to certain provisions of the Lease Documents requiring an attornment to Landlord (the "**Sublease Failure**"), which such potential default is addressed in this Stipulation and Order.

*Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith, and (IV) Granting Related Relief* (ECF No. 2507) (the "**Sale Order**"), which approved that certain asset purchase agreement, by and among the Buyer and the Debtors, dated January 17, 2019 (as amended from time to time, the "**APA**") and the sale of certain assets of the Debtors to the Buyer.

E.   In accordance with the terms of the Sale Order, the Buyer was permitted to designate Additional Contracts and Designatable Leases for assumption and assignment for up to sixty days after the Closing Date (the "**Designation Rights Period**"), which occurred on February 11, 2019.  The Debtors and the Buyer agreed to an extension of the Designation Rights Period and, on April 12, 2019, the Debtors filed the *Notice of Amendment to Asset Purchase Agreement Extending Certain Deadlines* (the "**Extension Notice**") (ECF No. 3171), which extended the Designation Rights Period to May 3, 2019 for certain Designatable Leases, including the Lease, and to May 13, 2019 for Additional Contracts.

F.   On April 2, 2019, the Court entered the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (ECF No. 3008) (the "**Assumption and Assignment Order**").

G.   On April 19, 2019, the Buyer filed the *Statement/Notice of Assumption and Assignment of Additional Designatable Leases*, designating the Lease for assumption and assignment to the Buyer or Buyer affiliate pursuant to the terms of the Assumption and Assignment Order (ECF No. 3298) (the "**Assumption Notice**"), subject to the Court's approval and the counterparties' right to object as set forth in the Assumption Notice and the Assumption and Assignment Order.

H. On May 3, 2019, the Landlord filed the *Cure Objection of Alan Robbins, Benderson Development Company LLC, Brookfield Properties REIT, Inc., Gray Enterprises, LP, Graziadio Investment Company, Gregory Greenfield & Associates, Ltd., LBA Realty LLC, LF2 Rock Creek LP, Nassimi Realty LLC, Regency Centers L.P., Site Centers Corp., Spigel Properties, The Woodmont Company, and Weingarten Realty Investors Relating to the Debtors' Notices of Assumption and Assignment of Additional Designatable Leases in Connection With Global Sale Transaction* (ECF No. 3553) (the "**Cure Objection**") and the *Objection of Alan Robbins, Benderson Development Company LLC, Brookfield Property REIT Inc., Gray Enterprises, LP, Graziadio Investment Company, Gregory Greenfield & Associates, Ltd., LF2 Rock Creek LP, LBA Realty, LLC, Nassimi Realty LLC, Realty Income Corp., Regency Centers Corp., Site Centers Corp., Spigel Properties, The Woodmont Company, and Weingarten Realty Investors to Notices of Assumption and Assignment of Additional Designatable Leases* (ECF No. 3558) (the "**Additional Objection**" and, together with the Cure Objection, the "**Objections**").

I. On May 6, 2019, the Debtors filed *Debtors' Response and Reservation of Rights With Respect to Objections to Cure Amounts and/or Assumption and Assignment of Designatable Leases* (ECF No. 3651).

J. On May 7, 2019, Transform filed (i) *Transform Holdco LLC's Omnibus Reply in Support of Assumption and Assignment of Designated Leases* (ECF No. 3654) and (ii) the first of numerous stipulated orders extending the Debtors' time under section 365(d)(4) of the Bankruptcy Code for assumption or rejection of the Lease (ECF No. 3707).

K. The Landlord, Transform and the Debtors agreed to additional stipulated orders under section 365(d)(4) of the Bankruptcy Code, which orders were entered on May 13, 2019 (ECF No. 3854), June 22, 2019 (ECF No. 4335), August 1, 2019 (ECF No. 4686), September 5,

4

EAST\170654430.1

2019 (ECF No. 5068), and October 30, 2019 (ECF No. 5534). The deadline for the Debtors to assume or reject the Lease under section 365(d)(4) of the Bankruptcy Code is currently November 30, 2019.

L.    Pursuant to the Assumption and Assignment Order and the stipulated order entered on May 13, 2019 (ECF No. 3850), the Tenant assumed the Sublease and assigned the Sublease to Transform Operating Stores LLC ("**Transform OpCo**").

M.    On August 18, 2019, the Buyer filed a reply to the Objections (ECF No. 4882).

N.    On August 22, 2019, the Court held a status conference on the proposed assumption and assignment of the Lease to Transform OpCo pursuant to the Assumption Notice and the Landlord's Objections thereto.

