UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                            :

In re                                                 :             Chapter 11 Case No.

SEARS HOLDINGS CORPORATION, *et al.*,   :             18-23538 (RDD)
                        Debtors.[1]          :
                                                 :             **(Jointly Administered)**
                                                 :
------------------------------------------------------------------- X

## OBJECTION OF TRANSFORM HOLDCO LLC TO MOTION OF DEBTORS TO COMPEL TURNOVER OF ESTATE PROPERTY

1.      Transform Holdco LLC ("Transform," and together with the Debtors, the "Parties") respectfully submits objection to the *Motion of Debtors to Compel Turnover of Estate Property*, ECF No. 6084 (the "Motion").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC  (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).

### I.    **Preliminary Statement**

2.    The relief sought in the Motion is unnecessary, premature and contrary to this Court's prior rulings.  At the July 11 Hearing,[2] after entertaining arguments on *Debtors' Supplemental Motion to Enforce the Asset Purchase Agreement*, ECF No. 4029 (the "Motion to Enforce"), the Court issued its ruling that the Parties would have ten days to come to a resolution on the reconciliation of amounts of cash held in Debtors' legacy cash management system that may be allocated, as applicable, to Debtors or to Transform (the "Cash Reconciliation"), and that barring an agreement the Court would appoint an examiner.  That decision is law of the case.  Subsequently, after numerous attempts and extensions of time to allow for further discussions, the Parties were unable to come to a resolution concerning the Cash Reconciliation and have now submitted an agreed order for the appointment of an expert (the "Expert") who is ready to begin as soon as the order is entered.  Pursuant to that agreement, the Expert will have 45 days from the entry of that order to submit a report on the outcome of the Cash Reconciliation.

3.    Apparently dissatisfied with the Court's decision, Debtors now seek to reopen the litigation, retreading dismissed arguments to claim the immediate turnover of one category of the cash items to be reconciled, the Cook County Tax Refunds, separate and apart from and in advance of the reconciliation of the other items.  They argue – against the law of the case, logic and the working understanding of the Parties – that such amounts are not subject to the Cash Reconciliation.  The evidence shows otherwise.  The Court was indeed correct the first time, and should not now revise its prior ruling or give piecemeal advantage to the Debtors by ordering the immediate turnover of the Cook County Refunds while amounts owed to Transform await the Cash Reconciliation by the Expert.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

## II. Argument

a. **Debtors' Request for Turnover of the Cook County Tax Refunds Runs Afoul of the Court's Decision on Cash Reconciliation.**

4. The Motion calls for the Court to retread old ground. As the Court will recall, at the time of Closing, and in order to permit the transaction to close, the Parties agreed that a substantial portion of the Debtors' cash management system would be transferred from Debtors to Transform. Such agreement was necessary for the transaction to close on the timetable demanded by Debtors and necessary for Debtors to be able to satisfy the DIP requirements. It was not practicable for Debtors to retain their old accounts, and Transform to open an entirely new set of accounts and related cash management systems. Were the parties to have followed a more cumbersome process the transaction would never have closed, to the great disadvantage of Debtors and their creditors. *Declaration of Mohsin Y. Meghji in Support of Debtors' (I) Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property, and (II) Response to Transform Holdco LLC's Motion to Assign Matter to Mediation*, ECF No. 2797 ("First Meghji Decl."), ¶¶ 6-7; *Declaration of Andrew D. Hede in Support of Transform Holdco LLC's Response to Debtors' Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property and Reply in Further Support of Its Motion to Assign Matter to Mediation*, ECF No. 2868 ("First Hede Decl."), ¶ 7.

5. Thus, it was inherent in the nature of the transaction between Debtors and Transform, and with the transfer of the cash management system, that there would be offsetting credits and debits. Property of Debtors would end up being deposited into the cash management system. At the same time, checks that were written by Debtors pre-closing and other obligations of Debtors would be debited against the cash management system. First Meghji Decl. ¶ 9; First

3

Hede Decl. ¶ 8.  In theory, those amounts would offset one another.  But theory is not always the same as fact and, for that reason, the Parties devised a reconciliation process to be carried out by Ernst and Young ("EY") to allocate assets in the cash management system to the appropriate entity post-closing.  *See* First Meghji Declaration, Ex. A; *Debtors' (I) Motion (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property, and (II) Response to Transform Holdco LLC's Motion to Assign Matter to Mediation*, ECF No. 2796, ¶ 15.

