Hearing Date and Time:  December 13, 2019 at 10:00 a.m. (Eastern Time)

| | |
|---|---|
| **WEIL, GOTSHAL & MANGES LLP** | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| 767 Fifth Avenue | One Bryant Park |
| New York, New York 10153 | New York, New York 10036 |
| Telephone: (212) 310-8000 | Telephone: (212) 872-1000 |
| Facsimile: (212) 310-8007 | Facsimile: (212) 872-1002 |
| Ray C. Schrock, P.C. | Ira S. Dizengoff |
| Jacqueline Marcus | Philip C. Dublin |
| Garrett A. Fail | Sara L. Brauner |
| Sunny Singh | Zachary D. Lanier |
| | |
| *Counsel to the Debtors and Debtors in Possession* | *Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| **In re** | : | Chapter 11 |
| | : | |
| **SEARS HOLDINGS CORPORATION, et al.,** | : | Case No. 18-23538 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

---

# JOINT RESPONSE OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF THE FOURTH PLAN SUPPLEMENT IN CONNECTION WITH MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF SEARS HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365) ); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Sears Holdings Corporation and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")[2] and the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Creditors' Committee"), by and through their respective undersigned counsel, hereby file this joint response (the "Response") to the *Objection of Orient Craft Limited, Eric Jay Ltd, and Stolaas Company to Debtors' Fourth Plan Supplement in Connection with Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 5517] (the "Objection") and the *Joinder by Winners Industry Co., Ltd to Objection of Orient Craft Limited, Eric Jay Ltd, and Stolaas Company to Debtors' Fourth Plan Supplement in Connection with Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 6009] (the "Joinder" and, together with the Objection, the "Objections" and, the underlying claimants, the "Objectors") and in further support of the *Debtors' Fourth Plan Supplement in Connection with Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* [ECF No. 5335] (the "Litigation Trust Board Compensation Notice"). In support of this Response, the Debtors and the Creditors' Committee respectfully state as follows.

**PRELIMINARY STATEMENT**

1. The Plan remains the most viable path to maximizing creditor recoveries in these chapter 11 cases. While consummation necessarily will require resolution of certain ongoing litigation—and an attendant but manageable delay—confirmation of the Plan has, as intended, minimized the estates' ongoing administrative expense accrual and facilitated the immediate

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief* [ECF No. 5370] (the "Confirmation Order") or the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 5370-1] (the "Plan"), as applicable.

2

prosecution of the Preserved Causes of Action for the benefit of creditors. Indeed, confirmation enabled the Creditors' Committee—subject to the Board Members'[3] oversight, direction and approval—to file an amended complaint in the adversary proceeding, *Sears Holdings Corp. v. Lampert* [Adv. Pro. No. 19-08250, ECF No. 52] (the "<u>First Amended Complaint</u>"), which added 23 additional counts and 26 additional defendants to the original complaint filed by the Restructuring Subcommittee. Further, confirmation also enabled the implementation of the Administrative Expense Claims Consent Program, which is intended to reduce protracted litigation and secure a path towards consummation. The Debtors' decision to seek Plan confirmation when they did resulted from extensive negotiations with the Creditors' Committee, administrative creditors and other parties in interest and was a decision this Court characterized as "entirely correct." *See* Oct. 7, 2019 Hr'g Tr. 185:24.

2. In connection with Plan negotiations, the Debtors and the Creditors' Committee engaged in a rigorous process over a period of several months to select Board Members that would be ideal stewards for these estates. The Board Members' identities were disclosed over six months ago, long before the Confirmation Hearing. No party raised any issue with respect to their selection, and rightly so—collectively, the Board Members bring decades of extensive restructuring experience in the most complex chapter 11 cases, including serving on the boards of dozens of post-confirmation liquidating and litigation trusts and, in the case of Messrs. Carr and Transier, who have served as independent members of the Debtors' Restructuring Committee throughout these chapter 11 cases, deep familiarity with the events giving rise to the Specified

---

[3] As set forth in the Plan, the initial Board Members are: (a) Patrick J. Bartels; (b) Alan J. Carr; (c) Eugene I. Davis; (d) William L. Transier; and (e) Raphael T. Wallander. Prior to the Effective Date, the Board Members serve as the Litigation Designees and are charged with overseeing the Debtors' and the Creditors' Committee's joint prosecution of the Jointly Asserted Causes of Action. For ease of reference, such individuals are referred to herein as Board Members irrespective of the applicable time period.

