CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro
(pzumbro@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

*Attorney for Stanley Black & Decker, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>**SEARS HOLDING CORPORATION,** *et al.*,<br><br>**Debtors.** | Case No. 18-23538 (RDD)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered) |

**LIMITED OBJECTION OF STANLEY BLACK & DECKER, INC. TO THE DEBTORS'
NOTICE REGARDING INITIAL DISTRIBUTION PURSUANT TO ADMINISTRATIVE
EXPENSE CLAIMS CONSENT PROGRAM**

Stanley Black & Decker, Inc. and its subsidiaries Black & Decker (U.S.) Inc., Black & Decker Macao Commercial Offshore Limited and Waterloo Industries, Inc. (collectively, "**SBD**") hereby submit this objection to the *Notice Regarding Initial Distribution Pursuant to Administrative Expense Claims Consent Program*, (Dkt. No. 6186), (the "**Notice**"). As discussed further below, SBD requests that the Court find that SBD must be included as an Initial Distribution Participant as defined in the Notice or that the Debtors may not issue any distributions for administrative expense claims until such later date as will permit all opt-in claimants a reasonable opportunity to participate in the Initial Distribution.

## BACKGROUND

1. The Debtors[1] voluntarily filed the above-captioned Chapter 11 cases on October 15, 2018 (the "**Petition Date**"). Prior to the Petition Date, the Debtors entered into purchase orders and contracts to acquire certain goods from SBD. During the 20 days prior to the Petition Date and after the Petition Date, SBD delivered goods to the Debtors under the terms of the purchase orders and contracts. Accordingly, SBD filed proofs of claim pursuant to section 503(b) (the "**Administrative Expense Claims**"[2]) of title 11 of the United States Code (the "**Bankruptcy Code**") to recover the amounts the Debtors owed SBD for the delivered goods.

2. Unless the claimholders otherwise agree, section 503(b) claims must be paid in full for a debtor to emerge from a Chapter 11 proceeding. During the pendency of these Chapter 11 cases, the Debtors came to realize that it may be difficult for them to emerge from these Chapter 11 cases without a consensual resolution of the various claims that entities and individuals asserted under section 503(b). The Debtors therefore proposed the Administrative Expense Claims Consent Program (the "**Consent Program**") under which individuals and entities asserting section 503(b) claims could opt-in and have their claims paid prior to the effective date of the Debtor's plan of reorganization, but the payments would be less than one-hundred cents on the dollar. (*See* Dkt. No. 5370 at 26-34.)

3. On October 15, 2019, this Court entered *the Order (i) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors and (ii) Granting Related Relief*, (Dkt. No. 5370), (the "**Confirmation Order**"). The Confirmation Order

---

[1] Please see Note 1 of the Notice for a complete list of the Debtors in the above-captioned cases.

[2] As used herein, Administrative Expense Claims means any proofs of claims under section 503(b) that SBD has filed to date or any amendments to such proofs of claims.

approved, among other things, the Consent Program. (Dkt. No. 5370 at 26-34.) As relevant here, the Consent Program provides:

> each holder of an Allowed Administrative Expense Claim against the Debtors that *affirmatively opts-in* (the "**Opt-In Settled Admin Claims**") to the Administrative Expense Claims Consent Program shall receive: (i) its pro rata share of the Initial Distribution capped at 75% of the Allowed Administrative Expense Claim (the percentage recovery, the "**Initial Recovery**"); provided, that, the Initial Distribution shall only be available to holders of Opt-In Settled Admin Claims who consensually agree with the Debtors and the Creditors' Committee to the Allowed amount of the Opt-In Settled Admin Claims; provided, further, that, holders who do not agree with the Debtors and the Creditors' Committee on the Allowed amount of the Opt-In Settled Admin Claim shall be deemed to hold a Non Opt-Out Settled Admin Claim; and (ii) consensual reconciliation of the Allowed amount of Opt-In Settled Admin Claims (including on account of 503(b)(9) and 503(b)(1) issues regarding inducement, date of receipt, port of origin, etc., and any exposure on account of preference actions), to be completed within 30 days from the date of receipt of the Opt-In Ballot; provided, that, to the extent the Debtors, the Creditors' Committee, and the holder of the Opt-In Settled Admin Claim are unable to consensually resolve the Allowed amount, such resolution shall be subject to reconciliation on an agreed-upon schedule as reasonably agreed to by the Debtors, the Creditors' Committee, and the applicable holder of an Opt-In Settled Admin Claim; provided, further, that, for the avoidance of doubt, any waiver or settlement of any preference action shall be considered on a case-by-case basis.

(*Id.* at 27.) As defined in the Consent Program, "Initial Distribution shall mean Distributions made from a cash pool of $21 million inclusive of the Carve-Out Contribution ('**Initial Cash Pool**') to be held in the Segregated Account and made available on or about December 1, 2019 (the '**Initial Distribution Date**') for holders of Opt-In Settled Admin Claims". (*Id.* at 27 n.6.) SBD timely opted into the Consent Program on November 25, 2019.[3] One of the inducements promised in the Debtors' solicitation of opt-in ballots was "Expedited Reconciliation" of claims

---

[3] SBD's Opt-In Ballots are attached hereto as Exhibit A.

- 3 -

of administrative expense claimholders who affirmatively opt-in (to be completed within 30 days from the date of the Debtors' receipt of the opt-in ballot). (Ex. A at 3.)

4. The Debtors did not issue the Initial Distribution on December 1. Instead, the Debtors sent SBD a request for information to support the Administrative Expense Claims, which information would be used by the Debtors to determine the Allowed amount of the Administrative Expense Claims.[4] The Debtors did not provide SBD with a deadline for providing the requested information, or indicate in any way that SBD was at risk of being excluded from receiving its pro rata share of the Initial Distribution as promised in the opt-in solicitation materials for the claimholders (like SBD) who timely opted into the Consent Program. SBD sent the Debtors all the requested information on December 11.[5] To date, neither the Debtors nor the Creditors' Committee have stated that they disagree with the asserted amounts of the Administrative Expense Claims.

