UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | **Case No. 18-23538 (RDD)** |
| Debtors. | **(Jointly Administered)** |

## CLASS REPRESENTATIVES' MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Nina and Gerald Greene (the "Class Representatives"), on behalf of themselves and on behalf of the Classes (defined herein), hereby respectfully move this Court, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure and Rule 4001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, for relief from the automatic stay provisions of 11 U.S.C. § 362, as follows:

### PRELIMINARY STATEMENT

1. On March 25, 2015, Class Representatives commenced a Class Action against Debtors Sears Protection Company ("SPC"), Sears, Roebuck and Co. ("SRC"), and Sears Holdings Corporation ("SHC") (collectively, "Sears" or the "Debtors") in the Northern District of Illinois, alleging deceptive business practices relating to the company's Master Protection Agreements ("MPAs"). The Class Action has been stayed since Sears' bankruptcy filing in October 2018.

2. Sears has since sold substantially all of its assets, including its protection agreement business, to Transform Holdco LLC (the "Buyer"), pursuant to the terms of an Asset Purchase Agreement dated January 17, 2019 (the "APA"). Under the terms of the APA, the Buyer expressly assumed the Debtors' liabilities with respect to protection agreements such as

the MPAs at issue in the Class Action – including those for goods and services sold or performed prior to the closing of the transaction.

3. This Motion accordingly seeks relief from the automatic stay provisions of section 362 of the Bankruptcy Code (11 U.S.C. § 362) for the purpose of moving forward with the Class Action with the Buyer substituted as the defendant. Due to the Buyer's assumption of obligations and liabilities relating to the MPAs, the Buyer is now the real party in interest in the Class Action. Should the instant Motion be granted, Class Representatives intend to substitute the Buyer as the defendant in the Class Action pursuant to Federal Rule of Civil Procedure 25(c), and pursue the Classes' claims solely against the Buyer.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

5. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.    The Class Action

6. On March 25, 2015, Class Representatives filed a Class Action Complaint against SPC, SRC, and SHC in the United States District Court for the Northern District of Illinois (the "Illinois District Court"), styled *Greene v. Sears Protection Company, et al.*, Case No. 1:15-cv-02546 (the "Class Action"). A true and correct copy of the Class Action docket is attached hereto as Exhibit A.

7. On March 11, 2016, Class Representatives filed a First Amended Class Action Complaint (the "Amended Complaint"), which is the operative complaint in the Class Action. A true and correct copy of the Amended Complaint is attached hereto as Exhibit B.

8. The Amended Complaint asserts claims against SPC, SRC, and SHC for breach of express contract, unjust enrichment, violation of the Illinois Consumer Fraud Act, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

9. The Classes' claims are based on Sears' longstanding practice of selling Master Protection Agreement ("MPA") coverage on appliances which, unbeknownst to the public, Sears had internally identified as ineligible for service and had no intention of actually repairing or replacing. As described in the Amended Complaint, MPAs are purportedly intended to provide repair and replacement coverage for products in customers' homes, but, after paying for many years of MPA coverage, Class Representatives discovered that many of their products were not actually eligible for coverage.[1]

10. On March 27, 2017, Judge Jorge L. Alonso of the Illinois District Court issued a Memorandum Opinion and Order which (i) dismissed all claims against SHC, and (ii) dismissed the Illinois Consumer Fraud Act claim against SPC and SRC. *See Greene v. Sears Protection Co.*, 2017 WL 1134484 (N.D. Ill. Mar. 27, 2017).

11. Fact discovery and expert discovery in the Class Action are complete, and the parties' respective expert motions have been resolved. *See Greene v. Sears Protection Co.*, 2018 WL 4716189, at *5, *9 (N.D. Ill. Mar. 8, 2018), *adopted in relevant part*, 2018 WL 3104300, at *2-3 (N.D. Ill. June 25, 2018) (denying Sears' motion to exclude Class Representatives' expert, and granting in part and denying in part Class Representatives' motion to exclude Sears' expert).

---

[1] Class Representatives entered into eleven different MPAs with Sears between 1999 and 2014. Copies of Class Representatives' MPAs are attached to the Amended Complaint. *See* Exhibit B.

3

12. On June 25, 2018, Judge Alonso issued a Memorandum Opinion and Order certifying two Classes pursuant to Federal Rule of Civil Procedure 23. *See Greene v. Sears Protection Co.*, 2018 WL 3104300 (N.D. Ill. June 25, 2018).[2]

13. With respect to the breach of contract and unjust enrichment claims, the following nationwide class has been certified:

> All individuals and entities who paid for aftermarket MPAs on March 25, 2005 to the present (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a retailer other than Sears, and/or subsequent renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

(the "Nationwide Class"). *See id.*, at *5.

