AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of Unsecured
Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

-------------------------------------------------------------------x

**THIRD INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD OF JULY 1, 2019 THROUGH AND INCLUDING OCTOBER 31, 2019**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816).  The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

| General Information | |
|---|---|
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP ("Akin Gump")[2] |
| Authorized to Provide Services to: | The Official Committee of Unsecured Creditors and the Litigation Designees[3] |
| Petition Date: | October 15, 2018 |
| Retention Date: | December 10, 2018, *nunc pro tunc* to October 24, 2018 |
| Prior Applications: | 2 |

| Summary of Fees and Expenses Sought in this Application | |
|---|---|
| Time Period Covered by this Application: | July 1, 2019 through and including October 31, 2019 (the "Compensation Period") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary for the Compensation Period: | $5,384,047.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary for the Compensation Period: | $318,470.97 |
| Total Compensation and Expenses Requested for the Compensation Period: | $5,702,517.97 |

| Summary of Fees and Expenses Allowed Pursuant to Prior Applications | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $26,050,862.50 |

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief* [ECF No. 5370] (the "Confirmation Order") or the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 5370-1] (the "Plan"), as applicable.

[3] As described further herein, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the Jointly Asserted Causes of Action" in addition to its role as counsel to the Creditors' Committee. *See* Confirmation Order ¶ 22. To facilitate review of Akin Gump's fees attributable to its role as counsel to the Litigation Designees following entry of the Confirmation Order, a separate task code (Task Code 20) contains all such work.

| | |
|---|---|
| Total Expenses Approved by Interim Order to Date: | $2,143,244.83 |
| Total Compensation and Expenses Approved by Interim Order to Date: | $28,194,107.33 |
| Total Allowed Compensation Paid to Date: | $26,050,862.50 |
| Total Allowed Expenses Paid to Date: | $2,143,244.83 |
| Total Allowed Compensation and Expenses Paid to Date: | $28,194,107.33 |

**Summary of Fees, Professionals, Rates and Budget in this Application**

| | |
|---|---|
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed (80% of Fees): | $3,226,599.20[4] |
| Expenses Sought in this Application Already Paid Pursuant to the Compensation Order But Not Yet Allowed (100% of Expenses): | $202,696.13[5] |
| Total Compensation and Expenses Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $3,429,295.33 |
| Total Compensation and Expenses Sought in this Application Not Yet Paid: | $2,273,222.64 |
| Voluntary Fee Waiver and Expense Reduction in this Compensation Period: | $255,658.27[6] |

---

[4] Akin Gump has received $1,148,464.80 (80% of $1,435,581.00) as compensation for services rendered during the period of July 1, 2019 through July 31, 2019, as requested in the Tenth Monthly Fee Statement (as defined herein), $1,098,212.80 (80% of $1,372,766.00) as compensation for services rendered during the period of August 1, 2019 through August 31, 2019, as requested in the Eleventh Monthly Fee Statement (as defined herein) and $979,921.60 (80% of $1,224,902.00) as compensation for services rendered during the period of September 1, 2019 through September 30, 2019, as requested in the Twelfth Monthly Fee Statement.

[5] Akin Gump has received $62,099.98 for reimbursement of actual and necessary expenses during the period of July 1, 2019 through July 31, 2019, as requested in the Tenth Monthly Fee Statement, $93,272.94 for reimbursement of actual and necessary expenses during the period of August 1, 2019 through August 31, 2019, as requested in the Eleventh Monthly Fee Statement and $47,323.21 for reimbursement of actual and necessary expenses during the period of September 1, 2019 through September 30, 2019, as requested in the Twelfth Monthly Fee Statement.

[6] Akin Gump voluntarily reduced its fees and expenses prior to the filing of the applicable Monthly Fee Statement (as defined herein) by the following amounts: (i) $219,765.00 for fee reductions and (ii) $35,893.27 for expense reductions. The voluntary fee and expense reductions relate to, among other things: (i) fees incurred by

| *Summary of Fees and Expenses Sought in this Application* | |
|---|---|
| Blended Rate in this Application for All Attorneys: | $829.63 |
| Blended Rate in this Application for All Timekeepers: | $813.09 |
| Number of Timekeepers Included in this Application: | 39 (33 attorneys; 6 paraprofessionals and other non-legal staff) |
| Number of Attorneys Billing Fewer than 15 Hours to the Case During the Compensation Period: | 5 |
| Increase in Rates Since Date of Retention: | 1[7] |
| Interim or Final Application: | Interim |

---

professionals or paraprofessionals for attending meetings, conferences or hearings at which their presence was not essential to the issues or matters addressed therein; (ii) duplicative work or work performed by professionals or paraprofessionals billing a *de minimis* amount of time to the Chapter 11 Cases during the applicable period; (iii) certain fees on account of non-working travel time; (iv) fees incurred in connection with certain administrative tasks; and (v) certain overtime meal and travel expenses.  Consequently, Akin Gump does not seek payment of these fees and expenses in this Application.

[7] Akin Gump increased its rates on January 1, 2019, consistent with its customary practice and as disclosed in the Akin Retention Application (as defined herein).

## SUMMARY OF MONTHLY FEE STATEMENTS

| DATE FILED | ECF NO. | PERIOD COVERED | FEES REQUESTED | EXPENSES REQUESTED | FEES PAID | EXPENSES PAID |
|---|---|---|---|---|---|---|
| 09/06/19 | 5086 | 07/01/19 – 07/31/19 | $1,148,464.80 (80% of $1,435,581.00) | $62,099.98 | $1,148,464.80 | $62,099.98 |
| 10/14/19 | 5364 | 08/01/19 – 08/31/19 | $1,098,212.80 (80% of $1,372,766.00) | $93,272.94 | $1,098,212.80 | $93,272.94 |
| 11/22/19 | 6077 | 09/01/19 – 09/30/19 | $979,921.60 (80% of $1,224,902.00) | $47,323.21 | $979,921.60 | $47,323.21 |
| 12/09/19 | 6169 | 10/01/19 – 10/31/19 | $1,080,638.40 (80% of $1,350,798.00) | $115,774.84 | N/A | N/A |

Summary of Any Objections to Monthly Fee Statements:  None

Compensation and Expenses Sought in This Application Not Yet Paid:  $2,273,222.64

## COMPENSATION BY PROFESSIONAL
## JULY 1, 2019 THROUGH AND INCLUDING OCTOBER 31, 2019

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Chen, Julius | Partner | Litigation | 2010 | $925.00 | 129.80 | $120,065.00 |
| Dizengoff, Ira S. | Partner | Financial Restructuring | 1993 | $1,550.00 | 155.10 | $240,405.00 |
| Dublin, Philip C. | Partner | Financial Restructuring | 1999 | $1,475.00 | 383.60 | $565,810.00 |
| Lawrence, Lacy M. | Partner | Litigation | 2006 | $1,020.00 | 122.80 | $125,256.00 |
| Miller, Allison P. | Partner | Corporate | 2003 | $1,250.00 | 27.50 | $34,375.00 |
| Qureshi, Abid | Partner | Financial Restructuring | 1995 | $1,475.00 | 6.30 | $9,292.50 |
| Sorkin, Joseph L. | Partner | Litigation | 2008 | $1,120.00 | 206.70 | $231,504.00 |
| Zensky, David | Partner | Litigation | 1988 | $1,305.00 | 102.30 | $133,501.50 |
| Brauner, Sara L. | Counsel | Financial Restructuring | 2011 | $1,125.00 | 717.30 | $806,962.50 |
| Chapman, Dean L. | Counsel | Litigation | 2009 | $980.00 | 377.20 | $369,656.00 |
| Demander, Kathryn G. | Counsel | Litigation | 2013 | $805.00 | 31.10 | $25,035.50 |
| Matheson, Clayton | Counsel | Intellectual Property | 2010 | $885.00 | 45.60 | $40,356.00 |
| Tizravesh, Roxanne | Counsel | Litigation | 2009 | $905.00 | 133.00 | $120,365.00 |
| Tolentino, Raymond | Counsel | Litigation | 2013 | $840.00 | 36.30 | $30,492.00 |
| Windscheffel, Dennis | Counsel | Litigation | 2004 | $905.00 | 55.30 | $50,046.50 |
| Badini, Douglas | Associate | Corporate | 2017 | $690.00 | 18.90 | $13,041.00 |
| Chen, Michael | Associate | Litigation | 2019 | $540.00 | 5.30 | $2,862.00 |
| Glackin, Patrick J. | Associate | Litigation | 2019 | $540.00 | 357.30 | $192,942.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Kane, John P. | Associate | Litigation | 2016 | $770.00 | 395.70 | $304,689.00 |
| Kulikowski, Jillian R. | Associate | Litigation | 2019 | $540.00 | 474.40 | $256,176.00 |
| Lanier, Zachary D. | Associate | Financial Restructuring | 2017 | $760.00 | 454.70 | $345,572.00 |
| Latov, Jeffrey A. | Associate | Litigation | 2017 | $760.00 | 367.50 | $279,300.00 |
| Mahkamova, Shirin | Associate | Financial Restructuring | 2019 | $560.00 | 293.20 | $164,192.00 |
| Fydrych, Victoria | Associate | Litigation | Pending | $540.00 | 8.40 | $4,536.00 |
| Maizel, Elise | Associate | Litigation | 2017 | $690.00 | 158.70 | $109,503.00 |
| Nolan, Sean | Associate | Litigation | 2018 | $630.00 | 119.00 | $74,970.00 |
| Park, Daniel S. | Associate | Litigation | 2011 | $690.00 | 103.50 | $71,415.00 |
| Praestholm, Amanda | Associate | Litigation | 2017 | $555.00 | 26.20 | $14,541.00 |
| Rusconi, Margo | Associate | Litigation | 2019 | $510.00 | 9.90 | $5,049.00 |
| Sharad, Saurabh | Associate | Litigation | 2015 | $815.00 | 117.40 | $95,681.00 |
| Szydlo, Joseph E. | Associate | Financial Restructuring | 2019 | $560.00 | 457.90 | $256,424.00 |
| Collins, Russell J. | Staff Attorney | Practice Attorney | 1998 | $455.00 | 535.40 | $243,607.00 |
| Young, Melodie | Staff Attorney | Practice Attorney | 2003 | $415.00 | 0.80 | $332.00 |
| Ginsborg, Michael | Specialist | Research | N/A | $265.00 | 6.30 | $1,669.50 |
| Hicks, Adria | Legal Assistant | Litigation | N/A | $335.00 | 6.30 | $2,110.50 |
| Krasa-Berstell, Dagmara | Legal Assistant | Financial Restructuring | N/A | $395.00 | 19.00 | $7,505.00 |
| Levy, Sophia D. | Legal Assistant | Financial Restructuring | N/A | $235.00 | 50.50 | $11,867.50 |
| Ma, Jim | Specialist | E-Discovery | N/A | $380.00 | 7.50 | 2,850.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Walls, Bennett | Legal Assistant | Litigation | N/A | $205.00 | 98.00 | $20,090.00 |

## TOTAL FEES FOR THE COMPENSATION PERIOD

| PROFESSIONALS | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners | $1,287.55 | 1,134.10 | $1,460,209.00 |
| Senior Counsel / Counsel | $1,033.75 | 1,395.80 | $1,442,913.50 |
| Associates | $623.64 | 3,904.20 | $2,434,832.00 |
| Paraprofessionals and Other Non-Legal Staff | $245.70 | 187.60 | $46,092.50 |
| **Blended Attorney Rate** | **$829.63** | | |
| **Blended Rate for All Timekeepers** | **$813.90** | | |
| **Total Fees Incurred** | | **6,621.70** | **$5,384,047.00** |

