**Montgomery McCracken Walker & Rhoads LLP**
Edward L. Schnitzer
437 Madison Avenue, 24th Floor
New York, New York 10022
(212) 867-9500
*Counsel for NorCell, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------ X
                                                 :
In re:                                           :   Chapter 11
                                                 :
SEARS HOLDINGS CORPORATION, *et al.*,            :   Case No. 18-23538 (RDD)
                                                 :
                                    Debtors.     :   Jointly Administered
                                                 :
------------------------------------------------ X

**NORCELL, INC.'S OBJECTION TO THE DEBTORS' AMENDED
DISTRIBUTION NOTICE REGARDING INITIAL DISTRIBUTION PURSUANT
TO ADMINISTRATIVE EXPENSE CLAIMS CONSENT PROGRAM**

NorCell, Inc. ("**NorCell**"), by and through its undersigned counsel, responds to *Debtors' Amended Distribution Notice Regarding Initial Distribution Pursuant to Administrative Expense Claims Consent Program* (the "**Amended Distribution Notice**") [Dkt No. 6280] and states as follows:

**PRELIMINARY STATEMENT**

1.  Despite NorCell having (a) a valid reconciled administrative expense claim in the amount of $174,374.38 and (b) timely opted-in to the Administrative Expense Claims Consent Program, the Debtors are refusing to allow NorCell to take part in the initial distribution. Instead, the Debtors are holding NorCell hostage and claiming that NorCell is not entitled to any distribution because of an alleged preference claim. The Debtors' refusal is contrary to law, contrary to the Administrative Expense Claims Consent Program, and contrary to what was stated at the December 13th Hearing (defined below).

2. NorCell respectfully requests that a hearing be held on an emergency basis to consider this Objection in advance of the proposed distribution of funds, or alternatively (given the timing of the Amended Distribution Notice and the proposed distribution) that funds be reserved for NorCell's administrative claim from the $21 million settlement fund until this Court can hear the Objection and make a determination.

## BACKGROUND

3. On November 13, 2018, NorCell, Inc. filed Proof of Claim No. 4747 in the amount of $268,507.05, for which it asserted $174,378.38 as an administrative priority claim under 11 U.S.C. § 503(b)(9) on account of goods (namely, paper products) sold, delivered, and received in the ordinary course of business within twenty (20) days prior to the filing of Debtors' bankruptcy petition (the "**NorCell 503(b)(9) Claim**").  The filed claim contained a statement of account, invoices, shipping orders, purchase orders, bills of lading and related documents.

4. On September 26, 2019, the Debtors filed their Ninth Omnibus Objection to Claims (the "**9th Omnibus Objection**") [Dkt No. 5236] in which they objected to various 503(b)(9) claims, including the NorCell 503(b)(9) Claim, and asserted that the NorCell 503(b)(9) Claim should be reclassified as a general unsecured claim.

5. On October 15, 2019, NorCell filed its response (the "**Response**") [Dkt No. 5373] to the 9th Omnibus Objection, explaining that the NorCell 503(b)(9) Claim was a valid 503(b)(9) claim for goods sold to the Debtors in the ordinary course of business and received by the Debtors within 20 days of the Debtors' October 15, 2018 Petition Date.

6. On November 8, 2019, the Debtors agreed to withdraw the 9th Omnibus Objection as to the NorCell 503(b)(9) Claim but stated that they "still need to reconcile the amount of the claim". *See Exhibit A – Email from A.Hwang to E.Schnitzer, November 8, 2019.*  Later that same

day, Debtors counsel requested that NorCell provide certain information (the "**Requested Information**") in order to reconcile the NorCell 503(b)(9) Claim. *See Exhibit B – Email from A.Hwang to E.Schnitzer, November 8, 2019*. Shortly thereafter, NorCell's counsel provided the Requested Information to the Debtors. *See Exhibit C – Email from E.Schnitzer to A.Hwang, November 8, 2019*.

7. On November 13, 2019, the Debtors informed NorCell that "M-III has reviewed the claim and supporting data, and the Debtors agree with the amount of the 503(b)(9) claim". *See Exhibit D – Email from A.Hwang to E.Schnitzer, November 13, 2019*. In that email, Debtors' counsel also stated "However, we have asked ASK, the firm handling the Debtors' preference workstream, to reach out regarding the Debtors' preference claims against NorCell." Prior to November 13, 2019, NorCell has not received any demand or communication from the Debtors, or their preference counsel, regarding the Debtors' alleged preference claims.

