**Hearing Date and Time: January 28, 2020 at 10:00 a.m. (Eastern Time)**
**Objection Deadline Date and Time: January 21, 2020 at 4:00 p.m. (Eastern Time)**

FERRAIUOLI LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001
Email: scolon@ferraiuoli.com
Email: gchico@ferraiuoli.com


Attorneys for *Santa Rosa Mall, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**MOTION FOR AND AN ORDER FINDING THE AUTOMATIC STAY INAPPLICABLE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY AND MEMORANDUM IN SUPPORT THEREOF**

TO THE HONORABLE COURT:

COMES NOW Santa Rosa Mall, LLC ("Santa Rosa"), by and through its undersigned counsel, and pursuant to 11 U.S.C. § 362(d)(1), Fed. R. Bankr. P. 4001(d) ("Rule 4001(d)"), Local Rule 4001-1 ("LBR 4001-1"), and the *Amended Case Management Order* (Docket No. 405), hereby moves for an order finding that the automatic stay does not apply and/or should not be extended to protect third-party non-debtors and, in the alternative, relief from the automatic stay for cause as follows:

<u>Preface or Introductory Remarks[1]</u>

As an introductory matter, Santa Rosa does not seek relief to commence an action against the Debtors or any third-parties whose identity or interests are so closely intertwined with those of the Debtors that a suit against such third-parties is essentially a suit against the Debtors. Rather, it seeks to pursue independent non-bankruptcy causes of action against Lex-London, a Division of AIG Europe Limited, AIG

---

[1] Capitalized terms used but not otherwise defined in these introductory remarks shall have the meanings ascribed to them below.

Europe Limited, Lexington UK, *among others* (collectively, the "Underwriters")[2] and Aon UK Limited, Aon Risk Services Central, Inc. d/b/a/ Aon Risk Insurance Services Central, Inc., and/or Aon Property Risk Consulting, Inc. (collectively "Aon"), on account of its status as an additional named insured and/or loss payee under Policy No. PTNAM1701557.  While Santa Rosa has been granted relief from the automatic stay to pursue its claims against Aon[3], it now moves for an order finding the automatic stay inapplicable and does not extend to the Underwriters or, in the alternative, for relief from the stay for cause.

Santa Rosa submits that, the automatic stay does not extend to third-party non-debtors, such as the Underwriters, save "clear and convincing evidence" that "unusual circumstances" exist to warrant such relief.  The Debtors have previously objected to the lifting of stay as to the Underwriters relying solely on the existence of a certain *Settlement Agreement*'s indemnity clause which purportedly provides the "unusual circumstance" standard.[4] Santa Rosa submits that the aforementioned indemnity clause is unenforceable because, as hereinafter discussed in detail,  (i) "[n]o one should be permitted to take advantage of its own wrong, to [fund] any claim upon his own inequity or to acquire property by his own crime"[5], (ii) Debtors' failed to comply with Fed. R. Bankr. P. 9019, and/or (iii) Debtors cannot justify extending the protections of the stay as no complex litigation involving liability insurance policies nor potential claimants that threaten, burden, or otherwise impede Debtors' reorganization efforts.

Instead, the relief sought by this motion is straightforward and will facilitate the most efficient and equitable result under applicable non-bankruptcy law: the resolution in a single proceeding and forum of an insurance claim that has been adjusted and improperly paid by the Underwriters under Policy No.

---

[2] Pursuant to Article 11.220 of the PR Insurance Code, 26 L.P.R.A. §1122, when, as is in the present case, there is more than one underwriter, they are each regarded as both jointly and severally responsible for the payment of any claim insured in connection with Store No. 1915.

[3] See *Stipulation, Agreeement[sic], and Order Between the Debtors and Santa Rosa Mall, LLC Granting Limited Relief From the Automatic Stay* ("*Stipulation and Order*", Docket No. 5537).

[4] See *Debtors' Objection to Motion for Relief from the Automatic Stay []* ("*Objection to Relief from Stay*", Docket No. 4224).

[5] *Riggs v. Palmer*, 115 N.Y. 506, 506 (1889). See also *Deitrick v. Greaney*, 309 U.S. 190, 196 (1940), citing *United States v. Dunn*, 268 U.S. 121, 133 (1925) and *Independent Coal & Coke Co. v. United States*, 274 U.S. 640, 648 (1927).

PTNAM1701557 disregarding Santa Rosa's rights as additional named insured or loss payee without Santa Rosa's knowledge or consent.

Furthermore, Santa Rosa submits that relief from the automatic stay is appropriate for cause because the Underwriters knew or should have known that Santa Rosa was an additional named insured and/or loss payee under Policy No. PTNAM1701557. Consequently, Santa Rosa has a direct and distinct cause of action against them. In addition, because the insurance funds improperly paid to Debtors for damages caused to a property located in the Commonwealth of Puerto Rico, the action against the Underwriters should be initiated before the United States District Court for the District of Puerto Rico which is **the only forum** where a direct action may be filed under applicable non-bankruptcy law and the appropriate venue for all of Santa Rosa's claims to be adjudicated.

<u>Jurisdiction and Venue</u>

This Honorable Court has jurisdiction over the present controversy pursuant to 28 U. S. C. §157, 1334 and 11 U.S. C. § 362. Venue is proper under 28 U.S.C. §1409.

<u>Factual and Procedural Background</u>

1.      On October 15, 2018, the Debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

2.      Sears, Roebuck de Puerto Rico, Inc., leased retail space from Santa Rosa Mall in Bayamón, Puerto Rico ("Store No. 1915" or the "Demised Premises") pursuant to a *Lease Agreement* executed on September 22, 1965. <u>See</u> *Lease Agreement*, **Exhibit 1.**

3.      Section 6.01 of the *Lease* required that the Debtors "maintain at [its] sole cost and expense, for the benefit of [Santa Rosa] and [the Lessee], insurance with respect to the Demised Premises" for risks including "windstorm". <u>Id</u>. § 6.01(a), p. 26. Such insurance policy "shall be secured promptly and certificates thereof shall be furnished to [Santa Rosa]" and "shall contain loss payable clause to [Santa Rosa] and [Lessee]". <u>Id</u>., § 6.02(a), pp. 26-27. Renewals of the insurance policies are also subject to the foregoing. <u>Id</u>., § 6.02(b), p. 27.

4.      In the event of damage by windstorm or any other casualty to the Demised Premises, such

as that caused by Hurricanes Irma and Maria, Section 6.03(b) (2) of the *Lease* required that Lessee "proceed with all reasonable expedition to restore or rebuild [] the building so destroyed or rendered untenantable, free from liens of any kind, in substantial accordance with the plans and specifications of the building so destroyed or rendered untenantable []".

5.     Section 6.03(b)(3) of the *Lease Agreement* further mandates as follows:

The net sums recovered by [Santa Rosa] and [Lessee] on account of loss or damage whether under the policies taken out as aforesaid, or under other insurance policies taken out by [Lessee] and indemnifying for physical loss (as distinguished from the loss of use and occupancy. or profits), **shall by deposited in a special account in the name of [Santa Rosa] separate and distinct from all other funds of [Santa Rosa l] in a bank or trust company of the City of San Juan, Puerto Rico, approved by [Santa Rosa] and [Lessee] to be applied on account of the cost of such restoration or rebuilding**, as the case may be, as the work of restoration or rebuilding progresses …

Id., § 6.03(b) (3), pp. 28-29 (emphasis added).

