**Hearing Date and Time:** January 28, 2020 at 10:00 am (Prevailing Eastern Time)
**Objection Date and Time:** January 21, 2020 at 4:00 pm (Prevailing Eastern Time)

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Sean A. O'Neal
Luke A. Barefoot
Chelsey Rosenbloom
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for Transform Holdco LLC, Transform SR*
*Protection LLC and Transform SR LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SEARS HOLDINGS CORPORATION, et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 18-23538 (RDD)<br><br>(Jointly Administered) |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

### TRANSFORM HOLDCO LLC'S OBJECTION TO THE
### CLASS REPRESENTATIVES' MOTION FOR RELIEF FROM AUTOMATIC STAY

Transform Holdco LLC ("Transform"), the buyer of substantially all of the assets of Sears Holdings Corporation and its affiliated Debtors (the "Debtors") pursuant to the APA (as defined below), together with Transform's affiliates Transform SR Protection LLC and Transform SR LLC and by their undersigned counsel, hereby submit this objection (the "Objection") to the *Class Representatives' Motion for Relief from the Automatic Stay* [Docket No. 6212] (the "Motion") dated as of December 13, 2019.  In support of this Objection, Transform, Transform SR Protection LLC and Transform SR LLC respectfully state as follows:

### PRELIMINARY STATEMENT

1. Following an extensive negotiation process between the Debtors and Transform, the Debtors agreed to sell, and Transform agreed to purchase substantially all of the Debtors' assets free and clear of all liens and claims to the full extent of Section 363 of the Bankruptcy Code.

2. The free and clear transfer was a critical, if not *the* critical, aspect of the sale transaction and is subject to only a few narrow exceptions that were agreed upon between the Debtors and Transform, and defined to be "Assumed Liabilities" under the APA.

3. Because Transform pursued a going concern sale of the Debtors' assets and would continue the Debtors' business on a go forward basis, honoring existing customer relationships was key to existing and future business.  Therefore, Transform narrowly agreed only to assume liabilities for protection agreements themselves that were owed to customers, in accordance with Section 2.3(e) of the APA.

4. However, it is absolutely clear from the text of the APA itself, and further proven by the parol evidence surrounding the transaction, that Transform did not assume obligations for

2

a class action lawsuit that was initiated in 2015 against certain Debtors (the "Class Action"), which the Class Action plaintiffs assert is *related to* liabilities for protection agreements that were assumed pursuant to Section 2.3(e) of the APA. Such litigation is instead an Excluded Liability under the APA. The structure and language of the APA repeatedly makes this critical distinction between categories of liabilities where a broader category of liabilities "relating to" or "arising out of" a category of claims was assumed and the narrow construction of claims "for" protection agreement liabilities. Moreover, the APA specifically and separately addressed all pre-closing litigation in Section 2.4(c), making express that any such litigation claims were Excluded Liabilities.

5.  In the event the Court finds any ambiguity in the text of the APA, the parol evidence surrounding the negotiations makes clear the parties' intent to exclude the Class Action plaintiffs' claim. The parol evidence demonstrates that the parties had a shared understanding of the reason that the Class Action was not a liability assumed by Transform and that the estimated value associated with the assumption of the relevant liabilities did not in any way account for the Class Action. The parties to the APA agree that there was no intent to have Transform assume liabilities associated with the Class Action. *See Declaration of Kunal S. Kamlani in Support of Transform Holdco LLC's Objection to the Class Representatives' Motion for Relief from the Automatic Stay* ("Kamlani Decl.") ¶¶ 20–23; *Declaration of Robert A. Riecker in Support of Transform Holdco LLC's Objection to the Class Representatives' Motion for Relief from the Automatic Stay* ("Riecker Decl.") ¶¶ 16–17; *Declaration of Charles W. Allen in Support of Transform Holdco LLC's Objection to the Class Representatives' Motion for Relief from the Automatic Stay* ("Allen Decl.") ¶ 8.

