UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

SEARS HOLDINGS CORPORATION, et al.,

Debtors.[1]

Chapter 11

Case No. 18-23538 (RDD)

(Jointly Administered)

### DECLARATION OF ROBERT A. RIECKER IN SUPPORT OF TRANSFORM HOLDCO LLC'S OBJECTION TO THE CLASS REPRESENTATIVES' MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, Robert A. Riecker, declare under penalty of perjury as follows:

1. I respectfully submit this declaration ("Declaration") in support of Transform Holdco LLC's Objection to the Class Representatives' Motion for Relief from the Automatic Stay.

2. I am currently the Chief Financial Officer of Transform Holdco LLC and its subsidiaries ("Transform"). Previously, I served as the Chief Financial Officer of the Debtors from April 2017 until February 11, 2019, and have held various positions with the Debtors since

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

1

October 2005.  I have knowledge of and am familiar with Debtors' day-to-day operations, business and financial affairs, and books and records during the time in which I served as the Debtors' Chief Financial Officer.

3.  Following October 15, 2018 (the "Petition Date"), the Debtors, under the oversight of a four-member committee of independent directors (the "Restructuring Committee") and with the advice of Lazard Frères & Co. LLC ("Lazard"), Weil, Gotshal & Manges LLP ("Weil") and M-III Partners, LLC ("M-III"), assessed and discussed potential transactions, including sale transactions whereby all or substantially all of the Debtors' assets would be sold to an investor or buyer who would continue to operate the Debtors' businesses as a going concern pursuant to section 363(b) of title 11 of the United States Code (the "Sale Process").

4.  Ultimately, the Debtors pursued the Sale Process and selected a bid by Transform as the highest or otherwise best bid.  Accordingly, the Debtors entered into an Asset Purchase Agreement dated as of January 17, 2019 by and among Transform, Sears Holdings Corporation and its subsidiaries party thereto, as amended (the "APA").

5.  As Chief Financial Officer of the Debtors, I played a primary role in negotiations of the APA on behalf of the Debtors and its advisors.

6.  All statements in this Declaration are based upon my personal knowledge of discussions regarding the circumstances surrounding the negotiations of the APA and the Sale Transaction and my review of relevant documents.[2]  If called to testify, I would testify competently to each of the facts set forth in this Declaration.

---

[2] The facts included herein only include non-privileged information that was exchanged between and among Transform and the Debtors and their representatives and nothing herein is or is intended to be a waiver or disclosure of any privileged communications.

7. Prior to the execution of the APA, Transform formally set forth its desire to purchase substantially all of the Debtors' assets through submission of (i) an indicative bid on December 5, 2018, (ii) a binding bid on December 28, 2018 and (iii) a revised binding bid on January 9, 2019.

8. Transform's bids provided for the assumption of certain of the Debtors' liabilities. The type and scope of the liabilities that would be assumed by Transform evolved throughout the course of the negotiations, but each iteration of Transform's bid provided for the assumption of the Debtors' home services protection agreement liabilities, in an amount that was ultimately valued at an estimated $1.009 billion.[3]

9. The $1.009 billion number is based on an estimated calculation of liabilities as of that point for the protection agreements prepared by the Debtors.

10. While Transform did not allocate the purchase price to particular assets, through a presentation shared with the Debtors at a meeting on January 2, 2019, it was understood that Transform reached the approximately $1.1 billion figure referenced in its bid letters by adding together the (i) $1.009 billion for the assumption of liabilities for home services protection agreements, (ii) $13 million for the assumption of the 2018 gift card vintage and (iii) $68 million for the assumption of Shop Your Way points.

11. Additionally, the asset purchase agreements submitted by Transform to purchase all or substantially all of the Debtors' assets included the assumption of liabilities for certain protection agreements.

---

[3] For the avoidance of doubt, the purchase price under the APA was not allocated. As such, this is illustrative parol evidence and nothing herein shall in any way constitute a statement or omission regarding any allocation of the purchase price provided by Transform pursuant to the APA.

3

12. My understanding was that Transform proposed to assume the protection agreement liabilities so that Transform could honor existing customer relationships, in addition to increasing the economic value of its going concern bid by removing those liabilities from Debtors' books for the benefit of the Debtors' estates.

13. Prior to executing the APA, Transform proposed a concept that would have required customers to complete an affirmation of their rights to warranty or protection agreement services in order to have those liabilities honored by Transform.

14. During the parties' negotiations regarding the language of the APA, the Debtors negotiated to remove the concept of requiring protection holders to affirm their rights to protection in order to have their protection agreements honored by Transform because in the Debtors' view the logistics of such a process would be too complex. The Debtors also believed that the process would be confusing to protection holders and therefore might make them reach out with questions.

15. Therefore, the final version of Section 2.3(e) of the APA provides that "subject to Section 2.8(e), all Liabilities for warranties and protection agreements or other services contracts (other than warranties relating to Intellectual Property) for the goods and services of Sellers sold or performed prior to the Closing, including any Liabilities owed by Sears Re to any Seller in respect of reinsurance of such warranties and protection agreements (the 'PA Liabilities')." APA § 2.3(e).

16. As noted above, my understanding of the intent behind Section 2.3(e) of the APA was that Transform intended to honor the Debtors' customer relationships as part of continuing to run the Debtors' business as a going concern. Consistent with this intent, the amount

associated with the liability was tied to an estimated calculation of liabilities for the protection agreements prepared by the Debtors.

17. I do not believe there was any intent to have Transform assume pre-existing litigation associated with the protection agreement liabilities, and I am not aware of any discussions between Transform and the Debtors where assuming any existing protection agreement litigation was proposed, much less agreed.

*    *    *

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on January 21, 2020 in Hoffman Estates, Illinois.

Respectfully submitted,

_____
Robert A. Riecker