WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                  :
                                                       :        **Chapter 11**
**SEARS HOLDINGS CORPORATION,** *et al.*,              :
                                                       :        **Case No. 18-23538 (RDD)**
                                                       :
          Debtors.[1]                                  :        **(Jointly Administered)**
-------------------------------------------------------------x

## DEBTORS' OBJECTION TO MOTION FOR AN ORDER FINDING THE AUTOMATIC STAY INAPPLICABLE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY AND MEMORANDUM IN SUPPORT THEREOF

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR - Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, LLC (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Robbins Co., Inc. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ...............................................................................17

*In re Ace Track Co., Ltd.*,
  556 B.R. 887 (Bankr. N.D. Ill. 2016) .............................................................13, 15

*In re Bally Total Fitness of Greater New York, Inc.*,
  402 B.R. 616 (Bankr. S.D.N.Y. 2009) ...................................................................22

*In re Brentano's*,
  27 B.R. 90 (S.D.N.Y. 1983).....................................................................................16

*Burger Boys, Inc. v. South St. Seaport Ltd. P'ship*,
  183 B.R. 682 (Bankr. S.D.N.Y. 1994) ...................................................................25

*In re Chittur & Assocs., P.C.*,
  No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968 (S.D.N.Y. Dec. 18,
  2018) .......................................................................................................................20

*In re Congregation Birchos Yosef*,
  535 B.R. 629 (Bankr. S.D.N.Y. 2015) .......................................................18, 19, 21

*In re Consol. Distribs.*,
  Case No. 13-40350 (NHL), 2013 Bankr. LEXIS 3101 (Bankr. E.D.N.Y. July
  23, 2013) .................................................................................................................25

*In re Curtis*,
  40 B.R. 795 (Bankr. D. Utah 1984) .......................................................................23

*In re Drexel Burnham Lambert Group Inc.*,
  1990 Bankr. LEXIS 2889 (Bankr. S.D.N.Y. 1990) ..........................................22, 23

*In re Fairfield Sentry Ltd.*,
  539 B.R. 658 (Bankr. S.D.N.Y. 2015) ...................................................................11

*In re FPSDA I, LLC*,
  2012 WL 6681794 (Bankr. E.D.N.Y. 2012)..........................................................17

*Gray v. Hirsch*,
  230 B.R. 239 (S.D.N.Y. 1999)................................................................................16

*In re Leslie Fay*,
    168 B.R. 294 (Bankr. S.D.N.Y. 1994) ..............................................................................12, 15

*In re MarketXT Holdings Corp.*,
    No. 04-12078 (ALG), 2009 Bankr. LEXIS 1897 (Bankr. S.D.N.Y. July 20,
    2009) ............................................................................................................................................22

*Med. Malpractice Inc. Ass'n v. Hirsch (In re Lavigne)*,
    114 F.3d 379 (2d Cir. 1997) ......................................................................................................11

*In re Mildred Deli Grocery, Inc.*,
    Case No. 18-10077 (MG), 2018 Bankr. LEXIS 546 (Bankr. S.D.N.Y. Feb. 28,
    2018) ............................................................................................................................................25

*O'Neil v. New England Road, Inc. (In re Neri Bros. Constr. Corp.)*,
    593 B.R. 100 (Bankr. D. Conn. 2018) .....................................................................................12

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 US 414 (1968) ......................................................................................................................15

*Queenie, Ltd. v. Nygard Intern.*,
    321 F.3d 282 (2d Cir. 2003) ................................................................................................10, 17

*In re Residential Capital, LLC*,
    No. 12-12020 (MG), 2012 Bankr. LEXIS 3624 (Bankr. S.D.N.Y. Aug. 7,
    2012) ............................................................................................................................................22

*Salim v. Nisselson (In re Big Apple Volkswagen, LLC)*,
    No. 16-CV-5824 (RA), 2016 Bankr. LEXIS 2057 (Bankr. S.D.N.Y. 2016),
    *aff'd* 571 B.R. 43 (S.D.N.Y. 2017) ..............................................................................13, 14, 15

*In re Sears Holding Corporation*,
    Case No. 18-23538, (Bankr. S.D.N.Y. Mar. 21, 2019) .........................................................6, 21

*In re Sonnax Industries, Inc.*,
    907 F.2d 1280 (2d Cir. 1990) .......................................................................................... *passim*

*In re SunEdison, Inc.*,
    557 B.R. 303 (Bankr. S.D.N.Y. 2016) ....................................................................................20

*In re WorldCom, Inc.*,
    No. 05 Civ. 5704, 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug. 4, 2006) ..........................22

**Statutes**

11 U.S.C. § 362(a)(1) ..........................................................................................................................17

11 U.S.C. § 363(c)(1) ..........................................................................................................................11

WEIL:\97362278\10\73217.0004

**Other Authorities**

Fed. R. Bankr. P. 9019 ................................................................................................10, 13, 14, 15

3 *Collier on Bankruptcy* ¶ 363.03 (16th ed. 2017) ......................................................................12

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................................1

Background .................................................................................................................3

    A.     The Debtors' Chapter 11 Cases .................................................................3

    B.     The Santa Rosa Lease and the Third Lift Stay Motion...........................4

Legal Discussion ........................................................................................................9

    A.     The Third Lift Stay Motion Should Be Denied .......................................9

    B.     The Settlement Agreement is Enforceable ............................................10

    C.     Application of the Automatic Stay to the Underwriters is Proper .........16

    D.     The Landlord Has Failed to Meet its Burden to Lift the Automatic Stay.............19

        a.    Factor 1: Partial or Complete Resolution of the Issues......................20

        b.    Factor 2: Interference with the Debtors' Chapter 11 Cases ...............20

        c.    Factor 4: Has A Specialized Tribunal Been Established ....................21

        d.    Factor 5: Has Insurer Assumed Full Defense Responsibility ............23

        e.    Factor 6: Action Primarily Involving Third Parties ...........................23

        f.    Factors 7 and 10: Prejudice to the Interest of the Debtors' Other Creditors, and Judicial Economy and the Expeditious, Economical Resolution of Litigation ..24

        g.    Factors 8 and 9: Inapplicable to the Landlord's Requested Relief ....25

        h.    Factor 11:  Lack of Readiness For Trial ...........................................25

        i.    Factor 12: Impact of the Stay and the Balance of Harms ..................26

Reservation of Rights................................................................................................27

Conclusion ...............................................................................................................27

WEIL:\97362278\10\73217.0004

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation ("**Sears**") and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection (the "**Objection**") in response to the *Motion for And [(sic)] An Order Finding the Automatic Stay Inapplicable or, In the Alternative, for Relief From the Automatic Stay and Memorandum in Support Thereof*, dated January 7, 2020 (ECF No. 6317) (the "**Third Lift Stay Motion**"), filed by Santa Rosa Mall, LLC (the "**Landlord**" and together with the Debtors, the "**Parties**").[1]  In support of the Objection, the Debtors respectfully represent as follow:

<u>**Preliminary Statement**</u>

1.     The Third Lift Stay Motion seeks entry of an order finding that the automatic stay does not apply and/or should not be extended to protect third-party non-debtors or, in the alternative, relief from the automatic stay for cause.  Third Lift Stay Motion, p. 1.  The Third Lift Stay Motion should be denied, *with prejudice*.

2.     Throughout these chapter 11 cases, the Landlord has filed duplicative and meritless pleadings—some in direct contravention of this Court's directions.  In total, the Landlord has filed six substantive pleadings, in addition to motions to shorten, motions to seal, the Adversary Complaint (defined below), and the Third Lift Stay Motion.  Not one has been granted by this Court – and for good reason.  These seemingly endless pleadings have forced the Debtors, time and again, to expend their limited resources to prepare responses.  Responding to the Landlord's Third Lift Stay Motion is no different.  Indeed, as a whole, the relief requested in the Third Lift

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Third Lift Stay Motion.

Stay Motion is nothing new; and the Third Lift Stay Motion is devoid of legal and factual bases sufficient to demonstrate that the standards have been met to grant the Landlord's requested relief.

3.      Of particular note, while the Landlord takes issue with the enforceability of an insurance settlement entered into by the Debtors in January 2019 (the "**Settlement Agreement**"), it does not take issue with the general terms of the actual settlement itself.  Rather, it seeks a determination that the Settlement Agreement is unenforceable for its own parochial purposes, to enhance its stay relief motion, without regard for the consequences to the Debtors' estates.

4.      Moreover, just three months ago, the Debtors and the Landlord entered into the *Stipulation, Agreement, and Order Between the Debtors and Santa Rosa Mall, LLC Granting Limited Relief From the Automatic Stay* (ECF No. 5537) (the "**Stipulation**") which, the Debtors believed, would grant them a reprieve from the barrage of motion practice.  But rather than seeking to assert its claims against Aon[2] in Puerto Rico, the Landlord has changed its mind and now seeks to pursue its claims against Aon and the Underwriters[3] in one consolidated action, making all of the efforts surrounding the Stipulation a complete waste of time.

5.      Given the Landlord's pattern of continually filing meritless and duplicative pleadings, the Debtors seek to address, once and for all, each of the Landlord's oft-repeated arguments and requests for relief to fully adjudicate these recurring matters.  The Debtors respectfully request finality from the Court on these matters, as they simply cannot afford to

---

[2] "**Aon**" means collectively, Aon UK Limited, Aon Risk Services Central, Inc. d/b/a Aon Risk Insurance Services Central, Inc., Aon Benefield Puerto Rico, and/or Aon Property Risk Consulting, Inc.

[3] "**Underwriters**" means the non-Debtor parties to the Settlement Agreement (as defined in the Third Lift Stay Motion).

2

continue to deplete limited resources at the whim of the Landlord by negotiating with the Landlord and responding to its pleadings, to no avail.

6.       The burden on a movant seeking relief from the automatic stay is heavy, and the Landlord has once again failed to satisfy its burden.  In an effort to limit the time and expense incurred in responding to the Third Stay Relief Motion, the Debtors hereby incorporate by reference the *Objection to Motion for Entry of Order Compelling Debtor to Disclose Status of Insurance Claim and Deposit Any Insurance Proceeds into Separate Account (Santa Rosa Mall, Puerto Rico)* (ECF No. 2512) (the "**Insurance Proceeds Objection**"), a copy of which is annexed hereto as **Exhibit A** (without the exhibits), the *Debtors' Objection to Motion for Relief from the Automatic Stay and Memorandum in Support Thereof and/or to Declare that the Insurance Proceeds are Not Part of the Bankruptcy Estate* (ECF No. 4224) (the "**First Lift Stay Objection**"), a copy of which is annexed hereto as **Exhibit B** (without the exhibits), and the *Third Omnibus Objection of Debtors to Motions for Relief From Stay* (ECF No. 3877) (the "**Third Omnibus Lift Stay Objection**"), a copy of which is annexed hereto as **Exhibit C** (without the exhibits).

7.       For all the reasons set forth below, as well as in the Debtors' prior responses, the Debtors respectfully request that the Third Lift Stay Motion be denied with prejudice so that the Landlord is precluded from filing any more meritless pleadings raising the same issues during the pendency of these chapter 11 cases.

## Background

### A.      The Debtors' Chapter 11 Cases

8.       Beginning on October 15, 2018 and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 the United States Code (the "**Bankruptcy Code**").

WEIL:\97362278\10\73217.0004

9.      On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors (the "**Creditors' Committee**").

10.     The Debtors and Transform Holdco LLC ("**Transform**") entered into that certain asset purchase agreement, dated as of January 17, 2019 (as amended, the "**APA**") for the sale of substantially all of the Debtors' assets (the "**Sale Transaction**").

11.     On February 8, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and* Clear *of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507) (the "**Sale Order**").  The Sale Transaction closed on February 11, 2019.

12.     On October 15, 2019, the Court entered the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief* (ECF No. 5370) (the "**Confirmation Order**"), confirming the Plan (as defined in the Confirmation Order).

13.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3) (the "**Riecker Declaration**").

**B.      The Santa Rosa Lease and the Third Lift Stay Motion**

14.     On September 22, 1965, the Landlord and SR – Rover de Puerto Rico, LLC f/k/a Sears, Roebuck de Puerto Rico, Inc. ("**Rover Puerto Rico**") entered into that certain lease

agreement (the "**Santa Rosa Lease**") for the premises located in the Santa Rosa Mall in Bayamon, Puerto Rico.

15.     Under the APA, Transform had sixty  days after the closing of the Sale Transaction to designate unexpired leases for assumption and assignment (the "**Designation Period**").  At the request of Transform and the Landlord, the Debtors agreed to an extension of the Designation Period for the Santa Rosa Lease to April 30, 2019 (the "**Extended Designation Deadline**").

16.     On April 29, 2019, one day prior to the Extended Designation Deadline, the Landlord filed the *Santa Rosa Mall's Emergency Motion to Compel Compliance with the Court's February 8, 2019 Sale Order* (ECF No. 3417) (the "**Emergency Motion**") and the *Santa Rosa Mall, LLC's Motion for an Order Shortening Notice with Respect to Emergency Motion to Compel Compliance with the Court's February 8, 2019 Sale Order* (ECF No. 3418) (the "**Motion to Shorten Notice**").

17.     On April 30, 2019, the Debtors received formal notice from Transform that it would not be designating the Santa Rosa Lease for assumption and assignment, and the Debtors subsequently filed a notice of rejection of the Santa Rosa Lease (ECF No. 3449). Contemporaneously therewith, the Debtors informed the Landlord that, in light of the proposed rejection of the Santa Rosa Lease, the Sale Order was not applicable to such lease, and as such, requested the Landlord to withdraw the Emergency Motion.

18.     On May 1, 2019, the Landlord withdrew the Emergency Motion and the Motion to Shorten Notice (ECF No. 3468).  On the very same day, the Landlord filed the *Motion for Relief From the Automatic Stay and Memorandum in Support Thereof and/or to Declare that the Insurance Proceeds Are Not Part of the Bankruptcy Estates* (ECF No. 3475) (the "**First Lift**

5

**Stay Motion**") and sought to have it heard on the next omnibus hearing, which was scheduled for May 21, 2019.

19.    The Debtors informed the Landlord that the First Lift Stay Motion was not timely filed to be heard on May 21, 2019.  Moreover, the Debtors advised the Landlord that the First Lift Stay Motion was inconsistent with the Court's admonition at the hearing held on March 21, 2019, that the Landlord should seek the relief it sought by adversary proceeding rather than by motion.  *See In re Sears Holding Corporation*, Case No. 18-23538, Hr'g. Tr. at 81:20-24 (RDD) (Bankr. S.D.N.Y. Mar. 21, 2019).  Subsequently, the Landlord filed the *Emergency Motion for an Order Shortening Notice With Respect to Motion for Relief From the Automatic Stay and Memorandum in Support Thereof and/or to Declare that the Insurance Proceeds are Not Part of the Bankruptcy Estate* (ECF No. 3676) (the "**Emergency Motion to Shorten Notice**").

20.    Given the duplicative filings by the Landlord and the untimeliness of the First Lift Stay Motion, the Debtors requested a telephonic chambers conference with this Court (the "**Chambers Conference**"), which was held on May 8, 2019.   During the Chambers Conference, this Court denied the Emergency Motion to Shorten Notice and reiterated that the Landlord should proceed by adversary proceeding.

21.    A month later, on June 7, 2019, the Landlord filed a complaint commencing an adversary proceeding against Sears and Rover Puerto Rico (ECF No. 4153) (such complaint, the "**Adversary Complaint**" and the proceeding, the "**Adversary Proceeding**").

22.    On June 11, 2019 and June 12, 2019, the Debtors requested that the Landlord withdraw or, in the alternative, adjourn the First Lift Stay Motion in light of the pending Adversary Proceeding, but the Landlord refused, and as a result, on June 16, 2019, the Debtors

6

were forced to utilize their limited resources and to impose on the Court's resources by filing the First Lift Stay Objection.

