Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 18-23538-rdd

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   SEARS HOLDINGS CORPORATION,

8

9          Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                      United States Bankruptcy Court

13                      300 Quarropas Street, Room 248

14                      White Plains, NY 10601

15

16                      January 28, 2020

17                      10:01 AM

18

19

20

21   B E F O R E :

22   HON ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  A. VARGAS

Page 2

1   HEARING RE Notice of Agenda of Matters Scheduled for Hearing

2   on January 28, 2020 at 10:00 a.m. (ECF 6406)

3

4   Third Interim Fee Application of Deloitte Tax LLP for

5   Compensation for Services Rendered as Tax Services Provider

6   from July 1, 2019 through October 31, 2019 for Deloitte Tax

7   LLP, Other Professional, period: 7/1/2019 to 10/31/2019,

8   fee:$141,363.50, expenses: $0.00 (ECF 6137)

9

10  Second Interim and Final Fee Application of Lazard Freres &

11  Co. LLC, Investment Banker to the Debtors, for the Period

12  from October 15, 2018 through October 14, 2019 for Lazard

13  Freres & Co. LLC, Other Professional, period: 10/15/2018 to

14  10/14/2019, fee:$21,900,000, expenses: $110,924.96 (ECF

15  6138)

16

17  Third Application for Interim Professional Compensation of

18  Alvarez & Marsal North America, LLC for Compensation Earned

19  and Expenses Incurred for the Period from July 1, 2019

20  through and Including September 30, 2019 for Alvarez &

21  Marsal North America, LLC, Other Professional, period:

22  7/1/2019 to 9/30/2019, fee:$6,877.50, expenses: $12.70 [ECF

23  No. 6183]

24

25

Page 3

1    Third Interim Fee Application of Prime Clerk LLC, as

2    Administrative Agent to the Debtors, for Services Rendered

3    and Reimbursement of Expenses for the Period from July 1,

4    2019 through October 31, 2019 for Prime Clerk LLC, Other

5    Professional, period: 7/1/2019 to 10/31/2019,

6    fee:$446,260.50, expenses: $4,801.46 [ECF No. 6214]

7

8    Application for Interim Professional Compensation Second

9    Joint Application of Paul E. Harner, as Fee Examiner and

10   Ballard Spahr LLP, as Counsel to the Fee Examiner for

11   Interim Allowance of Compensation for Professional Services

12   Rendered and Reimbursement of Actual and Necessary Expenses

13   Incurred from July 1, 2019 through October 31, 2019 for Fee

14   Examiner, Other Professional, period: 7/1/2019 to

15   10/31/2019, fee:$877,382.00, expenses: $892.33 [ECF No.

16   6215]

17

18   Third Interim Fee Application of Paul, Weiss, Rifkind,

19   Wharton & Garrison LLP, Attorneys for the Debtors and

20   Debtors in Possession, for the Period from July 1, 2019

21   through and including October 31, 2019 [E for Paul, Weiss,

22   Rifkind, Wharton & Garrison LLP, Debtor's Attorney, period:

23   7/1/2019 to 10/31/2019, fee:$536,326.00, expenses:

24   $276,422.10 [ECF No. 6225]

25

Page 4

1    Third Application for Interim Professional Compensation of

2    Young Conaway Stargatt & Taylor, LLP as Conflicts Counsel

3    for the Debtors for Young Conaway Stargatt & Taylor, LLP,

4    Other Professional, period: 7/1/2019 to 10/31/2019,

5    fee:$23,128.50, expenses: $128.71 (ECF 6226)

6

7    Third Interim Application of FTI Consulting, Inc., Financial

8    Advisor to the Official Committee of Unsecured Creditors of

9    Sears Holdings Corporation, et al. for Interim Allowance of

10   Compensation and Reimbursement of Expenses for the Period

11   from July 1, 2019 Through October 31, 2019 for FTI

12   Consulting, Inc., Other Professional, period: 7/1/2019 to

13   10/31/2019, fee:$1,103,980.00, expenses: $1,446.45 (ECF

14   6229)

15

16   Third Interim Application of Houlihan Lokey Capital, Inc.,

17   Investment Banker to the Official Committee of Unsecured

18   Creditors, for Interim Allowance of Compensation for

19   Professional Services Rendered and Reimbursement of Actual

20   and Necessary Expenses Incurred from July 1, 2019 through

21   October 31, 2019 for Houlihan Lokey Capital, Inc., Other

22   Professional, period: 7/1/2019 to 10/31/2019,

23   fee:$500,000.00, expenses: $0.00 (ECF 6230)

24

25

Page 5

1   Third Interim Fee Application of Akin Gump Strauss Hauer &

2   Feld LLP as Counsel to the Official Committee of Unsecured

3   Creditors for Allowance of Compensation for Services

4   Rendered and Reimbursement of Expenses for the Period of

5   July 1, 2019 through and Including October 31, 2019 for Akin

6   Gump Strauss Hauer & Feld LLP, Creditor Comm. Aty, period:

7   7/1/2019 to 10/31/2019, fee:$5,384,047.00, expenses:

8   $318,470.97 (ECF 6231)

9

10  Third Application of Weil, Gotshal & Manges LLP, as

11  Attorneys for Debtors, for Interim Allowance of Compensation

12  for Professional Services Rendered and Reimbursement of

13  Actual and Necessary Expenses Incurred from July 1, 2019

14  through and including October 31, 2019 for Weil, Gotshal &

15  Manges LLP, Debtors' Attorney, period: 7/1/2019 to

16  10/31/2019, fee:$10,388,784.25, expenses: $675,032.56 (ECF

17  6232)

18

19  Motion to Shorten Time/ Motion for an Order Shortening

20  Notice with Respect to Debtors Motion Pursuant to Federal

21  Rule of Bankruptcy Procedure 9019(a) for Entry of an Order

22  Approving Settlement Agreement with Transform Holdco LLC

23

24

25

Page 6

1   Motion to Approve / Debtors' Motion Pursuant to Federal Rule

2   of Bankruptcy Procedure 9019(a) for Entry of an Order

3   Approving Settlement Agreement with Transform Holdco LLC

4   [ECF No. 6327]

5

6   Statement /Hain Capital Investors Master Fund, Ltds Joinder

7   to Debtors Reply to Objection of Winiadaewoo to Stipulation

8   and Order by and among Debtors, Transform and Hain (related

9   document(s)6394, 6395)

10

11   Motion for Omnibus Objection to Claim(s) / Debtors' First

12   Omnibus Objection to Proofs of Claim  (Satisfied Claims)

13   [ECF No. 4775]

14

15   Motion for Omnibus Objection to Claim(s) / Debtors' Fifth

16   Omnibus Objection to Proofs of Claim (Reclassification as

17   General Unsecured Claims with hearing to be held on

18   10/23/2019 at 10:00 AM at Courtroom TBA, White Plains

19   Courthouse (RDD) Responses due by 9/19/2019 (ECF 5031)

20

21   Motion for Omnibus Objection to Claim(s) / Debtors' Sixth

22   Omnibus Objection to Proofs of Claim (Satisfied Claims) with

23   hearing to be held on 10/23/2019 at 10:00 AM at Courtroom

24   TBA, White Plains Courthouse (RDD) Responses due by

25   9/26/2019 [ECF No. 5075]

Page 7

1    Motion for Omnibus Objection to Claim(s) /  Debtors' Seventh

2    Omnibus Objection to Proofs of Claim (Amended and Superseded

3    Claims) [ECF No. 5100]

4

5    Motion for Omnibus Objection to Claim(s) / Debtors' Eighth

6    Omnibus Objection to Proofs of Claim (Duplicate Claims) [ECF

7    No. 5101]

8

9    Motion by Nina and Gerald Greene for Relief from the

10   Automatic Stay [ECF No. 6212]

11

12   Objection to Motion for Relief from Automatic Stay (related

13   document(s) 6212) (ECF 6366)

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1    A P P E A R A N C E S :

 2

 3    WEIL, GOTSHAL & MANGES LLP

 4         Attorneys for the Debtors

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8    BY:  JARED R. FRIEDMANN

 9         SUNNY SINGH

10         PHILIP L. DIDONATO

11

12    AKIN GUMP STRAUSS HAUER & FELD LLP

13         Attorneys for Official Committee of Unsecured Creditors

14         One Bryant Park

15         New York, NY 10036

16

17    BY:  PHILIP C. DUBLIN

18         SARA L. BRAUNER

19

20    LAW OFFICES OF PERRY R. CLARK

21         Attorney for Winia Daewoo Electronics, Inc.

22         825 San Antonio Road

23         Palo Alto, CA 94303

24

25    BY:  PERRY R. CLARK
```

Page 9

1    FOLEY & LARDNER LLP

2         Attorney for Hain Capital Investors

3         90 Park Avenue

4         New York, NY 10016

5

6    BY:  PAUL J. LABOV

7

8    CLEARY GOTTLIEB STEEN & HAMILTON LLP

9         Attorneys for Transform Holdco LLC and its affiliates

10        One Liberty Plaza

11        New York, NY 10006

12

13   BY:  SEAN A. O'NEAL

14

15   KAUFMAN COREN RESS

16        Attorneys for Nina & Gerald Greene

17        Two Commerce Square

18        Suite 3900

19        Philadelphia, PA 19103

20

21   BY:  JANICE I. DAUL

22

23

24

25

Page 10

```
 1   APPEARING TELEPHONICALLY:

 2

 3   RYAN M. BARTLEY

 4   BRIAN BRAGER

 5   ROBERT A. BRITTON

 6   EDWIN H. CALDIE

 7   PAUL E. HARNER

 8   ANA LUCIA HURTADO

 9   HOO RI KIM

10   TERESA LII

11   VINENT J. MARRIOTT

12   CHANTELLE D. MCCLAMB

13   NEVILLE N. REID

14   LEE J. REID

15   LEE J. ROHN

16   MICHAEL L. SCHEIN

17   LUCAS SCHNEIDER

18   PAUL SCHWARTZBERG

19   CHRIS STAUBLE

20   DENNIS STOGSDILL

21   PATRICIA A. WALSH

22   TODD M. ARNOLD

23   SOMA ISWAS

24   ALANA FRIEDBERG

25   TAYLOR B. HARRISON
```

1    ZACHARY D. LANIER

2    CATHERINE LOTEMPIO

3    RICK J. SZAMBEL

4    DAVID H. WANDER

5    SHIRA D. WEINER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2              THE COURT:  Please be seated.  Okay, good morning.

3              MR. SINGH:  Good morning.

4              THE COURT:  In Re Sears Holdings Corporation, et

5      al.

6              MR. SINGH:  Good morning, Your Honor.  Sunny

7      Singh, Weil Gotshal, on behalf of the Debtors.  Your Honor,

8      we did file an agenda for today's hearing, and if it's okay

9      with the Court, I'll just proceed down in the order of the

10     agenda.

11             THE COURT:  That's fine.

12             MR. SINGH:  First, we do have a number of fee

13     matters on today, the various applications of each of the

14     professionals.  And I think some of the professionals are

15     here today, and as well as others are on the phone.

16             I'm happy to proceed however you'd like, Your

17     Honor.  We did not receive any objections.  The fee

18     applications have all gone through the review of the fee

19     examiner.  The order does contain the language we've had in

20     the prior interim orders that reserves the right of the fee

21     examiner to continue to review and object to the second

22     final applications that are being filed.

23             I would note there is one final application that's

24     on for today.  It's the second interim and final application

25     of Lazard at ECF 6138.  There was a representative of Lazard

Page 13

1    here, and that application also has been reviewed by the fee

2    examiner.  And to my understanding, there are no objections

3    to Lazard's fees.

4             THE COURT:  Okay.  Well, does anyone have anything

5    to say on the fee applications?  I'll go through them.  But

6    I just want to know --

7             MR. SINGH:  Sure.

8             THE COURT:  -- if anyone has anything to say on

9    them.  Okay.  I've been through each of the applications and

10   I'll just go through them seriatim as they appear on the

11   agenda.

12            As far as the two Deloitte applications, the one

13   for auditor and advisor services, and one for tax services,

14   I had no issues and will grant them.

15            On the Lazard application -- and I appreciate that

16   Lazard was retained under Section -- subject to the

17   qualifications of the order -- Section 328(a), or subject to

18   Section 328(a) of the Bankruptcy Code.

19            I had a question as to Lazard's continuing role in

20   the case after July.  There was a Lazard declaration, which

21   was important for the 507(b) hearing, but this would cover

22   August through October as well.  And there's a monthly fee

23   there, unlike with respect to the Houlihan Lokey

24   application, which comes up later, Houlihan being the

25   investment banker for the Committee.

1          The Lazard application didn't really give me a

2     good idea what Lazard was doing during those months.  And

3     their hours are low for that three-month period, although

4     not negligible.  Although it's hard for me to see whether --

5     you know, what it was that they did.  And it's one thing to

6     say that a monthly fee is a market rate and it's approved,

7     but you know, at some point, you just have to stop.

8          And I don't know -- I mean, the fee examiner's

9     report on this really just covered it in one paragraph.  And

10    I appreciate that the fee examiner said that he didn't have

11    an objection to Lazard's application for the last period,

12    which is the one that I'm talking about.  And that's the

13    only issue I have with the application, but it's a

14    significant sum.  It's $1.4 million, although some portion

15    of that, I think, would be -- well, I wouldn't have a

16    problem with either.  It's really the post-July period.

17          MR. SINGH:  Your Honor, if we could come back to

18    that, we're just double checking.  I am not positive, but I

19    think the 1.4 represents the holdback from sort of the

20    majority of the fee that was approved last time.

21          THE COURT:  So were they charging, though --

22          MR. SINGH:  I don't think --

23          THE COURT:  -- the monthly fee for that --

24          MR. SINGH:  -- they were charging --

25          THE COURT:  -- for that period?

```
1              MR. SINGH:  -- for those three months.

2              THE COURT:  All right.

3              MR. SINGH:  But we're just going to confirm.

4              THE COURT:  Can we just -- that's fine.

5              MR. SINGH:  I don't think that there were any

6   monthlies charged for that --

7              THE COURT:  All right.

8              MR. SINGH:  -- for those months.

9              THE COURT:  Well, if that's the case, then --

10             MR. SINGH:  But we will just double check.

11             THE COURT:  -- then I'll do an Emily Litella and

12  say never mind.  But I just wanted to make sure.

