Hearing Date and Time: Wednesday, March 25, 2020 at 10:00 a.m. (Eastern Time)
Objection Date and Time: March 18, 2020 at 4:00 p.m. (Eastern Time)

Edwin H. Caldie (MN Bar No. 0388930)
*Admitted pro hac vice*
Kevin P. Kitchen (MN Bar No. 0399297)
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota, 55402
Telephone: 612.335.1500
Facsimile: 612.335.1657

Lucas L. Schneider (CO Bar No. 48125)
*Admitted pro hac vice*
1050 17th Street
Suite 2400
Denver, CO 80265
Telephone: (303) 376-8414
*Counsel for CenturyLink Communications, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| **SEARS HOLDINGS CORPORATION**, ) | |
| *et al.*, ) | Case No. 18-23538 (RDD) |
| ) | |
| Debtors. ) | (Jointly Administered) |
| ) | |

**NOTICE OF HEARING ON CENTURYLINK COMMUNICATIONS, LLC'S COMBINED MOTION FOR ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §§ 503(b)(1)(A) AND 365(d)(5); APPLICATION FOR PAYMENT OF ADEQUATE ASSURANCE PURSUANT TO SECTION 7 OF THE UTILITY ORDER [DKT. NO. 461]; OBJECTION TO MOTION OF DEBTORS REQUESTING RELEASE OF ADEQUATE ASSURANCE DEPOSIT AMOUNTS PURSUANT TO THE ADEQUATE ASSURANCE PROCEDURES [DKT. NO. 7209]**

**PLEASE TAKE NOTICE** that a hearing on the annexed Motion (the "Motion") of CenturyLink Communications, LLC and Level 3 Communications, LLC, and their parents, subsidiaries, and affiliates (collectively "CenturyLink"), for entry of an order in furtherance of its *Combined Motion for Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(1)(a) and 365(d)(5); Application for Payment of Adequate Assurance Pursuant to Section 7 of the*

*Utility Order* [Dkt. No. 461]*; Objection to Motion of Debtors Requesting Release of Adequate Assurance Deposit Amounts Pursuant to the Adequate Assurance Procedures* [Dkt. No. 7209], will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 118, 300 Quarropas Street, White Plains, New York, 10601-4140 (the "Bankruptcy Court") on March 25, 2020 at 10:00 a.m. (prevailing Eastern Time**)** (the "Hearing"), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "Objections") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (a) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M399, so as to be filed and received no later than **March 18, 2020 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served with respect to the Motion, CenturyLink may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered without further notice or opportunity to be heard.

2

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: February 18, 2020

Respectfully submitted,

STINSON LLP

*/s/ Lucas L. Schneider*
Edwin H. Caldie (MN Bar No. 0388930)
*Admitted pro hac vice*
Kevin P. Kitchen (MN Bar No. 0399297)
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel. (612) 335-1500 / Fax. (612) 335-1657
Lucas L. Schneider (CO Bar No. 48125)
*Admitted pro hac vice*
1050 17th Street
Suite 2400
Denver, CO 80265
Telephone: (303) 376-8414
*Counsel for CenturyLink Communications, LLC*

Edwin H. Caldie (MN Bar No. 0388930)
*Admitted pro hac vice*
Kevin P. Kitchen (MN Bar No. 0399297)
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota, 55402
Telephone: 612.335.1500
Facsimile: 612.335.1657

Lucas L. Schneider (CO Bar No. 48125)
*Admitted pro hac vice*
1050 17th Street
Suite 2400
Denver, CO 80265
Telephone: (303) 376-8414
*Counsel for CenturyLink Communications, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**CENTURYLINK COMMUNICATIONS, LLC'S COMBINED MOTION FOR ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §§ 503(b)(1)(A) AND 365(d)(5); APPLICATION FOR PAYMENT OF ADEQUATE ASSURANCE PURSUANT TO SECTION 7 OF THE UTILITY ORDER [DKT. NO. 461]; OBJECTION TO MOTION OF DEBTORS REQUESTING RELEASE OF ADEQUATE ASSURANCE DEPOSIT AMOUNTS PURSUANT TO THE ADEQUATE ASSURANCE PROCEDURES [DKT. NO. 7209]**

