**Hearing Date and Time: February 24, 2020 at 10:00 a.m. (Eastern Time)**

FERRAIUOLI LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001
Email: scolon@ferraiuoli.com
Email: gchico@ferraiuoli.com

Attorneys for *Santa Rosa Mall, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SEARS HOLDINGS CORPORATION, *et al.*, | Case No. 18-23538 (RDD) |
| Debtors. | (Jointly Administered) |

**REPLY TO *DEBTORS' OBJECTION TO MOTION FOR AN ORDER FINDING THE AUTOMATIC STAY INAPPLICABLE OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY AND MEMORANDUM IN SUPPORT THEREOF***
(Related Docket Nos. 6317, 7211)

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Allstate Ins. Co. v. Credit Suisse Securities (USA) LLC, 2011 WL 4965150, at *4 (S.D.N.Y. 2011) ...... 13

Autry v. Northwest Premium Servs., Inc., 144 F.3d 103, 1040 (7th Cir. 1998) ......................................... 12

Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205 (1979) ................................................... 11

In re Ace Track Co., Ltd., 556 B.R. 887 (Bankr. N.D. Ill. 2016) (Barnes, B.J.) ......................................... 4

In re Chittur & Assocs., P.C., 2018 U.S. Dist. LEXIS 213968, (S.D.N.Y. Dec. 18, 2018) ........................ 9

In re Cicale, 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. 2007) ............................................................... 14

In re Iridium Operating LLC, 478 F.3d 452, 461–462 (2nd Cir. 2007) ...................................................... 6

In re Lavigne, 114 F.3d 379 (2nd Cir. 1997) ............................................................................................... 5

In re Leslie Fay Companies, Inc., 168 B.R. 294, 304 (Bankr. S.D.N.Y. 1994) ......................................... 4

In re Masters, Inc., 141 B.R. 13, 16 (Bankr. E.D.N.Y. 1992) .................................................................... 6

In re Residential Capital, LLC, 497 B.R. 720, 746 (Bkrtcy. S.D.N.Y. 2013) ......................................... 10

In re SunEdison, Inc., 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016) (Bernstein, B.J.) ................................. 9

In re WorldCom, Inc., 2006 WL 2255071, at *10 (S.D.N.Y. 2006) (J. Patterson) .................................. 11

Sears Roebuck & Company, et al., v. Atlas Roofing Contractors, Inc., et al., Case No. 18-cv-01649
    (D.P.R. 2018) (SCC) ............................................................................................................................ 10

SEC v. National Securities, Inc., 393 U.S. 453, 460 (1969) .................................................................... 11

United States Dept. of the Treasury v. Fabe, 508 U.S. 491, 507 (1993) .................................................. 12

**STATUTES**

11 U.S.C. § 363(c)(1) ................................................................................................................................. 3

15 U.S.C. § 1012(b) ................................................................................................................................. 11

**OTHER AUTHORITIES**

Art. 20.030(1) of the PR Insurance Code, 26 L.P.R.A. § 2003(1) ........................................................ 9, 11

*McCarran-Ferguson Act* of 1945 ....................................................................................................... 11, 12

PR Insurance Code and the PR Civil Code ................................................................................... 12

Section 363(c)(1) of the Bankruptcy Code ................................................................................... 3

**RULES**

Fed. R. Bankr. P. 9019 .............................................................................. 3, 4, 5, 6, 7, 10, 12, 13, 15

Fed. R. Bankr.P. 3002(a) ............................................................................................................. 13

# **TABLE OF CONTENTS**

Page(s)

Background ........................................................................................................................................ 1

Legal Analysis and Discussion ......................................................................................................... 1

    A.   *The Automatic Stay is Inapplicable and Should Not be Extended to Protect the Underwriters* ... 1

    B.   *In the Alternative, Relief from the Automatic Stay is Appropriate and Santa Rosa has Meet its Burden under Sonnax* ................................................................................................................. 9

        (i)   Factor 1: Relief Would Result in a Partial or Complete Resolution of the Issue ...................... 9

        (ii)   Factor 2: Relief Would Not Interfere with the Debtors' Reorganization ........................... 10

        (iii)   Factor 4: A Specialized Tribunal Has Been Established ...................................................... 11

        (iv)   Factor 5: The Underwriters have Assumed Full Responsibility ......................................... 13

        (v)   Factor 6: Relief Would Allow Santa Rosa to Pursue Claims Exclusively Against Third Party Non-Debtors ........................................................................................................................ 13

        (vi)   Factor 7: Relief Would Not Prejudice the Interests of Other Creditors ............................. 14

        (vii)   Factor 10: Judicial Economy and the Expeditious and Economical Resolution of Litigation ................................................................................................................................. 14

        (viii)   Factor 11: Readiness for Trial ....................................................................................... 15

        (ix)   Factor 12: The Balance of Harms Weighs in Favor of Santa Rosa ..................................... 15

Prayer for Relief ............................................................................................................................. 16

**Hearing Date and Time: February 24, 2020 at 10:00 a.m. (Eastern Time)**

TO THE HONORABLE COURT:

COMES NOW Santa Rosa Mall, LLC ("Santa Rosa"), by and through its undersigned counsel, and respectfully states and prays as follows:

## Background

1. On January 7, 2019, Santa Rosa filed a *Motion for and an Order Finding the Automatic Stay Inapplicable or, in the Alternative, for Relief from the Automatic Stay and Memorandum in Support Thereof* (the "*Motion*", Docket No. 6317).[1]

2. On February 10, 2019, the Debtors filed an *Objection to Motion for an Order Finding the Automatic Stay Inapplicable or, in the Alternative, for Relief from the Automatic Stay and Memorandum in Support Thereof* (the "*Objection*", Docket No. 7211)[2].

