**Objection Deadline: March 4, 2020 at 4:00 p.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11** |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | |
| | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

### NOTICE OF DE MINIMIS ASSET SALE
### FOR MEMBERSHIP INTEREST IN CLAYTON STREET ASSOCIATES, LLC

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to that certain *Order Authorizing and Establishing Procedures for De Minimis Asset Sales and De Minimis Asset Abandonments* entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on November 21, 2018 (ECF No. 856) (the "**Sale and Abandonment Order**"), propose to sell or transfer certain assets of the Debtors (the "**Assets**") to NP, Inc. (the "**Purchaser**") pursuant to a Member Interest Purchase Agreement (including all attachments thereto, the "**Purchase Agreement**"). This Notice is being provided in accordance with and sets forth the information required under the Sale and Abandonment Order.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

Description of the Assets. The Assets consist of five hundred (500) Voting Capital Units in Clayton Street Associates, LLC (the "**Company**"), or approximately forty-five and eleven one hundredths percent (45.11%) of the Company.

Relationship of the Purchaser to the Debtors. The Purchaser does not have any relationship with the Debtors, except to the extent that one of its affiliates is a member of the Company.

Liens and Encumbrances on the Assets. The Debtors are not aware of any liens and/or encumbrances on the Assets. To the extent that any party has liens or encumbrances on the Assets, any such lien or encumbrance will attach to the proceeds of the sale described herein.

Material Economic Terms and Conditions of the Proposed Sale. The Debtors propose to sell or transfer the Assets to the Purchaser on an "as is" basis, free and clear of all liens or encumbrances therein, pursuant to section 363(f) of the Bankruptcy Code. The Purchaser has agreed to pay a purchase price of $37,500.00 in cash, plus twenty percent (20%) of the net proceeds arising from a Company Change of Control (as defined in the Purchase Agreement). The Purchase Agreement is annexed hereto as **Exhibit 1**.

Commission, Fees, or other Similar Expenses: The Debtors are not required to pay any commission, fees, or other similar expenses in association with the Purchase Agreement.

Procedures to Object to the Proposed Sale. Any objection to the proposed sale (an "**Objection**") must: (i) be in writing; (ii) set forth the name of the objecting party; (iii) provide the basis for the Objection and the specific grounds therefor; (iv) be filed electronically with the Bankruptcy Court; and (v) be served on Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Esq.; Jacqueline Marcus, Esq.; Garrett A. Fail, Esq.; and Sunny Singh, Esq.), as counsel to the Debtors **on or before March 4, 2020 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

If no Objections are filed with the Bankruptcy Court and served by the Objection Deadline in accordance with the terms of the Sale and Abandonment Order described above, then the Debtors may proceed with the sale in accordance with the terms of the Sale and Abandonment Order.

The Debtors may consummate the transaction prior to expiration of the applicable Objection Deadline if the Debtors obtain written consent to the transaction from (i) the Creditors' Committee; and (ii) any known affected creditor(s), including counsel to any creditor asserting a lien, claim, or encumbrance on the relevant De Minimis Assets.

WEIL:\97376652\3\73217.0004

   **If an Objection is timely received and cannot be resolved consensually, then the sale will not be consummated absent further order of the Court.**

Dated: February 24, 2020
       New York, New York

                                   /s/ *Jacqueline Marcus*
                                   WEIL, GOTSHAL & MANGES LLP
                                   767 Fifth Avenue
                                   New York, New York  10153
                                   Telephone:  (212) 310-8000
                                   Facsimile:  (212) 310-8007
                                   Ray C. Schrock, P.C.
                                   Jacqueline Marcus
                                   Garrett A. Fail
                                   Sunny Singh
                                   *Attorneys for Debtors*
                                   *and Debtors in Possession*

3

**<u>Exhibit 1</u>**

**The Purchase Agreement**

## MEMBERSHIP INTEREST PURCHASE AGREEMENT

THIS MEMBERSHIP INTEREST PURCHASE AGREEMENT (this "*Agreement*") is made and entered into effective as of the 21st day of February, 2020 (the "*Effective Date*") by and among **NP, INC.**, a Colorado corporation ("*Buyer*") and **SEARS, ROEBUCK AND CO.**, a New York corporation, as successor-in-interest to Tower Cherry Creek LLC, a Delaware limited liability company ("*Seller*"; Seller and Purchaser are also collectively referred to in this Agreement as the "*Parties*").

