CALFEE, HALTER & GRISWOLD LLP
Wall Street Plaza
88 Pine Street, 14th Floor
New York, NY 10005-1802
Telephone: (888) 225-3331
H. Jeffrey Schwartz

-and-

CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Gus Kallergis
Ronald McMillan
Larry Wilcher

*Counsel for Winners Industry Co., Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION, et al.,** | : | **Case No. 18-23538 (RDD)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

-------------------------------------------------------------x

**NOTICE OF FILING APPELLATE BRIEFING FROM *WINNERS INDUSTRY CO., LTD.***
***V. SEARS HOLDING CORPORATION*, CASE NO. 7:19-CV-10231-NSR (S.D.N.Y**
**IN SUPPORT OF THE RESPONSE OF WINNERS INDUSTRY CO., LTD.**
**IN OPPOSITION TO DEBTORS' TENTH OMNIBUS OBJECTION**
<u>**TO PROOFS OF CLAIM (TO RECLASSIFY CLAIMS)**</u>

# Exhibit A

# Appellant Brief, *Winners Industry Co. Ltd. v. Sears Holding Corporation*, Case No. 7:19-cv-10231-NSR (S.D.N.Y)

18-23538-sbl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 2 of 66
Case 7:19-cv-10231-NSR Document 12 Filed 01/20/20 Page 1 of 65

Case No. 7:19-cv-10231-NSR

---

*In the United States District Court*
*for the Southern District of New York*

WINNERS INDUSTRY CO., LTD.,

Appellant,

v.

SEARS HOLDINGS CORPORATION,

Appellee.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK,
*IN RE SEARS HOLDINGS CORP., ET AL., DEBTORS*,
CASE NO. 7:18-BK-23538-RDD

---

**BRIEF OF APPELLANT, WINNERS INDUSTRY CO., LTD.**

---

CALFEE, HALTER & GRISWOLD LLP
Wall Street Plaza
88 Pine Street, 14th Floor
New York, NY 10005-1802
Telephone: (888) 225-3331
H. Jeffrey Schwartz
jschwartz@calfee.com

-and-

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 3 of 66
Case 7:19-cv-10231-NSR Document 12 Filed 01/02/20 Page 2 of 95

CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Gus Kallergis (*pro hac vice* pending)
Ronald McMillan (*pro hac vice* pending)
gkallergis@calfee.com
rmcmillan@calfee.com

*Attorneys for Appellant,
Winners Industry Co., Ltd.*

18-23538-sbl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 4 of 66
Case 7:19-cv-10231-NSR Document 12 Filed 01/02/20 Page 3 of 65

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012, Appellant,
Winners Industry Co., Ltd., makes the following disclosure: Winners Industry
Co., Ltd. is not a parent, subsidiary or affiliate of any publicly traded company,
and no publicly traded company owns any of its stock.

*/s/ H. Jeffrey Schwartz*
H. Jeffrey Schwartz

18-23538-sbl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 5 of 66
Case 7:19-cv-39231-NSR Document 12 Filed 01/02/20 Page 4 of 65

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT.................................................. i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF CASES, STATUTES AND OTHER AUTHORITIES .................... iv

I. STATEMENT IN SUPPORT OF ORAL ARGUMENT ................................ 1

II. JURISDICTIONAL STATEMENT ................................................... 1

III. STATEMENT OF THE ISSUES .................................................... 3

IV. APPLICABLE STANDARD OF REVIEW ........................................ 4

V. PRELIMINARY STATEMENT ...................................................... 4

VI. STATEMENT OF THE CASE....................................................... 7

    A. The First Day Motions and the Vendor Comfort Order............................ 7

    B. The Debtors' Sale of Substantially All Their Assets ................................ 8

    C. Winners's Motion for Allowance and Payment of Administrative
    Expenses.......................................................................................... 9

    D. The May 21, 2019 Hearing and Bench Ruling .........................................10

    E. The Risk of Administrative Insolvency Discussed at the Confirmation
    Hearing..........................................................................................13

    F. Entry of the Appealed Order — Five Months after the May 21 Hearing
    and after Confirmation ................................................................15

VI. SUMMARY OF ARGUMENT ........................................................ 15

VII. ARGUMENT ................................................................... 19

    A. The Bankruptcy Court Erred when It Concluded that Postpetition
    Delivery of Goods into the Physical Possession of the Debtor under a

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 6 of 66
Case 7:19-cv-39231-NSR   Document 12   Filed 01/03/20   Page 5 of 65

Prepetition Order Does Not Qualify as a Postpetition Transaction
Warranting Treatment as an Administrative Expense Under Section
503(b)(1). ...................................................................................19

1. The Applicable Law Supports Finding the Existence of a Postpetition
Transaction...............................................................................19

2. Established Chapter 11 Practice and First Day Orders Support
Granting and Administrative Expense.....................................24

3. The Case Law Relied on by the Bankruptcy Court Does Not
Foreclose Finding a Postpetition Transaction or Granting an
Administrative Expense. .........................................................29

B. The Bankruptcy Court Erred by Violating SCOTUS and Second Circuit
Canons of Statutory Construction when Ignoring Section 503(b)(9) in its
Determination of an Administrative Expense Claim Under Section
503(b)(1) ........................................................................................33

1. The Controlling Canons of Statutory Construction. ..............33

2. Section 503(b)(9) and the Third Circuit's Decision in *World Imports*
Informs the Section 503(b)(1) Analysis. ................................36

3. The Bankruptcy Court Erred by Failing to Apply Controlling Rules
of Statutory Construction that Would Require Harmonizing the
Entitlement of Administrative Expense Claims under Section
503(b)(1) and Section 503(b)(9) and Embracing an Interpretation
that Creates Absurd Results. ...................................................38

C. Winners Was and Continues to Be Harmed by the Dilatory Tactics of the
Debtors.................................................................................................46

VIII.   CONCLUSION ....................................................................... 52

CERTIFICATE OF COMPLIANCE................................................... 54

PROOF OF SERVICE ......................................................................... 56

18-23538-sbl 7: Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Case 7:19-cv-39231-NSR Document 12 Filed 01/02/20 Page 6 of 65
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 7 of 66

# TABLE OF CASES, STATUTES AND OTHER AUTHORITIES

**Cases**                                                                **Page(s)**

*Bell v. Thompson*,
  545 U.S. 794 (2005) .................................................................46

*Brown v. Duchesne*,
  60 U.S. (19 How.) 183 (1856).........................................................34

*Collingwood Grain, Inc. v. Coast Trading Co, (In re Coast Trading Co.)*,
  744 F.2d 686 (9th Cir.1984) ..........................................................21

*Commodity Futures Trading Comm'n v. Weintraub*,
  471 U.S. 343 (1985) .................................................................49

*Corabi v. Auto Racing, Inc.*, 264 F.2d 784 (3d Cir. 1959) ...................................35

*EEOC v. Commercial Office Prods. Co.*,
  486 U.S. 107 (1988) .................................................................34

*Erie R. Co. v. Russell*,
  183 F. 722 (2d Cir. 1910) ............................................................35

*Estate of Wood v. C.I.R.*,
  909 F.2d 1155 (8th Cir.1990)..........................................................35

*Goodyear Atomic Corp. v. Miller*,
  486 U.S. 174 (1988) .................................................................35

*Hardy v. Rossell*,
  135 F. Supp. 260 (S.D.N.Y. 1955) ...................................................38

*Howard Delivery Serv. v. Zurich Am. Ins. Co.*,
  547 U.S. 651 (2006) ..................................................................2

*In re A. Marcus Co.*,
  64 B.R. 207 (Bankr. N.D. Ill. 1986)...................................................29

*In re A.C.E. Elevator Co., Inc.*,
  347 B.R. 473 (Bankr. S.D.N.Y. 2006)..................................................20

*In re Adelphia Business Solutions, Inc.*,
   296 B.R. 656 (Bankr. S.D.N.Y. 2003) ........................................................21, 32

*In re Ames Dep't Stores, Inc.*,
   582 F.3d 422 (2d Cir. 2009) .........................................................................2

*In re Chateaugay Corp.*,
   10 F.3d 944 (2d. Cir. 1993) ..........................................................................20

*In Re Hostess Brands, Inc.*,
   499 B.R. 406 (S.D.N.Y. 2013) ..........................................................29, 30, 31

*In re Hyman*,
   502 F.3d 61 (2d Cir. 2007) ............................................................................4

*In re Jamo*,
   283 F.3d 392 (1st Cir. 2002) ........................................................................34

*In re John Clay and Co. Inc.*,
   43 B.R. 797 (Bankr. D. Utah 1984) ..............................................................21

*In re Mirant Corp.*,
   440 F.3d 238 (5th Cir. 2006) ........................................................................34

*In re Russell Cave Co.*,
   249 B.R. 145 (Bankr. E.D. Ky. 2000) ...........................................................29

*In re World Imports, Ltd.*,
   862 F.3d 338 (3d Cir. 2017) .................................................................*passim*

*King v. St. Vincent's Hosp.*,
   502 U.S. 215 (1991) ......................................................................................34

*Lang v. Elm City Const. Co.*,
   217 F. Supp. 873 (D. Conn.) ........................................................................35

*Lorillard v. Pons*,
   434 U.S. 575 (1978) ......................................................................................35

*Pan Am Corp. v. Delta Air Lines*,
   175 B.R. 438 (Bankr. S.D.N.Y. 1994) ..........................................................49

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 9 of 66
Case 7:19-cv-39231-NSR Document 12 Filed 01/02/20 Page 8 of 65

*Stafford v. Briggs*,
  444 U.S. 527 (1980) ...................................................................34

*Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*,
  789 F.2d 98 (2d Cir. 1986)....................................15, 20, 29, 30, 31

*United States v. Langley*,
  62 F.3d 602 (4th Cir. 1995)........................................................35

*Yerdon v. Henry*,
  91 F.3d 370 (2d Cir. 1996).....................................................33, 44

| **Statutes** | **Pages(s)** |
|---|---|

11 U.S.C. § 101 ........................................................................52

11 U.S.C. § 327 ........................................................................52

11 U.S.C. § 503 .............................................................4, 21, 44

11 U.S.C. § 503(b) ............................................................*passim*

11 U.S.C. § 503(b)(1) ........................................................*passim*

11 U.S.C. § 503(b)(9) ........................................................*passim*

11 U.S.C. § 507(b) ...................................................................13

11 U.S.C. § 541 ...................................................................18, 20

11 U.S.C. § 704(a) ....................................................................49

11 U.S.C. § 1102 ......................................................................52

11 U.S.C. § 1112 ......................................................................49

11 U.S.C. § 1112(b) ..................................................................49

11 U.S.C. § 1129(a)........................................................11, 49, 50

28 U.S.C. § 157(a) .....................................................................1

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 10 of 66

Case 7:19-cv-39231-NSR   Document 12   Filed 01/20/20   Page 9 of 65

28 U.S.C. § 157(b) ................................................................................2

28 U.S.C. § 158 ....................................................................................2

28 U.S.C. § 1334 ..................................................................................1

**Other Authorities**                                                    **Pages(s)**

Amended Standing Order of Reference M-431, dated January 31, 2012
    (Preska, C.J.) ................................................................................2

American Bankruptcy Institute Form III.M., Motion for Order Authorizing
    Postpetition Delivery of Goods Ordered Prepetition, ABI-FDMOT III.M, 99-
    100..............................................................................................29

ANTONIN SCALIA & BRYAN GARNER, Reading Law: The Interpretation of
    Legal Texts 180 (2012) ................................................................34

Fed. R. Bankr. P. 8002(a) ....................................................................2

Fed. R. Bankr. P. 8015 .........................................................................2

Fed. R. Bankr. P. 8018 .........................................................................2

Fed. R. Bankr. P. 8019(a) .....................................................................1

U.C.C. § 2-606 ...................................................................................22

U.C.C. § 2-702(1)...............................................................................22

U.C.C. § 2-705 ...................................................................................22

United Nations Convention on Contracts for the International Sale of Goods
    ("CISG") Article 71(2)..................................................................22

18-23538-shl    Doc 7352-1    Filed 02/28/20    Entered 02/28/20 16:52:24    Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora    Pg 11 of 66
Case 7:19-cv-10231-NSR    Document 12    Filed 04/02/20    Page 10 of 65

# I.    STATEMENT IN SUPPORT OF ORAL ARGUMENT[1]

Pursuant to Rule 8019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant, Winners Industry Co., Ltd. ("Winners"), respectfully requests oral argument on this appeal to answer the Court's questions and to discuss the reasons that the Order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") denying Winners' Motion was in error and the materially prejudicial implications that the Bankruptcy Court's error will have on current and subsequent bankruptcy proceedings and on international commerce, including in the underlying bankruptcy case and in other cases to follow.

