CALFEE, HALTER & GRISWOLD LLP
Wall Street Plaza
88 Pine Street, 14th Floor
New York, NY 10005-1802
Telephone: (888) 225-3331
H. Jeffrey Schwartz

-and-

CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Gus Kallergis
Ronald McMillan
Larry Wilcher

*Counsel for Winners Industry Co., Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | |
|---|---|
| **In re:** | : **Chapter 11** |
| | : |
| **SEARS HOLDINGS CORPORATION, et al.,** | : **Case No. 18-23538 (RDD)** |
| | : |
| **Debtors.** | : **(Jointly Administered)** |

---------------------------------------------------------------x

**NOTICE OF FILING APPELLATE BRIEFING FROM *WINNERS INDUSTRY CO., LTD.***
***V. SEARS HOLDING CORPORATION*, CASE NO. 7:19-CV-10231-NSR (S.D.N.Y)**
**IN SUPPORT OF THE RESPONSE OF WINNERS INDUSTRY CO., LTD.**
**IN OPPOSITION TO DEBTORS' TENTH OMNIBUS OBJECTION**
<u>**TO PROOFS OF CLAIM (TO RECLASSIFY CLAIMS)**</u>

# Exhibit D

# Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfort Orders), *Winners Industry Co. Ltd. v. Sears Holding Corporation*, Case No. 7:19-cv-10231-NSR (S.D.N.Y)

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:34 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 2 of 458
Case 7:19-cv-10231-NSR Document 22 Filed 02/28/20 Page 1 of 890

Case No. 7:19-cv-10231-NSR

---

*In the United States District Court*
*for the Southern District of New York*

IN RE SEARS HOLDINGS CORP., ET AL., DEBTORS.

WINNERS INDUSTRY CO., LTD.,

Appellant,

v.

SEARS HOLDINGS CORPORATION,

Appellee.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK,
CASE NO. 7:18-BK-23538-RDD

---

**SUPPLEMENTAL APPENDIX OF APPELLANT,**
**WINNERS INDUSTRY CO., LTD.**
**VOLUME XI (A-3882 TO A-4261)**

---

CALFEE, HALTER & GRISWOLD LLP
Wall Street Plaza
88 Pine Street, 14th Floor
New York, NY 10005-1802
Telephone: (888) 225-3331
H. Jeffrey Schwartz
jschwartz@calfee.com

-and-

18-23538-shl   Doc 7352-4   Filed 02/28/20   Entered 02/28/20 16:52:34   Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor   Pg 3 of 458
Case 1:19-cv-10231-NSR   Document 22   Filed 08/28/20   Page 2 of 390

CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Gus Kallergis
Ronald McMillan
gkallergis@calfee.com
rmcmillan@calfee.com

-and-

CALFEE, HALTER & GRISWOLD LLP
2800 First Financial Center
255 East Fifth Street
Cincinnati, OH 45202-4728
Telephone: (513) 693-4880
Larry K. Wilcher
lwilcher@calfee.com

*Attorneys for Appellant,*
*Winners Industry Co., Ltd.*

18-23538-shl   Doc 7352-4   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor   Pg 4 of 458
Case 1:19-cv-10231-NSR   Document 22   Filed 08/28/20   Page 3 of 890

# VOLUME I

| Bankruptcy Docket No. | Docket Entry Date | Description | Appendix Page |
|---|---|---|---|
| 3 | 10/15/2018 | Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York | A-1 |
| 14 | 10/15/2018 | Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business | A-174 |
| 115 | 10/16/2018 | Interim Order Authorizing Debtors to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants, and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Order Delivered to the Debtors Postpetition and Satisfy Such Obligations in the Ordinary Course of Business | A-200 |

1

| Bankruptcy Docket No. | Docket Entry Date | Description | Appendix Page |
|---|---|---|---|
| 843 | 11/20/2018 | Final Order Authorizing Debtors to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business | A-206 |

## VOLUME II

| | | | |
|---|---|---|---|
| 1386 | 12/21/2018 | Motion of Winners Industry Co. Ltd. for Allowance and Payment of Administrative Expense Claims[1] (Part 1 of 2) | A-212 |

## VOLUME III

| | | | |
|---|---|---|---|
| 1386 | 12/21/2018 | Motion of Winners Industry Co. Ltd. for Allowance and Payment of Administrative Expense Claims (Part 2 of 2) | A-268 |
| 2839 | 03/15/2019 | Debtors' Objection to Winners Industry Co., Ltd's Motion for Allowance and Payment of Administrative Claim | A-294 |

---

[1] Attached to this Motion, as filed with the Bankruptcy Court, is the documentation for all 21 shipments that are the subject of the Motion. This Appendix includes the documentation for only those four shipments for which Appellant sought an administrative expense claim under 11 U.S.C. § 503(b)(1)(A).

2

| 3229 | 04/16/2019 | Initial Reply to Debtors' Objection to Motion of Winners Industry Co., Ltd. for Allowance and Payment of Administrative Expense Claims | A-307 |
|------|------------|---|-------|
| 3258 | 04/17/2019 | Joinder by Pearl Global Industries Ltd. to Motion by Winners Industry Co., Ltd. for Allowance and Payment of Administrative Expense Claims | A-319 |
| 3760 | 05/08/2019 | Letter of Winners Industry Co., Ltd., Administrative Expense Claimant | A-322 |
| 3883 | 05/15/2019 | Debtors' Omnibus Objection to Vendors' Motions for Allowance and Payment of Administrative Expense Claims | A-350 |
| 3942 | 05/20/2019 | Qualified Joinder of the Official Committee of Unsecured Creditors to Debtors' Omnibus Objection to Vendors' Motions for Allowance and Payment of Administrative Claims | A-362 |
| 4060 | 05/29/2019 | Notice of Filing of Exhibits to the Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-366 |

## VOLUME IV

| 4390 | 06/28/2019 | Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-438 |
|------|------------|---|-------|

3

Case 1:19-cv-10231-NSR   Document 22-1   Filed 02/28/20   Page 6 of 890

| 4392 | 06/28/2019 | Order (I) Approving Disclosure Statement, (II) Establishing Notice and Objection Procedures for Confirmation of the Plan, (III) Approving Solicitation Packages and Procedures for Distribution Thereof, (IV) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan, and (V) Granting Related Relief | A-797 |

## VOLUME V

| 4478 | 07/09/2019 | Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-900 |
| 5237 | 09/26/2019 | Motion for Omnibus Objection to Claim(s) /Debtors' Tenth Omnibus Objection to Proofs of Claim (To Reclassify Claims) | A-1258 |

## VOLUME VI

| 5293 | 10/01/2019 | Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1311 |
| 5296 | 10/01/2019 | Debtors' Supplemental Memorandum of Law in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1403 |

4814-3611-6149, v.1

| 5297 | 10/01/2019 | Supplemental Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1543 |
|---|---|---|---|
| 5335 | 10/07/2019 | Notice of Filing of Fourth Plan Supplement in Connection with Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1549 |
| 5370 | 10/15/2019 | Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holding Corporation and its Affiliated Debtors and (II) Granting Related Relief | A-1555 |
| 5371 | 10/15/2019 | Order Denying Vendors' Motion for Allowance and Payment of Administrative Expense Claims | A-1709 |
| 5400 | 10/17/2019 | Response of Winners Industry Company, Ltd. In Opposition To Debtors' Tenth Omnibus Objection To Proofs of Claim (To Reclassify Claims) | A-1712 |
| 5407 | 10/18/2019 | Monthly Operating Report / Corporate Monthly Operating Report for the Reporting Period of August 4, 2019 – August 31, 2019 | A-1724 |
| 5517 | 10/25/2019 | Objection to Debtors' Fourth Plan Supplement | A-1746 |

## VOLUME VII

| 5522 | 10/28/2019 | Notice of Appeal (Winners Industry Co., Ltd.) | A-1749 |
|---|---|---|---|

4814-3611-6149, v.1

18-23538-shl   Doc 7352-4   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor   Pg 9 of 458
Case 1-19-cc-10231-NSR   Document 22-1   Filed 02/28/20   Page 8 of 890

## VOLUME VIII

| 6009 | 11/13/2019 | Joinder by Winners Industry Co., Ltd. to Objection of Orient Craft Limited, Eric Jay Ltd., and Stolaas Company to Debtors Fourth Plan Supplement in Connection with the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1931 |
| --- | --- | --- | --- |
| 6076 | 11/22/2019 | Order signed on 11/21/2019 Granting Debtors' Tenth Omnibus Objection to Proofs of Claim (To Reclassify Claims) | A-1936 |
| 6139 | 12/05/2019 | Letter Filed by David H. Wander on behalf of Orient Craft Ltd. | A-1943 |
| 6189 | 12/12/2019 | Joint Response of the Debtors and the Official Committee of Unsecured Creditors in Support of the Fourth Plan Supplement in Connection with Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1945 |
| 6300 | 12/29/2019 | Notice of Hearing on Interim Applications for Allowance of Compensation and Reimbursement of Expenses on January 28, 2020 at 10:00 A.M. | A-1962 |
| N/A | N/A | Copy of Bankruptcy Court Docket Report Through November 25, 2019 | A-1965 |

6

18-23538-shl  Doc 7352-4  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 10 of 458
Case 7:19-cv-10231-NSR  Document 22  Filed 06/26/20  Page 9 of 890

# VOLUME IX
# (TRANSCRIPTS)

| 136 | 10/16/2018 | Transcript of Hearing Held on October 15, 2018 | A-2689 |
| --- | --- | --- | --- |
| 4799 | 05/31/2019 | Transcript of Hearing Held on May 29, 2019 | A-2782 |
| 4803 | 08/09/2019 | Transcript of Hearing Held on November 15, 2018 | A-2872 |
| 5395 | 10/07/2019 | Transcript of Hearing Held on October 3, 2019 | A-3057 |
| 5396 | 10/09/2019 | Transcript of Hearing Held on October 7, 2019 | A-3420 |
| 5500 | 10/24/2019 | Transcript of Hearing Held on May 21, 2019 | A-3656 |

# VOLUME X

| N/A | 11/22/2019 | Administrative Expense Order in *In re Bumble Bee Parent, Inc.*, No. 19-12502 (LSS) (Bankr. D. Del.) | A-3829 |
| --- | --- | --- | --- |
| N/A | 03/19/2019 | Administrative Expense Order in *In re Imerys Talc Am., Inc.*, No. 19-10289 (LSS) (Bankr. D. Del.) | A-3831 |
| N/A | 11/29/2018 | Administrative Expense Order in *In re Herb Philipson's Army and Navy Stores Inc.*, No. 18-61376-6 (DD) (Bankr. N.D.N.Y.) | A-3835 |
| N/A | 10/25/2017 | Administrative Expense Order in *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va.) | A-3838 |

7

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 11 of 458

Case 1:19-cv-10534-NSR Document 22-1 Filed 02/28/20 Page 10 of 399

| N/A | 08/30/2017 | Administrative Expense Order in *In re TerraVia Holdings, Inc.*, No. 17-11655 (CSS) (Bankr. D. Del.) | A-3844 |
|-----|-----|-----|-----|
| N/A | 08/19/2016 | Administrative Expense Order in *In re Vestis Retail Group, LLC*, No. 16-10971 (CSS) (Bankr. D. Del.) | A-3849 |
| N/A | 01/13/2016 | Administrative Expense Order in *In re Arch Coal, Inc.*, No. 16-40120-705 (Bankr. E.D. Mo.) | A-3852 |
| N/A | 12/10/2009 | Administrative Expense Order in *In re Simmons Bedding Co.*, No. 09-14037 (MFW) (Bankr. D. Del.) | A-3856 |
| N/A | 02/27/2019 | Administrative Expense Order in *In re PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal.) | A-3860 |
| N/A | 03/22/2018 | Administrative Expense Order in *In re Tops Holding II Corp.*, No. 18-22279 (RDD) (Bankr. S.D.N.Y.) | A-3865 |
| N/A | 05/20/2016 | Administrative Expense Order in *In re Breitburn Energy Partners LP*, No. 16-11390 (SMB) (Bankr. S.D.N.Y.) | A-3871 |
| N/A | 09/18/2014 | Administrative Expense Order in *In re SIGA Technologies, Inc.*, No. 14-12623 (SHL) (Bankr. S.D.N.Y.) | A-3874 |
| N/A | 08/06/2009 | Administrative Expense Order in *In re Finlay Enterprises, Inc.*, No. 09-14873 (JMP) (Bankr. S.D.N.Y) | A-3877 |
| N/A | N/A | American Bankruptcy Institute, Form III.M. Motion for Order Authorizing Postpetition Delivery of Goods Ordered Prepetition | A-3880 |

8

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 12 of 458
Case 19-cv-10534-NSR Document 22-1 Filed 02/28/20 Page 11 of 399

## VOLUME XI

| | | | |
|---|---|---|---|
| N/A | 11/21/2019 | Motion for Order Granting Administrative Expense Priority in *In re Bumble Bee Parent, Inc.*, No. 19-12502 (LSS) (Bankr. D. Del.) | A-3882 |
| N/A | 02/13/2019 | Motion for Order Granting Administrative Expense Priority in *In re Imerys Talc Am., Inc.*, No. 19-10289 (LSS) (Bankr. D. Del.) | A-3891 |
| N/A | 10/08/2018 | Motion for Order Granting Administrative Expense Priority in *In re Herb Philipson's Army and Navy Stores Inc.*, No. 18-61376-6 (DD) (Bankr. N.D.N.Y.) | A-3926 |
| N/A | 09/19/2017 | Motion for Order Granting Administrative Expense Priority in *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va.) | A-3942 |
| N/A | 08/02/2017 | Motion for Order Granting Administrative Expense Priority *In re TerraVia Holdings, Inc.*, No. 17-11655 (CSS) (Bankr. D. Del.) | A-3978 |
| N/A | 04/18/2016 | Motion for Order Granting Administrative Expense Priority in *In re Vestis Retail Group, LLC*, No. 16-10971 (CSS) (Bankr. D. Del.) | A-4002 |
| N/A | 01/11/2016 | Motion for Order Granting Administrative Expense Priority in *In re Arch Coal, Inc.*, No. 16-40120-705 (Bankr. E.D. Mo.) | A-4016 |

9

| N/A | 11/16/2009 | Motion for Order Granting Administrative Expense Priority in *In re Simmons Bedding Co.*, No. 09-14037 (MFW) (Bankr. D. Del.) | A-4028 |
|---|---|---|---|
| N/A | 01/29/2019 | Motion for Order Granting Administrative Expense Priority in *In re PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal.) | A-4059 |
| N/A | 02/21/2018 | Motion for Order Granting Administrative Expense Priority in *In re Tops Holding II Corp.*, No. 18-22279 (RDD) (Bankr. S.D.N.Y.) | A-4083 |
| N/A | 05/16/2016 | Motion for Order Granting Administrative Expense Priority in *In re Breitburn Energy Partners LP*, No. 16-11390 (SMB) (Bankr. S.D.N.Y.) | A-4107 |
| N/A | 09/16/2014 | Motion for Order Granting Administrative Expense Priority in *In re SIGA Technologies, Inc.*, No. 14-12623 (SHL) (Bankr. S.D.N.Y.) | A-4117 |
| N/A | 04/01/2018 | Motion for Order Granting Administrative Expense Priority in *In re FirstEnergy Solutions Corp., et al.*, No. 18-50757 (Bankr. N.D. Ohio) | A-4137 |
| N/A | 05/08/2018 | Administrative Expense Order in *In re FirstEnergy Solutions Corp., et al.*, No. 18-50757 (Bankr. N.D. Ohio) | A-4170 |
| N/A | 03/10/2015 | Motion for Order Granting Administrative Expense Priority in *In re Allied Nevada Cold Corp., et al.*, No. 15-10503 (Bankr. D. Del.) | A-4176 |

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor   Pg 14 of 458
Case 19-cv-10234-NSR Document 22-1 Filed 02/28/20 Page 13 of 399

| N/A | 04/15/2015 | Administrative Expense Order in *In re Allied Nevada Cold Corp., et al.*, No. 15-10503 (Bankr. D. Del.) | A-4204 |
|-----|------------|---------------------------------------------------------------------------------------------------------|--------|
| N/A | 03/14/2014 | Motion for Order Granting Administrative Expense Priority in *In re QCE Finance LLC, et al.*, No. 14-10543 (Bankr. D. Del.) | A-4209 |
| N/A | 03/17/2014 | Administrative Expense Order in *In re QCE Finance LLC, et al.*, No. 14-10543 (Bankr. D. Del.) | A-4239 |
| N/A | 10/08/2005 | Motion for Order Granting Administrative Expense Priority in *In re Delphi Corporation, et al.*, No. 05-44481 (Bankr. S.D.N.Y.) (R. Drain, J.) | A-4244 |
| N/A | 10/14/2005 | Administrative Expense Order in *In re Delphi Corporation, et al.*, No. 05-44481 (Bankr. S.D.N.Y.) (R. Drain, J.) | A-4259 |

4814-3611-6149, v.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BUMBLE BEE PARENT, INC., *et al.*,[1] | Case No. 19-12502 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS FOR GOODS ORDERED PREPETITION AND RECEIVED POSTPETITION AND AUTHORITY TO SATISFY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS, AND (II) GRANTING RELATED RELIEF**

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), (i) granting administrative expense priority to all undisputed obligations for goods ordered prepetition and received postpetition and authority to satisfy such obligations in the ordinary course of business; and (ii) granting related relief. In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Kent McNeil in Support of Chapter 11 Petitions and First-Day Motions* (the "First Day Declaration"), which was filed concurrently herewith. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District

---

1  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Bumble Bee Parent, Inc. (5118); Bumble Bee Holdings, Inc. (1051); Bumble Bee Foods, LLC (0146); Anova Food, LLC (2140); and Bumble Bee Capital Corp. (7816).  The headquarters for the above-captioned Debtors is 280 Tenth Avenue, San Diego, CA 92101.

01:25563963.1

Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b) and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the

"Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with

this Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

        2.       The statutory and legal predicate for the relief requested herein is section

503(b) of the Bankruptcy Code.

## BACKGROUND

        3.       On the date hereof (the "Petition Date"), each of the Debtors commenced

a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The

Debtors are authorized to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official

committees have been appointed in the Chapter 11 Cases and no request has been made for the

appointment of a trustee or an examiner.

        4.       Additional information regarding the Debtors' businesses, capital

structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the

First Day Declaration.

## RELIEF REQUESTED

        5.       By this Motion, the Debtors seek entry of the Proposed Order:  (i) granting

administrative expense priority to all undisputed obligations for goods ordered prepetition and

01:25563963.1

received postpetition and authority to satisfy such obligations in the ordinary course of business; and (ii) granting related relief.

6.       As noted in the First Day Declaration, filed concurrently herewith, the Debtors rely heavily on the receipt of various goods in the operation of their businesses, including but not limited to raw and finished food products, canning and other packaging supplies, and shipping-related products.  Prior to the Petition Date, the Debtors ordered goods in the ordinary course of business that are essential to the conduct of their business but will not be received until after the Petition Date (the "Outstanding Prepetition Orders").

7.       To avoid becoming general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers and vendors may refuse to ship or transport such goods (or may attempt to recall such shipments) unless the Debtors issue substitute purchase orders or agreements postpetition.   To prevent any disruption to the Debtors' business operations, and given that goods necessary to the ordinary course operation of the Debtors' business that were ordered prepetition may not be received until after the Petition Date, the Debtors hereby seek entry of an order:  (a) granting administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed obligations of the Debtors arising from the Outstanding Prepetition Orders and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

## BASIS FOR RELIEF

8.       Pursuant to section 503(b) of the Bankruptcy Code, obligations that arise in connection with the postpetition receipt of goods, including goods ordered prepetition, are, in fact, administrative expense priority claims because they benefit the estate postpetition.  Thus, the granting of the relief sought herein with respect to the Outstanding Prepetition Orders will not afford such claimants any greater priority than they otherwise would have if the relief

01:25563963.1

3

A-3884

Case 1:20-cv-02550-LSS-cv-02550-LSS Document 4    Filed 11/20/24/18/20/24    Page 1    of 395

requested herein were not granted, and will not prejudice any other party in interest. Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Prepetition Orders to provide certain suppliers and vendors with assurance of such administrative priority. The attendant disruption to the continuous and timely flow of critical goods to the Debtors would significantly hinder the Debtors' ability to continue operations in the ordinary course, damage the Debtors' business reputation, erode the Debtors' customer base and market share, and ultimately lead to a loss of revenue, all to the detriment of the Debtors and their creditors. Any inability to operate seamlessly in the ordinary course of business because the post-petition receipt of necessary goods has been interrupted could also jeopardize the Debtors' ability to consummate the restructuring transaction contemplated by their prepetition restructuring support agreement.

9.      Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Prepetition Orders and should authorize the Debtors to pay the Outstanding Prepetition Orders in the ordinary course of business.

## **RESERVATION OF RIGHTS**

10.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be, nor should it be, construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

01:25563963.1

4

A-3885

## NOTICE

11.     Notice of this Motion has been or will be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) holders of the twenty (20) largest unsecured claims on a consolidated basis against the Debtors; (c) counsel to the ABL Agent and ABL DIP Agent; (d) counsel to the Term Loan Agent and Term Loan DIP Agent; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the Offices of the United States Attorney for each of the District of Delaware and the Northern District of California; and (h) the Banks.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

01:25563963.1

## **CONCLUSION**

WHEREFORE, the Debtors request that the Court enter the Proposed Order,
granting the relief requested herein and such other and further relief as the Court may deem just
and proper.

Dated:    November 21, 2019          YOUNG CONAWAY STARGATT & TAYLOR, LLP
          Wilmington, Delaware

                                     */s/ Jared W. Kochenash*
                                     Pauline K. Morgan (No. 3650)
                                     Ryan M. Bartley (No. 4985)
                                     Ashley E. Jacobs (No. 5635)
                                     Elizabeth S. Justison (No. 5911)
                                     Jared W. Kochenash (No. 6557)
                                     Rodney Square
                                     1000 North King Street
                                     Wilmington, Delaware 19801
                                     Telephone:  (302) 571-6600
                                     Facsimile:  (302) 571-1253

                                     -and-

                                     PAUL, WEISS, RIFKIND, WHARTON &
                                     GARRISON LLP
                                     Alan W. Kornberg
                                     Kelley A. Cornish
                                     Claudia R. Tobler
                                     Christopher Hopkins
                                     Rich Ramirez
                                     1285 Avenue of the Americas
                                     New York, New York 10019
                                     Telephone: (212) 373-3000
                                     Facsimile: (212) 757-3990

                                     *Proposed Co-Counsel to the Debtors and
                                     Debtors in Possession*

01:25563963.1

**<u>EXHIBIT A</u>**

**Proposed Order**

01:25563963.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BUMBLE BEE PARENT, INC., *et al.*,[1] | Case No. 19-12502 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

## ORDER (I) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS FOR GOODS ORDERED PREPETITION AND RECEIVED POSTPETITION AND AUTHORITY TO SATISFY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order, pursuant to section 503(b) of the Bankruptcy Code, (i) granting administrative expense priority to all undisputed obligations for goods received postpetition pursuant to the Outstanding Prepetition Orders and (ii) granting related relief; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that this Court may enter a final order consistent with Article III of the United States Constitution; and upon the First Day Declaration; and it appearing that proper and adequate notice of the Motion has been given and that no other or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Bumble Bee Parent, Inc. (5118); Bumble Bee Holdings, Inc. (1051); Bumble Bee Foods, LLC (0146); Anova Food, LLC (2140); and Bumble Bee Capital Corp. (7816). The headquarters for the above-captioned Debtors is 280 Tenth Avenue, San Diego, CA 92101.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

01:25563963.1

further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

### IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      All undisputed obligations related to postpetition receipt of good under the Outstanding Prepetition Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

3.      The Debtors are authorized, but not directed, to pay all undisputed amounts related to the Outstanding Prepetition Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

4.      Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

5.      The Debtors are authorized to take all actions necessary to effectuate the relief granting in this Order in accordance with the Motion.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated:  November ____, 2019                    _____
             Wilmington, Delaware

                                              United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------- x
In re:                                          :   Chapter 11
                                                :
IMERYS TALC AMERICA, INC., et al.,1             :   Case No. 19-_____ (_____)
                                                :
              Debtors.                          :   (Joint Administration Requested)
                                                :
--------------------------------------------------------- x
```

### DEBTORS' MOTION FOR ORDERS UNDER 11 U.S.C. §§ 105(a), 363(b), 503(b), 541, 1107(a), AND 1108 AND FED. R. BANKR. P. 6003 (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SHIPPERS, LIEN CLAIMANTS, ROYALTY INTEREST OWNERS, AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF UNDISPUTED AND OUTSTANDING PREPETITION ORDERS, AND (III) GRANTING RELATED RELIEF

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**") hereby file this motion (the "**Motion**") for entry of interim and final orders, substantially in the forms attached hereto as Exhibit A and Exhibit B (respectively, the "**Interim Order**" and the "**Final Order**"), under sections 105(a), 363(b), 503(b), 506(b), 507(a), 541, 1107(a) and 1108 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) authorizing, but not directing, the Debtors to pay certain prepetition claims held by Shippers (as defined herein), Lien Claimants (as defined herein), Royalty Interest Owners (as defined herein), and 503(b)(9) Claimants (as defined herein); (ii) confirming the administrative expense priority status of Outstanding Orders (as defined herein) and authorizing, but not directing, the Debtors to pay prepetition amounts related to the Outstanding Orders; (iii) authorizing financial institutions to honor and process related checks and transfers, and (iv) granting certain related relief.  In support

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Alexandra Picard, Chief Financial Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings*, filed with the Court concurrently herewith (the "**Picard Declaration**").  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 363(b), 503(b), 506(b), 507(a), 541, 1107(a) and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003.

## BACKGROUND

2.       On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases (the "**Chapter 11 Cases**") for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Picard Declaration and is fully incorporated herein by reference.

3.       The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases, and no committees have yet been appointed.

2

18-23538-shl Doc 3752-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D -- Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 26 of 458

Case 19-34054-sgj11 Doc 944-1 Filed 08/28/20 Entered 08/28/20 18:37:36 Page 35 of 95

4.     Simultaneously with the filing of this Motion, the Debtors have filed a motion with this Court pursuant to Bankruptcy Rule 1015(b) seeking joint administration of the Chapter 11 Cases.

## RELIEF REQUESTED

5.     By this Motion, the Debtors seek entry of the Interim Order and Final Order, substantially in the forms of <u>Exhibit A</u> and <u>Exhibit B</u> attached hereto, (i) authorizing, but not directing, the Debtors to pay prepetition claims held by (a) Shippers in an amount not to exceed $1,900,000 on an interim basis (the "**Interim Shipping Claims Cap**") and $3,300,000 on a final basis (the "**Final Shipping Claims Cap**"), (b) Lien Claimants in an amount not to exceed $1,000,000 on an interim basis (the "**Interim Lien Claims Cap**") and $1,400,000 on a final basis (the "**Final Lien Claims Cap**"), and (c) Royalty Interest Owners in an amount not to exceed $200,000 on an interim basis (the "**Interim Royalty Payments Cap**") and $900,000 on a final basis (the "**Final Royalty Payments Cap**"), each absent further order of the Court, (ii) authorizing, but not directing, the Debtors to pay 503(b)(9) Claims in an amount not to exceed $300,000 (the "**503(b)(9) Claims Cap**")[2] absent further order of the Court; (iii) confirming the administrative expense priority status of Outstanding Orders and authorizing, but not directing,

---

[2]     Contemporaneously herewith, the Debtors have sought authority to pay certain other claims held by prepetition trade creditors (the "**Other Trade Claims**") pursuant to the (i) *Debtors' Motion for Orders Under 11 U.S.C. §§ 105(a), 363(b), and 1107(a), and Fed. R. Bankr. P. 6003 (I) Authorizing Payment of Prepetition Claims of Foreign Vendors; (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Granting Related Relief* (the "**Foreign Vendor Motion**") and the (ii) *Debtors' Motion for Orders Under 11 U.S.C. §§ 105(a), 363(b), 503(b)(9), 1107(a), and 1108 and Fed. R. Bankr. P. 6003 (I) Authorizing Payment of Prepetition Claims of Critical Vendors; (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers; and (III) Granting Related Relief* (the "**Critical Vendor Motion**"). Amounts the Debtors are seeking to pay on account of the Other Trade Claims have not been factored into the caps set forth in this Motion. For the avoidance of doubt, the 503(b)(9) Claims that the Debtors seek authority to pay in an amount not to exceed the 503(b)(9) Claims Cap do not include any Shipping Claims, Lien Claims, Royalty Payments, or Other Trade Claims.

US-DOCS\105945127.1

Case 19-23649-RDD    Doc 8004-4    Filed 09/18/19    Page 336 of 399

the Debtors to pay prepetition amounts related to the Outstanding Orders; and (iv) granting related relief.

6.    A summary of the relief requested herein is set forth below:

| | Interim Relief | Final Relief |
|---|---|---|
| **Shipping Claims** | $1,900,000 | $3,300,000 |
| **Lien Claims** | $1,000,000 | $1,400,000 |
| **Royalty Payments** | $200,000 | $900,000 |
| **503(b)(9) Claims** | $300,000 | $300,000 |

7.    As more particularly described in the Picard Declaration, the Debtors are primarily engaged in the mining, processing, and/or distribution of talc.  The Debtors' ability to operate their business without interruptions is dependent upon the Debtors' vendors, suppliers, shippers and warehousemen, each of which either provides the Debtors with the materials and supplies necessary to ensure safe mining conditions, extract and process talc, transport talc among the Debtors' mines and plants, or deliver talc to the Debtors' customers.  The Debtors utilize the services of a number of service providers who, by the nature of their business and the work that they perform for the Debtors, may be able to assert that prepetition amounts owed to them are secured by statutory liens on property of the Debtors that is either in the possession of the service provider or that has been improved upon by the provider.  The Debtors are also obligated to make royalty payments to certain royalty interest owners who may assert that prepetition royalty payments owed to them are secured by liens on the Debtors' property. Moreover, amounts held by the Debtors on account of the royalty interests may not be property of the Debtors' bankruptcy estates.  In addition, the claims of certain providers of goods to the Debtors may be entitled to priority under section 503 of the Bankruptcy Code because such goods were delivered to the Debtors within 20 days prior to the Petition Date.  In order to

4

continue the operation of their business uninterrupted postpetition, the Debtors seek to pay the prepetition claims of these claimants, each of which may be entitled to priority over general unsecured creditors.

8.     The Debtors further request that the Court (i) authorize all applicable financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion and to the extent the Debtors have sufficient funds standing to their credit with such Bank, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and (ii) authorize all Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion, without any duty of further inquiry and without liability for following the Debtors' instructions.

**BASIS FOR RELIEF**

**A.     The Shipping and Lien Claims**

*(i) Shipping Claims*

9.     In operating their talc business, the Debtors rely on their network of common carriers, shippers, expeditors, consolidators, transportation service providers, and other related parties (collectively, the "**Transporters**") to transport, ship, and deliver talc, ore and other products between the Debtors' mines and plants, or from the Debtors to their customers.  In addition, in connection with the transport of their goods, the Debtors often temporarily store talc or other materials with third party storage facilities, logistics providers and warehouses (collectively, the "**Warehouses**" and together with the Transporters, the "**Shippers**").  Many of the Shippers currently hold claims against the Debtors (collectively, the "**Shipping Claims**").

5

Case 19-11396-CSS    Doc 444    Filed 05/29/19    Page 335 of 399

10.     The operation of the Debtors' business require countless shipments of talc and other materials between the Debtors' mines, plants and storage facilities, and between the Debtors and their vendors and customers.  The Debtors' talc is also frequently in the possession of logistics providers who assist the Debtors in transitioning goods and materials, including finished product, throughout the supply chain, from origin to destination.  For example, when the Debtors import ore, a third party Shipper will ship the ore to a U.S. port in the Gulf of Mexico, then a third party logistics provider will take necessary preparations to enable a third party trucking company to transport the ore from the port to the Debtors' plant in Houston.[3]  In the case of shipments of talc to customers, the Debtors lease rail cars in order to transport finished product from their plants, including those in Montana and Timmins, Ontario, via a third party railroad.  Depending on the final customer destination, logistics providers may be utilized to transition the talc shipments from rail cars to third party trucking companies.

11.     Under some state laws, Shippers may have a possessory lien on the goods in their possession, which secures payment of claims incurred in connection with the storage or transportation of goods.[4]  In addition, pursuant to section 363(e) of the Bankruptcy Code, the Shippers, as bailees, may be entitled to adequate protection for valid possessory liens.  If the Debtors fail to pay the Shippers in a timely manner, the Shippers, with which the Debtors

---

[3]     Customs duties and similar fees owed on the part of the Debtors are generally paid directly by certain of the Debtors' Shippers or those vendors described in the Critical Vendor Motion and the Foreign Vendor Motion, who then pass the cost on to the Debtors.  To the extent the Debtors owe any prepetition customs duties or similar fees related to the Shipping Claims, the Debtors seek authority to pay these amounts.

[4]     For example, Montana's Uniform Commercial Code provides, in pertinent part: "A carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."  Mont. Code Ann. § 30-7-307.

US-DOCS\105945127.1

generally do not have formal long-term contracts,[5] may seek to assert liens against the talc or other goods in their possession, which could potentially block the Debtors' access to the goods that are in transport. While the Debtors reserve all rights to contest such actions, it cannot be disputed that such actions would severely damage the Debtors' ability to operate their businesses for the benefit of all stakeholders. Thus, the relief requested by this Motion is essential to the Debtors' ability to transition their operations into chapter 11 in a commercially reasonable manner. The Debtors further believe that the cost of replacing or re-constructing their existing transportation network far exceeds the aggregate amount of Shipping Claims. With hundreds of thousands of dollars' worth of talc in transit at any given time, the cost of a disruption to the Debtors' estates that could be caused by the Shippers' retention of talc likely far outweighs the outstanding Shipping Claims. Thus, the Debtors seek authority, but not direction, to pay prepetition obligations owed to the Shippers in an amount not to exceed the applicable Shipping Claims Cap absent further order of the Court. The Final Shipping Claims Cap represents approximately 9% of the total amount paid to these Shippers during the twelve months prior to the Petition Date.

*(ii) Lien Claims*

12.    In addition to the Shippers, the Debtors routinely transact business with a number of third party service providers or contractors (collectively, the "**Lien Claimants**") who may be permitted to assert statutory or possessory liens against the Debtors' equipment and other

---

[5]    To the extent that Shippers or other claimants have long-term contracts with the Debtors, the Debtors nonetheless submit that the relief requested herein is appropriate. Given the size and complexity of the Debtors' business, the Debtors have not yet made determinations regarding the assumption of executory contracts. Even if a claimant is required pursuant to the Bankruptcy Code to continue performing under a contract with the Debtors, if such a claimant does not comply with its obligations then there could be a significant negative impact on the Debtors' business, as enforcement could be costly and even a brief delay in the shipping of the Debtors' goods could have a substantial negative impact on the Debtors' business.

US-DOCS\105945127.1

18-23538-shl Doc 2352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 31 of 458
Case 9-19-23538-shl Doc 2352-4 Filed 02/28/20 Page Page 35 of 395

property if the Debtors fail to pay for those parties' various services. As examples, certain of the Lien Claimants manufacture specialized equipment and parts for the Debtors, while others provide maintenance and repair services with respect to compressors and other non-standard equipment at the Debtors' mills. In addition, some Lien Claimants provide mine management services including road construction and maintenance, drilling, blasting, excavation and other related services in and around the Debtors' mines in Vermont and Ontario. Many of the Lien Claimants are not required to perform future services, but rather perform work and related services on an order-by-order basis. If the Debtors become delinquent in their payments for such services rendered, the Lien Claimants may assert liens, including mechanic's liens, artisan's liens, materialman's liens, and other similar liens against the Debtors' property for the amounts owed (collectively, the "**Lien Claims**"). Pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting mechanics' liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.[6]

13. Unless the Debtors are able to satisfy the Lien Claims as provided herein, these parties may refuse to provide services to the Debtors or may seek to enforce priority claims against these chapter 11 estates on account of such claims. Accordingly, the Debtors seek authority to pay and discharge, on a case-by-case basis, Lien Claims that the Debtors believe have created, or could give rise to, a lien against the Debtors' property or equipment, regardless of whether such Lien Claimants already have perfected their interests, in an amount not to exceed the applicable Lien Claims Cap absent further order of the Court. The Final Lien Claims

---

[6] Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A).

Cap represents approximately 14% of the total amount paid to these Lien Claimants during the twelve months prior to the Petition Date.

## B.    Royalty Interests

14.    A mineral interest generally consists of an interest in the minerals in place under a parcel of property and the exclusive right to explore, drill, produce and otherwise capture minerals from the land.  Through a written agreement, owners of mineral interests ("**Royalty Interest Owners**") may lease or otherwise convey the exclusive right to capture minerals to a third party in exchange for either a share of production or payments in lieu of a share of production.  The nature of the interest retained by the Royalty Interest Owners (the "**Royalty Interests**") represents a share of the minerals mined from the property, or the revenue derived from the sale of such minerals, subject to the terms of the applicable agreement.  Pursuant to agreements with Royalty Interest Owners, the Debtors periodically make payments to Royalty Interest Owners at a monthly rate or based upon the volume of minerals mined (collectively, the "**Royalty Payments**").

15.    The Debtors are parties to agreements with three Royalty Interest Owners located in Montana, Vermont, and Canada.  Two of the Royalty Interest Owners are paid on a monthly basis.  The third Royalty Interest Owner, the Montana Department of Revenue, is paid in semi-annual installments, with payments made in March and November of the year following the year for which the Royalty Payments relate.[7]  Of the $900,000 relief requested for Royalty Interest Owners, approximately $770,000 is owed to the Montana Department of Revenue, for Royalty Payments related to 2018 or 2019 that have accrued but are not yet due.

---

[7]    The Royalty Payment owed to the Montana Department of Revenue may also be characterized as a tax.  Contemporaneously herewith, the Debtors have filed the *Debtors' Motion for Orders Under 11 U.S.C. §§ 105(a), 363 (b), 506(a), 507(a)(8), and 541 and Fed. R. Bankr. P. 6003 Authorizing Payment of Prepetition Taxes and Fees* (the "**Tax Motion**").  To avoid duplication, the Royalty Payment owed to the Montana Department of Revenue has not been included in the Tax Motion.

9

16.     Royalty payments are commonly governed by statutory frameworks that set strict payment deadlines and contain enforcement mechanisms including interest, fines, recovery of costs and attorneys' fees and treble damages.  Failure to make such payments can also result in actions seeking the forfeiture, cancellation or termination of the agreements with the Royalty Interest Owners.  In addition, the Debtors believe that the Royalty Interest Owners will likely assert that they are entitled to statutory or other liens in the event that the Debtors fail to make the Royalty Payments.  It is likely that the Royalty Interest Owners will also assert that the funds held by the Debtors on account of the Royalty Interests are not property of the estate, but are instead held in trust for the benefit of the Royalty Interest Owners.

17.     The Debtors seek authority, but not direction, to pay prepetition obligations owed to the Royalty Interest Owners in an amount not to exceed the applicable Royalty Payments Cap absent further order of the Court.  Given the various rights afforded to Royalty Interest Owners, the Debtors believe that granting the requested relief will merely affect the timing of Royalty Payments and that Royalty Interest Owners will not receive more than they would receive under a plan of reorganization.

**C.      503(b)(9) Claims**

18.     The Debtors have received certain goods and other materials from various parties within the twenty (20) days prior to the Petition Date (collectively, the "**503(b)(9) Claimants**").  Many of the Debtors' relationships with the 503(b)(9) Claimants are not governed by formal long-term contracts; rather, the Debtors typically place such orders on a purchase-order by purchase-order basis.  As a result, a 503(b)(9) Claimant may refuse to supply new orders without payment of its prepetition claims.

10

**A-3900**

19.    Accordingly, the Debtors seek authority to pay, in an amount not to exceed the

503(b)(9) Claims Cap, those undisputed claims arising from the value of goods actually received

by the Debtors within twenty (20) days prior to the Petition Date (each, a "**503(b)(9) Claim**").

**D.    Payment of Outstanding Orders**

20.    Prior to the commencement of their Chapter 11 Cases, the Debtors placed various

orders for goods that will not be delivered until on or after the Petition Date (collectively, the

"**Outstanding Orders**").   The suppliers of these goods may be concerned that because the

Debtors' obligations under the Outstanding Orders arose prior to the Petition Date, such

obligations will be treated as general unsecured claims in these Chapter 11 Cases.   To prevent

any disruption to the Debtors' operations, the Debtors request entry of an order (a) confirming

administrative expense priority under section 503(b)(9) of the Bankruptcy Code for all

undisputed obligations of the Debtors arising from the acceptance of goods included in the

Outstanding Orders and (b) authorizing the Debtors to satisfy such obligations in the ordinary

course of business.

## APPLICABLE AUTHORITY

**A.    Payment of the Shipping Claims, Lien Claims, and Royalty Payments Is Warranted
Under Section 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity**

21.    A bankruptcy court may authorize a debtor to pay certain prepetition obligations

pursuant to section 363(b) of the Bankruptcy Code.   11 U.S.C. § 363(b)(1).   Section 363(b) of

the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing,

may use, sell, or lease, other than in the ordinary course of business, property of the estate."  *Id.*

To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of

the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose

justifies such actions."   *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del.

1999) (internal citations omitted); *accord In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

22.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

23.     Further, in a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where such payment is necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (holding that the payment of a pre-receivership claim prior to reorganization permitted the debtor to prevent "stoppage of the continuance of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be

12

18-23538-shl    Doc 3352    Filed 02/28/20    Entered 02/28/20 16:52:24    Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 36 of 458
Case 1:21-cv-01022-LPS    Document 14    Filed 01/13/22    Page 35 of 399

authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir.

1945) (extending the doctrine for payment of prepetition claims beyond railroad reorganization

cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v.

Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving a

lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits);

*Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983)

(district court affirmed bankruptcy court's decision under section 363 of the Bankruptcy Code

authorizing contractor to pay prepetition claims of some suppliers who were potential lien

claimants).

24.     In addition, the Court may rely on the doctrine of necessity and its equitable

powers under section 105(a) of the Bankruptcy Code to authorize the payment of prepetition

claims when such payment is essential to the continued operation of a debtor's business.  *See*,

*e.g.*, *In re Just for Feet*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of

Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine

of necessity, particularly when such payment is necessary for the debtor's survival during

chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994)

(confirming that the doctrine of necessity is the standard for enabling a court to authorize

payment of prepetition claims prior to confirmation of a reorganization plan).

25.     The relief requested by this Motion represents a sound exercise of the Debtors'

business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates,

and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.  Authorizing the

Debtors to pay the Shipping Claims, Lien Claims, and Royalty Payments is in the best interests

of the Debtors, their estates, and their economic stakeholders.  If the Debtors fail to pay the

13

Shipping Claims, Shippers may exercise possessory liens and block the Debtors' access to talc that is in transport. If the Debtors fail to pay the Lien Claims, the Lien Claimants could assert liens against the Debtors' property for the amounts owed on account of the Lien Claims and may refuse to provide future services for the Debtors. If the Debtors fail to pay the Royalty Payments, the Royalty Interest Owners may assert liens against the Debtors' property for the amounts owed on account of the Royalty Payments and may seek to terminate the underlying royalty agreements, in effect restricting the Debtors' ability to conduct mining operations at the applicable locations. Thus, the Debtors' failure to pay the Shipping Claims, Lien Claims, and Royalty Payments could severely impair the Debtors' ability to operate their business for the benefit of all stakeholders.

26. In addition, the relief requested herein should not impair unsecured creditor recoveries in these Chapter 11 Cases. In instances where the amounts owed to Shippers, Lien Claimants, or Royalty Interest Owners is less than the value of the goods or property that could be held to secure a Shipping Claim, Lien Claim, or Royalty Payment, such parties may be fully-secured creditors of the Debtors' estates. In such instances, payment now only provides such parties with what they might be entitled to receive under a plan of reorganization, only without any interest costs that might otherwise accrue during these Chapter 11 Cases.

**B.  To the Extent Funds in the Debtors' Possession Are Related to Royalty Interests, Such Funds May Not Be Property of the Debtors' Estates**

27. With certain exceptions, section 541 of the Bankruptcy Code provides that all property to which a debtor has a legal or equitable interest becomes property of the estate upon the commencement of a chapter 11 case. *See* 11 U.S.C. § 541(a)(1). However, Section 541 does not by itself create new legal or equitable interests in property; instead, "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 54-55 (1979) (noting

14

that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law").  Further, Congress was clear that section 541(a)(1) of the Bankruptcy Code "is not intended to expand the debtor's rights against others more than they existed at the commencement of the case."  H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 367-68 (1977); *see also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) (holding that the "rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less").  Thus, if a debtor holds no legal or equitable interest in property as of the commencement of the case, such property does not become property of the debtor's estate under Section 541 and the debtor is prohibited from distributing such property to its creditors.  *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962) ("The Bankruptcy Act simply does not authorize a [debtor] to distribute other people's property among a bankrupt's creditors. . . .[S]uch property rights existing before bankruptcy in persons other than the bankrupt must be recognized and respected in bankruptcy."); *see also Boyd v. Martin Exploration Co. (In re Martin Exploration Co.)*, 56 B.R. 776, 779 (E.D. La. 1986) (holding that debtor had neither legal nor equitable title to the royalty interests it had conveyed).

28.    Section 541(d) of the Bankruptcy Code provides that a debtor who holds only bare legal title to property but not equitable interest in such property as of the commencement of the case does not obtain equitable interest in such property pursuant to Bankruptcy Section 541.  Specifically, it states:

> Property in which the debtor holds, as of the commencement date of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

15

A-3905

29.     To the extent the Debtors have proceeds of the Royalty Interests in their possession, the Debtors may hold bare legal title to such funds and potentially hold *no* legal title to the percentage of the mineral production attributable to the Royalty Interest Owners.  The Royalty Interest Owners will likely assert that the Debtors only take possession of proceeds from the sale of the Royalty Interest Owners' share of mineral production because they market and sell the minerals on behalf of the Royalty Interest Owners before remitting the Royalty Payments to them.  This Court has held that in such situations, a resulting trust is established on behalf of the Royalty Interest Owners.  *See Hess Oil Corp. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 418 B.R. 98, 106 (Bankr. D. Del. 2009) (holding that funds in debtors' possession held on behalf of royalty interest owners were held in a resulting trust for such parties, debtors only held bare legal title to such property, and thus, such funds were not property of the estate).  The Supreme Court has held that property held by debtors for a third party (such as funds held on account of a resulting trust) is not property of the estate. *Begier v. I.R.S.*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10 (1983) (noting that "Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition" from the bankruptcy estate).  Thus, any property held by the Debtors on account of the Royalty Interests may not be property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.

30.     Further, because the Royalty Payments may not be property of the estate, it is unclear whether the automatic stay would prevent any action by a Royalty Interest Holder to obtain possession or exercise control over the Royalty Payments.  *See* 11 U.S.C. § 362(a)(3) (providing that the automatic stay is applicable to all entities for "any act to obtain possession of

16

property of the estate or to exercise control over property of the estate").  Failure to grant the relief requested by this Motion could subject the Debtors to unnecessary litigation, either in or outside of this Court, at a time when their resources are already subject to enormous strain.  As such, the Debtors believe payment of the Royalty Payments in the ordinary course of business is in the best interests of the Debtors and their creditors, and should be authorized by the Court. Moreover, the Debtors believe that no creditors are prejudiced by this Motion.  The Debtors believe that they may have no right to distribute any funds on account of the Royalty Interests to their creditors because the Royalty Interests may not be property of the estate.  As such, for the reasons set forth above, the Debtors respectfully request that the Court authorize the Debtors to make the Royalty Payments to the Royalty Interest Owners in the ordinary course of business, for obligations incurred both prepetition and postpetition on account of the Royalty Interests.

**C.      The Court Should Authorize Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code as Provided Herein**

31.      Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the Debtor within 20 days before the commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business."  These claims must be paid in full for the Debtors to confirm a plan.  *See* 11 U.S.C. § 1129(a)(9)(A).  Consequently, payment now only provides such creditors what they would otherwise be entitled to receive under a chapter 11 plan.

32.      The Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation.  As administrative claims incurred in the ordinary course of business, the Debtors believe they may pay such claims in accordance with their business judgment pursuant to section 363(c)(1) of the Bankruptcy Code.  *See e.g.*, *In re Dura Auto. Sys. Inc.*, Ch. 11 Case No. 06-11202 (KJC), Hr'g Tr. 49:21-23 (Bankr. D. Del. Oct. 31, 2006) ("I think arguably the [D]ebtor

17

A-3907

could pay its 503(b)(9) claimants without court approval."). The timing of such payments also lies squarely within the Court's discretion. *See In re Global Home Prods. LLC*, Ch. 11 Case No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with the parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court").

33. The Debtors' ongoing ability to obtain goods as provided herein is essential to their ability to preserve and enhance value for all stakeholders. Absent their authority to pay Section 503(b)(9) Claims at the outset of these Chapter 11 Cases—which merely accelerates the timing of payment and not the ultimate treatment of such claims—the Debtors could be denied access to the equipment and goods necessary to maintain the Debtors' business operations. Failure to honor these claims may also cause the Debtors' vendor base to withhold support for the Debtors during the chapter 11 process. Such vendors could accelerate or eliminate favorable trade terms. Needless to say, such costs and distractions could impair the Debtors' ability to stabilize their operations at this critical juncture to the detriment of all stakeholders.

**D. The Court Should Confirm the Administrative Priority of the Outstanding Orders and Authorize Payment Thereof**

34. Pursuant to section 503(b) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services—including goods ordered prepetition—are, in fact, administrative expense priority claims because they benefit the estate postpetition. Thus, granting the relief sought herein with respect to the Outstanding Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted and will not prejudice any other party in interest. Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority.

18

Such a disruption to the continuous and timely flow of critical inventory and other goods to the Debtors would force the Debtors to potentially halt operations and production, damage the Debtors' business reputation, erode the Debtors' customer base, and ultimately lead to a loss of revenue, all to the detriment of the Debtors and their creditors.  Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

**E.    Cause Exists to Authorize Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers**

35.    The Debtors have sufficient funds to pay the amounts related to the Shipping Claims, Lien Claims, Royalty Payments, 503(b)(9) Claims and Outstanding Orders in the ordinary course of business by virtue of expected cash flows from ongoing business operations and existing cash on hand.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Shipping Claims, Lien Claims, Royalty Payments, 503(b)(9) Claims and Outstanding Orders.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize the Banks, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein, solely to the extent that the Debtors have sufficient funds standing to their credit with such Banks, and such Banks may rely on the representations of the Debtors without any duty of further inquiry and without liability for following the Debtors' instructions.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND
## BANKRUPTCY RULE 6004 SHOULD BE WAIVED

36.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty one (21) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.  *See* Fed. R. Bankr. P. 6003(b). Based on the foregoing, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003(b) because the relief set forth in Exhibit A is necessary to avoid immediate and irreparable harm.

37.     To the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors request in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

38.     Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (f) a limitation on the

20

Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to the proposed Interim Order and Final Order once entered. Nothing contained in the order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

## CONSENT TO JURISDICTION

39.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

40.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; (d) the firms listed on the Debtors' consolidated list of the top thirty law firms with the most significant representations of parties asserting talc claims against the Debtors; (e) the creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims (excluding talc claims); (f) counsel to the prepetition representative for future talc claimants; (g) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (h) all parties entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Initial Notice Parties**").  The Debtors submit that, under the circumstances, no other or further notice is required.

41.     In the event the Court enters an Interim Order granting this Motion, within forty-eight hours thereafter, the Debtors propose to serve notice of such entry on the Initial Notice Parties.  The notice will provide that any objections to the relief granted in the Interim Order must be filed with the Court and served upon counsel for the Debtors no later than seven days prior to the final hearing to be held on the Motion (the "**Objection Deadline**").  If an objection is

21

timely filed and served prior to the Objection Deadline, such objection will be heard at the final hearing on the Motion.  If no objections are timely filed and served, the Debtors' counsel will file a certification of counsel to that effect attaching a final form of order.

42.    A copy of this Motion is available on (a) the Court's website: www.deb.uscourts.gov, and (b) the website maintained by the Debtors' proposed Claims and Noticing Agent, Prime Clerk, LLC, at https://cases.primeclerk.com/imerystalc.

## NO PRIOR REQUEST

43.    No previous request for the relief sought herein has been made to this Court or any other court.

*[remainder of page intentionally left blank]*

22

A-3912

**WHEREFORE**, the Debtors respectfully request that the Court enter the
proposed Interim Order and the proposed Final Order, substantially in the forms attached hereto
as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, granting the relief requested in the Motion and such
other and further relief as may be just and proper.

Dated: February 13, 2019
      Wilmington, Delaware        */s/ Mark D. Collins*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  collins@rlf.com
       merchant@rlf.com
       steele@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (*pro hac vice* admission pending)
Helena G. Tseregounis (*pro hac vice* admission pending)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
       helena.tseregounis@lw.com

- and -

Richard A. Levy (*pro hac vice* admission pending)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  richard.levy@lw.com

US-DOCS\105945127.1

- and -

George A. Davis (*pro hac vice* admission pending)
Keith A. Simon (*pro hac vice* admission pending)
Annemarie V. Reilly (*pro hac vice* admission pending)
885 Third Avenue
New York, New York 10022
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
E-mail:  george.davis@lw.com
        keith.simon@lw.com
        annemarie.reilly@lw.com


*Proposed Counsel for Debtors and Debtors-in-Possession*

US-DOCS\105945127.1

# EXHIBIT A

Proposed Interim Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re:                                              :   Chapter 11

                                                    :

IMERYS TALC AMERICA, INC., *et al.*,[1]             :   Case No. 19-_____ (_____)

                                                    :

Debtors.                                            :   (Joint Administration Requested)

                                                    :

---------------------------------------------------------- x

## INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 363(b), 503(b), 541, 1107(a), AND 1108 AND FED. R. BANKR. P. 6003 (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SHIPPERS, LIEN CLAIMANTS, ROYALTY INTEREST OWNERS, AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF UNDISPUTED AND OUTSTANDING PREPETITION ORDERS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for an Interim Order (i) authorizing the Debtors to pay the Shipping Claims, Lien Claims, Royalty Payments, and 503(b)(9) Claims as provided herein; (ii) confirming the administrative expense priority status of Outstanding Orders and authorizing the Debtors to pay prepetition amounts related to the Outstanding Orders; and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion and the Picard Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Order and notice of the final hearing; and upon the record herein; and after due deliberation thereon; and the Court having determined that there is good and sufficient cause for the relief granted in this order, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The Debtors are authorized, but not directed, to pay the prepetition Shipping Claims in an amount not to exceed $1,900,000 in the aggregate (the "**Interim Shipping Claims Cap**") absent further order of the Court.

3.      The Debtors are authorized, but not directed, to pay the prepetition Lien Claims in an amount not to exceed $1,000,000 in the aggregate (the "**Interim Lien Claims Cap**") absent further order of the Court; *provided that* with respect to each Lien Claim, the Debtors shall not pay such Lien Claim unless the claimant has perfected, or is capable of perfecting in the future, in the Debtors' business judgment, one or more liens in respect of such Lien Claim.

4.      The Debtors are authorized, but not directed, to pay the prepetition Royalty Payments in an amount not to exceed $200,000 in the aggregate (the "**Interim Royalty Payments Cap**") absent further order of the Court.

5.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of, and discharge, on a case-by-case basis, the 503(b)(9)

US-DOCS\105945127.1

Claims in an amount not to exceed $300,000 in the aggregate (the "**503(b)(9) Claims Cap**"),

absent further order of the Court.

6.       All undisputed obligations related to the Outstanding Orders are granted

administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy

Code.

7.       Each of the Banks at which the Debtors maintain their accounts relating to the

payment of the Shipping Claims, Lien Claims, Royalty Payments, and 503(b)(9) Claims are

authorized to (i) receive, process, honor, and pay all checks presented for payment and to honor

all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds

are on deposit in those accounts and (ii) accept and rely on all representations made by the

Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should

be honored or dishonored in accordance with this or any other order of the Court, whether such

checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date,

without any duty to inquire otherwise.

8.       The Debtors are authorized, but not directed, to issue new postpetition checks, or

effect new electronic funds transfers, on account of Shipping Claims, Lien Claims, Royalty

Payments, and 503(b)(9) Claims as set forth herein and to replace any prepetition checks or

electronic fund transfer requests that may be lost or dishonored or rejected as a result of the

commencement of the Debtors' Chapter 11 Cases.

9.       Nothing in the Motion or this Interim Order, or the Debtors' payment of any

claims pursuant to this Interim Order, shall be construed as: (a) an admission as to the validity of

any claim against any Debtor or the existence of any lien against the Debtors' properties; (b) a

waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay

3

A-3918

any claim; (d) an implication or admission that any particular claim would constitute an allowed

claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to

section 365 of the Bankruptcy Code; or (f) a limitation on the Debtors' rights under section 365

of the Bankruptcy Code to assume or reject any executory contract with any party subject to this

Interim Order.  Nothing contained in this Interim Order shall be deemed to increase, reclassify,

elevate to an administrative expense status, or otherwise affect any claim to the extent it is not

paid.

14.	10.	The requirements of Bankruptcy Rule 6003(b) have been satisfied.

11.	Under the circumstances of these Chapter 11 Cases, notice of the Motion is

adequate under Bankruptcy Rule 6004(a).

12.	Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be

immediately effective and enforceable upon its entry.

13.	The Debtors are authorized to take all action necessary to effectuate the relief

granted in this Interim Order.

14.	The final hearing (the "**Final Hearing**") on the Motion shall be held on [_____,

2019, at __:__ _.m], prevailing Eastern Time.  On or before [__:__ _.m.], prevailing Eastern

Time, on [_____, 2019], any objections or responses to entry of a final order on the

Motion shall be filed with the Court, and served on: (a) Imerys Talc America, Inc., 100 Mansell

Court East, Suite 300, Roswell, Georgia 30076 (Attn: Ryan J. Van Meter, Esq. (email:

ryan.vanmeter@imerys.com)); (b) Latham & Watkins LLP, 355 South Grand Avenue, Suite 100,

Los Angeles, California 90071-1560 (Attn: Jeffrey E. Bjork, Esq. and Helena G. Tseregounis,

Esq. (emails: jeff.bjork@lw.com and helena.tseregounis@lw.com)); (c) Richards, Layton &

Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn:

4

Mark D. Collins, Esq. (email: collins@rlf.com)); (d) counsel to the prepetition representative for future talc claimants, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Edwin Harron, Esq. and Robert Brady, Esq. (emails: eharron@ycst.com and rbrady@ycst.com)); (e) counsel to any statutory committee appointed in these cases, if any; and (f) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801 19801 (Attn: Juliet M. Sarkessian, Esq. and Linda Richenderfer, Esq. (emails: juliet.m.sarkessian@usdoj.gov and linda.richenderfer@usdoj.gov)). In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

15.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2019
       Wilmington, Delaware

                        _____
                        UNITED STATES BANKRUPTCY JUDGE

5

## EXHIBIT B

Proposed Final Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                      :   Chapter 11
                                            :
IMERYS TALC AMERICA, INC., et al.,¹         :   Case No. 19-_____ (_____)
                                            :
          Debtors.                          :   (Jointly Administered)
                                            :
-------------------------------------------------------- x
```

**FINAL ORDER UNDER 11 U.S.C. §§ 105(a), 363(b), 503(b), 541, 1107(a), AND 1108 AND FED. R. BANKR. P. 6003 (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SHIPPERS, LIEN CLAIMANTS, ROYALTY INTEREST OWNERS, AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF UNDISPUTED AND OUTSTANDING PREPETITION ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")² of the Debtors for a Final Order (i) authorizing the Debtors to pay the Shipping Claims, Lien Claims, Royalty Payments, and 503(b)(9) Claims as provided herein; (ii) confirming the administrative expense priority status of Outstanding Orders and authorizing the Debtors to pay prepetition amounts related to the Outstanding Orders; and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion and the Picard Declaration, and the Interim Order entered on _____, 2019; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and the Court having determined that there is good and sufficient cause for the relief granted in this order, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is GRANTED on a final basis, as set forth herein.

2.     All objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.     The Debtors are authorized, but not directed, to pay the prepetition Shipping Claims in an amount not to exceed $3,300,000 in the aggregate (the "**Final Shipping Claims Cap**") absent further order of the Court.

4.     The Debtors are authorized, but not directed, to pay the prepetition Lien Claims in an amount not to exceed $1,400,000 in the aggregate (the "**Final Lien Claims Cap**") absent further order of the Court; *provided that* with respect to each Lien Claim, the Debtors shall not pay such Lien Claim unless the claimant has perfected, or is capable of perfecting in the future, in the Debtors' business judgment, one or more liens in respect of such Lien Claim.

5.     The Debtors are authorized, but not directed, to pay the prepetition Royalty Payments in an amount not to exceed $900,000 in the aggregate (the "**Final Royalty Payments Cap**") absent further order of the Court.

6.     The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of, and discharge, on a case-by-case basis, the 503(b)(9)

2

Claims in an amount not to exceed $300,000 in the aggregate (the "**503(b)(9) Claims Cap**"),
absent further order of the Court.

7.      All undisputed obligations related to the Outstanding Orders are granted
administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy
Code.

8.      Each of the Banks at which the Debtors maintain their accounts relating to the
payment of the Shipping Claims, Lien Claims, Royalty Payments, and 503(b)(9) Claims are
authorized to (i) receive, process, honor, and pay all checks presented for payment and to honor
all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds
are on deposit in those accounts and (ii) accept and rely on all representations made by the
Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should
be honored or dishonored in accordance with this or any other order of the Court, whether such
checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date,
without any duty to inquire otherwise.

9.      The Debtors are authorized, but not directed, to issue new postpetition checks, or
effect new electronic funds transfers, on account of Shipping Claims, Lien Claims, Royalty
Payments, and 503(b)(9) Claims as set forth herein and to replace any prepetition checks or
electronic fund transfer requests that may be lost or dishonored or rejected as a result of the
commencement of the Debtors' Chapter 11 Cases.

10.     Nothing in the Motion or this Final Order, or the Debtors' payment of any claims
pursuant to this Final Order, shall be construed as: (a) an admission as to the validity of any
claim against any Debtor or the existence of any lien against the Debtors' properties; (b) a waiver
of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any

US-DOCS\105945127.1

claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (f) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Final Order.  Nothing contained in this Final Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

11.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Final Order.

13.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2019
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

4

A-3925

Case 23-53374 Doc 732-42 Filed 02/28/08 Entered 02/28/08 16:26:40 Exhibit Main
Appendix Volumes X and XI (Vendor Comfort Motion and Vendor Comfor   Pg 59 of 458

Case 18-61376-NSR   Document 21   Filed 02/28/08   Page 58 of 599

**CULLEN AND DYKMAN LLP**
Maureen T. Bass, Esq.
44 Wall Street
New York, New York 10005
Telephone: (212) 701-4131
E-mail: mbass@cullenanddykman.com

- and -

**GRIFFIN HAMERSKY LLP**
420 Lexington Avenue, Suite 400
New York, New York 10170
Telephone: (646) 998-5580
Facsimile: (646) 998-8284
Scott A. Griffin (*Pro Hac Vice* Pending)
Michael D. Hamersky (*Pro Hac Vice* Pending)

Proposed Counsel for the Debtor and Debtor in Possession

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
In re:                                                      :   Chapter 11
                                                            :
HERB PHILIPSON'S ARMY AND NAVY                              :
STORES INC.,                                                :
                                                            :   Case No. 18-61376 (   )
                                           Debtor.[1]       :
                                                            :
------------------------------------------------------------X

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO
SECTIONS 363(c)(1) AND 503(b)(1)(A) OF THE BANKRUPTCY CODE: (I) GRANTING
ADMINISTRATIVE EXPENSE PRIORITY STATUS TO UNDISPUTED
OBLIGATIONS ARISING FROM THE POSTPETITION DELIVERY OF GOODS AND
SERVICES ORDERED PREPETITION; AND (II) AUTHORIZING THE DEBTOR
TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS**

        The debtor and debtor in possession in the above-captioned case (the "Debtor")

hereby moves this Court (the "Motion") for entry of interim and final orders, pursuant to sections

---

[1]    The last four digits of the Debtor's federal tax identification number are 4814.

363(c)(1) and 503(b)(1)(A) of title 11 of the United States Code (the "Bankruptcy Code"):
(A)(i) granting administrative priority expense status to undisputed obligations arising from the
postpetition delivery of goods and services ordered prepetition; and (ii) authorizing, but not
directing, the Debtor to pay such obligations in the ordinary course of business and (B) scheduling
a final hearing to be held on or after a date that is twenty-one (21) days after the date of this Motion.

       In support of the Motion, the Debtor relies upon and incorporates by reference the
*Affidavit of Guy Viti* filed under Local Bankruptcy Rule 2015-2 in support of the Debtor's chapter
11 petition and various first day applications and motions (the "Affidavit"), filed with the Court
concurrently herewith. In further support of the Motion, the Debtor respectfully represents:

### Jurisdiction and Venue

       1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.
§§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue
of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

       2.     The statutory predicates for the relief requested herein are sections
363(c)(1) and 503(b)(1)(A) of the Bankruptcy Code.

### Background

       3.     On the date hereof (the "Petition Date"), the Debtor filed a voluntary
petition (the "Chapter 11 Case") in this Court for relief under chapter 11 of the Bankruptcy Code.

       4.     The Debtor continues to manage and operate its business as a debtor in
possession under sections 1107 and 1108 of the Bankruptcy Code.

A-3927

5.     The factual background regarding the Debtor, including its operations, its capital and debt structure, and the events leading to the filing of this Chapter 11 Case, is set forth in detail in the Affidavit, which is deemed fully incorporated herein by reference.[2]

## Relief Requested

6.     By this Motion, the Debtor seeks entry of interim and final orders pursuant to sections 363(c)(1) and 503(b)(1)(A) of the Bankruptcy Code (i) granting administrative expense priority status to all undisputed obligations of the Debtor arising from the postpetition delivery of goods and services ordered prior to the Petition Date; and (ii) authorizing, but not directing, the Debtor to pay such obligations in the ordinary course of business.

## Basis for Relief

7.     As is common in the retail industry, the Debtor relies on third-party vendors (collectively, the "Vendors") to provide it with the goods and services necessary to maintain its day-to-day operations.

8.     As of the Petition Date, the Debtor has certain outstanding purchase orders with these Vendors for the delivery of goods and services that are necessary for the ordinary operation of the Debtor's business (the "Prepetition Orders").

9.     Any disruption in the Debtor's supply chain, such as a vendor halting delivery of certain necessary goods and/or services, could result in the Debtor not having sufficient products, and supplies to operate and to provide a seamless customer experience.  Such a result could potentially have a devastating impact on the Debtor's business and significantly impair its restructuring efforts.

---

[2]     Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in the Affidavit.

10.     Vendors may be concerned that the obligations arising from goods or services ordered prepetition and subsequently delivered or rendered postpetition will be treated as general unsecured claims against the Debtor's estate. As a result, Vendors may refuse to ship such goods, recall current shipments, or not perform services promised under Prepetition Orders.

11.     At best, such action would delay the delivery of goods and services until the issuance of new purchase orders by the postpetition Debtor. At worst, certain Vendors could refuse to deliver altogether.

12.     The Debtor expects that an order of the Court clarifying the administrative expense priority status of Prepetition Orders delivered postpetition will alleviate much uncertainty in the Vendor community and facilitate the Debtor's ability to conduct its business in an ordinary and uninterrupted fashion throughout its Chapter 11 Case.

13.     Further, an order authorizing, but not directing, the Debtor to pay obligations on account of Prepetition Orders will ensure that Vendors remain willing to do business with the Debtor going forward. These Vendor relationships are crucial to maximizing the value of the Debtor's business, and ultimately, to the success of this Chapter 11 Case.

## Applicable Authority

14.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services, including goods and services ordered prepetition, are afforded administrative expense priority status because they enhance the debtor's estate postpetition. See In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976) ("When third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, [the section] plainly require[s] that their claims be afforded priority."). Therefore, granting the relief sought herein with respect to goods and services ordered prepetition and delivered postpetition will not provide the Vendors with any

4

greater priority than they otherwise would have had if the relief herein were not granted, thereby causing no prejudice to any other party in interest.

15.     Moreover, the Debtor's satisfaction of undisputed obligations on account of Prepetition Orders consistent with its ordinary business practices is equally important and is authorized under 363(b)(1) of the Bankruptcy Code (providing that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate").  Vendor loyalty is crucial to the Debtor's ability to obtain the goods and services necessary for the efficient operation of its business.  Failure to obtain such goods and services in a timely manner would likely damage the Debtor's reputation among its customers, and the industry at large, thereby diminishing the Debtor's enterprise value.

16.     Courts have routinely granted the same or substantially similar relief to that requested in this Motion.  See, e.g., In re Chassix Holdings, Inc., et al., Case No. 15-10578 (MEW) (Bankr. S.D.N.Y. Apr. 14, 2015); In re Sbarro LLC., Case No. 14-10557 (MG) (Bankr. S.D.N.Y. May 4, 2014); In re Uno Restaurant Holdings Corp., et al., Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Jan. 20, 2010); In re The Great Atl. & Pac. Tea Co., Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. Dec. 15, 2010); In re General Motors Corp., et al., Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 1, 2009).[3]

17.     Finally, any payments made by the Debtor on account of the Prepetition Orders should not be deemed to constitute a postpetition assumption under any of its executory

---

[3]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtor's proposed counsel.

5

contracts or unexpired leases pursuant to section 365 of the Bankruptcy Code, to the extent applicable. The Debtor reserves all of its rights under the Bankruptcy Code with respect thereto.

18.     Based upon the foregoing, the Debtor submits that the relief requested herein is necessary, appropriate, and in the best interests of the estate, and should therefore be granted.

## Immediate Relief Is Necessary to Avoid Immediate and Irreparable Harm

19.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the Second Circuit instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) (quoting N.Y. Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975)). Further, the "harm must be shown to be actual and imminent, not remote or speculative." Id. at 214; see also Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998). The Debtor submits that for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined by the Second Circuit.

## Waiver of Stay Under Bankruptcy Rule 6004(h)

20.     The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that

A-3931

the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

21.     Any objection to the relief requested in this Motion on a final basis must (a) be filed in writing with the Court, at the U.S. Bankruptcy Court Alexander Pirnie U.S. Courthouse and Federal Building, 10 Broad Street, Utica, New York 13501, by 4:00 p.m. (New York time) on the date that is 21 days after the entry of the interim order (the "Objection Deadline") and (b) be served so as to be actually received by the following parties by the Objection Deadline: (i) the Debtor; (ii) counsel to the Debtor, Griffin Hamersky LLP, 420 Lexington Avenue, Suite 400, New York, NY 10170, Attn: Scott A. Griffin, Esq. and Michael D. Hamersky; (iii) the Office of the United States Trustee, 10 Broad Street, Room 105, Utica, New York 13501; (iv) the parties listed on the Debtor's List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), or if any official committee of unsecured creditors has been appointed, counsel to such committee; (vi) counsel to any other official committee appointed in this Chapter 11 Case; and (vii) the Debtor's prepetition secured lenders.

22.     If any objections are timely filed and received, the Debtor requests that a hearing should be held to consider such objections at the first regularly scheduled omnibus hearing in this Chapter 11 Case. The Debtor further requests that the interim order should remain in effect until such hearing.

23.     If no objections are timely filed and served as set forth herein, the proposed interim order should be deemed a final order with no further notice or opportunity to be heard afforded to any party.

### Notice

24.     Notice of this Motion has been provided either by facsimile, electronic transmission, overnight delivery, or hand delivery to: (i) the United States Trustee; (ii) the United

States Attorney for the Northern District of New York; (iii) the Internal Revenue Service; (iv) the
New York State Department of Taxation and Finance; (v) the Securities and Exchange
Commission; (vi) the parties listed on the Debtor's List of Creditors Holding the 20 Largest
Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (vii) the Debtor's prepetition
secured lenders; (viii) the Debtor's prepetition banking institutions; and (ix) any parties required
to be served under any applicable Bankruptcy Rule or Local Rule.  The Debtor submits that, under
the circumstances, no other or further notice is necessary.

## **No Prior Request**

25.     No prior request for the relief requested herein has been made to this or any
other Court.

## **Conclusion**

**WHEREFORE**, the Debtor respectfully requests this Court enter interim and final
orders, substantially in the forms annexed hereto as Exhibit "A" and Exhibit "B", respectively,
granting the relief requested in this Motion and such other and further relief as may be just and
proper.

Dated:   New York, New York
         October 8, 2018

                                        **CULLEN AND DYKMAN LLP**

                                        By:  /s/ Maureen T. Bass
                                        Maureen T. Bass, Esq.
                                        44 Wall Street
                                        New York, New York 10005
                                        Telephone: (212) 701-4131
                                        E-mail: mbass@cullenanddykman.com

                                        - and -

A-3933

**GRIFFIN HAMERSKY LLP**
420 Lexington Avenue, Suite 400
New York, New York 10170
Telephone: (646) 998-5580
Facsimile: (646) 998-8284
Scott A. Griffin (*Pro Hac Vice* Pending)
Michael D. Hamersky (*Pro Hac Vi*ce Pending)

Proposed Counsel for the Debtor and Debtor in Possession

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                        :

In re:                        :       Chapter 11
                        :

HERB PHILIPSON'S ARMY AND NAVY  :
STORES INC.,                :
                        :       Case No. 18-_____(   )
             Debtor.[1]   :
                        :
-------------------------------------------------------------X

### INTERIM ORDER PURSUANT TO SECTIONS 363(c)(1) AND 503(b)(1)(A) OF THE BANKRUPTCY CODE: (I) GRANTING ADMINISTRATIVE EXPENSE PRIORITY STATUS TO UNDISPUTED OBLIGATIONS ARISING FROM THE POSTPETITION DELIVERY OF GOODS AND SERVICES ORDERED PREPETITION AND; (II) AUTHORIZING THE DEBTOR TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS

Upon the motion (the "Motion")[2] of the Debtor for an interim order, pursuant to sections 363(c)(1) and 503(b)(1)(A) of the Bankruptcy Code: (i) granting administrative expense priority status to undisputed obligations arising from the postpetition delivery of goods and services ordered prepetition; and (ii) authorizing, but not directing, the Debtor to pay such obligations in the ordinary course of business; and upon the Affidavit; and sufficient notice of the Motion having been given; and it appearing that no other or further notice need be provided; and a hearing to consider the Motion having been held on October __, 2018; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and after due deliberation thereon and sufficient cause appearing therefore, it is hereby

---

[1]    The last four digits of the Debtor's federal tax identification number are 4814.

[2]    Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in the Motion.

**ORDERED, ADJUDGED AND DECREED that:**

1.    The Motion is **GRANTED** to the extent provided herein on an interim basis.

2.    The Debtor's undisputed obligations arising from the postpetition delivery of goods or services under the Prepetition Orders, shall be afforded administrative expense priority status pursuant to Bankruptcy Code section 503(b)(1)(A).

3.    The Debtor is authorized, but not directed, to pay Vendors all undisputed obligations arising from the postpetition delivery of goods or services under the Prepetition Orders in the ordinary course of business pursuant to Bankruptcy Code section 363(c)(1).

4.    Nothing in this Order or the Motion shall be deemed or construed as prejudicing any rights that the Debtor may have to dispute or contest the amount of, or basis for, any claims in connection with the Prepetition Orders.

5.    Nothing in this Order or the Motion shall constitute a rejection or assumption by the Debtor, as a debtor in possession, of any executory contract or unexpired lease.

6.    The Debtor is hereby authorized to take such actions as may be required to carry out the intent and purpose of this Order.

7.    A hearing (the "Hearing") to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on _____2018 at __ _.m. (New York Time) and any objection to the relief requested in the Motion on a final basis must (a) be filed in writing with the Court, at the U.S. Bankruptcy Court Alexander Pirnie U.S. Courthouse and Federal Building, 10 Broad Street, Utica, New York  13501 , by 4:00 p.m. (New York Time) on the date that is 21 days after the entry of this interim order (the "Objection Deadline") and

2

(b) served so as to be actually received by the following parties by the Objection Deadline: (i) the Debtor; (ii) counsel to the Griffin Hamersky LLP, 420 Lexington Avenue, Suite 400, New York, NY 10170, Attn: Scott A. Griffin, Esq. and Michael D. Hamersky, Esq.; (iii) the Office of the United States Trustee, Attn:_____, Esq., 10 Broad Street, Room 105, Utica, New York 13501; (iv) the parties listed on the Debtor's List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), or if any official committee of unsecured creditors has been appointed, counsel to such committee; (v) counsel to any other official committee appointed in this Chapter 11 Case; and (vii) the Debtor's prepetition secured lenders. This Order shall remain in effect until the Hearing.

8. The relief provided herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

9. Bankruptcy Rule 6003(b) has been satisfied.

10. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

11. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.


Dated:    Utica, New York
          October __, 2018


_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
In re:                                                       :        Chapter 11
                                                             :
HERB PHILIPSON'S ARMY AND NAVY                               :
STORES INC.,                                                 :
                                                             :
                                Debtor.[1]                   :        Case No. 18-_____(   )
                                                             :
-------------------------------------------------------------X

**FINAL ORDER PURSUANT TO SECTIONS 363(c)(1) AND 503(b)(1)(A)
OF THE BANKRUPTCY CODE: (I) GRANTING ADMINISTRATIVE
EXPENSE PRIORITY STATUS TO UNDISPUTED OBLIGATIONS
ARISING FROM THE POSTPETITION DELIVERY OF GOODS AND
SERVICES ORDERED PREPETITION; AND (II) AUTHORIZING THE DEBTOR
TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS**

Upon the motion (the "Motion")[2] of the Debtor for a final order, pursuant to

sections 363(c)(1) and 503(b)(1)(A) of the Bankruptcy Code: (i) granting administrative expense

priority status to undisputed obligations arising from the postpetition delivery of goods and

services ordered prepetition; and (ii) authorizing, but not directing, the Debtor to pay such

obligations in the ordinary course of business; and upon the Affidavit; and sufficient notice of

the Motion having been given; and it appearing that no other or further notice need be provided;

and a hearing to consider the Motion having been held on _____, 2018; and it appearing

that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors

and other parties in interest; and after due deliberation thereon and sufficient cause appearing

therefore, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1.       The Motion is **GRANTED** to the extent provided herein.

---

[1]      The last four digits of the Debtor's federal tax identification number are 4814.

[2]      Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in the
Motion.

2.  The Debtor's undisputed obligations arising from the postpetition delivery of goods or services under the Prepetition Orders, shall be afforded administrative expense priority status pursuant to Bankruptcy Code section 503(b)(1)(A).

3.  The Debtor is authorized, but not directed, to pay Vendors all undisputed obligations arising from the postpetition delivery of goods or services under the Prepetition Orders in the ordinary course of business pursuant to Bankruptcy Code section 363(c)(1).

4.  Nothing in this Order or the Motion shall be deemed or construed as prejudicing any rights that the Debtor may have to dispute or contest the amount of, or basis for, any claims in connection with the Prepetition Orders.

5.  Nothing in this Order or the Motion shall constitute a rejection or assumption by the Debtor, as a debtor in possession, of any executory contract or unexpired lease.

6.  The Debtor is hereby authorized to take such actions as may be required to carry out the intent and purpose of this Order.

7.  Bankruptcy Rule 6003(b) has been satisfied.

8.  Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

9.  This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:    Utica, New York
          _____ ___, 2018


                              _____
                              UNITED STATES BANKRUPTCY JUDGE


2

A-3941

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND
## FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY
## PREPETITION CLAIMS OF LIEN CLAIMANTS, IMPORT CLAIMANTS,
## AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE
## PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2]

respectfully state as follows in support of this motion (this "Motion"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* filed contemporaneously herewith. The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

[2] A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in (i) the *Declaration of David A. Brandon, Chairman of the Board and Chief Executive Officer of Toys "R" Us, Inc., in Support of Chapter 11 Petitions and First*

**Relief Requested**

1.      The Debtors seek entry of interim and final orders, substantially in the forms
attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order,"
respectively)  (a) authorizing, but not directing, the Debtors to pay in the ordinary course all
prepetition and postpetition amounts owing on account of (i) certain shippers, warehousemen,
and other non-merchant lienholders, (ii) certain import claimants, and (iii) certain Bankruptcy
Code section 503(b)(9) claimants; (b) confirming the administrative expense priority status of
Outstanding Orders (as defined herein); and (c) granting related relief.[3]  In addition, the Debtors
request that the Court schedule a final hearing within 21 days of the commencement of these
chapter 11 cases to consider approval of this Motion on a final basis.[4]

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Eastern District of Virginia
(the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the
*Standing Order of Reference from the United States District Court for the Eastern District of
Virginia*, dated August 16, 1984.  The Debtors confirm their consent, pursuant to rule 7008 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by

---

*Day Motions* (the "Brandon Declaration") and (ii) the *Declaration of Michael J. Short, Chief Financial Officer
of Toys "R" Us, Inc., in Support of First Day Motions* (the "Short Declaration" and together with the Brandon
Declaration, the "First Day Declarations"), filed contemporaneously with the Debtors' voluntary petitions for
relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on September 18,
2017 (the "Petition Date").  Capitalized terms used, but not otherwise defined in this Motion shall have the
meanings ascribed to them in the First Day Declarations.

[3]   For the avoidance of doubt, the Debtors are seeking relief related to all Foreign Vendors (as defined herein)
payments pursuant to *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay
Certain Prepetition Claims of Foreign Vendors and (II) Granting Related Relief* filed contemporaneously
herewith.

[4]   The relief requested herein does not apply to any claims against, or lienholders, 503(b)(9) claimants, shippers,
and warehousemen of, Debtor Toys "R" Us (Canada) Ltd. ("Toys Canada"), which will be addressed in Toys
Canada's Companies' Creditors Arrangement Act (Canada) proceedings ("CCAA").

2

the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and rules 6004-2 and 9013-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules").

### The Lien Claimants

5.      The Debtors' business depends on the uninterrupted flow of inventory and other goods through its supply chain and distribution network, including the purchase, import, warehousing, and shipment of the Debtors' merchandise and other personal property (the "Merchandise").  Generally, the Debtors source inventory from third-party toy, game, and product manufacturers, which are located in North America (the "Domestic Vendors") and abroad (the "Foreign Vendors," and together with the Domestic Vendors, the "Vendors").

6.      The Foreign Vendors and the United States-based Debtors utilize the services of APL Logistics ("APLL") to coordinate all steps of the inventory purchase process related to imports from Southern China, from which 90% of the Debtors' foreign imports are shipped. When an order is ready for delivery, the Foreign Vendors utilize APLL's online platform to inform APLL that the product is ready for shipment.  APLL then analyzes relevant information to determine how the product needs to be distributed and provides the Foreign Vendor instructions regarding how to get the product to the port, such as whether the product should be delivered directly to the port in a shipping container or trucked to a consolidator to build a container that is then delivered to the port.  Within, on average, 48 hours of a shipping container

3

A-3944

arriving at port, it is boarded on a ship for delivery to the United States. The Debtors do not take

title of the product until it crosses the bow of the ship. After leaving the port, the product is

delivered to a destination port where it is unloaded before arriving at the Debtors' warehouses

and distribution centers located in North America (collectively, the "Warehousemen").  These

warehouses are predominantly operated by the Debtors themselves, with the exception of certain

warehouses that are operated by third-party Warehousemen.  Additionally, the flow from the

Debtors' Vendors to the Warehousemen, and ultimately to stock the Debtors' brick and mortar

stores and fulfill online orders, depends on the services provided by, among others, various

freight forwarders, common or contract carriers, and customs brokers (collectively,

the "Shippers").

7.     The United States-based Debtors also purchase certain products from American

manufacturers. Of these purchases, approximately 80% are "collect," meaning that the Debtors

contract with trucking companies to pick up the product at the vendors' facilities and deliver it to

the Debtors' warehouses.  The Debtors take title of such product when it is placed on the

trucking company's vehicles.  The remaining 20% of such purchases are "prepaid," meaning that

the vendor is responsible for delivery (or arranging for third-party delivery) of the product

directly to the Debtors' warehouses, in which case the Debtors only take title of such product

upon delivery.

8.     Significantly, the Vendors or the Shippers may refuse to release Merchandise or

other goods for delivery to the Debtors' warehouses if the Debtors are not paid current.  Further,

the Warehousemen at the warehouses that are managed by third parties may refuse to release the

Merchandise or other goods for shipment to the Debtors' brick and mortar stores or to fulfill

online orders if they are not paid current.

9.      Additionally, the Debtors employ various general contractors and vendors to assist with remodels and on-site construction and repairs at the corporate headquarters, warehouses, and retail stores (the "<u>Non-Merchant Lienholders</u>" and, together with the Shippers and Warehousemen, the "<u>Lien Claimants</u>").   In particular, the Non-Merchant Lienholders provide renovation and repair services or delivery and installation of various furniture and fixtures in the Debtors' corporate headquarters, warehouses, or retail stores.   Some of the Non-Merchant Lienholders are not required to perform future services, but rather perform work and related services on an order-by-order basis.   It is imperative that the Non-Merchant Lienholders continue providing these services. Otherwise, the Debtors' uncompleted remodeling and construction projects may grind to a halt, and the Non-Merchant Lienholders may not make necessary repairs to such essentials as the lighting and air conditioning in the Debtors' corporate headquarters, warehouses, and retail stores.

10.      Under certain nonbankruptcy laws, the Lien Claimants may be able to assert liens on the goods in their possession to secure payment of the charges or expenses incurred in connection with the Lien Charges (as defined herein).[5]   Accordingly, in the event the Lien Charges remain unpaid, the Lien Claimants are likely to attempt to assert such possessory liens, and may refuse to deliver or release goods in their possession until their claims are satisfied and their liens redeemed.   The Lien Claimants' retention of the Debtors' goods and supplies would disrupt the Debtors' operations at a time when they are sourcing Merchandise for the important holiday season and affect the Debtors' ability to efficiently administer these chapter 11 cases.

---

[5]      For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that "[a] carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law."   *See* U.C.C. § 7-307(a) (2003).

5

With approximately $243.2 million worth of Merchandise currently in transit, the cost of such disruption to the Debtors' estates would likely be greater than the applicable Lien Charges. Further, pursuant to section 363(e) of the Bankruptcy Code, the Lien Claimants may be entitled to adequate protection of any valid possessory lien, which would drain estate assets.

11.      Collectively, the Debtors estimate approximately $51.2 million of third-party shipping, storage, and other charges (collectively, the "Lien Charges") are due and owing as of the Petition Date, of which approximately $35.9 million may become due and owing during the interim period.

### The Import Claimants

12.      As described in greater detail above, in the ordinary course of their business, the Debtors import inventory and related materials (collectively, the "Imported Goods") from the Vendors. Timely receipt or transmittal, as applicable, of the Imported Goods is critical to both the Debtors' domestic and foreign business operations. Any disruption or delay would adversely affect the Debtors' business operations and affect the Debtors' ability to efficiently administer these chapter 11 cases. The Debtors are currently a tier 3 importer into the United States, allowing them to submit entry documentation to the United States Customs and Border Control prior to a ship's arrival. The Debtors generally receive customs clearance on their shipping cargo 24 hours prior to a ship docking at port.

13.      In connection with the import and export of goods, the Debtors may be required to pay various charges (the "Import Charges"), including customs duties, detention and demurrage fees, tariffs and excise taxes, freight forwarding, and other similar obligations. Non-compliance with obligations related to the Import Charges could jeopardize their status as a tier 3 importer. The Debtors seek authority to pay any and all necessary and appropriate Import Charges incurred on account of prepetition transactions. Absent such payment, parties to whom

6

A-3947

the Debtors owe Import Charges (the "<u>Import Claimants</u>") may interfere with the transportation of the Imported Goods.  If the flow of Imported Goods were to be interrupted, the Debtors may be deprived of the inventory necessary to stock the shelves in their stores, which means the Debtors would not have inventory to sell to their customers.  The ultimate value of such sales is worth far more to the Debtors (both in terms of future receipts and the maintenance of valuable customer goodwill) than the aggregate amount of incurred, but unpaid, Import Charges.

14.    The Debtors estimate that approximately $200,000 in Import Charges is outstanding as of the Petition Date, all of which may become due and owing during the interim period.

### The 503(b)(9) Claimants

15.    The Debtors may have received certain inventory, goods, or materials from various foreign and domestic vendors (collectively, the "<u>503(b)(9) Claimants</u>") within the 20-day period immediately preceding the Petition Date, thereby giving rise to claims that are accorded administrative priority under section 503(b)(9) of the Bankruptcy Code (the "<u>503(b)(9) Claims</u>" and, together with the Lien Charges and the Import Charges, the "<u>Obligations</u>").  Many of the Debtors' relationships with the 503(b)(9) Claimants are not governed by long-term contracts.  Rather, the Debtors obtain inventory, goods, or other materials from such claimants on an order-by-order basis.  As a result, a 503(b)(9) Claimant may refuse to supply new orders without payment of its 503(b)(9) Claims.  Such refusal could negatively affect the Debtors' estates as the Debtors' business is dependent on the steady flow of inventory to stock their stores.

16.    Further, substantially all of the 503(b)(9) Claimants are Vendors that supply goods, materials, or services to the Debtors that are crucial to the Debtors' ongoing operations—including Merchandise necessary to fill the shelves in the Debtors' stores and fulfill online orders.  Moreover, even though the manufacture of certain Merchandise is completed in

7

A-3948

anticipation of the holiday season, the Vendors are still able to exercise control of the product until the Debtors have taken control of such product as set forth above.  Accordingly, Foreign Vendors will be unlikely to allow the Debtors to take possession of their Merchandise unless the Debtors pay some or all of the claims owing to such vendors.  In light of the fact that such vendors are rightfully entitled to payments on account of 503(b)(9) Claims, the Debtors believe it is prudent to seek administrative status of such claims now.

17.     Additionally, if left unpaid, the Foreign Vendors may take action against the Debtors based upon an erroneous belief that Foreign Vendors are not subject to the automatic stay provisions of section 362(a) of the Bankruptcy Code.  Although as a matter of law, the automatic stay applies to the Debtors' assets wherever they are in the world, attempting to enforce the Bankruptcy Code in foreign countries is often challenging and would consume substantial resources.  Any such dispute would additionally result in a delay of the Debtors procuring the purchased product, which delay the Debtors cannot afford given the looming holiday season. In light of these consequences, the Debtors have concluded that payment of the Foreign Vendor 503(b)(9) Claimants is essential to avoid disruptions to the Debtors' operations. The estimated amounts owing to the 503(b)(9) Claimants set forth below pales in comparison to the potential damage to the Debtors' business if the Debtors' operations were to experience significant disruption.

18.     By this motion, the Debtors seek authority, but not direction, to pay up to $25 million during the interim period and up to $100 million on a final basis on account of the 503(b)(9) Claims.

**Payment of Outstanding Orders**

19.     Prior to the Petition Date and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (the "Outstanding

8

Orders"). To avoid becoming general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition. To prevent any disruption to the Debtors' business operations, and given that goods delivered after the Petition Date are afforded administrative expense priority under section 503(b) of the Bankruptcy Code, the Debtors seek an order (a) granting administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed obligations of the Debtors arising from the acceptance of goods subject to Outstanding Orders and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

## **Basis for Relief**

### I.   **The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code.**

20.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

21.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs Inc.*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business

9

A-3950

justification); *see also James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

22.     Furthermore, section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity "is a necessary deviation because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under [section 105(a)] the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *see also In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *Ionosphere*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

10

23.     The relief requested herein is appropriate and warranted under the circumstances. The authority to satisfy the Obligations in the initial days of these cases without disrupting the Debtors' operations will maintain the integrity of the Debtors' supply chain, facilitate the sale of inventory and the Debtors' accounts receivable collection, and allow the Debtors to efficiently administer these chapter 11 cases. Failure to pay the Obligations could potentially destroy value that would otherwise inure to the benefit of the Debtors' estates. Where, as here, debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this district and other jurisdiction have routinely authorized payments to lien claimants. *See, e.g.*, *In re Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (approving payment of prepetition claims of lien claimants); *In re Penn Virginia Corp.*, No. 16-32395 (KLP) (Bankr. E.D. Va. Jun. 9, 2016) (same); *In re Alpha Nat. Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Sept. 3, 2015) (same); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. June 4, 2015) (same); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Oct. 15, 2015) (approving the payment of prepetition claims of shipper and warehousemen claimants on the basis that shippers and warehousemen could refuse to deliver or return the debtors' goods if prepetition claims were not satisfied).[6]

24.     Allowing the Debtors to pay the Obligations is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust Savs. Ass'n v. 203 N. LaSalle St. P'Ship.*, 526 U.S. 434, 453 (1999). Based on these circumstances, the Debtors submit that the relief requested herein represents a sound

---

[6]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable
harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the
Bankruptcy Code.

## II.  Failure to Make Timely Payment of the Lien Charges Would Threaten the Debtors' Ability to Operate and May Subject the Debtors' Assets to the Perfection of Liens.

25.      As noted above, certain Lien Claimants may be entitled under applicable
nonbankruptcy law to assert certain possessory liens on the Debtors' goods or equipment in their
possession (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an
attempt to secure payment of their prepetition claim.  Under section 362(b)(3) of the Bankruptcy
Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the
Bankruptcy Code, is expressly excluded from the automatic stay.[7]  As a result, the Debtors
anticipate that certain of the Lien Claimants may assert or perfect liens, simply refuse to turn
over goods in their possession, or stop performing their ongoing obligations.  Even absent a valid
lien, to the extent certain Lien Claimants have possession of the Debtors' inventory, equipment,
or products, mere possession or retention would disrupt the Debtors' operations.

26.      Furthermore, paying the Lien Charges should not impair unsecured creditor
recoveries in these chapter 11 cases.  In instances where the amount owed to a Lien Claimant is
less than the value of the goods that could be held to secure a Shipper, Warehouse, or
Non-Merchant Lienholder claim, such parties may be fully-secured creditors of the Debtors'
estates.  In such instances, payment now only provides such parties with what they might be
entitled to receive under a plan of reorganization, only without any interest costs that might
otherwise accrue during these chapter 11 cases.  Conversely, all creditors will benefit from the

---

[7]   *See* 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally
applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires
rights in such property before the date of perfection").

12

seamless transition of the Debtors' operations into bankruptcy and the ultimate delivery and sale of inventory in the Debtors' stores and e-commerce channels.

27.     Where debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates, courts in this district and other jurisdictions have routinely authorized payments to shippers and warehousemen under similar circumstances.  *See, e.g.*, *In re Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (authorizing payment to certain shippers, warehousemen, and other lien claimants); *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. May 9, 2014) (authorizing payment of shipper and warehouseman claims); *In re Movie Gallery, Inc.*, No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010) (authorizing payment to certain shippers, warehousemen, and other lien claimants); *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. Nov. 12, 2008) (authorizing debtor to pay up to $10 million for certain shipping claims); *In re Movie Gallery, Inc.*, No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 17, 2007) (authorizing payment to certain shippers, warehousemen, and other lien claimants).

## III.     The Court Should Authorize the Payment of Import Charges.

28.     The Import Charges would likely be paid in full under any plan of reorganization pursuant to Bankruptcy Code section 507(a)(8), which provides eighth priority status to the claims of a governmental unit based on a customs duty arising out of the importation of certain merchandise.  Thus, payment of the Import Charges as proposed in this motion merely accelerates the distribution that the Import Claimants would receive in any event upon confirmation of a plan.  Therefore, granting this Motion with respect to the Import Charges would have no substantial effect on the relative distribution of the estate's assets.

29.     For these reasons, courts have authorized the payment of prepetition import claims under similar circumstances in recent retail chapter 11 cases.  *See e.g.*, *In re Gymboree*

13

*Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (approving payment of customs duties, detention and demurrage fees, tariffs and excise, and related taxes to third party vendors); *In re Pacific Sunwear of Calif. Inc.*, No. 16-10882 (LSS) (Bankr. D. Del. Apr. 8, 2016) (approving payment of charges incurred in connection with the transportation of merchandise); *In re Sports Authority Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016) (approving payment of customs duties, detention and demurrage fees, tariffs and excise, and related taxes to third party vendors); *In re Quiksilver, Inc.*, No. 15-11880 (BLS) (Bankr. D. Del. Sept. 10, 2015) (approving payment of import and export charges to third party administrator); *In re LHI Liquidation Co. f/k/a Loehmann's Holdings Inc.*, No. 13-14050 (MG) (Bankr. S.D.N.Y Jan. 16, 2014) (authorizing payment of customs duties and brokers fees in connection with importing products).

**IV.      The Court Should Authorize the Payment of 503(b)(9) Claims.**

30.      Section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business."  These 503(b)(9) Claims must be paid in full for the Debtors to confirm a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(A).  Consequently, payment of such claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan. Moreover, the timing of such payments also lies squarely within the Court's discretion.  *See In re Global Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court").  The Debtors' ongoing ability to obtain inventory and other goods as provided herein is key to their survival and necessary to preserve the value of their estates.  Absent payment of the 503(b)(9) Claims at the outset of these chapter 11 cases—

14

which merely accelerates the timing of payment without modifying the ultimate treatment of such claims—the Debtors could be denied access to inventory and other goods necessary to maintain their business operations and maximize the value of their estates.

31.     Further, as described above, substantially all of the 503(b)(9) Claimants are Foreign Vendors.  Without the Foreign Vendors the Debtors would not be able to stock their shelves with the Merchandise necessary to continue operations.  If the Debtors do not pay certain of the 503(b)(9) Claims owing to the Foreign Vendors, such Foreign Vendors may simply refuse to do business with the Debtors unless and until they receive payment on account of their prepetition claims.  Such Foreign Vendors may also take other precipitous action against the Debtors based on the incorrect belief that they are not bound by the automatic stay.

32.     For these reasons, courts in this district and others have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business.  *See, e.g.*, *In re Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (authorizing debtors to pay claims arising under section 503(b)(9)); *In re Penn Virginia Corp.*, No. 16-32395 (KLP) (Bankr. E.D. Va. June 9, 2016) (same); *In re Alpha Nat. Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Sept. 3, 2015) (same); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. June 4, 2015) (same); *In re James River Coal Company*, No. 14-31848 (KRH) (Bankr. E.D. Va. May 9, 2014) (same); *In re Aéropostale, Inc.*, No. 16-11275 (SHL) (Bankr. S.D.N.Y. June 3, 2016) (authorizing payment of section 503(b)(9) claims).

## V.     The Court Should Confirm that Outstanding Orders Are Administrative Expense Priority Claims and that Payment of Such Claims Is Authorized.

33.     Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are administrative expense priority claims because they benefit the estate

postpetition.  *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority).  Thus, the granting of the relief sought herein with respect to the Outstanding Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted, and will not prejudice any other party in interest.

34.     Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority status.  The attendant disruption to the continuous and timely flow of critical raw materials and other goods to the Debtors would force the Debtors to potentially halt operations, damage the Debtors' business reputation, erode the Debtors' customer base, and ultimately lead to a loss of revenue, all to the detriment of the Debtors and their creditors.  Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

35.     The Debtors have sufficient funds to pay any amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Obligations.  Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be

inadvertently made. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

34.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, the Debtors seek entry of the Interim and Final Order (a) authorizing, but not directing, the Debtors to pay in the ordinary course all prepetition and postpetition amounts owing on account of (i) certain shippers, warehousemen, and other non-merchant lienholders, (ii) certain import claimants, and (iii) certain Bankruptcy Code section 503(b)(9) claimants; (b) confirming the administrative expense priority status of Outstanding Orders (as defined below); and (c) granting related relief.  For the reasons discussed above, authorizing the Debtors to pay the Obligations and the Outstanding Orders as well as granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

Case 23-13359-VFP Doc 1022-1 Filed 02/28/20 Page 91 of 999

<u>**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**</u>

35.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

<u>**Waiver of Memorandum of Points and Authorities**</u>

36.     The Debtors respectfully request that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

<u>**Reservation of Rights**</u>

37.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code, any foreign bankruptcy or insolvency law, including the CCAA, or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or pursuant to the CCAA; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code, the CCAA, or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

18

<u>Notice</u>

38.    The Debtors will provide notice of this Motion via first class mail and email
(where available) to: (a) the Office of the United States Trustee for the Eastern District of
Virginia, Attn: Robert B. Van Arsdale and Lynn A. Kohen; (b) the holders of the 50 largest
unsecured claims against the Debtors (on a consolidated basis); (c) DIP ABL Agent and the
advisors and counsel thereto; (d) DIP Taj Term Loan Agent and the advisors and counsel thereto;
(e) DIP Delaware Term Loan Agent and the advisors and counsel thereto; (f) the indenture
trustee for the TRU Taj 12.00% Senior Notes and the advisors and counsel thereto; (g) the
administrative agent for the prepetition Secured Revolving Credit Facility and the advisors and
counsel thereto; (h) the administrative agent for the prepetition Secured Term Loan B Facility
and the advisors and counsel thereto; (i) the prepetition administrative agent for the Propco I
Unsecured Term Loan Facility and the advisors and counsel thereto; (j) the agent for the Propco
II Mortgage Loan and the advisors and counsel thereto; (k) the agent for the Giraffe Junior
Mezzanine Loan and the advisors and counsel thereto; (l) the administrative agent for the
prepetition European and Australian Asset-Based Revolving Credit Facility ("<u>Euro ABL</u>") and
the advisors and counsel thereto; (m) the administrative agent for the Senior Unsecured Term
Loan Facility and the advisors and counsel thereto; (n) the indenture trustee for the Debtors'
7.375% Senior Notes and the advisors and counsel thereto; (o) the indenture trustee for the
Debtors' 8.75% Unsecured Notes and the advisors and counsel thereto; (p) counsel to the ad hoc
group of the Term B-4 Holders; (q) counsel to the Ad Hoc Committee of Taj Noteholders; (r) the
monitor in the CCAA proceeding and counsel thereto; (s) the Debtors' Canadian Counsel, (t) the
Internal Revenue Service; (u) the office of the attorneys general for the states in which the
Debtors operate; (v) the Securities and Exchange Commission; and (w) any party that has
requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice Parties</u>").  The

19

Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

39.    No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order

and the Final Order granting the relief requested herein and such other relief as the Court deems

appropriate under the circumstances.

Richmond, Virginia
Dated:  September 19, 2017

/s/ *Michael A. Condyles*
**KUTAK ROCK LLP**
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192
Email:        Michael.Condyles@KutakRock.com
              Peter.Barrett@KutakRock.com
              Jeremy.Williams@KutakRock.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C.
(*pro hac vice* admission pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
              joshua.sussberg@kirkland.com

-and-

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C.
(*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              anup.sathy@kirkland.com
              chad.husnick@kirkland.com
              robert.britton@kirkland.com
              emily.geier@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

Case 3:19-cv-10291-NSR Document 22-1 Filed 02/16/20 Page 95 of 399
Case 15-23007-rdd Doc 352-4 Filed 07/28/17 Entered 07/28/17 03:52:02 Exhibit Main
Appendix Volumes X and XI (Vendor Comfort Page 22 of 36 Vendor Comfor    Pg 96 of 458

**<u>Exhibit A</u>**

**Proposed Interim Order**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF LIEN CLAIMANTS, IMPORT CLAIMANTS, AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"):

(a) authorizing the Debtors to pay prepetition claims held by certain claimants, (b) confirming

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* filed contemporaneously herewith.  The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the administrative expense of Outstanding Orders, (c) granting related relief, and (d) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District Of Virginia*, dated July 10, 1984; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.  The Motion is granted on an interim basis as set forth herein.

2.  The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2017, at __:__ .m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time on _____, 2017, and served on the Notice Parties. In the event no objections to entry of a final

A-3965

order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.        The Debtors are authorized, but not directed, to pay up to $61.1 million in satisfaction of outstanding prepetition claims on account of Lien Charges, Import Charges, and 503(b)(9) Claims, and are authorized to pay all undisputed amounts related to Outstanding Orders placed in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date; *provided* that only those Debtors that incurred Obligations, or that placed the Outstanding Orders, as applicable, or a Debtor that in the ordinary course of business pays the Obligations or the Outstanding Orders, as applicable, of other Debtor entities, shall be authorized to make payments under this Interim Order; *provided further* that the Debtors shall not pay any amounts on account of Obligations or Outstanding Orders before such Obligation or Outstanding Order, as applicable, comes due.  The Debtors shall not pay any amounts on account of Obligations or Outstanding Orders that do not come due within 21 days after the Petition Date.

4.        Any party that accepts payment from the Debtors on account of an Obligation shall be deemed to have agreed to the terms and provisions of this Interim Order.

5.        Subject to paragraph 3 of this Interim Order, all undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

6.        The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the

A-3966

Debtors' designation of any particular check or electronic payment request as approved by this Interim Order, without any duty of further inquiry and without liability for following the Debtors' instructions.

7.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

8.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

9.      Nothing in this Interim Order shall alter or limit any authorization or relief contained in, or prevent Debtor Toys "R" Us (Canada) Ltd. ("Toys Canada") from taking any action authorized pursuant to, the Initial Order in respect of Toys Canada issued by the Ontario Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of Toys Canada pursuant to the Companies' Creditors Arrangement Act (Canada), and to the extent of any inconsistency between this Interim Order and the terms of the Initial Order or any other Order of the CCAA Court, the Order of the CCAA Court shall govern.

4

10. Notwithstanding anything to the contrary in this Interim Order, any payment made or action taken by any of the Debtors pursuant to the authority granted in this Interim Order must be in compliance with, and shall be subject to: (i) any orders approving the Debtors' use of cash collateral and/or any postpetition financing facilities (the "DIP Orders"), (ii) the documentation in respect of any such postpetition financing facilities and/or use of cash collateral, and (iii) the budgets governing any such postpetition financing and/or use of cash collateral.

11. To the extent there is any inconsistency between the terms of any of the DIP Orders and this Interim Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

12. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

13. The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is waived.

14. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

15. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

16. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

Case 18-35672-KLP Doc 752-4 Filed 02/24/17 Entered 02/24/17 16:13:02 Exhibit Main
Appendix Volumes X and XI (Vendor Comfort Motion and Vendor Comfor   Pg 102 of 458
Case 1:19-cv-02391-KPF   Document 22-1   Filed 02/18/20   Page 101 of 395

17.    This Court retains exclusive jurisdiction with respect to all matters arising from or
related to the implementation, interpretation, and enforcement of this Interim Order.

Dated: _____, 2017
Richmond, Virginia

_____
United States Bankruptcy Judge

6

WE ASK FOR THIS:

/s/ Michael A. Condyles

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:      (804) 644-1700
Facsimile:      (804) 783-6192

- and -

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Michael A. Condyles

Case 2:15-cv-00291-JRG-RSP Document 72-1 Filed 02/03/20 Page 103 of 390 PageID #: 3000

Case 17-33848 Document 752-4 Filed in TXSB on 02/28/20 Entered 02/28/20 16:37:02 Exhibit Main Appendix Volumes X and XI (Vendor Comfort Vol. 35 and 36) and Vendor Comfor    Pg 104 of 458

**EXHIBIT B**

**Proposed Final Order**

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY
### PREPETITION CLAIMS OF LIEN CLAIMANTS, IMPORT CLAIMANTS,
### AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE
### PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of a final order (this "Final Order"):

(a) authorizing the Debtors to pay prepetition claims held by certain claimants, (b) confirming

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* filed contemporaneously herewith.  The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the administrative expense priority of Outstanding Orders, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District Of Virginia*, dated July 10, 1984; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to pay up to $151.4 million in satisfaction of outstanding prepetition claims on account of Lien Charges, Import Charges, and 503(b)(9) Claims, and are authorized to pay all undisputed amounts related to Outstanding Orders placed in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date; *provided* that only those Debtors that incurred Obligations, or that placed the Outstanding Orders, as applicable, or a Debtor that in the ordinary course of

2

business pays the Obligations or the Outstanding Orders, as applicable, of other Debtor entities, shall be authorized to make payments under this Final Order.

3.      Any party that accepts payment from the Debtors on account of an Obligation shall be deemed to have agreed to the terms and provisions of this Final Order.

4.      Subject to paragraph 2 of this Final Order, all undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

5.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order, without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

3

7.      The Debtors are authorized to issue postpetition checks, or to effect postpetition

fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in

connection with the relief granted herein.

8.      Nothing in this Final Order shall alter or limit any authorization or relief

contained in, or prevent Debtor Toys "R" Us (Canada) Ltd. ("Toys Canada") from taking any

action authorized pursuant to, the Initial Order in respect of Toys Canada issued by the Ontario

Superior Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of

Toys Canada pursuant to the Companies' Creditors Arrangement Act (Canada), and to the extent

of any inconsistency between this Final Order and the terms of the Initial Order or any other

Order of the CCAA Court, the Order of the CCAA Court shall govern.

9.      Notwithstanding anything to the contrary in this Final Order, any payment made

or action taken by any of the Debtors pursuant to the authority granted in this Final Order must

be in compliance with, and shall be subject to: (i) any orders approving the Debtors' use of cash

collateral and/or any postpetition financing facilities (the "DIP Orders"), (ii) the documentation

in respect of any such postpetition financing facilities and/or use of cash collateral, and (iii) the

budgets governing any such postpetition financing and/or use of cash collateral.

10.     To the extent there is any inconsistency between the terms of any of the DIP

Orders and this Final Order, the terms of the DIP Order (or DIP Orders, as applicable) shall

control.

11.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum

of law in connection with the Motion is waived.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient

4

notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

13. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

14. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order.

15. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2017
Richmond, Virginia

_____
United States Bankruptcy Judge

WE ASK FOR THIS:

  /s/ *Michael A. Condyles*

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:       (804) 644-1700
Facsimile:        (804) 783-6192

- and -

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:        (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (*pro hac vice* admission pending)
Robert A. Britton (*pro hac vice* admission pending)
Emily E. Geier (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:        (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

### CERTIFICATION OF ENDORSEMENT
### UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

      Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been
endorsed by or served upon all necessary parties.

            /s/ Michael A. Condyles

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| _____ ) | |
| In re: ) | Chapter 11 |
| ) | |
| TERRAVIA HOLDINGS, INC., *et al.*, ) | Case No. 17-_____ (___) |
| ) | |
| Debtors.[1] ) | Joint Administration Requested |
| ) | |
| _____ ) | |

## MOTION OF THE DEBTORS FOR ENTRY OF AN
## ORDER (I) GRANTING ADMINISTRATIVE EXPENSE STATUS TO THE
## DEBTORS' UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM
## THE POST-PETITION DELIVERY OF GOODS ORDERED PREPETITION,
## (II) AUTHORIZING THE DEBTORS TO PAY THOSE OBLIGATIONS
## IN THE ORDINARY COURSE OF BUSINESS, (III) AUTHORIZING
## THE DEBTORS TO RETURN GOODS AND (IV) AUTHORIZING FINANCIAL
## INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

TerraVia Holdings, Inc. (formerly known as Solazyme, Inc.) ("**TerraVia**") and certain of

its subsidiaries that are debtors and debtors in possession (collectively, the "**Debtors**") in the

above-captioned chapter 11 cases (the "**Chapter 11 Cases**") hereby file this *Motion of the*

*Debtors for Entry of an Order (i) Granting Administrative Expense Status to the Debtors'*

*Undisputed Obligations to Vendors Arising From the Post-Petition Delivery of Goods Ordered*

*Prepetition, (ii) Authorizing the Debtors To Pay Those Obligations in the Ordinary Course of*

*Business, (iii) Authorizing the Debtors To Return Goods and (iv) Authorizing Financial*

*Institutions To Honor and Process Related Checks and Transfers* (this "**Motion**"). This Motion

is supported by (i) the *Declaration of Tyler W. Painter in Support of Debtors' Chapter 11*

*Proceedings and First Day Pleadings* (the "**Painter Declaration**") filed contemporaneously

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their
respective Employer Identification Numbers, are as follows: TerraVia Holdings, Inc. (7078), Solazyme Brazil LLC
(2839) and Solazyme Manufacturing 1, LLC (4172). The debtors' mailing address is 225 Gateway Boulevard,
South San Francisco, CA 94080.

herewith and (ii) the entire record of the Chapter 11 Cases.  In further support of this Motion, the

Debtors respectfully state as follows:

**Relief Requested**

1.       By this Motion, and pursuant to sections 105(a), 363(c), 503(b), 507(a)(2) and

546(h) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of

an order (the "**Proposed Order**") (a) granting the Vendors (as defined below) administrative

priority status under sections 503(b) and 507(a)(2) of the Bankruptcy Code (subject, in all cases,

to the priority of the Superpriority DIP Claims and DIP Liens, as defined in the DIP Motion)[2] for

undisputed obligations arising from the Debtors' outstanding prepetition purchase orders and

other longer term contracts (collectively, the "**Prepetition Orders**") for certain Goods (as

defined below) received and accepted by the Debtors on or after the Petition Date,

(b) authorizing, but not directing, the Debtors, in their sole discretion, to pay such obligations in

the ordinary course of business under section 363(c) of the Bankruptcy Code, (c) authorizing the

Debtors, in their sole discretion, under section 546(h) of the Bankruptcy Code, to return Goods

purchased from Vendors by the Debtors prior to the Petition Date, for credit against such

Vendors' prepetition claims and (d) authorizing and directing all applicable banks and other

financial institutions to receive, process, honor and pay any and all checks drawn on the Debtors'

general disbursement account and other transfers to the extent those checks and transfers relate to

any of the foregoing.

---

[2] "**DIP Motion**" means the *Motion of Debtors for Entry of Interim and Final Orders (i) Authorizing the Debtors To Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 362, 364(c), 364(d)(1), 364(e), 503 and 507, (ii) Scheduling a Final Hearing and (iii) Granting Related Relief,* filed contemporaneously herewith.

### Jurisdiction and Venue

2.　　The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

3.　　This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.　　Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

5.　　On August 2, 2017 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.　　No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed in the Chapter 11 Cases.

7.　　Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the Painter Declaration, which is incorporated herein by reference.

**The Vendors and Goods**

8.      In connection with the normal operation of their businesses, the Debtors rely on numerous vendors and suppliers (collectively, the "**Vendors**") to provide the Debtors with parts, inventory, supplies and equipment, including raw materials and packaging materials (including packaging design, design templates and dyes and other materials required to produce packaging) for the Debtors' Thrive® Culinary Algae Oil product, lab consumables and equipment replacement parts (collectively, the "**Goods**") for use in the regular operation of the Debtors' food, nutrition and specialty ingredients and products businesses.[3]  These Goods are generally shipped on an as-needed basis directly to the Debtors' operations, all as directed by the Debtors.

9.      As a consequence of the commencement of the Chapter 11 Cases, the Debtors believe that many of the Vendors may be concerned that they will not be paid for the delivery or shipment of Goods after the Petition Date if such delivery or shipment was based on a Prepetition Order, or that their claims arising from the Prepetition Orders will be treated as general unsecured claims.  Accordingly, Vendors may refuse to provide Goods to the Debtors (or may recall shipments thereof) unless the Debtors issue substitute purchase orders post-petition or obtain an order of the Court (a) providing that all undisputed obligations of the Debtors arising from the post-petition delivery of Goods subject to Prepetition Orders are afforded administrative expense priority under section 503(b) of the Bankruptcy Code (subject, in all cases, to the priority of the Superpriority DIP Claims and the DIP Liens) and (b) authorizing the Debtors, in their sole discretion, to satisfy those obligations in the ordinary course of their businesses.

---

[3] In many instances, the Debtors receive invoices from Vendors covering Goods and related services, such as when a Vendor both sells a Good and installs it at one of the Debtors' locations.  To the extent that the Debtors in good faith are unable to ascertain the portion of such invoices that is on account of Goods and the portion that is on account of services, the Debtors hereby request authority to pay the full amount of such invoices.

-4-

10.     While it is difficult to estimate the total amount due and owing to Vendors under the Prepetition Orders for Goods for which delivery will not occur until after the Petition Date, the Debtors submit that the total amount to be paid to the Vendors in connection with the Prepetition Orders, if the requested relief is granted, is *de minimis* compared with the importance and necessity of the Goods.

## **Basis for Relief**

### Goods Ordered Prepetition and Delivered to the Debtors Post-Petition Are Entitled to Administrative Expense Status Under Section 503(b)(1) of the Bankruptcy Code

11.     Certain vendor claims for prepetition Goods will likely be administrative in nature.  Under section 503(b)(1) of the Bankruptcy Code, claims are accorded administrative expense priority where such claims are for the actual, necessary costs and expenses of preserving the bankruptcy estate.  *See* 11 U.S.C. § 503(b)(1).  In order to be awarded an administrative expense claim, a claimant must demonstrate that it conducted a transaction with a debtor in possession that, in turn, provided a benefit to such debtor's estate.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999).

12.     The Debtors submit that, pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the post-petition delivery of desired and necessary Goods, including Goods ordered prepetition, are in fact administrative expense priority claims in virtually all instances.  Indeed, even if the Goods had been received in the ordinary course of the Debtors' businesses 20 days *before* the Petition Date, the related claims would receive administrative expense priority under section 503(b)(9) of the Bankruptcy Code.  *See In re GWLS Holdings, Inc.*, Case No. 08-12430 (PJW) (Bankr. D. Del. Oct. 22, 2008); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d Cir. 1993) (holding that an obligation from post-petition performance related to a prepetition transaction is entitled to administrative expense

priority). Further, where transactions involve both the delivery of goods and associated services, courts have granted priority under section 503(b)(9) of the Bankruptcy Code to the portion of the claim relating to the sale of goods. *See In re NE Opco, Inc.*, 501 B.R. 233, 257 (Bankr. D. Del. 2013). Thus, the granting of the relief requested herein will likely not provide the Vendors with any greater priority than they would otherwise have if the relief requested herein is not granted.

<u>Payment of the Prepetition Orders Is Within the Ordinary Course of Business</u>

13.     The payment of the obligations arising in connection with the Prepetition Orders is noncontroversial and entirely consistent with the applicable provisions of the Bankruptcy Code. Section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to "enter into transactions . . . in the ordinary course of business without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

14.     One purpose of section 363 of the Bankruptcy Code is to provide a debtor with the flexibility to engage in the ordinary course transactions required to operate its business without undue supervision by its creditors or the court. *See, e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted); *In re Vision Metals, Inc.*, 325 B.R. 138, 145 (Bankr. D. Del. 2005) (same). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue "routine transactions" necessitated by a debtor's business practices. *See, e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions) (citations omitted); *In re Vision*

*Metals*, 325 B.R. at 142 ("[W]hen a chapter 11 debtor in possession continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").

15.    The Bankruptcy Code does not define "ordinary course of business." In determining whether a transaction qualifies as "ordinary course," the Third Circuit has adopted the "horizontal" dimension test (*i.e.*, whether "from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry") and "vertical" dimension test (*i.e.*, whether the transaction "is consistent with the reasonable expectations of hypothetical creditors"). *In re Roth Am., Inc.*, 975 F.2d 949, 953 (3d Cir. 1992). "The touchstone of 'ordinariness' is . . . the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *Id*. (citing *In re James A. Phillips, Inc.* 29 B.R. 391, 394 (S.D.N.Y. 1983)); *see also In re Nellson Nutraceutical, Inc*., 369 B.R. 787, 797 (Bankr. D. Del. 2007) ("In other words, the vertical analysis looks at the 'debtor's pre-petition business practices and conduct.'"); *Sportsman's Warehouse, Inc. v. McGillis/Eckman Invs.-Billings, LLC (In re Sportsman's Warehouse, Inc.)*, Case No. 09-10990 (CSS), 2013 Bankr. LEXIS 497, at \*30 (Bankr. D. Del. Feb. 7, 2013) ("In determining whether a transaction is in the ordinary course of business, the Third Circuit has adopted the two-part horizontal and vertical dimension test."); *In re Blitz U.S.A., Inc.*, 475 B.R. 209, 214 (Bankr. D. Del. 2012) (same).

16.    The Debtors submit that the relief requested herein will merely confirm the treatment of such obligations under the Bankruptcy Code and assure the Vendors that they will be paid for Goods received and accepted by the Debtors post-petition in the ordinary course of business. The relief will also help ensure a continuous supply of materials that add value to the

Debtors' operations. Absent the relief requested in this Motion, however, the Debtors would be required to expend substantial time and resources convincing many Vendors of the Debtors' authority to make certain payments, reissuing Prepetition Orders or even obtaining further relief from the Court to provide the Vendors with the assurance of such administrative priority, all of which would disrupt the Debtors' businesses. Without the Goods, the Debtors' businesses would be harmed and their opportunity to preserve and enhance the value of their assets would be jeopardized. The authorization sought in this Motion will not prejudice the Debtors' ability to contest the validity of any invoices, and it will not extend to any amounts that are disputed by the Debtors or that are in respect of Goods that are not received and accepted by the Debtors subsequent to the Petition Date.

17. Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings"); *In re Nixon*, 404 F. App'x 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under § 105(a) is broad"); *In re Nortel Networks, Inc.*, 532 B.R. 494, 554 (Bankr. D. Del. 2015) ("The Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization proceedings, and to craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.") (citations omitted).

18-23538-shl    Doc 7352-4    Filed 02/28/20    Entered 02/28/20 16:53:24    Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 119 of 458
Case 9:12-cv-07402-CS    Document 2    Filed 04/18/20    Page 118 of 399

18.    The Court's power to utilize the "doctrine of necessity" in the Chapter 11 Cases is
derived from the Court's inherent equity powers and its statutory authority to "issue any order,
process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11
U.S.C. § 105(a).  The United States Supreme Court first articulated the doctrine of necessity
more than a century ago, in *Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286 (1882), in
affirming the authorization by the lower court of the use of receivership funds to pay pre-
receivership debts owed to employees, vendors and suppliers, among others, when such
payments were necessary to preserve the receivership property and the integrity of the business
in receivership.  *See id.* at 309.  The modern application of the doctrine of necessity is largely
unchanged from the Supreme Court's reasoning in *Miltenberger. See In re Lehigh & New Eng.
Ry. Co.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity
of payment' rule, a real and immediate threat must exist that failure to pay will place the
continued operation of the [debtor] in serious jeopardy."); *Friedman's Inc. v. Roth Staffing Cos.,
L.P. (In re Friedman's Inc.)*, Case No. 09-10161 (CSS), 2011 Bankr. LEXIS 4500, at *7-8
(Bankr. D. Del. Nov. 30, 2011) ("The 'doctrine of necessity' stands for the proposition that a
bankruptcy court may allow payment outside of a plan of reorganization on account of a pre-
petition obligation where such payment is critical to the reorganization process.") (citing *In re
Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1562202, at *20 (Bankr. S.D.N.Y. 2003)); *In re
Just For Feet, Inc.*, 242 B.R. 821, 824-25 (D.  Del. 1999).

19.    The doctrine of necessity "recognizes the existence of the judicial power to
authorize a debtor in a reorganization case to pay prepetition claims where such payment is
essential to the continued operation of the debtor."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174,
176 (Bankr. S.D.N.Y. 1989); *see also In re Just For Feet, Inc.*, 242 B.R. at 826 (stating that

-9-

18-23538-shl Doc 735-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 120 of 458
Case 9:Case 1:21-cv-11558-CS Document 4 Filed 03/02/21 Page Page 120 of 459

where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of
necessity should be invoked to permit such payment); *In re Columbia Gas Sys., Inc.*, 171 B.R.
189, 191-92 (Bankr. D. Del. 1994) (finding that the debtor is entitled to pay certain prepetition
creditors upon showing that the payment is "essential to the continued operation of the
business"); *In re Sharon Steel Corp.*, 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993) (noting that
courts grant debtors the authority to pay certain prepetition claims "where the payment is
necessary to permit the effectuation of the rehabilitative purposes of the Bankruptcy Code").

20.     The doctrine of necessity is an accepted component of modern bankruptcy
jurisprudence. *See In re Ionosphere Clubs, Inc.*, 98 B.R. at 175 (holding that the "ability of a
Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to
facilitate the rehabilitation of the debtor is not a novel concept"); *In re Just For Feet, Inc.*, 242
B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such
suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's
key sales season); *Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l v. Motor
Coach Indus. Int'l (In re Motor Coach Indus. Int'l)*, Case No. 09-078-SLR, 2009 U.S. Dist.
LEXIS 10024, at *7 n.5 (D. Del. Feb. 10, 2009); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189,
191-92 (Bankr. D. Del. 1994).

21.     Federal courts have consistently permitted the post-petition payment of
prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for
the benefit of all stakeholders. *See, e.g.*, *Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286
(1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage
of [crucial] business relations"); *Van Schaick v. McCarthy*, 116 F.2d 987, 993 (10th Cir. 1941);
*In re Lehigh & N.E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (finding that a payment of

Case 3:Case 17-2163SSGS Document 713 Filed 06/02/17 21 Page Page 221 of 382

prepetition debt made to prevent a creditor from withholding critical services or materials is in the interest of all parties); *In re Just For Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) (holding that courts are authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's reorganization (citing *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972))).

22.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See*, *e.g.*, *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-192 (Bankr. D. Del. 1994) (noting that debtors "may pay pre-petition claims that are essential to continued operation of business"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *Gonzales v. Sun Life Ins. Co. (In re Furr's Supermarkets, Inc.)*, 485 B.R. 672, 708 (Bankr. D.N.M. 2012) (noting that payment of prepetition claims may be authorized where payment is essential to "continued operation" of debtors); *In re Just For Feet, Inc.*, 242 B.R. at 824 ("While the doctrine [of necessity] was not codified in the Bankruptcy Code, courts have used their equitable power under Section 105(a) of the Code to authorize the payment of prepetition claims . . . ."); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (explaining that the doctrine "permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-organization claims shall have been paid").  The court in *In re StructureLite Plastics Corp.*, indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such

Case 3:Case 17-23538-SCS Document 4 Filed 04/02/18 Page Page 221 of 332

payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" *In re StructureLite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988).  The court stated that a "*per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, the Court is empowered to grant the relief requested herein.

23.     Finally, courts in this jurisdiction have authorized the relief requested herein in other chapter 11 cases.  *See, e.g.*, *In re Eastern Outfitters, LLC*, Case No. 17-10243 (LSS) (Bankr. D. Del. Feb. 8, 2017); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (LSS) (Bankr. D. Del. June 7, 2016); *In re Aspect Software Parent, Inc.*, Case No. 16-10597 (MFW) (Bankr. D. Del. Apr. 1, 2016); *In re Allied Nevada Gold Corp.*, Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re onCure Holdings, Inc.*, Case No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013); *In re B456 Sys., Inc.*, Case No. 12-12859 (KJC) (Bankr. D. Del. Nov. 8, 2012); *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Oct. 12, 2012).

24.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate and in the best interests of the Debtors' estates and creditors and, therefore, should be granted.

### The Debtors Are Authorized To Return Goods Under Section 546(h) of the Bankruptcy Code

25.     The Debtors also occasionally receive various Goods that may be defective, not up to standards or otherwise not suitable or necessary for their operations.  In some cases, the Debtors return such Goods to Vendors.  Notwithstanding the filing of the Chapter 11 Cases and the distinction between prepetition and post-petition claims, the Debtors request that they be authorized, in their sole discretion, to return Goods that were delivered before the Petition Date

Case 1:22-cv-02858-CS Document 4 filed 08/02/18 Page Page 22 of 595

based on Prepetition Orders for credit against such Prepetition Orders if the Debtors determine that such Goods are of little or no value to the Debtors' estates (provided that such Goods shall, in all cases, remain DIP Collateral (as defined in the DIP Motion) unless and until so returned to such Vendors).

26. Section 546(h) of the Bankruptcy Code permits a debtor, with the consent of a creditor and subject to the prior rights of holders of security interests in such goods or the proceeds of such goods, to return goods shipped to the debtor by the creditor before the commencement of the case for credit against the creditor's prepetition claim; *provided*, that the Court determines (on a motion made no later than 120 days after the order for relief and after notice and a hearing) that such return is in the best interests of the estate.

27. The Debtors submit that an order approving returns to Vendors for credit against their prepetition claims, subject to the prior rights of holders of security interests in such Goods or the proceeds of such Goods, to the extent of such interests, is in the best interests of the Debtors' estates. Such relief will enable the Debtors to (a) obtain proper credit for otherwise unusable Goods in a cost-effective manner and without undue financial risk and (b) effectively manage inventory, enhancing the Debtors' financial performance and the value of the assets of their estates.

28. For the avoidance of doubt, through this Motion, the Debtors seek only the relief that is contemplated by section 546(h) of the Bankruptcy Code. Accordingly, the Debtors should be permitted to return Goods, in their discretion, as permitted by the Bankruptcy Code and as set forth herein.

Case 3:Case 17-33695-CJ Document 4 Filed 08/02/17 Page of 23 of 399

**Applicable Banks and Other Financial Institutions Should Be
Authorized To Honor and Process Related Checks and Transfers**

29.     As a result of the commencement of the Chapter 11 Cases, and in the absence of

an order of the Court providing otherwise, the Debtors' checks, wire transfers and direct deposit

transfers for payment of Goods may be dishonored or rejected by banks and other financial

institutions.  The Debtors represent that each of these checks or transfers is or will be drawn on

the Debtors' operating accounts and can be readily identified as relating directly to payment of

the Goods.

30.     Accordingly, the Debtors also request that all applicable banks and other financial

institutions be authorized and directed to (a) receive, process, honor and pay all checks presented

for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims

that the Debtors request authority to pay in this Motion, regardless of whether the checks were

presented or fund transfer requests were submitted before, on or after the Petition Date and

(b) rely on the Debtors' designation of any particular check as approved by order of the Court.

**Necessity for Immediate Relief**

31.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary

to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the

petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an

obligation regarding property of the estate, including a motion to pay all or part of a claim that

arose before the filing of the petition . . . ."  Fed. R. Bankr. P. 6003.  If the Debtors are not

authorized to pay their Vendors without interruption in the ordinary course of business, the

Debtors could suffer immediate and irreparable harm by damaging the Debtors' ability to sustain

their day-to-day operations and meet their various obligations, possibly resulting in loss of

business.  Accordingly, the Debtors respectfully submit that, because of the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

### Debtors' Reservation of Rights

32.     Nothing contained herein is intended or should be construed as an or deemed to constitute an agreement or admission as to the validity of any claim against the Debtors on any ground, a waiver or impairment of the Debtors' rights to dispute any claim on any grounds or an assumption or rejection of any agreement, contract or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any claims related to Prepetition Orders, Vendors or Goods.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended, and should not be construed as, an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Waiver of Stay Under Bankruptcy Rule 6004(h)

33.     The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

Case 17-12058-CSS Document 44 Filed 09/28/17 Page Page 125 of 399

## **Notice**

34.     Notice of this Motion will be provided to (a) the Office of the United States

Trustee for the District of Delaware, (b) each of the Debtors' 20 largest unsecured creditors on a

consolidated basis, (c) Brown Rudnick LLP, as counsel to (i) that certain ad hoc consortium of

(x) holders of 5.00% convertible senior subordinated notes due 2019 issued by TerraVia pursuant

to that certain Indenture, dated as of April 1, 2014, between TerraVia and GLAS Trust Company

LLC ("**GLAS**"), as successor trustee to Wells Fargo Bank, National Association

("**Wells Fargo**") and (y) holders of 6.00% convertible senior subordinated notes due 2018 issued

by TerraVia pursuant to that certain Indenture, dated as of January 24, 2013, between TerraVia

and Wilmington Trust, N.A. ("**Wilmington**"), as successor trustee to Wells Fargo, (ii) the

lenders under the Debtors' post-petition debtor-in-possession financing facility (the

"**DIP Facility**") and (iii) Wilmington Savings Fund Society, FSB, the administrative agent under

the DIP Facility (the "**DIP Agent**"), (d) Seward & Kissel LLP, as counsel to GLAS, (e) Katten

Muchin Rosenman LLP, as counsel to Wilmington, (f) Winston & Strawn LLP, as counsel to the

DIP Agent, (g) Baker & McKenzie LLP and Whiteford Taylor Preston, LLP, as counsel to

Corbion N.V., the proposed stalking horse bidder to purchase certain assets of the Debtors, (h)

the Securities and Exchange Commission, (i) the Internal Revenue Service and (j) the United

States Attorney's Office for the District of Delaware (collectively, the "**Notice Parties**").

35.     Notice of this Motion and any order entered hereon will be served on all parties

required by Local Rule 9013-1(m).  A copy of this Motion and any order approving it will also

be made available on the Debtors' case information website located at

*http://www.kccllc.net/TerraVia*.  Based on the urgency of the circumstances surrounding this

Motion and the nature of the relief requested herein, the Debtors submit that no other or further

notice is required.

-16-

A-3993

**No Prior Request**

36.     The Debtors have not previously sought the relief requested herein from the Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached as Exhibit A, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: August 2, 2017
Wilmington, Delaware

Respectfully submitted,

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Mark D. Collins*
Mark D. Collins (No. 2981)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel.: (302) 651-7700
Fax: (302) 651-7701
collins@rlf.com
steele@rlf.com

-and-

DAVIS POLK & WARDWELL LLP

Damian S. Schaible (*pro hac vice* pending)
Steven Z. Szanzer (*pro hac vice* pending)
Adam L. Shpeen (*pro hac vice* pending)
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Fax: (212) 701-5800
damian.schaible@davispolk.com
steven.szanzer@davispolk.com
adam.shpeen@davispolk.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

**Exhibit A**

**Proposed Order**

Case in Case 17-12033-CSS Document 4 Filed 08/02/17 Page 22 of 393

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

_____  )
                                                 )
In re:                            )       Chapter 11
                                                 )
TERRAVIA HOLDINGS, INC., *et al.*,    )       Case No. 17-_____ (___)
                                                 )
                 Debtors.[1]        )       Jointly Administered
                                                 )
_____  )

## ORDER (I) GRANTING ADMINISTRATIVE EXPENSE STATUS TO THE DEBTORS' UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM THE POST-PETITION DELIVERY OF GOODS ORDERED PREPETITION, (II) AUTHORIZING THE DEBTORS TO PAY THOSE OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS, (III) AUTHORIZING THE DEBTORS TO RETURN GOODS AND (IV) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

Upon the motion (the "**Motion**")[2] of TerraVia Holdings, Inc. (formerly known as Solazyme, Inc.) ("**TerraVia**") and certain of its subsidiaries that are debtors and debtors in possession in the Chapter 11 Cases (collectively the "**Debtors**") seeking entry of an order, pursuant to sections 363, 503, 507, and 546 of the Bankruptcy Code, (i) granting administrative priority status for undisputed obligations of Vendors for Goods ordered prepetition but received and accepted by the Debtors on or after the Petition Date and (ii) authorizing, but not directing, the Debtors, in their sole discretion, to pay such obligations in the ordinary course or to return such goods for credit against prepetition claims, as more fully described in the Motion; and this Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C.

_____

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows:  TerraVia Holdings, Inc. (7078), Solazyme Brazil LLC (2839) and Solazyme Manufacturing 1, LLC (4172).  The debtors' mailing address is 225 Gateway Boulevard, South San Francisco, CA 94080

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

18-23538-shl Doc 725 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 131 of 458
Case 1:22-cv-02886-CS Document 11 filed 04/22/22 Page 220 of 359

§ 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and the Court having venue pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given; and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Painter Declaration; and the Court having held a hearing on the Motion (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates and all other parties in interest; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted as set forth herein.

2.      The Debtors' Vendors shall be granted administrative expense claims with priority status, pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code (subject, in all cases, to the priority of the Superpriority DIP Claims and DIP Liens), with respect to those obligations of the Debtors for Goods delivered to and accepted by the Debtors on or after the Petition Date under Prepetition Orders that the Debtors determine, in their sole discretion, are valid claims against the Debtors' estates.

3. The Debtors are authorized, but not directed, in their sole discretion, under section 546(h) of the Bankruptcy Code, subject to the limitations imposed by any orders of this Court and the prior rights of holders of security interests in such Goods or the proceeds of such Goods (to the extent of such interests) to return to Vendors those Goods that were delivered before the Petition Date for an offset of the purchase price of such Goods against such Vendors' prepetition claims; provided that such Goods shall, in all cases, remain DIP Collateral unless and until so returned to such Vendors.

4. The Debtors are authorized, but not directed, in their sole discretion, to pay all undisputed obligations arising from the post-petition delivery or shipment by the Vendors of Goods, including shipments of parts, inventory, supplies and equipment, subject to the Prepetition Orders, consistent with their customary practices in the ordinary course of their businesses. [3]

5. All applicable banks and other financial institutions are hereby authorized and directed to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors requested authority to pay in the Motion, regardless of whether the checks were presented or fund transfer requests were submitted on, before or after the Petition Date. Such banks and financial institutions are authorized and directed to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

---

[3] To the extent the Debtors in good faith are unable to ascertain what portion of obligations owed to Vendors are on account of Goods and what portion are on account of services, the Debtors are authorized to pay the totality of such obligations.

6.      The Debtors are authorized, but not required, in their sole discretion, to issue new post-petition checks, or effect new fund transfers, for the Goods to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse the Vendors or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

7.      Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be construed as or deemed to constitute an assumption or rejection of any agreement, contract or lease under section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

8.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

9.      Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any grounds, (b) a waiver or impairment of the Debtors' rights to dispute any claim on any grounds, (c) a promise by the Debtors to pay any claim or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

10.     Notwithstanding anything to the contrary in this Order, in the event of any inconsistency between the terms of this Order and the terms of any order of this Court approving the debtor in possession financing facility and use of cash collateral (the "**DIP Order**"), the terms of the DIP Order shall govern.

11.     For the reasons set forth on the Motion, Bankruptcy Rule 6003 has been satisfied.

12.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

13.     The Debtors are authorized to take all such actions as are necessary and appropriate to implement the terms of this Order.

14.     Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with and satisfaction of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

15.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated:   _____, 2017
        Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

A-4001

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re<br><br>VESTIS RETAIL GROUP, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 16-10971 (___)<br><br>(Joint Administration Requested) |

### DEBTORS' MOTION FOR ORDER CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY STATUS OF DEBTORS' UNDISPUTED OBLIGATIONS FOR POSTPETITION DELIVERY OF GOODS ORDERED PREPETITION

Vestis Retail Group, LLC and its chapter 11 affiliates, the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby move the Court (the "Motion") for entry of an order, in substantially similar form as attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 363(c) and 503(b)(1)(A) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), confirming administrative expense priority status and authorizing payment of the Debtors' undisputed obligations for the postpetition delivery of goods that were ordered prepetition and that the Debtors have not canceled, declined, returned, or contested.  In support of the Motion, the Debtors rely on the *Declaration of Mark T.*

---

[1]   The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Vestis Retail Group, LLC (1295); Vestis Retail Financing, LLC (9362); EMS Operating Company, LLC (2061); Vestis IP Holdings, LLC (2459); Bob's Stores, LLC (4675); EMS Acquisition LLC (0322); Sport Chalet, LLC (0071); Sport Chalet Value Services, LLC (7320); and Sport Chalet Team Sales, LLC (8015).  The Debtors' executive headquarters are located at 160 Corporate Court, Meriden, CT 06450.

01:18582934.1

A-4002

*Walsh in Support of First Day Motions* (the "First Day Declaration")[2] concurrently filed herewith. In further support of the Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the District Court for the District of Delaware dated as of February 19, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.    The statutory and legal predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(c), and 503(b)(1)(A), Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1.

## II. BACKGROUND

4.    On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.    The Debtors are authorized to continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed in these Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

01:18582934.1

6.　　The Debtors are comprised of three regional multi-channel retailers engaged in the apparel, footwear, and sporting goods lines of business: (a) Bob's Stores, (b) Eastern Mountain Sports ("EMS"), and (c) Sport Chalet.  Prior to the Petition Date, each of the three retailers was comprised of two primary units: (a) a retail store business and (b) an e-commerce business.  Collectively, the Debtors currently operate 144 stores and 2 distributions centers across 15 states.  Bob's Stores and EMS primarily operate stores located in the Northeastern states, while Sport Chalet's stores are located in the Western states.  Bob's Stores and Sport Chalet have roots dating back to the 1950's, while EMS was founded in the 1960's.

7.　　Vestis Group directly and indirectly owns the entities that operate Bob's Stores, EMS, and Sport Chalet.  The chains were acquired in three separate acquisitions: Bob's Stores in 2008, EMS in 2012, and most recently, Sport Chalet in 2014.  The Debtors currently employ over 4,000 full and part-time employees and generate over $660 million in annual consolidated revenues.  The Debtors transact business with a wide array of vendors and suppliers both nationally and internationally.

8.　　As discussed at length in the First Day Declaration, prior to the Petition Date, the Debtors implemented a series of internal restructuring and synergy initiatives, designed to integrate the three chains into Vestis Group and streamline and improve operations, but various challenges remained, including from the prior ownership of EMS and Sport Chalet.  The Debtors ultimately were unable to preserve Sport Chalet as a going concern and, accordingly, shortly before the Petition Date, the Debtors commenced going out of business sales (the "Store Closing Sales") of the Sport Chalet stores (along with a limited number of EMS stores and one Bob's Stores location) (collectively, the "Closing Stores").

01:18582934.1

9.      The purpose of these Cases is to facilitate the continuation, and completion, of the
operating initiatives the Debtors have undertaken and that are underway at Bob's Stores and
EMS, while allowing the Debtors to address external factors that have negatively contributed to
the Debtors' recent financial performance.  The Cases also will enable the Debtors to continue
the Store Closing Sales on an expedited and orderly basis.

10.     The Debtors embark upon these Cases with optimism for a swift and certain
resolution of the issues they now face, despite the challenging retail environment.  The Bob's
Stores and EMS brands enjoy competitive market positions.  The Debtors are confident that this
restructuring effort will allow these core brands to emerge as part of a stable and strong
enterprise, positioning the Debtors to take advantage of the many opportunities in the markets in
which they will continue to operate.  The chapter 11 process also will allow the Debtors to
maximize value from their non-core businesses, primarily through the Store Closing Sales and
the sale of the remaining related assets.

11.     Toward that end, the Debtors have entered into that certain *Ratification and
Amendment Agreement* with Wells Fargo Capital Finance, LLC, as administrative agent (the
"DIP Agent"), and the lenders party thereto, pursuant to which, subject to Court approval, the
Debtors will receive a senior secured debtor-in-possession revolver (the "DIP Facility") that
should provide them with sufficient runway to navigate through the chapter 11 process.  The
relief sought in this Motion is intended to preserve value and facilitate the Debtors' operations
through this process.

12.     More detailed factual background regarding the Debtors and the commencement
of these Cases is set forth in the First Day Declaration.

01:18582934.1

A-4005

### III.  RELIEF REQUESTED

13.    As of the Petition Date, the Debtors had outstanding prepetition purchase orders (collectively, the "Outstanding Orders") with several suppliers (collectively, the "Suppliers") for ordinary course goods that had not yet been delivered as of the Petition Date and which the Debtors believe are integral to the Debtors' ongoing business operations.  Accordingly, the Debtors seek entry of an order confirming administrative expense priority status as against the Debtor liable for any such Outstanding Order, and authorizing payment of the Debtors' undisputed obligations for the postpetition delivery of goods that were ordered prepetition and that the Debtors have not canceled, declined, returned, or contested.

14.    The Debtors further request an order confirming that the Debtors shall have the right to (a) cancel a purchase order (including any Outstanding Order), (b) decline the acceptance of goods, (c) return any defective, nonconforming, or unacceptable good, and (d) contest the amount of any invoice or claims, or liens related thereto, on any grounds.

15.    In addition, the Debtors request that the Court authorize and direct the Debtors' banks and financial institutions (the "Banks") to receive, process, honor, and pay all checks and fund transfers on account of obligations owed to the Suppliers on account of the Outstanding Orders, and authorize the Banks to rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid in respect of such obligations, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

### IV.  BASIS FOR RELIEF

16.    As a result of the commencement of these Cases, the Debtors believe that the Suppliers may perceive a risk that they will be treated as prepetition general unsecured creditors with respect to any shipments made after the Petition Date pursuant to the Outstanding Orders. As a result, the Suppliers may refuse to deliver such goods to the Debtors unless the Debtors

01:18582934.1

A-4006

assure payment.  The Debtors' business depends on the ability to quickly obtain necessary

merchandise from their Suppliers in order to stock their stores and fulfill online orders.  The

inability to maintain sufficient inventory due to the Suppliers' refusal to deliver goods could

have a significant detrimental impact on the Debtors' business.

17.     Under these circumstances, the Debtors believe that the requested relief is

necessary to permit the Debtors to obtain the timely delivery of goods they need from the

Suppliers pursuant to the Outstanding Orders.  Further, the Debtors submit that the relief sought

herein is noncontroversial and entirely consistent with the applicable provisions of the

Bankruptcy Code.  Obligations arising out of the postpetition delivery of necessary goods to the

Debtors generally are expenses incurred for the benefit of the Debtors' estates and assist in

preserving the value of the Debtors' business.  As such, these costs generally are accorded

administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

The requested relief merely confirms the treatment of such postpetition obligations under the

Bankruptcy Code, providing necessary assurance of payment to the Suppliers and ensuring the

Debtors' ongoing and uninterrupted receipt of necessary merchandise.

18.     In addition, section 105 of the Bankruptcy Code gives the Court broad discretion

to issue orders necessary to "carry out the provisions of this title."  11 U.S.C. § 105(a).  For the

reasons described above, the Debtors submit that the relief sought herein will facilitate the

Debtors' ability to successfully reorganize and, therefore, is appropriate under section 105 of the

Bankruptcy Code.

19.     Similar relief to that requested herein has been granted in other chapter 11 cases

in this jurisdiction.  *See, e.g.*, *In re The Wet Seal, Inc.*, Case No. 15-10081 (CSS) (Bankr. D. Del.

01:18582934.1

Jan. 20, 2015) (Docket No. 100); *In re Natrol, Inc.*, Case No. 14-11446 (BLS) (Bankr D. Del.
July 16, 2014) (Docket No. 264).

20.     The Debtors also request that the Court authorize all applicable financial
institutions to receive, process, honor, and pay any and all checks or wire transfer requests in
respect of the Outstanding Orders, provided that sufficient funds are available in the applicable
bank accounts to make such payments.  The Debtors further request that all of the Banks be
authorized to rely on the Debtors' designation of any particular check or electronic payment
request as approved pursuant to this Motion.

## V.  IMMEDIATE RELIEF IS NECESSARY

21.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be
granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P.
6003.  The failure of any Supplier to deliver necessary Outstanding Orders to the Debtors would
have immediate and detrimental consequences to the Debtors' business and would jeopardize the
Debtors' efforts to preserve and maximize the value of their estates, to the detriment and
prejudice of all of the Debtors' stakeholders.  As the Debtors operate in a highly competitive
industry, the Debtors cannot afford any material disruptions of their business operations or
present anything less than a "business as usual" appearance to the public.  Moreover, it is the
Debtors' business judgment that continuation of their positive relationship with the Suppliers is
critical to avoid any unexpected or inopportune interruption to the Debtors' operations and
increases the likelihood of successfully prosecuting these Cases.  Any failure to grant the relief
requested herein would cause the Debtors' estates immediate and irreparable harm by detracting
from, and potentially derailing, the Debtors' chapter 11 efforts.

01:18582934.1

A-4008

22.     For this reason and those set forth above, the Debtors respectfully submit that

Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid

immediate and irreparable harm to the Debtors and their estates.

### VI.  WAIVER OF ANY APPLICABLE STAY

23.     The Debtors also request that the Court waive the stay imposed by Bankruptcy

Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other

than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the

court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the

Debtors seek in this Motion is necessary for the Debtors to operate their business without

interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request

that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent

nature of the relief sought herein justifies immediate relief.

### VII.  RESERVATION OF RIGHTS

24.     Except as otherwise provided herein, nothing in the Proposed Order or this

Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant

to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the

Debtors and their estates, (ii) shall impair, prejudice, waive, or otherwise affect the rights of the

Debtors and their estates with respect to the validity, priority, or amount of any claim against the

Debtors and their estates, or (iii) shall be construed as a promise to pay a claim.

### VIII.  NOTICE

25.     The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) holders

of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the

DIP Agent; (iv) the Pre-Petition Term Agent; (v) the Third Lien Agent; (vi) the Banks; and (vii)

all parties who, as of the filing of this Motion, have filed a notice of appearance and request for

01:18582934.1

Case 16-10296-KBO Document 2 Filed 04/28/16 Page 142 of 199

service of papers pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[*Remainder of Page Intentionally Left Blank*]

01:18582934.1

# IX. CONCLUSION

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the

Debtors respectfully request that this Court enter an order, substantially in the form attached

hereto, granting the relief requested in the Motion and such other and further relief as is just and

proper.

Dated:  April 18, 2016
        Wilmington, Delaware

/s/ Robert F. Poppiti, Jr.

Robert S. Brady, Esq. (DE Bar No. 2847)
Robert F. Poppiti, Jr., Esq. (DE Bar No. 5052)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253
Email: rbrady@ycst.com
        rpoppiti@ycst.com

and

Michael L. Tuchin, Esq.
Lee R. Bogdanoff, Esq.
Martin N. Kostov, Esq.
Kathryn T. Zwicker, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN  LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4031
Fax:    (310) 407-9090
Email: mtuchin@ktbslaw.com
        lbogdanoff@ktbslaw.com
        mkostov@ktbslaw.com
        kzwicker@ktbslaw.com

*Proposed Counsel to the Debtors*

01:18582934.1

# Exhibit A

**Proposed Order**

01:18582934.1

Case 16-10971-KJC Doc 7 Filed 04/18/16 Page 114 of 359

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

In re

VESTIS RETAIL GROUP, LLC, *et al.*[1]

Debtors.

Chapter 11

Case No.: 16-10971 (___)

(Jointly Administered)

**Re: Docket No. __**

## ORDER CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY STATUS OF DEBTORS' UNDISPUTED OBLIGATIONS FOR POSTPETITION DELIVERY OF <u>GOODS ORDERED PREPETITION</u>

Upon the motion (the "<u>Motion</u>")[2] of Vestis Retail Group, LLC and its chapter 11 affiliates, the debtors and debtors in possession (the "<u>Debtors</u>") in the above-captioned jointly administered chapter 11 cases (the "<u>Cases</u>"), for entry of an order, pursuant to sections 105(a), 363(c) and 503(b)(1)(A) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") confirming administrative expense priority status and authorizing payment of the Debtors' undisputed obligations for the postpetition delivery of goods that were ordered prepetition and that the Debtors have not canceled, declined, returned, or contested; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February

---

[1]  The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Vestis Retail Group, LLC (1295); Vestis Retail Financing, LLC (9362); EMS Operating Company, LLC (2061); Vestis IP Holdings, LLC (2459); Bob's Stores, LLC (4675); EMS Acquisition LLC (0322); Sport Chalet, LLC (0071); Sport Chalet Value Services, LLC (7320); and Sport Chalet Team Sales, LLC (8015).  The Debtors' executive headquarters are located at 160 Corporate Court, Meriden, CT 06450.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

01:18582934.1

A-4013

29, 2012; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and

that the Court may enter a final order consistent with Article III of the United States

Constitution; and it appearing that venue of these Cases and of the Motion is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Motion has

been given under the circumstances, and that no other or further notice need be given; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors' estates,

their creditors, and other parties in interest; and after due deliberation, and good and sufficient

cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors' undisputed obligations to the Suppliers under Outstanding Orders

arising from shipments of goods delivered to and accepted by the Debtors on and after the

Petition Date, and not subsequently canceled, declined, returned, or contested, are hereby granted

administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code

as against the Debtor liable for any such Outstanding Order, and the Debtors are authorized, but

not directed, to pay such obligations in the ordinary course of business and consistent with the

parties' customary practices in effect prior to the Petition Date.

3.      Notwithstanding anything in the Motion or this Order to the contrary, the Debtors

shall have the right to (a) cancel a purchase order (including any Outstanding Order), (b) decline

the acceptance of goods, (c) return any defective, nonconforming, or unacceptable good, or

(d) contest the amount of any invoice or claims, or liens related thereto, on any grounds.

4.      The Banks shall be and hereby are authorized to receive, process, honor, and pay

all checks and fund transfers on account of obligations owed to Suppliers on account of

01:18582934.1

2

Outstanding Orders, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Banks are authorized to rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this Order.

5. Except as otherwise provided herein, nothing in this Order, nor as a result of any payment made pursuant to this Order, (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

6. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

7. Bankruptcy Rule 6003(b) has been satisfied.

8. Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon its entry; (b) the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action necessary or appropriate to implement this Order.

9. The Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware
      April _____, 2016

_____
United States Bankruptcy Judge

01:18582934.1

3

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | **Chapter 11**<br>**Case No. 16-40120** |
|  | **(Joint Administration**<br>**Proposed)** |
| **ARCH COAL, INC.,** *et al.,* | **Hearing Date and Time:**<br>TBD |
| Debtors.[1] | **Hearing Location:**<br>TBD |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
(i) GRANTING ADMINISTRATIVE EXPENSE STATUS TO THE
DEBTORS' UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM
THE POSTPETITION DELIVERY OF GOODS ORDERED PREPETITION,
(ii) AUTHORIZING THE DEBTORS TO PAY THOSE OBLIGATIONS
IN THE ORDINARY COURSE OF BUSINESS, (iii) AUTHORIZING
THE DEBTORS TO RETURN GOODS AND (iv) AUTHORIZING FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

NOW COME Arch Coal, Inc. and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") and move this Court for entry of an order granting administrative expense status to undisputed obligations to vendors for goods ordered prepetition but delivered postpetition and authorizing the Debtors, in their sole discretion, to pay those obligations or return the goods.  In support of this motion (the "**Motion**"), the Debtors show the Court as follows:

### Relief Requested

1.      By this Motion the Debtors seek entry of an order (the "**Proposed Order**")[2] (i) granting the Vendors (as defined below) administrative priority status under sections 503(b)

_____

[1] The Debtors are listed on Schedule 1 attached hereto.  The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

and 507(a)(2) of Bankruptcy Code for undisputed obligations arising from the Debtors'

outstanding prepetition purchase orders and other longer term contracts (the "**Prepetition**

**Orders**") for certain Goods (as defined below) received and accepted by the Debtors on or after

the Petition Date, (ii) authorizing the Debtors, in their sole discretion, to pay such obligations in

the ordinary course of business under section 363(c) of the Bankruptcy Code, (iii) authorizing

the Debtors, in their sole discretion, under section 546(h) of the Bankruptcy Code, to return

Goods purchased from Vendors by the Debtors prior to the Petition Date, for credit against such

Vendors' prepetition claims and (iv) authorizing all applicable banks and financial institutions to

pay all checks presented for the payment of such obligations.

## Jurisdiction

2.        This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of

this proceeding is proper pursuant to 28 U.S.C. § 1409.  This is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2).

## Background

3.        The Debtors filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code on January 11, 2016 (the "**Petition Date**").

4.        The Debtors have continued in possession of their property and have continued to

operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or

examiner, and no official committee has been appointed in these cases.

5.        Additional information about the Debtors' businesses and the events leading up to

the Petition Date can be found in the *Declaration of John T. Drexler, Senior Vice President and*

---

² A copy of the Proposed Order will be provided to the Notice Parties (as defined below) and made
available on the Debtors' case information website at *https://cases.primeclerk.com/archcoal*.

*Chief Financial Officer of Arch Coal, Inc.*, filed substantially contemporaneously herewith, which is incorporated herein by reference.

6.      In connection with the normal operation of their businesses, the Debtors rely on numerous vendors and suppliers (collectively, the "**Vendors**") to provide the Debtors with parts, inventory, supplies and equipment, including diesel and lubricants.  Underground mines consist of equipment and conveying systems (e.g., electrical distribution systems, continuous miners, longwalls, shuttle cars, roofbolters, mantrips and rockdusters), underground cutting tools (e.g., bits and drill steel, roof bolts and other roof control products).  Surface mines consist of equipment, conveying systems and preparation plants (e.g., electrical distribution systems, shovels, draglines, blasthole drills, motor graders, front end loaders and haulage trucks), blasting products (e.g., ammonium nitrate and emulsion), conveyor belts, chemicals (e.g., magnetite and anionic polymers), tires, electric cable, communication hardware, safety supplies and other goods (collectively, the "**Goods**") for use in the regular operation of the Debtors' mining businesses.  These Goods are generally shipped on an as-needed basis directly to the Debtors' operations, the Debtors' customers, or third-party-operated coal loading facilities where the coal is then shipped to the Debtors' customers, all as directed by the Debtors.

7.      As a consequence of the commencement of these chapter 11 cases, the Debtors believe that many of the Vendors will be concerned that they will not be paid for the delivery or shipment of Goods after the Petition Date if such delivery or shipment was based on a Prepetition Order, or that their claims arising from the Prepetition Orders will be treated as general unsecured claims.  Accordingly, Vendors may refuse to provide Goods to the Debtors (or may recall shipments thereof) unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court (i) providing that all undisputed obligations of the Debtors arising

from the postpetition delivery of Goods subject to Prepetition Orders are afforded administrative

expense priority under section 503(b) of the Bankruptcy Code and (ii) authorizing the Debtors, in

their sole discretion, to satisfy those obligations in the ordinary course of their businesses.

8.     While it is difficult to estimate the total amount due and owing to Vendors under

the Prepetition Orders for Goods for which delivery will not occur until after the Petition Date,

the Debtors submit that the total amount to be paid to the Vendors in connection with the

Prepetition Orders, if the requested relief is granted, is *de minimis* compared with the importance

and necessity of the Goods.

## **Basis for Relief**

### Goods Ordered Prepetition and Delivered to the Debtors Postpetition Are Entitled to Administrative Expense Status Under Section 503(b)(1) of the Bankruptcy Code

9.     Vendor claims for Prepetition Goods will likely be administrative in nature.

Under section 503(b)(1) of the Bankruptcy Code, claims are accorded administrative expense

priority where such claims are for the actual, necessary costs and expenses of preserving the

bankruptcy estate.  *See* 11 U.S.C. § 503(b)(1).  In order to be awarded an administrative expense

claim, a claimant must demonstrate that it conducted a transaction with a debtor in possession

that, in turn, provided a benefit to such debtor's estate.  *See Sanchez v. Northwest Airlines, Inc.*,

659 F.3d 671, 677 (8th Cir. 2011); *In re ContinentalAFA Dispensing Co.*, 403 B.R. 653, 658

(Bankr. E.D. Mo. 2009).

10.     The Debtors submit that, pursuant to section 503(b)(1) of the Bankruptcy Code,

obligations that arise in connection with the postpetition delivery of desired and necessary

Goods, including Goods ordered prepetition, are in fact administrative expense priority claims in

virtually all instances.  Indeed, even if the Goods had been received in the ordinary course of the

Debtors' businesses 20 days *before* the Petition Date, the related claims would receive

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D -
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 153 of 458

Case 18-40129 Doc 291 TABL Document Entered 02/16/20 05:06 Main Document
Pg 5 of 12

administrative expense priority under section 503(b)(9) of the Bankruptcy Code. Thus, the

granting of the relief requested herein will likely not provide the Vendors with any greater

priority than they would otherwise have if the relief herein is not granted.

<u>Payment of the Prepetition Orders Is Within the Ordinary Course of Business</u>

11. The payment of the obligations arising in connection with the Prepetition Orders

is noncontroversial and entirely consistent with the applicable provisions of the Bankruptcy

Code. Section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its

business pursuant to section 1108 of the Bankruptcy Code to "enter into transactions. . .in the

ordinary course of business without notice or a hearing, and may use property of the estate in the

ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

12. Section 363 of the Bankruptcy Code is designed to serve the "'overriding goal of

maximizing the value of the estate' by striking the optimal balance between the interests of the

debtor and the creditors." *Habinger, Inc. v. Metropolitan Cosmetic and Reconstructive Surgical

Clinic, P.A.*, 124 B.R. 784, 786 (Bankr. D. Minn. 1990) (citing *United States ex rel. Harrison v.

Estate of Deutscher*, 115 B.R. 592 (Bankr. M.D. Tenn. 1990)). "The 'ordinary course of

business' standard is intended to allow a debtor the flexibility it needs to run its business and

respond quickly to changes in the business climate." *Habinger*, 124 B.R. at 786. Thus, the

Debtors have authority "to enter into transactions in the ordinary course of business without the

approval of the court." *Shields v. Cumberland Surety Ins. Co.* (*In re Am. Coal Corp.*), 1996

Bankr. LEXIS 2013, *16 (Bankr. D. Minn. Oct. 7, 1996).

13. The relief requested herein to pay postpetition obligations that arise in the

ordinary course will merely confirm the treatment of such obligations under the Bankruptcy

Code and assure the Vendors that they will be paid for Goods received and accepted by the

Debtors postpetition in the ordinary course of business. The relief will also help ensure a continuous supply of materials indispensable to the Debtors' operations. Absent the relief requested in this Motion, however, the Debtors would be required to expend substantial time and resources convincing many Vendors of the Debtors' authority to make certain payments, reissuing Prepetition Orders or even obtaining further relief from the Court to provide the Vendors with the assurance of such administrative priority, causing disruption to the Debtors' businesses. Without the Goods, the Debtors' business would deteriorate, and their opportunity to preserve and enhance the value of their assets would be jeopardized.

14.     The authorization sought in this Motion will not prejudice the Debtors' ability to contest the validity of any invoices, and it will not extend to any amounts that are disputed by the Debtors or that are in respect of Goods that are not received and accepted by the Debtors subsequent to the Petition Date. In addition, the approval sought herein will not constitute postpetition assumption or reaffirmation of any of the related agreements pursuant to section 365 of the Bankruptcy Code. The Debtors are in the process of reviewing these agreements and reserve all of their rights under the Bankruptcy Code with respect thereto.

15.     Courts in this and other jurisdictions have authorized the relief requested herein in other chapter 11 cases. *See, e.g., In re Bakers Footwear Grp., Inc.*, Case No. 12-49658 (CER) (Bankr. E.D. Mo. Oct. 5, 2012); *In re Alpha Natural Res., Inc.*, Case No. 15-33896 (KRH) (Bankr. E.D. Va. Aug. 5, 2015); *In re Magnetation LLC*, Case No. 15-50307 (GFK) (Bankr. D. Minn. May 7, 2015); *In re Allied Nev. Gold Corp.*, Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re Standard Register Co.*, Case No. 15-10541 (BLS) (Bankr. D. Del. Mar. 13, 2015); *In re The Wet Seal, Inc.*, Case No. 15-10081 (CSS) (Bankr. D. Del. Jan. 20, 2015); *In re*

*James River Coal Co.*, Case No. 14-31848 (KRH) (Bankr. E.D. Va. April 10, 2014); *In re*

*Patriot Coal Corp.*, Case No. 12-12900 (ALG) (Bankr. S.D.N.Y. July 12, 2012).

16.    Based upon the foregoing, the Debtors submit that the relief requested herein is

essential, appropriate and in the best interests of the Debtors' estates and creditors, and therefore

should be granted.

<u>The Debtors Are Authorized to Return Goods Under</u>
<u>Section 546(h) of the Bankruptcy Code</u>

17.    The Debtors also occasionally receive various Goods that may be defective, not

up to standards or otherwise not suitable or necessary for their operations.  In some cases, the

Debtors return such Goods to Vendors.  Notwithstanding the filing of these chapter 11 cases and

the distinction between prepetition and postpetition claims, the Debtors request that they be

authorized, in their sole discretion, to return Goods that were delivered after the Petition Date

based on Prepetition Orders for credit against such Prepetition Orders if the Debtors determine

that such Goods are of little or no value to the Debtors' estates.

18.    The Debtors submit that an order approving returns to Vendors for credit against

their prepetition claims, subject to the limitations imposed by any orders of this Court and the

prior rights of holders of security interests in such Goods or the proceeds of such Goods under

the Debtors' prepetition financing agreements, to the extent of such interests, is in the best

interests of the Debtors' estates.  Such relief will enable the Debtors to (a) obtain proper credit

for otherwise unusable Goods, cost-effectively and without undue financial risk and

(b) effectively manage inventory, enhancing the Debtors' financial performance and the value of

the assets of their estates.

19.    Section 546(h) of the Bankruptcy Code permits a debtor, with the consent of a

creditor and subject to the prior rights of holders of security interests in such goods or the

proceeds of such goods, to return goods shipped to the debtor by the creditor before the

commencement of the case for credit against the creditor's prepetition claim, provided that the

Court determines (on a motion made no later than 120 days after the order for relief and after

notice and a hearing) that such return is in the best interests of the estate.

20.     Through this Motion, the Debtors seek only the relief that is contemplated by

section 546(h) of the Bankruptcy Code.  Accordingly, the Debtors should be permitted to return

Goods, in their discretion, as permitted by the Bankruptcy Code and as set forth herein.

<u>Applicable Financial Institutions Should Be Authorized</u>
<u>to Honor and Process Related Checks and Transfers</u>

21.     The Debtors also request that all applicable banks and other financial institutions

be authorized to (i) receive, process, honor and pay all checks presented for payment of, and to

honor all fund transfer requests made by the Debtors related to, the claims that the Debtors

request authority to pay in this Motion, regardless of whether the checks were presented or fund

transfer requests were submitted before or after the Petition Date and (ii) rely on the Debtors'

designation of any particular check as approved by the Proposed Order.

**<u>Necessity for Immediate Relief</u>**

22.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary

to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the

petition, issue an order granting . . . (b) a motion to use, sell, lease or otherwise incur an

obligation regarding property of the estate, including a motion to pay all or part of a claim that

arose before the filing of the petition . . . ."  If the Debtors are not authorized to pay their

Vendors without interruption in the ordinary course of business, the Debtors would suffer

immediate and irreparable harm by damaging the Debtors' ability to sustain their day-to-day

operations and meet their various obligations, including under coal supply agreements, possibly

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D - Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 157 of 458

Case 23-90126 Document 231 Filed in TXSB on 12/18/23 Page Main Document Pg 9 of 12

resulting in loss of business and loss of customers. Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

## Waiver of Stay Under Bankruptcy Rule 6004(h)

23. The Debtors also request that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their businesses without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## Notice

24. Notice of this Motion has been provided to counsel to the administrative agent and counsel to the lenders under the Debtors' proposed debtor in possession secured credit facility, counsel to the administrative agent and counsel to that certain ad hoc group of majority prepetition senior secured lenders under the Debtors' prepetition secured credit facility, the Debtors' 30 largest unsecured creditors and the Office of the United States Trustee for the Eastern District of Missouri, the Internal Revenue Service, the Securities and Exchange Commission, the United States Department of the Interior, the United States Department of Labor and the United States Attorney's Office for the Eastern District of Missouri (collectively, the "**Notice Parties**"). In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that this Court:

(a)    grant Vendors administrative priority status under section 503(b) and 507(a)(2) of the Bankruptcy Code for those undisputed obligations arising from the Debtors' Prepetition Orders for Goods received and accepted by the Debtors on or after the Petition Date;

(b)    authorize the Debtors, in their sole discretion, to pay such obligations in the ordinary course of business under section 363(c) of the Bankruptcy Code;

(c)    authorize the Debtors, in their sole discretion, under section 546(h) of the Bankruptcy Code, to return Goods purchased from Vendors by the Debtors prior to the Petition Date, for credit against such Vendors' prepetition claims;

(d)    authorize financial institutions to honor and process related checks and transfers, as more fully described in the Motion; and

(e)    grant the Debtors such other and further relief as is just and proper.

Dated:  January 11, 2016
        St. Louis, Missouri

Respectfully submitted,

BRYAN CAVE LLP

/s/ Brian C. Walsh
Lloyd A. Palans, #22650MO
Brian C. Walsh, #58091MO
Cullen K. Kuhn, #53151MO
Laura Uberti Hughes, #60732MO

One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000
Fax:  (314) 259-2020
lapalans@bryancave.com
brian.walsh@bryancave.com
ckkuhn@bryancave.com
laura.hughes@bryancave.com

*Proposed Local Counsel to the Debtors and
Debtors in Possession*

-and-

DAVIS POLK & WARDWELL LLP

Marshall S. Huebner
Brian M. Resnick
Michelle M. McGreal
Kevin J. Coco

450 Lexington Avenue
New York, New York  10017
(212) 450-4000
Fax:    (212) 607-7983
marshall.huebner@davispolk.com
brian.resnick@davispolk.com
michelle.mcgreal@davispolk.com
kevin.coco@davispolk.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

# SCHEDULE 1
## Debtor Entities

| | | | |
|---|---|---|---|
| 1. | ACI Terminal, LLC | 37. | ICG Eastern, LLC |
| 2. | Allegheny Land Company | 38. | ICG Eastern Land, LLC |
| 3. | Apogee Holdco, Inc. | 39. | ICG Illinois, LLC |
| 4. | Arch Coal, Inc. | 40. | ICG Knott County, LLC |
| 5. | Arch Coal Sales Company, Inc. | 41. | ICG Natural Resources, LLC |
| 6. | Arch Coal West, LLC | 42. | ICG Tygart Valley, LLC |
| 7. | Arch Development, LLC | 43. | International Coal Group, Inc. |
| 8. | Arch Energy Resources, LLC | 44. | Jacobs Ranch Coal LLC |
| 9. | Arch Reclamation Services, Inc. | 45. | Jacobs Ranch Holdings I LLC |
| 10. | Arch Western Acquisition Corporation | 46. | Jacobs Ranch Holdings II LLC |
| 11. | Arch Western Acquisition, LLC | 47. | Juliana Mining Company, Inc. |
| 12. | Arch Western Bituminous Group, LLC | 48. | King Knob Coal Co., Inc. |
| 13. | Arch Western Finance LLC | 49. | Lone Mountain Processing, Inc. |
| 14. | Arch Western Resources, LLC | 50. | Marine Coal Sales Company |
| 15. | Arch of Wyoming, LLC | 51. | Melrose Coal Company, Inc. |
| 16. | Ark Land Company | 52. | Mingo Logan Coal Company |
| 17. | Ark Land KH, Inc. | 53. | Mountain Coal Company, L.L.C. |
| 18. | Ark Land LT, Inc. | 54. | Mountain Gem Land, Inc. |
| 19. | Ark Land WR, Inc. | 55. | Mountain Mining, Inc. |
| 20. | Ashland Terminal, Inc. | 56. | Mountaineer Land Company |
| 21. | Bronco Mining Company, Inc. | 57. | Otter Creek Coal, LLC |
| 22. | Catenary Coal Holdings, Inc. | 58. | Patriot Mining Company, Inc. |
| 23. | Catenary HoldCo, Inc. | 59. | P.C. Holding, Inc. |
| 24. | Coal-Mac, Inc. | 60. | Powell Mountain Energy, LLC |
| 25. | CoalQuest Development LLC | 61. | Prairie Coal Company, LLC |
| 26. | Cumberland River Coal Company | 62. | Prairie Holdings, Inc. |
| 27. | Energy Development Co. | 63. | Saddleback Hills Coal Company |
| 28. | Hawthorne Coal Company, Inc. | 64. | Shelby Run Mining Company, LLC |
| 29. | Hobet Holdco, Inc. | 65. | Simba Group, Inc. |
| 30. | Hunter Ridge, Inc. | 66. | Thunder Basin Coal Company, L.L.C. |
| 31. | Hunter Ridge Coal Company | 67. | Triton Coal Company, L.L.C. |
| 32. | Hunter Ridge Holdings, Inc. | 68. | Upshur Property, Inc. |
| 33. | ICG, Inc. | 69. | Vindex Energy Corporation |
| 34. | ICG, LLC | 70. | Western Energy Resources, Inc. |
| 35. | ICG Beckley, LLC | 71. | White Wolf Energy, Inc. |
| 36. | ICG East Kentucky, LLC | 72. | Wolf Run Mining Company |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------x
                                                           :
In re                                                      :     **Chapter 11**
                                                           :
SIMMONS BEDDING COMPANY, *et al.*,                         :     **Case No. _____ (____)**
                                                           :
                    Debtors.                               :     **Joint Administration**
                                                           :     **Requested**
-----------------------------------------------------------x

**MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND SERVICE PROVIDERS, AND (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY STATUS TO ALL UNDISPUTED OBLIGATIONS ARISING FROM POSTPETITION DELIVERY OF GOODS AND SERVICES ORDERED PREPETITION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Simmons Bedding Company ("Simmons Bedding") and certain of its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] respectfully represent:

### Background

1.      On the date hereof (the "Commencement Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.  The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are:  Simmons Company (6221); Bedding Holdco Incorporated (5929); Simmons Bedding Company (5743); The Simmons Manufacturing Co., LLC (0960); Windsor Bedding Co., LLC (8616); World of Sleep Outlets, LLC (0957); Simmons Contract Sales, LLC (2016); Dreamwell, Ltd. (2419); Simmons Capital Management, LLC (2470); and Simmons Export Co. (1370).  Each of the Debtors maintains its principal corporate office at One Concourse Parkway, Atlanta, Georgia 30328.

RLF1 3504982v.1

A-4028

### Jurisdiction and Venue

2.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Debtors' Business

3.     The Debtors are one of the world's largest manufacturers and marketers of

bedding products.  Together with their non-debtor foreign affiliates, the Debtors operate 20

bedding manufacturing facilities across the United States, Canada, and Puerto Rico.  Founded in

1870, the Debtors and their predecessors have been developing innovative products and

technologies that provide their consumers a better night's sleep since 1876.  The Debtors'

headquarters are located in Atlanta, Georgia.

4.     The Debtors manufacture, sell and distribute their bedding products to individual

end-users through a diverse base of customers which, in 2009, include over 2,100 retailers in the

United States with approximately 13,500 store locations, including furniture stores, specialty

sleep shops, department stores, furniture rental stores, mass merchandisers and juvenile specialty

stores.  The Debtors also sell their products to hospitality customers, such as hotels, casinos and

resort properties through Simmons Contract Sales, LLC, a debtor herein, and sell overstock and

discontinued models through retail outlets operated by World of Sleep Outlets, LLC, a debtor

herein.  Additionally, the Debtors license their intellectual property through Dreamwell, Ltd., a

debtor herein, to both international companies that manufacture and sell Simmons branded

bedding products throughout the world and to U.S. manufacturers and distributors of bedding

accessories, furniture, airbeds and other products.

5.     As of the Commencement Date, the Debtors had approximately 2,300 employees

in U.S.  For the fiscal quarter ended September 26, 2009, the Debtors' unaudited consolidated

financial statements reflected assets totaling approximately $900 million, liabilities totaling

approximately $1 billion, and net sales for the trailing twelve months ended September 26, 2009

of approximately $782 million.

6.      Additional information regarding the Debtors' business, capital structure, and the

circumstances leading to these chapter 11 filings are contained in the Declaration of William S.

Creekmuir in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief (the

"Creekmuir Declaration"), filed contemporaneously herewith.

### The Proposed Prepackaged Plan

7.      The Debtors' proposed joint prepackaged plan of reorganization under chapter 11

of the Bankruptcy Code (the "Plan") is proposed pursuant to the Plan Sponsor Agreement, dated

September 24, 2009 (as has been or may be further amended, restated, supplemented, or

otherwise modified from time to time, the "Plan Sponsor Agreement"), among the Debtors and

AOT Bedding Super Holdings, LLC and AOT Bedding Intermediate Holdings, LLC

(collectively, the "Purchasers").  The Plan Sponsor Agreement contemplates that Bedding

Holdco Incorporated ("Bedding Holdco"), Simmons Bedding and its subsidiaries will be

acquired by the Purchasers upon consummation of the Plan.  The Debtors and the Purchasers

entered into the Plan Sponsor Agreement after the Debtors conducted a comprehensive review of

various strategic alternatives, which included considering a wholesale restructuring of their

capital structure or a third party sale.  The Debtors believe the transactions contemplated by the

Plan Sponsor Agreement are in the best interests of the Debtors and their creditors.

8.      The Debtors expect to file shortly a motion seeking approval of the Plan Sponsor

Agreement.  The Plan Sponsor Agreement includes certain covenants relating to the conduct of

the Debtors' business, including, without limitation, a general requirement that the Debtors

continue operating in the ordinary course of business.  The Debtors' compliance with this and

3

other covenants is a condition to the Purchasers' obligations under the Plan Sponsor Agreement, subject to certain qualifications and exceptions. In order to be able to satisfy these covenants if the Plan is approved by the Court, the Debtors intend to operate their business in accordance with the Plan Sponsor Agreement prior to the Court's approval thereof to the extent that such actions are consistent with the Bankruptcy Code and any applicable rules and orders of this Court.

9. Under the Plan, secured creditors, unsecured trade creditors, and administrative and priority creditors are being paid in full or reinstated. Further, under the Plan, the Debtors will reinstate approximately $12.5 million of claims arising in connection with certain industrial revenue bonds and assume obligations aggregating approximately $10 million under certain letters of credit. In addition, holders of the SBC Notes (as defined in the Plan) and the Holdco Notes (as defined in the Plan) are receiving cash recoveries. The Debtors are financing those payments from an equity investment by the Purchasers of approximately $310 million (some portion of which may be funded by certain holders of the Holdco Notes in accordance with the terms of that certain equity commitment letter dated as of September 24, 2009), and the proceeds of the issuance of $425 million senior secured term notes. Certain holders of the SBC Notes, Holdco Notes and SBC Credit Agreement Claims (as defined in the Plan), as well as an affiliate of one of the Purchasers, have committed to purchase such senior secured term notes.

10. On October 13, 2009, the Debtors commenced solicitation of votes on the Plan via a disclosure statement pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. As set forth in the Epiq Bankruptcy Solutions LLC affidavit filed on this date, the proposed Plan has been accepted in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy

Code by all classes entitled to vote.  Specifically, each of the voting classes, both by number and by amount that voted on the Plan, voted overwhelmingly to accept the Plan.

11.    The restructuring contemplated by the proposed Plan will reduce the Debtors' outstanding indebtedness by approximately $572 million.  The Debtors believe that the Plan is in the best interests of the Debtors and their creditors.

### The Critical Vendors and Service Providers

12.    In connection with the normal operation of their business, the Debtors utilize certain vendors and service providers who supply (i) essential raw materials used in manufacturing their bedding products, and (ii) services used in selling and distributing their bedding products.  The Debtors manufacture and ship most of their bedding products within five (5) days of their initial receipt of an order.  As a means of cost-effectively managing this streamlined and tightly controlled manufacturing process, the Debtors employ the use of "just-in-time" inventory management techniques.  Under this approach, the Debtors typically do not maintain on hand more than approximately one week's supply of their finished products or two and one-half weeks' supply of the raw materials needed to manufacture their finished products.  In some instances, the Debtors may maintain as little as a one day supply of products or raw materials on hand.  The Debtors closely coordinate with their vendors to efficiently manage their supply purchases and to maintain their inventories of finished products and raw materials at very low levels.  Given these low inventories, the Debtors' ability to continue manufacturing their bedding products will largely depend upon their continued ability to access the goods, materials and services provided by their suppliers.  If the Debtors are unable to access these goods, materials and services, their ability to reorganize will be severely impaired.

RLF1 3504982v.1

13.     In order to determine which of the Debtors' vendors are critical to their ability to

continue manufacturing and distributing bedding products, the Debtors' senior management and

financial advisors undertook the following analysis:

(i)     The Debtors first identified all vendors who supply goods and services used in manufacturing and distributing their bedding products. Of this total universe of vendors, the Debtors then analyzed whether the failure to pay the prepetition claims of such vendors would, in the Debtors' business judgment, result in a substantial risk that such vendors may refuse to provide goods or services to the Debtors during the postpetition period.

(ii)    The Debtors then identified which of the vendors are unique in that they (a) are the sole source for the supply of products used in the manufacturing of the Debtors' bedding products; (b) provide components that have been specially manufactured for use in the Debtors' bedding products; (c) provide patented raw materials or raw materials produced via patented processes that are needed to manufacture the Debtors' bedding products; (d) are able to provide sufficient quantities of raw materials and finished components necessary to meet the Debtors' significant volume requirements; (e) provide materials or products that have been subjected to lengthy and rigorous quality, reliability, performance and/or safety testing to qualify them under Consumer Product Safety Commission regulations and other federal or state laws and regulations, or internal safety and compliance standards, such that the need to re-qualify replacement vendors would entail significant delay in the Debtors' ability to manufacture products; (f) are geographically located close to the Debtors' manufacturing plants so that the transportation and/or other cost savings associated with the Debtors' purchase of their products and services cannot be replicated by replacement vendors; (g) have so integrated their operations with those of the Debtors that it would be costly, impractical, disruptive and imprudent for the Debtors to change vendors; (h) are parties to highly negotiated supply contracts that provide for significant cost savings to the Debtors if they purchase sufficient volumes of products and raw materials; or (i) provide functionality in the areas of sales order processing and offsite data storage that is critical to, highly integrated into, and in some instances designed specifically for, the Debtors' business operations.

14.     Based on the foregoing screening process, the Debtors have identified certain

vendors (collectively, the "Critical Vendors") without whom the Debtors' business would either

fail or be significantly impaired. These Critical Vendors, include, but are not limited to: (a) raw

material suppliers, (b) dedicated third-party logistic providers, and (c) information technology

6

service providers.  The Debtors estimate that, as of the Commencement Date, they owed a total

of approximately \$16.4 million in trade account payables, of which approximately \$12.7 million

(or 77.7% of the total trade account payables) is owed to the Critical Vendors.  Of this amount,

approximately \$8 million must be paid within the first twenty days following the

Commencement Date.

### *Raw Material Suppliers*

15.    The Debtors purchase substantially all of their conventional bedding raw

materials, including foam, wire, spring components, lumber, insulator pads, innersprings,

foundation constructions, fabrics, and other roll goods consisting of fiber and non-wovens, from

a small number of suppliers.  During the first ten months of 2009, the Debtors purchased

approximately 76% of the raw materials and finished products needed to manufacture their

bedding products from only ten (10) suppliers, some of which have been providing products to

the Debtors for more than 10 years.  By purchasing their materials centrally, the Debtors are able

to obtain volume discounts and employ more efficient and streamlined production processes.

Furthermore, in order to guarantee a long term and adequate supply of certain raw materials, the

Debtors have entered into supply agreements with certain suppliers who provide large quantities

of these essential inputs.  The supply agreements may contain minimum purchase and volume

requirements and/or require the supplier to sell products to the Debtors on an exclusive basis.  If

the Debtors do not reach the committed levels of purchases set forth in their supply agreements,

they will likely be required to pay higher prices for the required materials, and may also lose

certain sales volume rebates and/or exclusive rights to purchase select products.

16.    Certain of the Debtors' suppliers also provide specially made raw materials such

as stranded wire, textile fabrics, flame retardant materials, foundation grids for box springs, quilt

backing, and certain types of foam, fiber, latex, and adhesives that are used as components in

many of the Debtors' bedding products. In many instances, there is no other supplier that can

make these products. To the extent that an alternative supplier does exist, the alternative supplier

typically cannot provide products that meet the Debtors' quality standards or quantity

requirements, and/or cannot ensure availability and the ability to cost-effectively and timely

deliver their products to the geographic areas in which the products are needed. Moreover,

because the specialty products are made specifically for use in the Debtors' mattress designs, the

Debtors would be required in many instances to re-engineer and/or re-test their products if they

were compelled to find substitute suppliers, which would be very costly and time consuming.

Even if the Debtors were able to find substitute suppliers, their "just-in-time" production model

does not permit any disruptions in the manufacturing process. Furthermore, in the case of

substitutions that are unlike the original product, the Debtors will likely be required to provide

new floor model samples to their dealers and change marketing materials, each of which would

also be very costly and time consuming. Accordingly, without the specialty materials that are

provided by certain of the Debtors' suppliers, the Debtors' business would be severely disrupted

and indeed, the Debtors would, for a time, be unable to manufacture their bedding products.

  17.  Moreover, the Debtors are subject to various federal and state laws and

regulations relating to, among other things, flammability, pollution, lead and phthalate standards,

and environmental standards. The products supplied by the Debtors' current suppliers have been

extensively tested to assure that the Debtors' bedding products satisfy these regulatory

requirements. If the Debtors are required to find alternative suppliers, they will have to engage

in the very costly and time-consuming process (typically three to six months) of re-qualifying

their products with the new materials supplied by the alternative suppliers. The Debtors'

business and financial condition are likely to be severely impaired if they are required to
undertake this process.

### *Third-Party Logistic and Freight Audit & Pay Service Provider*

18.     The Debtors employ the services of certain outsourced third-party carriers
(collectively, the "Carriers") to transport and deliver their finished bedding products from the
Debtors' manufacturing facilities to their customers and from the Debtors' suppliers to the
Debtors' manufacturing facilities.  During the first ten months of 2009, approximately 74% of
the Debtors' outbound freight costs were incurred by, and paid to, only three (3) Carriers.  These
three Carriers provide dedicated transportation services to the Debtors, with equipment and
personnel that are dedicated to each of the Simmons manufacturing facilities they serve.  Each of
these Carriers is highly integrated into the Debtors' business operations and manufacturing
processes.  Because the outbound Carriers have employees and equipment that are physically
located at each of the Debtors' manufacturing facilities, are dedicated to exclusively serving the
Debtors' business, and are familiar with the Debtors' customers, manufacturing locations,
delivery schedules and production planning processes, these Carriers are able to more timely and
cost-effectively transport the Debtors' products.

19.     In addition, the Debtors use some inbound Carriers to consolidate raw materials
ordered from the Debtors' suppliers.  These inbound carriers use special handling equipment to
transport the materials to the Debtors' manufacturing facilities, and then use special equipment to
place the materials in the Debtors' manufacturing facilities for storage.  These inbound Carriers
are critical to the efficient flow and manufacturing of the raw materials used in the Debtors'
products.  The Debtors would incur higher costs and time delays, as well as increase the risk of
disruption in the supply of raw materials, if they were required to utilize substitute Carriers.

9

20.     The Debtors also utilize the services of a third party (the "Freight Audit &
Payment Service Provider") to audit, process and facilitate payment by the Debtors to the
Carriers for their services. The Freight Audit & Payment Service Provider is highly integrated
into the Debtors' operations and is familiar with the Debtors' processes and Carriers, and all of
the terms and conditions of the agreements between the Debtors and the Carriers. Absent the
services of the Freight Audit & Payment Service Provider, the Debtors would be unable to
efficiently audit freight bills and pay their Carriers in a timely manner. Moreover, it would be an
extremely time consuming and burdensome process to identify a new Freight Audit & Payment
Service Provider and integrate such substitute provider into the Debtors' operations.

21.     Accordingly, both the Carriers and the Freight Audit & Payment Service Provider
are essential to the distribution of the Debtors' products, and indeed, the Debtors' business would
be materially disrupted if the Debtors were required to find substitute Carriers and a substitute
Freight Audit & Payment Service Provider.

**_IT Service Providers_**

22.     The Debtors utilize the services of certain information technology vendors (the
"IT Service Providers") to provide critical functionality in the areas of sales order processing and
offsite data storage. The products and services supplied by the IT Service Providers have been
highly integrated into the Debtors' business operations and, in some instances, are designed
specifically for use by the Debtors. Without these services, the Debtors could not receive and
process electronically-transmitted sales orders or store or retrieve business data, thereby severely
impairing the Debtors' ability to maintain critical business activities. The Debtors estimate that
it would take approximately 3 months to find replacement IT Service Providers who could
provide the services described herein. As such, the IT Service Providers are essential to the
Debtors' daily business operations. Indeed, if the services provided by the IT Service Providers

10

RLF1 3504982v.1

were disrupted for even a brief period of time, the Debtors' ability to reorganize would be severely impaired.

## <u>Relief Requested</u>

23.     By this Motion, and subject to the provisions set forth herein, the Debtors seek authority, on an interim basis, pursuant to sections 105, 363(b)(1), and 503(b) of the Bankruptcy Code to (i) pay, in the Debtors' discretion and in accordance with the terms and conditions of the Plan Sponsor Agreement, the prepetition fixed, liquidated, and undisputed claims (collectively, the "<u>Critical Vendor Claims</u>") of the Critical Vendors on the terms set forth herein, (ii) grant administrative expense priority status to all undisputed obligations arising from the postpetition delivery of goods and services ordered in the prepetition period, and (iii) schedule a final hearing (the "<u>Final Hearing</u>") to consider the relief requested herein on a final basis.

24.     Additionally, the Debtors request authority for the banks maintaining their disbursement accounts to honor any checks, drafts or wire transfers dated prior to, on, or after the Commencement Date upon presentation or receipt thereof in respect of Critical Vendor Claims, and that such banks be authorized to rely upon the representation of the Debtors as to which of such checks, drafts or wire transfers are in payment of the Critical Vendor Claims.

25.     To implement the terms of the authority requested herein, the Debtors propose that any order approving this Motion (the "<u>Critical Vendor Order</u>") provide that:

a.      When feasible, appropriate and in accordance with the terms and conditions of the Plan Sponsor Agreement, and in the Debtors' business judgment, the Debtors are authorized, but not required, to make payment from available funds to any or all of the Critical Vendors in amounts not to exceed, in the aggregate, $8,000,000, on an interim basis and pending the Final Hearing, on account of the Critical Vendors' valid prepetition claims, on the conditions that (i) all such claims shall be paid by check, wire transfer of funds, or issuance of a credit; (ii) by accepting payment under the terms of the Critical Vendor Order, the Critical Vendor shall continue extending credit and supplying materials, goods and/or services to the Debtors after the Commencement Date, and such credit must

11

generally be provided on ordinary and acceptable terms and conditions that are at least as favorable or better than those provided to the Debtors one hundred eighty (180) days prior to the Commencement Date; and (iii) the Debtors shall transmit a copy of the Critical Vendor Order to each Critical Vendor to which any payment permitted thereunder is made;

b.  A Critical Vendor's acceptance of payment for a Critical Vendor Claim is deemed acceptance of the terms of the Critical Vendor Order, and if the Critical Vendor thereafter does not provide the Debtors with customary trade terms during the pendency of these chapter 11 cases, then any payments of prepetition claims made after the Commencement Date may be deemed to be unauthorized postpetition transfers and, therefore, recoverable by the Debtors; and

c.  The Debtors shall be authorized to obtain written verification of the trade terms to be supplied by the Critical Vendors before issuing payment under the Critical Vendor Order.

### Basis for Relief Requested

26.    The Debtors submit that there are at least four (4) distinct legal reasons to permit payment of the Critical Vendor Claims.  First, certain of the Critical Vendor Claims are entitled to administrative expense status pursuant to section 503(b)(9) of the Bankruptcy Code because their claims arise from the delivery of goods within twenty (20) days of the Commencement Date.  Second, a substantial number of the Critical Vendors are parties to executory contracts and their claims thereunder will be subject to priority treatment if the Debtors elect to assume such contracts under section 365(a) of the Bankruptcy Code.  Third, certain of the Critical Vendors may have reclamation rights under section 546 of the Bankruptcy Code, which, if exercised, would undermine the Debtors' ability to continue their manufacturing operations and, thus, generate revenues.  Fourth, payment of the Critical Vendor Claims is necessary to the preservation of the Debtors' business and is therefore a valid exercise of the court's authority under section 105(a) of the Bankruptcy Code.

27.    While the Debtors seek authority to pay their Critical Vendors, the Debtors do not propose to pay all amounts outstanding immediately.  Instead, the Debtors will determine, in the

12

exercise of their business judgment, in their sole discretion, and in accordance with the terms and

conditions of the Plan Sponsor Agreement, and based upon the liquidity available to them at the

time such determination is made, which, and in what amounts, the Critical Vendor Claims will

be paid, and the schedule for any such payments.

### *Certain Critical Vendor Claims are Entitled to Administrative Expense Priority Status Pursuant to Section 503(b)(9) of the Bankruptcy Code*

28.      Section 503(b)(9) of the Bankruptcy Code provides that administrative expense

priority status shall be granted to creditors holding claims for "the value of any goods received

by the debtor within 20 days before the date of commencement of a case under this title in which

the goods have been sold to the debtor in the ordinary course of such debtor's business." 11

U.S.C. § 503(b)(9).  As explained above, the Debtors typically do not order a significant amount

of products or services from their vendors until they receive orders from their customers.  Upon

the receipt of such orders, the Debtors request that their Critical Vendors supply the required

manufacturing inputs and then they manufacture and deliver the requested bedding products.  For

most customer orders, this entire process is completed within only five (5) business days.  As

such, a large portion of the goods that the Debtors will use to fill the purchase orders that were

outstanding as of the Commencement Date will have been received from Critical Vendors within

twenty (20) days prior to the Commencement Date.  The Debtors estimate that approximately

60% of the amount that they seek to pay to Critical Vendors is derived from goods and materials

received by the Debtors within twenty (20) days prior to the Commencement Date.  As such,

most of the Critical Vendor Claims are entitled to administrative expense priority status.

Accordingly, other unsecured creditors will not be prejudiced by the Debtors' payment of the

prepetition claims of the Critical Vendors.

*The Debtors Have Contractual Relationships With Many of the Critical Vendors*

29.    Currently, the Debtors estimate that a significant number of the Critical Vendor

Claims are owed to Critical Vendors with whom the Debtors have long-term contractual

relationships.  If the Debtors were to assume their contracts with these Critical Vendors, the

claims of such vendors would be subject to administrative priority treatment.  Section

365(b)(1)(A) of the Bankruptcy Code, however, requires the Debtors to cure, or provide

adequate assurance that they will promptly cure, outstanding defaults before they can assume any

such contracts.[2]  The process of identifying and then assuming each such executory contract

would be substantially more costly and time-consuming than simply paying the Critical Vendors

pursuant to the terms of any Critical Vendor Order.  Moreover, the Debtors are not required by

the Bankruptcy Code to make a determination as to which contracts will be assumed at this early

stage.  Accordingly, approval of this Motion will afford the Debtors sufficient time to make

informed business decisions regarding whether such contracts should be assumed, and will

promote the expeditious administration of these cases by eliminating the substantial time and

expense incident to obtaining Court authority to individually assume each of the Debtors'

contracts with the Critical Vendors.  Furthermore, other unsecured creditors will not be

prejudiced by the Debtors' payment of the claims of the Critical Vendors with whom they have

contractual relationships because, if the contracts are ultimately assumed, the claims arising

thereunder will be subject to administrative priority treatment in any event.

---

[2] Notwithstanding the continued provision of goods, materials, and services by the Critical Vendors on customary trade terms, nothing in this Motion should be construed as an assumption of any executory contract or unexpired lease between the Debtors and any of the Critical Vendors, nor should it be construed as a rejection of any executory contract or unexpired lease with any of the Critical Vendors or other creditors who provide goods, materials and services to the Debtors.  The Debtors are in the process of reviewing these matters and reserve all of their rights with respect to the assumption or rejection of any executory contract or unexpired lease.  Furthermore, the Debtors reserve the right to contest, on non-bankruptcy grounds, the amount claimed to be due by any of the Critical Vendors.

14

A-4041

*Certain of the Critical Vendors May Have Reclamation Rights*

30.     Section 546(c) of the Bankruptcy Code provides that the rights and powers of a

trustee to avoid certain transfers are subject to

> the right of a seller of goods that has sold goods to the debtor, in the
> ordinary course of such seller's business, to reclaim such goods if the
> debtor has received such goods while insolvent, within 45 days before the
> commencement of a case . . . [so long as] such seller demands in writing
> reclamation of such goods—(A) not later than 45 days after the date of the
> receipt of such goods by the debtor; or (B) not later than 20 days after the
> date of the commencement of the case, if the 45-day period expires after
> the commencement of the case.

11 U.S.C. § 546(c).  While the Debtors do not concede that any Critical Vendors in fact have

reclamation claims, such creditors may seek to assert reclamation claims, thereby placing the

Debtors in the position of having to defend such claims absent payment.  The Debtors estimate

that, as of the Commencement Date, essentially all of the Critical Vendors will have delivered

goods and materials to the Debtors within the forty-five (45) day period preceding the

Commencement Date.  The Debtors estimate that the current reclamation rights total

approximately $12,278,556.  If any of the Critical Vendors exercise their rights to reclaim

materials and goods delivered to the Debtors within such prepetition period, the Debtors'

business will be disrupted and their ability to manufacture their bedding products and fill their

product orders will be impaired.  Moreover, most of the materials and goods delivered during

this 45 day period will have been used to manufacture the Debtors' bedding products and

shipped to the Debtors' customers.  In such instances, it would be impossible for the Critical

Vendors to reclaim such goods.  As such, the Debtors submit that they should be permitted to

pay the prepetition claims of any Critical Vendors who may hold reclamation rights under

section 546(c) of the Bankruptcy Code.

15

A-4042

***Payment of the Critical Vendor Claims is Essential to the Debtors' Business and Reorganization***

31.     Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a

hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business property

of the estate." 11 U.S.C. § 363(b)(1).  In addition, section 105(a) of the Bankruptcy Code

empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of this title.  11 U.S.C. § 105(a).  Bankruptcy courts have invoked the

equitable power of section 105 to authorize the postpetition payment of prepetition claims where

such payment is necessary to preserve the going-concern value of a debtor's estate. *See In re*

*Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("to invoke the necessity of payment

doctrine, a debtor must show that payment of the prepetition claims is critical to the debtor's

reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting

that section 105 empowers bankruptcy courts to "authorize the payment of prepetition debt when

such payment is needed to facilitate the rehabilitation of the debtor"). *See also, In re Tropical*

*Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize

that section 363 is a source for authority to make critical vendor payments, and section 105 is

used to fill in the blanks.").

32.     In a long line of well-established cases, federal courts have consistently permitted

postpetition payments of prepetition obligations where necessary to preserve or enhance the

value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport*

*Ry.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim permitted to prevent "stoppage

of [crucial] business relations"); *In re Lehigh Co. & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d

Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to

the continued operation of the . . . [business] during reorganization, payment may be authorized

even if it is made out of [the] corpus"); *In re Columbia Gas Sys. Inc.*, 171 B.R. 189 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of their business); *In re Just for Feet*, 242 B.R. at 825 (holding that the court is authorized under section 105(a) to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's reorganization) (citing *In re Penn Central Transp. Co.*, 486 F.2d 519 (3d Cir. 1973)).

33.     Due to the nature of the Debtors' just-in-time manufacturing business, failure to pay any of the Critical Vendors will have a debilitating effect on the Debtors' ability to continue their business. If the Critical Vendors refuse to provide products and services to the Debtors, or refuse to provide such products or services on reasonable credit terms, the Debtors will face a major supply disruption and will be forced to incur significant costs to find alternative suppliers (and, in many instances, may not be able to find alternative suppliers) or will be forced to completely shut down their operations. Such a result would be detrimental to all parties in interest.

34.     The Debtors submit that the amount of the Critical Vendor Claims is small both in relation to the size of their estates and the value that will be lost if they are unable to pay such claims. The Debtors seek to pay the Critical Vendor Claims only to the extent that nonpayment of such claims would lead to a cessation in the delivery of products and/or services that are essential to the Debtors' manufacturing operations. Thus, the Debtors submit that the relief requested herein is narrowly tailored to facilitate the Debtors' reorganization process. Moreover, payment of the Critical Vendor Claims will not create an imbalance in the Debtors' cash flow because payment of these claims will allow the Debtors to continue manufacturing and selling

17

A-4044

their products, which, in turn, will generate additional revenues from which the Debtors and their creditors will benefit.

35.    Indeed, this Court and other courts have granted similar relief in other large chapter 11 cases. *See, e.g., In re Lear Corp., et al.*, Case No. 09-143226 (ALG) (Bankr. S.D.N.Y. July 7, 2009); *In re SemCrude, L.P., et al.*, Case No. 08-11525 (BLS) (Bankr. D. Del. July 23, 2008); *In re Syntax-Brillian Corp.*, Ch. 11 Case No. 08-11407 (BLS) (Bankr. D. Del. July 9, 2008); *In re JHT Holdings, Inc.*, Ch. 11 Case No. 08-11267 (BLS) (Bankr. D. Del. June 25, 2008); *In re Sharper Image Corp.*, Case No. 08-10322 (KG) (Bankr. D. Del. Feb. 20, 2008); *In re American Home Mortgage Holdings, Inc.*, Ch. 11 Case No. 07-11047 (CSS) (Bankr. D. Del. Aug. 7, 2007); *In re Meridian Automotive Systems*, 372 B.R. 710 (Bankr. D. Del. 2007); *In re Tweeter Home Entm't Group, Inc.*, Ch. 11 Case No. 07-10787 (PJW) (Bankr. D. Del. June 12, 2007); *In re Radnor Holdings. Corp.*, Ch. 11 Case No. 06-10894 (PJW) Bankr. D. Del. Aug. 23, 2006); *In re Werner Holding Co. (DE) Inc.*, Ch. 11 Case No. 06-10578 (KJC) (Bankr. D. Del. June 13, 2006); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 19-20 (Bankr. M.D. Fla. 2005); *In re Worldcom, Inc.*, Ch. 11 Case No. 02-13533 (ALG) (Bankr. S.D.N.Y. July 23, 2002); *In re Enron Corp.*, Ch. 11 Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Dec. 3, 2001); *In re Payless Cashways, Inc.*, 268 B.R. 543 (Bankr. W.D. Mo. 2001); *In re LTV Steel Co.*, Ch. 11 Case No. 00-43866 (RB) (Bankr. N.D. Ohio Dec. 29, 2000).

***Obligations Arising from the Postpetition Delivery of Materials Ordered by the Debtors in the Prepetition Period Should be Afforded Administrative Expense Status and Satisfied in the Ordinary Course of Business***

36.    As of the Commencement Date, the Debtors may have outstanding purchase orders (the "Outstanding Orders") with various vendors, including, without limitation, the Critical Vendors, for materials that are necessary to the operation of their business. As a consequence of the commencement of the chapter 11 cases, these vendors may be concerned that

18

delivery of materials after the Commencement Date pursuant to a prepetition Outstanding Order will render the vendor who makes such delivery a general unsecured creditor of the Debtors' estates with respect to such delivery. Accordingly, the vendors may refuse to ship or deliver materials to the Debtors.

37. Most obligations that arise in connection with the postpetition delivery of goods and services, including goods and services ordered prepetition, are in fact administrative expense priority claims pursuant to section 503(b) of the Bankruptcy Code. Accordingly, granting administrative expense priority status to any claims arising from the postpetition delivery of goods ordered prepetition will not provide vendors with any greater priority than they would otherwise be entitled to, and consequently, payment of their claims will not prejudice any other creditors or parties in interest. Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing Outstanding Orders to provide these vendors with assurance of such administrative expense priority status. The attendant disruption to the continuous and timely flow of materials, goods, and services to the Debtors could result in insufficient materials and services necessary to manufacture and deliver their bedding products.

38. Accordingly, the Debtors submit that all of their undisputed obligations arising from prepetition Outstanding Orders for which delivery occurs postpetition should be granted administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

## Bankruptcy Rule 6003

39. Pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court may grant relief within twenty (20) days after the filing of the petition regarding a motion to pay all or part of a prepetition claim only if such relief is necessary to avoid immediate and irreparable harm. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors' estates for the reasons set forth above.

19

Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

### Request for Waiver of Stay

40. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of ten (10) days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As set forth above, proposed payment on account of Critical Vendor Claims is essential to prevent irreparable damage to the Debtors' operations. Accordingly, the Debtors submit that ample cause exists to justify waiver of the ten (10) day stay imposed by Bankruptcy Rule 6004(h), and the notice requirements under Bankruptcy Rule 6004(a), if applicable.

### Notice

41. No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the Office of the United States Trustee for the District of Delaware; (ii) those creditors listed on the Debtors' Consolidated List of Creditors Holding 50 Largest Unsecured Claims; (iii) counsel to Deutsche Bank AG, New York Branch, as administrative agent for the Debtors' prepetition and postpetition secured lenders and Deutsche Bank Trust Company Americas, as administrative agent and collateral agent for the Debtors' postpetition secured lenders; (iv) counsel to the Purchasers; (v) counsel to the holders of a majority of Simmons Bedding's 7.875% Senior Subordinate Notes due 2014; (vi) counsel to the holders of a majority of Simmons Company's 10% Senior Discount Notes due 2014; (vii) the Debtors' majority equity holder; and (viii) Wachovia Bank, N.A. As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Del. Bankr. L.R. 9013-1(m). Due

20

to the exigencies of the circumstances surrounding this Motion, and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice need be provided.

### No Previous Request

42.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order, substantially similar to the proposed form of order attached hereto, granting the relief requested herein and such other and further relief as the Court may deem just.

Dated: November 16, 2009
      Wilmington, Delaware

Respectfully submitted,

By: _____
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

Michael F. Walsh
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

-and-

Lydia T. Protopapas
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

*Proposed Attorneys for the Debtors and Debtors in Possession*

22

RLF1 3504982v.1

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x
:
**In re**                                   :        **Chapter 11**
:
**SIMMONS BEDDING COMPANY,** *et al.,*     :        **Case No. _____ (____)**
:
           **Debtors.**                     :        **Joint Administration**
:        **Requested**
-------------------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND SERVICE PROVIDERS, AND (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY STATUS TO ALL UNDISPUTED OBLIGATIONS ARISING FROM POSTPETITION DELIVERY OF GOODS AND <u>SERVICES ORDERED PREPETITION</u>

Upon the motion (the "<u>Motion</u>") of Simmons Bedding Company and its affiliated

debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession

(collectively, the "<u>Debtors</u>"),[1] for an interim order (i) authorizing the Debtors to pay, in the

Debtors' discretion, the prepetition fixed, liquidated, and undisputed claims (collectively, the

"<u>Critical Vendor Claims</u>") of certain of the Debtors' critical vendors and service providers

(collectively, the "<u>Critical Vendors</u>"), (ii) granting administrative expense priority status to all

undisputed obligations arising from the postpetition delivery of goods and services ordered

prepetition, as more particularly described in the Motion, and (ii) scheduling a final hearing (the

"<u>Final Hearing</u>") on the relief requested in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334; and consideration of the Motion and the relief requested therein being a core proceeding

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Simmons Company (6221); Bedding Holdco Incorporated (5929); Simmons Bedding Company (5743); The Simmons Manufacturing Co., LLC (0960); Windsor Bedding Co., LLC (8616); World of Sleep Outlets, LLC (0957); Simmons Contract Sales, LLC (2016); Dreamwell, Ltd. (2419); Simmons Capital Management, LLC (2470); and Simmons Export Co. (1370). Each of the Debtors maintains its principal corporate office at One Concourse Parkway, Atlanta, Georgia 30328.

RLF1 3504982v.1

pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties

identified therein; and it appearing that no other or further notice need be provided; and the Court

having determined that the relief sought in the Motion is in the best interests of the Debtors, their

creditors and all parties in interest; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court, and after due deliberation and sufficient cause appearing

therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis.

2.      The Debtors are authorized, but not required, to make payments from

available funds, when feasible and appropriate, and in accordance with the terms and conditions

of the Plan Sponsor Agreement, to any or all of the Critical Vendors in amounts not to exceed, in

the aggregate, $8,000,000, on an interim basis and pending the Final Hearing, on account of the

Critical Vendors' valid prepetition claims, on the following conditions:

> (i)     all such claims shall be paid by check, wire transfer of funds, or
> issuance of a credit;

> (ii)    by accepting payment under the terms of this Order, each Critical
> Vendor shall continue extending credit and supplying materials,
> goods and/or services to the Debtors, and such credit must
> generally be provided on ordinary and acceptable terms and
> conditions that are at least as favorable or better than those
> provided to the Debtors one hundred eighty (180) days prior to the
> Commencement Date;[2] and

> (iii)   the Debtors shall transmit a copy of this Order to each Critical
> Vendor to which any payment permitted hereunder is made.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in
the Motion.

RLF1 3504982v.1

2

3.      Any Critical Vendor who accepts payment pursuant to this Order shall be deemed to have accepted the terms of this Order, and if the Critical Vendor thereafter does not provide the Debtors with customary trade terms during the pendency of these chapter 11 cases, then any payments of prepetition claims made after the Commencement Date may be deemed to be unauthorized postpetition transfers and, therefore, recoverable by the Debtors.

4.      The Debtors are authorized, but not required, to obtain written verification of the trade terms to be supplied by the Critical Vendors before issuing any payment pursuant to the terms of this Order.

5.      All applicable banks and other financial institutions maintaining the Debtors' disbursement accounts are hereby authorized and required, when requested by the Debtors, to receive, process, honor, and pay any checks, drafts or wire transfers dated prior to, on, or after the Commencement Date upon presentation or receipt thereof in respect of Critical Vendor Claims, and such banks are authorized to rely upon the representation of the Debtors as to which of such checks, drafts or wire transfers are in payment of the Critical Vendor Claims.

6.      A Final Hearing to resolve any objection to the Motion shall be held on December ___, 2009 at ___:___ _.m. (Prevailing Eastern Time); and any objections to entry of the order granting the relief requested in the Motion on a final basis shall be in writing and filed on or before five (5) business days prior to the Final Hearing and served on the parties as required by Rule 9006-1(c)(ii) of the Local Rules for the United States Bankruptcy Court District of Delaware.

7.      Nothing contained in this Order shall be construed as a waiver by the Debtors of their rights to contest any claim or invoice of a holder of a Critical Vendor Claim under applicable law.

8.      Nothing contained in this Order shall be deemed to constitute an assumption or adoption of any executory contract or prepetition or postpetition agreement between the Debtors and the holder of a Critical Vendor Claim, or to require the Debtors to make any of the payments authorized herein.

9.      The Debtors' undisputed obligations to any vendor that arise from the postpetition delivery of materials, goods, and services that were ordered in the prepetition period shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

10.     Nothing in this Order shall be deemed either a grant of administrative expense priority status to, or authority to pay, any amounts that are disputed in good faith by the Debtors, or in respect of products that are defective or are not received and accepted by the Debtors subsequent to the Commencement Date.

11.     Nothing in this Order shall prohibit the Debtors from seeking Court authority to increase the prepetition amounts authorized to be paid hereunder.

12.     The requirements of Bankruptcy Rule 6003 are satisfied.

13.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The requirements of Bankruptcy Rule 6004(a) are hereby waived.

RLF1 3504982v.1

15. This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

Dated: _____, 2009
      Wilmington, Delaware

                              _____
                              UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------------x
                                         :
In re                                    :      Chapter 11
                                         :
SIMMONS BEDDING COMPANY, et al.,         :      Case No. _____ (____)
                                         :
         Debtors.                        :      Joint Administration
                                         :      Requested
-----------------------------------------------------------------x
```

## FINAL ORDER (I) AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND SERVICE PROVIDERS, AND (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY STATUS TO ALL UNDISPUTED OBLIGATIONS ARISING FROM POSTPETITION DELIVERY OF GOODS AND SERVICES ORDERED PREPETITION

Upon the motion (the "Motion") of Simmons Bedding Company and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] for an order (i) authorizing the Debtors to pay, in the Debtors' discretion, the prepetition fixed, liquidated, and undisputed claims (collectively, the "Critical Vendor Claims") of certain of the Debtors' critical vendors and service providers (collectively, the "Critical Vendors"), and (ii) granting administrative expense priority status to all undisputed obligations arising from the postpetition delivery of goods and services ordered prepetition, as more particularly described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Simmons Company (6221); Bedding Holdco Incorporated (5929); Simmons Bedding Company (5743); The Simmons Manufacturing Co., LLC (0960); Windsor Bedding Co., LLC (8616); World of Sleep Outlets, LLC (0957); Simmons Contract Sales, LLC (2016); Dreamwell, Ltd. (2419); Simmons Capital Management, LLC (2470); and Simmons Export Co. (1370). Each of the Debtors maintains its principal corporate office at One Concourse Parkway, Atlanta, Georgia 30328.

1409; and due and proper notice of the Motion having been provided to the parties identified

therein; and it appearing that no other or further notice need be provided; and a hearing having

been held on November __, 2009 (the "Interim Hearing") to consider the relief requested in the

Motion on an interim basis; and the Court having entered an order granting the Motion on an

interim basis (the "Interim Order"); and the Court having determined that the relief sought in the

Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the

Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and upon all of the proceedings had before the Court, and

after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion and the relief set forth in the Interim Order are granted as set

forth herein on a final basis.

2.     In addition to the relief granted in the Interim Order, the Debtors are

authorized, but not required, to make payments from available funds, when feasible and

appropriate, and in accordance with the terms and conditions of the Plan Sponsor Agreement, to

any or all of the Critical Vendors in amounts not to exceed, in the aggregate , $13,000,000, on

account of the Critical Vendors' valid prepetition claims, on the following conditions:

> (iv)    all such claims shall be paid by check, wire transfer of funds, or
> issuance of a credit;

> (v)    by accepting payment under the terms of this Order, each Critical
> Vendor shall continue extending credit and supplying materials,
> goods and/or services to the Debtors, and such credit must
> generally be provided on ordinary and acceptable terms and
> conditions that are at least as favorable or better than those

provided to the Debtors one hundred eighty (180) days prior to the Commencement Date;[2] and

(vi)    the Debtors shall transmit a copy of this Order to each Critical Vendor to which any payment permitted hereunder is made.

3.    Any Critical Vendor who accepts payment pursuant to this Order shall be deemed to have accepted the terms of this Order, and if the Critical Vendor thereafter does not provide the Debtors with customary trade terms during the pendency of these chapter 11 cases, then any payments of prepetition claims made after the Commencement Date may be deemed to be unauthorized postpetition transfers and, therefore, recoverable by the Debtors.

4.    The Debtors are authorized, but not required, to obtain written verification of the trade terms to be supplied by the Critical Vendors before issuing any payment pursuant to the terms of this Order.

5.    All applicable banks and other financial institutions maintaining the Debtors' disbursement accounts are hereby authorized and required, when requested by the Debtors, to receive, process, honor, and pay any checks, drafts or wire transfers dated prior to, on, or after the Commencement Date upon presentation or receipt thereof in respect of Critical Vendor Claims, and such banks are authorized to rely upon the representation of the Debtors as to which of such checks, drafts or wire transfers are in payment of the Critical Vendor Claims.

6.    Nothing contained in this Order shall be construed as a waiver by the Debtors of their rights to contest any claim or invoice of a holder of a Critical Vendor Claim under applicable law.

7.    Nothing contained in this Order shall be deemed to constitute an assumption or adoption of any executory contract or prepetition or postpetition agreement

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

between the Debtors and the holder of a Critical Vendor Claim, or to require the Debtors to make any of the payments authorized herein.

8.      The Debtors' undisputed obligations to any vendor that arise from the postpetition delivery of materials, goods, and services that were ordered in the prepetition period shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

9.      Nothing in this Order shall be deemed either a grant of administrative expense priority status to, or authority to pay, any amounts that are disputed in good faith by the Debtors, or in respect of products that are defective or are not received and accepted by the Debtors subsequent to the Commencement Date.

10.      Nothing in this Order shall prohibit the Debtors from seeking Court authority to increase the prepetition amounts authorized to be paid hereunder.

11.      The requirements of Bankruptcy Rule 6003 are satisfied.

12.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.      The requirements of Bankruptcy Rule 6004(a) are hereby waived.

14.      This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

Dated: _____, 2009
         Wilmington, Delaware


         _____
         UNITED STATES BANKRUPTCY JUDGE

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D -- Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 192 of 458

Case 5:19-cv-10291-NSF Document 22-1 Filed 02/28/20 Page 191 of 359

1  WEIL, GOTSHAL & MANGES LLP
   Stephen Karotkin (*pro hac vice* pending)
2  (stephen.karotkin@weil.com)
   Jessica Liou (*pro hac vice* pending)
3  (jessica.liou@weil.com)
   Matthew Goren (*pro hac vice* pending)
4  (matthew.goren@weil.com)
   767 Fifth Avenue
5  New York, NY 10153-0119
   Tel: 212 310 8000
6  Fax: 212 310 8007
7
8  KELLER & BENVENUTTI LLP
   Tobias S. Keller (#151445)
9  (tkeller@kellerbenvenutti.com)
   Jane Kim (#298192)
10 (jkim@kellerbenvenutti.com)
   650 California Street, Suite 1900
11 San Francisco, CA 94108
   Tel: 415 496 6723
12 Fax: 650 636 9251
13
14 *Proposed Attorneys for Debtors*
   *and Debtors in Possession*
15
16         **UNITED STATES BANKRUPTCY COURT**
17          **NORTHERN DISTRICT OF CALIFORNIA**
            **SAN FRANCISCO DIVISION**
18
   **In re:**                              Case Nos.    19 - _____ (___)
                                                        19 - _____ (___)
19 **PG&E CORPORATION,**
                                           Chapter 11
20                          **Debtor.**
                                           **MOTION OF DEBTORS PURSUANT TO 11**
21 **Tax I.D. No. 94-3234914**             **U.S.C. §§ 105(a), 363(b), AND 503(b) AND**
                                           **FED. R. BANKR. P. 6003 AND 6004 (I) FOR**
22 ─────────────────────────────          **INTERIM AND FINAL AUTHORITY TO**
                                           **PAY PREPETITION OBLIGATIONS OWED**
   **In re:**                              **TO SHIPPERS, WAREHOUSEMEN, AND**
23                                          **OTHER LIEN CLAIMANTS, AND**
   **PACIFIC GAS AND ELECTRIC**            **(II) GRANTING ADMINISTRATIVE**
24 **COMPANY,**                            **EXPENSE PRIORITY STATUS FOR**
                                           **CLAIMS ARISING FROM GOODS**
25                          **Debtor.**    **DELIVERED TO THE DEBTORS**
                                           **POSTPETITION**
26 **Tax I.D. No. 94-0742640**
                                           Date:
27                                         Time:
                                           Place:
28

*Weil, Gotshal & Manges LLP*
*767 Fifth Avenue*
*New York, NY 10153-0119*

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor  Pg 193 of 458
Case: 19-cv-10291-NSF  Document 22-1  Filed 02/28/20  Page 192 of 590

1 PG&E Corporation ("**PG&E Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as

2 debtors and debtors in possession (collectively, "**PG&E**" or the "**Debtors**") in the above-captioned

3 chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this Motion (the "**Motion**"), pursuant to

4 sections 105(a), 363(b), and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and

5 Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) for

6 interim and final authority to pay the prepetition claims (the "**Lien Claims**") of certain third-party

7 shippers, warehousemen, vendors, and other service providers or contractors that may be permitted to

8 assert statutory or possessory liens against the Debtors' property and equipment if the Debtors fail to

9 pay the prepetition amounts owed to those parties for their various goods and services (collectively,

10 the "**Lien Claimants**"), and (ii) granting administrative priority status to all undisputed obligations of

11 the Debtors owing to third-party vendors and suppliers arising from the postpetition delivery of goods

12 ordered prior to the Petition Date (as defined below) and authorizing the Debtors to pay such obligations

13 in the ordinary course of business.

14 A proposed form of order granting the relief requested herein on an interim basis is annexed

15 hereto as **Exhibit A** (the "**Proposed Interim Order**").

16
17
18
19
20
21
22
23
24
25
26
27
28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

DEBTORS' MOTION TO PAY SHIPPERS,
WAREHOUSEMEN, AND OTHER LIEN CLAIMANTS

2

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor  Pg 194 of 458

Case 3:19-cv-10291-NSF  Document 22-1  Filed 02/28/20  Page 193 of 399

## TABLE OF CONTENTS

**Page**

I.      JURISDICTION .................................................................. 7

II.     BACKGROUND ................................................................. 7

III.    THE LIEN CLAIMANTS ....................................................... 7

IV.    THE PREPETITION ORDERS................................................. 11

V.     BASIS FOR RELIEF REQUESTED ........................................ 11

       A.     Payment of the Lien Claims is Warranted Under Sections 363(b) and 105(a) of the Bankruptcy Code.................................................... 12

       B.     The Obligations Owed Under the Prepetition Orders Are Administrative Priority Claims Under Section 503(b) of the Bankruptcy Code .................. 15

       C.     Banks Should Be Authorized to Receive, Process, Honor, and Pay Checks Issued and Transfers Requested to Pay the Lien Claims and Obligations Owed Under the Prepetition Orders.................................................... 16

VI.    RESERVATION OF RIGHTS ................................................ 17

VII.   IMMEDIATE ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 6003 .. 17

VIII.   REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS ................. 17

IX.    NOTICE ....................................................................... 18

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

DEBTORS' MOTION TO PAY SHIPPERS,
WAREHOUSEMEN, AND OTHER LIEN CLAIMANTS

3

18-23538-shl   Doc 7252-4   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 195 of 458

Case 1:19-cv-10291-NSF   Document 22-1   Filed 02/28/20   Page 194 of 350

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*In re Adams Apple, Inc.,*
   829 F.2d 1484 (9th Cir. 1987) .................................................................................14, 15

*In re Anchorage Nautical Tours, Inc.,*
   145 B.R. 637 (B.A.P. 9th Cir. 1992).................................................................................13

*In Matter of B & W Enterprises, Inc.,*
   713 F.2d 534 (9th Cir. 1983) ..........................................................................................14

*Berg & Berg Enterprises, LLC v. Boyle,*
   178 Cal. App. 4th 1020 (2009) ......................................................................................12

*F.D.I.C. v. Castetter,*
   184 F.3d 1040 (9th Cir. 1999) ......................................................................................12

*In re Chateaugay Corp.,*
   10 F.3d 944 (2d. Cir. 1993)...........................................................................................16

*In re Chateaugay Corp.,*
   80 B.R. 279 (S.D.N.Y. 1987) ........................................................................................14

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
   60 B.R. 612 (Bankr. S.D.N.Y. 1986) ..............................................................................6

*In re Curry & Sorensen, Inc.,*
   57 B.R. 824 (B.A.P. 9th Cir. 1986) ................................................................................13

*Czyzewski v. Jevic Holding Corp.,*
   137 S. Ct. 973 (2017) ....................................................................................................13

*In re Eagle–Picher Indus., Inc.*
   124 B.R. 1021 (Bankr. S.D. Ohio 1991).........................................................................13

*In re Financial News Network, Inc.*
   134 B.R. 732 (Bankr. S.D.N.Y. 1991).............................................................................13

*Gordon v. Hines (In re Hines),*
   147 F.3d 1185 (9th Cir. 1998) ......................................................................................15

*In re Gulf Air,*
   112 B.R. 152 (Bankr. W.D. La. 1989)............................................................................14

*In re Ionosphere Clubs, Inc.,*
   98 B.R. 174 (Bankr. S.D.N.Y. 1989) ..............................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 196 of 458
Case 1:19-cv-10291-NSF Document 22-1 Filed 02/28/20 Page 195 of 395

*In re Just For Feet, Inc.*,
  242 B.R. 821 (D. Del. 1999) ........................................................................................13

*Miltenberger v. Logansport, C&S W.R. Co.*,
  106 U.S. 286 (1882) ....................................................................................................13

*In re NewZoom, Inc.*,
  Case No. 15-31141-HB (Bankr. N.D. Cal. Sept. 11, 2015) .........................................15

*In re NVR L.P.*,
  147 B.R. 126 (Bankr. E.D. Va. 1992) ..........................................................................13

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,
  147 B.R. 650 (S.D.N.Y. 1992) .....................................................................................12

*In re Palau Corp.*,
  139 B.R. 942 (B.A.P. 9th Cir. 1992) ............................................................................16

*In re Pettit Oil Co.*,
  No. 13-47285, 2015 WL 6684225 (Bankr. W.D. Wash. Oct. 22, 2015) ......................15

*Scouler & Co., LLC v. Schwartz*,
  No. 11-CV-06377 NC, 2012 WL 1502762 (N.D. Cal. Apr. 23, 2012) ........................12

*In re Structurlite Plastics Corp.*,
  86 B.R. 922 (Bankr. S.D. Ohio 1988) ..........................................................................14

*In re Waste Systems Intern., Inc.*,
  280 B.R. 824 (Bankr. D. Del. 2002) .............................................................................16

**Statutes**

11 U.S.C. § 105 ......................................................................................................................11

11 U.S.C. § 105(a) ..........................................................................................................*passim*

11 U.S.C. 362(b)(3) ...............................................................................................................10

11 U.S.C. § 363 ........................................................................................................................6

11 U.S.C. § 363(b) ..........................................................................................................2, 5, 6

11 U.S.C. § 365 ......................................................................................................................17

11 U.S.C. § 503(b) ...................................................................................................5, 11, 12, 15

11 U.S.C. § 503(b)(1)(A) .......................................................................................................16

11 U.S.C. § 546(b) .................................................................................................................10

11 U.S.C. § 546(b)(1)(A) .......................................................................................................11

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

18-23538-shl  Doc 7252-4  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 197 of 458
Case 5:19-cv-01021-NSF  Document 22-1  Filed 02/28/20  Page 196 of 350

11 U.S.C. § 1107(a) .................................................................................7, 13

11 U.S.C. § 1108 ...........................................................................................7

28 U.S.C. § 157 ............................................................................................7

28 U.S.C. § 157(b) ........................................................................................7

28 U.S.C. § 1334 ..........................................................................................7

28 U.S.C. § 1408 ..........................................................................................7

28 U.S.C. § 1409 ..........................................................................................7

**Other Authorities**

B.L.R. 5011-1(a) ..........................................................................................7

Cal. Comm. § 7209 .....................................................................................10

Cal. Comm. § 7307 .......................................................................................9

Fed. R. Bankr. P. 2002 ................................................................................16

Fed. R. Bankr. P. 6003 ................................................................................17

Fed. R. Bankr. P. 6004 ................................................................................17

Fed. R. Bankr. P. 6004(a) ...........................................................................17

Fed. R. Bankr. P. 6004(h) ...........................................................................17

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges,*
    General Order 24 (N.D. Cal.) ....................................................................7

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 198 of 458
Case: 19-cv-10291-JSF    Document 22-1    Filed 02/28/20    Page 197 of 595

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "**Bankruptcy Local Rules**").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### II.   BACKGROUND

On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in either of the Chapter 11 Cases.

Additional information regarding the circumstances leading to the commencement of the Chapter 11 Cases and information regarding the Debtors' businesses and capital structure is set forth in the Declaration of Jason P. Wells, Senior Vice President and Chief Financial Officer of PG&E Corp., in support of the Debtors' chapter 11 petitions and related first day relief, filed contemporaneously herewith (the "**Wells Declaration**").

### III.   THE LIEN CLAIMANTS

In the ordinary course of their electricity and natural gas businesses, the Debtors routinely transact business with a number of entities that provide goods and services that may be permitted to assert statutory or possessory liens against the Debtors' property and equipment if the Debtors fail to pay for those parties' various goods or services.  The Lien Claimants generally fall into the following categories: (i) Shippers, (ii) Warehousemen, and (iii) Maintenance and Repairmen (each as defined below).  Each of these categories of Lien Claimants is discussed in further detail below.

As of the Petition Date, the Debtors estimate that they owe approximately $65,500,000 on account of Lien Claims, of which approximately $25,800,000 will come due in the first thirty (30) days

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153-0119

of the Chapter 11 Cases.[1]   A chart outlining the various categories and approximate amounts of the Lien Claims that the Debtors are seeking authority to pay pursuant to this Motion on an interim and final basis is set forth below:

| Categories | Approx. Amount Seeking to Pay on Interim Basis | Approx. Amount Seeking to Pay on Final Basis |
|---|---|---|
| Shippers | $1,800,000 | $6,000,000 |
| Warehouseman | $4,800,000 | $4,800,000 |
| Maintenance and Repairmen | $19,200,000 | $54,700,000 |
| **Total Approx. Lien Claims** | **$25,800,000** | **$65,500,000** |

*Shippers*.  In the ordinary course of business, the Debtors purchase natural gas (the "**Purchased Natural Gas**") from entities operating in all of the major natural gas basins in western North America, including basins in western Canada, the Rocky Mountains, and the southwestern United States. Although the Debtors own and operate over 6,400 miles of transmission pipelines, these pipelines do not connect directly to the Debtors' natural gas sources.  Therefore, it is necessary for the Debtors to rely on third-party transportation service providers (the "**Shippers**") to transport Purchased Natural Gas from their sources to the Debtors' transmission pipelines so that the Debtors may deliver natural gas to their residential, commercial, industrial, and agricultural customers and to fuel the Utility's gas-fired electric generation facilities in northern and central California.  The Debtors' ability to operate in the ordinary course, therefore, depends on their ability to take delivery of and transport Purchased Natural Gas in a timely fashion.  Additionally, the Debtors also rely on Shippers for the transportation of piping supplies, valves, replacement parts and other materials, all of which are integral to the day to day operations of their business.

---

[1] Concurrently herewith, the Debtors have filed a separate Motion seeking authority to pay, among other things, the prepetition claims of certain entities that are essential to protect the public health and safety and maintain the going-concern value of the Debtors' enterprise and the integrity of the Debtors' operations (the "**Operational Integrity Suppliers Motion**"). Although the Debtors have endeavored to provide accurate figures and calculations herein, there may, in some instances, be overlap between the amounts sought to be paid herein and the amounts sought to be paid pursuant to the Operational Integrity Suppliers Motion.

A-4066

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

Case 3:19-cv-10291-NSF Document 22-1 Filed 02/28/20 Page 199 of 390

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

If the Debtors fail to pay their Shippers in a timely manner, the Shippers may seek to assert statutory or possessory liens against Purchased Natural Gas or other materials and property that is in their possession with respect to any delinquent charges, potentially blocking the Debtors' access to the Purchased Natural Gas and such materials and property that is in transport.[2]  Further, in many cases, only one third-party transportation service provider is capable of transporting Purchased Natural Gas or other materials from a given source, leaving the Debtors with no choice but to rely on a particular Shipper.  With millions of dollars' worth of Purchased Natural Gas and other materials and property in transit at any given time, the cost of a disruption to the Debtors' operations that could be caused by the Shippers' exercising their rights likely far outweighs the prepetition amounts owed to the Shippers.

The Debtors estimate that the aggregate amount owed to Shippers for services provided during the period before the Petition Date is approximately $6,000,000, of which the Debtors are requesting authority to pay approximately $1,800,000 on an interim basis.

*Warehousemen*.  In the ordinary course of business, the Debtors store natural gas that they purchase in various storage facilities (the "**Stored Natural Gas**").  The Debtors procure gas storage capacity as a tool to ensure reliability, in order to inject and withdraw gas to ensure compliance with system requirements, and to balance their position and serve load.  Additionally, the Debtors store large diameter pipes used for natural gas pipelines, valves, natural gas replacement pipes and fittings, cables, wiring, and other parts for the electrical grid, and other property in certain third party warehouse facilities. Because the Debtors operate only three storage facilities of their own, all of which have

---

[2] For example, section 7307 of California's Commercial Code provides in pertinent part that:

> A carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law.

California Code, Commercial Code – COMM § 7307.

Case: 19-30088 Doc# 13 Filed: 01/29/19 Entered: 01/29/19 01:05:20 Page 9 of 18

A-4067

18-23538-shl  Doc 7252-4  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 201 of 458
Case 1:19-cv-10291-NSF  Document 22-1  Filed 02/28/20  Page 200 of 595

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    limited capacity, they rely on the services of these third-party storage providers

2    (the "**Warehousemen**").

3        If the Debtors fail to pay their Warehousemen in a timely manner, the Warehousemen may seek

4    to assert statutory or possessory liens against the Debtors' property that is in their possession;

5    potentially blocking the Debtors' access to the Stored Natural Gas and other materials that are

6    necessary for the business operations.[3]  The Debtors estimate that the aggregate amount owed to

7    Warehousemen for services provided during the period before the Petition Date is approximately

8    $4,800,000, all of which is estimated to come due during the first 30 days of the Chapter 11 Cases.

9        *Maintenance and Repairmen.*  Certain of the Lien Claimants provide maintenance and repair

10   services on the Debtors' vast network of production, transmission, and distribution facilities, including

11   the Debtors' generation units and gas facilities (the "**Maintenance and Repairmen**").   The

12   Maintenance and Repairmen, among other things, maintain, repair, refurbish, and replace components

13   of the Debtors' facilities and equipment and provide fuel and parts for the Debtors' generation units.

14   Many of the Maintenance and Repairmen are not under contract to perform future services, but rather

15   perform work and related services on an order-by-order basis.  If the Debtors become delinquent in

16   their payments for such goods provided or services rendered, the Maintenance and Repairmen may

17   assert liens, including mechanics' liens and materialman's liens, against the Debtors' property for the

18   amounts owed.   Additionally, those Maintenance and Repairmen that do have contracts with the

19   Debtors may have been granted liens or other interests pursuant to such agreements to secure amounts

20   owed to them under their relevant agreements.  Pursuant to section 362(b)(3) of the Bankruptcy Code,

21   the act of perfecting mechanics' liens, to the extent consistent with section 546(b) of the Bankruptcy

22   Code, is expressly excluded from the automatic stay.[4]  The Debtors estimate that the aggregate amount

23

24   _____

     [3] *See* California Code, Commercial Code – COMM § 7209 ("A warehouse has a lien against the

25   bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof

     in its possession for charges for storage or transportation, including demurrage and terminal charges,

26   insurance, labor, or other charges, present or future, in relation to the goods, and for expenses

     necessary for preservation of the goods or reasonably incurred in their sale pursuant to law.")

27

28   [4] Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers "are subject to any

     generally applicable law that . . . permits perfection of an interest in property to be effective against

DEBTORS' MOTION TO PAY SHIPPERS,                    10
WAREHOUSEMEN, AND OTHER LIEN CLAIMANTS

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 202 of 458

Case 5:19-cv-10291-NSF Document 22-1 Filed 02/28/20 Page 201 of 330

1   owed to Maintenance and Repairmen for goods and services provided during the period before the

2   Petition Date is approximately $54,700,000, of which the Debtors are requesting authority to pay

3   approximately $19,200,000 on an interim basis.

4        In addition to having secured claims, if the Debtors are unable to satisfy the Lien Claims as

5   requested herein, the Lien Claimants may refuse to provide critical ongoing goods or services to the

6   Debtors or may seek to enforce their rights and liens on account of such claims.  Accordingly, the

7   Debtors seek authority to pay and discharge, on a case-by-case basis, the Lien Claims that the Debtors

8   believe have created, or could give rise to, a lien against the Debtors' property or equipment, regardless

9   of whether such Lien Claimants already have actually perfected their interests.

10  **IV.    THE PREPETITION ORDERS**

11       In addition to the relief requested with respect to the Lien Claimants, as of the Petition Date,

12  the Debtors have certain prepetition purchase orders outstanding with various third-party vendors and

13  suppliers (the "**Vendors**") for goods ordered by the Debtors that have not yet been delivered by the

14  Vendors to the Debtors' facilities (the "**Prepetition Orders**").  These Vendors may be concerned that,

15  because the Debtors' obligations under the Prepetition Orders arose prior to the Petition Date, such

16  obligations will be treated as general unsecured claims in the Chapter 11 Cases.  Accordingly, certain

17  Vendors may refuse to provide goods purchased (or may recall shipments thereof) pursuant to the

18  Prepetition Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order

19  of the Court confirming that all undisputed obligations of the Debtors arising from the postpetition

20  delivery of goods subject to Prepetition Orders are afforded administrative expense priority status

21  under section 503(b) of the Bankruptcy Code.

22  **V.    BASIS FOR RELIEF REQUESTED**

23       To minimize the disruption that the Debtors' business operations will suffer if prepetition

24  obligations owed to Lien Claimants are not paid, the Debtors respectfully requests that the Court

25  authorize the Debtors to pay and honor the Lien Claims pursuant to sections 363(b) and 105(a) of the

26  Bankruptcy Code.  Additionally, the Debtors respectfully request that the Court confirm that all

27

28  an entity that acquires rights in such property before the date of perfection."  11 U.S.C. §
    546(b)(1)(A).

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY  10153-0119

Case 15-00058   Doc# 23  Filed 01/29/19  Entered 01/29/19 01:05:20   Page 11 of
18

1   undisputed obligations of the Debtors arising from the postpetition delivery of goods subject to the

2   Prepetition Orders are granted administrative expense priority status pursuant to section 503(b) of the

3   Bankruptcy Code and authorize and confirm that the Debtors may satisfy such obligations in the

4   ordinary course of business.

5   **A.     Payment of the Lien Claims is Warranted Under Sections 363(b) and 105(a) of the Bankruptcy Code**

6

7         Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after

8   notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

9   the estate." 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a court may authorize

10  a debtor to pay certain prepetition claims where a sound business purposes exists for doing so. *See In*

11  *re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The business judgment rule is

12  satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the

13  honest belief that the action taken was in the best interests of the company." *See, e.g., Official Comm.*

14  *of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656

15  (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also F.D.I.C. v.*

16  *Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999) (the business judgment rule "requires directors to

17  perform their duties in good faith and as an ordinarily prudent person in a like circumstance would").

18  "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision

19  made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."

20  *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R.

21  612, 616 (Bankr. S.D.N.Y. 1986). Courts in this District have consistently declined to interfere with

22  corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld

23  a board's decisions as long as such decisions were made in good faith. *Scouler & Co., LLC v. Schwartz*,

24  No. 11-CV-06377 NC, 2012 WL 1502762, at *4 (N.D. Cal. Apr. 23, 2012); *Berg & Berg Enterprises,*

25  *LLC v. Boyle*, 178 Cal. App. 4th 1020, 1046 (2009).

26         The Court may also rely on its equitable powers under section 105 of the Bankruptcy Code to

27  grant the relief requested in this Motion. Section 105(a) of the Bankruptcy Code empowers the Court

28  to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

DEBTORS' MOTION TO PAY SHIPPERS,                    12
WAREHOUSEMEN AND OTHER LIEN CLAIMANTS

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1   this title." 11 U.S.C. § 105(a). Accordingly, the Court may authorize the Debtors to pay the Lien

2   Claims because such relief is necessary for the Debtors to carry out their fiduciary duties under sections

3   1107(a) of the Bankruptcy Code. Under section 1107(a) of the Bankruptcy Code, "the debtor in

4   possession has the same fiduciary duties and liabilities as a Trustee. When the debtor is a corporation,

5   corporate officers and directors are considered to be fiduciaries both to the corporate debtor in

6   possession and to the creditors." *In re Anchorage Nautical Tours, Inc.*, 145 B.R. 637, 643 (B.A.P. 9th

7   Cir. 1992); *see also In re Curry & Sorensen, Inc.*, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986) ("[T]he

8   debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would

9   a trustee for a debtor out of possession.").

10           Numerous courts have acknowledged that payment of prepetition obligations, irrespective of

11   statutory priorities, may be necessary to realize the objectives of the Bankruptcy Code, such as the

12   preservation and enhancement of the value of a debtor's estate for the benefit of all creditors and other

13   stakeholders. *See, e.g., Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that

14   courts have approved distributions that are not consistent with ordinary priority rules in instances where

15   significant Code-related objectives, such as enabling a successful reorganization, would be served and

16   listing examples such as "first-day wage orders that allow payment of employees' prepetition wages,

17   critical vendor orders that allow payment of essential suppliers' prepetition invoices, and roll-ups that

18   allow lenders who continue financing the debtor to be paid first on their prepetition claims");

19   *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership

20   claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business

21   relations"); *In re Just For Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (allowing payment of prepetition

22   claim because debtor could not survive without maintaining customer relationship); *In re Financial

23   News Network, Inc.* 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991) (payment of prepetition claims allowed

24   if "critical to the debtor's reorganization"); *In re NVR L.P.*, 147 B.R. 126, 128 (Bankr. E.D. Va. 1992)

25   (holding that "proponent of the payment must show substantial necessity"); *In re Eagle–Picher Indus.,

26   Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (stating that payment must be "necessary to avert

27   a serious threat to the chapter 11 process").

28

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 205 of 458

Case 5:19-cv-10291-NSF Document 22-1 Filed 02/28/20 Page 204 of 558

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1   Although there is a Ninth Circuit decision which fails to recognize the grant of authority given

2   by the Bankruptcy Code to elevate certain pre-petition payments over others, that case is easily

3   distinguishable from these Chapter 11 Cases and the relief sought herein, as the pre-petition payments

4   at issue there were made by the debtor without notice, hearing, or authorization from the Bankruptcy

5   Court.  *In Matter of B & W Enterprises, Inc.*, 713 F.2d 534, 535 (9th Cir. 1983).   Furthermore, although

6   the B & W court noted that the "necessity of payment" doctrine was established in railroad

7   reorganization cases, *id.* at 535, numerous courts have extended the doctrine beyond the railroad

8   reorganization context. *See, e.g., In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio

9   1988) ("a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code]

10  to authorize payment of prepetition claims where such payment is necessary to permit the greatest

11  likelihood of survival of the debtors and payment of creditors in full or at least proportionately"); *In re*

12  *Gulf Air*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (finding that payment of prepetition wage and

13  benefit obligations was in the best interest of creditors and necessary for the successful reorganization

14  of the debtor and granting the debtor's motion to pay prepetition employee expenses); *In re Chateaugay*

15  *Corp.*, 80 B.R. 279, 285 (S.D.N.Y. 1987) (finding that bankruptcy courts have the authority to

16  authorize the debtor to pay certain prepetition claims).

17   Moreover, since *B & W*, the Ninth Circuit has noted in other instances that certain pre-petition

18  payments should be authorized regardless of whether they are priority payments under the Bankruptcy

19  Code.  *See In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987).   In that case, in rejecting the

20  appellants' argument that the cross-collateralization clause in a financing agreement violated the

21  "fundamental tenet of bankruptcy law that like creditors must be treated alike," the Court of Appeals

22  noted that the argument was "flawed because the fundamental tenet conflicts with another fundamental

23  tenet – rehabilitation of debtors, which may supersede the policy of equal treatment." *Id.*  The Ninth

24  Circuit further stated that:

25      [c]ases have permitted unequal treatment of pre-petition debts when necessary for
        rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital
26      malpractice premiums incurred prior to filing; (iii) debts to providers of unique and
27      irreplaceable supplies; and (iv) peripheral benefits under labor contracts.

28  *Id.*

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 206 of 458

Case 8:19-cv-01291-NSF Document 22-1 Filed 02/28/20 Page 205 of 350

1    Numerous Courts within the Ninth Circuit have followed the reasoning of *In re Adams Apple*

2    in holding that the payment of certain pre-petition claims is not categorically barred when the payments

3    promote the rehabilitation of the debtor. *See, e.g., In re Pettit Oil Co.*, No. 13-47285, 2015 WL

4    6684225, at *8 (Bankr. W.D. Wash. Oct. 22, 2015) (citing *In re Adams Apple Inc.* for proposition that

5    it "is permissible to treat prepetition debts unequally when necessary for rehabilitation."); *Gordon v.*

6    *Hines (In re Hines)*, 147 F.3d 1185, 1191 (9th Cir. 1998) (applying "essentially a doctrine of necessity"

7    to provide for the payment of the fees of debtor's counsel in chapter 7 cases because without this right

8    the "entire [chapter 7] system would suffer a massive breakdown"). Furthermore, courts within this

9    Circuit have granted relief substantially similar to that sought herein. *See, e.g., In re NewZoom, Inc.*,

10   Case No. 15-31141-HB (Bankr. N.D. Cal. Sept. 11, 2015) (approving motion for authority to pay

11   prepetition claims related to shipping and warehousing charges).

12   The relief requested by this Motion represents an exercise of sound business judgment and is

13   necessary to facilitate a successful reorganization. Authorizing the Debtors to pay the Lien Claims is

14   in the best interests of the Debtors, their estates, and all parties in interest. The Lien Claimants provide

15   valuable shipping, warehousing, and maintenance and repair services to the Debtors, and certain of the

16   Lien Claimants currently hold goods and property that are necessary to the Debtors' continued

17   operations. If the Debtors do not pay the Lien Claims, the Shippers and Warehousemen likely will

18   assert possessory liens on the Debtors' property and thereby prevent access to goods necessary to the

19   Debtors' ongoing operations. Similarly, the Maintenance and Repairmen will assert mechanics' and

20   materialman's liens on the Debtors' properties, thereby securing the outstanding amounts they are

21   owed. Under these circumstances, the Debtors believe that having the authority to satisfy these claims

22   not only will avoid any disruptions to their operations and the ability to provide utility service to their

23   customers, but should not prejudice any other parties in interest by reason of the lien rights held by the

24   Lien Claimants.

25   **B.    The Obligations Owed Under the Prepetition Orders Are Administrative Priority**

26   **Claims Under Section 503(b) of the Bankruptcy Code**

27   Pursuant to section 503(b) of the Bankruptcy Code, obligations that arise in connection with

28   the postpetition delivery of goods and services are afforded administrative expense priority because

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

A-4073

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 207 of 458

Case 19-cv-10291-NSF Document 22-1 Filed 02/28/20 Page 206 of 995

they benefit the estate postpetition. 11 U.S.C. § 503(b)(1)(A); *see also In re Waste Systems Intern., Inc.*, 280 B.R. 824, 826 (Bankr. D. Del. 2002) (holding that a non-debtor party to a prepetition consulting agreement was entitled to an administrative expense claim equal to the value of any postpetition benefit conferred on the estate); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d. Cir. 1993) (holding that an obligation arising from the postpetition performance relating to a prepetition transaction is entitled to administrative expense priority); *In re Palau Corp.*, 139 B.R. 942, 944 (B.A.P. 9th Cir. 1992) (holding that in order for a claim arising from a prepetition services contract to be entitled to administrative expense priority, the claimant must have rendered services postpetition). Accordingly, granting the relief sought herein with respect to the Prepetition Orders merely confirms the priority as to such claims, will not provide the Vendors with any greater priority than they would otherwise be entitled to and will not prejudice any party in interest. Absent such relief, the Debtors may be required to needlessly expend substantial time and effort reissuing the Prepetition Orders to provide the Vendors with assurance of administrative priority. This disruption to the continuous flow of goods and services to the Debtors would negatively impact the Debtors' ability to operate their businesses. Without the support of the Vendors, the Debtors will incur significant costs and lose valuable business relationships, to the detriment of all parties in interest. Therefore, the Court should confirm the administrative expense status of the Prepetition Orders.

C. **Banks Should Be Authorized to Receive, Process, Honor, and Pay Checks Issued and Transfers Requested to Pay the Lien Claims and Obligations Owed Under the Prepetition Orders**

The Debtors further request that the Court authorize, but not direct, the Banks to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks issued or to be issued and electronic funds transfers requested or to be requested by the Debtors relating to the Lien Claims and the Prepetition Orders. The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or transfer requests on account of any prepetition Lien Claims or Prepetition Orders dishonored or rejected as a result of the Chapter 11 Cases.

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

18-23538-shl  Doc 7352-4  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 208 of 458
Case 5:19-cv-10291-NSF  Document 22-1  Filed 02/28/20  Page 207 of 399

## VI. RESERVATION OF RIGHTS

Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## VII. IMMEDIATE ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 6003

Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. As set forth above and in the Wells Declaration, if the Debtors fail to pay the Lien Claims, the Lien Claimants could potentially assert liens against the Debtors' property for the amounts owed on account of the Lien Claims and may refuse to deliver and provide goods and future services to the Debtors. Thus, the Debtors' failure to pay the Lien Claims could severely impair the Debtors' ability to operate their businesses for the benefit of all parties in interest. Accordingly, the Debtors have satisfied the requirements for immediate entry of an order granting the relief requested herein pursuant to Bankruptcy Rule 6003.

## VIII. REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D -- Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 209 of 458

Case 3:19-cv-10291-NSF Document 22-1 Filed 02/28/20 Page 208 of 359

## IX. NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: James L. Snyder, Esq. and Timothy Laffredi, Esq.); (ii) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the Office of the California Attorney General; (vi) the California Public Utilities Commission; (vii) the Nuclear Regulatory Commission; (viii) the Federal Energy Regulatory Commission; (ix) the Office of the United States Attorney for the Northern District of California; (x) counsel for the agent under the Debtors' proposed debtor in possession financing facilities; (xi) the Banks; and (xii) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 29, 2019

**WEIL, GOTSHAL & MANGES LLP**

**KELLER & BENVENUTTI LLP**

By: /s/ Tobias S. Keller
      Tobias S. Keller

*Proposed Attorneys for Debtors
and Debtors in Possession*

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

**Exhibit A**

**[PROPOSED] Interim Order**

MOTION TO PAY SHIPPERS, WAREHOUSEMEN,
AND OTHER LIEN CLAIMANTS

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 211 of 458
Case: 19-cv-10291-NSF    Document 22-1    Filed 02/28/20    Page 210 of 390

WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice* pending)
(stephen.karotkin@weil.com)
Jessica Liou (*pro hac vice* pending)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice* pending)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re:** | Case Nos.       19 - _____ (___) |
| | 19 - _____ (___) |
| **PG&E CORPORATION,** | Chapter 11 |
| **Debtor.** | **[PROPOSED] INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(b) AND FED. R. BANKR. P. 6003 AND 6004 (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION OBLIGATIONS OWED TO SHIPPERS, WAREHOUSEMEN, AND OTHER LIEN CLAIMANTS, AND (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY STATUS FOR CLAIMS ARISING FROM GOODS DELIVERED TO THE DEBTORS POSTPETITION** |
| **Tax I.D. No. 94-3234914** | |
| **In re:** | |
| **PACIFIC GAS AND ELECTRIC COMPANY,** | |
| **Debtor.** | Date: |
| | Time: |
| **Tax I.D. No. 94-0742640** | Place: |

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

MOTION TO PAY SHIPPERS, WAREHOUSEMEN,
AND OTHER LIEN CLAIMANTS – EXHIBIT A

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1    Upon the Motion, dated _____, 2019 (the "**Motion**"),[1] of PG&E Corporation ("**PG&E**

2    **Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession

3    (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections

4    105(a), 363(b), and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules

5    6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) for interim

6    and final authority to pay the prepetition claims (the "**Lien Claims**") of certain third-party shippers,

7    warehousemen, vendors, and other service providers or contractors that may be permitted to assert

8    statutory or possessory liens against the Debtors' property and equipment if the Debtors fail to pay the

9    prepetition amounts owed to those parties for their various goods and services (collectively, the "**Lien**

10   **Claimants**"), and (ii) granting administrative priority status to all undisputed obligations of the Debtors

11   owing to third-party vendors and suppliers arising from the postpetition delivery of goods ordered prior

12   to the Petition Date and authorizing the Debtors to pay such obligations in the ordinary course of

13   business, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the

14   Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, *Order Referring*

15   *Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule

16   5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District

17   of California (the "**Bankruptcy Local Rules**"); and consideration of the Motion and the requested relief

18   being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

19   pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the

20   Motion as provided to the parties listed therein is reasonable and sufficient under the circumstances,

21   and it appearing that no other or further notice need be provided; and this Court having reviewed the

22   Motion and the Wells Declaration; and this Court having held a hearing on the Motion; and this Court

23   having determined that the legal and factual bases set forth in the Motion establish just cause for the

24   relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid

25   immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule

26   6003, and is in the best interests of the Debtors, their estates, creditors, shareholders, and all parties in

27   _____

28   [1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such
     terms in the Motion.

18-23538-shl 19-Doc 7252-4 SFF Filed 02/28/20 2 Entered 02/28/20 16:52:24 12 Exhibit D --
Case 1:19-cv-01291-NSF Document 22-1 Filed 02/28/20 Page 212 of 390
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 213 of 458

interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis, as provided herein.

2. The Debtors are authorized, but not directed, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, to satisfy prepetition Lien Claims in the ordinary course of business, upon such terms and in the manner provided in this Interim Order and the Motion; *provided, however*, that the prepetition amounts authorized to be paid pursuant to this paragraph shall not exceed $25,800,000 pending entry of a final order on the Motion.

3. The Debtors are authorized, but not directed, to pay Lien Claimants, regardless of whether their Lien Claims arose prior to or after the Petition Date; *provided, however*, that no such payment shall be deemed to be a waiver of rights regarding the extent, validity, perfection, or possible avoidance of any such liens.

4. For any payments made to Lien Claimants, the Lien Claimants receiving the payments shall take whatever action is necessary to remove such liens, if any, at such Lien Claimant's sole cost and expense.

5. All undisputed obligations of the Debtors arising from the postpetition delivery or shipment of goods by Vendors to the Debtors' facilities under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code, and the Debtors are authorized to pay such obligations in the ordinary course of business consistent with the Debtors' customary practices in effect prior to the Petition Date.

6. The Debtors shall maintain a matrix summarizing (i) the name of each Lien Claimant paid on account of Lien Claims, (ii) the amount paid to each Lien Claimant on account of its Lien Claim, and (iii) the goods or services provided by such Lien Claimant. This matrix shall be provided, upon request, to the Office of the United States Trustee and the professionals retained by any official committee appointed in the Chapter 11 Cases; *provided*, that the professionals for any such committee shall keep the matrix confidential and shall not disclose any of the information in the matrix to anyone, including any member of such committee, without prior written consent of the Debtors.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

18-23538-shl 19-Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Case 3:19-cv-01291-NSR Document 22-1 Filed 02/28/20 Page 213 of 990
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 214 of 458

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

7.      Banks and financial institutions are authorized, but not directed, at the Debtors' request, to receive, process, honor and pay, to the extent of funds on deposit, any and all checks issued or to be issued or electronic funds transfers requested or to be requested by the Debtors relating to the Lien Claims and the Prepetition Orders.

8.      The Debtors are authorized, but not directed, to issue new postpetition checks or effect new electronic funds transfers on account of the Lien Claims and the Prepetition Orders to replace any prepetition checks or electronic funds transfer requests that may be lost, dishonored, or rejected as a result of the commencement of the Chapter 11 Cases.

9.      Nothing contained in this Interim Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity of any lien or claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise any payment made pursuant to this Interim Order is not intended to be and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

10.      Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

11.      The requirements for immediate entry of this Interim Order pursuant to Bankruptcy Rule 6003(b) have been satisfied.

12.      The requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived.

13.      Notwithstanding the provisions of Bankruptcy Rules 4001(a)(2) and 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

14.      The Debtors are authorized to take all steps necessary or appropriate to carry out this Interim Order.

15.      A final hearing to consider the relief requested in the Motion shall be held on _____, ____ at _____ (Prevailing Pacific Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to _____, ____ at 4:00 p.m. (Prevailing Pacific Time).

Case 1:19-cv-10291-NSR   Document 22-1   Filed 02/28/20   Page 214 of 359

16.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

** END OF ORDER **

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Stephen Karotkin
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                          :

**In re**                             :         **Chapter 11**
                                            :

**TOPS HOLDING II CORPORATION,** *et al.*,    :         **Case No. [_____] (RDD)**
                                            :

**Debtors.**[1]                       :         **(Joint Administration Pending)**
                                            :

-------------------------------------------------------------x

**MOTION OF DEBTORS FOR INTERIM AND**
**FINAL AUTHORITY TO (A) PAY PREPETITION**
**CLAIMS OF SHIPPERS AND MISCELLANEOUS LIEN CLAIMANTS,**
**(B) CONFIRM ADMINISTRATIVE EXPENSE PRIORITY OF UNDISPUTED**
**COMMENCEMENT DATE ORDERS AND SATISFY SUCH OBLIGATIONS IN**
**THE ORDINARY COURSE OF BUSINESS AND (C) PAY PACA/PASA CLAIMS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Tops Holding II Corporation and its debtor affiliates, as debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**Tops**"),

respectfully represent as follows in support of this motion (the "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Tops Holding II Corporation (3709), Tops MBO Corporation (4249), Tops Holding LLC (2536), Tops Markets, LLC (2810), Tops Markets II Corporation (6401), Tops PT, LLC (2050), Tops Gift Card Company, LLC (6105), Erie Logistics LLC (9381), and TM1, LLC (2409).

## Background

1.      On the date hereof (the "**Commencement Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Buenzow Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*, sworn to on the date hereof (the "**Buenzow Declaration**"), which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.[2]

## Jurisdiction

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Buenzow Declaration.

18-23538-rdd  Doc 9023  Filed 12/25/19  Entered 12/25/19 16:53:24  Main Document
Pg 3 of 24

## Relief Requested

5.      By this Motion, pursuant to sections 363 and 503 of the Bankruptcy Code, the Debtors request entry of an order authorizing, but not directing, them to pay (a) up to $600,000 in Shipping Charges (b) up to $2.7 million in Miscellaneous Lien Claims (c) certain amounts in connection with Commencement Date Orders to suppliers, and (d) the PACA/PASA Claims (as each term is defined below).[3]

6.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**").

## The Debtors' Supply Chain and the Shippers

7.      In operating nearly 170 stores (the "**Supermarkets**"), the Debtors must ensure that the Supermarkets are continuously replenished with a supply of goods including, but not limited to, fresh produce, canned goods, baked goods, dairy products, eggs, meats, seafood, floral products, alcoholic beverages and various non-food products (the "**Merchandise**") for sale directly to the Debtors' customers.   Some suppliers deliver Merchandise directly to the Supermarkets.   Certain suppliers' Merchandise is delivered by third-party transporters (collectively, the "**Shippers**").

8.      In the event that the Debtors fail to reimburse the Shippers for charges incurred in connection with the transport of the Merchandise, various state laws permit the Shippers to assert a statutory lien against the Merchandise in their possession that is the subject of any delinquent charges, securing such charges and potentially blocking the Debtors' access to the Merchandise.   To maintain access to the Merchandise that is essential to the continued

---

[3] Contemporaneously herewith, the Debtors have sought authority, but not direction, to pay claims held by certain third-party vendors pursuant to the *Motion of Debtors for Authorization to Pay Certain Prepetition Obligations to Critical Vendors, Approval of Related Procedures, and Related Relief* (the "**Critical Vendors Motion**").   Through this Motion, the Debtors do not seek authority to satisfy any prepetition claim that may be paid pursuant to the Critical Vendors Motion.

viability of the Debtors' retail operations and preserve the value of the Merchandise, the Debtors seek authority to honor outstanding invoices related to the shipping services provided to the Debtors prior to the Commencement Date (collectively, the "**Shipping Charges**"). The Debtors estimate that, as of the Commencement Date, there are approximately $600,000 of Shipping Charges.

## Miscellaneous Lien Claimants

9.      The Debtors regularly make improvements and repairs to their property (including the Supermarkets and warehouse facilities owned by the Company) and the equipment that the Debtors use in the operation of their business, including refrigeration equipment, electrical systems, plumbing, elevator and escalator systems, and various types of food service equipment.  To do so, the Debtors contract with a number of third parties (collectively, the "**Miscellaneous Lien Claimants**" and, together with the Shippers, the "**Lien Claimants**") along with certain subcontractors (collectively, the "**Subcontractors**") to the Miscellaneous Lien Claimants.[4]

10.      The Miscellaneous Lien Claimants could potentially assert liens, including mechanic's liens, artisan's liens, and materialman's liens against the Debtors' property for amounts the Debtors owe to these third parties (collectively, the "**Miscellaneous Lien Claims**"). For example, the Debtors spend an average of approximately $831,000 per month on maintenance costs related to refrigeration equipment, all of which is subject to mechanics liens in the event of non-payment by the Debtors.  Pursuant to section 362(b)(3) of the Bankruptcy Code,

---

[4] Nothing contained herein is intended to be or shall be construed as an approval or assumption of the contracts between the Debtors and the Miscellaneous Lien Claimants, or any other agreement, contract, program, policy, or lease, under section 365 of the Bankruptcy Code.

the act of perfecting such a lien, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.[5]

11.     If the Debtors are unable to pay the Miscellaneous Lien Claims, the Debtors risk losing access to equipment and other property that is critical to the continued operation of the Supermarkets.  For example, even a short delay in repairs to a single Supermarket's refrigeration unit could result in lost product worth thousands of dollars and lost sales of significantly more.  Accordingly, the Debtors seek authority to pay and discharge, on a case-by-case basis, Miscellaneous Lien Claims that the Debtors believe have created, or could give rise to, a lien against the Debtors' property or equipment, regardless of whether such Miscellaneous Lien Claimants have already perfected their interests.[6]  The relief request herein includes authority to remit payments to the Miscellaneous Lien Claimants for the Subcontractors' maintenance work.

12.     The Debtors estimate that there are approximately $2.7 million of Miscellaneous Lien Claims as of the Commencement Date.

## Commencement Date Orders

13.     Prior to the Commencement Date, and in the ordinary course of business, the Debtors ordered Merchandise that will not be delivered until on or after the Commencement Date (the "**Commencement Date Orders**").  To avoid becoming general unsecured creditors of the Debtors' estates with respect to related Merchandise, certain suppliers may refuse to ship or transport such Merchandise or may recall such shipments with respect to such Commencement

---

[5] Under section 546(b), a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . . ." 11 U.S.C. § 546(b)(1)(A).

[6] However, to the extent that the Debtors make any payments with respect to a Miscellaneous Lien Claim, no such payment shall be deemed a waiver of the Debtors' rights to challenge the extent, validity, perfection, or possible avoidance of such liens.

Date Orders or refuse to deliver future orders unless the Debtors issue substitute purchase orders postpetition or pay for such Merchandise. To prevent any disruption to the Debtors' retail operations, and given that Merchandise delivered on, within 20 days prior to, and after the Commencement Date is afforded administrative expense priority under section 503(b) of the Bankruptcy Code, the Debtors seek an order (a) confirming administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed obligations of the Debtors arising from the acceptance of Merchandise subject to Commencement Date Orders and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

## PACA/PASA Claims

14.     To maintain the goodwill of the Debtors' customer base, which relies on the Debtors as a primary source of fresh fruits, produce, meats, and poultry, it is critical that the Debtors preserve the ability to source such Merchandise.

15.     The Debtors believe that a certain portion of the Merchandise sold in the Supermarkets may qualify as "perishable agricultural commodit[ies]" under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a et seq. ("PACA"). PACA's definition of "perishable agricultural commodity" generally includes "fresh fruits and fresh vegetables of every kind and character [whether or not frozen or packed in ice]." 7 U.S.C § 499a(b)(4). Under PACA, eligible produce suppliers and their agents (the "**PACA Claimants**") are the beneficiaries of a statutory trust (the "**PACA Trust**") in all of the buyer's perishable agricultural commodity inventory or other derivatives of perishable agricultural commodities, the products derived therefrom, and the proceeds related to any sale of the commodities or products (collectively, the "**PACA Trust Assets**"). See 7 U.S.C. § 499e(c)(2). PACA Trust Assets are preserved as a non-segregated floating trust and may be commingled

with non-trust assets.  PACA Trust Assets are not property of a debtor's estate.  *In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir. 1995).

16.     Similarly, certain of the Debtors' suppliers (the "**PASA Claimants**" and, together with the PACA Claimants, the "**PACA/PASA Claimants**") may be eligible to assert claims under the Packers and Stockyards Act of 1921 as amended, 7 U.S.C. § 181 et seq. ("**PASA**"), which prescribes the conditions of operations for businesses dealing in livestock and poultry.  PASA creates a statutory trust (the "**PASA Trust**" and, together with the PACA Trust, the "**Statutory Trusts**") scheme which is virtually identical to PACA in respect of delivery of livestock, meat products and related products, products derived therefrom and the proceeds related to the sale of such commodities or products (collectively, the "**PASA Trust Assets**" and, together with the PACA Trust Assets, the "**Trust Assets**").  See *In re W.L. Bradley Co.*, 75 B.R. 505, 509 (Bankr. E.D. Pa. 1987) ("The Legislative history expressly notes that the [PACA Trust] was modeled on the trust amendment to the Packers and Stockyards Act.").

17.     The PACA/PASA Claimants may be eligible to assert potential claims under the respective statutes for outstanding payments owed on account of applicable Merchandise (collectively, the "**PACA/PASA Claims**").  Because the PACA/PASA Claimants may impose a Statutory Trust on certain of the Merchandise and thereby obtain priority ahead of all other secured and unsecured creditors of the Debtors' estates, payment of valid PACA/PASA Claims will not prejudice or affect the amount available for distributions to other creditors of the Debtors.   Accordingly, the Debtors seek authority to pay PACA/PASA Claims in the ordinary course of business, pursuant to the terms of any contracts under which such claims arose.  The Debtors will include a summary of any PACA/PASA Claims paid pursuant to the relief requested herein in the Critical Vendor Matrix (as defined in the Critical Vendors Motion).

WEIL:\96457766\1\77738.0003

### Relief Requested Should Be Granted

**A.    Payment of Prepetition Claims of Shippers and Miscellaneous Lien Claimants Is in the Best Interest of the Debtors' Estates and Warranted Under the Doctrine of Necessity.**

18.    The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims if a sound business purpose exists for doing so.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174  (Bankr. S.D.N.Y. 1989) (finding that there must be a sound business justification to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims for suppliers).  The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted).  Courts in this District consistently have declined to interfere with corporate decisions absent a showing a bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions are attributable to any

"rational business purpose." *Integrated*, 147 B.R. at 656 (quoting *CRTF Corp. v. Federated Dep't Stores*, 683 F. Supp. 422, 436 (S.D.N.Y. 1988)).

19.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

20.     The Court may also authorize the payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business.  *See*, *e.g.*, *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991); *CoServ*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use § 105(a) of the Bankruptcy Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."); and *Just for Feet*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of

WEIL:\96547766\1\77738.0003

Bankruptcy Code provides a statutory basis for payment of prepetition claims under doctrine of necessity and noting that the Court has "power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11").

21.     This flexible approach is particularly critical where prepetition creditors—here, the Shippers and Miscellaneous Lien Claimants—provide vital services to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations.  Indeed, paying the Lien Claimants will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption.  The Lien Claimants may be unwilling to release the Merchandise in their possession to which they may be entitled to liens, because releasing possession of the Merchandise may convert their claims against the Debtors from secured to unsecured.  Therefore, unless the Court authorizes the Debtors to pay the Lien Claimants, it is unlikely the Debtors will continue to have access to the Merchandise in the possession of the Lien Claimants.  If the Lien Claimants possess lien rights or have the ability to exercise "self-help" remedies to secure payment of their claims, failure to satisfy the Lien Claimants' claims could have a material adverse effect on the Debtors' retail business operations to the detriment of the Debtors' creditors.

22.     Accordingly, the Debtors submit that the proposed relief with respect to the Lien Claimants' claims is warranted in these chapter 11 cases.

**B.     The Court Should Confirm That Commencement Date Orders Are Administrative Expense Priority Claims and Authorize The Debtors to Pay Such Claims.**

23.     Pursuant to section 503(b) of the Bankruptcy Code, Merchandise delivered on, within 20 days prior to, and after the Commencement Date are entitled to administrative expense priority.  Thus, granting the relief sought herein with respect to the Commencement Date Orders will not afford such claimants any greater priority than they otherwise would have if

the relief requested herein were not granted. Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Commencement Date Orders to provide certain suppliers with assurance of such administrative priority. The attendant disruption to the continuous and timely flow of the Merchandise to the Debtors' Supermarkets, and any resulting inability to keep the Supermarkets adequately stocked with Merchandise for the benefit of the Debtors' customers, would damage the Debtors' business reputation, erode the Debtors' customer base and ultimately lead to a loss of revenue, all to the detriment of the Debtors and their creditors. Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Commencement Date Orders and should authorize the Debtors to pay such orders in the ordinary course of business.

C.     **The Payment of PACA/PASA Claims Benefits the Debtors' Businesses and their Estates and Does Not Adversely Affect Any Parties in Interest.**

24.     The prompt and full payment of PACA/PASA Claims should be authorized by the Court. The disposition of Trust Assets is subject to the jurisdiction of the bankruptcy court. See *Monterey Mushrooms, Inc. v. Carolina Produce Distribs.*, Inc., 110 B.R. 207, 209 (W.D.N.C. 1990); *Allied Growers Co-Op, Inc. v. United Fruit and Produce Co.*, 86 B.R. 14, 16 (Bankr. D. Conn. 1988). Assets governed by PACA or PASA, however, do not constitute property of the Debtors' estates. See *In re Kornblum & Co.*, 81 F.3d 280, 284 (2nd Cir. 1995); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993). As a result, the distribution of assets to the PACA/PASA Claimants falls outside the priority scheme of the Bankruptcy Code, and the PACA/PASA Claimants holding PACA/PASA Claims are, thus, entitled to payment from the respective Statutory Trust ahead of the Debtors' other creditors. See, e.g., *In re Magic Rests., Inc.*, 205 F.3d 108, 110 (3d Cir. 2000); *Consumers Produce Co., Inc. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1377-78 (3d Cir. 1994).

WEIL:\96457766\1\77738.0003

Accordingly, the requested relief does not prejudice the Debtors' creditors.  In fact, payment made to PACA/PASA Claimants on account of PACA/PASA Claims is consistent with the intent of PACA and PASA and, moreover, will inure to the benefit of the Debtors and all parties in interest by (a) facilitating the continued purchase and receipt of fresh produce and other products and (b) avoiding potential disruption to the Debtors' business operations.

25.     Notably, in certain circumstances, shareholders, officers, or directors of a corporate entity who are in a position to control trust assets but breach the fiduciary duty to preserve those assets may be held personally liable under PACA or PASA, as applicable.  See *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir. 1997); see also *Goldman-Hayden Co. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 350 (5th Cir. 2000).  Thus, to the extent that any valid obligations arising under PACA or PASA remain unsatisfied by the Debtors, the Debtors' officers and directors or members may be subject to lawsuits during the pendency of these chapter 11 cases.  Any such lawsuit (and the ensuing potential liability) would distract the Debtors and their officers and directors from administering the Debtors' estates and, moreover, could lead to the assertion of substantial indemnification claims under the Debtors' governing documents, employment agreements, and applicable laws.

26.     Finally, payment of PACA/PASA Claims will inure to the benefit of the Debtors' estates by preserving goodwill between the Debtors and certain of the vendors of fresh produce, meat and poultry products.  Without the relief requested herein, the Debtors could be subject to numerous claims, adversary proceedings, and motions, including motions by PACA/PASA Claimants for relief from the automatic stay and/or complaints for injunctive relief, which would result in the unnecessary expenditure of time, effort, and money by the Debtors.

**Reservation of Rights**

27.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Debtors Have Satisfied Bankruptcy Rule 6003(b)**

28.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.  As described above, payment of the Warehousing Charges, Miscellaneous Lien Claims, Commencement Date Orders, and PACA/PASA Claims is integral to the Debtors' operations and is necessary to maintain the Debtors' operations, as well as the confidence and goodwill of the Debtors' customer base. Failure to implement the relief with respect to the Shippers, Miscellaneous Lien Claimants, Commencement Date Orders, and PACA/PASA Claimants during the first 21 days of these chapter 11 cases will jeopardize value for the Debtors' estates and creditors.  Moreover, it is the Debtors' business judgment that continuation of their positive relationship with the Shippers,

Miscellaneous Lien Claimants, and PACA/PASA Claimants is imperative to their continued operations. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### **Bankruptcy Rules 6004(a) and (h)**

29.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above and in the Buenzow Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

### **Notice**

30.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 2; (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition ABL Agent and the DIP ABL Agent, (a) Morgan, Lewis & Bockius LLP, One Federal St., Boston, MA 02110-1726 (Attn: Julia Frost-Davies, Esq. and Amelia C. Joiner, Esq.) and (b) Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178 (Attn: Matthew C. Ziegler, Esq.); (iv) counsel to U.S. Bank National Association, as trustee under that certain Indenture for Senior Notes due 2018, Senior Amortizing Notes due 2021, and Senior Secured Notes due 2022, Thompson Hine LLP, 335 Madison Avenue, New York, NY 10017 (Attn: Irving C. Apar, Esq. and Elizabeth Frayer, Esq.); (v) counsel to the Ad Hoc Noteholder Group and DIP Term Loan Lenders, Paul, Weiss, Rifkind,

WEIL:\96547766\1\77738.0003

Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 (Attn:

Alan W. Kornberg, Esq. and Lauren Shumejda, Esq.); (vi) counsel to the DIP Term Loan Agent,

Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, IL 60602

(Attn: D. Tyler Nurnberg, Esq. and Alan Glantz, Esq.); (vii) counsel to the New York State

Teamsters Conference Pension and Retirement Fund, Paravati, Karl, Green & DeBella, LLP, 520

Seneca Street, Suite 105, Utica, NY 13502 (Attn: Vincent M. DeBella, Esq.); (viii) counsel to

the International Brotherhood of Teamsters Local 264, Creighton Johnsen & Giroux, 560 Ellicott

Square, 295 Main Street, Buffalo, NY 14203 (Attn: Joseph Giroux, Esq.); (ix) the United Food

and Commercial Workers International Union, Local One, 5911 Airport Road, Oriskany, NY

13424 (Attn: Robert E. Smith, Esq.); (x) United Food and Commercial Workers International

Union, Local 23, 345 Southpoint Blvd, Canonsburg, PA 15317 (Attn: Tony Helfer); (xi) United

Food and Commercial Workers International Union, Local 464, 245 Paterson Avenue, Little

Falls, NJ 07424 (Attn: John Niccollai); (xii) United Food and Commercial Workers

International Union, Local 464A, 245 Paterson Avenue, Little Falls, NY 7424 (Attn: Richard

Whalen); (xiii) United Food and Commercial Workers International Union, Local 1262, 1389

Broad Street, Clifton, NJ 07013 (Attn: Harvey Whille); (xiv) United Food and Commercial

Workers International Union, Local 1500, 425 Merrick Avenue, Westbury, NY 11590 (Attn:

Tony Speelman); (xv) United Food and Commercial Workers International Union, Local 1776,

3031 Walter Road, Plymouth Meeting, PA 19462 (Attn: Michelle Kessler); (xvi) the Internal

Revenue Service; (xvii) the United States Attorney's Office for the Southern District of New

York; (xviii) the Banks; and (xix) the attorneys for C&S Wholesale Grocers, Inc. (collectively,

the "**Notice Parties**"). The Debtors respectfully submit that no further notice is required.

31.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of interim and final orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: February 21, 2018
       New York, New York

*/s/* Sunny Singh _____
WEIL, GOTSHAL & MANGES LLP

767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007
Ray C. Schrock, P.C.
Stephen Karotkin
Sunny Singh

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

WEIL:\96457766\1\77738.0003

# Exhibit A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
In re                                                   :        **Chapter 11**
:
**TOPS HOLDING II CORPORATION**, *et al.*,              :        **Case No. [_____] (RDD)**
:
Debtors.[1]                                             :        **(Jointly Administered)**
:
-----------------------------------------------------------------x

### INTERIM ORDER AUTHORIZING
### DEBTORS TO (A) PAY PREPETITION CLAIMS OF
### SHIPPERS AND MISCELLANEOUS LIEN CLAIMANTS,
### (B) CONFIRM ADMINISTRATIVE EXPENSE PRIORITY OF UNDISPUTED
### COMMENCEMENT DATE ORDERS AND SATISFY SUCH OBLIGATIONS
### IN THE ORDINARY COURSE OF BUSINESS AND (C) PAY PACA/PASA CLAIMS

Upon the motion (the "**Motion**")[2] of Tops Holding II Corporation and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**" or "**Tops**"), pursuant to sections 363 and 503 of title 11 of the

United States Code (the "**Bankruptcy Code**"), for an order authorizing, but not directing, the

Debtors to pay up to (a) $600,000 in Shipping Charges, (b) $2.7 million in Miscellaneous Lien

Claims, (c) certain amounts in connection with Commencement Date Orders to suppliers, and (d)

the PACA/PASA Claims, all as more fully set forth in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Tops Holding II Corporation (3709), Tops MBO Corporation (4249), Tops Holding LLC (2536), Tops Markets, LLC (2810), Tops Markets II Corporation (6401), Tops PT, LLC (2050), Tops Gift Card Company, LLC (6105), Erie Logistics LLC (9381), and TM1, LLC (2409).

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice

Parties; and such notice having been adequate and appropriate under the circumstances, and it

appearing that no other or further notice need be provided; and the Court having reviewed the

Motion; and the Court having held a hearing to consider the relief requested in the Motion on an

interim basis (the "**Hearing**"); and upon the Buenzow Declaration, filed contemporaneously with

the Motion, and the record of the Hearing; and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and it

appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable

harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the

best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the

proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor,

## IT IS HEREBY ORDERED THAT

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay the prepetition

Shipping Charges in an aggregate amount not to exceed $600,000; provided that, the Debtors are

authorized, but not directed, to pay or honor only amounts or obligations that are or become due

and payable between the Commencement Date and the date that a final order on the Motion is

entered, unless otherwise ordered by the Court.

3.      The Debtors, in their sole discretion, shall undertake appropriate efforts to

cause the Shippers to acknowledge in writing that payment of their respective claims is

conditioned upon such Shippers continuing to supply services to the Debtors on trade terms that,

at a minimum, such Shippers provided to the Debtors on a historical basis prior to the

Commencement Date, or such other trade practices and programs that are at least as favorable to the Debtors as those in effect during such time, and the Debtors reserve the right to negotiate new trade terms with any Shippers as a condition to payment of any such claim.

4.       The Debtors are authorized, but not directed, to pay prepetition amounts owed on account of any Miscellaneous Lien Claims in an aggregate amount not to exceed $2.7 million; and provided that the Debtors are authorized, but not directed, to pay only amounts due and payable as of the Commencement Date and amounts that are or become due and payable between the Commencement Date and the date that a final order on the Motion is entered, unless otherwise ordered by this Court; and provided further that the Debtors are not authorized to pay unless the applicable party who has the potential to assert Miscellaneous Lien Claims against the Debtors and their property if the Debtors fail to pay for the goods or services rendered has perfected or, in the Debtors' business judgment, is capable of perfecting or may be capable of perfecting in the future, one or more liens in respect of such claim; and provided further that such payment shall not be deemed to be a waiver of the Debtors' rights to challenge the extent, validity, perfection or possible avoidance of the related liens and payments.

5.       The Debtors may condition, in their sole discretion, payment of Miscellaneous Lien Claims on the agreement of Miscellaneous Lien Claimants to continue supplying goods and services to the Debtors on the same trade terms given to them prior to the Commencement Date or upon new trade terms (to the extent agreed to by the Debtors and the Miscellaneous Lien Claimant, the "**Agreed Terms**").

6.       To the extent a Miscellaneous Lien Claimant fails to comply with the Agreed Terms, the Debtors may, in their sole discretion, cause (a) any payment made to such Miscellaneous Lien Claimant on account of its asserted lien claim to be deemed to have been in

payment of then outstanding postpetition obligations owed to the Miscellaneous Lien Claimant and (b) the Miscellaneous Lien Claimant shall be required to immediately repay to the Debtors any payment made to it on account of its asserted lien claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or otherwise.

7.      Neither the Debtors nor any other party in interest concedes that any liens (contractual, common law, statutory or otherwise) satisfied pursuant to this Interim Order are valid, and the Debtors expressly reserve the right to contest the extent, validity or perfection or seek the avoidance of all such liens.

8.      All undisputed amounts relating to Commencement Date Orders are hereby granted postpetition administrative expense priority pursuant to section 503(b) of the Bankruptcy Code and the Debtors are authorized, but not directed, to pay such amounts in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

9.      The Debtors are hereby authorized to pay PACA/PASA Claims in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

10.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of the Shipping Charges, Miscellaneous Lien Claims, and Commencement Date Orders to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

11.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the final hearing to consider the relief requested in the Motion (the "**Final Hearing**").

12.     Notwithstanding anything to the contrary contained herein, any payments made or to be made by the Debtors under this Interim Order, and any authorization contained in this Interim Order, shall be compliance with, and shall be subject to any order approving the Debtors' postpetition financing facilities and/or use of cash collateral, and the documentation in respect of any such postpetition financing facilities.

13.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

14.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

15.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

16.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

17.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

18.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

19.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

20.     The Final Hearing shall be held on _____, **2018, at _____ (Prevailing Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Ray C. Schrock, P.C.; Stephen Karotkin, Esq.; and Sunny Singh, Esq.); (ii) counsel to the Prepetition ABL Agent and the DIP ABL Agent, (a) Morgan, Lewis & Bockius LLP, One Federal St., Boston, MA 02110-1726 (Attn:  Julia Frost-Davies, Esq. and Amelia C. Joiner, Esq.) and (b) Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178 (Attn: Matthew C. Ziegler, Esq.); (iii) counsel to U.S. Bank National Association, as trustee under that certain Indenture for Senior Notes due 2018, Senior Amortizing Notes due 2021, and Senior Secured Notes due 2022, Thompson Hine LLP, 335 Madison Avenue, New York, NY 10017 (Attn:  Irving C. Apar, Esq. and Elizabeth Frayer, Esq.); (iv) counsel to the Ad Hoc Noteholder Group and DIP Term Loan Lenders, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064 (Attn:  Alan W. Kornberg, Esq. and Lauren Shumejda, Esq.); and (v) counsel to the DIP Term Loan Agent, Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, IL 60602 (Attn: D. Tyler Nurnberg, Esq and Alan Glantz, Esq.), in each case, so as to be actually received on or prior to **4:00 p.m. (Prevailing Eastern Time) on _____2018**.

WEIL:\96457766\1\77738.0003

Dated: _____, 2018
      White Plains, New York

_____
UNITED STATES BANKRUPTCY JUDGE

WEIL:\96457766\1\77738.0003

Ray C. Schrock, P.C.
Stephen Karotkin
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------x
                                         :

**In re**                             :

                           :       **Chapter 11**

**BREITBURN ENERGY**   :

**PARTNERS LP,** *et al.*,   :       **Case No. 16-_____ (___)**

                           :

                 **Debtors.**[1] :       **(Joint Administration Pending)**

                           :

----------------------------------------------------x

**MOTION OF DEBTORS PURSUANT**
**TO 11 U.S.C. §§ 363(c)(1) AND 503(b)(1)(A) FOR**
**ENTRY OF ORDER GRANTING ADMINISTRATIVE**
**EXPENSE STATUS TO UNDISPUTED OBLIGATIONS**
**TO VENDORS ARISING FROM POSTPETITION DELIVERY OF**
**GOODS AND SERVICES ORDERED PREPETITION AND AUTHORIZING**
<u>**DEBTORS TO PAY SUCH OBLIGATIONS IN ORDINARY COURSE OF BUSINESS**</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Breitburn Energy Partners LP (9953); Breitburn GP LLC (9948); Breitburn Operating LP (5529); Breitburn Operating GP LLC (5525); Breitburn Management Company LLC (2858); Breitburn Finance Corporation (2548); Alamitos Company (9156); Beaver Creek Pipeline, L.L.C. (7887); Breitburn Florida LLC (7424); Breitburn Oklahoma LLC (4714); Breitburn Sawtelle LLC (7661); Breitburn Transpetco GP LLC (7222); Breitburn Transpetco LP LLC (7188); GTG Pipeline LLC (3760); Mercury Michigan Company, LLC (3380); Phoenix Production Company (1427); QR Energy, LP (3069); QRE GP, LLC (2855); QRE Operating, LLC (9097); Terra Energy Company LLC (9616); Terra Pipeline Company LLC (3146); and Transpetco Pipeline Company, L.P. (2620). The Debtors' mailing address is 707 Wilshire Boulevard, Suite 4600, Los Angeles, California 90017.

16-11390-smb   Doc 6291   Filed 05/03/18   Entered 05/03/18 16:46:20   Main Document
Pg 2 Motion   Pg 2 of 30

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Breitburn Energy Partners LP and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

## Background

1. On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

3. Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of James G. Jackson Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York and in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, which has been filed with the Court contemporaneously herewith.

## Jurisdiction

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

16-11895-smb Doc 6291 Filed 05/04/16 Entered 05/04/16 16:52:24 Page 41 of 80 Document Pg 3 of 10

**Relief Requested**

5.      Pursuant to sections 363(c)(1) and 503(b)(1)(A) of the Bankruptcy Code, the Debtors seek authority to (i) grant administrative priority status to all undisputed obligations of the Debtors owing to Vendors (as hereinafter defined) arising from the postpetition delivery of goods and services ordered prior to the Petition Date and (ii) pay such obligations in the ordinary course of business.

6.      A proposed form of order granting the relief herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

**The Debtors' Obligations to Vendors**

7.      In connection with the normal operation of their business, the Debtors rely on numerous vendors and suppliers (the "**Vendors**") to provide the Debtors with parts, inventory, supplies, and other goods (the "**Goods**") for use in the regular operation of the Debtors' business.  The majority of goods are shipped by Vendors to the Debtors' site of operations located throughout the numerous states where the Debtors produce oil and gas. Goods are also shipped by Vendors to the Debtors' offices in Los Angeles, California and Houston, Texas.

8.      As of the Petition Date, the Debtors have certain prepetition purchase orders (the "**Prepetition Orders**") outstanding with various Vendors for Goods ordered by the Debtors.  As a consequence of the commencement of these chapter 11 cases, the Vendors may be concerned that the obligations arising from Goods purchased before the Petition Date pursuant to Prepetition Orders that are delivered to the Debtors postpetition will render the Vendors holders of general unsecured claims against the Debtors' estates for such shipments.  Accordingly, Vendors may refuse to provide Goods to the Debtors (or may recall shipments thereof) unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court (i) providing

that all undisputed obligations of the Debtors arising from the postpetition delivery of Goods subject to Prepetition Orders are afforded administrative expense priority status under section 503(b) of the Bankruptcy Code and (ii) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

9.      While it is difficult to estimate the total amount due and owing under the Prepetition Orders for Goods ordered prepetition for which delivery will not occur until after the Petition Date, the Debtors submit that the total amount to be paid to the Vendors in connection therewith, if the relief requested herein is granted, is *de minimis* compared with the importance and necessity of the Goods.

## **Basis for Relief Requested**

10.     The Debtors submit that the relief requested herein will help ensure a continuous supply of Goods necessary for the successful operation and reorganization of the Debtors' business.

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority status.  *See, e.g.*, *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956 (2d Cir. 1993) ("a claim will be afforded priority 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business'") (quoting *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986) (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)); *In re Blockbuster Inc.*, No. 10-14997, 2010 WL 5559538, at *3 (Bankr. S.D.N.Y. Oct. 27, 2010) (final order ruling that the "Debtors' undisputed obligations . . . that arise from the postpetition delivery of materials, goods, and services that were ordered in the prepetition period shall have administrative expense priority

status pursuant to section 503(b) of the Bankruptcy Code."). Thus, the granting of the relief requested herein will not provide the Vendors with any greater priority than they otherwise would have if the relief were not granted, and will not prejudice any other party in interest.

12. Absent such relief, however, the Debtors may be required to expend substantial time and effort re-issuing the Prepetition Orders to provide the Vendors with assurance of administrative priority status. The attendant disruption to the continuous flow of Goods to the Debtors could adversely affect the Debtors' ability to conduct their business operations.

13. Moreover, the Debtors' satisfaction of undisputed obligations owed to Vendors in respect of the Prepetition Orders consistent with their customary practices is equally important and is authorized under section 363(c)(1) of the Bankruptcy Code, which provides that a debtor in possession "may use property of the estate in the ordinary course of business without notice or a hearing." Without the support of these Vendors, the Debtors will incur significant costs and lose valuable business relationships to the detriment of all parties in interest. Moreover, any obstruction of the Debtors' ability to obtain or access Goods that are required by the Debtors in the ordinary course of business will result in the Debtors' inability to operate efficiently and have a significantly damaging effect on the Debtors' reorganization efforts.

14. Based upon the foregoing, the Debtors submit that the relief requested herein is necessary, appropriate, and in the best interest of the Debtors' estates and creditors and, therefore, should be granted.

**Reservation of Rights**

15. Nothing contained herein, including any payments made by the Debtors in respect of the Prepetition Orders, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate

party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Notice

16. Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 2 (Attn: Susan D. Golden, Esq. and Richard C. Morrissey, Esq.); (ii) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iv) Winston & Strawn LLP, as counsel to Wells Fargo Bank, National Association, administrative agent under (a) the proposed Debtor-in-Possession Credit Agreement and (b) that certain Third Amended and Restated Credit Agreement, dated as of November 19, 2014 (as amended); (v) Foley & Lardner LLP, as counsel to Delaware Trust Company, successor trustee under the indenture for the 9.25% Senior Secured Second Lien Notes due 2020; (vi) Kilpatrick, Townsend & Stockton LLP, as counsel to Wilmington Trust Company, successor trustee under the indentures for the 8.625% Senior Notes due 2020 and the 7.875% Senior Notes due 2022; (vii) Kirkland & Ellis LLP, as counsel to certain holders of the 9.25% Senior Secured Second Lien Notes due 2020; (viii) Milbank, Tweed, Hadley & McCloy LLP, as counsel to certain holders of the 8.625% Senior Notes due 2020 and the 7.875% Senior Notes due 2022; (ix) the Securities and Exchange Commission; (x) the Internal Revenue Service; and (xi) counterparties to the Debtors' derivative contracts (collectively, the "**Notice Parties**"). The Debtors submit that, in view of the facts and circumstances, such notice to the Notice Parties is sufficient and no other or further notice need be provided.

17.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just.

Dated:  May 15, 2016
        New York, New York

                              */s/ Ray C. Schrock, P.C.*
                              Ray C. Schrock, P.C.
                              Stephen Karotkin
                              **WEIL, GOTSHAL & MANGES LLP**
                              767 Fifth Avenue
                              New York, New York  10153
                              Telephone:  (212) 310-8000
                              Facsimile:   (212) 310-8007

                              *Proposed Attorneys for Debtors*
                              *and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
                              :

In re                          :

                              :      **Chapter 11**

**BREITBURN ENERGY**   :

**PARTNERS LP,** *et al.*,   :      **Case No. 16-_____ (___)**

                              :

        Debtors.[1]      :      **(Jointly Administered)**

                              :

-------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 363(c)(1)**
**AND 503(b)(1)(A) GRANTING ADMINISTRATIVE**
**EXPENSE STATUS TO UNDISPUTED OBLIGATIONS**
**TO VENDORS ARISING FROM POSTPETITION DELIVERY OF**
**GOODS AND SERVICES ORDERED PREPETITION AND AUTHORIZING**
**DEBTORS TO PAY SUCH OBLIGATIONS IN ORDINARY COURSE OF BUSINESS**

Upon the Motion, dated May 15, 2016 (the "**Motion**"),[2] of Breitburn Energy

Partners LP and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and

debtors in possession (collectively, the "**Debtors**"), pursuant to sections 363(c)(1) and

503(b)(1)(A) of the Bankruptcy Code, for an order (i) granting administrative expense status to

the Debtors' undisputed obligations to vendors (the "**Vendors**") arising from the postpetition

delivery of goods ordered in the prepetition period (the "**Prepetition Orders**") and (ii)

authorizing the Debtors to pay such obligations in the ordinary course of business, all as more

fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Breitburn Energy Partners LP (9953); Breitburn GP LLC (9948); Breitburn Operating LP (5529); Breitburn Operating GP LLC (5525); Breitburn Management Company LLC (2858); Breitburn Finance Corporation (2548); Alamitos Company (9156); Beaver Creek Pipeline, L.L.C. (7887); Breitburn Florida LLC (7424); Breitburn Oklahoma LLC (4714); Breitburn Sawtelle LLC (7661); Breitburn Transpetco GP LLC (7222); Breitburn Transpetco LP LLC (7188); GTG Pipeline LLC (3760); Mercury Michigan Company, LLC (3380); Phoenix Production Company (1427); QR Energy, LP (3069); QRE GP, LLC (2855); QRE Operating, LLC (9097); Terra Energy Company LLC (9616); Terra Pipeline Company LLC (3146); and Transpetco Pipeline Company, L.P. (2620). The Debtors' mailing address is 707 Wilshire Boulevard, Suite 4600, Los Angeles, California 90017.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

relief requested therein in accordance with 28. U.S.C. §§ 157 and 1334 and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided to the Notice Parties, and it appearing

that no other or further notice need be provided; and a hearing having been held to consider the

relief requested in the Motion (the "**Hearing**"); and upon the *Declaration of James G. Jackson*

*Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*

*and in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, filed

contemporaneously with the Motion, the record of the Hearing and all of the proceedings had

before the Court; and the Court having found and determined that the relief sought in the Motion

is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that

the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted to the extent set forth herein; and it is

further

ORDERED that the undisputed obligations of the Debtors arising under the

Prepetition Orders shall be afforded administrative expense priority status pursuant to section

503(b)(1)(A) of the Bankruptcy Code; and it is further

ORDERED that, pursuant to section 363(c)(1) of the Bankruptcy Code, the

Debtors are authorized to pay in the ordinary course of their business all undisputed obligations

arising from the postpetition delivery or shipment by the Vendors of Goods under the Prepetition

Orders consistent with their customary practice; and it is further

ORDERED that nothing herein or in the Motion shall be construed as to limit, or in any way affect, the Debtors' ability to dispute or contest the amount of or basis for any claims against the Debtors arising in connection with the Prepetition Orders; and it is further

ORDERED that nothing contained herein, including any payments made by the Debtors in respect of the Prepetition Orders, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; and it is further

ORDERED that notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party; and it is further

ORDERED that the Debtors are authorized to take all action necessary to carry out this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2016
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

Harvey R. Miller
Stephen Karotkin
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                    :

**In re**                              :        **Chapter 11 Case No.**
                                      :

**SIGA TECHNOLOGIES, INC.,**      :        **14-_____ (___)**
                                      :

             **Debtor.**       :
                                      :

------------------------------------------------------------x

**MOTION OF DEBTOR FOR ENTRY OF ORDER**
**PURSUANT TO 11 U.S.C. §§ 363(c)(1) AND 503(b)(1)(A)**
**GRANTING ADMINISTRATIVE EXPENSE STATUS TO UNDISPUTED**
**OBLIGATIONS ARISING FROM POSTPETITION DELIVERY OF GOODS**
**AND SERVICES ORDERED PREPETITION AND AUTHORIZING DEBTOR**
**TO PAY SUCH OBLIGATIONS IN ORDINARY COURSE OF BUSINESS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        SIGA Technologies, Inc., as debtor and debtor in possession in the above-

captioned chapter 11 case (the "**Debtor**"), respectfully represents:

<u>**Background**</u>

        1.        On the date hereof (the "**Commencement Date**"), the Debtor commenced

with this Court a voluntary case under chapter 11 of title 11, United States Code (the

"**Bankruptcy Code**").  The Debtor is authorized to continue to operate its business and manage

its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.

2.        Information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the Affidavit of Eric A. Rose Pursuant to Rule 1007-2 of the Local Bankruptcy Rules of the Southern District of New York, sworn to on the date hereof, which has been filed with the Court on the date hereof.

**Jurisdiction**

3.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

4.        Pursuant to sections 363(c)(1) and 503(b)(1)(A) of the Bankruptcy Code, the Debtor seeks authority to (i) grant administrative priority status to all undisputed obligations of the Debtor owing to Vendors (as hereinafter defined) arising from the postpetition delivery or provision of goods and services ordered prior to the Commencement Date and (ii) pay such obligations in the ordinary course of business.

**The Debtor's Obligations to Vendors**

5.        In connection with the normal operation of its business, the Debtor relies on numerous vendors, suppliers and other parties (collectively, the "**Vendors**") to provide the Debtor with inventory, supplies, and other goods (collectively, the "**Goods**") and services (the "**Services**") for use in the regular operation of the Debtor's business.  As a consequence of the commencement of this chapter 11 case, the Vendors may be concerned that the obligations

2

arising from Goods and Services that were ordered prepetition and that are delivered to the

Debtor or performed postpetition will render the Vendors holders of prepetition, general

unsecured claims against the Debtor's estate. Accordingly, Vendors may refuse or be reluctant

to provide Goods and Services to the Debtor (or may recall shipments thereof) unless the Debtor

issues substitute requests postpetition or obtains an order of the Court (i) providing that all

undisputed obligations of the Debtor arising from the postpetition delivery or provision of Goods

and Services are afforded administrative expense priority status under section 503(b) of the

Bankruptcy Code and (ii) authorizing the Debtor to satisfy such obligations in the ordinary

course of business.

   6.  While it is difficult to estimate the total amount due and owing for Goods

and Services ordered prepetition for which delivery or the provision of Services that will not

occur until after the Commencement Date, the Debtor submits that the total amount to be paid in

connection therewith, if the relief requested herein is granted, is relatively de minimis compared

with the importance and necessity of the Goods and Services, and, in any event, such obligations

constitute costs and expense of administration of this chapter 11 case.

**The Relief Requested Is in the Best**
**Interests of the Debtor and the Debtor's Estate and Creditors**

   7.  The Debtor submits that the relief requested herein will help ensure a

continuous supply of Goods and Services necessary for the successful operation and

reorganization of the Debtor's business.

   8.  Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, obligations that

arise in connection with the postpetition delivery of necessary goods and the provision of

services are afforded administrative expense priority status. *See, e.g., Frito-Lay, Inc. v. LTV*

3

A-4119

*Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956 (2d Cir. 1993) ("a claim will be afforded

priority 'only to the extent that the consideration supporting the claimant's right to payment was

both supplied to and beneficial to the debtor-in-possession in the operation of the business'")

(quoting *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986)

(quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)); *In re Blockbuster Inc.*,

No. 10-14997, 2010 WL 5559538, at *3 (Bankr. S.D.N.Y. Oct. 27, 2010) (final order ruling that

the "Debtors' undisputed obligations . . . that arise from the postpetition delivery of materials,

goods, and services that were ordered in the prepetition period shall have administrative expense

priority status pursuant to section 503(b) of the Bankruptcy Code"). Thus, the granting of the

relief requested herein will not provide the Vendors with any greater priority than they otherwise

would have if the relief were not granted, and will not prejudice any other party in interest.

9.    Absent such relief, however, the Debtor may be required to expend

substantial time and effort re-issuing the prepetition orders or requests to provide the Vendors

with assurance of administrative priority status. The attendant disruption to the continuous flow

of Goods and Services to the Debtor could adversely affect the Debtor's ability to conduct its

business operations.

10.    Moreover, the Debtor's satisfaction of undisputed obligations owed to

Vendors consistent with its customary practices as requested herein is equally important and is

authorized under section 363(c)(1) of the Bankruptcy Code, which provides that a debtor in

possession "may use property of the estate in the ordinary course of business without notice or a

hearing." Without the support of these Vendors, the Debtor may incur significant costs and lose

valuable business relationships to the detriment of all parties in interest. Moreover, any

obstruction of the Debtor's ability to obtain or access Goods and Services that are required by the

Debtor in the ordinary course of business will result in the Debtor's inability to operate

efficiently and have a significantly damaging effect on the Debtor's business enterprise.

11.    Finally, any payments made by the Debtor to the Vendors should not be

deemed to constitute an assumption or adoption of any related agreement pursuant to section 365

of the Bankruptcy Code.  The Debtor reserves all of its rights under the Bankruptcy Code with

respect thereto.

12.    Based upon the foregoing, the Debtor submits that the relief requested

herein is necessary, appropriate, and in the best interest of the Debtor's estate and creditors and,

therefore, should be granted.

### Notice

13.    Notice of this Motion has been provided to (i) the Office of the United

States Trustee for the Southern District of New York, (ii) the Debtor's secured lender, and

(iii) the holders of the twenty (20) largest unsecured claims against the Debtor.  The Debtor

submits that, in view of the facts and circumstances, such notice is sufficient and no other or

further notice need be provided.

WEIL:\95075861\5\99980.0025

14. No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

WHEREFORE the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  New York, New York
        September 16, 2014

/s/ Stephen Karotkin
Harvey R. Miller
Stephen Karotkin
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

6

A-4122

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                     :

In re                         :          Chapter 11 Case No.
                                       :

SIGA TECHNOLOGIES, INC.,       :          14-_____ (___)
                                       :

                Debtor.         :
                                       :

------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 363(c)(1) AND 503(b)(1)(A) GRANTING ADMINISTRATIVE EXPENSE STATUS TO UNDISPUTED OBLIGATIONS ARISING FROM POSTPETITION DELIVERY OF GOODS AND SERVICES ORDERED PREPETITION AND AUTHORIZING DEBTOR TO PAY SUCH OBLIGATIONS IN ORDINARY COURSE OF BUSINESS

Upon the Motion, dated September 16, 2014 (the "**Motion**"),[1] of SIGA

Technologies, Inc., as debtor and debtor in possession (the "**Debtor**"), pursuant to sections

363(c)(1) and 503(b)(1)(A) of title 11, United States Code (the "**Bankruptcy Code**"), for entry

of an order granting administrative expense status to the Debtor's undisputed obligations arising

from the postpetition delivery of goods and provision of services, and authorizing the Debtor to

pay such obligations in the ordinary course of business, all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the Motion having been provided, and it appearing that no other or further notice need be

provided; and a hearing having been held to consider the relief requested in the Motion (the

"**Hearing**"); and upon the Affidavit of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2

and the record of the Hearing and all of the proceedings had before the Court; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtor, its estate, creditors, and all parties in interest, and that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

   ORDERED that the Motion is granted as provided herein; and it is further

   ORDERED that the undisputed obligations of the Debtor to Vendors with respect

to Goods or Services ordered or requested prior to the Commencement Date and delivered or

performed subsequent to the Commencement Date shall be afforded administrative expense

priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code; and it is further

   ORDERED that, pursuant to section 363(c)(1) of the Bankruptcy Code, the

Debtor is authorized to pay in the ordinary course of its business all undisputed obligations

described in the immediately preceding paragraph consistent with its customary practice; and it

is further

   ORDERED that nothing herein or in the Motion shall be construed as to limit, or

in any way affect, the Debtor's ability to dispute or contest the amount of or basis for any claims

against the Debtor; and it is further

   ORDERED that nothing in this Order or the Motion shall constitute an

assumption, adoption, or rejection by the Debtor of any executory contract or agreement between

the Debtor and any third party pursuant to section 365 of the Bankruptcy Code; and it is further

2

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated:   New York, New York
         September __, 2014

_____
United States Bankruptcy Judge

WEIL:\95075861\5\99980.0025

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Shai Y. Waisman

Attorneys for the Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
|   |   |   |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **FINLAY ENTERPRISES, INC.,** *et al.*, | : | **09-14873 (___)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTION 503(b) OF THE**
**BANKRUPTCY CODE GRANTING ADMINISTRATIVE PRIORITY STATUS**
**TO UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM THE**
**POSTPETITION DELIVERY OF GOODS AND SERVICES ORDERED IN THE**
**PREPETITION PERIOD AND AUTHORIZING THE DEBTORS TO PAY SUCH**
**OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Finlay Enterprises, Inc. ("Finlay Enterprises") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (together, "Finlay" or

the "Debtors"), respectfully represent:

**Background**

1.     On the date hereof (the "Commencement Date"), the Debtors each

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code").  The Debtors are authorized to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

2.      Contemporaneously herewith, the Debtors filed a motion seeking joint

administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Finlay's Businesses

4.      Founded in 1887 as a mail order jeweler, Finlay is one of the leading

retailers of fine jewelry in the United States.  Historically, Finlay operated in two business

segments: licensed departments in major department stores and stand-alone specialty jewelry

stores.  Today, Finlay sells a broad range of moderately-priced jewelry at approximately 77

department store locations and also operates approximately 106 stand-alone jewelry stores doing

business as Bailey, Carlyle, and L. Congress, Inc.

5.      As of July 4, 2009, the Debtors' unaudited consolidated financial

statements reflected assets totaling approximately $332 million and liabilities totaling

approximately $385 million.

6.      Additional information regarding the events leading up to the

Commencement Date and the facts and circumstances supporting the relief requested herein are

set forth in the Affidavit of Arthur E. Reiner Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

sworn to on August 5, 2009.

## Relief Requested

7.     By this Motion, the Debtors request an order pursuant to section 503(b) of the Bankruptcy Code granting administrative priority status to all undisputed obligations of the Debtors owing to Vendors (as defined herein) arising from the postpetition delivery of goods and services ordered in the prepetition period, and authorizing the Debtors to pay such obligations in the ordinary course of business.

## The Debtors' Obligations to Vendors

8.     In connection with the normal operation of their retail jewelry businesses, the Debtors rely on a number of vendors and suppliers including, but not limited to, diamond, pearl and other fine jewelry manufacturers, retailers, importers, wholesalers, and distributors (collectively, the "Vendors") to provide the Debtors with the fine jewelry that comprises the Debtors' inventory.

9.     As of the Commencement Date, the Debtors have certain prepetition purchase orders outstanding with various Vendors for goods and services ordered by the Debtors (the "Prepetition Orders").  On any given day, the Debtors may be awaiting delivery of millions of dollars in merchandise from Vendors.  As of the Commencement Date, the Debtors estimate approximately $1,300,000.00 of merchandise from Prepetition Orders has yet to be delivered from the Vendors.

10.     As a consequence of the commencement of these chapter 11 cases, Vendors may be concerned that goods shipped or services ordered prior to the Commencement Date pursuant to the Prepetition Orders, which will be delivered to the Debtors postpetition, will render the Vendors general unsecured creditors of the Debtors' estates with respect to such goods or services.  Vendors may refuse to ship such goods (or recall shipments) or perform services

with respect to such Prepetition Orders unless the Debtors issue substitute postpetition purchase

orders or obtain an order of the Court (i) providing that all undisputed obligations of the Debtors

arising from the postpetition delivery of goods and services subject to Prepetition Orders are

afforded administrative expense priority status under section 503(b) of the Bankruptcy Code and

(ii) authorizing the Debtors to satisfy such obligations in the ordinary course of their businesses.

The value of the merchandise in transit substantially outweighs the fees and charges owed to

Vendors on account of that merchandise.  Nothing in this Motion shall be deemed to affect the

rights any creditor may have pursuant to section 503(b)(9) of the Bankruptcy Code.

### Payment of Claims in Respect of Goods and Services Ordered Prepetition and Delivered Postpetition Is in the Best Interests of the Debtors and Their Estates

11.     Pursuant to section 503(b) of the Bankruptcy Code, most obligations that

arise in connection with the postpetition delivery of goods and services, including goods and

services ordered prepetition, are afforded administrative expense priority status because they

enhance the estate postpetition.  *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d Cir. 1993)

(holding an obligation arising from postpetition performance pursuant to a prepetition transaction

is entitled to administrative expense priority); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st

Cir. 1976) (same).  Thus, the relief sought herein with respect to goods and services ordered

prepetition and delivered postpetition will not provide the Vendors with any greater priority than

they otherwise would have if the relief herein were not granted, and will not prejudice any other

party in interest.

12.     Absent such relief, however, the Debtors may be required to expend

substantial time and effort reissuing the Prepetition Orders to provide the Vendors with

assurance of administrative priority status.  This would disrupt the Debtors' supply chain,

resulting in insufficient inventory with which to provide the Debtors' customers with the

products they expect, potentially harming customer confidence in the Debtors' ability to conduct business at this critical juncture.

13.    Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In addition, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  *Id*. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "Under 11 Section 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

14.    In a long line of well-established cases, federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g., Miltenberger v. Logansport Ry.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of such [crucial] business relations"); *In re Just for Feet, Inc.*, 242 B.R. 821 (D. Del. 1999) (court is authorized under section 105(a) to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's reorganization) (citing *In re Penn Central Transp. Co.*, 486 F.2d 519 (3d Cir. 1973)); *In re Columbia Gas Sys. Inc.*, 171 B.R. 189 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of

their business); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001)

("Since the enactment of the Code, various courts have permitted debtors-in-possession to pay

pre-petition debts on the grounds that payment of such claims was necessary to effectuate a

successful reorganization, or at least to give the debtor the opportunity to propose any type of

plan at all.").

        15.     The satisfaction of obligations owed in respect of the Prepetition Orders is

particularly important.  Without the payment of these obligations, the Debtors will incur

significant costs and may be unable to comply with customer deadlines to the detriment of all

parties in interest.  Moreover, any obstruction of the Debtors' ability to obtain or access goods

and/or services that are required by the Debtors in the ordinary course of their business will

result in the Debtors' inability to operate efficiently and will have a significantly damaging effect

on the Debtors' restructuring efforts.

        16.     Courts in this and other districts have granted similar relief in other

chapter 11 cases.  See, e.g., *In re Silicon Graphics, Inc.*, et al., Case No 06-10977 (BRL) (Bankr.

S.D.N.Y. May, 10, 2006) (Doc. No. 46); *In re Footstar, Inc.*, et al, Case No. 04-22350 (ASH)

(Bankr. S.D.N.Y. Mar. 3, 2004) (Doc. No. 44), (Bankr. S.D.N.Y. Mar. 31, 2004) (Doc. No. 257);

*In re Loral Space & Communications Ltd.*, et al., Case No. 03-41710 (RDD) (Bankr. S.D.N.Y.

July 16, 2003) (Doc. No. 41); and *In re WestPoint Stevens, Inc.*, Case No. 03-13532 (RDD)

(Bankr. S.D.N.Y. June 3, 2003) (Doc. No. 42).  The Debtors submit that similar authorization is

appropriate in these chapter 11 cases.

        17.     Authorization of the payment of all charges requested herein shall not be

deemed to constitute postpetition assumption or adoption of any of the related agreements with

Vendors pursuant to section 365 of the Bankruptcy Code.  The Debtors reserve all of their rights under the Bankruptcy Code with respect thereto.

18.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors, and therefore should be granted in these chapter 11 cases.

## Notice

19.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for General Electric Capital Corporation, as agent under that certain Fourth Amended and Restated Credit Agreement dated as of November 9, 2007, (iii) the attorneys for HSBC Bank USA, as trustee under that certain second lien indenture dated as of November 26, 2008 and that certain third lien indenture dated as of November 26, 2008, (iv) those creditors holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis), and (v) the U.S. Securities and Exchange Commission.  The Debtors submit that no other or further notice need be provided.

20.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  August 5, 2009
        New York, New York

/s/ Lori R. Fife
Lori R. Fife
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for the Debtors
and Debtors in Possession

09-14873-smb   Doc 1623   Filed 08/05/09   Entered 08/05/09 13:58:03   Main Document
Pg 9 of 19

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                   :

In re                           :        Chapter 11 Case No.
                                   :

**FINLAY ENTERPRISES, INC.,** *et al.*,   :        09-14873 (___)
                                   :

               **Debtors.**    :        **(Jointly Administered)**
                                   :
---------------------------------------------------------------x

**ORDER PURSUANT TO SECTION 503(b) OF THE BANKRUPTCY**
**CODE GRANTING ADMINISTRATIVE PRIORITY STATUS TO**
**UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM THE**
**POSTPETITION DELIVERY OF GOODS AND SERVICES ORDERED IN**
**THE PREPETITION PERIOD AND AUTHORIZING THE DEBTORS TO PAY**
**SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS**

Upon the motion, dated August 5, 2009 (the "Motion"), of Finlay Enterprises, Inc.

and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in

possession (together, "Finlay" or the "Debtors"), for an order pursuant to section 503(b) of the

Bankruptcy Code granting administrative priority status to undisputed obligations to vendors

("Vendors") arising from the postpetition delivery of goods and services on account of

prepetition orders (the "Prepetition Orders") and authorizing the Debtors to pay such obligations

in the ordinary course of business, all as more fully described in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided to (i) the Office of the United States Trustee for the Southern District of New York,

(ii) the attorneys for General Electric Capital Corporation, as agent under that certain Fourth

Amended and Restated Credit Agreement dated as of November 9, 2007, (iii) the attorneys for

HSBC Bank USA, as trustee under that certain second lien indenture dated as of November 26,

2008 and that certain third lien indenture dated as of November 26, 2008, (iv) those creditors

holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis),

and (v) the U.S. Securities and Exchange Commission, and it appearing that no other or further

notice need be provided; and a hearing (the "Hearing") having been held to consider the relief

requested in the Motion; and the appearances of all interested parties having been noted in the

record of the Hearing; and upon the Affidavit of Arthur E. Reiner Pursuant to Rule 1007-2 of the

Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions

and Applications, sworn to on August 5, 2009, and all of the proceedings had before the Court;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the Debtors, their estates and creditors, and all parties in interest and that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

   ORDERED that the Motion is granted; and it is further

   ORDERED that undisputed obligations of the Debtors arising from postpetition

delivery or shipment by Vendors of goods or services under the Prepetition Orders shall be

afforded administrative expense priority status pursuant to section 503(b) of the Bankruptcy

Code; and it is further

   ORDERED that the Debtors are authorized, but not obligated, to pay in the

ordinary course of their businesses all undisputed obligations arising from the postpetition

delivery or shipment by Vendors of goods and services under the Prepetition Orders consistent

with their customary practices; and it is further

       ORDERED that nothing in this Order shall be deemed or construed as an

admission as to the validity of any claim against the Debtors or a waiver of the Debtors' or any

party in interest's rights to dispute any claim; and it is further

       ORDERED that nothing herein shall be deemed to constitute an assumption or

rejection of any agreement pursuant to section 365 of the Bankruptcy Code; and it is further

       ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation or interpretation of this Order.

Dated:  August __, 2009
      New York, New York

                             _____
                             UNITED STATES BANKRUPTCY JUDGE

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 270 of 458
Case 1:19-cv-10291-NSR    Document 22-1    Filed 02/28/20    Page 269 of 359

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) Case No. 18-50757 |
|  | ) (Request for Joint Administration |
|  | ) Pending) |
| Debtors. | ) |
|  | ) Hon. Judge Alan M. Koschik |
|  | ) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (A) GRANT ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS FOR GOODS AND SERVICES ORDERED PREPETITION AND DELIVERED POSTPETITION AND SATISFY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS, AND (B) PAY PREPETITION CLAIMS OF SHIPPERS, WAREHOUSEMEN, AND MATERIALMEN

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"), authorizing the Debtors to: (a) grant administrative expense priority to all undisputed obligations for goods and services ordered prepetition and delivered to the Debtors at the final destination postpetition (the "Outstanding Orders") and satisfy such obligations in the ordinary course of business; and (b) pay prepetition claims of Shippers, Warehousemen, and Materialmen (each as defined in this Motion, and collectively, the "Claimants") in the ordinary course of business. In support of this Motion,[2] the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

[2] The facts and circumstances supporting this Motion are set forth in the *Declaration of Donald R. Schneider in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), and the *Declaration of*

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 271 of 458
Case 1:19-cv-10291-NSR Document 22-1 Filed 02/28/20 Page 2 of 359

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Northern District of Ohio (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363, 503 and 506 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.      On March 31, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their property as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have requested joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Court has not appointed a trustee and the Office of the United States Trustee for the Northern District of Ohio (the "US Trustee") has not yet formed any official committees in these chapter 11 cases.

5.      Non-Debtor FirstEnergy Corp. ("FE Corp."), an Ohio corporation, is the ultimate parent company for each of the Debtors in these chapter 11 cases and certain of FE Corp.'s non-Debtor affiliates (collectively, "FirstEnergy" or "FirstEnergy Group"). Debtor FirstEnergy Solutions Corp. ("FES"), an Ohio corporation, is the parent company for Debtors FE Aircraft Leasing Corp. ("FEALC"), an Ohio corporation, FirstEnergy Generation, LLC ("FG"), an Ohio

---

*Charles Moore in Support of the Debtors' Critical Vendor Motion; Shippers, Warehousemen, and Materialmen Motion; Intercompany Agreements Motion; and Cash Management Motion*, filed contemporaneously herewith.

2

A-4138

18-23538-shl  Doc 7252-4  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor   Pg 272 of 458
Case 5:19-cv-10291-JSR  Document 22-1  Filed 02/18/20  Page 271 of 359

limited liability company, and FirstEnergy Nuclear Generation, LLC ("NG"), an Ohio limited liability company.  Debtor FG is the parent company for Debtors FirstEnergy Generation Mansfield Unit 1 Corp. ("FGMUC"), an Ohio corporation, and Norton Energy Storage L.L.C. ("NES"), a Delaware limited liability company.[3]  Debtor FirstEnergy Nuclear Operating Company ("FENOC"), an Ohio corporation, is an affiliate of FES and a direct subsidiary of FE Corp.  As of March 15, 2018, FirstEnergy Group has 15,513 employees, where 3,076 are employed by the Debtors, including 57 by FES, 686 by FG, and 2,333 by FENOC.  FEALC, FGMUC, NES, and NG do not have any employees.

6.      FES sells power and provides energy-related products and services to retail and wholesale customers primarily in Illinois, Maryland, Michigan, New Jersey, Ohio, and Pennsylvania.  FG owns and operates three fossil generation plants[4], two in Ohio and one in Pennsylvania.[5]  FG sells the entire output from its plants of 5,440 megawatts ("MWs") and 86 MWs purchased from the Forked River Power Plant ("Forked River") to FES pursuant to a power purchase agreement ("PPA").  Additionally, FG operates the Bay Shore fossil generation plant where certain of the assets are owned by non-Debtor Bay Shore Power Company ("Bay Shore") and the other assets are owned by FG.  NG owns three nuclear generation plants, two in Ohio and one in Pennsylvania.[6]  Pursuant to a PPA, NG sells the entire output from its plants of 4,048 MWs to FES.  FGMUC is a party to a PPA whereby it sells the entire output from Unit 1 of

---

[3] FG also owns a 99% limited partnership interest in Nautica Phase 2 Limited Partnership, which has $10 million in outstanding debt.

[4] FG also owns a steam turbine and combustion turbine at the Bay Shore Power Plant in Oregon, OH and a combustion turbine at the Eastlake Plant in Eastlake, OH.

[5] FG owns and operates the W. H. Sammis Plant in Stratton, OH, which is composed of seven units and the West Lorain Plant in Lorain, OH, which is composed of six units that run on heating oil.  FG operates the entire Bruce Mansfield Plant in Shippingport, PA, where it owns two of the three units.  FG owns approximately 6.17% of Unit 1 of the Bruce Mansfield Plant while approximately 93.83% of Unit 1 is under a leasehold interest.

[6] NG owns the Beaver Valley Nuclear Power Station, composed of two units, in Shippingport, PA, the Davis-Besse Nuclear Power Station in Oak Harbor, OH, and the Perry Nuclear Power Plant in Perry, OH, each consisting of one unit.

3

A-4139

18-23538-shl  Doc 7252-4  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 273 of 458

Case 19-cv-10291-NSR    Document 22-1    Filed 02/18/20    Page 272 of 399

the Bruce Mansfield Plant to FG, and then FG sells it to FES.  FES purchases 108 MWs pursuant

to a PPA with the Ohio Valley Electric Corporation ("OVEC").  FES also purchases

approximately 496 MWs from third party renewable wind and solar power producers under

PPAs.  Pursuant to a Master Nuclear Operating Agreement, FENOC operates the three nuclear

generation plants, composed of four units, owned by NG.  In addition, FENOC performs services

for non-Debtors Pennsylvania Electric Company ("Penelec"), Metropolitan Edison Company

("Met-Ed"), and Jersey Central Power & Light Company ("JCP&L") with respect to Three Mile

Island, Unit 2, which is deactivated.  FEALC owns an airplane that it leases to non-Debtor

FirstEnergy Service Company ("FESC"), a subsidiary of FE Corp. and an affiliate of FES and

FENOC.  In addition, NES owns 92 acres of surface property and rights to a compressed air

generation project in connection with a limestone mine located in Norton, Ohio, formerly known

as the Barberton Mine.

       7.     In the aggregate, the Debtors have approximately $3.8 billion of funded

indebtedness.  FES has approximately $1.5 billion of funded indebtedness, including (a) a $700

million secured revolving credit facility;[7] (b) approximately $332 million of 6.05% unsecured

notes due 2021; (c) approximately $363 million of 6.80% unsecured notes due 2039; and (d) a

$150 million revolving credit note with Allegheny Energy Supply Company, LLC ("AES")

under which $102 million is currently outstanding and is due on April 2, 2018.  FG has

approximately $1.0 billion of funded indebtedness, including (a) approximately $328 million of

secured fixed-rate pollution control revenue notes ("PCNs") that support tax-exempt pollution

---

[7] The secured revolving credit facility is $500 million for general purposes (of which $500 million has been drawn) and $200 million for surety support (of which $200 million has been drawn).  The secured revolving credit facility is secured by first mortgage bonds issued by FG and by NG, which are in turn secured by a first lien security interest granted by FG and NG, as applicable, on substantially all of their respective property, plant and equipment used and useful in the generation and production of electric energy, including the plants referenced above.

4

A-4140

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 274 of 458

Case 1:19-cv-10391-NSR    Document 22-1    Filed 02/18/20    Page 273 of 399

control revenue bonds ("PCRBs")[8] and (b) approximately $677 million of unsecured fixed-rate PCNs that support additional tax-exempt PCRBs. Additionally, FG is the lessee under a sale-leaseback transaction related to Unit 1 of the Bruce Mansfield Plant,[9] pursuant to which FG makes semi-annual payments to the six lessor trusts in that transaction. FES guarantees the payment obligations of FG under the Unit 1 of Bruce Mansfield sale-leaseback transaction. In connection with the Unit 1 of Bruce Mansfield Plant sale-leaseback transaction, the lessor trusts issued notes secured by, *inter alia*, the leases and related interests in said Unit 1 to a pass-through trust that issued and sold pass-through trust certificates publicly, of which approximately $769 million in aggregate principal amount remains outstanding. NG has approximately $1.1 billion of funded indebtedness, including (a) approximately $285 million of secured PCNs that support tax-exempt PCRBs[10] and (b) approximately $842 million of unsecured PCNs that support additional tax-exempt PCRBs. Additionally, FEALC has approximately $240,000 of outstanding debt in an aircraft leasing loan owed to FES. FES's debt obligations are generally guaranteed by its subsidiaries, FG and NG, and FES guarantees the debt obligations of FG and NG. As of December 31, 2017, FES reported total assets, liabilities, and capitalization of approximately $5.5 billion and FENOC reported total assets, liabilities, and capitalization of approximately $900 million. FES's total revenue for the year ended December 31, 2017, was approximately $3.1 billion.

---

[8] These PCRBs are issued by various Ohio and/or Pennsylvania state authorities. The secured PCNs are secured by first mortgage bonds issued by FG which are in turn secured by a first lien security interest granted by FG on substantially all of its property, plant and equipment used and useful in the generation and production of electric energy, including the plants referenced above.

[9] There are three units at the Bruce Mansfield Plant and the lease covers approximately 93.83% of Unit 1.

[10] The secured PCNs are secured by first mortgage bonds issued by NG which are in turn secured by a first lien security interest granted by NG on substantially all of its property, plant and equipment used and useful in the generation and production of electric energy, including the plants referenced above.

5

A-4141

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 275 of 458

Case 1:19-cv-10291-NSR   Document 22-1   Filed 02/18/20   Page 274 of 350

## I.      Outstanding Orders

8.      The Debtors' suppliers may be concerned that they will be rendered general unsecured creditors, rather than administrative claimants, with respect to goods and services ordered before the Petition Date for delivery or provision after the Petition Date. As a result, suppliers may refuse to ship or transport such goods (or recall such shipments) or provide services with respect to Outstanding Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court permitting the Debtors to meet their obligations under the Outstanding Orders even though the Outstanding Orders are entitled to administrative expense priority under section 503(b) of the Bankruptcy Code. Thus, the Debtors seek to affirm that the Outstanding Orders are entitled to administrative priority and to pay such Outstanding Orders in the ordinary course of business to avoid any unnecessary disruption to business operations and administrative costs associated with reissuing purchase orders or seeking additional relief.

## II.     Claims of Shippers, Warehousemen, and Materialmen

### A.    Shippers

9.      The Debtors' ability to produce and deliver energy in a timely manner depends on their timely receipt of raw materials, parts, equipment, supplies, fuel, and components that are important to the Debtors' business operations. To that end, the Debtors rely upon certain professional common carriers, shippers, truckers, logistics management companies, rail carriers, and certain other third-party service providers to ship, transport, and deliver goods (the "Shippers"). Under certain state and federal laws, including Ohio and Pennsylvania, the Shippers could potentially assert possessory liens over goods currently in their possession for amounts the Debtors owe to the Shippers. *See* 49 U.S.C. § 80109 (providing for uniform shipper liens with

6

A-4142

respect to interstate shipments using common carriers); OHIO REV. CODE ANN. § 1307.307 (LexisNexis 2017); 13 PA. CONS. STAT. § 7307 (2016). The value of the goods being shipped do not necessarily exceed the amounts owed to the Shippers, but an inability to acquire these materials or parts from the Shippers could result in serious disruption to the Debtors' operations. Timely delivery of these items is therefore vital to the operation of the Debtors' businesses.

10.     The Debtors estimate that, as of the Petition Date, they owe approximately $1.3 million on account of shipping and logistics charges for goods ordered prepetition, all of which will become due and owing during the Interim Period (defined herein).

### B.  Warehousemen

11.     To store certain of same materials and parts transported by the Shippers, the Debtors use offsite storage space with certain warehouse facilities (collectively, the "Warehousemen"). For example, the Debtors have entered into several contracts to store certain nuclear equipment that requires storage specifications, including precise temperature and humidity controls, which is involved in nuclear power generation and other activities. Under certain state laws, including Ohio and Pennsylvania, the Warehousemen may be able to assert possessory liens against the warehoused property for amounts owed to the Warehousemen. OHIO REV. CODE ANN. § 1307.209 (LexisNexis 2017); 13 PA. CONS. STAT. § 7209 (2016). The availability of these warehoused goods and materials are similarly important to the continued operation of the Debtors' businesses, and the amount due to the Warehousemen is significantly less than the value of the goods being stored.

12.     The Debtors estimate that, as of the Petition Date, they owe approximately $600,000 on account of Warehousemen claims, $0 of which will become due and owing during the Interim Period (defined herein).

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:47 Exhibit D -- Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 277 of 458

Case 1:19-cv-10291-NSR Document 22-1 Filed 02/28/20 Page 276 of 395

### C.  Materialmen

13.    The Debtors' energy production depends upon third-party contractors, mechanics, machinists, and repairmen that repair, fabricate, or perform other services on certain parts, equipment, and other materials used in the Debtors' facilities (the "Materialmen").

14.    Under certain state laws, including Ohio and Pennsylvania, the Materialmen could potentially assert possessory liens against the Debtors and their property for amounts that the Debtors owe and may refuse to return the Debtors' property until they are paid for their services. OHIO REV. CODE ANN. § 1311.02 (LexisNexis 2017); 49 PA. CONS. STAT. § 1301 (2016). The value of the property is greater than the amount of the Materialmens' claim for services rendered.

15.    The Debtors estimate that, as of the Petition Date, they owe approximately $2.6 million on account of outstanding prepetition invoices of the Materialmen, of which approximately $500,000 million will become due and owing during the Interim Period (defined herein).

### III.    Proposed Treatment of Claimants

16.    Under the state laws described above, the Claimants may have perfected liens against certain of the Debtors' goods, equipment, and facilities, or may be able to perfect such liens postpetition. As stated in the First Day Declaration, the Debtors' ability to continue their operations in the aftermath of their commencement of these Chapter 11 cases will largely depend upon the continued provision of the vital goods and services provided by the Claimants, even in the absence of such liens. Accordingly, by this Motion, the Debtors seek to prevent the breakdown of their supply and maintenance network and the disruption of their customer base by requesting authority to pay Claimants as, in their business judgment, the Debtors determine are necessary and appropriate to (a) obtain release of important or valuable goods, tooling, or

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 278 of 458
Case 1:19-cv-10291-NSR   Document 22-1   Filed 02/18/20   Page 277 of 399

equipment that may be subject to possessory liens and (b) maintain a reliable, efficient, continuous, and timely receipt of goods and services. The Debtors propose to pay such claims, when, in the Debtors' sole discretion, a Claimant could unduly disrupt the Debtors' businesses, notwithstanding the Debtors' belief that such action would violate the automatic stay, and regardless of whether a Claimant has a perfected lien. Importantly, amounts owed to the Claimants represent only approximately 2% of the Debtors' outstanding trade debt, and less than 0.1% of the Debtors' total funded indebtedness, as of the Petition Date.[11]

17.     Further, the Debtors seek the authority, but not the direction, to condition payment to Claimants upon their agreement to continue supplying goods and services to the Debtors postpetition on normal and customary trade terms, practices, and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, availability, and other applicable terms and programs), that were most favorable to the Debtors and that were in effect within three months before the Petition Date, or such other trade terms that are acceptable to the Debtors (the "Customary Trade Terms"). The Debtors request that they reserve the right to adjust normal trade terms with any such Claimant according to the facts and circumstances of such relationship.[12]

## RELIEF REQUESTED

18.     By this Motion, the Debtors seek entry of Interim and Final Orders authorizing, but not directing, the Debtors to: (a) grant administrative expense priority to the Outstanding

---

[11] The Debtors concurrently filed the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to Pay Prepetition Critical Vendor Claims* (the "Critical Vendor Motion"). None of the claims referred to in this Motion are duplicative to the claims being sought in the Critical Vendor Motion.

[12] Additionally, the Debtors request that if a supplier or vendor accepts payment pursuant to the Interim Order and/or the Final Order and thereafter does not continue to provide goods or services on Customary Trade Terms that (a) any such payment shall be deemed, in the Debtors' sole discretion, to be an improper postpetition transfer, and, therefore, recoverable by the Debtors in cash upon written request; and (b) upon recovery of the payment by the Debtor, the amount owed to such Claimant shall be reinstated as if the payment had not been made.

9

A-4145

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 279 of 458
Case 1:19-cv-10291-NSRF Document 22-1 Filed 02/18/20 Page 278 of 395

Orders and satisfy such obligations in the ordinary course of business; and (b) pay prepetition claims of the Claimants in the ordinary course of business in an aggregate amount not to exceed $1.8 million during the period between the Petition Date (as defined herein) and entry of the Final Order (the "Interim Period")[13], by paying FESC who, in turn, is authorized to remit the payments to the Claimants or by paying the Claimants, and, pursuant to the Final Order, in an aggregate amount not to exceed $4.5 million.

19.     The Debtors also request that the Court: (a) schedule a final hearing as soon as practicable after the 21st day following the Petition Date to consider approval of this Motion on a final basis (the "Final Hearing"); and (b) authorize all applicable banks and financial institutions to receive, process, honor, and pay all checks dated after the Petition Date presented for payment and all electronic payment requests made after the Petition Date related to the Claimants.

## BASIS FOR RELIEF

### I.     The Court Should Confirm That Outstanding Orders Are Administrative Expense Priority Claims and That Payment Is Authorized

20.     Pursuant to section 503(b) of the Bankruptcy Code, most obligations that arise in connection with the postpetition delivery of goods and services, including goods and services ordered prepetition, are in fact administrative expense priority claims because they benefit the estate postpetition. Thus, the granting of the relief sought in this Motion with respect to the Outstanding Orders will not provide the suppliers with any greater priority than they otherwise would have if the relief requested in this Motion was not granted, and will not prejudice any other party in interest.

21.     Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide the suppliers with assurance of such

---

[13] Unless stated otherwise, estimated amounts that the Debtors expect will come due during the Interim Period are based on the 30-day period after the Petition Date.

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 280 of 458
Case 1:19-cv-10231-NSR Document 22-1 Filed 02/28/20 Page 279 of 359

administrative priority. The attendant disruption to the continuous and timely flow of goods and services to the Debtors could result in substantial delays in the Debtors' operations. Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

22.    Courts in this jurisdiction, as well as others, have approved relief similar to the relief requested in this Motion for debtors seeking the authority and discretion to pay claims arising from prepetition orders that are delivered to the debtors postpetition. *See, e.g.*, *In re M&M Drying, Ltd.*, No. 08-64058 (RK) (Bankr. N.D. Ohio Dec. 2, 2008) [Docket No. 41]; *In re NexPak Corp.*, No. 04-63816 (RK) (Bankr. N.D. Ohio July 19, 2004) [Docket No. 48]; *In re Summitville Tiles, Inc.*, No. 03-46341 (WTB) (Bankr. N.D. Ohio Dec. 12, 2003) [Docket No. 21]; *In re Antioch Company*, No. 08-35741 (GRH) (Bankr. S.D. Ohio Nov. 14, 2008) [Docket No. 71]; *In re Longview Power*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 4, 2013) [Docket No. 97].

## II.    Payment of the Claimants Is Warranted

23.    Courts generally recognize that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business. *See, e.g., In re Wings of Medina Liquidation, Inc.* (f/k/a *In re QSL of Medina, Inc.*), No. 15-52722 (AMK) (Bankr. N.D. Ohio Dec. 15, 2015) [Docket No. 109] (authorizing payment of prepetition claims of certain critical vendors); *In re Meridian Auto. Sys.-Composite Operations, Inc.*, 372 B.R. 710, 714 (Bankr. D. Del. 2007) (granting the debtor authority to pay prepetition obligations owed to certain critical vendors); *In re Payless Cashways, Inc.*, 268 B.R. 543, 547-48 (Bankr. W.D. Mo. 2001) (authorizing payment of prepetition obligations to obtain delivery of lumber that was critical to the debtor's survival); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (Bankr. D. Del. 1999)

11

A-4147

(noting that debtors may pay prepetition claims that are essential to the continued operation of
the debtor's business); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio
1991) (authorizing immediate payment of prepetition claims to vendors who supplied tools
essential to the debtors' manufacturing operations). Courts have relied on several legal bases in
approving such relief. [14]

24.     Courts generally recognize that debtors may pay prepetition claims under section
363(b) of the Bankruptcy Code where there is a sound business purpose for the payment of
prepetition obligations, and where the debtor is able to "articulate some business justification,
other than the mere appeasement of major creditors." *See, e.g., In re Ionosphere Clubs, Inc.,* 98
B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting debtor authority to pay prepetition wages);
*Armstrong World Indus. Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.),* 29 B.R.
391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of
suppliers who were potential lien claimants).

25.     Courts also recognize that payments to prepetition creditors are appropriate
pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the
"necessity of payment" rule where such payments are necessary to the continued operation of the
debtor's business. *See, e.g., In re Wings of Medina Liquidation, Inc.* (f/k/a *In re QSL of Medina,
Inc.*), No. 15-52722 (AMK) (Bankr. N.D. Ohio Dec. 15, 2015) [Docket No. 109] (authorizing
payment of prepetition obligations pursuant to Bankruptcy Code section 105(a)); *Ionosphere
Clubs,* 98 B.R. at 175 (approving the use of equitable powers to authorize the payment of
prepetition debts needed to facilitate the debtor's business and stating that doing so "is not a

---

[14] In *Czyzewski v. Jevic Holding Corp.*, the Supreme Court acknowledged that there are bankruptcy-related
justifications for some priority-violating distributions, such as approving critical vendor orders that allow payment
of essential suppliers' prepetition invoices. The Supreme Court found that in doing so, "these courts have usually
found that the distributions at issue would 'enable a successful reorganization and make even the disfavored
creditors better off.'" 137 S. Ct. 973, 985 (2017) (*quoting In re Kmart Corp.*, 359 F. 3d 866, 872 (7th Cir. 2004)).

A-4148

novel concept"); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding

that a court could authorize the payment of prepetition claims if such payment was essential to

the continued operation of the debtor); *Friedman's Inc. v. Roth Staffing Cos.* (*In re Friedman's,

Inc.*), No. 09-50364, 2011 WL 5975283, at *3 (Bankr. D. Del. Nov. 30, 2011) ("[M]ost courts

will allow such payments [of prepetition claims] under the 'doctrine of necessity,' if the debtor

establishes that in its business judgment making such payments is critical to the survival of the

debtor's business"). The rationale for the necessity of payment rule– the rehabilitation of a debtor

in reorganization cases– is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98

B.R. at 176; *Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain

trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization.").

26.     Payment of the Claimants is within the Debtors' sound business judgment,

essential to the Debtors' business operations, and will preserve and maximize the value of the

Debtors' estates. Although the Court has the authority to order the Claimants to turn over any

goods in the Claimants' possession, those Claimants that have valid liens may be entitled to

adequate protection of their liens pursuant to section 363(e) of the Bankruptcy Code. Moreover,

the Claimants may have liens on goods that are more valuable than the claims being asserted by

the Claimants. Such Claimants will therefore be entitled to payment in full on account of their

claims and paying such claims in the ordinary course of business changes only the timing, rather

than the amount, of payments that such Claimants will receive. Finally, the Claimants may be

unwilling to release the goods in their possession, or may attempt to exercise "self-help"

remedies, to secure payment of their claims. Although the Debtors believe such actions would

violate the automatic stay, the violation would cause a delay to the Debtors' business operations.

As stated in the First Day Declaration, any delay caused by such actions would unnecessarily

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 283 of 458
Case 1:19-cv-10291-NSR Document 22-1 Filed 02/28/20 Page 282 of 559

disrupt the Debtors' business operations to the detriment of the Debtors, their estates, and their creditors. Thus, the Debtors should be permitted, in their discretion, to pay the Claimants.

27.    It is not uncommon for courts to authorize the payment of prepetition claims where such payment is essential to the continued operations of the debtor, and in particular claims of shippers, warehousemen, materialmen, or other comparable vendors. *See, e.g., In re Flower Factory, Inc.*, No. 11-60406 (RK) (Bankr. N.D. Ohio Feb. 18, 2011) [Docket No. 55] (authorizing payment of prepetition claims of shippers); *In re Summitville Tiles, Inc.*, No. 03-46341 (WTB) (Bankr. N.D. Ohio Dec. 12, 2003) [Docket No. 21] (authorizing payment of prepetition obligations relating to shipment and warehousing of goods and supplies); *In re MI 2009 Inc. (f/k/a In re Milacron Inc.),* No. 09-11235 (JVA) (Bankr. S.D. Ohio Mar. 11, 2009) [Docket No. 52] (authorizing debtor to pay prepetition claims of shippers and warehousemen in the ordinary course of business); *In re CWC Liquidation Inc. (f/k/a In re Coldwater Creek Inc.)*, No. 14-10867 (BLS) (Bankr. D. Del. Apr. 14, 2014) [Docket No. 78] (authorizing debtor to pay prepetition shipping claims); *In re FBI Wind Down, Inc. (f/k/a In re Furniture Brands Int'l Inc.)*, No. 13-12329 (CSS) (Bankr. D. Del. Sept. 9, 2013) [Docket No. 75] (authorizing payment of prepetition shipping and delivery charges, import obligations and mechanic's lien charges).

### III.    Cause Exists to Authorize the Debtors' and FESC's Financial Institutions to Honor Checks and Electronic Fund Transfers.

28.    The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations. Under the Debtors' existing cash management system[15], FESC, as payment agent for the Debtors, issues all checks and electronic fund transfers payable for Outstanding Orders and

---

[15] *See* Motion of Debtors for Entry of Interim and Final Orders (a) Authorizing Debtors to (i) continue using their existing cash management system and (ii) maintain existing business accounts and business forms; (b) authorizing continued intercompany transactions; (c) granting postpetition intercompany claims administrative expense priority; and (d) related relief for additional detail.

14

A-4150

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 284 of 458

Case 1:19-cv-10291-NSR Document 22-1 Filed 02/18/20 Page 283 of 350

to Claimants. The Debtors have implemented appropriate mechanisms to ensure that payments will not be made on account of obligations incurred before the Petition Date, other than those authorized by the Court, and will continue to work closely with the applicable banks, FESC and the Debtors' finance group to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval. FESC can readily identify checks or wire transfer requests as relating to an authorized payment of Outstanding Orders or payments to the Claimants. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors or FESC, to receive, process, honor, and pay any and all checks dated after the Petition Date or wire transfer requests made after the Petition Date in respect of the relief requested in this Motion. To the extent that any such checks or electronic funds transfers payable for Outstanding Orders or to Claimants are cancelled or voided by any financial institution, the Debtors and FESC are authorized to issue replacement checks and electronic funds transfers for such payments.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

29.      Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re WorldSpace, Inc.*, No. 08-12412, 2008 WL 8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (granting emergency motions for post-petition financing, adequate protection, and modification of the stay where the court found that the relief was necessary to

15

A-4151

avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operations of the debtors' businesses); *In re New World Pasta Co.*, No. 04-02817, 2004 WL 5651052, at \*5 (Bankr. M.D. Pa. July 9, 2004) (same); *see also In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate and irreparable harm" exists where loss of the business threatens ability to reorganize).

30.     As described above, prompt payment of Outstanding Orders and payment to Claimants is necessary to avoid the immediate and irreparable harm that would result from delayed provision of the raw material and services and for return of the Debtors' property needed to operate the Debtors' business. As set forth in this Motion, the failure to pay Outstanding Orders and the Claimants could disrupt the Debtors operations, jeopardize key customer relationships, and undermine the Debtors' efforts to reorganize. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support the relief set forth in the Interim Order on the terms described herein.  Courts in this jurisdiction have routinely approved relief similar to the relief requested in this Motion.  *See, e.g.*, *Wings of Medina Liquidation, Inc. f/k/a QSL of Medina, Inc.*, No. 15-52722 (AMK) (Bankr. N.D. Ohio, Nov. 18, 2015) [Docket No. 31] (determining that 6003(b) was satisfied in connection with the payment of prepetition critical vendor claims); *In re South Franklin Circle*, No. 12-17804 (PMC) (Bankr. N.D. Ohio, Oct. 26, 2012) [Docket Nos. 49 & 55] (determining that 6003(b) was satisfied in connection with the payment of both prepetition employee wage claims and critical vendor claims).

### WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

31.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

16

A-4152

18-23538-shl  Doc 7252-4  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 286 of 458
Case 5:19-cv-10291-JSR  Document 22-1  Filed 02/18/20  Page 285 of 350

<u>**RESERVATION OF RIGHTS**</u>

32.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

<u>**NOTICE**</u>

33.    No trustee, examiner or official committee has been appointed in the Debtors' chapter 11 cases.  Notice of this Motion has been served on the following parties and/or their counsel, if known, via facsimile, overnight delivery, e-mail, and/or hand delivery:  (a) the Office of the U.S. Trustee for the Northern District of Ohio; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under various indenture agreements; (d) counsel to UMB Bank, National Association, in its capacity as indenture trustee, paying agent, and collateral trustee under various

17

A-4153

Case 19-cv-10291-NSF Document 22-1 Filed 02/18/20 Page 286 of 350

indenture agreements, including, without limitation, certain pollution control revenue bond indentures and certain first mortgage bond indentures, and trust agreements; (e) counsel to Wilmington Savings Fund Society, FSB, in its capacity as indenture trustee and pass through trustee under various indenture agreements and trust agreements in connection with the Bruce Mansfield Unit 1 sale-leaseback; (f) counsel to the Ad Hoc Group of Holders of the 6.85% Pass Through Certificates due 2034; (g) counsel to the ad hoc group of certain holders of (i) pollution control revenue bonds supported by notes issued by FG and NG and (ii) certain unsecured notes issued by FES (collectively, the "Ad Hoc Noteholder Group"); (h) counsel to FirstEnergy Corp.; (i) counsel to MetLife Capital, Limited Partnership; (j) the District Director of the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) the Office of the United States Attorney for the Northern District of Ohio; (m) the United States Environmental Protection Agency; (n) the Nuclear Regulatory Commission; (o) the United States Department of Energy; (p) the Federal Energy Regulatory Commission; (q) the Office of the Attorney General for Ohio; (r) the Office of the Attorney General for Pennsylvania; (s) the Office of the Attorney General for Illinois; (t) the Office of the Attorney General for Maryland; (u) the Office of the Attorney General for Michigan; (v) the Office of the Attorney General for New Jersey; (w) the National Association of Attorneys; and (x) all Shippers, Warehousemen, and Materialmen who have filed UCC statements. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

34. No prior request for the relief sought in this Motion has been made to this or any other court.

A-4154

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

A-4155

18-23538-shl Doc 752-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 289 of 458
Case 1:19-cv-10291-NSR Document 22-1 Filed 02/28/20 Page 288 of 358

Dated:    April 1, 2018             **Respectfully submitted,**

*/s/ Marc B. Merklin*
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

  - and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (*pro hac vice* admission pending)
Lisa Beckerman (*pro hac vice* admission pending)
Brad Kahn (*pro hac vice* admission pending)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
bkahn@akingump.com

    - and -

Scott Alberino (*pro hac vice* admission pending)
Kate Doorley (*pro hac vice* admission pending)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

*Proposed Counsel for Debtors*
*and Debtors in Possession*

20

A-4156

18-23538-shl  Doc 7352-4  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 290 of 458

Case 1:19-cv-10291-NSR  Document 22-1  Filed 02/18/20  Page 289 of 390

## **Exhibit A**

## **Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) Case No. 18-50757 |
| | ) (Request for Joint Administration |
| | ) Pending) |
| Debtors. | ) |
| | ) Hon. Judge Alan M. Koschik |
| | ) |

**INTERIM ORDER AUTHORIZING THE DEBTORS TO (A) GRANT
ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED
OBLIGATIONS FOR GOODS AND SERVICES ORDERED
PREPETITION AND DELIVERED POSTPETITION AND SATISFY
SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS
AND (B) PAY PREPETITION CLAIMS OF SHIPPERS,
WAREHOUSEMEN, AND MATERIALMEN**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), for entry of an interim order (this "Order"), authorizing,

but not directing, the Debtors to (a) grant administrative expense priority to all Outstanding

Orders and satisfy such obligations in the ordinary course of business and (b) pay the Claimants

in the ordinary course of business, all as more fully set forth in the Motion; and upon the First

Day Declaration; and the Court having found that it has jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to

28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

A-4158

Case 1:19-cv-10291-NSR Document 22-1 Filed 02/18/20 Page 291 of 356

the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the First Day Declaration, the Motion, and having heard the statements in support of the relief requested therein at a hearing, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the First Day Declaration, the Motion, and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      All undisputed obligations relating to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b) of the Bankruptcy Code.

3.      In accordance with this Order, the Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy prepetition amounts on account of Outstanding Orders in the ordinary course of business and consistent with the parties' customary practices in effect before the Petition Date, including by paying FESC who, in turn, is authorized to remit the payments to the holders of Outstanding Orders.

4.      In accordance with this Order, the Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy prepetition amounts owed to the Claimants in the ordinary course of business consistent with the parties' customary practices in effect before the Petition Date, including by paying FESC who, in turn, is authorized to remit the payments to the Claimants; *provided, however,* that such payments shall not exceed $1.8 million during the Interim Period unless otherwise ordered by the Court.

5.      The Debtors are authorized, but not directed, to condition payment to Claimants upon a Claimant's agreement to continue supplying goods and services to the Debtors

18-50757-amk     Doc 8-1     FILED 04/01/18     ENTERED 04/01/18 03:13:17     Page 3 of 7

postpetition on Customary Trade Terms; *provided, however,* that the Debtors reserve the right to adjust normal trade terms with any such Claimant according to the facts and circumstances.

6.      The Final Hearing shall be _____, 2018, at _:_ a.m./p.m., prevailing Eastern Time. Any objections or responses to the Motion must be filed on or before _____, 2018, at [ ]:00 p.m., prevailing Eastern Time. If no objections are filed to the Motion, the Court may enter the Final Order without further notice or hearing.

7.      In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors or FESC, as payment agent for the Debtors, maintain their accounts relating to the payment of the obligations described in this Order is authorized to honor checks and electronic payment requests presented for payment of obligations described in this Order and all fund transfer requests made by the Debtors or FESC related thereto to the extent that sufficient funds are on deposit in such amounts.  To the extent that any such checks or electronic funds transfers payable for Outstanding Orders or to Claimants are cancelled or voided by any financial institution, the Debtors and FESC are authorized to issue replacement checks and electronic funds transfers for such payments.[3]

8.      If, after receiving a payment pursuant to this Order, a Claimant does not continue to provide Customary Trade Terms, then (a) any such payment received by such Claimant shall be deemed, in the Debtors' discretion, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash immediately upon written request by the Debtors and (b) upon recovery by the Debtors, any prepetition claim of such Claimant shall be reinstated as if the payment had not been made; *provided, however,* that (i) prior to exercising any remedies set forth in paragraph 8, the Debtors shall provide the applicable party with written notice of their

---

[3] For clarification, the Debtors are not seeking authorization to honor any checks dated prior to the Petition Date or electronic payment requests or electronic fund transfer requests made prior to the Petition Date.

3

A-4160

18-23538-shl  Doc 7252-4  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 294 of 458
Case 1:19-cv-10291-NSR  Document 22-1  Filed 02/18/20  Page 293 of 399

intent to exercise such remedies, and the applicable party shall have fourteen (14) days from service of such written notice to file an objection and serve it on the Debtors and (ii) if such party files and serves such written notice, the Debtors shall not exercise any remedies set forth in paragraph 8 pending further order of the Court or agreement of the parties.

9.      If there exists an outstanding postpetition balance due from the Debtors to a Claimant that does not continue to provide Customary Trade Terms, the Debtors may seek authorization from the Court to recharacterize and apply any payments made pursuant to this Order to such outstanding postpetition balance, and the Claimant shall repay immediately in cash to the Debtors such paid amounts that exceed the postpetition obligations then outstanding and without any claim, right of setoff, or recoupment against the Debtors resulting thereby.

10.      The Debtors will provide the U.S. Trustee, counsel to the Ad Hoc Noteholder Group, counsel to the Ad Hoc Group of Holders of the 6.85% Pass Through Certificates due 2034 and counsel to any official committee of unsecured creditors appointed in these cases with a summary each calendar month of all payments made on account of Outstanding Orders or any payments made to any Claimants within five (5) business days after each month end.

11.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion.

12.      Notice of the Motion as provided therein shall be deemed good and sufficient.

13.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

15.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted pursuant to this Order in accordance with the Motion.

16.     The Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

# # #

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor   Pg 296 of 458

Case 1:19-cv-10291-NSR   Document 22-1   Filed 02/18/20   Page 295 of 359

**SUBMITTED BY:**

*/s/* _____
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

 - and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (*pro hac vice* admission pending)
Lisa Beckerman (*pro hac vice* admission pending)
Brad Kahn (*pro hac vice* admission pending)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
bkahn@akingump.com

  - and -

Scott Alberino (*pro hac vice* admission pending)
Kate Doorley (*pro hac vice* admission pending)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

*Proposed Counsel for Debtors*
*and Debtors in Possession*

Case 1:19-cv-10291-NSR   Document 22-1   Filed 02/18/20   Page 296 of 390

## Exhibit B

**Proposed Final Order**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) Case No. 18-50757 |
| | ) (Request for Joint Administration |
| | ) Pending) |
| Debtors. | ) |
| | ) Hon. Judge Alan M. Koschik |
| | ) |

**FINAL ORDER AUTHORIZING THE DEBTORS TO (A) GRANT
ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED
OBLIGATIONS FOR GOODS AND SERVICES ORDERED
PREPETITION AND DELIVERED POSTPETITION AND SATISFY
SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS
AND (B) PAY PREPETITION CLAIMS OF SHIPPERS,
WAREHOUSEMEN, AND MATERIALMEN**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), for entry of a final order (this "Order"), authorizing, but

not directing, the Debtors to (a) grant administrative expense priority to all Outstanding Orders

and satisfy such obligations in the ordinary course of business and (b) pay the Claimants in the

ordinary course of business, all as more fully set forth in the Motion; and upon the First Day

Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28

U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764.  The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

A-4165

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 299 of 458

Case 1:19-cv-10291-NSRF Document 22-1 Filed 02/18/20 Page 298 of 399

the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the

Motion under the circumstances; and the Court having reviewed the First Day Declaration, the

Motion, and having heard the statements in support of the relief requested therein at a hearing

before the Court (the "Hearing"); and the Court having determined that the legal and factual

bases set forth in the First Day Declaration, the Motion, and at the Hearing establish just cause

for the relief granted herein; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      All undisputed obligations relating to the Outstanding Orders are granted

administrative expense priority status in accordance with section 503(b) of the Bankruptcy Code.

3.      In accordance with this Order, the Debtors are authorized, but not directed, to

honor, pay, or otherwise satisfy prepetition amounts on account of Outstanding Orders in the

ordinary course of business and consistent with the parties' customary practices in effect before

the Petition Date, including by paying FESC who, in turn, is authorized to remit the payments to

the holders of outstanding Order.

4.      In accordance with this Order, the Debtors are authorized, but not directed, to

honor, pay, or otherwise satisfy prepetition amounts owed to the Claimants in the ordinary

course of business consistent with the parties' customary practices in effect before the Petition

Date, including by paying FESC who, in turn, is authorized to remit the payments to the

Claimants; *provided, however,* that such payments shall not exceed $4.5 million in the aggregate

unless otherwise ordered by the Court. The Debtors are authorized, but not directed, to condition

payment to Claimants upon a Claimant's agreement to continue supplying goods and services to

the Debtors postpetition on Customary Trade Terms; *provided, however,* that the Debtors reserve

Case 1:19-cv-10291-NSR    Document 22-1    Filed 02/18/20    Page 299 of 599

the right to adjust normal trade terms with any such Claimant according to the facts and circumstances.

5.      In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors or FESC, as payment agent for the Debtors, maintain their accounts relating to the payment of the obligations described in this Order is authorized to honor checks and electronic payment requests presented for payment of obligations described in this Order and all fund transfer requests made by the Debtors related thereto to the extent that sufficient funds are on deposit in such amounts.  To the extent that any such checks or electronic funds transfers payable for Outstanding Orders or to Claimants are cancelled or voided by any financial institution, the Debtors and FESC are authorized to issue replacement checks and electronic funds transfers for such payments.[3]

6.      If, after receiving a payment pursuant to this Order, a Claimant does not continue to provide Customary Trade Terms, then (a) any such payment received by such Claimant shall be deemed, in the Debtors' discretion, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash immediately upon written request by the Debtors and (b) upon recovery by the Debtors, any prepetition claim of such Claimant shall be reinstated as if the payment had not been made; *provided, however,* that (i) prior to exercising any remedies set forth in paragraph 7, the Debtors shall provide the applicable party with written notice of their intent to exercise such remedies, and the applicable party shall have fourteen (14) days from service of such written notice to file an objection and serve it on the Debtors and (ii) if such party files and serves such written notice, the Debtors shall not exercise any remedies set forth in paragraph 8 pending further order of the Court or agreement of the parties.

---

[3] For clarification, the Debtors are not seeking authorization to honor any checks dated prior to the Petition Date or electronic payment requests or electronic fund transfer requests made prior to the Petition Date.

Case 5:19-cv-10231-JSF   Document 22-1   Filed 02/18/20   Page 300 of 359

7.      The Debtors will provide the U.S. Trustee, counsel to the Ad Hoc Noteholder Group, counsel to the Ad Hoc Group of Holders of the 6.85% Pass Through Certificates due 2034 and counsel to any official committee of unsecured creditors appointed in these cases with a summary each calendar month of all payments made on account of Outstanding Orders or any payments made to any Claimants within five (5) business days after each month end.

8.      Notice of the Motion as provided therein shall be deemed good and sufficient.

9.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

12.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# # #

4

A-4168

**SUBMITTED BY:**

/s/
_____

**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

 - and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (_pro hac vice_ admission pending)
Lisa Beckerman (_pro hac vice_ admission pending)
Brad Kahn (_pro hac vice_ admission pending)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
bkahn@akingump.com

 - and -

Scott Alberino (_pro hac vice_ admission pending)
Kate Doorley (_pro hac vice_ admission pending)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

_Proposed Counsel for Debtors_
_and Debtors in Possession_

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Case 19-cv-10291-NSR Document 22-1 Filed 02/18/20 Page 302 of 359
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 303 of 458

**This document was signed electronically on May 8, 2018, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated:  May 8, 2018**



**ALAN M. KOSCHIK**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| FIRSTENERGY SOLUTIONS CORP., *et al.*,[1] | ) Case No. 18-50757 |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) Hon. Judge Alan M. Koschik |
|  | ) |

**FINAL ORDER AUTHORIZING THE DEBTORS TO (A) GRANT ADMINISTRATIVE EXPENSE PRIORITY TO ALL UNDISPUTED OBLIGATIONS FOR GOODS AND SERVICES ORDERED PREPETITION AND DELIVERED POSTPETITION AND SATISFY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS AND (B) PAY PREPETITION CLAIMS OF SHIPPERS, <u>WAREHOUSEMEN, AND MATERIALMEN</u>**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in

possession (collectively, the "<u>Debtors</u>"), for entry of a final order (this "<u>Order</u>"), authorizing, but

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764.  The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

18-23538-shl   Doc 7252-4   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 304 of 458

Case 1:19-cv-10291-NSR   Document 22-1   Filed 02/28/20   Page 303 of 399

not directing, the Debtors to (a) grant administrative expense priority to all Outstanding Orders

and satisfy such obligations in the ordinary course of business and (b) pay the Claimants in the

ordinary course of business, all as more fully set forth in the Motion; and upon the First Day

Declaration; and the Court having found that it has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28

U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in

this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that

the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the

Motion under the circumstances; and the Court having reviewed the First Day Declaration, the

Motion, and having heard the statements in support of the relief requested therein at an interim

hearing (the "Interim Hearing") having been held on the Motion on April 3, 2018; and the Court

having entered an interim order (the "Interim Order") [Docket No. 163] with respect to the

Motion on April 4, 2018; and the Court having held a final hearing (the "Final Hearing") on the

Motion on May [7], 2018; and the Court having determined that the legal and factual bases set

forth in the First Day Declaration, the Motion, and at the Interim Hearing and Final Hearing

establish just cause for the relief granted herein; and upon all of the proceedings had before the

Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      All undisputed obligations relating to the Outstanding Orders are granted

administrative expense priority status in accordance with section 503(b) of the Bankruptcy Code.

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

Case 1:19-cv-10291-NSR Document 22-1 Filed 02/18/20 Page 304 of 355

3.      In accordance with this Order, the Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy prepetition amounts on account of Outstanding Orders in the ordinary course of business and consistent with the parties' customary practices in effect before the Petition Date, including by paying FESC who, in turn, is authorized to remit the payments to the holders of Outstanding Orders; and *provided further* that no such amounts will be paid to any Insiders (as such term is defined in the Employee Benefits Motion) and that the Debtors shall provide notice to counsel to the Official Committee of Unsecured Creditors, counsel to the Ad Hoc Noteholder Group and counsel to the Ad Hoc Group of Holders of the 6.85% Pass Through Certificates due 2034 three (3) business days prior to making any such payment or commitment to any one entity over $500,000.

4.      In accordance with this Order, the Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy prepetition amounts owed to the Claimants in the ordinary course of business consistent with the parties' customary practices in effect before the Petition Date, including by paying FESC who, in turn, is authorized to remit the payments to the Claimants; *provided, however,* that such payments shall not exceed $4.5 million in the aggregate unless otherwise ordered by the Court. The Debtors are authorized, but not directed, to condition payment to Claimants upon a Claimant's agreement to continue supplying goods and services to the Debtors postpetition on Customary Trade Terms; *provided, however,* that the Debtors reserve the right to adjust normal trade terms with any such Claimant according to the facts and circumstances.

5.      In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors or FESC, as payment agent for the Debtors, maintain their accounts relating to the payment of the obligations described in this Order is authorized to

3

A-4172

18-23538-shl Doc 7252-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 306 of 458

Case 1:19-cv-10291-NSR Document 22-1 Filed 02/28/20 Page 305 of 350

honor checks and electronic payment requests presented for payment of obligations described in this Order and all fund transfer requests made by the Debtors or FESC related thereto to the extent that sufficient funds are on deposit in such amounts. To the extent that any such checks or electronic funds transfers payable for Outstanding Orders or to Claimants are cancelled or voided by any financial institution, the Debtors and FESC are authorized to issue replacement checks and electronic funds transfers for such payments.[3]

6. If, after receiving a payment pursuant to this Order, a Claimant does not continue to provide Customary Trade Terms, then (a) any such payment received by such Claimant shall be deemed, in the Debtors' discretion, an improper postpetition transfer and, therefore, recoverable by the Debtors in cash immediately upon written request by the Debtors and (b) upon recovery by the Debtors, any prepetition claim of such Claimant shall be reinstated as if the payment had not been made; *provided, however,* that (i) prior to exercising any remedies set forth in paragraph 7, the Debtors shall provide the applicable party with written notice of their intent to exercise such remedies, and the applicable party shall have fourteen (14) days from service of such written notice to file an objection and serve it on the Debtors and (ii) if such party files and serves such written notice, the Debtors shall not exercise any remedies set forth in paragraph 8 pending further order of the Court or agreement of the parties.

7. If there exists an outstanding postpetition balance due from the Debtors to a Claimant that does not continue to provide Customary Trade Terms, the Debtors may seek authorization from the Court to recharacterize and apply any payments made pursuant to this Order to such outstanding postpetition balance, and the Claimant shall repay immediately in cash

---

[3] For clarification, the Debtors are not seeking authorization to honor any checks dated prior to the Petition Date or electronic payment requests or electronic fund transfer requests made prior to the Petition Date.

to the Debtors such paid amounts that exceed the postpetition obligations then outstanding and without any claim, right of setoff, or recoupment against the Debtors resulting thereby.

8.      The Debtors will provide the U.S. Trustee, counsel to the Ad Hoc Noteholder Group, counsel to the Ad Hoc Group of Holders of the 6.85% Pass Through Certificates due 2034 and counsel to any official committee of unsecured creditors appointed in these cases with a summary each calendar month of all payments made on account of Outstanding Orders or any payments made to any Claimants within five (5) business days after each month end; *provided further* that no such summary need be provided for any month in which no payments were made by the Debtors.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient.

10.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

13.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# # #

A-4174

18-23538-shl    Doc 7252-4    Filed 02/28/20    Entered 02/28/20 16:52:24    Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 308 of 458

Case 1:19-cv-10291-NSR    Document 22-1    Filed 02/28/20    Page 307 of 359

**SUBMITTED BY:**

*/s/ Kate M. Bradley*
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
Bridget A. Franklin (0083987)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com
bfranklin@brouse.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (Admitted *pro hac vice*)
Lisa Beckerman (Admitted *pro hac vice*)
Brad Kahn (Admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
bkahn@akingump.com

- and -

Scott Alberino (Admitted *pro hac vice*)
Kate Doorley (Admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
salberino@akingump.com
kdoorley@akingump.com

*Counsel for Debtors*
*and Debtors in Possession*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Allied Nevada Gold Corp., *et al.*,[1] | ) | Case No. 15-_____ ( ) |
|  | ) |  |
| Debtors. | ) | Joint Administration Requested |
|  | ) |  |

**DEBTORS' MOTION FOR ENTRY OF AN
ORDER (I) AUTHORIZING THE DEBTORS TO PAY
CERTAIN PREPETITION CLAIMS (A) OF SHIPPERS AND
WAREHOUSEMEN, (B) OF MISCELLANEOUS LIEN CLAIMANTS,
(C) ARISING UNDER BANKRUPTCY CODE SECTION 503(B)(9) AND
(D) INCURRED IN CONNECTION WITH POSTPETITION DELIVERY
OF GOODS AND SERVICES AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") seek

entry of an order (the "***Order***"), substantially in the form attached hereto as **Exhibit A**:

(i) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course

of business as such claims come due:  (a) prepetition claims of Shippers and Warehousemen (as

defined herein) in an amount not to exceed $638,000 (the "***Shipping and Warehousing Claims***

***Cap***") absent further order of the Court; (b) prepetition claims of Miscellaneous Lien Claimants (as

defined herein) in an amount not to exceed $3.1 million (the "***Miscellaneous Lien Claims Cap***"); (c)

claims of vendors entitled to administrative expense priority status under section 503(b)(9) of title 11

of the United States Code (the "***Bankruptcy Code***") (collectively, the "***503(b)(9) Claimants,***" whose

claims shall be identified herein collectively as the "***503(b)(9) Claims***") in an amount not to exceed

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
Allied Nevada Gold Corp. (7115); Allied Nevada Gold Holdings LLC (7115); Allied VGH Inc. (3601); Allied VNC
Inc. (3291); ANG Central LLC (7115); ANG Cortez LLC (7115); ANG Eureka LLC (7115); ANG North LLC
(7115); ANG Northeast LLC (7115); ANG Pony LLC (7115); Hasbrouck Production Company LLC (3601);
Hycroft Resources & Development, Inc. (1989); Victory Exploration Inc. (8144); and Victory Gold Inc. (8139).
The corporate headquarters for each of the above Debtors are located at, and the mailing address for each of the above
Debtors, except Hycroft Resources & Development, Inc., is 9790 Gateway Drive, Suite 200, Reno, NV
89521.  The mailing address for Hycroft Resources & Development, Inc. is P.O. Box 3030, Winnemucca, NV
89446.

$9.2 million (the "***503(b)(9) Claims Cap***") absent further order of the Court; and (d) claims arising

from the postpetition delivery of goods and rendering of services ordered prior to the Petition Date

(as defined herein); and (ii) granting related relief.  In support of this motion, the Debtors submit the

*Declaration of Stephen M. Jones in Support of Chapter 11 Petitions and Various First Day*

*Applications and Motions* (the "***First Day Declaration***") and respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334,

and the *Amended Standing Order of Reference* from the United States District Court for the District

of Delaware, dated as of February 29, 2012 (the "***Amended Standing Order***").  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with

Article III of the United States Constitution.

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are Bankruptcy Code sections 105(a), 363,

503(b), 507(a)(2), 1107(a) and 1108, Rules 6003 and 6004 of the Federal Rules of Bankruptcy

Procedure (the "***Bankruptcy Rules***") and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local***

***Rules***").

## BACKGROUND

### A.      General Background

4.      On the date hereof (the "***Petition Date***"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to

operate their business and manage their properties as debtors in possession pursuant to Bankruptcy

Code sections 1107(a) and 1108.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  No official committees have been appointed.

5.      A description of the Debtors' business and the reasons for filing these chapter 11 cases is set forth in the First Day Declaration filed contemporaneously herewith and incorporated by reference as if fully set forth herein.

**B.      Specific Background**

6.      As discussed herein, various third parties who provide goods and services to the Debtors, such as the Shippers and Warehousemen and Miscellaneous Lien Claimants, may be able to assert liens against the Debtors' assets.  In addition, due to the nature of the Debtors' business, certain vendors may have (a) 503(b)(9) Claims or (b) claims entitled to administrative expense priority under Bankruptcy Code section 503(b)(1)(A) (collectively, the "***503(b)(1) Claims***" and, holders of such claims, the "***503(b)(1) Claimants***") for the Debtors' undisputed obligations arising from prepetition purchase orders outstanding as of the Petition Date (collectively, the "***Purchase Orders***") for goods and services provided to the Debtors on or subsequent to the Petition Date.  It is critical to the Debtors' business operations that the Debtors continue to receive without disruption goods and services, as applicable, from the Shippers and Warehousemen, Miscellaneous Lien Claimants, 503(b)(9) Claimants and 503(b)(1) Claimants (collectively, the "***Trade Claimants***," whose claims shall be identified herein collectively as the "***Trade Claims***").  The Debtors believe that without the relief requested herein, many of these vendors will cease delivering goods and providing services to the Debtors.  Any such disruption would have a devastating effect on the Debtors' operations and their reorganization efforts.

*(i)      Shipping and Warehousing Claims*

7.      The Debtors depend upon the use of reputable shippers and transporters (collectively, the "***Shippers***," whose claims shall be identified as the "***Shipping Claims***") and certain third-party

warehousemen (collectively, the "***Warehousemen,***" whose claims shall be identified as the "***Warehousing Claims,***" and, together with the Shippers, the "***Shippers and Warehousemen,***" whose claims shall be identified as the "***Shipping and Warehousing Claims***"), to transport and store goods that are essential to the Debtors' current and future operations. These items include gold and silver and related minerals (including doré, an alloy of gold and silver), chemicals used in the processing of gold and silver, and equipment and other goods necessary for the day-to-day operation of the Debtors' business. In the ordinary course of business, Shippers and Warehousemen regularly have possession of the Debtors' gold, silver, doré, equipment, mining and processing supplies and other goods.

8.     To prevent immediate and irreparable harm to the Debtors' business, the Debtors seek authority to pay the Shipping and Warehousing Claims subject to the Shipping and Warehousing Claims Cap. If the Shipping and Warehousing Claims are not paid, the Shippers and Warehousemen may assert possessory liens for transportation or storage costs, and refuse to deliver or store the Debtors' goods and supplies until their invoices are paid and their liens released, which will severely disrupt the Debtors' operations. As a result, the Debtors may potentially suffer a significant loss of revenue and future business, which will harm their reorganization efforts.

9.     The Debtors seek authority to only pay those Shipping and Warehousing Claims that they believe, in their business judgment, are necessary or appropriate. The Debtors submit that the total amount to be paid to the Shippers and Warehousemen on account of their prepetition claims is minimal compared to the direct and indirect losses the Debtors would suffer if a Shipper or Warehouseman refused to deliver or store the Debtors' products.

10.     The Debtors expect that, as of the Petition Date, certain Shippers and Warehousemen may have outstanding invoices for goods or supplies (i) delivered to the Debtors before the Petition

4

Date or for those currently in transit; and (ii) currently in storage by the Warehousemen. The estimated value of goods and supplies in transit and storage on the Petition Date is approximately $104.9 million. The Debtors estimate that, as of the Petition Date, approximately $638,000 has accrued and remains unpaid on account of such claims.

11. As with the rest of the Trade Claims discussed herein, to the extent that the Debtors make any payments with respect to any Shipping and Warehousing Claims, no such payment shall be deemed a waiver of the Debtors' rights to challenge the validity and amount of any such claim or the extent, validity, perfection or possible avoidance of any liens asserted by the Shippers and Warehousemen.

*(ii)    Miscellaneous Lien Claims*

12. The Debtors rely on supplies and services from a number of third party contractors and vendors who can assert liens against the Debtors and their property (such as equipment and other assets) if the Debtors fail to pay for the goods delivered or services rendered by such parties. These claimants (the "***Miscellaneous Lien Claimants***") perform various services for the Debtors, including manufacturing and repair of equipment, and manufacturing component parts necessary for the Debtors' mining and processing equipment, and in certain instances, also supply goods to the Debtors.

13. Although the Debtors generally make timely payments to their vendors, as of the Petition Date, certain vendors, such as Miscellaneous Lien Claimants, may not have been paid for their goods or services. As a result, the Miscellaneous Lien Claimants may have the right to assert and perfect mechanics' or artisans' liens (collectively, the "***Miscellaneous Liens***") against the Debtors' assets, notwithstanding the application of the automatic stay under Bankruptcy Code section 362. In fact, pursuant to Bankruptcy Code section 362(b)(3), the act of perfecting such Miscellaneous Liens, to the extent consistent with Bankruptcy Code section 546(b), or to the extent

5

**A-4180**

the act is accomplished within the 30-day period set forth in Bankruptcy Code section 547(e)(2)(A), is expressly excluded from the automatic stay.[2]

14.    Unless the Miscellaneous Lien Claimants are paid for outstanding prepetition amounts, the Debtors believe Miscellaneous Lien Claimants may refuse to perform their ongoing obligations with the Debtors, including installation, servicing, and warranty obligations, may assert Miscellaneous Liens on equipment in the Debtors' possession, or may refuse to release finished goods in their possession.  The Debtors estimate that approximately $3.1 million on account of claims held by the Miscellaneous Lien Claimants (the "***Miscellaneous Lien Claims***") have accrued as of the Petition Date.

15.    In light of the foregoing, the Debtors seek authority, in their reasonable business judgment, to pay and discharge the Miscellaneous Lien Claims, regardless of whether such Miscellaneous Lien Claimants have already perfected their interests, in an amount not to exceed the Miscellaneous Lien Claims Cap.  Notwithstanding the authority requested herein, the Debtors will not pay a Miscellaneous Lien Claimant on account of any prepetition claims unless the Miscellaneous Lien Claimant has perfected or, in the Debtors' judgment, is or may be capable of perfecting one or more liens in respect of such claim irrespective of the automatic stay, nor shall payment of a Miscellaneous Lien Claimant's prepetition claim be deemed to be a waiver of rights regarding the extent, validity, perfection, or possible avoidance of such liens.  The Debtors expect that they will pay only prepetition claims to the Miscellaneous Lien Claimants when they believe, in their business judgment, the benefits to making such payments would exceed the costs, delays, and

---

[2]    Under Bankruptcy Code section 546(b), a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."  11 U.S.C. § 546(b)(1)(A).  Under Bankruptcy Code section 547(e)(2)(A), a transfer for preference analysis purposes takes place "at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time."  11 U.S.C. § 547(e)(2)(A).

6

disruption associated with bringing an action to compel the turnover of goods held by the Miscellaneous Lien Claimants or otherwise discharging the lien in question.

(iii)    <em>503(b)(9) Claims</em>

16.    Certain vendors may be entitled to administrative expense priority under Bankruptcy Code section 503(b)(9) to the extent the Debtors received goods, supplies or materials  from a vendor, in the ordinary course of business, within the twenty-day period immediately preceding the Petition Date.  The Debtors' ongoing ability to obtain goods as provided herein is key to their survival and necessary to preserve the value of their estates.  Indeed, of the approximately $9.2 million in 503(b)(9) Claims that have accrued but remain unpaid as of the Petition Date, approximately 78% are owed to vendors who provide the Debtors with goods that are vital to the Debtors' operations and would therefore be deemed as Critical Vendors (as defined in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Certain Prepetition Claims of Critical Vendors and (II) Granting Related Relief* (the "***Critical Vendors Motion***")).  For the avoidance of doubt, the Debtors have not included such 503(b)(9) Claims in their estimation of the Critical Vendor Claims and the Critical Vendor Caps (each as defined in the Critical Vendors Motion).

17.    Because the Bankruptcy Code requires the Debtors to pay such claims in full to confirm a plan of reorganization, the payment of these 503(b)(9) Claims merely affects the timing of such payments, and not the amount.  Accordingly, the Debtors seek authority, but not direction, in their sole discretion, to pay the 503(b)(9) Claims in the ordinary course of business to the extent necessary to preserve the going concern value of the Debtors' chapter 11 estates, subject to the 503(b)(9) Claims Cap.  As with the rest of the Trade Claims discussed herein, however, to extent that the Debtors make any payments with respect to a 509(b)(9) Claim, no such payment shall be

7

deemed a waiver of the rights of the Debtors and their estates to contest the validity and amount of any such claim.

(iv)    <em>503(b)(1) Claims</em>

18.      As of the Petition Date, the Debtors have certain prepetition purchase orders outstanding (collectively, the "**Purchase Orders**") with vendors for goods and services, for which the delivery has not yet occurred and will not occur until on or subsequent to the Petition Date. The delivery of such goods and services by the 503(b)(1) Claimants is essential to the uninterrupted operation of the Debtors' business. The Debtors believe that honoring the 503(b)(1) Claims is in the ordinary course of their business and, thus, Court approval to pay the 503(b)(1) Claimants is not required. As a result of the commencement of these chapter 11 cases, however, these vendors may perceive a risk that they will be treated as prepetition unsecured creditors for the cost of any shipments made or services provided pursuant to the Purchase Orders, and may refuse to deliver such goods or provide such services to the Debtors, unless the Debtors issue substitute purchase orders postpetition or provide other assurances of payment, including requiring less favorable trade terms than the prepetition terms between the Debtors and the vendors. Alternatively, some 503(b)(1) Claimants may refuse to do business with the Debtors after the Petition Date due to the failure to honor the existing Purchase Orders, thereby forcing the Debtors to find alternate suppliers with less favorable trade terms. Additionally, requiring the Debtors to issue substitute purchase orders on a postpetition basis also would be administratively burdensome, time-consuming, and counterproductive to the Debtors' chapter 11 cases, and would inevitably lead to delays in the Debtors' receipt of goods and services, ultimately resulting in the disruption of the Debtors' business operations.

19.      Accordingly, in an abundance of caution and to prevent any disruption to the Debtors' operations, eliminate the administrative burden associated with issuing substitute Purchase Orders,

and facilitate a smooth transition into chapter 11, the Debtors seek an order (a) granting administrative expense priority under Bankruptcy Code section 503(b)(1) to all of the Debtors' undisputed obligations arising from the acceptance of goods and services subject to Purchase Orders and (b) authorizing, but not directing, the Debtors, in their sole discretion, to satisfy such obligations in the ordinary course of business. As with the rest of the Trade Claims, however, to the extent that the Debtors make any payments with respect to any 503(b)(1) Claims, no such payment shall be deemed a waiver of the rights of the Debtors and their estates to contest the validity and amount of such claims.

**C.      Proposed Terms of Payment of Trade Claims**

20.      Subject to the terms set forth herein, the Debtors request authority, but not direction, to condition the payment of the Trade Claims on the written agreement of individual Trade Claimants to continue to provide goods and services, as applicable, to the Debtors during the pendency of these chapter 11 cases on favorable terms consistent with pre-petition practices (the "***Historical Trade Terms***"), unless otherwise waived by the Debtors. The Debtors request the right to negotiate trade terms (the "***Negotiated Trade Terms***") with any Trade Claimant demanding terms less favorable to the Debtors (to the extent the Debtors determine such terms are necessary to procure essential goods or services or are otherwise in the best interests of the Debtors' estates and creditors). Any agreement between the Debtors and a particular Trade Claimant (each, a "***Trade Agreement***"), once agreed to and accepted by the Trade Claimant, shall be a legally binding contractual arrangement between the parties governing the commercial trade relationship. The Debtors seek authority to enter into Trade Agreements, if and at the time they determine in their business judgment that such an agreement is appropriate for their postpetition operations. The Debtors also explicitly seek authority to pay the Trade Claims in the event that no Trade Agreement has been reached, if the Debtors determine, in their business judgment, that failure to pay Trade

Claims is likely to result in irreparable harm to the Debtors' business operations or that a Trade Agreement is unnecessary or not available.

21.     In the event that any Trade Claimant that has received payment for its Trade Claims refuses to continue to provide goods and services, as applicable, on the Historical Trade Terms or the Negotiated Trade Terms following receipt of payment of its Trade Claim, the Debtors seek authority, without further order of the Court, to declare that the provisional payments made to the Trade Claimant on account of its Trade Claim be deemed to have been in payment of the then-outstanding postpetition obligations owed to such Trade Claimant.  In such an instance, the previously paid Trade Claim of the applicable Trade Claimant shall be reinstated as a Trade Claim in the amount deemed by the Debtors to have been in payment of any then-outstanding postpetition claims of such Trade Claimant.  To the extent that the payments made to the Trade Claimant on account of the previously paid Trade Claims exceed the postpetition amounts then owed to such Trade Claimant, the Debtors and their estates reserve all right to recover such payments.  In short, the Debtors seek to return the parties to their respective positions in the event the Trade Claimant refuses to supply goods and/or services to the Debtors on Historical Trade Terms or Negotiated Trade Terms following receipt of payment on account of its Trade Claim.

22.     The Debtors further request that any Trade Claimant who accepts payment from the Debtors on account of a Trade Claim, shall be deemed to have agreed to the terms and provisions of the Order and shall be deemed to have waived, to the extent so paid, any and all prepetition claims, of whatever type, kind or priority, against the Debtors, their properties and estates, their directors officers and members and any funds and other property held in trust by the Debtors that do not constitute "property of the estate" under Bankruptcy Code section 541.

## RELIEF REQUESTED

23.    By this motion, the Debtors seek entry of an order (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay the (a) Shipping and Warehousing Claims in an amount not to exceed the Shipping and Warehousing Claims Cap, (b) Miscellaneous Lien Claims in an amount not to exceed the Miscellaneous Lien Claims Cap, (c) 503(b)(9) Claims in an amount not to exceed the 503(b)(9) Claims Cap, and (d) 503(b)(1) Claims; and (ii) granting related relief.

## SUPPORTING AUTHORITY

**A.    Payment of the Shipping and Warehousing Claims and Miscellaneous Lien Claims is Justified Under Bankruptcy Code Section 363(b) and Warranted Under the Doctrine of Necessity**

24.    Courts generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business' going-concern value. *In re Motor Coach Indus. Int'l Inc.,* 2009 WL 330993, *at 2 n.5 (Bankr. D. Del. Feb. 10, 2009) ("The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor.")*; In re Just for Feet, Inc*., 242 B.R. 821, 824-25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants). When authorizing payments of certain prepetition obligations, courts have relied upon several legal theories rooted in Bankruptcy Code sections 363(b) and 105(a).

25.     Pursuant to Bankruptcy Code sections 1107(a) and 1108, debtors in possession are fiduciaries holding the bankruptcy estate and operating the business for the benefit of creditors and, if the value justifies, the equity owners. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Consistent with such fiduciary duties, courts have authorized payment of prepetition obligations under Bankruptcy Code section 363(b) where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

26.     Courts have also authorized payment of prepetition claims in appropriate circumstances under Bankruptcy Code section 105(a). Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. *See In re Just for Feet, Inc.*, 242 B.R. at 825; *In re Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor). Specifically, the Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994)

12

(confirming doctrine of necessity, *i.e.*, whether payment is essential to continued operation of debtor's business, is the applicable standard in the Third Circuit for enabling the court to authorize payment of prepetition claims prior to confirmation of reorganization plan); *In re UNR Indus., Inc.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization).

27.     Indeed, the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981), holding that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor.  *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *Columbia Gas Sys., Inc.*, 171 B.R. at 191–92 (same).

28.     The necessity of payment doctrine is designed to foster the rehabilitation of a debtor in reorganization cases, which courts have recognized is "the paramount policy and goal of Chapter 11."  *In re Ionosphere Clubs*, 98 B.R. at 176; *In re Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a

confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process").

29.     The Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption.  Specifically, the authority, but not direction, to satisfy the Shipping and Warehousing Claims and Miscellaneous Lien Claims in the initial days of these chapter 11 cases without disrupting the Debtors' business operations will send a clear signal to the marketplace, including key suppliers and customers, that the Debtors are willing and able to conduct business as usual during these chapter 11 cases.

30.     The Debtors' operations also require the seamless coordination of a multitude of unrelated third-parties at every stage in the supply chain.  Collectively, the Debtors' supply chain ensures that the Debtors receive all of the products and supplies necessary to operate their business and provide their customers with gold and silver.  Any significant disruption in the Debtors' supply chain, such as a vendor halting delivery of certain necessary goods and/or services, could result in the Debtors not having sufficient products and supplies to operate their business, which would significantly impair their restructuring efforts.

31.     Moreover, Shippers and Warehousemen and Miscellaneous Lien Claimants may be entitled under applicable non-bankruptcy law to assert certain possessory liens on the Debtors'

goods, merchandise or finished products in their possession (notwithstanding the automatic stay

under Bankruptcy Code section 362) in an attempt to secure payment of their prepetition claim.  As

described above, under Bankruptcy Code section 362(b)(3), the act of perfecting such liens, to the

extent consistent with Bankruptcy Code section 546(b), is expressly excluded from the automatic

stay.[3]  As a result, the Debtors anticipate that certain of the Shippers and Warehousemen and

Miscellaneous Lien Claimants may assert and/or perfect liens, refuse to turn over goods in their

possession or stop performing their ongoing obligations.  Even absent a valid lien, to the extent any

of these vendors have possession of the Debtors' inbound inventory or outbound products, mere

possession or retention could severely disrupt the Debtors' operations.

**B.    The Court Should Allow the Debtors to Pay the 503(b)(9) Claims in the Ordinary
        Course of Business and in Accordance with the Debtors' Business Judgment Under
        Bankruptcy Code Section 363(b)**

        32.     As noted above, certain vendors may be entitled to request an administrative expense

priority claim under Bankruptcy Code section 503(b)(9) to the extent the Debtors received goods, in

the ordinary course of business, within the twenty-day period immediately prior to the Petition Date.

Because such claims are entitled to priority status under Bankruptcy Code section 503(b)(9), the

Debtors must pay the claims in full to confirm a plan of reorganization.  *See* 11 U.S.C. §

1129(a)(9)(A) (requiring payment in full of claims entitled to priority).  Although Bankruptcy Code

section 503(b)(9) does not specify a time for payment of these expenses, bankruptcy courts have the

discretion to allow for distributions to administrative claimants prior to confirmation if a debtor has

the ability to pay and there is a need to pay.  Indeed, nothing in the Bankruptcy Code prohibits the

Debtors from paying such claims sooner if they choose to do so or prevents this Court from

exercising its discretion to authorize the postpetition payment of such obligations prior to

---

[3]    *See* 11 U.S.C. § 546(b)(1)(A) (a debtor's lien avoidance powers "are subject to any generally applicable law
       that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such
       property before the date of perfection").

confirmation of a chapter 11 plan. *See, e.g., In re Dura Auto. Sys. Inc.*, No. 06-11202 (KJC) (Bankr.

D. Del. Oct. 31, 2006) Hr'g Tr. 49:21-23 ("I think arguably the [D]ebtor could pay its 503(b)(9)

claimants without court approval."); *see also In re Global Home Prods., LLC*, No. 06-10340 (KG),

2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of

the payment of that administrative expense claim is left to the discretion of the Court").  Thus,

payment of claims arising under section 503(b)(9) affects the timing, but not the amount, of such

payment.  As a result, the Debtors respectfully submit that they should have the authority (but not the

direction) to pay such claims, subject to the 503(b)(9) Claims Cap, in the ordinary course of business

and in accordance with their business judgment during the pendency of the chapter 11 cases to the

extent necessary to preserve the going concern value of the chapter 11 estates.

33.     Absent payment of the 503(b)(9) Claims at the outset of these chapter 11 cases—

which merely accelerates the timing of payment and not the ultimate treatment of such claims—the

Debtors could be denied access to the equipment and goods that are essential to the Debtors'

business operations.  Failure to pay these claims at the outset of the chapter 11 cases in the ordinary

course of business would be detrimental to the Debtors' ongoing operations and cause the Debtors'

vendor base to withhold support for the Debtors during the chapter 11 process.  Such vendors could

accelerate or eliminate favorable trade terms.  Needless to say, such costs and distractions could

impair the Debtors' ability to stabilize their operations at this critical juncture to the detriment of all

stakeholders.

34.     In addition, courts in this District and others have regularly authorized the payment of

claims arising under Bankruptcy Code section 503(b)(9) in the ordinary course of business.  *See,*

*e.g., In re QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del. Mar. 17, 2014), Docket No. 46;

*In re Ormet Corp.*, No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013), Docket No. 48 (granting

relief on an interim basis); *In re Overseas Shipholding Group, Inc.*, No. 12-20000 (PJW) (Bankr. D.

Del. Nov. 15, 2012), Docket No. 42 (same); *In re Blitz U.S.A., Inc.*, No. 11-13603 (PJW) (Bankr. D.

Del. Nov. 10, 2011), Docket No. 39 (same); *In re Amicus Wind Down Corp. (f/k/a Friendly Ice

Cream Corp.)*, No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011), Docket No 57.

C.    **Paying the Shipping and Warehousing Claims, Miscellaneous Lien Claims and
503(b)(9) Claims Now Will Not Affect Creditor Recoveries**

35.    The relief requested herein will not affect the recovery of creditors in these chapter 11

cases. In instances where the amounts owed to a Shipper, Warehouseman or Miscellaneous Lien

Claimant is less than the value of the goods that could be held to secure a Shipping and Warehousing

Claim or a Miscellaneous Lien Claim, the Shipper, Warehouseman or Miscellaneous Lien Claimant

is arguably a fully-secured creditor of the Debtors' estates to the extent of the value of the goods that

it holds. As discussed above, to confirm a chapter 11 plan, the Bankruptcy Code requires payment

in full of the 503(b)(9) Claims as administrative claims. In such instances, payment now only

provides the Shippers and Warehousemen, Miscellaneous Lien Claimants and 503(b)(9) Claimants

with what they would be entitled to receive under a plan of reorganization, only without any interest

costs that might otherwise accrue during these chapter 11 cases. Accordingly, payment to such

Claimants at the outset of these cases will not affect recoveries to other creditors under any chapter

11 plan, and instead, solely impacts the timing of these payments.

D.    **The Court Should Confirm that the Claims Arising out of the Purchase Orders are
Administrative Expense Claims and Payment of Such Claims is Appropriate**

36.    Pursuant to Bankruptcy Code section 503(b)(1)(A), obligations that arise in

connection with the postpetition delivery of goods and services, including goods ordered prepetition,

are, by definition, administrative expenses because they benefit the estate postpetition. Although the

Debtors believe that they therefore have the authority to make payment for any goods received

postpetition (irrespective of the time the orders were first placed) in the ordinary course of their

business, confirmation of that authority is appropriate and necessary in the instant case. The requested relief will provide these critical parties with the necessary assurance that their valid postpetition claims will be given administrative expense priority status, and that they will continue to be paid by the Debtors in the ordinary course consistent with the historical trade practices in effect as of the Petition Date. Furthermore, any attempt by the 503(b)(1) Claimants to interrupt goods in transit will create unanticipated supply shortages that will be harmful to the going concern value of the Debtors' business.

37.     Absent the relief requested herein, the Debtors may be required to expend substantial time and resources convincing the 503(b)(1) Claimants of the Debtors' authority to make certain payments, reissuing Purchase Orders and/or establishing the Debtors' right to retain the goods supplied under the Purchase Orders. The disruption to the continuous and timely flow of the goods and services necessary to operate the Debtors' business could hinder the Debtors' operations and subject them to tremendous expense, all to the detriment of the Debtors' stakeholders. Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of claims arising out of the Purchase Orders and should authorize, but not direct, the Debtors, in their sole discretion, to pay the amounts outstanding thereunder in the ordinary course of business.

38.     Courts in this District frequently have granted relief similar to that requested in this motion in other chapter 11 cases. *See*, *e.g.*, *In re RadioShack Corp.*, No. 15-10197 (KJC) (Bankr. D. Del. Feb. 9, 2015), Docket No. 162; *In re The Wet Seal, Inc.*, No. 15-10081 (CSS) (Bankr. D. Del. Jan. 20, 2015), Docket No. 102; *In re Deb Stores Holding LLC*, No. 14-12676 (MFW) (Bankr. D. Del. Dec. 5, 2014), Docket No. 48; *In re QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del. March 17, 2014), Docket No. 46; *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 4, 2013), Docket No. 97; *In re Ormet Corp.*, No. 13-10334 (MFW) (Bankr. D. Del. Mar. 20,

2013), Docket No. 130; *In re Overseas Shipholding Group, Inc.*, No. 12-20000 (PJW) (Bankr. D.

Del. Dec. 7, 2012), Docket No. 147; *In re Blitz U.S.A., Inc.*, No. 11-13603 (PJW) (Bankr. D. Del.

Dec. 5, 2011), Docket No. 110.[4]

### CAUSE EXISTS TO AUTHORIZE THE DEBTORS' FINANCIAL
### INSTITUTIONS TO HONOR CHECKS AND ELECTRONIC FUND TRANSFERS

39.     The Debtors have sufficient funds to remit the amounts described herein in the

ordinary course of business by virtue of expected cash flows from ongoing business operations and

anticipated access to debtor in possession financing.  Also, under the Debtors' existing cash

management system, the Debtors have made arrangements to identify checks or wire transfer

requests as relating to an authorized payment in respect of the relief requested herein.  Accordingly,

the Debtors believe that checks or wire transfer requests, other than those relating to authorized

payments, will not be honored inadvertently and the Court should authorize all applicable financial

institutions, when requested by the Debtors, to receive, process, honor and pay any and all checks or

wire transfer requests in respect of the relief requested herein.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

40.     For a debtor to obtain relief to make pre-plan payments within 21 days of the Petition

Date, it must establish that making such payments satisfies the requirements mandated by

Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and

irreparable harm." Fed. R. Bankr. P. 6003.  If a debtor's prospect of reorganizing is threatened, or

swift diminution in value of the debtor's estate is likely, absent the granting of the requested relief,

immediate and irreparable harm likely exists.  *See In re WorldSpace, Inc.*, No. 08–12412 (PJW),

2008 WL 8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (granting emergency motions for

postpetition financing, adequate protection and modification of the stay where the court found that

---

[4]    Copies of these orders are available upon request to the Debtors' proposed counsel.

the relief was necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operations of the debtors' business); *In re New World Pasta Co.*, No. 04–02817 (MDF), 2004 WL 5651052, at \*5 (Bankr. M.D. Pa. July 9, 2004) (same); *see also In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate and irreparable harm" exists where loss of the business threatens the ability to reorganize).

41.     As discussed above, the continuity and viability of the Debtors' business operations depends heavily on the uninterrupted storage of the Debtors' equipment, and delivery of mining and production supplies to the Debtors and gold and silver to the Debtors' customers. The failure of any vendor to deliver or store any essential products or supplies would have immediate and detrimental consequences to the Debtors' business and would decrease value to the detriment and prejudice of all of the Debtors' stakeholders. The Debtors cannot risk even the perception that they will produce anything but the highest level of gold and silver quality and quantity for the duration of these chapter 11 cases. Moreover, it is the Debtors' business judgment that continuation of their positive relationship with the Trade Claimants is critical to their continued operations and greatly increases the likelihood of a successful reorganization. Accordingly, the Debtors respectfully submit that the relief requested herein is necessary to avoid immediate and irreparable harm and, therefore, Bankruptcy Rule 6003 is satisfied.

## SATISFACTION OF BANKRUPTCY RULE 6004(a) AND 6004(h)

42.     For the reasons described above, the immediate payment of the Trade Claims is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to reorganize. Accordingly, given the nature of the relief requested herein, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that either applies.

## DEBTORS' RESERVATION OF RIGHTS

43.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

44.     Notice of this motion has been provided to the following parties, or, in lieu thereof, their counsel:  (a) the Office of the United States Trustee for the District of Delaware; (b) the entities on the Consolidated List of Creditors Holding the 25 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) Stroock & Stroock & Lavan LLP, as lead counsel, and Young Conaway Stargatt & Taylor, LLP, as Delaware counsel, to the proposed DIP Lenders, proposed DIP Agent and Noteholder Ad Hoc Group; (d) the proposed DIP Agent; (e) the Indenture Trustee under that certain Indenture, dated as of May 25, 2012; (f) The Bank of Nova Scotia, as the administrative and co-collateral agent (the "*Administrative Agent*") under the Third Amended and Restated Credit Agreement, dated as of May 8, 2014 (the "*Credit Agreement*"); (g) Wachtell, Lipton, Rosen & Katz, as counsel to the Administrative Agent; (h) Wells Fargo Bank, National Association, as co-collateral agent under the Credit Agreement (the "*Co-Collateral Agent*"); (i) Paul Hastings LLP, as counsel to the Co-Collateral Agent; and (j) all parties entitled to notice pursuant to Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

21

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court (a) enter an order granting the relief requested herein and (b) grant such other and further relief

as may be just, proper and equitable.

Wilmington, Delaware
Date:  March 10, 2015

**BLANK ROME LLP**

By: */s/ Stanley B. Tarr* _____
Stanley B. Tarr (No. 5535)
Bonnie Glantz Fatell (No. 3809)
Michael D. DeBaecke (No. 3186)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

-and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff (*pro hac vice* admission pending)
Philip C. Dublin (*pro hac vice* admission pending)
Alexis Freeman (*pro hac vice* admission pending)
Kristine G. Manoukian (No. 5509)
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Allied Nevada Gold Corp., *et al.*,[1] | ) | Case No. 15-_____ ( ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |
| | | **Re: Docket No. ___** |

**ORDER (I) AUTHORIZING THE DEBTORS
TO PAY CERTAIN PREPETITION CLAIMS
(A) OF SHIPPERS AND WAREHOUSEMEN, (B)
MISCELLANEOUS LIEN CLAIMANTS, (C) ARISING
UNDER BANKRUPTCY CODE SECTION 503(B)(9) AND (D)
INCURRED IN CONNECTION WITH POSTPETITION DELIVERY
OF GOODS AND SERVICES AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), for entry of an order (this "***Order***") (i) authorizing, but not directing, the Debtors to pay the (a) Shipping and Warehousing Claims in an amount not to exceed the Shipping and Warehousing Claims Cap, (b) Miscellaneous Lien Claims in an amount not to exceed the Miscellaneous Lien Claims Cap, (c) 503(b)(9) Claims in an amount not to exceed the 503(b)(9) Claims Cap and (d) 503(b)(1) Claims, in the ordinary course of business as such claims come due and (ii) authorizing the financial institutions, when requested by the Debtors, to receive, possess, honor and pay all checks presented for payment and electronic payment requests related to the Trade Claims, all as set forth more fully in the Motion; and upon the First Day Declaration; and this Court

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Allied Nevada Gold Corp. (7115); Allied Nevada Gold Holdings LLC (7115); Allied VGH Inc. (3601); Allied VNC Inc. (3291); ANG Central LLC (7115); ANG Cortez LLC (7115); ANG Eureka LLC (7115); ANG North LLC (7115); ANG Northeast LLC (7115); ANG Pony LLC (7115); Hasbrouck Production Company LLC (3601); Hycroft Resources & Development, Inc. (1989); Victory Exploration Inc. (8144); and Victory Gold Inc. (8139). The corporate headquarters for each of the above Debtors are located at, and the mailing address for each of the above Debtors, except Hycroft Resources & Development, Inc., is 9790 Gateway Drive, Suite 200, Reno, NV 89521.  The mailing address for Hycroft Resources & Development, Inc. is P.O. Box 3030, Winnemucca, NV 89446.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C. §§ 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Motion; and upon the First Day Declaration, the record of the hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy in the ordinary course of business all valid Shipping and Warehousing Claims in an aggregate amount not to exceed $638,000 absent further order of the Court.

3.      The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy in the ordinary course of business all valid Miscellaneous Lien Claims in an aggregate amount not to exceed $3.1 million absent further order of the Court.

4.      The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy in the ordinary course of business all valid 503(b)(9) Claims in an aggregate amount not to exceed $9.2 million absent further order of the Court.

5. All undisputed amounts for goods and services actually received and accepted by the Debtors on or after the Petition Date relating to the Purchase Orders are hereby deemed postpetition administrative expense claims pursuant to Bankruptcy Code section 503(b)(1) and the Debtors are authorized, but not directed, in their sole discretion, to pay such amounts in the ordinary course of business consistent with the parties' historical trade practices in effect prior to the Petition Date.

6. The Debtors are authorized, but not directed, to enter into Trade Agreements and to condition the payment of the Trade Claims upon execution of such agreements by the individual Trade Claimants to continue to provide goods and services, as applicable, to the Debtors during the pendency of these chapter 11 cases on the Historical Trade Terms or the Negotiated Trade Terms; *provided*, *however*, that the Debtors' inability to enter into a Trade Agreement shall not preclude the Debtors from paying a Trade Claim when, in the exercise of the Debtors' business judgment, such payment is appropriate for the Debtors' operations and is in the best interests of their estates and creditors.

7. Any Trade Claimant that accepts any payments made by the Debtors pursuant to this Order on account of its Trade Claim, in return for payment thereof, shall be deemed to have waived and released any previously asserted lien on the assets of the Debtors and their estates on account of such Trade Claim.

8. In the event that any Trade Claimant that has received payment for its Trade Claim refuses to continue to provide goods and services, as applicable, on the Historical Trade Terms or the Negotiated Trade Terms following receipt of payment of its Trade Claim, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition

3

A-4201

claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may then take any and all appropriate steps to cause such party to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to the party.

9.     The Debtors are authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the chapter 11 cases with respect to the payments approved by this Court hereunder.

10.    The banks and financial institutions on which checks were drawn or electronic payment requests were made in payment of the obligations approved herein are authorized and directed, when requested by the Debtors, to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Order.

11.    Nothing herein shall prohibit the Debtors from seeking Court authority to increase the prepetition amounts authorized to be paid herein.

12.    Nothing in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as an admission as to the validity or priority of any claim or lien against the Debtors, an approval or assumption of any agreement, contract or lease pursuant to Bankruptcy Code section 365 or a waiver of the Debtors, or shall impair the Debtors' ability, to contest the validity and amount of any payment made pursuant to this Order.

4

13.     Notwithstanding anything to the contrary in this Order, any payment dare or to be made under this Order, and any authorization contained in this Order, shall be subject to the requirements imposed on the Debtors under any order(s) of this Court approving the Debtors' debtor-in-possession financing facility and use of cash collateral and any budget in connection therwith.

14.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

15.     Notice of the Motion as provided herein shall be deemed good and sufficient and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

16.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

18.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Wilmington, Delaware
Date: _____, 2015                    _____
                                            United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Allied Nevada Gold Corp., *et al.*,[1] | ) | Case No. 15-10503 (MFW) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  |  | Re: Docket Nos. 11, 69 & _158_ |

**FINAL ORDER**
**(I) AUTHORIZING THE DEBTORS**
**TO PAY CERTAIN PREPETITION CLAIMS**
**(A) OF SHIPPERS AND WAREHOUSEMEN, (B)**
**MISCELLANEOUS LIEN CLAIMANTS, (C) ARISING**
**UNDER BANKRUPTCY CODE SECTION 503(B)(9) AND (D)**
**INCURRED IN CONNECTION WITH POSTPETITION DELIVERY**
** OF GOODS AND SERVICES AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), for entry of an order (this "***Order***") (i) authorizing, but not directing, the Debtors to pay the (a) Shipping and Warehousing Claims in an amount not to exceed the Shipping and Warehousing Claims Cap, (b) Miscellaneous Lien Claims in an amount not to exceed the Miscellaneous Lien Claims Cap, (c) 503(b)(9) Claims in an amount not to exceed the 503(b)(9) Claims Cap and (d) 503(b)(1) Claims, in the ordinary course of business as such claims come due and (ii) authorizing the financial institutions, when requested by the Debtors, to receive, process, honor and pay all checks presented for payment and electronic payment requests related to the Trade

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Allied Nevada Gold Corp. (7115); Allied Nevada Gold Holdings LLC (7115); Allied VGH Inc. (3601); Allied VNC Inc. (3291); ANG Central LLC (7115); ANG Cortez LLC (7115); ANG Eureka LLC (7115); ANG North LLC (7115); ANG Northeast LLC (7115); ANG Pony LLC (7115); Hasbrouck Production Company LLC (3601); Hycroft Resources & Development, Inc. (1989); Victory Exploration Inc. (8144); and Victory Gold Inc. (8139). The corporate headquarters for each of the above Debtors are located at, and the mailing address for each of the above Debtors, except Hycroft Resources & Development, Inc., is 9790 Gateway Drive, Suite 200, Reno, NV 89521. The mailing address for Hycroft Resources & Development, Inc. is P.O. Box 3030, Winnemucca, NV 89446.

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

145200.01601/100013655v.2

Claims, all as set forth more fully in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding in accordance with 28 U.S.C. §§ 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Motion; and upon the record of the final hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy in the ordinary course of business all valid Shipping and Warehousing Claims in an aggregate amount not to exceed $638,000 absent further order of the Court.

3. The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy in the ordinary course of business all valid Miscellaneous Lien Claims in an aggregate amount not to exceed $3.1 million absent further order of the Court.

4. The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy in the ordinary course of business all valid 503(b)(9) Claims in an aggregate amount not to exceed $9.2 million absent further order of the Court.

2

A-4205

5.      All undisputed amounts for goods and services actually received and accepted by the Debtors on or after the Petition Date relating to the Purchase Orders are hereby deemed postpetition administrative expense claims pursuant to Bankruptcy Code section 503(b)(1) and the Debtors are authorized, but not directed, in their sole discretion, to pay such amounts in the ordinary course of business consistent with the parties' historical trade practices in effect prior to the Petition Date.

6.      The Debtors are authorized, but not directed, to enter into Trade Agreements and to condition the payment of the Trade Claims upon execution of such agreements by the individual Trade Claimants to continue to provide goods and services, as applicable, to the Debtors during the pendency of these chapter 11 cases on the Historical Trade Terms or the Negotiated Trade Terms; *provided, however*, that the Debtors' inability to enter into a Trade Agreement shall not preclude the Debtors from paying a Trade Claim when, in the exercise of the Debtors' business judgment, such payment is appropriate for the Debtors' operations and is in the best interests of their estates and creditors.

7.      In the event that any Trade Claimant that has received payment for its Trade Claim refuses to continue to provide goods and services, as applicable, on the Historical Trade Terms or the Negotiated Trade Terms following receipt of payment of its Trade Claim, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may then take any and all appropriate steps to cause such party to repay payments made to it on account of its

prepetition claim to the extent that such payments exceed the postpetition amounts then owing to the party.

8.      The Debtors are authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the chapter 11 cases with respect to the payments approved by this Court hereunder.

9.      The banks and financial institutions on which checks were drawn or electronic payment requests were made in payment of the obligations approved herein are authorized and directed, when requested by the Debtors, to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Final Order.

10.      Nothing herein shall prohibit the Debtors from seeking Court authority to increase the prepetition amounts authorized to be paid herein.

11.      Nothing in the Motion or this Final Order, nor as a result of any payment made pursuant to this Final Order, shall be deemed or construed as an admission as to the validity or priority of any claim or lien against the Debtors, an approval or assumption of any agreement, contract or lease pursuant to Bankruptcy Code section 365 or a waiver of the Debtors, or shall impair the Debtors' ability, to contest the validity and amount of any payment made pursuant to this Final Order.

12.      Notwithstanding anything to the contrary in this Final Order, any payment made or to be made under this Final Order, and any authorization contained in this Final Order, shall be subject to the requirements imposed on the Debtors under any order(s) of this Court approving the Debtors'

debtor-in-possession financing facility and use of cash collateral and any budget in connection therewith.

13. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

14. Notice of the Motion as provided herein shall be deemed good and sufficient and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

15. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

16. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order.

17. The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Final Order.

Wilmington, Delaware
Date: April 15, 2015

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

145200.01601/100013655v.2

Case 14-20538-SHL Doc 7253-4 Filed 02/29/20 Entered 02/29/20 16:52:24 of 458

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QCE FINANCE LLC, *et al.*,[1] | ) | Case No. 14-_____ ( ) |
|  | ) |  |
| Debtors. | ) | Joint Administration Requested |
|  | ) |  |

**DEBTORS' MOTION FOR ENTRY OF AN**
**ORDER (I) AUTHORIZING THE DEBTORS TO PAY**
**CERTAIN PREPETITION CLAIMS (A) ARISING UNDER**
**THE PERISHABLE AGRICULTURE COMMODITIES ACT,**
**(B) OF SHIPPERS, (C) ARISING UNDER BANKRUPTCY CODE SECTION**
**503(B)(9) AND (D) CLAIMS INCURRED IN CONNECTION WITH POSTPETITION**
**DELIVERY OF GOODS AND SERVICES AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") seek

entry of an order (the "***Order***"), substantially in the form attached hereto as **Exhibit A**:

(i) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course

of business as such claims come due: (a) all claims arising under the Perishable Agricultural

Commodities Act of 1930 (as amended, modified, or supplemented from time to time, "***PACA***"), and

any and all state statutes of similar effect, of PACA Vendors (as defined herein, whose claims shall

be identified herein collectively as the "***PACA Claims***"); (b) prepetition claims of Shippers (as

defined herein); (c) claims of vendors entitled to administrative expense priority status under section

503(b)(9) of title 11 of the United States Code (the "***Bankruptcy Code***") (collectively, the "***503(b)(9)***

***Claimants***", whose claims shall be identified herein collectively as the "***503(b)(9) Claims***"); and

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number,
      are: QCE Finance LLC (7897); American Food Distributors LLC (8099); National Marketing Fund Trust (4951);
      QAFT, Inc. (6947); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC
      (7714); Quiznos Canada Holding LLC (3220); Quiznos Global LLC (2772); Restaurant Realty LLC (8293); The
      Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); The Regional Advertising Program
      Trust (2035); and TQSC II LLC (86831).  The Debtors' corporate headquarters are located at, and the mailing
      address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

(d) claims arising from the postpetition delivery of goods and rendering of services ordered prior to the Petition Date (as defined herein); and (ii) granting related relief. In support of this motion, the Debtors submit the declaration of Stuart K. Mathis in support of the First Day Pleadings (the "***First Day Declaration***") and respectfully state as follows:

## JURISDICTION

1.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested herein are Bankruptcy Code sections 105(a), 363, 503(b), 507(a)(2), 1107(a) and 1108, Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***").

## BACKGROUND

### A. General Background

4.     On the date hereof (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. No official committees have been appointed or designated.

5.     A description of the Debtors' business and the reasons for filing these chapter 11 cases is set forth in the First Day Declaration filed contemporaneously herewith and incorporated by reference as if fully set forth herein.

## B. Specific Background

6.      As discussed herein, various third parties who provide goods and services to the Debtors, such as the PACA Vendors and Shippers, may be able to assert liens against the Debtors' assets. In addition, due to the nature of the Debtors' business, certain vendors may have (a) 503(b)(9) Claims or (b) claims entitled to administrative expense priority under Bankruptcy Code section 503(b)(1)(A) (collectively, the "**503(b)(1) Claims**" and, holders of such claims, the "**503(b)(1) Claimants**") for the Debtors' undisputed obligations arising from prepetition purchase orders outstanding as of the Petition Date (collectively, the "**Purchase Orders**") for goods and services provided to the Debtors on or subsequent to the Petition Date. It is critical to the Debtors' business operations that the Debtors and their franchisees continue to receive without disruption goods and services, as applicable, from the PACA Vendors, Shippers, 503(b)(9) Claimants and 503(b)(1) Claimants (collectively, the "**Trade Claimants**", whose claims shall be identified herein collectively as the "**Trade Claims**"). The Debtors believe that without the relief requested herein, many of these vendors will cease delivering goods and providing services to the Debtors. Any such disruption would have a devastating effect on the Debtors' operations and their reorganization efforts.

### i.    *PACA Claims*

7.      To ensure that the Debtors and their franchisees continue to receive a constant supply of fresh fruits and vegetables postpetition, the Debtors seek authority, but not direction, in their sole discretion, to continue to pay PACA Claims to those vendors who supply the Debtors with fruits and vegetables (collectively, the "**PACA Vendors**") in the ordinary course of business and consistent with their historical practices in effect prior to the Petition Date.

8.      Congress enacted PACA to regulate the sale of "perishable agricultural commodities" and protect sellers of such commodities. *See* 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b); *see also*

*Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995). Under PACA, the term "perishable agricultural commodity" is generally defined as "fruits and fresh vegetables of every kind and character" "whether or not frozen or packed in ice." 7 U.S.C. § 499a(b)(4). PACA provides various protections to fresh fruit and vegetable sellers, including the establishment of a statutory constructive trust (the "***PACA Trust***"), consisting of a purchaser's entire inventory of food or other derivatives of perishable agricultural commodities, the product derived therefrom and the proceeds related to any sale of the commodities or products (collectively, the "***PACA Trust Assets***"). *See* 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b); *Bear Mountain Orchards, Inc.* v. *Mich-Kim, Inc.*, 623 F. 3d 163, 167 (3d Cir. 2010) ("The produce purchasers are require[d]... to hold sufficient PACA trust assets in trust to pay all suppliers.") (internal quotations and citation omitted). Assets subject to a PACA Trust are preserved as a non-segregated floating trust and may be commingled with non-trust assets. However, courts in this and other districts have consistently held that PACA Trust Assets are not property of a debtor's estate. *See Stanziale v. Rite Way Meat Packers, Inc.* (*In re CFP Liquidating Estate*), 405 B.R. 694, 697 (Bankr. D. Del. 2009); *In re Long John Silver's Rests., Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993).

9. To preserve its rights as a trust beneficiary, PACA requires that certain procedural steps be taken by a seller of perishable agricultural commodities. Specifically, a PACA Vendor must provide written notice (a "***PACA Notice***") to the purchaser of such goods of its intent to preserve the benefits of the PACA Trust. *See Merrill Farms Corp. v. H.R. Hindle & Co.* (*In re Hindle & Co.*), 149 B.R. 775, 785 (Bankr. E.D. Pa. 1993); *Debruyn Produce Co. v. Richmond Produce Co.* (*In re Richmond Produce Co.*), 112 B.R. 364, 368 (Bankr. N.D. Cal. 1990). Written notice under PACA may be accomplished by either (a) including the statutorily-mandated language on the face of the

vendor's invoices or (b) providing written notice to the purchaser of the PACA goods within thirty (30) days after the time payment is due. Beneficiaries of a PACA Trust that adhere to the statutory notice requirements are entitled to prompt payment from the PACA Trust Assets ahead of secured and unsecured creditors of a debtor's estate. *See "R" Best Prod., Inc. v. 646 Corp.*, No. 00 Civ 8536 (HB), 2002 WL 31453909, at *1 (S.D.N.Y. Oct. 31, 2002). However, a PACA Vendor's failure to comply with the notice requirements renders its claim a general unsecured claim in a debtor's chapter 11 case. *See In re H.R.. Hindle*, 149 B.R. at 786.

10. PACA's application is limited to sales to commission merchants, brokers, and dealers. 7 U.S.C. § 499e(c). "Dealer", as such term is defined in PACA, is "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b).

11. The Debtors believe that a certain portion of the goods they purchase from vendors, either for their own restaurants or on behalf of the franchisees, may qualify as "perishable agricultural commodit[ies]" under PACA. As a result, provided that the PACA Vendors abide by the notice requirements of PACA, they will be eligible to assert PACA Claims[2] granting them priority head of all other secured and unsecured creditors in these chapter 11 cases. Accordingly, payment of PACA Claims at the outset of these chapter 11 cases will not prejudice or affect the amount available for distribution to other creditors of the Debtors. To ensure the continued,

---

[2]   Certain of the Debtors' vendors may also be eligible to assert claims under the Packers and Stockyards Act of 1921 as amended, 7 U.S.C. § 181 et seq. ("*PASA*"), which prescribes the conditions of operations for businesses dealing in livestock. PASA creates a statutory trust scheme which is virtually identical to PACA in respect of delivery of livestock and other eligible goods. See *In re W.L. Bradley Co.*, 75 B.R. 505, 509 (Bankr. E.D. Pa. 1987) ("The Legislative history expressly notes that the PACA Trust was modeled on the trust amendment to the Packers and Stockyards Act."). To the extent that any claims fall under PASA, the Debtors submit that it is in the best interests of the Debtors' estates, creditors and parties in interest to treat such claims in a manner identical to the claims of the PACA Vendors. Accordingly, for the purposes of the motion and any related orders, any claims arising under PACA shall also incorporate any claims arising under PASA.

uninterrupted supply of fresh produce, it is important that the Debtors be authorized to pay all valid PACA Claims in the ordinary course of business and consistent with their historical practices.

12.     As of the Petition Date, the Debtors estimate they owe PACA Vendors approximately $230,000 in the aggregate for PACA goods delivered prior to the Petition Date. The Debtors expect to be invoiced for substantially all of the amounts owed to PACA Vendors within twenty-one (21) days following the Petition Date.

### ii.     *Shipping Claims*

13.     The Debtors have carefully cultivated a reputation for dependability among their customers and franchisees and, accordingly, must maintain a reliable and efficient supply and distribution network during these chapter 11 cases. The Debtors' supply and delivery system depends upon the use of reputable common carriers, dedicated carriers, rail carriers, freight-forwarders, parcel carriers, and similar shippers and transporters (collectively, the "*Shippers*," whose claims shall be identified as the "*Shipping Claims*"), all of which may assert possessory liens on the Debtors' goods, merchandise or finished products in the Shippers' possession. The Shippers deliver goods that are essential to the Debtors' business to the Debtors, their restaurants or their third-party distribution centers. Such items include food, restaurant supplies and other goods necessary for the day-to-day operation of the Debtors' business. In the ordinary course of business, Shippers regularly have possession of the Debtors' food, restaurant supplies and other goods.

14.     To prevent immediate and irreparable harm to the Debtors' business, the Debtors seek authority to pay the Shipping Claims. If the Shipping Claims are not paid, the Shippers may assert possessory liens for transportation or storage costs, and refuse to deliver or release goods in their possession until their claims are satisfied and their liens released. Any significant disruption in the Debtors' supply chain could have a severe and adverse impact on the Debtors' franchise system, leaving franchisees without sufficient food, products and supplies to operate their business. As a

result, the Debtors may suffer, at a minimum, a significant loss of credibility, customer goodwill and revenue, thereby causing substantial and potentially irreparable harm to their business and reorganization efforts.

15.     The Debtors seek authority to only pay those Shipping Claims that they believe, in their business judgment, are necessary or appropriate. The Debtors submit that the total amount to be paid to the Shippers on account of their prepetition claims is minimal compared to the direct and indirect losses the Debtors would suffer if a Shipper refused to deliver the Debtors' products.

16.     The Debtors estimate that, as of the Petition Date, an aggregate of approximately $150,000 in Shipping Claims may be outstanding. The Debtors expect to be invoiced for substantially all of the amounts owed to Shippers within twenty-one (21) days following the Petition Date.

17.     As with the rest of the Trade Claims, to the extent that the Debtors make any payments with respect to any Shipping Claims, no such payment shall be deemed a waiver of the Debtors' rights to challenge the validity and amount of any such claim or the extent, validity, perfection or possible avoidance of any liens asserted by the Shippers.

### iii.     503(b)(9) Claims

18.     Certain vendors may be entitled to administrative expense priority under Bankruptcy Code section 503(b)(9) to the extent the Debtors received goods from a vendor, in the ordinary course of business, within the twenty-day period immediately preceding the Petition Date. Because the Bankruptcy Code requires the Debtors to pay such claims in full to confirm a plan of reorganization, the payment of these 503(b)(9) Claims merely affects the timing of such payments, and not the amount. Accordingly, the Debtors seek authority, but not direction, in their sole discretion, to pay the 503(b)(9) Claims in the ordinary course of business to the extent necessary to preserve the going concern value of the Debtors' chapter 11 estates. As with the rest of the Trade

Claims, however, to extent that the Debtors make any payments with respect to such a claim, no such payment shall be deemed a waiver of the rights of the Debtors and their estates to contest the validity and amount of any such claim. The Debtors estimate that there are approximately $3.3 million in 503(b)(9) Claims that have accrued but remain unpaid as of the Petition Date. The Debtors expect to be invoiced for substantially all of the amount owed within twenty-one (21) days following the Petition Date.

### iv. *503(b)(1) Claims*

19.     As of the Petition Date, the Debtors have certain prepetition purchase orders outstanding (collectively, the "***Purchase Orders***") with vendors for goods and services, for which the delivery has not yet occurred and will not occur until on or subsequent to the Petition Date. The delivery of such goods and services by the 503(b)(1) Claimants is essential to the uninterrupted operation of the Debtors' business. The Debtors believe that honoring the 503(b)(1) Claims is in the ordinary course of their business, and thus, Court approval to pay the 503(b)(1) Claimants is not required. As a result of the commencement of these chapter 11 cases, however, these vendors may perceive a risk that they will be treated as prepetition unsecured creditors for the cost of any shipments made or services provided pursuant to the Purchase Orders, and may refuse to deliver such goods or provide such services to the Debtors unless the Debtors issue substitute purchase orders postpetition or provide other assurances of payment, including requiring less favorable trade terms than the prepetition terms between the Debtors and the vendors. Alternatively, some 503(b)(1) Claimants may refuse to do business with the Debtors after the Petition Date due to the failure to honor the existing Purchase Orders, thereby forcing the Debtors to find alternate suppliers with less favorable trade terms. Additionally, requiring the Debtors to issue substitute purchase orders on a postpetition basis also would be administratively burdensome, time-consuming, and counterproductive to the Debtors' chapter 11 cases, and would inevitably lead to delays in the

RLF1 10043320v.1

18-23538-shl  Doc 7253-4  Filed 02/29/20  Entered 02/29/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 350 of 458
Case 18-23538-rdd  Doc 562-2  Filed 08/10/18  Page 317 of 335

Debtors' receipt of goods and services, ultimately resulting in the disruption of the Debtors' business.

20.     Accordingly, in an abundance of caution and to prevent any disruption to the Debtors' operations, eliminate the administrative burden associated with issuing substitute Purchase Orders, and facilitate a smooth transition into chapter 11, the Debtors seek an order (a) granting administrative expense priority under Bankruptcy Code section 503(b)(1) to all of the Debtors' undisputed obligations arising from the acceptance of goods and services subject to Purchase Orders and (b) authorizing, but not directing, the Debtors, in their sole discretion, to satisfy such obligations in the ordinary course of business.  As with the rest of the Trade Claims, however, to the extent that the Debtors make any payments with respect to any 503(b)(1) Claims, no such payment shall be deemed a waiver of the rights of the Debtors and their estates to contest the validity and amount of such claims.

### C.  Proposed Terms of Payment of Trade Claims

21.     Subject to the terms set forth herein, the Debtors request authority, but not direction, to condition the payment of the Trade Claims on the written agreement of individual Trade Claimants to continue to provide goods and services, as applicable, to the Debtors during the pendency of these chapter 11 cases on the most favorable terms that were in effect during the 120 days before the Petition Date (the "***Historical Trade Terms***"), unless otherwise waived by the Debtors.  The Debtors reserve the right to negotiate trade terms (the "***Negotiated Trade Terms***") with any Trade Claimant demanding terms less favorable to the Debtors (to the extent the Debtors determine such terms are necessary to procure essential goods or services or are otherwise in the best interests of the Debtors' estates and creditors).  The agreement between the Debtors and the particular Trade Claimant (each, a "***Trade Agreement***"), once agreed to and accepted by the Trade Claimant, shall be a legally binding contractual arrangement between the parties governing the

commercial trade relationship. The Debtors seek authority to enter into Trade Agreements, if and at the time they determine in their business judgment that such an agreement is necessary to their postpetition operations. The Debtors also explicitly seek authority to pay the Trade Claims in the event that no Trade Agreement has been reached, if the Debtors determine, in their business judgment, that failure to pay Trade Claims is likely to result in irreparable harm to the Debtors' business operations or that a Trade Agreement is unnecessary or not available.

22. In the event that any Trade Claimant that has received payment for its Trade Claims refuses to continue to provide goods and services, as applicable, on the Historical Trade Terms or the Negotiated Trade Terms following receipt of payment of its Trade Claim, the Debtors seek authority, without further order of the Court, to declare that the provisional payments made to the Trade Claimant on account of its Trade Claim be deemed to have been in payment of the then-outstanding postpetition obligations owed to such Trade Claimant. In such an instance, the previously paid Trade Claim of the applicable Trade Claimant shall be reinstated as a Trade Claim in the amount deemed by the Debtors to have been in payment of any then-outstanding postpetition claims of such Trade Claimant. To the extent that the payments made to the Trade Claimant on account of the previously paid Trade Claims exceed the postpetition amounts then owed to such Trade Claimant, the Debtors and their estates reserve all right to recover such payments. In short, the Debtors seek to return the parties to their respective positions in the event the Trade Claimant refuses to supply goods and/or services to the Debtors on Historical Trade Terms or Negotiated Trade Terms following receipt of payment on account of its Trade Claim.

23. The Debtors further request that any Trade Claimant who accepts payment from the Debtors on account of a Trade Claim, shall be deemed to have agreed to the terms and provisions of the Order and shall be deemed to have waived, to the extent so paid, any and all prepetition claims,

of whatever type, kind or priority, against the Debtors, their properties and estates, their directors officers and members and any funds and other property held in trust by the Debtors that do not constitute "property of the estate" under Bankruptcy Code section 541.

## RELIEF REQUESTED

24.    By this motion, the Debtors seek entry of an order authorizing, but not directing, the Debtors, in their sole discretion, to pay the PACA Claims, Shipping Claims, 503(b)(9) Claims and 503(b)(1) Claims.

## SUPPORTING AUTHORITY

### A.  Payment of the PACA Claims and the Shipping Claims is Justified Under Bankruptcy Code Section 363(b) and Warranted Under the Doctrine of Necessity

25.    Courts generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business' going-concern value. *In re Motor Coach Indus. Int'l Inc.*, 2009 WL 330993, *at 2 n.5 (Bankr. D. Del. Feb. 10, 2009) ("The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor.");*In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants).  When

authorizing payments of certain prepetition obligations, courts have relied upon several legal theories rooted in Bankruptcy Code sections 363(b) and 105(a).

26.     Pursuant to Bankruptcy Code sections 1107(a) and 1108, debtors in possession are fiduciaries holding the bankruptcy estate and operating the business for the benefit of creditors and, if the value justifies, the equity owners. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).   Consistent with such fiduciary duties, courts have authorized payment of prepetition obligations under Bankruptcy Code section 363(b) where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).   Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

27.     Courts have also authorized payment of prepetition claims in appropriate circumstances under Bankruptcy Code section 105(a). Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. *See In re Just for Feet, Inc.*, 242 B.R.at 825; *In re Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor). Specifically, the Court may use its power under section 105(a) to authorize payment of

12

prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (confirming doctrine of necessity, *i.e.*, whether payment is essential to continued operation of debtor's business, is the applicable standard in the Third Circuit for enabling the court to authorize payment of prepetition claims prior to confirmation of reorganization plan); *In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization).

28.     Indeed, the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981), holding that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *Columbia Gas Sys., Inc.*, 171 B.R. at 191–92 (same).

29.     The necessity of payment doctrine is designed to foster the rehabilitation of a debtor in reorganization cases, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs*, 98 B.R. at 176; *In re Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396

(Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to Chapter 11 process").

30.     The Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and will benefit the Debtors' estates and their creditors by allowing the Debtors' business operations to continue without interruption.  Specifically, the authority, but not direction, to satisfy the PACA Claims and Shipping Claims in the initial days of these chapter 11 cases without disrupting the Debtors' business operations will send a clear signal to the marketplace, including key suppliers and customers, that the Debtors are willing and able to conduct business as usual during these chapter 11 cases.

31.     The Debtors' operations also require the seamless coordination of a multitude of unrelated third-parties at every stage in the supply chain.  Collectively, the Debtors' supply chain ensures that the Debtors and their franchisees receive all of the food, products, and supplies necessary to operate their business and provide their customers with the high-quality food expected under the "Quiznos" brand.  Any significant disruption in the Debtors' supply chain, such as a vendor halting delivery of certain necessary goods and/or services, could result in the Debtors not having sufficient food, products and supplies to operate their business. Given the highly-competitive

submarine sandwich and quick-service restaurant markets, such a result could be detrimental to the Debtors' business and significantly impair their restructuring efforts.

32.     Moreover, Shippers may be entitled under applicable non-bankruptcy law to assert certain possessory liens on the Debtors' goods, merchandise or finished products in their possession (notwithstanding the automatic stay under Bankruptcy Code section 362) in an attempt to secure payment of their prepetition claim.  As described above, under Bankruptcy Code section 362(b)(3), the act of perfecting such liens, to the extent consistent with Bankruptcy Code section 546(b), is expressly excluded from the automatic stay.[3]  As a result, the Debtors anticipate that certain of the Shippers may assert and/or perfect liens, refuse to turn over goods in their possession or stop performing their ongoing obligations.  Even absent a valid lien, to the extent any of these vendors have possession of the Debtors' inbound inventory or outbound products, mere possession or retention could severely disrupt the Debtors' operations.

## B.  Payment of Allowed PACA Claims in the Ordinary Course of Business is Warranted

33.     The Court should authorize the prompt and full payment of the PACA Claims.  As discussed above, assets governed by PACA do not constitute property of the Debtors' estates.  *See Tom Lange Co. v. Kornblum & Co. (In re Kornblum & Co)*, 81 F.3d 280, 284 (2d Cir. 1995); *In re Long John Silver's Rests., Inc.,* 230 B.R. 29, 32 (Bankr. D. Del. 1999); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F.Supp. 346, 348 (S.D.N.Y. 1993).  As a result, the distribution of assets to PACA Vendors falls outside the Bankruptcy Code's priority scheme, and such claimants are entitled to payment from the PACA Trust ahead of the Debtors' other creditors.  *See, e.g., In re Magic Rests., Inc.,* 205 F.3d 108, 110 (3d Cir. 2000); *Consumers Produce Co., Inc.* v. *Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1377-78 (3d Cir. 1994).  Moreover, the disposition of PACA Trust Assets is

---

[3]   *See* 11 U.S.C. § 546(b)(1)(A) (a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection").

subject to the jurisdiction of the bankruptcy court. *See, e.g., Bear Mountain Orchards, Inc.* v. *Mich-Kim, Inc.*, 623 F.3d 163, 167 (3d Cir. 2010); *Monterey Mushrooms, Inc.* v. *Carolina Produce Distribs.* (*In re Carolina Produce Distrib.*), 110 B.R. 207, 209 (W.D.N.C. 1990); *Allied Growers Co-Op, Inc.* v. *United Fruit and Produce Co.* (*In re United Fruit Produce Co.*,), 86 B.R. 14, 16 (Bankr. D. Conn. 1988). Accordingly, the relief requested herein with respect to the payment of the PACA Claims does not prejudice the Debtors' creditors or any party in interest in the chapter 11 cases.

34.     Furthermore, payment of allowed PACA Claims will inure to the benefit of the Debtors' estates by preserving goodwill between the Debtors and the PACA Vendors. Any delays in satisfying amounts owed to PACA Vendors could adversely affect the Debtors' and their franchisees' abilities to obtain fresh produce, thereby undercutting the Debtors' reorganization prospects. Failing to pay allowed PACA Claims in the ordinary course of business could subject the Debtors to numerous claims and adversary proceedings, including motions by PACA Vendors for relief from the automatic stay and/or injunctive relief, which would result in the unnecessary expenditure of time, effort and money by the Debtors.

35.     Lastly, in certain circumstances, officers or directors of a corporate entity who are in a position to control trust assets but breach the fiduciary duty to preserve those assets may be held personally liable under PACA. *See Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282-283 (9th Cir. 1997); *see also Golman-Hayden Co., v. Fresh Source Produce Inc.*, 217 F.3d 348, 350 (5th Cir. 2000) (court will require (a) whether the individual's involvement with the corporation was sufficient to establish legal responsibility and (b) whether the individual, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to PACA creditors, to determine personal liability). Thus, to the extent that any valid obligations arising under

PACA remain unsatisfied by the Debtors, the Debtors' officers and directors may be subject to lawsuits during the pendency of these chapter 11 cases. Any such lawsuit (and ensuing potential liability) would distract the Debtors and their officers and directors in their efforts to implement a successful reorganization strategy and, moreover, could lead to the assertion of substantial indemnification claims under the Debtors' governing documents, employment agreements and applicable laws to the detriment of all of the Debtors' stakeholders.

36.     Courts in this and other districts routinely grant similar relief with respect to the treatment of PACA Claims. *See, e.g., In re Amicus Wind Down Corp.* (f/k/a *Friendly Ice Cream Corp.*), No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011), Docket No. 57; *In re Perkins & Marie Callender's Inc.*, No. 11-11795 (KG) (Bankr. D. Del. June 14, 2011), Docket No. 43; *In re Harry & David Holdings, Inc.*, No. 11-10884 (MFW) (Bankr. D. Del. April. 26, 2011), Docket No. 211; *In re CB Holding Corp.,* No. 10-13683 (MFW) (Bankr. D. Del. Jan. 10, 2011), Docket No. 419; *In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 12, 2010), Docket No. 500; *In re Uno Rest. Holdings Corp.*, No. 10-10209 (MG) (Bankr. S.D.N.Y. Jan. 20, 2010), Docket No. 36; *In re Premier Int'l Holdings, Inc.*, No. 09-12019 (CSS) (Bankr. D. Del. July 13, 2009), Docket No. 206; *In re Buffets Holdings, Inc.*, No. 08-10141 (MFW) (Bankr. D. Del. Feb. 13, 2008), Docket No. 285.[4]

## C. The Court Should Allow the Debtors to Pay the 503(b)(9) Claims in the Ordinary Course of Business

37.     As noted above, certain vendors may be entitled to request an administrative expense priority claim under Bankruptcy Code section 503(b)(9) to the extent the Debtors received goods, in the ordinary course of business, within the twenty-day period immediately prior to the Petition Date. Because such claims are entitled to priority status under Bankruptcy Code section 503(b)(9), the

---

[4]     Due to the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed co-counsel.

Debtors must pay the claims in full to confirm a plan of reorganization. *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to priority). Although Bankruptcy Code section 503(b)(9) does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants prior to confirmation if the debtor has the ability to pay and there is a need to pay. Indeed, nothing in the Bankruptcy Code prohibits the Debtors from paying such claims sooner if they choose to do so, or this Court from exercising its discretion to authorize the postpetition payment of such obligations prior to confirmation of a chapter 11 plan. Thus, payment of claims arising under section 503(b)(9) affects the timing, but not the amount, of such payment. As a result, the Debtors respectfully submit that they should have the authority (but not the direction) to pay such claims, in the ordinary course of business, during the pendency of the chapter 11 cases, to the extent necessary to preserve the going concern value of the chapter 11 estates.

38.     Since the enactment of Bankruptcy Code section 503(b)(9), courts in this jurisdiction have exercised their discretion and have authorized the payment of prepetition claims under Bankruptcy Code section 503(b)(9) at the outset of a chapter 11 case. *See, e.g., In re Perkins & Marie Callender's Inc.*, Case No. 11-11795 (KG) (Bankr. D. Del. June 14, 2011), Docket No. 43. Indeed, in granting a request for similar relief, at least one judge in this District asked an objecting United States Trustee, "[a]rguably, would you agree that the debtor would be able to pay the 503(b)(9) claims without Court approval?" Transcript of Hearing Held on Oct. 31, 2006, at 24:14-16, *In re Dura Auto.*, No. 06-11202 (KJC) (Bankr. D. Del. Oct. 31, 2006) Docket No. 74 (approving payment of claims under section 503(b)(9) as part of "first day" relief).

**D. Paying the PACA Claims, Shipping Claims and 503(b)(9) Claims Now Will Not Affect Creditor Recoveries**

39.    The relief requested herein will not affect the recovery of creditors in these chapter 11 cases.  As stated above, assets governed by PACA do not constitute property of the Debtors' estates.  Holders of PACA Claims are entitled to payment from the PACA Trust ahead of the Debtors' other creditors.  The Debtors' requested relief affects only the timing of the PACA Claims payment, and will not prejudice the recovery of other creditors.  Additionally, in instances where the amounts owed to a Shipper is less than the value of the goods that could be held to secure a Shipping Claim, the Shipper is arguably a fully-secured creditor of the Debtors' estates to the extent of the value of the goods that it holds.  As discussed above, to confirm a chapter 11 plan, the Bankruptcy Code requires payment in full of the 503(b)(9) Claims as administrative claims.  In such instances, payment now only provides the PACA Claimants, Shippers and 503(b)(9) Claimants with what they would be entitled to receive under a plan of reorganization, only without any interest costs that might otherwise accrue during these chapter 11 cases.  Accordingly, payment to such Claimants at the outset of these cases will not affect recoveries to other creditors under any chapter 11 plan, and instead, solely impacts the timing of these payments.

**E. The Court Should Confirm that the Claims Arising out of the Purchase Orders are Administrative Expense Claims and Payment of Such Claims is Appropriate**

40.    Pursuant to Bankruptcy Code section 503(b)(1)(A), obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are, by definition, administrative expenses because they benefit the estate postpetition.  Although the Debtors believe that they therefore have the authority to make payment for any goods received postpetition (irrespective of the time the orders were first placed) in the ordinary course of their business, confirmation of that authority is appropriate and necessary in the instant case.  The requested relief will provide these critical parties with the necessary assurance that their valid

RLF1 10043320v.1

postpetition claims will be given administrative expense priority status, and that they will continue to be paid by the Debtors in the ordinary course consistent with the historical trade practices in effect as of the Petition Date. Furthermore, any attempt by the 503(b)(1) Claimants to interrupt goods in transit will create unanticipated supply shortages that will be harmful to the going concern value of the Debtors' business.

41. Absent the relief requested herein, the Debtors may be required to expend substantial time and resources convincing the 503(b)(9) Claimants of the Debtors' authority to make certain payments, reissuing Purchase Orders and/or establishing the Debtors' right to retain the goods supplied under the Purchase Orders. The disruption to the continuous and timely flow of the goods and services necessary to operate the Debtors' business could hinder the Debtors' operations and subject them to tremendous expense, all to the detriment of the Debtors' stakeholders. Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of claims arising out of the Purchase Orders and should authorize, but not direct, the Debtors, in their sole discretion, to pay the amounts outstanding thereunder in the ordinary course of business.

## CAUSE EXISTS TO AUTHORIZE THE DEBTORS' FINANCIAL INSTITUTIONS TO HONOR CHECKS AND ELECTRONIC FUND TRANSFERS

42. The Debtors have sufficient funds to remit the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to debtor in possession financing. Also, under the Debtors' existing cash management system, the Debtors have made arrangements to identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and the Court should authorize all applicable financial

institutions, when requested by the Debtors, to receive, process, honor and pay any and all checks or
wire transfer requests in respect of the relief requested herein.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

43.     For a debtor to obtain relief to make pre-plan payments within 21 days of the Petition
Date, it must establish that making such payments satisfies the requirements mandated by
Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid "immediate and
irreparable harm." Fed. R. Bankr. P. 6003. If a debtor's prospect of reorganizing is threatened, or
swift diminution in value of the debtor's estate is likely, absent the granting of the requested relief,
immediate and irreparable harm likely exists. *See In re WorldSpace, Inc.*, No. 08–12412 (PJW),
2008 WL 8153639, at *2 (Bankr. D. Del. Oct. 20, 2008) (granting emergency motions for
postpetition financing, adequate protection and modification of the stay where the court found that
the relief was necessary to avoid irreparable harm to the debtors and their estates because such relief
was essential for the continued operations of the debtors' business); *In re New World Pasta Co.*, No.
04–02817 (MDF), 2004 WL 5651052, at *5 (Bankr. M.D. Pa. July 9, 2004) (same); *see also In re
Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (finding that "immediate and
irreparable harm" exists where loss of the business threatens the ability to reorganize).

44.     As discussed above, the continuity and viability of the Debtors' business operations
depends heavily on the uninterrupted delivery of essential food, products and supplies. The failure
of any vendor to deliver essential food, products or supplies or to render services to the Debtors
would have immediate and detrimental consequences to the Debtors' business and would decrease
value to the detriment and prejudice of all of the Debtors' stakeholders. The Debtors cannot risk
even the perception that their or their franchisees' restaurants will offer anything but the highest
level of food and beverage quality and quantity for the duration of these chapter 11 cases. Moreover,
it is the Debtors' business judgment that continuation of their positive relationship with the Trade

Claimants is critical to their continued operations and greatly increases the likelihood of a successful reorganization. Accordingly, the Debtors respectfully submit that the relief requested herein is necessary to avoid immediate and irreparable harm and, therefore, Bankruptcy Rule 6003 is satisfied.

## SATISFACTION OF BANKRUPTCY RULE 6004(a) AND 6004(h)

45.     For the reasons described above, the immediate payment of the Trade Claims is essential to prevent potentially irreparable damage to the Debtors' operations, value and ability to reorganize. Accordingly, given the nature of the relief requested herein, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that either applies.

## NOTICE

46.     Notice of this motion has been provided to the following parties, or, in lieu thereof, their counsel: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities on the Consolidated List of Creditors Holding the 35 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) Milbank Tweed Hadley & McCloy LLP, as counsel to the Consenting First Lien Lenders, Attn: Thomas R. Kreller and David B. Zolkin; (d) Morris Nichols Arsht & Tunnell LLP, as local counsel to the Consenting First Lien Lenders, Attn: Robert J. Dehney; (e) O'Melveny & Myers LLP, as counsel to Avenue Capital Management II, L.P. and its affiliates, Attn: John J. Rapisardi and Joseph Zujkowski; (f) Skadden Arps Slate Meagher & Flom LLP, as counsel to Fortress Investment Group and its affiliates, Attn: Van C. Durrer, II; (g) Kasowitz Benson Torres & Friedman LLP, as counsel to Vectra Bank Colorado, National Association, Attn: Adam L. Shiff and Matthew B. Stein; and (h) all parties entitled to notice pursuant to Local

Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

A-4231

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court enter an order granting the relief requested herein and such other and further relief as may be

just, proper and equitable.

Wilmington, Delaware
Date: March 14 , 2014

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Lee E. Kaufman (No. 4877)
Amanda Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff (*pro hac vice* admission pending)
Philip C. Dublin (*pro hac vice* admission pending)
Jason P. Rubin (*pro hac vice* admission pending)
Ashleigh L. Blaylock (*pro hac vice* admission pending)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

<u>**Exhibit A**</u>

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QCE FINANCE LLC, *et al.*,[1] | ) | Case No. 14-_____ ( ) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | Re: Docket No. [___] |

**ORDER (I) AUTHORIZING THE DEBTORS TO
PAY CERTAIN PREPETITION CLAIMS (A) ARISING
UNDER THE PERISHABLE AGRICULTURE COMMODITIES ACT,
(B) OF SHIPPERS, (C) ARISING UNDER BANKRUPTCY CODE SECTION
503(B)(9) AND (D) CLAIMS INCURRED IN CONNECTION WITH POSTPETITION
DELIVERY OF GOODS AND SERVICES AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), for entry of an order (this "***Order***") (i) authorizing, but not directing, the Debtors to pay (a) the PACA Claims, (b) the Shipping Claims, (c) the 503(b)(9) Claims and (d) the 503(b)(1) Claims, in the ordinary course of business as such clams come due and (ii) authorizing the financial institutions, when requested by the Debtors, to receive, possess, honor and pay all checks presented for payment and electronic payment requests related to the Trade Claims, all as set forth more fully in the Motion; and upon the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: QCE Finance LLC (7897); American Food Distributors LLC (8099); National Marketing Fund Trust (4951); QAFT, Inc. (6947); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC (7714); Quizno's Canada Holding LLC (3220); Quiznos Global LLC (2772); Restaurant Realty LLC (8293); The Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); The Regional Advertising Program Trust (2035); and TQSC II LLC (8683). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

Debtors' estates, their creditors, and all other parties in interest; and the Debtors having provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances and no other or further notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion is necessary to prevent immediate and irreparable harm; and upon all of the proceedings had before the Court; after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED**:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy all valid PACA Claims in the ordinary course of business in the aggregate amount not to exceed $230,000.

3.      Any PACA Vendor who accepts payment from the Debtors in satisfaction of its valid PACA Claim will be deemed to have waived any and all claims of whatever type, kind, or priority against the Debtors, their property, their estates and any PACA Trust Assets, but only to the extent that payment has been received by such PACA Vendor on account of its PACA Claim.

4.      Nothing in the Motion or this Order shall impair the Debtors' right to contest the validity or amount of any PACA Claim that may be asserted, and all of the Debtors' rights with respect thereto are hereby reserved.

5.      The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy in the ordinary course of business all valid Shipping Claims in an aggregate amount not to exceed $150,000.

6.      The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy in the ordinary course of business all valid 503(b)(9) Claims in an aggregate amount not to exceed $3,382,000.

7.      All undisputed amounts relating to the Purchase Orders are hereby deemed postpetition administrative expense claims pursuant to Bankruptcy Code section 503(b)(1) and the Debtors are authorized, but not directed, in their sole discretion, to pay such amounts in the ordinary course of business consistent with the parties' historical trade practices in effect prior to the Petition Date.

8.      The Debtors are authorized, but not directed, to enter into Trade Agreements and to condition the payment of the Trade Claims upon execution of such agreements by the individual Trade Claimants to continue to provide goods and services, as applicable, to the Debtors during the pendency of these chapter 11 cases on the Historical Trade Terms or the Negotiated Trade Terms; *provided*, *however*, that the Debtors' inability to enter into a Trade Agreement shall not preclude the Debtors from paying a Trade Claim when, in the exercise of the Debtors' business judgment, such payment is necessary to the Debtors' operations and is in the best interests of their estates and creditors.

9.      In the event that any Trade Claimant that has received payment for its Trade Claim refuses to continue to provide goods and services, as applicable, on the Historical Trade Terms or the Negotiated Trade Terms  following receipt of payment of its Trade Claim, the Debtors may, in their sole discretion and without further order of the Court, declare that the provisional payments made to the Trade Claimant on account of its Trade Claim be deemed to have been in payment of the then-outstanding postpetition obligations owed to such Trade Claimant. In such an instance, the previously paid Trade Claim of the applicable Trade Claimant shall be reinstated as a Trade Claim

in the amount deemed by the Debtors to have been in payment of any then-outstanding postpetition claims of such Trade Claimant.  To the extent that the payments made to the Trade Claimant on account of the previously paid Trade Claims exceed the postpetition amounts then owed to such Trade Claimant, all rights of the Debtors and their estates to recover such payments shall be reserved.

10.     The Debtors are authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the chapter 11 cases with respect to the payments approved by this Court hereunder.

11.     The banks and financial institutions on which checks were drawn or electronic payment requests were made in payment of the obligations approved herein are authorized and directed, when requested by the Debtors, to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Order.

12.     Nothing herein shall prohibit the Debtors from seeking Court authority to increase the prepetition amounts authorized to be paid herein.

13.     Nothing in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as an admission as to the validity or priority of any claim or lien against the Debtors, an approval or assumption of any agreement, contract or lease pursuant to Bankruptcy Code section 365 or a waiver of the of the Debtors, or shall impair the Debtors' ability, to contest the validity and amount of any payment made pursuant to this Order.

14.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

15.     Notice of the Motion as provided herein shall be deemed good and sufficient and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

16.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

17.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

18.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Wilmington, Delaware
Date: _____, 2014          _____
                                    United States Bankruptcy Judge

**ORIGINAL**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QCE FINANCE LLC, *et al.*, [1] | ) | Case No. 14-10543 (PJW) |
| | ) | |
| Debtors. | ) | Joint Administration Requested |
| | ) | |
| | ) | **Re: Docket No. 10** |

## ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS (A) ARISING UNDER THE PERISHABLE AGRICULTURE COMMODITIES ACT, (B) OF SHIPPERS, (C) ARISING UNDER BANKRUPTCY CODE SECTION 503(B)(9) AND (D) CLAIMS INCURRED IN CONNECTION WITH POSTPETITION DELIVERY OF GOODS AND SERVICES AND (II) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), for entry of an order (this "***Order***") (i) authorizing, but not directing, the Debtors to pay (a) the PACA Claims, (b) the Shipping Claims, (c) the 503(b)(9) Claims and (d) the 503(b)(1) Claims, in the ordinary course of business as such clams come due and (ii) authorizing the financial institutions, when requested by the Debtors, to receive, possess, honor and pay all checks presented for payment and electronic payment requests related to the Trade Claims, all as set forth more fully in the Motion; and upon the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: QCE Finance LLC (7897); American Food Distributors LLC (8099); National Marketing Fund Trust (4951); QAFT, Inc. (6947); QCE LLC (2969); QFA Royalties LLC (2402); QIP Holder LLC (2353); Quiz-CAN LLC (7714); Quizno's Canada Holding LLC (3220); Quiznos Global LLC (2772); Restaurant Realty LLC (8293); The Quizno's Master LLC (3148); The Quizno's Operating Company LLC (8945); The Regional Advertising Program Trust (2035); and TQSC II LLC (8683).   The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 1001 17th Street, Suite 200, Denver, Colorado 80202.

[2]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and all other parties in interest; and the Debtors having provided

appropriate notice of the Motion and the opportunity for a hearing on the Motion under the

circumstances and no other or further notice need be provided; and the Court having reviewed the

Motion and having heard the statements in support of the relief requested therein at a hearing before

the Court (the "*Hearing*"); and the Court having determined that the legal and factual bases set forth

in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court

having found that the relief requested in the Motion is necessary to prevent immediate and

irreparable harm; and upon all of the proceedings had before the Court; after due deliberation and

sufficient cause appearing therefor, it is **HEREBY ORDERED**:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, but not directed, in their sole discretion, to pay or

otherwise satisfy all valid PACA Claims in the ordinary course of business in the aggregate amount

not to exceed $230,000.

3.      Any PACA Vendor who accepts payment from the Debtors in satisfaction of its valid

PACA Claim will be deemed to have waived any and all claims of whatever type, kind, or priority

against the Debtors, their property, their estates and any PACA Trust Assets, but only to the extent

that payment has been received by such PACA Vendor on account of its PACA Claim.

4.      Nothing in the Motion or this Order shall impair the Debtors' right to contest the

validity or amount of any PACA Claim that may be asserted, and all of the Debtors' rights with

respect thereto are hereby reserved.

5.      The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy in the ordinary course of business all valid Shipping Claims in an aggregate amount not to exceed $150,000.

6.      The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy in the ordinary course of business all valid 503(b)(9) Claims in an aggregate amount not to exceed $3,382,000.

7.      All undisputed amounts relating to the Purchase Orders are hereby deemed postpetition administrative expense claims pursuant to Bankruptcy Code section 503(b)(1) and the Debtors are authorized, but not directed, in their sole discretion, to pay such amounts in the ordinary course of business consistent with the parties' historical trade practices in effect prior to the Petition Date.

8.      The Debtors are authorized, but not directed, to enter into Trade Agreements and to condition the payment of the Trade Claims upon execution of such agreements by the individual Trade Claimants to continue to provide goods and services, as applicable, to the Debtors during the pendency of these chapter 11 cases on the Historical Trade Terms or the Negotiated Trade Terms; *provided, however,* that the Debtors' inability to enter into a Trade Agreement shall not preclude the Debtors from paying a Trade Claim when, in the exercise of the Debtors' business judgment, such payment is necessary to the Debtors' operations and is in the best interests of their estates and creditors.

9.      In the event that any Trade Claimant that has received payment for its Trade Claim refuses to continue to provide goods and services, as applicable, on the Historical Trade Terms or the Negotiated Trade Terms  following receipt of payment of its Trade Claim, the Debtors may, in their sole discretion and without further order of the Court, declare that the provisional payments

made to the Trade Claimant on account of its Trade Claim be deemed to have been in payment of the then-outstanding postpetition obligations owed to such Trade Claimant. In such an instance, the previously paid Trade Claim of the applicable Trade Claimant shall be reinstated as a Trade Claim in the amount deemed by the Debtors to have been in payment of any then-outstanding postpetition claims of such Trade Claimant. To the extent that the payments made to the Trade Claimant on account of the previously paid Trade Claims exceed the postpetition amounts then owed to such Trade Claimant, all rights of the Debtors and their estates to recover such payments shall be reserved.

10.     The Debtors are authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests that are dishonored as a consequence of the chapter 11 cases with respect to the payments approved by this Court hereunder.

11.     The banks and financial institutions on which checks were drawn or electronic payment requests were made in payment of the obligations approved herein are authorized and directed, when requested by the Debtors, to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as being approved by this Order.

12.     Nothing herein shall prohibit the Debtors from seeking Court authority to increase the prepetition amounts authorized to be paid herein.

13.     Nothing in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as an admission as to the validity or priority of any claim or lien against the Debtors, an approval or assumption of any agreement, contract or lease pursuant

to Bankruptcy Code section 365 or a waiver of the of the Debtors, or shall impair the Debtors' ability, to contest the validity and amount of any payment made pursuant to this Order.

14.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

15.    Notice of the Motion as provided herein shall be deemed good and sufficient and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

16.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

17.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

18.    The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Wilmington, Delaware
Dated: March 17, 2014

_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler


    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :
     In re                     :       Chapter 11
                                :
DELPHI CORPORATION, et al.,   :       Case No. 05-_____ (___)
                                :
               Debtors.   :      (Jointly Administered)
                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. § 503(b) CONFIRMING GRANT OF
ADMINISTRATIVE EXPENSE STATUS TO OBLIGATIONS ARISING FROM
POSTPETITION DELIVERY OF GOODS AND AUTHORIZING DEBTORS TO PAY
SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS

("ADMINISTRATIVE EXPENSE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 503(b) confirming the grant of administrative expense status to obligations arising from postpetition delivery of goods and authorizing the Debtors to pay such obligations in the ordinary course of business. In support of this Motion, the Debtors rely on the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005. In further support of this Motion, the Debtors respectfully represent as follows:

Background

A.      The Chapter 11 Filings

1.      On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-

---

[1]      In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

2

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have

moved this Court for an order authorizing joint administration of these chapter 11 cases.

   2.  No trustee, examiner, or creditors' committee has been appointed in the

Debtors' cases.

   3.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2).

   4.  The statutory predicate for the relief requested herein is section 503(b)

of the Bankruptcy Code.

B.  Current Business Operations Of The Debtors

   5.  With more than 180,000 employees worldwide, global 2004 revenues

of approximately $28.6 billion and global assets as of August 31, 2005 of approximately

$17.1 billion, 2 Delphi ranks as the fifth largest public company business reorganization in

terms of revenues, and the thirteenth largest public company business reorganization in terms

of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their

business operations without supervision from the Bankruptcy Court, and will not be subject to

the chapter 11 requirements of the U.S. Bankruptcy Code.

   6.  Over the past century, the operations which are now owned by Delphi

have become a leading global technology innovator with significant engineering resources

and technical competencies in a variety of disciplines.  Today, the Company is arguably the

single largest global supplier of vehicle electronics, transportation components, integrated

---

[2]  The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

3

systems and modules, and other electronic technology. The Company's technologies and

products are present in more than 75 million vehicles on the road worldwide. The Company

supplies products to nearly every major global automotive original equipment manufacturer

with 2004 sales to its former parent, General Motors Corporation, equaling approximately

$15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation,

Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7.      As part of its growth strategy, Delphi has established an expansive

global presence with a network of manufacturing sites, technical centers, sales offices, and

joint ventures located in every major region of the world. In the U.S., the Debtors employ

approximately 50,600 people. Those employees work in approximately 44 manufacturing

sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and

customer center located in Troy, Michigan. Approximately 34,750 of these individuals are

hourly employees, 96% of whom are represented by approximately 49 different international

and local unions. Outside the United States, the Company's foreign entities employ more than

134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40

countries worldwide.

8.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of

these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in

accordance with the terms of a Master Separation Agreement between Delphi and GM. In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems,

4

and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

        9.    Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.    <u>Events Leading To The Chapter 11 Filing</u>

        10.    In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is

5

18-23538-shl   Doc 7852-4   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit D -
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor   Pg 382 of 458
05-44481-rdd   Doc 20291   Filed 06/16/10   Entered 06/16/10 15:53:40   Main Document   Pg 6 of 12

approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements. Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the

---

[3]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

Company's core businesses.  This will require negotiation with key stakeholders over their

respective contributions to the restructuring plan or, absent consensual participation, the

utilization of the chapter 11 process to achieve the necessary cost savings and operational

effectiveness envisioned in the Company's transformation plan.  The Debtors believe that a

substantial segment of Delphi's U.S. business operations must be divested, consolidated, or

wound-down through the chapter 11 process.

14.     Upon the conclusion of this process, the Debtors expect to emerge from

chapter 11 as a stronger, more financially sound business with viable U.S. operations that are

well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal

all of its resources to continue to deliver value and high-quality products to its customers

globally.  Additionally, the Company will preserve and continue the strategic growth of its

non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.     By this Motion, the Debtors seek entry of an order pursuant to section

503(b) of the Bankruptcy Code confirming that their subcontractors, suppliers, and vendors

(collectively, the "Vendors") will have administrative expense priority claims for those

undisputed obligations arising from prepetition purchase orders outstanding on the Petition

Date (the "Outstanding Orders") relating to materials, supplies, goods, products, and related

items (collectively, the "Goods") that are or will be received and accepted by the Debtors on

or subsequent to the Petition Date.

<u>Basis For Relief</u>

16.     In the ordinary operation of the Debtors' businesses, numerous Vendors

provide the Debtors with tens of millions of dollars of Goods on a daily basis.  Indeed,

7

because of the Debtors' use of "just-in-time" inventory systems, the Debtors receive Goods

from Vendors on a continuous basis.  As of the Petition Date, and in the ordinary course of

their businesses, the Debtors had a substantial number of Outstanding Orders with the

Vendors.  As a result of the filing of the Debtors' chapter 11 cases, many of the Vendors may

be concerned that delivery or shipment of Goods after the Petition Date pursuant to a

prepetition purchase order will render that Vendor a general unsecured creditor of the

Debtors' estates.   Accordingly, without confirmation that claims for Goods shipped pursuant

to Outstanding Orders will be entitled to administrative expense priority status, Vendors may

decline to ship, or may instruct their shippers not to deliver, Goods destined for the Debtors

unless the Debtors issue substitute, postpetition purchase orders, which could impose a

significant administrative burden as it could require the Debtors to issue thousands of new

purchase orders.

        17.     Under the provisions of section 503(b)(1)(A) of the Bankruptcy Code,

all obligations that arise in connection with the postpetition delivery of Goods to the Debtors

are, by definition, administrative expenses.  Therefore, the Debtors believe that they have the

authority to make payment for Goods received postpetition regardless of the time when the

orders for such Goods were placed.  Moreover, the Debtors believe that they have authority to

make progress payments, in their discretion, to ensure such postpetition delivery of Goods,

particularly where such Vendors threaten to stop shipment of the Goods unless they receive

postpetition progress payments.  The Debtors' relationships with their Vendors are so essential

and their need for Goods to be shipped on a timely basis is so acute that the Debtors believe it

is crucial to reassure their Vendors that their valid claims will be paid by the Debtors in the

ordinary course of business.  Because the Debtors rely so heavily on "sole-source" suppliers

and "just in time" inventory, should one of these Vendors decide not to deliver Goods postpetition out of fear that it will not be paid, the Debtors may have to shut down one or more of their manufacturing plants.  This, in turn, could cause the shut-down of customer plants, resulting in millions of dollars of claims against the Debtors and their estates.  Moreover, because of the interconnected nature of the automotive business, this sequence of events could occur in fewer than 48 hours.

18.    Absent the relief requested in this Motion, the Debtors would be required to expend substantial time and resources to (i) convince the Vendors of the Debtors' authority to make certain payments, (ii) reissue the Outstanding Orders, or (iii) establish their right to retain the goods and products.  The attendant disruption to the continuous flow of goods, products, and supplies to the Debtors and their manufacturing facilities would likely result in the rapid deterioration of the Debtors' going concern value and, thus, undermine the Debtors' prospects for a successful reorganization.   Therefore, the Debtors request that this Court grant an order confirming administrative expense treatment for such claims.

<u>Applicable Authority</u>

19.    Section 503(b)(1)(A) of the Bankruptcy Code governs the allowance of administrative expenses, including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case."  11 U.S.C. § 503(b)(1)(A).  Administrative expense priority status is granted when "the debt both (1) 'arise[s] from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor-in-possession in the operation of the business.' "  <u>In re Jartran, Inc.</u>, 732 F.2d 584, 587 (7th Cir. 1984) (quoting <u>In re Mammoth Mart, Inc.</u>, 536 F.2d 950, 954 (1st Cir. 1976)); <u>see also</u> <u>In re Moltech Power Sys., Inc.</u>, 273

9

B.R. 268, 271 (Bankr. N.D. Fla. 2002); In re CP III Ltd. P'ship., 224 B.R. 206, 208 (Bankr. M.D. Fla. 1998).

20.    The postpetition receipt and acceptance of the Goods satisfies the first element of the foregoing test.  With respect to the second element, not only are the Goods beneficial to the Debtors, they are absolutely critical for the uninterrupted operation of the Debtors' production facilities.  Without such Goods, the Debtors cannot manufacture and deliver Goods to their customers.  Accordingly, the Debtors' postpetition receipt of Goods on account of Outstanding Orders gives rise to postpetition claims in favor of the Vendors, claims that are entitled to administrative expense priority status under section 503(b) of the Bankruptcy Code.

21.    Relief similar to that requested herein has been granted in other large chapter 11 cases in this district.  See 'e.g., In re Delta Air Lines, Inc., Case No. 05-17923 (Bankr. S.D.N.Y. Sept. 16, 2005); In re Northwest Airlines Corp., Case No. 05-17930 (Bankr. S.D.N.Y. Sept. 15, 2005); In re Winn-Dixie Stores, Inc., Case No. 05-11063 (Bankr. S.D.N.Y. Mar. 15, 2005); In re Westpoint Stevens, Inc., Case No. 03-13532 (Bankr. S.D.N.Y. June 3, 2003); In re Fleming Co., Case No. 03-10945 (Bankr. D. Del. Apr. 3, 2003); In re Magellan Health Services, Inc., Case No. 03-40515 (Bankr. S.D.N.Y. Mar. 11, 2003); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 3, 2001); In re Ames Dept' Stores, Inc., Case No. 01-42217 (Bankr. S.D.N.Y. Aug. 20, 2001).

22.    It is essential to the Debtors' operations and, thus, to the success of their reorganization efforts, that the relief requested herein be granted.  The Debtors' payment of their Vendors' Outstanding Orders will help ensure that the Debtors' manufacturing operations

continue seamlessly.  Accordingly, the relief requested herein is in the best interests of the Debtors, their estates, and their creditors and should be approved.

23.    Nothing contained herein is intended to be, or should be construed as, an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval, assumption, or adoption of any agreement, contract, purchase order, or lease under section 365 of the Bankruptcy Code.   Likewise, if this Court grants the relief sought herein, any payment made under this Court's order is not intended to be, and should not be construed as, an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

<u>Notice</u>

24.    Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the Office of the United States Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, and (d) counsel for the agent under Debtors' proposed postpetition credit facility.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

25.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

11

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) confirming the grant of administrative expense status to obligations arising from the postpetition delivery of goods and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
       October 8, 2005

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By: s/ John Wm. Butler, Jr.  _____
    John Wm. Butler, Jr. (pro hac vice motion pending)
    John K. Lyons
    Ron E. Meisler
    333 West Wacker Drive, Suite 2100
    Chicago, Illinois  60606
    (312) 407-0700

    - and -

By: s/ Kayalyn A. Marafioti_____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
    Four Times Square
    New York, New York 10036
    (212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                                         :
      In re                :
                                                         :    Chapter 11
DELPHI CORPORATION, et al.,                              :
                                                         :    Case No.  05 – _____ (___)
          Debtors.  :
                                                         :    (Jointly Administered)
                                                         :
-------------------------------------------------------- x

ORDER UNDER 11 U.S.C. § 503(b) CONFIRMING GRANT OF
ADMINISTRATIVE EXPENSE STATUS TO OBLIGATIONS ARISING FROM
POSTPETITION DELIVERY OF GOODS AND AUTHORIZING DEBTORS TO PAY
SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS

("ADMINISTRATIVE EXPENSE ORDER")

        Upon the motion, dated October 8, 2005 (the "Motion"), of Delphi Corporation

and certain of its domestic subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11

U.S.C. § 503(b) confirming the grant of administrative expense status to obligations arising

from postpetition delivery of goods; and upon the Affidavit Of Robert S. Miller, Jr. In

Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005; and upon

the record of the hearing held on the Motion; and this Court having determined that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and

other parties-in-interest; and it appearing that proper and adequate notice of the Motion has

been given and that no other or further notice is necessary; and after due deliberation thereon;

and good and sufficient cause appearing therefor, it is hereby

03-13508-shl Doc 222-1 Filed 08/08/22 Entered 11/08/15 19:24:09 Proposed
Order Pg 2 of 3

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED.

2.    The subcontractors, suppliers, and vendors shall have administrative expense priority claims under 11 U.S.C. § 503(b) for those undisputed obligations arising from prepetition purchase orders outstanding on the Petition Date relating to materials, supplies, goods, products, and related items received and accepted by the Debtors on or subsequent to the Petition Date.

3.    The Debtors are authorized but not directed to honor or pay those obligations arising from the postpetition delivery of goods ordered by the Debtors before the Petition Date.  For purposes of this Order, goods shall be deemed to be delivered to the Debtors postpetition (a) if possession or control of such goods is transferred to the Debtors on or after the Petition Date or (b) if, pursuant to a contract or applicable nonbankruptcy law, risk of loss of such goods passes to the Debtors on or after the Petition Date.

4.    The payment of an obligation arising from the Outstanding Orders shall not preclude the Debtors from contesting the validity of such amounts claimed to be due.

5.    Nothing contained in the Motion or in this Order shall be deemed to constitute an assumption, adoption, or rejection of any executory contract or agreement between the Debtors and any third party.

6.    The entry of this Order is final; provided, however, that (a) within ten days after the official committee of unsecured creditors (the "Creditors' Committee") has been formed and retained counsel, the Creditors' Committee may object to the prospective application of this Order from and after the date of such objection, (b) if any such objection is

2

A-4257

05-44481-rdd Doc 250-15 Filed 08/08/22 Entered 08/08/22 16:35:90 Proposed Order Pg 3 of 3

timely made, it shall be heard at the next regularly-scheduled omnibus hearing in these cases, and (c) pending such hearing, this Order shall remain in full force and effect.

7.      The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

8.      The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:      New York, New York
            October __, 2005

_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                                           :
      In re                  :
                                                           :    Chapter 11
                                                           :
DELPHI CORPORATION, et al.,                                :
                                                           :    Case No.  05 – 44481 (RDD)
          Debtors. :
                                                           :    (Jointly Administered)
                                                           :
-----------------------------------------------------------x

### ORDER UNDER 11 U.S.C. § 503(b) CONFIRMING GRANT OF ADMINISTRATIVE EXPENSE STATUS TO OBLIGATIONS ARISING FROM POSTPETITION DELIVERY OF GOODS AND AUTHORIZING DEBTORS TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS

### ("ADMINISTRATIVE EXPENSE ORDER")

        Upon the motion, dated October 8, 2005 (the "Motion"), of Delphi Corporation and certain of its domestic subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. § 503(b) confirming the grant of administrative expense status to obligations arising from postpetition delivery of goods; and upon the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005; and upon the record of the hearing held on the Motion; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED.

2.    The subcontractors, suppliers, and vendors shall have administrative expense priority claims under 11 U.S.C. § 503(b) for those undisputed obligations arising from prepetition purchase orders outstanding on the Petition Date relating to materials, supplies, goods, products, and related items received and accepted by the Debtors on or subsequent to the Petition Date.

3.    The Debtors are authorized but not directed to honor or pay those obligations arising from the postpetition delivery of goods ordered by the Debtors before the Petition Date.  For purposes of this Order, goods shall be deemed to be delivered to the Debtors postpetition (a) if possession or control of such goods is transferred to the Debtors on or after the Petition Date or (b) if, pursuant to a contract or applicable nonbankruptcy law, risk of loss of such goods passes to the Debtors on or after the Petition Date.

4.    The payment of an obligation arising from the Outstanding Orders shall not preclude the Debtors from contesting the validity of such amounts claimed to be due.

5.    Nothing contained in the Motion or in this Order shall be deemed to constitute an assumption, adoption, or rejection of any executory contract or agreement between the Debtors and any third party.

6.    The entry of this Order is final; provided, however, that (a) within ten business days after the official committee of unsecured creditors (the "Creditors' Committee") has been formed and retained counsel, the Creditors' Committee may object to the prospective application of this Order from and after the date of such objection, (b) if any such objection is

2

18-23538-shl   Doc 7352-4   Filed 02/28/20   Entered 02/28/20 16:52:34   Exhibit D
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 394 of 458
05-44481-rdd   Doc 2852   Filed 11/04/2005   Entered 11/04/2005 Page 3 of 3   Main Document
Pg 3 of 3

timely made, it shall be heard at the next regularly-scheduled omnibus hearing in these cases,

and (c) pending such hearing, this Order shall remain in full force and effect.

      7.    The Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

      8.    The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Motion.

Dated:      New York, New York
             October 13, 2005

                            /s/ ROBERT D. DRAIN
                            UNITED STATES BANKRUPTCY JUDGE

3

18-23538-shl   Doc 7352-4   Filed 02/28/20   Entered 02/29/20 16:52:24   Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor   Pg 395 of 458
Case 7:19-cv-10231-NSR   Document 12-10   Filed 03/02/20   Page 1 of 64

Case No. 7:19-cv-10231-NSR

---

*In the United States District Court*
*for the Southern District of New York*

IN RE SEARS HOLDINGS CORP., ET AL., DEBTORS.

WINNERS INDUSTRY CO., LTD.,

Appellant,

v.

SEARS HOLDINGS CORPORATION,

Appellee.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK,
CASE NO. 7:18-BK-23538-RDD

---

**APPENDIX OF APPELLANT, WINNERS INDUSTRY CO., LTD.**
**VOLUME X (A-3829 TO A-3880)**

---

CALFEE, HALTER & GRISWOLD LLP
Wall Street Plaza
88 Pine Street, 14th Floor
New York, NY 10005-1802
Telephone: (888) 225-3331
H. Jeffrey Schwartz
jschwartz@calfee.com

-and-

18-23538-shl   Doc 7352-4   Filed 02/28/20   Entered 02/29/20 16:52:24   Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 396 of 458
Case 1:19-cv-10231-NSR   Document 12-10   Filed 03/02/20   Page 2 of 64

CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Gus Kallergis
Ronald McMillan
gkallergis@calfee.com (*pro hac vice* pending)
rmcmillan@calfee.com (*pro hac vice* pending)

*Attorneys for Appellant,*
*Winners Industry Co., Ltd.*

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/29/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 397 of 458
Case 7:19-cv-10231-NSR Document 12-10 Filed 03/02/20 Page 3 of 60

# VOLUME I

| Bankruptcy Docket No. | Docket Entry Date | Description | Appendix Page |
|---|---|---|---|
| 3 | 10/15/2018 | Declaration of Robert A. Riecker Pursuant to Rule 1007-2 of Local Bankruptcy Rules for Southern District of New York | A-1 |
| 14 | 10/15/2018 | Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business | A-174 |
| 115 | 10/16/2018 | Interim Order Authorizing Debtors to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants, and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Order Delivered to the Debtors Postpetition and Satisfy Such Obligations in the Ordinary Course of Business | A-200 |

1

18-23538-shl   Doc 3352-4   Filed 02/28/20   Entered 02/29/20 16:52:24   Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor   Pg 398 of 458
Case 1:19-cv-10231-NSR   Document 12-10   Filed 03/02/20   Page 4 of 61

| Bankruptcy Docket No. | Docket Entry Date | Description | Appendix Page |
|---|---|---|---|
| 843 | 11/20/2018 | Final Order Authorizing Debtors to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition, and Satisfy Such Obligations in the Ordinary Course of Business | A-206 |

## VOLUME II

| | | | |
|---|---|---|---|
| 1386 | 12/21/2018 | Motion of Winners Industry Co. Ltd. for Allowance and Payment of Administrative Expense Claims[1] (Part 1 of 2) | A-212 |

## VOLUME III

| | | | |
|---|---|---|---|
| 1386 | 12/21/2018 | Motion of Winners Industry Co. Ltd. for Allowance and Payment of Administrative Expense Claims (Part 2 of 2) | A-268 |
| 2839 | 03/15/2019 | Debtors' Objection to Winners Industry Co., Ltd's Motion for Allowance and Payment of Administrative Claim | A-294 |

---

[1] Attached to this Motion, as filed with the Bankruptcy Court, is the documentation for all 21 shipments that are the subject of the Motion. This Appendix includes the documentation for only those four shipments for which Appellant sought an administrative expense claim under 11 U.S.C. § 503(b)(1)(A).

2

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/29/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 399 of 458
Case 1:19-cv-10231-NSR Document 12-10 Filed 08/02/20 Page 5 of 64

| 3229 | 04/16/2019 | Initial Reply to Debtors' Objection to Motion of Winners Industry Co., Ltd. for Allowance and Payment of Administrative Expense Claims | A-307 |
|---|---|---|---|
| 3258 | 04/17/2019 | Joinder by Pearl Global Industries Ltd. to Motion by Winners Industry Co., Ltd. for Allowance and Payment of Administrative Expense Claims | A-319 |
| 3760 | 05/08/2019 | Letter of Winners Industry Co., Ltd., Administrative Expense Claimant | A-322 |
| 3883 | 05/15/2019 | Debtors' Omnibus Objection to Vendors' Motions for Allowance and Payment of Administrative Expense Claims | A-350 |
| 3942 | 05/20/2019 | Qualified Joinder of the Official Committee of Unsecured Creditors to Debtors' Omnibus Objection to Vendors' Motions for Allowance and Payment of Administrative Claims | A-362 |
| 4060 | 05/29/2019 | Notice of Filing of Exhibits to the Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-366 |

**VOLUME IV**

| 4390 | 06/28/2019 | Disclosure Statement for Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-438 |
|---|---|---|---|

3

| 4392 | 06/28/2019 | Order (I) Approving Disclosure Statement, (II) Establishing Notice and Objection Procedures for Confirmation of the Plan, (III) Approving Solicitation Packages and Procedures for Distribution Thereof, (IV) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan, and (V) Granting Related Relief | A-797 |

## VOLUME V

| 4478 | 07/09/2019 | Disclosure Statement for Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-900 |
| 5237 | 09/26/2019 | Motion for Omnibus Objection to Claim(s) /Debtors' Tenth Omnibus Objection to Proofs of Claim (To Reclassify Claims) | A-1258 |

## VOLUME VI

| 5293 | 10/01/2019 | Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1311 |
| 5296 | 10/01/2019 | Debtors' Supplemental Memorandum of Law in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1403 |

4

18-23538-shl  Doc 7352-4  Filed 02/28/20  Entered 02/28/20 16:52:24  Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 401 of 458
Case 1:19-cv-10231-NSR  Document 12-10  Filed 03/02/20  Page 7 of 64

| 5297 | 10/01/2019 | Supplemental Declaration of Brian J. Griffith in Support of Confirmation of Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1543 |
|------|-----------|---|--------|
| 5335 | 10/07/2019 | Notice of Filing of Fourth Plan Supplement in Connection with Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1549 |
| 5370 | 10/15/2019 | Order (I) Confirming Modified Second Amended Joint Chapter 11 Plan of Sears Holding Corporation and its Affiliated Debtors and (II) Granting Related Relief | A-1555 |
| 5371 | 10/15/2019 | Order Denying Vendors' Motion for Allowance and Payment of Administrative Expense Claims | A-1709 |
| 5400 | 10/17/2019 | Response of Winners Industry Company, Ltd. In Opposition To Debtors' Tenth Omnibus Objection To Proofs of Claim (To Reclassify Claims) | A-1712 |
| 5407 | 10/18/2019 | Monthly Operating Report / Corporate Monthly Operating Report for the Reporting Period of August 4, 2019 – August 31, 2019 | A-1724 |
| 5517 | 10/25/2019 | Objection to Debtors' Fourth Plan Supplement | A-1746 |

## VOLUME VII

| 5522 | 10/28/2019 | Notice of Appeal (Winners Industry Co., Ltd.) | A-1749 |
|------|-----------|---|--------|

5

## VOLUME VIII

| 6009 | 11/13/2019 | Joinder by Winners Industry Co., Ltd. to Objection of Orient Craft Limited, Eric Jay Ltd., and Stolaas Company to Debtors Fourth Plan Supplement in Connection with the Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1931 |
| --- | --- | --- | --- |
| 6076 | 11/22/2019 | Order signed on 11/21/2019 Granting Debtors' Tenth Omnibus Objection to Proofs of Claim (To Reclassify Claims) | A-1936 |
| 6139 | 12/05/2019 | Letter Filed by David H. Wander on behalf of Orient Craft Ltd. | A-1943 |
| 6189 | 12/12/2019 | Joint Response of the Debtors and the Official Committee of Unsecured Creditors in Support of the Fourth Plan Supplement in Connection with Modified Second Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors | A-1945 |
| 6300 | 12/29/2019 | Notice of Hearing on Interim Applications for Allowance of Compensation and Reimbursement of Expenses on January 28, 2020 at 10:00 A.M. | A-1962 |
| N/A | N/A | Copy of Bankruptcy Court Docket Report Through November 25, 2019 | A-1965 |

6

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/29/20 16:52:24 Exhibit D --
Case 7:19-cv-10231-NSR Document 12-10 Filed 03/02/20 Page 9 of 60
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 403 of 458

# VOLUME IX
## (TRANSCRIPTS)

| 136 | 05/31/2019 | Transcript of Hearing Held on October 15, 2018 | A-2689 |
|---|---|---|---|
| 4799 | 05/31/2019 | Transcript of Hearing Held on May 29, 2019 | A-2782 |
| 4803 | 08/09/2019 | Transcript of Hearing Held on November 15, 2018 | A-2872 |
| (5395)[2] | 10/07/2019 | Transcript of Hearing Held on October 3, 2019 | A-3057 |
| (5396) | 10/09/2019 | Transcript of Hearing Held on October 7, 2019 | A-3420 |
| (5500) | 10/24/2019 | Transcript of Hearing Held on May 21, 2019 | A-3656 |

# VOLUME X

| N/A | 11/22/2019 | Administrative Expense Order in *In re Bumble Bee Parent, Inc.*, No. 19-12502 (LSS) (Bankr. D. Del.) | A-3829 |
|---|---|---|---|
| N/A | 3/19/2019 | Administrative Expense Order in *In re Imerys Talc Am., Inc.*, No. 19-10289 (LSS) (Bankr. D. Del.) | A-3831 |
| N/A | 11/29/2018 | Administrative Expense Order in *In re Herb Philipson's Army and Navy Stores Inc.*, No. 18-61376-6 (DD) (Bankr. N.D.N.Y.) | A-3835 |

---

[2] Docket Nos. 5395, 5396 and 5500 are transcripts that have not yet been filed because the restriction periods for these transcripts have not yet expired.

7

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D -- Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 404 of 458

Case 19-cv-10352-NSR Document 12-10 Filed 02/28/20 Page 10 of 64

| N/A | 10/25/2017 | Administrative Expense Order in *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va.) | A-3838 |
|-----|------------|---------------------------------------------------------------------------------------------------|--------|
| N/A | 8/30/2017 | Administrative Expense Order in *In re TerraVia Holdings, Inc.*, No. 17-11655 (CSS) (Bankr. D. Del.) | A-3844 |
| N/A | 8/19/2016 | Administrative Expense Order in *In re Vestis Retail Group, LLC*, No. 16-10971 (CSS) (Bankr. D. Del.) | A-3849 |
| N/A | 1/13/2016 | Administrative Expense Order in *In re Arch Coal, Inc.*, No. 16-40120-705 (Bankr. E.D. Mo.) | A-3852 |
| N/A | 12/10/2009 | Administrative Expense Order in *In re Simmons Bedding Co.*, No. 09-14037 (MFW) (Bankr. D. Del.) | A-3856 |
| N/A | 2/27/2019 | Administrative Expense Order in *In re PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal.) | A-3860 |
| N/A | 3/22/2018 | Administrative Expense Order in *In re Tops Holding II Corp.*, No. 18-22279 (RDD) (Bankr. S.D.N.Y.) | A-3865 |
| N/A | 5/20/2016 | Administrative Expense Order in *In re Breitburn Energy Partners LP*, No. 16-11390 (SMB) (Bankr. S.D.N.Y.) | A-3871 |
| N/A | 9/18/2014 | Administrative Expense Order in *In re SIGA Technologies, Inc.*, No. 14-12623 (SHL) (Bankr. S.D.N.Y.) | A-3874 |
| N/A | 8/6/2009 | Administrative Expense Order in *In re Finlay Enterprises, Inc.*, No. 09-14873 (JMP) (Bankr. S.D.N.Y) | A-3877 |

4816-7577-7712, v.1

| N/A | N/A | American Bankruptcy Institute, Form III.M. Motion for Order Authorizing Postpetition Delivery of Goods Ordered Prepetition | A-3880 |
|---|---|---|---|

9

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BUMBLE BEE PARENT, INC., *et al.*,[1] | Case No. 19-12502 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket No. 10** |

**ORDER (I) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO**
**ALL UNDISPUTED OBLIGATIONS FOR GOODS ORDERED PREPETITION**
**AND RECEIVED POSTPETITION AND AUTHORITY TO SATISFY**
**SUCH OBLIGATIONS IN THE ORDINARY COURSE**
**OF BUSINESS AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order, pursuant to section 503(b) of the Bankruptcy Code, (i) granting administrative expense priority to all undisputed obligations for goods received postpetition pursuant to the Outstanding Prepetition Orders and (ii) granting related relief; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that this Court may enter a final order consistent with Article III of the United States Constitution; and upon the First Day Declaration; and it appearing that proper and adequate notice of the Motion has been given and that no other or

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Bumble Bee Parent, Inc. (5118); Bumble Bee Holdings, Inc. (1051); Bumble Bee Foods, LLC (0146); Anova Food, LLC (2140); and Bumble Bee Capital Corp. (7816). The headquarters for the above-captioned Debtors is 280 Tenth Avenue, San Diego, CA 92101.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

01:25628605.2

further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED as set forth herein.

2.    All undisputed obligations related to postpetition receipt of good under the Outstanding Prepetition Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

3.    The Debtors are authorized, but not directed, to pay all undisputed amounts related to the Outstanding Prepetition Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

4.    Nothing in this Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

5.    The Debtors are authorized to take all actions necessary to effectuate the relief granting in this Order in accordance with the Motion.

6.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: November 22, 2019
      Wilmington, Delaware

                                      Laurie Selber Silverstein
                                      United States Bankruptcy Judge

01:25628605.2

2

**A-3830**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | : | Case No. 19-10289 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Re: Docket No. 4 & 48** |

--------------------------------------------------------- x

**FINAL ORDER UNDER 11 U.S.C. §§ 105(a), 363(b), 503(b), 541, 1107(a), AND 1108 AND FED. R. BANKR. P. 6003 (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SHIPPERS, LIEN CLAIMANTS, ROYALTY INTEREST OWNERS, AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF UNDISPUTED AND OUTSTANDING PREPETITION ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the Debtors for a Final Order (i) authorizing the Debtors to pay the Shipping Claims, Lien Claims, Royalty Payments, and 503(b)(9) Claims as provided herein; (ii) confirming the administrative expense priority status of Outstanding Orders and authorizing the Debtors to pay prepetition amounts related to the Outstanding Orders; and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion and the Picard Declaration, and the Interim Order entered on February 14, 2019; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and the Court having determined that there is good and sufficient cause for the relief granted in this order, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis, as set forth herein.

2.      All objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized, but not directed, to pay the prepetition Shipping Claims in an amount not to exceed $3,300,000 in the aggregate (the "**Final Shipping Claims Cap**") absent further order of the Court.

4.      The Debtors are authorized, but not directed, to pay the prepetition Lien Claims in an amount not to exceed $1,400,000 in the aggregate (the "**Final Lien Claims Cap**") absent further order of the Court; *provided that* with respect to each Lien Claim, the Debtors shall not pay such Lien Claim unless the claimant has perfected, or is capable of perfecting in the future, in the Debtors' business judgment, one or more liens in respect of such Lien Claim.

5.      The Debtors are authorized, but not directed, to pay the prepetition Royalty Payments in an amount not to exceed $900,000 in the aggregate (the "**Final Royalty Payments Cap**") absent further order of the Court.

6.      The Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay all or part of, and discharge, on a case-by-case basis, the 503(b)(9)

2

**A-3832**

Claims in an amount not to exceed $300,000 in the aggregate (the "**503(b)(9) Claims Cap**"), absent further order of the Court.

7.      All undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

8.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the Shipping Claims, Lien Claims, Royalty Payments, and 503(b)(9) Claims are authorized to (i) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (ii) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

9.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of Shipping Claims, Lien Claims, Royalty Payments, and 503(b)(9) Claims as set forth herein and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 Cases.

10.     Nothing in the Motion or this Final Order, or the Debtors' payment of any claims pursuant to this Final Order, shall be construed as: (a) an admission as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any

US-DOCS\105945127.1RLF1 20950721v.1

claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (f) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Final Order. Nothing contained in this Final Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

11. Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

12. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Final Order.

13. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Dated: March 19th, 2019**
**Wilmington, Delaware**

4

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

A-3834

So Ordered.

_____

Signed this 19 day of November, 2018.

Diane Davis
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                          :
In re:                                    :        Chapter 11
                                          :
HERB PHILIPSON'S ARMY AND NAVY            :
STORES INC.,                              :
                                          :        Case No. 18- 61376-6 (DD)
                              Debtor.[1]   :
                                          :
-------------------------------------------------------------X

**FINAL ORDER PURSUANT TO SECTIONS 363(c)(1) AND 503(b)(1)(A)
OF THE BANKRUPTCY CODE: (I) GRANTING ADMINISTRATIVE
EXPENSE PRIORITY STATUS TO UNDISPUTED OBLIGATIONS
ARISING FROM THE POSTPETITION DELIVERY OF GOODS AND
SERVICES ORDERED PREPETITION; AND (II) AUTHORIZING THE DEBTOR
TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS**

Upon the motion (the "Motion")[2] of the Debtor for a final order, pursuant to

sections 363(c)(1) and 503(b)(1)(A) of the Bankruptcy Code: (i) granting administrative expense

priority status to undisputed obligations arising from the postpetition delivery of goods and

services ordered prepetition; and (ii) authorizing, but not directing, the Debtor to pay such

_____

[1]     The last four digits of the Debtor's federal tax identification number are 4814.

[2]     Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in the
        Motion.

Case 18-23538-rdd   Doc 1036   Filed 11/14/18   Entered 11/14/18 09:52:54   Main
Document   Pg 2 of 3

obligations in the ordinary course of business; and upon the Affidavit; and sufficient notice of

the Motion having been given; and it appearing that no other or further notice need be provided;

and a hearing to consider the Motion having been held on November 14, 2018; and it appearing

that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors

and other parties in interest; and after due deliberation thereon and sufficient cause appearing

therefore, it is hereby

### ORDERED, ADJUDGED AND DECREED that:

1.      The Motion is **GRANTED** to the extent provided herein.

2.      The Debtor's undisputed obligations arising from the postpetition delivery

of goods or services under the Prepetition Orders, shall be afforded administrative expense

priority status pursuant to Bankruptcy Code section 503(b)(1)(A).

3.      The Debtor is authorized, but not directed, to pay Vendors all undisputed

obligations arising from the postpetition delivery of goods or services under the Prepetition

Orders in the ordinary course of business pursuant to Bankruptcy Code section 363(c)(1).

4.      Nothing in this Order or the Motion shall be deemed or construed as

prejudicing any rights that the Debtor may have to dispute or contest the amount of, or basis for,

any claims in connection with the Prepetition Orders.

5.      Nothing in this Order or the Motion shall constitute a rejection or

assumption by the Debtor, as a debtor in possession, of any executory contract or unexpired

lease.

6.      The Debtor is hereby authorized to take such actions as may be required to

carry out the intent and purpose of this Order.

7.      Bankruptcy Rule 6003(b) has been satisfied.

2

A-3836

8.      Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

9.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

###

A-3837

Case 18-23538-shl Doc 7352-4 Filed 02/29/20 Entered 02/29/20 16:52:34 Exhibit D Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 415 of 458

Case 17-34665-KLP Doc 423 Filed 01/22/17 Entered 01/22/17 03:04:26 Desc Main Document Page 1 of 6

Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900

-and-

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:      (804) 644-1700
Facsimile:       (804) 783-6192

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Robert A. Britton (admitted *pro hac vice*)
Emily E. Geier (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOYS "R" US, INC., *et al.*,[1] | ) | Case No. 17-34665 (KLP) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF LIEN CLAIMANTS, IMPORT CLAIMANTS, AND 503(B)(9) CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession

(collectively, the "<u>Debtors</u>") for entry of a final order (this "<u>Final Order</u>"): (a) authorizing the

Debtors to pay prepetition claims held by certain claimants, (b) confirming the administrative

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are set forth in the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* filed contemporaneously herewith. The location of the Debtors' service address is One Geoffrey Way, Wayne, NJ 07470.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

expense priority of Outstanding Orders, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District Of Virginia*, dated July 10, 1984; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to pay, in satisfaction of outstanding prepetition claims, (i) up to $51.2 million on account of Lien Charges, (ii) up to $200,000 on account of Import Charges, and (iii) up to $200 million on account of 503(b)(9) Claims, and are authorized to pay all undisputed amounts related to Outstanding Orders placed in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date; *provided* that only those Debtors that incurred Obligations, or that placed the Outstanding

A-3839

Orders, as applicable, or a Debtor that in the ordinary course of business pays the Obligations or the Outstanding Orders, as applicable, of other Debtor entities, shall be authorized to make payments under this Final Order; *provided, further*, that the Debtors are only authorized to make payments on account of 503(b)(9) Claims with the authority granted by this Order if such payments are liquidity neutral or better, on average, or are otherwise reasonably acceptable to the ad hoc group of the Term B-4 Holders; *provided*, *further*, that the Debtors shall provide three (3) business days' notice and consult with the Official Committee of Unsecured Creditors (the "Committee") prior to making any payment to any single individual in excess of $5,000,000 on account of Obligations.

3. Beginning retroactively from September 29, 2017 and through the conclusion of these cases, the Debtors shall provide a weekly report to the U.S. Trustee, the Committee's professionals, and the professionals for the ad hoc group of the Term B-4 Holders of all payments made to Lien Claimants, Import Claimants or 503(b)(9) Claimants. Such weekly reports shall include (i) the name of each party receiving such payment, (ii) the amount, category, and timing of such payment, including any amount entitled to priority under section 503(b)(9) of the Bankruptcy Code, and (iii) trade terms agreed upon, if applicable.

4. Any party that accepts payment from the Debtors on account of an Obligation shall be deemed to have agreed to the terms and provisions of this Final Order.

5. Subject to paragraph 2 of this Final Order, all undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

6. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized

to receive, process, honor, and pay all such checks and electronic payment requests when presented

for payment, and all such banks and financial institutions are authorized to rely on the Debtors'

designation of any particular check or electronic payment request as approved by this Final Order,

without any duty of further inquiry and without liability for following the Debtors' instructions.

7.      Notwithstanding the relief granted in this Final Order and any actions taken

pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the

validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other

party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or

requirement to pay any prepetition claim; (d) an implication or admission that any particular claim

is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to

assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy

Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy

Code or any other applicable law.

8.      The Debtors are authorized to issue postpetition checks, or to effect postpetition

fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection

with the relief granted herein.

9.      Nothing in this Final Order shall alter or limit any authorization or relief contained

in, or prevent Debtor Toys "R" Us (Canada) Ltd. ("Toys Canada") from taking any action

authorized pursuant to, the Initial Order in respect of Toys Canada issued by the Ontario Superior

Court of Justice (Commercial List) (the "CCAA Court") in proceedings in respect of Toys Canada

pursuant to the Companies' Creditors Arrangement Act (Canada), and to the extent of any

inconsistency between this Final Order and the terms of the Initial Order or any other Order of the

CCAA Court with respect to Toys Canada, the Order of the CCAA Court shall govern.

10.     Notwithstanding anything to the contrary in this Final Order, any payment made or action taken by any of the Debtors pursuant to the authority granted in this Final Order must be in compliance with, and shall be subject to: (i) any orders approving the Debtors' use of cash collateral and/or any postpetition financing facilities (the "DIP Orders"), (ii) the documentation in respect of any such postpetition financing facilities and/or use of cash collateral, and (iii) the budgets governing any such postpetition financing and/or use of cash collateral.

11.     To the extent there is any inconsistency between the terms of any of the DIP Orders and this Final Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

12.     The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is waived.

13.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order.

16.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _____, 2017    Oct 24 2017   /s/ Keith L. Phillips
Richmond, Virginia                        THE HONORABLE KEITH L. PHILLIPS
                                          UNITED STATES BANKRUPTCY JUDGE

                                          Entered on Docket:  Oct 25 2017

WE ASK FOR THIS:

/s/ *Jeremy S. Williams*

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:       (804) 644-1700
Facsimile:        (804) 783-6192

- and -

Edward O. Sassorer, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:        (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Anup Sathy, P.C.
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Robert A. Britton  (admitted *pro hac vice*)
Emily E. Geier  (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:        (312) 862-2200

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

### CERTIFICATION OF ENDORSEMENT
### UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been
endorsed by or served upon all necessary parties.

/s/ *Jeremy S. Williams*

A-3843

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TERRAVIA HOLDINGS, INC., *et al.*, | ) Case No. 17-11655 (CSS) |
| | ) |
| Debtors.[1] | ) Jointly Administered |
| | ) |
| | ) **Re: Docket Nos. 5, 69 & _____** |

**FINAL ORDER (I) GRANTING ADMINISTRATIVE EXPENSE STATUS TO THE
DEBTORS' UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM
THE POST-PETITION DELIVERY OF GOODS ORDERED PREPETITION,
(II) AUTHORIZING THE DEBTORS TO PAY THOSE OBLIGATIONS
IN THE ORDINARY COURSE OF BUSINESS, (III) AUTHORIZING
THE DEBTORS TO RETURN GOODS AND (IV) AUTHORIZING FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of TerraVia Holdings, Inc. (formerly known as

Solazyme, Inc.) ("**TerraVia**") and certain of its subsidiaries that are debtors and debtors in

possession in the Chapter 11 Cases (collectively the "**Debtors**") seeking entry of an order,

pursuant to sections 363, 503, 507, and 546 of the Bankruptcy Code, (i) granting administrative

priority status for undisputed obligations of Vendors for Goods ordered prepetition but received

and accepted by the Debtors on or after the Petition Date and (ii) authorizing, but not directing,

the Debtors, in their sole discretion, to pay such obligations in the ordinary course or to return

such goods for credit against prepetition claims, as more fully described in the Motion; and this

Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: TerraVia Holdings, Inc. (7078), Solazyme Brazil LLC (2839) and Solazyme Manufacturing 1, LLC (4172). The debtors' mailing address is 225 Gateway Boulevard, South San Francisco, CA 94080

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

§ 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and the Court having venue pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given; and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the Painter Declaration; and the Court having held an interim hearing on the Motion; and the Court having granted interim relief on the Motion on August 4, 2017 (D.I. 69); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having found that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates and all other parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The relief requested in the Motion is hereby granted as set forth herein.

2.      The Debtors' Vendors shall be granted administrative expense claims with priority status, pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code (subject, in all cases, to the priority of the Superpriority DIP Claims and DIP Liens), with respect to those obligations of the Debtors for Goods delivered to and accepted by the Debtors on or after the Petition Date under Prepetition Orders that the Debtors determine, in their sole discretion, are valid claims against the Debtors' estates.

RLF1 18047266v.2

3.      The Debtors are authorized, but not directed, in their sole discretion, under

section 546(h) of the Bankruptcy Code, subject to the limitations imposed by any orders of this

Court and the prior rights of holders of security interests in such Goods or the proceeds of such

Goods (to the extent of such interests) to return to Vendors those Goods that were delivered

before the Petition Date for an offset of the purchase price of such Goods against such Vendors'

prepetition claims; provided that such Goods shall, in all cases, remain DIP Collateral unless and

until so returned to such Vendors.

4.      The Debtors are authorized, but not directed, in their sole discretion, to pay all

undisputed obligations arising from the post-petition delivery or shipment by the Vendors of

Goods, including shipments of parts, inventory, supplies and equipment, subject to the

Prepetition Orders, consistent with their customary practices in the ordinary course of their

businesses.[3]

5.      All applicable banks and other financial institutions are hereby authorized, but not

directed, to receive, process, honor and pay all checks presented for payment of, and to honor all

fund transfer requests made by the Debtors related to, the claims that the Debtors requested

authority to pay in the Motion, regardless of whether the checks were presented or fund transfer

requests were submitted on, before or after the Petition Date.  Such banks and financial

institutions are authorized to rely on the representations of the Debtors as to which checks are

issued or authorized to be paid pursuant to this Order without any duty of further inquiry and

without liability for following the Debtors' instructions.

---

[3] To the extent the Debtors in good faith are unable to ascertain what portion of obligations owed to
Vendors are on account of Goods and what portion are on account of services, the Debtors are authorized to pay the
totality of such obligations.

RLF1 18047266v.2

6. The Debtors are authorized, but not required, in their sole discretion, to issue new post-petition checks, or effect new fund transfers, for the Goods to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse the Vendors or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

7. Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be construed as or deemed to constitute an assumption or rejection of any agreement, contract or lease under section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

8. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

9. Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any grounds, (b) a waiver or impairment of the Debtors' rights to dispute any claim on any grounds, (c) a promise by the Debtors to pay any claim or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

10. Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

RLF1 18047266v.2

A-3847

11.     The Debtors are authorized to take all such actions as are necessary and appropriate to implement the terms of this Order.

12.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated:     _____, 2017
             Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

RLF1 18047266v.2

A-3848

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>VESTIS RETAIL GROUP, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 16-10971 (CSS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 8** |

## ORDER CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY STATUS OF DEBTORS' UNDISPUTED OBLIGATIONS FOR POSTPETITION DELIVERY OF GOODS ORDERED PREPETITION

Upon the motion (the "Motion")[2] of Vestis Retail Group, LLC and its chapter 11 affiliates, the debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases"), for entry of an order, pursuant to sections 105(a), 363(c) and 503(b)(1)(A) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") confirming administrative expense priority status and authorizing payment of the Debtors' undisputed obligations for the postpetition delivery of goods that were ordered prepetition and that the Debtors have not canceled, declined, returned, or contested; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February

---

[1]   The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Vestis Retail Group, LLC (1295); Vestis Retail Financing, LLC (9362); EMS Operating Company, LLC (2061); Vestis IP Holdings, LLC (2459); Bob's Stores, LLC (4675); EMS Acquisition LLC (0322); Sport Chalet, LLC (0071); Sport Chalet Value Services, LLC (7320); and Sport Chalet Team Sales, LLC (8015).  The Debtors' executive headquarters are located at 160 Corporate Court, Meriden, CT 06450.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

29, 2012; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and

that the Court may enter a final order consistent with Article III of the United States

Constitution; and it appearing that venue of these Cases and of the Motion is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Motion has

been given under the circumstances, and that no other or further notice need be given; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors' estates,

their creditors, and other parties in interest; and after due deliberation, and good and sufficient

cause appearing therefor, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED as set forth herein.

2.    The Debtors' undisputed obligations to the Suppliers under Outstanding Orders

arising from shipments of goods delivered to and accepted by the Debtors on and after the

Petition Date, and not subsequently canceled, declined, returned, or contested, are hereby granted

administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code

as against the Debtor liable for any such Outstanding Order, and the Debtors are authorized, but

not directed, to pay such obligations in the ordinary course of business and consistent with the

parties' customary practices in effect prior to the Petition Date.

3.    Notwithstanding anything in the Motion or this Order to the contrary, the Debtors

shall have the right to (a) cancel a purchase order (including any Outstanding Order), (b) decline

the acceptance of goods, (c) return any defective, nonconforming, or unacceptable good, or

(d) contest the amount of any invoice or claims, or liens related thereto, on any grounds.

4.    The Banks shall be and hereby are authorized to receive, process, honor, and pay

all checks and fund transfers on account of obligations owed to Suppliers on account of

01:18582934.3

2

A-3850

Outstanding Orders, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Banks are authorized to rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this Order.

5.      Except as otherwise provided herein, nothing in this Order, nor as a result of any payment made pursuant to this Order, (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates, (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates, or (c) shall be construed as a promise to pay a claim.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

7.      Bankruptcy Rule 6003(b) has been satisfied.

8.      Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon its entry; (b) the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action necessary or appropriate to implement this Order.

9.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: Wilmington, Delaware
      April 19, 2016

                                        Laurie Selber Silverstein
                                        United States Bankruptcy Judge

01:18582934.3

3

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |
|---|---|
| **In re:** | **Chapter 11**<br>**Case No. 16-40120-705** |
| **ARCH COAL, INC.,** *et al.*, | **(Jointly Administered)** |
| Debtors.[1] | **[Related to Docket No. 19]** |

**ORDER (i) GRANTING ADMINISTRATIVE EXPENSE STATUS TO THE
DEBTORS' UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM
THE POSTPETITION DELIVERY OF GOODS ORDERED PREPETITION,
(ii) AUTHORIZING THE DEBTORS TO PAY THOSE OBLIGATIONS IN THE
ORDINARY COURSE OF BUSINESS, (iii) AUTHORIZING THE
DEBTORS TO RETURN GOODS AND (iv) AUTHORIZING FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

On January 11, 2016, Arch Coal, Inc. and its subsidiaries that are debtors and debtors in

possession in these cases (collectively, the "**Debtors**") filed a motion (the "**Motion**")[2] for an

order granting administrative expense status to undisputed obligations of vendors for goods

ordered prepetition but delivered postpetition and authorizing the Debtors to pay such obligations

or to return the goods. This Court having jurisdiction to consider the matters raised in the Motion

pursuant to 28 U.S.C. § 1334; and it having authority to hear the matters raised in the Motion

pursuant to 28 U.S.C. § 157; and it having venue pursuant to 28 U.S.C. §§ 1408 and 1409; and

the Debtors having represented that they made proper and sufficient notice; and the Court having

reviewed the Motion; and the relief requested in the Motion being in the best interests of the

Debtors, their estates and the creditors; and the Court having determined that there exists the

---

[1] The Debtors are listed on Schedule 1 attached to the Motion.  The employer tax identification numbers
and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

[2] Each capitalized term used herein but not otherwise defined herein shall have the meaning ascribed to it in
the Motion.

required basis for the relief granted herein; and upon all of the proceedings had before the Court

and after due deliberation; the Court **ORDERS** that:

1.     The relief requested in the Motion is hereby **GRANTED** as set forth herein.

2.     The Debtors' Vendors shall be granted administrative expense claims with

priority status, pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code, with respect to

those obligations of the Debtors for Goods delivered to and accepted by the Debtors on or after

the Petition Date under Prepetition Orders that the Debtors determine are valid claims against the

Debtors' estates.

3.     The Debtors are authorized under section 546(h) of the Bankruptcy Code, subject

to the limitations imposed by this Court and the prior rights of holders of security interests in

such Goods or the proceeds of such Goods under the Debtors' prepetition financing agreements,

to the extent of such interests, to return to Vendors Goods that were delivered before the Petition

Date for an offset of the purchase price of such Goods against such Vendors' prepetition claims.

4.     The Debtors are authorized to pay all undisputed obligations arising from the

postpetition delivery or shipment by the Vendors of Goods, including shipments of parts,

inventory, supplies and equipment, subject to the Prepetition Orders, consistent with their

customary practices in the ordinary course of their businesses.

5.     All applicable banks and other financial institutions are hereby authorized to

receive, process, honor and pay any and all checks, drafts, wires, check transfer requests or

automated clearing house transfers evidencing amounts paid by the Debtors under this Order,

whether presented prior to or after the Petition Date, to the extent the Debtors have good funds

standing to their credit with such bank or other financial institution.  Such banks and financial

institutions are authorized to rely on the representations of the Debtors as to which checks are

issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.        Nothing in this Order shall be deemed either a grant of administrative expense priority status to, or authority to pay, amounts in respect of inventory or other goods that are not determined by the Debtors to be Goods for the purposes of this Order.

7.        Nothing in this Order or the Motion shall be construed as prejudicing any rights the Debtors may have to dispute or contest the amount of or basis for any claims asserted against the Debtors in connection with the Prepetition Orders.

8.        Other than as expressly set forth herein, nothing in this Order shall be deemed to (a) constitute a postpetition assumption of any agreements related to the Goods or the Vendors pursuant to section 365 of the Bankruptcy Code, (b) grant third-party beneficiary status or bestow additional rights on any third party or (c) waive any rights, claims or defenses of the Debtors.

9.        Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Bankruptcy Rule of the Bankruptcy Court for the Eastern District of Missouri that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.        Notwithstanding anything to the contrary herein, (i) payments made by the Debtors pursuant to the authority granted in this Order must be in compliance with, and shall be subject to, the requirements imposed on the Debtors under the Debtors' postpetition financing agreement (the "**DIP Agreement**") and the terms and conditions of the interim or final orders, as applicable, approving the DIP Agreement and governing the Debtors' use of cash collateral (in either case, the "**DIP Order**"), and (ii) to the extent there is any inconsistency between the terms

Case 12-49219-659 Doc 2223 Filed 01/13/2016 Entered 01/13/2016 Page Main Document
Pg 4 of 4

of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP

Order shall control.

11.     The Debtors are authorized to take all such actions as are necessary to implement

the terms of this Order.

12.     The Debtors have represented that they have made proper, timely, adequate and

sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the

Eastern District of Missouri.

13.     No later than two business days after the date of this Order, the Debtors shall

serve a copy of this Order on the Notice Parties and, no later than 24 hours after such service, the

Debtors shall file a certificate of service with the Court.


                                            CHARLES E. RENDLEN, III
                                            U. S. Bankruptcy Judge


DATED:  January 13, 2016
St. Louis, Missouri
jld

**ORIGINAL**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x
:
In re                                               :    **Chapter 11**
:
SIMMONS BEDDING COMPANY, *et al.*,                  :    **Case No. 09-14037 (MFW)**
:
Debtors.                             :    **Jointly Administered**
:
:    **Re: Docket No. 10**
-------------------------------------------------------------------x

## FINAL ORDER (I) AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND SERVICE PROVIDERS, AND (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY STATUS TO ALL UNDISPUTED OBLIGATIONS ARISING FROM POSTPETITION DELIVERY OF GOODS AND SERVICES ORDERED PREPETITION

Upon the motion (the "Motion") of Simmons Bedding Company and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] for an order (i) authorizing the Debtors to pay, in the Debtors' discretion, the prepetition fixed, liquidated, and undisputed claims (collectively, the "Critical Vendor Claims") of certain of the Debtors' critical vendors and service providers (collectively, the "Critical Vendors"), and (ii) granting administrative expense priority status to all undisputed obligations arising from the postpetition delivery of goods and services ordered prepetition, as more particularly described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and

---

[1]     The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Simmons Company (6221); Bedding Holdco Incorporated (5929); Simmons Bedding Company (5743); The Simmons Manufacturing Co., LLC (0960); Windsor Bedding Co., LLC (8616); World of Sleep Outlets, LLC (0957); Simmons Contract Sales, LLC (2016); Dreamwell, Ltd. (2419); Simmons Capital Management, LLC (2470); and Simmons Export Co. (1370). Dreamwell, Ltd. and Simmons Capital Management, LLC maintain their respective principal corporate offices at 2215-B Renaissance Drive, Suite 12, Las Vegas, Nevada 89119. Each of the other Debtors maintains its principal corporate office at One Concourse Parkway, Atlanta, Georgia 30328.

consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties identified therein; and it appearing that no other or further notice need be provided; and a hearing having been held on November 17, 2009 (the "Interim Hearing") to consider the relief requested in the Motion on an interim basis; and the Court having entered an order granting the Motion on an interim basis (the "Interim Order"); and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion and the relief set forth in the Interim Order are granted as set forth herein on a final basis.

2.     In addition to the relief granted in the Interim Order, the Debtors are authorized, but not required, to make payments from available funds, when feasible and appropriate, and in accordance with the terms and conditions of the Plan Sponsor Agreement, to any or all of the Critical Vendors in amounts not to exceed, in the aggregate, $14,000,000, on account of the Critical Vendors' valid prepetition claims, on the following conditions:

> (i)     all such claims shall be paid by check, wire transfer of funds, or issuance of a credit;
>
> (ii)     by accepting payment under the terms of this Order, each Critical Vendor shall continue extending credit and supplying materials, goods and/or services to the Debtors, and such credit must generally be provided on ordinary and acceptable terms and conditions that are at least as favorable or better than those

provided to the Debtors one hundred eighty (180) days prior to the Commencement Date;[2] and

(iii)    the Debtors shall transmit a copy of this Order to each Critical Vendor to which any payment permitted hereunder is made.

3.    Any Critical Vendor who accepts payment pursuant to this Order shall be deemed to have accepted the terms of this Order, and if the Critical Vendor thereafter does not provide the Debtors with customary trade terms during the pendency of these chapter 11 cases, then any payments of prepetition claims made after the Commencement Date may be deemed to be unauthorized postpetition transfers and, therefore, recoverable by the Debtors.

4.    The Debtors are authorized, but not required, to obtain written verification of the trade terms to be supplied by the Critical Vendors before issuing any payment pursuant to the terms of this Order.

5.    All applicable banks and other financial institutions maintaining the Debtors' disbursement accounts are hereby authorized and required, when requested by the Debtors, to receive, process, honor, and pay any checks, drafts or wire transfers dated prior to, on, or after the Commencement Date upon presentation or receipt thereof in respect of Critical Vendor Claims, and such banks are authorized to rely upon the representation of the Debtors as to which of such checks, drafts or wire transfers are in payment of the Critical Vendor Claims.

6.    Nothing contained in this Order shall be construed as a waiver by the Debtors of their rights to contest any claim or invoice of a holder of a Critical Vendor Claim under applicable law.

7.    Nothing contained in this Order shall be deemed to constitute an assumption or adoption of any executory contract or prepetition or postpetition agreement

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

**A-3858**

between the Debtors and the holder of a Critical Vendor Claim, or to require the Debtors to make any of the payments authorized herein.

8.    The Debtors' undisputed obligations to any vendor that arise from the postpetition delivery of materials, goods, and services that were ordered in the prepetition period shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

9.    Nothing in this Order shall be deemed either a grant of administrative expense priority status to, or authority to pay, any amounts that are disputed in good faith by the Debtors, or in respect of products that are defective or are not received and accepted by the Debtors subsequent to the Commencement Date.

10.    Nothing in this Order shall prohibit the Debtors from seeking Court authority to increase the prepetition amounts authorized to be paid hereunder.

11.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.    This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

Dated:    _Dec. 10_____, 2009
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

18-23538-shl 19 Doc 7352-4 Filed 02/28/20 Entered on Docket 6:52:24 Exhibit D –
Appendix Volumes X and XI (Vendor Comfort Letters) Vendor Comfort    Pg 437 of 458
Case: 19-cv-10234-NSR   Document 12-10   Filed 02/02/20   Page 43 of 61

Entered on Docket
February 28, 2019
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  WEIL, GOTSHAL & MANGES LLP
2  Stephen Karotkin (*pro hac vice*)
   (stephen.karotkin@weil.com)
3  Jessica Liou (*pro hac vice*)
   (jessica.liou@weil.com)
4  Matthew Goren (*pro hac vice*)
   (matthew.goren@weil.com)
5  767 Fifth Avenue
   New York, NY 10153-0119
6  Tel: 212 310 8000
7  Fax: 212 310 8007

8  KELLER & BENVENUTTI LLP
9  Tobias S. Keller (#151445)
   (tkeller@kellerbenvenutti.com)
10 Jane Kim (#298192)
   (jkim@kellerbenvenutti.com)
11 650 California Street, Suite 1900
   San Francisco, CA 94108
12 Tel: 415 496 6723
   Fax: 650 636 9251
13
14 *Proposed Attorneys for Debtors
   and Debtors in Possession*

**Signed and Filed: February 27, 2019**

*[signature]*

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

15         **UNITED STATES BANKRUPTCY COURT**

16         **NORTHERN DISTRICT OF CALIFORNIA**

17            **SAN FRANCISCO DIVISION**

18

19 **In re:**                              Bankruptcy Case
                                           19-30088 (DM)
20 **PG&E CORPORATION,**                   Chapter 11
                                           (Lead Case)
21    **- and -**                          (Jointly Administered)

22 **PACIFIC GAS AND ELECTRIC**           **FINAL ORDER PURSUANT TO 11 U.S.C.**
   **COMPANY,**                           **§§ 105(a), 363(b), AND 503(b) AND FED. R.**
23                                         **BANKR. P. 6003 AND 6004 (I) AUTHORIZING**
                  **Debtors.**             **THE DEBTORS TO PAY PREPETITION**
24                                         **OBLIGATIONS OWED TO SHIPPERS,**
   ☐ Affects PG&E Corporation             **WAREHOUSEMEN, AND OTHER LIEN**
25 ☐ Affects Pacific Gas and Electric     **CLAIMANTS, AND (II) GRANTING**
   Company                                **ADMINISTRATIVE EXPENSE PRIORITY**
26 ☒ Affects both Debtors                 **STATUS FOR CLAIMS ARISING FROM**
   *** All papers shall be filed in the Lead Case,  GOODS DELIVERED TO THE DEBTORS**
27 *No. 19-30088 (DM).***                  **POSTPETITION**
28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 438 of 458
Case: 19-cv-10233-NSR Document 12-10 Filed 02/02/20 Page 44 of 61

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

1   Upon the Motion, dated January 29, 2019 (the "**Motion**"),[1] of PG&E Corporation ("**PG&E**

2   **Corp.**") and Pacific Gas and Electric Company (the "**Utility**"), as debtors and debtors in possession

3   (the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections

4   105(a), 363(b), and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules

5   6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) for interim

6   and final authority to pay the prepetition claims (the "**Lien Claims**") of certain third-party shippers,

7   warehousemen, vendors, and other service providers or contractors that may be permitted to assert

8   statutory or possessory liens against the Debtors' property and equipment if the Debtors fail to pay the

9   prepetition amounts owed to those parties for their various goods and services (collectively, the "**Lien**

10  **Claimants**"), and (ii) granting administrative priority status to all undisputed obligations of the Debtors

11  owing to third-party vendors and suppliers arising from the postpetition delivery of goods ordered prior

12  to the Petition Date and authorizing the Debtors to pay such obligations in the ordinary course of

13  business, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the

14  Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, *Order Referring*

15  *Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule

16  5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District

17  of California (the "**Bankruptcy Local Rules**"); and consideration of the Motion and the requested relief

18  being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

19  pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the

20  Motion as provided to the parties listed therein is reasonable and sufficient, and it appearing that no

21  other or further notice need be provided; and this Court having reviewed the Motion and the Wells

22  Declaration (as amended on February 2, 2019 [Docket No. 263]); and this Court having held hearings

23  to consider the relief requested in the Motion on an interim and final basis; and this Court having

24  previously entered an order granting interim relief with respect to the Motion [Docket No. 214]; and

25  this Court having determined that the legal and factual bases set forth in the Motion establish just cause

26

27  [1] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

28

1  for the relief granted herein; and it appearing that the relief requested in the Motion is in the best

2  interests of the Debtors, their estates, creditors, shareholders, and all parties in interest; and upon all of

3  the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

4  **IT IS HEREBY ORDERED THAT:**

5  1.    The Motion is granted on a final basis, as provided herein.

6  2.    The Debtors are authorized, but not directed, pursuant to sections 363(b) and 105(a) of

7  the Bankruptcy Code, to satisfy prepetition Lien Claims in the ordinary course of business, upon such

8  terms and in the manner provided in this Final Order and the Motion.

9  3.    The Debtors are authorized, but not directed, to pay Lien Claimants, regardless of

10  whether their Lien Claims arose prior to or after the Petition Date; *provided, however*, that no such

11  payment shall be deemed to be a waiver of rights regarding the extent, validity, perfection, or possible

12  avoidance of any such liens.

13  4.    For any payments made to Lien Claimants, the Lien Claimants receiving the payments

14  shall take whatever action is necessary to remove such liens, if any, at such Lien Claimant's sole cost

15  and expense.

16  5.    All undisputed obligations of the Debtors arising from the postpetition delivery or

17  shipment of goods by Vendors to the Debtors' facilities under the Prepetition Orders are granted

18  administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code, and

19  the Debtors are authorized to pay such obligations in the ordinary course of business consistent with

20  the Debtors' customary practices in effect prior to the Petition Date.

21  6.    The Debtors shall maintain a matrix summarizing (i) the name of each Lien Claimant

22  paid on account of Lien Claims, (ii) the amount paid to each Lien Claimant on account of its Lien

23  Claim, and (iii) the goods or services provided by such Lien Claimant.  This matrix shall be provided

24  on a bi-weekly basis to (i) the Office of the United States Trustee for Region 17; (ii) Milbank LLP, as

25  counsel to the Official Committee of Unsecured Creditors; (iii) Baker & Hostetler LLP, as counsel to

26  the Official Committee of Tort Claimants; (iv) counsel to any other statutory committees appointed in

27  these Chapter 11 Cases; and (v) counsel to the agent under the Debtors' debtor-in-possession financing

28

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor Pg 440 of 458
Case 19-cv-10234-NSR Document 12-10 Filed 02/02/20 Page 46 of 60

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119

facility; *provided*, that the professionals for any such committee shall keep the matrix confidential and shall not disclose any of the information in the matrix to anyone, including any member of such committee, without prior written consent of the Debtors.

7.      Banks and financial institutions are authorized, but not directed, at the Debtors' request, to receive, process, honor and pay, to the extent of funds on deposit, any and all checks issued or to be issued or electronic funds transfers requested or to be requested by the Debtors relating to the Lien Claims and the Prepetition Orders.

8.      The Debtors are authorized, but not directed, to issue new postpetition checks or effect new electronic funds transfers on account of the Lien Claims and the Prepetition Orders to replace any prepetition checks or electronic funds transfer requests that may be lost, dishonored, or rejected as a result of the commencement of the Chapter 11 Cases.

9.      Nothing contained in this Final Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity of any lien or claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Final Order is not intended to be and shall not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

10.     Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

11.     The requirements of Bankruptcy Rules 4001(d) and 6004(a) have been satisfied.

12.     Notwithstanding the provisions of Bankruptcy Rules 4001(a)(2) and 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

13.     The Debtors are authorized to take all steps necessary or appropriate to carry out this Final Order.

14.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

18-23538-shl   Doc 7352-4   Filed 02/28/20   Entered 02/28/20 16:52:24   Exhibit D --
Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor   Pg 441 of 458
Case 1:19-cv-10234-NSR   Document 12-10   Filed 01/02/20   Page 47 of 61

1    ** END OF ORDER **

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Weil, Gotshal & Manges LLP**
767 Fifth Avenue
New York, NY 10153-0119

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                     :
In re                                :          Chapter 11
                                     :
TOPS HOLDING II CORPORATION, et al., :          Case No. 18-22279 (RDD)
                                     :
        Debtors.¹                    :          (Jointly Administered)
                                     :
----------------------------------------------------------------x
```

### FINAL ORDER AUTHORIZING
### DEBTORS TO (A) PAY PREPETITION CLAIMS OF
### SHIPPERS AND MISCELLANEOUS LIEN CLAIMANTS,
### (B) CONFIRM ADMINISTRATIVE EXPENSE PRIORITY OF UNDISPUTED
### COMMENCEMENT DATE ORDERS AND SATISFY SUCH OBLIGATIONS
### IN THE ORDINARY COURSE OF BUSINESS AND (C) PAY PACA/PASA CLAIMS

Upon the motion (the "**Motion**")[2] of Tops Holding II Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**Tops**"), pursuant to sections 363 and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing, but not directing, the Debtors to pay up to (a) $600,000 in Shipping Charges, (b) $3.2 million in Miscellaneous Lien Claims, (c) certain amounts in connection with Commencement Date Orders to suppliers, and (d) the PACA/PASA Claims, all as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Tops Holding II Corporation (3709), Tops MBO Corporation (4249), Tops Holding LLC (2536), Tops Markets, LLC (2810), Tops Markets II Corporation (6401), Tops PT, LLC (2050), Tops Gift Card Company, LLC (6105), Erie Logistics LLC (9381), and TM1, LLC (2409).

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion and the

Final Hearing (defined below) having been provided in accordance with the Case Management

Order and as set forth in the affidavit of service filed with respect thereto (ECF No. 43), and such

notice having been adequate and appropriate under the circumstances, and it appearing that no

other or further notice need be provided; and the Court having held a hearing on February 22,

2018 to consider the relief requested in the Motion on an interim basis (the "**Interim Hearing**");

and the Court having entered an order granting the relief requested in the motion on an interim

basis (ECF No. 63) (the "**Interim Order**") and scheduling a final hearing on the Motion on

March 20, 2018 at 2:00 p.m. (the "**Final Hearing**"); and the Final Hearing having been held to

consider the relief requested in the Motion on a final basis; and there being no objections to the

relief granted herein; and upon the record of and representations made at the Interim Hearing and

the Final Hearing; and the Court having determined that the legal and factual bases set forth in

the Motion establish just cause for the relief granted herein; and it appearing that the relief

requested in the Motion and granted herein is in the best interests of the Debtors, their estates,

creditors, and all parties in interest, including that the relief granted herein will provide a net

benefit to the Debtors' estates and all creditors after taking into account the Bankruptcy Code's

priority scheme; and upon all of the proceedings had before the Court and after due deliberation

and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay the prepetition

Shipping Charges in an aggregate amount not to exceed $600,000 (including amounts paid

pursuant to the Interim Order).

3. The Debtors, in their sole discretion, shall undertake appropriate efforts to cause the Shippers to acknowledge in writing that payment of their respective claims is conditioned upon such Shippers continuing to supply services to the Debtors on trade terms that, at a minimum, such Shippers provided to the Debtors on a historical basis prior to the Commencement Date, or such other trade practices and programs that are at least as favorable to the Debtors as those in effect between such parties during such time, and the Debtors reserve the right to negotiate new trade terms with any Shippers as a condition to payment of any such claim.

4. The Debtors are authorized, but not directed, to pay prepetition amounts owed on account of any Miscellaneous Lien Claims in an aggregate amount not to exceed $3.2 million (including amounts paid pursuant to the Interim Order); provided that the Debtors are not authorized to pay unless the applicable party who has the potential to assert Miscellaneous Lien Claims against the Debtors and their property if the Debtors fail to pay for the goods or services rendered has perfected or, in the Debtors' business judgment, is capable of perfecting or may be capable of perfecting in the future, one or more liens in respect of such claim; and provided further that such payment shall not be deemed to be a waiver of the rights of Debtors or any other appropriate party in interest to challenge the extent, validity, perfection or possible avoidance of the related liens and payments.

5. The Debtors may condition, in their sole discretion, payment of Miscellaneous Lien Claims on the agreement of Miscellaneous Lien Claimants to continue supplying goods and services to the Debtors on the same trade terms given to them prior to the Commencement Date by such party or upon new trade terms (to the extent agreed to by the Debtors and the Miscellaneous Lien Claimant, the "**Agreed Terms**").

6.      To the extent a Miscellaneous Lien Claimant fails to comply with the Agreed Terms, the Debtors may, in their sole discretion, cause (a) any payment made to such Miscellaneous Lien Claimant on account of its asserted lien claim to be deemed to have been in payment of then outstanding postpetition obligations owed to the Miscellaneous Lien Claimant and (b) the Miscellaneous Lien Claimant shall be required to immediately repay to the Debtors any payment made to it on account of its asserted lien claim to the extent the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or otherwise.

7.      Neither the Debtors nor any other party in interest concedes that any liens (contractual, common law, statutory or otherwise) satisfied pursuant to this Order are valid, and the rights of the Debtors and any other appropriate parties in interest to contest the extent, validity or perfection or seek the avoidance of all such liens are fully preserved.

8.      All undisputed amounts relating to Commencement Date Orders are hereby granted postpetition administrative expense priority pursuant to section 503(b) of the Bankruptcy Code and the Debtors are authorized, but not directed, to pay such amounts in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

9.      The Debtors are hereby directed to pay PACA/PASA Claims in the ordinary course of business consistent with the parties' customary practices in effect prior to the Commencement Date.

10.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of the Shipping Charges, Miscellaneous Lien Claims, and Commencement Date Orders to replace any prepetition checks

or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

11.     Notwithstanding anything to the contrary contained herein, any payments made or to be made by the Debtors under this Order, and any authorization contained in this Order, shall be in compliance with, and shall be subject to any order approving the Debtors' postpetition financing facilities and/or use of cash collateral, and the documentation in respect of any such postpetition financing facilities.

12.     Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

13.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

15.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: March 21, 2018
       White Plains, New York

                          /s/ Robert D. Drain
                          UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
                                          :
In re                                     :
                                          :   **Chapter 11**
**BREITBURN ENERGY**                      :
**PARTNERS LP,** *et al.*,                :   **Case No. 16-11390 (SMB)**
                                          :
            **Debtors.**[1]               :   **(Jointly Administered)**
                                          :
-------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 363(c)(1) AND 503(b)(1)(A) GRANTING ADMINISTRATIVE EXPENSE STATUS TO UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM POSTPETITION DELIVERY OF GOODS AND SERVICES ORDERED PREPETITION AND AUTHORIZING DEBTORS TO PAY SUCH OBLIGATIONS IN ORDINARY COURSE OF BUSINESS

Upon the Motion, dated May 15, 2016 (the "**Motion**"),[2] of Breitburn Energy

Partners LP and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and

debtors in possession (collectively, the "**Debtors**"), pursuant to sections 363(c)(1) and

503(b)(1)(A) of the Bankruptcy Code, for an order (i) granting administrative expense status to

the Debtors' undisputed obligations to vendors (the "**Vendors**") arising from the postpetition

delivery of goods ordered in the prepetition period (the "**Prepetition Orders**") and (ii)

authorizing the Debtors to pay such obligations in the ordinary course of business, all as more

fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Breitburn Energy Partners LP (9953); Breitburn GP LLC (9948); Breitburn Operating LP (5529); Breitburn Operating GP LLC (5525); Breitburn Management Company LLC (2858); Breitburn Finance Corporation (2548); Alamitos Company (9156); Beaver Creek Pipeline, L.L.C. (7887); Breitburn Florida LLC (7424); Breitburn Oklahoma LLC (4714); Breitburn Sawtelle LLC (7661); Breitburn Transpetco GP LLC (7222); Breitburn Transpetco LP LLC (7188); GTG Pipeline LLC (3760); Mercury Michigan Company, LLC (3380); Phoenix Production Company (1427); QR Energy, LP (3069); QRE GP, LLC (2855); QRE Operating, LLC (9097); Terra Energy Company LLC (9616); Terra Pipeline Company LLC (3146); and Transpetco Pipeline Company, L.P. (2620).  The Debtors' mailing address is 707 Wilshire Boulevard, Suite 4600, Los Angeles, California 90017.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

relief requested therein in accordance with 28. U.S.C. §§ 157 and 1334 and the Amended

Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided to the Notice Parties, and it appearing

that no other or further notice need be provided; and a hearing having been held to consider the

relief requested in the Motion (the "**Hearing**"); and upon the *Declaration of James G. Jackson*

*Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*

*and in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, filed

contemporaneously with the Motion, the record of the Hearing and all of the proceedings had

before the Court; and the Court having found and determined that the relief sought in the Motion

is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that

the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted to the extent set forth herein; and it is

further

ORDERED that the undisputed obligations of the Debtors arising under the

Prepetition Orders shall be afforded administrative expense priority status pursuant to section

503(b)(1)(A) of the Bankruptcy Code; and it is further

ORDERED that, pursuant to section 363(c)(1) of the Bankruptcy Code, the

Debtors are authorized to pay in the ordinary course of their business all undisputed obligations

arising from the postpetition delivery or shipment by the Vendors of Goods under the Prepetition

Orders consistent with their customary practice; and it is further

ORDERED that nothing herein or in the Motion shall be construed as to limit, or in any way affect, the Debtors' ability to dispute or contest the amount of or basis for any claims against the Debtors arising in connection with the Prepetition Orders; and it is further

ORDERED that nothing contained herein, including any payments made by the Debtors in respect of the Prepetition Orders, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; and it is further

ORDERED that notwithstanding entry of this Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party; and it is further

ORDERED that the Debtors are authorized to take all action necessary to carry out this Order; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: May 19, 2016
      New York, New York

                    /s/ STUART M. BERNSTEIN
                    HONORABLE STUART M. BERNSTEIN
                    UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                      :
In re                                                 :          **Chapter 11 Case No.**
                                                      :
**SIGA TECHNOLOGIES, INC.,**                          :          **14-12623 (SHL)**
                                                      :
                                    **Debtor.**       :
                                                      :
-------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 363(c)(1) AND 503(b)(1)(A)**
**GRANTING ADMINISTRATIVE EXPENSE STATUS TO UNDISPUTED**
**OBLIGATIONS ARISING FROM POSTPETITION DELIVERY OF GOODS**
**AND SERVICES ORDERED PREPETITION AND AUTHORIZING DEBTOR**
**TO PAY SUCH OBLIGATIONS IN ORDINARY COURSE OF BUSINESS**

Upon the Motion, dated September 16, 2014 (the "**Motion**"),[1] of SIGA

Technologies, Inc., as debtor and debtor in possession (the "**Debtor**"), pursuant to sections

363(c)(1) and 503(b)(1)(A) of title 11, United States Code (the "**Bankruptcy Code**"), for entry

of an order granting administrative expense status to the Debtor's undisputed obligations arising

from the postpetition delivery of goods and provision of services, and authorizing the Debtor to

pay such obligations in the ordinary course of business, all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

A-3874

the Motion having been provided, and it appearing that no other or further notice need be

provided; and a hearing having been held to consider the relief requested in the Motion (the

"**Hearing**"); and upon the Affidavit of Eric A. Rose Pursuant to Local Bankruptcy Rule 1007-2

and the record of the Hearing and all of the proceedings had before the Court; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtor, its estate, creditors, and all parties in interest, and that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the undisputed obligations of the Debtor to Vendors with respect

to Goods or Services ordered or requested prior to the Commencement Date and delivered or

performed subsequent to the Commencement Date shall be afforded administrative expense

priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code; and it is further

ORDERED that, pursuant to section 363(c)(1) of the Bankruptcy Code, the

Debtor is authorized to pay in the ordinary course of its business all undisputed obligations

described in the immediately preceding paragraph consistent with its customary practice; and it

is further

ORDERED that nothing herein or in the Motion shall be construed as to limit, or

in any way affect, the Debtor's ability to dispute or contest the amount of or basis for any claims

against the Debtor; and it is further

ORDERED that nothing in this Order or the Motion shall constitute an

assumption, adoption, or rejection by the Debtor of any executory contract or agreement between

the Debtor and any third party pursuant to section 365 of the Bankruptcy Code; and it is further

WEIL:\95075861\5\99980.0025

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated:  New York, New York
September 18, 2014


                                                                            _/s/ Sean H. Lane_
                                                                            United States Bankruptcy Judge

WEIL:\95075861\5\99980.0025

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                          :
In re                                     :          Chapter 11 Case No.
                                          :
FINLAY ENTERPRISES, INC., *et al.*,       :          09-14873 (JMP)
                                          :
                     Debtors.             :          (Jointly Administered)
                                          :
-------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 503(b) OF THE BANKRUPTCY CODE GRANTING ADMINISTRATIVE PRIORITY STATUS TO UNDISPUTED OBLIGATIONS TO VENDORS ARISING FROM THE POSTPETITION DELIVERY OF GOODS AND SERVICES ORDERED IN THE PREPETITION PERIOD AND AUTHORIZING THE DEBTORS TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS

Upon the motion, dated August 5, 2009 (the "Motion"), of Finlay Enterprises, Inc.

and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in

possession (together, "Finlay" or the "Debtors"), for an order pursuant to section 503(b) of the

Bankruptcy Code granting administrative priority status to undisputed obligations to vendors

("Vendors") arising from the postpetition delivery of goods and services on account of

prepetition orders (the "Prepetition Orders") and authorizing the Debtors to pay such obligations

in the ordinary course of business, all as more fully described in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided to (i) the Office of the United States Trustee for the Southern District of New York,

(ii) the attorneys for General Electric Capital Corporation, as agent under that certain Fourth

Amended and Restated Credit Agreement dated as of November 9, 2007, (iii) the attorneys for

HSBC Bank USA, as trustee under that certain second lien indenture dated as of November 26,

2008 and that certain third lien indenture dated as of November 26, 2008, (iv) those creditors

holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis),

and (v) the U.S. Securities and Exchange Commission, and it appearing that no other or further

notice need be provided; and a hearing (the "Hearing") having been held to consider the relief

requested in the Motion; and the appearances of all interested parties having been noted in the

record of the Hearing; and upon the Affidavit of Arthur E. Reiner Pursuant to Rule 1007-2 of the

Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions

and Applications, sworn to on August 5, 2009, and all of the proceedings had before the Court;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the Debtors, their estates and creditors, and all parties in interest and that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that undisputed obligations of the Debtors arising from postpetition

delivery or shipment by Vendors of goods or services under the Prepetition Orders shall be

afforded administrative expense priority status pursuant to section 503(b) of the Bankruptcy

Code; and it is further

ORDERED that the Debtors are authorized, but not obligated, to pay in the

ordinary course of their businesses all undisputed obligations arising from the postpetition

A-3878

delivery or shipment by Vendors of goods and services under the Prepetition Orders consistent

with their customary practices; and it is further

ORDERED that nothing in this Order shall be deemed or construed as an

admission as to the validity of any claim against the Debtors or a waiver of the Debtors' or any

party in interest's rights to dispute any claim; and it is further

ORDERED that nothing herein shall be deemed to constitute an assumption or

rejection of any agreement pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation or interpretation of this Order.

Dated:   New York, New York
         August 6, 2009

                              ___s/ James M. Peck_____
                              UNITED STATES BANKRUPTCY JUDGE

First Day Motions III.M

**American Bankruptcy Institute**

**First Day Motions**

Debra I. Grassgreen, John W. Lucas, Victoria A. Newmark and Michael R. Seidl

Copyright © 2012 American Bankruptcy Institute

3rd Edition 2012

**III. Operational Motions/Orders**

**\*98**  III.M. Motion for Order Authorizing Postpetition Delivery of Goods Ordered Prepetition

**1. RELATED SECTIONS OF THE CODE AND RULES**

*a. 11 U.S.C. §§105(a) and  503(b)(1)(A)*

*b. Bankruptcy Rules 7052 and 9014*


**2. DESCRIPTION AND PURPOSE**

At the time of filing, there may be many outstanding unfilled purchase orders whereby the debtor has ordered goods, but the vendor has not yet shipped or delivered them to the debtor. To avoid disruption in the flow of goods after the petition date and to allay the payment concerns of its vendors, the debtor may request permission to pay vendors, in the ordinary course of business, on account of goods ordered prepetition but delivered by the vendor postpetition. In support of such relief, debtors typically show that vendors may be concerned that their claims for goods delivered after the petition date may be deemed a prepetition general unsecured claim on account of the fact that such goods were ordered prior to the petition date. As a result, vendors may refuse to ship goods or delay goods in transit unless the debtor either issues a substitute postpetition purchase order or obtains a bankruptcy court order confirming that all obligations of the debtor arising from prepetition purchase orders for goods delivered on or after the petition date constitute administrative expense priority claims pursuant to  section 503(b)(1)(A) of the Bankruptcy Code.

In the 2005 amendments to the Bankruptcy Code, Congress added  section 503(b)(9), which provides:
 **\*99**  After notice and a hearing, there shall be allowed, administrative expenses...the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business. [113]


Consequently, this section of the Bankruptcy Code has reduced the need for this motion because all goods delivered to the debtor in the ordinary course within 20 days prior to the petition date are automatically elevated to administrative-priority status. However, it is still common for a debtor to seek such relief for goods received after the petition date to show vendors that the commencement of its bankruptcy case will not affect the debtor's ability to satisfy such claims.

A-3880

18-23538-shl Doc 7352-4 Filed 02/28/20 Entered 02/28/20 16:52:24 Exhibit D -- Appendix Volumes X and XI (Vendor Comfort Motions and Vendor Comfor    Pg 458 of 458

III.M. Motion Seeking Authorization to Satisfy Prepetition Obligations Under 11 U.S.C. Section §..., 2012 WL 9544234

## 3. AUTHORITY

A debtor would ordinarily assert that it seeks this relief out of an abundance of caution because all postpetition purchases on credit create administrative, not prepetition, claims. [114] Certain courts, however, have held that the postpetition delivery of goods ordered prepetition under a prepetition contract does not transform the claim into an administrative expense. [115] By the addition of   *100  section 503(b)(9) of the Bankruptcy Code, the current form of the Bankruptcy Code effectively supersedes those holdings because if goods delivered within the 20 days prior to the petition date are accorded administrative expense treatment, the same treatment should be provided to creditors who delivered goods after this period.

Nonetheless, debtors could still argue that the requested relief eliminates any uncertainty and proves to vendors that the debtor will be able to pay in full for all postpetition deliveries of goods ordered prepetition. If a bankruptcy court applying prior law does not accept the debtor's characterization of these claims as administrative claims, then the debtor will also cite to both the bankruptcy court's powers under section 105(a) of the Bankruptcy Code and the "doctrine of necessity" (discussed in Chapter III.C.), claiming that the debtor's operation is dependent upon receipt of such goods and that the applicable vendors will not deliver or maintain the flow of goods without assurance that payment will be forthcoming.

## 4. FORMS

The Appendix contains motions seeking relief under sections 105(a) and   503(b)(1)(A) of the Bankruptcy Code, together with the related orders granting the requested relief.

Footnotes

113        11 U.S.C. § 503(b)(9).

114        See, e.g.,   In re Coast Trading Co. Inc., 744 F.2d 686, 693 (9th Cir. 1984) (holding that vendor was entitled to an administrative expense claim; postpetition delivery of goods ordered prepetition arose under a contract that was executory at time of delivery).

115        See, e.g.,   In re Russell Cave Co., 249 B.R. 145, 147 (Bankr. E.D. Ky. 2000) (holding that administrative treatment is only permissible when liability arises postpetition, not prepetition);   In re A. Marcus Co., 64 B.R. 207, 209 (Bankr. N.D. Ill. 1986) (holding that debtor's act of receiving the goods did not induce vendor to ship the goods, and without act of inducement by debtor, vendor was not entitled to administrative expense claim).

---

End of Document                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.