**Hearing Date and Time:**
March 25, 2020 at 10:00 a.m.

| | |
|---|---|
| **Martin A. Eliopulos, Esq.**<br>*(pro hac vice)*<br>**HIGGS, FLETCHER & MACK LLP**<br>401 West "A" St., Suite 2500<br>San Diego, CA 92101<br>Telephone: (619) 236-1551<br>Facsimile: (619)696-1410<br>Email: elio@higgslaw.com<br><br>*Counsel for*<br>*BH North America Corporation* | **Michael J. Catalfimo, Esq.**<br>**ROWLANDS, LEBROU & GRIESMER, PLCC**<br>11 British American Blvd.<br>Latham, New York 12110<br>Telephone: (518) 587-8112<br>Facsimile: (518) 587-4140<br>Email: mcatalfimo@rlglawny.com<br><br>*Local Counsel for*<br>*BH North American Corporation* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

**In re:**

**SEARS HOLDING CORPORATION,** *et al.*,[1]

                    **Debtors.**

-------------------------------------------------------X

**Chapter 11**

**Case No. 18-23538 (RDD)**

**(Jointly Administered)**

# RESPONSE OF BH NORTH AMERICAN CORPORATION IN OPPOSITION TO THE DEBTORS' ELEVENTH OMNIBUS OBJECTION TO PROOFS OF CLAIM

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

9527507.1

TO: **THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY JUDGE:**

BH NORTH AMERICAN CORPORATION ("BH NA"), by and through the undersigned counsel, Higgs, Fletcher & Mack LLP and Rowlands, LeBrou & Griesmer, PLLC, hereby responds (the "Response") in opposition to the *Debtors' Eleventh Omnibus Objection to Proofs of Claim (To Reclassify Certain Claims)* [Dkt. No. 7213] (the "Objection")[2].

In support of its Response, BH NA states as follows:

## SUMMARY OF ARGUMENT

At the inception of these cases, October 15, 2018, the Debtors maintained that it was "critical" to have vendor support in order to run their operations, conduct a sale of their assets, and confirm a plan of reorganization. Now that the assets have been sold and the professionals have been paid, the Debtors have changed their position. They are seeking to wipe out vendors, particularly foreign vendors, by reinterpreting the definition of "receipt" of goods for purposes of determining whether a claim qualifies for administrative expense priority under Bankruptcy Code section 503(b)(9). The critical issue for this Court to decide is whether "receipt" requires goods to be in the Debtors' hands.

From the outset of this case, BH NA is among numerous vendors that relied on the precedent established by the Third Circuit in *Haining Wansheng Soa Co., Ltd v. World Imports Ltd., (In re World Imports)*, 862 F.3d 338 [3d Cir. 2017] ("*World Imports*") which holds that goods are "received" when they are physically in the Debtors' possession. If there had been

---

[2] The legal arguments in BH NA's opposition stated herein are also set forth in the Oppositions to *Debtors' Tenth Omnibus Objection to Proofs of Claim (To Reclassify Certain Claims)* [Dkt. No. 7352] previously filed by A&A (HK) Industrial, Esjay International Private Limited, Shanghai Fochier International Trade Co. and Vogue Tex (Pvt) Ltd [Dkt No. 5494] and Giza Spinning and Weaving Co. [Bkt No. 5565] not yet ruled upon by the Bankruptcy Court.

9527507.1 2

any doubt about the precedent set by *World Imports*, the Debtors' cases might have converted from Chapter 11 to Chapter 7 back in October 2018.

For this reason alone, this Court should overrule the Objection.

## DISCUSSION

**BH NA's Claims**

1. BH NA, is headquartered in St. Charles, Missouri. BH NA distributes cardiovascular, and strength equipment.

2. BH NA sold goods to the Debtors over a number of years.

3. After receipt of a purchase order from the Debtors, the goods (that are the subject of the claim objection) were manufactured in China and/or Taiwan, delivered to a freight forwarder who delivered the goods to a common carrier at the port of origin who then shipped the goods to the United States where the goods were thereafter transported by rail and/or by truck and physically delivered to the various Sears stores located in the United States.

4. As of the October 15, 2018, petition date for the Debtors, BH NA had multiple unpaid invoices resulting from goods ordered by the Debtors and thereafter delivered by BH NA.

