Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 18-23538-rdd

5

6    - - - - - - - - - - - - - - - - - - - - -x

7

8    In the Matter of:

9

10    SEARS HOLDINGS CORPORATION, et al.,

11

12              Debtors.

13

14    - - - - - - - - - - - - - - - - - - - - -x

15

16              United States Bankruptcy Court

17              300 Quarropas Street, Room 248

18              White Plains, New York 10601

19

20              June 27, 2019

21              2:14 PM

22

23    B E F O R E:

24    HON. ROBERT D. DRAIN

25    U.S. BANKRUPTCY JUDGE

1      HEARING Re: Assume/Reject Leases re: Bruce Trust

2

3      HEARING Re:  Declaration/Second Declaration of Samuel

4      Levander in Support of Transform Holdco LLCs Reply to

5      the Bruce Trusts (I) Designatable Contract Assumption

6      and Assignment Objection and (II) Reservation of Rights

7      (with Exhibits W and X) (related document(s) 4091,

8      4094, 4028, 3868, 3008, 3421, 2507, 1774, 2881, 4092)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25     Transcribed by:  Lisa Beck

1        A P P E A R A N C E S :

2        TROUTMAN SANDERS LLP

3              Attorneys for the Bruce Trusts

4              875 Third Avenue

5              New York, NY 10022

6

7        BY:  BRETT GOODMAN, ESQ.

8              ALISSA K. PICCIONE, ESQ.

9

10       TROUTMAN SANDERS LLP

11             Attorneys for the Bruce Trusts

12             301 South College Street

13             Suite 3400

14             Charlotte, NC 28202

15

16       BY:  AMY WILLIAMS, ESQ.

17

18       CLEARY GOTTLIEB STEEN & HAMILTON LLP

19             Attorneys for Transform Holdco LLC and Its Affiliates

20             One Liberty Plaza

21             New York, NY 10006

22

23       BY:  LUKE A. BAREFOOT, ESQ.

24

25

Page 4

PROCEEDINGS

1

2          THE COURT:  Please be seated.  Okay.  Good

3     afternoon.  In re Sears Holdings Corp.

4          MR. BAREFOOT:  Good afternoon, Your Honor.  Luke

5     Barefoot from Cleary Gottlieb Steen & Hamilton for Transform

6     Holdco and its affiliates for the record.

7          THE COURT:  Good morning (sic).

8          MR. BAREFOOT:  Your Honor, we're here this

9     afternoon on the evidentiary hearing for the dispute between

10    Transform Holdco and the Bruce Trusts concerning the

11    Asheville, North Carolina Kmart.

12         THE COURT:  Right.

13         MR. BAREFOOT:  Before we turn to the merits of

14    that, I just wanted to address a housekeeping matter.  Your

15    Honor, we have six orders that we submitted on notice of

16    presentment.  The presentment date either passed yesterday

17    or this afternoon.  Extending the time under Section

18    365(d)(4) for six different -- there are six different

19    orders that cover in total seven different leases.  With

20    Your Honor's permission, we just propose to submit those to

21    your chambers.

22         THE COURT:  No, that's fine.

23         MR. BAREFOOT:  Your Honor -- and for the merits

24    portion of the hearing, I'm going to turn this over to my

25    colleague, Sam Levander.

Page 5

1                THE COURT:  Okay.

2                MR. LEVANDER:  Thank you, Your Honor.  Sam

3    Levander on behalf of Transform Holdco LLC.

4                Your Honor, before I begin, I'd just like to

5    confirm that you received the parties' hard copy filings and

6    exhibit binders.  There should be one larger binder with 41

7    exhibits --

8                THE COURT:  Right.

9                MR. LEVANDER:  And then a smaller one with four

10   exhibits.

11               THE COURT:  Yes for a total of 45.

12               MR. LEVANDER:  Total of 45.

13               THE COURT:  Right.

14               MR. LEVANDER:  The last document in the larger

15   binder is the deposition transcript of Paul Bruce who is the

16   sole declarant on behalf of the Bruce Trusts.

17               THE COURT:  Right.

18               MR. LEVANDER:  And the parties have agreed to

19   designate portions of his deposition transcript in lieu of

20   calling for his live testimony today.

21               THE COURT:  Okay.

22               MR. LEVANDER:  So that means there will be no live

23   cross-examination of any witnesses in connection with this

24   hearing.

25               THE COURT:  And those are the portions marked in

Page 6

1      orange and blue?

2               MR. LEVANDER:  And the orange marks are Transform

3      marks.

4               THE COURT:  Right.

5               MR. LEVANDER:  The blue ones are Bruce Trust

6      marks.

7               THE COURT:  Okay.  All right.

8               MR. LEVANDER:  Okay?

9               THE COURT:  All right.  So you've agreed -- the

10     parties, that is, have agreed to the admissibility of all 45

11     of these exhibits.

12              MR. GOODMAN:  Your Honor, Brett Goodman, Troutman

13     Sanders, on behalf of the Bruce Trusts.

14              Yes.  We did agree to the admissibility of the 45

15     exhibits subject to certain documents being held in

16     confidentiality and under seal --

17              THE COURT:  Right.

18              MR. GOODMAN:  -- which --

19              THE COURT:  That's fine.  Okay.  But they're

20     admitted into the record.  They'll be subject to the sealing

21     order.

22              MR. GOODMAN:  Okay.

23              MR. LEVANDER:  Thank you, Your Honor.

24              THE COURT:  Which I'm not sure it's been entered

25     yet.  But in any event -- there have been like 10 sealing

Page 7

1        orders in this case in the last two weeks.  So I don't

2        recall if that order's been entered yet.  But if it isn't,

3        I'm assuming it will be.

4                MR. GOODMAN:  Thank you, Your Honor.

5                MR. LEVANDER:  Thank you, Your Honor.

6            (Joint Transform Holdco's and Bruce Trusts' exhibits

7        received in evidence)

8                MR. LEVANDER:  So, Your Honor, there's a lot of

9        paper in front of you and there's a long history here.  But

10       this is actually a very simple case.

11               Kmart has been the tenant of a lease at 1001

12       Patton Avenue in Asheville, North Carolina continuously

13       since 1964.  That lease has been amended and extended but

14       it's never been terminated or subordinated.

15               Now I'd like to just very briefly go through the

16       chronology and just hit on a few key points.  So in 1964,

17       the fee owner and Kmart entered into a lease.  And then the

18       critical point occurs two years later in 1966.  And that's

19       when the fee owner assigns its landlord interest in the

20       Kmart lease to a third party.  Then in 1992, the fee owner's

21       assignee as landlord extended the Kmart lease for a term of

22       40 years.  The Kmart lease is therefore currently unexpired.

23               Now the objectors argue in the alternative that

24       the Kmart lease either expired in 2001 or that it expired in

25       2019.  Both of those arguments fail.  If the Kmart lease had

Page 8

1    expired in 2001, that would lead to the absurd conclusion

2    that Kmart remained a tenant of the Asheville property

3    without any objection for more than 17 years after its lease

4    expired.

5              Now we make a number of arguments in our briefs as

6    to why this argument fails.  I just want to highlight two

7    points for you today.  First, Paul Bruce, the objectors'

8    sole declarant, admitted in his deposition that the Kmart

9    lease did not expire in 2001 because it was extended by the

10   1992 second amendment.  And that's at page 104 of the

11   transcript of his deposition.

12             And then second, if you take a look at the first

13   document in the smaller binder, that's tab 42, the real

14   property purchase agreement, M, between the Bruce Trusts and

15   a redacted purchaser, the objectors again admitted that in

16   March 2018, Kmart was a current tenant and that the Kmart

17   lease had been extended in 1992.

18             A few highlights from that document.  In paragraph

19   30(c) on page 8, the Kmart lease is defined as an existing

20   lease.  And at the end of that paragraph, you'll see a

21   description of the Kmart lease as extended in its 1992

22   amendment.  And then finally, if you turn to Exhibit B on

23   the final page of that document, you will again see a

24   description of the Kmart lease, as amended, by the second

25   and third amendments to the Kmart lease.

Page 9

1          So that's a concession that Kmart is an existing

2     tenant as of 2018, 17 years after they argue may have

3     expired.

4          Turning to their second argument that the lease

5     expired in 2019, that argument fares no better.  The crux of

6     the 2019 argument is that the 1964 Kmart lease was a

7     sublease that was dependent on two overleases, the 1966

8     ground lease and assignment and the 1975 sandwich lease.

9     But both of those supposed overleases explicitly state that

10    they were entered into subject to the prior Kmart lease.

11         Objectors failed to plausibly explain when and how

12    the Kmart lease became subordinated when it turned from a

13    lease into a sublease.  And the key documents in this case

14    make it clear that Kmart never became a subtenant.

15         Now, Your Honor, if it would be helpful, I can go

16    through --

17         THE COURT:  I guess you also rely on the fact that

18    as part of that 1966 transaction, the Bruces assigned all

19    right and title and interest in the lease to Patent Plaza

20    Associates, PPA.

21         MR. LEVANDER:  That's correct.  And that

22    provision, 1307 of that contract, couldn't be more clear in

23    terms of making an assignment from the Bruces to PPA.

24         THE COURT:  Okay.

25         MR. LEVANDER:  So if you have any questions about

 1       any of the documents, I'm happy to --

 2               THE COURT:  So, in sum, you contend that under

 3       applicable North Carolina law and the underlying agreements,

 4       the store lease, the lease of the -- originally with Kresge,

 5       the Kmart lease, does not terminate upon the termination of

 6       the ground lease because the ground lease is not a head

 7       lease to which the Kmart lease is subject but rather it's

 8       the other way around.

 9               MR. LEVANDER:  That's correct.

10               THE COURT:  And when there was an amendment,

11       whenever there was an amendment, by the landlord under the

12       Kmart lease as assignee, that amendment was binding on the

13       owner of the property and the landlord under the ground

14       lease because of the absolute assignment and the fact that

15       the ground lease is subject to the Kmart lease.

16               MR. LEVANDER:  That's correct.

17               THE COURT:  So I understand all of that other than

18       the ground lease being subject to the Kmart lease.  I don't

19       think you're saying that by that anything more than,

20       obviously, while it's in effect, the ground lease is subject

21       to the Kmart lease, right?  Because that's all it is.  And I

22       believe it expired in 2019.  But what you're really saying

23       is that when the parties entered into the assignment of the

24       Kmart lease and the ground lease, they didn't evidence any

25       contrary intention to the fact that that was a complete

Page 11

1      assignment of the whole title and the lease and not subject

2      to any other reservations.  Is that right?

3              MR. LEVANDER:  That's correct.

4              THE COURT:  Okay.  All right.  Okay.  I think I

5      followed all of that.  Now given all of that, you really

6      don't need to get into ratification or agency theory other

7      than, I guess, stating as another way that because of the

8      absolute assignment, the right party to deal with was, in

9      fact, PPA and its assigns.

10             MR. LEVANDER:  That's correct.  So we --

11             THE COURT:  There wasn't -- the ground lessor fee

12     owner was not the right party to deal with after that

13     absolute assignment.

14             MR. LEVANDER:  That's correct.  Exactly.

15             THE COURT:  They could be deemed to be bound by it

16     but the --

17             MR. LEVANDER:  Right.

18             THE COURT:  -- party who would be the actual agent

19     would be the assignee which originally was Patton Plaza

20     Associates, PPA, and their -- through assignments from it,

21     it became Nineteenth Asheville Corp. and then what the

22     parties refer to as NAP.

23             MR. LEVANDER:  That's exactly right.

24             THE COURT:  Okay.  All right.

25             MR. LEVANDER:  And I'm happy to answer any further

Page 12

1      questions or come back on rebuttal.

2              THE COURT:  Okay.  All right.  Thank you.

3              MR. GOODMAN:  Good afternoon, Your Honor.  Brett

4      Goodman, Troutman Sanders, for the record, on behalf of the

5      Steven Bruce Revocable Trust, the Cara Bruce Irrevocable

6      Trust and the Allison Bruce Irrevocable Trust, all three

7      trusts being collectively called the Bruce Trusts for the

8      purposes of this hearing and the papers.  And I just want to

9      also point out that we have Mr. Paul Bruce here in the

10     courtroom.  He traveled up today for the hearing.  Mr. Bruce

11     is the declarant and the custodian of record for the trust.

12             THE COURT:  Right.  But since all the exhibits are

13     admitted and his deposition portions have been denominated,

14     he doesn't need to testify.

15             MR. GOODMAN:  Understood, Your Honor.

16             THE COURT:  Okay.

17             MR. GOODMAN:  Your Honor, I actually just want to

18     deal myself with the burden of proof argument that was

19     raised in the papers and then I'll probably hand off the

20     rest of the argument.

21             Your Honor, Transform's argument in its reply with

22     respect to the burden of proof is simply wrong.  In their

23     brief, Transform relies on a series of inapplicable cases

24     that address only whether the agreements at issue constitute

25     a true lease or a disguised security agreement under the

Page 13

1    UCC.  And in those cases, the law is such that the parties

2    seeking to characterize the agreement as something other

3    than it purports to be has the burden.

4          Here, however, Your Honor, there's no dispute

5    among the parties that the Kmart lease is a true lease.

6    Rather, the only question is whether that lease has expired.

7          THE COURT:  Well, but doesn't that depend on the

8    characterization of it as a lease or a sublease?  I mean,

9    there is a characterization element to this.

10          MR. GOODMAN:  Well --

11          THE COURT:  I mean, put it differently, this --

12          MR. GOODMAN:  -- it's a 36 -- I think from our

13    standpoint, regardless, it's a 365 issue and they are the

14    movant and therefore they have the burden of proof.

15          THE COURT:  'Cause it says assign a lease.  The

16    statute says assign a lease.

17          MR. GOODMAN:  And they purport for it to be a

18    lease --

19          THE COURT:  Right.

20          MR. GOODMAN:  -- the Kmart lease.  So --

21          THE COURT:  But you know what?  I don't think it

22    really matters here because this is, to my mind, having gone

23    through all of the pleadings -- I mean, I understand your

24    arguments but I don't think it matters because going through

25    the pleadings, this isn't an issue where the burden of proof

1    is really that important based on, I think, the documents

2    and the law.

3            MR. GOODMAN:  That's fair, Your Honor.  And I

4    don't need to belabor the point.  I guess, the balance of

5    our arguments and our objections relate to the

6    interpretation of the lease documents and the transaction

7    under applicable North Carolina law.

8            THE COURT:  Right.

9            MR. GOODMAN:  And my colleague, Amy Williams, who

10    has been admitted pro hac and is a partner in our Charlotte

11    office, will be addressing that.  So I'll hand off the

12    balance of the argument so as not to belabor the burden

13    point.

14            THE COURT:  Okay.

15            MR. GOODMAN:  Thank you, Your Honor.

16            MS. WILLIAMS:  So, Your Honor, well, I --

17            THE COURT:  You can stay there, if you want.  If

18    you're more comfortable there, that's fine.

19            MS. WILLIAMS:  Well, no.  I can --

20            THE COURT:  It's up to you.

21            MS. WILLIAMS:  My voice does not carry that far,

22    Your Honor.

23            THE COURT:  Well, there's a microphone there, too.

24    But --

25            MS. WILLIAMS:  Well, that's true.

Page 15

1          THE COURT:  But hopefully, the podium will hold

2     your notebook.  Okay.

3          MS. WILLIAMS:  We'll come here.  Thank you, Your

4     Honor.  First of all, just to introduce myself to the Court,

5     I'm Amy Pritchard Williams, a member of the North Carolina

6     bar.  And I appreciate the opportunity to appear this

7     morning on behalf of the Bruce Trusts.

8          THE COURT:  Okay.  Good afternoon.

9          MS. WILLIAMS:  Or this afternoon.  Thank you.

10         I am going to focus on the legal argument, Your

11    Honor, because I do think there's an important aspect of

12    North Carolina law, especially North Carolina law in the

13    1960s when the ground lease was executed that we want to

14    draw to the Court's attention.

15         I will make just a couple of points in response to

16    the -- a couple of fact points that Mr. Levander made.  If

17    you look at the document that's under seal, Your Honor, in

18    Joint Exhibit 42, both paragraphs 30(c) and 30(d) contain an

19    express sentence.  And I'll just read one into the record.

20    That's the paragraph that's dealing with various property

21    leases, Your Honor.  And the very last sentence reads:

22    "Further, nothing in this paragraph shall be construed as an

23    admission or representation by Sellers that any of the

24    existing leases legally continue after the termination of

25    the current lease" -- which I believe is referring to the

Page 16

1    ground lease.  And it goes on to essentially reiterate that

2    the sellers are of the view that these leases could all

3    terminate in 2019 when the ground lease terminates.

4           So just to make the point that this contract isn't

5    any sort of admission on the part --

6           THE COURT:  Right.

7           MS. WILLIAMS:  -- of my clients.

8           THE COURT:  Well, I think it -- I think it may be

9    an admission that the lease didn't terminate in 2001.  I

10   think it centers on what I think is the main argument here

11   which is upon the ground lease's termination --

12          MS. WILLIAMS:  Right.

13          THE COURT:  -- does the lease terminate.

14          MS. WILLIAMS:  Your Honor, the --

15          THE COURT:  Does the Kmart lease also terminate.

16          MS. WILLIAMS:  Right.  And if I could, my short

17   answer to that -- but I'd like to give the Court a longer

18   one --

19          THE COURT:  Okay.

20          MS. WILLIAMS:  -- that will talk about North

21   Carolina law.  My short --

22          THE COURT:  That's fine.

23          MS. WILLIAMS:  My short answer to that question

24   is, I think, at the latest, the original '64 lease expired

25   by its terms in '01.  There is the '92 amendment which we

1       view as an agreement between NAP and Kmart that allowed

2       Kmart to have possession of the property.  And it may not be

3       called a sublease but when you enter into a lease with a

4       subtenant for the property -- and we'll talk about what

5       NAP's -- the limits on NAP's authority was.  That's

6       effectively a sublease.

7               So there's nothing -- in terms of dealing both

8       with all of those alternative theories posited that's sort

9       of the question of, well, Kmart's been there forever, all of

10      that is perfectly consistent with --

11              THE COURT:  With a long-term sublease.

12              MS. WILLIAMS:  -- with a long-term sublease --

13              THE COURT:  Right.

14              MS. WILLIAMS:  -- that expired when the landlord

15      under that sublease lost its right of possession which, I

16      think, everyone agrees, it's undisputed, was in 2019.

17              But what I'd like to do, Your Honor, is take the

18      Court back to 1966 when the ground lease was drafted and

19      executed because I think it's important to recognize what

20      the state of law looked like in North Carolina when it comes

21      to real property conveyances.  And it's important to

22      recognize that this was, in fact, a ground lease.

23      Transform, in its papers, tries to call a ground lease an

24      assignment because they want to point to the assignment.

25      The parties to this transaction and their successors never

1    called it that.  They called it an indenture lease.  And the

2    reason that that's important is that prior to January 1st,

3    1968, in North Carolina, Courts placed principal importance

4    on any kind of contract conveying real property on the

5    granting and the have and to hold clauses.