O.    Since that time, the Buyer and the Landlord have been negotiating a transaction with respect to the Lease. The Buyer and its designee, BH, have agreed to enter into an agreement conditioned upon the Debtors' assignment of the Lease to BH and Transform OpCo's assignment of the Sublease to BH.

P.    BH's parent is a privately owned real estate company headquartered in Los Angeles, with offices in Phoenix and Dallas, that invests in retail, office, industrial, and multi-family assets, and has a portfolio of approximately 100 assets valued at $1.5 billion located in 18 states. BH's parent has been in business for over 25 years and has specialized in projects with large capital needs. The company has a dedicated team of professionals that focus solely on construction, renovation, and property improvement.

Q.    In accordance with section 365(a) of the Bankruptcy Code, BH's parent provided to the Landlord an adequate assurance package including, among other things, (a) a narrative of BH's parent's experience in real estate development; (b) a preliminary capital expenditure budget

highlighting BH's expected costs to address the current deferred maintenance; and (c) a security deposit and a letter of credit to secure obligations under the Lease, as more particularly provided below.

R. The assumption and assignment of the Lease is integral to the Asset Purchase Agreement approved by the Sale Order, is in the best interest of Debtors and their estates, and represents the valid and reasonable exercise of the Debtors' sound business judgment. The assumption and assignment of the Lease must be approved and consummated promptly to preserve the value of the Lease and Debtors have demonstrated a good, sufficient and sound business purpose and justification for the immediate approval of the assumption and assignment of the Lease as contemplated by the Asset Purchase Agreement and the Sale Order.

S. The Buyer wishes to designate the Lease for assignment by the Debtors to BH in accordance with the agreement between the Buyer and BH, and the Landlord consents to such designation and assignment subject to the terms and conditions of this Stipulation and Order.

**IT IS THEREFORE AGREED, AND UPON THIS COURT'S APPROVAL HEREOF, IT SHALL BE ORDERED AS FOLLOWS:**

1. The Lease is an unexpired nonresidential real property lease. Pursuant to the Assumption and Assignment Order and the Assumption Notice, this Court previously authorized the Debtors under section 365(a) of the Bankruptcy Code to assume and assign the Lease to the Buyer, subject to the Landlord's right to object thereto.

2. The designation of the Lease by the Buyer in accordance with the agreement between the Buyer and BH and assignment by the Debtors to BH is hereby authorized and approved pursuant to section 365(a) of the Bankruptcy Code, effective as of the entry of this Stipulation and Order (the "**Effective Date**").

3. BH, as the Buyer's designee, shall benefit from the good faith purchaser protections afforded to the Buyer under section 363(m) of the Bankruptcy Code in the Sale Order with respect to the Lease.

4. Within two (2) business days after the Effective Date, Transform shall pay to Landlord the cure amount owed to the Landlord in the sum of Forty Nine Thousand Six Hundred Thirteen Dollars and Seventy Seven Cents ($49,613.77) (the "**Cure Amount**") in full and final satisfaction of all amounts owed to Landlord, as of November 15, 2019, pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code. Subject to payment of the Cure Amount, and except as provided in Paragraph 6 below, Landlord shall be barred from asserting any additional cure or other claims with respect to the Lease against the Debtors, the Buyer, BH, each of their affiliates, successors or assigns or the property of any of them, any default or claim existing or accruing as of the Effective Date (including any claim of default with respect to the Sublease Failure), or that any additional cure amounts are owed as a condition to assumption and assignment. In no event shall Landlord look to BH or the Debtors for any non-payment of the Cure Amount and neither BH nor the Debtors shall have liability for the Cure Amount.

5. Upon payment of the Cure Amount, neither the Debtors nor Transform shall have a claim against the Landlord for refund of any portion of such amounts, including on account of any year-end or periodic reconciliations or prepayments or credits with regarding to any items of "Additional Rent" under the Lease (the "**Potential Refund Amounts**") that might have occurred had the Lease not been assumed and assigned; however, for the avoidance of doubt, the Debtors retain the right as against Transform to any Potential Refund Amount attributable to the period prior to the Closing Date pursuant to section 9.11 of the APA.