6. The Court first heard argument on the Parties' disputes with respect to the cash management system on April 18, 2019.  In *Debtors' (I) Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property, and (II) Response to Transform Holdco LLC's Motion to Assign Matter to Mediation*, ECF No. 2796, Debtors argued they were entitled to the turnover of $41.3 million in credit card proceeds and cash-in-transit.  In response, Transform argued "that the amount ultimately due will be substantially reduced by Transform's payment of checks issued by the Debtors prior to Closing," and that "[p]ermitting the Debtors to reap the benefits of the reconciliation process without accounting to Transform would create the very inequitable result that recoupment is intended to prevent."  *Transform Holdco LLC's Response to Debtors' (I) Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property and Reply in Further Support of Its Motion to Assign Matter to Mediation*, ECF No. 2864, ¶¶ 44-45.  While the Court did not resolve the motion as to the cash-in-transit, it did note that "adjusting accounts through a reconciliation process, which is recoupment, . . . is not subject to the automatic stay."  Hr'g Tr. 39:16-18, Apr. 18, 2019.

4

7. In their *Debtors' Brief in Opposition to Transform Holdco LLC's Adversary Complaint and in Further Support of Debtors' Supplemental Motion to Enforce the Asset Purchase Agreement*, ECF No. 4430 (the "July 3 Submission"), Debtors specified that of the monies that they claimed a right to that had been deposited into the cash management system, $5,945,069 came from Estate checked deposited into the account post-Close. Transform responded that those credits to the cash management system should be offset by debits to the cash management system that properly were chargeable to Debtors. Specifically, Transform noted that the credits that favored Transform were offset by debits that disfavored Transform in the aggregate amount of approximately $36 million, including:

> (i) estate checks that were written prior to Closing, but had not yet cleared as of Closing, in an amount of roughly $13.8 million, (ii) corporate card charges for pre-Closing transactions that Transform has paid post-Closing in an amount of roughly $3.2 million, (iii) taxes paid by Transform in respect of pre-Closing charges in an amount of roughly $2.8 million, (iv) telecom expenses of roughly $1.9 million paid by or to be paid by Transform in respect of pre-Closing charges, (v) refunds issued to customers for pre-Closing orders that were cancelled post-Closing in an amount of roughly $9.6 million, (vi) March rent payments related to GOB Stores paid by Transform in an amount of roughly $1.6 million, (vii) Citi L/C Facility letter of credit draws in an amount of roughly $1.6 million, (viii) net TSA fees owed from Debtors to Transform in an amount of roughly $1.0 million, and (ix) $1.1 million for a KERP payment.[3] *Transform Holdco LLC's Brief in Support of the Adversary Complaint and in Opposition to Debtors' Supplemental Motion to Enforce the Asset Purchase Agreement*, ECF No. 4464 ("Transform's Brief in Support"), ¶ 114.

8. The Court addressed and resolved those issues at the July 11 Hearing. It heard Transform's argument that what Debtors were asking for was a "one-sided resolution." *See* Hr'g. Tr. 191:17-19, July 11, 2019 (Ms. Mooney: "Well, right now, what the Debtors are asking for is a one-sided resolution . . . ." The Court: "I understand that."). And it ruled that the issues before it were best treated in the first instance as "accounting issue[s]" and that the Parties would

---

[3] Transform acknowledges that these amounts may have changed and are subject to further change as the Cash Reconciliation progresses.

5

"have 10 days to bring this to a head," and if they could not resolve the issues in that time, the Court would appoint an examiner to determine the amounts going in favor of each party and to determine the sum of those amounts that would be payable either to Debtors or to Transform. Hr'g. Tr. 195:15-23, July 11, 2019.

9. Since the July 11 Hearing, Transform has acted in accordance with the Court's direction. It attempted to reach a resolution with Debtors and, when Debtors failed to agree to the proposals made by Transform, it worked to identify an expert and to craft an order for appointment of that expert that would satisfy Debtors. That order has now been submitted to the Court, and the Expert is ready to begin its work.

10. The Court's decision at the July 11 Hearing is now law of the case. Debtors unsuccessfully argued that one side of the cash management issue favoring them should be resolved ahead of the other side favoring Transform and the Court ruled on that issue. Debtors' Motion offers no basis for the Court to alter that decision. *See DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) (noting "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation omitted)). Thus, the Court should adhere to its prior Order and deny Debtors' motion. *See In re Highland Fin. Corp.*, 216 B.R. 109, 113 (Bankr. S.D.N.Y. 1997) ("Under the law of the case doctrine, a court may not address issues that have been litigated and decided in earlier proceedings in the same case.").

    **b.**    **The Cook County Tax Refunds Are Subject to the Cash Reconciliation.**

11. Debtors assert, without basis, four months after the July 11 Hearing, that the Cook County Tax Refunds were not included as part of the Cash Reconciliation. They incorrectly allege that "[a]fter months of requesting that Transform turn over the 2013 Tax

6

Refund to the Debtors, on November 7, 2019, the Debtors formally demanded that Transform transfer the full amount of the 2013 Cook County Tax Refund to the Debtors by November 13, 2019," Motion at ¶ 10. But that is not true.