3

Causes of Action. The Debtors and the Creditors' Committee remain confident that the Board Members' expertise and unique qualifications will be invaluable in maximizing creditor recoveries.

3.  After agreeing upon the selection of the Board Members, the Creditors' Committee, with the assistance of their advisors, took the lead on formulating an appropriate compensation package for the Board Members, and after extensive, good faith and arm's length negotiations, arrived at a competitive compensation package (the "Proposed Compensation")[4] geared towards achieving two primary goals. *First*, there should be reasonable base compensation that properly compensates the Board Members for the difficult work needed to administer the Liquidating Trust and manage the Preserved Causes of Action. *Second*, as most of the value in the Debtors' estates' comprises the unliquidated Preserved Causes of Action, the compensation should include a meaningful contingent component to align the interests of the Board Members with the interests of the beneficiaries of the Preserved Causes of Action, *i.e.*, the Debtors' creditors. With these objectives and the unique circumstances of these chapter 11 cases in mind, the Debtors, the Creditors' Committee and the Board Members agreed upon the Proposed Compensation. The Proposed Compensation represents a reasonable exercise of business judgment by the Creditors' Committee and the Debtors.

4.  Nonetheless, and without legal or factual support, the Objectors characterize the Proposed Compensation as "excessive and unwarranted." Objection ¶ 3; Joinder ¶ 2. Apparently, the Objectors will be satisfied only if the Board Members receive *no* contingent compensation at

---

[4] The Proposed Compensation, which comprises annual base compensation of $80,000 per Board Member and various contingent payouts based upon gross litigation proceeds, was disclosed in the Litigation Trust Board Compensation Notice.

all—but that is both unreasonable and unrealistic. To date, the Objectors have declined to propose any reasonable modifications to the Proposed Compensation, despite ample opportunity to do so.[5]

5.  The Objectors fail to raise a single legitimate concern with respect to the Proposed Compensation. Instead, they have focused exclusively on making unfounded insinuations that the Board Members may be conflicted or that the process for determining their compensation was somehow tainted. In this respect, it is worth noting that the Board Members will receive *no* contingency fee payments until the Debtors' estates or the Liquidating Trust recovers in excess of $150 million from the Preserved Causes of Action—an amount that, together with proceeds from the estates' Other Assets, likely will exceed the Debtors' administrative claims pool. In other words, if the Objectors prevail in establishing their entitlement to administrative expense claims, the Objectors likely will have recovered the full amount of their claims before the Board Members ever receive a single dollar of contingent compensation.[6] Indeed, the Objections are nothing more than thinly-guised attempts to impugn the estates' fiduciaries' integrity and get a second (and procedurally improper) chance to litigate confirmation issues that are long moot. Accordingly, the Debtors and the Creditors' Committee respectfully request that the Court overrule the Objections and approve the Proposed Compensation.

---

[5] Notably, the Debtors and the Creditors' Committee received an informal letter from one of the estates' largest creditors seeking potential limited modifications to the Proposed Compensation, which proposed changes would have *increased* the contingent compensation component. The Creditors' Committee engaged with, and provided a thorough response to this creditor. The creditor declined to file an objection.

[6] As set forth in further detail herein with respect to the unsecured claims pool, based on the Debtors' assumptions, the Debtors and the Creditors' Committee believe that the benefits of engaged and active Board Members outweigh the costs.

**RESPONSE**

**A.    The Proposed Compensation Is Appropriate and Reasonable Under the Circumstances**

6.     The Proposed Compensation is not only appropriate and reasonable, but also aligns the interests and incentives of the Board Members with those of the beneficiaries of the Preserved Causes of Action.  As such, the process of determining and setting such compensation was a sound exercise of business judgment. *See, e.g.*, *In re Adelphia Communs. Corp.*, No. 02-41729, 2003 Bankr. LEXIS 1281, at *3 (Bankr. S.D.N.Y. Mar. 4, 2003) (applying the business judgment standard in approving the retention and compensation of senior management); *In re Glob. Home Prod.'s, LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) ("Compensation issues are normally governed by the business judgement standard") (citation omitted).