5. The same day SBD provided the requested information—December 11—the Debtors filed the Notice. (Dkt. No. 6186.) The Notice stated that the Debtors would commence the Initial Distribution on December 13. (*Id.*) The Notice included a list of entities who would receive funds from the Initial Distribution. (*Id.*, Ex. A.) SBD was not included in the list, and prior to filing the Notice, the Debtors did not notify SBD specifically, or similarly situated creditors generally, that the Debtors were going to commence the Initial Distribution on December 13. Nor did the Debtors notify SBD that they were going to close the universe of Initial Distribution participants prior to the expiration of the 30-day "Expedited Reconciliation" period upon which

---

[4] A copy of the email from the Debtors requesting the information to support the Administrative Expense Claims is attached hereto as Exhibit B. Certain information in Exhibit B has been redacted on the basis of Attorney-Client Privilege.

[5] A copy of SBD's email sending the requested information to the Debtors is attached hereto as Exhibit C.

SBD relied in agreeing to the Debtors' request to opt into the Consent Program. Instead, according to the Notice, the Debtors now consider SBD as part of the Non Opt-Out group. (*Id* at 2; Dkt. 5340 at 27.)

## ARGUMENT

6. SBD opted in to the Consent Program to: (i) maximize SBD's likelihood of recovery of a substantial amount of the Administrative Expense Claims; and (ii) receive payment for a substantial amount of the Administrative Expense Claims as quickly as possible, in light of the Debtors' apparent difficulties in avoiding "administrative insolvency." The Debtors' premature Notice not only attempts to rob SBD of the benefits it expected to receive from opting in, but also attempts to push SBD into a group where there is no clear indication of how long SBD will have to wait before receiving a distribution. This Court cannot sit idle in the face of such mistreatment.

7. As noted above, the Consent Program provides that entities who opt in are entitled to receive their pro rata share of the Initial Distribution as long as the parties come to agreement on the Allowed amount of the asserted Opt-In Settled Admin Claims. (Dkt. No. 5340 at 27.) SBD opted into the Consent Program on November 25. (Ex. A.) Once the December 1 Initial Distribution Date passed, SBD reasonably assumed that it would either come to agreement with the Debtors on the Allowed amount of the Administrative Expense Claims before any forthcoming date of the Initial Distribution, or be provided with notice of when they needed to reach such agreement in order to be included in the Initial Distribution. This expectation on the part of SBD was reasonable and justified, in light of the promise of "Expedited Reconciliation" as one of the benefits touted by the Debtors in their opt-in solicitation materials (in the same bullet point list as the promise of participation in the Initial Distribution for those claimants who affirmatively opt-in). SBD did not foresee a scenario where the Debtors would file the Notice without at least

notifying SBD of a deadline to reach agreement on the Allowed amount of the Administrative Claims.

8. But that is exactly what occurred. The Debtors decided to set an arbitrary deadline for reaching consensual agreement without providing any notice and robbed SBD of all of the benefits it expected to receive when it opted into the Consent Program. The Debtors intend to commence the Initial Distribution on December 13. If the Court allows the Initial Distribution specified in the Notice to go forward, SBD will be pushed into the Non Opt-Out group with no reasonable expectation of when (or if) to expect a payment for the Administrative Expense Claims.

9. Section 503(b) claims are entitled to full payment under the Bankruptcy Code, unless the claimholder otherwise agrees (in which case it goes without saying that the Debtor must abide by the terms of such agreement). A debtor cannot emerge from a Chapter 11 case without paying such claims in full. The Debtors created the Consent Program to enable themselves to settle 503(b) claims for amounts that are less than the full amount and emerge from these Chapter 11 cases. When the Court entered the Confirmation Order, the Court cemented the benefits the Debtors expected under the Consent Program. SBD did not enter into the Consent Program because it expected to be in positon where it would receive a payment on the Administrative Claims at some unknown future date. Quite the opposite. SBD entered into the Consent Agreement to receive at least a partial payment for the Administrative Expense Claims at the earliest possible date. By pushing SBD and similarly situated 503(b) claim holders into the Non Opt-Out group, the Debtors receive the benefits of settling those 503(b) claims for less than the full amounts and also take away their obligation to issue expeditious payments to the many claimants who opted into the Consent Program. The Court cannot allow the Debtors to both

receive their benefits under the Consent Program and take away the benefits claim holders such as SBD expected to receive under that program.

10. Accordingly, SBD respectfully requests that the Court rule that SBD must be included in the Initial Distribution specified in the Notice. In the alternative, SBD respectfully requests that the Court rule that: (i) the Debtors may not commence the Initial Distribution on December 13, (ii) a new date will be set for the Initial Distribution, and (iii) the Debtors are required to provide at least 10 days notice to all opt-in claimants as to the deadline for reaching consensual agreement on the Allowed amounts of the claimants Opt-In Settled Admin Claims so as to enable all opt-in claimants a reasonable opportunity to participate in the Initial Distribution.

## CONCLUSION

For the foregoing reasons, SBD respectfully requests that the Court order the relief requested above and order further relief as the Court may deem just and appropriate.

\* \* \*

Dated: December 13, 2019

CRAVATH, SWAINE & MOORE LLP

*/s/ Paul H. Zumbro*

Paul H. Zumbro
825 Eighth Avenue
New York, NY 10019
Telephone: 212.474.1000
Facsimile:  212.474.3700
Email: pzumbro@cravath.com

*Counsel for Stanley Black & Decker, Inc.*