14. With respect to the Pennsylvania Unfair Trade Practices and Consumer Protection Law claim, the following Pennsylvania-only class has been certified:

> All residents of Pennsylvania who paid for aftermarket MPAs on March 25, 2009 to the present (including post-point-of-sale purchases of coverage, purchases of coverage for products bought from a retailer other than Sears, and/or subsequent renewals of coverage) for products which were not covered by nor eligible for coverage under the MPA, and did not receive a full refund.

(the "Pennsylvania Class").[3] *See* Exhibit A, Docket Entry No. 214 (August 29, 2018 Minute Entry, amending class period); *Greene*, 2018 WL 3104300, at *5.

**B.   The Class Proofs of Claim**

15. On October 15, 2018 (the "Petition Date"), Sears and its affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, as a result of which the Class Action was automatically stayed pursuant to Section 362(a) of the Bankruptcy Code.

---

[2] Sears sought permission from the Seventh Circuit to appeal the Illinois District Court's grant of class certification, which the Seventh Circuit denied on August 21, 2018. *See* Exhibit A, Docket Entry No. 211.

[3] The Nationwide Class and Pennsylvania Class are referred to herein, collectively, as the "Classes."

4

16. At the time of the bankruptcy filing, Class Representatives were in the process of developing a proposed class notice plan for the Illinois District Court's approval,[4] but that process was not completed as a result of the automatic stay. In addition, Sears had filed a motion for summary judgment in the Class Action on September 26, 2018, but the case was automatically stayed as a result of Sears' bankruptcy filing before Class Representatives' response was due. *See* Exhibit A, Docket Entry Nos. 222-24.

17. By Order dated February 22, 2019, this Court set a General Bar Date of April 10, 2019 for the filing of claims against the Debtors. *See* ECF No. 2676.

18. On April 5, 2019, Class Representatives, on behalf of themselves and the Classes, filed Proofs of Claim against SRC, SPC, and SHC. *See* Claim No. 14323 (Proof of Claim against SRC); Claim No. 14256 (Proof of Claim against SPC); and Claim No. 14252 (Proof of Claim against SHC) (collectively, the "Class Proofs of Claim").

19. On April 12, 2019, Class Representatives filed a *Motion to Extend Application of Federal Rule of Civil Procedure 23 to Class Proofs of Claim*, pursuant to Federal Rules of Bankruptcy Procedure 7023 and 9014, seeking entry of an order authorizing the application of Federal Rule of Civil Procedure 23 to the Class Proofs of Claim. *See* ECF No. 3170 (the "Rule 23 Motion").

20. A hearing on the Rule 23 Motion was initially noticed for May 21, 2019, but has been adjourned by agreement between Class Representatives and the Debtors to the Omnibus Hearing Date scheduled for January 28, 2020.

---

[4] *See* Exhibit A, Docket Entry No. 222 ("Parties shall submit their proposed class notice by 10/19/18.").

### C. The Sale Transaction

21. On February 8, 2019, the Court approved the sale of substantially all of the Debtors' assets (the "Sale Transaction") to the Buyer.[5] *See* ECF No. 2507 (the "Sale Order"). The terms of the Sale Transaction are set forth in the APA, a copy of which is attached as Exhibit B to the Sale Order (*see* ECF No. 2507-1).[6] The Sale Transaction closed on February 11, 2019 (the "Closing"), on which date substantially all of the Debtors' assets were transferred to the Buyer.

22. The APA effectuates the sale of most of the Debtors' assets without passing on pre-Closing liabilities to the Buyer, *but* provides for the assumption of certain categories of liabilities by the Buyer (collectively, the "Assumed Liabilities"). *See* Sale Order, p. 11 ("The sale and transfer of the Acquired Assets of the Debtors to the Buyer . . . will not subject the Buyer or ESL to any liability (including any successor liability) under any laws . . . with respect to the operation of the Debtors' business prior to the Closing . . . *except that, upon the Closing or such other date as specified in the [APA], the Buyer shall become liable for the applicable Assumed Liabilities*.") (emphasis added).

23. Section 2.3 of the APA sets forth the Assumed Liabilities, which include the following: "subject to Section 2.8(e) [of the APA], *all Liabilities for warranties and protection agreements or other services contracts* (other than warranties relating to Intellectual Property) *for the goods and services of Sellers sold or performed prior to the Closing*, including any

---

[5] The Buyer, Transform Holdco LLC, is controlled by ESL Investments, Inc. (together with its principals and affiliates, "ESL"), which was the controlling shareholder of the Debtors prior to the Petition Date.