## COMPENSATION BY PROJECT CATEGORY
## JULY 1, 2019 THROUGH AND INCLUDING OCTOBER 31, 2019

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 2 | Case Administration | 43.50 | $26,125.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 319.90 | $217,358.00 |
| 4 | Analysis of Other Professionals Fee Applications/Reports | 45.10 | $29,098.00 |
| 5 | Review/Preparation of Schedules, Statements | – | – |
| 6 | Retention of Professionals | 1.40 | $1,377.50 |
| 7 | Creditors Committee Matters/Meetings (including 341 Meetings) | 56.90 | $61,981.00 |
| 8 | Hearings and Court Matters/Court Preparation | 358.90 | $344,350.50 |
| 9 | Financial Reports and Analysis | 0.40 | $597.50 |
| 10 | DIP, Cash Collateral Usage, Adequate Protection and Exit Financing | 1.40 | $1,707.50 |
| 11 | Executory Contract/Lease Issues | 2.10 | $1,642.00 |
| 12 | General Claims Analysis/Claims Objections | 159.70 | $160,089.50 |
| 13 | Analysis of Pre-Petition Transactions | 2,553.50 | $1,757,478.00 |
| 14 | Insurance Issues | 31.40 | $28,636.50 |
| 15 | Secured Creditors Issues/Communications/Meetings | 604.20 | $493,915.50 |
| 16 | Automatic Stay Issues | 77.00 | $63,948.50 |
| 17 | General Litigation Matters/Adversary Proceedings | – | – |
| 18 | Tax Issues | 1.00 | $770.00 |
| 19 | Labor Issues/Employee Benefits | 48.30 | $58,659.00 |
| 20 | Jointly Asserted Causes of Action | 672.50 | 515,680.50 |

| Task Code | Project Category | Total Hours Billed | Total Amount |
|---|---|---|---|
| 21 | Exclusivity | – | – |
| 22 | Disclosure Statement/Solicitation/Plan/Confirmation | 1,395.60 | $1,385,848.00 |
| 23 | Asset Dispositions/363 Asset Sales | 222.20 | $205,133.00 |
| 24 | Real Estate Issues | – | – |
| 25 | Travel Time | 26.70 | $29,651.00 |
| 26 | Securities Law Issues | – | – |
| 27 | Environmental | – | – |
| 28 | General Corporate Matters | – | – |
| 29 | Intercompany Claims/Intercompany Transactions/Cash Management | – | – |
| 30 | Customer, Supplier and Vendor Issues (including Critical Vendors) | – | – |
| 31 | Business Operations | – | – |
| **Total** | | **6,621.70** | **$5,384,047.00** |

**EXPENSE SUMMARY**
**JULY 1, 2019 THROUGH AND INCLUDING OCTOBER 31, 2019**

| Disbursement Activity | Amount |
|---|---|
| Color Copy | $303.90 |
| Computerized Legal Research - Lexis - in contract 30% discount | $15,032.35 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $41,227.72 |
| Computerized Legal Research – Westlaw – out of contract | $190.82 |
| Computerized Legal Research - Courtlink- in contract 50% discount | $130.49 |
| Computerized Legal Research - Other | $4,006.80 |
| Courier Service/Messenger Service - Off Site | $61.64 |
| Court Cost | $2,790.20 |
| Document Retrieval | $234.37 |
| Dues – Misc. Dues | $50.00 |
| Duplication - In House | $34,438.80 |
| Duplication - Off Site | $1,820.83 |
| Filing Fees | $1,298.00 |
| Meals - Overtime | $286.86 |
| Meals - Business | $908.24 |
| Meals (100%) | $5,174.81 |
| Miscellaneous | $5.00 |
| Postage | $9.50 |
| Professional Fees - Consultant Fees | $112,111.25 |
| Professional Fees - Misc. | $54,242.75 |
| Recruiting – Misc. | $1,800.00 |
| Research | $640.34 |

| Disbursement Activity | Amount |
|---|---|
| Telephone - Cell/Pagers | $30.00 |
| Telephone - Long Distance | $1,151.00 |
| Transcripts | $25,326.19 |
| Travel - Airfare | $2,128.11 |
| Travel - Ground Transportation | $4,562.23 |
| Travel - Lodging (Hotel, Apt, Other) | $4,824.04 |
| Travel - Parking | $149.15 |
| Travel - Train Fare | $854.00 |
| Local Transportation - Overtime | $2,681.58 |
| **Total** | **$318,470.97** |

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier

*Counsel to the Official Committee of Unsecured
Creditors of Sears Holdings Corporation, et al.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| SEARS HOLDINGS CORPORATION, et al., | : | Case No. 18-23538 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |

------------------------------------------------------------------x

### THIRD INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF JULY 1, 2019 THROUGH AND INCLUDING OCTOBER 31, 2019

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee") of Sears Holdings Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby submits its third application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), requesting interim allowance of compensation for services rendered to the Creditors' Committee for the period of July 1, 2019 through and including October 31, 2019 (the "Compensation Period") and for reimbursement of expenses incurred in connection therewith.  In support of this Application, Akin Gump submits the declaration of Philip C. Dublin, a partner at Akin Gump, which is attached hereto as **Exhibit A** and incorporated by reference into this Application.  In further support of this Application, Akin Gump respectfully represents as follows.

## INTRODUCTION

1.      By this Application, Akin Gump seeks (i) interim allowance of compensation for the professional services rendered by Akin Gump during the Compensation Period in the amount of $5,384,047.00, representing 6,434.10 hours of professional services and 187.60 hours of paraprofessional and other non-legal services, and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in the amount of $318,470.97.

2.      This Application has been prepared in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the *Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 796] (the "Interim Compensation Order"), the *Order Authorizing*

2

*Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 327* [ECF No. 3307] (the

"Fee Examiner Order"), the Amended Guidelines for Fees and Disbursements for Professionals

in the Southern District of New York (June 17, 2013) promulgated pursuant to Local Bankruptcy

Rule 2016-1(a) (the "Local Guidelines") and the United States Trustee's Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 for Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013 (the

"U.S. Trustee Guidelines" and, together with the Local Guidelines, the "Fee Guidelines").

3.      The Chair (as defined herein) of the Creditors' Committee has been given the

opportunity to review this Application and has approved the compensation and reimbursement of

expenses requested herein.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334.  This

matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are Bankruptcy Code sections

330 and 331, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

### A.      The Debtors' Chapter 11 Cases

7.      On October 15, 2018, and continuing thereafter, each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to

operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a)

and 1108.  The Debtors' chapter 11 cases (the "Chapter 11 Cases") are jointly administered for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

8.      On October 24, 2018 (the "Formation Date"), the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed the Creditors' Committee pursuant to Bankruptcy Code section 1102(a).  *See Notice of Appointment of Official Committee of Unsecured Creditors* [ECF No. 276].  The Creditors' Committee currently comprises eight members.[2]  Simon Property Group, L.P. serves as chair of the Creditors' Committee (the "Chair").

9.      On January 3, 2019, the U.S. Trustee filed the *Motion of United States Trustee for Order Authorizing Appointment of Independent Fee Examiner* [ECF No. 1470].  On April 22, 2019, this Court entered the Fee Examiner Order.  On the same day, Paul E. Harner was appointed as fee examiner in the Chapter 11 Cases (the "Fee Examiner").  The Fee Examiner has retained Ballard Spahr LLP as legal counsel.

**B.      Retention of Akin Gump**

10.     On the Formation Date, the Creditors' Committee selected Akin Gump as its legal counsel.  On November 28, 2018, the Creditors' Committee filed its application to retain and employ Akin Gump as counsel to the Creditors' Committee [ECF No. 923] (the "Akin Retention Application"), which application was authorized by an order of this Court dated December 10, 2018 [ECF No. 1107] (the "Akin Retention Order").[3]

---

[2] The following entities currently comprise the Creditors' Committee:  (i) Apex Tool Group, LLC; (ii) The Bank of New York Mellon Trust Company, N.A. as Indenture Trustee; (iii) Brixmor Operating Partnership, L.P.; (iv) Computershare Trust Company, N.A.; (v) Oswaldo Cruz; (vi) Pension Benefit Guaranty Corporation ("PBGC"); (vii) Simon Property Group, L.P.; and (viii) Winiadaewoo Electronics America, Inc.

[3] The Creditors' Committee selected FTI Consulting, Inc. ("FTI") to serve as its financial advisor and Houlihan Lokey Capital, Inc. ("Houlihan") to serve as its investment banker on October 25, 2019 and October 29, 2019, respectively.  The orders authorizing the retention of FTI [ECF No. 1325] and Houlihan [ECF No. 1326] were entered on December 19, 2018.

11.     The Akin Retention Order authorizes the Creditors' Committee to retain and employ Akin Gump as its counsel in the Chapter 11 Cases in accordance with Akin Gump's normal hourly rates and disbursement policies, *nunc pro tunc* to October 24, 2018, all as contemplated by the Akin Retention Application. Specifically, the Akin Retention Order authorizes Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

12.     On October 15, 2019, the Court entered the Confirmation Order [ECF No. 5370]. Pursuant to the Confirmation Order, the Creditors' Committee was granted joint standing with the Debtors to commence, prosecute, settle and otherwise dispose of the (i) Specified Causes of Action, (ii) other Preserved Causes of Action against the ESL Parties, (iii) all claims and causes of action asserted in the pending adversary proceeding captioned *Sears Holdings Corp. v. Lampert*, Adv. Pro. 19-08250 (RDD) (Bankr. S.D.N.Y.) (the "Adversary Proceeding") and any other claims or causes of action ancillary thereto and (iv) claims or causes of action against insurance carriers related to coverage for claims asserted in the Adversary Proceeding (the foregoing referred to collectively as the "Jointly Asserted Causes of Action"). The Jointly Asserted Causes of Action are overseen by designees who are the initial members of the Liquidating Trust Board (the "Litigation Designees").[4]  Pursuant to the Confirmation Order, Akin Gump serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence, prosecute and otherwise litigate the Jointly Asserted Causes of Action." *See* Confirmation Order ¶ 22.[5]  The Confirmation Order authorizes Akin Gump to be

---

[4] The initial members of the Liquidating Trust Board are (a) Patrick Bartels, (b) Alan Carr, (c) Eugene Davis, (d) William Transier and (e) Raphael Wallander.

[5] The Creditors' Committee Settlement provided, among other things, that three of the five members of the Liquidating Trust Board would be selected by the Creditors' Committee and the remaining two members would be selected by the Debtors. In turn, the proposed members of the Liquidating Trust Board would choose, subject to

compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses. *Id*.

**C.      Prior Fee Applications and Fee Statements Filed During the Compensation Period**

13.      On August 14, 2019, Akin Gump filed and served the *Second Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP as Counsel to the Official Committee of Unsecured Creditors for Allowance of Compensation for Services Rendered and Reimbursement of Expenses for the Period of March 1, 2019 Through and Including June 30, 2019* [ECF No. 4846] (the "Second Interim Fee Application").  Pursuant to the Second Interim Fee Application, Akin Gump requested interim allowance of fees in the amount of $5,741,021.50 and reimbursement of expenses in the amount of $817,560.08 for the period from March 1, 2019 through and including June 30, 2019.  There were no objections to the Second Interim Fee Application and, on October 24, 2019, the Court entered an order approving the Second Interim Fee Application [ECF No. 5507] (the "Second Interim Fee Order").  Pursuant to the Second Interim Fee Order, on October 31, 2019, Akin Gump received payment of $1,148,204.30 (representing the 20% of fees withheld from the payments made on account of the monthly fee statements subject to the Second Interim Fee Application).

14.      On September 6, 2019, Akin Gump filed and served the *Tenth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of July 1, 2019 Through July 31, 2019* [ECF No. 5086] (the "Tenth Monthly Fee

---

various factors and procedures, primary litigation counsel for the Liquidating Trust.  In July 2019, the proposed members of the Liquidating Trust Board chose Akin Gump to serve as Primary Trust Litigation Counsel.

Statement"),[6] pursuant to which Akin Gump sought payment of (i) $ 1,148,464.80 (80% of $1,435,581.00) as compensation for professional services rendered and (ii) $62,099.98 for reimbursement of expenses.  Akin Gump did not receive any objections to the Tenth Monthly Fee Statement and received payment in respect thereof on October 21, 2019.