8. On November 25, 2019, NorCell timely filed its Administrative Expense Claims Consent Program opt-in ballot via the PrimeClerk website with respect to the NorCell 503(b)(9) Claim. *See Exhibit E – Email from PrimeClerk to E.Schnitzer, November 25, 2019.*

9. On December 11, 2019, the Debtors filed their *Notice Regarding Initial Distribution Pursuant to Administrative Expense Claims Consent Program* [Dkt No. 6186] (the "**Initial Distribution Notice**"). NorCell was not included in the Initial Distribution Notice.

10. On December 13, 2019, this Court held a hearing at which, *inter alia*, the Initial Distribution Notice was discussed and the Debtors agreed to withdraw the Initial Distribution Notice and further reconcile claims on or before December 23, 2019 (the "**December 13th Hearing**").

11.   On December 13, 2019, NorCell's counsel requested that that Debtors add the NoCell 503(b)(9) Claim to the initial distribution. *See Exhibit F – Email from E.Schnitzer to A.Hwang, December 13, 2019*. No response was received to that e-mail.

12.   On December 17, 2019, NorCell's counsel, by e-mail to Tyler Kim of M-III and Debtors' counsel, requested that that Debtors add the NoCell 503(b)(9) Claim to the initial distribution. *See Exhibit G – Email from E.Schnitzer to T.Kim, December 17, 2019*. No response was received to that e-mail.

13.   On December 20, 2019, NorCell's counsel sent a follow-up email to Mr. Kim of M-III regarding NorCell's request to be included in the initial distribution. *See Exhibit H – Email from E.Schnitzer to T.Kim, December 20, 2019*.

14.   On December 23, 2019, Debtors' counsel informed NorCell's counsel that the Debtors would not allow the NorCell 503(b)(9) Claim because of a potential preference claim.

15.   On December 23, 2019, NorCell's counsel responded informing Debtors' counsel that the alleged preference was not a legitimate basis to not allow the NorCell 503(b)(9) Claim considering the Debtors had already agreed to its amount and priority.

## OBJECTION TO THE AMENDED DISTRIBUTION NOTICE

16.   NorCell timely provided all requested information to the Debtors and their advisors. NorCell has a valid reconciled 503(b)(9) Claim. NorCell timely opted-in to the Administrative Expense Claim Protocol. Despite that, the Debtors refuse to allow the NorCell 503(b)(9) Claim to be included in the initial distribution based on an alleged preference.[1] NorCell submits that such refusal is contrary to the law, contrary to the Administrative Expense Claim Protocol, and contrary to what was stated at the December 13th Hearing.

---

[1] NorCell notes that this alleged preference has no net value once the pre-payments are removed and new value credit is given.

-4-

17. First, the refusal to pay the NorCell 503(b)(9) Claim is contrary to the Second Circuit's holding in *ASM Capital, LP v. Ames Department Stores, Inc. (In re Ames Dept. Stores, Inc.)*, 582 F.3d 422 (2d Cir. 2009). In *Ames*, the Second Circuit held unequivocally that "section 502(d) does not apply to administrative expenses under section 503(b)." *Ames*, 582 F.3d at 432. While the Ames decision did not "specifically address [503(b)(9) claims]" (*Ames*, 582 F.3d at 424, n.2), NorCell submits that there is no basis for 503(b)(9) administrative expense claims to be treated any differently from administrative expense claims under any other subsection of 503(b) of the Bankruptcy Code.[2]  *See, e.g., See In re Energy Conversion Devices, Inc.*, 486 B.R. 872, 874 (Bankr. E.D. Mich. 2013*)* (holding that "an administrative expense request under 11 U.S.C. § 503(b)(9) may [never] be disallowed based on 11 U.S.C. § 502(d)"); *In re Momenta, Inc.*, 455 B.R. 353, 364 (Bankr. D.N.H. 2011) ("§ 502(d) is inapplicable to administrative expense claims, including an expense requested under § 503(b)(9)"); *Southern Polymer, Inc. v. TI Acquisition, LLC (In re TI Acquisition, LLC*), 410 B.R. 742 (Bankr. N.D. Ga. 2009) (502(d) does not apply to 503(b)(9) claims as "its pre-petition nature does not dictate that § 503(b)(9) expenses should be treated differently than other § 503(b) expenses")*; In re Plastech Engineered Products, Inc.*, 394 B.R. 147 (Bankr. E.D.Mich. 2008) (same).

18. To the extent the Debtors suggest this Court should follow the holding of the Virginia Bankruptcy Court in *In re Circuit City Stores, Inc.*, 426 B.R. 560 (Bankr. E.D. Va. 2010), NorCell disagrees with such holding and submits that this Court should not follow it, but instead should follow *Ames* and the cases cited above. Furthermore, NorCell notes that in *Circuit City*, the court addressed administrative expense claims that were subject to filed

---

[2] Notably, one of the claims addressed by the Second Circuit was a reclamation claim arising from goods sold to the Debtor **prior** to the bankruptcy filing.

omnibus 502(d) claim objections,[3] not a situation where the Debtors are refusing to pay a claim without any filed claim objection. As the NorCell 503(b)(9) Claim was *prima facie* valid by its filing,[4] and then further validated by the Debtors' agreement as to its amount and priority, the burden is on the Debtors to overcome that validity. NorCell submits the Debtors cannot do so simply through a demand letter.