6.     On or about May 30, 2017, the Debtors obtained a *Contract of Insurance* with the Underwriters under Policy No. PTNAM1701557 (the "*Contract of Insurance*") for the period of June 1, 2017 to June 1, 2018. See *Contract of Insurance*, **Exhibit II.**

7.     Pursuant to the *Contract of Insurance*, Santa Rosa is included among the insured.  Id. at p. 3 ("Named Insured" is defined as "Sears Holdings Corporation and any subsidiary, affiliated, associated, or allied company, corporation, firm, organization, partnership, joint venture, joint lease, or joint operating agreement [], as their respective interest may appear; **and any other party for which the Insured has the responsibility for providing insurance, as their respective interest may appear**.") (Emphasis added).

8.     Paragraph 39 of the *Contract of Insurance* further provides:

It is agreed that Aon Risk Services, Inc. are authorized to issue Certificate(s) or Evidence(s) of Insurance… naming Additional Named Insured(s), Loss Payee(s) or Mortgagee(s), and others for their respective rights and interests, subject always to the terms, conditions and limits of endorsements in respect of such additional interests.

Id. at p. 27, ¶ 39.

9.     On September 20, 2017, Store No. 1915 was substantially damaged by the passing of Hurricane Maria.  Thereafter, Store No. 1915 closed its doors.  The Court may take judicial notice of the passing of Hurricane Maria, as well as its trajectory and aftermath under Fed. R. Evid. 201.

10.     On October 2, 2017, the Debtors, via email, "acknowledge[d] its duty to insure and repair the [Demised Premises] for damage caused by Hurricane Maria. <u>See</u> *Email from the Debtors to CCM[6], dated October 2, 2017*, **Exhibit III.**

11.     On or about October 23, 2017, CCM requested by letter to "be kept informed of the status of the insurance claim [and] that any insurance proceeds [be] deposited as required by the Lease Agreement." <u>See</u> *Letter from CCM to the Debtors dated October 23, 2017*, **Exhibit IV.**

12.      On or about October 25, 2017, Aon Risk Services Central, Inc., d/b/a/ Aon Risk Insurance Services Central, Inc., issued a *Certificate of Insurance* No. 570069040317 ("*Certificate of Insurance*") regarding Policy No. PTNAM1701557 which covered "Sears Store No. 1915 Santa Rosa Mall, Bayamon, P.R., for the period of June 1, 2017 to June 1, 2018, in accordance with the policy provisions of the *Contract of Insurance*. <u>See</u> *Certificate of Insurance*, **Exhibit V.**

13.     On even date—that is, after the passing of Hurricane Maria—the *Certificate of Insurance* was emailed to both Santa Rosa and the Debtors by Aon Client Services, a department of Aon Client Services Central, Inc. d/b/a/ Aon Risk insurance Services Central, Inc. <u>See</u> *Email from Aon to CCM and the Debtors dated October 25, 2017*, **Exhibit VI.**

14.     The "Additional Remarks Schedule" of said *Certificate of Insurance* states that,

> Santa Rosa Mall, LLC… and Commercial Centers Management, LLC are included as Loss Payee in accordance with the policy provisions of the Property policy with respect to the property located at the above referenced Location.

<u>Id</u>. at p. 3.

15.     On October 26, 2017, the Debtors informed CCM that "[w]e [Sears] agree that the Lease Agreement [] requires [Sears] to repair the building for damage or destruction []. Sears has an insurance claim for this loss", referring to Santa Rosa's damages, and that "**[o]nce the insurance payment [is] received arrangements will be made for it to be deposited with an agreed bank**". *Letter from the Debtors to CCM dated October 26, 2017*, **Exhibit VII.**

---

[6] The term "CCM" shall mean Commercial Centers Management S. en C., Santa Rosa's general administrator.

16.    On October 30, 2017, CCM wrote to the Underwriters thru AIG Insurance Company Puerto Rico requesting "to be informed as of the filing of any claim under [Policy No. PTNAM1701557] as well as the processing of the same, and that any insurance proceeds be deposited as required by the Lease Agreement". *Letter from CCM to AIG dated October 30, 2017*, **Exhibit VIII**.

17.    On June 6, 2018, Dale Menéndez, Director of Claims-Risk Management at Sears Holdings Management Corporation wrote to CCM confirming that "Sears Holding Corporation **will provide all monies** required to restore and rebuild [Store No. 1915] as required by the Lease."[7] *Letter from the Debtors to CCM dated June 6, 2018*, **Exhibit IX** (emphasis and underline added). The *June 6, 2018 Letter* further stated that the anticipated "Grand Reopening" date for Store No. 1915 was January 1, 2019.

18.    After the Petition Date, *to wit*, October 15, 2018, Debtors suspended the limited initial reconstruction efforts in the Demised Premises.

19.    On November 19, 2018, the Court entered an *Order Approving Global Bidding Procedures [] * (the "*Global Bidding Procedures Order*", Docket No. 816) regarding the sale/disposition of certain assets, scheduling auctions and hearings for approval of proposed sale transactions and approving the procedures for the assumption and assignment of executory contracts and unexpired non-residential leases.

20.    Upon information and belief, on or about ███████████, the Debtor, ███████████ ████████████████████████████████████████████████████████ ███████████ executed a ███████████ *Settlement and Release Agreement* (the "*Settlement Agreement*") with the Underwriters, ████████████████████████████████████, as further described therein. See *Settlement Agreement*, **Exhibit X**.

21.    Paragraph 5 of *Settlement Agreement* reads as follows:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

---

████████████████████████████████████████████████████████
████████████████████



Id., at ¶ 5 (emphasis added).

22.     In view of the representations made in Paragraph 5 above,



Id., at ¶ 6 (emphasis added).

23.     The Debtors neither gave notice of the *Settlement Agreement* nor requested its approval in overt violation of the provisions of Fed. R. Bankr. P. 9019.

24.     On January 23, 2019, Santa Rosa's undersigned counsel informed AIG Europe Limited that "any insurance proceeds recovered for loss or damage be issued jointly to the Debtors and Santa Rosa so that funds can be deposited in a segregated account to be used only for the repairs to Store 1915, in compliance with Section 6.03(b) (3) of the *Lease Agreement*". See *Letter to AIG dated January 23, 2019,* **Exhibit XI.**

25.     On January 26, 2019, Santa Rosa filed a *Standing Objection to Global Asset Sale Transaction* (the "*Standing Objection*", Docket No. 2013), wherein it sustained that insurance proceeds obtained from the global settlement relative to Santa Rosa's claim for damages should be used for the reconstruction of Store No. 1915 or be deposited in escrow with Santa Rosa as the Landlord or Lessor, in accordance with the terms of the *Lease Agreement*.  We incorporate by reference the *Standing Objection* (Docket No. 2013) as if fully transcribed herein.

26.    On February 8, 2019, the Court entered an *Order [] Approving the Asset Purchase Agreement []* (the "*Sale Order*", Docket No. 2507).  As part of the *Asset Purchase Agreement*, the Debtors allegedly transferred all title to the proceeds obtained from the *Settlement Agreement* to the Buyer, minus a cap of $13,000,000.00.[8]  See Docket No. 2507-1, pp. 56-58, § 2.1(q); Docket No. 2507-1, Schedule 2.1(q), p. 1003.