3

6. Accordingly and for the reasons further set forth below, the relief requested in the Motion should be denied.

## BACKGROUND

**A. The Free and Clear Sale**

7. Pursuant to the court-approved bidding procedures, the Debtors sold substantially all of their assets through a bidding process, culminating in a three-day auction running from January 14, 2019 through January 16, 2019. *See Notice of Successful Bidder and Sale Hearing* [Docket No. 1730] ("Notice of Successful Bidder").[2]

8. At the conclusion of the auction, the Debtors selected Transform's going concern bid for substantially all of the Debtors' assets as the highest or otherwise best bid. Notice of Successful Bidder ¶ 4.

9. Accordingly, an asset purchase agreement was executed between Transform and the Debtors on January 17, 2019 and a contested three-day hearing to approve the sale began on February 4, 2019. Notice of Successful Bidder ¶¶ 4, 8.

10. On February 8, 2019, the court entered an order approving the sale of substantially all the Debtors' assets to Transform free and clear of all liens, claims and encumbrances. *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* [Docket No. 2507] (the "Sale Order"), attaching the approved asset purchase agreement as Exhibit B thereto [Docket No. 2507-1] (as may be amended, restated or amended and restated

---

[2] Counsel to the movants was duly served with the Notice of Successful Bidder and filed no opposition. *See Affidavit of Service* [Docket No. 1969].

4

from time to time, including pursuant to Amendment 1 [Docket No. 2599] and Amendment 2 [Docket No. 3880], the "APA"). The sale provided the Debtors with approximately $5.2 billion in value and closed on February 11, 2019 (the "Closing Date").

11. In exchange for providing $5.2 billion in value, Transform received the assets it purchased "free and clear" of any and all liabilities other than those liabilities that were expressly assumed. Sale Order ¶¶ R, 19; APA § 2.1 ("Buyer or such applicable Assignee shall purchase, all right, title and interest of Sellers, in, to or under all assets, properties and rights Related to the Business other than the Excluded Assets, and the following assets, properties and rights (collectively, the "Acquired Assets") free and clear of any and all Encumbrances of any kind, nature or description and any Claims. . . .").

12. In addition to broadly defining the universe of "Claims" that Transform's purchase is free and clear of, the Sale Order also ensures that claims that existed against the Debtors cannot be continued against Transform. Sale Order ¶ R ("All Persons having Claims of any kind or nature whatsoever against the Debtors or the Acquired Assets shall be forever barred, estopped and permanently enjoined from creating, perfecting, pursuing, enforcing, attaching, collecting, recovering, or asserting such Claims against the Buyer or any of its assets, property, affiliates, successors, assigns, or the Acquired Assets.").

13. Furthermore, the Sale Order makes a finding that "[t]he Buyer would not have entered into the [APA] and would not consummate the transactions contemplated thereby if the sale of the Acquired Assets that are owned by the Debtors was not free and clear of all Claims, if the Buyer would, or in the future could, be liable for any such Claims, including, as applicable, certain liabilities related to the Business that will not be assumed by the Buyer, as described in the [APA]. . . . " Sale Order ¶ S.

14. As noted above, the narrow exception to the free and clear protection afforded to Transform is the demarcated list of Assumed Liabilities defined in the APA. APA § 2.3.

15. Transform made clear throughout the Debtors' bankruptcy cases that its goal was to purchase the Debtors' assets and to continue the Debtors' business on a smaller scale without the burdens of Excluded Liabilities. As customer relationships are critical to the success of the business, one narrow group of Debtor liabilities that Transform agreed to honor is "all Liabilities *for* warranties and protection agreements or other services contracts . . . for the goods and services of Sellers sold or performed prior to the Closing, including any Liabilities owed by Sears Re to any Seller in respect of reinsurance of such warranties and protection agreements (the 'PA Liabilities')." APA § 2.3(e) (emphasis added).

16. The concept of having Transform assume customer-facing liabilities for the Debtors' protection agreements was present in each bid that Transform submitted to the Debtors throughout the sale process. Kamlani Decl. ¶¶ 5–7, 9, 11, 15, 17; Riecker Decl. ¶ 8.