23.    On June 20, 2019, the Court heard the First Lift Stay Motion and the First Lift Stay Objection (the "**June 20th Hearing**") and, based on the facts presented to the Court and taking into account the pending Adversary Proceeding that would address the main issues raised in the First Lift Stay Motion, the Court declined to rule on the First Lift Stay Motion until either (a) a ruling in the Adversary Proceeding had been made, or (b) the Landlord was able to present additional facts to show "a direct relationship with Aon . . . where they owe a duty independent of the debtors' conduct."  June 20th Hr'g Tr., Hr'g. Tr. at 86:8-11 (RDD) (Bankr. S.D.N.Y. June 20, 2019).

24.    On July 14, 2019, the Debtors timely filed the *Motion to Dismiss Adversary Complaint* (Case No. 19-08266, ECF No. 8) ("**Motion to Dismiss**").

25.    On August 12, 2019, in an effort to consensually resolve the issues raised in the Adversary Complaint and the Motion to Dismiss and, based on the Landlord's express representation that it intended to focus on its potential claims against Aon rather than the Debtors, the Parties agreed to stipulate to a withdrawal of the Adversary Complaint without prejudice.

26.    On August 15, 2019, the Parties filed the *Stipulation of Voluntary Dismissal Without Prejudice* (Case No. 19-08266, ECF No. 11).

27.    A month later, on September 11, 2019, the Landlord filed the *Second Lift Stay Motion for an Order Finding the Automatic Stay Inapplicable or, in the Alternative, for Relief From the Automatic Stay and Memorandum in Support Thereof* (ECF No. 5124) (the "**Second Lift Stay Motion**").  In the Second Lift Stay Motion, Landlord again sought relief from the automatic stay to pursue claims against (i) Aon, and (ii) the Underwriters.

7

28.     On October 7, 2019, the Court confirmed the Plan and, in response to the Landlord's various assertions, also ordered the Debtors to file with the Court a letter clarifying Section 15.8(b) of the Plan.  On October 11, 2019, the Debtors complied with the Court's direction and filed the requested letter (ECF No. 5362).  On October 15, 2019, the Court entered the Confirmation Order.  Section 15.9(b) of the Plan provides third-party releases for the benefit of certain Released Parties.  The Landlord opted out of such third-party releases.

29.     In another effort to consensually resolve the issues raised in the Second Lift Stay Motion, and based on the Landlord's representation that it intended to pursue its potential claims against Aon rather than the Debtors *or* the Underwriters, the Parties agreed to enter into the Stipulation.

30.     In relevant part, the Stipulation provides:

 [T]he automatic stay under section 362 of the Bankruptcy Code (the "**Automatic Stay**") shall be modified solely to the extent necessary for the Landlord to pursue independent causes of action against Aon; provided, that, all other provisions of the automatic stay, including, without limitation, ***those provisions prohibiting the commencement or continuation of any other judicial proceeding against any of the Debtors or the Underwriters*** that was or could have been commenced prior to the Commencement Date, and those provisions prohibiting any act to collect, assess, or recover a claim that arose prior to the Commencement Date from the respective estates and/or assets or property of any of the Debtors (as defined in section 541 of the Bankruptcy Code), shall remain in full force and effect.

Stipulation, ¶ 2 (emphasis added).

31.     The Stipulation also provides that (i) the Landlord's Second Lift Stay Motion would be deemed withdrawn without prejudice upon the effective date of the Stipulation, which occurred on October 30, 2019, and (ii)  the Landlord shall provide the Debtors seven days' prior notice before filing any further motion for relief from the automatic stay.  *See* Stipulation, ¶ 3.

8

32.    Less than two months later, on December 24, 2019, much to the Debtors' disappointment and disbelief, the Landlord provided notice to the Debtors, via e-mail correspondence, that the Landlord intended to file the Third Lift Stay Motion.

33.    On January 7, 2020, the Landlord filed the Third Lift Stay Motion.

## Legal Discussion

### A.    The Third Lift Stay Motion Should Be Denied

34.    The Landlord argues, yet again, that the automatic stay does not extend to third-party non-debtors like the Underwriters.  Third Lift Stay Motion, p. 2.  This assertion was previously raised in the First Lift Stay Motion.  As this Court stated at the June 20th Hearing, "the fact that [the Landlord] may have a cause of action doesn't mean [the Landlord is] entitled to relief from the stay because [the Landlord is] defining the word 'independent' totally differently, I believe, than what the statute requires, i.e., yes, there are other parties [the Landlord] can sue.  *But if the debtor's going to be sucked into that litigation for relief from stay purposes, [the Landlord] lose[s] under Sonnax*."  June 20th Hr'g Tr. at 85:2-9 (emphasis added).

35.    Further, the Stipulation specifically provided that the automatic stay *as to the Underwriters* remains in full force and effect, language that the Landlord had expressly agreed to.  *See* Stipulation, ¶ 2.  In agreeing to such language, the Landlord has effectively admitted that the automatic stay does in fact extend to the Underwriters.

36.    The Landlord relies on a litany of distinguishable cases in an attempt to support its position that the automatic stay is inapplicable to the Underwriters.  *See* Third Lift Stay Motion, ¶ 38.  Indeed, in each of the cases cited in paragraph 38 of the Third Lift Stay Motion either (a) the debtor did not have any indemnity obligation to the non-debtor party, or (b) if the debtor was required to indemnify the non-debtor party, the court found such costs to be minimal or the indemnity obligation to be contingent.  Neither of those situations exists here.

9

37.     Accordingly, on their face and on this basis alone, the cases cited by the Landlord are distinguishable and inapplicable.  Nonetheless, for the sake of thoroughness, attached hereto as **Exhibit D** is a chart with a summary description of each case cited by the Landlord regarding the extension of the automatic stay to non-debtor third parties (the "**Case Law Chart**").[4]

**B.**     **The Settlement Agreement is Enforceable**

38.     The Landlord acknowledges that the Second Circuit permits application of the stay when a claim against a non-debtor "will have an immediate adverse economic consequence for the debtor's estate."  Third Lift Stay Motion, ¶ 39 (citing *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 287 (2d Cir. 2003) (noting that the automatic stay could properly be extended to non-debtor third parties if the debtor is obligated to indemnify such parties)).  The Landlord contends, however, that the exception should not apply here because (i) the Settlement Agreement is unenforceable because it was not approved by this Court pursuant to Bankruptcy Rule 9019, (ii) the Debtors' indemnification obligation is an insufficient basis upon which to extend the automatic stay, and (iii) the indemnification obligations does not pose a threat to the Debtors' reorganization.  *See* Third Lift Stay Motion, ¶¶ 43, 47, and 49.

39.     In support of its argument that the Settlement Agreement is unenforceable, the Landlord relies on cases that are inapplicable to circumstances of these cases, each of which is summarized and distinguished in the Case Law Chart.  The Landlord has ignored the fundamental structure of the Bankruptcy Code, which permits debtors to operate in the ordinary course of business, unless otherwise specified.

---

[4] The Case Law Chart also describes the cases cited by the Landlord with respect to its argument regarding Bankruptcy Rule 9019.

40. Specifically, section 363(c)(1) of the Bankruptcy Code provide that "[a debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). As the United States Court of Appeals for the Second Circuit has noted: "The purposes behind the ordinary course of business rule in § 363 is to allow a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets." *Med. Malpractice Inc. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (internal citations omitted).

41. The Bankruptcy Code does not define the term "ordinary course of business," but it has been generally accepted "to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business." *In re Lavigne*, 114 F.3d at 384 (internal citations omitted). To determine whether a transaction is in the ordinary course, courts apply the "vertical" test, in which the court considers whether a transaction subjects a hypothetical creditor to economic risks different from those accepted at the time of contract with the debtor, and the "horizontal" test, in which the court considers whether the transaction is the type that similar businesses engage in as part of their ordinary course operations. *Id*. at 384–85; *see also In re Fairfield Sentry Ltd.*, 539 B.R. 658, 675 (Bankr. S.D.N.Y. 2015). "Under this two-part analysis, '[t]he touchstone of "ordinariness" is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business.'" *Id*. (internal citations omitted). Further, "transactions of a type that the debtors commonly engaged in, or which the debtor might have reasonably been expected to engage in prepetition, are likely to be within the ordinary course of business after the

11

commencement of a case . . . ."  3-363 Collier on Bankruptcy ¶ 363.03 (16th ed. 2017); *see also*

*In re Leslie Fay*, 168 B.R. 294, 305 (Bankr. S.D.N.Y. 1994) ("The Code is not meant to straitjacket

the debtor and prevent it from responding quickly to normal business demands . . ."); *O'Neil v.*

*New England Road, Inc. (In re Neri Bros. Constr. Corp.)*, 593 B.R. 100, 152 (Bankr. D. Conn.

2018) ("The standard for whether a transaction is in the ordinary course looks at the type of

transaction" rather than, for instance, the transaction's reasonableness).

42.     In the instant case, the Settlement Agreement satisfies the "horizontal" test

because it is common for large retailers that maintain a diverse portfolio of insurance coverage to

negotiate and settle substantial property damage claims with their insurers.    On the

Commencement Date, the Debtors were operating 687 retail stores in forty-nine states, Guam,

Puerto Rico, and the U.S. Virgin Islands, which averaged between 94,000 to 159,000 square feet.

*See* Riecker Declaration, ¶ 25.  With the vast number of stores of such size across numerous states

and territories, the Debtors were constantly required to address property damage claims relating to

stores caused by natural disasters across multiple states.   While the Debtors operated a retail

business, a critical component of their business was dealing with insurers regarding their numerous

stores and operations.   Indeed, prior the Commencement Date, the Debtors had a group of

five employees, whose primary responsibility was filing, pursuing, and resolving property

insurance claims.   The Debtors regularly entered into similar settlement agreements with their

insurers prior to the filing of these chapter 11 cases.  *See In re Leslie Fay*, 168 B.R. at 304 (stating

that "courts look to the debtor's prepetition business practices and conduct and compare them to

its course of conduct postpetition.").

43.     The Settlement Agreement also satisfies the "vertical" test because, rather

than subjecting a hypothetical creditor of the Debtors to economic risks different, or worse, from

12

those it accepted at the time of contracting with the Debtor, it simply was yet another insurance settlement that was a normal part of the Debtors' business.

44.    Having established that the Settlement Agreement was in the ordinary course of business under section 363(b), the Debtors do not believe they were not required to seek approval of the Settlement Agreement under Bankruptcy Rule 9019.  *See In re Ace Track Co., Ltd.*, 556 B.R. 887, 909-10 (Bankr. N.D. Ill. 2016) (stating that "Under the majority rule, the settlement would require court approval if it is not in the ordinary course of business" and citing Southern District of New York case law as following this rule).

45.    The Landlord relies on several cases for its contention that all settlement agreements, whether or not outside the ordinary course of business, require bankruptcy court approval under Bankruptcy Rule 9019.  Third Stay Relief Motion, ¶ 45.  But, the United States Court of Appeals for the Second Circuit has not ruled on that issue.  And while there is some disagreement among Courts that have considered the issue, a thorough review of those cases reflects that, in most circumstances, where courts make broad statements that settlements require court approval, the underlying facts involved transactions with insiders, settlements of claims that arose as a result of the bankruptcy filing (*e.g.*, chapter 5 claims) and, therefore, are not ordinary course settlements, or payments of prepetition indebtedness.

46.    For example, the Landlord relies on *Salim v. Nisselson (In re Big Apple Volkswagen, LLC)*, No. 16-CV-5824 (RA), 2016 Bankr. LEXIS 2057 (Bankr. S.D.N.Y. 2016), *aff'd* 571 B.R. 43, 57 (S.D.N.Y. 2017).  The case involved an attempt by a principal of a chapter 11 debtor to enforce an alleged agreement with the chapter 11 trustee, pursuant to which the trustee allegedly agreed not to pursue avoidance claims against members of the principal's family for hundreds of thousands of dollars transferred on the eve of the debtor's filing.  The lower

13

court recognized that "[m]ost courts, including courts in this district, mandate that debtors and trustees obtain court approval of proposed compromises and settlements of estate claims, *outside the ordinary course of business*." 2016 Bankr. LEXIS 2057 at *20 (emphasis added). Given that the plaintiff did not contend that the agreement was within the ordinary course of the debtors' business and that no court approval was obtained, the court granted the motion to dismiss the case. 2016 Bankr. LEXIS 2057 at *2, *10. On appeal, the District Court affirmed the bankruptcy court's decision, and appears to have gone further than the bankruptcy court and held that *all* settlements require court approval. 571 B.R. at 55.

47.    It is beyond question that the alleged oral agreement at issue in *Big Apple* was precisely the type of agreement that requires approval under Bankruptcy Rule 9019. It was an agreement between an insider and the trustee pursuant to which the trustee allegedly agreed to forego bankruptcy causes of action. By definition, such an agreement is not in the ordinary course of business, because the avoidance claims were claims that arose upon the bankruptcy filing. It does not follow from the District Court's decision axiomatically, however, that a similar rule should apply to an arm's length agreement with a third party that resolves a prepetition contractual dispute between a debtor and its insurer, as occurred here.

48.    Indeed, out of an abundance of caution, before the Debtors entered into the Settlement Agreement, they conferred with attorneys for both the Creditor's Committee and the lenders who provided the Debtors with post-petition financing (the "**DIP Lenders**") to confirm the Debtors' position that the Settlement Agreement was within the Debtors' ordinary course of business and, accordingly, did not need Court approval. Both sets of attorneys, after reviewing a summary of the Settlement Agreement, agreed that Court approval was not necessary. A copy of

the e-mail exchange, dated December 21, 2018, is annexed hereto as **Exhibit E** ("**December 21st E-Mails**").[5]

49.      Rather than imposing an absolute requirement that approval of all settlement agreements is required under Bankruptcy Rule 9019, the Court should adopt the flexible and practical approach reflected in the *Ace Track* decision, that only settlements outside the ordinary course of a debtor's business require court approval under Rule 9019.  *See In re Ace Track Co., Ltd.*, 556 B.R. at 909-10; *see also Big Apple*, 2016 Bankr. LEXIS 2057, at *5-6; *In re Leslie Fay*, 168 B.R. at 305.[6]

50.      For the reasons stated above, Court approval of the Settlement Agreement under Bankruptcy Rule 9019 was not required.[7]  Accordingly, the Settlement Agreement and the indemnification provision contained therein are enforceable.

---

[5] Due to an existing confidentiality agreement, a redacted copy of the December 21st E-Mails is annexed here.  An unredacted copy will be provided to the Court upon request.

[6] To the extent that the Court concludes that its approval was required under Bankruptcy Rule 9019, the Debtors request that the Court grant such approval *nunc pro tunc* to January 17, 2019.  Despite the Landlord's cavalier statement that the requirements of Bankruptcy Rule 9019 have not been met, *see* Third Lift Stay Motion, ¶46, neither the Landlord nor any other party has taken the position that the Settlement Agreement was not in the Debtors' best interests.  And the Creditors' Committee, which represents the interests of general unsecured creditors such as the Landlord, did not raise any concerns with respect to the settlement and believed it was an appropriate exercise of the Debtors' business judgment.  As reflected in the December 21st E-Mails, the terms of the Settlement Agreement certainly fall within the "lowest range of reasonableness" as required for approvals of compromises and settlements. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 US 414 (1968).

[7] If the Court vitiates the Settlement Agreement because it was not approved under Bankruptcy Rule 9019, then the Debtors' estates would be required to return the proceeds received from the Underwriters under the Settlement Agreement.  In light of the Debtors' limited assets, if they were required to refund the amounts paid under the Settlement Agreement to the Underwriters, the Effective Date would be further delayed.  Further, even if the Debtors were able to disgorge the payment made under the Settlement Agreement, there is no guarantee how much the Underwriters may ultimately pay under the Insurance Policy or how long it would take until payment is made.  In such circumstances, disgorgement would have been to the detriment of the Debtors, their estates, and their creditors, including the Landlord, without any corresponding benefit.