13             MR. SINGH:  I mean, I could be wrong --

14             THE COURT:  Okay.

15             MR. SINGH:  -- (indiscernible)

16             THE COURT:  Okay.

17             MR. HARNER:  Your Honor, it's Paul Harner, the fee

18  examiner.  Can I just break in to confirm exactly what was

19  just said?  That's correct.  That was --

20             MR. SINGH:  Yeah.

21             MR. HARNER:  -- both credited and --

22             THE COURT:  All right.

23             MR. HARNER:  -- and just as represented.

24             THE COURT:  Okay.  So Lazard stopped at July?

25             MR. SINGH:  Right.  That was my recollection.
```

1                THE COURT:  All right.

2                MR. SINGH:  Just in that --

3                THE COURT:  All right.

4                MR. SINGH:  Exactly.  It was after July.

5                THE COURT:  Well, that's fine.  Then I will grant

6      --

7                MR. HARNER:  And that's correct, Your Honor.

8                THE COURT:  -- Lazard's application in the amount

9      sought.

10               MR. SINGH:  Thank you, Your Honor.

11               THE COURT:  I had previously approved -- as I

12     said, it's retention, subject to 328(a) of the code.  That's

13     standard with the U.S. Trustee's carved out right, and it's

14     clear to me that they were performing substantial services

15     through July.  So I'll grant that application, including on

16     a final basis.  With a caveat, though, and I'll come back to

17     it, which applies to all of these applications.

18               I've been through the Alvarez & Marsal one.  For

19     this period, it's very light, obviously.  And I will grant

20     that application.

21               Similarly, I'll grant the Prime Clerk application.

22     This was a significant amount of work by Prime Clerk, but

23     that's understandable, since this was the period covered by

24     the plan solicitation.

25               I've also been through the fee examiner's fee

Page 17

1    application.  I guess the fee examiner doesn't review his

2    own application as an examiner, but as an applicant, but I

3    have.  And although there was a significant amount of work

4    here, my looking behind it would really be second-guessing

5    the U.S. Trustee's application, which I granted to retain a

6    fee examiner.  And I won't do that.  So I'm granting that

7    application as well.

8             That leaves the Paul Weiss application for this

9    period.  At first glance, the expenses seemed high, but

10   almost all of them were for "electronic discovery".

11            MR. SINGH:  Yes.

12            THE COURT:  Is someone on the phone for Paul Weiss

13   or here?

14            WOMAN 1:  Your Honor, I'm from Paul Weiss.

15            THE COURT:  Oh, okay.  Fine.  So what is

16   electronic discovery, just for the record?

17            WOMAN 1:  So, Your Honor, as you know, we

18   represented the restructuring subcommittee.

19            THE COURT:  Right.

20            WOMAN 1:  And we retained electronic discovery

21   vendors to assist with the document productions

22            THE COURT:  Okay.  So, search terms --

23            WOMAN 1:  Correct.

24            THE COURT:  -- and the like?

25            WOMAN:  Correct.

1          THE COURT:  Okay.  All right.  That's fine.  So,

2     based on my review, I'll grant this application as well, on

3     an interim basis.

4          WOMAN 1:  Thank you, Your Honor.

5          THE COURT:  The same goes for Young, Conaway, as

6     Conflicts Counsel, based on my review.

7          And then we turn to the Committee's professionals.

8     I've reviewed the FTI Consulting application and I did not

9     have any issues with the amount requested, having looked at

10    the time entries and seen the various tasks that FTI was

11    working on.

12         I had a similar issue initially with the Houlihan

13    Lokey application as investment banker for the Committee.

14    Are they still -- when did they stop?

15         MR. DUBLIN:  Your Honor, Phil Dublin, Akin Gump,

16    for the Committee.  As of the end of the October.  So this

17    would be --

18         THE COURT:  Okay.  So they did work --

19         MR. DUBLIN:  They will end up doing a final, but

20    this is their (indiscernible).

21         THE COURT:  But they did work July through

22    October?

23         MR. DUBLIN:  Correct.

24         THE COURT:  But their -- as I said earlier, their

25    application details what they actually did.  And it was

Page 19

1   separate and apart from what FTI would have done?

2            MR. DUBLIN:  Yes, Your Honor.

3            THE COURT:  And it related, among other things, to

4   the 507(b) litigation and the administrative expense

5   analysis settlement?

6            DR. DUBLIN:  That's correct, Your Honor.

7            THE COURT:  Okay.  And it wasn't duplicating FTI

8   on that?

9            DR. DUBLIN:  That's correct.

10           THE COURT:  Okay.  All right.  So I'll grant that

11   on an interim basis.

12           And then that leaves the two largest amounts,

13   which are the two main law firms.  I have reviewed both the

14   Akin Gump and Weil Gotshal applications, and I will grant

15   each of them, based on that review.  And again, the review

16   by the fee examiner, which I believe was looking at Mr.

17   Harner's and his firm's records on a monthly basis.  So even

18   shorter than that, looking at the monthly statements, with a

19   fair amount of interaction on what was being charged.

20           The examiner has not objected to either of these

21   applications, nor has anyone else.  So I'm granting each of

22   the applications.  But here's the other caveat.  At the

23   confirmation hearing, I directed a $10 million holdback.

24   The applications don't address that.

25           MR. SINGH:  Correct, Your Honor.  Your Honor, what

Page 20

1    we ended up doing -- just for the record -- the $10 million

2    was already contributed out of the carveout account, and to

3    the general winddown account of the estate, so it could be

4    used for distributions and the like.  So that money has come

5    over.

6           And the language in the confirmation order

7    provided that to the extent that there was later a shortfall

8    in the carveout account and certain admin dollars available

9    to pay the professionals in full, there would be an

10   allocation back, a prorated allocation at that time.

11          So I think, given that these are all being

12   approved, with the exception of Lazard on an interim basis,

13   that mechanic is in the confirmation order, we -- you know,

14   if we ever needed to go back and look and see if the $10

15   million caused anybody to have a shortfall, that could be

16   addressed at the end, given that these are interim

17   applications.

18          So I'm not sure if we need language here, but we

19   could --

20          THE COURT:  Well, I think we should put language

21   in that this --

22          MR. SINGH:  Refers to the confirmation order?

23          THE COURT:  -- this order is subject to --

24          MR. SINGH:  Right.

25          THE COURT:  -- the applicable -- whatever

Page 21

1   paragraph it is in the confirmation order.

2          MR. SINGH:  Certainly, Your Honor.

3          THE COURT:  Okay.  All right.  So you can email

4   one order with Schedule A and B on each of these that covers

5   --

6          MR. SINGH:  Yes, Your Honor.

7          THE COURT:  -- that covers all of these together.

8          MR. SINGH:  Certainly.  We may just have a

9   separate order for Lazard's and say it's a final.

10         THE COURT:  That's a final one that's --

11         MR. SINGH:  Right.

12         THE COURT:  Okay.  Although, you can make it --

13         MR. SINGH:  We can build it in.  That's fine.

14         THE COURT:  Yeah, you could build it in.

15         MR. SINGH:  Yeah.  Okay.

16         THE COURT:  Okay.

17         MR. HARNER:  Your Honor, it's Paul Harner.  May I

18  be heard for just a moment?

19         THE COURT:  Sure.

20         MR. HARNER:  I just wanted to make clear that

21  although we have not objected to any of these interim

22  applications, we have been submitting preliminary reports,

23  and I was hoping that this was clear in our status report,

24  in an effort to resolve issues that we have identified in

25  some of the interim applications on a consensual basis.

1            Our goal from the outset has been to make sure

2    that we don't to involve the Court and that we can resolve

3    all of this consensually.  But those discussions are

4    ongoing.  So I want to make sure that the Court is clear

5    about the fact that our reservation of rights in each of the

6    interim orders on interim fee applications, as to final fee

7    applications, was solely to clarify that those kinds of

8    discussions are ongoing.  And when we submit a final report,

9    what we hope we're going to be doing, rather than having any

10   objections that need to be resolved by the Court, is simply

11   indicating that those discussions that are ongoing have

12   become fruitful, and that we've reached agreements about

13   consensual reductions in prior fees applied for.

14            THE COURT:  Okay.  Yeah, I -- that was my

15   understanding from what you had filed, and I may have not

16   been clear when I referenced the fact that you have not

17   objected to these applications.  I didn't want to leave the

18   impression -- and I'm sure that's why you spoke up -- that

19   you've signed off on them, and that your reservation of

20   rights isn't a true and full reservation of rights.

21            On the other hand, I don't think you identified

22   something -- or at least I didn't identify anything -- that

23   leaped out so genetically that you would object at this

24   point.

25            MR. HARNER:  Yes, Your Honor.  And to the extent

1    we would have, we certainly would have raised it by this

2    point.  On the other hand, as I tried to clarify in that

3    status report, we have identified issues that do need to be

4    addressed.  And we're having fruitful discussions with the

5    professionals about those, and we hope that we'll just be

6    filing a report that says we've reached agreement about

7    those issues.

8              THE COURT:  That's fine.  That's fine.  I hope

9    that you can continue with that process, and we'll deal with

10   that when there are final applications.

11             MR. HARNER:  Thank you, Your Honor.  I just wanted

12   to be clear.  Thank you.

13             THE COURT:  Okay.  Very well.

14             MR. SINGH:  Thank you, Your Honor.

15             THE COURT:  Okay.

16             MR. SINGH:  That brings us next to Item Number 13

17   on the agenda, which is the Debtors' motion for approval of

18   a 9019 settlement with Transform Holdco LLC.

19             Now, Your Honor, just before addressing the merits

20   of the motion, we did have a related motion to shorten, and

21   that's identified at 13(a) ECF 6326.

22             THE COURT:  Right.

23             MR. SINGH:  And we -- while we were a couple of

24   days short on the hearing, Your Honor, we did give everybody

25   14 days to object.  And as Your Honor probably saw, the UCC

1    has filed a statement in support.  They were up to date

2    along the way.  And we honestly haven't received too many

3    inbounds; a few from the administrative creditor

4    representatives, and we've kind of walked them through what

5    the settlement terms are.  And there were no objections to

6    either motion.  But I wanted to address the application

7    short first.

8            THE COURT:  Okay.  On that score, this was -- it's

9    dated January 10th.  We're now on the 28th, so -- and I

10   would take oral objections today if anyone had one -- but

11   you're right.  We are a couple of days short on the notice

12   to this hearing.

13           But given the fact that I scheduled the motion to

14   shorten, so that if someone did have an unresolved issue,

15   they could raise it today, and no one has done that -- and I

16   did that rather than just granting it ex parte and

17   scheduling the hearing -- I will grant the motion to

18   shorten, which is unopposed.

19           MR. SINGH:  Thank you, Your Honor.

20           THE COURT:  Okay.

21           MR. SINGH:  Your Honor, with respect to the 9019,

22   you're very familiar with the facts and the disputes that

23   have come up between Transform and the estate following the

24   APA.  The settlement, as outlined in the motion and attached

25   to the motion, is the product of literally months of

Page 25

1    negotiations and back-and-forth between the parties,

2    including consultation with the Creditors' Committee.  And

3    we believe we finally landed in a good spot that was

4    acceptable to everyone, and fair.

5            The Restructuring Committee came to approve this

6    settlement after extensive evaluation and analysis.  And as

7    I mentioned, notably the UCC does support the deal.

8            We did file a declaration of Brian Griffith, from

9    M3.  Mr. Griffith is here today in court and available for

10   live cross.  For the record, I would like to move his

11   declaration into evidence at this time.

12           THE COURT:  Okay.  Does anyone want to cross-

13   examine Mr. Griffith on his declaration, which otherwise I

14   would take as his direct testimony?  Okay.  I've reviewed

15   the declaration.  Clearly, there's support for the motion

16   itself.  And I don't have any questions of Mr. Griffith, I

17   think.  I think you'll be able to answer them for me.

18   Although, if not, you can check with him, obviously.

19           MR. SINGH:  Certainly.

20           THE COURT:  But I'll admit it as his direct

21   testimony.

22           MR. SINGH:  Thank you, Judge.

23           (Declaration of Brian Griffith Admitted Into

24   Evidence)

25           MR. SINGH:  So, really, Your Honor, I'll just do a

Page 26

1    quick summary.  I know that the facts are detailed in there,

2    including all the prior litigation and interim settlements.

3            But there were really three main issues that were

4    remaining after the prior rulings of the Court, all subject

5    to appeal, of course.  But that was the cash reconciliation,

6    the amount of specified receivables delivered, and the

7    ordered inventory.  And then we also had added on the

8    delivery of the one check for roughly $5.5 billion, a tax

9    that came out of the last hearing before Your Honor.

10           There was an examiner appointed to assist the

11   Court with respect to those issues, other than the delivered

12   tax refund check.  And we were sort of up and running until

13   we reached a settlement.  So the examiner was shut down

14   quite early in the process, right around the time that we

15   reached the settlement agreement, or thought we were far

16   enough along.

17           Under the settlement, Your Honor, the estate will

18   get $12 million in cash, and with respect to the disputes,

19   plus there's another $1 million, roughly, for a Deloitte fee

20   reimbursement to the estate.  That's $13 million.  And then

21   in addition, there's $5.3 million approximately of utility

22   deposits.

23           As Your Honor may recall, there was the $10

24   million of utilities posted under Section 366 of the

25   Bankruptcy Code, and a prior ruling on a disputed issue on

Page 27

1    the APA between he estate and Transform.  The Court had

2    found the utility deposits, at least the allocable portion

3    relating to the store's purchase by Transform, were

4    transferred to Transform under the APA.  So they are not

5    relinquishing their rights to that $5.3 million, which will

6    now come back to the estate.  So that gets us for sort of

7    cash delivery of $18.3 million.

8              In addition, pursuant to the settlement, the

9    estate will get to retain the benefits and prior payments of

10   the interim settlements and prior rulings -- that's

11   approximately $45 million -- as well as amounts that

12   Transform has paid on account of the assumed liabilities

13   under the APA to date.  And that's roughly $160 million, and

14   we detailed that in the motion and Mr. Griffith's

15   declaration.

16             Finally, there were $2 million, approximately, at

17   this point of what we call the escheatment funds, or the

18   escheated funds, that are sitting in an escrow, and

19   potentially parties can come that had received a check, come

20   and sort of claim the check.  If that were to happen, when

21   he then goes to Transform to get reimbursed.  If not, and

22   the passage of the escheatment period occurs, the money then

23   comes to the estate.

24             So, Your Honor -- and this is all sort of no more

25   risk of appeals and no further litigation, which we think

Page 28

1    makes very good sense, and sound business judgment of the

2    Restructuring Committee.  But we'll also note another key

3    term is that the estate is to receive the payment within

4    three days of entry of the Court's order approving the

5    settlement.  So, hopefully, if Your Honor does approve the

6    settlement and the Court order is entered today, we would

7    anticipate payment by January 31st, by the end of this week.

8            THE COURT:  And you've also resolved the tax --

9            MR. SINGH:  Yes, Your Honor.

10           THE COURT:  -- refund issues?

11           MR. SINGH:  That's right, Your Honor.  That's --

12   so this particular check is baked into the $18.3 million

13   amount that was given that's now going to be sent back to

14   the estate.  Going forward, we're essentially agreeing as to

15   what the APA says, and the parties' intent with respect to

16   those provisions relating to tax refunds.  Anything pre-

17   closing that was accrued comes back to the estate.  Anything

18   post-closing is Transform property.

19           THE COURT:  Okay.

20           MR. SINGH:  So, Your Honor, unless you have any

21   questions -- the other parties are here.  20:46 I don't know

22   if anybody wants to make a statement.

23           THE COURT:  Well, I did -- obviously, I dealt with

24   a whole host of litigation issues over several months.  So

25   at some level, this is something I'm quite familiar with.

1    But I just want to make sure I fully understand what the

2    parties are settling here.

3            The remaining issues, as I recall, were all that

4    are being -- the main open issues, that involves a complex

5    accounting process, basically, from Transform's point of

6    view, would give rise to schedule set off rights, right?

7            MR. SINGH:  Correct.

8            THE COURT:  Credits against what they would

9    otherwise have to pay?

10           MR. SINGH:  Correct.

11           THE COURT:  And this, I guess, goes to the aspect

12   of the agreement that is the one that's, I think, primarily

13   in its favor, which is the full and final resolution of its

14   remaining obligations to make any payments other than care

15   costs in respect of other payables, assumed 503(b)(9)

16   liabilities, severance reimbursement, and ordered inventory.

17           MR. SINGH:  Right.

18           THE COURT:  So, I take it from Mr. Griffith's

19   declaration that on those amounts, separate and apart from

20   care amounts, they've paid $160 million?

21           MR. SINGH:  That's right.  Exactly, collectively.

22           THE COURT:  What do the Debtors contend remain --

23   leave aside the ordered inventory -- what amount of payables

24   --

25           MR. SINGH:  Will remain?

Page 30

```
 1                THE COURT:  Yeah.

 2                MR. SINGH:  Sure.  So, Your Honor, there was, out

 3    of the 166 assumed liabilities, which was, you know, the --

 4    which is called the 166 dispute --

 5                THE COURT:  Right.

 6                MR. SINGH:  -- they paid 151.5.

 7                THE COURT:  Right.

 8                MR. SINGH:  Right?  The remaining amount, they

 9    were obligated to pay with respect to assumed 503(b)(9)

10    claims and severance claims, approximately 100 -- or not

11    approximately -- I think the cap was exactly hundred and

12    $139 million.  Of that, the estate had conceded that there

13    was a prepaid inventory shortfall of at least -- excuse me -

14    - of $55 million.  Transform argued it was at least 55

15    million and higher, but at $55 million.  So that gets you to

16    84.  They've paid another $7 million with respect to

17    503(b)(9) claims, as part of the cure process.  So $77

18    million remains, Your Honor --

19                THE COURT:  Right.

20                MR. SINGH:  -- in terms of their outstanding

21    assumption obligations.  Now, against that, there was a

22    potential for an offset with respect to any shortfall of the

23    specified receivables, which is an open dispute --

24                THE COURT:  Right.

25                MR. SINGH:  -- that we are resolving.
```

Page 31

```
 1                  THE COURT:  Right.
 2                  MR. SINGH:  And Your Honor had preliminarily found
 3      -- and this was an issue for the examiner -- that the
 4      specified receivables, we needed to actually -- we, the
 5      estate, needed to actually deliver true receivables --
 6                  THE COURT:  Right.
 7                  MR. SINGH: -- as opposed to --
 8                  THE COURT:  Actual value.
 9                  MR. SINGH:  Actual value --
10                  THE COURT:  Yeah, right.
11                  MR. SINGH:  -- as opposed to what was showing on
12      the books and records --
13                  THE COURT:  Right.
14                  MR. SINGH:  -- and at the time of the -- at the
15      time of this APA.  And so that 77 -- the estate, from our
16      perspective, had a negative ruling with respect to that and
17      we kind of had to make that up, or at least we expected that
18      there would be a substantial deduction to that amount, given
19      the Court's prior ruling.  So, that's where we were when we
20      entered into the settlement agreement.
21                  THE COURT:  So aggregate $92 million before the
22      settlement, because there's roughly 15 million --
23                  MR. SINGH:  Right.
24                  THE COURT:  -- plus 77?
25                  MR. SINGH:  Exactly.  Fifteen on the 166 and 77 --
```

```
 1                THE COURT:  And then there are the offsets that

 2    were asserted --

 3                MR. SINGH:  Exactly.  Which --

 4                THE COURT:  -- for --

 5                MR. SINGH:  -- will be fully and finally resolved.

 6                THE COURT:  Right.

 7                MR. SINGH:  There is no more amounts --

 8                THE COURT:  And --

 9                MR. SINGH:  -- that we have to pay.

10                THE COURT:  -- Transform basically took that below

11    zero?

12                MR. SINGH:  Exactly.

13                THE COURT:  Their assertion was?

14                MR. SINGH:  Their assertion was it was below zero.

15                THE COURT:  Okay.  I had asked earlier for the

16    parties to check on what severance wasn't paid.  I had been

17    told, I think, that it had been paid, so --

18                MR. SINGH:  That's correct, Your Honor.  We did

19    file a notice --

20                THE COURT:  Right.

21                MR. SINGH:  -- and I think we (indiscernible) with

22    chambers.  Post-petition severance has all been paid.

23                THE COURT:  Right.

24                MR. SINGH:  I think what some of the letters that

25    Your Honor may have received and some confusion was there
```

Page 33

1    are pre-petition severance amounts, including potentially

2    priority amounts that have not been paid.  That wasn't

3    Transform's obligation.

4              THE COURT:  But that wasn't covered by the APA.

5              MR. SINGH:  That's right.  That's an estate issue

6    that we'll have to --

7              THE COURT:  So when we're talking about the

8    release here, it does include the severance reimbursement

9    obligations, but those have been paid.  So really --

10             MR. SINGH:  Right.

11             THE COURT:  -- effectively, what beings settled is

12   the non-cure assumed 503(b)(9)s, the other payables, and

13   then the ordered inventory and the --

14             MR. SINGH:  Not disputed --

15             THE COURT:  -- the accounting issues?

16             MR. SINGH:  That's exactly right.

17             THE COURT:  All right.  And of course, bound up in

18   that was Transform's contention that the payable -- I'm

19   sorry -- the liabilities were created artificially, along

20   with the payables.

21             MR. SINGH:  That's right.  That's right.  Which is

22   an issue that Your Honor heard --

23             THE COURT:  Right.

24             MR. SINGH:  -- oral argument and was briefed on.

25             THE COURT:  And the open issue, all for this was,

Page 34

1    of course, subject to appeal, except where the parties had

2    previously settled pieces of --

3                MR. SINGH:  That's right.

4                THE COURT:  -- was whether the parties did an

5    actually -- or agreed to actual valuations on this or

6    hypothetical book entry valuations.

7                MR. SINGH:  That's right.  And Your Honor, the

8    other --

9                THE COURT:  Tied into the fact that Transform was

10   buying the business and --

11               MR. SINGH:  Right.

12               THE COURT:  -- the theory that they proposed,

13   which was not -- which had some real merit to it, as I

14   found, is that they wouldn't have agreed to hypothetical

15   valuations when buying a business.

16               MR. SINGH:  Correct, Your Honor.  And the other

17   issue that would have been appealed, if, you know --

18   although we believe we had a stronger argument -- was

19   whether there was a separate --

20               THE COURT:  The whole --

21               MR. SINGH:  -- 166.

22               THE COURT:  The whole 166 in the first place.

23               MR. SINGH:  And to the extent they were right,

24   then the $151 million that they paid, either they had a

25   claim --

```
 1                THE COURT:  Right.

 2                MR. SINGH:  -- or substantial setoffs.

 3                THE COURT:  That would've been a complete setoff

 4    on top of the other setoffs.

 5                MR. SINGH:  Exactly.

 6                THE COURT:  Right.  Okay.  All right.  So, I don't

 7    know if anyone has anything more to say on that aspect of

 8    this.