CenturyLink Communications, LLC and Level 3 Communications, LLC, and their parents, subsidiaries, and affiliates (collectively "CenturyLink"), by its counsel, in furtherance of its *Combined Motion for Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(1)(a) and 365(d)(5); Application for Payment of Adequate Assurance Pursuant to Section 7 of the Utility Order* [Dkt. No. 461]; *Objection to Motion of Debtors Requesting Release of Adequate*

4

*Assurance Deposit Amounts Pursuant to the Adequate Assurance Procedures* [Dkt. No. 7209], states as follows:

### JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY TO ENTER A FINAL ORDER

1.  This Court has jurisdiction over this matter and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334 and this matter constitutes a "core" proceeding pursuant to 28 U.S.C. § 157.

### FACTUAL BACKGROUND REGARDING CENTURYLINK

2.  On October 15, 2018 (the "Petition Date"), the Debtors[1] filed voluntary petitions for relief with the United States Bankruptcy Court for the Southern District of New York (the "Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3.  The Debtors operate their businesses and maintain their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  The chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

5.  Prior to the Petition Date, the Debtors and CenturyLink were parties to several agreements for the provision of telecommunications equipment and services to the Debtors

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

5

(collectively, the "Accounts"). CenturyLink continues to provide telecommunication equipment and services to the Debtors post-petition.

**Utility Order**

6. On November 5, 2018, the Court entered the *Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment to Utility Providers, (II) Establishing Procedures for Determining Adequate Assurance of Payment for Future Utility Services, and (III) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Service* (ECF No. 461) (the "Utility Order"). The Utility Order allocated the following sums to CenturyLink and its affiliates, totaling $239,423.15 (the "CenturyLink Adequate Assurance"):

| | | | |
|---|---|---|---|
| LEVEL 3 | Phone / Internet | $202,554.82 | $202,554.82 |
| CENTURYLINK | Phone / Internet | $31,930.94 | $31,930.94 |
| QWEST | Phone / Internet | $4,937.39 | $4,937.39 |

(ECF No. 461, p. 151/151).

7. On November 11, 2018, the Court entered an *Order Approving Global Bidding Procedures and Granting Related Relief* (ECF No. 816) in connection with the sale or disposition of substantially all of the Debtors' assets.

8. The Debtors and Transform Holdco LLC ("Transform") entered into that certain asset purchase agreement, dated as of January 17, 2019 (as amended) for the sale of substantially all of the Debtors' assets (the "Sale Transaction").

9. On February 8, 2019, the Court entered the *Order (I) Approving the Asset Purchase Agreement Among Sellers and Buyer, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts, and Leases in Connection*

6

*Therewith, and (IV) Granting Related Relief* (Docket No. 2507) (the "Sale Order").  The Sale Transaction closed on February 11, 2019.

**Transform's and Debtors' Use and Intent to Assume Accounts**

10.  Since the Sale Transaction closed, Transform and the Debtors have continued to use the Accounts provided by CenturyLink for the benefit of administering the Debtors' estate and Transform's ongoing operations.

11.  On January 18, 2019, the Debtors filed the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Global Sale Transaction* which designated a cure amount for potentially assuming and assigning the Accounts. (*See* ECF No. 1731, rows numbered 1514-1515 and 3706-3707).

12.  CenturyLink filed a timely *Objection of CenturyLink Communications, LLC and Level 3 Communications, LLC to Proposed Cure Amount* (ECF No. 1963) (the "Cure Objection") on January 25, 2019.

13.  On April 2, 2019, the Court entered the *Order (I) Authorizing Assumption and Assignment of Certain Executory Contracts and Leases and (II) Granting Related Relief* (ECF No. 3008) (the "Assumption and Assignment Order").

14.  On May 20, 2019, the Debtors filed the *Notice of Assumption and Assignment of Additional Executory Contracts* (ECF No. 3950) (the "Second Cure Notice") which inaccurately represented, regarding Accounts with Level 3 Communications, LLC, "Cure Amount Resolved." (See ECF No. 3950, row numbered 140).

15.  On May 21, 2019, the Debtors filed their *Notice of Assumption and Assignment of Additional Executory Contracts* (ECF No. 3973) (the "Third Cure Notice") which inaccurately

7

represented, regarding Accounts with Level 3 Communications, LLC, "Cure Amount Resolved." (*See* ECF No. 3973, rows numbered 3-5).