3. On February 18, 2019, the Debtors filed the *Declaration of Dale Menendez in Support of Debtors' Objection to Motion for an Order Finding the Automatic Stay Inapplicable or, in the Alternative, for Relief from the Automatic Stay and Memorandum in Support Thereof* (the "*Declaration of Dale Menendez*", Docket No. 7297).

4. In support of the *Motion,* Santa Rosa hereby replies to the Debtors' arguments in their *Objection.*

## Legal Analysis and Discussion

A.  *The Automatic Stay is Inapplicable and Should Not be Extended to Protect the Underwriters*

5. Generally, the automatic stay applies only to the debtor and does not stay proceedings brought against non-bankrupt co-defendants. In its *Motion,* Santa Rosa discussed that while the automatic stay may be extended to non-debtors in "unusual circumstances" where a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate or where removing the stay would

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Motion*.
[2] We note that the Debtors are mercilessly trying to induce this court to error and put Santa Rosa in the Court's shame with respect to what they denominate as "meritless pleadings". To not detract the Court's attention from the issue at hand, attached hereto as **Exhibit A** is a chart with a summary description of pleading filed by Santa Rosa (the "Pleadings Chart").

1

pose "a serious threat to the debtor's reorganization efforts", the Debtors have not demonstrated by "clear and convincing evidence" that such unusual circumstances or unity of interest exist with respect to the Underwriters in this case.  See *Motion*, ¶¶ 38-42.

6. In response, the Debtors submit that the *Stipulation and Order* (Docket No. 5537) provides:

> [T]he automatic stay … shall be modified solely to the extent necessary for the Landlord to pursue independent causes of action against Aon; provided, that, all other provisions of the automatic stay, including, without limitation, ***those provisions prohibiting the commencement or continuation of any other judicial proceeding against*** [] ***the Underwriters*** [] shall remain in full force and effect.

Id., ¶ 2 (bold and italics added).  The Debtors mistakenly and self-servingly argue that "[i]n agreeing to such language, the Landlord has effectively admitted that the automatic stay does in fact extend to the Underwriters." *Objection*, ¶ 35.  However, in agreeing to the language above, Santa Rosa did not admit that the automatic stay extends to the Underwriters, instead, what Santa Rosa agreed to was to preserve the *status quo* and not file or otherwise commence any action against the Underwriters while pursuing an amicable solution with regard to Aon.  Whether the automatic stay extends to the Underwriters requires a determination of law and only this Court, not the parties, can make such legal conclusion.  Moreover, Paragraph 2 of the *Stipulation and Order* must be read in conjunction with its subsequent ¶¶ 3 and 4, which specifically provide that nothing in the *Stipulation and Order* shall prohibit Santa Rosa from filing an action against the Underwriters.  That is, Santa Rosa does not waive any right it "may have against AIG, the Underwriters or any other third party." *Stipulation and Order*, ¶ 4.

7. The Debtors argue that Santa Rosa "relies on a litany of distinguishable cases … [in which] either (a) the debtor did not have any indemnity obligation to the non-debtor party, or (b) if the debtor was required to indemnify the non-debtor party, the court found such costs to be minimal or the indemnity obligation to be contingent.  Neither of those situations exists here." *Objection*, ¶ 36.  Attached hereto as **Exhibit B** is a chart with a summary description of each case cited regarding the extension of the automatic stay to non-debtor third parties, as distinguished by the Debtors and reiterated by Santa Rosa (the "Case Law Chart").  The Law Chart is incorporated by reference to the foregoing Reply as if fully transcribed herein.

2

8. As an introductory matter, we note the following:

> Where disputes arise as to a transaction's "ordinariness," courts typically apply two tests: the industry-wide test, sometimes called the "horizontal test," and the creditor's expectation test, sometimes called the "vertical test." The **horizontal** test focuses on whether, from an industry-wide perspective, the transaction is the sort **commonly undertaken by companies in that industry**. Under the **vertical** test, the inquiry is whether the transaction in question **subjects a hypothetical creditor to economic risks of a nature different from those he accepted** when he decided to extend credit. In making this determination, courts look to the debtor's prepetition business practices and conduct and compare them to its course of conduct postpetition.