WITNESSETH:

WHEREAS, Seller is a debtor in the chapter 11 cases assigned number 18-23538 (the "*Chapter 11 Case*") currently pending in the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*"):

WHEREAS, Seller is a member of Clayton Street Associates, LLC, a Colorado limited liability company (the "*Company*"), and holds five hundred (500) Voting Capital Units in the Company, which constitute a forty-five and eleven one hundredths percent (45.11%) Capital Unit Ratio in the Company (the "*Membership Interest*"); and

WHEREAS, Buyer desires to become a member of the Company; and

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Membership Interest pursuant to the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the premises and of the promises contained herein, the parties agree as follows:

1.    **OPERATING AGREEMENT**.  Buyer understands and agrees that it must become a party to the Operating Agreement of the Company dated November 1, 2001, as amended (the "*Operating Agreement*") and agrees to be bound by all terms and conditions of the Operating Agreement pertaining to Members.  All capitalized terms not otherwise defined herein shall have the meanings given them in the Operating Agreement.

2.    **PURCHASE PRICE**.  Buyer shall buy the Membership Interest from Seller for a purchase price equal to Thirty-Seven Thousand Five Hundred and no/100 Dollars ($37,500.00) payable in good funds at Closing (the "*Purchase Price*").  In addition, Buyer shall cause the Company to grant to Seller a Profits Interest in the Company as described below. The "*Profits Interest*" shall mean the right to receive twenty percent (20%) of all Net Proceeds resulting from a Company Change in Control at any time within five years of the Closing Date.  A "*Company Change in Control*" shall mean (i) the purchase or other acquisition by any person, entity or group of persons of all of outstanding membership interests of the Company, (ii) a reorganization, merger or consolidation of the Company, whereby the members of the Company immediately prior to such reorganization, merger or consolidation, do not, immediately thereafter, own more than fifty percent (50%) of the combined voting power of the surviving entity, or (iii) a liquidation or dissolution or the sale of all or substantially all of the assets of the Company.  "*Net Proceeds*" shall mean the proceeds available for distribution following (a) payment of all outstanding expenses associated with the Company operations and the ultimate sale or other disposition of Company property, including without limitation, title company premiums and brokerage commissions, (b) repayment of any outstanding debt of the Company (c) a return to members of the Company of all capital contributions, and (d) a ten percent (10%) preferred

return compounded quarterly to the members of the Company on all costs and expenses incurred by the Company up through the Company Change in Control, including without limitation the $6,000,000 anticipated to be paid by the Company to the City and County of Denver and all due diligence, transaction, and closing costs associated with the same and all operating and maintenance expenses associated with any property held by the Company.  The Profits Interest shall have no value and be void as of the fifth anniversary of the Closing Date.

3.    CONDITIONS TO CLOSING OF BOTH PARTIES. Each Party's obligation to close on the Membership Interest is conditioned on the following:

(a)    Seller shall have duly filed and served a notice of sale of the Membership Interest (the "*Sale Notice*") in accordance with the Order Authorizing and Establishing Procedures For De Minimis Asset Sales and De Minimis Asset Abandonments (ECF No. 856) entered by the Bankruptcy Court ) on November 21, 2018 (the "*Approval Order*") and provided the requisite parties-in-interest at least seven (7) business days' notice of the sale of the Membership Interest (the "*Notice Period*"). and

(b)    The sale shall be authorized by the Approval Order because either no objections to the Sale Notice were timely received or any such objections were withdrawn or overruled by the Bankruptcy Court pursuant to an order specifically approving the sale of the Membership Interest.

4.    CLOSING.  The closing (the "*Closing*") shall take place within three (3) days after the Notice Period has expired or in the event a timely objection to the Sale Notice is interposed, within three (3) days after entry of a final order from the Bankruptcy Court overruling the objection and specifically approving the sale of the Membership Interest (the "*Final Sale Order*"), or such later date as reasonably requested by Seller (the "*Closing Date*").  At the Closing, Seller shall deliver to Buyer a duly executed Assignment of Membership Interest, in substantially the form attached hereto as **Exhibit A** ("*Assignment*") together with any other documents of transfer and title related to the Membership Interest of Seller as is reasonably requested by Buyer, and Buyer shall deliver to Seller the Purchase Price and shall cause the Company to issue a Grant of the Profits Interest in the form attached hereto as **Exhibit B**.