# II.    JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of New York has jurisdiction over this matter generally pursuant to 28 U.S.C. § 1334, and that court had properly referred this matter to the Bankruptcy Court under 28 U.S.C. § 157(a)

---

[1] Defined terms, not otherwise defined herein, shall have the meanings given to them in the *Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sear Holdings Corporation and Its Affiliated Debtors and (II) Granting Related Relief* [ECF:5370, A-1555] (the "Confirmation Order") and the confirmed *Modified Second Amended Joint Chapter 11 Plan of Sears Holding Corporation and Its Affiliated Debtors* (the "Plan") [ECF:5370-1, A-1598], which is included as Exhibit A to the Confirmation Order.  References to "A-" herein are citations to the Appendix being filed concurrently with this Brief pursuant to Federal Rules of Bankruptcy Procedure 8015 and 8018.  References to "ECF" herein are citations to the docket numbers in the underlying bankruptcy case.

and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).

This appeal arises from a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B) and (O). The Bankruptcy Court has authority to enter final orders in the underlying proceeding, and Winners consented to entry of final orders by the Bankruptcy Court. On October 15, 2019, the Bankruptcy Court entered its *Order Denying Vendors' Motions for Allowance and Payment of Administrative Expense Claims* [ECF:5371, A-1709] (the "Appealed Order"). Winners timely appealed that Order by filing a Notice of Appeal on October 28, 2019, within the fourteen-day period set forth in Bankruptcy Rule 8002(a)(1).

This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 158 because Winners is appealing an order of the Bankruptcy Court that disallows an administrative expense claim, which constitutes a final, appealable order. *See Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006) (decision regarding the priority of a claim is final and appealable); *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 425-26 (2d Cir. 2009) (order disallowing administrative expense claims until related preference claims were resolved was final and appealable).

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 13 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 12 of 65

### III.   STATEMENT OF THE ISSUES

Winners presents the Court with three issues for review:

1.      Did the Bankruptcy Court err by failing to follow the United States Supreme Court's and the Second Circuit Court of Appeals' governing principles of statutory construction mandating harmonizing and interpreting subsections (b)(1) and (b)(9) of section 503 of the Bankruptcy Code in a compatible and not contradictory manner so that both the vendor delivering goods into the physical possession of a debtor in the 20 days prior to the petition date and the vendor delivering goods into the physical possession of a debtor in possession are treated compatibly to an administrative expense under section 503(b) of the Bankruptcy Code?

2.      Did the Bankruptcy Court err by ignoring the United States Supreme Court's and the Second Circuit Court of Appeals' governing principles of statutory construction by expressly choosing to interpret section 503(b)(1)(A) in a manner creating an absurd result, *i.e.*, that a vendor who under a prepetition sales agreement delivers goods into the physical possession of a debtor during the 20 days immediately before a petition date is entitled to administrative expense priority status but a vendor who under an identical prepetition sales agreement delivers goods on or after a petition date into the physical possession of a debtor in possession is merely entitled to a general unsecured claim?

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:43   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 14 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 13 of 65

3.     Did the Bankruptcy Court err by not recognizing that a vendor's postpetition delivery of goods into the physical possession of a debtor in possession and the debtor in possession's acceptance of such goods with their associated value constitutes a postpetition transaction with a debtor in possession under subsisting case law interpreting section 503(b)(1)(A) of the Bankruptcy Code?

## IV.   APPLICABLE STANDARD OF REVIEW

When a district court sits as an appellate tribunal in a bankruptcy case, "[t]he Bankruptcy Court's legal conclusions are reviewed *de novo* and its factual conclusions are reviewed for clear error." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citation omitted).  The instant appeal addresses the Bankruptcy Court's interpretation of 11 U.S.C. § 503; thus, this Court reviews the Bankruptcy Court's legal conclusions *de novo*.

## V.   PRELIMINARY STATEMENT

The Appellant, a Hong Kong-based vendor, manufactured and shipped goods — custom-ordered artificial Christmas trees and wreaths (the "Winners Goods") — causing them to be delivered into the physical possession of the Debtors.[2]  The Winners Goods were shipped "free on board" (FOB) on prepetition

---

[2] The term "Debtors" refers collectively to Sears Holdings Corporation and its debtor affiliates, the above-captioned debtors and debtors in possession in the jointly-administered chapter 11 cases, Case No. 18-23538 (RDD), pending before

-4-

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 15 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 14 of 65

purchase orders from Sears and Kmart.  This appeal seeks to correct the negative impact and implications resulting from the Bankruptcy Court's failure to interpret and apply (a) section 503(b)(1) of the Bankruptcy Code in a manner consistent with section 503(b) of the Bankruptcy Code as a whole, (b) relevant case law, including case law from the United States Court of Appeals for the Third Circuit (the "Third Circuit") interpreting the application of section 503(b)(9) in depth as to vendor claims, (c) the section 503(b) statutory framework for recognizing and allowing administrative expense claims and (d) the Bankruptcy Court's own prior order conferring administrative priority to claims for goods ordered prepetition but delivered postpetition into the physical possession of the Debtors.  Facing their current administrative insolvency and consequent difficult-at-best prospects for confirming and taking effective a liquidating chapter 11 plan of reorganization, the Debtors have relentlessly sought to minimize the class of allowed administrative expense claims by systematically delaying resolution of straightforward legal questions and advocating legal theories contrary to the established chapter 11 practice of treating vendor claims for postpetition delivery of goods on prepetition orders as administrative expenses under section 503(b)(1) of the Bankruptcy Code as a matter of law.

---

the Bankruptcy Court, and in the postpetition context, refers to them in their capacity as debtors in possession.

The Bankruptcy Court's erroneous decision on this straightforward legal issue principally benefits the Debtors' professionals as competing administrative claimants — who must avoid a determination that the chapter 11 cases are administratively insolvent, preventing consummation of a confirmed plan of reorganization and risking conversion of these chapter 11 liquidating cases into chapter 7 liquidation proceedings — to the detriment of not only the instant creditors but to the chapter 11 reorganization process in general. Leaving intact the Bankruptcy Court's erroneous decision on this legal issue will create uncertainty among vendors around the world as to the distributive priority of their claims. Absent reversal of the order below, claims for goods delivered after the petition date that are, by statutory mandate, administrative claims reimbursed at 100%, would be denied such priority merely because the purchase agreement was entered prepetition. This perverse result would undermine the prospects for successful reorganization in chapter 11 cases, because, as admitted at length by the Debtors, such vendors would be motivated as of bankruptcy case commencement to recall pending deliveries en route to a debtor in possession. Those debtors in possession would then be unable to continue business operations or to reorganize successfully under chapter 11.

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 17 of 66
Case 7:19-cv-10231-NSR Document 12 Filed 04/02/20 Page 16 of 65

## VI.   STATEMENT OF THE CASE

### A.   *The First Day Motions and the Vendor Comfort Order*

On October 15, 2018 (the "Petition Date"), the Debtors filed chapter 11 petitions with the Bankruptcy Court.  The Debtors filed the traditional first-day motions that typically provide business operations a smooth transition into chapter 11 and permit the Debtors to operate their businesses in the ordinary course, including motions to pay prepetition employee wage and benefits, to continue customer programs, to pay certain critical vendors and to obtain postpetition financing.  *See Disclosure Statement for Modified Second Amended Joint Plan Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* (the "Disclosure Statement") [ECF:4478 at 31-32, A-942-43; *see also* Bankruptcy Court Docket, A-1969-72].  The Debtors represented to the Bankruptcy Court that they critically needed the uninterrupted flow of goods, such as the Winners Goods, into their domestic warehouses and retail stores.  As a result, they included in the first-day relief the *Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehouseman, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business* [ECF:14, A-174] (the "Vendor Comfort Motion").

-7-

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 18 of 66
Case 7:19-cv-10231-NSR Document 12 Filed 04/02/20 Page 17 of 65

The Bankruptcy Court approved the Vendor Comfort Motion, on a final basis, on November 20, 2018, by entering its *Final Order Authorizing Debtors to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders Of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course Of Business* [ECF:843, A-206] (the "Final Vendor Comfort Order"). The Final Vendor Comfort Order provided:

> **All undisputed obligations of the Debtors arising from the postpetition delivery or shipment [ ] of goods under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code**, and the Debtors are authorized, but not directed, to pay such obligations in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

[*Id.* at 4, A-209 (emphasis added).]

## B.    The Debtors' Sale of Substantially All Their Assets[3]

While the Debtors sought to stabilize their operations in operating as debtors in possession, they also pursued their goal of selling all their assets as a going concern on an expedited basis.  On January 17, 2019, the Debtors entered into an Asset Purchase Agreement with Transform Holdco LLC ("Transform" or the "Buyer"), an entity controlled by ESL Investments, Inc. (together with its

---

[3] *See generally* the Disclosure Statement [ECF:4478 at 1-2, A-912-13] for the description of the sale process.

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 19 of 66

Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 18 of 65

principals and affiliates, "ESL"), the controlling shareholder of the Debtors prior to the Petition Date (the "Asset Purchase Agreement"). On February 7, 2019, over the objection of the Creditors' Committee and its assertion that the proposed insider sale would render the Debtors administratively insolvent, the Debtors obtained the Bankruptcy Court's approval of the sale of substantially all their assets to the insider (the "Sale Transaction"). On February 8, 2019, the Bankruptcy Court entered an order approving the Sale Transaction and the Asset Purchase Agreement. The Sale Transaction closed three days later, and substantially all the Debtors' operating assets were transferred to the Buyer, controlled by an insider of the Debtors whom the Debtors have sued for looting them in an amount not less than $2 billion. Consequently, since then the Debtors have had no operating businesses and have merely been liquidating their estates. [ECF:4478, A-913.]

### C. *Winners's Motion for Allowance and Payment of Administrative Expenses*

The Winners Goods consisted of 21 separate shipments during the 2018 season filling over 170 containers at a total undisputed invoice value of $5,359,201.08. [ECF:1386 at 7-8, A-221-22.] Two months after the Petition Date, Winners had still not been paid for the portion of the Winners Goods delivered into the physical possession of the Debtors both in the 20 days before the Petition Date and after the Petition Date. On December 21, 2018, Winners filed the *Motion of*

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 20 of 66

Case 7:19-cv-10231-NSR   Document 15   Filed 04/02/20   Page 19 of 65

*Winners Industry Co., Ltd. for Allowance and Payment of Administrative Expense
Claims* [ECF:1386, A-212] (the "AEC Motion").