5. BH NA timely filed two (2) proofs of claim in the Debtor's consolidated Chapter 11 cases (only one of which is subject to objection in the Objection):

   a. <u>Proof of Claim #14685 (Sears Roebuck & Co.)</u>. The BH NA proof of claim filed against Sears Roebuck & Co. is in the total amount of $332,220.00 (the "Subject Proof of Claim") and consists of:

    i. a 503(b)(9) an administrative priority claim consisting of two (2) unpaid invoices (INVC46824 for $94,920 and INVC46869 for $94,920) totaling $189,840; and

    ii. an unsecured non-priority claim consisting of two (2) unpaid invoices totaling $142,380.00.

A true and correct copy of the Subject Proof of Claim (#14685) (including copies of the two unpaid invoices asserted as section 503(b)(9) claims) is attached as **Exhibit "A"**.

  b. <u>Proof of Claim #15032 (Sears Holding Co.)</u>[3]. The BH NA proof of claim filed against Sears Holding Co. is in the total amount of $69,395.00 and consists of:

    i. a 503(b)(9) an administrative priority claim consisting of four (4) unpaid invoices totaling $8,200.00; and

    ii. an unsecured non-priority claim consisting of seventeen (17) unpaid invoices totaling $61,195.00.

  6. The shipping terms for the goods identified in the unpaid invoices were all FOB (or "Free on Board" or "Freight on Board") from the port of origin meaning the Debtors, as buyer, will take the title of the goods when they are shipped from the port of origin, at which point the Debtors will incur all the transportation costs from the shipping location to the final destination and also assume the risk of loss.

  7. According to the Forwarder's Cargo Receipts[4] for each of the two invoices asserted by BH NA to qualify for administrative expense priority:

---

[3] Proof of Claim #15032 is <u>not</u> subject to objection in the Debtors' 11th Omnibus Objection to Proofs of Claim.

[4] As set forth in each of the Forwarder's Cargo Receipt, the Forwarder's Cargo Receipt is "not a document of title". It is merely evidence that the goods were delivered to the freight forwarder for shipment. The freight forwarder will then arrange ocean transport and the ocean carrier will issue a Bill of Lading that results in the transfer of title to the buyer (Sears) with the risk of loss transferring to Sears as of the date of the Bill of Lading.

9527507.1          4

  a. For invoice INVC46824 dated September 27, 2018, for $94,920, the goods were delivered to Sears' freight forwarder on September 7, 2018, but were not transferred to the common carrier sometime thereafter finally arriving at the designated Sears store at least three to four weeks later and during the 20-day period prior to the October 15, 2018, petition date[5]; and

  b. For invoice INVC46869 dated October 4, 2018, for $94,920, the goods were delivered to Sears' freight forwarder on September 29, 2018, but were not transferred to the common carrier sometime thereafter finally arriving at the designated Sears store at least three to four weeks later and during the 20 day period prior to the October 15, 2018, petition date[6];

True and correct copies of the Forwarder's Cargo Receipts for the two unpaid invoices asserted as section 503(b)(9) claims identifying the dates the manufacturer in China delivered the goods set forth in the invoices to the Sears freight forwarder for shipment are attached as **Exhibit "B"**.

  8. In Exhibit "A" to the Debtors' Objection, Debtors seeks to reclassify one of the two $94,920 invoices (the "Disputed Invoice")[7] asserted by BH NA in the Subject Proof of Claim as qualifying for section 503(b)(9) administrative expense priority as an unsecured non-

---

[5] The Objection provides no information or evidence about the dates the Debtors contend they received BH NA's goods as set forth in the Disputed Invoice. It is the Debtors (and not BH NA) that have: (i) a copy the carrier's Bill of Lading to establish the date when title to the goods and the risk of loss transferred to Sears t the port of origin; and (ii) a copy of the receipt to establish the date when the goods were physically "received" by the specific Sears store that ordered the goods in the United States. The Objection should be overruled on that basis alone.

[6] The Objection provides no information or evidence about the dates the Debtors contend they received BH NA's goods as set forth in the Disputed Invoice. It is the Debtors (and not BH NA) that have: (i) a copy the carrier's Bill of Lading to establish the date when title to the goods and the risk of loss transferred to Sears t the port of origin; and (ii) a copy of the receipt to establish the date when the goods were physically "received" by the specific Sears store that ordered the goods in the United States. The Objection should be overruled on that basis alone.

[7] For purposes of this opposition, BH NA assumes that Invoice INVC46824 dated September 27, 2018, for $94,920 is the Disputed Invoice but the Objection fails to specify which invoice is being reclassified. Both invoices are for $94,920.