6         We talk about this in our papers -- and I'll cite

7    to the Court the 1980 Whetsell v. Johnson -- sorry --

8    Jernigan decision primarily because it has an excellent

9    history of the case law on this issue.  But it sets out very

10   clearly that prior to a statute being enacted, effective

11   1/1/68, if there was any sort of incongruity or disagreement

12   or contradiction between the granting and the have and to

13   hold clauses and the rest of the conveyance, those two

14   clauses controlled to the point at which there are several

15   cases where the granting clause looks like a fee simple.

16   Later in the deed, it's very clear that the grantor meant to

17   convey only a life estate and the Court rules that it's a

18   fee simple conveyance.  And this -- the 1948 Artis decision

19   does the same thing.

20        The North Carolina legislature when they enacted -

21   - they enacted the statute to change the rule.  But the

22   statute is expressly prospective and that's actually the

23   holding of Whetsell.  In 1/1/68, the legislature enacted a

24   statute that says a Court shall determine the effect of the

25   instrument on the basis of the intent of the parties as it

Page 19

1      appears from all of the provisions of the instrument.

2              But in 1966, when these parties were preparing

3      this ground lease, it would have been clear to all of them

4      that that's what this was, a grant of the premises for a

5      term of years and no longer.  So the assignment in Article

6      13 has to be read in conjunction with the limits on what the

7      overall instrument was conveying.  And the overall

8      instrument did not convey the ability for the ground lessor

9      to bind the fee simple owner to a term that went beyond that

10     of the ground tenant.

11             THE COURT:  Well, it doesn't say that, though,

12     right?  And it is an absolute assignment of the lease.

13             MS. WILLIAMS:  Well, I --

14             THE COURT:  Isn't it?  I mean, it does assign -- I

15     mean, the parties did assign the Kmart lease.

16             MS. WILLIAMS:  For the term of the ground lease

17     only --

18             THE COURT:  It doesn't say --

19             MS. WILLIAMS:  -- Your Honor.

20             THE COURT:  -- that.

21             MS. WILLIAMS:  If you look at Article 13 as a

22     whole, and this is one subsection of one article -- and

23     again, I -- Transform wants to read certain subsections and

24     forget about others.

25             THE COURT:  Right.

1          MS. WILLIAMS:  But if the Court has Joint Exhibit

2     5, I believe --

3          (Pause)

4          THE COURT:  Okay.

5          MS. WILLIAMS:  So, Your Honor, if you look at

6     Article 13 as a whole --

7          THE COURT:  Right.

8          MS. WILLIAMS:  -- first of all, it's called

9     "Assignment, Subletting and Mortgaging".  So it's covering

10    what I would argue are pieces of one aspect of the

11    conveyance -- the rights of the ground tenant under the

12    ground lease.

13          If you look at all of these sections together, the

14    first Article 13.01 makes it clear that if there's going to

15    be a sublet of all of the lease or the leasehold, the

16    tenant, in doing so, cannot encumber the landlord's title to

17    the demised premises.  So there's a limit there on the

18    ability of the tenant to encumber the landlord's title.

19          13.0 --

20          THE COURT:  Can I interrupt you?

21          MS. WILLIAMS:  Sure.

22          THE COURT:  The Kmart lease already happened that

23    precedes this agreement.  Kmart's not a party to this

24    agreement.

25          MS. WILLIAMS:  Right, Your Honor.  But the '92

1     amendment does not.

2              THE COURT:  But --

3              MS. WILLIAMS:  The power, the ability --

4              THE COURT:  I understand.  But I think that the

5     language you're referring to is referring to new leases or

6     subleases.

7              MS. WILLIAMS:  And any transfers of this lease.

8     If --

9              THE COURT:  Well, that's right.  This lease,

10    meaning the ground lease.

11             MS. WILLIAMS:  Right, Your Honor.  And what I'm

12    attempting -- let me back up and just give a preview of

13    where I'm going with this.

14             THE COURT:  Okay.

15             MS. WILLIAMS:  What I'm trying to show the Court

16    is that the subsections of Article 13 each cover a different

17    aspect of what the ground tenant is allowed to do with its

18    leasehold.  And what they consistently have in common with

19    one another is they prohibit an encumbrance on the property

20    without the consent of the fee owner for a period of longer

21    than 10 years or, in the case of 13.01, certainly longer

22    than the ground lease itself because you're not allowed to

23    encumber the fee.  And what Transform is arguing is that

24    without -- despite the fact that this is a ground lease for

25    a term of years and despite the then North Carolina law, the

Page 22

1       folks who wrote this, would have understood that there is an

2       exception to every kind of ability or, in fact, inability to

3       encumber the fee that solely applies to the Kmart lease.

4       And the parties never say that.

5               THE COURT:  Well, they do say in 13.07 that

6       they're referring to the existing leases.

7               MS. WILLIAMS:  Well, I mean, that's right, Your

8       Honor.  But again, we would argue that 13.07 has to be read

9       really in deference to the term of years.

10              But if I can turn to --

11              THE COURT:  It would be the 99-year term of the

12      ground lease?

13              MS. WILLIAMS:  Well, if at all -- if all of the

14      extensions had been granted, yes.  But they -- if all the

15      extensions had been authorized, yes.  But they weren't.  So

16      it's to have and to hold for as long as this ground lease is

17      in place.  And then this ground lease goes away at the end

18      of January 2019.

19              I do want to talk, Your Honor, about --

20              THE COURT:  Well, I guess I'm having -- I'm having

21      a hard time seeing that.  I mean, 13.07 is pretty specific.

22      It doesn't have a carveout for anything else.  And this

23      agreement follows the prior agreement which is wholly

24      assigned by the parties to this agreement to the Kmart

25      landlord.  So, I mean, --

Page 23

```
 1                  MS. WILLIAMS:  And --

 2                  THE COURT:  Can you address the cases dealing with

 3       complete assignments of the leases and other executory

 4       contracts that the buyer has cited here, like Northside

 5       Station --

 6                  MS. WILLIAMS:  Well, Your Honor, the principal -

 7                  THE COURT:  -- et cetera?

 8                  MS. WILLIAMS:  -- way in which I distinguish those

 9       cases is that they weren't written in 1966 in North

10       Carolina.

11                  THE COURT:  Well, they go back to case law from

12       1909.  So I'm not sure that really helps me.

13                  MS. WILLIAMS:  Well, I -- I mean, in --

14                  THE COURT:  I mean --

15                  MS. WILLIAMS:  I don't know that --

16                  THE COURT:  -- albeit that was not a lease but it

17       deals with the assignment of a contract.

18                  MS. WILLIAMS:  Right.

19                  THE COURT:  And --

20                  MS. WILLIAMS:  And the difference here is the real

21       property aspect of this, Your Honor.

22                  THE COURT:  Well --

23                  MS. WILLIAMS:  I mean, it --

24                  THE COURT:  -- the same principle really should

25       apply.  I mean, how can two parties deprive a third party
```

1     that has full rights under a contract of those rights by

2     selling off the fee title?  And at the same time, the

3     parties provide for absolute assignment of the first

4     contract.  So it's still there.  It's just -- it seems to be

5     contrary to these cases.  I mean, I agree with your

6     underlying premise.  And in fact, there's a good reference

7     to it in Neal v. Craig Brown, Inc. --

8               MS. WILLIAMS:  Yes.

9               THE COURT:  -- where the Court says if it's not a

10    full assignment and it's just a sublease then termination of

11    the original lease terminates any dependent sublease.  This

12    is true notwithstanding the fact that the sublease contains

13    options to renew.  And I think that's what you're arguing

14    here is that the options to renew are in a sublease.  But

15    it's pretty clear to me that this Kmart lease never was a

16    sublease.  And the parties didn't make it a sublease when

17    the owner sold its fee interest but got a complete

18    assignment of the lease.  There's no remaining tenancy.

19    It's a total complete assignment.  So it seems like, under

20    these cases, this is not the Neal v. Craig Brown situation

21    but rather you could, I guess, phrase it one of two ways.

22    Either Kmart can enforce its -- now Sears can enforce its

23    rights through NAP to the Bruce Trusts or NAP, having been

24    made by the 1966 agreements because the lease refers to

25    being effective on assignees -- the Kmart lease, that is --

1    the full assignee of the agreement is the agent for the

2    Bruce Trusts.  So the Bruce Trusts, in essence, are

3    breaching the agreement by saying you can't actually extend.

4             MS. WILLIAMS:  Your Honor, could I hand up -- we

5    attached this to our papers but it's a flow chart.  And I

6    just want to make sure that we're on the same page.  NAP was

7    not a tenant under the ground lease at the time of the '92

8    amendment.

9             THE COURT:  I know.

10             MS. WILLIAMS:  Okay.  It --

11             THE COURT:  You have the whole -- I understand.

12    You have this --

13             MS. WILLIAMS:  It was a --

14             THE COURT:  -- sandwich lease in between.

15             MS. WILLIAMS:  It was a --

16             THE COURT:  But that's just adding more --

17             MS. WILLIAMS:  But --

18             THE COURT:  You still have the actual lease, the

19    Kmart lease, which never, to me, was a sublease.

20             MS. WILLIAMS:  And if I could address -- if I

21    could just to an argument that, again, is addressing whether

22    or not NAP had the power to do what it did under the ground

23    lease -- and I do want to talk to the Court about 13.03 --

24             THE COURT:  Okay.

25             MS. WILLIAMS:  -- and the fact that throughout

Page 26

1    this ground lease, again -- and I would cite the Walmart

2    cases that are in our papers for this proposition that one

3    should read contracts if we're talking about contracts, in a

4    way that makes sense and read them as a whole.

5              In 13 -- Transform makes the argument that the

6    parties to the ground lease were distinguishing carefully

7    between what is a lease and what is a sublease.  And the

8    words of this ground lease just don't stand up to that, Your

9    Honor.  13.03 says that you can sublet to an occupying

10   subtenant without the written consent of the landlord if

11   three conditions are followed.  But the middle of those

12   three conditions is that the term of said lease, which is

13   also capitalized for reasons that are not clear, can't be

14   more than 10 years.

15             THE COURT:  Wouldn't this have to -- if -- to

16   follow your interpretation of this, wouldn't it have to say

17   "Tenant may continue subletting" as opposed to "sublet"?  I

18   mean, doesn't this really apply to new leases --

19             MS. WILLIAMS:  No, Your Honor.

20             THE COURT:  -- i.e., new subleases?

21             MS. WILLIAMS:  That's my point, is that the -- in

22   this document, in the ground lease, there are a number of

23   places where if you read --

24             THE COURT:  Well, I'm just focusing on the first

25   law which is --

Page 27

1              MS. WILLIAMS:  Right.

2              THE COURT:  -- 13.03.

3              MS. WILLIAMS:  So -- but my point is, is that this

4     was not intended by the parties -- the word "subtenant" was

5     not intended to exclude Kmart.

6              THE COURT:  Well --

7              MS. WILLIAMS:  And the reason that I say that is

8     that there are plenty of other places in --

9              THE COURT:  Well, let's go through.

10              MS. WILLIAMS:  -- the lease.

11              THE COURT:  I --

12              MS. WILLIAMS:  Sure.

13              THE COURT:  So far I don't see it in 13.03 but we

14     should go --

15              MS. WILLIAMS:  All right.

16              THE COURT:  -- through the other ones to --

17              MS. WILLIAMS:  So I've made my point about 13.03.

18              THE COURT:  Right.

19              MS. WILLIAMS:  In 13.10, if we are distinguishing

20     between subleases and leases, the language in 13.10 relating

21     to a future occupancy lease doesn't make any sense because

22     there wouldn't be an -- because to the Court's point, any

23     lease entered into in the future is going to be a sublease.

24              THE COURT:  Okay.  Let's just walk through --

25     13.10, right?

1          MS. WILLIAMS:  13.10.  And my point is that it's

2     referring to -- bear with me.  If you look at the top of

3     page 13(g), this is the provision that puts limits on the

4     ability to enter into agreements that would affect -- and

5     then it says "any present or future occupancy lease which

6     would reduce the rent or shorten the term".

7          THE COURT:  Okay.

8          MS. WILLIAMS:  Transform focuses on the second

9     half of that sentence.  I'm focusing on the fact that

10    they're talking about future occupancy leases which, if we

11    follow the Transform construction of this document, there

12    wouldn't be any leases in the technical sense; there would

13    be subleases.

14         THE COURT:  Oh.  You mean, because they say future

15    -- well, but this is consistent with 13.07.  I mean, the

16    deal here, I believe, that's consistent with the absolute

17    assignment is that the ground tenant who's also assigned the

18    Kmart lease isn't going to -- sorry.  It's not 13.07.  13 --

19    no.  I mean, this hasn't happened as far as this debtor --

20         MS. WILLIAMS:  But --

21         THE COURT:  -- this tenant is concerned.  It

22    didn't reduce the rent.  It didn't reduce the terms.

23         MS. WILLIAMS:  But I'm making --

24         THE COURT:  It actually increased the rent and

25    increased the terms.

1          MS. WILLIAMS:  I'm making a different point, Your

2     Honor --

3          THE COURT:  No, I understand.

4          MS. WILLIAMS:  -- which is --

5          THE COURT:  -- but it's --

6          MS. WILLIAMS:  -- the way that we're talking about

7     language.  The way that --

8          THE COURT:  I know.  It says leases.

9          MS. WILLIAMS:  -- parties to the lease talk about

10    language --

11         THE COURT:  But that --

12         MS. WILLIAMS:  -- use language --

13         THE COURT:  But this would apply.  This would

14    apply because, as a lease, it's perfectly understandable

15    that you wouldn't want the Kmart lease to have a lower rent

16    or a shorter term.

17         MS. WILLIAMS:  Right.  But my point, Your Honor,

18    is that if Transform's reading of the language is correct

19    then this should read "any present occupancy lease or future

20    occupancy sublease".  And the parties just weren't that --

21         THE COURT:  No.  You could -- this would --

22         MS. WILLIAMS:  They just didn't do that.

23         THE COURT:  -- apply to both.  You could use the

24    word "lease" here to apply to both --

25         MS. WILLIAMS:  And --

1            THE COURT:  -- either type of lease.

2            MS. WILLIAMS:  And you could use the word

3     "sublease" before to also apply to Kmart --

4            THE COURT:  No.  But they --

5            MS. WILLIAMS:  -- because they were functionally

6     thinking about --

7            THE COURT:  But I actually think this actually

8     makes it -- I think, to me, this makes Transforms' point.

9     If you do a Venn diagram, "sublease" means sublease.

10    "Lease" covers both.  And this logically does cover both

11    because it makes sense that the ground tenant wouldn't

12    reduce the term or the lease rental amount of the assigned

13    Kmart lease.  And "lease" covers both.  So this one doesn't

14    -- I mean, but we should keep going.

15           MS. WILLIAMS:  Yes.  If we look at 13.12 --

16           THE COURT:  Okay.

17           MS. WILLIAMS:  -- which is on page 13(h) --

18           THE COURT:  Right.

19           MS. WILLIAMS:  -- again, this is a provision that

20    if you take the words "sublease" and "lease" literally, it

21    makes no sense.  There weren't any -- if we're going to use

22    Transform's construction and the Court's construction of the

23    ground lease, there were no subleases then as of the time of

24    the execution of the ground lease.

25           THE COURT:  Right.

Page 31

1          MS. WILLIAMS:  Only the Kmart lease was in effect.

2          THE COURT:  Right.  Is there --

3          MS. WILLIAMS:  And so, why is there a provision,

4  particularly at a time, frankly, Your Honor, when leases are

5  typewritten, why did they add a provision about "The

6  landlord has not received any securities under any sublease

7  in effect of the date hereof"?

8          THE COURT:  Is there a representation of warranty

9  in here that there are no subleases in effect?

10         MS. WILLIAMS:  I'm not familiar that there are,

11  Your Honor.

12         THE COURT:  I don't think there is.

13         MS. WILLIAMS:  I get to --

14         THE COURT:  I mean, to me -- I mean --

15         MS. WILLIAMS:  I get to there being no subleases.

16  The parties knew that Kmart was the only --

17         THE COURT:  Well, did they?  I mean, how did they

18  know?

19         MS. WILLIAMS:  Well, I'll --

20         THE COURT:  I mean, you can easily just have an

21  arrangement with someone.  So, to me, this could be --

22         MS. WILLIAMS:  But --

23         THE COURT:  -- clearly read as, all right, you

24  don't have any securities with any subtenants --

25         MS. WILLIAMS:  But --

Page 32

1                THE COURT:  -- because we don't have any

2       subtenants.

3                MS. WILLIAMS:  Well --

4                THE COURT:  They could -- if they were worried

5       about Kmart, they could say we don't have any securities

6       under the Kmart lease.

7                MS. WILLIAMS:  And my argument is, is that they

8       were doing that in Section 13.12.

9                THE COURT:  All right.  But I think you could just

10      as easily read it to say that --

11               MS. WILLIAMS:  The --

12               THE COURT:  -- there aren't any subleases --

13               MS. WILLIAMS:  Just to make --

14               THE COURT:  -- at least where there's securities.

15      Whether -- I guess what this means is a security deposit,

16      right?

17               MS. WILLIAMS:  Right.  And just -

18               THE COURT:  Okay.

19               MS. WILLIAMS:  -- to make the evidentiary point,

20      Your Honor, and talk about the history of the building, in

21      '66, there was a single building on the premises that was

22      the Kmart building.

23               THE COURT:  Right.

24               MS. WILLIAMS:  Joint Exhibit 12, which is an

25      assignment, shows that the Eckerd lease dates from May of

Page 33

1      '66 which is the next lease that was put into place.  And

2      Joint Exhibit 7 shows that in 1969, the only two occupants

3      of the premises were Kmart and Eckerd.

4              THE COURT:  Well, what about -- I mean, look, I

5      don't think this is particularly relevant.  But it's a big

6      store.  At least in the modern era, big department stores

7      sometimes have a section that is the, I don't know, the

8      jewelry section that may be run by someone else.

9      Conceivably, that's a sublease?  I don't know.

10             This just -- it doesn't strike me that this type

11     of provision overrides 13.07 and 13.10.  It just -- you

12     know, I don't think it -- the rule is that a complete

13     assignment means it's not a sublease unless the parties

14     indicate some limitations to the contrary.  So I think you

15     need to show me indications to the contrary.  And these

16     provisions really don't do it to me.

17             MS. WILLIAMS:  The last one I'll mention, Your

18     Honor, and then I'll move on, is 18.09 which relates to

19     reports that the fee owner was entitled to get concerning

20     the operation of the shopping center.

21             THE COURT:  Right.  18.09, you say?

22             MS. WILLIAMS:  Yeah.  I'm sorry.

23             THE COURT:  Okay.

24             MS. WILLIAMS:  Yeah.  18.09.

25             THE COURT:  Right.

1          MS. WILLIAMS:  And I just want to make one point

2     and then I'm going to move on to the sandwich lease.

3          This is an early -- I would call it an early

4     version of what we would now think of as a pretty standard

5     provision.  The fee owner was not involved in the operation

6     of the shopping center, right, but the fee owner needs to

7     get information and if the fee owner had a mortgage, would

8     want their mortgage holder to get information.