6.     BH has provided adequate assurance of future performance under the Lease in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code, as provided further in paragraph 8 and 9 below.  Upon the Effective Date, the Lease shall be deemed to be in good standing, in full force and effect in accordance with its terms, and BH shall be fully and irrevocably vested with all rights, title and interest of the Debtors under the Lease and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to breach of the Lease occurring after the Closing Date.  BH shall be solely responsible for any liability arising and owed pursuant to the terms of the Lease from and after entry of this Stipulation and Order, and BH acknowledges and agrees that from and after the Effective Date, it shall comply with the terms of such Lease in its entirety, including any indemnification obligations expressly contained in such Lease (including with respect to events that occurred prior to the entry of this Stipulation and Order, for which liabilities or defaults were not known, liquidated or due and owing as such date, subject to the allocation of responsibility in the agreement between BH and Buyer).  The assumption by the Debtors and assignment to BH shall not be a default under the Lease.

7.     All of the requirements of sections 365(b) and 365(f), including without limitation, the demonstration of adequate assurance of future performance and payment of cure costs required under the Bankruptcy Code have been, or will be, satisfied for the assumption of the Lease by the Debtors, and the assignment of the Lease by the Debtors to BH, and compliance by BH with the requirements of paragraphs 8 and 9.

8.     BH has satisfied its adequate assurance of future performance requirements with respect to the Lease, having presented sufficient evidence regarding its business plan, the experience and expertise of its management, and demonstrated it is sufficiently capitalized to comply with the necessary obligations under the Lease.  BH shall, as further adequate assurance:

(a) deliver, within fifteen (15) days of the Effective Date, a clean, irrevocable and unconditional letter of credit in the sum of One Hundred Ninety Thousand Dollars ($190,000.00) as security for BH's performance of the covenants and obligations for the remaining term of the Lease (the "**Letter of Credit**"). Such Letter of Credit shall permit partial draws, be in a commercially reasonable form reasonably acceptable to Landlord, issued by and drawn upon any commercial bank reasonably acceptable to Landlord with offices for banking purposes in Los Angeles County, California, and either (i) expire on the date which is sixty (60) days after the expiration or earlier termination of the Lease (the "**LC Date**"), or (ii) be automatically self-renewing until the LC Date.

(b) deposit with Landlord, within five (5) days of the Effective Date, the additional sum of Eighty Five Thousand Dollars ($85,000.00) (the "**Security Deposit**"), to be held by Landlord (without obligation or liability for payment of interest thereon) as security for the faithful performance by BH of all of the terms of this Lease to be observed and performed by BH. The Security Deposit shall not be mortgaged, assigned, transferred or encumbered by BH without the prior written consent of Landlord. Landlord shall not be required to keep the Security Deposit separate from its general funds. Should Tenant at any time during the Term of this Lease be in default or breach of any provision of this Lease, Landlord may, at its option, and without prejudice to any other remedy which Landlord may have, apply the Security Deposit, or a portion thereof as Landlord may deem necessary, and apply same toward payment of Basic Rent, Additional Rent or to any loss or damage sustained by Landlord due to the default or breach on the part of BH, without regarding to any limitation that may otherwise be contained in California Civil Code section 1950.7. In such event, Landlord shall resort to the Security Deposit prior to any draw on the Letter of Credit. Within five (5) days after written demand by Landlord, BH shall deposit with Landlord

9

cash in an amount sufficient to restore the Security Deposit to the original sum deposited. Subject to any lawful deductions, Landlord shall refund the Security Deposit in full at the end of the Lease term.

9. As further adequate assurance of future performance, BH agrees that if, at any time during the remaining term of the Lease, BH desires to or is required to make any repairs, alterations, additions, improvements, or utility installations to the Demised Premises, and the estimated cost of such work exceeds Seventy-Five Thousand Dollars ($75,000.00), Landlord may require BH, at BH's sole cost and expense, to obtain and provide to Landlord a performance and completion bond, in form and substance reasonably satisfactory to Landlord and issued by a surety authorized to do business in the State of California in an amount equal to one and one-half (1-1/2) times the estimated cost of such improvements, to insure Landlord against potential liability for mechanics and materialmen liens and to ensure completion of the work.

10. Upon the Effective Date, the Debtors and their estates shall be relieved of any liability for breach of such Lease pursuant to section 365(k) of the Bankruptcy Code, and BH shall be responsible for any costs or expenses (including, without limitation, for royalties, rents, utilities, taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent) arising under the Lease attributable to the portion of such calendar year beginning on the Effective Date. The Buyer shall be responsible for any costs or expenses (including, without limitation, for royalties, rents, utilities, taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent) occurring from the Closing Date to the Effective Date. For the avoidance of doubt, BH will perform under and in accordance with the terms of the Lease from and after entry of this Stipulation and Order.