12. Debtors' July 3 Submission itself made clear that one of the issues subject to the dispute were Estate checks deposited into the cash management system post-Close and correspondence between Debtors and Transform further confirms that those sums included tax appeal refunds and tax refunds.

13. Specifically, on April 16, 2019, Debtors first inquired about "post-Closing checks received by Transform for pre-Closing amounts owed to Debtors." *Declaration of Andrew Weaver in Support of Transform Holdco LLC's Brief in Support of the Adversary Complaint and in Opposition to Debtors' Supplemental Motion to Enforce the Asset Purchase Agreement*, ECF No. 4463 (the "Weaver Decl."), Ex. M. Debtors followed up on May 1, 2019 with a revised schedule of information requests concerning the Cash Reconciliation, listing among these requests "[r]econciliation of checks that Transform deposited into their bank accounts after the transaction close that may relate to Estate operations." *Id.*, Ex. J.

14. On May 13, 2019, counsel to Transform responded to Debtors' request for information concerning the Cash Reconciliation including information on deposited checks, writing that "EY is working to provide information regarding post-Closing checks received by Transform for pre-Closing Amounts owed to Debtors." *Id.*, Ex. M. Counsel responded again on May 20, 2019 noting that a "[r]econciliation of checks that Transform deposited" was "[i]n progress." *Id.*, Ex. O. Further, on June 14, 2019, Transform sent a schedule entitled "Post-Close Reconciliation Items" listing $5.9 million in checks – the same sum as in the July 3 Submission, including checks for "[t]ax appeal refund[s]" and "[t]ax refunds." *Id.*, Ex. R at 16. That

7

schedule and the subsequent submission gives the lie to the proposition that this issue was not squarely encompassed within the Court's prior order. It was.

15. Indeed, not only did Debtors raise the issue of post-March 18 checks deposited in Transform's accounts – which would include the Cook County Tax Refunds – in their briefing on the Cash Reconciliation for their Motion to Enforce, *see* July 3 Submission, ¶ 93, Debtors also raised the issue in oral argument concerning the Cash Reconciliation before the Court. *See* Hr'g. Tr. 180:24-25, July 11, 2019 (Mr. Friedmann: "You heard today already about the Estate checks after March 18, 2019."); *id.* 181:18-20 (Mr. Friedmann: "Mr. Hede was aware of at least one check, and I'm certain it's a lot more than that, and that's a reconciliation that has to happen."). Further, the Court specifically referenced post-March 18 checks in its decision on the Cash Reconciliation, noting that the Parties should "pick a reasonable time for the post-March 18th [checks], I'm thinking June or July." *Id.* 196:5-6.

16. Debtors' accusation that Transform is only now disingenuously asserting that the Cook County Tax Refunds are subject to the Cash Reconciliation therefore rings hollow. Rather, the evidence is clear that since shortly after the Closing, the Parties understood that checks belonging to Debtors but deposited with Transform would be subject to offsets for amounts owed by Debtors to Transform. This was reflected in the Parties' briefing and in the Court's ruling on the Cash Reconciliation and the Cook County Tax Refunds are therefore subject to that ruling.

17. Lastly, Debtors' attempt to distinguish the Cook County Tax Refunds from other items in the Cash Reconciliation borders on the specious. Debtors argue that 1) the Cook County Tax Refunds do not represent a debt between Debtors and Transform and therefore are not subject to setoff and 2) an examiner is not needed to review these checks because they clearly belong to Debtors. These supposed distinctions are nothing of the sort. First, the set-off

8

obligation inheres in the fact that both the duty of Transform to return Debtor funds deposited into the cash management system post-Close and the duty of Debtors to pay Transform for the funds debited from the cash management system that should have been paid by Debtors stem from the same underlying obligation – the obligation between the Parties created when they made the decision to transfer the cash management system that whoever between Debtors and Transform would have improperly benefitted from the transfer of that system would pay the other the aggregate amount by which they benefitted.  The Parties' agreement was not that Transform would pay over to Debtors the checks deposited post-Close without being able to set off those amounts with the amounts that were due to Transform.  Second, Debtors' argument – attempting to single out some Estate checks from others – would render the entire Cash Reconciliation as well as this Court's prior Order illusory.  Of the amounts to be reconciled, some might favor Debtors while others clearly favor Transform.  The Court's decision was not to address each of these piecemeal.  But by asking the Court to address some checks that they contend favor them, without addressing the other items that favor Transform, Debtors are trying to do precisely that.  Debtors, like Transform, can wait for the Expert to complete the Cash Reconciliation.

### III.    Conclusion

18. For the reasons stated above, the Court should deny the Motion.

Dated:  December 6, 2019  **CLEARY GOTTLIEB STEEN &**
       New York, New York  **HAMILTON LLP**

*/s/ Lewis J. Liman*
Lewis J. Liman
Sean A. O'Neal
Luke A. Barefoot
Abena A. Mainoo
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

*Counsel for Transform Holdco LLC*