7.     The Objectors argue, without any legal or factual support for their assertions, that the Proposed Compensation is "excessive and unwarranted."  Objection ¶ 3; Joinder ¶ 2.  The Objectors' sole support for this assertion appears to be vague implications throughout the Objections that the identity of the Board Members and their Proposed Compensation somehow were determined by improper means. *See e.g.*, Objection ¶ 4.  Accordingly, before filing this Response and in an effort to resolve the Objections, the Creditors' Committee's advisors engaged the Objectors in numerous discussions to correct these misconceptions and provide additional information regarding how the parties determined the Proposed Compensation.  Unfortunately, these efforts were unsuccessful.

8.     For the benefit of the Court and for the sake of complete transparency, the process of selecting the Board Members and determining the Proposed Compensation was as follows:

- Prior to and after entry into the Creditors' Committee Settlement, the Debtors and the Creditors' Committee discussed and vetted the individuals who would comprise the Liquidating Trust Board.  As the Court is aware, the identity of

6

    these individuals was a matter of key concern to the Creditors' Committee.[7] The identities of the Board Members were announced on June 28, 2019, five months before the Confirmation Hearing, following agreement on the Creditors' Committee Settlement and a mediation session overseen by Honorable Shelley C. Chapman. *See* ECF No. 4390.

- In view of the unique facts and circumstances of these chapter 11 cases (and in recognition of the Board Members' expertise and qualifications), the Debtors and the Creditors' Committee carefully drafted the Liquidating Trust Agreement to require active engagement by the Board Members through expansive powers and duties—more in line with a traditional trustee role than simply a board oversight committee—including requiring Board Member involvement in *all* negotiations, settlements and litigation actions undertaken by the Liquidating Trust.[8] Specifically, the Plan and Liquidating Trust Agreement make clear that the Board Members will be actively engaged in the actions of the Liquidating Trust to ensure maximum recoveries for creditors.

- Between the disclosure of the Board Members on June 28, 2019 and the Confirmation Hearing on October 3, 2019 and October 7, 2019, the Creditors' Committee and the Board Members engaged in negotiations regarding an appropriate compensation package commensurate with the Board Members' roles. This lengthy, iterative process was, in part, the result of the many contingencies the Debtors and the Creditors' Committee needed to resolve before pursuing confirmation (and, thus, before it made sense to agree to any compensation structure).

- Prior to the Confirmation Hearing on October 7, 2019, and following numerous discussions, the Board Members' contingency compensation was finalized and disclosed in the Litigation Trust Board Compensation Notice.

9.     In short, the parties conducted the process for selecting the Board Members and determining the Proposed Compensation in good faith and at arm's length, and the Debtors and

---

[7] *See Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for an Order (I) Approving Disclosure Statement; (II) Establishing Notice and Objection Procedures for Confirmation of the Plan; (III) Approving Solicitation Packages and Procedures for Distribution Thereof; (IV) Approving Forms of Ballots and Establishing Procedures for Voting on the Plan; and (V) Granting Related Relief* [ECF No. 3995]. In connection with the Creditors' Committee Settlement, the Debtors and the Creditors Committee determined that the Debtors would select two of the Board Members (Messrs. Carr and Transier) and the Creditors' Committee would select the remaining three (Messrs. Bartels, Davis and Wallander).

[8] The Liquidating Trust Agreement provides that *all* non-ministerial decisions require the approval of the Liquidating Trust Board in the exercise of the Liquidating Trust Board's reasonable business judgement. *See* Liquidating Trust Agreement §§ 6.2-6.5 [ECF No. 5295]. Accordingly, in performing their fiduciary duties, the Board Members will be reviewing and analyzing all potential claims and settlement negotiations and will play an active role in all non-clerical issues arising out of the litigation and other Liquidating Trust matters.

7

Creditors' Committee approved the Proposed Compensation in a reasonable exercise of business judgment.