[6] On February 11, 2019, the Debtors and the Buyer executed Amendment No. 1 to the APA (*see* ECF No. 2599) and, on May 10, 2019, executed Amendment No. 2 to the APA. *See* ECF No. 3880.

liabilities owed by [Sears Reinsurance Company Ltd.] to any Seller in respect of reinsurance of such warranties and protection agreements (the 'PA Liabilities')." *See* APA, § 2.3(e) (emphasis added); *see also* Sale Order, ¶ 18 ("Pursuant to and in accordance with Section 2.3(e) of the [APA], the Buyer has expressly assumed [the Debtors'] obligations . . . with respect to warranties and protection agreements or other services contracts . . . for the goods and services of [Debtors] sold or performed prior to the Closing.").

24. "Liability" is broadly defined in the APA to include, *inter alia*, "claim[s] . . . [and] proceeding[s] . . . of whatever kind or nature . . . and . . . all costs, fees and expenses relating thereto." *See* APA, § 1.1.

25. Section 2.8(e) of the APA provides that the Buyer "shall not assume the PA Liabilities[] unless and until [the Debtors have] received the requisite consent of the Bermuda Monetary Authority . . . to the transfer of the KCD Notes (the 'BMA Consent'). Immediately following receipt of the BMA Consent, the transfer of the KCD Notes and the assumption of the PA Liabilities shall take place simultaneously." *See* APA, § 2.8(e). On May 23, 2019, the Bermuda Monetary Authority approved the transfer of the KCD Notes to the Buyer, and, on June 17, 2019, the KCD Notes were transferred to the Buyer. *See* ECF No. 4478, Disclosure Statement, at p. 24. The Buyer's assumption of the PA Liabilities thus occurred simultaneously on June 17, 2019, pursuant to Section 2.8(e) of the APA.

## BASIS FOR RELIEF

26. Pursuant to Section 362(a) of the Bankruptcy Code, the filing of a bankruptcy petition operates as an automatic stay of judicial proceedings against the debtor, in order to give the debtor "a short respite from creditors' demand" and "the opportunity to develop and implement plans to right his financial affairs." *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002) (internal quotation marks omitted).

7

27. Relief from the automatic stay may be granted "for cause," after notice and a hearing. 11 U.S.C. § 362(d)(1).

28. The movant bears the initial burden to show cause exists for relief from the stay; once he does so, the burden shifts to the debtor to show the absence of cause. *See In re Keene Corp.*, 171 B.R. 180, 182 (Bankr. S.D.N.Y. 1994); *In re Kolnberger*, 603 B.R. 253, 268 (Bankr. E.D.N.Y. 2019).

29. Although the Bankruptcy Code does not define the meaning of the phrase "for cause," courts in the Second Circuit examine the twelve factors outlined *In re Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1286 (2d Cir. 1990), to determine whether to lift or modify the automatic stay.

30. These twelve factors are:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*

31. "Not every one of these factors will be relevant in every case." *Bogdanovich*, 292 F.3d at 110; *see also In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) ("Only those factors relevant to a particular case need be considered, and the Court need not assign them equal weight.") (internal citation omitted). The decision whether to lift or modify the stay is

8

committed to the discretion of the bankruptcy judge and depends upon the facts underlying the motion. *See Sonnax*, 907 F.2d at 1286; *Bogdanovich*, 292 F.3d at 110.

32. In the instant matter, *Sonnax* factors two, six, seven, ten, eleven, and twelve are relevant and weigh in favor of granting Class Representatives' motion.

### A. Class Representatives Seek Relief From the Stay For the Purpose of Pursuing Claims Against a Non-Debtor

33. Class Representatives seek relief from the automatic stay for the purpose of substituting in the Buyer as defendant in the Class Action, due to the Buyer's assumption of obligations and liabilities relating to Sears' MPA business.

34. The claims in the Class Action constitute "Liabilities for warranties and protection agreements or other services contracts . . . for the goods and services of [the Debtors] sold or performed prior to the Closing." *See* APA, § 2.3(e). As such, the Buyer is now the real party in interest in the Class Action.

35. The Buyer is a non-debtor third party to whom the automatic stay is not applicable. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 491 B.R. 27, 36 (S.D.N.Y. 2013), *aff'd sub nom.*, *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014) ("[T]he automatic stay protects only the debtor, property of the debtor or property of the estate, not non-debtor parties or their property.") (internal quotation marks omitted); *Cousins Int'l Food, Corp.*, 565 B.R. 450, 460 (1st Cir. B.A.P. 2017) (automatic stay did not apply to company that purchased substantially all of debtor's assets in a § 363 sale).