15.    On October 14, 2019, Akin Gump filed and served the *Eleventh Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of August 1, 2019 Through August 31, 2019* [ECF No. 5364] (the "Eleventh Monthly Fee Statement"),[7] pursuant to which Akin Gump sought payment of (i) $1,098,212.80 (80% of $1,372,766.00) as compensation for professional services rendered and (ii) $93,272.94 for reimbursement of expenses.  Akin Gump did not receive any objections to the Eleventh Monthly Fee Statement and received payment in respect thereof on November 1, 2019.

16.    On November 22, 2019, Akin Gump filed and served the *Twelfth Monthly Fee Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the Period of September 1, 2019 Through September 30, 2019* [ECF No. 6077] (the "Twelfth Monthly Fee Statement"),[8] pursuant to which Akin Gump sought payment of (i) $979,921.60 (80% of $1,224,902.00) as compensation for professional services rendered and (ii) $47,323.21

---

[6] A copy of the Tenth Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MjE4OTE0&id2=0.

[7] A copy of the Eleventh Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MjM0OTcz&id2=0.

[8] A copy of the Twelfth Monthly Fee Statement can be accessed at: https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MzExMTg2&id2=0.

for reimbursement of expenses.  Akin Gump did not receive any objections to the Twelfth

Monthly Fee Statement and received payment in respect thereof on December 12, 2019.

17.    On December 9, 2019, Akin Gump filed and served the *Thirteenth Monthly Fee*

*Statement of Akin Gump Strauss Hauer & Feld LLP for Professional Services Rendered and*

*Disbursements Incurred as Counsel to the Official Committee of Unsecured Creditors for the*

*Period of October 1, 2019 Through October 31, 2019* [ECF No. 6169] (the "Thirteenth Monthly

Fee Statement"[9] and, together with the Tenth Monthly Fee Statement, the Eleventh Monthly Fee

Statement and the Twelfth Monthly Fee Statement, the "Monthly Fee Statements"), pursuant to

which Akin Gump sought payment of (i) 1,080,638.40 (80% of $1,350,798.00) as compensation

for professional services rendered and (ii) $115,774.84 for reimbursement of expenses.  As of the

date of this Application, Akin Gump has not received any objections to the Thirteenth Monthly

Fee Statement.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

18.    By this Application, Akin Gump requests allowance of interim compensation for

professional services rendered during the Compensation Period in the amount of $5,384,047.00

and expense reimbursements of $318,470.97.[10]  During the Compensation Period, Akin Gump

---

[9] A copy of the Thirteenth Monthly Fee Statement can be accessed at:
https://restructuring.primeclerk.com/sears/Home-DownloadPDF?id1=MzEyOTYw&id2=0.

[10] Akin Gump voluntarily reduced its fees and expenses prior to the filing of the applicable Monthly Fee Statement
by the following amounts: (i) $219,765.00 for fee reductions and (ii) $35,893.27 for expense reductions.  The
voluntary fee and expense reductions relate to, among other things: (i) fees incurred by professionals or
paraprofessionals for attending meetings, conferences or hearings at which their presence was not essential to the
issues or matters addressed therein; (ii) duplicative work or work performed by professionals or paraprofessionals
billing a *de minimis* amount of time to the Chapter 11 Cases during the applicable period; (iii) certain fees on
account of non-working travel time; (iv) fees incurred in connection with certain administrative tasks; and (v)
certain overtime meal and travel expenses.  Consequently, Akin Gump does not seek payment of these fees and
expenses in this Application.

attorneys and paraprofessionals expended a total of 6,621.70 hours for which compensation is sought.

19.     The fees charged by Akin Gump in the Chapter 11 Cases are billed in accordance with Akin Gump's existing billing rates and procedures in effect during the Compensation Period.  The rates Akin Gump charges for the services rendered by its professionals and paraprofessionals in the Chapter 11 Cases are the same rates Akin Gump charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.  The disclosures required by the U.S. Trustee Guidelines regarding the customary and comparable compensation are annexed hereto as **Exhibit B**.

20.     Akin Gump maintains computerized records of the time spent by all Akin Gump professionals and paraprofessionals in connection with the Chapter 11 Cases.  A summary of compensation by timekeeper is attached hereto in **Exhibit C**, and a summary of fees by task code is attached hereto in **Exhibit D**.  The itemized time records for Akin Gump professionals and paraprofessionals performing services during the Compensation Period have been filed and served in the Monthly Fee Statements in accordance with the Interim Compensation Order.

21.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A summary of the categories of expenses and amounts for which reimbursement is requested by this Application is attached hereto as **Exhibit E**.

22.     Akin Gump's staffing plan for the Compensation Period is attached hereto as **Exhibit F**.

### SUMMARY OF SERVICES PERFORMED BY
### AKIN GUMP DURING THE COMPENSATION PERIOD

23.    The services provided by Akin Gump during the Compensation Period were

actual and necessary for the administration of the Chapter 11 Cases, performed at the request of

the Creditors' Committee and/or the Litigation Designees and commensurate with the

complexity and significance of this matter.  The variety and complexity of the issues in the

Chapter 11 Cases and the need to act or respond to such issues on an expedited basis during the

Compensation Period required the expenditure of significant time by Akin Gump professionals

and paraprofessionals from numerous legal disciplines.

24.    The following is a summary of the professional services rendered by Akin Gump

during the Compensation Period.  This summary is organized in accordance with Akin Gump's

internal system of task codes established at the outset of the Chapter 11 Cases based on the Fee

Guidelines.  In classifying services into task codes, Akin Gump attempted to place the services

performed in the category that most closely related to the services provided.  The below does not

include summaries for certain task codes for which a *de minimis* amount of time was billed

during the Compensation Period.

25.    Moreover, the following summary of services rendered during the Compensation

Period is not intended to be a detailed description of the work performed.  Rather, it merely is an

attempt to highlight certain of those areas in which services were rendered, as well as to identify

certain of the matters and issues that Akin Gump was required to address during the

Compensation Period.

10

A.    **General Case Administration (Task Code 2)**

| Total Hours | Fees |
|---|---|
| 43.50 | $26,125.50 |

26.    This category includes time spent by Akin Gump professionals and paraprofessionals performing various administrative services in order to represent the Creditors' Committee effectively and efficiently, including, among other things: (i) reviewing and analyzing pleadings and other documents filed by the Debtors and third parties; (ii) apprising Akin Gump attorneys and paraprofessionals of recent filings and upcoming deadlines; (iii) preparing internal task lists and case calendars; and (iv) communicating with the members of the Creditors' Committee, the Debtors' advisors and other parties in interest regarding general case administration and related matters.

27.    During the Compensation Period, Akin Gump kept in close contact with counsel to the Debtors and other parties in interest to discuss open scheduling issues, the timing for filing various motions and applications and the type of information the Creditors' Committee would require to analyze each such motion or application.  Akin Gump also consulted regularly with FTI and Houlihan with respect to documents and other information received from the Debtors, their representatives and other parties in interest.

28.    Akin Gump professionals and paraprofessionals also monitored the docket for the Chapter 11 Cases to remain apprised of all critical matters.  For each significant filing, Akin Gump professionals and paraprofessionals worked to ensure that the appropriate parties were notified of its contents, relevant response deadlines, hearing dates and any other critical matters related thereto.  Further, in connection with motions and applications filed by the Debtors and other parties in the Chapter 11 Cases, Akin Gump analyzed and conducted diligence with respect to the subject matter of the motion or application to determine, among other things, the effect the

11

relief requested would have on the Debtors, their creditors and the administration of the Chapter 11 Cases.  Akin Gump's analysis and diligence efforts included: (i) reviewing underlying documentation and litigation related to the applicable motion or application; (ii) meeting with or holding conference calls with representatives of the Debtors and third parties to attempt to achieve amicable resolutions of the issues involved; and (iii) working with the Creditors' Committee's other advisors to ensure that the Creditors' Committee understood the effects the requested relief would have on the Debtors' estates and creditors.  Due to Akin Gump's experience counseling official committees of unsecured creditors, Akin Gump believes it was able to address all issues relating to case administration that have arisen during the pendency of the Chapter 11 Cases in an effective and efficient manner.

**B.**     **Akin Gump Fee Application/Monthly Billing Reports (Task Code 3)**

| Total Hours | Fees |
|:---:|:---:|
| 319.90 | $217,358.00 |

29.     This category includes time spent by Akin Gump professionals and paraprofessionals preparing and drafting the Second Interim Fee Application and Monthly Fee Statements and responding to all inquiries and requests regarding the foregoing, including those from the Fee Examiner and the U.S. Trustee.  Pursuant to the Interim Compensation Order, the Second Interim Fee Application and the Monthly Fee Statements contained a list of individuals who rendered services to the Creditors' Committee during the relevant compensation period, information as to each individual's title, billing rate and hours worked and a comprehensive breakdown of the fees incurred and disbursements expended.  To minimize costs in connection with this time-intensive process, Akin Gump relied on paraprofessionals to prepare the initial drafts of the Second Interim Fee Application and Monthly Fee Statements, thereby limiting the time spent by attorneys on the review of fees, where reasonably practicable.

**C.    Analysis of Other Professionals Fee Applications/Reports (Task Code 4)**

| Total Hours | Fees |
|---|---|
| 45.10 | $29,098.00 |

30.    This category includes time spent by Akin Gump professionals and paraprofessionals reviewing monthly fee statements prepared by FTI and Houlihan as well as monthly fee statements submitted to the Court by other estate retained professionals.  Akin Gump reviewed such fee statements to ensure that professionals operated in accordance with their individual mandates and charged reasonable fees in connection therewith.  This category also includes time spent assisting the Creditors' Committee's other professionals in finalizing, filing and serving their respective fee statements and fee applications.

**D.    Creditor Committee Matters/Meetings (Task Code 7)**

| Total Hours | Fees |
|---|---|
| 56.90 | $61,981.00 |

31.    This category includes time spent by Akin Gump professionals and paraprofessionals: (i) preparing for and participating in meetings and conference calls with the Creditors' Committee as a whole and with individual members of the Creditors' Committee; (ii) participating in update calls among the professionals to the Creditors' Committee regarding pending matters and strategy; (iii) responding to numerous inquiries from individual unsecured creditors; and (iv) attending to other general Creditors' Committee matters.

32.    The Creditors' Committee played a very active role in the Chapter 11 Cases during the Compensation Period and Akin Gump, together with the Creditors' Committee's other professionals, held no fewer than seven telephonic meetings with the full Creditors' Committee during the Compensation Period in addition to numerous telephonic conferences with individual Creditors' Committee members on various topics.  Prior to each scheduled meeting with the Creditors' Committee, Akin Gump attorneys reviewed and analyzed pending matters,

13

coordinated with the Creditors' Committee's other advisors and prepared an agenda addressing issues that required the Creditors' Committee's attention.  In addition, Akin Gump prepared, or assisted FTI and Houlihan in preparing, detailed memoranda and presentations for the Creditors' Committee addressing pertinent matters in the Chapter 11 Cases.  During these meetings, Akin Gump assisted the Creditors' Committee in formulating positions with respect to significant matters.

33.     Through meetings, conference calls and correspondence, Akin Gump assisted the Creditors' Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Chapter 11 Cases, monitor closely the Debtors' management of the Chapter 11 Cases and reach independent conclusions on the merits of specific matters.  Akin Gump professionals and paraprofessionals devoted a significant number of hours to this category during the Compensation Period in order to provide information relating to the Chapter 11 Cases to the Creditors' Committee and ensure that the Creditors' Committee was prepared to make informed decisions with respect to significant case issues.  Although the tasks in this category do not necessarily relate to specific legal issues, they nevertheless were essential because they facilitated Akin Gump's management of the Chapter 11 Cases and supported Akin Gump's performance of other substantive tasks.