19. Second, the refusal to pay the NorCell 503(b)(9) Claim is contrary to the Administrative Expense Claim Protocol. Neither the Confirmation Order nor the Notice of Ballots for the Administrative Expense Claim Protocol provide the Debtors with the right to deprive a holder of a valid reconciled administrative expense claim of their portion of the $21 million initial distribution because of an alleged preference claim. In fact, the ballot only provides that "any waiver or settlement of any preference action shall be considered on a case-by-case basis …." Exhibit E, Ballot, p. 3. That is not synonymous with holding that no administrative expense claim will be allowed unless any preference action is waived or settled. If the Debtors wanted to have the right to deny such payments to holders of valid reconciled claim solely because of a potential preference claim, they should have set forth such right

---

[3] "On October 13, 2009, the Debtors filed two omnibus objections (the "Objections")[3] 565*565 to certain of the Claimants' claims that asserted a § 503(b)(9) administrative priority (the "Claims") on the grounds that those Claims should be temporarily disallowed under § 502(d) up to the amount potentially recoverable in an avoidance action under § 547 until the return of any Preferential Transfers." *Circuit City*, 426 B.R. at 564-65.

[4] *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. The burden then shifts to the claimant if the objector produces evidence equal in force to the prima facie case … which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.") (emphasis added); *In re Adelphia Communs. Corp.*, Case No. 02-41729, 2007 WL 601452, *5 (Bankr. S.D.N.Y. Feb. 20, 2007) ("Because a properly filed proof of claim is deemed allowed until objected to, such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's prima facie case."); *In re DJK Residential LLC*, 416 B.R. 100, 104 (Bankr. S.D.N.Y. 2009) (holding that the burden of proof rests with the objecting party until "the objector produces evidence equal in force to the prima facie case … which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.") (citation omitted)

specifically in the protocol and the Confirmation Order so that all creditors and this Court could have acted accordingly.

20.     Third, the refusal to pay the NorCell 503(b)(9) Claim is contrary to what was stated at the December 13th Hearing.  At the December 13th Hearing, preferences were mentioned after an attorney for a creditor stated "I always understand Ames to be that you can't offset preferences from administrative claims." *See* Exhibit I, excerpt of transcript from December 13th Hearing, p. 211, l.3-5.  In response, Debtors' counsel stated "All these folks, you're assuming that there was a detailed analysis and that we're making conclusions. We asked for preference exposure as data collection, and it is relevant for some 503(b) claims, maybe." Transcript, p. 211, l. 10-13.  At no time, did the Debtors inform the court or the creditors that they believe the Administrative Expense Claim Protocol permitted them to unilaterally withhold all distributions from any administrative expense holders solely because the Debtors believed there was possible preference exposure.  Asking for "preference exposure as data collection" should not give the Debtors license to deny an opt-in holder of a valid reconciled administrative expense claim from taking part in the initial $21 million distribution.

**CONCLUSION**

WHEREFORE, NorCell respectfully requests that a hearing be held on an emergency basis to consider this Objection in advance of the proposed distribution of funds, or alternatively (given the timing of the Amended Distribution Notice and the proposed distribution) that funds be reserved for the NorCell 503(b)(9) Claim from the $21 million settlement fund until this Court can hear the Objection and make a determination, and all other relief that is just and proper.

Dated:  December 26, 2019
        New York, New York

/s/ Edward L. Schnitzer
Edward L. Schnitzer
**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**
437 Madison Avenue, 24th Floor
New York, NY  10022
Telephone: (212) 867-9500
Email:  eschnitzer@mmwr.com

*Counsel for NorCell, Inc.*

5077726v1

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2019, an electronic copy of the foregoing was filed using the Court's ECF System which caused electronic notification of filing to be served on all registered users of the ECF System that have requested such notification in this bankruptcy proceeding. Paper copies were mailed via overnight courier so as to be actually received by December 30, 2019 by (i) the chambers of the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, Esq., Jacqueline Marcus, Esq., Garrett A. Fail, Esq., and Sunny Singh, Esq.), attorneys for the Debtors; and (iii) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036 (Attn: Philip C. Dublin, Esq., Ira Dizengoff, Esq., and Sara Lynne Brauner, Esq.), attorneys for the Official Committee of Unsecured Creditors appointed in these cases.

*/s/ Edward L. Schnitzer*
Edward L. Schnitzer, Esq.

5077726v1