27.    On April 30, 2019, the Debtors filed a *Notice of Rejection of Certain Unexpired Leases of Nonresidential Real Property and Abandonment of Property in Connection Therewith* (Docket No. 3449) rejecting the *Lease Agreement* for Store No. 1915, id. at p. 11, and consequently lost any leasehold or proprietary interest in Store No. 1915 as well as any diminished insurable interest it may have had in the insurance proceeds.

28.    On May 1, 2019, Santa Rosa filed a *Motion for Relief from Stay and Memorandum in Support Thereof and/or to Declare that the Insurance Proceeds Are Not Part of the Bankruptcy Estate* (the "*Motion for Relief from Stay*", Docket No. 3475).  We incorporate by reference the *Motion for Relief from Stay* as if fully transcribed herein.

29.    On June 13, 2019, Debtors filed an *Objection to Relief from Stay* (Docket No. 4224), wherein they alleged, *inter alia*, that relief from the automatic stay would "harm the Debtors and the estates to the detriment of all creditors in light of the indemnity provision in the Settlement Agreement." Id. at p. 7, ¶19.

30.    A hearing on the *Motion for Relief from Stay* and the *Objection to Relief from Stay* was held on June 20, 2019.  Therein, this Honorable Court stated: "I'm not going to deny [the *Motion for Relief from Stay*].  You can keep it on the calendar and put it on for a hearing after a ruling in the adversary proceeding on the merits." *June 20 Hearing Transcript*, 86:4-6.  The Adversary Proceeding is no longer pending before this Court.

31.    On July 23, 2019, Courtney E. Murphy, Esq., counsel for Lexington UK, a division for

---

[8] *Declaration of Sunny Sigh* (Docket No. 2344 pp. 236-237, ¶¶ 9-9) ("In addition, the debtors... retain 13 million dollars in hurricane insurance proceeds").

AIG, responded to CCM's *January 23, 2019 Letter*. Therein, AIG stated the following:

> As final payment has been made in connection with all covered loss and damage to covered locations as provided by the subject Policies and the ███████████ Release, no further payments will be made under the subject Policies. Having complied with the terms of the Policies and the Release with the Named Insured –SHC—it is Lexington's position that this matter is fully and finally resolved and no further discussion need be held to discuss any further or additional resolutions.

See *Letter from AIG to CCM dated July 23, 2019,* **Exhibit XII**, p. 3.

32.    On September 11, 2019, Santa Rosa filed a *Supplemental Motion for Relief from Stay or in the Alternative, for an Order Finding the Automatic Stay Inapplicable and Memorandum of Law in Support Thereof* (the "*Supplemental Motion for Relief from Stay*", Docket No. 4124), requesting relief from the automatic stay to pursue its claims against Aon and the Underwriters.

33.    At the October 7, 2019, confirmation hearing, the Court granted the Debtors' *Modified Second Amended Plan* (the "*Plan*") and ordered the Debtors file a letter with the Court clarifying the injunction provision provided in Section 15.8(b). The Debtors complied with the Court's direction and filed a letter on October 11, 2019, clarifying that Section 15.8(b) did not enjoin any actions against non-debtor third-parties.

34.    On October 15, 2019, the Court entered an *Order* (Docket No. 5370) confirming Debtors' *Plan*.

35.    On October 21, 2019, the Debtors and Santa Rosa executed and filed the *Stipulation and Order* (Docket No. 5435), wherein they agreed to modify the automatic stay "to permit Santa Rosa to pursue independent causes of action against Aon". *Id.* at p. 9, ¶ 2. The *Stipulation and Order* was approved by the Court on October 30, 2019. *See* Docket No. 5537. Consequently, Santa Rosa withdrew its *Supplemental Motion for Relief from Stay* without prejudice.

36.    Pursuant to Sections 105 and 362(d)(1) of the Bankruptcy Code, and as explained below, Santa Rosa respectfully requests the Court to find that the automatic stay does not extend to the Underwriters or, in the alternative, grant relief from the automatic stay for cause.

Applicable Law and Discussion

**A.    *Extension of the Automatic Stay Does Not Apply Automatically to Third-Party Non-Debtors***

37.    Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition

operates as a stay of "the commencement or continuation … of a judicial, administrative, or other action or

proceeding **against the debtor** that was or could have been commenced before the commencement of the

case under this title." 11 U.S.C. § 362(a)(1) (emphasis added).

38.    Generally, "the Automatic Stay applies only to the debtor and **does not stay proceedings**

**brought against non-bankrupt co-defendants**." *Millard v. Developmental Disabilities Institute, Inc.*, 266

B.R. 42, 44 (Bankr. E.D.N.Y. 2001) (emphasis added). See *e.g., Franco v. Ideal Mortgage Bankers, Ltd.*,

2017 WL 5195223, 2017 U.S. Dist. LEXIS 186194 (E.D.N.Y. 2017); *Demel v. Group Benefits Plan for*

*Employees of Northern Telecom, Inc.*, 2010 WL 167947, at *1 (S.D.N.Y. 2010) ("Courts normally do not

extend an automatic stay under 11 U.S.C. § 362(a)(1) to non-debtor co-defendants"); *In re McCormick*,

381 B.R. 594, 600 (S.D.N.Y. 2008) ("The Second Circuit has explained that the automatic stay pursuant to

§ 362(a) is generally limited to debtors and does not encompass non-bankrupt codefendants.") (citations

omitted); *Wynn v. AC Rochester General Motors, Corp.*, 155 Fed. App'x 528, 528 (2nd Cir. 2005) ("the stay

[pursuant to Section 362] is not automatically applicable to the non-bankrupt co-defendants"); *Nippon Fire*

*& Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 58 (2nd Cir. 2000) ("stays pursuant to § 362(a)

are limited to debtors and do not encompass non-bankrupt co-defendants."); *Teachers Ins. & Annuity Ass'n.*

*v. Butler*, 803 F.2d 61, 65 (2nd Cir.1986) ("It is well established that stays pursuant to § 362(a) are limited

to debtors and do not encompass non-bankrupt co-defendants."); *Gray v. Hirsch*, 230 B.R. 239, 241 (Bankr.

S.D.N.Y. 1999) (same); *In re Crazy Eddie Securities Litigation*, 104 B.R. 582, 584 (Bankr. E.D.N.Y. 1989)

(automatic stay did not preclude action against debtor's codefendants that are not so bound by statute or

contract that the liability of the codefendants is automatically imputed to the debtor by operation of law).

39.    The Second Circuit has recognized a limited exception to this general rule and held that

the  automatic stay may be extended to non-debtors in "unusual circumstances" where "a claim against the

non-debtor will have an immediate adverse economic consequence for the debtor's estate," *Queenie, Ltd.*

*v. Nygard Int'l*, 321 F.3d 282, 287 (2nd Cir. 2003), or where removing the stay would pose "a serious threat to the debtor's reorganization efforts." *Demel*, 2010 WL 167947, at *1. However, "extensions of the Automatic Stay **are the exception rather than the rule and are not favored absent some [un]usual circumstance**." *Millard*, 266 B.R. at 45 (citing *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 32 (S.D.N.Y. 1990)) (emphasis added).