17. Indeed, the first version of the asset purchase that Transform submitted to the Debtors in a binding bid for substantially all of the Debtors' assets on December 28, 2018 required customers to affirm their entitlement to the protection in order to have the liability honored by Transform. See Ex. D to Kamlani Decl. (Section 2.3(e) provides for Transform's assumption of, "all Liabilities for warranties and protection agreements or other services contracts (other than warranties relating to Intellectual Property) for the goods and services of Sellers sold or performed prior to the Closing as to which the holder of such warranty, protection or services contract has submitted a duly completed affirmance of such holder's rights in such warranty, protection or services contract on or prior to the date that is two-hundred and seventy (270) days following the Closing Date.").

6

18. This requirement for customer affirmation in order to benefit from Transform's assumption of the protection agreement liabilities carried through to the next version of the asset purchase agreement submitted by Transform to the Debtors in its January 9, 2019 bid for substantially all of the Debtors' assets. Kamlani Decl. ¶¶ 12–13.

19. In the course of the negotiations of the asset purchase agreement between January 9, 2019 and January 17, 2019, the requirement for customer affirmation was removed because the Debtors took the position that the process would be logistically burdensome and confusing. Riecker Decl. ¶ 14; Kamlani Decl. ¶ 16.

20. While the language of Section 2.3(e) of the APA evolved throughout the negotiations over the language of the APA, the intent behind the provision and the amount of the associated protection agreement liability did not. Kamlani Decl. ¶¶ 5–7, 12–23; Riecker Decl. ¶¶ 8, 11–17.

21. At each stage of the sale transaction negotiations, the assumption of the protection agreement liability was estimated at the time to represent approximately $1.009 billion in value. Kamlani Decl. ¶¶ 9, 12, 23; Riecker Decl. ¶ 8–10.

22. Neither the Debtors nor Transform viewed Section 2.3(e) of the APA as providing for Transform's assumption of pre-existing litigation associated with the protection agreements. Kamlani Decl. ¶¶ 11, 17–22; Riecker Decl. ¶¶ 15–17. Indeed, the $1.009 billion figure that the parties agreed was the estimated value of the assumed liability for protection agreements in no way included or accounted for the claims that the Class Action plaintiffs now seek to assert against Transform or its affiliates in the United States District Court for the Northern District of Illinois Eastern Division. Kamlani Decl. ¶ 23; Riecker Decl. ¶¶ 8–10, 16–17.

    **B.**    **Class Action Lift Stay Motion**

23.    On December 13, 2019, the Motion was filed. The Motion is styled as a request to lift the automatic stay to the extent required in order to pursue against Transform the Class Action. The Class Action asserts a broad range of remedies and causes of action including unjust enrichment and state consumer protection statues, some of which have the potential to result in treble damages if plaintiffs prevail. *See* the Class Action plaintiffs' *First Amended Class Action Complaint* ¶ 74 [Docket No. 6212-3] ("Class Action Complaint"), attached as Exhibit B to the Motion (seeking treble damages for claims relating to alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law).

24.    Through the Motion, movants argue –incorrectly– that Transform assumed liability for the Class Action by agreeing to honor pre-existing protection agreements purchased by customers of the Debtors. In this way, while the Motion focuses on the *Sonnax* factors, it is undisputed that the automatic stay does not apply to non-debtor Transform. Instead, the Motion actually seeks what amounts to a procedurally defective declaration on the scope of liabilities that the Class Action plaintiffs incorrectly assume that Transform assumed.[3]

## ARGUMENT

**I.    THE FREE AND CLEAR SALE TO TRANSFORM DID NOT INCLUDE A TRANSFER OF PRE-EXISTING CLASS ACTION LAWSUITS**

25.    The text of the Sale Order and the APA provide broad protection to Transform that its purchase of the Debtors' assets is free and clear of any and all liens, claims and encumbrances. *See, e.g.*, Sale Order ¶¶ R, 19; APA § 2.1. This interpretation of Section 363 of

---

[3]    Filing of the Motion and seeking relief vis a vis Transform is a reversal of Class Action plaintiffs' prior position in these cases because well after the Closing Date, on April 5, 2019, movants filed proofs of claim asserting these claims against certain Debtors without any mention or suggestion that the liability had been assumed by Transform as a result of the sale transaction. *See* Claim No. 14323 (Proof of Claim against Sears, Roebuck and Co.); Claim No. 14256 (Proof of Claim against Sears Protection Company); and Claim No. 14252 (Proof of Claim against Sears Holdings Corporation).