### C. Application of the Automatic Stay to the Underwriters is Proper

51.     As noted in the First Lift Stay Objection, and acknowledged by the Court, under the Settlement Agreement, the Debtors are contractually obligated to indemnify and defend the Underwriters from any and all actions, demands, and claims under the Insurance Policy which the Debtors or any potential interested parties, including landlords of the Debtors' properties (such as the Landlord), may assert at a later date arising out of the matters released under the Settlement Agreement.  Unlike the facts in the cases the Landlord cites,[8] allowing the Landlord to prosecute claims against the Underwriters would *require* the Debtors to bear the litigation expenses.  *See Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999) ("The broader rule here is that a debtor's stay may extend to a non-debtor only when necessary to protect the debtor's reorganization.  *The threatened harm may be to needed debtor funds (e.g., when non-debtors are entitled to indemnification)*.") (emphasis added).  And, given that the Settlement Agreement was entered into subsequent to the Commencement Date, it is likely that any such indemnification claim would be characterized as an administrative expense claim, further adding to the Debtors' burden of generating sufficient cash for the Plan to go effective.

52.     Even the cases cited by the Landlord confirm that an absolute right to indemnification is the exact type of "unusual circumstance" courts find warrant the extension of the automatic stay to third party non-debtors, as it has a tangible and immediate adverse economic impact on the debtor's estate.  *See In re Brentano's*, 27 B.R. 90, 91-92 (S.D.N.Y. 1983) (finding that "the action against the guarantor-indemnitee 'could and would affect the estate in bankruptcy,'

---

[8] Notably, each of the cases the Landlord cites to in paragraphs 47-49 of its Third Lift Stay Motion involve causes of action against officers and directors, partners, or joint venture partners of the applicable debtor entities, where the right to indemnification was contingent.  *See Gray* and other cases located on pp. 5-6 of the Case Law Chart.

16

since, under the indemnity agreement, 'a judgment in favor of the [plaintiff] in the guaranty action would *automatically* result in indemnification liability against Brentano's' [i.e., the indemnitor].") (emphasis added) (internal citations omitted); *In re FPSDA I, LLC*, 2012 WL 6681794, at *12 (Bankr. E.D.N.Y. 2012) (slip copy) (observing that the court in *Robert Plan Corp. v. Liberty Mutual Ins. Co.*, 2010 WL 1193151 (E.D.N.Y. March 23, 2010) correctly concluded that when a non-debtor third party has "such a [nearly] absolute right [to indemnification], the Bankruptcy Court properly protected the estate by staying the . . . case.").    Stated differently, the indemnification obligations of the Debtors to the Underwriters under the Settlement Agreement make the Debtors and Underwriters interests "so intimately intertwined" that the Landlord's litigation against the Underwriters would effectively be litigation against the Debtors.  *See A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) ("[Section 362(a)(1) of the Bankruptcy Code], which stays actions against the debtor and arguably against those whose interests are so intimately intertwined with those of the debtor that the latter may be said to be the real party in interest . . . provid[es] for an automatic stay of [such] proceedings."); *Queenie*, 321 F.3d at 288 (referencing an action where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant . . . ." as an example of a situation warranting the extension of the automatic stay to non-debtors) (internal citations omitted).  Such circumstances favor the application of the automatic stay to the Underwriters, as this Court has previously stated.  In fact, this Court has already approved such extension of the stay to other non-Debtor parties that have indemnification or contribution rights against the Debtors. *See Order Extending the Automatic Stay to Certain Non-Debtor Parties* (ECF No. 1528).

53.    Requiring the Debtors to bear the Underwriters' litigation expenses would impose a direct harm on the Debtors and to the detriment of the estates and all creditors at this

17

crucial juncture of these chapter 11 cases.  The Debtors currently are focused on carrying out the Administrative Expense Claims Consent Program (as defined in the Confirmation Order), running their claims reconciliation process, and winding down the estates to permit the Effective Date to occur and the Plan to be consummated.  Indeed, the Debtors' concern regarding bearing the expenses of such litigation, not to mention any ultimate judgment, is neither trivial nor hypothetical, *see* Third Stay Relief Motion, ¶¶ 64, 66, because AIG Europe Limited has notified the Debtors that "it will look to the Debtors to honor its obligations under the Settlement Agreement, specifically the indemnity provision, should the Landlord file suit against AIG Europe Limited." First Lift Stay Objection, ¶ 16.  And any such litigation will undoubtedly be costly, as the Landlord seeks to commence the action in Puerto Rico.  Hence, if the Court grants the Third Life Stay Motion and permits the Landlord to pursue litigation against the Underwriters, the indemnification costs will become a stark reality for the Debtors—not a mere possibility as the Landlord  alleges.

54.    The Landlord misconstrues and misrepresents the law by incorrectly contending that there is no threat to the Debtors' reorganization efforts because the Debtors have a confirmed plan that provides for liquidation of their assets.  Third Lift Stay Motion, ¶ 49.  The focus should not be on whether the Debtors are in reorganization mode or liquidation mode, but rather on the potential harm to a debtor and its creditors.  As the Court held in *In re Congregation Birchos Yosef*:

> [The automatic stay] serves not only the debtor, but also the debtor's creditors in the collective context of the case by ensuring the orderly determination of the debtor's liabilities, realization of the estate's assets, and allocation of that value to creditors and interest holders according to the Bankruptcy Code's priority scheme and policy of equality of distribution.  In the context where every dollar counts, the automatic stay prevents unilateral races to dismember the debtor and actions outside the bankruptcy court's supervision with their

18

> attendant diversion of resources and impairment of the debtor's
> value.

535 B.R. 629, 633 (Bankr. S.D.N.Y. 2015) (internal citation omitted).

55.     The harm to the Debtors is potentially substantial given their indemnification obligations, and such harm would have a direct adverse impact on the Debtors' creditors.  Further, the entire purpose of the Stipulation and the reason the Debtors agreed to a limited relief from the stay was to ensure that the Landlord could pursue immediate actions against Aon, whom the Debtors are not required to indemnify.

56.     As of the date hereof, the Debtors are unaware of the Landlord having commenced any action against Aon despite the Stipulation having been so-ordered by this Court three months ago.  In fact, the Landlord has not identified what specific harm would befall the Landlord if it is unable to pursue claims against the Underwriters immediately.  Accordingly, for all the reasons set forth above, the Debtors believe the automatic stay should continue to apply to the Underwriters.

### D.     The Landlord Has Failed to Meet its Burden to Lift the Automatic Stay

57.     The Landlord asserts that relief from the automatic stay is warranted to pursue causes of action against the Underwriters because, in relevant part, it has direct causes of action against the Underwriters pursuant to the Puerto Rico Law and the Civil Code of Puerto Rico (the "**Puerto Rico Codes**").   The legal standards governing a lift stay motion are set forth in the Debtors' Third Omnibus Lift Stay Objection, at ¶¶ 27–30.  A review of each of the *Sonnax* factors clearly demonstrates that the Landlord has failed to satisfy its burden to establish cause to lift the automatic stay.

WEIL:\97362278\10\73217.0004

### a.  Factor 1: Partial or Complete Resolution of the Issues

58.    The Landlord asserts that the first *Sonnax* factor weighs in the Landlord's favor because the Puerto Rico courts are the only forum that can completely determine the liability of the parties.  Third Lift Stay Motion, ¶ 59.  Courts in this District have ruled that the first *Sonnax* factor will not be dispositive when complete resolution of a matter would be at a substantial cost, or may take a long time.  *See, e.g.*, *In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *7 (S.D.N.Y. Dec. 18, 2018) (affirming a bankruptcy court decision denying relief from the stay and finding that while modification of the automatic stay may well resolve the matter, it would do so at a substantial cost, and would be subject to a bankruptcy plan of distribution); *In re SunEdison, Inc.*, 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) (denying relief from the stay and finding that "[t]he one factor weighing in favor of granting the *Motion* is that it will completely resolve the issues between the Debtors and Vivint (Factor # 1).  But even then, final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan.").

59.    In light of the Debtors' indemnity obligations under the Settlement Agreement, litigation in Puerto Rico would require the Debtors' continued involvement and would be a substantial drain on limited estate assets.  Accordingly, the first *Sonnax* factor weighs in favor of the Debtors.

### b.  Factor 2: Interference with the Debtors' Chapter 11 Cases

60.    The Landlord asserts that its pursuit of claims against the Underwriters would not interfere with the Debtors' reorganization because no reorganization is contemplated.  Third Lift Stay Motion, ¶ 63.  The Landlord clearly misconstrues the second *Sonnax* factor.

61.    The focus of the second *Sonnax* factor is not whether the Debtors are in reorganization mode or liquidation mode, but rather on the potential harm and the balancing the

20

harm to the movant against the hard to the debtor and its creditors.  *See In re Congregation Birchos Yosef*, 535 B.R. at 633.

62.    The Landlord belittles the indemnification claims that the Debtors would have to bear, by implying that they are uncertain. Third Lift Stay Motion, ¶ 64.  If the automatic stay is lifted and the Landlord is able to pursue litigation against the Underwriters, the Debtors' indemnification obligations would be crystalized, not hypothetical.  Moreover, as emphasized below for the tenth *Sonnax* factor, there is no guarantee that the Landlord's causes of action against the Underwriters will conclude expeditiously.  As such, the indemnification costs stand to be considerable, and would negatively impact the Debtors' other creditors.

63.    Accordingly, given the Underwriters' indemnification claims, and the impact they could have on consummation of the Plan, the second *Sonnax* factor weighs in the Debtors' favor.

### c.  *Factor 4: Has A Specialized Tribunal Been Established*[9]

64.    The Landlord asserts that Puerto Rico courts are the proper forum because the Landlord has direct causes of action against the Underwriters under the Puerto Rico Codes.[10] That is not the test, however, under the fourth *Sonnax* factor.

---

[9] The Landlord did not address the third *Sonnax* factor in the Third Lift Stay Motion, and the Debtors agree that the third *Sonnax* factor is inapplicable.

[10] The Landlord partially relies on its alleged status as a loss payee in support of its direct causes of action under the Puerto Rico Codes.  However, the Landlord's counsel has already admitted to the Court on the record that the Landlord is not a loss payee or a third party beneficiary.  *See In re Sears Holding Corporation*, Case No. 18-23538, Hr'g. Tr. at 77:5-8 (RDD) (Bankr. S.D.N.Y. Mar. 21, 2019) (Court: "[T]he insurance policy itself does not name the landlord as a loss payee or beneficiary, right?"

[Landlord's counsel]: "Correct.").

65.     Courts generally find that a specialized tribunal is one with specialized knowledge of the specialized issues presented by the litigation.  *See, e.g.*, *In re MarketXT Holdings Corp.*, No. 04-12078 (ALG), 2009 Bankr. LEXIS 1897, at *12 (Bankr. S.D.N.Y. July 20, 2009) (finding that the National Association of Securities Dealers is a specialized tribunal with expertise to adjudicate the relevant securities dispute); *In re Drexel Burnham Lambert Group Inc.*, 1990 Bankr. LEXIS 2889, at * 35 (Bankr. S.D.N.Y. 1990) (referring to the New York Stock Exchange's Hearing Panel as a specialized tribunal with respect to disciplinary proceedings for violation of New York Stock Exchange rules).   No such specialized tribunal exists with respect to the claims the Landlord intends to assert against the Underwriters.  Rather, the Puerto Rico courts exercise general jurisdiction and are not the type of "specialized tribunal" envisioned by *Sonnax*.

66.     It is clear that applicability of the law of another jurisdiction does not satisfy the fourth *Sonnax* factor.  Indeed, in *In re WorldCom, Inc.*, No. 05 Civ. 5704, 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug. 4, 2006), the Southern District of New York affirmed the bankruptcy court's holding that a California state court was not a "specialized tribunal" for purposes of application of the fourth *Sonnax* factor. *Worldcom*,  2006 U.S. Dist. LEXIS 55284 at 31-32 (also noting that "[b]ankruptcy courts are often called upon to apply state laws in resolving claims against the estate."); *see also, In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3624, at *15 (Bankr. S.D.N.Y. Aug. 7, 2012) (finding that "[t]his Court can and does interpret and apply state law to resolve claims through the bankruptcy process"); *In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009) ("[t]his Court has significant experience in applying state law …..").  Likewise, the Puerto Rico courts should not be considered a specialized tribunal.

22

67.     Furthermore, even when courts find there is a specialized tribunal, they may afford the other *Sonnax* factors greater weight.  *Cf. Drexel Burnham*, 1990 Bankr. LEXIS 2889, at * 35, n. 34 (denying relief from the automatic stay and finding that if "it were not for the other counter-balancing *Curtis* factors, the presence of a specialized tribunal would have been determinative of this proceeding."[11]).

68.     Given the fact that the Puerto Rico courts are not a specialized tribunal, the fourth *Sonnax* factor weighs in the Debtors' favor.

### d.   Factor 5: Has Insurer Assumed Full Defense Responsibility

69.     The Landlord asserts that the fifth *Sonnax* factor weighs in its favor because the Insurance Policy insures all liability incurred by the Debtors. Third Lift Stay Motion, ¶ 75. The Landlord's assertion is simply wrong and completely ignores the Debtors' indemnification obligations to the Underwriters under the Settlement Agreement.

70.     The Landlord further references the consent to jurisdiction contained in the Insurance Policy.  *See* Third Stay Relief Motion, ¶ 75.  The provision, however, is irrelevant to whether the Underwriters have agreed to assume full defense responsibility.  The sixth *Sonnax* factor, therefore, weighs in the Debtors' favor.

### e.   Factor 6: Action Primarily Involving Third Parties

71.     The Landlord asserts that the sixth *Sonnax* factor weighs in its favor because its causes of action would be pursued against the Underwriters and not the Debtors.  Third Lift Stay Motion, ¶ 76.  As a result of the Debtors' indemnification obligations, however, the commencement of such an action would undoubtedly have an immediate, adverse impact to the

---

[11] "*Curtis*" here refers to the case *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984), which listed the twelve factors adopted by the Second Circuit in *Sonnax*, 907 F.2d at 1286, that became known as the *Sonnax* factors.

23

Debtors' estates and would likely require the Debtors' involvement.  *See* June 20th Hr'g Tr. at 85:2-9 ("the fact that [the Landlord] may have a cause of action doesn't mean [the Landlord is] entitled to relief from the stay because [the Landlord is] defining the word 'independent' totally differently, I believe, than what the statute requires, i.e., yes, there are other parties [the Landlord] can sue.  But if the debtor's going to be sucked into that litigation for relief from stay purposes, [the Landlord] lose[s] under *Sonnax*.").

72.    Accordingly, the sixth *Sonnax* factor weighs in favor of the Debtors.

### f.    *Factors 7 and 10: Prejudice to the Interest of the Debtors' Other Creditors, and Judicial Economy and the Expeditious, Economical Resolution of Litigation*

73.    With respect to the seventh *Sonnax* factor, the Landlord asserts that litigation costs alone cannot serve as a basis for prejudice and that relief from the stay would benefit other creditors because it would avoid the costs of duplicative litigation.  Third Lift Stay Motion, ¶ 82.  With respect to the tenth *Sonnax* factor, the Landlord contends that relief from the stay should be granted to allow the Landlord to pursue Aon and the Underwriters in one forum.  Third Lift Stay Motion, ¶ 86.

74.    But granting the requested relief would prejudice the interests of the Debtors' other creditors in these cases, in which the Debtors would be required to indemnify the Underwriters and incur unnecessary administrative costs—costs that diminish potential distributions to administrative expense creditors in accordance with the Administrative Expense Claims Consent Program, and, perhaps, to general unsecured creditors.

75.    With respect to the tenth *Sonnax* factor, judicial economy, while the Landlord may want to avoid multiple litigations, the Landlord's claims against Aon and the Underwriters are fundamentally different.  Consequently, the extent to which the Landlord will be

24

able to minimize litigation expenses by pursuing claims against both sets of defendants in one action is unclear, at best.

76.    Moreover, the Landlord has not established that allowing the Landlord to pursue its litigation in the Puerto Rico courts at this time would result in an expeditious resolution of this dispute.  Therefore, the seventh and tenth *Sonnax* factors weigh in favor of the Debtors.

### g.   Factors 8 and 9: Inapplicable to the Landlord's Requested Relief

77.    The Landlord and the Debtors agree that the eighth and ninth *Sonnax* factors are inapplicable to the current situation.