 9                MR. SINGH:  Mr. O'Neal may.  But just before I

10    cede the podium, I did want to note clearly the release.  As

11    I'm sure Your Honor saw, there's carveouts --

12                THE COURT:  Yes.

13                MR. SINGH:  -- you know, the 507(b) appeal is

14    carved out.  It's continuing on.  The litigation being

15    handled by the Creditors' Committee is carved out --

16                THE COURT:  Right.

17                MR. SINGH:  -- as well as a few other things that

18    we've identified --

19                THE COURT:  Right.  Well, there's a -- and then

20    that's the express carveout.  There's another express

21    carveout, because the mutual release, which is in Paragraph

22    2, says, "Except as provided in Sections 2(c) or (d)"  --

23    that's separate an apart from the Section (b), which is what

24    you were referring to just now --

25                MR. SINGH:  Right.
```

Page 36

1          THE COURT:  -- Section (c) says, "For the

2     avoidance of debt, except with respect to the released

3     claims, as provided in 2(a), nothing herein shall prejudice

4     the rights of any party to enforce its rights under the

5     APA.", et cetera.

6          MR. SINGH:  Right.

7          THE COURT:  And then there's the last carveout in

8     (d).  Okay.

9          MR. O'NEAL:  Good morning, Your Honor.  Sean

10    O'Neal, Cleary Gottlieb, on behalf of Transform.  I'll be

11    brief.  Really, the negotiations that have allowed us to

12    reach this result today really began almost the moment that

13    we signed the APA.  I do want to just make three quick

14    comments.

15         I want to be clear that cure amounts are not being

16    released under the settlement agreement.  I think that's

17    important to some of the vendors who had called us.  And I

18    just want to be clear that we're not purporting to say that

19    our obligations to pay cure amounts, to the extent there

20    are, are being released by this.

21         Secondly, in terms of severance, it turns out that

22    not only was severance paid, any severance that we would be

23    potentially obligated to pay had been paid, but in addition,

24    all of the parties agreed that there was a shortfall for the

25    prepaid inventory.  And that was at least $55 million.  And

Page 37

1    as a result of that, severance liability was kind of at the

2    top of the list of items.

3              So in the event that we -- there was a shortfall,

4    we would not be obligated to pay, it could be a dollar-for-

5    dollar reduction for severance, so --

6              THE COURT:  But you've paid that?

7              MR. O'NEAL:  We didn't pay.  I mean, we didn't

8    have to pay it --

9              THE COURT:  Right.

10             MR. O'NEAL:  -- because it was paid by the estate -

11   -

12             THE COURT:  It was paid by the estate.

13             MR. O'NEAL:  -- but we would never have had an

14   obligation in the first place because of the shortfall,

15   which was an agreed shortfall.

16             THE COURT:  Right.

17             MR. O'NEAL:  And then, lastly, I do want to do say

18   there's another important aspect of the settlement agreement

19   is the Debtors' obligation to deliver some fee parcels.  We

20   call them the "lurking --

21             THE COURT:  You have a great name, the "lurking

22   fee parcels," yeah.

23             MR. O'NEAL:  Yeah.  They've been lurking for

24   sometime.  And so under the settlement agreement, those will

25   be delivered to us, I think, within five business days after

Page 38

1    the release date.  I do want to note that there's -- there

2    is one outstanding potential dispute, but I think we'll get

3    -- I think we'll resolve it.  It relates to one of the

4    Memphis parcels.  The Memphis -- there's one -- this is a

5    Memphis parcel that is not identified in the -- in the

6    schedule that's attached to the APA.  We're continuing to

7    have discussions about that particular parcel.  We believe

8    we purchased it for the same reason -- on the basis of the

9    same arguments we made with respect to Hoffman Estates.  I

10   think we'll be able to resolve it, but I did want you to

11   know that there could be a lurking issue about one of the

12   lurking --

13            THE COURT:  So that isn't part of the release?

14            MR. O'NEAL:  Not at present, but, like I said, I

15   believe that we'll be successful when we --

16            THE COURT:  And Mr. Singh just said he agrees it's

17   not part of the release.

18            MR. O'NEAL:  That's correct.

19            THE COURT:  Okay.  So I had a couple of other

20   questions, you dealt with my main one.  One part of this is

21   the resolution of what tax refunds go to the Debtors and

22   what go to Transform.  The Debtors -- I just signed off on

23   this -- given where they are on the case, are basically --

24   they're being staffed by a II, I guess that's how they

25   describe themselves.

1              MR. O'NEAL:  M-III.

2              THE COURT:  M-III and M-III -- excuse me -- or M-

3      III.  How are the debtors going to monitor that these

4      refunds are being --

5              MR. SINGH:  So we actually have a mechanic, Your

6      Honor, in this settlement agreement, hang on one second.

7              THE COURT:  The parties are supposed to report it

8      and turn over.

9              MR. SINGH:  Yeah.  Exactly.  There's a reporting

10     mechanic where Transform is going to report to the estate

11     basically checks that are coming in from various taxing

12     authorities and report to us on a quarterly basis, Your

13     Honor.  I think that reporting requirement goes out five

14     years

15             MR. O'NEAL:  Until 2024.

16             MR. SINGH:  Right.  Until 2024 so that there will

17     be an ongoing reconciliation between --

18             THE COURT:  Is there a way just to notify the

19     taxing authorities so that you can actually just get it from

20     them directly?  I mean, as I look at this, these -- the

21     right to the refunds has been assigned as part of this.

22             MR. SINGH:  Correct.

23             THE COURT:  So it really is the respective

24     property of, you know, the Debtors' tax refunds or the

25     Debtors' property and the Transform refunds are Transform's

Page 40

1    property.  Is there any way to notify the taxing authorities

2    that this is -- to send the check to them?

3              MR. O'NEAL:  Yeah.  Your Honor, and I just want to

4    be clear, it's a mutually reporting obligation.

5              MR. SINGH:  Yes.

6              MR. O'NEAL:  So if the debtors get stuck.

7              THE COURT:  No.  I understand, this reporting --

8    but I just, you know, just going in the future, I don't know

9    if M-III will be around in 2024 here.  I don't know where

10   Transform will be in 2024.  If there's a way to --

11             MR. O'NEAL:  I think we can discuss with the

12   estate a, you know, a mechanic for that.  I do -- we have,

13   for example, one of -- -- it wasn't a taxing authority, but

14   a landlord reached out to us, and told us that they had

15   anticipated sending a tax refund, and they wanted to know

16   who to send it to M-III.  So --

17             THE COURT:  Yeah.  There will be times when you've

18   got to just rely on the reporting mechanism.  But I would

19   think if there's -- if there's an ability to notify tax

20   authorities, the parties should bill that in, do a

21   supplement.

22             MR. O'NEAL:  We'll discuss that.  I think the only

23   -- it'll be a careful communication because we would want to

24   be sure that --

25             THE COURT:  Of course.

1          MR. O'NEAL:  -- it's helpful to the taxing

2     authorities to know what they need to do.

3          THE COURT:  Right.

4          MR. SINGH:  Yeah.  Your Honor, I think we can work

5     something out on that.

6          THE COURT:  And related to that, if the next

7     provision -- well, it's the next provision in the summary,

8     but it appears in paragraph 8, which is the termination

9     provision.  Most of the benefits of this agreement happen

10    right away on the release date, but there's some ongoing

11    obligations.  And I didn't understand the -- the operation

12    of the termination provision, if Party A breaches the

13    agreement, this provision says that both parties' rights, as

14    they existed prior to the agreement, snapback.

15         MR. O'NEAL:  Correct, Your Honor.

16         THE COURT:  And it seems to me that if one party

17    breaches, the other party should have the option of saying,

18    I'm going to enforce this agreement or it should snapback.

19         MR. SINGH:  Well, yes, Your Honor.  Well, the

20    snapback, just the way it relates back to the release, the

21    release time only occurs if they pay.  So once they make the

22    payment, then the release kicks in.  So the way the snapback

23    works is either Transform doesn't pay, right, in which case

24    we snapback to our original rights or they pay and Transform

25    or some representative of Transform with authority, seeks to

Page 42

```
 1    claw back the payment itself.  It's not the remaining

 2    obligations, right, or any of the benefits that the estate

 3    is getting under the settlement, so if there's a clawback

 4    right.  I mean, there's a mutual snapback.  But essentially

 5    it all really ties to the $18.3 million, and if that is not

 6    paid --

 7              THE COURT:  Well, let's just say there's a $2

 8    million tax refund that Transform doesn't notify you about,

 9    doesn't take the necessary steps --

10              MR. SINGH:  Then I think that just a breach of

11    contract that we --

12              THE COURT:  I mean, I think it says each party

13    acknowledges and agrees that each other party shall obtain

14    and may assert and prosecute all of its APA claims for the

15    full amounts.

16              MR. SINGH:  Right.  Your Honor, but the lead in

17    says for the avoidance of doubt, if this agreement

18    terminates, which it only automatically terminates if they

19    don't pay within three days.

20              THE COURT:  Right.

21              MR. SINGH:  Or if the settlement amount, which is

22    the $12 million.  The adequate assurance deposit, any

23    amounts paid under the APA, the prior rulings of the injured

24    settlements are called back.  So if there was a dispute

25    relating to the tax refunds going forward, this provision
```

1    doesn't apply.  We would just have a breach or they would

2    have a breach of contract claimed against the estate, and we

3    would have one against Transform.  Again, it's essentially

4    to make sure that we get the benefit of the payment that's

5    required to be made now.

6              THE COURT:  I understand that.

7              MR. SINGH:  And we keep the prior payments.

8              THE COURT:  But, I mean, normally if someone

9    breaches, you often structure a right, including if the

10   release date doesn't occur.  I'm assuming it will, it's like

11   three days --

12             MR. SINGH:  Three days.

13             THE COURT:  -- from now, but assume it doesn't.

14   Shouldn't each party either have the option to either go

15   with this agreement or go back to square one?

16             MR. O'NEAL:  I think the issue, Your Honor, is

17   that we want certainty that we have an agreement.  If we

18   agree to the agreement, then we'll -- everybody will

19   preserve their rights, but we're not -- we don't want to

20   them eliminate the full benefits of the settlement.  You

21   would simply retain the portions of the settlement agreement

22   that haven't been breached.  And to the extent there's a

23   breach, then there would be a cause of action.  But this

24   language was actually very carefully negotiated.  It was

25   very important for a specific reason, which was that if we

Page 44

1    did have an approval order.  And, for some reason, there

2    wasn't a payment made, there would be a snapback.  The

3    snapback was very much negotiated to only deal with the

4    issue if there's a nonpayment or a clawback.

5              THE COURT:  Okay.  All right.  Do you agree with

6    that Mr. Dublin?

7              MR. DUBLIN:  Phil Dublin, Akin Gump for the

8    committee.  Yes, Your Honor, we understand your point, which

9    is in in three days, if Transform doesn't pay, the $12

10   million that we should have the option of going after them

11   for the $12 million or reinstating all the litigation.

12             THE COURT:  Right.

13             MR. DUBLIN:   We expect them to pay the money in

14   three days.  It wasn't something that we were overly

15   concerned about.  We were more concerned about future events

16   of what may happen with Transform for reasons we set forth

17   in our statement.

18             THE COURT:  And you're perfectly happy to be just

19   going back to square one as to those future events?  Having

20   the money in hand at that point.

21             MR. DUBLIN:  If we have the money in hand --

22             THE COURT:  As opposed to having it --

23             MR. DUBLIN:  -- and then there's a $2 million

24   dispute over a tax refund, then we'll go after the  million,

25   not reinstate all of the prior litigation and have to give

Page 45

1    back the $4 million.

2              THE COURT:  Right.  But, no, I'm just focusing on

3    the clawback point.  So you have the money in hand, and in

4    response to a clawback argument, you say, well, we have all

5    our claims.

6              MR. DUBLIN:  Yes.  Because the clawback really

7    focuses on a potential insolvency then for Transform.

8              THE COURT:  I understand.

9              MR. DUBLIN:  And then we have to give back that

10   money as a preference then we're going to want to upside the

11   amount of our potential claims back against Transform above

12   $12 million.

13             THE COURT:  Correct.  Good.  Okay.  All right.

14             MR. DUBLIN:  Thank you, Your Honor.

15             THE COURT:  And you're not really given any

16   specific property interests here, you're given payments.

17             MR. DUBLIN:  Correct.

18             THE COURT:  So that makes sense then.  All right.

19   Okay.  I think that -- okay.  Let me just double-check, but

20   I think that takes care of all my questions.  All right.  So

21   unless anyone has anything more to say on this motion, I

22   will grant the motion.  It involves -- well, the settlement

23   agreement that is, provides for a comprehensive settlement

24   of numerous litigation claims growing out of the asset

25   purchase agreement between the parties, many of which I had

Page 46

1    previously decided, but some of those were on appeal.  And

2    on appeal with respect to substantial sums at issue.  And

3    the remaining open portion of which presented difficult and

4    potentially risky determinations for the Debtors' estates.

5              Simply in light of the merits, it appears to me,

6    based on my knowledge of the litigation as well as, of

7    course, the facts that this motion is unopposed, after

8    review by parties who have not hesitated to make their

9    positions known in the case, that the settlement is a fair

10   resolution of the outstanding issues as far as the merits

11   are concerned.  In addition to that, it's clear to me that

12   the remaining open litigation issues, before me, involve

13   time-consuming and expensive determination mechanisms, even

14   with the appointment of the examiner.

15             And, well, obviously, appellate litigation would

16   be less expensive -- expensive delay over that set of

17   appeals as well.  Finally, there is a concern, given that

18   the Debtors, at this point, have a confirmed plan and

19   minimal staffing, as well as ongoing business risk with

20   respect to the other side -- Transform -- as to ultimate

21   collections should the Debtors prevail on all their

22   remaining open positions.  Given the immediate benefits of

23   the settlement, including substantial cash payments, and

24   that cessation of the ongoing litigation with me locking in

25   of the prior payments made by Transform, I have no

Page 47

1    difficulty in finding that this settlement is a fair and

2    reasonable resolution of the parties' dispute and in the

3    best interest of the estate and creditors.  So I will grant

4    the motion and enter the proposed order that was submitted.

5              MR. SINGH:  Thank you, Your Honor.  We'll submit

6    that today.  Your Honor, there is one housekeeping issue

7    with respect that's sort of related to this motion.  We did

8    file a motion in aid of execution of the plan that

9    authorizes, M-III, Mr. Meghji --

10             THE COURT:  I think I sent that in yesterday to be

11   entered.

12             MR. SINGH:  Perfect, Your Honor.  Thank you.  That

13   will allowing to sign the remaining pages and submit that to

14   the trustee.

15             THE COURT:  Right.  You can follow this lead, but

16   I sent it in yesterday afternoon.

17             MR. SINGH:  Thank you, Your Honor.  We'll take

18   care of that.

19             THE COURT:  Given that there were no objections.

20             MR. SINGH:  Yes.

21             THE COURT:  And the objection period had expired.

22             MR. DUBLIN:  Your Honor, Phil Dublin, Akin Gump,

23   for the Committee.  Two things.  One, sorry about my watch

24   going off.  I don't know how to control it, but I'll figure

25   it out before the next court.

Page 48

1          THE COURT:  That's all right.  Was it telling you

2     to walk around?

3          MR. DUBLIN:  It was telling me to leave so I don't

4     bother Your Honor while you were reading your ruling.  And

5     if it's okay, Your Honor, if we could be excused, we don't

6     have a role with the rest of the agenda.

7          THE COURT:  That's fine.  Sure.

8          MR. DUBLIN:  Thank you.

9          THE COURT:  Okay.  This is more of a reporting

10    issue or a status issue, Mr. Singh.  And you noted that some

11    of the representatives of the administrative expense

12    claimants contacted you on this motion.  As I view this

13    motion, this is a motion that brings cash into the estate.

14    The settlement doesn't allocate it anywhere, it brings cash

15    in.

16          MR. SINGH:  That's right, Your Honor.  It brings

17    in cash to allow us to sort of hit the minimum conditions

18    through the (indiscernible) that's really going to be the

19    main use of the funds at this point; although, you know, it

20    sort of just goes into the (indiscernible) estate, and we

21    use it for whatever we need it for, Your Honor.  But

22    frankly, it's really going to be allocated for

23    administrative expenses and distributions.

24          THE COURT:  Right.  And is that process ongoing,

25    as far as dealing with the administrative expense, creditors

Page 49

1    and --

2            MR. SINGH:  Yes.  There's a reconciliation process

3    that's ongoing with respect to the claims.  It didn't get

4    reconciled, you know, by the time of the first round.  We're

5    in discussions with Foley firm.  Mr. Labov is here as well.

6    We're in discussions with them in keeping them abreast about

7    the next second distribution.  We haven't exactly set down a

8    time for that, Your Honor, but we do anticipate that it'll

9    be in the next hopefully month or two is what we're aiming

10   to have it done, so the reconciliation process with the

11   parties, and that's moving along quite quickly.  And if

12   you'll recall, there's also the need for the -- or the

13   appointment of an administrative claims representative as

14   part of the settlement agreement.

15           Mr. Labov and his firm have been taking the lead

16   role in that, and they're corralling the administrative

17   creditors.  And I believe we do expect hopefully soon to

18   announce a representative and bring them up to speed

19   (indiscernible).

20           MR. LABOV:  Good morning, Your Honor, Paul Labov,

21   Foley & Lardner, on behalf of the administrative claims, the

22   ad hoc group.  Correct, the inbounding that Your Honor was

23   referring to came to our firm.  There was a half dozen to a

24   dozen questions as to how the settlement played into the

25   contribution, how the two meshed up.  We received pretty

Page 50

1    comprehensive answers from both M-III and the Debtors.  We

2    didn't need to ask additional questions.  We have no

3    objections at this time, and we continue to get information

4    from Mr. Singh and Mr. Meghji.

5              And so with respect to the admin representative,

6    the notice went out for the plan, per Your Honor's --

7    directed that the confirmation hearing.  We've given every

8    party until, I think, this Thursday.  Every party that

9    received an initial distribution until this Thursday to put

10   in their request for a particular administrative claims

11   representative.  We've received a couple of them so far.

12   We've received mostly questions about whether or not these

13   people are going to get paid.  But -- but -- which is

14   totally understandable, but -- but on Thursday, we'll finish

15   the process.  We'll put it to the committee, and we'll speak

16   to the Debtors to come up with this.

17             THE COURT:  Okay.  And the election procedure, the

18   opt-in, opt-out, say nothing procedure, that's completed at

19   this point.

20             MR. SINGH:  That, at this point, is completed, so

21   we know the buckets, Your Honor, who's opted in, who's opted

22   out, and who's in between.  And it's now -- and, Your Honor,

23   you know, if the Court prefers, we can certainly give an

24   update at the next hearing of kind of tracking --

25             THE COURT:  That's probably a good idea.  I mean,

1   related to that, and I know we're dealing with omnibus claim

2   objections later in the agenda.  But there was some back-

3   and-forth with Chambers last week about how it seemed

4   premature to deal with some of the 503(b)(9) issues --

5                 MR. SINGH:  Right.

6                 THE COURT:  -- without having sort of a

7   comprehensive approach to it.  So I think as was

8   contemplated in the confirmation hearing, I just wanted to

9   make sure that that process are ongoing so that those issues

10  can be dealt with efficiently.  So focusing for the next

11  omnibus hearing on where the Debtors stand with both the

12  reconciliation process, whether there is going to be a need

13  for litigation of those issues --

14                MR. SINGH:  Certainly, Your Honor.

15                THE COURT:  -- that's important too.

16                MR. SINGH:  We can -- we can provide an update on

17  where we are.  I asked (indiscernible) confirmation on

18  essentially on getting to the effective date and giving the

19  Court an update on that as well as the claims process,

20  generally speaking.

21                THE COURT:  Okay.  And then -- I don't think this

22  was stated on the record.  But most of the money that's

23  coming in as a result of the settlement, wasn't in the

24  projections that I had at the confirmation hearing.

25                MR. SINGH:  That's correct.  So this is all, you

Page 52

1    know, upside at this point.

2           THE COURT:  Right.  Okay.  All right.  Thank you.

3    All right.  So should we then move to the Hain Capital --

4           MR. SINGH:  Yes, Your Honor.  I think some folks

5    are going to leave, including some of my colleagues, if

6    that's okay, Your Honor.

7           THE COURT:  Okay.  Sure.

8           MR. SINGH:  And, Your Honor, I just got an update

9    from Mr. Griffith.  Your Honor, they're double-checking on

10   whether there were payments of those amounts.  We understand

11   that (indiscernible) clear, but we'll have the final answer.

12   I think maybe some of those or all of those may have been

13   paid, but may not have been intended to be paid.

14          THE COURT:  All right.

15          MR. SINGH:  So I don't have all the records in

16   front of me, but they're figuring that out right now.  And,

17   you know, I think we understood the Court's ruling that that

18   was not -- that's probably not something that they should

19   have been paying for.

20          THE COURT:  Right.  Right.

21          MR. SINGH:  So I think we can adjust -- adjust

22   that as soon as I get confirmation from Mr. (indiscernible)

23   who just stepped out.

24          THE COURT:  Okay.  Very well.

25          MR. SINGH:  Okay.  Thank, Your Honor.  Your Honor,

Page 53

```
1   that does bring us to the next matter on the agenda, which

2   is the stipulation and settlement agreement between the

3   estate, Transform and Hain Capital.  Your Honor, we did have

4   an objection to this motion, which is why it's on for

5   hearing -- Winia Daewoo -- and I think, Your Honor, the

6   stipulation is pretty straightforward, this related to an

7   assumption dispute.  And at the end of the day from the

8   estate's perspective, we're getting, I think, $250,000 back

9   to the estate, and we have to deal with the claim because it

10  was not assumed, and we looked at it pretty closely.  And we

11  believe that it was not assumed.  And there's no objection

12  to the merits of the stipulation by anybody.  The Winia

13  Daewoo objection really relates to one provision in the

14  settlement agreement, which is simply a reservation of

15  rights that says that the Debtors -- Transform, and Whitebox

16  -- are reserving rights with respect to parties that

17  (indiscernible) is not a party to the settlement agreement.

18          And I think that's where we have the objection by

19  Winia Daewoo who now will confirm for the Court as did in

20  our reply, we're not seeking any court approval or blessing

21  with respect to the merits of those claims, whether they're

22  valid, should be deemed release, et cetera.  They are what

23  they are, all we're saying is that there was an intended

24  release of Winia Daewoo here.  And if there's a later

25  dispute that comes up in another court, that court or this
```

1    court will address that issue.

2              THE COURT:  Okay.

3              MR. SINGH:  So I'm happy to cede the podium to the

4    objecting party.

5              THE COURT:  Okay.

6              MR. CLARK:  Your Honor, Perry Clark for Winia

7    Daewoo.  The issue here is that the portion that we object

8    to reads the settlement does affect, restrict, implicate or

9    impair the rights that each of the settling parties may have

10   with (indiscernible) claim.  And our position at base is

11   that to the extent the settlement affects the rights of

12   these parties, that the effect should be determined by

13   whatever tribunal is adjudicating these claims.  So the

14   extent it would -- the parties are taking a "vanilla"

15   reservation of rights, you know, there is language in this,

16   where Debtors and Transform are mutually reserving their

17   rights.  And our reading of this, extends beyond that in an

18   attempt to say that this settlement cannot be used to

19   restrict our inherent rights.  And our feeling is and

20   manifestation is that there was litigation brought

21   potentially by the settling parties.  And our intention

22   would be depending on what those claims are to use the

23   stipulation and settlement to potential reduce or eliminate

24   the liability my client for those claims.

25             THE COURT:  So you're saying it's not really a

Page 55

1    reservation of rights, it's more than that.

2            MR. CLARK:  That is -- that's what we're saying.

3    Because the reservation of rights, I mean, and certainly you

4    can reserve a right.  But our position is that this

5    stipulation may well implicate, it may well impair, it may

6    well reduce the recovery they could get for those rights,

7    and that's the genesis of the objection.

8            THE COURT:  On the -- I'm not sure -- this is just

9    to be a so ordered stipulation, right, as opposed to a

10   separate order?

11           MR. SINGH:  That's right, Your Honor.

12           THE COURT:  Do the parties have any problem in

13   saying whether in Section -- paragraph 6 saying that Hain,

14   the Debtors and their estates, and Transform fully reserve

15   any rights, claims or defenses against any third parties,

16   including against Winia Daewoo, and do not intend by

17   entering into this stipulation to waive any such rights,

18   including, but not limited to potential Chapter 5 causes of

19   action?  You know, carry on with the rest of the paragraph.

20   It's the first -- it's the first clause that's really the

21   issue here, does not affect -- it might affect.  I mean, I

22   haven't decided that yet.

23           MR. SINGH:  Your Honor, I think we're fine with

24   that revision.  I've just gotten nods from the parties.

25           THE COURT:  Okay.  All right.