16. On May 28, 2019, CenturyLink timely filed the *Supplemental Objection of Level 3 Communications, LLC to Proposed Cure Amount* (ECF No. 4051) (the "Supplemental Cure Objection"), detailing that while CenturyLink does not object to the assumption and assignment of the Accounts, CenturyLink does oppose assumption and assignment to the extent proposed cure amounts fail to satisfy existing defaults under all of the Accounts in accordance with 11 U.S.C. § 365(b).

17. To that end, since approximately February 2019, CenturyLink has been providing information on the Accounts to the Debtors and the Buyer in an effort to resolve the cure amounts. Those efforts are further detailed below.

**Administrative Expense Claims and Consent Program**

18. On October 7, 2019, the Debtors filed a *Notice of Filing of (I) Revised Notice of Administrative Expense Claims and Consent Program and Opt-In/Opt-Out Procedures, (II) Revised Ballot to Opt-In to Administrative Expense Claims Consent Program and (III) Revised Ballot to Opt-Out of Administrative Expense Claims Consent Program* (ECF No. 5334) (the "Administrative Expense Claims Consent Program"), proposing an arrangement that a Holder of Administrative Expense Claims (as defined therein) may participate in to ensure that a Holder of Administrative Expense Claims receives at least partial satisfaction of its administrative expense claim.

19. On October 15, 2019, the Court confirmed the *Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (ECF No. 5370), and approved the Administrative Expense Claims Consent Program.

8

20. On November 20, 2019, CenturyLink learned that the Debtors had improperly sent CenturyLink's Opt-In Ballot (defined below) to unmanned payment lockboxes. (Bartlett Aff. at ¶ 10).

21. On November 20, 2019, counsel for CenturyLink and the Debtors reached an agreement for CenturyLink to file its Opt-In Ballot ("Opt-In Ballot"), considered by Debtors as timely due to Debtors improperly sending the Opt-In Ballot to CenturyLink lockboxes. (*See* Ex. A to the CenturyLink Joinder, defined below).

22. On November 20, 2019, CenturyLink filed its Opt-In Ballot, Unique E-Ballot ID# 182353801022528, with a comprehensive administrative claim amount for all CenturyLink entities in the amount of $331,086.28. (*See* Ex. B to the CenturyLink Joinder). That administrative claim amount has now grown to **$1,830,916.92**[2] in Amount Past Due (overdue by greater than 30 days) owed to CenturyLink as of February 3, 2020.

23. On December 12, 2019, a team from CenturyLink met with a team from Transform in a lengthy phone conference, trading information to reconcile the amount owed to CenturyLink related to cure amounts that also includes CenturyLink's administrative claim. (Bartlett Aff. at ¶¶ 6-7). Prior to December 12, 2019, CenturyLink had been in regular contact, sometimes as frequently as monthly, sometimes nearly daily, with the Debtors and Transform back to January 2019, with CenturyLink providing multiple rounds of reconciliation information to the Debtors and Transform over approximately eleven months, those rounds of information including Account information, Account invoices, and summaries of Accounts. (*Id.* at ¶¶ 3-7).

24. On December 13, 2019, the Court held a several hour long hearing to address the multitude of problems with the Administrative Expense Claims Consent Program. In that

---

[2] At the time of filing this Motion, CenturyLink and Transform have negotiated a stipulation that would resolve a significant portion of the $1,830,916.92 as a cure payment to CenturyLink. The Debtors have neither provided substantive comment on the stipulation nor approved it.

9

hearing, the Court recognized as follows, that Transform is generally the keeper of reconciliation information, matching CenturyLink's reasonable understanding that reconciliation efforts were largely to occur with Transform, especially given Transform's and the Debtors' desire to assume Accounts which has persisted since at least as early as January 18, 2019:

```
 7        MR. FAIL:  To the extent that the resources are
 8   those that are constrained by the debtors, but, of course,
 9   Your Honor, we've been dedicated to this --
10        THE COURT:  Look, obviously, you cannot -- you are
11   somewhat constrained by the fact that Transform has
12   information, but in terms of being accessible for settlement
13   proposals and the like, I think there should be extra people
14   there.  I mean, even if they're junior people with not much
15   authority.  I don't want the situation where the phone's
16   ringing and then it just goes to an answering machine and
17   then it, you know, just sits there.  So this should be a
18   busy week.
```

(Hr'g Tr., 179:7-18, December 13, 2019).