In re Leslie Fay Companies, Inc., 168 B.R. 294, 304 (Bkrtcy. S.D.N.Y. 1994) (internal citations omitted; emphasis and underline added). In short, the "horizontal test" is an external industry-wide comparison of a debtor's business and other like businesses to see *if the transaction* is ordinary within said industry; the "vertical test" focuses on the expectations of creditors as to a particular debtor. As discussed hereinafter, Debtors' argument that the *Settlement Agreement* was executed in the "ordinary course" is clearly contradicted by applicable case law.

9. In support of its *Motion,* Santa Rosa submits that the automatic stay does not extend to the Underwriters because the *Settlement Agreement*'s indemnity clause, ***which is severable*** (*Settlement Agreement,* Docket No. 6317-10, ¶¶ 6, 12), is unenforceable on account of Debtors' failure to comply with Fed. R. Bankr. P. 9019. In response, the Debtors submit that Section 363(c)(1) of the Bankruptcy Code allows the Debtors to execute the *Settlement Agreement* "in the ordinary course of business without notice or a hearing" in spite of Fed. R. Bankr. P. 9019. *Objection,* ¶ 40 (citing 11 U.S.C. § 363(c)(1)). In support of such position, the Debtors argue that the *Settlement Agreement* satisfies both the "horizontal test" and the "creditor's expectation test" (the "vertical test"), and rely on cases that are either inapplicable to the circumstances of this case or are skillfully cited so as to appear in the Debtors' favor. By way of example, the Debtors rely on In re Leslie Fay Companies, Inc., *supra,* (Brozman, B.J.), wherein the Bankruptcy Court held that a post-petition amendment to a collective bargaining agreement was outside of the "ordinary course" and unenforceable under Fed. R. Bankr. P. 9019. In Leslie Fay, the Court clarified that where a debtor's post-petition business practices and conduct "ventures beyond the domain of transactions that a hypothetical creditor would reasonably expect to be undertaken in the circumstances," it fails the vertical

3

test and is unenforceable. Id., at 304 (underline added). Specifically, where an agreement is different from any prior agreement previously entered, with regard to either its terms or ***magnitude*** (i.e., size, nature, or both), it **is not** within the day-to-day operations of a business and is therefore extraordinary.

10. In Leslie Fay, the Court also noted that the agreement at issue "purported to settle significant disputes … **without notice to anyone**", and thus was "unenforceable" under Fed. R. Bankr. P. 9019 because **"[c]ompromises may not be made in bankruptcy absent notice and a hearing and a court order."** Id., at 305 (emphasis and underline added). While "[t]he [Bankruptcy] Code is not meant to straitjacket the debtor and prevent it from responding quickly to normal business demands; neither, however, is the Code meant to allow the debtor the same freedom it had when it got into financial trouble in the first place. **For with bankruptcy come certain obligations to creditors, including affording creditors the right to be heard when the debtor proposes to do something beyond the ordinary**." Id., at 304 (emphasis and underline added).

11. In further support of their position, the Debtors cite In re Ace Track Co., Ltd., 556 B.R. 887 (Bankr. N.D. Ill. 2016) (Barnes, B.J.), wherein a creditor filed a motion alleging that either the debtor or its foreign representative had settled a claims dispute and disposed of estate property without court approval and outside of the ordinary course of business. In addressing whether the proposed settlement of the claims was within the debtor's ordinary course of business, the Bankruptcy Court noted that "[m]any courts hold that **Rule 9019 is mandatory**, except in the case of settlements in the ordinary course of business", and (adopting the majority approach) held that the settlement of claims at issue required court approval as it **was not** in the ordinary course. Id., at 909 (citing case law from the US Bankruptcy Court for the Southern District of New York) (emphasis and underline added). Applying the vertical test, the Court looked at the debtor's prepetition conduct to determine a creditor's expectations along with the changing circumstances brought by debtors' bankruptcy filing, and found that the settlement "[was] something creditors would reasonably expect to come to the court given the pendency of the [debtor's bankruptcy] case." Id., at 916. Accordingly, the court determined that the vertical test was not satisfied and court approval was required. The circumstances of the present case are of such catastrophic and

4

extraordinary nature that Santa Rosa would certainly "reasonably expect" the strictures of Fed. R. Bankr. P. 9019 be applied.

12.    The Debtors also rely on In re Lavigne, 114 F.3d 379 (2nd Cir. 1997) (Chapter 7), wherein the US Court of Appeals for the Second Circuit noted that "some transactions either by their size, nature or both are not within the day-to-day operations of a business and are therefore extraordinary." Id. at 385 (underline added). As such, "[w]hile it may be within the ordinary course of business for professionals to cancel their professional liability coverage … upon the closing of their practice, the cancellation … was clearly an extraordinary action requiring notification" because the "**circumstances surrounding [the debtor] at the time** of the cancellation make such an act extraordinary." Id., at 384 (emphasis and underline added). In analyzing why the action was extraordinary, the Second Circuit noted that "an interested party would not reasonably expect a debtor seeking to reorganize his business … to cancel his liability insurance, potentially wiping out the assets of the bankruptcy estate." Id. Accordingly, the cancellation was void because the debtor never gave the required notice.