5.    TERMINATION OF MEMBERSHIP; RESIGNATION.  Effective upon Closing, Seller shall cease to be a member of the Company and shall have no claims whatsoever to distributions from the Company or to any assets of the Company, except as provided in Section 2 hereof.  Effective upon Closing, Seller hereby resigns from any and all posts and positions with the Company and acknowledges that it has no claims for compensation through the Closing Date, except as provided in Section 2 hereof.

6.    REPRESENTATIONS AND WARRANTIES OF SELLER.  Seller represents and warrants to Buyer as follows:

(a)    Subject to Section 3 of this Agreement, Seller has or will have by the Closing Date full right, power and authority to consummate the transactions contemplated in this Agreement.  The execution, delivery and performance of this Agreement will not conflict with nor result in any breach of the provisions of, or constitute a default under, any agreement or other instrument to which Seller is a party or by which Seller may be bound.

The foregoing representations and warranties shall survive the assignment of the Membership Interest and shall be deemed to be repeated in the Assignment.

7.      **FURTHER ASSURANCES**.  The Parties each agree to do, execute, acknowledge and deliver all such further acts, instruments and assurances and to take all such further action before or after the Closing as shall be necessary or desirable to fully carry out this Agreement and to fully consummate and effect the transaction contemplated hereby.

8.      **INDEMNIFICATION**.  Buyer hereby indemnifies Seller and holds it harmless from and against all claims, liabilities, damages, losses, costs and expenses (including attorney's fees) arising out of (i) any breach of representation, warranty or covenant or inaccurate or erroneous representation made by Buyer to such Seller in this Agreement and (ii) the ongoing business operations of the Company.

9.      **RELEASE**.  Buyer hereby releases and waives, and forever discharges any and all claims, suits, actions, and liabilities, whether the known or unknown, against Seller and its respective shareholders, directors, agents, officers, representatives, successors, and assigns arising from or in any way related to any act or omission.  Each released party that is not a party to this Agreement is a third party beneficiary of this Agreement.

10.     **COSTS AND EXPENSES**.  The parties agree that each party shall bear its own costs and expenses incurred by such party in connection with the negotiation, preparation, drafting and performance under this Agreement.

11.     **NOTICES**.  Any notices or communications required or permitted under this Agreement shall be sufficiently given to a party hereto if sent by first class mail, postage prepaid, to the address of such party, or by email to the email address, indicated below, or such other address or email address as a party may provide in writing to all other party hereto subsequent to the date of this Agreement:

|  |  |
|---|---|
| To Seller: | Sears, Roebuck and Co. |
| | 3333 Beverly Road |
| | Hoffman Estates, Illinois 60179 |
| | Attn: _____ |
| | Email: _____ |
| | |
| To Buyer: | NP, Inc. |
| | 1644 Platte Street, Suite 130 |
| | Denver, Colorado 80202 |
| | Attn: Randy T. Nichols |
| | Email:  rnichols@nicholspartnership.com |

12.     **SUCCESSORS AND ASSIGNS**.  This Agreement and the rights of the parties hereunder shall be binding upon and shall inure to the benefit of the parties hereto and their agents, successors and assigns.

13.     **ENTIRE AGREEMENT**.  This Agreement constitutes the entire agreement and understanding among the parties hereto regarding the subject matter addressed herein and supersedes any prior agreement and understanding relating to the subject matter of this Agreement.  No change,

amendment, termination or attempted waiver of any of the provisions of this Agreement shall be binding unless in writing and signed by the party sought to be bound.

14. **COUNTERPARTS; FACSIMILES**. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute the same instrument, and may be executed by facsimile signature, and a facsimile signature shall constitute an original signature for all purposes.

15. **APPLICABLE LAW**. This Agreement shall be governed and regulated and the rights and liabilities of all parties hereto shall be construed in accordance with the laws of the State of Colorado (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such state are superseded by the Bankruptcy Code.

16. **ATTORNEYS' FEES AND COSTS**. In the event any proceeding is filed or instituted between the parties concerning this Agreement, the prevailing party shall receive from the other party or parties its attorneys' fees, experts' fees, costs and expenses, whether or not such controversy, claim or action is prosecuted to judgment or other form of relief. The "*prevailing party*" is the party that is awarded judgment or other legal or equitable relief as a result of trial or arbitration. If more than one party receives a judgment or other award of relief, the court or the arbitrator shall determine which party is the prevailing party, taking into consideration the merits of the claims asserted by each party, the relative values of the judgments, settlements or other forms of relief received by each party, and the relative equities between the parties.