Winners asserts in the AEC Motion that it is entitled to (a) administrative
expense claims pursuant to 11 U.S.C. § 503(b)(1)(A) of at least $870,861.32 with
respect to those Winners Goods received by one or more Debtors on or after the
Petition Date (the "Winners 503(b)(1) Claim"); (b) administrative expense claims
pursuant to 11 U.S.C. § 503(b)(9) of at least $2,061,869.95 with respect to those
Winners Goods received by one or more Debtors in the 20 days before the Petition
Date; and (c) immediate payment of Winners's administrative expense claims. [*Id.*
at 5, 10-11, A-219, 224-25.]

On March 15, 2019, the Debtors filed their *Objection to Winners Industry
Co., Ltd.'s Motion for Allowance and Payment of Administrative Claim*
[ECF:2839, A-294] ("Debtors' Objection").  On April 16, 2019, Winners filed its
*Initial Reply to Debtors' Objection to Motion of Winners Industry Co., Ltd. for
Allowance and Payment of Administrative Expense Claims* [ECF:3258, A-307].
On May 15, 2019, the Debtors filed *Debtors' Omnibus Objection to Vendors'
Motions for Allowance and Payment of Administrative Expense Claims*
[ECF:3883, A-350] as to Winners's and other vendors' administrative expense
claims.  By this time, seven months had elapsed since the Petition Date.

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 21 of 66

Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 20 of 65

### D.       The May 21, 2019 Hearing and Bench Ruling

Approximately five months after the AEC Motion was filed, on May 21, 2019, the Bankruptcy Court held a hearing on Winners' AEC Motion and the similar motions of other foreign vendors, all of whom had sought allowance of administrative expense claims under section 503(b)(1) [ECF:5500, A-3653] (the "May 21 Hearing").

The Bankruptcy Court articulated a bench ruling denying the requests of Winners and the other foreign vendors as to their asserted interpretation of section 503(b)(1) (the "May 21 Bench Ruling").  [ECF:5500 at 123:9-132:18, A-3775-84.]  The May 21 Bench Ruling, among other things, first denied the payment of any undisputed administrative expense claims for the time being because of the potential administrative insolvency of the Debtors and went on to note that section 1129(a) would require their payment to take a confirmed plan of reorganization effective:

> It's well established that the timing of distributions for administrative expense payments other than at the close of the case under Section 1129(a) of the Bankruptcy Code which requires unless agreed to a different treatment by the administrative expense creditor to be paid at the earlier – I'm sorry, at the later of the effective date of the plan or the allowance of the claim, is within the discretion of the Court.

[ECF:5500 at 125:15-22, A-3780.]

-11-

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 22 of 66

Case 7:19-cv-10231-NSR   Document 15   Filed 04/02/20   Page 21 of 65

The May 21 Bench Ruling rejected Winners's and the vendors' arguments that under controlling precedent from the Supreme Court of the United States ("SCOTUS") and the United States Court of Appeals from the Second Circuit (the "Second Circuit"), section 503(b)(1)(A) must be harmonized with section 503(b)(9) so that an administrative claim for receipt of goods arises under both sections when the debtor or its agent takes physical possession of the goods from and after the twentieth day preceding the petition date. [ECF:5500 at 129:20-130:8, A-3784-85.]  The Bankruptcy Court concluded as a matter of law:

> It continues to be the case that a debtor in possession or trustee needs to engage in a post-petition transaction or post-petition conduct that then is in addition beneficial to the state to give rise to an administrative expense under Section 503(b)(1).

> The mere fact of delivery post-petition where the transaction was entered into prepetition is insufficient to give rise to such a claim. So I will deny that aspect of the motions without ruling on the others that I've reserved decision on.  And the debtor can submit an order consistent with that.  You don't need to formally settle an order, but you should circulate it to the movants.

[ECF:5500 at 132:7-18, A-3787.]

Notwithstanding the May 21 Bench Ruling's instruction to circulate and submit an order, the Debtors delayed submission of an order incorporating the May 21 Bench Ruling for belated entry by the Bankruptcy Court on October 15, 2019, the date on which the Bankruptcy Court entered the Confirmation Order. The delay, by operation of law, prevented Winners from seeking appellate review

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:42 Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 23 of 66

Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 22 of 65

of the Bankruptcy Court's May 21 Bench Ruling prior to the Bankruptcy Court's October 15, 2019 confirmation of the Debtors' plan.

### E.   The Risk of Administrative Insolvency Discussed at the Confirmation Hearing

On October 3, 2019 and October 7, 2019, the Bankruptcy Court conducted a hearing (the "Confirmation Hearing") to confirm the Plan.  The risk of administrative insolvency were issues discussed in, and critical to, the Confirmation Hearing.  Establishing administrative solvency was the Debtors' burden, without which they could not obtain from the Bankruptcy Court confirmation of their Plan.  As outlined in the Disclosure Statement, the Debtors have insufficient cash on hand to pay all *asserted* administrative expense claims and are relying on litigation recoveries to pay such claims once allowed.  The Debtors estimated their administrative expense claims, excluding any 507(b) claims, at approximately $468 million in the aggregate for all Debtors. [ECF:4478, A-969.]  Excluding potential litigation recoveries, the Debtors also estimated the assets available to satisfy such administrative expense claims at approximately $487 million.[4] [ECF:4478, A-970.]   The Debtors recognized,

---

[4] The amounts listed in the Disclosure Statement were as of June 22, 2019.  At the time, $69 million was held in the professional fee carve out account. [Docket 4478, A-970.] ***The Debtors' Monthly Operating Report for the period covering August 4, 2019 – August 31, 2019 [ECF:5407, A-1724] shows cumulative payments to retained professionals of $190,599,202.  The Notice of Hearing on Interim Applications for Allowance of Compensation and Reimbursement of***

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 24 of 66

Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 23 of 65

however, that "[i]f the amount of 503(b)(1) claims asserted by such vendors [like Winners] are subsequently allowed, this could result in an increase of up to $63 million in the estimated aggregate amount of 503(b)(1) claims based on the Debtors' current analysis." [*Id.*, A-970.]   An increase of $63 million would require successfully obtaining recoveries from estate litigation to fund the mandatory plan payments to administrative expense creditors.  Until those funds are recovered, the Effective Date of any plan could not occur.

At the start of the hearing on October 7, 2019, the Debtors indicated that, at the Bankruptcy Court's direction, they had settled an administrative claimant's confirmation objection by (i) agreeing to an allowed $1,130,000 administrative claim and (ii) also agreeing to contribute $1,000,000 from the professionals' Carve-Out Account to a segregated account for paying administrative priority claimants under the Administrative Expense Claims Consent Program. [ECF:5396 at 10:12-11:13, A-3420; ECF:5370 at 26-33, A-1580-87.]  The need to transfer funds held in the Carve-Out Account so that non-professional, administrative priority claims may be paid is indicative of the challenges the Debtors will have in paying administrative claims, if Winners succeeds.

---

***Expense, covering fees and expenses for July through October 2019, includes requests for fees and expenses totaling $42,757,081.49.***  [ECF:6300, A-1962.]

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 25 of 66
Case 7:19-cv-10231-NSR   Document 12   Entered 04/02/20   Page 24 of 65

### F.   Entry of the Appealed Order — Five Months after the May 21 Hearing and after Confirmation

On October 15, 2019, following the Confirmation Hearing and concurrently with the entry of the Confirmation Order, the Bankruptcy Court entered the Appealed Order denying the AEC Motion [ECF:5371, A-1709]. Winners appealed that decision on October 28, 2019 [ECF:5522, A-1749]. Because the Debtors delayed for so long the Bankruptcy Court's ruling on the AEC Motion, this Court is only now reviewing the issue decided at the May 21 Hearing.

## VII.   SUMMARY OF ARGUMENT

Section 503(b)(1)(A) mandates that "[a]fter notice and a hearing, there shall be allowed administrative expenses," including "the actual, necessary costs and expenses of preserving the estate." Such a claim arises when there is a postpetition transaction (one between the debtor-in-possession and the creditor) from which the estate receives a benefit. *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986). Claims for goods under Prepetition Orders that are delivered into the physical possession of the Debtors after the Petition Date ("Pre/Post Goods"[5]) are entitled to administrative expense

---

[5] "Pre/Post Goods" hereafter refers to goods under prepetition purchase orders that are delivered postpetition into the physical possession of a debtor, including the Debtors, as debtor(s) in possession. Purchase orders or sale agreements that

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 26 of 66
Case 7:19-cv-10231-NSR Document 12 Filed 04/02/20 Page 25 of 65

priority treatment under section 503(b)(1)(A) as a matter of law because consideration is thus provided at the time of delivery into the physical possession of the Debtors.

Section 503(b)(1)(A) must be read harmoniously with section 503(b)(9), which includes as administrative expenses "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." Read in concert, these two subsections confirm that goods received by the Debtors within 20 days before ("20-Day Goods"[6]), or at any time after, the Petition Date on account of Prepetition Orders are entitled to priority as administrative expenses, and the Debtors received, and accepted for retail sale, essential custom-ordered goods from Winners during this time period. The Bankruptcy Court, in contravention of governing rules of statutory construction, the Bankruptcy Code, the applicable case law and its own prior order,[7] erroneously held that Pre/Post Goods were not entitled to administrative priority

---

were entered into before the commencement of the applicable case are hereafter defined as "Prepetition Orders."

[6] "20-Day Goods" hereafter refers to goods that are received by a debtor in the 20 days preceding the commencement of the applicable case.

[7] The Final Vendor Comfort Order is not the subject of this appeal. However, the Debtors' statements in obtaining that relief and the order's confirmation of the grant of priority to certain goods delivered postpetition bear relevance to the arguments raised in this appeal.

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 27 of 66
Case 7:19-cv-10231-NSR Document 12 Filed 04/02/20 Page 26 of 65

notwithstanding their postpetition delivery into the physical possession of the Debtors. In rejecting that conclusion, the Bankruptcy Court declined (a) to find a postpetition transaction with the Debtors, (b) to harmonize the two subsections of section 503(b) and (c) to embrace an admittedly "anomalous" result in failing to reconcile those subsections. [ECF:5500 at 131:23-25, A-3786.]

The Appealed Order errs on several fatal grounds. First, the Bankruptcy Court erred when it refused to find the existence of a postpetition transaction when the subject goods, *i.e.*, legal consideration, was rendered by Winners and correspondingly received by the Debtors when Winners facilitated the actual receipt of the Winners Goods into their physical possession after the Petition Date. The Bankruptcy Court held that because Pre/Post Goods were shipped because of the issuance of a "purchase order prepetition," the Pre/Post Goods gave rise merely to a general unsecured claim, *i.e.,* denuded of their administrative priority [ECF:5500 at 94:15-95:7, A-3749-50]. Second, the Bankruptcy Court erred when it failed to harmonize the two subsections of section 503(b) of the Bankruptcy Code by misinterpreting section 503(b)(1)(A) as being part of a "totally different statutory framework" than another subsection (*i.e.*, 503(b)(9)) of the same section of the Bankruptcy Code. [*Id.* at 93:14-15, A-3748.] By refusing to recognize that the date of receipt of the goods is critical for both subsections of section 503(b), the Bankruptcy Court erred by expressly

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Case 7:19-cv-10231-NSR Document 13 Filed 04/02/20 Page 27 of 65
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 28 of 66

embracing a reading of the statute that leads to an absurd result and an outcome it
recognized as "anomalous" — one in which a vendor whose goods are ordered
before the Petition Date and delivered into the physical possession of a buyer
during the 20 days *before* the Petition Date (*i.e.*, the 20-Day Goods) receives an
administrative expense claim while a vendor whose goods are ordered on the
same day before the Petition Date but delivered into the physical possession of a
debtor in possession one day *after* the Petition Date (*i.e.*, the Pre/Post Goods)
does not. The conclusion of law that Congress would intend to confer a higher
priority on a seller's conferring undisputedly legal consideration to a prepetition
buyer — when the section 541 of the Bankruptcy Code estate of the eventual
debtor does not yet exist — than to the conferral of actual legal consideration to a
debtor in possession's actual section 541 estate defies the plain terms of the
subject subsections of the Bankruptcy Code, logic and the governing black letter
canons of statutory interpretation recognized by SCOTUS and the Second Circuit.