9527507.1                5

priority claim thereby reducing the 503(b)(9) administrative expense priority claim to $94,920 an increasing the unsecured non-priority claim to $237,300.

9. According to the Objection itself, the Debtors only substantive objection to the Subject Proof of Claim and the one Disputed Invoice therein is that under Section 503(b)(9) of the Bankruptcy Code, goods shipped "FOB" should be considered "received" as of the shipping date. As discussed in detail below, this interpretation of Section 503(b)(9) of the Bankruptcy Code is erroneous. Moreover, the Debtors have provided no evidence to show when the goods set forth in the Disputed Invoice were "received" by the common carrier at the port of origin (or, for that matter, when they were physically "received" at the specific Sears store located in the United States).

**World Imports**

10. Section 503(b)(9) of the Bankruptcy Code states as follows:

> "(b) After notice and a hearing, there shall be allowed administrative expenses, ... including (9) the value of any goods received by the debtors within 20 days before the date of commencement of a case under this title in which the goods have been sold in the ordinary course of such debtor's business."

11. The Bankruptcy Code does not define the meaning of "received." As a result, courts are left to determine what "received" means in the context of section 503(b)(9) of the Bankruptcy Code. This exact question was decided by the Third Circuit Court of Appeals in *World Imports*. The Third Circuit ruled that "received" requires physical possession of the goods, not when the goods were delivered "FOB" to a common carrier. *World Imports*, 862 F.3d at 346.

12. The World Imports Court considered the ordinary meaning of "received." The Court concluded "[t]he legal and dictionary definitions comport with the definition found in the UCC. *World Imports,* 862 F.3d at 342. Moreover, "we infer that Congress meant to adopt this 'well-known' meaning of the term." *Id.* As this Court previously noted, courts commonly look to the UCC to define terms that are undefined in the Bankruptcy Code. *See, In the Matter of The Great Atlantic & Pacific Tea Company, Inc.,* Case No. 10-24549-rdd, Dkt. No. 4017, at 4-5 [Bankr. S.D.N.Y. Oct. 25, 2012].

13. The World Imports Court stated that Section 503(b)(9) of the Bankruptcy Code is explicitly linked to Section 546(c) of the Bankruptcy Code as the former is an exemption from the latter's requirements. *Id.* at 543. "Because *§ 503(b)(9)* provides 'an alternative remedy to reclamation,' *In re Momenta, Inc.* 455 B.R. 353, 357 [Bankr. D.N.H. 2011], it should be read and interpreted consistent with *§ 546(c)." Id.*

14. The World Imports Court engaged in a thorough analysis of the definition of "receipt" as used in Section 546(c) of the Bankruptcy Code. The Court relied in part on *In re Marin Motor Oil, Inc.* 740 F.2d 220 [3d Cir. 1984]. In *Marin Motor Oil,* the Third Circuit concluded "…that because 'Congress essentially borrowed [the reclamation provision] from the U.C.C.,' it 'also borrowed the standard definition of receipt' [*Marin Motor Oil*] at 225 n.9." *World Imports* 862 F.3d at 343. As a result, the *Marin Motor Oil* court concluded that the UCC definition of "receipt" applied, and, therefore, meant physical possession. *Id. See also, In re R.F. Cunningham & Co., Inc.,* 2006 Bankr. Lexis 3650 [Bankr. E.D.N.Y. Dec. 21, 2006]; *In re Flagstaff Foodservice Corp.,* 56 B.R. 910 [Bankr. S.D.N.Y. 1986].

15. As a result of the Third Circuit's analysis of the relationship between 503(b)(9) and 546(c), and the definition of "receipt" in 546(c) meaning taking possession, it held that the

definition of "received" in 503(b)(9) means the same thing. *Id.* at 543-544; *See, In re Circuit City Stores, Inc.*, 432 B.R. 225, 229 [Bankr. E.D. Va. 2010] (" As 'receipt' in Article 2 of the UCC and § 546(c) is defined as taking 'physical possession,' the Court holds that 'received' for the purposes of § 503(b)(9) means having taken into physical possession"); *In re Momenta, Inc.*, 455 B.R. 353, 358 [Bankr. D.N.H. 2012] ("...the terms 'receipt' and 'received' are similar words, concern related issues, and should be treated as functional equivalents and interpreted identically.")