9          About not just the name of the subtenant but also

10    the conditions of their respective tenancies -- and I

11    believe that there's testimony in Mr. Bruce's declaration to

12    the effect that he did communicate to understand who the

13    tenants were and what rent was being paid.  The way this is

14    written, name of any subtenants with the terms and

15    conditions of their tenancies, it doesn't include the Kmart

16    lease under this reading.  And where the Kmart is the anchor

17    tenant occupying even after the extensions were built, you

18    know, 80 percent of the occupiable space, why would the fee

19    -- if there's this technical reading of what is a subtenant

20    and what is a tenant, why would the fee owner exclude the

21    anchor from the ability to get information?

22         This is -- again, it's just one of a number of

23    instances where we contend that the language of the lease

24    and the language that the parties are using in the lease was

25    not --

1         THE COURT:  I'm sorry.  You're saying why would

2    there -- why would the landlord exclude?

3         MS. WILLIAMS:  Yeah.  Why would the landlord

4    exclude the anchor tenant from its ability, its guaranteed

5    right to get information unless -- so what I am arguing

6    based on that is that the word "subtenant", the parties

7    meant to include Kmart in that.

8       (Pause)

9         THE COURT:  And you're saying that this paragraph,

10   18.09, excludes Kmart?

11        MS. WILLIAMS:  If you follow the reading -- if you

12   follow the language being used by Transform, yes, because it

13   says "subtenant".  And Transform's argument is that Kmart is

14   a tenant --

15        THE COURT:  Right.

16        MS. WILLIAMS:  -- and not a subtenant.

17        THE COURT:  Right.

18        MS. WILLIAMS:  So if "subtenant" really does mean

19   only subtenant and "tenant" really only means tenant then

20   this says that the fee owner is entitled to get detailed

21   information about the income and expenses relating to the

22   operation of the demised premises, the names and conditions

23   of the subtenants' tenancies but apparently is not entitled

24   to get information about the Kmart tenant.

25        THE COURT:  Well, this provision doesn't carve out

Page 36

1       Kmart, right?

2               MS. WILLIAMS:  My -- I think I'm speaking past the

3       Court.

4               THE COURT:  Are you --

5               MS. WILLIAMS:  My point is --

6               THE COURT:  Are you saying that logically, because

7       Kmart was so important to this real estate venture, this

8       would have to have included Kmart?

9               MS. WILLIAMS:  Yes.  The word "subtenant" must

10      also be referring to Kmart.

11              THE COURT:  Well --

12              MS. WILLIAMS:  And it's consis --

13              THE COURT:  -- other than the fact that it

14      doesn't.  I mean, is there any evidence that these reports

15      were actually demanded and provided?

16              MS. WILLIAMS:  I believe that Mr. Bruce references

17      that in his declaration, Your Honor, which is docket 4091.

18              THE COURT:  Are there any records that have

19      certified true and correct copies and the like?

20              MS. WILLIAMS:  I'm not sure that -- I don't think

21      that we have records of the certified true and correct, Your

22      Honor.  But we do have Mr. Bruce from the time that he took

23      over from the fee owner's perspective managing the property

24      and his communications with the agent for NAC or perhaps it

25      was NAP.  And I suppose, Your Honor, this does go back to

1      the arguments about burden of proof.

2                THE COURT:  Does he say that he received these?

3                MS. WILLIAMS:  He doesn't say that he received the

4      certified statements, Your Honor.  He said that he would --

5      it was more informal than that.  He would call and get

6      information.

7                THE COURT:  Okay.  All right.

8                MS. WILLIAMS:  But regardless of whether he was

9      getting that, regardless of how that was working, my point

10     is that is one of simple logic.  If everyone was being very

11     careful not to call Kmart a subtenant, this provision

12     doesn't make any sense.

13               THE COURT:  Well, unless you had tenants that came

14     in.  I mean, there's no assurance or subtenants that Kmart

15     was going to be there forever.  It's a big place.  And as we

16     know, Kmart, at times, wanted to sublease its stores or

17     portions of the stores.  I mean, there's -- you're going --

18     I mean, it's from 2008 so it wasn't back in 1966.  But this

19     was a long-term ground lease.  Kmart v. Guastello.

20               I mean, again, this is the -- I understand the

21     logic you're talking about.  But this provision is also

22     completely consistent with the logic that for a subtenant in

23     the future, we want to know who they are.  We know who Kmart

24     is.  We want to know who these other people are because

25     there was a right to sublease.  But we want to know how

Page 38

1    they're doing.

2              MS. WILLIAMS:  Well --

3              THE COURT:  You know, Joe's Carpet Cleaner,

4    whoever.

5              MS. WILLIAMS:  Right.  And my point is, I think it

6    would be a whole lot more important to know what the anchor

7    tenant is doing, that they're paying the rent on time.  Then

8    it would -- Joe's Carpet Cleaning.

9              But I'll move on to the --

10             THE COURT:  Okay.

11             MS. WILLIAMS:  -- sandwich lease, Your Honor.

12             THE COURT:  All right.  I mean, it would be a lot

13    easier to say we want to know what Kmart's doing.

14             MS. WILLIAMS:  Well, and my point is that by using

15    the word "subtenant", I think that's what the parties meant

16    to do.

17             The sandwich lease, Your Honor, Transform has

18    skipped over the sandwich lease.  But we do think that it's

19    important and that we make this point.

20             In 1992, the tenant under the ground lease was

21    Asheville KM.  It was not NAC or NAP or any of the Samuels

22    entities.  Instead, Asheville KM was the ground lease tenant

23    and the sandwich lease landlord.  And that lease does a

24    couple of things.  First of all, it very clearly refers to

25    Kmart as a sublease.  It defines it as a sublease in Article

1     1.2 and Schedule 1.2(b).  It does not distinguish between

2     the two.  And in Article 7, Asheville KM expressly prohibits

3     its tenant from subletting unless it follows certain

4     conditions.  And it says specifically "Tenants shall not

5     modify, alter or amend" and some other words "terminate any

6     sublease now or hereafter existing."  And we can argue over

7     whether "sublease" meant was -- included the Kmart lease and

8     the ground lease but there's really no argument that the

9     parties didn't specifically identify Kmart as a sublease in

10    this contract.

11               THE COURT:  Although again, the North Carolina

12    courts have said that whether the parties define an

13    agreement as a sublease or not it's irrelevant if there's

14    been a complete assignment.

15               MS. WILLIAMS:  But here, Your Honor, if one

16    follows the -- well, first of all, the point is that NAP was

17    required to follow the terms of the sandwich lease if it was

18    going to amend the Kmart lease.  Okay.  Can we -- I mean, I

19    think we can agree on that.

20               THE COURT:  But if the --

21               MS. WILLIAMS:  I mean, NA --

22               THE COURT:  If the Kmart lease was absolutely

23    assigned, as I believe it was in 1966, then all of the

24    assignees of the ground lease from that assignor are subject

25    to that same body of law, aren't they?  How can they change

Page 40

1          the rules just between themselves?

2                    MS. WILLIAMS:  Well, they can change the rules to

3          limit the rules between themselves.  So let me explain, Your

4          Honor.  That's why the flow chart, I think, is helpful.

5                    In 1992, Asheville KM was the ground lease tenant.

6          So they are the assignee of the Kmart lease.  They then

7          sublet to NAC which apparently later becomes NAP.  And when

8          Asheville does that, Asheville says to NAP, okay, NAP -- in

9          the sandwich lease -- you run the property.  But if you're

10         going to modify any lease, we have to consent.  And I would

11         again argue the reason that Asheville KM did that is because

12         Asheville KM wanted to make sure that any modification

13         entered into by NAP complied with Asheville KM's obligations

14         under the ground lease.

15                   So Asheville KM has obligations of the ground

16         tenant.  They enter into the sandwich lease with the NAC

17         entity.  And they say to the NAC entity very clearly -- and

18         I just don't think there's any dispute about this -- you

19         can't modify or amend or do anything to a sublease, which as

20         defined in that lease includes Kmart, without our consent.

21         And I would then posit the reason that they did that is

22         because Asheville KM had obligations as the ground tenant.

23         But regardless, they did it.

24                    THE COURT:  But wasn't the --

25                    MS. WILLIAMS:  And regard --

Page 41

1                    THE COURT:  I'm sorry.  But wasn't the assignment

2       of the Kmart lease still absolute?

3                    MS. WILLIAMS:  Well, no, Your Honor.  The

4       assignment of the Kmart lease took place first pursuant to

5       the ground lease and then pursuant to the sandwich lease.

6       So NAP can't ignore the terms of the sandwich lease and do

7       whatever it likes.  It's only --

8                    THE COURT:  But it wasn't -- but I'm going back to

9       isn't it still an absolute assignment?  There was no partial

10      assignments of the Kmart lease, right?  There couldn't be, I

11      don't think.

12                   MS. WILLIAMS:  Well, again, I'm -- my argument

13      goes back to what does the ground lease really mean.  But --

14                   THE COURT:  Right.

15                   MS. WILLIAMS:  -- I also think that whatever the

16      ground lease assignment says, NAP is not acting pursuant to

17      the ground lease.  They're acting pursuant -- their only

18      interest in the property is the sandwich lease.  If there

19      were no sandwich lease in 1992, the NAC and NAP entities are

20      not in this chain of title.  They're out of it.  It's

21      Asheville KM is the ground tenant.  So why is it that NAP

22      can enter into an agreement that violates their own lease,

23      their only hold on the property, and yet still bind the fee

24      owner?  And not only that, but bind the fee owner to

25      something that apparently is going to go beyond the term of

1    the ground lease.

2           And that -- Your Honor, I have a real problem with

3    the idea that a subtenant under the sandwich lease can

4    ignore the sandwich lease, do whatever it likes with Kmart.

5    There is no evidence, burden of proof or no burden of proof.

6    There's absolutely no evidence that Asheville KM consented

7    to this.  And I think that's undisputed.

8           THE COURT:  As the tenant under the ground lease.

9           MS. WILLIAMS:  And the landlord under the sandwich

10   lease, yes.  Both.  Asheville KM is the landlord under the -

11   -

12          THE COURT:  All right.  But I'm focusing -- the

13   landlord with Kmart or as a subtenant?

14          MS. WILLIAMS:  I was referring to --

15          THE COURT:  Who has the assignment of the Kmart

16   lease at this time in March 1992?

17          MS. WILLIAMS:  Asheville KM has conveyed it to NAC

18   as part of the sandwich lease in conjunction with -- I was

19   done on the same day as the sandwich lease.  And the

20   sandwich lease, again, places restrictions on what NAP can

21   do.  And NAP's only relationship to this piece of property

22   is that it is a subtenant under the sandwich lease.  Without

23   the sandwich lease, NAP has no leasehold interest in the

24   property whatsoever.

25          So our argument is NAP had to follow the sandwich

Page 43

1    lease if it was going to amend the Kmart lease and it

2    didn't.  And so the arrangement between NAP and Kmart works

3    between the two of them.  But it can't bind the fee owner

4    and encumber the fee owner's interest in the property beyond

5    the time that NAP has any interest in the property.  And

6    again, it's undisputed that at the end of January of 2019,

7    when the ground lease expired, so did the sandwich lease.

8    The sandwich lease and the ground lease were designed to run

9    coequally with -- run during the same period of time with

10   one another.

11           So Transform has not made an argument and I do not

12   understand how a subtenant -- an entity whose interest is

13   through this sandwich lease -- that's their interest in the

14   property.  Why don't they have to follow that lease if

15   they're amending or modifying the Kmart lease when the Kmart

16   lease is clearly reflected, clearly called a sublease --

17           THE COURT:  Well, that part I don't --

18           MS. WILLIAMS:  -- in Schedule 1.2.

19           THE COURT:  -- buy.  I guess, what is your

20   response to that point?

21           MR. LEVANDER:  To be described as a sublease?

22           THE COURT:  No.  No.  Not that point.  But the

23   fact that the party to -- the landlord party to the second

24   amendment to the Kmart lease does not have title as landlord

25   to that lease based on an absolute assignment.

Page 44

1           MR. LEVANDER:  So I guess I would --

2           THE COURT:  You need to just stand up when you --

3           MR. LEVANDER:  Sure.

4           I would turn the Court's attention first to tab 16

5    of the binder which this is just a description of the leases

6    themselves.  But this is a letter from NAC to Kmart that

7    says -- and this is describing the sandwich lease:  "By

8    double assignment of lease from Nineteenth Asheville Corp.

9    to Asheville KM and from Asheville KM to Nineteenth

10   Asheville Corp., we arrive at the same landlord as

11   heretofore and all correspondences, notices and rent

12   payments will continue to be forwarded as follows."

13          So I think that makes clear that the assignment --

14   that there is associated with the sandwich lease a double

15   assignment by which the landlord interest, the interest as

16   assignee of the fee owner, as landlord, is still with NAP.

17   And I think -- again, so the sandwich lease itself -- so

18   that's tab 15 -- can't be read alone.  There are three other

19   -- there are three assignments that go along with it.  So

20   there's an assignment of -- so NAC assigns to Asheville KM

21   the ground lease, an assignment.  That's in tab 11 in your

22   binder.  And then NAC assigns the Kmart lease along with

23   three others to Asheville KM.  That's tab 12.  And then in

24   tab 14, you have Asheville KM assigning back to NAP the

25   Kmart lease.  So NAC remains the assignee as landlord under

Page 45

1    the Kmart lease beyond 1975.

2            THE COURT:  Where's the assignment back?  Which

3    document?

4            MR. LEVANDER:  It's tab 14, Your Honor.

5        (Pause)

6            MR. LEVANDER:  And there's a reference --

7            THE COURT:  This assumes all of the obligations of

8    the landlord thereunder.  Right?  NAC assumes all the

9    obligations of the landlord thereunder, in tab 14, which

10   would include the obligation to provide the renewal?

11           MR. LEVANDER:  To provide --

12           THE COURT:  It's an absolute assignment, in other

13   words, of the lease.

14           MR. LEVANDER:  Of the Kmart lease.

15           THE COURT:  Yeah.  An absolute assignment of the

16   Kmart lease.  Right, that's what it is.  Is there any

17   dispute that tab 14 is an absolute assignment of the Kmart

18   lease and the assumption by the assignee of all the

19   obligations of the landlord thereunder?

20           MS. WILLIAMS:  Is that directed at me?  I'd like

21   to --

22           THE COURT:  I said it generally to both of you.

23           MS. WILLIAMS:  I'd like --

24           THE COURT:  Is there any disagreement about that?

25           MS. WILLIAMS:  Well yes -- well what I would say

Page 46

1    about tab 14 is that it was entered into in connection -- at

2    the -- on the very same day and in connection with the

3    sandwich lease.  And again --

4              THE COURT:  But it's an absolute -- I mean I'm

5    going back to the case law I cited originally where various

6    parties try to get out of obligations that they have because

7    they argue that they're not in privity with a landlord or an

8    assignor party who assigned to their direct privity party,

9    and the Carolina courts repeatedly say, going back to 1909

10   at least, that if there's been an as absolute assignment you

11   do have the privity and it's -- you're bound.

12             MS. WILLIAMS:  And Your Honor, I'm going to --

13             THE COURT:  Can I just say one more thing?

14             MS. WILLIAMS:  Of course.

15             THE COURT:  If it was less than that, if it was --

16   if the assignment of the lease was less than the full lease

17   wouldn't there have been an obligation to notify Kmart and

18   Kmart would have had rights under its lease at that point

19   because it would have been effecting its rights and who it

20   dealt with, who it paid rent to, who had the right to call a

21   default and all of those things?  Which is why they probably

22   sent the notice in tab 16.

23             MS. WILLIAMS:  Well --

24             THE COURT:  It -- this is -- I mean you're talking

25   about changing fundamental rights with respect to a contract

Page 47

1    that's already in existence, and I just -- I think that's

2    why the courts adopt this policy.

3              MS. WILLIAMS:  And Your Honor, my counter to that

4    would be that Transform is talking about altering the

5    fundamental property rights of the fee simple owner --

6              THE COURT:  All right.  But that's --

7              MS. WILLIAMS:  If I could --

8              THE COURT:  -- only assuming that I'm wrong, but

9    you haven't answered my question as to why I'm wrong on that

10   point.

11             MS. WILLIAMS:  Right.  Well I have -- I want to

12   make two points.

13             THE COURT:  Okay.

14             MS. WILLIAMS:  First is just specific to this

15   lease.  I'm not aware of anything in the Kmart lease that

16   would require it -- that would entitle it to get notice of

17   any of these transactions with respect to the ground lease.

18             But my point about this assignment at tab -- at

19   Joint Exhibit 14 is that it's executed on the same day as

20   the sandwich lease, and why on earth would they even have a

21   sandwich lease if they're going to turn around and ignore it

22   and say that this assignment authorizes NAC and its

23   successors to do as it pleases with the subleases when the

24   sandwich lease is very clear, don't modify it without our

25   consent?

Page 48

1            THE COURT:  Well first of all when you say don't

2      modify the lease already has the renewal provisions in it,

3      right?

4            MS. WILLIAMS:  Not in 1975 --

5            THE COURT:  Not in 1992.

6            MS. WILLIAMS:  Yes.

7            THE COURT:  Where it was the second amendment.

8            MS. WILLIAMS:  Right.

9            THE COURT:  I understand.

10           MS. WILLIAMS:  Yep.

11           THE COURT:  Where they increased the rent.

12           MS. WILLIAMS:  And you know, I mean -- look, Your

13     Honor, our contention is that the '92 document effectively

14     operates as a brand new agreement between NAP and Kmart.  It

15     changed the rent, it changed the dimensions, it changed the

16     terms, it put -- NAP agreed to do some things under it, and

17     so yes, we view that functionally speaking as a sublease, an

18     agreement between NAP and Kmart to which the fee owners at

19     the time were not a party, were not provided notice, and

20     there was never even recordation of it despite the fact that

21     it purports to extend the term out, which is very odd under

22     North Carolina law, I have to say the fact that nothing was

23     recorded.

24           I will say that the other thing that I wanted to

25     point out about the recorded assignments, the assignments of

1   the ground lease that were recorded in the public registry,

2   they all have the same granting and have and to hold

3   language that I pointed the Court to as being so important

4   under North Carolina law.  They all say to have and to hold

5   from the date of the assigned to the rest of the years

6   mentioned in the indenture of the lease as amended.

7           So again, in my view that points to limiting the

8   rights of whoever the tenant is ground lease to the term of

9   the ground lease itself.

10          THE COURT:  But aren't you just then assuming away

11  the case law on that absolute assignment?

12          MS. WILLIAMS:  Your Honor, I think the case law on

13  the absolute assignments, I just don't see it applying in

14  the same way that the Court sees it, because those

15  assignments, as I'm remembering, and I might be

16  misremembering, they don't come in the context of a ground

17  lease that's limit to do a term of --

18          THE COURT:  I'm sorry, go ahead.

19          MS. WILLIAMS:  I mean I apologize if I'm

20  misremembering the facts there, but I don't think those

21  assignments come in the context of a ground lease that's

22  limited to a term of years and that has other limitations on

23  here's what you can do with it.