11. Notwithstanding any provision in the Lease, BH shall be permitted to (i) use the Demised Premises for BH's use (or such other use as BH determines) in accordance with the Lease Documents; (ii) perform alterations and remodeling of the Demised Premises consistent with the terms of the Lease and BH's use; and (iii) replace or erect typical building façade signs (the height of the channel letters of such sign shall in no event be less than the height of the channel letters of any current sign on the Demised Premises) and insert customary and typical signage on the shopping center's multi-panel pylon in place of any such pylon panel sign of Tenant (it being understood that the size of the space on the pylon for such sign shall be equal to the size of the space allocated to Tenant's current sign), if any, and all of such rights being granted to BH shall only be those rights owned and/or possessed by Tenant.

12. Nothing in this Stipulation and Order shall be deemed to authorize the assignment of the Lease free and clear of (and shall not extinguish or otherwise diminish) the Lease Documents.

13. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Stipulation and Order.

14. To the extent required by the express terms of the Lease, within ten (10) business days of the Effective Date, BH shall provide Landlord with any evidence or certificates of insurance that may be required by the terms of the Lease. Nothing in this Stipulation and Order shall waive, withdraw, limit or impair any claims that Landlord may have against the Debtors, the Buyer or their affiliates, successors or assigns with respect to claims for indemnification for third parties' claims arising from or related to the use and occupancy of the Demised Premises prior to the Effective Date solely to the extent of available occurrence-based insurance coverage that named Landlord as an additional insured; <u>provided</u>, for the avoidance of doubt, that Landlord may

EAST\170654430.1

pursue such claims only against the insurer(s) that named the Landlord as an additional insured and solely to the extent of such coverage.

15. Notwithstanding entry of this Stipulation and Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

16. The Parties are authorized to take all actions they deem necessary to effectuate the relief granted in this Stipulation and Order.

17. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Stipulation and Order.

18. This Stipulation and Order shall be deemed effective and in full force and effect on the Effective Date.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), or 7062 or any applicable provisions of the Local Rules, this Stipulation and Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in assuming and assigning the Lease in connection with this Stipulation and Order.

19. This Stipulation and Order shall inure to the benefit of and shall be binding upon the Parties, their successors, and assigns.

20. This Stipulation and Order may be executed in one or more counterparts, which collectively shall form one and the same agreement.  Any of the Parties may execute this Stipulation and Order by signing any such counterpart and each of such counterparts (whether an original or a copy) shall for all purposes be deemed an original.

21. In the event that this Stipulation and Order is not approved by the Court or is not executed by the Parties: (i) nothing herein shall be used against any of the Parties hereto for any

reason and (ii) the obligations of the Parties under this Stipulation and Order shall be null and void, and with the exception of this paragraph, the Parties' respective rights and obligations under applicable law shall remain unaffected by this Stipulation and Order.

22. The Court shall have jurisdiction over any action or proceeding arising out of, or relating to, this Stipulation and Order, including, without limitation, with respect to the delivery of the Cure Amount and adequate assurance of future performance.

Dated: November 20, 2019

| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP** | **DLA PIPER LLP (US)** |
| By: /s/ Jacqueline Marcus | By: /s/ Rachel Ehrlich Albanese |
| Jacqueline Marcus<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007 | Richard A. Chesley<br>Rachel Ehrlich Albanese<br>R. Craig Martin<br>1251 Avenue of the America, 27th Floor<br>New York, NY 10020<br>Telephone: (212) 335-4500 |
| *Counsel for the Debtors and Debtors in Possession* | *Counsel for the Buyer* |
| **ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP** | **SCHNADER HARRISON SEGAL & LEWIS LLP** |
| By: /s/ Ivan M. Gold | By: /s/ Nicholas Malito |
| Ivan M. Gold<br>Three Embarcadero Center, 12th Floor<br>San Francisco, CA 94111-4074<br>Telephone: (415) 837-1515 | Scott R. Kipnis<br>Nicholas Malito<br>140 Broadway, Suite 3100<br>New York, NY 10005-1101<br>Telephone: (212) 973-8080 |
| *Counsel for the Landlord* | *Counsel for BH* |

**IT IS SO ORDERED.**

Dated: White Plains, NY
     December 2, 2019

/s/ Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE

EAST\170654430.1