10. The most apt comparison for the Board Members' role and compensation is that of a chapter 7 trustee. Indeed, a comparison to the potential fees that would be paid to a chapter 7 trustee if these cases were to convert (notably, an outcome pushed by various administrative creditors, including one of the Objectors)[9] is revealing. Bankruptcy Code section 326(a) entitles a chapter 7 trustee to a statutory maximum of 3% of distributable proceeds in excess of $1 million. 11 U.S.C. § 326(a). In the chapter 7 context, the Debtors' Liquidation Analysis assumed $236 million in distributable proceeds, entitling a chapter 7 trustee to approximately $7 million in fees—and, of course, the actual distributable proceeds could be far in excess of the Debtors' estimates. *See* Ex. E-1, Liquidation Analysis (Plan Settlement) [ECF No. 4478].

11. By contrast, the Board Members' contingency compensation is limited by both source and amount. *First,* unlike a chapter 7 trustee's statutory entitlement to recover from all distributable proceeds, the Board Members will receive contingency compensation based solely on recoveries from the Preserved Causes of Action and not from any of the estates' Other Assets. Further, during the pre-Effective Date period, the Board Members have agreed that no preference action recoveries will be used in calculating their contingency compensation. *Second*, the Board Members will not receive *any* contingency compensation until an excess of $150 million in gross proceeds is recovered from the Preserved Causes of Action (at which initial threshold amount, each Board Member's percentage share will be 1.5%)—likely after all of the Debtors'

---

[9] Eric Jay Ltd. previously joined an objection that requested the Court to convert these chapter 11 cases to chapter 7. *See Joinder By Eric Jay Ltd to Supplemental Objection of Mien Co. Ltd. et al to Confirmation of the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and to Terminate Exclusivity* [ECF No. 5285].

8

administrative claims are paid in full.[10]  Indeed, it is not until recoveries exceed $450 million that the Board Members will receive a 3% share of those proceeds.  The following chart illustrates potential contingency payouts for the Board Members:

**Proposed Compensation to Board Members Based on Litigation Proceeds**

($ in thousands)

| | | Gross Litigation Proceeds Recovered | | | | |
|---|---|---|---|---|---|---|
| | | $ 150,000 | $ 250,000 | $ 350,000 | $ 450,000 | $ 550,000 |
| Sharing Allocation | 0.0% for $0M - $150M | $ - | $ - | $ - | $ - | $ - |
| | 1.5% for $150M - $250M | – | 1,500 | 1,500 | 1,500 | 1,500 |
| | 2.0% for $250M - $350M | – | – | 2,000 | 2,000 | 2,000 |
| | 2.5% for $350M - $450M | – | – | – | 2,500 | 2,500 |
| | 3.0% for $450M + | – | – | – | – | 3,000 |
| **Total (Aggregate)** | | $ - | $ 1,500 | $ 3,500 | $ 6,000 | $ 9,000 |
| **Total (Per Member)** | | $ - | $ 300 | $ 700 | $ 1,200 | $ 1,800 |

12.     The high recovery threshold (*i.e.*, any dollar in excess of $150 million from the Preserved Causes of Action) required before any contingency payment is made ensures appropriate alignment of the interests of the Board Members with the interests of creditors.  Importantly, this initial $150 million threshold also minimizes any incentives to settle the Preserved Causes of Action at a discount to their true value.  Instead, the Proposed Compensation incentivizes the Board Members to pursue vigorously the Preserved Causes of Action and maximize value for the benefit of all creditors.[11]

---

[10] As testified to at the Confirmation Hearing, the Debtors have estimated the amount of remaining administrative expense claims to be between $140 and $205 million.  *See Declaration of William Murphy in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliates* [ECF No. 5149] (the "Murphy Declaration") ¶¶ 29-45.  Excluding recoveries from the Preserved Causes of Action, the Debtors' estimated other potential sources of recovery to total $180 million.  *Declaration of Brian Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliates* [ECF No. 5148] ¶¶ 55-61.

[11] The Objections do not raise any issue with the proposed annual $80,000 base compensation for each Board Member.  The Debtors and the Creditors' Committee believe this is appropriate annual compensation for the Board Members to perform the necessary administrative work prior to and following the Effective Date of the Plan.  In light of the Objections, no payments have yet been made to the Board Members in their capacity as such, despite the Board Members performing significant work in overseeing and directing the preparation of the First Amended Complaint.