36. Courts in the Second Circuit only apply the automatic stay to a non-debtor in extraordinary circumstances, where there will be an immediate adverse economic consequence for the debtor's estate. *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003); *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, 564 B.R. 192, 194

9

(S.D.N.Y. 2016). No such circumstances exist here. The Sale Transaction was the result of arms'-length bargaining, as part of which the Buyer expressly assumed liabilities relating to pre-Closing protection agreements. Further, the APA does not provide for indemnification relating to such liabilities – which, in any event, still would not be a sufficient basis to apply the stay to the Buyer. *See id.* at 195.

37. If the instant Motion is granted, Class Representatives intend to substitute the Buyer as the defendant in the Class Action (pursuant to Federal Rule of Civil Procedure 25), and pursue the Classes' claims against the Buyer only, not the Sears defendants.

38. Class Representatives' requested relief thus would not interfere with the bankruptcy case or prejudice the interests of other Sears creditors because it would involve the pursuit of the Classes' claims against a non-debtor who has assumed the liabilities at issue.

39. *Sonnax* factors two, six, and seven accordingly weigh in favor of granting the Motion.

**B.     The Class Action Proceeded for More Than Three Years Before the Illinois District Court and Is Nearly Trial-Ready**

40. The tenth *Sonnax* factor considers whether the interests of judicial economy and the expeditious and economical resolution of litigation would be served by lifting or modifying the stay, and the eleventh *Sonnax* factor considers whether the parties are ready for trial in the other proceeding. *Sonnax*, 907 F.2d at 1286.

41. The Class Action was commenced in 2015 and at an advanced stage when Sears filed for bankruptcy. Fact discovery and expert discovery are completed, the parties' respective expert motions have been resolved, and two Classes have been certified. *See Greene*, 2018 WL 3104300, at *5; Exhibit A, Docket Entry No. 214. At the time of Sears' bankruptcy filing, Class Representatives were in the process of developing a class notice plan and Sears' motion for

10

summary judgment was pending. Upon resolution of those matters, the case would have been ready for trial.

42. Further, due to the substantial litigation which has already taken place before the Illinois District Court, Judge Alonso is already familiar with the merits of the Class Action, such that the interests of judicial economy would be served by permitting the Classes' claims to be resolved in the Illinois District Court.

43. *Sonnax* factors ten and eleven thus weigh in favor of granting the Motion. *See In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 166-67 (Bankr. D. Conn. 2002) (where action had been ongoing in state court for several years and was at the summary judgment stage, *Sonnax* factors ten and eleven weighed in favor of lifting stay).

**C.  The Balance of Harms Weighs In Favor of Granting Class Representatives' Motion**

44. The twelfth *Sonnax* factor considers the impact of the automatic stay on the parties and the balance of harms. *Sonnax*, 907 F.2d at 1286.

45. The Classes' interests would be unfairly prejudiced if Class Representatives are prevented or further hindered by the automatic stay from pursuing the Classes' claims against the Buyer – a third party who has expressly assumed the MPA-related liabilities at issue and to whom the automatic stay does not apply.

46. The Debtors' interests, on the other hand, would *not* be harmed as a result of the relief sought. Class Representatives' pursuit of claims against the Buyer would not result in undue hardship for Sears, interfere with Sears' reorganization plan, or burden the estate with additional costs – on the contrary, the Debtors would benefit if Class Representatives seek relief from the Buyer rather than the Sears defendants.

11

47.  "Relief from the automatic stay may be tailored to the particular circumstances." *In re Taub*, 438 B.R. 39, 46 (Bankr. E.D.N.Y. 2010).  Here, the balance of harms weighs strongly in favor of modifying the automatic stay to permit Class Representatives to move forward with the Class Action against the Buyer.

## NOTICE

48.  Notice of this Motion will be provided in accordance with the procedures set forth in the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405).  Class Representatives respectfully submit that no further notice is required.

## NO PRIOR REQUEST

49.  No prior request of the relief sought in this Motion has been made to this Court or any other court.

## CONCLUSION

For the foregoing reasons, Class Representatives respectfully request entry of an order modifying the automatic stay, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as the Court deems just, appropriate, and equitable under the circumstances.

Dated: December 13, 2019                                      Respectfully submitted,

                                                                */s/ James P. Pagano*
James P. Pagano, Esq.
217 Broadway, Suite 603
New York, NY 10007
Tel: (212) 732-4740

Deborah R. Gross, Esq.
Janice I. Daul, Esq.
KAUFMAN, COREN & RESS, P.C.
Two Commerce Square, Suite 3900

2001 Market Street
Philadelphia, PA 19103
Tel: (215) 735-8700

*Attorneys for Class Representatives
Nina and Gerald Greene*