E.     **Court Hearings (Task Code 8)**

| Total Hours | Fees |
|---|---|
| 358.90 | $344,350.50 |

34.     This category includes time spent by Akin Gump professionals and paraprofessionals in connection with Court hearings and Chambers conferences held during the Compensation Period.  During the Compensation Period, Akin Gump participated in nine hearings and multiple Chambers conferences.

14

35.     Notably, several significant hearings occurred during the Compensation Period that required extensive preparation and participation of numerous Akin Gump attorneys.  These hearings included, among others: (i) the two-day evidentiary hearings on July 23, 2019 and July 31, 2019 on the extent of the Second Lien Parties' 507(b) Claims (as defined herein) and any offsetting 506(c) Surcharges (as defined herein); (ii) hearings on July 11, 2019 and September 12, 2019 with respect to the ongoing APA Disputes (as defined herein) with Transform (as defined herein); and (iii) the two-day Confirmation Hearing on October 3, 2019 and October 7, 2019, which resulted in confirmation of the Plan on October 7, 2019 and entry of the Confirmation Order on October 15, 2019 [ECF No. 5293].

36.     In preparing for hearings and conferences, Akin Gump professionals, together with the Creditors' Committee's other advisors, reviewed and analyzed all issues, applicable motions and applications filed with the Court, including any objections and responses thereto, discussed with the Debtors' advisors and other relevant parties the relief requested and, as necessary, asserted the Creditors' Committee's position at such hearings and conferences.  In addition, following each hearing or conference, Akin Gump provided the Creditors' Committee with updates and analyses of the results thereof, either in written form or during the following Creditors' Committee call.

**F.     General Claims Analysis/Claims Objections (Task Code 12)**

| Total Hours | Fees |
|---|---|
| 159.70 | $160,089.50 |

37.     This category includes time spent by Akin Gump professionals and paraprofessionals reviewing and analyzing claims against the Debtors' estates and any settlements thereof.  During the Compensation Period, Akin Gump, together with FTI and Houlihan, worked closely with the advisors to the Debtors and other parties in interest to

understand the amount and validity of secured, priority, administrative and unsecured claims.  In

connection with Plan negotiations, it was essential for the Creditors' Committee to obtain a

comprehensive understanding of the secured, priority and administrative expense claims entitled

to payment in full under the Bankruptcy Code.  Accordingly, during the Compensation Period,

Akin Gump, together with the Creditors' Committee's other advisors: (i) provided the Creditors'

Committee with frequent updates regarding claims pool estimates and issues related thereto; (ii)

performed analyses with respect to the bases for various claims and potential settlements thereof,

including administrative expense claims and those claims asserted by certain plaintiffs involved

in the insolvency proceedings of Sears Canada Inc. ("Sears Canada"); (iii) participated in

negotiations among the Debtors and certain creditors asserting secured or administrative expense

claims; and (iv) reviewed analyses prepared by advisors retained by the Debtors to pursue

preference actions under Bankruptcy Code section 547 and other comparable actions under

applicable nonbankruptcy law to understand, among other things, the potential offsets to asserted

claims.

**G.     Analysis of Pre-Petition Transactions (Task Code 13) and Jointly Asserted Causes
of Action (Task Code 20)[11]**

| Total Hours (Task Code 13) | Fees (Task Code 13) |
|---|---|
| 2,553.50 | $1,757,478.00 |
| **Total Hours (Task Code 20)** | **Fees (Task Code 20)** |
| 672.50 | $515,680.50 |

38.     These categories include time spent by Akin Gump professionals and

paraprofessionals, in conjunction with the Creditors' Committee's other advisors, conducting a

---

[11] As described further herein, pursuant to the Confirmation Order and effective as of the date thereof, Akin Gump
serves as "primary litigation counsel to act on behalf of the Litigation Designees to investigate, commence,
prosecute and otherwise litigate the Jointly Asserted Causes of Action" in addition to its role as counsel to the
Creditors' Committee.  *See* Confirmation Order ¶ 22.  To facilitate review of Akin Gump's fees attributable to its
role as counsel to the Litigation Designees following entry of the Confirmation Order, a separate task code (Task
Code 20) contains all such work.

comprehensive investigation (the "Investigation") into the related-party transactions that

preceded the commencement of the Chapter 11 Cases and claims arising therefrom.  During the

Compensation Period, Akin Gump communicated regularly with counsel to the Debtors'

Restructuring Subcommittee with respect to the contents of the complaint filed by the

Restructuring Subcommittee on April 17, 2019 against ESL and other parties [ECF No. 3287]

(the "Adversary Complaint") and whether additional parties or claims should be added thereto.

        39.     During the Compensation Period and in connection with the Plan process (as

described further herein), the Debtors and the Creditors' Committee determined that a longer

period of time would be required between confirmation of the Plan and the expected Effective

Date, *i.e.*, the date on which the Liquidating Trust would be established).  In view of this

necessary but manageable delay, the Debtors and the Creditors' Committee determined that the

initial members of the Liquidating Trust Board should begin overseeing and directing the

prosecution of the Adversary Proceeding for the benefit of the Debtors' estates and their

creditors during the interim period between entry of the Confirmation Order and the Effective

Date of the Plan.

        40.     In this respect, the Confirmation Order entered on October 15, 2019 granted the

Creditors' Committee joint standing with the Debtors to commence, prosecute, settle and

otherwise dispose of the Jointly Asserted Causes of Action, which are overseen by the Litigation

Designees.  Thus, upon entry of the Confirmation Order and commencement of its role as

primary litigation counsel to the Litigation Designees with respect to the Jointly Asserted Causes

of Action, Akin Gump drafted an amendment to the Adversary Complaint (the "First Amended

Adversary Complaint") in the Adversary Proceeding.  Akin Gump's expanded role required the

involvement of additional professionals and paraprofessionals to assist with the tasks associated

with the prosecution of the various claims and causes of action asserted in the Adversary

Proceeding, including the 23 additional counts asserted and 26 additional defendants ultimately

added in the First Amended Adversary Complaint.

41.    During the Compensation Period, the Investigation comprised, among other

things, the following efforts by Akin Gump professionals and paraprofessionals:

- reviewing the voluminous discovery (over 360,000 documents and 6.3 million pages) produced in the Chapter 11 Cases in connection with the Debtors' prepetition transactions and engaging in other fact discovery, including drafting 28 document requests and subpoenas;[12]

- conducting extensive legal research and analysis of several dozen discrete legal issues in connection with potential claims arising from the Debtors' prepetition transactions, which research and analysis ultimately resulted in adding an additional 23 counts in the First Amended Adversary Complaint (for a total of 35 counts) and naming 26 additional defendants (for a total of 53 defendants); and

- collaborating with the advisors to the Restructuring Subcommittee on various proposed amendments to the Adversary Complaint.

42.    Akin Gump's efforts with respect to the Investigation on behalf of the Creditors'

Committee and, following the entry of the Confirmation Order, the Litigation Designees, formed

the basis for the modifications in the First Amended Adversary Complaint.  Specifically, the

First Amended Adversary Complaint asserts an additional 23 counts (for a total of 35 counts)

and names an additional 26 defendants (for a total of 53 defendants). Drafting the 258-page First

Amended Adversary Complaint was a highly involved and iterative process in light of the

voluminous discovery, the staggering damages alleged, the complex legal issues and the number

of parties involved.  Ultimately, the First Amended Adversary Complaint was filed on November

25, 2019 at the direction and oversight of the Litigation Designees.

---

[12] To minimize costs associated with the document review process, Akin Gump engaged contract attorneys to conduct a first level review of all documents received in connection with the Investigation and Adversary Proceeding.

43.     Finally, this category includes time spent by Akin Gump attorneys advising the

Litigation Designees on the content of the Adversary Complaint and how the Adversary

Complaint should be amended.  In connection therewith, Akin Gump provided the Litigation

Designees with in-depth analysis and summaries of various potential claims and causes of action.

**H.     Secured Creditor Issues/Communications/Meetings (Task Code 15)**

| Total Hours | Fees |
|---|---|
| 604.20 | $493,915.50 |

44.     This category includes time spent by Akin Gump professionals and

paraprofessionals in connection with claims asserted by ESL, Cyrus Capital Partners, L.P.

("Cyrus") and Wilmington Trust, N.A. ("Wilmington Trust" and, together with ESL and Cyrus,

the "Second Lien Parties") arising under Bankruptcy Code section 507(b) (the "507(b) Claims"),

and the Debtors' proposed surcharges of the Second Lien Parties' collateral pursuant to

Bankruptcy Code section 506(c) (the "506(c) Surcharges").  Prior to the Compensation Period,

on May 26, 2019, the Debtors filed the *Debtors' Motion to Estimate Certain 507(b) Claims for

Reserve Purposes* [ECF No. 4034] (the "Estimation Motion").  By stipulation among the Debtors

and the Second Lien Parties, which the Court entered on June 21, 2019 [ECF No. 4316] (the

"Rule 3012 Stipulation"), the Estimation Motion was deemed to be a motion pursuant to

Bankruptcy Rule 3012 to determine the amount, if any, of the 507(b) Claims and the amount of

any 506(c) Surcharges.

45.     During the Compensation Period, Akin Gump attorneys, along with the Creditors'

Committee's other advisors, performed the following tasks in connection with the Rule 3012

Stipulation, the Estimation Motion and the underlying 507(b) Claims and 506(c) Surcharges:

- analyzed the common reply brief [ECF No. 4439] and each of the individual
  reply briefs filed by the Second Lien Parties [ECF Nos. 4440, 4441, 4445];

- reviewed each expert report and supplemental declaration filed by the Debtors [ECF No. 4567] and the Second Lien Parties [ECF Nos. 4569, 4571, 4573];

- reviewed and analyzed expert and fact discovery regarding the 507(b) Claims and 506(c) Surcharges, including the various motions in limine to exclude or strike certain testimony [ECF Nos. 4564, 4564, 4566, 4568, 4570];

- researched and analyzed case law applicable to the disputes and conferred with the Debtors' counsel regarding legal issues raised by the dispute;

- participated in the depositions of the Second Lien Parties' three witnesses and the Debtors' two witnesses; and

- attended and participated in the two-day evidentiary hearing on the Estimation Motion on July 23 and July 31.

46.     Following the conclusion of the two-day hearing, the Court ordered that (x) the Second Lien Parties were not entitled to a 507(b) Claim [ECF No. 4740] (the "507(b) Order") and (y) the Debtors had not satisfied their burden of establishing the 506(c) Surcharges [ECF No. 4793] (the "506(c) Order").

47.     Thereafter, on August 14, 2019, ESL, Wilmington Trust and Cyrus each filed a separate notice appealing the 507(b) Order to the United States District Court for the Southern District of New York (the "District Court") [ECF Nos. 4832, 4839, 4845].  On September 18, 2019, ESL filed the *Motion of ESL for Certification of Direct Appeal to the United States Court of Appeals for the Second Circuit*, 19-cv-07660 (VB), [ECF No. 6] (the "Certification Motion"). Cyrus and Wilmington Trust filed joinders to the Certification Motion on September 17, 2019 and September 18, 2019, respectively.  Akin Gump's financial restructuring, litigation and appellate teams worked closely with Debtors' counsel to consider the requested relief in the Certification Motion and potential responses thereto.  On October 8, 2019, Akin Gump, on behalf of the Creditors' Committee filed the *Opposition of the Official Committee of Unsecured Creditors to Motion to Certify Direct Appeals to the Second Circuit*, 19-cv-07660, [ECF No. 33]

(the "Committee Opposition to Certification").[13]  After filing the Committee Opposition to

Certification, Akin Gump attorneys prepared for oral argument on the Certification Motion and

worked closely with the Debtors to coordinate arguments.  On October 17, 2019, Akin Gump

attorneys participated in a status conference before the District Court, during which the District

Court denied the Certification Motion, largely on the grounds put forward by the Debtors and the

Creditors' Committee.  *See* 19-cv-7660 (VB), [ECF No. 40].  Thereafter, the District Court

ordered a briefing schedule for the 507(b) Order appeal, with the appellants' brief due November

2, 2019, the appellees' brief due December 9, 2019 and the appellants' reply brief due December

23, 2019.