40.    Although the protections of the automatic stay may be extended to third-party non-debtor entities under certain circumstances, it is an extraordinary exercise of Bankruptcy Court's equitable discretion. The circumstances of a case must be sufficiently "unusual" to merit such and expansion.

41.    The debtor or non-debtor movant must make an affirmative act and shall bear the "burden of both proof and persuasion" that circumstances warrant extending the protections of the automatic stay. See *In re FPSDA I, LLC*, 2012 WL 6681794, at *8 (Bankr. E.D.N.Y. 2012) (Slip Copy) ("[T]he movant must show by 'clear and convincing evidence' that extension of the stay is warranted").

42.    Santa Rosa submits that the automatic stay does not extend to the Underwriters third-party non-debtor in this case. The Debtors have not demonstrated by "clear and convincing evidence" that "unusual circumstances" or "unity of interest" exists to warrant extending the protections of the automatic stay to the Underwriters. The only matter to which the Debtors have alluded to in their *Objection to Relief from Stay* (Docket No. 4224) and at the June 20, 2019 hearing is the existence of an indemnity clause in the *Settlement Agreement* whereby ███████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████ despite both the Underwriters and the Debtors having received previous notifications from Santa Rosa and CCM to the contrary. Minimal due diligence on the part of the Underwriters would have confirmed that Santa Rosa had a claim associated with Policy No. PTNAM1701557 on account of its insurable interest over the property and its right as an additional named insured and/or a loss payee.

43.    Santa Rosa respectfully submits that the *Settlement Agreement*'s indemnity clause is unenforceable also on account of Debtors' failure to comply with Fed. R. Bankr. P. 9019. If the Underwriters seek indemnification from the Debtor under the *Settlement Agreement*, it must be underscored

that said settlement was executed ██████████ —that is, while the Debtors were in bankruptcy—
and no notice was ever filed with this Court and no motions were made seeking its approval.[9]

44.       Fed. R. Bankr. P. 9019(a) states that the court *may approve* a settlement *on motion* by the
trustee or debtor-in-possession.  See Fed. R. Bankr. P. 9019(a).  In the Second Circuit, "[b]efore pre-plan
settlements can take effect, ... they must be approved by the bankruptcy court pursuant to [Fed. R. Bankr.
P.] 9019."  *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 538–39 (E.D.N.Y. 2017)
(quoting *In re Iridium Operating LLC*), 478 F.3d 452, 455 (2nd Cir. 2007). "The purpose and effect of
seeking court approval of a compromise under [Fed. R. Bankr. P.] 9019 is to bind the bankruptcy estate to
the terms of any bargain struck by a ... debtor-in-possession that affects the bankruptcy estate." *Liberty
Towers Realty, LLC*, 569 B.R. at 39 (quoting *In re Lexington Jewelers Exch. Inc.*, 2013 WL 2338243, at
*5, n. 12 (Bankr. D. Mass. 2013)).

45.       Outside the Second Circuit, the overwhelming majority of courts to interpret Fed. R. Bankr.
P. 9019(a) have determined that a compromise or settlement is enforceable **only** if it has been approved by
the bankruptcy court.  See *e.g., In re Big Apple Volkswagen*, LLC, 571 B.R. 43, 55 (S.D.N.Y. 2017)
("[R]eading Rule 9019(a) to give effect to all its provisions, the Court concludes that any compromise or
settlement must be approved under the Rule to be deemed effective."); *In re Leslie Fay Companies,* 168
B.R. 294, 305 (Bankr. S.D.N.Y. 1994) ("Compromises may not be made in bankruptcy absent notice and a
hearing and a court order."); *In re Pugh,* 167 B.R. 251, 253–54 (Bankr. M.D. Fla. 1994) ("[The
compromise] could not have become a binding contract unless the Trustee complied with [Fed. R. Bankr.
P.] 9019...."); *In re Rothwell,* 159 B.R. 374, 379 (Bankr. D. Mass. 1993) ("A settlement agreement is
unenforceable without notice of the settlement to creditors or a court order approving it"); *Reynolds v.
Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988) ("In bankruptcy proceedings… any
compromise between the debtor and his creditors must be approved by the court as fair and equitable."); *In
re Teknek, LLC,* 563 F.3d 639, 651 (7th Cir. 2009) (recognizing a settlement agreement was null and void

---

[9] ████████████████████████████████████████████████
████████████████████████████████

when the bankruptcy court lacked jurisdiction to approve the agreement, "because the trustee is required to get the bankruptcy court's approval before settling claims"); *American Prairie Construction Co. v. Hoich*, 594 F.3d 1015, 1024 (8th Cir. 2010) ("It is a recognized principle of bankruptcy law that a bankruptcy court is required to approve any compromise or settlement proposed in the course of a Chapter 11 reorganization before such compromise or settlement can be deemed effective." "[A] settlement agreement made in bankruptcy has no effect when the parties to the agreement fail to comply with Fed. R. Bank. P. 9019, which requires notice to creditors and court approval."); *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 141 (10th Cir. 1988) ("Under [ Fed. R. Bankr. P.] 9019, a settlement or compromise agreement between the trustee and a party must be approved by the court, after notice and hearing, to be enforceable.").

46.     It is without dispute that none of the requirements of Fed. R. Bankr. P. 9019 were met. Accordingly, to the extent that the *Settlement Agreement* was not executed "in whole or in part" in accordance with Fed. R. Bankr. P. 9019, it and its indemnity clause are unenforceable.

47.     Nonetheless, even if this Honorable Court were to uphold the *Settlement Agreement* and its indemnification clause, while an illustration of "unusual circumstance" warranting extension of the stay *may* arise where there is an entitlement to indemnification between the debtor and a third-party non-debtor, "[i]t is not enough for the movant to show some limited risk or that there is a theoretical threat to the reorganization, because it is always the case that a lawsuit against principals of the Debtor could and have effect on the reorganization. Rather, and in keeping with the principle that extending the stay to non-debtors is <u>extraordinary</u> relief, the party seeking extension of the stay must put forth real evidence demonstrating an actual impact upon, or threat to, the reorganization efforts if the stay is not extended." *In re FPSDA I, LLC*, 2012 WL 6681794, at *8 (citing *Gray v. Hirsch*, 230 B.R. 239, 243-244 (Bankr. S.D.N.Y. 1999)) (emphasis supplied).

48.     In any case, Debtors' mere indemnification obligation to a non-debtor is insufficient to justify extension of the automatic stay to non-debtors. See, *e.g., In re Uni-Marts, LLC*, 399 B.R. 400, 416-17 (Bankr. D. Del. 2009) (held that non-debtor's right to indemnification by debtor was insufficient to extend automatic stay protections to such non-debtor); *Holland v. High Power Energy*, 248 B.R. 53, 59

(Bankr. S.D.W.Va. 2000) ("Notwithstanding the indemnification agreement between the parties, it cannot be said that the interests of [the debtor and non-debtor third-party] are closely intertwined … merely by virtue of the agreement."). Indeed, "because the justification for extending the stay must be consistent with the purpose of the stay itself, [which is] to suspend actions that pose a serious threat to a corporate debtor's reorganization efforts", indemnification obligations alone are not enough. *In re SDNY 19 Mad Park, LLC*, 2014 WL 4473873, at *2 (Bankr. S.D.N.Y. 2014) (quoting *In re FPSDA I, LLC*, 2012 WL 6681794, at *11 and *In re Uni-Marts, LLC*, 399 B.R. at 400)) (quotations omitted).