8

the Bankruptcy Code is consistent with the underlying policy goals supporting Section 363 as well as case law in this circuit. *See, e.g.*, *In re Motors Liquidation Co.*, 829 F.3d 135, 154–56 (2d Cir. 2016) (explaining that Section 363(f) of the Bankruptcy Code permits a sale free and clear of *in rem* interests in the property and of claims that "flow from the debtor's ownership of the sold assets" if the claim (1) arises from a right to payment and (2) arose before the bankruptcy filing or resulted from pre-petition conduct); *In re Grumman Olson Indus., Inc.*, 467 B.R. 694, 702–03 (S.D.N.Y. 2012) (noting that courts in the Second Circuit read Section 363(f) broadly); *Douglas v. Stamco*, 363 F. App'x 100, 102–03 (2d Cir. 2010) (explaining Section 363's policy goal of maximizing value and noting that "to the extent that the 'free and clear' nature of the sale (as provided for in the Asset Purchase Agreement . . . and § 363(f)) was a crucial inducement in the sale's successful transaction, it is evident that the potential chilling effect of allowing a tort claim subsequent to the sale would run counter to a core aim of the Bankruptcy Code, which is to maximize the value of the assets and thereby maximize potential recovery to the creditors.").

26. In fact, the key benefit to a sale pursuant to Section 363 of the Bankruptcy Code is the ability to purchase assets free and clear, and pending contingent claims are precisely the type of liabilities that would not be transferred to a buyer in a 363 sale. *E.g.*, *In re Motors Liquidation Co.*, 829 F.3d 154-56 (finding sale to be free and clear of claims that arose from accidents that occurred prior to closing and of economic loss claims); *see also, e.g., In re Christ Hospital*, 502 B.R. 158, 170, 172 (D.N.J. 2013) (observing that "[c]ourts have readily barred assertion of economic tort claims . . . as collateral attacks on § 363 sale orders . . . ." and that "[p]roposed sales 'free and clear . . . [under § 363(f)]' would have little functional value if interests created prepetition were not to be affected.").

27. The free and clear provisions of the Sale Order and the APA are subject only to the finite number of narrowly tailored "Assumed Liabilities" in the APA. APA § 2.3. In fact, the APA creates a default rule establishing a broad construction of liabilities not transferred to Transform under the APA, defined as the "Excluded Liabilities". APA § 2.4. The wide range of Excluded Liabilities creates only a narrow exception for Assumed Liabilities.

28. As is clear from both the plain language of the APA and – to the extent the Court need examine it – the parties' intent at the time of drafting, Transform did not assume any liability for the Class Action or any similar lawsuits.

### A. The Plain Text of the APA Is Clear That the Class Action Is an Excluded Liability

29. The language in the APA is clear on its face that Transform assumed liabilities for pre-existing protection agreements, but that assumption does not include contingent liabilities asserted in the Class Action. This is particularly clear from a comparison of the narrow scope of Assumed Liabilities *for* performance on the protection agreements themselves (APA § 2.3(e)), and the broader scope of certain other categories of Assumed Liabilities where Transform intentionally agreed to assume liabilities "arising out of" (APA § 2.3(a)) or "relating to" (APA § 2.3(b)) the relevant liabilities.

30. Delaware law governs the APA. "Delaware law adheres to the objective theory of contracts, *i.e.*, a contract's construction should be that which would be understood by an objective, reasonable third party." *Salamone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2014). Delaware law also makes clear that when a "contract is clear and unambiguous," the court "will give effect to the plain-meaning of the contract's terms and provisions," *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010), with "'priority to the parties' intentions as reflected

in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions," *Salamone*, 106 A.3d at 368 (citation omitted).