### h.   Factor 11:  Lack of Readiness For Trial

78.    The Landlord does not even address the eleventh *Sonnax* factor, *i.e.*, whether the parties are ready for trial in the other proceeding, which is telling given that it weighs in the Debtors' favor.  There is no "other proceeding" because the Landlord has not commenced any actions, despite the Debtors' stipulating to the lift of the stay as to Aon.

79.    Cases in which courts found the eleventh *Sonnax* factor to weigh in favor of lifting the stay typically involved prepetition litigation, which had been significantly underway before it was stayed, and little additional work would be required to proceed to trial if the stay were to be lifted.  *See, e.g.*, *Burger Boys, Inc. v. South St. Seaport Ltd. P'ship*, 183 B.R. 682, 688 (Bankr. S.D.N.Y. 1994) (finding that the eleventh *Sonnax* factor weighed in favor of granting relief from the automatic stay because the debtor "filed its Chapter 11 petition on the eve of trial"); *In re Mildred Deli Grocery, Inc.*, Case No. 18-10077 (MG), 2018 Bankr. LEXIS 546, at *10 (Bankr. S.D.N.Y. Feb. 28, 2018) (finding that the eleventh factor weighed in favor of the movant because "all discovery and the majority of pre-trial motions have been completed"); *In re Consol. Distribs.*, Case No. 13-40350 (NHL), 2013 Bankr. LEXIS 3101, at *36 (Bankr. E.D.N.Y. July 23, 2013) (finding that the eleventh *Sonnax* factor weighed in favor of granting relief from the automatic stay

25

because "[t]he District Court Action has been pending for two years and was trial-ready prior to the Debtor's bankruptcy filing"). Such is not the case here, as litigation has not yet commenced and may potentially take years to get to trial.

80. Accordingly, the Landlord is not "ready for trial" as contemplated by the eleventh *Sonnax* factor, which supports denying the relief from the stay.

### i. Factor 12: Impact of the Stay and the Balance of Harms

81. Contrary to the Landlord's assertions, the twelfth *Sonnax* factor, which weighs the impact of the stay on the parties and the balance of the harms, does not support lifting the automatic stay.

82. The Landlord asserts, in a conclusory fashion, that the relief it requests will not prejudice the interests of other creditors. *See* Third Lift Stay Motion, ¶ 89. But given the Debtors' indemnification obligations, permitting the action to proceed against the Underwriters will be costly to the Debtors' estates.

83. The Landlord notes that it withdrew the Adverary Proceeding and, therefore, the Debtors are no longer incurring costs and draining estate resources in defending themselves. *See* Third Lift Stay Motion, ¶ 64. The Landlord ignores the obvious fact that each time it files yet another of its meritless, redundant pleadings in the Debtors' chapter 11 cases, the Debtors must expend the estates' resources responding to such pleadings—as the Debtors have been forced to do here.

84. The Landlord's careless and blatant disregard of the interests of the Debtors' other creditors, including creditors with administrative expense claims that are senior in priority, only highlight the Landlord's failure to appreciate the actual balance of harms in this matter.

85. Accordingly, the twelfth *Sonnax* factor weighs in favor of the Debtors.

26

**Reservation of Rights**

86.     The Debtors hereby reserve the right to amend, modify, or supplement this

Objection.

**Conclusion**

87.     For the reasons set forth herein, the Debtors respectfully request that the

Third Lift Stay Motion be denied with prejudice.

Dated: February 10, 2020
         New York, New York

                                        /s/ Jacqueline Marcus
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Ray C. Schrock, P.C.
                                        Jacqueline Marcus
                                        Garrett A. Fail
                                        Sunny Singh

                                        *Attorneys for Debtors
                                        and Debtors in Possession*

27

## **Exhibit A**

**Insurance Proceeds Objection**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
:
In re                                                  :     **Chapter 11**
:
**SEARS HOLDINGS CORPORATION**, *et al.*,              :     **Case No. 18-23538 (RDD)**
:
**Debtors.**[1]                                         :     **(Jointly Administered)**
:
------------------------------------------------------x

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## DEBTORS' OBJECTION TO MOTION FOR ENTRY OF
## ORDER COMPELLING DEBTOR TO DISCLOSE STATUS OF
## INSURANCE CLAIM AND DEPOSIT ANY INSURANCE PROCEEDS INTO
## SEPARATE ACCOUNT (SANTA ROSA MALL, PUERTO RICO)

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation ("**SHC**"), Sears, Roebuck de Puerto Rico, Inc. ("**Sears Puerto Rico**" or "**Tenant**"), and certain of their affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection (the "**Objection**") in response to the *Motion for Entry of Order for the Debtor to: (I) Disclose Status of Insurance Claim; (II) Deposit Any Insurance Proceed Into Separate Account to be Used Exclusively to Repair the Insured Demised Premises; and (III) Alternatively, Find the Automatic Stay Inapplicable to the Insurance Proceeds*, dated December 14, 2018 (ECF No. 1240) (the "**Motion**"),[2] filed by Santa Rosa Mall, LLC (the "**Landlord**"). In support of the Objection, the Debtors respectfully represent as follows:

### Preliminary Statement

1. Sears Puerto Rico has been a tenant at the premises located in Bayamon, Puerto Rico since 1965, pursuant to that certain Sears Lease, dated September 22, 1965, a copy of which is attached to the Motion as Exhibit I (the "**Lease**"). Sears Puerto Rico operated Sears Store No. 1915 (the "**Sears Store**") from 1965 until the store closed in September 2017 due to severe damage caused by Hurricane Maria. In connection with the losses and damages inflicted on the Debtors' properties by Hurricane Irma and Hurricane Maria, including the Sears Store, SHC filed a claim (the "**Insurance Claim**") under its real and personal insurance policy (Policy Number

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

WEIL:\96909251\4\73217.0004

PTNAM1701557) (the "**Insurance Policy**") issued for the policy period of June 1, 2017 through June 1, 2018.[3]

2.    The Motion seeks entry of an order compelling the Debtors to (i) disclose the status of the Insurance Claim, (ii) place the insurance proceeds received on account of the Insurance Claim (the "**Insurance Proceeds**") in a separate account pursuant to Section 6.03(b)(3) of the Lease within seven (7) days, and (iii) declare that the Insurance Proceeds are not property of the Debtors' estate and must be exclusively used to rebuild the Sears Store. The Motion should be denied for several reasons.

3.    First, the Landlord served a subpoena on the Debtors on February 2, 2019 requesting information related to the status of the Insurance Claim.  In response to the subpoena, subject to an appropriate agreement on confidentiality, the Debtors intend to produce information in advance of the hearing on the Motion, including the Insurance Policy, that renders the request for the status of the Insurance Claim moot.

4.    Second, contrary to the assertions in the Motion, the Landlord is not named as a "loss payee" under the Insurance Policy.  While the Insurance Policy contemplates that "loss payees" or "additional insureds" might be added, that never occurred. The Insurance Policy is the governing document; a certificate of insurance is merely an indicia of insurance coverage and has no bearing on the insurance policy referred to therein.  Indeed, clearly set forth on the first page of the Aon Certificate of Insurance is a disclaimer that the document cannot extend or alter the coverage afforded by the Insurance Policy.  Given that the Landlord is not and never was a "loss payee" under the Insurance Policy, the Insurance Proceeds are rightfully property of the Debtors' estates and do not need to be deposited in a segregated account.

---

[3] The Debtors will furnish a copy of the Insurance Policy to the Court upon request.

3

5.      Third, the automatic stay imposed under section 362 of the Bankruptcy clearly applies to prohibit any attempt by the Landlord to possess or exercise control over the Insurance Proceeds.  It is well established in this Circuit that proceeds of a debtor's insurance policy are property of the estate where the debtor has the right to receive those proceeds upon payment by the insurer.  As described below, the "loss payable" clause contained in the Insurance Policy clearly provides that any loss will be payable to SHC or as directed by SHC.  There is no reference to payment to a third party.

6.      Finally, on February 7, 2019, the Court approved the Debtors' sale of substantially all of their assets to ESL Investments, Inc. (together with its principals and affiliates, "**ESL**") for approximately $5.2 billion in the form of cash and non-cash consideration.  Under the related asset purchase agreement (the "**Asset Purchase Agreement**"), the Lease is listed as a "Designatable Lease." ESL has not yet determined whether it will request that the Debtors assume and assign the Lease. If ESL designates the Lease, ESL will either cure defaults under the Lease on or prior to assumption or provide adequate assurance that it will promptly cure such defaults. Consequently, it is premature to make a determination as to whether the Insurance Proceeds have to be segregated and exclusively used to reconstruct the store at this time.  Given the relatively short period of time afforded to ESL to exercise its designation rights, and the Debtors' continued payment of rent under the Lease, the Landlord is not prejudiced by a deferred ruling.[4]

7.      The balance of the equities favor the Debtors and, for the reasons set forth herein, the Debtors respectfully request that the Motion be denied.

---

[4] The Debtors requested the Landlord adjourn the Motion in recognition of the current facts and circumstances of these cases. The Landlord refused to do so.

4

## Background

*The Debtors' Chapter 11 Cases*

8.    Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.    On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in these chapter 11 cases.

10.    The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

11.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

*The Lease*

12.    The Lease contains certain provisions that address the rights and obligations of Sears Puerto Rico and the Landlord in the event of loss or damage to the Leased Premises.

5

13.   The provisions of the Lease relevant to insurance coverage are excerpted

below:

Section 6.01:

Tenant shall maintain at Tenant's sole cost and expense, for the benefit of
Landlord and Tenant, insurance with respect to the Demised Premises, of
the following types and in the following amounts:

(a)   Fire and extended coverage insurance (losses due to windstorm, hail,
explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles
smoke), vandalism, malicious mischief, sprinkler leakage and earthquake
insurance and insurance against such other events as shall from time to time
be added to the extended coverage insurance carried by Tenant's Parent
Corporation [Sears Holdings Corporation] in an amount not less than 100%
of the replacement cost (excluding excavation and foundation values) as the
same is determined at five (5) year intervals by an architect or engineer
designated by Tenant and satisfactory to Landlord.

Section 6.02:

Tenant shall have the option of effecting such insurance through an
insurance company of recognized standing satisfactory to the Landlord and
the holder of any mortgage on the fee of the Demised Premises or through
Tenant's Parent Corporation (Sears, Roebuck and Company, a New York
corporation) which would act as a self-insurer.

(a) If Tenant elects to effect such insurance through an insurance company,
such policies shall be secured promptly and certificates thereof shall be
furnished to Landlord. . . . Such policies shall contain loss payable clauses
to Landlord and Tenant as hereinbelow provided in Section 6.03.

Section 6.03:

In the event that during the term of this lease the building or buildings
referred to in Section 3.02 hereof or any additions thereto at any time
erected on the Demised Premises shall be damaged by fire or other insured
casualty, then:
        . . .

(b)   In case such damage shall amount to over $100,000:
        . . .

      (2) If such damage shall be so serious as to render the said building
untenable, or shall amount to a total destruction of the building, then Tenant

6

shall proceed with all reasonable expedition to restore or rebuild, as the case may be, the building so destroyed or rendered untenantable, free from liens of every kind, in substantial accordance with the plans and specifications of the building so destroyed or rendered untenantable . . .

(3) The net sums recover [*sic*] Tenant on account of loss or damage, whether under the policies taken out as aforesaid, or under other insurance policies taken out by Tenant and indemnifying (as distinguished from the loss of use and occupancy or profits), shall be deposited in a special account separate [*sic*] all other funds of Landlord in a bank or trust company of the City of San Juan, Puerto Rico approved by Landlord and Tenant, to be applied on account of the cost of such restoration or rebuilding, as the case may be . . . and Tenant shall pay any and all additional moneys required in such restoration or rebuilding in excess of said net sums recovered, and shall be entitled to receive any surplus, if any, remaining of said deposit after such restoration or rebuilding has been completed as aforesaid . . .

14.    Article 16 of the Lease (Equipment and Fixtures Installed) provides that any equipment and fixtures used by Sears Puerto Rico in connection with its business will remain at all times Sears Puerto Rico's property.

15.    The Debtors have continued to pay monthly rent to the Landlord pursuant to the terms of the Lease, despite closure of the Sears Store in September 2017.

*The Insurance Policies and the Insurance Claim*

16.    The Insurance Policy does not name the Landlord or any of its affiliates, including, without limitation, 3 Pals Caribe, LLC and Commercial Centers Management, LLC, as a "loss payee". Paragraph 39 provides that (emphasis added):

It is agreed that Aon Risk Services, Inc. are authorized to issue Certificate(s) or Evidence(s) of Insurance being the Acord Certificate of Property Insurance 24 (1/95), naming Additional Named Insured(s), Loss Payee(s) or Mortgagee(s), and others for their respective rights and interests, *subject always to the terms, conditions and limits of endorsements in respect of such additional interests.* . . .

The foregoing expressly notes that any certificate of insurance issued by Aon is subject to the limits of endorsements and, as reflected in the Insurance Policy, there is no endorsement that lists the Landlord as a "loss payee".

7

17.     Further, paragraph 53 of the Insurance Policy states, as follows:

**Loss Payable**

Loss, if any, shall be adjusted with and payable to Sears Holdings Corporation or as directed by it.

Insurance Policy, ¶ 53. It is uncontroverted that the Debtors did not direct its insurer to make payment to a third party.

18.     On September 8, 2017 and September 28, 2017, in connection with Hurricane Irma and Hurricane Maria, respectively, SHC submitted claims under the Insurance Policy for at least 32 of its stores located in areas affected by such hurricanes. The Insurance Claim was comprised of amounts attributable to reconstructing the numerous buildings and amounts allocated for furniture, fixtures, and equipment. After extensive negotiations with the Debtors' insurers, the parties reached an agreement whereby the Debtors' insurers agreed to pay SHC a fixed amount, in full and final satisfaction of the Insurance Claim. The Debtors received certain portions of the settlement payment prior to the Commencement Date and, on January 17, 2019, in full and final resolution of the Insurance Claim, the Debtors agreed to settle their claim for a final installment payment.[5]  All payments made or to be made to SHC under the Insurance Policy were or will be made in accordance with Section 53 of the Insurance Policy.

19.     By letter dated October 30, 2017, the Landlord contacted the Debtors' insurance carrier, AIG Insurance Company Puerto Rico ("**AIG Puerto Rico**"), and represented that it was an "Additional Insured" under the Insurance Policies and, thus, it was to be informed as to the filing of any claim under such policies and any proceeds were to be deposited in accordance with Section 6.03 of the Lease. A copy of the correspondence is attached hereto as

---

[5] Certain of the Debtors' insurers have not yet executed the Settlement Agreement and remitted their pro rata shares of the Insurance Proceeds.

8

Exhibit A. Upon information and belief the Landlord did not receive a response from AIG Puerto Rico.

20.    On June 1, 2018 and June 6, 2018, Sears Puerto Rico sent letters to the Landlord detailing its position with respect to the Landlord's claim that the Insurance Proceeds must be placed in a special segregated account solely to be used to rebuild the Sears Store. A copy of the letters are attached hereto as Exhibit B. The June 6, 2018 letter included a tentative construction schedule that reflected an anticipated completion date of the end of 2018 (the "**Construction Schedule**"). The letter also stated that if Sears Puerto Rico did not hear from the Landlord within five days (i.e., by June 11, 2018), Sears Puerto Rico would consider any default alluded to in the letter sent by an affiliate of the Landlord, CCM Puerto Rico, dated June 4, 2018, cured and rescinded. A copy of the Landlord's June 4, 2018 letter is attached hereto as Exhibit C. The Landlord did not issue a response or refute the positions articulated by Sears Puerto Rico until the filing of the Motion six months later.

21.    By letter dated January 23, 2019, the Landlord contacted AIG Europe Limited requesting information regarding the status of the Hurricane Maria Claim. The Landlord represented to the carrier that it is a "loss payee" under the Insurance Policies. A copy of the correspondence is attached hereto as Exhibit D. Upon information and belief, the Landlord did not receive a response to the letter.