```
 1              MR. LABOV:  That's the whole point here was just

 2    to --

 3              THE COURT:  Just to reserve all rights?

 4              MR. LABOV:  Yeah, right, exactly.

 5              THE COURT:  All right.  And defenses, et cetera?

 6              MR. SINGH:  Right.  Exactly.

 7              THE COURT:  Okay.  So I think we could deal with

 8    that.  I think we can revise it to reflect that.  I'm not --

 9    I mean, I don't -- as an S & E, I'm not sure how this would

10    affect in a good way -- Winia Daewoo -- but that's for

11    another day.

12              MR. SINGH:  Thank you, Your Honor.

13              THE COURT:  Okay.

14              MR. SINGH:  So we can make that revision and

15    circulate it to counsel (indiscernible).

16              THE COURT:  All right.  I think I got it right

17    when I was saying it out.  So you could just get the CD of

18    this and replay it.

19              MR. SINGH:  Yeah.  I think we got the gist of it

20    at least to --

21              THE COURT:  Okay.  I don't have any problem with -

22    - if it encouches the reservation, in leaving in the

23    language that begins with the phrase including, but not

24    limited to, to the end of the paragraph, it just should be

25    turned into a reservation or rights and defenses.
```

```
 1              MR. SINGH:  Right.

 2              THE COURT:  Yeah.

 3              MR. SINGH:  Right.  It's a reservation of rights

 4    and not intended to release, right.

 5              THE COURT:  Yeah, there's no intent to release,

 6    yeah.

 7              MR. SINGH:  I think that's --

 8              THE COURT:  Okay.  It may Winia Daewoo -- they

 9    argue, well, that's fine, but the legal effect is to

10    release, that's a separate issue.

11              MR. SINGH:  Okay.

12              THE COURT:  Which isn't being decided.

13              MR. SINGH:  And, Your Honor, I misspoke, the

14    payment actually goes to Hain, but it reduces their

15    administrative claim against --

16              THE COURT:  Yeah.  Their claim is -- their

17    previously agreed claim is further reduced by the 250,000.

18              MR. SINGH:  That's exactly right.  It doesn't come

19    to --

20              THE COURT:  And as far as the merits go, the

21    dispute was really over whether Transform should be deemed

22    to have assumed the agreement for the period that it was

23    being performed.  And based on the pleadings, and, again,

24    the absence of an objection on the merits, the $250,000

25    payment, which indirectly benefits the Debtors' estate, it
```

Page 58

1    appears, to me, to be a fair settlement of that issue.

2              MR. SINGH:  Thank you, Your Honor.  We'll submit a

3    revised stipulation.

4              MR. CLARK:  May I be excused, Your Honor.

5              THE COURT:  Yes.

6              MR. SINGH:  Your Honor, that then takes us to --

7    we do have a few -- apologies -- I just checked with -- Your

8    Honor.  We do have a few omnibus objections; although, going

9    forward I (indiscernible), Your Honor, my colleague Phil

10   DiDonato is going to handle this.

11             THE COURT:  Okay.

12             MR. DiDONATO:  Good morning, Your Honor, Phil

13   DiDonato, Weil, Gotshal & Manges, for the Debtors.  We have

14   five omnibus claim objection going forward today, all of

15   them uncontested.

16             THE COURT:  And these are one that had previously

17   been noticed, and you're just cleaning up some aspects of

18   the claims that had not been already dealt with in prior

19   orders?

20             MR. DiDONATO:  Exactly.  So we filed notices of

21   adjournment on these claims just to give us more time to

22   work out with the creditors the open issues.  And so we're

23   going forward today because we've determined that we should

24   go forward with (indiscernible) parties.  So I'm happy to

25   proceed however Your Honor would like.  I can go through

Page 59

1    each of these individually or we are prepared to submit

2    orders for each of these.

3              THE COURT:  Well, I'm going by the agenda, plus in

4    one case, an e-mail that came in after the agenda which said

5    that it turned out that the Microsoft claim had already been

6    dealt with in a prior order.  So I'll just go -- I'll just

7    mention each omnibus objection, the claims it's going to

8    pertain to.  And if someone is on the phone, they can speak

9    up, if they disagree.  But on the first omnibus objection,

10   the matters now have been resolved with regard with the Dun

11   & Bradstreet claims and the LG Electronics claims, and

12   you'll be submitting an order consistent with that.

13             MR. DiDONATO:  Yes.

14             THE COURT:  Okay.  On the first omnibus objection,

15   the first was on satisfied claims.  On the fifth omnibus

16   objection, it's reclassification to general unsecured, and

17   that's going forward on an uncontested basis with respect to

18   the Whitebox Asymmetric Partners response.  On the sixth

19   omnibus objection, which again, was the satisfied claims

20   basis, it turns out Microsoft had already been dealt with on

21   an uncontested basis in a prior order and the Transform

22   Holdco is now resolved in light of the settlement.  And then

23   with regard to the last one covered here, on the sixth,

24   which is Dart Warehouse Corporation, that also is now

25   uncontested as being satisfied, so you can e-mail that

Page 60

1    order.  The seventh omnibus objection, I don't know that the

2    names of the parties -- this is on amended and superseded

3    claims.  And it's going forward on an uncontested basis with

4    respect to Claim Numbers:  4744, 1850, 12757, 237463 -- I'm

5    sorry -- 6632, 10065, 1748, 16615, 1544, 5182, and 14489.

6    Let me just confirm with you, you've given each of those

7    claimants notice of this schedule hearing?  The need for

8    them to appear and contest if they weren't prepared to go

9    forward, but it's uncontested by them?

10            MR. DiDONATO:  Correct.

11            THE COURT:  Okay.  And then on the eighth omnibus

12    objection, which is on duplicate claims, the -- one of those

13    has been dealt with by notice of withdrawal, and it's going

14    forward on an uncontested basis with respect to Claim

15    Numbers:  4496, 12489, 1630, 1693, and 5109.  And I guess

16    it's being adjourned as to David Tomczak and Infiloom.

17            MR. DiDONATO:  So I believe the Infiloom and David

18    Tomczak -- those claims are actually withdrawn under the --

19            THE COURT:  Notice of withdrawal.

20            MR. DiDONATO:  Notice of withdrawal at 6378.

21            THE COURT:  All right.  Fine.  So it's just as to

22    the other five that I went through.  And, again, you gave

23    them notice of this hearing, and the need to pursue their

24    objection in light of the Debtors, and they have not

25    contested.  So I will enter each of the orders as they're

Page 61

1      unopposed after due notice, so you can e-mail them to

2      Chambers.  Thanks.

3              MR. DiDONATO:  Thank you, Your Honor.

4              MR. SINGH:  Your Honor, that next takes us to the

5      automatic stay matters.  Item Number 20.  I'm going to turn

6      this over to Mr. Barefoot who's handling this motion for

7      Transform.

8              THE COURT:  Okay.

9              MR. BAREFOOT:  Good morning, Your Honor.  Luke

10     Barefoot from Cleary Gottlieb Steen & Hamilton for Transform

11     Holdco.  Your Honor, Agenda Item Number 20 which is styled

12     as a motion for relief in the automatic stay at Docket 6212

13     is going forward today only a status conference and a

14     scheduling conference.  I'm not sure if Your Honor's

15     reviewed the motion papers given the posture.

16             THE COURT:  No.  I have, and this is the motion by

17     Nina and Gerald Greene, right?

18             MR. BAREFOOT:  Correct.  As class Plaintiffs in a

19     civil action that was filed in 2017 in the Northern District

20     of Illinois on behalf of a class of purchasers of warranty

21     and protection agreements.

22             THE COURT:  Right.

23             MR. BAREFOOT:  Your Honor, although, it's styled

24     as a lift-stay motion, it actually, at least in our view,

25     seeks a little bit more than that, in that it doesn't

Page 62

1    implicate the Debtors or seek to pursue any claims against

2    the Debtors, but rather seeks an interpretation of the APA

3    that would allow pursuit of that existing litigation against

4    Transform.

5                THE COURT:  Well, I guess, that was a question I

6    had.  It wasn't as clear to me as it was to you that that

7    was what the movements were seeking as opposed to just being

8    careful to make sure that they could proceed against

9    Transform.  And then they make their case, whatever it was,

10   in the District Court in Illinois as to whether they had

11   such a claim.

12               MR. BAREFOOT:  I mean, Your Honor, I think we made

13   -- I don't think that's a live dispute because we do have a

14   proposed schedule and resolution to address the motion on

15   those grounds.  I'm certainly, from our perspective, Your

16   Honor does have exclusive jurisdiction over interpretation

17   of the APA and the sale order and enforcement of the

18   protections those were intended to give to Transform as a

19   free and clear purchaser.

20               THE COURT:  Because of the free -- right.  Okay.

21   So it's really not a stay issue as opposed to a free and

22   clear issue.

23               MR. BAREFOOT:  That's certainly our -- our

24   perspective, Your Honor.  But I don't want to get ahead of,

25   you know, the merits of the issues.  I really just wanted to

Page 63

1    address what I think is a proposed schedule to resolve the

2    dispute before Your Honor.

3            THE COURT:  Can I -- when you say "proposed," is

4    it proposed by Transform or by both sides?

5            MR. BAREFOOT:  What I'm about to say as to

6    scheduling is agreed by both sides subject to Your Honor's

7    approvals on the dates for the process.

8            THE COURT:  Okay.

9            MR. BAREFOOT:  Your Honor, we've agreed to adjourn

10   the hearing on the merits, to complete some limited

11   discovery, and to schedule an evidentiary hearing.  Our

12   proposal -- and I will --

13           THE COURT:  On whether the APA actually covers

14   this or not.

15           MR. BAREFOOT:  As teed up in their motion.  Yes,

16   Your Honor.

17           THE COURT:  Okay.

18           MR. BAREFOOT:  And in our objection and the

19   related declarations.

20           THE COURT:  Okay.

21           MR. BAREFOOT:  Your Honor, first in terms of the

22   limited discovery, Transform has agreed to limited document

23   discovery to be produced by Transform solely on the topic of

24   any contemporaneous discussions between the Debtors and

25   Transform on the topic of this Green versus Sears class

Page 64

```
1    action during the course of negotiations on the APA.  That

2    document discovery is subject to Transform's agreement on

3    reasonable search terms and parameters.

4           Second, Transform, following the production of

5    those documents, will produce Mssrs. (indiscernible) and

6    Rickert for half-day depositions, each on mutually agreeable

7    dates in Hoffman Estates.  And then following that, Your

8    Honor, the parties would propose to submit simultaneous

9    briefing of no more than 10 pages one week prior to a

10   hearing date to be set by Your Honor.  Backing up against

11   that -- the time that we think it will take to complete that

12   limited discovery, we would ask for that evidentiary hearing

13   to be set sometime in late March at the Court's convenience.

14   We're happy to have it on an omnibus date but given that

15   it's an evidentiary hearing, it may be more convenient if

16   there were other times on the Court's calendar.

17          THE COURT:  Okay.  You have -- I just want to hear

18   from the other said before I ask questions.

19          MR. BAREFOOT:  Thank you, Your Honor.

20          THE COURT:  Okay.

21          MS. DAUL:  Good morning, Your Honor.  Janice Daul

22   on behalf of the Greenes.