25.   On December 13, 2019, CenturyLink filed the still of record *Joinder of CenturyLink Communications, LLC to the Limited Objection of Stanley Black & Decker, Inc. to the Debtors' Notice Regarding Initial Distribution Pursuant To Administrative Expense Claims Consent Program* (ECF No. 6198) ("Joinder"), detailing CenturyLink's position as an administrative claimant pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 365(d)(5) through CenturyLink providing Debtors with telecommunications equipment and services post-petition. (ECF No. 6221, ¶¶ 17 – 27).

CORE/0807628.0097/157783262.1

26. The CenturyLink Joinder explained that CenturyLink had reached an agreement with counsel for the Debtors so CenturyLink's Opt-In Ballot (as defined therein), Unique Ballot ID# 182353801022528, would be treated as timely. (*See id.* at ¶¶ 10-11).

27. On December 20, 2019, CenturyLink's paralegal discovered that on Saturday, November 23, 2019, M-III Partners had emailed CenturyLink regarding CenturyLink's Opt-In Ballot, seeking further information, and that CenturyLink had marked the emails for further follow-up. (Bartlett Aff. at ¶ 11). Between November 23, 2019 and December 20, 2019, CenturyLink had at least one lengthy phone conference, exchanged numerous emails, and sent several rounds of information to Transform to reconcile the Accounts. (*Id.* at ¶¶ 5-7).

28. CenturyLink opted in to the Administrative Expense Claims Consent Program to recover as much of the amounts owed from Debtors for the goods and services CenturyLink provided, in light of the risk of Debtors' administrative insolvency. Instead, the Debtors left CenturyLink out of the *Notice Regarding Initial Distribution Pursuant to Administrative Expense Claims Consent Program* (the "Notice") (ECF No. 6186), causing CenturyLink to file its Joinder.

29. On December 24, 2019, the Debtors filed their *Amended Notice Regarding Initial Distribution Pursuant to Administrative Expense Claims Consent Program* (the "Amended Notice") (ECF 6280), again, omitting CenturyLink as a valid, timely Initial Distribution participant despite CenturyLink's timely filed Opt-In Ballot for an administrative claim of $331,086.28.

30. The Debtors' twice failing to include CenturyLink as an Initial Distribution Participant caused CenturyLink to file its *Amended Joinder/Objection of CenturyLink*

*Communications, LLC to the Debtors' Amended Notice Regarding Initial Distribution Pursuant to Administrative Expense Claims Consent Program* (ECF No. 6289) on December 26, 2019.

**Release of Adequate Assurance**

31. On February 10, 2020, the Debtors filed their *Motion of Debtors Requesting Release of Adequate Assurance Deposit Amounts Pursuant to the Adequate Assurance Procedures* (ECF 7209) (the "Debtors' Release of Adequate Assurance Motion"), stating without merit:

> 19. Given the satisfaction of all obligations to the Utility providers that were protected by the Adequate Assurance Deposit and the absence of any other interest in such funds, it is in the best interests of the Debtors and their estates that the Debtors recover the Terminated Account Balances. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to release the Terminated Account Balances.

32. The Debtors have not satisfied all of their obligations to utilities; CenturyLink's administrative claim for telecommunications goods and services provided to the Debtors and Transform has grown to $1,830,916.92 in Amount Past Due (overdue by greater than 30 days) owed to CenturyLink as of February 3, 2020.

33. While the countless attempts of CenturyLink over the course of thirteen months to provide information and receive payment from the Debtors and Transform could constitute notice of default as required under Section 7 of the Utility Order[3], CenturyLink mailed a suspension notice demanding payment of the full $1,830,916.92 in Amount Past Due to Transform on or about February 3, 2020 and counsel for CenturyLink emailed the same

---

[3] CenturyLink's request for the $239,423.15 in CenturyLink Adequate Assurance is neither an admission nor a denial that the telecommunications goods and services constitute "utilities" per 11 U.S.C. § 366. Given the 170 plus accounts that the Debtors and Transform have with CenturyLink, CenturyLink is reasonably confident that at least $239,423.15 of the $1,830,916.92 in Amount Past Due is for phone lines that constitute "utilities." *See In re Darby*, 470 F.3d 573, 575 (5th Cir. 2006).

suspension notice to counsel for the Debtors on February 12, 2020. The $1,830,916.92 in Amount Past Due remains unpaid.