13.    In further support of their position, the Debtors filed the *Declaration of Dale Menendez,* the Debtors' former Director of Property Claims in the Risk Management Department, which states that "the Debtors … regularly entered into release agreements, proofs of loss, and settlement agreements … similar to the Settlement Agreement … in 2014 … [on account of] Hurricanes Irene and Lee." Contrary to the statements made by Dale Menendez, Hurricane Irene made landfall in Puerto Rico in **August of 2011** as a Category 1 Hurricane and "Hurricane" Lee made landfall in Louisiana in **September of 2011** as Tropical Storm Lee.[3]   Meanwhile, Hurricane Maria was a Category 5 Hurricane of catastrophic consequences. It defies logic that an event that required that the Debtors contract Aon, who charged over Ninety Thousand Dollars (Proof of Claim No. 13,460) for assisting the Debtors in its claim adjustment process, could be considered a transaction performed in the ordinary course business when an event of the

---

[3] The Court may take judicial notice of the forgoing under Fed. R. Evid. 201.

5

magnitude of Hurricane Maria takes place once in a Hundred (100) Years and, because of its undeniably extraordinary nature, cannot to be considered ordinary.[4]

14. We respectfully submit that the very nature and monetary magnitude of the property casualty insurance claim *Settlement Agreement* (Docket No. 6317-10, p.1) **is not** and cannot be considered within the ordinary course of a chain of retail department stores business by any means. Accordingly, it fails both the "horizontal test" and the "vertical test", and thus is unenforceable under Fed. R. Bankr. P. 9019, despite the arguments raised in the *Objection* or the *Declaration of Dale Menendez [ ]* (Docket No. 7297). As such, having failed to afford creditors the right to be heard, the Debtors cannot effectively sustain the existence of an indemnification obligation in favor of the Underwriters. This is particularly relevant considering that Santa Rosa had appeared though counsel in the instant case prior to the Debtors entering into this settlement and expressly requested to participate in and be made aware of the settlement negotiations between Sears and [the Underwriters] regarding the insurance proceeds for [Store No. 1915]" and for the "disclosure of the insurance settlement negotiations". Compare *Motion* with the *Motion for Entry of Order for the Debtors to (i) Disclose Status of Insurance Claim* (Docket No. 1240, ¶¶ 15, 18) filed on December 14, 2018. In this case, Debtors are not in the claims adjustment business although, apparently, it may have adjusted claims that were incidental to its core business. However, there is no way that a catastrophic event like Hurricane Maria may be treated in the ordinary course of Debtors' business.

15. In further support of its position, the Debtors allege that Santa Rosa relies on distinguishable cases where courts make broad statements that settlements require court approval and/or are not ordinary course settlements or payments of prepetition indebtedness. *Objection*, ¶ 45. For the sake of thoroughness, attached hereto as **Exhibit C** is a chart with a summary description of each case cited with respect to Fed. R. Bank. P. 9019, as distinguished by the Debtors and reiterated by Santa Rosa.

16. The Debtors further allege that the US Court of Appeals for the Second Circuit has not ruled that "all settlement agreements, whether or not outside the ordinary course of business, require

---

[4] Note also that Debtors also retain separate legal counsel, Reed Smith, LLP, to represent them in "legal services relating to insurance recovery matters." Docket No. 1137 at 2 ¶ 3.

6

bankruptcy court approval under Bankruptcy Rule 9019." *Objection*, ¶ 45. We submit that the US Court of Appeals for the Second Circuit has held that "Bankruptcy Rule 9019 … has a clear purpose ... **to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court**", In re Iridium Operating LLC, 478 F.3d 452, 461–462 (2nd Cir. 2007) (citing In re Masters, Inc., 141 B.R. 13, 16 (Bankr. E.D.N.Y. 1992)) (emphasis and underline added; internal quotations omitted). Hence, "[b]efore **pre-plan settlements** can take effect … they *must be approved* by the bankruptcy court pursuant to Bankruptcy Rule 9019." Id. at 455 (emphasis and underline added).

17.     The Debtors further allege that "out of an abundance of caution … they conferred with attorneys for both the Creditor's Committee and [DIP Lenders] to confirm their position that the Settlement Agreement was within the Debtors' ordinary course of business and [] did not need Court approval." *Objection,* ¶ 48. However, the Debtors conveniently disregard that Santa Rosa was represented by counsel and its *Motion for Entry of Order for the Debtors to (i) Disclose Status of Insurance Claim []* (Docket No. 1240)—which specifically requested "to participate in and be made aware of the settlement negotiations between Sears and [the Underwriters] regarding the insurance proceeds for [Store No. 1915]" and for the "disclosure of the insurance settlement negotiations"—**was pending before this Court when the Debtors conferred with outside counsel**. Docket No. 1240, ¶¶ 15, 18. Moreover, the most accurate and proper "abundance of caution" would have entailed seeking Court approval or (at minimum) conferring with the undersigned.