*[Signature page follows]*

**IN WITNESS WHEREOF**, the parties hereto have entered into this Agreement as of the date first above written.

**BUYER:**

NP, INC., a
Colorado corporation

By: _____
    Randy T. Nichols, President

**SELLER:**

SEARS, ROEBUCK AND CO., a
New York corporation

By: _____

Na~ _____

Tit _____

*See attached signature page*

**IN WITNESS WHEREOF**, the parties hereto have entered into this Agreement as of the date first above written.

SELLER:

SEARS, ROEBUCK AND CO.,
a New York corporation

By: _____

Name: Mohsin Y. Meghji

Title: Chief Restructuring Officer

[SIGNATURE PAGE TO MEMBERSHIP INTEREST PURCHASE AGREEMENT]

## EXHIBIT A

### ASSIGNMENT OF MEMBERSHIP INTEREST IN
### CLAYTON STREET ASSOCIATES, LLC

THIS ASSIGNMENT is made effective as of the __ day of February, 2020, by **SEARS, ROEBUCK AND CO.**, a New York corporation ("**Assignor**") in favor of **NP, INC.**, a Colorado corporation ("**Assignee**"; Assignor and Assignee are also collectively referred to as the "**Parties**").

W I T N E S S E T H

WHEREAS, Assignor is a Member of Clayton Street Associates, LLC, a Colorado limited liability company ("**Company**"), pursuant to that certain Operating Agreement dated November 1, 2001, as amended by that First Amendment to Operating Agreement dated April 5, 2007 (collectively, the "**Operating Agreement**"); and

WHEREAS, Assignor owns five hundred (500) Voting Capital Units in the Company, which constitute a forty-five and eleven one hundredths percent (45.11%) Capital Unit Ratio in the Company (the "**Membership Interest**"); and

WHEREAS, Assignor desires to assign the Membership Interest to Assignee upon the terms and conditions hereof.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **ASSIGNMENT OF MEMBERSHIP INTEREST**.  Assignor hereby assigns and transfers the Membership Interest to Assignee.

2.      **MISCELLANEOUS**.  The Parties each agree to do, execute, acknowledge and deliver all such further acts, instruments and assurances and to take all such further action as shall be necessary or desirable to fully carry out this Assignment and to fully consummate and effect the transaction contemplated hereby. In the event of any action or proceeding involving the parties hereto arising out of or in connection with this Assignment or the breach of any representation or warranty set forth herein, the prevailing party in such action or proceeding shall be awarded all of its costs and expenses reasonably incurred in connection therewith, including but not limited to, reasonable attorneys' fees and expert witness fees, in addition to any other relief to which such party may be entitled.

IN WITNESS WHEREOF, Assignor has executed this Assignment effective as of the day and year first written above.

**ASSIGNOR:**                                          **SEARS, ROEBUCK AND CO.**, a
                                                       New York corporation


                                                       By: _____
                                                       Name: _____
                                                       Title: _____

## EXHIBIT B

## GRANT OF PROFITS INTEREST IN
## CLAYTON STREET ASSOCIATES, LLC

THIS PROFITS INTEREST GRANT (this "*Grant*") is made as of _____, 2020, by CLAYTON STREET ASSOCIATES, LLC, a Colorado limited liability company ("*Company*") in favor of SEARS, ROEBUCK AND CO., a New York corporation ("*Recipient*").

WHEREAS, Recipient is a former member of the Company; and

WHEREAS, the Company desires to issue and Recipient desires to acquire the profits interest described below, on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants herein and other good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    PROFITS INTEREST.