Determining when goods are "received" by, or "delivered" to, the Debtors is
critical to resolving these issues. The Bankruptcy Court erred by failing to
recognize the relevance of, and to follow, the sole federal appellate decision on this
very point, the Third Circuit's decision in *World Imports*, which determined that
physical possession of the goods by the Debtor is required to satisfy the
requirements of an administrative expense claim under section 503(b)(9). *See*

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 29 of 66
Case 7:19-cv-10231-NSR   Document 15   Filed 04/02/20   Page 28 of 65

*World Imports*, 862 F.3d at 342-45.  Because actual physical possession of the goods is controlling for purposes of determining receipt and finding an administrative expense claim under section 503(b)(9), postpetition delivery of the goods into the physical possession of the Debtors must control for purposes of allowing an administrative expense claim under section 503(b)(1).

The Bankruptcy Court's failure to follow the established case law and precedent in substantially all chapter 11 cases that grant administrative expense priority claims to vendors who deliver goods into a debtor in possession's actual physical possession, constitutes reversible error.

## VIII. ARGUMENT

**A.    The Bankruptcy Court Erred when It Concluded that Postpetition Delivery of Goods into the Physical Possession of the Debtor under a Prepetition Order Does Not Qualify as a Postpetition Transaction Warranting Treatment as an Administrative Expense Under Section 503(b)(1).**

1.    The Applicable Law Supports Finding the Existence of a Postpetition Transaction.

The relevant case law interpreting section 503(b)(1) supports the legal conclusion that a vendor that delivers Pre/Post Goods satisfies the postpetition transaction element required for entitlement to an administrative expense claim. Section 503(b)(1)(A) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses" for "the actual, necessary costs and expenses of preserving the estate."  Courts in the Second Circuit generally use a two-part test

-19-

18-23538-shl    Doc 7352-1    Filed 02/28/20    Entered 02/28/20 16:52:24    Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora    Pg 30 of 66
Case 7:19-cv-10231-NSR    Document 12    Filed 04/02/20    Page 29 of 65

to determine whether a specific claim qualifies as an administrative expense under section 503(b)(1)(A). First, there must be a postpetition transaction, making it a transaction between the debtor in possession and the creditor; and second, the estate must receive a benefit from the transaction. *McFarlin's*, 789 F.2d at 101 (2d Cir. 1986). At the May 21 Hearing, neither the Debtors nor the Bankruptcy Court disputed that benefit was enjoyed by the Debtors by their actual receipt of the Winners Goods, but the Bankruptcy Court erroneously concluded that no "postpetition transaction" occurred.

Sellers that deliver Pre/Post Goods are routinely granted administrative expense claims, even if those goods are sold pursuant to Prepetition Orders. Under section 503(b)(1)(A) of the Bankruptcy Code, and as noted in the authorities that Debtors themselves cited in the Vendor Comfort Motion [ECF:14 at 15, A-188], obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority because they benefit the estate, which under section 541 of the Bankruptcy Code arises only upon the commencement of a bankruptcy case. 11 U.S.C. § 503(b)(1)(A). In the Vendor Comfort Motion, the Debtors cited *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d. Cir. 1993), for the proposition that "an obligation arising from the postpetition performance relating to a prepetition transaction is entitled to administrative expense priority." The Debtors also cited *In re A.C.E. Elevator Co., Inc.*, 347 B.R.

-20-

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 31 of 66

Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 30 of 65

473, 481 (Bankr. S.D.N.Y. 2006), for the proposition that "to receive a claim under section 503 a claimant must provide a postpetition benefit to the estate" [ECF:14 at 15-16, A-188-89]. Moreover, courts have specifically granted section 503(b)(1) administrative priority for Pre/Post Goods. *See Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 693 (9th Cir. 1984) (granting an administrative expense for a carload of grain delivered postpetition under a prepetition contract); *In re John Clay and Co. Inc.*, 43 B.R. 797, 809 (Bankr. D. Utah 1984) (claims based on deliveries of goods under prepetition contract were granted administrative priority if goods were received by the debtor in possession after petition date). The case law interpreting section 503(b)(1) does not require a postpetition ***contract*** with a debtor in possession, but merely a postpetition "transaction," which covers "a broader array of post-petition relations." *In re Adelphia Bus. Solutions, Inc.*, 296 B.R. 656, 663 (Bankr. S.D.N.Y. 2003) (rejecting the debtor's argument that there was no postpetition transaction because there was no postpetition contract with the debtor in possession and thus no contractual privity).

In the context of the sale of goods, the presence of certain inherent postpetition legal relations satisfy the finding of a postpetition transaction. First and foremost, the vendor provides actual consideration when it delivers the goods into the physical possession of the debtor in possession. In addition, by completing

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 32 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 31 of 65

delivering of goods, a seller relinquishes certain significant remedies.   For example, until the actual delivery into the physical possession of a buyer, a seller such as Winners continues to have rights in the goods it sells, including the right to stop goods in transit, even if title has passed.   *See, e.g.*, U.C.C. § 2-702(1) ("Where the seller discovers the buyer to be insolvent, he may refuse delivery except for cash including payments for all goods theretofore delivered under the contract, and stop delivery under this Article (Section 2-705)."); U.C.C. § 2-705 ("(1) The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent (Section 2-702)"); United Nations Convention on Contracts for the International Sale of Goods ("CISG") Article 71(2) (seller "may prevent the handing over of the goods to the buyer even though the buyer holds a document which entitles him to obtain them.").   Finally, the Winners Goods delivered after the Petition Date were accepted by the Debtors.   *See* U.C.C. § 2-606 ("Acceptance of goods occurs when the buyer [among other things] fails to make an effective rejection . . . but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them").   Vendors who complete delivery of Pre/Post Goods have thus achieved the requisite postpetition relations to satisfy the postpetition transaction element as a matter of law.

The Bankruptcy Court's exchanges with counsel for Winners evidence its contrary, erroneous conclusion of law.   Counsel for Winners expressed to the

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:42   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 33 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 32 of 65

Bankruptcy Court the importance of postpetition delivery of goods into the physical possession of the Debtors as the basis for identifying a postpetition transaction with the Debtors to support an administrative expense claim:

> MR. SCHWARTZ: May I respectfully submit to Your Honor that when the goods are delivered post-petition that's to a debtor in possession –

> THE COURT: *But the transaction is prepetition.* When a —

> MR. SCHWARTZ: *Performance is post-petition when the goods are received by the debtor in possession.*

> THE COURT: *No, the transaction is a prepetition transaction.* There are lots of times when things happen post-petition. Friendville, for example, McFarlands, but the consideration was prepetition, there was a contract prepetition. *There was a purchase order prepetition. It couldn't be clearer under the case law.*

> MR. SCHWARTZ: *I'm trying to put out the consideration is provided post-petition to the debtors.*

> THE COURT: If the goods had not been delivered, the debtors would have had a prepetition lawsuit against the client — your client.

> MR. SCHWARTZ: Right.

> THE COURT: *That was the transaction, the contract, the prepetition contract.* It was performing — your client and all the other parties who have made this argument were performing a prepetition agreement. *It wasn't an agreement with the estate, it wasn't an agreement with the debtor in possession.*

> MR. SCHWARTZ: *May I respectfully submit the estate accepted the goods.*

> THE COURT: *But based on a prepetition contract.*

18-23538-shl 7 Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora    Pg 34 of 66
Case 7:19-cv-10231-NSR    Document 12    Filed 04/02/20    Page 33 of 65

MR. SCHWARTZ: *But they got the goods, they have to receive the consideration.*

THE COURT: *It doesn't matter.*

[ECF:5500 at 94:8-95:13, A-3749-50 (emphasis added).]

The Bankruptcy Court's exchanges with counsel demonstrate the Bankruptcy Court's misunderstanding that Pre/Post Goods fails to qualify as a matter of law for administrative priority entitlement. This legal conclusion ignores the many postpetition relations inherent in the context of a sale of goods — *i.e.*, the consideration of delivery and receipt and acceptance of the goods by the debtor in possession after the Petition Date.

## 2.    Established Chapter 11 Practice and First Day Orders Support Granting an Administrative Expense.

Established chapter 11 practice supports the legal conclusion advanced by Winners, and when it suits them, the Debtors. Courts, as part of the first-day relief, universally grant vendors of goods shipped or delivered postpetition on account of Prepetition Orders administrative expense claims under section 503(b)(1) of the Bankruptcy Code.[8] Counsel for the Debtors, one of the leading bankruptcy debtor

---

[8] *See, e.g.*, *In re Bumble Bee Parent, Inc.*, No. 19-12502 (LSS) (Bankr. D. Del. Nov. 22, 2019); *In re Imerys Talc Am., Inc.*, No. 19-10289 (LSS) (Bankr. D. Del. March 19, 2019); *In re Herb Philipson's Army and Navy Stores Inc.*, No. 18-61376-6 (DD) (Bankr. N.D.N.Y. Nov. 19, 2018); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Oct. 25, 2017); *In re TerraVia Holdings, Inc.*, No. 17-11655 (CSS) (Bankr. D. Del. Aug. 30, 2017); *In re Vestis Retail Group, LLC*, No. 16-10971 (CSS) (Bankr. D. Del. April 19, 2016); *In re Arch Coal, Inc.*, No. 16-40120-705 (Bankr. E.D. Mo. Jan. 13, 2016); *In re Simmons Bedding Co.*,

18-23538-shl    Doc 7352-1    Filed 02/28/20    Entered 02/28/20 16:52:44    Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora    Pg 35 of 66
Case 7:19-cv-10231-NSR    Document 12    Filed 04/02/20    Page 34 of 65

practices, has sought and obtained this relief in many of its debtor representation cases, including in these chapter 11 cases.[9] The common elements of substantially all these motions are (a) the existence of Prepetition Orders and (b) the postpetition delivery of goods to the debtors in possession in those cases. In each of these cases, the bankruptcy courts granted administrative expense priority under section 503(b)(1) to those vendor claims.

The Debtors ostensibly sought and obtained the very same relief in these chapter 11 cases. In the Vendor Comfort Motion, the Debtors recognized and thus admitted the critical need to maintain the postpetition flow to the Debtors of goods they ordered from sellers such as the Appellant prepetition:

> It is essential that the Debtors ensure their Stores are continuously replenished with a supply of goods and merchandise that have been advertised for sale and that their customers expect for purchase, including, but not limited to, consumer electronics, **_seasonal merchandise_**, outdoor living, toys, lawn and garden equipment, food and consumables, apparel, major appliances, tools, automotive products, fashion, footwear, jewelry, and various other products (the "Merchandise"). **_Without this core Merchandise, the Debtors' business would suffer greatly_**.