16. The World Imports Court next discussed why placing goods on a ship or with a third-party carrier, also known as freight on board ("FOB") does not constitute constructive receipt. Under applicable case law, common carriers are not considered agents of a buyer. *Id.* at 344. Moreover, transfer of title and receipt have been held to be distinct. *Id. See, In re R.F. Cunningham & Co.*, 2006 Bankr. LEXIS 3650, *6 [Bankr. E.D.N.Y. December 21, 2006] ("Delivery to a common carrier does not constitute 'receipt' by a buyer of goods.")

17. Subsequent to the ruling of the Third Circuit, *World Imports* has been cited favorably, including by the United States Bankruptcy Court for the District of Connecticut. That court held that under 503(b)(9) received is "...either: (i) physical possession of the goods by the debtor; or (ii) constructive possession, when a bailee or an agent of the debtor physically possesses the goods." *In re O.W. Bunker Holding North America Inc.*, 2019 Bankr. LEXIS 2728 [Bankr D.Conn. Aug. 26, 2019] at *25. Either way, physical possession either by the debtor or its agent is required.

**Debtors' Attempts to Distinguish World Imports Are Not Persuasive**

18. The Debtors attempt to dismiss the Third Circuit's reasoning in *World Imports* by stating that the Circuit incorrectly looked for authority under state law as opposed to federal law.

While federal law might be preferred for interpreting other federal laws such as the Bankruptcy Code, this is not mandatory. The main case cited by the Debtors to suggest the Third Circuit incorrectly looked to the UCC, which is state law, to interpret the meaning of "received" is *In re Escalera Res. Co.*, 563 B.R. 336 [Bankr. D. Colo. 2017] ("*Escalera*"). It is somewhat ironic that the court in *Escalera* used the dictionary definition of goods found in the UCC to reach a decision because there was no governing federal law. While courts are not required to consider state law in interpreting statutes, they certainly may, and as with the court in *Escalera*, often do consider state law.

19. The Debtors go to convoluted lengths in an effort to interpret Section 503(b)(9) of the Bankruptcy Code. They attempt to use the United Nations Convention on Contracts for the International Sale of Goods ("CISG") and the International Commerce Commissions' ("Intercoms") neither of which defines "received." In order to use the CISG and Intercoms, terms that don't mean "received" have to be massaged to create the meaning desired by the Debtors. Rather than employing this approach, the Third Circuit searched for the actual definition of "received" using basic tenets of statutory interpretation. *See, Custom Polymers PET, LLC v. Gamma Meccanica SPA*, No. 6:15-04882-MGL, 185 F. Supp. 3d 741, 755 [D.S.C. 2016) ("Even though the CISG governs [a] dispute, where the CISG is silent on a legal issue, a court should apply the choice of law rules of the forum where it sits to fill the gap.") As discussed above, the *World Imports* court chose the commonly understood definition of "received."

20. The only legal authority cited by the Debtors to support their interpretation of "receipt" are the lower court decisions in *World Imports* which were overturned. The Debtors' brief strangely references the bankruptcy court decision in *World Imports* as an "analogous case

9527507.1

9

concerning claims of an import vendor that shipped goods to a debtor FOB port of origin" as if it was just another bankruptcy case looking at the issue rather than the very case the Third Circuit overturned.

21. Additionally, the Third Circuit specifically points out that courts have consistently held that receipt does not occur when goods are loaded on to a common carrier. The fact that risk of loss and title may have transferred is irrelevant. *Marin Motor Oil* at 225; *See also, In re R.F. Cunningham & Co.* at \*6.

22. The second reason asserted by the Debtors to dismiss the Third Circuit's reasoning in *World Imports* is that the court looked to the meaning of "received" in section 546(c) of the Bankruptcy Code when determining the meaning of "received" in section 503(b)(9) of the Bankruptcy Code. As discussed above, the Third Circuit in *World Imports* extensively discussed the connection between these two code sections. Most importantly, both sections use the word "received." The Debtors would have this Court believe that because the derivation of Section 546(c) of the Bankruptcy Code may have been the UCC, which is adopted by state law, while the right given in Section 503(b)(9) of Bankruptcy Code is a federally created right, there should be a distinction between the two definitions of the same word. However, this interpretation makes no sense.

23. The simplest and most logical interpretation is to read the word "received" the same way in both sections. This makes even more sense when one considers that Section 503(b)(9) of the Bankruptcy Code is specifically mentioned in Section 546(c) of the Bankruptcy Code. What makes no sense is that Congress would distinguish the definition of "received" among two sections of the same Bankruptcy Code.