24          It -- I mean I agree that if I'm leasing an

25  apartment from you and the lease allows and it assign my

Page 50

1    tenancy to Mr. Goodman, Mr. Goodman is then your tenant and

2    I'm out of it.  But that's not this situation.

3         This situation is if you lease me the apartment

4    for a long period of time and you give me -- you say look,

5    you can do what you like with the apartment subject to these

6    conditions, but your ability to rent the apartment ends

7    absolutely in six months, I can't give Mr. Goodman more than

8    what comes to the end of my term, and that's what those --

9    the cases talking about what estate are you granting the

10   grantee?  Whether it's -- we cite the Williams case, which

11   is a life tenant who grants an easement to a power company,

12   but the easement ends when the life tenant dies.  The East

13   Town case is a more classic sublease situation.  But the

14   concept of you can't give more than you have.  And in this

15   context --

16        THE COURT:  But I'm sorry, but if the -- if you

17   give him the whole lease then the lessor has the right to

18   operate under the lease.

19        MS. WILLIAMS:  And under that reading of the

20   ground lease that would mean that the ground lease tenant

21   could operate the lease forever even when the ground lease

22   is over.

23        THE COURT:  With that full assignment with no

24   reservations I think that's right.

25        MS. WILLIAMS:  And that is --

1          THE COURT:  If the extensions are granted as per

2     the lease.

3          MS. WILLIAMS:  And that is -- per which lease?

4          THE COURT:  The Kmart lease.

5          MS. WILLIAMS:  So -- and to my mind that is

6     utterly inconsistent with the granting and the have and to

7     hold, and that is where those older cases would say the have

8     and to hold limitations trump, if you will, the assignment

9     language.

10          THE COURT:  Okay.  Well --

11          MS. WILLIAMS:  I think that I have -- the Court

12     has been very patient with me to move through those

13     arguments.  There are a few, assuming that the Court -- I'll

14     make one more pitch for my sandwich lease argument, Your

15     Honor.

16          I don't see how you can violate the sandwich lease

17     and bind the fee owner, but I would -- there are a couple of

18     other aspects of 365 that I need to just get on the record

19     if I can.

20          THE COURT:  Okay.

21          MS. WILLIAMS:  The adequate assurance of future

22     performance, I think we've mentioned to the Court that we

23     have three clients in this case and we had asked for

24     information about the adequate assurance package.  It was

25     provided to us.  We have a client -- and I understand where

1    the Court has ruled on this before -- who -- we've got a

2    couple of issues with the package.

3            First we've asked Transform to identify who the

4    ultimate tenant is going to be.  We all understand the store

5    has been dark since January.  Transform isn't going to run a

6    store there.  We don't know who our tenant is going to be,

7    and we don't -- we contend that you can't have adequate

8    assurance of future performance if you don't know who's

9    going to be in the space.  Having a dark --

10           THE COURT:  Well I could understand that to the

11   extent that not financial performance I guess but other

12   types of covenants.  Is that what you're focusing on?  I

13   mean if Transform is on the hook of the Transform entity

14   then it's not financial performance you're talking about?

15           MS. WILLIAMS:  It's both, Your Honor.  In part

16   because -- we'll talk about Transform in this --

17           THE COURT:  Well let me put it differently.  Why

18   would you care about the financial wherewithal of the

19   prospective tenant if that's just an add-on to Transform's

20   own ability to make the payments?

21           MS. WILLIAMS:  The concerns that we have about

22   Transform's ability to make the payments is that we haven't

23   gotten any updated financial information.  They're

24   continuing to send out that same one-page balance sheet that

25   we've represented other landlords that we've seen for

Page 53

1     several months now, and it seems as if there must be some

2     2019 operating information, and we don't know how they're

3     doing.

4             THE COURT:  Okay.  I understand that.

5             MS. WILLIAMS:  Second, the guarantee that's --

6             THE COURT:  I thought you were going in a

7     different direction, which is we need to see the financials

8     of the new -- you know, the ultimate new tenant, which I

9     think is a different -- but I understand that, your update

10    point.

11            MS. WILLIAMS:  Yes.  And the guarantee that we've

12    been shown does not require the guarantor to pay the

13    landlord's reasonable attorneys' fees, which is a standard

14    provision in lease guarantees, and they could make it very

15    expensive if they wanted to to make us chase them if either

16    there is no tenant ever or the ultimate tenant defaults.

17    And it also requires us to come to New York, which we don't

18    think is appropriate for a North Carolina lease guarantee.

19            With respect to not knowing who this tenant is

20    going to be, we do have some concerns about non-monetary

21    issues, and this leads a little bit into cure rights, Your

22    Honor.

23            The space has been dark since January, the client

24    has been getting calls and threats -- or citations from the

25    fire marshal in Buncombe County.  It took a great deal of

Page 54

1    effort to find someone at Kmart who I think has been dealing

2    with the fire marshal, but we haven't been able to get into

3    the space to see what's going on with it.

4           We've had experience with Kmart in other stores,

5    in fact in Asheville where it turns out all of the HVAC

6    units were leaking gas and Kmart never --

7           MR. BAREFOOT:  Your Honor, I'm just going to

8    object.  Is counsel testifying?  This is factual issues

9    about another lease that we've never heard before.  I just

10   don't think it's appropriate from a hearsay perspective.

11          THE COURT:  So what are you looking for, you're

12   looking for reasonable access?

13          MS. WILLIAMS:  So well we are for the record --

14          THE COURT:  Don't you have that under the lease

15   already?

16          MS. WILLIAMS:  We tried to get in when the fire

17   marshal was threatening --

18          THE COURT:  No, I'm sorry, reasonable access from

19   Transform, the lease that's being assigned.

20          MS. WILLIAMS:  If we do then they're not following

21   the lease, because we asked for access and we were denied.

22          THE COURT:  Okay.  All right.

23          MS. WILLIAMS:  The -- Your Honor, what I'm doing

24   for the record is I'm objecting to the adequate assurance

25   that we've been given for the reasons that I've stated.

Page 55

1                    THE COURT:  All right.  So it would be a

2       reasonable update and reasonable access to determine, you

3       know, deteriorating conditions, fire safety, et cetera?

4                    MS. WILLIAMS:  Some assurance that whoever the

5       tenant is going to be is going to upkeep the space and not

6       have --

7                    THE COURT:  Okay.

8                    MS. WILLIAMS:  -- a dangerous situation or get us

9       in trouble with the fire marshal.

10                   THE COURT:  Well although --

11                   MS. WILLIAMS:  And --

12                   THE COURT:  -- they have a guarantee, I'm assuming

13      that that's pretty reasonable assurance.

14                   MS. WILLIAMS:  Well I mean the provision of the

15      guarantee really, as someone who enforces guarantees all the

16      time, if you're going to make it expensive for your landlord

17      to chase you --

18                   THE COURT:  I understand that.

19                   MS. WILLIAMS:  Okay.

20                   THE COURT:  I understand that.

21                   MS. WILLIAMS:  And the North Carolina rather than

22      New York point.

23                   I think we're reserving our rights on cure amount.

24                   MR. BAREFOOT:  Your Honor, that's consistent with

25      the order that we've proposed and the order that you've

1      entered.

2                  THE COURT:  Okay.

3                  MR. BAREFOOT:  All of their rights are reserves

4      and we will escrow the undisputed -- the disputed amounts.

5                  THE COURT:  All right.  Although I couldn't tell

6      from the objection whether the only cure issue was the money

7      that -- the two checks that weren't cashed.  Is there other

8      cure?

9                  MS. WILLIAMS:  Well --

10                 THE COURT:  It may be because you don't know the

11     interior of the --

12                 MS. WILLIAMS:  We --

13                 THE COURT:  -- you haven't been inside to know if

14     there's something that's happened --

15                 MS. WILLIAMS:  Yeah -- well yes --

16                 THE COURT:  -- to the property?

17                 MS. WILLIAMS:  -- Your Honor, there's -- very

18     briefly.  There's three issues, we can work this out later.

19     But the checks that have been sent are made out incorrectly

20     so they can't be cashed any way.

21                 THE COURT:  Okay.

22                 MS. WILLIAMS:  And we need to get our client

23     directly in touch with someone so that they don't continue

24     to run up attorneys' fees on this.  It's very expensive for

25     them to have to come through us for every issue.

Page 57

1           This is a triple net lease, we don't know whether

2    Kmart has paid the property taxes.  Presumably we can work

3    all that out to make sure that we're not going to be left

4    with property taxes not paid.

5           THE COURT:  Okay.

6           MR. BAREFOOT:  Your Honor, I can represent all of

7    those issues rights are fully reserved --

8           THE COURT:  Okay.

9           MR. BAREFOOT:  -- on both sides --

10          THE COURT:  All right.

11          MS. WILLIAMS:  Okay.

12          MR. BAREFOOT:  -- and consistent with all the

13   other leases we'll duly reconcile them.

14          THE COURT:  That's fine.

15          MS. WILLIAMS:  And the -- well we've talked about

16   the fact that we can't get in so we don't no whether there's

17   other problems.

18          THE COURT:  Okay.  So do you want to just respond

19   on that -- on those points on the issues with the guarantee,

20   whether you're prepared to provide some information on a

21   prospective tenant and access -- reasonable access?

22          MR. BAREFOOT:  Yes, Your Honor.  For the record

23   Luke Barefoot from Cleary Gottlieb.

24          Your Honor, on the points on amendments to the

25   guarantee this is the first time we've heard those requests,

1      they all seem perfectly reasonable, and subject to

2      documentation I'm happy to make those amendments to the

3      guarantee.

4               THE COURT:  Okay.  All right.

5               MR. BAREFOOT:  On the issue of adequate assurance,

6      candidly, Your Honor, this is really untimely.

7               We've exchanged discovery, we've had depositions,

8      at no point have there been any discovery requests, informal

9      or formal, for any updated add I can't tell assurance

10     information.  This is I understand somewhat stale, but

11     that's by virtue of the adjournments that the parties have

12     requested to have this heard in this fashion.

13              I don't think it's appropriate to further adjourn

14     assignment of the lease.

15              THE COURT:  Well has there been any material

16     adverse change?

17              MR. BAREFOOT:  Not that I'm aware of, Your Honor.

18              THE COURT:  Can that be represented?

19              MR. BAREFOOT:  Not that I'm aware of, Your Honor.

20              THE COURT:  Can that be represented by some

21     business person?

22              MR. BAREFOOT:  Your Honor, I'd have to speak with

23     my client, but I really think the time for assignment of

24     this lease has come.  They've put all their eggs in this

25     basket, and it's a little unfair at the hearing when this

Page 59

1    was not subject to discovery at all to suddenly raise a new

2    issue and have a whack a mole that we're never going to just

3    get this lease assigned.  Which I know is what they want to

4    avoid, but I think it's what we're entitled to.

5            The cure issues I can again represent we are fully

6    reserved on the rights there, and I will work with counsel

7    to put them in touch with a business person promptly.  I

8    think those discussions have not been happening because we

9    haven't gotten through this threshold issue.

10           THE COURT:  Okay.  All right.  Well you know what,

11   I -- this has been put off a couple of times and I certainly

12   didn't have a sense that there was an adequate assurance

13   issue on the financial end, so I agree with that point.

14           The other points you've represented what the

15   client is willing to do.

16           So do you have anything to say in response to any

17   of the other arguments on the asserted termination of the

18   lease?

19           MR. LEVANDER:  I can brief and I can answer any

20   questions that Your Honor has.

21           THE COURT:  Please stand up, yeah.

22           MR. LEVANDER:  So just very quickly.

23           THE COURT:  In California, they sit down.  I don't

24   know if you're from California, but anyway --

25           MR. LEVANDER:  Just very quickly, Your Honor.  The

Page 60

1    second amendment, at tab 23, it's very clear that that's in

2    NAP's capacity as it's assignees landlord, that's very clear

3    in the recitals to that document.

4              Responding to the point about the granting and

5    habendum clause.  Those cases that are being cited from

6    North Carolina from before the 1960s there's generally some

7    kind of contrary provision.  So there's a fee simple

8    interest and then there's a life estate in the body of the

9    document.  There's nothing contrary here, those cases don't

10   identify --

11             THE COURT:  Because the assignment is separate --

12             MR. LEVANDER:  That's correct.

13             THE COURT:  -- of the lease.

14             MR. LEVANDER:  Exactly.

15             And then finally on the absolute assignment

16   question that Your Honor asked, yes, those are all absolute

17   assignments.  The 1975 assignment from Asheville KM to NAP

18   is also an absolute assignment, just to make that clear for

19   the record.

20             THE COURT:  Okay.

21             MR. LEVANDER:  And if there are any questions, I'm

22   happy to answer them.

23             THE COURT:  Okay.  All right.

24             I have before me an objection by what has been

25   referred to as the Bruce Trusts, which is the -- which are

Page 61

1      the fee simple owners of real property located at 1001

2      Patton Avenue in Asheville, North Carolina, to the

3      assumption and assignment under Section 365 of the

4      Bankruptcy Code of a lease of that property to Transform

5      Holdco, the buyer, or its designee, under the asset purchase

6      agreement that the Court has previously approved.

7              The lease in question was originally entered into

8      on December 18, 1964 between S.S. Kresge Company,

9      predecessor to Kmart, as tenant, and Patton Avenue

10     Development Corporation, PADC, as landlord for the lease of

11     the property and the store that PADC agreed to construct on

12     the property.

13             The lease was for a term of 20 years and gave the

14     tenant the right to extend for 3 more consecutive terms,

15     each having 5 years that would run through January therefore

16     31, 2001.

17             I have the exhibits pertaining to this lease

18     admitted into evidence, as well as certain other exhibits,

19     and the witness for the Bruce Trusts deposition designations

20     in evidence.  They are Exhibits 1 through 45.

21             As far as the transaction documents are concerned,

22     they reflect a first amendment to the Kmart lease in

23     August 27, 1965, which made it clear that the lease would be

24     binding on the landlord, including its assignees as defined

25     in paragraph 1 thereof, and all subsequent amendments to the

Page 62

1    lease also make it clear that it's binding on the parties,

2    including the landlord and their assignees or vendees.

3              In February 1966, PADC conveyed its interest in

4    the underlying real property to another entity called GK,

5    Inc. which then conveyed its interest to Martin and Silvia

6    Bruce.  That same day the Bruces and Patton Plaza Associates

7    entered into an agreement that assigned Patton Plaza

8    Associates or PPA, all right, title, and interest of the

9    landlord in and to all leases now in effect covering the

10   demised premise, including the -- which included the Kmart

11   lease.  See Section 1307 of that agreement.  And gave PPA a

12   ground lease -- a 30-year ground lease with three renewal

13   terms of 23 years each on a 99-year maximum term with annual

14   rent from the Bruces.

15             In November of 1969, PPA assigned its interest in

16   the ground lease and assignment to Nineteenth Asheville

17   Corp. or NAC.

18             The important point though is with respect to the

19   1966 transaction.  Whereas the landlord under the Kmart

20   lease and the fee owner of the property were the same when

21   the lease was first entered into in February 1966, the

22   landlord became different from the fee owner of the ground

23   lease of the -- the fee owner of the real property and the

24   landlord of the ground lease.  However, at that time, and as

25   recognized in the transaction documents between PADC and --

Page 63

1    I'm sorry -- between PPA and the Bruces, the Kmart lease was

2    absolutely assigned in full to PPA.

3           Since that time that lease has continued to be

4    assigned in full by its terms.  It has now gone through a

5    number of such assignments, and importantly was amended in

6    March of 1992 by Kmart and the assignee of the Kmart lease

7    to extend the term of the lease, that is, the Kmart lease,

8    through with renewals 2032.

9           There was a third amendment also between NAP and

10   Kmart on May 23, 2017 that split the renewals into two

11   different periods, but the net effect is to extend it, if

12   the renewal options are exercised by the tenant, through

13   2032.

14          The fee title and status as landlord under the

15   ground lease and the ground tenant have also changed over

16   the years.  The Bruce Trusts are currently the fee owners

17   and landlord is under the ground lease.

18          I believe it's acknowledged by both sides that the

19   ground lease itself has expired earlier this year.

20          The Bruce Trusts contend that, at a minimum,

21   because of the termination of the ground lease, there is no

22   Kmart lease to be assigned; that is, the Kmart lease is

23   subject to the ground lease as, in effect, a sublease under

24   the ground lease.  And under well-established law, which I

25   don't believe Transform Holdco disputes, upon termination of

Page 64

1    the head lease, which would here be the ground lease or the

2    main lease, which again would be the ground lease, a

3    sublease of that property would itself terminate since a

4    subtenant has no more rights than it obtains through its

5    landlord.  And if its landlord's right to the property has

6    ended, the subtenancy would cease, subject to equitable

7    doctrines and the like.

8              The problem with this argument, however, is that

9    here the Kmart lease preceded the ground lease and the

10   transaction between PPA and the Bruces.  The Kmart landlord

11   and the ground landlord, respectively, predecessor --

12   predecessors, excuse me.

13             Moreover, not only was the ground lease subject to

14   the Kmart lease but, as I noted earlier, the PPA Bruce

15   agreement provides for the complete assignment of the Kmart

16   lease to PPA, which then has continued to be completely

17   assigned throughout its existence.

18             Under those circumstances, under the laws of North

19   Carolina, which the parties agree applies here, privity of

20   the estate is created between the original lessor and

21   assignee.  And therefore, I conclude that the parties to the

22   amendments to the Kmart lease, in fact, had the authority to

23   amend those documents as per the agreements between them,

24   which would have the effect of extending the term through,

25   if the renewals are exercised, 2032.

Page 65

1          The assignment reserved no interest in the Kmart

2    lease and it never was therefore a sublease.  The only

3    exception to that rule is if the assignor retained any

4    remaining interest in the lease, and I conclude based on the

5    documents between the parties that that was not the case.

6          As we went through during oral argument, the Bruce

7    Trusts have argued that various provisions of Article 13 of

8    the ground lease and assignment put restrictions on the

9    assignment and ability to modify the lease, that is the

10   Kmart lease, but I conclude that, as I said during oral

11   argument, the restrictions apply to true subleases or future

12   subleases of the Asheville premise and that, in fact, the

13   amendments to the lease are consistent with the permitted

14   changes under Section 1310 of the lease in that they

15   extended the term and did not decrease the rent payable.  In

16   fact, the 1992 assignment materially increased the rent

17   payable.  See, generally, Northside Station Associate

18   Partnership v. Maddry, M-A-D-D-R-Y, 105 N.C. App. 384, 413

19   S.E.2d 319 (N.C. Ct. App. 1992), Kmart Corp. v. Guastello,

20   2008 N.C. App. LEXIS 1005 at pages 9 through 10 -- I'm sorry

21   -- 9 through 12, N.C. App., as I said, May 20 of 2008.  And

22   see, generally, although this doesn't deal with real

23   property leases but rather contract rights, Rose v. Vulcan

24   Materials Co., 282 N.C. 643, 194 S.E.2d 521, (Sup.Ct. N.C.

25   1973) at North Carolina Reporters 661 through 663.

1          To be contrasted with these facts is Neal v. Craig

2    Brown, Inc., 86 N.C. Ct. App. 157, 356 S.E.2d 912 (N.C. Ct.

3    App. 1987) at N.C. Ct. App. pages 162 through 163.

4          One can alternatively rule that given the absolute

5    assignments the landlords under the Kmart leases had actual

6    authority as well as apparent authority under North Carolina

7    law to enter into those agreements, that is the amendments

8    that extended the ultimate term of the lease through 2032.