**B.      The Objections Are Otherwise Without Merit and Should Be Overruled**

13.     The Objectors' concerns regarding the impact the Proposed Compensation may have on their claims similarly are misplaced. *First*, as described above, to the extent the Objectors are administrative creditors, their claims likely will have been satisfied in full before the Board Members receive *any* contingent compensation.[12]  *Second*, to the extent the Objectors' concerns stem from their unsecured claims, the benefits of having an engaged and active Liquidating Trust Board far outweigh the costs.  More specifically, the table below illustrates how the Proposed Compensation impacts the potential recoveries to unsecured creditors.[13]

**Effect Proposed Compensation Has on Unsecured Creditor Recoveries**

| GUC Recoveries Assuming Board receives No Compensation | | | | | |
|---|---|---|---|---|---|
| Gross Litigation Recoveries | $ 150,000 | $ 250,000 | $ 350,000 | $ 450,000 | $ 550,000 |
| Implied GUC Recoveries [1] | 3.49% | 5.81% | 8.14% | 10.47% | 12.79% |

| GUC Recoveries, Net of Proposed Compensation | | | | | |
|---|---|---|---|---|---|
| Gross Litigation Recoveries | $ 150,000 | $ 250,000 | $ 350,000 | $ 450,000 | $ 550,000 |
| (-) Aggregate Board Compensation | – | (1,500) | (3,500) | (6,000) | (9,000) |
| Net Litigation Recoveries | $ 150,000 | $ 248,500 | $ 346,500 | $ 444,000 | $ 541,000 |
| Implied GUC Recoveries [1] | 3.49% | 5.78% | 8.06% | 10.33% | 12.58% |

| Variance GUC Recoveries | – | 0.03% | 0.08% | 0.14% | 0.21% |
|---|---|---|---|---|---|

1 - Assumes illustrative $4.3B GUC Pool

14.     As shown above, on the low-end, if the Debtors' estates or the Liquidating Trust recover $150 million in gross proceeds from the Preserved Causes of Action, unsecured creditors will recover approximately 3.5% of their claims and *no* contingency payments will be made to the

---

[12] Indeed, as administrative expense claims likely will be paid in full before any contingency payments are made, the Objectors do not have prudential standing to object to the Board Member's compensation in their capacity as purported administrative expense creditors.  *See, e.g., In re Quigley Co. Inc.*, 391 B.R. 695, 703 (Bankr. S.D.N.Y. 2008) ("[A]lthough [a] party in interest may object to confirmation of a plan, it cannot challenge portions of the plan that do not affect its direct interests.") (collecting cases).

[13] Based on the Debtors' latest estimates in connection with confirmation, the Debtors assumed there will be approximately $4.3 billion in allowed unsecured claims against the estates, excluding any unsecured claims asserted by ESL.  *See* Murphy Declaration ¶ 11.  These estimates are used merely for illustrative purposes.

10

Board Members.  On the high-end, if the Debtors' estates or the Liquidating Trust recovers $550 million in gross proceeds from the Preserved Causes of Action, unsecured creditors will recover 12.79% of their claims.  After deducting the Proposed Compensation at this threshold of recovery (*i.e.*, $9,000,000), the net implied recovery to unsecured creditors is 12.58% of their claims—a 0.21% difference.

15.    The potential upside of recoveries approaching or exceeding 10% for unsecured creditors and the benefits of a fully engaged and qualified Liquidating Trust Board—a key purpose of the contingency fees—far exceeds the associated costs.  Moreover, such recoveries for unsecured creditors would represent a remarkable achievement in these chapter 11 cases.

16.    The Objectors' thinly-guised concerns should be seen for what they are.  Indeed, it is no coincidence that the Objectors are also engaged in in active litigation with the Debtors over the allowance of their alleged administrative expense claims—a matter expressly referenced in the Objection.  *See* Objection ¶ 2 (stating that the Debtors contend the Objectors' claims under Bankruptcy Code section 503(b)(9) should be reclassified as unsecured claims).  The Objectors' discontent with the Court's decision to confirm the Plan despite not paying administrative expense claims in full in cash *immediately* is well documented.  The Objectors now seek to re-litigate confirmation issues and obtain leverage in their negotiations with the Debtors over the allowance of their claims, rather than present any genuine disagreement with the Proposed Compensation.[14]