48.    On August 21, 2019 and August, 22, 2019, respectively, the Debtors and the

Creditors' Committee filed separate notices appealing the 506(c) Order [ECF Nos. 4941, 4954].

The Debtors' and the Creditors' Committee sought to preserve their respective rights in the event

the 507(b) Order is reversed.  Accordingly, on October 8, 2019, the Debtors filed the *Motion to

Stay the Debtors' 506(c) Appeal Pending Resolution of Second-Lien Holders' 507(b) Appeals*,

19-cv-08002 (VB), [ECF No. 17] (the "Debtors' Stay Motion").  On October 9, 2019, Akin

Gump filed the *Official Committee of Unsecured Creditors' (I) Motion to Stay the 506(c) Appeal

Pending the Resolution of the 507(b) Appeals and (II) Joinder to the Debtors' Stay Motion*, 19-

cv-08237 (VB), [ECF No. 13] (the "Creditors' Committee's Stay Motion" and, together with the

Debtors' Stay Motion, the "Stay Motions").  In response, the Second Lien Parties filed the

*Second-Lien Holders' Memorandum of Law in Opposition to Debtors' and Committee's Motions

to Stay 506(c) Appeals*, 19-cv-08237 (VB), [ECF No. 14] on October 15, 2019.  Akin Gump

---

[13] Similarly, on October 8, 2019 the Debtors filed the *Debtors' Memorandum of Law in Opposition to Motion for
Certification of Direct Appeal*, 19-cv-07660 (VB), ECF No. 31.

attorneys analyzed the Second Lien Parties' arguments, and, in coordination with Debtors' counsel, filed the *Debtors' and UCC's Joint Reply in Support of their Motions to Stay 506(c) Appeals Pending Resolution of Second-Lien Holders' 507(b) Appeals*, 19-cv-08002 (VB), [ECF No. 24] on October 23, 2019. Thereafter, without further briefing or argument, the District Court entered a *Memorandum Opinion and Order* granting the Debtors' Stay Motion and the Creditors' Committee's Stay Motion. *See* 19-cv-08002 (VB), [ECF No. 25]. The District Court's opinion and order largely mirrored the arguments set forth in the Debtors' and the Creditors' Committee's briefing.

## I.     Automatic Stay Issues (Task Code 16)

| Total Hours | Fees |
|:---:|:---:|
| 77.00 | $63,948.50 |

49.     This category includes time spent by Akin Gump professionals and paraprofessionals reviewing and analyzing motions for relief from the automatic stay. In particular, Akin Gump attorneys focused on the motion to lift the automatic stay [ECF No. 4794] (the "D&O Lift Stay Motion") filed by certain current and former directors of Sears Holdings Corporation (the "Director Defendants").

50.     The D&O Lift Stay Motion was of particular concern to the Creditors' Committee because the Creditors' Committee believes that the Debtors' estates have valuable claims and causes of action against the Debtors' current and former directors and officers (which claims are the subject of the First Amended Adversary Complaint) and that, therefore, the proceeds from the Debtors' D&O policies likely will be recovered for the benefit of creditors. By the D&O Lift Stay Motion, the Director Defendants sought to modify the automatic stay in order to permit certain insurance carriers to reimburse the Director Defendants for defense costs the Director Defendants anticipated incurring in connection with the Adversary Proceeding. After the filing

of the D&O Lift Stay Motion, Akin Gump attorneys: (i) conducted legal research regarding the automatic stay and its applicability to the relevant insurance policies; (ii) communicated with the Debtors' professionals to understand the costs the Director Defendants would incur in defending themselves against claims asserted in the Adversary Proceeding; and (iii) analyzed the effect the relief requested by the D&O Lift Stay Motion would have on the Debtors' estates and creditors. Akin Gump attorneys worked with Debtors' counsel to negotiate with the Director Defendants on the proposed order for the D&O Lift Stay Motion.  Ultimately, the Director Defendants agreed to certain favorable changes to the proposed order without the need for the Creditors' Committee to file an objection and, on October 16, 2019, the Court entered an order granting the D&O Lift Stay Motion [ECF No. 5382].

**J.**     **Labor Issues/Employee Benefits (Task Code 19)**

| Total Hours | Fees |
| --- | --- |
| 48.30 | $58,659.00 |

51.     This category includes time spent by Akin Gump professionals in connection with various retiree benefit issues.  On July 9, 2019, the U.S. Trustee appointed an official committee of retired employees (the "1114 Committee") in order to, among other things, facilitate negotiations among retired employees, the Debtors and the Creditors' Committee regarding the modification or termination of the Debtors' life insurance benefit plans (the "Life Insurance Plans").

52.     On July 29, 2019, the Debtors filed a motion seeking to modify the terms of certain life insurance plans [ECF No. 4635] (the "1114 Motion") in accordance with a draft settlement proposal, which the Creditors' Committee reviewed and approved, made to the 1114 Committee (the "Initial Proposal").  By the 1114 Motion, the Debtors requested that the Court approve the Initial Proposal in the event that the Debtors and the 1114 Committee were unable to

reach a settlement consensually.  The Initial Proposal contemplated, among other things: (i) granting administrative expense claims in the amount of $5,000 to retirees holding unpaid life insurance claims under the Life Insurance Plans who died between the termination date of the Life Insurance Plans and the entry of the order approving the 1114 Motion; and (ii) granting general unsecured claims in the amount of $5,000 to all other retirees with unpaid life insurance claims under the Life Insurance Plans.

53.    On August 6, 2019, the 1114 Committee rejected the Initial Proposal, offered a counterproposal (the "Retirees' Counterproposal") and filed an objection to the 1114 Motion [ECF No. 4768] (the "Retirees' 1114 Objection").  By the Retirees' 1114 Objection, the 1114 Committee argued that it had "good cause" to reject the Initial Proposal.  Akin Gump attorneys worked closely with the Debtors' professionals in an effort to understand the terms of the Retirees' Counterproposal and evaluate the impact that such proposal would have on the Debtors' financial condition and ability to confirm a plan.  Following numerous discussions, the Debtors and Creditors' Committee determined that, while the Retirees' Counterproposal was not acceptable, a reasonable settlement with the 1114 Committee was still in the best interests of the Debtors' estates and creditors generally.  Accordingly, on August 15, 2019, the Debtors, with the approval of the Creditors' Committee, proposed a revised settlement to the 1114 Committee and filed a response in support of the 1114 Motion [ECF No. 4885].  In connection therewith, Akin Gump, on behalf of the Creditors' Committee, prepared and filed the *Joinder of the Official Committee of Unsecured Creditors to Motion of Debtors for Modification of Retiree Benefits and Reply in Support Thereof* [ECF No. 4887].

54.    Thereafter, the Debtors, the Creditors' Committee and the 1114 Committee continued to negotiate the terms of a consensual settlement, exchanging multiple revised

proposals and counterproposals.  Ultimately, on the eve of the Confirmation Hearing, the

Debtors and the Creditors' Committee reached an agreement in principle with the 1114

Committee on the terms of a consensual settlement, which was announced on October 3, 2019.

On October 10, 2019, the Court entered an order: (i) permitting the Debtors to terminate the Life

Insurance Plans; and (ii) authorizing the Debtors to implement the terms of the agreed

modification proposal [ECF No. 5015].

**K.    Disclosure Statement/Solicitation/Plan Confirmation (Task Code 22)**

| Total Hours | Fees |
|:---:|:---:|
| 1,395.60 | $1,385,848.00 |

55.    This category includes time spent by Akin Gump professionals and

paraprofessionals during the Compensation Period in connection with the Plan, Disclosure

Statement, Plan Supplement and other related matters.  Following the announcement of the

Creditors' Committee Settlement on June 28, 2019, Akin Gump and the Creditors' Committee's

other advisors focused their efforts on negotiating and finalizing the Plan and the Plan

Supplement and working to secure confirmation of the Plan.  Among other things, Akin Gump

attorneys: (i) negotiated and commented on the Liquidating Trust Agreement, the proposed

Confirmation Order and all other Plan-related documents; (ii) negotiated with various creditors,

including administrative expense creditors, in advance of confirmation; (iii) participated in

briefing, discovery and depositions relating to confirmation of the Plan; and (iv) analyzed the

two appeals of the Confirmation Order and represented the Creditors' Committee in other post-

Confirmation efforts.

56.    Following the close of the Sale Transaction, most of the Debtors' assets

comprised litigation claims (*i.e.*, the Preserved Causes of Action), which, pursuant to the terms

of the Plan, would be transferred to the Liquidating Trust for the benefit of creditors.  During the

Compensation Period, Akin Gump devoted significant time to negotiating and revising the Plan,

proposed Confirmation Order, proposed Liquidating Trust Agreement and related documents to

ensure that the Liquidating Trust Board (and the Litigation Designees prior to the Effective Date)

had appropriate oversight, duties and powers to be in a position to monetize the Debtors'

remaining assets and maximize value for creditors.  These efforts required, in particular, the

expertise of members of Akin Gump's financial restructuring, corporate and litigation teams.

Ultimately, the Debtors filed the agreed form of the Liquidating Trust Agreement and the other

documents comprising the Plan Supplement on July 26, 2019, August 2, 2019, October 1, 2019

and October 7, 2019 [ECF Nos. 4632, 4703, 5295, 5335].

57.     Following selection of the Liquidating Trust Board Members, the Creditors'

Committee spent significant time during the Compensation Period discussing the terms of

proposed compensation for the Liquidating Trust Board Members.  In connection therewith,

Akin Gump attorneys conducted research and analysis to advise the Creditors' Committee

regarding an appropriate and reasonable compensation package.  Following numerous

discussions and negotiations, the Creditors' Committee approved the proposed compensation for

the Liquidating Trust Board, as set forth in the *Notice of Filing of Fourth Plan Supplement in

Connection with Modified Second Amended Joint Chapter 11 Plan of Sears Holdings

Corporation and Its Affiliated Debtors* [ECF No. 5335].[14]

58.     In addition, during the Compensation Period, Akin Gump attorneys devoted

significant time to working with the Debtors to negotiate a settlement with certain administrative

creditors resolving their confirmation objections.  To encourage these settlement discussions, the

---

[14] After the close of the Compensation Period, and following a contested hearing held on December 13, 2019, the
Court approved the proposed compensation for the Liquidating Trust Board Members (and, prior to the Effective
Date, the Litigation Designees).

Debtors adjourned the Confirmation Hearing to October 3, 2019.[15]  During this adjournment,

Akin Gump attorneys and the Creditors' Committee's other advisors worked closely with the

Debtors' advisors to: (i) draft confidentiality agreements for the advisors to administrative

creditors; (ii) formulate various potential settlement proposals and prepare term sheets reflecting

these proposal; and (iii) participate in negotiations with various administrative creditors.  These

efforts, following a lengthy but productive process, ultimately resulted in the execution of a term

sheet among the Creditors' Committee, the Debtors and an ad hoc group of administrative

expense claimants (the "Ad Hoc Vendor Group") on October 1, 2019[16], which term sheet formed

the basis for the Administrative Expense Claims Consent Program.  While the Administrative

Expense Claims Consent Program initially resolved only the objections to confirmation filed by

the Ad Hoc Vendor Group, the program ultimately resulted in additional administrative expense

creditors withdrawing their objections to confirmation.

59.    During the Compensation Period, Akin Gump reviewed and analyzed all issues

raised by parties objecting to the Plan, including: (i) the proposed substantive consolidation

settlement; (ii) the PBGC Settlement; and (iii) the treatment of administrative expense claims.

Specifically, Akin Gump attorneys, on behalf of the Creditors' Committee, among other things:

- evaluated each of the approximately 23 confirmation objections and providing
  the Creditors' Committee with in-depth analysis regarding the objections and
  their potential effect on confirmation;

- worked closely with the Debtors to resolve objections (where possible) and
  formulating responses to the objections;

---

[15] The Confirmation Hearing originally was scheduled for August 16, 2019, with an objection deadline of August 5, 2019.