49.     As such, the Debtors cannot effectively sustain that any indemnification obligation they might have in favor of the Underwriters would pose a serious threat to their reorganization efforts, especially because the Debtors have a confirmed liquidation *Plan*. Thus, there is no justification for extending the protection of the automatic stay to the Underwriters.

50.     Further, while "a suit against a third-party who is entitled to absolute indemnity by the debtor" has been noted as an "unusual circumstances" warranting extension of the stay to non-debtors, *A. H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986), that would be the case in "very large complex reorganizations" where "the litigation sought to be stayed presented very formidable discovery and other demands, together with very large numbers of potential claimants," *In re FPSDA I, LLC*, 2012 WL 668794, at *15, such is not the case here. [10]

---

[10] Although in *A. H. Robins, supra*, the U.S. Court of Appeals for the Fourth Circuit found that in "unusual circumstances," the automatic stay could be extended to action against non-debtors, including debtors' insurance company, the circumstances that gave way to that holding are distinguishable from the case at bar. In *A. H. Robins*, thousands of actions were initiated against the debtor and its insurance provider, forcing the debtor to file for bankruptcy. The plaintiffs in various non-bankruptcy actions sought to sever their actions against the debtor in order to proceed against the debtor's co-defendants, which included the debtor's insurer. In affirming the District Court's decision, the U.S. Court of Appeals for the Fourth Circuit affirmed the injunction staying the plaintiffs' suits against debtor's co-defendants because there was such identity between the debtor and the third-party co-defendants that the debtor may be said to be the "real party defendant" and a judgment against such third-party co-defendants would in effect be a judgment or finding against the debtor. The continuation of such litigation threatened the property of *A. H. Robins*' estate, and burdened and impeded the debtor's reorganization efforts.

On the other hand, in *Franco, supra*, the U.S. District Court for the Eastern District of New York held: "A court should not extend the automatic stay where the non-debtor is independently liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of duty." *Franco v. Ideal Mortgage Bankers, Ltd.*, 2017 WL 5195223, at *7, 2017 U.S. Dist. LEXIS 186194, at *4-5 (E.D.N.Y. 2017) (citations and internal quotations omitted) (emphasis supplied). In the instant case, Santa Rosa sustains that unlike the liability

51.     Instead, none of the "unusual circumstances" that may justify extending the protections of the stay to non-debtors like those in *A. H. Robins* are present in this case, *inter alia* because *A. H. Robins* dealt with liability claims while the claim against the Underwriters in this case relate to a property insurance claim.   Plainly, this is not the type of bankruptcy case that justifies extending the protections of the automatic stay to non-debtor third parties, such as the Underwriters.   <u>See</u>*, e.g., In re First Cent. Fin. Corp.,* 238 B.R. 9, 19 (Bankr. E.D.N.Y. 1999) (noting that cases extending protections of automatic stay involve numerous lawsuits that would have otherwise resulted in a "massive depletion of estate assets and inhibited key personnel from the important business of getting the corporate debtor back on its feet").   Here, no reorganization is contemplated for the Debtors' only "going concern" assets have been sold and the Debtors' liquidation *Plan* has been confirmed.   A large or otherwise complex litigation is not contemplated and Santa Rosa has a direct and distinct action against the Underwriters.

52.     As stated above, the Debtors must make an affirmative act and shall bear the "burden of both proof and persuasion" that circumstances warrant extending the protection of the automatic stay. In the case at bar, Debtors have not met their burden. Furthermore, Santa Rosa has shown that in this particular case they cannot. For the forgoing reasons, Santa Rosa respectfully asserts that the automatic stay should not be extended to protect the Underwriters.

**B.      *In the Alternative, Relief from the Automatic Stay is Appropriate for Cause***

53.     Pursuant to 11 U.S.C. § 362(d), the Court may terminate, modify, annul or condition the automatic stay.   The first ground for obtaining relief from the automatic stay is for "for cause".   11 U.S.C. §362(d)(1).

54.     The Bankruptcy Code does not define 'cause', nonetheless, generally speaking, 'cause' is said to exist when the harm that would result from a continuation of the stay would outweigh any harm that

---

insurance policies referred to in *A. H. Robins*, which involved multiple parties, it is the only party of interest and an action against the Underwriters will not threaten the bankruptcy estate or otherwise burden or impede the Debtors' reorganization efforts, considering that a liquidation *Plan* has been confirmed by this Honorable Court.

might be suffered by the debtor or the debtor's estate if the stay is lifted.  See *In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1285 (2nd Cir. 1990).

55.    Determining whether 'cause' exists requires a fact intensive inquiry that must be made on a case by case basis.  See *Peerless Ins. Co. v. Rivera*, 208 B.R. 313, 315 (D.R.I. 1997), citing *In re Turner*, 161 B.R. 1, 3 (Bankr. D. Me. 1993); *Assocs. Ltd. v. Aetna Cas. & Sur. Co.*, 30 F.3d 734, 737 (6th Cir. 1994); *In re Balco Equities Ltd.*, 312 B.R. 734, 738 (Bankr. S.D.N.Y. 2004).  Courts make this determination through a balancing test, where they weigh the hardship to the creditor, if he or she is not allowed to proceed with his or her lawsuit, against the potential prejudice to the debtor and debtor's other creditors.  See *In re R.J. Groover Constr. LLC*, 411 B.R. 460, 463-64 (Bankr. N.D. Ga. 2008).

56.    Thus the "facts of each request will determine whether relief is appropriate under the circumstances."  *In re Sonnax Industries, Inc.*, 907 F.2d at 1286, quoting H.R.Rep. No. 95–595, at 343–44 (1977), reprinted in 1978 U.S.C.C.A.N. 6300).  "The burden is on the moving party to make an initial showing of 'cause' for relief from the stay."  *In re Mazzeo*, 167 F.3d 139, 142 (2nd Cir. 1999). Only if the movant makes such a showing does any burden shift to the debtor; absent a showing of cause, the court should simply deny relief from the stay.  See *In re Boodrow*, 126 F.3d 43, 48 (2nd Cir. 1997).

57.    In *Sonnax*, the U.S. Court of Appeals for the Second Circuit established a set of twelve factors that have become the standard by which courts in this Circuit consider whether to modify the automatic stay[11].  See *In re Lehman Bros. Holdings, Inc.,* 435 B.R. 122, 138 (S.D.N.Y. 2010) ("Sonnax

---

[11] The Sonnax factors are the following:

(1) whether relief would result in a partial or complete resolution of the issues;  (2) lack of any connection with or interference with the bankruptcy case;  (3) whether the other proceeding involves the debtor as a fiduciary;  (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;  (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties;  (7) whether litigation in another forum would prejudice the interests of other creditors;  (8) whether the judgment claim arising from the other action is subject to equitable subordination;  (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;  (10) the interests of judicial economy and the expeditious and economical resolution of litigation;  (11) whether the parties are ready for trial in the other proceeding; and  (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Industries, Inc.,* 907 F.2d at 1286.  See *also In re N.Y. Med. Grp., P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

routinely referenced as the leading relief from stay precedent in this Circuit."). Although the court in Sonnax outlined twelve factors, courts need not consider each factor, but may consider only the factors that are relevant to the particular case. See *In re RCM Global Long Term, Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996) ("A court should…use only the factors that are deemed relevant, assigning to each factor whatever weight the court feels is appropriate."). The *Sonnax* Court itself considered only four of the twelve factors as relevant. See *In re Sonnax Industries, Inc.*, 907 F.2d at 1286.