31.  The plain text of the APA unambiguously provides that any liabilities that are not clearly Assumed Liabilities constitute Excluded Liabilities. APA § 2.4. The Class Action is one such Excluded Liability.

32.  Section 2.4 of the APA sets out broad language defining Excluded Liabilities to include any liabilities other than Assumed Liabilities. Specifically, the expansive introductory language of Section 2.4 provides, "None of Buyer, any Affiliate of Buyer or any Assignee shall assume, be deemed to assume or become obligated hereunder in any way to pay or perform . . . any Liabilities of any Sellers or any of their respective Affiliates of any kind or nature, known, unknown, contingent or otherwise, whether direct or indirect, matured or unmatured, other than the Assumed Liabilities. . . ." APA § 2.4. Accordingly, the default rule provided by the APA is that unless a liability is clearly an identified Assumed Liability, it is automatically an Excluded Liability and is not an obligation of Transform.

33.  The APA includes a non-exhaustive list of examples of Excluded Liabilities, one of which provides that any pre-Closing Date litigation arising out of the Assumed Liabilities constitute Excluded Liabilities, leaving no ambiguity surrounding whether or not the sale to Transform was free and clear of the Class Action. Specifically, Section 2.4(c) of the APA defines Excluded Liabilities to include "all Liabilities arising from or related to any claim, Action . . . litigation or other proceeding (whether civil, criminal, administrative, investigative or informal and whether pending or threatened or having any other status) arising out of the Assumed Liabilities . . . prior to the Closing Date or relating to facts, actions, omissions, circumstances or conditions existing, occurring or accruing prior to the Closing Date against any

11

Seller or its Affiliates". APA § 2.4(c).[4] The Class Action plainly is precisely such an Excluded Liability.

34. To the extent there is any doubt that the Class Action is an Excluded Liability, the plain text of the APA's description of Assumed Liabilities eradicates any potential for remaining questions. The plain text of the APA provides that Transform assumed liabilities "*for* warranties and protection agreements or other service contracts . . . for the goods and services of Sellers sold or performed prior to Closing." APA § 2.3(e) (emphasis added).

35. The word "for" here supports the notion that Transform, as buyer of the Debtors' business, agreed to honor pre-existing customer relationships by assuming liabilities *for* goods sold or services performed prior to closing. The use of "for" as the descriptor in relation to the assumed liabilities for protection agreements, warranties and services agreements is markedly different from and more narrow than the descriptors used to identify other Assumed Liabilities in the APA.

36. For example, Assumed Liabilities includes "all Liabilities of Seller or any of its Subsidiaries *arising out of* the ownership of the Acquired Assets or operation of the Business or the Acquired Assets on or after the Closing Date that are Related to any Acquired Asset". APA § 2.3(a) (emphasis added). By way of further comparison, Assumed Liabilities includes "all Liabilities arising on or after the Closing Date or Designation Assignment Date, as applicable, *relating to* the payment or performance of obligations with respect to the Assigned Agreements". APA § 2.3(b) (emphasis added).

---

[4] To the extent that movants rely instead on the general definition of "Liabilities" in the APA to support their position, they ignore the well-established canon of contract interpretation that the specific governs over the general. *See, e.g.*, *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) (observing that established rules of contract construction require that "where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one").

37.     The Second Circuit has observed that the phrase "arising from" typically indicates a causal relationship, and that the phrase "related to," which is defined as a "connection" to or a "reference" to, does not necessarily require a causal connection and is "typically defined more broadly" than "arising from." *E.g.*, *Coregis Ins. Co. v. American Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001).  In contrast, the plain meaning of the word "for" does not describe a broad relationship, but one of specific purpose or actual or implied enumeration. *See For*, *The American Heritage Dictionary of the English Language* 684–85 (5th ed. 2011) (defining "for" as "1a. Used to indicate the object, aim, or purpose of an action or activity . . .").  The plain meaning of the word "for" in Section 2.3(e) of the APA, in addition to its use in context as compared to the use of "arising out of" and "relating to" in Section 2.3 of the APA, makes clear that the scope of assumed liabilities related to the protection agreements is intentionally narrow and does not include liabilities relating to litigation that had been commenced prior to the Debtors' bankruptcy.