### The Motion Should be Denied

22.    As noted above, the Debtors have or will comply with the Landlord's request for the status of the Insurance Claim and, as a result, the Court need not order such relief

9

in connection with the Motion. The remaining relief requested in the Motion should be denied for the reasons set forth more fully below.

### A.    The Landlord Is Not A "Loss Payee"

23.    Regardless of the language of the Lease or any ancillary document, the Insurance Policy is void of any reference of the Landlord as a "loss payee" and only an insurance policy can grant a party such rights. Even if the Debtors were to concede that the Lease requires the Landlord to be named as a "loss payee", and they do not, the failure to comply with the terms of the Lease does not, in turn, provide the Landlord with rights, title and interest to the Insurance Proceeds.

24.    Notwithstanding any inconsistencies that may exist in the Lease or the certificate of insurance issued by Aon Risk Services, Inc. ("**Aon**"), dated October 25, 2017 (the "**2017 Certificate of Insurance**"), the 2017 Certificate of Insurance is not determinative of the extent of coverage under the Insurance Policy. The 2017 Certificate of Insurance is a summary document and it expressly has the following warning on the first page:

> **THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.**

2017 Certificate of Insurance at 1 (emphasis in original). The Debtors are not liable for the errors or omissions of Aon in issuing the 2017 Certificate of Insurance.

25.    Tellingly, the Motion does not allege that the Landlord has asserted any claims against the Debtors' insurers for failure to turn over the Insurance Proceeds to the Landlord, due to its purported capacity as a "loss payee." Both letters sent by the Landlord to the Debtors'

10

insurers seeking information in connection with the Insurance Claim specifically note that the Landlord is not making a demand for payment. If the Landlord truly believed that it had a cognizable right to the Insurance Proceeds as a "loss payee," then surely it would have made a payment demand to, or asserted claims against, the Debtors' insurers.

**B.      The Insurance Proceeds Are Property of the Debtors' Estates**

26.      The filing of a bankruptcy petition creates a bankruptcy estate. Section 541 of the Bankruptcy Code governs what constitutes property of a debtor's estate and it includes a broad range of tangible and intangible assets. 11 U.S.C. § 541(a) (creating the bankruptcy estate with all of the debtor's legal and equitable interest in property as of the date the bankruptcy petition is filed).

27.      It has been consistently recognized in this District that a debtor's liability policies are property of the debtor's estate. *See, e.g., MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988), cert. denied, 488 U.S. 868 (1988) (stating that "an insurance policy and any rights thereunder owned by a debtor upon filing a petition for relief in bankruptcy are property of the bankrupt estate."). In the Motion, the Landlord concedes as much. *See Motion*, ¶ 28.

28.      Further, insurance proceeds that are paid directly to a debtor pursuant to the terms of the insurance contract are generally held to be property of the estate. *See In re Bradt*, 757 F.2d 512 (2d Cir. 1985) (holding that, notwithstanding a security agreement providing a credit union with security interest stemming from a vehicle, including insurance proceeds, pursuant to section 541(a)(6) of the Bankruptcy Code the proceeds from the applicable insurance policy were property of the debtor's estate); *Kirschenbaum v. Federal Ins. Co. (In re EMS Fin. Servs., LLC)*, 2013 Bankr. LEXIS 139, at 18 (Bankr. E.D.N.Y. Jan. 4, 2013) (stating "[w]hen an insurance policy provides coverage only to the debtor, courts will generally rule that the proceeds are property of

11

the estate.") (internal citations omitted); *In re Island Helicopter Corp.*, 63 B.R. 515, 522 (Bankr. E.D.N.Y. 1986) (same).

29.     The Motion is entirely based on the Landlord's erroneous claim that it is a "loss payee" under the Insurance Policy. Indeed, the Landlord only cites to cases where a party is either a named "additional insured" or a "loss payee", in support of its claim.[6] As clearly established by the Insurance Policy, the Landlord is neither in this case. On its face, the Insurance Policy only provides for the payment of proceeds to SHC or a party identified by SHC. Consistent with established precedent, the Debtors request that the Court find that the Insurance Proceeds are property of their estates.

## C.    The Automatic Stay Applies To the Insurance Proceeds

30.     The Motion makes passing reference to the automatic stay imposed under section 362 of the Bankruptcy Code and, in conclusory fashion, states that the automatic stay is inapplicable to the Insurance Proceeds because such amounts are not property of the Debtors' estates. However, as established above, the Insurance Proceeds are property of the Debtors' estates. Accordingly, the protections of the automatic stay apply.

31.     Section 362(a) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition:

> . . . operates as a stay, applicable to all entities, of

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

---

[6] *See*, *In re Amiel Restaurant Partners, LLC*, 510 B.R. 744 (Bankr. D. N.J. 2014) (naming third party under commercial property insurance policy as loss payee); *In re Florian*, 233 B.R. 25 (D. Conn. 1999) (naming plaintiff as an "Additional Insured and Loss Payee").

12

11 U.S.C. § 362(a)(3) and (a)(6). The Landlord is clearly attempting to engage in actions expressly prohibited by the Bankruptcy Code. Despite the applicability of the automatic stay, the Motion fails to request modification of the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code. Moreover, even if the Landlord were to amend the Motion to seek such relief, any request for such relief in this case should be denied.

32.    The Second Circuit established a set of twelve factors in *Sonnax* (the "**Sonnax Factors**") that have become the standard by which courts in the Second Circuit consider whether to modify the automatic stay.[7] *See In re Lehman Bros. Holdings Inc.*, 435 B.R. 122, 138 (S.D.N.Y. 2010) ("*Sonnax* . . . is routinely referenced as the leading relief from stay precedent in this Circuit."), *aff'd sub nom. Suncal Cmtys. I LLC v. Lehman Commercial Paper, Inc.,* 402 F. App'x 634 (2d Cir. 2010).

33.    Although the *Sonnax* Court outlined twelve factors, courts need not consider each factor, but may consider only the factors that are relevant to the particular case. *See In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996) ("A court should . . . use only the factors that are deemed relevant . . . ."). In fact,

---

[7] The *Sonnax* Factors are:
  (1) whether relief would result in a partial or complete resolution of the issues;
  (2) lack of any connection with or interference with the bankruptcy case;
  (3) whether the other proceeding involves the debtor as a fiduciary;
  (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
  (5) whether the debtor's insurer has assumed full responsibility for defending it;
  (6) whether the action primarily involves third parties;
  (7) whether litigation in another forum would prejudice the interests of other creditors;
  (8) whether the judgment claim arising from the other action is subject to equitable subordination;
  (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
  (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
  (11) whether the parties are ready for trial in the other proceeding; and
  (12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

13

the *Sonnax* Court itself considered only four of the twelve factors as relevant in that case. *Sonnax*, 907 F.2d at 1286. Additionally, courts need not assign equal weight to each factor, and have discretion in weighing the factors against one another. *RCM Global*, 200 B.R. at 526 ("A court should apply these factors on a case-by-case basis . . . assigning to each factor whatever weight the court feels is appropriate.").

34.    The Second Circuit has held that the party seeking to lift or modify the automatic stay bears the initial burden to show cause as to why the stay should be modified or lifted and "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285. Once the movant has shown cause, the party opposing the motion must show that it is entitled to the continuing protections of the automatic stay. *See In re Enron*, 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004) (citing *In re M.J. & K. Co.*, 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993)); *see also RCM Global*, 200 B.R. at 526.

35.    Without going through an exhaustive analysis of each *Sonnax* factor, it is evident that the following facts, among others, militate in favor of denying relief from the automatic stay:

- The Lease is among the "Designatable Leases" set forth in the Asset Purchase Agreement in connection with the Court–approved sale. If ESL requests that the Debtors assume and assign the Lease, the Motion may become moot because any defaults under the Lease would have to be cured.

- Any determination as to whether the Landlord has a direct entitlement to the Insurance Proceeds is within the core jurisdiction of this Court. 28 U.S.C. § 157(b)(2)((B)("allowance or disallowance of claims against the estate or *exemptions from property of the* estate")(emphasis supplied).

36.    Given the Landlord's utter failure to satisfy its burden to establish cause for modification of the automatic stay, any request for relief from the stay should be denied.

14

## **CONCLUSION**

For the foregoing reasons, the Motion should be denied.


Dated: February 8, 2019
New York, New York

/s/ Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors
and Debtors in Possession*

15

**<u>Exhibit B</u>**

**First Lift Stay Objection**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
In re                                  :
                                       :        Chapter 11
SEARS HOLDINGS CORPORATION, et al.,    :
                                       :        Case No. 18-23538 (RDD)
                                       :
Debtors.¹                              :        (Jointly Administered)
                                       :
-----------------------------------------------------------x
```

**DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**AND MEMORANDUM IN SUPPORT THEREOF AND/OR TO DECLARE THAT THE**
**INSURANCE PROCEEDS ARE NOT PART OF THE BANKRUPTCY ESTATE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR - Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc. (3626)); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation, SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) ("**Sears Puerto Rico**"), and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection (the "**Objection**") in response to the *Motion for Relief From the Automatic Stay and Memorandum in Support Thereof and/or to Declare that the Insurance Proceeds Are Not Part of the Estate*, dated May 1, 2019 (ECF No. 3475) (the "**Motion**"), filed by Santa Rosa Mall, LLC (the "**Landlord**").[2]  In support of the Objection, the Debtors respectfully represent as follow:

## Background

### The Debtors' Chapter 11 Cases

1.      Beginning on October 15, 2018 and continuing thereafter, each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On October 24, 2018, the United States Trustee for Region 2 appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in these chapter 11 cases.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2

4.      The Debtors and Transform Holdco LLC ("**Transform**") entered into that certain asset purchase agreement, dated as of January 17, 2019 (as amended, the "**APA**") for the sale of substantially all of the Debtors' assets (the "**Sale Transaction**").

5.      On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and* Clear *of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507).  The Sale Transaction closed on February 11, 2019.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker* Pursuant *to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn on October 15, 2018 (ECF No. 3).

*The Santa Rosa Lease and the Motion*

7.      On September 22, 1965, the Landlord and Sears Puerto Rico, Inc. entered into that certain lease agreement (the "**Santa Rosa Lease**") for the premises located in the Santa Rosa Mall in Bayamon, Puerto Rico.

8.      Under the APA, Transform had sixty (60) days after the closing of the Sale Transaction to designate unexpired leases for assumption and assignment (the "**Designation Period**").  The Designation Period was extended to May 3, 2019, provided that the extension would not apply to certain leases that were the subject of pending motions filed by the lease counterparties, including the Santa Rosa Lease.  At the request of Transform and the Landlord, the Debtors agreed to an extension of the Designation Period for the Santa Rosa Lease to April 30, 2019 (the "**Extended Designation Deadline**").

3

9.      On April 29, 2019, one day prior to the Extended Designation Deadline, the
Landlord filed the *Santa Rosa Mall's Emergency Motion to Compel Compliance with the Court's
February 8, 2019 Sale Order* (ECF No. 3417) (the "**Emergency Motion**") and the *Santa Rosa
Mall, LLC's Motion for an Order Shortening Notice with Respect to Emergency Motion to Compel
Compliance with the Court's February 8, 2019 Sale Order* (ECF No. 3418) (the "**Motion to
Shorten Notice**").

10.     On April 30, 2019, the Debtors received formal notice from Transform that
it would not be designating the Santa Rosa Lease for assumption and assignment, and the Debtors
subsequently filed a notice of rejection of, among others, the Santa Rosa Lease (ECF No. 3449).

11.     On May 1, 2019, the Landlord withdrew the Emergency Motion and the
Motion to Shorten Notice (ECF No. 3468).  On the very same day, the Landlord filed the Motion.

12.     The Debtors informed the Landlord that the Motion was not filed in time to
be heard at the next omnibus hearing, which was scheduled for May 21, 2019; the Landlord
subsequently filed the *Emergency Motion for an Order Shortening Notice With Respect to Motion
for Relief From the Automatic Stay and Memorandum in Support Thereof and/or to Declare that
the Insurance Proceeds are Not Part of the Bankruptcy Estate* (ECF No. 3676) (the "**Emergency
Motion to Shorten Notice**").  Moreover, the Debtors advised the Landlord that the Motion was
inconsistent with the Court's admonition at the hearing held on March 21, 2019, that the Landlord
should seek the relief it sought by adversary proceeding rather than by motion.  *See In re Sears
Holding Corporation*, Case No. 18-23538, Hr'g. Tr. at 81:20-24 (RDD) (Bankr. S.D.N.Y. Mar.
21, 2019) ("But I think if you're actually seeking to impose an equitable lien or reform an
agreement, you need to move by adversary proceeding because you're looking for a declaratory
judgment.").

4

13.    Given the duplicative filings by the Landlord and the untimeliness of the
Motion, the Debtors requested a telephonic chambers conference with this Court (the "**Chambers
Conference**"), which was held on May 8, 2019 with the participation of the Landlord.  During the
Chambers Conference, this Court denied the Emergency Motion to Shorten Notice and reiterated
that the Landlord should proceed by adversary proceeding.

14.    On June 7, 2019, the Landlord filed a complaint seeking to commence an
adversary proceeding against Sears Puerto Rico (ECF No. 4153) (such complaint, the "**Adversary
Complaint**" and the proceeding, the "**Adversary Proceeding**").

### The Motion Should Be Denied

15.    As an initial matter, the Motion should be denied because the issues raised
in the Motion are also raised in the Adversary Complaint and will be properly addressed in the
Adversary Proceeding.  Indeed, the substance of the Motion is nearly identical to the Adversary
Complaint.

16.    During the Chambers Conference, the Court encouraged the parties to
discuss whether an agreement could be reached to lift the automatic stay for the limited purpose
of allowing the Landlord to prosecute claims against certain of the Debtors' insurers—AIG Europe
Limited and Aon Risk Services Central, Inc. (the "**Insurers**")—the alternative relief requested in
the Motion.  *See* Mot. ¶ 51-65.  Upon review of the settlement agreement entered into by the
Debtors and the Insurers (the "**Settlement Agreement**"), the Debtors determined that the
Settlement Agreement has an indemnity provision, pursuant to which the Debtors are obligated to
indemnify the Insurers for any claims brought against the Insurers that relate to the claims settled
pursuant to the Settlement Agreement.  The Debtors have already received notification from AIG
Europe Limited that it will look to the Debtors to honor its obligations under the Settlement
Agreement, specifically the indemnity provision, should the Landlord file suit against AIG Europe

5

Limited.  Consequently, the Debtors informed the Landlord that they could not agree to lift the automatic stay to allow the Landlord to prosecute claims against the Insurers because any such proceeding could require the Debtors to bear the Insurers' litigation expenses.

17.    In light of the above and the pending Adversary Proceeding, the Debtors requested that the Landlord withdraw or adjourn the Motion pending resolution of the Adversary Proceeding.  Alternatively, the Debtors requested an extension of the response deadline for the Motion to Friday, June 14, 2019, at 5 p.m.  The Landlord refused, stating that it will pursue the alternative arguments with respect to the Insurers at the hearing on June 20, 2019, despite the Debtors having informed the Landlord of the indemnity provision.  A copy of the Landlord's email response is attached hereto as **Exhibit A**.

18.    Due to the Landlord's refusal, the Debtors have been forced to waste the limited resources of the Debtors' estates and this Court and file this response, despite the fact that the Landlord has already commenced the Adversary Proceeding to address the issues raised in the Motion.  In an effort to limit the time and expense wasted in drafting this response, the Debtors' hereby incorporate by reference the *Objection to Motion for Entry of Order Compelling Debtor to Disclose Status of Insurance Claim and Deposit Any Insurance Proceeds into Separate Account (Santa Rosa Mall, Puerto Rico)* (ECF No. 2512), a copy of which is annexed hereto as **Exhibit B**, as well as the *Sonnax* arguments set forth in the *Third Omnibus Objection of Debtors to Motions for Relief From Stay* (ECF No. 3877) and the *Objection of Debtors to Motion of BRE 312 Owner LLC for Relief From Automatic Stay* (ECF No. 3917), copies of which are annexed hereto as **Exhibits C** and **D**, respectively, to the extent applicable.

19.    The Motion should be denied because the primary relief requested in the Motion is moot in light of the pending Adversary Proceeding and granting the alternative relief

requested with respect to the Insurers would harm the Debtors and the estates to the detriment of

all creditors in light of the indemnity provision in the Settlement Agreement.

### Reservation of Rights

20.     The Debtors hereby reserve the right to amend, modify, or supplement this

Objection.

### Conclusion

21.     For the foregoing reasons, the Motion should be denied.

Dated:  June 13, 2019
         New York, New York

                                     /s/ Jacqueline Marcus
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:  (212) 310-8007
                                    Ray C. Schrock, P.C.
                                    Jacqueline Marcus
                                    Garrett A. Fail
                                    Sunny Singh

                                    *Attorneys for Debtors
                                    and Debtors in Possession*

7

**<u>Exhibit C</u>**

**Third Omnibus Lift Stay Objection**

Hearing Date and Time: May 21, 2019 at 10:00 a.m. (Eastern)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh

*Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------x
                                          :
In re                                     :
                                          :         Chapter 11
SEARS HOLDINGS CORPORATION, et al.,       :
                                          :         Case No. 18-23538 (RDD)
                                          :
             Debtors.¹                    :         (Jointly Administered)
                                          :
--------------------------------------------------------------x
```