23          THE COURT:  Good morning.

24          MS. DAUL:  As you stated earlier, it's correct

25   that our motion for relief from the stay -- we don't agree
```

1    with Mr. Barefoot's characterization of it, that it's

2    seeking more than a stay relief.  Our goal in seeking the

3    stay relief was simply to make sure that we were going to

4    run a valid stay and kind of reviving that class action in

5    Illinois.  And to the extent that Transform objects to our

6    interpretation of the EPA, then that issue could be dealt

7    with either in Illinois or I'm conscious of the fact that

8    this Court has reserved jurisdiction (indiscernible) so --

9              THE COURT:  Well, that's the real issue, I think,

10   which is -- I do agree with you that in the lift stay motion

11   you're just seeking to lift the stay.

12             MS. DAUL:  Correct.

13             THE COURT:  But Transform is pointing out that I

14   have an order that in addition to authorizing the Debtors to

15   enter into it before the EPA has free and clear language in

16   it, and I guess what Mr. Barefoot has proposed which I

17   gather has been agreed to is that the parties, rather than

18   having an extra layer of litigation in Illinois where

19   Transform would tell the Illinois court or maybe come in and

20   tell me that they're violating my sale order, just to deal

21   with the issue in front of me to avoid that extra step.

22             MS. DAUL:  Right --

23             THE COURT:  Is that right?  You're amenable to the

24   schedule that's just been laid out?

25             MS. DAUL:  Yeah.  I mean, I think that point that

Page 66

1    there is a fair one and that Your Honor just raised --

2              THE COURT:  Okay.

3              MS. DAUL:  -- so that's why we have agreed to the

4    schedule that Transform set forth.

5              THE COURT:  Okay.  So I have two points.  It's

6    fine with me to go through that discovery process and

7    eventually end up with an evidentiary hearing.  I think it's

8    going to be hard to get a date at the end of March.  I have

9    a couple trials scheduled in March that will actually be

10   fairly lengthy.  But you can check with Ms. Lee.  I don't

11   think this will be a lengthy trial.  I think it's like a day

12   -- actually probably less than a day but it will probably

13   will go for the morning through lunch.

14             To prepare to make that trial efficient, just as

15   with the Transform litigation that was recently settled, the

16   parties should, when they're memorializing this, also put in

17   that they will submit the testimony of witnesses under their

18   control by declaration or affidavit a week before the

19   evidentiary hearing with the affiant to be present for cross

20   and redirect as it would go after that.

21             And then, secondly, that they should be -- confer

22   and use their best efforts to agree on the admissibility in

23   some of the exhibits as they can and submit a joint deemed

24   admitted exhibit book a week before the trial as well.  You

25   can do a separate book if there are exhibits where there's a

Page 67

1    dispute as to admissibility and I'll just have it there to

2    streamline the trial.

3            The only other thing I'll say is that I'm

4    assuming, given that you're going forward on this basis,

5    this is not one of the APA issues that's resolved by the

6    settlement I just approved.  Or is it?  I don't know.  I

7    don't want to spend a time but that's an issue.

8            MR. BAREFOOT:  Your Honor, Luke Barefoot for

9    Transform.  That is certainly not the case that --

10           THE COURT:  Okay.

11           MR. BAREFOOT:  -- the scope of the release actions

12   relates back to the adversary pleadings and motions to

13   enforce that were before Your Honor.

14           THE COURT:  All right.  So even though this is --

15   deals with the issue of excluded liabilities and payables,

16   it's not covered.

17           MR. BAREFOOT:  Correct, Your Honor.

18           THE COURT:  All right.

19           MR. BAREFOOT:  It really is an issue between us

20   and the third-party litigation claimants.

21           THE COURT:  Well, sometimes that's the case with

22   the other stuff, too.  I just wanted to make sure.  I didn't

23   want to be wasting time --

24           MR. BAREFOOT:  Understood, Your Honor.

25           THE COURT:  -- and have that argument come up at

Page 68

1   the last minute.

2            MR. BAREFOOT:  And certainly understood on your

3   directions.  We're familiar with those procedures and we

4   will work with your chambers to get an acceptable date.  I

5   think we'll probably end up going later rather than earlier.

6            THE COURT:  Well, earlier's even worse.

7            MR. BAREFOOT:  Okay.

8            THE COURT:  So.  Because the first trial starts on

9   the 2nd and goes through the 6th, I think.  And then there's

10  another one that -- right now, they're starting, I think, on

11  the 20th and going -- they've slotted a few days so -- and I

12  have omnibus hearings on the 16th and 17th.  So maybe

13  there's -- maybe she does have time at the end of the month,

14  but I -- anyway just check with her.  So you can submit a

15  pre-trial order.  I'm not going to have to have another pre-

16  trial conference on this so don't worry about that.  Just

17  have the trial date and the schedule you talked about with

18  the additions that I just mentioned.

19           MR. BAREFOOT:  Understood, Your Honor.  We'll

20  submit that on notice to present.

21           THE COURT:  Okay.  Great.

22           MR. BAREFOOT:  Thank you, Your Honor.

23           THE COURT:  Okay.

24           MS. DAUL:  Thank you, Your Honor.

25           THE COURT:  Okay.  Thank you.

1          MS. DAUL:  May I be excused?

2          THE COURT:  Yes.

3          MR. DIDONATO:  For the record, Phil DiDonato,

4   Weil, Gotshal.  The last item on the agenda, Your Honor, is

5   the motion from Abel Santiago early for the automatic stay

6   filed at ECF Number 4640.

7          THE COURT:  Right.

8          MR. DIDONATO:  And the Debtors had previously

9   filed an objection to this in November when we were here

10  last before you on the stay matters at ECF Number 6006.  And

11  today we're requesting that the motion be denied

12  (indiscernible)

13         THE COURT:  Okay.  Is Mr. Santiago's counsel on

14  the phone?  No?  Okay.  I've reviewed the pleadings.  In

15  essence, the Debtor's argument is that because there's a $5

16  million deductible -- I'm sorry -- because in this case, on

17  top of the $5 million deductible, the coverage has been

18  expired or is expired, that this would be in essence a worse

19  than pyrrhic victory for Mr. Santiago to have the stay

20  lifted because the condition for lifting the stay is that he

21  limit his recovery to insurance.  There's no insurance so

22  poor Mr. Santiago would have waived any claim he had against

23  the Debtors and not get anything.  In addition to that,

24  given the $5 million deductible, to the extent the Debtors

25  would have to defend, they would expending hard dollars that

Page 70

1    they would properly use, at least at this point, for more

2    senior claims -- administrative expenses.  So in weighing

3    the Sonnax Factors under in re Sonnax Industries, Inc, 907

4    F2nd 1280, at 1286, and primarily the most important ones,

5    which is the burden on the estate and third parties, in

6    prosecuting or liquidating an unsecured claim, which would

7    be at a substantial cost with very little to no likelihood

8    of any benefit to the claimant, there really is not

9    sufficient cause to lift the stay here -- to let the

10   litigation proceed.

11           As to the importance of the cost and lack of

12   benefit to the claimant, see in re Chittur & Associates, PC,

13   28 U.S. District Lexus 213968 at page 7, STNY, December 18,

14   2018, and in re SunEdison, Inc, 557 B.R.503 309 Bankruptcy

15   STNY 2060, so I think it's probably why counsel for Mr.

16   Santiago hasn't appeared.  He's realized that he would get

17   nothing out of this litigation other than causing some pain

18   to the Debtors and their estate which is not a proper basis

19   to lift the stay.  So you can email that order to chambers.

20           MR. DIDONATO:  We will, Your Honor.

21           THE COURT:  I do -- there's -- this -- these

22   Debtors don't have any sort of personal injury claim

23   procedures in place, right, where there's -- where there

24   might be some insurance?  There are some years where's still

25   some insurance?

1           MR. DIDONATO:  They are -- I believe the pre-

2    petition period in 2018 before the petition date -- that

3    period and then there's also a separate auto liability

4    policy separate from the general liability police where we

5    have lifted the stay for those creditors.

6           THE COURT:  Right.  So I did enter an order

7    allowing you to do that where the Debtors aren't bearing a

8    burden because of the large deductible and it's just going

9    against the insurance.  Is there a -- the reason I'm saying

10   is -- your objection was an omnibus objection that objected

11   to three motion, all that dealt with the more recent policy

12   and they were all well taken.  I just didn't know whether

13   they are lots of other people for that policy year and

14   whether anything is being done as far as the year where

15   there is some insurance but there's a high deductible.

16          MR. DIDONATO:  So I think with regard to that

17   specific year, I know there a number of claimants out there

18   -- I can't speak to off the top of the head whether or not

19   they're going after that specific time period where there

20   may be insurance available.

21          THE COURT:  Okay.  Could I -- my question is,

22   you're covering the people who should be covered with the

23   consensual lift stays which I've been entering periodically

24   on a stipulated basis.  If there is insurance to be had -- I

25   don't know if it makes sense to reach out to the insurer and

1    say, look, you know, we can start proposing settlements

2    here.  But I -- on the other hand, if it's going to get

3    eaten up by the first settlement then it doesn't -- you have

4    to give some thought to it, and I'm not encouraging you to

5    spend a lot of time and effort on it, but it may be worth at

6    least taking a look to see who's in this year, what the

7    insurance that's left is, and maybe spending a few hours to

8    think about how to deal with it on an efficient basis

9    through a process that the insurer that can be involved in

10   without spending a lot of, you know, trial money or

11   anything.  I mean, you want to be able to use it to the

12   extent you can.

13            MR. BAREFOOT:  Sure.

14            THE COURT:  I'm not telling you, again, to spend a

15   lot of money on it, but if the insurer's amenable to just

16   like, okay, you know, submit your claim form to us.  We'll

17   review it.  If you'll settle it for X in -- within this

18   period and there are ten of you and you're not -- you're --

19   you know, the settlements won't exceed the coverage.  It's a

20   fast way to get it over with.  Maybe they'll -- you know,

21   maybe that is worth pursuing.

22            MR. DIDONATO:  I think we can do that, Your Honor.

23            THE COURT:  Okay.

24            MR. SINGH:  Your Honor, I think that takes care of

25   the agenda.  And finally, I have an answer on --

Page 73

1              THE COURT:  Oh, all right.

2              SINGH:  -- this record application.  They were

3    paid for that period at the 80 percent which was $460,000

4    and I've confirmed with Lazard that they will -- that they

5    understand that that amount will not be approved and that

6    we'll either just to docket it on the remaining amount that

7    has to be paid on or they'll get the money back.

8              THE COURT:  Well, I'm not sure there is any -- oh,

9    yeah, there is remaining.

10             MR. SINGH:  There is -- yeah, there is the one.

11             THE COURT:  so that can just be deducted.

12             MR. SINGH:  Yeah.

13             THE COURT:  And you can deal with that in the

14   order.

15             MR. SINGH:  Yeah, exactly.  Exactly.

16             THE COURT:  That's great.

17             MR. SINGH:  We'll do that.  So that was -- I think

18   we've got a file -- final answer I'm going to file these,

19   Your Honor.

20             THE COURT:  Okay.  Very well.  Thank you.

21             MR. SINGH:  That takes care of it.

22             THE COURT:  Okay.

23             MR. SINGH:  Thank you.

24             (Whereupon these proceedings were concluded at

25   11:20 AM)

Page 74

1                          I N D E X

2

3                          RULINGS

4                                        Page      Line

5

6    Lazard Fee Motion Granted           15        16

7    Alvarez & Marsal Motion Granted     16        19

8    PrimeClerk Motion Granted           16        21

9    Fee Examiner's Motion Granted       17        6

10   Paul Weiss Motion Granted           18        2

11   Young, Conaway Motion Granted       18        5

12   Akin Gump Motion Granted            19        14

13   Weil Gotshal Motion Granted         19        14

14   FTI Consulting Motion Granted       19        10

15   Debtors' Motion for Approval of a 9019

16   Settlement with Transform Holdco LLC Granted 24    17

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5   Sonya

6   Ledanski Hyde

7

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2020.01.29 16:43:17 -05'00'

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  January 29, 2020

**[& - 6214]**                                                    Page 1

| & |
| --- |
| **&**  2:10,13,18,20 3:19,22 4:2,3 5:1 5:6,10,14 8:3,12 9:1,8,16 16:18 49:21 56:9 58:13 59:11 61:10 70:12 74:7 |

| 0 |
| --- |
| **0.00**  2:8 4:23 |

| 1 |
| --- |
| **1**  2:6,19 3:3,13,20 4:11,20 5:5,13 17:14,17,20,23 18:4 26:19 |
| **1,103,980.00**  4:13 |
| **1,446.45**  4:13 |
| **1.4**  14:14,19 |
| **10**  19:23 20:1,14 26:23 64:9 74:14 |
| **10,388,784.25**  5:16 |
| **10/14/2019**  2:14 |
| **10/15/2018**  2:13 |
| **10/23/2019**  6:18 6:23 |
| **10/31/2019**  2:7 3:5 3:15,23 4:4,13,22 5:7,16 |
| **100**  30:10 |
| **10006**  9:11 |
| **10016**  9:4 |
| **10036**  8:15 |
| **10065**  60:5 |
| **10153**  8:6 |
| **10601**  1:14 |
| **10:00**  2:2 6:18,23 |
| **10:01**  1:17 |
| **10th**  24:9 |
| **110,924.96**  2:14 |
| **11501**  75:23 |

**11:20**  73:25
**12**  26:18 42:22 44:9,11 45:12
**12.70**  2:22
**12489**  60:15
**12757**  60:4
**128.71**  4:5
**1280**  70:4
**1286**  70:4
**13**  23:16,21 26:20
**139**  30:12
**14**  2:12 23:25 74:12,13
**141,363.50**  2:8
**14489**  60:5
**15**  2:12 31:22 74:6
**151**  34:24
**151.5.**  30:6
**1544**  60:5
**16**  74:6,7,8
**160**  27:13 29:20
**1630**  60:15
**166**  30:3,4 31:25 34:21,22
**16615**  60:5
**1693**  60:15
**16th**  68:12
**17**  74:9,16
**1748**  60:5
**17th**  68:12
**18**  70:13 74:10,11
**18-23538**  1:3
**18.3**  27:7 28:12 42:5
**1850**  60:4
**19**  74:7,12,13,14
**19103**  9:19

| 2 |
| --- |
| **2**  27:16 35:22,22 36:3 42:7 44:23 74:10 |
| **20**  61:5,11 |

**2017**  61:19
**2018**  2:12 70:14 71:2
**2019**  2:6,6,12,19 2:20 3:4,4,13,13 3:20,21 4:11,11 4:20,21 5:5,5,13 5:14
**2020**  1:16 2:2 75:25
**2024**  39:15,16 40:9,10
**2060**  70:15
**20:46**  28:21
**20th**  68:11
**21**  74:8
**21,900,000**  2:14
**213968**  70:13
**23,128.50**  4:5
**237463**  60:4
**24**  74:16
**248**  1:13
**250,000**  53:8 57:17,24
**276,422.10**  3:24
**28**  1:16 2:2 70:13
**28th**  24:9
**29**  75:25
**2nd**  68:9

| 3 |
| --- |
| **30**  2:20 |
| **300**  1:13 75:22 |
| **309**  70:14 |
| **31**  2:6 3:4,13,21 4:11,21 5:5,14 |
| **318,470.97**  5:8 |
| **31st**  28:7 |
| **328**  13:17,18 16:12 |
| **330**  75:21 |
| **366**  26:24 |
| **3900**  9:18 |

| 4 |
| --- |
| **4**  45:1 |
| **4,801.46**  3:6 |
| **446,260.50**  3:6 |
| **4496**  60:15 |
| **45**  27:11 |
| **460,000**  73:3 |
| **4640**  69:6 |
| **4744**  60:4 |
| **4775**  6:13 |

| 5 |
| --- |
| **5**  55:18 69:15,17 69:24 74:11 |
| **5,384,047.00**  5:7 |
| **5.3**  26:21 27:5 |
| **5.5**  26:8 |
| **500,000.00**  4:23 |
| **503**  29:15 30:9,17 33:12 51:4 |
| **5031**  6:19 |
| **507**  13:21 19:4 35:13 |
| **5075**  6:25 |