### CENTURYLINK'S ADMINISTRATIVE EXPENSE CLAIM, APPLICATION FOR PAYMENT OF ADEQUATE ASSURANCE, AND OBJECTION

34. CenturyLink reiterates, as previously stated in several earlier pleadings, that CenturyLink is entitled to an administrative claim pursuant to 11 U.S.C §§ 503(b)(1)(A) and 365(d)(5).

35. Section 503(b)(1) of the Bankruptcy Code provides in relevant part:

> (b) After notice and hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1)(A) the actual necessary costs and expenses of preserving the estate. . . .

36. "Courts in the Second Circuit use a two-part test to determine whether a specific claim qualifies as an administrative expense under section 503(b)(1)(A): first, there must be a postpetition transaction, making it a transaction between the debtor-in-possession and the creditor; and second, the estate must receive a benefit from the transaction." *In re Grubb & Ellis Co.*, 478 B.R. 622, 624 (Bankr. S.D.N.Y. 2012) (citing *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir. 1986)). Further, "[t]he services performed by the claimant must have been 'induced' by the debtor-in-possession, not the pre-petition debtor." *In re Enron Corp.,* 279 B.R. 79, 85. (Bankr. S.D.N.Y. 2002).

37. Because Debtors required the benefits of the pre-petition Accounts post-petition, the expenses incurred arose post-petition and establish a post-petition transaction between Debtors and CenturyLink.

38. Concerning the second requirement, there is no question that the telecommunications equipment and services provided a benefit to Debtors in the operation of

13

their business. CenturyLink provided telecommunication equipment and services to Debtors. Given the modern workplace's dependency on connectivity, Debtors' reliance on online sales, and Debtors' nationwide (and beyond) operation, Debtors would not have been able to continue operating without the assistance of CenturyLink.

39. Section 503(b)(1) is intended "to provide an incentive for creditors to continue doing business with a debtor and an incentive for others to engage in business transactions with the debtor." 4 *Collier on Bankruptcy*, 503.06[3][a] (16th ed. 2014). CenturyLink acted in accordance with the policies behind the statute and provided critical support to Debtors.

40. Alternatively, 11 U.S.C. § 365(d)(5) requires Debtors to "timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property . . . until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title . . . ."

41. The telecommunications equipment and services provided by CenturyLink to Debtors more likely than not includes hardware and private telecommunications lines – personal property – among other types of potential personal property.

42. Courts recognize that analyses entitling § 365(d)(3) claims to administrative claim treatment under section 503(b) are applicable to section 365(d)(5) claims as well. *In re Bella Logistics LLC*, 583 B.R. 674, 681, n.7 (Bankr. W.D. Tex. 2018).

43. A majority of courts, including the Second Circuit, interpret section 365(d)(3) claims as obligating a debtor to perform all post-petition obligations under a lease, notwithstanding section 503(b)(1), and automatically treat such claims as administrative expense claims. *In re BH S&B Holdings LLC,* 401 B.R. 96, 103–04 (Bankr. S.D.N.Y. 2009). "There is

14

authority that lessors of non-consumer personal property can resort to either §§ 365(d)(5) or 503(b)(1) of the Bankruptcy Code to assert administrative claims against a debtor for lease payments due after the filing of a bankruptcy case." *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 76 (Bankr. S.D.N.Y. 2009).

44. The Debtors have never allowed CenturyLink's reconciled, full administrative claim into the futile Administrative Expense Claims Consent Program, and as such, CenturyLink requests its administrative claim for $1,830,916.92 (the majority of which accrued after the administration of the Administrative Expense Claims Consent Program anyway) outside of the failed Administrative Expense Claims Consent Program.

45. Alternatively, CenturyLink demands that the Debtors remit the $239,423.15 of CenturyLink Adequate Assurance to CenturyLink in compliance with the Utility Order. CenturyLink will then reasonably apply the CenturyLink Adequate Assurance to the amount plead in the CenturyLink's Opt-In Ballot, leaving CenturyLink to pursue the balance as administrative claim amounts outside of the Administrative Expense Claims Consent Program because the vast majority of the balance accrued on or after November 2019.