18.     The Debtors' further allege that "neither [Santa Rosa] nor any other party has taken the position that the Settlement Agreement was not in the Debtors' best interests[, and] the Creditors' Committee … did not raise any concerns with respect to the settlement and believed it was an appropriate exercise of the Debtors' business judgment". *Objection*, ¶ 49, n. 6. Be that as it may, it must be highlighted that had the Debtors complied with the solicitation and disclosure requirements of Fed. R. Bankr. P. 9019, Santa Rosa would have had the opportunity to be timely heard and everyone, including the Court and creditors, would have been advised against approving an agreement wherein, *inter alia,* inaccurate

7

representations were made (*Settlement Agreement,* Docket No. 6317-10, ¶ 5) and the Debtors agreed to indemnify an insurance carrier whilst bankrupt and aiming for a Chapter 11 liquidation.[5]

19.     The Debtors also argue that "it is likely that any … indemnification claim would be characterized as an administrative expense claim" to support its position that the indemnity clause threatens the Debtors' "reorganization". *Objection*, ¶ 51. We note that, contrary to the Debtors' position, the confirmed *Plan* (Docket No. 5370-1) does not contemplate such treatment. Instead, the *Plan* reads as follows:

> **13.5. Indemnification Obligations.**
>
> Subject to the occurrence of the Effective Date, the obligations of each Debtor to indemnify, defend, reimburse or limit the liability **of any Released Parties**, against any Claims or Causes of Action … **shall survive confirmation of the Plan**, **and shall be assumed by such Debtor solely to the extent necessary to recover and have access to insurance proceeds**. Indemnification claims arising out of prepetition conduct shall be treated as General Unsecured Claims against the Debtors to the extent Allowed. **Indemnification claims arising out of postpetition conduct shall be treated as Administrative Expense Claims against the Debtors to the extent Allowed.**

Id., § 13.5, p. 78 (emphasis and underline added). The Underwriters are not "Released Parties", and thus the alleged indemnification obligation is neither assumed nor treated as an administrative expense claim. Santa Rosa opted out of any third-party releases in the *Plan*. Also see Docket No. 5362. Moreover, the Underwriters did not file any request or proof of claim to be compensated as an administrative expense claim.

20.     Santa Rosa argues that while a suit against a third-party who is entitled to absolute indemnity has been noted as an "unusual circumstance" that warrants the extension of the stay to non-debtors, that makes sense in very large complex reorganizations where the litigation sought to be stayed presented very formidable discovery and other demands, together with very large numbers of potential claimants. *Motion*, ¶ 50. Such is not the case here. The Debtors submit that "[r]equiring the Debtors to bear the Underwriters' litigation expenses would impose a direct harm on the Debtors and to the detriment

---

[5] Compare Paragraph ¶ 5 of the *Settlement Agreement* with *Letter from the Debtors to CCM dated October 26, 2017* (Docket No. 6317- 9), *Letter from CCM to the Debtors dated October 23, 2017* (Docket No. 6317- 10), and *Letter from the Debtors to CCM dated June 6, 2018* (Docket No. 6317- 11).

of the estates and all creditors", but conveniently completely ignore that (i) Santa Rosa is the only potential claimant, and (ii) Section 13.4(iii)(a) of the confirmed *Plan* permits claimants with direct action claims to file against an insurer under applicable non-bankruptcy law to proceed with their claims upon the *Plan*'s effective date. *Objection*, ¶ 53. Moreover, the ***indemnity clause is severable*** (*Settlement Agreement*, Docket No. 6317-10, ¶¶ 6, 12) and whether or not the Debtors' indemnification obligation exists is before this Court. Santa Rosa seeks only to adjudicate its claims against the Underwriters sooner rather than later.

B.  *In the Alternative, Relief from the Automatic Stay is Appropriate and Santa Rosa has Meet its Burden under Sonnax*

21. In addition to the arguments raised in the *Motion,* which are adopted by reference as if fully transcribed herein, Santa Rosa addresses the arguments raised in Section D of the *Objection* as follows:

*(i)    Factor 1: Relief Would Result in a Partial or Complete Resolution of the Issue*

22. In its *Motion*, Santa Rosa sustains that Puerto Rico Courts are **the only forum** where the liability of all parties can be completely determined and provides the only opportunity for complete or partial relief. In response, the Debtors contend that the first Sonnax factor will not be dispositive when complete resolution of a matter would be at a substantial cost, or may take a long time. In support of its *Objection*, the Debtors rely on In re Chittur & Assocs., P.C., 2018 U.S. Dist. LEXIS 213968, (S.D.N.Y. Dec. 18, 2018) (Hellerstein, D.J.) (Chapter 7 no assets liquidation), which is inapposite here. In Chittur, the Bankruptcy Court denied a creditor's motion for relief from stay to liquidate its claim against an administratively insolvent debtor (with not assets available for distribution) because "the administrative burden of liquidating the claim and judicial economy did not justify expending resources to liquidate a claim **against an estate lacking any funds from which claims can be paid**." Id., at *4 (emphasis and underline added). On appeal, the District Court noted that if the creditor's claim were to be liquidated outside of bankruptcy, "the result would be subject to a bankruptcy plan of distribution [and] [g]iven the state of assets of the Debtor, the litigation in the district court could well be academic" because "there is little purpose in [liquidating a claim], where there are no assets available for distribution." Id., at *7, 9, respectively. The Debtors also rely on In re SunEdison, Inc., 557 B.R. 303, 309 (Bankr. S.D.N.Y. 2016)