The "*Profits Interest*" granted to Recipient hereunder shall mean the right to receive twenty percent (20%) of all Net Proceeds resulting from a Company Change in Control at any time within five years of the Closing Date. A "*Company Change in Control*" shall mean (i) the purchase or other acquisition by any person, entity or group of persons of all of outstanding membership interests of the Company, (ii) a reorganization, merger or consolidation of the Company, whereby the members of the Company immediately prior to such reorganization, merger or consolidation, do not, immediately thereafter, own more than fifty percent (50%) of the combined voting power of the surviving entity, or (iii) a liquidation or dissolution or the sale of all or substantially all of the assets of the Company. "*Net Proceeds*" shall mean the proceeds available for distribution following (a) payment of all outstanding expenses associated with the Company operations and the ultimate sale or other disposition of Company property, including without limitation, title company premiums and brokerage commissions, (b) repayment of any outstanding debt of the Company (c) a return to members of the Company of all capital contributions, and (d) a ten percent (10%) preferred return compounded quarterly to the members of the Company on all costs and expenses incurred by the Company up through the Company Change in Control, including without limitation the $6,000,000 anticipated to be paid by the Company to the City and County of Denver and all due diligence, transaction, and closing costs associated with the same and all operating and maintenance expenses associated with any property held by the Company.

2.    NO RIGHTS AS MEMBER.

Nothing herein with respect to the Profits Interest shall be construed to: (a) give Recipient any rights whatsoever with respect to membership interests or capital units of the Company or otherwise cause Recipient to be a member or owner of the Company; or (b) cause the Profits Interest to be deemed capital units of the Company.

3.      **TAXATION.**

Recipient understands and agrees that, the acceptance of the Profits Interest and/or receipt of payment with respect thereto by Recipient shall constitute an agreement by Recipient to report any income in connection therewith in accordance with then applicable law and to cooperate with Company in establishing the amount of such income and corresponding deduction, if any, to the Company for its income tax purposes. Withholding for Federal or state income tax purposes will be made, if and as required by law.

4.      **FURTHER ACTIONS.**

The parties agree to execute such further instruments and to take such further action as may reasonably be necessary to carry out the intent of this Grant.

5.      **NOTICES.**

All notices, requests, demands and other communications under this Grant shall be in writing and shall be deemed to have been duly given on: (a) the date of service if served personally on the party to whom notice is to be given; (b) the date when sent by electronically confirmed electronic mail transmission provided, that the date is a business day and if not then the next business day; or (c) within three (3) days after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, return receipt requested, postage prepaid, and properly addressed to the party at its address set forth on the signature page of this Grant or any other address that any party may designate by written notice to the other.

6.      **SUCCESSORS AND ASSIGNS.**

Recipient shall have no right to assign or otherwise transfer this Grant or its rights hereunder and any attempted assignment or transfer shall be null, void and of no force or effect. This Grant shall inure to the benefit of the successors and assigns of the Company.

7.      **SEVERABILITY.**

If any provision of this Grant is invalid or unenforceable in any jurisdiction, then, to the fullest extent permitted by law, (a) such provision shall be modified to be enforced to the maximum extent permitted by law; (b) the other provisions hereof shall remain in full force and effect in such jurisdiction; and (c) the invalidity or unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of such provision in any other jurisdiction.

8.      **GOVERNING LAW AND VENUE.**

This Grant shall be governed by and interpreted in accordance with the laws of Colorado, without regard to any applicable conflicts of law, except to the extent that the laws of such state are superseded by the Bankruptcy Code. Any actions regarding this Grant shall be heard in a court of competent jurisdiction sitting in or for Denver, Colorado, to whose jurisdiction the parties expressly consent, except to the extent superseded by the Bankruptcy Code.

9.      **ATTORNEYS' FEES AND COSTS.**

In the event any proceeding is filed or instituted between the parties concerning this Grant, the prevailing party shall receive from the other party or parties its attorneys' fees, experts' fees, costs and

expenses, whether or not such controversy, claim or action is prosecuted to judgment or other form of relief.  The "*prevailing party*" is the party that is awarded judgment or other legal or equitable relief as a result of trial or arbitration.  If more than one party receives a judgment or other award of relief, the court or the arbitrator shall determine which party is the prevailing party, taking into consideration the merits of the claims asserted by each party, the relative values of the judgments, settlements or other forms of relief received by each party, and the relative equities between the parties.

10.    <u>ENTIRE AGREEMENT</u>.

This Grant constitutes the entire agreement of the parties with respect to the subject matter hereof.


**IN WITNESS WHEREOF**, the parties hereto have executed this Grant as of the date first above written.

**COMPANY:**                                   **CLAYTON STREET ASSOCIATES, LLC**, a
                                               Colorado limited liability company


                                               By:_____
                                                   Randy T. Nichols, Manager


**RECIPIENT:**                                 **SEARS, ROEBUCK AND CO.**, a
                                               New York corporation


                                               By:_____
                                               Name: _____
                                               Title: _____