No. 09-14037 (MFW) (Bankr. D. Del. Dec. 10, 2009). The relevant orders are included in the Appendix at A-3829 *et seq.*

[9] *See, e.g.*, *In re PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal. Feb. 27, 2019); *In re Tops Holding II Corp.*, No. 18-22279 (RDD) (Bankr. S.D.N.Y. March 22, 2018); *In re Breitburn Energy Partners LP*, No. 16-11390 (SMB) (Bankr. S.D.N.Y. May 20, 2016); *In re SIGA Technologies, Inc.*, No. 14-12623 (SHL) (Bankr. S.D.N.Y. Sept. 18, 2014); *In re Finlay Enterprises, Inc.*, No. 09-14873 (JMP) (Bankr. S.D.N.Y Aug. 6, 2009). The relevant orders are included in the Appendix at A-3860 *et seq.*

18-23538-shl    Doc 7352-1    Filed 02/28/20    Entered 02/28/20 16:52:24    Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora    Pg 36 of 66

Case 7:19-cv-10231-NSR    Document 12    Filed 04/03/20    Page 35 of 65

[ECF:14 at 4, A-177 (emphasis added).]   Thus, the Debtors, having filed their

petitions in mid-October, expressly recognized the need to maintain a supply of

"seasonal merchandise," such as the Winners Goods that the Debtors ordered,

received and sold to preserve their existing businesses during the typical robust

Christmas holiday shopping season.   The Debtors also recognized the problem

inherent in maintaining their "continuous" physical receipt of inventory absent

confirming the attachment of administrative expense priority to such vendor

claims:

> Prior to the Commencement Date, and in the ordinary course of
> business, the Debtors ordered approximately $162 million in
> Merchandise from suppliers and vendors that will not be delivered
> until on or after the Commencement Date (the "Prepetition Orders").
> These suppliers and vendors may be concerned that, because the
> Debtors' obligations under the Prepetition Orders arose prior to the
> Commencement Date, such obligations will be treated as general
> unsecured claims in these Chapter 11 Cases. ***Accordingly, certain
> vendors may refuse to provide goods to the Debtors (or may recall
> shipments thereof) purchased pursuant to the Prepetition Orders
> unless the Debtors issue substitute purchase orders postpetition or
> obtain an order of the Court providing that all undisputed
> obligations of the Debtors arising from the postpetition delivery of
> goods subject to Prepetition Orders are afforded administrative
> expense priority status under section 503(b) of the Bankruptcy
> Code.***

[*Id.* at 9, A-182 (emphasis added).]   Accordingly, the Debtors thus requested and

obtained from the Bankruptcy Court specific relief to "***afford[] administrative***

***expense priority status under section 503(b) of the Bankruptcy Code***" to

vendors for their claims for goods delivered into the hands of a debtor in

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:46   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 37 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 36 of 65

possession under a Prepetition Order.   In the Debtors' own words,
(a) "**obligations that arise in connection with the postpetition delivery of
necessary goods and services are afforded administrative expense priority
because they benefit the estate postpetition**" and (b) "**granting the relief sought
herein with respect to the prepetition orders will not provide the Vendors with
any greater priority than they would otherwise be entitled to, and will not
prejudice any part[y] in interest**."   [*Id.* at 16, A-189 (emphasis added).]   The
Debtors' very own Vendor Comfort Motion asserts that delivery after the Petition
Date constitutes consideration benefiting estates.   Here the Vendor Comfort
Motion notes an element of postpetition consideration: "**Absent such relief, the
Debtors may be required to expend substantial time and effort reissuing the
Prepetition Orders to provide their vendors with assurance of administrative
priority**."   [*Id.*, A-189 (emphasis added).[10]]

In granting the Vendor Comfort Motion, the Bankruptcy Court entered the
Final Vendor Comfort Order, as scores of other bankruptcy courts have routinely
done.   The Final Vendor Comfort Order *per se* creates neither new law nor confers

---

[10] At the May 21 Hearing, Garrett Fail, counsel to the Debtors and a drafter of the
Vendor Comfort Motion, in responding to potential claims of reliance on the
Final Vendor Comfort Order offered "**Our position on that has been very clear
from the very first minute it was raised.   Any party that would have asked us
would have been directed to the paragraph that said you're not going to get an
increased [i.e., administrative] priority**."   [ECF:5500 at 110:13-17, A-3765].
Debtors' counsel's statement certainly appears to directly contradict the
representations and arguments made in the Vendor Comfort Motion.

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 38 of 66
Case 7:19-cv-10231-NSR Document 12 Filed 04/02/20 Page 37 of 93

special treatment for claims for Pre/Post Goods — it merely confirmed the universally accepted legal conclusion that Pre/Post Goods satisfy the elements required for administrative expense priority:

> *All undisputed obligations of the Debtors arising from the postpetition delivery or shipment [ ] of goods under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code*[.]

[ECF:843 at 4, A-209 (emphasis added)]. The Final Vendor Comfort Order requires no additional action by a vendor that ships or delivers goods postpetition, nor does it limit the grant of administrative expense priority claims to only vendors that relied thereon. Thereunder, the grant of priority under section 503(b)(1) is explicit and irrevocable.[11]

The lack of case law specifically on point challenging this common practice — debtors and bankruptcy courts confirming and granting section 503(b)(1) administrative expense claims to vendors who deliver goods under Prepetition Orders into the eager, receptive hands of debtors in possession — further evidences the settled judicial construction of the existing law with respect to their administrative priority. Any inconsistent decisions are, at best, outliers and, to the extent they predate the 2005 amendments to the Bankruptcy Code, as discussed below, have been overruled by Congress's enactment of section 503(b)(9)

---

[11] If the Debtors wish to challenge whether or not a postpetition delivery occurred, that analysis is informed by the case law above and by the implications of section 503(b)(9) and the Third Circuit's *World Imports* case.

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora    Pg 39 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 38 of 65

"because if goods delivered within the 20 days prior to the petition date are accorded administrative expense treatment, the same treatment should be provided to creditors who delivered goods after this period."[12]  Both the applicable law and established bankruptcy practice support the Winners 503(b)(1) Claim, but the Bankruptcy Court relied on inapposite, hoary decisions to justify ruling to the contrary.

3.    The Case Law Relied on by the Bankruptcy Court Does Not Foreclose Finding a Postpetition Transaction or Granting an Administrative Expense.

Contrary to the authorities cited above, the Bankruptcy Court erroneously concluded that no postpetition transaction occurs with Pre/Post Goods.  The Bankruptcy Court relied on *Trustees of Amalgamated Insurance Fund v McFarlin's, Inc.*, 789 F.2d 98 (2d Cir. 1986), and *In Re Hostess Brands, Inc.*, 499 B.R. 406 (S.D.N.Y. 2013), to deny the AEC Motion on the grounds that no postpetition transaction occurred. [ECF:5500 at 128:14-129:14, A-3783-84.]  The Bankruptcy Court stated in part:

---

[12] American Bankruptcy Institute Form III.M., Motion for Order Authorizing Postpetition Delivery of Goods Ordered Prepetition, ABI-FDMOT III.M, 99-100 (noting that *In re Russell Cave Co.*, 249 B.R. 145, 147 (Bankr. E.D. Ky. 2000) (administrative treatment is only permissible when liability arises postpetition, not prepetition), and *In re A. Marcus Co.*, 64 B.R. 207, 209 (Bankr. N.D. Ill. 1986) (debtor's act of receiving the goods did not induce vendor to ship the goods, and without act of inducement by debtor, vendor was not entitled to administrative expense claim) are two such superseded cases).

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 40 of 66

Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 39 of 65

> *McFarlin's* and Judge Ramos go on to say at the same page of
> *Hostess*, "A debt is not entitled to priority simply because the right to
> payment arises after the debtor in possession has begun managing
> the estate. Rather it must be a postpetition transaction between the
> claimant and the debtor in possession, and the ***considerations
> supporting the right to payment must have been both supplied to
> and beneficial to the debtor in possession in the operation of the
> business postpetition***."

[*Id.* at 129:6-14, A-3784 (emphasis added).]

Neither *McFarlin's* nor *Hostess* addresses how a court should determine

the existence of a postpetition transaction in the sale of goods context nor do they

compel a conclusion that Pre/Post Goods fail to constitute consideration giving

rise to an administrative expense claim.   Both *McFarlin's* and *Hostess* deal

specifically with whether claims for employers' obligations under terminated

pension plans are entitled to administrative priority.   In *McFarlin's*, the court

held that "consideration supporting the withdrawal liability is . . . the same as

that supporting the pensions themselves, ***the past labor of the employees covered

by the Plan***," so the underlying transaction was prepetition and gave rise only to

a general unsecured claim. *McFarlin's*, 798 F.2d at 101-04 (emphasis added).  To

the same effect, *Hostess* held that:

> [W]ithdrawal liability may be considered an administrative expense,
> but only if it arises out of a transaction between the creditor and the
> . . . debtor in possession and only to the extent that the consideration
> supporting the claimant's right to payment was both supplied to and
> beneficial to the debtor-in-possession in the operation of the
> business.

-30-

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 41 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 40 of 65

*Hostess*, 499 B.R. at 412 (internal quotations and citations omitted). Both *McFarlin's* and *Hostess* thus focus on when the consideration supporting the withdrawal claim was given and concluded that, under the prepetition multiemployer pension funds, the supporting consideration occurred before the commencement of the bankruptcy cases.

Here, it is undisputed that Debtors received consideration underlying the Winners 503(b)(1) Claim — actual volitional receipt of the Winners Goods themselves — after the Petition Date, which they needed to sell (and presumably sold) during the critical, Christmas holiday shopping season. ***The Bankruptcy Court did not find a lack of postpetition consideration, only that such consideration was given under a prepetition contract.*** Under applicable law, the Debtors' current administrative insolvency constitutes no valid legal basis to upend existing law to hold that their actual receipt of the Winners Goods after the Petition Date fails to satisfy the "postpetition transaction" element of the test for granting an administrative priority expense claim.[13]

_____

[13] The Bankruptcy Court did not address the Debtors' arguments in its objection to Winners's AEC Motion [ECF:2839 at 5-9, A-298-302] that the impact of the goods delivered to a common carrier or the potential transfer of title prior to delivery at the time of shipment as a basis for concluding this transaction was completed before the Petition Date. As discussed below, the Third Circuit in *World Imports* rejected similar arguments in deciding when goods were received for purposes of determining if creditors were entitled to an administrative expense claim under section 503(b)(9). *See World Imports*, 862 F.3d at 342-45.

-31-

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 42 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 41 of 65

As the bankruptcy court in the *Adelphia Business Solutions* case clarified when it rejected the need for contractual privity with a debtor in possession to support the allowance of an administrative expense, "it is the circumstances surrounding the post-petition delivery and receipt of the goods and services, rather than either the presence or absence of a contract for their delivery, or contractual privity, that is determinative." *In re Adelphia Bus. Solutions*, 296 B.R. at 664. The Bankruptcy Court's erroneous, contrary conclusion inexplicably ignores the realities of a sale transaction and the consideration a vendor provides when it delivers goods into the hands of a debtor in possession, and the Bankruptcy Court also ignored the established practice of bankruptcy courts across the country, including ***its own practices***, in granting administrative expense priority claims under section 503(b)(1) for goods actually received and not rejected by debtors in possession. In no instance has a court expressly or implicitly rejected established law on purported equitable grounds that a debtor in possession's administrative insolvency and ability to confirm a plan of reorganization would be advanced by categorical disallowance of such vendor claims.

18-23538-shl    Doc 7352-1    Filed 02/28/20    Entered 02/28/20 16:52:24    Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora    Pg 43 of 66
Case 7:19-cv-10231-NSR    Document 12    Filed 04/02/20    Page 42 of 65

**B.    The Bankruptcy Court Erred by Violating SCOTUS and Second Circuit Canons of Statutory Construction when Ignoring Section 503(b)(9) in its Determination of an Administrative Expense Claim Under Section 503(b)(1).**

Under fundamental SCOTUS and Second Circuit canons of statutory interpretation, a determination of a vendor's entitlement to administrative expense priority for claims for Pre/Post Goods under section 503(b)(1), including goods delivered under the ambit of the Final Vendor Comfort Order, must be informed by the relevant decisional law under section 503(b)(9) addressing controversies relating to 20-Day Goods.  Although Winners and the other vendors extensively briefed and argued the applicable canons of statutory construction and argued the Bankruptcy Court's application of section 503(b)(1) in the sale of goods context must be compatible with section 503(b)(9) and *World Imports*, the Bankruptcy Court erred when it categorically rejected, without authority, the application of those canons, consciously turned a blind eye to section 503(b)(9) and expressly accepted the resulting gross statutory anomaly as a congressional failing.