24. The e third reason the Debtors provide for this Court to disregard the Third Circuit's *World Imports* ruling is that the court did not consider the policy considerations raised by the Debtors. As discussed below, this argument does not necessitate abandoning the plain meaning of "received."

25. Finally, the Debtors assert that "Congress did not legislate exclusively against the backdrop of domestic vendor sales and the UCC when it enacted section 503(b)(9) of the Bankruptcy Abuse Prevention and Consumer Protection Act in 2005." There is no dispositive answer to this question. The fact that Congress did not legislative exclusively against a backdrop of domestic vendor sales provides no justification to treat the same word in related code sections differently. There is absolutely no basis to use the Debtors' interpretive meaning of "received" instead of the plain meaning.

**Debtors' Additional Arguments are Not Persuasive**

26. The Debtors sole legal argument in favor of using the overturned, lower court *World Imports* cases is that the CISG and Intercoms should be used to determine what "received" means. The rationale behind this is that international trade agreements are ratified by Congress and, therefore, federal law.

27. The problem, as discussed above, is that neither the CISG nor the Intercoms define "received." Thus, the Debtors are forced to shoehorn a meaning of "received" rather than use its commonly understood meaning. This allows the Debtors to argue that the date the goods were delivered to a common carrier should constitute receipt.[8] As discussed in detail above,

---

[8] Under Article 71 of the CISG allows that a vendor may prevent handing over of goods if it becomes apparent while the goods are in transit that the other party may not be able to perform its obligations. The Debtors have themselves acknowledged this fact in the Motion of Debtors for Interim and Final Authority to (I) Pay Prepetition Claims of (A) Shippers, Warehousemen, and Other Non-Merchandise Lien Claimants and (B) Holders of PACA/PASA Claims, and (II) Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Post petition, and Satisfy Such Obligations in the Ordinary Course of Business [Dkt. No. 14 at Par. 19-20]

9527507.1                                11

however, courts consistently defined "deliver" and "receipt" as distinct and common carriers are not considered agents of the buyer.

28. Left with no legal argument, the Debtors look to policy. The problem is that there will be always be winners and losers. The Debtors argument does not create conformity, but rather at this late stage in these cases, allows the Debtors professionals to decide who are the winners and losers. The reality is that, if the actual receipt date is not used in Section 503(b)(9) determinations, every time you have a company in the zone of insolvency, foreign vendors will be encouraged to pull back their goods until they are 100% assured of payment. This will result in persistent interruption of delivery of goods.

29. In the instant case, BH NA relied on the Debtors' assertions at the outset of the cases that they would be paid in full for goods received between September 25 and October 15, 2018. Moreover, if Congress had intended that the shipping date be used for purposes of Section 503(b)(9) of the Bankruptcy Code, then the statute would have said "delivered to" or "shipped to" rather than "received by."

30. The fact is that until the goods are firmly in a Debtors' hands, they cannot sell them. If the Debtors have no goods to sell, they are out of business. For this reason, as well, there is no reason for the Court to look to anything other than the plain meaning of the word "received" which for the purposes of commerce implies that a company has a product to sell.

## CONCLUSION

For the foregoing reasons the Responding Party requests that the Court rule that:

1. the Debtors have not properly objected to the Responding Parties' claims by failing to produce evidence as to when the goods in the Disputed Invoice were "received";

9527507.1

12

2. that the term "received" as used in section 503(b)(9) of the Bankruptcy Code should mean physical possession by the Debtors;

3. that Debtors' objection to BH NA's Proof of Claim No. 14685 seeking to reclassify the Disputed Invoice (likely Invoice No. INVC46824) is denied; and

4. such other and further relief as this Court deems appropriate.

Dated: March 2, 2020

**HIGGS, FLETCHER & MACK LLP**

/s/ Martin A. Eliopulos
Martin A. Eliopulos
(*pro hac vice*)
401 West A. Street, Suite 2600
San Diego, California 92101-7910
Telephone: (619) 236-1551
Facsimile: (619) 696-1410
Email: elio@higgslaw.com

*Counsel for BH North American Corporation*

**ROWLANDS, LEBROU & GRIESMER, PLCC**

/s/ Michael J. Catalfimo
Michael J. Catalfimo
480 Broadway, Suite 250
Saratoga Springs, New York 12866
Telephone: (518) 587-8112
Facsimile: (587-4140)
Email: mcatalfimo@rlglawny.com

*Local Counsel for BH North American Corporation*

9527507.1

13