9    See, generally, Hogue v. Cruise (ph), 812 S.E.2d (1915) and

10   Walker v. Sloan, 429 S.E.2d 236, 243 through 44, North

11   Carolina -- (N.C. App. 2000).

12         I say this notwithstanding the recordation of the

13   ground lease, given the terms of the ground lease, and the

14   assignment therein of the underlying Kmart lease.  So I will

15   deny the objection.

16         As far as the other part of the objection

17   pertaining to -- I'm sorry -- I'll deny that portion of the

18   objection that's premised on the lease having terminated.

19         As far as the remaining portion of the objection,

20   the only part that has not been resolved on the record is

21   the request by the Bruce Trusts for additional financial

22   disclosure by Transform Holdco from that disclosure that had

23   previously been provided at this point a couple of months

24   ago.  Given the length of time that this matter has been

25   pending, the discovery that's taken place, and the fact that

Page 67

1    that request was made for the first time in oral argument

2    today, I believe it's too late.

3            The basis for objecting on grounds of adequate

4    assurance under Section 365 needs to lay out some rationale

5    where adequate assurance has already been offered, or a form

6    of adequate assurance has already been offered.  If, in

7    fact, it had been made timely, the buyer of Transform Holdco

8    could have considered it, and consistent with what it has

9    done so far in this case, in all likelihood, it would have

10   provided some form of information to the Bruce Trusts.  But

11   it's not in a position to do that today.  Its client isn't

12   here, it hasn't considered the issue, and it's under a

13   deadline to move forward under 365(d)(4).  So for all of

14   those rules I'll overrule that portion of the adequate

15   assurance objection.

16           So I think you're going to have to mark up the

17   order slightly to deal with the guarantee point and maybe

18   the access point, unless that's already in the lease, and

19   then you can email it to chambers.  You don't need to

20   formally settle it on counsel for the Bruce Trusts, but you

21   should provide it to them before you send it into chambers.

22           MS. WILLIAMS:  Your Honor, could I -- one

23   technical clarification?  On the evidence that's before the

24   Court, there's also the declaration of Mr. Bruce, which is

25   4091, which was effectively his direct and then the depo was

Page 68

1      the cross.

2                THE COURT:  Well, I understood we were just going

3      with the depo though.  Are we going with his declaration,

4      too?

5                MR. BAREFOOT:  Your Honor, it was our

6      understanding that would be his direct testimony --

7                THE COURT:  With?

8                MR. BAREFOOT:  -- consistent -- his declaration --

9                THE COURT:  His declaration.

10               MR. BAREFOOT:  -- would be his direct testimony --

11               THE COURT:  That's fine then.

12               MR. BAREFOOT:  We have no objection to its --

13               THE COURT:  I have no problem with that.

14               MR. BAREFOOT:  -- admission.

15               MS. WILLIAMS:  Thank you.

16               THE COURT:  That's fine.

17          (Declaration of Mr. Bruce received in evidence)

18               MR. BAREFOOT:  And Your Honor, we will work with

19     counsel on the name to submit a consensual order as soon as

20     possible, and in any event before the July 8th 365(d)(4)

21     deadline.

22               THE COURT:  Okay.

23               MS. WILLIAMS:  And I guess the only thing that --

24     the only other thing we wanted to say on the record, because

25     I'm not sure how the form orders have been working in this

Page 69

1        case, but we're -- we want to preserve our right to

2        appeal --

3                    THE COURT:  Oh, yeah, that's --

4                    MS. WILLIAMS:  We're not --

5                    THE COURT:  You don't need to --

6                    MS. WILLIAMS:  We're not agreeing to the waiver of

7        the stay --

8                    THE COURT:  That's fine.

9                    MS. WILLIAMS:  -- the 14-day stay.  Thank you,

10       Your Honor.

11                   MR. BAREFOOT:  Well, Your Honor, there just might

12       be a time issue there.

13                   THE COURT:  Well, as far as -- if you're going to

14       be relying on 365(d)(4), I will waive the stay to the extent

15       that it interferes with that.  I mean --

16                   MR. BAREFOOT:  Or we'd be happy for them to grant

17       an additional extension --

18                   THE COURT:  Right.  That's why I prefaced it by

19       saying if you're going to rely on 365(d)(4) as running.

20       Then clearly there's cause to waive the stay before it runs.

21                   MS. WILLIAMS:  And remind me, that deadline is

22       the --

23                   MR. BAREFOOT:  July 8th.

24                   MS. WILLIAMS:  -- 8th?  I only have half of my

25       client here, Your Honor, so we'll connect on that, and --

Page 70

1                THE COURT:  All right.  But in any event --

2                MS. WILLIAMS:  -- if it becomes an issue --

3                THE COURT:  -- I'll waive it --

4                MR. BAREFOOT:  To the extent --

5                THE COURT:  -- through July 7th, yeah, or to the

6       extent required, so it would run one day before -- even if

7       it's extended it would run one day before the expiration.

8                MR. BAREFOOT:  Depending on when we can get the

9       order submitted, but --

10               THE COURT:  Right.

11               MR. BAREFOOT:  -- hopefully we'll work this out

12      and that won't be an issue, Your Honor.

13               THE COURT:  Okay.  Very well.

14               MR. BAREFOOT:  That's the entirety of the agenda

15      for today, Your Honor.

16               THE COURT:  Okay.  Thank you.

17               MR. BAREFOOT:  Thank you, Your Honor.

18          (Whereupon, these proceedings were concluded at 3:56

19      p.m.)

20

21

22

23

24

25

```
 1                    I N D E X

 2

 3                  R U L I N G S

 4

 5    DESCRIPTION                          PAGE     LINE

 6    Objection of Bruce Trusts to assumption and    66       15

 7      assignment of a lease of that property to

 8      Transform Holdco, or its designee, under

 9      an asset purchase agreement overruled     67       15

10    Objection of Bruce Trusts on grounds of

11      adequate assurance under Section 365

12      overrule

13

14                  E X H I B I T S

15

16    NO.        DESCRIPTION                ID.     EVID.

17    ---        Joint Transform Holdco's and    ---       7

18               Bruce Trusts' exhibits

19    ---        Declaration of Paul Bruce on    ---      68

20               behalf of Bruce Trusts

21

22

23

24

25
```

Page 72

1                    C E R T I F I C A T I O N

2

3        We, Lisa Beck and Dawn South, certify that the foregoing

4        transcript is a true and accurate record of the proceedings.

5        **Lisa Beck**    Digitally signed by Lisa Beck
                           DN: cn=Lisa Beck, o, ou,
                           email=digital@veritext.com, c=US
6        _____   Date: 2020.03.03 10:06:14 -05'00'

7        Lisa Beck

8        **Dawn South**   Digitally signed by Dawn South
                           DN: cn=Dawn South, o, ou,
                           email=digital@veritext.com, c=US
9        _____   Date: 2020.03.03 10:06:27 -05'00'

10       Dawn South

11       Certified Electronic Transcriber

12

13

14

15       Date:   June 30, 2019

16

17       Veritext Legal Solutions

18       330 Old Country Road

19       Suite 300

20       Mineola, NY 11501

21

22

23

24

25

| & | | | |
|---|---|---|---|
| **&**  3:18 4:5 | **15**  44:18 71:6,9 | **2017**  63:10 | **40**  7:22 |
| **0** | **157**  66:2 | **2018**  8:16 9:2 | **4028**  2:8 |
| **01**  16:25 | **16**  44:4 46:22 | **2019**  1:20 7:25 9:5 | **4091**  2:7 36:17 |
| **1** | **162**  66:3 | 9:6 10:22 16:3 | 67:25 |
| **1**  61:20,25 | **163**  66:3 | 17:16 22:18 43:6 | **4092**  2:8 |
| **1.2**  39:1,1 | **17**  8:3 9:2 | 53:2 72:15 | **4094**  2:8 |
| **1.2.**  43:18 | **1774**  2:8 | **2032**  63:8,13 | **41**  5:6 |
| **1/1/68**  18:11,23 | **18**  61:8 | 64:25 66:8 | **413**  65:18 |
| **10**  6:25 21:21 | **18-23538**  1:4 | **23**  60:1 62:13 | **42**  8:13 15:18 |
| 26:14 65:20 | **18.09**  33:18,21 | 63:10 | **429**  66:10 |
| **10006**  3:21 | 35:10 | **236**  66:10 | **44**  66:10 |
| **1001**  7:11 61:1 | **18.09.**  33:24 | **243**  66:10 | **45**  5:11,12 6:10,14 |
| **10022**  3:5 | **1909**  23:12 46:9 | **248**  1:17 | 61:20 |
| **1005**  65:20 | **1915**  66:9 | **2507**  2:8 | **5** |
| **104**  8:10 | **194**  65:24 | **27**  1:20 61:23 | **5**  20:2 61:15 |
| **105**  65:18 | **1948**  18:18 | **282**  65:24 | **521**  65:24 |
| **10601**  1:18 | **1960s**  15:13 60:6 | **28202**  3:14 | **6** |
| **11**  44:21 | **1964**  7:13,16 9:6 | **2881**  2:8 | **64**  16:24 |
| **11501**  72:20 | 61:8 | **2:14**  1:21 | **643**  65:24 |
| **12**  32:24 44:23 | **1965**  61:23 | **3** | **66**  32:21 33:1 71:6 |
| 65:21 | **1966**  7:18 9:7,18 | **3**  61:14 | **661**  65:25 |
| **13**  19:6,21 20:6 | 17:18 19:2 23:9 | **30**  8:19 15:18,18 | **663**  65:25 |
| 21:16 26:5 28:3 | 24:24 37:18 39:23 | 62:12 72:15 | **67**  71:9 |
| 28:18 30:17 65:7 | 62:3,19,21 | **300**  1:17 72:19 | **68**  71:19 |
| **13.0**  20:19 | **1968**  18:3 | **3008**  2:8 | **7** |
| **13.01**  20:14 21:21 | **1969**  33:2 62:15 | **301**  3:12 | **7**  33:2 39:2 71:17 |
| **13.03**  25:23 26:9 | **1973**  65:25 | **31**  61:16 | **7th**  70:5 |
| 27:13 | **1975**  9:8 45:1 48:4 | **319**  65:19 | **8** |
| **13.03.**  27:2,17 | 60:17 | **330**  72:18 | **8**  8:19 |
| **13.07**  22:5,8,21 | **1980**  18:7 | **3400**  3:13 | **80**  34:18 |
| 33:11 | **1987**  66:3 | **3421**  2:8 | **812**  66:9 |
| **13.07.**  28:15,18 | **1992**  7:20 8:10,17 | **356**  66:2 | **86**  66:2 |
| **13.10**  27:19,20,25 | 8:21 38:20 40:5 | **36**  13:12 | **875**  3:4 |
| **13.10.**  28:1 33:11 | 41:19 42:16 48:5 | **365**  4:18 13:13 | **8th**  68:20 69:23 |
| **13.12**  30:15 | 63:6 65:16,19 | 51:18 61:3 67:4 | 69:24 |
| **13.12.**  32:8 | **1st**  18:2 | 67:13 68:20 69:14 | **9** |
| **1307**  9:22 62:11 | **2** | 69:19 71:11 | **9**  65:20,21 |
| **1310**  65:14 | **20**  61:13 65:21 | **384**  65:18 | **912**  66:2 |
| **14**  44:24 45:4,9,17 | **2000**  66:11 | **3868**  2:8 | **92**  16:25 20:25 |
| 46:1 47:19 69:9 | **2001**  7:24 8:1,9 | **4** | 25:7 48:13 |
|  | 16:9 61:16 | **4**  4:18 67:13 68:20 |  |
|  | **2008**  37:18 65:20 | 69:14,19 |  |
|  | 65:21 |  |  |

**99**   22:11 62:13

**a**

**ability**   19:8 20:18
  21:3 22:2 28:4
  34:21 35:4 50:6
  52:20,22 65:9
**able**   54:2
**absolute**   10:14
  11:8,13 19:12
  24:3 28:16 41:2,9
  43:25 45:12,15,17
  46:4,10 49:11,13
  60:15,16,18 66:4
**absolutely**   39:22
  42:6 50:7 63:2
**absurd**   8:1
**access**   54:12,18
  54:21 55:2 57:21
  57:21 67:18
**accurate**   72:4
**acknowledged**
  63:18
**acting**   41:16,17
**actual**   11:18
  25:18 66:5
**add**   31:5 52:19
  58:9
**adding**   25:16
**additional**   66:21
  69:17
**address**   4:14
  12:24 23:2 25:20
**addressing**   14:11
  25:21
**adequate**   51:21
  51:24 52:7 54:24
  58:5 59:12 67:3,5
  67:6,14 71:11
**adjourn**   58:13
**adjournments**
  58:11
**admissibility**   6:10
  6:14

**admission**   15:23
  16:5,9 68:14
**admitted**   6:20 8:8
  8:15 12:13 14:10
  61:18
**adopt**   47:2
**adverse**   58:16
**affect**   28:4
**affiliates**   3:19 4:6
**afternoon**   4:3,4,9
  4:17 12:3 15:8,9
**agency**   11:6
**agenda**   70:14
**agent**   11:18 25:1
  36:24
**ago**   66:24
**agree**   6:14 24:5
  39:19 49:24 59:13
  64:19
**agreed**   5:18 6:9
  6:10 48:16 61:11
**agreeing**   69:6
**agreement**   8:14
  12:25 13:2 17:1
  20:23,24 22:23,23
  22:24 25:1,3
  39:13 41:22 48:14
  48:18 61:6 62:7
  62:11 64:15 71:9
**agreements**   10:3
  12:24 24:24 28:4
  64:23 66:7
**agrees**   17:16
**ahead**   49:18
**al**   1:10
**albeit**   23:16
**alissa**   3:8
**allison**   12:6
**allowed**   17:1
  21:17,22
**allows**   49:25
**alter**   39:5

**altering**   47:4
**alternative**   7:23
  17:8
**alternatively**   66:4
**amend**   39:5,18
  40:19 43:1 64:23
**amended**   7:13
  8:24 49:6 63:5
**amending**   43:15
**amendment**   8:10
  8:22 10:10,11,12
  16:25 21:1 25:8
  43:24 48:7 60:1
  61:22 63:9
**amendments**   8:25
  57:24 58:2 61:25
  64:22 65:13 66:7
**amount**   30:12
  55:23
**amounts**   56:4
**amy**   3:16 14:9
  15:5
**anchor**   34:16,21
  35:4 38:6
**annual**   62:13
**answer**   11:25
  16:17,23 59:19
  60:22
**answered**   47:9
**anyway**   59:24
**apartment**   49:25
  50:3,5,6
**apologize**   49:19
**app**   65:18,19,20
  65:21 66:2,3,3,11
**apparent**   66:6
**apparently**   35:23
  40:7 41:25
**appeal**   69:2
**appear**   15:6
**appears**   19:1
**applicable**   10:3
  14:7

**applies**   22:3 64:19
**apply**   23:25 26:18
  29:13,14,23,24
  30:3 65:11
**applying**   49:13
**appreciate**   15:6
**appropriate**
  53:18 54:10 58:13
**approved**   61:6
**argue**   7:23 9:2
  20:10 22:8 39:6
  40:11 46:7
**argued**   65:7
**arguing**   21:23
  24:13 35:5
**argument**   8:6 9:4
  9:5,6 12:18,20,21
  14:12 15:10 16:10
  25:21 26:5 32:7
  35:13 39:8 41:12
  42:25 43:11 51:14
  64:8 65:6,11 67:1
**arguments**   7:25
  8:5 13:24 14:5
  37:1 51:13 59:17
**arrangement**
  31:21 43:2
**arrive**   44:10
**article**   19:5,21,22
  20:6,14 21:16
  38:25 39:2 65:7
**artis**   18:18
**asheville**   4:11
  7:12 8:2 11:21
  38:21,22 39:2
  40:5,8,8,11,12,13
  40:15,22 41:21
  42:6,10,17 44:8,9
  44:9,10,20,23,24
  54:5 60:17 61:2
  62:16 65:12
**asked**   51:23 52:3
  54:21 60:16

aspect  15:11 20:10 21:17 23:21
aspects  51:18
asserted  59:17
asset  61:5 71:9
assign  13:15,16 19:14,15 49:25
assigned  9:18 22:24 28:17 30:12 39:23 46:8 49:5 54:19 59:3 62:7 62:15 63:2,4,22 64:17
assignee  7:21 10:12 11:19 25:1 40:6 44:16,25 45:18 63:6 64:21
assignees  24:25 39:24 60:2 61:24 62:2
assigning  44:24
assignment  2:6 9:8,23 10:14,23 11:1,8,13 17:24 17:24 19:5,12 20:9 23:17 24:3 24:10,18,19 28:17 32:25 33:13 39:14 41:1,4,9,16 42:15 43:25 44:8,13,15 44:20,21 45:2,12 45:15,17 46:10,16 47:18,22 49:11 50:23 51:8 58:14 58:23 60:11,15,17 60:18 61:3 62:16 64:15 65:1,8,9,16 66:14 71:7
assignments  11:20 23:3 41:10 44:19 48:25,25 49:13,15,21 60:17 63:5 66:5

assignor  39:24 46:8 65:3
assigns  7:19 11:9 44:20,22
associate  65:17
associated  44:14
associates  9:20 11:20 62:6,8
assume  2:1
assumes  45:7,8
assuming  7:3 47:8 49:10 51:13 55:12
assumption  2:5 45:18 61:3 71:6
assurance  37:14 51:21,24 52:8 54:24 55:4,13 58:5,9 59:12 67:4 67:5,6,15 71:11
attached  25:5
attempting  21:12
attention  15:14 44:4
attorneys  3:3,11 3:19 53:13 56:24
august  61:23
authority  17:5 64:22 66:6,6
authorized  22:15
authorizes  47:22
avenue  3:4 7:12 61:2,9
avoid  59:4
aware  47:15 58:17,19

b

b  1:23 8:22 39:1 71:14
back  12:1 17:18 21:12 23:11 36:25 37:18 41:8,13 44:24 45:2 46:5,9

balance  14:4,12 52:24
bankruptcy  1:2 1:16,25 61:4
bar  15:6
barefoot  3:23 4:4 4:5,8,13,23 54:7 55:24 56:3 57:6,9 57:12,22,23 58:5 58:17,19,22 68:5 68:8,10,12,14,18 69:11,16,23 70:4 70:8,11,14,17
based  14:1 35:6 43:25 65:4
basis  18:25 67:3
basket  58:25
bear  28:2
beck  2:25 72:3,7
behalf  5:3,16 6:13 12:4 15:7 71:20
belabor  14:4,12
believe  10:22 15:25 20:2 28:16 34:11 36:16 39:23 63:18,25 67:2
better  9:5
beyond  19:9 41:25 43:4 45:1
big  33:5,6 37:15
bind  19:9 41:23 41:24 43:3 51:17
binder  5:6,15 8:13 44:5,22
binders  5:6
binding  10:12 61:24 62:1
bit  53:21
blue  6:1,5
body  39:25 60:8
bound  11:15 46:11

brand  48:14
breaching  25:3
brett  3:7 6:12 12:3
brief  12:23 59:19
briefly  7:15 56:18
briefs  8:5
brown  24:7,20 66:2
bruce  2:1,5 3:3,11 4:10 5:15,16 6:5 6:13 7:6 8:7,14 12:5,5,6,7,9,10 15:7 24:23 25:2,2 36:16,22 60:25 61:19 62:6 63:16 63:20 64:14 65:6 66:21 67:10,20,24 68:17 71:6,10,18 71:19,20
bruce's  34:11
bruces  9:18,23 62:6,14 63:1 64:10
building  32:20,21 32:22
built  34:17
buncombe  53:25
burden  12:18,22 13:3,14,25 14:12 37:1 42:5,5
business  58:21 59:7
buy  43:19
buyer  23:4 61:5 67:7

c

c  3:1 4:1 8:19 15:18 72:1,1
california  59:23 59:24
call  17:23 34:3 37:5,11 46:20