---

[14] Indeed, counsel for certain of the Objectors not only exhaustively litigated these objections at the Confirmation Hearing on behalf of another client, Pearl Global Industries ("Pearl"), but also agreed to *settle* Pearl's confirmation objection (before the Court confirmed the Plan) and opt in to the Administrative Expense Claims Consent Program. *See* Oct. 7, 2019 Hr'g Tr. 10:12-11:13 (counsel for the Debtors reciting, and Mr. Wander confirming, the terms of Pearl's settlement, including Pearl's withdrawal of its confirmation objection, support of the Plan and agreement to opt-in to the Administrative Expense Claims Consent Program).

17. Indeed, the Objections are rife with gratuitous implications that the Board Members may be conflicted or may have been selected without proper vetting. The deadline to object to the selected Board Members has long passed, and the Objectors cannot now raise issues that were ripe prior to confirmation.[15] To avoid any confusion, however, and as all parties are aware, Messrs. Carr and Transier (the Debtors' designees) were appointed on the eve of the Petition Date to the Debtors' Restructuring Committee as independent board members, to which Weil, Gotshal and Manges LLP serves as counsel. To date, Mr. Carr has received $357,536.46 and Mr. Transier has received $355,414.93 in compensation for their respective roles on the Debtors' Restructuring Committee. To the extent the Court finds its necessary or appropriate for the Debtors to disclose its connections to the other Board Members—namely, the Creditors' Committee's three designees, the Debtors are available to provide such disclosures.

18. In the interest of preventing any further delays or confusion, attached hereto as **Annex A** are disclosures regarding Akin Gump's connections to the Board Members in a manner consistent with Bankruptcy Rule 2014. Akin Gump's connections with Messrs. Carr and Transier were disclosed in its retention application [ECF No. 923]. The Creditors' Committee's three designees had no prior involvement in any capacity in these chapter 11 cases (and had no formal role until entry of the Confirmation Order) and have received no payments from the Debtors or their estates.

[*Remainder of page left blank intentionally.*]

---

[15] The appropriate time for the Objectors to raise their concerns over the Board Members' selection was August 5, 2019, which was the deadline to object to confirmation.

WHEREFORE, for all of the foregoing reasons, the Debtors and Creditors' Committee respectfully request that this Court overrule the Objections and grant the Debtors' and the Creditors' Committee such other relief as the Court deems just, proper and equitable.

| | |
|---|---|
| New York, New York<br>Dated: December 11, 2019 | WEIL, GOTSHAL & MANGES LLP<br><br>/s/ *Sunny Singh*<br>Ray C. Shrock, P.C.<br>Jacqueline Marcus<br>Garrett A. Fail<br>Sunny Singh<br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br><br>*Counsel to the Debtors and Debtors in Possession*<br><br>AKIN GUMP STRAUSS HAUER & FELD LLP<br><br>/s/ *Philip C. Dublin*<br>Ira S. Dizengoff<br>Philip C. Dublin<br>Sara L. Brauner<br>Zachary D. Lanier<br>One Bryant Park<br>New York, New York 10036<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br><br>*Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.* |

**Annex A**

## Akin Gump's Connections to the Board Members

Akin Gump currently represents and in the past has represented companies or boards on which Messrs. Bartels, Carr, Davis and Wallander have served as directors or trustees in matters wholly unrelated to the Debtors' chapter 11 cases. Akin Gump has not represented any companies or boards on which Mr. Transier served as a director or trustee. Additionally, Mr. Davis worked as an associate for three years at Akin Gump approximately 23 years ago. To the extent that any of Messrs. Bartels, Carr, Davis, Transier and Wallander and Akin Gump have otherwise crossed paths in providing restructuring services to various companies, this is a natural consequence of a small group of experienced professionals working in this highly specialized area of legal practice. It is also a testament to Messrs. Bartels, Carr, Davis, Transier and Wallander's skills and experience. These professional connections are irrelevant to any legitimate independence issue and, in any event, have no bearing on the approval of the Proposed Compensation. Set forth below is a table listing current and prior connections with the Board Members to the extent reasonably ascertainable.[16]