[16] The Debtors filed the *Notice of Filing of Administrative Expense Claims Consent Program Term Sheet with the Ad Hoc Vender Group and Creditors' Committee* [ECF No. 5292] on October 1, 2019, and the *Notice of Filing of Revised Administrative Expense Claims Consent Program Term Sheet with the Ad Hoc Vendor Group and Creditors' Committee* [ECF No. 5301] on October 2, 2019.

- participated in the formal discovery and deposition process relating to confirmation, including the depositions of the Debtors' two main witnesses, Brian Griffith and William Murphy;

- evaluated various attempts by creditors to convert the cases to chapter 7 in connection with objections to confirmation and the Debtors' alleged inability to satisfy their administrative expenses [ECF Nos. 5161, 5250, 5271, 5302];

- researched, drafted and filed, on September 13, 2019, the *Statement of the Official Committee of Unsecured Creditors in Support of Confirmation of the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 5145], which set forth the Creditors' Committee's position that confirmation of the Plan represented the best alternative available to the estates;

- reviewed and provided input with respect to the Debtors' memoranda in support of confirmation [ECF No. 5144, 5296]; and

- assisted the Debtors with formulating the evidence in support of confirmation, including the declarations of William Transier [ECF No. 5146], William Murphy [ECF No. 5149] and Brian Griffith [ECF Nos. 5148, 5297].

60.     During the Confirmation Hearing held on October 3, 2019 and October 7, 2019, the Court approved the Administrative Expense Claims Consent Program, confirmed the Plan and overruled the remaining objections.

61.     Following confirmation of the Plan, Akin Gump, on behalf of the Creditors' Committee continued to work on various Plan and Liquidating Trust-related matters.  These efforts included, among other things: (i) analyzing open issues in connection with the Confirmation Order appeals filed by ESL and various administrative creditors and working with the Debtors' advisors to develop responses thereto; (ii) responding to informal and formal objections to the proposed compensation for the members of the Liquidating Trust Board [ECF Nos. 5517, 6009]; and (iii) communicating and corresponding with the Debtors and other parties regarding the Administrative Expense Claims Consent Program.

## L.    Asset Dispositions/363 Asset Sales (Task Code 23)

| Total Hours | Fees |
|:---:|:---:|
| 222.20 | $205,133.00 |

62.    This category includes time spent by Akin Gump professionals and paraprofessionals in connection with the ongoing disputes related to Transform's obligations under the Asset Purchase Agreement that were the subject of the *Debtors' (I) Motion to (A) Enforce Asset Purchase Agreement and Automatic Stay Against Transform Holdco LLC and (B) Compel Turnover of Estate Property, and (II) Response to Transform Holdco LLC's Motion to Assign Matter to Mediation* [ECF No. 2796] (the "Turnover Motion," and the disputes related thereto, the "APA Disputes").[17]  A favorable resolution on the APA Disputes is critical to the Debtors' estates and their creditors.  Accordingly, since the filing of the Turnover Motion and the Mediation Motion, Akin Gump attorneys and the Creditors' Committee's other advisors have worked collaboratively with the Debtors' advisors to respond to Transform's various assertions.  In light of the evidentiary nature of the APA Disputes, these efforts required the involvement of a number of members of Akin Gump's  litigation team in addition to its corporate and financial restructuring attorneys.

63.    Specifically, during the Compensation Period, Akin Gump attorneys and the Creditors' Committee's other advisors analyzed Transform's and the Debtors' arguments,

---

[17] Prior to the Compensation Period, Transform filed a motion to assign the APA Disputes to mediation [ECF No. 2766] (the "Mediation Motion").  In response, the Debtors filed the Turnover Motion.  The Debtors and Transform each filed various responsive pleadings; however, at a hearing held on March 21, 2019, the Court instructed Transform and the Debtors to attempt to resolve the APA Disputes consensually based on guidance provided during that hearing.  Transform and the Debtors ultimately were unable to resolve the remaining APA Disputes and, on May 24, 2019, the Debtors filed the Motion to Enforce the Asset Purchase Agreement [ECF No. 4029] (the "Motion to Enforce").  Thereafter, on May 25, 2019, Transform filed an adversary complaint against the Debtors [ECF No. 4033] (the "Transform's Adversary Complaint").  In the Motion to Enforce and Transform's Adversary Complaint, the Debtors and Transform set forth their respective arguments regarding Transform's obligations to assume certain of the Debtors' liabilities pursuant to the Asset Purchase Agreement and Transform's arguments that the Debtors breached the terms of the Asset Purchase Agreement.

conducted extensive research regarding those arguments and prepared detailed memoranda for the Creditors' Committee. In addition, Akin Gump attorneys prepared for and attended the depositions of the following witnesses in connection with the APA Disputes: (i) Rob Riecker; (ii) Kunal Kamlani; (iii) Jeffrey Butz; (iv) Mohsin Meghji; and (v) Chris Good.

64. On July 3, 2019, the Debtors filed the *Debtors' Brief in Opposition to Transform Holdco LLC's Adversary Complaint and in further support of Debtors' Supplemental Motion to Enforce the Asset Purchase Agreement* [ECF No. 4430] (the "Debtors' Supplemental APA Brief"). Akin Gump and the Creditors' Committee's other advisors analyzed and provided feedback with respect to the arguments set forth in the Debtors' Supplemental APA Brief and, ultimately, determined to file a joinder to thereto [ECF No. 4436] (the "UCC APA Joinder").

65. In preparation for the July 11, 2019 evidentiary hearing on the APA Disputes, Akin Gump attorneys attended numerous telephonic meetings with counsel to the Debtors to evaluate and determine the appropriate legal strategy regarding the APA Disputes. During the July 11, 2019 hearing, after hearing evidence and argument from the Debtors and Transform, the Court issued rulings on Transform's obligations to assume certain accounts payable and Transform's rights to the Hoffman Estates property. In addition, the Court also offered its interpretation of various provisions of the Asset Purchase Agreement and ordered the parties to reconcile certain disputed amounts based on those interpretations.

66. During the July 11, 2019 hearing, the Court left open three issues relating to the APA Disputes (the "Remaining APA Disputes"): (i) the amount of "available cash" the Debtors had at the closing of the Asset Purchase Agreement; (ii) whether the Debtors breached their obligations to manage payables in the ordinary course; and (iii) whether Transform was liable for certain mechanics' liens. Rather than issuing a ruling at the hearing, the Court permitted the

Debtors and Transform to submit additional briefing on the Remaining APA Disputes and scheduled a separate hearing to consider the Remaining APA Disputes.

67.     Accordingly, Transform and the Debtors filed supplemental briefs in respect of the Remaining APA Disputes and in support of arguments made in their earlier pleadings [ECF Nos. 4767, 4973, 5085].  Akin Gump, on behalf of the Creditors' Committee, reviewed and analyzed Transform's and the Debtors' respective pleadings, conducted legal research regarding the arguments set forth therein and prepared memoranda regarding the same.  In addition, Akin Gump attorneys prepared for and attended the depositions of the following witnesses in connection with the Remaining APA Disputes:  (i) Kunal Kamlani; (ii) Rajat Prakash; (iii) Rob Riecker; (iv) Christopher Good; and (v) Mohsin Meghji.

68.     During a subsequent hearing on the APA Disputes held on September 12, 2019, the Court heard evidence and argument regarding the Remaining APA Disputes and, at the conclusion of the hearing, requested additional briefing as to the proper method for calculating damages under Transform's interpretation of the Asset Purchase Agreement.  Accordingly, Akin Gump worked with counsel to the Debtors to prepare a brief regarding the amount of damages, which was filed after the Compensation Period on November 22, 2019 [ECF No. 6079].

**M.     Travel Time (Task Code 25)**

| Total Hours | Fees |
|:---:|:---:|
| 26.70 | $29,651.00 |

69.     This category includes time spent by Akin Gump attorneys in transit to all hearings and meetings with parties in interest that required in-person attendance on behalf of the Creditors' Committee.  Akin Gump has discounted this time by 50% in accordance with the Local Rules and Fee Guidelines.

## ACTUAL AND NECESSARY DISBURSEMENTS

70.     Akin Gump seeks allowance of reimbursement in the amount of $318,470.97 for

expenses incurred during the Compensation Period in the course of providing professional

services to the Creditors' Committee.  Akin Gump's disbursement policies pass through all out

of pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to

determine.  For example, as it relates to computerized research, Akin Gump believes that it does

not make a profit on that service as a whole although the cost of any particular search is difficult

to ascertain.  Other reimbursable expenses (whether the service is performed by Akin Gump in-

house or through a third party vendor) include, but are not limited to, long-distance calls,

overtime meals, deliveries, court costs, transcript fees, discovery and temporary legal staffing

services, travel and clerk fees.

## FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

71.     Bankruptcy Code section 330 provides, in relevant part, that the Court may award

to a professional person "reasonable compensation for actual, necessary services rendered[.]" *See*

11 U.S.C. § 330(a)(1).  In turn, Bankruptcy Code section 330 provides as follows:

> In determining the amount of reasonable compensation to be awarded, the
> court shall consider the nature, the extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration
> of, or beneficial at the time at which the service was
> rendered toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable
> amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task
> addressed; and

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonably based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

72.     The clear congressional intent and policy expressed in Bankruptcy Code section 330 is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases. *In re Drexel Burnham Lambert Grp., Inc.*, 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Congress' objective in requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists."); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d. Cir. 1994) (citations and internal quotations omitted) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.").

73.     In assessing the "reasonableness" of the fees requested, the Second Circuit has stated that courts should consider the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, while also incorporating the "lodestar method." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 190 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92–93, 96 (1989)).  The "lodestar method" of calculating the reasonable fee contemplates "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983); *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002); *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1672 (2010); *In re Drexel Burnham Lambert Grp., Inc.* 133 B.R. 13 (Bankr.

33

S.D. N.Y. 1991). The factors set forth in *Johnson* and *In re First Colonial Corp. of Am.*, 544

F.2d 1291, 1298-99 (5th Cir. 1977) have been adopted by most courts.[18] *See In re Nine Assocs.,*

*Inc.*, 76 B.R. 943, 945 (S.D.N.Y. 1987) (adopting *First Colonial/Johnson* analysis); *In re Cuisine*

*Magazine, Inc.*, 61 B.R. 210, 212-13 (Bankr. S.D.N.Y 1986) (same); *Green v. City of New York*,

403 Fed. Appx. 626, 629 (2d Cir. 2010) (summary order); *see generally* 3 COLLIER ON

BANKRUPTCY ¶ 330.03[9] (Lawrence P. King ed., 16th ed. 2016) (describing *First Colonial* and

*Johnson* as the "leading cases to be considered in determining a reasonable allowance of

compensation").