58.    Assuming *arguendo* that the automatic stay extends to the Underwriters, Santa Rosa respectfully submits that cause exists to modify the stay so as to allow Santa Rosa to pursue claims against them on account of, *inter alia,* willful misrepresentation, loss or damage to an insured property, and breach of contact. Accordingly, Santa Rosa submits that cause exists, as follows:

   (i)    *Factor 1: Relief Would Result in a Partial or Complete Resolution of the Issue*

59.    Puerto Rico Courts are the only forum where the liability of the parties can be completely determined. Allowing Santa Rosa to proceed against the Underwriters provides the only opportunity for *complete or partial relief* against all parties, *to wit,* Aon and the Underwriters, in one forum, thus the first *Sonnax* factor militates granting relief from the stay.

60.    Courts in this District have regularly recognized that relief from the stay may be appropriate where a non-bankruptcy court is the only forum in which the rights of all parties to a dispute can be collectively and properly adjudicated. See *e.g. In re N.Y. Med. Grp., P.C.*, 265 B.R. at 413 (finding that the state court's ability to grant complete relief to all parties, including third parties, weighed in favor of lifting the stay).

61.    Santa Rosa has submitted *Amended Proof of Claim No. 19,755* on account of its *Contingent Claim for Insurance Proceeds*, which is premised on the same underlying facts as its claims against the Underwriters. See *Amended Proof of Claim No. 19,755*. Assuming the Debtors' intend to contest *Amended Proof of Claim No. 19,755*, Santa Rosa's claims will be liquidated in the proof-of-claim adjudication process. By contrast, the liability of the Underwriters is not susceptible to determination by this Court through the proof-of-claim adjudication process or through an adversary proceeding because such liability

vests strictly on Puerto Rico law, specifically the Puerto Rico Civil Code and the Puerto Rico Insurance Code, as discussed below.

62.     If the stay is not modified with regard to the Underwriters, Santa Rosa will be forced to litigate essentially identical claims against Aon, then again against the Underwriters upon the "effective date" of Debtors' confirmed *Plan* (Docket No. 5370), which is not a date certain.  By contrast, if the stay is modified, the U.S. District Court for the District of Puerto Rico will be able to jointly resolve all claims as to both the Underwriters and Aon in a single proceeding.  Accordingly, the first *Sonnax* factor weighs heavily in favor of Santa Rosa.

*(ii)     Factor 2: Relief Would Not Interference with the Debtors' Reorganization*

63.     At this stage in the proceedings, the Debtors' only "going concern" assets have been sold and the Debtors' *Plan* has been confirmed (Docket No. 5370).  Relief to pursue non-bankruptcy claims against the Underwriters under applicable non-bankruptcy law would not interfere with the Debtors' reorganization as no reorganization is contemplated with which to interfere.

64.     It is the Debtors' contention that relief to pursue direct action claims against the Underwriters under non-bankruptcy law would directly impact and/or harm the Debtor on account of the *Settlement Agreement's* indemnity clause which purports to ████████████████ the Underwriters from any and all actions, demands and claims arising under Policy No. PTNAM1701557. In addition to the fact (discussed above) that the Settlement Agreement containing the purported indemnity is unenforceable, Santa Rosa submits that **it will not pursue claims directly against the Debtors on account of its alleged claim that insurance proceeds were improperly paid.**[12]  Moreover, the mere fact that the Debtors *may* or *may not* incur costs in connection with a "potential" litigation initiated by the Underwriter does not constitute "interference".  By way of example, the Debtors will not incur costs in the Adversary

---

[12] Santa Rosa's *Contingent Claim for Insurance Proceeds* may be withdrawn once Santa Rosa's claims against Aon and the Underwriters have been fully adjudicated, its remaining claims notwithstanding. See *Amended Proof of Claim No.  19,755.*

Proceeding no longer pending before this Court, which has been dismissed by stipulation. See Adv. Proc. No. 19-08266, Docket No. 11.

65.    Moreover, as held in *Riggs v. Palmer*, 115 N.Y. 506, 506 (1889), "[n]o one shall be permitted to profit by his own fraud, to take advantage of his own wrong, to [fund] any claim upon his own inequity or to acquire property by his own crime."  For "[i]t is a principle of the widest application that equity will not permit one to rely on his own wrongful act, as against those affected by it but who have not participated in it, to support his own asserted legal title or to defeat a remedy which except for his misconduct would not be available." *Deitrick v. Greaney*, 309 U.S. 190, 196 (1940), citing *United States v. Dunn*, 268 U.S. 121, 133 (1925) and *Independent Coal & Coke Co. v. United States*, 274 U.S. 640, 648 (1927).

66.    In this instance, no great harm would befall the estate if the stay is not extended and/or lifted as to the Underwriters; the only potential prejudice being an increase in litigation costs which does not rise to the level of great prejudice, only in the event the Underwriters, who lack *clean hands,* should seek recourse against Debtors on the indemnity.  However, in the balance of equities, the harm borne by Santa Rosa would be greater if the stay is extended and/ or remains in place.

67.    Ultimately, as expressly stated in Section 13.4(iii) of the *Plan*, relief to pursue claims directly against the Underwriters is contemplated.  In its pertinent part, Section 13.4(iii) reads:

> [O]n the Effective Date [of the *Plan*] … (iii) **the automatic stay**… and the injunctions set forth in the Plan, if and to the extent applicable, **shall be deemed lifted without further order of this Court**, **solely to permit**: (a) claimants with … direct action claims against an insurer under applicable non-bankruptcy law to proceed with their claims; (b) insurers to administer, handle, defend, settle, and/or pay … (II) **claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law**, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing…

Docket No. 4704, § 13.4(iii), pp. 77-78 (emphasis added).  For the sake of clarity, "Insurer" is defined as "any company or other entity that issued an Insurance Contract, any third party administrator, and any respective predecessors and/or affiliates thereof." Id. at § 1.82, p. 14.  "Insurance Contract" is defined as "all insurance policies that have been issued at any time to or provide coverage to any of the Debtors

(including, but not limited to, any D&O Policies) and all agreements, documents or instruments relating thereto..." Id. at § 1.81, p. 14.

68.    Further, Santa Rosa highlights Section 13.4(iii)(c) of the confirmed *Plan* (Docket No. 5370) which specifically states that, on the effective date of the *Plan,* "the automatic stay… shall be deemed lifted … to permit **Insurers to draw against any or all of the collateral or security provided by or on  behalf of the Debtors** at any time and to hold the proceeds thereof as security for the obligations of the Debtors … **and/or apply such proceeds to the obligations of the Debtors** … **under the applicable Insurance Contracts, in such order as the applicable Insurer may determine** …". Docket No. 5370, § 13.4(iii)(c) (emphasis added).