38.     The APA's plain language regarding Assumed Liabilities and Excluded Liabilities is thus unambiguous that the Class Action is not an Assumed Liability.

**B.    The Parol Evidence Further Supports Transform's Position**

39.     To the extent that this Court determines the language of the APA is not clear and determinative on its face, parol evidence supports Transform's position and makes clear there was no intent to have Transform assume defense of the Class Action.  "[W]hen there is uncertainty in the meaning and application of contract language, the reviewing court must consider the evidence offered in order to arrive at a proper interpretation of contractual terms." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997); *Shiftan v. Morgan Joseph Holdings, Inc.*, 57 A.3d 928, 935 n.15 (Del. Ch. 2012) (Where a contract is ambiguous, the court "may consider parol evidence for the common understanding of the

language in controversy."). Parol evidence can comprise "evidence pertaining to antecedent agreements, communications of the parties" and "commercial usage in the industry." *Bell Atl. Meridian Sys. v. Octel Commc'ns Corp.*, No. Civ. A. 14348, 1995 WL 707916, at *6 (Del. Ch. Nov. 28, 1995).

40. Here, the context is univocal that Transform agreed to assume liabilities for existing protection agreements and warranties as a means of maintaining customer support for Transform's ongoing business. Kamlani Decl. ¶¶ 5–7, 9, 11–12, 15–18; Riecker Decl. ¶ 12. In light of the business purpose for Section 2.3(e) of the APA—maintaining customer relationships and customer trust—Transform did not and would not have agreed to assume a pre-existing class action lawsuit filed by parties alleging to be so disappointed in the company's support that they initiated a lawsuit (much less when the Class Action asserts claims that could result in treble damages). The Class Action plaintiffs are most definitely not a source of ongoing customer support.

41. Furthermore, evidence surrounding the negotiation lends further support to the fact that the intent of Section 2.3(e) of the APA was only ever to assume liabilities under the protection agreements themselves as the provision originated by requiring customers to affirm their rights to the protection, a process that was abandoned because the Debtors believed it would be logistically burdensome and confusing for customers, but not because of an intent to change the scope of the liabilities assumed. Riecker Decl. ¶ 14; Kamlani Decl. ¶ 16. Clearly, a policy holder would not have been able to use an affirmance of the agreements to have a class action lawsuit assumed by Transform.

42. Moreover, the assumption of the protection agreement liabilities was tied to a particular amount in coming up with the purchase price for the transaction. The $1.009 billion

number was based on an estimated calculation of liabilities for the protection agreements prepared by the Debtors at the time of the sale transaction, and did not account in any way for the liabilities asserted in the Class Action.[5] The parties agree there was simply no intent to have Transform assume the liabilities associated with the Class Action. Kamlani Decl. ¶¶ 20–23; Riecker Decl. ¶¶ 16–17; Allen Decl. ¶ 8.

43.     While Transform reiterates its position that the text of the APA is clear and unambiguous, to the extent that this Court finds ambiguity in the text of the APA, the parol evidence further substantiates Transform's position that it did not assume the Class Action.

## II.    THE LIFT STAY MOTION IS A DRESSED UP AND PROCEDURALLY IMPROPER DECLARATORY JUDGMENT REQUEST

44.     While the Motion is nominally styled as a request for relief from the automatic stay, the Motion in reality constitutes a masked and procedurally defective request for a declaratory judgment on the scope of assumed liabilities.  As a non-Debtor, Transform is not protected by the automatic stay, such that the Motion is both procedurally and analytically defective.