### THIRD OMNIBUS OBJECTION OF DEBTORS TO
### <u>MOTIONS FOR RELIEF FROM STAY</u>

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, LLC (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Sears Holdings Corporation ("**Sears Holdings**"), Sears, Roebuck & Co. ("**Roebuck**"), and certain of their affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection to the motions seeking relief from the automatic stay filed by Jenny and Ronald Yednak (ECF No. 1569) (the "**Yednak Motion**"), William Juiris (ECF No. 2745) (the "**Juiris Motion**"), Rosa Melgar (ECF No. 2960) (the "**Melgar Motion**"), Liberty Insurance Corp (ECF No. 3294) (the "**Liberty Motion**" and, collectively, the "**Stay Relief Motions**," and all of the proponents thereof, collectively, the "**Movants**"), and respectfully represent as follows:

## Preliminary Statement

1.      A movant seeking relief from the automatic stay must show cause warranting such relief.  11 U.S.C. § 362(d)(1).  If the movant fails to satisfy this burden, then "the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."  *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990).  Here, Movants have failed to satisfy their burden to establish cause to lift the automatic stay.

2.      Movants seek to proceed with their respective prepetition actions (collectively, the "**Actions**").  The Stay Relief Motions are premised, at least in part, on the purported availability of third-party insurance or other coverage for liability for Movants' claims and related defense costs.  As the Debtors have explained to Movants, however, no such coverage is available with respect to the Actions.  If the automatic stay is lifted, the Debtors will be forced to incur all administrative and defense costs associated with these claims and lawsuits.  Movants are only a few of the Debtors' many thousands of prepetition general unsecured creditors.  It would be premature, inefficient, and prejudicial to all of the Debtors' administrative, priority, and other

2

general unsecured creditors to expend estate resources on any of Movants' claims at this time.  The

Stay Relief Motions should be denied.[2]

### Background

3.       Beginning on October 15, 2018 and continuing thereafter, each of the

Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United

States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their

business and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

4.       On October 24, 2018, the United States Trustee for Region 2 appointed an

official committee of unsecured creditors.  No trustee or examiner has been appointed in these

chapter 11 cases.

5.       The Debtors' chapter 11 cases are being jointly administered for procedural

purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6.       On February 8, 2019, the Bankruptcy Court entered the *Order (I) Approving

the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of

the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances,

(III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in

Connection Therewith and (IV) Granting Related Relief* (ECF No. 2507), pursuant to which the

---

[2]  Several other parties filed motions for relief from the automatic stay after the Court entered the Stay Procedures
Order (defined below), which provides a process requiring the submission of an Inquiry (defined below) to the Debtors
in advance of filing a motion seeking relief.  The following movants (the "**Inquiry Movants**") filed a motion and
proposed a hearing date prior to submitting an Inquiry:  Steven R. Wolf, et al. (ECF No. 2961), Martha West (ECF
No. 2992), Matt L. Bauer (ECF No. 3177), and Jose Acosta (ECF No. 3124 amended by ECF No. 3189).  The Inquiry
Movants were informed that the Debtors consider the Inquiry Movants' motions to be automatically adjourned until
the appropriate review periods under the Stay Procedures Order have expired.  The Debtors reserve all rights to object
to their motions as well as other motions that have been filed to date.

Debtors sold substantially all of their assets to Transform Holdco LLC (the "**Sale Transaction**"). The Sale Transaction closed on February 11, 2019.

7.      On March 1, 2019, the Court entered the *Order Approving Procedures for Modification of the Automatic Stay Under Certain Circumstances* (ECF No. 2720) (the "**Stay Procedures Order**").  The Stay Procedures Order approved procedures for the Debtors to review requests to lift the automatic stay to proceed with prepetition actions with recovery limited to available insurance proceeds (the "**Stay Procedures**").  Stay Procedures Order ¶ 2(a).  The Stay Procedures provide that a party seeking to lift the automatic stay submit a form inquiry that was annexed as Exhibit 1 to the Stay Order (an "**Inquiry**").  *Id.* ¶ 2(a).  The Debtors are afforded 45 calendar days to review and respond to an Inquiry and parties may file a motion for relief from the automatic stay if the Debtors do not respond to an Inquiry after the expiration of the 45-day period. *Id.* ¶ 2(e).

8.      On April 17, 2019, the Debtors filed the *Joint Chapter 11 Plan of Sears Holdings Corporation and its Affiliated Debtors* (ECF No. 3275) (the "**Plan**"), and the *Disclosure Statement for Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 3276).

9.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York*, sworn to on October 15, 2018 (ECF No. 3).

## Jurisdiction

10.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

WEIL:\97026284\5\73217.0004

(Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Actions Subject to Stay**

A.    **The Yednak Action**

11.    Movants Jenny and Ronald Yednak are plaintiffs in a pre-petition action against Debtor Roebuck filed July 9, 2018 in the Circuit Court of Cook County, Illinois (the "**Cook County Court**"), captioned as *Jenny Yednak et al. v. Sears Roebuck & Co. et al.*, Case No. 2018-L-007065 (the "**Yednak Action**"), seeking damages for injuries that allegedly occurred as a result of a wet floor on the premises of a Sears store.  *See* Yednak Mot. at *2.

12.    Jenny and Ronald Yendak filed the Yednak Motion on January 22, 2019, seeking relief from the automatic stay to continue the Yednak action, arguing that insurance coverage is likely available to satisfy all or a portion of a judgment entered against Roebuck in the Yednak Action, and that the *Sonnax* factors (as described herein) weigh in favor of lifting the automatic stay.  *See* Yednak Mot. at *2, 5–8.

B.    **The Juiris Action**

13.    Movant William Juiris commenced an action against Sears Holdings in the Cook County Court, captioned as *William Juiris v. Heidi Juiris and Sears Holdings Corp.*, No. 13 D 10549 (the "**Juiris Action**") alleging that Sears Holdings failed to withhold spousal maintenance payments in connection with a divorce proceeding, where Mr. Juiris held claims for maintenance and child support against his former spouse.  On March 21, 2018 the Cook County Court entered a judgment in favor of Mr. Juiris.  Sears Holdings appealed the judgment to the Appellate Court of Illinois, First District.  In connection therewith, Sears Holdings posted a supersedeas bond (the "**Bond**") as security for the collection of the judgment.

5

14.    Mr. Juiris filed the Juiris Motion on March 5, 2019, seeking to modify the automatic stay as to the Debtors' interest in the Bond.  Juiris Mot. ¶ 4.  Mr. Juiris argues, among other things, that the Bond is not property of Sears Holdings, and that as a result, lifting the stay will not prejudice interests of the Debtors' creditors. Juiris Mot. ¶ 7.

15.    In addition, Mr. Juiris filed a proof of claim against Sears Holdings in connection with the Juiris Action, in the amount of $92,900, on March 25, 2019 (Proof of Claim No. 12025).

## C.    The Melgar Action

16.    On April 3, 2015 Movant Rosa Melgar filed a complaint in the Superior Court of New Jersey Law Division Union County under Docket Number UNN-L-1270-17 (the "**Melgar Action**"), against Sears Holdings, as well as other non-debtor defendants, seeking damages for alleged negligence in connection with injuries allegedly sustained on April 2, 2015. *See* Melgar Mot. ¶ 3; *id.* Ex. A ¶¶ 1–3.

17.    On March 26, 2019, Ms. Melgar filed the Melgar Motion, seeking relief from the automatic stay in order to proceed with the Melgar Action and to seek "proceeds from Defendant . . . insurance policies that cover liability." Melgar Mot. ¶ 8.

18.    In addition to the Melgar Motion, Ms. Melgar filed a proof of claim in these cases against Sears Holdings in connection with the Melgar Action in the amount of $120,000 (Proof of Claim No. 6110).

## D.    The Liberty Action

19.    Movant Liberty Insurance Corporation ("**Liberty**") commenced an action against Roebuck on May 30, 2018, currently pending in the United States District Court for the Eastern District of Tennessee, Knoxville Division (the "**Tennessee Court**"), with the case caption

6

*Liberty Insurance Corporation v. Sears, Roebuck & Co.*, Case No. 3:18-cv-00212 (the "**Liberty Action**").  Liberty is acting as subrogee under a certain insurance policy for Parrish Simpson, an individual on whose premises a fire allegedly started by a defective or a defectively-installed microwave, distributed or sold by Roebuck.  Liberty is seeking to recover payments made to Mr. Simpson for damages resulting from this fire.  Liberty Mot. at *6.

20.     Liberty filed the Liberty Motion on April 19, 2019, seeking relief from the automatic stay to obtain a judgment against Roebuck and to enforce such judgment from the proceeds of the Debtors' available insurance, or any third party defendants, currently unknown.  Liberty Mot. at *5.  In addition to the Liberty Motion, Liberty filed a proof of claim in these cases against Roebuck in connection with the Liberty Action in the amount of $75,000 (Proof of Claim No. 15641).

### The Debtors' Insurance Coverage

21.     The Debtors maintained various insurance policies in their history over the prepetition period.  Among them were both general liability and umbrella policies that potentially could have applied in the Movants' Actions.  The Debtors' general liability policy had a $5 million aggregate limit for each annual period beginning on August 1 and ending on August 1 the following year.  Paid losses to date have exceeded the $5 million limit on each of those policies for the following periods, which are applicable to one or more of the Actions: (a) Aug. 1, 2007 – Aug. 1, 2008; (b) Aug. 1, 2010 – Aug. 1, 2011; (c) Aug. 1, 2011 – Aug. 1, 2012; (d) Aug. 1, 2012 – Aug. 1, 2013; (e) Aug. 1, 2013 – Aug. 1, 2014; (f) Aug. 1, 2014 – Aug. 1, 2015; (g) Aug. 1, 2015 – Aug. 1, 2016; and (h) Aug. 1, 2016 – Aug. 1, 2017.  Therefore, no coverage exists with respect to the general liability policy for these years.  In these instances, the insurer has no duty to defend the Debtors or pay for the Debtors' losses.  Accordingly, where a Movant's Action falls within the applicable period where coverage is exhausted or where the Debtors would have to cover the

7

liability through a deductible, the Debtors—the Debtors, and not a third party—would be paying the costs of the Movant's Action. Copies of the notices of exhaustion evidencing the foregoing are attached hereto as **Exhibit A** (2007–2008), **Exhibit B** (2010–2011), **Exhibit C** (2011–2012), **Exhibit D** (2012–2013), **Exhibit E** (2013–2014), **Exhibit F** (2014–2015), **Exhibit G** (2015–2016), and **Exhibit H** (2016–2017).

22. The following table summarizes the Actions that assert that insurance coverage is available:

| Cause of Action | Date of Incident | Asserted Claims | Applicable Dates of Insurance Policy | Applicable Lack of Coverage |
| --- | --- | --- | --- | --- |
| Yednak Action | July 10, 2016 | $5,500,000 | 8/1/2015–8/1/2016 | Exhibit G |
| Juiris Action | Nov. 27, 2013 – Oct. 3, 2014 | $92,900 | 8/1/2013–8/1/2015 | Exhibits E, F |
| Melgar Action | Apr. 2, 2015 | $120,000 | 8/1/2014–8/1/2015 | Exhibit F |
| Liberty Action | Mar. 18, 2016 | $75,000 | 8/1/2015–8/1/2016 | Exhibit G |

23. In addition to their general liability policies, the Debtors have umbrella coverage, which attaches after $5 million is incurred by the Debtors on a given claim. The umbrella coverage attachment applies whether or not the underlying policy has been exhausted. Here, the Debtors have not incurred $5 million in defense costs on any of the Movants' Actions, and consequently, umbrella coverage is unavailable to pay any judgments or defense costs at this time.

24. Accordingly, the Debtors are without coverage to defend or satisfy claims arising out of the applicable Actions.

### Third Party Coverage

25. Ms. Melgar has asserted in the Melgar Motion that although the "Debtor, Sears was 'self insured' for purposes of personal injury claims its contractors, 'ICON Health and Fitness, Inc.,' and 'Out of the Box,' and its policies cover the Debtor as an additional insured."

8

Melgar Mot. ¶ 10.  No third party has been covering the Debtors' defense costs in the Melgar

Action.  To date, third parties have denied coverage of the Melgar Action.

26.    Accordingly, at this time, the Debtors have no third-party coverage to

defend or satisfy claims arising out of the Melgar Action.

<u>Argument</u>

A.    <u>Governing Legal Standards</u>

27.    The automatic stay is "one of the fundamental debtor protections provided

by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S.

494, 503 (1986).  The stay is "designed to give the debtor time to organize its affairs—which

includes protection from having to defend claims brought against the estate . . . ." *Teachers Ins.*

*& Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986).  One of the primary forms of

protection that the stay provides is preventing a debtor from being forced to litigate multiple claims

in multiple forums.  *See In re Larkham*, 31 B.R. 273, 276 (Bankr. D. Vt. 1983).

28.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that

upon a request of a party in interest and after notice and a hearing, the Court shall grant relief from

the automatic stay "for cause."  11 U.S.C. § 362(d)(1).  "Cause" is not defined, and the decision

whether to modify the stay is left to the discretion of the bankruptcy court.  *In re Marketxt Holdings*

*Corp.*, 428 B.R. 579, 584 (S.D.N.Y. 2010).  In the Second Circuit, courts weigh twelve factors,

known as the "*Sonnax* factors," in determining whether the automatic stay should be lifted.  *See*

*Sonnax Indus., Inc. v. Tri-Component prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280,

1286 (2d Cir. 1990).[3]  Not all of the factors will be relevant in a given case, and the Court may

---

[3] As noted by several of the Movants, the *Sonnax* factors are:

    (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection
    with or interference with bankruptcy case; (3) whether the other proceeding involves the debtor as

disregard irrelevant factors. *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). Additionally, courts need not assign equal weight to each factor, and have discretion is weighing the factors against one another. *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996).

29.     Movants bear the initial burden to show cause for lifting the automatic stay. *Sonnax*, 907 F.2d at 1285. "The burden on the movant seeking relief from the automatic stay to prosecute an unsecured claim is heavy," as "[t]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *3 (Bankr. S.D.N.Y. Feb. 28, 2018) (quoting *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)).

30.     However, "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285; *In re Chittur & Assocs., P.C.,* No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *5–6 (S.D.N.Y. Dec. 18, 2018).

31.     Here, none of the Movants have satisfied the burden of establishing "cause" under section 362(d)(1), and as a result, the Stay Relief Motions should be denied.