| **5100**  7:3 |
| **5101**  7:7 |
| **5109**  60:15 |
| **5182**  60:5 |
| **536,326.00**  3:23 |
| **55**  30:14,14,15 36:25 |
| **557**  70:14 |

| 6 |
| --- |
| **6**  55:13 74:9 |
| **6,877.50**  2:22 |
| **6006**  69:10 |
| **6137**  2:8 |
| **6138**  2:15 12:25 |
| **6183**  2:23 |
| **6212**  7:10,13 61:12 |
| **6214**  3:6 |

| | | |
|---|---|---|
| **6215** 3:16 | **907** 70:3 | **adjourned** 60:16 | 37:18,24 39:6 |
| **6225** 3:24 | **92** 31:21 | **adjournment** | 41:9,13,14,18 |
| **6226** 4:5 | **94303** 8:23 | 58:21 | 42:17 43:15,17,18 |

**6215** 3:16
**6225** 3:24
**6226** 4:5
**6229** 4:14
**6230** 4:23
**6231** 5:8
**6232** 5:17
**6326** 23:21
**6327** 6:4
**6366** 7:13
**6378** 60:20
**6394** 6:9
**6395** 6:9
**6406** 2:2
**6632** 60:5
**675,032.56** 5:16
**6th** 68:9

**7**
**7** 30:16 70:13
**7/1/2019** 2:7,22
3:5,14,23 4:4,12
4:22 5:7,15
**767** 8:5
**77** 30:17 31:15,24
31:25

**8**
**8** 41:8
**80** 73:3
**825** 8:22
**84** 30:16
**877,382.00** 3:15
**892.33** 3:15

**9**
**9** 29:15 30:9,17
33:12 51:4
**9/19/2019** 6:19
**9/26/2019** 6:25
**9/30/2019** 2:22
**90** 9:3
**9019** 5:21 6:2
23:18 24:21 74:15

**907** 70:3
**92** 31:21
**94303** 8:23

**a**
**a.m.** 2:2
**abel** 69:5
**ability** 40:19
**able** 25:17 38:10
72:11
**abreast** 49:6
**absence** 57:24
**acceptable** 25:4
68:4
**account** 20:2,3,8
27:12
**accounting** 29:5
33:15
**accrued** 28:17
**accurate** 75:4
**acknowledges**
42:13
**action** 43:23
55:19 61:19 64:1
65:4
**actions** 67:11
**actual** 3:12 4:19
5:13 31:8,9 34:5
**ad** 49:22
**added** 26:7
**addition** 26:21
27:8 36:23 46:11
65:14 69:23
**additional** 50:2
**additions** 68:18
**address** 19:24
24:6 54:1 62:14
63:1
**addressed** 20:16
23:4
**addressing** 23:19
**adequate** 42:22
**adjourn** 63:9

**adjourned** 60:16
**adjournment**
58:21
**adjudicating**
54:13
**adjust** 52:21,21
**admin** 20:8 50:5
**administrative**
3:2 19:4 24:3
48:11,23,25 49:13
49:16,21 50:10
57:15 70:2
**admissibility**
66:22 67:1
**admit** 25:20
**admitted** 25:23
66:24
**adversary** 67:12
**advisor** 4:8 13:13
**affect** 54:8 55:21
55:21 56:10
**affiant** 66:19
**affidavit** 66:18
**affiliates** 9:9
**afternoon** 47:16
**agenda** 2:1 12:8
12:10 13:11 23:17
48:6 51:2 53:1
59:3,4 61:11 69:4
72:25
**agent** 3:2
**aggregate** 31:21
**agree** 43:18 44:5
64:25 65:10 66:22
**agreeable** 64:6
**agreed** 34:5,14
36:24 37:15 57:17
63:6,9,22 65:17
66:3
**agreeing** 28:14
**agreement** 5:22
6:3 23:6 26:15
29:12 31:20 36:16

37:18,24 39:6
41:9,13,14,18
42:17 43:15,17,18
43:21 45:23,25
49:14 53:2,14,17
57:22 64:2
**agreements** 22:12
61:21
**agrees** 38:16
42:13
**ahead** 62:24
**aid** 47:8
**aiming** 49:9
**akin** 5:1,5 8:12
18:15 19:14 44:7
47:22 74:12
**al** 4:9 12:5
**alana** 10:24
**allocable** 27:2
**allocate** 48:14
**allocated** 48:22
**allocation** 20:10
20:10
**allow** 48:17 62:3
**allowance** 3:11
4:9,18 5:3,11
**allowed** 36:11
**allowing** 47:13
71:7
**alto** 8:23
**alvarez** 2:18,20
16:18 74:7
**amenable** 65:23
72:15
**amended** 7:2 60:2
**america** 2:18,21
**amount** 16:8,22
17:3 18:9 19:19
26:6 28:13 29:23
30:8 31:18 42:21
45:11 73:5,6
**amounts** 19:12
27:11 29:19,20

32:7 33:1,2 36:15
36:19 42:15,23
52:10
ana  10:8
analysis  19:5 25:6
announce  49:18
answer  25:17
52:11 72:25 73:18
answers  50:1
anticipate  28:7
49:8
anticipated  40:15
antonio  8:22
anybody  20:15
28:22 53:12
anyway  68:14
apa  24:24 27:1,4
27:13 28:15 31:15
33:4 36:5,13 38:6
42:14,23 62:2,17
63:13 64:1 67:5
apart  19:1 29:19
35:23
apologies  58:7
appeal  26:5 34:1
35:13 46:1,2
appealed  34:17
appeals  27:25
46:17
appear  13:10 60:8
appeared  70:16
appearing  10:1
appears  41:8 46:5
58:1
appellate  46:15
applicable  20:25
applicant  17:2
application  2:4,10
2:17 3:1,8,9,18
4:1,7,16 5:1,10
12:23,24 13:1,15
13:24 14:1,11,13
16:8,15,20,21

17:1,2,5,7,8 18:2
18:8,13,25 24:6
73:2
applications
12:13,18,22 13:5
13:9,12 16:17
19:14,21,22,24
20:17 21:22,25
22:6,7,17 23:10
applied  22:13
applies  16:17
apply  43:1
appointed  26:10
appointment
46:14 49:13
appreciate  13:15
14:10
approach  51:7
approval  23:17
44:1 53:20 74:15
approvals  63:7
approve  6:1 25:5
28:5
approved  14:6,20
16:11 20:12 67:6
73:5
approving  5:22
6:3 28:4
approximately
26:21 27:11,16
30:10,11
argue  57:9
argued  30:14
argument  33:24
34:18 45:4 67:25
69:15
arguments  38:9
arnold  10:22
artificially  33:19
aside  29:23
asked  32:15 51:17
aspect  29:11 35:7
37:18

aspects  58:17
assert  42:14
asserted  32:2
assertion  32:13,14
asset  45:24
assigned  39:21
assist  17:21 26:10
associates  70:12
assume  43:13
assumed  27:12
29:15 30:3,9
33:12 53:10,11
57:22
assuming  43:10
67:4
assumption  30:21
53:7
assurance  42:22
asymmetric  59:18
attached  24:24
38:6
attempt  54:18
attorney  3:22
5:15 8:21 9:2
attorneys  3:19
5:11 8:4,13 9:9,16
aty  5:6
auditor  13:13
august  13:22
authorities  39:12
39:19 40:1,20
41:2
authority  40:13
41:25
authorizes  47:9
authorizing  65:14
auto  71:3
automatic  7:10,12
61:5,12 69:5
automatically
42:18
available  20:8
25:9 71:20

avenue  8:5 9:3
avoid  65:21
avoidance  36:2
42:17

b

b  1:21 10:25
13:21 19:4 21:4
29:15 30:9,17
33:12 35:13,23
51:4
b.r.503  70:14
back  14:17 16:16
20:10,14 25:1
27:6 28:13,17
41:20 42:1,24
43:15 44:19 45:1
45:9,11 51:2 53:8
67:12 73:7
backing  64:10
baked  28:12
ballard  3:10
banker  2:11 4:17
13:25 18:13
bankruptcy  1:1
1:12,23 5:21 6:2
13:18 26:25 70:14
barefoot  61:6,9
61:10,18,23 62:12
62:23 63:5,9,15
63:18,21 64:19
65:16 67:8,8,11
67:17,19,24 68:2
68:7,19,22 72:13
barefoot's  65:1
bartley  10:3
base  54:10
based  18:2,6
19:15 46:6 57:23
basically  29:5
32:10 38:23 39:11
basis  16:16 18:3
19:11,17 20:12
21:25 38:8 39:12

59:17,20,21 60:3
60:14 67:4 70:18
71:24 72:8
**bearing** 71:7
**began** 36:12
**begins** 56:23
**behalf** 12:7 36:10
49:21 61:20 64:22
**beings** 33:11
**believe** 19:16 25:3
34:18 38:7,15
49:17 53:11 60:17
71:1
**benefit** 43:4 70:8
70:12
**benefits** 27:9 41:9
42:2 43:20 46:22
57:25
**best** 47:3 66:22
**beyond** 54:17
**bill** 40:20
**billion** 26:8
**bit** 61:25
**blessing** 53:20
**book** 34:6 66:24
66:25
**books** 31:12
**bother** 48:4
**bound** 33:17
**bradstreet** 59:11
**brager** 10:4
**brauner** 8:18
**breach** 42:10 43:1
43:2,23
**breached** 43:22
**breaches** 41:12,17
43:9
**break** 15:18
**brian** 10:4 25:8
25:23
**brief** 36:11
**briefed** 33:24

**briefing** 64:9
**bring** 49:18 53:1
**brings** 23:16
48:13,14,16
**britton** 10:5
**brought** 54:20
**bryant** 8:14
**buckets** 50:21
**build** 21:13,14
**burden** 70:5 71:8
**business** 28:1
34:10,15 37:25
46:19
**buying** 34:10,15

**c**

**c** 8:1,17 12:1
35:22 36:1 75:1,1
**ca** 8:23
**caldie** 10:6
**calendar** 64:16
**call** 27:17 37:20
**called** 30:4 36:17
42:24
**cap** 30:11
**capital** 4:16,21
6:6 9:2 52:3 53:3
**care** 29:14,20
45:20 47:18 72:24
73:21
**careful** 40:23 62:8
**carefully** 43:24
**carry** 55:19
**carved** 16:13
35:14,15
**carveout** 20:2,8
35:20,21 36:7
**carveouts** 35:11
**case** 1:3 13:20
15:9 38:23 41:23
46:9 59:4 62:9
67:9,21 69:16
**cash** 26:5,18 27:7
46:23 48:13,14,17

**catherine** 11:2
**cause** 43:23 70:9
**caused** 20:15
**causes** 55:18
**causing** 70:17
**caveat** 16:16
19:22
**cd** 56:17
**cede** 35:10 54:3
**certain** 20:8
**certainly** 21:2,8
23:1 25:19 50:23
51:14 55:3 62:15
62:23 67:9 68:2
**certainty** 43:17
**certified** 75:3
**cessation** 46:24
**cetera** 36:5 53:22
56:5
**chambers** 32:22
51:3 61:2 68:4
70:19
**chantelle** 10:12
**chapter** 55:18
**characterization**
65:1
**charged** 15:6
19:19
**charging** 14:21,24
**check** 15:10 25:18
26:8,12 27:19,20
28:12 32:16 40:2
45:19 66:10 68:14
**checked** 58:7
**checking** 14:18
52:9
**checks** 39:11
**chittur** 70:12
**chris** 10:19
**circulate** 56:15
**civil** 61:19
**claim** 6:11,12,15
6:16,21,22 7:1,2,5

7:6 27:20 34:25
51:1 53:9 54:10
57:15,16,17 58:14
59:5 60:4,14
62:11 69:22 70:6
70:22 72:16
**claimant** 70:8,12
**claimants** 48:12
60:7 67:20 71:17
**claimed** 43:2
**claims** 6:12,17,22
7:3,6 30:10,10,17
36:3 42:14 45:5
45:11,24 49:3,13
49:21 50:10 51:19
53:21 54:13,22,24
55:15 58:18,21
59:7,11,11,15,19
60:3,12,18 62:1
70:2
**clarify** 22:7 23:2
**clark** 8:20,25 54:6
54:6 55:2 58:4
**class** 61:18,20
63:25 65:4
**clause** 55:20
**claw** 42:1
**clawback** 42:3
44:4 45:3,4,6
**cleaning** 58:17
**clear** 16:14 21:20
21:23 22:4,16
23:12 36:15,18
40:4 46:11 52:11
62:6,19,22 65:15
**clearly** 25:15
35:10
**cleary** 9:8 36:10
61:10
**clerk** 3:1,4 16:21
16:22
**client** 54:24

[closely - court]                                                                      Page 5

closely  53:10
closing  28:17,18
code  13:18 16:12
  26:25
colleague  58:9
colleagues  52:5
collections  46:21
collectively  29:21
come  14:17 16:16
  20:4 24:23 27:6
  27:19,19 50:16
  57:18 65:19 67:25
comes  13:24
  27:23 28:17 53:25
coming  39:11
  51:23
comm  5:6
comments  36:14
commerce  9:17
committee  4:8,17
  5:2 8:13 13:25
  18:13,16 25:2,5
  28:2 35:15 44:8
  47:23 50:15
committee's  18:7
communication
  40:23
compensation  2:5
  2:17,18 3:8,11 4:1
  4:10,18 5:3,11
complete  35:3
  63:10 64:11
completed  50:18
  50:20
complex  29:4
comprehensive
  45:23 50:1 51:7
conaway  4:2,3
  18:5 74:11
conceded  30:12
concern  46:17
concerned  44:15
  44:15 46:11

concluded  73:24
condition  69:20
conditions  48:17
confer  66:21
conference  61:13
  61:14 68:16
confirm  15:3,18
  53:19 60:6
confirmation
  19:23 20:6,13,22
  21:1 50:7 51:8,17
  51:24 52:22
confirmed  46:18
  73:4
conflicts  4:2 18:6
confusion  32:25
conscious  65:7
consensual  21:25
  22:13 71:23
consensually  22:3
consistent  59:12
consultation  25:2
consulting  4:7,12
  18:8 74:14
consuming  46:13
contacted  48:12
contain  12:19
contemplated
  51:8
contemporaneous
  63:24
contend  29:22
contention  33:18
contest  60:8
contested  60:25
continue  12:21
  23:9 50:3
continuing  13:19
  35:14 38:6
contract  42:11
  43:2
contributed  20:2

contribution
  49:25
control  47:24
  66:18
convenience
  64:13
convenient  64:15
coren  9:15
corporation  1:7
  4:9 12:4 59:24
corralling  49:16
correct  15:19 16:7
  17:23,25 18:23
  19:6,9,25 29:7,10
  32:18 34:16 38:18
  39:22 41:15 45:13
  45:17 49:22 51:25
  60:10 61:18 64:24
  65:12 67:17
cost  70:7,11
costs  29:15
counsel  3:10 4:2
  5:2 18:6 56:15
  69:13 70:15
country  75:21
couple  23:23
  24:11 38:19 50:11
  66:9
course  26:5 33:17
  34:1 40:25 46:7
  64:1
court  1:1,12 12:2
  12:4,9,11 13:4,8
  14:21,23,25 15:2
  15:4,7,9,11,14,16
  15:22,24 16:1,3,5
  16:8,11 17:12,15
  17:19,22,24 18:1
  18:5,18,21,24
  19:3,7,10 20:20
  20:23,25 21:3,7
  21:10,12,14,16,19
  22:2,4,10,14 23:8

23:13,15,22 24:8
  24:20 25:9,12,20
  26:4,11 27:1 28:6
  28:8,10,19,23
  29:8,11,18,22
  30:1,5,7,19,24
  31:1,6,8,10,13,21
  31:24 32:1,4,6,8
  32:10,13,15,20,23
  33:4,7,11,15,17
  33:23,25 34:4,9
  34:12,20,22 35:1
  35:3,6,12,16,19
  36:1,7 37:6,9,12
  37:16,21 38:13,16
  38:19 39:2,7,18
  39:23 40:7,17,25
  41:3,6,16 42:7,12
  42:20 43:6,8,13
  44:5,12,18,22
  45:2,8,13,15,18
  47:10,15,19,21,25
  48:1,7,9,24 50:17
  50:23,25 51:6,15
  51:19,21 52:2,7
  52:14,20,24 53:19
  53:20,25,25 54:1
  54:2,5,25 55:8,12
  55:25 56:3,5,7,13
  56:16,21 57:2,5,8
  57:12,16,20 58:5
  58:11,16 59:3,14
  60:11,19,21 61:8
  61:16,22 62:5,10
  62:20 63:3,8,13
  63:17,20 64:17,20
  64:23 65:8,9,13
  65:19,23 66:2,5
  67:10,14,18,21,25
  68:6,8,21,23,25
  69:2,7,13 70:21
  71:6,21 72:14,23
  73:1,8,11,13,16

[court - docket]                                                      Page 6

73:20,22
court's 28:4 31:19
  64:13,16
courthouse 6:19
  6:24
courtroom 6:18
  6:23
court's 52:17
cover 13:21
coverage 69:17
  72:19
covered 14:9
  16:23 33:4 59:23
  67:16 71:22
covering 71:22
covers 21:4,7
  63:13
created 33:19
credited 15:21
creditor 5:6 24:3
creditors 4:8,18
  5:3 8:13 25:2
  35:15 47:3 48:25
  49:17 58:22 71:5
credits 29:8
cross 25:10,12
  66:19
cure 30:17 33:12
  36:15,19

**d**

d 1:22 10:12 11:1
  11:5 12:1 35:22
  36:8 74:1
daewoo 8:21 53:5
  53:13,19,24 54:7
  55:16 56:10 57:8
dart 59:24
date 24:1 27:13
  38:1 41:10 43:10
  51:18 64:10,14
  66:8 68:4,17 71:2
  75:25

dated 24:9
dates 63:7 64:7
daul 9:21 64:21
  64:21,24 65:12,22
  65:25 66:3 68:24
  69:1
david 11:4 60:16
  60:17
day 53:7 56:11
  64:6 66:11,12
days 23:24,25
  24:11 28:4 37:25
  42:19 43:11,12
  44:9,14 68:11
deal 23:9 25:7
  44:3 51:4 53:9
  56:7 65:20 72:8
  73:13
dealing 48:25
  51:1
deals 67:15
dealt 28:23 38:20
  51:10 58:18 59:6
  59:20 60:13 65:6
  71:11
debt 36:2
debtor 1:9
debtor's 3:22
  69:15
debtors 2:11 3:2
  3:19,20 4:3 5:11
  5:15,20 6:7,8,11
  8:4 12:7 23:17
  29:22 38:21,22
  39:3 40:6 46:18
  46:21 50:1,16
  51:11 53:15 54:16
  55:14 58:13 60:24
  62:1,2 63:24
  65:14 69:8,23,24
  70:18,22 71:7
  74:15

debtors' 6:1,15,21
  7:1,5 37:19 39:24
  39:25 46:4 57:25
december 70:13
decided 46:1
  55:22 57:12
declaration 13:20
  25:8,11,13,15,23
  27:15 29:19 66:18
declarations
  63:19
deducted 73:11
deductible 69:16
  69:17,24 71:8,15
deduction 31:18
deemed 53:22
  57:21 66:23
defend 69:25
defenses 55:15
  56:5,25
delay 46:16
deliver 31:5 37:19
delivered 26:6,11
  37:25
delivery 26:8 27:7
deloitte 2:4,6
  13:12 26:19
denied 69:11
dennis 10:20
depending 54:22
deposit 42:22
depositions 64:6
deposits 26:22
  27:2
describe 38:25
detailed 26:1
  27:14
details 18:25
determination
  46:13
determinations
  46:4

determined 54:12
  58:23
didn't 37:7,7
  41:11 49:3 50:2
didonato 8:10
  58:10,12,13,20
  59:13 60:10,17,20
  61:3 69:3,3,8
  70:20 71:1,16
  72:22
difficult 46:3
difficulty 47:1
direct 25:14,20
directed 19:23
  50:7
directions 68:3
directly 39:20
disagree 59:9
discovery 17:10
  17:16,20 63:11,22
  63:23 64:2,12
  66:6
discuss 40:11,22
discussions 22:3,8
  22:11 23:4 38:7
  49:5,6 63:24
dispute 30:4,23
  38:2 42:24 44:24
  47:2 53:7,25
  57:21 62:13 63:2
  67:1
disputed 26:25
  33:14
disputes 24:22
  26:18
distribution 49:7
  50:9
distributions 20:4
  48:23
district 1:2 61:19
  62:10 70:13
docket 61:12 73:6

**document** 6:9
7:13 17:21 63:22
64:2
**documents** 64:5
**doesn't** 41:23
42:8,9 43:1,10,13
44:9 48:14 57:18
61:25
**doing** 14:2 18:19
20:1 22:9
**dollar** 37:4,5
**dollars** 20:8 69:25
**don't** 40:8,9 42:19
43:19 47:24 48:3
48:5 51:21 52:15
56:9,21 60:1
62:13,24
**double** 14:18
15:10 45:19 52:9
**doubt** 42:17
**dozen** 49:23,24
**dr** 19:6,9
**drain** 1:22
**dublin** 8:17 18:15
18:15,19,23 19:2
19:6,9 44:6,7,7,13
44:21,23 45:6,9
45:14,17 47:22,22
48:3,8
**due** 6:19,24 61:1
**dun** 59:10
**duplicate** 7:6
60:12
**duplicating** 19:7

**e**

**e** 1:21,21 3:9,21
8:1,1 10:7 12:1,1
56:9 59:4,25 61:1
74:1 75:1
**earlier** 18:24
32:15 64:24 68:5
**earlier's** 68:6

**early** 26:14 69:5
**earned** 2:18
**eaten** 72:3
**ecf** 2:2,8,14,22 3:6
3:15,24 4:5,13,23
5:8,16 6:4,13,19
6:25 7:3,6,10,13
12:25 23:21 69:6
69:10
**ecro** 1:25
**edwin** 10:6
**effect** 54:12 57:9
**effective** 51:18
**effectively** 33:11
**efficient** 66:14
72:8
**efficiently** 51:10
**effort** 21:24 72:5
**efforts** 66:22
**eighth** 7:5 60:11
**either** 14:16 19:20
24:6 34:24 41:23
43:14,14 65:7
73:6
**election** 50:17
**electronic** 17:10
17:16,20
**electronics** 8:21
59:11
**eliminate** 43:20
54:23
**email** 21:3 70:19
**emily** 15:11
**encouches** 56:22
**encouraging** 72:4
**ended** 20:1
**enforce** 36:4
41:18 67:13
**enforcement**
62:17
**enter** 47:4 60:25
65:15 71:6

**entered** 28:6
31:20 47:11
**entering** 55:17
71:23
**entries** 18:10
**entry** 5:21 6:2
28:4 34:6
**epa** 65:6,15
**escheated** 27:18
**escheatment**
27:17,22
**escrow** 27:18
**essence** 69:15,18
**essentially** 28:14
42:4 43:3 51:18
**estate** 20:3 24:23
26:17,20 27:1,6,9
27:23 28:3,14,17
30:12 31:5,15
33:5 37:10,12
39:10 40:12 42:2
43:2 47:3 48:13
48:20 53:3,9
57:25 70:5,18
**estates** 38:9 46:4
55:14 64:7
**estate's** 53:8
**et** 4:9 12:4 36:5
53:22 56:5
**evaluation** 25:6
**event** 37:3
**events** 44:15,19
**eventually** 66:7
**everybody** 23:24
43:18
**evidence** 25:11,24
**evidentiary** 63:11
64:12,15 66:7,19
**ex** 24:16
**exactly** 15:18 16:4
29:21 30:11 31:25
32:3,12 33:16
35:5 39:9 49:7

56:4,6 57:18
58:20 73:15,15
**examine** 25:13
**examiner** 3:9,10
3:14 12:19,21
13:2 14:10 15:18
17:1,2,6 19:16,20
26:10,13 31:3
46:14
**examiner's** 14:8
16:25 74:9
**example** 40:13
**exceed** 72:19
**exception** 20:12
**excluded** 67:15
**exclusive** 62:16
**excuse** 30:13 39:2
**excused** 48:5 58:4
69:1
**execution** 47:8
**exhibit** 66:24
**exhibits** 66:23,25
**existed** 41:14
**existing** 62:3
**expect** 44:13
49:17
**expected** 31:17
**expending** 69:25
**expense** 19:4
48:11,25
**expenses** 2:8,14
2:19,22 3:3,6,12
3:15,23 4:5,10,13
4:20,23 5:4,7,13
5:16 17:9 48:23
70:2
**expensive** 46:13
46:16,16
**expired** 47:21
69:18,18
**express** 35:20,20
**extends** 54:17

**extensive** 25:6
**extent** 20:7 22:25
  34:23 36:19 43:22
  54:11,14 65:5
  69:24 72:12
**extra** 65:18,21

**f**

**f** 1:21 75:1
**f2nd** 70:4
**fact** 22:5,16 24:13
  34:9 65:7