46. Lastly and alternatively, CenturyLink objects to Debtors' Release of Adequate Assurance Motion, arguing that the $10,000,000.00 sought should be first allocated to the pro rata payment of administrative claims of utility providers outside of the Administrative Expense Claims Consent Program.

**RELIEF SOUGHT**

WHEREFORE, CenturyLink respectfully requests an order:

15

(a) Granting CenturyLink's full administrative claim in the amount of $1,830,916.92, payable outside of the Administrative Expense Claims Consent Program as soon as reasonably possible;

(b) Directing the Debtors remit the $239,423.15 of CenturyLink Adequate Assurance to CenturyLink in compliance with the Utility Order;

(c) Directing that the $10,000,000.00 sought by Debtors' Release of Adequate Assurance Motion be first allocated to the pro rata payment of administrative claims of utility providers outside of the Administrative Expense Claims Consent Program; and

(d) Granting such other and further relief as is just, equitable and proper.

Dated: February 18, 2020              Respectfully submitted,

                                      STINSON LLP


                                      */s/ Lucas L. Schneider*
                                      Edwin H. Caldie (MN Bar No. 0388930)
                                      *Admitted pro hac vice*
                                      Kevin P. Kitchen (MN Bar No. 0399297)
                                      50 South Sixth Street, Suite 2600
                                      Minneapolis, Minnesota 55402
                                      Tel. (612) 335-1500 / Fax. (612) 335-1657

                                      Lucas L. Schneider (CO Bar No. 48125)
                                      *Admitted pro hac vice*
                                      1050 17th Street
                                      Suite 2400
                                      Denver, CO 80265
                                      Telephone: (303) 376-8414

                                      *Counsel for CenturyLink Communications, LLC*

16

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **SEARS HOLDINGS CORPORATION**, | ) | |
| *et al.*, | ) | Case No. 18-23538 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER GRANTING CENTURYLINK COMMUNICATIONS, LLC'S COMBINED MOTION FOR ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §§ 503(b)(1)(A) AND 365(d)(5); APPLICATION FOR PAYMENT OF ADEQUATE ASSURANCE PURSUANT TO SECTION 7 OF THE UTILITY ORDER [DKT. NO. 461]; OBJECTION TO MOTION OF DEBTORS REQUESTING RELEASE OF ADEQUATE ASSURANCE DEPOSIT AMOUNTS PURSUANT TO THE ADEQUATE ASSURANCE PROCEDURES [DKT. NO. 7209]**

Upon the Motion of CenturyLink for entry of an order in furtherance of its *Combined Motion for Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(1)(a) and 365(d)(5); Application for Payment of Adequate Assurance Pursuant to Section 7 of the Utility Order* [Dkt. No. 461]*; Objection to Motion of Debtors Requesting Release of Adequate Assurance Deposit Amounts Pursuant to the Adequate Assurance Procedures* [Dkt. No. 7209], all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and grant the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Utility Order; and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief requested in the Motion having been provided in accordance with the Case Management Order; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing, and upon all of the proceedings had before the Court; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for

17

the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted to the extent set forth herein;

2. CenturyLink's full administrative claim in the amount of $1,830,916.92, payable outside of the Administrative Expense Claims Consent Program, is granted, with the Debtors ordered to pay the full administrative claim by no later than five (5) business days from the issuance of this Order;

3. The Debtors shall remit the $239,423.15 of CenturyLink Adequate Assurance to CenturyLink in compliance with the Utility Order by no later than five (5) business days from the issuance of this Order;

4. The $10,000,000.00 sought by Debtors' Release of Adequate Assurance Motion is first allocated to the pro rata payment of administrative claims of utility providers outside of the Administrative Expense Claims Consent Program, with the administration the $10,000,000.00 and any balance thereafter subject to the continuing jurisdiction and order of the Court; and

5. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

CORE/0807628.0097/157783262.1

Dated:_____, 2020

                                              THE HONORABLE ROBERT D. DRAIN
                                              UNITED STATES BANKRUPTCY JUDGE

CORE/0807628.0097/157783262.1