9

(Bernstein, B.J.), which is also inapposite. In SunEdison, a creditor sought relief from stay to liquidate a contract action claim against the Debtor in state court. The Bankruptcy Court held that "liquidating the claim now as opposed to later does not promote judicial economy" partly because the contract action could be pursued against the debtor in bankruptcy and did not require a specialized tribunal. Unlike Chittur or SunEdison, this is a jurisdictional issue. Santa Rosa has a separate, distinct and direct action claim against the Underwriters under (i) Art. 20.030(1) of the PR Insurance Code, 26 L.P.R.A. § 2003(1), which affords exclusive jurisdiction to Puerto Rico courts, (ii) the clear and expressed language of the Insurance Policy, and (iii) the *Certificate of Insurance* issued by Aon under the authority given by the Underwriters in the *Contract of Insurance*. Santa Rosa's claim against the Underwriters **may not** be liquidated by adversary proceeding or paid in "bankruptcy dollars" under the terms of the confirmed *Plan*.

23. The Debtors also speculate that the indemnity clause would require the Debtors' continued involvement and would be a substantial drain on limited estate assets as all claims are to be filed in Puerto Rico. We note (with interest) that the Debtors are currently litigating as plaintiffs in the District of Puerto Rico through local counsel in the case stylized Sears Roebuck & Company, *et al.*, v. Atlas Roofing Contractors, Inc., *et al.*, Case No. 18-cv-01649 (D.P.R. 2018) (SCC), *inter alia*, despite what they allege would be "substantial" litigations costs.[6] Coincidentally, they are seeking damages in that case for the alleged faulty roof of former Store No. 1915 located in Santa Rosa Mall following Hurricane Maria. As such, the first *Sonnax* factor continues to weigh in favor of Santa Rosa.

  *(ii)*  *Factor 2: Relief Would Not Interfere with the Debtors' Reorganization*

24. In its *Motion*, Santa Rosa sustains that relief would not interfere with the Debtors' reorganization as no reorganization is contemplated; any potential litigation costs to be incurred by the Debtors on account of their own post-petition misdeeds do not constitute great prejudice; and relief would only expedite what the Debtors already contemplate in Section 13.4(iii)(c) of the *Plan*. In response, the Debtors submit that "[Santa Rosa] belittles the indemnification claims that the Debtors would have to bear

---

[6] The Court may take judicial notice of the forgoing under Fed. R. Evid. 201.

10

… [because] [i]f the automatic stay is lifted … the Debtors' indemnification obligations would be crystalized, not hypothetical." *Objection*, ¶ 62. However, the Debtors forget that "[a]n indemnification right arises at the time the indemnification agreement *is executed*, and it constitutes a claim under the Bankruptcy Code even if the act giving rise to the indemnification has not yet occurred." In re Residential Capital, LLC, 497 B.R. 720, 746 (Bkrtcy. S.D.N.Y. 2013) (Glenn, B.J) (italics added). While Santa Rosa submits that the indemnity clause ***is severable*** (*Settlement Agreement,* Docket No. 6317-10, ¶¶ 6, 12) and/or is unenforceable on account of Debtors' failure to comply with Fed. R. Bankr. P. 9019, assuming *arguendo* it exists, such indemnification obligation is not hypothetical because it was "crystalized" the moment the Debtors misrepresented the facts and executed the *Settlement Agreement*. Moreover, Debtors, with full knowledge of Santa Rosa's claim and interests, should have provided for what they allege is a certain claim by the Underwriters in the terms of the confirmed *Plan*. By failing to provide for it, the Debtors are estopped from trying to shield themselves behind their own misrepresentations.

    *(iii)*    *Factor 4: A Specialized Tribunal Has Been Established*

25.    The Debtors argue that the "that applicability of the law of another jurisdiction does not satisfy the fourth *Sonnax* factor." *Objection*, ¶ 66. To support this, they cite In re WorldCom, Inc., 2006 WL 2255071, at *10 (S.D.N.Y. 2006) (J. Patterson, D.J.), wherein the District Court noted that California (a court of general jurisdiction) was not a specialized tribunal and "Bankruptcy courts are often called upon to apply state laws in resolving claims against the estate". Santa Rosa agrees that Puerto Rico courts exercise general jurisdiction. But more importantly, the cause of action at issue arises under the Insurance Code of Puerto Rico and **may only be exercised in Puerto Rico**. Unlike WorldCom, Puerto Rico courts have **exclusive jurisdiction** in this case over Santa Rosa's separate, distinct and direct action claim against the Underwriters.