1.    The Controlling Canons of Statutory Construction.

Various controlling SCOTUS and Second Circuit canons of statutory construction mandate that the interpretation of section 503(b) of the Bankruptcy Code as to vendor claims must account for, and be harmonized with, section 503(b)(9), which specifically addresses vendor claims, and the interpretative case law thereunder.  In *Yerdon v. Henry*, 91 F.3d 370, 376 (2d Cir. 1996), the Second

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 44 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/03/20   Page 43 of 65

Circuit, applying SCOTUS precedent, sets out the fundamental canon of statutory construction requiring that a statute be read as a whole:

> Because "the meaning of statutory language, plain or not, depends on context," *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991), the interpretation of a statute requires consideration of the language of the relevant provision in conjunction with the entire statute, *see Stafford v. Briggs*, 444 U.S. 527, 535 (1980) (citing *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 194 (1856)). ***Where an examination of the statute as a whole demonstrates that a party's interpretation would lead to "absurd or futile results . . . plainly at variance with the policy of the legislation as a whole," that interpretation should be rejected***. [*EEOC v.*] *Commercial Office Prods.* [*Co.*], 486 U.S. [107,] 120 (1988)] (internal quotations omitted).

*Id.* (emphasis added).[14]   Accordingly, compliance with definitive controlling authority requires that section 503(b) be read as whole, with due consideration of both section 503(b)(1) and section 503(b)(9).  When those sections are, as they must be, read as a whole, interpretations that lead to absurd results that deviate from the policy of the legislation, such as those embraced in the Bankruptcy Court's May 21 Bench Ruling and the Appealed Order, must be rejected.  Yet another canon of statutory construction requires that, in amending section 503(b) to add section 503(b)(9), there exists a general presumption that "Congress is

---

[14] *See also* ANTONIN SCALIA & BRYAN GARNER, Reading Law: The Interpretation of Legal Texts 180 (2012) (Under the harmonious-reading canon, "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory.").  Similarly, "the Bankruptcy Code . . . must be read and must function as a whole." *In re Mirant Corp.*, 440 F.3d 238, 252 (5th Cir. 2006); *see also In re Jamo*, 283 F.3d 392, 399 (1st Cir. 2002) ("[T]he Bankruptcy Code should be read as a whole, with a view toward effectuating Congress's discerned intent.").

18-23538-shl    Doc 7352-1    Filed 02/28/20    Entered 02/28/20 16:52:24    Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora    Pg 45 of 66
Case 7:19-cv-08231-NSR    Document 17    Filed 04/02/20    Page 44 of 65

knowledgeable about existing law pertinent to the legislation it enacts." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 185 (1988).[15] The Bankruptcy Court should presume that Congress is aware of the case law applicable to section 503(b), particularly section 503(b)(1), and that section 503(b)(9) is harmonious with that existing law and judicial construction. Lastly, the Bankruptcy Court should interpret section 503(b)(1) with a view towards the uniformity of decisions of the courts of the different circuits and avoid the creation of an unnecessary split between the circuits.[16]

---

[15] *See also Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."); *United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) ("It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute."); *Estate of Wood v. C.I.R.*, 909 F.2d 1155, 1160 (8th Cir. 1990) ("Thus, it is proper to consider that Congress acts with knowledge of existing law, and that absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." (internal quotations and citations omitted)).

[16] *See Erie R. Co. v. Russell*, 183 F. 722, 725-26 (2d Cir. 1910) (following Eighth Circuit's interpretation of safety appliance act "in view of the desirability of uniformity in the decisions of the courts of the different circuits in interpreting this act"); *Lang v. Elm City Const. Co.*, 217 F. Supp. 873, 877 (D. Conn.), *aff'd*, 324 F.2d 235 (2d Cir. 1963) ("While the decision of the Third Circuit in *Corabi* [*v. Auto Racing, Inc.*, 264 F.2d 784 (3d Cir. 1959)] is not controlling on this Court, it is persuasive and will be followed, absent a decision on the question by the Supreme Court or the Second Circuit."); *Hardy v. Rossell*, 135 F. Supp. 260, 266 (S.D.N.Y. 1955) ("In the absence of an opposing view from our own Court of Appeals we feel obliged to abide by the conclusion reached in the First Circuit.").

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:45   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 46 of 66

Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 45 of 65

The Bankruptcy Court sweepingly violated each of these four canons when it failed to recognize that section 503(b)(9) and the Third Circuit's *World Imports* decision interpreting that section and its granting of administrative priority with respect to claims for 20-Day Goods based on the date of actual receipt was required to have informed its interpretation of section 503(b)(1). Having deliberately failed to do so, the Bankruptcy Court has thus, erred in failing to conclude as a matter of law that delivery of Pre/Post Goods entitled a vendor an administrative expense priority under section 503(b)(1).

2.   Section 503(b)(9) and the Third Circuit's Decision in *World Imports* Informs the Section 503(b)(1) Analysis.

Section 503(b)(9) of the Bankruptcy Code provides that: "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including — (9) the value of any goods ***received*** by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."  11 U.S.C. § 503(b)(9) (emphasis added).  In other words, section 503(b)(9) provides for the allowance of an administrative expense claim where: "(1) the vendor sold goods to the debtor; (2) the goods were received by the debtor within twenty days [before the bankruptcy] filing; and (3) the goods were sold . . . in the ordinary course of business." *World Imports*, 862 F.3d at 341 (internal quotations omitted).

18-23538-shl    Doc 7352-1    Filed 02/28/20    Entered 02/28/20 16:52:24    Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora    Pg 47 of 66
Case 7:19-cv-10231-NSR    Document 11    Filed 04/02/20    Page 46 of 65

The Third Circuit, in *In re World Imports, Ltd.*, provided scholarly, crystalline clarity on a vendor's entitlement to administrative priority under section 503(b)(9) with respect to goods delivered into the physical possession of a debtor in possession. In that case, the appellants were two Chinese companies that, before the commencement of the subject bankruptcy case, sold furniture and similar goods in the ordinary course of business to World Imports, the debtor. Those vendors shipped the goods via common carrier from China to the United States FOB at the port of origin, so the risk of loss or damage passed to World Imports upon transfer at the port. *See id.* at 340. The goods were shipped more than 20 days before the subject petition date, and World Imports took actual physical possession of those goods within 20 days of the petition date. The Third Circuit awarded the vendors' claims administrative priority under those facts, ruling that goods are not "received" for purposes of section 503(b)(9) until debtors or their agents take physical possession of the goods, and rejecting the argument that common carriers qualify as a debtor's agents. *Id.* at 342-45. Under *World Imports*, goods, such as the Winners Goods, are "received" when a debtor (or its agent) takes physical possession. *Id.*

Accordingly, in the context of section 503(b)(9), the trigger for granting an administrative expense claim is a debtor's physical receipt of the goods — *i.e.*, the date on which the vendor delivers those goods into the physical possession of

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 48 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 47 of 65

the debtor. It necessarily follows that, in the context of section 503(b)(1), a vendor's delivery of goods into the physical possession of a debtor in possession triggers an administrative expense under section 503(b)(1). This reading is consistent with existing case law and practice granting section 503(b)(1) administrative expense claims for Pre/Post Goods. Moreover, it is consistent with the two-prong test for an administrative expense claim under section 503(b)(1) because the consideration provided by the physical delivery of the goods of value to a debtor in possession satisfies both the "postpetition transaction" element and the "benefit to the estate" element.

     3.     <u>The Bankruptcy Court Erred by Failing to Apply Controlling Rules of Statutory Construction that Would Require Harmonizing the Entitlement of Administrative Expense Claims under Section 503(b)(1) and Section 503(b)(9) and Embracing an Interpretation that Creates Absurd Results.</u>

At the May 21 Hearing, the exchange between the Bankruptcy Court and the Debtors begged the legal question as to when and whether a debtor in possession receives legal consideration with physical receipt of goods, as to which section 503(b)(9), enacted after the purported controlling Second Circuit precedent, provides (per the decision of the Third Circuit) the statutory answer:

> THE COURT: What I should be going through today, I gather both sides want me to do, is deal with the legal issue that the claimants have raised, which is as long as goods are received by the debtor post-petition, notwithstanding when the transaction actually occurred or the consideration was provided, they have a post-petition claim.

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 49 of 66

Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 48 of 65

MR. FAIL: Your Honor used the word received. The word received is open to interpretation —

THE COURT: It's not in the statute.

MR. FAIL: That's our point, Your Honor. And —

THE COURT: It's not 503(b)(1).

MR. FAIL: That's our point.

THE COURT: But that's the only issue that I think is before —

MR. FAIL: So I would say the appearance — they're saying —

THE COURT: — me today.

MR. FAIL: I agree, Your Honor, and I think we just heard — I hope we've heard your answer on that. The appearance of goods in America doesn't determine 503(b)(1) priority where we've taken title, ordered, and incurred an obligation prepetition.

***And so the — you know, a deviation from the clear 2nd Circuit Southern District precedent would add ten to a hundred million dollars of additional claims that the debtors can't afford in these cases***.

THE COURT: Okay.

[ECF:5500 at 87:4-88:5, A-3742-43 (emphasis added).    Putting aside the

Appellee's *in terrorem* effort to sway the Bankruptcy Court and their gross

mischaracterization of their very own Vendor Comfort Motion and the applicable

case law on vendor goods in the context of section 503(b)(1) as demonstrated

herein (*see supra* p. 20-21), their syllogism in essence is that that because section

503(b)(1) does not specifically contain the word "received," the statutory

interpretation inquiry must exclude any effort to harmonize section 503(b)(1) with

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 50 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 49 of 65

503(b)(9). Accepting that shallow, facially erroneous contention and the resulting absurd consequences of doing so, the Bankruptcy Court, without authority and without regard to applicable SCOTUS and Second Circuit statutory authority to the contrary, concluded as a matter of law that section 503(b)(9) had no bearing on the proper interpretation of section 503(b)(1).

In doing so, the Bankruptcy Court erred in unduly, and without valid foundation, rejecting the relevance of section 503(b)(9) and the Third Circuit decision in *World Imports*, characterizing it as a case that merely interpreted the meaning of the word "received" in section 503(b)(9) in relation to vendor goods but which, nevertheless, should not be considered for harmonization with section 503(b)(1) in the context of the receipt of vendor goods by a debtor in possession:

> THE COURT: But it's all geared to interpreting a word in one statutory section, 503(b)(9). ***That word doesn't appear in 503(b)(1).*** 503(b)(1) as interpreted by the circuit and by the district and by others after 2005, has a very different formulation.
>
> Which says, "after notice of a hearing, there should be allowed administrative expenses including the actual necessary costs and expenses of preserving the estate." And the 2nd Circuit has held that that includes two things, actual and necessary and estate. So you have to have a transaction with the estate, with the debtor in possession or the trustee. ***It's a totally different statutory framework.***
>
> Now so I think your argument just comes down to well, there are illogical results because of how 503(b)(9) is drafted and interpreted by the 3rd Circuit. It's not the first time Congress has done something like that, but they certainly didn't rewrite 503(b)(9) notwithstanding that there was extensive case law interpreting it just

-40-

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 51 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 50 of 65

as I've said including against very sympathetic parties, including pension beneficiaries and retirees where notwithstanding that the pension withdrawal claim occurs, arises post-petition, their claims ***except for the work they did post-petition***[17] are prepetition claims.