[called - context]                                                                        Page 4

called  12:7 17:3
  18:1,1 20:8 43:16
  62:4
calling  5:20
calls  53:24
candidly  58:6
capacity  60:2
capitalized  26:13
cara  12:5
care  52:18
careful  37:11
carefully  26:6
carolina  4:11 7:12
  10:3 14:7 15:5,12
  15:12 16:21 17:20
  18:3,20 21:25
  23:10 39:11 46:9
  48:22 49:4 53:18
  55:21 60:6 61:2
  64:19 65:25 66:6
  66:11
carpet  38:3,8
carry  14:21
carve  35:25
carveout  22:22
case  1:4 7:1,10
  9:13 18:9 21:21
  23:11 46:5 49:11
  49:12 50:10,13
  51:23 65:5 67:9
  69:1
cases  12:23 13:1
  18:15 23:2,9 24:5
  24:20 26:2 50:9
  51:7 60:5,9
cashed  56:7,20
cause  13:15 69:20
cease  64:6
center  33:20 34:6
centers  16:10
certain  6:15 19:23
  39:3 61:18

certainly  21:21
  59:11
certified  36:19,21
  37:4 72:11
certify  72:3
cetera  23:7 55:3
chain  41:20
chambers  4:21
  67:19,21
change  18:21
  39:25 40:2 58:16
changed  48:15,15
  48:15 63:15
changes  65:14
changing  46:25
characterization
  13:8,9
characterize  13:2
charlotte  3:14
  14:10
chart  25:5 40:4
chase  53:15 55:17
checks  56:7,19
chronology  7:16
circumstances
  64:18
citations  53:24
cite  18:6 26:1
  50:10
cited  23:4 46:5
  60:5
clarification
  67:23
classic  50:13
clause  18:15 60:5
clauses  18:5,13,14
cleaner  38:3
cleaning  38:8
clear  9:14,22
  18:16 19:3 20:14
  24:15 26:13 44:13
  47:24 60:1,2,18
  61:23 62:1

clearly  18:10
  31:23 38:24 40:17
  43:16,16 69:20
cleary  3:18 4:5
  57:23
client  51:25 53:23
  56:22 58:23 59:15
  67:11 69:25
clients  16:7 51:23
code  61:4
coequally  43:9
colleague  4:25
  14:9
collectively  12:7
college  3:12
come  12:1 15:3
  49:16,21 53:17
  56:25 58:24
comes  17:20 50:8
comfortable
  14:18
common  21:18
communicate
  34:12
communications
  36:24
company  50:11
  61:8
complete  10:25
  23:3 24:17,19
  33:12 39:14 64:15
completely  37:22
  64:16
complied  40:13
conceivably  33:9
concept  50:14
concerned  28:21
  61:21
concerning  4:10
  33:19
concerns  52:21
  53:20

concession  9:1
conclude  64:21
  65:4,10
concluded  70:18
conclusion  8:1
conditions  26:11
  26:12 34:10,15
  35:22 39:4 50:6
  55:3
confidentiality
  6:16
confirm  5:5
conjunction  19:6
  42:18
connect  69:25
connection  5:23
  46:1,2
consecutive  61:14
consensual  68:19
consent  21:20
  26:10 40:10,20
  47:25
consented  42:6
considered  67:8
  67:12
consis  36:12
consistent  17:10
  28:15,16 37:22
  55:24 57:12 65:13
  67:8 68:8
consistently  21:18
constitute  12:24
construct  61:11
construction
  28:11 30:22,22
construed  15:22
contain  15:18
contains  24:12
contend  10:2
  34:23 52:7 63:20
contention  48:13
context  49:16,21
  50:15

[continue - defaults]                                                    Page 5

continue 15:24
26:17 44:12 56:23
continued 63:3
64:16
continuing 52:24
continuously 7:12
contract 2:5 9:22
16:4 18:4 23:17
24:1,4 39:10
46:25 65:23
contracts 23:4
26:3,3
contradiction
18:12
contrary 10:25
24:5 33:14,15
60:7,9
contrasted 66:1
controlled 18:14
convey 18:17 19:8
conveyance 18:13
18:18 20:11
conveyances
17:21
conveyed 42:17
62:3,5
conveying 18:4
19:7
copies 36:19
copy 5:5
corp 4:3 11:21
44:8,10 62:17
65:19
corporation 1:10
61:10
correct 9:21 10:9
10:16 11:3,10,14
29:18 36:19,21
60:12
correspondences
44:11
counsel 54:8 59:6
67:20 68:19

counter 47:3
country 72:18
county 53:25
couple 15:15,16
38:24 51:17 52:2
59:11 66:23
course 46:14
court 1:2,16 4:2,7
4:12,22 5:1,8,11
5:13,17,21,25 6:4
6:7,9,17,19,24
9:17,24 10:2,10
10:17 11:4,11,15
11:18,24 12:2,12
12:16 13:7,11,15
13:19,21 14:8,14
14:17,20,23 15:1
15:4,8 16:6,8,13
16:15,17,19,22
17:11,13,18 18:7
18:17,24 19:11,14
19:18,20,25 20:1
20:4,7,20,22 21:2
21:4,9,14,15 22:5
22:11,20 23:2,7
23:11,14,16,19,22
23:24 24:9,9 25:9
25:11,14,16,18,23
25:24 26:15,20,24
27:2,6,9,11,13,16
27:18,24 28:7,14
28:21,24 29:3,5,8
29:11,13,21,23
30:1,4,7,16,18,25
31:2,8,12,14,17
31:20,23 32:1,4,9
32:12,14,18,23
33:4,21,23,25
35:1,9,15,17,25
36:3,4,6,11,13,18
37:2,7,13 38:3,10
38:12 39:11,20,22
40:24 41:1,8,14

42:8,12,15 43:17
43:19,22 44:2
45:2,7,12,15,22
45:24 46:4,13,15
46:24 47:6,8,13
48:1,5,7,9,11 49:3
49:10,14,18 50:16
50:23 51:1,4,10
51:11,13,20,22
52:1,10,17 53:4,6
54:11,14,18,22
55:1,7,10,12,18
55:20 56:2,5,10
56:13,16,21 57:5
57:8,10,14,18
58:4,15,18,20
59:10,21,23 60:11
60:13,20,23 61:6
67:24 68:2,7,9,11
68:13,16,22 69:3
69:5,8,13,18 70:1
70:3,5,10,13,16
court's 15:14
27:22 30:22 44:4
courtroom 12:10
courts 18:3 39:12
46:9 47:2
covenants 52:12
cover 4:19 21:16
30:10
covering 20:9
62:9
covers 30:10,13
craig 24:7,20 66:1
created 64:20
critical 7:18
cross 5:23 68:1
cruise 66:9
crux 9:5
ct 65:19 66:2,2,3
cure 53:21 55:23
56:6,8 59:5

current 8:16
15:25
currently 7:22
63:16
custodian 12:11

d

d 1:24 4:1,18
15:18 65:18,18
67:13 68:20 69:14
69:19 71:1
dangerous 55:8
dark 52:5,9 53:23
date 4:16 31:7
49:5 72:15
dates 32:25
dawn 72:3,10
day 42:19 46:2
47:19 62:6 69:9
70:6,7
deadline 67:13
68:21 69:21
deal 11:8,12 12:18
28:16 53:25 65:22
67:17
dealing 15:20
17:7 23:2 54:1
deals 23:17
dealt 46:20
debtor 28:19
debtors 1:12
december 61:8
decision 18:8,18
declarant 5:16 8:8
12:11
declaration 2:3,3
34:11 36:17 67:24
68:3,8,9,17 71:19
decrease 65:15
deed 18:16
deemed 11:15
default 46:21
defaults 53:16

[deference - evidentiary]                                                                      Page 6

**deference**  22:9
**define**  39:12
**defined**  8:19
  40:20 61:24
**defines**  38:25
**demanded**  36:15
**demised**  20:17
  35:22 62:10
**denied**  54:21
**denominated**
  12:13
**deny**  66:15,17
**department**  33:6
**depend**  13:7
**dependent**  9:7
  24:11
**depending**  70:8
**depo**  67:25 68:3
**deposit**  32:15
**deposition**  5:15
  5:19 8:8,11 12:13
  61:19
**depositions**  58:7
**deprive**  23:25
**described**  43:21
**describing**  44:7
**description**  8:21
  8:24 44:5 71:5,16
**designatable**  2:5
**designate**  5:19
**designations**
  61:19
**designed**  43:8
**designee**  61:5
  71:8
**despite**  21:24,25
  48:20
**detailed**  35:20
**deteriorating**
  55:3
**determine**  18:24
  55:2

**development**
  61:10
**diagram**  30:9
**dies**  50:12
**difference**  23:20
**different**  4:18,18
  4:19 21:16 29:1
  53:7,9 62:22
  63:11
**differently**  13:11
  52:17
**dimensions**  48:15
**direct**  46:8 67:25
  68:6,10
**directed**  45:20
**direction**  53:7
**directly**  56:23
**disagreement**
  18:11 45:24
**disclosure**  66:22
  66:22
**discovery**  58:7,8
  59:1 66:25
**discussions**  59:8
**disguised**  12:25
**dispute**  4:9 13:4
  40:18 45:17
**disputed**  56:4
**disputes**  63:25
**distinguish**  23:8
  39:1
**distinguishing**
  26:6 27:19
**district**  1:3
**docket**  36:17
**doctrines**  64:7
**document**  2:7
  5:14 8:13,18,23
  15:17 26:22 28:11
  45:3 48:13 60:3,9
**documentation**
  58:2

**documents**  6:15
  9:13 10:1 14:1,6
  61:21 62:25 64:23
  65:5
**doing**  20:16 32:8
  38:1,7,13 53:3
  54:23
**double**  44:8,14
**drafted**  17:18
**drain**  1:24
**draw**  15:14
**duly**  57:13

**e**
**e**  1:23,23 3:1,1 4:1
  4:1 71:1,14 72:1
**earlier**  63:19
  64:14
**early**  34:3,3
**earth**  47:20
**easement**  50:11
  50:12
**easier**  38:13
**easily**  31:20 32:10
**east**  50:12
**eckerd**  32:25 33:3
**effect**  10:20 18:24
  31:1,7,9 34:12
  62:9 63:11,23
  64:24
**effecting**  46:19
**effective**  18:10
  24:25
**effectively**  17:6
  48:13 67:25
**effort**  54:1
**eggs**  58:24
**either**  4:16 7:24
  24:22 30:1 53:15
**electronic**  72:11
**element**  13:9
**email**  67:19
**enacted**  18:10,20
  18:21,23

**encumber**  20:16
  20:18 21:23 22:3
  43:4
**encumbrance**
  21:19
**ended**  64:6
**ends**  50:6,12
**enforce**  24:22,22
**enforces**  55:15
**enter**  17:3 28:4
  40:16 41:22 66:7
**entered**  6:24 7:2
  7:17 9:10 10:23
  27:23 40:13 46:1
  56:1 61:7 62:7,21
**entirety**  70:14
**entities**  38:22
  41:19
**entitle**  47:16
**entitled**  33:19
  35:20,23 59:4
**entity**  40:17,17
  43:12 52:13 62:4
**equitable**  64:6
**era**  33:6
**escrow**  56:4
**especially**  15:12
**esq**  3:7,8,16,23
**essence**  25:2
**essentially**  16:1
**established**  63:24
**estate**  18:17 36:7
  50:9 60:8 64:20
**et**  1:10 23:7 55:3
**event**  6:25 68:20
  70:1
**evid**  71:16
**evidence**  7:7
  10:24 36:14 42:5
  42:6 61:18,20
  67:23 68:17
**evidentiary**  4:9
  32:19

exactly  11:14,23
  60:14
examination  5:23
excellent  18:8
exception  22:2
  65:3
exchanged  58:7
exclude  27:5
  34:20 35:2,4
excludes  35:10
excuse  64:12
executed  15:13
  17:19 47:19
execution  30:24
executory  23:3
exercised  63:12
  64:25
exhibit  5:6 8:22
  15:18 20:1 32:24
  33:2 47:19
exhibits  2:7 5:7
  5:10 6:11,15 7:6
  12:12 61:17,18,20
  71:18
existence  47:1
  64:17
existing  8:19 9:1
  15:24 22:6 39:6
expenses  35:21
expensive  53:15
  55:16 56:24
experience  54:4
expiration  70:7
expire  8:9
expired  7:24,24
  8:1,4 9:3,5 10:22
  13:6 16:24 17:14
  43:7 63:19
explain  9:11 40:3
explicitly  9:9
express  15:19
expressly  18:22
  39:2

extend  25:3 48:21
  61:14 63:7,11
extended  7:13,21
  8:9,17,21 65:15
  66:8 70:7
extending  4:17
  64:24
extension  69:17
extensions  22:14
  22:15 34:17 51:1
extent  52:11
  69:14 70:4,6

### f

f  1:23 72:1
fact  9:17 10:14,25
  11:9 15:16 17:22
  21:24 22:2 24:6
  24:12 25:25 28:9
  36:13 43:23 48:20
  48:22 54:5 57:16
  64:22 65:12,16
  66:25 67:7
facts  49:20 66:1
factual  54:8
fail  7:25
failed  9:11
fails  8:6
fair  14:3
familiar  31:10
far  14:21 27:13
  28:19 61:21 66:16
  66:19 67:9 69:13
fares  9:5
fashion  58:12
february  62:3,21
fee  7:17,19,20
  11:11 18:15,18
  19:9 21:20,23
  22:3 24:2,17
  33:19 34:5,6,7,18
  34:20 35:20 36:23
  41:23,24 43:3,4
  44:16 47:5 48:18

51:17 60:7 61:1
  62:20,22,23 63:14
  63:16
fees  53:13 56:24
filings  5:5
final  8:23
finally  8:22 60:15
financial  52:11,14
  52:18,23 59:13
  66:21
financials  53:7
find  54:1
fine  4:22 6:19
  14:18 16:22 57:14
  68:11,16 69:8
fire  53:25 54:2,16
  55:3,9
first  8:7,12 15:4
  20:8,14 24:3
  26:24 38:24 39:16
  41:4 44:4 47:14
  48:1 52:3 57:25
  61:22 62:21 67:1
flow  25:5 40:4
focus  15:10
focuses  28:8
focusing  26:24
  28:9 42:12 52:12
folks  22:1
follow  26:16
  28:11 35:11,12
  39:17 42:25 43:14
followed  11:5
  26:11
following  54:20
follows  22:23 39:3
  39:16 44:12
foregoing  72:3
forever  17:9
  37:15 50:21
forget  19:24
form  67:5,10
  68:25

formal  58:9
formally  67:20
forward  67:13
forwarded  44:12
four  5:9
frankly  31:4
front  7:9
full  24:1,10 25:1
  46:16 50:23 63:2
  63:4
fully  57:7 59:5
functionally  30:5
  48:17
fundamental
  46:25 47:5
further  11:25
  15:22 58:13
future  27:21,23
  28:5,10,14 29:19
  37:23 51:21 52:8
  65:11

### g

g  4:1 28:3 71:3
gas  54:6
generally  45:22
  60:6 65:17,22
  66:9
getting  37:9 53:24
give  16:17 21:12
  50:4,7,14,17
given  11:5 54:25
  66:4,13,24
gk  62:4
go  7:15 9:15 23:11
  27:9,14 36:25
  41:25 44:19 49:18
goes  16:1 22:17
  41:13
going  4:24 13:24
  15:10 20:14 21:13
  27:23 28:18 30:14
  30:21 34:2 37:15
  37:17 39:18 40:10

41:8,25 43:1 46:5
46:9,12 47:21
52:4,5,6,9 53:6,20
54:3,7 55:5,5,16
57:3 59:2 67:16
68:2,3 69:13,19
**good**   4:2,4,7 12:3
15:8 24:6
**goodman**   3:7 6:12
6:12,18,22 7:4
12:3,4,15,17
13:10,12,17,20
14:3,9,15 50:1,1,7
**gotten**   52:23 59:9
**gottlieb**   3:18 4:5
57:23
**grant**   19:4 69:16
**granted**   22:14
51:1
**grantee**   50:10
**granting**   18:5,12
18:15 49:2 50:9
51:6 60:4
**grantor**   18:16
**grants**   50:11
**great**   53:25
**ground**   9:8 10:6,6
10:13,15,18,20,24
11:11 15:13 16:1
16:3,11 17:18,22
17:23 19:3,8,10
19:16 20:11,12
21:10,17,22,24
22:12,16,17 25:7
25:22 26:1,6,8,22
28:17 30:11,23,24
37:19 38:20,22
39:8,24 40:5,14
40:15,22 41:5,13
41:16,17,21 42:1
42:8 43:7,8 44:21
47:17 49:1,8,9,16
49:21 50:20,20,21

62:12,12,16,22,24
63:15,15,17,19,21
63:23,24 64:1,2,9
64:11,13 65:8
66:13,13
**grounds**   67:3
71:10
**guarantee**   53:5,11
53:18 55:12,15
57:19,25 58:3
67:17
**guaranteed**   35:4
**guarantees**   53:14
55:15
**guarantor**   53:12
**guastello**   37:19
65:19
**guess**   9:17 11:7
14:4 22:20 24:21
32:15 43:19 44:1
52:11 68:23

**h**

**h**   30:17 71:14
**habendum**   60:5
**hac**   14:10
**half**   28:9 69:24
**hamilton**   3:18 4:5
**hand**   12:19 14:11
25:4
**happened**   20:22
28:19 56:14
**happening**   59:8
**happy**   10:1 11:25
58:2 60:22 69:16
**hard**   5:5 22:21
**head**   10:6 64:1
**heard**   54:9 57:25
58:12
**hearing**   2:1,3 4:9
4:24 5:24 12:8,10
58:25
**hearsay**   54:10

**held**   6:15
**helpful**   9:15 40:4
**helps**   23:12
**hereof**   31:7
**heretofore**   44:11
**highlight**   8:6
**highlights**   8:18
**history**   7:9 18:9
32:20
**hit**   7:16
**hogue**   66:9
**hold**   15:1 18:5,13
22:16 41:23 49:2
49:4 51:7,8
**holdco**   2:4 3:19
4:6,10 5:3 61:5
63:25 66:22 67:7
71:8
**holdco's**   7:6 71:17
**holder**   34:8
**holding**   18:23
**holdings**   1:10 4:3
**hon**   1:24
**honor**   4:4,8,15,23
5:2,4 6:12,23 7:4
7:5,8 9:15 12:3,15
12:17,21 13:4
14:3,15,16,22
15:4,11,17,21
16:14 17:17 19:19
20:5,25 21:11
22:8,19 23:6,21
25:4 26:9,19 29:2
29:17 31:4,11
32:20 33:18 36:17
36:22,25 37:4
38:11,17 39:15
40:4 41:3 42:2
45:4 46:12 47:3
48:13 49:12 51:15
52:15 53:22 54:7
54:23 55:24 56:17
57:6,22,24 58:6