| Alan Carr | | | | |
|---|---|---|---|---|
| **Company** | **Affiliation** | **Title** | **Akin Gump Representation** | **Current or Former Client** |
| Adeptus Health Inc. | Liquidating Trust | Trustee | Trust | Current |
| Fairhold Securitisation Limited | Board of Directors | Director | Company | Current |

| Patrick Bartels | | | | |
|---|---|---|---|---|
| **Company** | **Affiliation** | **Title** | **Akin Gump Representation** | **Current or Former Client** |
| Aegean Litigation Trust | Board of Directors | Member | Trust | Current |
| Lifecare Health Partners | Board of Directors | Member | Company | Current |
| Parker Drilling | Board of Directors | Member | Company | Current |
| Payless Holdings LLC | Board of Directors-Special Committee | Independent Director | Company | Current |
| Sungard Availability Service | Board of Managers | Member | Company | Current |
| Tousa Litigation Trust | Trust Board | Member | Trust | Current |
| Tuscany Oilfield Holdings | Board of Directors | Member | Company | Current |

| Eugene I. Davis | | | | |
|---|---|---|---|---|
| **Company** | **Affiliation** | **Title** | **Akin Gump Representation** | **Current or Former Client** |
| Aliante | Board of Directors | Member | Company | Former |

---

[16] Due to confidentiality concerns, three current engagements are not disclosed herein.

| **Eugene I. Davis** | | | | |
|---|---|---|---|---|
| Allegiance Telecom Liquidating Trust | Liquidating Trust | Trustee | Trust | Former |
| Anchor Glass Container Corporation | Board of Directors | Member | Company | Former |
| Aveos Fleet Performance Inc. | Board of Directors | Member | Board of Directors | Former |
| Edison Mission Energy | Board of Directors | Member | Company | Former |
| FXI Foamex Innovations, Inc. | Board of Directors | Member | Company | Former |
| General Chemical | Board of Directors | Member | Company | Former |
| GT Advanced Technologies Litigation Trust | Liquidating Trust | Trustee | Trust | Current |
| Hercules Offshore Special Committee | Board of Directors | Member | Special Committee | Former |
| Inner City Media Corporation | Board of Directors | Member | Company | Former |
| Merisant | Board of Directors | Member | Company | Former |
| One Communications | Board of Directors | Member | Special Committee | Former |
| Parker Drilling | Board of Directors | Non-Executive Chairman | Company | Current |
| PetroRig I PTE Liquidating Trust | Liquidating Trust | Trustee | Trust | Former |
| Quebecor World (USA) Liquidating Trust | Liquidating Trust | Trustee | Trust | Former |
| Quicksilver Resources, Inc. | Board of Directors | Member | Company | Current |
| Rhodes Homes Litigation Trust | Liquidating Trust | Trustee | Trust | Former |
| Salton, Inc. | Board of Directors | Member | Special Committee | Former |
| Seahawk Liquidating Trust | Liquidating Trust | Trustee | Trust | Former |
| Spansion Inc. | Board of Directors | Member | Company | Former |
| St. Vincents Catholic Medical Center Liquidating Trust | Liquidating Trust | Trustee | Trust | Former |
| Stallion Oilfield | Board of Directors | Member | Company | Former |
| TerreStar Corporation Inc. | Board of Directors | Member | Company | Former |
| Trident Resources Corporation | Board of Directors | Member | Company | Former |
| Zemex Minerals Group Inc. | Board of Directors | Member | Company | Former |

2

18-23538-shl    Doc 6176    Filed 12/11/19    Entered 12/11/19 11:59:47    Main Document
Pg 17 of 17

| **Raphael Wallander** | | | | |
|---|---|---|---|---|
| **Company** | **Affiliation** | **Title** | **Akin Gump Representation** | **Current or Former Client** |
| Aegean Litigation Trust | Board of Directors | Member | Trust Co-Counsel | Current |
| Atlantic Express Transportation Corp. | Board of Directors | Member | Debtors' Counsel | Former |
| FirstEnergy Nuclear Generation LLC | Board of Directors | Independent Director | Debtors' Counsel | Current |
| Merisant Company | Board of Directors | Member | Company | Former |
| Perkins & Marie Callendar LLC | Board of Directors | Members | Company | Current |