74.    Akin Gump respectfully submits that a consideration of these factors should result

in the Court's allowance of the full compensation sought in this Application.

   a.    Time and Labor Required.  Akin Gump billed a total of 6,434.10 hours of
         professional services and 187.60 hours of paraprofessional and other non-legal
         services during the Compensation Period.  As evidenced by this Application,
         Akin Gump professionals and paraprofessionals worked diligently and
         efficiently without unnecessary duplication of efforts throughout the
         Compensation Period.  This is especially true when considering the nature and
         complexity of the issues that arose in the Chapter 11 Cases during the
         Compensation Period.  In particular, the Compensation Period involved many
         material issues that required a favorable resolution for the Debtors' estates,
         including, among other things, the APA Disputes, the Second Lien Parties'
         507(b) Claims, the 506(c) Surcharges, the negotiations with 1114 Committee
         regarding the 1114 Motion, negotiations with the Debtors and the Ad Hoc
         Vendor regarding the Administrative Expense Claims Consent Program,
         investigation and preparation of an amended complaint with respect to the
         various prepetition transactions and confirmation of the Plan.  Akin Gump's
         representation of the Creditors' Committee has required it to balance the need
         to provide quality services with the need to act quickly and represent the
         Creditors' Committee in an effective, efficient and timely manner.  Akin
         Gump submits that the hours spent were reasonable given the size and
         complexity of the Chapter 11 Cases, the significant—and often times urgent—

---

[18] The factors articulated by the Fifth Circuit in *First Colonial* were first articulated by the Fifth Circuit in *Johnson,*
with the *First Colonial* court adding the factor of the "spirit of economy," which was later rejected by
Congress.  *See Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*,
127 F.3d 1398, 1403 (11th Cir. 1997).

legal and business issues raised, and the numerous pleadings filed in the
Chapter 11 Cases.

b.  <u>Novelty and Difficulty of the Questions</u>.  Akin Gump tasked knowledgeable
attorneys to research, analyze and provide advice on difficult and complex
bankruptcy, litigation, finance, tax and other issues.  As further described
herein, Akin Gump's skilled teams assisted the Creditors' Committee in
evaluating, among other things, the Debtors' and Transform's relative
obligations arising under the Asset Purchase Agreement, the Second Lien
Parties' 507(b) Claims, the 506(c) Surcharges, the 1114 Motion, the
Administrative Expense Claims Consent Program, confirmation of the Plan
and the claims and causes of action arising from various prepetition
transactions.

c.  <u>Skill Requisite to Perform the Legal Services Properly</u>.  Akin Gump believes
that its recognized expertise in the area of corporate reorganization, its ability
to draw from highly experienced professionals in other areas of Akin Gump's
practice and its creative approach to the resolution of issues has contributed to
the successful administration of the Chapter 11 Cases and benefited the
Debtors and the Creditors' Committee.  Due to the nature and complexity of
the legal issues presented in the Chapter 11 Cases, Akin Gump was required
to exhibit a high degree of legal skill in areas related to, *inter alia*, bankruptcy,
litigation, tax, real estate, labor and corporate transaction matters.
Additionally, Akin Gump's strong working relationship with the legal and
financial advisors to other parties in interest enabled Akin Gump to work with
such advisors towards a swift, consensual resolution of many of the salient
issues in the Chapter 11 Cases.

d.  <u>Preclusion of Other Employment by Applicant Due to Acceptance of the
Case</u>.  Due to the size of Akin Gump's financial restructuring and litigation
departments, Akin Gump's representation of the Creditors' Committee did not
preclude its acceptance of new clients, but the demands for immediate and
substantive action in the Chapter 11 Cases imposed significant burdens on
Akin Gump professionals and paraprofessionals working concurrently on
other matters.

e.  <u>Customary Fee</u>.  The rates Akin Gump charges for the services rendered by its
professionals and paraprofessionals in the Chapter 11 Cases are the same rates
Akin Gump charges for professional and paraprofessional services rendered in
comparable nonbankruptcy matters.  Akin Gump's fee structure also is
equivalent to the fee structure used by Akin Gump for restructuring, workout,
bankruptcy, insolvency and comparable matters, as well as similar complex
corporate and litigation matters, whether in-court or otherwise, regardless of
whether a fee application is required.  The firm's customary hourly rates and
rate structure reflect that restructuring and related matters typically involve
great complexity, numerous tasks requiring a high level of expertise and

severe time pressures, as is the case here. Akin Gump's rate structure is similar to the rate structure used by other, similar law firms that work on other, similar matters.

f. <u>Whether the Fee Is Fixed or Contingent</u>. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by the Court, and are subject to adjustment depending upon the services rendered and the results obtained. The contingency of full and actual compensation to Akin Gump increased the risk Akin Gump was assuming by representing the Creditors' Committee in the Chapter 11 Cases.

g. <u>Time Limitations Imposed by the Client or Other Circumstances</u>. As previously set forth herein, Akin Gump was required to attend to certain issues arising in the Chapter 11 Cases under compressed timelines. Akin Gump and the Creditors' Committee's other advisors were faced with limited time in which to engage in negotiations while also preparing to prosecute objections at various hearings as necessary. For example, Akin Gump took discovery in connection with the APA Disputes while simultaneously pursuing confirmation of the Plan, negotiating with the 1114 Committee, negotiating with administrative expense creditors and litigating with the Second Lien Parties over the extent of their purported 507(b) Claims. The tremendous efforts of Akin Gump attorneys and paraprofessionals in completing this work permitted the Creditors' Committee to address effectively various issues for the benefit of the Debtors' unsecured creditors.

h. <u>Amount Involved and Results Obtained</u>. Akin Gump professionals and paraprofessionals worked diligently to maximize value for the Debtors' estates and creditors. During the Compensation Period, and as described in the summary of services herein, Akin Gump was instrumental in maximizing value for the benefit of unsecured creditors. In particular, Akin Gump's efforts in connection with, among other things, the APA Disputes, 507(b) Claims, the 1114 Motion and the Administrative Expense Claims Consent Program effectively maximized the potential assets available for distribution to unsecured creditors. Akin Gump submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of unsecured creditors as more fully described in the summary of services.

i. <u>Experience, Reputation and Ability of Attorneys</u>. Akin Gump is an international law firm that consistently is recognized as a top tier law firm in the field of creditors' rights, business reorganizations and liquidations under chapter 11 of the Bankruptcy Code. During the Compensation Period, Akin Gump solicited the skill and expertise of its attorneys and paraprofessionals, a number of which have practiced law for over 20 years in a number of jurisdictions and legal disciplines. Akin Gump attorneys have actively

36

represented creditors and creditors' committees, as well as other parties in interest, in a number of the nation's largest chapter 11 cases, including *In re Nine West Holdings, Inc.*, *In re iHeartMedia, Inc.*, *In re Cumulus Media Inc.*, *In re Avaya Inc.*, *In re Chassix Holdings, Inc., In re Energy Future Holdings Corp.*, *In re Dynegy Holdings, LLC*, *In re Nortel Networks Inc.*, *In re Lightsquared Inc.*, *In re Longview Power, LLC*, *In re Eastman Kodak Company*, *In re Cal Dive International, Inc., In re Washington Mutual Inc., In re NII Holdings, Inc., In re MPM Silicones, LLC*, *In re Overseas Shipholding Group, Inc.*, *In re QCE Finance LLC*, *In re Residential Capital, LLC, In re Solutia, Inc., In re WorldCom, Inc., In re XO Communications, Inc., In re Tower Automotive LLC, In re VeraSun Energy Corp.,* and many others. Akin Gump's extensive experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by the Chapter 11 Cases, as described above.

j.    "Undesirability" of the Cases. This factor is not applicable to the Chapter 11 Cases.

k.    Nature and Length of Professional Relationship. Akin Gump has been rendering professional services to the Creditors' Committee since it was selected as counsel to the Creditors' Committee on October 24, 2018.

75.    For the reasons set forth above, the services rendered by Akin Gump were necessary and beneficial to the Creditors' Committee and consistently performed in a timely manner. The compensation sought in this Application is reasonable in light of the value of such services to the Creditors' Committee and all unsecured creditors, Akin Gump's demonstrated skill and expertise in the bankruptcy field (as well as other areas of expertise relevant to the Chapter 11 Cases) and the customary compensation charged by comparably skilled practitioners at Akin Gump. Accordingly, Akin Gump respectfully submits that the Court should approve the compensation for professional services and reimbursement of expenses sought herein.

76.    No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with the Chapter 11 Cases. No prior application has been made in this

Court or in any other court for the relief requested herein as it relates to the Compensation

Period.

## ATTORNEY STATEMENT PURSUANT TO U.S. TRUSTEE GUIDELINES

77.     The following is provided in response to the request for additional information set

forth in ¶ C.5. of the U.S. Trustee Guidelines.

**Question**:     Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

Response:     No.

**Question**:     If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:     Not applicable.

**Question**:     Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:     No.

**Question**:     Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:     Yes.  During the Compensation Period, 85.50 hours and $53,378.00 in fees were spent reviewing time records for compliance with the Fee Guidelines.

**Question**:     Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:     See above.

**Question**:     If the fee application includes any rate increases since retention:  (i) Did your client review and approve those rate increases in advance?  (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order

to have you continue the representation, consistent with ABA Formal Ethics
Opinion 11-458?

Response:    Akin Gump disclosed to the Creditors' Committee the hourly rates charged at the
time of its retention and the hourly rates to be charged beginning in January 2019
in the Akin Retention Application, which the Creditors' Committee agreed to.

### RESERVATION OF RIGHTS

To the extent that there are services rendered or expenses incurred that relate to the

Compensation Period but were not processed prior to the preparation of the Application, Akin

Gump reserves the right to request additional compensation for such services and reimbursement

of such expenses in a future application.

## CONCLUSION

WHEREFORE, Akin Gump respectfully requests: (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $5,384,047.00 and expense reimbursement in the amount of $318,470.97; (ii) the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Akin Gump's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of the Application; and (iii) such other and further relief as the Court deems just, proper and equitable.

Dated: New York, New York
       December 16, 2019

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Philip C. Dublin*
Ira S. Dizengoff
Philip C. Dublin
Sara L. Brauner
Zachary D. Lanier
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
pdublin@akingump.com
sbrauner@akingump.com
zlanier@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Sears Holdings Corporation, et al.*

## EXHIBIT A

### CERTIFICATION OF PHILIP C. DUBLIN

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re:                                            :        Chapter 11

                                                  :

SEARS HOLDINGS CORPORATION, et al.                :        Case No. 18-23538 (RDD)

                                                  :

                                                  :        (Jointly Administered)

                       Debtors.[1]                :

------------------------------------------------------------------x

**CERTIFICATION UNDER THE FEE GUIDELINES IN RESPECT OF THE**
**THIRD INTERIM FEE APPLICATION OF AKIN GUMP STRAUSS**
**HAUER & FELD LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR**
**SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE**
**PERIOD OF JULY 1, 2019 THROUGH AND INCLUDING OCTOBER 31, 2019**

I, Philip C. Dublin, hereby certify that:

1.      I am a partner with Akin Gump,[2] with responsibility for the Chapter 11 Cases of

the above captioned Debtors.  Akin Gump is counsel to Creditors' Committee of Sears Holdings

Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors").

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc.(4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.
[2] Capitalized terms used herein but otherwise not defined shall have the meanings ascribed to such terms in the Application.

2.      In accordance with the Fee Guidelines, this certification is made with respect to the Application, for interim allowance of compensation and reimbursement of expenses incurred during the Compensation Period.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

(a)      I have read the Application;

(b)      to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Fee Guidelines;

(c)      the fees and disbursements sought are billed at rates in accordance with those customarily charged by Akin Gump and generally accepted by Akin Gump's clients; and

(d)      in providing a reimbursable service, Akin Gump does not make a profit on that service, whether the service is performed by Akin Gump in-house or through a third party.

4.      In accordance with section B.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that Akin Gump has complied with those provisions requiring it to provide the Debtors and the Creditors' Committee with a statement of Akin Gump's fees and disbursements accrued during the previous month, although, due to administrative limitations, such statements were not always provided within the timeframe set forth in the Local Guidelines or the Interim Compensation Order.

5.      In respect of section B.3 of the Local Guidelines, I certify that the Debtors, the U.S. Trustee and the members of the Creditors' Committee are each being provided with a copy of the Application.

Dated: New York, New York                    By: */s/ Philip C. Dublin*_____
December 16, 2019                                  Philip C. Dublin

2

## EXHIBIT B

**CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURE**

| Blended Hourly Rates | | |
|---|---|---|
| **Category of Timekeeper** | **Billed by NY Office for Preceding Year[1]** | **Billed in this Application** |
| Partner | $1,119.14 | $1,287.55 |
| Senior Counsel and Counsel | $883.05 | $1,033.75 |
| Associate | $639.17 | $623.64 |
| Legal Assistant | $243.46 | $245.70 |
| **All Timekeepers Aggregated** | **$815.64** | **$813.09** |

---

[1] Consistent with the U.S. Trustee Guidelines, this **Exhibit B** discloses the blended hourly rate for the aggregate of all timekeepers in the domestic offices of Akin Gump in which timekeepers collectively billed more than 10% of the hours to these cases during the Compensation Period (i.e., the New York office), segregated by category, and excluding all data from timekeepers practicing primarily in the financial restructuring group.  This data is based on information from a rolling 12-month year ending October 31, 2019.