69.    In summary, the relief requested would not interfere with the Debtors' reorganization as no reorganization is contemplated with which to interfere; any potential litigation costs to be incurred by the Debtors on account of their own misdeeds *post-petition* do not constitute interference; and relief would only expedite what the Debtors' already contemplate in Section 13.4(iii)(c) of the confirmed *Plan* (Docket No. 5370).  Consequently, the second *Sonnax* factor weighs heavily in favor of the relief requested.

    *(iii)    Factor 4: A Specialized Tribunal Has Been Established*

70.    It is Santa Rosa's position, as aforestated, that Puerto Rico Courts are the proper forum with the necessary expertise wherein Santa Rosa may adequately pursue all of the causes of action it has at law against the Underwriters.  Without exception, the claims to be asserted by Santa Rosa against them hinge exclusively on Puerto Rico law and are premised on uniquely Puerto Rico law causes of action under both the Civil Code of Puerto Rico and the Insurance Code of Puerto Rico.

71.    The fact that the causes of action at issue are governed by foreign law weighs in favor of granting the relief requested.  While a close or novel question of law is not presented here, except for the gravity of Hurricanes Irma and María's severity that demanded special legislation and regulations, the cause of action at issue arises under the Insurance Code of Puerto Rico and **may only be exercised in Puerto Rico**, thus, weighing heavily in favor of granting the relief requested.

72.    Furthermore, under Puerto Rico law, an injured party has the right to bring a suit against the insurer in addition to or in place of a suit solely against the insured.  Specifically, Art. 20.030(1) of the PR Insurance Code, commonly referred to as the "direct action statute", provides that:

> **Any individual sustaining damages and losses shall have**, at his option, **a direct action against the insurer under the terms and limitations of the policy**, which action he may exercise against the insurer only or against the insurer and the insured jointly. **<u>The direct action against the insurer may only be exercised in Puerto Rico</u>**.  The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured.

26 L.P.R.A. § 2003(1) (official translation, emphasis and underline added).  <u>See</u> *Marina Aguila v. Den Caribbean, Inc.,* 490 F. Supp. 2d 244, 245 (D.P.R. 2007). Santa Rosa sustains that it has a distinct, independent and separate cause of action against the Underwriters under Art. 20.030 of the PR Insurance Code, which may only be exercised in Puerto Rico.

73.    Further, because Santa Rosa sustains that since it is an additional named insured and/or a loss payee to the *Contract of Insurance* there is privity of contract between Santa Rosa and the Underwriters, thus, Santa Rosa has a right to bring a direct action against them under Art. 1209 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3374, which states in pertinent part that "[s]hould the contract contain any stipulation in favor of a third [party], he may demand its fulfilment, provided he has given notice of his acceptance to the person bound before it may have been revoked."  31 L.P.R.A. § 3374 (West translation). Accordingly, only Puerto Rico Courts are vested with the necessary expertise for Santa Rosa to pursue <u>all the causes of action it has at law against the Underwriters</u>.  <u>See</u> *e.g. Santiago v. United States Fidelity & Guaranty Co., 183* F. Supp. 676 (D.P.R. 1960) (recognizing action brought against an insurer under Puerto Rico's direct-action statute); *M. R. (Vega Alta), Inc. v. Caribe General Elec. Products, Inc.,* 31 F. Supp. 2d 226, 238 (D.P.R. 1998) (recognizing a cause of action in favor of third-party beneficiaries to a contract under Art. 1209 of the Civil Code of Puerto Rico).

74.     Santa Rosa submits that a Puerto Rico non-bankruptcy tribunal should be considered as the optimal forum to hear causes of action arising under the PR Laws.  Accordingly, the fourth *Sonnax* factor weighs heavily in favor of Santa Rosa's request for relief.

*(iv)     Factor 5: The Underwriters have Assumed Full Responsibility*

75.     Pursuant to the *Contract of Insurance*, Policy No. PTNAM1701557 insures all liability incurred by the Debtors' as tenant or occupant under the Civil code, because of damage to real and personal property by loss or damage.  See *Contact of Insurance*, **Exhibit II**, p. 30, ¶ 50.  Further, in the event the Underwrites fail to pay an amount claimed to be due, the Underwrites agreed to submit to the jurisdiction of any court of competent jurisdiction within the United States and agreed to comply with all requirements necessary to give such jurisdiction.  See id. at p. 25, ¶ 28. As such, the Underwriters have assumed full responsibility for the Debtors' actions and, as further discussed below, are personally liable under the PR Insurance Code.  Accordingly, the fifth *Sonnax* factor—whether the debtors' insurance carrier has assumed full financial responsibility for defending any litigation in the event the Debtors are sued under the liability coverage—also weighs in favor of Santa Rosa.  Moreover, as stated above, since the present case involves a direct action of Santa Rosa for damages caused to its insurable interest, the present relief does not affect the Debtors' right to seek defense costs against any ensuing litigation filed by third parties, including tenants, occupants and/or visitors to Santa Rosa.

*(v)     Factor 6: Relief Would Allow Santa Rosa to Pursue Claims Exclusively Against Third Party Non-Debtors*

76.     Santa Rosa seeks relief to pursue independent non-bankruptcy causes of action against the Underwriters on account of, *inter alia*, willful misrepresentation, loss or damage to an insured property, and breach of contract.

77.     Upon information and belief, on or about ███████████ the Debtors executed a *Settlement Agreement* with certain insurance Underwriters, ████████████████████████ ███████████ The *Settlement Agreement* was executed without Santa Rosas' knowledge, authority, consent or input, despite Santa Rosa's multiple requests and communications to that effect.  It must be highlighted

that the *Settlement Agreement* was executed ███████████ on behalf of the Debtors ████████
████████████████████████████████████████████████████████████████████ also both

received and responded to letters from and to Santa Rosa that confirmed Santa Rosa's rights under the

*Contract of Insurance*, the *Lease Agreement,* and the *Certificate of Insurance*.  See **Exhibit IX.**  The

Debtors' knowledge that Santa Rosa is an additional insured and/or loss payee and/or has an insurable

interest over the insurance proceeds from Store No. 1915 is therefore unquestionable.

78.     Under Puerto Rico Law, an obligation may be extinguished, *inter alia*, by payment.  See

31 L.P.R.A § 3151.  "A debt shall not be considered as paid until the full amount of the thing has been

delivered…" 31 L.P.R.A. § 3161.  To that effect, "[a]ny person, whether he has an interest or not in the

fulfillment of the obligation... can make the payment." 31 L.P.R.A. § 3162.  Notwithstanding, "[p]ayment

must be made to the person in whose favor the obligation is constituted, or to another authorized to receive

it in his name." Art. 1116 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3166.  Ergo, while "payment made

in good faith to the person who is in possession of the credit shall release the debtor," 31 L.P.R.A. § 3168,

payment otherwise made to a third person is deemed invalid *unless* "**it may have been beneficial to the**

**creditor**." 31 L.P.R.A. § 3167 (emphasis added).  See also *CMI Capital Market Investment, LLC v.*

*Municipality of Bayamon*, 410 F.Supp.2d 61, 74 (D.P.R. 2006) (recognizing the "improper payment"

doctrine of Art. 1116 of the Puerto Rico Civil Code.  "[T]he only legal effect of such "improper payment"

would be that the contractual obligation set forth in the [agreement] remains in full force and effect and that

payment remains due.").  Santa Rosa submits that payment made under Policy No. PTNAM1701557 was

improper, despite the Underwriters statements to the contrary.  See *Letter from AIG to CCM dated July 23,*

*2019,* **Exhibit __**, p. 3.