45.     First, because the relief the Class Representatives seek is directed at a party that is not subject to the protections of Section 362, the Motion's attempt to engage with the *Sonnax* factors makes little sense and is analytically divorced from the relief that is actually sought. Indeed, as the Motion aptly notes, the twelve *Sonnax* factors are used "to determine whether to lift or modify the automatic stay." Motion ¶ 29. The twelve factors are as follows:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the

---

[5] For the avoidance of doubt, the purchase price under the APA was not allocated.  As such, this is illustrative parol evidence and nothing herein shall in any way constitute a statement or omission regarding any allocation of the purchase price provided by Transform pursuant to the APA.

15

> necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

46.     The Motion does not explain why the stay, which applies to the Debtors and to non-debtors in limited scenarios, should be modified or lifted. Nor does the Motion suggest that the automatic stay has been extended to protect Transform, as it most assuredly has not. Instead, the Motion curiously argues that three *Sonnax* factors – seemingly selected at random – are supported because the automatic stay is in fact not applicable to Transform. *See* Motion ¶ 35 ("The Buyer is a non-debtor third party to whom the automatic stay is not applicable"); *see also*, Motion ¶ 36 ("Courts in the Second Circuit only apply the automatic stay to a non-debtor in extraordinary circumstances . . . .").

47.     To support two other *Sonnax* factors, the Motion asserts that the case is nearly "trial-ready" and judicial economy would be served by lifting the stay because discovery has been completed, the Class Representatives were in the process of developing a class notice plan, the Debtors' summary judgment motion is pending and Judge Alonso in the Illinois District Court is familiar with the underlying case. Motion ¶¶ 40–42. Attempting to engage with these *Sonnax* factors, when Transform is not subject to the automatic stay, is akin to an attempt to force a square peg into a round hole.

16

48.     The Motion appears to treat Transform and the Debtors as the same entity because Transform operates businesses that the Debtors previously operated. That interpretation misconstrues the reality that Transform purchased substantially all of the Debtors' assets free and clear, and is not a successor to the Debtors. Transform has never been a party to or involved in the Class Action. The Debtors –and not Transform– are the ones against which the Class Representatives have to date, and should continue, to pursue the Class Action, through their duly filed proof of claim.

49.     Second, the Motion is procedurally defective insofar is in reality it requests a declaratory judgment that the automatic stay does not apply to the Class Action and seeks to use that declaratory judgment to recover money from Transform. The Motion seeks entry of an order providing "Movants may only pursue relief in the Class Action, if available, against non-Debtor Transform Holdco LLC." Proposed Order attached to Motion ¶ 2 [Docket No. 6212-4]. The language in the proposed order reinforces the Motion's true goal of arguing that the automatic stay does not apply because the "Buyer is now the real party in interest in the Class Action." Motion ¶ 34.

50.     The proper procedure to initiate a claim for declaratory relief to recover a monetary judgment is through initiation of an adversary proceeding. Fed. R. Bankr. P. 7001(1), (9).[6]

---

[6]     Even if this Court finds that an adversary proceeding is not required, to the extent the Court considers parol evidence, the Motion will require an evidentiary hearing and no such hearing has been requested through the Motion. Furthermore, the omnibus hearing scheduled for January 28, 2020 cannot be converted into an evidentiary hearing. Any such conversion would be in violation of Local Rule 9014-2 and Paragraph 34 of the Case Management Order. S.D.N.Y. Local Rule 9014-2; *Case Management Order* ¶ 34 [Docket No. 405].

17

## CONCLUSION

51. For the reasons stated above, Transform Holdco LLC, together with its affiliates Transform SR Protection LLC and Transform SR LLC, respectfully request that the Court enter an order denying the relief requested in the Motion and grant such other and further relief that it deems just and appropriate.[7]

Dated: January 21, 2020
       New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ Luke A. Barefoot
Sean A. O'Neal
Luke A. Barefoot
Chelsey Rosenbloom
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Fax: (212) 225-3999

*Attorneys for Transform Holdco LLC, Transform SR Protection LLC and Transform SR LLC*

---

[7] Even if the Court grants the relief requested in the Motion, Transform and its affiliates reserve all rights and defenses as to the merits of the claims and causes of action asserted in the Class Action, including any arguments on the application of Federal Rule of Civil Procedure 25(c).

18