---

fiduciary; (4) whether a specialized tribunal with necessary expertise has been established to hear cause of action; (5) whether the debtor's insurer has assumed full defense responsibility; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*

B.    **The Debtors' Insurance Coverage Applicable to the Actions is Exhausted or Unavailable**

32.     Stay Relief Motions expressly cite to the availability of insurance coverage against liability for a Movant's claims or other assumption of litigation and judgment costs (*i.e.*, the fifth *Sonnax* factor). *See* Melgar Mot. ¶ 8; Yednak Mot. ¶ 6; Liberty Mot. at *6. Movants seek relief from the automatic stay in order to proceed to recover from insurance coverage for which Debtors are beneficiary or are otherwise indemnified. Furthermore, certain of the Movants assert that Debtors will not suffer any harm if the stay is lifted because they seek only the Debtors' available insurance coverage. *See, e.g.*, Melgar Mot. ¶ 13.

33.     As discussed above, the Debtors have determined that applicable insurance is exhausted or otherwise unavailable to cover damages or costs associated with the Actions. As a result, there is little support for Movants' application of the *Sonnax* factors, including—most obviously—the fifth factor, which considers whether the Debtors' insurer has assumed full defense responsibility. If the automatic stay were to be lifted with respect to the Movants' Actions for which no insurance is available, the Debtors would be forced to directly incur the costs of all legal fees and expenses to defend their interests or otherwise default and risk unjustified, larger damages claims. As additional administrative expense claims, those defense costs are "unquestionably a factor to be given serious consideration" in the cause inquiry. *In re Terry*, 12 B.R. 578, 582 (Bankr. E.D. Wis. 1981).

34.     The Debtors can identify no third parties that will absorb the full costs of litigation or of a potential judgment in a Movant's favor. Therefore, the fifth—and most relevant— *Sonnax* factor weighs against granting the Stay Relief Motions.

11

### C.    Additional *Sonnax* Factors Weigh Against Lifting the Automatic Stay

35.    Movants argue that the first *Sonnax* factor—whether relief would result in a partial or complete resolution of the issues—weighs in favor of lifting the stay because proceeding with the Movants' Actions would allow them to establish liability and damages. *E.g.*, Liberty Mot. at *9. But lifting the stay merely for this purpose is not necessarily a guarantee of finality or resolution. *See, e.g.*, *E. Refractories Co. v. Forty Eight Insulations*, 157 F.3d 169, 171 (2d Cir. 1998) (creditor filing multiple lawsuits against debtors spent the "better part of three years in a fruitless effort" to obtain agreement or judgment for coverage from asserted third party). Lingering issues would necessitate Debtor involvement and be a further drain on estate assets.

36.    Furthermore, courts in this District have ruled that satisfaction of the first *Sonnax* factor is insufficient when complete resolution of a matter would be at a substantial cost, or may take a long time. *See In re Chittur & Assocs., P.C.*, No. 18-cv-4577 (AKH), 2018 U.S. Dist. LEXIS 213968, at *7 (S.D.N.Y. Dec. 18, 2018) (affirming a bankruptcy court decision denying relief from the stay, and finding that while modification of the automatic stay may well resolve the matter, it would do so at a substantial cost, and would be subject to a bankruptcy plan of distribution); *In re SunEdison, Inc.*, 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) (denying relief from the stay, and finding that "[t]he one factor weighing in favor of granting the *Motion* is that it will completely resolve the issues between the Debtors and Vivint (Factor # 1). But even then, final resolution following the exhaustion of the appellate process may be years away, and occur long after the Debtors have confirmed a plan.").

37.    The second *Sonnax* factor—whether there is a lack of connection or interference with the bankruptcy estate—does not weigh in favor of lifting the stay. Where there is a lack of insurance, or even a dispute over the availability of insurance, the Debtors would inevitably be involved in such discussions, defense of actions, or, at the very least, monitoring of

12

the cases, interfering with the administration of their estates. The automatic stay is meant to shield debtors from creditor harassment and from a multitude of litigation in a variety of forums at a time when the Debtors' personnel should be focused on the chapter 11 cases.

38.    Furthermore, permitting the Actions to proceed would be at significant cost to the Debtors' estates, and would serve to deplete the amounts available to all creditors.  At this stage of the Debtors' chapter 11 cases, the Debtors cannot make a reasonable business judgment regarding the expenses that should be incurred in defending the Actions, because they are not in a position to estimate the recovery available to holders of general unsecured claims.  In contrast, if the stay remains in place, the proofs of claim filed by Movants would be dealt with as part of the normal claims reconciliation process, and the Debtors, after consultation with the Creditors' Committee, would be in a better position to make a reasoned decision regarding the allocation of resources to dispute such claims.  *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 68 (Bankr. S.D.N.Y. 2017) (finding that "[f]orcing the Debtors to bear the costs and disruptions involved in liquidating these unsecured claims before knowing what distribution will be made to unsecured creditors unnecessarily interferes with the bankruptcy cases and prejudices the unsecured creditors.").

39.    The fourth *Sonnax* factor, whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, does not support lifting the stay.  The Actions here do not present specialized issues that require a specialized tribunal.  The state courts are not required to be uniquely equipped in order to deal with the straightforward factual issues in the underlying disputes.  Moreover, for those Movants' Actions are that are in their early stages, the state courts have had little opportunity to analyze and understand the facts and legal issues of

13

the cases to the extent that would make them "specialized".  Accordingly, the fourth *Sonnax* factor

does not support granting relief in these circumstances.

40.      The seventh *Sonnax* factor, which considers whether litigation in another

forum would prejudice the interests of other creditors, similarly weighs against granting the Stay

Relief Motions.  Lifting the stay where there is no insurance coverage would result in the Debtors

incurring unnecessary administrative costs to litigate the Movants' Actions before recoveries to

general unsecured creditors become available to them.  Should the Lift Stay Motions be granted,

given the scale of the Debtors' prepetition business, further filings of motions to lift the automatic

stay are likely to occur.  Simply negotiating and responding to such motions by itself creates

administrative costs that consume estate assets that would otherwise be available for unsecured

creditors.  This result would be particularly impactful at this time when the Debtors are nearing

the final stages of their chapter 11 plan proposal process, and where administrative costs will have

a meaningful impact on creditor recoveries.  Absent "extraordinary circumstances" the Movants

should be treated in the same manner and on the same timeline as other unsecured creditors.  *See*

*Leibowitz*, 147 B.R. at 345.

41.      In the Juiris Motion, Mr. Juiris argues, among other things, that the seventh

*Sonnax* factor weighs in favor of lifting the stay, because, according to Mr. Juiris, the Bond is not

property of the Debtors since a judgment was entered against the Debtors in the lower court.  Juiris

Mot. 7(c).  Mr. Juiris fails to mention that should Sears succeed in the appeal, it will be entitled to

a return of the Bond, and, therefore, Sears does have an interest in the Bond.  Furthermore, until

such time as a judgment is entered on appeal, Sears remains responsible for any defense costs,

including briefing, any discovery, and oral argument.  Mr. Juiris cites to *In re Keene Corp.*, 171

B.R. 180, 182 (Bankr. S.D.N.Y. 1994), arguing that this decision is in its favor.  However, in

14

*Keene*, the facts were different from those in this case, as in *Keene*, "[t]he parties completed the briefing of the appeals in January 1993, and at that point, awaited scheduling for oral argument." *Id.* at 182. Here, briefing has not been completed, and the parties are not close to a judgment being entered on appeal.

42.    The tenth *Sonnax* factor, whether relief would serve the interests of judicial economy and expeditious and economical resolution of litigation, also does not weigh in favor of lifting the automatic stay. The Debtors are party to numerous prepetition actions. If the Court were to lift the stay with respect to the Movants' Actions, the Debtors and the Court would continue to be inundated with similar requests for stay relief. Indeed, dozens of motions lifting the automatic stay have already been filed in these chapter 11 cases and, in addition, the Debtors are assessing multiple Inquiries being submitted to the Debtors under the Stay Procedures.

43.    The eleventh *Sonnax* factor, whether the parties are ready for trial in the other proceedings, also weighs against lifting the automatic stay in certain circumstances. In the Melgar Action, although depositions have been taken, arbitration proceedings are in progress. Accordingly, this Movant's Action is not 'ready for trial' as contemplated by the eleventh *Sonnax* factor.

44.    The twelfth *Sonnax* factor, which weighs the impact of the stay on the parties and the balance of the harms, does not support lifting the automatic stay. The Debtors have filed the Plan, and expect to have a confirmation hearing on that Plan in July of this year. The Debtors expect that the liquidating trust to be established under the Plan will be handling the claims reconciliation process. The Movants have not demonstrated how they would be prejudiced by waiting for liquidation of their claims in the chapter 11 cases or that they would be more prejudiced than any other potential creditor by waiting for the normal claims reconciliation process. *See, e.g.*,

15

*In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y.), *aff'd*, 411 B.R. 142 (S.D.N.Y. 2009) ("Whether awarded such claims sooner rather than later, they are no more prejudiced than any other potential creditor by what the Debtors anticipate will only be a short-term delay until a plan of reorganization is confirmed."); *SunEdison*, 557 B.R. at 309 ("[P]ostponing the liquidation of [movant's] claims will not adversely affect [movant]. The claim will be paid, if at all, under a confirmed plan. Furthermore, although the claim is large, the plan will pay it in 'bankruptcy dollars,' and the terms of a plan will indicate the true worth of the claim to the parties who must spend real dollars to litigate it.").

45.    Movants might argue that the claims are small compared to the Debtors' overall obligations. *See, e.g.*, Melgar Mot. ¶ 12. As explained above, however, the Debtors are party to numerous lawsuits. Indeed, this response addresses only a handful of the stay relief motions filed against the Debtors in these cases, demonstrating only a small portion of the volume of actions pending. Taken together, such lawsuits constitute a meaningful unsecured creditor constituency that the Debtors have an obligation to maximize value for as a whole. Although creditor recoveries are yet to be determined, the administrative costs expended on defending prepetition actions have a disproportionate negative impact on any constituency receiving less than full recovery. At this time, lifting the automatic stay would not expedite any potential recovery on account of these unsecured claims nor would it help to identify recovery amounts.

## Conclusion

46.    For the foregoing reasons, Movants have failed to satisfy their burden to establish cause to lift the automatic stay. Accordingly, the Stay Relief Motions should be denied.

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request

that the Court deny the Stay Relief Motions.

Dated: May 14, 2019
      New York, New York

                  /s/ Garrett A. Fail
                  WEIL, GOTSHAL & MANGES LLP
                  767 Fifth Avenue
                  New York, New York  10153
                  Telephone:  (212) 310-8000
                  Facsimile:  (212) 310-8007
                  Ray C. Schrock, P.C.
                  Jacqueline Marcus
                  Garrett A. Fail
                  Sunny Singh

                  *Attorneys for Debtors*
                  *and Debtors in Possession*

**<u>Exhibit D</u>**

**Case Law Chart**

| *9019 SETTLEMENT STANDARD* | | |
|---|---|---|
| **CITED CASE** | **FACTUAL BACKGROUND** | **DISTINGUISHABLE?**[1] |
| *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 538-39 (E.D.N.Y. 2017) | **Cited for:** Pre-plan settlement must be approved by the bankruptcy court under Bankruptcy Rule 9019.<br><br>**Holding:** The district court upheld bankruptcy court decision that granted purchaser's motion for approval under Bankruptcy Rule 9019 of a global settlement of state law foreclosure actions regarding debtors' single real estate asset, despite debtor's rescission of support for the executed settlement agreement. | Facts of case distinguishable; the *Liberty Towers* settlement was outside the ordinary course because it resolved status of property in debtors single asset real estate case. |
| *In re Iridium Operating LLC*, 478 F.3d 452, 455 (2nd Cir. 2007) | **Cited for:** Pre-plan settlement must be approved by the bankruptcy court under Bankruptcy Rule 9019.<br><br>**Holding:** The Second Circuit reversed approval of settlement that potentially circumvented the absolute priority rule with instructions to remand to the bankruptcy court. | Facts of case distinguishable; the *Iridium* Court did not discuss requirements for court approval of any settlements nor mention ordinary course of business settlements. The Landlord cites *Iridium* for a proposition that is mentioned only in passing in the introductory paragraph of the opinion. |
| *In re Lexington Jewelers Exch. Inc.*, 2013 WL 2338243, at *5, n. 12 (Bankr. D. Mass. 2013) | **Cited for:** Bankruptcy Rule 9019's purpose is to bind the estate to the terms of any bargain struck.<br><br>**Holding:** The bankruptcy court held that the reconciliation agreement could not release the non-debtor party from rent liability contained in court-approved sale order because such reconciliation agreement was not approved by the court under Bankruptcy Rule 9019. | Facts of case distinguishable; non-debtor party sought enforcement of an agreement that purported to release liabilities memorialized in a court-approved sale order. Based on circumstances, such agreement was outside the ordinary course and required court approval. |
| *In re Big Apple Volkswagen, LLC*, 571 B.R. 43, 55 (S.D.N.Y. 2017) | **Cited for:** Any compromise or settlement must be approved Bankruptcy Rule 9019 to be effective.<br><br>**Holding:** The district court found that alleged agreement with debtor's principal to release avoidance actions, which was oral, was unenforceable, as it was not approved by the bankruptcy court. | Facts of case distinguishable; the Debtors do not dispute that a settlement of a bankruptcy cause of action would require court approval. |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection or the Third Lift Stay Motion. Cases appear in order in which they are cited in the Third Lift Stay Motion.

| CITED CASE | FACTUAL BACKGROUND | DISTINGUISHABLE? |
|---|---|---|
| *In re Leslie Fay Companies*, 168 B.R. 294, 305 (Bankr. S.D.N.Y. 1994) | **Cited for:** All compromises and settlements require court approval under Bankruptcy Rule 9019.<br><br>**Holding:** The bankruptcy court held that the collective bargaining agreement ("**CBA**") in question was unenforceable because it was not of a sort that would have been made in the ordinary course of business. | Facts of case distinguishable; the case involved potential conflict between section 363(b) and section 1113 of the Bankruptcy Code. The *Leslie Fay* Court recognized that certain settlement agreements may be in the ordinary course. The *Leslie Fay* court ultimately held that the terms of the CBA were extraordinary and substantially differed from previous CBAs the debtor had entered into to be considered ordinary course. |
| *In re Pugh*, 167 B.R. 251, 253-54 (Bankr. M.D. Fla. 1994) | **Cited for:** All compromises and settlements require court approval under Bankruptcy Rule 9019.<br><br>**Holding:** The bankruptcy court summarily denied the Trustee's motion for contempt against the debtors, as there was no court order to hold attorney in contempt of because trustee's attorney never sought approval of alleged settlement with debtors. | Facts of case distinguishable. Further, any mention of Bankruptcy Rule 9019 is *dicta* as the court found no valid settlement agreement to exist between trustee and debtors. |
| *In re Rothwell*, 159 B.R. 374, 379 (Bankr. D. Mass. 1993) | **Cited for:** All compromises and settlements require court approval under Bankruptcy Rule 9019.<br><br>**Holding:** The state court attorney, who was never employed as special counsel to the chapter 7 estate, improperly settled a breach of contract action. Court sanctioned the state court attorney under Rule 9011 for unauthorized representation and for settling state court action that belonged to the estate. | Facts of case distinguishable. |
| *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1983) | **Cited for:** All compromises and settlements require court approval under Bankruptcy Rule 9019.<br><br>**Holding:** Judicial estoppel against the Commissioner of Interim Revenue ("**CIR**") was warranted and CIR was estopped from pursuing taxes against husband when CIR argued opposite position in wife's bankruptcy case. | Inapplicable. *Reynolds* deals with judicial estoppel against a government entity. |