**factors** 70:3
**facts** 24:22 26:1
  46:7
**fair** 19:19 25:4
  46:9 47:1 58:1
  66:1
**fairly** 66:10
**familiar** 24:22
  28:25 68:3
**far** 13:12 26:15
  46:10 48:25 50:11
  57:20 71:14
**fast** 72:20
**favor** 29:13
**federal** 5:20 6:1
**fee** 2:4,8,10,14,22
  3:1,6,9,10,13,15
  3:18,23 4:5,13,23
  5:1,7,16 12:12,17
  12:18,20 13:1,5
  13:22 14:6,8,10
  14:20,23 15:17
  16:25,25 17:1,6
  19:16 22:6,6
  26:19 37:19,22
  74:6,9
**feeling** 54:19
**fees** 13:3 22:13
**feld** 5:2,6 8:12
**fifteen** 31:25
**fifth** 6:15 8:5
  59:15

**figure** 47:24
**figuring** 52:16
**file** 12:8 25:8
  32:19 47:8 73:18
  73:18
**filed** 12:22 22:15
  24:1 58:20 61:19
  69:6,9
**filing** 23:6
**final** 2:10 12:22
  12:23,24 16:16
  18:19 21:9,10
  22:6,8 23:10
  29:13 52:11 73:18
**finally** 25:3 27:16
  32:5 46:17 72:25
**financial** 4:7
**finding** 47:1
**fine** 12:11 15:4
  16:5 17:15 18:1
  21:13 23:8,8 48:7
  55:23 57:9 60:21
  66:6
**finish** 50:14
**firm** 49:5,15,23
**firm's** 19:17
**firms** 19:13
**first** 6:11 12:12
  17:9 24:7 34:22
  37:14 49:4 55:20
  55:20 59:9,14,15
  63:21 68:8 72:3
**five** 37:25 39:13
  58:14 60:22
**focuses** 45:7
**focusing** 45:2
  51:10
**foley** 9:1 49:5,21
**folks** 52:4
**follow** 47:15
**following** 24:23
  64:4,7

**foregoing** 75:3
**form** 72:16
**forth** 25:1 44:16
  51:3 66:4
**forward** 28:14
  42:25 58:9,14,23
  58:24 59:17 60:3
  60:9,14 61:13
  67:4
**found** 27:2 31:2
  34:14
**frankly** 48:22
**free** 62:19,20,21
  65:15
**freres** 2:10,13
**friedberg** 10:24
**friedmann** 8:8
**front** 52:16 65:21
**fruitful** 22:12
  23:4
**fti** 4:7,11 18:8,10
  19:1,7 74:14
**full** 20:9 22:20
  29:13 42:15 43:20
**fully** 29:1 32:5
  55:14
**fund** 6:6
**funds** 27:17,18
  48:19
**further** 27:25
  57:17
**future** 40:8 44:15
  44:19

**g**

**g** 12:1
**garrison** 3:19,22
**gather** 65:17
**general** 6:17 20:3
  59:16 71:4
**generally** 51:20
**genesis** 55:7
**genetically** 22:23

**gerald** 7:9 9:16
  61:17
**getting** 42:3 51:18
  53:8
**gist** 56:19
**give** 14:1 23:24
  29:6 44:25 45:9
  50:23 58:21 62:18
  72:4
**given** 20:11,16
  24:13 28:13 31:18
  38:23 45:15,16
  46:17,22 47:19
  50:7 60:6 61:15
  64:14 67:4 69:24
**giving** 51:18
**glance** 17:9
**go** 13:5,10 20:14
  38:21,22 43:14,15
  44:24 57:20 58:24
  58:25 59:6 60:8
  66:6,13,20
**goal** 22:1 65:2
**goes** 18:5 27:21
  29:11 39:13 48:20
  57:14 68:9
**going** 15:3 22:9
  28:13,14 39:3,10
  40:8 41:18 42:25
  44:10,19 45:10
  47:24 48:18,22
  50:13 51:12 52:5
  58:8,10,14,23
  59:3,7,17 60:3,13
  61:5,13 65:3 66:8
  67:4 68:5,11,15
  71:8,19 72:2
  73:18
**good** 12:2,3,6 14:2
  25:3 28:1 36:9
  45:13 49:20 50:25
  56:10 58:12 61:9
  64:21,23

[gotshal - include]                                                                                    Page 9

**gotshal** 5:10,14
  8:3 12:7 19:14
  58:13 69:4 74:13
**gotten** 55:24
**gottlieb** 9:8 36:10
  61:10
**grant** 13:14 16:5
  16:15,19,21 18:2
  19:10,14 24:17
  45:22 47:3
**granted** 17:5 74:6
  74:7,8,9,10,11,12
  74:13,14,16
**granting** 17:6
  19:21 24:16
**great** 37:21 68:21
  73:16
**green** 63:25
**greene** 7:9 9:16
  61:17
**greenes** 64:22
**griffith** 25:8,9,13
  25:16,23 52:9
**griffith's** 27:14
  29:18
**grounds** 62:15
**group** 49:22
**growing** 45:24
**guess** 17:1 29:11
  38:24 60:15 62:5
  65:16
**guessing** 17:4
**gump** 5:1,6 8:12
  18:15 19:14 44:7
  47:22 74:12

**h**

**h** 10:6 11:4
**hain** 6:6,8 9:2
  52:3 53:3 55:13
  57:14
**half** 49:23 64:6
**hamilton** 9:8
  61:10

**hand** 22:21 23:2
  44:20,21 45:3
  72:2
**handle** 58:10
**handled** 35:15
**handling** 61:6
**hang** 39:6
**happen** 27:20
  41:9 44:16
**happy** 12:16
  44:18 54:3 58:24
  64:14
**hard** 14:4 66:8
  69:25
**harner** 3:9 10:7
  15:17,17,21,23
  16:7 21:17,17,20
  22:25 23:11
**harner's** 19:17
**harrison** 10:25
**hauer** 5:1,6 8:12
**haven't** 43:22
  49:7 55:22
**head** 71:18
**hear** 64:17
**heard** 21:18 33:22
**hearing** 2:1,1 6:17
  6:23 12:8 13:21
  19:23 23:24 24:12
  24:17 26:9 50:7
  50:24 51:8,11,24
  53:5 60:7,23
  63:10,11 64:10,12
  64:15 66:7,19
**hearings** 68:12
**held** 6:17,23
**helpful** 41:1
**hesitated** 46:8
**high** 17:9 71:15
**higher** 30:15
**hit** 48:17
**hoc** 49:22

**hoffman** 38:9
  64:7
**holdback** 14:19
  19:23
**holdco** 5:22 6:3
  9:9 23:18 59:22
  61:11 74:16
**holdings** 1:7 4:9
  12:4
**hon** 1:22
**honestly** 24:2
**honor** 12:6,7,17
  14:17 15:17 16:7
  16:10 17:14,17
  18:4,15 19:2,6,25
  19:25 21:2,6,17
  22:25 23:11,14,19
  23:24,25 24:19,21
  25:25 26:9,17,23
  27:24 28:5,9,11
  28:20 30:2,18
  31:2 32:18,25
  33:22 34:7,16
  35:11 36:9 39:6
  39:13 40:3 41:4
  41:15,19 42:16
  43:16 44:8 45:14
  47:5,6,12,17,22
  48:4,5,16,21 49:8
  49:20,22 50:21,22
  51:14 52:4,6,8,9
  52:25,25 53:3,5
  54:6 55:11,23
  56:12 57:13 58:2
  58:4,6,8,9,12,25
  61:3,4,9,11,23
  62:12,16,24 63:2
  63:9,16,21 64:8
  64:10,19,21 66:1
  67:8,13,17,24
  68:19,22,24 69:4
  70:20 72:22,24
  73:19

**honor's** 50:6
  61:14 63:6
**hoo** 10:9
**hope** 22:9 23:5,8
**hopefully** 28:5
  49:9,17
**hoping** 21:23
**host** 28:24
**houlihan** 4:16,21
  13:23,24 18:12
**hours** 14:3 72:7
**housekeeping**
  47:6
**hundred** 30:11
**hurtado** 10:8
**hyde** 7:25 75:3,8
**hypothetical** 34:6
  34:14

**i**

**idea** 14:2 50:25
**identified** 21:24
  22:21 23:3,21
  35:18 38:5
**identify** 22:22
**ii** 38:24
**iii** 39:1,2,2,3 40:9
  40:16 47:9 50:1
**illinois** 61:20
  62:10 65:5,7,18
  65:19
**immediate** 46:22
**impair** 54:9 55:5
**implicate** 54:8
  55:5 62:1
**importance** 70:11
**important** 13:21
  36:17 37:18 43:25
  51:15 70:4
**impression** 22:18
**inbounding** 49:22
**inbounds** 24:3
**include** 33:8

[including - leave]                                                                                   Page 10

**including** 2:20
  3:21 5:5,14 16:15
  25:2 26:2 33:1
  43:9 46:23 52:5
  55:16,18 56:23
**incurred** 2:19
  3:13 4:20 5:13
**indicating** 22:11
**indirectly** 57:25
**indiscernible**
  15:15 18:20 32:21
  48:18,20 49:19
  51:17 52:11,22
  53:17 54:10 56:15
  58:9,24 64:5 65:8
  69:12
**individually** 59:1
**industries** 70:3
**infiloom** 60:16,17
**information** 50:3
**inherent** 54:19
**initial** 50:9
**initially** 18:12
**injured** 42:23
**injury** 70:22
**insolvency** 45:7
**insurance** 69:21
  69:21 70:24,25
  71:9,15,20,24
  72:7
**insurer** 71:25
  72:9
**insurer's** 72:15
**intend** 55:16
**intended** 52:13
  53:23 57:4 62:18
**intent** 28:15 57:5
**intention** 54:21
**interaction** 19:19
**interest** 47:3
**interests** 45:16
**interim** 2:4,10,17
  3:1,8,11,18 4:1,7

  4:9,16,18 5:1,11
  12:20,24 18:3
  19:11 20:12,16
  21:21,25 22:6,6
  26:2 27:10
**interpretation**
  62:2,16 65:6
**inventory** 26:7
  29:16,23 30:13
  33:13 36:25
**investment** 2:11
  4:17 13:25 18:13
**investors** 6:6 9:2
**involve** 22:2 46:12
**involved** 72:9
**involves** 29:4
  45:22
**isn't** 38:13 57:12
**issue** 14:13 18:12
  24:14 26:25 31:3
  33:5,22,25 34:17
  38:11 43:16 44:4
  46:2 47:6 48:10
  48:10 54:1,7
  55:21 57:10 58:1
  62:21,22 65:6,9
  65:21 67:7,15,19
**issues** 13:14 18:9
  21:24 23:3,7 26:3
  26:11 28:10,24
  29:3,4 33:15
  46:10,12 51:4,9
  51:13 58:22 62:25
  67:5
**iswas** 10:23
**item** 23:16 61:5
  61:11 69:4
**items** 37:2
**it'll** 40:23 49:8
**it's** 12:8 38:16
  40:4 41:1,7 42:1
  43:3,10 46:11
  48:5,22 50:22

  53:4 54:25 55:1
  55:20,20 57:3
  59:7,16 60:3,9,13
  60:16,21 61:23
  62:21
**i'll** 12:9 47:24
  59:6,6
**i'm** 41:18 43:10
  45:2 54:3 55:8
  56:8,9 59:3 60:4
  61:5,14 62:15
  63:5
**i've** 55:24

**j**

**j** 9:6 10:11,14,15
  11:3
**janice** 9:21 64:21
**january** 1:16 2:2
  24:9 28:7 75:25
**jared** 8:8
**joinder** 6:6
**joint** 3:9 66:23
**judge** 1:23 25:22
**judgment** 28:1
**july** 2:6,19 3:3,13
  3:20 4:11,20 5:5
  5:13 13:20 14:16
  15:24 16:4,15
  18:21
**jurisdiction** 62:16
  65:8

**k**

**kaufman** 9:15
**keep** 43:7
**keeping** 49:6
**key** 28:2
**kicks** 41:22
**kim** 10:9
**kind** 24:4 31:17
  37:1 50:24 65:4
**kinds** 22:7
**know** 13:6 14:5,7
  14:8 17:17 20:13

  26:1 28:21 30:3
  34:17 35:7,13
  38:11 39:24 40:8
  40:8,9,12,15 41:2
  47:24 48:19 49:4
  50:21,23 51:1
  52:1,17 54:15
  55:19 60:1 62:25
  67:6 71:12,17,25
  72:1,10,16,19,20
**knowledge** 46:6
**known** 46:9

**l**

**l** 8:10,18 10:16
**labov** 9:6 49:5,15
  49:20,20 56:1,4
**lack** 70:11
**laid** 65:24
**landed** 25:3
**landlord** 40:14
**language** 12:19
  20:6,18,20 43:24
  54:15 56:23 65:15
**lanier** 11:1
**lardner** 9:1 49:21
**large** 71:8
**largest** 19:12
**lastly** 37:17
**late** 64:13
**law** 8:20 19:13
**layer** 65:18
**lazard** 2:10,12
  12:25,25 13:15,16
  13:20 14:1,2
  15:24 20:12 73:4
  74:6
**lazard's** 13:3,19
  14:11 16:8 21:9
**lead** 42:16 47:15
  49:15
**leaped** 22:23
**leave** 22:17 29:23
  48:3 52:5

**leaves** 17:8 19:12
**leaving** 56:22
**ledanski** 7:25 75:3
 75:8
**lee** 10:14,15 66:10
**left** 72:7
**legal** 57:9 75:20
**lengthy** 66:10,11
**letters** 32:24
**let's** 42:7
**level** 28:25
**lexus** 70:13
**lg** 59:11
**liabilities** 27:12
 29:16 30:3 33:19
 67:15
**liability** 37:1
 54:24 71:3,4
**liberty** 9:10
**lift** 61:24 65:10,11
 70:9,19 71:23
**lifted** 69:20 71:5
**lifting** 69:20
**light** 16:19 46:5
 59:22 60:24
**lii** 10:10
**likelihood** 70:7
**limit** 69:21
**limited** 55:18
 56:24 63:10,22,22
 64:12
**line** 74:4
**liquidating** 70:6
**list** 37:2
**litella** 15:11
**literally** 24:25
**litigation** 19:4
 26:2 27:25 28:24
 35:14 44:11,25
 45:24 46:6,12,15
 46:24 51:13 54:20
 62:3 65:18 66:15
 67:20 70:10,17

**little** 61:25 70:7
**live** 25:10 62:13
**llc** 2:11,13,18,21
 3:1,4 5:22 6:3 9:9
 23:18 74:16
**llp** 2:4,7 3:10,19
 3:22 4:2,3 5:2,6
 5:10,15 8:3,12 9:1
 9:8
**locking** 46:24
**lokey** 4:16,21
 13:23 18:13
**look** 20:14 39:20
 72:1,6
**looked** 18:9 53:10
**looking** 17:4
 19:16,18
**lot** 72:5,10,15
**lotempio** 11:2
**lots** 71:13
**low** 14:3
**ltds** 6:6
**lucas** 10:17
**lucia** 10:8
**luke** 61:9 67:8
**lunch** 66:13
**lurking** 37:20,21
 37:23 38:11,12

**m**

**m** 10:3,22 39:1,2,2
 39:2 40:9,16 47:9
 50:1
**m3** 25:9
**mail** 59:4,25 61:1
**main** 19:13 26:3
 29:4 38:20 48:19
**majority** 14:20
**manges** 5:10,15
 8:3 58:13
**manifestation**
 54:20
**march** 64:13 66:8
 66:9

**market** 14:6
**marriott** 10:11
**marsal** 2:18,21
 16:18 74:7
**master** 6:6
**matter** 1:5 53:1
**matters** 2:1 12:13
 59:10 61:5 69:10
**mcclamb** 10:12
**mean** 14:8 15:13
 37:7 39:20 42:4
 42:12 43:8 50:25
 55:3,21 56:9
 62:12 65:25 72:11
**mechanic** 20:13
 39:5,10 40:12
**mechanism** 40:18
**mechanisms**
 46:13
**meghji** 47:9 50:4
**memorializing**
 66:16
**memphis** 38:4,4,5
**mention** 59:7
**mentioned** 25:7
 68:18
**merit** 34:13
**merits** 23:19 46:5
 46:10 53:12,21
 57:20,24 62:25
 63:10
**meshed** 49:25
**michael** 10:16
**microsoft** 59:5,20
**million** 14:14
 19:23 20:1,15
 26:18,19,20,21,24
 27:5,7,11,13,16
 28:12 29:20 30:12
 30:14,15,15,16,18
 31:21,22 34:24
 36:25 42:5,8,22
 44:10,11,23,24

45:1,12 69:16,17
 69:24
**mind** 15:12
**mineola** 75:23
**minimal** 46:19
**minimum** 48:17
**minute** 68:1
**misspoke** 57:13
**moment** 21:18
 36:12
**money** 20:4 27:22
 44:13,20,21 45:3
 45:10 51:22 72:10
 72:15 73:7
**monitor** 39:3
**month** 14:3 49:9
 68:13
**monthlies** 15:6
**monthly** 13:22
 14:6,23 19:17,18
**months** 14:2 15:1
 15:8 24:25 28:24
**morning** 12:2,3,6
 36:9 49:20 58:12
 61:9 64:21,23
 66:13
**motion** 5:19,19,20
 6:1,1,11,15,21 7:1
 7:5,9,12 23:17,20
 23:20 24:6,13,17
 24:24,25 25:15
 27:14 45:21,22
 46:7 47:4,7,8
 48:12,13,13 53:4
 61:6,12,15,16,24
 62:14 63:15 64:25
 65:10 69:5,11
 71:11 74:6,7,8,9
 74:10,11,12,13,14
 74:15
**motions** 67:12
**move** 25:10 52:3

movements 62:7
moving 49:11
mssrs 64:5
mutual 35:21 42:4
mutually 40:4
  54:16 64:6

**n**

n 8:1 10:13 12:1
  74:1 75:1
name 37:21
names 60:2
necessary 3:12
  4:20 5:13 42:9
need 20:18 22:10
  23:3 41:2 48:21
  49:12 50:2 51:12
  60:7,23
needed 20:14 31:4
  31:5
negative 31:16
negligible 14:4
negotiated 43:24
  44:3
negotiations 25:1
  36:11 64:1
never 15:12 37:13
neville 10:13
new 1:2 8:6,15 9:4
  9:11
nina 7:9 9:16
  61:17
nods 55:24
non 33:12
nonpayment 44:4
normally 43:8
north 2:18,21
northern 61:19
notably 25:7
note 12:23 28:2
  35:10 38:1
noted 48:10
notice 2:1 5:20
  24:11 32:19 50:6

60:7,13,19,20,23
  61:1 68:20
noticed 58:17
notices 58:20
notify 39:18 40:1
  40:19 42:8
november 69:9
number 12:12
  23:16 61:5,11
  69:6,10 71:17
numbers 60:4,15
numerous 45:24
ny 1:14 8:6,15 9:4
  9:11 75:23

**o**

o 1:21 12:1 75:1
o'neal 9:13 35:9
  36:9,10
object 12:21
  22:23 23:25 54:7
objected 19:20
  21:21 22:17 71:10
objecting 54:4
objection 6:7,11
  6:12,15,16,21,22
  7:1,2,5,6,12 14:11
  47:21 53:4,11,13
  53:18 55:7 57:24
  58:14 59:7,9,14
  59:16,19 60:1,12
  60:24 63:18 69:9
  71:10,10
objections 12:17
  13:2 22:10 24:5
  24:10 47:19 50:3
  51:2 58:8
objects 65:5
obligated 30:9
  36:23 37:4
obligation 33:3
  37:14,19 40:4
obligations 29:14
  30:21 33:9 36:19

41:11 42:2
obtain 42:13
obviously 16:19
  25:18 28:23 46:15
occur 43:10
occurs 27:22
  41:21
october 2:6,12,12
  3:4,13,21 4:11,21
  5:5,14 13:22
  18:16,22
offices 8:20
official 4:8,17 5:2
  8:13
offset 30:22
offsets 32:1
oh 17:15 73:1,8
okay 12:2,8 13:4,9
  15:14,16,24 17:15
  17:22 18:1,18
  19:7,10 21:3,12
  21:15,16 22:14
  23:13,15 24:8,20
  25:12,14 28:19
  32:15 35:6 36:8
  38:19 44:5 45:13
  45:19,19 48:5,9
  50:17 51:21 52:2
  52:6,7,24,25 54:2
  54:5 55:25 56:7
  56:13,21 57:8,11
  58:11 59:14 60:11
  61:8 62:20 63:8
  63:17,20 64:17,20
  66:2,5 67:10 68:7
  68:21,23,25 69:13
  69:14 71:21 72:16
  72:23 73:20,22
old 75:21
omnibus 6:11,12
  6:15,16,21,22 7:1
  7:2,5,6 51:1,11
  58:8,14 59:7,9,14

59:15,19 60:1,11
  64:14 68:12 71:10
once 41:21
ones 70:4
ongoing 22:4,8,11
  39:17 41:10 46:19
  46:24 48:24 49:3
  51:9
open 29:4 30:23
  33:25 46:3,12,22
  58:22
operation 41:11
opposed 31:7,11
  44:22 55:9 62:7
  62:21
opt 50:18,18
opted 50:21,21
option 41:17
  43:14 44:10
oral 24:10 33:24
order 5:19,21 6:2
  6:8 12:9,19 13:17
  20:6,13,22,23
  21:1,4,9 28:4,6
  44:1 47:4 55:10
  59:6,12,21 60:1
  62:17 65:14,20
  68:15 70:19 71:6
  73:14
ordered 26:7
  29:16,23 33:13
  55:9
orders 12:20 22:6
  58:19 59:2 60:25
original 41:24
outlined 24:24
outset 22:1
outstanding 30:20
  38:2 46:10
overly 44:14
o'neal 37:7,10,13
  37:17,23 38:14,18
  39:1,15 40:3,6,11

[o'neal - pretty]                                                                                 Page 13

**p**

40:22 41:1,15
43:16

**p**  8:1,1 12:1
**pa**  9:19
**page**  70:13 74:4
**pages**  47:13 64:9
**paid**  27:12 29:20
  30:6,16 32:16,17
  32:22 33:2,9
  34:24 36:22,23
  37:6,10,12 42:6
  42:23 50:13 52:13
  52:13 73:3,7
**pain**  70:17
**palo**  8:23
**papers**  61:15
**paragraph**  14:9
  21:1 35:21 41:8
  55:13,19 56:24
**parameters**  64:3
**parcel**  38:5,7
**parcels**  37:19,22
  38:4
**park**  8:14 9:3
**part**  30:17 38:13
  38:17,20 39:21
  49:14
**parte**  24:16
**particular**  28:12
  38:7 50:10
**parties**  25:1 27:19
  28:15,21 29:2
  32:16 34:1,4
  36:24 39:7 40:20
  45:25 46:8 49:11
  53:16 54:9,12,14
  54:21 55:12,15,24
  58:24 60:2 64:8
  65:17 66:16 70:5
**parties'**  41:13
  47:2

**partners**  59:18
**party**  36:4 41:12
  41:16,17 42:12,13
  43:14 50:8,8
  53:17 54:4 67:20
**passage**  27:22
**patricia**  10:21
**paul**  3:9,18,21 9:6
  10:7,18 15:17
  17:8,12,14 21:17
  49:20 74:10
**pay**  20:9 29:9
  30:9 32:9 36:19
  36:23 37:4,7,8
  41:21,23,24 42:19
  44:9,13
**payable**  33:18
**payables**  29:15,23
  33:12,20 67:15
**paying**  52:19
**payment**  28:3,7
  41:22 42:1 43:4
  44:2 57:14,25
**payments**  27:9
  29:14 43:7 45:16
  46:23,25 52:10
**pc**  70:12
**people**  50:13
  71:13,22
**percent**  73:3
**perfect**  47:12
**perfectly**  44:18
**performed**  57:23
**performing**  16:14
**period**  2:7,11,13
  2:19,21 3:3,5,14
  3:20,22 4:4,10,12
  4:22 5:4,6,15 14:3
  14:11,16,25 16:19
  16:23 17:9 27:22
  47:21 57:22 71:2
  71:3,19 72:18
  73:3

**periodically**  71:23
**perry**  8:20,25
  54:6
**personal**  70:22
**perspective**  31:16
  53:8 62:15,24
**pertain**  59:8
**petition**  32:22
  33:1 71:2,2
**phil**  18:15 44:7
  47:22 58:9,12
  69:3
**philadelphia**  9:19
**philip**  8:10,17
**phone**  12:15
  17:12 59:8 69:14
**phrase**  56:23
**pieces**  34:2
**place**  34:22 37:14
  70:23
**plains**  1:14 6:18
  6:24
**plaintiffs**  61:18
**plan**  16:24 46:18
  47:8 50:6
**played**  49:24
**plaza**  9:10
**pleadings**  57:23
  67:12 69:14
**please**  12:2
**plus**  26:19 31:24
  59:3
**podium**  35:10
  54:3
**point**  14:7 22:24
  23:2 27:17 29:5
  44:8,20 45:3
  46:18 48:19 50:19
  50:20 52:1 56:1
  65:25 70:1
**pointing**  65:13
**points**  66:5

**police**  71:4
**policy**  71:4,11,13
**poor**  69:22
**portion**  14:14
  27:2 46:3 54:7
**portions**  43:21
**position**  54:10
  55:4