26.    Furthermore, in accordance with the *McCarran-Ferguson Act* of 1945 "**[n]o** Act of Congress shall be construed to **invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance**." 15 U.S.C. § 1012(b) (emphasis and underline added). Consequently, controversies related to insurance contracts are delegated to the individual states and

11

territories and cannot be sidestepped by federal laws, if applicable. The *McCarran-Ferguson Act* intended to safeguard for each state or territory insurance laws and regulations and the legislative history of the Act and the cases that have followed consistently conclude that the "business of insurance" was understood by Congress to mean the underwriting of risks and the relationship and transactions between insurance companies and their policyholders.

27. As noted in Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205 (1979), the "business of insurance" is defined as:

> The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement -- these were the core of the 'business of insurance.' Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was -- it was on the relationship between the insurance company and the policyholder.

Id., at 215-216 (citing SEC v. National Securities, Inc., 393 U.S. 453, 460 (1969)).

28. The present case relates to the *Contract of Insurance* between the Debtors, the Underwriters and Santa Rosa, and its interpretation and enforcement constitute an essential element of the business of insurance. It was the intent of Congress that the *McCarran-Ferguson Act* allow states and territories to regulate the insurance business "free from inadvertent preemption by the federal statutes of general applicability"[7], and as such, it follows that "Congress reversed the standard of preemption, creating a clear statement rule… that state law enacted for the purpose of regulating the business of insurance do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise." Autry v. Northwest Premium Servs., Inc., 144 F.3d 103, 1040 (7th Cir. 1998) (citing United States Dept. of the Treasury v. Fabe, 508 U.S. 491, 507 (1993)) (internal quotations omitted). In view of the forgoing, Santa Rosa should be allowed forthwith to file a claim jointly against both the Underwriters and Aon in Puerto Rico and in accordance with Puerto Rico's substantive laws, to wit, the PR Insurance Code and the PR Civil Code.

---

[7] Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co., 50 F.3d 1486, 1488-89 (9th Cir. 1995).

12

> *(iv)    Factor 5: The Underwriters have Assumed Full Responsibility*

29.    The Debtors argue that in light of the alleged indemnity clause, the Underwriters have not claimed full defense responsibility. *Objection*, ¶¶ 69-70. We submit that the indemnity clause ***is severable*** (*Settlement Agreement,* Docket No. 6317-10, ¶¶ 6, 12) and/or is unenforceable on account of Debtors' failure to comply with Fed. R. Bankr. P. 9019.

> *(v)    Factor 6: Relief Would Allow Santa Rosa to Pursue Claims Exclusively Against Third Party Non-Debtors*

30.    In its *Motion*, Santa Rosa submits that it will only pursue independent non-bankruptcy causes of action against the Underwriters. *Motion*, ¶ 76-80. In response, the Debtors submit that the indemnity clause will have an immediate, adverse effect on the Debtors' estate and will require their involvement. *Objection*, ¶ 71. The indemnity clause ***is severable*** (*Settlement Agreement,* Docket No. 6317-10, ¶¶ 6, 12) and/or is unenforceable on account of Debtors' failure to comply with Fed. R. Bankr. P. 9019. To the extent this Court concludes otherwise, an increase in litigation costs does not rise to the level of great prejudice and

> the potential applicability of indemnification provisions is not by itself the equivalent of an effect on an indemnifier's bankruptcy proceedings. The only way defendants' indemnification claims against the [Debtors] can actually affect the allocation of property among the estates' creditors is if defendants have asserted their claims against the bankruptcy estates. See Fed. R. Bankr. P. 3002(a) ("An unsecured creditor ... must file a proof of claim or interest for the claim or interest to be allowed....").

Allstate Ins. Co. v. Credit Suisse Securities (USA) LLC, 2011 WL 4965150, at *4 (S.D.N.Y. 2011) (Buchwald, D.J.). While the Debtors have indicated that the Underwriters "will look to the Debtors to honor its obligations under the Settlement Agreement", the Debtors have not identified a timely proof of claim filed on behalf of the Underwriters asserting indemnification rights. In the event the Debtors' can identify a timely proof of claim, we stress that Santa Rosa's *Contingent Claim for Insurance Proceeds* may be withdrawn or transferred once Santa Rosa's claims against Aon and the Underwriters have been fully adjudicated, its remaining claims notwithstanding (*Motion*, ¶ 64, n. 12).

13

      *(vi)     Factor 7: Relief Would Not Prejudice the Interests of Other Creditors*

      31.     In its *Motion*, Santa Rosa submits that its claims against the Underwriters will need to be resolved in one forum or another and the Debtors may incur costs regardless of the forum in which they are pursued and determined. *Motion*, ¶ 82. In response, the Debtors submit that relief would prejudice the interests of the Debtors' other creditors in these cases, in which the Debtors would be required to indemnify the Underwriters and incur unnecessary administrative costs. *Objection*, ¶ 74.