***It would be totally illogical for me to assume that Congress somehow rewrote out of the Code all of that case law and intended that provision to somehow now be interpreted to include the word received in it, as interpreted by the 3rd Circuit, it just doesn't make any sense.***

[ECF:5500 at 93:3-94:7, A-3748-49 (emphasis added)]

The Bankruptcy Court's singular focus on section 503(b)(1)'s not including the term "received" alone baldly ignores that both subsections address the sale of goods to a debtor, one subsection in the context of a debtor's obtaining goods during the 20 days preceding commencement of a bankruptcy case and the other in the context of conferring goods on a debtor in possession, *i.e.*, after the commencement of the bankruptcy case. Those two transactions are identical in kind and differ solely as to timing of the realization of benefit by the subject debtor or debtor in possession.  Whatever the Debtors' current financial condition may be, the rules of decision applicable to this same topic within the same subsection of the Bankruptcy Code must be harmonized per SCOTUS and the Second Circuit.  In doing so, reading section 503(b)(1) and section 503(b)(9) in *pari materia* leads ineluctably to the conclusion that receipt of goods, be it by a debtor or debtor in

---

[17] The Bankruptcy Court here acknowledges that the services performed postpetition under a prepetition agreement would have administrative priority, even in the *Hostess* and *McFarlin's* cases on which the Bankruptcy Court relied.

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 52 of 66
Case 7:19-cv-08231-NSR Document 12 Filed 04/02/20 Page 51 of 65

possession, be assessed by the same measure and, here, Winner's entitlement to an administrative expense claim under section 503(b)(1) for delivering goods into the hands of the Debtors is thus manifest.

Indeed, failing to recognize (a) the correlation between the treatment afforded to vendors under section 503(b)(9) for 20-Day Goods and the treatment of vendors under section 503(b)(1) for Pre/Post Goods and (b) congressional intent that they both be entitled to administrative expense priority treatment for the value of those goods, the Bankruptcy Court disregarded SCOTUS's and the Second Circuit's canons of statutory construction in its interpretation of section 503(b)(1). Rather than harmonize, the Bankruptcy Court artificially and erroneously differentiated and erroneously concluded, as a matter of law, that section 503(b)(1)(A) is part of a "totally different statutory framework" than section 503(b)(9). [Docket 5500 at 93:8-15, A-3748.] Rather than read section 503(b) as a whole, the Bankruptcy Court isolated the impact of the new statute: "Section 503(b)(9) [was] special purpose, special interest legislation adopted specifically to favor dealers of goods as an exception to the general requirements under Section 503(b)(1)." [*Id.* at 130:2-8, A-3785]. In rejecting calls for harmonization in its interpretation of the two sections of section 503(b), the Bankruptcy Court provided no citation for authority to support finding that

special purpose, special interest legislation frees it from its responsibility to
harmonize the two subsections of section 503(b).

When confronted with an example of the absurd results that would follow
reading the subsections in isolation, the Bankruptcy Court knowingly embraced
such a result.   At the May 21 Hearing, counsel for Winners raised the
implications of statutory construction:

> MR.  SCHWARTZ:  There's a general statutory construction
> subsection should be harmonized, basically what you're sanctioning
> here is that if Sears or KMart or any one of the debtors had decided
> as New Co would transform whatever it's called now, they've sent
> out a letter to get around 503(b)(9) for whatever Chapter 11 or
> whatever other purpose they have, dealing with bills of lading so that
> they establish an agent and so forth.
>
> So the idea here is that if Sears had 19 days before the petition date,
> said, okay, we're going to take half of the common carrier's
> delivering goods, and we're told, come back on October 16th that
> that would be then those would just be general unsecured claims.
>
> THE COURT: *Yeah. I mean, that's — Congress drafted this
> exception, and it is an exception. And there are ways around it. I
> doubt they really thought through all the ways around it, in fact,
> I'm pretty sure they didn't. And probably the people that were
> trying to get this in said to themselves, we better get as good as we
> can get.*
>
> MR. SCHWARTZ: For the record, when there's a position that it's
> an anomalous result I would assume plausible result, it could never
> be imputed to Congress, just stating it for the record.
>
> THE COURT: *Well, okay. But I will respond that special purpose
> legislation often has this effect. It does create anomalous results,
> but it's special purpose [legislation], it itself is anomalous, it
> doesn't mean that the whole rest of the structure of the Bankruptcy*

-43-

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 54 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 53 of 65

*Code has to be turned on its axis to accommodate it. It's a special purpose exception, it doesn't go beyond that*.

[ECF:5500 at 98:2-99:6, A-3753-54 (emphasis added).]  Thus voiced of record, the Bankruptcy Court erroneously dismissed harmonization of the two subsections of the very same section 503 of the Bankruptcy Code.  Even though the Bankruptcy Court acknowledged the "anomalous" result — *i.e.*, a vendor who delivers 20-Day Goods, *i.e.*, prepetition, would have an administrative expense priority but a vendor who delivers Pre/Post Goods, *i.e.*, postpetition, merely has a lowly general unsecured claim, the Bankruptcy Court proceeds to embrace this result on the basis that "special purpose legislation often has this effect."  The canons of statutory construction direct that when an interpretation leads to an absurd result, "that interpretation should be rejected."  *Yerdon*, 91 F.3d at 376.  The Bankruptcy Court erred by embracing an absurd result, when, as is the case here, an alternative, plausible interpretation of the statute would readily and soundly harmonize sections 503(b)(1) and (b)(9).

Because the controlling canon of statutory construction instructs courts to assume that Congress is aware of existing law and settled judicial constructions when it passes legislation, the Bankruptcy Court erred by (a) not harmonizing the subsections and (b) not interpreting the statute by applying the settled judicial construction of courts universally confirming and granting administrative expense priority under section 503(b)(1) for goods shipped or delivered postpetition on

18-23538-shl  Doc 7352-1  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit A --
Appellant Brief  Winners Industry Co. Ltd. v. Sears Holding Corpora  Pg 55 of 66
Case 7:19-cv-10231-NSR  Document 12  Filed 04/02/20  Page 54 of 65

Prepetition Orders. Two plausible readings were available to the Bankruptcy
Court that would comport with the controlling canon. First, because Congress
understood that vendors that ship or deliver Pre/Post Goods are entitled to
administrative expense priority under section 503(b)(1) for those goods, Congress
enacted the legislation to extend that administrative expense priority under
section 503(b)(9) to 20-Day Goods. Second, because Congress recognized that it
was enacting legislation entitling prepetition vendor claims administrative
priority for 20-Day Goods, section 503(b)(1) should be, and would be, interpreted
in manner that follows the case law that grants an administrative expense priority
for Pre/Post Goods, regardless of whether or not they were sent under a
Prepetition Order. Instead of accepting these plausible, rational and sound
interpretations of section 503(b) that presume that Congress knew what it was
doing when it enacted section 503(b)(9), the Bankruptcy Court erred by
concluding as a matter of law that section 503(b)(9) was "special interest
legislation" which was so foreign as to require isolation and disqualification
within the Bankruptcy Code for purposes of harmonization. The legal conclusion
of the Bankruptcy Court that to harmonize section 503(b)(1) with section
503(b)(9) would require the evil that the "whole rest of the structure of the
Bankruptcy Code [would have] to be turned on its axis to accommodate"
[ECF:5500 at 98:24-99:5, A-3753-54] appears on its face erroneous given that

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:45   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 56 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 55 of 65

section 503(b)(9) would as a to section 503(b)(1) merely be confirmatory of existing practice engaged in by Debtors' counsel routinely, including in the Debtors' Vendor Comfort Motion.

## C.   Winners Was and Continues to Be Harmed by the Dilatory Tactics of the Debtors.

A bankruptcy court speaks solely through the judgments and orders on its docket. *See Bell v. Thompson*, 545 U.S. 794, 805, 125 S. Ct. 2825, 2832, 162 L. Ed. 2d 693 (2005) ("Basic to the operation of the judicial system is the principle that a court speaks through its judgments and orders." (internal quotations and citations omitted)).  In the absence of a Bankruptcy Court docket entry denying its AEC Motion, Winners could not bring an appeal to be heard by this Court at a time when a timely resolution of the issue on appeal in favor of Appellant, as acknowledged by the Debtors' counsel at the May 21 Hearing, would lawfully have materially impacted negotiations and confirmation of the Plan.  The Debtors' dilatory tactic was materially prejudicial to Appellant.[18]

---

[18] The Debtors have similarly delayed obtaining a ruling on the calculation of administrative expense claims under section 503(b)(9), another dispute where the Third Circuit's *World Imports* should be determinative.  On September 26, 2019, the Debtors filed the *Debtors' Tenth Omnibus Objection to Proofs of Claim (To Reclassify Claims)* [ECF:5237, A-1258.] (the "Tenth Omnibus Objection"), objecting to certain vendor claims asserting priority under section 503(b)(9).  On October 17, 2019, Winners filed its response to the Tenth Omnibus Objection. [ECF:5400, A-1712.]  On November 21, 2019, the Bankruptcy Court entered an order granting the relief requested in the objection with respect to claims for which no response was filed.  [ECF:6076, A-1939.]  Rather than move forward to

The shadow of administrative insolvency and the consequences a such a determination have been known by the Debtors from the beginning of these chapter 11 cases. Winners's counsel brought to the Bankruptcy Court's attention both the Debtors' systematic delay in resolving legal issues that affected Winners and the consequences of the failure of the Debtors to submit, and the Bankruptcy Court to enter, an order.

> MR. SCHWARTZ: Thus far, Winners' experience in this case is that — filed our motion for the administrative expense on December 21, 2018. We appeared before the Court on April 14th and were not heard. Then we appeared before the Court on May 21st, and — with just a simple legal question as to the proposed 503(b)(1)(A). Your Honor ruled against us. Your Honor instructed debtor's counsel to submit an order accordingly, and to just share the order but not require Winners' consent. And there's some other parties involved in this.
>
> To date, debtor's counsel has not submitted the order to you. So this is five months later. We've had some discussions with them and there was circulation of a draft order, but the debtor told us that —

---

resolve the claims for which responses were filed and address the *World Imports* issue, Debtors first adjourned the hearing on the Tenth Omnibus Objection to December 13, 2019. On December 5, 2019, certain foreign vendors, including Winners, wrote the Bankruptcy Court, objecting to the Debtors' unilateral adjournment of the hearing again. [ECF:6139, A-1946.] "***Further delay in the resolution of our clients' respective claims may prejudice our clients because, depending on the Court's decision, appeal may need to be taken for a final resolution of this significant bankruptcy issue. Meanwhile, the Debtors confirmed plan may go effective before all such appeals are decided and, without any reserve for our clients' disputed claims, our clients could suffer irreparable harm.***" The Debtors adjourned the hearing with respect to those responding creditors, and the hearing is scheduled for January 28, 2020, four months after the relief was requested.

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 58 of 66

Case 7:19-cv-08231-NSR   Document 12   Filed 04/02/20   Page 57 of 65

debtor's counsel told us, who's sitting here, that they didn't see the value in following the Court's instructions to submit the order.

. . .

MR. SCHWARTZ: Okay. So our issue is that there will not be money — the debtors — this 503(b)(9) claims procedures program, there were no negotiations. There was no contact. It was to delay allowing the claim, delay us from going to an appellate tribunal on that issue.

. . .

MR. SCHWARTZ: — the debtor had filed something which said that that amount, if the debtor — if the Court ruled against the debtors and the — and if we prevailed and others similarly situated prevailed, it would be a [sic] $64 million incremental obligation, administrative expense to the estate. We may prevail if we get an order —

THE COURT: Being on appeal.