58:17,19,22 59:20
59:25 60:16 67:22
68:5,18 69:10,11
69:25 70:12,15,17
**honor's**   4:20
**hook**   52:13
**hopefully**   15:1
70:11
**housekeeping**
4:14
**hvac**   54:5

**i**

**i.e.**   26:20
**idea**   42:3
**identify**   39:9 52:3
60:10
**ignore**   41:6 42:4
47:21
**ii**   2:6
**importance**   18:3
**important**   14:1
15:11 17:19,21
18:2 36:7 38:6,19
49:3 62:18
**importantly**   63:5
**inability**   22:2
**inapplicable**
12:23
**include**   34:15
35:7 45:10
**included**   36:8
39:7 62:10
**includes**   40:20
**including**   61:24
62:2,10
**income**   35:21
**incongruity**   18:11
**inconsistent**   51:6
**incorrectly**   56:19
**increased**   28:24
28:25 48:11 65:16
**indenture**   18:1
49:6

**indicate** 33:14
**indications** 33:15
**informal** 37:5
58:8
**information** 34:7
34:8,21 35:5,21
35:24 37:6 51:24
52:23 53:2 57:20
58:10 67:10
**inside** 56:13
**instances** 34:23
**instrument** 18:25
19:1,7,8
**intended** 27:4,5
**intent** 18:25
**intention** 10:25
**interest** 7:19 9:19
24:17 41:18 42:23
43:4,5,12,13
44:15,15 60:8
62:3,5,8,15 65:1,4
**interferes** 69:15
**interior** 56:11
**interpretation**
14:6 26:16
**interrupt** 20:20
**introduce** 15:4
**involved** 34:5
**irrelevant** 39:13
**irrevocable** 12:5,6
**issue** 12:24 13:13
13:25 18:9 56:6
56:25 58:5 59:2,9
59:13 67:12 69:12
70:2,12
**issues** 52:2 53:21
54:8 56:18 57:7
57:19 59:5

**j**

**january** 18:2
22:18 43:6 52:5
53:23 61:15

**jernigan** 18:8
**jewelry** 33:8
**joe's** 38:3,8
**johnson** 18:7
**joint** 7:6 15:18
20:1 32:24 33:2
47:19 71:17
**judge** 1:25
**july** 68:20 69:23
70:5
**june** 1:20 72:15

**k**

**k** 3:8
**keep** 30:14
**key** 7:16 9:13
**kind** 18:4 22:2
60:7
**km** 38:21,22 39:2
40:5,11,12,15,22
41:21 42:6,10,17
44:9,9,20,23,24
60:17
**km's** 40:13
**kmart** 4:11 7:11
7:17,20,21,22,24
7:25 8:2,8,16,16
8:19,21,24,25 9:1
9:6,10,12,14 10:5
10:7,12,15,18,21
10:24 13:5,20
16:15 17:1,2
19:15 20:22 22:3
22:24 24:15,22,25
25:19 27:5 28:18
29:15 30:3,13
31:1,16 32:5,6,22
33:3 34:15,16
35:7,10,13,24
36:1,7,8,10 37:11
37:14,16,19,23
38:25 39:7,9,18
39:22 40:6,20
41:2,4,10 42:4,13

42:15 43:1,2,15
43:15,24 44:6,22
44:25 45:1,14,16
45:17 46:17,18
47:15 48:14,18
51:4 54:1,4,6 57:2
61:9,22 62:10,19
63:1,6,6,7,10,22
63:22 64:9,10,14
64:15,22 65:1,10
65:19 66:5,14
**kmart's** 17:9
20:23 38:13
**knew** 31:16
**know** 13:21 23:15
25:9 29:8 31:18
33:7,9,12 34:18
37:16,23,23,24,25
38:3,6,13 48:12
52:6,8 53:2,8 55:3
56:10,13 57:1
59:3,10,24
**knowing** 53:19
**kresge** 10:4 61:8

**l**

**l** 71:3
**landlord** 7:19,21
10:11,13 17:14
22:25 26:10 31:6
35:2,3 38:23 42:9
42:10,13 43:23,24
44:10,15,16,25
45:8,9,19 46:7
55:16 60:2 61:10
61:24 62:2,9,19
62:22,24 63:14,17
64:5,10,11
**landlord's** 20:16
20:18 53:13 64:5
**landlords** 52:25
66:5
**language** 21:5
27:20 29:7,10,12

29:18 34:23,24
35:12 49:3 51:9
**larger** 5:6,14
**late** 67:2
**latest** 16:24
**law** 10:3 13:1 14:2
14:7 15:12,12
16:21 17:20 18:9
21:25 23:11 26:25
39:25 46:5 48:22
49:4,11,12 63:24
66:7
**laws** 64:18
**lay** 67:4
**lead** 8:1
**leads** 53:21
**leaking** 54:6
**lease** 7:11,13,17
7:20,21,22,24,25
8:3,9,17,19,20,21
8:24,25 9:4,6,8,8
9:10,12,13,19
10:4,4,5,6,6,7,7
10:12,14,15,15,18
10:18,20,21,24,24
11:1 12:25 13:5,5
13:6,8,15,16,18
13:20 14:6 15:13
15:25 16:1,3,9,13
16:15,24 17:3,18
17:22,23 18:1
19:3,12,15,16
20:12,15,22 21:7
21:9,10,22,24
22:3,12,16,17
23:16 24:11,15,18
24:24,25 25:7,14
25:18,19,23 26:1
26:6,7,8,12,22
27:10,21,23 28:5
28:18 29:9,14,15
29:19,24 30:1,10
30:12,13,13,20,23

30:24 31:1 32:6
32:25 33:1 34:2
34:16,23,24 37:19
38:11,17,18,20,22
38:23,23 39:7,8
39:17,18,22,24
40:5,6,9,10,14,16
40:20 41:2,4,5,5,6
41:10,13,16,17,18
41:19,22 42:1,3,4
42:8,10,16,18,19
42:20,22,23 43:1
43:1,7,7,8,8,13,14
43:15,16,24,25
44:7,8,14,17,21
44:22,25 45:1,13
45:14,16,18 46:3
46:16,16,18 47:15
47:15,17,20,21,24
48:2 49:1,6,8,9,17
49:21,25 50:3,17
50:18,20,20,21,21
51:2,3,4,14,16
53:14,18 54:9,14
54:19,21 57:1
58:14,24 59:3,18
60:13 61:4,7,10
61:13,17,22,23
62:1,11,12,12,16
62:20,21,23,24
63:1,3,6,7,7,15,17
63:19,21,22,22,23
63:24 64:1,1,2,2,9
64:9,13,14,16,22
65:2,4,8,9,10,13
65:14 66:8,13,13
66:14,18 67:18
71:7
**lease's** 16:11
**leasehold** 20:15
21:18 42:23
**leases** 2:1 4:19
15:21,24 16:2

21:5 22:6 23:3
26:18 27:20 28:10
28:12 29:8 31:4
44:5 57:13 62:9
65:23 66:5
**leasing** 49:24
**left** 57:3
**legal** 15:10 72:17
**legally** 15:24
**legislature** 18:20
18:23
**length** 66:24
**lessor** 11:11 19:8
50:17 64:20
**letter** 44:6
**levander** 2:4 4:25
5:2,3,9,12,14,18
5:22 6:2,5,8,23
7:5,8 9:21,25 10:9
10:16 11:3,10,14
11:17,23,25 15:16
43:21 44:1,3 45:4
45:6,11,14 59:19
59:22,25 60:12,14
60:21
**lexis** 65:20
**liberty** 3:20
**lieu** 5:19
**life** 18:17 50:11
50:12 60:8
**likelihood** 67:9
**likes** 41:7 42:4
**limit** 20:17 40:3
49:17
**limitations** 33:14
49:22 51:8
**limited** 49:22
**limiting** 49:7
**limits** 17:5 19:6
28:3
**line** 71:5
**lisa** 2:25 72:3,7

**literally** 30:20
**little** 53:21 58:25
**live** 5:20,22
**llc** 3:19 5:3
**llcs** 2:4
**llp** 3:2,10,18
**located** 61:1
**logic** 37:10,21,22
**logically** 30:10
36:6
**long** 7:9 17:11,12
22:16 37:19 50:4
**longer** 16:17 19:5
21:20,21
**look** 8:12 15:17
19:21 20:5,13
28:2 30:15 33:4
48:12 50:4
**looked** 17:20
**looking** 54:11,12
**looks** 18:15
**lost** 17:15
**lot** 7:8 38:6,12
**lower** 29:15
**luke** 3:23 4:4
57:23

### m

**m** 8:14 65:18
**maddry** 65:18
**main** 16:10 64:2
**making** 9:23
28:23 29:1
**managing** 36:23
**march** 8:16 42:16
63:6
**mark** 67:16
**marked** 5:25
**marks** 6:2,3,6
**marshal** 53:25
54:2,17 55:9
**martin** 62:5
**material** 58:15

**materially** 65:16
**materials** 65:24
**matter** 1:8 4:14
66:24
**matters** 13:22,24
**maximum** 62:13
**mean** 13:8,11,23
19:14,15 22:7,21
22:25 23:13,14,23
23:25 24:5 26:18
28:14,15,19 30:14
31:14,14,17,20
33:4 35:18 36:14
37:14,17,18,20
38:12 39:18,21
41:13 46:4,24
48:12 49:19,24
50:20 52:13 55:14
69:15
**meaning** 21:10
**means** 5:22 30:9
32:15 33:13 35:19
**meant** 18:16 35:7
38:15 39:7
**member** 15:5
**mention** 33:17
**mentioned** 49:6
51:22
**merits** 4:13,23
**microphone** 14:23
**middle** 26:11
**mind** 13:22 51:5
**mineola** 72:20
**minimum** 63:20
**misremembering**
49:16,20
**modern** 33:6
**modification**
40:12
**modify** 39:5 40:10
40:19 47:24 48:2
65:9

**modifying** 43:15
**mole** 59:2
**monetary** 53:20
**money** 56:6
**months** 50:7 53:1
  66:23
**morning** 4:7 15:7
**mortgage** 34:7,8
**mortgaging** 20:9
**movant** 13:14
**move** 33:18 34:2
  38:9 51:12 67:13

**n**

**n** 3:1 4:1 71:1,3
  72:1
**n.c.** 65:18,19,20
  65:21,24,24 66:2
  66:2,3,11
**nac** 36:24 38:21
  40:7,16,17 41:19
  42:17 44:6,20,22
  44:25 45:8 47:22
  62:17
**name** 34:9,14
  68:19
**names** 35:22
**nap** 11:22 17:1
  24:23,23 25:6,22
  36:25 38:21 39:16
  40:7,8,8,13 41:6
  41:16,19,21 42:20
  42:23,25 43:2,5
  44:16,24 48:14,16
  48:18 60:17 63:9
**nap's** 17:5,5 42:21
  60:2
**nc** 3:14
**neal** 24:7,20 66:1
**need** 11:6 12:14
  14:4 33:15 44:2
  51:18 53:7 56:22
  67:19 69:5

**needs** 34:6 67:4
**net** 57:1 63:11
**never** 7:14 9:14
  17:25 22:4 24:15
  25:19 48:20 54:6
  54:9 59:2 65:2
**new** 1:3,18 3:5,21
  21:5 26:18,20
  48:14 53:8,8,17
  55:22 59:1
**nineteenth** 11:21
  44:8,9 62:16
**non** 53:20
**north** 4:11 7:12
  10:3 14:7 15:5,12
  15:12 16:20 17:20
  18:3,20 21:25
  23:9 39:11 48:22
  49:4 53:18 55:21
  60:6 61:2 64:18
  65:25 66:6,10
**northside** 23:4
  65:17
**notebook** 15:2
**noted** 64:14
**notice** 4:15 46:22
  47:16 48:19
**notices** 44:11
**notify** 46:17
**notwithstanding**
  24:12 66:12
**november** 62:15
**number** 8:5 26:22
  34:22 63:5
**ny** 3:5,21 72:20

**o**

**o** 1:23 4:1 72:1
**object** 54:8
**objecting** 54:24
  67:3
**objection** 2:6 8:3
  56:6 60:24 66:15
  66:16,18,19 67:15

68:12 71:6,10
**objections** 14:5
**objectors** 7:23 8:7
  8:15 9:11
**obligation** 45:10
  46:17
**obligations** 40:13
  40:15,22 45:7,9
  45:19 46:6
**obtains** 64:4
**obviously** 10:20
**occupancy** 27:21
  28:5,10 29:19,20
**occupants** 33:2
**occupiable** 34:18
**occupying** 26:9
  34:17
**occurs** 7:18
**odd** 48:21
**offered** 67:5,6
**office** 14:11
**oh** 28:14 69:3
**okay** 4:2 5:1,21
  6:7,8,19,22 9:24
  11:4,4,24 12:2,16
  14:14 15:2,8
  16:19 20:4 21:14
  25:10,24 27:24
  28:7 30:16 32:18
  33:23 37:7 38:10
  39:18 40:8 47:13
  51:10,20 53:4
  54:22 55:7,19
  56:2,21 57:5,8,11
  57:18 58:4 59:10
  60:20,23 68:22
  70:13,16
**old** 72:18
**older** 51:7
**ones** 6:5 27:16
**operate** 50:18,21
**operates** 48:14

**operating** 53:2
**operation** 33:20
  34:5 35:22
**opportunity** 15:6
**opposed** 26:17
**options** 24:13,14
  63:12
**oral** 65:6,10 67:1
**orange** 6:1,2
**order** 6:21 55:25
  55:25 67:17 68:19
  70:9
**order's** 7:2
**orders** 4:15,19 7:1
  68:25
**original** 16:24
  24:11 64:20
**originally** 10:4
  11:19 46:5 61:7
**overall** 19:7,7
**overleases** 9:7,9
**overrides** 33:11
**overrule** 67:14
  71:12
**overruled** 71:9
**owner** 7:17,19
  10:13 11:12 19:9
  21:20 24:17 33:19
  34:5,6,7,20 35:20
  41:24,24 43:3
  44:16 47:5 51:17
  62:20,22,23
**owner's** 7:20
  36:23 43:4
**owners** 48:18 61:1
  63:16

**p**

**p** 3:1,1 4:1
**p.m.** 70:19
**package** 51:24
  52:2
**padc** 61:10,11
  62:3,25

[page - prohibit]                                                        Page 12

page   8:10,19,23
  25:6 28:3 30:17
  52:24 71:5
pages   65:20 66:3
paid   34:13 46:20
  57:2,4
paper   7:9
papers   12:8,19
  17:23 18:6 25:5
  26:2
paragraph   8:18
  8:20 15:20,22
  35:9 61:25
paragraphs   15:18
part   9:18 16:5
  42:18 43:17 52:15
  66:16,20
partial   41:9
particularly   31:4
  33:5
parties   5:5,18
  6:10 10:23 11:22
  13:1,5 17:25
  18:25 19:2,15
  22:4,24 23:25
  24:3,16 26:6 27:4
  29:9,20 31:16
  33:13 34:24 35:6
  38:15 39:9,12
  46:6 58:11 62:1
  64:19,21 65:5
partner   14:10
partnership   65:18
party   7:20 11:8
  11:12,18 20:23
  23:25 43:23,23
  46:8,8 48:19
passed   4:16
patent   9:19
patient   51:12
patton   7:12 11:19
  61:2,9 62:6,7

paul   5:15 8:7 12:9
  71:19
pause   20:3 35:8
  45:5
pay   53:12
payable   65:15,17
paying   38:7
payments   44:12
  52:20,22
pending   66:25
people   37:24
percent   34:18
perfectly   17:10
  29:14 58:1
performance
  51:22 52:8,11,14
period   21:20 43:9
  50:4
periods   63:11
permission   4:20
permitted   65:13
person   58:21 59:7
perspective   36:23
  54:10
pertaining   61:17
  66:17
ph   66:9
phrase   24:21
piccione   3:8
piece   42:21
pieces   20:10
pitch   51:14
place   22:17 33:1
  37:15 41:4 66:25
placed   18:3
places   26:23 27:8
  42:20
plains   1:18
plausibly   9:11
plaza   3:20 9:19
  11:19 62:6,7
pleadings   13:23
  13:25

please   4:2 59:21
pleases   47:23
plenty   27:8
pm   1:21
podium   15:1
point   7:18 12:9
  14:4,13 16:4
  17:24 18:14 26:21
  27:3,17,22 28:1
  29:1,17 30:8
  32:19 34:1 36:5
  37:9 38:5,14,19
  39:16 43:20,22
  46:18 47:10,18
  48:25 53:10 55:22
  58:8 59:13 60:4
  62:18 66:23 67:17
  67:18
pointed   49:3
points   7:16 8:7
  15:15,16 47:12
  49:7 57:19,24
  59:14
policy   47:2
portion   4:24
  66:17,19 67:14
portions   5:19,25
  12:13 37:17
posit   40:21
posited   17:8
position   67:11
possession   17:2
  17:15
possible   68:20
power   21:3 25:22
  50:11
ppa   9:20,23 11:9
  11:20 62:8,11,15
  63:1,2 64:10,14
  64:16
preceded   64:9
precedes   20:23

predecessor   61:9
  64:11
predecessors
  64:12
prefaced   69:18
premise   24:6
  62:10 65:12
premised   66:18
premises   19:4
  20:17 32:21 33:3
  35:22
prepared   57:20
preparing   19:2
present   28:5
  29:19
presentment   4:16
  4:16
preserve   69:1
presumably   57:2
pretty   22:21
  24:15 34:4 55:13
preview   21:12
previously   61:6
  66:23
primarily   18:8
principal   18:3
  23:6
principle   23:24
prior   9:10 18:2,10
  22:23
pritchard   15:5
privity   46:7,8,11
  64:19
pro   14:10
probably   12:19
  46:21
problem   42:2
  64:8 68:13
problems   57:17
proceedings
  70:18 72:4
prohibit   21:19

**prohibits** 39:2
**promptly** 59:7
**proof** 12:18,22
  13:14,25 37:1
  42:5,5
**property** 8:2,14
  10:13 15:20 17:2
  17:4,21 18:4
  21:19 23:21 36:23
  40:9 41:18,23
  42:21,24 43:4,5
  43:14 47:5 56:16
  57:2,4 61:1,4,11
  61:12 62:4,20,23
  64:3,5 65:23 71:7
**propose** 4:20
**proposed** 55:25
**proposition** 26:2
**prospective** 18:22
  52:19 57:21
**provide** 24:3
  45:10,11 57:20
  67:21
**provided** 36:15
  48:19 51:25 66:23
  67:10
**provides** 64:15
**provision** 9:22
  28:3 30:19 31:3,5
  33:11 34:5 35:25
  37:11,21 53:14
  55:14 60:7
**provisions** 19:1
  33:16 48:2 65:7
**public** 49:1
**purchase** 8:14
  61:5 71:9
**purchaser** 8:15
**purport** 13:17
**purports** 13:3
  48:21
**purposes** 12:8