## **EXHIBIT C**

**SUMMARY OF COMPENSATION BY TIMEKEEPER**

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Chen, Julius | Partner | Litigation | 2010 | $925.00 | 129.80 | $120,065.00 |
| Dizengoff, Ira S. | Partner | Financial Restructuring | 1993 | $1,550.00 | 155.10 | $240,405.00 |
| Dublin, Philip C. | Partner | Financial Restructuring | 1999 | $1,475.00 | 383.60 | $565,810.00 |
| Lawrence, Lacy M. | Partner | Litigation | 2006 | $1,020.00 | 122.80 | $125,256.00 |
| Miller, Allison P. | Partner | Corporate | 2003 | $1,250.00 | 27.50 | $34,375.00 |
| Qureshi, Abid | Partner | Financial Restructuring | 1995 | $1,475.00 | 6.30 | $9,292.50 |
| Sorkin, Joseph L. | Partner | Litigation | 2008 | $1,120.00 | 206.70 | $231,504.00 |
| Zensky, David | Partner | Litigation | 1988 | $1,305.00 | 102.30 | $133,501.50 |
| Brauner, Sara L. | Counsel | Financial Restructuring | 2011 | $1,125.00 | 717.30 | $806,962.50 |
| Chapman, Dean L. | Counsel | Litigation | 2009 | $980.00 | 377.20 | $369,656.00 |
| Demander, Kathryn G. | Counsel | Litigation | 2013 | $805.00 | 31.10 | $25,035.50 |
| Matheson, Clayton | Counsel | Intellectual Property | 2010 | $885.00 | 45.60 | $40,356.00 |
| Tizravesh, Roxanne | Counsel | Litigation | 2009 | $905.00 | 133.00 | $120,365.00 |
| Tolentino, Raymond | Counsel | Litigation | 2013 | $840.00 | 36.30 | $30,492.00 |
| Windscheffel, Dennis | Counsel | Litigation | 2004 | $905.00 | 55.30 | $50,046.50 |
| Badini, Douglas | Associate | Corporate | 2017 | $690.00 | 18.90 | $13,041.00 |
| Chen, Michael | Associate | Litigation | 2019 | $540.00 | 5.30 | $2,862.00 |
| Glackin, Patrick J. | Associate | Litigation | 2019 | $540.00 | 357.30 | $192,942.00 |
| Kane, John P. | Associate | Litigation | 2016 | $770.00 | 395.70 | $304,689.00 |
| Kulikowski, Jillian R. | Associate | Litigation | 2019 | $540.00 | 474.40 | $256,176.00 |

| Name of Professional | Position | Department | Year Admitted | Hourly Billing Rate 2019 | Total Hours Billed | Total Compensation |
|---|---|---|---|---|---|---|
| Lanier, Zachary D. | Associate | Financial Restructuring | 2017 | $760.00 | 454.70 | $345,572.00 |
| Latov, Jeffrey A. | Associate | Litigation | 2017 | $760.00 | 367.50 | $279,300.00 |
| Mahkamova, Shirin | Associate | Financial Restructuring | 2019 | $560.00 | 293.20 | $164,192.00 |
| Fydrych, Victoria | Associate | Litigation | Pending | $540.00 | 8.40 | $4,536.00 |
| Maizel, Elise | Associate | Litigation | 2017 | $690.00 | 158.70 | $109,503.00 |
| Nolan, Sean | Associate | Litigation | 2018 | $630.00 | 119.00 | $74,970.00 |
| Park, Daniel S. | Associate | Litigation | 2011 | $690.00 | 103.50 | $71,415.00 |
| Praestholm, Amanda | Associate | Litigation | 2017 | $555.00 | 26.20 | $14,541.00 |
| Rusconi, Margo | Associate | Litigation | 2019 | $510.00 | 9.90 | $5,049.00 |
| Sharad, Saurabh | Associate | Litigation | 2015 | $815.00 | 117.40 | $95,681.00 |
| Szydlo, Joseph E. | Associate | Financial Restructuring | 2019 | $560.00 | 457.90 | $256,424.00 |
| Collins, Russell J. | Staff Attorney | Practice Attorney | 1998 | $455.00 | 535.40 | $243,607.00 |
| Young, Melodie | Staff Attorney | Practice Attorney | 2003 | $415.00 | 0.80 | $332.00 |
| Ginsborg, Michael | Specialist | Research | N/A | $265.00 | 6.30 | $1,669.50 |
| Hicks, Adria | Legal Assistant | Litigation | N/A | $335.00 | 6.30 | $2,110.50 |
| Krasa-Berstell, Dagmara | Legal Assistant | Financial Restructuring | N/A | $395.00 | 19.00 | $7,505.00 |
| Levy, Sophia D. | Legal Assistant | Financial Restructuring | N/A | $235.00 | 50.50 | $11,867.50 |
| Ma, Jim | Specialist | E-Discovery | N/A | $380.00 | 7.50 | 2,850.00 |
| Walls, Bennett | Legal Assistant | Litigation | N/A | $205.00 | 98.00 | $20,090.00 |

## **EXHIBIT D**

**SUMMARY OF COMPENSATION BY TASK CODE AGAINST BUDGETED HOURS AND FEES**

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 2 | General Case Administration | 50 – 70 | $22,900.00 – $28,500.00 | 43.50 | $26,125.50 |
| 3 | Akin Gump Fee Application/Monthly Billing Reports | 350 – 440 | $165,000.00 – $228,300.00 | 319.90 | $217,358.00 |
| 4 | Analysis of Other Professionals' Fee Applications/Reports | 45 – 60 | $36,400.00 – $48,600.00 | 45.10 | $29,098.00 |
| 5 | Review/Preparation of Schedules, Statements | 5 – 10 | $4,200.00 – $8,300.00 | – | – |
| 6 | Retention of Professionals | 5 – 10 | $5,000.00 – $10,000.00 | 1.40 | $1,377.50 |
| 7 | Creditor Committee matters/Meetings (including 341 meetings) | 75 – 90 | $77,400.00 – $98,000.00 | 56.90 | $61,981.00 |
| 8 | Court Hearings | 300 – 400 | $328,800.00 – $411,100.00 | 358.90 | $344,350.50 |
| 9 | Financial Reports and Analysis | 5 – 10 | $4,500.00 – $9,000.00 | 0.40 | $597.50 |
| 10 | DIP, Cash Collateral Usage and Exit Financing | 10 – 20 | $5,000.00 – $10,000.00 | 1.40 | $1,707.50 |
| 11 | Executory Contracts/Lease Issues | 15 – 20 | $16,400.00 – $21,800.00 | 2.10 | $1,642.00 |
| 12 | General Claims Analysis/Claims Objections | 150 – 250 | $130,100.00 – $216,700.00 | 159.70 | $160,089.50 |
| 13 | Analysis of Pre-Petition Transactions | 2,000 – 3,000 | $1,388,400.00 – $2,080,600.00 | 2,553.50 | $1,757,478.00 |
| 14 | Insurance Issues | 30 – 40 | $27,000.00 – $36,000.00 | 31.40 | $28,636.50 |
| 15 | Secured Creditors Issues /Communications/ Meetings | 560 – 710 | $470,000.00 – $595,600.00 | 604.20 | $493,915.50 |
| 16 | Automatic Stay Issues | 65 – 90 | $60,800.00 – $76,100.00 | 77.00 | $63,948.50 |
| 17 | General Litigation Matters/Adversary Proceedings | 5 – 10 | $4,200.00 – $8,300.00 | – | – |
| 18 | Tax Issues | 10 – 20 | $9,000.00 – $16,900.00 | 1.00 | $770.00 |
| 19 | Labor Issues/Employee Benefits | 50 – 70 | $52,200.00 – $73,000.00 | 48.30 | $58,659.00 |
| 20 | Jointly Asserted Causes of Action | 550 – 700 | $450,000.00 – $580,000.00 | 672.50 | $515,680.50 |
| 21 | Exclusivity | 5 – 10 | $4,500.00 – $9,000.00 | – | – |

| Task Code | Task Code Category | Hours Budgeted (Low – High) | Amount Budgeted (Low – High) | Actual Hours | Actual Amount |
|---|---|---|---|---|---|
| 22 | Disclosure Statement/ Solicitation/Plan/ Confirmation | 1,500 – 1,950 | $1,424,500.00 – $1,783,400.00 | 1,395.60 | $1,385,848.00 |
| 23 | Asset Dispositions/363 Asset Sales | 350 – 440 | $325,500.00 – $409,200.00 | 222.20 | $205,133.00 |
| 24 | Real Estate Issues | 5 – 10 | $6,000.00 – $10,500.00 | – | – |
| 25 | Travel Time | 40 – 50 | $40,700.00 – $50,900.00 | 26.70 | $29,651.00 |
| 28 | General Corporate Matters | 10 – 20 | $8,300.00 – $16,500.00 | – | – |
| 29 | Intercompany Claims/ Intercompany Transactions/Cash Management | 5 – 10 | $7,200.00 – $14,400.00 | – | – |
| 30 | Customer, Supplier, and Vendor Issues (including Critical Vendor issues) | 10 – 20 | $8,300.00 – $16,500.00 | – | – |
| 31 | Business Operations | 10 – 20 | $8,300.00 – $16,500.00 | – | – |
| **TOTAL** | | **5,655 – 7,840** | **$4,636,000.00 – $6,299,600.00** | **6,621.70** | **$5,384,047.00** |

## **EXHIBIT E**

**SUMMARY OF EXPENSES BY CATEGORY**

| Disbursement Activity | Amount |
|---|---|
| Color Copy | $303.90 |
| Computerized Legal Research - Lexis - in contract 30% discount | $15,032.35 |
| Computerized Legal Research - Westlaw - in contract 30% discount | $41,227.72 |
| Computerized Legal Research – Westlaw – out of contract | $190.82 |
| Computerized Legal Research - Courtlink- in contract 50% discount | $130.49 |
| Computerized Legal Research - Other | $4,006.80 |
| Courier Service/Messenger Service - Off Site | $61.64 |
| Court Cost | $2,790.20 |
| Document Retrieval | $234.37 |
| Dues – Misc. Dues | $50.00 |
| Duplication - In House | $34,438.80 |
| Duplication - Off Site | $1,820.83 |
| Filing Fees | $1,298.00 |
| Meals - Overtime | $286.86 |
| Meals - Business | $908.24 |
| Meals (100%) | $5,174.81 |
| Miscellaneous | $5.00 |
| Postage | $9.50 |
| Professional Fees - Consultant Fees | $112,111.25 |
| Professional Fees - Misc. | $54,242.75 |
| Recruiting – Misc. | $1,800.00 |
| Research | $640.34 |
| Telephone - Cell/Pagers | $30.00 |
| Telephone - Long Distance | $1,151.00 |
| Transcripts | $25,326.19 |

| Disbursement Activity | Amount |
|---|---|
| Travel - Airfare | $2,128.11 |
| Travel - Ground Transportation | $4,562.23 |
| Travel - Lodging (Hotel, Apt, Other) | $4,824.04 |
| Travel - Parking | $149.15 |
| Travel - Train Fare | $854.00 |
| Local Transportation - Overtime | $2,681.58 |
| **Total** | **$318,470.97** |

## **EXHIBIT F**

## **STAFFING PLAN**

| Category of Timekeeper | Number of Timekeepers Expected to Work on Matter During the Compensation Period | Average Hourly Rate |
|---|---|---|
| Partner | 10 | $1,312.64 |
| Senior Counsel and Counsel | 10 | $1,098.23 |
| Associate | 20 | $631.11 |
| Paralegals & Non-Legal Staff | 10 | $305.00 |