79.     The Underwriters willfully, knowingly or recklessly participated in the misrepresentations

made by the Debtors regarding Santa Rosa, as they were timely informed by Santa Rosa of its claim

concerning the insurance proceeds.  See **Exhibit VIII.**  In the alternative, the Underwriters incurred in gross

negligence by executing the *Settlement Agreement* and paying the Debtors, blatantly disregarding Santa

Rosa's rights as additional named insured or loss payee.

80.     The Underwriters have a statutory obligation to indemnify Santa Rosa under the Insurance Code of Puerto Rico and under the Civil Code of Puerto Rico on account of the harm and damage caused by the Underwriters for knowingly breaching and/or violating Santa Rosa's subjective rights under both the *Contract of Insurance* and the *Lease Agreement.*  Accordingly, the sixth *Sonnax* factor favors granting Santa Rosa relief to pursue independent non-bankruptcy causes of action against the Underwriters.

(vi)   *Factor 7: Relief Would Not Prejudice the Interests of Other Creditors.*

81.     The seventh *Sonnax* factor supports relief as creditors will modestly benefit rather than be harmed.

82.     Santa Rosa's claims against the Underwriters will need to be resolved in one forum or another, with or without the relief sought and the Debtors may incur costs regardless of the forum in which Santa Rosa's claims are pursued and determined.  As stated above, the mere fact that the Debtors may or may not incur litigation costs on account of their own misdeeds and misrepresentations does not alone constitute prejudice.  Notwithstanding, even if litigation costs were to constitute prejudice, the mere fact that such cost would arise *regardless* confirms that litigation costs alone cannot serve as a basis for prejudice.  On the same vein, relief would benefit other creditors by avoiding the costs of duplicative litigation.  Wherefore, if relief is granted the litigation costs to be borne by the Debtors will either—*at most*—be lower or—at *minimum*—remain neutral to those already projected.

(vii)   *Factor 8: Relief from the Stay would Not Result in a Subordinated Claim.*

83.     The eighth *Sonnax* factor also weighs in favor of granting relief. Santa Rosa seeks relief solely to pursue independent non-bankruptcy causes of action against third-party non-debtors.   No equitable subordination would result from granting the requested relief.

(viii)   *Factor 9: The Puerto Rican Litigation would Not Result in an Avoidable Judicial Lien*

84.     The ninth *Sonnax* factor, if at all relevant, likewise weighs in favor of granting relief as by doing so solely to pursue independent non-bankruptcy causes of action against third-party non-debtors would not result in a judicial lien—avoidable or otherwise—against the Debtors.

     (ix)    *Factor 10: Relief from the Stay will Enhance Judicial Economy and the Expeditious and Economical Resolution of Litigation*

85.    The tenth *Sonnax* factor militates strongly in favor of Santa Rosa in order to avoid costly duplicative litigation.

86.    Judicial economy is best served by allowing Santa Rosa to pursue independent non-bankruptcy causes of action against both the Underwriters and Aon *jointly* in a single forum.  <u>See</u> *In re Cicale*, 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. 2007) (noting that "in the interests of judicial economy, [] allowing [the Movant] to proceed with the Third–Party Action will not result in any unreasonable or unforeseeable delay.  Furthermore, the Court finds that allowing [the Movant to] proceed with the Third–Party Action **will provide the most efficient and economical resolution of the litigation because the Third–Party Action <u>may alleviate the need for any further proceedings in the bankruptcy court</u>**.  Thus, this *Sonnax* factor weighs in favor of [the Movant]."

87.    Absent the relief requested herein, Santa Rosa will be compelled to try the same law and facts twice, first against Aon and again (following the effective date of Debtors' *Plan*) against the Underwriters, a circumstance that should be avoided as issues of whether Santa Rosa would be collaterally estopped could arise.  Declining to grant relief could result in inconsistent judgments concerning the same law applied to the same facts. Thus, the relief requested by Santa Rosa would eliminate that risk and enhance judicial economy.

88.    For the forgoing reasons, the tenth *Sonnax* factor militates strongly in favor of relief from the stay because granting the requested relief is the only viable avenue for avoiding costly duplicative litigation.

     (x)    *Factor 12: The Balance of Harms Weighs in Favor of Santa Rosa*

89.    The relief requested herein will not prejudice the interests of other creditors.  By contrast, continuing the automatic stay will impose substantial hardship on Santa Rosa that outweigh the potential hardships to the Debtors, if any. Any further delay in allowing Santa Rosa to file its claims against the Underwriters only increases Santa Rosa's growing damages.  Consequently, the final *Sonnax* factor

similarly favors granting Santa Rosa's limited relief requested.  It would be a travesty of justice not to allow Santa Rosa relief from the stay to pursue some semblance of justice.

## Closing Remarks

In closing, Santa Rosa <u>will not pursue claims directly against the Debtors outside of these proceedings</u>, instead, it seeks only to prosecute independent, non-core, non-bankruptcy causes of action against both the Underwriters and Aon *jointly* in a single forum on account of an insurance claim alleged as improperly paid.  The Debtors' indemnification obligation is insufficient to justify extension of the automatic stay for it cannot be said that the Underwriters' interests are closely intertwined by virtue of an agreement that is unenforceable and/or does not threaten, burden, or otherwise impede Debtors' reorganization efforts.  The Debtors simply cannot effectively justify extending the protection of the automatic stay to the Underwriters.  Absent the relief requested herein, Santa Rosa will be compelled to try the same law and facts twice, first against Aon and again against the Underwriters following the effective date of Debtors' *Plan*, a circumstance that should be avoided as the effective date is not a date certain and issues of whether Santa Rosa would be collaterally estopped could arise and/or result in inconsistent judgments.  Allowing Santa Rosa to proceed against the Underwriters provides the only opportunity for *complete or partial relief* against <u>all parties,</u> *to wit,* Aon and the Underwriters.

## Prayer for Relief

WHEREFORE, Santa Rosa respectfully requests that the Court grant the relief requested herein and enter an order finding that the automatic should not be extended or, in the alternative, modify the automatic stay so that Santa Rosa may seek non-bankruptcy relief against the Underwriters.

[Signatures on next page]

Respectfully submitted.
Dated: January 7, 2020.

**Ferraiuoli** LLC

390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001

*/s/ Sonia E. Colón Colón*
Sonia E. Colón Colón
Admitted *Pro Hac Vice*
USDC-PR No. 213809
scolon@ferraiuoli.com

*/s/ Gustavo A. Chico-Barris*
Gustavo A. Chico-Barris
NY State Bar No. 929147
USDC-PR No. 224205
gchico@ferraiuoli.com

-and-

**Ríos Gautier & Cestero C.S.P.**
27 González Giusti Street, Suite 300
Guaynabo, PR 00968-3076
Telephone: (787) 753-7750
Facsimile: (787) 759-6768

/s/Carlos Ríos Gautier
Carlos Ríos Gautier
USDC-PR No. 112606
*Pro Hac Vice*
riosgautierlaw@yahoo.com

Attorneys for
*Santa Rosa Mall, LLC*