WEIL:\97338554\11\73217.0004

| CITED CASE | FACTUAL BACKGROUND | DISTINGUISHABLE? |
|---|---|---|
| *In re Teknek, LLC*, 563 F.3d 639, 651 (7th Cir. 2009) | **Cited for:** All compromises and settlements require court approval under Bankruptcy Rule 9019.<br><br>**Holding:** Inapplicable. The Seventh Circuit held that the bankruptcy court lacked jurisdiction to approve a trustee's 9019 settlement of fraudulent transfer actions while an appeal of substantially similar actions was still pending. | Inapplicable; Bankruptcy Rule 9019 is only mentioned in passing, and the main issue of the case is jurisdiction. The Debtors agree that settlements of avoidance actions require court approval. |
| *American Prairie Construction Co. v. Hoich*, 594 F.3d 1015, 1024 (8th Cir. 2010) | **Cited for:** All compromises and settlements require court approval under Bankruptcy Rule 9019.<br><br>**Holding:** The oral settlement required court approval to be enforceable because it related to the ability to foreclose on the debtor's primary asset. | Facts of case distinguishable. Agreement at issue related to the potential foreclosure of the debtor's primary asset, which is not an ordinary course issue. |
| *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 141 (10th Cir. 1988) | **Cited for:** All compromises and settlements require court approval under Bankruptcy Rule 9019.<br><br>**Holding:** The memorandum of agreement at issue, providing adequate protection to a creditor holding a first deed of trust on debtor's property, was valid. | Inapplicable; the issue in *Blehm* was adequate protection under sections 362, 363, and 364 of the Bankruptcy Code, not a settlement. |

WEIL:\97338554\11\73217.0004

| EXTENSION OF AUTOMATIC STAY TO NON-DEBTOR PARTIES | | |
|---|---|---|
| **CITED CASE** | **FACTUAL BACKGROUND** | **DISTINGUISHABLE?** |
| *Millard v. Developmental Disabilities Institute, Inc.*, 266 B.R. 42, 44 (Bankr. E.D.N.Y. 2001) | **Cited for:** Automatic stay does not extend to non-debtor co-defendants.<br><br>**Holding:** The bankruptcy court determined that the underlying labor and wages case against the non-bankrupt co-defendants of the debtor was not so complex as to take away from the reorganization efforts and declined to extend the automatic stay. | Debtors do not disagree with proposition; facts of case distinguishable. |
| *Franco v. Ideal Mortgage Bankers, Ltd.*, 2017 WL 5195223, 2017 U.S. Dist. LEXIS 186194 (E.D.N.Y. 2017) | **Cited for:** Automatic stay does not extend to non-debtor co-defendants.<br><br>**Holding:** The court declined to extend the automatic stay to the action because the non-debtor co-defendant officer "has not alleged that a judgment against him or the other Individual Defendants would have an immediate adverse economic impact on the debtor's estates." | Debtors do not disagree with proposition; facts of case distinguishable. |
| *Demel v. Group Benefits Plan for Employees of Northern Telecom, Inc.*, 2010 WL 167947, at *1 (S.D.N.Y. 2010) | **Cited for:** Automatic stay does not extend to non-debtor defendants.<br><br>**Holding:** The court declined to extend the automatic stay to the non-debtor officer defendants because defending the ERISA action would not take away from the reorganization of the debtor. The court was not presented with any evidence of independent liability outside of bankruptcy. | Debtors do not disagree with proposition; facts of case distinguishable. |
| *In re McCormick*, 381 B.R. 594, 600 (S.D.N.Y. 2008) | **Cited for:** Automatic stay does not extend to non-debtor co-defendants.<br><br>**Holding:** The bankruptcy court would not extend the automatic stay to preclude action against LLC owned by debtor under the theory that the individual debtor's ownership interest in the LLC was property of the debtor's estate. The bankruptcy court further found that the debtor failed to provide evidence that the pending actions against the LLC will have an immediate adverse economic consequence on the debtor's estate. | Debtors do not disagree with proposition; facts of case distinguishable. |

WEIL:\97338554\11\73217.0004

| CITED CASE | FACTUAL BACKGROUND | DISTINGUISHABLE? |
|---|---|---|
| *Wynn v. AC Rochester General Motors, Corp.*, 155 Fed. App'x 528, 528 (2nd Cir. 2005) | **Cited for:**  Automatic stay does not extend to non-debtor co-defendants. <br><br> **Holding:**  Appeal dismissed against non-bankruptcy co-defendants even though action was stayed as to debtor. | Debtors do not disagree with proposition; facts of case distinguishable. |
| *Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 58 (2nd Cir. 2000) | **Cited for:** Automatic stay does not extend to non-debtor co-defendants. <br><br> **Holding:**  Inapplicable.  Second Circuit's discussion and ruling was focused on whether non-debtor co-defendants that were secondary common carriers were liable in tort for losses sustained by the plaintiff as a result of the co-defendant debtor's shipment of goods. | Debtors do not disagree with proposition; facts of case distinguishable. |
| *Teachers Ins. & Annuity Ass'n. v. Butler*, 803 F.2d 61, 65 (2nd Cir.1986) | **Cited for:**  Automatic stay does not extend to non-debtor co-defendants. <br><br> **Holding:**  The bankruptcy court held that section 105(a) of the Bankruptcy Code cannot be used to extend the automatic stay to non-debtors when the extension was being sought in bad faith by the non-debtor co-defendants to escape liability imposed by an adverse judgment. | Debtors do not disagree with proposition; facts of case distinguishable. |
| *Gray v. Hirsch*, 230 B.R. 239, 241 (Bankr. S.D.N.Y. 1999) | **Cited for:**  Automatic stay does not extend to non-debtor co-defendants. <br><br> **Holding:**  The court held that non-debtor, individual co-defendant's control over the debtor entities was insufficient, without more, to extend the automatic stay to prevent the civil litigation from proceeding against the non-debtor. | Debtors do not disagree with proposition; facts of case distinguishable.  The *Gray* Court noted that the automatic stay could be extended when a judgment against the non-debtor would adversely affect the debtor's estate, for example, if a debtor must expend funds to indemnify the non-debtor parties. |
| *In re Crazy Eddie Securities Litigation*, 104 B.R. 582, 584 (Bankr. E.D.N.Y. 1989) | **Cited for:**  Automatic stay does not extend to non-debtor co-defendants. <br><br> **Holding:**  The bankruptcy court found that the automatic stay should not be extended to non-debtor co-defendants because they were not bound by statute or contract to the debtor and, therefore, adverse judgment against the non-debtor defendants would not have adverse effect against the debtor. | Debtors do not disagree with proposition; facts of case distinguishable. |

WEIL:\97338554\11\73217.0004

| CITED CASE | FACTUAL BACKGROUND | DISTINGUISHABLE? |
|---|---|---|
| *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2nd Cir. 2003) | **Cited for:**  Automatic stay may be extended to non-debtors in unusual circumstances where a claim against the non-debtor will have an immediate adverse economic impact on the debtor's estate.<br><br>**Holding:**  The Second Circuit held that the automatic stay applies to the individual debtor's wholly owned subsidiary, but not to the other non-debtors.  The court denied to extend the automatic stay when it is being used offensively. | Debtors do not disagree with proposition; facts of case distinguishable.  Further, the *Queenie* Court noted that extension of stay may be granted where debtor obligated to indemnify non-debtor defendant. |
| *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 32 (S.D.N.Y. 1990) | **Cited for:**  Extension of the automatic stay is an exception, not the rule and not favored absent unusual circumstances.<br><br>**Holding:**  The court refused to extend the stay where the non-debtor co-defendant was independently liable to the creditor. | Debtors do not disagree with proposition; facts of case distinguishable. |
| *In re FPSDA I, LLC*, 2012 WL 6681794, at *8 (Bankr. E.D.N.Y. 2012) | **Cited for:**  Debtor or non-debtor bears the burden of proof that circumstances warrant extending the automatic stay.<br><br>**Holding:**  The bankruptcy court found that the debtors' indemnity obligations to the co-defendant officers were insufficient basis to extend automatic stay, given that such obligation was contingent. | Debtors do not disagree with proposition; facts of case distinguishable.  The Debtors' indemnity obligation to the Underwriters is not contingent. |
| *In re Uni-Marts, LLC*, 399 B.R. 400, 416-17 (Bankr. D. Del. 2009) | **Cited for:**  The presence of an indemnity obligation alone is insufficient to justify the extension of the automatic stay.<br><br>**Holding:**  The court found no "unusual circumstances" existed to warrant extension of the automatic stay, given that the debtors had D&O insurance that would cover indemnity claims of directors and officers at no actual loss to the estates.  The court further found that, given the modest size and potential recovery, the debtor entities would not realize a materially adverse loss. | Debtors do not disagree with proposition; facts of case distinguishable.  The Debtors do not have additional insurance to cover the Underwriters' indemnity claim and such costs may be crippling to the estates. |
| *Holland v. High Power Energy*, 248 B.R. 53, 59 (Bankr. S.D.W. Va. 2000) | **Cited for:**  The presence of an indemnity obligation alone is insufficient to justify the extension of the automatic stay.<br><br>**Holding:**  The bankruptcy court denied extension of automatic stay to non-debtor co-defendant because the liability of the non-debtor co-defendant was independent of the liability of the debtor, and the non-debtor co-defendant was potentially the real party in interest, not the debtor. | Debtors do not disagree with proposition; facts of case distinguishable.  The indemnity obligation makes the Debtors potentially the real party in interest in any litigation brought against the Underwriters. |

WEIL:\97338554\11\73217.0004

| CITED CASE | FACTUAL BACKGROUND | DISTINGUISHABLE? |
|---|---|---|
| *In re SDNY 19 Mad Park, LLC*, 2014 WL 4473873, at *2 (Bankr. S.D.N.Y. 2014) | **Cited for:**  The presence of an indemnity obligation alone is insufficient to justify the extension of the automatic stay.<br><br>**Holding:**  The court held the law was conflicting as to whether the non-debtor defendant's right to indemnification by the debtor would be enforced, and, therefore, defendant's right to indemnification was contingent. | Debtors do not disagree with proposition; facts of case distinguishable.  Under the terms of the Settlement Agreement, the Underwriter's claim for indemnification is not contingent. |
| *A. H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) | **Cited for:**  Suit against a non-debtor third-party who is entitled to absolute indemnity has been noted as "unusual circumstances" in large complex reorganizations where the litigation sought to be stayed presented formidable discovery and other demands with potential large amount of claimants.<br><br>**Holding:**  The Fourth Circuit affirmed the district court's order staying the plaintiffs' actions against the debtor and non-debtor co-defendants, finding that extension of the automatic stay was warranted where such claims against non-debtor co-defendants would pose an immediate and irreparable harm to the debtor's estate.  Further, given the indemnification obligations of the debtor for some of the non-debtor co-defendants, a judgment against the non-debtor co-defendants would be a judgment against the debtor. | Debtors do not disagree with proposition. Decision supports denial of the Third Stay Relief Motion. |
| *In re First Cent. Fin. Corp.*, 238 B.R. 9, 19 (Bankr. E.D.N.Y. 1999) | **Cited for:**  Extension of the automatic stay is an exception, not the rule and not favored absent unusual circumstances.<br><br>**Holding:**  The chapter 7 trustee filed a complaint for declaratory and injunctive relief to protect proceeds of a chapter 7 debtor corporation's director and officer insurance policy.  In denying injunctive relief, the court determined that the debtors had sufficient insurance to cover any claims against officers and directors and, even if officers and directors had indemnity claim, they were not likely to be material. | Debtors do not disagree with proposition; facts of case distinguishable. |

7

**<u>Exhibit E</u>**

**December 21st E-Mails**

**From:** Howard, George R
**To:** Brauner, Sara
**Cc:** Fail, Garrett; Dublin, Philip; Marcus, Jacqueline; Singh, Sunny; Elberg, Shana A
**Subject:** RE: [Ext] RE: Sears - Potential Hurricane Maria Insurance Settlement.
**Date:** Friday, December 21, 2018 1:55:18 PM
**Attachments:** image001.png

Skadden is good with this.

Thanks,

**George R. Howard**
Counsel
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Times Square | New York | New York | 10036-6522
T: +1.212.735.2367 | F: +1.212.735.2000
george.howard@skadden.com
🌳 Please consider the environment before printing this email.

Begin forwarded message:

> **From:** "Brauner, Sara <sbrauner@akingump.com>
> **Date:** December 21, 2018 at 10:43:26 AM EST
> **To:** "Fail, Garrett" <Garrett.Fail@weil.com>, "Dublin, Philip" <pdublin@AkinGump.com>, "Elberg, Shana A" <Shana.Elberg@skadden.com>
> **Cc:** "Marcus, Jacqueline" <jacqueline.marcus@weil.com>, "Singh, Sunny" <sunny.singh@weil.com>
> **Subject:** [Ext] RE: Sears - Potential Hurricane Maria Insurance Settlement.
>
> Akin is fine with this.
>
> Thanks,
> Sara
>
> **Sara Brauner**
> Direct: +1.212.872.7453 | Internal: 37453
>
> **From:** Fail, Garrett <Garrett.Fail@weil.com>
> **Sent:** Thursday, December 20, 2018 12:32 PM
> **To:** Dublin, Philip <pdublin@AkinGump.com>; Brauner, Sara <sbrauner@akingump.com>; Elberg, Shana A <Shana.Elberg@skadden.com>
> **Cc:** Marcus, Jacqueline <jacqueline.marcus@weil.com>; Singh, Sunny <sunny.singh@weil.com>
> **Subject:** Sears - Potential Hurricane Maria Insurance Settlement.
>
> **\*\*EXTERNAL Email\*\***
>
> Privileged and Confidential
>
> Phil, Sara, Shana, I am writing to confirm your conversations with Jackie this morning and the consensus that the Debtors can enter into an agreement (described below) with its insurer without Court approval in the ordinary course.
>
> SHC had building and other property damage at approximately 40 locations in Puerto Rico and the US Virgin Islands.  Total estimated damages are ~$78MM, less ~14.2MM deductible/retained loss leaving an estimated insurance claim of $63.8MM.
>
> To date, the panel of insurers have approved $46.3MM for building damages.  Sears has collected $45.2MM in proceeds, with an additional $1.1MM approved but not yet paid.  Sears' estimate of outstanding, unapproved damages as of Oct 31 was $17.5MM.  Sears originally targeted a potential negotiated settlement would be approximately $████ calculated as follows:

| SHC Estimate for Outstanding Recoveries | | $ 17,484,718 | |
|---|---|---|---|
| Disputed/Negotiated Items | SHC Estimate | Settlement | |
| Seritage Deductible | $ █████ | $ █████ | 50-50 settlement for expenses not properly documented |
| Lack of Support/Estimates | $ █████ | $ █████ | Expenses in SHC original estimates that were not incurred |
| Northstar Recovery Expenses | $ █████ | $ █████ | RC is usually not paid until costs incurred; Insurers agreed to pay our expected costs |
| Replacement Cost 1915 | $ █████ | $ █████ | RC is usually not paid until costs incurred; Insurers agreed to pay our expected costs |
| Replacement Cost Other Units | $ █████ | $ █████ | RC is usually not paid until costs incurred; Insurers agreed to pay our expected costs |
| HVAC | $ █████ | $ █████ | 50-50 settlement for dispute over need to repair vs replace |
| Other Miscellaneous Items | $ █████ | $ █████ | Various Line Item Compromises |
| | | | |
| Totals | $ █████ | $ █████ | |
| | | | |
| Expense in SHC Estimate Not Incurred | | $ █████ | |
| Difference due to negotiation | | $ █████ | |
| | | | |
| Targeted Settlement | | $ █████ | |
| | | | |
| Seritage Deductible | | $ █████ | Increased deductible due to Seritage building values |
| | | | |
| Final Settlement Offer | | $ █████ | |

> Sears received a final settlement offer from insurers of $█████.  This is in addition to the remaining $1.1MM previously approved but unpaid.  The only item to differ from the October projection above is the $████ Seritage deductible.  Insurers are reducing this amount by █████ due to a 5% of values deductible.  They are applying 5% against the values of the Seritage buildings, which reduces recovery.  Sears believes that their position is fair and that this will be a reasonable final settlement.  If Sears was to reject this settlement, it probably would be headed towards a prolonged, costly legal process in the US and the UK to adjudicate the remainder of the claim.
>
> Please confirm or let me know if you have any further questions.  Thank you.
>
> 
>
> **Garrett Fail**
> Partner

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Garrett.Fail@weil.com
+1 212 310 8451 Direct
+1 516 642 4031 Mobile
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

-----------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
==========================================================================