**positions**  46:9,22
**positive**  14:18
**possession**  3:20
**post**  14:16 28:18
  32:22
**posted**  26:24
**posture**  61:15
**potential**  30:22
  38:2 45:7,11
  54:23 55:18
**potentially**  27:19
  33:1 36:23 46:4
  54:21
**pre**  28:16 33:1
  68:15,15 71:1
**preference**  45:10
**prefers**  50:23
**prejudice**  36:3
**preliminarily**
  31:2
**preliminary**
  21:22
**premature**  51:4
**prepaid**  30:13
  36:25
**prepare**  66:14
**prepared**  59:1
  60:8
**present**  38:14
  66:19 68:20
**presented**  46:3
**preserve**  43:19
**pretty**  49:25 53:6
  53:10

**prevail** 46:21
**previously** 16:11
    34:2 46:1 57:17
    58:16 69:8
**primarily** 29:12
    70:4
**prime** 3:1,4 16:21
    16:22
**primeclerk** 74:8
**prior** 12:20 22:13
    26:2,4,25 27:9,10
    31:19 41:14 42:23
    43:7 44:25 46:25
    58:18 59:6,21
    64:9
**priority** 33:2
**probably** 23:25
    50:25 52:18 66:12
    66:12 68:5 70:15
**problem** 14:16
    55:12 56:21
**procedure** 5:21
    6:2 50:17,18
**procedures** 68:3
    70:23
**proceed** 12:9,16
    58:25 62:8 70:10
**proceedings**
    73:24 75:4
**process** 23:9
    26:14 29:5 30:17
    48:24 49:2,10
    50:15 51:9,12,19
    63:7 66:6 72:9
**produce** 64:5
**produced** 63:23
**product** 24:25
**production** 64:4
**productions**
    17:21
**professional** 2:7
    2:13,17,21 3:5,8
    3:11,14 4:1,4,12

4:19,22 5:12
**professionals**
    12:14,14 18:7
    20:9 23:5
**projections** 51:24
**proofs** 6:12,16,22
    7:2,6
**proper** 70:18
**properly** 70:1
**property** 28:18
    39:24,25 40:1
    45:16
**proposal** 63:12
**propose** 64:8
**proposed** 34:12
    47:4 62:14 63:1,3
    63:4 65:16
**proposing** 72:1
**prorated** 20:10
**prosecute** 42:14
**prosecuting** 70:6
**protection** 61:21
**protections** 62:18
**provide** 51:16
**provided** 20:7
    35:22 36:3
**provider** 2:5
**provides** 45:23
**provision** 41:7,7,9
    41:12,13 42:25
    53:13
**provisions** 28:16
**purchase** 27:3
    45:25
**purchased** 38:8
**purchaser** 62:19
**purchasers** 61:20
**purporting** 36:18
**pursuant** 5:20 6:1
    27:8
**pursue** 60:23 62:1
**pursuing** 72:21

**pursuit** 62:3
**put** 20:20 50:9,15
    66:16
**pyrrhic** 69:19

**q**

**qualifications**
    13:17
**quarropas** 1:13
**quarterly** 39:12
**question** 13:19
    62:5 71:21
**questions** 25:16
    28:21 38:20 45:20
    49:24 50:2,12
    64:18
**quick** 26:1 36:13
**quickly** 49:11
**quite** 26:14 28:25
    49:11

**r**

**r** 1:21 8:1,8,20,25
    12:1 75:1
**raise** 24:15
**raised** 23:1 66:1
**rate** 14:6
**rdd** 1:3 6:19,24
**reach** 36:12 71:25
**reached** 22:12
    23:6 26:13,15
    40:14
**reading** 48:4
    54:17
**reads** 54:8
**real** 34:13 65:9
**realized** 70:16
**really** 14:1,9,16
    17:4 25:25 26:3
    33:9 36:11,12
    39:23 42:5 45:6
    45:15 48:18,22
    53:13 54:25 55:20
    57:21 62:21,25
    67:19 70:8

**reason** 38:8 43:25
    44:1 71:9
**reasonable** 47:2
    64:3
**reasons** 44:16
**recall** 26:23 29:3
    49:12
**receivables** 26:6
    30:23 31:4,5
**receive** 12:17 28:3
**received** 24:2
    27:19 32:25 49:25
    50:9,11,12
**reclassification**
    6:16 59:16
**recollection** 15:25
**reconciled** 49:4
**reconciliation**
    26:5 39:17 49:2
    49:10 51:12
**record** 17:16 20:1
    25:10 51:22 69:3
    73:2 75:4
**records** 19:17
    31:12 52:15
**recovery** 55:6
    69:21
**redirect** 66:20
**reduce** 54:23 55:6
**reduced** 57:17
**reduces** 57:14
**reduction** 37:5
**reductions** 22:13
**referenced** 22:16
**referring** 35:24
    49:23
**refers** 20:22
**reflect** 56:8
**refund** 26:12
    28:10 40:15 42:8
    44:24
**refunds** 28:16
    38:21 39:4,21,24

39:25 42:25
**regard**  59:10,23
  71:16
**reid**  10:13,14
**reimbursed**  27:21
**reimbursement**
  3:3,12 4:10,19 5:4
  5:12 26:20 29:16
  33:8
**reinstate**  44:25
**reinstating**  44:11
**related**  6:8 7:12
  19:3 23:20 41:6
  47:7 51:1 53:6
  63:19
**relates**  38:3 41:20
  53:13 67:12
**relating**  27:3
  28:16 42:25
**release**  33:8 35:10
  35:21 38:1,13,17
  41:10,20,21,22
  43:10 53:22,24
  57:4,5,10 67:11
**released**  36:2,16
  36:20
**relief**  7:9,12 61:12
  64:25 65:2,3
**relinquishing**
  27:5
**rely**  40:18
**remain**  29:22,25
**remaining**  26:4
  29:3,14 30:8 42:1
  46:3,12,22 47:13
  73:6,9
**remains**  30:18
**rendered**  2:5 3:2
  3:12 4:19 5:4,12
**replay**  56:18
**reply**  6:7 53:20
**report**  14:9 21:23
  22:8 23:3,6 39:7

39:10,12
**reporting**  39:9,13
  40:4,7,18 48:9
**reports**  21:22
**representative**
  12:25 41:25 49:13
  49:18 50:5,11
**representatives**
  24:4 48:11
**represented**  15:23
  17:18
**represents**  14:19
**request**  50:10
**requested**  18:9
**requesting**  69:11
**required**  43:5
**requirement**
  39:13
**reservation**  22:5
  22:19,20 53:14
  54:15 55:1,3
  56:22,25 57:3
**reserve**  55:4,14
  56:3
**reserved**  65:8
**reserves**  12:20
**reserving**  53:16
  54:16
**resolution**  29:13
  38:21 46:10 47:2
  62:14
**resolve**  21:24 22:2
  38:3,10 63:1
**resolved**  22:10
  28:8 32:5 59:10
  59:22 67:5
**resolving**  30:25
**respect**  5:20 13:23
  24:21 26:11,18
  28:15 29:15 30:9
  30:16,22 31:16
  36:2 38:9 46:2,20
  47:7 49:3 50:5

53:16,21 59:17
  60:4,14
**respective**  39:23
**response**  45:4
  59:18
**responses**  6:19,24
**ress**  9:15
**rest**  48:6 55:19
**restrict**  54:8,19
**restructuring**
  17:18 25:5 28:2
**result**  36:12 37:1
  51:23
**retain**  17:5 27:9
  43:21
**retained**  13:16
  17:20
**retention**  16:12
**review**  12:18,21
  17:1 18:2,6 19:15
  19:15 46:8 72:17
**reviewed**  13:1
  18:8 19:13 25:14
  61:15 69:14
**revise**  56:8
**revised**  58:3
**revision**  55:24
  56:14
**reviving**  65:4
**ri**  10:9
**rick**  11:3
**rickert**  64:6
**rifkind**  3:18,22
**right**  12:20 15:2,7
  15:22,25 16:1,3
  16:13 17:19 18:1
  19:10 20:24 21:3
  21:11 23:22 24:11
  26:14 28:11 29:6
  29:17,21 30:5,7,8
  30:19,24 31:1,6
  31:10,13,23 32:6
  32:20,23 33:5,10

33:16,17,21,21,23
  34:3,7,11,23 35:1
  35:6,6,16,19,25
  36:6 37:9,16
  39:16,21 41:3,10
  41:23 42:2,4,16
  42:20 43:9 44:5
  44:12 45:2,13,18
  45:20 47:15 48:1
  48:16,24 51:5
  52:2,2,3,14,16,20
  52:20 55:4,9,11
  55:25 56:4,5,6,16
  56:16 57:1,3,4,18
  60:21 61:17,22
  62:20 65:22,23
  67:14,18 68:10
  69:7 70:23 71:6
  73:1
**rights**  22:5,20,20
  27:5 29:6 36:4,4
  41:13,24 43:19
  53:15,16 54:9,11
  54:15,17,19 55:1
  55:3,6,15,17 56:3
  56:25 57:3
**rise**  29:6
**risk**  27:25 46:19
**risky**  46:4
**road**  8:22 75:21
**robert**  1:22 10:5
**rohn**  10:15
**role**  13:19 48:6
  49:16
**room**  1:13
**roughly**  26:8,19
  27:13 31:22
**round**  49:4
**rule**  5:21 6:1
**ruling**  26:25
  31:16,19 48:4
  52:17

**rulings** 26:4 27:10
42:23 74:3
**run** 65:4
**running** 26:12
**ryan** 10:3

**s**

**s** 6:9,11,15,21 7:1
7:5,13 8:1 12:1
33:12 56:9
**sale** 62:17 65:20
**san** 8:22
**santiago** 69:5,19
69:22 70:16
**santiago's** 69:13
**sara** 8:18
**satisfied** 6:12,22
59:15,19,25
**saw** 23:25 35:11
**saying** 41:17
53:23 54:25 55:2
55:13,13 56:17
71:9
**says** 23:6 28:15
35:22 36:1 41:13
42:12,17 53:15
**schedule** 21:4
29:6 38:6 60:7
62:14 63:1,11
65:24 66:4 68:17
**scheduled** 2:1
24:13 66:9
**scheduling** 24:17
61:14 63:6
**schein** 10:16
**schneider** 10:17
**schwartzberg**
10:18
**scope** 67:11
**score** 24:8
**sean** 9:13 36:9
**search** 17:22 64:3
**sears** 1:7 4:9 12:4
63:25

**seated** 12:2
**second** 2:10 3:8
12:21,24 17:4
39:6 49:7 64:4
**secondly** 36:21
66:21
**section** 13:16,17
13:18 26:24 35:23
36:1 55:13
**sections** 35:22
**see** 14:4 20:14
70:12 72:6
**seek** 62:1
**seeking** 53:20
62:7 65:2,2,11
**seeks** 41:25 61:25
62:2
**seen** 18:10
**send** 40:2,16
**sending** 40:15
**senior** 70:2
**sense** 28:1 45:18
71:25
**sent** 28:13 47:10
47:16
**separate** 19:1
21:9 29:19 34:19
35:23 55:10 57:10
66:25 71:3,4
**september** 2:20
**seriatim** 13:10
**services** 2:5,5 3:2
3:11 4:19 5:3,12
13:13,13 16:14
**set** 29:6 44:16
46:16 49:7 64:10
64:13 66:4
**setoff** 35:3
**setoffs** 35:2,4
**settle** 72:17
**settled** 33:11 34:2
66:15

**settlement** 5:22
6:3 19:5 23:18
24:5,24 25:6
26:13,15,17 27:8
28:5,6 31:20,22
36:16 37:18,24
39:6 42:3,21
43:20,21 45:22,23
46:9,23 47:1
48:14 49:14,24
51:23 53:2,14,17
54:8,11,18,23
58:1 59:22 67:6
72:3 74:16
**settlements** 26:2
27:10 42:24 72:1
72:19
**settling** 29:2 54:9
54:21
**seventh** 7:1 60:1
**severance** 29:16
30:10 32:16,22
33:1,8 36:21,22
36:22 37:1,5
**shira** 11:5
**short** 23:24 24:7
24:11
**shorten** 5:19
23:20 24:14,18
**shortening** 5:19
**shorter** 19:18
**shortfall** 20:7,15
30:13,22 36:24
37:3,14,15
**shouldn't** 43:14
**showing** 31:11
**shut** 26:13
**side** 46:20
**sides** 63:4,6
**sign** 47:13
**signed** 22:19
36:13 38:22

**significant** 14:14
16:22 17:3
**similar** 18:12
**similarly** 16:21
**simply** 22:10
43:21 46:5 53:14
65:3
**simultaneous** 64:8
**singh** 8:9 12:3,6,7
12:12 13:7 14:17
14:22,24 15:1,3,5
15:8,10,13,15,20
15:25 16:2,4,10
17:11 19:25 20:22
20:24 21:2,6,8,11
21:13,15 23:14,16
23:23 24:19,21
25:19,22,25 28:9
28:11,20 29:7,10
29:17,21,25 30:2
30:6,8,20,25 31:2
31:7,9,11,14,23
31:25 32:3,5,7,9
32:12,14,18,21,24
33:5,10,14,16,21
33:24 34:3,7,11
34:16,21,23 35:2
35:5,9,13,17,25
36:6 38:16 39:5,9
39:16,22 40:5
41:4,19 42:10,16
42:21 43:7,12
47:5,12,17,20
48:10,16 49:2
50:4,20 51:5,14
51:16,25 52:4,8
52:15,21,25 54:3
55:11,23 56:6,12
56:14,19 57:1,3,7
57:11,13,18 58:2
58:6 61:4 72:24
73:2,10,12,15,17
73:21,23

| | | | |
|---|---|---|---|
| sitting 27:18 | standard 16:13 | styled 61:11,23 | **t** |
| sixth 6:21 59:18 | stargatt 4:2,3 | subcommittee | |
| 59:23 | start 72:1 | 17:18 | t 75:1,1 |
| slotted 68:11 | starting 68:10 | subject 13:16,17 | take 24:10 25:14 |
| snapback 41:14 | starts 68:8 | 16:12 20:23 26:4 | 29:18 42:9 47:17 |
| 41:18,20,22,24 | stated 51:22 64:24 | 34:1 63:6 64:2 | 64:11 |
| 42:4 44:2,3 | statement 6:6 | submit 22:8 47:5 | taken 71:12 |
| solely 22:7 63:23 | 24:1 28:22 44:17 | 47:13 58:2 59:1 | takes 45:20 58:6 |
| solicitation 16:24 | statements 19:18 | 64:8 66:17,23 | 61:4 72:24 73:21 |
| solutions 75:20 | states 1:1,12 | 68:14,20 72:16 | talked 68:17 |
| soma 10:23 | status 21:23 23:3 | submitted 47:4 | talking 14:12 33:7 |
| sonnax 70:3,3 | 48:10 61:13 | submitting 21:22 | tasks 18:10 |
| sonya 7:25 75:3,8 | stauble 10:19 | 59:12 | tax 2:4,5,6 13:13 |
| soon 49:17 52:22 | stay 7:10,12 61:5 | substantial 16:14 | 26:8,12 28:8,16 |
| sorry 33:19 47:23 | 61:12,24 62:21 | 31:18 35:2 46:2 | 38:21 39:24 40:15 |
| 60:5 69:16 | 64:25 65:2,3,4,10 | 46:23 70:7 | 40:19 42:8,25 |
| sort 14:19 26:12 | 65:11 69:5,10,19 | successful 38:15 | 44:24 |
| 27:6,20,24 47:7 | 69:20 70:9,19 | sufficient 70:9 | taxing 39:11,19 |
| 48:17,20 51:6 | 71:5 | suite 9:18 75:22 | 40:1,13 41:1 |
| 70:22 | stays 71:23 | sum 14:14 | taylor 4:2,3 10:25 |
| sought 16:9 | steen 9:8 61:10 | summary 26:1 | tba 6:18,24 |
| sound 28:1 | step 65:21 | 41:7 | teed 63:15 |
| southern 1:2 | stepped 52:23 | sums 46:2 | telephonically |
| spahr 3:10 | steps 42:9 | sunedison 70:14 | 10:1 |
| speak 50:15 59:8 | stipulated 71:24 | sunny 8:9 12:6 | tell 65:19,20 |
| 71:18 | stipulation 6:7 | superseded 7:2 | telling 48:1,3 |
| speaking 51:20 | 53:2,6,12 54:23 | 60:2 | 72:14 |
| specific 43:25 | 55:5,9,17 58:3 | supplement 40:21 | ten 72:18 |
| 45:16 71:17,19 | stny 70:13,15 | support 24:1 25:7 | teresa 10:10 |
| specified 26:6 | stogsdill 10:20 | 25:15 | term 28:3 |
| 30:23 31:4 | stop 14:7 18:14 | supposed 39:7 | terminates 42:18 |
| speed 49:18 | stopped 15:24 | sure 13:7 15:12 | 42:18 |
| spend 67:7 72:5 | store's 27:3 | 20:18 21:19 22:1 | termination 41:8 |
| 72:14 | straightforward | 22:4,18 29:1 30:2 | 41:12 |
| spending 72:7,10 | 53:6 | 35:11 40:24 43:4 | terms 17:22 24:5 |
| spoke 22:18 | strauss 5:1,6 8:12 | 48:7 51:9 52:7 | 30:20 36:21 63:21 |
| spot 25:3 | streamline 67:2 | 55:8 56:9 61:14 | 64:3 |
| square 9:17 43:15 | street 1:13 | 62:8 65:3 67:22 | testimony 25:14 |
| 44:19 | stronger 34:18 | 72:13 73:8 | 25:21 66:17 |
| staffed 38:24 | structure 43:9 | szambel 11:3 | thank 16:10 18:4 |
| staffing 46:19 | stuck 40:6 | | 23:11,12,14 24:19 |
| stand 51:11 | stuff 67:22 | | 25:22 45:14 47:5 |
| | | | 47:12,17 48:8 |
| | | | 52:2,25 56:12 |

[thank - veritext]                                                                          Page 18

58:2 61:3 64:19
68:22,24,25 73:20
73:23
**thanks** 61:2
**that's** 12:11 38:6
38:18,24 43:4
47:7 48:1,7,16,18
49:3,11 50:18,25
51:15,22,25 52:6
52:18 53:18 55:2
55:7,11,20 56:1
56:10 57:7,9,10
57:18 59:17 62:13
62:23
**theory** 34:12
**there's** 37:18 38:1
38:4 39:9 40:10
40:19,19 41:10
42:3,4,7 43:22
44:4,23 49:2,12
53:11,24 57:5
**they're** 38:24
49:16 52:9,16
53:21 60:25
**they've** 37:23
**thing** 14:5 67:3
**things** 19:3 35:17
47:23
**think** 12:14 14:15
14:19,22 15:5
20:11,20 22:21
25:17,17 27:25
29:12 30:11 32:17
32:21,24 36:16
37:25 38:2,3,10
39:13 40:11,19,22
41:4 42:10,12
43:16 45:19,20
47:10 50:8 51:7
51:21 52:4,12,17
52:21 53:5,8,18
55:23 56:7,8,16
56:19 57:7 62:12

62:13 63:1 64:11
65:9,25 66:7,11
66:11 68:5,9,10
70:15 71:16 72:8
72:22,24 73:17
**third** 2:4,17 3:1
3:18 4:1,7,16 5:1
5:10 55:15 67:20
70:5
**thought** 26:15
72:4
**three** 14:3 15:1
26:3 28:4 36:13
42:19 43:11,12
44:9,14 71:11
**thursday** 50:8,9
50:14
**tied** 34:9
**ties** 42:5
**time** 5:19 14:20
18:10 20:10 25:11
26:14 31:14,15
41:21 46:13 49:4
49:8 50:3 58:21
64:11 67:7,23
68:13 71:19 72:5
**times** 40:17 64:16
**today** 12:13,15,24
24:10,15 25:9
28:6 36:12 47:6
58:14,23 61:13
69:11
**today's** 12:8
**todd** 10:22
**told** 32:17 40:14
**tomczak** 60:16,18
**top** 35:4 37:2
69:17 71:18
**topic** 63:23,25
**totally** 50:14
**tracking** 50:24
**transcribed** 7:25

**transcript** 75:4
**transferred** 27:4
**transform** 5:22
6:3,8 9:9 23:18
24:23 27:1,3,4,12
27:21 28:18 30:14
32:10 34:9 36:10
38:22 39:10,25
40:10 41:23,24,25
42:8 43:3 44:9,16
45:7,11 46:20,25
53:3,15 54:16
55:14 57:21 59:21
61:7,10 62:4,9,18
63:4,22,23,25
64:4 65:5,13,19
66:4,15 67:9
74:16
**transform's** 29:5
33:3,18 64:2
**transform's** 39:25
**trial** 66:11,14,24
67:2 68:8,15,16
68:17 72:10
**trials** 66:9
**tribunal** 54:13
**tried** 23:2
**true** 22:20 31:5
75:4
**trustee** 47:14
**trustee's** 16:13
17:5
**turn** 18:7 39:8
61:5
**turned** 56:25 59:5
**turns** 36:21 59:20
**two** 9:17 13:12
19:12,13 47:23
49:9,25 66:5

**u**

**u.s.** 1:23 16:13
17:5 70:13

**ucc** 23:25 25:7
**ultimate** 46:20
**uncontested**
58:15 59:17,21,25
60:3,9,14
**understand** 29:1
40:7 41:11 43:6
44:8 45:8 52:10
73:5
**understandable**
16:23 50:14
**understanding**
13:2 22:15
**understood** 52:17
67:24 68:2,19
**united** 1:1,12
**unopposed** 24:18
46:7 61:1
**unresolved** 24:14
**unsecured** 4:8,17
5:2 6:17 8:13
59:16 70:6
**update** 50:24
51:16,19 52:8
**upside** 45:10 52:1
**use** 48:19,21
54:22 66:22 70:1
72:11
**utilities** 26:24
**utility** 26:21 27:2

**v**

**valid** 53:22 65:4
**valuations** 34:5,6
34:15
**value** 31:8,9
**vanilla** 54:14
**vargas** 1:25
**various** 12:13
18:10 39:11
**vendors** 17:21
36:17
**veritext** 75:20

[versus - zero]                                                                    Page 19

versus  63:25
victory  69:19
view  29:6 48:12
  61:24
vinent  10:11
violating  65:20

**w**

waive  55:17
waived  69:22
walk  48:2
walked  24:4
walsh  10:21
wander  11:4
want  13:6 22:4,17
  25:12 29:1 35:10
  36:13,15,18 37:17
  38:1,10 40:3,23
  43:17,19 45:10
  62:24 64:17 67:7
  67:23 72:11
wanted  15:12
  21:20 23:11 24:6
  40:15 51:8 62:25
  67:22
wants  28:22
warehouse  59:24
warranty  61:20
wasn't  40:13 44:2
  44:14 51:23 62:6
wasting  67:23
watch  47:23
way  24:2 39:18
  40:1,10 41:20,22
  56:10 72:20
we've  12:19 22:12
  23:6 24:4 35:18
  63:9 73:18
week  28:7 51:3
  64:9 66:18,24
weighing  70:2
weil  5:10,14 8:3
  12:7 19:14 58:13
  69:4 74:13

weiner  11:5
weiss  3:18,21 17:8
  17:12,14 74:10
went  50:6 60:22
weren't  60:8
we'll  38:2,3,10,15
  40:22 43:18 44:24
  47:5,17 50:14,15
  50:15 52:11 58:2
we're  38:6 43:19
  45:10 49:4,6,9
  51:1 53:8,20,23
  55:2,23 58:22
we've  50:7,11,12
  58:23
wharton  3:19,22
white  1:14 6:18
  6:24
whitebox  53:15
  59:18
who's  50:21,21,22
  61:6
winddown  20:3
winia  8:21 53:5
  53:12,19,24 54:6
  55:16 56:10 57:8
winiadaewoo  6:7
withdrawal  60:13
  60:19,20
withdrawn  60:18
witnesses  66:17
woman  17:14,17
  17:20,23,25 18:4
work  16:22 17:3
  18:18,21 41:4
  58:22 68:4
working  18:11
works  41:23
worry  68:16
worse  68:6 69:18
worth  72:5,21
would've  35:3

wrong  15:13

**x**

x  1:4,10 72:17
  74:1

**y**

yeah  15:20 21:14
  21:15 22:14 30:1
  31:10 37:22,23
  39:9 40:3,17 41:4
  56:4,19 57:2,5,6
  57:16 65:25 73:9
  73:10,12,15
year  71:13,14,17
  72:6
years  39:14 70:24
yesterday  47:10
  47:16
york  1:2 8:6,15
  9:4,11
young  4:2,3 18:5
  74:11
you'll  49:12 59:12
you're  44:18
  45:15,16 54:25
  58:17
you've  37:6 40:17
  60:6

**z**

zachary  11:1
zero  32:11,14