      32.     The indemnity clause ***is severable*** (*Settlement Agreement,* Docket No. 6317-10, ¶¶ 6, 12) and/or is unenforceable on account of Debtors' failure to comply with Fed. R. Bankr. P. 9019. To the extent this Court concludes the indemnity clause exists, the alleged indemnification obligation is an unsecured claim, not an administrative expense. See Allstate Ins. Co., 2011 WL 4965150, at *4. Moreover, the Debtors willfully prejudiced the rights of all creditors the moment they knowingly executed the *Settlement Agreement* in flagrant disregard of their obligations under Fed. R. Bankr. 9019(a) despite Santa Rosa's rights under the *Lease Agreement* and disclosure requests and Santa Rosa's unquestionable rights as an additional insured.

      *(vii)    Factor 10: Judicial Economy and the Expeditious and Economical Resolution of Litigation*

      33.     The Debtors allege that Santa Rosa's claims against Aon and the Underwriters are fundamentally different and whether it will be able to minimize litigation expenses is unclear. *Objection,* ¶ 75. Contrary to the Debtors' position, allowing Santa Rosa to file claims against both the Underwriters and Aon jointly in a single forum will provide the most efficient and economical resolution. Otherwise, Santa Rosa will be compelled to try the same law and facts twice, first against Aon and again (following the effective date of Debtors' Plan) against the Underwriters, a circumstance that should be avoided as inconsistent judgments and collateral estoppel issues could arise. The Debtors allege that Santa Rosa has "not established that allowing [it] to pursue its litigation in the Puerto Rico courts at this time would result in an expeditious resolution of this dispute". However, it is without dispute that allowing Santa Rosa to file its claims now will allow for a more immediate resolution than continuing to wait idly for the *Plan*'s effective date.

34. Further, we highlight that the Debtors do not contest that "in the interests of judicial economy, [] allowing [the Movant] to proceed with [a] Third–Party Action will not result in any unreasonable or unforeseeable delay. Furthermore, [] allowing [the Movant to] proceed with [a] Third–Party Action will provide the most efficient and economical resolution of the litigation because [it] may alleviate the need for any further proceedings in the bankruptcy court." In re Cicale, 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. 2007) (Gonzalez, B.J.).

    *(viii)*    *Factor 11: Readiness for Trial*

35. In their *Objection*, the Debtors state that Santa Rosa did not address the eleventh *Sonnax* factor "given that it weights in [their] favor". *Objection*, ¶ 78. Santa Rosa is prepared to file its claims against the Underwriters and bring this matter to conclusion as soon as possible. The only reason a claim had not been filed is because Santa Rosa learned of the *Settlement Agreement* during the pendency of the Debtors' bankruptcy case and has been prevented from filing its claims due to Debtor's position that the automatic stay should extend to the Underwriters. With respect to the Debtors unfounded allegation that "[Santa Rosa] has not commenced any actions, despite the [*Stipulation*]", Santa Rosa is not at liberty to disclose the status of its claims against AON. Furthermore, its legal strategy is not relevant.

    *(ix)*    *Factor 12: The Balance of Harms Weighs in Favor of Santa Rosa*

36. In their *Objection*, the Debtors surmise that Santa Rosa has a "careless and blatant disregard of the interests of the Debtors' other creditors" and "fail[s] to appreciate the actual balance of harms in this matter." *Objection*, ¶ 84. However, the only harm the Debtors are able to identify is their self-inflicted "costly" indemnification obligation which, as previously discussed, ***is severable*** (*Settlement Agreement*, Docket No. 6317-10, ¶¶ 6, 12) and/or is unenforceable on account of Debtors' failure to comply with Fed. R. Bankr. P. 9019. By contrast, former Store No. 1915 has remained closed and in ill-repair since **September of 2017** and Santa Rosa cannot afford to be straightjacketed by the Debtors any longer.

<u>Prayer for Relief</u>

WHEREFORE, Santa Rosa requests the Court take notice of the foregoing, deny the Debtors' *Objection* (Docket No. 7211), grant the *Motion* (Docket No. 6317), and grant any other relief it deems fair and equitable.

Respectfully submitted.
Dated: February 20, 2020.

**Ferraiuoli** LLC
390 N. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: (407) 982-7310
Facsimile: (787) 766-7001

*/s/ Sonia E. Colón Colón*
Sonia E. Colón Colón
Admitted *Pro Hac Vice*
USDC-PR No. 213809
scolon@ferraiuoli.com

*/s/ Gustavo A. Chico-Barris*
Gustavo A. Chico-Barris
NY State Bar No. 929147
USDC-PR No. 224205
gchico@ferraiuoli.com

-and-

**Ríos Gautier & Cestero C.S.P.**
27 González Giusti Street, Suite 300
Guaynabo, PR 00968-3076
Telephone: (787) 753-7750
Facsimile: (787) 759-6768

/s/Carlos Ríos Gautier
Carlos Ríos Gautier
USDC-PR No. 112606
*Pro Hac Vice*
riosgautierlaw@yahoo.com

Attorneys for
*Santa Rosa Mall, LLC*