…

THE COURT: What is the alternative to not confirming a plan based on your argument of administrative insolvency? It's conversion of the case, correct?

MR. SCHWARTZ: That's one option. Another option is at least before the plan goes effective, we actually see that there's — what these claims, administrative claims are as allowed, and what the real results on preference recoveries in so far –

[ECF:5395 at 213:13-214:3, 214:25-215:4, 216:15-21 and 217:2-9, A-3269-74].

The exchange highlights the Bankruptcy Court's recognition that a favorable

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 59 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 58 of 65

outcome for Winners on such appeal may lead to conversion of the Debtors' chapter 11 cases to chapter 7 cases, an unacceptable option.[19]

The fact that Winners could not pursue a resolution of the issue subject to this appeal before confirmation renders its claims "disputed claims," which need not be paid if the Effective Date of the Plan occurs prior to a final determination on their allowance.  Section 1129(a)(9)(A) of the Bankruptcy Code requires that, with respect to administrative expense claims, "on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the *allowed* amount of such claim," unless the "holder of a particular claim has agreed to a different treatment of such claim."  11 U.S.C. § 1129(a)(9) (emphasis added).

---

[19] Conversion would pose catastrophic risk for the Debtors' insiders and professionals retained in these cases.  Section 1112 of the Bankruptcy Code outlines the basis for conversion of a case.  Section 1112(b)(4)(M) provides that the "inability to effectuate substantial confirmation of a confirmed plan" constitutes "cause" to convert a case under section 1112(b)(1). A disinterested chapter 7 trustee, who is automatically appointed to administer the case upon conversion from chapter 11 to chapter 7, is empowered, among other things, to "collect and reduce to money the property of the estate" (11 U.S.C. § 704(a)(1)) and "investigate the financial affairs of the debtor" (11 U.S.C. § 704(a)(4)).  A trustee would engage its own disinterested professionals to assist with administration of the estate.  In addition, the chapter 7 trustee would take control of, and wield, the debtors' attorney-client privilege.  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 354 (1985) (concluding that "vesting in the trustee control of the corporation's attorney-client privilege most closely comports with the allocation of the waiver power to management outside of bankruptcy without in any way obstructing the careful design of the Bankruptcy Code").  A chapter 7 trustee's control of the Debtors' corporate attorney-client privilege would likely benefit all third-party creditors.

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 60 of 66
Case 7:19-cv-10231-NSR Document 12 Filed 04/02/20 Page 59 of 65

A plan that does not provide for the payment of allowed administrative claims on the effective date may not be confirmed.[20]

Finally, because the Debtors' Plan cannot be consummated and the Effective Date cannot occur until the Debtors have sufficient funds to pay all ***allowed administrative claims***, delaying Bankruptcy Court and appellate resolution of the disputed administrative expense claims based on 20-Day Goods and Pre/Post Goods decreases the amount of allowed administrative claims that must be paid on the Effective Date, and therefor, increases the likelihood that the Plan can become effective. If the Debtors were to obtain sufficient funds to pay the currently ***allowed*** administrative expense claims, the Effective Date would occur.[21] Without a reserve fund for disputed administrative expense claims, there may be insufficient funds to pay the administrative claims of Winners and other such vendors once such administrative claims were to be become allowed over the thus far ceaseless, dilatory tactics which would likely be continued by the Liquidating Trust's counsel. Winners would unlawfully be forced to endure this legal purgatory in hopes that the Liquidating Trust realizes litigation proceeds

---

[20] *See Pan Am Corp. v. Delta Air Lines,* 175 B.R. 438, 483 (Bankr. S.D.N.Y. 1994) (referring to Bankruptcy Code section 1129(a)(9) as the "administrative solvency" requirement and stating that "[b]y itself, administrative insolvency would have prevented confirmation of the Joint Plan.").

[21] The occurrence of the Effective Date would also permit estate-retained professionals to file final fee applications for the allowance and payment of fees incurred in these chapter 11 cases. [ECF:5370-1 at 22, A-1625.]

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 61 of 66
Case 7:19-cv-10231-NSR   Document 11   Filed 04/02/20   Page 60 of 65

greater in amount than the administrative fees and expense claims paid and reserved for, including the Liquidating Trust professional fees of pursuing the extremely costly litigation against ESL and other affiliates relating, among other things, to related-party prepetition transactions.[22]   [ECF:4478 at 40-42, A-951-53.]

Under the Confirmation Order, any motion for allowance or payment of an administrative expense claim has been "adjourned until a date as determined by the Debtors (in consultation with the Creditors' Committee) or the Liquidating

---

[22] Post-confirmation and post-Effective Date, the estate litigation is being managed by five Litigation Designees, who will become the Board Members of the Liquidating Trust on the Effective Date.  In response to certain objections, including one joined by Winners [ECF:5517, A-1746 and ECF:6009, A-1931], to the Fourth Plan Supplement's [ECF:5335, A-1549] proposed compensation of the Board Members of the Liquidating Trust and to the disclosures regarding the Board Members' connections to estate professionals, the Debtors and the Creditors' Committee filed the *Joint Response of the Debtors and the Official Committee of Unsecured Creditors in Support of the Fourth Plan Supplement in Connection with Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF:6189, A-1945].  In the response, Akin Gump Strauss Hauer & Feld LLP ("Akin"), lead counsel to the Creditors' Committee, disclosed that four Litigation Designees had served on two or more boards or liquidating trusts that have retained Akin — Alan Carr (two engagements), Patrick Bartels (seven engagements), Eugene I. Davis (25 engagements) and Raphael Wallander (five engagements).  [ECF:6189 at 15-17, A-1959-61].  Post-confirmation the Litigation Designees and, upon the occurrence of the Effective Date, the Board Members of the Liquidating Trust, are responsible for overseeing certain estate litigation.  The Litigation Designees have engaged Akin as their counsel.  *See* Confirmation Order [ECF:5370 at 11-18, A-1565-72.]  At the December 13, 2019 hearing, the Bankruptcy Court overruled the objections and approved the compensation program, although to date a docket entry or an order so memorializing has yet to be filed of record on the docket.

Trust (as applicable)." [ECF:5370 at 26, A-1580.] Unless this Court (or the Bankruptcy Court) directs otherwise, pending the occurrence of an Effective Date, the manifestly obviously conflicted Debtors and their counsel as well as the equally conflicted Liquidation Trust and its counsel[23] will likely continue their dilatory tactics described above, depriving Winners of due process of law with respect to the scheduling and conducting of a hearing and timely memorialization of any Bankruptcy Court ruling that may eventuate under sections 503(b)(1) or 503(b)(9). Accordingly, Winners requests that this Court reverse the Appealed Order and on remand direct the Bankruptcy Court to suspend immediately the Debtors' control over the fundamental, procedural due process rights of Winners with respect its administrative expense claims.

## IX.   CONCLUSION

Under section 503(b)(1)(A), as confirmed by the Final Vendor Comfort Order, Winners is entitled to an administrative expense claim for goods that were received by the Debtors after the Petition Date. The Debtors' desire to so minimize the amount of administrative expense priority claims to try to avoid administrative insolvency and the consequences of it does not give the Bankruptcy

---

[23] *See* Footnotes 4, 21 and 22 and discussion on pages 13-15. The need to transfer funds held in the Carve-Out Account so that non-professional, administrative priority claims may be paid is indicative of the challenges the Debtors will have in paying administrative claims. The financial interests of the professionals conflict with, and are materially adverse, to the class of administrative expense creditors. *See* 11 U.S.C. §§101(14), 327(a) and 1102.

18-23538-shl Doc 7352-1 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit A --
Appellant Brief Winners Industry Co. Ltd. v. Sears Holding Corpora Pg 63 of 66
Case 7:19-cv-10231-NSR Document 12 Filed 01/02/20 Page 62 of 65

Court the equitable power to ignore the language of section 503, the case law interpreting it and established principles of statutory construction. Accordingly, for these and the foregoing reasons, Appellants request that this Court reverse the Bankruptcy Court's Appealed Order and direct the Bankruptcy Court to resolve the amount and priority of Winners's claims expeditiously without indulgence of further dilatory efforts by the Debtors or the Liquidating Trust, as successor.

Dated: January 2, 2020                    Respectfully submitted,

                                          */s/ H. Jeffrey Schwartz*
                                          CALFEE, HALTER & GRISWOLD LLP
                                          Wall Street Plaza
                                          88 Pine Street, 14th Floor
                                          New York, NY 10005-1802
                                          Telephone: (888) 225-3331
                                          H. Jeffrey Schwartz

                                          -and-

                                          CALFEE, HALTER & GRISWOLD LLP
                                          The Calfee Building
                                          1405 East Sixth Street
                                          Cleveland, OH 44114
                                          Telephone: (216) 622-8200
                                          Gus Kallergis *(pro hac vice* pending*)*
                                          Ronald McMillan *(pro hac vice* pending*)*

                                          *Attorneys for Appellant, Winners Industry Co., Ltd.*

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 64 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 63 of 65

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SEARS HOLDINGS CORP., *et al.*,[24] | Chapter 11 |
| Debtors. | Bankruptcy Case No. 18-23538 (RDD) |
| | Jointly Administered |
| WINNERS INDUSTRY CO., LTD., | Civil Action No. 7:19-cv-10231-NSR |
| Appellant, | |
| v. | |
| SEARS HOLDINGS CORPORATION, | |
| Appellee. | |

## APPELLANT'S CERTIFICATE OF COMPLIANCE

NOW COMES Appellant, Winners Industry Co., Ltd., and hereby certifies

that the instant Brief of Appellant, in Times New Roman, 14 pt. Font, contains

---

[24] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

18-23538-shl   Doc 7352-1   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit A --
Appellant Brief   Winners Industry Co. Ltd. v. Sears Holding Corpora   Pg 65 of 66
Case 7:19-cv-10231-NSR   Document 12   Filed 04/02/20   Page 64 of 65

12,880 words, less than the 13,000 words allowed in by Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i) and as calculated by the word count feature on the word processing system utilized in preparing the Brief.

Dated: January 2, 2020                    Respectfully submitted,

                                          */s/ H. Jeffrey Schwartz*
                                          CALFEE, HALTER & GRISWOLD LLP
                                          Wall Street Plaza
                                          88 Pine Street, 14th Floor
                                          New York, NY 10005-1802
                                          Telephone: (888) 225-3331
                                          H. Jeffrey Schwartz

                                          -and-

                                          CALFEE, HALTER & GRISWOLD LLP
                                          The Calfee Building
                                          1405 East Sixth Street
                                          Cleveland, OH 44114
                                          Telephone: (216) 622-8200
                                          Gus Kallergis *(pro hac vice* pending*)*
                                          Ronald McMillan *(pro hac vice* pending*)*

                                          *Attorneys for Appellant, Winners Industry
                                          Co., Ltd.*

18-23538-shl    Doc 7352-1    Filed 02/28/20    Entered 02/28/20 16:52:24    Exhibit A --
Appellant Brief    Winners Industry Co. Ltd. v. Sears Holding Corpora    Pg 66 of 66

Case 7:19-cv-10231-NSR    Document 12    Filed 04/02/20    Page 65 of 65

## PROOF OF SERVICE

The undersigned hereby certifies that on January 2, 2020, a copy of the foregoing Brief of Appellant Winners Industry Co., Ltd. was filed electronically in the Court's Case Management/Electronic Case Filing ("CM/ECF") system.  The CM/ECF system will send notice of this filing to all parties, and, through the CM/ECF system, they may access the brief.

*/s/ H. Jeffrey Schwartz*
One of the Attorneys for Appellant