**pursuant** 41:4,5
  41:16,17
**put** 13:11 33:1
  48:16 52:17 58:24
  59:7,11 65:8
**puts** 28:3

**q**

**quarropas** 1:17
**question** 13:6
  16:23 17:9 47:9
  60:16 61:7
**questions** 9:25
  12:1 59:20 60:21
**quickly** 59:22,25

**r**

**r** 1:23 3:1 4:1
  65:18 71:3 72:1
**raise** 59:1
**raised** 12:19
**ratification** 11:6
**rationale** 67:4
**rdd** 1:4
**read** 15:19 19:6
  19:23 22:8 26:3,4
  26:23 29:19 31:23
  32:10 44:18
**reading** 29:18
  34:16,19 35:11
  50:19
**reads** 15:21
**real** 8:13 17:21
  18:4 23:20 36:7
  42:2 61:1 62:4,23
  65:22
**really** 10:22 11:5
  13:22 14:1 22:9
  23:12,24 26:18
  33:16 35:18,19
  39:8 41:13 55:15
  58:6,23
**reason** 18:2 27:7
  40:11,21

**reasonable** 53:13
  54:12,18 55:2,2
  55:13 57:21 58:1
**reasons** 26:13
  54:25
**rebuttal** 12:1
**recall** 7:2
**received** 5:5 7:7
  31:6 37:2,3 68:17
**recitals** 60:3
**recognize** 17:19
  17:22
**recognized** 62:25
**reconcile** 57:13
**record** 4:6 6:20
  12:4,11 15:19
  51:18 54:13,24
  57:22 60:19 66:20
  68:24 72:4
**recordation** 48:20
  66:12
**recorded** 48:23,25
  49:1
**records** 36:18,21
**redacted** 8:15
**reduce** 28:6,22,22
  30:12
**refer** 11:22
**reference** 24:6
  45:6
**references** 36:16
**referred** 60:25
**referring** 15:25
  21:5,5 22:6 28:2
  36:10 42:14
**refers** 24:24 38:24
**reflect** 61:22
**reflected** 43:16
**regard** 40:25
**regardless** 13:13
  37:8,9 40:23
**registry** 49:1

**reiterate** 16:1
**reject** 2:1
**relate** 14:5
**related** 2:7
**relates** 33:18
**relating** 27:20
  35:21
**relationship**
  42:21
**relevant** 33:5
**relies** 12:23
**rely** 9:17 69:19
**relying** 69:14
**remained** 8:2
**remaining** 24:18
  65:4 66:19
**remains** 44:25
**remembering**
  49:15
**remind** 69:21
**renew** 24:13,14
**renewal** 45:10
  48:2 62:12 63:12
**renewals** 63:8,10
  64:25
**rent** 28:6,22,24
  29:15 34:13 38:7
  44:11 46:20 48:11
  48:15 50:6 62:14
  65:15,16
**rental** 30:12
**repeatedly** 46:9
**reply** 2:4 12:21
**reporters** 65:25
**reports** 33:19
  36:14
**represent** 57:6
  59:5
**representation**
  15:23 31:8
**represented** 52:25
  58:18,20 59:14

**request** 66:21
67:1
**requested** 58:12
**requests** 57:25
58:8
**require** 47:16
53:12
**required** 39:17
70:6
**requires** 53:17
**reservation** 2:6
**reservations** 11:2
50:24
**reserved** 57:7
59:6 65:1
**reserves** 56:3
**reserving** 55:23
**resolved** 66:20
**respect** 12:22
46:25 47:17 53:19
62:18
**respective** 34:10
**respectively** 64:11
**respond** 57:18
**responding** 60:4
**response** 15:15
43:20 59:16
**rest** 12:20 18:13
49:5
**restrictions** 42:20
65:8,11
**retained** 65:3
**revocable** 12:5
**right** 4:12 5:8,13
5:17 6:4,7,9,17
9:19 10:21 11:2,4
11:8,12,17,23,24
12:2,12 13:19
14:8 16:6,12,16
17:13,15 19:12,25
20:7,25 21:9,11
22:7 23:18 27:1
27:15,18,25 29:17

30:18,25 31:2,23
32:9,16,17,23
33:21,25 34:6
35:5,15,17 36:1
37:7,25 38:5,12
41:10,14 42:12
45:8,16 46:20
47:6,11 48:3,8
50:17,24 54:22
55:1 56:5 57:10
58:4 59:10 60:23
61:14 62:8 64:5
69:1,18 70:1,10
**rights** 2:6 20:11
24:1,1,23 46:18
46:19,25 47:5
49:8 53:21 55:23
56:3 57:7 59:6
64:4 65:23
**road** 72:18
**robert** 1:24
**room** 1:17
**rose** 65:23
**rule** 18:21 33:12
65:3 66:4
**ruled** 52:1
**rules** 18:17 40:1,2
40:3 67:14
**run** 33:8 40:9
43:8,9 52:5 56:24
61:15 70:6,7
**running** 69:19
**runs** 69:20

**s**

**s** 2:7 3:1 4:1 71:3
71:14
**s.e.2d** 65:19,24
66:2,9,10
**s.s.** 61:8
**safety** 55:3
**sam** 4:25 5:2
**samuel** 2:3

**samuels** 38:21
**sanders** 3:2,10
6:13 12:4
**sandwich** 9:8
25:14 34:2 38:11
38:17,18,23 39:17
40:9,16 41:5,6,18
41:19 42:3,4,9,18
42:19,20,22,23,25
43:7,8,13 44:7,14
44:17 46:3 47:20
47:21,24 51:14,16
**saying** 10:19,22
25:3 35:1,9 36:6
69:19
**says** 13:15,16
18:24 24:9 26:9
28:5 29:8 35:13
35:20 39:4 40:8
41:16 44:7
**schedule** 39:1
43:18
**seal** 6:16 15:17
**sealing** 6:20,25
**sears** 1:10 4:3
24:22
**seated** 4:2
**second** 2:3 8:10
8:12,24 9:4 28:8
43:23 48:7 53:5
60:1
**section** 4:17 32:8
33:7,8 61:3 62:11
65:14 67:4 71:11
**sections** 20:13
**securities** 31:6,24
32:5,14
**security** 12:25
32:15
**see** 8:20,23 27:13
49:13 51:16 53:7
54:3 62:11 65:17
65:22 66:9

**seeing** 22:21
**seeking** 13:2
**seen** 52:25
**sees** 49:14
**sellers** 15:23 16:2
**selling** 24:2
**send** 52:24 67:21
**sense** 26:4 27:21
28:12 30:11,21
37:12 59:12
**sent** 46:22 56:19
**sentence** 15:19,21
28:9
**separate** 60:11
**series** 12:23
**sets** 18:9
**settle** 67:20
**seven** 4:19
**sheet** 52:24
**shopping** 33:20
34:6
**short** 16:16,21,23
**shorten** 28:6
**shorter** 29:16
**show** 21:15 33:15
**shown** 53:12
**shows** 32:25 33:2
**sic** 4:7
**sides** 57:9 63:18
**silvia** 62:5
**simple** 7:10 18:15
18:18 19:9 37:10
47:5 60:7 61:1
**simply** 12:22
**single** 32:21
**sit** 59:23
**situation** 24:20
50:2,3,13 55:8
**six** 4:15,18,18
50:7
**skipped** 38:18
**slightly** 67:17

**sloan** 66:10
**smaller** 5:9 8:13
**sold** 24:17
**sole** 5:16 8:8
**solely** 22:3
**solutions** 72:17
**somewhat** 58:10
**soon** 68:19
**sorry** 18:7 28:18
  33:22 35:1 41:1
  49:18 50:16 54:18
  63:1 65:20 66:17
**sort** 16:5 17:8
  18:11
**south** 3:12 72:3
  72:10
**southern** 1:3
**space** 34:18 52:9
  53:23 54:3 55:5
**speak** 58:22
**speaking** 36:2
  48:17
**specific** 22:21
  47:14
**specifically** 39:4,9
**split** 63:10
**stale** 58:10
**stand** 26:8 44:2
  59:21
**standard** 34:4
  53:13
**standpoint** 13:13
**state** 9:9 17:20
**stated** 54:25
**statements** 37:4
**states** 1:2,16
**stating** 11:7
**station** 23:5 65:17
**status** 63:14
**statute** 13:16
  18:10,21,22,24
**stay** 14:17 69:7,9
  69:14,20

**steen** 3:18 4:5
**steven** 12:5
**store** 10:4 33:6
  52:4,6 61:11
**stores** 33:6 37:16
  37:17 54:4
**street** 1:17 3:12
**strike** 33:10
**subject** 6:15,20
  9:10 10:7,15,18
  10:20 11:1 39:24
  50:5 58:1 59:1
  63:23 64:6,13
**sublease** 9:7,13
  13:8 17:3,6,11,12
  17:15 24:10,11,12
  24:14,16,16 25:19
  26:7 27:23 29:20
  30:3,9,9,20 31:6
  33:9,13 37:16,25
  38:25,25 39:6,7,9
  39:13 40:19 43:16
  43:21 48:17 50:13
  63:23 64:3 65:2
**subleases** 21:6
  26:20 27:20 28:13
  30:23 31:9,15
  32:12 47:23 65:11
  65:12
**sublet** 20:15 26:9
  26:17 40:7
**subletting** 20:9
  26:17 39:3
**submit** 4:20 68:19
**submitted** 4:15
  70:9
**subordinated**
  7:14 9:12
**subsection** 19:22
**subsections** 19:23
  21:16
**subsequent** 61:25

**subtenancy** 64:6
**subtenant** 9:14
  17:4 26:10 27:4
  34:9,19 35:6,13
  35:16,18,19 36:9
  37:11,22 38:15
  42:3,13,22 43:12
  64:4
**subtenants** 31:24
  32:2 34:14 35:23
  37:14
**successors** 17:25
  47:23
**suddenly** 59:1
**suite** 3:13 72:19
**sum** 10:2
**sup.ct.** 65:24
**support** 2:4
**suppose** 36:25
**supposed** 9:9
**sure** 6:24 20:21
  23:12 25:6 27:12
  36:20 40:12 44:3
  57:3 68:25

---
**t**
---
**t** 71:14 72:1,1
**tab** 8:13 44:4,18
  44:21,23,24 45:4
  45:9,17 46:1,22
  47:18 60:1
**take** 8:12 17:17
  30:20
**taken** 66:25
**talk** 16:20 17:4
  18:6 22:19 25:23
  29:9 32:20 52:16
**talked** 57:15
**talking** 26:3 28:10
  29:6 37:21 46:24
  47:4 50:9 52:14
**taxes** 57:2,4
**technical** 28:12
  34:19 67:23

**tell** 56:5 58:9
**tenancies** 34:10
  34:15 35:23
**tenancy** 24:18
  50:1
**tenant** 7:11 8:2,16
  9:2 19:10 20:11
  20:16,18 21:17
  25:7 26:17 28:17
  28:21 30:11 34:17
  34:20 35:4,14,19
  35:19,24 38:7,20
  38:22 39:3 40:5
  40:16,22 41:21
  42:8 49:8 50:1,11
  50:12,20 52:4,6
  52:19 53:8,16,16
  53:19 55:5 57:21
  61:9,14 63:12,15
**tenants** 34:13
  37:13 39:4
**term** 7:21 17:11
  17:12 19:5,9,16
  21:25 22:9,11
  26:12 28:6 29:16
  30:12 37:19 41:25
  48:21 49:8,17,22
  50:8 61:13 62:13
  63:7 64:24 65:15
  66:8
**terminate** 10:5
  16:3,9,13,15 39:5
  64:3
**terminated** 7:14
  66:18
**terminates** 16:3
  24:11
**termination** 10:5
  15:24 16:11 24:10
  59:17 63:21,25
**terms** 9:23 16:25
  17:7 28:22,25
  34:14 39:17 41:6

48:16 61:14 62:13
63:4 66:13
testify 12:14
testifying 54:8
testimony 5:20
34:11 68:6,10
thank 5:2 6:23 7:4
7:5 12:2 14:15
15:3,9 68:15 69:9
70:16,17
theories 17:8
theory 11:6
thereof 61:25
thereunder 45:8,9
45:19
thing 18:19 46:13
48:24 68:23,24
things 38:24
46:21 48:16
think 10:19 11:4
13:12,21,24 14:1
15:11 16:8,8,10
16:10,24 17:16,19
21:4 24:13 30:7,8
31:12 32:9 33:5
33:12,14 34:4
36:2,20 38:5,15
38:18 39:19 40:4
40:18 41:11,15
42:7 44:13,17
47:1 49:12,20
50:24 51:11,22
53:9,18 54:1,10
55:23 58:13,23
59:4,8 67:16
thinking 30:6
third 3:4 7:20
8:25 23:25 63:9
thought 53:6
threatening 54:17
threats 53:24
three 12:6 26:11
26:12 44:18,19,23

51:23 56:18 62:12
threshold 59:9
time 4:17 22:21
24:2 25:7 30:23
31:4 36:22 38:7
42:16 43:5,9
48:19 50:4 55:16
57:25 58:23 62:24
63:3 66:24 67:1
69:12
timely 67:7
times 37:16 59:11
title 9:19 11:1
20:16,18 24:2
41:20 43:24 62:8
63:14
today 5:20 8:7
12:10 67:2,11
70:15
top 28:2
total 4:19 5:11,12
24:19
touch 56:23 59:7
town 50:13
transaction 9:18
14:6 17:25 61:21
62:19,25 64:10
transactions
47:17
transcribed 2:25
transcriber 72:11
transcript 5:15,19
8:11 72:4
transfers 21:7
transform 2:4
3:19 4:5,10 5:3
6:2 7:6 12:23
17:23 19:23 21:23
26:5 28:8,11
35:12 38:17 43:11
47:4 52:3,5,13,13
52:16 54:19 61:4
63:25 66:22 67:7

71:8,17
transform's 12:21
29:18 30:22 35:13
52:19,22
transforms 30:8
traveled 12:10
tried 54:16
tries 17:23
triple 57:1
trouble 55:9
troutman 3:2,10
6:12 12:4
true 12:25 13:5
14:25 24:12 36:19
36:21 65:11 72:4
trump 51:8
trust 2:1 6:5 12:5
12:6,6,11
trusts 2:5 3:3,11
4:10 5:16 6:13 7:6
8:14 12:7,7 15:7
24:23 25:2,2
60:25 61:19 63:16
63:20 65:7 66:21
67:10,20 71:6,10
71:18,20
try 46:6
trying 21:15
turn 4:13,24 8:22
22:10 44:4 47:21
turned 9:12
turning 9:4
turns 54:5
two 7:1,18 8:6 9:7
18:13 23:25 24:21
33:2 39:2 43:3
47:12 56:7 63:10
type 30:1 33:10
types 52:12
typewritten 31:5

## u

u 71:3
u.s. 1:25
ucc 13:1
ultimate 52:4 53:8
53:16 66:8
underlying 10:3
24:6 62:4 66:14
understand 10:17
13:23 21:4 25:11
29:3 34:12 37:20
43:12 48:9 51:25
52:4,10 53:4,9
55:18,20 58:10
understandable
29:14
understanding
68:6
understood 12:15
22:1 68:2
undisputed 17:16
42:7 43:6 56:4
unexpired 7:22
unfair 58:25
united 1:2,16
units 54:6
untimely 58:6
update 53:9 55:2
updated 52:23
58:9
upkeep 55:5
use 29:12,23 30:2
30:21
utterly 51:6

## v

v 18:7 24:7,20
37:19 65:18,19,23
66:1,9,10
various 15:20
46:5 65:7
vendees 62:2
venn 30:9

**venture** 36:7
**veritext** 72:17
**version** 34:4
**view** 16:2 17:1
  48:17 49:7
**violate** 51:16
**violates** 41:22
**virtue** 58:11
**voice** 14:21
**vulcan** 65:23

**w**

**w** 2:7
**waive** 69:14,20
  70:3
**waiver** 69:6
**walk** 27:24
**walker** 66:10
**walmart** 26:1
**want** 8:6 12:8,17
  14:17 15:13 17:24
  22:19 25:6,23
  29:15 34:1,8
  37:23,24,25 38:13
  47:11 57:18 59:3
  69:1
**wanted** 4:14
  37:16 40:12 48:24
  53:15 68:24
**wants** 19:23
**warranty** 31:8
**way** 10:8 11:7
  23:8 26:4 29:6,7
  34:13 49:14 56:20
**ways** 24:21
**we've** 51:22 52:1
  52:3,25,25 53:11
  54:4,9,25 55:25
  57:15,25 58:7,7
**weeks** 7:1
**went** 19:9 65:6
**whack** 59:2
**whatsoever** 42:24

**wherewithal**
  52:18
**whetsell** 18:7,23
**white** 1:18
**wholly** 22:23
**williams** 3:16 14:9
  14:16,19,21,25
  15:3,5,9 16:7,12
  16:14,16,20,23
  17:12,14 19:13,16
  19:19,21 20:1,5,8
  20:21,25 21:3,7
  21:11,15 22:7,13
  23:1,6,8,13,15,18
  23:20,23 24:8
  25:4,10,13,15,17
  25:20,25 26:19,21
  27:1,3,7,10,12,15
  27:17,19 28:1,8
  28:20,23 29:1,4,6
  29:9,12,17,22,25
  30:2,5,15,17,19
  31:1,3,10,13,15
  31:19,22,25 32:3
  32:7,11,13,17,19
  32:24 33:17,22,24
  34:1 35:3,11,16
  35:18 36:2,5,9,12
  36:16,20 37:3,8
  38:2,5,11,14
  39:15,21 40:2,25
  41:3,12,15 42:9
  42:14,17 43:18
  45:20,23,25 46:12
  46:14,23 47:3,7
  47:11,14 48:4,6,8
  48:10,12 49:12,19
  50:10,19,25 51:3
  51:5,11,21 52:15
  52:21 53:5,11
  54:13,16,20,23
  55:4,8,11,14,19
  55:21 56:9,12,15

56:17,22 57:11,15
  67:22 68:15,23
  69:4,6,9,21,24
  70:2
**willing** 59:15
**witness** 61:19
**witnesses** 5:23
**word** 27:4 29:24
  30:2 35:6 36:9
  38:15
**words** 26:8 30:20
  39:5 45:13
**work** 56:18 57:2
  59:6 68:18 70:11
**working** 37:9
  68:25
**works** 43:2
**worried** 32:4
**written** 23:9
  26:10 34:14
**wrong** 12:22 47:8
  47:9
**wrote** 22:1

**x**

**x** 1:6,14 2:7 71:1
  71:14

**y**

**y** 65:18
**yeah** 33:22,24
  35:3 45:15 56:15
  59:21 69:3 70:5
**year** 22:11 62:12
  62:13 63:19
**years** 7:18,22 8:3
  9:2 19:5 21:21,25
  22:9 26:14 49:5
  49:22 61:13,15
  62:13 63:16
**yep** 48:10
**yesterday** 4:16
**york** 1:3,18 3:5,21
  53:17 55:22